EXHIBIT 19

1       IN THE UNITED STATES DISTRICT COURT

2    FOR THE CENTRAL DISTRICT OF CALIFORNIA

3          EASTERN DIVISION

4                        **Certified Copy**

5   -----------------------

6   CARTER BRYANT,        )

7   an individual,      )

8         Plaintiff,    )

9      vs.           ) No. CV 04-09049 SGL (RNBx)

10  MATTEL, INC., a     )   Consolidated with

11  Delaware corporation,  )   CV 04-09059

12        Defendant.    )   CV 05-02727

13  -----------------------

14

15

16     Videotaped Deposition of WILLIAM J. FLYNN,

17     taken at Phoenix, Arizona commencing at 9:31 a.m.

18     March 27, 2008 before Robin L. B. Osterode,

19     RPR, CSR, Arizona, Certified Reporter No. 50695.

20

21

22

23

24

25  PAGE 1 - 252

                                               1

EXHIBIT 14
PAGE 267

1     DEPOSITION OF WILLIAM J. FLYNN, commenced at

2 9:31 a.m. on March 27, 2008, at Phoenix, Arizona,

  before Robin L. B. Osterode, RPR, CSR, Arizona

3 Certified Reporter No. 50695.

4

        * * *

5

 APPEARANCES:

6

7   For Plaintiff:

8     QUINN EMANUEL URQUHART

      OLIVER & HEDGES, LLP

9     By: Diane Cafferata Hutnyan

      865 South Figueroa Street, 10th Floor

10    Los Angeles, California  90017

      (213) 443-3666

11

   For Defendants:

12

     SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

13    By: Matthew E. Sloan

      300 South Grand Avenue

14    Los Angeles, California  90071-3144

      (213) 697-5000

15

   The Videographer:

16

     Kayla Camenzind

17

18

19

20

21

22

23

24

25

                     2

EXHIBIT 19
PAGE 268

1    understanding other than from your conversations with

2    lawyers at Quinn Emanuel as to what your -- what the

3    purpose of your examination was to be.

4           MS. HUTNYAN:   I don't think that helps.

5    Where else would he get an understanding of what his

6    role was.  I think that's clearly off limits.

7    BY MR. SLOAN:

8           Q.    Let me ask you this, did you have any

9    discussions with either Lloyd Cunningham or anyone at

10   Mattel about what you were supposed to do in your

11   examination of these documents before you received

12   them in or about October of 2007?

13          A.    No, I had -- until the documents arrived at

14   my laboratory, I had no idea how many documents were

15   going to be involved in my examination or what the

16   scope of the examination was going to be.

17          Q.    Let's -- let's turn to the very first page

18   of your report?

19          A.    Yes.

20          Q.    And the second sentence of your report says

21   the purpose of my examination was to determine, if

22   possible, any forensic evidence that would indicate

23   when documents had been created.  I also attempted to

24   ascertain the sequencing of sketches and drawings of

25   the BRATZ dolls.

17

EXHIBIT **19**

PAGE **269**

```
 1              Did you understand that your purpose in

 2    conducting this examination was to be both of those,

 3    i.e., to determine forensic evidence of the dating of

 4    the documents, as well as any evidence regarding the

 5    sequencing?

 6         A.    Yes.

 7         Q.    Did you get the understanding that what you

 8    were supposed to determine is the sequencing, from

 9    any source, other than communications with Quinn

10    Emanuel?

11              MS. HUTNYAN:   This is still running into

12    the same problem.   He's already testified he didn't

13    receive instructions from anybody other than us,

14    so --

15              MR. SLOAN:   Okay.

16              MS. HUTNYAN:   You know.

17    BY MR. SLOAN:

18         Q.    How did you -- were you given any

19    indication as to how long you would have to examine

20    these documents?

21         A.    Yes.

22         Q.    How long were you told you would have to

23    examine the documents?

24         A.    The documents would be in my lab for a

25    total of four days; however, within that four days
```

18

EXHIBIT ___19___
PAGE ___270___

1    would include the time it took to organize the

2    documents that were to be examined, the repackaging

3    of the documents to put them back in the boxes, the

4    sealing of the boxes, and all of the administrative

5    overhead and notetaking that I would have to do.  So

6    the reality is that I probably had just over three

7    workdays with these hundreds of documents.

8          Q.    Do you have a machine or are you familiar

9    with what's called a video spectro comparator?  Let

10   me rephrase that.  Are you familiar with a machine

11   called a VSC or a video spectro comparator?

12         A.    I am, and I own one.

13         Q.    Did you -- and you're trained in the use of

14   the VSC?

15         A.    I am.

16         Q.    Which type of VSC do you have, which

17   machine?

18         A.    It's called the 4C, as in Charles.

19         Q.    Did you perform any VSC testing on the

20   Carter Bryant documents?

21         A.    Yes.

22         Q.    You did?

23         A.    I did.

24         Q.    Do you have a record of which documents you

25   prepared testing on or you performed the VSC testing

19

EXHIBIT __19__
PAGE __271__

1    on?

2         A.   I know I can tell you specifically which

3    ones they were, they were the documents that had the

4    CPS codes.  I used the VSC to image the CPS codes on

5    the color copies.

6         Q.   Did you use the VSC machine on any other

7    documents besides those documents?

8         A.   I did not.

9         Q.   And to be clear, those were Bryant Exhibit

10   310 through 319 and Bryant Exhibit 214?

11        A.   Yes, exactly.

12             MS. HUTNYAN:  When you say "exhibit,"

13   Counsel, you mean Bates number?

14             MR. SLOAN:  That's correct.

15             MS. HUTNYAN:  Okay.

16             THE WITNESS:  There were -- actually,

17   that's not entirely accurate, there were other color

18   copies in this set that had CPS codes that were not

19   decodable, and I realized were not decodable, so the

20   answer is that there were many more documents than

21   just 210 and 310 through 319 that I examined in the

22   VSC.  It's just that I imaged the CPS bar codes on

23   214 and 310 through 319.

24   BY MR. SLOAN:

25        Q.   Did you perform any VSC testing on any of

                                                    20

EXHIBIT __19__
PAGE ___272___

```
 1                        CERTIFICATE

 2

 3              I, ROBIN L. B. OSTERODE, Certified

 4     Reporter for the State of Arizona, certify:

 5              That the foregoing deposition was taken

 6     by me; that I am authorized to administer an oath;

 7     that the witness, before testifying, was duly sworn

 8     by me to testify to the whole truth; that the

 9     questions propounded by counsel and the answers of

10     the witness were taken down by me in shorthand and

11     thereafter reduced to print by computer-aided

12     transcription under my direction; that deposition

13     review and signature was requested; that the

14     foregoing pages are a full, true, and accurate

15     transcript of all proceedings and testimony had upon

16     the taking of said deposition, all to the best of my

17     skill and ability.

18              I FURTHER CERTIFY that I am in no way

19     related to nor employed by any of the parties hereto,

20     nor am I in any way interested in the outcome hereof.

21              DATED this 30th day of March, 2008.

22

23                    _Robin LB.Osterode_____

                      ROBIN L. B. OSTERODE
                      Certified Reporter No. 50695
24                    For the State of Arizona

25
```

251

EXHIBIT 19
PAGE 273

EXHIBIT 20

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

TEL (213) 687-5000

FAX (213) 687-5600

www.skadden.com

DIRECT DIAL
213-687-5276
DIRECT FAX
213-687-5600
EMAIL ADDRESS
MATTHEW.SLOAN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D C
WILMINGTON
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

May 12, 2008

**VIA FACSIMILE AND EMAIL**

Diane C. Hutnyan, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

RE:    Bryant v. Mattel, Inc.

Dear Ms. Hutnyan:

I am writing in response to your letter, dated May 11, 2008, in which you *inter alia* request dates for a proposed second deposition of Dr. Lyter and renew your request to allow Messrs. Flynn and Cunningham an additional two weeks to examine the Bryant original documents. While most of your claims about why Mattel is entitled to further discovery are baseless -- as are your tiresome threats to file yet another in a long line of unwarranted *ex parte* applications -- I think we can reach accommodation on a few key issues as set forth below.

As an initial matter, we *will* make Dr. Lyter available for a brief deposition regarding his May 6, 2008 rebuttal report concerning Ms. Prince's notary book (the "May 6 Report"). We will also produce copies of the chromatographs that Dr. Lyter generated in connection with his GC-MS testing of that notary book. Due to Dr. Lyter's schedule, however, we will not be able to produce these chromatographs to you until Thursday, May 15, 2008, and Dr. Lyter will not be available to testify on May 14, 15, or 16, as you requested. Instead, we will make Dr. Lyter available for a deposition in Los Angeles next Tuesday or Wednesday, May 20 or 21, 2008, subject to the following conditions. First, we will limit Dr. Lyter's testimony to three hours. We believe that this is justified because *but for* your obstructionist tactics in filing a last minute *ex parte* application blocking Dr. Lyter from taking samples from the notary book and completing his GC-MS testing two months ago, Dr. Lyter would

EXHIBIT **20**

PAGE  **274**

Diane C. Hutnyan, Esq.
May 12, 2008
Page 2

have tested the notary book in early March 2008 and included the results in his first
expert report, dated March 17, 2008 (the "March 17 Report"). If that had happened,
you would have been limited by Fed. R. Civ. Pro. Rule 30(d)(1) to one 7-hour
deposition of Dr. Lyter on all subjects incorporated within his March 17 Report.
Because you already spent a full 7 hours deposing Dr. Lyter about his first report on
April 17, 2008, you are not entitled to spend *an additional 7 hours* deposing him
about his May 6 Report now. Given the relatively narrow scope of Dr. Lyter's
opinion, three hours should be more than sufficient to question him about the new
report. Second, for reasons discussed in further detail below, we will not allow you
to ask Dr. Lyter any questions about his March 17 Report and will instruct him not to
answer any questions about that report or about the digital infrared images and
enhanced color scans of the Bryant documents that MGA produced last week. As set
forth below, these exhibits are not the product of any new expert examination, so
your request for an additional three hours to depose Dr. Lyter about these documents
is unwarranted.

       As explained in my letter to you dated May 6, 2008, moreover, your claim
that Dr. Lyter violated Judge Infante's April 22, 2008 Order (the "April 22 Order") by
taking microplug samples from blank areas of the notary book that were "not
previously sampled by Dr. Aginsky or any other Mattel expert" – including some
areas that contained a "pre-printed line" – is simply wrong. The April 22 Order
nowhere requires that Dr. Lyter "replicate" Dr. Aginsky's testing exactly or avoid
sampling the pre-printed lines in the notary book, as you suggest. Rather, it provides
only that Dr. Lyter remove no more than 17 sets of "microplug" samples from "the
*written* portions of the entries in the notary book" and no more than two sets of
paper 'microplugs' samples from the areas of the notary book "*which do not contain
writing.*" (Order, ¶ 4)(emphasis added). Dr. Lyter's decision to take some samples
from the pre-printed line of the notary book is thus fully consistent with Judge
Infante's April 22 Order. Accordingly, your request for MGA to produce the notary
book to Mattel so that Mattel's experts can replicate the testing performed by Dr.
Ltyer is unfounded.[1] Pursuant to the April 22 Order, Dr. Lyter will maintain custody
of the notary book until returning it to MGA for presentation at trial. *See* Order, ¶
12.

       Your request to depose Dr. Lyter about the digital infrared images and
enhanced color scans of the Bryant documents, which MGA produced to you on or
about May 5, 2008, is similarly unfounded. As you correctly state, these images

_____

[1]   In any event, as I previously informed you in my May 6, 2008 letter to you, and as is evident from
Dr. Lyter's report, Dr. Lyter did not rely on his testing of these pre-printed lines in any material
respect in the conclusions expressed in his May 6 Report. Hence, there is no need for Mattel's experts
to replicate this testing by Dr. Lyter.

EXHIBIT __20__

PAGE __275__

Diane C. Hutnyan, Esq.
May 12, 2008
Page 3

were not created until late April 2008, after Dr. Lyter's April 17, 2008 deposition.
Thus, they could not have been produced to Mattel prior to Dr. Lyter's deposition
because they did not yet exist. Moreover, because they are merely enhanced images
of the Bryant originals created for the purpose of displaying Dr. Lyter's findings at
trial, MGA had no obligation to produce them prior to Dr. Lyter's deposition. Your
claim that MGA recently stated (in its response to your Second Supplemental
Declaration in support of Mattel's *ex parte* application) that "these images were not
new scans taken by Dr. Lyter" is patently false, as you well know. To the contrary,
we have always maintained that the digital infrared images and color scans are *new*
images. What MGA stated in its papers is rather that these documents "are not
products of a new examination," which is true. They are merely images created for
the purpose of demonstrating to a lay jury the findings Dr. Lyter already made during
the expert examination of the Bryant originals he conducted with his microscope and
infrared equipment in his laboratory in March 2008. Accordingly, there is no basis
for your request to depose Dr. Lyter for an additional three hours regarding these
images, and we will not make Dr. Lyter available to answer any such questions.

