EXHIBIT 28

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 29

| From: | Chris Grohman |
|---|---|
| Sent: | Friday, April 11, 2008 11:54 PM |
| To: | 'schan@jamsadr.com' |
| Cc: | Diane Hutnyan; Michael T Zeller; Jon Corey; 'jkeker@kvn.com'; 'mwerdegar@kvn.com'; 'moverland@obsklaw.com'; 'Matthew.Bowman@skadden.com' |
| Subject: | CV:04-9049: Carter Bryant v. Mattel: Proposed Protocol for Destructive Testing of the Prince Notary Book |
| Attachments: | Letter with Proposed Protocol re Prince Notary Book.pdf; Proposed Protocol re Prince Notary Book.pdf |

Dear Ms. Chan-

Please find attached courtesy copies of the following documents:

1.) April 11, 2008 letter to Judge Infante.
2.) Proposed Protocol for Sampling of the Prince Notary Book

Christopher Grohman Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail:  chrisgrohman@quinnemanuel.com
Web:  www.quinnemanuel.com

EXHIBIT __21__
PAGE __389__

April 11, 2008

Hon. Edward Infante (Ret.)
Discovery Master
c/o Sandra Chan
JAMS
Two Embarcadero Center, Suite 500
San Francisco, California 94111

Re:     Bryant v. Mattel, Inc., JAMS Ref. 1100049530

Dear Judge Infante:

I write in response to the Order of April 8, 2008, requiring submission from each of the parties
on a protocol for MGA's destructive testing of the notary book.

Mattel believes that the protocol for testing of the notary book should be consistent with the
requirements the Discovery Master has imposed on Mattel where the testing protocol could not
be agreed upon by the parties.  Mattel has reviewed MGA's proposed protocol and while we
cannot agree to the proposed protocol as is, we believe that compromise can be reached that
achieves fairness for both parties.  Accordingly, Mattel has attached a redline based on MGA's
proposal that it believes constitutes a mutually advantageous compromise.

Most of the changes on the red-line are self explanatory.  However, the Court may benefit from
further explanation on a few of the changes.

First, in an effort to expedite the process of scheduling the testing, Mattel has gathered five
separate days within the next two weeks during which its expert, Dr. Valery Aginsky, would be
available to attend the testing: April 21, 22, 23, 24, and 25.  All MGA needs to do is to have Dr.
Lyter choose a day during the week of April 21, 2008, and Dr. Aginsky will arrive at his

07209/2468984.1

EXHIBIT __29__
PAGE __390__

Hon. Edward Infante (Ret.) c/o Sandra Chan
April 11, 2008

laboratory to observe the testing. However, Dr. Aginsky is very busy so MGA should act quickly to secure a date.

Second, Mattel believes that Dr. Lyter should be limited to removing a similar number of samples as Dr. Aginsky did. The purported purpose of Dr. Lyter's testing is to replicate the testing of Dr. Aginsky. Limiting MGA to a reasonable number of samples will prevent further degradation of the notary book.

Third, again to prevent the potential spoliation of evidence, Mattel believes that counsel for both parties need not handle the notary book while it is in Dr. Lyter's custody. Similarly, to avoid shipping the book an excessive number of times, Dr. Lyter would keep the notary book in his laboratory until it is produced at trial. Finally, both parties would reserve the right to petition the court for additional access to the notary book upon a showing of good cause.

We believe the attached protocol is a fairer approach and will facilitate the testing process.


Very truly yours,



Diane C. Hutnyan

Enclosure

07209/2468984.1

EXHIBIT __29__
PAGE __391__

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9

10                    UNITED STATES DISTRICT COURT

11                   EASTERN DISTRICT OF CALIFORNIA

12                          FRESNO DIVISION

13

14

15  CARTER BRYANT, an individual,      )  CASE NO. CV 04-9049 SGL
                                       )  (RNBx)
16              Plaintiff,             )
                                       )  Consolidated with:
17       vs.                           )  Case No. CV 04-0950
                                       )  Case No. CV 05-2727
18  MATTEL, INC., a Delaware           )
    corporation,                       )  **DISCOVERY MATTER**
19                                     )
                Defendant.             )  Hon. Edward A. Infante (Ret.)
20                                     )  Discovery Master
   ────────────────────────────────   )
21  Consolidated with MATTEL, INC. v.  )  **MATTEL'S [PROPOSED]**
    BRYANT and MGA                     )  **ORDER RE TESTING OF**
22  ENTERTAINMENT, INC. v.             )  **JACQUELINE PRINCE'S**
    MATTEL, INC.,                      )  **NOTARY LOG BOOK**
23                                     )
                                          **Phase 1**
24
                                          Pre-Trial conference: May 5, 2008
25                                        Trial Date:        May 27, 2008

26

27                                        EXHIBIT ___21___

28                                        PAGE ___392___

072O9/2469056.1

[PROPOSED] ORDER RE TESTING OF JACQUELINE PRINCE'S NOTARY BOOK

1     Having received Mattel's *Ex Parte* Application for a Protective Order

2  Preventing MGA's Destructive Sampling of the Prince Notary Book (the

3  "Application"), and all other papers and arguments submitted in support of or in

4  opposition to the Application, and finding good cause therefore,

5     **IT IS HEREBY ORDERED THAT:**

6     1.     MGA is allowed to take samples and conduct testing on Jacqueline

7  Prince's notary log book to test the accuracy of the findings and conclusions of

8  Mattel's expert witnesses, ~~including~~ Dr. Valery Aginsky, pursuant to the protocol set

9  forth herein.

10    2.     MGA's previously identified expert, Dr. Albert Lyter III, is hereby

11  approved to perform the sampling of the notary book.  Use of any other expert

12  requires the prior approval of the expert's credentials by the Discovery Master.~~MGA's~~

13  ~~expert's sampling of Ms. Prince's notary book is limited to the extraction of~~

14  ~~"microplug" samples taken from the notary book.~~

15    3.     ~~MGA's expert~~Dr. Lyter will extract all "microplug" samples using a

16  hypodermic-needle-sized hole punch, removing holes of less than one millimeter in

17  diameter.

18    4.     ~~MGA's expert~~Dr. Lyter may remove no more than 17 sets of "microplug"

19  samples from the written portions of the entries in the notary book, and no more than

20  two sets of blank paper "microplug" samples from the blank areas of the notary book

21  which do not contain writing.

22    5.     ~~MGA's expert~~Dr. Lyter may take no more than ~~15 to 20~~6 "microplugs"

23  from any set of "microplug" samples.  At no time prior to, during, or after, the testing

24  of the notary book may counsel handle the notary book outside the presence of

25  counsel for the other party.

26    6.     MGA and Mattel retains the right to apply to the Discovery Master for

27  the right to take additional ~~increase the number of~~ "microplugs" ~~from each set of~~

28  ~~samples,~~ if necessary and upon a showing of good cause.

EXHIBIT __29__

PAGE __393__

7.   ~~At least 48 hours before MGA's expert extracts any samples from the~~
~~notary book, MGA must send a letter to Mattel's counsel by e-mail and U.S. Mail,~~
~~with a copy filed with the Discovery Master, setting forth the scheduled: (a) date, (b)~~
~~time and (c) location of the proposed sampling of the notary book.~~ MGA and Mattel
will arrive at a mutually agreeable date during the week of April 21, 2008, which
accommodates the schedules of both Dr. Lyter and Dr. Aginsky, for the sampling to be
performed.

8.   ~~Mattel may elect to have its own expert attend the extraction of any~~
~~"microplug" samples by MGA's expert provided that: (1) Mattel makes the election in~~
~~writing within 48 hours of receiving MGA's noticing of the sampling; and (2) Mattel~~
~~provides counsel for MGA with the credentials of any observing expert within that 48-~~
~~hour period by email and U.S. Mail.~~ Dr. Valery Aginsky, whose credentials have
already been approved by the Discovery Master, will attend the extraction of the
samples.

9.   ~~In the event that Mattel elects to have its own expert attend the sampling~~
~~but Mattel does not have an expert that can attend the sampling at the noticed date,~~
~~time, and location, the parties will attempt to arrange a reasonable alternative date and~~
~~time for MGA's expert's sampling. However, given the time limitations set forth in~~
~~Judge Larson's Order of March 19, 2008, which provides that MGA shall only have~~
~~fourteen (14) days from the date of this Order to extract the microplug samples,~~
~~complete the appropriate scientific testing, prepare its rebuttal expert report and serve~~
~~it on Mattel, MGA's selection of the sampling date shall be final barring extraordinary~~
~~circumstances.~~

10.   If ~~Mattel's expert~~Dr. Aginsky raises any issues about the manner in which
the sampling is being performed while he ~~or she~~ is observing the sampling, the parties
will seek immediate resolution from the Discovery Master so that the sampling will
not be delayed. If Dr. Aginsky does not object during or prior to the sampling
procedure~~Mattel's counsel does not seek attendance by its expert within the 48-hour~~

[PROPOSED] ORDER RE TESTING OF JACQUELINE PRINCE'S NOTARY BOOK

EXHIBIT __29__

PAGE __204__

07209/2469056.1

1   notice period, the sampling shall be deemed unobjectionable and may be carried out

2   by MGA's expertDr. Lyter as scheduled and without further delay.

3       11.   All MGA sampling must occur at the laboratory of Dr. LyterMGA's

4   expert.

5       12.   Before subjecting the notary booksamples to sampling ink analysis,

6   MGA's expertDr. Lyter will maintain the notary book samples at his or her laboratory

7   in normal environmental conditions, which means generally accepted laboratory

8   conditions that will preserve the integrity of the notary book from any damage that

9   could be caused by heat, cold, humidity or other conditions.

10      13.   MGA's expertDr. Lyter and/or his employees and assistants will maintain

11  custody of the notary book in a safe place at all times, and will not release the notary

12  book to any unauthorized third parties.

13      14.   With the exception of alterations resulting from any destructive testing,

14  which shall be conducted in accordance with the protocol set forth herein, the notary

15  book will be returned to Jacqueline Prince's counsel, Mr. Daniel Warren, in the same

16  condition it was received.  MGA's expert will return the notary book to Mr. Warren by

17  overnight mail, using Federal Express, UPS or some other similar service, on or prior

18  to the second business day after the service of his or her rebuttal expert report,

19  provided that MGA's expert's sampling or testing is not delayed by any Mattel

20  objection or court proceedings.  After the completion of the testing, Dr. Lyter will seal

21  the notary book in the box in which it was delivered to him.  He will store the notary

22  book in his laboratory in normal environmental conditions for eventual use at trial.

23  MGA agrees to produce the notary book at trial in California.

24      15.   MGA's previously identified expert, Dr. Albert Lyter III, is hereby

25  approved to perform the sampling and testing of the notary book, and his selection as

26  an expert by MGA for the purposes of such sampling and testing is not otherwise

27  subject to objection by Mattel.

28

EXHIBIT ___29___

PAGE ___395___

[PROPOSED] ORDER RE TESTING OF JACQUELINE PRINCE'S NOTARY BOOK

16. ~~MGA reserves the right to employ additional experts for the sampling and testing of the notary book, within the parameters of and consistent with the protocol set forth herein. Further, if MGA decides to have any expert other than Dr. Lyter perform sampling, MGA must, at least 3 days prior to any such sampling, send a letter to Mattel's counsel by email and U.S. Mail setting forth: (a) the name of the expert who will conduct the sampling; (b) the expert's curriculum vitae; (c) the location of the expert's laboratory; and (d) the date and time of the sampling. Any Mattel objection to the qualifications of the additional MGA expert must be made within 48 hours of the time MGA sends the aforementioned letter to Mattel's counsel. If Mattel so objects, Mattel's counsel must notify MGA's counsel by letter (sent by email and U.S. Mail) and/or a telephone call within the 48-hour notice period, and the parties must then immediately meet and confer and, within 24 hours of Mattel's notice of objection, the parties must file a joint statement to the Discovery Master seeking expedited resolution of the dispute.~~ MGA agrees to allow Mattel continued access to inspect the notary book upon reasonable notice and Mattel and MGA reserve the right to seek additional expert testing of the notary book upon a showing of good cause.

