QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>The Honorable Stephen G. Larson<br><br>**MATTEL, INC.'S *EX PARTE* APPLICATION FOR ORDER THAT THERE IS NO BASIS UNDER THE PROTECTIVE ORDER FOR MATTEL TO RETURN FIVE DOCUMENTS PRODUCED BY MGA; AND**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Declaration of Jon D. Corey filed concurrently herewith]<br><br>Date: TBA<br>Time: TBA<br>Place: Courtroom 1<br><br>**Phase 1:**<br>Pre-Trial Conference: May 19, 2008<br>Trial Date: May 27, 2008 |

07209/2504025.3

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to Local Rules 7-19 and 16-14 and Rules 16 and 26 of the Federal Rules of Civil Procedure, Mattel, Inc. hereby files this *ex parte* Application For Order That There Is No Basis Under The Protective Order For Mattel To Return Five Documents Produced By MGA (the "Application").

Mattel files this Application on the ground that MGA has produced five highly relevant documents that have been used heavily throughout this litigation in depositions and in various motions. On the eve of trial, MGA now seeks the return of these documents under the Protective Order's "clawback" provision, claiming that they are inadvertently produced privileged documents. However, there is no basis for this claim. The documents are not privileged communications or attorney work product. Moreover, even if they were privileged, MGA has waived any claim of privilege due to their lengthy delay in seeking the documents' return.

Mattel did not cause the delay in filing this Application. It has promptly filed this Application in response to April 1, May 7, and May 11 letters from MGA attempting to clawback 21 documents, 5 of which are the subject of this Application.

Defendants will not suffer any prejudice as a result of the Court's determination that "clawback" of these documents is improper because (1) the documents are not privileged; (2) MGA never objected to the use of the documents in discovery and motion-practice; and (3) MGA has had adequate time to prepare to address their contents at trial. Moreover, fairness dictates that MGA not be permitted to withdraw these crucial documents on the eve of trial, after having had notice of their production for many months, because Mattel has relied on MGA's production and use of the documents in discovery in preparing for trial and will be severely prejudiced if it cannot use the documents at trial.

**Statement of Compliance with Local Rule 7-19**

Counsel for Carter Bryant is Matthew M. Werdegar of Keker and Van Nest LLP (telephone: 415-391-5400, Address: 710 Sansome Street, San Francisco, CA 94111-1704).

Counsel for MGA Entertainment Inc., MGA Entertainment (HK) Limited, MGAE de Mexico, S.R.L. de C.V. and Isaac Larian (collectively "MGA") are Thomas Nolan and Carl Roth, Skadden, Arps, Slate, Meagher & Sloan, 300 S Grand Ave, #3400, Los Angeles, CA 90071.

*Ex Parte* Notice. Pursuant to Local Rule 7-19, on May 14, 2008, Carl Roth of Skadden, Arps, Meagher & Flom, LLP, counsel for MGA, was given notice that Mattel would file this *ex parte* application if MGA would not withdraw its request that Mattel return documents bates labeled MGA 0829296-MGA 0829305, MGA 3819497-MGA 3819506, MGA0868630-MGA 0868631, and MGA1134723-MGA1134730 and reproduce MGA 0815789 to Mattel.[1] The parties met and conferred in person on May 15, 2008.[2] Counsel for MGA indicated their intent to deny Mattel's request that it not be required to return MGA 3819497-MGA 3819506, MGA0868630-MGA 0868631, and MGA1134723-MGA1134730, their refusal to reproduce the document bates labeled MGA 0815789 to Mattel, and their intention to oppose this *ex parte* application. About one hour before this Application had to be filed, MGA orally represented that it would not seek return of MGA 0829296-MGA 0829305 (referred to herein as the "Fax"). MGA's last minute change of mind came too late for this Application to be materially revised.

---

[1] See Declaration of Jon D. Corey, dated May 15, 2008 ("Corey Dec."), at ¶ 7; Ex. 6 (May 14, 2008 Letter from J. Corey to C. Roth).

