# EXHIBIT 33

RECEIVED

APR 0 7 2008
BRL  5:45PM

1 | THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
2 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
3 | Los Angeles, CA 90071-3144
Tel.: (213) 687-5000/Fax: (213) 687-5600
4
RAOUL D. KENNEDY (Bar No. 40892)
5 | (rkennedy@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 | 4 Embarcadero Center, 38th Floor
San Francisco, CA 94111-5974
7 | Tel.: (415) 984-6400 / Fax: (415) 984-2698

8 | Attorneys for Counter-Defendants
MGA ENTERTAINMENT, INC., MGA ENTERTAINMENT (HK) LIMITED,
9 | MGAE DE MEXICO, S.R.L. DE C.V., AND ISAAC LARIAN

10

11 |                    UNITED STATES DISTRICT COURT

12 |                    CENTRAL DISTRICT OF CALIFORNIA

| CARTER BRYANT, an individual, | ) | CASE NO. CV 04-9049 SGL (RNBx) |
| :--- | :--- | :--- |
| 13     Plaintiff, | ) | |
| 14 | ) | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| 15          v. | ) | |
| | ) | **DISCOVERY MATTER** |
| 16 MATTEL, INC., a Delaware corporation, | ) | **[To be heard by Discovery Master Hon. Edward A. Infante (Ret.)]** |
| 17             Defendant. | ) | **REPLY IN SUPPORT OF MGA'S MOTION FOR PROTECTIVE ORDER FROM MATTEL INC.'S NOTICE OF DEPOSITION OF LUCY ARANT** |
| 18 | ) | |
| 19 | ) | |
| 20 | ) | Date:  TBD |
| 21 AND CONSOLIDATED ACTIONS | ) | Time:  TBD Place: JAMS |
| 22 | ) | |
| 23 | ) | **Phase 1** Discovery Cut-off: January 28, 2008 |
| 24 | ) | Pre-Trial Conference: May 5, 2008 Trial Date: May 27, 2008 |

25

26

27
                            04-07-08
28
REPLY IN SUPPORT OF MGA'S MOTION FOR PROTECTIVE ORDER FROM MATTEL INC.'S NOTICE OF
DEPOSITION OF LUCY ARANT
Case No. CV 04-9049 SGL (RNBx)

EXHIBIT 33

PAGE 392

## **TABLE OF CONTENTS**

Page

I.  PRELIMINARY STATEMENT ........................................................... 1

II.  ARGUMENT ..................................................................................... 2

    A.  Good Cause Exists To Issue A Protective Order Preventing
        Mattel From Deposing MGA's Counsel. .................................... 2

    B.  Mattel's Opposition Confirms That It Has Obtained
        Extensive Discovery Regarding The Subjects On Which It
        Seeks To Depose Ms. Arant, Thus Making A Protective
        Order Appropriate. ...................................................................... 4

    C.  At a Minimum, the Discovery Master Should Issue A
        Protective Order Limiting Ms. Arant's Deposition. ................... 9

III.  CONCLUSION ................................................................................. 10

EXHIBIT 33

PAGE 393

1

# TABLE OF AUTHORITIES

2
Page

3
**Cases**

4   *3M Co. v. Kanbar,*
5       No. 06-01225 JW (HRL), 2007 WL 1794936
        (N.D. Cal. June 19, 2007)........................................................................ 2

6   *Archer Daniels Midland Co. v. Aon Risk Services, Inc.,*
7       NO. 97-2185 JRT/RLE, 2001 WL 1640112 (D. Minn. July 19, 2001) ................... 9

8   *Klayman v. Freedom's Watch, Inc.,*
        No. 07-22433-CIV, 2007 WL 4414803 (S.D. Fla. Dec. 14, 2007)......................... 3

9   *Marco Island Partners v. Oak Development Corp.,*
10      117 F.R.D. 418 (N.D. Ill. 1987) ................................................................ 3

11  *N.F.A Corp. v. Riverview Narrow Fabrics, Inc.,*
        117 F.R.D. 83 (M.D. N.C. 1987) ........................................................2, 4, 8

12  *Stalling v. Union Pacific Railroad Co.,*
13      No.01 C 1056, 2004 WL 783056 (N.D. Ill. Jan. 23, 2004)..................................... 3

14  *Trunk v. City of San Diego,*
        No 06CV1597 LAB (WMc), 2007 WL 2701356 (S.D. Cal. Sept. 13, 2007).......... 3

15  *Walker v. United Parcel Services,*
16      87 F.R.D. 360 (E.D. Pa. 1980) ............................................................... 4, 5

17  **Rules**

18  Fed. R. Civ. P. 26 ................................................................................ 2, 3

19

20

21

22

23

24

25

26

27

28

EXHIBIT 33

PAGE 394

## REPLY MEMORANDUM

### I.   PRELIMINARY STATEMENT

MGA's Motion for Protective Order established that Mattel should not be permitted to depose MGA's attorney, Lucy Arant, because Mattel already has taken depositions from numerous witnesses regarding the same subjects on which it seeks to depose Ms. Arant. Ms. Arant's deposition would, therefore, be cumulative and create a substantial risk that Mattel will seek to intrude on communications protected by the attorney-client privilege and work-product doctrine, thereby creating additional disputes that would need to be decided by the Discovery Master. Given the extensive discovery Mattel already has obtained regarding the creation of Bratz and regarding MGA's copyright and trademark applications, there is no justification for taking Ms. Arant's deposition.

In response, Mattel concedes that it already has taken numerous depositions regarding the creation of Bratz and MGA's copyright and trademark applications, including depositions of Paula Garcia, Bryan Armstrong, Samir Khare, Kerri Brode, and Nana Ashong. Mattel also concedes that it has obtained extensive document discovery regarding the creation of Bratz. Mattel, nonetheless, asserts that it should be permitted to take Ms. Arant's deposition because: (i) she sent a fax to Paula Garcia in which she asks Ms. Garcia to confirm the "first use" date of certain Bratz-related trademark applications (a date also reflected in an internal docket sheet at Ms. Arant's law firm); and (ii) she filed MGA's copyright applications for certain Bratz works showing a creation date in 2000.

Neither action provides a basis for Mattel to take Ms. Arant's deposition. It is undisputed that Ms. Arant had no involvement in the creation of Bratz or the "first use" of any Bratz trademark in commerce. She was MGA's attorney; she provided legal advice to the company regarding how to protect its intellectual property rights and she assisted in filing trademark and copyright applications based on information

EXHIBIT 33

PAGE 395

1  provided by the company.  Mattel already has deposed the percipient fact witnesses

2  who actually were involved in the creation of Bratz and in the preparation of MGA's

3  copyright and trademark applications.  As MGA's lawyer, Ms. Arant's knowledge

4  came from these (or other) fact witnesses, and her testimony on these issues would

5  be cumulative.

6      Accordingly, MGA respectfully requests that the Discovery Master grant this

7  Motion and issue a protective order preventing the deposition of Ms. Arant.

8  Alternatively, MGA respectfully requests that the Court limit the deposition of Ms.

9  Arant by requiring that it be taken by written interrogatories.

10 **II.**   **ARGUMENT**

11     **A.**   **Good Cause Exists To Issue A Protective Order Preventing Mattel From Deposing MGA's Counsel.**

12

13     The Discovery Master should reject Mattel's bald assertion that MGA failed to

14 show good cause for a protective order.[1]  "Because deposition of a party's attorney is

15 usually both burdensome and disruptive, the mere request to depose a party's

16 attorney constitutes good cause for obtaining a Rule 26(c), Fed. R. Civ. P., protective

17 order unless the party seeking the deposition can show both the propriety and need

18 for the deposition." *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83,

19 85 (M.D.N.C. 1987) (issuing protective order preventing deposition of plaintiff's

20 patent attorney).

21     Based on this standard, numerous courts have issued protective orders under

22 Rule 26(c) or otherwise prohibited attorney depositions as cumulative or improper.

23 [1]   Mattel's assertion that MGA's Motion "fails to even cite the relevant Rule"

24 (Mattel, Inc.'s Opposition To MGA Defendants' Motion For Protective Order From Mattel, Inc.'s Notice of Deposition of Lucy Arant ("Mattel Opp.") at 1:27-28), is

25 inexplicable.  Counsel apparently failed to review pages 2-3 of MGA's Motion,

26 which quote extensively from Rule 26 and demonstrate that good cause exists to enter a protective order.

