Exhibit 3

1 QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
2   johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
5   (timalger@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
6 Los Angeles, California 90017-2543
  Telephone: (213) 443-3000
7 Facsimile:  (213) 443-3100

8 Attorneys for Mattel, Inc.

9

10                UNITED STATES DISTRICT COURT

11                CENTRAL DISTRICT OF CALIFORNIA

12                        EASTERN DIVISION

13 | CARTER BRYANT, an individual,          | CASE NO. CV 04-9049 SGL (RNBx)
   |                                         |
14 |              Plaintiff,                 | Consolidated with
   |                                         | Case No. CV 04-09059
15 |        vs.                              | Case No. CV 05-02727
   |                                         |
16 | MATTEL, INC., a Delaware                | **DISCOVERY MATTER**
   | corporation,                            |
17 |                                         | **[To Be Heard By Discovery Master
   |              Defendant.                 | Hon. Edward Infante (Ret.)]**
18 |                                         |
   |                                         | DECLARATION OF MICHAEL T.
19 | AND CONSOLIDATED ACTIONS                | ZELLER IN SUPPORT OF MATTEL,
   |                                         | INC.'S MOTION FOR PROTECTIVE
20 |                                         | ORDER LIMITING THE TEMPORAL
   |                                         | SCOPE OF ITS PRIVILEGE LOG, OR,
21 |                                         | IN THE ALTERNATIVE, MOTION
   |                                         | TO COMPEL LOGGING OF
22 |                                         | PRIVILEGED DOCUMENTS BY
   |                                         | BRYANT AND THE MGA PARTIES
23 |
24 |                                         | **Phase 1:**
25 |                                         | Discovery Cut-off:    January 28, 2008
   |                                         | Pre-trial Conference: May 5, 2008
26 |                                         | Trial Date:           May 27, 2008.
27
28

07209/2454305.1

Exhibit 3
Page 93

DECLARATION OF MICHAEL T. ZELLER

## DECLARATION OF MICHAEL T. ZELLER

I, Michael T. Zeller, declare as follows:

1.     I am a member of the bar of the States of California, New York and Illinois and a partner with Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently hereto.

2.     In June 2006, after the year-long stay in this case was lifted, the parties met and conferred on a number of issues under Judge Block's auspices. As reflected in the transcript, Defendants raised issues regarding the scope and timing of the privilege log as it related to the 2002 investigation. Mattel's counsel, John Quinn, stated that while there was no disagreement that some documents from the 2002 investigation would be appropriately logged, Mattel's counsel specifically expressed concern about logging outside counsel's files and both Mr. Quinn and MGA's counsel, Dale Cendali, noted that the scope of the log as it related to the investigation would have to be discussed further among the parties. The parties reached no resolution as to the scope of the 2002 documents to be included on the privilege log, and Judge Block stated his expectation that the parties would discuss the matter further.

3.     In July and August 2006, counsel for the parties met via teleconference to discuss discovery disputes related to MGA's First Set of Document Requests to Mattel. Among others, Ms. Cendali and Diana Torres of O'Melveny and Myers attended on behalf of MGA, and Keith Jacoby and Doug Wickham of Littler Mendelson participated on behalf of Bryant. John Quinn and I participated for Mattel. During the initial meetings, Defendants raised the issue of the scope of the privilege log as it related to the 2002 investigation. Defendants also raised issues more generally about whether Mattel should log all pre-filing communications and work product that led up to the filing of suit. Mr. Quinn and I informed Defendants that Mattel did not intend to log documents protected by

1 attorney-client privilege or the attorney work product doctrine that were created in
2 the period leading up to the filing of Mattel's suit against Carter Bryant.  Mr. Quinn
3 explained that the burden of logging all documents up to the date of filing would be
4 great, and there was no justification for such an endeavor.  During these discussions,
5 Mr. Quinn and I stated that if MGA and Bryant took a contrary position and Mattel
6 was required to log all of its documents up to the filing of Mattel's complaint, then
7 Bryant and MGA would have to do the same for their privileged documents up to
8 the time they filed their respective complaints.  MGA's and Bryant's counsel stated
9 they would consider the matter further.

10              4.      The issue of the time period for the logging of all privilege
11 documents leading up to suit was discussed further at conferences on July 27, 2006
12 and on August 2, 2006.  Various proposals were discussed, but ultimately no
13 resolution was reached.  Ultimately, Mr. Quinn and I stated that Mattel would
14 consider logging all privileged communications and work product leading up to
15 Mattel's suit if MGA and Bryant likewise agreed to log all privileged
16 communications and work product leading up to their respective suits.  Defendants
17 declined any agreement that would apply reciprocally (i.e., to their logs as well), and
18 Mr. Quinn asked Defendants' counsel to let us know if they changed their minds.
19 That was the last communication I was aware of on the subject until approximately
20
21
22
23
24
25
26
27
28

07209/2454305.1

-2-

Exhibit 3
Page 95

DECLARATION OF MICHAEL T. ZELLER

1  February 2008, when I understand that the time periods covered by the parties

2  privilege logs was discussed by my partner, Tim Alger, and counsel for MGA.

3

4          I declare under penalty of perjury under the laws of the United States of

5  America that the foregoing is true and correct.

6          Executed on April 12, 2008, at New York, New York.

7

8                                    _Michael T. Zeller_____

9                                    Michael T. Zeller

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-

DECLARATION OF MICHAEL T. ZELLER

Exhibit 3
Page 96

Exhibit 4

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
     865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
     Telephone: (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9

10                  UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12                       EASTERN DIVISION

13  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

14               Plaintiff,              Consolidated with
                                         Case No. CV 04-09059
15         vs.                           Case No. CV 05-02727

16  MATTEL, INC., a Delaware             **DISCOVERY MATTER**
     corporation,
17                                       **[To Be Heard By Discovery Master**
                Defendant.               **Hon. Edward Infante (Ret.)]**
18
19  AND CONSOLIDATED ACTIONS            MATTEL, INC.'S REPLY IN
                                         SUPPORT OF MOTION FOR
20                                       PROTECTIVE ORDER LIMITING
                                         THE TEMPORAL SCOPE OF ITS
21                                       PRIVILEGE LOG

22
                                         Phase 1:
23                                       Discovery Cut-off:      January 28, 2008
                                         Pre-trial Conference:   May 19, 2008
24                                       Trial Date:             May 27, 2008

25

26

27

28

07209/2488380.1

                                         REPLY ISO MOTION FOR PROTECTIVE ORDER

Exhibit 4
Page 97

1
## TABLE OF CONTENTS
2
Page

3

4   PRELIMINARY STATEMENT ................................................................................. 1

5   I.   THERE IS NO REASON TO DEMAND THAT MATTEL PREPARE
        A PRIVILEGE LOG ON THE EVE OF TRIAL................................................. 3
6
        A.   MGA Concedes that a Document-by-Document Log Would
7            Serve No Purpose........................................................................ 3

8       B.   A Document-by-Document Privilege Log Would Serve No
             Purpose........................................................................................ 4
9
    II.  MGA'S DEMAND WOULD IMPOSE AN UNDUE BURDEN ON
10       THE EVE OF TRIAL ........................................................................ 5

11      A.   The Burden MGA Seeks to Impose is Undue Because It Would
             Require Substantial Time and Expense ....................................... 5
12
        B.   The Burden MGA Seeks to Impose is Undue -- As Well as
13           Prejudicial -- Because it Would Reveal Mattel's Litigation
             Strategy ........................................................................................ 7
14
    III. MATTEL NEVER AGREED TO LOG PRIVILEGED DOCUMENTS
15       FROM THE PERIOD LEADING UP TO THE FILING OF ITS
         COMPLAINT................................................................................... 8
16
    IV.  MGA MISREPRESENTS MATTEL'S MOTION ......................................... 12
17
    V.   THE DECLARATIONS OF DEFENDANTS' FORMER COUNSEL
18       FAIL TO SUPPORT MGA'S ARGUMENT................................................. 13

19   VI. ALTERNATIVELY, DEFENDANTS SHOULD BE HELD TO THE
         SAME LOGGING REQUIREMENTS AS MATTEL ..................................... 14
20
     CONCLUSION............................................................................... 15
21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2
                                                                                        **Page**
3

### Cases

4
PostX Corp. v. Secure Data Motion
5      2004 WL. 2623234 (N.D. Cal. June 9, 2004) .................................................. 4, 7, 8

6  In re Imperial Corp. of America,
       174 F.R.D. 475 (S.D. Cal. 1997) ........................................................................... 3, 8
7
   SEC v. Nacchio,
8      2007 WL. 21966 (D. Colo. Jan. 25 2007) ................................................................. 3

9  SEC v. Thrasher,
       1996 WL. 125661 (S.D.N.Y. March 20, 1996) ................................................... 3, 8
10
   United States v. Gericare Medical Supply Inc.,
11     2000 WL. 33156442 (S.D. Ala. Dec. 11 2000) ................................................... 3, 8

12

### Statutes

13
Fed. R. Civ. P.
14     Rule 15(c) ................................................................................................................. 14
       Rule 26(c) ................................................................................................................... 5
15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY ISO MOTION FOR PROTECTIVE ORDER

**Exhibit 4**
**Page 99**

1                        **Preliminary Statement**

2           Unable to offer <u>any</u> rationale for the logging of countless documents
3 that are indisputably privileged and completely irrelevant, MGA burdens the
4 Discovery Master with a 29-page digression that mischaracterizes four years of
5 discovery. Defendants have obviously scoured the record. What is quite clear is
6 that they have found no evidence that Mattel ever agreed to log privileged
7 documents between the time that it learned it had a claim against Carter Bryant and
8 the filing of its lawsuit.

9           What also is quite clear is that MGA can point to nothing that justifies
10 the burden it seeks to impose on Mattel at this late stage of the litigation. MGA
11 wants Mattel to embark on a costly and time-consuming logging exercise that
12 provides no legitimate benefit. Rather, the logging demanded is being sought to
13 give MGA two improper benefits – the disclosure of information about Mattel's
14 research and communications leading up to its complaint, and the interference with
15 Mattel's trial preparation.

16          MGA fails to explain the necessity of a document-by-document
17 privilege log from the period after Mattel learned of the basis for its claims against
18 Bryant up to the filing of its complaint (the "Disputed Period"). Indeed, MGA
19 boldly claims that it is irrelevant whether such a log would serve any purpose.
20 Every case that has addressed the issue, however, has found that a key consideration
21 in determining the scope of a privilege log is whether the log would provide a
22 "material benefit" to the party demanding it. Where, as here, there is no material
23 benefit, there is no need for a document-by-document log.

24          MGA also unsuccessfully asserts that the creation of a detailed log for
25 the Disputed Period on the eve of trial would not impose an undue burden on Mattel.
26 A burden that would serve no purpose, however, is per se undue. Moreover, the
27 nature of the task itself and the Declaration of Timothy L. Alger both establish that
28 the burden MGA seeks to impose would be substantial. The Disputed Period covers

07209/2488380.1
-1-
Exhibit 4
Page 100
REPLY ISO MOTION FOR PROTECTIVE ORDER

1 Mattel's counsel's work to initiate the present action. The logging of all of these
2 documents would be a substantial task which would serve no purpose other than to
3 harass and burden Mattel, reveal aspects of Mattel's litigation strategy, and distract
4 its counsel from trial preparations. Moreover, discovery closed more than two
5 months ago.

6        The bulk of MGA's Opposition, however, argues that Mattel agreed to
7 log all privileged documents created prior to the filing of the present action. Despite
8 the volume of space it devotes to this argument, <u>MGA fails to offer a single</u>
9 <u>statement by any Mattel representative agreeing to undertake such a burden.</u>
10 Instead, MGA contends again and again that the parties agreed not to log privileged
11 documents created after the filing of Mattel's complaint against Bryant. While
12 Mattel agrees that the parties agreed to such a practice, it does not help MGA's
13 argument. An agreement about what to do after the lawsuit was filed is not an
14 agreement about what to do in the period leading up to the lawsuit and as to the
15 November 2003 time period, Mattel does not dispute it had notice of the claims it
16 asserted against Bryant in April 2004. MGA also erroneously claims that Mattel
17 "explicitly admits" that it was obligated to log all documents until the filing of its
18 complaint. What Mattel actually stated in its brief, however, was that "Defendants
19 are likely" to make such an argument. And so they have. But they have failed to
20 offer any evidence that Mattel entered into such an agreement.

21        Finally, MGA offers the declarations of defendants' former counsel to
22 "refute" the declaration of Michael T. Zeller. In fact, their declarations confirm that
23 the parties engaged in discussions about the privilege log in the Summer of 2006
24 and that they <u>never reached an agreement</u> on pre-filing logging practices.
25 Defendants' former lawyers cannot even keep their story straight, and disagree as to
26 whether Mattel informed them of its position that it should not be required to log
27 documents leading up to the filing of its complaint. One denies the subject was ever
28 discussed, whereas the other concedes Mattel stated its position on the issue.

Case 2:04-cv-09049-DOC-RNB   Document 3684-4   Filed 05/15/08   Page 12 of 79   Page ID
#:64921
Case 2:04-cv-09049-SGL-RNB      Document 3364      Filed 04/30/2008      Page 6 of 20

1   Notably, neither declaration offers any evidence that Mattel made any statement
2   agreeing to log documents after November 2003 and in the period leading up to the
3   filing of its complaint.

4           Accordingly, because a document-by-document privilege log would
5   provide no material benefit to Defendants but would impose an onerous burden on
6   Mattel on the eve of trial, the Discovery Master should grant Mattel's Motion and
7   limit its log to privileged documents created before November 24, 2003.

8

9   **I.    THERE IS NO REASON TO DEMAND THAT MATTEL PREPARE A**
10  **PRIVILEGE LOG ON THE EVE OF TRIAL**

11          **A.    MGA Concedes that a Document-by-Document Log Would**
12          **Serve No Purpose**

13          Despite submitting a 30-page opposition, three supporting declarations,
14  evidentiary objections, and over 150 pages of exhibits, MGA fails to explain what
15  purpose a document-by-document privilege log for the Disputed Period would
16  serve. Indeed, in a footnote MGA contends that it is irrelevant whether it has any
17  justification for demanding such a log. (Opp., at 27:22-24).

18          The law is to the contrary. One of the key considerations in cases
19  addressing the scope of privilege logs is whether a document-by-document log
20  would provide a "material benefit" to the party demanding it. See United States v.
21  Gericare Medical Supply Inc., 2000 WL 33156442, at * 4 (S.D. Ala. Dec. 11 2000)
22  (limiting scope of privilege log because document-by-document log would provide
23  no "material benefit" on party); In re Imperial Corp. of America, 174 F.R.D. 475,
24  478 (S.D. Cal. 1997) (focusing on whether detailed privilege log would provide
25  "material benefit" to party); SEC v. Thrasher, 1996 WL 125661, at * 1 (S.D.N.Y.
26  March 20, 1996). The demanding party cannot simply assert that the log would be
27  of "material benefit," but must make a "particularized showing of need." SEC v.
28  Nacchio, 2007 WL 21966, at *11 (D. Colo. Jan. 25 2007) (granting protective order

-3-

Exhibit 4
Page 102                                    REPLY ISO MOTION FOR PROTECTIVE ORDER

1  because opposing party failed to make a "particularized showing of need" for
2  detailed log).

3         Indeed, the case MGA relies on affirms that whether a document-by-
4  document privilege log would provide a "material benefit" is highly relevant.  In
5  PostX Corp. v. Secure Data Motion, the district court affirmed that "it may be
6  appropriate for the Court to permit the holder of withheld documents to provide
7  summaries of the documents by category or otherwise limit the extent of its
8  disclosure." 2004 WL 2623434, at *1 (N.D. Cal. June 9, 2004).  The dispositive
9  issue was whether preparation of a detailed log "would be of material benefit" to the
10 party demanding it.  Id.  In PostX, a detailed log was of material benefit because it
11 would have be highly relevant to the demanding party's claims.  Here, MGA has not
12 explained, much less proven, why a log for the Disputed Period would be relevant.[1]
13 This is a tacit admission that the preparation of a detailed log would serve no
14 purpose other than to harass and burden Mattel.  This is the very definition of undue
15 burden and standing alone is sufficient reason to grant Mattel's Motion.

16         **B.    A Document-by-Document Privilege Log Would Serve No**
17              **Purpose**

18         MGA's failure to explain any material benefit a detailed log would
19 provide is dispositive, but any such explanation would have failed because a
20 document-by-document log of the Disputed Period would serve no purpose.
21 Discovery closed more than two months ago, except for depositions that the Court
22 granted Mattel leave to take.  The trial is less than one month away.  The parties
23 should be focusing on pre-trial preparations, not pointless, time consuming tasks of
24 no benefit.

