KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
awaltonhadlock@kvn.com
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

v.

MATTEL, INC. a Delaware Corporation,

Defendant.

CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC.

Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727)

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B) OR FOR RECONSIDERATION**

Date: May 19, 2008
Time: 10:00 a.m.
Dept: Courtroom 1
Judge: Hon. Stephen G. Larson

Date Comp. Filed: April 13, 2005

Discovery Cut-Off: Jan. 28, 2008
Pre-Trial Conference: May 19, 2008
Trial Date: May 27, 2008

417577.01

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Mattel urges the Court to disregard the California Supreme Court's holding in *City of Hope*, which renders the Court's finding of a fiduciary duty reversible error. ..... 2

B. Mattel does not credibly dispute that the Court committed reversible error by ruling that Bryant breached his duty of loyalty or (non-existent) fiduciary duty, as a matter of law ..... 6

C. The Court should correct the reversible error that results from the Order's failure to apply *City of Hope*'s controlling authority regarding contract interpretation. ..... 9

D. The Court should also reconsider its remaining errors, including apparent error with respect to California Labor Code § 2870, and reject Mattel's urging to persist in reversible error. ..... 10

III. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*United States v. Martin*, 226 F.3d 1042 (9th Cir. 2000) .......... 2, 12

## STATE CASES

*City of Hope National Medical Center v. Genentech, Inc.*, No. S129463, ___ Cal. Rptr. 3d ___, 2008 WL 1820916 (April 24, 2008) .......... passim

*GAB Bus. Serv., Inc. v. Lindsey & Newsom Claim Serv., Inc.*, 83 Cal. App. 4th 409 (2000) .......... 3

*Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400 (2007) .......... 7

*Stevens v. Marco* 147 Cal. App. 2d 357 (1956) .......... 2, 3, 5

*Wolf v. Superior Court*, 107 Cal. App. 4th 25 (2003) .......... 3

## STATUTE/REGULATION

California Labor Code § 2870 .......... 1, 11, 12

Restatement Third Agency, Section 8.04, cmt c .......... 7

## I. INTRODUCTION

Mattel's Opposition to Bryant's Motion For Reconsideration ("Opp'n") urges the Court to persist in reversible error, again both distorting the nature of Bryant's arguments and failing to refute them.

***First,*** Mattel's eight page attempt to distinguish *City of Hope National Medical Center v. Genentech, Inc.*, No. S129463, ___ Cal. Rptr. 3d ___, 2008 WL 1820916 (April 24, 2008), merely highlights the fact that *City of Hope* rejects the very premise the Court relied upon in finding a fiduciary duty based upon the language of the Inventions Agreement. Based on the undisputed and disputed facts here, *City of Hope* requires, at a minimum, that the issue of existence of a fiduciary duty be submitted to the trier of fact.

***Second,*** Mattel also urges the Court to persist in reversible errors by (1) misstating Bryant's arguments, and (2) improperly resolving in Mattel's favor material, disputed factual questions. In addition to issues concerning Bryant's alleged fiduciary duty, Mattel encourages the Court to persist in errors as to controlling California law defining breach of duty of loyalty and breach of fiduciary duty, controlling California contract principles governing construction of the Inventions Agreement, and the proper interpretation of California Labor Code § 2870.

***Third,*** Mattel continues to misconstrue both the Order itself and Bryant's arguments on summary judgment and in this Motion, demonstrating the need for both reconsideration and clarification of several holdings in the Order.[1]

---

[1] For example, Mattel's purported summary of the Court's holdings is misleading. Mattel partially quotes the Order's statement that "the original Bratz drawings clearly fall within the scope of the Inventions Agreement" without acknowledging that the Court begins this sentence with a very important caveat: "Assuming copyrightablity and the resolution of certain (as yet unresolved) issues of timing or creation and/or alteration in Mattel's favor…" Order at 4. Thus, Mattel seeks to avoid a jury determination of whether the alleged "inventions" were "conceived or reduced to practice during [Bryant's] employment… ." Bryant in no way agrees with Mattel's characterization of the Court's Order.

Because Mattel's arguments against reconsideration lack merit, and for all the reasons set forth below and in Bryant's Motion, Bryant requests the Court exercise its inherent power to reconsider and amend its Order to reflect correctly the law and facts presented in this matter.[2] Failing that, Bryant requests the Court certify this for interlocutory appeal.

