QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | SUPPLEMENTAL DECLARATION OF B. DYLAN PROCTOR IN OPPOSITION TO THE MGA PARTIES' REQUEST FOR RULE 56(F) RELIEF IN CONNECTION WITH MATTEL INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | Date:   May 19, 2008<br>Place:  1:30 p.m. |
| | **Phase 1**<br>Pre-Trial Conference:   May 19, 2008<br>Trial Date:                  May 27, 2008 |

07209/2508534.1

PROCTOR DECLARATION

## DECLARATION OF B. DYLAN PROCTOR

I, B. Dylan Proctor, declare as follows:

1.     I am a member of the bar of the State of California and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel").  I make this declaration of personal, firsthand knowledge, except as where otherwise indicated.

2.     In his Rule 56(f) declaration in support of the MGA Parties' Opposition to Mattel's Motion for Partial Summary Judgment dated March 24, 2008, Thomas Nolan, counsel for the MGA Parties, identified a discovery issue that, if granted, would purportedly result in discovery of information related to the statute of limitations defense.  The MGA Parties have now lost on this issue.  Accordingly, upon undisputed evidence, Mattel is entitled to summary judgment in its favor on defendants' affirmative defense of statute of limitations.

3.     The first motion that Mr. Nolan identifies in his declaration is MGA's Motion to Compel Discovery on Issues As to Which Mattel Has Waived Attorney-Client and Work-Product Privileges by Claims Assertion.  Nolan Decl., ¶¶ 2-4.  On April 25, 2008, the Discovery Master denied this motion.  A true and correct copy of this Order is attached hereto as Exhibit A.  On May 15, 2008, this Court denied the MGA Parties' Motion objecting to the Discovery Master's Order.  A true and correct copy of the Court's Order is attached hereto as Exhibit B.

4.     Mr. Nolan also contends that "in the deposition [of Mattel's Rule 30(b)(6) witness, Kathleen Simpson-Taylor], the MGA Parties did not obtain testimony from an adequately prepared designee of the underlying facts that would establish what Mattel knew or had reason to suspect prior to November 2003 regarding the claims asserted in this matter.  The MGA Parties will file supplemental papers concerning these outstanding discovery issues shortly."  Nolan Decl., ¶ 5.  However, the MGA Parties did not move to compel further testimony

1 │ from that witness.  Instead, they filed a supplemental brief in support of the Motion
2 │ to Compel Discovery on Issues As to Which Mattel Has Waived Attorney-Client
3 │ and Work-Product Privileges by Claims Assertion, in which they contended that Ms.
4 │ Simpson-Taylor's purportedly inadequate testimony justified a finding of waiver.
5 │ As stated above, the Discovery Master denied the MGA Parties' motion, and the
6 │ Court denied the MGA Parties' motion objecting to the Discovery Master's order.
7 │      5.    Mr. Nolan also states in his declaration that the MGA Parties
8 │ have not received a complete production of documents showing "an effort to enforce
9 │ the Employee Confidential Information and Inventions Agreement."  Nolan Decl.,
10 │ ¶ 6.  The MGA Parties contended these documents are relevant to their affirmative
11 │ defenses of waiver, estoppel, acquiescence, consent, abandonment, and mitigation.
12 │ Id.  This is irrelevant to the statute of limitations issues before the Court.  In any
13 │ case, Mattel has produced the responsive documents.  The MGA Parties have not
14 │ filed a motion challenging the sufficiency of Mattel's production.
15 │      I declare under penalty of perjury under the laws of the United States of
16 │ America that the foregoing is true and correct.
17 │      Executed on May 16, 2008, at Los Angeles, California.

B. Dylan Proctor

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California  94111
    Telephone:     (415) 774-2611
4   Facsimile:      (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12   CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
13                  Plaintiff,

14         v.                               Consolidated with
                                            Case No. CV 04-09059
15   MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

16                  Defendant.              ORDER DENYING MGA'S MOTION
                                            TO COMPEL DISCOVERY AS TO
17                                          ISSUES AS TO WHICH MATTEL HAS
                                            PURPORTEDLY WAIVED THE
18                                          ATTORNEY-CLIENT AND WORK
                                            PRODUCT PRIVILEGES BY CLAIM
19                                          ASSERTION

20   CONSOLIDATED WITH
     MATTEL, INC. v. BRYANT and
21   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.
22

23

24                          I. INTRODUCTION

25        On January 18, 2008, MGA Entertainment, Inc., ("MGA") submitted a "Motion to

26   Compel Discovery as to Issues as to Which Mattel has Waived the Attorney-Client and Work

27   Product Privileges by Claims Assertion."  At issue is whether, under the standards set forth in

28
     Bryant v. Mattel, Inc.,                                                    1
     CV-04-09049 SGL (RNBx)

1    Hearn v. Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975), Mattel has impliedly waived the

2    attorney-client privilege and work product doctrine concerning what it knew or had reason to

3    suspect, prior to November 2003, regarding (a) Carter Bryant's involvement in Bratz, (b) his

4    alleged breach of contract, (c) his work for MGA, and/or (d) Mattel's alleged ownership of Bratz.

5    On January 31, 2008, Mattel, Inc. ("Mattel") submitted an opposition, and on February 5, 2008,

6    Mattel submitted a reply.  On April 7, 2008, MGA submitted a twenty-one page supplemental

7    memorandum of points and authorities, the declaration of Lance Etcheverry and the second

8    supplemental declaration of Marcus Mumford.  On April 11, 2008, Mattel submitted the

9    declaration of Dylan Proctor.  The matter was heard on April 11, 2008.

