D AVIS W RIGHT T REMAINE LLP
865 S. F IGUEROA S T.
S UITE 2400
L OS A NGELES , C ALIFORNIA 90017-2566
T ELEPHONE (213) 633-6800
F AX (213) 633-6899

ALONZO WICKERS IV (State Bar No. 169454)
    alonzowickers@dwt.com
ROBYN ARONSON (State Bar No. 228613)
    robynaronson@dwt.com

Attorneys for Non-Party Journalist
CHRIS PALMERI

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                    Plaintiff,<br><br>          vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                    Defendant.<br><br>AND CONSOLIDATED ACTIONS | Case No. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059, CV 05-02727<br><br>**OPPOSITION TO MATTEL'S MOTION OBJECTING TO DISCOVERY MASTER'S MAY 8, 2008 ORDER DENYING MOTION FOR RECONSIDERATION OF FEBRUARY 26, 2008 ORDER DENYING MOTION TO COMPEL DEPOSITION OF CHRIS PALMERI; REQUEST FOR ATTORNEYS' FEES IN THE AMOUNT OF $ 16,700**<br><br>**[Declaration of Robyn Aronson with Exhibits A-C Filed Concurrently]**<br><br>Date:          May 21, 2008<br>Time:          10:00 a.m.<br>Courtroom:  1 |

Non-party journalist Chris Palmeri respectfully submits this Opposition to
Mattel's Motion Objecting to Discovery Master's May 8, 2008 Order Denying
Mattel's Motion for Reconsideration of February 26, 2008 Order Denying Motion to
Compel Deposition of Christopher Palmeri (the "Motion")

# TABLE OF CONTENTS

Page

1. INTRODUCTION ........................................................................................ 1

2. STANDARD OF REVIEW ......................................................................... 2

3. THE MAY 8 ORDER SHOULD NOT BE DISTURBED. ........................... 3

    A. The Ninth Circuit Recognizes A Broad First Amendment Reporter's Privilege. ................................................................... 3

    B. Contrary To Mattel's Argument, The Source Of The Statement At Issue Is Unpublished Information. ............................................. 6

    C. Even Assuming, For The Sake Of Argument, That The Source Of The Statement Were "Published" Information, Mattel's Subpoena Still Would Implicate Mr. Palmeri's First Amendment Reporter's Privilege. .................................................................................. 7

    D. In The May 8 Order, The Discovery Master Correctly Held That Mattel Did Not Satisfy Any, Let Alone All Three, Of The *Shoen II* Factors. ...................................................................... 11

        1. Mattel Did Not Satisfy The Exhaustion Requirement. ........... 12

        2. Mattel Did Not Demonstrate The Mr. Palmeri's Testimony Would Be Clearly Relevant To An Important Issue. .................................................................. 14

        3. The Information That Mattel Seeks Would Be Cumulative. .................................................................... 17

4. THE CALIFORNIA STATE SHIELD LAW PROVIDES AN INDEPENDENT BASIS FOR DENYING MATTEL'S MOTION. ........... 19

    A. The State Shield Law Applies. ...................................................... 19

    B. The Shield Law Broadly Protects Non-Party Reporters Like Mr. Palmeri. ..................................................................................... 20

    C. The Shield Law Absolutely Protects Non-Party Reporters From Being Compelled To Testify About Unpublished Information In Civil Cases. ................................................................................. 21

5. THE COURT SHOULD AWARD MR. PALMERI HIS ATTORNEYS' FEES ......................................................................................................... 22

6. IF THE COURT DENIES MATTEL'S MOTION, MATTEL SHOULD NOT BE ALLOWED TO CALL MR. PALMERI TO TESTIFY AT TRIAL WITHOUT FIRST OBTAINING LEAVE OF COURT. ................. 23

7. CONCLUSION ......................................................................................... 24

i

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page

**Cases**

*Agster v. Maricopa County,*
    422 F.3d 836 (9th Cir. 2005) ................................................................. 20

*Bhan v. NME Hospitals, Inc.,*
    929 F.2d 1404 (9th Cir. 1991) ................................................................. 3

*Branzburg v. Hayes,*
    408 U.S. 665, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972)....................... 3, 4

*Brinston v. Dunn,*
    919 F. Supp. 240 (S.D. Miss. 1996) ..................................................... 4, 5

*Carushka, Inc. v. Premiere Products, Inc.,*
    1989 WL 253565 (C.D. Cal. Sept. 1, 1989) ...................................... 20, 23

*Concerned Citizens of Belle Haven v. The Belle Haven Club,*
    2004 WL 3246719 (D. Conn. 2004) .................................................... 9, 12

*De La Paz v. Henry's Diner, Inc.,*
    946 F. Supp. 484 (N.D. Tex. 1996) .......................................................... 4

*Dillon v. City and County of San Francisco,*
    748 F. Supp. 722 (N.D. Cal. 1990) .......................................................... 9

*In re Behar,*
    779 F. Supp. 273 (C.D. Cal. & S.D.N.Y. 1991) .................................... 17

*In re Jack Howard,*
    136 Cal. App. 2d 816, 289 P.2d 537 (Cal. Ct. App. 1955)................ 21, 22

*In re Maykuth,*
    2006 WL 724241 (E.D. Pa. 2006) ....................................................... 5, 11

*In re Stratosphere Corp. Secur. Litig.,*
    183 F.R.D. 684 (D. Nev. 1999) ..................................................... 8, 12, 20

*In re Vmark Software,*
    1998 WL 42252 (E.D. Pa. 1998) ......................................................... 5, 11

*Los Angeles Mem. Coliseum Comm'n v. NFL,*
    89 F.R.D. 489 (C.D. Cal. 1981) .......................................................... 20, 21

*McCarty v. Bankers Ins.,*
    195 F.R.D. 39 (N.D. Fla. 1998) ......................................................... 8, 9, 12

*McGarry v. Univ. of San Diego,*
    154 Cal. App. 4th 97, 64 Cal. Rptr. 3d 467 (Cal. Ct. App. 2007) ......... 21

*McKevitt v. Pallasch,*
    339 F.3d 530 (7th Cir. 2003) .................................................................... 4

*Miami Herald Publ. Co. v. Morejon,*
    529 So. 2d 1204, ADD PARALLEL CITE (Fla. App. 1988) ............. 9, 10

*Miller v. Superior Court,*
    21 Cal. 4th 883, 986 P.2d 170 (Cal. 1999) ......................................... 20, 21

*Moreno v. Baca,*
    2007 WL 809678 (C.D. Cal. 2007) ......................................................... 2

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Nat'l Labor Relations Board v. Mortenson*,
  701 F. Supp. 244 (D.D.C. 1988)........................................................10, 11

*New York Times v. Superior Court*,
  51 Cal. 3d 453, 796 P.2d 811 (Cal. 1990) ........................................21

*Parsons v. Watson*,
  778 F. Supp. 214 (D. Del. 1991)........................................................8, 12

