DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST.
SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899

ALONZO WICKERS IV (State Bar No. 169454)
    alonzowickers@dwt.com
ROBYN ARONSON (State Bar No. 228613)
    robynaronson@dwt.com

Attorneys for Non-Party Journalist
CHRIS PALMERI

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, an individual,

                Plaintiff,

     vs.

MATTEL, INC., a Delaware corporation,

                Defendant.

_____

AND CONSOLIDATED ACTIONS

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. **CV 04-9049 SGL (RNBx)**
Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

**DECLARATION OF ROBYN ARONSON WITH EXHIBITS A-C**

[Opposition To Mattel's Motion Objecting To Discovery Master's May 8, 2008 Order, filed concurrently]

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## DECLARATION OF ROBYN ARONSON

I, Robyn Aronson, declare:

1.      I am an attorney licensed to practice law before all the courts of the State of California and before this Court.  I am an associate with the law firm of Davis Wright Tremaine LLP, counsel of record for non-party journalist Chris Palmeri.  The matters stated below are true of my own personal knowledge.

2.      Attached as Exhibit A is a true and correct copy of relevant excerpts from the transcript of the April 14, 2008, hearing before Judge Larson on Mattel's Motion Objecting to Discovery Master's February 26, 2008 Order Denying Mattel's Motion to Compel.

3.      Attached as Exhibit B is a true and correct copy of the transcript for Isaac Larian's March 26, 2008, deposition, which had been attached to the Second Supplemental Declaration of Michael J. Niborski in Support of Mattel, Inc.'s Reply in Support of Motion Objecting to Discovery Master's February 26, 2008 Order Denying Mattel's Motion to Compel.

4.      Attached as Exhibit C is a true and correct copy of Mattel's Motion to Compel the Deposition of Christopher Palmeri, filed on January 22, 2008.

5.      On April 18, 2008, our office accepted service of a trial subpoena for Mr. Palmeri as a professional courtesy to Mattel's counsel.

6.      I spent in excess of 24 hours reviewing Mattel's two sets of objections, researching and preparing Mr. Palmeri's Oppositions, and preparing the accompanying declarations and proposed orders (15 hours for the first Opposition, nine hours for the second).  My billing rate on this matter is $315 per hour.  In addition, attorney Alonzo Wickers spent at least 16 hours working on the two motions (11 hours for the first Opposition, five hours for the second) and anticipates that he will spend at least four more hours preparing for and attending the hearing on

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

this motion.  Mr. Wickers' billing rate on this matter is $460 per hour.  Accordingly, Mr. Palmeri will incur attorneys' fees in excess of $16,700.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on May 19, 2008, at Los Angeles, California.

Robyn Aronson

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ARONSON DECLARATION
DWT 5670717v1 3930059-000040

