QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303
(timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with Case No. CV 04-09059
Case No. CV 05-02727

HON. STEPHEN G. LARSON

REPLY IN SUPPORT OF MATTEL, INC.'S *EX PARTE* APPLICATION TO STRIKE PORTIONS OF THE EXPERT REPORTS OF DR. ALBERT LYTER AND MR. ROBERT KULLMAN

[Supplemental Declaration of Diane C. Hutnyan]

Hearing Date: TBD
Time: TBD
Place: TBD

**Phase 1**
Discovery Cut-off: January 28, 2008
Pre-trial Conference: May 5, 2008
Trial Date: May 27, 2008

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 1

I. MGA'S MANY EXCUSES DO NOT CURE THE SUBSTANTIAL PREJUDICE THAT WOULD RESULT FROM ALLOWING THESE UNTESTED SEQUENCING OPINIONS TO BE PRESENTED ..... 1

II. MGA SHOULD BEAR THE CONSEQUENCES OF DR. LYTER'S "DECISIONS" TO BELATEDLY DISCLOSE HIS HANDWRITING OPINION AND THE DATA FOR HIS INK TESTING CONCLUSIONS ..... 8

III. MGA'S PROCEDURAL ARGUMENTS FAIL ..... 10

CONCLUSION ..... 11

# TABLE OF AUTHORITIES

**Page**

## Cases

Hogan v. Robinson,
2007 WL. 1452790 (E.D. Cal. March 15, 2007) ........ 5

Olson v. Montana Rail Link, Inc.,
227 F.R.D. 550 (D. Mont. 2005) ........ 9, 11

Ullman v. Auto-Owners Mut. Ins. Co.,
2007 WL. 1057397 (S.D. Ohio 2007) ........ 11

Watts v. Cyprus Hill,
2008 WL. 697356 (N.D. Ill. 2008) ........ 11

Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,
259 F.3d 1101 (9th Cir. 2001) ........ 2, 4

## Statutes

Fed. R. Civ. P. 26 ........ 1, 2, 4, 6, 9

Fed. R. Civ. P. 26(a)(2)(B) ........ 4

Fed. R. Civ. P. 26(B)(2) ........ 6

Fed. R. Civ. P. 34 ........ 5

## Preliminary Statement

MGA concedes that it did not fully disclose the bases and underlying data supporting the expert reports of Dr. Lyter and Mr. Kullman. Thus, it is undisputed that Dr. Lyter's and Mr. Kullman's opinions lack the adequate disclosures that FRCP 26 mandates. MGA attempts to explain away its inadequate disclosures by claiming that Mattel should have more actively sought out this data and that the detail of the items it chose to produce compensates for those that it did not. FRCP 26 gives no credence to these excuses -- unsupported, untested expert opinions may not be put in front of a jury. MGA's deficient production greatly unlevels the playing field and, as such, the Court's only recourse is to strike the portions reports of Dr. Lyter's and Mr. Kullman's reports relating to the sequencing of the Bryant originals and the ink testing of the notary book.

## Argument

### I. MGA'S MANY EXCUSES DO NOT CURE THE SUBSTANTIAL PREJUDICE THAT WOULD RESULT FROM ALLOWING THESE UNTESTED SEQUENCING OPINIONS TO BE PRESENTED

***Deficient Sequencing Disclosures.*** MGA fully admits that its experts failed to comply with Rule 26 as to the bases, reasons, data and exhibits underlying and supporting their sequencing opinions, leaving it undisputed that four of the most significant areas of MGA's experts' sequencing analysis were never disclosed in their reports and were not otherwise timely provided to Mattel: (1) the identification of the supposed faint lines upon which these experts' opinion relies;[1] (2) the opinion that on the tracing paper drawings, the pen was traced directly from the pencil (or

[1] Dr. Lyter admitted that he was relying on the pencil lines as an "important basis" for his sequencing conclusion. Supplemental Declaration of Diane C. Hutnyan in support of Mattel's Ex Parte Application to Strike Portions of Expert Reports of Dr. Lyter and Mr. Kullman., Exh. 1 (Deposition of Dr. Albert Lyter, dated April 17, 2008 at 303:18-21.)

any basis therefor);[2] (3) the opinion that on the tracing paper drawings, the pen all came after the pencil (or any basis therefor) and (4) the enhanced demonstrative exhibits that MGA's experts plan to show the jury.

