1  form of a pronoun also includes within its meaning the feminine form of the pronoun so
2  used, and vice versa; the use of any tense of any verb includes also within its meaning
3  all other tenses of the verb so used, whenever such construction results in a broader
4  request for information; and "and" includes "or" and vice versa, whenever such
5  construction results in a broader disclosure of documents or information.

6

7  **Instructions**

8

9       A.    When   an   interrogatory   requests   disclosure   of   a
10 COMMUNICATION or other information as to which YOU claim any privilege or
11 protection as a ground for nondisclosure, identify each PERSON who participated in or
12 had knowledge of the COMMUNICATION or other information and provide the
13 following:

14            (i)    the privilege or protection that YOU claim precludes disclosure;
15            (ii)   the subject matter of the COMMUNICATION or information
16                   (without revealing the content as to which the privilege is claimed);
17                   and
18            (iii)  any additional facts or grounds on which YOU base YOUR claim
19                   of privilege or protection.
20       B.    When an interrogatory requests that YOU provide information,
21 YOU are required to supply all information known by or available to YOU or
22 YOUR employees, officers, directors, agents, representatives, attorneys and experts.
23 If YOU cannot completely answer the interrogatory after making diligent efforts to
24 do so, please so state.  Then describe in detail all efforts made to answer the
25 interrogatory; identify every PERSON involved in such efforts; and state the
26 additional information YOU need, if any, to respond completely to the interrogatory.

27

28

EXHIBIT ___4___

PAGE ___66___

-8-

MATTEL'S FIFTH SET OF INTERROGATORIES

## **Interrogatories**

INTERROGATORY NO. 46:

Without disclosing the content of communications which are protected by the attorney-client privilege, state fully and in detail all facts which REFER OR RELATE TO any dispute relating to THIS ACTION between, on the one hand, MGA, LARIAN, BRYANT and/or MACHADO and, on the other hand, O'MELVENY and/or CHRISTENSEN, including but not limited to any and all disputes which were or have been asserted as a basis for, or which underlie, contributed to or were a factor in, the withdrawal, termination and/or substitution of O'MELVENY and/or CHRISTENSEN as counsel of record in this ACTION, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

INTERROGATORY NO. 47:

IDENTIFY each and every SOURCE OF INFORMATION from which YOU have COLLECTED DOCUMENTS in THIS ACTION that REFER OR RELATE TO BRATZ and that also REFER OR RELATE TO the time period prior to February 28, 2001 (regardless of when such DOCUMENT was, in whole or part, created, drafted, generated, sent, received or transmitted).

DATED:  October 19, 2007          QUINN EMANUEL URQUHART OLIVER &
                                  HEDGES, LLP

                                  By _____
                                      B. Dylan Proctor
                                      Attorneys for Plaintiff
                                      Mattel, Inc.

EXHIBIT 4
62

-9-

MATTEL'S FIFTH SET OF INTERROGATORIES

1

## PROOF OF SERVICE

2       I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service,

3   1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4       On October 19, 2007, I served true copies of the following document(s) described as

5   **1.     MATTEL, INC.'S FIFTH SET OF INTERROGATORIES**

6       on the parties in this action as follows:

7   Thomas Nolan, Esq.                          Mark E. Overland, Esq.
    **SKADDEN ARPS SLATE MEAGHER**              David C. Scheper, Esq.

8   **& FLOM, LLP**                             Alexander H. Cote
    300 South Grand Avenue, Suite 3400          **OVERLAND BORENSTEIN**

9   Los Angeles, CA 90071                       **SCHEPER & KIM LLP**
                                                300 South Grand Avenue, Suite 2750

10                                              Los Angeles, CA 90071-3144

11

12

13  **BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s) being served.

14

15      I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

16      Executed on October 19, 2007, at Los Angeles, California.

17

18   _____

19   NOW LEGAL -- Dave Quintana

20

21

22

23

24

25

26

27

28                                              EXHIBIT 4
                                                PAGE 63

07209/2261472.1                          -1-

1    **PROOF OF SERVICE**

2        I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa

3    Street, 10th Floor, Los Angeles, California 90017-2543.

4    On October 19, 2007, I served true copies of the following document(s) described as **MATTEL, INC.'S FIFTH SET OF INTERROGATORIES** on the parties in this action as follows:

5

6        Michael H. Page, Esq.
    **KEKER & VAN NEST, LLP**
    710 Sansome Street

7        San Francisco, CA 94111

8

9

10   **BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

11

12       I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

13       Executed on October 19, 2007, at Los Angeles, California.

14

15       Charlene Ho

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 4

PAGE 64

07209/2261482.1

Exhibit 5

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
   johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
   (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
   (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
   (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Plaintiff Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO: CV 04-09049 SGL (RNBx)<br><br>Consolidated with Case Nos. CV 04-9059 and CV 05-2727<br><br>MATTEL, INC.'S THIRD SET OF INTERROGATORIES<br><br>Discovery Cutoff: October 22, 2007<br>Final Pretrial Conf.: January 14, 2008<br>Trial Date: February 12, 2008<br><br>Discovery Cutoff: March 3, 2008<br>Final Pretrial Conf.: June 2, 2008<br>Trial Date: July 1, 2008 |

PROPOUNDING PARTY:      Mattel, Inc.

RESPONDING PARTIES:      MGA Entertainment, Inc., Isaac Larian, Carter

                    Bryant and MGA Entertainment HK Limited

SET NO.:                    THREE

EXHIBIT _5_
PAGE _65_

209/2120252.5

1    Pursuant to <u>Federal Rule of Civil Procedure</u> 33, plaintiff Mattel, Inc.

2   ("Mattel") hereby requests that MGA Entertainment, Inc., Isaac Larian, Carter

3   Bryant and MGA Entertainment HK Limited (collectively, "the Responding

4   Parties") individually answer the following Interrogatories separately and fully, in

5   writing and under oath, within 30 days after service hereof.  The Responding Parties

6   shall be obligated to supplement their responses to the Interrogatories at such times

7   and to the extent required by the <u>Federal Rules of Civil Procedure</u>.

8

9                                            **Definitions**

10        1.      "YOU" and "YOUR" mean each of the Responding Parties.

11        2.      "BRYANT" means Carter Bryant individually.

12        3.      "LARIAN" means Isaac Larian individually.

13        4.      "MGA" means MGA Entertainment, Inc., any of its current or

14   former employees, officers, directors, agents, representatives, attorneys, experts,

15   divisions, AFFILIATES, predecessors-in-interest and successors-in-interest, and any

16   other PERSON acting on its behalf, pursuant to its authority or subject to its control.

17   Without limiting the foregoing, "MGA" includes the entities known as ABC

18   International Traders or ABC International Traders, Inc.  For purposes of the these

19   Interrogatories, "MGA" does not include BRYANT.

20        5.      "MATTEL" means Mattel, Inc., its current employees, officers,

21   directors, agents, representatives, attorneys, parents, subsidiaries, divisions,

22   AFFILIATES, predecessors-in-interest and successors-in-interest, and any other

23   PERSON acting on its behalf, pursuant to its authority or subject to its control.

24        6.      "AFFILIATES" means any and all corporations, proprietorships,

25   d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or

26   indirectly, in whole or in part, own or control, are under common ownership or

27   control with, or are owned or controlled by a PERSON, party or entity, including

28

-1-

1  without limitation each parent, subsidiary and joint venture of such PERSON, party
2  or entity.

3      7.   "PERSON" or "PERSONS" means all natural persons,
4  partnerships, corporations, joint ventures and any kind of business, legal or public
5  entity or organization, as well as its, his or her agents, representatives, employees,
6  officers and directors and any one else acting on its, his or her behalf, pursuant to
7  its, his or her authority or subject to its, his or her control.

