QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

STROOCK & STROOCK & LAVAN LLP
Barry B. Langberg (State Bar No. 048158)
Michael J. Niborski (State Bar No. 192111)
(lacalendar@stroock.com)
2029 Century Park East, Suite 1600
Los Angeles, California 90067-3086
Telephone: (310) 556-5800
Facsimile: (310) 556-5959

Attorneys for MATTEL, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,
Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,
Defendant.

AND CONSOLIDATED ACTIONS

Case No. CV 04-9049 SGL (RNBx)
Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

MATTEL, INC.'S REPLY IN SUPPORT OF MOTION OBJECTING TO DISCOVERY MASTER'S MAY 8, 2008 ORDER DENYING MATTEL'S MOTION FOR RECONSIDERATION OF FEBRUARY 26, 2008 ORDER DENYING MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI; AND RENEWED MOTION OBJECTING TO FEBRUARY 26, 2008 ORDER

Hearing Date: May 21, 2008
Time: 10:00 a.m.
Place: Courtroom 1

**Phase 1**
Pre-trial Conference: May 19, 2008
Trial Date: May 27, 2008

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. THE JOURNALIST'S PRIVILEGE IS NOT IMPLICATED HERE BECAUSE MATTEL ONLY SEEKS TO CONFIRM THE AUTHENTICITY OF PUBLISHED INFORMATION .......... 2

II. EVEN IF THE STATEMENT IS UNPUBLISHED, THE DISCOVERY MASTER DID NOT PROPERLY APPLY THE TEST FOR DETERMINING WHETHER THE REPORTER'S PRIVILEGE SHOULD YIELD .......... 4

A. The Information Sought Is Not Available From Another Source .......... 5

B. The Information Sought Is Clearly Relevant to Important Issues .......... 7

C. Mr. Larian's Statement To Mr. Palmeri Is Not Cumulative of Any Other Available Testimony or Evidence .......... 8

1. Testimony of Maureen Tkacik, Wall Street Journal .......... 8

2. Testimony of Denise O'Neal, Chicago Sun-Times .......... 9

3. Testimony of Jeff Weiss, San Fernando Valley Business Journal .......... 9

III. AS THIS COURT AND THE DISCOVERY MASTER HAVE ALREADY DETERMINED, CALIFORNIA'S STATE CONSTITUTIONAL SHIELD LAW DOES NOT APPLY .......... 11

IV. THERE ARE NO GROUNDS ON WHICH TO AWARD MR. PALMERI ATTORNEYS' FEES .......... 11

CONCLUSION .......... 12

# TABLE OF AUTHORITIES

Page

## Cases

Agster v. Maricopa County, 422 F.3d 836 (9th Cir. 2005) ........ 11

In re Behar, 779 F. Supp. 273 (C.D. Cal & S.D.N.Y. 1991) ........ 4, 5

Branzburg v. Hayes, 408 U.S. 665 (1972) ........ 4

Brinston v. Dunn, 919 F. Supp. 240 (S.D. Miss. 1996) ........ 5

De La Paz v. Henry's Diner, 946 F. Supp. 484 (N.D. Tex. 1996) ........ 4

Dillon v. City and County of San Francisco, 748 F. Supp. 722 (N.D. Cal. 1990) ........ 4

Don King Prod. v. Douglas, 131 F.R.D. 421 (S.D.N.Y. 1990) ........ 4, 11

Farr v. Pitchess, 522 F.2d 464 (9th Cir. 1975) ........ 4

Gonzales v. National Broadcasting Co., Inc., 194 F.3d 29 (2d Cir. 1999) ........ 4

In Re Grand Jury Subpoenas, 438 F. Supp. 2d 1111 (N.D. Cal. 2006) ........ 3

In re Maykuth, 2006 WL 724241 (E.D. Pa. 2006) ........ 5

McCarty v. Bankers Ins., 195 F.R.D. 39 (N.D. Fla. 1998) ........ 5

McKevitt v. Pallasch, 339 F.3d 530 (7th Cir. 2003) ........ 3, 4

Miami Herald Pub. Co. v. Morejon, 561 So. 2d 577 (Fla. 1990) ........ 4

NLRB v. Mortenson, 701 F. Supp. 244 (D.D.C. 1988) ........ 5

New York Times v. Superior Court, 51 Cal. 3d 453 (Cal. 1990) ........ 4

Norse v. Henry Holt & Co., 991 F.2d 563 (9th Cir. 1993) ........ 2

Parsons v. Watson, 778 F. Supp. 214 (D. Del. 1991) ........ 5, 6

Prince George's County v. Hartley, 822 A.2d 537 (Md. App. 2003) ........ 5

Re/MAX Int'l, Inc. v. Century 21 Real Estate Corp., 846 F. Supp. 910 (D. Colo. 1994) ........ 5

