# Exhibit 1

1 | Hon. Edward A. Infante (Ret.)
JAMS
2 | Two Embarcadero Center
Suite 1500
3 | San Francisco, California 94111
Telephone:    (415) 774-2611
4 | Facsimile:    (415) 982-5287

5

6

7

8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

EASTERN DIVISION

11

12 | CARTER BRYANT, an individual,

CASE NO. CV 04-09049 SGL (RNBx)
JAMS Reference No. 1100049530

13

14 |        Plaintiff,

15 |            v.

Consolidated with
Case No. CV 04-09059
Case No. CV 05-2727

16 | MATTEL, INC., a Delaware corporation,

**ORDER DENYING MATTEL'S
MOTION FOR PROTECTIVE ORDER
LIMITING THE TEMPORAL SCOPE
OF ITS PRIVILEGE LOG**

17 |        Defendant.

18

19 | CONSOLIDATED WITH
MATTEL, INC. v. BRYANT and
20 | MGA ENTERTAINMENT, INC. v. MATTEL,
INC.

21

22 |        On April 14, 2008, Mattel, Inc. ("Mattel") submitted a "Motion for Protective Order

23 | Limiting the Temporal Scope of Its Privilege Log." Specifically, Mattel seeks a protective order

24 | limiting the temporal scope of its privilege log to documents created before November 24, 2003,

25 | which is the date Mattel allegedly obtained a copy of Carter Bryant's contract with MGA

26 | Entertainment, Inc. If the Court denies Mattel's motion for a protective order and instead requires

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

**EXHIBIT** ___,
**P.** ___.

1

1   Mattel to log documents created up to the date Mattel filed suit against Carter Bryant (April 27,

2   2004), Mattel seeks, in the alternative, an order (a) requiring Carter Bryant to log all documents

3   withheld on claims of privilege that were created up to November 2, 2004, when Bryant filed his

4   complaint for declaratory relief, and (b) requiring MGA to log all documents withheld on claims

5   of privilege that were created up to April 13, 2005, when MGA filed its complaint.

6          On April 22, 2008, MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK)

7   Limited, and MGAE de Mexico S.R.L. de C.V. ("MGA") submitted an opposition, and on April

8   29, 2008, Mattel submitted a reply.  Pursuant to Paragraph 5 of the Stipulation and Order for

9   Appointment of a Discovery Master, the Discovery Master finds it appropriate to take the motion

10  under submission for decision without oral argument.

11         Mattel contends that privileged materials created after November 24, 2003 are not relevant

12  to the claims and defenses in this case, and any burden associated with logging these documents is

13  unjustified, particularly when there are only a few weeks remaining before trial.  Mattel also

14  objects to producing a detailed, document-by-document privilege log because, in its view, the log

15  would provide MGA with an unfair insight into Mattel's litigation strategy on the eve of trial.

16  Mattel also contends that Defendants have known since the summer of 2006 that Mattel was not

17  logging privileged documents that were created in the period leading up to Mattel filing suit, and

18  that MGA should not be heard, at this late date, to complain about the scope of Mattel's privilege

19  log.

20         MGA opposes the motion, contending that Mattel's motion is, in effect, an improper

21  motion for reconsideration of the March 10, 2008 Order compelling Mattel to produce, or to

22  identify on a privilege log, Mattel's "NHB" documents.  MGA also contends that Mattel's motion

23  should be denied because (1) throughout the litigation, the parties' agreement was and remains

24  that all privileged documents would be logged except for documents created after this action was

25  filed on April 27, 2004; (2) there is no evidence that the parties agreed to exclude from their

26

27

28

EXHIBIT __1__,
P. __2__.

2

1 | privilege logs documents that pre-date this action; and (3) the burden of logging only five month's

2 | worth of privileged documents does not justify the relief Mattel seeks.

3 |      Rule 26(b)(5), Fed.R.Civ.P., provides that "[w]hen a party withholds information

4 | otherwise discoverable by claiming that the information is privileged or subject to protection as

5 | trial-preparation material, the party must:  (i) expressly make the claim; and  (ii) describe the

6 | nature of the documents, communications, or tangible things not produced or disclosed--and do so

7 | in a manner that, without revealing information itself privileged or protected, will enable other

8 | parties to assess the claim."

9 |      Parties typically comply with Rule 26(b)(5), Fed.R.Civ.P., by producing a document-by-

10 | document privilege log that identifies the author, recipient, date and general nature of the

11 | document.  See e.g. United States v. Construction Products Research, Inc., 73 F.3d 464, 473 (2d

12 | Cir. 1996).  Rule 26(b)(5), however, does not mandate a privilege log.  Instead, the Advisory

13 | Committee Notes provide as follows:

14 |      The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection.

15 | Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when

16 | voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories. A party can seek relief through a

17 | protective order under subdivision (c) if compliance with the requirement for providing this information would be an unreasonable burden. In rare

18 | circumstances some of the pertinent information affecting applicability of the claim, such as the identity of the client, may itself be privileged; the rule provides

19 | that such information need not be disclosed.·

20 | Advisory Committee Notes to the 1993 Amendments to Rule 26.  Subdivision (c) to Rule 26

21 | provides that "[t]he court may, for good cause, issue an order to protect a party or person from

22 | annoyance, embarrassment, oppression, or undue burden or expense," including, inter alia,

23 | forbidding the disclosure or discovery, forbidding inquiry into certain matters, or limiting the

24 | scope of disclosure or discovery to certain matters. Fed.R.Civ.P. 26(c).

25 |      In the instant case, Mattel has failed to establish the requisite good cause for a protective

26 | order limiting the temporal scope of its privilege log to documents created before November 24,

27 |

28 |

EXHIBIT 1
P. 3

3

1   2003. Mattel bears the burden of establishing its privilege claims for each document, and the

2   generally accepted way to do this – in the absence of a court order or agreement between the

3   parties to the contrary – is a document-by-document privilege log. It is also standard practice to

4   use the date the lawsuit was filed as the cut-off for logging items on a privilege log.

5        Mattel's assertions of undue burden are unpersuasive. Mattel's argument rests upon the

6   declaration of counsel, Timothy L. Alger, which consists of nothing more than generalizations

7   about the burden associated with creating a privilege log:

8        5. Mattel's in-house and outside lawyers generated a substantial quantity
    of privileged materials from November 24, 2003 to April 27, 2004 (the "disputed
9   period"). To prepare a detailed privilege log covering the disputed period, Mattel
    would have to review a large quantity of paper and electronic documents in the
10  files of the Mattel Law Department and outside counsel, compare them with prior
    productions and Mattel's privilege log, and add the appropriate documents to a
11  supplemental log. Even under normal circumstances, such an effort would
    require substantial attorney time and expense. At this point, such a burden would
12  disrupt the operations of the Mattel Law Department during the time leading up to
    trial, and divert significant -- and precious -- attorney and paralegal resources from
13  trial preparation.

14       6. I am familiar with the materials in question. All of the documents that
    Mattel would have to place on a supplemental log for the disputed period were
15  prepared to assist in anticipated or pending litigation or contain information
    reflecting confidential communications between counsel or counsel's
16  representatives and the client or the client's representatives, for the purpose of
    facilitating the rendition of legal services to the client. The authors and recipients
17  of those documents are Mattel employees, members of Mattel's Law Department,
    and outside counsel for Mattel (including Quinn Emanuel).

18

19  Alger Decl., ¶¶5-6. Nowhere does Mattel offer any estimates of how many privileged documents

20  are involved, or attempt to quantify the cost or time associated with producing a privilege log.[1]

21       Lastly, Mattel contends that production of a document-by-document privilege log would

22  reveal aspects of Mattel's litigation strategy on the eve of trial. Mattel's vague and theoretical

23

24

25      [1] Mattel's claim of burden because of the proximity of trial is also unpersuasive. As the
    party seeking to withhold privileged materials, the burden was squarely on Mattel, not MGA, to
26  seek relief from its obligation to produce a privilege log. There is no reason why Mattel could not
    have filed the instant motion earlier in the litigation. The circumstances Mattel now faces are of
    its own making.

27

28

                             **EXHIBIT 1,
    P. 4 .**        4

1  concern over revealing litigation strategy is not a sufficient reason to excuse Mattel from

2  producing a privilege log.

3       Accordingly, Mattel's motion for a protective order limiting the scope of its privilege log

4  is denied.  No later than May 19, 2008, Mattel shall produce a complete privilege log, including

5  all documents for which Mattel claims privilege up to the April 27, 2004 filing date.  Mattel's

6  alternative motion for an order compelling MGA and Carter Bryant to log documents created

7  after this action was filed is also denied.

8       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

9  Master, MGA shall file this Order with the Clerk of Court forthwith.

10

11  Dated: May 6, 2008                    _____/S/_____

12                                        HON. EDWARD A. INFANTE (Ret.)
                                          Discovery Master

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                        **EXHIBIT  1 ,
                                          P.  5  .**

28                                                                              5

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 7, 2008, I served the attached ORDER DENYING MATTEL'S MOTION FOR PROTECTIVE ORDER LIMITING THE TEMPORAL SCOPE OF ITS PRIVILEGE LOG in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on  May 7, 2008, at San Francisco, California.

Anthony Sales

EXHIBIT  1  
P.  6  .

# Exhibit 2

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California  94111
   Telephone:   (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

11

12  CARTER BRYANT, an individual,        CASE NO. CV 04-09049 SGL (RNBx)
                                         JAMS Reference No. 1100049530
13
              Plaintiff,
14
       v.                                Consolidated with
15                                       Case No. CV 04-09059
    MATTEL, INC., a Delaware corporation, Case No. CV 05-2727
16
              Defendant.                 ORDER DIRECTING MATTEL TO
17                                       SUBMIT DOCUMENT NOS.
                                         M0199767-68 AND M0199769-70 FOR
18                                       IN CAMERA REVIEW; GRANTING
                                         MOTION TO COMPEL PRODUCTION
19                                       OF "NHB" DOCUMENTS

20  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
21  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
22

23       On January 28, 2008, MGA Entertainment, Inc. ("MGA") and Carter Bryant ("Bryant")

24  submitted a joint "Motion to Compel Production of Improperly Withheld Mattel Documents

25  Showing Mattel's Investigation of MGA and Carter Bryant Prior to November 2003 and to

26  Compel Production of all 'NHB' Documents."  On February 7, 2008, Mattel, Inc. ("Mattel")

27

28  Bryant v. Mattel, Inc.,                     EXHIBIT 2 ,
    CV-04-09049 SGL (RNBx)                      P. 7 .

1   submitted an opposition, and on February 15, 2008, Mattel submitted a reply. The parties were

2   directed to meet and confer further regarding the motion, which has been completed. The motion

3   was heard on March 10, 2008.

4        This motion raises essentially two issues arising from Mattel's recent request to claw back

5   two documents. The first issue concerns the documents themselves, bearing Bates Nos.

6   M0199767-68 and M0199769-70. MGA and Bryant describe the two documents at issue as

7   follows:

8      "•M0199767-68 reflects a summary of former MGA employee Mercedah Ward's

9      contact with Mattel, including the fact that Mattel employees were reaching out to

10     her in 2001 for information concerning the development and creation of Bratz,

11     and the suggestion that Mattel had concluded that Ward was the source of the

12     anonymous letter Mattel CEO Robert Eckert received in August 2002 – extremely

13     relevant information going, *inter alia*, to the parties' statute of limitations and

14     laches defenses.

15     •M0199769-70 reflects a task list, dated August 10, 2003, including the efforts of

16     Mattel employees to contact MGA employees; a "suspected mole"; the obtaining

17     of human resources files of Mattel employees; the pulling of Carter Bryant's

18     PeopleSoft information and employment file; a reference to Mattel's current trial

19     counsel; and inquiries into MGA and Carter Bryant. The assertion of work

20     product with respect to this document, dated August 2003, is particularly

21     problematic in that it directly contravenes the position Mattel has taken with this

22     Court concerning when it first suspected and began collecting evidence

23     concerning the alleged wrongdoing."

24   Joint Motion at p.1. MGA and Bryant contend that the two documents are responsive to several

25   discovery requests and are not protected by either the attorney-client privilege or the work product

26   doctrine. More specifically, MGA and Bryant contend that the first document at issue does not

27

28                                     EXHIBIT 2

                                        P. 8

1   contain any indicia of a request for legal advice, but rather consists of a summary of underlying

2   facts. MGA and Bryant contend that the second document similarly lacks any evidence that it

3   reflects confidential attorney-client communications, but instead consists of a "to do" list. MGA

4   and Bryant contend that the two documents at issue are not protected by the work product

5   doctrine because the documents were not prepared in anticipation of litigation.

6       Mattel contends that the two documents are protected by the attorney-client privilege. To

7   substantiate its claims of privilege, Mattel submitted the declaration of its counsel, Michael

8   Moore, which states, in pertinent part, as follows:

9           4.      Acting solely as the company's legal advisor, I instructed Adelle Jones, a

10          paralegal within Mattel's Law Department, to prepare for me the document Bates

11          stamped M0199767-68 in 2003. It records information gathered by Ms. Jones at

12          my request and outside counsel's request. I then transmitted the document to

13          outside legal counsel for purposes of obtaining legal advice.

14          5.      Also acting solely as the company's legal advisor, I personally created the

15          document Bates stamped M0199769-70 in 2003. It reflects my communications

16          with and directions from Mattel's outside counsel regarding tasks to be performed.

17          The document also reflects notations from Jill Thomas, Mattel's Assistant General

18          Counsel, and Mattel's outside counsel. I transmitted the document to outside legal

19          counsel for purposes of obtaining legal advice.

20   Decl. of Michael Moore in Support of Mattel's Opposition.

21       An *in camera* inspection of disputed documents is appropriate to resolve claims of

22   privilege. See United States v. Zolin, 491 U.S. 554, 568-69, 109 S.Ct. 2619, 105 L.Ed.2d 469

23   (1989). The practice is both long-standing and routine in cases involving claims of privilege. In

24   re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002, 318 F.3d 379 (2d Cir.

25   2003); see also In re Grand Jury Proceedings, 220 F.3d 568, 571 (7th Cir. 2000). Accordingly,

26

27                                              **EXHIBIT a ,**

28                                              **P. 9 .**

1    Mattel is ordered to submit the disputed documents for *in camera* review no later than March 14,

2    2008.

3        The second issue concerns references to "NHB" in the two clawed back documents. MGA

4    and Bryant contend that Mattel uses the codename "NHB" for MGA. Aside from the two clawed

5    back documents, MGA and Bryant are aware of only one other instance of "NHB" documents in

6    Mattel's document production – the use of "NHB Timeline" across the top of an e-mail that Mattel

7    CEO Robert Eckert forwarded to himself related to this lawsuit. There are no other "NHB"

8    documents in Mattel's production or listed on Mattel's privilege log.

9        MGA and Bryant contend that Mattel should not be able to hide behind its codename for

10   MGA to avoid its discovery obligations. They contend that all documents referencing MGA as

11   "NHB" are responsive to any document requests that call for MGA documents, regardless of the

12   manner in which MGA is referenced. Accordingly, MGA and Bryant request an order

13   compelling Mattel to produce all "NHB" documents that are responsive to MGA's First Set of

14   Requests for Production of Documents and Things dated January 31, 2004 ("MGA's Requests").

15   Joint Motion at p.8.

16       In response, Mattel represents that it "has not withheld from production any non-

17   privileged documents because they contain 'NHB.'" Mattel's Opposition at p.1. Elsewhere Mattel

18   represents that it "has not withheld from production any non-privileged documents on the basis

19   that it uses 'NHB,'" (id. at p.4; see also Alger Decl., ¶2), and that "Mattel is not withholding from

20   production any non-privileged documents that contain 'NHB'." (Id. at .7). As an example, Mattel

21   points to the NHB Timeline. Furthermore, Mattel contends that MGA and Bryant are not entitled

22   to documents simply because they contain a reference to "NHB."

23       MGA and Bryant's motion to compel production of "NHB" documents is granted. Mattel

24   has not confirmed that documents containing "NHB" were searched for in response to MGA's

25   Requests and Mattel's submissions appear to side-step the issue. Mattel has also not confirmed

26   that "NHB" documents were not inadvertently deemed non-responsive and/or overlooked on

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __2__

P. __10__ .

4

1   account of Mattel's use of the codename "NHB."  In other words, Mattel has not confirmed

2   whether documents that refer to MGA only by the "NHB" codename have been reviewed for

3   responsiveness and produced.  In particular, Mattel has not verified whether it has conducted a

4   key word search of its databases using the codename "NHB."  Accordingly, MGA and Bryant's

5   motion to compel production of "NHB" documents is granted.  Mattel shall conduct a search of

6   all "NHB" documents in its databases and produce all "NHB" documents that are responsive to

7   MGA's Requests no later than March 14, 2008.  All responsive documents being withheld on the

8   basis of a claim of privilege must be identified on a privilege log, which must also be produced no

9   later than March 14, 2008.

10          Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

11  Master, MGA shall file this Order with the Clerk of Court forthwith.

12

13  Dated: March 10, 2008

14                              HON. EDWARD A. INFANTE (Ret.)
                                     Discovery Master

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT  2 ,
P.  11 .

5

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on March 10, 2008, I served the attached:  (1) ORDER GRANTING IN PART MATTEL'S MOTION TO COMPEL THE CONTINUED DEPOSITION OF ISAAC LARIAN; (2) ORDER DIRECTING MATTEL TO SUBMIT DOCUMENT NOS. M0199767-68 AND M0199769-70 FOR IN CAMERA REVIEW; GRANTING MOTION TO COMPEL PRODUCTION OF "NHB" DOCUMENTS; (3) ORDER GRANTING CARTER BRYANT'S MOTION TO QUASH MATTEL'S SUBPOENA TO PEOPLES BANK OF THE OZARKS; AND (4) ORDER DENYING MATTEL'S MOTION TO COMPEL A COMPLETE RESPONSE TO MATTEL'S SUPPLEMENTAL INTERROGATORY RE TEST PROJECTS in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com. |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on March 10, 2008, at San Francisco, California.

_____
Sandra Chan

**EXHIBIT 2,**
**P. 12.**

# Exhibit 3

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR EMBARCADERO CENTER

SUITE 3800

SAN FRANCISCO, CALIFORNIA 94111-4144

——

TEL: (415) 984-6400

FAX: (415) 984-2698

www.skadden.com

DIRECT DIAL
(415) 984-6442
DIRECT FAX
(415) 984-2698

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
——
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

May 2, 2008

Ms. Sandra Chan
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA  94111

RE:   Carter Bryant vs. Mattel, Inc.

Dear Ms. Chan:

Enclosed please find the Declaration of Dale Cendali in support of MGA's Opposition to Mattel, Inc.'s Motion for Protective Order Limiting the Temporal Scope of Its Privilege Log, or in the Alternative, Motion to Compel Logging of Privileged Documents by Bryant and the MGA Parties.  Ms. Cendali's declaration is submitted to respond to statements in Mattel's reply brief filed on April 29, 2008, regarding alleged conversations between Ms. Cendali and counsel for Mattel regarding the logging of privileged documents.  I respectfully request that the declaration be presented to Judge Infante for his consideration.

Now that the motion has been fully briefed, I also respectfully request that you apprise Judge Infante of MGA's request that he give expedited consideration to the motion.  The documents that are the subject of Mattel's motion for protective order are central to the statute of limitations issue that is now pending before Judge Larson.  As you may be aware, in Judge Larson's order dated April 25, 2008, Judge Larson deferred ruling on the statute of limitations issue in order to give MGA an opportunity to complete its discovery on this issue and he set the matter for further hearing on May 19, 2008.  (Order Granting in Part, Denying in Part, and Deferring in Part the Parties' Motions for Partial Summary Judgment at 1.)  In order to complete the necessary discovery before the May 19 hearing, it is critical to have Judge Infante's ruling on the scope of Mattel's privilege log as soon as possible.

Thank you in advance for your assistance.

Very truly yours,

José R. Allen

**EXHIBIT  3  ,**
**P.  13  .**

Ms. Sandra Chan
May 2, 2008
Page 2

cc: Michael Zeller
  Jon Corey
  Timothy Alger
  Matthew Werdegar

EXHIBIT 3 ,
P. 14 .

THOMAS J. NOLAN (Bar No. 66992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
E-mail: tnolan@skadden.com

RAOUL D. KENNEDY (Bar No. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Embarcadero Center, 38th Floor
San Francisco, California 94111-5974
Telephone: (415) 984-6400
Facsimile: (415) 984-2698
E-mail: rkennedy@skadden.com

Attorneys for Cross-Defendants
MGA Entertainment, Inc., MGA
Entertainment (HK) Limited,
MGAE De Mexico, S.R.L. De C.V.,
and ISAAC LARIAN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation<br><br>Defendant.<br><br>Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>**DISCOVERY MATTER**<br><br>**[To be heard by Discovery Master Hon. Edward A. Infante (Ret.)]**<br><br>**DECLARATION OF DALE M. CENDALI IN OPPOSITION TO MATTEL, INC.'S MOTION FOR PROTECTIVE ORDER LIMITING THE TEMPORAL SCOPE OF ITS PRIVILEGE LOG, OR, IN THE ALTERNATIVE, MOTION TO COMPEL LOGGING OF PRIVILEGED DOCUMENTS BY BRYANT AND THE MGA PARTIES**<br><br>Hearing Date: TBD<br>Time: TBD<br>Place: TBD |

EXHIBIT _3_,
P. _15_.

I, Dale M. Cendali, declare as follows:

1.     I am a partner of the law firm of O'Melveny and Myers LLP, former counsel to MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V., and Isaac Larian (collectively the "MGA Defendants") and former counsel of record for those parties in the above-captioned litigation. Except where otherwise indicated, I have personal knowledge of the following and, if called upon to do so, could competently testify to the facts set forth herein.

2.     I have reviewed Mattel's Reply in support of Mattel, Inc.'s Motion for Protective Order Limiting the Temporal Scope of its Privilege Log, or, in the Alternative, Motion to Compel Logging of Privileged Documents by Bryant and the MGA Parties, filed on April 29, 2008. Mattel suggests, on page 13 of its Reply, that conversations with me somehow differed than those with my partner, Diana Torres regarding the parties' agreement to log privileged documents. Contrary to those suggestions, however, the substance of my conversations with Mattel and its counsel were no different than the conversations Diana Torres had with Mattel, as set forth in her declaration. As I understand it, the only reason I did not submit a declaration along with that of Ms. Torres originally was that MGA's counsel at Skadden Arps knew that I was tied up at the time in a trial for my clients J. K. Rowling and Warner Brothers Entertainment.

3.     In any case, during the period of time that I represented MGA in this matter, my practice, which I understand, based on my 24 years of experience, to be a standard practice in litigation, was that the parties were to log all privileged documents prior to the commencement of litigation on April 27, 2004. My understanding, as informed by discussions held during a meet and confer session before the Court on June 20, 2006, was that the parties in this litigation were operating under this standard practice. Indeed, as is shown in the transcript attached

-1-

EXHIBIT  3 ,
P.  16 .

as Exhibit 3 to the Declaration of Philip W. Marsh submitted on April 22, 2008, I explained to the court that we wanted Mattel to identify on its privilege log all documents that related to their 2002 internal investigation. Obviously, I would not have been asking the Court to make them identify those entries unless I was expecting them to log all pre-litigation communications.

4. Later, I, along with others at my firm, engaged in a series of telephonic conferences among counsel for each of the parties to this action during July and August, 2006. During the course of one of those conferences, we discussed the logging of privileged documents. During that discussion, Mr. Quinn raised the possibility that Mattel be allowed to forego logging documents between Mattel and its outside counsel for a short period of time preceding the filing of Mattel's complaint against Carter Bryant. Diana Torres and then-counsel for Carter Bryant were present during that conference.

5. At the time Mr. Quinn suggested that Mattel be allowed to forgo some of its privilege-logging obligations, I viewed his suggestion as suspicious because MGA was pressing Mattel for discovery of facts related to MGA's statute of limitations and laches defenses.

6. Consequently, we expressly and immediately rejected that request. We also told Mattel to let us know if they had a specific suggestion in mind. We never heard back from Mattel on this point.

7. The only agreement that the parties reached during those conferences, or at any other time, regarding Mattel's privilege log was that privileged documents created after the filing of Mattel's complaint against Carter Bryant need not be included on the privilege logs prepared by each party, which was something that both sides wanted. At no time did the parties ever agree that privileged documents created prior to the date on which Mattel filed its complaint against Bryant would not

-2-
DECLARATION OF DALE M. CENDALI IN OPPOSITION TO MATTEL'S MOTION FOR PROTECTIVE ORDER LIMITING TEMPORAL SCOPE OF ITS PRIVILEGE LOG
Case No. CV 04-9049 SGL (RNBx)

EXHIBIT 3 ,
P. 17 .

1   need to included on any privilege log or that Mattel would have a special

2   dispensation from the parties' agreement.

3        8.    At no time did Mr. Zeller, Mr. Quinn, or anyone else from Mattel ever

4   disclose to me that Mattel would not be logging documents created before the

5   commencement of litigation on April 27, 2004, and no one from my firm ever

6   informed me that they had heard anyone from Mattel or its counsel make this

7   assertion. In fact, the privilege logs Mattel served included documents prior to and

8   leading up to the commencement of litigation on April 27, 2004, including

9   documents created during the period Mattel refers to in its motion as the "disputed

10  period." Mattel did not give any indication that they would not be logging

11  documents created before the commencement of litigation, and I had no reason to

12  think that they were omitting any documents that predated the litigation from their

13  privilege logs. The first time I heard Mattel disclose that it planned not to log

14  documents that it claimed were privileged that pre-dated the commencement of

15  litigation on April 27, 2004, was when I learned of Mattel's Motion for Protective

16  Order and the statements contained therein to that effect. Had Mattel disclosed its

17  intent not to log documents that pre-dated the commencement of litigation during the

18  summer of 2006, or at any time during my representation of MGA, MGA would

19  have immediately sought the Court's intervention by moving to compel Mattel to log

20  those documents, particularly in view of MGA's statute of limitations and laches

21  defenses.

22       9.    Furthermore, at no time did Mr. Zeller, Mr. Quinn, or anyone else for

23  Mattel ever mention the November 24, 2003 date to me in connection with Mattel's

24  privilege-logging obligations, and no one from my firm ever informed me that they

25  had heard Mattel or its counsel mention this date. In fact, the first time I heard any

26  mention of this date by Mattel in connection with its privilege-logging obligations,

27                                           EXHIBIT_3_

28                                              P._18_

DECLARATION OF DALE M. CENDALI IN OPPOSITION TO MATTEL'S MOTION FOR PROTECTIVE
ORDER LIMITING TEMPORAL SCOPE OF ITS PRIVILEGE LOG
Case No. CV 04-9049 SGL (RNBx)

1 was when I learned of Mattel's Motion for Protective Order and the statements

2 contained therein to that effect.

3

4     I declare under the penalty of perjury under the laws of the United States of

5 America that the foregoing is true and correct.

6

7     Executed on May 2, 2008 at New York, New York.

8

9                              Dale M. Cendali

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                           EXHIBIT 3

27                           P. 19

28

-4-

DECLARATION OF DALE M. CENDALI IN OPPOSITION TO MATTEL'S MOTION FOR PROTECTIVE ORDER LIMITING TEMPORAL SCOPE OF ITS PRIVILEGE LOG
Case No. CV 04-9049 SGL (RNBx)

834282-D.C. Server 1A - MSW

# Exhibit 4

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3223**

WRITER'S INTERNET ADDRESS
**timalger@quinnemanuel.com**

May 2, 2008

**VIA E-MAIL AND FEDERAL EXPRESS**

Hon. Edward A. Infante (Ret.)
c/o Ms. Sandra Chan
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:  MGA Entertainment, Inc. v. Mattel, Inc.

