# Exhibit A

THOMAS J. NOLAN (Bar No. 66992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
E-mail:     tnolan@skadden.com

RAOUL D. KENNEDY (Bar No. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Embarcadero Center, 38th Floor
San Francisco, California 94111-5974
Telephone: (415) 984-6400
Facsimile: (415) 984-2698
E-mail:     rkennedy@skadden.com

Attorneys for Cross-Defendants MGA Entertainment, Inc.,
MGA Entertainment (HK) Limited, MGAE De Mexico, S.R.L. De C.V.,
and ISAAC LARIAN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| v. | **DISCOVERY MATTER** |
| MATTEL, INC., a Delaware corporation | **[To be heard by Discovery Master Hon. Edward A. Infante (Ret.)]** |
| Defendant. | **MGA'S OPPOSITION TO MATTEL, INC.'S MOTION FOR PROTECTIVE ORDER LIMITING THE TEMPORAL SCOPE OF ITS PRIVILEGE LOG, OR, IN THE ALTERNATIVE, MOTION TO COMPEL LOGGING OF PRIVILEGED DOCUMENTS BY BRYANT AND THE MGA PARTIES** |
| Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |
| **CONFIDENTIAL – ATTORNEYS' EYES ONLY FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** | **[Declarations of Philip W. Marsh, Diana M. Torres, and Douglas A. Wickham, and Notice of Evidentiary Objections to Declaration of T. Alger filed concurrently herewith]** |

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

I.   PRELIMINARY STATEMENT .................................................................. 1

II.  SUMMARY OF FACTS .............................................................................. 4

    A.   The Filing of this Action and Related Actions.................................... 4

    B.   Mattel Concedes it was Obligated to Log All Privileged Documents up to the Filing of its Complaint and that the Parties did not Reach any Other Agreement ................................................ 5

    C.   The Parties Agreed During the Meet and Confer Process to Omit Documents Created After April 27, 2004 from Privilege Logs ........... 5

        1.   The Parties Agreed During the May 2, 2005 Meet and Confer Session.......................................................................... 5

        2.   The Parties Also Agreed During the June 20, 2006 Meet and Confer Session................................................................... 7

    D.   Correspondence of MGA's Prior Counsel Confirms the Parties' Agreement............................................................................................ 9

    E.   The Parties did not Alter their Privilege-Logging Agreement During the Summer of 2006 ................................................................ 9

    F.   Correspondence of MGA's and Mattel's Current Counsel Confirms the Parties' Agreement ....................................................... 10

    G.   Each of Mattel's Many Privilege Log Iterations Includes Documents from Mattel's So-Called "Disputed Period" .................... 10

    H.   Mattel's Recent Statements Confirm the Parties' Agreement............. 12

    I.   MGA Moves to Compel Production of the NHB Documents and Mattel Begins to Claim that it Need Not Log Privileged Documents Created During the Period Leading up to Litigation....... 12

III. ARGUMENT ............................................................................................... 15

    A.   The Parties' Agreement was and Remains that all Privileged Documents would be Logged Except for Documents Created after this Action was Filed on April 27, 2004 ..................................... 16

        1.   The Record Shows that the Parties' Originally Agreed to Omit Only Documents Created After April 27, 2004 from Privilege Logs ..................................................................... 16

2.  Recent Statements to the Court by Mattel's Lead Attorney Confirm the Original Agreement Between the Parties is Still in Effect .............................................................. 18

3.  Mattel's Privilege-Logging Actions Demonstrate that the Original Agreement is Still in Effect ........................... 19

4.  Mattel has Consistently Failed to Dispute the Parties' Numerous References to the Parties' Agreement that all Documents Created Before April 27, 2004 must be Included on Privilege Logs ........................................... 20

B.  Mattel Proffers no Evidence that the Parties Agreed to Omit Pre-Litigation Documents from Privilege Logs ........................... 22

C.  Mattel has Failed to Establish a Burden for Logging Documents Post-Dating November 24, 2003 .......................................... 23

D.  The Court Should Compel Mattel's Compliance with The Court's March 10, 2008 Order .................................................. 27

E.  The Court Should Reject Mattel's Proposal That MGA and Carter Bryant be Ordered to Log Documents Created After this Action Commenced ........................................................ 28

IV.  CONCLUSION .............................................................. 28

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Beckman Indus., Inc. v. Int'l Ins. Co.,*
  966 F.2d 470 (9th Cir. 1992)...............................................................15

*Blankenship v. Hearst Corp.,*
  519 F.2d 418 (9th Cir. 1975)...............................................................15

*Burlington N. & Santa Fe Ry. v. United States Dist. Court,*
  408 F.3d 1142 (9th Cir. 2005)...............................................................15

*Clarke v. Am. Commerce Nat'l. Bank,*
  974 F.2d 127 (9th Cir. 1992)...........................................................15, 24

*Foltz v. State Farm Mut. Auto. Ins. Co.,*
  331 F.3d 1122 (9th Cir. 2003)...............................................................15

*Green v. Baca,*
  219 F.R.D. 485 (C.D. Cal. 2003) .......................................................15, 25

*In re Intuit Privacy Litig.,*
  138 F. Supp. 2d 1272 (C.D. Cal. 2001) ...............................................23, 24

*In re Syncor Erisa Litig.,*
  229 F.R.D. 636 (C.D. Cal. 2005) ...........................................................15

*Phillips v. GMC,*
  307 F.3d 1206 (9th Cir. 2002)...............................................................15

*PostX Corp. v. Secure Data Motion,*
  2004 U.S. Dist. LEXIS 24869 (N.D. Cal. June 9, 2004)
  *aff'd,* 115 Fed. Appx. 72 (Fed. Cir. 2004) ....................................15, 16, 25

*Rose v. Beverly Health & Rehab. Servs.,*
  2006 U.S. Dist. LEXIS 91740 (E.D. Cal. Dec. 7, 2006)...........................23, 24

*SEC v. Thrasher,*
  1996 U.S. Dist. LEXIS 3327, 1996 WL 125661 (S.D.N.Y. March 20, 1996) ...... 25

*United States v. Munoz,*
  233 F.3d 1117 (9th Cir. 2000)...........................................................15, 24

## STATUTES

Fed. R. Civ. P. 26(c) ...........................................................................15

## MEMORANDUM OF POINTS AND AUTHORITIES

Counter-defendants MGA Entertainment, Inc., Isaac Larian ("Larian"), MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively, "MGA" or the "MGA Defendants") file this memorandum in opposition to Mattel's Motion for Protective Order Limiting the Temporal Scope of its Privilege Log, or, in the Alternative, Motion to Compel Logging of Privileged Documents by Bryant and the MGA Parties.

## I.    PRELIMINARY STATEMENT

Mattel's Motion for Protective order is a poorly disguised back-door attempt to seek reconsideration of this Court's March 10, 2008 Order.  The Court ordered Mattel to produce all "NHB" documents and to identify on a privilege log all such documents being withheld based on a privilege claim.  Mattel has not complied with the Court's order.  Instead, Mattel now attempts to evade the Court's order by belatedly arguing that it should somehow be excused from logging documents that post-date November 24, 2003.  The Court should reject Mattel's attempts to side-step the March 10, 2008 order and should order Mattel—again—to log *all* documents being withheld based on a claim of privilege.

In its Motion for Protective Order, Mattel attempts to convey the impression that it always intended to exclude documents from its privilege log that were created before this action was filed on April 27, 2004 and after November 24, 2003.  Mattel has even dubbed this period the so-called "disputed period" to give the impression that it has always been striving for the position it argues in its present motion.  But the facts tell a very different story.  The parties agreed years ago to privilege logging procedures that would require that they log all documents up to April 27, 2004—as Mattel admits in its motion[1]—and there was no dispute about those procedures until

---

[1] Motion for Protective Order at 6 n.10 ("Mattel was obligated to log all privileged documents up to the filing of its complaint.").

