# Exhibit 1

1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3        EASTERN DIVISION

4        - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6        - - -                 CERTIFIED COPY

7   CARTER BRYANT, ET. AL.,          )

8                   PLAINTIFFS,     )
                                     )
9        VS.                         )    NO. ED CV 04-09049
                                     )    (LEAD LOW NUMBER)
10  MATTEL, INC., ET. AL.,           )
                                     )
11                  DEFENDANTS.      )    HEARING
                                     )
12  AND CONSOLIDATED ACTIONS,        )
                                     )

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16        RIVERSIDE, CALIFORNIA

17        MONDAY, APRIL 7TH, 2008

18        11:34 A.M.

19

20

21

22

23        THERESA A. LANZA, RPR, CSR
          FEDERAL OFFICIAL COURT REPORTER
24        3470 12TH STREET, RM. 134
          RIVERSIDE, CALIFORNIA  92501
25        951-274-0844
          WWW.THERESALANZA.COM            Exhibit 1,
                                          P. 5

```
 1  APPEARANCES:

 2

 3  ON BEHALF OF CARTER BRYANT:
                          KEKER & VAN NEST
                          BY:  CHRISTA ANDERSON
 4                        710 SANSOME STREET
                          SAN FRANCISCO, CALIFORNIA  94111-1704
 5                        415-391-5400

 6

 7  ON BEHALF OF MATTEL:

 8                        QUINN EMANUEL
                          BY:  JOHN QUINN
 9                        BY:  MICHAEL T. ZELLER
                          865 S. FIGUEROA STREET,
10                        10TH FLOOR
                          LOS ANGELES, CALIFORNIA  90017
11                        213-624-7707

12

13  ON BEHALF OF MGA ENTERTAINMENT AND ISAAC LARIAN:

14                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                          BY:  THOMAS J. NOLAN
15                        BY:  CARL ALAN ROTH
                          BY:  KENNETH PLEVAN
16                        300 SOUTH GRAND AVENUE
                          LOS ANGELES, CALIFORNIA  90071-3144
17                        213-687-5000

18

19

20

21

22

23

24

25
```

**Exhibit** _1_ ,

**P.** _6_

1           YOUR HONOR, THERE'S A SENTENCE OR TWO, BUT I THINK IT

2    HAS SOME RELEVANCE HERE, IN THE <u>SHADOW TRAFFIC</u> DECISION ABOUT

3    THOSE TYPES OF DENIALS, OR 'I DON'T RECALL,' ARE 'PREGNANT WITH

4    AN ADMISSION, ARE PREGNANT WITH AN ADMISSION,' THE COURT OF

5    APPEALS SAID, IN THE DISQUALIFICATION CONTEXT.                    02:27

6           I THINK JUST SETTING ASIDE THE IN-CAMERA

7    DECLARATIONS, WE HAVE TO SORT OF BE A LITTLE PRACTICAL AND

8    COMMONSENSICAL HERE.  HERE IS SOMEONE WHO, EVERYONE AGREES BY

9    THEIR OWN ACCOUNT, ONCE A MONTH, FOR A TWO-YEAR PERIOD, AT

10   LEAST, CONSULTED WITH MATTEL'S LAWYERS.  SHE ADMITS IN HER       02:28

11   REPORT THAT THEY BROUGHT HER THE MGA COMPLAINT.  SHE ADMITS

12   THAT AT PAGE 3 OF HER REPORT, THAT SHE WAS SHOWN IT.

13          DOES IT SEEM PLAUSIBLE THAT AN IN-HOUSE LAWYER AND A

14   PARTNER IN AN OUTSIDE FIRM WHO HAD USED THIS PERSON TO CONSULT

15   ON LEGAL MATTERS MET WITH HER AND SHOWED HER THE COMPLAINT       02:28

16   MERELY TO COMMENT ON THE FLOWERY LANGUAGE?

17          YOUR HONOR, I THINK THE ANSWER SPEAKS FOR ITSELF.

18          THERE REALLY CANNOT BE ANY QUESTION THAT THIS WOMAN

19   WAS INTIMATELY FAMILIAR WITH IMPORTANT CONFIDENTIAL AND

20   PRIVILEGED INFORMATION.                                          02:28

21          NOW, THE ISSUES THAT MR. NOLAN RAISES SUGGEST THAT

22   MAYBE THERE'S SOME REASON TO DOUBT THAT.  AND ONE THING HE

23   POINTS TO IS, WHY AREN'T THESE COMMUNICATIONS WITH HER ON A

24   PRIVILEGE LOG?

25          THE ANSWER TO THAT IS, SHE SAYS IN HER REPORT THAT        02:29

APRIL 7TH, 2008          Exhibit  1  ,          BRYANT V. MATTEL
                         P.  7

1  SHE BEGAN DOING THIS WORK FOR THE LAW DEPARTMENT EVERY MONTH IN

2  MID 2004.  THAT'S AT PAGE 2.  THAT'S AFTER THE LAWSUIT IS

3  FILED.

4         THE PARTIES IN THIS CASE HAVE AN AGREEMENT THAT

5  COMMUNICATIONS AFTER THE LAWSUIT WAS FILED DO NOT HAVE TO BE            02:29

6  LOGGED.  THAT'S THE ANSWER TO THAT.

7         THERE WAS ONE OTHER COMMUNICATION THAT WAS FROM 2000;

8  AND AS MR. NOLAN POINTS OUT, IT WAS RECENTLY ADDED TO A

9  PRIVILEGE LOG.  WE CONTESTED THAT.  WE DIDN'T THINK THAT WAS

10 WITHIN THE SCOPE OF A REQUEST, WHATEVER WAS AT ISSUE THERE.  WE        02:29

11 LOST ON THAT.  WE WERE ORDERED TO PROVIDE A SUPPLEMENTAL

12 PRIVILEGE LOG, AND THAT'S WHY THAT ONE IS THERE.  THAT'S FROM

13 2000; THAT'S FROM OUTSIDE THE PERIOD AFTER THE LAWSUIT HAS BEEN

14 FILED.

15        MR. NOLAN RAISES A QUESTION ABOUT, 'OKAY, IF SHE WAS           02:30

16 SUCH AN INTEGRAL PART OF THE LEGAL TEAM' -- BY THE WAY, I

17 SUBMIT, YOUR HONOR, THAT'S NOT THE TEST, WHETHER SHE WAS A

18 LEGAL PART OF THE TEAM.

19        **THE COURT:**  I UNDERSTAND.

20        **MR. QUINN:**  BUT THE SUGGESTION WAS, IF SHE WAS SO          02:30

21 IMPORTANT, WHY WASN'T SOMETHING MEMORIALIZED IN OUR SEPARATION

22 AGREEMENT THAT SHE WOULD COOPERATE AND MAKE HERSELF AVAILABLE

23 TO RESPOND TO CLAIMS?

24        YOUR HONOR, THAT'S AT PAGE 7 OF THE SEPARATION

25 AGREEMENT.  THAT IS CLEARLY THERE.  SHE WAS LEGALLY OBLIGATED          02:30

APRIL 7TH, 2008        Exhibit  /  ,        BRYANT V. MATTEL
                       P.  8

1  TO DO THAT.  AND THAT'S PART OF THAT SAME PARAGRAPH, WHERE SHE

2  UNDERTOOK, IN PERPETUITY, TO GIVE NOTICE IF AN ADVERSE PARTY

3  CONTACTED HER.

4          THE COURT:  ADDRESS MR. NOLAN'S COMMENTS -- THE THIRD

5  WAS THAT -- IN JANUARY, YOU'RE NOTIFIED THAT SHE'S A WITNESS.        02:30

6          MR. QUINN:  YES; IT'S AN ANSWER TO AN INTERROGATORY.

7          THE COURT:  AND THERE'S AN ARGUMENT THAT CERTAINLY

8  RED FLAGS SHOULD HAVE GONE UP ON ONE SIDE.  BUT SHOULDN'T THAT

9  HAVE GOTTEN YOUR ATTENTION?

10          MR. QUINN:  THERE'S AN ANSWER TO INTERROGATORY        02:31

11  LISTING A LOT OF PERSONS WITH KNOWLEDGE.  THAT INCLUDED

12  BOB NORMILE, THE GENERAL COUNSEL, THEY INCLUDED IN THAT LIST;

13  JUST LOTS AND LOTS OF FOLKS; A LOT OF PEOPLE WHO WE WOULDN'T

14  HAVE ANY REASON TO THINK THAT THEY HAD RETAINED AND WERE PAYING

15  AS A PAID EXPERT.        02:31

16          AND I SUBMIT THAT MAKES A DIFFERENCE, YOUR HONOR,

17  WHETHER SOMEBODY IS RETAINED AND THEN HAS AN INCENTIVE TO TELL

18  EVERYTHING THAT YOU KNOW.

19          WE JUST HAVE A LIST IN THE ANSWER TO INTERROGATORY,

20  AND HER NAME IS AMONG MANY OTHERS.  AND YOU KNOW WHAT?        02:31

21  FRANKLY, SHE IS A PERCIPIENT WITNESS.  THAT WOULDN'T TIP US OFF

22  THAT THEY'RE ACTUALLY CONSULTING HER AND PAYING HER TO GIVE

23  LEGAL OPINIONS AND TO DO ANALYSES ABOUT INFRINGEMENT.  SHE IS A

24  PERCIPIENT WITNESS.  THERE'S NOTHING THERE THAT WOULD HAVE

25  TIPPED US OFF.        02:31

1  GET THROUGH THIS THIS AFTERNOON.  I WANTED TO MAKE SURE

2  EVERYONE HAD AN OPPORTUNITY TO ADDRESS THE COURT.

3          I WILL GET AN ORDER OUT ON THIS AS SOON AS POSSIBLE.

4  I'LL ALSO TAKE UP THAT DISCOVERY MATTER WITH THOSE DEPOSITIONS

5  WHICH SEEM TO BE GOING ON AND ON.  I'VE SEEN THOSE NAMES                03:11

6  BEFORE.  BUT I'LL TAKE A CLOSE LOOK AT THAT, AND WE'LL TRY TO

7  GET AN ORDER OUT.

8          **THE CLERK:**  COURT IS IN RECESS.

9

10

11

12

13

14

15

16                           CERTIFICATE

17

18  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
19  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
    ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
20  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.

21

22  _____              _4-16-08_
    THERESA A. LANZA, CSR, RPR                  DATE
23  FEDERAL OFFICIAL COURT REPORTER

24

25

APRIL 7TH, 2008          **Exhibit _1_,**          BRYANT V. MATTEL
                         **P. _10_**

# Exhibit 2

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., A DELAWARE )
CORPORATION, )
 )
        PLAINTIFF, )
 )
    VS. ) NO. CV 04-9059 NM(RNBX)
 )
CARTER BRYANT, AN )
INDIVIDUAL; AND DOES 1 )
THROUGH 10, INCLUSIVE, )
 )
    DEFENDANTS. )
 )
 )
AND RELATED COUNTER-CLAIM.)
 )
_____

VOLUME III

TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

MONDAY, MAY 2, 2005

REPORTED BY:

KAREN E. KAY
C.S.R. NO. 3862, R.M.R., C.R.R.

JOB NO.
41936LMF

LUDWIG KLEIN
REPORTERS & VIDEO, INC
10868 KLING STREET
TOLUCA LAKE, CALIFORNIA 91602
800.540.0681    FAX 818.508.6326
e-mail: lois@ludwigklein.com

Exhibit 2
P. 10

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3
     MATTEL, INC., A DELAWARE    )
4    CORPORATION,               )
                                )
5           PLAINTIFF,          )
                                )
6        VS.                    ) NO. CV 04-9059 NM(RNBX)
                                )
7    CARTER BRYANT, AN          )
     INDIVIDUAL; AND DOES 1     )
8    THROUGH 10, INCLUSIVE,     )
                                )
9           DEFENDANTS.         )
                                )
10                              )
     CARTER BRYANT, ON BEHALF   )
11   OF HIMSELF, ALL PRESENT    )
     AND FORMER EMPLOYEES OF    )
12   MATTEL, INC., AND THE      )
     GENERAL PUBLIC,            )
13                              )
            COUNTER-CLAIMANT,   )
14                              )
        VS.                     )
15                              )
     MATTEL, INC., A DELAWARE   )
16   CORPORATION,               )
                                )
17          COUNTER-DEFENDANT.) )
     _____)
18

19          TRANSCRIPT OF PROCEEDINGS, VOLUME III, TAKEN ON

20   BEHALF OF DEFENDANTS AT 2049 CENTURY PARK EAST,

21   LOS ANGELES, CALIFORNIA, COMMENCING AT 9:46

22   A.M. ON MONDAY, MAY 2, 2005, BEFORE KAREN E.

23   KAY, C.S.R. NO. 3862, R.M.R., C.R.R., A

24   CERTIFIED SHORTHAND REPORTER IN AND FOR THE

25   COUNTY OF LOS ANGELES, STATE OF CALIFORNIA.

                                                    415

                    VOLUME III

                              Exhibit  2  ,
                              P.   11

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   APPEARANCES:

2        FOR THE PLAINTIFF AND COUNTER-DEFENDANT:

3             QUINN EMANUEL
              BY:  MICHAEL T. ZELLER
4                  ATTORNEY AT LAW
              865 SOUTH FIGUEROA STREET
5             TENTH FLOOR
              LOS ANGELES, CALIFORNIA 90017
6             213.624.7707

7        FOR THE DEFENDANT AND COUNTER-CLAIMANT CARTER BRYANT:

8             LITTLER MENDELSON, P.C.
              BY:  DOUGLAS A. WICKHAM
9                  ATTORNEY AT LAW
              2049 CENTURY PARK EAST
10            FIFTH FLOOR
              LOS ANGELES, CALIFORNIA 90067.3107
11            310.553.0308

12       FOR THE DEFENDANT M.G.A. ENTERTAINMENT, INC.:

13            O'MELVENY & MYERS, L.L.P.
              BY:  PAULA E. AMBROSINI
14                 ATTORNEY AT LAW
                       AND
15                 MATTHEW EASTUS
                   ATTORNEY AT LAW
16            400 SOUTH HOPE STREET
              FIFTEENTH FLOOR
17            LOS ANGELES, CALIFORNIA 90071.2899
              213.430.6000

18

19

20

21

22

23

24

25

Exhibit 2
P. 12

416

VOLUME III

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1       LOS ANGELES, CALIFORNIA; MONDAY, MAY 2, 2005

2                   9:46 A.M.

