UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
<u>CIVIL MINUTES -- GENERAL</u>

Case No.    CV 04-09049 SGL(RNBx)                          Date:  May 21, 2008
Title:         CARTER BRYANT -*v*- MATTEL, INC.

<u>Consolidated With Related Actions</u>:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
=====================================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

|  |  |
|---|---|
| Jim Holmes | Theresa Lanza |
| Courtroom Deputy Clerk | Mark Schweitzer |
|  | Court Reporters |

<u>ATTORNEYS PRESENT FOR CARTER BRYANT</u>:        <u>ATTORNEYS PRESENT FOR MATTEL</u>:

Christa M. Anderson                                        John B. Quinn
Matthew M. Werdegar                                    Michael T. Zeller
                                                                  Jon D. Corey

<u>ATTORNEYS PRESENT FOR MGA</u> <u>AND</u>
<u>ISAAC LARIAN</u>:

Thomas J. Nolan
Jason D. Russell

**PROCEEDINGS:**     **ORDER RE MOTION FOR RECONSIDERATION**

                            **ORDER RE THE PARTIES' MOTIONS FOR PARTIAL SUMMARY
                            JUDGMENT**

This matter is before the Court on the parties' motions for partial summary judgment and Carter Bryant's and MGA's motion for reconsideration.[1]  The motions were heard on April 22, 2008, and again on May 19, 2008.  On April 25, 2008, the Court issued an order granting in part, denying in part, and deferring in part the motions for partial summary judgment.

The Court now issues the following further rulings regarding the motions for partial summary judgment and the motion for reconsideration.

## MOTION FOR RECONSIDERATION

The motion for reconsideration is based on the new California Supreme Court case of <u>City of Hope Nat'l Medical Center v. Genentech, Inc.</u>, 43 Cal. 4th 375 (2008).  After fulling considering <u>City of Hope</u>, however, the Court finds that the case has little applicability to the present case and does not compel a conclusion regarding the existence of a fiduciary duty contrary to that reached by the Court.

<u>City of Hope</u> addresses whether a fiduciary duty can arise (or fail to arise) by <u>operation of law</u> due to the existence of confidential contractual relationship.  At issue in this case is whether the parties' agreement itself created a fiduciary duty.  Under California, these two situations that may give rise to a fiduciary duty -- operation of law or agreement -- are distinct, and California courts have long distinguished between the two.  Despite this clear distinction, Carter Bryant's partial summary judgment papers conflated these principles, as does the motion for reconsideration.

Related to these distinct legal concepts, there is a crucial factual difference between the present case and <u>City of Hope</u>.  The contract at issue in <u>City of Hope</u> did not contain any language that even arguably gave rise to a fiduciary duty.  In contrast, the contract at issue here, for the reasons set forth in the Court's April 25, 2008, Order, sets forth language that does give rise to such a duty.

MGA contends that this Court committed reversible error by holding that the language set forth in ¶ 1(a) of the Inventions Agreement created a fiduciary duty.  <u>City of Hope</u>, MGA contends, held that "the entrusting of secret or confidential information to another 'does not compel the imposition of fiduciary duties by operation of law.'"  Motion at 6 (quoting <u>City of Hope</u>).  As alluded to above, this argument, as well as the other two raised by MGA in the motion, overlooks both the differing contractual language in <u>City of Hope</u> and the present case, as well as the related legal distinction regarding the creation of fiduciary relationships.  Factually, the Inventions Agreement

---

[1]  At the hearing, upon representation of settlement between Mattel and Carter Bryant, and pursuant to the stipulation between Mattel and Carter Bryant, the motion is moot as to Carter Bryant.  However, the Court considers the motion because MGA has joined in the motion on the issue of fiduciary duty.  As set forth on the record, because the claims against Carter Bryant have been dismissed, the Court treats MGA as the moving party.

did more than merely entrust Bryant with confidential information; rather, as noted in the Court's first summary judgment Order, the Inventions Agreement explicitly conferred upon Bryant, and Bryant explicitly agreed to accept, a "position of trust" vis-à-vis that confidential information.  No such explicit undertaking is found in the agreement at issue in City of Hope, the relevant portions of which are set forth in the California Supreme Court opinion.

