QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>    Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09039<br>Case No. CV 05-02727<br><br>**MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO ENFORCE TRIAL SUBPOENAS ISSUED TO ANA CABRERA AND BEATRIZ MORALES; AND**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Declaration of Cyrus Naim filed concurrently]<br><br>Hearing Date:  August 4, 2008<br>Time:         10:00 a.m.<br>Place:        Courtroom 1<br><br>**Phase 1**<br>Pre-trial Conference:  May 19, 2008<br>Trial Date:            May 27, 2008 |

07209/2514761.2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 4, 2008, at 10:00 a.m., or as soon as counsel may otherwise be heard, in the courtroom of the Honorable Stephen G. Larson, located at 3470 Twelfth Street, Riverside, California 92501, plaintiff and counter-defendant Mattel, Inc. ("Mattel") will, and hereby does, move the Court to enforce trial subpoenas issued to Beatriz Morales and Ana Cabrera.

This Motion is made pursuant to Fed. R. Civ. Proc. 45 on the grounds that the subpoenas were duly and properly served upon each of these witnesses requiring them to appear as witnesses at trial and furnish documents regarding the subjects of their testimony, but the witnesses have refused to appear with any of the documents requested.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of James Webster and exhibits filed concurrently, and all other matters of which the Court may take judicial notice.

**Statement of Rule 7-3 Compliance**

Counsel for the Mattel and third-parties Ana Cabrera and Beatriz Morales met and conferred regarding the issues presented by this Motion on May 21, 2008, but were unable to resolve the issues presented herein.

DATED: May 23, 2008        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ James J. Webster
   James J. Webster
   Attorneys for Mattel, Inc.

07209/2514761.2

-2-
MATTEL'S MOTION TO ENFORCE TRIAL SUBPOENAS

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ..................................................................................... 2

ARGUMENT ............................................................................................................... 8

I.    MS. CABRERA AND MS. MORALES CANNOT RELY ON THEIR FIFTH AMENDMENT RIGHTS TO REFUSE TO APPEAR WITH THE DOCUMENTS AT TRIAL ................................................................... 8

II.   THE DOCUMENTS AT ISSUE ARE CLEARLY RELEVANT .................... 9

III.  THE DOCUMENTS ARE NOT UNDULY BURDENSOME, AND ARE NOT SUBJECT TO ANY PRIVACY RIGHTS ................................... 11

IV.  THE TRIAL SUBPOENAS DO NOT CONSTITUTE IMPROPER DISCOVERY ................................................................................................ 11

V.   MS. MORALES RECEIVED ALL WITNESS FEES .................................. 13

CONCLUSION .......................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

### Cases

Atkins v. County of Riverside,
   2007 WL. 469859 (C.D. Cal. 2007) ................................................................. 12

CF & I Steel Corp. v. Mitsui & Co. (U.S.A.), Inc.,
   713 F.2d 494 (9th Cir. 1983) ............................................................................. 13

Fisher v. U.S.,
   425 U.S. 391 (1976) ............................................................................................ 9

Glover v. BIC Corp.,
   6 F.3d 1318 (9th Cir. 1993) ............................................................................... 11

Griffin v. Davis,
   161 F.R.D. 687 (C.D. Cal. 1995) ...................................................................... 10

I.C.C. v. Gould,
   629 F.2d 847 (3d. Cir. 1980) ............................................................................... 9

Integra Lifesciences I, Ltd. v. Merck KGaA,
   190 F.R.D. 556 (S.D. Cal. 1999) ...................................................................... 12

Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.,
   2003 WL 21230605 (N.D. Ill. 2003) ................................................................ 10

Leon v. IDX Systems Corp.,
   464 F.3d 951 (9th Cir. 2006) ............................................................................. 10

Puritan Inv. Corp. v. ASLL Corp.,
   1997 WL. 793569 (E.D. Pa. 1997) ................................................................... 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Defendants and their agents have repeatedly thwarted Mattel's ability to investigate the facts regarding MGA's use of Mattel employees to secretly work on Bratz. This motion concerns the latest such attempt; by this motion Mattel seeks an order that Ana Cabrera and Beatriz Morales -- sample makers who worked on Bratz while employed by Mattel -- appear at trial with documents relating to their secret work.

