1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2 |   johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3 |   (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4 |   (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
   Telephone:   (213) 443-3000
6 | Facsimile:   (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| Plaintiff, | Consolidated with Case No. CV 04-09059 Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **[PUBLIC REDACTED]** MATTEL, INC.'S NOTICE OF MOTION AND MOTION FOR ORDER FINDING THAT CERTAIN DOCUMENTS ARE AUTHENTIC, GRANTING ADVERSE INFERENCE JURY INSTRUCTIONS AND PRECLUDING CERTAIN TESTIMONY BASED ON INVOCATION OF FIFTH AMENDMENT AND MGA'S VIOLATION OF COURT ORDERS; AND |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | |
| | MEMORANDUM OF POINTS AND AUTHORITIES |
| | [Declarations of Duane R. Lyons and Cyrus S. Naim filed concurrently herewith] |
| | Date:    August 4, 2008 Time:    10:00 a.m. Place:   Courtroom 1 |
| | **Phase 1** Discovery Cut-off:        January 28, 2008 Pre-trial Conference:    April 21, 2008 Trial Date:                   May 27, 2008 |

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2            PLEASE TAKE NOTICE that, on August 4, 2008 at 10:00 a.m., or as
3 soon as this matter may be heard, in the Courtroom of the Honorable Stephen G.
4 Larson, located at Courtroom 1 of the above-entitled court, located at 3470 Twelfth
5 Street, Riverside, CA 92501, plaintiff and counterclaimant Mattel, Inc. will, and
6 hereby does, move the Court for an Order finding that certain documents are
7 authentic, granting adverse inference jury instructions and precluding certain
8 testimony.

9            This motion is based upon the invocation of the Fifth Amendment by
10 Peter Marlow, Ana Cabrera and Beatriz Morales, who in doing so obstructed
11 Mattel's ability to obtain discovery into the full extent of MGA's and MGA's agents'
12 activities of commercial bribery of Mattel's employees and their knowing complicity
13 therein. This Court has inherent authority to issue adverse inference instructions on
14 the grounds that MGA, Peter Marlow, Veronica Marlow and other agents of MGA
15 have deliberately thwarted Mattel's efforts to obtain discoverable information by
16 invoking the Fifth Amendment.

17            This motion is further based on MGA's violation of this Court's Orders
18 by its failures to disclose documents, testimony and interrogatory responses relating
19 to the work of Mattel employees on Bratz as mandated by this Court's Orders.
20 Pursuant to Fed. R. Civ. P. 37(b)(2)(A), the "court where the action is pending may
21 issue . . . just orders" to remedy a party's failure to comply with a Discovery Order.
22 Among other things, the court may sanction the disobedient party by "directing that
23 the matters embraced in the order or other designated facts be taken as established
24 for purposes of the action, as the prevailing party claims." Id. at (b)(2)(A)(i). The
25 court may also issue orders precluding a party from introducing evidence as a
26 sanction under this rule.

27            In particular, Mattel seeks the following relief as well as any other
28 relief that the Court believes is just and appropriate:

1          1.     An Order that all records which Veronica Marlow, Veronica

2 Marlow Inc., Marlow Techno-Logic, Inc. and Doll Bag, Inc. produced, and which

3 Peter Marlow refused to authenticate are genuine and an adverse inference that had

4 Mr. Marlow not refused to testify, his testimony would have been unfavorable to

5 himself and MGA and favorable to Mattel;

6          2.     An Order that MGA is precluded from introducing any evidence

7 or argument that the Marlows, Cabrara and Morales did not inform MGA that

8 Mattel employees were working on Bratz since October 2000; and

9          3.     An Order that Mattel is permitted to read or otherwise introduce

10 the deposition testimony of Peter Marlow, Ana Cabrera, and Beatriz Morales during

11 which they invoked the Fifth Amendment and refused to answer questions relevant

12 to the following facts, and that the jury will be instructed that it may infer that the

13 following facts have been established and that had the witness not withheld the

14 information, his/her testimony would have been unfavorable to the witness and

15 MGA and would have been favorable to Mattel:

16          a.     Maria Elena Salazar began working on Bratz no later than

17 October 2000, at which time Salazar was employed by Mattel;

18          b.     Maria Elena Salazar provided sewing and pattern making

19 services on Bratz beginning no later than October 2000 and continuing to 2003;

20          c.     At all times when Maria Elena Salazar was providing such

21 services on Bratz, MGA and Isaac Larian were aware that Maria Elena Salazar was

22 a Mattel employee who was violating her duties and contractual duties to Mattel by

23 performing such work;

24          d.     Beatriz Morales began working on Bratz no later than

25 October 2000, at which time Morales was employed by Mattel;

26          e.     Beatriz Morales provided sewing and pattern making

27 services on Bratz beginning no later than October 2000 and continuing to December

28 2005;

1            f.      At all times when Beatriz Morales was providing such

2 services on Bratz, MGA and Isaac Larian were aware that Beatriz Morales was a

3 Mattel employee who was violating her duties and contractual duties to Mattel by

4 performing such work;

5            g.      With MGA and Isaac Larian's knowledge, Ms. Marlow

6 disguised the payments made to Beatriz Morales in order to conceal from Mattel

7 that Beatriz Morales was working on Bratz while a Mattel employee;

8            h.      Ana Isabel Cabrera began working on Bratz no later than

9 October 2000, at which time Cabrera was employed by Mattel;

10            i.      Ana Isabel Cabrera provided sewing and pattern making

11 services on Bratz beginning no later than October 2000 and continuing to December

12 2005;

13            j.      At all times when Ana Isabel Cabrera was providing such

14 services on Bratz, MGA and Isaac Larian were aware that Ana Isabel Cabrera was a

15 Mattel employee who was violating her duties and contractual duties to Mattel by

16 performing such work;

17            k.      With MGA and Isaac Larian's knowledge, Ms. Marlow

18 disguised the payments made to Ana Isabel Cabrera in order to conceal from Mattel

19 that Ana Isabel Cabrera was working on Bratz while a Mattel employee;

20            l.      MGA attempted to conceal its knowledge that Ms. Marlow

21 was using Mattel employees to work on Bratz, and that MGA knew that Ms.

22 Marlow was using Mattel employees to work on Bratz as early as October 2000.

23            This Motion is based on this Notice of Motion and Motion, the

24 accompanying Memorandum of Points and Authorities, the Declaration of Duane R.

25 Lyons and Cyrus S. Naim filed concurrently herewith, the records and files of this

26 Court, and all other matters of which the Court may take judicial notice.

27

28

-3-

1

Statement of Rule 7-3 Compliance

2     The parties met and conferred regarding this motion on May 22, 2008,

3  and times thereafter.

