QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>         Plaintiff,<br><br>    vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>         Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO ENFORCE THE DISCOVERY MASTER'S MAY 7, 2008 ORDER<br><br>Hearing Date: August 4, 2008<br>Time: 10:00 a.m.<br>Place: Courtroom 1<br><br>**Phase 1:**<br>Pre-trial Conference: May 19, 2008<br>Trial Date: May 27, 2008 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 4, 2008, at 10:00 a.m. or as soon thereafter as this matter may be heard, in the Courtroom of the Honorable Stephen G. Larson, located at Courtroom 1 of the above-entitled Court, 3470 Twelfth Street, Riverside CA 92501, plaintiff and counterclaimant Mattel, Inc. ("Mattel") will, and hereby does, move the Court to enforce the Discovery Master's May 7, 2008 Order (the "Order"), whereby the Discovery Master ordered Wachovia Corporation to produce documents by May 16, 2008.

This motion is made pursuant to the Order and Federal Rules of Civil Procedure 26, 37 and 45, on the grounds that the Order unambiguously requires Wachovia to produce documents related to the more than $11 million in loans it lent to MGA in 1999 and 2000.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Juan Pablo Albán filed concurrently herewith, the records and files of this Court, and all other matters of which the Court may take judicial notice, and such further argument and evidence which may be presented at or before the hearing.

DATED: May 23, 2008         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Jon D. Corey
  Jon D. Corey
  Attorneys for Mattel, Inc.

**Certificate Of Compliance With Local Rule 37-1**

Mattel and Wachovia met and conferred regarding the issues set forth herein on May 16, 2008, among other dates, but were unable to reach agreement.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 37-1 .................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ............................... 1

PRELIMINARY STATEMENT ............................................................... 1

BACKGROUND ..................................................................................... 2

ARGUMENT .......................................................................................... 6

I. THE COURT SHOULD ORDER WACHOVIA TO COMPLY WITH THE MAY 7, 2008 ORDER AND PRODUCE ALL DOCUMENTS RELATED TO MGA'S BORROWINGS IN 1999 AND 2000. ................... 6

II. WACHOVIA WAIVED ITS RIGHT TO CLAIM DOCUMENTS RELATED TO MGA'S BORROWINGS IN 1999-2000 ARE OUTSIDE THE SCOPE OF THE MAY 7, 2008 ORDER. ............................ 8

CONCLUSION ....................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

### Cases

Claredi Corp. v. SeeBeyond Technology Corp.,
  2007 WL. 735018 (E.D. Mo. 2007) ........................................................................ 9

Frees, Inc. v. McMillan,
  2007 WL. 184889 (W.D. La. 2007) ........................................................................ 9

Klund v. High Technology Solutions, Inc.,
  2006 WL. 549385 (S.D. Cal. 2006) ........................................................................ 7

Ragge v. MCA/Universal Studios,
  165 F.R.D. 601 (C.D. Cal. 1995) ........................................................................... 7

### Statute

Federal Rules of Civil Procedure 26(b) ..................................................................... 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

On May 7, 2008, the Discovery Master ordered Wachovia to produce all documents related to "loan agreements" that MGA "entered into," "sought" or "requested" from Wachovia in 1999 and 2000. The Discovery Master compelled this production after finding that MGA borrowed funds from Wachovia to fund the creation and/or development of Bratz. Discovery from MGA shows that MGA in fact had $11.27 million in debt outstanding with Wachovia as of the end of 2000. Much to Mattel's surprise, however, Wachovia initially took the position that it had no documents responsive to the May 7 Order.

Wachovia apparently believes that loan documents related to the 2000 borrowings are not related to year 2000 "loan agreements." Wachovia reasons that because MGA initially entered into a credit facility with Wachovia in 1996, all subsequent loans—even those in 2000—are not 2000 "loan documents." But Wachovia admits that "loan agreements" includes all "lines of credit" and "other financing arrangements." Furthermore, the 2000 loan agreements have *different* terms than the initial 1996 facility. In fact, Wachovia had to sign new documents in 2000 in part because it was lending MGA so much more money than it had before. Also, for the 2000 loans, Wachovia had to agree to changes in restrictive covenants in the 1996 facility.

