1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
2 | (johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
5 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

7 | Attorneys for Mattel, Inc.

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

11 | CARTER BRYANT, an individual,  | CASE NO. CV 04-9049 SGL (RNBx)

12 | Plaintiff,  | Consolidated with
Case No. CV 04-09059
13 | vs.  | Case No. CV 05-02727

14 | MATTEL, INC., a Delaware corporation,  | Hon. Stephen G. Larson

15 | Defendant.  | **[PUBLIC REDACTED]**
DECLARATION OF JUAN PABLO
16 | ALBAN IN SUPPORT OF MATTEL,
INC.'S MOTION TO ENFORCE THE
17 | AND CONSOLIDATED ACTIONS  | DISCOVERY MASTER'S MAY 7, 2008
ORDER

18 |

19 | Hearing Date: August 4, 2008
Time: 10:00 a.m.
20 | Place: Courtroom 1

21 | **Phase 1:**
Pre-trial Conference: May 19, 2008
22 | Trial Date: May 27, 2008

23

24

25

26

27

28

## DECLARATION OF JUAN PABLO ALBÁN

I, Juan Pablo Albán, declare as follows:

1.      I am a member of the bar of the State of California and an associate with Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.      Good cause exists for the Court to decide Mattel's Motion Mattel's Motion To Clarify And Enforce The Discovery Master's May 7, 2008 Order. Mattel asks the Court to rule on only one discreet issue: clarification of language in the May 7 Order. The first available hearing date on Mattel's motion appears to be August 4, 2008, after conclusion of the Phase 1 trial in this matter. The discovery Mattel seeks, which the May 7 Order compels, relates to Phase 1.

3.      Attached as Exhibit 1. is a true and correct copy of a May 7, 2008 Order Granting In Part and Denying In Part MGA Parties' Motion To Quash Subpoenas; Granting In Part And Denying In Part Mattel's Counter Motion To Compel.

4.      Attached as Exhibit 2. is a true and correct copy of a May 16, 2008 letter from me to Neal Potischman.

5.      Attached as Exhibit 3. is a true and correct copy of a May 20, 2008 Letter from me to Mr. Potischman.

6.      Attached as Exhibit 4. are true and correct copies of documents Wachovia produced on May 16, 2008.

7.      Attached as Exhibit 5. is a true and correct copy of an e-mail from Mr. Potischman to me dated May 22, 2008, without attachments.

8.      Attached as Exhibit 6. is a true and correct copy of an e-mail exchange among Mr. Potischman, Amy Park and me dated May 20, 2008.

9.      Attached as Exhibit 7. is a true and correct copy of a May 16, 2008 Letter from Mr. Potischman to me.

1        10.    Attached as Exhibit 8. is a true and correct copy of MGA's

2   audited financial statements for 1999-2000 dated July 12, 2001.

3        11.    Attached as Exhibit 9. is a true and correct copy of a May 16,

4   2008 e-mail from Mr. Potischman to me, without attachments.

5        12.    Attached as Exhibit 10. are true and correct copies of relevant

6   portions of the Verified Complaint filed in <u>Larian v. Zarabi et al.</u>, Los Angeles

7   Superior Court Case No. BC320501.

8        13.    Attached as Exhibit 11. is a true and correct copy of a May 22,

9   2000 letter from Isaac Larian to Bruce Laughton.

10       14.    Attached as Exhibit 12. is a true and correct copy a United States

11  Patent Application for Doll With Aesthetic Changeable Footgear produced by MGA

12  in this action.

13       15.    Attached as Exhibit 13. is a true and correct copy of a subpoena

14  Mattel served on Wachovia Corporation dated October 25, 2007.

15       16.    Attached as Exhibit 14. is a true and correct copy of a subpoena

16  Farhad Larian served on Bruce Laughton dated October 28, 2005.

17       17.    Attached as Exhibit 15. is a true and correct copy of an

18  Executive Summary for ABC International Traders dated October 5, 2007.

19

20       I declare under penalty of perjury under the laws of the United States of

21  America that the foregoing is true and correct.

22       Executed on May 23, 2008, at Los Angeles, California.

23

24       _____

25       Juan Pablo Alban

26

27

28

# EXHIBIT 1

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

11

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>        Defendant. | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MGA PARTIES' MOTION TO QUASH SUBPOENAS; GRANTING IN PART AND DENYING IN PART MATTEL'S COUNTER MOTION TO COMPEL** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

## I. INTRODUCTION

On December 21, 2007, MGA Entertainment, Inc. ("MGA"), Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively, the "MGA Parties") submitted their motion for an order quashing subpoenas issued by Mattel, Inc. ("Mattel") to non-parties ConsumerQuest, Deloitte & Touche, Ernst & Young, the Isaac and

1

EXHIBIT _____1_____

PAGE _____3_____

1   Angela Larian Trust, the Isaac Larian Annuity Trust, Moss Adams, Wachovia Bank and Wells

2   Fargo, or in the alternative, a protective order limiting the scope of those subpoenas.  On

3   December 27, 2007, the MGA Parties submitted a supplemental brief to add to their motion to

4   quash three more subpoenas Mattel served on the Isaac E. Larian Qualified Annuity Trust 2004,

5   the Isaac and Angela Larian Family Trust, and the Isaac and Angela Larian Trust.  On January 18,

6   2008, Mattel submitted an opposition and counter motion to compel production of documents

7   responsive to the subpoenas and a privilege log.  On February 7, 2008, the MGA Parties

8   submitted a reply, and on February 15, 2008, Mattel submitted a reply in support of its counter

9   motion.  The parties were directed to meet and confer further regarding the motions, which has

10  been completed.  See Joint Report dated March 28, 2008.  Despite the additional meet and confer

11  sessions, the parties were unable to resolve or narrow their disputes regarding the instant motions.

12  Pursuant to Paragraph 5 of the Stipulation and Order for Appointment of a Discovery Master, the

13  Discovery Master finds it appropriate to take the motions under submission for decision without

14  oral argument.

15                                    II. BACKGROUND

16          Ernst & Young and Deloitte & Touche are MGA's auditors.  Mattel's subpoenas to MGA's

17  auditors seek production of documents:  (1) relating to MGA's annual audits and the identity of

18  other auditors; (2) indicating or calculating MGA's net worth and the value of MGA's goodwill

19  and intellectual property; (3) relating to Bratz; and (4) relating to the legal dispute between Isaac

20  and Farhad Larian.

21          Wachovia lent money to MGA to fund the creation and/or development of Bratz and to

22  acquire Little Tikes.  Mattel's subpoena to Wachovia seeks documents related to:  (1) the loans

23  Wachovia extended to MGA; (2) the legal dispute between Isaac and Farhad Larian; (3) MGA's

24  net worth, goodwill, and intellectual property; (4) Bratz; and (5) this action.

25          ConsumerQuest is a marketing research firm that performed market research and analysis

26  for MGA products, including Bratz.  Mattel's subpoena to ConsumerQuest seeks documents

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

**EXHIBIT** _____ 1 _____

**PAGE** _____ 4 _____

2

1  related to: (1) Bratz and other products involved in this action; (2) consumer research and

2  marketing work done regarding other MGA products underlying the parties' claims; and (3)

3  communications with MGA, Isaac Larian, and other parties relevant to this action, such as Carter

4  Bryant or other former Mattel employees and vendors.

5      Wells Fargo is and has been MGA's bank during periods relevant to this action. Mattel's

6  subpoena to Wells Fargo contains five requests, seeking MGA's banking and financial documents,

7  including account information, cancelled checks, monthly and daily transactional history, and

8  bank statements.

9      Moss Adams is and has been Isaac Larian's accountant during the relevant period. The

10  subpoena to Moss Adams seeks: (1) accounting records, tax records, and schedules for MGA,

11  Isaac Larian, Isaac Larian's trusts and Farhad Larian; (2) documents indicating or calculating

12  MGA's and Isaac Larian's net worth; (3) documents relating to the value of MGA's intellectual

13  property and goodwill; (4) documents relating to Bratz and this action; (5) evidence of payments

14  from MGA or Isaac Larian to Bryant and other Mattel employees; and (6) Isaac Larian's

15  involvement with other trust or institutions in which he has an interest.

16     Mattel also served subpoenas on several of Isaac Larian's trusts. Mattel's subpoenas to

17  Isaac Larian's trusts seek: (1) documents related to the trusts' organization, including the

18  identities of its trustees and beneficiaries; (2) the trusts' tax records; (3) documents indicating the

19  trusts' assets; and (4) information related to other trusts in which Larian has an interest.

20     All of the non-parties objected to Mattel's subpoenas on the grounds that, *inter alia*, they

21  are overly broad, unduly burdensome and seek irrelevant and/or duplicative information. Park

22  Decl., Exs. 15-26.

23     The MGA Parties contend that Mattel's subpoenas are overly broad, unduly burdensome,

24  and cumulative and duplicative of discovery Mattel has already sought and received. More

25  specifically, the MGA Parties raise the following objections to each of the four categories of

26  documents Mattel seeks. First, the MGA Parties contend that Mattel's subpoenas essentially seek

27

28
   Bryant v. Mattel, Inc.,
   CV-04-09049 SGL (RNBx)

3

EXHIBIT ____1____

PAGE ____5____

1  unfettered access to MGA and Isaac Larian's financial histories for a nine-year period from 1999

2  to the present, and that there is no claim or defense at issue that could possibly justify the breadth

3  and intrusiveness of the subpoenas. Further, the MGA parties contend that they have already

4  produced vast amounts of relevant financial documents in response to Mattel's discovery requests.

5  To make their point, the MGA Parties prepared a detailed chart that identifies Mattel's subpoenas

6  requests to the non-parties and for each such request, identifies an exemplary list of duplicative

7  document requests and/or interrogatories that Mattel served on Carter Bryant and/or the MGA

8  Parties. See Decl. of Amy Park in Support of MGA Defendants' Motion to Quash, Ex. 28.

9      Second, the MGA Parties contend that Mattel's subpoenas are overbroad in that they call

10  for production of the financial records of every person who ever did any work for MGA or Isaac

11  Larian, and every conceivable relative of Isaac Larian. The MGA Parties contend that the private

12  financial records of these non-parties are not relevant to the case, and that Mattel's subpoenas

13  constitute an abuse of the non-party discovery process.

14      Third, the MGA Parties contend that Mattel has already sought and received documents

15  relating to the litigation between Isaac Larian and his brother Farhad Larian from multiple

16  sources. More specifically, the MGA Parties contend that Mattel has sought and received

17  relevant documents from Isaac and Farhad Larian, as well as MGA and at least two law firms

18  involved in the litigation between the Larian brothers.

19      Fourth, the MGA Parties object to the various requests for all documents obtained from

20  MGA or Isaac Larian relating to Bratz, other MGA products or Carter Bryant. Although the

21  MGA Parties acknowledge that some of the requested documents may be relevant, the MGA

22  Parties contend that the document requests are objectionable because Mattel has already requested

23  and received well over three million pages of relevant documents from the MGA Parties. The

24  MGA Parties also contend that Mattel's requests are so overly broad that it is impossible to

25  discern what specific, relevant, non-duplicative documents Mattel is requesting from the non-

26  parties.

27

28

EXHIBIT _____ 1

PAGE _____ 4

4

1        In contrast, Mattel contends that all of the subpoenas seek documents that are relevant to

2 several issues in the case, including, but not limited to, the creation and development of Bratz,

3 Mattel's damages claim (including Mattel's claims for punitive damages and disgorgement),

4 Mattel's claim against MGA for commercial bribery, MGA's damages claims, the value of MGA's

5 goodwill and intellectual property, and the credibility and bias of MGA and Isaac Larian, as well

6 as other potential witnesses. Mattel contends that it should be permitted to pursue discovery from

7 non-parties, and not have to rely upon the good faith of MGA and Isaac Larian to comply with

8 their discovery obligations. Mattel also contends that it should be permitted to pursue discovery

9 from the non-parties in order to guard against the possibility of spoliation of evidence and/or

10 document tampering.

11        Furthermore, Mattel contends that the MGA Parties have not shown that they possess,

12 much less have produced, all of the documents Mattel is seeking from the non-parties. More

13 specifically, Mattel contends that the MGA Parties have failed to produce the following

14 documents that Mattel has requested from the various non-parties: documents related to Isaac

15 Larian's net worth and the value of MGA's intellectual property and goodwill; MGA's tax records;

16 Wells Fargo banking records for MGA; documents related to payments to by MGA, Larian, or the

17 Larian trusts to Bryant and other Mattel employees and vendors; documents from the Larian v.

18 Larian litigation; documents related to the Larian trusts, including any documents showing Isaac

19 Larian's interest in, payments received from, or transfer to those trusts; and documents regarding

20 the 1999-2000 and 2006 loans MGA received from Wachovia, including what documents MGA

21 and Larian gave to Wachovia to justify the loans. Furthermore, Mattel contends that MGA's

22 descriptions of the documents it has produced are vague, inaccurate or misleading.

23        Mattel also contends that the MGA Parties' burden objection is unsubstantiated in that

24 none of the subpoenaed parties has filed a declaration in opposition to the motion or offered any

25 specific evidence that the subpoenas impose an undue burden. Rather, Mattel represents that

26 some of the subpoenaed parties were already in the process of preparing documents for

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT      1      5

PAGE      7

1  production or meeting and conferring with Mattel when MGA filed the instant motion. Corey

2  Decl., ¶¶7-9. Furthermore, Mattel points out that it has offered to reimburse the non-parties for

3  copying costs and to have its own paralegal and counsel inspect documents gathered.

