**Exhibit  1**

**COPY**

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Plaintiff
Mattel, Inc.

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

APR 27 2004

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
        SUE GABB

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

MATTEL, INC., a Delaware corporation,

                        Plaintiff,

            v.

CARTER BRYANT, an individual; and
DOES 1 through 10, inclusive,

                        Defendants.

CASE NO. __BC314398__

COMPLAINT FOR:

(1)  BREACH OF CONTRACT;
(2)  BREACH OF FIDUCIARY DUTY;
(3)  BREACH OF DUTY OF LOYALTY;
(4)  UNJUST ENRICHMENT; AND
(5)  CONVERSION

07209/579342.1

EXHIBIT __1__   PAGE __8__
COMPLAINT

Plaintiff Mattel, Inc. ("Mattel") brings this action against defendants Carter Bryant ("Bryant") and Does 1 through 10 (all defendants being collectively referred to as "defendants") and alleges as follows:

<u>Parties</u>

1.     Mattel is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business in El Segundo, California.

2.     Mattel is informed and believes, and on that basis alleges, that defendant Bryant is an individual currently residing in Springfield, Missouri.

3.     The true names and capacities of defendants sued herein as Does 1 through 10, inclusive, are unknown to Mattel, which therefore sues said defendants by such fictitious names.  Mattel will amend this Complaint to allege their true names and capacities when the same are ascertained.

4.     Mattel is informed and believes, and on that basis alleges, that at all times relevant herein, defendants, and each of them, were acting in concert and active participation with each other in committing the wrongful acts alleged herein, and were the agents of each other, and in doing the things alleged herein, each defendant was acting within the course and scope of his, her or its agency and was subject to and under the supervision of, and was acting with the knowledge of, his, her or its co-defendants.

<u>Jurisdiction and Venue</u>

5.     During the time of the acts complained of herein, Bryant was employed by Mattel in, and was a resident of, Los Angeles County.  Bryant's contracts with Mattel that are at issue in this action were executed, performed and breached by Bryant in Los Angeles County.  In addition, defendants committed the tortious conduct alleged herein while physically located in Los Angeles County, and Mattel felt the effects of Bryant's breach and

-2-

COMPLAINT

EXHIBIT    1    PAGE   9

1 | defendants' other wrongful acts in Los Angeles County.   Accordingly, this Court has
2 | personal jurisdiction over defendants.

3 |   6.   Venue is proper pursuant to <u>Code of Civil Procedure</u> §§ 393 and 395(a),
4 | as the causes of action arose in Los Angeles County, the contractual obligations at issue were
5 | incurred, were to be performed and were breached by Bryant in Los Angeles County, and
6 | Bryant does not currently reside in California.

<u>Factual Background</u>

7 |   7.   Mattel is a long standing and successful independent manufacturer and
marketer of toys, dolls, games and stuffed toys and animals.  Mattel was founded in 1945 by
Elliot and Ruth Handler and Harold "Matt" Mattson.  The name of the company was created
by incorporating the names of two of its founders, "MATT-son" and "EL-liot."  Originating
from the Handlers' garage in Southern California, the company greatly expanded its
operations following World War II and soon began to thrive as its reputation for producing
high-quality toys spread.  During the next several decades, Mattel became world famous for
producing high-quality products at reasonable prices.  Today, some of Mattel's most famous
brands include BARBIE, HOT WHEELS, MATCHBOX and FISHER-PRICE.

8 |   8.   Critical to Mattel's success, and to the livelihood of its employees, is
Mattel's ability to design and develop new products.  Mattel invests many millions of dollars
in product design and development annually, and it introduces hundreds of new products
each year.  In El Segundo, California alone, Mattel maintains a 180,000 square-foot design
center that houses more than 850 designers, sculptors, painters and other artists, whom
Mattel pays to work exclusively and full-time to create the products that Mattel sells and on
which Mattel's business depends.

9 |   9.   Defendant Bryant was employed by Mattel from September 1995
through April 1998, and then again from January 1999 through October 2000, as a product
designer at Mattel's design center in El Segundo, California.

EXHIBIT ___ PAGE ___ COMPLAINT

10.    On January 4, 1999, upon starting his second term of employment by Mattel, and as a condition of and in consideration for his employment, Bryant executed an Employee Confidential Information and Inventors Agreement (the "Employee Agreement"). Among other things, Bryant agreed that he would not, without Mattel's express written consent, "engage in any employment or business other than for [Mattel], or invest in or assist (in any manner) any business competitive with the business or future business plans of [Mattel]." Bryant further acknowledged that he held a position of trust with Mattel. In addition, Bryant assigned to Mattel all rights, title and interest in "inventions," including without limitation "designs," that he conceived or reduced to practice during his employment by Mattel. A true and correct copy of Bryant's Employee Agreement with Mattel is attached as Exhibit A.

11.    Also on January 4, 1999, Bryant executed Mattel's Conflict of Interest Questionnaire (the "Conflict Questionnaire"). Among other things, Bryant certified in the Conflict Questionnaire that, other than as disclosed, he had not worked for any competitor of Mattel in the prior twelve months and had not engaged in any business venture or transaction involving a Mattel competitor that could be construed as a conflict of interest. Bryant specifically agreed that he would immediately notify his supervisor of any change in his situation that would cause him to change any of the foregoing certifications. The only conflict disclosure that Bryant made on the Conflict Questionnaire (or at any time subsequently) concerned freelance work that is unrelated to the conduct alleged herein. A true and correct copy of the Conflict Questionnaire executed by Bryant is attached as Exhibit B.

12.    In late November 2003, Mattel learned that Bryant had secretly aided, assisted and worked for a Mattel competitor, including without limitation by entering into an agreement with the competitor, during the time Bryant was employed by Mattel pursuant to the above-referenced agreements and was being paid by Mattel as a product designer. Bryant's agreement with the competitor obligated Bryant to provide product design services to the competitor on a "top priority" basis. Bryant's agreement also provided, among other

-4-

EXHIBIT __1__    PAGE _11_                    COMPLAINT

1  things, that Bryant would receive royalties and other consideration for sales of products on
2  which Bryant provided aid or assistance; that all work and services furnished by Bryant to
3  the competitor under the agreement purportedly would be considered "works for hire"; and
4  that all intellectual property rights to preexisting work by Bryant purportedly would be
5  assigned to the competitor. In addition, while Bryant was employed by Mattel, Bryant and
6  the other defendants converted, misappropriated and misused Mattel property and resources
7  for the benefit of, and to aid and assist, Bryant personally and Mattel's competitor.

8         13.    During the time that he was employed by Mattel and thereafter, Bryant
9  concealed these actions from Mattel, including without limitation by failing to notify his
10  supervisor of his conflict of interest regarding the competitor and by making affirmative
11  misrepresentations to Mattel management upon his departure from Mattel. Because of
12  Bryant's acts of concealment and his misrepresentations to Mattel, Mattel had no reason to
13  suspect that Bryant had worked for the competitor while still employed by Mattel until late
14  November 2003, when Mattel received, through an unrelated legal action, a copy of Bryant's
15  agreement with the competitor and saw that the date of the agreement predated Bryant's
16  departure from Mattel.

17         14.    As a consequence, Bryant breached his contracts with Mattel and
18  violated his duty of loyalty and his fiduciary duties to Mattel; the other defendants have
19  unlawfully aided and abetted his violation of such duties; and each of the defendants has
20  been unjustly enriched and engaged in acts of conversion.