Finally, as we've indicated several times before, we strenuously object to
your request that Mattel's experts be granted an additional two weeks access to the
Bryant documents to perform further expert examinations. Nothing in your letter
changes our view of this situation. Given that your *ex parte* application is still
pending before Judge Infante, any *ex parte* application to Judge Larson to strike Dr.
Lyter's and Mr. Kullman's reports would clearly be premature, and we would not
only vigorously oppose any such ill-considered *ex parte*, but would also seek
sanctions. In the event you nevertheless decide to file such an *ex parte* application,
we would respectfully request that you heed Judge Larson's direction "encouraging"
the parties to meet and confer about any future motions "with the intent of reaching a
stipulated briefing schedule" for such a motion. (May 6, 2008 Minute Order at 5). I
am available to meet any time tomorrow after 10:00 am about scheduling, but advise
that we would consider a 24 hour turnaround on any such motion to be patently
unreasonable.

Very truly yours,

Matthew E. Sloan

cc:   Matthew Werdegar
      Daniel Warren

EXHIBIT __20__
PAGE __276__

EXHIBIT 21

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 22

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 23

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017 | TEL: (213) 443-3000  FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3666

WRITER'S INTERNET ADDRESS
dianehutnyan@quinnemanuel.com

April 2, 2008

VIA E-MAIL AND FACSIMILE

Matthew E. Sloan, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue
Suite 3400
Los Angeles, CA  90071

Matthew Werdegar, Esq.
Keker and Van Nest LLP
710 Sansome Street
San Francisco, CA 94111

Re:    Mattel v. Carter Bryant

Dear Matt(s):

I write about two related issues.

The first is to ask you to confirm that you will make available at Kullman's and Lyter's depositions the original Bryant documents and original ESDA films that pertain to the opinions they rendered and/or the reports they issued in this case.  Specifically, we would expect access to every original document whose bates number was referenced in either of their reports and any others they relied upon that they may not have referenced.  As Matt Sloan witnessed, MGA's examination of our experts was facilitated by the availability of these materials at their depositions.

The second is to request, pursuant to the June 20, 2006 stipulation on the record before Magistrate Judge Block, reasonable access for further non-destructive examination and imaging of the pertinent originals for Messrs. Flynn and Cunningham.  It is clear from these experts' depositions that the brief time that they were permitted for non-destructive examination of the eight boxes of Bryant original documents last fall was too limited for them to do all the analysis

EXHIBIT 23
PAGE 309

Matthew E. Sloan / Matthew Werdegar
April 2, 2008

that they would normally be able to do with the evidence presented to them. Further, the Lyter and Kullman reports suggest that, having had the benefit of our narrowing down the eight boxes of original documents to a few hundred items, as well as the benefit of unlimited access to the materials generally, Dr. Lyter and Dr. Kullman had sufficient time to do certain non-destructive tests and imaging that Messrs. Flynn and Cunningham were unable to do and which apparently allowed Drs. Lyter and Kullman to develop opinions that cannot be fully assessed and tested without similar access by our experts.

For these reasons, we would like to request on behalf of Mr. Flynn one week of access to all the original documents he referred to in his report or that were referred to in the portions of Dr. Kullman's or Dr. Lyter's reports rebutting his report. We would also like to request on behalf of Mr. Cunningham one week of access to all the original documents he referred to in his report or that were referred to in the portions of Dr. Kullman's or Dr. Lyter's reports rebutting his report. Please let me know if you would voluntarily agree to such access.

I hope you will see the inappropriateness of denying this limited request. But to the extent you are unwilling to produce these original documents for examination and imaging as requested, please also consider this letter notice that we will be filing an *ex parte* application before Judge Larson to allow for further expert reports and an *ex parte* application before the Discovery Master to compel the originals.

Very truly yours,

Diane C. Hutnyan

2

EXHIBIT 23
PAGE _____ 310

EXHIBIT 24

KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

RECEIVED

APR 0 9 2008

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC. a Delaware Corporation,<br><br>Defendant.<br><br>CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727)<br><br>**DISCOVERY MATTER**<br>**[To be heard by Discovery Master Hon. Edward Infante (Ret.)]**<br><br>**CARTER BRYANT'S AND MGA'S JOINT PRELIMINARY OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION TO COMPEL ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND IMAGING; AND REQUEST FOR BRIEFING SCHEDULE**<br><br>Date:      TBD<br>Time:      TBD<br><br>Date Comp. Filed: April 13, 2005<br><br>Discovery Cut-Off: Jan. 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

EXHIBIT 24
PAGE 311

414-798.01

BRYANT'S AND MGA'S JOINT PRELIMINARY OPPOSITION TO MATTEL'S *EX PARTE* APPLICATION TO COMPEL ACCESS TO CERTAIN BRYANT ORIGINALS
CASE NO. CV 04-09049 SGL (RNBx)

# I.   PRELIMINARY STATEMENT

Carter Bryant and MGA Entertainment, Inc. ("MGA") respectfully submit that the Discovery Master does not have the authority to grant Mattel the relief that it is seeking through *Ex Parte* Application to Compel Access to Certain Bryant Originals for Non-Destructing Expert Examination and Imaging (Mattel's "Application"), filed on April 7, 2008.  Rather, pursuant to Rule 16 of the Federal Rules of Civil Procedure and Central District of California Local Rule 16-14, that authority rests exclusively with the District Court.  Bryant and MGA submit this Preliminary Opposition to address this important threshold jurisdictional issue and to request—if the Discovery Master finds that he does in fact have the requisite authority—that the Discovery Master set an appropriate briefing schedule to address the merits of Mattel's Application.

# II.   ARGUMENT

In its Scheduling Order dated October 31, 2007, the District Court set January 28, 2008 as the cut off for all Phase 1 fact discovery, and March 31, 2008 as the cut off for all Phase 1 expert discovery.  *See* Oct. 31, 2007 Order [Docket No. 1104], at 2.  Through its Application, Mattel seeks leave to reopen these now-closed discovery periods to conduct additional inspection and testing of certain of Carter Bryant's original documents, which Mattel claims is necessary to rebut the opinions of two of MGA's rebuttal experts, whose opinions were disclosed on March 17, 2008.  Absent such leave, Mattel's requested discovery, which was first made on April 2, 2008—three days after the close of expert discovery and more than two months after the close of fact discovery[1]—is plainly untimely.  *See* Order dated Feb. 4, 2008 [Docket No. 1931], at 2 (holding that "[a]ny phase 1 discovery not properly served on or before th[e discovery] deadline may not now be pursued."); *see also Braun v. Agri-Systems*, No. F-02-6482, 2006 WL 278592, at *

---

[1] Hutnyan Decl., Exh. 14 (Letter from Hutnyan to Sloan and Werdegar, dated Apr. 2, 2008).

1

414798.01

EXHIBIT 24
PAGE 312

1   5 (E.D. Cal. Feb. 2, 2006) (finding that party waived right to inspect documents

2   because it did not seek to inspect them before the close of discovery); *Jenkins v.*

3   *Wholesale Alley, Inc.*, No. 1:05-CV-3266 JEC, 2006 WL 2716091, at *9 (N.D. Ga.

4   Sep. 22, 2006) (finding demand to inspect property made after discovery cut-off to

5   be untimely).[2]

6         However, the Discovery Master cannot grant Mattel the leave it requires to

7   engage in any additional discovery. Only the *District Court* may grant leave to

8   reopen or extend discovery beyond the deadlines set in its Rule 16 Scheduling

9   Order. Central District Local Rule 16-14 expressly provides that "[a]ny

10  application to modify an order entered pursuant to F.R.Civ.P. 16 *shall be made to*

11  *the judicial officer who entered the order.*" (Emphasis added); *see also* Fed. R.

12  Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the

13  judge's consent."); *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1077 (9th Cir. 2005);

14  ("A pretrial order controls the subsequent course of the action unless modified

15  upon a showing of good cause." (internal quotation omitted)). Because Judge

16  Larson is "the judicial officer who entered the" Scheduling Order setting the

17  discovery cut offs in this case, only he can now modify that order.[3] For the same

18  reason, Judge Larson must grant Mattel leave to file its proposed sur-rebuttal

19  _____

20  [2] Mattel may seek to argue that its request for inspection and testing is timely because it was made pursuant to the parties' stipulation on June 20, 2006, whereby Bryant agreed to make his original documents available for inspection *during discovery* on 15 days notice.

21  The Discovery Master should reject any such argument. The June 20, 2006 stipulation was made as part of the parties' meet and confer efforts to resolve a discovery motion

22  brought by Mattel. As such, it was a *discovery* stipulation, and necessarily was confined to the fact discovery phase of this litigation. Nothing in the transcript of the June 20,

23  2006 meet and confer session before Magistrate Judge Block suggests that Bryant was in any way waiving the discovery cut off as to Mattel's inspection demands and granting

24  Mattel opened-ended access to his original documents. And even if the stipulation could be so interpreted, neither the parties nor Magistrate Judge Block had the power under

25  Local Rule 16-14 and Federal Rule of Civil Procedure 16 to alter the Court's scheduling orders in this manner. The court's current Scheduling Order, which was entered more

26  than a year after the parties' discovery stipulation, supersedes any prior stipulation of the parties.

27  [3] Mattel knows, or should know, that it must seek leave directly from the District Court,

28  as it has previously submitted all of its requests for additional discovery directly to the District Court.

2
BRYANT'S AND MGA'S JOINT PRELIMINARY OPPOSITION TO MATTEL'S *EX PARTE* APPLICATION
TO COMPEL ACCESS TO CERTAIN BRYANT ORIGINALS
CASE NO. CV 04-09049 SGL (RNBx)

414798.01

EXHIBIT 24
PAGE 313

1  expert reports, which Mattel claims necessitates the additional discovery it is now

2  seeking, as the current Scheduling Order only provides for opening and rebuttal

3  reports, and not any sur-rebuttal or reply reports. *See* Oct. 31, 2007 Order, at 2.

4  Without leave from the District Court to file these sur-rebuttal reports, there is no

5  justification for the requested discovery.

6       Accordingly, the Discovery Master should deny Mattel's Application

7  without prejudice, or stay consideration of the Application, until such time as the

8  District Court modifies its Scheduling Order to permit the additional discovery and

9  expert reports requested by Mattel.[4]  (Prior to filing this Preliminary Opposition,

10  Bryant requested that Mattel enter into a stipulation this effect, but Mattel has not

11  responded to that request.  Declaration of Matthew M. Werdegar, ¶ 2, Ex. A.)

12  Alternatively, if the Discovery Master concludes that he does have authority to

13  grant the relief sought by Mattel, Bryant and MGA respectfully request that the

14  Discovery Master set an appropriate schedule for the submission of their

15  opposition to the merits of Mattel's Application as well as any reply brief by

16  Mattel.  Mattel's Application misstates both the relevant facts and the law,[5] and

17  Bryant and MGA would be significantly prejudiced if they were not accorded a

18  reasonably opportunity to prepare a substantive response to the merits of Mattel's

19  Application.

20  / / /

21  / / /

22  / / /

23

24  [4] In its Application, Mattel states that it "simultaneously" filing an *ex parte* Application with Judge Larson for permission to file supplemental reports.  However, as of the time

25  of the filing of this Preliminary Opposition, Mattel had not filed any such Application.

26  [5] For example, Mattel claims that its experts were not given an adequate opportunity to inspect and test Bryant's documents, even though Mattel never sought an extension of

27  time for testing—either from Bryant himself or from the Court—as expressly permitted under the Court's August 30, 2007 Order.  Mattel also fails to explain why it waited more

28  than two weeks after receiving MGA's rebuttal expert reports, until after the close of expert discovery, before raising this issue.

3

414798.01

EXHIBIT 24
PAGE 314

1

### III.   CONCLUSION

2   For all the foregoing reasons, Bryant and MGA respectfully request that the

3 Court deny without prejudice or stay consideration of Mattel's Application

4 pending a ruling by the District Court granting Mattel leave to file proposed sur-

5 rebuttal expert reports and to conduct additional discovery beyond the current

6 discovery cut-offs.

7

8             Respectfully submitted,

9 Dated:   April 8, 2008      KEKER & VAN NEST, LLP

10

11

12        By: _____
          MATTHEW M. WERDEGAR

13          Attorneys for Plaintiff
          CARTER BRYANT

14 Dated:   April 8, 2008      SKADDEN, ARPS, SLATE,
          MEAGHER & FLOM, LLP

15

16

17        By: _____
          RAOUL D. KENNEDY

18          Attorneys for

19          MGA ENTERTAINMENT, INC.,
          MGA ENTERTAINMENT (HK)

20          LIMITED, MGAE de MEXICO,
          S.R.L. DE C.V., AND ISAAC

21          LARIAN

22

23

24

25

26

27

28

414798.01

EXHIBIT 24
PAGE 315

## DECLARATION OF MATTHEW M. WERDEGAR

I, Matthew M. Werdegar, declare and state that:

1.     I am an attorney licensed to practice law in the State of California and am a partner of the law firm of Keker & Van Nest LLP, located at 710 Sansome Street, San Francisco, California 94111, counsel for plaintiff Carter Bryant in the above-captioned action.  I am duly admitted to practice law before this Court. Except where expressly stated, I have knowledge of the facts set forth herein, and if called to testify as a witness thereto, could do so competently under oath.