IT IS SO ORDERED.

DATED:

_____
Hon. Edward A. Infante (Ret.)
Discovery Master

EXHIBIT ___29___
PAGE ___396___

-5-

[PROPOSED] ORDER RE TESTING OF JACQUELINE PRINCE'S NOTARY BOOK

072.09/2469056.1

EXHIBIT 30

| From: | Diane Hutnyan |
|---|---|
| Sent: | Wednesday, February 27, 2008 11:25 AM |
| To: | MGA / Bryant Team |
| Subject: | FW: Stipulation re Testing of Prince's Log Book |
| Follow Up Flag: | Follow up |
| Flag Status: | Red |
| Attachments: | lac1-495716-3.doc |

**From:** Weinstein, Ryan [mailto:Ryan.Weinstein@skadden.com]
**Sent:** Wednesday, February 27, 2008 11:00 AM
**To:** Diane Hutnyan
**Cc:** Sloan, Matthew E (LAC)
**Subject:** Stipulation re Testing of Prince's Log Book

Diane,

Per your request, please find our proposed stipulation attached.

As we would like to finalize this tomorrow, please provide us with your comments as soon as possible.

Thanks,
Ryan

Ryan Weinstein
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue
Los Angeles, CA 90071
Phone: (213) 687-5526
Fax: (213) 621-5526
E-mail: ryan.weinstein@skadden.com

---
*********************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein. *********************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and

EXHIBIT **30**
PAGE **397**

5/14/2008

permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request. ****************************************************

EXHIBIT _30_
PAGE _398_

1 | THOMAS J. NOLAN (Bar No. 66992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 | 300 South Grand Avenue
Los Angeles, CA 90071-3144
3 | Telephone: (213) 687-5000
Facsimile: (213) 687-5600
4 | E-mail: tnolan@skadden.com

5 | KENNETH A. PLEVAN
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 | Four Times Square
New York, New York, 10036-6522
7 | Telephone: (212) 735-3000
Facsimile: (212) 735-2000
8 | Email: kplevan@skadden.com

9 | Attorneys for Counter-Defendants
MGA ENTERTAINMENT, INC., ISAAC LARIAN,
10 | MGA ENTERTAINMENT (HK) LIMITED, and
MGAE de MEXICO S.R.L. de C.V.

11

12 | **UNITED STATES DISTRICT COURT**

13 | **CENTRAL DISTRICT OF CALIFORNIA**

14 | **EASTERN DIVISION**

15

| | |
|---|---|
| 16  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 17             Plaintiff, | Consolidated with: |
| 18      v. | Case No. CV 04-9059<br>Case No. CV 05-2727 |
| 19  MATTEL, INC., a Delaware | **DISCOVERY MATTER** |
| 20  corporation, | Hon. Edward A. Infante (Ret.) |
| 21             Defendant. | Discovery Master |
| 22  Consolidated with MATTEL, INC. v. | **STIPULATION RE MGA'S**<br>**PROPOSED TESTING OF**<br>**JACQUELINE PRINCE'S** |
| 23  BRYANT and MGA<br>ENTERTAINMENT, INC. v. | **NOTARY BOOK; [PROPOSED]**<br>**ORDER** |
| 24  MATTEL, INC. | |

**Phase 1**

25 | Discovery Cut-Off:     Jan. 28, 2008
Expert Rebuttal
26 | Reports Due:        March 17, 2008
Expert Discovery
27 | Cut-Off:          March 31, 2008
Pre-Trial Conference: May 5, 2008
28 | Trial Date:        May 27, 2008

EXHIBIT __30__

PAGE __399__

**STIPULATION**

This Stipulation is entered into by and between Mattel, Inc. ("Mattel") on the one hand, and MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively referred to herein as "MGA"), on the other hand, with reference to the following:

WHEREAS, Jacqueline Prince, a notary public, made notations in a log book entitled "Official Journal of Notarial Acts" (the "log book") which relate to the date on which certain of plaintiff and counter-defendant Carter Bryant's ("Bryant") drawings were created;

WHEREAS, on page 11 of the notary book, there is an entry, dated 8/26/99, which identifies 6 sketches of dolls made by Bryant;

WHEREAS, the same entry includes the notation "From 1998 Missouri";

WHEREAS, on or about December 25, 2007, counsel for Mattel sent a letter to Daniel J. Warren, counsel for Ms. Prince, requesting production of the notary book for purposes of conducting a forensic analysis on the ink used on the above-referenced entry;

WHEREAS, in response, Mr. Warren produced said log book to Mattel, and MGA did not object;

WHEREAS, on January 4, 2008, Mattel's expert, Valery N. Aginsky, extracted 17 sets of hypodermic needle-sized samples or "microplugs" from written lines appearing on pages 11 and 12 of the notary book and two sets of blank paper "microplug" samples from page 11 of the notary book;

WHEREAS, Mr. Aginsky subsequently subjected the "microplug" samples to various chemical analyses, including chromatography, thin-layer chromatography ("TLC"), and gas chromatography-mass spectrometry ("GC-MS");

WHEREAS, on January 31, 2008, Mr. Aginsky returned Ms. Prince's log book to Mr. Warren;

EXHIBIT __30__
PAGE __400__

-1-

1     WHEREAS, on February 11, 2008, Mattel transmitted to MGA a copy of Mr.

2 Aginsky's expert report, wherein Mr. Aginsky set forth the results of ink tests that he

3 performed on samples extracted from the notary book;

4     WHEREAS, on the basis of his tests, Mr. Aginsky concluded that the notation

5 "From 1998 Missouri" on page 11 of the notary book was written in different ink

6 than the remainder of the 8/26/99 entry;

7     WHEREAS, MGA now seeks to test the accuracy of Mr. Aginsky's findings

8 by having its own expert replicate Mr. Aginsky's ink testing;

9     WHEREAS, the current deadline for submitting expert rebuttal reports is

10 March 17, 2008;

11     THEREFORE, the undersigned parties, through their undersigned counsel,

12 stipulate and agree as follows:

13     1.    MGA will be allowed to take samples and conduct testing on the notary

14 book to test the accuracy of Mr. Aginsky's findings, pursuant to the following

15 protocol.

16     2.    MGA's testing of Ms. Prince's log book will be limited to analysis of

17 "microplug" samples extracted from pages 11 and 12 of the notary book.

18     3.    MGA's expert (or experts) will remove no more than 17 sets of

19 "microplug" samples from the written portions of the entries on pages 11 and 12 of

20 the notary book, and no more than two sets of blank paper "microplug" samples from

21 the areas of pages 11 and 12 which do not contain writing.   (Although this

22 Stipulation refers to MGA's "expert," MGA reserves the right to employ more than

23 one expert for the proposed sampling and testing of the notary book).

24     4.    MGA's expert will extract all "microplug" samples using a hypodermic-

25 needle-sized hole punch, which removes holes of less than one millimeter in

26 diameter.

EXHIBIT __36__

PAGE __401__

27     5.    Before subjecting the samples to ink analysis, MGA's expert will

28 maintain the samples at his or her laboratory in normal environmental conditions.

-2-

1    6.    All sampling and testing will occur at the laboratory of MGA's expert.

2    7.    Before Mr. Warren sends the notary book to MGA's expert, MGA will

3    send a letter to Mattel's counsel by facsimile (and U.S. Mail) setting forth: (a) the

4    name of MGA's expert (or experts) who will conduct the sampling; (b) the expert's

5    curriculum vitae; (c) the location of the expert's laboratory; and (d) samples of

6    "microplugs" similar to those that would be extracted from the notary book.

7    8.    Mattel will have three days from its receipt of the above-referenced

8    letter by facsimile to object to the contemplated testing. During this three-day period,

9    Mr. Warren will maintain custody of the notary book, and no testing will be

10   performed. If Mattel raises no objection, then Mr. Warren will be directed to

11   transmit the notary book to MGA's expert and MGA's expert will be authorized to

12   conduct testing pursuant to the protocol set forth herein.

13   9.    In the event Mattel objects to the proposed testing, Mattel's counsel

14   must notify MGA by letter and/or a telephone call within the 3-day period set forth

15   above. The parties must then meet and confer and, within two more Court days, file

16   a joint statement to Judge Infante seeking resolution of the dispute.

17   10.    Mattel may elect to have its own expert attend the extraction of

18   "microplug" samples provided that (1) Mattel makes the election in writing within

19   the three-day objection period; (2) Mattel provides counsel for MGA with the

20   credentials of any observing expert; and (3) the testing can take place within ten (10)

21   calendar days of the execution of this Stipulation. At this time, MGA's expert is

22   available to conduct the sampling on March 10, 11, or 12, 2008.

23   11.    If Mattel's expert raises any issues about the sampling being performed

24   while he or she is observing the sampling, the parties will seek immediate resolution

25   from the Court so that the sampling will not be delayed. If Mattel's counsel does not

26   object or seek attendance by its expert within the three-day objection period, the

27   proposed destructive testing shall be deemed unobjectionable and may be carried out

28   by MGA's expert without further delay.

EXHIBIT __30__

PAGE __402__

-3-

12.     With the exception of alterations resulting from any destructive testing, which would be conducted in accordance with the protocol set forth above, the notary book will be returned promptly to Mr. Warren in the same condition it was received.

13.     The parties agree that, should Mattel raise any objections to the proposed sampling, testing, or credentials of Mattel's expert, or to any other aspects of the testing process, MGA will be granted an extension of time within which to submit a rebuttal report in response to Mr. Aginsky's initial expert report. Specifically, in the event that Mattel objects to MGA's proposed expert sampling, the current March 17, 2008 deadline for submitting MGA's rebuttal expert report will be extended by one calendar day for each day from the date Mattel raises its objection to the date upon which any such objection is resolved by Judge Infante or by the agreement of the parties.

IT IS SO STIPULATED.

DATED: February __, 2008        SKADDEN, ARPS, SLATE, MEAGHER
                                & FLOM, LLP


By: _____
    Matthew E. Sloan
    Attorneys for Counter-Defendants
    MGA ENTERTAINMENT, INC., ISAAC LARIAN,
    MGA ENTERTAINMENT (HK) LIMITED, and
    MGAE de MEXICO S.R.L. de C.V.

DATED: February __, 2008        QUINN EMANUEL URQUHART OLIVER
                                & HEDGES, LLP


By: _____
    Diane C. Hutnyan
    Attorneys for Mattel, Inc.

EXHIBIT __30__
PAGE __403__

-4-

1

2

3    <u>**ORDER**</u>

4    The Court, having reviewed MGA and Mattel's Stipulation Re MGA's

5    Proposed Testing Of Jacqueline Prince's Notary Book (the "Stipulation") and for

6    good cause shown, hereby approves the procedure for MGA's proposed expert

7

8    testing of the notary book set forth in the Stipulation.

9

10   IT IS SO ORDERED.

11

12   DATED: _____

13                              _____
                              Hon. Edward A. Infante (Ret.)
                              Discovery Master

14

15

16

17

18

19

20

21

22

23

24

25

26

27   EXHIBIT __30__

28   PAGE __404__

EXHIBIT 31

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3666**

WRITER'S INTERNET ADDRESS
**dianehutnyan@quinnemanuel.com**

March 3, 2008

VIA EMAIL AND FACSIMILE

Ryan Weinstein, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue
Los Angeles, CA 90071

Re:   Carter Bryant v. Mattel

Dear Ryan:

We have reviewed the proposal you sent and found that there are a number of issues with the proposal you sent that still need to be resolved.

The proposed stipulation appears to contemplate the idea of a future potential protocol, rather than contain an actual protocol, for the delivery, handling and sampling of the materials. You seem to have obtained the idea from paragraph 6 of Judge Infante's August 30, 2007 Order. Paragraph 6 contemplated the development of a future protocol for the potential destructive testing that we didn't even know would be needed at that time. That is not the case here. Here, you already know what destructive testing you expect to do. So the stipulation should be more consistent with paragraphs 3, 4, 5, and 7 of that Order in terms of outlining what will be, or will not be, done with the documents.