[2] See Supplemental Declaration of Jon D. Corey, dated May 15, 2008 ("Corey Dec. II), at ¶ 2.

1  This Application is based on this Notice of Application, the
2  accompanying Memorandum of Points and Authorities, the Declaration of Jon D.
3  Corey filed concurrently herewith, the records and files of this Court, and all other
4  matters of which the Court may take judicial notice.

DATED: May 15, 2008          QUINN EMANUEL URQUHART OLIVER &
                             HEDGES LLP


                             By  /s/ Jon D. Corey
                                 Jon D. Corey
                                 Attorneys for Mattel, Inc.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

    Documents at Issue ................................................................................................ 2

        1.    The December 7 Fax (MGA 0829296-305; Trial Ex. 11897) ................................................................................................. 2

        2.    Employee List I (MGA0868630-1; Trial and Depo. Ex. 664) ................................................................................................... 3

        3.    Employee List II (MGA1134723-730; Trial and Depo. Ex. 1932) .................................................................................................. 3

        4.    The Payments List (MGA 3819497-506; Trial Ex. 12023) ......... 3

        5.    The Bratz Sales Sheet (MGA 0815789; Depo. Ex. 662) .............. 3

    MGA'S Demand for Return of Documents ........................................................ 4

ARGUMENT ................................................................................................................... 4

I.    MGA IS BELATEDLY SEEKING RETURN OF UNPRIVILEGED DOCUMENTS ......................................................................................................... 4

    A.    The Documents Are Not Privileged ...................................................... 4

        1.    The Discovery Master has already ruled that the December 7 Fax is not privileged. ................................................................. 4

        2.    The identity of employees is not privileged and, in any event, were exhibits to depositions taken months ago ................. 5

        3.    Payments to employees is not privileged information ................. 6

        4.    The Bratz Sales Sheet Is Not Privileged .................................... 7

    B.    MGA Has Known For Many Months That Mattel Had Possession of the Documents But Did Nothing to Obtain Their Return ...................................................................................................... 7

II.    FAIRNESS TO MATTEL DICTATES THAT ANY PRIVILEGE MUST BE WAIVED ................................................................................................ 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aramony*,
  969 F. Supp. at 237 .................................................................................... 10

*Bud Antle, Inc. v. Grow-Tech Inc.*,
  131 F.R.D. 179 (N.D. Cal. 1990) ....................................................... 10, 11

*Georgia-Pacific Corp. v. GAF Roofing Mfg. Corp.*,
  No. 93 Civ. 5125, 1995 WL. 117871 (S.D.N.Y. March 20, 1995) ....................... 10

*In re Grand Jury Investigation of Ocean Transportation*,
  604 F.2d at 675 ........................................................................................ 10

*Hartford Fire Insurance Co. v. Garvey*,
  109 F.R.D. 323 (N.D. Cal. 1985) ............................................................... 9

*de la Jara*,
  973 F.2d at 749-750 ................................................................................... 7

*Lloyds Bank PLC v. Republic of Ecuador*,
  1997 WL. 96591 (S.D.N.Y.,1997) ............................................................ 10

*Transamerica Computer*,
  573 F.2d at 651 .......................................................................................... 7

*U.S. ex rel. Bagley v. TRW, Inc.*,
  204 F.R.D. 170 (C.D. Cal. 2001) ............................................................... 9

**Miscellaneous**

Fed. R. Civ. Proc. 72(a) ..................................................................................... 5

Local Rule 7-19 ................................................................................................. 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

After receiving Mattel's Trial Exhibit List, MGA has demanded that five exhibits be destroyed, claiming they are privileged attorney-client communications that MGA "inadvertently produced." Mattel must seek ex parte relief because MGA's assertions are disproved not only by a prior order of the Discovery Master but also by MGA's months of inaction when it knew Mattel had the documents and was using them at depositions and hearings.

One of MGA's most egregious assertions of privilege pertains to a document that Discovery Master ordered MGA to produce. The Discovery Master explicitly rejected MGA's argument of privilege. It is incomprehensible that MGA would claim that it "inadvertently" produced the document the Discovery Master ordered produced.