27

28 REPLY IN SUPPORT OF MGA'S MOTION FOR PROTECTIVE ORDER FROM MATTEL INC.'S NOTICE OF DEPOSITION OF LUCY ARANT
Case No. CV 04-9049 SGL (RNBx)
-2-

EXHIBIT _33_

PAGE _396_

1   *See Stalling v. Union Pac. R. Co.*, No. 01 C 1056, 2004 WL 783056, at \*\*2-3 (N.D.

2   Ill. Jan. 23. 2004) (prohibiting deposition of in-house counsel as cumulative where

3   attorney's knowledge of facts came from others who were or had been subject to

4   deposition); *see also Klayman v. Freedom's Watch, Inc.*, No. 07-22433-CIV, 2007

5   WL 4414803, at \*4 (S.D. Fla. Dec. 14, 2007) (granting motion for protective order

6   because any non-privileged information the attorneys had on the topics was

7   cumulative of the information already obtained by plaintiffs through depositions and

8   document production); *Trunk v. City of San Diego*, No 06 CV 1597 LAB (WMc),

9   2007 WL 2701356, at \*7 (S.D. Cal. Sept. 13, 2007) (granting motion to quash and

10  protective order to non-party attorney where the non-privileged information that

11  could be obtained from the attorney would be duplicative and cumulative); *Marco

12  Island Partners v. Oak Dev. Corp.*, 117 F.R.D. 418, 419-20 (N.D. Ill. 1987) (holding

13  that deposition of attorney would be duplicative where other witnesses to the

14  negotiations already were scheduled to be deposed and deposition would create

15  additional delays to resolve work-product and attorney-client objections); *Walker v.

16  United Parcel Services*, 87 F.R.D. 360, 361-62 (E.D. Pa. 1980) (forbidding the

17  deposition of an attorney that would be largely duplicative, lead to unnecessary

18  delays as a result of privilege and work-product claims, and be oppressive to the

19  party and to the person whose deposition is sought). The Discovery Master should

20  do the same here.[2]

21

22

23  [2]      Mattel's assertions that Judge Larson "found that Mattel had good cause to

24  take the deposition of Lucy Arant" and "necessarily rejected the argument that Ms. Arant's deposition was duplicative of other discovery" are false. Mattel Opp. at 2.

25  Indeed, the Court expressly ruled that the parties could "seek any appropriate

26  protective order from the Discovery Master" regarding Ms. Arant's deposition. Herrington Decl., Ex. 5 at 2.

27

EXHIBIT **33**

PAGE **397**

**B.    Mattel's Opposition Confirms That It Has Obtained Extensive Discovery Regarding The Subjects On Which It Seeks To Depose Ms. Arant, Thus Making A Protective Order Appropriate.**

Mattel's Opposition fails to distinguish or even address these authorities – a failure that is not surprising given that they are directly on point. For example, in *N.F.A. Corp.*, the defendant sought to depose plaintiff's patent attorney regarding statements he had made to the U.S. Patent and Trademark Office when prosecuting the patent at issue in the lawsuit. 117 F.R.D. at 84. The court explained that, although an attorney deposition is not absolutely prohibited, "[m]ore often deposition of the attorney merely embroils the parties and the court in controversies over the attorney-client privilege…." *Id.* at 85. The court thus required the defendant to show that "the deposition is the only practical means available of obtaining the information," that "the information sought will not invade the attorney-client privilege or the attorney's work product," and that "the information must be relevant and the need for it outweighed by the disadvantages inherent in deposing a party's attorney." *Id.* at 86. Concluding that the defendant had other sources from which it could obtain information regarding the positions taken during the prosecution of the patents at issue, the court granted a protective order preventing the deposition of the patent attorney. *Id.*

The same basic analysis applies in this case. As with the patent attorney in *N.F.A. Corp.*, Mattel seeks to depose Ms. Arant regarding information relating to certain copyright and trademark applications she filed for MGA. Mattel, however, already deposed MGA's Rule 30(b)(6) witness, Mr. Khare, regarding these applications, as well as Bryan Armstrong, the MGA employee who was responsible for filling out copyright applications.[3] Mattel also has deposed Ms. Brode and Ms.

[3]    Herrington Decl., Ex. 6: Samir Khare Deposition Transcript (Vol. I) at 43:22-50:5, 210:8-223:4, 286:5-287:5; Supplemental Declaration of Robert Herrington In *(cont'd)*

EXHIBIT 33

PAGE 398

1  Ashong regarding MGA's trademark applications.[4]  Under *N.F.A. Corp.* and the

2  other authorities cited above, the Discovery Master should issue a protective order

3  preventing Mattel from deposing MGA's lawyer, Ms. Arant.

4        Mattel asserts that Ms. Arant's deposition is warranted because Mr. Khare

5  supposedly could not explain the basis for certain publication dates in MGA's

6  copyright applications.[5]  But that is not correct.  Mr. Khare testified that he

7  conducted an investigation regarding the basis for the February 2001 publication date

8  and concluded that the date reflected an early version of Bratz dolls exhibited at the

9  New York Toy Fair in February 2001:

10        Q.    DID YOU UNDERTAKE ANY INVESTIGATION TO

11  DETERMINE THAT IN CONNECTION WITH YOUR DEPOSITION?

12        A.    I DID.

13        Q.    WHAT DID YOU DO?

14        A.    I TRIED TO FIGURE OUT WHAT THAT DATE

15  WAS AND WHY IT'S THERE.  THE ONLY -- THE ONLY

16  INFORMATION I COULD COME UP WITH WAS THAT THAT IS A

17  TOY FAIR DATE WHEN -- I BELIEVE IT'S THE NEW YORK

18  TOY FAIR OCCURRED DURING THAT TIME PERIOD.  AND

19

20  *(cont'd from previous page)*

    Support of MGA's Motion For Protective Order From Mattel, Inc.'s Notice Of

21  Deposition of Lucy Arant ("Supp. Herrington Decl."), Ex. 1:  Samir Khare

    Deposition Transcript (Vol. II) at 634:18-703:15; Supp. Herrington Decl., Ex. 2:

22  Bryan Armstrong Deposition Transcript (Vol. I) at 19:13-20, 20:18-23, 28:3-9,

23  266:15-275:14, 276:7-278:20; Supp. Herrington Decl., Ex. 3: Bryan Armstrong

    Deposition Transcript (Vol. II) at 323:23-328:16, 358:24-361:6.

24  [4]    Herrington Decl., Ex. 8: Nana Ashong Deposition Transcript at 14:10-17:17,

25  21:13-25:1, 196:8-197:10, 204:5-205; Herrington Decl., Ex. 7: Kerri Brode

26  Deposition Transcript (Vol. II) at 79-84.

    [5]    Mattel Opp. at 13.

27

28  REPLY IN SUPPORT OF MGA'S MOTION FOR PROTECTIVE ORDER FROM MATTEL INC.'S NOTICE OF
    DEPOSITION OF LUCY ARANT
    Case No. CV 04-9049 SGL (RNBx)
    -5-

EXHIBIT 33

PAGE 399

1    THAT'S THE ONLY REASON THAT I COULD FIND WHY THAT

2    DATE WOULD APPEAR, BUT I KNOW THAT THAT DATE'S NOT

3    CORRECT.[6]

4        As Mr. Khare also explained, the February 2001 publication date was later

5    corrected to reflect that the final sculpt for the Bratz dolls was not completed until

6    May 2001:

7        DIRECTING YOUR ATTENTION TO

8        EXHIBIT 558, WHICH IS THE FORM CA.  ON THE SECOND

9        PAGE YOU'LL SEE THAT THE "YEAR OF PUBLICATION" FOR

10       THE JADE DOLL CONFIGURATION, ACCESSORIES, AND

11       PACKAGING REGISTRATION CHANGED FROM "FEBRUARY 12,

12       2001" TO, "AT LEAST AS EARLY AS MAY 21, 2001."