25

26     [1]   MGA cites to cases which hold that blanket assertions of privilege are not
    generally acceptable.  None of the cases, however, involved a request to narrow the
27  temporal scope of a privilege log.  Other than PostX, MGA simply ignores the many
28  cases addressing this issue.

Case 2:04-cv-09049-DOC-RNB   Document 3684-4   Filed 05/15/08   Page 14 of 79   Page ID
#:64923
Case 2:04-cv-09049-SGL-RNB      Document 3364      Filed 04/30/2008      Page 8 of 20

1          When push came to shove, MGA conceded by its silence that a detailed

2  privilege log would serve no purpose. The only <u>possible</u> purpose a detailed

3  privilege log might serve is if it were relevant to MGA's statute of limitations

4  arguments. But as explained in Mattel's Motion, the parties and the Court agree that

5  Mattel was on notice of its claims by November 24, 2003.[2] As a result, no statute of

6  limitation issue remains for the Disputed Period. Notably, MGA does not contest

7  the irrelevance of such a log to its statute of limitations defense. Thus, a document-

8  by-document privilege log for the period from November 24, 2003 to April 27, 2004

9  would serve no purpose and provide no material benefit to MGA.

10

11  **II.    MGA'S DEMAND WOULD IMPOSE AN UNDUE BURDEN ON THE**

12       **EVE OF TRIAL**

13          MGA contends that Mattel has not offered "a single shred of evidence"

14  that logging documents from the Disputed Period will be "overly burdensome."

15  (Opp., at 23:16-17). As an initial matter, the question is whether the burden MGA

16  seeks to impose on Mattel is <u>undue</u>. <u>Fed. R. Civ. P.</u> 26(c) (protective order should

17  be granted to prevent "undue burden"). Where – as here – the burden the opposing

18  party seeks to impose would serve no purpose, it is per se undue. On this basis

19  alone, the Discovery Master should grant Mattel's motion.

20       **A.   The Burden MGA Seeks to Impose is Undue Because It**

21            **Would Require Substantial Time and Expense**

22          MGA's assertion that the logging of documents would not impose a

23  significant burden ignores the nature of the task it seeks to impose on Mattel. MGA

24  downplays the importance of the time period at issue by dismissing it as a "short

25  five-month period." (Opp., at 24:9.) But those five months are the period from the

26  date on which Mattel learned that it may have claims against Bryant up to the filing

27

28     [2]  Motion, at 7:4-12.

-5-

Exhibit 4
Page 104

1    of Mattel's complaint.  It spans Mattel's counsel's investigation into the basis of
2    Mattel's potential claims, the legal analysis of the facts and claims, consultation with
3    potential witnesses and experts, and the preparation of the complaint itself.
4    Obviously, this was a busy time and resulted in the generation of a substantial
5    quantity of material, including investigative materials, the exchange of letters and
6    memos between Mattel and its lawyers, and the preparation and exchange of drafts
7    of the complaint and comments on the drafts.  Notably, MGA's demand
8    encompasses not only material in Mattel's legal files, but those of Mattel's litigation
9    counsel.  Such documents are especially sensitive and itemizing them on a privilege
10   log would be especially problematic.

11        Furthermore, the severity of the burden MGA seeks to impose is
12   established by the Declaration of Timothy L. Alger.  Mr. Alger has supervised
13   Mattel's production efforts and the preparation of the Mattel's privilege log in this
14   matter.  He is well placed to evaluate the burden the logging of all privileged
15   documents created in the months leading up to the filing of Mattel's complaint.  His
16   assessment that the task would require substantial attorney time and disrupt trial
17   preparations is uncontested.[3]

18        Finally, the preparation of a document-by-document privilege log for
19   the Disputed Period would not occur in a vacuum.  As MGA acknowledges, it
20   would impose the burden on the very eve of trial.  (Opp., at 24:12 20.)
21   Nevertheless, MGA argues that the proximity to trial is irrelevant because Mattel
22   agreed to log these documents years ago.  But, as discussed below, Mattel never
23   represented that it would log all documents leading up to the filing of its complaint.
24   MGA has failed to offer any evidence supporting its assertion, and its mantra-like
25   repetition of this contention does not make it true.

26
27
28   _____
     [3] Alger Dec., ¶ 5.

1        The declaration of MGA's former counsel concedes Mattel informed-
2   Defendants in the summer of 2006 that Mattel did not believe it was obligated to log
3   documents leading up to the filing of its complaint.[4]  And it is undisputed that
4   counsel for Mattel informed defendants again in January 2008 that it was not
5   Mattel's practice to log documents leading up to the filing of its complaint.[5]
6   Nevertheless, MGA did nothing for over a year-and-a-half, undoubtedly in
7   recognition that MGA and Bryant did not want to log their privileged documents in
8   the periods immediately preceding the filings of their own complaints.

9   **B.    The Burden MGA Seeks to Impose is Undue -- As Well as**
10         **Prejudicial -- Because it Would Reveal Mattel's Litigation**
11         **Strategy**

12        MGA does not dispute that the production of a document-by-document
13  privilege log would reveal aspects of Mattel's litigation strategy on the eve of trial.
14  Instead, MGA argues that such prejudice is irrelevant.  The only authority MGA
15  cites is PostX.  As discussed above, the dispositive issue in PostX was that a
16  document-by-document privilege log was highly relevant to the demanding party's
17  claims and would therefore be of material benefit.  Here, the log demanded would
18  serve no proper purpose.  To the contrary, it would disclose to defendants Mattel's
19  research preparatory to suing Bryant and Mattel's litigation strategy.  This, of
20  course, is not legitimate discovery.  In PostX the possibility of revealing litigation
21  strategy was only vaguely articulated.  Here, it is a very real threat:  MGA seeks
22  disclosure of Mattel's sources of information and what it did to build its case against
23  defendants.  The period to be logged is a crucial one, as Mattel was drafting its

24  _____

25   [4]  Declaration of Diana M. Torres, ¶ 3.  Diana Torres' characterization of the
     conversation as a "request" by Mattel that MGA "rejected" is mere "spin."  If MGA
26   did not like Mattel's views about the scope of the privilege log, MGA could have
     sought a Court order.  Mattel made no "request" and Ms. Torres was in no position
27   to "reject" it.
28   [5]  Alger Dec., ¶ 2.

1 | complaint, conducting legal analysis and investigating the underlying facts, all in
2 | preparation of initiating this action.

3 |      Several courts have found that the preparation of a document-by-
4 | document privilege log carries with it the very real threat of revealing litigation
5 | strategy.  See, e.g., United States v. Gericare Medical Supply Inc., 2000 WL
6 | 33156442 (S.D. Ala. Dec. 11, 2000) (detailed privilege log "would have revealed
7 | the identity of each person interviewed, information that itself would reveal
8 | plaintiffs' strategy and mental processes"); In re Imperial Corp. of America,
9 | 174 F.R.D. at 478 (granting protective order in part because "disclosure of the
10 | pattern of their counsel's consultants and communications might reveal aspects of
11 | their litigation strategy"); Thrasher, 1996 WL 125661, *1 (granting protective order
12 | because "disclosure of the pattern of [] attorney's consultations with other counsel
13 | might reveal some aspects of his litigation strategy").  Indeed, even PostX states that
14 | the revelation of litigation strategy is a factor that weighs against production of a
15 | document-by-document privilege log.  2004 WL 2623234, at *1.[6]

16 |      Accordingly, the Discovery Master should grant Mattel's motion for a
17 | protective order limiting the temporal scope of its privilege log.

18 |

19 | **III.    MATTEL NEVER AGREED TO LOG PRIVILEGED DOCUMENTS**
20 | **FROM THE PERIOD LEADING UP TO THE FILING OF ITS**
21 | **COMPLAINT**

22 |      MGA asserts that Mattel agreed to log all privileged documents created
23 | prior to April 27, 2004, but offers no evidence that actually supports that claim.

24 |

25 | [6] MGA also claims that Mattel's production of over 900,000 pages of
   | documents in this matter is "paltry" and complains that Mattel has served discovery
26 | requests on third parties.  (Opp., at 26:4-27:4.)  None of this is relevant to the issue
   | before the Discovery Master and Mattel therefore will not burden the Discovery
27 | Master by re-litigating the parties' discovery disputes.  This Motion should be
28 | decided on its own merits.

1  Instead, MGA points again and again to the parties' agreement that they need not log
2  documents created <u>after</u> Mattel filed its complaint. Mattel does not dispute that
3  agreement. Indeed, Mattel stated in its Motion that "[t]he parties have already
4  agreed that privileged documents created after April 27, 2004 . . . need not be placed
5  on their respective logs." (Motion, 6:8-10.) However, Mattel never agreed to log all
6  privileged documents created in the period leading up to the filing of its complaint.
7  The periods are distinct.

8  Attempting to confuse the issue, MGA compiles a compendium of
9  transcripts, letters, declarations, and other exhibits which it claims demonstrates the
10  existence of an agreement by Mattel that it would log privileged documents leading
11  up to the filing of its April 27, 2004 complaint. Not one of these documents
12  establishes that Mattel agreed to log all privileged documents after the discovery of
13  its claim in November 2003.

14  • The May 2, 2005 Transcript. The subject of the meet and confer
15  recorded in this transcript was discovery related to an alleged inquiry by Mattel into
16  an anonymous letter received by Mattel in 2002. MGA's expressed concern over
17  logging was based on its desire to identify documents relevant to its statute of
18  limitations defense. The parties' general logging practices were not at issue. The
19  limited scope of the discussions about privilege logs at the May 2005 conference
20  would be obvious from the transcript – except that MGA conveniently truncated the
21  portions submitted to the Discovery Master. Had MGA included one more page of
22  the transcript in its exhibit, it would have revealed that MGA's concern of the
23  discussions of a log were related to "the investigations [that] presumably <u>would</u>
24  <u>have taken place in 2002, which is certainly well before the action was</u>
25  <u>commenced.</u>"[7] Counsel were not discussing the logging of privileged documents
26  leading up to the filing of Mattel's Complaint against Bryant on April 27, 2004. It

27  ⎯⎯⎯⎯⎯⎯⎯
      [7] 5-20-05 Transcript, at 420:23-421:8, Exh. 1 to the Declaration of
28  Christopher E. Price (Price Dec.").

Case 2:04-cv-09049-DOC-RNB   Document 3684-4   Filed 05/15/08   Page 19 of 79   Page ID
#:64928
Case 2:04-cv-09049-SGL-RNB      Document 3364      Filed 04/30/2008      Page 13 of 20

1 │ was part of MGA's efforts to buttress its statute of limitations defense, which MGA
2 │ concedes is not the case for any log for the Disputed Period.

3 │        Moreover, the meet-and-confer was part of an ongoing discussion.[8]  No
4 │ agreement was reached at the conference and counsel for Mattel did not state that
5 │ Mattel would log all privileged documents leading up to the filing of the complaint.
6 │ There was no stipulation or Court order on the topic.  Counsel for Mattel simply
7 │ noted that it was customary that parties were not required to log documents created
8 │ after the filing of the complaint and said it "wouldn't be an issue" to log the 2002
9 │ documents mentioned by counsel for MGA.[9]

10 │        • The June 20, 2006 Transcript.  The subject of this hearing was again
11 │ discovery related to the alleged 2002 inquiry into an anonymous letter received by
12 │ Mattel.  As before, this was at issue because of its asserted relevance to MGA's
13 │ statute of limitation and laches defenses.  As conceded by Dale Cendali – then
14 │ counsel for MGA – "the issue here is that to the extent that they're claiming in
15 │ particular a work product anticipation of litigation in 2002, that is very relevant to
16 │ their statute of limitations defense."[10]  Even as to the 2002 documents, however,
17 │ counsel for Mattel raised concerns over the logging of any documents from Quinn
18 │ Emanuel's own files.  No agreement was reached, and the parties discussed the issue
19 │ further during July and August 2006.[11]

20 │        • Correspondence Regarding Logging.  MGA refers to various letters
21 │ the parties exchanged that refer to the logging of privileged documents.  Without
22 │ exception, every letter from counsel for Mattel correctly recounts the parties'
23 │ agreement that documents created after the filing of Mattel's complaint need not be
24 │ logged.  The issue of Mattel's logging of documents created during the Disputed
25 │

26 │   [8]   Id., Zeller Dec., ¶¶ 2-3.
27 │   [9]   5-20-05 Transcript, at 421:9-10, Exh. 1 to the Price Dec.
     │   [10]  6-20-06 Transcript, at 40:6-9, Exh. 3 to the Marsh Dec. (emphasis added).
28 │   [11]  Zeller Dec., ¶¶ 2-4.

-10-
Exhibit 4
Page 109

1  Period was not at issue in these circumstances. For example, MGA and Mattel
2  exchanged letters about MGA's request that it be permitted to remove documents
3  from its privilege log that post-dated the filing of Mattel's complaint.[12] The situation
4  involved MGA's log, not Mattel's. Moreover, the documents fell within the parties'
5  agreement that documents created after the filing of Mattel's complaint need not be
6  logged. Mattel's obligation regarding the logging of privileged documents created
7  in the period leading up to the filing of its complaint was not discussed.

8         • April 7, 2008 Transcript. The issue at this hearing was Mattel's
9  motion to disqualify Skadden Arps and one of MGA's experts, Christina Tomiyama.
10  The basis for Mattel's motion to disqualify, which Judge Lawson agreed with,[13] was
11  that Ms. Tomiyama had previously worked for Mattel and was privy to privileged
12  communications and discussions with Mattel's counsel about this lawsuit. MGA
13  nevertheless retained her, discussed her work while at Mattel, and designated her as
14  an expert.[14]  As part of its opposition to the disqualification motion, MGA argued
15  that Ms. Tomiyama had not been privy to any privileged communications while at
16  Mattel.  The basis for MGA's argument was that no such communications were on
17  Mattel's privilege log. As counsel for Mattel pointed out, however, the reason no
18  such communications were logged was because Ms. Tomiyama began working with
19  Mattel's counsel on this litigation "after the lawsuit was filed" and the parties had an
20  agreement not to log such documents.[15] As with the correspondence mentioned
21  above, the issue of Mattel's obligations to file pre-filing documents was not at issue
22  and was not addressed.

23

24
    _____

25  [12] Exh. 7 to the Marsh Dec.
    [13] April 8, 2008 Order re: Motion for Disqualification, at 1-2, Exh. 2 to the
26  Price Dec.
    [14] April 7, 2008 Hearing Transcript re: Mattel's Motion to Disqualify, at 10:1-
27  14:1, Exh. 4 to the Price Dec.
    [15] April 7, 2008 Transcript, at 78:2-6, Exh. 1 to the Marsh Dec.
28

Case 2:04-cv-09049-DOC-RNB   Document 3684-4   Filed 05/15/08   Page 21 of 79   Page ID
#:64930
Case 2:04-cv-09049-SGL-RNB      Document 3364      Filed 04/30/2008      Page 15 of 20

## IV.    MGA MISREPRESENTS MATTEL'S MOTION

In addition to misrepresenting the parties' agreement about logging, MGA mischaracterizes Mattel's motion by claiming that it concedes that Mattel "was obligated to log all privileged documents leading up to the filing of the complaint." (Opp., at 5:10-13.) The footnote on which MGA relies explicitly denies what MGA claims it states. The note states that "no agreement" about logging for the Disputed Period "was reached in the earlier discussions." (Motion, at 6:25 (emphasis added).) The selectively parsed language MGA quotes is part of a sentence which anticipates what MGA will argue in opposing this motion and then expressly refutes that argument:

Defendants are likely to assert in opposition to this Motion that
discussions about logging prior to the conference of counsel in the
summer of 2006, when the parties discussed MGA's first set of
Document Requests, confirm that Mattel was obligated to log all
privileged documents up to the filing of the complaint. Earlier
discussions focused on the logging of privileged documents relating to
Mattel's investigation of Bryant and MGA in 2002. No agreement was
reached in the earlier discussions. Moreover, no agreement was
reached as to general logging practices when the parties met-and-
conferred about the document requests in the summer of 2006.

(Motion, at 6 n. 10 (citations omitted) (emphasis added).)

Clearly, Mattel was not conceding any agreement about pre-filing logging practices was reached, but instead was merely anticipating MGA's argument to the contrary.