## II. ARGUMENT

### A. Mattel urges the Court to disregard the California Supreme Court's holding in *City of Hope*, which renders the Court's finding of a fiduciary duty reversible error.

Mattel's strives in vain to distinguish or dismiss *City of Hope,* erroneously claiming that the Supreme Court's clarification of the standard for establishing a fiduciary duty, and its concomitant limitation of the holding of *Stevens v. Marco*, has no bearing on this Court's Order. Not so. First, contrary to Mattel's claims, *City of Hope* explicitly rejects the premise for this Court's finding that Bryant owed a fiduciary duty to Mattel. Second, Mattel's attempt to distinguish or dismiss *City of Hope's* holding, its extensive discussion of the requirements for creating a fiduciary duty, and the facts of the case is nothing more than a desperate attempt to confuse and mislead the Court. Third, as this Court appeared to recognize, and as Mattel concedes at least in part, *City of Hope* is clearly new law and warrants reconsideration of this Court's Order. Opp'n at 10 (stating *City of Hope* "narrowed the broad language in *Stevens*.").

To begin, Mattel's lengthy discussion of the facts of *City of Hope* and

---

[2] Despite Mattel's repeated protests, Bryant's Motion satisfies two independent requirements of Local Rule 7-18: (1) as Mattel's own arguments reveal, *City of Hope* is new and controlling California Supreme Court authority that more than justifies reconsideration of the Order; and (2) the Court's manifest failure to consider material and disputed facts presented by Bryant and the MGA parties also justifies reconsideration of as to the remaining issues raised in Bryant's Motion.[2] Further, the Court acknowledged that it issued the Order without considering *City of Hope* when it ordered argument on May 19, 2008. The Court indisputably has the power – and the responsibility – to reconsider, amend, or clarify the Order, under its inherent authority to manage this litigation, as needed to ensure that justice is done. *See United States v. Martin*, 226 F.3d 1042, 1048 & n.8 (9th Cir. 2000).

detailed parsing of the Court's reasoning is nothing more than an effort to obscure what is obvious from reading the Supreme Court's opinion—*City of Hope* explicitly rejects the premise for this Court's Order finding that Bryant owed Mattel a fiduciary duty. The Order held that "[t]he Inventions Agreement imposed such a [fiduciary] duty on Bryant" because (1) it contained language requiring that Bryant keep Proprietary Information confidential and (2) it stated Bryant was accepting a position of trust. Order at 5.

Directly contradicting the Order, the California Supreme Court held that the acceptance of a position of trust and the entrustment of confidential information—the two contractual provisions the Court relied on—are insufficient to create a fiduciary relationship.[3] *City of Hope*, at * 8-9. Indeed, *City of Hope* ***expressly*** rejected the imposition of a fiduciary duty based on the fact that a contract reposed "trust and confidence" in the purported fiduciary; because "trust and confidence" are simply an ordinary part of *any* contract, their presence cannot support the loftier burdens of a fiduciary relationship. *Id.* at *9; *Wolf v. Superior Court,* 107 Cal. App. 4th 25, 31 (2003) (reposing trust and confidence in the party to a contract does not create a fiduciary relationship but rather affords redress for breach of contract). *City of Hope* also ***expressly*** held that the entrusting of secret or confidential information to another "does ***not*** compel the imposition of fiduciary duties by operation of law," although it may be considered by the trier of fact in deciding whether a fiduciary relationship exists. *City of Hope*, at *11 (emphasis added).

---

[3] Mattel consistently attempts to mislead the Court by arguing that "Bryant's confidential relationship with Mattel provides a second basis for creation of a fiduciary relationship" purportedly not affected by *City of Hope*. Opp'n at 7, n. 4. However, in California there are only two types of fiduciary relationships—those imposed by law and those entered into by agreement. *GAB Bus. Serv., Inc. v. Lindsey & Newsom Claim Serv., Inc.*, 83 Cal. App. 4th 409, 416-17 (2000). Mattel has repeatedly conceded that it cannot meet the requirements of a fiduciary relationship imposed by law—such as for officers, trustees, attorneys, spouses. The remaining type of fiduciary relationship is referred to as an agreed upon fiduciary relationship, or a "confidential relationship"—but this is merely a different label, not a separate legal category. *Id.*

Mattel's response is twofold. First, Mattel asserts—falsely—that *City of Hope* is a case that only discusses the creation of fiduciary duties "by operation of law." Opp'n at 5. This is simply false. *City of Hope* begins its entire discussion of fiduciary duty by stating "Genentech contends that no fiduciary relationship arose *from its contract* with City of Hope . . . We agree." (emphasis added). The issue presented in *City of Hope* is thus the very issue presented to this Court—under what circumstances a fiduciary relationship can arise from a contractual one.[4] Second, Mattel claims that Bryant's contract is factually different from the contract at issue in *City of Hope*. These alleged factual distinctions are illusory.[5] More importantly, they are not germane to the Court's holding that the acceptance of trust and confidence, and the acceptance of confidential information—the two contractual provisions Mattel relies on—are simply not sufficient to create a fiduciary relationship.