## II. BACKGROUND

10          In July of 2007, Mattel filed counterclaims alleging, inter alia, that it was the "true owner

11    of Bratz" pursuant to agreements it had with Carter Bryant ("Bryant"), and that Bryant

12    "conceived, created or reduced to practice" Bratz designs and worked for MGA while employed

13    at Mattel.  Mumford Decl., Ex. 1, Second Amended Counterclaim, ¶¶23-27, 29, 34.  Mattel

14    alleged that "Bryant and MGA deliberately and intentionally concealed facts sufficient for Mattel

15    to suspect or to know that it was the true owner of Bratz . . . . includ[ing] . . . the fact that Bryant

16    conceived, created, designed and developed Bratz while employed by Mattel, . . . the fact that

17    Bryant worked with and assisted MGA during the time Bryant was employed by Mattel, . . . [and]

18    concealing Bryant's role in Bratz."  Id. at ¶35.  Further, Mattel alleged that:

19          [b]ecause of Bryant's and MGA's acts of concealment. . . Mattel had no reason to
          suspect that Bryant had worked with MGA, or assisted MGA, while he [sic] still
20          employed by Mattel until approximately November 24, 2003, when Mattel
          received, through an unrelated legal action, a copy of Bryant's agreement with
21          MGA, which showed that the date of Bryant's agreement with MGA predated
          Bryant's departure from Mattel.  It was then, as a result, that Mattel learned for the
22          first time that Bryant had secretly aided, assisted and worked for and with MGA .
          . . in violation of his Mattel Employment Agreement.
23
    Id. at ¶¶35-36.  Based on the above, Mattel asserted numerous claims against MGA and Bryant,
24
    including, inter alia, copyright infringement, civil RICO violations, conspiracy to violate RICO,
25
    breach of contract, intentional interference with contract, breach of fiduciary duty, aiding and
26
    abetting breach of fiduciary duty, breach of duty of loyalty, aiding and abetting breach of duty of
27
    loyalty, conversion, unfair competition, and declaratory relief.
28

1    MGA and Bryant denied the allegations in Mattel's counterclaims and pleaded several

2  affirmative defenses, including statute of limitations and laches.  MGA and Bryant sought and

3  received discovery relating to these two defenses.  More specifically, MGA and Bryant obtained

4  interrogatory responses, documents, admissions, and deposition testimony directed to when, in

5  fact, Mattel first had reason to suspect Bryant's involvement in Bratz, his alleged breach of

6  contract, his work for MGA, and Mattel's alleged true ownership of Bratz.

7    In response to an interrogatory, Mattel provided the following information relating to

8  when and how Mattel first learned that Bryant performed work for MGA:

9        To Mattel's knowledge, Bryant was first confirmed as the Bratz designer in the
       July 18, 2003 *Wall Street Journal* article, in which Isaac Larian also indicated that
10      Bryant had been involved in some manner with MGA in or about "late 1999."

11       Subsequently, in November 2003, Mattel obtained a copy of a contract between
       defendant Carter Bryant and defendant MGA . . . .  Through this agreement,
12      Mattel concluded that Bryant . . . worked as a designer for a Mattel competitor,
       MGA.

13

14  Mumford Decl., Ex. 17.  Mattel later supplemented its response to state:  "[a]fter Bryant left

15  Mattel, but prior to the July 18, 2003 [*Wall Street Journal*] article, there was rumor and innuendo

16  that Bryant may be working with MGA on Bratz."  Id., Ex. 3.  Mattel's supplemental interrogatory

17  response also includes an assertion that Bryant used several Mattel employees to work on the

18  Bratz dolls so that the Bratz dolls "had been designed and were far along in development during

   the time that Bryant was employed by Mattel."  Id., Ex. 4.

19    In the instant motion, MGA contends that Mattel has impliedly waived the attorney-client

20  and work product privileges concerning what Mattel knew or had reason to suspect, prior to

21  November 2003, regarding (a) Bryant's involvement in Bratz, (b) his alleged breach of contract,

22  (c) his work for MGA, and/or (d) Mattel's alleged true ownership of Bratz.  MGA reasons that in

23  order to avoid the statute of limitations and laches doctrine, Mattel affirmatively injected into this

24  litigation the issue of what it knew or had reason to suspect prior to November 2003 regarding

25  these subjects, and that Mattel has denied MGA access to information vital to its defenses by

26  asserting the attorney-client privilege and work product doctrine.  MGA contends that fairness

27  dictates that MGA be given access to all evidence that might show what Mattel knew or had

28

1   reason to suspect concerning these subjects, including attorney-client communications and work

2   product. MGA further contends that, based upon the discovery it has received to date, there is

3   good reason to believe that at least as early as the summer of 2001, when Bratz was first released,

4   Mattel suspected or had reason to suspect that Bryant was involved in Bratz and that he also

5   worked for MGA while a Mattel employee. See MGA's Motion at pp. 2-5. MGA seeks an order

6   (1) finding that Mattel has waived the attorney-client privilege and work product doctrine

7   concerning what Mattel knew or had reason to suspect prior to November 2003 regarding Bryant's

8   involvement in Bratz, his alleged breach of contract, his work for MGA, and/or Mattel's alleged

9   true ownership of Bratz, and (2) compelling Mattel to supplement its pertinent discovery

10  responses and document productions accordingly.

11          Mattel contends that there is no basis for finding a waiver because Mattel has not

12  affirmatively placed its privileged communications at issue. Mattel draws a clear distinction

13  between pleading fraudulent concealment and relying on privileged information to support that

14  pleading. Mattel contends that under Ninth Circuit precedent, merely pleading fraudulent

15  concealment does not place privileged information at issue, and therefore cannot support a finding

16  of waiver. Mattel reasons that if this were the rule, the privilege would be waived any time a

17  party asserts fraudulent concealment simply because privileged information may be probative of

18  what a party knew.

19          In Mattel's view, the Ninth Circuit has only found that a party affirmatively put privileged

20  information at issue in two situations: (1) where a party relies on privileged information to

21  support a claim or defense, and (2) where the only evidence available to assess the truthfulness of

22  a party's claim or defense consists of privileged information.  Mattel contends neither situation is

23  present here. Mattel contends that it has not relied upon any privileged information to support its

24  fraudulent concealment allegation, and that the evidence related to its fraudulent concealment

25  allegations is not solely privileged. Mattel also denies shielding any of the facts of when and how

26  it learned that Bryant allegedly worked for MGA while he was employed by Mattel.

27  Furthermore, Mattel contends that in view of the substantial non-privileged information that exists

28  and has been produced, MGA cannot show that Mattel's claims of privilege have denied MGA

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

1   information critical to its defenses.