*People v. Cooper*,
  53 Cal. 3d 771, 281 Cal. Rptr. 90 (Cal. 1991) ................................21

*Prince George's County v. Hartley*,
  822 A.2d 537, 150 Md. App. 581 (Md. App. 2003)..............................4

*RE/MAX Int'l, Inc. v. Century 21 Real Estate Corp.*,
  846 F. Supp. 910 (D. Colo. 1994)....................................................8, 12

*Securities and Exchange Commission v. Seahawk Deep Ocean Technology*,
  166 F.R.D. 268 (D. Conn. 1996) ......................................................10, 11

*Shaklee Corp. v. Gunnell*,
  110 F.R.D. 190 (N.D. Cal. 1986)............................................................19

*Shoen v. Shoen* ("*Shoen I*"),
  5 F.3d 1289 (9th Cir. 1993................................................................ passim

*Shoen v. Shoen* ("*Shoen II*"),
  48 F.3d 412 (9th Cir. 1995) .............................................................. passim

*Silkwood v. Kerr-McGee Corp.*,
  563 F.2d 433 (10th Cir. 1977) .................................................................8

*State v. Knutson*,
  523 N.W. 909 (Minn. App. 1994)..............................................................4

*U.S. ex rel. Vuitton et Fils S.A. v. Karen Bags, Inc.*,
  600 F. Supp. 667 (S.D.N.Y. 1985) ....................................................17, 18

*United States v. Blanton*,
  534 F. Supp. 295 (S.D. Fla. 1982) ......................................................9, 12

*Wright v. Fred Hutchinson Cancer Research Center*,
  206 F.R.D. 679 (W.D. Wash. 2002) ........................................................22

**Statutes**

California Evidence Code § 1070 ...............................................................20

Florida Statutes Annotated § 90.5015 .......................................................10

**Other Authorities**

Murphy, K., "Appealing for a Privilege," *The News Media and the Law*, vol.
  27, no. 4 (Fall 2003)..................................................................................4

**Rules**

Federal Rule of Civil Procedure 37(a)(5)(B) ............................................22

Federal Rule of Civil Procedure 72(a) .......................................................3

**Constitutional Provisions**

California Constitution, Article I, § 2(b)...............................................20, 21

United States Constitution, First Amendment................................... passim

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

OPPOSITION
DWT 5670098v2 3930059-000040

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.

### INTRODUCTION

Mattel now has filed four motions – two before the Discovery Master and two before this Court – in its unjustifiable attempt to compel BusinessWeek reporter Chris Palmeri to testify about information that he acquired in the course of his newsgathering.  The latest expedited Motion follows the Discovery Master's May 8 Order denying Mattel's motion for reconsideration of the February 26 Order denying Mattel's motion to compel.  Like Mattel's three earlier motions, this one also should be denied.

Mattel's various briefs have a curious Three-card Monte quality; legal arguments that appear in one brief disappear in the next, only to reappear in a later brief.  For example, in the initial motion to compel before the Discovery Master, Mattel relied heavily on authorities from circuits that either do not recognize a constitutional reporter's privilege, or that recognize a much narrower privilege than the Ninth Circuit does.  Mattel abandoned its reliance on those authorities when it appealed the February 26 Order, but cites them again in its current Motion.  Even more strikingly, Mattel argued in its motion to compel and in its earlier appeal that the three-part test announced by the Ninth Circuit in *Shoen v. Shoen*, 48 F.3d 412, 416 (9th Cir. 1995) ("*Shoen II*"), does not apply here; conceded for purposes of its motion for reconsideration that the *Shoen II* test does apply; and now boldly asserts that the Discovery Master erred by applying that very test.  *Compare* Ex. 18 (Motion for Reconsideration) at 7 n.13 *with* Motion at 7-9.[1]  But regardless of Mattel's shifting arguments, it cannot circumvent Mr. Palmeri's constitutional reporter's privilege, as the Discovery Master twice has concluded.

_____

[1] In this Opposition, citations to numbered exhibits refer to the exhibits attached to the Declaration of Michael Niborski that Mattel filed in support of its Motion.  The lettered exhibits are attached to the Declaration of Robyn Aronson.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

In the motion for reconsideration, Mattel claimed that after deposing Mr. Larian for a second time, it had exhausted alternative sources of the information that it seeks from Mr. Palmeri. Ex. 18 at 8-10. The Discovery Master disagreed. He again held that Mattel failed to establish that it has exhausted other sources of information about Mr. Larian's public statements about the origin of the Bratz dolls. Ex. 19 (05/08/08 Order) at 2-3. Significantly, the Discovery Master went on to find that "Mattel cannot satisfy the remaining elements of the *Shoen* test. Despite the new evidence and arguments raised in Mattel's motion for reconsideration, Mattel cannot show that the information it seeks from Palmeri is clearly relevant to an important issue and non-cumulative." *Id.* at 3. The Discovery Master's determination that Mattel has not met any, much less all three elements of the *Shoen II* test, is amply supported, is not clearly erroneous or contrary to law, and should not be disturbed.

Mattel has committed vast resources to this litigation. In this instance, however, its relentless discovery machine has collided squarely with Mr. Palmeri's constitutional reporter's privilege. Under controlling Ninth Circuit authority, "compelled disclosure [of information from non-party reporters] is the exception, not the rule." *Shoen II*, 48 F.3d at 416. For that reason, the Ninth Circuit has emphasized that the reporter's privilege must "prevail in *all but the most exceptional cases*[.]" *Id.* (emphasis added). As the Discovery Master correctly held, this case is not one of the exceptional cases in which a litigant may overcome the privilege. Mr. Palmeri, therefore, respectfully requests that the Court deny Mattel's Motion.

## 2.

## STANDARD OF REVIEW

It is well settled that "a magistrate judge's resolution of pretrial matters is entitled to *substantial deference*." *Moreno v. Baca*, 2007 WL 809678, *1 (C.D. Cal. 2007) (emphasis in original). Indeed, even Mattel concedes that the Court must deny this Motion unless Mattel demonstrates that the Discovery Master's Order was

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"clearly erroneous or contrary to law."  Motion at 7:3-4.  *See also* Fed. R. Civ. P. 72(a); *Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991).

Moreover, as this Court previously observed, the question is whether the Discovery Master's Order was "contrary to law or clearly erroneous *at the time* it was entered."  Ex. 17 (4/14/08 Order) at 2 (emphasis in original).  Mattel thus cannot reasonably complain to this Court about issues that it did not contest before the Discovery Master.