Page 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

- - -

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

- - -

```
CARTER BRYANT, ET. AL.,          )
                                 )
                 PLAINTIFFS,     )
                                 )
          VS.                    )   NO. ED CV 04-09049
                                 )   (LEAD LOW NUMBER)
MATTEL, INC., ET. AL.,           )
                                 )
                 DEFENDANTS.     )
_____)   HEARING
AND RELATED ACTIONS,             )
                                 )
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

RIVERSIDE, CALIFORNIA

MONDAY, APRIL 14, 2008

10:14 A.M.

THERESA A. LANZA, RPR, CSR
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET, RM. 134
RIVERSIDE, CALIFORNIA  92501
(951) 274-0844
WWW.THERESALANZA.COM

**EXHIBIT A**

1

Page 2

1    APPEARANCES:

2

3    ON BEHALF OF MATTEL, INC.:

4

                         QUINN EMANUEL
5                        BY:  TIMOTHY L. ALGER
                         865 S. FIGUEROA STREET,
6                        10TH FLOOR
                         LOS ANGELES, CALIFORNIA  90017
7                        (213) 624-7707

8

     ON BEHALF OF MOVING PARTY, MATTEL, INC.:
9

                         STROOCK & STROOCK & LAVAN, LLP
10                       BY:  MICHAEL J. NIBORSKI
                         2029 CENTURY PARK EAST
11                       LOS ANGELES, CA 90067-3086
                         310-556-5800

12

13

     ON BEHALF OF NON-PARTY CHRISTOPHER PALMERI:
14

                         DAVIS WRIGHT TREMAINE LLP
15                       BY:  ALONZO WICKERS IV
                         865 SOUTH FIGUEROA STREET,
16                       SUITE 2400
                         LOS ANGELES, CALIFORNIA  90017-2566
17                       213-633-6865

18

19   ON BEHALF OF MGA ENTERTAINMENT:

20                       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                         BY:  ROBERT JAMES HERRINGTON
21                       300 SOUTH GRAND AVENUE
                         LOS ANGELES, CALIFORNIA 90071-3144
22                       213-687-5000

23

24

25

2

JULY 24, 2006                    ED CV 04-09049

b31d4ecd-95c0-419b-96fb-ae7d61285c6e

Page 3

1                           I N D E X

2                                                        PAGE

3       MOTION........................................   4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

JULY 24, 2006                    ED CV 04-09049

b31d4ecd-95c0-419b-96fb-ae7d61285c6e

Page 6

1    THE LATCHES DEFENSE RAISED BY MGA.

2             THE COURT:  EXPLAIN.

3             MR. NIBORSKI:  THERE'S A LOT OF OVERLAP BETWEEN THESE

4    ISSUES.

5             ESSENTIALLY, WHAT YOU HAVE HERE IS, YOU HAVE, IN THE

6    SUMMER OF 2003, TWO INTERVIEWS BEING GIVEN TO ARGUABLY THE TWO

7    MOST IMPORTANT BUSINESS JOURNALS IN THE COUNTRY.  ONE OF THE

8    REASONS THAT WE'RE HERE IS BECAUSE WE'RE DEALING WITH

9    BUSINESSWEEK MAGAZINE.  WE'RE NOT DEALING WITH A SMALL

10   PUBLICATION.  WE'RE DEALING WITH THE WALL STREET JOURNAL, AND

11   WE'RE DEALING WITH BUSINESSWEEK.  AND THE FACT THAT MR. LARIAN

12   CHOSE TO GIVE AN INTERVIEW TO BUSINESSWEEK AND TO MAKE AN

13   AFFIRMATIVE STATEMENT ABOUT THE ORIGIN OF BRATZ, WHILE THEN

14   SUBSEQUENTLY IN THIS LITIGATION, MAKING A VERY BIG POINT ABOUT

15   THE FACT THAT WHAT WAS IN THE WALL STREET JOURNAL ARTICLE PUT

16   US ON NOTICE OF CERTAIN FACTS AND THAT OUR FAILURE TO PROSECUTE

17   THE CASE EARLIER SUBJECTS US TO A LATCHES DEFENSE.

18            OUR PURPOSE HERE IS IN NO WAY TO IMPINGE ON THE

19   NEWS-GATHERING PROCESS.  IF WE WERE DEALING WITH UNPUBLISHED

20   INFORMATION --

21            THE COURT:  LET ME STOP YOU THERE.

22            IF THAT'S YOUR UNDERSTANDING OF LATCHES, THEN IT HAS

23   THE SAME RESPONSE AS THE STATUTE OF LIMITATIONS.

24            IF IT'S ABOUT PUTTING YOU ON NOTICE, ALL THAT WOULD

25   HAVE PUT YOU ON NOTICE -- I'M NOT SAYING IT'S NOT SIGNIFICANT,

4

b31d4ecd-95c0-419b-96fb-ae7d61285c6e

1   BECAUSE IT MAY VERY WELL BE SIGNIFICANT; IT MAY VERY WELL BE

2   DISPOSITIVE -- BUT WHATEVER PUTS YOU ON NOTICE WAS THIS ARTICLE

3   AS IT APPEARED BACK IN 2003.

4             MR. NIBORSKI:  YES.

5             THE COURT:  YOU CERTAINLY DIDN'T HAVE, IN 2003,

6   ACCESS TO THE REPORTER OR THE REPORTER'S SOURCES OR ADDITIONAL

7   NOTES OF THE REPORTER THAT WERE NOT PUT INTO THE ARTICLE.  ALL

8   YOU WOULD HAVE, ALL THAT'S OUT THERE IN THE PUBLIC, ALL THAT

9   WOULD HAVE TOLLED THE STATUTE OF LIMITATIONS, ALL THAT WOULD

10  HAVE COME INTO PLAY IN TERMS OF WHAT WAS GOING ON PUBLICLY, IS

11  WHAT IS IN THE ARTICLE.  AND ASSUMING THAT THE ARTICLE COMES IN

12  FOR SUMMARY JUDGMENT PURPOSES, AS I THINK IT DOES AS A

13  SELF-AUTHENTICATING DOCUMENT FOR PURPOSES OF SUMMARY

14  JUDGMENT -- NOT NECESSARILY FOR TRIAL, BUT I THINK THESE ISSUES

15  COME UP AT THE SUMMARY JUDGMENT STAGE -- I DON'T SEE WHAT MORE

16  YOU GET BY GETTING TO THE REPORTER AND HOW THAT'S REALLY

17  RELEVANT TO A LATCHES.

18             NOW, I COULD SEE HOW, PERHAPS, THE REPORTER MAY HAVE

19  EVIDENCE RELATING TO THE FRAUDULENT CONCEALMENT, BUT THAT WOULD

20  BE A PHASE TWO ISSUE AND I DON'T THINK I NEED TO GET TO THAT AT

21  THIS POINT.

22             MR. NIBORSKI:  WELL, THAT'S EXACTLY RIGHT, YOUR

23  HONOR.

24             THE FRAUDULENT CONCEALMENT ISSUE -- I MEAN, OUR POINT

25  IS THAT IF IT'S RELEVANT TO BOTH THE FRAUDULENT CONCEALMENT

5

Page 8

1   ISSUE, AS WELL AS THE STATUTE OF LIMITATIONS AND LATCHES

2   DEFENSES -- AND WHAT WE'RE ESSENTIALLY SEEKING IS TESTIMONY TO

3   CONFIRM A PUBLISHED STATEMENT IN AN ARTICLE IN A, PERHAPS, 20-

4   TO 30-MINUTE DEPOSITION -- IT MAKES PERFECT SENSE TO DO THAT

5   ALL AT ONCE.

6           THE COURT:  BUT DO YOU UNDERSTAND THE COURT'S POINT,

7   THOUGH, ABOUT WHY -- FOR PURPOSES OF THE STATUTE OF LIMITATIONS

8   AND THOSE ARGUMENTS, WHAT YOU'RE GOING TO BE RELYING UPON IS

9   WHAT WAS ACTUALLY PUBLISHED IN THE ARTICLE, NOT WHAT'S BENEATH

10  IT?

11          MR. NIBORSKI:  CORRECT.

12          THE COURT:  I MEAN, YOU ALLUDE TO VERIFICATION HERE.

13  THIS IS NOT A QUOTE.  UNLIKE THE SENTENCE BEFORE IT, WHERE

14  THERE'S A QUOTE, THIS WAS JUST A STATEMENT.

15          I WOULD CONCEDE THAT IT IS LOGICAL TO ASSUME THAT THE

16  SOURCE OF THAT INFORMATION WAS PROBABLY MR. LARIAN.  BUT IT MAY

17  NOT HAVE BEEN.  I MEAN, THE REPORTER MAY HAVE GOTTEN THAT FROM

18  SOMEPLACE ELSE; AND THAT'S WHY IT RAISES THE WHOLE ISSUE THAT

19  YOU'RE REALLY TRYING TO GET TO THE SOURCE, A CONFIDENTIAL

20  SOURCE IN THE SENSE THAT IT WASN'T DISCLOSED IN THE ARTICLE,

21  AND NOT SIMPLY A VERIFICATION OF A QUOTE.

22          I MEAN, IF THIS WAS SIMPLY A VERIFICATION OF A QUOTE,

23  THE JOURNALIST'S PRIVILEGE ANALYSIS MIGHT BE DIFFERENT,

24  ALTHOUGH THERE'S DISPUTE IN THE CASES THAT I WAS READING THIS

25  WEEKEND.  SOME SUGGEST THAT THEY'RE TREATED THE SAME; SOME

6

JULY 24, 2006                    ED CV 04-09049

b31d4ecd-95c0-419b-96fb-ae7d61285c6e

Page 9

1    SUGGEST THEY'RE TREATED DIFFERENTLY.  BUT I DON'T THINK WE EVEN

2    REALLY NEED TO ADDRESS THAT BECAUSE THIS ISN'T A QUOTE.

3    THERE'S NO QUESTION THAT THIS IS A STATEMENT.

4           MR. NIBORSKI:  I THINK THAT'S A FAIR POINT, YOUR

5    HONOR.  BUT I THINK THAT WE ARE AS CLOSE AS HUMANLY POSSIBLE TO

6    A QUOTE, WITHOUT THE LITTLE ACTUAL MARKINGS AND A 'LARIAN SAID'

7    ON EITHER SIDE OF THE STATEMENT.

8           PRESUMABLY, IF MR. LARIAN WAS NOT THE SOURCE OF THE

9    STATEMENT, WHEN WE BEGAN MEETING AND CONFERRING WITH COUNSEL,

10   YOU KNOW, NINE MONTHS AGO, A STATEMENT TO THAT EFFECT WOULD

11   HAVE BEEN TAKEN ON FACE VALUE, AND WE WOULD HAVE LET THE ISSUE

12   LIE.

13          THE COURT:  BUT INSTEAD, MR. LARIAN DOESN'T REALLY

14   REMEMBER WHAT HAPPENED OR WHAT HE SAID.

15          MR. NIBORSKI:  RIGHT.

16          AND JUST TO SEGUE INTO ONE OF THE OTHER ISSUES IN

17   THIS MOTION, YOU KNOW, JUDGE INFANTE DID NOT HAVE THE BENEFIT,

18   WHEN THIS WAS FIRST BRIEFED BEFORE HIM, OF THE SECOND SESSION

19   OF MR. LARIAN'S DEPOSITION, WHICH, AS YOUR HONOR KNOWS, WE HAD

20   TO GO THROUGH SOME HOOPS TO GET TO.  AND IT WAS PRETTY CLEAR

21   MR. LARIAN HAD THE SUFFICIENT LACK OF RECOLLECTION TO MAKE HIM

22   A VIABLE ALTERNATIVE SOURCE.

23          AND WE ALSO CORROBORATED THE FACT THAT THERE REALLY

24   ARE ONLY TWO PEOPLE ON THE FACE OF THE EARTH WITH THIS

25   INFORMATION:  MR. LARIAN AND MR. PALMERI.

7

Page 36

1                            CERTIFICATE

2                                        .

3    I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
4    THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
     ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
5    CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

6

7

     _____              _____
8    THERESA A. LANZA, RPR, CSR                      DATE
     OFFICIAL COURT REPORTER
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                                      8

JULY 24, 2006                          ED CV 04-09049

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, AN INDIVIDUAL, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | CASE NO. |
| V. ) | CV 04-9040 SGL (RNBX) |
| ) | |
| MATTEL, INC., A DELAWARE ) | |
| CORPORATION, ET AL., ) | |
| ) | |
| DEFENDANTS. ) | |
| ————————————————— ) | |
| ) | |
| AND CONSOLIDATED ACTION (S). ) | |

# C O N F I D E N T I A L

**(THIS TRANSCRIPT HAS BEEN DESIGNATED CONFIDENTIAL, ATTORNEYS' EYES ONLY)**

# DEPOSITION OF ISAAC LARIAN

# VOLUME II

# MARCH 26, 2008



REPORTED BY:
PAULA PYBURN
CSR NO. 7304
JOB NO. 08AE226-PP

**EXHIBIT B**

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

9

EXHIBIT _1_

PAGE _4_

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| CARTER BRYANT, AN | ) | |
| INDIVIDUAL, | ) | |
| | ) | CASE NO. |
| PLAINTIFF, | ) | CV 04-9049 SGL(RNBX) |
| | ) | |
| V. | ) | CONSOLIDATED WITH |
| | ) | CASE NO. 04-9059 |
| MATTEL, INC., A DELAWARE | ) | AND |
| CORPORATION, | ) | CASE NO. 05-2727 |
| | ) | |
| DEFENDANT. | ) | |
| _____ | ) | |
| | ) | |
| AND CONSOLIDATED ACTION(S) | ) | |
| _____ | ) | |

CONFIDENTIAL ATTORNEYS' EYES ONLY
VIDEOTAPED DEPOSITION OF ISAAC
LARIAN, VOLUME II, TAKEN ON BEHALF
OF MATTEL, INC., AT 10250
CONSTELLATION BOULEVARD, 19TH FLOOR,
LOS ANGELES, CALIFORNIA, COMMENCING
AT 9:34 A.M., WEDNESDAY, MARCH 26,
2008, BEFORE PAULA A. PYBURN, C.S.R.
7304, R.P.R., C.L.R.

261

EXHIBIT _1_

PAGE _5_

10