Instead, MGA offers up a number of arguments and excuses.

First, MGA argues that the experts disclosed <u>other</u> parts of the analyses in their reports. But the fact that these expert reports included *some* bases and *some* underlying data is just beside the point. <u>See</u> <u>Yeti by Molly, Ltd. v. Deckers Outdoor Corp.</u>, 259 F. 3d 1101 (9th Cir. 2001). <u>Rule</u> 26 requires *all* the bases, reasons, data and supporting exhibits to be disclosed in the report and/or in sufficient time for proper review, examination and analysis before trial. And it is not a coincidence that the main support for their supposed opinions are the ones that are missing.

Second, MGA argues that the parts of the disclosures they made were made in great detail. But much of the "detail" set forth in MGA's brief, apparently to impress the Court about how forthcoming its experts have been is not even relevant to the opinion. For example, the testimony on page 10 about the pencil on the posterboard drawings maybe being traced from something does not address Mattel's or MGA's experts' opinions that the drawings on the tracing paper drawings were traced or not traced from the posterboard drawings.[3] MGA has illustrated why it is improper for the Court to jump into the experts' purported analyses and make judgment calls about whether the disclosures in the report make up for the parts that were left out. The Court's inquiry is much simpler: to strike reports where, as has been admitted here, all the proper disclosures were not made, and the omissions were not timely cured.

---

[2] Supplemental Decl., Exh. 2 (Deposition of Robert Kullman, dated April 8, 2008 at 85:11-15) (admitting that he [also] did not disclose this opinion in his report).

[3] Further, the relative detail in Mattel's experts' reports is irrelevant. The only question is whether the disclosures meet the Rules, and Mattel's experts' reports made an extremely clear, full disclosure, including hundreds of pages of exhibits; that is why MGA never complained about them until now.

The omissions here are highly prejudicial, as Mattel's experts have not had the opportunity to properly analyze and test the supposed evidence MGA's experts are relying on. If the Court does not accept its role as gatekeeper and block this testimony, MGA's experts will be able to present unchecked opinions at trial, without the safety net that would have been created by Mattel's experts knowing, studying and fully analyzing and testing all the bases, reasons, conclusions and data for those opinions.

And there is plenty of reason to think that there is something seriously wrong with MGA's experts' sequencing analysis. Mr. Kullman, whose sequencing analysis was roughly the same as Dr. Lyter's, could not even describe the pencil lines he said he relied on,[4] and he said that he had a weak level of certainty as to the sequencing analysis.[5] He admitted he saw *no* evidence that the ink came before the pencil (part of the claimed support for the sequencing theory).[6] Kullman further admitted that he could not exclude that Mattel's experts' opinion as to the sequencing opinion was correct.[7] Where so many problems are acknowledged by MGA's own experts, and where MGA chooses to conceal the evidence that supposedly serves as the basis for that opinion from Mattel's experts[8] such that they are unable to examine and analyze the evidence properly before trial, the untested opinion should ***not*** be put in front of the jury.

---

4 Supplemental Decl., Exh. 2 at 253:5-16).

5 Supplemental Decl., Exh. 2 at 238:19-239:2 (admitting he has a weak level of certainty as to his sequencing opinion, which is basically the same as Dr. Lyter's); *see also* 189:8-192:17 (explaining ASTM terminology).

6 Supplemental Decl., Exh. 2at 86:14-87:6.

7 Supplemental Decl., Exh. 2 at 324:21-24.

8 MGA tries to sidestep the facts concerning the relative qualifications of the parties' experts as "100% irrelevant" (Opp. at 9, n.19) but it is extremely relevant. The fact that MGA's experts lack qualifications and have no Court approval helps explain the rather stunning circumstances here, where a party would prefer having no expert testimony to sharing the evidence with the opposing side's experts.