8      8.   "DESIGN" or "DESIGNS" means any and all representations,
9  whether two-dimensional or three-dimensional, and whether in tangible, digital,
10  electronic or other form, including but not limited to all works, designs, artwork,
11  sketches, drawings, illustrations, representations, depictions, blueprints, schematics,
12  diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to
13  practice, developments, inventions and/or improvements, as well as all other items,
14  things and DOCUMENTS in which any of the foregoing are or have been
15  expressed, embodied, contained, fixed or reflected in any manner, whether in whole
16  or in part.

17      9.   "BRATZ" means any project, product, doll or DESIGN ever
18  known by that name (whether in whole or in part and regardless of what such
19  project, product or doll is or has been also, previously or subsequently called) and
20  any product, doll or DESIGN or any portion thereof that is now or has ever been
21  known as, or sold or marketed under, the name or term "Bratz" (whether in whole or
22  in part and regardless of what such product, doll or DESIGN or portion thereof is or
23  has been also, previously or subsequently called) or that is now or has ever been
24  sold or marketed as part of the "Bratz" line, and each version or iteration of such
25  product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or
26  DESIGN or any portion thereof" also includes without limitation any names,
27  fashions, accessories, artwork, packaging or any other works, materials, matters or
28  items included or associated therewith.  Without limiting the generality of the

1  foregoing, and contrary to MGA's recent assertions in connection with other Mattel

2  discovery requests, the term "BRATZ" does not and shall not require that there be a

3  doll existing at the time of the event, incident or occurrence that is the subject of, or

4  otherwise relevant or responsive to, the Interrogatories.

5         10.    "BRATZ INVENTION" means any representation, idea,

6  concept, work, process, procedure, plan, improvement, design or other development,

7  whether fixed in tangible form or not, that REFERS OR RELATES TO BRATZ,

8  including but not limited to any DESIGN that REFERS OR RELATES TO BRATZ.

9         11.    "SOLD," "SELL" or "SALE" means to distribute, market,

10  license, sell, offer to sell, or convey or transfer in any way for compensation.

11         12.    "BRATZ DOLL" means any doll that is or has ever been SOLD

12  that REFERS OR RELATES TO BRATZ.

13         13.    "BRATZ MOVIE" means any motion picture or film that is or

14  has ever been SOLD that REFERS OR RELATES TO BRATZ.

15         14.    "BRATZ TELEVISION SHOW" means any production

16  exhibited on television that is or has ever been SOLD that REFERS OR RELATES

17  TO BRATZ.

18         15.    "BRATZ PRODUCT" means any product, whether two-

19  dimensional or three-dimensional, and whether in tangible, digital, electronic or

20  other form, that is or has ever been SOLD that, in whole or in part, REFERS OR

21  RELATES TO BRATZ, including but not limited to any BRATZ DOLL, BRATZ

22  MOVIE, or BRATZ TELEVISION SHOW, and including but not limited to any

23  product that is or has ever been SOLD in any packaging that includes the name

24  "Bratz" or REFERS OR RELATES TO BRATZ.

25         16.    "ANGEL" refers to those projects, products, dolls or DESIGNS,

26  sometimes called "Angel Faces" and/or "Prayer Angels," that MGA has claimed are

27  the subject of MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-

28  20, MGA000724-28 and MGA000734. Without limiting the generality of the

-3-

EXHIBIT 5

MATTEL'S THIRD SET OF INTERROGATORIES

PAGE  68

1  foregoing, and contrary to MGA's recent assertions in connection with other Mattel
2  discovery requests, the term "ANGEL" does not require that there be a doll existing
3  at the time of the event, incident or occurrence that is the subject of, or otherwise
4  relevant or responsive to, the Interrogatories.

5          17.    "ACQUIRE" means to acquire, obtain, have vested in, enter into
6  agreement for, buy, purchase, and/or procure in any way, or purport to do any of the
7  same.

8          18.    "TRANSFER" means to sell, license, give away, vest in or
9  transfer in any way, or purport to do any of the same.

10         19.    "DOCUMENT" or "DOCUMENTS" means all "writings" and
11  "recordings" as those terms are defined in <u>Rule</u> 34 of the <u>Federal Rules of Civil</u>
12  <u>Procedure</u> and <u>Rule</u> 1001 of the <u>Federal Rules of Evidence</u>, including, but not
13  limited to, all writings and records of every type and description including, but not
14  limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles,
15  electronic mail ("e-mail"), records of telephone conversations, handwritten and
16  typewritten notes of any kind, statements, reports, minutes, recordings, transcripts
17  and summaries of meetings, voice recordings, pictures, photographs, drawings,
18  computer cards, tapes, discs, printouts and records of all types, studies, instruction
19  manuals, policy manuals and statements, books, pamphlets, invoices, canceled
20  checks and every other device or medium by which or through which information of
21  any type is transmitted, recorded or preserved.  Without any limitation on the
22  foregoing, the term "DOCUMENT" shall include all copies that differ in any respect
23  from the original or other versions of the DOCUMENT, including, but not limited
24  to, all drafts and all copies of such drafts or originals containing initials, comments,
25  notations, insertions, corrections, marginal notes, amendments or any other variation
26  of any kind.

27         20.    "REFER OR RELATE TO" a given subject matter means relate
28  to, refer to, constitute, contain, embody, depict, incorporate, reflect, evidence,

07209/2120252.5

-4-

MATTEL'S [THIRD] SET OF INTERROGATORIES

EXHIBIT 5
PAGE 69

1  identify, state, deal with, comment on, respond to, describe, analyze, support, refute,
2  contradict, or in any way pertain to that subject matter, either directly or indirectly.

3     21. "CREATED" means created, produced, prepared, authored,
4  improved, developed, altered, conceived of or reduced to practice, whether in whole
5  or in part, and whether alone or jointly with others.

6     22. "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV
7  04-9059 SGL (RNBx), filed by Mattel on April 27, 2004, and the cases consolidated
8  therewith.

9     23. "INVENTIONS AGREEMENT" means the Confidential
10  Information and Inventions Agreement signed by BRYANT on or about January 4,
11  1999 and produced in this action by MATTEL as M0001596, or any other version
12  of such January 4, 1999 agreement.

13     24. "COMPLAINT" means Mattel, Inc.'s Complaint in Case No. CV
14  04-9059 SGL (RNBx), filed on April 27, 2004.

15     25. "COUNTERCLAIMS" means Mattel, Inc.'s Amended Answer in
16  Case No. 05-2727 and Counterclaims, filed on January 12, 2007.

17     26. "DIGITAL INFORMATION" means any information created or
18  stored digitally, including but not limited to electronically, magnetically or optically.

19     27. "STORAGE DEVICE" means any computer hard drive,
20  memory, USB device, tape, storage array or any other device or medium that allows
21  a user, whether permanently, temporarily or otherwise, to create, generate, transmit,
22  copy, retain, store or maintain DIGITAL INFORMATION.

23     28. "IDENTIFY" or "IDENTITY" means the following:

24      (a) with reference to an individual or individuals, means to
25  state, fully and separately as to each, such individual's full name, any known
26  business title, current or last known business affiliation, current or last known
27  residential address, current or last known business address, current or last known
28  relationship to MGA, and current or last known telephone number.

-5-

EXHIBIT 5
PAGE 70

1         (b)    with reference to an entity or entities, means to state, fully
2 and separately as to each, such entity's full name, state (or country) of incorporation
3 or organization, present or last known address, and present or last known telephone
4 number.