SEC v. Seahawk Deep Ocean Tech., Inc., 166 F.R.D. 268 (D. Conn. 1996) ........ 5, 10

Shaklee Corp v. Gunnell, 110 F.R.D. 190 (N.D. Cal. 1986) ........ 4

Shoen v. Shoen, 5 F.3d 1289 (9th Cir. 1993) ........ 2, 3, 4, 5, 6, 8

Shoen v. Shoen, 48 F.3d 412 (9th Cir. 1995) ........ 3, 4, 5, 6

Silkwood v. Kerr-McGee Corp., 563 F.2d 433 (10th Cir. 1977) ........ 5

Solaia Technology, LLC v. Rockwell Automation, Inc., 2003 WL 22597611 (N.D. Ill. 2003) ........ 4

State of Minnesota v. Knutson, 523 N.W.2d 909 (Minn. App. 1995) ........ 4

In Re Stratosphere Corporation Securities Litigation, 183 F.R.D. 684 (D. Nev. 1999) ........ 5

U.S. ex rel. Vuitton et Fils S.A. v. Karen Bags, Inc., 600 F. Supp. 667 (S.D.N.Y. 1985) ........ 4, 11

U.S. v. LaRouche Campaign, 841 F.2d 1176 (1st Cir. 1988) ........ 4

United States v. Blanton, 534 F. Supp. 295 (S.D. Fla. 1982) ........ 5

United States v. Bryan, 339 U.S. 323 (1950) ........ 8

In re Vmark Software, 1998 WL 42252 (E.D. Pa. 1998) ........ 5, 8

Wright v. Fred Hutchinson Cancer Research Center, 206 F.R.D. 679 (W.D. Wash. 2002) ........ 12

In re Ziegler,
550 F. Supp. 530 (D.C.N.Y. 1982) .......... 4

**Statutes**

Fed. R. Civ. P. 37(a)(5)(B) .......... 11

Rule 30(b)(6) .......... 1

**PRELIMINARY STATEMENT**

The testimony that Mattel seeks from Christopher Palmeri goes to the heart of its claims in this action and is central to the issue of who owns Bratz. Mattel has alleged that MGA deliberately and intentionally concealed facts that Mattel was the true owner of Bratz. Isaac Larian's statement to Mr. Palmeri that he was inspired to invent Bratz from watching his children was part of a deliberate, continuing course of conduct designed to conceal Bryant's invention of Bratz during his employment by Mattel. There is no other evidence like that which will be provided by Mr. Palmeri – Larian claimed to one of the largest business periodicals that he (Larian) invented Bratz, and went so far as to embellish this claim with a story about his children. Moreover, Larian made this assertion to BusinessWeek just as the Wall Street Journal was finally disclosing to the world that it was Carter Bryant (not Larian) who invented Bratz. Larian's statements to BusinessWeek establish a desperate effort at a critical time to perpetuate a cover-up that was starting to unravel.

It is beyond dispute that Mr. Palmeri is the only person who can authenticate Larian's statements. Larian, MGA's spokesman, and MGA's Rule 30(b)(6) witness have all been unable to confirm what Larian told Mr. Palmeri. Mr. Palmeri argues that Mattel has already obtained testimony regarding Larian's conflicting stories about the origins of Bratz from other reporters. But this is not correct: Mr. Larian told one reporter that his son had created Bratz. He told another reporter that MGA (not Bryant) had come up with the "Bratz" name. He told another reporter that Bryant had created Bratz in a sort-of fashion doll design contest.

This testimony is no substitute for testimony that Mr. Larian claimed he himself created Bratz. Mattel has not obtained the necessary and important evidence that Larian announced to the world – through BusinessWeek – that he (rather than his son or Bryant) was the inventor of Bratz, and he did so in the summer of 2003 – a point in time when MGA is contending Mattel knew Bryant was the creator of the dolls. Mr. Palmeri's testimony – which is available from no one else – will establish a

key element of Mattel's case: Larian concealed the true origins of Bratz to the world because he was aware that Bratz actually belonged to Mattel. Therefore, Mattel has established that the qualified federal reporter's privilege should not bar Mr. Palmeri's testimony.