Your Honor:

Mattel, Inc. requests that the Discovery Master disregard the May 2, 2008 letter of Jose R. Allen and the attached Declaration of Dale Cendali (the "Allen Submission"), submitted today in opposition to Mattel's Motion For Protective Order Limiting The Temporal Scope Of Its Privilege Log (the "Motion").  The Allen Submission is untimely and misleading.

First, Mr. Allen's contention that the Motion is important to defendants' statute of limitations defense, and the pending motions for summary judgment, is incorrect.  Defendants have not argued that logging of documents by Mattel after November 23, 2003 is necessary to that defense.  Nor could they, since it is undisputed that Mattel was on notice of its claims against Bryant by that date.  Defendants did not raise the statute of limitations defense in their opposition as a reason to compel logging for the time period at issue.  Nor did they argue to Judge Larson, in conjunction with the summary judgment motions, that they needed a log for the Disputed Period.

Second, the Allen Submission is too late, and there is no justification for its untimely submission. MGA filed its opposition to the Motion on April 22, 2008, along with declarations by former counsel for MGA and Carter Bryant.  Mattel filed its Reply on April 29, 2008.  MGA did not inform the Discovery Master in its opposition that it had additional evidence that was unavailable at that time.  Nor did MGA ask Mattel or the Discovery Master for additional time to collect and submit evidence beyond what was filed with the Discovery Master on April 22, 2008.

EXHIBIT  4 ,
P. 20 .

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

Hon. Edward A. Infante (Ret.)
May 2, 2008
Page 2

The untimely Allen Submission attempts to mitigate the damage to MGA's opposition caused by the conflicting statements in the declarations by Douglas Wickham and Diana Torres submitted on April 22, 2008.

MGA's claimed justification for a belated submission fails. MGA asserts the Allen Submission was necessary because of "statements in Mattel's reply brief" about conversations between Ms. Cendali and Mattel's counsel. Mattel's reply, however, submitted no new evidence regarding those conversations. Rather, Mattel's conversations with Ms. Cendali were described in the Declaration of Michael T. Zeller, filed with the Motion on April 14, 2008. If MGA considered it appropriate to submit a declaration by Ms. Cendali, MGA was required to do so with its opposition. MGA chose not to – and it is now precluded from trying to get in "the last word" with what is effectively a sur-reply.

MGA's other rationale is speculation by Ms. Cendali. Ms. Cendali asserts that: "As I understand it, the only reason I did not submit a declaration along with that of Ms. Torres originally was that MGA's counsel at Skadden Arps knew that I was tied up at the time in a trial." (Paragraph 2.) Neither Ms. Cendali nor Mr. Allen describe any consideration of, or attempt to obtain, a declaration by Ms. Cendali for submission with MGA's opposition brief. In any event, even if true, it still is not justification for an untimely submission. A party's decision not to bother a potential witness until after briefing is completed does not give that party a second bite of the apple, in the hope of fixing problems with their previous submissions.

If the Discovery Master nevertheless considers the Allen Submission, it is notable that Ms. Cendali's declaration – like those of defendants' other former counsel – nowhere attests that Mattel ever agreed to log privileged documents leading up to the filing of its complaint. Indeed, Ms. Cendali confirms that the "only agreement" the parties ever reached was that privileged documents created after the filing of the complaint need not be logged. (Paragraph 7). Like her colleague, Ms. Torres, Ms. Cendali concedes in her declaration that counsel for Mattel stated its position nearly two years ago that it need not log documents created in the period leading up to the filing of the complaint. (Paragraphs 4-6). It remains undisputed that, contrary to MGA's arguments, Mattel never agreed to log privileged documents leading up to the filing of its complaint.

Very truly yours,

Timothy L. Alger

EXHIBIT 4
P. 21

# Exhibit 5

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

1440 NEW YORK AVENUE, N.W.

WASHINGTON, D.C. 20005-2111

TEL: (202) 371-7000

FAX: (202) 393-5760

www.skadden.com

FIRM/AFFILIATE OFFICES
—
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WILMINGTON
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
(202) 371-7167
DIRECT FAX
(202) 661-8317

May 11, 2008

VIA EMAIL

Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

RE:    *Mattel v. Bryant* (and consolidated cases)

Dear Tim:

      I am writing to follow up our discussions on Friday, May 9, 2008, of Mattel's contemplated motion objecting to the Discovery Master's May 6, 2008 Order Denying Mattel's Motion for Protective Order Limiting the Temporal Scope of its Privilege Log. You told me that Mattel intends to seek review of the order, which requires that "[n]o later than May 19, 2008, Mattel shall produce a complete privilege log, including all documents for which Mattel claims privilege up to the April 27, 2004 filing date." (5/6/08 Order at 5.)

      You requested that MGA stipulate to an expedited hearing on May 21, 2008, an accelerated briefing schedule, and relief from the five-day requirement of Local Rule 7-3, for Mattel's contemplated motion. I told you that compliance with the Discovery Master's Order is a time-critical task that Mattel should have completed months ago. Thus, I informed you that MGA would only agree to your requested stipulations if Mattel would be prepared to produce the privilege log immediately on May 21, 2008, should the Court rule against Mattel. You told me that Mattel would not agree, and gave notice that Mattel intended to seek relief from the Court on an *ex parte* basis.

EXHIBIT 5
P. 22

Timothy L. Alger, Esq.
May 11, 2008
Page 2

During the course of our discussions, you claimed that all relevant documents from November 24, 2003 to April 27, 2004 in Mattel's possession are privileged in their entireties, and Mattel would not be producing any of the documents in redacted form. Yet, you conceded that Mattel has not actually reviewed the documents in question, which appears to be incongruous with your characterization of the documents as wholly privileged.

When I asked you to estimate the quantity of responsive documents Mattel is seeking to exclude from its privilege log, and the time that would be required to review such documents, you admitted that you could not. Your inability to even estimate the quantity of documents or the time required to review them calls into question Mattel's position that logging the documents would be overly burdensome. Moreover, Mattel's refusal to log documents it claims are privileged, or to even review responsive documents to assess privilege or to determine their volume stands in stark contrast to Mattel's strenuous arguments that MGA is obligated to log all documents that it claims are privileged and that the privilege log must be sufficiently detailed to enable to Mattel to test MGA's claims of privilege. Mattel labors under the belief that a different standard should apply to its discovery obligations. As Judge Infante has already recognized, Mattel's belief is erroneous. Indeed, Mattel's refusal to review responsive documents and produce a complete privilege log unfairly prevents MGA from even beginning to assess Mattel's wholesale privilege claims much less challenge them in the vigorous manner that Mattel has challenged MGA's privilege claims.

Significantly, you also admitted that Mattel had omitted from its privilege logs *all* "NHB" documents created between November 24, 2003 and April 27, 2004, directly contrary to the explicit wording of the Discovery Master's March 10, 2008 order, which requires that "Mattel shall . . . produce all 'NHB' documents that are responsive to MGA's Requests no later than March 14, 2008," and that "[a]ll responsive documents being withheld on the basis of a claim of privilege must be identified on a privilege log, which must also be produced no later than March 14, 2008." (3/10/08 Order at 5, emphasis added.) You also admitted that you thought there were many such documents that were omitted. Specifically, you said you would expect many, if not all, of the responsive documents from this period to have the codename "NHB" within them, and indicated that all such documents were likely entirely privileged. The fact that Mattel has omitted these documents is particularly surprising since Mattel never challenged the Discovery Master's March 10, 2008 order.

You indicated that you thought there might be some room for compromise between the parties regarding logging groups of documents by category, but said that you were not authorized to make any such offer. Also, I expressed

Timothy L. Alger, Esq.
May 11, 2008
Page 3

concern that such an arrangement would allow non-privileged documents (e.g., factual summaries, etc.) to be lumped within "privileged" categories, and that it would be virtually impossible for MGA to assess or challenge Mattel's privilege claims—an unacceptable situation for MGA.

You also offered to review the responsive documents in question, and provide a declaration verifying that all of the documents are wholly privileged.  I expressed similar concerns about this suggestion, since it also would not provide MGA any meaningful opportunity to assess or challenge Mattel's privilege claims. In any case, your offer is at odds with Mattel's arguments that reviewing the documents for privilege would be overly burdensome, and begs the question why Mattel did not simply perform such a review and provide such a declaration in support of its underlying motion for protective order before the Discovery Master.

It is possible that, had Mattel reviewed the documents and provided the Discovery Master with such a declaration, we would be closer to resolution of this issue today.  Instead, because Mattel has chosen to try to avoid its duty to review responsive documents, as you admit, and has failed to raise the issue until after the close of discovery and after violating the Discovery Master's March 10, 2008 order, we are no closer to resolution through no fault of MGA's.  Indeed, you estimated to me that Mattel would not be able to complete its privilege log until sometime during or after trial.  MGA should not be prejudiced, however, by Mattel's choice to try to avoid its duties to review responsive documents in its possession and provide MGA with information about its privilege claims.  Mattel should begin reviewing the responsive documents and preparing a privilege log immediately—even if it files its contemplated motion—to avoid further prejudicing MGA.

Finally, several times during our discussions, you told me that you believed logging all of the documents compelled under the Discovery Master's order would be a "big waste of time," and that Mattel should instead be focusing on trial preparation at this point.  I told you that MGA's position is that Mattel created the burden it now claims by not properly logging documents that it had agreed to and was under a duty to log.  Mattel should not be excused from the burden that it has created itself.

If you have any questions, or Mattel reconsiders its position regarding any of the above, please feel free to contact me at your convenience.

Sincerely,

*Philip W. Marsh /DP*

Philip W. Marsh

EXHIBIT  5
P.  24

# Exhibit 6

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

12 | CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx)
   |                               | JAMS Reference No. 1100049530
13 |        Plaintiff,             |
14 |    v.                         | Consolidated with
   |                               | Case No. CV 04-09059
15 | MATTEL, INC., a Delaware corporation, | Case No. CV 05-2727
16 |                               | **ORDER GRANTING IN PART**
   |        Defendant.             | **MATTEL'S MOTION TO COMPEL**
17 |                               | **MGA TO PRODUCE**
   |                               | **COMMUNICATIONS REGARDING**
18 |                               | **THIS ACTION**

19 | CONSOLIDATED WITH
   | MATTEL, INC. v. BRYANT and
20 | MGA ENTERTAINMENT, INC. v. MATTEL,
   | INC.
21

22                        I. INTRODUCTION

23     On February 4, 2008, Mattel, Inc. ("Mattel") submitted a "Motion to Compel MGA to

24 Produce Communications Regarding this Action." On February 11, 2008, MGA Entertainment,

25 Inc., Isaac Larian, MGA Entertainment (HK) Limited and MGAE de Mexico S.R.L. de C.V.

26 (collectively "MGA") submitted an opposition. On February 14, 2008, Mattel submitted a reply.

27 On April 9, 2008, Mattel submitted the Second Supplemental Declaration of Dylan Proctor in

28

Bryant v. Mattel, Inc.,                                                    1
CV-04-09049 SGL (RNBx)

EXHIBIT 6
P. 25

1   support of its motion.  The matter was heard on April 11, 2008.

2                               II. BACKGROUND

3          In March of 2005, Mattel propounded its First Set of Requests for Production of

4   Documents and Tangible Things.  Request No. 48 in Mattel's First Set of Requests, the only

5   request at issue in this motion, sought from MGA "[a]ll non-privileged COMMUNICATIONS

6   between YOU and any PERSON that REFER or RELATE TO this action."  MGA objected to the

7   Request on several grounds, including relevancy, overbreadth and undue burden.

8          In January of 2008, Mattel wrote to MGA to request a meet and confer conference

9   regarding Request No. 48.  Mattel offered to narrow the Request to "communications that refer or

10  relate to this action that (i) involve at least one MGA employee who holds or held a position of

11  manager or higher; (ii) involve MGA's agents and/or attorneys acting on MGA's behalf; or (iii)

12  involve a former Mattel employee who communicated about this action while employed by

13  MGA, regardless of title."  Mattel's Motion at p.4.  In response, MGA agreed to search for and

14  produce management-level communications if Mattel would agree to pay the costs.  The parties

15  were unable to reach any agreement regarding Request No. 48, and consequently Mattel filed the

16  instant motion.

17         Mattel seeks an order compelling MGA to produce documents responsive to Request No.

18  48, as narrowed during the meet and confer process.  Mattel contends that the requested

19  communications are likely to lead to impeachment evidence and information about witness biases.

20  Mattel also contends that the requested communications are likely to lead to evidence to support

21  its RICO claims, and in particular, its allegation that MGA has induced Mattel employees to steal

22  Mattel's confidential information or other property and take it with them to MGA, and its

23  allegation that MGA has engaged in spoliation of evidence.

24         Mattel contends that Request No. 48, as narrowed, is limited to MGA's core personnel, its

25  authorized agents and attorneys who communicate about this action, and former Mattel

26  employees at MGA.  Mattel contends that these three groups represent a finite, reasonable list of

27  individuals whose communications about this case are likely to be relevant.  Mattel also contends

28  that cost-shifting is not appropriate because the discovery it seeks is not unduly burdensome.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 6
P. 26

2

MGA objects to the narrowed version of the Request. In MGA's view, the Request remains a generalized catch-all request for communications that might be related in any conceivable way to the case. MGA also objects to the Request because of the sheer number of MGA employees who would fall within its scope (*i.e.*, 204 MGA employees who hold or held a position of manager or higher and approximately 70 former Mattel employees who have worked for MGA) and the cost associated with searching and reviewing employees' files. MGA further contends that Mattel's request for non-privileged communications from MGA's current or prior counsel that refer to this litigation is particularly burdensome for several reasons, including the length of time this case has been pending, the number of firms and attorneys involved, and the difficulty of sorting out privileged communications from non-privileged communications. MGA contends that MGA's motion should also be denied because Request No. 48 is cumulative and duplicative of other discovery Mattel has sought and obtained in this case. In the event the court grants Mattel's motion in any respect, MGA requests that the court shift costs and order Mattel to pay the cost associated with the collection, review and production of responsive documents.

Mattel's most recent submission indicates that during the meet and confer process, MGA agreed to search for and produce, at its own expense, communications relating to this action involving senior MGA personnel and former Mattel employees, if Mattel would limit its request to ten individuals. Mattel countered MGA's proposal with a list of twenty-three individuals. Mattel contends that, at the very least, MGA should be ordered to produce non-privileged communications relating to this action involving the following MGA personnel and former Mattel employees, as well as MGA's counsel: (1) Isaac Larian, (2) Paula Garcia, (3) Maria Elena Salazar, (4) Margaret Leahy, (5) Mercedeh Ward, (6) David Malacrida, (7) Ron Brawer, (8) Daphne Gronich, (9) Craig Holden, (10) Jeanine Posini, (11) Bryan Armstrong, (12) Samir Khare, (13) Janine Brisbois, (14) Carlos Gustavo Machado Gomez, (15) Mariana Trueba Almada, (16) Pablo Vargas San Jose, (17) Susanna Kuemmerle, (18) Schuyler Bacon, (19) Nanette Black, (20) Nick Contreras, (21) Dan Cooney, (22) Jorge Castilla and (23) Jill Hatch.  Second Supp. Proctor Decl.

### III. STANDARDS

In general, parties may obtain discovery regarding any matter, not privileged, that is

EXHIBIT 6,
P. 27.

3

1  relevant to any party's claim or defense.  Fed.R.Civ.P. 26(b)(1).  All discovery, however, "is
2  subject to the limitations imposed by Rule 26(b)(2)(C)."  Fed.R.Civ.P. 26(b)(1).  Pursuant to Rule
3  26(b)(2)(C), Fed.R.Civ.P., the court must limit the frequency or extent of use of discovery
4  otherwise allowed by the Federal Rules of Civil Procedure or by local rule if the court determines
5  that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from
6  some other source that is more convenient, less burdensome, or less expensive; (ii) the party
7  seeking discovery has had ample opportunity to obtain the information by discovery in the action;
8  or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering
9  the needs of the case, the amount in controversy, the parties' resources, the importance of the
10 issues at stake in the action, and the importance of the discovery in resolving the issues."
   Fed.R.Civ.P. 26(b)(2)(C).

11                                    IV. DISCUSSION

12      To the extent Mattel seeks full compliance with the narrowed version of Request No. 48,
13 Mattel's motion is denied.  Even as narrowed, Request No. 48 requires the production of
14 communications concerning a very broad subject matter, namely communications "that REFER or
15 RELATE to this action."[1]

16      The narrowed Request is also objectionable because it is not reasonably tailored to seek
17 the information that Mattel claims it needs.  With respect to Mattel's purported need for evidence
18 relating to witness credibility and bias, the Request is not limited to any particular witness or
19 groups of witnesses in the case.  The Request is also not limited to pertinent subject matters, such
20 as the preservation or spoliation of evidence, a witness' prospective testimony, or MGA's offers or
21 agreements to pay the witness' fees.  Furthermore, with respect to Mattel's purported need for
22 evidence to support its RICO claims, the requested discovery is premature in light of the stay on
23 Phase 2 discovery.

24 _____

25   [1] In its reply brief, Mattel attempts to defend its Request as "well-defined in subject matter" by explaining
     that it is only seeking "communications relating to testimony in, or knowledge or information about, this action; or
26   relating to gathering and collecting documents in this action; or destroying or altering evidence; or payments relating
     to this action."  Mattel's Reply at p. 1.  Mattel, however, did not propose any of these subject matter limitations
27   previously.  Even if it had, the breadth of the narrowed Request would still be unjustified under Rule 26(b)(2)(C),
     Fed.R.Civ.P.

28                                                                                          4

   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)                              EXHIBIT  6 ,
                                                         P. 28 .

The narrowed Request is also unduly burdensome insofar as Mattel seeks non-privileged communications from MGA's current or prior counsel that refer to this litigation. This litigation has been ongoing for nearly four years, during which time discovery has been extensively and aggressively pursued by both sides. Furthermore, to comply with Mattel's narrowed Request, MGA would have to review a considerable number of attorneys' files from the three separate law firms that have represented MGA, and scrutinize every attorney communication for privilege. Under these circumstances, the burden and expense of culling and producing the requested communications involving MGA's attorneys substantially outweigh their likely benefit, taking into consideration all of the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

The narrowed Request also remains overbroad and unduly burdensome because of the number of MGA employees that would fall within its scope. By MGA's estimations, there are 204 MGA employees who hold or have held a position of manager or higher, and approximately 70 former Mattel employees who have worked for MGA. Requiring MGA to review the files of so many employees for potentially responsive communications is unwarranted taking into consideration all of the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.[2]

Request No. 48 is also cumulative and duplicative of discovery that Mattel has sought and obtained in this case. By MGA's calculations, it has produced more than 4.2 million pages of documents in response to over 2700 document requests, several of which call for documents that are also responsive to Request No. 48. See e.g. Mattel's First Set of Requests for Documents and Things re Claims of Unfair Competition to MGA Nos. 7-9, 12, 44; Mattel's First Set of Requests for Production of Documents and Tangible Things to MGA Nos. 31, 49, 50; Mattel's First Set of Requests for Documents and Things to Isaac Larian Nos. 118, 147, 153, 193; and Mattel's Subpoena to Farhad Larian, Request No. 25.

Nevertheless, the court has considered Mattel's eleventh hour request for production of communications involving the twenty-three individuals identified above. Based upon the

---

[2] In its reply brief, Mattel proposes that, at the least, its Request should be granted as to communications involving MGA's senior employees. Mattel's Reply at pp. 1, 10. Although Mattel's proposal reduces the total number of communications involving MGA employees, it is not enough to tip the balance of benefit and burden to justify the Request.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT  6 ,
P. 29 .

information provided in Mattel's supplemental submission, it is evident that communications involving more than half of the individuals identified above may be relevant, if at all, to Phase 2 issues. In view of the stay on Phase 2 discovery, Mattel's request is denied as to the following individuals: Ron Brawer, Janine Brisbois, Carlos Gustavo Machado Gomez, Mariana Trueba Almada, Pablo Vargas San Jose, Susanna Kuemmerle, Schuyler Bacon, Nanette Black, Nick Contreras, Dan Cooney, Jorge Castilla and Jill Hatch.

Daphne Gronich, Craig Holden, Jeanine Posini, Bryan Armstrong and Samir Khare have been or currently are employed in MGA's legal department. As discussed previously, the burden and expense of culling and producing communications involving these five individuals outweigh the likely benefit of the discovery, taking into consideration the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P. Therefore, Mattel's request is denied as to these five individuals.

Mattel's request is granted as to the remaining individuals, namely, Isaac Larian, Paula Garcia, Maria Elena Salazar, Margaret Leahy, Mercedeh Ward, and David Malacrida. Based upon the information provided in Mattel's supplemental submission, communications about this case involving these individuals are likely to be relevant.

## V. CONCLUSION

For the reasons set forth above, Mattel's Motion to Compel MGA to Produce Communications Regarding This Action is granted with respect to communications involving Isaac Larian, Paula Garcia, Maria Elena Salazar, Margaret Leahy, Mercedeh Ward and David Malacrida. Mattel's motion is denied in all other respects.

Nothing in this Order is intended to authorize or preclude Mattel from seeking additional documents responsive to Request No. 48 as part of Phase 2 discovery.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, MGA shall file this Order with the Clerk of Court forthwith.

Dated: April 14, 2008

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

**EXHIBIT 6 ,**
**P. 30 .**

6

# Exhibit 7

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11

12  CARTER BRYANT, an individual,          CASE NO. CV 04-09049 SGL (RNBx)
                                           JAMS Reference No. 1100049530
13            Plaintiff,

14         v.                              Consolidated with
                                           Case No. CV 04-09059
15  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

16            Defendant.                   ORDER DENYING MATTEL'S
                                           MOTION TO COMPEL PRODUCTION
17                                         OF DOCUMENTS BY MGA IN
                                           RESPONSE TO MATTEL'S FIFTH
18                                         SET OF REQUESTS FOR
                                           DOCUMENTS AND THINGS;
19                                         DENYING MGA'S REQUEST FOR
                                           SANCTIONS
20  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
21  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
22

23

24                    I. INTRODUCTION

25      On January 28, 2008, Mattel, Inc. ("Mattel") submitted a Motion to Compel Production of

26  Documents by MGA Entertainment, Inc. ("MGA") in Response to Mattel's Fifth Set of Requests

27  for Documents and Things.  Mattel's Fifth Set of Requests consists of 47 requests for documents

28

EXHIBIT 7
P. 31

1    relating to MGA's corporate governance and structure and relating to the financial relationship

2    between MGA and Isaac Larian ("Larian").  On February 7, 2008, MGA submitted an opposition,

3    and on February 15, 2008, Mattel submitted a reply.  On April 11, 2008, at 3:59 a.m., Mattel

4    submitted the declaration of Melissa Grant in further support of its Motion, which attaches 28

5    exhibits and totals well over 800 pages.  The motion was heard on April 11, 2008.  A few hours

6    after the hearing, MGA submitted the declaration of Bernard Shek in response to Mattel's

7    declaration.

8         Mattel contends that the requested documents are relevant to issues of damages, joint and

9    several liability and enforcement of judgments.  Further, Mattel contends that MGA's and Larian's

10   financial document productions are, in many respects, inadequate.  See Grant Decl. submitted

11   April 11, 2008.  Among other things, Mattel contends that the following documents and

12   information are missing from MGA's production:  identity of the preparer or source of

13   information for the lists of assets and liabilities of Larian and his wife for 2006 and 2007, and the

14   underlying source information for the lists; the identity of the preparer or source of information

15   for the list of banks (including the list of Bear Stearns and Merrill Lynch accounts), and the

16   account numbers and addresses for the listed institutions; detailed "general ledgers" for 1999 and

17   2000; underlying documentation for MGA's general ledgers; underlying information for the

18   entries listed on the 1999 and 2000 "Historical Trial Balance Summaries"; Bratz-specific

19   information regarding individual vendor cost incurred and product development; specific bank

20   information, including statements of accounts, cancelled checks, wire transfers, expense reports,

21   receipts, dividend distribution records, payment vouchers, documentation of salary; shareholder

22   records; the identity of the preparer or source of information for the various spreadsheets and

23   "check" rosters, the underlying source data for these documents, the date they were created, and

24   where they were stored; the source and use of the millions of dollars of wire transfers to and from

25   MGA's Union Bank account that are reflected in the bank records produced by Union Bank; the

26   bank records from other banks that appear to have conducted Bratz business with MGA;

27   comprehensive and verifiable unaudited "profit & loss" statements for 1999 through 2004;

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT 7 ,
P. 33 .

1   information regarding corporate formation, governance, shareholder interests and distributions;

2   and information regarding the rights and interests that MGA's subsidiaries have in Bratz.  Grant

3   Decl.

4          MGA counters that Mattel has made only generalized assertions of relevancy, which

5   MGA contends are insufficient to justify each of the requests at issue.  MGA also contends that

6   the requests at issue are objectionable because they are overbroad, unduly burdensome, and

7   duplicative or cumulative of other discovery Mattel has already sought and received.

8                                      II. DISCUSSION

9          Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

10  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

11  party."  Fed.R.Civ.P. 26(b)(1).  The court shall, however, limit the frequency or extent of use of

12  the discovery methods if the court determines that (i) the discovery sought is unreasonably

13  cumulative or duplicative, or is obtainable from some other source that is more convenient, less

14  burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by

15  discovery in the action to obtain the information sought; or (iii) the burden or expense of the

16  proposed discovery outweighs its likely benefit, taking into account the needs of the case, the

17  amount in controversy, the parties' resources, the importance of the issues at stake in the

18  litigation, and the importance of the proposed discovery in resolving the issues.  Fed.R.Civ.P.

19  26(b)(2)(C).

20         Mattel's motion is denied as to Request Nos. 1-11 and 23-47.  Although the requests may

21  encompass relevant documents, they are overbroad and unduly burdensome, taking into

22  consideration all of the factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.  These requests are

23  overbroad because, among other things, Mattel defines "YOU," "YOUR" and "MGA" to mean

24  "all current or former subsidiaries, divisions, AFFILIATES [defined as 'any and all corporations,

25  proprietorships, d/b/a's, partnerships, joint ventures and business entities of any kind that, directly

26  or indirectly, in whole or in part, own or control, are under common ownership or control with, or

27  are owned or controlled by a PERSON, party, or entity, including without limitation each parent,

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT  7  ,
P. 33  .

1  subsidiary and joint venture of such PERSON, party, or entity"], predecessors-in-interest and

2  successors-in-interest."  Jih Decl., Ex. 1.

3       Many requests are also overbroad and unduly burdensome because they seek documents

4  from before 1999.  See Request Nos. 4-7.  Mattel has made no attempt to place a reasonable

5  temporal scope on its requests.  Many requests are also cumulative, duplicative, and unduly

6  burdensome because they seek documents previously requested and received by Mattel.  See e.g.