1  Mattel decided to manufacture one for the purpose of this motion.

2       Mattel never disclosed that it would omit from its privilege log documents pre-

3  dating this action until MGA began pressing Mattel to produce documents that refer

4  to MGA by the codename "NHB." Mattel now seeks to renege on the parties'

5  original agreement because the volume of NHB documents that would have to be

6  included on Mattel's privilege log between November 2003 and April 2004 supports

7  the Defendants' statute of limitations and laches defenses. As Mattel's motion

8  concedes, the parties never modified their original agreement to include on the

9  privilege log all documents created before this action was filed and to omit all

10  documents created thereafter.[2] Mattel should not be permitted to unilaterally re-work

11  that agreement now. Indeed, just one week before Mattel filed the present motion,

12  on April 7, 2008, Mattel's lead attorney in this action, John Quinn, stood before the

13  Court and confirmed to Judge Larson that : "[t]he parties in this case have an

14  agreement that communications after the lawsuit was filed do not have to be

15  logged."[3] Mr. Quinn was correct—the agreement between the parties remains and

16  should continue, as it began years ago, to log all privileged documents up to April 27,

17  2004, when Mattel filed its lawsuit.

18       Accordingly, the Court should deny Mattel's Motion for Protective Order for

19  at least the following reasons. *First*, the agreement of the parties to the lawsuit was

20  and remains that all privileged documents would be logged except for documents

21  created after this action was filed on April 27, 2004. This is supported by transcripts

22  of the parties' meet and confer sessions years ago, the parties' numerous privilege

23  logs, correspondence between the parties, and Mattel's recent statements to the Court.

24  In particular, except in the very limited cases of this motion and the NHB documents,

25

26  [2] Motion for Protective Order at 6 n.10 ("no agreement was reached").
    [3] Declaration of Philip W. Marsh in Opposition to Mattel, Inc.'s Motion for
27  Protective Order Limiting the Temporal Scope of its Privilege Log ("Marsh Decl.")
    at Ex. 1 at: 77:23-78:6 (emphasis added).

28

1  Mattel itself has never disputed MGA's or Bryant's statements that the parties'

2  agreements permit a party to omit only privileged documents that post-date this

3  action's April 27, 2004 filing date.  Mattel continues to confirm the original

4  agreement in other contexts, even while simultaneously arguing for the inconsistent

5  position it espouses in the instant motion.

6      *Second*, Mattel proffers no evidence that the parties affirmatively agreed to

7  omit documents that pre-date this action from privilege logs.  Unable to point to any

8  such evidence, Mattel offers the self-serving declaration of its counsel, Michael

9  Zeller, who states that he informed MGA's and Bryant's counsel that Mattel did not

10 intend to log certain pre-litigation documents.  Mattel then insinuates that MGA and

11 Bryant tacitly acquiesced to Mattel's position by failing to contest it.  Tellingly,

12 Mattel has not offered a single shred of paper that was generated prior to the

13 inception of this controversy in which it made any such statements.  In addition,

14 prior counsel for MGA and Bryant, who participated in the discussions in which the

15 disclosure was allegedly made, have submitted declarations that flatly contradict

16 Mr. Zeller's assertions.[4]

17     *Third*, contrary to Mattel's suggestions in the present motion, the burden of

18 logging a mere five month's worth of privileged documents (some of which are

19 already included on Mattel's current privilege log) does not justify the relief Mattel

20 seeks.  This is particularly true since Mattel must establish its privilege claims for

21 each document, and the accepted way to do this—absent a court order or agreement

22 between the parties to the contrary—is a document-by-document privilege log.

23 Mattel has not been, and should not be, excused from that obligation here.  Indeed, in

24 similar situations, Mattel has benefited in the past when the Court has agreed with its

25 arguments and required other parties and non-parties to produce a document-by-

26 _____

27 [4] *See* Declarations of Diana M. Torres ("Torres Decl.") and Douglas A. Wickham ("Wickham Decl.") in Opposition to Mattel, Inc.'s Motion for Protective Order attached hereto.

28

1  document privilege log, notwithstanding the burden those logs would impose.  Since

2  Mattel never raised this argument until the eleventh hour, its complaints that the

3  impending trial creates an added burden ring hollow, particularly considering that

4  Mattel is still challenging MGA's much lengthier privilege logs at this late date.

5  Mattel should be held the same exacting standard here that it requires of other parties.

6       *Finally*, Mattel's proposal that MGA and Carter Bryant be ordered to log

7  documents created after this litigation commenced is nothing more than a retaliatory

8  effort to punish MGA and Bryant for enforcing the parties' express agreement.

9  Mattel should not be permitted to alter the agreement the parties struck by resorting

10  to tactical maneuvers.  In any event, by Mattel's own logic it would be required to

11  log all documents relating to MGA and Larian until it filed its counterclaims against

12  them in 2007, which would moot its instant motion for protective order.  The Court

13  should reject Mattel's ill-conceived proposal.

14       The Court should also compel Mattel's compliance with the Court's March 10,

15  2008 Order since Mattel's actions demonstrate non-compliance with that order.  It

16  should also disregard Mattel's belated attempts to characterize NHB documents as

17  privileged, for reasons similar to those Mattel has argued with respect to MGA's

18  privilege log.

19  **II.    SUMMARY OF FACTS**

20       **A.    The Filing of this Action and Related Actions**

21       Mattel filed this suit against Carter Bryant on April 27, 2004 in Los Angeles

22  Superior Court for claims of breach of contract, breach of fiduciary duty, breach of

23  duty of loyalty, unjust enrichment, and conversion.[5]  Subsequently, Carter Bryant

24  filed suit against Mattel on November 2, 2004 for declaratory judgment of non-

25

26

27      [5] *See* Mattel's complaint for Los Angeles Superior Court Case No. BC314398,
    dated 4/27/04.

28

1  infringement of copyright.[6]  MGA later filed suit against Mattel on April 13, 2005

2  for false designation of origin, unfair competition, and unjust enrichment.[7]

3  Eventually, the state court case was removed to federal court, and all of the cases

4  were consolidated with the present action.

5       In the case filed by MGA, Mattel filed an answer on May 13, 2005[8], but did

6  not file any claims against MGA or Larian until it filed its Amended Answer and

7  Counterclaim on January 12, 2007.[9]

8    **B.**    **Mattel Concedes it was Obligated to Log All Privileged Documents up to the Filing of its Complaint and that the Parties did not Reach any Other Agreement**

9

10      In its Motion for Protective Order, Mattel explicitly admits that, at least until

11  the summer of 2006, "Mattel was obligated to log all privileged documents up to the

12  filing of its complaint."[10]  Mattel also concedes that the parties did not reach any

13  other agreement.[11]

14    **C.**    **The Parties Agreed During the Meet and Confer Process to Omit Documents Created After April 27, 2004 from Privilege Logs**

15

16       1.    The Parties Agreed During the May 2, 2005 Meet and Confer Session

17      Early in the case, the parties in this action worked out an arrangement

18  regarding privilege logs.  On May 2, 2005, for example, during a meet and confer

19  session involving counsel for Mattel, MGA, and Carter Bryant, the parties worked

20  out an arrangement whereby privileged documents that had been created after the

21  action was filed on April 27, 2004 did not need to be included on a privilege log.

22       [6] *See* Complaint of Carter Bryant for Declaratory Relief of Copyright Non-
23  Infringement in this action, dated November 2, 2004.
       [7] *See* Complaint of MGA filed in Case No. CV 05-02727 CBM (RZX), dated
24  April 13, 2005.
       [8] *See* Answer of Mattel filed in Case No. CV 05-02727 NM (RNBx), dated May
25  13, 2005.
       [9] *See* Mattel, Inc.'s Amended Answer and Counterclaims filed on January 12,
26  2007 in Case No. 05-2727.
       [10] Motion for Protective Order at 6 n.10.
27       [11] Motion for Protective Order at 6 n.10 ("No agreement was reached in the
   earlier discussions" or more generally after the summer of 2006.).

28

1   When asked about logging privileged documents, Mattel's Counsel, Mr. Zeller,

2   volunteered that he felt the "customary" practice of not logging documents created

3   "after the lawsuit commenced" would be appropriate here, and had been the practice

4   Mattel was already following in this action.  Carter Bryant's counsel, Mr. Wickham,

5   also confirmed that this was his "operating presumption."  The transcript of the

6   meeting captured the exchange as follows:

7   MR. WICKHAM:  What about the privilege issue?

8   MR. ZELLER:  Well, I think the same comments
    apply to that.  Certainly to the extent there's a privileged
9   document that would otherwise be responsive, you know,
    to the requests, again, subject to, you know, the statements
10  that we've made and, you know, to the extent we're saying
    we're producing something, it would certainly be reflected
11  in the privilege log.  That's at least the intent.  I mean I
    guess one thing we need to probably discuss is a more
12  general proposition on that particular issue of whether
    we're going to put any particular time parameters on, you
13  know, the privilege log.