3

4           MR. WICKHAM:   THE PARTIES ARE RESUMING THE 37-1

5   CONFERENCE THAT HAD BEEN COMMENCED ON MARCH 14 AND 15

6   PURSUANT TO THE LETTER THAT WE HAD SENT THAT WAS DATED

7   AS OF MARCH 4, 2005.  THE FIRST THING OR I SHOULD SAY

8   THE NEXT IN ORDER I HAVE ARE THE OUTSTANDING DISPUTES

9   CONCERNING BRYANT'S DOCUMENT REQUESTS, WHICH BEGINS ON

10  PAGE 20 OF OUR LETTER.  I HAVE EXTRA COPIES OF THE

11  DOCUMENT REQUESTS.  THIS WAS THE ONE IN STATE COURT,

12  WHICH IS IDENTICAL TO THE ONE IN FEDERAL COURT, IF YOU

13  NEED THAT REFERENCE.

14          MR. ZELLER:   THAT WOULD BE HELPFUL.  THANK YOU.

15  SO WE'RE WORKING OFF AT LEAST THE SAME SET OF THINGS.

16  I'M SORRY.  THIS IS THE STATE COURT ONE?

17          MR. WICKHAM:   CORRECT.  WHICH IS IDENTICAL TO

18  THE ONE THAT WE SERVED IN FEDERAL COURT.

19          MS. AMBROSINI:   ALMOST.  NOT COMPLETELY.

20          MR. WICKHAM:   OKAY.  ITEMS 1 THROUGH 5 FOR THE

21  MOST PART I DON'T TAKE ISSUE WITH MATTEL'S NONPRODUCTION

22  OF DOCUMENTS BECAUSE THERE ARE POSITIVE ASSERTIONS OF

23  PRODUCTION OF DOCUMENTS IN RESPONSE TO THE PARTICULAR

24  REQUESTS BUT DO RAISE ISSUES CONCERNING CERTAIN

25  CATEGORIES OF OBJECTIONS THAT ARE ASSERTED IN THERE,

                                                        417

            VOLUME III        Exhibit 2,
                              P. 13

1   WHICH, BY VIRTUE OF THE INCLUSION OF THOSE OBJECTIONS,

2   AT LEAST CALLS INTO QUESTION WHETHER OR NOT ALL

3   DOCUMENTS, YOU KNOW, HAVE BEEN PRODUCED, AND/OR TO THE

4   EXTENT THERE'S PRIVILEGED DOCUMENTS, THAT THEY HAVE BEEN

5   LOGGED.  SO I GUESS WHAT WE'RE SEEKING IS CLARIFICATION

6   ON THE RESPONSES TO 1 THROUGH 5 TO OBTAIN SOME SORT OF A

7   POSITIVE ASSERTION THAT THERE ARE NO DOCUMENTS,

8   PRIVILEGED, CONFIDENTIAL, OR OTHERWISE, OTHER THAN WHAT

9   HAS BEEN PRODUCED TO DATE, OR IF THERE ARE PRIVILEGED

10  DOCUMENTS, TO HAVE THOSE BE PUT ON THE PRIVILEGE LOG.

11  AND AS TO CONFIDENTIAL DOCUMENTS, THOSE SHOULD BE

12  PRODUCED SUBJECT TO THE TERMS OF THE PROTECTIVE ORDER IN

13  THE CASE.

14       MR. ZELLER:  DO YOU HAPPEN TO HAVE OUR

15  RESPONSES TO THIS PARTICULAR SET?

16       MS. AMBROSINI:  I HAVE ONE COPY.  DO YOU WANT

17  TO HAVE A COPY MADE FOR HIM?

18       MR. WICKHAM:  SURE.

19       MR. ZELLER:  SO WE'LL BE WORKING FROM THE SAME

20  SET BECAUSE THE BINDER THAT I BROUGHT DIDN'T HAVE THOSE

21  RESPONSES IN THERE.  ONE THING JUST OFFHAND I CAN

22  CERTAINLY ADDRESS IS WITH RESPECT TO THE CONFIDENTIALITY

23  ASPECT.  I MEAN THE OBJECTION.  I DON'T KNOW HOW EXACTLY

24  IT WAS FRAMED AT THAT TIME.  IF THE PROTECTIVE ORDER HAD

25  ALREADY BEEN ENTERED, THEN IT PRESUMABLY SAID WE WOULD

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    PRODUCE IN RELIANCE UPON.  I MEAN THERE'S NOTHING THAT'S

2    BEING WITHHELD, YOU KNOW, WITH RESPECT TO THE CATEGORIES

3    AND, YOU KNOW, TO THE EXTENT WE SAID WE WERE GOING TO

4    PRODUCE SOMETHING THAT'S BEING WITHHELD BECAUSE IT'S

5    CONFIDENTIAL.  BUT, OF COURSE, WE'RE PRODUCING IT

6    SUBJECT TO AND IN RELIANCE UPON THE PROTECTIVE ORDER.

7    AND IF FOR WHATEVER REASON WHEN WE DID THE RESPONSES,

8    THE PROTECTIVE ORDER HADN'T BEEN ENTERED YET, YOU KNOW,

9    I'M GLAD AND HAPPY TO CLARIFY.

10             MR. WICKHAM:  OKAY.  WHEN HE GETS DOWN, WE'LL

11   GET COPIES RUN OF THAT.

12             WHAT ABOUT THE PRIVILEGE ISSUE?

13             MR. ZELLER:  WELL, I THINK THE SAME COMMENTS

14   APPLY TO THAT.  CERTAINLY TO THE EXTENT THERE'S A

15   PRIVILEGED DOCUMENT THAT WOULD OTHERWISE BE RESPONSIVE,

16   YOU KNOW, TO THE REQUESTS, AGAIN, SUBJECT TO, YOU KNOW,

17   THE STATEMENTS THAT WE'VE MADE AND, YOU KNOW, TO THE

18   EXTENT WE'RE SAYING WE'RE PRODUCING SOMETHING, IT WOULD

19   CERTAINLY BE REFLECTED IN THE PRIVILEGE LOG.  THAT'S AT

20   LEAST THE INTENT.  I MEAN I GUESS ONE THING WE NEED TO

21   PROBABLY DISCUSS IS A MORE GENERAL PROPOSITION ON THAT

22   PARTICULAR ISSUE OF WHETHER WE'RE GOING TO PUT ANY

23   PARTICULAR TIME PARAMETERS ON, YOU KNOW, THE PRIVILEGE

24   LOG.

25             MR. WICKHAM:  THE TIMING OF PUTTING THINGS ON

419

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   THE PRIVILEGE LOG?

2        MR. ZELLER:  NO.  I'M SORRY.  WHETHER OR NOT

3   THERE'S SOME CUTOFF DATE FOR THINGS THAT WOULD BE ON THE

4   PRIVILEGE LOG.  I MEAN CERTAINLY JUST AS A GENERAL

5   CUSTOMARY MATTER, MOST PEOPLE, OF COURSE, DON'T PUT ON

6   THE PRIVILEGE LOG, YOU KNOW, THINGS, YOU KNOW, AFTER THE

7   LAWSUIT IS COMMENCED.  YOU KNOW, I DON'T KNOW THAT WE'VE

8   EVER HAD AN EXPRESS OR EXPLICIT DISCUSSION ABOUT WHAT

9   UNDERSTANDING, IF ANY, THE PARTIES HAVE BEEN PROCEEDING

10  ON IN TERMS OF THAT.

11       MR. WICKHAM:  CERTAINLY MY NORMAL PRACTICE IS

12  THAT FROM THE DATE THAT THE ACTION IS FILED, I WOULD NOT

13  BE PUTTING THINGS ON THE PRIVILEGE LOG BECAUSE TO DO

14  OTHERWISE WOULD REQUIRE ME TO LIST MY ENTIRE LITIGATION

15  FILE.

16       MR. ZELLER:  RIGHT.

17       MR. WICKHAM:  SO AT LEAST IN TERMS OF MY

18  OPERATING PRESUMPTION, THAT'S WHERE I'VE BEEN GOING ON

19  THIS.

20       MR. ZELLER:  MY UNDERSTANDING IS THAT WE'VE

21  BEEN DOING THE SAME ON THAT, JUST SO WE'RE CLEAR ON

22  THAT.

23       MR. WICKHAM:  I MEAN FOR OUR PART, THE

24  SENSITIVITY TO THE ISSUE IS ONE THAT RELATES TO THE

25  OBJECTIONS THAT WE WERE EXPERIENCING DURING ALLAN KAY'S

420

VOLUME III       Exhibit 2 ,
                 P. 16

1                    REPORTER'S CERTIFICATE

2

3

4           I, KAREN E. KAY, CSR. NO. 3862, A CERTIFIED

5    SHORTHAND REPORTER IN AND FOR THE STATE OF CALIFORNIA,

6    DO HEREBY CERTIFY:

7           THAT SAID PROCEEDINGS WERE TAKEN BY ME IN

8    SHORTHAND AT THE TIME AND PLACE HEREIN NAMED AND WERE

9    THEREAFTER TRANSCRIBED INTO TYPEWRITING UNDER MY

10   DIRECTION, SAID TRANSCRIPT BEING A TRUE AND CORRECT

11   TRANSCRIPTION OF MY SHORTHAND NOTES.

12          I FURTHER CERTIFY THAT I HAVE NO INTEREST IN

13   THE OUTCOME OF THIS ACTION.

14

15

16      MAY 10, 2005    _____
                        KAREN E. KAY
17                      CSR NO. 3862

18

19

20

21

22

23

24

25

542

Exhibit 2 ,
P. 17

# Exhibit 3

ORIGINAL

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3

4    HONORABLE ROBERT N. BLOCK, MAGISTRATE JUDGE PRESIDING

5

6    MATTEL, INC.,                    )
                                      )
7                   PLAINTIFF,        )
                                      )   CASE NO. 2:04-CV-090590-SGL-RNB
8         VS.                         )
                                      )
9    CARTER BRYANT, ET AL.,           )
                                      )
10                  DEFENDANTS.       )
     _____ )

11

12

13                   MEET AND CONFER

14              SANTA ANA, CALIFORNIA

15                  JUNE 20, 2006

16

17

18   COURT DEPUTY/RECORDER:      TRINA DEBOSE

19   TRANSCRIBED BY:             HUNTINGTON COURT REPORTERS
                                 & TRANSCRIPTION INC.
20                               1450 W. COLORADO BOULEVARD
                                 SUITE 100
21                               PASADENA, CALIFORNIA 91105
                                 (626) 792-7250

22

23

24

25   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
     TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

Exhibit _3_ ,
P. _18_

```
1    APPEARANCES:

2    ON BEHALF OF THE PLAINTIFF:

3            QUINN EMANUEL URQUHART OLIVER & HEDGES
             BY:  JOHN QUINN, ATTORNEY AT LAW
4            BY:  MIKE ZELLER, ATTORNEY AT LAW
             865 S. FIGUEROA STREET, 10TH FLOOR
5            LOS ANGELES, CALIFORNIA 90017

6

7    ON BEHALF OF THE DEFENDANT:

8            LITTLER MENDELSON
             BY:  KEITH JACOBY, ATTORNEY AT LAW
9            BY:  DOUGLAS A. WICKHAM, ATTORNEY AT LAW
             2049 CENTURY PARK EAST, 5TH FLOOR
10           LOS ANGELES, CALIFORNIA 90067

11

12   ON BEHALF OF INTERVENOR MGA ENTERTAINMENT:

13           O'MELVENY & MYERS
             BY:  DALE CENDALI, ATTORNEY AT LAW
14           BY:  PAULA AMBROSINI, ATTORNEY AT LAW
             400 S. HOPE STREET
15           LOS ANGELES, CALIFORNIA 90071

16

17

18

19

20

21

22

23

24

25
```

HUNTINGTON COURT REPORTERS & TRANSCRIPTION, INC.
Court Reporters (626) 792-6777  Transcription (626)792-7250