On that note, the portion of City of Hope upon which MGA relies to support its argument addresses when a fiduciary relationship arises by operation of law.  This argument is merely a continuation of Bryant's conflation, first appearing in Bryant's moving and opposition summary judgment papers, of fiduciary relationships that are created by contract and those that arise as a matter of law.  The Court's summary judgment holding clearly rests on the former; the arguments raised on reconsideration are premised on the latter.  Compare City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1050-51 (N.D. Cal. 2002) (cited by the Court and noting that a confidential relationship that gives rise to a fiduciary duty is created "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . .  voluntarily accepts or assumes to accept the confidence . . . .") with City of Hope, 43 Cal.4th 375, ___, 75 Cal. Rptr.3d 333, 347 (relied on by Bryant for the proposition that the entrusting of confidential information "does not compel the imposition of fiduciary duties by **operation of law**") (emphasis added).

Although the majority of the motion for reconsideration is unmeritorious, it raises important issues, which the Court must address, regarding the scope of the fiduciary duty created, as well as the breach thereof.

Although the parties argued at length as to whether the Inventions Agreement gave rise to a fiduciary duty, they did not focus on the scope of the fiduciary duty that was created.  As noted in the Court's April 25, 2008, Order, the Court held Bryant had undertaken such a duty:

> Bryant . . . owed a fiduciary duty to Mattel by virtue of the language set forth in ¶ 1(a) of the Inventions Agreement.  Id. ("The value of the Proprietary Information depends on it remaining confidential.  The Company depends on me to maintain that confidentiality, and I accept that position of trust.").

April 25, 2008, Order at 5.

The Court also concluded that Bryant had breached that duty:

> [T]he undisputed facts establish that Bryant breached his fiduciary duty to communicate his inventions to Mattel when, rather than doing so, he secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.

Id. at 6.

Upon re-examination of the Inventions Agreement, however, although the Court can conclude that, as a matter of law, Carter Bryant agreed to undertake a fiduciary duty vis-à-vis Mattel's confidential information, the Court cannot make the same conclusion -- as a matter of law -- regarding whether the fiduciary duty extends beyond Mattel's confidential information.

The language creating the fiduciary relationship appears in the section of the Inventions Agreement related to "Trade Secrets" and "Proprietary Information," and is preceded by language (in the same sentence) that Mattel depends upon employees to "maintain that confidentiality." Just above the signature line of the Inventions Agreement, reference is made again to "IMPORTANT OBLIGATIONS OF TRUST," but that language is clearly meant not to create new obligations, but rather to alert the employee that those obligations are created elsewhere within the agreement.

The question of whether an agreement creates a fiduciary duty is generally a question of fact, although a Court may resolve the question as a matter of law where the relevant facts are uncontroverted. See City Solutions, Inc. v. Clear Channel Communications, Inc., 201 F.Supp.2d 1048, 1051 (N.D. Cal. 2002); GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc., 83 Cal.App.4th 409, 417 (2000). Here, although the Court concludes as a matter of law that the Inventions Agreement imposed a fiduciary duty as to Mattel's confidential information, it cannot reach a similar conclusion regarding any broader duty based on the undisputed facts.

Accordingly, the Court **VACATES** the above-quoted language from its April 25 Order finding that Bryant breached his fiduciary duty and leaves the determination of whether Bryant's fiduciary duty beyond Mattel's confidential information as an issue for trial.[2]

One more point raised in the motion for reconsideration is worthy of note. Although Carter Bryant has been dismissed from the case, he raised at least one issue in his motion, in which MGA has not joined, that should not pass without comment by this Court.[3] Clearly, and perhaps understandably, counsel for Carter Bryant were disappointed by the Court's rulings as set forth in the first summary judgment order.[4]

---

[2] The Court also notes that its previous holding necessarily rested on a finding that the materials provided to MGA were indisputably Mattel's property. As set forth in section I, relating to the summary judgment breach of contract issue, that conclusion cannot be drawn as a matter of law on the undisputed facts, and thus summary judgment may not appropriately be granted.

[3] Upon the Court's expression of concern regarding this issue at the hearing on this matter, counsel for MGA explicitly disavowed any joinder in this part of Bryant's motion.

[4] The Court addresses this part of the Order to counsel because counsel are officers of the Court and authors of the comment at issue. The Court also references "counsel" in the plural rather than the singular because all counsel -- author, editor, and signatory -- who were involved in this comment bear responsibility therefor.