Mattel first learned of the secret work by Ms. Cabrera and Ms. Morales on Bratz at the deposition of Veronica Marlow on December 28, 2007. Until then, defendants had steadfastly maintained that Carter Bryant was the <u>only</u> Mattel employee who worked for MGA or on Bratz while still employed by Mattel.

Once Mattel learned of their conduct, it issued subpoenas for their depositions. These depositions were then unilaterally canceled, and numerous motions were filed that ultimately succeeded in delaying the depositions for three months. Finally, once the depositions were taken, Ms. Cabrera and Ms. Morales repeatedly invoked an alleged Fifth Amendment right as a basis for refusing to answer questions.

At their depositions, each was served with amended trial subpoenas, seeking certain documents to permit Mattel to prepare for trial. Now, having liberally taken the Fifth Amendment in relation to their secret work on Bratz, both witnesses have refused to appear with any such documents, asserting a host of improper objections. Because the objections are meritless, Ms. Cabrera and Ms. Morales should be ordered to comply with the subpoenas.

**Factual Background**

**Mattel's discovery of the existence of Cabrera, Morales, and Salazar.**  On December 28, 2008, Veronica Marlow revealed at her deposition that, beginning in 2000 and continuing for five years, three Mattel employees—Ana Isabel Cabrera, Beatriz Morales, and Maria Salazar—worked on Bratz while employed by Mattel.[1]  Like Bryant, Cabrera, Morales, and Salazar all signed agreements assigning Mattel all rights to intellectual property they created while employed by Mattel.[2]

Following the deposition, Mattel interviewed Ms. Cabrera and Ms. Morales, who were still Mattel employees.  Both admitted to working on Bratz until 2005, and to knowing this was wrong.[3]  Both specifically acknowledged that they continued to work on Bratz even after Mattel had made them aware of this litigation involving Bryant's secret work with MGA and reiterated the need to protect Mattel's intellectual property.[4]  Both admitted that they tried to hide their tracks by receiving cash payments under false names and false social security numbers.[5]

**Defendants' Attempts to Prevent the Depositions.**  Mattel subpoenaed the three employees, with deposition dates of January 24, 2008 for Ana

---

[1]  Transcript of the Deposition of Veronica Marlow dated December 28, 2007 ("Marlow Depo. Tr.") at 306:14-308:1, 363:15-365:17, Naim Dec., Exh. 1.
[2]  Naim Dec., Exhs. 2-4.
[3]  Transcript of interview of Ana Cabrera, dated January 2, 2008 ("Cabrera Int. Tr.") at 117:10-118:8, Naim Dec., Exh. 5; Transcript of interview of Beatriz Morales, dated January 14, 2008 ("Morales Int. Tr.") at 24:14-25:14, 27:11-17, Naim Dec., Exh. 6.
[4]  Cabrera Int. Tr. at 39:25-40:20, 46:3-22, Naim Dec., Exh. 5; Morales Int. Tr. at 24:14-25:14, 27:11-17, 31:12-32:12, Naim Dec., Exh. 6.
[5]  Cabrera Int. Tr. at 118:3-119:23, Naim Dec., Exh. 5; Morales Int. Tr. at 115:2-20, Naim Dec., Exh. 6.

Cabrera, January 25, 2008 for Beatriz Morales, and January 28, 2008, for Maria Salazar.[6]

On January 23, 2008—literally the eve of the Cabrera deposition—Mattel received a letter from an attorney, Maria Diaz, stating that she represented Cabrera and Morales.[7] Counsel for MGA and Bryant were copied on that letter. Ms. Diaz stated that Cabrera and Morales would simply not appear.[8] The same day, MGA filed a Motion to Quash several deposition subpoenas, including those for Cabrera, Morales and Salazar.[9] On January 24, 2008, MGA wrote to Mattel stating that it considered the depositions of all witnesses addressed in its Motion to Quash to be "off" and—despite MGA's having already been in contact with Ms. Diaz—insisting that Mattel contact the subpoenaed witnesses to inform them that the depositions were not proceeding.[10] MGA's counsel then informed Mattel on Sunday, January 27, 2008, that it also represented Ms. Salazar, and that she would not appear for deposition either.[11] Given the imminent discovery cut-off date,