4

5  DATED: May 22, 2007        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

6

7                     By

8                     Duane R. Lyons

                         Attorneys for Plaintiff

9                     Mattel, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

PRELIMINARY STATEMENT .............................................................................. 1

STATEMENT OF FACTS ...................................................................................... 4

    A.    Victoria Marlow Secretly Used Mattel Employees to Develop Bratz .............................................................................................. 4

    B.    MGA Knew That The Mattel Employees Worked on Bratz .................. 5

    C.    MGA Orchestrated a Scheme to Thwart Mattel's Rights to Discovery ...................................................................................... 7

        1.    Morales and Cabrera Invoked Their Fifth Amendment Rights After Meeting With The Attorney That MGA Provided for the Marlows .............................................. 7

        2.    Peter Marlow Invoked His Fifth Amendment Rights Over 140 Times in Order to Deny Mattel Access to Crucial Evidence ............................................................................ 9

ARGUMENT ...................................................................................................... 10

I.    MATTEL IS ENTITLED TO AN ADVERSE INFERENCE INSTRUCTION TO AVOID ANY PREJUDICE RESULTING FROM THE MANUFACTURED FIFTH AMENDMENT ASSERTIONS OF MGA'S AGENTS ........................................................................... 10

II.    ADVERSE INFERENCE INSTRUCTIONS AGAINST MGA BASED ON THEIR AGENTS' ASSERTIONS OF THE FIFTH AMENDMENT ARE APPROPRIATE .......................................... 12

    A.    This Court Should Find That The Documents That Peter Marlow Refused to Authenticate Are in Fact Genuine and That an Adverse Inference Instruction Regarding Mr. Marlow's Refusal to Authenticate Those Exhibits is Appropriate ................................. 12

    B.    An Adverse Inference Regarding The Time And Scope Of The Mattel Employees' Work On Bratz is Appropriate ............................. 15

    C.    An Adverse Inference Regarding Efforts to Conceal That Salazar, Cabrera, and Morales Worked On Bratz Is Appropriate ........ 17

III.    MGA SHOULD BE PRECLUDED FROM OFFERING ANY EVIDENCE THAT THEY DID NOT KNOW THAT MATTEL EMPLOYEES WERE WORKING WORK ON BRATZ ............................... 18

IV.    MATTEL IS ENTITLED TO AN INFERENCE THAT MGA KNEW THAT MATTEL EMPLOYEES WERE WORKING ON BRATZ

AND A NEGATIVE INFERENCE BASED ON ITS MISCONDUCT
DURING DISCOVERY ..................................................................................... 22

CONCLUSION.................................................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Baxter v. Palmigiano,
    425 U.S. 308 (1976) ............................................................................ 10, 21

Commercial Ins. Co. of Newark, New Jersey v. Gonzalez,
    512 F.2d 1307 (1st Cir. 1975) ................................................................ 25

Doe ex. rel. Rudy-Glanzer v. Glanzer,
    232 F.3d 1258 (9th Cir. 2000) ................................................................ 11

In re Grand Jury Subpoena,
    383 F.3d 905 (9th Cir. 2004) .................................................................. 13

Hale v. Henkel,
    201 U.S. 43 (1906) ................................................................................. 14

Jones v. Otis Elevator Co.,
    861 F.2d 655 (11th Cir. 1988) ................................................................ 25

Libuti v. United States,
    107 F.3d 110 (2nd Cir. 1997) ................................................................. 12

Mitchell v. United States,
    526 U.S. 314 (1999) ............................................................................... 20

Murphy v. Waterfront Comm'n of New York Harbor,
    378 U.S. 52 (1964) ................................................................................. 14

In re National Audit Defense Network,
    367 B.R. 207 (Bkrtcy. D. Nev., 2007) ................................................... 25

RAD Serv., Inc., v. Aetna Cas. & Sur. Co.,
    808 F.2d 271 (3d Cir. 1986) ................................................................... 11

Rosebud Sioux Tribe v. A & P Steel, Inc.,
    733 F.2d 509 (8th Cir.), cert. denied,
    469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984) .......................... 11

SEC v. Colello,
    139 F.3d 674 (9th Cir. 1998) ............................................................... 3, 10

In re Tableware Antitrust Litigation,
    2007 WL 781960 (N.D. Cal., March 13, 2007) ..................................... 11

Toolate v. Borg,
    828 F.2d 571 (9th Cir. 1987) .................................................................. 21

U.S. v. Sumitomo Marine & Fire Insurance Co.,
    617 F.2d 1365 (9th Cir.1980) ................................................................. 24

United States v. Fuentes,
    131 F.3d 149 (9th Cir. 1997) ............................................................. 21, 22

*United States v. Hubbell,*
530 U.S. 27 (2000) .......................................................................... 13

*United States v. Seifert,*
648 F.2d 557 (9th Cir. 1980)........................................................... 22

*United States v. Solano-Godines,*
120 F.3d 957 (9th Cir. 1997)............................................... 10, 11, 21

*United States v. Westinghouse Electric Corp.,*
648 F.2d 642 (9th Cir. 1981)........................................................... 24

*United States v. White,*
322 U.S. 694 (1944) ........................................................................ 14

*Wehling v. Columbia Broadcasting System,*
608 F.2d 1084 (5th Cir. 1979).......................................................... 21

*Wilson v. United States,*
221 U.S. 361 (1911) ........................................................................ 14

## Statutes

Federal Rules of Civil Procedure

Rule 30(b)(6) ......................................................................... 2, 5, 23

Rule 37(b)(2)(A)............................................................................ 24

Rule 37(b)(2)(A)(i)......................................................................... 24

Rule 37(b)(2)(A)(v)........................................................................ 24

MATTEL'S MOTION RE FIFTH AMENDMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Veronica Marlow worked for Mattel from January 1996 to approximately 2000.[1]  She also worked on Bratz for MGA from 2000 through 2005,[2] and, according to defendants, was involved with Bratz at MGA from its inception.[3]  For doing so, Marlow was paid millions of dollars by MGA and Bryant.[4]  Beginning in 2000, Ms. Marlow used a team of Mattel employees -- including Ana Cabrera, Beatriz Morales, and Maria Salazar (the "Mattel Employees") -- to secretly work on Bratz.  Acting as MGA's agent, Ms. Marlow paid, and was reimbursed by MGA for paying, the Mattel Employees for sample making, sewing and pattern making services.

In order to conceal these activities, Ms. Marlow paid the Mattel Employees under false names.  Worse, once the scheme was unmasked during her December 2007 deposition in this case, Ms. Marlow, her husband, and these employees joined together to prevent key evidence of the scheme -- and evidence of the concealment itself -- from being adduced at trial by invoking the Fifth Amendment privilege against self incrimination.  This motion seeks to remedy the prejudice suffered by Mattel as a result of this misconduct.

MGA and Bryant's fingerprints are all over this scheme.  Evidence that they both knew that Mattel employees were being used to secretly work in their own homes on Bratz has now been obtained in (belated) discovery.  Of course, before this evidence was revealed, MGA and Bryant had consistently claimed, under oath,

---

[1]  Transcript of the Deposition of Veronica Marlow ("V. Marlow Tr.") at 21:25-22:4; 28:17-29:3, Ex. 1 to the concurrently filed Declaration of Duane R. Lyons ("Lyons Decl.").

[2]  Id. at 37:14-18, 106:11-14, 107:22-108:4.

[3]  Id. at 106:11-14, 115:10-122:3.

[4]  Id. at 113:8-21; 114:11-18.