Perhaps recognizing the nonsensical nature of its position, Wachovia belatedly produced—without changing its position on what a "loan agreement" means—several documents that prove that MGA entered into loan agreements in 1999 and 2000. Those documents, however, account for less than ten percent of the loans MGA had outstanding as of the end of 2000. Wachovia admits it has other similar documents, but has not agreed to produce all of them. Wachovia cannot pick and choose which documents in the same category to produce, allowing to produce only what it thinks may not harm its client.

The Discovery Master ordered 1999 and 2000 loan documents to be produced. Wachovia should not be permitted to flaunt the order merely because it also loaned funds before 1999. It is undisputed there were loans in 1999 and 2000. Mattel respectfully brings this motion before the Court in light of the order that motions can no longer go to the Discovery Master.

## Background

**The Discovery Master Ordered To Produce 1999 and 2000 Loan Documents.** Mattel served Wachovia with the subpoena *duces tecum* at issue here in October 2007. The Discovery Master issued a ruling on May 7, 2008, requiring Wachovia to produce the following documents by May 16, 2008:

1. "all documents relating to any loan agreement entered into by MGA, or sought or requested by MGA, during the time period January 1, 1999 and December 31, 2000, inclusive;" and

2. "all communications between [Wachovia] and MGA during the time period January 1, 1999 and December 31, 2000, inclusive, regarding any loan agreement entered into by MGA, or sought or requested by MGA, during the time period January 1, 1999 and December 31, 2000, inclusive."[1]

The Discovery Master issued this order after finding that "Wachovia lent money to MGA to fund the creation and/or development of Bratz ... ."[2]

On the date of production as ordered by the Discovery Master, Wachovia responded in writing that it had no responsive documents.[3] But MGA business records confirm that there were in fact loans in 1999 and 2000. MGA owed Wachovia $11.27 million at the end of 2000, compared to $39,260 at the end

---

[1] Exh. 1 attached to the Declaration of Juan Pablo Albán filed concurrently (Albán Dec.), at p. 12:20-26 (May 7, 2008 Order).
[2] *Id.* at p. 2:21.
[3] *Id.*, Exh. 7 (May 16, 2008 Ltr from Potischman to Albán).

of 1999.[4] The 2000 amount constitutes more than ten times what MGA owed Wachovia through the end of 1996 to 1999 combined.[5] Mattel requested that Wachovia confirm that it was not withholding documents under an unreasonable interpretation of the May 7 Order.[6] After Mattel's request, Wachovia produced four documents.[7] Seven days after their due date, another 108 pages trickled in.[8]

The documents Wachovia produced confirm that, on May 22, 2000, MGA requested a 30-day loan of $1.2 million.[9] The restrictive covenants in the 1996 facility did not permit a loan of this size.[10] Wachovia entered into a new loan agreement with MGA with different terms than the 1996 facility.[11]

Later in 2000, MGA and Wachovia entered into another loan agreement that changed the covenants of the 1996 facility.[12] This time, Wachovia agreed to an increase in the salaries MGA could pay to Isaac Larian.[13] Farhad Larian, who at the time served on MGA's board of directors, signed a verified complaint alleging that Isaac Larian's request to the board for this salary increase related to Isaac Larian's expectations for Bratz.[14] To justify Wachovia's approval of the salary increase, Isaac Larian told Wachovia that he "personally invented more than 90% of the MGA product line."[15] This parallels Larian's representation to the