4  III. STANDARDS

5      Rule 26, Fed.R.Civ.P., provides that "[p]arties may obtain discovery regarding any matter,

6  not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). The

7  court shall, however, limit the frequency or extent of use of the discovery methods if the court

8  determines that (i) the discovery sought is unreasonably cumulative or duplicative, or is

9  obtainable from some other source that is more convenient, less burdensome, or less expensive;

10 (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the

11 information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely

12 benefit, taking into account the needs of the case, the amount in controversy, the parties'

13 resources, the importance of the issues at stake in the litigation, and the importance of the

14 proposed discovery in resolving the issues. Fed.R.Civ.P. 26(b)(2)(C).

15     Rule 45, Fed.R.Civ.P., requires third parties to produce documents (and reasonably

16 accessible electronically stored information) that are responsive to a subpoena that a party serves

17 on them. Fed.R.Civ.P. 45(b), (d). If the subpoenaed documents are relevant and there is good

18 cause for their production, the subpoena is enforced unless the documents are privileged or the

19 subpoena is unreasonable, oppressive, annoying or embarrassing. U.S. v. American Optical Co.,

20 39 F.R.D. 580, 583 (N.D. Cal. 1966).

21     Rule 45(c)(1), Fed.R.Civ.P., requires a party serving a subpoena to take reasonable steps

22 to avoid imposing undue burden or expense on a person subject to the subpoena. Furthermore,

23 "[t]he issuing court must enforce this duty and impose an appropriate sanction--which may

24 include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply."

25 Id. Rule 45 also provides that the issuing court must quash or modify a subpoena under certain

26 circumstances, including among others, when the subpoena requires the disclosure of privileged

27

28

EXHIBIT ____1____

PAGE ____8____

6

1  | or other protected matter or subjects a person to undue burden. Fed.R.Civ.P. 45(c)(3)(A)(iii) and

2  | (iv). A motion to quash a subpoena or for a protective order as to that subpoena may be made by

3  | a party-opponent. See Moon v. SCP Pool Corp., 232 F.R.D. 633, 636 (C. D. Cal. 2005) (granting

4  | defendants' motion to quash subpoena).

5  |      In evaluating whether a subpoena imposes an undue burden, Rule 45(c)(3)(A),

6  | Fed.R.Civ.P., "'requires the court to weigh the burden to the subpoenaed party against the value of

7  | the information to the serving party,' . . . and in particular requires the court to consider: 'such

8  | factors as relevance, the need of the party for the documents, the breadth of the document request,

9  | the time period covered by it, the particularity with which the documents are described and the

10 | burden imposed.'" Moon, 232 F.R.D. at 637, quoting Travelers Indem. Co. v. Metropolitan Life

11 | Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005). Another important factor in evaluating burden is

12 | whether the subpoenaing party can more easily and inexpensively obtain the documents from

13 | another party, rather than from the nonparty. Moon, 232 F.R.D. at 638.

14 | IV. DISCUSSION

15 | A. Financial Information re MGA and Isaac Larian

16 |      Mattel has subpoenaed five different entities that perform financial services for MGA or

17 | Isaac Larian: Wells Fargo, Wachovia, Ernst & Young, Deloitte & Touche and Moss Adams.

18 | Although Mattel's requests encompass documents that are relevant to several issues in the case,

19 | the requests are unduly burdensome, exceedingly overbroad and unreasonably cumulative of

20 | other discovery Mattel has already sought and received in this case.

21 |      For example, the subpoena to Wells Fargo demands production of the following broad

22 | categories of financial documents: (1) "[a]ll DOCUMENTS REFERRING OR RELATING TO

23 | MGA from January 1, 1999 to the present, inclusive"; (2) "[a]ll DOCUMENTS REFERRING OR

24 | RELATING TO the ACCOUNT maintained by YOU numbered 9600112551, including but not

25 | limited to statements, monthly statements, annual statements, daily transaction history reports,

26 | monthly transaction history reports, deposit reports, deposit slips, canceled checks, signature

27 |

28 |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT    1

PAGE    9

7

1  cards, and COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNT, created

2  between January 1, 1999 and the present, inclusive"; (3) "[a]ll DOCUMENTS REFERRING OR

3  RELATING TO" any other accounts created between January 1, 1999 and the present, inclusive;

4  (4) DOCUMENTS sufficient to show the account number for all accounts maintained in the name

5  of, for the benefit of or concerning MGA between January 1, 1999 and the present, inclusive; (5)

6  and "[a]ll DOCUMENTS showing or relating to any account(s) held by MGA or any account(s)

7  on which MGA has signatory authority at any other financial institution."

8        The breadth of the requests to Wells Fargo is compounded by the fact that "MGA" is

9  defined to include MGA Entertainment Inc., any of its current or former employees, officers,

10  directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates,

11  predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf.

12  Furthermore, the phrase "REFERRING OR RELATING TO" is defined expansively as

13  "reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing

14  or indicating in any way."  Park Decl., Ex. 11.

15        The subpoena to Isaac Larian's tax accounting firm, Moss Adams, is similarly overbroad.

16  For example, Mattel seeks "[a]ll DOCUMENTS RELATING TO MGA [and] ISAAC LARIAN,

17  including without limitation, accounting records, tax returns and schedules . . . and drafts thereof,

18  W-2s, work papers, worksheets, payroll records, financial statements (audited and unaudited), pro

19  formas, budgets, account information and account statements."  Park Decl., Ex. 12.  The phrase

20  "RELATING TO" in the subpoena to Moss Adams is drafted in the broadest possible manner to

21  include "referencing, referring to, constituting, evidencing, pertaining to, mentioning, supporting,

22  contradicting, negating, bearing on, touching on, containing, embodying, reflecting, identifying,

23  stating, dealing with, concerning, commenting on, summarizing, responding to, relating to,

24  describing or discussing in any way."  Id.  As another example, Mattel's subpoena to Moss Adams

25  includes a request for all documents relating to any non-payroll payment or transfer of value from

26  MGA or Isaac Larian to any "FORMER MATTEL EMPLOYEE."  Mattel does not identify any

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT _____

PAGE _____10_____

8

1  of these "FORMER MATTEL EMPLOYEES" or otherwise limit the request to any specific time
2  period.
3        The subpoenas to Deloitte & Touch and Ernst & Young are similarly unrestrained in
4  scope, seeking the following categories of financial documents: all documents constituting or
5  relating to MGA's annual audits, including without limitation accounting records, audit programs,
6  audit reports and drafts thereof, tax returns, work papers, worksheets, payroll records, financial
7  projections, pro formas and budgets, from the period beginning January 1, 1999 to the present; all
8  documents indicating or calculating MGA's net worth; and all documents indicating the value of
9  MGA's intellectual property or goodwill.  Park Decl., Exs. 7-8.
10        With respect to Wachovia, Mattel seeks the following categories of financial documents:
11  all documents relating to any loan agreement that Wachovia entered into with MGA since January
12  1, 1999, including drafts of any agreements; all documents that MGA or any other person
13  provided to Wachovia for purposes of entering into any loan agreement between Wachovia and
14  MGA; all documents that were in the "three (3) boxes of loan documents" that Wachovia referred
15  to in a November 15, 2005 letter to Robert G. Wilson, Esq.; all documents relating to any loan
16  agreement entered into by MGA, or sought or requested by MGA, during the time period January
17  1, 1999 and December 31, 2000, inclusive; all communications between Wachovia and MGA
18  during the time period January 1, 1999 and December 31, 2000, inclusive; all documents
19  indicating or showing a calculation of MGA's net worth or value; all documents indicating or
20  calculating the value of MGA's intellectual property or goodwill; all documents relating to Bratz,
21  including without limitation those obtained from MGA, since January 1, 1999; and documents
22  sufficient to identify any other MGA lender or person who extended or was requested to extend a
23  line of credit to MGA since January 1, 1998.  Park Decl., Ex. 9.  Mattel contends that the loan
24  documents will contain information about the timing and creation of Bratz.  However, all of the
25  requests for financial documents, except for portions of Request Nos. 4 and 5, are much broader,
26
27
28

EXHIBIT    \

PAGE    \\

9

1   seeking everything relating to any loan between MGA and Wachovia from 1999 through the
2   present.

3        Furthermore, to the extent any of Mattel's requests for financial information encompass
4   relevant materials, the requests remain unreasonably duplicative and cumulative of discovery
5   Mattel has already sought and obtained from MGA and Isaac Larian (with the exception of
6   Request Nos. 4 and 5 in the Wachovia subpoena). MGA has produced the following: audited and
7   unaudited quarterly and annual profit and loss statements; audited and unaudited quarterly and
8   annual statements; annual reports; various MGA financial reports; various financial documents
9   relating to Veronica Marlow; documents showing royalty payments to Carter Bryant; documents
10  showing MGA's sales, returns and costs of goods sold for each month, by SKU, since 2001;
11  documents showing MGA's promotional advertising and media expenditures, including MGA's
12  internal allocation of those expenditures by brand and/or product; documents showing MGA's
13  amortization and depreciation of certain capital assets and expenditures; documents showing
14  MGA's monthly general ledger entries aggregated by account, including income and expense
15  accounts, reserves and liabilities; and documents sufficient to explain MGA's various accounts as
16  presently and historically maintained in MGA's books and records.  Park Decl., ¶3.

17       The MGA Parties also represent that Isaac Larian recently produced over 50,000 pages of
18  documents which included, among other things, documents showing his net worth; his gross
19  income, wages, dividend income, interest income, and other income; his banks and bank
20  accounts; and various other financial documents.  Park Decl., ¶2.  Thus, Mattel has received
21  ample financial documents.  Mattel has also deposed MGA, Isaac Larian, and other witnesses
22  regarding relevant financial information.  In view of the discovery Mattel has already sought and
23  received, Mattel's over-reaching, broad subpoenas to the various non-parties seeking more
24  financial information regarding MGA and Isaac Larian are unjustified under Rule 26(b)(2),
25  Fed.R.Civ.P.

26  //

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT    l

PAGE    12

10

**B. Financial Information re Non-Parties**

Mattel's subpoenas also seek financial documents regarding numerous non-parties, including everyone who has ever worked for or represented MGA or Isaac Larian, and every relative of Isaac Larian.  Once again, although the subpoenas encompass documents that are potentially relevant to Mattel's claims and defenses, the subpoenas are overly broad, sweeping in vast amounts of documents that have little to no relevance.  For example, Mattel's subpoenas to Moss Adams and the various trusts include requests for all formation documents, all tax returns, any other tax-related documents from 1999 to the present, and documents relating to the operation of the trust, including every trustee and beneficiary of each trust, every disbursement by each trust, every asset owned by each trust, and every liability of each trust.  Mattel has not shown that all of the requested documents are relevant to the claims and defenses in the case.

Mattel's subpoenas to the non-parties are also unreasonably duplicative and cumulative of discovery Mattel has already sought and received in this case.  Furthermore, to the extent Mattel's subpoenas might include requests that are not unreasonably duplicative and/or cumulative of other discovery requests, the probative value of the information Mattel seeks is substantially outweighed by the burden of production, especially in light of the privacy interests of the many non-parties who would be affected.[1]

**C. Information re Litigation Between Isaac and Farhad Larian**

All of Mattel's subpoenas to the non-parties, except Wells Fargo, include a request for all documents relating to any litigation between Isaac Larian and Farhad Larian.  These requests are unreasonably duplicative and cumulative of many requests Mattel previously served on Isaac Larian, MGA, Farhad Larian, Stern & Goldberg and Kaye Scholer.  Mattel has sought and received substantial discovery regarding the litigation between Isaac and Farhad Larian.  See

---

[1]  In its reply brief, Mattel contends that Isaac Larian is the trustee of all of the trusts that Mattel has subpoenaed, and therefore he was required, but purportedly failed, to search for and produce trust documents when responding to the discovery requests directed to him.  These issues are beyond the scope of the present motion, and will not be addressed herein.

EXHIBIT _____ \

PAGE _____ 13

1  Order Re Mattel's Motions to Compel Farhad Larian, Kaye Scholer and Stern & Goldberg to

2  Produce Documents dated January 25, 2008. Mattel has not shown that the non-parties possess

3  any relevant, non-privileged materials beyond what Mattel has already sought and received from

4  other sources. Furthermore, the burden and expense of complying with the non-party subpoenas

5  substantially outweigh their likely benefit under Rule 26(b)(2), Fed.R.Civ.P.

6  D. Documents re MGA's Products or Carter Bryant

7          Mattel's subpoenas to the non-parties include requests for documents relating to Carter

8  Bryant, Bratz and other MGA products or work performed for MGA. Although this category of

9  requests encompasses documents that are potentially relevant to the claims and defenses in the

10  case, the requests are nevertheless objectionable because they are overly broad and not tailored to

11  exclude irrelevant, duplicative or unreasonably cumulative information. Mattel has taken vast

12  amounts of discovery regarding Carter Bryant, Bratz, and other MGA products from several

13  different sources. Mattel has not shown that the non-parties possess any relevant, non-privileged

14  materials beyond what Mattel has already sought and received from other sources. Furthermore,

15  the burden and expense of complying with the non-party subpoenas substantially outweigh their

16  likely benefit under Rule 26(b)(2), Fed.R.Civ.P.