21

22                        FIRST CLAIM FOR RELIEF
23                          (Breach of Contract)
24

25         15.    Mattel repeats and realleges each and every allegation set forth in
26  paragraphs 1 through 14, above, as though fully set forth at length.
27         16.    Pursuant to his Mattel Employment Agreement, and for good and
28  valuable consideration, Bryant agreed that he would not, without Mattel's express written

07209/579342.1

-5-

EXHIBIT ___1___ PAGE 12                          COMPLAINT

consent, engage in any employment or business other than for Mattel or assist in any manner any business competitive with the business or future business plans of Mattel during his employment with Mattel. Pursuant to his Mattel Employment Agreement, Bryant further assigned to Mattel all right, title and interest in "inventions," including without limitation "designs," that he conceived or reduced to practice during his employment by Mattel. In addition, pursuant to the Conflict Questionnaire, Bryant certified that, other than as disclosed, he had not worked for any competitor of Mattel and had not engaged in any business venture or transaction involving a Mattel competitor that could be construed as a conflict of interest. Bryant further promised that he would notify his superior immediately of any change in his situation that would cause him to change any of the foregoing certifications or representations.

17.     The Employment Agreement and the Conflict Questionnaire are valid, enforceable contracts, and Mattel has performed each and every term and condition of the Employment Agreement and Conflict Questionnaire required to be performed by Mattel.

18.     Bryant materially breached the foregoing contracts with Mattel, in that, among other things, he secretly aided, assisted and worked for a Mattel competitor during his employment with Mattel, without the express written consent of Mattel.

19.     As a consequence of Bryant's breach, Mattel has suffered and will in the future continue to suffer damages in an amount to be proven at trial. Such damages include, without limitation, the amounts paid by the competitor to Bryant during his Mattel employment; the amounts paid by the competitor to Bryant as a result of the work he performed for the competitor during his Mattel employment; the amount that Mattel paid Bryant during the time he wrongfully worked for the competitor; the value of information and intellectual property owned by Mattel which Bryant provided to the competitor; the value of the benefits the competitor obtained from Bryant during the time he was employed by Mattel; and the value of the benefits the competitor obtained from Bryant as a result of the work he performed for the competitor during his Mattel employment.

EXHIBIT ___1___ PAGE _13_          -6-          COMPLAINT

20.   Furthermore, Bryant's conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Bryant specifically acknowledged in his Employment Agreement that his breach of the Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies." Accordingly, Mattel is entitled to orders mandating Bryant's specific performance of his contracts with Mattel and restraining Bryant from further breach.

## SECOND CLAIM FOR RELIEF

(Breach of Fiduciary Duty)

21.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 20, above, as though fully set forth at length.

22.   Bryant held a position of trust and confidence with Mattel. In his position, Bryant had access to and was entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently in many of his job assignments and duties. In his position, Bryant also represented Mattel in its dealings with third parties and, in his actions in the course and scope of his employment with Mattel, was an agent of Mattel. Bryant confirmed his relationship of trust with Mattel in the Employee Agreement. Bryant thus owed Mattel a fiduciary duty that included, but was not limited to, an obligation not to take any action that would be contrary to Mattel's best interests or that would deprive Mattel of any opportunities, profit or advantage which Bryant might bring to Mattel.

23.   Bryant breached his fiduciary duty to Mattel in that, while employed by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including without limitation by entering into an agreement with a Mattel competitor. As alleged

07209/579342.1

-7-

EXHIBIT ___1___ PAGE _14_

COMPLAINT

1  above, Bryant also breached the aforementioned duty by using Mattel property and resources

2  for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3       24.   The other defendants, acting with full knowledge of Bryant's obligations

4  to Mattel, aided and abetted Bryant in such conduct.

5       25.   As a direct and proximate result of defendants' wrongful conduct,

6  Mattel has incurred damages in an amount to be determined at trial.

7       26.   Defendants acted with malice, fraud and oppression, and in conscious

8  disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages

9  against defendants in an amount to be determined at trial.

10      27.   Furthermore, defendants' conduct has caused, and unless enjoined will

11  continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

12  money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel

13  is entitled to an order restraining further breach of Bryant's fiduciary duty to Mattel and/or

14  restraining defendants from continuing to benefit from such breach.

15

16                     THIRD CLAIM FOR RELIEF

17                     (Breach of Duty of Loyalty)

18

19      28.   Mattel repeats and realleges each and every allegation set forth in

20  paragraphs 1 through 27, above, as though fully set forth at length.

21      29.   As an employee of Mattel, Bryant owed a duty of undivided loyalty to

22  Mattel, his employer. Pursuant to this duty, Bryant could not compete with Mattel or assist

23  a competitor of Mattel during his employment with Mattel. Pursuant to this duty, Bryant

24  was required to always give preference to Mattel's business over his own, similar interests

25  during the course of his employment with Mattel.

26      30.   Bryant breached his duty of loyalty to Mattel in that, while employed

27  by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including

28  without limitation by entering into an agreement with a Mattel competitor. As alleged

1  above, Bryant also breached the aforementioned duty by using Mattel property and resources

2  for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3      31.    The other defendants, acting with full knowledge of Bryant's obligations

4  to Mattel, aided and abetted Bryant in such wrongful conduct.

5      32.    As a direct and proximate result of defendants' wrongful conduct,

6  Mattel has incurred damages in an amount to be determined at trial.

7      33.    Defendants acted with malice, fraud and oppression, and in conscious

8  disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages

9  against defendants in an amount to be determined at trial.

10     34.    Furthermore, defendants' conduct has caused, and unless enjoined will

11 continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

12 money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel

13 is entitled to an order restraining further breach of Bryant's duty of loyalty to Mattel and/or

14 restraining defendants from continuing to benefit from such breach.

15

16 **FOURTH CLAIM FOR RELIEF**

17 (Unjust Enrichment)

18

19     35.    Mattel repeats and realleges each and every allegation set forth in

20 paragraphs 1 through 34, above, as though fully set forth at length.

21     36.    Defendants, by the aforementioned conduct, unfairly used and diverted

22 Mattel property, resources and opportunities for the benefit of, and to aid and assist,

23 themselves, all without authorization by or payment to Mattel for the same. Defendants have

24 been unjustly enriched as a result.

25     37.    Mattel is entitled to an award of all such amounts by which defendants

26 have been unjustly enriched in an amount to be determined at trial.

27

28

-9-

EXHIBIT 1    PAGE 16    COMPLAINT

1    38.    Defendants acted with malice, fraud and oppression, and in conscious

2  disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages

3  against defendants in an amount to be determined at trial.

4    39.    Furthermore, defendants' conduct has caused, and unless enjoined will

5  continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

6  money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel

7  is entitled to an order restraining defendants from any further unjust enrichment.

8

9                    FIFTH CLAIM FOR RELIEF

10                    (Conversion)

11

12    40.    Mattel repeats and realleges each and every allegation set forth in

13  paragraphs 1 through 39, above, as though fully set forth at length.