2.     On April 8, 2008, at approximately 12:45 p.m., I sent an email message to Diane Hutnyan, counsel for Mattel, requesting that Mattel agree to dismiss its *Ex Parte* Application to Compel Access to Certain Bryant Originals for Non-Destructive Expert Examination and Imaging without prejudice, or to agree to stay consideration of the Application, pending a ruling by Judge Larson on a request by Mattel to modify the Court's Scheduling Order to permit Mattel to file supplemental expert reports and to conduct additional discovery beyond the discovery cut-offs.  Attached hereto as Exhibit A is a true and correct copy of my email message.  As of the filing of this Preliminary Opposition, Ms. Hutnyan had not responded to my request.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on March 24, 2008, at San Francisco, California.

MATTHEW M. WERDEGAR

414798.01

**EXHIBIT A**

EXHIBIT __24__
PAGE __317__

**Matthew Werdegar**

| | |
|---|---|
| From: | Matthew Werdegar |
| Sent: | Tuesday, April 08, 2008 12:46 PM |
| To: | 'Diane Hutnyan' |
| Cc: | 'Lanstra, Allen L'; Sloan, Matthew E (LAC) |
| Subject: | Mattel v. Bryant et al. -- ex parte application to Judge Infante |

Attachments:                Picture (Metafile)

Dear Diane:

We are in receipt of your *ex parte* application to compel access to certain Bryant original documents for additional, non-destructive expert examination and imaging. Reviewing the application and the relevant case law, it is apparent to us that Judge Infante does not have the authority to grant the relief you are seeking. The Court's October 31, 2007 Rule 16 Scheduling Order set January 28, 2007 as the fact discovery cut off, and March 31, 2008 as the expert discovery cut off. Because your application is seeking additional discovery beyond these cut-off dates, which were ordered by Judge Larson, only Judge Larson, and not Judge Infante, may grant Mattel's request. Central District Local Rule 16-14 states that "[a]ny application to modify an order entered pursuant to F.R.Civ.P. 16 shall be made to the judicial officer who entered the order," *i.e.*, Judge Larson. Additionally, for the same reasons, Judge Larson must grant Mattel leave to file its contemplated supplemental expert reports, as the current scheduling order only provides for opening and rebuttal reports, and not any supplemental or reply reports.

In light of the foregoing, we are hereby requesting that you agree either (1) to dismiss your *ex parte* application without prejudice to renewing it if and when Judge Larson agrees to modify his scheduling order or (2) stay consideration of the motion until Judge Larson rules on the schedule issues. Please let me know by 5 p.m. today whether you are willing to agree to this request, in which case I will provide you with a proposed stipulation and order memorializing our agreement. If you do not agree, we will file a preliminary opposition with Judge Infante on grounds that he lacks authority to grant the requested relief and, in the unlikely event he disagrees with our analysis, requesting that he set an appropriate schedule for the submission of our opposition and Mattel's reply briefs on the merits of Mattel's request.

I have spoken with counsel for MGA, and they agree with the foregoing analysis and join in our request that you agree to dismiss or stay consideration of the *ex parte* application.

Regards,

Matthew M. Werdegar

█████████████████

710 Sansome Street
San Francisco, CA 94111-1704
tel: (415) 391-5400
fax: (415) 397-7188
www.kvn.com

EXHIBIT 24
PAGE 316

1

## PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On April 8, 2008, I served the following document(s):

**CARTER BRYANT'S AND MGA'S JOINT PRELIMINARY OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION TO COMPEL ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND IMAGING; AND REQUEST FOR BRIEFING SCHEDULE**

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery and

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

| | |
|---|---|
| Hon. Edward A. Infante (via Fed Ex) JAMS Two Embarcadero Center, Suite 1500 San Francisco, CA 94111 Tel: 415/774-2649 Fax: 415/982-5287 Email:   schan@jamsadr.com | John B. Quinn Michael T. Zeller Quinn Emanuel Urquhart Oliver & Hedges, LLP 865 South Figueroa Street, 10th Floor Los Angeles, CA 90017-2543 Tel: 213/443-3000 Fax: 213/443-3100 Email:   johnquinn@quinnemanuel.com Email:   michaelzeller@quinnemanuel.com |

EXHIBIT  24
PAGE  319

| 1 | Thomas J. Nolan | Alexander H. Cote |
|---|---|---|
| 2 | Skadden Arps Slate Meagher & Flom | Overland Borenstein Scheper & Kim LLP |
| 3 | 300 South Grand Avenue, Suite 3400 | 300 S. Grand Avenue, Suite 2750 |
| 4 | Los Angeles, CA 90071-3144 | Los Angeles, California 90071 |
| 5 | Tel:   213/687-5000 | Tel:   213/613-4660 |
| 6 | Fax:  213/687-5600 | Fax:  213/613-4656 |
|   | Email: tnolan@skadden.com | Email :   acote@obsklaw.com |

Executed on April 8, 2008, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_Patty Lemos_

PATTY LEMOS

EXHIBIT 24
PAGE 320

396176.01

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT 25

THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000 / Fax: (213) 687-5600

RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, 38th Floor
San Francisco, CA 94111-5974
Tel.: (415) 984-6400 / Fax: (415) 984-2698

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
MGAE de Mexico, S.R.L. de C.V., and Isaac Larian

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT, an individual,

           Plaintiff,

    v.

MATTEL, INC., a Delaware corporation,

           Defendant.

AND CONSOLIDATED ACTIONS

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with Case No. 04-9059 and Case No. 05-2727

**DISCOVERY MATTER**

MGA'S AND CARTER BRYANT'S JOINT OPPOSITION TO MATTEL, INC.'S *EX PARTE* APPLICATION TO COMPEL ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND IMAGING

Date:  TBD
Time:  TBD
Place:  TBD

**Phase 1:**
Discovery Cut-off:  January 28, 2008
Expert Disc. Cut-off: March 31, 2008
Pre-trial Conference: May 5, 2008
Trial Date:      May 27, 2008

EXHIBIT 25
PAGE 321

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................ iii

I.   INTRODUCTION ........................................................................................ 1

II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................. 3

    A.   The Key Carter Bryant Drawings........................................................ 3

    B.   Mattel Examined, Photographed and Videotaped The Bryant Documents for 5 Days in February, May and June 2007..................... 4

    C.   Mattel's July 2007 Motion to Compel Bryant to Make Original Documents Available For Expert Examination and Testing................ 5

    D.   Mattel's Experts Examined and Performed Testing on the Bryant Documents for a Total of Approximately 40 Days.............................. 7

    E.   Mattel's Expert Reports ....................................................................... 8

    F.   MGA's Expert Examinations and Reports........................................... 8

    G.   MGA's Experts Admitted to Seeing Faint Pencil Lines in The Multi-Colored Drawings During Their Depositions ........................... 9

    H.   Mattel's Belated Requests for Further Expert Examination of the Bryant Documents ............................................................................. 11

III. ARGUMENT ............................................................................................. 12

    A.   Mattel Has Not – and Cannot – Establish The Good Cause Necessary To Support Its Last Minute Request For Further Expert Examination....................................................................................... 12

        1.   The "Good Cause" Standard ...................................................... 13

        2.   Mattel Has No Good Cause Because It Was Not Diligent ...... 13

        3.   MGA's And Bryant's Actions Do Not Provide Mattel Any Good Cause Nor Do They Excuse Mattel's Lack Of Diligence And/Or Negligence.................................................. 17

        4.   Granting Mattel's Request for A Second Round Of Testing And Expert Reports On The Eve Of Trial Would Prejudice MGA And Bryant............................................................. 19

    B.   Mattel Cannot Skirt The Absence Of "Good Cause" By Presenting Its Desire To Submit New-And-Improved Reports Under The Guise Of Rule 26(e) "Supplemental" Expert Reports...... 21

EXHIBIT 25
PAGE 322

C.   Mattel's Request To "Re-Do" Its Expert Examination Of The Bryant Originals Is Categorically Different Than MGA's Right To Test The Prince Notary Book For The First Time And Prepare Its Initial Rebuttal Report ................................................................. 25

IV.   CONCLUSION ............................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 25
PAGE 323

# **TABLE OF AUTHORITIES**

**Cases**

*3M Innovative Prop. Co. v. Dupont Dow Elastomers, LLC,*
No. 03-3364, 2005 WL 6007042 (D. Minn. Aug. 29, 2005) .......................... 24

*Beller ex rel. Beller v. U.S.,*
221 F.R.D. 689 (D.N.M. 2003) .................................................................. 22, 23

*DAG Enters., Inc. v. Exxon Mobil Corp.,*
226 F.R.D. 95 (D.D.C. 2005) .................................................................... 22, 24

*Dedge v. Kendrick,*
849 F.2d 1398 (11th Cir. 1998) ...................................................................... 17

*Estate of Gonzalez v. Hickman,*
No. EDCV 05-660 MMM (RCx), 2007 WL 3237639 (C.D.
Cal. Jan. 8, 2007) ......................................................................................... 19

*Hussain v. Nicholson,*
435 F.3d 359 (D.C. Cir.), *cert. denied*, 127 S. Ct. 494 (2006) .............. 15

*Jackson v. Laureate, Inc.,*
186 F.R.D. 605, 608 (E.D. Cal. 1999) ..................................................... 13, 16

*Keener v. U.S.,*
181 F.R.D. 639 (D. Mont. 1998) .................................................................. 18

*Keys v. M/V Ming Longevity,*
No. 01-2447, 2003 WL 25720981 (E.D. La. Jan. 21, 2003) ....................... 16

*Lindner v. Meadow Gold Dairies, Inc.,*
Civil No. 06-00394 JMS-LEK, 2008 WL 763236 (D. Haw.
Mar. 19, 2008) ......................................................................................... 22, 23

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha,*
218 F.R.D. 667 (C.D. Cal. 2003) .................................................................. 13

*Miller ex rel. S.M. v. Board of Education,*
455 F. Supp. 2d 1286 (D.N.M. 2006) ........................................................... 20

*Mission Power Engineering Co. v. Continental Casualty Co.,*
883 F. Supp. 488 (C.D. Cal. 1995) ............................................................... 17

*MRO Commc'ns, Inc. v. AT&T Co.,*
205 F.3d 1351, 1999 WL 1178964 (9th Cir. 1999) ..................................... 24

*O'Connor v. Boeing N. Am., Inc.,*
No. CV 97-1554 DT (RCx), 2005 WL 6035243 (C.D. Cal.
Sept. 12, 2005) ............................................................................................. 24

MGA's and Carter Bryant's Opposition To Mattel, Inc.'s *Ex Parte* Application to Compel Access to Certain Bryant
Originals for Non-Destructive Expert Examination and Testing
Case No. CV 04-9049 SGL (RNBx)
-iii-

EXHIBIT 25
PAGE 324

*Palmer v. Asarco Inc.*,
  No. 03-CV-0498-CVE-PJC, 2007 WL 2254343 (N.D. Okla.
  Aug. 3, 2007)..................................................................................................23

*Phillips v. Netblue, Inc.*,
  No. C-05-4401 SC, 2007 WL 528722 (N.D. Cal. Feb. 13,
  2007)...........................................................................................................23

*Reid v. Lockheed Martin Aeronautics Co.*,
  205 F.R.D. 655 (N.D. Ga. 2001) ..................................................................22

*Reliance Ins. Co. v. Louisiana Land & Expl. Co.*,
  110 F.3d 253 (5th Cir. 1997)........................................................................16

*Schwerdt v. International Fidelity Insurance Co.*,
  28 F. Appx. 715 (9th Cir. 2002)..........................................................13, 15

*Telemasters, Inc. v. Vintage Club Masters Association*,
  No. CV 05-05139 FMC (VBKx), 2007 WL 1839701 (C.D.
  Cal. Feb. 2, 2007).......................................................................................12

*Toomey v. Nextel Commc'ns, Inc.*,
  No. C-03-2887 MMC, 2004 WL 5512967 (N.D. Cal. Sept.
  23, 2004).....................................................................................................24

*Turner v. Schering-Plough Corp.*,
  901 F.2d 335 (3d Cir. 1990)..........................................................................17

*U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*,
  768 F.2d 1099 (9th Cir. 1985)......................................................................13

*Wong v. Regents of University of California*,
  410 F.3d 1052 (9th Cir. 2005)......................................................................20

*Yent v. Baca*,
  No. CV-01-10672 (VBKX), 2002 WL 32810316 (C.D. Cal.
  Dec. 16, 2002) ...............................................................................13, 15, 16, 17

**Rules**

Fed. R. Civ. P. 16(b)(4).......................................................................................13

Fed. R. Civ. P. 26(a)(2)(B)..................................................................................22

Fed. R. Civ. P. 26(a)(3) & (e) ...........................................................................22

Fed. R. Civ. P. 26(a)(3)(B)..................................................................................21

Fed. R. Civ. P. 26(e)............................................................................................22

Fed. R. Civ. P. 6(b)(1).........................................................................................16

MGA's and Carter Bryant's Opposition To Mattel, Inc.'s *Ex Parte* Application to Compel Access to Certain Bryant
Originals for Non-Destructive Expert Examination and Testing
Case No. CV 04-9049 SGL (RNBx)
-iv-

EXHIBIT   25
PAGE   325

| | |
|---|---|
| 1 | **Other Authorities** |
| 2 | 6 Moore's Fed. Practice § 26.131 n. 18.1 (2005) ........................................................ 24 |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

MGA's and Carter Bryant's Opposition To Mattel, Inc.'s *Ex Parte* Application to Compel Access to Certain Bryant
Originals for Non-Destructive Expert Examination and Testing
Case No. CV 04-9049 SGL (RNBx)
-v-

EXHIBIT 25
PAGE 326

## PRELIMINARY STATEMENT AND PROCEDURAL HISTORY

Mattel's experts have spent nearly 40 days examining and testing Carter Bryant's original documents.  Now, only weeks before the trial is supposed to commence, and months after its experts purportedly completed their examinations, Mattel seeks leave to allow two of its experts to "re-do" their examinations on the simple grounds that they were not as diligent or thorough as MGA's experts.  As set forth herein, fairness dictates that Mattel's request be denied.