Another issue is that the stipulation does not reflect any plan to obtain the Court's approval of Mr. Lyter and his credentials. As is set forth in the transcript of the hearing last summer on Mattel's contemplated non-destructive testing, Judge Infante required that specific information be submitted with respect to the experts that Mattel was going to use for non-destructive testing. That information was submitted in camera at the time because the only testing contemplated was all non-destructive, and thus such information was privileged in nature. But since you are

EXHIBIT  **31**
PAGE  **405**

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

Ryan Weinstein
March 3, 2008

planning destructive testing with our expert present, the submission that we made for each of our experts, along the lines of what was set forth in the transcript, should be made both to us (with an opportunity for us to object) and then should be made to the Court for approval.

As I have explained to you previously at length, we are quite concerned about having the notary book in anyone's hands or possession but the (by then Court-approved) expert in the presence of our expert. So the protocol for delivery and handling of the notary book should be designed to prevent access by anyone besides those two people. And the notary book should not be handled by either expert outside the presence of the other.

We are also concerned about the custody of the notary book generally. The delivery plan should be specific in setting forth the exact method of delivery, time of delivery, location of delivery, and return date, and be done in a way that all parties can track the package. What are the specific conditions the book will be stored in, if at all, while it is at Mr. Lyter's lab?

While we will insist upon our expert, Dr. Aginsky, attending, we do not want him to have to take time out of his schedule waiting around. So all of the samples must be taken in one day. Bryant and MGA afforded Mattel four days to find and punch samples from within eight boxes of original documents, so one day is certainly more than enough to take the microplugs in question from the two pages you have contemplated.

The number of microplugs in the proposed stipulation also seems open-ended. A "set" should be limited to some reasonably small number that is agreed upon in advance.

We view the "Whereas" section of the stipulation as unnecessary and improper argument. Whether Mattel did destructive testing on the document does not give MGA a right to do any destructive testing it wants; MGA must show the appropriateness of the destructive testing it plans to do, independent of what Mattel obtained Court approval to do and did. Please remove this section.

In paragraph 13, MGA appears to request an extension of time to file its rebuttal reports if Mattel's expert raises any objections to the procedures he is observing. Mattel might be willing to toll the time that Mr. Lyter has with the book, but it should have no bearing on the rebuttal report deadline. Further, as to any objections made prior to the sampling, those should all be resolved through agreement or by Judge Infante before Mr. Lyter even takes possession of the notary book.

The stipulation also must include a provision whereby Mattel would be guaranteed additional access to the notary book and the right to take further samples after MGA has served its rebuttal reports and/or after Mr. Lyter has been deposed. Also, thus, the stipulation should be expressly approved by Mr. Warren and the other parties to the case so that no one can later object to try to

EXHIBIT __31__
PAGE __406__

Ryan Weinstein
March 3, 2008

block Mattel's expert's access.  Similarly, all the parties and Ms. Prince must agree that the notary book will be made available in California during the trial if Mattel so requests.

I look forward to your response.

Very truly yours,

Diane C. Hutnyan

EXHIBIT __31__
PAGE __407__

EXHIBIT 32

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:   (415) 774-2611
4  Facsimile:   (415) 982-5287

5

6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                 EASTERN DIVISION

11

12                                    CASE NO. CV 04-09049 SGL (RNBx)
   CARTER BRYANT, an individual,      JAMS Reference No. 1100049530
13
          Plaintiff,
14                                     Consolidated with
       v.                             Case No. CV 04-09059
15                                    Case No. CV 05-2727
   MATTEL, INC., a Delaware corporation,
16                                    **ORDER DENYING MATTEL'S EX**
          Defendant.                  **PARTE APPLICATION TO COMPEL**
17                                    **ACCESS TO CERTAIN BRYANT**
                                      **ORIGINALS FOR NON-**
18                                    **DESTRUCTIVE EXPERT**
                                      **EXAMINATION AND IMAGING**
19

20 CONSOLIDATED WITH
   MATTEL, INC. v. BRYANT and
21 MGA ENTERTAINMENT, INC. v. MATTEL,
   INC.
22

23                       I. INTRODUCTION
24
       On April 7, 2008, Mattel, Inc. ("Mattel") submitted an "*Ex Parte* Application to Compel
25
   Access to Certain Bryant Originals for Non-Destructive Expert Examination and Imaging."  On
26
   April 8, 2008, Carter Bryant ("Bryant") and MGA Entertainment, Inc. ("MGA") submitted a joint
27
   "preliminary" opposition.  On April 9, 2008, Mattel submitted a reply.  On April 17, 2008,
28

Bryant v. Mattel, Inc.,                                            1
CV-04-09049 SGL (RNBx)

EXHIBIT __32__
PAGE __408__

1   Bryant and MGA submitted another opposition, and on April 22, 2008, Mattel submitted another

2   reply.  On May 8, 2008, Mattel's counsel, Diane Hutnyan, submitted a Second Supplemental

3   Declaration in Support of Mattel's Reply.  On May 9, 2008, MGA submitted a response to the

4   Second Supplemental Declaration of Diane Hutnyan.  The Court finds it appropriate to decide the

5   motion without oral argument.  Having considered all papers filed to date, Mattel's *ex parte*

6   application is denied.

7                                    II. BACKGROUND

8        Mattel began inspecting Bryant's original documents in February of 2007.  In May of

9   2007, Mattel requested that Bryant make additional documents available for inspection.  On May

10  31, and June 1, 2007, and again on June 20, 2007, Mattel examined and photographed Bryant's

11  original documents.  In July 2007, Mattel moved to compel Bryant to make over 2,000 original

12  documents available for expert examination and testing.

13       By Order dated August 30, 2007, Mattel was granted 35 days for the expert examination

14  and testing of Bryant's original documents.  The Order tracked Mattel's proposed order in almost

15  every respect, except that the Order granted Mattel 35 days in which to conduct testing instead of

16  the 60 days Mattel had requested.  Nevertheless, the Order provided that the 35-day period may

17  be extended upon a showing of good cause.

18       Pursuant to the August 30, 2007 Order, eight boxes of Bryant's original documents were

19  sent by overnight mail to each of Mattel's four experts in their four different labs around the

20  country.  The first of Mattel's experts, Lloyd Cunningham, was allotted eight days to examine and

21  test the documents but apparently kept the documents longer.  Mr. Cunningham obtained the

22  documents on September 12, 2007 and maintained possession of the documents until September

23  28, 2007.  During those sixteen days, Mr. Cunningham spent over 80 hours examining Bryant's

24  documents.  Cunningham used several different methods of examination, including oblique

25  lighting, magnification, reflected infrared luminescence, UV lighting, as well as the examination

26  of indented writing with the indentation materializer device.

27       Mattel's second expert, William Flynn, received the documents from Mr. Cunningham on

28  September 29, 2007, and had approximately three days to conduct his examination and testing.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 32
PAGE 409

2

1    Mr. Flynn spent approximately 35 hours examining Bryant's documents.

2         Messrs. Flynn and Cunningham both drew conclusions as to whether certain tracing paper

3    drawings and certain multimedia poster board drawings were sketches or tracings, and/or tracings

4    of each other.  They both determined that there were obscured pencil lines underneath the ink and

5    colorant of these documents that could not be viewed without reflected infrared or infrared

6    luminescence, but they did not believe the pencil lines were significant to their analysis at the

7    time.

8         Mattel's paper expert, Walter Rantanen, and ink chemist, Valery Aginsky, also reviewed

9    Bryant's original document.  After all four experts completed their examinations, Mattel returned

10   the documents to Bryant on October 17, 2007.

11        In December 2007, Mattel asked for permission to have Mr. Rantanen perform destructive

12   testing on Bryant's documents.  Pursuant to stipulation, Bryant sent the documents back to

13   Rantanen for an additional four days so that he could take small punches out of paper samples

14   from a select group of Bryant's documents.  In total, Mattel's experts had possession of Bryant's

15   documents for approximately 40 days.

16        MGA retained two forensic examiners to examine Bryant's documents, to review the

17   Cunningham and Flynn reports, and to provide expert rebuttal reports:  Robert Kullman and Dr.

18   Albert Lyter.  Mr. Kullman received Bryant's documents on or about January 26, 2008.  On or

19   about February 11, 2008, Mattel served Messrs. Cunningham and Flynn's expert reports.  Mr.

20   Kullman had approximately three weeks thereafter to compare his results with the results of

21   Messrs. Cunningham and Flynn.

22        On March 6, 2008, Mr. Kullman sent Bryant's documents to Dr. Lyter, who spent

23   approximately 10 days examining the documents and preparing his report.  Mr. Kullman and Dr.

24   Lyter finalized their reports on March 17, 2008.  Both of MGA's experts "found evidence of faint

25   or partially obscured lines in the colored poster board drawings which superimposed with the ink

26   lines on the outline drawings on the tracing paper."  MGA's and Bryant's Opposition dated April

27   17, 2008, at p.9.  Based on these observations, both of MGA's experts concluded that, in most

28   instances, the poster board drawings were traced from the outline drawings on the tracing paper.

EXHIBIT __32__
PAGE __410__

3

1    On March 27, 2008, MGA deposed Mr. Flynn. Flynn admitted seeing the faint pencil

2  lines in the poster board drawings. Flynn also testified that he tried to see whether the pencil lines

3  matched up with the lines on the tracing paper, and found that there was never an exact match.

4    On March 30, 2008, MGA deposed Mr. Cunningham, who also admitted seeing many

5  areas of faint or partially obscured pencil lines on the poster board drawings. He also testified

6  that he used infrared and infrared luminescence on the poster board drawings.

7    On March 31, 2008, expert discovery closed. Two days later, on April 2, 2008, Mattel

8  sent a letter to MGA and Bryant demanding that Bryant agree to provide Messrs. Cunningham

9  and Flynn an additional one week each to perform further testing and examination of Bryant's

10  documents. Prior to April 2, 2008, Mattel never indicated that Cunningham or Flynn needed

11  additional time to perform their examination of Bryant's documents.

### III. DISCUSSION

12    Rule 16, Fed.R.Civ.P., provides that the pretrial schedule may be modified only for good

13  cause shown. Fed.R.Civ.P. 16(b)(4). This "good cause" standard primarily focuses on the

14  diligence of the party seeking relief from the pretrial schedule. Johnson v. Mammoth

15  Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992). In this case, Mattel has failed to make the

16  requisite showing of good cause to warrant relief from the March 31, 2008 expert discovery cut-

17  off.

18    Mattel was not diligent in three respects. First, Mattel was not diligent in asking the Court

19  for more time for its experts to perform their initial testing in the fall of 2007. The August 30,

20  2007 Order provided that the 35-day time limit "may be extended upon a showing by Mattel of

21  good cause." Lanstra Decl., Ex. 11, August 30, 2007 Order. Despite the inclusion of this

22  provision, Mattel did not seek additional time for testing in the fall of 2007. Instead, at the end of

23  the initial testing period, Mattel returned Bryant's original documents without objection.

24    Second, Mattel was not diligent in seeking additional time to conduct testing during

25  March 2008, before the March 31, 2008 expert discovery cut-off. Mattel contends that its need

26  for further expert examination was created by the testing performed by Mr. Kullman and Dr.

27  Lyter. Mattel, however, received Mr. Kullman's and Dr. Lyter's reports on March 17, 2008, and

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

EXHIBIT 32
PAGE 411

1  waited for more than three weeks, until April 7, 2008 to seek any relief.

2       Third, Mattel was not diligent in requesting an extension of time to conduct expert

3  discovery. In general, requests for an extension of time should be brought before the prescribed

4  time has expired. See Fed.R.Civ.P. 6(b)(1); Jackson v. Laureate, Inc., 186 F.R.D. 605, 607-08

5  (E.D. Cal. 1999) (a party should make a prompt request for modification once it becomes

6  apparent that compliance is not possible). In fact, the District Court's "Standing Order"

7  specifically requires that applications to extend scheduling deadlines "must be filed in advance of

8  the date due" and set forth, among other things, "specific, concrete reasons supporting good cause

9  for granting the extension." Lanstra Decl., Ex. 25. Mattel did not seek any relief until April 7,

10  2008, more than a week after the March 31, 2008 expert discovery cut-off. Accordingly, Mattel's

11  ex parte application is untimely.