MGA could not have been surprised that it had produced the other documents because they were all discussed at, identified at, and/or attached as exhibits to depositions as long as 11 months ago. In addition, one of the documents was also attached to Mattel's Motion for Partial Summary Judgment and discussed by MGA in its Opposition papers. MGA has known for months that it had produced the documents at issue, and yet did nothing until it saw Mattel's Trial Exhibit List. MGA's months of silence and inaction are inconsistent with its 11th hour assertion that it "inadvertently" produced "privileged" documents.

Moreover, the documents are not privileged. The documents contain such commonly produced, non-confidential information as the names of employees, dates of employment, dates of first use of a trademark, amounts of payments to individuals. There is simply nothing privileged about such information, which is no doubt why MGA was content to produce the documents in the first place and to

permit without objection their use at depositions and motions. It is illogical for MGA to now claim the exhibits cannot be trial exhibits.

### Documents at Issue

Although Mattel generally disputes MGA's right to clawback all of the documents at this late date, Mattel focuses this application on the five documents it intends to use at trial, which are described below. Four of the five documents have been lodged with the Court; Mattel does not have a copy of the fifth document, but has seen it and used it at deposition.[3]

1. The December 7 Fax (MGA 0829296-305; Trial Ex. 11897)

The document bates-numbered MGA 0829296-305 consists of a fax from Lucy B. Arant at Russ, August, Kabat and Kent to Paula Garcia (then known as Paula Treantafelles) at MGA, dated December 7, 2000 (the "December 7 December 7 Fax").[4] The first page of the December 7 December 7 Fax (after the cover sheet) includes a written message from Ms. Arant to Ms. Garcia which states that the December 7 December 7 Fax attaches four trademark applications for Isaac Larian's review and signature.[5] The message also states that Garcia had indicated that each of applications had a date of first use of June 15, 2000.[6] The remainder of the December 7 December 7 Fax consists of the trademark applications for "Jade," "Yasmin," Sasha," and "Bratz" in connection with dolls.[7]

---

[3] See Notice of Lodging Documents *In Camera* In Support of Mattel, Inc.'s *Ex Parte* Application For Order That There Is No Basis Under The Protective Order For Mattel To Return Five Documents Produced By MGA, filed concurrently herewith. Mattel does not have a copy of the fifth document because it destroyed all copies in response to MGA's April 1, 2008 clawback letter. Corey Dec., Exs. 1-2, ¶¶ 2-3.
[4] Corey Dec., ¶ 9.
[5] Id.
[6] Id.
[7] Id.

07209/2504025.3

-2-
MATTEL'S *EX PARTE* APPLICATION FOR ORDER RE RETURN OF DOCUMENTS

    2. <u>Employee List I (MGA0868630-1; Trial and Depo. Ex. 664)</u>

Employee List I is a list of former and current MGA employees who previously worked for Mattel that includes the dates of employment with Mattel. It states that Bryant worked at Mattel between May 1995 and April 1998, and January 1999 and October 2000.[8] MGA produced Employee List I on September 7, 2007.[9]

    3. <u>Employee List II (MGA1134723-730; Trial and Depo. Ex. 1932)</u>

Employee List II likewise identifies former Mattel Employees who are current or former MGA employees. It identifies the dates of the person's employment with Mattel and MGA, and MGA position title. Employee List II classifies Bryant as an "MGA TEMP" holding the position of "Product Designer." Respecting Bryant's dates of employment with MGA, the document puts a series of question marks as Bryant's start date. As for Bryant's dates of employment with Mattel, it recommends that the reader not ask what those dates are. MGA produced Employee List II on September 17, 2007.

    4. <u>The Payments List (MGA 3819497-506; Trial Ex. 12023)</u>

This document is a table listing payments made by MGA to MGA employees who previously worked for Mattel. The document shows that MGA made payments to Bryant relating to Bratz expenses between August 31, 2000 and September 29, 2000, while Bryant was still employed by Mattel. MGA produced this document on January 25, 2008.