13           (WITNESS EXAMINED A DOCUMENT.)

14        THE DEPONENT:  I SEE THAT.

15       BY MR. ZELLER:

16        Q.    WHAT WAS THE BASIS FOR CHANGING THE

17       YEAR OF PUBLICATION THERE?

18        A.    AS I INDICATED EARLIER, THERE WERE

19       CERTAIN ASPECTS OF THE ACTUAL DOLL SCULPT THAT

20       WEREN'T SETTLED ON UNTIL THE END OF APRIL 2001; SO

21       FACTUALLY THAT DATE IS IMPOSSIBLE, AND HOW THAT DATE

22       GOT THERE, I DON'T KNOW.  I CAN TELL YOU THAT AT THE

23       TIME THE ORIGINAL FORM VA WAS SUBMITTED, THE COMPANY

24       HAD BETTER INFORMATION AVAILABLE TO IT.

25

26  [6]    Supp. Herrington Decl., Ex. 4: Samir Khare Deposition Transcript (Vol. I) at
    255:15-256:1.
27

28   REPLY IN SUPPORT OF MGA'S MOTION FOR PROTECTIVE ORDER FROM MATTEL INC.'S NOTICE OF
                          DEPOSITION OF LUCY ARANT
                       Case No. CV 04-9049 SGL (RNBx)
                                  -6-

                                                    EXHIBIT 33

                                                    PAGE 400

1     Q.    DO YOU KNOW WHAT THAT INFORMATION IS?

2     A.    YES.

3     Q.    WHAT'S THAT?

4     A.    SPECIFICALLY, THAT THE COMPANY WASN'T

5  SATISFIED WITH THE SCULPT ITSELF; SO IF THE COMPANY

6  WASN'T SATISFIED WITH THE SCULPT AS OF FEBRUARY 12,

7  2001, IT'S IMPOSSIBLE TO HAVE PUBLISHED THE FINAL

8  SCULPT. IT SIMPLY DIDN'T EXIST AT THAT TIME.

9     Q.    AS OF FEBRUARY 12, 2001?

10    A.    CORRECT.[7]

11 Thus, contrary to the unsupported assertions in its Opposition, Mattel is aware of the

12 basis for the February 2001 publication date and the reasons the date was later

13 corrected.

14      Mattel also complains that Ms. Brode supposedly did not know about the

15 creation dates in certain MGA copyright applications. But in making this assertion,

16 Mattel misleadingly references testimony regarding an *email* mentioning a

17 September 18, 2000 "creation date" for Bratz.[8] The email on which Ms. Brode was

18 questioned was written by Nana Ashong, <u>who Mattel admits it has deposed</u>. There is

19 no reason to believe Ms. Arant has any information regarding this email, and having

20 already deposed the author of the email discussing the creation dates of Bratz, there

21 is no basis for Mattel also to depose MGA's attorney.

22      Finally, Mattel asserts that it needs to depose Ms. Arant because of a fax she

23 sent to Paula Garcia and an internal docket sheet kept at Ms. Arant's firm, both of

24 which reference a June 15, 2000 "first use" date for certain Bratz-related trademarks.

25

26  [7]  *Id.* at 349:25-351:2.

27  [8]  Mattel Opp. at 13:24.

EXHIBIT 33

PAGE 401

1    Although MGA recognizes that the Discovery Master has concluded that the fax to

2    Ms. Garcia and the docket sheet are not privileged, Mattel should not be permitted to

3    bootstrap that ruling into a basis for taking Ms. Arant's deposition.  Indeed, Mattel

4    already has deposed Ms. Garcia regarding these issues, including the information in

5    the fax and docket sheet, and Ms. Garcia confirmed that she did not tell Ms. Arant or

6    anyone else that the trademarks had a first use date of June 15, 2000.[9]  Mattel had

7    ample opportunity to test Ms. Garcia's testimony at deposition and through the

8    receipt of thousands upon thousands of pages of documents establishing the timeline

9    for the creation of Bratz.  Those documents all show the same thing – that Bratz was

10   not completed until May 2001, and was not released to the public until later.  The

11   June 15, 2000 date is, put simply, a mistake.

12          With just over a month before trial, the Discovery Master should not allow

13   Mattel to use that mistake as an excuse for seeking to depose Ms. Arant, and thereby

14   embroil the parties in further disputes regarding privilege issues.  *See Walker*, 87

15   F.R.D. at 362 ("[I]f the deposition were to proceed, rulings would occasion

16   significant further delays.  Further controversies . . . would inevitably require further

17   imposition on the resources of the Court and provide the potential for undue delay.");

18   *see also N.F.A Corp.*, 117 F.R.D. at 86 (granting protective order because defendant

19   failed to show that the "inquiries [on opposing counsel would] not likely invade

20   either work-product or attorney-client privileges").  Ms. Arant was not the source of

21   the information in the fax and docket sheet, and having already deposed Ms. Garcia

22   on these issues, there is no basis for also deposing MGA's lawyer.  Moreover, if the

23   Discovery Master permits Ms. Arant's deposition, her deposition will consist mainly

24

25   [9]     Declaration of Jon Corey In Support Of Mattel, Inc.'s Opposition To The

26   MGA Defendants' Motion For Protective Order From Mattel, Inc.'s Notice of

27   Deposition of Lucy Arant., Ex. 13.

28   REPLY IN SUPPORT OF MGA'S MOTION FOR PROTECTIVE ORDER FROM MATTEL INC.'S NOTICE OF
     DEPOSITION OF LUCY ARANT
     Case No. CV 04-9049 SGL (RNBx)
     -8-

EXHIBIT 33

PAGE 402

1  of privilege objections that may need to be resolved by the Discovery Master,

2  creating further pre-trial delays and unnecessary litigation costs.  Given the extensive

3  information Mattel already has regarding the creation of Bratz and the copyright and

4  trademark applications filed for Bratz, any deposition of Ms. Arant would be

5  cumulative, wasteful, and unnecessary.  *See Archer Daniels Midland Co. v. Aon Risk*

6  *Servs., Inc.*, No. 97-2185 JRT/RLE, 2001 WL 1640112, at *7 (D. Minn. July 19,

7  2001) (prohibiting deposition regarding hedging operations as cumulative, stating

8  "There is already a voluminous amount of documents and testimony relating to

9  ADM's hedging operations, including the deposition of Kenneth Robinson, an ADM

10  employee who worked with Andreas and is intimately familiar with ADM's hedging

11  operations.").

12      **C.**    **At a Minimum, the Discovery Master Should Issue A Protective Order Limiting Ms. Arant's Deposition.**

13      If the Discovery Master is inclined to permit a deposition of Ms. Arant, MGA

14  respectfully requests that the Discovery Master place limitations on the deposition to

15  reduce the potential for abuse and further disputes between the parties.  *See N.F.A.*

16  *Corp.*, 117 F.R.D. at 86 ("other methods, such as written interrogatories which do

17  not involve the same dangers as an oral deposition, should be employed.").  The

18  Discovery Master should require Ms. Arant's deposition to be taken by written

19  interrogatories.

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28      REPLY IN SUPPORT OF MGA'S MOTION FOR PROTECTIVE ORDER FROM MATTEL INC.'S NOTICE OF DEPOSITION OF LUCY ARANT

Case No. CV 04-9049 SGL (RNBx)

-9-

EXHIBIT 33

PAGE 463

1 | **III.**  **CONCLUSION**

2 |     For the foregoing reasons, MGA respectfully requests that this Court grant a

3 | protective order prohibiting Mattel from taking the deposition of attorney Lucy Arant,

4 | or at a minimum requiring the deposition to be taken by written interrogatories.