**V.    THE DECLARATIONS OF DEFENDANTS' FORMER COUNSEL FAIL TO SUPPORT MGA'S ARGUMENT**

MGA also claims that the Declaration of Michael Zeller has been "completely refuted" by the declarations of Defendants' former counsel, Diane M. Torres and Douglas A. Wickham. (Opp., at 22:17.) Tellingly, MGA submits no declaration from Ms. Cendali, with whom Mr. Quinn and Mr. Zeller most directly discussed the issues. Although Torres and Wickham assert that Mr. Zeller's declaration is "inaccurate," they confirm Mr. Zeller on key points. Both agree with Mr. Zeller that the parties engaged in a series of meet and confer sessions in the summer of 2006.[16] Both agree with Mr. Zeller that the parties did not reach an agreement about the logging of pre-filing privileged documents.[17] As Mr. Zeller states in his declaration, "Various proposals were discussed, but ultimately no resolution was reached."[18]

As to whether Mattel stated its position that it was not obligated to log privileged documents leading up to the filing of the complaint, Torres and Wickham contradict one another. Wickham insists that counsel for Mattel never "proposed any date earlier than April 27, 2004 after which the parties would not be required to log privilege documents."[19] Torres, on the other hand, concedes that counsel for Mattel argued that Mattel should "be allowed to forego logging documents between Mattel and its outside counsel for a short period of time preceding the filing of Mattel's complaint.[20] Thus, far from refuting Mattel's account, Ms. Torres confirms it.[21]

---

[16]  Wickham Dec., ¶ 5; Torres Dec., ¶ 3.
[17]  Wickham Dec., ¶¶ 4-6; Torres Dec., ¶ 3.
[18]  Zeller Dec., ¶ 4.
[19]  Wickham Dec., ¶ 6.
[20]  Torres Dec., ¶ 3.
[21]  Torres' further assertion that she nevertheless had no reason to believe that Mattel would not be logging privileged documents leading up to the filing of the complaint is not credible. That would have been obvious from the privilege log itself, which contains only a limited number of post-November 2003 documents that (footnote continued)

## VI. ALTERNATIVELY, DEFENDANTS SHOULD BE HELD TO THE SAME LOGGING REQUIREMENTS AS MATTEL

MGA also fails to explain why it should be subject to a different standard than Mattel for the logging of privileged documents. If Mattel is required to log documents leading up to the filing of its complaint in April 2004, Bryant should be required to log all allegedly privileged documents up to the filing of his complaint against Mattel in November 2004, and MGA should be required to log all allegedly privileged documents up to the filing of its complaint against Mattel in April 2005. There's nothing "retaliatory" about this – it is a matter of fairness. In consolidating the three actions, the Court did not relieve defendants of discovery obligations they would have had if the actions had remained separate.

Indeed, MGA does not even argue that such logging by defendants until the filing of the defendants' complaints would be burdensome. If defendants do not consider the logging of documents up until the filing of their complaints to be an undue burden or an interference in their trial preparations, they should readily agree to the same logging standards as they seek to impose on Mattel.

Finally, MGA's argument that Mattel should log up until the filing of their counterclaims in MGA's unfair competition case does not withstand any scrutiny. The District Court has ruled that the counterclaims "arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading," i.e., the Mattel complaint filed in April 2004, under the relations-back principles in Rule 15(c).[22] Thus, as a matter of law under Judge Larson's rulings, Mattel's privileged

were the subject of court orders or agreements of the parties relating to production and/or specific logging. The absence of documents in the log relating to Mattel's development of its case and drafting of a complaint between November 2003 and April 2004 certainly confirmed to defendants what Mattel's counsel had already stated. As Mr. Zeller's Declaration attests, Mattel stated its position but that the parties did reach a resolution of logging practices, and neither Torres or Wickham point to any statement by counsel for Mattel agreeing to log documents from leading up to the filing of its complaint.

[22] January 11, 2007 Order, Exh. 3 to the Price Dec.

1 │ documents relating to the time period leading up to that filing could have no

2 │ relevance to statute of limitations or laches, either

3

4 │ **Conclusion**

5 │                For all of the foregoing reasons, Mattel respectfully requests that the

6 │ Discovery Master grant this Motion and enter an order limiting the temporal scope

7 │ of Mattel's privilege log to documents created before November 24, 2003.

8

9 │ DATED:  April 29, 2008              QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
10

11                                      By_____

12                                         Timothy L. Alger
                                           Attorneys for Mattel, Inc.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-15-

1                                     **PROOF OF SERVICE**

2        I am employed in the County of Los Angeles, State of California. I am over the age of

3 eighteen years and not a party to the within action; my business address is 865 South Figueroa

4 Street, 10th Floor, Los Angeles, California 90017.

5        On April 29, 2008, I served true copies of the following documents described as:

6 **MATTEL, INC.'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

7 **LIMITING THE TEMPORAL SCOPE OF ITS PRIVILEGE LOG** on the parties in this

8 action as follows:

| 9<br>10<br>11 | Keker & Van Nest, LLP<br>John W. Keker, Esq./Michael H. Page, Esq.<br>Christa M. Anderson, Esq.<br>710 Sansome Street<br>San Francisco, CA 94111 | |
|---|---|---|

12      [√]    **BY MAIL:** I am "readily familiar" with the practices of Quinn Emanuel Urquhart

13 Oliver & Hedges for collecting and processing correspondence for mailing with the United States

14 Postal Service. Under that practice, it would be deposited with the United States Postal Service

15 that same day in the ordinary course of business. I enclosed the foregoing in sealed envelope(s)

16 addressed as shown above, and such envelope(s) were placed for collection and mailing with

17 postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary

18 business practices.

19      [√]    **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other

20 facility regularly maintained by the overnight service carrier, or delivered such document(s) to a

21 courier or driver authorized by the overnight service carrier to receive documents, in sealed

22 envelope(s) or package(s) designated by the overnight service carrier with delivery fees paid or

23 provided for, addressed to the person(s) being served.

24        I declare that I am employed in the office of a member of the bar of this court at whose

25 direction the service was made.

26        Executed on April 29, 2008, at Los Angeles, California.

27

28                                              Kelly Velázquez

07209/2459122.1

**Exhibit 4**
**Page 115**

1       **PROOF OF SERVICE**

2           I am employed in the County of Los Angeles, State of California.  I am over the age of

3   eighteen years and not a party to the within action; my business address is 865 South Figueroa

4   Street, 10th Floor, Los Angeles, California 90017.

5           On April 29, 2008, I served true copies of the following documents described as:

.6   **MATTEL, INC.'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

7   **LIMITING THE TEMPORAL SCOPE OF ITS PRIVILEGE LOG** on the parties in this

8   action as follows:

| | |
|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP<br>Thomas J. Nolan, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA  90071 | Overland Borenstein Scheper & Kim LLP<br>Mark E. Overland, Esq/David C. Scheper Esq<br>Alexander H. Cote Esq<br>601 West Fifth Street, 12th Floor<br>Los Angeles, CA  90071-2025 |

12          [√]      **[PERSONAL]** by personally delivering the document listed above to the person(s)

13   at the address(es) set forth above.

14

15          I declare that I am employed in the office of a member of the bar of this court at whose

16   direction the service was made.

17          Executed on April 29, 2008, at Los Angeles, California.

18

19

20                                          _____
                                                  Dave Quintana
21

22

23

24

25

26

27

28

07209/2459122.1

**Exhibit 4**
**Page 116**

Exhibit 5

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  (johnquinn@quinnemanuel.com)
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                  EASTERN DIVISION

12  CARTER BRYANT, an individual,            CASE NO. CV 04-9049 SGL (RNBx)
                                             Consolidated with
13              Plaintiff,                   Case Nos. CV 04-09059 & CV 05-2727

14       vs.                                 **DISCOVERY MATTER**

15  MATTEL, INC., a Delaware                 **[To Be Heard By Hon. Edward**
    corporation,                             **Infante (Ret.) Pursuant To Order Of**
16                                           **December 6, 2006]**
                Defendant.
17  _____              DECLARATION OF CHRISTOPHER
                                             E. PRICE IN SUPPORT MATTEL,
18  AND CONSOLIDATED ACTIONS                 INC.'S REPLY IN SUPPORT OF
                                             MOTION FOR PROTECTIVE ORDER
19                                           LIMITING THE TEMPORAL SCOPE
                                             OF ITS PRIVILEGE LOG
20
                                             Date:   TBA
21                                           Time:   TBA
                                             Place:  TBA
22
                                             **Phase 1**
23                                           Discovery Cut-Off:   January 28, 2008
                                             Pre-Trial Conference: May 19, 2008
24                                           Trial Date:          May 27, 2008

25

26

27

28

07209/2488125.1

Exhibit 5
Page 117

DECLARATION OF CHRISTOPHER E. PRICE

1      ## DECLARATION OF CHRISTOPHER E. PRICE

2           I, Christopher E. Price, declare as follows:

3           1.     I am a member of the bar of the State of California. I am Of

4    Counsel with Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel,

5    Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge, and if

6    called and sworn as a witness, I could and would testify competently thereto.

7           2.     Attached as Exhibit 1 is a true and correct copy of excerpts of the

8    transcript from the parties' May 20, 2005 conference, Vol. III.

9           3.     Attached as Exhibit 2 is a true and correct copy of the Court's

10   April 8, 2008 Order.

11          4.     Attached as Exhibit 3 is a true and correct copy of the Court's

12   January 11, 2007 Order.

13          5.     Attached as Exhibit 4 is a true and correct copy of excerpts of the

14   transcript from the April 7, 2008 hearing regarding Mattel's Motion to Disqualify.

15

16          I declare under penalty of perjury under the laws of the United States of

17   America that the foregoing is true and correct.

18          Executed on April 29, 2008, at Los Angeles, California.

19

20                                                    _____

21                                                    Christopher E. Price

22

23

24

25

26

27

28

# Exhibit 1

Exhibit 5
Page 119

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

```
MATTEL, INC., A DELAWARE     )
CORPORATION,                 )
                             )
        PLAINTIFF,           )
                             )
    VS.                      )  NO. CV 04-9059 NM(RNBX)
                             )
CARTER BRYANT, AN            )
INDIVIDUAL; AND DOES 1       )
THROUGH 10, INCLUSIVE,       )
                             )
        DEFENDANTS.          )
                             )
                             )
AND RELATED COUNTER-CLAIM.)
_____)
```

VOLUME III

TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

MONDAY, MAY 2, 2005

REPORTED BY:

KAREN E. KAY
C.S.R. NO. 3862, R.M.R., C.R.R.

LUDWIG KLEIN
REPORTERS & VIDEO, INC.
10868 KLING STREET
TOLUCA LAKE, CALIFORNIA 91602
800.540.0681        FAX 818.508.6326
e-mail: lois@ludwigklein.com

JOB NO.
41936LMF

Exhibit 5
Page 120

Exhibit 1
Page 2

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1                    UNITED STATES DISTRICT COURT

2                  CENTRAL DISTRICT OF CALIFORNIA

3
       MATTEL, INC., A DELAWARE    )
4      CORPORATION,                )
                                   )
5             PLAINTIFF,           )
                                   )
6         VS.                      )  NO. CV 04-9059 NM(RNBX)
                                   )
7      CARTER BRYANT, AN           )
       INDIVIDUAL; AND DOES 1      )
8      THROUGH 10, INCLUSIVE,      )
                                   )
9             DEFENDANTS.          )
                                   )
10                                 )
       CARTER BRYANT, ON BEHALF    )
11     OF HIMSELF, ALL PRESENT     )
       AND FORMER EMPLOYEES OF     )
12     MATTEL, INC., AND THE       )
       GENERAL PUBLIC,             )
13                                 )
              COUNTER-CLAIMANT,    )
14                                 )
          VS.                      )
15                                 )
       MATTEL, INC., A DELAWARE    )
16     CORPORATION,                )
                                   )
17            COUNTER-DEFENDANT.)
                                   )
18     ───────────────────────────)

19            TRANSCRIPT OF PROCEEDINGS, VOLUME III, TAKEN ON

20            BEHALF OF DEFENDANTS AT 2049 CENTURY PARK EAST,

21            LOS ANGELES, CALIFORNIA, COMMENCING AT 9:46

22            A.M. ON MONDAY, MAY 2, 2005, BEFORE KAREN E.

23            KAY, C.S.R. NO. 3862, R.M.R., C.R.R., A

24            CERTIFIED SHORTHAND REPORTER IN AND FOR THE

25            COUNTY OF LOS ANGELES, STATE OF CALIFORNIA.

                                                              415
                              VOLUME III
                          Exhibit 1
       Exhibit 5                Page 3
       Page 121

LUDWIG KLEIN REPORTERS & VIDEO, INC.    800.540.0681

1    APPEARANCES:

2        FOR THE PLAINTIFF AND COUNTER-DEFENDANT:

3            QUINN EMANUEL
             BY:  MICHAEL T. ZELLER
4                ATTORNEY AT LAW
             865 SOUTH FIGUEROA STREET
5            TENTH FLOOR
             LOS ANGELES, CALIFORNIA 90017
6            213.624.7707

7        FOR THE DEFENDANT AND COUNTER-CLAIMANT CARTER BRYANT:

8            LITTLER MENDELSON, P.C.
             BY:  DOUGLAS A. WICKHAM
9                ATTORNEY AT LAW
             2049 CENTURY PARK EAST
10           FIFTH FLOOR
             LOS ANGELES, CALIFORNIA 90067.3107
11           310.553.0308

12       FOR THE DEFENDANT M.G.A. ENTERTAINMENT, INC.:

13           O'MELVENY & MYERS, L.L.P.
             BY:  PAULA E. AMBROSINI
14               ATTORNEY AT LAW
                     AND
15               MATTHEW EASTUS
                 ATTORNEY AT LAW
16           400 SOUTH HOPE STREET
             FIFTEENTH FLOOR
17           LOS ANGELES, CALIFORNIA 90071.2899
             213.430.6000

18

19

20

21

22

23

24

25

                                          416
                    VOLUME III

Exhibit 5
Page 122

Exhibit 1
Page 4

LUDWIG KLEIN REPORTERS & VIDEO, INC.    800.540.0681

1    PRODUCE IN RELIANCE UPON.  I MEAN THERE'S NOTHING THAT'S

2    BEING WITHHELD, YOU KNOW, WITH RESPECT TO THE CATEGORIES

3    AND, YOU KNOW, TO THE EXTENT WE SAID WE WERE GOING TO

4    PRODUCE SOMETHING THAT'S BEING WITHHELD BECAUSE IT'S

5    CONFIDENTIAL.  BUT, OF COURSE, WE'RE PRODUCING IT

6    SUBJECT TO AND IN RELIANCE UPON THE PROTECTIVE ORDER.

7    AND IF FOR WHATEVER REASON WHEN WE DID THE RESPONSES,

8    THE PROTECTIVE ORDER HADN'T BEEN ENTERED YET, YOU KNOW,

9    I'M GLAD AND HAPPY TO CLARIFY.

10          MR. WICKHAM:  OKAY.  WHEN HE GETS DOWN, WE'LL

11   GET COPIES RUN OF THAT.

12          WHAT ABOUT THE PRIVILEGE ISSUE?

13          MR. ZELLER:  WELL, I THINK THE SAME COMMENTS

14   APPLY TO THAT.  CERTAINLY TO THE EXTENT THERE'S A

15   PRIVILEGED DOCUMENT THAT WOULD OTHERWISE BE RESPONSIVE,

16   YOU KNOW, TO THE REQUESTS, AGAIN, SUBJECT TO, YOU KNOW,

17   THE STATEMENTS THAT WE'VE MADE AND, YOU KNOW, TO THE

18   EXTENT WE'RE SAYING WE'RE PRODUCING SOMETHING, IT WOULD

19   CERTAINLY BE REFLECTED IN THE PRIVILEGE LOG.  THAT'S AT

20   LEAST THE INTENT.  I MEAN I GUESS ONE THING WE NEED TO

21   PROBABLY DISCUSS IS A MORE GENERAL PROPOSITION ON THAT

22   PARTICULAR ISSUE OF WHETHER WE'RE GOING TO PUT ANY

23   PARTICULAR TIME PARAMETERS ON, YOU KNOW, THE PRIVILEGE

24   LOG.

25          MR. WICKHAM:  THE TIMING OF PUTTING THINGS ON

419

VOLUME III

Exhibit 5
Page 123

Exhibit 1
Page 5

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    THE PRIVILEGE LOG?