Mattel also argues that the Order does not contravene *City of Hope* in finding that Bryant was in a superior position to Mattel, by arguing that the Court did not rely on that factor alone to support its finding of a fiduciary duty. Mattel misses the mark. The Court's Order states that Mattel met its burden of demonstrating that Bryant was in a superior position to Mattel, because Bryant was in "the best position, arguably the only one in a position, to know of and police his actions." Order at 6. *City of Hope* not only confirmed that a superior position is a necessary but not sufficient requirement for showing a confidential relationship (as

---

[4] Mattel consistently confuses finding a fiduciary duty "as a matter of law"—i.e., based upon undisputed facts—and finding a fiduciary duty by operation of law—such as the duty imposed on a trustee, joint venturer, attorney.

[5] For example, Mattel attempts to factually distinguish *City of Hope* by relying on the very provisions that *City of Hope* explicitly holds are insufficient to establish a fiduciary obligation—the provision requiring confidentiality and provisions stating that Mattel is placing trust in the employee. Opp'n at 7. Further, Mattel attempts to rely on Bryant's status as an employee, giving rise to other alleged obligations. But the existence of other obligations highlights why there has been no factual showing that Bryant knowingly undertook *additional and more onerous obligations* as a fiduciary.

Mattel now finally concedes), but also clarified that to meet this requirement, it is not sufficient to show that vulnerability based upon the contractual relationship alone—the precise holding of the Court here. *City of Hope* at *8. Instead, as Bryant's Motion points out, fiduciary obligations exist **"when one party's vulnerability is so substantial as to give rise to equitable concerns underlying the protection afforded by the law governing fiduciaries."** *Id.* (cites omitted) (emphasis added). Mattel does not even attempt to argue that it made a showing of this type of deep vulnerability required by *City of Hope.*[6]

Finally, Mattel now attempts to back away from its reliance on *Stevens v. Marco,* 147 Cal. App. 2d 357 (1956), a case repeatedly relied upon in its briefs and at the core of its argument. Mattel claims that the Supreme Court's "limitation of *Stevens* is irrelevant to this dispute since this Court rested its fiduciary duty holding on the Inventions Agreement, not the factors cited in *Stevens*." Opp'n at 10. Indeed, although this Court did not cite *Stevens*, it relies upon the fact that Mattel allegedly entrusted confidential information to Bryant as a basis for imposing a fiduciary duty—an interpretation of *Stevens* which *City of Hope* rejects. Moreover, the Order also considers one of the elements set forth in *Stevens* – the vulnerability of one party vis-à-vis the other—and clarifies the type of vulnerability necessary to satisfy this element, as discussed above. *City of Hope*, at *11 (emphasis added); *see also* Bryant's Opposition to Mattel's Mot. for Partial Summ. J. ("Bryant Opp'n"), at 21-22 (Docket No. 2776). Under *City of Hope*, even if a party establishes the four elements set forth in *Stevens,* a fiduciary relationship would still not arise as a matter of law. *City of Hope*, at 7-8.[7] And yet the Court's Order

---

[6] Moreover, the vulnerability articulated in *City of Hope* is far greater than that relied upon by the Court here. City of Hope was "vulnerable because it had to rely on Genentech's superior ability in obtaining patents and in marketing products based on the secret scientific discovery of City of Hope scientists." *Id.* at * 9. Bryant, on the other hand, was simply one of thousands of employees who signed an adhesion contract. Under the Court's present Order, every one of those employees became a fiduciary of Mattel, solely because of the language in the Inventions Agreement.

[7] The elements discussed by *City of Hope* are "(1) one party entrusts its affairs, interest

did not even purport to satisfy the four elements—much less acknowledge that even if those elements were satisfied, a fiduciary relationship still does not necessarily arise.[8]

In sum, despite Mattel's protestations, *City of Hope* requires that this Court reconsider and reverse its holding that Mattel has made an undisputed factual showing establishing that Bryant owed Mattel a fiduciary duty. At a minimum, this issue goes to the jury.