2   ## III. DISCUSSION

3   In Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975), the court established a three-part test

4   for determining whether a party has impliedly waived the attorney-client privilege and work

5   product privileges as to subject matter the party has placed at issue.  The Hearn test for finding an

6   implied waiver requires that:

7   > (1) assertion of the privilege was a result of some affirmative act, such as filing
    > suit, by the asserting party; (2) through this affirmative act, the asserting party put
    > the protected information at issue by making it relevant to the case; and (3)
8   > application of the privilege would have denied the opposing party access to
    > information vital to his defense.
9

10  Hearn, 68 F.R.D. at 581, see also Home Indem. Co v. Lane Powell Moss and Miller, 43 F.3d

11  1322, 1326 (9th Cir. 1995) (adopting the Hearn test in the Ninth Circuit); United States v. Amlani,

12  169 F.3d 1189, 1195 (9th Cir. 1999).  In the instant case, the second and third element of the

13  Hearn test are not satisfied, and therefore a finding of implied waiver is unwarranted.

14  Because the parties dispute the meaning of the second element of the Hearn test, the facts

15  in Hearn require careful scrutiny.  In Hearn, an inmate brought a civil rights action against prison

16  officials complaining of his confinement at a state penitentiary and sought discovery of

17  information to negate the defense that the prison officials acted in good faith and were therefore

18  immune from suit for damages.  The Hearn court found that defendants had impliedly waived the

19  attorney-client privilege.  With respect to the second element, the court reasoned that defendants

20  had placed privileged information at issue, "for the legal advice they received is germane to the

21  qualified immunity defense they raised."  Hearn, 68 F.R.D. at 851.  Despite the court's use of the

22  term "germane," it is apparent later in the decision that the court's holding was based upon a

23  finding that the privileged information was more than merely "germane" to the defense raised.

24  The court stated that defendants' communications with their attorney were "inextricably merged

25  with the elements of plaintiff's case and defendants' affirmative defense."  Id. at 582.  The court

26  also emphasized that "[t]hese communications are not incidental to the case; they inhere in the

27  controversy itself, and to deny access to them would preclude the court from a fair and just

28  determination of the issues."  Id.

1    Other cases applying Hearn make clear that it is not enough that the privileged

2 information be merely germane or relevant to an issue asserted in the case in order to satisfy the

3 second element of the Hearn test. See U.S. v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999)

4 ("[p]rivileged communications do not become discoverable simply because they are related to

5 issues raised in the litigation"). Rather, courts have found that a party affirmatively puts at issue

6 privileged information when that party relies on privileged communications or work product in

7 support of its claims or defenses. See e.g. Chevron Corp. v. Pennzoil Co., 974 F.2d 1156 (9th Cir.

8 1992) (finding implied waiver where defendant asserted advice of counsel defense).

9 Alternatively, courts have found that a party affirmatively puts at issue privileged information

10 when the only evidence available to assess a party's claim or defenses consists of privileged

11 information. See e.g. U.S. v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999) (finding implied

12 waiver where the only evidence of an essential element of plaintiff's attorney disparagement claim

13 was privileged communications); Holmgren v. Sate Farm Mutual Automobile Ins. Co., 976 F.2d

14 573, 577 (9th Cir. 1992) (in an action for bad faith claim settlement practices, finding implied

    waiver of work product regarding insurer's counsel's handling of a claim).

15    Indeed, two of the cases cited by MGA in support of waiver were predicated upon a party

16 putting at issue privileged information by relying on such information to defeat a statute of

17 limitations defense. For example, in In re Imperial Corp. of Amer., 179 F.R.D. 286 (S.D. Cal.

18 1998), the court found implied waiver where the plaintiff contended that it learned it had a claim

19 for legal malpractice by means of counsel's investigation. The plaintiff in that case testified "that

20 he relied on his attorney's advice and investigation regarding overcoming [defendant's] statute of

21 limitations defense." Id. at 288. Similarly, in Titan Corp. v. M/A-Com, Inc., 1994 WL

22 16001739, at *1 (S.D. Cal. 1994), the plaintiff indicated in discovery and elsewhere that it had no

23 actual knowledge of any alleged fraud by defendant until an investigation was conducted by its

24 counsel. The Titan court held that the "plaintiff put the alleged protected information in issue by

25 relying on its counsel's investigation in order to overcome the statute of limitations bar." Id. at *2.

26    A third case relied upon by MGA, Aloe Vera of America, Inc. v. United States, No. CV

27 99-1794 PHX JAT, 2003 WL 22429082 (D. Ariz. 2003), did not involve direct reliance on

28

1   privileged information. In <u>Aloe Vera</u>, the plaintiffs brought suit against the Internal Revenue

2   Service for an allegedly unauthorized disclosure of information to Japan's National Tax Authority

3   ("NTA"). Plaintiffs alleged that they first became aware of the basis of its claim when the

4   government provided information in response to its Freedom of Information Act ("FOIA")

5   complaint demanding release of documents. Plaintiffs attempted to avoid discovery of privileged

6   documents relating to the "date of discovery" issue by arguing that their Second Amended

7   Complaint made no affirmative reference to their attorneys' investigations as to the accrual of a

8   cause of action. The court rejected plaintiffs' argument because the evidence in the record

9   demonstrated, among other things, that plaintiffs' retained counsel filed the FOIA request,

10  received a partial response to their FOIA request, and wrote a letter to the IRS stating that IRS

11  conclusions were erroneous and that these conclusions were communicated to the NTA. The

12  court also noted that plaintiffs claimed in their Second Amended Complaint that several years

13  before suit was filed, their "representatives" (whom the court suspected were plaintiffs' attorneys)

14  were threatened by an NTA official with a press leak to coerce Plaintiffs into accepting their audit

15  proposal. Therefore, the court concluded that plaintiffs' attorneys' involvement in plaintiffs'

16  alleged date of discovery had been placed "at issue" in the case.[1]

17      In the instant case, Mattel has not affirmatively put at issue privileged information in

18  support of its claim or defense. Mattel's complaint does not refer directly or indirectly to any

19  attorney investigation or attorney involvement in Mattel's alleged discovery of the basis of its

20  claims. Nor has Mattel alleged that it learned the basis of its claims by means of privileged

21  attorney-client communications or work product. Mattel's discovery responses also make clear

22  that Mattel is not relying on any privileged information to support its allegations of fraudulent

23  concealment. Instead, Mattel has disclosed that it first learned of the basis of its claims when it

24  received a copy of Bryant's agreement with MGA in unrelated litigation. Therefore, the second

25  element of the <u>Hearn</u> test has not been satisfied.