As set forth below, Mattel cannot demonstrate any grounds for reversing the Discovery Master's Order, let alone show that the Order was clearly erroneous or contrary to law.[2]

**3.**

**THE MAY 8 ORDER SHOULD NOT BE DISTURBED.**

**A.      The Ninth Circuit Recognizes A Broad First Amendment Reporter's Privilege.**

The Ninth Circuit has made clear that the First Amendment protects non-party journalists against being compelled to disclose information that they acquire in the course of their newsgathering.  *Shoen v. Shoen*, 5 F.3d 1289, 1293 (9th Cir. 1993) ("*Shoen I*")*; Shoen II*, 48 F.3d at 416.  The United States Supreme Court laid the foundation for this qualified reporter's privilege in *Branzburg v. Hayes*, 408 U.S. 665, 681, 92 S. Ct. 2646, 33 L. Ed. 2d 626 (1972), when it noted that "[w]ithout some protection for seeking out the news, freedom of the press could be eviscerated." In *Shoen I,* the Ninth Circuit joined eight other circuits in interpreting *Branzburg* to create a federal constitutional reporter's privilege.  *Shoen I*, 5 F.3d at 1293.

---

[2] Mattel's Motion purports not only to object to the Discovery Master's May 8 Order, but also to "renew[]" its objections to his February 26 Order.  Mr. Palmeri is unaware of any authority that would authorize Mattel to renew its earlier motion, which this Court denied.

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

OPPOSITION
DWT 5670098v2 3930059-000040

Mattel apparently disagrees with the Ninth Circuit's holdings in *Shoen I* and *Shoen II*, and suggests that *Branzburg* provides only a "tenuous basis" for the First Amendment reporter's privilege.  Motion at 8 n.15.  Mattel's disagreement with the Ninth Circuit may explain why it again glosses over *Shoen I* and *Shoen II*, and continues to rely on plainly inapposite decisions from the Seventh Circuit and from district courts within the Fifth Circuit.  For instance, Mattel cites the Seventh Circuit's decision in *McKevitt v. Pallasch*, 339 F.3d 530 (7th Cir. 2003) (*see* Motion at 15 n.30), but neglects to mention that *McKevitt* expressly rejected the existence of *any* federal constitutional reporter's privilege.  339 F.3d at 531-532.  The holding in *McKevitt* has been described as "perhaps the most radical view of a constitutionally based reporter's privilege by any federal circuit in the country,"[3] and is directly contrary to well-settled Ninth Circuit authority.  *See, e.g., Shoen I*, 5 F.3d at 1293.

Equally unavailing is Mattel's reliance on decisions from district courts in Texas and Mississippi, *De La Paz v. Henry's Diner, Inc.*, 946 F. Supp. 484 (N.D. Tex. 1996), and *Brinston v. Dunn*, 919 F. Supp. 240 (S.D. Miss. 1996).  *See* Motion at 15.  Those district courts are within the Fifth Circuit, which – as the court explained in *De La Paz* – recognizes a narrow privilege that shields only the identities of confidential informants, in contrast to the expansive reporter's privilege recognized by the Ninth Circuit.  *De La Paz*, 946 F. Supp. at 485 ("the Fifth Circuit has never extended the qualified journalist privilege beyond compelled disclosure of the confidential informant's identity").  For that reason, these decisions also are irrelevant.

Mattel fares no better with its citations to other out-of-circuit authorities.  For example, the courts in *State v. Knutson*, 523 N.W. 909, 911 (Minn. App. 1994), and *Prince George's County v. Hartley*, 822 A.2d 537, 539, 150 Md. App. 581 (Md. App.

---

[3] K. Murphy, "Appealing for a Privilege," *The News Media and the Law*, vol. 27, no. 4, p. 15 (Fall 2003).

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

2003), interpreted Minnesota's and Maryland's state shield laws, which obviously do not apply here.  And two other unpublished decisions that Mattel cites – *In re Vmark Software*, 1998 WL 42252, *2 (E.D. Pa. 1998), and *In re Maykuth*, 2006 WL 724241, *2 (E.D. Pa. 2006) – directly rebut Mattel's argument that the reporter's privilege does not apply when a litigant seeks to depose a reporter for the purpose of authenticating published information.

Despite its efforts to obscure the controlling legal standard by focusing on decisions like *Brinston*, Mattel cannot evade the broad reporter's privilege that applies in the Ninth Circuit when a civil litigant seeks to depose a non-party reporter. This privilege serves a substantial purpose.  As the Ninth Circuit explained in *Shoen II*, an expansive privilege is necessary because "routine court-compelled disclosure of research materials poses a serious threat to the vitality of the newsgathering process."  48 F.3d at 416.  In *Shoen I*, the court emphasized that this danger is fourfold; it stems from "[t]he threat of administrative and judicial intrusion into the newsgathering and editorial process; the disadvantage of a journalist appearing to be an investigative arm of the judicial system or a research tool of government or of a private party; the disincentive to compile and preserve material; and the burden on journalists' time and resources in responding to subpoenas."  5 F.3d at 1295.

To guard against these threats, the Ninth Circuit has imposed an onerous burden on any civil litigant who seeks to compel the disclosure of information that a non-party reporter has acquired in the newsgathering process.  To overcome the reporter's federal constitutional privilege, the litigant must "show[] that the requested material is:  (1) unavailable despite exhaustion of all reasonable alternative sources; (2) non-cumulative; *and* (3) clearly relevant to an important issue in the case."  *Shoen II*, 48 F.3d at 416 (emphasis added).  The Ninth Circuit declared that this standard must be rigorous to "ensure that compelled disclosure is the exception, not the rule."  *Id.*  As the Court observed, "if the privilege does not prevail in all but the most exceptional cases, its value will be substantially diminished."  *Id.* (citations omitted).

OPPOSITION
DWT 5670098v2 3930059-000040

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Mattel attempts to dilute the strength of the reporter's privilege by grafting a fourth factor – whether or not the reporter acquired the information at issue in confidence – onto the Ninth Circuit's three-part test. *See* Motion at 1-2, 8.  In *Shoen I*, the court considered whether a non-party journalist can invoke the privilege where the information at issue is non-confidential.  5 F.3d at 1294-1295.  After reviewing decisions from the First, Second, and Third Circuits, all of which found that the constitutional privilege applied to non-confidential information, the Ninth Circuit held that "the journalist's privilege applies to a journalist's resource materials even in the absence of the element of confidentiality." *Id.* at 1295.  While the Ninth Circuit commented in dicta in *Shoen I* that non-confidentiality "may be considered in the balance of competing interests" (*id.*), the court pointedly declined to make confidentiality an element of the three-part test that it later promulgated in *Shoen II*, even though the subpoenaing party in that case focused on the non-confidential nature of the information that he sought from the author.  48 F.3d at 416.  Confidentiality thus is *not* an element of the controlling Ninth Circuit test.

**B.     Contrary To Mattel's Argument, The Source Of The Statement At Issue Is Unpublished Information.**

As noted above, Mattel conceded for purposes of its motion for reconsideration that the information at issue was "unpublished" and that the *Shoen II* test would apply.  *See* Ex. 18 at 7 n.13.  Although Mattel chose to concede that point before the Discovery Master, it now insists that the source of the statement – "[Larian] should know:  He got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers" – is "published information," and therefore falls outside the qualified reporter's privilege.  *See* Motion at 7-8.  Putting aside the propriety of challenging the Discovery Master's finding on an issue that Mattel conceded below, Mattel's argument is flawed.