```
 1   APPEARANCES OF COUNSEL:
 2   FOR M.G.A. ENTERTAINMENT, INC.:
 3   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
     BY:  THOMAS J. NOLAN, ESQ.
 4   300 SOUTH GRAND AVENUE
     LOS ANGELES, CALIFORNIA 90071-3144
 5   (213) 687-5000
     TNOLAN@SKADDEN.COM
 6
 7   FOR DEFENDANT MATTEL, INC.:
 8   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     BY:  MICHAEL T. ZELLER, ESQ.
 9            AND
     BY:  JON COREY, ESQ.
10            AND
     BY:  BRIDGET A. HAULER, ESQ.
11   865 SOUTH FIGUEROA STREET
     10TH FLOOR
12   LOS ANGELES, CALIFORNIA 90024
     (213) 443-3000
13   MICHAELZELLER@QUINNEMMANUEL.COM
     JONCOREY@QUINNEMMANUEL.COM
14   BRIDGETHAULER@QUINNEMMANUEL.COM
15
     FOR CARTER BRYANT:
16
     KEKER & VAN NEST LLP
17   BY:  CHRISTA MARTINE ANDERSON, ESQ.
          (PAGES 276 - 517)
18   710 SANSOME STREET
     SAN FRANCISCO, CALIFORNIA 94111
19   (415) 391-5400
     CANDERSON@KVN.COM
20
21   ALSO PRESENT:
22   STEVEN TOGAMI,
          J.T.V. LITIGATIONS SERVICES, INC.
23   JEANINE PISONI,
          GENERAL COUNSEL, M.G.A. ENTERTAINMENT, INC.
24
25
```

262

EXHIBIT __1__

PAGE __6__

11

```
                        EXAMINATION
1

2    BY MR. ZELLER:

3        Q.    GOOD MORNING.

4        A.    GOOD MORNING.

5        Q.    YOU HAVE OF COURSE BEEN THROUGH THIS        09:35:07

6    PROCESS BEFORE, SO LET ME JUST GIVE YOU A VERY BRIEF

7    REMINDER THAT IF DURING THE COURSE OF THE DAY I ASK

8    YOU ANY QUESTION THAT IS UNCLEAR IN ANY WAY, JUST

9    PLEASE SPEAK UP AND I WILL BE HAPPY TO REPHRASE IT

10   OR WE CAN HAVE THE COURT REPORTER READ IT BACK.       09:35:22

11       A.    OKAY.

12       Q.    IN THE 2004 TIME PERIOD DID YOU SPEAK WITH

13   A JOURNALIST NAMED PALMERI?

14       A.    IT COULD BE POSSIBLE, I DON'T REMEMBER.

15       Q.    DO YOU RECALL TALKING WITH A BUSINESS WEEK   09:35:36

16   REPORTER ABOUT BRATZ AT SOME POINT?

17       A.    I DO.

18       Q.    AND I APOLOGIZE, I ACTUALLY SAID 2004, I

19   MEANT 2003, SO LET ME CLEAR SOMETHING UP.

20             DO YOU RECALL SPEAKING WITH A BUSINESS WEEK  09:35:46

21   REPORTER IN THE 2003 TIME PERIOD?

22       A.    I DON'T REMEMBER WHEN I SPOKE TO HIM.

23       Q.    DO YOU RECALL THERE BEING AN ARTICLE THAT

24   CAME OUT IN BUSINESS WEEK ABOUT BRATZ IN THE 2003

25   TIME PERIOD?                                          09:36:02
```

265

EXHIBIT ___1___

PAGE ___7___

12

1       A.   I DON'T KNOW IF IT WAS IN 2003, BUT THERE

2   WAS AN ARTICLE.

3       Q.   SHOW YOU WHAT'S PREVIOUSLY MARKED AS

4   EXHIBIT 631.

5           MR. NOLAN:   THANK YOU.                          09:36:19

6           MIKE, DO YOU HAVE ANOTHER COPY?

7           MR. ZELLER:   YEAH.

8           THE WITNESS:   CAN I HAVE A CHANCE TO READ

9   THIS, PLEASE?  I'M NOT SURE IF I CAN READ THIS,

10  FRANKLY.                                                 09:36:36

11  BY MR. ZELLER:

12      Q.   IF YOU CAN TAKE A -- JUST A LOOK AT IT TO

13  SATISFY YOURSELF WHETHER YOU HAVE EVER SEEN THE

14  ARTICLE BEFORE.

15      A.   NOT WITHOUT READING IT, I CAN'T.               09:36:43

16      Q.   THIS IS NOT --

17          MR. NOLAN:   TAKE -- TAKE YOUR TIME, IF YOU

18  WANT TO.

19          THE WITNESS:   I NEED TO READ IT TO BE ABLE

20  TO SAY IF I HAVE OR NOT, AND THIS COPY IS NOT          09:36:50

21  READABLE.

22          MR. NOLAN:   DO YOU HAVE A BETTER COPY,

23  MIKE, OR IS THIS THE BEST YOU HAVE?

24          MR. ZELLER:   THIS IS EXACTLY WHY WE SHOULD

25  HAVE DONE IT AT MY OFFICE, SO THAT WHEN ISSUES LIKE    09:37:02

266

EXHIBIT ___1___

PAGE ___8___

1   THIS COME UP THIS IS --

2          MR. NOLAN:   THERE'S NO PROBLEM.   IT JUST --

3   IT JUST MAY TAKE -- A LITTLE BIT HARDER.

4          WHY DON'T -- HERE, WHY DON'T YOU JUST LOOK

5   AT THIS COPY AND SEE IF YOU CAN JUST TRY TO READ IT.      09:37:10

6          THE WITNESS:   HMM?

7          MR. NOLAN:   IT'S NOT AS CLEAR, BUT TRY TO

8   READ IT WITH YOUR GLASSES ON.

9          THE WITNESS:   OKAY.

10          MR. NOLAN:   HE HAS GOT HIS GLASSES.   HE'S      09:37:19

11   LOOKING AT IT.

12   BY MR. ZELLER:

13      Q.    AND JUST SO YOU KNOW WHEN YOU'RE LOOKING AT

14   IT, I ONLY HAVE A COUPLE OF PARTICULAR QUESTIONS

15   ABOUT IT.   I'M NOT GOING TO ASK YOU ABOUT THE ENTIRE      09:37:31

16   ARTICLE OTHER THAN A GENERAL QUESTION, BUT TAKE YOUR

17   TIME TO -- TO SATISFY YOURSELF WHETHER YOU'VE SEEN

18   IT.

19      A.    THANK YOU.

20          OKAY, GO AHEAD.      09:43:05

21      Q.    FIRST, GENERALLY SEEING EXHIBIT 631, DO YOU

22   RECALL SEEING A BUSINESS WEEK ARTICLE THAT CAME OUT

23   ABOUT BRATZ IN OR ABOUT THE SUMMER OF 2003?

24      A.    THIS ARTICLE, I DON'T RECALL IT.

25      Q.    WHAT I WOULD LIKE TO DO IS DIRECT YOUR      09:43:16

267

EXHIBIT _1_

PAGE _9_