Next, as usual, MGA argues that the problem is really Mattel's fault. See Opp. at 18 (Mattel should have asked for the location of every pencil line)[9] and 19 (Mattel should have sought more access to the originals earlier). But it is not Mattel's responsibility to ask MGA for the locations of all of the pencil lines, or to disclose or share the other missing bases for its experts' opinion. It is MGA's obligation under Rule 26 to make these disclosures. The Ninth Circuit has held that the burden is on the proponent of the expert report to show that its failure to provide bases/data for its conclusions along with its expert report is substantially justified or harmless. See Yeti, 259 F. 3d at 1106-7.

Further, whether or not Mattel's experts were somehow negligent in their one brief examination that took place seven months before MGA's experts' opinions came out is not only absurd,[10] but completely irrelevant to this analysis. The burden is ***on MGA*** to disclose the opinions and the bases and data, not on Mattel to guess, anticipate, or figure out this information. And MGA has presented no authority to support the idea that a party can skip its Rule 26(a)(2)(B) disclosures and conceal the evidence supporting its opinions from the other party where the other party's experts saw the evidence once before, or should have seen it before, or should have appreciated its significance or lack of significance before.[11]

---

[9] In fact, Mattel did inquire about these pencil lines during Dr. Lyter's and Mr. Kullman's depositions and they freely admitted that they just disclosed examples of them in their reports.

[10] These obscured lines were very difficult to see. MGA's own expert admitted that he did not see them at all. See Supplemental Decl., Exh. 2 at 47:15-23; 48:8-10 ("[i]t's sort of like looking for trees and not seeing them because of the woods. In other words, they were there. I just did not observe them. . . . I didn't see them at all because that was not the focus of what I was looking at"). He further admitted that his own examination of all those documents (which was longer than either of Mattel's experts', and which was aided by several staff people at the laboratory) "could be overwhelming for one individual to look at, I would think." Id. at 40:5-6.

[11] Moreover, many of the supposed facts relied upon by MGA for this argument are simply false. While Mattel lacks sufficient space to correct all of them, one such purported "fact" is that Mattel examined "all 2000" documents and did not narrow them down at all. Opp. at 5. In fact, there were more than 17,000 Bryant documents and Mattel narrowed them down to 2,000. *See* Supplemental Decl. ¶ 1. Another purported "fact" is that (footnote continued)

The absurdity and unfairness of MGA's argument is clear when one considers the relatively more common situation where the documents the experts are relying on have been produced by the parties. No one would argue that an expert issuing an initial report should not be allowed to examine and consider and analyze the documents referenced by the rebuttal expert in his report; the expert in question would be able to pull his copy of the document, help counsel analyze that document and its significance in preparation for deposition, and prepare his own rebuttal. Mattel's experts could not do that because Bryant and MGA refused to treat the documents as produced documents under Rule 34 and to make them reasonably accessible to all the parties during the pendency of the action along with the other produced evidence. MGA refused to share the evidence specifically so that Mattel's experts and counsel could not properly prepare their response; and the only way to cure that is to disallow their experts' opinions. See Hogan v. Robinson, 2007 WL 1452790 at *10 (E.D. Cal. March 15, 2007) (striking expert report for failure to adequately disclose bases because admitting the report "would be to invite the proverbial fox into the henhouse. The experienced expert could simply "lie in wait" so as to express his genuine opinions only after plaintiff discloses hers").