5         (c)    with reference to a BRATZ INVENTION or BRATZ
6 INVENTIONS, means to state, fully and separately as to each, the Bates-number of
7 any DOCUMENT which REFERS OR RELATES TO the BRATZ INVENTION or,
8 if no such DOCUMENT has been produced, a full and complete description of the
9 BRATZ INVENTION and of all DOCUMENTS that REFER OR RELATE to the
10 BRATZ INVENTION; the IDENTITY of the individual author(s) or creator(s) of
11 the BRATZ INVENTION as well as of each other individual who contributed in any
12 manner to the BRATZ INVENTION; the form, material and medium of the BRATZ
13 INVENTION, if any (*e.g.*, preliminary three-dimensional resin sculpture, final
14 three-dimensional wax sculpture, digitized file of final three-dimensional wax
15 sculpture, two-dimensional design drawing on paper); the title or name of the
16 BRATZ INVENTION, if any; the version, modification, revision or iteration
17 number of the BRATZ INVENTION, if any; the current location of the original of
18 the BRATZ INVENTION; the first day and last day on which the BRATZ
19 INVENTION was CREATED; and whether the entire invention was CREATED
20 during the period of time listed in the Interrogatory and, if not, which aspects or
21 portions of the BRATZ INVENTION were CREATED during that period of time,
22 which were CREATED earlier, and which were CREATED later.

23         (d)    with reference to a STORAGE DEVICE, means to state,
24 fully and separately as to each, the individual(s) that use or have used the
25 STORAGE DEVICE; the current location of the STORAGE DEVICE if it presently
26 exists (including the IDENTITY of the PERSON who possesses the STORAGE
27 DEVICE) or, if it no longer exists, the date on which it was destroyed or disposed
28 of; the type of STORAGE DEVICE (*e.g.*, hard drive, USB drive, etc.); whether the

1 STORAGE DEVICE has ever been copied or imaged and, if so, the current location
2 of each copy or image of the STORAGE DEVICE that has been made (including the
3 IDENTITY of the PERSONS who possess such copies or images) and the date(s) on
4 which such copies or images were made; the manufacturer name, brand, model
5 name, model number and serial number of the STORAGE DEVICE; and the
6 technical specifications and capacities of such STORAGE DEVICE.

7         (e)    with reference to a bank or financial institution account or
8 accounts, means to state, fully and separately as to each account, the name of the
9 bank or financial institution, the location and/or branch of the bank or financial
10 institution, the account number, the name in which the account is or was held, and
11 the time period during which the account is or was open.

12         (f)    with reference to a BRATZ PRODUCT, means to state,
13 fully and separately as to each, the full name of the product; the number of the
14 product; the SKU of the product; any other applicable designation of the product
15 useful for identification; the period of time during which the product was, has been
16 or will be SOLD; and the IDENTITY of each PERSON who has licensed from
17 YOU the right to SELL such BRATZ PRODUCT.

18         (g)    with reference to any other DOCUMENT or
19 DOCUMENTS, means to describe each DOCUMENT by Bates number.  In the
20 event that a DOCUMENT does not have a Bates number, IDENTIFY means, with
21 respect to each such DOCUMENT, to provide a complete description of it such that
22 it may be the subject of a request for the production of documents, including by
23 stating the date, identity of the author, addressee(s), signatories, parties, or other
24 PERSONS identified therein, its present location or custodian and a description of
25 its contents.

26       29.    "Any" as used in these interrogatories includes the word "all,"
27 and the word "all" as used in these interrogatories includes the word "any."

28

-7-

EXHIBIT 5

1        30.   The singular form of a noun or pronoun includes within its

2  meaning the plural form of the noun or pronoun so used, and vice versa; the use of

3  the masculine form of a pronoun also includes within its meaning the feminine form

4  of the pronoun so used, and vice versa; the use of any tense of any verb includes

5  also within its meaning all other tenses of the verb so used, whenever such

6  construction results in a broader request for information; and "and" includes "or"

7  and vice versa, whenever such construction results in a broader disclosure of

8  documents or information.

9

10                      **Instructions**

11        A.   When an interrogatory requests that YOU provide information,

12  YOU are required to supply all information known by or available to YOU or

13  YOUR employees, officers, directors, agents, representatives, attorneys and experts.

14  If YOU cannot completely answer the interrogatory after making diligent efforts to

15  do so, please so state. Then describe in detail all efforts made to answer the

16  interrogatory; identify every PERSON involved in such efforts; and state the

17  additional information YOU need, if any, to respond completely to the interrogatory.

18

19                     **Interrogatories**

20

21  INTERROGATORY NO. 12:

22        IDENTIFY each and every BRATZ INVENTION YOU contend was

23  CREATED, in whole or in part, prior to January 4, 1999, and for each BRATZ

24  INVENTION so identified state all facts that support YOUR contention that such

25  BRATZ INVENTION (or aspects or portions thereof) was CREATED prior to

26  January 4, 1999, and IDENTIFY all PERSONS with knowledge of such facts and

27  all DOCUMENTS which REFER OR RELATE TO such facts.

28

EXHIBIT 5

PAGE 73

MATTEL'S THIRD SET OF INTERROGATORIES

07209/2120252.5

**INTERROGATORY NO. 13:**

IDENTIFY each and every BRATZ INVENTION YOU contend was CREATED, in whole or in part, after October 19, 2000 and before June 1, 2001, and for each BRATZ INVENTION so identified state all FACTS that support YOUR contention that such BRATZ INVENTION (or aspects or portions thereof) was CREATED after October 19, 2000 and before June 1, 2001, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

**INTERROGATORY NO. 14:**

IDENTIFY each and every BRATZ INVENTION that was CREATED, in whole or in part, after January 3, 1999 and before October 21, 2000, and for each BRATZ INVENTION so identified state all FACTS that REFER OR RELATE TO the timing of the creation of such BRATZ INVENTION and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS which REFER OR RELATE TO such facts.

**INTERROGATORY NO. 15:**

State all facts that support YOUR contention, if YOU so contend, that, assuming BRYANT assigned rights in any BRATZ INVENTION to MATTEL pursuant to the INVENTIONS AGREEMENT, MGA is entitled to priority over and/or has superior rights to MATTEL as to such BRATZ INVENTION, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**INTERROGATORY NO. 16:**

State all facts that support YOUR contention, if YOU so contend, that the INVENTIONS AGREEMENT is not valid and enforceable, and IDENTIFY all

-9-

1 | PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
2 | RELATE TO such facts.

3

4 | INTERROGATORY NO. 17:

5 |          State all facts that support YOUR contention, if YOU so contend, that
6 | one or more of MATTEL's claims against YOU in THIS ACTION is barred, in
7 | whole or in part, by a statute of limitations and/or laches, and IDENTIFY all
8 | PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
9 | RELATE TO such facts.

10

11 | INTERROGATORY NO. 18:

12 |          State all facts that support YOUR contention, if YOU so contend, that
13 | one or more of MATTEL's claims against YOU in THIS ACTION is barred by the
14 | doctrines of unclean hands, estoppel, waiver, or consent, and IDENTIFY all
15 | PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
16 | RELATE TO such facts.

17

18 | INTERROGATORY NO. 19:

19 |          State all facts that support YOUR contention, if YOU so contend, that
20 | MATTEL is not or would not be entitled to injunctive relief as requested in its
21 | COMPLAINT and/or COUNTERCLAIMS if it is ultimately determined that
22 | MATTEL owns one or more BRATZ INVENTIONS, and IDENTIFY all
23 | PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR
24 | RELATE TO such facts.

25

26 | INTERROGATORY NO. 20:

27 |          State all facts that support YOUR contention, if YOU so contend, that
28 | MATTEL is not entitled to an award of punitive or exemplary damages against

-10-

EXHIBIT _5_

PAGE _75_

1 | YOU, and IDENTIFY all PERSONS with knowledge of such facts and all
2 | DOCUMENTS that REFER OR RELATE TO such facts.

3

4 | INTERROGATORY NO. 21:

5 | State all facts that support YOUR contention, if YOU so contend, that
6 | YOU did not intentionally interfere with the INVENTIONS AGREEMENT or any
7 | other agreement or contract between MATTEL and BRYANT, or aid or abet any
8 | breach of fiduciary duty or duty of loyalty owed by BRYANT to MATTEL, when
9 | BRYANT purported to TRANSFER and MGA purported to ACQUIRE rights to
10 | BRATZ or when BRYANT performed work or services with or for MGA while
11 | BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with
12 | knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such
13 | facts.