Accordingly, Mattel respectfully requests that the Court order Mr. Palmeri to sit for a brief deposition to confirm the accuracy of Larian's published statements about Bratz.

## ARGUMENT

### I. THE JOURNALIST'S PRIVILEGE IS NOT IMPLICATED HERE BECAUSE MATTEL ONLY SEEKS TO CONFIRM THE AUTHENTICITY OF PUBLISHED INFORMATION

Mattel has consistently stated its position to both the Discovery Master and this Court that the statements at issue were published, and that the First Amendment-based reporter's privilege does not apply to published statements.[1] The plain language, in context, used by Mr. Palmeri in the BusinessWeek article conveys to reasonable readers that Larian told Mr. Palmeri that he (Larian) "got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers." See Norse v. Henry Holt & Co., 991 F.2d 563, 567 (9th Cir. 1993) (A statement must be interpreted "from the standpoint of the average reader, judging the statement not in isolation, but within the context in which it is made."). After conveying to this message to his readers, Mr. Palmeri cannot now hide behind the journalist's privilege

[1] Contrary to Mr. Palmeri's misguided reading of Mattel's Motion for Reconsideration, Mattel has never "conceded" that Shoen applies here. (Opp. at 1, 6.) Rather, it stated clearly: "Mattel maintains that the journalist's privilege does not apply at all to the statements by Larian in BusinessWeek, and is unavailable to Mr. Palmeri, because Mattel is seeking verification of published information. . . . Solely for this motion, Mattel does not challenge the Discovery Master's implicit holding in the February 26, 2008 Order that the qualified privilege is available to Mr. Palmeri in this context." Mattel's Motion for Reconsideration of February 26, 2008 Order Denying Motion to Compel Deposition of Christopher Palmeri, dated April 18, 2008, at 8 n.13.

and assert that the source is unpublished.[2]

Mr. Palmeri cites to no Ninth Circuit authority for the proposition that the reporter's privilege applies to published information. Shoen v. Shoen, 5 F.3d 1289 (9th Cir. 1993) ("Shoen I"), and Shoen v. Shoen, 48 F.3d 412 (9th Cir. 1995) ("Shoen II") provide no support for this position. In them, the Ninth Circuit held that the reporter's privilege applies to the discovery of a journalist's unpublished research materials -- a reporter's notes and audiotapes of interviews.[3] The Ninth Circuit has never addressed whether the privilege limits a court's power to compel a reporter to testify about published information,[4] nor is the Ninth Circuit likely to because there is no compelling public interest in maintaining the confidentiality of published information.[5] There is an obvious reason why there is so little case law on point – the

[2] Palmeri claims Mattel seeks to verify "unpublished" statements merely because the article did not preface the assertion that Larian "got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers" with the statement "Larian said." But, BusinessWeek intended to convey that the statement came directly from Larian. Thus, either Larian actually made the statement, as communicated to readers by BusinessWeek, or the statement was fabricated. The article itself offers no indication that Mr. Palmeri learned about the inspiration for Bratz from someone other than Larian. Indeed, Mr. Palmeri does not deny that Larian made the statement.

[3] Mr. Palmeri cites Shoen II, at 416 for the assertion that "the reporter's privilege applies to *any* information generated during the newsgathering process, even when a litigant claims that he seeks only to 'authenticate' or 'verify' the contents of a journalist's published work." (Opp. at 7-8.) Shoen doesn't support the conclusion that the reporter's privilege applies to published statements. The actual materials sought to be produced by the reporter were "all documents and recordings concerning the Shoen family feud over U-Haul and the death of Eva Berg Shoen," including "notes and tapes of his conversations with Leonard Shoen on matters related to the Shoen family." Shoen II, at 414. In the context of this decision, there is no reason to believe that there was any dispute over published materials.

[4] No courts in the Ninth Circuit have construed Shoen, except to say that it does not apply to grand jury proceedings. See In Re Grand Jury Subpoenas, 438 F. Supp. 2d 1111, 1115 (N.D. Cal. 2006) (holding that cases discussing reporter's privilege, including Shoen, did not apply to subpoenas in grand jury proceedings).