7  MGA's Objections and Responses to Mattel's Fifth Set, p. 13.  Although Mattel has identified

8  some purported deficiencies in MGA's production of financial documents, these purported

9  deficiencies do not justify the substantial breadth and burden of the discovery Mattel now seeks.

10       Mattel's motion is also denied as to Request Nos. 12-22.  Although these requests seek

11  relevant financial documents relating to Larian, they are overbroad and unduly burdensome.

12  Furthermore, Mattel has already propounded and received substantial discovery seeking the same

13  or similar information.  See MGA's Objections and Responses to Mattel's Fifth Set, p. 44.  By

14  MGA's estimation, MGA has produced tens of thousands of pages of documents, including

15  documents showing Larian's net worth, gross income and its sources, and pertinent banking

16  information.  Although Mattel has identified some purported deficiencies in the production of

17  Larian's financial documents, these purported deficiencies do not justify the broad discovery

18  Mattel now seeks.

19                  III. CONCLUSION

20       For the reasons set forth above, Mattel's motion to compel is denied.  MGA's request for

21  sanctions is denied.  Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a

22  Discovery Master, MGA shall file this Order with the Clerk of Court forthwith.

23

24  Dated: April 14, 2008

25                        HON. EDWARD A. INFANTE (Ret.)

                           Discovery Master

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                   **EXHIBIT 7 ,**

                     **P. 34 .**

4

# Exhibit 8

Case 2:04-cv-09049-DOC-RNB   Document 3722-3   Filed 05/20/08   Page 43 of 130   Page ID
#:68243
Case 2:04-cv-09049-SGL-RNB   Document 3669   Filed 05/12/2008   Page 1 of 9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES — GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                          Date: May 12, 2008
Title:      CARTER BRYANT -v- MATTEL, INC.

<u>Consolidated With Related Actions</u>:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
====================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

         Jim Holmes                              Theresa Lanza
         Courtroom Deputy Clerk                  Court Reporter

<u>ATTORNEYS PRESENT FOR CARTER BRYANT</u>:          <u>ATTORNEYS PRESENT FOR MATTEL</u>:

                                                 Jon D. Corey
Matthew M. Werdegar                              Harry A. Olivar
                                                 Timothy L. Alger
                                                 Diane Hutnyan


<u>ATTORNEYS PRESENT FOR MGA PARTIES</u>:            <u>ATTORNEYS PRESENT FOR THIRD PARTIES</u>

Thomas J. Nolan                                  Sandra I. Tholen
Raoul D. Kennedy                                 for Matthew Bousquette

                                                 Christian C. Dowell
                                                 for AnaElise Cloonan, Margaret Hatch-Leahy,
                                                 and Veronica Marlow


**PROCEEDINGS:    ORDER RULING ON DISCOVERY MOTIONS**

        The Court heard argument regarding eleven motions seeking review of various orders of
the Discovery Master.

MINUTES FORM 90                                          Initials of Deputy Clerk:  jh
CIVIL — GEN                    Page 1                    Time:  1/35

EXHIBIT _8_,
P. _35_.

Case 2:04-cv-09049-DOC-RNB   Document 3722-3   Filed 05/20/08   Page 44 of 130   Page ID
Case 2:04-cv-09049-SGL-RNB   Document 3669   Filed 05/12/2008   Page 2 of 9
#:68243

As agreed by the parties and as ordered by the Court, the Court reviews the orders of the Discovery Master under the standard set forth in Fed. R. Civ. P. 72(a), and will modify or set aside only those parts of the Discovery Master's orders that are clearly erroneous or contrary to law. This is a deferential standard, under which the Court upholds rulings on issues that it perhaps would have resolved differently if presented with them in the first instance.

With this standard in mind, the Court **DENIES** the following motions as neither clearly erroneous nor contrary to law:

2.    Docket # 3338 Mattel's Motion for Review of and Objecting to Discovery Master's April 14, 2008 Order Granting in Part Mattel's Motion to Compel Communications Regarding this Action;

5.    Docket # 3443 Mattel's Motion Objecting to Portions of Discovery Masters April 14, 2008, Order Denying Motion to Compel Production in Response to Mattel's Fifth Set of Request for Production of Documents;[1]

8.    Docket # 3334 Mattel's Motion to Set Aside Order of Discovery Master, dated April 11, 2008, Granting in Part MGA's Motion to Compel Mattel to Produce a Witness Pursuant to Notice of Deposition Pursuant to Rule 30(b)(6);[2]

10.   Docket # 3289 Mattel's Motion for Review of and Objecting to Portions of the Discovery Master's April 11, 2008 Order Granting in Part and Denying in Part Mattel's Motion to Compel Production of Electronic Media from Third Parties Elise Cloonan, Margaret Hatch-Leahy and Veronica Marlow;

11.   Docket # 3287 Ana Elise Cloonan's Motion Objecting to Portions of the Discovery Master's April 11, 2008, Order Regarding Further Examination of Ms. Cloonan's Computer and Zip Disk; and

---

[1]  The Court considered the issues as presented to the Discovery Master rather than the more narrow issues presented by Mattel's post hoc efforts to compromise. See Motion at 4 n.17.

[2]  At the hearing, counsel raised two points regarding this motion in need of clarification. First, the parties' positions differ as to whether the need for discovery regarding Mattel employees who have refused to sign the Inventions Agreement has been mooted by the Court's Order addressing the parties' motions for partial summary judgment. It has not. The Court's ruling that the Inventions Agreement is enforceable is based strictly on contract construction and does not take into account the unresolved equitable affirmative defenses. Second, the parties are in agreement that four issues, set forth in Mattel's Reply at 10-11, are related only to Phase 2. Although the Court at this time upholds the Discovery Master's Order compelling testimony regarding these topics, the deposition as to these four Phase 2 topics is nevertheless subject to the Order staying all Phase 2 discovery.

EXHIBIT 8
P. 36

12.    Docket # 3483 Mattel's Motion for Review of Discovery Master's April 22, 2008 Order Denying Motion To Compel Additional Deposition Testimony Of Veronica Marlow.

The issues raised in each of the above motions represent the Discovery Master's balancing of relevant factors against the burdens of production, and the relevant findings and conclusions are neither clearly erroneous nor contrary to law.

The Court **GRANTS** the following motion:

1.    Docket # 3314 MGA's Motion for Review of Discovery Master's April 22, 2008 Order Granting Matthew Bousquette's Motion To Quash Subpoena.

The Discovery Master improperly concluded that Mr. Bousquette does not reside in California. Based on the evidence before this Court that Mr. Bousquette owns a residence (upon which he claimed a California homeowner's exemption) and business in California; is registered to vote in California; holds a California driver license and has registered several motor vehicles with the state of California Department of Motor Vehicles, the Court finds that Mr. Bousquette is in fact a resident of California. The Court therefore sets aside the Discovery Master's Order quashing the subpoena of Matthew Bousquette. The Court orders that Mr. Bousquette be deposed on May 17, 2008, in Palm Springs, California, the city of his residence.

The Court **GRANTS IN PART AND DENIES IN PART** the following motion:

4.    Docket # 3398 Mattel's Motion Objecting to Discovery Master's Denial of Motion to Compel Production of Document Bates Numbered MGA 3801819-22.

The Discovery Master did not consider this motion on its merits, instead ruling that he would not decide motions filed after April 16, 2008. The Court, therefore, considers the motion in the first instance and rules as follows:

Although styled a motion to compel production of a four-page document, the motion, in substance, is addressed to two lines redacted from MGA 3801819. The redacted lines are composed of three parts: (1) A listing of three first names, separated by slashes, and followed by a colon; (2) a request addressed to the three named people (consisting of a five-word sentence); and (3) a one-sentence declaration addressed to them.

In a declaration filed with the Court, Mr. Larian, the author of the redacted message, states that the purpose of this message was to seek legal advice. Notwithstanding this declaration, only the second of the three parts of the redaction is reasonably susceptible to the meaning Mr. Larian attributes to the whole. Absent even from this part is language that suggests legal advice was sought, such as: "Let me know what you think," "Please advise," or "Let's discuss further." Nevertheless, Mr. Larian states that the purpose of this message was to seek legal advice and, because this language is reasonably susceptible to that meaning, the Court holds that the five-word sentence beginning with the polite "Please" and ending the with the temporal acronym

EXHIBIT  8  ,
P. 37 .

"ASAP" is privileged and may remain redacted.

The third part, the declarative sentence, is not reasonably susceptible to the seeking of legal advice:   It is a declaration by MGA's CEO to a number of employees of what must be done – or, more accurately, what must not be done.  It is edict, not inquiry.

To the extent that it may be contended by MGA or Mr. Larian that the two sentences must be read in harmony to comprise one singular message, the declarative nature of the third part, when read together with the lack of inquiry language of the second part, would lead the Court only to the conclusion that the second part is also not privileged; it would not compel a conclusion that the third part is also privileged.

Accordingly, MGA must provide to Mattel, within two days of the entry of this Order, a copy of MGA 3801819 that eliminates the redaction of the three names that identifies to whom the message is addressed and of the sentence that begins, "There must be no mention of," and ends with "etc.".

The Court **DENIES** the following motion:

6.      Docket # 3410 MGA's Motion Objecting to Discovery Master's April 25, 2008, Order Denying MGA's Motion to Compel Discovery on Issues as to Which Mattel has Waived the Attorney-Client and Work Product Privileges;

On April 25, 2008, the Discovery Master issued a well-reasoned order denying MGA's motion to compel discovery as to issues upon which MGA contended Mattel had waived the attorney-client and work product privileges.  The Court leaves this Order undisturbed, and therefore **DENIES** MGA's motion.

The Discovery Master correctly applied the so-called <u>Hearn</u> test, which traces its roots back to the district court opinion of <u>Hearn v. Rhay</u>, 68 F.R.D. 574, 581 (E.D. Wash. 1975), to determine whether Mattel had waived the privilege as to materials related to the accrual of its claims.  That test may be stated as follows:

> First, the court considers whether the party is asserting the privilege as the result of some affirmative act, such as filing suit. . . .  Second, the court examines whether through this affirmative act, the asserting party puts the privileged information at issue. . . .  Finally, the court evaluates whether allowing the privilege would deny the opposing party access to information vital to its defense.

<u>United States v. Amlani</u>, 169 F.3d 1189, 1195 (9th Cir. 1999) (internal quotation marks and citation omitted).

In applying this test, the Discovery Master ruled that the first element was met, and this

---

MINUTES FORM 90                                                        Initials of Deputy Clerk:  jh
CIVIL – GEN                          **Page 4**                         Time:  1/35

EXHIBIT _8_,
P. _38_.

Case 2:04-cv-09049-DOC-RNB   Document 3722-3   Filed 05/20/08   Page 47 of 130   Page ID
#:68245
Case 2:04-cv-09049-SGL-RNB   Document 3669   Filed 05/12/2008   Page 5 of 9

ruling is unchallenged by the parties. However, the Discovery Master also ruled that the second and third elements were not met. These rulings are challenged by MGA.

Although the court finds the second element a close call, the third element is clearly not met. Although Mattel has privileged information relevant to a determination of claim accrual, unless MGA would otherwise be denied evidence on this crucial topic, the privilege is not waived:

> It is true that privileged communications do not become discoverable simply because they are related to issues raised in the litigation. . . . When the sought-after evidence is only one of several forms of indirect evidence about an issue, the privilege has not been waived.

Id. (internal alteration marks, quotation marks, and citations omitted). Here, MGA has had access to, and has presented to the Court in connection with the motions for partial summary judgment, other forms of material evidence regarding the accrual date of Mattel's claims. Accordingly, the Discovery Master's Order on this issue was neither clearly erroneous nor contrary to law, as all three elements must be present to find waiver. See Home Indem. Co. v. Lane Powell Moss and Miller, 43 F.3d 1322, 1327 (9th Cir. 1995) (assuming the first two elements of the Hearn test had been met but nevertheless finding no waiver because the third element was not). Because the Court finds that the Discovery Master correctly ruled that the third element was not met, thus necessitating denial of the present motion, the Court does not consider what is effectively an alternative basis for denial, i.e., whether the second element was met.

In connection with its ruling on this issue, the Court has received and reviewed the unredacted version of the De Anda email referred to by the parties at the summary judgment hearing.

The Court **GRANTS IN PART AND DENIES IN PART** the following motion:

7.    Docket # 3333 Mattel's Motion for Review of and Objecting to Portions of Discovery Master's April 14, 2008 Order Granting in Part and Denying in Part Mattel, Inc.'s Motion to Compel Production of Documents and Things.

The Discovery Master denied the motion to compel as overly broad and unduly burdensome. He also held that the requested discovery is not relevant and that it is unreasonably cumulative of other discovery.

The Discovery Master erred in concluding that Mattel failed to establish the relevancy of its requests. The four requests which are at issue in this motion – Nos. 6, 15, 23, and 25 – are clearly relevant to Mattel's claims and defenses. Specifically, as set forth at page 5 of Mattel's motion, MGA has challenged the protectibility of the Bratz drawings, has asserted that its three-dimensional dolls cannot infringe the two-dimensional Bratz drawings, and has contended that the dolls are not substantially similar to the Bratz drawings. To the extent that MGA has contended otherwise in other litigation – especially to the extent that they have <u>successfully</u> contended

EXHIBIT 8 ,
P. 39 .

otherwise in other litigation -- they are relevant to the issue of judicial estoppel.[3] To a lesser extent, they may be relevant as impeachment evidence.

Because a determination of whether discovery sought is unduly burdensome represents a balancing test (with relevancy being among the counterweights), see Fed. R. Civ. P. 26(c)(iii), the failure to discern the relevancy of evidence effects the accuracy of that balancing. In accordance with this concern, the Court examines the ruling as to each of the four requests at issue.

As to request number 6, the Court finds that the Discovery Master's ruling that the request is overly broad and unduly burdensome is neither clearly erroneous or contrary to law. Although such language is frequently used, the phrase requesting production of "all documents that refer or relate to" a given topic is fraught with the possibility that the request will be overly broad and unduly burdensome.

As to requests 15 and 23, the Court finds that the Discovery Master's ruling regarding overbreadth, burdensomeness, and unreasonable cumulativeness is contrary to law. Without focusing on the relevance of the judicial estoppel issue, it is tempting in this case to say that the tens of thousands of documents produced regarding a particular issue are enough. However, in asserting a judicial estoppel defense, Mattel is entitled to discover the known universe of court documents in which MGA has made statements regarding what products it contends has infringed its Bratz products, as well as any court orders addressing its statements. To the extent that MGA may have successful in staking out a position regarding its rights to Bratz that is contrary to positions taken in these consolidated actions, the integrity of the judicial process also supports discovery of documents establishing that fact.

Accordingly, the Court **ORDERS** that MGA produce within five days all non-privileged documents that are responsive to requests 15 and 23 (and that have not already been produced) that are in the custody or control of MGA or MGA's current or former counsel.

As to request 25, the Court finds that the Discovery Master's ruling that the request is overly broad and unduly burdensome is neither clearly erroneous or contrary to law. The requests presented in this motion represent a spectrum of burdensomeness. At one end is the request of "all documents that refer or relate to" Bratz claims, which represents a clearly burdensome production of documents. At the other end is the request for court documents that are likely to be maintained by counsel separately from other documents and that are not particularly burdensome to produce. In the middle is this request, which seeks "all documents" claiming infringement as to Bratz products. Here, although a closer call, which the Court may have decided it differently if it decided it in the first instance, the Court cannot conclude that the Discovery Master's ruling was

---

[3]  In addition to being important to a defense advanced by Mattel, the doctrine of judicial estoppel, also known as the doctrine of preclusion of inconsistent positions, serves to protect the integrity of the judicial process. See Helfand v. Gerson, 105 F.3d 530, 534 (9th Cir. 1997).

EXHIBIT  8  ,
P.  40  .

Case 2:04-cv-09049-DOC-RNB   Document 3722-3   Filed 05/20/08   Page 49 of 130   Page ID
#:62243
Case 2:04-cv-09049-SGL-RNB   Document 3669   Filed 05/12/2008   Page 7 of 9

clearly erroneous or contrary to law. If, for instance, the request at issue was a more narrow request, such as one limited only to documents (such as cease-and-desist letters) sent to third parties, the Court might have decided otherwise. However, as the request was propounded, and as the Discovery Master ruled, the Court can discerns no clear factual error or error of law.

Accordingly, the Court **GRANTS** the Motion as to requests 15 and 23, but **DENIES** the motion as to request 6 and 25.

Finally, the Court **DENIES** the following motion:

9.      Docket # 3233 Mattel's Motion for Review of the Discovery Master's April 11, 2008, Order Denying Mattel's Application to Enforce Court Orders Compelling Production of Tangible Items; Motion to Enforce those Orders and to Compel Production of the Tangible Items.

The Court's February 4, 2008, Order, granted in part Mattel's ex parte application addressing the issue presented by this motion. The Discovery Master correctly interpreted the Court's Order as implicitly denying the those portions of the ex parte application not explicitly granted.

As set forth on the record, the Court will hear further argument on the motions for partial summary judgment and will hear the motion for reconsideration during the afternoon of May 19, 2008, beginning at 1:30 p.m. The pretrial conference will be held at that time as well. The following morning, May 20, 2008, at 9:00 a.m., jury selection will begin. Once a jury has been selected, the Court will consider any pending discovery motions and the parties' motions in limine. Opening statements are set to begin May 27, 2008.

**IT IS SO ORDERED.**

Initials of Deputy Clerk: jh
Time:  1/35

EXHIBIT _8_ ,
P._41_ .

# NOTICE PARTY SERVICE LIST

**Case No.** CV 04-09049 SGL(RNBx)   **Case Title** Carter Bryant v. Mattel, Inc.

**Title of Document** Court Minutes of May 12, 2008

| | |
|---|---|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|---|---|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✔ | ***ADD NEW NOTICE PARTY*** (if sending by fax, mailing address must also be provided) |
|---|---|

Name: Hon. Edward A. Infante (Ret.)

Firm:

Address *(include suite or floor)*:  Two Embarcadero

Center, Suite 1500, San Francisco, CA 94111

*E-mail:

*Fax No.:

\* For CIVIL cases only

| ***JUDGE / MAGISTRATE JUDGE (list below):*** |
|---|
| |
| |
| |

**Initials of Deputy Clerk** jh

**EXHIBIT** 8

**P.** 42

# NOTICE PARTY SERVICE LIST

**Case No.**   CV 04-09049 SGL(RNBx)   **Case Title**   Carter Bryant v. Mattel, Inc.

**Title of Document**   Court Minutes of May 12, 2008

| | |
|--|--|
| | Atty Sttlmnt Officer Panel Coordinator |
| | BAP (Bankruptcy Appellate Panel) |
| | Beck, Michael J (Clerk, MDL Panel) |
| | BOP (Bureau of Prisons) |
| | CA St Pub Defender (Calif. State PD) |
| | CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) |
| | Case Asgmt Admin (Case Assignment Administrator) |
| | Catterson, Cathy (9th Circuit Court of Appeal) |
| | Chief Deputy Admin |
| | Chief Deputy Ops |
| | Clerk of Court |
| | Death Penalty H/C (Law Clerks) |
| | Dep In Chg E Div |
| | Dep In Chg So Div |
| | Federal Public Defender |
| | Fiscal Section |
| | Intake Section, Criminal LA |
| | Intake Section, Criminal SA |
| | Intake Supervisor, Civil |
| | PIA Clerk - Los Angeles (PIALA) |
| | PIA Clerk - Riverside (PIAED) |
| | PIA Clerk - Santa Ana (PIASA) |
| | PSA - Los Angeles (PSALA) |
| | PSA - Riverside (PSAED) |
| | PSA - Santa Ana (PSASA) |
| | Schnack, Randall (CJA Supervising Attorney) |
| | Statistics Clerk |

| | |
|--|--|
| | US Attorneys Office - Civil Division -L.A. |
| | US Attorneys Office - Civil Division - S.A. |
| | US Attorneys Office - Criminal Division -L.A. |
| | US Attorneys Office - Criminal Division -S.A. |
| | US Bankruptcy Court |
| | US Marshal Service - Los Angeles (USMLA) |
| | US Marshal Service - Riverside (USMED) |
| | US Marshal Service -Santa Ana (USMSA) |
| | US Probation Office (USPO) |
| | US Trustee's Office |
| | Warden, San Quentin State Prison, CA |

| ✔ | **ADD NEW NOTICE PARTY** (if sending by fax, mailing address must also be provided) |
|--|--|
| | Name: Ambassador Pierre-Richard Prosper |
| | Firm: |
| | Address *(include suite or floor)*: P.O. Box 581103 Salt Lake City, UT  84158 |
| | |
| | *E-mail: Prosper.Pierre@Arentfox.com |
| | *Fax No.: |

\* For CIVIL cases only

| *JUDGE / MAGISTRATE JUDGE (list below):* |
|--|
| |
| |
| |

**Initials of Deputy Clerk** jh

EXHIBIT 8,
P. 43.

# Exhibit 9

Page 1

1                  UNITED STATES DISTRICT COURT

2                  CENTRAL DISTRICT OF CALIFORNIA

3                        EASTERN DIVISION

4                            - - -

5          HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                            - - -

7   CARTER BRYANT, ET. AL.,            )
                                       )
8                    PLAINTIFFS,       )
                                       )
9            VS.                       )   NO. ED CV 04-09049
                                       )   (LEAD LOW NUMBER)
10  MATTEL, INC., ET. AL.,             )
                                       )
11                   DEFENDANTS.       )   HEARING
    _____)
12  AND CONSOLIDATED ACTIONS,          )
                                       )

13

14

15           REPORTER'S TRANSCRIPT OF PROCEEDINGS

16                LOS ANGELES, CALIFORNIA

17                MONDAY, MAY 12, 2008

18                    10:02 A.M.

19

20

21

22

23           THERESA A. LANZA, RPR, CSR
            FEDERAL OFFICIAL COURT REPORTER
24            3470 12TH STREET, RM. 134
            RIVERSIDE, CALIFORNIA  92501
25                951-274-0844
               WWW.THERESALANZA.COM

EXHIBIT 9,
P. 44.