14  MR. WICKHAM:  The timing of putting things on
    the privilege log?
15

16  MR. ZELLER:  No.  I'm sorry.  Whether or not
    there's some cutoff date for things that would be on the
17  privilege log.  I mean certainly just <u>as a general customary
    matter, most people, of course, don't put on the privilege
18  log, you know, things, you know, after the lawsuit is
    commenced.</u>  You know, I don't know that we've ever had
19  an express or explicit discussion about what understanding,
    if any, the parties have been proceeding on in terms of that.
20
    MR. WICKHAM:  <u>Certainly my normal practice is
21  that from the date that the action is filed,</u> I would not be
    putting things on the privilege log because to do otherwise
22  would require me to list my entire litigation file.

23  MR. ZELLER:  Right.

24  MR. WICKHAM:  So at least <u>in terms of my
    operating presumption, that's where I've been going on this.</u>
25
    MR. ZELLER:  <u>My understanding is that we've been
26  doing the same on that,</u> <i>just so we're clear on that.</i>[12]

27  _____
    [12] Marsh Decl., Ex. 2 at 419:10-420:22 (emphasis added, case changed for
28  readability).

2. <u>The Parties Also Agreed During the June 20, 2006 Meet and Confer Session</u>

Similarly, during a meet and confer session held over a year later on June 20, 2006 before Judge Block, the parties confirmed their positions that documents created after this action was filed on April 27, 2004 need not be logged. In particular, when the Court observed that counsel in ongoing litigation generally do not list documents they have generated during the course of litigation, both parties agreed:

> THE COURT: I -- I understand the issue and -- and I guess that maybe you need some further discussion between the parties. I mean, in general we don't -- I mean, whether it's a matter of professional courtesy or combination of reality, <u>in general litigation lawyers don't list their own</u>, you know, because it goes without saying that -- I mean, someone, common sense, doesn't become privileged or subject to work product just by sending it to you if it wasn't independently subject to -- you know, you can't make something privileged that wasn't privileged.
>
> MR. QUINN: <u>Agreed</u>.
>
> THE COURT: But on the other hand both -- <u>all the counsel have lots of stuff in their files that they've generated during the course of litigation, even communications with their own clients during the course of litigation. And usually that stuff does not end up getting listed on any privilege log</u>.
>
> MS. CENDALI: <u>No one's suggesting that post-litigation documents be</u> --
>
> THE COURT: Right.
>
> MS. CENDALI: -- <u>be logged by either side</u>.[13]

At these proceedings, Mattel's counsel also made clear that he did not dispute that documents for which Mattel was claiming privilege needed to be listed on a privilege log containing detailed information for each document. Specifically, he stated on the record, "we do not dispute the proposition that any documents claimed to be privileged or subject to the work product document must appear on a privilege log" and then re-emphasized, "[w]e certainly have no disagreement with that

---

[13] Marsh Decl., Ex. 3 at 39:9-40:5 (emphasis added, case changed for readability).

1  principle."[14]  Then he acknowledged the need for detail relating to each document:

2           THE COURT: Well, your privilege log has to
3     identify the author, the recipient, the cc's, the nature of the
      document and the -- and what privileges are being claimed;
4     right?

5           MR. QUINN: Yes, Your Honor . . . . [15]

6     Regarding Ms. Cendali's and the Court's the statements above, Mattel's

7  counsel further stated that Mattel "agree[d] with everything that [MGA's] counsel

8  just said and that the Court just said."[16]  The only potential issue that Mattel's counsel

9  identified was documents in Quinn Emmanuel's files (as opposed to documents in

10 Mattel's files), but admitted that he did not know if any such documents existed and

11 wanted to check:

12          THE COURT: So that -- that would cover everything
      you just said you need to know; right?

13          MR. QUINN: The -- the only issue, your honor --

14          THE COURT: Yes?

15          MR. QUINN: -- is whether it would apply.  We
16    agree with everything that counsel just said and that the
      Court just said.  The only issue is whether it would apply to
17    documents in our files, trial counsel's files, and that is
      something we've said we'd like to take a look at.  We don't
18    even know whether there are any documents that would be
      responsive here. . . . .[17]

19    Because of that issue, and only that issue, Mr. Quinn indicated that Mattel was

20 not prepared to agree with respect to logging all documents relating to the 2002

21 investigation.[18]  The Discovery Master compelled Mattel to produce a privilege log

22 that included those documents.[19]

23

24

25 _____
   [14] Marsh Decl., Ex. 3 at 37:3-6, 9-10.
   [15] Marsh Decl., Ex. 3 at 38:1-5 (case changed for readability).
26 [16] Marsh Decl., Ex. 3 at 38:11-13.
   [17] Marsh Decl., Ex. 3 at 38:6-17 (emphasis added, case changed for readability).
27 [18] Marsh Decl., Ex. 3 at 40:21-41-3.
   [19] Marsh Decl., Ex. 23 at 1:9-13 (Order dated January 30, 2007).
28

1

**D.   Correspondence of MGA's Prior Counsel Confirms the Parties' Agreement**

2

3       Correspondence from MGA's prior counsel in this matter also confirms the

4  parties' agreement.  For example, Mark Feinstein of O'Melveny & Myers LLP,

5  MGA's prior counsel in this matter, sent a letter dated August 14, 2007, to Mattel's

6  counsel, Messrs. Quinn and Zeller, forwarding MGA's supplemental privilege log.[20]

7  In that letter, Mr. Feinstein confirmed the parties agreement that this and future

8  privilege logs "would be subject to [the parties'] existing agreement that, in general,

9  documents that postdate the filing of this lawsuit, on April 27, 2004, do not have to

10 be included on a privilege log."[21]

11      Mattel disputed several aspects of this letter both in a reply letter from Dylan

12 Proctor, counsel for Mattel, to Mr. Feinstein dated August 16, 2007,[22] and in Mattel,

13 Inc.'s Reply in Support of Motion to Compel Production of Documents Withheld as

14 Privileged, filed August 27, 2007.[23]  Although in both of these documents Mattel

15 disputes various aspects of Mr. Feinstein's August 14, 2007 letter, neither challenges

16 Mr. Feinstein's statement regarding the parties' agreement that documents created

17 after April 27, 2004 do not need to be included on a privilege log.[24]

18

**E.   The Parties did not Alter their Privilege-Logging Agreement During the Summer of 2006**

19

20      Prior counsel for MGA and Carter Bryant have submitted declarations in

21 opposition to Mattel's present motion.  They are in agreement that Mr. Zeller's

22 declaration supporting Mattel's motion is inaccurate,[25]  that there was never any

23 agreement between the parties to allow Mattel to avoid logging privileged documents

24

25  [20] Marsh Decl., Ex. 4.
    [21] Marsh Decl., Ex. 4 at 2.
26  [22] Marsh Decl., Ex. 5.
    [23] Marsh Decl., Ex. 6.
27  [24] *See* Marsh Decl., Ex. 5 & Ex. 6 at 18-19.
    [25] Torres Decl., ¶ 2; Wickham Decl., ¶ 2.