2

Exhibit _3_ ,
P. _19_

1   ONCE THINGS ARE LOGGED THE CONCEPT IS THAT WE WOULD BE

2   ABLE TO TEST WHETHER THE WORK PRODUCT PRIVILEGE OR THE

3   ATTORNEY-CLIENT PRIVILEGE EXISTS OR NOT, AND OTHERWISE

4   TEST THE PRIVILEGE.   THAT'S NOT THE CURRENT ISSUE.   THE

5   CURRENT ISSUE IS TO BE ABLE TO ASK QUESTIONS TO BE ABLE

6   TO ESTABLISH WHETHER IN FACT THERE -- YOU KNOW, THE WHO,

7   WHAT, WHERE AND WHEN OF THE INVESTIGATION.   IN OTHER

8   WORDS, YOU'RE ALLOWED TO INQUIRE AS TO WHO SPOKE TO WHO

9   ON WHAT DATE, WHAT WAS THE SUBJECT MATTER, THAT SORT OF

10  THING, IN ORDER TO FIND OUT WHETHER IN FACT THERE REALLY

11  IS A CLAIM OF WORK PRODUCT OF PRIVILEGE.

12          THE COURT:   SO HOW DOES WHAT YOU JUST SAID --

13  IT SOUNDS LIKE IT COVERS THE DOCUMENTS, BUT HOW DOES IT

14  GO TO THE ISSUE OF ASKING DEPOSITION QUESTIONS ABOUT THE

15  WHO, WHAT, WHY OR WHEN?

16          MS. CENDALI:   WE ARE IN -- WE HAVE A

17  DISAGREEMENT CURRENTLY AS TO WE BELIEVE IN GENERAL FOR

18  KAYE AND DRISKEL THAT WE SHOULD BE ALLOWED TO HAVE THOSE

19  WITNESSES BACK TO QUIZ THEM IN LIGHT OF THE VARIOUS

20  THINGS THAT WERE -- POSITIONS THAT WERE TAKEN IN THE

21  DEPOSITION, AND THE OTHER SIDE DISAGREES WITH THAT

22  POSITION CURRENTLY, ALTHOUGH WE ARE STILL TALKING ABOUT

23  IT.

24          MR. QUINN:   YOUR HONOR, I -- I -- I RECOGNIZE

25  THAT WE'VE COVERED A LOT OF TERRITORY THIS MORNING AND

1    IT'S HARD TO WRITE DOWN EVERYTHING THAT WAS SAID, BUT

2    I -- I THINK WE'VE STRAYED FROM RECITING OUR AGREEMENT

3    INTO SOME ADVOCACY NOW.  IT IS OUR VIEW THAT WE -- WE DO

4    NOT DISPUTE THE PROPOSITION THAT ANY DOCUMENTS CLAIMED

5    TO BE PRIVILEGED OR SUBJECT TO THE WORK PRODUCT DOCUMENT

6    MUST APPEAR ON A PRIVILEGE LOG.  WE'VE ADVISED COUNSEL

7    THAT WE BELIEVE SUCH DOCUMENTS ARE ON THE PRIVILEGE LOG.

8    WE'RE GOING TO DOUBLE CHECK AND RECONFIRM THAT TO THEM

9    PROMPTLY.  WE CERTAINLY HAVE NO DISAGREEMENT WITH THAT

10   PRINCIPLE.  WITH RESPECT TO THE --

11          THE COURT:  SO -- SO SHOULD I -- I -- I WROTE

12   DOWN THAT YOU'LL -- WHICH IS SORT OF VAGUE -- DISCUSS

13   WHETHER YOU WILL AGREE TO LOG DOCUMENTS RELATING TO THE

14   INVESTIGATION.  I HEAR YOU SAYING YOU WILL CONFIRM THAT

15   THE DOCUMENTS RELATING TO THE INVESTIGATION HAVE BEEN

16   LISTED --

17          MR. QUINN:  YES, YOUR HONOR, AND --

18          THE COURT:  -- WHICH IS BETTER.

19          MS. CENDALI:  RIGHT.  AND JUST TO BE CLEAR,

20   THAT WOULD BE BOTH -- OUR REQUEST WOULD BE BOTH THE

21   INTERNAL MATTEL DOCUMENTS AND THE DOCUMENTS OF OUTSIDE

22   COUNSEL ON THE SUBJECT OF THE INVESTIGATION, AND THAT

23   THOSE DOCUMENTS BE IDENTIFIED ON THE PRIVILEGE LOG

24   'CAUSE RIGHT NOW WE'RE UNABLE TO TELL WHICH ONES THOSE

25   ARE.

Exhibit  3 ,
P. 21

1          THE COURT:  WELL, YOUR PRIVILEGE LOG HAS TO

2    IDENTIFY THE AUTHOR, THE RECIPIENT, THE CC'S, THE NATURE

3    OF THE DOCUMENT AND THE -- AND WHAT PRIVILEGES ARE BEING

4    CLAIMED; RIGHT?

5          MR. QUINN:  YES, YOUR HONOR, AND --

6          THE COURT:  SO THAT -- THAT WOULD COVER

7    EVERYTHING YOU JUST SAID YOU NEED TO KNOW; RIGHT?

8          MR. QUINN:  THE -- THE ONLY ISSUE, YOUR

9    HONOR --

10         THE COURT:  YES?

11         MR. QUINN:  -- IS WHETHER IT WOULD APPLY.  WE

12   AGREE WITH EVERYTHING THAT COUNSEL JUST SAID AND THAT

13   THE COURT JUST SAID.  THE ONLY ISSUE IS WHETHER IT WOULD

14   APPLY TO DOCUMENTS IN OUR FILES, TRIAL COUNSEL'S FILES,

15   AND THAT IS SOMETHING WE'VE SAID WE'D LIKE TO TAKE A

16   LOOK AT.  WE DON'T EVEN KNOW WHETHER THERE ARE ANY

17   DOCUMENTS THAT WOULD BE RESPONSIVE HERE.  WHAT --

18         THE COURT:  WAS THIS INVESTIGATION -- I GUESS,

19   I MEAN, IT'S NO SECRET, THERE WAS SOME SORT OF

20   INVESTIGATION THAT WAS INITIATED BY THE COMPANY; RIGHT?

21         MR. QUINN:  YES, YOUR HONOR.

22         THE COURT:  AND WHEN WAS IT CONDUCTED?

23         MS. CENDALI:  2002, TWO YEARS BEFORE THE

24   LAWSUIT WAS FILED.

25         THE COURT:  OKAY.  AND WHEN WERE YOU GUYS

1    RETAINED?

2         MR. QUINN:  YOUR HONOR, WE DO WORK FOR THIS

3    COMPANY ON AN ONGOING BASIS.  I JUST DON'T KNOW, AND WE

4    HAVE TO LOOK, ABOUT WHETHER WE WERE INVOLVED IN THIS.

5    THERE MAY NO DOCUMENTS.  THIS MAY BE A TEMPEST IN A

6    TEAPOT.  BUT I WOULDN'T WANT TO AGREE IN A VACUUM --

7         THE COURT:  YES.

8         MR. QUINN:  -- THAT ANYTHING IN OUR FILES --

9         THE COURT:  I -- I UNDERSTAND THE ISSUE AND --

10   AND I GUESS THAT MAYBE YOU NEED SOME FURTHER DISCUSSION

11   BETWEEN THE PARTIES.  I MEAN, IN GENERAL WE DON'T -- I

12   MEAN, WHETHER IT'S A MATTER OF PROFESSIONAL COURTESY OR

13   COMBINATION OF REALITY, IN GENERAL LITIGATION LAWYERS

14   DON'T LIST THEIR OWN, YOU KNOW, BECAUSE IT GOES WITHOUT

15   SAYING THAT -- I MEAN, SOMEONE, COMMON SENSE, DOESN'T

16   BECOME PRIVILEGED OR SUBJECT TO WORK PRODUCT JUST BY

17   SENDING IT TO YOU IF IT WASN'T INDEPENDENTLY SUBJECT

18   TO -- YOU KNOW, YOU CAN'T MAKE SOMETHING PRIVILEGED THAT

19   WASN'T PRIVILEGED.

20        MR. QUINN:  AGREED.

21        THE COURT:  BUT ON THE OTHER HAND BOTH -- ALL

22   THE COUNSEL HAVE LOTS OF STUFF IN THEIR FILES THAT

23   THEY'VE GENERATED DURING THE COURSE OF LITIGATION, EVEN

24   COMMUNICATIONS WITH THEIR OWN CLIENTS DURING THE COURSE

25   OF LITIGATION.  AND USUALLY THAT STUFF DOES NOT END UP

1    GETTING LISTED ON ANY PRIVILEGE LOG.

2            MS. CENDALI:  NO ONE'S SUGGESTING THAT

3    POST-LITIGATION DOCUMENTS BE --

4            THE COURT:  RIGHT.

5            MS. CENDALI:  -- BE LOGGED BY EITHER SIDE.

6    THE -- THE -- THE ISSUE HERE IS THAT TO THE EXTENT THAT

7    THEY'RE CLAIMING IN PARTICULAR A WORK PRODUCT

8    ANTICIPATION OF LITIGATION IN 2002, THAT IS VERY

9    RELEVANT TO THEIR STATUTE OF LIMITATIONS DEFENSE, AND WE

10   DON'T THINK IT'S APPROPRIATE THAT THAT BE SHIELDED.

11           THE COURT:  YES.  THAT'S -- THIS -- THAT'S

12   GOING TO BE A TWO-EDGED SWORD.  IF YOU CLAIM -- I -- IS

13   THIS WHAT YOU'RE SAYING:  IF YOU'RE GOING TO ASSERT WORK

14   PRODUCT PRIVILEGE WITH REGARD TO A DOCUMENT IN 2002

15   THERE MAY -- THERE MIGHT BE AN ARGUMENT THAT THAT'S WHEN

16   YOU -- YOUR CLAIM ACCRUED.

17           MR. QUINN:  I -- I UNDERSTAND THE ARGUMENT,

18   YOUR HONOR.

19           THE COURT:  I'M NOT -- IT'S NOT MY ISSUE, I'M

20   JUST --

21           MR. QUINN:  NO.  I -- I UNDERSTAND COUNSEL'S

22   ARGUMENT.  I -- I -- I JUST WANTED TO SAY THAT IN TERMS

23   OF OUR STIPULATION WE'VE TOLD THEM THIS IS -- THAT

24   PARTICULAR ISSUE IS SOMETHING THAT WE WANT TO LOOK AT

25   AND THINK ABOUT --

1    MS. CENDALI:  AND MISTER --

2    MR. QUINN:  -- AND WE WEREN'T PREPARED TO

3  AGREE TODAY.

4    THE COURT:  OKAY.

5    MS. CENDALI:  AND MR. QUINN IS CORRECT IN THAT

6  THEY AGREED TO -- TO LOG THE INTERNAL STUFF CONCLUSIVELY

7  AND THAT THEY AGREED TO THINK ABOUT LOGGING THE

8  (INAUDIBLE) MANUAL OR WHATEVER OTHER OUTSIDE COUNSEL MAY

9  HAVE BEEN INVOLVED IN THE INVESTIGATION STUFF.

10    THE COURT:  OKAY.  AND HOW DO WE GET FROM

11  THERE TO THE -- OR TO THE ASKING, YOU KNOW, WHAT'S THE

12  BRIDGE FROM THE RESOLUTION OR AGREEMENT TO DO THAT, THE

13  LOGGING AND ASKING QUESTIONS?  ARE WE JUST GOING TO --

14  ARE YOU JUST GOING TO DEFER THAT DISCUSSION TO A --

15    MR. QUINN:  WELL, YOUR HONOR, I -- WE -- WE --

16  WE CAN'T AGREE WITH THE STATEMENT THAT WAS MADE THAT

17  THERE WERE INSTRUCTIONS NOT TO ANSWER THAT BLOCKED THEM

18  FROM TESTING THE CLAIM OF PRIVILEGE, THAT IS TO SAY WHO

19  WAS INVOLVED, WHEN WAS IT DONE.  WE'VE ASKED THEM TO

20  SHOW US WHERE IN THE TRANSCRIPT THERE WAS EVER ANY SUCH

21  INSTRUCTION, AND WE WELCOME -- WE WELCOME THEIR

22  IDENTIFYING ANY SUCH OCCASION.  WE -- WE AGREE IN

23  PRINCIPLE, THEY ARE ENTITLED TO FIND OUT, OKAY, WHEN WAS

24  AN INVESTIGATION DONE, WHO DID YOU TALK TO, WHAT WAS

25  INVOLVED, IN TERMS OF THOSE BASIC ELEMENTS OF THE CLAIM

1   OF PRIVILEGE.  BUT WE DO NOT BELIEVE THERE ARE ANY --

2   THAT WE'VE BLOCKED THAT INQUIRY.  SO IT WAS MY HOPE THAT

3   THE DEFENDANTS WOULD TAKE A LOOK AT THE TRANSCRIPT AND

4   COME BACK TO US AND TELL US PARTICULAR OCCASIONS WHERE

5   THEY THOUGHT THAT IMPROPER INSTRUCTIONS HAD BEEN GIVEN

6   OF THAT NATURE.

7           MS. CENDALI:  AND YOUR HONOR, OUR POSITION IS

8   THAT THE MOTION ITSELF SET FORTH IN DETAIL, AS YOUR

9   HONOR HAS ALREADY COMMENTED ON THE MANY DIFFERENT

10  OBJECTIONS THAT WERE NOT IN KEEPING WITH THE FEDERAL

11  RULES OF CIVIL PROCEDURE, AND THAT WAS ALREADY SET FORTH

12  IN THE MOTION, AND OUR POSITION IS -- IS THAT WE'VE

13  ALREADY MADE A RECORD OF HOW THEY WERE --

14          THE COURT:  WELL, YES.  YOU --

15          MS. CENDALI:  -- THEY WERE -- THEY WERE -- WE

16  WERE CURTAILED AND THAT THEIR POSITION APPARENTLY STILL

17  IS, DESPITE YOUR HONOR'S COMMENTS BEFORE THE LUNCH BREAK

18  THAT THERE WAS NOTHING IMPROPER ABOUT THE DEFENSE OF

19  THAT DEPOSITION, IS THEY WERE NOT GOING TO WILLINGLY

20  BRING THE PEOPLE BACK.

21          MR. QUINN:  THAT -- THAT'S NOT NECESSARILY SO,

22  YOUR HONOR.  AND -- AND I WOULD ASK THE COURT -- WE HAVE

23  NOT FILED A BRIEF --

24          THE COURT:  NO.

25          MR. QUINN:  -- ON THIS MOTION BUT --

Exhibit 3 ,
P. 26

## TRANSCRIPTIONIST'S CERTIFICATE

I, Martha L. Nelson, do hereby certify:

That the foregoing audiotaped proceeding was received and transcribed into typewriting under my direction and supervision;

And I hereby certify that the foregoing transcript is a full, true and correct transcript of the audiotaped recording given to me.

I further certify that I am neither counsel for nor related to any party to said action, nor anywise interested in the outcome thereof.

In witness thereof, I have hereunto subscribed my name this    31st   day of        July      , 2007.


_____
MARTHA L. NELSON

# Exhibit 4

O

## O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
CENTURY CITY
HONG KONG
LONDON
NEWPORT BEACH

400 South Hope Street
Los Angeles, California  90071-2899

TELEPHONE  (213) 430-6000
FACSIMILE  (213) 430-6407
www.omm.com

NEW YORK
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TOKYO
WASHINGTON, D.C.

August 14, 2007

OUR FILE NUMBER
527436-4

WRITER'S DIRECT DIAL
(213) 430-7274

WRITER'S E-MAIL ADDRESS
mfeinstein@omm.com

### VIA EMAIL AND U.S. MAIL

John Quinn
Michael Zeller
Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street - 10th Floor
Los Angeles, California 90017

          Re:     *Mattel, Inc. v. Carter Bryant*

Dear John, Michael and Dylan:

        I am enclosing a copy of MGA's supplemental privilege log. This log, with entries numbered 1 through 1132, is intended to identify all documents withheld on grounds of privilege or attorney work product in response to Mattel's First Requests for the Production of Documents to MGA and other document requests for which MGA has provided a rolling production. The log is subject to the parties' agreement on documents relating to IP applications and registrations.[1]  I understand that we sent you earlier today a copy of MGA Hong Kong's privilege log. These logs are being provided within the deadline set by the Court to complete the document productions for both MGA and MGA Hong Kong.

        The log was prepared to afford you sufficient information to evaluate each claim of privilege. If you believe any of the descriptions are inadequate or you believe you are entitled to additional information, please let me know.

        As of the sending of this letter, my understanding is that Mattel is withholding documents on a claim of privilege in response to document requests that are many months or years old, but has not provided a complete log of those documents.  MGA propounded document requests in January and April 2005, November 2006 and March 2007, as well as more recently.  During the

---

[1] In light of the large volume of privileged and protected documents contained in the parties' respective copyright, trademark and patent files, the parties agreed to log the first (earliest) privileged document contained in each folder, with the option for the opposing party to request other privileged materials be logged from a particular file at a later date should it deem such information necessary.

Exhibit  4
P.  28

O'MELVENY & MYERS LLP

J. Quinn, M. Zeller and B. Dylan Proctor, Esqs., August 14, 2007 - Page 2

meet and confer with Dylan on August 3, 2007, my colleagues inquired about the absence of a complete privilege log from Mattel, and received no response. Since then, we have still received no word on when Mattel will furnish a complete log. While we received a supplemental privilege log from Mattel on August 9, that log further evidences the extent of Mattel's delay in logging privileged documents, as the log discloses for the first time documents responsive to MGA's November 2006 document requests. The log also is admittedly incomplete. We do not want a repeat of the experience in which Mattel delayed two and one-half years before producing a privilege log of the company's investigation file.

Until recently, the parties were able to communicate about the provision of privilege logs without seeking a waiver of the privilege to enforce the production of a log. My understanding is that neither during the August 3 meet and confer nor at any time previously did Mattel disclose to MGA that Mattel intended to seek a privilege waiver as a sanction in these circumstances. We were therefore surprised by Mattel's motion seeking a waiver of MGA's privilege objections. The motion was also disappointing, to say the least, given the considerable time and energy spent on our side to produce over 40,000 pages of documents and provide detailed privilege logs in compliance with the Court's order.

But putting the merits of that motion aside, we would like to avoid the need to seek a waiver of the privilege against Mattel on similar grounds. Moreover, as a matter of courtesy and professionalism, both sides and their counsel should be able to cooperate in exchanging privilege logs on a timetable that does not require court intervention let alone requests for a privilege waiver or other extreme penalties.

To avoid any misunderstanding in the future regarding the timetable for furnishing a privilege log, we propose that the parties all agree to provide a log within two weeks after completing the production of documents in response to a document request. We further propose that each party make a good faith effort to provide a privilege log promptly on a rolling basis where the collection and production of documents responsive to a document request occurs over an expanded time period. This would be subject to our existing agreement that, in general, documents that postdate the filing of this lawsuit, on April 27, 2004, do not have to be included on a privilege log.

O'MELVENY & MYERS LLP
J. Quinn, M. Zeller and B. Dylan Proctor, Esqs., August 14, 2007 - Page 3

　　　　In light of the foregoing, we request that Mattel immediately withdraw its motion to compel production of documents withheld as privileged.

Sincerely,

Marc F. Feinstein
of O'MELVENY & MYERS LLP

Enclosure

cc:  D. Cendali

LA2:839261.1

Exhibit 4
P. 30

# Exhibit 5

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

**DATE:**    August 16, 2007

**NUMBER OF PAGES, INCLUDING COVER: 4**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Marc Feinstein, Esq<br>Jim Jenal, Esq.<br>O'Melveny & Meyers, LLP | | (213) 430-6407 |

**FROM:**    B. Dylan Proctor

**RE:**

**MESSAGE:**

| CLIENT # | 7209 | ROUTE/<br>RETURN TO: | Tiffany Garcia | ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | WM | | CONFIRMED?   ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

Exhibit   5  ,
P.   31

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

August 16, 2007

**VIA FACSIMILE AND U.S. MAIL**

Marc Feinstein, Esq.
Jim Jenal, Esq.
O'Melveny & Myers, LLP
400 South Hope Street
Los Angeles, California  90071

Re:    <u>Mattel, Inc. v. Carter Bryant, et al.</u>

Dear Marc and Jim:

I write in response to aspects of Mr. Feinstein's letter of August 14, 2007, and Mr. Jenal's e-mail of August 9, 2007, regarding MGA's refusal to produce a privilege log until forced to do so through motion practice.

In our view, MGA's actions reveal extreme bad faith.  MGA was expressly ordered by the Court to produce its privilege log by May 31, 2007.  It did not do so.  Then, on June 21, 2007 -- three weeks after the log was due -- MGA obtained an extension of the deadline for producing documents.  Assuming that extension also applied to the date for service of the compelled privilege log, MGA's privilege log for all documents except those in Hong Kong was ordered to be served by July 31, 2007.  MGA had many months before then to prepare this log.