However, in addressing what they saw as the deficiencies in the Court's Order, counsel painted with far too broad a brush.  Rather than focus the Court's attention on a discrete issue -- or even a number of discrete issues -- counsel resorted to broad language incorporating every argument raised in their summary judgment papers and, without articulated foundation, impugns the integrity of this Court's deliberative process.  Nowhere is this more clear than in footnote 7 of the motion for reconsideration; accordingly, the Court's discussion focuses on that portion of the motion, which reads as follows:[5]

> In deciding Mattel's motion for summary judgment, the Court should have applied this standard in Bryant's and MGA's favor.  On this issue, and many others, the Court has failed to do so, instead accept Mattel's views of disputed facts and ignoring material factual disputes.  Indeed, the Court declined to address objections to evidence, apparently and summarily sustaining all Mattel's objections while denying all Bryant's.  Bryant will not reiterate here all of the disputed facts and issues precluding summary judgment in Mattel's favor, which already appear in his (and MGA's) summary judgment briefing and supporting papers.

Motion at 11 n.7.

With this footnote, counsel first takes issue with the Court's application of the summary judgment standard, of which counsel and the Court are well aware.  This standard requires the Court to view the evidence in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of the doubt of both any disputes of fact and all reasonable inferences to be drawn from the evidence.  Nevertheless, the Court's focus is on *material* facts, and the determination of what constitutes a material fact is shaped by legal rulings made by the Court.  Some facts that seem material to the parties under their legal theories become immaterial in light of the Court's rulings that reject those theories.

In footnote 7, counsel misrepresents the Court's treatment of the evidence offered in support of and in opposition to the three motions for partial summary judgment.  Bryant states that the Court "apparently summarily sustain[ed] all Mattel's objections [and] den[ied] all Bryant's [evidentiary objections]."  Id.  However, the Court merely noted that, where a ruling necessarily relied upon evidence to which parties had made objections, the objections thereto were implicitly overruled:

---

[5] Footnote 7, however, is not the only offending portion of the motion for reconsideration.  See e.g., Motion at 2 n.1 (referring to "the Order's other errors, including misapplication of the summary judgment standard," stating that those errors "will also require correction," but noting that the motion "does not discuss those flaws in detail"); motion at 9 n.5 (incorporating unspecified portions of his summary judgment briefing).

> The parties have made hundreds of objections to evidence offered in support of and in opposition to the motions for partial summary judgment.  Although counsel for Bryant requested explicit rulings on the objections raised by Bryant, the Court declines to do so.  To the extent that this Order necessarily relies on evidence subject to any party's objection, the objections are implicitly overruled.

April 25, 2008, Order at 1-2.  This is a vastly different statement than that made by counsel.  Counsel's characterization of the Court's ruling implies that the Court, without inquiry into the merits of Bryant's objections, arbitrarily denied them all.  The Court's Order merely recognizes that, by operation of law, to the extent a court relies upon objected-to evidence, and where, as where, the evidence must be admissible to be relied upon for such ruling, any objections raised thereto are implicitly overruled.

In addition to mounting an overly broad -- and baseless -- attack on the integrity of the Court's deliberative process on a grand scale, counsel fail to support the more narrow point they appear to be making in footnote 7.  Footnote 7 is appended to text that takes issue with the Court's conclusion that Bryant did nothing more than merely "prepare to compete" with his employer and, thus, in Bryant's view, did not breach his duty of loyalty or fiduciary duty.  See Motion at 10.

Although the footnote does not alert the Court to any particular material facts -- disputed or undisputed -- which counsel contend were overlooked by the Court, the text to which the footnote is appended provides valuable clues on this issue.  From this text, the Court's attention is directed to Bryant's Opposition at 23-24.  The Court notes that the pages of that document refer to no factual contentions; rather, those pages are devoted to legal arguments and conclusions.  However, reading further in the opposition, at page 29, the Court finally encounters a citation to the facts upon which counsel rely.  They reference "SGI 151" and SGI "154-156".

Although obvious to counsel who practice in this district, and certainly to counsel of record here, to guide the uninitiated, the Court notes that in a summary judgment opposition filed in this Court, "SGI" clearly refers to the "Statement of Genuine Issues" filed by a party opposing a summary judgment motion.  See Local Rule 56-2.  Referring to that document, found at docket # 2778, one finds that material facts are numbered sequentially, and that "SGI 151" refers to the fact numbered "151."  The subsequently cited facts, "154-156," not surprisingly, are found on the page that follows.