---

[6] Naim Dec., Exhs. 7, 8, 9.
[7] Facsimile from Maria Diaz to James Webster dated January 23, 2008, Naim Dec., Exh. 10.
[8] Id.
[9] See MGA Defendants' Notice Of Motion And Motion To Quash Deposition Subpoenas And Memorandum In Support, dated January 23, 2008, Docket No. 1675. That motion was amended on January 24, 2008, to include Maria Salazar. See Docket No. 1679.
[10] Letter from Paul M. Eckles to Jon D. Corey dated January 24, 2008, Naim Dec., Exh. 11.
[11] Email from Paul M. Eckles to James Webster dated January 27, 2008, Naim Dec., Exh. 12. Mattel had previously asked counsel for MGA if it represented Ms. Salazar, and would accept service on her behalf, but counsel did not notify Mattel that it did. [Public Redacted] Declaration Of Michael T. Zeller In Support Of Reply In Support Of Mattel, Inc.'s Ex Parte Application To Compel The Appearance For Deposition Of Ana Cabrera, Beatriz Morales, Maria Salazar, And Mel Woods, dated February 1, 2008, at ¶ 2, Naim Dec., Exh. 13.

Mattel moved *ex parte* to compel the depositions of Ms. Cabrera, Ms. Morales, and Ms. Salazar.[12]

Judge Larson referred the issue to the Discovery Master, and the Discovery denied the motion to quash on March 11, 2008.[13] Mattel then contacted counsel for these witnesses on March 13, 2008 seeking dates for deposition.[14]

On March 19, 2008, Mattel finally received a response from Ms. Diaz providing deposition dates for Cabrera and Morales.[15] Despite the fact that these witnesses were first noticed for deposition on January 24 and 25, and despite the March 11, 2008 Order, Ms. Diaz stated that the witnesses would not appear for almost another month and that the first dates on which they could appear were April 15 and 18, 2008—over two-and-a-half months since they were first noticed, and less than a month-and-a-half before trial is set to commence.[16] Mattel stated that, given the prior cancellation and the delay, it expected counsel to sign a stipulation ensuring that the depositions proceed on those dates, as Mattel could not risk waiting, only to have the depositions cancelled at the last minute yet again.[17]

Ms. Diaz, however, stated that she would agree only on the condition that Mattel add language to the stipulation specifically limiting their use to this

---

[12] Mattel, Inc.'s Ex Parte Application To Compel The Appearance For Deposition Of Ana Cabrera, Beatriz Morales, And Maria Salazar, dated January 28, 2008, Docket No. 1722.
[13] Order Re MGA Defendants' Motion to Quash Deposition Subpoenas, dated March 11, 2008 ("March 11, 2008 Order"), Naim Dec., Exh. 14.
[14] Letter from James J. Webster to Maria Diaz dated March 13, 2008, Naim Dec., Exh. 15; Letter from James J. Webster to Marcus Mumford dated March 13, 2008, Naim Dec., Exh. 16.
[15] Facsimile from Maria Diaz to James J. Webster, dated March 19, 2008, at 12:25 p.m., Naim Dec., Exh. 17.
[16] Id.
[17] Facsimile from James J. Webster to Maria Diaz, dated March 25, 2008, and sent at 5:15 p.m., Naim Dec., Exh. 18.

case.[18]  Because the limitations went beyond those Mattel would be obligated to follow under the protective order, Mattel rejected this proposal on that basis, and again requested that she sign the stipulations.[19]  Counsel refused.[20]  Counsel stated that if her position was not satisfactory to Mattel, Mattel should "raise it with the Court and give me notice of the same."[21]  MGA, for its part, appealed the March 11, 2008 Order, and stated that its appeal "moot[ed]" any basis for deposing Ms. Cabrera, Ms. Morales, or Ms. Salazar,[22] despite the fact that there was no stay pending that appeal.  Ultimately, the parties appeared before this Court at a telephone conference, where defendants finally agreed to allow these depositions to proceed.[23]

**Ms. Morales and Ms. Cabrera Obstruct Their Depositions by Assertion of the Fifth Amendment.**  After Mattel noticed the depositions of Cabrera and Morales, a meeting was held between Cabrera, Morales, their attorney