-1-

that <u>no</u> former Mattel employees had worked on Bratz while employed by Mattel. Thus, for example:

- MGA's <u>Rule</u> 30(b)(6) designee on this topic, Lisa Tonnu, identified no one as having performed work or services for MGA while also employed by Mattel at any time since 1998.[5]

- MGA's interrogatory responses entirely failed to name either Cabrera or Morales as ever having worked on Bratz and claimed that Salazar, who subsequently became an MGA employee, did not work on Bratz until more than two years after she left Mattel.[6]

- Carter Bryant denied being aware of any other Mattel employee working for MGA while he or she was employed by Mattel.[7]

Indeed, MGA violated this Court's discovery Orders by withholding an email about Cabrera's and Morales' work on Bratz while Mattel employees. Even though the email was addressed to Isaac Larian, MGA's CEO, it was not produced by MGA, but by the Marlows, and even then, not until late April 2008.[8]

MGA will undoubtedly claim that its discovery abuse is excused by the fact that Marlow, not it, directly used the Mattel Employees. Just this week, as evidence of its lack of knowledge, MGA has pointed to deposition testimony of Ms. Marlow and Peter Marlow, who is Veronica's husband and bookkeeper. Mr. Marlow was represented at his deposition by Larry McFarland, a long-time MGA lawyer apparently paid for by MGA. While Mr. Marlow initially began to admit that MGA did know these employees worked for Mattel, he tried to retract his

[5] Transcript of the Deposition of Lisa Tonnu dated September 25, 2007 ("Tonnu Tr. Vol. 2") at 301:2-17, Lyons Decl. Ex. 2.
[6] MGA's Supplemental Responses to Mattel's Revised Third Set of Interrogatories at 64-70, Lyons Decl. Ex. 3.
[7] Transcript of the Deposition of Carter Bryant dated November 5, 2004 ("Bryant Tr. Vol. 2") at 286:25-287:5, Lyons Decl. Ex. 4.
[8] Lyons Decl. Ex. 17.

MATTEL'S MOTION RE FIFTH AMENDMENT

1  admissions and ultimately invoked the Fifth Amendment.[9]   Peter Marlow's Fifth
2  Amendment assertions went so far as to include refusals to authenticate invoices,
3  time slips and evidence of payment to the Mattel Employees.  Cabrera and Morales
4  also asserted the Fifth Amendment in response to a range of questions regarding
5  whether they had tried to conceal their work on Bratz while Mattel employees.[10]

6           These assertions of the Fifth Amendment are part of a concerted effort
7  by MGA and its agents to deny Mattel access to crucial evidence, while
8  simultaneously providing purportedly exculpatory evidence to MGA.  Not only did
9  MGA conceal during discovery that it knew that these Mattel Employees had
10 worked on Bratz, but it has orchestrated a process whereby its agents refused to
11 provide evidence that is solely within their control.  As a result, Mattel has been
12 severely prejudiced in its ability to prove the full extent and nature of the work that
13 the Mattel Employees performed for Ms. Marlow and MGA.  Further, due to Peter
14 Marlow's assertion of the Fifth Amendment, Mattel cannot effectively challenge his
15 eventual assertion that he did not inform MGA that the Mattel Employees were
16 working on Bratz.

17          It is well settled that when invocation of the Fifth Amendment
18 prejudices a party, the Court is free to fashion whatever remedy is required to
19 prevent unfairness. See SEC v. Colello, 139 F.3d 674, 677 (9th Cir. 1998).  As set
20
21

---

22  [9]  Attached to the Lyons Decl. as Ex. 5 is a listing of each assertion of the Fifth
23  Amendment by Peter Marlow. Attached to the Lyons Decl. as Ex. 6 is a listing of
    each assertion of the Fifth Amendment by Ana Cabrera. Attached to the Lyons Dec.
24  as Ex. 7 is a listing of each assertion of the Fifth Amendment by Beatriz Morales.
    [10]  E.g. Transcript of the Deposition of Beatriz Morales dated April 29, 2008
25  ("Morales Tr."), at 179:14-181:5, 182:2-18, 183:16-184:6, 189:2-10, 192:15-193:5,
26  195:8-202:23,  207:10-22,  214:11-22,  Lyons     Decl.  Ex.  7;  Transcript of the
    Deposition of Ana Cabrera dated May 8, 2008 ("Cabrera Tr."), at 64:22-65:13,
27  66:20-67:8, 83:11-25, 177:8-14, 179:19-182:2, 184:3-185:9, 186:22-187:13, 187:24-
28  188:20, Lyons Decl. Ex. 6.

1  forth below, certain findings and adverse inference jury instructions are necessary to
2  protect Mattel from the severe prejudice it will otherwise suffer.

3  **Statement of Facts**

4      **A.**    **<u>Victoria Marlow Secretly Used Mattel Employees to Develop Bratz</u>**

5          During her deposition on December 28, 2007, Veronica Marlow
6  disclosed that beginning in 2000 and continuing for five years, she secretly
7  employed at least three Mattel employees--Ana Cabrera, Beatriz Morales, and Maria
8  Salazar--to work on Bratz.[11]  Each of these individuals was paid substantial sums of
9  money for doing so.[12]  Ms. Marlow secretly paid the Mattel Employees in cash,
10 under false names and social security numbers, in order to conceal their work on
11 Bratz from Mattel.[13]  She in turn, billed MGA for the work that these employees
12 performed.[14]  Like Bryant, these employees also signed agreements assigning Mattel
13 all rights to intellectual property they created while employed by Mattel.[15]
14 Accordingly, their work provides an independent basis for Mattel's claims of
15 ownership in Bratz.  Further, evidence that MGA arranged to pay these employees is
16 direct evidence of commercial bribery--one of the predicate acts supporting Mattel's
17 RICO and unfair competition claims.

18
19

---

20 [11]  V. Marlow Tr. at 306:14-308:1, 363:15-365:17, Lyons Decl. Ex. 1.
   [12]  Morales Tr. at 51:17-52:1, Lyons Decl. Ex. 8; Cabrera Tr. at 186:10-21,
21 Lyons Decl. Ex. 9.
22 [13]  Transcript of the Interview of Ana Cabrera dated January 2, 2008 ("Cabrera
   Int. Tr.") at 46:3-22, 118:3-19:23, Lyons Decl. Ex. 10; Transcript of the Interview
23 of Beatriz Morales dated January 14, 2008 ("Morales Int. Tr.") at 24:14-25:14,
24 27:11-17, 115:2-20, Lyons Decl. Ex. 11.  For example, documents showed work
   done and payment received by a Rosalba Cabrera (Cabrera's sister-in-law), and a
25 Gonzalo Morales (Beatriz Morales' husband) even though neither had ever done any
26 work for Marlow.  <u>See</u> Section IIC, <i>infra</i>.
   [14]  <u>See</u>, <u>e.g.</u>, purchase orders from Marlow to MGA at MGA 0072036 - MGA
27 0072117 and MGA 0008141 - MGA 008091, Lyons Decl. Ex. 12.
28 [15]  <u>See</u> Lyons Decl. Ex. 13.