---

[4] Id., Exh. 8 at pp. MGA 7342, 7348 (MGA 1999-2000 Audited Financial Statements).
[5] Id., Exh. 2 p. 2, Attachment A therein at p. MGA 3808886 (May 16, 2008 Ltr. from Albán to Potischman).
[6] Id., Exh. 2 at p. 2 (May 16, 2008 Ltr from Albán to Potischman).
[7] Id., Exh. 9 (May 16, 2008 E-mail from Potischman to Albán).
[8] Id., Exh. 5 (May 22, 2008 E-mail from Potischman to Albán).
[9] Id., Exh. 4 at p. WACHOVIA 000001.
[10] Id. at p. WACHOVIA 000007.
[11] Id.
[12] Id. at pp. WACHOVIA 000008–10.
[13] Id.
[14] Id., Exh. 10 at pp. 3-4, ¶ 11 (Larian v. Zarabi verified complaint).
[15] Id., Exh. 11 (May 22, 2000 Ltr from Larian to Laughton).

Patent and Trademark office that he invented the Bratz doll with changeable footgear.[16]

Other discovery from MGA show that MGA had the option to enter into loan agreements with different terms each time it requested a loan. It could borrow under (a) a revolving line of credit with a particular interest rate, (b) letters of credit up to maximum of $5 million, a maturity of 120 days and a different interest rate, or (c) trade acceptances up to $3,000,000, a maturity of 90 days and a third different interest rate.[17]

**Mattel met and conferred with Wachovia**. Through three days of meet and confer discussions with Wachovia, Wachovia confirmed that it possessed loan documents from 1999 and 2000.[18] Two days after these discussions concluded and after further searches, Wachovia produced some but not all of those documents.[19] It expressly retained its position that its loans to MGA in 1999 and 2000 were not related to any "loan agreements" that MGA "entered into" in 1999 or 2000. Notably, Wachovia does not dispute that the term "loan agreement" for purposes of the May 7 Order includes "lines of credit" and "other financing arrangements."[20]

**Wachovia made clear that it is still withholding responsive documents**. After its eleventh-hour production of documents, Wachovia made clear that it continues to withhold 1999 and 2000 documents: "[t]he boxes include materials from 1999-2000, some of which Wachovia is producing and some of which Wachovia is not producing."[21] The boxes Wachovia referenced relate to

---

[16] *Id.*, Exh. 12 (United States Patent Application).
[17] *Id.*, Exh. 6 at p. MGA 7348 (Note 3 to Consolidated Financial Statements).
[18] *Id.*, Exh. 3 at p. 1 (May 20, 2008 Ltr from Albán to Potischman).
[19] *Id.*, Exh. 5 (May 22, 2008 e-mails between Albán and Potischman).
[20] *Id.*, Exh. 3.
[21] *Id.*, Exh. 5 (May 22, 2008 e-mails between Albán and Potischman).

-4-

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S MOTION RE MAY 7, 2008 ORDER

documents Wachovia gathered to respond to a subpoena in *Larian v. Larian*.[22] In that dispute, Farhad Larian alleged that Isaac Larian concealed Bratz from him in 2000. Farhad Larian subpoenaed Bruce Laughton, a Wachovia agent who handles the MGA lending relationship.[23] The subpoena sought, among other things:

> All DOCUMENTS which evidence, discuss, report mention, or relate to BRATZ . . ., where such documents were possessed by you at any time on or before December 31, 2000.
>
> . . .
>
> All DOCUMENTS which evidence, discuss, report, mention, or relate to any trademark filing or application for trademark for BRATZ.
>
> . . .
>
> All DOCUMENTS which evidence, discuss, report, mention, or relate to any marketing efforts undertaken by MGA for any product it was developing from January 1, 1999 through December 31, 2000.
>
> . . .
>
> All DOCUMENTS which evidence, discuss, report, mention, or relate to Carter Bryant, where such document was possessed by YOU on or before December 31, 2000.[24]

In response to this subpoena, Wachovia gathered, but never had to produce, what it described as three boxes of "loan documents."[25] Wachovia provided no explanation

---

[22] *Id.*, Exh. 13, Request No. 3 (Mattel subpoena on Wachovia).
[23] *Id.*, Exh. 14 (Farhad Larian subpoena on Bruce Laughton).
[24] *Id.* at p. FL 1043 (Request Nos. 1, 2, 3 and 5).
[25] *Id.*, Exh. 13, Attachment B (Mattel subpoena on Wachovia).

as to which 1999 and 2000 "loan documents" it chose to withhold from its production to Mattel.