17                                    V. CONCLUSION

18          For the reasons set forth above, the MGA Parties' motion to quash, or in the alternative for

19  a protective order, is granted, except with respect to the following requests:

20          •   Wachovia subpoena, Request No. 4, limited to "all documents relating to any loan

21              agreement entered into by MGA, or sought or requested by MGA, during the time

22              period January 1, 1999 and December 31, 2000, inclusive"; and Request No. 5,

23              limited to "all communications between YOU and MGA during the time period

24              January 1, 1999 and December 31, 2000, inclusive" regarding any loan agreement

25              entered into by MGA, or sought or requested by MGA, during the time period

26              January 1, 1999 and December 31, 2000, inclusive.

27

28
   Bryant v. Mattel, Inc.,                                                                    12
   CV-04-09049 SGL (RNBx)

EXHIBIT _____ \

PAGE _____ 14

1  Mattel's counter motion to compel is granted in part and denied in part in accordance with the
2  Court's ruling on the MGA Parties' motion to quash, or in the alternative for a protective order, as
3  set forth immediately above.  Wachovia shall produce documents responsive to Request Nos. 4
4  and 5 as set forth above on or before May 16, 2008.
5          Nothing in this Order is intended to authorize or preclude Mattel from seeking documents
6  from the non-parties identified herein as part of Phase 2 discovery, if appropriate.
7          Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery
8  Master, the MGA Parties shall file this Order with the Clerk of Court forthwith.
9
10  Dated: May 7, 2008                                      /S/
11                                              HON. EDWARD A. INFANTE (Ret.)
                                                        Discovery Master
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ____1____  13

PAGE ____15____

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 7, 2008, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MGA PARTIES' MOTION TO QUASH SUBPOENAS; GRANTING IN PART AND DENYING IN PART MATTEL'S COUNTER MOTION TO COMPEL in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| John Gordon, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johngordon@quinnemanuel.com |
| Diane Hutnyan, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dianehutnyan@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |
| Marcus R. Mumford, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Mmumford@skadden.com |
| Paul M. Eckles, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Paul.eckles@skadden.com |
| Lance A. Etcheverry, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Lance.etcheverry@skadden.com |
| Robert J. Herrington, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | Robert.herrington@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on  May 7, 2008, at San Francisco, California.

Anthony Sales

EXHIBIT _____1_____

PAGE _____16_____

# EXHIBIT 2

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017 | TEL: (213) 443-3000  FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3624**

WRITER'S INTERNET ADDRESS
**juanpabloalban@quinnemanuel.com**

May 16, 2008

**VIA EMAIL AND U.S. MAIL**

Neal Potischman
Davis Polk & Wardwell
1600 El Camino Real
Menlo Park, California 94025
neal.potischman@dpw.com

Re:     Bryant v. Mattel, Case No. CV 04-9049 SGL (RNBx)

Dear Mr. Potischman:

I write regarding the telephone conversation you and I had on May 13, 2008, during which you stated that Wachovia Corporation intends to send us a letter today, stating that it does not have any documents responsive to the Court's May 7, 2008 order in this matter.

Wachovia's latest position contradicts both Wachovia's and MGA's prior representations that they possessed and had collected documents responsive to Mattel's requests.  Tellingly, Wachovia's objections to Mattel's subpoena never state that Wachovia has no responsive documents for any of Mattel's requests, including the ones for which the Court ordered production of documents.

The Court ordered Wachovia to produce by May 16, 2008 all documents responsive to the following requests:

> "[A]ll documents relating to any loan agreement entered into by MGA, or sought or requested by MGA, during the time period January 1, 1999 and December 31, 2000, inclusive; " and

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY  10010 | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA  94111 | TEL (415) 875-6600  FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA  94065 | TEL (650) 801-5000  FAX (650) 801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711  FAX +81 3 5561-1712

EXHIBIT _____

PAGE _____ 17

Neal Potischman
May 16, 2008

> "[A]ll communications between YOU and MGA during the time period January 1, 1999 and December 31, 2000, inclusive[,] regarding any loan agreement entered into by MGA, or sought or requested by MGA, during the time period January 1, 1999 and December 31, 1999, inclusive.

Mattel has evidence that MGA borrowed a substantial sum of money from Wachovia in the year 2000. That amount appears to be more than ten times the combined amount MGA borrowed between 1996 and 1999.[1]

Please confirm that Wachovia is not reading the Court's order in an improperly narrow way. As a reminder, the definition of "MGA" in Mattel's subpoena includes any predecessors in interest or any former names, such as ABC International Traders, Inc. The definition of "Wachovia Corporation" likewise includes any of its predecessors in interest, such as Congress Financial Corporation. Finally, Mattel's requests referring to "loan agreements" expressly include, but are not limited to, a "line of credit" or "other financial arrangement." For example, if MGA entered into a revolving credit facility with Wachovia prior to 1999, and in 2000 borrowed money under that facility, then the Court's order encompasses that borrowing. Indeed, any reasonable interpretation of just the term "loan agreement" for purposes of Rule 26 discovery encompasses such a borrowing. If MGA sent Wachovia minutes of a board meeting in connection with such borrowing, again the Court's order encompasses those board minutes.

Absent Wachovia's production of documents, Mattel will ask the Court to enforce the Court's order, including if necessary a request for an inspection of documents that Wachovia has claimed it had already gathered.[2] Mattel reserves the right to seek relief on an *ex parte* basis in light of the proximity of trial.


Very truly yours,


/s/ Juan Pablo Albán

Encls (2)
07209/2499485.1

---

[1] *See, e.g.*, Attachment A (portions of 2003 appraisal of MGA "as of December 31, 2000," including five-year comparative analysis of balance sheet data). The year 2000 loan amount indicated in this appraisal is consistent with Note 3 of MGA's audited financial statements for the year 2000, explaining loan as borrowing under line of credit.

[2] *See* Attachment B (Dec. 24, 2007 letter from Jon D. Corey to you).

2

EXHIBIT ___2___

PAGE ___18___

**Attachment A**

EXHIBIT _____ 2
PAGE _____ 19

**NATIONAL BUSINESS APPRAISERS, LLC**
16055 Ventura Boulevard, Suite 1200
Encino, California 914360211
Phone (818) 528-2013     Fax (818) 528-2014
Email durch7895@theglobal.net     www.bizappraisers.com

February 13, 2003

Mr. Morad Zarabi, Arbitrator
ABC INTERNATIONAL TRADERS, INC.
20120 Plummer St.
Chatsworth, CA 91211-5448

Dear Mr. Zarabi:

At your request after receipt of additional relevant information, we are reappraising the shareholders equity of ABC International Traders, Inc (ABC). We were asked to express our opinion of the market value, on a control basis, of a 45 percent interest in the shareholders equity.

It is our understanding that this opinion will be used for establishing a value for a buy-out of the Subject interest, and may be invalid if used for any other purpose.

ABC develops, produces and markets toys and related products. The company's products are action figures and accessories featuring licensed characters, and mini dolls. Purchasers of the company's products include discount retail chain stores, department stores, toy specialty stores and wholesalers. The company licenses numerous trademarks, corporate, trade and brand names and logos from third parties.

This report covers only Phase I of a full narrative report, therefore we issue only a brief letter report. All of the financial tables that are normally included in a full-narrative report are presented in the Addenda.

Based upon the information and analyses presented in the Addenda, it is our opinion that as of date of value of December 31, 2000, the market value of the shareholder's equity of ABC International Traders, Inc, on a control basis, as summarized in Table J, of Addenda, was:

$33,805,000

*1.90*

EXHIBIT _2_     MGA 3808872

PAGE _20_

ABC INTERNATIONAL TRADERS, INC.                                    February 13, 2003
North Hills, California                                            Page 2

It is also our opinion that as of December 31, 2000, the market value of a 45 percent
interest in the shareholder's equity of ABC International Traders, Inc., on a control basis,
as summarized in Table J, of the Addenda, was:

## $15,212,000

It is our opinion that a minority discount does not apply to the 45% interest as the other
major shareholder holds an equal 45% interest.

Table J, in the Addenda presents our conclusions of market value under the income,
market and excess earnings approach, and sets forth the calculations of the various
appraised interests as of December 31, 2000.

In conjunction with our work, ABC provided us with audited and unaudited financial
information and prospective financial and operational data. We accepted the historical
data as fairly reflecting its operations, trends and financial position. We have not
independently investigated the accuracy or completeness of the historical data provided to
us and we express no opinion or other form of assurance regarding the accuracy or
completeness of the data. The conclusions of value presented herein are based on
numerous assumptions pertaining to prospective economic and operating conditions.
Unanticipated events and circumstances may occur and actual results achieved during the
period covered by our prospective financial analysis will vary from our estimates. The
variations may be material. In accordance with ethical principles of the Institute of
Business Appraisers, neither National Business Appraisers, LLC, nor any of its
employees or subcontractors has any present or contemplated future interest in the
business interests or assets herein appraised. Neither our employment nor our
compensation is in any way contingent upon the values presented in this report. A copy
of this report and the working papers from which it was prepared will be kept in our files
for eight years.

Respectfully submitted,

NATIONAL BUSINESS APPRAISERS, LLC

By:_____
Ernest E. Dutcher, MCBA
Managing Member
Senior Valuation Counselor

Attachments: Professional Qualifications; Statement of Facts and Limiting Conditions;
Addenda

1118ABCV

$2 \cdot \text{(signature)}$

NATIONAL BUSINESS APPRAISERS, LLC

MGA 3808873

EXHIBIT _____ $V$

PAGE _____ $2\backslash$

ABC INTERNATIONAL TRADERS, INC.                    February 13, 2003
North Hills, California                             Page 3

---

## CERTIFICATION

We certify that, to the best of our knowledge and belief:

\*      The statements of fact contained in this report are true and correct.

\*      The reported analyses, opinions, and conclusions are limited only by the reported
assumptions and limiting conditions, and is our personal, unbiased professional analyses,
opinions, and conclusions.

\*      We have no present or prospective interest in the property that is the subject of
this report, and we have no personal interest or bias with respect to the parties involved.

\*      Our compensation is not contingent on an action or event resulting from the
analyses, opinions, or conclusions in, or the use of, this report.

\*      Our analyses, opinions, and conclusions were developed, and this report has been
prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

\*      No significant professional assistance was provided to the undersigned in
connection with this assignment.


Appraiser_____
          Ernest E. Dutcher, MCBA



NATIONAL BUSINESS APPRAISERS, LLC

MGA 3808874

EXHIBIT _____2_____

PAGE _____22_____

ABC INTERNATIONAL TRADERS, INC.          February 13, 2003
North Hills, California                  Page 10

## DESCRIPTION OF FINANCIAL SCHEDULES USED IN VALUATION

### TABLE A: Comparative Balance Sheet - Assets

This historical comparative balance sheet presents the changes in the asset items over the
5-year period. The dominant change is in current assets.

### TABLE A-1: Comparative Balance Sheet - Liabilities

This historical comparative balance sheet presents the changes in the liability items over
the 5-year period. The dominant change is in current liabilities that increased to $24.223
million. This table also reflects the calculations of "Implied Working Capital", calculated
as a percentage of revenues, which was substituted to minimize the dynamic nature of
current assets and current liabilities that typically change on a daily basis. This allows the
conclusions of value to remain valid over a longer period of time without material
changes in value.

### TABLE B: Comparative Income Statement

This historical comparative income statement presents the book figures over the 5-year
period. The information contained in this table provides the foundation, after the
adjustments described in Table C, for the valuation approaches used in this appraisal.
The most recent year's performance as presented in Column 5, represents the year-end
book figures. To the concluded Pretax Income, we have added back depreciation and
amortization to obtain "Pretax Cash Flow". Interest expense is added back to Cash Flow
as this appraisal assumes a debt-free basis to yield "Operating Margin, or "Earnings
Before Depreciation Interest, Taxes and Amortization" (EBDITA).

A study of this table indicated that ABC follows the somewhat erratic performance of the
industry.

### TABLE C: Adjustments to Comparative Income Statement

This statement reflects certain essential income statement items extracted from Table B
that is subject to adjustments to remove extraordinary income or expense items that
would not be necessary for normal business operations. Following the Adjusted Net
Income, Cash Flow and Operating Margin, we calculate the weighted average net income
utilizing the 1997, 1998, 1999 and 2000 EBDITA as a percentage of sales. This results in
adjusted Pretax Income, Net Income, Cash Flow and Operating Margin (EBDITA)