14    41.    Mattel was entitled to, inter alia, Bryant's exclusive services and the

15  exclusive ownership of his inventions as a Mattel product designer. However, Bryant

16  provided such services, and purported to grant rights to such inventions, to a competitor

17  during the time of his exclusive Mattel employment. All such services and the inventions

18  and work product resulting from such services, including without limitation ideas, concepts,

19  rights, designs, proprietary information, and other intellectual property and intangible

20  property created by Bryant during the term of the aforesaid agreements, were the property

21  of Mattel. Such services and property were provided by Bryant to others, including

22  defendants, and used by them.

23    42.    Defendants wrongfully converted Mattel property and resources by

24  asserting ownership thereto and by appropriating and using Mattel's property and resources

25  for their own benefit and gain and for the benefit and gain of others, without the permission

26  of Mattel.

27

28

43.     As a direct and proximate result of defendants' wrongful conversion of Mattel's property and resources, Mattel has incurred damages.  Mattel is entitled to recover compensatory damages against defendants in an amount to be determined at trial.

44.     Defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to an award of punitive damages against defendants in an amount to be determined at trial.

45.     Furthermore, defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel is entitled to an order restraining defendants from further conversion of Mattel property and resources and/or restraining defendants from continuing to benefit from such conversion.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Mattel hereby respectfully requests that this Court:

A.     Award Mattel its damages;

B.     Order defendants to disgorge to Mattel all payments, revenue, profits, monies, royalties and any other benefits derived or obtained by defendants as a result of the conduct described herein;

C.     Order specific performance by Bryant to comply with and satisfy Bryant's contractual obligations to Mattel;

D.     Enter an injunction restraining defendants, and all those acting in concert or participation with them, from engaging in further wrongful conduct and/or from continuing to benefit from their wrongful conduct;

E.     Order defendants to pay Mattel the full cost of this action and Mattel's reasonable attorneys' fees;

F.     Award Mattel punitive damages in an amount sufficient to punish defendants and deter such misconduct in the future; and

-11-

EXHIBIT __1__ PAGE __18__

COMPLAINT

1         G.     Award such other and further relief as this Court deems just and proper.

2

3    DATED:  April 27, 2004           QUINN EMANUEL URQUHART OLIVER &
                            HEDGES, LLP

4

5                             By

6                                Michael T. Zeller
                            Attorneys for Plaintiff

7                                Mattel, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/579342.1

-12-

COMPLAINT

EXHIBIT __1__ PAGE __19__

**Exhibit A**

EXHIBIT 1    PAGE 20

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) Inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from my work with the Company will not conflict with the Company's development or its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

**1. Provisions Related to Trade Secrets**

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

**2. Ownership of Inventions**

(a) I agree to communicate to the Company as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such Inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any Invention does not apply to an Invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an Invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those Inventions that either (1) relate at the time of conception or reduction to practice of the Invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an Invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

**3. Conflicts with Other Activities**

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

**4. Miscellaneous**

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment with the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature _(signed: Carter H. Bryant)_

Employee Name (print)  CARTER H. BRYANT

Date  01/04/99

MATTEL, INC.
By: _(signed: Teresa Newcomb)_
Signature

Name of Witness (print)  TERESA NEWCOMB

EXHIBIT A PAGE 13

EXHIBIT ___1___   PAGE ___21___

**Exhibit B**

EXHIBIT __1__ PAGE __22__

# CONFLICT OF INTEREST QUESTIONNAIRE

**BRYANT, CARTER H.**          **PROJECT DESIGNER**

Name (Last, First, M.I.)                    Job Title                                        Department

Instructions: The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel policies concerning Conflicts of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**Mattel Supplier** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**Mattel Competitor** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**Interest** means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

**Recipient of any commission, etc.,** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

○ YES  ● NO  1. Have you owned, directly or indirectly, any interest in a Mattel supplier?

○ YES  ● NO  2. Have you owned, directly or indirectly, and interest in a Mattel competitor?

○ YES  ● NO  3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?

● YES  ○ NO  4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?

● YES  ○ NO  5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?

○ YES  ● NO  6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?

○ YES  ● NO  7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor?

○ YES  ● NO  8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?

○ YES  ● NO  9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

_4, 5, freelance design + artwork in 1998,_
_from appx. 5/98 - 11/98 for the Ashton Drake_
_galleries._

I certify that I have read Mattel policies concerning Conflict of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged in any capacity which creates a Conflict of Interest.

_Carter H. Bryant_                                              **01/04/98**

Signature                                                                        Date

## EXHIBIT B PAGE 14

EXHIBIT __1__ PAGE __23__

**Exhibit  2**

COPY

FILED

2007 JAN 12  PH 3: 21

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2    John B. Quinn (Bar No. 90378)
     (johnquinn@quinnemanuel.com)
3    Michael T. Zeller (Bar No. 196417)
     (michaelzeller@quinnemanuel.com)
4    Jon D. Corey (Bar No. 185066)
     (joncorey@quinnemanuel.com)
5    Duane R. Lyons (Bar No. 125091)
     (duanelyons@quinnemanuel.com)
6  865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
7  Telephone: (213) 443-3000
   Facsimile: (213) 443-3100
8
   Attorneys for Mattel, Inc.
9
                    UNITED STATES DISTRICT COURT
10
                   CENTRAL DISTRICT OF CALIFORNIA
11
   CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)
12
                 Plaintiff,             Consolidated With Case No. 04-9059 and
                                        Case No. 05-2727
13
         v.                             MATTEL, INC.'S AMENDED ANSWER
14                                      IN CASE NO. 05-2727 AND
                                        COUNTERCLAIMS FOR:
15  MATTEL, INC., a Delaware
    corporation,                        1.  COPYRIGHT INFRINGEMENT;
16                                      2.  VIOLATION OF THE
                 Defendant.                 RACKETEER INFLUENCED AND
17                                          CORRUPT ORGANIZATIONS
                                            ACT;
18  _____        3.  CONSPIRACY TO VIOLATE THE
    MGA ENTERTAINMENT, INC. a              RACKETEER INFLUENCED AND
19  California corporation,                 CORRUPT ORGANIZATIONS
                                            ACT;
20               Plaintiff,             4.  MISAPPROPRIATION OF TRADE
                                            SECRETS;
21        v.                            5.  BREACH OF CONTRACT;
                                        6.  INTENTIONAL INTERFERENCE
22  MATTEL, INC., a Delaware                WITH CONTRACT;
    corporation, and DOES 1-10,         7.  BREACH OF FIDUCIARY DUTY;
23                                      8.  AIDING AND ABETTING
                 Defendants.                BREACH OF FIDUCIARY DUTY;
24                                      9.  BREACH OF DUTY OF
    _____            LOYALTY;
25                                     10.  AIDING AND ABETTING
                                            BREACH OF DUTY OF
26  MATTEL, INC., a Delaware                LOYALTY;
    corporation,                       11.  CONVERSION;
27                                     12.  UNFAIR COMPETITION; AND
                 Counter-claimant,
28
         EXHIBIT __2__  PAGE __24__
                                                        1-12

109/2035982.1

                              AMENDED ANSWER AND COUNTERCLAIMS

v.

MGA ENTERTAINMENT, INC., a California corporation; ISAAC LARIAN, an individual; CARTER BRYANT, an individual; MGA ENTERTAINMENT (HK) LIMITED, a Hong Kong Special Administrative Region business entity; MGAE DE MEXICO, S.R.L. DE C.V., a Mexico business entity; CARLOS GUSTAVO MACHADO GOMEZ, an individual; and DOES 4 through 10,

Counter-defendants.