Before addressing the substantive issues involved, however, due to the complicated history of this *ex parte* Application and the companion *ex parte* application that Mattel filed with the District Court, MGA and Bryant feel compelled to first sort out the tangled procedural history for this Court.

On April 7, 2008, Mattel submitted the present *ex parte* Application seeking to compel access to certain original Carter Bryant documents to perform a second round of expert testing.  Subsequently, on April 8, 2008, Mattel filed a closely related *ex parte* application in the District Court seeking a period of 7 days to file "supplemental" expert reports by Mattel's experts, William Flynn and Lloyd Cunningham, in the event that this Court grants it further access to the Bryant original documents.[1]  (Docket No. 3008.)

In their Joint Opposition to the District Court Application and their Preliminary Joint Opposition to the Discovery Master Application, MGA and Carter Bryant took the position that Mattel's request for further expert examination of the Bryant documents should be denied on numerous grounds, including that: (1) Mattel failed to seek such relief until after the expert discovery deadline had expired; (2)

---

[1]     For ease of reference, Mattel's *ex parte* application submitted to Judge Larson will herein be referred to as the "District Court Application."  Where necessary for distinction, the present application will be referenced as the "Discovery Master Application."

EXHIBIT __25__

PAGE __327__

1 | Mattel had no "good cause" to modify the Rule 16 Scheduling Order and re-open
2 | expert discovery because its experts were either negligent in their initial
3 | examinations or negligent in failing to request further time to complete their
4 | examinations months ago; and (3) re-opening discovery now would lead to an
5 | unwarranted extension of pre-trial discovery, which would have the prejudicial effect
6 | of interfering with MGA's and Bryant's attempts to properly prepare for trial.
7 | Throughout their papers, MGA and Bryant took the position that prior to obtaining
8 | relief from this Court for further expert examination, Mattel must first obtain a
9 | modification of the Rule 16 Scheduling Order from the District Court.

10 |     On April 15, 2008, Judge Larson *sua sponte* engaged the parties in argument
11 | regarding the District Court Application. Judge Larson made clear during that
12 | hearing that he was delegating almost all the issues raised by both the District Court
13 | Application and the Discovery Master Application to this Court to decide. In
14 | addition to directing this Court to determine whether to permit Mattel's experts to
15 | perform additional non-destructive testing of the Bryant documents, Judge Larson
16 | implicitly asked this Court to decide all substantive questions as to whether "good
17 | cause" exists for discovery to be re-opened and for any "supplemental" or "sur-
18 | rebuttal" reports to be permitted:

> I'm going to make it clear that the Court's granting of this
> motion in no way suggests that the motion before Judge Infante has
> or does not have any merits. I'm simply suggesting, as a matter of
> case management, that should Judge Infante find good cause for what
> Mattel is seeking, that I will afford them the opportunity to submit
> the surrebuttal report.
>
> If he does not find good cause, then, of course, Mattel has the
> avenue to appeal that matter to this Court. But short of that, nothing
> is happening.

MGA's and Carter Bryant's Opposition To Mattel, Inc.'s *Ex Parte* Application to Compel Access to Certain Bryant
Originals for Non-Destructive Expert Examination and Testing
Case No. CV 04-9049 SGL (RNBx)
-vii-

EXHIBIT  25
PAGE  328

1   (Tr. at 33.)[2]

2          Judge Larson decided only that if the Discovery Master finds that "good

3   cause" exists to re-open discovery and serve "supplemental" or "sur-rebuttal" reports,

4   Mattel should be afforded a period of 7 days to file such reports.

5          On April 15, 2008, Judge Larson issued a minute order consistent with his

6   statements on the record, ruling as follows:

7
              The Court also GRANTS Mattel's ex parte
8             application to file supplemental expert reports by William
              Flynn and Lloyd Cunningham regarding certain Bryant
9             originals within seven (7) days of the completion of testing,
10            provided that the Discovery Master authorizes said testing
              beforehand.  Nothing in this Order shall be construed as
11            indicating whether or not there is cause to authorize said
              testing; such a determination shall be made in the first
12            instance by the Discovery Master.
13
14   (Lanstra Decl., Ex. 2: Minute Order at 1.)

15         As submitted, Mattel's Discovery Master Application does not request or

16   address the substantive issues that Judge Larson has asked this Court to decide,

17   including: (1) whether there is "good cause" to re-open expert discovery on the eve

18   of trial for a second round of testing; (2) whether Mattel has "good cause" and thus

19   should be afforded the right to file "supplement" or, more accurately, "sur-rebuttal"

20   expert reports; and (3) in the event the relief sought is permitted, the setting of a

21   schedule for the re-deposition of Messrs. Flynn and Cunningham.

22         While Mattel has not directly addressed these issues in its Discovery Master

23   Application, in the interests of efficiency and expediency, MGA and Bryant herein

24   address not only the issues presented by Mattel's Discovery Master Application, but

25

26   _____
     [2]     The relevant excerpts from the transcript of the April 14, 2008 hearing before
27   Judge Larson is attached to the accompanying Declaration of Allen L. Lanstra
     (hereinafter "Lanstra Decl."), as Exhibit 1 thereto.

28

MGA's and Carter Bryant's Opposition To Mattel, Inc.'s *Ex Parte* Application to Compel Access to Certain Bryant
Originals for Non-Destructive Expert Examination and Testing
Case No. CV 04-9049 SGL (RNBx)
-viii-

EXHIBIT   25
PAGE   329

1   also the substantive issues that Judge Larson referred (expressly and impliedly) to
2   the Discovery Master, and the substantive issues that Mattel should have raised in
3   either their District Court Application or Discovery Master Application, but did not.
4          Given the complexity of these issues, MGA and Bryant believe that this
5   Application should not be decided on the briefs alone, as the underlying factual and
6   legal issues have been confused by Mattel's bifurcated and incomplete briefing.
7   Accordingly, MGA and Bryant specifically request that the Application be
8   calendared for oral argument at a time convenient for the Discovery Master.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MGA's and Carter Bryant's Opposition To Mattel, Inc.'s *Ex Parte* Application to Compel Access to Certain Bryant
Originals for Non-Destructive Expert Examination and Testing
Case No. CV 04-9049 SGL (RNBx)
-ix-

EXHIBIT    25
PAGE    330

# I.    **INTRODUCTION**

Mattel claims that this is a matter of simple "fairness." What Mattel seeks, however, is anything but fair. Rather, at the eleventh hour, a little over a month before trial, Mattel seeks to fundamentally rewrite the rules by radically altering the Court's case management schedule and turning back the clock so that Mattel's experts can have a second chance to do what they should have done – and had a full opportunity to do – months ago. Mattel's experts are not entitled to "re-do" their examination and prepare new and improved reports just because they got it wrong the first time, however. Nor should Mattel be allowed to re-open discovery after it has been closed to MGA and Bryant. Far from "leveling the playing field," (App. at 12), such relief would tilt it unfairly in Mattel's favor. Mattel's *ex parte* Application should thus be denied in its entirety as Mattel has not—and cannot—establish the "good cause" necessary to re-open expert discovery or submit "supplemental" reports.

Mattel has failed to establish the "good cause" necessary under governing law. Mattel requests the ability to re-open expert discovery to perform a second round of testing and then file "supplemental" or "sur-rebuttal" expert reports. However, Mattel had a full and fair opportunity to perform its expert analysis last fall when Judge Infante ordered Bryant to produce over 2,000 original documents to Mattel's experts for a period of 35 days. During that time, Mattel's principal document examiner, Mr. Cunningham, had the documents for over two weeks; examined them for over 80 hours, including through use of infrared light and infrared luminescence; and spotted many of the same faint and partially obscured pencil lines that MGA's experts found significant.

After reviewing MGA's expert reports, Mattel now claims in hindsight that its experts *needed* more time *last fall* to complete their examinations. But neither Mattel nor its experts requested such relief at that time. In fact, Cunningham and

EXHIBIT 25
PAGE 331

1   Flynn were apparently very happy with their results – at least until they reviewed Dr.

2   Lyter's and Mr. Kullman's reports for MGA. Mattel's claim that it was hamstrung by

3   Judge Infante's 35-day time limit is thus unfounded. As Mattel well knows, but fails

4   to acknowledge in its papers, this Court's August 30, 2007 Order permitting testing

5   of Bryant's original documents specifically authorized Mattel to seek an extension of

6   the 35-day deadline for "good cause" if its experts did not have enough time to

7   perform complete testing. Mattel failed to seek such relief for Flynn or Cunningham,

8   however.

9   　　Mattel was also dilatory in seeking further expert examinations after it was put

10  on notice of MGA's experts' findings. During the two weeks between MGA's expert

11  reports being served (March 17, 2008) and the close of expert discovery (March 31,

12  2008), Mattel did nothing to pursue the discovery it now demands. Where a party is

13  not diligent, a motion to modify a scheduling deadline must be denied. *Johnson v.*

14  *Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

15  　　Mattel's eleventh hour request should also be rejected because allowing Mattel

16  to re-open expert discovery, examine the Bryant documents *yet again,* and submit

17  new "supplemental" reports on the eve of trial will have a cascading effect on nearly

18  every scheduling item pertaining to this case, and will significantly prejudice MGA

19  and Bryant. If Mattel is permitted a second round of expert discovery, and allowed

20  to submit new "supplemental" reports, then MGA and Bryant will be entitled to re-

21  depose both Cunningham and Flynn, which would likely have to occur a matter of

22  weeks or days before trial. Because Mattel is solely to blame for its predicament,

23  Mattel should not be permitted to re-open discovery, perform a "re-do" of its expert

24  examinations, and then submit new and improved expert reports under the

25  misleading label of Rule 26(e) "supplemental" reports.

26  　　For these and other reasons, as more fully explained below, Mattel's

27  Application should be denied in its entirety.

28

---

MGA's and Carter Bryant's Opposition To Mattel, Inc.'s *Ex Parte* Application to Compel Access to Certain Bryant
Originals for Non-Destructive Expert Examination and Testing
Case No. CV 04-9049 SGL (RNBx)
-2-

EXHIBIT __25__

PAGE __332__

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   The Key Carter Bryant Drawings

A central theme in Mattel's briefs is that its experts, and particularly Flynn and Cunningham, were overwhelmed by the sheer magnitude of the Bryant documents, which they repeat number over 2,000 documents, and therefore were unable to perform complete examinations. In fact, however, Mattel has known since at least 2004 that there were only several dozen key documents in this case, including the outline drawings on tracing paper and the color poster board drawings which are at issue in Flynn's and Cunningham's reports. The date on which Carter Bryant produced these drawings has been at the center of this case from its inception in 2004.

From the start, Bryant and MGA have truthfully contended that Bryant created the outline drawings (the pencil and black ink drawings of early Bratz-like figures on thin, tracing paper)[3] after Bryant resigned from Mattel in April 1998 and returned to Missouri to live with his parents. This was known to Mattel at least as early as November 2004 when Mattel first deposed Bryant in a three-day marathon session. During that testimony, Mattel's attorneys grilled Bryant about the dates on which he created hundreds of key drawings, including substantially all of the documents at issue in the reports of Mattel's four ink and paper experts. In his deposition, Bryant also testified that he had traced the "multi-color poster board drawings" from the outline drawings, and then added color to them, in 1999.[4]

Thus, given Mattel's questioning of Bryant and his responses, it is undeniable that the dates and sequence in which these two categories of documents were created

---

[3]   See, e.g., Lanstra Decl., Ex. 3: Bryant Drawings Bates-Numbered 194, 197 & 199.

[4]   Lanstra Decl., Ex. 4: Depo. Tr. of Carter Bryant (Nov. 4, 2004), at pp. 151-152.

EXHIBIT   25
PAGE   333

1  have been front and center in Mattel's thinking since at least 2004.  In fact, the

2  central purpose of Mattel's expert reports was apparently to rebut Bryant's testimony

3  and argue that the "multi-color" drawings actually preceded the outline drawings.