12       Furthermore, neither MGA's nor Bryant's actions provide good cause for Mattel's

13  requested relief or excuse Mattel's lack of diligence. Neither MGA nor Bryant limited Mattel's

14  experts' access to Bryant's original documents. Rather, the Court imposed a 35-day initial access

15  period and specified that the period could be extended upon good cause shown. As discussed

16  previously above, Mattel failed to seek additional time to perform testing in a timely manner.

17       Moreover, Mattel's belated assertion that its experts did not have sufficient time to conduct

18  testing is dubious. Mattel elected to use the allotted 35-days to have four experts in four different

19  labs across the country review Bryant's documents. Mattel allotted eight days to Mr. Cunningham

20  and approximately three days to Mr. Flynn. Mattel admits that despite the purported time

21  constraints, Messrs. Cunningham and Flynn felt that the examinations they did were sufficient to

22  draw the conclusions and develop the opinions that they had in their reports. Mattel's Application

23  at p.5. Mattel also admits that when Messrs. Cunningham and Flynn conducted their

24  examinations in the fall of 2007, they saw the faint or partially obscured pencil lines in Carter

25  Bryant's multi-colored poster board drawings, but did not believe them significant to their

26  analysis. Id. Furthermore, Mattel acknowledges that Mr. Cunningham used infrared light and

27  infrared luminescence on the poster board drawings to look at certain portions of pencil lines and

28  for chemical erasure that he thought might be significant. Id.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT __32__
PAGE __412__

1       Mattel's assertion that MGA's rebuttal reports are improper is without merit.  Mattel

2   claims that MGA's experts, Mr. Kullman and Dr. Lyter, "develop[ed] a rebuttal theory not based

3   on the evidence presented in Messrs. Flynn's and Cunningham's reports."  Mattel's Application at

4   p.12.  The record, however, clearly shows that MGA's experts examined the exact same set of

5   Bryant's original documents that Mattel's experts examined with the exact same instruments and

6   methods available to, and indeed in most cases, employed by Mattel's experts.  Mattel has not

7   shown that the reports prepared by MGA's experts are in any respect inconsistent with the

8   requirements of Rule 26(a)(2)(C)(ii), Fed.R.Civ.P.  Mattel is not entitled to re-test Bryant's

9   original documents merely because Messrs. Flynn and Cunningham elected not to perform the

10  same tests or focus on the same lines as MGA's experts.

11      In addition, Mattel's assertion that it is entitled, and indeed obligated, to supplemental its

12  experts' reports pursuant to Rule 26(e), Fed.R.Civ.P., does not justify Mattel's requested relief.

13  "Rule 26 provides no safe harbor for [a party's] lack of diligence and failure to show 'good cause.'

14  [The] obligation to supplement expert reports does not give [a party] the right to ignore the

15  Court's deadlines, reopen discovery, find 'new facts,' [and] generate new expert reports . . . ."

16  DAG Enters., Inc. v. Exxon Mobil Corp., 226 F.R.D. 95, 110 (D. D.C. 2005).

17      Finally, the prejudice to MGA and Bryant weighs against granting Mattel's requested

18  relief.  If expert discovery were re-opened to allow Mattel to conduct additional testing and to

19  supplement its expert reports based on the additional testing, there would be no time left in the

20  pretrial schedule to permit MGA and Bryant to conduct counter-discovery, including re-deposing

    Messrs. Flynn and Cunningham about their new reports.

                                    IV. CONCLUSION

21      For the reasons set forth above, as well as all of the additional reasons set forth in MGA's

22  and Bryant's briefing, Mattel's *ex parte* application is denied.  Pursuant to Paragraph 6 of the

23  Stipulation and Order for Appointment of a Discovery Master, MGA shall file this Order with the

24  Clerk of Court forthwith.

25

26  Dated: May 13, 2008

27                                      _____
                                        HON. EDWARD A. INFANTE (Ret.)
28                                           Discovery Master

    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                          6

EXHIBIT  32
PAGE  413

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on May 13, 2008, I served the attached ORDER DENYING MATTEL'S EX PARTE APPLICATION TO COMPEL ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND IMAGING in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| David C. Scheper, Esq. | Overland, Borenstein, et al. | dscheper@obsklaw.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 13, 2008, at San Francisco, California.

_____
Sandra Chan

EXHIBIT  32
PAGE  414

EXHIBIT 33

1   THOMAS J. NOLAN (Bar No. 66992)
    (tnolan@skadden.com)
2   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    300 South Grand Avenue
3   Los Angeles, CA 90071-3144
    Tel.: (213) 687-5000 / Fax: (213) 687-5600
4
    RAOUL D. KENNEDY (Bar No. 40892)
5   (rkennedy@skadden.com)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6   4 Embarcadero Center, 38th Floor
    San Francisco, CA 94111-5974
7   Tel.: (415) 984-6400 / Fax: (415) 984-2698

8   Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
    MGAE de Mexico, S.R.L. de C.V., and Isaac Larian
9

10

11                  UNITED STATES DISTRICT COURT

12                 CENTRAL DISTRICT OF CALIFORNIA

13

14   CARTER BRYANT, an individual,        )   CASE NO. CV 04-9049 SGL (RNBx)
                                          )
15                    Plaintiff,          )   Consolidated with Case No. 04-9059
                                          )   and Case No. 05-2727
16          v.                            )
                                          )   **DISCOVERY MATTER**
17   MATTEL, INC., a Delaware             )
     corporation,                         )   MGA'S RESPONSE TO SECOND
18                                        )   SUPPLEMENTAL DECLARATION
                      Defendant.          )   OF DIANE C. HUTNYAN IN
19                                        )   SUPPORT OF MATTEL, INC.'S
                                          )   REPLY RE *EX PARTE*
20   AND CONSOLIDATED ACTIONS             )   APPLICATION FOR ACCESS TO
                                          )   CERTAIN BRYANT ORIGINALS
21                                        )   FOR NON-DESTRUCTIVE EXPERT
                                              EXAMINATION AND IMAGING
22
                                              Date:  TBD
23                                            Time:  TBD
                                              Place: TBD
24
                                              **Phase 1:**
25                                            Discovery Cut-off:   January 28, 2008
                                              Expert Disc. Cut-off: March 31, 2008
26                                            Pre-trial Conference: May 5, 2008
                                              Trial Date:          May 27, 2008
27

28

---

MGA's and Carter Bryant's Opposition To Huntyan Second Supp. Declaration re Mattel, Inc.'s *Ex Parte* Application to
Compel Access to Certain Bryant Originals for Non-Destructive Expert Examination and Testing
Case No. CV 04-9049 SGL (RNBx)

EXHIBIT 33
PAGE 415

## MEMORANDUM OF POINTS AND AUTHORITIES

1       In its effort to obtain a "re-do" of its experts' examinations of certain Bryant
2  originals only weeks—and now only days—before the trial is supposed to commence,
3  and months after its experts purportedly completed their examinations, Mattel has
4  made one last ditch effort to cloud the issues involved by submitting its "Second
5  Supplemental Declaration of Diane C. Hutnyan." The Declaration is littered with
6  irrelevant and erroneous allegations, clearly lodged with the hope that MGA would
7  not have time to correct them for the Court before it rules on Mattel's *ex parte*
8  application. The Declaration provides no support for Mattel's *ex parte* application,
9  however, and Mattel's application should be denied.

10       Contrary to Ms. Hutnyan's allegation (Second Supp. Decl. ¶¶ 1-2), Dr. Lyter
11  has <u>not</u> conducted new examinations of the Bryant documents. The digital infrared
12  images and enhanced color scans that were produced to Mattel were taken for the
13  sole purpose of preparing demonstrative exhibits so that Dr. Lyter could display to
14  the jury what he found *in his initial examination as set forth in his Rule 26 report*
15  *and deposition testimony.* Thus, the exhibits produced to Mattel are <u>not</u> products of
16  a new examination as erroneously asserted by Ms. Hutnyan.

17       Further contrary to Ms. Hutnyan's Declaration, Dr. Lyter does not and will not
18  "rely" on these produced exhibits. Rather, as Mattel well knows, since it took his
19  deposition, Dr. Lyter's opinions are based on his microscopic and infrared
20  examination of the documents back in March 2008, not on these new color scans and
21  digital infrared images. These new documents are merely demonstrative – i.e., they
22  were created so that Dr. Lyter can "demonstrate" to the jury what he found during his
23  examination.

24       By contrast, Mattel's *ex parte* application seeks the opportunity to *re-examine*
25  the documents so that its experts can issue sur-rebuttal or "supplemental" expert
26  reports containing new opinions. Dr. Lyter's preparation of demonstrative exhibits

EXHIBIT 33
PAGE 416

1   based on his prior examinations has no relation whatsoever to Mattel's effort to seek

2   a "re-do" of its prior examinations.  Conflating these issues in a last-minute

3   declaration signed by counsel is a misplaced and inappropriate effort to cloud the

4   issue before the Court—namely, the fact that Mattel is not entitled to a "re-do" of its

5   expert examinations.

6        The fact that Bryant has provided access *to MGA* to prepare demonstrative

7   exhibits is irrelevant to whether *Mattel* is entitled to take control of Bryant's valuable

8   documents days before trial so that it's experts can "re-do" their earlier examinations.

9   As set forth in MGA's and Bryant's Joint Opposition papers, in August 2007, this

10  Court granted Mattel's experts 35 days to examine the Bryant original documents,

11  and Mattel never sought leave to extend that period despite the Court's express

12  invitation to do so upon a showing of "good cause."  Mattel waived its right to seek

13  additional time to examine these documents when it failed to seek such leave last fall,

14  and it has presented no "good cause" for relief here, especially where it seeks a total

15  of 21 days to examine the documents and submit new reports even though we are

16  now only 18 days from the start of the trial.  Mattel's tardy request does not even

17  account for the additional time it will take for MGA to complete a second round of

18  expert depositions, which MGA would be entitled to take if Mattel's experts issue

19  new sur-rebuttal reports.  In fact, if the Court granted Mattel's requested relief, there

20  is a strong possibility that Mattel might not even produce its new expert reports until

21  after the trial has commenced.  Such twelfth hour attempts to move the goalposts and

22  change Mattel's trial evidence cannot be allowed.

23

24

25

26

27

28

EXHIBIT 33
PAGE 417

1         For these reasons, and the reasons set forth in MGA's opposition, Mattel's *ex*

2    *parte* application must be denied in its entirety.

3

4    DATED:  May 9, 2008

                                      SKADDEN, ARPS, SLATE, MEAGHER &

5                                            FLOM, LLP

6                              By: Thomas J. Nolan (by AU)

7                                    Thomas J. Nolan
                                Attorneys for MGA Entertainment, Inc.,

8                                    MGA Entertainment (HK) Ltd., MGAE de
                                Mexico, S.R.L. de C.V., and Isaac Larian

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 33
PAGE 418

---

1  THOMAS J. NOLAN (Bar No. 66992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, CA  90071-3144
3  Telephone:   (213) 687-5000
   Facsimile:   (213) 687-5600
4  E-mail:      tnolan@skadden.com

5  RAOUL D. KENNEDY (Bar No. 40892)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  Four Embarcadero Center, Suite 3800
   San Francisco, CA  94111
7  Telephone:   (415) 984-6400
   Facsimile:   (415) 984-2698
8  E-mail:      rkennedy@skadden.com

9  Attorneys for Counter-Defendants,
   MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
10 (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

11                  UNITED STATES DISTRICT COURT

12                 CENTRAL DISTRICT OF CALIFORNIA

13                        EASTERN DIVISION

14

15 CARTER BRYANT, an individual          )   CASE NO. CV 04-9049 SGL (RNBx)
                                         )
16                  Plaintiff,           )   Consolidated with Case No. 04-9059
                                         )   and Case No. 05-2727
17        v.                             )
                                         )   **DISCOVERY MATTER**
18 MATTEL, INC., a Delaware              )
   corporation                          )   **PROOF OF SERVICE**
19                                       )
                    Defendant.           )
20                                       )
   ──────────────────────────────       )
21 Consolidated with MATTEL, INC. v.     )
   BRYANT and MGA                        )
22 ENTERTAINMENT, INC. v.                )
   MATTEL, INC.                          )   Trial Date:      May 27, 2008
23                                       )

24

25

26

27

28

PROOF OF SERVICE                                      NO. CV 04-9049 SGL (RNBx)

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

     I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 300 South Grand Avenue, Suite 3400, Los Angeles, California 90071.