    5. <u>The Bratz Sales Sheet (MGA 0815789; Depo. Ex. 662)</u>

The Sales Sheet shows Bratz' worldwide sales. It was produced on June 19, 2007 and marked as Deposition Exhibit 662 at the deposition of Lisa Tonnu on September 24, 2007.

---

[8] Corey Dec., ¶ 11.
[9] Corey Dec., ¶ 8.

### MGA'S Demand for Return of Documents

MGA initially produced the documents at issue in this motion. However, in letters to Mattel dated April 1[10], May 7[11] and May 11, 2008[12], MGA claimed that 21 documents had been inadvertently produced and requested that Mattel immediately destroy or return to MGA all copies of the documents, pursuant to the Stipulated Protective Order.[13] In response to MGA's April 1, 2008 letter, Mattel destroyed the document MGA clawed-back and requested a meet and confer regarding the basis for MGA's claim of privilege.[14] Mattel responded to MGA's May 7 and May 11, 2008 letters by meeting and conferring with MGA, in an attempt to avoid the necessity of filing this Application. Mattel has not destroyed copies of the documents referenced in the May 7 and May 11 letters.

### Argument

I. MGA IS BELATEDLY SEEKING RETURN OF UNPRIVILEGED DOCUMENTS

    A. The Documents Are Not Privileged

        1. The Discovery Master has already ruled that the December 7 Fax is not privileged.

More than 4 months ago, the Discovery Master decided that the December 7 Fax was not privileged. MGA had objected to production of the December 7 Fax based on the attorney client privilege. In August 2007, Mattel

---

[10] Corey Dec., Ex. 1 (April 1, 2008 letter from Allen to Corey).
[11] Corey Dec., Ex. 3 (May 7, 2008 letter from Park to Hutnyan); Ex. 4 (May 7, 2008 letter from Etcheverry to Price).
[12] Corey Dec., Ex. 5 (May 11, 2008 letter from Augiar to Alger).
[13] See Corey Dec., Ex. 7 (Protective Order, ¶ 13).
[14] Corey Dec., Ex. 2 (April 23, 2008 letter from Corey to Allen).

moved to compel production. The Discovery Master found the document was not privileged because it was not "a confidential communication for the purpose of rendering legal advice." MGA could not have had a reasonable expectation that the contents of the document -- i.e. the date of first use of the trademarks referenced in the fax -- would be kept confidential because to obtain a full trademark registration, an applicant must disclose the "dates of first use" to the PTO.[15] In its December 17, 2007 Order, the Discovery Master ordered that MGA produce these documents to Mattel, and MGA did so on January 3, 2008.[16] Notably, MGA did <u>not</u> challenge this order, even though it could have done so under <u>Fed. R. Civ. Proc.</u> 72(a) if MGA believed the ruling was "clearly erroneous or [] contrary to law."

The Discovery Master's ruling was not erroneous. Factual information that is communicated to an attorney for the purpose of including that information in a public document or assisting in the preparation of that document -- such as a trademark application -- is not privileged. Accordingly, providing a lawyer the date of first use of the marks was not a confidential communication made for the purpose of seeking legal advice, and was not privileged. MGA's "clawingback" the December 7 Fax flouts the Discovery Master's order.

Moreover, the "clawback provision" is not applicable at all to documents the court ordered produced. The provision only applies to inadvertently produced documents. Obedience to an order to produce is not inadvertence. The provision cannot be used to overrule a court order.

> 2. <u>The identity of employees is not privileged and, in any event, were exhibits to depositions taken months ago</u>

The two employee lists at issue -- Employee List I and II -- do not contain any confidential information. They identify employees and dates of

---

[15] Corey Dec., Ex. 22 (Discovery Master's December 17, 2007 Order).
[16] <u>Id.</u>; Corey Dec., ¶ 8.

employment. A party cannot conceal such information by asserting "privilege." Employee List I was prepared by Jenna Ramsey, a member of MGA's human resources department.[17] She identified the names of current and former MGA employees[18] who previously had worked for Mattel, along with the dates of their employment with Mattel. Employee List II adds the dates of employment with MGA and the title their positions with MGA.