5 | DATED: April 7, 2008

6 |                         Respectfully submitted,

7 |                         SKADDEN, ARPS, SLATE, MEAGHER &
      FLOM, LLP
8 |

9 |                         By:  _Raoul D. Kennedy by RH_

10 |                        Raoul D. Kennedy
       Attorneys for Counter-Defendants,
11 |   MGA ENTERTAINMENT, INC., MGA
       ENTERTAINMENT (HK) LIMITED,
12 |   MGAE de MEXICO S.R.L. de C.V., and
       ISAAC LARIAN

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

---

**REPLY IN SUPPORT OF MGA'S MOTION FOR PROTECTIVE ORDER FROM MATTEL INC.'S NOTICE OF DEPOSITION OF LUCY ARANT**
Case No. CV 04-9049 SGL (RNBx)
-10-

EXHIBIT 33

PAGE 404

# EXHIBIT 34

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 35

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:     (415) 774-2611
4  Facsimile:     (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12                                        CASE NO. CV 04-09049 SGL (RNBx)
                                          JAMS Reference No. 1100049530
13  CARTER BRYANT, an individual,

14            Plaintiff,
                                          Consolidated with
15       v.                               Case No. CV 04-09059
                                          Case No. CV 05-2727
16  MATTEL, INC., a Delaware corporation,
                                          **ORDER GRANTING IN PART**
17            Defendant.                  **DEFENDANTS' MOTION FOR**
                                          **PROTECTIVE ORDER FROM**
18                                        **MATTEL INC.'S NOTICE OF**
                                          **DEPOSITION OF LUCY ARANT**
19  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
20  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
21

22       On March 17, 2008, MGA Entertainment, Inc. ("MGA") submitted a "Motion for

23  Protective Order From Mattel Inc.'s Notice of Deposition of Lucy Arant."  On March 27, 2008,

24  Mattel submitted an opposition, and on April 7, 2008, MGA submitted a reply.  Ms. Arant, who is

25  not a party to this action, has not submitted any briefing.  Pursuant to Paragraph 5 of the

26

27

28
    Bryant v. Mattel, Inc.,                              1
    CV-04-09049 SGL (RNBx)

                                    S-1-08

EXHIBIT 35
PAGE 425

stipulation and Order for Appointment of a Discovery Master, the Discovery Master finds it appropriate to decide the motion without oral argument.

MGA retained Ms. Arant to prepare certain trademark and copyright applications. She no longer represents MGA. In January of 2008, the district court granted Mattel leave to take Ms. Arant's deposition, along with approximately forty-five other individuals and entities. Mattel made numerous attempts to serve Ms. Arant, and eventually the district court issued an Order to Show Cause why Ms. Arant should not be ordered to appear for deposition. On February 25, 2008, the district court discharged the Order to Show Cause. The court precluded Ms. Arant from objecting to Mattel's subpoena on the basis of notice, service or timeliness, but made clear that all other objections to Mattel's subpoena were preserved and to be adjudicated by the Discovery Master.

MGA presently seeks a protective order prohibiting Mattel from deposing Ms. Arant on the grounds that her deposition is duplicative and cumulative of other discovery obtained by Mattel and seeks privileged information. In the alternative, MGA requests that the court limit the deposition of Ms. Arant by requiring that it be taken by written interrogatories. Mattel opposes the motion, contending that Ms. Arant is an outside MGA lawyer who has percipient, non-privileged knowledge about key trademark and copyright applications and related communications that are squarely at issue in the case.

Rule 26(b)(2)(C)(i), Fed.R.Civ.P., provides that the court must limit the frequency or extent of discovery otherwise allowed by the Federal Rules of Civil Procedure or by local rule if the court determines that the discovery sought is unreasonably cumulative or duplicative. In this case, Mattel has already taken discovery regarding MGA's trademark and copyright applications. In particular, Mattel has deposed several individuals, including Kerri Brode, Nana Ashong, and Samir Khare. Mr. Khare, MGA's in-house counsel, testified regarding MGA's copyright and trademark applications for Bratz. Ms. Brode, MGA's former Operations Support Coordinator, testified regarding MGA's trademark searches, including Ms. Arant's role with regard to

EXHIBIT 35
PAGE 426

1   trademark searches. Ms. Ashong, MGA's former Associate Product Manager, testified regarding

2   the searches conducted in connection with copyright and trademark applications for Bratz and the

3   sources of information used in preparing the applications.

4       The discovery Mattel now seeks, however, is not entirely cumulative or duplicative of

5   discovery Mattel has already obtained.  Notably, Ms. Arant  (1) sent a fax to Paula Garcia in

6   which she asks Ms. Garcia to confirm that the "first use" date of certain Bratz-related trademark

7   applications (a date also reflected in an internal docket sheet at Ms. Arant's law firm) was June

8   15, 2000, and (2) filed MGA's copyright applications for certain Bratz works showing a creation

9   date in 2000 and a first publication date of February 12, 2001.  The dates reflected in these

10   documents are inconsistent with the chronology of Bratz's creation that MGA and Carter Bryant

11   have asserted in this litigation.  Mattel has not had an opportunity to probe Ms. Arant's personal

12   knowledge regarding the first use date, creation date and first publication date stated in various

13   trademark and copyright applications.  These subject matters are well within the scope of relevant

14   discovery authorized by Rule 26(b), Fed.R.Civ.P.

15       Nevertheless, there is a substantial likelihood that much of Ms. Arant's anticipated

16   testimony will be duplicative and cumulative of discovery Mattel has already taken.  In view of

17   the significant discovery Mattel has already sought and received regarding MGA's trademark and

18   copyright applications and pursuant to the court's obligation to limit discovery under Rule

19   26(b)(2)(C), Fed.R.Civ.P., it is appropriate to impose a temporal limit on Ms. Arant's deposition

20   to reduce the likelihood of Mattel pursuing duplicative and cumulative testimony.

21       Although MGA's concerns regarding privilege issues are valid, they are not a basis for

22   precluding Mattel from deposing Ms. Arant's deposition.  Rather, privilege issues can and should

23   be considered on a question-by-question basis, with MGA asserting appropriate objections during

24   the course of the deposition in accordance with Rule 30(c), Fed.R.Civ.P.

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT 35

PAGE 424

1         Accordingly, MGA's motion for a protective order is granted in part pursuant to Rule

2   26(b)(2)(C)(i), Fed.R.Civ.P.  Ms. Arant's deposition is hereby limited to one (1) hour and shall be

3   completed no later than May 20, 2008.

4         Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

5   Master, MGA shall file this Order with the Clerk of Court forthwith.

6

7   Dated: April 30 2008

8                              HON. EDWARD A. INFANTE (Ret.)

                                  Discovery Master

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                                             4

EXHIBIT 35

PAGE 428

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 1, 2008, I served the attached: ORDER GRANTING IN PART DEFENDANTS' MOTION FOR PROTECTIVE ORDER FROM MATTEL INC.'S NOTICE OF DEPOSITION OF LUCY ARANT in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges. | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| David C. Scheper, Esq. | Overland, Borenstein, et al. | dscheper@obsklaw.com |
| Larry W. McFarland, Esq. | Keats, McFarland & Wilson | lmcfarland@kmwlaw.com |
| Christian Dowell, Esq. | Keats, McFarland & Wilson | cdowell@kmwlaw.com |
| Robyn Aronson, Esq. | Davis Wright Tremaine | robynaronson@dwt.com |
| Alonzo Wickers, Esq. | Davis Wright Tremaine | alonzowickers@dwt.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 1, 2008, at San Francisco, California.