2           MR. ZELLER:   NO.  I'M SORRY.   WHETHER OR NOT

3    THERE'S SOME CUTOFF DATE FOR THINGS THAT WOULD BE ON THE

4    PRIVILEGE LOG.   I MEAN CERTAINLY JUST AS A GENERAL

5    CUSTOMARY MATTER, MOST PEOPLE, OF COURSE, DON'T PUT ON

6    THE PRIVILEGE LOG, YOU KNOW, THINGS, YOU KNOW, AFTER THE

7    LAWSUIT IS COMMENCED.   YOU KNOW, I DON'T KNOW THAT WE'VE

8    EVER HAD AN EXPRESS OR EXPLICIT DISCUSSION ABOUT WHAT

9    UNDERSTANDING, IF ANY, THE PARTIES HAVE BEEN PROCEEDING

10   ON IN TERMS OF THAT.

11          MR. WICKHAM:   CERTAINLY MY NORMAL PRACTICE IS

12   THAT FROM THE DATE THAT THE ACTION IS FILED, I WOULD NOT

13   BE PUTTING THINGS ON THE PRIVILEGE LOG BECAUSE TO DO

14   OTHERWISE WOULD REQUIRE ME TO LIST MY ENTIRE LITIGATION

15   FILE.

16          MR. ZELLER:   RIGHT.

17          MR. WICKHAM:   SO AT LEAST IN TERMS OF MY

18   OPERATING PRESUMPTION, THAT'S WHERE I'VE BEEN GOING ON

19   THIS.

20          MR. ZELLER:   MY UNDERSTANDING IS THAT WE'VE

21   BEEN DOING THE SAME ON THAT, JUST SO WE'RE CLEAR ON

22   THAT.

23          MR. WICKHAM:   I MEAN FOR OUR PART, THE

24   SENSITIVITY TO THE ISSUE IS ONE THAT RELATES TO THE

25   OBJECTIONS THAT WE WERE EXPERIENCING DURING ALLAN KAY'S

420

VOLUME III

Exhibit 5
Page 124

Exhibit 1
Page 6

LUDWIG KLEIN REPORTERS & VIDEO, INC.    800.540.0681

1    DEPOSITION AND OTHER DEPOSITIONS WHERE QUESTIONS WERE

2    ASKED CONCERNING THE INVESTIGATION, AND THOSE QUESTIONS

3    WERE BEING MET WITH PRIVILEGE-TYPE OBJECTIONS.   AND ANY

4    INVESTIGATION WOULD HAVE TAKEN PLACE IF IT WAS PROMPTED

5    BY THE ANONYMOUS LETTER GOING TO MR. ECKERT.   THE

6    INVESTIGATIONS PRESUMABLY WOULD HAVE TAKEN PLACE IN

7    2002, WHICH CERTAINLY IS WELL BEFORE THE ACTION WAS

8    COMMENCED.

9              MR. ZELLER:   RIGHT.   THAT WOULDN'T BE AN ISSUE

10   THERE.   I DON'T HAVE OUR PRIVILEGE LOG, SO I DON'T KNOW

11   TO WHAT DEGREE THAT SORT OF THING IS ALREADY ON THERE.

12             MR. WICKHAM:   WE DIDN'T SEE ANYTHING ON THERE

13   THAT MET THE CATEGORIES IN THESE REQUESTS.

14             MR. ZELLER:   WHICH REQUESTS?

15             MR. WICKHAM:   WELL, IT'S 1 THROUGH 4.   I

16   SUPPOSE THERE'S ALSO ANOTHER SHADING OF THE RESPONSE

17   WITH THE QUALIFICATION THAT MATTEL'S PRODUCED DOCUMENTS

18   WHICH ARE CURRENTLY KNOWN BY MATTEL TO BE RESPONSIVE AT

19   THE TIME THE DOCUMENT REQUESTS WERE SERVED AND AT THE

20   TIME THEY WERE RESPONDED TO, MATTEL, IN OUR VIEW, WAS

21   TAKING A PARTICULAR VIEW AS TO THE SCOPE OR THE BREADTH

22   OF THE CASE.   THERE HAS BEEN SUBSEQUENT DISCOVERY ON

23   THESE ISSUES.   THERE HAVE BEEN SUBSEQUENT DOCUMENT

24   PRODUCTIONS ON THOSE ISSUES.   AND WE ALSO, YOU KNOW,

25   CERTAINLY HAVE THE BENEFIT OF JUDGE MANILLA'S OPINION ON

VOLUME III

Exhibit 5
Page 125                    Exhibit 1
Page 7

LUDWIG KLEIN REPORTERS & VIDEO, INC.  800.540.0681

1      THE MOTION FOR REMAND.  I GUESS FOR OUR PART, I MEAN IF

2      MATTEL HAS DOCUMENTS THAT ARE RESPONSIVE TO THE REQUEST,

3      EITHER THEY ARE OR THEY'RE NOT, THE SHADING OF THE

4      RESPONSE BY SAYING THAT THEY'RE CURRENTLY KNOWN BY

5      MATTEL TO BE RESPONSIVE COULD BE ONE THAT IS LIKE, WELL,

6      MATTEL DOESN'T KNOW WHAT THIS CASE IS ABOUT.  MATTEL

7      DOESN'T KNOW WHAT ITS DAMAGES ARE ABOUT.  AND SO AS A

8      CONSEQUENCE, IT COULD PROVIDE FOR THE ABILITY TO SAY,

9      YOU KNOW, GEEZ, WE DIDN'T THINK THAT IT WAS RESPONSIVE

10     THEN, BUT WE DO NOW, AND SO WE'RE GOING TO TAKE THIS OUT

11     TWO WEEKS BEFORE TRIAL AND USE THIS.

12         MR. ZELLER:  I DON'T THINK THAT'S WHAT WE'RE

13     SAYING THERE.  MAYBE THERE'S SOME MORE NUANCE, YOU KNOW,

14     POINT OF VIEW I CAN TRY AND PUT ACROSS ONCE WE HAVE THE

15     COPIES BACK HERE WITH THE OBJECTIONS.  BUT I CAN SORT OF

16     SAY THAT FUNDAMENTALLY THERE ARE A COUPLE THINGS GOING

17     ON WITH THESE REQUESTS, MORE WITH RESPECT TO REQUEST

18     NOS. 4 AND 5 AS OPPOSED TO 1, 2, AND 3.  BECAUSE I MEAN

19     WITH RESPECT TO 1, 2, AND 3, SUBJECT TO THAT KIND OF

20     STATEMENT, YOU KNOW, WE'VE SAID WE WOULD PRODUCE

21     ANYTHING ABOUT BRYANT THAT WE CAN FIND OR WE HAVE THAT

22     CERTAINLY PERTAINS TO, YOU KNOW, BRATZ OR WORK HE DID

23     FOR MATTEL, AND WE'VE LISTED THOSE THINGS.  IN GENERAL,

24     THAT'S A PRETTY EASY CATEGORY OF THINGS TO DEAL WITH;

25     HOWEVER, ONE REASON WHY SOME OF THESE RESPONSES ARE

Exhibit 1
Page 8

Exhibit 5
Page 126

```
 1                    REPORTER'S CERTIFICATE

 2

 3

 4            I, KAREN E. KAY, CSR. NO. 3862, A CERTIFIED

 5    SHORTHAND REPORTER IN AND FOR THE STATE OF CALIFORNIA,

 6    DO HEREBY CERTIFY:

 7            THAT SAID PROCEEDINGS WERE TAKEN BY ME IN

 8    SHORTHAND AT THE TIME AND PLACE HEREIN NAMED AND WERE

 9    THEREAFTER TRANSCRIBED INTO TYPEWRITING UNDER MY

10    DIRECTION, SAID TRANSCRIPT BEING A TRUE AND CORRECT

11    TRANSCRIPTION OF MY SHORTHAND NOTES:

12            I FURTHER CERTIFY THAT I HAVE NO INTEREST IN

13    THE OUTCOME OF THIS ACTION.

14

15

16    MAY 10, 2005    _____
                        KAREN E.  KAY
17                      CSR NO.  3862

18

19

20

21

22

23

24

25
```

542

Exhibit 5          Exhibit 1
Page 127           Page 9

Exhibit 2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No.    CV 04-09049 SGL(RNBx)                          Date: April 8, 2008

Title:    **CARTER BRYANT -v- MATTEL, INC.**

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC., v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
=====================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

           Jim Holmes
           Courtroom Deputy Clerk

PROCEEDINGS
(issued in chambers):         **ORDER GRANTING MOTION TO DISQUALIFY EXPERT**
                              **ORDER DENYING MOTION TO DISQUALIFY COUNSEL**

       Based on the findings of fact set forth on the record, and for the reasons stated therein, the Court **GRANTS** the motion to disqualify the expert, Christina Tomiyama.

       Toward that end, the Court **ORDERS** the following:

              Counsel for MGA, including in-house counsel, shall have no
       further contact with Ms. Tomiyama regarding this litigation except as
       necessary to effectuate the Court's orders.

              All counsel for MGA and Ms. Tomiyama, and any persons
       subject to their authority or control, or those acting in concert with them,
       are **ORDERED** to refrain from using, disclosing, or otherwise
       disseminating any of Mattel's privileged communications or attorney
       work product for any purpose.

              All counsel for MGA and Ms. Tomiyama, and any persons

MINUTES FORM 90                                                      Initials of Deputy Clerk: jh
CIVIL -- GEN                        Page 1

Exhibit 5
Page 129

Exhibit 2
Page 10

subject to their authority or control or those acting in concert with them, are **ORDERED** to return to Mattel and/or destroy all of Mattel's privileged and work-product materials.

Counsel for MGA is **ORDERED** to file under seal the original Tomiyama expert report, and to destroy all other copies thereof. If the original report has been destroyed, a copy of the report shall be so filed, along with a declaration of trial counsel regarding the original's destruction.

Counsel for MGA are **ORDERED** to arrange for a copy of this Order to be personally served on Ms. Tomiyama and shall file a proof of service with an accompanying declaration of the process server.

Should Ms. Tomiyama wish to serve in the future as an expert witness in any unrelated litigation, she is **ORDERED** to provide to counsel for all parties in that litigation a copy of this Order before entering into an agreement to provide expert witness opinions, reports, or testimony.

The Court **DENIES** the motion to disqualify counsel. Given the nature of the attorney-client privileged material and attorney work product possessed by Ms. Tomiyama and the particular circumstances of this case, this Court finds that it was incumbent upon Mattel to seek a protective order once she was no longer employed by Mattel. See Nalian Truck Lines, Inc. v. Nakano Warehouse & Transportation Corp., 6 Cal.App.4th 1256, 1264 (1992) ("[I]t is incumbent upon a party who knows that its former employees . . . possess privileged information to seek a protective order."). Moreover, a careful consideration of the relative burdens and costs to each party and to the Court does not warrant disqualification. See City of Santa Barbara v. Superior Court, 122 Cal.App.4th 17, 23 (2004) (noting that motions for disqualification should be "examined carefully" because attorney disqualification "imposes heavy burdens on both the clients and courts [because] clients are deprived of their chosen counsel, litigation costs inevitably increase and delays inevitably occur.").

Nevertheless, in addition to the steps taken in the injunction set forth above, in order to further limit any inadvertent disclosure of privilege, at the appropriate time, the Court will consider both a motion in limine to preclude Ms. Tomiyama from testifying as a fact witness and a motion in limine to preclude MGA from presenting its legal argument based on the ramifications of comparing two-dimensional drawings of Bratz dolls with the three-dimensional products.

The Court **DENIES** Mattel's request for attorney fees.

**IT IS SO ORDERED.**

MINUTES FORM 90
CIVIL -- GEN

Page 2

Initials of Deputy Clerk: jh

Exhibit 5
Page 130

Exhibit 2
Page 11

## NOTICE PARTY SERVICE LIST

Case No. __CV 04-09049 SGL(RNBx)__   Case Title __Carter Bryant v. Mattel, Inc.__

Title of Document __Minute Order of April 8, 2008__

| |
|---|
| Atty Sttlmnt Officer Panel Coordinator |
| BAP (Bankruptcy Appellate Panel) |
| Beck, Michael J (Clerk, MDL Panel) |
| BOP (Bureau of Prisons) |
| CA St Pub Defender (Calif. State PD) |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| Case Asgmt Admin (Case Assignment Administrator) |
| Catterson, Cathy (9th Circuit Court of Appeal) |
| Chief Deputy Admin |
| Chief Deputy Ops |
| Clerk of Court |
| Death Penalty H/C (Law Clerks) |
| Dep In Chg E Div |
| Dep In Chg So Div |
| Federal Public Defender |
| Fiscal Section |
| Intake Section, Criminal LA |
| Intake Section, Criminal SA |
| Intake Supervisor, Civil |
| PIA Clerk - Los Angeles (PIALA) |
| PIA Clerk - Riverside (PIAED) |
| PIA Clerk - Santa Ana (PIASA) |
| PSA - Los Angeles (PSALA) |
| PSA - Riverside (PSAED) |
| PSA - Santa Ana (PSASA) |
| Schnack, Randall (CJA Supervising Attorney) |
| Statistics Clerk |

| |
|---|
| US Attorneys Office - Civil Division -L.A. |
| US Attorneys Office - Civil Division - S.A. |
| US Attorneys Office - Criminal Division -L.A. |
| US Attorneys Office - Criminal Division -S.A. |
| US Bankruptcy Court |
| US Marshal Service - Los Angeles (USMLA) |
| US Marshal Service - Riverside (USMED) |
| US Marshal Service -Santa Ana (USMSA) |
| US Probation Office (USPO) |
| US Trustee's Office |
| Warden, San Quentin State Prison, CA |

| ✓ | ***ADD NEW NOTICE PARTY*** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Ambassador Pierre-Richard Prosper

Firm:

Address *(include suite or floor)*: P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

| *JUDGE / MAGISTRATE JUDGE (list below):* |
|---|
| |
| |
| |
| |

**Initials of Deputy Clerk** jh

Case 2:04-cv-09049-DOC-RNB  Document 3684-4  Filed 05/15/08  Page 43 of 79  Page ID
#:64952
Case 2:04-cv-09049-SGL-RNB    Document 3364-2    Filed 04/30/2008    Page 16 of 52

0002923694791

Exhibit 3

Exhibit 5
Page 132



P. Send

ENTERED
CLERK, U.S. DISTRICT COURT

JAN 12 2006

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

FILED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

            Plaintiff,

v.

MATTEL, INC.,

            Defendant.

and related actions.

CASE NO. CV-04-9049-SGL

(Consolidated with cases CV-04-9059 and CV-05-2727)

ORDER REGARDING MATTEL'S MOTION FOR LEAVE TO AMEND

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(D).

This case has, increasingly, become one of the proverbial tail wagging the proverbial dog.

Back in April, 2004, Mattel, Inc., ("Mattel") filed a complaint in Los Angeles County Superior Court against its former employee and the reputed creator of the BRATZ dolls, Carter Bryant. The complaint pressed five separate state-law theories relating to certain agreements Bryant signed while an employee with Mattel, namely, an Employee Confidential Information and Inventions Agreement ("Inventions Agreement") and a Conflict of Interest Questionnaire ("COI Questionnaire"). Although couched in state law terms and ostensibly pled as a simple employment action, lurking beneath the allegations in the complaint was, whether Bryant had either misappropriated Mattel's intellectual property or

Exhibit 5
Page 133

Exhibit 3
Page 13

1  resources in creating and/or developing the BRATZ dolls or whether he continued
2  to develop his BRATZ design while still working in Mattel's employ. In either event,
3  the rights to the BRATZ dolls could become the property of Mattel, either through
4  infringement or through operation of the agreements noted above. The case was
5  later removed to this Court and was assigned the case number CV-04-9059. MGA
6  Entertainment, Inc. ("MGA"), the maker of the BRATZ doll line, then intervened "to
7  protect its rights to Bratz dolls" that were at stake in the action. Mattel, Inc. v.
8  Bryant, 446 F.3d 1011, 1012 (9th Cir. 2006); see also id. at 1013 ("Mattel argues, 'a
9  significant risk of prejudice' to MGA [exists] if the ownership of rights to intellectual
10  property, i.e., the Bratz creations, were decided in the absence of MGA").

11       In the interim, Bryant filed a declaratory judgment action in this Court,
12  seeking for the Court to declare that his BRATZ doll creations did not infringe
13  Mattel's copyright in its Toon Teens products. See Court's July 18, 2006, Order at
14  3 (noting that, although "Bryant's complaint . . . makes reference to 'other Mattel
15  products,' . . . the substance of his allegations all address the product 'Toon
16  Teens'"). The declaratory judgment action was assigned the case number CV-04-
17  9049.