**B. Mattel does not credibly dispute that the Court committed reversible error by ruling that Bryant breached his duty of loyalty or (non-existent) fiduciary duty, as a matter of law.**

Mattel claims in its Opposition that there is no basis for the Court to reconsider its ruling that Bryant has, as a matter of law, breached his duty of loyalty and his alleged fiduciary duty because (1) an employee is prohibited from acting in contravention of the best interests of his employer regardless of the preparation to compete doctrine; (2) an employee can breach his duty of loyalty or alleged fiduciary duty by actions other than those in direct competition with his employer; and (3) the Court's finding of secrecy was not undermined by the fact that Bryant notified Mattel he was leaving to seek to develop his own line of dolls.

---

or property to another; (2) there is a grant of broad discretion to another, generally because of a disparity in expertise or knowledge; (3) the two parties have an 'asymmetrical access to information,' meaning one party has little ability to monitor the other and must rely on the truth of the other party's representations; and (4) one party is vulnerable and dependent upon the other." *Id.*; Bryant Opp'n at 19-20, 23; Bryant's Mot. for Partial Summ. J., at 13-17 (Docket No. 2506). These characteristics, though often present in a fiduciary relationship, are insufficient to establish such a relationship because they "are common in many a contractual arrangement" that does not create any fiduciary obligations. *City of Hope*, at *8 (providing examples).

[8] Mattel also argues that the Court made a finding that Bryant knowingly undertook the obligations of a fiduciary, that is to act primarily for the benefit of the other party—yet another requirement *City of Hope* clarified is necessary (but not sufficient) to establish a fiduciary relationship. *City of Hope* at *6; Bryant Opp'n at 22-23. The Court did not make any such finding—it held that the Inventions Agreement "imposed such a duty on Bryant" (Order at 5), not that he knowingly undertook such a duty. Further, a trier of fact could certainly find, taking the facts in the light most favorable to Bryant, that Bryant did not knowingly undertake to act primarily for the benefit of Mattel.

Mattel is wrong on all points.

*First*, Mattel cites *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 414 (2007), for the proposition that the duty of loyalty is breached when an employee takes action which is inimical to the best interests of the employer. *Huong Que*, however, recognized in the preceding sentence that "California law does allow an employee to seek new employment and even to make some 'preparations to compete' before resigning." *Id.* at 414 (citations omitted; emphasis added). Indeed, the Supreme Court of California, the Restatement, and the numerous cases cited in Bryant's Opposition to Mattel's Motion for Summary Judgment have defined what conduct constitutes permissible preparations to compete. Bryant Opp'n at 23-33. Such conduct, unless it crosses the line to direct competition, is not a breach of either the duty of loyalty or any alleged fiduciary duty—not because preparations to compete are in the employer's interest (courts acknowledge they are not), but because they are in society's interest. Restatement Third Agency, Section 8.04, cmt c ("To be sure, the fact that an agent has such a plan is information that a principal would find useful, but the agent's fiduciary duty to the principal does not oblige the agent to make such disclosure...In this respect, the social benefits of furthering competition outweigh the principal's interest in full disclosure by its agents."); Bryant Opp'n at 23-33. Similarly, an employee is free to seek new employment, even though doing so is not in his employer's best interest. *Id.* at 25-27. Mattel simply fails to address Bryant's argument that a trier of fact, viewing the facts in the light most favorable to Bryant, could find that Bryant did not go beyond preparing to compete and seeking new employment—and thus cannot be found to have breached his duty of loyalty as a matter of law.

*Second,* Mattel argues that the duty of loyalty "may be violated in a variety of ways unrelated to direct competition"—such as manufacturing evidence to support a wrongful discharge claim. Opp'n, at 15, n. 11. But Mattel does not

claim any conduct "unrelated to direct competition" nor did the Court base its finding of breach on any conduct unrelated to competition with Mattel. *See* Order at 6.[9]

*Third,* Mattel's Opposition highlights the fact that the Court impermissibly relied on the alleged "secrecy" of Bryant's agreement with MGA to support its finding of breach. Mattel does not even dispute that Bryant was not legally required to disclose his preparations to compete or his efforts to seek new employment. Opp'n, at 17-18; Bryant Opp'n, at 28-30. Instead, Mattel quarrels with the evidence that, on the very day Bryant signed his agreement with MGA, *he gave notice to Mattel and advised Mattel that he was leaving to seek to develop his own line of dolls*. Mattel first claims those facts are "unsupported" and then claims that "even if credited" Bryant still failed to inform Mattel of the full extent of his agreement with MGA. Opp'n at 17.