26

27

28  _____

29  [1] This court declines to follow <u>Rambus Inc. v. Samsung Electronics Co., Ltd.</u>, 2007 WL 344376 (N.D. Cal. Nov. 3, 2007), as it appears to be inconsistent with the cases discussed immediately above.

1    Furthermore, the third element of the Hearn test is clearly dispositive in this case because

2    MGA cannot show that application of the privilege would deny it access to information "vital" to

3    its defense. Courts applying Hearn in the Ninth Circuit and elsewhere have construed "vital" to

4    mean that the information sought is not available from other sources. See Amlani, 169 F.3d at

5    1195 ("When the sought-after evidence is 'only 'one of several forms of indirect evidence' about

6    an issue," the privilege has not been waived.") (citing Hamilton v. Lumsden (In re Geothermal

7    Resources Int'l, Inc.), 93 F.3d 648, 653 (9th Cir. 1996); see also 1st Sec. Bank of Wash. v. Eriksen,

8    2007 WL 188881, at *3 (W.D. Wash 2007) ("[u]nder Hearn, the information sought must be

9    'vital' to defendants' case, meaning that the information is available from no other source").

10    In the instant case, there are many other means of proof available to MGA to support its

11    statute of limitations and laches defenses.  Mattel has produced hundreds of pages of non-

12    privileged documents regarding its investigations relating to Bryant and/or MGA, including the

13    2002 investigations regarding the "anonymous letter" and potential copyright infringement of

14    Mattel's Toon Teens. In addition, MGA took the deposition of Richard De Anda, Mattel's head of

15    security, who testified regarding how and when Mattel first investigated Bryant and MGA. Mr.

16    De Anda confirmed that he had not even heard of MGA, Bryant or Bratz before March 2002.

17    Mattel has also provided interrogatory responses explaining its investigations of Bryant and

18    MGA, and how and when it first learned of Bryant's allegedly wrongful conduct that forms the

19    basis for Mattel's claims.  Significantly, Mattel provided the following information:

20    Mattel conducted an investigation in Spring 2002 based on allegations that
      Bryant may have plagiarized "Toon Teens" and created Bratz dolls for MGA, and
      later in August 2002 based on an anonymous letter sent to Mattel.  The letter's
      author (whoever it was) offered no evidence for his or her allegations.  The
      potential claims investigated in 2002 have not been asserted in this case.  In
      March 2002, Mattel investigated allegations of possible copyright infringement of
      "Toon Teens" designs, not whether Mr. Bryant created Bratz or worked with
      MGA during his Mattel employment.  The potential claims investigated in 2002
      did not give Mattel any knowledge, or even reason to believe, that Bryant worked
      for MGA and/or conceived of Bratz while a Mattel employee.

25    Subsequently, on November 24, 2003, Mattel obtained a copy of a
      contract between defendant Carter Bryant and defendant MGA.  That contract –
      which Bryant and MGA had entered into while Bryant was employed by Mattel –
      required Bryant to provide design services to MGA on a "top priority" basis, in
      conflict with his then-existing obligations to Mattel.  It also purported to grant
      MGA ownership of works produced by Bryant both before and after the
      agreement's effective date, in further contravention of his obligations to Mattel.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                              8

1    Through this agreement, Mattel first determined that it was likely that Bryant
2    worked as a designer for a Mattel competitor, MGA, while being employed and
     paid by Mattel for his exclusive services as a designer.

3    Supp. Responses to MGA's First Set of Interrogatories at p. 13, attached as Ex. 3 to Mumford

4    Decl. MGA has also had the opportunity to question Mattel's in-house lawyer, Michael Moore,

5    during an evidentiary hearing conducted by the district court.

6        In addition, MGA recently took the deposition of Mattel's 30(b)(6) designee on several

7    topics relevant to MGA's defenses, including all acts, omissions, circumstances and/or evidence

8    showing, or tending to show (1) when Mattel first became aware of any alleged wrongful conduct

9    of Bryant, (2) the manner and mode by which Mattel first became aware of any alleged wrongful

10   conduct of Bryant, (3) when Mattel first became aware that Bryant was involved in the

11   conception, creation, design and/or reduction to practice of Bratz, (4) how Mattel first became

12   aware that Bryant was involved in the conception, creation, design and/or reduction to practice of

13   Bratz, and (5) all actions taken by Mattel, including but not limited to all circumstances

14   surrounding any investigations Mattel has undertaken, relating to Bratz after Mattel learned that

     Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz.

15       MGA contends, however, that Mattel "deliberately under-prepared the 30(b)(6) witness on

16   statute of limitations and laches topics so that she would testify that nothing Mattel's Legal

17   Department or Security Department investigated prior to November 2003 could possibly have put

18   the company on notice of the facts underlying its claims in this litigation." MGA's Supplemental

19   Submission at p.1. MGA contends further that "[b]ecause the witness was shielded during her

20   preparation from critical facts that might show otherwise, it was tantamount to Mattel making a

21   privilege assertion before-the-fact rather than at the deposition itself." Id. at pp. 1-2. In

22   particular, MGA contends that the witness was not given access to Mattel's Legal Department's

23   file or redacted portions of Mattel's Security Department's files, or spoke to anyone about those

24   files, to ascertain what underlying facts had been disclosed or uncovered by Mattel in any of its

25   pre-November 2003 investigations. Id. at p.2.

26       A review of the deposition transcript, however, reveals that Mattel's 30(b)(6) witness

27   provided substantial testimony relevant to MGA's defense. Over the course of a ten hour day,

28

1    Mattel's corporate designee gave over three hundred pages of testimony and freely answered all

2    but a handful of questions posed to her on this subject. The transcript shows that the witness fully

3    cooperated and gave responses to the best of her ability. Mattel's counsel did not obstruct MGA's

4    questioning of the witness. Nor did Mattel's counsel object to any questions based upon the

5    attorney-client privilege. The witness provided significant factual evidence related to how and

6    when Mattel first learned that Bryant was working for MGA while he was employed by Mattel.