According to Mattel, the unattributed statement in Mr. Palmeri's article about the supposed inspiration for Bratz must have come directly from Mr. Larian because

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"[t]his statement follows immediately from a direct quote of [Mr.] Larian."  Motion at 7:26.  However, the mere fact that an unattributed statement follows a sentence that contains an attributed quotation does not mean that the unattributed statement necessarily was made by the individual quoted in the previous sentence.  The statement about the origin of Bratz could have come from Mr. Palmeri's or a researcher's independent fact-gathering, from an MGA press release, from a company publicist, from another published work about the dolls, or even from a conversation that Mr. Palmeri overheard in a hallway.

This Court specifically addressed this issue during the April 14 hearing.  When Mattel argued that it simply sought "verification" of a published statement, the Court responded:

> I mean, you allude to verification here.  This is not a quote.  Unlike the sentence before it, where there's a quote, this was just a statement.  I would concede that it is logical to assume that the source of that information was probably Mr. Larian.  But it may not have been.  I mean, the reporter may have gotten that from someplace else; and that's why it raises the whole issue that you're really trying to get to the source, a confidential source in the sense that it wasn't disclosed in the article, and not simply a verification of a quote…. [T]his isn't a quote.

Ex. A (04/14/08 Transcript) at 8:12-9:2.

Under these circumstances, Mattel cannot show that the Discovery Master's finding that the information sought was "unpublished" is clearly erroneous or contrary to law.

**C.      Even Assuming, For The Sake Of Argument, That The Source Of The Statement Were "Published" Information, Mattel's Subpoena Still Would Implicate Mr. Palmeri's First Amendment Reporter's Privilege.**

Mattel once again insists that the reporter's privilege applies only to "unpublished" information.  *See* Motion at 7-9.  In fact, the reporter's privilege

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

applies to *any* information generated during the newsgathering process, even when a litigant claims that he seeks only to "authenticate" or to "verify" the contents of a journalist's published work.  *See, e.g., Shoen II*, 48 F.3d at 416 (finding qualified privilege protected against disclosure of information regarding conversations between book author and libel defendant).  As one court has declared, "the federal courts … have overwhelmingly recognized a qualified privilege for journalists which allows them to resist compelled disclosure of their professional news gathering efforts and results, *whether published or not*."  *McCarty v. Bankers Ins*., 195 F.R.D. 39, 44, 46-47 (N.D. Fla. 1998).

In *RE/MAX Int'l, Inc. v. Century 21 Real Estate Corp*., 846 F. Supp. 910, 912 (D. Colo. 1994), for example, the plaintiff subpoenaed a newspaper reporter regarding a series of articles that were based on an interview that the reporter conducted with the president of the defendant company.  The plaintiff stated that it sought the reporter's testimony "solely to authenticate [the president's] statements set forth in the articles."  *Id.*  Applying the Tenth Circuit's formulation of the reporter's privilege, which is similar to the Ninth Circuit's (*see Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 437 (10th Cir. 1977)), the district court quashed the subpoena.  846 F. Supp. at 912.

Similarly, in *Parsons v. Watson*, 778 F. Supp. 214, 215 (D. Del. 1991), the plaintiff subpoenaed a journalist who expressly attributed certain remarks to the plaintiff in a newspaper article.  Claiming that he had been misquoted, the plaintiff sought testimony from the reporter to determine whether "the contents of certain statements quote[d] in the article, or the identity of the speakers, is reflected accurately in the article."  *Id.*  The court found that the qualified privilege applied, and quashed the subpoena.

*In re Stratosphere Corp. Secur. Litig.*, 183 F.R.D. 684, 686-687 (D. Nev. 1999), also is instructive.  There, the plaintiffs accused a defendant of making misleading statements about a casino's earnings and revenue projections, and of

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

purposely disseminating those statements to the press as part of a scheme to conceal the casino's true financial condition. *Id.* at 686.  When the plaintiffs moved to compel a reporter to authenticate the defendant's allegedly fraudulent statements that were published in the reporter's article, the court held that the reporter was protected by both the state shield law and the federal constitutional privilege. *Id.* at 686-687. *See also United States v. Blanton*, 534 F. Supp. 295, 297 (S.D. Fla. 1982) (quashing subpoena on the basis of qualified privilege where reporter was asked to verify statements attributed in article to criminal defendant); *Concerned Citizens of Belle Haven v. The Belle Haven Club*, 2004 WL 3246719, *2 (D. Conn. 2004) (quashing subpoena to reporter for published information); *McCarty*, 195 F.R.D. at 46-47 (same).

Not surprisingly, Mattel – which bears the burden of showing that the Discovery Master's ruling was clearly erroneous or contrary to law – fails to cite any Ninth Circuit decision where the court limited the privilege to protect only unpublished information.  Nor could Mattel do so, because the Ninth Circuit has not reached that conclusion.  Instead, to support its theory, Mattel cites two inapposite cases:  *Dillon v. City and County of San Francisco*, 748 F. Supp. 722 (N.D. Cal. 1990), and *Miami Herald Publ. Co. v. Morejon*, 529 So. 2d 1204, ADD PARALLEL CITE (Fla. App. 1988).  *Dillon* has little, if any, precedential value.  As a threshold matter, the court's focus in *Dillon* was on the supposed distinction between confidential and non-confidential information acquired in the course of newsgathering, not between published and unpublished information.  748 F. Supp. at 724-725.  The district court predicted – incorrectly, as it turned out – that the Ninth Circuit would not extend the reporter's privilege to non-confidential information.  *Id.* at 725-726.  Of course, when the Ninth Circuit considered that issue three years later in *Shoen I*, it did just the opposite, holding that the reporter's privilege covered non-confidential information.  5 F.3d at 1293.

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

OPPOSITION
DWT 5670098v2 3930059-000040

Mattel's reliance on *Miami Herald* likewise is misplaced.  In that case, an intermediate Florida state appellate court held that the reporter's privilege applied only to confidential source information.  529 So. 2d at 1208.  That conclusion is flatly inconsistent with Ninth Circuit law (and, indeed, is no longer even the law in Florida).  *See* Fla. Stat. Ann. 90.5015.