```
 1    ATTENTION TO THE LAST PAGE, WHICH IS THE THIRD PAGE

 2    OF EXHIBIT 631.

 3         A.   RIGHT.

 4         Q.   AND YOU WILL SEE AT THE BOTTOM, THE VERY

 5    LAST PARAGRAPH, IT SAYS HERE IN PART, AND IT STARTS        09:43:28

 6    OFF WITH A QUOTE FROM YOU, QUOTE (READING):

 7              LIKE THEY SAY IN BUSINESS SCHOOL, NO

 8              RISK, NO REWARD, END QUOTE, SAYS

 9              ISAAC LARIAN, CEO OF PRIVATELY HELD

10              M.G.A.  HE SHOULD KNOW.  HE GOT THE          09:43:42

11              IDEA FOR BRATZ AFTER SEEING HIS OWN

12              KIDS RUNNING AROUND IN NAVEL-BARING

13              TOPS AND HIP HUGGERS, END QUOTE.

14              DO YOU SEE THAT?

15         A.   YES, I DO.                                   09:43:55

16         Q.   DID YOU EVER SAY THAT TO ANYBODY?

17         A.   IT'S POSSIBLE I DID.  I DON'T RECALL.

18         Q.   SO YOU'RE NOT SURE ONE WAY OR ANOTHER?

19         A.   I DON'T RECALL IT, I -- I MIGHT HAVE SAID

20    IT.                                                   09:44:03

21         Q.   YOU'RE NOT DENYING IT?

22         A.   NO.

23         Q.   AND IS IT A TRUE STATEMENT THAT YOU GOT THE

24    IDEA FOR BRATZ AFTER SEEING YOUR KIDS RUNNING AROUND

25    IN NAVEL-BARING TOPS AND HIP HUGGERS?                 09:44:13
```

268

EXHIBIT _1_

PAGE _10_

15

1      A.   PARTIALLY.

2      Q.   AND WHY DO YOU SAY "PARTIALLY"?

3      A.   BECAUSE THAT'S WHAT MY KIDS WERE WEARING AT

4   THAT TIME.   THEY WERE YOUNG AND THEY WERE WEARING

5   CLOTHES LIKE THAT, AND THE BRATZ CONCEPT THAT WE          09:44:23

6   SAW, THAT'S WHAT WE HAD IN MIND.

7      Q.   AND DID YOU HAVE THIS IDEA FOR -- FOR DOLLS

8   THAT HAD THAT TYPE OF CLOTHING BEFORE OR AFTER YOU

9   FIRST MET CARTER BRYANT?

10     A.   AFTER.                                             09:44:42

11     Q.   CAN YOU PUT A TIME PERIOD APPROXIMATELY

12   WHEN YOU HAD THAT IDEA?

13     A.   I CAN'T.

14     Q.   CAN YOU TELL US IF IT WAS BEFORE THE -- THE

15   ACTUAL RELEASE OF BRATZ?                                  09:44:57

16     A.   BEFORE RELEASE OF BRATZ -- IT WAS AFTER

17   CARTER SHOWED US HIS DRAWINGS, SO I'M SURE IT WAS

18   BEFORE THE RELEASE, YES.

19     Q.   AND WE WON'T GO OVER WHAT WE TALKED ABOUT

20   THE LAST TIME, BUT JUST SO WE HAVE A CLEAR CONTEXT        09:45:13

21   HERE, THE FIRST TIME THAT YOU MET CARTER BRYANT WAS

22   AT THAT EARLY SEPTEMBER 2000 MEETING WHERE YOUR

23   DAUGHTER WAS ALSO PRESENT; IS THAT CORRECT?

24     A.   THAT'S CORRECT.

25          MR. ZELLER:  LET'S PLEASE MARK AS EXHIBIT          09:45:28

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

EXHIBIT _____1_____

PAGE _____11_____

16

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2   JOHN B. QUINN (State Bar No. 090378)
    MICHAEL T. ZELLER (State Bar No. 196417)
3   JON D. COREY (State Bar No. 185066)
4   865 South Figueroa Street, 10th Floor
    Los Angeles, California  90017-2543
5   Telephone: (213) 443-3000; Facsimile: (213) 443-3100

6
    STROOCK & STROOCK & LAVAN LLP
7   BARRY B. LANGBERG (State Bar No. 048158)
8   MICHAEL J. NIBORSKI (State Bar No. 192111)
    2029 Century Park East, Suite 1600
9   Los Angeles, California  90067-3086
    (lacalendar@stroock.com)
10  Telephone: (310) 556-5800; Facsimile: (310) 556-5959

11
12  Attorneys for MATTEL, INC.

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15                  EASTERN DIVISION

16
    CARTER BRYANT, an individual,     )   Case No. CV 04-9049 SGL (RNBx)
17                                     )   Consolidated with
           Plaintiff,                  )   Case No. CV 04-09059
18                                     )   Case No. CV 05-02727
19         vs.                         )   DISCOVERY MATTER
                                       )
20  MATTEL, INC., a Delaware           )   [To Be Heard by Discovery Master Hon.
    corporation,                       )   Edward Infante (Ret.) Pursuant To The
21                                     )   Court's Order Of Dec. 6, 2006]
           Defendant.                  )
22                                     )   MATTEL, INC.'S NOTICE OF
                                       )   MOTION AND MOTION TO
23                                     )   COMPEL THE DEPOSITION OF
                                       )   CHRISTOPHER PALMERI
24                                     )
    _____        )
25  AND CONSOLIDATED ACTIONS           )   Date:    February 8, 2008
                                       )   Time:    9:30 a.m.
26                                     )   Place:   TBA
27  _____        )
                                           EXHIBIT C
28

17

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 1

I.   PRELIMINARY STATEMENT ....................................................................... 1

II.  STATEMENT OF FACTS .............................................................................. 3

III. ARGUMENT .................................................................................................... 5

A.   Mr. Palmeri's Prospective Testimony Is Not Privileged And He Must Therefore Submit To Deposition ............................................. 5

    1.   Mr. Palmeri's prospective testimony concerns information that is non-confidential and has already been published. ........................................................................... 6

    2.   Even if Mr. Larian's identity as the source of the "He should know" statement is viewed as "unpublished," the journalist's privilege still does not apply. ..................................... 8

B.   Even If The Journalist's Privilege Applies, It Must Yield Here ............ 10

    1.   The testimony Mattel seeks from Mr. Palmeri is available from no other source. ................................................. 11

    2.   The information Mattel seeks is non-cumulative. ...................... 12

    3.   The information Mattel seeks is critical to Mattel's claims regarding the ownership of Bratz. ................................... 13

    4.   The information Mattel requests is not confidential. .................. 14

IV.  CONCLUSION ............................................................................................. 15

# TABLE OF AUTHORITIES

## Cases

Agster v. Maricopa County,
  422 F.3d 836 (9th Cir. 2005) .................................................. 10

Brinston v. Dunn,
  919 F. Supp. 240 (S.D. Miss. 1996) .................................... 7, 8

Crowe v. County of San Diego,
  242 F. Supp. 2d 740 (S.D. Cal. 2003) .................................. 10

De La Paz v. Henry's Diner,
  946 F. Supp. 484 (N.D. Tex. 1996) ..................................... 6, 9

Dillon v. City and County of San Francisco,
  748 F. Supp. 722 (N.D. Cal. 1990) ................. 6, 9, 10, 11, 14

Don King Prod. v. Douglas,
  131 F.R.D. 421 (S.D.N.Y. 1990) ....................................... 12, 13

Farr v. Pitchess,
  522 F.2d 464 (9th Cir. 1975) ............................................... 10

In re Maykuth,
  2006 WL 724241 (E.D. Pa. 2006) ........................................... 6

McKevitt v. Pallasch,
  339 F.3d 530 (7th Cir. 2003) .................................. 7, 8, 9, 14

Miami Herald Pub. Co. v. Morejon,
  561 So. 2d 577 (Fla. 1990) ..................................................... 6

Prince George's County v. Hartley,
  822 A.2d 537 (Md. App. 2003) ............................................ 10

Shoen v. Shoen,
  5 F.3d 1289 (9th Cir. 1993) ..................................... 5, 10, 14

Shoen v. Shoen,
  48 F.3d 412 (9th Cir. 1995) ................................................. 11

Solaia Technology, LLC v. Rockwell Automation, Inc.,
  2003 WL 22597611 (N.D. Ill. 2003) ...................................... 9

State of Minnesota v. Knutson,
  523 N.W.2d 909 (Minn. App. 1995) .................................... 10

In re Vmark Software, Inc.,
  1998 WL 42252 (E.D. Pa. 1998) ................................. 6, 11, 12

In re Ziegler,
  550 F. Supp. 530 (W.D.N.Y. 1982) ..................................... 10

- 2 -

19

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that, at a hearing before Discovery Master Hon.

3   Edward Infante (Ret.), that will occur at 9:30 a.m. on February 8, 2008 or at such

4   other time set by Judge Infante, Mattel, Inc. ("Mattel") will, and hereby does, move

5   the Court, pursuant to Federal Rule of Civil Procedure 37, to compel the deposition

6   of Christopher Palmeri.

7       This Motion is made on the grounds that Mr. Palmeri has refused without

8   justification to appear for deposition and provide testimony that is material – indeed,

9   vital – to Mattel's claims.

10      This Motion is based on this Notice of Motion and Motion, the accompanying