Nor does Mattel's failure to get further access to the original documents support MGA's position here. *Even if Mattel had never seen the documents before,*

---

Cunningham had access to the documents from September 12 to 28. Opp. at 6. This is false. As Cunningham testified at deposition, he had the documents for 8 days (from Sept. 12-19) at which point they were sent to Mr. Flynn. On the 28th, Mr. Cunningham rendezvoused with the documents at a photo studio for a few hours to ensure their safety as professional photographs were taken of certain pages. See deposition transcript of Lloyd Cunningham, dated March 31, 2008, at 32:17-33:17, attached as Exh. 18 to the Hutnyan Decl. in support of Mattel's Motion to Strike Portions of the Expert Report of Dr. Lyter and Mr. Kullman dated May 14, 2008 ("Hutnyan Decl."). Nor has this case been about a handful of key documents; that is just MGA's wishful thinking. Forensic analysis was also needed to examine fax anomalies, added dates and other notations witnesses could not explain, alterations documents, unauthorized destructive testing by MGA, etc. and the different specialties of Mattel's four experts were needed for more thorough examination of all these issues; it was Bryant's and MGA's insistence that the documents travel together and in their original order at all times that made it less efficient than it otherwise could have been.

*and never once asked to see the documents,* that has nothing to do with MGA's experts' duty to fully and timely disclose their opinions, their "bas[e]s and reasons," their "data and other information," and their "exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(B)(2). MGA cannot present expert testimony without proper and timely disclosure -- period.

Further, as to the instant application, Judge Infante's May 13, 2008 Order supports Mattel, not MGA. Mattel had tried to even the uneven playing field caused by MGA's refusal to identify the evidence upon which its experts are relying by seeking further access to the original documents in question. But Judge Infante thought -- more than five weeks after Mattel brought its *ex parte* -- that it was too late to allow access, and denied it. Had it been granted, MGA would now be able to argue that its experts' reports should not be stricken because the Discovery Master provided access to the evidence in what he deemed an adequate amount of time for examination and analysis; thus rendering MGA's failure to comply with Rule 26 harmless. But instead, on this application, MGA is just left with two deficient expert disclosures. It is telling that MGA much preferred to risk these opinions being stricken to allowing Mattel see the evidence that supposedly supports them.

***The New "Demonstratives."*** As to the just-produced 210 "exhibits" that are supposed to support opinions in the March 17 reports: MGA's opposition argues that the 210 documents are not "radically new information,"[12] and pertain to just a small number of the original documents; yet it does not provide further explanation as to what they are, or which specific documents they refer to, perpetuating the mystery.

MGA argues that Mattel was not prejudiced by its failure to produce these items until May 5, 2008 because it could have always used the original documents to question MGA's experts. Of course, this makes no sense. The

---

[12] Opp. at 19.

questioning would have had to do with the production of the exhibits themselves, and with their "enhanced" -- that is, admittedly altered -- nature,[13] and so the original documents would not have aided such an examination. Since Mattel has had no discovery as to what they are or how they were created or enhanced or who created or enhanced them,[14] MGA cannot be allowed to put these misleading items in front of the jury.

MGA never explains why it did not provide these documents earlier. It easily could have. Mr. Kullman admitted at deposition on April 8, 2008 that he had intended to attach demonstrative exhibits he described as similar to these to his March 17 report, but changed his mind when he realized he did not have sufficient time to complete them.[15] Yet MGA's experts did not prepare and serve them shortly thereafter so they could be questioned at deposition -- or even a few weeks later. Instead, they waited until just before trial and then MGA refused all discovery.

Most importantly, if MGA really believes that the original documents would have been a suitable substitute for use in Mattel's questioning at deposition, then they can be a suitable substitute for MGA's use at trial, too. For all these reasons, MGA's use of the demonstrative exhibits must be disallowed along with the rest of MGA's untested sequencing opinions.

---

[13] Mattel is not in a position, obviously, to compare these exhibits with the original documents but it appears that these exhibits are designed to misleadingly darken and otherwise "enhance" the "faint" lines on the original drawings to aid MGA's supposed expert testimony. Supplemental Decl. ¶ 2.