14

15 | INTERROGATORY NO. 22:

16 | State all facts that support YOUR contention, if YOU so contend, that
17 | YOU acted with an innocent state of mind or reasonably believed that MATTEL did
18 | not own any rights in any BRATZ INVENTION when BRYANT purported to
19 | TRANSFER and MGA purported to ACQUIRE rights to BRATZ or when
20 | BRYANT performed work or services with or for MGA while BRYANT was
21 | employed by MATTEL, and IDENTIFY all PERSONS with knowledge of such
22 | facts and all DOCUMENTS that REFER OR RELATE TO such facts.

23

24 | INTERROGATORY NO. 23:

25 | State all facts that support YOUR contention, if YOU so contend, that
26 | BRYANT did not breach the INVENTIONS AGREEMENT or BRYANT's duty of
27 | loyalty or fiduciary duties to MATTEL when BRYANT purported to TRANSFER
28 | rights to BRATZ to MGA or performed work or services with or for MGA while

-11-

EXHIBIT ___5___

PAGE ___76___

1  BRYANT was employed by MATTEL, and IDENTIFY all PERSONS with
2  knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such
3  facts.

4

5  INTERROGATORY NO. 24:

6        IDENTIFY each and every bank or financial institution account that
7  REFERS OR RELATES TO LARIAN, including accounts in LARIAN's name or
8  for LARIAN's benefit, since January 1, 1999.

9

10  INTERROGATORY NO. 25:

11        IDENTIFY each and every STORAGE DEVICE that YOU have used
12  for any purpose which contains or contained DIGITAL INFORMATION that
13  REFERS OR RELATES TO BRATZ and/or ANGEL prior to January 1, 2002.

14

15  INTERROGATORY NO. 26:

16        IDENTIFY all PERSONS who at any time have been employed by or
17  under contract with MATTEL who are now or have been employed by or under
18  contract with YOU since January 1, 1999, and, for each such PERSON, state his or
19  her name, date of hire or effective date of contract, the date on which YOU first had
20  contact with such PERSON regarding potential employment or contracting, the
21  date(s) on which such PERSON was interviewed for possible employment or
22  contracting, each title (if any) such PERSON has held while employed by or under
23  contract with YOU, and the date of termination (if applicable).

24

25  INTERROGATORY NO. 27:

26        For each concept, design, product, product packaging or other matter
27  that YOU contend MATTEL copied or infringed, including but not limited to those
28  identified in MGA's Responses To Mattel, Inc.'s First Set Of Interrogatories Re

MATTEL'S THIRD SET OF INTERROGATORIES

EXHIBIT ____

PAGE ___77___

1 | Claims Of Unfair Competition, Response To Interrogatory No. 2 (and any
2 | Supplemental Responses to such Interrogatory), state (a) the date that each such
3 | concept, design, product, product packaging or other matter was conceived, and (b)
4 | the date that each such concept, design, product, product packaging or other matter
5 | was first fixed in any tangible medium of expression (if ever), and IDENTIFY all
6 | PERSONS with knowledge of, and all DOCUMENTS that REFER OR RELATE
7 | TO, the foregoing.
8 |
9 | INTERROGATORY NO. 28:
10 | For each concept, design, product, product packaging or other matter
11 | that YOU contend MATTEL copied or infringed, including but not limited to those
12 | identified in MGA's Responses to Mattel, Inc.'s First Set of Interrogatories Re
13 | Claims of Unfair Competition, Response to Interrogatory No. 2 (and any
14 | Supplemental Responses to such Interrogatory), describe, fully and separately, each
15 | and every concept, design, product, product packaging or other matter of or by
16 | MATTEL that YOU contend is a copy of or infringes YOUR alleged concept(s),
17 | design(s), product(s), product packaging or other matter.  Your answer should
18 | describe the Mattel concept, design, product, product packaging or other matter with
19 | specificity and in detail (including without limitation by product name, product
20 | number, SKU, or bar code number), and specify those elements or attributes of
21 | YOUR claimed concept, design, product, product packaging or other matter that
22 | YOU contend were copied or infringed by MATTEL.
23 |
24 | INTERROGATORY NO. 29:
25 | For each trade dress for which YOU claim protectable trade dress rights
26 | in this ACTION, describe, fully and separately, each and every element that makes
27 | up the claimed trade dress.
28 |

07209/2120252.5

MATTEL'S THIRD SET OF INTERROGATORIES

EXHIBIT 5

PAGE 78

1 | INTERROGATORY NO. 30:

2           IDENTIFY each BRATZ PRODUCT that has been SOLD by YOU or

3 | YOUR licensees and, as to each such BRATZ PRODUCT, state fully and separately

4 | (a) the number of units of each such BRATZ PRODUCT SOLD by YOU or YOUR

5 | licensees, (b) the revenue received by YOU from such SALES of each such BRATZ

6 | PRODUCT, (c) all costs YOU have incurred in connection with each such BRATZ

7 | PRODUCT, including but not limited to YOUR cost of goods sold, and (d) YOUR

8 | gross and net profits from each such BRATZ PRODUCT.

9

10 | DATED: June 7, 2007                QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

11

12                                 By

13                                 B. Dylan Proctor
                                Attorneys for Plaintiff

14                                 Mattel, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27                                           EXHIBIT 5

28                                           PAGE 79

-14-

**PROOF OF SERVICE**

1

2     I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service,
3     1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4     On June 7, 2007, I served true copies of the following document(s) described as **MATTEL, INC.'S THIRD SET OF INTERROGATORIES** on the parties in this action as
5     follows:

6     Diana M. Torres, Esq.                John W. Keker, Esq.
      **O'MELVENY & MYERS, LLP**            Michael H. Page, Esq.
7     400 S. Hope Street                   Christa M. Anderson, Esq.
      Los Angeles, CA 90071                **KEKER & VAN NEST, LLP**
8                                          710 Sansome Street
                                           San Francisco, CA 94111
9

10    **BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

11    I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

12

13    Executed on June 7, 2007, at Los Angeles, California.

14

15    _____
      NOW LEGAL -- Dave Quintana

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2137828.1

EXHIBIT ___5___
PAGE ___80___

Exhibit 6

CONFIDENTIAL

1

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA


MATTEL, INC., a Delaware corporation, )   CASE NO.
                                       )   CV 04-9059 DDP (AJWx)
              Plaintiff,               )
                                       )
       vs.                             )
                                       )
CARTER BRYANT, an individual, and      )
DOES 1 through 10, inclusive,          )
                                       )
              Defendants.              )
_____
CARTER BRYANT, on behalf of himself,   )
all present and former employees of    )
Mattel, Inc., and the general public,  )
                                       )
              Cross-Complainant,       )
                                       )
       vs.                             )
                                       )
MATTEL, INC., a Delaware corporation,  )
                                       )
              Cross-Defendant.         )


VOLUME I
THE VIDEOTAPED DEPOSITION OF CARTER BRYANT,
produced, sworn, and examined on Thursday, November 4, 2004,
at 9:10 a.m. of that day, pursuant to Notice to Take
Deposition at the University Plaza, Executive Boardroom,
333 South John Q. Hammons Parkway, in the City of Springfield,
County of Greene, State of Missouri, before Sherrie L. Hunt,
Certified Court Reporter, and Notary Public, in a certain
cause now pending in the United States District Court for the
Central District of California, wherein the parties are as
above set forth; taken on behalf of the Plaintiff and
Cross-Defendant.