[5] McKevitt v. Pallasch, 339 F.3d 530, 532 (7th Cir. 2003), is instructive because it highlights the lack of a journalistic interest in protecting information that is non-confidential (in that case, tape recordings of interviews with a prosecution witness). Here, Mr. Palmeri is being asked to verify statements made to him by Larian, who is identified and quoted as a source in the Article. As Judge Posner states in McKevitt: "when the information in the reporter's possession does not come from a confidential source, it is difficult to see what possible bearing the First Amendment could have on the question of compelled disclosure." Id. at 533.

news media have not made a practice of challenging subpoenas merely seeking to confirm the accuracy of published statements.

## II. EVEN IF THE STATEMENT IS UNPUBLISHED, THE DISCOVERY MASTER DID NOT PROPERLY APPLY THE TEST FOR DETERMINING WHETHER THE REPORTER'S PRIVILEGE SHOULD YIELD

MGA states that 6 of 10 cases find against compelling a reporter's testimony. (Opp. at 11.) By Mattel's count, over the course of briefing this issue before this Court and the Discovery Master, the parties have identified at least 24 cases relating whether reporters should be compelled to testify regarding published or unpublished statements or produce unpublished materials, that were decided under either the First Amendment or state laws that require proof of at least one of the Shoen factors.[6] Only two of these cases are from the Ninth Circuit.[7]

The cases' holding are highly fact specific, leading to a wide variety of results. Seven of the cases required the reporter to testify regarding or produce unpublished materials,[8] while three of them did not.[9] Seven of them required the reporter to testify

---

[6] Cases like Miami Herald Pub. Co. v. Morejon, 561 So.2d 577, 581 (Fla. 1990), In re Ziegler, 550 F. Supp. 530 (D.C.N.Y. 1982), and Farr v. Pitchess, 522 F.2d 464 (9th Cir. 1975), which hold that a reporter must testify about crimes he observed or learned of while acting as a reporter, are not included in this analysis because they do not assist the Court in determining how courts have analyzed the question of whether to compel a reporter to testify regarding published or unpublished statements under First Amendment law, or state laws with similar standards. Likewise, Mattel has not included Shaklee Corp v. Gunnell, 110 F.R.D. 190 (N.D. Cal. 1986), or New York Times v. Superior Court, 51 Cal. 3d 453 (Cal. 1990) in its analysis because they were decided under California's Shield Law, which is both inapplicable here and not comparable to First Amendment law because it does not require the application of any of the Shoen factors.

[7] See Shoen I and II (treated as a single case because of their identical holding), and In re Behar, 779 F. Supp. 273 (C.D. Cal & S.D.N.Y. 1991). Given Mr. Palmeri's extensive reliance on out-of-circuit authority and the pausity of Ninth Circuit authority on point, Mr. Palmeri can hardly criticize Mattel for looking for guidance outside this circuit. (Opp. at 4-5.)

[8] See McKevitt v. Pallasch, 339 F.3d 530, 532 (7th Cir. 2003); De La Paz v. Henry's Diner, 946 F. Supp. 484, 485 (N.D. Tex. 1996); State of Minnesota v. Knutson, 523 N.W.2d 909, 913 (Minn. App. 1995); Dillon v. City and County of San Francisco, 748 F. Supp 722, 726 (N.D. Cal. 1990); Branzburg v. Hayes, 408 U.S. 665 (1972); Don King Prod. v. Douglas, 131 F.R.D. 421 (S.D.N.Y. 1990);

regarding or produce published materials,[10] while six of them did not.[11] And one case did not compel a reporter's testimony where it was unclear what information was being sought.[12] Therefore, 14 of the 24 cases -- or 58% -- required production.

The courts' rationale in these cases are fact intensive. Upon close review of these cases, it becomes apparent that Mattel's request to depose Mr. Palmeri regarding the "hip-huggers" statement -- whether this Court finds it to be published or not -- bears a close relationship to the cases in which courts have compelled production, and is inapposite to cases in which courts have ruled against disclosure.

**A. The Information Sought Is Not Available From Another Source**

Mr. Palmeri does not dispute that only he and Mr. Larian were present during interview and know what was said. Instead, Mr. Palmeri states that his information is not unique because it is one of several statements by Mr. Larian about the origins of Bratz. However, Mr. Palmeri points to no authority for his broad logical leap that Larian's specific statement about his invention of Bratz based on inspiration from his kids is fungible or similar to other Larian statements. There is simply no support for the conclusion that "the information sought" means a general description of a category of information, as opposed to a precise and determinable piece of

---

Gonzales v. National Broadcasting Co., Inc., 194 F.3d 29, 36 (2d Cir. 1999). See also U.S. v. LaRouche Campaign, 841 F.2d 1176, 1180 (1st Cir. 1988) (requiring production of tapes for court's in camera review to determine whether First Amendment privilege should be overcome).