Page 34

1    WITNESS.  I KNOW THERE ARE ISSUES TO BE TAKEN UP IN THE MOTIONS

2    IN LIMINE THAT WE'RE GOING TO BE DISCUSSING NEXT WEEK.  THERE'S

3    NOTHING ABOUT THIS ORDER WHICH IS -- THAT'S NOT THE BASIS FOR

4    IT.  I RESPECTFULLY BELIEVE THAT JUDGE INFANTE WAS ERRONEOUS

5    WITH RESPECT TO HIS FINDING ON RESIDENCY.

6              MR. NOLAN:  YOUR HONOR, ASSUMING THAT THIS IS EVEN

7    POSSIBLE, IF IT TURNS OUT THAT IT'S MORE CONVENIENT FOR THE

8    PARTIES TO DO THE DEPOSITION IN LOS ANGELES ON SATURDAY -- AND

9    I DON'T KNOW IF IT IS -- WOULD THAT BE OKAY, AS LONG AS IT'S

10   AGREED TO BY ALL OF THE PARTIES?

11             THE COURT:  GIVEN THE HISTORY IN THIS CASE, THE

12   PARTIES MAY SUBMIT A STIPULATION AND A PROPOSED ORDER TO THE

13   COURT MODIFYING THE COURT'S ORDER.  BUT THE ORDER THAT I'M

14   GOING TO ISSUE -- I'M LEAVING FOR BOSTON TONIGHT, SO I PROBABLY

15   WON'T GET THIS ORDER OUT UNTIL WEDNESDAY -- BUT THE ORDER THAT

16   WILL GO OUT ON WEDNESDAY WILL BE ORDERING THAT IT TAKE PLACE IN

17   PALM SPRINGS.  IF YOU WANT TO MODIFY THAT BY STIPULATION, THE

18   COURT HAS BEEN GENERALLY RECEPTIVE TO STIPULATIONS.

19             MR. NOLAN:  I HEAR IT'S NICE THIS TIME OF YEAR THERE.

20             THE COURT:  I JUST DON'T WANT TO GET THIS OFF ORDER.

21             MR. COREY:  THANK YOU, YOUR HONOR.

22             MR. NOLAN:  THANK YOU, YOUR HONOR.

23             THE COURT:  LET'S LOOK AT MOTION NUMBER FIVE.

24             THIS IS A MOTION OBJECTING TO PORTIONS OF THE

25   DISCOVERY MASTER'S APRIL 14, 2008 ORDER DENYING THE MOTION TO

1    COMPEL PRODUCTION IN RESPONSE TO MATTEL'S FIFTH SET OF REQUESTS

2    FOR PRODUCTION.

3             I WANT TO START WITH MATTEL ON THIS, BECAUSE THIS

4    ISSUE ACTUALLY PERVADES A FEW OF THESE MOTIONS, AND IT AFFECTS

5    HOW THE COURT IS REVIEWING THESE DECISIONS BY THE DISCOVERY

6    MASTER.

7             AS I'M SEEING IT RIGHT NOW, THE ISSUE IS WHAT WAS

8    BEFORE THE DISCOVERY MASTER AT THE TIME THE DISCOVERY MASTER

9    RULED AND WHETHER OR NOT HE FOUND THAT THERE WAS AN OVERBURDEN

10   OR CUMULATIVE OR WHATEVER; NOT AS MODIFIED OR PROPOSED TO BE

11   MODIFIED BY MATTEL.  A NUMBER OF TIMES, THIS ARGUMENT -- IT'S

12   LIKE, A REQUEST IS MADE; MATTEL DOESN'T PRODUCE; THERE'S A

13   MEET-AND-CONFER IN ANTICIPATION OF THE DISCOVERY MASTER'S

14   ORDER; DIFFERENT LIMITATIONS ARE PROPOSED; NOTHING COMES OF IT;

15   BUT WHAT JUDGE INFANTE ULTIMATELY DECIDES UPON IS THE ACTUAL

16   REQUEST AS ORIGINALLY MADE.

17            AND I'M ASKED TO REVIEW THAT DECISION.  NOT SOMETHING

18   ELSE THAT COULD HAVE BEEN BEFORE HIM BUT WASN'T; NAMELY, SOME

19   KIND OF AN AGREEMENT TO NARROW THE SCOPE OF THE DISCOVERY.

20            I DON'T KNOW, MR. ALGER, IF THIS IS FOR YOU TO

21   ADDRESS, BUT DO YOU UNDERSTAND THE QUESTION I'M ASKING?

22            MR. ALGER:  YES, I DO.  AND IT IS ON MY PLATE.

23            THE COURT:  ALL RIGHT.  WELL, THEN, HAVE AT IT.

24            MR. ALGER:  I THINK THIS MOTION IS DISTINCTIVE IN A

25   MAJOR RESPECT; AND THAT IS THAT MGA DID NOT TELL THE TRUTH TO

1    JUDGE INFANTE ABOUT WHAT THEY --

2            THE COURT:  PERHAPS YOU MAY HAVE THOUGHT THEY

3    MISCHARACTERIZED IT.

4            LET'S TRY TO AVOID PHRASES LIKE 'DIDN'T TELL THE

5    TRUTH,' 'LIED'...

6            MR. ALGER:  WELL, THAT'S PART OF THE PROBLEM HERE, ON

7    THIS PARTICULAR ONE.

8            THE COURT:  WHAT HAPPENED HERE?

9            MR. ALGER:  WHAT HAPPENED WAS, WE WERE BURIED BY

10   MGA -- AND I GUESS IT WAS A STRATEGIC CALL -- IN ABOUT THREE

11   AND A HALF MILLION PAGES OF DOCUMENTS LATE IN THE YEAR AND THE

12   BEGINNING OF THIS YEAR; ABOUT A HALF A MILLION WERE PRODUCED

13   DURING THE LAST WEEK OR SO OF JANUARY AND INTO FEBRUARY THAT WE

14   HAD TO DIG THROUGH.  THE MOTION PRACTICE ON THIS COMMENCED ON

15   THE 28TH OF JANUARY, SO THE BRIEFING SCHEDULE WAS SUCH THAT WE

16   WERE NOT ABLE TO GIVE THE KIND OF RESPONSE THAT WOULD HAVE BEEN

17   PREFERRED BEFORE JUDGE INFANTE HEARD THE MATTER.

18           IN RESPONSE, MGA MADE CONCLUSORY STATEMENTS, WHICH

19   ARE REPEATED TO THIS COURT, ABOUT WHAT THEY HAVE DONE IN

20   RESPONSE TO THESE REQUESTS; ACTUALLY IN RESPONSE TO OTHER

21   REQUESTS, BUT THEY SAID THAT THAT FULFILLED THEIR OBLIGATIONS

22   UNDER THIS REQUEST.  WE PRESENTED TO JUDGE INFANTE PROOF THAT

23   THEY HAD NOT DONE WHAT THEY HAD SAID.  THAT WAS NOT SERIOUSLY

24   REVIEWED BY JUDGE INFANTE.  AND THAT'S THE BIG ISSUE HERE.

25           SO WHAT HAPPENED IS, WE BELIEVE JUDGE INFANTE ERRED.

Page 37

1          WE SPOKE FURTHER WITH MGA AND SAID, 'WELL, LISTEN, TO

2    RESOLVE THIS MATTER AND AVOID THE NECESSITY OF GOING TO

3    JUDGE LARSON, WE'RE PREPARED TO NARROW THIS EVEN FURTHER, AND

4    THESE ARE THE SPECIFIC DOCUMENTS WE NEED.'  AND THAT WAS

5    REJECTED AS WELL.

6          AND WHAT HAPPENS IS, IF THE COURT IS NOT INCLINED TO

7    CONSIDER REVISIONS OR FURTHER EFFORTS TO MEET AND CONFER AND

8    COMPROMISE, THEN WHAT IT DOES IS, IT RUNS CONTRARY TO THE WHOLE

9    GOAL OF THE MEET-AND-CONFER PROCESS UNDER THE FRCP.

10          I THINK THE PARTIES SHOULD CONTINUE TO DISCUSS IN THE

11    HOPES OF NARROWING AND AVOIDING MOTION PRACTICE IN FRONT OF THE

12    DISTRICT COURT.  I DON'T SEE ANYTHING IN THE LAW THAT SAYS THAT

13    ONCE IT'S SUBMITTED TO THE DISCOVERY MASTER, THAT'S THE END OF

14    THE ROAD.

15          THE COURT:  I DID READ FOOTNOTE 17, WHERE YOU HAVE

16    THIS EXPLANATION OF WHAT YOU DID.  BUT WHAT WE DON'T WANT TO

17    ENCOURAGE ALSO IS THIS NOTION OF OBJECTING; GOING TO THE

18    DISCOVERY MASTER; 'LET'S THROW THE DICE; LET'S SEE IF WE WIN;

19    OH, OKAY, WE LOST; WELL, NOW WE'LL DISCUSS A NARROWING.'

20          THE PROBLEM THAT I'M HAVING IS MORE THAT THE

21    DISCUSSION ABOUT THE NARROWING TOOK PLACE POST- AS OPPOSED TO

22    PRE-.  AND I UNDERSTAND THAT YOU WERE PRESSED FOR TIME, BUT

23    THAT'S SOMETHING WHICH IS ENDEMIC AROUND HERE; WE'RE ALL

24    PRESSED FOR TIME.  IF YOU WANT TO TALK ABOUT SOMEONE WHO'S

25    PRESSED FOR TIME RIGHT NOW, YOU'RE LOOKING AT HIM.  THINGS ARE

1   NOT AN IDEAL SITUATION IN TERMS OF TIME.

2          BUT YOU'RE RIGHT, FAR BE IT FROM THIS COURT TO EVER

3   SUGGEST THAT WE SHOULD NOT MEET AND CONFER.  BUT AT THE SAME

4   TIME, I'M SOMEWHAT SYMPATHETIC TO THE POSITION, AS WELL, THAT

5   THE MEET AND CONFERRING CAME POST GOING FOR THE WHOLE BAG.

6          MR. ALGER:  YOUR HONOR, WE DID MEET AND CONFER BEFORE

7   THE MATTER WAS DECIDED BY JUDGE INFANTE.  WE ATTEMPTED TO MEET

8   AND CONFER BEFORE THE FILING.  THERE WAS ALSO A MEET-AND-CONFER

9   AFTER.  ON FEBRUARY 21ST, JUDGE INFANTE TOLD THE PARTIES TO

10  MEET AND CONFER ON ALL OF THE PENDING MOTIONS.  WE MET AND

11  CONFERRED AT THAT POINT; I BELIEVE IT WAS IN MID FEBRUARY.  MGA

12  JUST DUG IN ITS HEELS AT THAT POINT.

13         AND I THINK THE FLIP SIDE -- I UNDERSTAND YOUR

14  HONOR'S POINT, BUT THERE'S A FLIP SIDE; AND THAT IS, THE

15  RESPONDING PARTY CAN TAKE ADVANTAGE OF THIS AND SAY, 'WELL,

16  YOUR REQUESTS ARE OVERBROAD.  WE'RE NOT GOING TO BUDGE AT ALL.

17  GO TO BAT.'  AND YOU'RE STUCK WITH THESE VERY BROAD REQUESTS.

18  PERIOD.

19         SO THEN THEY GET THE ADVANTAGE OF SAYING, 'WELL, WE

20  MET AND CONFERRED.'  BUT THE REALITY IS, THERE WASN'T ANY GOOD

21  FAITH MEET-AND-CONFER.

22         THE COURT:  YOU'RE RIGHT.  BUT WHAT THAT DOES

23  ULTIMATELY IS, IT FORCES BOTH SIDES IN CRAFTING THEIR REQUEST,

24  TO BEGIN WITH, TO BE NARROW AND PRECISE AND NOT BE

25  OVERREACHING.

Page 39

1          MR. ALGER:  UNDERSTOOD, YOUR HONOR.  WE ENDEAVORED

2   NOT ONLY TO MAKE THEM COMPREHENSIVE, BUT ALSO TO GET THE

3   INFORMATION --

4          THE COURT:  I UNDERSTAND.

5          MR. ALGER:  AND WE ATTEMPTED TO MEET AND CONFER ON

6   THIS.

7          THE COURT:  MR. KENNEDY?

8          MR. KENNEDY:  UNLESS THE COURT HAS QUESTIONS, I THINK

9   YOU STATED OUR POSITION BETTER THAN WE HAVE.

10         THE COURT:  VERY WELL.

11         HERE'S ONE THAT I WANT TO SPEND SOME TIME ON, BECAUSE

12  THIS ONE I HAVE --

13         MS. THOLEN:  YOUR HONOR, DO YOU NEED ME ANY LONGER?

14         THE COURT:  NO.  YOU'RE FINE.  UNLESS YOU WANT TO SIT

15  HERE FOR -- YOU'RE FREE.  HAVE A NICE DAY.  THANK YOU, COUNSEL.

16         MS. THOLEN:  THANK YOU.

17         (WHEREUPON, MS. THOLEN EXITS CONFERENCE ROOM.)

18         THE COURT:  NUMBER SIX IS THE MOTION TO COMPEL

19  DISCOVERY ON ISSUES AS TO WHICH MATTEL HAS WAIVED THE

20  ATTORNEY-CLIENT AND WORK-PRODUCT PRIVILEGES CLAIM ASSERTION.

21         THIS IS MGA'S NOTICE.

22         THIS IS ALL WRAPPED UP IN WHETHER OR NOT THE

23  PRIVILEGED DOCUMENTS SHOULD BE PRODUCED WITH RESPECT TO THE

24  INVESTIGATION THAT TOOK PLACE.

25         ESSENTIALLY, AS I UNDERSTAND IT, THIS HAS GONE BEFORE

1   DOCUMENTS HAVE NOT BEEN PRODUCED.  AND SO THE WAY THAT WE HAD

2   ARTICULATED WHAT WE WERE LOOKING FOR, THE REQUESTS ARE NOT, IN

3   THIS INSTANT, CUMULATIVE.

4           THE OTHER BASIS THAT HE HAD FOR RULING WAS THAT THE

5   REQUESTS WERE NOT REASONABLY TAILORED, AND I THINK -- AND

6   DURING THE MEET-AND-CONFER PROCESS, WHICH WE HAD ENGAGED IN

7   BEFOREHAND AND PUT THIS PROPOSAL IN FRONT OF JUDGE INFANTE FOR

8   HIM TO CONSIDER, WAS EXACTLY THAT.  WE TAILORED IT AND SOUGHT

9   TO MINIMIZE THE BURDEN AS MUCH AS POSSIBLE.

10          THE COURT:  THIS DOES GET BACK TO THAT ISSUE THAT I

11   RAISED BEFORE, THOUGH.  WHAT JUDGE INFANTE RULED ON, AS I

12   UNDERSTAND HIS RULING, WAS WHAT WAS ACTUALLY REQUESTED.  NOT

13   WHAT WAS TAILORED OR PROPOSED TO BE TAILORED.

14          MR. COREY:  AND THAT'S ACTUALLY NOT RIGHT, BECAUSE

15   WHAT WE HAD DONE WAS, EACH SIDE HAD SUBMITTED LETTERS TO

16   JUDGE INFANTE.  AND IF THE COURT WOULD GIVE ME A MOMENT, I WILL

17   FIND THOSE LETTERS AND REFER THEM TO YOUR HONOR.  BECAUSE THE

18   ORDER TRACKS THE RELIEF SOUGHT OR THE AGREEMENTS REACHED FOR

19   THE NARROWING BY THE PARTIES DURING THAT MEET-AND-CONFER

20   PROCESS.  SO THAT WAS WHAT HE WAS CONSIDERING, WAS THE

21   NARROWING AS AGREED TO BY THE PARTIES; THE NARROWING AS AGREED

22   TO BY THE PARTIES.

23          THE COURT:  NOT AS ORIGINALLY PROPOUNDED.

24          MR. COREY:  EXACTLY.

25          THE COURT:  MR. KENNEDY, WOULD YOU ADDRESS THAT ONE

Page 60

1    PARTICULAR POINT, BECAUSE THAT'S SOMETHING WHICH IS

2    INCONSISTENT WITH MY UNDERSTANDING FROM JUST READING THE

3    PAPERS.

4         MR. KENNEDY:   IT'S ALSO INCONSISTENT WITH MY

5    UNDERSTANDING OF WHAT'S BEFORE THE COURT RIGHT NOW, THAT

6    THEY'RE ASKING FOR YOU TO GIVE THEM WHAT IS SOUGHT IN NUMBER 6,

7    15, 23, AND 25.  AND I DON'T SEE THEIR PROPOSED FORM OF ORDER

8    AS CONTAINING ANY LIMITATION ON WHAT'S SUPPOSED TO BE THERE.

9    AND THOSE FOUR REQUESTS INCLUDE THOSE BROADER THAN ALL OUTDOORS

10   DEFINITIONS OF 'RELATE OR REFER TO.'

11        IF MR. COREY HAS GOT SOME LETTERS OR SOMETHING ELSE,

12   I'D BE PLEASED TO TAKE A LOOK AT THEM, BUT I CAME HERE

13   UNDERSTANDING THAT IT WAS THOSE FOUR AND THE WAY THEY ASKED FOR

14   THEM.

15        THE COURT:  VERY WELL.  THANK YOU, COUNSEL.

16        THE EIGHTH MOTION IS THE MOTION BY MATTEL OBJECTING

17   TO THE PORTIONS OF THE DISCOVERY MASTER'S APRIL 11, 2008 ORDER

18   GRANTING IN PART MGA'S MOTION TO COMPEL MATTEL TO PRODUCE A

19   WITNESS PURSUANT TO 30(B)6.

20        I DID HAVE A QUESTION ON THIS, DIRECTED TOWARDS MGA,

21   CONCERNING THE -- MATTEL MAKES AN ARGUMENT IN THEIR MOTION, AND

22   AGAIN IN THEIR REPLY -- CONCERNING THE EFFECT OF THIS COURT'S

23   ORDER FOLLOWING THE MOTIONS FOR PARTIAL SUMMARY JUDGMENT AS

24   NEGATING A COUPLE OF THE TOPIC AREAS FOR THE 30(B)(6).

25        I'D LIKE TO GET YOUR RESPONSE TO THAT, IF YOU WOULD.

1          MR. NOLAN:  YES, YOUR HONOR.

2          THE COURT:  SPECIFICALLY, I'LL NEED SOME

3  CLARIFICATION FROM MATTEL ON THIS AS WELL, BECAUSE THEY ALSO

4  ARGUE THAT A NUMBER OF THE TOPICS RELATE TO PHASE TWO, AND THEY

5  REFER TO 8, 18, 30, AND 32.  I DON'T SEE 30 BEING SET FORTH

6  ANYWHERE IN THE PAPERS OR IN ARGUMENT SUGGESTING HOW 30 RELATES

7  TO PHASE TWO.

8          BUT THE ARGUMENT WITH RESPECT TO THE SUMMARY JUDGMENT

9  RULING RELATES TO TOPIC 26; THESE ARE THE MATTEL EMPLOYEES WHO

10  HAVE PREVIOUSLY SIGNED THE INVENTIONS AGREEMENT.  GIVEN THE

11  COURT'S RULING ON THE ENFORCEABILITY OF THE INVENTIONS

12  AGREEMENT, JUST ON THE ENFORCEABILITY OF THE INVENTIONS

13  AGREEMENT, THAT THIS IS NO LONGER RELEVANT.  AND THEN THE OTHER

14  TOPICS AS BEING RELATED TO PHASE TWO AND NOT TO PHASE ONE.

15          MR. NOLAN:  THIS IS ALWAYS A DIFFICULT POSITION TO BE

16  IN, BECAUSE YOU'RE INTERPRETING AN ORDER TO THE JUDGE THAT

17  ISSUED THE ORDER.  BUT I THINK THAT MATTEL IS MISLED IN TERMS

18  OF WHAT THEY BELIEVE WAS THE EXTENT AND BREADTH OF THE COURT'S

19  SUMMARY JUDGMENT RULING, AS WE UNDERSTAND IT.

20          I UNDERSTOOD FROM THE COURT'S RULING THAT YOU HAVE

21  FOUND THAT THE INVENTIONS AND CONFIDENTIALITY AGREEMENT IS AN

22  ENFORCEABLE CONTRACT.

23          HOWEVER, THE COURT WENT FURTHER AND SAID, 'HOWEVER,

24  THE AFFIRMATIVE DEFENSES THAT THE PARTIES HAVE RAISED IN

25  CONNECTION WITH THIS CASE, INCLUDING ACQUIESCENCE, WAIVER, AND

# Exhibit 10

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR EMBARCADERO CENTER

SAN FRANCISCO, CALIFORNIA 94111-4144

TEL: (415) 984-6400

FAX: (415) 984-2698

www.skadden.com

DIRECT DIAL
(415) 984-6442
DIRECT FAX
(888) 329-1280
EMAIL ADDRESS
JRALLEN@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

May 7, 2008

<u>**Via Email and U.S. Mail**</u>

Harry Olivar, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges LLP
865 South Figueroa Street
Los Angeles, California

RE:   Carter Bryant v. Mattel, Inc., Case No. CV 04-9049
SGL (RNBx) (Consolidated with Case Nos. CV 04-
09059 and CV 05-02727

Dear Harry:

I write to follow up on our meet and confer discussions regarding the entries on several privilege logs prepared by MGA[1] and to respond to your letter dated May 2, 2008, in which you responded to the proposal we made at our meet and confer session on April 28, 2008.

As you may recall, at the April 28 meet and confer session we proposed that in light of the vast number of documents currently at issue (approximately 1500 listed in your March 12, 2008 letter), the parties should find a way to narrow the number of documents Judge Infante would be required to review *in camera* with respect to your pending motions. Specifically, given the fact that Phase 2 discovery has been stayed, we suggested that the parties' attention should be narrowed to focus only on documents related to Phase 1. In addition, we informed

---

[1]   Specifically, the logs produced by MGA in August, September and November 2007, as well as several logs produced in January 2008.

EXHIBIT <u>10</u>,
P. <u>54</u>.

Harry Olivar, Esq.
May 7, 2008
Page 2

you that because of the exceedingly broad scope of Mattel's discovery requests (such as requests for documents that in any way "refer or relate" to Bratz), the privilege logs of necessity included numerous documents that simply had nothing to do with Phase 1 issues, nor even likely Phase 2. We therefore proposed that the parties attempt to agree upon a protocol for identifying documents on the privilege logs that are relevant only to Phase 1 issues. In this regard, we suggested that for purposes of resolving the pending dispute over MGA's privilege logs the parties should focus their attention on: 1) documents dated prior to June 30, 2001; 2) documents that refer or relate to Carter Bryant or Mattel; and 3) documents that relate to the initial development of first generation Bratz dolls. In our view, this approach would drastically reduce the number of documents in dispute and also reduce the number of documents that Judge Infante would have to review *in camera* in order to resolve MGA's privilege claims.

During our discussions you identified two specific entries on MGA's privilege logs, both of which aptly illustrated the merit of attempting to narrow the scope of the documents in dispute. Specifically, you identified entry number 1898 on MGA's January 23/25, 2008 privilege log as an example of a document you sought as part of your "Appendix A" documents (i.e., communications that appeared to be between non-lawyers). After reviewing the document we informed you that it involved an e-mail forwarding legal advice regarding language to include on packaging for certain products in foreign countries. You also identified entry number 27 on MGA's January 28, 2008 privilege log as an example of a document that was part of your "Appendix B" documents (related to so-called "trademark search results"). As we disclosed to you, without waiving any privileges, this document related to the potential formation of a corporation in a foreign country and had nothing to do with the issues in Phase 1 or Phase 2. We pointed out that it made no sense for the parties to expend their resources debating the privileged status of documents such as these because they have no potential bearing on the case. You agreed that it was clear that neither of the documents you specifically pointed to as "exemplars" had anything to do with Phase 1 or Phase 2.

In response to our invitation for you to submit a counterproposal for our consideration on ways to narrow the number of documents in dispute, you sent your letter of May 2, 2008 in which you identified two categories of documents: 1) documents that you believe relate most clearly to Phase 1; and 2) documents that could be deferred for later consideration, subject to receiving specified representations from MGA. Unfortunately, your proposal does little to reduce the number of documents at issue. By our count, the category 1 documents that you have identified total approximately 1000 in number. We think it is unreasonable to expect Judge Infante to conduct an *in camera review* of 1000 documents. In

**EXHIBIT 10**
P. 55

Harry Olivar, Esq.
May 7, 2008
Page 3

addition, the vast majority of your category 1 documents have nothing to do with Phase 1 issues. The parties therefore face the prospect of debating privilege claims for documents that have no relevance to this litigation. We do not believe this a productive use of judicial resources or the parties' resources. We urge you, once again, to put forward a proposal that reduces the number of documents that will have to be discussed and possibly submitted for *in camera* review.

Finally, we continue to disagree with your characterization of certain documents in your proposed "Appendix B1" regarding what you term "trademark search requests" or "trademark search reports." As we explained, the documents you seek typically involve an attorney's legal advice regarding trademark strategy. The same holds true for documents that include a "date of first use" and other "factual data" that is incidental to the legal advice being provided. Under any analysis these documents would be privileged and you agreed that you are not seeking privileged material. With respect to your position that merely "factual material" should be produced in redacted form, we note that the so-called "factual information" that you identified, i.e., the author of the document and the date of the document's creation, is already contained on the privilege logs. Therefore, the notion that this same information should be produced in redacted form is inappropriate and contrary to case law.

We remain willing to discuss these matters with you further in the hope that we can reach a mutually agreeable resolution of this matter.

Very truly yours,

José R. Allen

EXHIBIT 10
P. 56

# Exhibit 11

12-08-2008 02:58pm From-QUINN EMANUEL 2136240843 T-707 P.003/010 F-846



1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemnauel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
6   Facsimile:  (213) 443-3100

7   Attorneys for Mattel, Inc.

8   [Additional counsel listed on following page]

9

10                  UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12  CARTER BRYANT, an individual,        )  Case No. CV 04-09049 SGL (RNBx)
                                         )
13                  Plaintiff,           )  Consolidated with
                                         )  Case No. CV 04-09059
14        v.                             )  Case No. CV 05-02727
                                         )
15  MATTEL, INC., a Delaware             )  STIPULATION FOR APPOINTMENT
    corporation,                         )  OF A DISCOVERY MASTER; AND
16                                       )
                    Defendant.           )  [PROPOSED] ORDER
17                                       )
                                         )  Discovery Cutoff Date:  Not Set
18                                       )  Trial Date:  Not Set

19

20

21

22

23

24

25

26

27

28

                    EXHIBIT  11
                    P. 57

Case No. CV 04-09049 SGL (RNBx)
STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND (PROPOSED) ORDER

1  LITTLER MENDELSON
      Robert F. Millman (Bar No. 062152)
2     Douglas A. Wickham (Bar No. 127268)
      Keith A. Jacoby (Bar No. 150233)
3  2049 Century Park East, 5th Floor
   Los Angeles, California 90067-3107
4  Telephone:  (310) 553-0308
   Facsimile:   (310) 553-5583
5
   Attorneys for Carter Bryant
6
   O'MELVENY & MYERS LLP
7     Diana M. Torres (Bar No. 162284)
   400 S. Hope Street
8  Los Angeles, California 90017
   Telephone:  (213) 430-6000
9  Facsimile:   (213) 430-6407

10 O'MELVENY & MYERS LLP
      Dale Cendali
11 Times Square Tower
   7 Times Square
12 New York, NY 10036

13 CHRISTENSEN, GLASER, FINK, JACOBS WEIL & SHAPIRO, LLP
      Patricia Glaser (Bar No. 55668)
14 10250 Constellation Boulevard - 19th Floor
   Los Angeles, CA 90067
15 Telephone:  (310) 553-3000
   Facsimile:  (310) 556-2920
16
   Attorneys for MGA Entertainment, Inc.
17

18

19

20

21

22

23

24

25

26                                      EXHIBIT  1  ,
27                                       P. 58 .

28

                                         STIPULATION FOR APPOINTMENT OF A DISCOVERY
                                            MASTER AND [PROPOSED] ORDER

12-08-2006  02:59pm  From-QUINN EMANUEL                    2136240643              T-707  P.005/010  F-346

1    WHEREAS, the parties are in agreement that a discovery master should be
2    appointed in this matter to resolve any discovery disputes and to minimize the
3    burden on the Court; and

4    WHEREAS, the parties have agreed upon a nominee, Hon. Edward A. Infante
5    (Ret.), and he has agreed to serve as a discovery master in this matter;

6    NOW, THEREFORE, to facilitate the fair and efficient completion of pre-
7    trial discovery, the parties Mattel, Inc. and Carter Bryant and MGA Entertainment,
8    Inc., by and through their respective counsel of record, hereby stipulate and agree as
9    follows:

10    1.    The Discovery Master shall be appointed to assure and provide cost-
11    effective discovery and to minimize the burden of discovery disputes upon the
12    Court.  Any and all discovery motions and other discovery disputes in the above
13    captioned action shall be decided by a master ("Discovery Master") pursuant to
14    Federal Rule of Civil Procedure 53.  Any motions currently pending before
15    Magistrate Judge Block shall be transferred to the Discovery Master.  The moving
16    party shall provide to the Discovery Master all papers associated with each pending
17    motion.

18    2.    The Discovery Master shall be Hon. Edward A. Infante (Ret.).  His
19    business address is: Two Embarcadero Center, Suite 1500, San Francisco, CA
20    94111.

21    3.    Judge Infante shall serve as the Discovery Master until all issues herein
22    have been finally disposed of or determined, or until he shall withdraw in
23    accordance with applicable law.  If at any time he becomes unable to serve as the
24    Discovery Master, the parties shall confer to present an alternative agreed-upon
25    designee to the Court.  In the event that the parties cannot agree to an alternate
26    designee, then the Court shall appoint a Discovery Master.

27    4.    The Discovery Master shall have the authority to set the date, time, and
28    place for all hearings determined by the Discovery Master to be necessary; to

EXHIBIT _11_,
P. _51_.                    -3-            STIPULATION FOR APPOINTMENT OF A DISCOVERY
                                           MASTER AND [PROPOSED] ORDER

1 preside over hearings (whether telephonic or in-person); to take evidence in

2 connection with discovery disputes; to issue orders resolving discovery motions

3 submitted to the Discovery Master; to conduct telephonic conferences to resolve

4 discovery disputes arising during depositions; to issue orders awarding non-

5 contempt sanctions, including, without limitation, the award of attorney's fees, as

6 provided by Rules 37 and 45; and to prepare, file and serve other orders, reports and

7 recommendations, as appropriate.

8   5. All discovery disputes shall be resolved by motion (except those arising

9 during a deposition which the Discovery Master determines can be resolved by

10 telephonic conference during the deposition). The moving party shall first identify

11 each dispute, state the relief sought, and identify the authority supporting the

12 requested relief in a meet and confer letter that shall be served on all parties by

13 facsimile or electronic mail. The parties shall have five court days from the date of

14 service of that letter to conduct an in-person conference to attempt to resolve the

15 dispute. If the dispute has not been resolved within five court days after such

16 service, the moving party may seek relief from the Discovery Master by formal

17 motion or letter brief, at the moving party's option. The opposing party shall have

18 five court days from the date of service of the motion or letter brief to submit a

19 formal opposition or response. Any reply brief or letter brief shall be served within

20 three court days from the date of service of a formal opposition or response. The

21 hearing on the motion shall take place within five court days of the service of any

22 reply brief or letter unless (a) the parties agree to another hearing date or agree that

23 no hearing is necessary; (b) the Discovery Master determines that no hearing is

24 necessary; or (c) the Discovery Master is not available, in which case the hearing

25 shall take place on the Discovery Master's first available date. The foregoing shall

26 not prohibit (i) the parties from agreeing to alternate procedures, or (ii) a party from

27 seeking the Discovery Master's immediate resolution of a dispute or resolution of a

28 dispute upon shortened time upon a showing of good cause why a party would be

EXHIBIT ll ,
P. 60 .                            - 4 -

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

12-08-2006   02:59pm   From-QUINN EMANUEL                    2136240543                    T-707   P.007/010   F-346

1   prejudiced absent prompt resolution.  Service of any document by fax or electronic

2   mail prior to 6:00 p.m. shall constitute service on that day.

3        6.     The Discovery Master's orders resolving discovery disputes, reports, or

4   recommendations pursuant to Rule 53(e) or (f) shall be treated as rulings made by a

5   Magistrate Judge of the United States District Court.  The Discovery Master shall

6   file each order, report, or recommendation pursuant to Rule 53(e) or (f) and serve

7   the parties within five court days of his/her decision on a matter.