28

1  dated before April 27, 2004,[26] and that Mattel *never* proposed November 24, 2003 as

2  the privilege logging limit.[27]  Both declarations also make clear that the parties

3  would not have accepted any modification to the parties' original agreement.[28]

### F.    Correspondence of MGA's and Mattel's Current Counsel Confirms the Parties' Agreement

6          Likewise, MGA's current counsel has confirmed the agreement between the

7  parties in multiple letters.  For example, in a letter dated February 8, 2008 from Amy

8  Park, counsel for MGA, to Jon Corey, counsel for Mattel, forwarding MGA's revised

9  privilege log, Ms. Park notes that entries for documents that post-date the litigation

10  had been removed "consistent with the parties' agreement."[29]  Mattel never disputed

11  Ms. Park's letter.

12          Similarly, in a letter dated March 20, 2008, Jose Allen, counsel for MGA, sent

13  a letter to Harry Olivar, counsel for Mattel, in which he indicated that the parties'

14  privilege-logging agreement required the parties to include all documents "generated

15  on or prior to April 27, 2004."[30]  Mr. Olivar responded on behalf of Mattel in a letter

16  dated April 10, 2008, and acknowledged that "the parties have agreed not to log

17  documents [created after the commencement of litigation]."[31]

### G.    Each of Mattel's Many Privilege Log Iterations Includes Documents from Mattel's So-Called "Disputed Period"

20          Mattel has produced multiple iterations of its privilege logs, each of which has

21  included multiple documents that post-date November 24, 2003, many of which are

22  within Mattel's so-called "disputed period" between November 24, 2003 to April 27,

23  2004.[32]

---

[26] Torres Decl., ¶ 3; Wickham Decl., ¶¶ 3-4.
[27] Torres Decl., ¶ 4; Wickham Decl., ¶¶ 5-6.
[28] Torres Decl., ¶ 3; Wickham Decl., ¶¶ 5-6.
[29] Marsh Decl., Ex. 7.
[30] Marsh Decl., Ex. 8 at 1.
[31] Marsh Decl., Ex. 9 at 2.
[32] Marsh Decl., ¶ 11.

1    For example, on October 6, 2004, Mattel served a privilege log on Carter

2   Bryant containing two entries dated March 12, 2004 and April 26, 2004—both

3   within Mattel's so-called "disputed period."  The transmittal letter states that the

4   accompanying verification was provided in response to the Court's October 5, 2004

5   order, and that the privilege log was "provided . . . as an accommodation."[33]  There is

6   no mention in the letter that the privilege log entries were compelled by court order,

7   and the Court's October 5, 2004 order compelled Mattel "to produce documents or

8   state in a verified response that none exists," but did not require or mention a

9   privilege log.[34]

10    Mattel's production of privilege logs containing entries for documents after

11   November 24, 2003, was not limited to privilege logs produced prior to the summer

12   of 2006, when Mattel suggests that agreement between the parties was altered.  For

13   example, on February 23, 2007, Mattel served a "supplemental" privilege log

14   containing 69 entries, 40 of which appear to post-date November 24, 2003.[35]  As

15   another example, on July 31, 2007 Mattel served a privilege log for documents

16   responsive to a subpoena *duces tecum* to Lambda Investigations.[36]  The July 31

17   Privilege log contains 15 entries, 11 of which post-date November 24, 2003.[37]

18    Mattel's later privilege logs also each contain multiple entries dated after

19   November 24, 2003.  For example, both of its recently filed "supplemental" privilege

20   logs produced on March 7, 2008[38] and March 20, 2008[39] each contain numerous

21   entries dated after November 24, 2003.  Although the March 20, 2008 supplemental

22   privilege log contains numerous entries later than November 24, 2003, it appears that

23

24   _____

[33] Marsh Decl., Ex. 10.
[34] Marsh Decl., Ex. 11.
[35] Marsh Decl., Ex. 12 (*See* Supp. Privilege Log entries 1-7, 37-69).
[36] Marsh Decl., Ex. 13.
[37] Marsh Decl., Ex. 13 (*See* Privilege Log entries 1, 3, 6-8, 10-15).
[38] Marsh Decl., Ex. 14 (*See, e.g.*, Supp. Privilege Log entries 329-334, 341-350).
[39] Marsh Decl., Ex. 15.

1 │ all of the 31 entries added on that log pre-date November 24, 2003.[40]

2 │ **H.    Mattel's Recent Statements Confirm the Parties' Agreement**

3 │ Just *one week* before Mattel filed its present motion, its lead attorney, John

4 │ Quinn, confirmed to Judge Larson the parties' agreement to omit privileged

5 │ documents created after April 27, 2004 from privilege logs.  During a hearing on

6 │ April 7, 2008 on a motion by Mattel to disqualify a former Mattel employee as an

7 │ expert witness, Mr. Quinn needed to explain why communications with her were not

8 │ listed on a privilege log.  His reply relied on the parties' privilege-logging agreement:

9 │
10 │ MR QUINN: There really cannot be any question that this woman was intimately familiar with important confidential and privileged information.

11 │
12 │ Now, the issues that Mr. Nolan raises suggest that maybe there's some reason to doubt that.  And one thing he points to is, why aren't these communications with her on a privilege log?

13 │

14 │ The answer to that is, she says in her report that she began doing this work for the law department every month

15 │ in mid 2004.  That's at page 2.  That's after the lawsuit is filed.  <u>The parties in this case have an agreement that</u>

16 │ <u>communications after the lawsuit was filed do not have to be logged.</u>  That's the answer to that.[41]

17 │ **I.    MGA Moves to Compel Production of the NHB Documents and**

18 │ **Mattel Begins to Claim that it Need Not Log Privileged Documents Created During the Period Leading up to Litigation.**

19 │ As MGA discovered Mattel had been using "NHB" as a codename for MGA

20 │ to avoid email filters and began to see evidence of investigation of MGA through

21 │ documents mentioning NHB that pre-dated Mattel's claimed notice of MGA's acts,

22 │ Mattel's position regarding the privilege-logging agreement began to change.[42]  As

23 │ MGA was discovering these NHB documents, Mattel clawed back two such

24 │

25 │ [40] Marsh Decl., Ex. 15 (*See* Supp. Privilege Log entries 354-384).
   │ [41] Marsh Decl., Ex. 1 at 77:21-78:6 (emphasis added; case changed for

26 │ readability).
   │ [42] *See* Second Amended Answer in Case No. 05-2727 and Counterclaims filed on

27 │ July 12, 2007 (filed in this Matter, which had been consolidated with Case Nos. CV 05-09059 and CV 05-2727 by that time) at ¶ 36; *See* Marsh Decl., Exs. 16 & 17.

28 │

1   documents.[43]  On January 28, 2008, MGA and Carter Bryant filed a Joint Motion to

2   Compel Production of Improperly Withheld Mattel Documents Showing Mattel's

3   Investigation of MGA and Carter Bryant Prior to November 2003 and to Compel

4   Production of all "NHB" Documents.[44]  Because of the flurry of discovery issues at

5   the end of Phase 1 discovery, MGA and Mattel met and conferred on January 31,

6   2008 regarding the joint motion to compel.  During that meet and confer session, as

7   memorialized in a February 4, 2008 letter from MGA's counsel, Marcus Mumford,

8   Mattel stated for the first time that it would not place documents on its privilege log

9   that post-date November of 2003.[45]  Mr. Mumford replied that he had "indicated that

10  he was not aware of any such agreement" and asked for "any further information

11  concerning it."[46]  Mattel never responded to that request.[47]

12          Mattel lost its fight to shield documents mentioning "NHB" from discovery

13  when the Discovery Master granted MGA's and Bryant's joint motion to compel

14  Mattel to produce "NHB" documents in the Court's March 10, 2008 Order.[48]  Within

15  hours of the order issuing, Mattel sent a letter[49] taking the position that "the Court

16  has noted previously, the parties have not been logging [privileged] documents . . .

17  *during the time period leading up to* and subsequent to the filing and subsequent to

18  the filing of the . . . action in April 2004."[50]  In particular, the letter referred to this as

19  the "parties' past logging practices," and suggested that to require more logging than

---

[43] Marsh Decl., Ex. 16 at 3:13 *et seq.*
[44] Marsh Decl., Ex. 16.
[45] Marsh Decl., Ex. 17.
[46] Marsh Decl., Ex. 17 at 2.
[47] Declaration of Timothy L. Alger in Support of Mattel, Inc.'s Motion for Protective Order ("Alger Decl."), Ex. B at 2: March 14, 2008 letter from M. Mumford to T. Alger ("I disputed the notion that Mattel need not log any privileged documents post-November 2003 and requested that you cite any such agreement if Mattel intended to rely on it in opposition to the motion.  You did not provide any documentation or any further information concerning such an alleged agreement.") (citation omitted).
[48] Marsh Decl., Ex. 18.
[49] Marsh Decl., Exs. 19 & 20 (*compare* 2:19 p.m. email stamp of Ex. 19 with 6:16 p.m. fax transmission header of Ex. 20).
[50] Marsh Decl., Ex. 20 (emphasis added).