Nevertheless, when I met and conferred with Mr. Jenal on August 3, 2007, MGA flatly refused to produce any supplemental log until mid-September 2007 at the earliest.  When Mattel asked MGA to produce even just a portion of the log so that Mattel could commence its review, MGA followed its consistent practice of obstruction and stonewalling, and refused.  We told MGA that its refusal was not acceptable and violated the Court's Orders.  MGA persisted in its stonewalling.  My letter dated August 3, 2007, confirmed these positions of MGA at the meet

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

Exhibit  5,
P.  32

and confer. I received no response to this letter. The only matter that prompted a response was the filing of Mattel's motion. And remarkably, even after Mattel filed its motion, MGA persisted in its assertion (in Mr. Jenal's email) that it was not required to produce a privilege log by July 31, 2007.

It is abundantly clear that MGA has now served a supplemental privilege log only because, upon review of Mattel's motion, it realized the consequences of its ongoing obstructionist practices and violations of the Court's Orders. MGA's decision to produce its log now, only after Mattel forced the issue by filing its motion, does not obviate its willful disregard for the Court's orders.[1]

Indeed, MGA's production of the log now itself reveals the heights of MGA's gamesmanship. Just eleven days before MGA served its log, when the parties met and conferred on this matter on August 3, 2007, MGA stated that it was "not possible" for it to produce the log before mid-September at the earliest because it simply could not accomplish the task in less time. It turns out, that representation was false—MGA actually could produce the log if it wanted to, and did so five days after Mattel filed its motion. The fact that MGA was motivated to prepare the log and assert its privilege claims only when pressed by motion practice in no way obviates its past derelictions. In fact, it shows just how calculated and willful MGA's past failures and refusals to comply were. This has never been a matter of what MGA could do; it was a matter of what it was willing to do. Mattel does not intend to withdraw its motion to compel as MGA requests.

We also disagree with MGA's assertion that Mattel did not adequately meet and confer before it filed. At the August 3, 2007 meet and confer, and by prior letter, Mattel raised the issue of MGA's failure to produce an updated or supplemental privilege log. MGA confirmed that it was silently withholding thousands of documents without telling Mattel it was doing so. Mattel told MGA it viewed that as a violation of the Court's Order; MGA obstructed. Mattel asked MGA to at least give Mattel a portion of its log; MGA stonewalled. There is nothing more that Mattel could have done to obtain compliance, other than what it did do: file its motion. As has historically been true with MGA in this case, the meet and confer process was exhausted but did not produce results—the only thing that induced MGA to take notice was the filing of Mattel's motion.

Finally, MGA's assertions that Mattel has been "withholding" documents for "months or years" without logging them are erroneous. Mattel produced and has continued to supplement its privilege log, and your letter's proposal about a rolling production of logs is actually consistent with Mattel's practice, but in conflict with MGA's practice—which, until now, has been to not produce any log at all, despite Court orders. Your assertion that Mattel's supplementation on August 9, 2007 was the first to identify documents responsive to the November 2006 unfair

---

[1]    We note two other points in this regard. First, the copies of MGA's supplemental privilege log emailed on August 14, 2007 are missing entries 777 - 1132. Second, MGA's assertion that the parties entered into an agreement that "documents relating to IP applications and registrations" need not be logged other than the earliest document in each "folder" is wholly inaccurate. There is no such agreement and never has been any such agreement.

Exhibit  5 ,
P.  33

competition document requests is also incorrect. *See, e.g.*, February 23, 2007 Supplemental
Privilege Log entries 30, 34, 36-49, 52-69.

Please do not hesitate to contact me if you have any questions.

Very truly yours,

B. Dylan Proctor

BDP:avw
07209/2194643.1

Exhibit 5,
P. 34

# Exhibit 6

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9

10                  UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12                        EASTERN DIVISION

13 | CARTER BRYANT, an individual,        | CASE NO. CV 04-9049 SGL (RNBx)

14 |            Plaintiff,                 | Consolidated with
                                            Case No. CV 04-09059
15 |      vs.                             | Case No. CV 05-02727

16 | MATTEL, INC., a Delaware             | **DISCOVERY MATTER**
     corporation,
17 |            Defendant.                | **[To Be Heard By Discovery Master
                                            Hon. Edward Infante (Ret.) Pursuant
18 |                                        To The Court's Order of December 6,
                                            2006]**
19 | AND CONSOLIDATED ACTIONS
                                            MATTEL, INC.'S REPLY IN
20                                          SUPPORT OF MOTION TO COMPEL
                                            PRODUCTION OF DOCUMENTS
21                                          WITHHELD AS PRIVILEGED

22                                          Date:  TBA
                                            Time:  TBA
23                                          Place: Telephonic

24                                          Discovery Cut-off: January 14, 2008
                                            Pre-trial Conference: April 7, 2008
25                                          Trial Date: April 29, 2008

26

27

28                        Exhibit _6_ ,
                              P. _35_

MATTEL'S REPLY IN SUPPORT OF MOTION TO COMPEL DOCUMENTS WITHHELD AS PRIVILEGED

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 4

I.     THE COURT'S ORDERS REQUIRED MGA TO PRODUCE A
       PRIVILEGE LOG BY JULY 31, 2007, AT THE LATEST ............................... 4

II.    MGA WILLFULLY VIOLATED THE COURT'S ORDERS ........................... 8

III.   MGA'S GAMESMANSHIP WARRANTS A FINDING OF WAIVER ......... 11

       A.    MGA Has Repeatedly Misrepresented Its Document Production
             Efforts In Response to the First Requests ............................................... 12

       B.    MGA Has Willfully Violated the Court's May 15 Order in Other
             Respects ...................................................................................................... 15

       C.    MGA Has Continuously Obstructed Discovery and Willfully
             Violated Other Court Orders ..................................................................... 17

IV.    MGA'S SUPPLMENTAL PRIVILEGE LOG STILL FAILS TO LOG
       DOCUMENTS WITHHELD AS PRIVILEGED ............................................ 18

V.     MATTEL UNSUCCESSFULLY ATTEMPTED TO GET MGA'S
       PRIVILEGE LOG WITHOUT MOTION PRACTICE ..................................... 19

CONCLUSION ................................................................................................................. 21

**Exhibit 6,**
**P. 56**

# TABLE OF AUTHORITIES

**Page**

## Cases

Applied Sys., Inc. v. N. Ins. Co. of N.Y.,
1997 WL 639235 (N.D. Ill. 1997)............................................................... 17

Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court,
408 F.3d 1142 (9th Cir. 2005)............................................................ 11, 17

Hurst v. F.W. Woolworth Co.,
1997 WL 61051 (S.D.N.Y. 1997) .............................................................. 10

Lopez v. City of New York,
2007 WL 869590 (E.D.N.Y. 2007)............................................................ 10

Marx v. Kelly, Hart & Hallman, P.C.,
929 F.2d 8 (1st Cir. 1991) ........................................................................ 17

Moreno v. Baca,
2007 U.S. Dist. LEXIS 15432 (C.D. Cal. 2007)...................................... 11

RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.,
2003 U.S. Dist. LEXIS 71 (S.D.N.Y. 2003) ........................................... 11

Ritacca v. Abbot Lab.,
203 F.R.D. 332 (N.D. Ill. 2001) .............................................................. 17

Thelen Reid & Priest LLP v. Marland,
2007 WL 578989 (N.D. Cal. Feb. 21, 2007)............................................ 10

U.S. v. Construction Prods. Research, Inc.,
73 F.3d 464 (2d Cir. 1996) ....................................................................... 20

Universal City Dev. Partners Ltd. v. Ride & Show Engineering, Inc.,
230 F.R.D. 688 (M.D. Fla. 2005) ....................................................... 10, 11

## Statutes

Fed. R. Civ. P. 26(b)(5) ................................................................................. 5

Fed. R. Civ. P. 26(c) ................................................................................... 11

Fed. R. Civ. P. 30(b)(6) ......................................................................... 16, 17

Fed. R. Civ. P. 37(b)(2) ............................................................................... 17

Exhibit 6 ,
P. 37

ii

07209/2201353.2

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

MGA makes every effort to obscure the central, incontrovertible fact warranting a finding that it waived the privilege: it willfully violated the Court's Order that it produce a privilege log by a date certain. Rather than comply, it once again tactically delayed.

In fact, even MGA's Opposition reveals its ongoing gamesmanship. Remarkably, MGA continues to deny it was even required to produce a log by July 31, 2007, instead claiming it just had to produce one when it unilaterally decided it would be "reasonable" to do so. That creative, after-the-fact interpretation of the Court's Orders is wrong. MGA was clearly required to produce its log by July 31, 2007, at the latest. In his May 15, 2007 Order, the Discovery Master ordered MGA to "produce a privilege log . . . no later than May 31, 2007," which was also the deadline for MGA to produce its documents. Judge Larson's July 2, 2007 Order extended MGA's time to produce its documents without expressly addressing or extending the deadline for the privilege log -- because MGA did not even ask Judge Larson to extend that deadline. There are thus only two possible deadlines for the log: either (1) the deadline was not extended by the July 2, 2007 Order and remained May 31, 2007, or else (2) it was extended to the same dates on which the documents were due (since the log was originally ordered produced on the day the documents were due), and thus was due by July 31, 2007 for all documents but the ones from Hong Kong. In either case, MGA violated the Orders.

Rather than simply concede this, MGA asserts that Judge Larson's July 2, 2007 Order silently permitted it to produce its log when it thought it reasonable to do so. But Judge Larson did not overrule *any* aspect of the Discovery Master's Order -- he merely provided MGA with a limited extension to produce its documents when MGA said compliance was "impossible" in its "emergency" *ex parte*. MGA asserts in the alternative that the July 2, 2007 Order required it to produce a log only by

-1-

MATTEL'S REPLY IN SUPPORT OF MOTION TO COMPEL DOCUMENTS WITHHELD AS PRIVILEGED

Exhibit _6_,
P. _38_

1   August 14, 2007, rather than July 31, 2007, but that makes no sense at all.  The July

2   2, 2007 Order required MGA to complete its production by July 31, 2007, and

3   provided an additional extension to August 14, 2007 only for documents in Hong

4   Kong.  How MGA reads this to mean its privilege log for *non*-Hong Kong documents

5   was due by August 14, 2007 is unclear.  Indeed, MGA's own conduct demonstrates

6   that it did not actually read the Court's Orders to require production by August 14,

7   2007: MGA admits that it produced its log on August 14, 2007 only because Mattel

8   filed this motion, and had previously refused to produce any log until mid-September.

9          As MGA's creative hermeneutics shows, its violation of the Court's

10  Orders that it produce a complete privilege log by July 31, 2007 was willful.  This

11  justifies a waiver finding.  MGA admits it told Mattel it would not produce a log until

12  mid-September, and refused to do so even on a rolling basis.  In fact, it told Mattel

13  that it simply was "not possible" to get it done earlier since it was withholding and

14  had to log "thousands" of documents.  Then, after Mattel filed this motion, the

15  impossible suddenly became possible -- and MGA produced the log within a matter

16  of days (although even to this day there are entire categories of documents that fall

17  within the scope of the Court's Orders that MGA has withheld but refused to log).

18  The fact that MGA was able to produce a log so quickly when motivated to do so --

19  but refused Mattel's requests -- reveals exactly the sort of gamesmanship that MGA

20  concedes *does* justify a finding of waiver under Ninth Circuit law.

21          Moreover, a finding of waiver is particularly appropriate here because

22  MGA's violation of the Court's Orders is part of its consistent practice of obstructing

23  discovery and refusing to comply with its obligations, including in the face of Court

24  Orders.  MGA has repeatedly misrepresented both to the Court and to Mattel the

25  status of its efforts to produce documents in response to the First Requests.  MGA has

26  violated the May 15 Order in respects other than as to its privilege log.  And these are

27  not MGA's first willful violations of a Court Order in this case -- the Court recently

28  sanctioned MGA for willfully violating the Court's May 16 Order as well.  MGA's

1   willful violations of the Court's Orders and ongoing gamesmanship warrant a finding

2   of waiver.

3        In the face of all this, and in an effort to distract from its misconduct,

4   MGA resorts to a tactic the Court has previously rejected: rather than address the

5   issues, it attempts to shift the subject to Mattel. MGA even filed a purported

6   "counter-motion" with its opposition, claiming that Mattel should be found to have

7   waived the privilege as well.[1] But Mattel *has not been ordered* by the Court to

8   produce a privilege log by a date certain, which is what is at issue here. That MGA

9   claims the circumstances are analogous only highlights its cavalier disregard for the

10  Court's Orders.

11       Last, MGA claims that Mattel failed to satisfy its meet and confer

12  obligations before bringing this motion. Actually, Mattel tried to get MGA to

13  produce a privilege log without motion practice, and informed MGA that its refusal to

14  produce the log violated the Court's Orders. MGA simply refused to produce a log

15  prior to mid-September. Mattel asked MGA to at least produce part of its log. MGA

16  refused that too. Mattel sent MGA a letter telling it that it was in violation of the

17  Court's Orders. MGA did not respond. Then, after this motion was filed, MGA sent

18  an e-mail asserting -- as it continues to assert in its Opposition -- that it had not been

19  ordered to produce its log by any particular date. That MGA now attempts to avoid

20  the consequences of its obstruction by faulting Mattel for not trying hard enough to

21  get its log reveals desperation. MGA should be held accountable for its willful

22  disregard for the Court's Orders.

23

24

25

26

27   [1]  Mattel will file its opposition to MGA's motion in accordance with its current

28  deadline.

Exhibit 6,
P. 40

MATTEL'S REPLY IN SUPPORT OF MOTION TO COMPEL DOCUMENTS WITHHELD AS PRIVILEGED

072209/2201353.2

**Argument**

I.    THE COURT'S ORDERS REQUIRED MGA TO PRODUCE A PRIVILEGE LOG BY JULY 31, 2007, AT THE LATEST

In its July 2, 2007 Order, the Court ordered MGA to complete its document production (other than from Hong Kong) no later than July 31, 2007 -- a deadline that MGA requested, and which represented a two-month extension of the Discovery Master's original ordered deadline of May 31, 2007.[2]  Although the July 2, 2007 Order does not say this (since MGA did not address the issue in its papers or even seek an extension of the privilege log deadline), Mattel has acknowledged that the July 2 Order can plausibly be interpreted as extending not only the production deadline but also the privilege log deadline.  But MGA's log for non-Hong Kong documents was still due no later than July 31, 2007.  Now that MGA faces the consequences of its outright refusal to comply with even that extended deadline, it argues the Court's July 2 Order did not require the production of a privilege log by July 31, 2007.  Instead, according to MGA, it was either (1) not ordered to produce a privilege log by any date certain at all, or (2) ordered to produce the log by August 14, 2007.  These purported justifications for its obstructionism are frivolous.

MGA's primary assertion is that Judge Larson's Order did not require it to produce a privilege log by any date certain, but merely required that MGA

---

[2] Judge Larson's Minute Order, dated July 2, 2007 ("July 2 Order"), at pp. 3-4 ("Counsel for MGA represented that the remaining documents could be produced no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which could be produced no later than two weeks after that date"), attached as Exhibit 13 to the Declaration of B. Dylan Proctor in Support of Mattel, Inc.'s Motion to Compel Production of Documents Withheld as Privileged, dated August 9, 2007 ("Proctor Dec."); Order Granting Mattel's Motion to Compel Production of Documents and Interrogatory Responses, dated May 15, 2007 ("May 15 Order"), Proctor Dec., Exh. 7.

Exhibit _6_,
P. _41_

1   "produce a privilege log within a reasonable time period."[3]  There is no language in

2   any Order supporting that claim, and it is not even remotely plausible.  Indeed, it is

3   nothing short of outrageous.