Having thus traversed this far to ascertain the material facts upon which counsel relies for its sweeping criticism of the Court's deliberative process, the Court notes those facts below.

Bryant signed the MGA contract on October 4, 2008, and gave notice of his resignation to Mattel the same day.  SGI 151.  Before Bryant left Mattel, he told various Mattel employees, including managerial employees, that he was going to start his own business as a freelance designer, working on his own doll line as an independent contractor.  SGI 154.  Mattel's exit interview form for Bryant reflects that during his exit interview, he told Mattel's HR representative,

Sandy Yonemoto, that he was leaving for a new job as a "business owner" in "illustration/product design" because an "[o]pportunity arose -- had to take it."  SGI 155.  Bryant did not tell anyone at Mattel that he was leaving Mattel to work with a non-competitor, nor did Mattel inquire.  SGI 156.

In accordance with the summary judgment standard, the Court viewed these facts in the light most favorable to Bryant.  However, on the "preparations to compete" point, these facts are not material.  They relate to the circumstances of his departure; essentially, Bryant's point is that he did not lie to Mattel when he left.  Although this may well be true, the circumstances surrounding the announcement of his resignation and the last days of his employment with Mattel tell only part of the story.

Even assuming Bryant gave notice of his resignation to Mattel the same day he signed his contract, it is uncontroverted that he continued working for Mattel after that date; so Bryant's fact, which tends to imply that he made a clean break with Mattel the moment he established a contractual relationship with MGA, becomes immaterial when viewed in connection with the uncontroverted fact that he continued working for Mattel after he signed his MGA contract, as the latter fact neutralizes the implication presented by the former fact when it stood alone.  Additionally, notwithstanding the fact that Bryant gave notice of his resignation the same day he signed his contract, the substance of his contract remains the same, including Bryant's agreement to begin working for MGA on a "top priority" basis, as does the undisputed fact that he entered into a contract with Mattel's competitor to produce a competing product while he was still employed by Mattel.

Moreover, the fact that he gave Mattel various descriptions of what he intended to do professionally *in the future*, any one of which might imply that he was leaving to pursue independent interests that would compete with or had a tendency to compete with Mattel, similarly does not detract from his past and/or then-present actions, or the fact that he was already under contract to compete with Mattel.

Thus, counsel's criticism of the Court's deliberative process is both overly broad and unfounded.  Perhaps footnote 7 should come as no surprise to the Court.  The parties in this action are engaged in what they themselves have described as high-stakes "corporate warfare." However, whatever the rules of engagement may be for such warfare, those rules are decidedly **not** representative of the standard of conduct which the parties -- and their counsel -- should look to for guidance as to how they should conduct themselves in or before this Court.

Counsel for Carter Bryant, and indeed, all counsel in this case and who practice before this Court, are strongly urged to concisely and precisely articulate their requests for relief in a manner that refrains from the unintentional impugning of the integrity of the Court's deliberative process. Counsel for all parties are reminded that this Court has extended to all counsel and all parties a similar professional courtesy.

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** the motion for

reconsideration.  The Court **VACATES** that portion of its April 25, 2008, order that found, as a matter of law, that Bryant breached his fiduciary duty.

## MOTIONS FOR PARTIAL SUMMARY JUDGMENT

## I. BREACH OF CONTRACT

Mattel seeks summary judgment on its breach of contract claim.  Resolution of the breach of contract issue is largely an issue of timing.

There are undisputed facts regarding the timing of the creation of three categories of materials, but there are factors regarding each of these three categories that preclude a grant of summary judgment at this time.

Specifically, it is uncontroverted that four drawings (each with a color and a black-and-white version) of dolls in evening wear, were created by Bryant during the period of his employment with Mattel.  However, the scope of the rights that may be assigned to Mattel under the Inventions Agreement is unclear in light of the larger disputed factual issue regarding the remaining Bratz drawings.

It is also undisputed that, during the period of his employment, Bryant created a dummy doll, anticipating it would used in his pitch of Bratz to MGA.  However, this dummy is apparently no longer in existence, and therefore the scope of any rights owned by Mattel cannot be ascertained from the undisputed facts.