---

[18]  Facsimile from Maria Diaz to James J. Webster, dated March 28, 2008, Naim Dec., Exh. 19.  Specifically, Ms. Diaz asked that Mattel agree to the following additional language:
   "The deposition transcripts of Ana Cabrera and Beatriz Morales are to be deemed confidential, for purposes of this action only and will not be utilized for any other proceeding.  The deposition transcripts shall be disclosed only to attorneys for the parties, parties in litigation, and to the court having jurisdiction over this matter.
   This stipulation and order survives the conclusion, whether by settlement, order or judgment, of this litigation." Id.
[19]  Email from Cyrus Naim to Maria Diaz, Marcus Mumford, and Matthew Werdegar, dated March 31, 2008, Naim Dec., Exh. 20; email from Michael Zeller to Cyrus Naim, Maria Diaz, Marcus Mumford, and Matthew Werdegar, dated April 2, 2008, Naim Dec., Exh. 21.
[20]  Email from Maria Diaz to Cyrus Naim, Michael Zeller, Marcus Mumford, and Matthew Werdegar, dated April 2, 2008, Naim Dec., Exh. 22.
[21]  Id.
[22]  Email from Marcus Mumford to James J. Webster, dated March 25, 2008, at 5:32 p.m., Naim Dec., Exh. 23.
[23]  Transcript of Proceedings dated April 9, 2008, at 4:21-8:12, Naim Dec., Exh. 24.

(whose fees are paid by Ms. Marlow),[24] both Marlows and their attorney, McFarland (whose fees are in turn by MGA).[25]  When Mattel took these depositions, both Morales and Cabrera refused to answer a number of critical questions.  For example, Morales invoked the Fifth Amendment and refused to answer questions regarding whether she hid her involvement with Bratz from Mattel by, among other things, receiving payment for her work under somebody else's name.[26]  Morales also invoked the Fifth Amendment and would not answer questions as to whether she received or signed receipts for payments by Ms. Marlow for her work on Bratz,[27] and refused even to identify her signature on numerous timesheet records.[28]  Cabrera also invoked the Fifth Amendment and refused to authenticate her signature or confirm whether certain time entries reflected work that she had done on Bratz.[29]

        Morales' and Cabrera's decisions to invoke their Fifth Amendment rights was surprising given that they had freely disclosed that information during their consensual interviews in January 2008.  However, at deposition, they both

---

[24] Transcript of the deposition of Beatriz Morales, dated April 28, 2008 ("Morales Depo. Tr.") at 39:20-40:18, Naim Dec., Exh. 25; transcript of the deposition of Ana Cabrera, dated May 8, 2008 ("Cabrera Depo. Tr.") at 29:11-17, Naim Dec., Exh. 26.

[25] See letter dated March 18, 2005 from Alice Meyer to Stephen Contopulos, KMW-M 008154, Naim Dec., 27.  See also letters dated June 1, 2007 from McFarland to Peter and Veronica Marlow (stating, "The fees and costs incurred with respect to our representation of you as set forth above will be paid by a third party pursuant to a separate retainer agreement."), KMW-M008150-53, Naim Dec., Exh. 28.

[26] Morales Depo. Tr. at 179:14-181:5, 182:2-18, 197:21-201:5, Naim Dec., Exh. 25.

[27] Morales Depo. Tr. at 195:8-22, Naim Dec., Exh. 25.

[28] Morales Depo. Tr. at 183:16-184:6, 195:8-22, 201:6-202:23, Naim Dec., Exh. 25.

[29] Cabrera Depo. Tr. at 184:5-185:9, 186:22-187:13, 187:24-188:20, Naim Dec., Exh. 26.

revealed that since those interviews Veronica Marlow had agreed to pay their attorney's fees.[30] Marlow, in turn, is financed by MGA.