-4-

**B.     MGA Knew That The Mattel Employees Worked on Bratz**

There is evidence that MGA knew that the Mattel Employees were working on Bratz.  For example, Salazar acknowledged providing sewing and pattern making services to Ms. Marlow in November and December 2000, while Salazar was employed by Mattel. In January 2001, Salazar signed a payment receipt confirming that she was paid $2,450 for these services.[16]  Salazar left Mattel in March 2001.  From then until 2003, Salazar worked exclusively for Ms. Marlow, continuing to work on Bratz.  In 2003, MGA hired Salazar as an employee. Salazar's MGA employment application listed Ms. Marlow, Carter Bryant and Mattel as her references; it also clearly indicated that Salazar had worked for both Ms. Marlow and Mattel.[17]  The resume that Salazar provided to MGA highlighted that she worked on "████████████████████████████."[18]  Salazar even met with MGA lawyers in relation to this action as early as 2006.[19]  Incredibly, MGA nevertheless failed to disclose that Ms. Salazar had worked on Bratz while she was a Mattel employee in either its Rule 30(b)(6) testimony or its interrogatory answers, as shown above.

Bryant was also aware that Salazar, who worked with Bryant at Mattel, was also working with Ms. Marlow on Bratz.  Ms. Marlow and Bryant were both at Marlow's house when Salazar rushed completed Bratz patterns to them.[20] Nevertheless, Bryant never disclosed that Salazar had worked on Bratz.

---

[16]   Lyons Decl. Ex. 14.
[17]   Lyons Decl. Ex. 15.
[18]   Lyons Decl. Ex. 16,  Transcript of the Deposition of Maria Salazar dated May 9, 2008 ("Salazar Tr.") at 103:9-24
[19]   Id. at 17:6-18:11.  Salazar acknowledged that this meeting took place, but claimed (implausibly) that it involved 4-Ever Best Friends, and that she could not recall discussing her work on Bratz. Id. at 212:8-12, 213:6-214:17.
[20]   Id. at 87:18-89:14.

1   MGA and Bryant also concealed that the Mattel Employees had
2   worked on Bratz over a period spanning <u>more than five years</u>.  MGA's knowledge of
3   this is laid bare by an e-mail which, also incredibly, was not produced by MGA[21] in
4   flat violation of Court Orders mandating their production over a year earlier.[22]   On
5   June 20, 2005, Peter Marlow sent emails to Isaac Larian and Paula Garcia
6   discussing the sample makers' work on Bratz dolls.  Mr. Marlow told MGA that
7   should their activities be uncovered—i.e., by Mattel—they would certainly lose
8   their day jobs. He wrote:



---

[21]   Lyons Decl. Ex. 17.
[22]   Lyons Decl. Ex. 33.

MATTEL'S MOTION RE FIFTH AMENDMENT

1

2

3 ███ .[23]

4      Given that Ms. Garcia, Ms. Marlow, Bryant and Salazar were by this

5 time all former Mattel employees, MGA plainly knew that these sample makers

6 were also Mattel employees.

7   **C.**   **MGA Orchestrated a Scheme to Thwart Mattel's Rights to**

8       **Discovery**

9      MGA's knowledge is further confirmed by the extraordinary efforts it

10 has taken to hide its tracks after this scheme was exposed.  Most recently, Mr.

11 Marlow, Morales and Cabrera have used exaggerated fears of criminal prosecution

12 in attempts to justify their expansive assertions of the Fifth Amendment to block

13 meaningful discovery by Mattel and thwart the truth finding of this Court.  The

14 breadth of these Fifth Amendment assertions and the circumstances leading up to

15 them are highly questionable at best, but whether warranted or not require Court

16 intervention to avoid severe prejudice to Mattel.

17   **1.**   **Morales and Cabrera Invoked Their Fifth Amendment**

18       **Rights After Meeting With The Attorney That MGA**

19       **Provided for the Marlows**

20      After learning at Ms. Marlow's deposition in late December 2007 that

21 Cabrera and Morales were working on Bratz while Mattel employees, Mattel

22 conducted individual interviews with each.  During Cabrera's interview, she stated

23 that when she first realized that she was working on Bratz, she wanted to

24 discontinue.  She nevertheless decided to continue to work on Bratz and was paid in

25 cash, and in the name and social security number of her sister-in-law to avoid

26

27 ───────────────

28   [23]  Lyons Decl. Ex. 17.

detection by Mattel.[24]  Similarly, when Morales was interviewed, she acknowledged using the name and social security number of her husband for the payments she received from working on Bratz.[25]

After Mattel noticed the depositions of Cabrera and Morales, a meeting was held between Cabrera, Morales, their attorney (whose fees are paid by Ms. Marlow), both Marlows and their attorney, Larry McFarland (a long-time MGA lawyer whose fees are, apparently, being paid in turn by MGA).[26]  When Mattel took these depositions, both Morales and Cabrera refused to answer a number of critical questions.  For example, Morales invoked the Fifth Amendment and refused to answer questions regarding whether she hid her involvement with Bratz from Mattel by, among other things, receiving payment for her Bratz work under somebody else's name.[27]  Morales also invoked the Fifth Amendment and would not answer questions as to whether she received or signed receipts for payments by Ms. Marlow for her work on Bratz[28] or even identify her signature on numerous timesheet records.[29]  Cabrera also invoked the Fifth Amendment and refused to

---

[24]  Transcript of the Interview of Ana Cabrera, dated January 2, 2008, 118:3-119:23, Lyons Decl. Ex. 10.

[25]  Transcript of the Interview of Beatriz Morales, dated January 14, 2008, 115:2-20, Lyons Decl. Ex. 11.

[26]  See letter dated March 18, 2005 from Alice Meyer to Stephen Contopulos, KMW-M 008154, Lyons Decl. Ex. 18. See also letters dated June 1, 2007 from McFarland to Peter and Veronica Marlow (KMW-M008150-53, Lyons Decl. Ex. 18), stating "███████████████████████████████████████████ ████████████"

[27]  Morales Tr. at 179:14-181:5, 182:2-18, 197:21-201:5, Lyons Decl. Ex. 8.

[28]  Id. at 195:8-22.

[29]  Id. at 183:16-184:6, 195:8-22, 201:6-202:23.

authenticate her signature or confirm whether certain time entries reflected work that she had done on Bratz.[30]

Morales' and Cabrera's decisions to invoke their Fifth Amendment rights was surprising given that they had disclosed such information during their consensual interviews in January 2008. However, at deposition, and when being questioned under oath, they both revealed that since their interviews, Veronica Marlow had supposedly decided to pay their attorney's fees.[31] Marlow, in turn, is being financed by MGA and represented by an MGA attorney.

### 2. Peter Marlow Invoked His Fifth Amendment Rights Over 140 Times in Order to Deny Mattel Access to Crucial Evidence

Erasing any doubt that MGA is orchestrating the effort to hide the facts through Fifth Amendment invocations, the Marlows are represented by Larry McFarland. Both Mr. and Mrs. Marlow claimed, implausibly, not to know who was paying Mr. McFarland to represent them.[32] At one point, Mr. Marlow testified that his lawyer was paid for by Carter Bryant and not MGA. Immediately thereafter, Marlow stated that he was not certain who was paying for his lawyer.[33]

It is no secret that MGA is paying for the Marlows' legal representation.[34] MGA is clearly getting its money's worth, as Peter Marlow asserted the Fifth Amendment over 140 times. Mr. Marlow repeatedly refused to

---

[30] Cabrera Tr. at 184:5-185:9, 186:22-187:13, 187:24-188:20, Lyons Decl. Ex. 9.