### Argument

### I. THE COURT SHOULD ORDER WACHOVIA TO COMPLY WITH THE MAY 7, 2008 ORDER AND PRODUCE ALL DOCUMENTS RELATED TO MGA'S BORROWINGS IN 1999 AND 2000.

Wachovia is making nonsensical distinctions. If in 1999 one party asks for a loan and another party grants it, then the parties have a 1999 loan agreement. That 1999 loan agreement may refer to and incorporate by reference earlier agreements, but the parties still have a 1999 loan agreement. If there were no agreement to lend in 1999, there would be no loan in 1999.

Wachovia points out that it had a "credit facility" with MGA in 1996 and that some (or perhaps most) of those terms applied to the loans in 1999 and 2000. From this premise, Wachovia reasons that when it lent money in 1999, it did so without a 1999 loan agreement. That is like saying a ball player whose original playing contract was extended (with a hefty raise) does not have a contract for the current season. In 1996, Wachovia did not loan $11 million. In 1999 and 2000, it did. In 1996, MGA did not promise to repay $11 million because it had not borrowed that amount. In 1999 and 2000 it did.

When a lender like Wachovia cuts loan checks in 1999 and 2000 for several million dollars, it does so pursuant to an agreement for repayment of those particular loans. It makes no difference whether some of the terms, such as amount borrowed, interest rate and date of maturity, were entered into in 1999 and 2000 while other terms were incorporated from an earlier agreement. No clever argument changes the fact that money changed hands in 1999 and 2000, and money would never change hands between sophisticated, for profit businesses without an agreement. The Discovery Master ordered all documents related to the 1999 and

2000 loan agreements produced, and he did not make an exception for documents that were executed earlier and/or incorporated by reference.

The Discovery Master ordered 1999 and 2000 loan documents produced because he correctly found that MGA borrowed money to create an/or develop Bratz. It seems desperate to suggest that the Discovery Master only meant his order to apply if MGA entered into a *credit facility* that MGA took out in 1999 or 2000; but any other financing arrangement in 1999 and 2000 falls outside the scope of what he found relevant. Yet Wachovia takes this position even as it admits that the term "loan agreement" includes a "financing arrangement."

The Court should not condone such an unreasonably narrow interpretation of the Discovery Master's order. *See, e.g., Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 603-604 (C.D. Cal. 1995) ("purpose of discovery is to remove surprise from trial preparation so the parties obtain evidence necessary to evaluate and resolve their dispute. Toward this end, Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence."). Indeed, Federal courts have the power to award sanctions or hold a party in contempt for failing to obey a court order or for unreasonably interpreting a discovery order. *See, e.g., Klund v. High Technology Solutions, Inc.*, 2006 WL 549385, *7-8 (S.D. Cal. 2006) (granting sanctions and considering but denying contempt request).[26]

---

[26] Though Mattel believes, after more than a week of attempting to convince Wachovia otherwise, that Wachovia's interpretation of the May 7 Order and selective productions "without prejudice" to that interpretation justify sanctions, if not contempt, Mattel does not seek such relief at this time in the interest of the Court resolving this matter as expeditiously as possible.

## II. WACHOVIA WAIVED ITS RIGHT TO CLAIM DOCUMENTS RELATED TO MGA'S BORROWINGS IN 1999-2000 ARE OUTSIDE THE SCOPE OF THE MAY 7, 2008 ORDER.

On the day the Discovery Master ordered Wachovia to produce documents, Wachovia produced five documents. Wachovia thus initially presumably viewed the documents as responsive to the Order – it certainly had not agreed to produce anything prior to the May 7 Order. Two days later, Wachovia agreed to produce more documents, but this time saying the production was "without prejudice" to its interpretation of the May 7 Order.