NATIONAL BUSINESS APPRAISERS, LLC

MGA 3808881

EXHIBIT _____2_____

PAGE _____23_____

| REVISED REPORT | | TABLE A-1 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | FIVE YEAR COMPARATIVE BALANCE SHEET | | | | | Job No. 1113ABCV | | |
| | | F/Y End December 31 | | | | | Appr Date 12/31/2000 | | |
| | | ($000) | | | | | Run Date 15-Dec-04 | | |
| | | | | | | | | | |
| | | LIABILITIES & SHAREHOLDERS EQUITY | | | | | | | |
| | | | | | | | | | |
| | | 1996 | % | 1997 | % | 1998 | % | 1999 | % | 2000 | % |
| Current Liabilities | | | | | | | | | |
| Accounts Payable & Accrued | | $ 7,222 | 41.9 | $ 11,134 | 52.7 | $ 6,904 | 40.7 | $ 6,611 | 37.7 | $ 12,951 | 50.8 |
| Bank Line-Revolving | | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 | 0 | 0.0 |
| Current Port. L. T Debt | | 36 | 0.2 | 36 | 0.2 | 38 | 0.2 | 0 | 0.0 | 11,272 | 44.2 |
| Other current | | 3 | 0.0 | 45 | 0.2 | 131 | 0.8 | 0 | 0.0 | 0 | 0.0 |
| | | | | | | | | | |
| Total current liabilities | | $ 7,261 | 42.1 | $ 11,217 | 53.1 | $ 7,073 | 41.6 | $ 6,611 | 37.7 | $ 24,223 | 95.1 |
| | | | | | | | | | |
| Long Term Liabilities | | | | | | | | | |
| Notes payable to bank | | $ 5,950 | 34.5 | $ 3,175 | 15.0 | $ 5,231 | 30.8 | $ 2,129 | 12.1 | $ 1,147 | 4.5 |
| Long term debt, less current | | | 0.0 | | 0.0 | | 0.0 | 0 | 0.0 | 0 | 0.0 |
| Subordinated notes payable & other | | 2,718 | 15.8 | 3,028 | 14.3 | 3,247 | 19.1 | 3,255 | 18.5 | 3,590 | 14.1 |
| | | | | | | | | | |
| Total long term liabilities | | $ 8,668 | 50.2 | $ 6,203 | 29.4 | $ 8,478 | 49.9 | $ 5,384 | 30.7 | $ 4,737 | 18.6 |
| | | | | | | | | | |
| Total Liabilities | | $ 15,929 | 92.3 | $ 17,420 | 82.5 | $ 15,551 | 91.6 | $ 11,995 | 68.3 | $ 28,960 | 113.7 |
| | | | | | | | | | |
| Shareholders Equity | | $ 1,321 | 7.7 | $ 3,701 | 17.5 | $ 1,432 | 8.4 | $ 5,562 | 31.7 | $ (3,483) | -13.7 |
| Total Liabilities & Shareholders Equity | | $ 17,250 | 100.0 | $ 21,121 | 100.0 | $ 16,983 | 100.0 | $ 17,557 | 100.0 | $ 25,477 | 100.0 |
| | | | | | | | | | |
| Current Ratio | | 2.31 | | 1.82 | | 2.30 | | 2.57 | | 1.01 | |
| Quick Ratio | | 0.58 | | 0.97 | | 1.20 | | 1.68 | | 0.41 | |
| L. T Debt / Net Worth | | 6.56 | | 1.68 | | 5.92 | | 0.97 | | -1.36 | |
| Working Capital | | $ 9,543 | 55.3 | $ 9,249 | 43.8 | $ 9,180 | 54.1 | $ 10,351 | 59.0 | $ 342 | 1.3 |
| | | | | | | | | | |
| IMPLIED WORKING CAPITAL | | | | | | | | | |
| Net Revenues | | $ 46,980 | | $ 55,315 | | $ 40,732 | | $ 66,350 | | $ 77,489 | |
| WIC as a percent of revenues * | | 12.23% | | 12.23% | | 12.23% | | 12.23% | | 12.23% | |
| | | | | | | | | | |
| Implied working capital | | $ 5,747 | | $ 6,766 | | $ 4,982 | | $ 8,116 | | $ 9,479 | |
| | | | | | | | | | |
| * Robert Morris Associates SIC #3944, Games, Toys etc. | | | | | | | | | $ 9,500 | |

**Attachment B**

EXHIBIT _____ 2

PAGE _____ 25

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

December 24, 2007

**VIA FACSIMILE AND FEDEX**

Neal A. Potischman
Davis Polk & Wardwell
1600 El Camino Real
Menlo Park, California 94025

Re:   Mattel v. Bryant, Case No. CV 04-9049 SGL (RNBx)

Dear Mr. Potischman:

I write to follow-up on our December 20, 2007 telephonic meeting of counsel regarding Wachovia's objections to Mattel's subpoena for documents.

As we stated during the meet and confer, Mattel does not seeks documents that reflect Wachovia's policies, procedures or methods relating to its underwriting or syndication of loans. Mattel does, however, seek documents that reflect particular areas of interest related to Wachovia's loans to MGA in 1999-2000 and 2006. Based upon our conversation, we understand that these loans are the only two loans that Wachovia made to MGA, but ask that you confirm this is the case.

During our call, you requested that we provide examples of the types of documents sought by Mattel and how those documents relate to the issues in this case. In response, Mattel stated that it seeks documents that relate to any representations made by MGA or Isaac Larian to Wachovia regarding the value of MGA's good will and intellectual property in conjunction with these two loans. As we stated during the call, these documents relate to Mattel's assessment of MGA's net worth and, thus far, MGA has taken the position that it has no such information.

As another example, Mattel seeks any documents that refer or relate to misrepresentations made by either MGA or Isaac Larian to Wachovia, or inaccurate information provided by them to Wachovia, relating to MGA's loan applications, supporting paperwork and/or Wachovia' funding

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

EXHIBIT _____ 2

PAGE _____ 26

of those two loans. To the extent that Isaac Larian is an individual defendant in the underlying action, Mattel also seeks financial information provided by Mr. Larian to Wachovia and Wachovia's assessment of the quality of that financial information. As we stated during our call, this information is essential so that Mattel may assess Mr. Larian's credibility—an inquiry that is paramount to the underlying action.

Another example of the documents sought by Mattel are MGA's internal financial data, excluding MGA's audited financial statements, for 2006. Mattel also requests that Wachovia produce the 2006 MGA loan agreement. Mattel is willing to wait until its pending motion to compel is decided before insisting that Wachovia produce the 2006 MGA loan agreement.

Finally, Mattel seeks the three boxes of loan documents referenced in the 2005 letter appended to Mattel's subpoena for documents. We understand that Wachovia has gathered those documents.

Based upon our conversation today, I understand that you will address these requests with your client, and we will resume discussions on Thursday, December 27, 2007 at 9:00 a.m.

If you have any questions, then please do not hesitate to contact me.

Very truly yours,

Jon D. Corey

2

EXHIBIT _____ _2_

PAGE _____ _27_

Confirmation Report — Memory Send

Page       : 001
Date & Time: 12-24-2007   10:52
Line 1     : 2134433100
Line 2     :
Machine ID : QUINN EMANUEL

| | | |
|---|---|---|
| Job number | : | 966 |
| Date | : | 12-24  10:50 |
| To | : | ☎00071#07209#16507523621 |
| Number of pages | : | 003 |
| Start time | : | 12-24  10:50 |
| End time | : | 12-24  10:52 |
| Pages sent | : | 003 |
| Status | : | OK |

Job number    : 966          *** SEND SUCCESSFUL ***

FAXED
DEC 2 4 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

LOS ANGELES OFFICE
FACSIMILE TRANSMISSION

DATE:       December 24, 2007

NUMBER OF PAGES, INCLUDING COVER: 3

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Neal A. Potischman Davis Polk & Wardwell | 650-752-2021 | 650-752-3621 |

FROM:     Jon Corey

RE:       Mattel, Inc. v. Carter Bryant, et al.

MESSAGE:

Please see attached.

| 07209/2310481.1 | | | | | |
|---|---|---|---|---|---|
| CLIENT # | 7209 | ROUTE/ RETURN TO: | Johanna Lopez | | ☐ CONFIRM FAX ☐ INCLUDE CONF. REPORT |
| OPERATOR: | | | CONFIRMED? | ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT _____ 2

PAGE _____ 28

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

<table>
<tr>
<td><u>NEW YORK</u><br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>(212) 849-7000<br>Facsimile: (212) 849-7100</td>
<td><u>LOS ANGELES</u><br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>(213) 443-3000<br>Facsimile: (213) 443-3100</td>
<td><u>SAN FRANCISCO</u><br>50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>(415) 875-6600<br>Facsimile: (415) 875-6700</td>
</tr>
</table>

<u>SILICON VALLEY</u><br>555 Twin Dolphin Drive, Suite 560<br>Redwood Shores, CA 94065<br>(650) 801-5000<br>Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   December 24, 2007          **NUMBER OF PAGES, INCLUDING COVER: 3**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Neal A. Potischman<br>Davis Polk & Wardwell | 650-752-2021 | 650-752-3621 |

**FROM:**   Jon Corey

**RE:**   Mattel, Inc. v. Carter Bryant, et al.

**MESSAGE:**

Please see attached.

07209/2310481.1

| CLIENT # | 7209 | ROUTE/<br>RETURN TO: | Johanna Lopez | ☐ CONFIRM FAX<br>☐ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED?   ☐ No  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT _____ 2

PAGE _____ 29

# EXHIBIT 3

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL: (213) 443-3000 FAX: (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3624**

WRITER'S INTERNET ADDRESS
**juanpabloalban@quinnemanuel.com**

May 20, 2008

**VIA EMAIL AND U.S. MAIL**

Neal Potischman
Davis Polk & Wardwell
1600 El Camino Real
Menlo Park, California 94025
neal.potischman@dpw.com

Re:     Bryant v. Mattel, Case No. CV 04-9049 SGL (RNBx)

Dear Mr. Potischman:

I write to memorialize certain aspects of the three telephone discussions we have had since May 16, 2008, regarding the Discovery Master's May 7, 2008 order ("Order").

You stated that Wachovia is not withholding documents on the basis that MGA borrowed money in 1999 and 2000 under its former name (ABC International Traders, Inc.) from Wachovia's predecessor-in interest, Congress Financial Corporation.

You stated that Wachovia has documents it has not produced related to money MGA borrowed from Wachovia in 1999 and 2000. Wachovia takes the position that such documents do not fall within the scope of the Order because those borrowings do not constitute loan agreements entered into, sought or requested by MGA in 1999 or 2000.

You stated that you do not dispute that the term "loan agreement" in Mattel's subpoena includes "lines of credit" and "other financial arrangements." You also stated that Wachovia's position is that MGA's borrowings in 1999 and 2000 are not "lines of credit," and you do not understand and/or know how to interpret the term "other financing arrangement."

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, CA 94065 | TEL (650) 801-5000 FAX (650) 801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

EXHIBIT 3

PAGE 30

Neal Potischman
May 20, 2008

You stated that you are still in the process of talking to Wachovia personnel regarding Wachovia's possession of documents that may, at least under Mattel's interpretation of the Order, be responsive to the Order.

On May 16, 2008, you produced documents bearing bates stamps WACHOVIA 000001 – 000010. Under the May 7, 2008 order, a complete production of responsive documents was due on May 16, 2008.

Please let me know if you disagree with any of the statements herein.

Very truly yours,


/s/ Juan Pablo Albán


cc.     Amy Park, Esq. (via E-mail).

2

EXHIBIT ___3___

PAGE ___31___

# EXHIBIT 4

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 5

## Juan Pablo Alban

| | |
|---|---|
| **From:** | Potischman, Neal A. [neal.potischman@dpw.com] |
| **Sent:** | Thursday, May 22, 2008 3:59 PM |
| **To:** | Juan Pablo Alban |
| **Cc:** | Park, Amy S; Jon Corey |
| **Subject:** | RE: Mattel/MGA |

**Attachments:** 05.22.2008.WACHOVIA_00001-10.pdf; 05.22.2008.WACHOVIA_000011-118.pdf

Juan Pablo:

Attached please find the supplemental production that I described earlier. The documents have been stamped "CONFIDENTIAL" pursuant to the January 4, 2005 Protective Order. Moreover, pursuant to Section 3(e) of that Order, Wachovia hereby designates the documents produced on May 16 (WACHOVIA 000001-10) as CONFIDENTIAL as well. We have included a reproduction of these pages with the appropriate CONFIDENTIAL designation affixed.

In response to your questions, the subpoena refers to certain boxes, and we have reviewed the contents of those boxes. The boxes include materials from 1999-2000, some of which Wachovia is producing and some of which Wachovia is not producing. As you no doubt recognize, the May 7 Order -- which quashed the majority of the subpoena, including the request for all materials in "the boxes" -- certainly did not direct Wachovia to produce "the boxes" either in whole or in part. The Order required Wachovia to produce certain documents, namely "all documents relating to any loan agreement entered into by MGA, or sought or requested by MGA, during the time period January 1, 1999 and December 31, 2000, inclusive." May 7 Order, at 12. As such, we have reviewed the available documents -- whether in "the boxes" or not -- to look for potentially responsive materials.

With respect to executive summaries, I'm well aware of what the May 7 Order says. Without regard to whether such materials are responsive, to the extent that the summaries rely on supporting materials, those materials are included in the production.

With respect to both questions, I note that Mattel's position appears to me to have boiled down to the suggestion that every document in Wachovia's possession from 1999 or 2000 must be responsive, because (1) all relate in some way to money borrowed by ABC during that time, and (2) all money borrowed in 1999 or 2000 must have been borrowed pursuant to a "loan agreement entered into . . . during the time period January 1, 1999 and December 31, 2000." May 7 Order, at 12. To my recollection, we have yet to discuss a single category of document from 1999 or 2000 that Mattel agrees is non-responsive. If I understand Mattel's position correctly, then I think that its position is at odds with the plain text of the Discovery Master's Order, and is also undermined by the text of the two different document subpoenas that Mattel has served on Wachovia. The former subpoena (which gives rise to the instant ruling) focuses on documents relating to any loan agreement entered into since January 1, 1999. The latter subpoena focuses on documents relating to any loan agreement entered into in 1996/1997. It appears to me that when Mattel wanted documents with respect to loan agreements that were entered into prior to 1999 -- as is the case here -- Mattel knew how to ask for them.

Of course, and notwithstanding my hope that we can move forward without further motion practice, I hasten to repeat that should the Court at some point determine either to reconsider the Discovery Master's Order and/or clarify it in such a way as to support Mattel's interpretation of it, Wachovia will attempt to respond as quickly as possible.

Regards,

Neal

Neal Potischman
Davis Polk & Wardwell
1600 El Camino Real
Menlo Park, California 94025
650.752.2021 (tel)
650.752.3621 (fax)
646.522.7407 (mobile)
neal.potischman@dpw.com

**From:** Juan Pablo Alban [mailto:juanpabloalban@quinnemanuel.com]

5/22/2008

EXHIBIT _____5_____

PAGE _____42_____

**Sent:** Thursday, May 22, 2008 1:09 PM
**To:** Potischman, Neal A.
**Cc:** Park, Amy S; Jon Corey
**Subject:** RE: Mattel/MGA

Neal,

Thank you for this information. We'll take what you have but have to see the production this afternoon before determining if motion practice is still necessary. We are fine with Wachovia's position that its production does not prejudice its position regarding non-responsiveness.

You mention "Executive Summaries." The May 7 Order requires production of the underlying documents for those summaries as well as long as those executive summaries relate to 1999 and 2000 loans. Please let me know if your agreement includes those documents.

Also, can you confirm that the boxes of loan documents gathered to respond to Farhad Larian's subpoena do not have documents dated in 1999 or 2000? That was an issue left unresolved in our discussions that I do not believe is addressed in your e-mail.

Regards, Juan Pablo.