AND CONSOLIDATED CASES

13. DECLARATORY RELIEF.

DEMAND FOR JURY TRIAL

EXHIBIT _2_ PAGE _25_

AMENDED ANSWER AND COUNTERCLAIMS

209/2035982.1

# AMENDED ANSWER

Pursuant to the Court's Order of January 12, 2007, Defendant Mattel, Inc. ("Mattel") answers the Complaint of MGA Entertainment, Inc. ("Complaint") as follows:

## Preliminary Statement

The Complaint in this case contravenes Rule 8(a) of the Federal Rules of Civil Procedure in multiple respects.  For example, in many places, the Complaint improperly mixes factual averments with argumentative rhetoric.  The Complaint also includes a selective recitation of alleged historical facts and "rumor," much of which is both irrelevant and inflammatory in tone and content.  In addition, many of the allegations of the Complaint are overly broad, vague or conclusory and include terms which are undefined and which are susceptible to different meanings.  Accordingly, by way of a general response, all allegations are denied unless specifically admitted, and any factual averment admitted is admitted only as to the specific facts and not as to any conclusions, characterizations, implications or speculations which are contained in the averment or in the Complaint as a whole.  These comments and objections are incorporated, to the extent appropriate, into each numbered paragraph of this Answer.

Mattel further submits that the use of the headings throughout the Complaint is improper, and therefore no response to them is required.  In the event that a response is required, Mattel denies those allegations.

The Complaint also contains many purported photographs of various items, and it uses one or more headings purporting to describe, either individually or in groups, these various photographs.  The images of these photographs contained in the Complaint are all relatively small and some are of less than optimal quality, making it difficult to evaluate the adequacy of the photographs or their fairness and accuracy in depicting what they purport to represent.  The Complaint also does not describe the circumstances or time frame in which these photographs were taken,

1   and in many cases does not identify, or does not sufficiently or properly identify, the

2   item depicted in the photographs.  All of these factors, as well as the use of these

3   photographs and headings out of context, or with an insufficient context, impair the

4   ability of Mattel to fully respond to these photographs and headings, or to any

5   purported allegations involving, or relying upon, the use of such photographs and

6   accompanying headings.  By way of a general response, Mattel therefore does not

7   admit the authenticity of any photograph, or the accuracy or adequacy of any

8   heading, nor does it admit any allegation or inference that is based on, or purports to

9   be based on, any photograph or accompanying heading in the Complaint.  Mattel

10   reserves the right to challenge the authenticity of any photograph and the accuracy

11   or adequacy of any heading (either as included in the Complaint or in the context of

12   additional material not included).  Further, with reference to all photographs and

13   accompanying headings, or any averments based on the Complaint's use of such

14   photographs and headings, which might be offered into evidence, Mattel specifically

15   reserves its right to object to any use of such photographs, headings, and averments,

16   or the Complaint as a whole or in part, in evidence for any purpose whatsoever.

17          To the extent that Mattel has endeavored to answer any particular

18   allegation containing any such photographs and headings, any admission concerning

19   the item purported to be depicted in such photograph, or described in such headings,

20   shall not constitute an admission that the photograph is authentic, adequate, or

21   admissible, nor that any heading is accurate, adequate, or admissible.  All such items

22   purportedly depicted in such photographs, and described in such headings, "speak

23   for themselves".  Accordingly, to the extent that any such referenced materials are

24   deemed allegations against Mattel, they are denied.

25                              <u>Responses</u>

26          1.     Answering paragraph 1 of the Complaint, Mattel admits that

27   plaintiff MGA Entertainment, Inc. ("plaintiff" or "MGA") is a California

28   corporation with a principal place of business in Van Nuys, California.

EXHIBIT 2   PAGE 27

209/2035941.2                              -4-

AMENDED ANSWER AND COUNTERCLAIMS

1    2.    Answering paragraph 2 of the Complaint, Mattel admits that
2  Mattel is a Delaware corporation with a principal place of business in El Segundo,
3  California.

4    3.    Answering paragraph 3 of the Complaint, Mattel denies that
5  there has been wrongful conduct on its part and states that it is without knowledge
6  or information sufficient to form a belief as to the truth or falsity of the remaining
7  allegations set forth therein and, on that basis, denies them.

8    4.    Answering paragraph 4 of the Complaint, Mattel admits that
9  plaintiff purports to assert claims under the Lanham Act, 15 U.S.C. §§ 1125(a) and
10  (c), California Business and Professions Code §§ 17200 *et seq.*, California Business
11  and Professions Code § 14330 and California common law, denies that plaintiff is
12  entitled to any relief thereunder and denies the truth of the remaining allegations set
13  forth in paragraph 4.

14    5.    Answering paragraph 5 of the Complaint, Mattel admits that it is
15  subject to personal jurisdiction in this District and denies the truth of the remaining
16  allegations set forth in paragraph 5.

17    6.    Answering paragraph 6 of the Complaint, Mattel admits that
18  venue is proper in this District and denies the truth of the remaining allegations set
19  forth in paragraph 6.

20    7.    Answering paragraph 7 of the Complaint, Mattel admits that
21  MGA has filed the instant lawsuit and denies the truth of the remaining allegations
22  set forth in paragraph 7.

23    8.    Answering paragraph 8 of the Complaint, Mattel states that it is
24  without knowledge or information sufficient to form a belief as to the truth or falsity
25  of the allegations regarding MGA's history set forth therein and, on that basis,
26  denies them, states that MGA has made conflicting representations, including in
27  sworn statements, that are at odds with the allegations of the Complaint and denies
28  the truth of the remaining allegations set forth in paragraph 8.

EXHIBIT 2   PAGE 28

09/2035941.2

AMENDED ANSWER AND COUNTERCLAIMS

1      9.    Answering paragraph 9 of the Complaint, Mattel admits that

2  MGA filed this action, states that Mattel's web site and corporate governance

3  policies speak for themselves and denies the truth of the remaining allegations set

4  forth in paragraph 9.

5      10.    Answering paragraphs 10 through 20 of the Complaint,

6  inclusive, Mattel admits that it is the world's most successful toy company, states

7  that the first doll in its BARBIE line was publicly introduced in 1959 and that

8  BARBIE-branded dolls have been the world's best-selling toys, states that Mattel's

9  sales speak for themselves and states that the remaining allegations set forth therein

10  are the subject of a pending motion to strike pursuant to <u>Federal Rule of Civil</u>

11  <u>Procedure</u> 12(f) and that no further answer is therefore required at this time.

12      11.    Answering paragraph 21 of the Complaint, Mattel admits that

13  products in plaintiff's "Bratz" line compete with products in Mattel's BARBIE and

14  other product lines and states that the remainder of the allegation contained

15  therein—consisting of a sentence fragment—is unintelligible and on that basis

16  denies the truth of any such remaining allegation set forth therein.

17      12.    Answering paragraph 22 of the Complaint, Mattel admits that

18  products in plaintiff's "Bratz" line compete with Mattel products, states that the

19  remainder of the allegations contained therein are characterizations, not factual

20  assertions, and that therefore no response is necessary under <u>Fed. R. Civ. P.</u> 8(b)

21  and, to the extent any further response is required, denies the truth of any remaining

22  allegations set forth therein.