**B.  Mattel Examined, Photographed and Videotaped The Bryant
Documents for 5 Days in February, May and June 2007**

6  Although Mattel asserts that its experts were hampered by only having 35 days

7  to complete their examinations of the Bryant documents, Mattel was well aware of

8  the universe of documents its experts could potentially examine long before the

9  actual testing period began in September 2007.  Mattel in fact sought and obtained

10  permission to inspect and photograph all 2,000 original Bryant documents long

11  before Cunningham and Flynn conducted their examinations.  Specifically, between

12  February and June 2007, Mattel's attorneys spent five days examining,

13  photographing, and videotaping all of these documents in order "to determine which

14  of the originals are potentially appropriate candidates for expert analysis."[5]

15  Mattel first began its inspection and photographing of the documents on

16  February 27 and 28, 2007.  In May 2007, Mattel demanded that Bryant make further

17  documents available for inspection.  Pursuant to this request, Bryant's new counsel

18  made available for Mattel's inspection every original document in Bryant's

19  possession, constituting approximately 2,000 pages of original documents.[6]  On May

20  31 and June 1, 2007, Mattel's counsel, accompanied by a photographer and a

21  videographer, painstakingly reviewed, inventoried, catalogued and photographed

22  approximately two-thirds of the Bryant originals.[7]  When Mattel complained that its

23  ────────────

[5]  Lanstra Decl., Ex. 5: D. Hutnyan Decl. in Support of Mattel's Motion to
24  Compel Carter Bryant to Make Original Documents Available for Expert
Examination and Testing and For Sanctions (July 6, 2007), at Ex. 1 thereto at 15.

25  [6]  Lanstra Decl., Ex. 6: Mattel's Motion to Compel Carter Bryant to Make
Original Documents Available for Expert Examination and Testing and For
26  Sanctions, at 3-4.

27  [7]  *Id.* at 2.

28

MGA's and Carter Bryant's Opposition To Mattel, Inc.'s *Ex Parte* Application to Compel Access to Certain Bryant
Originals for Non-Destructive Expert Examination and Testing
Case No. CV 04-9049 SGL (RNBx)
-4-

EXHIBIT __25__

PAGE __334__

1  efforts at photographing and cataloging the documents had been hampered by the
2  failure to properly index the documents, Bryant agreed to set aside an additional two
3  days, June 20 and June 21, 2007, for Mattel to complete its inspection.[8]  Mattel
4  subsequently examined and photographed the Bryant originals for an additional day
5  on June 20, 2007, but decided not to spend the additional day offered by Bryant.[9]

6     C.    **Mattel's July 2007 Motion to Compel Bryant to Make Original**
7           **Documents Available For Expert Examination and Testing**

8       In July 2007, Mattel moved to compel Bryant to make over 2,000 of Bryant's
9  original documents available for expert examination and testing.[10]  Although Mattel
10  had previously examined and had the opportunity to photograph and videotape all of
11  these documents, Mattel made no attempt to narrow down the universe of documents
12  for its expert's review.  Moreover, Mattel demanded that it be given total control over
13  the documents for a period of over two months, and that it be allowed to shuttle the
14  documents to three or four different experts, all of whom it refused to identify to
15  Bryant on work-product grounds.[11]  Although Bryant did not dispute Mattel's right to
16  have its experts examine and subject certain key Bryant documents to forensic
17  testing, Bryant objected that Mattel's request was overly broad and failed to provide
18  adequate safeguards for the documents.[12]

19       While this Court generally agreed with Bryant's objection to the lack of
20  specificity and sheer volume of Mattel's request – noting that "a smaller universe of

---

22  [8]    Lanstra Decl., Ex. 7: M. Page Decl. in Opposition to Mattel's Motion to
Compel Carter Bryant to Make Original Documents Available for Expert
23  Examination and Testing and For Sanctions (July 13, 2007), at Ex. 12 thereto.
24  [9]    Lanstra Decl., Ex. 8: Carter Bryant's Opposition to Mattel's Motion to Compel
Carter Bryant to Make Original Documents Available for Expert Examination and
Testing and For Sanctions (July 13, 2007), at 5.
25  [10]   *Id.* at 3-4.
26  [11]   *Id.*
27  [12]   *Id.*
28

MGA's and Carter Bryant's Opposition To Mattel, Inc.'s *Ex Parte* Application to Compel Access to Certain Bryant
Originals for Non-Destructive Expert Examination and Testing
Case No. CV 04-9049 SGL (RNBx)
-5-

EXHIBIT __25__

PAGE __335__

1  documents would probably be adequate for testing" -- it ultimately granted Mattel's

2  requests with only two conditions.[13]  First, this Court required Mattel to submit *in*

3  *camera* the names and credentials of its experts.[14]  Second, it found that the two-

4  month time period requested by Mattel was "excessive" and ruled that Mattel's

5  experts should only have 35 days to complete their examination.[15]  The Court

6  indicated in the hearing, however, that he would agree to give Mattel additional time

7  for its experts to complete their examinations for "good cause" if the experts were

8  not able to complete their tasks "within the time allotted."[16]

9       This Court's August 30, 2007 Order, which tracked *Mattel's* proposed order in

10  almost every respect except the total time granted at the outset, similarly provided

11  that the 35-day time limit "may be extended upon a showing by Mattel of good

12  cause."[17]  *Despite the inclusion of this provision, however, Mattel never sought leave*

13  *from this Court for more time for its experts to conduct additional testing.*  Instead, at

14  the end of the initial 35-day period granted by this Court, Mattel simply returned the

15  documents to Bryant without comment or complaint.  Mattel's failure to request

16  more time is fatal to its Application, as it proves false the very premise of the

17  Application—namely, that Mattel's experts were not provided ample time for testing

18  in the fall of 2007.

19

20

21

---

22  [13]    Lanstra Decl., Ex. 9: Infante Hearing Tr. (Aug. 23, 2007), at 15.

23  [14]    Significantly, at least one of Mattel's experts, Lloyd Cunningham, informed Judge Infante in his *in camera* declaration, that he might perform the very same types of forensic examinations that Mattel now seeks leave to perform now:

24  examinations using infrared luminescence and reflected infrared light.  *See* Lanstra Decl., Ex. 10: Cunningham *In Camera* Decl., ¶4.

25  [15]    Lanstra Decl., Ex. 9: Infante Hearing Tr. (Aug. 23, 2007), at 18.

26  [16]    *Id.* at 20.

27  [17]    Lanstra Decl., Ex. 11: August 30, 2007 Order, ¶ 4.

28

EXHIBIT  25

PAGE  336

### D.  Mattel's Experts Examined and Performed Testing on the Bryant Documents for a Total of Approximately 40 Days

In total, Mattel's experts had possession of the Bryant documents for testing for approximately 40 days.  Cunningham, Mattel's principal forensic document examiner, obtained the documents on September 12, 2007 and maintained possession of the documents until September 28, 2007.[18]  During that 16-day period, Cunningham spent over 80 hours examining the documents.[19]  Cunningham has stated that he used numerous different methods of examination, including the use of oblique lighting, magnification, reflected infrared luminescence, UV lighting, as well as the examination of indented writing with the indentation materializer device.[20]

William Flynn, Mattel's second forensic document examiner, received the Bryant documents from Cunningham on September 29, 2007, and had a total of four days to examine the documents.[21]  Flynn indicated that he spent approximately 35 hours examining the documents.[22]  Mattel's paper expert, Walter Rantanen, and its ink chemist, Valery Aginsky, also spent substantial time reviewing the documents.  After completing its examinations, Mattel's counsel returned the Bryant documents to Bryant's counsel on October 17, 2007.

In December 2007, Mattel asked Bryant's counsel for permission to have Rantanen perform destructive testing on the Bryant originals.  In response, Mattel and Bryant worked out a stipulation providing that the originals would be sent to Rantanen for an additional four days so that he could take small punches or snippets

---

[18]  Lanstra Decl., Ex. 12: Depo. Tr. of Lloyd Cunningham (Mar. 31, 2008), at 27:23-28:23; Ex. 13: Invoices of Lloyd Cunningham.
[19]  *Id.*
[20]  Lanstra Decl., Ex. 14: Expert Report of Lloyd Cunningham, at 9.
[21]  Lanstra Decl., Ex. 15: Depo. Tr. of William J. Flynn (Mar. 27, 2008), at 30:16-31:2; Ex. 16: Invoices of William J. Flynn.
[22]  *Id.*

EXHIBIT 25
PAGE 337

1    of paper samples from a select group of Bryant originals.[23]  Pursuant to that

2    stipulation, the documents were sent to Rantanen's laboratory for delivery on January

3    14, 2008, and he maintained possession of them for 4 business days before returning

4    them to Bryant's counsel on January 17, 2008.

5        Prior to April 2, 2008, Mattel never indicated that Cunningham or Flynn

6    needed additional time to perform their examination of the Bryant documents.  Nor

7    did Mattel seek leave from Bryant, MGA or this Court to allow Cunningham or

8    Flynn additional time to perform such examinations.

9
10    **E.**     **Mattel's Expert Reports**

11        Mattel served Cunningham's and Flynn's expert reports on or about February

12    11, 2008.  Cunningham indicated in his report that he noticed "light pencil" strokes

13    on several of the multi-color poster board drawings that could have been from either

14    "a rough sketch" or "tracing outlines" from another drawing.[24]  Contrary to Mattel's

15    representations (*see* Docket No. 3008 at 4), Cunningham's report specifically states

16    that he did employ infrared luminescence and reflective infrared testing.[25]

17    **F.**     **MGA's Expert Examinations and Reports**

18
19        MGA retained two forensic document examiners to review the Cunningham

20    and Flynn reports, and the Bryant originals, and provide expert rebuttal reports:

21    Robert Kullman and Dr. Albert Lyter.  Kullman, who works at Speckin Laboratories

22    in Michigan, received the seven boxes of Bryant documents on or about January 26,

23    2008, and sent them to Lyter in North Carolina on approximately March 6, 2008.

---

[23]    Lanstra Decl., Ex. 17: Jan. 11, 2008 Stipulation Re: Mattel's Destructive Testing of Bryant Original Documents, at 2-4.

[24]    Lanstra Decl., Ex. 14: Expert Report of Lloyd Cunningham, at 6-8 (discussing Bryant 223, 225, 226, 227, 228, 229, 230, 231, 233, 234).

[25]    *Id.* at 9 (stating that he employed "oblique lighting, magnification, reflected infrared, infrared luminescence and UV [tests]").

EXHIBIT 25
PAGE 338

1  Because Kullman did not receive the Cunningham and Flynn reports until

2  approximately February 11, 2008, however, he only had a little over 3 weeks to

3  digest their reports and compare their conclusions with his own examination.

4        Dr. Lyter received the original Bryant documents on or about March 7, 2008,

5  and only had a total of approximately 10 days to examine the documents and prepare

6  his expert report.  Lyter and Kullman finalized their reports on March 17, 2008.

7  Both Kullman and Lyter found evidence of faint or partially obscured lines in the

8  colored poster board drawings which superimposed with the final ink lines on the

9  outline drawings on the tracing paper.[26]  Based on this, and other observations,

10  Kullman and Lyter concluded, in most instances, that the multi-color poster board

11  drawings were traced from the outline drawings on the tracing paper.  These

12  conclusions were in direct rebuttal to the opinions offered by Mattel's experts.

13  **G.    MGA's Experts Admitted to Seeing Faint Pencil Lines in The Multi-**

14  **Colored Drawings During Their Depositions**

15        On March 27, 2008, Flynn was deposed by MGA.  Flynn admitted that he had,

16  in fact, seen "faint pencil lines" in the multi-color drawings through his microscopic

17  analysis.[27]  Flynn also testified that, like Kullman and Lyter, he tried to see whether

18  the faint pencil lines on the multi-color drawings matched up with the ink lines on

19  the outline drawings.[28]  Unlike Kullman and Lyter, however, Flynn indicated that

20

21  [26]   Lanstra Decl., Ex. 18: Expert Report of Robert Kullman, at 3 ("In every case,
the faint lines in the mixed media drawings matched with the lines from the tracing

22  paper sketches/drawings."); Ex. 19: Expert Report of Albert Lyter, at 5-9.

[27]   Lanstra Decl., Ex. 15: Depo. Tr. of William J. Flynn (Mar. 27, 2008), at 77;

23  *see also id.* at 174-175: "Q. Did you find any partially obscured pencil lines on 227?
I'm sorry, let me direct your attention to 227, which is the colored or multimedia

24  drawing, do you see any partially obscured pencil lines on 227? A. There -- yes, in
only one area, I think what I see is a partially obscured pencil line. Q. Where is that?

25  A. There's a fold in the doll's skirt just below her right hip and it appears on the
poster board that there's almost a semi-circular pencil line that is on the right side of

26  the skirt."

[28]   *Id.* at 80-81.

27

28

MGA's and Carter Bryant's Opposition To Mattel, Inc.'s *Ex Parte* Application to Compel Access to Certain Bryant
Originals for Non-Destructive Expert Examination and Testing
Case No. CV 04-9049 SGL (RNBx)
-9-

EXHIBIT  25

PAGE  339

1   there was "never an exact one-to-one" match between the faint pencil lines and the

2   ink on the outline tracings.[29]  Accordingly, Flynn disagreed with Lyter's and

3   Kullman's conclusion that the poster board drawings had been traced from the

4   outline drawings.[30]  Indeed, Flynn reached the exact opposite conclusion: namely,

5   that the outline tracings were "traced" from the poster boards.[31]

6        Flynn also expressly testified that he had had sufficient time to reach the

7   conclusion set forth in his report.