     On **May 9, 2008**, I served the foregoing documents described as:

**SEE ATTACHED DOCUMENT LIST**

on the interested parties in this action addressed as follows:

**SEE ATTACHED SERVICE LIST**

(X)    (BY PERSONAL SERVICE)   ☐    By personally delivering copies to the person served. (FEDERAL)

                                         ☒    I caused such document to be hand delivered to the above addressees. (FEDERAL)

(X)    (BY FEDERAL EXPRESS)

( )    (BY ELECTRONIC MAIL)

     I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

     Executed on **May 9, 2008**, in Los Angeles, California.

Jean A. Chun
PRINT NAME                              SIGNATURE

EXHIBIT 33
PAGE 420

PROOF OF SERVICE                            NO. CV 04-9049 SGL (RNBx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**DOCUMENT LIST**</u>

(1)    MGA'S RESPONSE TO SECOND SUPPLEMENTAL DECLARATION OF DIANE C. HUTNYAN IN SUPPORT OF MATTEL, INC.'S REPLY RE *EX PARTE* APPLICATION FOR ACCESS TO CERTAIN BRYANT ORIGINALS FOR NON-DESTRUCTIVE EXPERT EXAMINATION AND IMAGING;

(2)    PROOF OF SERVICE

EXHIBIT 21
PAGE 33

PROOF OF SERVICE                                                                NO. CV 04-9049 SGL (RNBx)

1

## SERVICE LIST

2

3

4  Jon D. Corey, Esq.                          John Trinidad, Esq.
   Michael T. Zeller, Esq.                     John Keker, Esq.
5  John Quinn, Esq.                            Keker & Van Nest, LLP
   Quinn Emanuel Urquhart Oliver &             710 Sansome Street
6  Hedges, LLP                                 San Francisco, CA 94111
   865 South Figueroa Street, 10th Floor       (415) 391-5400
7  Los Angeles, CA 90017-2543                  (415) 397-7188 (Fax)
   (213) 443-3000
8  (213) 443-3100 (Fax)                        Attorneys for Carter Bryant
                                               [Federal Express]
9  Attorneys for Mattel, Inc
   [Personal Service]

10

11  Mark E. Overland, Esq.
    Alexander H. Cote, Esq.
12  David C. Scheper, Esq.
    Overland Borenstein Scheper & Kim
13  300 South Grand Avenue, Suite 2750
    Los Angeles, CA 90071
14  (213) 613-4655
    (213) 613-4656
15
    Attorneys for Carlos Gustavo Machado
16  Gomez
    [Federal Express]

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE                                                    NO. CV 04-9049 SGL (RNBx)

EXHIBIT 33
PAGE 422

EXHIBIT 34

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>     Plaintiff,<br><br>  v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>     Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-09049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>**ORDER GRANTING MGA DEFENDANTS'** *EX PARTE* **APPLICATION FOR AN ORDER EXTENDING THE MARCH 17 DEADLINE FOR MGA TO SERVE ITS REBUTTAL EXPERT REPORT CONCERNING MS. PRINCE'S NOTARY BOOK** |

Honorable Stephen G. Larson

## ORDER

   The Court has reviewed the ex parte application of the MGA defendants, as well as Mattel's opposition thereto. Based on the Application filed with the Court, and good cause appearing for the entry thereof, IT IS HEREBY ORDERED that:

   1. The *Ex Parte* Application For An Order Extending the March 17 Deadline for MGA to Serve Its Rebuttal Expert Report Concerning Ms. Prince's Notary Book is granted.

   2. In order to allow MGA to serve a rebuttal expert report to the expert report of Valery Aginsky submitted by Mattel, Inc. ("Mattel"), the March 17, 2008

EXHIBIT 34

PAGE 423

deadline for rebuttal expert reports set forth in the Scheduling Order entered October 31, 2007, is hereby extended for a period of fourteen (14) days following the entry of an Order by the Discovery Master resolving Mattel's pending *Ex Parte* Application for a Protective Order Preventing MGA's Destructive Sampling of the Prince Notary Book, filed March 10, 2008 (Docket No. 2563).

DATED:   March 19, 2008 _____

Hon. Stephen G. Larson
United States District Court Judge

EXHIBIT 34
PAGE 424

EXHIBIT 35

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 36

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 37

THIS EXHIBIT IS FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

EXHIBIT 38

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5      (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
7   Facsimile:   (213) 443-3100

8   Attorneys for Mattel, Inc.

9                      UNITED STATES DISTRICT COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

11                          EASTERN DIVISION

12

13   CARTER BRYANT, an individual,          Case No. CV 04-09049 SGL (RNBx)

           Plaintiff,                        Consolidated with
14                                           Case No. CV 04-09059
        vs.                                  Case No. CV 05-02727
15
    MATTEL, INC., a Delaware corporation,   **DISCOVERY MATTER**
16
           Defendant.                        Hon. Edward A. Infante (Ret.)
17                                           Discovery Master

18                                           [PROPOSED] ORDER GRANTING
    AND CONSOLIDATED CASES                   MATTEL, INC.'S MOTION TO
19                                           COMPEL BRYANT TO MAKE
                                             ORIGINAL DOCUMENTS
20                                           AVAILABLE FOR EXPERT
                                             EXAMINATION AND TESTING
21
                                             Date: August 23, 2007
22                                           Time: 9:00 a.m.
                                             Place: Telephonic
23
                                             Discovery Cut-Off: October 22, 2007
24                                           Pre-Trial Conference: January 14, 2008
                                             Trial Date: February 12, 2008
25

26

27

28

07209/2201594.1

                                                        [PROPOSED] ORDER

EXHIBIT  38
PAGE  537

1    Having considered Mattel, Inc.'s Motion To Compel Bryant To Make
2 Original Documents Available For Expert Examination and Testing (the "Motion"),
3 and all other papers and argument submitted in support of or opposition to the
4 Motion, and finding good cause therefore,

5    IT IS HEREBY ORDERED that:

6    1.   Mattel's Motion is GRANTED IN PART, as follows:

7    2.   The following materials were provided to the Discovery Master, at
8 his request, for *in camera* review:   the C.V. of the four experts who will be
9 conducting examination, inspection and testing of the documents; and statements
10 from each of them as to the location and nature of their laboratory facilities, as to
11 their individual practices with regard to the preservation of evidence, and as to their
12 understanding that they are fully accountable for Bryant's original documents while
13 those documents are in their custody.   The Discovery Master has found Mattel's
14 showing with respect to the experts satisfactory.

15    3.   Accordingly, Bryant shall produce to Mattel, within ten (10) Court
16 days of entry of this Order, on the day that Mattel specifies, the original documents
17 listed below for Mattel's experts' examination, testing and/or analysis:

18  - the originals of boxes 1 through 8 inclusive;

19  - from box 9: folders "Sugar Planet Spring 2003 Tropical" and "Sugar
20    Planet General 2001-2002?";

21  - from box 10: folders "Baby Bratz," "F 04 Retro Funk General," "Sugar
22    Planet Butterfly Purse & Character S 04," "Lipstixx 2003," Sugar Planet
23    Candyland Purse:  Character S 04" and "Sugar Planet Tropical 2001"

24  - from box 11: folders entitled "Bratz Dollpack Fall 2003," "S04 Girls
25    Night Out," "Bratz New Accessories Etc. 2002," "Bratz Petz S04,"
      "Winter Wonderland F03 Dolls," "Bratz Spring 2002 7.99 molded
26    pieces," "S04 Sweetheart," "Jade Dollpack Spring 2003," "Jade Fall
27    2002," "Sasha Fall 2002," "Yasmin Fall 2002," "Cloe Fall 2002," "New

28

-1-

PROPOSED ORDER

EXHIBIT 38
PAGE 538

1    Girl 2002 Fall," "Bratz $7.99 2002 Spring Break," and "Bratz Spring
2    2002 14.99 segment."

3    ~~If Mattel's experts determine that their analysis would potentially benefit~~
4    ~~from access to other original documents not listed above, Bryant will make those~~
5    ~~originals available to Mattel's counsel or Mattel's expert(s) at Mattel's counsel's~~
6    ~~direction upon five (5) Court days' notice.~~

7        4.    On the day specified, Mattel will pick up the documents listed
8    above from Keker & Van Nest's San Francisco office during normal business hours.
9    The next day after the documents are removed from Keker & Van Nest shall be the
10   first of 35 days that Mattel will have for the expert examination and testing of the
11   materials requested for preparation of its initial expert reports, which time period may
12   be extended upon a showing by Mattel of good cause by further Order of the
13   Discovery Master.  The documents shall be returned to Keker & Van Nest's San
14   Francisco office on the 35th day during normal business hours.

15       5.    The experts' examination, testing and analysis may take place at
16   the experts' laboratories.  Any shipping of the originals will be done by overnight
17   mail, for earliest delivery possible to the destination area, using Federal Express or
18   UPS or a similar service that Bryant selects.

19       6.    If any of Mattel's experts recommends that a form of destructive
20   testing (that is, any testing that would alter the documents' inherent physical status) be
21   conducted, the following procedure shall be used.  First, Mattel will send a request in
22   writing to Bryant and MGA explaining what would be tested and what test or tests
23   would be conducted.  Then Bryant and MGA will have five (5) Court days to object,
24   in which case the parties must meet and confer and, within three (3) more Court days,
25   file a joint statement with Judge Infante to seek resolution of the dispute.  Bryant and
26   MGA may also elect to have their own experts attend for any destructive testing
27   being done, so long as they make this election in writing to Mattel within the five-
28   Court-day objection period, and so long as the testing can take place within ten (10)

07209/2201994.1

-2-

PROPOSED ORDER


EXHIBIT   38
PAGE   539

1   Court days of the original request.  If Bryant's or MGA's expert, while he or she is
2   observing the examination or destructive testing, raises any issues about sampling or
3   testing being done or any other aspects of the expert's or experts' process, the parties
4   will seek immediate resolution from this Court so that the sampling, testing or other
5   activity will not be delayed.  If Bryant's counsel or MGA's counsel does not object or
6   seek attendance by its expert within five days of the request, the proposed destructive
7   testing shall be deemed as unobjectionable and may be carried out without further
8   delay.

9           7.      With the exception of alterations resulting from any destructive
10  testing, which would be conducted in accordance with the protocol above, all the
11  Bryant documents that are provided for inspection, examination and testing shall be
12  returned in the same condition, sequence and order in which they were received.

13          **IT IS SO ORDERED.**

14

15  DATED: _Aug 30_ , 2007

16

17

18  Hon. Edward Infante (Ret.)
    Discovery Master

19

20

21

22

23

24

25

26

27

28

07209/2201994.1

-3-

PROPOSED ORDER

EXHIBIT 38
PAGE 540

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Prepared and respectfully submitted by:
QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP


Dennis C. Hutnyan /SBK
Diane C. Hutnyan
Attorneys for Mattel, Inc.

O7209/2201994.1

-4-

PROPOSED ORDER

EXHIBIT 38
PAGE 541

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on August 30, 2007, I served the attached ORDER GRANTING MATTEL, INC'S MOTION TO COMPEL BRYANT TO MAKE ORIGINAL DOCUMENTS AVAILABLE FOR EXPERT EXAMINATION AND TESTING in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on August 30, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT 35
PAGE 542

EXHIBIT 39

# WILLIAM J. FLYNN, B.S., D-ABFDE
### Forensic Document Examiner
### Curriculum Vitae

## EXPERIENCE (CIVIL):

October 1983 - Present:

### PRESIDENT AND CEO - AFFILIATED FORENSIC LABORATORY, INC.

Founded and Incorporated Affiliated Forensic Laboratories in 1983 to provide the legal and business communities with professional forensic questioned document services.