This information is so plainly not privileged that both documents were made exhibits to depositions without objection. On September 27, 2007, during the deposition of Lisa Tonnu, Employee List I was identified as Exhibit 664. If MGA sincerely believed an employee list were privileged -- and had been inadvertently produced -- MGA would have clawed it back then. They did not. Nor did they attempt to claw it back when it was used at the deposition of Schuyler Bacon on September 27, 2007, or Samir Khare on January 23, 2008.

The same is true of Employee List II. On January 28, 2008, during the deposition of Nick Contreras, Employee List II was identified as Exhibit 1932. Again, MGA made no effort to claw the employee list back. MGA's inaction, with knowledge that Mattel possessed the document, proves that MGA did not believe the documents privileged, and its recent demand for return is a transparent effort to bury evidence.

   3. <u>Payments to employees is not privileged information</u>

The Payment List appears to list payments by MGA to individuals while they were still employed by Mattel. The Payment List identifies the

---

[17] See Corey Dec., Ex. 15 (Tonnu Depo., September 25, 2008, at 513-514, 515:2-516:25).

[18] The Employee Lists also identify current and former MGA independent contractors, freelancers, temporary and non-active employees.

individuals to whom payments were made, the amount of the payment, date of payment and generally the file that is the source for the information.[19]

### 4. The Bratz Sales Sheet Is Not Privileged

The Bratz Sales Sheet was marked as an Exhibit at the deposition of Lisa Tonnu, an MGA Rule 30(b)(6) designee, on September 24, 2007.[20] It is a spreadsheet consisting of Bratz sales amounts that are inconsistent with the amounts that Ms. Tonnu testified were the highest total amounts of Bratz sales.[21] This was also the subject of a separate Rule 30(b)(6) topic to MGA that was discussed with counsel for MGA at the resumption of Ms. Tonnu's deposition on January 17, 2008, when counsel for Mattel provided to counsel for MGA, Carl Roth, at his request, a copy of the Bratz Sales Sheet. Mr. Roth never suggested that the documents was privileged, but MGA agreed to provide a witness to testify on Topic No. 102 relating to that document.[22]

### B. MGA Has Known For Many Months That Mattel Had Possession of the Documents But Did Nothing to Obtain Their Return

The documents at issue were produced by MGA at least 5 months ago, and some of them 11 months ago.[23] Subsequently all the documents were used in depositions -- as long as seven months ago. The December 7 Fax[24], Employee List

---

[19] Corey Dec., Ex. 14 (Tonnu Depo., September 24, 2007, at 257:19-259:3, 299:6-300:6); Ex. 16 (Tonnu Depo., January 17, 2008, at 754:16-755:21).
[20] Corey Dec., Ex. 14 (Tonnu Depo., September 24, 2007 at 448:6-456:23).
[21] Id.
[22] Supp. Corey Dec. ¶ 3.
[23] Corey Dec., ¶ 8.
[24] MGA did not lose any claim to privilege for the December 7 Fax (MGA 0829296-305) when it produced the document to Mattel because it was ordered to (footnote continued)

1  I, and Sales Sheet were exhibits to depositions in September 2007.[25] The Sales
2  Sheet was marked as Exhibit 662 at the deposition of Lisa Tonnu on September 24,
3  2007.[26] It was discussed for 8 pages during the deposition.