_Anthony Sales_

Anthony Sales

EXHIBIT _35_

PAGE _429_

# EXHIBIT 36

**THIS EXHIBIT IS FILED UNDER SEAL**

**PURSUANT TO PROTECTIVE ORDER**

# EXHIBIT 37

1   DALE M. CENDALI (admitted *pro hac vice*)
    dcendali@omm.com
2   MARC F. FEINSTEIN (S.B. #158901)
    mfeinstein@omm.com
3   O'MELVENY & MYERS LLP
    400 South Hope Street
4   Los Angeles, CA 90071-2899
    Telephone: (213) 430-6000
5   Facsimile: (213) 430-6407

6   PATRICIA GLASER (S.B. #55668)
    pglaser@chrisglase.com
7   CHRISTENSEN, GLASER, FINK,
    JACOBS, WEIL & SHAPIRO, LLP
8   10250 Constellation Boulevard, 19th Floor
    Los Angeles, CA 90067
9   Telephone: (310) 553-3000
    Facsimile: (310) 557-9815

10
11  Attorneys for MGA Entertainment, Inc.,
    MGA Entertainment (HK), Ltd., and Isaac
    Larian
12
                UNITED STATES DISTRICT COURT
13
              CENTRAL DISTRICT OF CALIFORNIA
14
                      EASTERN DIVISION
15

16
    CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)
17                                       (consolidated with CV 04-9059 & 05-
                Plaintiff,               2727)
18
        v.                               [DISCOVERY MATTER]
19
    MATTEL, INC., a Delaware             MGA ENTERTAINMENT, INC.'S
20  Corporation,                         MEMORANDUM OF POINTS AND
                                         AUTHORITIES IN OPPOSITION
21              Defendant,               TO MATTEL, INC.'S MOTION TO
                                         COMPEL WITHHELD MGA
22                                       DOCUMENTS THAT PROVE MGA
                                         WAS DEVELOPING BRATZ AS
23                                       EARLY AS JUNE 2000

24  AND CONSOLIDATED ACTIONS             [concurrently filed declarations of
                                         Paula Garcia and Lucy Arant]
25
                                         Hearing Date: T.B.D.
26                                       Time: T.B.D.
                                         Place: T.B.D.
27

28

    CCI:770068.3

                                         MGA'S OPPOSITION TO MATTEL'S MOTION
                                         TO COMPEL WITHHELD MGA DOCUMENTS

                    914

EXHIBIT 37
PAGE 463

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| MGA'S OPPOSITION TO MATTEL'S MOTION TO COMPEL | | 1 |
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF FACTS | 2 |
| III. | ARGUMENT | 4 |
| | A. | The Attorney-Client Privilege Attached to Communications Between Ms. Garcia and Ms. Arant About "Dates of First Use." | 4 |
| | B. | The Subsequent Trademark Filings Did Not Alter the Nature of the Preceding Attorney-Client Communications | 6 |
| | C. | Internal Documents Reflecting Attorney-Client Communications Are Privileged | 8 |
| | D. | MGA Never Waived the Privilege | 9 |
| | E. | Mattel's Relevance Argument Is Unavailing | 10 |
| IV. | CONCLUSION | 12 |

MGA'S OPPOSITION TO MATTEL'S MOTION
TO COMPEL WITHHELD MGA DOCUMENTS

EXHIBIT 37

PAGE 454

# TABLE OF AUTHORITIES

Page

## CASES

*Brookfield Communications, Inc. v. West Coast Entm't Corp.,*
174 F.3d 1036 (9th Cir. 1999) .................................................................. 11

*Caesars World, Inc. v. Milanian,*
247 F. Supp. 2d 1171 (D. Nev. 2003)....................................................... 11

*Conner Peripherals, Inc. v. Western Digital Corp.,*
1993 U.S. Dist. LEXIS 20149, *2, 31 U.S.P.Q.2D (BNA) 1042
(N.D. Cal. June 8, 1993) ...................................................................... 6, 10

*Fila Sport, S.p.A. v. Diadora America, Inc.,*
141 F.R.D. 74 (D. Ill. 1991)...................................................................... 11

*In Hyuk Suh v. Choon Sik Yang,*
1997 U.S. Dist. LEXIS 20077, at *11 (N.D.Cal. Nov. 18, 1997) ..............8

*In re Fischel,*
557 F. 2d 209 (9th Cir. 1977) ............................................................ 4, 8, 9

*In re Spalding Sports Worldwide, Inc.,*
203 F.3d 800 (Fed. Cir. 2000)....................................................................7

*McCook Metals L.L.C. v. Alcoa Inc.,*
192 F.R.D. 242 (N.D. Ill. 2000)..................................................................7

*Motto Enterprises v. Recusant, Inc.,*
831 F. Supp. 1491 (D. Wash. 1993) ...........................................................5

*Novartis Consumer Health, Inc. v. McNeil-PPC, Inc.,*
1999 U.S. Dist. LEXIS 20981, *5-6 (D.N.J. Sept. 13, 1999).....................5

*Rohm & Haas Co. v. Brotech Corp.,*
815 F. Supp. 793 (D. Del. 1993)................................................................5

*TeKnowledge Corp. v. Akamai Techs., Inc.,*
2004 U.S. Dist. LEXIS 19109 (N.D. Cal. Aug. 10, 2004) .........................8

*Trammel v. United States,*
445 U.S. 40 (1976)................................................................................. 5, 6

*UMG Recording, Inc. v. Bertelsmann AG,*
479 F.3d 1078 (9th Cir. 2007) .............................................................. 1, 6

*Unuson Corp. v. Built Entm't Group, Inc.,*
2006 U.S. Dist. LEXIS 2207 (N.D. Cal. Jan. 23, 2006)........................... 11

*Upjohn Company v. U.S.,*
449 U.S. 383 (1981)...................................................................................6

## STATUTES

15 U.S.C. § 1051(d)(1)...............................................................................5

15 U.S.C. § 1127 ...................................................................................... 11

- ii -

MGA'S OPPOSITION TO MATTEL'S MOTION
TO COMPEL WITHHELD DOCUMENTS

EXHIBIT 37

PAGE 455

1  **MGA'S OPPOSITION TO MATTEL'S MOTION TO COMPEL**

2  **I.     INTRODUCTION**

3  Mattel seeks by this motion to compel the disclosure of communications

4  protected by the attorney-client privilege and to use the communications to mislead

5  the jury in this case. In attempting to invade the privilege, Mattel disregards how

6  "[t]he attorney-client privilege protects fundamental liberty interests by allowing

7  individuals [and companies such as Mattel] to seek the legal advice they need ...."

8  *UMG Recording, Inc. v. Bertelsmann AG*, 479 F.3d 1078, 1090 (9th Cir. 2007)

9  (citations omitted). There should be no question that the communications at issue

10  are privileged and entitled to protection.

11  Concurrently with this brief, MGA lodged the documents in question with

12  the Discovery Master under seal for in-camera review. MGA also filed declarations

13  from MGA employee Paula Garcia and outside trademark attorney Lucy Arant,

14  both of whom were involved in the attorney-client communications at issue. Those

15  declarations demonstrate that the communications by MGA to its counsel regarding

16  date of first use for the Bratz doll marks were intended to be confidential attorney-

17  client communications for the purpose of obtaining legal advice. Therefore, the

18  references to date of first use in the documents at issue are protected because the

19  references reflect a client confidence transmitted as part of a privileged

20  communication.

21  Mattel incorrectly contends that MGA's communication of date of first use

22  information to its attorney was not confidential because the communication was in

23  connection with the preparation of a trademark application. The date of first use

24  was not included in the trademark application prepared by Ms. Arant, nor was such

25  information sought by Ms. Arant for inclusion in the application. As stated in her

26  declaration, she was interested in the anticipated date of first use to advise MGA on

27  what trademark application to file and when to file it. Further, contrary to the

28  argument urged by Mattel, there is no broad exception to the attorney-client

CC1:770068.3                    - 1 -         MGA'S OPPOSITION TO MATTEL'S MOTION
                                              TO COMPEL WITHHELD MGA DOCUMENTS

**EXHIBIT 37**

**PAGE 456**

1  privilege for attorney-client communications in the course of preparing a trademark

2  application. Whether or not an attorney-client communication is related to a

3  trademark application, the communication is privileged where, as here, it involved a

4  client confidence conveyed to an attorney for the purpose of obtaining legal advice.

5      As for Mattel's argument that the documents in question are "smoking gun"

6  evidence, Mattel should know better than to argue that the privilege is waived on

7  that ground. In addition, to characterize these documents as crucial evidence says

8  more about Mattel's zeal than the quality of the evidence. As shown by the

9  contemporaneous documents supplied in opposition to the motion, the Bratz launch

10  occurred in June 2001, at which time the marks were first used. Any contrary

11  information contained in the documents in question was an error that should have

12  no bearing on whether the information is privileged. Although Mattel asserts its

13  need for the documents to bolster Anna Rhee's testimony, Judge Larson has already

14  called into question Mattel's factual assertions in reliance on Ms. Rhee's testimony.

15  The unfortunate truth about this motion is that Mattel is seeking these two

16  documents to mislead the jury, and is willing to undermine the privilege to do so.