18       MGA then filed an action against Mattel in this Court broadening the scope
19  of the controversy beyond that concerned with the ownership rights to the BRATZ
20  doll line. MGA's complaint asserted various Lanham Act claims and their California
21  state law equivalent arising out of Mattel's alleged "habitual and unfair tactics of
22  competition-by-intimidation and serial copycatting of MGA's products." (Compl.
23  ¶ 7). In essence, although the prior actions were concerned with ownership in the
24  rights to the BRATZ doll line, the allegations in 05-2727 concerned whether there
25  had been unlawful efforts to block the marketing of those rights in the BRATZ dolls.
26  MGA's complaint did make mention of other products that were affected by Mattel's
27  alleged predatory business practices, but by far the largest portion of its complaint
28  concerned Mattel's conduct in undermining (or seeking to undermine) MGA's rival

2

Exhibit 5
Page 134

Exhibit 3
Page 14

1  line of BRATZ dolls.[1]

2      By Order dated June 19, 2006, the Court consolidated all three cases "for all
3  purposes" as they "involve[d] a number of common issues of law and fact." As the
4  Court later noted in its August 10, 2006, Order: "At its heart, this case asks the
5  question: Who owns the rights to the Bratz dolls?" Resolution of this question lies
6  at the heart of or, at the very least, affects many of the other claims set forth in
7  each of the three respective cases. For instance, even though the allegations in
8  05-2727 concern Mattel's alleged efforts at defeating the marketing of the BRATZ
9  dolls, resolution of who owned the rights to the BRATZ dolls could serve to moot
10 many of those allegations. It is hard to imagine how it is unlawful for a company to
11 thwart or otherwise undermine the marketing of a product it owns. Thus, if Mattel
12 owned the rights to the BRATZ dolls, many of the allegations in the 05-2727
13 complaint would become moot. That said, such consolidation did not do away with
14 the distinctions that do exist between the three cases. As the Court highlighted in
15 its consolidation order, when either party files a pleading in the case, "the first
16 paragraph of [that] document . . . shall inform the Court to which case(s) the
17 document relates."

18     On July 18, 2006, the Court dismissed Bryant's declaratory judgment action,
19 04-9049, finding there existed no reasonable apprehension of an imminent
20 copyright infringement claim being filed against him by Mattel based on Mattel's
21 Toon Teen intellectual property. See Court's July 18, 2006, Order at 4. The
22 Court's Order was predicated entirely upon counsel for Mattel's representation
23 during oral argument that it "will not maintain that Bratz infringes the copyright in
24 Toon Teens." Owing to this representation, the Court, in dismissing the declaratory
25 judgment action, made clear that any future "claim by Mattel of copyright

26

27      [1] That the marketing of the BRATZ dolls lies at the heart of the issues
        between the rival doll makers in the 05-2727 case is best illustrated by the Court's
28      discussion of those allegations in its August 26, 2005, Order, Granting in Part and
        Denying Part Mattel's Motion to Strike portions of MGA's complaint.

3

Exhibit 5
Page 135

Exhibit 3
Page 15

Case 2:04-cv-09049-DOC-RNB   Document 3684-4   Filed 05/15/08   Page 47 of 79   Page ID
#:64956
, Case 2:04-cv-09049-SGL-RNB     Document 3364-2     Filed 04/30/2008     Page 20 of 52

1  Infringement based on the Toon Teens product is barred by counsel's

2  representation." July 18, 2006, Order at 4.

3      Presently before the Court is Mattel's request for leave to file an amended

4  complaint in the 04-9059 action. The complaint broadens considerably the nature

5  of the action from its genesis in state court. Whereas before the complaint simply

6  sought to litigate alleged contractual and fiduciary breaches by Bryant while in the

7  employ of Mattel (no doubt geared toward procuring a legal basis for Mattel to lay

8  claim to the BRATZ doll line), the amended complaint adds five more defendants

9  and nine new legal claims, alleging a wide range of commercial disputes between

10  the rival doll makers that spans three countries. For instance, the amended

11  complaint now contains RICO claims, a misappropriation of trade secrets claim,

12  and various aiding and abetting claims all stemming from allegations that MGA

13  cherry-picked certain high-ranking Mattel executives in foreign markets (many also

14  named as defendants in the amended complaint) or designers (namely, Bryant),

15  and then enticed or encouraged those same individuals to steal various trade and

16  proprietary secrets (be it sales plans, sales projections, customer profiles, or

17  intellectual property) from Mattel and hand them over to MGA before going to work

18  at MGA.

19      Moreover, the amended complaint expands upon the existing breaches of

20  contract and fiduciary duty claims in the original complaint by expanding the

21  universe of former employees (namely, the cherry-picked executives) to whom

22  those claims now apply.

23      Finally, Mattel now makes plain what was always lurking in its original

24  complaint — a copyright claim, but one directed not only to Bryant but also to MGA,

25  MGA's Hong Kong subsidiary, and MGA's President and CEO Isaac Larian.

26  Moreover, Mattel characterizes its copyright claim somewhat differently from that at

27  issue in Bryant's declaratory relief action: "The Amended Complaint does not

28  include a claim for infringement of copyrights in Toon Teens, but rather

1  infringement of copyrights in Bratz." (Reply to MGA Opp. at 11). Toward that end,

2  Mattel has recently filed copyright registrations with the U.S. Copyright Office

3  claiming ownership in various BRATZ doll design drawings penned by Bryant.

4  A.  ANALYSIS

5  Federal Rule of Civil Procedure 15(a) provides that, once a responsive

6  pleading has been served, "a party may amend the party's pleading only by leave of

7  court or by written consent of the adverse party; and leave shall be freely given

8  when justice so requires." With no consent to Mattel's proposed filing proffered by

9  MGA and Bryant, determining whether to grant Mattel leave to file an amended

10  complaint is gauged by looking to the familiar formulation of factors set forth by the

11  Supreme Court in Forman v. Davis:

> In the absence of any apparent or declared
> reason—such as undue delay, bad faith or dilatory
> motive on the part of the movant, repeated failure to
> cure deficiencies by amendments previously allowed,
> undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment,
> etc.—the leave sought should, as the rules require, be
> 'freely given.' Of course, the grant or denial of an
> opportunity to amend is within the discretion of the
> District Court, but outright refusal to grant the leave
> without any justifying reason appearing for the denial is
> not an exercise of discretion; it is merely abuse of that
> discretion and inconsistent with the spirit of the Federal
> Rules.

20  371 U.S. 178, 182 (1962).

21  MGA and Bryant offer the following reasons for denying Mattel leave to

22  amend: (1) Mattel has long known of the factual predicates underlying its copyright

23  and intentional interference claims but delayed in asserting them; (2) the proposed

24  amendment to add the copyright claim and the intentional interference claims

25  (against the new defendants) are futile because they are barred by the applicable

26  statute of limitations; (3) the copyright claim had been brought in bad faith by Mattel

27  because of its prior public disavowal of an intent to assert such a claim; and (4)

28  MGA and Bryant would incur undue prejudice were the copyright claim added to the

5

Exhibit 5
Page 137

Exhibit 3
Page 17

1 suit because of alleged spoilation of evidence issues involving Mattel's ZEUS

2 computer system used by doll designers at Mattel and its e-mail system. None of

3 these arguments are persuasive.

4     1.   Awareness of Factual Predicate for Copyright and Intentional

5         Interference Claims

6     MGA argues that Mattel has long known about the factual predicate for its

7 recently added copyright claim, observing that, "[o]ver four years ago, in August

8 2002, Mattel CEO Bob Eckert received an anonymous letter stating that Bryant

9 created the project that became the 'Bratz' dolls — and worked with MGA to 'steal'

10 that project — while still employed at Mattel." (MGA Opp. at 9). Similarly, MGA

11 argues that Mattel has long known of the factual predicate for its intentional

12 interference claim with respect to Bryant's contract given that, "[b]y Mattel's own

13 admission, it learned in November 2003 — more than three years ago — that

14 Bryant had signed a contract with MGA 'dated as of' a month prior to his final day at

15 Mattel." (MGA Opp. at 11-12).

16     At the outset it must be observed that "[m]ere delay in proffering an

17 amendment does not justify denying leave to amend." Sierra Club v. Union Oil Co.

18 of California, 813 F.2d 1480, 1493 (9th Cir. 1987), vacated on other grounds by,

19 485 U.S. 931 (1988), and reinstated by, 853 F.2d 667 (9th Cir. 1988). Seizing upon

20 this point of law, Mattel argues that "only in . . . cases" when "granting leave would

21 require discovery to be reopened after summary judgment motions have been filed"

22 has the Ninth Circuit found the denial of leave "justified" based on the passage of

23 time alone. (Reply to MGA Opp. at 3). That is incorrect. There is a line of cases

24 from the Ninth Circuit finding that, if a "party seeking amendment knows or should

25 know of the facts underlying the amendment when the original complaint is filed,

26 the motion to amend may be denied." Sierra Club, 813 F.2d at 1493 (citing Jordan

27 v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982)). And, recently, the

28 Ninth Circuit upheld the denial of leave to amend based on the passage of time

6

Exhibit 5
Page 138

Exhibit 3
Page 18

1   even though the requested leave to amend was tendered <u>before</u> the time, as set

2   forth in a Rule 16(b) pre-trial scheduling order, for amending pleadings had expired.

3   See <u>AmerisourceBergen Corp. v. Dialysist West, Inc.</u>, 465 F.3d 946 (9th Cir. 2006).

4   The Ninth Circuit observed that, even when a request for leave to amend is timely

5   under a Rule 16(b) schedule for pretrial motions, the district court may nonetheless

6   still deny the request based on any of the <u>Forman</u> factors. <u>Id</u>. at 951-52. The Ninth

7   Circuit then noted that the issue of untimeliness (regardless of whether the

8   amendment is tendered "within the period of time allotted by the district court in a

9   Rule 16 scheduling order") in seeking to amend can constitute a justification for

10   denying leave to amend if "the moving party knew or should have known the facts

11   and theories raised by the amendment in the original pleading." <u>Id</u>. at 953.

12   Toward that end, the Ninth Circuit observed that "an eight month delay between the

13   time of obtaining a relevant fact and seeking a leave to amend is unreasonable."

14   <u>Id</u>. In this regard, the Ninth Circuit in <u>Dialysist</u> was unpersuaded by the fact that,

15   even though the moving party had known of the facts prompting the amendment for

16   a long period of time, there still remained eight more months of discovery for the

17   parties to marshal facts against the allegations raised by the amended pleading:

18   "Even though eight months of discovery remained, requiring the parties to scramble

19   and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was

20   tainted, would have unfairly imposed potentially high, additional litigation costs on

21   Dialysist West that could have easily been avoided had AmerisourceBergen

22   pursued its 'tainted product' theory in its original complaint or reply." <u>Id</u>. Thus,

23   absent "a satisfactory explanation" for the delay in amending the complaint, the

24   Court is well within its rights to deny leave to amend. <u>Id</u>.

25     Mattel proffers the following reasons for taking the time that it did before

26   presenting its amended complaint: (1) Acting out of an abundance of caution to its

27   obligations under Rule 11 to present "factual contentions [that] have evidentiary

28   support," Mattel waited until its claims were better supported by evidence

1  uncovered in discovery; and (2) the delay in the proceedings caused by "the year-
2  long stay and the parties' prior jurisdictional disputes" have left the case still in its
3  "nascent stage." (Reply to MGA Opp. at 2, 4).

4        The first reason is not well-founded. Rule 11 specifically allows parties to
5  aver factual allegations that "are likely to have evidentiary support after a
6  reasonable opportunity for further investigation or discovery" so long as the party
7  makes clear in its pleading that its factual contentions on those points are with the
8  caveat that they are based on a good faith belief that further discovery would
9  unearth evidence to support them. See FED. R. CIV. P. 11(b)(3). Simply put, Rule
10  11 did not stand in the way of Mattel averring the factual contentions it now claims it
11  "merely suspected" as being the case based on the limited information before it.
12  Mattel could have gone ahead and made such suspected factual allegations so
13  long as it caveated those claims with the declaration that it reasonably believed that
14  those allegations would be borne out by further discovery. Perhaps the time by
15  which Mattel could have reasonably believed such allegations would be borne out
16  by further discovery occurred after the dates noted by MGA, but it is hard to fathom
17  that such materialization took three or four years to occur.

18        The second reason would have some merit to it but for the fact that the
19  information that alerted (or should have alerted) Mattel to the existence of its now
20  asserted copyright and intentional interference claims was brought to Mattel's
21  attention well before the case was stayed on May 20, 2005. The stay, therefore,
22  did not operate as an obstacle to Mattel asserting its claims; nor even if it did, the
23  stay does not explain why Mattel waited nearly six months after the stay was lifted
24  on May 16, 2006, to present those claims now.

25        All of that being said, the one thing that gives the Court pause in denying
26  leave based on the tardiness in Mattel's presentation is the lack of any evidence
27  that MGA or Bryant have been prejudiced by the delay. Delay unconnected to
28  some showing of prejudice, be it prejudice to the parties or disruption in judicial

8

Exhibit 5
Page 140

Exhibit 3
Page 20

1   management of the case, does not suffice to deny granting leave to amend.  The

2   Ninth Circuit has noted that, "where a defendant is on notice of the facts contained

3   in an amendment to a complaint, there is no serious prejudice to defendant in

4   allowing the amendment" even if it is made tardily.  Sierra Club, 813 F.2d at 1493.

5   Indeed, the denial of leave was proper in the Dialysist case not simply because of

6   the length of the delay, but because the delay itself was "detrimental" in that it

7   would entail the opposing party to have "unfairly" incurred "potentially high,

8   additional litigation costs" that could have been avoided if the moving party had

9   made clear its intentions earlier.  465 F.3d at 953.

10      Here, as well demonstrated in Mattel's papers, it is readily apparent from the

11  pleadings filed by MGA and Bryant in this case that both have been aware for some

12  time of the factual predicates now underlying Mattel's copyright claim and

13  intentional interference claim.  (See MGA Opp. at 5 ("As Bryant and MGA

14  suspected at the time of filing — and Mattel now concedes by conduct — those

15  deceptively-pled state-law claims [in 04-9059] were copyright infringement claims all·

16  along")(emphasis added)).  The parties have engaged in meaningful discovery

17  regarding many of the facts touched upon by these new claims, be it tracking down

18  experts in various forensic fields or taking depositions of various of the key players

19  to those claims.  In point of fact, in their papers filed with this Court before this

20  present motion, both Bryant and MGA have made it abundantly clear that they have

21  long suspected that a copyright infringement claim was in the offing as evidenced

22  by Bryant's filing of the declaratory judgment action and MGA's intervention in the

23  05-9059 matter to protect its rights to the BRATZ dolls.  Similarly, MGA and Bryant

24  have been on notice to the facts comprising the interference claim concerning

25  Bryant's contract as evidenced by the identity of the individuals who have been

26  deposed by Mattel, as well as the nature of the questions posed and the testimony

27  proffered at those depositions.  MGA's argument that, with the amendments, it

28  faces the prospect of defending "against stale claims" owing to faded memories and

9

Exhibit 5
Page 141

Exhibit 3
Page 21

1   loss of documents caused by the great passage of time, (see MGA Opp. at 3, 13),

2   is diminished by the fact that (no doubt owing to the sophistication of all counsel

3   involved) discovery on these very issues have been proceeding apace by both

4   sides long before Mattel filed its proposed amendments. This is simply not a case

5   where "additional litigation costs" will be "unfairly" visited upon Bryant and MGA by

6   allowing the proposed amendments; much of those costs have already been borne

7   by the parties for some time.

8          2.      Spoilation of Evidence

9          MGA next argues that Mattel's delay in bringing the amended complaint has

10  caused it prejudice as, in the interim, critical pieces of evidence have been or are

11  suspected of having become lost. For instance, MGA asserts that Mattel's Rule

12  30(b)(6) witness concerning its Zeus computer system, Julia Marine, testified that,

13  "although Mattel identified and segregated its most relevant backup tapes available

14  for Zeus, Mattel allowed its tape backup system to expire the database for those

15  backup tapes, thereby eliminating all information about what was actually stored on

16  those backup tapes." (MGA Opp. at 9-10). Information on the Zeus computer

17  system is critical because of Mattel's assertion that part of its copyright claim rests

18  on Bryant's exposure to Mattel development programs. (First Am. Compl. ¶ 26(a)).

19  As explained by MGA: "[C]oncept data and drawings created by [Mattel] design

20  center personnel are stored on Zeus. Thus, the electronic documents stored on

21  Zeus – which should include the metadata showing who created, edited and

22  accessed Mattel's concept drawings and designs – during the time Bryant worked

23  in the design center at Mattel is vitally important to defending against Mattel's

24  claims." (MGA Opp. at 14). MGA's argument is neither an accurate

25  characterization of Ms. Marine's testimony nor of the nature of Mattel's exposure

26  claim.