But it is axiomatic that there is no "even if credited" permitted on summary judgment—the Court must credit Bryant's sworn testimony, including the inference that when he informed Ms. Yonemoto that he was leaving for an opportunity he could not pass up, that he had already secured that opportunity. Bryant Opp'n at 29. Tacitly recognizing this problem, Mattel then debates the inferences that can be drawn from Bryant's testimony, claiming that Bryant's statements were false because he did not disclose the specifics of his agreement with MGA, or any then-existing "BRATZ inventions." Opp'n, at 17. Again, however, Bryant had no legal obligation to disclose an "invention" unless he

[9] As discussed at length in Bryant's Opposition, entering into a contract with MGA is no different than (in fact far less than) the extensive efforts to establish a competing business that have been found to constitute lawful preparations to compete. Bryant Opp'n, at 25-27. Further, the undisputed fact that the dolls were in fact *not* marketed until months after Bryant left Mattel's employ also shows that Mattel suffered no harm from Bryant's entering into a contract to develop a competing line of dolls *while* Bryant was still employed—again a prerequisite to establishing direct competition and thus a breach of Bryant's duties to Mattel. Bryant Opp'n, at 26-28 & n. 24.

conceived or reduced it to practice during his employment—all issues that will be resolved by the trier of fact. Nor did he have any obligation to disclose his preparations to compete. Thus, Mattel is simply encouraging the Court impermissibly to resolve disputed issues of fact in its favor to support the Court's erroneous finding.[10]

For the reasons set forth above (and those set forth in Bryant's summary judgment briefing), Bryant respectfully asks the Court to reverse the Court's rulings relating to breach of the duty of loyalty and alleged fiduciary duty and deny Mattel's motion for partial summary judgment on the issues of breach.

**C. The Court should correct the reversible error that results from the Order's failure to apply *City of Hope*'s controlling authority regarding contract interpretation.**

Mattel also continues to encourage reversible error as to Bryant's contract interpretation arguments, by urging the Court to reject Bryant's contract interpretation arguments out of hand, falsely claiming that they are a "third attempt to revisit" arguments that the Inventions Agreement is "an impermissibly overbroad and unconscionable contract of adhesion." Opp'n at 13:19 & 3:5-7.[11]

As explained in Bryant's Motion (and his summary judgment papers and in the April 22 hearing), *Bryant is not claiming the Inventions Agreement is unenforceable or that it is limited only to patentable inventions.* Rather, Bryant contends that the agreement is reasonably susceptible to more than one meaning, and is thus ambiguous (because of conflicts in key extrinsic evidence that would help show the proper meaning). Under the *contra preferentem* doctrine and

---

[10] Mattel fails to address Bryant's argument that the Court apparently failed to consider additional facts set forth in Bryant's Motion regarding the scope of Bryant's duties and Bryant's intent in leaving Mattel. Bryant Opp'n at 4-5, 24-25 & n. 23.

[11] As explained in Bryant's Motion, reconsideration is appropriate under Local Rule 7-18 because (1) *City of Hope* also clarifies important legal principles of California contract interpretation applicable here, and (2) the Court's Order manifestly fails to consider the material facts, by resolving the parties' contract disputes contrary to the record evidence (as it must appear under the proper summary judgment standard).

ordinary principles of California contract interpretation, he maintains that the agreement's scope is more limited than Mattel claims. (Bryant's counsel expressly clarified this position at oral argument on April 22, in addition to stating it repeatedly in various briefing, as well as in Bryant's Motion.) Similarly, Bryant does not contend that "inventions" means only patentable inventions. Instead, he contends that the agreement's use of patent law terms of art (such as "conceived" and "reduced to practice") suggests a technologically-oriented meaning. In short, "inventions" can have a narrower meaning than Mattel proposes, and does not *necessarily* include ideas or non-technological innovations.