7    Indeed, MGA has not pointed to any significant deficiencies in the witness' preparedness, other

8    than the witness' lack of knowledge concerning the contents of Mattel's Legal Department files

9    and Security Department investigation files. It is unclear, however, whether the witness' failure to

10   review the contents of Mattel's Legal Department and Security Department files materially

11   affected MGA's ability to obtain full and complete testimony because the witness was

12   knowledgeable about the scope of investigations conducted by both departments. In any event,

13   MGA's remedy lies in resumption of the deposition, and not the expansive subject matter waiver

     of privileged information MGA now seeks.

14        MGA next contends that the privileged information it seeks is vital because Mattel, in an

15   effort to defeat MGA's summary judgment motion, submitted the declaration of its in-house

16   counsel, Michael Moore, attesting that "Mattel knew nothing that could remotely put it on notice

17   of the facts underlying this lawsuit until November 24, 2003." MGA's Supp. Submission at p.2,

18   Second Supp. Mumford Decl., Ex. 2. Although Mattel's recent submission might arguably affect

19   the analysis under the second element of the Hearn test, it does not change the analysis under the

20   third prong. As previously discussed, Mattel has already produced substantial evidence related to

21   MGA's statute of limitations and laches defenses. MGA has not been denied factual evidence

22   related to how and when Mattel first learned that Bryant was working for MGA while he was

23   employed by Mattel. Therefore, the confidential information MGA now seeks is not "vital" to its

24   defense.

                                      IV. CONCLUSION

25        For the reasons set forth above, MGA's motion to compel discovery of information

26   protected by the attorney-client privilege and work product immunity based on waiver by claim

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                                                              10

1  assertion is DENIED.

2      Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

3  Master, Mattel shall file this Order with the Clerk of Court forthwith.

4

5  Dated: April 25, 2008

/s/
_____
HON. EDWARD A. INFANTE (Ret.)
Discovery Master

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on April 25, 2008, I served the attached ORDER DENYING MGA'S MOTION TO COMPEL DISCOVERY AS TO ISSUES AS TO WHICH MATTEL HAS PURPORTEDLY WAIVED THE ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES BY CLAIM ASSERTION in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| David C. Scheper, Esq. | Overland, Borenstein, et al. | dscheper@obsklaw.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on April 25, 2008, at San Francisco, California.

_____
Sandra Chan

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc
(RNBx), AO279, DISCOVERY, PROTORD, RELATED-G

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Alger, Timothy on 4/25/2008 at 10:49 AM PDT and filed on 4/25/2008

**Case Name:**        Carter Bryant v. Mattel Inc
**Case Number:**     2:04-cv-9049
**Filer:**                 Mattel Inc
**Document Number:** 3284

**Docket Text:**
Order Denying MGA's Motion to Compel Discovery as to Issues as to Which Mattel has Purportedly Waived the Attorney Client and Work Product Privileges by Claim Assertion filed by Counter Claimant Mattel Inc, Defendant Mattel Inc re: MOTION to Compel DISCOVERY AS TO ISSUES AS TO WHICH MATTEL HAS WAIVED THE ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGES BY CLAIMS ASSERTION [1667] (Alger, Timothy)

**2:04-cv-9049 Notice has been electronically mailed to:**

Juan Pablo Alban     juanpabloalban@quinnemanuel.com

Timothy L Alger      timalger@quinnemanuel.com

Christa M Anderson    canderson@kvn.com

Linda M Burrow      burrow@caldwell-leslie.com

Jon D Corey       joncorey@quinnemanuel.com

Alexander H Cote     acote@obsklaw.com, feseroma@obsklaw.com

Leah Chava Gershon    leah@spertuslaw.com

Scott E Gizer       sgizer@chrisglase.com

Melissa Grant       melissagrant@quinnemanuel.com

Emil W Herich       cherich@kmwlaw.com

Diane C Hutnyan     dianehutnyan@quinnemanuel.com, andreahoeven@quinnemanuel.com

John W Keker    jkeker@kvn.com, DRoberts@kvn.com, efiling@kvn.com

Raoul D Kennedy    rkennedy@skadden.com

Alisa Morgenthaler Lever    amorgenthaler@chrisglase.com

Larry W McFarland    lmcfarland@kmwlaw.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

Thomas J Nolan    tnolan@skadden.com, carl.roth@skadden.com, marcus.mumford@skadden.com

Mark E Overland    moverland@obsklaw.com, jhibino@obsklaw.com

Michael H Page    mhp@kvn.com, efiling@kvn.com

Kenneth A Plevan    kenneth.plevan@skadden.com, drogosa@skadden.com, sumclaug@skadden.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com

Rebekah L Punak    rpunak@kvn.com, lhartzlewis@kvn.com

John B Quinn    johnquinn@quinnemanuel.com

Jason D Russell    jrussell@skadden.com, allison.velkes@skadden.com

David C Scheper    dscheper@obsklaw.com, feseroma@obsklaw.com

Oleg Stolyar    alexstolyar@quinnemanuel.com

John Elliot Trinidad    jtrinidad@kvn.com, cparker@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock    awaltonhadlock@kvn.com

Matthew M Werdegar    mmw@kvn.com

Michael T Zeller    michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Lauren E Aguiar
Skadden Arps Slate Meagher & Flom
1440 New York Ave
Washington, DC 20005-2111

Marina Vladimir Bogorad
Skadden Arps Slate Meagher & Flom
300 S Grand Ave, Ste 3400
Los Angeles, CA 90071-3144

David W Foster

Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue NW
Washington, DC 20005-2111

Michael P Kelly
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue NW
Washington, DC 20005-2111

James E Lyons
Skadden Arps Slate Meagher & Flom
4 Embarcadero Center
Ste 3800
San Francisco, CA 94111-5974

Nathan Meyer
Kaye Scholer
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067

Cheryl Plambeck
Davis & Gilbert LLP
1740 Broadway
New York, NY 10019

Amy R Sabrin
Skadden Arps Slate Meagher & Flom LLP
1440 New York Avenue NW
Washington, DC 20005-2111

Kien C Tiet
Stern and Goldberg
6345 Balboa Boulevard, Suite 200
Encino, CA 91316

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\albertvillamil\Desktop\Order Denying MGA's Motion to Compel Discovery.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=4/25/2008] [FileNumber=5749787-0] [24092e201a92d25718795093b78cd2016f9b3343b0e20a1f82a2de7e392eccdb6461 53d56b410a397c305873194c7d3dfc9bc339012a0dd24e0b198dddc27856]]

Case 2:04-cv-09049-DOC-RNB   Document 3689   Filed 05/16/08   Page 19 of 27   Page ID
#:66448
Case 2:04-cv-09049-SGL-RNB   Document 3669   Filed 05/12/2008   Page 1 of 9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.   CV 04-09049 SGL(RNBx)                    Date:  May 12, 2008
Title:     CARTER BRYANT -v- MATTEL, INC.