Mattel's theory that the privilege applies only to unpublished information, and not to "verification" of published information, is further undermined by several cases that Mattel cites in its Motion.  In *Securities and Exchange Commission v. Seahawk Deep Ocean Technology*, 166 F.R.D. 268, 269 (D. Conn. 1996)*,* the SEC sought to compel a reporter to testify about a statement that was published in an article appearing under the reporter's byline.  Although the statement at issue in *Seahawk* was published – and, unlike the statement at issue in this case, *was specifically attributed to an individual* – the court nonetheless went through the Second Circuit's three-part test for determining whether the SEC could overcome the reporter's privilege.  *Id.* at 269-270.  And in *Nat'l Labor Relations Board v. Mortenson*, 701 F. Supp. 244, 247 (D.D.C. 1988), the court squarely held that the qualified First Amendment privilege is implicated when a litigant demands that a reporter verify published statements.  The court explained that "[r]egardless of whether [the subpoenaing parties] seek confidential or nonconfidential sources, or whether they seek disclosure *or verification of statements*, [they are] attempting to examine the reportorial and editorial processes.  *The fact that their purpose is to support, rather than undermine, the bona fides of the statements as expressed by the reporters makes no difference.  Such discovery necessarily implicates the First Amendment interests of the journalists*."  *Id.* (emphasis added).  The courts in two other cases cited by Mattel reached the same conclusion, undertaking the relevant circuit's reporter's-privilege analysis where a litigant sought to compel a reporter to authenticate

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

indisputably published statements.  *In re Maykuth*, 2006 WL 724241 at *2; *In re Vmark Software*, 1998 WL 42252 at *2.[4]

As even Mattel's cases confirm, the reporter's privilege applies to *all* information generated during the newsgathering process, and extends to situations where a litigant seeks to authenticate or to verify the contents of a journalist's published work.  Thus, regardless of whether the source of the statement at issue is deemed to be published or unpublished information, the Discovery Master properly concluded that Mattel would have to satisfy the three-part *Shoen II* test before it could overcome Mr. Palmeri's federal constitutional reporter's privilege.

**D.   In The May 8 Order, The Discovery Master Correctly Held That Mattel Did Not Satisfy Any, Let Alone All Three, Of The Shoen II Factors.**

Mattel mistakenly suggests that courts "frequently" find that "the journalist's privilege must yield where testimony is sought for the limited purposes of verifying statements that already have been published to the world."  Motion at 9:8-10.  In the four rounds of briefing that Mattel and Mr. Palmeri have submitted to the Discovery Master and to this Court, the parties have cited ten decisions analyzing whether the privilege should yield when a litigant seeks to compel a journalist to verify published information.  Of those ten decisions, *six* held that the litigant could *not* overcome the privilege, and thus could not force the journalist to verify the information at issue.

---

[4] Although the courts in *Seahawk* and *NLRB* ultimately held that the subpoenaing parties could overcome the reporters' privilege, the facts that informed those holdings are readily distinguishable from the present case (and underscore the very high relevance standard that the subpoenaing party must meet to compel a reporter's testimony).  In those cases, there was no question whatsoever as to the source of the statements at issue.  Moreover, those sources already had been questioned about the statements, and specifically had denied having made them.  And most importantly, the claims in those government enforcement actions rested in large part on the defendants' attributed statements that appeared in the reporters' articles. *Seahawk*, 166 F.R.D. at 269-270 (securities action arising from defendant's statements to media allegedly designed to depress stock price); *NLRB*, 701 F. Supp. at 249-250 (action based on allegedly pretextual statements made by union leadership).  In contrast, the statement at issue here is not attributed to any individual, and has, at most, a tangential connection to the subject matter of this lawsuit.

OPPOSITION
DWT 5670098v2 3930059-000040

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*See In re Stratosphere Corp.*, 183 F.R.D. at 686-687; *McCarty*, 195 F.R.D. at 46-47; *RE/MAX*, 846 F. Supp. at 912; *Parsons,* 778 F. Supp. at 215; *Blanton*, 534 F. Supp. at 297; *Concerned Citizens of Belle Haven v. The Belle Haven Club*, 2004 WL 3246719, *2 (D. Conn. 2004).

To overcome Mr. Palmeri's privilege here, Mattel would have to "show[] that the requested material is:  (1) unavailable despite exhaustion of all reasonable alternative sources; (2) non-cumulative; *and* (3) clearly relevant to an important issue in the case."  *Shoen II*, 48 F.3d at 416 (emphasis added).  As the Discovery Master found, Mattel did not met its burden on *any* of these three factors.

### 1.    Mattel Did Not Satisfy The Exhaustion Requirement.

According to Mattel, Larian's testimony at his second deposition established that "Mr. Palmeri is the only person who can confirm under oath that Larian actually made the statements published in Business Week."  Motion at 10:6-8.  This argument misses the mark.

Conspicuously, Mattel's Motion does not directly quote Mr. Larian's testimony; instead, Mattel cursorily states that "Larian did not confirm under oath that he made the statements published in Business Week to Mr. Palmeri."  Motion at 10:4-5.  Mr. Larian's testimony actually was more detailed and more revealing. When Mattel asked Mr. Larian whether he recalled talking to a BusinessWeek reporter about Bratz, he acknowledged that he spoke with a BusinessWeek reporter in connection with the article.  Ex. B (Larian Depo.) at 265:12-266:2.  Mattel then asked Mr. Larian whether he communicated to the reporter that he conceived of the Bratz dolls after seeing his children "running around in navel-bearing tops and hip huggers."  *Id.* at 268:4-13.  Mr. Larian replied:  "It's possible I did.  I don't recall. … I might have said it."  *Id*. at 268:17.  Mattel proceeded to ask Mr. Larian, "You're not denying [making the statement]?"  *Id.* at 268:21.  Mr. Larian reiterated that he did not deny making that statement.  *Id.* at 268:22.  Next, Mattel asked him whether the statement was true.  *Id.* at 268:23-25.  Mr. Larian responded that the statement was at

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

least "partially" true, since "that's what [his] kids were wearing at that time.  They were young and they were wearing clothes like that, and the Bratz concept that we saw, that's what we had in mind."  *Id.* at 269:1-6.

In other words, Mr. Larian did not deny making the statement to Mr. Palmeri.  He admitted talking to a reporter from BusinessWeek, and explained his account of how his children's clothing influenced the development of the Bratz dolls.  The Discovery Master reasonably concluded that because a "review of the deposition transcript … shows that Larian confirmed the thrust of the statement at issue," Mattel was wrong to assert that "no source other than Mr. Palmeri is available to establish that Larian asserted to Mr. Palmeri … that Larian 'got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers" – because Mr. Larian himself was such an alternative source.  Ex. 19 at 2-3.

Even if Mr. Larian had not testified about the statement, however, there clearly are other sources for information about Mr. Larian's public statements about the origin of Bratz.  As the Discovery Master recognized, the pertinent issue is whether Mattel has exhausted alternative sources of testimony concerning Mr. Larian's allegedly inconsistent public statements about the origins of Bratz, *not* whether Mattel has exhausted alternative sources of testimony concerning *one particular statement* by Mr. Larian.  In the May 8 Order, the Discovery Master emphasized this point:

> Even if Larian had not testified about the statement in the Business Week article, there are other reasonable alternative sources for information regarding Larian's public statements about the origin of Bratz.  It does not matter, as Mattel contends, that only Palmeri and Larian were witnesses to what Larian told Palmeri during his interview.  The issue is whether the information Mattel seeks from Palmeri is cumulative of other evidence of Larian's allegedly inconsistent public statements about the origins of Bratz, not whether other witnesses can

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

testify specifically about the substance of the communications between Palmeri and Larian.  There may be other witnesses with whom Larian may have discussed the origins of Bratz, such as co-workers, publicists, industry analysts, investors and bankers.  Mattel does not claim to have questioned or deposed other potential witnesses who may have information that is not shielded by the journalist's privilege.