11  Memorandum of Points and Authorities, the Declaration of Michael J. Niborski (and

12  its exhibits) filed concurrently herewith, the records and files of this Court, and all

13  other matters of which the Court may take judicial notice.

14                  Statement Of Rule 37-1 Compliance

15      The parties met and conferred regarding Mattel's prospective deposition of

16  Christopher Palmeri.  See Declaration of Michael J. Niborski ("Niborski Dec."), filed

17  concurrently herewith, at ¶¶ 4, 6-8, 14-16.

18

19  Dated:  January 21, 2008        STROOCK & STROOCK & LAVAN LLP
                                    BARRY B. LANGBERG
20                                  MICHAEL J. NIBORSKI

21

22

23                          By:    _____
                                   Michael J. Niborski
24
                                   Attorneys for MATTEL, INC.
25

26

27

28

- 1 -

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

Mattel seeks nothing more from reporter Christopher Palmeri than confirmation under oath of information he has already provided to the general public. Rather than provide testimony on a matter that goes to the heart of this litigation, Mr. Palmeri has refused outright to comply with a subpoena and appear for deposition. Mr. Palmeri remains steadfast in his refusal to obey the subpoena despite Mattel's willingness to limit the scope and duration of the deposition and to hold the deposition at the location of Mr. Palmeri's choice.

In July 2003, an article authored by Mr. Palmeri entitled "To Really Be A Player, Mattel Needs Hotter Toys" was published in BusinessWeek (the "Article"). The Article contains several statements clearly attributable to Isaac Larian, one of which is as follows:

> Mattel won't live or die on every new toy it develops.  But it can't just rely on Barbies, either.  "Like they say in business school – no risk, no reward," says Isaac Larian, CEO of privately held MGA.  He should know:  He got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers.[1]

Mattel seeks limited deposition testimony from Mr. Palmeri that will confirm that Mr. Larian made these statements.  The Article conveys through clear language and context that Mr. Larian told Mr. Palmeri that the Bratz dolls were his idea and the source of that idea was Mr. Larian's observation of "his own kids run[ning]

---

[1]  Declaration of Michael J. Niborski filed concurrently herewith ("Niborski Dec."), ¶ 2, Ex. 1 (Article).

1    around in navel-baring tops and hip huggers."  Mattel merely asks that Mr. Palmeri

2    confirm Mr. Larian's published statements about the origins of Bratz.

3          This information is material to Mattel's claims and is not available from any

4    other source.  The information sought also is not confidential; BusinessWeek's

5    publication of Mr. Larian's statements about the origins of Bratz establishes that the

6    information obtained by Mr. Palmeri was not provided under any promise of

7    confidentiality.  Simply put, Mr. Palmeri is a witness to statements and conduct by

8    Mr. Larian – the public cover-up of Carter Bryant's development of Bratz while he

9    was a Mattel employee – that is central to this lawsuit.

10         Despite the limited scope of Mattel's intended inquiry, Mr. Palmeri has

11   categorically refused to appear for deposition.  Mr. Palmeri's counsel contends that

12   Mattel seeks unpublished information and that the testimony requested by Mattel is

13   shielded by the journalist's privilege.  Mr. Palmeri has taken the untenable position –

14   unsupported by law – that he can completely avoid testifying simply because he

15   anticipates he will be asked a question that entitles him to assert the journalist's

16   privilege.

17         Clearly, Mattel is not seeking any unpublished information.  It is hornbook law

18   that information that has already been revealed to the public at large may not be the

19   subject of a valid privilege.  Moreover, even if the journalist's privilege were found

20   to apply here, it is qualified and yields when the litigant's need for the information

21   sought outweighs any public interest in non-disclosure.  There is simply no public

22   policy rationale for a reporter's refusal to confirm under oath statements published in

23   a national news magazine.  In contrast, Mr. Palmeri's prospective testimony is

24   crucial to Mattel's ability to prove its claim that Bryant and Larian, among others at

25   MGA, made inconsistent statements concerning the origins of Bratz and engaged in a

26   scheme to conceal the product's true origins.  These statements offer direct proof that

27   Mr. Larian – who has since acknowledged under oath that Bryant brought him the

28

- 2 -

22

1   Bratz idea – falsely claimed that he (Larian) was the creator of Bratz.  That false

2   claim was part of a scheme to conceal the truth from the public and Mattel.

3        The scheme of concealment is central to this case in at least two respects.

4   First, it shows guilty knowledge by Larian and MGA that Bryant developed Bratz

5   while an employee of Mattel, in violation of his employment agreement with Mattel,

6   and an awareness by Larian and MGA that Bryant's inventions during his

7   employment at Mattel belong to Mattel.  Second, Larian's concealment, through

8   false statements to Mr. Palmeri in the summer of 2003, bears directly on MGA's

9   contention that Mattel had notice of Bryant's disloyalty prior to November 24, 2003,

10   when Mattel obtained a copy of Bryant's MGA agreement relating to Bratz.  Mr.

11   Larian obviously did his best to hide the existence of the claims against Bryant and

12   MGA by lying to the press.

13        Mattel has endeavored to depose Mr. Palmeri in the least burdensome manner

14   possible, offering not only to limit the time for questioning and conduct the

15   deposition at a time and place of Mr. Palmeri's choosing, but also to discuss the

16   prospective line of questioning in advance of the deposition with Mr. Palmeri's

17   counsel.  Simply put, Mattel has reasonably sought to procure testimony to which it

18   is entitled under the law.  In response, Mr. Palmeri has refused to appear.  Mattel

19   therefore seeks relief from the Court.

20

21   **II.  STATEMENT OF FACTS**

22        Mattel served Mr. Palmeri with a deposition subpoena on July 25, 2007.  The

23   parties do not dispute that service of the subpoena was proper.[2]  Mr. Palmeri served

24   objections to the deposition subpoena on August 8, 2007.[3]  While Mattel initially

25   requested documents in connection with the subpoena to ensure that Mr. Palmeri was

26   _____

27   [2]  Niborski Dec., ¶¶ 2, 16; Ex. 3 (Subpoena to Christopher Palmeri, dated July 25,
2007); Ex. 13 (Letter from M. Niborski to A. Wickers dated January 14, 2008).

28   [3]  Niborski Dec., ¶ 5; Ex. 4 (Non-Party Reporter Christopher Palmeri's Objections
To Plaintiff's Subpoena, dated August 8, 2007).

1   able to provide the most accurate testimony possible regarding Larian's published
2   statements, BusinessWeek has represented that no such documents exist.  As a result,
3   only Mr. Palmeri's appearance for deposition remains at issue.[4]

4        Following service of the subpoena, counsel for Mattel and Palmeri engaged in
5   and extended meet-and-confer process.  Mattel consistently represented that it seeks
6   testimony relating to published statements.  In emails sent prior to serving
7   Mr. Palmeri with the subpoena, as well as in the discussions that followed, Mattel
8   has reiterated this fact.[5]  Mattel also offered to conduct the deposition at a time and
9   place of Mr. Palmeri's choosing, and offered to agree to a limited period of time for
10  questioning.  In addition, Mattel offered to discuss the exact scope of the prospective
11  questions with counsel for Mr. Palmeri in advance of the deposition.[6]

12       Contemporaneous with the service of the subpoena on Mr. Palmeri, Mattel
13  served deposition subpoenas on Maureen Tkacik, a reporter for the Wall Street
14  Journal, and Denise O'Neal, a reporter for the Chicago Sun-Times.  Like Mr.
15  Palmeri, Ms. Tkacik and Ms. O'Neal wrote articles for their respective publications
16  that contained statements attributed to Larian regarding the origins of Bratz which
17  were inconsistent with Larian's, MGA's and Bryant's subsequent claims in this case.
18  Following meet and confer efforts with counsel for the Wall Street Journal and
19  Chicago Sun-Times, the two reporters were deposed on the same terms proposed by

20

21

22

23  [4] Niborski Dec., ¶¶ 4, 6-7; Ex. 3 (Email exchange between Alger and Farley), Ex. 6