[14] Notably, according to MGA's counsel, despite their Al Lyter bates numbers, they were produced at Speckin Forensic Laboratories, and Mr. Kullman had said at his deposition that Mr. Speckin was creating the earlier set of exhibits. Supplemental Decl., Exh. 2 at 72:12-15. Mr. Speckin is the same individual who took plugs from Bryant's originals without authorization from the Court or notice to Mattel and while keeping no record of the unaltered evidence. Mattel objects to his handling of the documents at all, and to any "enhanced" demonstratives he creates, especially any as mysterious as these.

[15] Supplemental Decl., Exh. 2 at 72:12-73:25.

## II. MGA SHOULD BEAR THE CONSEQUENCES OF DR. LYTER'S "DECISIONS" TO BELATEDLY DISCLOSE HIS HANDWRITING OPINION AND THE DATA FOR HIS INK TESTING CONCLUSIONS

***Handwriting Opinion.*** MGA freely admits that Dr. Lyter's handwriting analysis could have been in his March 17, 2008 initial expert report. Dr. Lyter made a "decision to wait on these opinions." (Opp. at 23).

Further, MGA does not explain why Lyter could not use the pictures of the notary book he admitted he reviewed prior to March 17, instead, pretending that examination of the original notary book is dispositive. To deal with the fact that he had possession of the book original notary book by March 7,[16] they argue that he could not handle the notary book without Mattel's permission.[17] But in fact, Dr. Lyter ***did*** handle the notary book. Dr. Lyter testified that when he received it, he opened up the package and examined it.[18] There is absolutely no legitimate reason for him not to have rendered his handwriting opinions in March.

And Lyter's half-day deposition six days before opening statements does not cure the prejudice to it from MGA's late disclosure. MGA, not Mattel, should suffer the consequences of Dr. Lyter's "decision."

***The Chromatograms and Mass Spectra.*** MGA does not give any justification for its failure to produce its chromatograms with its May 6 report, much less why it missed the special due date it had obtained from the Court for the report. MGA's rebuttal experts' document discovery was due March 21, so even if the documents did not have to be part of the report, as MGA argues, they still should have been produced pursuant to those outstanding document requests as soon as the

---

[16] See Exh. 3 to the Hutnyan Decl. (Letter from Dan Warren to Dr. Lyter dated March 6, 2008).

[17] Opp. at 23.

[18] Supplemental Decl., Exh. 1 (Deposition of Dr. Albert Lyter, dated April 17, 2008 at 91:1-12) (Q. "What did you do with the notary book?" A. "Stuck it away. I mean, I looked at it and then I stuck it away." Q. So when did you look at it? A. I looked at it when I first got it . . . .").

report was completed on May 6. Dr. Lyter was available when the report was finalized, so his subsequent travel schedule is of no import.

Instead, MGA attempts to put a happy face on its disclosure just 4 business days before Dr. Lyter's deposition, and 11 days before opening statements -- simply arguing that that is plenty of time for Mattel and its experts to examine and deal with the new evidence. Not only is this inconsistent with MGA's position *five weeks ago* in response to Mattel's request for access to the Bryant documents that expert discovery was over and done with, but MGA's production of these basic materials on May 15 have been very prejudicial already. Without the chromatograms, which show the results of the GC-MS test upon which Dr. Lyter's conclusions are based, Dr. Lyter's report is a collection of high-level conclusions with no supporting data whatsoever, and so no meaningful review or analysis can take place. Because the chromatograms were not even sent to requesting counsel directly, they were not received until Friday, May 16, and Dr. Aginsky was preparing this weekend for his appearance at trial in another case on Monday and Tuesday.[19] Accordingly, he will not be unable to thoroughly analyze and explain the results to counsel before Dr. Lyter's abbreviated deposition, and this is precisely what Rule 26's disclosure requirements were designed to protect parties from. *See* Olson v. Montana Rail Link, Inc., 227 F.R.D. 550, 552-553 n.1 (D. Mont. 2005) (failure to disclose underlying data of expert report until a few days before deposition warranted sanction of excluding expert from in any way relying upon related data or conclusions) (emphasis added). MGA should not be permitted to benefit from its failure -- again -- to make timely disclosures. It, not Mattel, should bear the consequences.[20]

---

[19] Supplemental Decl. ¶ 3.