COURT REPORTERS OF THE MIDWEST, INC.
P.O. Box 4282
Springfield, MO 65808 (417) 889-2079



EXHIBIT 6
PAGE 87

CONFIDENTIAL

2

A P P E A R A N C E S

For Plaintiff and                   MR. JOHN B. QUINN
Cross-Defendant:                    MR. MICHAEL T. ZELLER
                                    MS. TANIA KREBS
                                    Quinn, Emanuel, Urquhart,
                                      Oliver & Hedges
                                    865 South Figueroa Street
                                    10th Floor
                                    Los Angeles, California 90017

For Defendants and                  MR. DOUGLAS A. WICKHAM
Cross-Complainant:                  Littler Mendelson
                                    2049 Century Park East
                                    5th Floor
                                    Los Angeles, California 90067

Also Present:                       Ms. Dale M. Cendali
                                    Mr. Michael Moore

Videotaped by:                      Mr. Donald Gifford
                                    Mr. Donald Gifford, II
                                    1528 East Glenwood
                                    Springfield, Missouri 65804


I N D E X

WITNESS:  CARTER BRYANT                              Page
Direct Examination by Mr. Quinn ..................    4
Notarial Certificate and Costs ...................   262

* * *


E X H I B I T S

DEPOSITION EXHIBIT          DESCRIPTION              IDENTIFIED

                              (NONE)


Phonetic spelling:  (Ph.)                    EXHIBIT __6__
Exactly as stated:  (Sic)                    PAGE __82__

| | | | |
|---|---|---|---|
| 1 | Q | Did they send you some samples? | 12:42 |
| 2 | A | Yes. | |
| 3 | Q | Did you receive those before the last day of your | |
| 4 | | employment at Mattel? | |
| 5 | A | I don't recall. | 12:42 |
| 6 | Q | One way or the other? | |
| 7 | A | I don't recall when I got them. | |
| 8 | Q | But whenever you got them, you then shared them with MGA? | |
| 9 | A | Yes. | |
| 10 | Q | Who -- who did you provide them to? | 12:42 |
| 11 | A | I believe I provided them to Paula Treantafelles. | |
| 12 | Q | Did you have any communication with Universal other than | |
| 13 | | this phone call where you asked for samples and their | |
| 14 | | sending you samples? | |
| 15 | A | Not to my recollection, no. | 12:43 |
| 16 | Q | Did you ever have any written communications with | |
| 17 | | Universal? | |
| 18 | A | I may have.  I don't recall what they were, but I may | |
| 19 | | have. | |
| 20 | Q | During the time that you were employed by Mattel did | 12:43 |
| 21 | | you -- do you recall receiving any written communications | |
| 22 | | from Universal? | |
| 23 | A | I may have, but I don't remember. | |
| 24 | Q | Have you reviewed any written communications between you | |
| 25 | | and Universal in preparation for your deposition? | 12:43 |

EXHIBIT 6
PAGE 83

| | | |
|---|---|---|
| 1 | MS. CENDALI:  Objection. | 12:43 |
| 2 | A   I don't recall. | |
| 3 | Q   (By Mr. Quinn)  Did you review any yesterday? | |
| 4 | MR. WICKHAM:  Objection.  If you reviewed | |
| 5 | any documents in connection with preparation for your | 12:43 |
| 6 | deposition for purposes of refreshing your memory -- you | |
| 7 | know what, you've already asked this question about 14 | |
| 8 | times.  Objection, attorney-client privilege.  Instruct | |
| 9 | the witness not to respond.  Harassing, burdensome. | |
| 10 | MR. QUINN:  Okay.  On that note why don't we | 12:44 |
| 11 | break for lunch. | |
| 12 | VIDEOGRAPHER:  We're off the record.  The | |
| 13 | time's 12:40 -- | |
| 14 | MR. QUINN:  Wait.  Wait.  One hour enough? | |
| 15 | MR. WICKHAM:  That's fine. | 12:44 |
| 16 | MR. QUINN:  Okay. | |
| 17 | VIDEOGRAPHER:  The time is 12:44. | |
| 18 | (Break in proceedings.) | |
| 19 | VIDEOGRAPHER:  Back on the record.  Time is | |
| 20 | 1:47. | 01:47 |
| 21 | Q   (By Mr. Quinn)  Good afternoon, Mr. Bryant. | |
| 22 | A   Good afternoon. | |
| 23 | Q   You've told us this morning that you first came up with | |
| 24 | the Bratz concept, as I understand it, in 1998; is that -- | |
| 25 | A   Yes. | |

EXHIBIT __6__
PAGE __84__

| | | | |
|---|---|---|---|
| 1 | Q | -- correct? | 01:47 |
| 2 | A | Yes. | |
| 3 | Q | We've used the "Bratz" name.  Did you come up with the | |
| 4 | | "Bratz" name as well? | |
| 5 | A | Yes. | 01:47 |
| 6 | Q | And when did you come up with the name? | |
| 7 | A | About the time of the creation of the Bratz.  About the | |
| 8 | | same time. | |
| 9 | Q | Can you tell me as best you can recall when it was that | |
| 10 | | you created the Bratz? | 01:47 |
| 11 | A | Yes.  Let's see.  I was driving by a high school.  I | |
| 12 | | believe it was on my way home from work, and there were -- | |
| 13 | | the kids were getting out of school and I was just kind of | |
| 14 | | struck by the way they looked.  They were wearing kind of, | |
| 15 | | you know, oversized clothes, big, baggy jeans.  They had | 01:48 |
| 16 | | on backpacks and -- I don't know.  There was just | |
| 17 | | something very interesting and exciting about their energy | |
| 18 | | and just got me to kind of thinking, you know, wouldn't it | |
| 19 | | be cool if there were some characters that kind of | |
| 20 | | accurately represented today's teenager. | 01:48 |
| 21 | | And so when I got home I started doing a little bit | |
| 22 | | of sketching and sketched some characters fairly quickly. | |
| 23 | | I had also kind of been looking at magazines and things | |
| 24 | | like that.  There were some advertising things that were | |
| 25 | | going on at the same time that kind of all melded together | 01:49 |

EXHIBIT 6
PAGE 85

| | | |
|---|---|---|
| 1 | | and kind of gave me the idea. There was a Paris Blues ad. |
| 2 | | There was -- 17 Magazine had a Steve Madden ad. There was |
| 3 | | an ad for the Dixie Chicks' album and it said "Chicks with |
| 4 | | Attitude" on it, and it all just kind of came together and |
| 5 | | it all just kind of really struck me when I drove by that |
| 6 | | high school. |
| 7 | Q | Can you place this in a month in 1998? |
| 8 | A | It was in late August. |
| 9 | Q | And do you recall the high school? |
| 10 | A | I believe it was Kickapoo High. |
| 11 | Q | Kickapoo? |
| 12 | A | Uh-huh. |
| 13 | Q | Is that here in Springfield? |
| 14 | A | Yes. |
| 15 | Q | And there is a street that you were driving on that |
| 16 | | actually fronts right on this high school? |
| 17 | A | Yes. |
| 18 | Q | And do you recall what the name of that street is? |
| 19 | A | I think it's Primrose. |
| 20 | Q | So school was in session in late August? |
| 21 | A | Yes, as far as I know. |
| 22 | Q | And did these kids seem to be coming out of school? |
| 23 | A | Yeah. They seemed like they were getting out of school, |
| 24 | | going to their cars, whatever. |
| 25 | Q | It wasn't just one or two kids? There was a whole bunch |

01:49
01:49
01:49
01:50
01:50
01:50

EXHIBIT 6
PAGE 86

CONFIDENTIAL                                                    261

## DEPONENT'S SIGNATURE PAGE

RE:   Mattel, Inc., vs. Carter Bryant, et al.
      Carter Bryant vs. Mattel, Inc.
      Case No. CV 04-9059 DDP (AJWx)
      Deposition taken on November 4, 2004


        I do hereby certify that the foregoing is a true and

correct transcript of the deposition in the foregoing-styled

and numbered cause, and I now sign the same as true and

correct, with the exception of the corrections which I have

noted on the correction sheet provided.