[9] See U.S. ex rel. Vuitton et Fils S.A. v. Karen Bags, Inc., 600 F. Supp. 667 (S.D.N.Y. 1985); Solaia Technology, LLC v. Rockwell Automation, Inc., 2003 WL 22597611, 2 (N.D. Ill. 2003); and Shoen I and II.

[10] See Brinston v. Dunn, 919 F. Supp. 240, 244 (S.D. Miss. 1996); Prince George's County v. Hartley, 822 A.2d 537, 548 (Md. App. 2003); In re Vmark Software, 1998 WL 42252 at *2 (E.D. Pa. 1998); In re Maykuth, 2006 WL 724241 at *3 (E.D. Pa. 2006); SEC v. Seahawk Deep Ocean Tech., Inc., 166 F.R.D. 268, 271-72 (D. Conn. 1996); NLRB v. Mortenson, 701 F. Supp. 244, 250 (D.D.C. 1988); In re Maykuth, 2006 WL 7242421 (E.D. Pa. 2006).

[11] See Re/MAX Int'l, Inc. v. Century 21 Real Estate Corp., 846 F. Supp. 910 (D. Colo. 1994); Parsons v. Watson, 778 F. Supp. 214 (D. Del. 1991); In Re Stratosphere Corporation Securities Litigation, 183 F.R.D. 684 (D. Nev. 1999); United States v. Blanton, 534 F. Supp. 295 (S.D. Fla. 1982); In re Behar, 779 F. Supp. 273 (C.D. Cal & S.D.N.Y. 1991); McCarty v. Bankers Ins., 195 F.R.D. 39, 45 (N.D. Fla. 1998).

[12] See Silkwood v. Kerr-McGee Corp., 563 F.2d 433, 438 (10th Cir. 1977).

information. Shoen II, at 416. Nor is there a basis for asserting that "reasonable alternative sources" means every person that has ever talked to or been in earshot of Larian. Id. Mr. Palmeri appears to suggest that if a party can get any testimony on a related subject, there can be no exhaustion. It that is what Shoen intended, the exhaustion requirement alone would be a complete bar to overcoming the reporter's privilege. That is not what the courts intended in recognizing a qualified privilege, rather than an absolute privilege.

The jury very well might find that the statements Larian made to Mr. Palmeri are more clear, compelling, and reliable, and Mr. Palmeri's testimony is entitled to greater weight than the testimony of others relating to Larian's cover-up of Bryant's invention of Bratz. There is simply no authority for the proposition that Mattel should be deprived of key evidence simply because there is other evidence of inconsistent statements by Larian.

Mr. Palmeri takes Mattel to task for not quoting at length from Mr. Larian's deposition regarding his precise response to each question posed. However, Mattel cited the only testimony that matters -- Larian did not confirm that he made that statement, and indicated (through his testimony that he could not remember making the statement) that he could not confirm the statement.[13] Testimony that Larian did not deny that he “might” have made the statement or that a portion of the statement was related to a true fact is not the same as admissible evidence that Larian actually made that statement. Larian's equivocal testimony does not justify barring Mattel from obtaining unequivocal testimony that is likely to be believed by jurors.

This is not a situation where Mattel has failed to depose other witnesses with knowledge of the statement at issue. See Parsons v. Watson, 778 F. Supp. 214 (D. Del. 1991) (finding no exhaustion where party seeking reporter's testimony failed to depose other participants in the conversation); Shoen II, 48 F.3d at 414 ("at a

[13] Declaration of Robyn Aronson, Ex. B (Larian Depo., March 26, 2008, at 265:12-269:6).

minimum plaintiffs had to depose [the defendant] before seeking [the reporter's] tapes and notes"). Mattel has learned everything it can from other witnesses.[14]