8        7.     A court reporter shall transcribe any hearing or other proceeding before

9   the Discovery Master.

10       8.     The cost of any proceeding before the Discovery Master, including the

11  fees of the Discovery Master, the fees of court reporters who transcribe hearings or

12  other proceedings before the Discovery Master, and the fees of any other person

13  necessary to the efficient administration of the proceeding before the Discovery

14  Master, shall be paid one-half by Mattel, Inc., and one-half by MGA Entertainment,

15  Inc. and Carter Bryant unless, consistent with the Federal Rules of Civil Procedure,

16  the Discovery Master Orders otherwise.  By agreeing to share costs among the

17  parties, no party waives its right to seek recovery or reimbursement for such costs

18  from any other party.

19       9.     The Discovery Master shall be compensated according to his regular

20  hourly rate of $750.

21       10.    Pursuant to Federal Rule of Civil Procedure 53(b)(2), the Discovery

22  Master shall proceed with all reasonable diligence.

23       11.    Based on an affidavit filed by Hon. Edward A. Infante pursuant to

24  28 U.S.C. § 455 and Federal Rule of Civil Procedure 53(b)(3), the parties are not

25  aware that he has a relationship to the parties, to counsel, to the action, or to the

26  Court that would require disqualification of a judge under 28 U.S.C. § 455, and

27  based thereon the parties expressly waive any ground for disqualification disclosed

28  therein of Hon. Edward A. Infante to serve as master in these proceedings.

EXHIBIT 11,
P. 61

- 5 -

12.     The Discovery Master shall not have ex parte communications with ~~the Court~~, a party or counsel.

13.     The Discovery Master shall preserve and maintain all documents and materials submitted by the parties as well as all orders, reports, and recommendations issued by the Discovery Master. These documents, materials, orders, reports and recommendations shall be the record of the Discovery Master's activities, and shall be maintained in chronological order until the Discovery Master is informed by the parties that all issues herein have been finally disposed of and determined.

14.     The Discovery Master is hereby authorized to receive and consider information and documents designated "CONFIDENTIAL" and "CONFIDENTIAL-ATTORNEYS EYES ONLY" pursuant to the January 4, 2005 Stipulated Protective Order. The Discovery Master agrees to be bound by the January 4, 2005 Order.

15.     All third parties subject to discovery requests or deposition in this litigation shall be bound by the terms of this Stipulation and Order.

Dated: November __, 2006                   O'MELVENY & MYERS LLP


By: _____
    Diana Torres
    Attorneys for MGA Entertainment, Inc.


Dated: November 29, 2006                   LITTLER MENDELSON


By: _____
    Douglas A. Wickham
    Attorneys for Carter Bryant

EXHIBIT 11
P. 63

1   Dated: November ___, 2006
    *December 4,*

2

3                                          QUINN EMANUEL URQUHART
                                           OLIVER & HEDGES, LLP

4                                          By: _____
                                              Jon D. Corey
5                                             Attorneys for Mattel, Inc.

6

7                              **ORDER**

8   The foregoing Stipulation for Appointment of a Discovery Master is SO

9   ORDERED *as modified.*

10  Dated: _12-6-06._          _____
                                Hon. Stephen G. Larson
11                              United States District Court Judge

12

13

14                    **CONSENT OF DISCOVERY MASTER**

15  If appointed by the Court, I, the undersigned, consent to serve as Discovery

16  Master in the above referenced proceeding consistent with this Order.

17

18  Dated: _12-5-06_            _____
                                Hon. Edward A. Infante (Ret.)
19

20

21

22

23

24

25

26

27

28

                                                    STIPULATION FOR APPOINTMENT OF A DISCOVERY
                                                    MASTER AND [PROPOSED] ORDER

                              -7-

EXHIBIT _11_,
P._63_.

12-08-2006   03:00pm   From-QUINN EMANUEL                    2136240643            T-707   P.010/010   F-346

## PROOF OF SERVICE
1013A(3) CCP Revised 5/1/88

1  STATE OF CALIFORNIA )
2  COUNTY OF LOS ANGELES )

3    I am employed in the county of Los Angeles  State of California.  I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor,
4  Los Angeles, CA 90012.

5    On December 5, 2006, I served the foregoing document described as **STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER; AND [PROPOSED ORDER** on  all
6  interested parties in this action.

7  Keith A. Jacoby, Esq.                    Diana M. Torres, Esq.
   Douglas Wickham, Esq.                    O'Melveny & Meyers
   Littler Mendelson                        400 S. Hope Street
8  A Professional Corporation               Los Angeles, CA 90071
   2049 Century Park East, 5th Floor        Phone: 213-430-6000
9  Los Angeles, California 90067-3107       Fax: 213-430-6407
   Phone: 310-553-0308
10 Fax: 310-553-5583

11

12 [ ]    By placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed
13        as follows:

14 [X]    **BY MAIL**

15 [ ]    I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed
          with postage thereon fully prepaid.

16 [ ]    As follows:  I am "readily familiar" with the firm's practice of collection and processing
17        correspondence for mailing.  Under that practice it would be deposited with U.S. postal
          service on that same day with postage thereon fully prepaid at Los Angeles, California in the
18        ordinary course of business.  I am aware that on motion of the party served, service is
          presumed invalid if postal cancellation date or postage meter date is more than one day after
          date of deposit for mailing in affidavit.

19 [ ]    **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s)
20        set forth above on this date.

21 [ ]    **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

22 Executed on December 5, 2006, at Los Angeles, California.

23 [ ]    (State) I declare under penalty of perjury under the laws of the State of California that the
          above is true and correct.

24 [X]    (Federal) I declare that I am employed in the office of a member of the bar of this court at
          whose direction the service was made.

25

26    Cheri Hatch
27    Print Name                              Signature

28

                              EXHIBIT  11 ,
                              P. 64 .

# Exhibit 12

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2    John B. Quinn (Bar No. 090378)
     (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Mattel, Inc.

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

| 11 | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|---|
| 12 | Plaintiff, | Consolidated with Case Nos. CV 04-09059 and CV 05-02727 |
| 13 | vs. | |
| 14 | MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]** |
| 15 | | |
| 16 | Defendant. | REPLY MEMORANDUM OF MATTEL, INC. IN RESPONSE TO OPPOSITIONS OF FARHAD LARIAN, STERN & GOLDBERG, KAYE SCHOLER AND MGA TO MOTIONS TO PRODUCE DOCUMENTS |
| 17 | AND CONSOLIDATED ACTIONS | |
| 18 | | |
| 19 | | [Declaration of Michael T. Zeller, Supplemental Declarations of Jon D. Corey and Juan Pablo Alban, and Consolidated Separate Statement Re Mattel, Inc.'s Motion to Compel Farhad Larian to Produce Documents filed concurrently herewith] |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | Hearing Date:   January 10, 2008 Time:                9:30 a.m. Place:              Telephonic |
| 24 | | |
| 25 | | **Phase 1** Discovery Cut-Off:        January 28, 2008 Pre-Trial Conference:  May 5, 2008 Trial Date:                May 27, 2008 |
| 26 | | |
| 27 | | |
| 28 | | EXHIBIT 12, P. 65 . |

07209/2340500.1

MATTEL'S REPLY RE MOTIONS TO COMPEL LARIAN V. LARIAN DOCUMENTS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................. 1

I. MGA AND THE THIRD PARTIES SEEK TO AVOID DISCOVERY BY POINTING FINGERS.................................................... 3

   A. That Mattel Can and Has Sought Larian v. Larian Documents From The Parties Does Not Justify Quashing the Subpoenas............... 3

   B. Mattel Does Not Have Larian v. Larian Documents From MGA or Isaac Larian................................................................. 5

      1. MGA Produced Only Four Larian v. Larian Documents........... 5

      2. Isaac Larian Has Yet to Produce Any Documents...................... 6

   C. The Claim That MGA Has All Documents Third Parties Have Is Incorrect ................................................................. 7

   D. Third Parties Have Even Declined to Confirm That They Have Reviewed Their Files .................................................. 8

II. MGA AND THE THIRD PARTIES CANNOT WITHHOLD BASED ON LARIAN V. LARIAN PROTECTIVE ORDERS ...................................... 9

   A. A Protective Order Does Not, and Cannot, Prevent The Original Possessor of Documents from Producing Them........................... 9

   B. Many Responsive Documents Are Not Subject to the Protective Orders.................................................................... 10

   C. The Reliance on the Protective Orders Is a Delay Tactic................ 11

III. MGA'S AND THE THIRD PARTIES' BURDEN OBJECTIONS LACK MERIT ........................................................... 12

   A. Any Alleged Burden Is Justified By The Stakes Here ............. 12

   B. Mattel Has Offered to Pay the Third Parties' Costs of Copying and Inspection ........................................................... 13

   C. Any Burden Claims Are Significantly Outweighed By the Importance of the Documents That Mattel Seeks.................... 14

IV. STERN & GOLDBERG CANNOT SHIELD RESPONSIVE DOCUMENTS BEHIND AN INAPPLICABLE ARIBTRAL PRIVILEGE .................................................................. 15

V. FARHAD LARIAN'S CLAIM THAT ONLY THREE REQUESTS REMAIN AT ISSUE IS INCORRECT ................................ 17

VI.    EACH OF THE THIRD PARTIES MUST PRODUCE ADEQUATE
       PRIVILEGE LOGS ..................................................................................20

VII.   THE THIRD PARTIES' CLAIMS THAT MATTEL FAILED TO
       COMPLY WITH THE LOCAL RULES AND MEET AND CONFER
       REQUIREMENTS ARE NOT TRUE .......................................................24

       A.    Mattel Satisfied Its Meet and Confer Requirements With Farhad
             Larian ...........................................................................................24

       B.    Kaye Scholer's Claim That Mattel Filed Its Motion Prematurely
             Is Incorrect ..................................................................................25

VIII.  KAYE SCHOLER'S OPPOSITION SHOULD BE REJECTED AS
       UNTIMELY ..........................................................................................26

CONCLUSION....................................................................................................27

**EXHIBIT 12**
**P. 67**

EXHIBIT 12 ,
P. 68 .

# TABLE OF AUTHORITIES

Page

## Cases

In re Bergeson,
112 F.R.D. 692 (D. Mont. 1986) ................................................................. 3

Bliznik v. Int'l Harvester Co.,
87 F.R.D. 490 (N.D. Ill. 1980) ................................................................. 16

Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.,
408 F.3d 1142 (9th Cir. 2005) ................................................................. 22

Clavo v. Zarrabian,
2003 WL. 24272641 (C.D. Cal. 2003) ................................................... 23

Covey Oil Co. v. Continental Oil Co.,
340 F.2d 993 (10th Cir. 1965) ................................................................. 3

Fears v. Wal-Mart, Inc.,
2000 WL 1679418, at *2 (D. Kan. 2000) ............................................... 12

Gail v. New England Gas Co., Inc.,
243 F.R.D. 28 (D. R.I. 2007) ................................................................. 22

In re Grand Jury Subpoenas,
318 F.3d 379 (2d Cir. 2003) ................................................................... 23

Hartford Fire Ins. Co. v. Garvey,
109 F.R.D. 323 (N.D. Cal. 1985) ........................................................... 16

Hoeft v. MVL Group, Inc.,
343 F.3d 57 (2d Cir. 2003) ..................................................................... 15

In re Imperial Corp. of Am.,
174 F.R.D. 475 (S.D. Cal. 1997) ........................................................... 22

J&M Turner, Inc. v. Applied Bolting Tech. Prods.,
1997 U.S. Dist. LEXIS 4447 (E.D. Pa. 1997) .......................................... 5

Lectrolarm Custom Sys. v. Pelco Sales,
212 F.R.D. 567 (E.D. Cal. 2002) ............................................................. 4

Marshall v. U.S. Postal Service,
88 F.R.D. 348 (D.D.C. 1980) ................................................................. 16

Martinez v. City of Fresno,
2006 WL. 3762050 (E.D. Cal. 2006) ..................................................... 21

McCarty v. Bankers Ins. Co., Inc.,
195 F.R.D. 39 (N.D. Fla. 1998) ............................................................... 9

07209/2340500.1

Moon v. SCP Pool Corp.,
    232 F.R.D. 633 (C.D. Cal. 2005) ......................................................................... 4

Moore v. La Habra Relocations, Inc.,
    501 F. Supp. 2d 1278 (C.D. Cal. 2007) ............................................................ 26

Nat'l Hockey League Players Ass'n v. Bettman,
    1994 WL. 38130 (S.D.N.Y. 1994) ..................................................................... 15

O.R. Sec., Inc. v. Prof'l Planning Assoc., Inc.,
    857 F.2d 742 (11th Cir. 1988) ........................................................................... 15

Plant Genetic Systems, N.V. v. Northrop King Co., Inc.,
    6 F. Supp. 2d 859 (E.D. Mo. 1998) ..................................................................... 3

Rojas v. Superior Court,
    33 Cal. 4th 407 (2004) ...................................................................................... 16

SEC v. Dresser Indus., Inc.,
    453 F.Supp. 573 (D.D.C. 1978) ........................................................................ 16

SEC v. Thrasher,
    1996 WL. 125661 (S.D.N.Y. 1996) .............................................................. 21, 22

T. McGann Plumbing, Inc. v. Chicago Journeyman Plumbers' Local 130, U.A.,
    2007 WL. 4039973 (N.D. Ill. Nov. 13, 2007) ................................................... 16

U.S. v. American Optical Co.,
    39 F.R.D. 580 (N.D. Cal. 1966) ........................................................................ 12

Walker v. Wal-Mart Stores, Inc.,
    2007 WL. 1031576 (D. Mont. April 2, 2007) .................................................... 12

Woods v. Saturn Distribution Corp.,
    78 F.3d 424 (9th Cir. 1996) ............................................................................... 15

**Statutes**

Fed R. Civ. Proc. 45 .................................................................................... 20, 22

Local Rule 7-9 .................................................................................................... 29

EXHIBIT 12
P. 69

EXHIBIT 12,
P. 70.

## Preliminary Statement

MGA, Farhad Larian, Stern & Goldberg and Kaye Scholer seek to deprive Mattel of documents related to the Larian v. Larian dispute -- documents that the Discovery Master has recognized are relevant to this litigation. They do not deny that they have the documents. Kaye Scholer admits that it possesses approximately 56 boxes of Larian v. Larian documents. Stern & Goldberg has identified several categories of documents it has. Mattel knows that Farhad Larian has at least 12-15 boxes of Larian v. Larian documents, including at least three to six boxes still unaccounted for after Farhad Larian's limited post-motion production.

These third parties assert that Mattel should obtain the documents from MGA or Isaac Larian instead of them. That is not a valid objection to producing plainly relevant discovery. Moreover, Mattel has sought responsive documents from MGA and Isaac Larian. MGA has produced only *four* documents. Isaac Larian has produced none. The shell game should stop, and the Court should order all of the involved parties and third parties to fully produce documents.

The third parties attempt to excuse their failure to comply with subpoenas by claiming that the documents are subject to protective orders. The law is clear that protective orders do not bar the person who originally possessed the documents from producing them. Mattel has served its requests on all parties to the protective orders in the Larian v. Larian litigations; therefore, all responsive documents should be produceable by at least one person, notwithstanding any protective order. Still, everyone involved here attempts to hide behind the protective orders.

Moreover, Mattel is aware of several important responsive documents that are not subject to the Larian v. Larian protective orders and which have not been produced. For example, Farhad Larian has a 2000 email in which Isaac Larian told him not to turn over documents to lawyers. It has not been produced. Stern & Goldberg refuses to produce the transcript of a January 23, 2003 meeting regarding

1  an appraisal of MGA. Stern & Goldberg claims that the transcript is protected by

2  work product, but supports its claim with nothing more than the assertion that it was

3  obtained by lawyers. Of course, a document does not become privileged simply

4  because an attorney gets it. And no party has produced the documents originally

5  bates-stamped "MZ" (Morad Zarabi) or "ED" (Ernest Dutcher), which were

6  produced to Farhad Larian and Isaac Larian in May and June 2004, before any

7  protective orders were in place.

8          The third parties' burden objections lack merit. Farhad Larian and

9  Stern & Goldberg fail to offer any evidence of burden. The burden Kaye Scholer

10  (Isaac Larian's former attorneys) articulates pales in comparison to the stakes in this

11  case. Isaac Larian has claimed that MGA seeks to recover "billions" from Mattel on

12  MGA's unfair competition claims. The documents in the Larian v. Larian

13  proceedings are central to this case. That case was also a dispute regarding the time

14  of the creation and concealment of Bratz. Moreover, Mattel has offered to pay any

15  copying and inspection costs.

16          The third parties should also be compelled to produce a document-by-

17  document privilege log. Kaye Scholer claims that preparing such a log would be

18  unduly burdensome, but has failed to produce *any* form of log at all. The minimal

19  information Farhad Larian has provided regarding the documents he is withholding

20  is inadequate based on the standard set forth in the cases he cites. Stern &

21  Goldberg's general claims of privilege are inadequate on their face. For example,

22  Stern & Goldberg claims that the financial records of MGA, Isaac Larian and

23  Farhad Larian are privileged, but provides no explanation for that assertion.[1]

24

25  _____

[1]  Each of the third parties make erroneous claims that Mattel failed to satisfy its
meet and confer requirements. In fact, Mattel has made every effort to obtain these
26  documents without motion practice and repeatedly met and conferred. It was
MGA's and the third parties' gamesmanship that necessitated this Motion. In fact,
27  Kaye Scholer demonstrably violated its obligations. Kaye Scholer served its
28  opposition 10 days after the deadlines set forth in both the Stipulation for
(footnote continued)

EXHIBIT 12
P. 72 .

1    Mattel's motions should be granted.

2    **Argument**

3    I.    **MGA AND THE THIRD PARTIES SEEK TO AVOID DISCOVERY**

4          **BY POINTING FINGERS**

5          A.    **That Mattel Can and Has Sought Larian v. Larian Documents**

6                **From The Parties Does Not Justify Quashing the Subpoenas**

7                Farhad Larian, Kaye Scholer and Stern & Goldberg do not deny that

8    they possess documents relating to Farhad Larian's claim that Isaac Larian knew of,

9    but concealed, Bratz in 1999 and 2000. MGA does not deny that either. But each of

10   them asks the Discovery Master to deny Mattel these documents because it can

11   supposedly obtain them from someone else. That argument is wrong, both factually

12   and legally.

13               Mattel is entitled to seek and obtain relevant documents from third

14   parties, whether the same or similar or related documents are in the possession of a

15   party. See Covey Oil Co. v. Continental Oil Co., 340 F.2d 993, 998 (10th Cir.

16   1965) ("a person may not avoid a subpoena by saying that the evidence sought from

17   him is obtainable from another."); see also Plant Genetic Systems, N.V. v. Northrop

18   King Co., Inc., 6 F. Supp. 2d 859, 861-62 (E.D. Mo. 1998) (third party subpoena

19   proper where information sought pertained to a central issue in the underlying claim,

20   it was not burdensome in light of plaintiff's diligent efforts to obtain the information

21   from defendant, and the non-party had signed protective order prohibiting disclosed

22   information from being seen by plaintiff's counsel or nonparty's competitors); In re

23   Bergeson, 112 F.R.D. 692, 695 (D. Mont. 1986) (conclusory assertions that

24   documents sought are available from others more economically "does not constitute

25   a showing of unreasonableness or oppressiveness.").

26

27   Appointment of a Discovery Master and the Local Rules, so the Discovery Master

28   should not consider it.

07209/2340500.1

1       In addition, Mattel has tried to get <u>Larian v. Larian</u> documents from

2   parties and elsewhere.  However, other than public filings, four documents from

3   MGA and an incomplete production from Farhad Larian, all Mattel has received --

4   from parties and third parties -- is a chorus of "subpoena abuse."  The Discovery

5   Master has already ruled that documents related to the <u>Larian v. Larian</u> cases are

6   relevant.  Mattel should not be denied them because MGA refuses to comply with a

7   Court Order and third parties claim that it is someone else's obligation to produce

8   them.

9       The need for full and complete third party discovery is particularly

10  acute in this case.  As shown in Mattel's concurrently filed opposition to MGA's

11  motion to quash subpoenas, Veronica Marlow, a third-party witness who long

12  worked directly with Bryant and MGA, testified just this past Friday that she knew

13  of at least three Mattel employees who *for years* worked on Bratz *while they were*

14  *employed by Mattel*.  Neither MGA nor Bryant had disclosed this information,

15  despite repeated Court Orders and despite the fact that at least one of these

16  individuals was a co-worker of Bryant's at Mattel.  To the contrary, both Bryant and

17  MGA gave flat denials under oath that there was any other Mattel employees

18  knowingly involved.[2]  Nor is this an isolated incident.  As detailed further in

19

20    [2]  MGA's cited cases holding that third party discovery should be limited to

21  documents that cannot be obtained from the parties thus miss the point and are
distinguishable.  In <u>Moon v. SCP Pool Corp.</u>, 232 F.R.D. 633, 637 (C.D. Cal. 2005)

22  the court held that "plaintiffs have not shown they have attempted to obtain these
documents from defendant, the Court finds that, at this time, requiring nonparty

23  KSA to produce these documents is an undue burden on nonparty KSA."  Here,
Mattel has made every effort to obtain the documents from MGA and Isaac Larian.

24  In <u>Lectrolarm Custom Sys. v. Pelco Sales</u>, 212 F.R.D. 567, 573 (E.D. Cal. 2002),

25  the court granted a protective order because the subpoena at issue requested
documents that were not relevant, but noted that the protective order would be lifted

26  if plaintiff "provide[d] the Court with a showing that there is specific, relevant

27  information in [the third party's] possession."  Here, the documents Mattel seeks are
highly relevant, and Mattel has identified specific information in the third parties'

28  (footnote continued)

EXHIBIT 12 ,
P. 79 .

1  Mattel's concurrently filed reply, on other occasions MGA only came clean and

2  produced additional documents -- including compelled documents -- after they were

3  disclosed by third parties pursuant to subpoena.

**B.   Mattel Does Not Have Larian v. Larian Documents From MGA or Isaac Larian**

**1.   MGA Produced Only Four Larian v. Larian Documents**

7          MGA argues that Mattel's subpoenas are improper because they are

8  duplicative of document requests served on MGA and Isaac Larian.[3]  It is ironic that

9  MGA would make this argument because it has produced only *four* documents from

10  the Larian v. Larian disputes.  This, despite the Discovery Master's May 15, 2007

11  Order requiring MGA to produce the documents.[4]  Mattel has been forced to file a

12  motion to enforce the Discovery Master's May 15 Order as well because of MGA's

13  non-compliance.[5]

14          Mattel knows that MGA has a substantial number of responsive

15  documents in its possession that it refuses to produce.  Mattel has obtained an index

16  of boxes of documents kept by File Keepers, LLC, MGA's offsite storage vendor.

17  That index includes four boxes titled "Larian vs. Larian Lit. Files" and one box titled

---

19  possession.  In J&M Turner, Inc. v. Applied Bolting Tech. Prods., 1997 U.S. Dist.

20  LEXIS 4447, at *3 (E.D. Pa. 1997), a motion to quash was granted because the subpoenaing party had already obtained the documents from a party.  Here, Mattel

21  has been deprived substantial relevant documents, and there are substantial reasons to believe that Mattel will not receive the information it is entitled to unless

22  everyone involved is compelled to produce.

23  [3]  MGA's Opposition, at pp. 12-13.

24  [4]  See Declaration of Juan Pablo Alban in Support of Mattel, Inc.'s Motions to Compel Farhad Larian and Stern & Goldberg to Produce Documents, dated

25  December 6, 2007 ("Dec. 6 Alban Dec."), ¶ 35.

26  [5]  See Mattel, Inc.'s Notice of Motion and Motion to Enforce the May 15, 2007 Order of the Discovery Master Regarding Production of Larian v. Larian Documents

27  and for Sanctions, dated December 21, 2007, attached as Exhibit 1 to the

28  concurrently filed Supplemental Declaration of Jon D. Corey ("Corey Dec.").

EXHIBIT 12 ,
P. 75 .

1   "Larian vs. Larian Litigation."[6] MGA has declined to confirm that it has searched

2   those boxes for responsive documents.[7] Given that it has at least five boxes of

3   Larian v. Larian material, but has only produced four documents, it is clear that

4   MGA continues to improperly withhold relevant Larian v. Larian information from

5   Mattel in clear violation of the May 15 Order.

6       **2.**    **Isaac Larian Has Yet to Produce Any Documents**

7          Mattel has also sought Larian v. Larian documents from Isaac Larian.

8   Even though he agreed to produce "all documents referring or relating to Bratz," he

9   has produced no documents concerning the cases with Farhad Larian that concerned

10  the timing of the creation of Bratz.[8] Indeed, he has yet to produce a single page of

11  documents.  The critical disputes in the Larian v. Larian lawsuits and arbitrations

12  involved Farhad Larian's allegations that (a) in late 1999 or early 2000, Isaac Larian

13  and MGA "became aware" of a new product line called "Bratz," (b) starting in early

14  2000 and throughout 2000, Isaac Larian and MGA devised plans to develop and

15  distribute Bratz, and (c) Isaac Larian concealed the plans for Bratz from Farhad

16  Larian in order to keep the valuation of MGA artificially low.[9] Farhad Larian

17  submitted a declaration in which he testified that the "principal allegation" of his

18  suit was that "Isaac tricked [him] into agreeing to arbitration, knowing that he had

19  already concealed, and would continue to conceal during the arbitration process, the

20  company's license for the Bratz product line and other material financial information

21

22  _____

23     [6]  Letter from Morgenthaler Lever to Corey, dated December 19, 2007, at pp. 61-62, Corey Dec., Exh. 2.

24     [7]  Letter from Corey to Park, dated December 12, 2007, Corey Dec., Exh. 3; Corey Dec., ¶ 4.

25     [8]  Isaac Larian's Supplemental Responses to Mattel, Inc.'s First Set of Requests

26  for Documents and Things, dated September 25, 2007, at pp. 134-137, Corey Dec., Exh. 5.