1  this would "seek[] to expand the scope of the logging practice."[51]  In other words,

2  Mattel was arguing that requiring logging of documents up to April 27, 2004—as the

3  parties had previously agreed to do—would expand the scope of the parties' past

4  logging practice.  Mattel provided no evidence for its version of the agreement.

5  Counsel for MGA and Carter Bryant immediately challenged Mattel's contention that

6  any past practice or agreement existed for not logging privileged documents falling

7  within the time period leading up to the April 27, 2004 filing date of this action, and

8  also challenged Mattel's contention that the Court had acknowledged any such

9  practice. [52]

10        Regarding the contention that the parties had not been logging documents

11  during the period leading up to litigation, Mattel then claimed for the first time, in a

12  letter dated March 14, 2008, that the parties had met and conferred on this point.[53]

13  Carter Bryant's counsel disputed all points raised in Mattel's March 14, 2008 letter,

14  stating that it "does not accurately reflect the long-standing agreement and practice

15  of the parties."[54]  Mattel never responded to MGA's or Bryant's requests to support

16  its contention that the Court had acknowledged the practice of not logging

17  documents in the time period leading up to litigation.

18        In addition to compelling production of NHB documents, the Discovery

19  Master's March 10, 2008 Order required that Mattel identify "all documents being

20  withheld on the basis of a claim of privilege," on a privilege log to "be produced no

21  later than March 14, 2008."[55]  On March 20, 2008 Mattel produced its Supplemental

22

23  _____

      [51] Marsh Decl., Ex. 20.
24    [52] Marsh Decl., Ex. 21; Alger Decl., Ex. B: March 14, 2008 letter from M.
      Mumford to T. Alger.
25    [53] Alger Decl., Ex. C: March 14 letter from T. Alger to M. Werdegar (notably
      Mattel's letter does not confirm any agreement or past practice, but merely provides a
26    third-hand hearsay allegation, several years after the fact, of an alleged unilateral
      proposal to modify the privilege logging practice of the parties already in place).
27    [54] Alger Decl., Ex. D: March 18, 2008 letter from M. Werdegar to T. Alger.
      [55] Marsh Decl., Ex. 18 at 4:23-5:9.
28  _____

1 | Privilege Log, presumably in response to this order.[56]  Although Mattel had
2 | previously asserted that no NHB documents had been intentionally withheld,[57] the
3 | March 20, 2008 included an additional 31 entries of NHB documents.

4 | ### III.   ARGUMENT

5 | Mattel bears a heavy burden to show good cause to support a protective order,
6 | and must make a strong showing as to why discovery should be denied by the
7 | issuance of a protective order. Fed. R. Civ. P. 26(c); *Blankenship v. Hearst Corp.*,
8 | 519 F.2d 418, 429 (9th Cir. 1975).  To show the required good cause, Mattel must
9 | demonstrate that specific prejudice or harm will  result if no protective order is
10 | granted. *Phillips v. GMC*, 307 F.3d 1206, 1211 (9th Cir. 2002).  Broad blanket
11 | allegations of harm will not suffice. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331
12 | F.3d 1122, 1130 (9th Cir. 2003); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470,
13 | 476 (9th Cir. 1992).

14 | The burden of showing that an attorney-client privilege exists rests upon the
15 | party asserting the privilege. *See United States v. Munoz*, 233 F.3d 1117, 1128 (9th
16 | Cir. 2000); *Clarke v. Am. Commerce Nat'l. Bank*, 974 F.2d 127, 129 (9th Cir. 1992);
17 | *In re Syncor Erisa Litig.*, 229 F.R.D. 636, 644 (C.D. Cal. 2005).  Proper assertion of
18 | privilege requires that a party be specific, and not simply rely on generalized or
19 | boiler-plate privilege arguments. *Burlington N. & Santa Fe Ry. v. United States Dist.*
20 | *Court*, 408 F.3d 1142, 1147 (9th Cir. 2005).  Like blanket privilege objections,
21 | blanket "burdensomeness" objections are also improper, particularly where the claim
22 | of burden rests on general assertions regarding the existence of privileged material
23 | without any particularized showing that any documents are privileged. *Green v.*
24 | *Baca*, 219 F.R.D. 485, 491 (C.D. Cal. 2003).

25 | Typically, documents must be shown individually on privilege logs. *PostX*

26 | ─────────────
[56] Marsh Decl., Ex. 15 ("The documents in entries 354-384 have been logged
27 | pursuant to Judge Infante's Order of March 10, 2008").
[57] Marsh Decl., Ex. 17 at 2.

28 |

1 | *Corp. v. Secure Data Motion*, 2004 U.S. Dist. LEXIS 24869, *4 (N.D. Cal. June 9,

2 | 2004) *aff'd*, 115 Fed. Appx. 72 (Fed. Cir. 2004).  That information on the log would

3 | include attorney-client communications or attorney work product concerning the

4 | litigation is not a sufficient excuse to avoid a document-by-document privilege log.

5 | *PostX*, 2004 U.S. Dist. LEXIS 24869 at *4-*5.

**A.   The Parties' Agreement was and Remains that all Privileged Documents would be Logged Except for Documents Created after this Action was Filed on April 27, 2004**

    1.   The Record Shows that the Parties' Originally Agreed to Omit Only Documents Created After April 27, 2004 from Privilege Logs

10 |       The record in this case is clear.  The parties understood that each document not

11 | produced because of a privilege or work product claim would be logged on a

12 | privilege log, unless that document was created after the filing of this action on

13 | April 27, 2004.  At the May 2, 2005 meet and confer session, the parties made that

14 | abundantly clear.  In particular, Mattel's counsel, Mr. Zeller, volunteered that not

15 | logging documents created after litigation has commenced is "customary," and

16 | Carter Bryant's counsel agreed, stating that was his "normal practice."  Mr. Zeller left

17 | no doubt when he stated that Mattel was "doing the same . . . *just so we're clear on*

18 | *that*."[58]

19 |       It was Mr. Zeller who volunteered what he believed to be both the

20 | "customary" practice and Mattel's practice in this case.  Tellingly, there was no

21 | discussion or even hint that Mattel might want to exclude any additional documents

22 | from its privilege log.  On the contrary, the parties were in complete agreement about

23 | the fact that only documents created after the litigation had been filed should be

24 | excluded from privilege logs, and all parties have been acting in reliance on that

25 | agreement.

26 |       Similarly, during a meet and confer session held before Judge Block over a

---

[58] Marsh Decl., Ex. 2 at 419:10-420:22 (emphasis added).

1 | year later, on June 20, 2006—just one month before the July and August meet and

2 | confer sessions that Mr. Zeller references in his declaration—the parties confirmed

3 | their positions that documents created after this action was filed on April 27, 2004

4 | need not be logged. In particular, when the Court mentioned that, "in general

5 | litigation lawyers don't list their own" documents on a privilege log,[59] John Quinn,

6 | on behalf of Mattel, replied simply that he "[a]greed."[60] When the Court made

7 | another similar statement, Dale Cendali, on behalf of MGA, also made clear that no

8 | one was suggesting post-litigation documents need be logged.[61] In other words,

9 | more than a year later, the parties were still in complete agreement regarding

10 | documents that could be excluded from the privilege log.

11 | While discussing logging files from a 2002 investigation during the June 20,

12 | 2006 proceeding,[62] Mattel's lead counsel, Mr. Quinn, also confirmed that Mattel did

13 | "not dispute the proposition that any documents claimed to be privileged or subject

14 | to the work product document (*sic*, doctrine) must appear on a privilege log."[63]

15 | Mr. Quinn also told the Court that Mattel had already advised counsel for the other

16 | parties that Mattel "ha[s] no disagreement with that principle."[64] When the Court

17 | then specified Mattel's "privilege log has to identify the author, the recipient, the

18 | CC's, the nature of the document and the -- and what privileges are being claimed,"

19 | Mr. Quinn simply replied, "Yes Your Honor."[65] The *only* possible issue that *might*

20 | require further negotiation according to Mr. Quinn during the June 20, 2006

21 | proceeding, was whether or not documents from Quinn Emanuel's files would be

22 | logged. There was no mention of the November 24, 2003 date, or the need for any

23 |

24 |

25 |

26 |

27 |

28 |

---

[59] Marsh Decl., Ex. 3 at 39:13-14.
[60] Marsh Decl., Ex. 3 at 39:9-20.
[61] Marsh Decl., Ex. 3 at 39:21-40:10.
[62] The Discovery Master compelled Mattel to produce these documents and a complete privilege log of all documents withheld as privileged in an order dated January 30, 2007. Marsh Decl., Ex. 23 at 1:9-13.
[63] Marsh Decl., Ex. 3 at 37:3-6.
[64] Marsh Decl., Ex. 3 at 37:6-10.
[65] Marsh Decl., Ex. 3. at 38:1-5.