4              On May 15, 2007, the Discovery Master ordered MGA to produce its

5   documents and to "produce a privilege log in compliance with Rule 26(b)(5),

6   Fed.R.Civ.P., no later than May 31, 2007."[4]  MGA appealed aspects of the May 15

7   Order to Judge Larson and requested an extension of time to complete its production

8   by *ex parte* application.[5]  MGA's appeal and *ex parte* neither addressed nor sought

9   any modification of the Court-ordered deadline for the production of a privilege log.[6]

10  Judge Larson denied MGA's appeal entirely, but granted it an extension to complete

11  its production for non-Hong Kong documents until July 31, 2007.[7]  The Court did not

12  expressly address when MGA's compelled privilege log would be due in this July 2,

13  2007 Order.  Judge Larson did, however, clearly understand the Discovery Master's

14  Order to require the production of a privilege log, and actually made a point of noting

15  that requirement:

16              The Discovery Master's order compels the production of

17              only non-privileged documents.  Therefore, MGA's

18              arguments that the Discovery Master's order requires

19

20  _____

21  [3] MGA Entertainment, Inc.'s Memorandum of Points and Authorities in
    Opposition to Mattel, Inc.'s Motion to Compel Production of Documents Withheld as

22  Privileged, dated August 21, 2007 ("MGA's Opposition"), at p. 9.
    [4] May 15 Order, at p. 14, Proctor Dec., Exh. 7.

23  [5] MGA Entertainment, Inc.'s Memorandum of Points and Authorities in Support

24  of Motion Objecting to Portions of the Discovery Master's May 15, 2007 Order
    Granting Mattel's Motion to Compel Production of Documents and Interrogatory

25  Responses by MGA, dated May 30, 2007, Proctor Dec., Exh. 8.
    [6] Id.; MGA's Emergency *Ex Parte* Application for Review of Special Master

26  Infante's Order Denying MGA's Motion for Stay or Extension, dated June 22, 2007,

27  Proctor Dec., Exh. 12.
    [7] July 2 Order, at pp. 2-4, Proctor Dec., Exh. 13.

28

Exhibit _6_,
P. _42_

MATTEL'S REPLY IN SUPPORT OF MOTION TO COMPEL DOCUMENTS WITHHELD AS PRIVILEGED

1       production of documents in violation of the attorney-client

2       privilege are misplaced. If the only responsive documents

3       are privileged, then *MGA* need not produce them, but *must*

4       *produce a privilege log*.[8]

5       MGA nevertheless argues the July 2, 2007 Order silently vacated the

6 Discovery Master's Order that MGA produce its privilege log by a date certain and

7 instead silently permitted MGA to produce its log whenever MGA felt it would be

8 reasonable for it to do so. There is no support for that assertion. Judge Larson did

9 not overrule any aspect of the May 15 Order -- he merely granted an extension of

10 MGA's deadline to produce its documents. Moreover, MGA's *ex parte* did not even

11 seek -- let alone justify -- such a substantive modification of MGA's obligations under

12 the Orders. MGA did not even request the relief it now argues it was silently granted.

13       MGA alternatively argues that it was required to produce its log by

14 August 14, 2007, rather than July 31, 2007, since that is when "all" its documents

15 were due.[9] That reflects a contortion of the express language of Judge Larson's

16 Order. MGA told Judge Larson, as it had told the Discovery Master, that the

17 collection of documents from Hong Kong would take a massive amount of time.[10]

18 Based on that representation, Judge Larson carved out an exception to the July 31,

19

20

---

8  <u>Id.</u>, at p. 2 (emphasis added).

9  <u>See, e.g.</u>, MGA's Opposition, at pp. 4 and 20 ("Judge Larson ordered MGA to complete the entire production by August 14, 2007," and "the July 2, 2007 Order should be read as requiring the log on August 14, because that is the date imposed by the July 2, 2007 Order for MGA to complete the entire document production").

10  <u>See, e.g.</u>, July 2, 2007 Hearing on *Ex Parte* Application for Review of Special Master Infante's Order Denying MGA's Motion for Stay or Extension, at 30:22-31:8, attached as Exhibit 16 to the Supplemental Declaration of B. Dylan Proctor in Support of Mattel, Inc.'s Motion to Compel Production of Documents Withheld as Privileged, concurrently filed herewith ("Supplemental Proctor Dec."); June 19, 2007 Hearing on *Ex Parte* Application to Stay the May 15 Order, at 12:25-14:3, Supplemental Proctor Dec., Exh. 15.

Exhibit 6,
P. 43

1   2007 deadline for MGA to complete its production only as to those MGA documents

2   located in Hong Kong, allowing MGA to produce such documents no later than

3   August 14, 2007.[11]  Judge Larson's Order was clear that the extra time for the Hong

4   Kong documents was an exception to the general deadline for compliance of July 31,

5   2007:

6          Counsel for MGA represented that the remaining

7          documents could be produced no later than July 31, 2007,

8          with the exception of the documents from MGA Hong

9          Kong, which could be produced no later than two weeks

10         after that date.  Accordingly, *the Court ORDERS that*

11         *MGA complete the document production set forth in the*

12         *Discovery Master's May 15, 2007, order no later than July*

13         *31, 2007*, with the exception of the documents from MGA

14         Hong Kong, which shall be produced no later than August

15         14, 2007.[12]

16         The fact that the July 2 Order requires MGA to "complete the production

17  set forth in the Discovery Master's May 15, 2007" by July 31, 2007, necessarily

18  means that the privilege log that the Discovery Master ordered produced with that

19  production was required to be produced at that time as well (assuming it was not still

20  due by May 31, 2007, since the privilege log deadline was never expressly extended).

21  The August 14 deadline was a limited exception to the earlier general July 31

22  deadline.  There is no support for MGA's claim that this limited exception also

23  applied to the time for MGA to produce its *non*-Hong Kong log.[13]

24

25

26  [11]  July 2 Order, Proctor Dec., Exh. 13.                    Exhibit 6,
                                                                  P. 44
27  [12]  Id., at pp. 3-4 (emphasis added).

28  [13]  MGA's Hong Kong production consisted of only approximately 11,000 pages,
    and only six logged documents withheld on privilege grounds.  See Supplemental
    (footnote continued)

1    In the end, there can be no real dispute that MGA was required to

2  produce its log by July 31 at the latest.  MGA's strained reading of the Court's Orders

3  reflects the astonishing extent to which it takes liberties with them, reading the Orders

4  as its sees fit to suit its own purposes.

5  II.   MGA WILLFULLY VIOLATED THE COURT'S ORDERS

6    MGA's actions and statements demonstrate that its violation of the

7  Court's Orders to produce its privilege log by July 31, 2007, was willful.  In fact,

8  MGA even admits that it never intended to produce a log by the actual Court-ordered

9  deadline, and did not even try to comply.

10    MGA has consistently sought to avoid or delay compliance with its

11  obligations under the May 15 Order.  In its original motion to compel dated February

12  2, 2007, Mattel moved the Court to compel MGA to "serve a complete privilege

13  log."[14]  On May 15, 2007, the Discovery Master ordered MGA to produce its

14  privilege log by May 31, 2007.[15]  MGA did not do so.  Instead, it appealed the Order

15  to Judge Larson and, on the day its production and privilege log were due, requested

16  that the Discovery Master stay the May 15 Order.[16]  The Discovery Master rejected

17  MGA's requested stay.[17]  Still, MGA did not produce its Court-ordered privilege log

18

19  Proctor Dec., ¶¶ 10-11.  By contrast, MGA's non-Hong Kong production consisted of

20  more than 160,000 pages and over 1,100 allegedly privileged documents.  Id.

   [14]  Mattel, Inc.'s Notice of Motion and Motion to Compel Production of

21  Documents and Interrogatory Answers by MGA Entertainment, Inc., dated February

22  2, 2007, at p. i, Proctor Dec., Exh. 6.

   [15]  May 15 Order, at p. 14, Proctor Dec., Exh. 7.

23   [16]  MGA Entertainment, Inc.'s Memorandum of Points and Authorities in Support

24  of Motion Objecting to Portions of the Discovery Master's May 15, 2007 Order

   Granting Mattel's Motion to Compel Production of Documents and Interrogatory

25  Responses by MGA, dated May 30, 2007, Proctor Dec., Exh. 8; MGA's *Ex Parte*

26  Request for Stay or Modification of Discovery Orders, dated May 31, 2007, Proctor

   Dec., Exh. 9.

27   [17]  Order Regarding MGA Entertainment, Inc.'s Request for Stay or Modification

28  of Discovery Orders, dated June 21, 2007, Proctor Dec., Exh. 11.    Exhibit 6,
                                                                        P. 45

1 (or its documents). Instead, it filed an "emergency" *ex parte* application with Judge
2 Larson.[18]

3        Even after Judge Larson ultimately granted MGA an extension to July
4 31, 2007, MGA *still* had no intention of complying with its Court-ordered obligation.
5 MGA admits this. Indeed, it admits that it did not intend to produce a privilege log
6 *even by August 14, 2007*, let alone July 31, 2007. Instead, it claims, "MGA
7 accelerated its efforts to complete the privilege log, and produced it on August 14,"
8 only "in an effort to moot the motion" at bar.[19] MGA also does not deny it told
9 Mattel that it would not produce its log until mid-September.[20]

10        That MGA has now produced a partial log does not absolve it of the
11 consequences of its willful violation of the Court's Orders. To the contrary, it
12 highlights that its non-compliance was in bad faith. MGA's purported reasons for
13 refusing to produce its privilege log before mid-September -- that it was impossible
14 and had no obligation to do so sooner -- were false.[21] It easily could have produced
15 its log by the deadline ordered by the Court if it wanted to. It simply had no intention
16 of doing so and, by its own admission, finally produced its log when it did only
17 because it was faced with the consequences of its non-compliance. The fact that,
18 once motivated, it took only five days for MGA to produce its log is telling.[22]

19        MGA's cavalier attitude toward its obligation to comply with the Court's
20 Orders is further evidenced by the "Counter-Motion to Compel Mattel to Produce
21 Documents Withheld as Privileged" it submits with its Opposition. MGA's cross-

22

23        [18] MGA's Emergency *Ex Parte* Application for Review of Special Master Infante's
24 Order Denying MGA's Motion for Stay or Extension, dated June 22, 2007, Proctor
       Dec., Exh. 12.
25        [19] MGA's Opposition, at p. 9.
26        [20] MGA's Opposition, at pp. 7, 21.
       [21] Supplemental Proctor Dec., ¶ 2.
27        [22] Mattel filed its motion on August 9, 2007, and MGA produced its log on August
28 14, 2007.

                                                        Exhibit _6_,
                                                        P. _96_

07209/2201353.2

1  motion essentially boils down to one argument: "if the rule is as Mattel espouses,
2  then Mattel must be found to have waived the privilege."[23]  That completely ignores a
3  rather salient difference: MGA has willfully violated a Court Order that it produce its
4  privilege log by a date certain. Mattel has not. And, of course, Mattel has been
5  supplementing its log over time. MGA refused to do so even in the face of Court-
6  ordered obligations. The fact that MGA finds the situations analogous speaks
7  volumes about the lack of importance it places on complying with Court Orders in
8  this case. Further, MGA's attempt to hide its own improper conduct by seeking to
9  shift the subject to Mattel is just the sort of tactic the Court has previously rejected.
10  As the Court responded when MGA employed a similar tactic at the June 19 hearing
11  on its request for a stay or extension of the May 15 Order: "This is not about Mattel.
12  This about [MGA] complying with a Court Order."[24]

13           MGA's attempt to distinguish cases in which waiver was found also
14  highlights its disregard for Court Orders. MGA distinguishes Hurst v. F.W.
15  Woolworth Co., 1997 WL 61051 (S.D.N.Y. 1997), and Lopez v. City of New York,
16  2007 WL 869590 (E.D.N.Y. 2007), on the grounds that waiver was found because a
17  privilege log was not timely produced in violation of a Local Rule. MGA's violation
18  of a Court-ordered deadline is at least as warranting of sanction as the violation of a
19  Local Rule, yet MGA assumes it is not.[25] Notably, MGA makes no effort to

20

21  ─────────────────
22  [23] MGA's Counter-Motion to Compel Mattel to Produce Documents Withheld as Privileged, at p. 4.
23  [24] June 19, 2007 Hearing on Ex Parte Application to Stay the May 15 Order, at
24  20:15-16, Proctor Dec., Exh. 10.
25  [25] MGA attempts to distinguish Thelen Reid & Priest LLP v. Marland, 2007 WL 578989 (N.D. Cal. Feb. 21, 2007) and Universal City Dev. Partners Ltd. v. Ride &
26  Show Engineering, Inc., 230 F.R.D. 688 (M.D. Fla. 2005) on the grounds that they deal with waiver of privilege for inadvertent production of privileged documents
27  rather than failure to timely produce a privilege log. Although both cases do involve
28  inadvertent production, they also both rely on the party's failure to timely produce an
           (footnote continued)

MATTEL'S REPLY IN SUPPORT OF MOTION TO COMPEL DOCUMENTS WITHHELD AS PRIVILEGED
07209/2201353.2

Exhibit 6 ,
P. 47

1   distinguish the cases cited by Mattel for the proposition that a Court may make such

2   orders as are just in regards to a party's failure to comply with a discovery Order.[26]

3          Finally, if, as MGA now suggests, it truly thought the Court's Orders

4   were ambiguous, it was obligated to seek clarification from the Court. It has done

5   just that previously in this case.[27] It did not do so here because there is nothing to

6   clarify -- the Court's Orders are clear. MGA knew it had to produce a privilege log

7   by July 31, 2007. It intentionally chose not to. That warrants a waiver finding.[28]

8   III.   MGA'S GAMESMANSHIP WARRANTS A FINDING OF WAIVER

9          MGA's willful violation of the Court's Orders that it produce a privilege

10  log by July 31, 2007, at the latest, is just one example of its ongoing, never-ending

11  practice of playing games with its discovery obligations. As MGA acknowledges in

12  its Opposition, the Ninth Circuit has held that a waiver finding is particularly

13  appropriate where a party is "engaging in gamesmanship in various ways designed to

14  obstruct plaintiff's ability to obtain the documents requested," and that the waiver

15  sanction is appropriate "to forestall . . . tactical manipulation of the rules and the

16  discovery process."[29] See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court, 408

17  F.3d 1142 (9th Cir. 2005). Here, MGA's gamesmanship is at its peak.

18  _____

19  adequate privilege log. Indeed, MGA admits as much with respect to Universal City.

20  See MGA's Opposition, at pp. 15-16.

    [26] See Mattel, Inc.'s Notice of Motion and Motion to Compel Production of

21  Documents Withheld as Privileged, at pp. 9-10.

    [27] See Carter Bryant and MGA Entertainment, Inc.'s Motion for Clarification of

22  the Discovery Master's January 25, 2007 Order or for Protective Order Pursuant to

23  Rule 26(c), Supplemental Proctor Dec., Exh. 14.

    [28] The only two cases MGA cites to suggest that waiver is too harsh a sanction

24  here are readily distinguished. Neither Moreno v. Baca, 2007 U.S. Dist. LEXIS

25  15432 (C.D. Cal. 2007), which only addressed the issue of waiver in a footnote with

26  little analysis, nor RMED Int'l, Inc. v. Sloan's Supermarkets, Inc., 2003 U.S. Dist.

    LEXIS 71 (S.D.N.Y. 2003), involved the violation of a Court Order requiring the

27  production of a log.

28  [29] MGA's Opposition, at pp. 12, 15.

                                                        Exhibit _𝘣_,
                                                        P. _4𝘱_

A.   **MGA Has Repeatedly Misrepresented Its Document Production Efforts In Response to the First Requests**

MGA has repeatedly misrepresented -- to both the Court and Mattel -- its document production efforts in response to the First Requests, consistently seeking to delay compliance with its discovery obligations, and prejudice Mattel.

On February 20, 2007, MGA represented to the Court that Mattel's motion to compel the production of documents in response to its First Requests was "unnecessary" because MGA was *already* in the process of curing the alleged deficiencies in its production.[30]  MGA even informed the Court then that, "as of the date of [its] opposition, *[it] will have produced virtually all, if not all, of the documents at issue.*"[31]  As of that date, MGA had only produced approximately 8,500 pages.[32]  The Court orally granted Mattel's motion at argument on March 5, 2007.[33]  MGA should have begun gathering its withheld documents -- and listing allegedly privileged ones on a log -- by that time, if not earlier.