Finally, it is undisputed that a drawing by Bryant, from which the sculpt of the Bratz doll was made, was created during the period of Bryant's employment with Mattel.  However, the record also reflects that this drawing was made on the basis of an earlier sculpt, and the record is not entirely clear as to who had input into that sculpt, nor is it clear what, if any, legal conclusions the Court could draw from a clear record on this issue.

Additionally, the larger timing issue regarding the remaining Bratz drawings, as admitted by the parties, involve triable issues of fact.

Accordingly, the Court **DENIES** Mattel's motion for summary judgment as to its claim for breach of contract.

## II. COPYRIGHT INFRINGEMENT

In order to establish copyright infringement, a plaintiff must establish three elements: (1) ownership of a valid copyright, (2) the defendant's access to the original, and (3) substantial similarity between the copyrighted work and the allegedly infringing work.  Lamps Plus, Inc. v. Seattle Lighting Fixture Co., 345 F.3d 1140, 1144 (9th Cir. 2003).

Here, Mattel asks the Court to undertake the fact-specific determination involved in the third element, aided in large part by expert testimony, when the first element is clearly in dispute. Although often summary adjudication of one element of a claim is appropriate, such is not the case here.  In order to undertake the substantial similarity analysis, the Court must compare a copyrighted work with an allegedly infringing work.  The Court may not perform a meaningful substantial similarity analysis without the copyrighted work that is the foundation of that analysis.

Accordingly, the Court **DENIES** Mattel's motion for summary judgment on this issue.

### III.  AIDING AND ABETTING

MGA and Larian are accused of aiding and abetting Bryant's breach of the duty of loyalty and breach of fiduciary duty.

For reasons ably set forth by counsel for MGA at the hearing, the Court finds that there are triable issues of fact as to the issue of aiding and abetting any breaches of the duty of loyalty and fiduciary duty by Carter Bryant and therefore **DENIES** Mattel's motion for summary judgment on this issue.

### IV. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

MGA moved for summary judgment as to Mattel's claim for intentional interference with contractual relations.  The Court previously denied MGA's motion, noting however, that the first, third, and fifth elements were met, and that Mattel has raised a triable issue of fact as to the second element.[6]

However, upon reflection, and in light of the Court's ruling regarding the aiding and abetting claims, the Court now concludes that, although Mattel has raised a triable issue of fact regarding the third element, the Court may not at this point conclude that the undisputed facts establish the third element.  The Court leaves undisturbed its ruling that Mattel has raised a triable issue of fact as to the second element.

As set forth above, Mattel has also raised triable issues of fact regarding its claim for breach of contract, the fourth element.

Despite these minor changes in the Court's previous ruling, the disposition of this portion of

---

[6]  The elements of a claim for intentional interference with contractual relations are stated as (1) a valid contract between a plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.  Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp., 461 F.Supp.2d 1188, 1193 (C.D. Cal. 2006) (citing Pac. Gas & Elec. Co. v. Bear Stearns Co., 50 Cal.3d 1118, 1126 (1990)).

MGA's motion remains unchanged:  MGA's motion is **DENIED** to the extent it seeks summary judgment on Mattel's claim for intentional interference with contractual relations.

## V. UNFAIR COMPETITION

As noted by counsel for MGA at the May 19, 2008, hearing, the Court's first summary judgment left unaddressed Mattel's statutory unfair competition claim to the extent that is based on fraudulent conduct.  Mattel did not contend in opposition to MGA's motion for partial summary judgment that this claim was based on any fraudulent conduct.

In its first summary judgment order, the Court eliminated two bases for Mattel's statutory unfair competition.  See April 25, 2008, Order (referring to the unfair competition claim to the extent it is based on copyright infringement and to the extent it is based on unfair conduct).  The Court now holds that this third basis can also be eliminated at this time.

## VI. STATUTE OF LIMITATIONS

At the second hearing on the motions for partial summary judgment, for the first time, counsel for MGA referenced evidence in support of its statute of limitations argument, attached to a declaration that had not been served on opposing counsel and that had been filed earlier the same afternoon. Counsel thereafter made legal arguments regarding the conclusions to be drawn from this evidence.

Mattel had little opportunity to respond to MGA's arguments, as it was not entirely clear at the hearing to what evidence MGA referred in making its arguments.  Accordingly, the Court has afforded Mattel the opportunity to respond to this argument and therefore **DEFERS** ruling on the statute of limitations issue until the Court has had the opportunity to review Mattel's response.

**IT IS SO ORDERED.**