**Mattel's Trial Subpoenas.** During the depositions of Ms. Morales and Ms. Cabrera, Mattel served each with amended trial subpoenas, asking them to appear for trial and bring documents related to their work on Bratz.[31] In particular, Mattel asked that they produce:

> (1) All original documents relating to any work you did at any time for Veronica Marlow or any corporate entities with which she is affiliated.
>
> (2) All original documents relating to work you did for MGA at any time.
>
> (3) All original records relating to or reflecting payments you received from Veronica Marlow or any corporate entities with which she is affiliated, including but not limited to tax records.
>
> (4) All original records reflecting payment of your attorneys fees in connection with this action.[32]

In response to the subpoenas, Ms. Cabrera and Ms. Morales refused to appear with any documents at trial.[33] Each propounded numerous objections to the requests, including assertions that the documents at issue were not relevant, that the

---

[30] Morales Depo. Tr. at 39:20-40:18, Naim Dec., Exh. 25; Cabrera Depo. Tr. at 29:11-17, Naim Dec., Exh. 26.

[31] Naim Dec., Exhs. 31, 32. Mattel had previously served each with trial subpoenas for their appearance at trial, but without a request that they bring documents. See Naim Dec., Exhs. 29, 30.

[32] Naim Dec., Exhs. 31, 32.

[33] Naim Dec., Exhs. 33, 34. Ms. Cabrera and Ms. Morales stated that they had no documents responsive to Request No. 2, but made no such claims with respect to Requests 1 and 3-4. Id.

07209/2514761.2
-7-
MATTEL'S MOTION TO ENFORCE TRIAL SUBPOENAS

requests were overbroad and violated their privacy rights, and that they constituted discovery after the discovery cut-off. Each also invoked their Fifth Amendment rights against self-incrimination as a basis for refusing to provide documents.[34]

Finally, Ms. Morales objected on the additional grounds that she had not received the requisite witness fees at the time of the issuance of the subpoena,[35] even though she had <u>already</u> <u>received</u> these witness fees in connection with the original trial subpoena Mattel served on April 6, 2008.[36] At the meet and confer on these issues, counsel for the witnesses refused to withdraw any of the objections and stated the documents would continue to be withheld.[37]

## **Argument**

### I. **MS. CABRERA AND MS. MORALES CANNOT RELY ON THEIR FIFTH AMENDMENT RIGHTS TO REFUSE TO APPEAR WITH THE DOCUMENTS AT TRIAL**

Ms. Cabrera and Ms. Morales are impeding Mattel's preparation for trial through their assertion of the Fifth Amendment. Mattel does not have access to every document that these witnesses have in their possession, and so cannot challenge the assertion that many of the documents being withheld fall within Fifth Amendment protections. Nevertheless, such a right cannot be used as a basis for a wholesale refusal to bring any documents at all.

Mattel has knowledge of specific documents in Ms. Cabrera's possession that are prosaic records of hours worked for Veronica Marlow, and payment received. At her interview at Mattel, Ms. Cabrera voluntarily provided

---

[34] Naim Dec., Exhs. 33, 34.
[35] Naim Dec., Exh. 33.
[36] Naim Dec., Exh. 29 at p. 2 (showing witness fees paid in the amount of $94.94).
[37] Naim Dec., ¶ 36.

these documents to Mattel's agents, though they were later returned to her at her attorney's request. Such documents simply do not implicate any alleged Fifth Amendment right, and these witnesses cannot assert a blanket Fifth Amendment right rather than doing so as to particular documents. See I.C.C. v. Gould, 629 F.2d 847, 858 (3d Cir. 1980) ("[M]ay [defendant], rather than making a specific objection to the production of any particular document, assert a blanket fifth amendment defense to the production of all documents? We hold that he may not.") Moreover, even if they could, since the existence of at least some of these records is established, there would be no testimonial aspect to their production at trial. See Fisher v. U.S., 425 U.S. 391, 410 (1976) ("The existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers. Under these circumstances by enforcement of the summons no constitutional rights are touched. The question is not of testimony but of surrender.").

Cabrera's and Morales' assertion of the Fifth Amendment, coupled with Mr. Marlow's similar assertions, have hindered Mattel's ability to identify the full scope of the work and the full time period that Mattel employees were working on Bratz for Ms. Marlow. In addition, these assertions have hampered Mattel's ability to obtain information regarding the Marlows' efforts to conceal payments to Mattel employees. They should not be permitted to continue to use the Fifth Amendment as a shield to any and all inquiry into this important issue.