[31] Morales Tr. at 39:20-40:18, Lyons Decl. Ex. 8; Cabrera Tr. at 29:11-17, Lyons Decl. Ex. 9.

[32] Transcript of the Deposition of Peter Marlow dated May 2, 2008 ("P. Marlow Tr.") at 43:1-45:2, Lyons Decl. Ex. 19; V. Marlow Tr. 80:14-81:5, Lyons Decl. Ex. 1.

[33] P. Marlow Tr. 43:1-45:2, Lyons Decl. Ex. 1.

[34] See n.26, *supra*.

answer questions about Ms. Marlow's use of Mattel employees to work on Bratz. He refused even to authenticate the business records that were belatedly produced only one week before his deposition. Mr. Marlow also asserted the Fifth Amendment in response to questions regarding:

        1.    the dates that Cabrera, Morales, and Salazar were involved with Bratz or whether they were Mattel employees at the time;

        2.    the involvement of Mattel employees in projects other than Bratz;

        3.    whether he and his wife misrepresented or hid the identities of Mattel employees; and

        4.    whether persons related to Cabrera, Morales, or Salazar actually worked on Bratz as certain documents purportedly reflected.[35]

## ARGUMENT

## I. MATTEL IS ENTITLED TO AN ADVERSE INFERENCE INSTRUCTION TO AVOID ANY PREJUDICE RESULTING FROM THE MANUFACTURED FIFTH AMENDMENT ASSERTIONS OF MGA'S AGENTS

The Supreme Court teaches that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them[.]" Baxter v. Palmigiano, 425 U.S. 308, 318 (1976). Relying on Baxter, the Ninth Circuit has consistently held that "although a court may recognize that a party is free to invoke the Fifth Amendment in civil cases, the court may draw adverse inferences from their failure of proof." SEC v. Colello, 139 F.3d at 677 (citing Baxter v. Palmigiano, 425 U.S. 308, (1976)); see also United States v. Solano-Godines, 120 F.3d 957, 962 (9th Cir.

---

[35] See n.9, supra.

1997) ("In civil proceedings, however, the Fifth Amendment does not forbid fact finders from drawing adverse inferences against a party who refuses to testify.").

An adverse inference is appropriate if the following factors are present (1) there is "other corroborating evidence" supporting the inference, or the invoking party owes "an affirmative duty of candor"; (2) the thing to be inferred is otherwise relevant and "admissible as evidence in a court of law"; and (3) the "need for the information contained in the question [is] substantial." Doe ex. rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1266-67 (9th Cir. 2000).

A non-party's silence in a civil proceeding implicates Fifth Amendment concerns to an even lesser degree.[36]   Accordingly, provided there are indicia of trustworthiness, a court may allow an invocation by a non-party to lead to an adverse inference against a party.  See In re Tableware Antitrust Litigation, 2007 WL 781960 *4-5 (N.D. Cal., March 13, 2007) (denying defense motion to exclude deposition of former employee who asserted the Fifth Amendment privilege).  In determining whether an adverse inference against a party based on a nonparty witness' invocation of the Fifth Amendment privilege is sufficiently trustworthy, the "court may consider the following nonexclusive factors: (1) nature of witness' relationship with and loyalty to party; (2) degree of control which party has vested in witness in regard to key facts and subject matter of litigation; (3) whether witness is pragmatically noncaptioned party in interest and whether assertion of privilege advances interests of witness and party in outcome of litigation; and (4) whether

---

[36]   See Rosebud Sioux Tribe v. A & P Steel, Inc., 733 F.2d 509, 521 (8th Cir.), cert. denied, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). More particularly, nothing forbids imputing to a corporation the silence of its personnel.  See RAD Serv., Inc., v. Aetna Cas. & Sur. Co., 808 F.2d 271, 275 (3d Cir. 1986)(court permitted the jury to draw adverse inference instructions from the assertion of privilege by former employees).

1  witness was key figure in litigation and played controlling role in respect to its
2  underlying aspects." Libuti v. United States, 107 F.3d 110, 123 (2nd Cir. 1997).

3  **II.    ADVERSE INFERENCE INSTRUCTIONS AGAINST MGA BASED**
4  **ON THEIR AGENTS' ASSERTIONS OF THE FIFTH AMENDMENT**
5  **ARE APPROPRIATE**

6  Mr. Marlow's assertion of the Fifth Amendment, coupled with
7  Cabrera's and Morales' similar assertions, have hindered Mattel's ability to identify
8  the full scope of the work and the full time period that the Mattel Employees were
9  working on Bratz. In addition, these assertions have hampered Mattel's ability to
10  obtain information regarding the Marlows efforts to conceal payments to the Mattel
11  Employees. Mattel is entitled to adverse inference instructions to protect it from this
12  prejudice.

13  The interests of Mr. Marlow, Cabrera and Morales are sufficiently
14  aligned with the interests of MGA that it is appropriate to draw adverse inferences
15  against MGA based on the Fifth Amendment invocations of these nonparty
16  witnesses. Specifically, these witnesses have had a long relationship with and
17  loyalty to MGA, they are key figures in regard to MGA's knowledge of the Mattel
18  Employees' work on Bratz, and MGA's substantial payments to the Marlows
19  (including their attorney's fees in this case) have vested MGA with a degree of
20  control in these nonparty witnesses.

21  **A.    This Court Should Find That The Documents That Peter Marlow**
22  **Refused to Authenticate Are in Fact Genuine and That an Adverse**
23  **Inference Instruction Regarding Mr. Marlow's Refusal to**
24  **Authenticate Those Exhibits is Appropriate**

25  As set forth above, Mr. Marlow refused to authenticate numerous
26  documents that he had produced only days earlier. These exhibits included banking
27  and credit union records (Exhibit 5571, 5578); tax records (5580, 5588, 5590, 5595);
28  check registers (5583); payment stubs, purchase orders and invoices (5585, 5586);

1 payment receipts (5592, 5593); employee time sheets, time records and related
2 documents (5594, 5599, 5600, 5602, 5591).[37]

3      The exhibits that Mr. Marlow refused to authenticate were produced by
4 Ms. Marlow on April 24 and April 25, 2008 in response to a stipulation accepting
5 service of subpoenas Mattel had been attempting to serve for months, but which the
6 Marlows had evaded.[38] These documents were belatedly produced on behalf of Ms.
7 Marlow's various entities: Veronica Marlow, Inc., Marlow Techno-Logic, Inc., and
8 Doll Bag, Inc.

9      Peter Marlow's refusal to authenticate these exhibits after they had
10 already been produced in response to a subpoena is simply a futile attempt to deny
11 Mattel key evidence of the lengths to which MGA and the Marlows went to conceal
12 the Mattel Employees' work on Bratz.  The Court should not allow their orchestrated
13 efforts to deny Mattel vital facts reflected in those documents and should deem the
14 documents authenticated and admissible, notwithstanding Mr. Marlow's assertion of
15 the Fifth Amendment.  "By producing documents in compliance with a subpoena,
16 the witness admits that the documents exist, are in his possession or control, and are
17 authentic."  In re Grand Jury Subpoena, 383 F.3d 905, 909 (9th Cir. 2004); see also
18 United States v. Hubbell, 530 U.S. 27, 36 (2000) (same).  Thus, Mr. Marlow's
19 assertions of the Fifth Amendment as to these exhibits does not bar a finding that
20 they are authentic.