The documents Wachovia produced show that, in May 2000, MGA requested and entered into an agreement to borrow $1.2 million from Wachovia because of unexpected payments to vendors.[27] Wachovia produced no comparable documents that explain the amount and reason for the rest of the 2000 loans. The closest Wachovia comes is an MGA "Executive Summary" dated October 5, 2000, which audits MGA and its borrowings as of June 23, 2000.[28] An attachment to that summary shows that, as of July 31, 2000, MGA had $6.7 million of outstanding loans with Wachovia, compared to $1,000 as of January 1, 2000.[29] That document provides no explanation of the date and reason for the $6.7 million in short-term loan transactions, nor did Wachovia provide any documents that do.

Wachovia also did not produce anything—not even a general Executive Summary—showing how MGA got from owing $6.7 million to Wachovia on July 31, 2000 to owing $11.27 million by the end of 2000. Perhaps not coincidentally,

---

[27] *Id.*, Exh. 4.
[28] *Id.*, Exh. 15 at p. WACHOVIA 000080.
[29] *Id.*

that encompasses the months Bryant and Larian allege to have met and the months MGA alleges it began developing Bratz.[30]

The Court should consider this conspicuous deficiency in documents for 2000 loan agreements with Wachovia's admission that it is withholding its own selection of 1999 and 2000 "loan documents" in the boxes it gathered for Farhad Larian's subpoena. That such boxes would contain responsive 1999 and 2000 loan documents is transparent. Farhad Larian sought documents from MGA's lender related to Bratz, a product that MGA indisputably began making plans for, developing and funding in 1999 or 2000.[31]

In other words, Wachovia produced some documents related to year 1999 and 2000 loan agreements between Wachovia and MGA, but it admits it withheld others in the same category. Mattel does not even know if Wachovia searched for documents dated in 2001 but that relate to year 2000 loans, or withheld documents simply because they were created in 2001. The Federal Rules do not allow for such self-serving conduct. "A party cannot, by his own self-serving statements, deny the other party access to potentially relevant information." Frees, Inc. v. McMillan, 2007 WL 184889, at *1-*2 (W.D. La. 2007) (rejecting defendant's argument that he should not be compelled to produce two computers simply because he purchased them two years after his alleged misappropriation of plaintiff's trade secrets); see also Claredi Corp. v. SeeBeyond Technology Corp.,

---

[30] The time lag in the Executive Summaries between the date of the summary and the relevant dates it summarizes indicate that Executive Summaries and other loan documents related to year 2000 loans may have been created in 2001. Of course, such documents would fall squarely within the May 7 Order requiring production of documents "related to" year 2000 loan agreements. It is unclear to Mattel if Wachovia searched for documents dated in 2001 that relate to 2000 loans.

[31] The Discovery Master denied a specific request by Mattel to produce the entirety of those boxes. Id., Exh. 1. Mattel here does not seek production of all three boxes of documents, but it does seek production of all 1999 and 2000 loan documents in those boxes.

2007 WL 735018, at *2 (E.D. Mo. 2007) (slip op.) (rejecting defendant's mere assertion that its failure to produce communications and certain agreements caused "no harm because none of the documents that [it] failed to produce were material documents"). The Federal Rules of Civil Procedure simply do not "grant a party the ability to independently determine which documents it believes are material and produce only those documents." Id.

### Conclusion

For the foregoing reasons, Mattel respectfully requests the Court to (1) clarify that "loan agreements" under the May 7, 2008 Order applies to each of the transactions whereby MGA borrowed money from Wachovia in 1999 and 2000, and (2) in this respect, enforce the May 7 Order and compel Wachovia to produce all documents related to those loan agreements, including 1999 and 2000 loan documents in the material Wachovia gathered to respond to Farhad Larian's subpoena. Given that Wachovia had to produce the documents by May 16, 2008, Mattel respectfully requests that Wachovia produce all such documents within two business days of the Court's decision.

DATED: May 23, 2008         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Jon D. Corey
Jon D. Corey
Attorneys for Mattel, Inc.