Juan Pablo Alban
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3624
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: juanpabloalban@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Potischman, Neal A. [mailto:neal.potischman@dpw.com]
**Sent:** Thursday, May 22, 2008 10:59 AM
**To:** Juan Pablo Alban
**Cc:** Park, Amy S
**Subject:** Mattel/MGA

Juan Pablo:

Per prior discussions, which I will not attempt to recount or summarize in detail here, I wanted to provide a brief update regarding a few issues that we have discussed. In a normal case, I expect that what follows would end the dispute and forestall the need to burden any court with needless motion practice about these issues. In this case, I'm not so optimistic -- but I at least hope that any disputed issues will be narrowed to the greatest extent possible.

You previously suggested that based on your experience as a transactional lawyer, you would have expected to see certain types of documentation each time that ABC wanted to draw down on the 1996 credit facility in 1999 or 2000. Without prejudice to Wachovia's right to contest the responsiveness of such materials, I agreed to look to see what information, if any, Wachovia possesses in this regard. Having looked, I can now tell you that I am not aware that any such documentation exists. To the extent that such materials did exist at some point -- something that I'm unsure of -- it appears that they likely were destroyed by a flood several years ago.

5/22/2008

EXHIBIT

PAGE    43

With respect to other documentation, as discussed, we previously agreed to limit our search to specific bankers identified as having key roles in the MGA relationship. In recent days, and based on your questions/comments, we agreed to expand our search, including to look for additional materials along the lines referenced above. My review indicates that Wachovia possesses some additional "Request Summary" and "CFS Client Change/Transaction Request" documents, of the same type produced last week. Without prejudice to Wachovia's position about the responsiveness of such materials, we will later today produce all such "Request Summary" and "CFS Client Change/Transaction Request" documents from the 1999-2000 time-frame. We will also produce "Executive Summary" documents that we possess for this same time period.

I am in meetings for most of the morning and early afternoon but expect to be available late in the afternoon if you have any questions.

Neal

Neal Potischman
Davis Polk & Wardwell
1600 El Camino Real
Menlo Park, California 94025
650.752.2021 (tel)
650.752.3621 (fax)
646.522.7407 (mobile)
neal.potischman@dpw.com

EXHIBIT ____5____

PAGE ____44____

5/22/2008

# EXHIBIT 6

**Juan Pablo Alban**

**From:** Potischman, Neal A. [neal.potischman@dpw.com]
**Sent:** Tuesday, May 20, 2008 6:34 PM
**To:** Juan Pablo Alban; Park, Amy S
**Cc:** Jon Corey; Shek, Bernard (PAL)
**Subject:** RE: RE:

Wachovia will not oppose the request for expedited consideration.

Neal Potischman
Davis Polk & Wardwell
1600 El Camino Real
Menlo Park, California 94025
650.752.2021 (tel)
650.752.3621 (fax)
646.522.7407 (mobile)
neal.potischman@dpw.com

---

**From:** Juan Pablo Alban [mailto:juanpabloalban@quinnemanuel.com]
**Sent:** Tuesday, May 20, 2008 6:24 PM
**To:** 'Park, Amy S'; Potischman, Neal A.
**Cc:** Jon Corey; Shek, Bernard (PAL)
**Subject:** RE: RE:

Amy and Neal,

This is to confirm that we will only seek clarification and enforcement of the Court's May 7 order. Please confirm that you will not oppose an application to hear on an expedited basis.

Thanks.

Juan Pablo Alban
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3624
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: juanpabloalban@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Park, Amy S [mailto:Amy.Park@skadden.com]
**Sent:** Tuesday, May 20, 2008 5:41 PM
**To:** Juan Pablo Alban; Potischman, Neal A.
**Cc:** Jon Corey; Shek, Bernard (PAL)
**Subject:** RE: RE:

EXHIBIT ___6___

PAGE ___45___

Juan Pablo,

Your assumptions aside, you have not identified what relief Mattel will be seeking.   If Mattel is seeking something other than clarification, please advise.

Thank you.

**From:** Juan Pablo Alban [mailto:juanpabloalban@quinnemanuel.com]
**Sent:** Tuesday, May 20, 2008 5:26 PM
**To:** Park, Amy S (PAL); Potischman, Neal A.
**Cc:** Jon Corey
**Subject:** RE: RE:

Believe me, we agree that the order is clear.  Unfortunately, Wachovia disagrees with Mattel on the meaning of a loan agreement entered into, sought or requested by MGA in 1999 or 2000.  I assume you are not suggesting that MGA has not discussed Wachovia's (and I assume its own) interpretation of the this language.

Juan Pablo Alban
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3624
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  juanpabloalban@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney–client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Park, Amy S [mailto:Amy.Park@skadden.com]
**Sent:** Tuesday, May 20, 2008 5:18 PM
**To:** Juan Pablo Alban; Potischman, Neal A.
**Cc:** Jon Corey
**Subject:** RE: RE:

Juan Pablo,

I still do not understand what relief Mattel is seeking.  If Mattel is seeking to clarify Judge Infante's order, I think the order is clear.  If Mattel is seeking something other than that, please advise.

Thank you.

Amy

**From:** Juan Pablo Alban [mailto:juanpabloalban@quinnemanuel.com]
**Sent:** Tuesday, May 20, 2008 4:59 PM
**To:** Park, Amy S (PAL); Potischman, Neal A.
**Cc:** Jon Corey
**Subject:** RE: RE:

EXHIBIT _____ 6

PAGE _____ 46

5/21/2008

Wachovia and Mattel disagree on the scope of the court's order and Mattel is asking the court to address that disagreement.

Juan Pablo Alban
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3624
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail:  juanpabloalban@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Park, Amy S [mailto:Amy.Park@skadden.com]
**Sent:** Tuesday, May 20, 2008 4:54 PM
**To:** Juan Pablo Alban; Potischman, Neal A.
**Cc:** Jon Corey
**Subject:** RE:

Juan Pablo,

I do not understand what you mean by "Mattel's Motion re the Discovery Master's May 7 Order."  Please explain what relief you will be seeking.

Thank you.

Amy

---

**From:** Juan Pablo Alban [mailto:juanpabloalban@quinnemanuel.com]
**Sent:** Tuesday, May 20, 2008 4:48 PM
**To:** 'Potischman, Neal A.'; Park, Amy S (PAL)
**Cc:** Jon Corey
**Subject:**

Neal and Amy,

We intend to apply ex parte for the Court to hear the following on an expedited basis: (1) Mattel's Motion re the Discovery Master's May 7 Order; and (2) final ruling on MGA's motion to quash Mattel's deposition subpoena (which Judge Infante deferred on March 11, 2008 pending his May 7 Order).

Let us know asap if you intend to oppose the application.  Thank you.

Juan Pablo Alban
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3624
Main Phone: (213) 443-3000

5/21/2008

EXHIBIT _____ 6
PAGE _____ 47

Main Fax: (213) 443-3100
E-mail: juanpabloalban@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

--------------------------------------------------------------------------------
************************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
**************************************************

************************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request. **************************************************

--------------------------------------------------------------------------------
************************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
**************************************************

************************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request. **************************************************

--------------------------------------------------------------------------------
************************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.
**************************************************

************************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of

this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request. ****************************************************

EXHIBIT ____ ᐧ

PAGE ____ 49

# EXHIBIT 7

# DAVIS POLK & WARDWELL

1600 EL CAMINO REAL
MENLO PARK, CA 94025
650 752 2000
FAX 650 752 2111

NEW YORK
WASHINGTON, D.C.
LONDON
PARIS
FRANKFURT
MADRID
TOKYO
BEIJING
HONG KONG

NEAL A. POTISCHMAN
650 752 2021
NEAL.POTISCHMAN@DPW.COM

May 16, 2008

By Electronic Mail & First Class Mail

**Re:** *Bryant v. Mattel*, CV 04-09049

Juan Pablo Alban, Esq.
Quinn Emanuel
865 S. Figueroa St. 10th Floor
Los Angeles, California 90017

Dear Juan:

As you know, we represent Wachovia with respect to certain third-party subpoenas that your client has served on Wachovia in connection with the above-referenced case.

Further to our discussion on May 13, 2008, I write to confirm that we have conducted a reasonable search for documents in response to the October 25, 2007 subpoena issued to Wachovia, as limited by the May 7, 2008 order of Hon. Edward A. Infante. We have not found any responsive materials. During our conversation on May 13, you expressed surprise at the suggestion that we had not located responsive documents – indeed, you called our position "not believable" in light of documents that you indicated that you have seen. Wachovia takes its obligations in responding to subpoenas seriously. If you have information that you believe indicates that Wachovia should possess documents responsive to the October 25, 2007 subpoena as limited by the May 7 order, please let me know. We would be glad to take additional steps to search for relevant materials, if that is appropriate.

Enclosed please also find Wachovia's objections and responses to the January 15, 2008 document subpoena issued to Wachovia. I understand that the parties contemplate motion practice with respect to that subpoena as well. To the extent that your client files papers with any court relating to that subpoena (or any other subpoena relating to Wachovia), I would appreciate it if you would serve courtesy copies on me.

Very truly yours,

Neal A. Potischman

Enclosure

EXHIBIT _____ 7

PAGE _____ 50

# EXHIBIT 8

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER

# EXHIBIT 9

## Juan Pablo Alban

| | |
|---|---|
| **From:** | Potischman, Neal A. [neal.potischman@dpw.com] |
| **Sent:** | Friday, May 16, 2008 6:14 PM |
| **To:** | Juan Pablo Alban |
| **Subject:** | Mattel/MGA |

**Attachments:** 05.16.wachovia.pdf - Adobe Acrobat Professional.pdf

Per our discussion and further to our exchange of correspondence earlier today, attached please find four documents that Wachovia is producing in response to the October 2007 subpoena, as limited by the May 7, 2008 Order of Hon. Edward A. Infante.

Neal Potischman
Davis Polk & Wardwell
1600 El Camino Real
Menlo Park, California 94025
650.752.2021 (tel)
650.752.3621 (fax)
646.522.7407 (mobile)
neal.potischman@dpw.com

EXHIBIT ___9___

PAGE ___62___

# EXHIBIT 10

1  William C. Conkle (SB# 076103)
   Mark D. Kremer (SB# 100978)
2  Eric S. Engel (SB# 105656), members of
   CONKLE & OLESTEN
3  Professional Law Corporation
   3130 Wilshire Boulevard, Suite 500
4  Santa Monica, California 90403-2403

5  Telephone: (310) 998-9100

6  Attorneys for Plaintiff Farhad Larian

7

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

FEB 2 8 2005

John A. Clarke, Executive Officer/Clerk
By——————————, Deputy
       J. SUNGA

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF LOS ANGELES

10

11  FARHAD LARIAN,                          CASE NO.   BC 329501

12              Plaintiff,                   VERIFIED COMPLAINT FOR:

13  v.                                       1)   FRAUD

14  MORAD ZARABI, ISAAC LARIAN              2)   NEGLIGENT
    AND KAMBIZ ZARABI AND DOES 1                 MISREPRESENTATION
15  through 5, INCLUSIVE
                                            3)   CONSPIRACY
16              Defendants.
                                            4)   DECLARATORY RELIEF
17
                                            5)   CONSTRUCTIVE TRUST
18
                                            6)   INJUNCTIVE RELIEF
19

20

21          Plaintiff alleges as follows:

22
            1.    Plaintiff, Farhad Larian also known as Fred Larian ("FRED") is now and
23
    at all times relevant to this Complaint was a resident of Los Angeles County California.
24

25
            2.    Defendant, Morad Zarabi ("MORAD") is now and at all times relevant to
26
    this Complaint was a resident of Los Angeles County California.
27

28

2221.002\9929

Complaint

(68pgs)
Exhibit no. 4227
Date: 2/6/08
F. Larian P. Pyburn

FL 6526

**EXHIBIT** 10

**PAGE** 63

3.  Defendant, Isaac Larian ("ISAAC") is now and at all times relevant to this Complaint was a resident of Los Angeles County California.

4.  Defendant Kambiz Robert Zarabi ("KAMBIZ") is now and at all times relevant to this Complaint was a resident of Los Angeles County California.

5.  Plaintiff is unaware of the true names and capacities of Does 1 through 5 and therefore sues such defendants by such fictitious names. Plaintiff will amend this Complaint to identify the true names and capacities of these defendants if and when additional information against them is ascertained. Plaintiff is informed and believes that each of the doe defendants is liable in some manner for the acts and omissions and the injuries and damages alleged in this Complaint.

6.  At all times relevant to this Complaint, each defendant was the agent or employee of each of the other defendants as the case may have been, and was acting within the course of the scope of such agency or employment in performing the acts alleged in this Complaint.

7.  FRED and ISAAC are brothers who for over 20 years engaged in business as partners through equal ownership of several businesses and ventures they co-founded. They shared profits and losses on an equal basis.

8.  The businesses they co-founded included the companies known as ABC International Traders, Inc. ("ABC") and MGA Entertainment Hong Kong Ltd. ("MGAEHK"). ABC and MGAEHK collectively are referred to as "MGA". At all times relevant to this Complaint FRED and ISAAC each owned 45% of the outstanding stock, while their brother in law Jangahir Makabi ("MAKABI") owned 10% of MGA. FRED's 45% interest amounted to 10,000,000 shares of common stock in ABC and

1 │ 450 shares of common stock in MGAEHK (collectively "FRED's Stock"). Over time
2 │ FRED and ISAAC divided responsibilities in MGA's business: ISAAC, as CEO
3 │ assumed responsibility for finance, sales, marketing and product development while
4 │ FRED, as Executive Vice President was responsible for operations, including customs,
5 │ warehousing, distribution and facilities.

6

7 │      9.     MORAD is the uncle of ISAAC and FRED.