23      13.    Answering paragraph 23 of the Complaint, Mattel states that

24  MGA has made conflicting statements, including in sworn statements, that are

25  inconsistent with the allegations set forth in paragraph 23 of the Complaint and

26  states that it is therefore without knowledge or information sufficient to form a

27  belief as to the truth or falsity of the allegations set forth therein and, on that basis,

28  denies them.

EXHIBIT 2 PAGE 29

-6-

AMENDED ANSWER AND COUNTERCLAIMS

14.   Answering paragraph 24 of the Complaint, Mattel states that the "look" of the referenced dolls speak for themselves and denies the truth of the remaining allegations set forth therein.  By way of further answer, Mattel states that the photographs and their accompanying caption on page 7 of the Complaint are false and misleading to the extent they are intended to suggest that MGA has produced or used a consistent packaging shape or look or that it has protectible rights in the matters depicted in the photographs.

15.   Answering paragraph 25 of the Complaint, Mattel admits that Bratz dolls are between approximately 9.5 to 10 inches in height, states that the appearances of the dolls speak for themselves, denies that "Bratz" dolls are or "were intentionally shorter" than dolls in Mattel's BARBIE line, denies that the "Bratz" dolls "looked like no other" and denies the truth of the remaining allegations set forth in paragraph 25.

16.   Answering paragraph 26 of the Complaint, Mattel states that the use of the term "classic" is unintelligible, since Mattel has designed and sold different dolls using different heads and with different fashions and themes over the years, and denies the truth of any remaining allegations.  By way of further answer, Mattel states that the image encaptioned "Mattel's 'Barbie'" on page 8 of the Complaint is misleading in that it depicts one of the doll heads that have been used as part of the BARBIE line for many years, and therefore ignores that Mattel has long designed and sold an array of different BARBIE line dolls that use different doll heads, including doll heads which depict different ethnicities, and that are dressed in different clothing and fashion styles.

17.   Answering paragraph 27 of the Complaint, Mattel admits that MGA has used the line "The Girls With a Passion for Fashion" in some contexts, denies that MGA originated or otherwise has rights to that phrase, admits that one audience for products in the "Bratz" line has been "tweens" and denies the truth of the remaining allegations set forth in paragraph 27.   EXHIBIT 2   PAGE 30

1        18.    Answering paragraph 28 of the Complaint, Mattel admits that

2 certain "Bratz" dolls have won certain awards, the terms of which speak for

3 themselves, states that it is without knowledge or information sufficient to form a

4 belief as to the truth or falsity of the allegations regarding the "awards" MGA claims

5 and, on that basis, denies them, denies that plaintiff has protectible rights and denies

6 the truth of any remaining allegations set forth in paragraph 28.

7        19.    Answering paragraph 29 of the Complaint, Mattel admits that

8 dolls in the "Bratz" line compete with dolls in Mattel product lines, denies that

9 Mattel has or has ever had a "stranglehold" on any market, states that the market

10 allegations contained in paragraph 29 are vague and ambiguous, including without

11 limitation in that the allegations fail to specify what products among the parties'

12 respective lines are being referred to and what time period is being referred to, and

13 denies the truth of any remaining allegations set forth in paragraph 29.

14        20.    Answering paragraph 30 of the Complaint, Mattel admits MGA

15 has been a licensee of Mattel and states that the remaining allegations set forth

16 therein are the subject of a motion to strike and that no further response is therefore

17 required at this time.

18        21.    Answering paragraph 31 of the Complaint, Mattel states that the

19 allegations set forth therein are the subject of a motion to strike and that no further

20 response is therefore required at this time.

21        22.    Answering paragraph 32 of the Complaint, Mattel denies the

22 truth of the allegations set forth therein.

23        23.    Answering paragraph 33 of the Complaint, Mattel denies the

24 truth of the allegations set forth therein.

25        24.    Answering paragraph 34 of the Complaint, Mattel states that it

26 has released various MY SCENE dolls, including MY SCENE dolls named

27 "Madison", "Chelsea" and "Barbie," states that the appearance of the Bratz and MY

28 SCENE dolls speak for themselves, denies that Mattel designed its MY SCENE

EXHIBIT 2 PAGE 31

1  dolls to "evoke" or resemble the alleged "look" of "Bratz" dolls, denies that plaintiff
2  has protectible rights, states that MGA has made conflicting representations that are
3  at odds with the allegations of the Complaint and that it is therefore without
4  knowledge or information sufficient to form a belief as to the truth or falsity of the
5  allegations regarding the "launch" of Bratz dolls set forth therein and, on that basis,
6  denies them, and denies the truth of the remaining allegations set forth therein.  By
7  way of further answer, Mattel states that the photographs and their accompanying
8  captions on page 10 of the Complaint are misleading and false to the extent they are
9  intended to suggest that a particular Mattel doll has been changed over time as
10 purportedly depicted.  Among other things, Mattel has long designed and sold an
11 array of different BARBIE line dolls using different doll heads, and the photographs
12 encaptioned "Mattel's Traditional 'Barbie'" is one of the doll heads that has been
13 used, and continues to be used, as part of the BARBIE line.  In addition, the
14 photographs encaptioned MY SCENE doll "circa 2002" is, in fact, a Mattel doll
15 character called BARBIE that continues to be sold and/or marketed with that head,
16 and the photographs encaptioned MY SCENE doll "circa 2004" depict a MY
17 SCENE doll character separate and apart from the one depicted in the "circa 2002"
18 image (and is not a revised character as plaintiff apparently attempts to imply).

19        25.    Answering paragraph 35 of the Complaint, Mattel admits that
20 Mattel released a product line called FLAVAS, states that the appearance of the
21 FLAVAS dolls speaks for themselves, states that it is without knowledge or
22 information sufficient to form a belief as to the truth or falsity of the allegations
23 regarding the  "rumor" relied upon by plaintiff and the undefined "media"
24 purportedly quoting Isaac Larian and, on that basis, denies them, denies that Mattel
25 has abandoned the FLAVAS line, and denies the truth of the remaining allegations
26 set forth in paragraph 35.

27        26.    Answering paragraph 36 of the Complaint, Mattel denies the
28 truth of the allegations set forth therein.   EXHIBIT __2__ PAGE __32__

209/2035941.2

-9-

AMENDED ANSWER AND COUNTERCLAIMS

27.     Answering paragraph 37 of the Complaint, Mattel denies the truth of the allegations set forth therein.  By way of further answer, Mattel states that the unnumbered photographs and their accompanying captions on pages 11 through 16 of the Complaint -- which apparently were included to purportedly support the allegation that MY SCENE dolls "became 'Bratz,'" which allegation Mattel specifically denies -- are false and misleading.  Among other things, the heads depicted are among an array of different doll heads that Mattel has used, and continues to use, over the course of many years.  Moreover, the images purport to compare different Mattel doll lines to show alleged changes in appearance even though, in fact, each of the heads are currently sold and/or marketed to the public.  The "Blonde" series of photographs encaptioned "original" and "recent" MY SCENE is further and specifically misleading in that it purports to compare two differently named and outfitted dolls in the MY SCENE doll line, both of which continue to be sold and/or marketed.