8
9        Q:    In your view, did you have enough time to draw the conclusion
              that you drew in your report?
10       A:    Certainly.

11  (Lanstra Decl., Ex. 15: Depo. Tr. of William J. Flynn, at 229:23-25.)

12        On March 31, 2008, MGA took Cunningham's deposition.  Like Flynn,

13  Cunningham testified that he saw many areas of faint or partially obscured pencil

14  lines on the multi-colored poster board drawings.[32]  Consistent with his report,

15  Cunningham testified that he believed these pencil lines in some cases might be

16  evidence that those pencil lines were traced from other documents.

17       Q:    And you indicated that there was a possible pencil
              tracing outline from another document on Bryant 223; is
18            that correct?

19       A:    Yes.

20                    *      *      *      *

21       Q:    [Y]ou testified that [the faint pencil lines] exhibit
              possible evidence or they are possible evidence that
22            those lines were traced from another drawing, correct?

23

---

24  [29]   *Id.* at 81-82.

25  [30]   *Id.* at 225.

26  [31]   *See* Lanstra Decl., Ex. 20: Expert Report of William J. Flynn, at 7-8.

27  [32]   Sloan Decl., Ex. 12: Depo. Tr. of Lloyd Cunningham, at 141, 144-45
        (describing where he observes faint pencil strokes).

28

MGA's and Carter Bryant's Opposition To Mattel, Inc.'s *Ex Parte* Application to Compel Access to Certain Bryant
Originals for Non-Destructive Expert Examination and Testing
Case No. CV 04-9049 SGL (RNBx)
-10-

EXHIBIT  25
PAGE  340

1       A:   Could have been, yes.

2   (Lanstra Decl., Ex. 12: Depo. Tr. of Lloyd Cunningham, at 140:7-10; 141:23-142:2.)

3       Contrary to Mattel's assertions,[33] Cunningham specifically testified that he

4   "use[d] infrared and infrared luminescence on the poster board drawings to

5   determine if there was a pencil line under some of the bold outline[s]," and

6   determined that there were pencil strokes under some of those bold lines.[34]

7   Cunningham also stated that although he only conducted a "cursory examination" on

8   some of the documents, he had sufficient time to examine all of the specific

9   documents which are actually discussed in his report.[35]

### H.   Mattel's Belated Requests for Further Expert Examination of the Bryant Documents

12       On March 31, 2008, two weeks after Lyter's and Kullman's reports were

13   released to Mattel, the expert discovery deadline imposed by the Court's scheduling

14   order expired.[36]   Two days later, on April 2, 2008, Mattel's attorneys sent a letter to

15   MGA and Bryant demanding that Bryant agree to provide Cunningham and Flynn an

16   additional one week each to perform additional non-destructive testing and

17   examination of the documents.[37]   Bryant rejected Mattel's request in a letter dated

18   April 3, 2008, explaining that Mattel's request was improper for numerous reasons,

19   including that Mattel's experts had already had sufficient time to examine the

20   documents and had not requested additional time for testing, as permitted by this

21   Court's August 30 Order.[38]   In addition, Bryant noted that fact discovery in the case

---

[33]   *See* Docket No. 3008 at 4 (complaint that Mattel's experts did not have time to conduct infrared luminescence and reflective infrared testing).

[34]   Lanstra Decl., Ex. 12: Depo. Tr. of Lloyd Cunningham, at 143:1-5.

[35]   *Id.* at 53.

[36]   Lanstra Decl., Ex. 21: Scheduling Order (Oct. 31, 2007).

[37]   Lanstra Decl., Ex. 22.

[38]   Lanstra Decl., Ex. 23, at 2.

EXHIBIT 25
PAGE 341

1  had closed more than two months ago, and expert discovery, absent agreement

2  between the parties, had closed on March 31, 2008.[39]  On April 4, 2008, MGA sent

3  Mattel's counsel a letter joining in Bryant's objections.[40]

### III.    ARGUMENT

A.    **Mattel Has Not – and Cannot – Establish The Good Cause Necessary To Support Its Last Minute Request For Further Expert Examination**

Expert discovery in this case is closed and the parties have no substantive right to file "sur-rebuttal" expert reports under the Scheduling Order.  In order to obtain such extraordinary relief, Mattel must present the "good cause" necessary for re-opening expert discovery and submitting a second round of expert reports at this late stage of the pre-trial proceedings.[41]  While the District Court afforded Mattel seven days to file any additional reports that this Court authorized upon a showing of "good cause," Mattel did not fashion the present Application as one to show the necessary "good cause" to re-open expert discovery and serve sur-rebuttal reports, but merely as a request for additional access to the documents for further testing.  For this reason alone, Mattel's Application should be denied in its entirety for failure to carry the burden attendant to the ultimate relief it seeks.  *Telemasters, Inc. v. Vintage Club Masters Ass'n*, No. CV 05-05139 FMC (VBKx), 2007 WL 1839701, at *2 (C.D. Cal. Feb. 2, 2007) ("[W]here a party has not sought to modify a scheduling order deadline

---

[39]  *Id.* at 1.

[40]  Lanstra Decl., Ex. 24.

[41]  Attempting to avoid these central issues, Mattel's counsel erroneously argued during the meet-and-confer that a discovery deadline extension was not necessary because the parties had (purportedly) stipulated on the record during a June 20, 2006 hearing before Magistrate Judge Block to allow access to Carter Bryant's original drawings upon 15 days notice at any time, including months after the close of discovery.  (Lanstra Decl. ¶ 22.)  Regardless of Mattel's characterization of that stipulation, it certainly did not and could not extend beyond the discovery schedule set forth in the Rule 16 Scheduling Order.  Magistrate Judge Block lacked the authority to provide the sweeping order that Mattel's counsel maintains he did, an order that would transcend the Court's management of this case.

---

EXHIBIT    25

PAGE    342

1  [and show good cause], this Court may deny as untimely any motion filed after that

2  deadline") (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir.

3  1992)); *Johnson*, 975 F.2d at 610 (citing *U.S. Dominator, Inc. v. Factory Ship Robert*

4  *E. Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985) (court may deny as untimely a motion

5  filed after the scheduling order cut-off date where no request to modify the order has

6  been made)).  Regardless, Mattel *cannot* establish the "good cause" necessary to re-

7  open expert discovery and submit more expert reports.

8  　　　　　　　**1.　　The "Good Cause" Standard**

9  　　　　A discovery cut-off may be modified only for good cause.  Fed. R. Civ. P.

10  16(b)(4); *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667,

11  671 (C.D. Cal. 2003).  "[T]he 'good cause' standard set forth in Rule 16 primarily

12  focuses upon the diligence of the party requesting the amendment."  *Schwerdt v. Int'l*

13  *Fid. Ins. Co.*, 28 Fed. Appx. 715, 719 (9th Cir. 2002).  "[G]ood cause can only be

14  shown if the pretrial schedule 'cannot reasonably be met despite the diligence of the

15  party seeking the extension.'"  *Yent v. Baca*, No. CV-01-10672 (VBKX), 2002 WL

16  32810316, at *1 (C.D. Cal. Dec. 16, 2002) (citation omitted).  "'If that party was not

17  diligent, the inquiry should end.'"  *Id.* (quoting *Johnson*, 975 F.2d at 609, and

18  *Schwerdt*, 28 F. Appx. at 719).  If the matters that allegedly necessitate an extension

19  were reasonably foreseeable, or the party did not seek relief once it became apparent

20  that it could not comply with the deadline, then the party was not diligent.  *E.g.*,

21  *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999).

22  　　　　　　　**2.　　Mattel Has No Good Cause Because It Was Not Diligent**

23  　　　　Here, Mattel was far from diligent.  In fact, Mattel, its counsel, and its experts

24  were negligent in at least three respects, each of which independently bars the

25  extraordinary relief which Mattel seeks here.

26

27

28

MGA's and Carter Bryant's Opposition To Mattel, Inc.'s *Ex Parte* Application to Compel Access to Certain Bryant
Originals for Non-Destructive Expert Examination and Testing
Case No. CV 04-9049 SGL (RNBx)
-13-

EXHIBIT    25

PAGE    343

1    First, Mattel and its experts were either negligent in their initial testing of the

2  Bryant drawings or negligent in not asking Bryant or the Court for more time to

3  perform their initial testing in the fall of 2007. In their depositions, Cunningham and

4  Flynn have taken seemingly contradictory positions. On the one hand, both

5  Cunningham and Flynn have represented that they had sufficient time to reach the

6  conclusions set forth in their respective reports. (See supra Section II.G.) Indeed,

7  Cunningham expressly states that he had sufficient time to examine all the

8  documents discussed in his report and that he performed examinations using both

9  infrared luminescence and infrared light.[42] On the other hand, Mattel now claims

10  that both Cunningham and Flynn were hampered by the 35-day deadline imposed by

11  this Court from performing thorough testing.

12    The problem is that this Court expressly advised Mattel that he would

13  entertain an extension of this 35-day deadline for "good cause" if Mattel could show

14  that its experts did not have sufficient time to perform the requisite tests within the

15  time allotted. Mattel, however, failed to seek such an extension either from Bryant

16  or from this Court, despite the fact that Bryant later voluntarily granted Mattel's

17  paper expert, Walter Rantanen, an additional four days to conduct destructive

18  sampling on the documents.

19    Mattel's failure to seek such additional testing is dispositive. Either Mattel's

20  experts believed that they had performed a thorough review at the time (and were

21  negligent) or they were lying in the weeds and intentionally failed to perform certain

22  tests for fear of finding facts that would support Bryant's account of the sequencing

23  of the drawings. Regardless of the reason, Mattel was clearly negligent in not

24  seeking leave to perform additional testing in the fall of 2007. Under no standard

25  can such conduct be deemed "diligent" and if a party is not diligent, its motion to

26  ───────────
[42]    Lanstra Decl., Ex. 12: Depo. Tr. Of Lloyd Cunningham (Mar. 31, 2008), at 53,
27  142-43.

28

MGA's and Carter Bryant's Opposition To Mattel, Inc.'s Ex Parte Application to Compel Access to Certain Bryant
Originals for Non-Destructive Expert Examination and Testing
Case No. CV 04-9049 SGL (RNBx)
-14-

EXHIBIT  25
PAGE  344

1   extend a scheduling deadline must be denied. *Johnson*, 975 F.2d at 608-09.[43]  *See*

2   *also Hussain v. Nicholson*, 435 F.3d 359, 363-64 (D.C. Cir.), *cert. denied*, 127 S. Ct.

3   494 (2006) (neither expert's incompetence nor attorney's lack of diligence supply

4   "good cause" to modify expert discovery deadlines).

5          Second, Mattel was also negligent in failing to move for further expert

6   discovery in March 2008 before the expiration of the March 31 expert discovery cut-

7   off.  Mattel alleges that its need for further expert examination was created by the

8   new and unanticipated testing performed by Mr. Kullman and Dr. Lyter.  However,

9   even if Kullman's and Lyter's examinations somehow justify Mattel's request for

10  further examination, (which they cannot as discussed *infra*), Mattel should have filed

11  for such relief promptly upon receiving these reports on March 17, 2008.  Instead,

12  Mattel waited for more than three weeks, until April 7, 2008, to seek any relief, and

13  therefore missed the March 31 expert discovery deadline by over a week.  As such,

14  Mattel cannot establish the good cause necessary to amend the discovery schedule.

15  Sitting on one's hands while the discovery clock expires does not constitute diligence

16  or establish good cause for a scheduling order deadline extension.  As explained in

17  *Yent*:

18              Plaintiff has not established good cause.  He does not
19          explain why the underlying motion was not brought in a timely
            fashion so that the motion could be heard prior to the discovery
20          motion deadline.  In short, Plaintiff neither cites nor grapples
21          with the high standards of Rule 16, and has failed to make the
            necessary showing of diligence.
22

23

24
    _____
25  [43]    Besides rendering their present claim disingenuous, Mattel's failure to make
    the request for additional time specifically invited by this Court demonstrates a lack
26  of diligence amounting to a lack of good cause to now re-open expert discovery on
    the eve of trial.  *See Johnson*, 975 F.2d at 609; *Schwerdt*, 28 F. Appx. at 719; *Yent*,
27  2002 WL 32810316, at *1.

28
    _____
MGA's and Carter Bryant's Opposition To Mattel, Inc.'s *Ex Parte* Application to Compel Access to Certain Bryant
Originals for Non-Destructive Expert Examination and Testing
Case No. CV 04-9049 SGL (RNBx)
-15-

EXHIBIT    25
PAGE   345

1
2
3
      Similarly, plaintiff fails to explain why his waiting until the eve of the close of discovery to file his application moving for relief is not a crisis of his own creation precluding him from seeking *ex parte* relief.