January 1973 - September 1983:

Private civil practice in Questioned Document Examination - Phoenix, Arizona

## EXPERIENCE (CRIMINAL):

Jan 1973 - July 1991:

### QUESTIONED DOCUMENT SUPERVISOR - ARIZONA DEPARTMENT OF PUBLIC SAFETY.

Supervising Analyst. Arizona Department of Public Safety. Questioned Document Laboratory. Was responsible for determining authorship of questioned handwritings and handprintings; detecting alterations. additions. interlineations, chemical and mechanical erasures, evidence of tracings or other tampering with original documents. Used stereoscopic microscopes. test plates. infrared. ultraviolet and other spectral devices and video conversion equipment. Conducted counterfeit detection, ink and paper analyses. Have qualified and rendered expert testimony in Federal, State, and Municipal courts throughout the United States. Prepared court exhibits to illustrate my conclusions at these judicial proceedings. Lectured on related subjects for law enforcement and citizen groups.

Supervised and evaluated subordinate document examiners, as well as trained apprentice examiners. Conducted research in the field to further the science of questioned document examination.

rev. 8/06

EXHIBIT 39
PAGE 543

February 1965 - December 1972:

## QUESTIONED DOCUMENT EXAMINER/SERGEANT - PHILADELPHIA POLICE DEPARTMENT CRIME LABORATORY

Initially hired as a Patrolman with the Philadelphia Police Department. After two and one half years was promoted to Detective and subsequently assigned to the Crime Laboratory as a Questioned Document Examiner trainee. Completed apprenticeship in 1970 and was promoted to Detective Sergeant/Questioned Document Examiner. Remained in that capacity until joining the Arizona State Crime Laboratory in January of 1973.

## SPECIALIZED TRAINING COURSES IN QUESTIONED DOCUMENTS:

### SOUTHWESTERN ASSOCIATION OF FORENSIC DOCUMENT EXAMINERS / ASQDE / ABFDE

a.  Medical/Legal Symposium on the Forensic Examination of Medical Records and Testimony Related to Medical Malpractice Cases – Miami, FL, May 1997.

b.  Identification of typewriter fonts utilizing the Bouffard Electronic Database System - Dr. Bouffard 1994

c.  Forensic Paper Identification Symposium - Mead Paper Co. 1992

### FEDERAL BUREAU OF INVESTIGATION, TRAINING ACADEMY, QUANTICO, VIRGINIA:

a.  Typewriter Identification School - 1987.

b.  International Symposium on Questioned Documents - 1985.

c.  Legal Aspects of Questioned Document Examination - 1978.

d.  Questioned Document Laboratory Photography - 1975

e.  Survey of Questioned Document Examiners - 1974.

### INSTITUTE OF PAPER CHEMISTRY, APPLETON WISCONSIN:

a.  Forensic Identification of Paper - 1973.

2

rev. 8/06

EXHIBIT __39__
PAGE ___544___

## U.S. SECRET SERVICE, WASHINGTON, D.C.:

a.    Questioned Document School - 1970.

## PHILADELPHIA POLICE DEPARTMENT CRIME LABORATORY:

a.    Two year apprenticeship with the Chief Document Examiner for the Philadelphia Police Crime Laboratory - 1968 through 1970

## PENNSYLVANIA STATE POLICE DOCUMENT LABORATORY:

a.    Initial Questioned Document Training with the Chief Document Examiner for the Pennsylvania State Police Laboratories, 1968.

## CONTINUING TRAINING:

Over the past thirty four years, have attended, and/or conducted, more than ninety seminars, training workshops, scientific symposia, and professional meetings involving such organizations as: The American Academy of Forensic Sciences, American Society of Questioned Document Examiners, American Board of Forensic Document Examiners, Southwestern Association of Forensic Document Examiners, and the International Association for Identification.

rev. 8/06

EXHIBIT __31__

PAGE __545__

## PROFESSIONAL AFFILIATIONS:

Member - American Academy of Forensic Sciences

Member – American Society of Questioned Document Examiner

Member – Southwestern Association of Forensic Document Examiners (President 1985-1987)

Librarian/Historian - Southwestern Association of Forensic Document Examiners. (1981 - Present)

President - American Board of Forensic Document Examiners (1989 - 1991)

## EDUCATION and CERTIFICATIONS:

B.S., University of Phoenix (Computer Information Systems)

Board Certified by the American Board of Forensic Document Examiners.

## COURT QUALIFICATIONS:

Qualified as a Questioned Document Examiner in Federal, State and Municipal Courts throughout the United States. Have also testified as an expert in Europe and the Middle East.

## PAPERS PUBLISHED:

a.  "The Illusion of Traced Forgery on Zinc Oxide Photocopy Paper" - *Journal of Police Science and Administration* - Vol. 2:No.3 Dec. 1974.

b.  "Forgery by Phone" - ibid. Vol. 4:No.3 Sept. 1976.

c.  "PaperMate's New Erasable Ink Pen" - ibid. Vol. 7:No.3 Sept. 1979.

d.  "Instant Winner Lottery Tickets - Examination and Testing Procedures" Presented at the AAFS Meeting Feb. 1988.

e.  "Laser Printers - Nemesis of the '90's" Co-authored with Robert G. Lockard. Presented at the ASQDE Meeting Aug. 1990.

f.  "Typography for Document Examiners" - Presented at the Fall 1991 meeting of the Southwestern Association of Forensic Document Examiners.

g.  "Light, Color, and Filters" – biannual publication of the Southwestern Association of Forensic Document Examiners - 1992.

h.  "Utilizing Computer Generated Graphics as an Aid to Expert Testimony" Presented at the Fall 1992 meeting of the Southwestern Association of Forensic Document Examiners.

rev. 8/06

EXHIBIT 39
PAGE 546

i.    "Identification of Non-Impact Printing Devices" - Published as a series (1993-1994) in the *ABFDE NEWS* the quarterly publication of the American Board of Forensic Document Examiners.

j.    "Light, Color, and Filters Revisited" – biannual publication of the Southwestern Association of Forensic Document Examiners Vol. XII-#3, Fall 1993 co-authored with Gerald B. Richards, F.B.I. Laboratory. Wash. D.C.

k.    "Electronic Typography for Document Examiners (update)" - Presented at the 52nd annual meeting of the American Society of Forensic Document Examiners. August 1994

l.    "Production and Utilization of Computer Generated Court Exhibits for Document Examiners" Presented as a workshop at the Southwestern Association of Forensic Document Examiners meeting. Spring 1995

m.    "Widows and Orphans Provide Clues as to Facsimile Transmission Methodology" – *ABFDE NEWS* the quarterly publication of the American Board of Forensic Document Examiners (Spring 1995)

n.    "Measurement of Repeating Image Defects as a Method for the Identification of Hewlett Packard Laser Printers" – ibid. (Spring 1996)

o.    "Hewlett Packard's Printer Control Language - PCL" – ibid. (Summer 1996)

p.    "Using Digital Photography for Courtroom Presentations". Talk presented at the spring 1997 meeting of the Southwestern Association of Forensic Document Examiners.

q.    Co-author <u>"Scientific Examination of Questioned Documents, Second Ed."</u> Published 2006 by CRC Press Chapters - "The Examination of Computer Generated Documents" and "Typography."

## EXAMINATIONS:

During the past thirty four years I have either written or reviewed (as Senior Analyst) more than 19.500 Questioned Document laboratory reports including those for some of the following agencies:

### *FEDERAL AGENCIES:*

U.S. Treasury Dept.. U.S. Secret Service. Federal Bureau of Investigation, U.S. Dept. of Immigration and Naturalization. United States Attorney's Offices. U.S. Postal Service. United States Internal Revenue Service. U.S. Bureau of Alcohol Tobacco and Firearms, U.S. Drug Enforcement Administration. U.S. Army C.I.D.. U.S. Air Force O.S.I.. U.S. Department of Agriculture, U.S. State Department, U.S. Department of Justice. U.S. Department of Defense.

### *STATE AGENCIES:*

rev. 8/06

EXHIBIT 31

PAGE 547

More than fifty (50) different State Agencies in Arizona, New Mexico, California, Nevada, Colorado, Utah, Montana, North Dakota, Georgia, Pennsylvania, Alaska and Guam.

## MUNICIPAL AGENCIES:

More than sixty (60) different Municipal Law Enforcement Agencies in Arizona as well as most of the Agencies in the five county area around Philadelphia, Pennsylvania.

## PRIVATE PRACTICE:

More than a fifteen hundred cases worked for attorneys in civil litigations, as clients of Affiliated Forensic Laboratory's private practice.

## AWARDS:

More than 220 letters of commendation from the various U.S. Government Agencies, State Agencies, County Government and Municipalities for whom documents have been examined and/or testimony rendered.

## TEACHING ACTIVITIES:

1990 - Present:

Guest lecturer, National Association of Legal Investigators Seminar, "Blazing the Investigative Trail," Scottsdale, AZ, 1/26/01

Guest lecturer, International Association of Internal Auditors Conference, Atlanta, GA.

Guest lecturer, International Association of Internal Auditors Conference, Phoenix, AZ.

Guest lecturer, American Medical Records Association, Casa Grande, AZ.

Guest speaker Medical Records Litigations (ATLA), Steamboat Springs, CO.

Conducted a series of seminars and workshops for forensic document examiners concerning computer printing devices and electronic typography (1992-Present)

Guest Lecturer, International Association of Credit Card Investigators, Scottsdale, AZ

1975 - 1991:

6

rev. 8/06

EXHIBIT __39__

PAGE __548__

## INSTRUCTOR - CRIMINAL JUSTICE AGENCIES:

Advanced Investigator's training for all law enforcement agencies in Arizona at
the ALETA Academy.

Numerous classes and symposia for Maricopa County Bar Association, American
Trial Lawyers Association. DES, Phoenix Police Academy, Arizona Attorney
General's Office, U.S. Internal Revenue Service, etc.

### 1973 - 1991:

## INSTRUCTOR - PHOENIX COLLEGE, AND AMERICAN
## INSTITUTE OF BANKING:

Conducted a course of instruction at Phoenix College for fourteen years, dealing
with investigation of document crimes, forgery and counterfeiting matters through
the Administration of Justice Department. Conducted Forgery and Counterfeiting
seminars for the American Institute of Banking. Taught Computer Science
courses at Gateway Community College - Beginning and Advanced Operating
Systems, and various computer program applications.

rev. 8/06
EXHIBIT 39
PAGE 549

EXHIBIT 40

| LLOYD CUNNINGHAM |
| FORENSIC DOCUMENT EXAMINER |
| 67 OAK MEADOW COURT, ALAMO, CA 94507 |
| OFFICE PHONE: 925-831-0790 |
| FAX: 925-831-0791 |

## CURRICULUM VITAE

Currently I am self-employed as a Forensic Document Examiner.

The following is a resume of my qualifications as they relate to my expertise. I would testify to these qualifications in a court of law as an expert in the examination of questioned handwriting and documents.

| | |
|---|---|
| 1963-1990 | Twenty-seven years of service with the San Francisco Police Department. Retired Inspector of Police. |
| 1977-1980 | Assigned to the San Francisco Police Department Fraud Unit, Embezzlement Investigations. |
| 1980 | Graduated from the United States Secret Service Questioned Documents Course in Washington, D.C. |
| 1980-1982 | Completed a 2-1/2 year course of studies as an intern with the Questioned Document Section of the United States Postal Crime Laboratory. |
| 1982 | Graduated from the F.B.I. Questioned Documents Course in Quantico, VA. |

Established the first full time Questioned Document Section within the San Francisco Police Department Crime Laboratory and supervised this section from 1980 – 1990.

Past president of the Southwestern Association of Forensic Document Examiners.

## MEMBER

Southwestern Association of Forensic Document Examiners.

Honorary Member of the American Society of Questioned Document Examiners.

International Association for Identification – Questioned Document Section.  Life Member.