4        Employee List I was discussed at length during 3 depositions, without a
5  single privilege or work product objection. It was marked as Exhibit 664 at the
6  deposition of Lisa Tonnu on September 25, 2007, and its contents were discussed
7  for 11 pages.[27] It was also discussed for 9 pages at the deposition of Schuyler Bacon
8  on September 27, 2007,[28] and for 19 pages at the deposition of Samir Khare depo on
9  January 23, 2008.[29]

---

produce the document. See Transamerica Computer, 573 F.2d at 651 ("a party does not waive the attorney-client privilege for documents which he is compelled to produce"). Rather, MGA's waiver occurred when it failed to pursue the timely return of the December 7 Fax by moving for this Court to overrule the Discovery Master's December 17, 2007 order finding the document not privileged and mandating its production. See de la Jara, 973 F.2d at 749-750 (although privilege is not lost through the government's discovery of letter through search warrants, privilege was waived because defendant did nothing to recover the letter or protect its confidentiality during the six month interlude between its seizure and introduction into evidence). Because it failed to appeal the Discovery Master's order, MGA has waived any objection to the production of the December 7 Fax and has no right to claw it back.

[25] Employee List I was marked as Exhibit 664 at the deposition of Lisa Tonnu on September 25, 2007. Corey Dec., Ex. 15 (Tonnu Depo., September 25, 2008, at 513:14-524:22). It was also used at the deposition of Schuyler Bacon on September 27, 2007 (Corey Dec., Ex. 17 (Bacon Depo., at 111:18-120:25)), and the deposition of Samir Khare on January 23, 2008. Corey Dec., Ex. 18 (Khare Depo., at 461:8-480:2). The document was identified as Trial Exhibit 664 on Mattel's April 1, 2008 Disclosure of Trial Exhibits. Corey Dec., Ex. 30.
[26] Corey Dec., Ex. 14 (Tonnu Depo., September 24, 2007, at 448:6-456:23).
[27] Corey Dec., Ex. 15 (Tonnu Depo., September 25, 2007, at 513:14-524:22).
[28] Corey Dec., Ex. 17 (Bacon Depo., at 111:18-120:25).
[29] Corey Dec., Ex. 18 (Khare Depo., January 23, 2008, at 461:8-480:2).

Employee List II was marked as Exhibit 1932 at the deposition of Nick Contreras on January 28, 2008, and discussed for 22 pages.[30]  In addition, Employee List II was also filed in Support of Mattel's Motion for Partial Summary Judgment.[31]  It was described and cited in Mattel's Separate Statement of Uncontested Facts and Conclusions of Law in Support of Mattel's Motion for Partial Summary Judgment, dated March 7, 2008.[32]  MGA specifically addressed the document's contents and meaning -- without any reference to privilege -- in its Opposition to that Separate Statement, filed on March 24, 2008.[33]  That Employee List was also filed in support of Mattel's Opposition MGA's motion for a protective order regarding the deposition of Lucy Arant on March 27, 2008.[34]

MGA's assertion that the documents at issue were "inadvertently" produced is belied by the long lapse of time between production and the recent demand for return.  One of the factors courts consider is whether the party asserting inadvertence acts promptly to remedy to the disclosure. <u>Hartford Fire Insurance Co. v. Garvey</u>, 109 F.R.D. 323, 332 (N.D. Cal. 1985) (court considers "the time taken to rectify the error"); <u>U.S. ex rel. Bagley v. TRW, Inc.</u>, 204 F.R.D. 170, 179 (C.D. Cal. 2001) (court considers "the promptness of measures taken to rectify the disclosure")

---

[30] Corey Dec., Ex. 19 (Contreras Depo., at 216:14-238:7).
[31] That Employee List was also attached to the Declaration of Dylan Proctor in Support of Mattel's Motion for Partial Summary Judgment.  Corey Dec., Ex. 28.
[32] Corey Dec., Ex. 23 (Mattel's Separate Statement of Uncontested Facts).  Mattel's Motion cited to Uncontested Fact No. 107.  <u>See</u> Corey Dec., Ex. 29 (Mattel's Motion for Partial Summary Judgment).  Uncontested Fact No. 107 described and cited the Employee List, which was attached as Ex. 112 to the Proctor Dec. filed in support of the motion.  Corey Dec., Ex. 28 (Proctor Dec.).
[33] Corey Dec., Ex. 24 (MGA's Opposition to Mattel's Separate Statement of Uncontested Facts).
[34] Corey Dec., Ex. 34 (Mattel's Opposition to the MGA Defendants' Motion for Protective Order from Mattel's Notice of Deposition of Lucy Arant).  The Discovery Master's order denying the motion described the document in detail.  Corey Dec., Ex. 35 (Discovery Master's April 30, 2008 Order, at 3).