17      Thus, Mattel has failed to show that the communications at issue are not

18  protected by the attorney-client privilege, and Mattel's motion should be denied.

19  **II.  STATEMENT OF FACTS**

20      In 2000, MGA was represented by Russ, August, Kabat & Kent as trademark

21  counsel, including particularly attorney Lucy B. Arant.[1] As legal advisor to MGA,

22  Ms. Arant prepared "intent to use" trademark applications for "BRATZ" and

23  individual Bratz dolls, including "Sasha," "Yasmin," and "Jade."[2] In or about

24  December 2000, as part of the representation, Ms. Arant communicated with Paula

25

---

26  [1] Declaration of Lucy B. Arant In Support of MGA Entertainment, Inc.'s Opposition to Mattel's
   Motion to Compel ("Arant Decl."), filed concurrently herewith, ¶¶2-3. *See* Declaration of Paula

27  D. Garcia In Support of MGA Entertainment, Inc.'s Opposition to Mattel's Motion to Compel
   ("Garcia Decl."), filed concurrently therewith, ¶ 3.

28  [2] Arant Decl., ¶ 3.

CCI:770068.3                        - 2 -            MGA'S OPPOSITION TO MATTEL'S MOTION
                                                    TO COMPEL WITHHELD MGA DOCUMENTS

EXHIBIT 37

PAGE 457

1    Traentafellas, now Paula Garcia, who was then and is now with MGA.[3]  Those
2    communications were in furtherance of Ms. Arant's legal services to MGA,
3    including developing her legal opinions on the type of trademark applications MGA
4    should file and when and preparation of the "Intent to Use U.S. Trademark
5    Applications" for "BRATZ" and Bratz dolls.[4]

6        Ms. Garcia communicated with Ms. Arant intending and expecting any of her
7    communications about the date of MGA's expected first use of the "Bratz" marks to
8    be confidential.[5]  Ms. Arant did not discuss "date of first use" with Ms. Garcia to
9    include it in the trademark application itself, nor did she indicate that she intended
10   to disclose the information to the U.S. Patent and Trademark Office ("PTO").[6]  In
11   preparing "intent to use" applications, Ms. Arant does not include "date of first use"
12   information, as such applications do not call for such information.[7]  But when
13   advising a client regarding "intent to use" applications, Ms. Arant raises "date of
14   first use" to establish how far in advance of the "date of first use" she should
15   prepare and submit the "intent to use" application, and to counsel her client
16   regarding "first use."[8]

17       In or about December 2000, when Ms. Garcia and Ms. Arant communicated
18   with respect to "intent to use" applications for MGA, Ms. Garcia understood that
19   there had been no use yet of the "Bratz" doll marks.[9]  She understood that June 15,
20   2001 was the anticipated "date of first use" for those marks.  As shown on the
21   internal BRATZ production schedules and calendars that Ms. Garcia received in
22   late 2000 and early 2001, MGA targeted the Bratz launch to occur in or about May

23

24   _____
25   [3] Arant Decl., ¶¶ 4-5; Garcia Decl. ¶ 2-3.
     [4] Arant Decl., ¶ 5.
26   [5] Garcia Decl., ¶ 3.
     [6] *See* Arant Decl., ¶¶ 6-8.
27   [7] *Id.*, ¶ 7.
     [8] *Id.*, ¶¶ 8,10.
28   [9] Garcia Decl., ¶ 3-6.

                                    MGA'S OPPOSITION TO MATTEL'S MOTION
                                    TO COMPEL WITHHELD MGA DOCUMENTS

EXHIBIT 37

PAGE 458

1   or June 2001. [10]

2       When Ms. Arant prepared MGA's "intent to use" trademarks applications for

3   December 2000 submission, she also understood that there had been no use of the

4   "Bratz" doll marks.[11]  She would neither prepare nor file "intent to use" trademark

5   applications for marks already in use; rather, for marks already in use, she would

6   recommend a use-based application.   In December 2000, Ms. Arant filed "intent to

7   use" trademark applications, not use-based applications, for "BRATZ," "Sasha,"

8   "Yasmin," and "Jade." [12]

9   III.   **ARGUMENT**

10       **A.**   **The Attorney-Client Privilege Attached to Communications**

11             **Between Ms. Garcia and Ms. Arant About "Dates of First Use."**

12       Where legal advice of any kind is sought from a professional legal adviser in

13   her capacity as such, the communications relating to that purpose made in

14   confidence by the client are permanently protected from disclosure unless the client

15   waives that protection.   *In re Fischel*, 557 F. 2d 209, 211 (9th Cir. 1977).  It is

16   precisely such communications that the two documents in question reflect.  MGA

17   sought Ms. Arant's legal advice as trademark counsel.  In that capacity, she was

18   responsible for obtaining the earliest and strongest trademark protection possible

19   for her client in connection with its upcoming launch of the Bratz dolls.  In

20   obtaining legal advice from Ms. Arant, Ms. Garcia communicated information to

21   her in confidence, including information regarding date of first use.  Ms. Arant

22   reflected that confidential client information in the two documents in question, and

23   did not disclose that information in the trademark application.

24       Even as to the information included in the application, a client is not

25   prevented "from having confidential communications with counsel relating to the

26

27   [10] *Id.*, ¶ 4-6.
    [11] Arant Decl., ¶ 9.
28   [12] *Id.*, ¶¶ 9-10.

CCI.770068.3                - 4 -        MGA'S OPPOSITION TO MATTEL'S MOTION
                                      TO COMPEL WITHHELD MGA DOCUMENTS

EXHIBIT 37

PAGE 459

1   nature of that information" or "what information should be disclosed as material,

2   and the manner and method of presenting that information." *Rohm & Haas Co. v.*

3   *Brotech Corp.*, 815 F. Supp. 793, 797 (D. Del. 1993). Ms. Arant's role was not as a

4   "mere conduit of data" or transcriber; instead, her role was to provide "advice on

5   what information should be included and how it should be set out." *Id.* In order to

6   provide adequate advice to that end, Ms. Arant was entitled under the protection of

7   the attorney-client privilege to "to know all that relates to the client's reasons for

8   seeking representation." *Trammel v. United States*, 445 U.S. 40, 51 (1976).

9        "Dates of first use" relate to an "intent to use" trademark application,

10  although they are not among the facts disclosed to the PTO as part of an "intent to

11  use" filing.[13]  "Intent to use" protection became available when the provisions of

12  the Trademark Law Revision Act of 1988 became effective in November 15, 1989,

13  "allowing applications, for the first time, to reserve trademarks for *future* use."

14  *Motto Enterprises v. Recusant, Inc.*, 831 F. Supp. 1491, 1495 (D. Wash.

15  1993)(emphasis added). The only mark for which an "intent to use application" is

16  appropriate is one that a client "has yet to use but intends to use in the future."

17  *Novartis Consumer Health, Inc. v. McNeil-PPC, Inc.*, 1999 U.S. Dist. LEXIS

18  20981, *5-6 (D.N.J. Sept. 13, 1999). Because an "intent to use" application is only

19  appropriate for marks not in use, an attorney charged with filing an application for

20  "intent to use" trademark status may inquire as to a "date of first use" for the mark.

21       But this is not the only reason why "dates of first use" should be part of a full

22  and frank discourse about "intent to use" trademark applications. Under the

23  Amendment to the Lanham Act, the PTO gives a notice date following receipt of an

24  "intent to use" application. The applicant has six months from that date to use the

25  mark before it is deemed abandoned. 15 U.S.C. § 1051(d)(1). Hence, if an

26

27  [13] *See* Declaration of B. Dylan Proctor, dated August 23, 2007 ("Proctor Decl.") and filed
    concurrently with Mattel's Motion, Exhs. 10-13 (Intent to Use Applications for "Bratz,"
28  "Yasmin," "Sasha," and "Jade," each dated Dec. 7, 2000).

CC1:770068.3                        - 5 -         MGA'S OPPOSITION TO MATTEL'S MOTION
                                                  TO COMPEL WITHHELD MGA DOCUMENTS

EXHIBIT _37_

PAGE _460_

1    applicant envisions a date of first use more than six months in the future, her

2    attorney would be prudent to advise the applicant to delay the filing.