27         Ms. Marine did not testify that the information on the backup tapes (some

28  fifty in total) was lost, but rather that Mattel no longer carried the type of hardware

10

Exhibit 5
Page 142

Exhibit 3
Page 22

1    that could restore the information still found on those tapes:

2          Q.    So if you wanted to restore that 2002 backup
3                   tape[s] then, how would you go about doing that?

                     . . . .

4          A.    You need the hardware so if we don't have the
5                   hardware — if [the technology used by the tape
                   is] DLT we don't have the hardware and you've
6                   got to buy it and – well, first you have to find a
                   place to put it with adequate power which we
7                   don't have in the design center. You need to
                   have a tape library. You need to have the tape
8                   drives that carried those tapes. You need a
                   server that has the capability to – that's big
9                   enough to handle all of the hardware. You need
                   the software – the license for the backup
10                  software[, Net Backup]. You need the disk space
                   to restore it to and then you have to start reading
11                  in all those tapes.

12         Q.    You said that you don't have that in the design
13                  center. Do you have that hardware anywhere
                 else in the company?

14         A.    DLT? No, no.

15         Q. ·  At what point did you get rid of the hardware?

16         A.    Once the last backups — DLT backups expired
17                  so it would have been a couple years ago
                 probably.

18   (Decl. Diana Torres, Ex. K at 118-119).

19       The above testimony clearly denotes the difficulty in restoring what was on

20   Mattel's Zeus computer system during the relevant time frame, but it certainly does

21   not demonstrate that the information on those backup tapes has been "eliminated"

22   or forever lost. Undoubtedly it will be a costly endeavor to recover that information

23   (not to mention to later search and sort through it); but to argue, as MGA does, that

24   the information is "unavailable" or "lost", (MGA Opp. at 9, 14), exaggerates its

25   plight. Indeed, Ms. Marine's testimony indicates that the difficulty in retrieving the

26   information on the Zeus backup tapes has been present for some time (maybe

27   since 2004 or perhaps even earlier). This is important because it undermines

28   MGA's claim that Mattel's undue delay in bringing its amended complaint will cause

Exhibit 5
Page 143

Exhibit 3
Page 23

Case 2:04-cv-09049-DOC-RNB   Document 3684-4   Filed 05/15/08   Page 55 of 79   Page ID
#:64964
Case 2:04-cv-09049-SGL-RNB     Document 3364-2     Filed 04/30/2008     Page 28 of 52

1  it to suffer prejudice it otherwise would not have faced if the amendments were
2  brought sooner.  Such prejudice has been present for years, and Mattel's failure to
3  bring its amended complaint sooner would not have changed this situation.

4          Similarly, MGA's point that access to what was on the Zeus computer
5  system is vital in demonstrating that Bryant was not exposed to or otherwise did not
6  hack the system to steal other designers work is diminshed to some extent by the
7  fact that Bryant himself testified that he did not use the Zeus computer system and
8  was "pretty much computer illiterate" while employed at Mattel.  Admittedly, the
9  ability to point to information on the Zeus system backup tapes to prove that Bryant
10  did not access other designers drawings or to prove the date those drawings were
11  created by those other designers would be useful evidence to negate Mattel's
12  factual claims.  Nonetheless, such evidence still would not discount other avenues
13  outside of the Zeus computer system by which Mattel could seek to prove that
14  Bryant was exposed to its copyrighted works, e.g., witness testimony that Bryant
15  saw drawings of the same posted on other designers' cubicles.

16          MGA next surmises that Mattel's e-mail records have disappeared, not
17  because it has any proof on that point, but simply because Mattel has postponed
18  the deposition of the individual most knowledgeable of Mattel's e-mail records until
19  after the hearing on Mattel's motion for leave to amend.  (MGA Opp. at 10).
20  Speculation of spoilation does not suffice.  That MGA's argumentation on this point
21  is nothing more than speculation is best exhibited by the evidence it has proffered
22  in support of its argument:  "[I]f the sole retained backup for Zeus is no longer
23  available, it is not hard to imagine that Mattel's electronic mail archives are similarly
24  out of reach."  (MGA Opp. at 15 (emphasis added)).  MGA then makes much of a
25  deposition from a Mattel executive, Alan Kaye, who testified that e-mails in his
26  inbox would be automatically deleted if they had remained there for more than a
27  certain time period.  (Decl. Diana Torres, Ex. H at 292-93).  MGA takes from this
28  acknowledgment that Mattel has an "automatic email deletion system" that has

12

Exhibit 5
Page 144

Exhibit 3
Page 24

1   compromised Mattel's "duty to preserve documents." (MGA's Opp. at 14).

2   Noticeably absent from MGA's argument is any evidence that the e-mails so

3   deleted from a Mattel employee's inbox are forever lost or, as is far more likely,

4   whether such information remains or is otherwise archived on some backup file on

5   Mattel's computer system. Absent concrete proof that spoilation has occurred,

6   nothing in MGA's argument forms a basis for denying Mattel its requested leave to

7   amend.

8         3.      Statute of Limitations

9         MGA next argues that Mattel's copyright and intentional interference claims

10  are futile as both are barred by the applicable statute of limitations. This argument

11  was pressed emphatically at oral argument. With respect to the copyright claim,

12  MGA argues that the applicable statute of limitations is three years, with the

13  limitations period accruing from when a party has knowledge of a violation or when

14  a reasonably diligent person would have been put on inquiry of the infringement.

15  (MGA Opp. at 16 (citing Roley v. New World Pictures, 19 F.3d 479, 481 (9th Cir.

16  1994)). MGA argues that Mattel was put on notice about its copyright claim in

17  August, 2002, upon the receipt of the anonymous letter to Mattel's CEO that Bryant

18  had stolen the idea for BRATZ while working at Mattel. Thus, according to MGA,

19  the limitations period on Mattel's claim expired in August, 2005, rendering Mattel's

20  current copyright claim stale.

21        The problem with MGA's analysis is it fails to take into account the relations-

22  back principles found in Rule 15(c), which provides that "[a]n amendment of a

23  pleading relates back to the date of the original pleading when "the claim . . . in the

24  amended pleading arose out of the conduct, transaction, or occurrence set forth . . .

25  in the original pleading," or if such relation back is otherwise permissible by the

26  state "law that provides the statute of limitations applicable to the action." By

27  MGA's own admission Mattel's copyright claim arises out of the same conduct or

28  transaction contained in the original complaint filed in April, 2004, well within the

13

Exhibit 5
Page 145

Exhibit 3
Page 25

1   applicable limitations period.[2] (MGA Opp. at 12 ("These very same allegations
2   [contained in the original complaint] underlie the copyright infringement and
3   intentional interference contract claims Mattel now seeks to allege against MGA,
4   Mr. Larian and Bryant")).

5       MGA's statute of limitations argument with respect to the intentional
6   interference claims fares no better. According to MGA, the applicable statute of
7   limitations is two years for an intentional interference with contract claim and Mattel
8   was aware of the facts alerting it to this claim (insofar as Bryant's contract is
9   concerned) on November 24, 2003, when it learned "that Bryant worked with MGA
10  to develop the 'Bratz' dolls prior to his last day of employment by Mattel and, hence,
11  prior to the expiration of his contractual relationship with Mattel."[3] (MGA Opp. at 18
12  (citing Knoell v. Petrovich, 76 Cal. App.4th 164, 168 (1999)) . Such a time line
13  would, according to MGA, mean that the applicable limitations period expired on
14  Mattel's interference with Bryant's contract claim on November 24, 2005, well
15  before Mattel sought leave to file its amended complaint. (Id). The problem again
16  with MGA's argument is that it ignores that through Rule 15(c) Mattel's intentional
17  interference claim would relate back to when it filed its original complaint in April,
18
19

20      [2] The same would appear to be true — that the amendments would be timely
21  — if the amendments related back to Mattel's answer (filed on May 13, 2005) to
    MGA's complaint in the 05-2727 case.
22

23      [3] With respect to Mattel's interference with contract claim as to one of its
    former executives, Ron Brawer, MGA claims Mattel was put on notice of that claim
24  on September 17, 2004, when Brawer informed Mattel that he leaving to go to work
    for MGA. (MGA Opp. at 19-20). The problem with this argument is that nothing from
25  that simple event — Brawer's declaration of his intent to leave — in any way would
    apprise Mattel that MGA had encouraged Brawer to engage in nefarious conduct
26  (the stealing of proprietary information) causing Brawer to breach his contract with
    Mattel that he would not do anything to help a competitor while working for them.
27  MGA's contention that Mattel must have known of those misdeeds in mid-September
    is nothing more than speculation. Futility cannot be founded on what might or might
28  not be the case; either a claim is futile to bring or it is not.

14

Exhibit 5
Page 146

Exhibit 3
Page 26

1   2004, well before the limitations period expired.[4]

2       Accordingly, MGA's futility argument is not well-founded.

3       **4.**    <u>Prior Disavowals of Asserting a Copyright Claim</u>

4       Finally, MGA takes umbrage with the cageyness to which Mattel has taken in

5   this case as to whether or not it is asserting a copyright infringement claim against

6   it. To MGA, such ducking and weaving on Mattel's part renders its effort to now

7   bring such a copyright claim as one done in bad faith. No doubt the Court itself has

8   been subjected to Mattel's overly vague statements on this point, but in the end

9   nothing in those statements has ever foreclosed the possibility that such a claim

10   may be in the offing. Indeed, during the oral argument on Mattel's motion to

11   dismiss Bryant's declaratory judgment action, the Court pressed Mattel's counsel as

12   to whether it would assert such a copyright claim against Bryant as it is currently

13   seeking to do. The most that Mattel's counsel would proffer was that Mattel would

14   not assert a copyright claim against Bryant based on Mattel's copyright rights in

15   TOON TEENS. At that point, the Court directed the parties to engage in a meet

16   and confer based on counsel for Mattel's representation and to provide a report to

17   the Court based on those discussions. The report submitted to the Court made

18   clear that, although Mattel was willing to accede that it would not bring a copyright

19   claim based on TOON TEENS, it refused to accede to Bryant's broader request

20   that "Bryant 'never copied anything' and that no Mattel product has any 'relevance'

21   to any claim that Mattel has or ever will assert against Bryant." This by itself should

22   have dispelled any illusion either Bryant or MGA was operating under that Mattel's

23   prior statements had foreclosed any potential copyright claim against them.[5]

24

25       [4] Again the relations-back principle would also seem to render its claim timely
26   if it were filed as an amended answer (the original having been filed in May, 2005) in
     the 05-2727 case.

27       [5] MGA also argues that Mattel's effort to substitute MGA and its CEO, Isaac
28   Larian, for the "Doe" defendants listed in its original complaint is improper because
     Mattel knew of their identity when it filed the original complaint. The argument is

15

Exhibit 5
Page 147

Exhibit 3
Page 27

1    That said, Mattel's allegation in the amended complaint as to how it is

2  seeking to lay claim to the copyright in BRATZ is disconcerting. Paragraph 26,

3  subsection a, in the amended complaint alleges that Bryant "misappropriated and

4  misused Mattel property" by "using his exposure to Mattel development programs to

5  create the concept, design and name of Bratz." (First Am. Compl. ¶ 26(a)). Such

6  "exposure" could include Bryant misappropriating the Mattel design concept in

7  TOON TEENS in drawing his inspiration for the BRATZ doll. Were Mattel's

8  copyright claim so predicated it would be barred by this Court's July, 2006, Order,

9  dismissing Bryant's declaratory judgment action. Mattel was pressed on this point

10  during oral argument and conceded that such "exposure" to Mattel "development

11  programs" did not include TOON TEENS. With this representation, nothing in

12  Mattel's proposed copyright claim is barred under the rubric of bad faith.

13         5.      Judicial Economy Considerations

14    In his opposition, Bryant adds an additional reason for denying leave beyond

15  those contained in MGA's papers — the amendment would muddy the waters in the

16  04-9059 by adding "tangential" issues that would only serve to delay resolution of

17  the key issue lying at the heart of the complaint: Who owns the rights to the

18  BRATZ line of dolls. (Bryant Opp. at 2 ). Bryant notes that the case has proceeded

19  apace in moving toward resolving that issue, and the amendment would "transform

20

21

22  misplaced. As made clear by Mattel, California law allows a plaintiff to substitute in a
defendant for a "Doe" if the plaintiff was ignorant of that defendant's identity or

23  ignorant of the basis for liability at the time the complaint was filed. See Miller v.
Thomas, 121 Cal.App.3d 440 (1981). MGA does not dispute this legal contention

24  but at oral argument disputed that Mattel did not know the basis for liability against
itself or Mr. Larian due to the "uncanny" similarity between the allegations averred in

25  the original complaint and those now proffered against the two in the amended
complaint. Specifically, MGA notes that the original complaint spoke of Bryant

26  working for one of Mattel's competitiors and of that employee's theft of Mattel's
intellectual property before leaving to work for that competitior. At most, all this

27  shows is that Mattel knew that Bryant went to work for MGA, not that MGA or Mr.

28  Larian encouraged Bryant's alleged unlawful behavior recited in the original
complaint.

●                                    ●

1   what Mattel has always claimed was a straightforward employment action against

2   an individual defendant into a global commercial dispute against Mattel's primary

3   competitor, MGA," that "will last years" thereby "delay[ing]" resolution of who owns

4   BRATZ.[6]  (Bryant Opp. at 2).  Mattel argues that "the law does not deny leave to

5   amend because claims are 'tangential'" and then reiterates its point that some

6   showing of prejudice, namely, seeking leave after expiration of discovery, is

7   necessary.  (Reply to Bryant Opp. at 3).  That is not entirely correct.

8       As noted previously, the Ninth Circuit recently upheld a denial for leave to

9   amend because the amendment would have "drastically changed" the litigation,

10  even though the leave request was tendered before the time, as set forth in a Rule

11  16(b) pre-trial scheduling order, for filing a motion to amend had expired and well

12  before the discovery cut-off.  See AmerisourceBergen Corp. v. Dialysist West, Inc.,

13  465 F.3d 946, 953 (9th Cir. 2006).  In justifying its reasoning the Ninth Circuit cited

14  approvingly to the following statement from a well-respected treatise: "If an

15  amendment substantially changes the theory on which the case has been

16  proceeding and is proposed late enough so that the opponent would be required to

17  engage in significant new preparation, the court may deem it prejudical." Id. at 953

18  n.2 (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,

19  FEDERAL PRACTICE AND PROCEDURE § 1487 (2nd ed. 1990)).  Thus, Dialysist

20  recognized that the introduction of "different legal theories" and/or proof of

21  materially different facts well into the litigation can itself be a basis for finding

22  prejudice regardless of whether the period for discovery has expired (or is even

23  close to expiring) or the parties have already filed summary judgment motions.  Id.

24  at 953-54.

25       Although the parties can safely be said to be at this point well into the

26

27       [6] Bryant also brings intricate legal arguments about the sufficiency of the
28  allegations Mattel has averred in building its RICO claims against him.  Such
    considerations are best left to be resolved on a properly filed motion to dismiss.

                              17
Exhibit 5                                           Exhibit 3
Page 149                                           Page 29

1  litigation in this consolidated action (as evidenced by the protracted discovery

2  disputes contained in the docket sheet that the parties have had before the

3  magistrate judge and now the special master, and the litigation of motions to

4  dismiss in both the 04-9049 and 04-9059 cases), the fact remains that, as Mattel

5  has made painfully clear in its papers, no scheduling order has been entered in this

6  case.[7] This takes away somewhat from the prejudice Dialysist found to exist when

7  a "drastic change [in a party's] litigation theory" takes place mid-stream in the

8  litigation process. Id, at 953. Simply put, without a schedule for the filing of pre-trial

9  motions and other matters (e.g., discovery cutoff), the parties have been given free

10  reign in how to conduct the litigation in this case.

11  That the delay in bringing the proposed amendments and the relative length

12  of time into the litigation when those amendments were brought may not neatly fold

13  into Dialysist's reasoning does not mean that leave must nonetheless be granted.

14  The 04-9059 action, as it is presently constituted, is not a complex one. It asks a

15  rather narrow and straightforward question — Did anything from Bryant's

16  employment at Mattel during the 1999-2000 period give Mattel ownership rights to

17  the BRATZ doll line? The proposed amendments would radically alter the litigation

18  in that case to include far ranging disputes involving multiple parties and concerning

19  events not connected with the BRATZ ownership issue. That the original action

20  was a relatively simple and straight-forward matter raises another point beyond the

21  change in the action's litigation posture — whether entangling the rival doll makers'

22  other commercial disputes into this particular case would serve to muddy the waters

23  and make the matter that much more difficult to manage from the Court's

24  perspective.