Mattel makes no substantial effort to address the explanation in Bryant's motion of Bryant's *actual* contract arguments, and the Court's errors in ignoring them entirely. Nor could it do so. Mattel instead asks the Court to find that its erroneous Order is correct simply because the Court (at Mattel's urging) issued it in the first place, without addressing the substance of the errors Bryant asserts. Mattel does this by misstating the law of ambiguity, improperly trivializing the role of extrinsic evidence (and genuine conflicts in that evidence that must go to the jury) in the initial inquiry into whether a term is ambiguous. The only other semblance of substance in Mattel's contract argument simply quotes the Order, without addressing in any way the logical, legal and factual errors Bryant's Motion pointed out in that Order. In fact, the term "inventions" is manifestly susceptible to a range of potentially reasonable meanings—many of which are narrower than the all-inclusive definition Mattel proposes. The Court should consider Bryant's actual arguments, and reject Mattel's continued attempts to incite judicial error. At a minimum, the jury must address this ambiguity if not resolved against Mattel, the drafter.

**D. The Court should also reconsider its remaining errors, including apparent error with respect to California Labor Code § 2870, and reject Mattel's urging to persist in reversible error.**

Mattel also fails to rebut Bryant's arguments concerning California Labor

Code § 2870. Reconsideration of the Court's ruling concerning § 2780 is proper for all the reasons stated in Bryant's Motion, and nothing in Mattel's Opposition demonstrates otherwise. First, Bryant notes that his summary judgment briefing did raise this issue (although not so directly or at such length, because it was a secondary consideration related to a broader argument), and Mattel's claim that he is interjecting entirely new arguments is false. Bryant Opp'n at 11. Second, Mattel contends that the Court's Order does not in fact reach the result Bryant claims, but Mattel argued for precisely that result. Mattel cited the *Cadence* case (discussed in Bryant's Motion, and in his summary judgment briefing) for the untenable proposition that a contract that incorporates § 2870 is automatically co-extensive with the statute, and claims all inventions not subject to the statute's protection. Mattel makes no effort to justify that position now, but that is the position and the argument on which the Court apparently relied.

Finally, if Mattel is correct that Bryant has misread the Court's ruling on this point (and as Bryant's motion recognized, the Court's intent was perhaps not entirely clear), some clarification of what the Court intended could be helpful. However, Mattel's effort to provide its own revisionist version of the Court's ruling is illogical and unpersuasive. The Inventions Agreement assigns to Mattel all inventions *conceived or reduced to practice within certain time constraints* – not simply "all inventions," as Mattel now claims. The Agreement thus contains certain restrictions on the assignment of inventions, and the scope of those restrictions (conception, reduction to practice, and timing) is unclear in at least certain respects. Accordingly, the language of the Agreement does not support Mattel's alternative argument that the specific language of the agreement here claims Bryant's inventions to the fullest extent permitted by law (in other words, all inventions not protected by § 2870).[12]

---

[12] Mattel dismisses all of Bryant's arguments for reconsideration as mere repetition of his arguments on summary judgment, but in fact Bryant contends that the

## III. CONCLUSION

For all the foregoing reasons, Bryant respectfully requests that the Court reconsider and amend the erroneous portions of the Order in the exercise of the Court's inherent power to modify its non-final orders.

Dated: May 16, 2008

KEKER & VAN NEST, LLP

By: /s/ Christa M. Anderson
CHRISTA M. ANDERSON
Attorney for Plaintiff
CARTER BRYANT

---

Court's Order either manifestly failed to consider the material facts supporting Bryant's position, or else manifestly failed to consider Bryant's supporting evidence creating a material dispute as to those facts (which, of course, must be resolved on summary judgment in Bryant's favor, not Mattel's). Bryant also notes that his motion was not only for reconsideration, but for certification of an interlocutory appeal on similar issues. Mattel's listing of supposedly "repetitive" arguments by Bryant in fact simply highlights some of the Order's failures to consider material facts (or disputes of fact) favorable to Bryant. *See* Opp'n at 13. Bryant has honored the Local Rules by not repeating those arguments, but only highlighting for the Court the erroneous aspects of the Order. Nonetheless, the Court can and should reconsider them to correct these manifest errors. It is certainly within the Court's power to consider any arguments raised in Bryant's motion for interlocutory appeal, or anywhere else, to ensure its rulings are accurate and fair, even if not all of those issues would independently support a motion for reconsideration. Local Rule 7-18 does not limit the Court's own authority to reconsider its orders as necessary to do justice and ensure a fair trial and legal process for all litigants. *See United States v. Martin*, 226 F.3d 1042, 1048 & n. 8 (9th Cir. 2000).