<u>Consolidated With Related Actions:</u>
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
=======================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

               Jim Holmes                          Theresa Lanza
               Courtroom Deputy Clerk              Court Reporter

<u>ATTORNEYS PRESENT FOR CARTER</u>        <u>ATTORNEYS PRESENT FOR MATTEL:</u>
<u>BRYANT</u>:
                                        Jon D. Corey
Matthew M. Werdegar                     Harry A. Olivar
                                        Timothy L. Alger
                                        Diane Hutnyan


<u>ATTORNEYS PRESENT FOR MGA</u>           <u>ATTORNEYS PRESENT FOR THIRD</u>
<u>PARTIES</u>:                            <u>PARTIES</u>

Thomas J. Nolan                         Sandra I. Tholen
Raoul D. Kennedy                        for Matthew Bousquette

                                        Christian C. Dowell
                                        for AnaElise Cloonan, Margaret Hatch-Leahy,
                                        and Veronica Marlow


**PROCEEDINGS:   ORDER RULING ON DISCOVERY MOTIONS**

        The Court heard argument regarding eleven motions seeking review of various orders of
the Discovery Master.

Case 2:04-cv-09049-DOC-RNB   Document 3689   Filed 05/16/08   Page 20 of 27   Page ID
#:66449
Case 2:04-cv-09049-SGL-RNB      Document 3669      Filed 05/12/2008      Page 2 of 9

As agreed by the parties and as ordered by the Court, the Court reviews the orders of the Discovery Master under the standard set forth in Fed. R. Civ. P. 72(a), and will modify or set aside only those parts of the Discovery Master's orders that are clearly erroneous or contrary to law. This is a deferential standard, under which the Court upholds rulings on issues that it perhaps would have resolved differently if presented with them in the first instance.

With this standard in mind, the Court **DENIES** the following motions as neither clearly erroneous nor contrary to law:

2.   Docket # 3338 Mattel's Motion for Review of and Objecting to Discovery Master's April 14, 2008 Order Granting in Part Mattel's Motion to Compel Communications Regarding this Action;

5.   Docket # 3443 Mattel's Motion Objecting to Portions of Discovery Masters April 14, 2008, Order Denying Motion to Compel Production in Response to Mattel's Fifth Set of Request for Production of Documents;[1]

8.   Docket # 3334 Mattel's Motion to Set Aside Order of Discovery Master, dated April 11, 2008, Granting in Part MGA's Motion to Compel Mattel to Produce a Witness Pursuant to Notice of Deposition Pursuant to Rule 30(b)(6);[2]

10.   Docket # 3289 Mattel's Motion for Review of and Objecting to Portions of the Discovery Master's April 11, 2008 Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Electronic Media from Third Parties Elise Cloonan, Margaret Hatch-Leahy and Veronica Marlow;

11.   Docket # 3287 Ana Elise Cloonan's Motion Objecting to Portions of the Discovery Master's April 11, 2008, Order Regarding Further Examination of Ms. Cloonan's Computer and Zip Disk; and

---

[1]   The Court considered the issues as presented to the Discovery Master rather than the more narrow issues presented by Mattel's post hoc efforts to compromise. See Motion at 4 n.17.

[2]   At the hearing, counsel raised two points regarding this motion in need of clarification. First, the parties' positions differ as to whether the need for discovery regarding Mattel employees who have refused to sign the Inventions Agreement has been mooted by the Court's Order addressing the parties' motions for partial summary judgment. It has not. The Court's ruling that the Inventions Agreement is enforceable is based strictly on contract construction and does not take into account the unresolved equitable affirmative defenses. Second, the parties are in agreement that four issues, set forth in Mattel's Reply at 10-11, are related only to Phase 2. Although the Court at this time upholds the Discovery Master's Order compelling testimony regarding these topics, the deposition as to these four Phase 2 topics is nevertheless subject to the Order staying all Phase 2 discovery.

Initials of Deputy Clerk: jh
Time:  1/35

Case 2:04-cv-09049-DOC-RNB  Document 3689  Filed 05/16/08  Page 21 of 27  Page ID
#:66450
Case 2:04-cv-09049-SGL-RNB    Document 3669    Filed 05/12/2008    Page 3 of 9

12.     Docket # 3483 Mattel's Motion for Review of Discovery Master's April 22, 2008 Order
        Denying Motion To Compel Additional Deposition Testimony Of Veronica Marlow.

        The issues raised in each of the above motions represent the Discovery Master's balancing
of relevant factors against the burdens of production, and the relevant findings and conclusions
are neither clearly erroneous nor contrary to law.

        The Court **GRANTS** the following motion:

1.      Docket # 3314 MGA's Motion for Review of Discovery Master's April 22, 2008 Order
        Granting Matthew Bousquette's Motion To Quash Subpoena.

        The Discovery Master improperly concluded that Mr. Bousquette does not reside in
California. Based on the evidence before this Court that Mr. Bousquette owns a residence (upon
which he claimed a California homeowner's exemption) and business in California; is registered to
vote in California; holds a California driver license and has registered several motor vehicles with
the state of California Department of Motor Vehicles, the Court finds that Mr. Bousquette is in fact
a resident of California. The Court therefore sets aside the Discovery Master's Order quashing
the subpoena of Matthew Bousquette. The Court orders that Mr. Bousquette be deposed on May
17, 2008, in Palm Springs, California, the city of his residence.