Ex. 19 at 3.  *See also* Ex. 16 (02/26/08 Order) at 6 (same).  Having failed to pursue these alternative avenues of inquiry, Mattel could not meet the exhaustion requirement under *Shoen II*.  Mattel's Motion should be denied for this reason alone.

**2.      Mattel Did Not Demonstrate The Mr. Palmeri's Testimony Would Be Clearly Relevant To An Important Issue.**

To satisfy this element of the reporter's-privilege test, Mattel would have to show not merely that Mr. Palmeri's testimony might be relevant or admissible, but that his testimony would be "*clearly relevant* to an *important* issue" in the case. *Shoen II*, 48 F.3d at 416 (emphasis added).  Put another way, the testimony must "go[] to the heart" of the lawsuit.  *Id.*

Mattel did not come close to meeting this requirement.  A review of the operative counterclaims demonstrates that they turn on whether Mr. Bryant created the Bratz dolls while he still was employed by Mattel.  As the Discovery Master noted in his February 26 Order, whether or not Mr. Larian made any statement to Mr. Palmeri about Mr. Larian's children "run[ning] around in navel-baring tops and hip-huggers" is not clearly relevant to that central issue.  Ex. 16 at 4.

Nor can Mattel meet the "clearly relevant to an important issue" standard by arguing that Mr. Palmeri's testimony is necessary to determine when Mattel's claims accrued for purposes of the statute of limitations and laches.  The limitations and laches issues are central to Mattel's Motion, and are cited multiple times as a key rationale for deposing Mr. Palmeri.  *See* Motion at 3:12-14 (claiming that the statements in question "go directly to MGA's fraudulent concealment as they relate

14

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

to defendants' statute of limitations and laches defenses"); 13:6-8 (claiming that Mr. Larian's statements to Business Week "bear directly on… MGA and Bryant's statute of limitations and laches defenses"); 15:10-16:8 (claiming testimony is relevant to establish when Mattel had knowledge of alleged wrongdoing).  But regardless of whether Mr. Larian made the statement about Bratz dolls that is contained in the BusinessWeek article, the article itself is self-authenticating.  And the very fact of the article's existence means that as of July 2003, this public account of the dolls' origin did not mention Mr. Bryant at all.  The circumstances surrounding the creation of the article therefore are completely irrelevant for statute-of-limitations or laches purposes; the only arguably relevant fact is the publication of the article in July 2003.  That fact is not in dispute, however, and does not require Mr. Palmeri's testimony.

The Discovery Master agreed in his February 26 Order, recognizing that "the requested information would be superfluous" for statute-of-limitations purposes.  Ex. 16 at 4.  "What is relevant is that the Article was published and that as of the date of its publication, this public account of the dolls' origin did not mention, much less credit Carter Bryant as the creator of the dolls.  For purposes of the statute of limitations, the information published within the four corners of the Article is relevant, regardless of who was the source of the information."  *Id.*

This Court agreed.  At oral argument on April 14, the Court stated that for the purposes of the statute of limitations and laches, "if it's about putting [Mattel] on notice, all that would have put [Mattel] on notice … was this article as it appeared back in 2003[.] … All that would have tolled the statute of limitations, all that would have come into play in terms of what was going on publicly, is what is in the article."  Ex. A at 6:24-7:3.  Later, the Court reiterated its conclusion, asking Mattel:  "But do you understand the Court's point, though, about why – for purposes of the statute of limitations and those arguments, what you're going to be relying upon is what was actually published in the article, not what's beneath it?"  *Id*. at 8:6-10.  Because "what's beneath" the article is irrelevant to whether Mattel was on notice, the statute-

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

of-limitations and laches arguments cannot overcome Mr. Palmeri's constitutional protections.

Mattel's "guilty mind" argument likewise is unpersuasive.  Mattel contends that the statements that Mr. Larian allegedly made to Mr. Palmeri "show guilty knowledge of the theft of Bratz by Mattel."  Motion at 3.  The Discovery Master has considered – and properly rejected – this argument twice.  In the February 26 Order, the Discovery Master explained that Mattel argued in its original motion to compel that "it needs Palmeri's testimony to develop what it considers crucial evidence to establish that Carter Bryant … and Larian, among others at MGA… engaged in a scheme to conceal the product's true origins. …  Mattel further contends that the evidence of concealment it seeks will show '*guilty knowledge* by Larian and MGA that Bryant developed Bratz while an employee of Mattel, in violation of his employment agreement with Mattel, and an awareness by Larian and MGA that Bryant's inventions during his employment at Mattel belongs to Mattel.'"  Ex. 16 at 2-3 (emphasis added).  The Discovery Master concluded that this "guilty mind" theory was not clearly relevant to an important issue in the case because it did not directly illuminate the central dispute:  whether Mr. Bryant created Bratz while he was employed by Mattel.  *Id.* at 2-4.

The "guilty mind" argument carries even less weight now than it did when Mattel initially made it, and the Discovery Master correctly rejected it in denying the motion for reconsideration.  At the second deposition, Mr. Larian did not deny making the statement that was published in BusinessWeek, and even explained his basis for making the statement.  Ex. B at 268:4-269:6.  His testimony was innocuous, and diminishes the purported relevance of any testimony that Mattel might elicit from Mr. Palmeri on this same topic.  Moreover, even if Mr. Palmeri's testimony were probative of the "guilty mind" theory, it still would not provide direct evidence of whether Mr. Bryant conceived of the Bratz dolls before or after he left Mattel.

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Because Mattel has not demonstrated – and cannot demonstrate – that Mr. Palmeri's testimony is clearly relevant to an important issue in this case, the May 8 Order should not be disturbed.

### 3.     The Information That Mattel Seeks Would Be Cumulative.

"When testimony sought from a reporter would be cumulative of other evidence, it cannot be 'necessary or critical' to an action so as to override the First Amendment privilege." *In re Behar*, 779 F. Supp. 273, 275-276 (C.D. Cal. & S.D.N.Y. 1991). *U.S. ex rel. Vuitton et Fils S.A. v. Karen Bags, Inc.*, 600 F. Supp. 667 (S.D.N.Y. 1985), is instructive. There, a criminal defendant sought video outtakes from an interview conducted by CBS, claiming that the outtakes would support his claim that the government had violated his due-process rights. *Id.* at 669-670. The court found that since the defendant already "had the opportunity to raise arguments and to present facts in support" of his due-process claims, "[a]ny further facts that might possibly be gleaned from the CBS 'outtakes' are likely to be merely cumulative, and not probative." *Id.* at 671.[5]

In its Motion, Mattel misapprehends the meaning of cumulativeness for purposes of the reporter's privilege. Mattel insists that Mr. Palmeri's testimony would not be cumulative because "Mr. Palmeri points to no other published claim by Larian that Bratz was inspired by seeing 'his own kids run around in navel-bearing tops and hip-huggers.'" Motion at 18. The proper question, however, is not whether others have testified about this *particular* statement by Mr. Larian, but whether others have testified about Mr. Larian's public claims that the Bratz dolls were conceived of by someone other than Mr. Bryant. *See* Ex. 19 at 3.