24  (Email from Wickers to Alger dated August 16, 2007); Ex. 5 (Letter from Alger to Wickers, dated August 17, 2007).
25  [5] Niborski Dec., ¶¶ 6-8, 16; Ex. 6 (Email from Wickers to Alger dated August 16,
26  2007); Ex. 5 (Letter from Alger to Wickers, dated August 17, 2007); Ex. 7 (Letter from Niborski to Wickers, dated September 5, 2007); Ex. 13 (Letter from Niborski to Wickers, dated January 14, 2008).
27  [6] Niborski Dec., ¶¶ 6-8, 14-16; Ex. 7 (Letter from Niborski to Wickers, dated
28  September 5, 2007); Ex. 13 (Letter from Niborski to Wickers, dated January 14, 2008).

- 4 -

24

1    Mattel here, with counsel for Mattel questioning the witnesses for less than 30

2    minutes each.[7]

3           On January 7, 2008, the Court granted Mattel's Motion for Leave to Take

4    Additional Discovery in this action.  In the Court's Order, Judge Larson found that

5    Mattel is entitled to conduct additional depositions.[8]  Importantly, Judge Larson was

6    informed of the reasons for and specifically granted Mattel permission to take the

7    deposition of Mr. Palmeri.  In its moving papers, Mattel identified Mr. Palmeri as

8    one of the prospective deponents, informed the Court that Mr. Palmeri is a reporter

9    for BusinessWeek, and provided the Court with a description of the relevance of Mr.

10   Palmeri's anticipated testimony during oral argument.[9]

11          Despite this, on January 14, 2008, Mr. Palmeri's counsel informed counsel for

12   Mattel that it would not agree to produce Mr. Palmeri for deposition in response to

13   the deposition subpoena.[10]

14

15   **III.    ARGUMENT**

16         **A.    <u>Mr. Palmeri's Prospective Testimony Is Not Privileged And He</u>**

17                 **<u>Must Therefore Submit To Deposition</u>**

18          Because no privilege applies to Mr. Palmeri's prospective testimony, and that

19   testimony is indisputably relevant to this action, he should be ordered to provide the

20   requested testimony at deposition.  See <u>Shoen v. Shoen</u>, 5 F.3d 1289, 1292 (9th Cir.

21   1993) (holding that in the absence of an applicable privilege, a non-party can be

22

23   [7] Niborski Dec., ¶¶ 9-10; Ex. 8 (Transcript of deposition of Maureen Tkacik, dated
24   September 28, 2007); Ex. 9 (Transcript of deposition of Denise O'Neal, dated October 3, 2007).

25   [8] Niborski Dec., ¶ 13, Ex. 12 (Order Granting In Part And Denying In Part Mattel's
26   Motion For Leave To Take Additional Discovery, dated January 7, 2008; Order Amending Court's Minute Order of January 7, 2008).

27   [9] Niborski Dec., ¶¶ 11-12; Ex. 10 (Motion of Mattel for Leave to Take Additional Discovery, at 8, 11); Ex. 11 (Transcript of January 7, 2008 hearing).

28   [10] Niborski Dec., ¶¶ 1-16; Ex. 13 (Letter from Niborski to Wickers dated January 14, 2008).

1  compelled to produce evidence regarding any matter "reasonably calculated to lead
2  to the discovery of admissible evidence") (citing <u>Fed. R. Civ. P.</u> 26(b)(1)).  <u>See also</u>
3  <u>In re Maykuth</u>, 2006 WL 724241 at *3 (E.D. Pa. 2006) (granting defendant's motion
4  to compel the deposition of a reporter for the purposes of verifying whether or not
5  the plaintiffs actually made the comments attributed to them in the reporter's article);
6  <u>see also</u> <u>In re Vmark Software</u>, 1998 WL 42253 at *2 (E.D. Pa. 1998) (holding that
7  reporter's deposition was necessary to verify the statements of a party contained in a
8  published article).  Simply put, without the testimony that Mattel requests, the Article
9  is useless to Mattel because it does not constitute evidence admissible to prove a key
10 issue in the case – whether in fact Larian lied about the origins of Bratz.

11        **1.      Mr. Palmeri's prospective testimony concerns information**
12                  **that is non-confidential and has already been published.**

13        Mattel seeks nothing from Mr. Palmeri that is confidential or has not already
14 been published.  Mattel does not seek to reveal the identity of one of Mr. Palmeri's
15 sources, confidential or otherwise.  To the contrary, Mattel merely seeks to have
16 Mr. Palmeri testify to what anyone who read the Article would naturally conclude –
17 that the statements he attributes to Larian were actually made by Larian.  As a result,
18 the reporter's privilege is inapplicable to the information Mattel seeks from
19 Mr. Palmeri.  <u>See</u> <u>Dillon v. City and County of San Francisco</u>, 748 F. Supp 722, 726
20 (N.D. Cal. 1990) (holding that the privilege did not apply to the personal
21 observations of a reporter who "has not been asked to reveal any confidential sources
22 or information, nor has been requested to produce or discuss any resource
23 materials"); <u>Miami Herald Pub. Co. v. Morejon</u>, 561 So.2d 577, 581 (Fla. 1990)
24 (rejecting privilege for eyewitness observations (citing numerous cases)).

25        Federal courts – which apply federal common law privilege to non-diversity
26 cases[11] – have held that the journalist's privilege is inapplicable to all non-

27 _____

28 [11] <u>Dillon</u>, 748 F. Supp. at 724-25.

- 6 -

26

MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

1   confidential information, even if unpublished.  See De La Paz v. Henry's Diner, 946

2   F. Supp. 484, 485 (N.D. Tex. 1996) (holding that plaintiff's subpoena *duces tecum*,

3   seeking to compel a reporter's deposition, as well as tape-recorded interviews with

4   the defendant, did not implicate the journalist's privilege as it sought only non-

5   confidential material); see also McKevitt v. Pallasch, 339 F. 3d 530, 532 (7th Cir.

6   2003) (holding that journalist had "no conceivable interest" in preventing disclosure

7   of tape recordings of interviews with key prosecution witness for use by defendant in

8   a criminal trial because the source of the information was non-confidential).

9        This verification testimony is not only non-confidential, but also constitutes

10  "published" material to which the journalist's privilege does not apply.  Brinston v.

11  Dunn, 919 F. Supp. 240, 244 (S.D. Miss. 1996) (holding that where the defendant

12  failed to overcome the journalist's privilege to obtain "unpublished" information, it

13  was still proper to compel the deposition of the author on the limited issue of the

14  accuracy of the article's assertions, including whether statements attributed to the

15  plaintiff were in fact made by the plaintiff).  In Brinston, the Court drew a distinction

16  between "unpublished" materials, such as "sources" and "resource materials," which

17  may be the subject of privilege, and simply questioning the author of an article about

18  its accuracy, which does not "impermissibly infringe on the First Amendment right

19  to freedom of the press."  Id. at 243-44.

20       Mr. Palmeri is likely to contend that his testimony regarding statements in the

21  Article made by Larian involve unpublished information.[12]  This argument is based

22  solely on the fact that Mr. Palmeri did not include the exact words "Larian said" in

23  the following portion of the passage:  "He should know:  He got the idea for Bratz

24  after seeing his own kids run around in navel-baring tops and hip-huggers."  In other

25  words, Mr. Palmeri attempts to avoid a deposition based on editorial technique and a

26  news magazine's natural aversion to plodding prose that includes repetitious, express

27  ───────────────────────

28  [12]  Niborski Dec., ¶ 4; Ex. 3 (Email exchange between from Farley to Alger, dated June 26, 2007).

attribution.  The contents of the "He should know" passage, which immediately follows express attribution of a direct quote to Larian, conveys to any reasonable reader of BusinessWeek that Mr. Larian told Mr. Palmeri that he (Larian) had the idea for Bratz, and it was inspired by watching his children.

The attribution distinction also is a hollow one, because questioning Mr. Palmeri about statements implicitly attributed to a source would subject Mr. Palmeri to no different imposition than questions about direct quotes.  There would be no greater burden on Mr. Palmeri or interference with his work.  And the policy considerations that limit the journalist's privilege to unpublished information apply equally whether the non-confidential source is expressly identified with "he said" or the non-confidential source is identified by the content and context of the published statement.

Drawing a distinction would make certain determinations of discoverability turn on the stylistic choice of a reporter or his or her editors, and Mattel is aware of no case that stretches the journalist's privilege that far.  Mattel seeks nothing more than the defendant in <u>Brinston</u> – testimony verifying what was relayed to readers in the Article.