[20] Dr. Aginsky's chromatograms were timely provided pursuant to the parties' agreed-upon expert discovery schedule, on March 4, more than three weeks before his March 24 (footnote continued)

***The Twentieth Set.*** MGA's reassurances -- that Dr. Lyter's unauthorized microplugging of an entirely new area of the notary book did not affect his May 6 report -- do not sit well, when MGA continues to deny even that he took a twentieth set. Exhibit 5 of the Supplemental Hutnyan Declaration are digital photographs taken before and after Dr. Lyter took his microplugs, and they show that twenty sets were in fact taken.[21]

MGA provides no authority for the novel proposition that it can avoid proper expert disclosures to Mattel because MGA has reassured Mattel that there is nothing interesting there. MGA has admitted that these plugs factored into the testing that was done. Yet MGA's refusal to share the reasons for its test results and the data supporting them -- either by providing the notary book (for just one hour) so that both parties would have done the *same* testing (as MGA had said it wanted all along); or by timely providing the related chromatograms (the ones that arrived on Friday do not state which show the results of the testing done on those particular plugs) -- make it impossible to fully examine and analyze Dr. Lyter's ink testing results at this late date. It was MGA's choice to go beyond what it told the Court and take a new set of plugs, and its refusal to share information about that decision, and the impact of that decision on his May 6 report, is something that MGA, not Mattel, should have to deal with.

## III. <u>MGA'S PROCEDURAL ARGUMENTS FAIL</u>

As shown by the complete absence of precedent cited to support its proposition, no court order or existing case law requires a party to move to strike an

---

deposition and more than three months before trial. So MGA's belated and plainly defense-inspired "complaint" is not well taken.

[21] Supplemental Decl., Exh. 3. Dr. Aginksy sampled 19 areas. Dr. Lyter sampled 20. The attached photogrpahs are before and after pictures of the notary book which clearly show the unauthorized samples taken by Dr. Lyter. Supplemental Decl. ¶ 4, and Exh. 3. MGA's statement that only 19 sets were taken probably refers to how Dr. Lyter grouped the plugs from the different sets he took into the vials. He likely consolidated plugs from two sets into one vial, enabling MGA to argue that there were only 19 "sets" tested. Supplemental Decl. ¶ 5.

expert solely by filing a motion in limine. In fact, in nearly ever case cited by Mattel in its opening brief, the moving party filed a regular motion, and not a motion in limine, to strike the expert in question. See, e.g., Watts v. Cyprus Hill, 2008 WL 697356 (N.D. Ill. 2008) (motion to strike Dr. Lyter's report, not motion in limine); see also Ullman v. Auto-Owners Mut. Ins. Co., 2007 WL 1057397, at *5 (S.D. Ohio 2007) (motion to strike and limit testimony, not motion in limine); Olson v. Montana Rail Link, Inc., 227 F.R.D. 550, 552-553 n.1 (D. Mont. 2005).

Mattel has consistently pursued the truth in this action, first dealing with MGA's failure to meet its disclosure requirements by seeking the information in any way possible. Only now, as MGA's last-minute surprises have become more frequent, as MGA has continued to refuse basic discovery to deal with them, and as we rapidly approach trial, has Mattel moved to strike these improper opinions.

Contrary to MGA's speculation, Mattel does not seek to strike Dr. Lyter and Mr. Kullman from the trial. They are welcome to testify about the opinions in the remaining portions of their reports because they provided adequate disclosures. But they cannot be permitted to testify as to things that only they have seen, or had the chance to fully examine and analyze.

**Conclusion**

For all the foregoing reasons, Mattel respectfully requests that the Court exclude Dr. Lyter's May 6 report and the portions of Dr. Lyter's March 17 and Mr. Kullman's April 4, 2008 reports pertaining to the Prince notary book and the sequencing of the Bryant originals.

DATED: May 19, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By Diane Hutnyan (cs)
Diane C. Hutnyan
Attorneys for Mattel, Inc.