                                    _____
                                         CARTER BRYANT


        Subscribed and sworn to before me this 2nd day of

_____ , 20 05 .


                                    _____
                                         Notary Public


My Commission Expires:

  Dec. 31, 2008            

                           CESCILY THOMAS-MCKOY
                           Commission # 1539977
                           Notary Public - California
                           Los Angeles County
                           My Comm. Expires Dec 31, 2008


                                         EXHIBIT    6
                                         PAGE     87

CONFIDENTIAL                                    262

## NOTARIAL CERTIFICATE


STATE OF MISSOURI        )
                         )  ss.
COUNTY OF GREENE         )


        I, Sherrie L. Hunt, Certified Court Reporter, and
Notary Public within and for the State of Missouri, do
hereby certify that on November 4, 2004, pursuant to Notice,
the above witness, CARTER BRYANT, was by me first duly sworn
to testify the truth, the whole truth, and nothing but the
truth in the case aforesaid; and that the deposition by him
was reduced to writing by me in stenotype, and thereafter
transcribed by me, and is fully and accurately set forth in
the preceding pages; that presentment by me to the witness for
signature was waived; and that the deposition will be
thereafter by the witness read, signed, and sworn to on or
before the date of trial.

        I do further certify that I am not related to, nor
attorney for, nor employed by any of the said parties, nor
otherwise interested in the event of said action.


    ┌─────────────────────────────────────┐
    │          Sherrie L Hunt             │
    │          Notary Public              │         _____
    │          Greene County             │         Sherrie L. Hunt
    │          State of Missouri          │         Certified Court Reporter
    │  My Commission Expires May 17, 2005 │         C.C.R. Number 1027
    └─────────────────────────────────────┘         Notary Public


My commission expires:  May 17, 2005



Costs:  To Plaintiff and Cross-Defendant $1,399.25
        To Defendants and Cross-Complainant $422.65



                COURT REPORTERS OF THE MIDWEST, INC.
                          P.O. Box 4282
                Springfield, MO 65808 (417) 889-2079

                                            EXHIBIT    6
                                            PAGE       88

**<u>Confidential; Subject to Protective Order</u>**

CORRECTIONS TO THE DEPOSITION OF

CARTER BRYANT

VOLUME I

RE:    Mattel, Inc., vs. Carter Bryant, et al.
        Carter Bryant vs. Mattel, Inc.
        Case No. CV 04-9059 NM (RNBx)
        Deposition taken on November 4, 2004

| Page/Line | Change Requested |
|---|---|
| 86:5 | Delete: "I may have." Insert: "I don't recall." |
| 124:1 and 3 | Delete: "No." Insert: "Other than my communications with Universal, I don't recall that I did." |
| 131:19 | Delete: "No, I did not." Insert: "Other than my communications with Universal, I don't recall that I did." |
| 132:3 | Delete: "I don't remember telling anybody that, no." Insert: "Other than my communications with Universal, I don't recall telling anybody that." |
| 132:18 | Delete: "To the best of my recollection that's true." Insert: "To the best of my recollection, other than my communications with Universal, that's true." |
| 195:24 | Insert: "I also received expense reimbursements from MGA and an advance against royalties." |
| 252:24 | Delete: "No." Insert: "No. I interpreted your question as asking whether I was employed by MGA at that time and the answer is no." |
| 253:20 | Delete: "I don't remember that, no." Insert: "Other than my communications with Universal, I don't remember that." |
| 253:22 | Delete: "That – as far as I can remember that never happened." Insert: "Other than my communications with Universal, as far as I can remember, that never happened." |

EXHIBIT _6_

PAGE _89_

253:25

Delete:  "No."   Insert:  "Other than my communications with Universal, no that I remember."

EXHIBIT __6__
PAGE __90__

Exhibit 7

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| BRYANT, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | NO.  CV 04-9040 SGL |
| | ) | (RNBX) |
| MATTEL, INC., | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

# ATTORNEYS' EYES ONLY
## (THIS TRANSCRIPT HAS BEEN DESIGNATED ATTORNEYS' EYES ONLY.)

# DEPOSITION OF ISAAC LARIAN

# JULY 18, 2006



**REPORTED BY:**
APRIL PRAXMARER
CSR NO.  12437
JOB NO. 06AE315-AP

EXHIBIT 7
PAGE 91

COURT REPORTERS
700 S. Flower Street
Suite 1100
Los Angeles, California 90017
Office: (213) 955-0070
Fax: (213) 955-0077

1              UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                  EASTERN DIVISION

4

5      BRYANT,                        )

                                      )

6           PLAINTIFF,                )

                                      )

7      VS.                            )CASE NO. CV 04-9040 SGL

                                      )          (RNBX)

8      MATTEL, INC.,                  )

                                      )

9           DEFENDANTS.               )

                                      )

10

11

12              ATTORNEYS' EYES ONLY

13         (THIS TRANSCRIPT HAS BEEN DESIGNATED

14              ATTORNEYS' EYES ONLY.)

15

16

17        DEPOSITION OF ISAAC LARIAN, TAKEN ON BEHALF OF THE

18   PLAINTIFF, AT 1999 AVENUE OF THE STARS, SUITE 700, LOS

19   ANGELES, CALIFORNIA, COMMENCING AT 9:26 A.M., TUESDAY,

20   JULY 18, 2006, BEFORE APRIL PRAXMARER, CERTIFIED

21   SHORTHAND REPORTER NO. 12437.

22

23

24                                    EXHIBIT __7__

25                                    PAGE __92__

| | | |
|---|---|---|
| 1 | 11:17:04 | BY MR. QUINN: |
| 2 | 11:17:04 | Q ALL RIGHT. BEFORE THESE DOLLS WERE -- BEFORE |
| 3 | 11:17:06 | THE HONG KONG TOY FAIR, MR. LARIAN, WERE ANY FOCUS |
| 4 | 11:17:12 | GROUP STUDIES DONE ON THE BRATZ IDEA? |
| 5 | 11:17:16 | MS. CENDALI: OTHER THAN WHAT HE'S ALREADY |
| 6 | 11:17:18 | TESTIFIED TO? |
| 7 | 11:17:20 | BY MR. QUINN: |
| 8 | 11:17:20 | Q YEAH. OTHER THAN WHAT YOU'VE ALREADY TOLD US |
| 9 | 11:17:21 | ABOUT, SHOWING EMPLOYEES. |
| 10 | 11:17:23 | MS. CENDALI: WELL, WAIT A MINUTE, WAIT A |
| 11 | 11:17:22 | MINUTE. I'M NOW MARKING THIS ATTORNEY'S EYES ONLY. |
| 12 | 11:17:24 | THIS IS THE SAME THING THAT WE'VE DONE IN THE |
| 13 | 11:17:24 | VICTORIA O'CONNER DEPOSITION. |
| 14 | 11:17:24 | THE MEETING WAS ONE THING, BUT THE |
| 15 | 11:17:26 | DEVELOPMENT OF BRATZ IS ATTORNEY'S EYES ONLY. AND I'M |
| 16 | 11:17:30 | AFRAID WE'RE GOING TO HAVE TO ASK IN-HOUSE COUNSEL TO |
| 17 | 11:17:35 | LEAVE. |
| 18 | 11:17:35 | MR. QUINN: OKAY. WE'LL JUST ADD THAT TO OUR |
| 19 | 11:17:39 | LIST. THOSE FOLKS CAN GO OUT AND GET SOME SUN AT SOME |
| 20 | 11:17:42 | POINT OR SOMETHING. |
| 21 | 11:17:43 | MS. CENDALI: WELL, THIS IS THE POINT IF |
| 22 | 11:17:45 | YOU'RE GOING TO CONTINUE TO ASK ABOUT THE -- THE |
| 23 | 11:17:47 | DEVELOPMENT OF BRATZ. |
| 24 | 11:17:49 | MR. QUINN: I'M GOING TO STRUCTURE MY |
| 25 | 11:17:52 | EXAMINATION THE WAY I WANT TO, AND I MAY GO INTO A |