**B. The Information Sought Is Clearly Relevant to Important Issues**

Larian's definitive statement that "[h]e got the idea for Bratz after seeing his own kids run around in navel-baring tops and hip-huggers" is critical to Mattel's allegation that Larian affirmatively covered up Bryant's involvement by telling a reporter for the nation's most popular business magazine in July 2003 he was the true inventor of Bratz. Mattel's claim is that MGA "deliberately and intentionally concealed facts sufficient for Mattel" to learn the truth of Bryant's involvement.[15] The statements that Larian made to Mr. Palmeri are the only statements to the press Mattel has been able to identify in which Larian attributes the invention of Bratz to himself. The statements made to Mr. Palmeri – statements that only Mr. Palmeri can verify – are direct and highly persuasive evidence of intentional, deliberate, consistent conduct calculated to hide Bryant's involvement in Bratz from Mattel, evidence of MGA's knowledge that Mattel was Bratz's true owner – the heart of this lawsuit.[16]

To prove this at trial, Mattel must obtain admissible evidence that Larian did in fact make the statements Mr. Palmeri included in the Article. Mr. Palmeri's claim that the mere existence of the article is sufficient evidence in support of Mattel's claim that it did not discover Bryant's involvement in Bratz until November 2003 does not bear scrutiny. MGA has already taken the position that Mattel cannot

[14] Neither Mr. Larian nor MGA's spokesperson or 30(b)(6) witness regarding the statement could confirm that he made the statement. See Niborski Dec., Ex.24 (Khare Depo., at 718:24-719:20); Ex. 25 (Malacrida Depo., at 194:20-196:24); Ex. 14 (Larian Depo., March 26, 2008, at 268:4-17).

[15] Niborski Dec., Ex. 15 (Mattel, Inc.'s Second Amended Answer in Case No. 05-2727 and Counterclaims, ¶¶ 35-36).

[16] Id. Mattel alleges that "Bryant and MGA deliberately and intentionally concealed facts sufficient for Mattel to suspect or to know that it was the true owner of Bratz," including by "concealing Bryant's role in Bratz by falsely claiming that Larian and others were the creators of Bratz."

introduce the BusinessWeek article at trial to establish the truth of its contents.[17] Even if admitted MGA will try to cast doubt on the accuracy of the media reports, as it has in attacking another reporter's ability to understand Mr. Larian's English or hear him clearly on a telephone line.[18]

Simply put, the importance of Larian's public claim to be the inventor of Bratz nearly three years after Bryant brought Bratz to MGA from Mattel cannot be overstated. In this situation, where no privileged information is being sought by Mattel, Mr. Palmeri's testimony falls within the "broad right of discovery . . . based on the general principle that litigants have a right to 'every man's evidence.'" Shoen I, 5 F.3d at 1292 (quoting United States v. Bryan, 339 U.S. 323, 331 (1950)).

**C. Mr. Larian's Statement To Mr. Palmeri Is Not Cumulative of Any Other Available Testimony or Evidence**

Mr. Palmeri notes that Mattel has obtained testimony from other witnesses on Larian's "conflicting public statements about the origin of Bratz."[19] However, a review of the specific testimony Mattel has obtained demonstrates why it is not cumulative of Mr. Palmeri's testimony:

**1. Testimony of Maureen Tkacik, Wall Street Journal**

Maureen Tkacik, of the Wall Street Journal, interviewed Mr. Larian in early to mid-July 2003. During that interview, Mr. Larian told her that "he chose Mr. Bryant's idea for the Bratz over several others after holding a sort-of fashion-doll design contest in late 1999."[20] Mr. Larian also said that "the Bratz were designed by

---

[17] The BusinessWeek article is Trial Exhibit 631 (M 0074054-M 0074056). MGA has made the following objections to this exhibit: "Hearsay (FRE 801,802); Prejudicial/Confusing (FRE 403); Authenticity/Foundation (FRE 901)." Niborski Dec., Ex. 20 (MGA Defendants and Carter Bryant's Notice of Service of Objections to Mattel's Corrected Revised Exhibit List, dated May 1, 2008; Excerpt from Defendants' Objections, dated May 2, 2008). Bryant also objects to it based on "Hearsay (FRE 801,802)." Id. See, e.g., Vmark, 1998 WL 42252, *1, 3 (discussing inadmissibility of article or reporter's affidavit under hearsay rule).

[18] See Niborski Dec., Ex. 8 (Tkacik Depo., at 37:12-38:2).

[19] Opp. at 18.