27     [9]  See Larian v. Larian Complaint, dated August 25, 2003, at ¶¶ 13-23, Dec. 6

28  Alban Dec., Exh. 1.

-6-

1  about the company."[10]  Morad Zarabi has also declared that the <u>Larian v. Larian</u>

2  disputes concerned Farhad Larian's allegation "that Isaac concealed from Farhad and

3  [Mr. Zarabi] certain facts pertaining to a product line of [MGA] called the 'Bratz

4  doll,' which allegedly was of great value and would have justified a substantially

5  higher price for Farhad's shares."[11]

6          Thus, virtually every document related to the <u>Larian v. Larian</u> cases is

7  also related to Bratz, whether it expressly refers to Bratz or not.  On December 31,

8  2007, the Discovery Master ordered that Isaac Larian produce such documents by

9  January 11, 2008.[12]  As of the date of this reply, Mattel has received no <u>Larian v.</u>

10  <u>Larian</u> documents from Isaac Larian.[13]

11      **C.    The Claim That MGA Has All Documents Third Parties Have Is**

12          **Incorrect**

13          MGA's argument that because "Mattel can and has requested all of the

14  documents at issue from the parties, including MGA and Isaac Larian . . . [t]here is

15  no legitimate justification from seeking the same documents" from third parties is

16  without merit.[14]  It ignores that the third parties have documents that MGA and Isaac

17  Larian may not have.

18          For example, it appears that Stern & Goldberg is the only entity in

19  possession of the transcript of a January 23, 2003 meeting in which Morad Zarabi

20  participated -- a meeting that occurred six months after Farhad Larian first

21  _____

22  [10]    Declaration of Farhad "Fred" Larian, dated November 7, 2003, ¶ 11, attached as Exhibit 18 to the Declaration of Juan Pablo Alban in Support of Mattel, Inc.'s

23  Motion to Compel Kaye Scholer to Produce Documents, dated December 10, 2007 ("Dec. 10 Alban Dec.").

24  [11]    Declaration of Morad Zarabi, dated September 14, 2004, ¶ 6, Dec. 10 Alban

25  Dec., Exh. 15.

    [12]    Order Granting in Part and Denying in Part Mattel's Motion to Compel
26  Production of Documents by Isaac Larian, dated December 31, 2007, Corey Dec.,

27  Exh. 6.

    [13]    Corey Dec., ¶ 18.
28

1   complained to Mr. Zarabi about Isaac Larian's concealment of Bratz in 2000 and

2   twenty days before Ernest Dutcher released the appraisal that valued MGA "as of

3   December 2000."[15]  MGA's argument also ignores that there is substantial benefit in

4   ensuring that MGA and Larian do not withhold documents they do have and that

5   third party productions will confirm the completeness of those productions (or the

6   lack thereof).  As mentioned above, Mattel has obtained key evidence and

7   documents in this case solely because third parties produced it.

8   **D.    Third Parties Have Even Declined to Confirm That They Have**

9   **Reviewed Their Files**

10          The third parties here have even declined to confirm that they have

11  looked through the documents they have.  Kaye Scholer concedes that it has

12  approximately 56 boxes of Larian v. Larian documents.[16]  Even though Kaye

13  Scholer admits that each document in those boxes "arguably 'relates to Bratz,'"[17] it

14  has agreed to search through only its "1) pleading files; 2) discovery files (i.e.,

15  documents produced in the underlying litigations/arbitrations; and 3) arbitration

16  exhibit (i.e., documents identified and/or submitted as an exhibit during

17  arbitration)."[18]  Mattel should not be deprived of responsive documents that Kaye

18  Scholer admits "relate to Bratz."

19          Stern & Goldberg also refuses to confirm that it has searched its Larian

20  v. Larian files.  In fact, Stern & Goldberg states that it is withholding from

21  production "[i]nternal file memoranda which Stern & Goldberg *may have* prepared

22  in connection with its involvement in the representation of Morad Zarabi, such as, a

23

24      [14]   MGA's Opposition, at p. 10.

25      [15]   Letter from Goldberg to Alban, dated October 31, 2007, Dec. 6 Alban Dec.,
        Exh. 65.

26      [16]   Kaye Scholer's Opposition, at p. 3.

27      [17]   Letter from Delgadillo to Alban, dated November 21, 2007, at p. 3, Dec. 10
        Alban Dec., Exh. 7.

28      [18]   Kaye Scholer's Opposition, at p. 5.

EXHIBIT 12,
P. 72.

1  memo to the file based on a conversation, such as it had with counsel for Mattel."[19]

2  It appears that Stern & Goldberg likewise has not reviewed its files because it can

3  only provide qualified representations of what its files "may" include.

4  **II.     MGA AND THE THIRD PARTIES CANNOT WITHHOLD BASED ON**

5       **LARIAN V. LARIAN PROTECTIVE ORDERS**

6       A.    **A Protective Order Does Not, and Cannot, Prevent The Original**

7             **Possessor of Documents from Producing Them**

8              MGA and the third parties also claim that protective orders in the

9  Larian v. Larian cases prevent them from producing the documents.  Kaye Scholer,

10 which has yet to produce a single document, relies almost entirely on that ground.

11 No protective order operates to prevent the person who possessed or controlled the

12 documents originally from producing them.  See, e.g., McCarty v. Bankers Ins. Co.,

13 Inc., 195 F.R.D. 39, 44 (N.D. Fla. 1998) (party possessing documents prior to

14 entering into a protective order cannot rely on the protective order to keep them

15 confidential).  None of the third parties argue otherwise.  Mattel subpoenaed

16 documents from all parties to the protective orders in the Larian v. Larian

17 proceedings -- MGA, Mr. Zarabi, Isaac Larian and Farhad Larian.  Therefore, the

18 documents should be produced by at least one of the parties originally possessing

19 them.

20              For example, Isaac Larian, and thus his counsel, Kaye Scholer,

21 originally possessed documents such as (i) those relating to his meeting with MGA's

22 Board of Directors on April 11, 2000, where he asked for a separate bonus of 4%

23 royalty on any new toy idea he personally developed in MGA's 2001 line; and (ii)

24 MGA financial models which include revenue stream projections for each item

25 MGA sold or was planning to sell, and which Isaac Larian generated "regularly."[20]

26 _____

27 [19]  Stern & Goldberg Opposition, at p. 8 (emphasis added).

   [20]  Letter from Howarth to Kaye Scholer, dated April 6, 2004, Dec. 10 Alban

28 Dec., Exh. 16.

EXHIBIT 12,
P. 79.

1   Although the protective orders cannot prevent Kaye Scholer from producing those

2   documents, it has not.

3   **B.    Many Responsive Documents Are Not Subject to the Protective**

4           **Orders**

5           Many documents that the third parties refuse to produce are not subject

6   to the protective orders at all.  For example, Mattel is aware that at least one of the

7   third parties possesses the following categories of highly relevant documents that

8   have yet to be produced:

9           •    Documents originally bates-stamped "MZ" [Morad
            Zarabi] or "ED" [Ernest Dutcher] and produced to Farhad
10          Larian and Isaac Larian in May and June 2004; even though no
            protective order was in effect at the time of the production, and
11          a September 2004 protective order expressly encompasses only
            some of these documents, Farhad Larian and Kaye Scholer
12          continue to withhold them.[21]

13          •    Documents related to the April 11, 2000 meeting of
            MGA's Board of Directors, in which Isaac Larian convinced
14          the Board to give him an unprecedented separate bonus of 4%
            royalty on any new toy idea Isaac Larian personally developed
15          in MGA's 2001 line.[22]

16          •    Transcript of a January 23, 2003 meeting in which Morad
            Zarabi participated—a meeting that occurred six months after
17          Farhad Larian first complained to Mr. Zarabi about Isaac
            Larian's concealment of Bratz in 2000 and twenty days before
18          Mr. Dutcher released the appraisal that valued MGA "as of
            December 2000" for the first time.[23]

19
            •    Transcript or tape of a recorded meeting on January 26,
20          2003, among Isaac and Farhad Larian, Mr. Zarabi and an
            accountant, a meeting which again addressed Farhad Larian's
21          allegations against Isaac Larian.[24]

22

23
_____
24   [21]   Stipulation and Protective Order, dated September 23, 2004, Dec. 6 Alban
     Dec., Exh. 46 at Exh. A.
25   [22]   Letter. from Howarth to Kaye Scholer, dated April 6, 2004, Dec. 6 Alban
     Dec., Exh. 39.
26   [23]   Letter from Goldberg to Alban, dated October 31, 2007, Dec. 6 Alban Dec.,
     Exh. 65.
27   [24]   Declaration of Farhad Larian, dated February 5, 2004, Dec. 6 Alban Dec.,
28   Exh. 53 at ¶ 24.

EXHIBIT 12
P. 90

1    • A letter from Isaac Larian to Mr. Zarabi dated August 29, 2003 apparently related to the 2003 appraisal valuing MGA as of December 31, 2000.[25]

2

3    • Financial models of MGA, including from 2000, which included revenue stream projections for each item MGA sold or was planning to sell, and which Isaac Larian generated "regularly."[26]

4

5    • An email in which Isaac Larian told Farhad Larian not to turn over documents to lawyers.[27]

6

7    The third parties (and, for that matter, MGA) do not, and cannot, explain why such

8    documents have not been produced.

9    C.    **The Reliance on the Protective Orders Is a Delay Tactic**

10    MGA and the third parties are using the issue of the protective orders as

11    a delaying tactic.  The Larian v. Larian arbitration protective order, for example,

12    may be modified by agreement to allow the production of documents subject to the

13    protective order in this action, which MGA has conceded affords *more* protection.[28]

14    No arbitrator approval is required.  Mattel asked for such an agreement by counter-

15    signature on December 12, 2007.[29]  It has not been forthcoming.  To the extent there

16    is any issue regarding the applicability of the Larian v. Larian protective orders,

17    Mattel respectfully requests that, with respect to the Larian v. Larian arbitration

18    protective order, the Discovery Master order that documents subject to that

19    protective order may be produced subject to the protective order here without

20    violating the former.

21

22

23

24    [25]    Letter from Stern to Alban, dated October 16, 2007, Dec. 6 Alban Dec., Exh. 12 at 1.

25    [26]    Letter. from Howarth to Kaye Scholer, dated April 6, 2004, Dec. 6 Alban Dec., Exh. 39.

26    [27]    Declaration of Michael T. Zeller, dated January 3, 2007 ("Zeller Dec."), ¶ 2.

27    [28]    Letter from Corey to Morgenthaler Lever and Allen, dated December 12, 2007, Corey Dec., Exh. 7.

28    [29]    Id.

J7209/2340500.1

EXHIBIT 12,
P. 91.

III.     **MGA'S AND THE THIRD PARTIES' BURDEN OBJECTIONS LACK
MERIT**

A.     **Any Alleged Burden Is Justified By The Stakes Here**

Farhad Larian, Stern & Goldberg and Kaye Scholer all object, in conclusory terms, that compliance with the subpoenas is burdensome.[30]  The claim that compliance with a subpoena "would necessitate the examination of large quantities of documents, requiring a great deal of time and expense . . . is not alone a sufficient reason for refusing discovery which is otherwise appropriate. . . ." U.S. v. American Optical Co., 39 F.R.D. 580, 586-87 (N.D. Cal. 1966).  Moreover, the burden alleged should be balanced against what is at issue in the case.  Isaac Larian has claimed that MGA is seeking "billions" from Mattel on MGA's unfair competition claims.[31]  It would be unfair to deprive Mattel of crucial relevant information about Bratz development and concealment because of vague, unsupported objections of burden.

Because they are the parties objecting on grounds of undue burden, the third parties had the burden of proof to adduce evidence supporting that objection.  Neither Stern & Goldberg nor Farhad Larian have come forward with any evidence supporting their burden objections.  The Discovery Master should accordingly overrule their objections on this ground alone.  See Walker v. Wal-Mart Stores, Inc., 2007 WL 1031576, at *5 (D. Mont. April 2, 2007) ("The responding party has the burden of demonstrating not only 'undue burden or expense,' but also that the burden or expense is unreasonable in light of the benefits to be secured from the discovery.")  (quoting Fears v. Wal-Mart, Inc., 2000 WL 1679418, at *2 (D. Kan. 2000)).

---

[30]   MGA also makes burden objections in its opposition despite the fact that it lacks standing to do so because the alleged burden would necessarily be on the third parties, not on it.

[31]   Nightline Transcript, at p. 5, Corey Dec., Exh. 9.

EXHIBIT 11,
P. 22.

1    Kaye Scholer is the only third party that has identified a specific burden

2    in terms of time and cost.  Kaye Scholer, though, are the former counsel for Isaac

3    Larian, a party in this case.  Kaye Scholer's and MGA's claims that non-parties are

4    subject to greater protections from allegedly burdensome discovery are less

5    persuasive, coming from the party's former attorneys.  This is especially true since

6    Mattel has requested the same information from Isaac Larian, a party, directly but he

7    has failed to produce any responsive documents.  Isaac Larian should not be

8    permitted to hide responsive documents by having them maintained in his former

9    attorneys' possession, only for his attorneys to claim that they should not be required

10   to produce the documents because they are third parties.

11       **B.     Mattel Has Offered to Pay the Third Parties' Costs of Copying and**

12            **Inspection**

13       The parties burden objections are also unpersuasive because Mattel has

14   offered to pay the costs of copying and inspection.  Mattel has offered to pay all

15   copying costs for Farhad Larian, Stern & Goldberg and Kaye Scholer.[32]  A number

16   of other third parties upon whom Mattel has served subpoenas in this case have

17   accepted Mattel's offer to pay copying costs and have produced documents

18   notwithstanding previous burden objections.[33]  Mattel has also offered to pay for

19   their inspection costs by offering to have its own paralegal inspect documents with

20   an express agreement of not waiving any privileges.[34]  The third parties have

21   summarily refused.  Stern & Goldberg's and Kaye Scholer's failure to accept, or

22   even address, Mattel's offers to reduce any alleged burden associated with the

23

24   [32]   Letter from Alban to Morgenthaler Lever, dated November 2, 2007, Dec. 6
25   Alban Dec., Exh. 28; Letter from Alban to Goldberg, dated October 3, 2007, Dec. 6
     Alban Dec., Exh. 59; Letter from Alban to Delgadillo, dated November 16, 2007,
26   Dec. 10 Alban Dec., Exh. 6.
27   [33]   Supplemental Declaration of Juan Pablo Alban, dated January 3, 2008, ¶ 4.
     [34]   Letter from Alban to Delgadillo, dated November 16, 2007, Dec. 10 Alban
28   Dec., Exh. 6.

1  production of responsive documents confirms that their burden objections are

2  without merit.

### C.    Any Burden Claims Are Significantly Outweighed By the Importance of the Documents That Mattel Seeks

5          Alleged burden is not a reason to deprive Mattel of documents that go

6  to the heart of this case: the timing of Bratz creation and development and Isaac

7  Larian's concealment of it.  The Discovery Master has previously held that

8  documents related to Larian v. Larian are relevant to these key issues.[35]

9          MGA claims that Mattel's requests for documents related to the Larian

10 v. Larian proceedings are overbroad because they are not tailored to Bratz or Prayer

11 Angels.  In fact, as discussed in Section I.B.2. above, the key disputes in the Larian

12 v. Larian proceedings all concerned Bratz, including Isaac Larian's concealment of

13 Bratz and MGA's valuation in light of Bratz.  Virtually all, if not all, documents

14 related to the Larian v. Larian proceedings are therefore relevant.  Furthermore, the

15 documents from those proceedings are relevant to the parties' damages claims and to

16 MGA's disqualification threats against Mattel's counsel. Mattel's requests for

17 documents related to those proceedings are not overbroad.

18         Farhad Larian argues that Mattel's request for documents related to

19 payments made to him by the parties in this case are overbroad.  However, the

20 Discovery Master has already found that payments to Farhad Larian are relevant to

21 the claims and defenses in this case.[36]  As the Discovery Master has held,

22 "[p]ayments to . . . Farhad Larian may also show possible bias and be used for

23

24  [35]  Order Granting Mattel's Motion to Compel Production of Documents and
25  Interrogatory Responses by MGA, dated May 15, 2007, at pp. 10-11, Dec. 6 Alban
    Dec., Exh. 19.  Notably, Stern & Goldberg disclaims any objection on the grounds
26  of relevance. Stern & Goldberg's Opposition., at p. 7.
27  [36]  Order Granting in Part and Denying in Part Mattel's Motion to Compel MGA
    to Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6),
28  dated September 25, 2007, at pp. 11-12, Dec. 6 Alban Dec., Exh. 45.

1  impeachment purposes."[37]  Farhad Larian claims that he has produced all documents

2  "that potentially go to bias."[38]  But Mattel should not be required to take Farhad

3  Larian's word for it.  That is especially true given that Farhad Larian originally

4  claimed to have produced all documents that directly reference Bratz.  Mattel is

5  aware of at least one specific document -- Ernest Dutcher's declaration -- that

6  references Bratz in Farhad Larian's possession that he did not produce until after

7  Mattel filed its motion.[39]  Mattel is entitled to all payments made by parties in this

8  case to Farhad Larian because such payments go to his credibility.

9  IV.    **STERN & GOLDBERG CANNOT SHIELD RESPONSIVE**

10         **DOCUMENTS BEHIND AN INAPPLICABLE ARIBTRAL**

11         **PRIVILEGE**

12         Stern & Goldberg argues that it need not produce responsive

13  documents because the documents are protected by the arbitral privilege.  As Mattel

14  discussed in its Motion, the arbitral privilege does not apply here.  The arbitral

15  privilege applies only to cases in which an arbitrator's ruling is challenged.  See

16  O.R. Sec., Inc. v. Prof'l Planning Assoc., Inc., 857 F.2d 742, 748 (11th Cir. 1988)

17  ("Courts have repeatedly condemned efforts to depose members of an arbitration

18  panel *to impeach or clarify their awards*.") (emphasis added).

19         The cases that Stern & Goldberg cites are distinguishable.  Each

20  involve attempts to obtain discovery from an arbitrator where the correctness of the

21  arbitrator's ruling is at issue.  See, e.g., Woods v. Saturn Distribution Corp., 78 F.3d

22  424 (9th Cir. 1996) (denying discovery for motion to vacate arbitration award);

23  Hoeft v. MVL Group, Inc., 343 F.3d 57 (2d Cir. 2003) (finding deposition of

24  arbitrator not proper for motion to vacate arbitration award); Nat'l Hockey League

25

26  [37]  Id. at p. 11.
     [38]  Farhad Larian's Opposition, at p. 19.
27  [39]  See Declaration of Ernest Dutcher, dated January 9, 2005, Dec. 6 Alban Dec.,
28  Exh. 7.

EXHIBIT 12 ,
P. 95 .

1 <u>Players Ass'n v. Bettman</u>, 1994 WL 38130 (S.D.N.Y. 1994) (*allowing discovery* in

2 lawsuit to set aside two arbitration decisions).

3       Mattel is not challenging any decisions made by Mr. Zarabi as an

4 arbitrator.  Courts frequently allow discovery from arbitrators where, as here, the

5 arbitrator's ruling is not at issue in the case.  <u>See</u> <u>T. McGann Plumbing, Inc. v.</u>

6 <u>Chicago Journeyman Plumbers' Local 130, U.A.</u>, 2007 WL 4039973, at *3 (N.D. Ill.

7 Nov. 13, 2007) ("a party may depose an arbitrator who possesses directly relevant

8 and probative evidence . . . so long as the testimony elicited from the arbitrator does

9 not question the correctness of his decision."); <u>see</u> <u>also</u> <u>Bliznik v. Int'l Harvester Co.</u>,

10 87 F.R.D. 490, 492 (N.D. Ill. 1980) (allowing deposition of arbitrator where "[t]he

11 issues raised by this motion do not focus on the correctness of the arbitrator's

12 decision given the facts presented at the hearing.").  Stern & Goldberg fails to

13 address this critical distinction.[40]

14       Finally, Stern & Goldberg does not address Mattel's showing that. even

15 assuming the arbitral privilege was applicable, it has been waived because Mr.

16 Zarabi admits to having produced documents to Farhad Larian related to Mr.

17 Zarabi's and his appraiser's deliberations.[41]  <u>See</u> <u>Hartford Fire Ins. Co. v. Garvey</u>,

18 109 F.R.D. 323, 327 (N.D. Cal. 1985) (voluntary disclosure inconsistent with

19 confidential nature of attorney client relationship waives attorney client privilege);

20 <u>Marshall v. U.S. Postal Service</u>, 88 F.R.D. 348, 350 (D.D.C. 1980) ("Once a party

21 begins to disclose any confidential communication . . . the privilege is lost for all

22 communications relating to the same matter.") (quoting <u>SEC v. Dresser Indus., Inc.</u>,

23

---

24   [40]  Stern & Goldberg does not dispute that "[e]ven under California's broader

25 protections of an arbitrator's deliberations, such protection does not apply to 'raw data' on which an arbitrator relies to make his decisions." <u>See</u> Mattel's Motion to

26 Compel Stern & Goldberg, at p. 19 (citing <u>Rojas v. Superior Court</u>, 33 Cal. 4th 407,

27 417 (2004)).
  [41]  <u>See</u> Mattel's Motion to Compel Stern & Goldberg to Produce Documents, at

28 pp. 20-21.

1  453 F.Supp. 573, 576 (D.D.C. 1978)).  Stern & Goldberg's arbitrator's privilege

2  objection should be overruled.

3  **V.      FARHAD LARIAN'S CLAIM THAT ONLY THREE REQUESTS**

4  **REMAIN AT ISSUE IS INCORRECT**

5         Farhad Larian claims that he has produced all non-privileged

6  responsive documents except three of the document requests at issue.  Not so.

7  Farhad Larian produced approximately six boxes of documents, including those

8  produced after Mattel filed this Motion.[42]  Farhad Larian claims that he has

9  approximately three boxes of privileged material.[43]  That leaves three to six boxes of

10  non-privileged material unaccounted for.  Conkle, Kremer & Engle, Farhad Larian's

11  former attorneys, represented that they provided approximately 12 to 15 boxes of

12  documents related to the Larian v. Larian proceedings to Kabatech Brown Kellner,

13  Farhad Larian's successor attorneys.[44]  Kabatech Brown Kellner claims that it gave

14  these boxes to Farhad Larian without retaining copies when its representation of

15  Farhad Larian ended.[45]  Farhad Larian provides no explanation for why he has failed

16  to produce three to six boxes of likely relevant non-privileged information.  Unless

17  Farhad Larian destroyed those documents they should still be in his possession.  If

18  he has destroyed them, he should explain why he did so despite Mattel's having sent

19  him a preservation letter in 2005, before his arbitration with Isaac Larian ended.[46]

20         Mattel is also aware of a number of specific responsive documents in

21  Farhad Larian's possession that he has not produced, further demonstrating that his

22  representation that he has produced "all relevant documents from the Larian v.

23

24

25  [42]  Declaration of Scott E. Gizer, dated December 26, 2007, ¶ 21.

    [43]  Farhad Larian's Opposition, at p. 20.

26  [44]  Letter from Alban to Conkle, dated December 7, 2007, Corey Dec., Exh. 11.

    [45]  Letter from Alban to Kellner, dated December 13, 2007, Corey Dec., Exh. 12.

27  [46]  See Letter from Krebs to Wilson, dated December 22, 2005 (confirming that

28  Farhad Larian received document preservation letter), Corey Dec., Exh. 13.

EXHIBIT _12_
P._27_.

1  Larian disputes" is false.[47]  For example, there are a number of documents produced

2  in the Larian v. Larian litigations by Morad Zorabi and Ernest Dutcher (stamped

3  "MZ" and "ED" respectively) that are expressly not subject to protection under the

4  protective orders.[48]  These have not been produced.[49]  Farhad Larian has also failed

5  to produce the raw data that was provided to the appraisers in the Larian v. Larian

6  litigations and the 2000 financial models that Farhad Larian claimed Isaac Larian

7  prepared.[50]  He also has not produced the three boxes of documents that his counsel

8  showed Mattel's counsel and upon which MGA's disqualification threats against

9  Mattel's counsel are based.

10      Farhad Larian's selective production is further demonstrated by his

11  assertion that he has "produced all documents that *directly referenced* Bratz and

12  Carter Bryant."[51]  As an initial matter, the product that became known as "Bratz"

13  was referred to by different names early in its conception and design -- the time

14  period that is of greatest concern in this case.[52]  By Farhad Larian's own admission

15  his production would not include such documents.

16      In addition, there are many highly relevant documents that may not

17  "directly reference" Bratz or Carter Bryant.  For example, the raw financial

18  information that was used for the appraisals of MGA and documents related to the

19  loan MGA obtained from Wachovia Corporation are relevant to show the timing of

20  Bratz creation and development, but would not likely "directly reference" Bratz or

21  Carter Bryant.  Moreover, Farhad Larian himself filed the Dutcher Declaration,

22  _____

23  [47]  Farhad Larian's Opposition, at p. 13.
    [48]  Stipulation and Protective Order, dated September 23, 2004, Dec. 6 Alban

24  Dec., Exh. 46 at Exh. A.
    [49]  Letter from Gizer to Alban, dated December 12, 2007, Corey Dec., Exh. 15.

25  [50]  Letter from Howarth to Kaye Scholer, dated April 6, 2004, Dec. 6 Alban

26  Dec., Exh. 39.
    [51]  Farhad Larian's Opposition, at p. 6 (emphasis added).

27  [52]  See Leahy Depo. Tr. at 134:25 - 136:17 (stating that Bratz was originally

28  called "Grrlz"), Corey Dec., Exh. 14.

1    which specifically references Bratz, in the Larian v. Larian proceedings.[53]   That

2    document has not been produced in its entirety.[54]

3            In response to Request Nos. 17-19, Farhad Larian only states that "[i]f

4    the amendment to the protective orders are effectuated, Farhad Larian is willing to

5    produce the remaining documents related to the appraisals of MGA."[55]   But that is

6    not all that those requests seek.   For example, Request No. 19 seeks "[a]ll

7    DOCUMENTS RELATING TO the value of MGA and/or BRATZ at any time since

8    January 1, 1999."[56]   That request is clearly relevant to Mattel's damages.   Farhad

9    Larian cannot unilaterally limit the request to documents "related to the appraisals of

10   MGA" and then claim that the request is no longer at issue.

11           Farhad Larian's refusal to produce documents that relate to the

12   appraisals of MGA until the protective orders are amended is improper.   Farhad

13   Larian has himself publicly filed -- as attachments to the Dutcher Declaration --

14   documents related to the appraisals.[57]   Having filed them publicly, he cannot now

15   claim that all such documents are subject to protective order confidentiality

16   restrictions.

17           Farhad Larian also misstates the scope of Request No. 2, claiming that

18   it is overbroad because it "seeks all documents related to 'any dispute' between

19   Farhad Larian and Isaac Larian, whether it relates to Mattel v. Bryant issues or even

20   a legal proceeding."[58]   In fact, Request No. 2 is limited to disputes related to

21

22   [53]   See Declaration of Ernest Dutcher, dated January 9, 2005, Dec. 6 Alban Dec., Exh. 7.

23   [54]   Id. at p. 4; Letter from Gizer to Alban, dated December 12, 2007, Corey Dec., Exh. 15.

24   [55]   Farhad Larian's Opposition, at p. 15.

25   [56]   Subpoena served on Farhad Larian, dated August 31, 2007, Dec. 6 Alban Dec., Exh. 20.

26

27   [57]   See Declaration of Ernest Dutcher, dated January 9, 2005, Dec. 6 Alban Dec., Exh. 7.

28   [58]   Farhad Larian's Opposition, at p. 13.

EXHIBIT 12
P. 99

1   lawsuits or arbitration proceedings: "All DOCUMENTS, including without
2   limitation any and all pleadings, briefs, decisions, orders, correspondence and other
3   COMMUNICATIONS, created, reviewed, transmitted or received by YOU *in*
4   *connection with any lawsuit or arbitration proceedings*, including without limitation
5   any pre-arbitration and post-arbitration proceedings, or any other dispute between
6   YOU and ISAAC LARIAN."[59]  Farhad Larian has never contended that there are
7   any lawsuits or arbitrations between him and Isaac Larian other than the ones that
8   the Discovery Master has already held are relevant to this case.

9           Farhad Larian now also claims that he "never took the position that he
10  would not respond to [Request Nos. 8 and 9]."[60]  Farhad Larian served Mattel with a
11  laundry list of boilerplate objections to those requests with no indication that he
12  would produce any documents.[61]  Mattel was forced to move as to those requests
13  based on Farhad Larian's refusal to produce.