1  special dispensation for the period leading up to the litigation.

2          2.  <u>Recent Statements to the Court by Mattel's Lead Attorney</u>
<u>Confirm the Original Agreement Between the Parties is Still in</u>
3  <u>Effect</u>

4       Mattel's lead attorney in this matter, John Quinn, also re-affirmed the parties'

5  original agreement just *one week* before Mattel filed this motion.  During a hearing

6  on April 7, 2008 when Mr. Quinn was asked why an item did not appear on Mattel's

7  privilege log, he stated, "The parties in this case have an agreement that

8  communications after the lawsuit was filed do not have to be logged."[66]

9       There was no mention of November 24, 2003, or any agreement not to log

10  certain documents that pre-dated the filing of this action.  Rather, Mr. Quinn clearly

11  articulated the *exact same* agreement that the parties had worked out in the early

12  meet and confer sessions.  This is not surprising considering that it was the same

13  attorney, John Quinn, who participated in the earlier June 20, 2006 meet and confer

14  session.  That Mattel now seeks in this motion to take the contrary position is

15  striking.

16       Mattel's lead attorney, who was intimately involved with the earlier agreement

17  of the parties and was purportedly instrumental in further meet and confer sessions

18  on the same point during the summer of 2006,[67] would not mischaracterize Mattel's

19  agreed-to obligations as being broader than they actually were.  If the agreement on

20  privilege logging had changed, John Quinn would have been in the best position to

21  know that and properly disclose it to the Court and the parties.  Instead, he

22  articulated the agreement as it originally was, and as it remains to this day—

23  permitting parties to omit from privilege logs only those documents created after the

24  filing of this action.

25

26

27  [66] Marsh Decl., Ex. 1 at 78:4-6.
[67] *See* Declaration of Michael T. Zeller in Support of Mattel, Inc.'s Motion for
Protective Order ("Zeller Decl."), ¶¶ 2-4.

28

3.   Mattel's Privilege-Logging Actions Demonstrate that the Original Agreement is Still in Effect[68]

Mattel's privilege logs all include multiple documents that were created after the November 24, 2003 logging deadline Mattel proposes here.[69] Mattel makes the argument in the present motion that any document listed on the various privilege logs that was created after November 24, 2003 relates to some unique circumstance, such as compliance with a specific discovery order or specific representations that Mattel would produce certain documents.[70] The facts contradict that statement, however, in several ways.

For example, that statement seems to be at odds with Mattel's admission later in its motion that it "was obligated to log all privileged documents up to the filing of its complaint" prior to the conferences of counsel in the summer of 2006.[71] If Mattel was under an obligation to provide these documents, then why would it need to explain them away by referring to unique circumstances?

Also, several of Mattel's privilege logs, while containing documents that post-date November 24, 2003, appear to have nothing to do with the "unique circumstance[s]" that Mattel suggests.  For example, Mattel's October 6, 2004 privilege log contains two entries dated March 12, 2004 and April 26, 2004, both within Mattel's so-called "disputed period."  The transmittal letter states that the accompanying verification was provided in response to the Court's October 5, 2004 order, but that the privilege log was "provided . . . as an accommodation."[72]  There is no mention in the letter that the privilege log entries were compelled by court order,

---

[68] Although Mattel's privilege-logging practices are at issue here, MGA's privilege logs also comply with the parties' original agreement, logging all documents up to the April 27, 2004 filing date of this action. *See* Marsh Decl., Exs. 7 & 8.
[69] Marsh Declaration, ¶ 11.
[70] Motion for Protective Order at 3 n.4.
[71] Motion for Protective Order at 6 n.10.
[72] Marsh Decl., Ex. 10.

1 | and the October 5, 2004 order appears only to have compelled Mattel "to produce

2 | documents or state in a verified response that none exists," but did not require or

3 | otherwise mention a privilege log.[73]

4 |      Similarly, Mattel's February 23, 2007 supplemental privilege log- -filed after

5 | the conferences of counsel in the summer of 2006—includes 69 entries, 40 of which

6 | appear to post-date November 24, 2003.[74] Mattel's transmittal letter for this log is

7 | not clear how any of these might have been required by the unique circumstances

8 | outlined in Mattel's motion. In particular, the letter refers to the Discovery Master's

9 | January 30, 2007 Order, which requires privilege logging for documents related to

10 | "any investigation that occurred as a result of the receipt of the August 2002

11 | 'Anonymous Letter' to Mattel CEO Robert Eckert."[75] Yet several of the document

12 | descriptions in the privilege log appear to be outside the scope of that order. For

13 | example, entries 37-39, 52-56, 58, 60, and 62 on this log relate to advertising that

14 | appears not to relate to any investigation.

15 |      In fact, the only exception to Mattel's normal practice of including documents

16 | after November 24, 2003 on privilege logs appears to be the 31 documents added to

17 | its March 20, 2008 supplemental log, related to the NHB documents and at the center

18 | of the instant dispute.

19 |     4.   <u>Mattel has Consistently Failed to Dispute the Parties' Numerous</u>

                <u>References to the Parties' Agreement that all Documents Created</u>

20 |                 <u>Before April 27, 2004 must be Included on Privilege Logs</u>

21 |      Mattel has consistently failed to dispute the parties' numerous references to the

22 | parties' privilege-logging agreement.[76] This is further evidence that no agreement

23 | between the parties existed other than the initial agreement to omit only documents

24 |

25 |   [73] Marsh Decl., Ex. 11.

    [74] Marsh Decl., Ex. 12 (*See* Supp. Privilege Log entries 1-7, 37-69).

26 |   [75] Marsh Decl., Ex. 23 at 1:9-13.

    [76] By contrast, MGA and Bryant have consistently disputed Mattel's recent

27 | mischaracterizations of the parties' privilege-logging agreement and duties. *See*

    Marsh Decl., Exs. 17 & 21; Alger Decl., Exs. B & D.

28 |

1  created after the filing date of this action, and that Mattel has never sought to change

2  the parties' arrangement.

3          Three specific examples stick out.  First, in his August 14, 2007 letter, Marc

4  Feinstein clearly states that the existing agreement of the parties is that "documents

5  that post-date the filing of this lawsuit on April 27, 2004, do not have to be included

6  on a privilege log."[77]  Indeed, this letter is the one that Mattel would most likely have

7  challenged if, as Mattel's counsel has now asserted after the fact, that the parties'

8  logging practices included not logging documents "during the time period leading up

9  to" the filing of this action[78] for two reasons: (1) it was the closest to the alleged

10 events of the Summer of 2006 upon which Mattel's present motion is hinges, and (2)

11 Mattel had a related motion pending.  In fact, in connection with Mattel's related

12 pending motion, Mattel criticized and disputed Mr. Feinstein's letter in several

13 regards—both in a reply letter of August 16, 2007[79] and in the Reply in support of its

14 motion filed August 27, 2007.[80]  One of the few things Mattel did not dispute,

15 however, was Mr. Feinstein's statement regarding the parties' privilege-logging

16 agreement.