After the Court entered its written May 15 Order requiring MGA to produce its documents by May 31, 2007, MGA represented to Mattel that it would be able to comply with the May 31 deadline, but requested an extension as to two categories of documents: prior sworn statements by MGA personnel, which it said it could produce by June 11, 2007, and documents from MGA Hong Kong, which its

---

[30] MGA Entertainment, Inc.'s Opposition to Mattel, Inc.'s Motion to Compel Production of Documents and Interrogatory Answers, dated February 20, 2007, at pp. 10-16, Supplemental Proctor Dec., Exh. 13.
[31] Id., at p. 2 (emphasis added).
[32] Supplemental Proctor Dec., ¶ 10.
[33] June 19, 2007 Hearing on *Ex Parte* Application to Stay the May 15 Order, at 20:22-24 (The Court: "The Motion was heard on March 5th, and during that hearing I indicated that I would be granting the Moton."), Proctor Dec., Exh. 10.

07209/2201353.2

MATTEL'S REPLY IN SUPPORT OF MOTION TO COMPEL DOCUMENTS WITHHELD AS PRIVILEGED

Exhibit ___6___ ,

P. ___49___

1  said it could produce by July 27, 2007.[34]  The next day, MGA requested an extension

2  to produce *all* compelled categories of documents covered by the May 15 Order until

3  June 11, 2007.[35]  MGA stated in writing that June 11 was a "reasonable compliance

4  date" and that MGA would be able to meet this date with respect to all documents

5  other than the MGA Hong Kong documents.[36]

6         Mattel agreed to MGA's requested June 11 extension.[37]  MGA, however,

7  decided to seek to further delay compliance and, on May 31, 2007, applied *ex parte* to

8  the Discovery Master for a stay of the time for compliance with all aspects of the

9  May 15 Order or, a 60-day extension in the alternative.[38]  MGA represented that it

10 was "already searching for and collecting the documents ordered by the Court and

11 [was] prepared to produce documents on a rolling basis."[39]

12         On June 21, 2007, the Court denied MGA's request for a stay and for an

13 extension of time to comply with the May 15 Order, except as to the documents

14 "located and accessible exclusively in Hong Kong," for which it extended the

15 deadline to June 29, 2007.[40]  At the close of the hearing, MGA's counsel told the

16 Court that MGA "will do what you say," but then did not.[41]  Instead, it appealed the

17 Discovery Master's denial of MGA's requested stay or extension in its purported

18

19 _____

20 [34] See Declaration of B. Dylan Proctor in Support of Mattel, Inc.'s Response to
   MGA's Request for Stay or Modification of Discovery Orders, ¶¶ 6-7, Notice of

21 Lodging, Exh. 1.

22 [35] See id., ¶ 8.
   [36] See id., ¶ 8, Exh. 5.

23 [37] See id., ¶ 13.

24 [38] MGA's *Ex Parte* Request for Stay or Modification of Discovery Orders, dated
   May 31, 2007, Proctor Dec., Exh. 9.

25 [39] Id., at p. 2.

26 [40] Order Regarding MGA Entertainment, Inc.'s Request for Stay or Modification
   of Discovery Orders, dated June 21, 2007, Proctor Dec., Exh. 11.

27 [41] June 19, 2007 Hearing on *Ex Parte* Application to Stay the May 15 Order, at

28 28:18, Supplemental Proctor Dec., Exh. 15.

Exhibit _6_,
P._50_

1   "emergency" *ex parte*.[42]  At that time, MGA informed Judge Larson that it "did in

2   fact begin to collect and produce documents following [the March 5, 2007] oral

3   argument on Mattel's motions," revealing that it knew it had been compelled to do

4   so.[43]

5          Judge Larson heard oral argument on MGA's appeal of the May 15

6   Order and appeal of the Discovery Master's denial of MGA's requested stay or

7   extension on July 2, 2007.  At that hearing, MGA represented that it had substantially

8   completed its production of non-Hong Kong documents, and acknowledged that it

9   had represented the same to Mattel:

10          Mr. Zeller:  And, of course, we were also told last week that

11          MGA was going to produce its domestic documents by the

12          end of this week.

13          The Court:  Is that true?

14          Ms. Cendali:  We told them that we intended to

15          substantially comply with the Order for the domestic

16          documents, which is why, as of Friday, we produced

17          another 10,000 documents. . .

18          The Court: So this additional four weeks that you're asking

19          for at this point for the domestic documents, you don't

20          anticipate a large volume in that four weeks?

21          Ms. Cendali:  Correct.[44]

22

23

24   [42] MGA's Emergency *Ex Parte* Application for Review of Special Master Infante's
     Order Denying MGA's Motion for Stay or Extension, dated June 22, 2007, Proctor
25   Dec., Exh. 12.

26   [43] Id., at p. 5.
     [44] July 2, 2007 Hearing on *Ex Parte* Application for Review of Special Master
27   Infante's Order Denying MGA's Motion for Stay or Extension, at 30:9-25,
28   Supplemental Proctor Dec., Exh. 16.

Exhibit _μ_,
P. _51_

07209/2201353.2

MATTEL'S REPLY IN SUPPORT OF MOTION TO COMPEL DOCUMENTS WITHHELD AS PRIVILEGED

1    Despite that representation, MGA produced approximately 53,000 pages
2    of documents between the date of that hearing and the July 31, 2007 deadline.[45]  By
3    contrast, MGA had produced a total of approximately 62,000 pages of documents
4    between the date of the May 15, 2007 Order and the July 2, 2007 hearing.[46]  Thus, the
5    production that MGA represented to the Court it did not anticipate to be of "large
6    volume" in fact constituted nearly half of the domestic documents MGA produced in
7    response to the May 15 Order.

8    Given MGA's past assertions, its claim now that it could not have
9    produced its privilege log by the Court-ordered deadline of July 31, 2007 (at the
10   latest) lacks credibility.  What MGA is "capable" of has been a moving target that has
11   had more to do with MGA's efforts to delay its discovery obligations than with any
12   real logistical impediments.  MGA has repeatedly relied on its alleged difficulty in
13   collecting documents from Hong Kong to try to explain away its delays, but any
14   logistical difficulty in obtaining documents from Hong Kong does not excuse MGA's
15   violation of the Court's Orders here.  Of the 1,138 documents listed on the privilege
16   logs produced by MGA on August 14, 2007, only six are documents from its Hong
17   Kong production.[47]  Mattel does not seek a waiver finding as to those six documents.

18   B.    MGA Has Willfully Violated the Court's May 15 Order in Other
19         Respects

20   Not only did MGA willfully violate the Court's Order to produce a
21   privilege log by July 31, 2007, it has willfully violated other aspects of the May 15
22   Order as well.  For example, the May 15 Order required MGA to produce documents
23   relevant to Bratz or Prayer Angels that it received from Union Bank.[48]  MGA

24

25

---

26   [45] Supplemental Proctor Dec., ¶ 10.
     [46] Id.
27   [47] Id., ¶ 11.
28   [48] May 15 Order, at pp. 5, 14, Proctor Dec., Exh. 7.

Exhibit 6 ,
P. 52

MATTEL'S REPLY IN SUPPORT OF MOTION TO COMPEL DOCUMENTS WITHHELD AS PRIVILEGED

1   represented to the Court that it would produce such documents.[49]  However, MGA

2   failed to produce *any* such documents in response to the May 15 Order until August

3   21, 2007 -- three weeks after the extended deadline of July 31, 2007 -- and only did

4   so then after Mattel threatened further motion practice.[50]

5           Even then, MGA's production of the Union Bank documents clearly

6   violates the Court's May 15 Order.  For starters, it produced only approximately 100

7   pages of documents from Union Bank, when the Union Bank production consisted of

8   more than 6,000 pages of documents.[51]  Moreover, those documents are so heavily

9   redacted they are unintelligible.[52]  That clearly violates another straightforward

10  requirement of the Court's Order: that MGA must "produce all documents in un-

11  redacted form, except for redactions that are justified by the attorney-client privilege

12  or work product doctrine."[53]  MGA has also produced other documents since the May

13  15 Order that contain substantial redactions that do not appear to be justified by any

14  claim of privilege.[54]  Moreover, MGA appears to be withholding at least hundreds of

15  attachments to documents it was compelled to produce as well.[55]

16          Mattel is attempting to resolve these and other deficiencies in MGA's

17  production without the need for further motion practice, but one thing is clear: MGA's

18  violation of the Court's May 15 Order by failing to timely produce a privilege log is

19  far from an isolated occurrence.

20

21

22  _____

23  [49] Id., at p. 5 ("MGA represents that it has agreed to produce documents relevant to Bratz or Prayer Angels that it received from Union Bank").

24  [50] Supplemental Proctor Dec., ¶ 6.  MGA produced approximately 100 pages of Union Bank documents prior to the May 15 Order.  Id.

25  [51] Id.

26  [52] Id., ¶ 7.

27  [53] May 15 Order, at p. 14, Proctor Dec., Exh. 7.
    [54] See, e.g., Supplemental Proctor Dec., ¶ 7, Exh. 4.

28  [55] Supplemental Proctor Dec., ¶ 8, Exh. 17.

Exhibit  6 ,
P. 53

-16-

07209/2201353.2

C.   MGA Has Continuously Obstructed Discovery and Willfully Violated Other Court Orders

MGA's calculated effort to obstruct discovery, and prejudice Mattel, goes far beyond its violations of the May 15 Order.   The Court has already had to issue at least eight orders compelling MGA to comply with its discovery obligations, compelling MGA to comply with basically every form of discovery there is -- interrogatories, document requests, deposition notices (both Rule 30(b)(6) and otherwise), and requests for admission.[56] Before the Discovery Master was appointed, the Court had to *twice* compel the deposition of MGA's CEO Isaac Larian, and sanctioned MGA for refusing to produce him for deposition.[57] More recently, the Court held that MGA willfully violated the Court's May 16, 2007 Order requiring MGA to designate and produce Rule 30(b)(6) witnesses by June 30, 2007, finding that MGA's "violation was particularly egregious because MGA's request for a stay was denied on June 21, 2007," that "MGA's non-compliance was willful and inexcusable," and that "MGA's clear and flagrant violation of a court order warrants sanctions under Rule 37(b)(2), Fed.R.Civ.P."[58]

MGA's pattern of disregard for the Court's Orders in this case and its history of gamesmanship supports a finding of waiver under Ninth Circuit law.  See Burlington, 408 F.3d 1142 (9th Cir. 2005) (waiver finding appropriate where party engaged in gamesmanship); see also Ritacca v. Abbot Lab., 203 F.R.D. 332, 335 (N.D. Ill. 2001) ("evidence of foot-dragging or a cavalier attitude towards following court orders and the discovery rules supports finding waiver") (citing Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 12 (1st Cir. 1991) and Applied Sys., Inc. v. N. Ins. Co. of N.Y., 1997 WL 639235, at 2-3 (N.D. Ill. 1997)).

---

[56] See Supplemental Proctor Dec., ¶ 9.
[57] See id., ¶ 9(a).
[58] See id., Exh. 12.

Exhibit 6,
P. 54

07209/2201353.2

MATTEL'S REPLY IN SUPPORT OF MOTION TO COMPEL DOCUMENTS WITHHELD AS PRIVILEGED

IV.   <u>MGA'S SUPPLMENTAL PRIVILEGE LOG STILL FAILS TO LOG DOCUMENTS WITHHELD AS PRIVILEGED</u>

By MGA's own admission, its supplemental privilege log -- produced on August 14, 2007 in response to Mattel's motion -- fails to log a broad category of documents that MGA is withholding as privileged.  In clear violation of the Court's Orders, MGA unilaterally refuses to log allegedly "privileged and protected documents contained in [its] copyright, trademark and patent files."[59]  Even by MGA's own account, the deadline to log these documents has passed.  MGA claimed for the first time on August 14, 2007 -- after this motion was filed -- that the parties agreed that such documents did not need to be logged.[60]  That is false.  Mattel never entered into such an agreement and promptly wrote to MGA to dispute MGA's claim to the contrary.[61]  MGA did not respond.[62]  MGA has simply manufactured yet another after-the-fact excuse for its misconduct.  Given MGA's ongoing violation of the Court's Orders, it should be found to have waived the privilege as to these still un-logged documents and any others is has not logged to date at the very least.

Moreover, even based on a cursory review of MGA's new privilege log it is clear that MGA's supplemental log is deficient in other respects as well.  For example, MGA (i) claims privilege on the basis of attorney-client communication for several documents that do not appear to be communications (see, e.g., Document Nos. 64, 80, 130); (ii) lists documents without providing the author of the document (see, e.g., Document Nos. 34, 621, 622); (iii) claims privilege on the basis work product without providing any indication that the document was prepared in

---

[59] Letter from Feinstein to Mattel's Counsel, dated August 14, 2007, at n. 1, attached as Exhibit 1 to the Declaration of Michael T. Zeller in Support of Mattel, Inc.'s Motion to Compel Production of Documents Withheld as Privileged ("Zeller Dec."), concurrently filed herewith.
[60] <u>Id.</u>
[61] Zeller Dec., ¶¶ 2-4, Exh. 2.
[62] Zeller Dec., ¶ 3.

Exhibit 6,
P. 55

07209/2201353.2

1  anticipation of litigation (see, e.g., Document Nos. 18, 19, 22, 64, 80, 535, 537, 542,

2  621, 622, 623); and (iv) lists letters purportedly sent by "MGA" without listing the

3  individual who drafted or sent the letter (see, e.g., Document Nos. 449-452, 454).[63]

4  MGA's after-the-fact production of a deficient privilege log does nothing to cure its

5  willful violations.

6  V.   **MATTEL UNSUCCESSFULLY ATTEMPTED TO GET MGA'S**

7       **PRIVILEGE LOG WITHOUT MOTION PRACTICE**

8            Finally, MGA argues that Mattel failed to meet and confer before filing

9  this motion.  That argument also lacks merit.  Mattel diligently attempted to obtain

10  MGA's privilege log without motion practice, but MGA simply refused to provide it.

11            On July 25, 2007, Mattel sent a letter to MGA seeking to meet and

12  confer on MGA's failure to update its privilege log or serve a supplemental log since

13  May 2005, and about deficiencies in that log.[64]  During the parties' August 3, 2007

14  meet and confer, MGA confirmed that it (1) had not produced a log, and (2) was

15  withholding thousands of documents on privilege grounds.[65]  The parties discussed

16  MGA's failure to produce a log at length, and MGA stated that it would not produce a

17  log until mid-September at the earliest.[66]  Mattel informed MGA that was too late,

18  and that the log was due with its documents.[67]  MGA still refused to produce it.[68]

19  Mattel sent a letter to MGA that day to confirm the substance of the parties' meet and

20  confer, noting that MGA's flat refusal to produce a log until mid-September was a

21

22

_____

23  [63]  MGA's August 14, 2007 Privilege Logs attached as Exhibit 1 to the Declaration

24  of William Charron in Opposition to Mattel, Inc.'s Motion to Compel Production of
    Documents Withheld as Privileged.

25  [64] Letter from Proctor to Torres, dated July 25, 2007, Proctor Dec., Exh. 2.

26  [65] Proctor Dec., ¶ 5.

    [66] Id.; Supplemental Proctor Dec., ¶ 2.

27  [67] Id.

28  [68] Id.