## II.     THE DOCUMENTS AT ISSUE ARE CLEARLY RELEVANT

A simple recitation of the facts above shows that the documents at issue are relevant. In addition to Bryant, these three Mattel employees were working on Bratz while employed by Mattel. Each of them had signed agreements akin to the one signed by Bryant, granting Mattel rights to their work while employed by Mattel. Each as admitted that they worked on Bratz while employed by Mattel, knowing this was wrong. Documents related to their work for Veronica Marlow are

1  therefore plainly relevant.  Similarly, documents related to the payments of their
2  attorney's legal fees are relevant to bias.  Indeed, such fee agreements have been
3  ordered to be produced several times in this case.  [cite.][38]  Ms. Cabrera's and
4  Ms. Morales' work for Ms. Marlow are clearly relevant to this case.
5         Moreover, the cover-up of this secret scheme is itself relevant.  The
6  cover-up continued after this lawsuit was filed in 2004, and the concealment of
7  evidence from Mattel was to the benefit of MGA in defending this action.  Now the
8  cat is out of the bag.  The facts show defendants' knowledge of their wrongdoing,
9  which is relevant to Mattel's claims for intentional interference with contract, and
10 aiding and abetting breach of the fiduciary duty and duty of loyalty.  Each of these
11 claims requires that defendants have knowledge of the obligations they are helping
12 to violate.  This knowledge also directly contradicts defendants' "good faith"
13 defense.
14        Finally, the falsification of work records for these employees relate to
15 issues of spoliation.  It is evidence of guilty knowledge pertinent to Mattel's claims
16 against MGA.  As MGA argued in its motion for terminating sanctions, one possible
17 result of spoliation also could be a directed verdict in Mattel's favor.  See, e.g.,
18 Leon v. IDX Systems Corp., 464 F.3d 951, 961 (9th Cir. 2006) (affirming dismissal
19 of action for deletion of files from computer hard drive); Kucala Enterprises, Ltd. v.
20 Auto Wax Co., Inc., 2003 WL 21230605, *6 (N.D. Ill. 2003) (dismissing action for
21 use of Evidence Eliminator software to delete computer files).  But at the least, such

---

[38] As to the Request for documents reflecting payments of attorney's fees, each witness makes an additional claim of privilege.  As similar claims of privilege have been rejected by Judge Infante in regard to the production of documents related to the payment of legal fees, Mattel will not belabor the issue, but instead relies on the Court's prior rulings.  See Order Granting in Part and Denying in Part Mattel's Motion to Enforce the Court's Order of January 25, 2007, to Compel Production of Documents by Carter Bryant and for Sanctions, Naim Dec., Exh. 35.  See also Griffin v. Davis, 161 F.R.D. 687, 691 (C.D. Cal. 1995).

spoliation would entitle Mattel to an adverse inference instruction at trial.[39] See, e.g., Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993). Spoliation is alleged as a predicate act to Mattel's RICO claims. There can thus be no dispute that spoliation is an important subject of testimony. For all these reasons, Ms. Cabrera's and Ms. Morales' relevance objections should be rejected.

### III. THE DOCUMENTS ARE NOT UNDULY BURDENSOME, AND ARE NOT SUBJECT TO ANY PRIVACY RIGHTS

Ms. Cabrera and Ms. Morales also object to the production of the documents as unduly burdensome, and violating their right to privacy in employment records. Neither is true here. The requests are narrowly tailored to seek documents related to "any work [Ms. Cabrera or Ms. Morales] did at any time for Veronica Marlow or any corporate entities with which she is affiliated," and for payments for that work. Their work for Marlow, as discussed above, is directly relevant to this case. The Requests are therefore narrowly tailored to seek only relevant documents.

Nor can these witnesses claim any privacy right in the documents as related to employment. Ms. Marlow has already produced some of these documents herself, and they specifically identify the witnesses, not as employees, but as independent contractors.[40] There is thus no basis to assert that any alleged privacy right in employment records could apply to these documents.