21      Marlow's refusal to authenticate these records on Fifth Amendment
22 grounds would be ineffective even had the records not been produced already.  It is

23

24 [37] See, e.g., P. Marlow Tr. at 82:12-20, 141:1-20, 149:24-150:4, 174:13-175:2,
25 187:24-188:10, 192:7-10, 194:15-195:6, 192:7-10, 194:14-17, 207:16-208:4,
217:14-18, 222:12-15, 224:9-12, 226:6-9, 228:14-16, 229:22-230:4, 233:11-14,
26 249:24-250:2, 252:7-10, 256:1-18, 274:24-276:5, Lyons Decl. Ex. 5.  Copies of
these exhibits are attached to the concurrently filed Declaration of Cyrus S. Naim, at
27 Exs. 1-16.
28 [38] See Stipulation Dated April 14, Lyons Decl. Ex. 20.

1  well settled that a corporation is not protected by the constitutional privilege against
2  self-incrimination.  A corporate officer may not withhold testimony or documents
3  on the ground that his corporation would be incriminated.  Hale v. Henkel, 201 U.S.
4  43 (1906), overruled in part on other grounds by Murphy v. Waterfront Comm'n of
5  New York Harbor, 378 U.S. 52 (1964).  Nor may the custodian of corporate books
6  or records withhold them on the ground that he personally might be incriminated by
7  their production.  Wilson v. United States, 221 U.S. 361 (1911).  Individuals, when
8  acting as representatives of such entities cannot be said to be exercising their
9  personal rights and duties nor to be entitled to their purely personal privileges.
10 Rather they assume the rights, duties and privileges of the artificial entity or
11 association of which they are agents or officers and they are bound by its
12 obligations.  In their official capacity, therefore, they have no privilege against self-
13 incrimination.  And the official records and documents of the organization that are
14 held by them in a representative rather than in a personal capacity cannot be the
15 subject of the personal privilege against self-incrimination, even though production
16 of the papers might tend to incriminate them personally.  United States v. White,
17 322 U.S. 694, 699 (1944).

18         Mattel is not only entitled to a finding that these exhibits are authentic,
19 but an instruction that the jury can infer that Mr. Marlow's refusal to authenticate the
20 documents was because to do so would have been adverse to his, Ms. Marlow's and
21 MGA's interests.

22
23
24
25
26
27
28

07209/2512021.5

-14-

**B.**     **An Adverse Inference Regarding The Time And Scope Of The Mattel Employees' Work On Bratz is Appropriate**

Salazar was employed by Mattel from January 2, 2000 through March 6, 2001.[39]  At her deposition, Salazar claimed that she could not recall when she began working on Bratz.[40]  Accordingly, Mattel showed Mr. Marlow Exhibit 5593, containing acknowledged receipts for services rendered by Salazar at least as early as 2000.  Despite the fact that these documents were produced by the Marlows, Mr. Marlow invoked the Fifth Amendment and refused to answer when asked the questions " ███████████████████████████," and " █████████████████████████████████████████████████ █████."[41]

Cabrera was employed at Mattel from November 17, 1995[42] through January 13, 2008.  She also claimed at deposition that she could not recall the date when she began working on Bratz.[43]  Accordingly, Mattel showed Mr. Marlow Exhibit 5585, which contains a purchase order dated October 25, 2000, bearing the Bates stamp MGA-72201.  When asked whether that purchase order " █████████████████████████████████," Mr. Marlow invoked the Fifth Amendment and refused to answer.[44]  Mattel also showed Mr. Marlow Exhibit 5567, which is the Marlows' summary of purchase orders that they submitted to MGA for their work on Bratz ranging from February 9, 2001 to May

---

[39]  See Employment Application by Maria Salazar to Mattel, Inc., dated July 26, 1996, M 0262570, Lyons Decl. Ex. 21; Separation Agreement and General Release signed by Maria Salazar on March 6, 2001, M 0262561, Lyons Decl. Ex. 22.

[40]  See, e.g., Salazar Tr. at 71:1-19, Lyons Decl. Ex. 16.

[41]  P. Marlow Tr. at 228:18-229:4, Lyons Decl. Ex. 19.

[42]  See Employment Application by Ana Cabrera to Mattel, Inc., dated November 17, 1995; Lyons Decl. Ex. 23.

[43]  Cabrera Int. Tr. at 18:6-12, Lyons Decl. Ex. 10.

[44]  P. Marlow Tr. at 199:13-23, Lyons Decl. Ex. 19.

1  18, 2007.  When asked, " ███████████████████████████████████████

2  ███████████████████████████████████████ ," Mr. Marlow invoked the

3  Fifth Amendment and refused to answer.[45]

4        Finally, Morales was employed at Mattel from June 18, 2000 through

5  February 26, 2006.[46]  Morales too claimed at deposition that she did not know when

6  she began working on Bratz.[47]  Accordingly, Mattel showed Mr. Marlow Exhibit

7  5600, which is comprised of time sheets and records for Morales.  Again, despite the

8  fact that the Marlows produced the documents contained in the exhibit, Mr. Marlow

9  invoked the Fifth Amendment and would not authenticate the documents and would

10  not answer whether " ████████████████████████████████████

11  ████████████████████████████████████ "[48]

12        Independent evidence shows that Salazar, Cabrera, and Morales were

13  working on Bratz while they were employed by Mattel.  Mattel exhibited the

14  handwritten time sheets contained in Exhibit 5723 at Salazar's deposition.  Those

15  documents were produced by the Marlows, and Salazar admitted that the

16  handwriting was hers.[49]  The documents show that Salazar was working for Ms.

17  Marlow as early as October 13, 2000.  Furthermore, Veronica Marlow was billing

18  MGA for the Bratz project at least as early as October 13, 2000.[50]  Mattel is entitled

19  to an inference that, like Salazar, Cabrera and Morales were working on the Bratz

20  project by no later than October 13, 2000.

21

22

23

---

24  [45]  P. Marlow Tr. at 83:2-15, Lyons Decl. Ex. 19.

25  [46]  See Mattel Employment records for Beatriz Morales, M 0262514, M 0262495, and M 0262532, Lyons Decl. Ex. 24.

26  [47]  Morales Int. Tr. at 21:14-25, Lyons Decl. Ex. 11.

27  [48]  P. Marlow Tr. at 252:18-24, Lyons Decl. Ex. 19.

    [49]  Salazar Tr. at 71:14-72:4, Lyons Decl. Ex. 16.

28  [50]  See KMW-MARLOW 002214, Lyons Decl. Ex. 25.

C.   **An Adverse Inference Regarding Efforts to Conceal That Salazar, Cabrera, and Morales Worked On Bratz Is Appropriate**

Mattel has also been deprived of evidence showing that MGA had Ms. Marlow pay these Mattel employees, and did so in the names of third parties, in order to conceal their work on Bratz from Mattel. The records produced by Ms. Marlow revealed payments to Rosalba Cabrera (Cabrera's sister-in-law), Gonzalo Morales (Beatriz Morales' husband); and Pedro Salazar (Salazar's husband) even though none of these individuals ever performed work for Marlow. Notwithstanding the existence of this documentary evidence, Mattel has not been able to obtain relevant testimony on this subject because MGA's agents have asserted the Fifth Amendment.