8

9 │      10.    In the spring of 2000 ISAAC offered to buy FRED's 45% interest in MGA
10 │ for $9,000,000 valuing MGA at $20,000,000. FRED responded that he wanted an
11 │ appraisal of MGA to consider selling his interest. Consequently, ISAAC and FRED
12 │ continued to negotiate a buy-sell agreement for ISAAC to buy FRED's Stock. ISAAC
13 │ told FRED that he only wanted to appraise MGA as of December 31, 1999. FRED
14 │ demanded a current appraisal. To avoid an appraisal ISAAC suggested using a process
15 │ by which he or FRED would make an offer to buy the other's interest which if not
16 │ accepted would require the refusing party to purchase the offeror's interest for the same
17 │ price. FRED rejected the method telling ISAAC that FRED did not want to be a buyer.
18 │ Ultimately ISAAC refused to go through with a buy-sell agreement that required three
19 │ appraisals of MGA.

20

21 │      11.    From the inception of their partnership, FRED and ISAAC had agreed that
22 │ their salaries and other compensation from MGA would always be equal. They had
23 │ followed this agreement for more than twenty years, taking equal raises and pay-cuts
24 │ at the same time. In early 2000, however, while he was attempting to buy FRED out
25 │ of MGA, ISAAC secretly gave himself a $100,000 raise to about $325,000. ISAAC
26 │ later demanded that the MGA Board of Directors raise his salary to $500,000, ratify
27 │ $750,000 as a bonus for 1999, authorize a $1,500,000 bonus for 2000, and give him a
28 │ 4% royalty on items he "personally develops for MGA's 2001 line or products".

2221.002\9929                    -3-
                            Complaint       EXHIBIT  10      FL 6528

                                           PAGE_____ 65

1   Subsequently, Isaac's two brothers in-law purporting to act as MGA directors increased
2   ISAAC's salary to always be three times that of FRED's salary and authorized an
3   additional bonus of up to 50% of ISAAC's tripled salary.  FRED is informed and
4   believes that ISAAC engineered the compensation increase to put additional pressure
5   on FRED to sell out his interests in MGA.  FRED is further informed and believes that
6   in exchange for MAKABI's vote, ISAAC promised MAKABI some portion of FRED's
7   Stock if FRED agreed to sell it to ISAAC.

8

9       12.    In or around the summer of 2000, following ISAAC's refusal to proceed
10  with the buy-sell agreement, MORAD contacted FRED and urged him to let MORAD
11  arbitrate the impasse between ISAAC and FRED over the stock sale.  MORAD told
12  FRED that FRED should not wait any longer to resolve his disputes with ISAAC as
13  ISAAC was attempting to "take over the company" by the enormous raise in
14  compensation which MORAD said was "just a part of ISAAC's plans to oust FRED".
15  MORAD suggested that he determine which brother should sell his interest in MGA
16  and at what price.  FRED responded that he did not want to be a buyer and required for
17  any arbitration, that the price of his stock be determined by an appraisal of the current
18  value of MGA, as ISAAC had control of the financial and business information. FRED
19  also told MORAD he required a resolution of certain other partnership accounts.  In
20  response MORAD promised FRED that the price of FRED's interest in MGA would
21  be determined by a current and accurate appraisal of MGA that MORAD would obtain.
22  MORAD called the appraisal "the central piece of the arbitration".  MORAD also
23  promised to resolve the accounting of the other partnership accounts.

24

25      13.    In several communications with FRED, MORAD stressed his unique
26  position to serve as an arbitrator.  MORAD held out his familial relationship to the
27  brothers as assuring his impartiality and trustworthiness.  MORAD promised to treat
28  each brother "as one of his eyes", an expression meaning that MORAD would allow

2221.002\9929                    -4-
                          Complaint          FL 6529
                          EXHIBIT    10

PAGE ____ 66

14.     For such other relief as the Court deems just and proper.

Dated:  February 24, 2005

William C. Conkle
Mark D. Kremer
Eric S. Engel, members of
CONKLE & OLESTEN
Professional Law Corporation

By:  _____
Mark D. Kremer
Attorneys for Plaintiff

EXHIBIT ____10____

PAGE ____67____

2221.002\9929

-28-

Complaint

FL 6553

<u>VERIFICATION</u>

I have read the foregoing Verified Complaint and know its contents.

☒     I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐     I am _____ of _____, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

☐     I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

☒     The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐     I am one of the attorneys for _____, a party to this action. Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on February 25, 2005.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Farhad _____
 Farhad Larian                                Signature
Print Name of Signator

EXHIBIT ___10___

PAGE ___68___

Verification to Complaint

FL 6557

# EXHIBIT 11



**Corporate Office:**

16730 Schoenborn Street
North Hills, CA 91343-6122 USA
Tel 818.894.2525
Fax 818.894.8094

May 22, 2000

**VIA FACSIMILE (626) 304-4949 &**
**FIRST CLASS MAIL**
Mr. Bruce Laughton
Vice President
First Union
Congress Finance Corporation
251 South Lake Avenue, Ste. #900
Pasadena, CA 91101

Dear Bruce,

As you know, besides being the CEO of the Company, I personally invented more than 90% of MGA product line and do about 60% of the Company's sales (e.g. Wal-Mart, Rite Aid, Radio Shack, Mazel/VCM, Consolidated, etc.).

The Board of Directors of MGA approved an increase of my compensation for the year 2000 forward, as follows:

  a.  Salary of $664,622.40 per year, effective June 1, 2000.

  b.  A bonus for fiscal year 2000, as follows:

  –  If the EBIT of MGA in the year 2000 is $8,000,000 - $9,999,999, I will get a bonus of $166,155.60; or

  –  If the EBIT of MGA in the year 2000 is $10,000,000 or more, my bonus will be $332,311.20

We need Congress to approve this as soon as possible please.

Sincerely,

Isaac Larian
CEO

cc: Dennis Medici, CFO

**Hong Kong Office:**
Unit 707-8 Multifield Plaza
3-7A Prat Ave., TST,
Kowloon, Hong Kong
**Hong Kong Showroom:**
11 Canton Road, Suite 1015
TST, Kowloon
Tel  852.2926.8008
Fax  852.2312.0101

**The ABC Group**

EXHIBIT ____11____

PAGE ____69____

WACHOVIA 000093

CONFIDENTIAL



**MICRO GAMES OF AMERICA**

Corporate Office:

16730 Schoenborn Street

North Hills, CA

The ___ Group

SANTA CLARITA CA 913
PM
23 MAY
2000

U.S. POSTAGE
≤ 0.33

Mr. Bruce Laughton
Vice President
First Union
Congress Finance Corporation
251 South Lake Avenue, Ste. #900
Pasadena, CA 91101

MAY 2 4 2000

91101-3983 19

CONFIDENTIAL

EXHIBIT ___ 1

PAGE ___ 10

WACHOVIA 000094

# EXHIBIT 12

Matter No. 15904-142

UNITED STATES PATENT APPLICATION

For

# DOLL WITH AESTHETIC CHANGEABLE FOOTGEAR

Inventor:   Isaac Larian

## OPPENHEIMER

OPPENHEIMER WOLFF & DONNELLY LLP
2029 Century Park East, Suite 3800
Los Angeles, California 90067
(310) 788-5000
Fax (310) 788-5100

Attorney Matter No. 15904-142



LA: 333498 v01 02/13/2003

EXHIBIT ___12___

PAGE ___71___

MGA 0825485

# DOLL WITH AESTHETIC CHANGEABLE FOOTGEAR

## FIELD OF THE INVENTION

[0001] This invention relates to dolls or toy figures with changeable footgear.

## BACKGROUND OF THE INVENTION

[0002] It has previously been proposed to make dolls with shoes, boots or footgear which may be changed, and patents which relate to such arrangements include the following:

[0003]
| | | |
|---|---|---|
| L. Schmetzer | U.S. Pat. No. 187,322 | Granted February 13, 1877 |
| G. Doebrich | U.S. Pat. No. 831,330 | Granted September 18, 1906 |
| F. Steiff | U.S. Pat. No. 898,018 | Granted September 8, 1908 |
| P.H. Young | U.S. Pat. No. 2,175,789 | Granted October 10, 1939 |
| G.H. Calverley | U.S. Pat. No. 2,662,335 | Granted December 15, 1953 |
| S.F. Speers et al. | U.S. Pat. No. 3,475,042 | Granted October 28, 1969 |
| H.J. Solson et al. | U.S. Pat. No. 3,624,960 | Granted December 7, 1971 |
| Goldfarb et al. | U.S. Pat. No. 3,782,027 | Granted January 1, 1974 |
| Port | U.S. Pat. No. 4,030,240 | Granted June 21, 1977 |
| Lambert | U.S. Pat. No. 4,137,115 | Granted January 30, 1979 |
| Rahmstorf | U.S. Pat. No. 4,185,412 | Granted January 29, 1980 |
| Keiji | U.S. Pat. No. 4,643,691 | Granted February 17, 1987 |
| Schiavo et al. | U.S. Pat. No. 4,729,751 | Granted March 8, 1988 |
| Fogarty et al. | U.S. Pat. No. 1,186,673 | Granted February 16, 1993 |
| Larson | U.S. Pat. No. 5,588,895 | Granted December 31, 1996 |
| Kulchyski | U.S. Pat. No. 5,803,787 | Granted September 8, 1998 |
| Toft | U.S. Pat. No. 6,179,685 | Granted January 30, 2001 |
| Asmussen et al. | U.S. Pat. No. 6,203,396 | Granted March 20, 2001 |

[0004] In reviewing these patents, the appearance of the resultant dolls or figures is relatively "clunky" and not aesthetically pleasing.

## SUMMARY OF THE INVENTION

[0005] In accordance with the present invention a more aesthetically pleasing and elegant doll with changeable footgear, includes open work shoes with exposed portions of the feet matching the color and texture of the exposed legs; and straps of the shoes extend around the lower legs at the separation point where the removable foot/shoe assemblies mate with the lower leg. With this configuration, the straps of the shoes conceal the joint between the leg and the foot/shoe assembly, resulting in a more realistic and elegant doll construction.

-1-

MGA 0825486

[0006]   Additional features which may be included would involve the use of colored shoes and shoe straps which contrast sharply with the exposed skin areas of the foot; and snap-in mechanical arrangements for assembling the shoe/foot assemblies to the legs of the doll.

[0007]   Other objects, features and advantages will become apparent from a consideration of the following detailed description, and from the accompanying drawings.

## BRIEF DESCRIPTION OF THE DRAWINGS

[0008]   Fig. 1 shows a doll provided with changeable shoes or footgear, illustrating the principles of the invention;

[0009]   Fig. 2 is an enlarged cross-sectional view taken along the plane indicated at 2-2 of Fig. 1; and

[0010]   Figs. 3 – 5 illustrate alternative shoes or foot/shoe assemblies shown mounted on one leg of the doll of Fig. 1.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

[0011]   While the specification describes particular embodiments of the present invention, those of ordinary skill can devise variations of the present invention without departing from the inventive concepts.

[0012]   Referring more particularly to the drawings, Fig. 1 shows a doll 12 formed of known materials employed for dolls, such as resilient plastic material.  The doll 12 has lower legs 14, 16 and foot and shoe assemblies 18, 20 for mounting on the lower legs 14, 16, respectively.

[0013]   Fig. 2 is an enlarged cross-sectional view taken in the plane indicated at 2 – 2 in Fig. 1.

[0014]   In order to removably secure the shoe and foot assemblies 18, 20 to the legs 14, 16, the leg 14 has an enlarged protuberance 22 which snaps into a recess 24 in the assembly 18; and similarly, as shown in Fig. 2, the leg 16 has an enlarged protuberance 26 which locks into a recess 28 in the shoe and foot assembly 20.

2

EXHIBIT ____12____

PAGE ____73____

MGA 0825487

Matter No. 15904-142

[0015]   It is desirable that the separation points 30 and 32 be concealed or made less noticeable, to provide a more realistic appearance. This is accomplished by providing the shoes with the appearance of a strap 34 on assembly 18, and strap 36 on assembly 20. With the upper edge of the simulated strap enlargements 34, 36 coincident with the separation points 30, 32, the separation points are not conspicuous.

[0016]   This effect is enhanced by the exposed skin areas 42 on assembly 18 and 44 on assembly 20. Further, the color and texture of the lower legs 14, 16 are substantially the same as the color and texture of the exposed feet areas 42 and 44.

[0017]   Figs. 3, 4 and 5 illustrate typical alternative shoe styles which may be employed with the doll 12 of Fig. 1. Thus, a shoe/foot assembly may be selected of a color to match the color of a dress to be worn by the doll, or may be selected for special activities such as beach wear or formal occasions.

[0018]   In Fig. 3 the leg 52, separation point 54, and upper strap 56 on the foot/shoe assembly 58, are shown. In addition, the skin area 60 of the foot/shoe assembly 58 is substantially the same as that of the leg 52.

[0019]   Fig. 4 shows another alternative shoe/foot configuration 64 mounted on the leg 66 at separation point 68. As in the arrangements of Figs. 1 – 3, the simulated strap 70 conceals the separation point 68, and the skin area 72 of the foot matches that of the lower leg 66.

[0020]   Fig. 5 is a similar showing of a shoe/foot assembly 76 mounted on the lower leg 78 of the doll at separation point 80. The simulated strap 82 serves to camouflage the separation point. In Fig. 5 the shoe is shown darkened to emphasize that different colored shoes may be employed, and that it is desirable that the shoe color contrast sharply with the skin color for more effective concealment or camouflaging of the separation point. For specific examples, the shoe colors may be blue, green, red, black or some combination thereof.

[0021]   Return to Fig. 2 of the drawings, it may be noted that the protuberance 26 has a larger cross-sectional configuration than the mouth 27 of the opening 28. Accordingly, with both the doll legs 16, 18 and the foot/shoe assemblies 18 and 20 being of resilient

3

EXHIBIT _____12_____

PAGE _____74_____          MGA 0825488

material, the protuberance 26 may be snapped through the mouth 27 of the opening 28, and thereafter the shoe/foot assemblies are firmly held onto the legs 14, 16 of the doll.