28.     Answering paragraph 38 of the Complaint, Mattel states that the phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein, denies that MGA was the originator of or the first to use the eye shape or makeup depicted as purportedly constituting "the 'BRATZ' eye," denies that Mattel has copied the "the 'BRATZ' eye" and denies the truth of the remaining allegations contained in paragraph 38.  By way of further answer, Mattel states that the unnumbered photographs and accompanying caption on page 13 of the Complaint are false and misleading.  Among other things, the purported "Original Mattel 'My Scene' Eye" is one of the eye and makeup designs that Mattel has used over the course of many years, and Mattel continues to sell and/or market dolls using the eye and makeup design depicted therein.

29.     Answering paragraph 39 of the Complaint, Mattel states that the phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein, denies that MGA was the originator of or the first to use the eye shape or makeup

EXHIBIT 2    PAGE 33

AMENDED ANSWER AND COUNTERCLAIMS

purportedly described as constituting "the 'BRATZ' eye," denies that Mattel has copied the "the 'BRATZ' eye," states that the relevant dolls speak for themselves and denies the truth of the remaining allegations contained in paragraph 38. By way of further answer, Mattel states that the unnumbered photographs and accompanying captions on page 14 of the Complaint are false and misleading. Among other things, the purported "New Mattel 'My Scene' Eye" is one of the eye and makeup designs that Mattel has used over the course of many years, and Mattel continues to sell and/or market dolls using the eye and makeup design depicted on page 14 of the Complaint.

30.   Answering paragraph 40 of the Complaint, Mattel denies the truth of the allegations therein. By way of further answer, Mattel states that the unnumbered photographs and their accompanying captions on pages 15 to 16 are false and misleading. Among other things, the heads depicted are among an array of different doll heads that Mattel has used, and continues to use, over the course of many years. Moreover, the photographs purport to compare different Mattel doll lines to show alleged changes in appearance even though, in fact, each of the heads are currently sold and/or marketed to the public. The "Blonde" series of photographs encaptioned "original" and "recent" MY SCENE is further and specifically misleading in that it purports to compare two differently named and outfitted dolls in the MY SCENE doll line, both of which continue to be sold and/or marketed.

31.   Answering paragraph 41 of the Complaint, Mattel denies the truth of the allegations set forth therein.

32.   Answering paragraph 42 of the Complaint, Mattel admits that the photographs purport to depict two packages that were, among others, part of the MY SCENE line, state that the packages speak for themselves and denies the truth of any remaining allegations set forth therein.

EXHIBIT _2_ PAGE _34_

AMENDED ANSWER AND COUNTERCLAIMS

1          33.    Answering paragraph 43 of the Complaint, Mattel admits that the

2  photograph purports to depict one of the packages that were, among others, part of

3  the MY SCENE line, states that the parties' packages speak for themselves, states

4  that MGA has failed to establish that it originated, or has protectible rights in, an

5  "open and transparent style" for packaging and denies the truth of the remaining

6  allegations set forth therein.

7          34.    Answering paragraph 44 of the Complaint, Mattel admits that

8  one photograph purports to depict one of the packages that were, among others, part

9  of the MY SCENE line, admits that the other photograph purports to depict one of

10  the packages that were, among others, used as part of the Bratz line, states that the

11  parties' packages speak for themselves, denies that MGA originated, or has

12  protectible rights in, "the 'BRATZ' packaging" or in the packaging depicted in the

13  Complaint and denies the truth of any remaining allegations set forth therein.

14         35.    Answering paragraph 45 of the Complaint, Mattel admits that

15  one photograph purports to depict one of the packages that were, among others, part

16  of the MY SCENE line, admits that the other photograph purports to depict one of

17  the packages that were, among others, used as part of the Bratz line, states that the

18  parties' packages speak for themselves, denies that MGA originated, or has

19  protectible rights in, the packaging depicted in the Complaint and denies the truth of

20  any remaining allegations set forth therein.

21         36.    Answering paragraph 46 of the Complaint, Mattel states that it

22  has utilized a wide variety of packaging styles and shapes over the years, states that

23  the relevant packaging speaks for itself, states that MGA lacks protectible rights in

24  "non-rectangular shaped box" packaging or in the other elements MGA claims in

25  paragraph 46, and denies the truth of the remaining allegations set forth therein.

26         37.    Answering paragraph 47 of the Complaint, Mattel denies that

27  any alleged "theme" is "MGA's theme," denies that MGA originated or has rights to

28  any theme and denies the truth of the remaining allegations set forth therein.

EXHIBIT __2__ PAGE __35__

AMENDED ANSWER AND COUNTERCLAIMS

1    38.   Answering paragraph 48 of the Complaint, Mattel admits that it
2  released a doll called "Chillin Out!", states that it has released such themed dolls
3  over the course of many years, admits MGA released a "Wintertime Wonderland"
4  themed doll, denies that MGA originated or has rights to such theme, states that the
5  relevant products speak for themselves and denies the truth of the remaining
6  allegations set forth therein.

7    39.   Answering paragraph 49 of the Complaint, Mattel admits that it
8  released a doll called "Night on the Town", states that it has released such themed
9  dolls over the course of many years, admits MGA released a "Formal Funk" themed
10  doll, denies that MGA originated or has rights to such theme, states that the relevant
11  products speak for themselves and denies the truth of the remaining allegations set
12  forth therein.

13    40.   Answering paragraph 50 of the Complaint, Mattel admits that it
14  released a doll called "Jammin' in Jamaica" and a playset called "Guava Gulch Tiki
15  Lounge", states that it has released such themed dolls and products over the course
16  of many years, admits that MGA released a "Sun-Kissed Summer" themed doll and
17  playset, denies that MGA originated or has rights to such theme, states that the
18  relevant products speak for themselves and denies the truth of the remaining
19  allegations set forth therein.

20    41.   Answering paragraph 51 of the Complaint, Mattel admits that it
21  has aired television commercials for its MY SCENE line, states that such
22  commercials speak for themselves, denies the truth of the remaining allegations set
23  forth therein and specifically denies that MGA was the originator of or has rights to
24  commercials "combining live action with animated sequences" set to "pop music
25  and lyrics".

26    42.   Answering paragraph 52 of the Complaint, Mattel denies the
27  truth of the allegations set forth therein.

EXHIBIT  2    PAGE 36

AMENDED ANSWER AND COUNTERCLAIMS

1        43.    Answering paragraph 53 of the Complaint, Mattel admits that it

2    released a MY SCENE "Sound Lounge", admits that MGA released a product called

3    "Runway Disco", states that the relevant products speak for themselves, denies that

4    it "imitated MGA's trapezoidal box," denies that MGA has rights thereto, and

5    denies the truth of the remaining allegations set forth therein.

6        44.    Answering paragraph 54 of the Complaint, Mattel denies the

7    truth of the allegations set forth therein.

8        45.    Answering paragraph 55 of the Complaint, Mattel admits that,

9    among the styling heads it has produced and sold over the course of many years, it

10    released a MY SCENE styling head, admits that MGA released a styling head called

11    "Funky Fashion Makeover Head", states that the relevant products speak for

12    themselves, denies that MGA has protectible rights and denies the truth of the

13    remaining allegations set forth in paragraph 55.

14        46.    Answering paragraph 56 of the Complaint, Mattel is without

15    knowledge or information sufficient to form a belief as to the truth or falsity of the

16    allegations set forth therein because plaintiff fails to identify the alleged instances of

17    confusion, including the source of the unidentified picture titled "Hairstyle practice",

18    and on that basis, denies them, and denies the truth of any remaining allegations set

19    forth in paragraph 56.