4   *Yent*, 2002 WL 32810316, at *1; *see Mission Power Eng'g Co. v. Cont'l Cas. Co.*,

5   883 F. Supp. 488, 492-93 (C.D. Cal. 1995). Further instructive is *Reliance Ins. Co. v.*

6   *Louisiana Land & Expl. Co.*, 110 F.3d 253 (5th Cir. 1997). In that case, the plaintiff

7   sought permission to supplement its expert's report 10 days after the scheduling

8   deadline. *Id.* at 257. The court found that a party does not have "good cause" to re-

9   open an expert report deadline on the basis that "the deposition of its expert witness

10  did not go well," as that constitutes no justification for the delay in seeking relief. *Id.*

11  Likewise here, MGA's expert reports do not supply a "good cause" basis for Mattel to

12  re-open discovery and permit Mattel to file sur-rebuttal reports after the expert

13  discovery deadline. *See also Keys v. M/V Ming Longevity*, No. 01-2447, 2003 WL

14  25720981, at *2 (E.D. La. Jan. 21, 2003) (prohibiting untimely supplemental expert

15  report in absence of satisfactory explanation as to why earlier report did not include

16  analysis known to expert).

17      <u>Third</u>, the operative Scheduling Order in this case, issued on October 31, 2007,

18  established a fact discovery cutoff of January 28, 2008 and an expert discovery cutoff

19  of March 31, 2008. (Lanstra Decl., Ex. 21 at 2.) It is elementary that extensions of

20  time are to be brought before the prescribed time has expired. *See* Fed. R. Civ. P.

21  6(b)(1); *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607-08 (E.D. Cal. 1999) (a party

22  should make a prompt request for modification once it is apparent that compliance is

23  not possible). In fact, the District Court's "Standing Order" specifically requires that

24  applications to extend scheduling deadlines "must be filed in advance of the date

25  due." (Lanstra Decl., Ex. 25 at ¶ 7.) Again, Mattel did not seek any relief until April

26  7, 2008, more than one week after the expert discovery cutoff of March 31, 2008, and

27  more than two months after the fact discovery cutoff of January 28, 2008.

28

EXHIBIT 25
PAGE 346

1  Accordingly, Mattel's request to extend the scheduling order deadlines is untimely

2  and should be denied. *See Dedge v. Kendrick*, 849 F.2d 1398 (11th Cir. 1998)

3  (motion filed after the scheduling order cut-off date is untimely and may be denied

4  solely on that ground).

### 3.  MGA's And Bryant's Actions Do Not Provide Mattel Any Good Cause Nor Do They Excuse Mattel's Lack Of Diligence And/Or Negligence

Contrary to Mattel's argument, MGA's and Bryant's actions do not supply the

"good cause" necessary to support Mattel's requests.[44]  *Reliance*, 110 F.3d at 257.

Mattel has only itself to blame for its predicament.  "Rule 16 scheduling orders are at

the heart of case management and if they can be flouted every time counsel

determines she made a tactical error in . . . discovery, their utility will be severely

impaired." *Yent*, 2002 WL 32810316, at *1 (quoting *Turner v. Schering-Plough*

*Corp.*, 901 F.2d 335, 341 n.4 (3d Cir. 1990) (internal quotation marks omitted)).

First, contrary to Mattel's repeated statements, it was not MGA and Bryant that

"severely limited Mattel's experts' access to Bryant's original documents." (Docket

No. 3008 at 2.)  The 35-day access period was the product of motion practice,

ultimately decided and ordered by this Court after an *in camera* review of

declarations from Mattel's experts that included statements (unknown to MGA or

Bryant at the time) about the contemplated testing.[45]  Moreover, this Court

specifically granted Mattel the opportunity to seek additional time upon "good

cause" shown, but Mattel never asked for any additional time to perform the testing

that is now says it did not have the time to do the first time.

---

[44]  Nor do their actions establish that Mattel is without fault or guilty only of excusable neglect to justify the use of *ex parte* procedures.  "'Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have . . . .'" *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995) (citation omitted).

[45]  Lanstra Decl., Exs. 10, 26-28.

EXHIBIT  25

PAGE  347

1    <u>Second</u>, as Mattel has admitted in its briefing, and both Cunningham and

2  Flynn admitted in their deposition, Cunningham and Flynn both saw the faint or

3  partially obscured pencil lines in the multi-colored poster board drawings back in

4  September or October 2007.  Despite their proclaimed expertise in the field, however,

5  Cunningham and Flynn decided—depending on which of the two contradictory

6  Mattel stories is to be credited—either (1) that they wanted to perform further

7  examination of the lines but did not have the time, or (2) that they did not examine

8  the lines more closely because they did not believe them to be significant.  (Docket

9  No. 2008 at 2.)  Either way, Mattel and its experts were either negligent in failing to

10  request more time to perform the testing necessary to submit a complete report under

11  Rule 26, negligent in the application of their scientific expertise, or intentionally

12  decided to "lie in the weeds" until MGA's experts issued their reports.  *See Keener v.*

13  *U.S.*, 181 F.R.D. 639, 641 (D. Mont. 1998).  MGA and Bryant should not pay the

14  price for Mattel's poor strategic choices.  *Id.*

15    <u>Third</u>, contrary to Mattel's claims, MGA's expert reports are proper *rebuttal*

16  reports.  MGA's experts did not, as Mattel misleadingly claims, "develop a rebuttal

17  theory not based on the evidence presented in Mssrs. Flynn's and Cunningham'[s]

18  reports."  (Docket No. 2008 at 9.)  Rather, consistent with Rule 26(a)(2)(C)(ii),

19  MGA's experts contradicted and rebutted the evidence "on the same subject matter

20  identified by the other party" – namely, the sequencing of the Bryant originals.  In

21  fact, MGA's experts scientifically examined the *exact same evidence* that Mattel's

22  experts examined (the original Bryant drawings) with the *exact same instruments*

23  *and methods* available to, and in most cases, employed by Mattel's experts.  MGA's

24  experts just performed their jobs more thoroughly and completely than Flynn and

25  Cunningham.  Mattel's argument that MGA's rebuttal reports were improper because

26  Mr. Kullman and Dr. Lyter used methods not employed by Mattel's experts, or

27  performed a more thorough analysis of the documents, is simply absurd.

28

---

MGA's and Carter Bryant's Opposition To Mattel, Inc.'s *Ex Parte* Application to Compel Access to Certain Bryant
Originals for Non-Destructive Expert Examination and Testing
Case No. CV 04-9049 SGL (RNBx)
-18-

EXHIBIT   25

PAGE   348

1    Cunningham and Flynn are not entitled to a "re-do" merely because they failed

2  to perform the same tests or focus on the same lines as Kullman and Lyter.  Under

3  very similar circumstances, a sister district denied a party's effort to supplement its

4  expert report for the purposes of "clarifying their position" on "subjects that have

5  been in this case for years," after the expert discovery cut-off and only 6 weeks

6  before trial:

7
> [N]ot only was the issue known to the plaintiffs, but their expert
8  [ ] could have addressed the damages issue just as well in his first
> report as he could now.  He did not address it before, and to allow him
9  to do so now would be to allow a new report with a new area of
> opinions, and not merely a supplement.  Where no changed
10  circumstance has occurred (such as discovery of new evidence), this is
> not normally permitted.  The documents on which [the expert's]
11  proposed supplemental report relies, namely 44 [ ] papers which are
> already listed as plaintiffs' exhibit 1, had been produced well prior to
12  the end of discovery and were available to [the expert] . . . No
> reasonable explanation has been given for plaintiffs' decision not to
13  address damages by expert testimony [before] or for the change of
> thinking today.
14

15  *Scopia Mortgage Corp. v. Greentree Mortgage Co.*, 184 F.R.D. 526, 528, 529, 530

16  (D.N.J. 1998).  Mattel's requests here should likewise be denied.

18        4.    **Granting Mattel's Request For A Second Round Of Testing**
19              **And Expert Reports On The Eve Of Trial Would Prejudice**
              **MGA And Bryant**
20

21    Another fundamental reason for denying the Application, which goes

22  unaddressed by Mattel, is the prejudice that MGA and Bryant would suffer if the

23  scheduling deadlines were modified on the eve of trial, long after the close of expert

24  discovery.  *E.g., Estate of Gonzalez v. Hickman*, No. EDCV 05-660 MMM (RCx),

25  2007 WL 3237639, at *2 (C.D. Cal. Jan. 8, 2007).  Where expert witness deadlines

26  are extended, "the rest of the schedule laid out by the court months in advance, and

27  understood by the parties, would have to [be] altered as well.  Disruption to the

28

MGA's and Carter Bryant's Opposition To Mattel, Inc.'s *Ex Parte* Application to Compel Access to Certain Bryant
Originals for Non-Destructive Expert Examination and Testing
Case No. CV 04-9049 SGL (RNBx)
-19-

EXHIBIT  25
PAGE  349

1 | schedule of the court and other parties in that manner is not harmless." *Wong v.*
2 | *Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005).

3 |     If expert discovery were re-opened and leave granted to submit
4 | "supplemental" expert reports, MGA and Bryant respectfully submit that they would
5 | in turn be entitled, *inter alia*: (1) to re-depose Flynn and Cunningham; and (2) to file
6 | motions *in limine* to exclude their new testimony on *Daubert* or other grounds. *E.g.*,
7 | *Miller ex rel. S.M. v. Bd. of Educ.*, 455 F. Supp. 2d 1286, 1299 (D.N.M. 2006)
8 | (permitting late expert reports has the effect of denying the opposing party the
9 | opportunity to file a meaningful *Daubert* motion); *Beller*, 221 F.R.D. at 694-95
10 | (where supplemental expert report allowed, court is bound to reopen discovery to
11 | allow opposing party time for its own experts to view the reports and formulate new
12 | opinions and permit new depositions, which could lead to modification of prior
13 | reports and new counter-experts). This would surely disrupt the Court's current
14 | schedule and/or prejudice MGA and Bryant.

15 |     In fact, Mattel's "supplemental" expert reports would not be due until 3 weeks
16 | after any request to re-open expert discovery is granted.[46] *From the date Mattel has*
17 | *indicated it will file its Reply to this Joint Opposition*, April 22, that means that
18 | Mattel's "supplemental" reports would not be due until at least <u>May 12, 2008</u>.
19 | Among the slew of other scheduling deadlines thrown into disarray by such an
20 | extension, motions *in limine* were due April 14, 2008, the final pre-trial conference,
21 | which is supposed to address, among other matters, witnesses and exhibits, is set for
22 | May 5, 2008, and the trial is set for May 27, 2008. In short, if granted, Mattel's
23 | request would have a detrimental domino effect on numerous scheduling issues and
24 | threaten to substantially disrupt the already tight procession towards the Phase 1 of

---

26 | [46]     Mattel has requested 14 days to test the Bryant original drawings, and sought
27 | and received from Judge Larson for an additional 7 days to prepare sur-rebuttal
reports if the Discovery Master allows them.

---

MGA's and Carter Bryant's Opposition To Mattel, Inc.'s *Ex Parte* Application to Compel Access to Certain Bryant
Originals for Non-Destructive Expert Examination and Testing
Case No. CV 04-9049 SGL (RNBx)
-20-

EXHIBIT ___25___
PAGE ___360___

1  the trial.  In addition, MGA and Bryant would be prejudiced as they will have no

2  meaningful time before trial commences to engage in the counter-discovery they are

3  entitled to conduct, including re-deposing Flynn and Cunningham about their new

4  reports.  For all MGA and Bryant know, Mattel will be putting Flynn and

5  Cunningham on the stand on the first day of trial, May 27, 2008.

6       Moreover, if a party intends to file a "supplemental" expert report, as Mattel

7  claims it is doing, it _must_ do so before pretrial disclosures are due under Rule 26(a)(3)

8  are due.[47]  Fed. R. Civ. P. 26(e)(2).  Rule 26(a)(3) disclosures must be made at least

9  30 days before trial, unless the court sets a different time.  Fed. R. Civ. P.

10  26(a)(3)(B).  Thirty days before trial would be April 27, 2008, and Judge Larson has

11  ordered those disclosures to be made by April 21, 2008.  (Lanstra Decl., Ex. 21 at 2.)

12  Accordingly, Mattel's plan to file "supplemental" expert reports, at the earliest on

13  May 12, clearly violates the Federal Rules.

14       **B.**    **Mattel Cannot Skirt The Absence Of "Good Cause" By Presenting**

15            **Its Desire To Submit New-And-Improved Reports Under The Guise**

           **Of Rule 26(e) "Supplemental" Expert Reports**

16

17       Mattel attempts to disguise its desire to file a second round of new-and-

18  improved expert reports by characterizing them as mere "supplemental" reports

19  under the Fed. R. Civ. P. 26(e)(2).[48]  Mattel's argument is without merit and should

20  be rejected by this Court.  "Rule 26 provides no safe harbor for [a party's] lack of

21  diligence and failure to show 'good cause.'  [The] obligation to supplement expert

22  reports does not give [a party] the right to ignore the Court's deadlines, reopen

23

24  [47]    Legitimate supplemental reports and disclosures are permitted after the entry

25  of a pre-trial order to prevent "manifest injustice," _Galdamez v. Potter_, 415 F.3d 1015, 1020 (9th Cir. 2005), but Mattel clearly does not meet that standard here.