EXHIBIT __40__
PAGE __550__

## ATTEND FORENSIC WORKSHOPS SPONSORED BY:

Southwestern Association of Forensic Document Examiners
American Society of Questioned Document Examiners
American Board of Forensic Document Examiners
International Association for Identification
American Academy of Forensic Sciences

Prepared scientific research papers which were presented at forensic
seminars and published in forensic and law enforcement journals.

### LECTURED

San Francisco Police Department Academy
Oakland Police Department
District Attorney Investigator's Association
California District Attorney's Association
Trial Lawyer's Association
American Bar Association
California Department of Motor Vehicles Investigators
U.S.F Law School.  Hasting Law School
Numerous Bank Investigators and Investigative Associations.

### INSTRUCTOR

Certified by the California Commission of Peace Officer Standards and Training
to teach Questioned Document Investigative Techniques in the Institute of
Criminal Investigation.

Taught (POST) Questioned Document Investigative Techniques in conjunction
with the San Jose State University Administration of Justice Department from
1991 – 2003.

Examined items and prepared formal reports for approximately 6,000 questioned
document cases which were submitted by law enforcement investigators,
corporate security, civil attorneys, criminal defense attorneys, and for federal and
state agencies such as the F.B.I, Secret Service, I.R.S., U.S. Customs, D.E.A.,
California Highway Patrol, etc.

Testified and have been accepted as an expert Forensic Document Examiner in
excess of 500 times in State and Federal Courts, and in depositions and hearings.

EXHIBIT __4D__
PAGE __55)__

EXHIBIT 41

# VALERY N. AGINSKY, Ph.D.

## Curriculum Vitae

**Position:**   *Forensic Chemist / Document Dating Specialist*
Riley, Welch & Aginsky Forensic Document Examinations, Inc.
Lansing, Michigan

**Education:**   *Ph.D. Analytical Chemistry - 1980*
Military Academy of Chemical Defense (formerly known as the Chemical Faculty of the Institute of Mechanical Engineering prior to 1940), Moscow, USSR

*M.S. Analytical Chemistry - 1977*
Military Academy of Chemical Defense, Moscow, USSR

**Professional Experience:**   Riley, Welch & Associates Forensic Document Examinations, Inc., Lansing, Michigan
*Forensic Chemist* (1998 to April 2005)

Riley, Welch & Aginsky Forensic Document Examinations, Inc., Lansing, Michigan
*Forensic Chemist* (April 2005 to present)

Responsible for chemical analysis of ink on documents (ink comparison and dating). Uses ink dating methods developed as a result of many years of research of the methodology developed and published by Dr. Antonio Cantu. These methods measure certain parameters of ink that decrease as ink ages on paper. They analyze *ink volatile components* (their residues are always present in ink lines, no matter the ink age) and enable <u>*absolute* ink age determination</u>: one determines a time frame within which a questioned entry has been written, not relative to other known dated entries, as *relative* ink age determination technology requires.

Forensic Science Center of the Ministry of the Interior, Moscow, Russia
*Senior Research Chemist* (1980 to 2000)

EXHIBIT __41__
PAGE __552__

Involved in methods development, technical assistance to investigative personnel, including training and presentations to legal proceedings and routine examination of evidence. Developed several techniques for examining questioned documents, drugs of abuse, explosives and gunshot residues.

About ten years of professional research and practical experience as a questioned document examiner: the dating of writing, stamp pad and printing inks, alteration of records, indented writings, erasures/eradications/obliterations, sequence of strokes, paper/ink/toners, computer printers and documents generated, counterfeit currency, currency exposed to an exploding dye-pack.

*Methods:* microscopy, microspectrophotometry, electrostatic imaging analysis, video enhancement techniques, infrared spectroscopy, ultraviolet/visual spectrophotometry, thin-layer chromatography, and gas chromatography-mass spectrometry.

**Honors/Awards:**   *Diploma and the First Prize for new techniques on Dating Inks*
Ministry of the Interior, 1993

*Award for excellence in service (Best Forensic Chemist)*
Ministry of the Interior, 1982

*Silver medal in chemistry at the 1976 All-Union Contest of Scientific Works,*
Ministry of Defense

*Co-Chair of the Questioned Documents Sections at the First International Forensic Science Symposium, Moscow, Russia, 1994, the 13th and 14th Meetings of the International Association of Forensic Sciences, Dusseldorf, Germany, 1993, and Tokyo, Japan, 1996.*

**Teaching Experience:**   Conducted numerous training seminars for the personnel of forensic laboratories in Russia and the former Soviet Union in the framework of the Ministry of the Interior's training programs:

*Technical and Chemical Examination of Counterfeit Currency*

*Detecting and Dating Alterations Made to Documents*

*Ink/Paper Comparison by Thin-Layer Chromatography and Other Analytical Methods*

*Detection and Characterization of Explosive Residues*

EXHIBIT   41
PAGE   553

*Aginsky CV*
*Page 3 of 6*

Served as visiting examiner to the Division of Identification and Forensic Science, Israel Police Headquarters, 1996 & 1997.

Conducted seminars on ink analysis and dating for the Division of Identification and Forensic Science, Israel Police Headquarters, Jerusalem, Israel, 1995; Ministry of Justice and Ministry of the Interior Combined Scientific Council for Forensic Science and Criminalistics, Moscow, Russia, 1997; the Forensic Sciences Division of the Canada Customs and Revenue Agency, Ottawa, Canada, 1998; Istanbul University, Institute of Forensic Sciences, Istanbul, Turkey 2000.

Conducted a seminar on Quantitative Thin-Layer Chromatography (Internal Standard Method) at the Russian-German Summer School on Thin-Layer Chromatography, Moscow, Russia, 1993.

**Court Testimony:** Testified regarding ink analysis and ink and document dating in criminal and civil matters and in arbitrations.

**Professional Affiliations:**

International Association for Identification, Questioned Documents Section (1992 - present)

International Association of Forensic Sciences, Questioned Documents Section (1993 - present)

Ministry of Justice and Ministry of the Interior Combined Scientific Council for Forensic Science and Criminalistics (Russia, 1995-1999)

Regional Representative for the Russian Charted Division of the International Association for Identification (1998 - 2000)

American Society for Testing & Materials (2003 - present)

EXHIBIT ___41___
PAGE ___554___

## Professional Publications

### Books

1. Document Analysis / Analytical Methods. *Encyclopedia of Forensic Sciences*, J.A. Siegel (Ed.), Academic Press, Harcourt Publishers Ltd., 2000.

2. Writing Media and Documents. Chapter 19. *Handbook of Analytical Separations.* Vol. 2 – Forensic Science, M.J. Bogucz (Ed.), ELSEVIER, Amsterdam – New York – Oxford – Shannon – Singapore – Tokyo, 2000.

3. Writing Media and Documents. Chapter 28. *Handbook of Analytical Separations (2nd Edition).* Vol. II – Forensic Science (publication pending).

4. An Application of Chromatographic Methods for Dating Questioned Documents. *Chromatography (Celebrating the 125th Birthday of the Inventor of Chromatography, Dr. Michael Tswett)*, O. Kaiser, R.E. Kaiser, H. Gunz, and W. Gunther (Eds.), InCOM, Duesseldorf, Germany, 1997.

5. A New Version of the Internal Standard Method in Quantitative Thin-Layer Chromatography. Chapter 4.6. *Handbook of Modern Thin-Layer Chromatography*, O.G. Larionov (Ed.), Russian Academy of Science, Chromatography Council, Moscow, Russia, 1994 (in Russian).

6. Aginsky, V.N. and Dildin, Yr. M., *Forensic Examination of Explosives*, VNII MVD SSSR, Moscow, USSR, 1982 (in Russian).

7. Aginsky, V.N., Safronenko, T.I., and Sorokina, G.I., *Forensic Examination of Questioned Documents*, VNII MVD SSSR, Moscow, USSR, 1987 (in Russian).

8. Aginsky, V.N., Safronenko, T.I., and Sorokina, G.I., *Detecting and Dating Alterations Made to Documents*, VNII MVD SSSR, Moscow, USSR, 1989 (in Russian).

9. Aginsky, V.N., Zibrov, G.S., and Sorokina, G.I., *Analysis of Drugs, Inks, Petroleum Products, and Explosives by Reversed Phase Thin-Layer Chromatography*, Forensic Science Center of the Russia's Ministry of the Interior, Moscow, 1993 (in Russian).

## Peer-Reviewed Articles and Presentations at Scientific Conferences

10. A New Application of Instrumental Planar Chromatography in Forensic Analysis, *Journal of Planar Chromatography*, Vol. 4, 1991, pp. 167-169.

11. Some New Ideas for Dating Ballpoint Inks – A Feasibility Study, *Journal of Forensic Sciences*, 1993, No. 5.

12. Comparative Examination of Inks by Using Instrumental Thin-Layer Chromatography and Microspectrophotometry, *Journal of Forensic Sciences*, Vol. 38, No. 5, Sept. 1993, pp. 1111-1130.

13. Forensic Examination of "Slightly Soluble" Inks Pigments Using Thin-Layer Chromatography, *Journal of Forensic Sciences*, Vol. 38, No. 5, Sept. 1993, pp. 1131-1133.

EXHIBIT __41__
PAGE __555__

14. Mechanism and Kinetics of the Aging of Some Ink Dyes. *Advances in Forensic Sciences.* Vol. 3 - Forensic Criminalistics, Proceedings of the 13th Meeting of the International Association of Forensic Sciences, Dusseldorf 1993, B. Jacob and W. Bonte, Eds., Verlag Dr. Koster, Berlin, 1995.

15. Discrimination between Naturally and Artificially Aged Ballpoint Inks, ibid.

16. Determination of the Age of Ballpoint Pen Ink by Gas and Densitometric Thin-Layer Chromatography, *J. Chromatography*, 1994, Vol. 678.

17. A New Version of the Internal Standard Method in Quantitative Thin-Layer Chromatography, *Journal of Planar Chromatography*, July/August 1994, Vol. 7, pp. 309-314.

18. A Microspectrophotometric Method for Dating Ballpoint Inks - A Feasibility Study, *Journal of Forensic Sciences*, Vol. 40, No. 3, May 1995, pp. 475-478.

19. Dating and Characterizing Writing, Stamp Pad and Jet Printer Inks by Gas Chromatography/Mass Spectrometry, *International J. Forensic Document Examiners*, 1996, No. 2, pp.103-115.

20. Accelerated Aging – Its Use in Methods for Dating Ink (Letter to the Editor), *International J. Forensic Document Examiners*, 1996, No. 3.

21. Ink Dating – The State of the Art in 1996, Proceedings of the 14th Meeting of the International Association of Forensic Sciences, Tokyo 1996, Shunderson Communications, 1997, Vol. 4.

22. Current Methods for Dating Inks – Which is the Best? Presented at the 49th Annual Meeting of the American Academy of Forensic Sciences, New York, NY, 1997.

23. Dating Ink on Questioned Documents – The State of the Art in 1997, presented at the First European Meeting of Forensic Science, Lausanne, Switzerland, 1997.

24. Measuring Ink Extractability as a Function of Age – Why the Relative Aging Approach is Unreliable and why it is More Correct to Measure Ink Volatile Components than Dyes, *International J. Forensic Document Examiners*, 1998, No. 3.

25. Ink Dating – The State of the Art, presented at the 50th Annual Meeting of the American Academy of Forensic Sciences, San Francisco, CA, 1998.

26. Ink Dating – The State of the Art, presented at the First Regional Symposium on Criminalistics, April 20-22, 2000, Istanbul University, Institute of Forensic Sciences, Turkey.

27. Determining the Sequence of Non-Intersecting Media on Documents: Ballpoint Pen Ink and Laser Toner Entries, *Journal of the American Society of Questioned Document Examiners*, 2002.

28. Current Methods for Dating Ink on Documents, presented at the 60th Annual Conference of the American Society of Questioned Document Examiners, San Diego, California, August 14-19, 2002, and at the Midwestern Association of Forensic Scientists Fall 2002 Meeting, Milwaukee, Wisconsin, September 15-20, 2002.

29. Using TLC and GC-MS to Determine whether Inks Came from the Same Manufacturing

EXHIBIT 41
PAGE 556

Batch, presented at the 63rd Annual Conference of the American Society of Questioned Document Examiners, Montreal, Canada, August 11-16, 2005.

30. Using TLC and GC-MS to Determine whether Inks Came from the Same Manufacturing Batch, *Journal of the American Society of Questioned Document Examiners*, Vol. 9, No. 1, 2006, pp. 19-27.

31. Current Methods for Dating Ink on Documents, presented at the 65th Annual Conference of the American Society of Questioned Document Examiners, Boulder, Colorado, August 11-16, 2007.

## Other Professional Publications

32. Aginsky, V.N. and Sorokina, G.I., "Detecting Explosives in Post Explosion Debris Contaminated by Petroleum Products", *Expertnaya Praktika [Expert Practice]*, Vol. 19, 1982, pp. 73-75 (in Russian).

33. Aginsky, V.N. and Sorokina, G.I., "Detection of Explosive Residues Intruded into Asphalt", *Expertnaya Praktika [Expert Practice]*, Vol. 20, 1983, pp. 109, 110 (in Russian).

34. Aginsky, V.N. and Sorokina, G.I., *Detection and Quantitative Determination of Clonidine and Other Psychotropic Drugs in Beverages*, VNII MVD SSSR, Moscow, USSR, 1990 (in Russian).

35. Aginsky, V.N., "A New Application of Instrumental Planar Chromatography in Forensic Analysis," presented at the 6th International Symposium on Instrumental Planar Chromatography, Interlaken, Switzerland, April 23-26, 1991.

36. Aginsky, V.N., Sorokina, G.I., and Zibrov, G.S., "Detection, Identification and Comparative Examination of Narcotics and Drugs of Abuse," Proceedings of the Forensic Science Symposium, Linkoping, June 1992, Report 27, National Laboratory of Forensic Science, Linkoping, Sweden, 1993.

37. Aginsky, V.N., Savilov, A.P., and Sorokina, G.I., "Chromatographic Screening of Drugs of Abuse," Proceedings of the Forensic Science Symposium, Moscow, March 1994, Forensic Science Center of the Ministry of the Interior, Moscow, Russia, 1994.

38. Aginsky, V.N., "Increasing the Reliability of the Identification of Separated Substances in Densitometric Thin-Layer Chromatography", *Advances in Forensic Sciences*. Vol. 3 - Forensic Criminalistics, Proceedings of the 13th Meeting of the International Association of Forensic Sciences, Dusseldorf 1993, B. Jacob and W. Bonte, Eds., Verlag Dr. Koster, Berlin, 1995.

39. Aginsky, V.N., "A New Approach in Determining the Age of Inks Using Densitometric Thin-Layer Chromatography," ibid.

40. Aginsky, V.N., "Instrumental Techniques for Comparing Similarly Colored Inks," ibid.

41. Aginsky, V.N., Lesnikov, V.A. and Sorokina, G.I., "Time of Shooting - Feasibility of Discriminating "Fresh" and "Old" Organic Gunshot Residues," Proceedings of the 14th Meeting of the International Association of Forensic Sciences, Tokyo 1996, Shunderson Communications, 1997, Vol. 4.

42. Aginsky, V.N., "Application of GC/MS in Some Areas of Forensic Analysis," presented at the Hewlett-Packard Analytical Forum, Moscow, Russia, April 1998.

43. Aginsky, V.N., "Determining the Sequence of Non-Intersecting Media on Documents – Ballpoint pen ink and laser toner entries," presented at the 49th Annual Conference of the American Society of Questioned Document Examiners, Des Moines, Iowa, August 2001.

EXHIBIT   41
PAGE   557

EXHIBIT 42

**From:** Sloan, Matthew E [mailto:Matthew.Sloan@skadden.com]
**Sent:** Thursday, May 15, 2008 12:35 AM
**To:** Diane Hutnyan
**Cc:** Lanstra, Allen L (LAC)
**Subject:** Your Proposed Ex Parte Application

Diane — Having re-read your discovery letters this evening, I realize that your ex parte application may be based on some misconceptions that I should clarify before your filing to help focus the issues for the Court.   In your May 11 letter threatening to file your ex parte, you complained that the production of the 210 new digital infrared images and enhanced color scans of the Bryant originals we produced on May 5, 2008 was evidence that (1) Dr. Lyter and Dr. Kullman had conducted new "examinations" of the Bryant documents upon which they would rely at trial; and (2) that we were trying to "sandbag" you by producing these documents after Dr. Lyter and Mr. Kullman's depositions.  As I assured you in my May 12 letter, your claims were and are totally unfounded.

First, contrary to your claims, neither Dr. Lyter nor Mr. Kullman conducted new "examinations" in the production of these images, and neither Dr. Lyter nor Mr. Kullman "relied" on these enhanced images in reaching the conclusions they expressed in their expert reports.  Indeed, that would be impossible because, as you noted, the images were not even created until late April, more than a month after Kullman and Lyter issued their opinions, and well after you took both Mr. Kullman's and Dr. Lyter's depositions.  Rather, the images were created merely as exhibits to demonstrate Dr. Lyter's and Mr. Kullman's findings to the jury.  Thus, your ex parte to strike Dr. Lyter's and Mr. Kullman's testimony on the sequencing is totally without merit.

Second, your claim that we were "sandbagging" you is also unfounded. The truth of the matter is that we did not have time to begin taking the digital infrared images and enhanced color scans (and I'm not sure we even contemplated taking them) until approximately late April.  These images were taken to create exhibits which we may introduce at trial in addition to the Bryant original drawings, and as the basis for demonstrative exhibits to display Dr. Lyter's and/or Mr. Kullman's findings to the jury.

In addition to the above, which I hope clarifies our position, I think you may have a misconception about how and by whom these images were created.   The images were marked by our paralegals with an AL bates number because we anticipate that they will likely be introduced by Dr. Lyter at trial (although we reserve the right to have Mr. Kullman testify about them as well).  However, due to Dr. Lyter's scheduling constraints and other considerations (including Mr. Kullman's access to a slightly larger and more advanced VSC machine), the images were actually produced by Mr. Kullman and his colleagues at Speckin Laboratories, not Dr. Lyter.  We plan on having Dr. Lyter thoroughly review these images at Speckin laboratories and review how they were produced before the trial, so that he will be able to authenticate them at trial.  But I want to be clear that he is not the one who actually produced them.  Thus, to the extent that your ex parte is based on the claim that *Dr. Lyter* should be excluded from rendering any opinions on the sequencing of the Bryant original documents at trial because the production of these images on their own constitutes a new expert examination, it would appear that you may want to focus your ex parte on Mr. Kullman not Dr. Lyter (although I would not presume to advise you how to structure your motion).   (I should note, moreover, that although we do not believe either Mr. Kullman's production of these new images or Dr. Lyter's review of them constitutes a new *expert examination*, we believe that MGA's experts were well within their rights to conduct such further examinations given Mr. Bryant's voluntary decision to give MGA access to these documents).

I frankly anticipated that we might have a more fruitful discussion about these matters at our meet and confer on

EXHIBIT __42__
PAGE ___558___

Tuesday afternoon, but with all due respect you were so vociferous about your views that I could not get in a word edgewise and we could not, in my mind, have a meaningful discussion. In the interest of avoiding any confusion, however, I wanted to clarify these facts before you file your ex parte as it might convince you not to file, or at the very least, to slightly change the relief you request. I am also willing to have a further meet and confer if you think it will clarify the issues any further.

We continue to believe that any relief you request on this issue is unfounded, however -- especially in light of Judge Infante's May 13 order denying your earlier ex parte -- and will vigorously oppose any application you may file.

Matt

**Matthew E. Sloan**
**Skadden, Arps, Slate, Meagher & Flom LLP**

**Los Angeles Office**
*300 South Grand Ave., Suite 3400*
*Los Angeles, CA 90071*
*T: (213) 687-5276 | F: (213) 687-5600*
*Main: (213) 687-5000*
*E: matthew.sloan@skadden.com*

---------------------------------------------------------------------------
************************************************* To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein. **************************************************
************************************************* This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request. **************************************************
===============================================================================

EXHIBIT ___42___
PAGE ___559___

EXHIBIT 43

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3666

WRITER'S INTERNET ADDRESS
dianehutnyan@quinnemanuel.com

May 11, 2008

VIA E-MAIL

Matthew E. Sloan, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue
Suite 3400
Los Angeles, CA 90071

Matthew Werdegar, Esq.
Keker & Van Nest LLP
710 Sansome
San Francisco, CA 94111

Re:   Mattel v. Carter Bryant

Dear Counsel:

After reading Dr. Lyter's new report, it is apparent that it contains substantial new opinions and conclusions unrelated to his previous report. Accordingly, Mattel requires an additional 7 hours of deposition time with Dr. Lyter relating to his second report. I am available to take this deposition on May 14, 15, or 16. Please let me know if Dr. Lyter is available on any of those days. Also, please immediately produce the chromatographs Dr. Lyter generated as a result of the ink testing he performed.

Further , contrary to your "preliminary" conclusion, Dr. Lyter did in fact take microplugs from an unauthorized area of the notary book.  As you can see from the attached picture, Dr. Lyter took micro-plugs from 2 areas of blank paper and 1 area that contained a pre-printed line. This was a new area not previously sampled by Dr. Aginsky or any other Mattel expert, and had nothing to do with replicating Mattel's tests. Please let me know if you will produce the notary book so Mattel's expert can replicate the testing performed by Dr. Lyter.

EXHIBIT 43
PAGE 560

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

Matthew E. Sloan
May 11, 2008

If MGA does not agree to produce Dr. Lyter for deposition and provide Mattel with the chromatographs and access to the Prince notary book for expert testing, Mattel will move *ex parte* before Judge Larson to strike Dr. Lyter's new report because: (1) Dr. Lyter has not properly included the reasons and bases for his opinions; and (2) the portions of the new report relating to handwriting or printing "habits" are untimely, as they should have been included in Dr. Lyter's first report.

In addition, as you are aware, MGA served on May 5th 210 images taken by Dr. Lyter. These images bear the dates April 28, 29, and 30, 2008, all of which were after Dr. Lyter's April 17, 2008 deposition. MGA, in its May 9, 2008 response to the Second Supplemental Declaration of Diane Hutnyan in support of Mattel's Application for Access to Bryant Originals stated that these images were not new scans taken by Dr. Lyter, but were supposedly of "what he found in his initial report." Accordingly, they should have been produced to Mattel prior to his deposition. Please let me know if you will agree to three additional hours of deposition time to question Dr. Lyter about these images. Also, we ask one more time whether you will allow the two weeks' access we have requested to the Bryant originals upon which Lyter's and Kullman's sequencing opinions are supposedly based so that Mattel's experts can examine and image them and produce their supplemental reports, if they have supplemental opinions.

If MGA is unwilling to accommodate Mattel's requests for the additional deposition time and for access to the Bryant originals -- we will move *ex parte* before Judge Larson to strike the portions of Dr. Lyter's and Mr. Kullman's reports relating to the sequencing of the Bryant originals because: (1) the bases for their opinions, namely the Bryant originals documents, have not been meaningfully available to Mattel; and (2) the late production of the 210 images constitutes improper sandbagging.

Thank you for your attention to these matters. If a resolution of these issues cannot be reached, Mattel intends to file its *ex parte* application on Tuesday, May 13, 2008.

Sincerely,




Diane C. Hutnyan

cc:     Daniel Warren, Esq.
        Mark Overland, Esq.

EXHIBIT __43__
PAGE __561__

| | Month/Day/Year/Time of Notarization | Kind or Type of Notarization | Document Date (Month/Day/Year) | Document Kind |
|---|---|---|---|---|
| 1 | 8/26/99 | Acknowledgment | 8/26/99 | Original Sketch doll Jidea – ch G-total= Nano lupie illegible Susan illegible |
| 2 | 9/14/99 | Acknowledgment | 9/14/99 | Power of Att |
| 3 | 9/14/99 | Acknowledgment | 9/10/99 | Letter |
| 4 | | | | |
| 5 | | | | |

EXHIBIT 43
PAGE 562