(quoting 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 503.42[4] (2d ed. 2000)). "[A] request for the return of the privileged material within twenty-four hours of learning of the inadvertent production weighs against a loss of privilege." Aramony, 969 F.Supp. at 237; *see also* Lloyds Bank PLC v. Republic of Ecuador, 1997 WL 96591, 5 (S.D.N.Y.,1997) (within fifteen to twenty minutes after discovering the error counsel for the party asserting the privilege contacted the opposing party, immediately asserting the privilege and requesting the return of the documents at issue); Georgia-Pacific Corp. v. GAF Roofing Mfg. Corp., No. 93 Civ. 5125, 1995 WL 117871, at *2 (S.D.N.Y. March 20, 1995) (producing party's response within two business days of learning of inadvertent production did not constitute a waiver).

However, a delay of weeks or months after production of the document -- even where steps were taken immediately upon discovery of the error -- has been found to be too long. See Bud Antle, Inc. v. Grow-Tech Inc., 131 F.R.D. 179, 182 - 183 (N.D. Cal. 1990) (denying plaintiff's motion for return of an allegedly privileged letter which was inadvertently delivered to defendants during production of numerous documents where plaintiff did not discover the inadvertent production and attempt to recover the document until six weeks after production; by that time, "the letter had been thoroughly analyzed by defendants' attorney, and the client had been informed of its contents"); In re Grand Jury Investigation of Ocean Transportation, 604 F.2d at 675 (Where documents were turned over one year prior to the assertion of privilege, and they had already been copied, digested, and analyzed by the time of the motion, the court found that "the disclosure cannot be cured simply by a return of the documents. The privilege has been permanently destroyed").

MGA simply has not acted promptly. They had actual knowledge that the documents at issue had been produced. They were the subjects of examination at deposition. MGA knew they been produced, but did nothing about it. It is too

1  late now, when the documents are on a party's trial exhibit list, to assert that they
2  documents were "inadvertently" produced.  A party must act diligently if it wants
3  the court to bail it out -- assuming the documents were inadvertently produced,
4  which they were not.

## II. FAIRNESS TO MATTEL DICTATES THAT ANY PRIVILEGE MUST BE WAIVED

Fairness dictates that any privilege must be waived. The documents were "thoroughly disclosed" to Mattel at a time when neither Mattel nor MGA "was under no awareness that at some future date the document would be declared privileged." Bud Antle, Inc., 131 F.R.D. 179, 182-183.  Mattel has analyzed the documents and has "indicated a strong reliance on it for purposes of their" claims in this lawsuit.  Id.  "Under the circumstances, the bell has already been rung, and the court cannot now unring it by denying [Mattel] access to the [documents]."  Id. Accordingly, regardless of whether MGA's production of the documents was inadvertent, the elements discussed above in the name of fairness demand that Mattel's Application be granted.

## Conclusion

These documents contain evidence that directly contradicts the testimony of key defense witnesses in this case about when Bryant first became involved with MGA and when MGA first became involved in Bratz.  These documents are not privileged just because they are detrimental to MGA's case.  The Court should find that MGA's belated assertions of privilege are without merit.

1       For the foregoing reasons, Mattel requests that the Court grant this Application in its entirety, ordering that there is no grounds for requiring the return of documents bates labeled MGA 0829296-MGA 0829305, MGA 3819497-MGA 3819506, MGA0868630-MGA 0868631, and MGA1134723-MGA1134730, and ordering MGA to re-produce MGA 0815789 to Mattel forthwith.

DATED: May 15, 2008       QUINN EMANUEL URQUHART OLIVER & HEDGES LLP

By  /s/ Jon D. Corey
    Jon D. Corey
    Attorneys for Mattel, Inc.