3       These legal considerations led Ms. Arant to request "dates of first use" from

4    Ms. Garcia in connection with advising MGA regarding "intent to use" trademark

5    applications. That information was communicated by the client in confidence and

6    is thus protected by the privilege. To invade the privilege would undermine its

7    purpose of enabling open communication between client and attorney so that the

8    attorney can provide guidance through thickets of complex laws. *Trammel*, 445

9    U.S., at 51; *see also UMG Recording, Inc. v. Bertelsmann AG*, 479 F.3d 1078, 1090

10   (9th Cir. 2007); *Upjohn Company v. U.S.*, 449 U.S. 383, 389 (1981).

11       **B.**    **The Subsequent Trademark Filings Did Not Undermine the**

12            **Privileged Nature of the Attorney-Client Communications.**

13       Mattel's main argument is that because Ms. Arant's services, and Ms.

14    Garcia's communications in aid thereof, were in connection with a trademark filing,

15    the attorney-client privilege did not attach. Mattel's argument incorrectly assumes

16    that Ms. Garcia intended her communications regarding date of first use to be made

17    public. That was not the case.[14] Because "intent to use" applications do not call for

18    any "date of first use" to be included, the conveyance of that information by Ms.

19    Garcia was not for public disclosure. Rather, as explained by Ms. Arant, the

20    communications regarding "date of first use" were part of the "complex discourse"

21    in confidence between client and counsel that takes place as counsel engages in

22    "efforts to obtain the strongest permissible [] protection" for her client, and as such

23    the communications are protected. *See Conner Peripherals, Inc. v. Western Digital*

24    *Corp.*, 1993 U.S. Dist. LEXIS 20149, *14, 31 U.S.P.Q.2D (BNA) 1042 (N.D. Cal.

25    June 8, 1993).

26       Mattel erroneously relies on a later filing of an entirely different nature -

27    "Statement of Use" - to argue that Ms. Garcia conveyed "dates of first use" to Ms.

28    ―――――――――――――
[14] Garcia Decl. ¶ 3, Arant Decl., ¶¶ 6-8.

EXHIBIT 37

PAGE 461

1   Arant with the intent that those dates would be publicly disclosed.  However,

2   Mattel provides no support for the conclusion that Ms. Garcia conveyed date of first

3   use information to Ms. Arant for such filings.  As shown by Mattel's evidence,

4   *different* attorneys (Larry McFarland and Alan Rose) from *different* law firms

5   (Keats McFarland & Wilson, LLP, and Oppenheimer Wolff & Donnelly, LLP,

6   respectively) prepared "Statement of Use" filings for "BRATZ," "Jade," "Yasmin,"

7   and "Sasha" at a *different* time (1-2 years after Ms. Arant prepared the "intent to

8   use" documents) and provided *different* "dates of first use" for each of those marks

9   than the date that Ms. Garcia allegedly communicated to Ms. Arant.[15]

10      Mattel's reliance on *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242,

11   252 (N.D. Ill. 2000) is misplaced.  Mattel cites that decision for the proposition that

12   "information that is intended to be disclosed to a third party in unedited form" is

13   not protected.  However, even under that standard, the two documents in question

14   would be protected, as the date of first use referenced in the documents was not

15   intended to be disclosed at all, let alone in that unedited form.  Indeed, the later-

16   filed "Statements of Use" bear a different date, and one of the documents at issue

17   shows that Ms. Arant was seeking to check the accuracy of the date of use

18   information.

19      Even as to information that made its way into the "intent to use applications,"

20   the documents generated in the preparation and drafting of applications that reflect

21   attorney-client discourse are shielded by the attorney-client privilege.  The Illinois

22   District Court in *McCook*, after noting that it was applying "the narrowest possible

23   limits" to which the 7th Circuit "strictly confines the scope of the privilege," held

24   that drafts of patent applications were privileged.  The court explained that those

25   drafts "necessarily reflect[ed] the communications between a client and his attorney

26   as the attorney attempts to put forth the invention in the best light possible to

27   

28   [15] *See* Proctor Decl., Exhs. 14-17 (Statements of Use for "Sasha," dated Nov. 13, 2002; "Yasmin," dated Feb. 24, 2003; "Bratz," dated Feb. 24, 2003; and Jade, dated Mar. 25, 2002).

EXHIBIT _37_

PAGE _462_

1   protect a client's legal right." 192 F.R.D. 242, 252. Other courts similarly have

2   held that because the preparation of trademark applications consist of "dialectical

3   processes in which some information is selected for inclusion in the application and

4   some is rejected," that dialectic is protected. *In Hyuk Suh v. Choon Sik Yang*, 1997

5   U.S. Dist. LEXIS 20077, at *11 (N.D.Cal. Nov. 18, 1997) (attorney-client privilege

6   protects factual information obtained from client for trademark filings.); *see also In*

7   *re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000) (invention

8   record submitted for purposes of making patentability determination was a

9   privileged communication "made for the purpose of obtaining legal advice," *id.* at

10  805); *TeKnowledge Corp. v. Akamai Techs., Inc.*, 2004 U.S. Dist. LEXIS 19109, at

11  *6 (N.D. Cal. Aug. 10, 2004)("technical information communicated to a patent

12  attorney does not warrant different treatment than any other information

13  communicated to an attorney in the process of obtaining legal services.") This is an

14  additional reason that the two documents in question are privileged and that Mattel

15  is overreaching in seeking to invade the privilege.

16      **C.    Internal Documents Reflecting Attorney-Client Communications**

17             **Are Privileged.**

18      Mattel argues that internal law firm documents recording confidential client

19  information digested to facilitate the preparation of trademark applications are not

20  privileged because they list basic information about MGA's trademark application.

21  As discussed above, there is no such trademark law exception to the attorney-client

22  privilege. Given that the communications between Ms. Garcia and Ms. Arant for

23  purposes of obtaining MGA trademark protection in connection with its launch of

24  Bratz are privileged, so are the internal law firm documents that reflect that

25  information. "Of necessity the privilege is not limited to the actual communication

26  by the client to the attorney. Ordinarily the compelled disclosure of an attorney's

27  communications or advice to the client will effectively reveal the substance of the

28  client's confidential communication to the attorney." *Fischel*, 557 F.2d, at 211.

EXHIBIT 37

PAGE 463

1   Because the internal law firm document was a "paper[] prepared by an attorney or

2   at an attorney's request for the purpose of advising the client, [which was] based on

3   and would tend to reveal the client's confidential communications", the attorney-

4   client privilege extends to it. *Id.*

5       **D.  MGA Never Waived the Privilege.**

6       Mattel's final argument in favor of disclosure - that MGA subsequently

7   waived the privilege by failing to place the documents on the initial privilege log -

8   also fails.  In late June 2007, when MGA's counsel inadvertently produced both

9   documents[16] as part of a larger document production, the issue of the timing and

10  extent of MGA's production in response to Mattel's first set of requests was on

11  appeal to Judge Larson, who ruled on July 2, 2007.  On August 7, 2007, after

12  learning of the inadvertent disclosure, MGA prepared and sent a letter to Mattel

13  notifying Mattel that it was invoking the attorney-client privilege as to those

14  specific documents and identifying the documents by Bates number.[17]  That letter

15  gave Mattel the notice of the privilege assertion that a privilege log is intended to

16  give.  Mattel admitted as much, in that before Mattel received MGA's supplemental

17  log including those two documents, Mattel contested the assertion of the privilege

18  as to the two documents "and requested a meet and confer in this regard."[18]

19      Even if the letter was insufficient as a "log" of the two documents, MGA

20  listed both documents on its supplemental privilege log less than two weeks later,

21  on August 14, 2007,[19] when MGA served the log concurrently with completing its

22  production of documents in response to the District Court's deadline of the same

23  date.[20]  In fact, when MGA logged the two documents, Mattel still had them on

24

25  [16] Proctor Decl., ¶ 2.
    [17] Letter from Chris D. Nguyen to Timothy L. Alger, dated August 7, 2007, Proctor Decl. ISO
26  Mattel's Motion, Exh.1.
    [18] Mot. at 7-8, fn.33.
27  [19] Proctor Decl., ¶ 29.
    [20] MGA addresses Mattel's arguments as to the timing and sufficiency of MGA's supplemental
28  privilege log in its Opposition to Mattel's Motion to Compel Productions Withheld as Privileged,

EXHIBIT 37

PAGE 464

1    hand, because Mattel did not reply to MGA's August 3 request and confirm that it

2    destroyed copies of the documents until August 23, 2007[21] - the day before it filed

3    this Motion and well after it received MGA's letter recalling the documents.

4    Evidently, and despite the parties' Stipulated Protective Order, Mattel refused to

5    promptly destroy the documents.

6           **E.    Mattel's Relevance Argument Is Unavailing.**

7         Relevance does not strip a document of its privilege; otherwise the attorney-

8    client privilege would have no meaning. The decision in *Conner Peripherals* is

9    instructive of this principle. The defendant in that case sought to compel disclosure

10    of several documents relating to plaintiffs' patent application filing. Its defense

11    against patent infringement was that plaintiffs' claims for each of the patents were

12    invalid because plaintiffs had failed to comply with the provisions of the patent

13    laws. The documents sought showed that failure, in that they bore on whether

14    plaintiff had "placed on sale articles practicing [one of the patents] more than one

15    year before the application for the patent was filed." *Conner*, 1993 U.S. Dist.

16    LEXIS 20149, at *2. In other words, the movant claimed that certain documents

17    had "smoking gun" relevance because the dates did not match up with the opposing

18    party's claims and instead supported the moving party's. Notwithstanding the

19    relevance of the documents, the Magistrate Judge denied the motion to compel their

20    production because the documents were "protected by the attorney-client

21    privilege." *Id.*, at *15.

22         Moreover, what Mattel calls its "smoking gun" is at most an irrelevant

23    typographical error or misheard communication. As Ms. Garcia states in her

24    declaration, she understood the anticipated first use date to be June 2001. That

25

26    dated August 21, 2007. The August 14, 2007 deadline for MGA's log, with which it complied,
    was established by Court order. *See* Declaration of William Charron ("Charron Decl.") in

27    support of MGA's Opposition to Mattel's Motion to Compel MGA to Produce Privileged
    Documents, ¶ 3 & Exh. 1.

28    [21] Letter from Heidi Frahm to Chris D. Nguyen, dated August 23, 2007, Proctor Decl., Exh. 2.

1  understanding is supported by contemporaneous documents showing the projected

2  schedule for the Bratz launch.  Ms. Garcia also states that if anyone heard her state

3  a different date, it was an error.  Desperate to shore up its case, Mattel is seizing on

4  an error to confuse the issues in this case and mislead the jury into a wrong and

5  unjust result.

6  　　　　Further, Mattel admits that there could have been no "date of first use" of

7  Bratz in June 2000 within the meaning of trademark law.  As Mattel acknowledges,

8  the Lanham Act requires that "first use" be "actual use in commerce," or "bona fide

9  use [] in the ordinary course of trade." *Fila Sport, S.p.A. v. Diadora America, Inc.*,

10  141 F.R.D. 74, 78 (D. Ill. 1991); *Caesars World, Inc. v. Milanian*, 247 F. Supp. 2d

11  1171, 1192 (D. Nev. 2003) (quoting 15 U.S.C. § 1127).[22]  However, as Mattel

12  further acknowledges, Bratz was nowhere near "first use" in June 2000 in the sense

13  of the mark being used in commerce.

14  　　　　Mattel titles its motion in manner conceding that MGA still "Was

15  Developing Bratz as Early as June 2000."  To support its contention that Bratz was

16  in *development* in June 2000, Mattel offers the testimony of Anna Rhee.  Mattel

17  argues that it must have the two documents at issue to defeat MGA's claim that Ms.

18  Rhee's assertions regarding the timing of the *creation* of Bratz are false.[23]  Ms.

19  Rhee, "a third-party vendor[,] testified that she was asked by Bryant and paid by

20  MGA to paint Bratz doll heads in June 2000."[24]  Mattel omits mention that in the

21

22  [22] *See also Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir.

23  1999) (e-mail correspondence predating actual sales cannot constitute use in commerce because it
    failed to establish use "in a way sufficiently public to identify or distinguish the marked goods in

24  an appropriate segment of the public mind as those of the adopter of the mark." *Id.* at 1052)
    (internal quotations and citation omitted); *Unuson Corp. v. Built Entm't Group, Inc.*, 2006 U.S.

25  Dist. LEXIS 2207 (N.D. Cal. Jan. 23, 2006) (distribution of leftover concert memorabilia to fans,
    maintenance of a website offering pictures for download and a forum for attendees of the concerts

26  to share their memories, and licensing use of the mark for at least one set of commercial products
    - audio and video recordings - fall below the required "use of [a] mark in the 'ordinary course of

27  trade,'" *id.* at *12-13).
    [23] Mot. at 5.

28  [24] Mot. at 5-6.

MGA'S OPPOSITION TO MATTEL'S MOTION
TO COMPEL WITHHELD MGA DOCUMENTS

EXHIBIT 37

PAGE 466

1   Court's Order Denying Appointment of Expert Witnesses, dated August 10, 2006,

2   Judge Larson questioned the claims Mattel was making in reliance on her testimony

3   and raised the possibility that she was mistaken in her memory of the events.[25] But

4   *if* Ms. Rhee's testimony is to be believed - *if* she was still working with Mr. Bryant

5   on the design of Bratz, so that a sample would be finalized, so that Bratz could be

6   manufactured in Hong Kong, shipped, packaged, and then sold[26] - Bratz could not

7   have a "date of first use" in June 2000.  The project was still in the development

8   stage before any use of the mark was tantamount to a first use for trademark

9   purposes.  Bratz could not have been "a secret project…a big, big, big secret," as

10   Mattel claims, while being sold commercially in a way sufficiently public that the

11   mark was in first use.[27]

12   **IV.**   **CONCLUSION.**

13       For all the foregoing reasons, the two documents in question are protected by

14   the privilege, and MGA respectfully requests that Mattel's motion be denied.

15

16   Dated:   September 4, 2007

17                   DALE M. CENDALI
                     MARC F. FEINSTEIN

18                   O'MELVENY & MYERS LLP

19

20                   By:
                     Marc F. Feinstein

21                   Attorneys for MGA Entertainment, Inc.,
                   MGA Entertainment (HK) Ltd., and

22                   Isaac Larian

23

24

25   ―――――――――――――――――
[25] See Declaration of Chrystiane Pereira In Support of MGA Entertainment, Inc.'s Opposition to

26   Mattel's Motion to Compel, filed concurrently herewith, ¶2 and Exhibit A (Court Order) at pp. 8-9 and fn. 2.

27   [26] See Garcia Decl., Exhs. B, C (schedules for Bratz.)
[27] Mot. at fn. 12 (citing Deposition of Anna Rhee dated February 3, 2005 ("Rhee Depo."), Proctor

28   Decl., Exh. 8 at 107:4-108:12, 197:6-25.

EXHIBIT 37

PAGE 467

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On May 15, 2008, I served true copies of the following document(s) described as **DECLARATION OF JON D. COREY IN SUPPORT OF MATTEL, INC.'S EX PARTE APPLICATION FOR ORDER THAT THERE IS NO BASIS UNDER THE PROTECTIVE ORDER FOR MATTEL TO RETURN FIVE DOCUMENTS PRODUCED BY MGA** on the parties in this action as follows:

Thomas J. Nolan
**Skadden, Arps, Slate, Meageher & Flom LLP**
300 South Grand Ave., Ste. 3400
Los Angeles, CA 90071

Mark E. Overland
David C. Scheper
Alexander H. Cote
**Overland Borenstein Scheper & Kim LLP**
601 West Fifth Street, 12th Floor
Los Angeles, CA 90017

John W. Keker, Esq.
Michael H. Page, Esq.
Christina M. Anderson, Esq.
**Keker & Van Nest, LLP**
710 Sansome Street
San Francisco, CA 94111

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 15, 2008, at Los Angeles, California.


NOW LEGAL -- Dave Quintana

07209/2442344.1