25

26  [7] Mattel's repeated refrain that the matter is in its nascent stage as evidenced by the fact that the parties only just recently exchanged in initial disclosures is misleading. The exchange of initial disclosures referred to by Mattel is in the 05-2727 case. With respect to the 04-9059 case it appears that such initial disclosures were completed long ago as evidenced by the fact that discovery disputes appeared in that case as far back as January, 2005.

27

28

18

Exhibit 5
Page 150

Exhibit 3
Page 30

1    As has long been recognized, equally important in determining whether to

2    grant such leave is what impact such amendments would have on the court's ability

3    to manage the case. See 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE

4    § 15.15[1] at 15-42.1 to 15-43 (3rd ed. 2006)("A court should also consider judicial

5    economy and its ability to manage the case. . . . The court should also temper the

6    policy favoring freely granting leave to amend with consideration of the ability of the

7    district court to manage the case adequately if amendment is allowed"). As Judge

8    Clark for the Fifth Circuit once observed: "In keeping with the purposes of the rule,

9    the court should consider judicial economy and whether the amendments would

10   lead to expeditious disposition of the merits of the litigation. Finally, the court

11   should consider whether the amendment adds substance to the original allegations,

12   and whether it is germane to the original case of action." Chitimacha Tribe of

13   Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982); see also

14   Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir.

15   1987)("General considerations of judicial economy also justify allowing the

16   amendments. The violations included in the proposed amendment relate to the

17   same subject matter as the original complaint. Allowing the amendment will further

18   the federal policy of 'wrapping in one bundle all matters concerning the same

19   subject matter.'").

20   Mattel's amendments do not add substance to the claims contained in its

21   original complaint. Rather, they would expand the universe of claims and

22   defendants stretching well-beyond the questions raised in the original complaint

23   over whether Bryant's conduct while in the employ of Mattel subjected his later

24   attributed creation of the BRATZ dolls to the provisions in Mattel's Inventions

25   Agreement or otherwise rendered his creation subject to an infringement action.

26   Nowhere does Mattel seek to reconcile the breadth of its present amendments with

27   the narrowness of the allegations contained in its original complaint. In fact, the

28   precise opposite is true. Mattel acknowledges that its proposed amendments bear

19

Exhibit 5
Page 151

Exhibit 3
Page 31

Case 2:04-cv-09049-DOC-RNB   Document 3684-4   Filed 05/15/08   Page 63 of 79   Page ID
#:64972
Case 2:04-cv-09049-SGL-RNB   Document 3364-2   Filed 04/30/2008   Page 36 of 52

1   more congruity to the allegations leveled against it in MGA's Lanham Act case than

2   to those in the action to which it seeks to add them:

3
4            [M]any of the matters raised by Mattel's proposed
     Amended Complaint are and will remain at issue
5    because of MGA's Complaint, whether or not leave to
     amend is granted. MGA's claims allege that a broad
6    array of purported Mattel conduct across the globe,
     starting at least as early as 1999, has violated the
7    Lanham Act and unfair competition law. This includes
     Mattel's alleged infringement of Bratz and other MGA
8    products. As a result, issues in the proposed Amended
     Complaint are already part and parcel of Mattel's
9    defenses to MGA's unfair competition claims, including
     because they show that MGA and Bryant, and not
10   Mattel, are ones who stole the products and other
     properties involved.

11  (Reply to Bryant Opp. at 7 (emphasis added)). Mattel apparently finds this

12  discongruity unimportant because "all of these matters have been consolidated with

13  the Bryant case." (Id. at 7). As noted earlier, the fact that the cases have been

14  consolidated does not mean that the parties can ignore the distinctions that still

15  exist between them. If, as Mattel acknowledges, the present amendments are

16  nothing more than re-formulated defenses and counterclaims it presently has to

17  MGA's complaint against it in the 05-2727 case, then such amendments should be

18  brought in the form of an amended answer and counterclaim in that case.

19       Consideration of the distinctions between the two cases is wise as it serves

20  as a useful tool in providing the Court a better means to manage the cases now

21  that they have been consolidated. The proverbial dog (ownership in BRATZ)

22  should be wagging the proverbial tail (the remaining commercial disputes), not the

23  other way around. Admittedly, the dog's tail has grown in size both by MGA's filing

24  of its complaint in the 05-2727 action and Mattel's response thereto through its

25  proposed amendments. Nonetheless, it is readily apparent to the Court that the

26  crown jewel in this action still remains the ownership rights to the BRATZ dolls. The

27  parties have engaged in extensive and undoubtedly expensive discovery on this

28  very issue (from hiring world-renowned experts to test the age of Bryant's design

1   drawings to technically complex discovery of what is on each other's computers).

2          Indeed the separateness of the two matters is reflected in how the cases are

3   currently structured, namely, the narrowness of the issue involved in 04-9059 and

4   the expansiveness of the facts at issue in 05-2727.  In light of this fact, the Court

5   believes a two-track scheduling order wherein the 04-9059 matter's discovery cut

6   off and trial date are set well-ahead of those in 05-2727 makes the most sense.  As

7   noted earlier, many of the legal claims being pressed in 05-2727 will be affected by

8   the result of the litigation in 04-9059.  If, for instance, Mattel does own the rights to

9   the BRATZ dolls (either owing to Bryant's stealing his idea from one of Mattel's

10  "development programs" or by way of the Inventions Agreement because he

11  continued to work on his designs while at Mattel), then large portions of MGA's

12  Lanham Act infringement claims may become moot.  By the same token, if Mattel

13  does not own rights to BRATZ, then some of the defenses and counterclaims set

14  forth as independent claims in the present amended complaint may become moot,

15  including Mattel's copyright infringement claim as well as portions of its remaining

16  RICO, misappropriation, and aiding and abetting claims.  If, however, the Court

17  were to allow the amended complaint to be filed in the 04-9059 action, such case

18  management would be difficult, if not impossible as many of the issues being

19  litigated in the 05-2727 case would have been poured into the 04-9059 case by the

20  amendment.  Due to this substantial overlap in claims and facts, a two-track

21  scheduling order utilizing the case number distinctions would be impossible to craft.

22  When pressed by the Court at oral argument as to which of its proposed claims it

23  believed would not undermine the BRATZ ownership posture of the 04-9059 case,

24  Mattel cited to its copyright and RICO claims.  However, upon further questioning

25  by the Court, counsel for Mattel acknowledged that much of those claims were, like

26  the claims at issue in 05-2727, dependent upon resolution of the ownership issue.

27         In light of the burden allowing Mattel's amendment to proceed would have on

28  this Court's ability to efficiently manage these consolidated matters denial of

1  Mattel's request to amend its complaint in the 04-9059 matter is justified. See

2  Perrian v. O'Grady, 958 F.2d 192, 195 (7th Cir. 1992)("The burden to the judicial

3  system can justify a denial of a motion to amend 'even if the amendment would

4  cause no hardship at all to the opposing party'"). Buttressing the Court's decision is

5  the fact that, even with such a denial, Mattel may file (and the Court provides leave

6  to Mattel to so file) an amended answer and counterclaim in the 05-2727 case

7  raising all the new claims and defendants presently sought to be achieved through

8  amendment of its complaint in the 04-9059 action. None of the substantive

9  concerns raised by MGA and Bryant to the present amended complaint, e.g.,

10  statutes of limitations, would appear to be affected if the new claims and

11  defendants were brought as defenses and counterclaims in the 05-2727 case as

12  opposed to the 04-9059 one.

13  Accordingly, the Court GRANTS Mattel's motion for leave to file its proposed

14  amendments, but only insofar as they are pled in the form of an amended answer

15  and counterclaim in the 05-2727 case.

16  Finally, the lack of a scheduling order in this case is problematic; one should

17  have been entered long ago. See Fed. R. Civ. P. 16(b)(noting that a scheduling

18  "order shall issue as soon as practicable but in any event within 90 days after the

19  appearance of a defendant and within 120 days after the complaint has been

20  served on a defendant"). In light of the fact that entry of a scheduling order is

21  woefully overdue in this case, the Court hereby ORDERS that a Rule 16(b)

22  scheduling conference be held in this consolidated matter on February 12, 2007, at

23  1:30 p.m. in Courtroom One. The parties are directed to file a Joint Rule 26(f)

24  report with the Court by February 5, 2007.

25  IT IS SO ORDERED.

26  DATE: /-//- 07

27

28
STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE

22

Exhibit 5
Page 154

Exhibit 3
Page 34

Exhibit 4

00029/2369479.1

Exhibit 5
Page 155

1

1      UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA

3      EASTERN DIVISION

4      - - -

5      HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6      - - -

7   CARTER BRYANT, ET. AL.,            )
                                       )
8                    PLAINTIFFS,       )
                                       )
9            VS.                       )   NO. ED CV 04-09049
                                       )   (LEAD LOW NUMBER)
10  MATTEL, INC., ET. AL.,             )
                                       )
11                   DEFENDANTS.       )   HEARING
                                       )
12  AND CONSOLIDATED ACTIONS,          )
                                       )

13

14

15      REPORTER'S TRANSCRIPT OF PROCEEDINGS

16      RIVERSIDE, CALIFORNIA

17      MONDAY, APRIL 7TH, 2008

18      11:34 A.M.

19

20

21

22

23      THERESA A. LANZA, RPR, CSR
        FEDERAL OFFICIAL COURT REPORTER
24      3470 12TH STREET, RM. 134
        RIVERSIDE, CALIFORNIA  92501
25      951-274-0844
        WWW.THERESALANZA.COM

2

1    APPEARANCES:

2

3    ON BEHALF OF CARTER BRYANT:
                         KEKER & VAN NEST
                         BY:  CHRISTA ANDERSON
4                        710 SANSOME STREET
                         SAN FRANCISCO, CALIFORNIA  94111-1704
5                        415-391-5400

6                             .

7    ON BEHALF OF MATTEL:

8                        QUINN EMANUEL
                         BY:  JOHN QUINN
9                        BY:  MICHAEL T. ZELLER
                         865 S. FIGUEROA STREET,
10                       10TH FLOOR
                         LOS ANGELES, CALIFORNIA  90017
11                       213-624-7707

12

13   ON BEHALF OF MGA ENTERTAINMENT AND ISAAC LARIAN:

14                       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                         BY:  THOMAS J. NOLAN
15                       BY:  CARL ALAN ROTH
                         BY:  KENNETH PLEVAN
16                       300 SOUTH GRAND AVENUE
                         LOS ANGELES, CALIFORNIA  90071-3144
17                       213-687-5000

18

19

20

21

22        -

23

24

25

APRIL 7TH, 2008                                    BRYANT V. MATTEL

Exhibit 5
Page 157

Exhibit 4
Page 36

3

1                        I N D E X

2                                            PAGE

3    HEARING......................................  4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

APRIL 7TH, 2008                    BRYANT V. MATTEL

Exhibit 5
Page 158

Exhibit 4
Page 37

9

```
 1              THE COURT:  YES.

 2              MR. NOLAN:  I'M SORRY.

 3         VERY INVOLVED IN THAT SENSE.

 4              THE COURT:  THAT'S MY SENSE.

 5              MR. NOLAN:  UP UNTIL RECENTLY, WHEN JEANINE PISONI      11:41

 6    WAS HIRED AS THE GENERAL COUNSEL -- AND SHE IS PRESENT FOR MGA

 7    THIS MORNING -- MR. HOLDEN WAS THE PRIMARY LAWYER WITHIN MGA

 8    THAT WE WOULD DEAL WITH IF WE NEEDED TO GET INFORMATION.

 9              THE COURT:  VERY GOOD.

10         WELL, THOSE WERE SOME PRELIMINARY QUESTIONS.            11:41

11         AS I INDICATED, WHAT I WANTED TO DO WAS GIVE YOU MY

12    SENSE, HAVING GONE THROUGH THE EXPERT REPORT, THE DECLARATIONS

13    THAT HAVE BEEN SUBMITTED, BOTH ON THE RECORD, BY BOTH SIDES, AS

14    WELL AS THE DECLARATIONS SUBMITTED IN-CAMERA --

15         YOU KNOW, I SHOULD SAY AT THE OUTSET, I UNDERSTAND       11:42

16    THAT IT'S A VERY AWKWARD SITUATION WHEN THE COURT MUST CONSIDER

17    A DECLARATION THAT'S SUBMITTED IN-CAMERA, BECAUSE IT DOES NOT

18    HAVE THE ABILITY TO HAVE THAT DECLARATION TESTED, OF COURSE, BY

19    THE OTHER SIDE AND THROUGH THE ADVERSARIAL PROCESS; SO TO A

20    CERTAIN EXTENT, THE COURT HAS TO ENGAGE IN ITS OWN TESTING,     11:42

21    VIS-À-VIS THE OTHER DEPOSITIONS THAT HAVE BEEN SUBMITTED AND

22    THE OTHER KNOWN PUBLIC -- OR AT LEAST WITHIN THE CONTEXT OF THE

23    PROCEEDINGS, WHAT IS KNOWN TO THE ATTORNEYS.  AND I HAVE TO DO

24    THAT WEIGHING MYSELF.  IT'S NOT AN EASY PROCESS, AND THE COURT

25    DOES NOT TAKE THAT RESPONSIBILITY LIGHTLY AT ALL.              11:42
```

1          . I ALSO SHOULD NOTE THAT I'VE KIND OF BROKEN THIS DOWN

2    INTO TWO MOTIONS. I'M CONSIDERING THE MOTION TO DISQUALIFY THE

3    EXPERT, AND THEN THE MOTION TO DISQUALIFY COUNSEL, IN KIND OF A

4    SEPARATE ANALYSIS ON BOTH.

5          LET ME BEGIN WITH THE FINDINGS OF FACT THAT THE COURT    11:43

6    IS TENTATIVELY MAKING. AND THIS IS TENTATIVE SUBJECT TO

7    ARGUMENTATION. WE'RE APPROACHING THE NOON LUNCH HOUR. I DO

8    INTEND TO TAKE A BREAK FOR LUNCH AND RESUME THIS IN THE

9    AFTERNOON. I DO NOT WANT THIS RUSHED. AS MR. NOLAN JUST

10   ALLUDED TO A MOMENT AGO, OBVIOUSLY THIS IS A SERIOUS MATTER    11:43

11   THAT THE COURT TAKES SERIOUSLY. I DON'T WANT ANYONE TO BE

12   RUSHED. I WANT EVERYONE TO HAVE AN OPPORTUNITY TO SAY WHAT

13   THEY NEED TO SAY. BUT PERHAPS I COULD BEGIN BY GIVING THIS

14   TENTATIVE, AND THEN WE CAN TAKE A BREAK AND RESUME WITH

15   ARGUMENT AT THAT TIME.                                         11:43

16         BASED ON THE EVIDENCE AVAILABLE TO ALL OF THE

17   PARTIES, THOUGH -- THIS IS NOT CONSIDERING AT ALL THE

18   IN-CAMERA -- THIS IS WHAT I THINK IS UNCONTROVERTED:

19         FIRST OF ALL, IT IS UNCONTROVERTED THAT MGA

20   UNDERSTOOD THAT MS. TOMIYAMA, A FORMER EMPLOYEE, WHO HAD BEEN  11:44

21   MATTEL'S EMPLOYEE FOR 15 YEARS, HAD BEEN CONSULTED, WHILE SO

22   EMPLOYED BY MATTEL'S LEGAL COUNSEL, TO COMPARE MATTEL'S DOLLS

23   WITH OTHER COMPANIES' DOLLS AND PROVIDE TO COUNSEL AN ANALYSIS

24   OF HER COMPARISON FOR THE PURPOSE OF ASSISTING COUNSEL TO

25   ADVISE MATTEL ON LEGAL ISSUES REGARDING THE DOLLS.            11:44

APRIL 7TH, 2008                    BRYANT V. MATTEL

Exhibit 5                 Exhibit 4
Page 160                  Page 39

11

1        IT IS UNCONTROVERTED THAT SHE WAS ENGAGED BY

2    SKADDEN ARPS ON BEHALF OF MGA TO PERFORM THE SAME TYPE OF

3    ANALYSIS AND THAT SHE DID, IN FACT, PROVIDE SUCH AN ANALYSIS.

4    THIS IS THE ANALYSIS RELATED TO THE COMPARISONS OF THE FACE

5    PAINTINGS.                                                          11:44

6        IT IS UNCONTROVERTED THAT SHE WAS EMPLOYED BY MATTEL

7    DURING THE TIME PERIOD THAT MGA FILED ITS COMPLAINT AGAINST

8    MATTEL IN THE CASE PENDING BEFORE THIS COURT; THAT'S

9    CV-05-2727.

10       IT IS NOT DISPUTED THAT SHE WAS SHOWN THE COMPLAINT        11:45

11   IN THAT CASE BY MATTEL ATTORNEYS AND DISCUSSED THE CONTENTS, AT

12   LEAST IN PASSING, ON THAT COMPLAINT.

13       IT IS NOT CONTROVERTED THAT MS. TOMIYAMA WAS SUBJECT

14   TO A SEPARATION AGREEMENT THAT REQUIRED HER TO GIVE NOTICE TO

15   MATTEL BEFORE PROVIDING SERVICES TO A COMPETITOR, AND THAT BY       11:45

16   THE TERMS OF THAT AGREEMENT, THAT REQUIREMENT CONTINUES TO THIS

17   DAY.

18       IT'S NOT DISPUTED THAT MS. TOMIYAMA DID NOT GIVE SUCH

19   NOTICE, NOR IS IT DISPUTED THAT MS. TOMIYAMA SHOWED A COPY OF

20   THE AGREEMENT TO AND WAS ADVISED BY A SKADDEN ARPS ATTORNEY        11:45

21   THAT SHE WAS UNDER NO OBLIGATION TO COMPLY WITH IT, DESPITE THE

22   LANGUAGE SET FORTH IN THE AGREEMENT.

23       IT IS NOT CONTROVERTED THAT MS. TOMIYAMA IS UNABLE TO

24   DISTINGUISH BETWEEN PRIVILEGED AND UNPRIVILEGED DOCUMENTS.

25   THIS WAS CLEAR TO THE COURT IN REVIEWING HER ANSWERS TO HER        11:45

Case 2:04-cv-09049-DOC-RNB   Document 3684-4   Filed 05/15/08   Page 73 of 79   Page ID
#:64982
Case 2:04-cv-09049-SGL-RNB   Document 3364-2   Filed 04/30/2008   Page 46 of 52

12

1   DEPOSITION.  SHE ADMITTED AS MUCH IN HER DEPOSITION, AND

2   THERE'S A NUMBER OF EXAMPLES IN HER DEPOSITION WHICH

3   DEMONSTRATE THAT INABILITY TO DISTINGUISH BETWEEN PRIVILEGED

4   AND UNPRIVILEGED COMMUNICATIONS.

5           IT IS NOT DISPUTED, AS SET FORTH IN HER EXPERT               11:46

6   REPORT, EXPRESSLY IN HER REPORT, THAT SHE'S UNABLE TO

7   DISTINGUISH BETWEEN FACT TESTIMONY AND EXPERT TESTIMONY.  SHE

8   STATES AS MUCH.

9           SO THOSE ARE KIND OF A LIST OF FACTS THAT I THINK ARE

10  NOT DISPUTED, JUST BASED ON MY READING OF THE DEPOSITIONS AND        11:46

11  TRANSCRIPTS AND DECLARATIONS THAT ARE SET FORTH ON THE RECORD.

12          I THEN HAVE THE IN-CAMERA FILING MADE BY MATTEL.  AND

13  AS I INDICATED, I NEED TO TEMPER MY OBSERVATIONS REGARDING THE

14  ENGAGEMENT OF MS. TOMIYAMA AS AN EXPERT, WITH THE UNDERSTANDING

15  THAT NEITHER MGA NOR THE ATTORNEYS OF SKADDEN ARPS HAVE BEEN        11:46

16  ABLE TO REVIEW THE IN-CAMERA MATERIAL THAT PURPORTEDLY REVEALS

17  THE EXTENT OF MS. TOMIYAMA'S INVOLVEMENT ON BEHALF OF MATTEL IN

18  THESE CONSOLIDATED CASES.

19          I HAVE NO REASON NOT TO ACCEPT THOSE REPRESENTATIONS,

20  BUT I AM MINDFUL OF THE FACT THAT THEY ARE BEING SUBMITTED          11:47

21  IN-CAMERA.

22          BUT WHEN I COMPARE THE IN-CAMERA DECLARATION TO

23  MS. TOMIYAMA'S DEPOSITION, SPECIFICALLY HERE, I HAVE IN MY

24  NOTES, PAGES 262 TO 263 -- WHEREIN SHE CANNOT MERELY NOT RECALL

25  BUT CANNOT DENY ANALYZING BRATZ DOLLS FOR MATTEL'S LAWYERS.  IT     11:47

1   IS ALSO UNCONTROVERTED THAT MS. TOMIYAMA WAS EXTENSIVELY

2   INVOLVED IN ISSUES REGARDING THE CLAIMS AND DEFENSES IMPLICATED

3   BY MGA'S COMPLAINT AGAINST MATTEL IN CASE 05-2727 BEFORE THIS

4   COURT.  SHE WAS PRIVY TO COUNSEL'S ANALYSIS, THOUGHTS, AND

5   IMPRESSIONS RELATING TO COMPARISONS OF THE "MY SCENE" DOLLS AND       11:47

6   THE BRATZ DOLLS.

7          ALSO COMPARING THE IN-CAMERA DECLARATIONS TO

8   MS. TOMIYAMA'S DEPOSITION AT PAGES 266 TO 268, WHERE, AGAIN,

9   SHE MERELY CANNOT RECALL BUT DOES NOT DENY ASSISTING COUNSEL'S

10  INVESTIGATION OF CARTER BRYANT'S ACTIVITIES AT MATTEL.  IT IS        11:48

11  UNCONTROVERTED THAT MS. TOMIYAMA WAS DEEPLY INVOLVED IN

12  MATTEL'S INVESTIGATIONS OF CARTER BRYANT'S ACTIVITIES AND WAS

13  PRIVY TO COUNSEL'S ANALYSIS, THOUGHTS, AND IMPRESSIONS ABOUT

14  ISSUES DIRECTLY RELATED TO PHASE ONE OF THIS TRIAL.

15         IT'S SOMEWHAT DISTURBING, THE SERIES OF 'I DON'T            11:48

16  RECALLS,' 'I DON'T RECALLS' FROM MS. TOMIYAMA, BUT IT'S

17  SIGNIFICANT THAT SHE DOES NOT DENY THAT ANALYSIS, AND WHEN

18  COMBINED WITH THE INFORMATION SET FORTH IN THE IN-CAMERA

19  DECLARATION, THE COURT MAKES THE FINDINGS THAT IT DOES.

20         THE THIRD COMPARISON I WOULD DO IS MAKING THE               11:48

21  COMPARISON BETWEEN THE IN-CAMERA DECLARATIONS TO MS. TOMIYAMA'S

22  DEPOSITION AT PAGES 246 TO 248, WHERE SHE DISCUSSES THE

23  DOCUMENT ATTACHED AS EXHIBIT A TO HER EXPERT REPORT, THE SIMBA

24  VERSUS BARBIE PHOTO MONTAGE.  THE COURT CONCLUDES THAT THE

25  DOCUMENT IS BOTH ATTORNEY WORK-PRODUCT AND PROTECTED BY THE         11:48

APRIL 7TH, 2008          Exhibit 4        BRYANT V. MATTEL
Exhibit 5                Page 42
Page 163

14

1 | ATTORNEY-CLIENT PRIVILEGE.

2 |    WITH THIS RECORD IN MIND, I'LL SET FORTH THE COURT'S

3 | LEGAL ANALYSIS.  I BEGIN BY LOOKING TO STENCEL V. FAIRCHILD

4 | CORPORATION, 174 F. SUPP. 2D 1080, A CENTRAL DISTRICT CASE.

5 | THE COURT MUST CONSIDER THREE FACTORS, AND DOES SO AS FOLLOWS,  11:49

6 | AT LEAST TENTATIVELY:

7 |    THE FIRST IS THAT MATTEL MUST PROVE THAT IT WAS

8 | OBJECTIVELY REASONABLE TO BELIEVE THAT A CONFIDENTIAL

9 | RELATIONSHIP EXISTED BETWEEN MS. TOMIYAMA AND MATTEL.  AT THIS

10 | POINT, IT'S UNQUESTIONABLE THAT BASED ON THE IN-CAMERA  11:49

11 | DECLARATIONS, AS WELL AS THE DEPOSITION TESTIMONY OF

12 | MS. TOMIYAMA AND THE EXPERT REPORT, THAT MATTEL HAS ESTABLISHED

13 | A CONFIDENTIAL RELATIONSHIP WITH MS. TOMIYAMA.

14 |    ACCORDING TO HER OWN TESTIMONY DURING THE LAST TWO

15 | YEARS OF HER EMPLOYMENT, MATTEL'S LEGAL DEPARTMENT CONSULTED  11:49

16 | WITH HER REGULARLY, ABOUT ONCE PER MONTH, REGARDING LITIGATION

17 | ISSUES INVOLVING COMPARISONS OF MATTEL'S PRODUCTS WITH

18 | COMPETITORS' PRODUCTS.  THE IN-CAMERA DECLARATIONS GO ON TO

19 | PROVIDE A MORE IN-DEPTH DETAILED ANALYSIS OF THESE

20 | CONSULTATIONS; BUT, AGAIN, FROM HER OWN TESTIMONY ITSELF, IT'S  11:50

21 | QUITE CLEAR THAT SHE HAD THOSE TYPES OF CONSULTATIONS AT LEAST

22 | ONCE A MONTH.

23 |    THE SECOND FACTOR IS THAT MATTEL MUST ESTABLISH THAT

24 | IT IN FACT DISCLOSED CONFIDENTIAL INFORMATION TO THE EXPERT.

25 | THE COURT TENTATIVELY FINDS THIS HAS BEEN MET BY VIRTUE OF THE  11:50

APRIL 7TH, 2008   Exhibit 4   BRYANT V. MATTEL
Exhibit 5   Page 43
Page 164

15

1   IN-CAMERA DECLARATIONS.

2           A THIRD INQUIRY MADE BY THE STENCEL CASE INVOLVES

3   POLICY CONSIDERATIONS.  IT CAUTIONS STRONGLY AGAINST THE

4   TACTICAL USE OF MOTIONS TO DISQUALIFY EXPERTS, CONSIDERS THE

5   ABILITY OF EXPERTS TO PURSUE THEIR TRADE, AND WEIGHS THE          11:50

6   IMPORTANCE OF ALLOWING PARTIES TO SELECT THEIR OWN EXPERTS.

7   THESE CONSIDERATIONS ARE WEIGHED AGAINST POTENTIAL PREJUDICE TO

8   THE MOVING PARTY IF THE EXPERT IS NOT DISQUALIFIED.

9           THE COURT HAS CAREFULLY CONSIDERED EACH ONE OF THESE

10  THREE ISSUES.  FROM MY REVIEW OF THE RECORD, THE PRESENT MOTION   11:51

11  DOES NOT STRIKE ME AS ONE THAT'S BEING BROUGHT FOR TACTICAL

12  REASONS, NOTWITHSTANDING COUNSEL'S ARGUMENT TO THE CONTRARY.

13  MGA DOES TAKE ISSUE WITH MATTEL'S TIMING, BUT THE COURT

14  DISCERNS NO DELAY IN THE BRINGING OF THE PRESENT MOTION.

15          THE COURT DRAFTED UP A CHRONOLOGY, AND GIVEN THE          11:51

16  DISCLOSURE OF THE EXPERT REPORT, MATTEL, TWO DAYS LATER, SERVES

17  A SUBPOENA ON MS. TOMIYAMA, RECOGNIZING HER STATUS AS A

18  DESIGNATED EXPERT; THAT'S ON FEBRUARY 17TH.  THE DEPOSITION

19  GOES FORWARD ON MARCH 22ND, AND THEN SOMETIME IN THE VERY EARLY

20  PART OF MARCH, A FEW DAYS LATER, MATTEL CONTACTS BOTH           11:51

21  SKADDEN ARPS AND CARTER BRYANT'S ATTORNEYS REGARDING THE

22  DISCLOSURE OF PRIVILEGED INFORMATION, AND THEN THE PRESENT

23  MOTION IS FILED, I BELIEVE, ON MARCH 18TH.  SO THERE DOESN'T

24  SEEM TO BE A TACTICAL DELAY.  THIS ISN'T A SITUATION WHERE THE

25  EXPERT DEPOSITION TOOK PLACE MONTHS AGO AND THERE WAS A BIG      11:52

Case 2:04-cv-09049-DOC-RNB   Document 3684-4   Filed 05/15/08   Page 77 of 79   Page ID
#:64986
Case 2:04-cv-09049-SGL-RNB   Document 3364-2   Filed 04/30/2008   Page 50 of 52

105

1   GET THROUGH THIS THIS AFTERNOON.  I WANTED TO MAKE SURE

2   EVERYONE HAD AN OPPORTUNITY TO ADDRESS THE COURT.

3          I WILL GET AN ORDER OUT ON THIS AS SOON AS POSSIBLE.

4   I'LL ALSO TAKE UP THAT DISCOVERY MATTER WITH THOSE DEPOSITIONS

5   WHICH SEEM TO BE GOING ON AND ON.  I'VE SEEN THOSE NAMES          03:11

6   BEFORE.  BUT I'LL TAKE A CLOSE LOOK AT THAT, AND WE'LL TRY TO

7   GET AN ORDER OUT.

8          THE CLERK:  COURT IS IN RECESS.

9

10

11

12

13

14

15

16                        CERTIFICATE

17

18   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
19   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
20   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

21

22   _____          4-17-08
     THERESA A. LANZA, CCSR, RPR              DATE
23   FEDERAL OFFICIAL COURT REPORTER

24

25

APRIL 7TH, 2008        **Exhibit 4**        BRYANT V. MATTEL
                       Page 45
     **Exhibit 5**
     **Page 166**

1

## PROOF OF SERVICE

2       I am employed in the County of Los Angeles, State of California. I am over the age of

3 eighteen years and not a party to the within action; my business address is 865 South Figueroa

4 Street, 10th Floor, Los Angeles, California 90017.

5       On April 28, 2008, I served true copies of the following documents described as:

6 **DECLARATION OF CHRISTOPHER E. PRICE IN SUPPORT MATTEL, INC.'S REPLY**

7 **IN SUPPORT OF MOTION FOR PROTECTIVE ORDER LIMITING THE TEMPORAL**

8 **SCOPE OF ITS PRIVILEGE LOG** on the parties in this action as follows:

9
10
11
Keker & Van Nest, LLP
John W. Keker, Esq./Michael H. Page, Esq.
Christa M. Anderson, Esq.
710 Sansome Street
San Francisco, CA 94111

12       [√]    **BY MAIL:** I am "readily familiar" with the practices of Quinn Emanuel Urquhart

13 Oliver & Hedges for collecting and processing correspondence for mailing with the United States

14 Postal Service. Under that practice, it would be deposited with the United States Postal Service

15 that same day in the ordinary course of business. I enclosed the foregoing in sealed envelope(s)

16 addressed as shown above, and such envelope(s) were placed for collection and mailing with

17 postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary

18 business practices.

19       [√]    **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other

20 facility regularly maintained by the overnight service carrier, or delivered such document(s) to a

21 courier or driver authorized by the overnight service carrier to receive documents, in sealed

22 envelope(s) or package(s) designated by the overnight service carrier with delivery fees paid or

23 provided for, addressed to the person(s) being served.

24       I declare that I am employed in the office of a member of the bar of this court at whose

25 direction the service was made.

26       Executed on April 29, 2008, at Los Angeles, California.

27

28                                Kelly Velazquez

07209/2459122.1    **Exhibit 5**
                   **Page 167**

1  **PROOF OF SERVICE**

2      I am employed in the County of Los Angeles, State of California.  I am over the age of

3  eighteen years and not a party to the within action; my business address is 865 South Figueroa

4  Street, 10th Floor, Los Angeles, California 90017.

5      On April 29, 2008, I served true copies of the following documents described as:

6  **DECLARATION OF CHRISTOPHER E. PRICE IN SUPPORT MATTEL, INC.'S REPLY**

7  **IN SUPPORT OF MOTION FOR PROTECTIVE ORDER LIMITING THE TEMPORAL**

8  **SCOPE OF ITS PRIVILEGE LOG** on the parties in this action as follows:

| Skadden, Arps, Slate, Meagher & Flom LLP<br>Thomas J. Nolan, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90071 | Overland Borenstein Scheper & Kim LLP<br>Mark E. Overland, Esq/David C. Scheper Esq<br>Alexander H. Cote Esq<br>601 West Fifth Street, 12th Floor<br>Los Angeles, CA 90071-2025 |

12  [√]  **[PERSONAL]** by personally delivering the document listed above to the person(s)

13  at the address(es) set forth above.

15      I declare that I am employed in the office of a member of the bar of this court at whose

16  direction the service was made.

17      Executed on April 29, 2008, at Los Angeles, California.

Dave Quintana

**Exhibit 5**
**Page 168**
07209/2459122.1