        The Court **GRANTS IN PART AND DENIES IN PART** the following motion:

4.      Docket # 3398 Mattel's Motion Objecting to Discovery Master's Denial of Motion to
        Compel Production of Document Bates Numbered MGA 3801819-22.

        The Discovery Master did not consider this motion on its merits, instead ruling that he
would not decide motions filed after April 16, 2008. The Court, therefore, considers the motion in
the first instance and rules as follows:

        Although styled a motion to compel production of a four-page document, the motion, in
substance, is addressed to two lines redacted from MGA 3801819. The redacted lines are
composed of three parts: (1) A listing of three first names, separated by slashes, and followed by
a colon; (2) a request addressed to the three named people (consisting of a five-word sentence);
and (3) a one-sentence declaration addressed to them.

        In a declaration filed with the Court, Mr. Larian, the author of the redacted message, states
that the purpose of this message was to seek legal advice. Notwithstanding this declaration, only
the second of the three parts of the redaction is reasonably susceptible to the meaning Mr. Larian
attributes to the whole. Absent even from this part is language that suggests legal advice was
sought, such as: "Let me know what you think," "Please advise," or "Let's discuss further."
Nevertheless, Mr. Larian states that the purpose of this message was to seek legal advice and,
because this language is reasonably susceptible to that meaning, the Court holds that the five-
word sentence beginning with the polite "Please" and ending the with the temporal acronym

Case 2:04-cv-09049-DOC-RNB   Document 3689   Filed 05/16/08   Page 22 of 27   Page ID
#:66451
Case 2:04-cv-09049-SGL-RNB   Document 3669   Filed 05/12/2008   Page 4 of 9

"ASAP" is privileged and may remain redacted.

The third part, the declarative sentence, is not reasonably susceptible to the seeking of legal advice:  It is a declaration by MGA's CEO to a number of employees of what must be done – or, more accurately, what must not be done.  It is edict, not inquiry.

To the extent that it may be contended by MGA or Mr. Larian that the two sentences must be read in harmony to comprise one singular message, the declarative nature of the third part, when read together with the lack of inquiry language of the second part, would lead the Court only to the conclusion that the second part is also not privileged; it would not compel a conclusion that the third part is also privileged.

Accordingly, MGA must provide to Mattel, within two days of the entry of this Order, a copy of MGA 3801819 that eliminates the redaction of the three names that identifies to whom the message is addressed and of the sentence that begins, "There must be no mention of," and ends with "etc.".

The Court **DENIES** the following motion:

6.     Docket # 3410 MGA's Motion Objecting to Discovery Master's April 25, 2008, Order
       Denying MGA's Motion to Compel Discovery on Issues as to Which Mattel has
       Waived the Attorney-Client and Work Product Privileges;

On April 25, 2008, the Discovery Master issued a well-reasoned order denying MGA's motion to compel discovery as to issues upon which MGA contended Mattel had waived the attorney-client and work product privileges.  The Court leaves this Order undisturbed, and therefore **DENIES** MGA's motion.

The Discovery Master correctly applied the so-called <u>Hearn</u> test, which traces its roots back to the district court opinion of <u>Hearn v. Rhay</u>, 68 F.R.D. 574, 581 (E.D. Wash. 1975), to determine whether Mattel had waived the privilege as to materials related to the accrual of its claims.  That test may be stated as follows:

> First, the court considers whether the party is asserting the privilege as
> the result of some affirmative act, such as filing suit. . . .  Second, the
> court examines whether through this affirmative act, the asserting party
> puts the privileged information at issue. . . .  Finally, the court evaluates
> whether allowing the privilege would deny the opposing party access to
> information vital to its defense.

<u>United States v. Amlani</u>, 169 F.3d 1189, 1195 (9th Cir. 1999) (internal quotation marks and citation omitted).

In applying this test, the Discovery Master ruled that the first element was met, and this

Case 2:04-cv-09049-DOC-RNB  Document 3689  Filed 05/16/08  Page 23 of 27  Page ID
#:66452
Case 2:04-cv-09049-SGL-RNB   Document 3669   Filed 05/12/2008   Page 5 of 9

ruling is unchallenged by the parties.  However, the Discovery Master also ruled that the second
and third elements were not met.  These rulings are challenged by MGA.

Although the court finds the second element a close call, the third element is clearly not
met.  Although Mattel has privileged information relevant to a determination of claim accrual,
unless MGA would otherwise be denied evidence on this crucial topic, the privilege is not waived:

> It is true that privileged communications do not become discoverable
> simply because they are related to issues raised in the litigation. . . .
> When the sought-after evidence is only one of several forms of indirect
> evidence about an issue, the privilege has not been waived.

Id. (internal alteration marks, quotation marks, and citations omitted).  Here, MGA has had access
to, and has presented to the Court in connection with the motions for partial summary judgment,
other forms of material evidence regarding the accrual date of Mattel's claims.  Accordingly, the
Discovery Master's Order on this issue was neither clearly erroneous nor contrary to law, as all
three elements must be present to find waiver.  See Home Indem. Co. v. Lane Powell Moss and
Miller, 43 F.3d 1322, 1327 (9th Cir. 1995) (assuming the first two elements of the Hearn test had
been met but nevertheless finding no waiver because the third element was not).  Because the
Court finds that the Discovery Master correctly ruled that the third element was not met, thus
necessitating denial of the present motion, the Court does not consider what is effectively an
alternative basis for denial, i.e., whether the second element was met.

In connection with its ruling on this issue, the Court has received and reviewed the
unredacted version of the De Anda email referred to by the parties at the summary judgment
hearing.

The Court **GRANTS IN PART AND DENIES IN PART** the following motion:

7.  Docket # 3333 Mattel's Motion for Review of and Objecting to Portions of Discovery
    Master's April 14, 2008 Order Granting in Part and Denying in Part Mattel, Inc.'s
    Motion to Compel Production of Documents and Things.

The Discovery Master denied the motion to compel as overly broad and unduly
burdensome.  He also held that the requested discovery is not relevant and that it is unreasonably
cumulative of other discovery.

The Discovery Master erred in concluding that Mattel failed to establish the relevancy of its
requests.  The four requests which are at issue in this motion – Nos. 6, 15, 23, and 25 – are
clearly relevant to Mattel's claims and defenses.  Specifically, as set forth at page 5 of Mattel's
motion, MGA has challenged the protectibility of the Bratz drawings, has asserted that its three-
dimensional dolls cannot infringe the two-dimensional Bratz drawings, and has contended that the
dolls are not substantially similar to the Bratz drawings.  To the extent that MGA has contended
otherwise in other litigation – especially to the extent that they have successfully contended

Case 2:04-cv-09049-DOC-RNB    Document 3689    Filed 05/16/08    Page 24 of 27    Page ID
#:66453
Case 2:04-cv-09049-SGL-RNB    Document 3689    Filed 05/12/2008    Page 6 of 9

otherwise in other litigation − they are relevant to the issue of judicial estoppel.[3] To a lesser extent, they may be relevant as impeachment evidence.

Because a determination of whether discovery sought is unduly burdensome represents a balancing test (with relevancy being among the counterweights), see Fed. R. Civ. P. 26(c)(iii), the failure to discern the relevancy of evidence effects the accuracy of that balancing. In accordance with this concern, the Court examines the ruling as to each of the four requests at issue.

As to request number 6, the Court finds that the Discovery Master's ruling that the request is overly broad and unduly burdensome is neither clearly erroneous or contrary to law. Although such language is frequently used, the phrase requesting production of "all documents that refer or relate to" a given topic is fraught with the possibility that the request will be overly broad and unduly burdensome.

As to requests 15 and 23, the Court finds that the Discovery Master's ruling regarding overbreadth, burdensomeness, and unreasonable cumulativeness is contrary to law. Without focusing on the relevance of the judicial estoppel issue, it is tempting in this case to say that the tens of thousands of documents produced regarding a particular issue are enough. However, in asserting a judicial estoppel defense, Mattel is entitled to discover the known universe of court documents in which MGA has made statements regarding what products it contends has infringed its Bratz products, as well as any court orders addressing its statements. To the extent that MGA may have successful in staking out a position regarding its rights to Bratz that is contrary to positions taken in these consolidated actions, the integrity of the judicial process also supports discovery of documents establishing that fact.

Accordingly, the Court **ORDERS** that MGA produce within five days all non-privileged documents that are responsive to requests 15 and 23 (and that have not already been produced) that are in the custody or control of MGA or MGA's current or former counsel.

As to request 25, the Court finds that the Discovery Master's ruling that the request is overly broad and unduly burdensome is neither clearly erroneous or contrary to law. The requests presented in this motion represent a spectrum of burdensomeness. At one end is the request of "all documents that refer or relate to" Bratz claims, which represents a clearly burdensome production of documents. At the other end is the request for court documents that are likely to be maintained by counsel separately from other documents and that are not particularly burdensome to produce. In the middle is this request, which seeks "all documents" claiming infringement as to Bratz products. Here, although a closer call, which the Court may have decided it differently if it decided it in the first instance, the Court cannot conclude that the Discovery Master's ruling was

---

[3] In addition to being important to a defense advanced by Mattel, the doctrine of judicial estoppel, also known as the doctrine of preclusion of inconsistent positions, serves to protect the integrity of the judicial process. See Helfand v. Gerson, 105 F.3d 530, 534 (9th Cir. 1997).

Case 2:04-cv-09049-DOC-RNB  Document 3689  Filed 05/16/08  Page 25 of 27  Page ID
#:66454
Case 2:04-cv-09049-SGL-RNB  Document 3669  Filed 05/12/2008  Page 7 of 9

clearly erroneous or contrary to law. If, for instance, the request at issue was a more narrow request, such as one limited only to documents (such as cease-and-desist letters) sent to third parties, the Court might have decided otherwise. However, as the request was propounded, and as the Discovery Master ruled, the Court can discerns no clear factual error or error of law.

Accordingly, the Court **GRANTS** the Motion as to requests 15 and 23, but **DENIES** the motion as to request 6 and 25.

Finally, the Court **DENIES** the following motion:

9.      Docket # 3233 Mattel's Motion for Review of the Discovery Master's April 11, 2008, Order Denying Mattel's Application to Enforce Court Orders Compelling Production of Tangible Items; Motion to Enforce those Orders and to Compel Production of the Tangible Items.

The Court's February 4, 2008, Order, granted in part Mattel's ex parte application addressing the issue presented by this motion. The Discovery Master correctly interpreted the Court's Order as implicitly denying the those portions of the ex parte application not explicitly granted.

As set forth on the record, the Court will hear further argument on the motions for partial summary judgment and will hear the motion for reconsideration during the afternoon of May 19, 2008, beginning at 1:30 p.m. The pretrial conference will be held at that time as well. The following morning, May 20, 2008, at 9:00 a.m., jury selection will begin. Once a jury has been selected, the Court will consider any pending discovery motions and the parties' motions in limine. Opening statements are set to begin May 27, 2008.

**IT IS SO ORDERED.**

# NOTICE PARTY SERVICE LIST

**Case No.**   CV 04-09049 SGL(RNBx)   **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**   Court Minutes of May 12, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | **ADD NEW NOTICE PARTY** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Hon. Edward A. Infante (Ret.)

Firm:

Address (include suite or floor):  Two Embarcadero Center, Suite 1500, San Francisco,  CA  94111

*E-mail:

*Fax No.:

* For CIVIL cases only

| **JUDGE / MAGISTRATE JUDGE (list below):** |
|---|
| |
| |
| |
| |

**Initials of Deputy Clerk** jh

## NOTICE PARTY SERVICE LIST

**Case No.** CV 04-09049 SGL(RNBx)   **Case Title** Carter Bryant v. Mattel, Inc.

**Title of Document** Court Minutes of May 12, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service -  Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✓ | **ADD NEW NOTICE PARTY** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Ambassador Pierre-Richard Prosper

Firm:

Address *(include suite or floor)*:  P.O. Box 581103

Salt Lake City,  UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:
* For CIVIL cases only

| *JUDGE / MAGISTRATE JUDGE (list below):* |
|---|
| |
| |
| |
| |

**Initials of Deputy Clerk** jh