---

[5] Mattel seeks to distinguish *Vuitton* by claiming it only relates to "unpublished" information, while the current dispute relates to "published" information. As discussed in Section 3.B, *supra*, information sought from Mr. Palmeri is indeed "unpublished."

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

OPPOSITION
DWT 5670098v2 3930059-000040

As the Discovery Master twice has found, any testimony from Mr. Palmeri on this issue would be cumulative. Ex. 16 at 5; Ex. 19 at 3. At his second deposition, Mr. Larian testified specifically about the statement in the BusinessWeek article, and explained how his children's attire helped inspire Bratz. Moreover, reporters from *The Wall Street Journal*, the *Chicago Sun-Times*, and the *San Fernando Business Journal* voluntarily have testified – to quote Mattel – about "statements attributed to Larian regarding the origins of Bratz which were inconsistent with Larian's, MGA's and Bryant's subsequent claims in this case." Ex. C (Motion to Compel) at 4:16-17. Indeed, Mattel acknowledges that the *San Fernando Valley Business Journal* reporter testified that Mr. Larian claimed in a March 2007 interview that his son had conceived of Bratz dolls. Motion at 18:1-3.

In its motion for reconsideration, Mattel inadvertently confirmed the cumulative nature of the testimony that it seeks from Mr. Palmeri when it argued that "[t]he jury is entitled to learn about all of Larian's statements because they *collectively* establish that these assertions were intentionally made (and the reporters and others did not misunderstand or misquote Larian) to hide the fact that Bratz were created by a Mattel employee." Ex. 18 at 2:20-23 (emphasis added). In other words, Mattel admitted that it seeks Mr. Palmeri's testimony as part of a *collection* of other evidence that cumulatively might buttress Mattel's arguments.

Like the defendant in *Vuitton*, Mattel has "the opportunity to raise arguments and to present facts in support" of its claim that MGA and/or Mr. Larian fraudulently concealed the origin of the Bratz dolls; it need not depose Mr. Palmeri to raise that argument. Given the other testimony elicited about Mr. Larian's supposedly conflicting public statements about the origin of Bratz, Mattel cannot show that the Discovery Master's finding on cumulativeness was clearly erroneous. For this independent reason, Mattel's Motion should be denied.

In sum, Mattel did not carry its burden on any of the *Shoen II* factors. First, Mattel did not show that the testimony sought from Mr. Palmeri is unavailable

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

despite the exhaustion of alternative sources.  Second, it did not establish that the

testimony would be clearly relevant to an important issue; it is unnecessary for the

statute-of-limitations and laches issues, and is, at most, tangential to the paramount

issue of whether Mr. Bryant created Bratz while employed at Mattel.  Third, Mr.

Palmeri's testimony would be cumulative of Mr. Larian's and the other reporters'

testimony.  For each of these reasons, the Discovery Master's May 8 Order should

stand.[6]

**4.**

**THE CALIFORNIA STATE SHIELD LAW PROVIDES AN INDEPENDENT**

**BASIS FOR DENYING MATTEL'S MOTION.**

If this Court were to find that Mattel could overcome Mr. Palmeri's federal

constitutional reporter's privilege – which it cannot – California's state constitutional

shield law would provide an alternative ground to deny Mattel's Motion.

**A.     The State Shield Law Applies.**

Although the shield law is found in the California Constitution, its application

is not limited to litigation in state courts.  Where a subpoena seeks evidence affecting

only the state-law claims in a federal-court action, federal district courts have held

that the state law of privilege applies.  *See, e.g., Shaklee Corp. v. Gunnell*, 110

F.R.D. 190, 192 (N.D. Cal. 1986).  Here, Mattel has asserted that the information

sought from Mr. Palmeri relates to Mattel's claims for breach of contract, breach of

fiduciary duty, and breach of duty of loyalty – all of which arise under state law.  *See*

Motion at 13:7-8 (claiming that information sought from Mr. Palmeri "bear[s]

---

[6] In its Motion, Mattel states that "[o]n January 7, 2008, the Court granted
Mattel's Motion for Leave to Take Additional Discovery in this action… The Court
found that Mattel was entitled to conduct additional depositions, including Mr.
Palmeri's."  Motion at 5:4-10.  This is incorrect:  nowhere in the transcript of the
hearing or in the Court's minute order is the question of the reporter's privilege
discussed or ruled upon.  *See* Exs. 10-12 (Mattel's 11/19/07 Motion for Additional
Interrogatories and Depositions, 1/7/08 Hearing Transcript, and 1/7/08 Minute
Order).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

directly on Mattel's claims that defendants concealed Bryant's disloyalty and theft"). However, even if Mattel were to argue that the evidence that it seeks from Mr. Palmeri would affect claims arising under federal law, the state shield law still may be relevant. Courts in this district have recognized that where state and federal causes of action are mixed, the court should evaluate constitutional reporter's privilege and shield-law claims "under both state and federal law." *Los Angeles Mem. Coliseum Comm'n v. NFL*, 89 F.R.D. 489, 492 (C.D. Cal. 1981). In fact, "even in cases in which all claims are based exclusively on federal law, federal courts… have traditionally sought guidance from existing state law." *Id*. The Discovery Master thus may consider the state shield law and the qualified First Amendment privilege here. *Id.* at 494-495; *accord Carushka, Inc. v. Premiere Products, Inc.,* 1989 WL 253565, *2 (C.D. Cal. Sept. 1, 1989); *In re Stratosphere Corp.*, 183 F.R.D. at 686-687.[7]

**B.      The Shield Law Broadly Protects Non-Party Reporters Like Mr. Palmeri.**

California's shield law effectively protects journalists who want to avoid taking sides as witnesses in a courtroom, because allowing litigants to compel testimony impairs reporters' ability to investigate and to disseminate information to the public. *See, e.g*., *Miller v. Superior Court,* 21 Cal. 4th 883, 898, 986 P.2d 170 (Cal. 1999). To protect against these dangers, the California Legislature enacted a series of statutory reporter's shield laws, including current Evidence Code § 1070. In 1980, this statutory protection was enshrined in the state Constitution by an overwhelming majority of California voters. The shield law, which is now Article I, § 2(b) of the state Constitution, provides that a reporter cannot be held in contempt

---

[7] *But see Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005) (declining to apply Arizona state privilege in federal case). In *Agster*, the Ninth Circuit addressed a state peer-review privilege created by statute, not a state constitutional immunity like the shield law. Mr. Palmeri submits that his state constitutional immunity should not be mooted by the consolidation of the parties' claims into a single federal action that encompasses federal and state claims.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"for refusing to disclose any unpublished information obtained or prepared in gathering, receiving or processing of information for communication to the public." Cal. Const. Art. I, § 2(b).   This constitutional provision prevents Mattel from compelling Mr. Palmeri to testify.[8]

## C.   The Shield Law Absolutely Protects Non-Party Reporters From Being Compelled To Testify About Unpublished Information In Civil Cases.

The California Supreme Court has made clear that the shield law guarantees non-party reporters "absolute" protection against being compelled to testify about unpublished information that they acquire in the course of their newsgathering. *New York Times*, 51 Cal. 3d at 461; *see also Miller,* 21 Cal. 4th at 890.  Importantly, the state Constitution broadly defines "unpublished information" to include "data of whatever sort not itself disseminated to the public through a medium of communication, whether or not published information based upon or related to such materials has been disseminated."  Cal. Const, Art. I, § 2(b).

*In re Jack Howard*, 136 Cal. App. 2d 816, 289 P.2d 537 (Cal. Ct. App. 1955), is on point, and underscores how broadly California courts have defined unpublished information.  There, a state appellate court held that even though a newspaper article published under a reporter's byline contained *direct quotations* attributed to a labor organizer, the reporter maintained his right to refuse to testify about whether he ever had a conversation with that individual. 136 Cal. App. 2d at 818-819.  "[I]n the absence of any showing other than the published news story," the court reasoned that the reporter had not actually disclosed the source of the published information.  *Id.* at

---

[8] Although the shield law creates an immunity against contempt, it effectively prevents civil litigants from compelling non-party reporters to testify.  *New York Times v. Superior Court*, 51 Cal. 3d 453, 461, 796 P.2d 811 (Cal. 1990). Consequently, courts regularly grant reporters' motions to quash subpoenas and deny litigants' motions to compel reporters' testimony.  *See, e.g., People v. Cooper*, 53 Cal. 3d 771, 819, 821, 281 Cal. Rptr. 90 (Cal. 1991); *Los Angeles Mem. Coliseum Comm'n*, 89 F.R.D. at 491; *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 117-121, 64 Cal. Rptr. 3d 467 (Cal. Ct. App. 2007).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

819.  Because the article did not disclose anything other than the quoted statement that appeared within the four corners of the article, the reporter could not be compelled to answer questions about the context of that statement, including how the statement came to be published in the newspaper in an article under the reporter's byline.  *Id.*

Here, Mr. Palmeri's shield-law argument is even stronger than the reporter's argument in *In re Howard* because the BusinessWeek article does not attribute the statement at issue – "[Larian] should know:  He got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers" – to Mr. Larian.  Ex. 1. Mattel wants to ask Mr. Palmeri how he obtained that information.  But the article does not reveal the source of the information, which thus is not "published" within the meaning of the shield law.  *In re Howard*, 136 Cal. App. 2d at 818-819.  The shield law thus absolutely prevents Mattel from compelling Mr. Palmeri to testify about this information, just as the reporter in *In re Howard* did not have to testify about how the newspaper obtained the quote that was published in that case.  136 Cal. App. 3d at 818-819.

The state shield law thus provides an alternative ground for denying Mattel's Motion.

## 5.

## THE COURT SHOULD AWARD MR. PALMERI HIS ATTORNEYS' FEES.

Mr. Palmeri is entitled to an award of his attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 37(a)(5)(B), which provides that the court "*must*, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," unless the motion was substantially justified or the award of fees would be unjust.  (Emphasis added.)  *See, e.g., Wright v. Fred Hutchinson Cancer Research Center*, 206 F.R.D.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

679, 683 (W.D. Wash. 2002) (court denied litigant's motion to compel reporter's testimony and invited reporter to file fee motion).

Here, Mr. Palmeri has incurred significant fees in defending against Mattel's series of discovery motions. He thus seeks to recover fees and costs of $16,700 incurred for the preparation of this Opposition, and the opposition filed to Mattel's earlier appeal motion.[9]

## 6.

## IF THE COURT DENIES MATTEL'S MOTION, MATTEL SHOULD NOT BE ALLOWED TO CALL MR. PALMERI TO TESTIFY AT TRIAL WITHOUT FIRST OBTAINING LEAVE OF COURT.

The federal constitutional reporter's privilege applies equally to deposition subpoenas and to trial subpoenas directed at journalists. *See, e.g., Shoen II,* 48 F. 3d 412 (vacating contempt order relating to deposition subpoena); *Carushka*, 1989 WL 253565 (denying motion to enforce trial subpoena). Nevertheless, Mattel apparently believes that it can call Mr. Palmeri to testify at trial regardless of the outcome of this Motion. In fact, Mattel states that "Mr. Palmeri's testimony *will certainly be presented to the jury at trial*." Motion at 2:6-7 (emphasis added). Mr. Palmeri's counsel accepted service of a trial subpoena for Mr. Palmeri as a professional courtesy to Mattel's counsel. Aronson Decl. at ¶ 5. If the Court denies the instant Motion, however, Mattel should not be permitted to call Mr. Palmeri to testify at trial without first obtaining leave of Court. Otherwise, Mr. Palmeri and BusinessWeek

---

[9] Attorney Robyn Aronson spent in excess of 24 hours reviewing Mattel's two sets of objections, researching and preparing Mr. Palmeri's Oppositions, and preparing the accompanying declarations and proposed orders. Ms. Aronson's billing rate on this matter is $315 per hour. In addition, attorney Alonzo Wickers spent at least 16 hours working on the two Oppositions and anticipates that he will spend at least four more hours preparing for and attending the hearing on this Motion. Mr. Wickers' billing rate on this matter is $460 per hour. Accordingly, Mr. Palmeri will incur attorneys' fees in excess of $16,700. *See* Aronson Decl. at ¶ 6.

OPPOSITION
DWT 5670098v2 3930059-000040

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

would be forced to incur additional needless expense to raise these same privilege arguments in a motion to quash the trial subpoena.

**7.**

**CONCLUSION**

Mattel's dogged pursuit of testimony from Mr. Palmeri reflects a misunderstanding of the Ninth Circuit's broad constitutional reporter's privilege.  To prevail on this Motion, Mattel must show that the Discovery Master's May 8 Order was clearly erroneous or contrary to law as to each of the three elements of the *Shoen II* test.  Because Mattel has not come close to meeting that burden, its Motion should be denied.

DATED: May 19, 2008                    DAVIS WRIGHT TREMAINE LLP
                                       ALONZO WICKERS IV
                                       ROBYN ARONSON


                                       By: _____/s/_____
                                                    Robyn Aronson

                                       Attorneys for Non-Party Journalist
                                       CHRIS PALMERI

OPPOSITION
DWT 5670098v2 3930059-000040

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899