> **2.    Even if Mr. Larian's identity as the source of the "He should know" statement is viewed as "unpublished," the journalist's privilege still does not apply.**

As discussed above, Mr. Palmeri unconvincingly contended during the meet-and-confer process that Mattel seeks unpublished, and therefore privileged, information.  However, assuming, *arguendo*, that Larian's identity as the source of the "He should know" statement can be characterized as unpublished research material, it is still not protected by the journalist's privilege.  See <u>McKevitt v. Pallasch</u>, 339 F. 3d 530, 532 (7th Cir. 2003) (holding that journalist had "no conceivable interest" in preventing disclosure of tape recordings of interviews with key prosecution witness for use by defendant in a criminal trial because the source of

- 8 -

1  the information was non-confidential).  Here, Mr. Palmeri is being asked to verify

2  statements made to him by Larian, who is identified and quoted as a source in the

3  Article.  Id. at 533 ("[W]hen the information in the reporter's possession does not

4  come from a confidential source, it is difficult to see what possible bearing the First

5  Amendment could have on the question of compelled disclosure."); see also De La

6  Paz, 946 F. Supp. at 485 (holding that plaintiff was entitled to compel production of

7  tape-recorded interviews conducted with defendants if doing so did not require the

8  revelation of any confidential sources); Solaia Technology, LLC v. Rockwell

9  Automation, Inc., 2003 WL 22597611 at 2-3 (N.D. Ill. 2003) (holding that "there can

10  be no dispute" that tapes of communications between defendant and journalist, which

11  were used as background for a published article, are not confidential because "the

12  sources of any information would be known").

13       Here, Mattel seeks far less than the equivalent of a recording of the interview

14  between Mr. Palmeri and Mr. Larian.  Rather, Mattel requests that Mr. Palmeri verify

15  the accuracy of the portions of the interview that were disclosed to more than

16  900,000 readers of BusinessWeek.[13]  The result here must be the same as that

17  reached in Dillon.  There, Judge Patel held that a qualified privilege did not apply

18  because the journalist was being asked about things that he observed without any

19  promise of confidentiality.

20            Mr. McEowen [a television news cameraman] has not been

21            asked to reveal any confidential sources or information, nor

22            has he been requested to produce or discuss any resource

23            materials.  Instead, Mr. McEowen has been subpoenaed to

24            testify regarding his personal observations as an eyewitness

25            to the alleged beating of a citizen by two police officers.

26

27  _____

    [13]  See Imitating the Web, for the Busy Reader (New York Times, Oct. 12, 2007,
28  available at www.nytimes.com/2007/10/12/business/media/12adco.html) (circulation
    figures for BusinessWeek magazine).

- 9 -

1        This court knows of know authority to support the

2        proposition that such personal observations are privileged

3        simply because the eyewitness is a journalist. . . .

4    Dillon, 748 F. Supp. at 726; accord State of Minnesota v. Knutson, 523 N.W.2d 909,

5    913 (Minn. App. 1995) ("[T]he 'Constitution does not immunize a reporter from

6    testifying merely because he makes the observation as a news reporter.'" (quoting In

7    re Ziegler, 550 F. Supp. 530, 532 (W.D.N.Y. 1982)); Prince George's County v.

8    Hartley, 822 A.2d 537, 548 (Md. App. 2003) (requiring reporters to confirm

9    offensive statements made by police officers in a disciplinary hearing; "[The

10   reporters] are not protecting the confidential source of any information . . . The

11   testimony sought goes to the heart of the matter:  whether [the officer] made the

12   statements in question.").

13       Mattel is simply asking that Mr. Palmeri confirm statements by Mr. Larian that

14   are not confidential and which have been published in a national news magazine.  No

15   privilege is implicated here.

16

17   **B.**    **Even If The Journalist's Privilege Applies, It Must Yield Here**

18       Assuming (contrary to law) that any journalist's privilege is available to Mr.

19   Palmeri, it is a qualified one, which Mattel may overcome.[14]  See Shoen v. Shoen, 5

20   F.3d at 1292-93 ("[T]he privilege is a qualified one, not absolute . . . the process of

21   deciding whether the privilege is overcome requires that the claimed First

22   Amendment privilege and the opposing need for disclosure be judicially weighed in

23   light of the surrounding facts, and a balance struck to determine where lies the

24   paramount interest."); see also Farr v. Pitchess, 522 F.2d 464, 467-68 (9th Cir. 1975)

25   _____

26   [14]  See Agster v. Maricopa County, 422 F.3d 836, 839 (9th Cir. 2005) ("Where there are federal question claims and pendent state law claims present, the federal law of

27   privilege law applies."); see also Crowe v. County of San Diego, 242 F. Supp. 2d 740, 749 (S.D. Cal. 2003) (holding that where a court has jurisdiction over a federal claim, as well as pendent state law claims, federal privilege law applies to both);

28   Dillon, 748 F. Supp. at 724-25 (rejecting application of the California shield law).

1  (the federal privilege is a "limited" one that protects only "the right of the newsmen

2  to keep secret a source of information"); In re Vmark Software, Inc., 1998 WL

3  42252, *1 (E.D. Pa. 1998) ("this privilege is not absolute and must be weighed

4  against the strong interest of litigants in the full and complete disclosure of relevant

5  evidence"); Dillon, 748 F. Supp. at 726 (rejecting application of the privilege, but

6  proceeding to a balancing test in which the court found the federal privilege would

7  yield because the information sought was not confidential and went to the heart of

8  plaintiff's claim).

9         Because this privilege is qualified, a civil litigant may overcome a valid

10  assertion of the journalist's privilege by a non-party. See Shoen v. Shoen, 48 F.3d

11  412, 416 (9th Cir. 1995). Therefore, even if we assume that a privilege applies, to

12  overcome that privilege Mattel need only demonstrate that the requested evidence is:

13  "(1) unavailable despite the exhaustion of all reasonable alternative sources; (2) non-

14  cumulative; and (3) clearly relevant to an important issue in the case." Id.  That test

15  is clearly met here.

16              **1.      The testimony Mattel seeks from Mr. Palmeri is available**

17                        **from no other source.**

18         There are only two conceivable sources that can verify first-hand what Larian

19  said to Mr. Palmeri during their interview – Messrs. Palmeri and Larian.  Where one

20  of the sources is a self-interested party to the litigation – as here – the lack of other

21  witnesses permits the court to conclude that Mr. Palmeri is the only available source.

22  See In re Vmark Software, Inc., 1998 WL 42252 at *2 (E.D. Pa. 1998) (where

23  plaintiff sought deposition testimony and documents from a reporter regarding a

24  published interview with the defendant, the reporter was "the only access to this

25  information").  In Vmark, like the case at hand, the plaintiff sought verification of

26  statements attributed to the defendant in a published interview.  The Vmark court

27  reasoned that the reporter was the "only other person, apart from [the defendant],

28  who can verify the statements attributed to [the defendant]," as only the reporter was

- 11 -

1  "qualified to testify as to his reportorial practices with respect to the statements of

2  others." Id.  Of the two people who witnessed the conversation, it is only Mr.

3  Palmeri – a trained listener – who can provide the jury with unbiased testimony

4  about Mr. Larian's statements.

5       Moreover, Mr. Larian already has testified about the origins of Bratz, and told

6  an entirely different story from that which he told to Mr. Palmeri.  He has effectively

7  denied the accuracy of the Article.  Larian stated under oath that it was a Mattel

8  employee, Carter Bryant, who came up with Bratz, and who brought the concept to

9  him at his office in September 2000.[15]  Mr. Larian cannot be considered an

10  alternative source of the information Mattel needs – testimony about the various

11  conflicting and  false statements Mr. Larian made about Bratz.  See Don King

12  Prod. v. Douglas, 131 F.R.D. 421, 426 (S.D.N.Y. 1990) (finding that tape-recording

13  of statements by plaintiffs was the only "obtainable" source of the statements, as

14  plaintiffs were asked questions at deposition "which would have required

15  communicating, in sum and substance, the information set forth on the tape" to

16  which the plaintiffs provided answers different from that contained in the tape).

17       **2.     The information Mattel seeks is non-cumulative.**

18       As evidenced by the contradiction between his press interviews and his

19  testimony under oath in this case, Larian has changed his story about the origin of

20  Bratz.  Evidently, Larian no longer agrees with the statement he made to Mr. Palmeri

21  in 2003, namely, that he came up with the idea for Bratz.[16]  Therefore, deposing

22  Mr. Palmeri is Mattel's only method by which Mattel can establish with admissible

23  evidence that Larian made the statements attributed to him in the Article.

24       The fact that Mattel has obtained testimony from two other reporters (Ms.

25  Tkacik and Ms. O'Neal) which clearly establishes that Larian has contradicted his

26

27  [15]  Niborski Dec., ¶ 17, Ex. 14 (Transcript of deposition of Isaac Larian at 55:23-
78:10, 96:22-102:23).

28  [16]  Id.

1   sworn testimony on other occasions is of no moment.  Regardless of whether Mattel

2   has access to evidence of occasions on which Larian made other inconsistent claims,

3   only Mr. Palmeri can prove Larian made these particular statements.  Larian told

4   _different_ stories about the origins of Bratz to Ms. Tkacik and Ms. O'Neal.[17]

5   Moreover, because of the nature of Mattel's claims – that, *inter alia*, MGA and

6   Bryant engaged in a scheme to conceal the origins of Bratz and a conspiracy to steal

7   Mattel's trade secrets[18] – proof of one instance of a false statement does nothing to

8   lessen the importance of evidence of a separate misrepresentation that furthers the

9   same conspiracy.  See Don King Prod., 131 F.R.D. at 426 (finding that tape-

10  recording of statements by plaintiff that evidenced a breach of duty of good faith and

11  fair dealing to defendant was non-cumulative of other, similar statements, made at a

12  different time, that also evidenced the same breach).  Since Mr. Palmeri's requested

13  testimony is the only admissible evidence of particular statements made by Mr.

14  Larian, it can hardly be considered cumulative.

### 3.   The information Mattel seeks is critical to Mattel's claims regarding the ownership of Bratz.

15

16

17      The limited testimony Mattel requests from Mr. Palmeri is not only directly

18  relevant to Mattel's claims, but goes to the very heart of this case – the origins of

19  Bratz.[19]  And, proving that Larian made a false statement regarding the origins of

20  Bratz is directly relevant to Mattel's claim that "Bryant and MGA deliberately and

21  intentionally concealed facts sufficient for Mattel to suspect or know that it was the

22  true owner of Bratz," by, among other things, "concealing Bryant's role in Bratz by

23  falsely claiming that Larian and others were the creators of Bratz."[20]

24  [17] Niborski Dec., ¶¶ 9-10, Ex. 8 (Tkacik deposition transcript at 8:13-10:5), Ex. 9

25  (O'Neal deposition transcript at 8:13-11:22).

    [18] See Niborski Dec., ¶ 18; Ex. 15 (Mattel's Second Amended Answer and

26  Counterclaims, ¶¶ 35-36, 90, 102).

27  [19] See Niborski Dec., ¶ 18; Ex. 15 (Mattel's Second Amended Answer and
    Counterclaims, ¶ 35).

28  [20] Id.

MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI

33

1    Moreover, MGA contends in this litigation that the statute of limitations bars

2 Mattel's claims.  Larian and MGA made public statements that Larian invented Bratz

3 – rather than Mattel employee Carter Bryant.  Mr. Palmeri's testimony therefore

4 bears directly on whether Mattel was on notice of Bryant's disloyalty prior to

5 November 2003, when it first obtained a copy of Bryant's contract with MGA

6 (which was executed while Bryant was employed by Mattel).

7    Mr. Palmeri is thus a witness with knowledge of facts that are relevant,

8 material, and are central to the determination of this litigation.

9         **4.     The information Mattel requests is not confidential.**

10   Finally, it is important that Mattel is <u>not</u> seeking to obtain any confidential

11 information from Mr. Palmeri.  Mattel's limited inquiry into non-confidential matters

12 "may be considered in the balance of competing interests as a factor that diminishes

13 the journalist's, and the public's, interest in non-disclosure."  <u>See</u> <u>Shoen</u>, 5 F. 3d at

14 1295; <u>see also</u> <u>McKevitt</u>, 339 F.3d at 533 ("When the information in the reporter's

15 possession does not come from a confidential source, it is difficult to see what

16 possible bearing the first amendment could have on the question of compelled

17 disclosure."); <u>Dillon</u>, 748 F. Supp. at 726 ("[T]he lack of a confidential source may

18 be an important element in balancing the [] need for the material sought against the

19 interest of the journalist in preventing production in a particular case.").

20   Mattel is not attempting to uncover confidential sources or obtain access to

21 Mr. Palmeri's unpublished research.  Instead, Mattel seeks to confirm -- for

22 legitimate use in court proceedings where they are highly material -- statements

23 made by Mr. Larian to Mr. Palmeri that were shared with the public in

24 BusinessWeek.  This further tips the balance in favor of a finding that Mr. Palmeri be

25 required to sit for deposition in this matter.

26   In sum, the testimony sought here involves non-confidential, published

27 statements.  The qualified federal journalist's privilege does not apply here, and,

28 even if it did, the privilege must yield in these particular circumstances.

- 14 -

34

IV.    CONCLUSION

Based on the foregoing, Mattel respectfully requests that the Court order Mr. Palmeri to appear for his deposition.


Dated:  January 21, 2008                STROOCK & STROOCK & LAVAN LLP
                                        BARRY B. LANGBERG
                                        MICHAEL J. NIBORSKI


                                        By:  _____
                                             Michael J. Niborski

                                             Attorneys for MATTEL, INC.

- 15 -

35

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is NOW Messenger Service, 1301 West Second Street, Suite 206, Los Angeles, California 90026.

On January 22, 2008, I served true copies of the following documents described as:

**MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL THE DEPOSITION OF CHRISTOPHER PALMERI**

on the parties in this action as follows:

| | |
|---|---|
| Davis Wright Tremaine LLP<br>   Alonzo Wickers IV, Esq.<br>865 South Figueroa Street, Suite 2400<br>Los Angeles, California 90017-2566<br>Telephone: 213.633.6800<br>Facsimile: 213.633.6899 | **Attorneys for Non-Party**<br>***Christopher Palmeri*** |
| Skadden, Arps, Slate, Meagher &<br>Flom LLP<br>   Thomas J. Nolan, Esq.<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90071<br>Telephone: 213.687.5000<br>Facsimile: 213.687.5600 | **Attorneys for *MGA Entertainment,<br>Inc., MGA Entertainment (HK) Ltd.,<br>Isaac Larian and MGAE de Mexico,<br>S.R.L. de C.V.*** |

[√ ]   **[PERSONAL]** by personally delivering the document listed above to the person(s) at the address(es) set forth above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made

Executed on January 22 2008, at Los Angeles, California.

David Quintana

07209/2362666.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

On January 22, 2008, I served true copies of the following documents described as:

**MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL THE DEPOSITION OF CHRISTOPHER PALMERI**

on the parties in this action as follows:

| | |
|---|---|
| Keker & Van Nest, LLP<br>  John W. Keker, Esq.<br>  Michael H. Page, Esq.<br>  Christa M. Anderson, Esq.<br>710 Sansome Street<br>San Francisco, CA 94111<br>Telephone:  415.391.5400<br>Facsimile:  415.397.7188 | **Attorneys for *Carter Bryant*** |
| Overland Borenstein Scheper & Kim, LLP<br>  Mark E. Overland, Esq.<br>  David C. Scheper, Esq.<br>  Alexander H. Cote, Esq.<br>300 South Grand Avenue, Suite 2750<br>Los Angeles, CA 90071<br>Telephone:  213.613.4655<br>Facsimile:  213.613.4656 | **Attorneys for *Carlos Gustavo Machado Gomez*** |

[√]     **[MAIL]** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made

Executed on January 22, 2008, at Los Angeles, California.

_____
Albert V. Villamil

-2-
MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL
THE DEPOSITION OF CHRISTOPHER PALMERI

37