EXHIBIT 7
PAGE 93

186

| | | |
|---|---|---|
| 1 | 11:17:55 | COMPLETELY DIFFERENT SUBJECT AND COME BACK TO THAT. |
| 2 | 11:17:58 | MS. CENDALI:  WELL, YOU CAN DO WHAT YOU WANT, |
| 3 | 11:17:59 | BUT PEOPLE HAVE TO KNOW WHETHER OR NOT THEY SHOULD GET |
| 4 | 11:17:59 | UP OR LEAVE OR -- |
| 5 | 11:18:02 | MR. QUINN:  I WILL ANNOUNCE WHEN I'M GOING TO |
| 6 | 11:18:03 | GO TO MY LIST OF THINGS YOU'VE TOLD ME I NEED TO ASK |
| 7 | 11:18:06 | OUTSIDE THE PRESENCE. |
| 8 | 11:18:06 | MS. CENDALI:  FAIR ENOUGH. |
| 9 | 11:18:06 | MR. QUINN:  WHAT, YOU THINK I'D JUST TRY TO |
| 10 | 11:18:08 | SLIP IT BY YOU? |
| 11 | 11:18:09 | MS. CENDALI:  NO.  BUT PEOPLE DON'T KNOW |
| 12 | 11:18:10 | WHAT -- WHAT -- NO ONE BUT YOU KNOWS WHAT YOUR NEXT |
| 13 | 11:18:12 | QUESTION IS. |
| 14 | 11:18:13 | MR. QUINN:  AND EVEN SOMETIMES I DON'T KNOW. |
| 15 | 11:18:15 | MS. CENDALI:  WELL, THAT'S CERTAINLY |
| 16 | 11:18:16 | POSSIBLE.  SO IN LIGHT OF THAT, YOU KNOW, I'M DOING TO |
| 17 | 11:18:18 | THE BEST I CAN TO SAY, YOU KNOW -- YOU KNOW, RED FLAG |
| 18 | 11:18:22 | IF YOU GO DOWN IN THAT DIRECTION. |
| 19 | 11:18:24 | MR. QUINN:  I WILL. |
| 20 | 11:18:24 | MS. CENDALI:  IF YOU GO DOWN ANOTHER |
| 21 | 11:18:27 | DIRECTION, THEN RED FLAG. |
| 22 | 11:18:28 | MR. QUINN:  ABSOLUTELY. |
| 23 | 11:18:29 | Q    DID MR. BRYANT HAVE A NAME FOR THESE IMAGES |
| 24 | 11:18:31 | THAT HE SHOWED YOU?  DID HE HAVE A NAME FOR THEM? |
| 25 | 11:18:34 | A    I THINK HE CALLED THEM BRATZ. |

EXHIBIT _7_
PAGE _94_

| | | |
|---|---|---|
| 1 | 11:18:38 | Q    ALL RIGHT.  B-R-A-T-Z? |
| 2 | 11:18:40 | A    I BELIEVE SO. |
| 3 | 11:18:41 | Q    ALL RIGHT. |
| 4 | 11:18:41 | A    TO THE BEST OF MY RECOLLECTION. |
| 5 | 11:18:42 | Q    ALL RIGHT.  SO IS IT TRUE THAT MR. BRYANT'S |
| 6 | 11:18:43 | THE ONE WHO CAME UP WITH THE NAME BRATZ FOR THESE |
| 7 | 11:18:51 | DOLLS? |
| 8 | 11:18:51 | A    AT THE END, YES. |
| 9 | 11:18:51 | MR. WICKHAM:  OBJECTION.  FOUNDATION. |
| 10 | 11:18:51 | BY MR. QUINN: |
| 11 | 11:18:51 | Q    WHAT DO YOU MEAN, "AT THE END"?  I'M ASKING |
| 12 | 11:18:52 | AT THE BEGINNING.  WHO FIRST CAME UP WITH THE NAME? |
| 13 | 11:18:55 | A    WELL, HE CAME -- WE CONSIDERED A LOT OF OTHER |
| 14 | 11:18:56 | NAMES.  FINALLY, WE SETTLED FOR BRATZ. |
| 15 | 11:18:56 | Q    ALL RIGHT. |
| 16 | 11:18:58 | MS. CENDALI:  OKAY.  JOHN, I REALLY THINK |
| 17 | 11:18:59 | THAT IT'S JUST NOT FAIR.  I SAID THAT WE -- IN-HOUSE |
| 18 | 11:19:05 | COUNSEL FOR MGA DID NOT GO AT ALL TO ALAN KAY'S |
| 19 | 11:19:11 | DEPOSITION BECAUSE IT WAS ALL CONCERNING THE INTERNAL |
| 20 | 11:19:13 | MATTEL IN-HOUSE PROCEDURES. |
| 21 | 11:19:15 | YOU'RE ASKING HIM ABOUT THE DEVELOPMENT OF |
| 22 | 11:19:18 | BRATZ, AND THAT IS ATTORNEY'S EYES ONLY.  I DON'T THINK |
| 23 | 11:19:22 | IN-HOUSE COUNSEL SHOULD BE THERE. |
| 24 | 11:19:25 | MR. QUINN:  ALL RIGHT.  WHO CAME UP WITH THE |
| 25 | 11:19:27 | NAME, BRATZ? |

EXHIBIT 7
PAGE 95

108

| | | |
|---|---|---|
| 1 | 11:19:27 | MS. CENDALI:  YEAH, BECAUSE YOU'RE GOING -- |
| 2 | 11:19:28 | YOU'RE STARTING TO GO INTO QUESTIONS OF, WELL, YOU |
| 3 | 11:19:30 | KNOW, WE CONSIDERED OTHER IDEAS AND ALL THE REST OF IT |
| 4 | 11:19:33 | AND WHO CAME UP WITH THE NAME, AND THAT WAS NOT AT THE |
| 5 | 11:19:36 | PITCH SESSION WHERE HE WAS THERE. |
| 6 | 11:19:38 | AND AT THAT POINT HE WAS A THIRD PARTY. |
| 7 | 11:19:40 | THAT'S ONE THING.  BUT WHAT THEY WERE DOING AFTER THAT, |
| 8 | 11:19:43 | I DON'T THINK IS APPROPRIATE.  AND IT'S THE SAME THING |
| 9 | 11:19:46 | THAT WAS DONE AT THE VICTORIA O'CONNER DEPOSITION. |
| 10 | 11:19:50 | BY MR. QUINN: |
| 11 | 11:19:50 | Q    WHAT WAS THE NEXT STEP AFTER THIS MEETING IN |
| 12 | 11:19:53 | THE CONSIDERATION OF BRATZ? |
| 13 | 11:19:55 | A    BESIDES WHAT I TOLD YOU? |
| 14 | 11:19:56 | Q    YEAH. |
| 15 | 11:19:57 | A    THAT'S IT. |
| 16 | 11:19:59 | MS. CENDALI:  ASKED AND ANSWERED. |
| 17 | 11:19:59 | BY MR. QUINN: |
| 18 | 11:19:59 | Q    WELL, I MEAN, HOW DID YOU GO ABOUT DECIDING |
| 19 | 11:20:06 | WHETHER OR NOT THIS IS SOMETHING THAT YOU ACTUALLY |
| 20 | 11:20:08 | WANTED TO BRING TO MARKET? |
| 21 | 11:20:09 | A    BESIDES WHAT I TOLD YOU, NOTHING ELSE. |
| 22 | 11:20:13 | Q    OKAY.  WELL, BREAK IT DOWN THEN.  TELL ME -- |
| 23 | 11:20:14 | TELL ME WHAT THE STEPS WERE. |
| 24 | 11:20:16 | MS. CENDALI:  OKAY.  I AM GOING TO INSIST |
| 25 | 11:20:20 | THAT IN-HOUSE COUNSEL LEAVE.  THIS IS ABOUT THE |

EXHIBIT 7
PAGE 96

1          STATE OF CALIFORNIA     )

                                )  SS.

2          COUNTY OF LOS ANGELES  )

3

4

5            I, ISAAC LARIAN, HEREBY CERTIFY UNDER PENALTY OF

6          PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT

7          THE FOREGOING IS TRUE AND CORRECT.

8            EXECUTED THIS _____ DAY OF

9          _____, 2006, AT

10         _____, CALIFORNIA.

11

12

13

14

15

16                                 _____

17                                ISAAC LARIAN

18

19

20

21

22

23

24                             EXHIBIT 7

25                             PAGE 97

256

1          BEFORE COMPLETION OF THE DEPOSITION, REVIEW

2    OF THE TRANSCRIPT [X] WAS [ ] WAS NOT REQUESTED.  IF

3    REQUESTED, ANY CHANGES MADE BY THE DEPONENT (AND

4    PROVIDED TO THE REPORTER) DURING THE PERIOD ALLOWED ARE

5    APPENDED HERETO.  [FED. R. CIV. P. 30(E)].

6          DATED _August 9_____, 2006

7

8          _____

9          APRIL PRAXMARER, CSR 12437

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                                    EXHIBIT  7
25                                    PAGE  98

258

Exhibit 8

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware Corporation,

        Plaintiff,

      vs.            NO. CV 04-9059 NM (RJBx)

CARTER BRYANT, an individual, and
DOES 1 through 10, Inclusive.

        Defendants.

_____

CARTER BRYANT, on behalf of himself,
all present and former employees of
Mattel, Inc., and the general public.

        Cross-Complaint.

      vs.

MATTEL, INC.,
a Delaware corporation.

        Cross-Defendant.

**CERTIFIED COPY**

_____

CONFIDENTIAL - ATTORNEYS' EYES ONLY

DEPOSITION OF PAULA GARCIA

Thursday, May 24, 2007

Los Angeles, California

VOLUME 1

Reported by:
DAVID OCANAS
CSR No. 12567

JOB NO. 66418

EXHIBIT 8
PAGE 99

```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3

 4   MATTEL, INC., a Delaware Corporation,

 5                   Plaintiff,

 6           vs.              NO. CV 04-9059 NM (RJBx)

 7   CARTER BRYANT, an individual, and
     DOES 1 through 10, Inclusive.
 8
                     Defendants.
 9   _____

     CARTER BRYANT, on behalf of himself,
10   all present and former employees of
     Mattel, Inc., and the general public.
11
                   Cross-Complaint.
12
                 vs.
13
     MATTEL, INC.,
14   a Delaware corporation.

15                 Cross-Defendant.

16   _____

17

18          Videotaped Deposition of PAULA GARCIA,

19   Volume 1, taken on behalf of Plaintiff and

20   Cross-Defendant, at 865 South Figueroa Street,

21   Tenth Floor, Los Angeles, California, beginning at

22   10:18 a.m. and ending at 7:08 p.m. on Thursday, May

23   24, 2007 before David Ocanas, Certified Shorthand

24   Reporter No. 12567.

25
```

EXHIBIT _8_

PAGE _100_

2

```
 1     explore a three-dimensional representation of

 2     whatever it should be sculpted against.

 3              MR. ZELLER:  Let's take a couple of

 4     minutes.  We have to change tape.

18:18 5          THE VIDEOGRAPHER:  Going off the record.

 6              (Recess taken.)

 7              THE VIDEOGRAPHER:  Going back on the

 8     record at 6:18.

 9     BY MR. ZELLER:

18:18 10     Q    Before the break, we were talking about

11     the initial contact that you had with Margaret

12     Hatch Leahy and in which you told her about your

13     interest in exploratory sculpt and then you told us

14     what you meant by exploratory sculpt.

18:19 15         My question is:  What, if anything, did

16     you discuss during that initial conversation with

17     Margaret Hatch Leahy other than what you have told

18     us about?

19         A    I don't remember much more.

18:19 20     Q    Do you know one way or another whether you

21     used the word Bratz in that conversation with her?

22         A    I don't remember.

23         Q    By the time that you had this conversation

24     with Margaret Hatch Leahy, had you heard the word

18:19 25    Bratz with a Z as a name for these dolls?
```

EXHIBIT _8_

PAGE _101_                    262

1      A    Yes.

2          Q    When was the first time you heard as Bratz

3    as a name for these dolls?

4               MS. TORRES:   Objection, vague.

18:20 5              THE WITNESS:  I remember hearing the word

6    Bratz at the September 1st, 2000 meeting.

7    BY MR. ZELLER:

8          Q    And this September 1st, 2000 meeting is

9    the one we were discussing earlier that is

18:20 10   reflected in this meeting notice, Exhibit 301?

11         A    Correct.

12         Q    You had mentioned that at this meeting was

13   yourself, Victoria O'Connor, Isaac Larian, Veronica

14   Marlow and Mr. Larian's daughter, Jasmine.

18:20 15             Were you all together when you first met,

16   I'm talking about you yourself with Carter Bryant,

17   or did you meet him before that assembled group?

18              MS. TORRES:   Objection, vague.

19              THE WITNESS:  We met all together.

18:21 20   BY MR. ZELLER:

21         Q    You didn't meet Mr. Bryant prior to the

22   time you had this meeting in Mr. Larian's office;

23   is that true?

24         A    Yes.

18:21 25         Q    By the time that meeting started and you

EXHIBIT 8
PAGE 102

263

1   first met Carter Bryant, all the people we just

2   discussed were already present and assembled?

3        A    Yes.

4        Q    I take it at some point Mr. Bryant came

18:21 5   in; is that true?

6        A    Yes.

7        Q    Was he the last one to come in?

8        A    No.

9        Q    Who was the last person to come in?

18:21 10       A    I believe he walked in with -- near at the

11   same time as Veronica Marlow.

12       Q    So as far as you know, they came together?

13       A    Yes.

14       Q    So, then, the group that was already

18:22 15   assembled in Isaac's office was Victoria O'Connor,

16   Isaac and you and Jasmine Larian?

17       A    That's my memory.

18       Q    And then Carter Bryant and Veronica Marlow

19   came in together into the office?

18:22 20       A    Yes.

21       Q    Did they make some sort of pitch at that

22   point?

23       A    Can you please be more specific?

24       Q    What happened at that meeting?

18:22 25       A    Upon Carter and Veronica's entry?

EXHIBIT _8_

PAGE _103_                                          264

```
 1

 2

 3

 4

 5

 6

 7

 8            I, PAULA GARCIA, do hereby

 9   declare under penalty of perjury that I have read

10   the foregoing transcript; that I have made any

11   corrections as noted herein, in ink, initialed by

12   me, or attached hereto; that my testimony as

13   contained herein, as corrected, is true and

14   correct.

15            Executed this _____ day of _____,

16   2007, at _____, _____.

17              (City)                   (State)

18

19

20

21          PAULA GARCIA

22          Volume 1

23

24

25
```

EXHIBIT _8_
PAGE _104_

298

1

2

3

4          I, the undersigned, a Certified

5     Shorthand Reporter, do hereby certify:

6              That the foregoing proceedings were

7     taken before me at the time and place herein set

8     forth; that any witness in the foregoing

9     proceedings, prior to testifying, were placed under

10    oath; that a verbatim record of the proceedings was

11    made by me using machine shorthand which was

12    thereafter transcribed under my direction; further,

13    that the foregoing is an accurate transcription

14    thereof.

15              I further certify that I am neither

16    financially interested in the action nor a relative

17    or employee of any attorney of any of the parties.

18              IN WITNESS WHEREOF, I have this

19    date subscribed by name.

20

21    Dated:
              MAY 3 0 2007
22

23

24              DAVID OCANAS

25              CSR No. 12567

EXHIBIT 8
PAGE 105