[20] Niborski Dec., Ex. 8 (Tkacik Depo., at 8:13-10:14)

Carter Bryant, a former member of the Barbie team."[21]

**2. Testimony of Denise O'Neal, Chicago Sun-Times**

Denise O'Neal, of the Chicago Sun-Times, testified that she met with Mr. Larian within 2 weeks prior to March 5, 2004.[22] During that interview, Mr. Larian did not identify who created Bratz. He merely talked about the need for a doll for girls aged 7 to 13, who had grown out of Barbie, the origin of the Bratz name, and new Bratz products.[23]

**3. Testimony of Jeff Weiss, San Fernando Valley Business Journal**

Jeff Weiss, a reporter for the San Fernando Valley Business Journal, interviewed Mr. Larian in March 2007. Mr. Weiss testified that in his March 29, 2004 article titled, "Immigrants, Creative Company Shakes Up Toy Industry," He wrote:

> "Larian's children have played a crucial role in MGA's development. [¶] 'My oldest son, 17-year-old Jason, is very creative and a music writer. He has come up with some of our popular toys,' Larian said. 'He came up with Commandobot -- a robot that was the first ever robot toy to work on voice recognition. It was a fantastic seller that was featured in Wired magazine. It was Jason's idea for Bratz.'"[24]

However, Mr. Weiss does not remember the interview with Mr. Larian and, although he believes the article is accurate, cannot remember whether Mr. Larian made the quotes contained in the article.[25]

These statements are not cumulative of either one another or Mr. Palmeri's testimony for four reasons. First, only two of the three reporters obtained a statement from Mr. Larian regarding the origins of Bratz (Ms. O'Neal relating to the origins of the Bratz name, and Mr. Weiss relating to Jason Larian's creation of Bratz). Inclusion

[21] Id., at 29:9- 30:13.

[22] Niborski Dec., Ex. 9 (O'Neal Depo., at 16:17-17:13).

[23] Id., at 8:13-14:4.

[24] Niborski Dec., Ex. 29 (Weiss Depo., at 12:14-14:23).

[25] Id., at 12:3-14:17.

of a third and different statement on the subject of Bratz's origins -- one that provides a unique claim that Larian himself created Bratz -- can hardly be considered cumulative.

Second, there has been no testimony supporting the accuracy of Mr. Palmeri's article, therefore, the testimony Mattel seeks is unique. See SEC v. Seahawk Deep Ocean Technology, Inc., 166 F.R.D. 268, 272 (D. Conn. 1996) (reporter ordered to verify published statement by defendants accused of stock manipulation; "[t]here is nothing in the record to indicate other evidence in support of the accuracy of [the] article and, therefore, the testimony sought does not appear to be unduly cumulative").

Third, MGA is likely to challenge the admissibility and the credibility of the reporters' statements, making Mr. Palmeri's testimony all the more important.[26] For example, MGA is likely to challenge the truth of the statement regarding Jason Larian's creation of Bratz in Mr. Weiss's article because Mr. Weiss could not remember Mr. Larian making the statement and Mr. Larian has testified that newspapers often misquote him.[27] In addition, MGA intends to create ambiguity and cast doubt on the accuracy of the media reports, by, for example, attacking the Wall Street Journal reporter's ability to understand Mr. Larian's English.

Finally, evidence of multiple public accounts is necessary to prove that MGA, Larian and Bryant engaged in an ongoing scheme (made up of multiple acts) to conceal the fact that Bryant created Bratz while he was employed by Mattel. Far from constituting a long line of repetitive witnesses, these three accounts are all necessary to establish that Larian participated in the scheme over a period of years by making multiple false public statements attributing creation to himself, his son, and

[26] If MGA's evidentiary challenges to any of these witness's testimony are sustained, the number of witnesses who can testify about Larian's statements to the press instantly shrinks by 33%.

[27] Niborski Dec., Ex. 14 (Larian Depo., July 18, 2006, at 62:24 - 63:1) ("A lot of these reporters -- I've seen some of these articles which put things in there which was not my quote").

Bryant. Proof of one instance of a false statement, such as Larian's statement that his son created Bratz, does nothing to lessen the importance of evidence of a separate misrepresentation that furthers the same conspiracy. See Don King Prod., 131 F.R.D. at 426 (finding that tape-recording of statements by plaintiff that evidenced a breach of duty of good faith and fair dealing to defendant was non-cumulative of other, similar statements, made at a different time, that also evidenced the same breach).[28]

## III. AS THIS COURT AND THE DISCOVERY MASTER HAVE ALREADY DETERMINED, CALIFORNIA'S STATE CONSTITUTIONAL SHIELD LAW DOES NOT APPLY

California's shield law does not apply here. Ninth Circuit law is crystal-clear on the issue, and Mattel will not repeat its arguments here. See Agster v. Maricopa County, 422 F.3d 836 (9th Cir. 2005). If the Court intends to reconsider this issue, Mattel requests that it consider Mattel's arguments from prior briefing.[29]

## IV. THERE ARE NO GROUNDS ON WHICH TO AWARD MR. PALMERI ATTORNEYS' FEES

Mr. Palmeri's request for attorneys' fees is without merit and should be

---

[28] Mr. Palmeri points to U.S. ex rel. Vuitton et Fils S.A. v. Karen Bags, Inc., 600 F. Supp. 667 (S.D.N.Y. 1985), to support its argument that the testimony of Mr. Palmeri would be cumulative. The Vuitton case has no application here. There, a convicted defendant sought production of unbroadcast "outtakes" of a 60 Minutes interview that was aired several months after trial. The court found that defendant had the opportunity to cross-examine the subject of the interview at trial, that the witness's testimony at trial was consistent with the portions of the interview that were broadcast, and there was no reason to believe the outtakes contained anything more interesting than what was broadcast. Thus, the demand for outtakes was merely a "fishing expedition." Id. at 668. Here, Mattel seeks confirmation of published statements for use at a trial where Larian will testify (as he did at deposition) that he does not recall making the statements. Moreover, this is no "fishing expedition:" there is no mystery about what is being sought from Mr. Palmeri, and its importance to the case.

[29] See Mattel's three reply briefs, filed in support of its Motion to Compel the Deposition of Christopher Palmeri, dated February 15, 2008 (Docket No. 2226), Motion Objecting to Discovery Master's February 26, 2008 Order Denying Mattel's Motion to Compel Deposition of Christopher Palmeri, dated April 3, 2008 (Docket No. 2928), and Motion for Reconsideration of February 26, 2008 Order Denying Motion to Compel the Deposition of Christopher Palmeri, dated May 5, 2008 (Docket No. 3460).

rejected. As Mr. Palmeri recognizes, fess should not be awarded where a motion is substantially justified or an award of fees would be unjust.[30] Mattel's motion here is substantially justified. Because the information sought here was published it is not subject to the protections of the privilege. Mr. Palmeri cites no Ninth Circuit authority to the contrary. Moreover, even if the privilege does apply, under the circumstances here it must yield because the information is clearly relevant to important issues, is not cumulative, and Mattel has exhausted all reasonable alternative sources.

The only case Mr. Palmeri cites in support of his request for fees is readily distinguished. (Opp. at 22-23.) In Wright v. Fred Hutchinson Cancer Research Center, 206 F.R.D. 679, 683 (W.D. Wash. 2002), the moving party sought the production of unpublished, confidential research materials. By contrast, Mattel merely seeks verification of the source of a non-confidential published statement. Accordingly, on the law and the facts here, there is no basis on which to award Mr. Palmeri fees.

## CONCLUSION

For the foregoing reasons, Mattel respectfully requests that the Discovery Master's May 8, 2008 Order be overruled and that Christopher Palmeri be compelled to appear for a deposition.

Dated: May 20, 2008

STROOCK & STROOCK & LAVAN LLP

By: /s/ Michael J. Niborski
Michael J. Niborski
Attorneys for Mattel, Inc

[30] Opp. at 22-23 (citing Fed. R. Civ. P. 37(a)(5)(B)).

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On May 20, 2008, I served true copies of the following document(s) described as **MATTEL, INC.'S REPLY IN SUPPORT OF MOTION OBJECTING TO DISCOVERY MASTER'S MAY 8, 2008 ORDER DENYING MATTEL'S MOTION FOR RECONSIDERATION OF FEBRUARY 26, 2008 ORDER DENYING MOTION TO COMPEL DEPOSITION OF CHRISTOPHER PALMERI; AND RENEWED MOTION OBJECTING TO FEBRUARY 26, 2008 ORDER** on the parties in this action as follows:

Robyn Aronson
Davis Wright Tremaine LLP
865 South Figueroa Street
Suite 2400
Los Angeles, California 90017-2566

☐ **BY MAIL:** I am "readily familiar" with the practices of Quinn Emanuel Urquhart Oliver & Hedges for collecting and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. I enclosed the foregoing in sealed envelope(s) addressed as shown above, and such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on that same day following ordinary business practices.

☐ **BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

☐ **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in sealed envelope(s) or package(s) designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) being served.

☒ **BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 20, 2008, at Los Angeles, California.

Candy Liao