## VI.   EACH OF THE THIRD PARTIES MUST PRODUCE ADEQUATE PRIVILEGE LOGS

16          Farhad Larian, Kaye Scholer and Stern & Goldberg are withholding
17  documents on the basis of privilege.  None, however, has provided a privilege log
18  that comports with the requirements of Rule 45(d)(2).  That rule requires a claim of
19  privilege to "be made expressly and . . . supported by description of the nature of the
20  documents, communications, or things not produced that is sufficient to enable the
21  demanding party to contest the claim."

22          Farhad Larian claims that his general list of categories of documents is
23  sufficient.  That is wrong.  The entries on Farhad Larian's privilege log do not
24  provide sufficient description for Mattel to assess his claim of privilege.  For

---

25  [59]  Subpoena served on Farhad Larian, dated August 31, 2007, Dec. 6 Alban
26  Dec., Exh. 20.
27  [60]  Farhad Larian's Opposition, at p. 6.

28

1   example, Farhad Larian groups several documents into single entries described only

2   as "[v]arious articles, pleadings, and correspondence that are marked with comments

3   and remarks of counsel" and "[v]arious e-mails between MGA and its counsel."[62]  It

4   is well established that over-generalized descriptions that fail to adequately identify

5   specific documents are insufficient.  See Martinez v. City of Fresno, 2006 WL

6   3762050, at *6 (E.D. Cal. 2006).  Farhad Larian claims that to produce a document-

7   by-document privilege log would be unduly burdensome because he has three boxes

8   of privileged materials.  Given the size of this case and what is at stake, the burden

9   of logging three boxes of allegedly privileged documents is not undue under the

10  circumstances.  (See Section III. above).

11          Some courts have, under limited circumstances, accepted privilege logs

12  which did not identify documents document-by-document.  Those circumstances are

13  not present here, and in any event Farhad Larian's "privilege log" is inadequate even

14  by the standards of those cases.  In SEC v. Thrasher, 1996 WL 125661, at *1

15  (S.D.N.Y. 1996), the court noted that "[t]ypically, a privilege log must identify each

16  document and provide basic information, including the author, recipient, date and

17  general nature of the document," but allowed the defendant to provide categories of

18  privileged documents where the defendant also provided an attorney affidavit

19  representing that "all of the documents in question reflect communications between

20  defense attorneys and that all of these documents have been kept in confidence." Id.

21  at *2.  Farhad Larian has provided no such affidavit here.

22          Kaye Scholer has failed to produce *any* privilege log.  It cites cases

23  recognizing that in certain cases a document-by-document privilege log may not be

24  required.  But those cases still require some description of what is withheld as

25

26

---

27  [61]  See Response and Objections to Subpoena Served on Non-Party Farhad Larian, dated September 21, 2007, Dec. 6 Alban Dec., Exh. 21.

28  [62]  Farhad Larian's Privilege Log, at p. 1, Dec. 6 Alban Dec., Exh. 52.

1    privileged.[63]  Even now Kaye Scholer does not offer to produce any description of

2    what it is withholding as privileged.  This is contrary to the requirements of Rule

3    45(d)(2).  This steadfast refusal to provide any form of privilege log warrants waiver

4    of the privilege.  See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist.

5    of Mont., 408 F.3d 1142, 1148-50 (9th Cir. 2005) (affirming district court's holding

6    that party waived privilege objections by failing to provide privilege log within

7    thirty days of serving its responses); In re Imperial Corp. of Am., 174 F.R.D. 475,

8    477 (S.D. Cal. 1997) (waiver rule for failure to provide privilege log applies to

9    subpoenas to third parties, such as law firms that represent party).  At the very least,

10   Kaye Scholer should be compelled to produce a privilege log.  Given the size and

11   stakes of this litigation (and the Kaye Scholer is the former attorneys for a party to

12   this case), Kaye Scholer should be required to produce a document-by-document log

13   as is generally required.  See Gail v. New England Gas Co., Inc., 243 F.R.D. 28, 33

14   (D. R.I. 2007) (discussing universally accepted requirement of document-by-

15   document log in the context of Rule 45); SEC v. Thrasher, 1996 WL 125661, at *2

16   (S.D.N.Y. 1996) ("Typically, a privilege log must identify each document and

17   provide basic information, including the author, recipient, date and general nature of

18   the document.").

19          Stern & Goldberg provides particularly equivocal descriptions of the

20   categories of documents it claims are privileged.  For example, Stern & Goldberg

21   claims to have "[i]nternal file memoranda which Stern & Goldberg *may have*

22   prepared in connection with its involvement in the representation of Morad Zarabi,

23   such as, a memo to the file based on a conversation, such as it had with counsel for

24   Mattel."[64]  That description provides Mattel and the Court little basis on which to

25   assess Stern & Goldberg's claim of privilege.  Whether documents were prepared in

26

27   [63]  See, e.g., In re Imperial Corp. of Am., 174 F.R.D. 475, 478 (S.D. Cal. 1997)
     (requiring privilege log with categorical descriptions of documents withheld).

28   [64]  Stern & Goldberg Opposition, at p. 8 (emphasis added).

1  connection with Stern & Goldberg's representation of Morad Zarabi is a critical fact

2  in determining whether the documents are subject to work product protections.

3  Mattel cannot evaluate privilege claims base on such qualified generalities.

4      Stern & Goldberg also asserts that the "financial records of ABC, Isaac

5  Larian and/or Farhad Larian" are privileged.  This objection lacks merit on its face.

6  It is not clear how financial records could possibly be privileged; certainly Stern &

7  Goldberg provides no explanation or proof how they could be.  Stern & Goldberg

8  had no attorney-client relationship with ABC, Isaac Larian or Farhad Larian.

9  Accordingly, Stern & Goldberg's privilege claims should be rejected.

10      Stern & Goldberg also asserts that the transcript of a January 23, 2003

11  meeting is protected by work product because "it was obtained by Stern & Goldberg

12  for use in its representation of Mr. Zarabi, and was not disseminated to anyone

13  outside of the Firm."[65]  A document does not become privileged simply because it

14  was obtained by attorneys.  See Clavo v. Zarrabian, 2003 WL 24272641, at *2 (C.D.

15  Cal. 2003) ("The mere transmittal of documents to a lawyer is insufficient to bring

16  documents under the umbrella of the attorney-client privilege.").  Further, a

17  transcript of a non-privileged meeting is not work product because it does not

18  contain any attorney opinions or mental impressions.  See In re Grand Jury

19  Subpoenas, 318 F.3d 379, 384 (2d Cir. 2003) ("the principle underlying the work

20  product doctrine -- sheltering the mental processes of an attorney as reflected in

21  documents prepared for litigation -- is not generally promoted by shielding from

22  discovery materials in an attorney's possession that were prepared neither by the

23  attorney nor his agents.").

24

25

26

27                                                          EXHIBIT 12,
                                                            P. 92.
28  _____
    [65]  Id. at p. 12.

VII. **THE THIRD PARTIES' CLAIMS THAT MATTEL FAILED TO COMPLY WITH THE LOCAL RULES AND MEET AND CONFER REQUIREMENTS ARE NOT TRUE**

A. **Mattel Satisfied Its Meet and Confer Requirements With Farhad Larian**

Mattel first requested a meet and confer with Farhad Larian on October 3, 2007.[66] Farhad Larian's counsel, however, delayed agreeing to a conference until November 13, 2007, after Mattel had requested a meet and confer on at least four separate occasions.[67] The parties then conducted two separate meet and confers, one on November 20, 2007 and another on November 27, 2007.[68] In total, Mattel's counsel and Farhad Larian's counsel met and conferred over Mattel's subpoena for more than three hours.[69] After the parties' lengthy meet and confers, counsel for Farhad Larian raised a few, minor issues in a letter of November 30, 2007.[70] Counsel for Farhad Larian indicated that she could discuss those minor issues on the morning of December 5, 2007.[71] However, she later asked that any discussion be rescheduled for late in the afternoon on December 5, 2007.[72] Mattel agreed.[73] Then, at 10:00 p.m. the night of December 4, 2007, counsel for Farhad Larian indicated that any discussion would have to be postponed and that counsel for MGA would

---

[66] Letter from Alban to Morgenthaler Lever, dated October 3, 2007, Dec. 6 Alban Dec., Exh. 23.

[67] Letter from Alban to Morgenthaler Lever, dated December 10, 2007, Corey Dec., Exh. 16.

[68] Id.

[69] Id.

[70] Id.; Letter from Morganthaler Lever to Alban, dated November 30, 2007, Dec. 6 Alban Dec., Exh. 71.

[71] Letter from Alban to Morgenthaler Lever, dated December 10, 2007, Corey Dec., Exh. 16.

[72] Id.

[73] Id.

EXHIBIT ___,
P. 43 .

07209/2340500.1

1  need to participate.[74]  With this history, and the discovery cut-off fast approaching,

2  Mattel could not simply stand idly by while Farhad Larian's counsel and MGA

3  engaged in further delay.  Mattel more than satisfied its meet and confer

4  requirements.

**B.     Kaye Scholer's Claim That Mattel Filed Its Motion Prematurely Is Incorrect**

7  According to Kaye Scholer, it has agreed to produce all non-privileged

8  responsive documents that it has located after a search of a limited number of its

9  files relating to _Larian v. Larian_.  Yet, Mattel has yet to receive a single document

10  from Kaye Scholer.[75]  Kaye Scholer' original objections made no reference to any

11  reference to protective orders, which is a waiver of that objection.[76]  Kaye Scholer

12  now claims that it will not produce any documents until the protective orders from

13  the _Larian v. Larian_ proceedings are amended.[77]

14  As described above, numerous documents from _Larian v. Larian_ are not

15  subject to the protective order, including documents that Isaac Larian was in control

16  of before the protective orders were entered.  Even based on Kaye Scholer's new

17  found objections, it should at least produce those documents.  It has not.  Moreover,

18  Kaye Scholer has failed to review its files or produce a privilege log of documents it

19  is withholding as privileged.[78]  In short, Mattel's motion was necessary because

20  Kaye Scholer failed to meet its obligations under Rule 45.

21

EXHIBIT 12
P. 94

22 _____

23  [74]  Id.
     [75]  Corey Dec., ¶ 18.

24  [76]  Objection to Subpoena in a Civil Case, dated September 18, 2007, Dec. 10

25  Alban Dec., Exh. 2.
     [77]  Kaye Scholer's Opposition, at p. 2.

26  [78]  See Kaye Scholer's Opposition, at p. 5 (acknowledging that Kaye Scholer has

27  reviewed only "1) pleading files; 2) discovery files (i.e., documents produced in the
     underlying litigations/arbitrations); and 3) arbitration exhibit (i.e., documents

28  identified and/or submitted as an exhibit during arbitration).

07209/2340500.1

1  **VIII.  <u>KAYE SCHOLER'S OPPOSITION SHOULD BE REJECTED AS</u>**

2  **<u>UNTIMELY</u>**

3        The Discovery Master should not consider Kaye Scholer's opposition at

4  all because it was not timely filed.  <u>See</u> Local Rule 7-12 ("The failure to file any

5  required paper, or the failure to file it within the deadline, may be deemed consent to

6  the granting or denial of the motion."); <u>see also</u> <u>Moore v. La Habra Relocations,</u>

7  <u>Inc.,</u> 501 F. Supp. 2d 1278, 1279 (C.D. Cal. 2007) (granting motion for failure to

8  timely file opposition).  Mattel served its Motion on December 10, 2007.  Pursuant

9  to the Stipulation for Appointment of a Discovery Master, Kaye Scholer had five

10  court days -- to December 17, 2007 -- to submit its opposition.[79]  Kaye Scholer did

11  not serve its opposition until December 27, 2007 -- ten days late.[80]

12        Kaye Scholer relied on Local Rule 7-9 to calculate the due date for its

13  opposition.  It requires that opposing papers be served "not later than fourteen (14)

14  days before the date designated for the hearing of the motion."  Local Rule 7-9 does

15  not apply to discovery motions.  Local Rule 37-2.2 would govern.  It requires that an

16  opposing party provide its opposition portion of a joint stipulation within five court

17  days after receiving the moving party's portion.  Kaye Scholer's opposition is

18  therefore inconsistent with the deadlines set forth in both the Local Rules and the

19  Stipulation for Appointment of a Discovery Master, and should be rejected.

20

21

22                                     **EXHIBIT 12,**

23                                       **P. 15.**

24

25

26  [79]  Stipulation for Appointment of a Discovery Master; and Order, dated
    December 6, 2006, at p. 4, Dec. 6 Alban Dec., Exh. 40.

27  [80]  Unlike with Stern & Goldberg and Farhad Larian, Mattel entered into no

28  agreement with Kaye Scholer to extend its time to respond.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Discovery Master (1) overrule each of Farhad Larian's, Stern & Goldberg's and Kaye Scholer's objections; and (2) compel Farhad Larian, Stern & Goldberg and Kaye Scholer to produce all documents responsive to every request in Mattel's subpoenas; and order Mr. Larian, Stern & Goldberg and Kaye Scholer to produce documents withheld on privilege grounds or, in the alternative, to prepare and serve within seven calendar days a document-by-document privilege log.

DATED:  January 3, 2008          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By _____
   Jon D. Corey
   Attorney for Mattel, Inc.

EXHIBIT 12 ,
P. 96 .

# Exhibit 13

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone:    (415) 774-2611
Facsimile:     (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>              Plaintiff,<br><br>       v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>              Defendant. | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER RE MATTEL'S MOTIONS TO COMPEL FARHAD LARIAN, KAYE SCHOLER AND STERN & GOLDBERG TO PRODUCE DOCUMENTS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

EXHIBIT 13
P. 97

I. INTRODUCTION

The following motions are pending for decision, each of which seeks discovery from non-

parties:  Mattel, Inc.'s ("Mattel") (1) Motion to Compel Farhad Larian to Produce Documents; (2)

Motion to Compel Kaye Scholer to Produce Documents; and (3) Motion to Compel Stern &

1

1   Goldberg to Produce Documents. Each of the non–parties submitted oppositions.[1]  In addition,

2   MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de

3   Mexico S.R.L. de C.V. (collectively "MGA") submitted oppositions to the motions.  Mattel

4   submitted a consolidated reply on January 3, 2008.  The motions were heard on January 16, 2008,

5   at which time Mattel agreed to hold in abeyance its Motion to Compel Stern & Goldberg to

6   Produce Documents.  This Order, therefore, addresses only Mattel's motions to compel Farhad

7   Larian and Kaye Scholer to produce documents.

8          On January 22, 2008, the parties submitted a Stipulation Regarding Protective Orders to

9   facilitate production of documents responsive to the subpoenas at issue.

10                                      II. BACKGROUND

11         Since the inception of MGA in 1979 until December of 2000, Isaac Larian, a defendant

12  herein and MGA's CEO, and his brother Farhad Larian, a non-party, shared ownership and

13  management of MGA.  A dispute developed between the two brothers and in March of 2000,

14  Isaac Larian proposed that Farhad Larian sell his interest in MGA to him.

15         On September 28, 2000, the Larian brothers agreed to have their uncle, Morad Zarabi,

16  arbitrate their dispute and decide a fair value for MGA and also decide which brother should sell

17  his ownership interest to the other.  The brothers' agreement to arbitrate was entered into ten days

18  after the alleged effective date of Carter Bryant's contract purportedly assigning rights to Bratz to

19  MGA.  Isaac Larian did not tell his brother about the contract with Bryant.

20         Mr. Zarabi retained an appraiser, Ernest Dutcher, to value MGA based on "the period

21  ending December 31, 1999."  By December 4, 2000, Mr. Zarabi determined that Farhad Larian

22  should sell his 45% ownership interest in MGA to Isaac Larian and the two entered into an

23  Agreement for Sale of Stock by which Farhad Larian sold his interest for $8.775 million.

24

25                                              **EXHIBIT 13 ,**
                                                **P. 43 .**

26

27         [1] Mattel contends that Kaye Scholer's opposition was not timely filed and therefore should not be
       considered.  Although the opposition was ten days late, Kaye Scholer's brief will nevertheless be considered in the
       interest of resolving these disputes on the merits.

28

1    In the summer of 2002, Farhad Larian complained to Mr. Zarabi that Isaac Larian had

2    allegedly fraudulently concealed Bratz during the negotiations that led to Farhad Larian's sale of

3    MGA stock. Mr. Zarabi oversaw another appraisal of MGA based upon information he gathered

4    in 2002. Mr. Dutcher produced an appraisal on February 13, 2003 that valued MGA as of

5    December 31, 2000 and projected a 2001 revenue growth rate of twenty-five percent (25%) based

6    upon "hot projects that came along." Mattel's Motion at p.4, Ex. 8 to Decl. of Juan Pablo Albán.

7    Other information relied upon by Mr. Dutcher suggests that MGA had expansionary plans in 2000

8    compared to the prior four years.

9    Unable to resolve his disputes through Mr. Zarabi, Farhad Larian sued Isaac Larian,

10    alleging, among other things, that (a) in late 1999 or early 2000, Isaac Larian and MGA became

11    aware of a new product line called Bratz; (b) starting in early 2000 and throughout 2000, Isaac

12    Larian and MGA devised plans to develop and distribute Bratz; and (c) Isaac Larian concealed the

13    plans for Bratz from Farhad Larian and Mr. Zarabi in order to keep the valuation of MGA

14    artificially low. Notably, MGA and Bryant claim in the instant lawsuit that they did not even

15    meet until September 2000.

16    Isaac Larian successfully moved to compel arbitration of Farhad Larian's claims. In early

17    February 2005, Mr. Zarabi declined to serve as arbitrator and the court appointed another

18    arbitrator. A few weeks later, Farhad Larian filed suit against Mr. Zarabi alleging that he

19    conspired with Isaac Larian to conceal facts.

20    The arbitration of Farhad Larian's claims started on November 16, 2005. Two days into

21    the proceedings, however, Farhad Larian dismissed his claims. Isaac Larian sought to recover his

22    attorneys' fees and won an award in excess of $1 million against his brother.

23    Mattel Subpoenas Farhad Larian to Produce Documents

24    On August 31, 2007, Mattel subpoenaed Farhad Larian to appear for deposition and to

25    produce (1) documents relating to the Larian v. Larian disputes; (2) documents related to non-

26    Bratz allegations by Mattel and MGA, primarily related to allegations of trade secret theft; (3)

27    documents relating to Farhad Larian's relationship to MGA, including his position there,

28

1   ownership interests, and payments from MGA or Isaac Larian to Farhad Larian; (4) Farhad

2   Larian's knowledge and possession of documents specifically from the instant lawsuit, including

3   his communications with Mattel; and (5) information about the location of responsive documents.

4   The majority of Mattel's requests seek documents in the first category described above.

5          On September 21, 2007, Farhad Larian served responses and objections in which he

6   agreed to produce documents responsive to eleven of Mattel's forty-one document requests.

7   After a brief stay of discovery, counsel for Farhad Larian and Mattel met and conferred beginning

8   on November 20, 2007.  During the meet and confer process, Farhad Larian agreed to produce

9   documents responsive to some, but not all of Mattel's forty-one requests.  On November 21,

10  2007, Farhad Larian produced approximately one red well of documents.

11         The parties held a second meet and confer conference call on November 27, 2007, and

12  were able to resolve their disputes regarding many more, but not all requests.  In particular, the

13  parties were ultimately able to resolve their disputes regarding the requests for documents related

14  to non-Bratz allegations.  At the conclusion of the second meet and confer session, it was agreed

15  that Farhad Larian would make a supplemental production of documents on December 6, 2007,

16  and provide a written supplemental response.  The parties attempted to schedule another meet and

17  confer session, but could not agree upon a date.  On the evening of December 6, 2007, Mattel

18  filed the instant motion.  Mattel seeks an order compelling Farhad Larian to produce documents

19  responsive to every request in its subpoena; overruling each of Farhad Larian's objections; and

20  ordering him to produce a document-by-document privilege log.

21  Mattel Subpoenas Isaac Larian's Attorney –Kaye Scholer

22         On or about September 6, 2007, Mattel also subpoenaed Kaye Scholer, the firm that

23  represented Isaac Larian in the Larian v. Larian proceedings.  The subpoena consisted of thirty-

24  five (35) requests seeking the same five categories of documents it subpoenaed from Farhad

25  Larian.  Kaye Scholer's representation of Isaac Larian included defending him in two related

26  Superior Court actions, two arbitration proceedings and an appeal to the California Court of

27  Appeals, all of which covered a period of several years.  As a result of this representation Kaye

28  

EXHIBIT 12 ,
P. 100 .

4

1   Scholer has accumulated approximately fifty-six (56) boxes of its client's files, including, among

2   other things, correspondence files, pleading files, discovery files, witness preparation files,

3   research files, exhibits, attorney work files, and billing files.

4        On or about September 18, 2007, Kaye Scholer served its objections, asserting, among

5   other things, that the requests are duplicative, unreasonably cumulative, harassing and oppressive.

6   The parties met and conferred on October 11 and 29, 2007.  Kaye Scholer agreed to review the

7   following files for responsive documents:  (1) pleading files; (2) discovery files; and (3)

8   arbitration exhibits.  Kaye Scholer's rationale for limiting its search for responsive documents to

9   these three files was to avoid undue burden because most of the documents in other files would be

10  protected by the work product doctrine and/or the attorney-client privilege.  Kaye Scholer also

11  agreed to produce documents responsive to the majority of Mattel's requests.  However, Kaye

12  Scholer repeatedly informed Mattel that it objected to producing a document-by-document

13  privilege log because it would be unduly burdensome, expensive and inconvenient.

14       In the instant motion, Mattel seeks an order compelling Kaye Scholer to produce

15  documents responsive to every request in its subpoena and overruling Kaye Scholer's objections,

16  including privilege, or alternatively, compelling Kaye Scholer to produce a document-by-

17  document privilege log.

18  Mattel's Other Discovery Efforts

19       Mattel has attempted to obtain documents related to the Larian v. Larian proceedings from

20  MGA and Isaac Larian.  As far as Mattel can ascertain, however, MGA has produced only four

21  documents relating to the Larian v. Larian proceedings and Isaac Larian has produced none.

22       Mattel also searched public filings in the Larian v. Larian and Larian v. Zarabi et al. civil

23  lawsuits.  Mattel found Mr. Dutcher's declaration that included the appraisals described above,

24  however, Mattel was not able to locate any of the raw data on which Mr. Dutcher relied.  Mattel

25  also served subpoenas on third parties involved in the Larian v. Larian proceedings, and met with

26  limited success.

27  //

**EXHIBIT 12,**
**P. 101 .**

28

### III. STANDARDS

Rule 45 of the Federal Rules of Civil Procedure requires third parties to produce documents (and reasonably accessible electronically stored information) that are responsive to a subpoena that a party serves on them. Fed.R.Civ.P. 45(b), (d).  If the subpoenaed documents are relevant and there is good cause for their production, the subpoena is enforced unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying or embarrassing. The factors to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.  A person withholding subpoenaed information under a claim of attorney-client privilege or protected by the work product doctrine must expressly make the claim and "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed.R.Civ.P. 45(d)(2).

Rule 45(c)(1), Fed.R.Civ.P., provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Furthermore, "[t]he issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees-- on a party or attorney who fails to comply." Id.

### IV. DISCUSSION

A. Documents Subpoenaed from Farhad Larian

Mattel contends that each of the categories of documents it seeks from Farhad Larian is relevant and that there is good cause for production.  First, Mattel contends that the Larian v. Larian proceedings are relevant because Farhad Larian's allegations about the timing of the origins and early development of Bratz and MGA's concealment thereof parallel and provide support for the crux of Mattel's claims in the instant litigation.  Second, Mattel contends that documents about Farhad Larian's relationship with MGA are relevant to his credibility.  In particular, Mattel contends that payments from Isaac Larian and/or MGA to Farhad Larian are

1  relevant to credibility and possible bias.  Third, Mattel contends that documents relating to this

2  action are clearly relevant, especially in light of MGA and Isaac Larian's threat to disqualify

3  Mattel's counsel based upon purported communications between Mattel's counsel and Farhad

4  Larian.  Fourth, Mattel contends that it seeks information about the location of responsive

5  documents to determine whether Farhad Larian destroyed documents or for another reason no

6  longer has them.

7       Mattel next contends that Farhad Larian has failed to carry his burden of demonstrating

8  that the requests at issue are unreasonable, oppressive, annoying or embarrassing.  Further, Mattel

9  contends that the protective order in place in this lawsuit is sufficient to address Farhad Larian's

10  confidentiality or privacy concerns.  Lastly, Mattel contends that Farhad Larian's privilege log is

11  inadequate because it fails to justify his claims of privilege and work product protection on a

12  document-by-document basis.

13       Farhad Larian contends that Mattel's motion should be denied because Mattel violated its

14  meet and confer obligations by filing the motion before he made his scheduled supplemental

15  production and before the parties' meet and confer discussions had concluded.  According to

16  Farhad Larian, on November 27, 2007, it was agreed that he would make a supplemental

17  production of documents on December 6, 2007, and that he would provide a written supplemental

18  response.  Farhad Larian complied with this agreement and, on December 6, 2007, provided a

19  written supplemental response and, as Mattel acknowledges, approximately six boxes containing

20  approximately 12,000 pages of documents.  Nevertheless, Mattel filed the instant motion on

21  December 6, 2007, without reviewing the supplemental document production and written

22  supplemental response.  Farhad Larian also represents that as of December 6, 2007, the day

23  Mattel filed the instant motion, the parties acknowledged the need for a further meet and confer

24  session, as reflected in the numerous e-mails and correspondence exchanged between counsel.

25  Furthermore, Farhad Larian represents that after Mattel filed the instant motion, he requested that

26  Mattel take the motion off-calendar because his supplemental responses resolved the parties'

27  disputes as to all but three requests and because there was potential for resolving the remaining

28

EXHIBIT _13_,
P. _163_.

7

1   requests as well, but that Mattel refused.

2       Farhad Larian contends that in light of his supplemental production, he is now in full

3   compliance with Mattel's subpoena, except for three requests. He represents that he has produced

4   over 12,000 documents, including all non-privileged documents from the <u>Larian v. Larian</u> matters

5   that relate to Bratz (including its origin), Carter Bryant, Mattel, a fee agreement between Farhad

6   and MGA, and all documents related to appraisals of MGA that are not privileged or otherwise

7   covered by a protective order. He also contends that the privilege log he has produced to Mattel,

8   which describes the withheld documents by category instead of document-by-document, is

9   sufficient to substantiate his claims of privilege and work product protection. As for the three

10   remaining requests, Nos. 23, 24 and 41, Farhad Larian contends that they are overbroad, harassing

11   and cumulative and invade his and his family's privacy.

12       <u>Farhad Larian Has Substantially Complied with the Subpoena</u>

13       Farhad Larian made a substantial supplemental production and provided a supplemental

14   written response on December 6, 2007. Indeed, Mattel acknowledges that it received

15   approximately six boxes of documents from Farhad Larian, which contain approximately 12,000

16   pages of documents. Nevertheless, Mattel contends in its reply brief that there are a few

17   deficiencies in Farhad Larian's production. For example, Mattel contends that Farhad Larian has

18   not produced (1) documents bates stamped "MZ" and "ED"; (2) raw data provided to the

19   appraisers in the <u>Larian v. Larian</u> litigations and the 2000 financial models that Farhad Larian

20   claimed Isaac Larian prepared; (3) three boxes of documents that Farhad Larian's counsel showed

21   Mattel's counsel and upon which MGA's disqualification threats against Mattel's counsel are

22   based; (4) the Dutcher Declaration; and (5) documents responsive to Request Nos. 17-19. Mattel

23   also contends that Farhad Larian has improperly limited its production to only those documents

24   that directly reference Bratz and Carter Bryant.

25       At the hearing, counsel for Farhad Larian confirmed that all responsive documents,

26   including the documents identified in Mattel's reply brief, had been or would be produced after

27   the parties executed the Stipulation Regarding Protective Orders, which has now been

28

1   accomplished.  Significantly, counsel represented that Farhad Larian did not limit his production

2   to only those documents that directly reference Bratz and Carter Bryant, and that his supplemental

3   responses make this point clear.  Counsel for Farhad Larian also represented that all privileged

4   documents have been identified on a privilege log.

5        In light of the December 6, 2007 supplementation, and based upon the representations

6   made by counsel for Farhad Larian at the hearing, Farhad Larian has substantially discharged his

7   obligation to comply with Mattel's subpoena.  Therefore, there is no need for an order compelling

8   any further production of documents.

9            Farhad Larian's Objections to the Three Remaining Requests are Justified

10        The only three requests to which Farhad Larian objects are Nos. 23, 24 and 41, which are

11   set forth in full below:

12        Request No. 23:  All DOCUMENTS RELATING TO any and all payments of
          money or transfers of anything of value that ISAAC LARIAN, his FAMILY
13        MEMBERS and/or MGA have made, have offered or have proposed, promised or
          agreed to make, to or for the benefit of YOU or YOUR FAMILY MEMBERS at
14        any time from January 1, 1999 through the present.

15        Request No. 24:  All DOCUMENTS RELATING TO any and all payments of
          money or transfers of anything of value that any PERSON has made, has offered
16        or has proposed, promised or agreed to make, to or for the benefit of YOU or
          YOUR FAMILY MEMBERS and that was related in any way to BRATZ,
17        BRYANT, MGA or this ACTION at any time from January 1, 1999 through the
          present.

18
          Request No. 41:  DOCUMENTS sufficient to IDENTIFY since January 1, 1999
19        through the present (a) each account with any bank or financial institution that
          YOU have or have had, or that YOU have or have had any legal beneficial
20        interest in; (b) each telephone subscription service account that YOU have or have
          had, or that YOU use or have used; and (c) each email account that YOU have or
21        have had, or that YOU use or have used.

22
    Farhad Larian contends that Mattel's stated justification for the requests – bias and credibility – is
23
    questionable because he is not an adverse witness to Mattel.  Farhad Larian represents that MGA
24
    has never asked him to testify on the company's behalf.  Rather, only Mattel intends to call him as
25
    a witness.  Farhad Larian asserts that there is no reason for Mattel to impeach its own witness.
26
         Furthermore, Farhad Larian contends that even if it is advantageous for Mattel to attack
27

28

Bryant v. Mattel, Inc.,                                        **EXHIBIT 13 ,**                    9
CV-04-09049 SGL (RNBx)                                         **P. 105 .**

1   his credibility, the scope of Mattel's requests go far beyond what Mattel is reasonably entitled to

2   receive through discovery.  He contends that pursuant to Rule 26, Fed.R.Civ.P., he should not be

3   subjected to discovery that is burdensome, cumulative, unnecessarily costly, or insufficiently

4   probative to the issues in the litigation to warrant the expense of production.  Furthermore, he

5   contends that the usual restrictions on discovery set forth in Rule 26 should be rigorously applied

6   to protect non-parties such as himself.

7       Farhad Larian contends that the three requests at issue are overbroad and harassing in

8   several respects.  First, he points out that the requests seek documents from 1999, which is five

9   years before this action was filed and six years before MGA was involved in this action.  Farhad

10  Larian contends that payments made to him and his family before this action was filed and before

11  MGA was a party to the case have no relevance to his credibility as a witness in this case.

12  Second, Farhad Larian contends that the requests, as phrased, would include any card that

13  accompanied a gift to anyone in the Larian family, regardless of the dollar value of the gift.

14  Farhad Larian contends that family gifts for birthdays, Chanukah, or general gifts of money

15  between family members, have nothing to do with bias and violate his and his family's privacy

16  rights.  Third, Farhad Larian contends that the requests are overbroad because they would require

17  him to disclose all documents reflecting payments he received as an employee of MGA and its

18  predecessor, a company he was employed by for decades.

19      Furthermore, Farhad Larian contends that he has already produced all non-privileged

20  documents which could potentially show bias, including the amount of money he was paid for his

21  shares of MGA, his consulting agreement with MGA after he sold his shares, and his fee

22  agreement with MGA.  He contends that requiring him to search for and produce additional

23  payment documents would only result in him producing cumulative information, which is not

24  only irrelevant but violates his and his family's right to privacy under the California Constitution.

25  Farhad Larian also contends that it would be far less intrusive for Mattel to question him at a

26  deposition about payments he received from Isaac Larian and MGA than for him to respond to the

27  three requests at issue.

28

**EXHIBIT 13**
P. 106 .

10

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1    Mattel's motion is denied with respect to Request Nos. 23, 24 and 41.  The requests seek

2    information that is only minimally relevant to the claims and defenses in the case.  Mattel's only

3    stated justification for the discovery is that it is relevant to establish Farhad Larian's credibility

4    and bias.  Although impeachment information is discoverable, Mattel is not entitled to the type of

5    unfettered discovery it is now seeking.  Rather, Rule 26(b)(2), Fed.R.Civ.P., requires the court to

6    restrict or prevent discovery if (i) the discovery is unreasonably cumulative or duplicative, or is

7    obtainable from some other source that is more convenient, less burdensome, or less expensive;

8    (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the

9    information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely

10   benefit, taking into account the needs of the case, the amount in controversy, the parties'

11   resources, the importance of the issues at stake in the litigation, and the importance of the

12   proposed discovery in resolving the issues.  These restrictions are particularly important to

13   consider where the discovery requests are directed at a non-party.  See Moon v. SCP Pool Corp.,

14   232 F.R.D. 633, 638 (C.D. Cal. 2005) (citing Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.,

15   649 F.2d 649 (9th Cir. 1980) (discovery should be "more limited to protect third parties from

16   harassment, inconvenience, or disclosure of confidential information.").

17   Aside from asserting that the requested information is relevant to bias and credibility,

18   Mattel has made no attempt to justify the significant breadth and burden of its requests.  The

19   requests are so broad as to include every payment or gift, regardless of amount, made between

20   Farhad and Isaac Larian, their family members and MGA since 1999.  The number of years for

21   which Mattel seeks financial information is overbroad.  Mattel is seeking documents since 1999,

22   five years before this action was filed and six years before MGA became a party to this action.

23   Mattel fails to explain how any payments MGA or Isaac Larian made to Farhad or his family

24   members before this action was filed or MGA was a party to the action have any bearing on his

25   credibility as a witness in this action.  The requests are also overbroad in that they encompass

26   customary gifts between family members and Farhad Larian's routine salary payments, which

27   have only minimal relevance to Farhad Larian's credibility and bias as a witness in this case.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 13 ,
P. 107 .

11

1    The requests are also cumulative of discovery Farhad Larian has already provided. In

2    particular, Farhad Larian represents that he has already disclosed to Mattel the amount of money

3    he was paid for his shares of MGA, his consulting agreement with MGA after he sold his shares,

4    and his fee agreement with MGA. In light of this production , it is unreasonable to require Farhad

5    Larian to search for and produce gift receipts, cards, and the breadth of other financial documents

6    responsive to Request Nos. 23, 24 and 41. Furthermore, there are other less intrusive and

7    burdensome means of obtaining discovery regarding Farhad Larian's credibility and bias. For

8    example, Mattel may question Farhad Larian about payments he received from his brother and

9    MGA during his deposition.

10    Nor has Mattel justified the intrusive and harassing nature of the requests. Personal

11    financial information is afforded protection by the California Constitution that is also recognized

12    by federal courts. Cal. Const., Art. I, §1; Valley Bank of Nevada v. Superior Court, 15 Cal.3d

13    652, 656 (1975); Kelly v. City of San Jose, 114 F.R.D. 653, 656 (N.D. Cal. 1987) (federal courts

14    should give "some weight" to privacy rights that are protected by state constitutions); Soto v. City

15    of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995) (right to privacy in financial information has

16    been recognized by federal courts). When a privacy right is asserted as an objection to discovery,

17    the court must balance the need for the information versus the privacy right asserted. Soto, 162

18    F.R.D. at 616.

19    As discussed previously, there is little to no need for the breadth of financial information

20    sought by Mattel. Many of the documents covered by Request Nos. 23, 24, and 41 have little to

21    no relevance to Farhad Larian's credibility and bias as a witness in this case. Furthermore,

22    Farhad Larian has already produced numerous documents showing payments he received from

23    both his brother and MGA. There are also other less intrusive means for obtaining discovery

24    relating to Farhad Larian's credibility and bias. Furthermore, the scope of these three requests

25    unduly intrude into Farhad Larian's private affairs. The requests are so broad as to include gifts

26    exchanged between family members and Farhad Larian's paycheck stubs, and would require

27    Farhad Larian to disclose every account number he has at a bank or financial institution since

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 13 ,
P. 108 .

12

1   1999. Thus, the balance tips sharply in favor of protecting Farhad Larian's personal financial

2   information.

3   <u>Farhad Larian's Privilege Log is Inadequate</u>

4   Mattel challenges the sufficiency of Farhad Larian's privilege log. At issue is whether

5   Farhad Larian must describe and assert claims of privilege on a document-by-document basis, or

6   whether he may do so categorically. Farhad Larian is withholding approximately one bankers'

7   box of documents based upon claims of privilege and work product protection. Farhad Larian's

8   Opposition at p.20, n. 9.

9   Rule 45(d)(2), Fed.R.Civ.P., requires a party responding to a subpoena to provide

10  sufficient information to enable the party seeking discovery to assess the claims of privilege and

11  work product protection. The "universally accepted" means of claiming that requested documents

12  are privilege is by producing a document-by-document privilege log. <u>Gail v. New England Gas</u>

13  <u>Co., Inc.</u>, 234 F.R.D. 28, 33 (D. R.I. 2007). The advisory comments to the 1993 amendment to

14  Rule 26(b), however, state that a description of documents by category is appropriate where it

15  would be "unduly burdensome" to provide a document-by-document privilege log. Specifically,

16  the advisory comment states, "Details concerning time, persons, general subject matter, etc., may

17  be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous

18  documents are claimed to be privileged or protected, particularly if the items can be described by

19  categories."

20  Farhad Larian relies upon the advisory comments and cases citing the advisory comments

21  to support his contention that as a non-party, it would be unduly burdensome to require a

22  document-by-document privilege log in this case. The cases cited by Farhad Larian, however, are

23  distinguishable from the present case. In <u>SEC v. Thrasher</u>, 1996 WL 125661 (S.D. N.Y. 1996),

24  the Commission sought production of all communications between defense counsel concerning

25  the lawsuit. The court observed that this demand, on it face, sought wholesale production of

26  documents that are ordinarily protected from disclosure. Further, the defendant represented that

27  the requested documents were extremely voluminous and that a document-by-document privilege

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT <u>13</u>,
P. <u>109</u>.

13

1   log would be a long and fairly expensive project to undertake.  In Fifty-Six Hope Road Music,

2   Ltd. v. Mayah Collections, Inc., 2007 WL 1726558 (Nev. 2007), the withheld documents

3   consisted of e-mail communications between plaintiffs and their counsel or between plaintiffs'

4   counsel.  Plaintiffs represented that there were hundreds and perhaps thousands of such email

5   communications which were protected by the attorney-client privilege and work product doctrine.

6       In contrast to the volume of documents at issue in Thrasher and Fifty-Six Hope Road

7   Music, Farhad Larian represents that he has about one bankers' box of privileged documents.

8   Farhad has not established that to produce a privilege log on a document-by-document basis for

9   this volume of documents is unduly burdensome.  Furthermore, even if it were appropriate for

10  Farhad Larian to produce a privilege log that described documents categorically, which it is not,

11  the information provided in Farhad Larian's privilege log is insufficient to enable Mattel to assess

12  the claims of privilege and work product protection as required by Rule 45, Fed.R.Civ.P.  For

13  example, in some instances, Farhad Larian fails to identify the author and recipient of the

14  documents being withheld.  In other instances, Farhad Larian fails to provide the date or date

15  ranges for the documents being withheld.  Therefore, Farhad Larian is ordered to provide a

16  supplemental privilege log that complies with Rule 45.

17  B. Documents Subpoenaed from Kaye Scholer

18      Mattel contends that the documents it seeks from Kaye Scholer are relevant for all the

19  same reasons previously articulated in the context of Mattel's motion to compel Farhad Larian to

20  produce documents.  Mattel contends that its requests are not unreasonable, oppressive, annoying

21  or embarrassing.  Mattel points out that Kaye Scholer has separate case files containing all or the

22  vast majority of responsive documents, which undermines Kaye Scholer's boilerplate burden

23  objections.  Mattel also points out that it offered to alleviate some of the burden to Kaye Scholer

24  by paying for Kay Scholer's copying costs and by providing a paralegal to inspect documents

25  from Kaye Scholer's files with an agreement that the inspection would not result in a waiver of

26  any privileges.  Further, Mattel contends that the protective order in place in this action is

27  sufficient to address any confidentiality concerns Kaye Scholer may have.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 13,
P. 110.

14

1    Mattel next contends that the documents it seeks from Kaye Scholer are not available from

2    other sources, as evidenced by Mattel's repeated and unsuccessful attempts to seek the same

3    documents from MGA.  Indeed, Mattel contends that the documents in Kaye Scholer's possession

4    are in fact documents within MGA's possession, custody and control that should have, but have

5    not yet been, produced pursuant to prior discovery orders obligating MGA and Isaac Larian to

6    produce documents from the Larian v. Larian proceedings.  Mattel also points out that it has

7    searched public files and served additional subpoenas on other third parties involved in the Larian

8    v. Larian proceedings.  Moreover, Mattel argues that federal law requires Kaye Scholer to comply

9    with the subpoena, even if the evidence sought is obtainable from another source.  See e.g. State

10   Farm Mut. Auto. Ins. Co. v. Accurate Medical, P.C., 2007 WL 2993840 at *1 (E.D. N.Y. 2007).

11   Mattel contends that Kaye Scholer's proposal to search only certain files for responsive

12   documents is unacceptable because it would inevitably exclude relevant documents.  In particular,

13   Mattel contends that Kaye Scholer's proposal would exclude relevant documents likely to be

14   found in its correspondence file, such as an August 29, 2003 letter from Isaac Larian to Mr.

15   Zarabi relating to an appraisal of MGA, and a letter from Farhad Larian's attorney to Kaye

16   Scholer detailing the evidence of Isaac Larian's alleged concealment of Bratz.  Mattel contends

17   that the relevance of these documents and others that are likely to exist justifies the burden of

18   production on Kaye Scholer.

19   Further, Mattel contends that Kaye Scholer has failed to produce a privilege log in

20   violation of Rule 45(d)(2), Fed.R.Civ.P., and therefore Kaye Scholer has waived any claims of

21   privilege.  In the alternative, Mattel requests an order compelling Kaye Scholer to produce a

22   document-by-document privilege log.

23   Kaye Scholer contends that the instant motion is premature, unnecessary and a waste of

24   judicial resources.  Kaye Scholer represents that after meeting and conferring in good faith, it

25   agreed to produce documents responsive to thirty of the thirty-five requests, and that the

26   remainder of the requests are grossly overbroad.  Further, Kaye Scholer represents that it has

27   completed its review pursuant to the agreement, and is prepared to produce responsive

28

EXHIBIT 13 ,
P. 111 .

15

1   documents.  However, Kaye Scholer continues to object to producing a document-by-document

2   privilege log on the grounds that it would be unduly burdensome and expensive.  Kaye Scholer

3   emphasizes that Mattel is seeking documents from a law firm, and therefore the vast majority of

4   responsive documents are protected by multiple privileges, including but not limited to the

5   attorney-client privilege and the work product doctrine.  Kaye Scholer estimates that it would take

6   in excess of seventy (70) hours to create a document-by-document privilege log for this case, and

7   that the Federal Rules of Civil Procedure do not require Kaye Scholer to undertake such an

8   unreasonable burden.  Furthermore, Kaye Scholer contends that the failure to produce a

9   document-by-document privilege log does not result in a per-se waiver of any privilege.

10          MGA also opposes Mattel's motion for several reasons.  First, MGA contends that

11  Mattel's requests are overbroad, encompassing documents that are only marginally related, if at

12  all, to the claims and defenses in the case.  Second, MGA contends that Mattel's requests are

13  completely duplicative of requests it has served on the parties in the case.  In particular, MGA

14  contends that Mattel has sought the Larian v. Larian documents from both MGA Entertainment,

15  Inc. and Isaac Larian.  See Mattel's Request No. 41 in Mattel's First Set of Request for

16  Production of Documents and Tangible Things to MGA, and Request Nos. 123-125 in Mattel's

17  First Set of Requests for Documents and Things to Isaac Larian.  MGA and Isaac Larian are both

18  under court order to comply with the requests, although Isaac Larian is only required to produce

19  documents that refer or relate to Bratz in response to Request Nos. 123-125.  Third, MGA

20  contends that Mattel's requests to Kaye Scholer are much broader than requests Mattel previously

21  served on the parties to this case.  Fourth, MGA contends that there is no reason Mattel cannot

22  obtain a complete set of all relevant documents from the Larian v. Larian proceedings without this

23  third-party subpoena.  Fifth, MGA contends that the vast majority of documents Mattel seeks

24  from Kaye Scholer are protected by the attorney-client privilege, the work product doctrine, or

25  other privileges, and that it is improper for Mattel to attempt to subpoena these documents and

26  then insist that Kaye Scholer produce a document-by-document privilege log.  In summary, MGA

27  contends that Mattel has misused the subpoena process by serving deliberately overbroad and

28

EXHIBIT 13 ,
P. 112 .

16

1  burdensome requests in an attempt to harass and intimidate MGA and non-parties.  Accordingly,

2  MGA contends that Mattel's motion should be denied or Mattel's subpoena should be

3  substantially limited in scope.

4  <u>Mattel's Subpoena is Overbroad, Unduly Burdensome and Cumulative</u>

5       Mattel's subpoena to Kaye Scholer is overbroad and is not reasonably tailored to seek

6  documents relevant to the claims and defenses in this case.  Of the thirty-five requests Mattel

7  served on Kaye Scholer, all but one begin with the phrase "all documents" or a similarly broad

8  phrase.  For example, Request Nos. 1-3, which are set forth below, seek virtually all documents

9  relating to lawsuits and/or arbitrations between Isaac Larian and Farhad Larian:

10  <u>Request No. 1</u>:  All DOCUMENTS, including all COMMUNICATIONS, RELATING TO any and all arbitration proceedings between FARHAD LARIAN

11  and ISAAC LARIAN, including without limitation all video and/or sound recordings, transcripts, exhibits, memoranda, witness statements, declarations,

12  affidavits and sworn testimony given by any PERSON in connection with such arbitration proceedings.

13

14  <u>Request No. 2</u>:  All DOCUMENTS including all COMMUNICATIONS, RELATING TO Los Angeles Superior Court Case No. BC301371 filed by

15  FARHAD LARIAN against ISAAC LARIAN and/or any related proceedings, including any appeal thereof, and including without limitation all video and/or

16  sound recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness statements, declarations, affidavits and sworn proceedings and/or any appeal

17  related to such lawsuit.

18  <u>Request No. 3</u>:  All DOCUMENTS RELATING TO Los Angeles Superior Court Case No. BC329501 filed by FARHAD LARIAN against ISAAC LARIAN,

19  MORAD ZARABI and Kambiz Zarabi, and/or any related proceedings and/or any appeal of such lawsuit, including without limitation all video and/or sound

20  recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness statements, declarations, affidavits and sworn testimony given by any PERSON in

21  connection with such suit and/or related proceedings and/or any appeal related to such lawsuit.

22
23  Mattel has not limited the subject matter of these requests (and others) in any way to exclude

24  irrelevant information.  To the contrary, Request Nos. 1-3 are drafted in the broadest possible

25  language, encompassing documents that are only marginally related, if at all, to this case.  As

26  such, Mattel's requests are also unduly burdensome.

27       Furthermore, Mattel's requests are clearly duplicative of other requests propounded to the

28

EXHIBIT 13
P. 113                    17

1    parties in this action.  In particular, the requests relating to the <u>Larian v. Larian</u> proceedings are

2    duplicative of Mattel's Request No. 41 to MGA and Request Nos. 123-125 to Isaac Larian.

3    During the hearing, counsel for MGA acknowledged that Isaac Larian is required to comply with

4    Request Nos. 123-125, and is prepared to review Kaye Scholer's files for responsive documents

5    to fulfill his responsibility.  Also during the hearing, Kaye Scholer agreed to make its

6    correspondence file available to MGA's counsel for review.

7         In light of Mattel's failure to take reasonable steps to avoid unduly burdening Kaye

8    Scholer and in light of MGA's and Kaye Scholer's representations during the hearing as outlined

9    above, Mattel's motion to compel Kaye Scholer to comply with the full scope of the subpoena is

10   denied.

11              <u>Kaye Scholer's Compromise is Reasonable Under the Circumstances</u>

12        As an alternative to complying with the full scope of the subpoena, Kaye Scholer agreed

13   to review the following files for documents responsive to every one of Mattel's requests except

14   Nos. 1-3, 6 and 10:  (1) pleading files; (2) discovery files; and (3) arbitration exhibits.  Kaye

15   Scholer's Opposition at p.5.  Kaye Scholer's compromise is reasonable under the circumstances.

16   Narrowing the scope of Kaye Scholer's search in this manner will significantly minimize the

17   burden, expense, and inconvenience imposed by the subpoena because, unlike Kaye Scholer's

18   other files, most of the documents in the three files it agreed to search are not likely to be covered

19   by the attorney-client privilege or work product doctrine.  Further, narrowing Kaye Scholer's

20   search in this manner will not significantly deprive Mattel of relevant discovery to which it is

21   entitled because, as stated previously, MGA's counsel represented during the hearing that Isaac

22   Larian is prepared to review Kaye Scholer's documents, including the correspondence file, to

23   comply with Request Nos. 123-125.

24        Accordingly, to the extent it has not already done so, Kaye Scholer shall conduct the

25   agreed upon search of its three files and produce documents responsive to all of Mattel's requests,

26   except Nos. 1-3, 6 and 10.                      **EXHIBIT _13_ ,**

27   //                                              **P._114_.**

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

18

1   <u>Kaye Scholer Must Produce a Privilege Log in Compliance with Rule 45</u>

2        Mattel contends that Kaye Scholer has waived its claims of privilege by failing to produce

3   any privilege log. The law is clear, however, that the failure to produce a document-by-document

4   privilege log does not result in a per-se waiver of any privilege. <u>See</u> <u>Burlington Northern & Santa</u>

5   <u>Fe Ry. Co. v. U.S. Dist. Court for Dist. Of Mont.</u>, 408 F.3d 1142, 1147 (9th Cir. 2005). In this

6   case, Kaye Scholer raised a legitimate objection to producing a document-by-document privilege

7   log on the grounds that it would impose an undue burden. Under these circumstances, a finding

8   of waiver is unjustified.

9        Nevertheless, Kaye Scholer's claim of undue burden is unpersuasive. Kaye Scholer has

10  acknowledged that most of the documents in the three files it has agreed to search are not likely to

11  be covered by the attorney-client privilege or work product doctrine. Kaye Scholer Opposition at

12  pp. 5 and 9. Indeed Kaye Scholer agreed to search these files precisely because they were not

13  likely to contain privileged documents. Therefore, requiring Kaye Scholer to produce a

14  document-by-document privilege log for documents withheld from these three files should not

15  impose an undue burden. Accordingly, Kaye Scholer is ordered to produce a document-by-

16  document privilege log for documents withheld from the three files it agreed to search.

17  V. CONCLUSION

18       For the reasons set forth above, it is ordered as follows:

19       1. Farhad Larian is in substantial compliance with Mattel's subpoena with respect to all of

20  the requests, except Nos. 23, 24 and 41. Request Nos. 23, 24 and 41 are overbroad, unduly

21  burdensome, cumulative, harassing and invade the right of privacy of Farhad Larian and his

22  family. Therefore, Mattel's motion to compel Farhad Larian to produce documents in response to

23  the subpoena is denied.

24       2. Farhad Larian shall produce a document-by-document privilege log to Mattel no later

25  than January 30, 2008.

26       3. Farhad Larian's request for sanctions against Mattel is denied.

27       4. Mattel's subpoena to Kaye Scholer is overbroad, unduly burdensome and cumulative.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

**EXHIBIT 13,**
**P. 115.**

19

1    Therefore, Mattel's motion to compel Kaye Scholer to produce documents responsive to the

2    subpoena is denied.  Instead, Kaye Scholer is ordered to abide by its agreement to review its

3    pleading files, discovery files, and arbitration exhibits for documents responsive to all of Mattel's

4    requests, except Request Nos. 1-3, 6 and 10.  Kaye Scholer shall produce responsive documents

5    no later than January 30, 2008.

6         5. Kaye Scholer shall also produce a document-by-document privilege log identifying all

7    documents withheld from its pleading files, discovery files, and arbitration exhibits, no later than

8    January 30, 2008.

9         6. Mattel shall abide by its agreement to reimburse Farhad Larian and Kaye Scholer for

10   their copying costs.

11        7. Isaac Larian is granted an extension of time to comply with Request Nos. 123-125.

12   Isaac Larian shall deliver documents responsive to these requests to Mattel no later than 12:00

13   p.m. on January 25, 2008.

14        8. Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

15   Master, Mattel shall file this Order with the Clerk of Court forthwith.

16

17   Dated: January 25, 2008              /s/Edward A. Infante
                                          _____
18                                        HON. EDWARD A. INFANTE (Ret.)
                                          Discovery Master
19

20

21

22

23

24

25

26                                                    EXHIBIT 13

27                                                    P. 116

28
     Bryant v. Mattel, Inc.,                                              20
     CV-04-09049 SGL (RNBx)

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2008, I served the attached ORDER RE MATTEL'S MOTIONS TO COMPEL FARHAD LARIAN, KAYE SHOLER AND STERN & GOLDBERG TO PRODUCE DOCUMENTS in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Patricia Glaser, Esq. | Christensen, Glaser, Fink, et al. | pglaser@chrisglase.com |
| Scott E. Gizer, Esq. | Christensen, Glaser, Fink, et al. | sgizer@chrisglase.com |
| Alisa Morgenthaler-Lever, Esq. | Christensen, Glaser, Fink, et al. | amorgentaler@chrisglase.com |
| Alan N. Goldberg, Esq. | Stern & Goldberg | agoldberg@sgattys.com |
| Mark Overland, Esq. | Overland, Borenstein, et al. | moverland@obsklaw.com |
| Alexander Cote, Esq. | Overland, Borenstein, et al. | acote@obsklaw.com |
| Bryant S. Delgadillo, Esq. | Kaye Scholer | bdelgadi@kayscholer.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 25, 2008, at San Francisco, California.

_____
Sandra Chan

**EXHIBIT 13**
P. 117