17         MGA has sent two other letters more recently that refer to the agreement

18 between the parties for logging documents up to but not beyond the filing date of this

19 action.  Mattel did not dispute or otherwise respond to the first of these, Amy Park's

20 February 8, 2008 letter.[81]  Mattel's response to the second of these, Jose Allen's letter

21 of March 20, 2008,[82] came a mere *four days* before Mattel filed the present motion,

22 in a letter dated April 10, 2008 from Mattel's counsel, Harry Olivar, and the response

23 actually acknowledges and confirms MGA's understanding of the parties' privilege-

24

25   [77] Marsh Decl., Ex. 4 at 2.
     [78] Alger Decl., Ex. A.
26   [79] Marsh Decl., Ex. 5.
     [80] Marsh Decl., Ex. 6.
27   [81] Marsh Decl., Ex. 7.
     [82] Marsh Decl., Ex. 8.
28

1 logging agreement. In particular, it notes that "the parties have agreed not to log

2 those documents" that were "created after the commencement of litigation."[83]

3

### B.   Mattel Proffers no Evidence that the Parties Agreed to Omit Pre-Litigation Documents from Privilege Logs

4

5     Mattel proffers no evidence that the parties affirmatively agreed to omit

6 documents that pre-date this action from privilege logs. The only potentially

7 relevant document is a March 14, 2008 letter from Mattel's Counsel, Tim Alger, to

8 Carter Bryant's counsel, Matt Werdegar, purporting to explain Mattel's practice of

9 not logging certain pre-litigation documents. This letter is a third-hand hearsay

10 account of purported meet and confer discussions that occurred years ago, and to

11 which Mr. Alger was not a party.[84] The Court should disregard the letter because it

12 is inadmissible hearsay, and MGA has accordingly filed an evidentiary objection to it

13 with this opposition paper.

14     Unable to point to any reliable evidence, Mattel has offered the self-serving

15 declaration of its counsel, Michael Zeller, who states that he informed MGA's and

16 Bryant's counsel that Mattel did not intend to log certain pre-litigation documents.[85]

17 Mr. Zeller's declaration has been completely refuted, however, by the declarations of

18 MGA's former counsel, Diana Torres, and Carter Bryant's former counsel, Douglas

19 Wickham—two people who were involved in the conferences of counsel in July and

20 August of 2006, and would have first hand knowledge of their events, as Mr. Zeller's

21 declaration confirms.[86]

22     Mattel has also insinuated that MGA and Bryant tacitly acquiesced to Mattel's

23 position by failing to contest it.[87] Mattel has not offered a single shred of paper,

24

25 [83] Marsh Decl., Ex. 9.
   [84] Alger Decl., Ex. C: March 14, 2008 letter from T. Alger to M. Werdegar.
26 [85] Zeller Decl., ¶ 3.
   [86] Zeller Decl., ¶ 3; Torres Decl., ¶ 3; Wickham Decl., ¶ 4.
27 [87] Mattel appears to contradict itself on this point, saying on the one hand that the
   parties had modified their privilege logging practice (*see* Marsh Decl., Ex. 20
28                                                                              *(cont'd)*

1  however, that was generated prior to the inception of this controversy in which it

2  allegedly disclosed that it was not logging all pre-litigation documents.  In fact, the

3  record shows the exact opposite—that MGA and Bryant consistently objected to

4  Mattel's statements mischaracterizing the agreement of the parties, all of which have

5  arisen in the context of the controversy disputed by Mattel's present motion.[88]  In fact,

6  when MGA asked for additional information supporting its position, Mattel failed to

7  respond.[89]

8          MGA and Carter Bryant have repeatedly asked for any such evidence and

9  have received none.  Of course MGA and Bryant believe that no such evidence exists,

10  but at this stage it would be inappropriate for Mattel to attempt to introduce new

11  evidence in its reply brief.  *Rose v. Beverly Health & Rehab. Servs.*, 2006 U.S. Dist.

12  LEXIS 91740 (E.D. Cal. Dec. 7, 2006); *In re Intuit Privacy Litig.*, 138 F. Supp. 2d

13  1272, 1275 n.3 (C.D. Cal. 2001).

14  **C.   Mattel has Failed to Establish a Burden for Logging Documents**
**Post-Dating November 24, 2003**

15

16          Mattel has proffered no evidence that completing a privilege log consistent

17  with the parties' long-standing agreement would be overly burdensome.  Mattel's

18  purported "evidence" consists solely of attorney argument.[90]  Mattel presents blanket

19  arguments that logging the documents will require Mattel to review a large quantity

20  of paper and electronic documents,[91] review prior productions and privilege logs,[92]

21  and add documents to a supplemental privilege log,[93] all of which Mattel suggests

22

23  *(cont'd from previous page)*
(referring to the "parties' past logging practices")), and on the other admitting that the
parties have never reached any agreement (Motion for Protective Order at 6 n.10).

24      [88] Marsh Decl., Exs. 17 & 21; Alger Decl., Exs. B & D.

25      [89] Alger Decl. Ex. B at 2 (confirming no information concerning Mattel's
contention it is not required to log documents after November 2003 received despite
request).

26      [90] Motion for Protective Order at 6:3-9:6.

27      [91] Motion for Protective Order at 7:13-15.
        [92] Motion for Protective Order at 7:15-16.

28      [93] Motion for Protective Order at 7:17-19.

1  will be costly and time-consuming.[94]  The problem with Mattel's *arguments*, aside

2  from appearing to include activities that are normally required of parties in litigation,

3  is that they are *arguments*, not *evidence*.  Mattel has not provided a single shred of

4  evidence regarding the purported "burdensomeness" of fulfilling its prior obligations

5  of logging its documents, other than to assert generally that it will be a big project.

6  For example, despite Mattel's motion having two supporting declarations, neither of

7  these provides even the most rudimentary of estimates of burden, cost, or time,

8  which one would expect at a minimum.[95]  Furthermore, considering that the only

9  documents in question are those falling within the short five-month period from

10  November 24, 2003 to April 27, 2004, the claim that logging all such documents

11  would be unduly burdensome cannot be taken seriously.

12       Mattel's claims of burden because of the proximity of trial are also spurious.

13  Mattel knew and continues to know that the agreement between the party requires

14  logging of all documents created prior to April 27, 2004.[96]  Mattel has no one to

15  blame for that delay but itself.  Even from the conferences of counsel in the summer

16  of 2006 that Mattel touts, it has had nearly two years during which it could have

17  brought the present Motion for Protective Order.[97]  The Court should not permit

18  Mattel to use the fact that it chose to delay until now to bring this motion as a factor

19  in assessing the alleged burden on Mattel.  Mattel should not be permitted to

20  generate free passes for itself as a result of its own neglect.

21

22  [94] Motion for Protective Order at 6:6-7.
    [95] Of course, to do so on reply would also be impermissible. *Rose*, 2006 U.S. Dist.
23  LEXIS 91740; *In re Intuit Privacy Litig.*, 138 F. Supp. 2d at 1275 n.3.
    [96] *See, e.g.*, Motion for Protective Order at 6 n.10 (acknowledging the original
24  agreement between the parties required logging all documents through April 27,
    2004, and admitting that the parties never reached any other agreement).
25  [97] Mattel's statement, at p. 6 of its brief, that the Court "has not had occasion to
    address logging of documents for the period prior to April 27, 2004" is ironic, since
26  the reasons it has not had such an opportunity are: (1) the parties, including Mattel,
    never agreed to omit documents created prior to this date until Mattel manufactured
27  this controversy when the NHB documents became at issue; and (2) Mattel did not
    bring the present motion earlier by its own choice.
28

1   Mattel is required to show with particularity that a privilege applies to the

2   documents it is withholding. *See Munoz*, 233 F.3d at 1128; *Clarke*, 974 F.2d at 129.

3   Mattel's blanket assertion that the documents are "clearly privileged" is not

4   sufficiently particularized to establish that the documents should be protected by a

5   privilege. *Green*, 219 F.R.D. at 491.  The Court should reject Mattel's improper

6   blanket arguments.

7   Mattel's situation here is analogous to the situation in the *PostX* case, where

8   PostX attempted to avoid logging documents that it deemed to be "obviously"

9   privileged. *PostX*, 2004 U.S. Dist. LEXIS 24869 at *4.  Like PostX, Mattel asserts a

10  blanket privilege argument; Mattel asserts that the documents in question are "clearly

11  privileged," just as PostX asserted that its documents in question were "obviously

12  privileged and protected." *Id.*  Like Mattel, PostX attempted to rely on *SEC v.*

13  *Thrasher*, 1996 U.S. Dist. LEXIS 3327, 1996 WL 125661 (S.D.N.Y. March 20,

14  1996),[98] but the Court in *PostX* found that *Thrasher* was distinguishable because of

15  contrast between the extremely voluminous files in *Thrasher* and the relatively fewer

16  documents in *PostX*.  Similarly in Mattel's case, the documents at issue are not

17  extremely voluminous, as Mattel would have only five months' worth of documents

18  to review.[99]

19  Like PostX, Mattel has argued that producing a privilege log would somehow

20  reveal litigation strategy.[100]  *Id*.  But as the court in *PostX* found, and as this Court

21  should also hold, Mattel's vague references to revealing strategy are not sufficient to

22  excuse it from its discovery obligations.  *Id*.  Mattel's argument that "Defendants'

23  demand for a privilege log for the disputed period is an obvious back-door maneuver

24  to discern what Mattel did prior to filing its complaint," is contrary to its previous

25

[98] Motion for Protective Order at 5:16-6:1.

26  [99] *See also* Marsh Decl., Ex. 24 (Discovery Master's January 25 Order re: Mattel's
    Motions to Compel Farhad Larian, Kaye Scholer; and Stern & Goldberg to Produce
27  Documents) at 13:20-14:16 (distinguishing *Thrasher*.).
    [100] Motion for Protective Order at 8:24-9:6.

28

1 acknowledgement that limiting privilege logging was a "customary" practice that

2 Mattel was already abiding by.[101] MGA seeks nothing more than to require Mattel to

3 abide by the same rules as everyone else.

4     Mattel's claims of burden are further undercut by the size of its privilege log,

5 which like the rest of its discovery output, is relatively paltry compared with

6 MGA's.[102] Completing its court-ordered privilege logging obligation does not

7 approach the burden that Mattel has imposed and continues to impose on MGA with

8 its continued and constant requests for more discovery.[103] MGA has not been the

9 lone target of Mattel's numerous discovery requests. Mattel has, in several instances,

10 pressed discovery requests and received the benefit of discovery, despite the burden

11 imposed on other parties. The Court should not now permit Mattel to complain

12 because of its perceived burden. For example, Mattel stopped at nothing when

13 challenging the sufficiency of *third-party* Farhad Larian's burden objections to

14 producing a privilege log.[104] Mattel benefited when the Court, despite finding

15 several of Mattel's requests to be intrusive and harassing,[105] ordered Farhad Larian's

16 to produce a document-by-document supplemental privilege log.[106] Mattel also

17 benefited similarly from the Court's decision ordering *third-party* Kaye Scholer to

18 produce a document-by-document privilege log, despite Kaye Scholer's arguments

19 that to do so would impose an undue burden on them.[107]

20

---

21   [101] Marsh Decl., Ex. 2 at 419:10-420:22.
  [102] In response to thousands of Mattel's document requests, MGA has produced

22 over 4 million documents in this case—nearly four times the number of documents produced by Mattel to date.

23   [103] *Compare* Marsh Decl., Ex. 15 (Supp. Privilege Log showing a total of 384 entries) *with* Marsh Decl., Ex. 9 (referencing privilege log entries with index values

24 as high as in the 3,000 range); *see also* Marsh Decl., Exs. 7, 8, 9 (showing Mattel's continued requests for more detail on privilege logs and MGA's continuing good-

25 faith efforts to refine the logs consistent with its discovery obligations and the privilege-logging agreement between the parties).

26   [104] Marsh Decl., Ex. 24 at: 13:4-6, 20-22.
  [105] Marsh Decl., Ex. 24 at 12:10, 19-21.

27   [106] Marsh Decl., Ex. 24 at 14:15-16.
  [107] Marsh Decl., Ex. 24 at 19:2-16.

28

1   The Court should not permit Mattel to benefit from the double-standard it

2   attempts to create regarding discovery burdens, and should order Mattel to provide a

3   document-by-document privilege log that includes all documents created before this

4   action was filed.

**D.   The Court Should Compel Mattel's Compliance with The Court's March 10, 2008 Order**

7   Mattel admits that it has failed to comply with the Court's March 10, 2008

8   Order.  Presumably, the court-ordered privilege log will reflect many new NHB

9   documents, except that Mattel has now taken the position that it does not have to log

10  documents created after November 24, 2003.[108]  Mattel's position is not only contrary

11  to the parties' original agreement, it is also contrary to the Court's very explicit

12  March 10, 2008 Order, which ordered that Mattel log all responsive MGA

13  documents, including those using the codename "NHB" instead of MGA, being

14  withheld on a claim of privilege.[109]  Indeed, Mattel represented that its latest

15  privilege log was "pursuant to Judge Infante's Order of March 10, 2008."[110]  But in

16  reality, Mattel produced a privilege log where none of the NHB documents dated

17  after November 24, 2003 appear.  Mattel's failure to log any NHB documents after

18  November 24, 2003 shows that Mattel has failed to comply with the Court's

19  March 10, 2003 Order.[111]

20  The Court should order Mattel to comply with the its March 10, 2008 Order,

21  and to produce forthwith a complete privilege log, including all documents for which

22

[108] Mattel argues, at p. 9 of its Brief, that documents created after November 24, 2003 somehow have no relevance to MGA's or Bryant's case.  Although Defendants strongly disagree with this argument, it is irrelevant in the face of the Court's order and the parties' agreement.
[109] Marsh Decl., Ex. 18 at 5:7-9 (""[a]ll responsive documents being withheld on the basis of a claim of privilege must be identified on a privilege log.").
[110] Marsh Decl., Ex. 15.
[111] Mattel's disregard for the March 10, 2008 Order is further evidenced by the fact that, despite being ordered to produce its privilege log no later than March 14, 2008, Mattel did not produce it until March 20, 2008.  *Compare* Marsh Decl., Ex. 18 at 5:7-9 *with* Ex. 15.

1  Mattel claims privilege up to the April 27, 2004 filing date.

2      **E.    The Court Should Reject Mattel's Proposal That MGA and Carter**
       **Bryant be Ordered to Log Documents Created After this Action**
3      **Commenced**

4          The Court should reject Mattel's argument that MGA and Carter Bryant should

5  be ordered to log documents created after this action was filed.  First, to do so would

6  go directly against the express agreement of the parties to omit those documents

7  from the privilege logs in this case.  Contrary to Mattel's assertion, requiring Mattel

8  to produce a privilege log for all documents created prior to April 27, 2004 is not an

9  "expansion" of Mattel's privilege-logging obligations,[112] but is simply requiring

10  Mattel to comply with its discovery duties and its prior agreement with the parties in

11  this case.  Second, Mattel's demand is patently retaliatory, given that it seeks to

12  punish MGA and Bryant for enforcing that agreement.  To reward Mattel's

13  retaliatory actions would be completely inappropriate.  Finally, if one were to accept

14  Mattel's alternative proposal, using Mattel's own logic, Mattel should be required to

15  log privileged documents relating to MGA, Isaac Larian, and the other MGA

16  Defendants up until January 12, 2007, when Mattel filed its first claims against those

17  parties.[113]

18          This litigation commenced with Mattel's filing on April 27, 2008.  The

19  inception of litigation customarily serves as the cutoff date for logging items on a

20  privilege log, not the series of dates Mattel proposes.  Accordingly, the Court should

21  reject Mattel's belated proposal.

22  **IV.    CONCLUSION**

23          For the foregoing reasons, the Discovery Master should deny Mattel's Motion

24

25

26  ────────────────
[112] Motion for Protective Order at 11:1-2.
27  [113] *See* Mattel, Inc.'s Amended Answer and Counterclaims filed on January 12,
2007 in Case No. 05-2727.
28

1  for Protective Order, and should order Mattel to produce a privilege log in

2  accordance with the Court's March 10, 2008 Order.

3  DATED:  April 22, 2008

                SKADDEN, ARPS, SLATE, MEAGHER &
4                  FLOM, LLP

5                By: _Raoul Kennedy (ADO)_
6                     Raoul D. Kennedy
                 Attorneys for Cross-Defendants
7                  MGA Entertainment, Inc., MGA
                Entertainment (HK) Limited,
8                MGAE De Mexico, S.R.L. De C.V.,
                 and ISAAC LARIAN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28