07209/2201353.2

MATTEL'S REPLY IN SUPPORT OF MOTION TO COMPEL DOCUMENTS WITHHELD AS PRIVILEGED

1   "violation of the Court's orders."[69]  If MGA was confused by that statement or felt the
2   parties had not adequately discussed the issue at the meet and confer, it could have
3   responded to Mattel's letter to seek clarification.  It did not.[70]  Contrary to MGA's
4   counsel's assertion, there was nothing left to discuss at the end of the meet and confer
5   about MGA's failure to produce a log -- its refusal was unequivocal and final.[71]

6          MGA also makes other misrepresentations regarding the parties' meet
7   and confer.  For example, MGA claims that during the parties' meet and confer
8   "Mattel indicated that it expected the log to be provided a reasonable time after the
9   document production and on a rolling basis."[72]  That is simply false.  Mattel's letter
10  shows it is false.[73]  When MGA stated that it would not produce a privilege log until
11  mid-September, Mattel stated that was unacceptable.[74]  Mattel inquired whether
12  MGA would *at least* produce portions of its log so that Mattel could begin the
13  process of reviewing the log to assess MGA's privilege claims, but at no point did
14  Mattel suggest that would be sufficient compliance with the Court's Order.[75]  And, in
15  any case, MGA refused even that request.[76]

16         MGA's attempt to blame Mattel for its own obstinate refusal to comply
17  with its obligations should be rejected.  That is especially true since MGA was well
18  aware that the failure to timely produce a privilege log may result in waiver of the
19  privilege, having previously made a similar argument against Mattel in this case.[77]

---

21  [69] Letter from Proctor to Jenal, dated August 3, 2007, Proctor Dec., Exh. 3.
22  [70] Supplemental Proctor Dec., ¶ 3.
    [71] Supplemental Proctor Dec., ¶ 2.
23  [72] MGA's Opposition, at pp. 24-25.
24  [73] See Letter from Proctor to Jenal, dated August 3, 2007, Proctor Dec., Exh. 3.
    [74] See id.; Proctor Dec., ¶ 5.
25  [75] Proctor Dec., ¶ 5; Supplemental Proctor Dec., ¶ 2.
26  [76] Proctor Dec., ¶ 5
    [77] See MGA and Bryant's Joint Motion to Compel the Production of Documents
27  and the Deposition of 30(b)(6) Witnesses, dated January 5, 2007, at p. 11 (citing U.S.
28  v. Construction Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996), for
        (footnote continued)

-20-

MATTEL'S REPLY IN SUPPORT OF MOTION TO COMPEL DOCUMENTS WITHHELD AS PRIVILEGED

Exhibit _6_
P. _57_

1   MGA had every opportunity to produce its log as ordered by the Court without

2   motion practice.  It simply chose not to do so.

3                                    **Conclusion**

4            Mattel respectfully requests that the Court grant this motion in its

5   entirety.  The Court should find that MGA has waived any privilege objection

6   regarding documents responsive to Mattel's First Set of Requests for Production of

7   Documents and Tangible Things, dated March 14, 2005 (except as to documents

8   created after the filing of this litigation, the 62 documents listed on MGA's May 2005

9   log, and the six documents on its August 14, 2007 Hong Kong log), and compel

10  MGA to produce all documents withheld on such basis immediately, including but

11  not limited to all documents contained on MGA's supplemental log for non-Hong

12  Kong documents.

13

14  DATED:  August 27, 2007          QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
15

16                                   By _____

17                                      B. Dylan Proctor
                                        Attorneys for Plaintiff
                                        Mattel, Inc.
18

19

20

21

22

23

24

25

26   _____

27   proposition that failure to produce adequate privilege log may result in waiver),

28   Proctor Dec., Exh. 14.                          **Exhibit** _6_,
                                                      **P.** _58_

                                         -21-

07209/2201353.2

# Exhibit 7

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE

PALO ALTO, CALIFORNIA 94301

TEL: (650) 470-4500

FAX: (650) 470-4570

www.skadden.com

DIRECT DIAL
650.470.4511
DIRECT FAX
888.329.6334
EMAIL ADDRESS
APARK@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

February 8, 2008

**By Personal Service**

Jon Corey, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

RE:    *Carter Bryant v. Mattel, Inc.* (and consolidated cases)
Case No. CV 04-9049 SGL (RNBx) (consolidated with
Cases Nos. CV 04-09059 and CV 05-02727)

Dear Jon:

I am writing to follow up on my letter of January 31 and your February 4 response regarding MGA's inadvertent failure to produce certain documents and log certain others in connection with its January 28 document production. In that regard, I am enclosing a hard drive and CD containing approximately 350 documents, plus a revised privilege log. The 350 documents consist of documents that (i) were inadvertently not produced due to a processing error with our vendor; or (ii) based on our review of the privilege log served on January 28, we conclude should have been produced either in their entirety or in redacted form. The January 28 privilege log has been amended to (i) add approximately 90 documents that, due to a processing error with our vendor, were inadvertently omitted from the original log, (ii) remove the entries for the documents referenced above that we have concluded should be produced, and (iii) remove entries for documents that post-date the litigation, consistent with the parties' agreement.  If you have any questions regarding the foregoing, please give me a call.

Sincerely,

Amy S. Park

Amy S. Park

Enclosures

Exhibit 7 ,
P. 59

# Exhibit 8

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144
—
TEL: (213) 687·5000

FAX: (213) 687·5600

www.skadden.com

DIRECT DIAL
(415) 984-6442
EMAIL ADDRESS
JRALLEN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
NEWARK
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

March 20, 2008

**<u>Via Hand Delivery</u>**

Harry A. Olivar, Jr., Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

RE:     *Carter Bryant v. Mattel, Inc.* Case No. CV 04-9049 SGL (RNBx)
        <u>(Consolidated With Case Nos. CV 04-09059 and CV 05-02727)</u>

Dear Harry:

I write in response to your March 7, 2008 letter requesting to meet and confer regarding documents listed on various privilege logs produced by MGA and Isaac Larian in August, September and November 2007 and January 2008. We are available to meet and confer regarding entries in these logs; however, to ensure everyone's time is used more efficiently, the following issues regarding the scope of the documents to be discussed at that meeting should be addressed before we select a precise meeting time and location.

First, as Judge Infante noted, the focus of any further meet and confer should be on the revised August and September 2007 logs, not the original logs. Enclosed herewith are the revised versions of MGA's August 14, 2007 and September 5, 2007 privilege logs. If you have any issues with regard to the entries on the revised logs we request that you identify them before we meet and confer. Per the agreement between the parties, the revised logs only include documents generated on or prior to April 27, 2004. Please note that in removing documents on the logs dated after April 27, 2004, MGA does not in any way waive any applicable privilege that may attach to the removed entries, including but not limited to the attorney-client privilege and work product doctrine.

Exhibit __8__
P. __60__

Harry A. Olivar, Jr., Esq.
March 20, 2008
Page 2

In addition, we assume that the entries listed in your letter with respect to the other logs represent all the documents about which you have any questions and that there are no other entries on the logs that are at issue. If this is not the case please let me know.

Finally, inasmuch as the parties agree that documents generated on or before April 27, 2004 do not need to be logged, we expect the meet and confer to be limited to documents generated on or before that date.

Please call me if you have any questions regarding the above.

Very truly yours,

José R. Allen

Enclosure

**Exhibit  8  ,**
**P.  61**

# Exhibit 9

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**TOKYO**
Akasaka Twin Tower Main Building, 6th Floor
17-22 Akasaka 2-Chome
Minato-ku, Tokyo 107-0052, Japan
+81 3 5561-1711
Facsimile: +81 3 5561-1712

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   April 10, 2008

**NUMBER OF PAGES, INCLUDING COVER:**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Mr. Jose Allen, Esq. | 415.984.6442 | 888.329.1260 |

**FROM:**   Zachary Krug

**RE:**   Mattel, Inc. v. Bryant, et al.

**MESSAGE:**

Please see the attached letter.

---

| CLIENT # | 07209 | ROUTE/ RETURN TO: | Shawna Allison | ☒ CONFIRM FAX ☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | *PriscillA* | | CONFIRMED? ☐ NO ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

Exhibit  9 ,
P.  62

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3176

WRITER'S INTERNET ADDRESS
harryolivar@quinnemanuel.com

April 10, 2008

<u>Via Facsimile and U.S. Mail</u>

Mr. Jose Allen, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
4 Embarcadero Center, Suite 3800
San Francisco, CA 94111

Re:   <u>Mattel, Inc. v. Bryant, et al.</u>

Dear Jose:

We have reviewed MGA's revised privilege logs for August and September provided with your March 20, 2008 letter, and have updated the lists of specific entries that Mattel believes are improperly the subject of privilege claims and wishes to discuss. The updated lists are attached.

As explained previously, these lists roughly correspond to the following categories:

- <u>Appendix A</u> lists documents or communications that MGA still has logged and that Mattel continues to believe either are not privileged or, to the extent they may contain some privileged information, should be produced in redacted form.

- <u>Appendix B</u> lists documents or communications that MGA still has logged and that Mattel continues to believe either are not privileged, or contain non-privileged factual information such as trademark search results and date of first use information that should be produced in redacted form. Judge Infante stated at the hearing that he agreed with Mattel's position that such factual information must be produced.

- <u>Appendix C</u> lists documents or communications that MGA still has logged and that Mattel continues to believe either are not privileged or as to which, to the extent they

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712

Exhibit 9,
P. 63

contain privileged information at all, any applicable privilege has been waived because of disclosure to third parties such as Bandai. As Judge Infante stated at the March 10, 2008 hearing, MGA failed to make any showing as to Bandai and other involved third parties involved that could support application of the common interest exception.

• Appendix D lists documents or communications that MGA previously agreed should be produced, either in full or in redacted form. Mattel has been unable to determine whether MGA has yet produced these documents. Please confirm that MGA has done so and provide the applicable Bates-ranges.

Your letter asks that we confirm that there are "no other entries on the logs that are at issue." We have endeavored to make the attached lists as comprehensive as possible. However, given that MGA has undertaken a practice of producing multiple revised logs in varied formats, and through the meet and confer process has agreed to produce documents that Mattel cannot determine have actually been produced, Mattel reserves the right to identify additional problematic entries if necessary.

Your suggestion that Mattel should be precluded from challenging MGA's withholding of documents created after the commencement of litigation on the grounds that the parties have agreed not to log those documents, misses the point. Documents that are responsive and not privileged—regardless whether they are logged or not—should be produced.

Finally, your letter requests that I raise issues specific to the revised logs before our meet and confer. To that end, I ask that you provide Bates-ranges for those documents that the revised logs indicate have been redacted, and that Mattel have challenged. It may well be the case that our concerns as to some of these documents will be satisfied if we are able to review the redacted documents before the meet and confer. For your convenience, those entries (which are also set out in the attached lists) are as follows: Revised August Log Nos. 664r, 690r, 716r, 869r, 883r, 894r, 912r, 934r, 961r, 980r, 981r, 1010r, 1042r, 1055r, 1056r, 1060r, 1110r, 1113r, 1132r; Revised September Log Nos. 21.1r, 21.2r, 22.1r, 22.2r, 140.1r, 264.1r, 329.1r, 608.2r, 2854.2r, 2856.1r, 2856.3r, 2856.4r, 2856.5r, 2857.2r, 2857.3r, 2857.4r, 2857.5r.

Please let me know dates and times next week when MGA is available to meet and confer further on these matters. As trial is rapidly approaching, I hope we can resolve these matters expeditiously, and I look forward to hearing from you promptly.

Very truly yours,

Harry A. Oliver /2DF

Harry A. Olivar, Jr.

HAO

07209/2466358.1

2

Exhibit 9 ,
P. 64

## Appendix A

**Revised August Log:** Nos. 101.1, 101.6, 129.1, 135, 161.2, 263.2, 280.2, 283.1, 295.2, 312.1, 434.1, 457, 526.1, 561.1, 561.1, 561.2, 562.1, 562.12, 573.1, 574.1, 583.1, 584, 585.1, 585.2, 585.3, 586.1, 606, 651r, 653, 661, 662, 664r, 669, 690r, 692, 712, 713, 716r, 719, 730, 732, 733, 735, 744, 764, 767, 773, 775, 777, 790, 852, 853, 866, 867, 869r, 874, 883r, 894r, 900, 912r, 931.1, 933, 934r, 961r, 962, 963, 965, 966, 967, 968, 980r, 981r, 983, 984, 985, 990, 1010r, 1037, 1040, 1042r, 1043, 1047, 1055r, 1056r, 1057, 1058, 1060r, 1061, 1062, 1068, 1077, 1078, 1088, 1089, 1090, 1091, 1095, 1097, 1098, 1101, 1103, 1105, 1110r, 1112, 1113r, 1132r, 1821.3, 1821.2

**Revised September Log:** Nos. 21.1r, 21.2r, 22.1r, 22.2r, 139, 140.1r, 203.2, 210.2, 217.2, 218.2, 255.7, 264.1r, 266.1, 329.1r, 603, 608.1, 608.2r, 874.2, 891.1, 896.1, 930.1, 1000.3, 1013.1, 1013.7, 1021.1, 1021.2, 1022, 1036.4, 1036.6, 1047.3, 1047.7, 1047.8, 1058.1, 1058.3, 1058.4, 1063.1, 1072.1, 1072.3, 1081.2, 1107.1, 1107.3, 1134.1, 1134.3, 1193.2, 1193.3, 1193.4, 1193.5, 1193.6, 1193.7, 1193.8, 1193.9, 1421.1, 1421.4, 1424.2, 1577.2, 1635, 1636, 1661.1, 1798.3, 1801.2, 1801.3, 1812.3, 1815.2, 1815.3, 1903, 1912.1, 1981.1, 2071.1, 2199, 2200, 2201, 2202, 2369.5, 2399.11, 2407, 2408, 2409, 2410, 2411, 2412, 2413.1, 2414, 2416.2, 2417, 2418.2, 2419, 2420.1, 2422.1, 2449, 2803.1, 2816.3, 2818.4, 2818.4, 2819.3, 2821,2, 2831.1, 2831.2, 2832.3, 2835.3, 2835.4, 2836.3, 2839.3, 2839.4, 2839.5, 2839.6, 2853, 2854.1

**November Log:** Nos. 3, 8, 39, 71, 104, 134, 135, 175, 261, 267, 539, 546, 824, 1036, 1046, 1047, 1068, 1123, 1124, 1406, 1462, 1463, 1466, 1467, 1481, 1506, 1514, 1780, 1781, 1782, 1784, 1941, 1942, 2063, 2073, 2074, 2090, 2101, 2117, 2256, 2259, 2260, 2262, 2263, 2267, 2269, 2271, 2274, 2672, 2677, 2694, 2724, 2728, 2732, 2761, 2765, 2772, 2775, 2786, 2787, 2802, 2807, 2814, 2815, 2830, 2833, 2845, 2848, 2849, 2851, 2852, 2853, 3213, 3299, 3332, 2226, 2227, 2240, 3360, 3367, 3368

**January 23 Log:** Nos. 3, 6, 7, 8, 20, 30, 31, 32, 52, 57, 58, 59, 68, 70, 79, 96, 97, 102, 103, 104, 106, 107, 108, 110, 111, 114, 115, 129, 133, 150, 151, 152, 153, 154, 155, 156, 157, 158, 182, 196, 205, 209, 232, 233, 245, 253, 255, 262, 267, 287, 296, 297, 335, 336, 337, 338, 339, 341, 342, 343, 344, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 371, 372, 376, 381, 536, 544, 545, 546, 547, 548, 551, 557, 577, 578, 579, 580, 581, 584, 585, 588, 589, 591, 592, 593, 594, 595, 596, 597, 598, 599, 600, 601, 602, 603, 604, 609, 610, 611, 612, 614, 655, 656, 672, 683, 684, 693, 749, 759, 762, 764, 765, 767, 769, 771, 773, 782, 783, 784, 1023, 1066, 1067, 1068, 1069, 1070, 1071, 1072, 1073, 1074, 1075, 1076, 1077, 1078, 1083, 1172, 1173, 1178, 1179, 1254, 1262, 1275, 1277, 1281, 1285, 1287, 1292, 1301, 1302, 1306, 1309, 1318, 1322, 1324, 1356, 1360, 1364, 1365, 1366, 1367, 1374, 1399, 1413, 1414, 1418, 1420, 1421, 1424, 1435, 1437, 1438, 1439, 1440, 1460, 1463, 1465, 1468, 1471, 1473, 1474, 1475, 1476, 1509, 1525, 1529, 1536, 1587, 1603, 1609, 1618, 1622, 1623, 1624, 1625, 1627, 1635, 1641, 1646, 1655, 1662, 1701, 1702, 1703, 704, 1705, 1706, 1708, 1709, 1710, 1711, 1712, 1713, 1716, 1718, 1719, 1720, 1721, 1722, 1724, 1727, 1728, 1729, 1730, 1731, 1732, 1734, 1735, 1736, 1737, 1767, 1773, 1774, 1775, 1779, 1783, 1788, 1821, 1824, 1849, 1874, 1875, 1881, 1882, 1884, 1885, 1890, 1896, 1898, 1899, 1903, 1904, 1917, 1919, 1920, 1968, 1969, 1970, 1977, 1986, 1998, 2011, 2025, 2039,

2042, 2043, 2064, 2071, 2080, 2082, 2100, 2101, 2102, 2123, 2126, 2128, 2129, 2130, 2131, 2132, 2133, 2134, 2135, 2136, 2137 2144, 2149

**January 28 Log:** Nos. 3, 5, 8, 11, 15, 17, 27, 28, 30, 35, 36, 37, 41, 42, 43, 47, 48, 49, 50, 52, 53, 54, 55, 56, 57, 58  59, 60, 61, 64, 65, 66, 68, 69, 70, 71, 72, 74, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 93, 97, 104, 107, 110, 112, 115, 116, 117, 118, 119, 120, 123, 124, 133, 139, 140, 143, 145, 149, 150, 151, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 166, 167, 172, 173, 174, 175, 176, 182, 183, 185, 186, 187, 188, 189, 190, 192, 193, 215, 228, 233, 236, 239, 240, 244, 245, 247, 250, 254, 264, 268, 270, 276, 295, 296, 301, 302, 303, 304, 314, 315, 317, 318, 332, 340, 341, 356, 357, 361, 365, 367, 370, 371, 382, 402, 479, 500, 501, 502, 503, 504, 505, 506, 523, 559, 578, 604, 605, 606, 607, 610, 611, 619, 622, 630, 636, 638, 639, 668, 669, 670, 705, 706, 725, 726, 728, 729, 730, 731

**January 30 Log:** Nos. 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 36, 37, 38, 39, 40, 42, 49, 50, 66, 122, 124, 126, 152, 152, 153, 154, 155, 156, 157, 158, 211, 225, 226, 244, 245, 246, 247, 252, 257, 281, 282, 285, 287, 290, 291, 294, 295, 296, 297, 298, 299, 300, 301, 302

Exhibit 9 ,
P. 66

## **Appendix B**

**2005 Redactions Log:** Nos. 1, 2, 28, 29, 30, 31, 32, 50, 52

**Revised August Log:** Nos. 163.3, 436, 437, 531.3, 531.4

**Revised September Log:** 106.3, 1692.2, 1821.2, 1822.3, 2149, 2312.6, 2312.7, 2312.8, 2312.9, 2312.10, 2312.11, 2312.12, 2312.13, 2351.2, 2351.3, 2854.2r, 2856.1r, 2856.3r, 2856.4r, 2856.5r, 2857.2r, 2857.3r, 2857.4r, 2857.5r

**November Log:** Nos. 1, 2, 28, 29, 30, 31, 32, 52

**January 23 Log:** Nos. 2, 3, 4, 5, 6, 7, 8, 10, 12, 15, 16, 18, 19, 20, 25, 26, 27, 28, 29, 43, 50, 51, 52, 57, 70, 71, 72, 73, 74, 81, 96, 97, 110, 112, 122, 123, 151, 155, 159, 160, 161, 162, 163, 166, 167, 178, 195, 196, 197, 198, 200, 203, 204, 205, 206, 224, 225, 227, 248, 251, 252, 253, 262, 263, 291, 292, 293, 294, 295, 296, 370, 371, 372, 373, 376, 410, 416, 420, 421, 422, 426, 427, 428, 433, 487, 491, 498, 499, 500, 503, 505, 506, 527, 534, 544, 545, 546, 547, 548, 551, 591, 592, 593, 594, 595, 596, 597, 598, 612, 614, 615, 616, 618, 657, 658, 659, 660, 661, 662, 663, 664, 789, 800, 801, 802, 803, 804, 805, 923, 934, 936, 937, 939, 940, 941, 951, 953, 954, 955, 956, 957, 958, 959, 960, 961, 962, 963, 964, 965, 966, 967, 968, 969, 970, 971, 972, 973, 974, 975, 976, 977, 978, 979, 980, 981, 982, 983, 984, 985, 986, 987, 988, 989, 990, 991, 993, 994, 995, 996, 997, 998, 999, 1000, 1001, 1002, 1003, 1004, 1005, 1006, 1007, 1008, 1009, 1010, 1011, 1012, 1013, 1014, 1015, 1016, 1083, 1148, 1149, 1150, 1152, 1153, 1160, 1167, 1169, 1219, 1220, 1226, 1227, 1242, 1301, 1304, 1309, 1310, 1311, 1312, 1326, 1330, 1332, 1355, 1362, 1368, 1369, 1370, 1375, 1376, 1377, 1378, 1379, 1380, 1403, 1404, 1405, 1406, 1407, 1437, 1438, 1439, 1440, 1443, 1445, 1455, 1456, 1457, 1458, 1459, 1460, 1461, 1464, 1481, 1488, 1493, 1505, 1506, 1517, 1518, 1520, 1523, 1525, 1528, 1535, 1551, 1555, 1556, 1557, 1558, 1559, 1560, 1564, 1565, 1599, 1603, 1610, 1613, 1615, 1619, 1621, 1624, 1625, 1626, 1628, 1629, 1630, 1631, 1632, 1633, 1634, 1638, 1642, 1671, 1677, 1690, 1697, 1698, 1701, 1738, 1739, 1740, 1744, 1745, 1746, 1747, 1748, 1751, 1752, 1753, 1772, 1777, 1778, 1780, 1781, 1786, 1793, 1794, 1795, 1798, 1799, 1801, 1803, 1804, 1805, 1806, 1818, 1824, 1827, 1833, 1834, 1835, 1836, 1837, 1886, 1887, 1888, 1890, 1895, 1903, 1904, 1905, 1906, 1907, 1908, 1909, 1910, 1911, 1912, 1913, 1914, 1915, 1916, 1921, 1935, 1936, 1949, 1960, 1962, 1965, 1969, 1970, 2026, 2093, 2107, 2108, 2109, 2110, 2149

**January 28 Log:** Nos. 46, 47, 48, 49, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 65, 66, 67, 75, 76, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 104, 141, 142, 143, 144, 145, 146, 148, 149, 155, 156, 157, 158, 159, 160, 161, 162, 173, 174, 175, 185, 186, 187, 188, 228, 232, 357, 445, 447, 448, 453, 454, 455, 469, 472, 476, 479, 486, 487, 488, 507, 508, 509, 522, 528, 529, 533, 535, 536, 537, 561, 581, 674, 704, 709, 710, 711, 712, 719, 720, 721, 730, 731, 734

**January 30 Log:** Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 41, 42, 43, 44, 45, 90, 91, 210, 214, 215, 238, 281, 285, 287, 288, 289, 290, 291, 292, 301, 302, 303

Exhibit 9
P. 67

## Appendix C

**Revised August Log**: Nos. 132, 133, 369, 408, 409, 550.2, 632.2, 633, 641.1, 641.2, 657, 707, 726, 727, 831, 843, 987, 1000, 1064, 1065, 1066, 1067, 1068, 1069, 1070, 1071, 1072, 1073, 1074, 1075, 1079, 1080, 1081, 1082, 1106, 1107

**Revised September Log**: Nos. 183, 184.1, 184.2, 184.3, 185, 186.1, 186.2, 203.1, 209.1, 210.1, 217.1, 218.1, 730, 740.1, 740.2, 925.2, 1401, 1402, 1468, 1469, 1472, 1473, 1474, 1692.2, 1703.1, 1710, 1711, 1712.1, 1713.1, 1714, 1715, 1716, 1717, 1718.1, 1719, 1930, 1965, 2183, 2184, 2186, 2188, 2291, 2319, 2326.1, 2347.1, 2347.3, 2462.1, 2462.2

**November Log**: Nos. 80, 82, 83, 84, 85, 86, 261, 471, 778, 891, 921, 922, 923, 925, 926, 1291, 1337, 1434, 1437, 1438, 1439, 1440, 1443, 1444, 1445, 1446, 1453, 1685, 1816, 1817, 1823, 1825, 1844, 1853, 1878, 1889, 2238, 2533, 2534, 2793, 3004, 3005, 3312

**January 15 Log**: Nos. 31, 90, 169, 188

**January 23 Log**: Nos. 126, 278, 279, 280, 281, 613, 615, 616, 618, 619, 620, 630, 631, 633, 634, 644, 645, 646, 657, 658, 659, 660, 661, 662, 663, 664, 665, 666, 667, 674, 675, 679, 760, 1094, 1095, 1101, 1104, 1108, 1114, 1160, 1162, 1347, 1552

**January 28 Log**: Nos. 144, 146

**January 30 Log**: Nos. 41, 43, 44, 45, 46, 47, 48, 51, 217, 221, 223, 227, 230

Exhibit 9 ,
P. 68

### Appendix D

**August Log:** Nos. 18, 19, 22, 35, 369, 448, 521, 535, 537. 563, 571, 601, 621, 622, 623, 664, 669, 696, 697, 699, 716, 733, 735, 764, 773, 775, 777, 790, 852, 853, 854, 856, 857, 864, 865, 866, 867, 872, 874, 883, 898, 900, 912, 913, 914, 916, 933, 960, 961, 962, 963, 965, 966, 967, 968, 980, 981, 982, 983, 985, 990, 1037, 1040, 1042, 1043, 1047, 1055, 1056, 1057, 1062, 1070, 1082, 1083, 1084, 1088, 1090, 1091, 1097, 1098, 1105, 1110, 1113, 1115

**September Log:** Nos. 184, 185, 186, 472, 473, 489, 491, 492, 493, 521, 577, 699, 702, 740, 788, 890, 1170, 1369, 1522, 2012, 2013, 2015, 2016, 2274, 2293, 2295, 2326, 2360, 2868

7

Exhibit 9 ,
P. 67

# Exhibit 10

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-624-7707 FAX 213-624-0643

October 6, 2004

<u>VIA FACSIMILE AND MAIL</u>

Keith Jacoby
Littler Mendelson
2049 Century Park East, 5th floor
Los Angeles, CA 90067

RE:   <u>Mattel, Inc. v Carter Bryant</u>

Dear Mr. Jacoby:

       Please find a copy of Mattel's verification which is being supplied pursuant to the Court's October 5 order.  Accordingly, also pursuant to the Court's order, defendant is obligated to appear for deposition not later than 20 days from now.

       We are also enclosing a privilege log listing two documents that we are not producing due to the attorney/client privilege and work product doctrine.  The portion of the minutes that are not protected from disclosure by the attorney client privilege and work product doctrine concern matters that are not responsive to defendant's request and are irrelevant to the issues in this suit.  These documents relate to defendant's Request No. 48.  This log is being provided to defendant as an accommodation since you specifically raised the question about whether documents responsive to this request exist. The two documents listed in the log are the only two documents which Mattel has containing material responsive to this request.

       We will be providing under separate cover documents beginning with Bates Number M 0013207.

       Please feel free to call with any questions.

                                          Very truly yours,

                                          Gloria S. Donovan

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 110 Madison Avenue, 17th Floor, New York, New York 10016 · TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94104 · TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 46-025 Manitou Drive, Suite 3, Indian Wells, California 92210 · TEL 760-345-4747 FAX 760-345-2414
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 · TEL 858-812-4100 FAX 858-812-3336

Exhibit _10_,
P. _70_

**MATTEL v. CARTER BRYANT**
(07209)

**PRIVILEGE LOG**

| No. | Type | Date | From | To | Subject | Privilege |
|-----|------|------|------|-----|---------|-----------|
| 1 | Board of Directors Meeting Minutes | March 12, 2004 | -- | -- | Discussion of potential litigation matter | Attorney Client Work Product Doctrine |
| 2 | Board of Directors Meeting Minutes | April 26, 2004 | -- | -- | Discussion of potential litigation matter | Attorney Client Work Product Doctrine |

Exhibit 10,
P. 71

04760/611014.1

# Exhibit 11

## VERIFICATION

I, Grace MacArthur, am an officer of Mattel, Inc. ("Mattel"), a party to this action. I make this verification in accordance with the terms of the Court's order of October 5, 2004, as discussed by the parties and the Court at the hearing on said date.

Having conducted a diligent search and made reasonable inquiry, and subject to its privilege and other objections, Mattel has produced the documents referred to in the Court's order within its possession, custody or control.

I have personal knowledge of the matters stated herein or, where I do not have personal knowledge, I am informed and believe, and on that ground allege, that the foregoing is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6ᵗʰ day of October 2004 at El Segundo, California.

Signature: Grace MacArthur
Name: Grace MacArthur

Exhibit 10,
P. 72

36

**FILED**
LOS ANGELES SUPERIOR COURT

OCT 0 5 2004

JOHN A. CLARKE, CLERK

By _____ Deputy

| | |
|---|---|
| MATTEL, INC., a Delaware Corporation,<br><br>· Plaintiff,<br><br>v.<br><br>CARTER BRYANT, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. BC 314398<br><br>TENTATIVE RULING ON (1) MOTION TO COMPEL DEPOSITION AND (2) MOTION FOR A PROTECTIVE ORDER AND ESTABLISH THE SEQUENCE AND TIMING OF DISCOVERY<br><br>Hearing Date: October 5, 2004<br>Moving Party: Plaintiff (motion to compel) and Defendant (motion for protective order) |

Defendant Carter Bryant was hired by Plaintiff Mattel as a fashion designer for the "Barbie" line of toys from 1995 to April 1998, and in the Barbie Collections division from January 4, 1999 to October 2000. After leaving Mattel, Bryant started his own line of fashion doll, called "Bratz," which received much success. Mattel brings this lawsuit against Bryant for (1) Breach of Contract; (2) Breach of Fiduciary Duty; (3) Breach of Duty of Loyalty; (4) Unjust Enrichment; and (5) Conversion. Bryant filed his cross-complaint for (1) Unfair Competition; (2) Rescission; (3) Declaratory Relief; and (4) Fraud.

Plaintiff moves to compel the deposition of Plaintiff. The law is clear that Plaintiff is entitled to depose Defendant who is a party in this action. Although the federal magistrate judge denied Plaintiff its ex parte application to file a motion to compel deposition of Defendant, this Court is not bound by the federal court's local rules. California law is clear that "[a]ny party may obtain discovery...by taking in California the oral deposition of any person, including any party to the action...." CCP § 2025(a). The Court is inclined to grant Plaintiff's motion to compel.

However, Defendant has filed his motion for a protective order. Defendant is not contending that Plaintiff is not entitled to depose him. Rather, it appears that Defendant wants

1

Exhibit 11 ,
P. 73

Plaintiff to produce certain documents before the deposition, which will assist Defendant in preparation of his deposition. As such, Defendant seeks an order to establish the timing and sequence of the discovery requests. The Court is also inclined to grant Defendant's motion for a protective order.

Plaintiff is ordered to produce these documents or state in verified responses that none exists, and after a diligent search and reasonable inquiry, there are no such documents in Plaintiff's possession, custody, or control. Defendant is ordered to be deposed 20 days after Plaintiff produces these documents.

DATED:      October 5, 2004

GREGORY W ALARCON
SUPERIOR COURT JUDGE

2

Exhibit  11  ,
P.  74