### IV. THE TRIAL SUBPOENAS DO NOT CONSTITUTE IMPROPER DISCOVERY

Ms. Cabrera and Ms. Morales also object that trial subpoenas may not be used as vehicles for discovery, and should be rejected on that basis. This is false for two reasons. The cases consistently acknowledge that trial subpoenas may

---

[39] See Disputed Proposed Jury Instructions at 3, 20, Naim Dec., Exh. 23.
[40] E.g., Naim Dec., Exhs. 36, 37.

require witnesses to bring documents to trial in certain circumstances, including for example where they are necessary for trial preparation or to refresh the witness' recollection.[41]  See, e.g., Atkins v. County of Riverside, 2007 WL 469859, *7 (C.D. Cal. 2007); Puritan Inv. Corp. v. ASLL Corp., 1997 WL 793569, *1 (E.D. Pa. 1997).  Here such documents would be useful for both purposes.

First, the documents at issue could help the witnesses remember the dates for which they worked on Bratz.  For example, Ms. Cabrera testified that she reviewed her records to help refresh her recollection regarding the dates she began work on Bratz.[42]

Moreover, the documents at issue are important to Mattel's trial preparation, given the specific circumstances here.  Defendants concealed the existence of these employees for years while this litigation proceeded.[43]  Once they were discovered, defendants did everything they could to delay the depositions until shortly before trial.  Now these witnesses have asserted alleged Fifth Amendment rights to refuse to answer questions at those depositions.  Given these disruptions to Mattel's investigation of the facts, these documents are important to allow Mattel to adequately prepare for trial.

---

[41]  The case cited by the witnesses, Integra Lifesciences I, Ltd. v. Merck KGaA, 190 F.R.D. 556 (S.D. Cal. 1999), did not involve a request to bring documents to trial, but instead an attempt to obtain a "trial deposition." Id. at 557-559.  The deposition, of course, would not occur at trial and so could not be considered a trial related request.  Here, however, Mattel asks the witnesses to bring the documents to the trial itself, on the day they will be testifying.

[42]  Cabrera Depo. Tr. at 115:20-116:8, Naim Dec., Exh. 26.

[43]  See, e.g., excerpts of the Transcript of Deposition of Lisa Tonnu, dated September 24, 2007, at 301:2-17, Naim Dec., Exh. 38 (identifying no one as having performed work or services for MGA while also employed by Mattel at any time since 1998).

## V. MS. MORALES RECEIVED ALL WITNESS FEES

Finally, Ms. Morales objects that she did not receive payment of witness fees "at the time" she was served with the amended subpoena. When the parties met and conferred, Mattel notified counsel that Ms. Morales had indeed received the payment of witness fees in connection with the first trial subpoena Mattel served on April 6, 2008.[44] Nevertheless, counsel for Ms. Morales asserted that, because Mattel did not provide an <u>additional</u> check along with the amended subpoena, it was invalid.[45] This position is illogical. Ms. Morales has received her witness fees. She should not receive two payments of fees for the same appearance at trial. The case Ms. Morales relies on, CF & I Steel Corp. v. Mitsui & Co. (U.S.A.), Inc., 713 F.2d 494, 496 (9th Cir. 1983), involved the payment of fees one month *after* the subpoena was served, and is distinguishable; Ms. Morales had already received the fees *prior* to receiving the subpoena. Mattel was seeking to amend the prior subpoena, not issue a new subpoena for a new matter. Ms. Morales' assertion that she has not received fees when in fact she already received them is false.

## Conclusion

For the foregoing reasons, Mattel respectfully requests that its Motion be granted in its entirety.

DATED: May 23, 2008             QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ James J. Webster
    James J. Webster
    Attorneys for Mattel, Inc.

---

[44] Naim Dec., ¶ 36.
[45] Id.

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On May 23, 2008, I served true copies of the following document(s) described as **MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO ENFORCE TRIAL SUBPOENAS ISSUED TO ANA CABRERA AND BEATRIZ MORALES; AND MEMORANDUM OF POINTS AND AUTHORITIES** on the parties in this action as follows:

Maria Diaz
**Allred, Maroko & Goldberg**
6300 Wilshire Blvd. Suite 1500
Los Angeles, CA 90048

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 23, 2008, at Los Angeles, California.

_____
NOW LEGAL -- Dave Quintana

07209/2372990.1