For example, during their depositions, Cabrera and Morales both asserted the Fifth Amendment when asked if payments were made to their family members for work that they had done.[51] Mr. Marlow also asserted the Fifth Amendment when asked if Salazar's husband worked on Bratz[52] or if he concealed any information about Mattel employees who were working on Bratz.[53]

However, the documentary evidence produced by the Marlows corroborates that they tried to conceal these payments. Ms. Morales testified that her husband, Gonzalo, did not perform any work on Bratz.[54] Nonetheless, the Marlows produced a chart for services supposedly performed by Gonzalo from April 21, 2005 through June 11, 2005, payments made from Doll Bag to Gonzalo

---

[51]  ██████ "), Morales Tr. 200:2 - 201:5 (invoking Fifth Amendment for the question, " ██████ "), Lyons Decl. Ex. 7; Cabrera Tr. at 180:17 - 181:16, Lyons Decl. Ex. 6.

[52]  P. Marlow Tr. at 104:2-9 , Lyons Decl. Ex. 5.

[53]  Id. at 114:6-15.

[54]  Morales Tr. at 53:2-7, Lyons Decl. Ex. 8.

1  for sewing services, and various financial documents relating to services rendered
2  by Gonzalo.[55]  Similarly, Salazar testified that payments to her son, Angelo, were
3  rendered for services that she performed.[56]  Nonetheless, the Marlows produced a
4  chart for services ostensibly performed by Angelo Salazar.[57]  Finally, the last entry
5  for services rendered by Cabrera according to documents produced by the Marlows
6  was April 18, 2005.[58]  However, the Marlows produced documents showing
7  payments to *Rosalba* Cabrera for services rendered commencing on April 21,
8  2005.[59]  Based on this evidence, Mattel is entitled to an adverse inference instruction
9  informing the jury that it can infer that MGA and its agents, the Marlows, took steps
10 to conceal their payments to Mattel employees from Mattel.

11 **III.  MGA SHOULD BE PRECLUDED FROM OFFERING ANY**
12 **EVIDENCE THAT THEY DID NOT KNOW THAT MATTEL**
13 **EMPLOYEES WERE WORKING WORK ON BRATZ**

14          Although Peter Marlow invoked the Fifth Amendment in response to
15 over 140 questions on a variety of topics, when it came to the question of whether
16 he ever concealed any information about the identities of Mattel employees who
17 were working on Bratz, Mr. Marlow was more than happy to provide favorable
18 testimony for MGA -- which is hardly surprising given MGA's substantial payment
19 of money to the Marlows and MGA's payment of their legal fees.  Instead of
20 refusing to answer those questions, Mr. Marlow denied ever telling MGA that
21 Mattel employees worked on Bratz:

22
23
24
---

25 [55] See KMW-M 009834,  009462, 009715, 009837, 0085663, and 008690,
    Lyons Decl. Ex. 26.
26 [56] Salazar Tr. at 160:8-25, Lyons Decl. Ex. 16.
   [57] See KMW-M 009884, Lyons Decl. Ex. 27.
27 [58] See KMW-M 009716, Lyons Decl. Ex. 28.
28 [59] See KMW-M 009714 and 009835-36, Lyons Decl. Ex. 29.

1   Q. █████████████████████████

2   ████████████████████████████████

3   ███████████████████████████

4   ████████████████████████████████

5   ████████████

6   ████████████

7   Q. █████████████████████████

8   A. ██

9   Q. █████████████████████████

10  ████████████████████████████████

11  ████████

12  A. ██

13  *  *  *

14  Q. ███████████████████████████

15  ██████████████████████████

16  A. ██

17  *  *  *

18  Q. ███████████████████████████

19  ███████████████

20  A. ██[60]

21      After providing this beneficent testimony for MGA, Mr. Marlow once

22  again resumed his Fifth Amendment invocations:

23  Q. ██████████████████████

24  ████████████████████████████

25  ████████████████

26  ████████████████████████

27  ─────────────────

28  [60]  P. Marlow Tr. at 114:6-115:8, Lyons Decl. Ex. 19.



In a single proceeding, a witness may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details. <u>Mitchell v. United States</u>, 526 U.S. 314, 321 (1999). Here, Mr. Marlow's selective invocation of his Fifth Amendment rights is clearly improper. And, it was certainly no accident. Rather, Marlow (and his MGA lawyer) intelligently and voluntarily decided that he wanted to provide MGA with evidence by which it could plausibly claim ignorance, to wit, "we did not know, because Mr. Marlow did not tell us." Yet, after providing favorable testimony on behalf of

[61] P. Marlow Tr. at 119:14-121:16, Lyons Decl. Ex. 19.

1  MGA, Mr. Marlow refused to answer any question which allowed Mattel to
2  challenge that assertion.

3       Mr. Marlow and MGA cannot have it both ways. Marlow cannot seek
4  to exculpate MGA and simultaneously deny Mattel the ability to cross-examine him
5  on that same topic. At trial, the jury will expect Mattel to produce the best evidence
6  available to support its contention that MGA knowingly utilized the services of
7  Mattel employees who were improperly working on Bratz. Mr. Marlow's refusal to
8  provide answers about the nature and the timing of secret work the Mattel
9  Employees did on Bratz -- which will show that MGA and Bryant were both
10 involved at the time -- deprives Mattel of valuable information which might be used
11 to impeach Mr. Marlow's testimony.

12      Parties are free to invoke the Fifth Amendment in civil cases, but the
13 court is equally free to draw adverse inferences from their failure of proof. See
14 Baxter v. Palmigiano, 425 U.S. 308, 318, (1976); United States v. Solano-Godines,
15 120 F.3d 957, 962 (9th Cir. 1997) ("In civil proceedings, however, the Fifth
16 Amendment does not forbid fact finders from drawing adverse inferences against a
17 party who refuses to testify."). Moreover, a district court has discretion in its
18 response to a party's invocation of the Fifth Amendment. See Wehling v. Columbia
19 Broadcasting System, 608 F.2d 1084, 1089 (5th Cir. 1979) (if invocation of
20 privilege prejudiced the other party, the district court "would be free to fashion
21 whatever remedy is required to prevent unfairness.").

22      Here, this Court should preclude MGA, the Marlows, Cabrera or
23 Morales from offering any testimony that the Marlows did not tell MGA that Mattel
24 employees were performing work on Bratz. "[W]hen a testifying witness cannot or
25 will not be cross-examined, "the appropriate relief ... is to strike the direct testimony
26 of the witness" and to instruct the jury to disregard it." Toolate v. Borg, 828 F.2d
27 571, 572-73 (9th Cir. 1987); see also United States v. Fuentes, 131 F.3d 149 (9th
28 Cir. 1997) (court has discretion to strike testimony if witness invokes Fifth

1 Amendment privilege on cross) (citing and quoting <u>United States v. Seifert</u>, 648
2 F.2d 557, 561 (9th Cir. 1980) ("Where a witness asserts a valid privilege against
3 self-incrimination on cross-examination, all or part of that witness's testimony must
4 be stricken if invocation of the privilege blocks inquiry into matters which are
5 'direct' and are not merely 'collateral.'")).

6      MGA should be prohibited from introducing any of Mr. Marlow's
7 conveniently exculpatory statements because of his deliberate refusal to submit to
8 cross-examination on those points.

9 **IV.  MATTEL IS ENTITLED TO AN INFERENCE THAT MGA KNEW**
10 **THAT MATTEL EMPLOYEES WERE WORKING ON BRATZ AND**
11 **A NEGATIVE INFERENCE BASED ON ITS MISCONDUCT DURING**
12 **DISCOVERY**

13      The evidence adduced to date and the deliberate actions of MGA
14 warrant an instruction permitting an inference that MGA was aware since 2000 that
15 the Mattel Employees were working on Bratz.  In addition, the Court should instruct
16 the jury that it may draw a negative inference as a result of MGA's failure during
17 discovery to reveal the fact that Salazar, Morales and Cabrera worked on Bratz
18 while employed by Mattel.

19      As set forth above, MGA concealed the fact that Salazar worked on
20 Bratz while she was a Mattel employee.  MGA's interrogatory responses did not
21 identify Salazar as working on Bratz until 2003.  In fact, MGA only *hired* Salazar in
22 2003, but knew she had previously worked on the first patterns for the Bratz dolls
23 from the résumé and employment application she submitted to MGA, each of which
24 explicitly referenced that work.[62]  Moreover, inasmuch as Ms. Marlow was charging
25 MGA for the services of her employees who worked on Bratz, MGA cannot
26
27 _____

28 [62]  Lyons Decl. Exs. 17 and 18.

07209/2512021.5

MATTEL'S MOTION RE FIFTH AMENDMENT

legitimately claim that it did not know, at that time, what work Salazar was performing.

Indeed, even Peter Marlow recognized that MGA must have known that Salazar had worked on Bratz:



As also noted above, MGA failed to disclose that Cabrera and Morales worked on Bratz at all. Peter Marlow's August 2005 email also confirms that MGA was aware that Mattel employees worked on Bratz. As he told MGA, "We pay them very generously because they are risking their day jobs - even a nice retirement - to work for us. If they were ever discovered they'd certainly be painfully humiliated and fired."[64]

MGA's discovery misconduct violated multiple Court Orders. MGA's failure to produce the Marlow email -- which was withheld until April 28, 2008 -- directly violated this Court's Order of May 15, 2007.[65] MGA's failure to properly answer the Interrogatories also violated this Court's May 15, 2007 Order.[66] MGA's failure to disclose any information about the Mattel Employees at its Rule 30(b)(6) deposition violated this Court's Order of May 17, 2007.[67]

---

[63] P. Marlow Tr. 102:24-103:10, Lyons Decl. Ex. 19.
[64] Lyons Decl. Ex. 17.
[65] Lyons Decl. Ex. 30.
[66] See id.
[67] Lyons Decl. Exs. 30 and 31.

1          Pursuant to <u>Fed. R. Civ. P.</u> 37(b)(2)(A), the "court where the action is

2 pending may issue . . . just orders" to remedy a party's failure to comply with a

3 Discovery Order.  Among other things, the court may sanction the disobedient party

4 by "dismissing the action or proceeding in whole or in part."  <u>Id.</u> at (b)(2)(A)(v).  At

5 the very least, the court may "direct[] that the matters embraced in the order or other

6 designated facts be taken as established for purposes of the action, as the prevailing

7 party claims."  <u>Id.</u> at (b)(2)(A)(i).  The Court "may make such orders in regard to the

8 failure [to comply with the Court's Order] as are just."  <u>See also United States v.</u>

9 <u>Westinghouse Electric Corp.</u>, 648 F.2d 642, 651 (9th Cir. 1981) ("The choice of

10 discovery sanctions is left to the discretion of the district court.").  <u>See e.g.</u> <u>U.S. v.</u>

11 <u>Sumitomo Marine & Fire Insurance Co.</u>, 617 F.2d 1365, 1369 (9th Cir.1980)

12 (upholding District Court's order  precluding government from introducing any

13 evidence on issue of damages.)

14          Not only did MGA flout Court Orders by failing to disclose Mattel

15 employees who worked on Bratz, but it encouraged the Marlows to subvert those

16 Orders and conceal relevant evidence.  As set forth above, Cabrera and Morales

17 gave interviews in which they admitted to being paid in the names of third parties in

18 order to conceal their work on Bratz.  However, during their depositions, after they

19 met with the Marlows and their MGA-sponsored attorney, Cabrera and Morales

20 asserted the Fifth Amendment to thwart discovery into MGA's complicity.  Peter

21 Marlow, in turn, asserted the Fifth Amendment in order to avoid providing crucial

22 testimony regarding the records that he kept which showed the dates that Salazar,

23 Cabrera and Morales began their improper activities.  Those records, however,

24 demonstrate that the Marlows were paying Mattel employees in 2000 to work on

25 Bratz.  And, Mr. Marlow selectively asserted the Fifth Amendment so as to reveal

26 what he hoped would be favorable testimony for MGA while using it as a shield to

27 bar any examination into his answers.

28

1    Negative inferences may also be drawn from the failure to produce
2  available evidence.[68]   Here, MGA deliberately concealed its knowledge and then
3  attempted to prevent that evidence from coming to light.   Accordingly, the jury
4  should also be instructed that it can consider that MGA's refusal to disclose that
5  information would have been damaging to its case.

6                                    **Conclusion**

7                For the foregoing reasons, Mattel respectfully requests that the instant
8  motion be granted in all respects.

9

10  DATED:  May 23, 2008                QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
11

12                                      By /s/
13                                         Duane R. Lyons
                                           Attorneys for Plaintiff
14                                         Mattel, Inc.

15

16

17      [68]   See In re National Audit Defense Network, 367 B.R. 207, 217-18 (Bkrtcy. D.
18  Nev., 2007)   ("[I]n certain circumstances, a negative inference arises from a
    defendant's failure to produce documents shown to have been in his possession.
19  The inference is that the documents would have been damaging to the defendant.
20  This adverse inference rule is applicable when the following factors are present: (1)
    it appears that the documentary evidence exists or existed; (2) the suppressing party
21  has possession or control of the evidence; (3) the evidence is available to the
22  suppressing party, but not to the party seeking production; (4) it appears that there
    has been actual suppression or withholding of evidence.") (citations omitted);
23  Commercial Ins. Co. of Newark, New Jersey v. Gonzalez, 512 F.2d 1307, 1314 (1st
24  Cir. 1975) ("It is elementary that if a party has evidence, here, allegedly, a
    document, in its control and fails to produce it, an inference may be warranted that
25  the document would have been unfavorable."); Jones v. Otis Elevator Co., 861 F.2d
26  655, 658-59 (11th Cir. 1988) ("'[I]f a party has it peculiarly within his power to
    produce witnesses whose testimony would elucidate the transaction, the fact that he
27  does not do it creates the presumption that the testimony, if produced, would be
28  unfavorable.'")).

07209/2512021.5