[0022] In the foregoing detailed description, specific embodiments of the invention have been described. However, it is to be understood that various changes and modifications may be made without departing from the spirit and scope of the invention. Thus, by way of example and not of limitation instead of having the protuberance 26 on the leg 16 and the recess 28 on the shoe/foot assemblies, this configuration may be reversed, with the protuberance on the shoe/foot assembly, and the recess on the doll legs. Further, instead of a single protuberance and mating recess, other snap-together arrangements may be employed, using more than one protuberance/recess, or a snap-in ring and mating ring shaped recess could be used. It is also noted that, instead of using resilient plastic for the doll, stiffer plastic could be employed, and the foot/shoe assemblies may be attached using a simple concealed mechanical latch. Accordingly, the invention is not limited to the exact embodiments described hereinabove and shown in the drawings.

Δ

EXHIBIT _____ 12

PAGE _____ 15

MGA 0825489

Matter No. 15904-142

**WE CLAIM:**

    1.   A doll with changeable footgear comprising:

    a torso having a body and legs, said legs having a predetermined skin color and texture;

    a pair of foot/shoe assemblies, each including an open shoe with straps, with the shoe being open to expose at least part of the foot, the foot having substantially the same predetermined skin color and texture;

    each said assembly being removable secured to one of said legs at the lower leg or ankle of said doll at a separation point;

    each said assembly and lower legs having a snap-together joint with a protuberance on one part and a mating recess on the other part; and

    a simulated strap forming part of said shoe extending around said assembly at said separation point.

    2.   A doll as defined in claim 1 wherein the shoe portion of the foot/shoe assembly is colored to contrast sharply with the exposed skin areas of the foot.

    3.   A doll with changeable footgear as defined in claim 1 further including a plurality of different sets of shoes of different styles for selectively mounting on said legs.

    4.   A doll as defined in claim 1 wherein said doll and said foot/shoe assemblies are formed of resilient plastic material.

    5.   A doll with changeable footgear comprising:

    a torso having a body and legs, said legs having a predetermined color;

    a pair of foot/shoe assemblies, each including an open shoe with straps, with the shoe being open to expose at least part of the foot, the foot having substantially the same predetermined color;

    each said assembly being removable secured to one of said legs at the lower leg or ankle of said doll at a separation point;

5

EXHIBIT _____12_____

PAGE _____76_____

MGA 0825490

each said assembly and lower legs having a joint for releasably securing the foot/shoe assemblies to the legs; and

a simulated strap forming part of said shoe extending around said assembly at said separation point.

6.    A doll as defined in claim 5 wherein the shoe portion of the foot/shoe assembly is colored to contrast sharply with the exposed skin areas of the foot.

7.    A doll with changeable footgear as defined in claim 5 further including a plurality of different sets of shoes of different styles for selectively mounting on said legs.

8.    A doll as defined in claim 5 wherein said doll and said foot/shoe assemblies are formed of resilient plastic material.

9.    A doll with changeable footgear comprising:

a torso having a body and legs, said legs having a predetermined color;

a pair of foot/shoe assemblies, each including an open shoe with straps, with the shoe being open to expose at least part of the foot, the foot having substantially the same predetermined color;

each said assembly being removable secured to one of said legs at the lower leg or ankle of said doll at a separation point;

each said assembly and lower legs having a snap-together joint; and

a simulated strap forming part of said shoe extending around said assembly at said separation point.

10. A doll as defined in claim 9 wherein the shoe portion of the foot/shoe assembly is colored to contrast sharply with the exposed skin areas of the foot.

11. A doll with changeable footgear as defined in claim 9 further including a plurality of different sets of shoes of different styles for selectively mounting on said legs.

12. A doll as defined in claim 9 wherein said doll and said foot/shoe assemblies are formed of resilient plastic material.

6

EXHIBIT ___12___

PAGE ___77___

MGA 0825491

Matter No. 15904-142

13. A doll with changeable footgear comprising:

a torso having a body and legs;

a pair of foot/shoe assemblies, each including an open shoe with straps, with the shoe being open to expose at least part of the foot;

each said assembly being removable secured to one of said legs at the lower leg or ankle of said doll at a separation point;

each said assembly and lower legs having a joint for releasably securing the foot/shoe assemblies to the legs; and

a simulated strap forming part of said shoe extending around said assembly at said separation point.

14. A doll as defined in claim 13 wherein the shoe portion of the foot/shoe assembly is colored to contrast sharply with the exposed skin areas of the foot.

15. A doll with changeable footgear as defined in claim 13 further including a plurality of different sets of shoes of different styles for selectively mounting on said legs.

16. A doll as defined in claim 13 wherein said doll and said foot/shoe assemblies are formed of resilient plastic material.

17. A doll as defined in claim 13 wherein said exposed parts of the feet have substantially the same color as said legs.

z

EXHIBIT ___12___

PAGE ___78___

MGA 0825492

Matter No. 15904-142

## Doll With Aesthetic Changeable Footgear

ABSTRACT OF THE DISCLOSURE

A doll with changeable footgear includes a torso with legs, and a pair of foot/shoe assemblies mounted on the legs at separation points; and each foot shoe assembly has exposed skin of a color and texture substantially matching the skin of the legs, and the simulated shoes include simulated straps extending around the foot/shoe assembly immediately adjacent the separation point on each leg. Each foot/shoe assembly may be mounted on one of the doll legs, employing a protuberance on one part and a recess on the other part, with a snap-in locking fit between the two parts. The simulated shoes may be of a sharply contrasting color relative to the skin color.

8

EXHIBIT _____ 12

PAGE _____ 79

MGA 0825493

1/2



FIG. 1

FIG. 2

EXHIBIT ___12___

PAGE ___80___

MGA 0825494

2/2



FIG. 3

FIG. 4

FIG. 5

EXHIBIT____12____

PAGE____81____          MGA 0825495

# EXHIBIT 13

AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

_____ Eastern __ DISTRICT OF _Pennsylvania_____

CARTER BRYANT, an Individual

### SUBPOENA IN A CIVIL CASE

V.

MATTEL, INC., a Delaware Corporation

Case Number:[1]  C.D.Cal. CV 04-9049 SGL(RNBx)
Consolidated with cases CV 04-9059
and CV 05-2727

TO:  Wachovia Corporation, Legal Division
Legal Orders Processing
101 N. Independence Mall East, Philadelphia, PA 19106

[___]  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

[___]  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

[X]  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE | DATE AND TIME |
|---|---|
| Turbo Legal Support Services | November 8, 2007 |
| 417 Champion Avenue | 10 a.m. |
| West Collingswood, NJ 08107 |  |

[___]  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Plaintiff, Mattel, Inc. | October 25, 2007 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
Juan Pablo Alban, Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa St., 10th Floor, Los Angeles, CA 90017 (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

EXHIBIT _____13_____

AO-88

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE | |
|---|---|---|---|

**SERVED**

SERVED ON (PRINT NAME) | MANNER OF SERVICE

SERVED BY (PRINT NAME) | TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) if a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

EXHIBIT 13

PAGE 83

## ATTACHMENT A

### Documents To Be Produced

1.  **DEFINITIONS.**

        a.    "YOU" or "YOUR" means Wachovia Corporation, and all of YOUR affiliates, current or former employees, attorneys, including partners, associates and shareholders, agents, representatives, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other person acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

        b.    "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof. Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Requests herein.

        c.    "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, concepts, ideas, inventions and/or improvements, as well as all other items, things and documents in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part. the phrase "product, doll or DESIGN or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.

        d.    "MGA" means MGA Entertainment Inc., any of its current or

07209/2265091.1

1

EXHIBIT _____ 13

PAGE _____ 84

former employees, officers, directors, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, shareholders, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other person acting on its behalf, pursuant to its authority or subject to its control. Without any limitation on the foregoing, "MGA" includes "ABC International Traders, Inc.," as MGA was formerly known. Also without any limitation on the foregoing, "MGA" includes Isaac Larian.

       e.    "MATTEL ACTION" means this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly <u>Mattel, Inc. v. Bryant</u>, first filed in Los Angeles County Superior Court; <u>Bryant v. Mattel, Inc.</u>; and <u>MGA Entertainment, Inc. v. Mattel, Inc.</u>; and all counterclaims, cross-claims and defenses therein.

       f.    The "FARHAD LARIAN DISPUTES" means any and all suits, arbitrations and disputes between Farhad Larian, on the one hand, and Isaac Larian, on the other hand, including without limitation the actions captioned <u>Fahrad Larian v. Isaac Larian</u>, Los Angeles Superior Court Case No. BC 301371 and <u>Fahrad Larian v. Morad Zarabi et al.</u>, Los Angeles Superior Court Case No. BC 329501, and the arbitration captioned <u>Fahrad Larian v. Isaac Larian</u> before ADR Services, Inc., ADRS Case No. 05-2096-ABH.

## 2.   <u>DOCUMENTS TO BE PRODUCED.</u>

    (1)   All documents relating to any loan agreement, including without limitation any line of credit or other financing arrangement, that YOU have entered into with MGA since January 1, 1999, including without limitation drafts of any agreements.

    (2)   To the extent not included in YOUR production responsive to Request No. 1, all documents that MGA or any other person provided to YOU for purposes of entering into any loan agreement between YOU and MGA, including without limitation any line of credit or other financing arrangement or agreement, at any time since January 1, 1999, including without limitation accounting records, tax returns, pro formas, expense records, financial projections, budgets or business plans.

    (3)   To the extent not included in YOUR production responsive to Request

07209/2265091.1

2

EXHIBIT   13

PAGE   85

Nos. 1-2, all documents that were in the "three (3) boxes of loan documents" that YOU refer to in YOUR November 15, 2005 letter to Robert G. Wilson, Esq., letter which is included herein as Attachment "B."

(4) To the extent not included in YOUR production responsive to Request Nos. 1-3, all documents relating to any loan agreement entered into by MGA, or sought or requested by MGA, during the time period January 1, 1999 and December 31, 2000, inclusive.

(5) To the extent not included in YOUR production responsive to Request Nos. 1-4, all communications between YOU and MGA during the time period January 1, 1999 and December 31, 2000, inclusive.

(6) To the extent not included in YOUR production responsive to Request Nos. 1-5, all documents indicating or showing a calculation of MGA's net worth or value.

(7) To the extent not included in YOUR production responsive to Request Nos. 1-6, all documents indicating or calculating the value of MGA's intellectual property or goodwill.

(8) All documents relating to BRATZ, including without limitation those YOU obtained from MGA, since January 1, 1999.

(9) All documents relating to the MATTEL ACTION.

(10) All documents relating to the FARHAD LARIAN DISPUTES, including without limitation any discovery requests received by YOU in connection therewith and any communications between YOU and counsel for Farhad Larian or counsel for Isaac Larian.

(11) Documents sufficient to show your preservation, retention or destruction policies applicable to documents sought by or the subject of Request Nos. 1 through 10.

(12) Documents sufficient to identify any other MGA lender or person who extended or was requested to extend a line of credit to MGA since January 1, 1998.

07209/2265091 1

3

EXHIBIT __13__

PAGE __86__

## ATTACHMENT B

EXHIBIT____13____

PAGE____87____

Wachovia Corporation
Legal Division
NC0630
One Wachovia Center
301 South College Street
Charlotte, NC 28288

Tel 704 374-6611



Fenita M. Shepard
Vice President
Assistant General Counsel
Direct Dial 704-383-4448
Fax 704-383-0649
fenita.shepard@wachovia.com

**WACHOVIA**

November 15, 2005

**VIA FAX AND US MAIL**
Robert G. Wilson, Esq.
Cotkin, Collins, & Ginsburg
300 South Grand Avenue, 24th Floor
Los Angeles, CA 90071-3134

    RE:   LARIAN V. LARIAN ARBITRATION

Dear Mr. Wilson:

    Not only do I concur with Mr. Feldman's position, but also there is absolutely no way that I can produce the documents to you by tomorrow. There are three (3) boxes of loan documents that need to be reviewed for responsiveness and privilege. Only after such a review, can these documents be made available.

    Also, Mr. Laugton will be on vacation from November 21, 2005 through November 28, 2005. Please let me know if you are agreeable to a stipulation as to the authenticity of the documents so that Mr. Laughton will not have to appear. Otherwise, please let me know when, this week, you will need Mr. Laughton to testify.

        Very truly yours,

        Fenita M. Shepard

Cc:    Richard L. Kellner, Esq.
        Robert M. Turner, Esq.

EXHIBIT _____ 13 _____

PAGE _____ 88 _____

**CC 00570**

1 **PROOF OF SERVICE**

2       I am employed in the County of Los Angeles, State of California. I am over the age of eighteen
years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor,
3   Los Angeles, California 90017-2543.

4       On October 25, 2007, I served true copies of the following document(s) described as
**NOTICE OF SUBPOENA ISSUED TO WACHOVIA CORPORATION** on the parties in this
5   action as follows:

6

7       Thomas J. Nolan, Esq.                    John W. Keker, Esq.
        Carl Roth, Esq.                          Michael H. Page, Esq.
8       **SKADDEN, ARPS, SLATE, MEAGHER**        Christina M. Anderson, Esq.
          **& FLOM LLP**                          **KEKER & VAN NEST, LLP**
9       300 S. Grand Ave., STE 3400              710 Sansome St.
        Los Angeles, CA 90071                    San Francisco, CA 94111
10

        Mark E. Overland
11      David C. Scheper
        Alexander H. Cote
12      **OVERLAND BORENSTEIN SCHEPER**
          **& KIM, LLP**
13      300 South Grand Avenue, Suite 2750
        Los Angeles, CA 90071
14

15

16
    **BY MAIL:** I am "readily familiar" with the practices of Quinn Emanuel Urquhart Oliver & Hedges for
17  collecting and processing correspondence for mailing with the United States Postal Service. Under that
    practice, it would be deposited with the United States Postal Service that same day in the ordinary course of
18  business. I enclosed the foregoing in sealed envelope(s) addressed as shown above, and such envelope(s)
    were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, California, on
19  that same day following ordinary business practices.

20
        I declare under penalty of perjury under the laws of the State of California that the foregoing is true
21  and correct.

22      Executed on October 25, 2007, at Los Angeles, California.

23

24                                              _____
                                                Lorraine Robles
25

26

27

28
                                EXHIBIT _____13_____

    07209/2265471.1
                                PAGE _____89_____

# EXHIBIT 14

CONFIDENTIAL

982(a)(15.1)

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number and address)* | FOR COURT USE ONLY |
|---|---|
| Richard L. Kellner, Esq. (SBN: 171416)<br>Kabateck Brown Kellner LLP<br>350 S. Grand Ave., 39th Fl.<br>Los Angeles, CA 90071<br>TELEPHONE NO  213/ 217-5000     FAX NO  213/ 217-5010<br>ATTORNEY FOR *(Name)*  Claimant Farhad Larian | |

NAME OF COURT  ARBITRATION BEFORE ADR SERVICES, INC.

STREET ADDRESS

MAILING ADDRESS

CITY AND ZIP CODE

BRANCH NAME

PLAINTIFF/ PETITIONER  Farhad Larian

DEFENDANT/ RESPONDENT  Isaac Larian

| CIVIL SUBPOENA (DUCES TECUM) for Personal Appearance<br>and Production of Documents and Things at Trial or Hearing<br>AND DECLARATION | CASE NUMBER<br>ADRS Case No.: 05-2096-ABH |
|---|---|

THE PEOPLE OF THE STATE OF CALIFORNIA, TO *(name, address, and telephone number of witness, if known)*:
Bruce Laughton, 251 S. Lake Ave., Pasadena, CA 91101

1   **YOU ARE ORDERED TO APPEAR AS A WITNESS in this action at the date, time, and place shown in the box below UNLESS your appearance is excused as indicated in box 3b below or you make an agreement with the person named in item 4 below.**

| a. Date  Nov. 16, 2005      Time  9:00 am     ☐ Dept.:          ☐ Div.:      ☑ Room: 250 |
|---|
| b  Address: 1900 Avenue of the Stars, Suite 250, Los Angeles, CA 90067 |

2   **IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.**

3   YOU ARE *(item a or b must be checked)*
  a   ☒☒ Ordered to appear in person and to produce the records described in the declaration on page two or the attached declaration or affidavit  The personal attendance of the custodian or other qualified witness and the production of the original records are required by this subpoena  The procedure authorized by Evidence Code sections 1560(b), 1561, and 1562 will not be deemed sufficient compliance with this subpoena.
  b.   ☐ Not required to appear in person if you produce (i) the records described in the declaration on page two or the attached declaration or affidavit and (ii) a completed declaration of the custodian in compliance with Evidence Code sections 1560, 1561, 1562, and 1271  (1) Place a copy of the records in an envelope (or other wrapper). Enclose the original declaration of the custodian with the records  Seal the envelope. (2) Attach a copy of this subpoena to the envelope or write on the envelope the case name and number; your name; and the date, time, and place from item 1 in the box above  (3) Place this first envelope in an outer envelope, seal it, and mail it to the clerk of the court at the address in item 1.  (4) Mail a copy of your declaration to the attorney or party listed at the top of this form.

4.   **IF YOU HAVE ANY QUESTIONS ABOUT THE TIME OR DATE YOU ARE TO APPEAR, OR IF YOU WANT TO BE CERTAIN THAT YOUR PRESENCE IS REQUIRED, CONTACT THE FOLLOWING PERSON BEFORE THE DATE ON WHICH YOU ARE TO APPEAR:**

  a.  Name of subpoenaing party or attorney  Richard L. Kellner, Esq.     b.  Telephone number: 213/ 217-5000

5.   Witness Fees:  You are entitled to witness fees and mileage actually traveled both ways, as provided by law, if you request them at the time of service  You may request them before your scheduled appearance from the person named in item 4

| DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY. |
|---|

Date issued  October 28, 2005
　　　　　　Alan B. Haber
　　　　　(TYPE OR PRINT NAME)

▶ _(signature)_
(SIGNATURE OF PERSON ISSUING SUBPOENA)
ARBITRATOR
(TITLE)

*(Declaration in support of subpoena on reverse)*                    Page one of three

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>982(a)(15 1) [Rev  January 1 2000] | CIVIL SUBPOENA (DUCES TECUM) FOR PERSONAL APPEARANCE<br>AND PRODUCTION OF DOCUMENTS AND THINGS<br>AT TRIAL OR HEARING AND DECLARATION | Code of Civil Procedure<br>§ 1985 et seq |
|---|---|---|

EXHIBIT _____ 14

PAGE _____ 90                    FL 1041

CONFIDENTIAL

| PLAINTIFF/PETITIONER: Farhad Larian | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Isaac Larian | ADRS Case No.: 05-2096-ABH |

The production of the documents or the other things sought by the subpoena on page one is supported by *(check one)*:
☐ the attached affidavit or declaration    ☑ the following declaration:

### DECLARATION IN SUPPORT OF CIVIL SUBPOENA (DUCES TECUM) FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS AT TRIAL OR HEARING
(Code Civ. Proc., §§ 1985, 1987.5)

1. I, the undersigned, declare I am the ☐ plaintiff ☐ defendant ☐ petitioner ☐ respondent
   ☑ attorney for *(specify)*: Claimant    ☐ other *(specify)*:
   in the above-entitled action.

2. The witness has possession or control of the following documents or other things and shall produce them at the time and place specified in the *Civil Subpoena for Personal Appearance and Production of Documents and Things at Trial or Hearing* on page one of this form *(specify the exact documents or other things to be produced)*:
   See attached "Exhibit A".

☐ Continued on Attachment 2.

3. Good cause exists for the production of the documents or other things described in paragraph 2 for the following reasons:
   Good cause exists in that Claimant Farhad Larian does not have access to the requested documents and the documents relate to this matter as explained in paragraph 4 herein.

☐ Continued on Attachment 3.

4. These documents or other things described in paragraph 2 are material to the issues involved in this case for the following reasons:
   The documents contain evidence relating to the claims of Farhad Larian against Isaac Larian in that they relate and/or refer to information that is relevant to the issues in this matter, including without limitation, the development of the Bratz doll, MGA financial results, and the sale of stock from Farhad Larian to Isaac Larian.

☐ Continued on Attachment 4.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: October 28, 2005

. . . . . . . . . Robert G. Wilson . . . . . . . . .
(TYPE OR PRINT NAME)

(SIGNATURE OF ☐ SUBPOENAING PARTY ☑ ATTORNEY FOR SUBPOENAING PARTY)

(Proof of service on page three)

**CIVIL SUBPOENA (DUCES TECUM) FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS AT TRIAL OR HEARING AND DECLARATION**     Page two of three

EXHIBIT _____ 14

PAGE _____ 91

FL 1042

CONFIDENTIAL

## Exhibit A

1.    All DOCUMENTS which evidence, discuss, report, mention, or relate to BRATZ (including, without limitations, the development, marketing, licensing and sale of BRATZ), where such document was possessed by YOU at any time on or before December 31, 2000.

2.    All DOCUMENTS which evidence, discuss, report, mention, or relate to any trademark filing or application for trademark for BRATZ.

3.    All DOCUMENTS which evidence, discuss, report, mention, or relate to any marketing efforts undertaken by MGA for any product it was developing from January 1, 1999 through December 31, 2000.

4.    All DOCUMENTS which evidence, discuss, report, mention or relate to the 2001 New York Toy Fair.

5.    All DOCUMENTS which evidence, discuss, report, mention, or relate to Carter Bryant, where such document was possessed by YOU on or before December 31, 2000.

6.    All DOCUMENTS which memorialize any meeting of the directors of MGA from its date of incorporation until December 31, 2000, including, without limitation, all Board of Director minutes

7.    All DOCUMENTS which memorialize any meeting of the directors of ABC from its date of incorporation until December 31, 2000, including, without limitation, all Board of Director minutes.

8.    All DOCUMENTS which evidence, discuss, report, mention, or relate to all dividends, profits, salaries or any other compensation provided to any shareholder of MGA from January 1, 1999 until the present.

9.    All DOCUMENTS which evidence, discuss, report, mention, or relate to all dividends, profits, salaries or any other compensation provided to any shareholder of ABC from January 1, 1999 until the present.

10.   All DOCUMENTS which evidence, discuss, report, mention, or relate to the STOCK SALE AGREEMENT.

'11-1 wpd

EXHIBIT ___14___

PAGE ___92___                    **FL 1043**

CONFIDENTIAL

11. All DOCUMENTS which evidence, discuss, report, mention, or relate to the value of MGA or its stock from January 1, 1999 through the present, including without limitation stock options issued.

12. All DOCUMENTS which evidence, discuss, report, mention, or relate to the value of ABC or its stock from January 1, 1999 through the present, including without limitation stock options issued.

13. All DOCUMENTS which evidence, discuss, report, mention, or relate to the ARBITRATION AGREEMENTS.

14. All DOCUMENTS provided by YOU to Ernest Dutcher, either directly or through any intermediary.

15. All DOCUMENTS provided to Fahrad Larian that evidence, discuss, report, mention or relate to any product in development at ABC and/or MGA from January 1, 1999 through December 31, 2000.

16. All DOCUMENTS which evidence, discuss, report, mention or relate to any COMMUNICATIONS between YOU and Ernest Dutcher.

17. All DOCUMENTS provided by YOU to Morad Zarabi (either directly or through any intermediary) in connection with any dispute that you have had with Fahrad Larian including, without limitation, those that relate to the ARBITRATION and any proposed sale of stock between YOU and Fahrad Larian at any time.

18. All DOCUMENTS which evidence, discuss, report, mention, or relate to any attempt by any shareholder to sell his or her interest in MGA, or any part thereof, to any other person or entity between January 1, 1996 and the present.

19. All DOCUMENTS which evidence, discuss, report, mention, or relate to any attempt by any shareholder to sell his or her interest in ABC, or any part thereof, to any other person or entity between January 1, 1996 and the present.

20. All DOCUMENTS that constitute, evidence or relate to any COMMUNICATION with Farhad Larian that mentions BRATZ.

21. All DOCUMENTS which evidence, discuss, report, mention, or relate to any shareholder resolution of MGA between January 1, 1996 through December 31, 2000.

711-1 wpd

EXHIBIT ____14____

PAGE ____93____

FL 1044

CONFIDENTIAL

22.   All DOCUMENTS which evidence, discuss, report, mention or relate to the sale of shares in MGA to any individual or entity from January 1, 1999 through the present date.

23.   All DOCUMENTS which evidence, discuss, report, mention or relate to the sale of shares in ABC to any individual or entity from January 1, 1999 through the present date.

24.   All corporate tax returns prepared for ABC and MGA from January 1, 1999 through the present date.

25.   All appraisals prepared for ABC or MGA from January 1, 1999 through the present date.

26.   All deposition transcripts, declarations or sworn statements that mention BRATZ.

*  *  *  *  *

11-1 wpd

EXHIBIT ___14___

PAGE ___94___

FL 1045

CONFIDENTIAL

# ORIGINAL

T-245   P 017/017   F-841

| ATTORNEY OR PARTY WITHOUT ATTORNEY (name and Address) | | | |
|---|---|---|---|
| RICHARD L. KELLNER (SBN: 171416)<br>KABATECK BROWN KELLNER LLP<br>350 SOUTH GRAND AVENUE, 39TH FLOOR<br>LOS ANGELES, CALIFORNIA 90071<br>Attorney(s) for:Claimant Farhad Larian<br>Ref.:46645 aml | (213)217-5000 | | |
| ARBITRATION BEFORE ADR SERVICES, INC. | | | |
| FARHAD LARIAN  VS.  ISAAC LARIAN | | | |

| **PROOF OF SERVICE** | DATE:<br>NOVEMBER 16, 2005 | TIME:<br>9:00 A.M. | DEPT | CASE NUMBER:<br>ADRS Case No. 05-2096-ABH |
|---|---|---|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action, and I served copies of the: CIVIL SUBPOENA (DUCES TECUM) FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS AND THINGS AT TRIAL OR HEARINGAND DECLARATION

2. a. Party served: BRUCE LAUGHTON

   b. Person with whom left: BRUCE LAUGHTON

   c. Title or Relationship: WITNESS

   d. Address:          12065 BEAUFAIT AVENUE
                        NORTHRIDGE, CALIFORNIA 91326

   e. ☐Business   ☒Residence   ☐Other

3. I served the party named in item 2a. by personally delivering the copies to the person served as follows:

(1) on: OCTOBER 29, 2005                (2) at: 6:54 P.M.

4. Witness fees and mileage both ways (check one):     ☐(1)were paid. Amount: $
                                                       ☒(2) were not paid.

5. Person serving:
MICHAEL LEE SMITH
TIME MACHINE NETWORK
P.O. BOX 861057
LOS ANGELES, CALIFORNIA 90086
(800) 994-5454

a. Fee for service $

b. Registered California process server
   (1) Employee or independent contractor
   (2) Registration No.:5159
   (3) County : LOS ANGELES

6. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: October 31, 2005

Proof of Service complies with CRC 982(a)(23) as required by CCP 417.10

PROOF OF SERVICE

EXHIBIT _____14____

PAGE _____95____

FL 1046

# EXHIBIT 15

# REDACTED

# SUBJECT TO

# PROTECTIVE ORDER