20        47.    Answering paragraph 57 of the Complaint, Mattel admits that it

21    has aired television commercials for its MY SCENE line, states that such

22    commercials speak for themselves and denies the truth of the remaining allegations

23    set forth therein.

24        48.    Answering paragraph 58 of the Complaint, Mattel admits that

25    MGA has used the line "The Girls With a Passion for Fashion" in some contexts,

26    denies that MGA originated that phrase or otherwise has rights to it, states that

27    Mattel's web site speaks for itself and denies the truth of the remaining allegations

28    set forth therein.

EXHIBIT _2_ PAGE _37_

-14-

AMENDED ANSWER AND COUNTERCLAIMS

1     49.    Answering paragraph 59 of the Complaint, Mattel admits that,

2 among the plush products that it has produced and sold over the course of many

3 years, it has released plush dogs as part of its MY SCENE "Miami Getaway"

4 themed product line, states that Mattel has for many years sold plush pets of the type

5 used with its MY SCENE dog, admits that MGA has released various Bratz pets,

6 states that MGA was not the originator of and has no rights to the features and other

7 elements described therein, states that the relevant products speak for themselves

8 and denies the truth of the remaining allegations set forth therein.

9     50.    Answering paragraph 60 of the Complaint, Mattel admits that,

10 among the plush toys that it has release over the course of many years, its MY

11 SCENE dog has been sold in packaging depicted (in part) on page 22 of the

12 Complaint, states that Mattel has for many years sold plush pets and other plush

13 products in packaging of the type used with its MY SCENE dog, admits that MGA

14 has released a "Bratz" dog, states that MGA was not the originator of and has no

15 rights to the packaging described therein, states that the relevant packages speak for

16 themselves and denies the truth of the remaining allegations set forth therein.

17    51.    Answering paragraph 61 of the Complaint, Mattel denies that it

18 has intended to cause any consumer confusion and states that it is without

19 knowledge or information sufficient to form a belief as to the truth or falsity of the

20 allegations set forth therein concerning unnamed retailers, customers and others

21 because plaintiff fails to identify any source for the matters alleged and, on that

22 basis, denies them and denies the truth of any remaining allegations set forth therein.

23    52.    Answering paragraph 62 of the Complaint, Mattel denies that it

24 has intended to cause any confusion and states that it is without knowledge or

25 information sufficient to form a belief as to the truth or falsity of the allegations set

26 forth therein concerning alleged comments and conversations because plaintiff fails

27 to identify any source for the alleged comments and conversations and, on that

28

EXHIBIT 2 PAGE 38

-15-

AMENDED ANSWER AND COUNTERCLAIMS

1   basis, denies them, and denies the truth of any remaining allegations set forth

2   therein.

3          53.    Answering paragraph 63 of the Complaint, Mattel denies that it

4   has intended to cause any confusion and states that it is without knowledge or

5   information sufficient to form a belief as to the truth or falsity of the allegations set

6   forth therein because plaintiff fails to identify any source for the alleged comments

7   and conversations and, on that basis, denies them, and denies the truth of any

8   remaining allegations set forth therein.

9          54.    Answering paragraph 64 of the Complaint, Mattel denies that it

10  has intended to cause any confusion and states that it is without knowledge or

11  information sufficient to form a belief as to the truth or falsity of the allegations set

12  forth therein because plaintiff fails to identify any source for the alleged comments

13  and conversations and, on that basis, denies them, and denies the truth of any

14  remaining allegations set forth therein.

15         55.    Answering paragraph 65 of the Complaint, Mattel denies the

16  truth of the allegations set forth therein.

17         56.    Answering paragraph 66 of the Complaint, Mattel admits that it

18  sued a competitor in the German courts for unfair competition for copying various

19  Mattel BARBIE line products, states that such claims exclusively arose under and

20  were the subject of German law, and denies the truth of the remaining allegations set

21  forth therein.

22         57.    Answering paragraph 67 of the Complaint, Mattel denies the

23  truth of the allegations set forth therein.

24         58.    Answering paragraph 68 of the Complaint, Mattel admits that it

25  has released dolls called "Wee 3 Friends," admits that MGA has released dolls

26  called "4-Ever Best Friends," states that the relevant products speak for themselves,

27  denies that MGA's packaging is distinctive, denies that MGA has protectible rights

28  thereto and denies the truth of the remaining allegations set forth in paragraph 68.

EXHIBIT _2_____ PAGE_39

209/2035941.2

-16-

AMENDED ANSWER AND COUNTERCLAIMS

1        59.    Answering paragraph 69 of the Complaint, Mattel admits that its

2  Fisher Price division has released, among other dolls called "Little Mommy," the

3  "Little Mommy Potty Training Baby Doll," admits that MGA has released a

4  "Mommy's Little Patient" doll and denies the truth of the remaining allegations set

5  forth therein.

6        60.    Answering paragraph 70 of the Complaint, Mattel admits that it

7  has released die-cast cars and other products called "Acceleracers" as part of its

8  HOT WHEELS line,  admits that MGA has released products called "AlienRacers,"

9  denies that MGA was the originator of or has rights to the elements and matters

10  described in paragraph 70, states that the relevant products speak for themselves and

11  denies the truth of the remaining allegations set forth therein.

12        61.    Answering paragraph 71 of the Complaint, Mattel admits that it

13  has aired commercials relating to "Acceleracers," states that such commercials

14  speak for themselves, denies the truth of the remaining allegations set forth therein

15  and specifically denies that MGA originated or has rights to commercials and other

16  matters described therein.

17        62.    Answering paragraph 72 of the Complaint, Mattel states that its

18  web site speaks for itself, denies the truth of the remaining allegations contained in

19  paragraph 72 and specifically denies that Mattel intended to create confusion in the

20  marketplace.

21        63.    Answering paragraph 73 of the Complaint, Mattel denies the

22  truth of the allegations set forth therein.

23        64.    Answering paragraph 74 of the Complaint, Mattel denies the

24  truth of the allegations set forth therein.

25        65.    Answering paragraph 75 of the Complaint, Mattel states that it

26  has brought a motion under Federal Rule of Civil Procedure 12 against the

27  allegations set forth therein and that no further response is therefore required at this

28  time.                        EXHIBIT 2    PAGE 40

209/2035941.2

AMENDED ANSWER AND COUNTERCLAIMS

66.     Answering paragraph 76 of the Complaint, Mattel states that MGA cannot establish subject matter jurisdiction regarding extra-territorial acts, including such acts that are lawful in foreign nations, and denies the truth of allegations set forth therein.

67.     Answering paragraph 77 of the Complaint, Mattel states that MGA cannot establish subject matter jurisdiction regarding extra-territorial acts, including such acts that are lawful in foreign nations, and denies the truth of the allegations set forth therein.

68.     Answering paragraph 78 of the Complaint, Mattel states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding MGA's claimed "shortage of doll hair" and, on that basis, denies them and denies the truth of the remaining allegations set forth therein.

69.     Answering paragraph 79 of the Complaint, Mattel states that MGA cannot establish subject matter jurisdiction regarding extra-territorial acts, including such acts that are lawful in foreign nations, and denies the truth of allegations set forth therein.

70.     Answering paragraph 80 of the Complaint, Mattel denies the truth of the allegations set forth therein.

71.     Answering paragraph 81 of the Complaint, Mattel admits that NPD Funworld ("NPD") supplies sales statistics in *inter alia* the toy, PC games and video games industries, admits that to Mattel's knowledge NPD restricts the use of its subscriber information, states that MGA was sued by NPD and states that it is without it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the need of unspecified "toy companies" for NPD statistics and, on that basis, denies them and denies the truth of any remaining allegations set forth therein.

72.     Answering paragraph 82 of the Complaint, Mattel denies the truth of the allegations set forth therein.

EXHIBIT  2    PAGE 41

AMENDED ANSWER AND COUNTERCLAIMS

309/2035941.2

73.     Answering paragraph 83 of the Complaint, Mattel states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth therein because MGA fails to quantify its annual subscription fees and, on that basis, denies them.

74.     Answering paragraph 84 of the Complaint, Mattel states that it is without it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth therein and, on that basis, denies them.

75.     Answering paragraph 85 of the Complaint, Mattel states that MGA was sued by NPD, states that it is without knowledge or information sufficient to form a belief as to such nature and grounds for such litigation (to which Mattel was not a party) and, on that basis denies the allegations relating thereto, and denies the truth of the remaining allegations set forth therein.

76.     Answering paragraph 86 of the Complaint, Mattel denies the truth of the allegations set forth therein.

77.     Answering paragraph 87 of the Complaint, Mattel admits that the Children's Advertising Review Unit ("CARU") is the children's arm of the advertising industry's self-regulation program, states that compliance with CARU's Privacy Program can provide FTC-approved Safe Harbor under the Children's Online Privacy Protection Act ("COPPA"), and denies the truth of the remaining allegations set forth therein.

78.     Answering paragraph 88 of the Complaint, Mattel admits that it is one of dozens of CARU Supporters and denies the truth of the remaining allegations set forth therein.

79.     Answering paragraph 89 of the Complaint, Mattel denies the truth of the allegations set forth therein.

80.     Answering paragraph 90 of the Complaint, Mattel states that it is without knowledge or information sufficient to form a belief as to the truth or falsity

EXHIBIT 2    PAGE 42

AMENDED ANSWER AND COUNTERCLAIMS

1    of the allegations as to the consequences to MGA of MGA's violations of CARU

2    standards and, on that basis, denies them.

3            81.    Answering paragraph 91 of the Complaint, Mattel states that it is

4    without knowledge or information sufficient to form a belief as to the truth or falsity

5    of the allegations as to the consequences to MGA of MGA violation of CARU

6    standards and, on that basis, denies them.

7            82.    Answering paragraph 92 of the Complaint, Mattel admits that the

8    Toy Industry Association, Inc. ("TIA") is a toy industry trade association, admits

9    that at certain times TIA has given awards called the People's Choice Toy of The

10   Year or the Toy of The Year Award, denies that Mattel wrongfully influenced TIA

11   and states that it is without knowledge or information sufficient to form a belief as

12   to the truth or falsity of the remaining allegations set forth therein and, on that basis,

13   denies them.

14           83.    Answering paragraph 93 of the Complaint, Mattel states that the

15   allegations set forth therein are vague and ambiguous, including in that they fail to

16   properly identify the years in which the referenced awards were given and/or the

17   particular product which won such awards, and accordingly lacks knowledge or

18   information sufficient to form a belief as to the truth or falsity of the allegations set

19   forth therein and, on that basis, denies them.

20           84.    Answering paragraph 94 of the Complaint, Mattel admits that

21   Neil Freidman was the chairman of TIA from approximately May 2002 to May

22   2004, states that Fischer Price is a division of Mattel and denies the truth of the

23   remaining allegations set forth therein.

24           85.    Answering paragraph 95 of the Complaint, Mattel admits that

25   Hokey Pokey Elmo won the Toy of the Year Award and denies the truth of the

26   remaining allegations set forth therein.

27                                 EXHIBIT  2   PAGE 43

28

209/2035941.2

-20-

AMENDED ANSWER AND COUNTERCLAIMS

1    86.    Answering paragraph 96 of the Complaint, Mattel states that it is
2  without knowledge or information sufficient to form a belief as to the truth or falsity
3  of the allegations set forth therein and, on that basis, denies them.

4    87.    Answering paragraph 97 of the Complaint, Mattel denies the
5  truth of the allegations set forth therein.

6    88.    Answering paragraph 98 of the Complaint, Mattel denies that it
7  has engaged in wrongful, unlawful, unethical or actionable conduct and states that
8  the remaining allegations set forth therein are the subject of a motion to strike and
9  that therefore no further answer is required at this time.

10    89.    Answering paragraph 99 of the Complaint, Mattel denies the
11  truth of the allegations set forth therein.

12    90.    Answering paragraph 100 of the Complaint, Mattel denies the
13  truth of the allegations set forth therein.

14    91.    Answering paragraph 101 of the Complaint, Mattel repeats its
15  responses contained in paragraphs 1 through 90 of this Answer and incorporates
16  them by reference as though fully and completely set forth herein.

17    92.    Answering paragraph 102 of the Complaint, Mattel denies the
18  truth of the allegations set forth therein and specifically denies that MGA's alleged
19  trade dress is distinctive.

20    93.    Answering paragraph 103 of the Complaint, Mattel denies the
21  truth of the allegations set forth therein and specifically denies that MGA's alleged
22  trade dress is distinctive.

23    94.    Answering paragraph 104 of the Complaint, Mattel denies the
24  truth of the allegations set forth therein.

25    95.    Answering paragraph 105 of the Complaint, Mattel denies the
26  truth of the allegations set forth therein.

27    96.    Answering paragraph 106 of the Complaint, Mattel denies the
28  truth of the allegations set forth therein.

EXHIBIT 2   PAGE 44

AMENDED ANSWER AND COUNTERCLAIMS

*209/2035941.2

1         97.    Answering paragraph 107 of the Complaint, Mattel denies the

2  truth of the allegations set forth therein.

3         98.    Answering paragraph 108 of the Complaint, Mattel denies the

4  truth of the allegations set forth therein and specifically denies that plaintiff is

5  entitled to injunctive relief.

6         99.    Answering paragraph 109 of the Complaint, Mattel repeats its

7  responses contained in paragraphs 1 through 98 of this Answer and incorporates

8  them by reference as though fully and completely set forth herein.

9        100.  Answering paragraph 110 of the Complaint, Mattel denies the

10  truth of the allegations set forth therein.

11        101.  Answering paragraph 111 of the Complaint, Mattel denies the

12  truth of the allegations set forth therein.

13        102.  Answering paragraph 112 of the Complaint, Mattel denies the

14  truth of the allegations set forth therein.

15        103.  Answering paragraph 113 of the Complaint, Mattel denies the

16  truth of the allegations set forth therein.

17        104.  Answering paragraph 114 of the Complaint, Mattel denies the

18  truth of the allegations set forth therein.

19        105.  Answering paragraph 115 of the Complaint, Mattel denies the

20  truth of the allegations set forth therein.

21        106.  Answering paragraph 116 of the Complaint, Mattel denies the

22  truth of the allegations set forth therein.

23        107.  Answering paragraph 117 of the Complaint, Mattel denies the

24  truth of the allegations set forth therein and specifically denies that plaintiff is

25  entitled to injunctive relief.

26        108.  Answering paragraph 118 of the Complaint, Mattel denies the

27  truth of the allegations set forth therein.    EXHIBIT __2__  PAGE __45__

28