26  [48]    In its District Court Application briefing, Mattel stated: "Mattel is not seeking to file a sur-rebuttal report.  Rather, Mattel seeks to quickly serve a supplemental to

27  one or two of its existing expert reports . . . ."  (Docket No. 3055 at 7.)

28

EXHIBIT   **25**

PAGE   **351**

1  discovery, find 'new facts,' [and] generate new expert reports . . . ." *DAG Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 110 (D.D.C. 2005); *see also Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 662 (N.D. Ga. 2001).

4       As an obvious matter, if Mattel was seeking to file a true "supplemental" expert report, there would be no need to re-open expert discovery. Mattel could simply file its "supplemental" report before April 21. *See* Fed. R. Civ. P. 26(a)(3) & (e). Tellingly, that is not the path Mattel has sought, since it is not seeking to file a true "supplemental" expert report.

9       Further, contrary to Mattel's plea that it "has a responsibility to conduct that testing and supplement its reports," (Docket No. 2008 at 9), Mattel's "responsibility" was to conduct a "complete" and accurate report in the first instance. *See* Fed. R. Civ. P. 26(a)(2)(B). A "supplemental" report is not the vehicle sought to be employed by Mattel here. "Although Fed. R. Civ. P. 26(e) requires a party to 'supplement or correct' disclosure upon information later acquired, that provision does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report . . . ." *Beller ex rel. Beller v. U.S.*, 221 F.R.D. 689, 695 (D.N.M. 2003). "For example, courts have rejected supplemental expert reports that: 1) 'were significantly different' from the expert's original report and effectively altered the expert's theories; or 2) attempted to 'deepen' and 'strengthen' the expert's prior reports." *Lindner v. Meadow Gold Dairies, Inc.*, Civil No. 06-00394 JMS-LEK, 2008 WL 763236, at *13 (D. Haw. Mar. 19, 2008). In agreement with *Beller*, the *Lindner* court stated that:

> To allow these types of supplemental reports "would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given. This practice would surely circumvent the full disclosure requirement implicit in Rule 26 and would

EXHIBIT   25
PAGE   352

1  interfere with the Court's ability to set case management
2  deadlines, because new reports and opinions would warrant
3  further consultation with one's own expert and virtually require
   new rounds of depositions.  That process would hinder rather
4  than facilitate settlement and the final disposition of the case."

5  *Id.* at *13-14 (quoting *Beller* at 695).  In particular, courts have rejected supplemental

6  expert reports that rely upon testing or analyses that, with proper diligence, could

7  have been done earlier and incorporated in the experts' original report.  *See Lindner*,

8  2008 WL 763236, at *14 (rejecting supplemental expert report where report was

9  based upon additional field work that expert "could have conducted … prior to his

10  original expert disclosure"); *Palmer v. Asarco Inc.*, No. 03-CV-0498-CVE-PJC, 2007

11  WL 2254343, at *4 (N.D. Okla. Aug. 3, 2007) (rejecting supplemental report where

12  expert "could have performed the same modeling in a timely fashion").

13          This is precisely what Mattel is trying to do here: evade Rule 26's requirement

14  that it submit a complete report by trying to "deepen" and "strengthen" its report in

15  response to MGA's rebuttal reports through additional testing that they could have

16  done months ago.  Both Cunningham and Flynn saw the faint pencil lines, but either

17  through negligence or lack of time (which they could have cured by asking for a

18  "good cause" extension), they failed to perform all of the relevant testing.  Flynn and

19  Cunningham simply do not get a "re-do" under the guise of a Rule 26(e)

20  "supplemental" expert report, however.[49]  As stated in this District:

21          Rule 26(e) envisions supplementation when a party's discovery
22          disclosures happen to be defective in some way so that the disclosure
           was incorrect or incomplete and, therefore, misleading.  ***It does not***
23          ***cover failures of omission because the expert did an inadequate or***

---

24  [49]    Mattel's standing reliance on *Phillips v. Netblue, Inc.*, No. C-05-4401 SC,
25  2007 WL 528722 (N.D. Cal. Feb. 13, 2007), is misplaced.  (Docket No. 2008 at 5, 6,
    7 & 10.)  That case involved a Rule 26(e) "supplemental" expert report, not a
26  reply/sur-rebuttal report or the re-opening of expert discovery after the cut-off.  *Id.* at
    *2.  Of note, the *Netblue* court specifically held that the supplemental report did not
27  add anything or fill-in any gaps.  *Id.*  That is precisely what Mattel seeks to do here.

28

MGA's and Carter Bryant's Opposition To Mattel, Inc.'s *Ex Parte* Application to Compel Access to Certain Bryant
Originals for Non-Destructive Expert Examination and Testing
Case No. CV 04-9049 SGL (RNBx)
-23-

EXHIBIT   25
PAGE   853

1      ***incomplete preparation.*** To construe supplementation to apply

2      wherever a party wants to bolster or submit additional expert opinions

3      would reek havoc in docket control and ***amount to unlimited expert***

    ***opinion preparation.*** Therefore, [the expert's] second test and opinion

4      was not supplementation, but merely an out-of-time disclosure. . . . In

5      the instant case, Plaintiffs do not contend that the "supplemental"

    reports at issue were made in response to new information that was

6      unavailable at the time of their experts' initial Rule 26 disclosures . . . .

7  *O'Connor v. Boeing N. Am., Inc.*, No. CV 97-1554 DT (RCx), 2005 WL 6035243, at

8  *9-10 (C.D. Cal. Sept. 12, 2005) (internal block quoting omitted) (quoting *Akeva*

9  *L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002)).

10      Despite Mattel's efforts here, these "supplemental" report principles are widely

11  understood and accepted. *E.g., DAG Enters.*, 226 F.R.D. at 106 (second report to

12  clean up failures of first report not "supplemental" where opposing party's expert's

13  attacks were foreseeable); *3M Innovative Prop. Co. v. Dupont Dow Elastomers, LLC*,

14  No. 03-3364, 2005 WL 6007042, at *3-4 (D. Minn. Aug. 29, 2005) (where "new

15  tests could have been conducted and disclosed during the discovery period,"

16  supplementation cannot be used to correct a major omission in initial report) (citing 6

17  Moore's Fed. Practice § 26.131 n. 18.1 (2005)); *Toomey v. Nextel Commc'ns, Inc.*,

18  No. C-03-2887 MMC, 2004 WL 5512967, at *4 (N.D. Cal. Sept. 23, 2004) (listing

19  cases); *MRO Commc'ns, Inc. v. AT&T Co.*, 205 F.3d 1351, 1999 WL 1178964, at

20  **6-7 (9th Cir. 1999) (unpublished) (rejecting "supplemental" report based on

21  information available at the time of the original expert disclosure). In short, Mattel

22  cannot establish good cause to re-open discovery or to prepare "supplemental" or

23  "sur-rebuttal" reports and, accordingly, its Application should be denied.

24

25

26

27

28

MGA's and Carter Bryant's Opposition To Mattel, Inc.'s *Ex Parte* Application to Compel Access to Certain Bryant
Originals for Non-Destructive Expert Examination and Testing
Case No. CV 04-9049 SGL (RNBx)
-24-

EXHIBIT 25
PAGE 354

**C.    Mattel's Request To "Re-Do" Its Expert Examination Of The Bryant Originals Is Categorically Different Than MGA's Right To Test The Prince Notary Book For The First Time And Prepare Its Initial Rebuttal Report**

Mattel's repeated attempts to compare this Application to MGA's efforts to test Ms. Prince's notary book is misplaced and disingenuous. First, unlike Mattel here, MGA was diligent as it sought an extension of the March 17 rebuttal expert report deadline before the deadline expired and expert discovery closed. Second, and more importantly, the Scheduling Order specifically contemplated MGA's right to submit a rebuttal expert report. MGA was just seeking its *first* chance to test the notary book and submit a report; it was not seeking leave to test the document for a *second* time and submit a *second* expert report, as Mattel is here. Third, MGA's testing of the notary book was delayed solely due to Mattel's filing of a motion for a protective order; Mattel's failure to test the Bryant documents more thoroughly, by contrast, was its own choice.

## IV.    CONCLUSION

For these reasons set forth above, Mattel's *ex parte* Application should be denied in its entirety.

DATED: April 17, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _Raoul D. Kennedy_ (by ALL)
    Raoul D. Kennedy
    Attorneys for MGA Entertainment, Inc.,
    MGA Entertainment (HK) Ltd., MGAE de
    Mexico, S.R.L. de C.V., and Isaac Larian

KEKER & VAN NEST, LLP

By: _Matthew M. Werdegar_ (by ALL)
    Matthew M. Werdegar
    Attorneys for Carter Bryant

EXHIBIT 15
PAGE 355

CALENDARED

RECEIVED

APR 1 7 2008

1   THOMAS J. NOLAN (Bar No. 66992)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2   300 South Grand Avenue
    Los Angeles, CA  90071-3144
3   Telephone:  (213) 687-5000
    Facsimile:   (213) 687-5600
4   E-mail:    tnolan@skadden.com

5   RAOUL D. KENNEDY (Bar No. 40892)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6   Four Embarcadero Center, Suite 3800
    San Francisco, CA  94111
7   Telephone:  (415) 984-6400
    Facsimile:   (415) 984-2698
8   E-mail:    rkennedy@skadden.com

9   Attorneys for Counter-Defendants,
    MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
10  (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                  EASTERN DIVISION

14

15  CARTER BRYANT, an individual        )   CASE NO. CV 04-9049 SGL (RNBx)

16              Plaintiff,              )   Consolidated with Case No. 04-9059
                                        )   and Case No. 05-2727
17       v.                            )
                                        )   **DISCOVERY MATTER**
18  MATTEL, INC., a Delaware            )
    corporation                        )   **PROOF OF SERVICE**
19                                      )
              Defendant.               )
20  ──────────────────────────          )
21  Consolidated with MATTEL, INC. v.   )
    BRYANT and MGA                     )
22  ENTERTAINMENT, INC. v.             )
    MATTEL, INC.                       )   Trial Date:        May 27, 2008
23                                      )

24

25

26

27

28

PROOF OF SERVICE                                    NO. CV 04-9049 SGL (RNBx)

EXHIBIT   25
PAGE   356

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

      I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 300 South Grand Avenue, Suite 3400, Los Angeles, California 90071.

     . On **April 17, 2008,** I served the foregoing documents described as:

**SEE ATTACHED DOCUMENT LIST**

on the interested parties in this action addressed as follows:

**SEE ATTACHED SERVICE LIST**

(X)    (BY PERSONAL SERVICE)  ☒   By personally delivering copies to the person served. (FEDERAL)

                                 ☒   I caused such document to be hand delivered to the above addressees. (FEDERAL)

(X)    (BY FEDERAL EXPRESS)

( )    (BY ELECTRONIC MAIL)

      I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on **April 17, 2008,** in San Francisco, California.

      Matthew Bowman
      PRINT NAME                  SIGNATURE

PROOF OF SERVICE                             NO. CV 04-9049 SGL (RNBx)

EXHIBIT  25

PAGE  357

1
## DOCUMENT LIST
2

3  (1)   MGA'S AND CARTER BRYANT'S JOINT OPPOSITION TO MATTEL,
   INC.'S *EX PARTE* APPLICATION TO COMPEL ACCESS TO CERTAIN
4  BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION
   AND IMAGING

5  (2)   DECLARATION OF ALLEN L. LANSTRA IN SUPPORT OF MGA'S AND
   CARTER BRYANT'S JOINT OPPOSITION TO MATTEL, INC.'S *EX PARTE*
6  APPLICATION TO COMPEL ACCESS TO CERTAIN BRYANT ORIGINALS
   FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND IMAGING
7

8  (3)   PROOF OF SERVICE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

PROOF OF SERVICE                                              NO. CV 04-9049 SGL (RNBx)

EXHIBIT 25
PAGE 358

1

2                                    <u>SERVICE LIST</u>

3

4     Jon D. Corey, Esq.                      John Trinidad, Esq.
      Michael T. Zeller, Esq.                 John Keker, Esq.
5     John Quinn, Esq.                        Keker & Van Nest, LLP
      Quinn Emanuel Urquhart Oliver &         710 Sansome Street
6     Hedges, LLP                             San Francisco, CA  94111
      865 South Figueroa Street, 10th Floor   (415)  391-5400
7     Los Angeles, CA  90017-2543             (415)  397-7188 (Fax)
      (213)  443-3000
8     (213)  443-3100 (Fax)                   Attorneys for Carter Bryant
                                              [Federal Express]
9     Attorneys for Mattel, Inc
      [Personal Service]
10

11    Mark E. Overland, Esq.
      Alexander H. Cote, Esq.
12    David C. Scheper, Esq.
      Overland Borenstein Scheper & Kim
13    300 South Grand Avenue, Suite 2750
      Los Angeles, CA 90071
14    (213) 613-4655
      (213) 613-4656
15

16    Attorneys for Carlos Gustavo Machado
      Gomez
17    [Federal Express]

18

19

20

21

22

23

24

25

26

27

28

                                        4

EXHIBIT 25
PAGE 359

EXHIBIT 26

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 27

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER