1  irreplaceable documents to Missouri, on literally a few hours' notice, simply at

2  Mattel's whim.  Remarkably, although the parties had engaged in several months of

3  negotiation and motion practice before the deposition took place - notably because

4  of Mattel's own failure to produce documents - Mattel had never requested the

5  original documents until just before the start of the deposition.[2]

6       While Bryant has expended significant time and resources to comply with

7  Mattel's request for inspection, *Mattel has completely stonewalled in response to*

8  *Bryant's request to inspect Mattel's original documents*.  Despite Bryant's repeated

9  requests, <u>Mattel has not permitted him to inspect a single original document, even</u>

10  <u>after meeting and conferring with his counsel</u>.  In the face of its blanket refusal to

11  comply with its Rule 34 obligations, Mattel nevertheless asks this Court to compel

12  Bryant to *again* make his documents available for inspection, despite the burden and

13  expense already imposed on him by Mattel's repeated inspections.

14       While a party is entitled to inspect another party's relevant documents and

15  things during litigation, it does not have an unfettered right to disrupt, burden and

16  harass the opposing party by conducting repeated, unreasonably long inspections that

17  are intended primarily to consume undue time and drive up litigation costs.  Bryant

18  has cooperated fully in providing Mattel a reasonable opportunity to inspect the

19  documents and things he has produced.  Mattel has taken undue advantage of that

20  opportunity much like it has abused the discovery process in so many other respects

21  during this litigation - Mattel has attempted to use its rights under Rule 34 as a sword,

22  to consume undue time, wage an expensive war of attrition, and prevent Bryant from

23  defending the action and pursuing his legitimate cross-claims.  It has done this by

24  forcing Bryant to respond to its daily barrage of meaningless (and frequently false)

25  faxes and correspondence, and by failing to cooperate in discovery at every turn.

26  Mattel's intentional lackadaisical approach to carrying out its inspections is a

27  _____

28       [2] See Declaration of Keith A. Jacoby ("Jacoby Decl."), filed concurrently herewith at Par. 5.

EXHIBIT 15   PAGE 212

JOINT STIPULATION

1   deliberate part of its broader scorched-earth strategy to outspend Bryant, and to bury

2   him under so much paper that he can no longer effectively defend himself against

3   Mattel's allegations.[3]

4        Mattel's claims of spoliation are nothing more than mere speculation. There

5   is no evidence that Bryant has conducted or intends to conduct any destructive testing

6   of the original documents at issue, because no such testing has occurred or will take

7   place.[4]  Bryant has every interest in preserving all the documentary evidence in his

8   possession, given that it refutes Mattel's claims *and* supports his counter-claims.

9   There can therefore be no legitimate concern regarding their safekeeping. Mattel's

10   claims here are yet another shell game to deflect attention from its own failures to

11   maintain and/or produce hundreds of pages of emails that are either being improperly

12   withheld or that have been intentionally and/or systematically destroyed.[5]

13       As even Mattel acknowledges, Bryant has *agreed* to produce original

14   documents and things contained in his document production for inspection.[6]  More

15   importantly, Bryant has actually made those originals available over the course of

16   three full days - during which Mattel lawyers conducted their inspection - as well as

17

18

19

20

21

22     [3] Jacoby Decl. at Par. 9.

23     [4] Jacoby Decl. at Par. 11.

24     [5] Typical of Mattel's obfuscation is an extended, nonsensical discussion in its portion of the Joint Stipulation regarding the redaction of a fax header by witness Victoria

25   O'Connor.  Ms. O'Connor testified that she redacted that information on a document

26   received by MGA from Bryant while he worked at Mattel.  What Mattel fails to do is demonstrate what, if anything, this has to do with its request to inspect original documents.

27   Given O'Connor's testimony, Mattel's inspection of the original document will not reveal

28   any additional information beyond that found on the copy produced.

    [6] Jacoby Decl. at Par. 2.

EXHIBIT 15  PAGE 213

1  two additional days of deposition.[7] Bryant has also made available all tangible things

2  he has produced for inspection, and Mattel has inspected them.[8]

3         Bryant submits that Mattel has had a full opportunity to inspect his original

4  documents and things, and he should not be forced to bear the brunt of Mattel's

5  failure to effectively use its time.  In the alternative, should this Court be inclined to

6  permit a further inspection by Mattel, it should be specifically delimited in time and

7  scope.  Moreover, because the original documents Mattel requested during Bryant's

8  deposition are now located in Missouri, Mattel should be required to pay any

9  necessary costs in transporting those materials again, or be required to fly to Missouri

10 to inspect them and pay Bryant's counsel's expenses in conjunction with any such

11 trip.  Finally, because of Mattel's dereliction in failing to permit Bryant to inspect its

12 original documents, no inspection should take place unless Mattel is simultaneously

13 ordered to comply with *its* Rule 34 obligations.

14

15                 **MGA's Introduction**

16        Mattel has, once again, managed to create a "dispute" where there is none for

17 the apparent purposes of driving up the costs of this litigation, distracting MGA's

18 attention from the defense of this case, and inflaming the Court against MGA. Mattel

19 itself acknowledges that ***MGA has agreed to make available for inspection, on a***

20 ***mutually convenient date, any original artwork and tangible things in its***

21 ***possession and produced in this matter.***  (Ex. D to Declaration of Paula E.

22 Ambrosini ("Ambrosini Decl.") at 17:10-12; Ex. A at 2 to Ambrosini Decl.)  In

23 addition to this, MGA has also agreed that it will provide for inspection all original

---

24

25     [7]  Mattel's factual statement is misleading as well.  While Mattel's first request to inspect originals was made in October, a large number of documents that Mattel now seeks

26 to inspect were produced by Bryant *subsequent to that request*.  In fact, Bryant produced approximately one-third of the documents at issue *after* Mattel's first suggestion that it

27 sought to inspect originals.  For Mattel to claim, as it does, that it has been seeking to inspect all of the more than 1500 pages of documents produced by Bryant since October is just false.

28     [8]  Jacoby Decl. at Par. 2.        EXHIBIT 15  PAGE 214

JOINT STIPULATION

1  invoices. (Ex. C at 2 to Ambrosini Decl.). In fact, MGA has made clear to Mattel's
2  counsel on several occasions that MGA is in the process of locating the original
3  artwork and tangible things that Mattel asked to inspect and assembling them for
4  Mattel's inspection. (Exs. A & C to Ambrosini Decl.)

5       Nonetheless, despite MGA's demonstrated cooperation on this issue in agreeing
6  to locate and allow Mattel to inspect all of the documents that it understood Mattel
7  wanted, Mattel, true to form, again conjured up a supposed dispute as an excuse to
8  bring a motion. A week after MGA agreed, in writing, to Mattel's request to inspect
9  originals, Mattel's counsel nonetheless complained, on January 17, 2005, that MGA's
10 agreement was still inadequate, but failed to explain why. (Ex. B to Ambrosini Decl.)
11 The only "originals" that MGA had not agreed to make available were electronic
12 records, for which a request to inspect originals made no logical sense. MGA
13 wondered, therefore, whether Mattel might be expecting MGA to identify and locate
14 the original artwork and tangibles that are pictured in some of the email attachments
15 that MGA produced. MGA had never understood Mattel to be asking for this because
16 MGA's production was not made directly from the original artwork or goods, but
17 rather from the electronic records themselves.

18      If Mattel expected MGA to search for and identify the original source material
19 from which the electronic records were originally made many years ago, it was
20 important for MGA to understand that because the burden placed on MGA to do so
21 would be immense – if, indeed, it is even possible for MGA to identify and locate the
22 original source material for the email attachments at all. MGA asked Mattel,
23 accordingly to clarify precisely what Mattel wanted, so there could be no question of
24 MGA's compliance, and so that Mattel could not use its own vague demands to later
25 accuse MGA of providing an incomplete inspection. (Ex. C to Ambrosini Decl.) In
26 an effort to speed the process along, MGA made clear to Mattel that the sooner Mattel
27 provided this necessary clarification, the sooner MGA would be able to undertake
28 such efforts and make the requested documents and tangibles available for inspection.

EXHIBIT 15  PAGE 215

9

1   (*Id.*) ***Mattel ignored MGA's request, and MGA received no clarification of Mattel's***

2   ***request.***  Instead, MGA received this Joint Stipulation.

3        Apparently, no matter what MGA does, and no matter how reasonable it tries

4   to be, Mattel is determined to place MGA in a no win situation and involve this Court

5   at every opportunity. Astonishingly, even with this Joint Stipulation, Mattel still fails

6   to clarify exactly what it wants to inspect – other than what MGA has already agreed

7   to make available.  There is certainly nothing additional identified in the text of its

8   stated position, and if any such information is contained in its declarations, Mattel

9   failed to provide such declarations to MGA. (Ambrosini Decl. ¶¶ 6-7 & Ex. D

10  thereto.)  ***Indeed, Mattel routinely makes a habit of serving Joint Stipulations***

11  ***without the accompanying declarations, without the accompanying exhibits, and***

12  ***with all of the citations left blank, unfairly requiring MGA to respond based on***

13  ***incomplete information.***

14       Nonetheless, Mattel is not short on rhetoric when it comes to accusing MGA

15  of "spoliating" evidence by supposedly redacting a fax header.  Indeed, parading this

16  accusation past the Court appears to be one of Mattel's primary motives for bringing

17  this wholly unnecessary motion.  As MGA has told Mattel over and over again,

18  however, MGA has searched high and low for this supposedly redacted document,

19  and even had a number of others outside of MGA search for the same thing, but has

20  never located such a document.

21       Mattel has brought this motion in bad faith without any legitimate reason.  The

22  motion should be denied, accordingly, and sanctions awarded in favor of MGA in the

23  amount of $5000.

24

25

26

27

28

EXHIBIT 15   PAGE 216

JOINT STIPULATION

**Issue No. 1**

Should Bryant Be Compelled to Make Available for

Inspection the Originals of Documents That He Has Produced?

Set forth below are (A) Mattel's position and (B) Bryant's position with respect to Issue No. 1.

A.   **Mattel's Position**

**Nature Of This Action**

Defendant Carter Bryant is a former Mattel employee. He worked as a Mattel product designer from September 1995 to April 1998, and then again from January 1999 to October 2000.[9] Upon starting his second term of employment with Mattel, Bryant executed an Employee Confidential Information and Inventions Agreement.[10] There, he agreed that during his Mattel employment he would not, without Mattel's express written consent, "engage in any employment or business other than for [Mattel], or invest in or assist (in any manner) any business competitive with the business or future business plans of [Mattel]." Bryant also assigned to Mattel, to the fullest extent of the law, all rights in "inventions," including "designs," that he created during his Mattel employment. In his agreement, Bryant further promised not to disclose or misuse Mattel's proprietary or confidential information, which is an obligation that continues to this day.

In November 2003, Mattel obtained a copy of a contract between Bryant and MGA, a Mattel competitor.[11] That contract--which was entered into while Bryant was employed by Mattel--required Bryant to provide design services to MGA on a "top priority" basis, in conflict with his then-existing duties to Mattel. It also

---

[9] See Declaration of Jon D. Corey ("Corey Dec."), Exh. 1 (Complaint at ¶ 9) & Exh. 3 (Cross-Complaint at ¶ 7).

[10] Exhibit A to the Complaint (Corey Dec., ¶ 2 and Exh. 1).

[11] Corey Dec., ¶ 3 and Exh. 2.

EXHIBIT 15   PAGE 217

11

1   purported to grant MGA ownership of works made by Bryant, both before and after

2   the agreement's effective date, in further contravention of his obligations to Mattel.

3        Mattel filed this suit against Bryant for breach of contract, breach of

4   fiduciary duty, breach of the duty of loyalty, unjust enrichment and conversion.

5   MGA subsequently intervened and is now a party-defendant in this action.[12]

6   ## Bryant's Failures To Make Originals And Tangible Items Available

7   ## for Inspection

8        Discovery has shown so far that Bryant worked on at least two projects

9   with MGA while he was employed by Mattel. One was the "Bratz" project.[13] The

10  other was an ostensibly separate project known as "Angel".[14] In this case, the timing

11  of Bryant's actions are important to many of Mattel's claims. Indeed, Bryant and

12  MGA have put timing at issue by claiming that Bryant created most or all of his

13  drawings, and performed other relevant work, either during the few months in 1998

14  when he was not working for Mattel or else after the time he had left Mattel.[15]

15       Much of the documentary evidence produced by Bryant consists of

16  undated design drawings, which Bryant has produced to Mattel as black and white

17  photocopies.[16]  Moreover, information that one would naturally expect--such as

18  complete fax headers, date and time stamps and fax cover pages--are missing from

19  his production.[17]

20       Mattel has been requesting for over three months now that it be allowed

21  to make a complete inspection of the originals of the documents that Bryant has

22  produced in this case, but Bryant has not permitted Mattel to do so.   More

23

24  [12] Id., Exh. 4.

25  [13] Id., Exh. 5 (at 178:3-22).

26  [14] Id., Exh. 5 (at 178:3-18, 195:21-196:20).

27  [15] E.g., id., ¶ 7 and Exhs. 3 and 5 (at 45:7-14, 139:23-141:8).

28  [16] Id., ¶¶ 8-9 and Exh. 6.

    [17] Id., ¶¶ 9-10 and Exhs. 7-8.

EXHIBIT 15   PAGE 218

JOINT STIPULATION

1   specifically, Mattel made its first request for inspection on October 25, 2004.[18]
2   Bryant responded that Mattel could make the inspection on November 1, 2004.[19]
3   Mattel asked Bryant to confirm that the inspection would include: "1) all of the non-
4   privileged responsive documents in Bryant's possession or control; 2) the additional
5   documents you agreed to allow us to inspect at the meeting of counsel; and 3) all of
6   the tangible items that Mattel requested."[20]  Before the inspection, Bryant's counsel
7   unilaterally limited Mattel's inspection to only the tangible things produced by Bryant
8   up to that point.[21]  Then, at the inspection on November 1, 2004, Bryant's counsel
9   provided only a few tangible items for Mattel's inspection, but provided none of the
10  originals of the drawings and other documents that Bryant had produced.[22]

11          Mattel again asked that all of the originals be made available for
12  inspection, this time requesting that the originals be made available for inspection
13  during Bryant's deposition, which the Court had twice compelled.[23]  Bryant's counsel
14  stated that "we will have the originals sent to Missouri," where the deposition was
15  taking place.[24]  Despite this, and despite Mattel's further requests at that time for the
16  originals,[25] Bryant made only a few of the original drawings available to be used in
17  questioning.[26]  As shown by the deposition transcript, in response to Mattel's
18  additional inquiries, Bryant's counsel specifically represented that, as to Bryant's

19          [18] Corey Dec., ¶ 11 and Exh. 9 (letter from K. Garey to K. Jacoby dated October 27,
20  2004).
21          [19] Id., ¶ 12 and Exh. 10 (letter from K. Jacoby to J. Corey dated October 28, 2004).
            [20] Id., ¶ 13 and Exh. 11 (letter from K. Garey to K. Jacoby dated October 28, 2004).
22          [21] Declaration of Tania Krebs, dated February 9, 2005 and filed concurrently
23  herewith ("Krebs Dec."), ¶ 2.
24          [22] Id.
            [23] Corey Dec., ¶ 14 and Exh. 12 (letter from J. Corey to K. Jacoby dated November
25  1, 2004).
26          [24] Id., Exh. 13 (e-mail from K. Jacoby to J. Corey dated November 11, 2004).
27          [25] Declaration of Michael T. Zeller, dated February 9, 2005 and filed concurrently
    herewith ("Zeller Dec."), Exh. 1; see also Corey Dec., ¶ 16 & Exh. 5 (at ]20:17-18).
28          [26] Id; Krebs Dec., ¶ 3.

EXHIBIT 15   PAGE 219

JOINT STIPULATION

1  original documents and drawings, "we certainly will make them available for
2  inspection at a reasonable time upon reasonable notice."[27]

3            During the deposition, Mattel questioned Bryant about the condition of
4  the few original Bratz drawings that Bryant's counsel had brought.  These originals
5  included Bratz drawings that had numerous "plugs" or holes in them, consistent with
6  the extraction of ink and paper samples for chemical analysis.[28]  Bryant testified that
7  he was unaware of the origin of the plugs, but did confirm that they were not present
8  on the documents when he turned them over to defendants' counsel.[29]

9            Mattel also questioned Bryant about a one-page document of Bratz
10 drawings that had a fax header date of April 10, 2000.[30]  Although the fax header
11 information on the page states that it was the third page of a fax transmission, neither
12 the first nor the second page of the transmission were produced, nor were any
13 subsequent pages or any cover sheet produced.  Moreover, neither the name of the
14 sender nor the sender's telephone number appears in the header.  Bryant stated that,
15 because his fax machine "wasn't set right," his fax machine did not indicate
16 information such as date and the sender's information.[31]  When asked if his fax
17 machine's setting would also cause all pages to be numbered page three, he stated that
18 he didn't recall.[32]

19            After the deposition, Mattel made additional requests to see all of the
20 originals produced by Mr. Bryant, including on November 17, 2004 and eventually
21 by sending a letter on December 14, 2004 requesting a Rule 37-1 meet and confer on
22
23

---

24  [27] Id., Exh. 5 (at 120:17-18).
25  [28] Id., Exh. 5 (at 459:19-460:15); Krebs Dec., ¶ 4.
    [29] Corey Dec., Exh. 5 (at 459:19-460:15).
26  [30] Id., ¶ 10 and Exh. 7.  The fax was produced by Bryant on August 12, 2004, as
27 Bates No. BRYANT 00167.
    [31] Id., Exh. 5 (at 319:15-19).
28  [32] Id., Exh. 5 (at 320:13-16).

EXHIBIT 15 PAGE 220

14

1    the subject.[33]  Bryant's counsel then agreed, again, to make all original documents

2    available for inspection and photographing, and the inspection was scheduled to

3    begin on December 22, 2004.[34]   Mattel's counsel, with a videographer and

4    photographer, inspected originals on December 22 and on December 23.[35] Yet, at the

5    inspection, Bryant's counsel did not turn over a single original Bratz drawing or

6    sketch[36] and, indeed, did not turn over the majority of the originals of documents that

7    he has produced.[37]  Equally troubling, Bryant's counsel claimed not to be able to turn

8    over or locate many of the originals, including the original Bratz drawings that Bryant

9    had brought to the deposition and that reflect defendants' destructive testing on the

10   originals.[38]  During the inspection on December 22 and 23, Bryant's counsel made

11   repeated promises that *all* original documents would be made available for inspection

12   "when found."[39]

13           Over the course of yet another month following the incomplete

14   inspection of documents that Bryant allowed, Mattel made further requests to inspect

15   the remaining original documents, including on January 24,[40] but to no avail.  Bryant

16

17        [33]  Corey Dec., ¶¶ 17 and 20 and Exhs. 14 and 18.

18        [34]  Krebs Dec., ¶ 5.

19        [35]  Id.; Declaration of Shane McKenzie, dated February 9, 2005 and filed concurrently herewith ("McKenzie Dec."), ¶ 2.

20        [36]  The documents for which only copies of Bratz drawings, and not originals, were
21   provided include: CB00957, 00958-976, 00977, 00978-983, 00984, 986-987, 00985, 00988-
     1016, 01018-01048, 01051, 01049-1050, 1052-1053, 01054-1094, 01095-1096, 01097-
22   1119. See McKenzie Dec., ¶¶ 2-4 & Exh. 1.

23        [37]  Id.  A complete listing of the original Bratz drawings, sketches and other
     documents that Bryant's counsel could not account for in any way, even as to their
24   whereabouts, are detailed in Exhibit 1 to the McKenzie Dec.

25        [38]  The original sketches and drawings that Bryant had at his deposition, but did not
26   produce for Mattel's inspection and photographing, include: CB00001-12; CB00175-182,
     184-192, 194-199, 201-213, 215-218, 220, 222-224, 226-227, 229-230, 232-246, 273-275,
27   CB01246-1247 and CB01243.  McKenzie Dec., ¶¶ 3-4 & Exh. 1.

28        [39]  McKenzie Dec., Exh. 1.
          [40]  Corey Dec., ¶ 18 and Exh. 15.

EXHIBIT 15   PAGE 221

JOINT STIPULATION

1  has not provided any dates on which the inspection can be completed and, moreover,

2  is now refusing to allow the inspection of any originals that have been redacted.[41]

3  Thus, despite Bryant's earlier promises, and more than three months after Mattel

4  began asking for the inspection, Bryant still has failed to turn over for inspection and

5  photographing the majority of the originals in his production.[42] He also has failed to

6  allow the inspection and photographing of *any* of the originals of Bratz drawings in

7  his production.[43] Indeed, the only "originals" of Bratz drawings that Mattel has been

8  allowed to inspect and photograph were, in fact, photocopies.[44]

9          **The Court Should Order Bryant to Make The Original Drawings,**

10          **Documents And Tangible Things Available For Inspection.**

11          There are several reasons why Bryant should be ordered to make his

12  originals and tangible items available for Mattel's inspection and photographing.

13  First, he agreed to it multiple times, including on the record at the Bryant deposition

14  and at a December 15 meet and confer.  Despite the fact that Mattel has spent

15  considerable time and money in reliance on these promises--showing up with

16  attorneys, videographers and photographers on three occasions to inspect documents

17  and other tangible things--Bryant's counsel has not lived up to their agreements.

18  Therefore, this Court should compel Bryant to do so.

19          Second, the plain language of Rule 34 allows Mattel to inspect Bryant's

20  responsive documents. It specifically allows a party requesting documents "*to inspect*

21  *and copy, any designated documents*"--including "writings" and "*drawings*"--"or *to*

22  *inspect* and copy, test, or sample any tangible things which constitute or contain

23  matters within the scope of Rule 26(b) and which are in the possession, custody or

24  control of the party upon whom the request is served".   Fed. R. Civ. P. 34(a)

---

[41] Corey Dec., ¶¶ 18-19. Notably, the multitude of redactions in Bryant's production
are not based on privilege.  Id., ¶ 19 and Exh. 17.

[42] Id., ¶ 21.

[43] Id.; McKenzie Dec., ¶ 3 & Exh. 1.

[44] McKenzie Dec., ¶ 3 & Exh. 1.

EXHIBIT 15  PAGE 222

JOINT STIPULATION

1   (emphasis added.)  This language means what it says.  As one court has stated, Rule
2   34 confers "a right to inspect the originals.  Possession of copies of documents does
3   not prevent discovery of actual documents so as to avoid possible challenges to the
4   genuineness of copies at the trial."  In re Kolinsky, 140 B.R. 79, 87 (S.D.N.Y. 1992)
5   (citing 4 Moore's Federal Practice, § 26-184 (2d ed. 1991)); see also Gielow v.
6   Warner Bros. Pictures, 26 F. Supp. 425 (S.D.N.Y. 1938) (holding originals were
7   "evidence material to any matter involved" within Rule 34 providing for discovery
8   and granting motion to compel).

9            The reasons for this are apparent:  originals often reveal significant
10  information not obtainable from copies.  As McCormick has stated, "[i]t has long
11  been observed that the opportunity to inspect original writings may be of substantial
12  importance in the detection of fraud," and "[m]any indicia of putative fraud such as
13  watermarks, types of paper and inks, etc., will not be discernable on the copy."
14  McCormick, Evidence §§ 231, 236 (4th ed. 1992).  Indeed, the policies seeking to
15  prevent inaccuracy and fraud with respect to documents are what animate Federal
16  Rule of Evidence 1002, which independently requires defendants to produce their
17  originals here.  "[W]ritings exhibit a fineness of detail . . . which will often be of
18  critical importance.  Prevention of loss of this fine detail through mistransmission is
19  a basic objective of the rule requiring production of documentary originals."
20  McCormick, supra, § 232; see also United States v. Yamin, 868 F.2d 130, 134 (5th
21  Cir. 1989) (explaining purpose of rule requiring production of originals is "to prevent
22  inaccuracy and fraud when attempting to prove the contents of a writing.").

23           Allowing Mattel equal access to the information shown by the originals--
24  which defendants obviously have access to--is particularly appropriate in this case.
25  This case involves numerous drawings, and the ones that Mattel has seen (but not
26  been able to photograph) were created using different kinds and colors of pencils,
27
28

EXHIBIT  15  PAGE  223

JOINT STIPULATION

1    inks and markers.[45]  They also have what appears to be different handwriting from
2    different sources made at different times on them, which is a point Bryant confirmed
3    in deposition.[46]  Another witness, a third-party, testified that certain annotations on
4    the copy of a Bryant drawing as produced by defendants here did not appear on the
5    original drawing that Bryant had previously shown to her.[47]  The timing of the
6    creation of these documents and of the various additional matter on them can be
7    critical, as noted above.  Mattel is entitled to know which originals defendants have
8    and is entitled to know the information that is evident only from originals, such as the
9    existence of watermarks or impressions and the use of different inks on particular
10   documents.  Without inspecting and photographing the originals of these drawings,
11   it will be effectively impossible for Mattel to fully understand the evidence and to test
12   any claims that the drawings are authentic.

13           Third, and independently, Mattel is entitled to inspect and photograph
14   the originals because there is evidence of both spoliation and destructive testing by
15   defendants to the originals.  Sedrati v. Allstate Life Insurance Co., 185 F.R.D. 388
16   (M.D. Ga. 1998), illustrates why.  There, defendant's expert had engaged in
17   destructive testing on original documents, without actual, prior notice to the Court or
18   to the other side.  Id. at 391.  Even though the Court found that the destructive testing
19   was not done in bad faith, it ordered the exclusion of defendant's evidence because
20   of defendant's conduct: "Our rules of evidence and procedure, as well as our system
21   of justice generally, demand fairness to all concerned parties throughout the process
22   of discovery.  The Court finds that Defendant's conduct with respect to the handling
23   and testing the subject documents falls far short of that standard."

24           Mattel is entitled to know which originals have been altered, including
25   through testing, and to document defendants' unauthorized actions through inspecting

26
27     [45]  E.g., Krebs Dec., ¶ 4.
28     [46]  E.g., id.; Corey Dec., Exhs. 5 and 6.
       [47]  Corey Dec., Exh. 23.

EXHIBIT 15  PAGE 224

JOINT STIPULATION

1   and photographing them.  Not only is Mattel entitled to do so in connection with any

2   potential motion regarding appropriate remedies for defendants' conduct, but without

3   an inspection Mattel has no way of knowing what drawings and other documents

4   defendants even have originals of and cannot ascertain whether additional testing can

5   potentially be performed.  The chemical composition of certain types of inks and

6   papers, and details such as watermarks and other impressions found only on the

7   originals of the documents, may bear on when a document was created and on when

8   the various writings on them were made.[48]  As noted above, Mattel anticipates that

9   it may seek to have experts examine the documents to determine whether anything

10  on the originals would reveal the true date of their creation.  Such information is

11  relevant in this case because it may either confirm or contradict Bryant's testimony

12  about when he was doing the work on Bratz and/or Angel that he says he did.  But

13  Mattel needs detailed information about the originals before it can ascertain what, if

14  any, type of analysis would be appropriate and furthermore to determine which of the

15  originals are potentially appropriate candidates for testing.  Mattel cannot do so,

16  however, without being able to inspect and photograph the originals.  Indeed,

17  defendants' destructive testing may well have precluded any further effective testing

18  from being conducted.  See, e.g., Sedrati, 185 F.R.D. at 393 ("Clearly, preservation

19  of the documents in their original state is a crucial precondition for conducing

20  accurate forensic tests on them.").  That can be determined only from an inspection

21  of the originals, which is another reason it should be ordered.

22          Finally, Bryant cannot legitimately complain that an order compelling

23  him to make the originals available would be burdensome.  Apart from his prior

24  agreements to make the originals available, Bryant's entire production is only some

25  _____

26  [48]  See, e.g., Equal Employment Opportunity Commission v. Ethan Allen, Inc., 259
    F.Supp.2d 625, 626 n.1 (N.D. Ohio 2003) ("Sometimes, the determination of the type of ink
27  used can, by itself, prove conclusively that the claimed date of writing is false.  For example,
    a given ink may:  (1) have been manufactured only during certain years;  and/or (2) contain
28  'tags,' which are chemical components added to the ink for the precise purpose of providing
    a date of manufacture.").

                                        19

EXHIBIT 15  PAGE 225

1588 pages.[49]  At the prior, limited inspection, Mattel was allowed to inspect 462 pages of the "originals" of Bryant's production.[50] The additional, remaining pages are not an unreasonable amount for Bryant to collect and make available for inspection, especially in light of the fact that the originals he has not produced for inspection are among the most relevant and significant in this case.

Mattel respectfully requests that its motion be granted as to Issue No. 1.

**B.    Bryant's Position**

**Mattel Has Had A More Than Reasonable Opportunity To Inspect Bryant's Original Documents And Things**

The true issue here is whether Mattel has already had a full and fair opportunity to inspect documents or, in the alternative, whether the Court should issue an order placing a reasonable time limit on Mattel's future inspection of Bryant's documents.  Given the excessive time Mattel has spent performing its "inspection" thus far, Mattel's motion should be denied. But, if the Court is inclined to grant Mattel one last chance to conduct a further inspection, any such Order must be limited to protect Bryant from further harassment, undue burden, annoyance and expense, *and* it must be mutual.

Mattel fails to mention that on the three days during which its attorneys inspected original documents at the offices of Bryant's counsel, it "inspected" an average of just over one hundred pages per day, for a total of about three hundred and fifty (350) pages.[51]  In fact, each of the inspections was concluded by Mattel's counsel at or near the close of business, and not due to a lack of documents to inspect. This was due to the fact that Mattel brought at least one attorney, a videographer and

---

[49]  E.g., McKenzie Dec., ¶ 3 & Exh. 1.
[50]  Id.
[51]  Jacoby Decl. at Par. 8.

EXHIBIT 15 - PAGE 226

JOINT STIPULATION

1  a still photographer to each inspection.[52] This resulted in a staggering amount of time

2  being spent with each separate document before moving on to the next. Bryant has

3  been more than accommodating of Mattel's lengthy inspection of his production, but

4  Mattel cannot be heard to complain. It is Mattel that has failed to make the most

5  efficient use of its time - three days *exclusive* of Bryant's 3-day deposition - to inspect

6  originals.

7         Mattel's portion of this Joint Stipulation also ignores that much of

8  Bryant's 1588-page production[53] consisted of royalty statements and telephone

9  records. In turn, a large number of those records are redacted to protect confidential,

10 and/or proprietary information.[54] <u>Permitting Mattel to inspect the originals of</u>

11 <u>documents that were produced in redacted form would obviously render futile</u>

12 <u>Bryant's right to safeguard this protected information - a fact Mattel completely</u>

13 <u>ignores. Mattel is improperly attempting to gain access to originals of redacted</u>

14 <u>documents through this motion.</u> For Mattel to claim that Bryant has failed to

15 cooperate in the inspection because he has not permitted it to inspect documents it is

16 not entitled to see is specious and illogical.

17         In the spirit of cooperation, Bryant invited Mattel to meet and confer to

18 determine a way for such an inspection to be conducted without compromising

19 Bryant's rights, but Mattel failed to respond.[55]

20 <u>**A Court Is Required To Place Reasonable Limitations On The**</u>

21 <u>**Inspection Of Documents**</u>

22         The right to inspect documents under Rule 34 is not unfettered. Rather,

23 it is subject to reasonable limitations, which must be delimited by a court when

24 issuing an order permitting an inspection. For example, the time, place and manner

25 _____

26  [52] Id.

27  [53] Royalty statements and telephone records comprise over 380 pages, or more than one-fifth his total production.

28  [54] Jacoby Decl. at Par. 6.
    [55] Id.

EXHIBIT 15 - PAGE 227

21

1   of inspection must be specified in such an order. <u>Rosenblum v Dingfelder</u>, 1 F.R.D.
2   179 (DC NY 1939).  The place of inspection and the cost of transportation of the
3   documents, if inspection is to be carried out at a location other than where the
4   documents are found, must also be identified. <u>Id.</u>; <u>See Also</u> <u>Fairwater Transp. Co. v</u>
5   <u>Chris-Craft Corp.</u>, 1 F.R.D. 509 (DC NY 1940).

6          At least one other court has found that a pretrial discovery order under
7   Rule 34 was defective in failing to specify a time and place for the production,
8   inspection and copying of books and papers.  <u>Securities & Exchange Com. v Los</u>
9   <u>Angeles Trust Deed & Mortg. Exchange</u>, 24 FRD 460 (SD Cal. 1959).  Furthermore,
10  even in the absence of a court order, a party is allowed to set reasonable limitations
11  on the inspection of documents.  <u>Federal Sav. & Loan Ins. Corp. v Village Creed</u>
12  <u>Joint Venture</u>, 130 FRD 357 (ND Tex. 1989).

13         Should the Court be inclined to permit Mattel the further opportunity to
14  inspect Bryant's original documents, it should impose clear guidelines: (1) limiting
15  the total amount of time Mattel will be permitted to further inspect Bryant's
16  documents to one court day (seven hours); (2) limiting the inspection to specific
17  documents, referenced by Bates number, that Mattel will be permitted to inspect;
18  (3) limiting the dates(s) and times on which the inspection is to take place (after
19  giving Bryant and his counsel an opportunity to advise as to availability);
20  (4) preventing Mattel from inspecting the originals of documents produced in a
21  redacted form (unless and until Mattel has successfully secured an order compelling
22  production of the document in an unredacted form); and (5) directing Mattel to give
23  Bryant full and complete access to inspect Mattel's original documents (subject to
24  reasonable time, place and manner restrictions consistent with the length and manner
25  of Mattel's inspection of Bryant's documents).  Only in this fashion will Bryant be
26  protected from Mattel's seemingly endless inspection, and the resulting burden,
27  harassment and oppression on Bryant.
28

EXHIBIT 15  PAGE 228

JOINT STIPULATION

1  **CONCLUSION**

2          Mattel has had ample opportunity to complete its inspection of Bryant's

3  documents and things.  However, should the Court be inclined to permit Mattel

4  additional time to conduct its inspection, Bryant submits that the inspection should

5  be specifically delimited with respect to time, duration and the specific documents to

6  be examined.  The costs of opposing this motion and any additional costs incurred

7  with respect to transporting and/or producing the documents in question (and

8  expenses associated with Bryant's counsel's trip) should be borne by Mattel.

9  Moreover, Bryant respectfully submits that any order regarding the inspection of his

10  original documents and things should be mutual, with Mattel also being required to

11  produce its documents and things for inspection.

12

13          **Issue No. 2**

14          Should MGA Be Compelled to Make Available for

15          Inspection the Originals of Documents That It Has Produced?

16

17          Set forth below are (A) Mattel's position and (B) MGA's position

18  with respect to Issue No. 2.

19

20  A.    **Mattel's Position**

21          There is no question that MGA has both spoliated and been involved in

22  the destructive testing of originals here.  Victoria O'Connor is a former MGA

23  executive who has testified in this case.[56] According to Ms. O'Connor, Bryant signed

24  his contract with MGA at issue in this suit and faxed the entirety of it to MGA from

25  Mattel.[57]  That faxed contract from Bryant had a fax header that read "Barbie

26  Collectables" and bore the number of the Mattel fax machine, showing that it came

27  _____

28      [56] Corey Dec., Exh. 19 (O'Connor Dep. Tr. at 16:15-17).
        [57] Id. at 18:13-14.

                        EXHIBIT 15  PAGE 229

                            23

1    from Mattel.[58]  When she brought this to the attention of her boss, Isaac Larian, the

2    CEO and founder of MGA Entertainment, he instructed her to "white-out" the fax

3    header information on all of the pages.[59]  Ms. O'Connor testified that she did, in fact,

4    alter this document at Mr. Larian's direction because it demonstrated Bryant "was still

5    employed at Mattel at the time the contract [between MGA and Bryant] was

6    executed."[60]  The copy of the signed contract that MGA produced in this case did not

7    bear the fax header that MGA's CEO had ordered be whited-out.[61]  Indeed, MGA

8    produced no copy of any Bryant contract that bore fax header information on any

9    pages of the contract at all except for the last page (which also did not include the

10   Mattel fax header that Ms. O'Connor testified about).[62]  Nor, as described further

11   below, has MGA ever allowed Mattel to inspect and photograph any of its originals--

12   including the Bryant contract that it had previously produced as a copy of the

13   supposed "original" of that document.[63]

14            After Ms. O'Connor's testimony, on December 9, 2004, Mattel sent a

15   letter to MGA seeking, among other things, MGA's agreement that Mattel could

16   inspect the original documents, drawings and tangible things responsive to Mattel's

17   discovery requests.[64]  Counsel for MGA did not respond to that letter, and Mattel sent

18   another letter asking for a meet and confer pursuant to Local Rule 37 about the

19   inspection.[65]  On December 15, 2004, counsel for MGA and Mattel held a meeting

20

21   _____

22      [58] Id. at 18:13-18.

        [59] Id. at 18:17-18.

23      [60] Id. at 18:13-18, 19:01-04, 20:8-20.

24      [61] Corey Dec., ¶ 23 and Exh. 21.

25      [62] Id.

        [63] Id.

26      [64] McKenzie Dec., Exh. 2 (letter from S. McKenzie to D. Torres dated December 9,

27   2004).

        [65] Corey Dec., ¶ 24 and Exh. 22 (letter from J. Corey to D. Torres dated December

28   13, 2004).

                                          24

EXHIBIT 15   PAGE 230

JOINT STIPULATION

1    where MGA's counsel declined to agree to provide MGA's originals for inspection

2    and photographing.[66]

3             A meet and confer was held on December 23, 2004.[67]  Although Mattel

4    specifically had requested in advance that MGA provide proposed dates on which it

5    would make available for inspection and photographing the originals of all documents

6    and tangible things that MGA has produced in this matter, MGA did not propose any

7    available dates at the meet and confer.[68]  MGA did agree, however, to provide Mattel

8    with proposed dates for the inspection of all original documents no later than January

9    10, 2005.[69]

10             January 10 came and went without MGA providing any dates for the

11    inspection as promised.   In a letter, MGA instead began to backpedal on its

12    agreement, asserting only that "[t]o the extent MGA has possession of any original

13    artwork and tangible things produced in this matter, it will make such material

14    available for inspection on a mutually convenient date."[70]  Similar to Bryant's claims

15    that he could not locate the originals of the documents he has produced, MGA also

16    stated that it was "in the process of locating original documents, which may be in a

17    variety of locations, and will propose a date of the inspection once it has assembled

18    all such documents."[71]  Moreover, as to the altered document that Victoria O'Connor

19    testified to, MGA claimed it "continues to search for the original and any copy of the

20    purported 2000 facsimile of the Bryant-MGA contract.  Whether you believe it or not,

21

22

23

24    _____

25    [66]  Krebs Decl. ¶ 6.

26    [67]  Zeller Dec., ¶ 3 and Exh. 2.

27    [68]  Id., see Corey Dec., Exh. 22.

28    [69]  Zeller Dec., Exh. 2 (letter from M. Zeller to A. Meyers dated December 23, 2004).
     [70]  Id., Exh. 3 (letter from P. Ambrosini to M. Zeller, dated January 10, 2005).
     [71]  Id.

EXHIBIT: 15   PAGE 231

JOINT STIPULATION

1  no such document has been located, to date.  In the event that such a document is
2  located, it will be produced and the original will be made available for inspection."[72]

3       After another week had passed, Mattel again requested that MGA
4  propose dates when it would make available for inspection *all* of the originals that it
5  has produced.  In its letter to MGA on January 17, 2005, Mattel pointed out that
6  MGA had failed to propose dates for the inspection on January 10 -- as it had
7  promised to do on December 23 -- and was inappropriately attempting to limit
8  Mattel's right to inspect all of the originals MGA had produced to artwork and
9  tangible things.[73]  Mattel again unambiguously stated:  "We have been asking for
10 many weeks now that MGA provide proposed dates on which it will make available
11 for our inspection and photographing the originals of all documents and tangible
12 things that MGA has produced in this matter."[74]  Despite the clarity of Mattel's
13 repeated requests, and seeking to delay the inspection further, MGA professed
14 confusion by claiming that it needed "additional clarification" regarding "the specific
15 documents and things that Mattel wants to inspect in original form."[75]

16      To date, MGA continues with its failure to allow Mattel the right to
17 inspect its originals and, indeed, some two months after Mattel's initial request, still
18 has proposed no dates for any such inspection.[76]  The Court should compel MGA to
19 produce its originals for all of the same reasons that Bryant should be ordered to
20 produce his originals, as discussed above.  Not only did MGA at one point agree to
21 it, but Mattel is clearly entitled to the inspection under Federal Rule of Civil
22 Procedure 34 and the Federal Rules of Evidence, as shown above.  See Issue No. 1,
23 at 16:19-17:22.  The originals sought are also independently discoverable, since
24 Mattel is entitled to the additional information that only originals can show.  In

[72] Id.
[73] Id., Exh. 4 (letter from M. Zeller to P. Ambrosini dated January 17, 2005).
[74] Id.
[75] Id., Exh. 5 (letter from P. Ambrosini to M. Zeller, dated January 24, 2005).
[76] Id., ¶ 8.

EXHIBIT 15  PAGE 232

26

JOINT STIPULATION

1   addition, there are serious questions about the authenticity and integrity of MGA's

2   documents here, both in light of Ms. O'Connor's testimony and in light of the

3   unauthorized destructive testing that has been performed.  These facts alone warrant

4   an order that MGA provide its originals for inspection and copying, so that Mattel can

5   ascertain which documents have been altered in advance of a potential motion

6   seeking appropriate remedies for defendants' conduct.  And, as explained above,

7   without inspecting and photographing the originals, Mattel cannot determine what,

8   if any, expert examination or analysis might be appropriate (or even possible at this

9   stage because of defendants' handling of the originals) to determine when documents

10  were created or to test claims about the authenticity of MGA's documents.

11          While MGA has complained about the alleged "time and trouble of

12  identifying and locating originals,"[77] an order compelling MGA to turn over for

13  inspection and photographing the originals will not be burdensome.  MGA's entire

14  production to date is less than 750 pages--filling less than a single box.[78]  Not only

15  has Mattel been crystal clear regarding its request to inspect *all* of the originals of

16  MGA's small production for many weeks now, but it strains credulity to suggest that

17  locating fewer than 750 pages of originals would unduly burden the resources of

18  MGA, which touts itself as a company enjoying revenues in excess of a billion dollars

19  annually,[79] or the resources of its counsel.

20          Mattel respectfully requests that its motion be granted as to Issue No. 2.

21

22

23

24

25

26

27  [77] Id., Exh. 5 (letter from P. Ambrosini to M. Zeller dated January 24, 2005).

28  [78] Corey Dec., ¶ 8.
    [79] Id., Exh. 24.

EXHIBIT 15 · PAGE 233

27

**B.    MGA's Position**

**1.    MGA Has Agreed to Produce for Inspection Original Artwork and Tangible Things**

Mattel's complaints about MGA's efforts to make original documents and tangibles available for Mattel's inspection are disingenuous, at best, for a myriad of reasons. First and foremost, MGA already agreed to allow MGA to inspect the original artwork, tangibles and invoices that MGA produced. As previously mentioned, the only thing standing in the way of this inspection is Mattel's unreasonable refusal to explain why it contends that this agreement is somehow inadequate.

MGA cannot figure out, on its own, what exactly Mattel wants to inspect from MGA without some clear direction and explanation from Mattel. Other than artwork, tangibles and invoices, the remainder of MGA's production consists of emails and email attachments. Performing an inspection of "original" emails, however, makes no sense. Mattel may, therefore, be expecting to "inspect" original *unredacted* emails. Some emails have been redacted to omit proprietary, confidential and trade secret information that is *wholly irrelevant to this case and non-responsive to any document request*. Mattel, however, has never contended that it is entitled to these emails in unredacted form and it certainly should not be allowed to obtain the properly redacted information through the back-door by demanding to inspect unredacted "originals."

To the extent that Mattel may be expecting to "inspect" the original source material pictured in some of the email attachments – even though Mattel has not requested such originals – identifying and locating this source material would pose an extreme burden on MGA and would provide no additional, relevant information. Most, if not all, of the email attachments are many years old. Indeed, in some instances, MGA could only guess what the pictures are of, and might not even be able to figure out, from the pictures, where the pictured objects might be, if

EXHIBIT 15    PAGE 234

28

1 | at all.  Indeed, some of the objects could be overseas, or may no longer exist at all,

2 | in which case MGA could perform an endless search and never find them.  In any

3 | event, MGA cannot even assess the feasibility of such a search, as well as any

4 | additional searches that may be necessary, without knowing what Mattel actually

5 | wants.

6 |       Mattel's request is further disingenuous because Mattel itself has refused

7 | to commit to allowing MGA to inspect *any* of Mattel's originals.  (Ambrosini Decl.

8 | ¶ 5.)  Mattel can hardly expect to have unfettered access to MGA original documents

9 | and things while, at the same time, refusing to allow MGA to inspect Mattel's own

10 | originals.  If there is to be any inspection at all, at the very least it should be mutual.[80]

11 |

12 |     **2.**    **The Purported Fax Testified To By Victoria O'Connor**

13 |       Mattel's charges as to spoliation of evidence are not well-taken, and

14 | indeed seem to be nothing more than a contrivance intended to try to inflame and

15 | prejudice MGA before the Court.  First, MGA does not dispute that Mr. Bryant

16 | signed a contract with MGA while still employed by Mattel (and, by Mr. Bryant's

17 | own admission, appears to have faxed that contract from Mattel) – which is the only

18 | point on which this purported document could provide evidence. Second, MGA has

19 | made clear on several occasions that it has undertaken substantial efforts to locate this

20 | purportedly altered document and simply has not found anything meeting the

21 | description of this document, although it *has* found faxes sent by Ms. O'Connor.

22 | Indeed, MGA has diligently searched not only its own files, but has also had the

23 | attorneys that worked for MGA at the relevant time search their records as well for

24 |     [80]  Moreover, Mattel's stonewalling as to its own originals is far from an isolated

25 | incident of Mattel's egregiously uncooperative discovery behavior.  To cite just one
example, Mattel has refused to produce even a copy of its own production to MGA unless

26 | MGA pays for such production.  It is simply mind-boggling that Mattel would have the
audacity to expect MGA to undertake the significant, time-consuming and costly endeavor

27 | to locate and assemble for production its originals, without even knowing exactly what

28 | Mattel wants, and while Mattel will not even assume the expense of producing copies of its
production to MGA.

EXHIBIT 15 PAGE 235

JOINT STIPULATION

1  any version of the contract with the Mattel fax header or that appears to have been in
2  any way altered such as that described by Ms. O'Connor. *No such document has*
3  *been found*.

4          Whether Ms. O'Connor's testimony is to be believed or not is an issue
5  in and of itself, but there is no evidence corroborative of her testimony as to this
6  purported altered document.   Moreover, as MGA has made clear in its
7  correspondence on this issue, if MGA locates this purported document, MGA will
8  produce it. (Ex. A to Ambrosini Decl.) Unless and until that day arrives, however,
9  *MGA cannot produce for inspection a document that it does not have.* Indeed, this
10 is not the first time that Mattel has brought a motion on the basis of its own
11 unquestioned acceptance of the dubious and uncorroborated testimony of third
12 parties.  In another Joint Stipulation served the same day as this one, Mattel also
13 moved to compel MGA to produce documents that do not exist based on the
14 incredible, unsubstantiated and false testimony of third-party witness Anna Rhee.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 15  PAGE 236

30

JOINT STIPULATION

## Issue No. 3

### Should Defendants Be Sanctioned?

Set forth below are (A) Mattel's position, (B) Bryant's position and (C) MGA's position with respect to Issue No. 3.

**A.   Mattel's Position**

Rule 37(a)(4) of the Federal Rules of Civil Procedure provides that a party bringing a motion to compel is entitled to the "reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response or objection was substantially justified, or that other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(4).  The burden of establishing substantial justification is on the party being sanctioned. Hyde & Drath v. Baker, 24 F.3d 1162, 1171 (9th Cir. 1994).  Independently, sanctions may be imposed under 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  Sanctions under this section are appropriate "for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." RTC v. Dabney, 73 F.3d 262, 265 (10th Cir. 1995) (citing Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987)).

Here, there is no legitimate excuse for defendants' failures to produce the originals for inspection and photographing. They agreed to do it, but then failed to abide by their promises, despite having had literally months to do so. Nor, in any event, is there any substantial or good faith basis for defendants' long-standing failures. It is more than obvious that Mattel is entitled to inspect and photograph the

31

EXHIBIT 15 PAGE 237
JOINT STIPULATION

1   originals and gave defendants more than an ample, reasonable time to collect them
2   and make them available.  Indeed, Mattel gave Bryant over three months and MGA
3   some two months to allow the inspection. Instead, Mattel got the run-around and thus
4   was forced to burden this Court with this motion as a result of defendants' lack of
5   cooperation.

6          Defendants should be sanctioned for the fees and costs that they have
7   forced Mattel to expend as a result of their evasion and lack of a good faith
8   justification for withholding the originals. Mattel therefore requests that defendants
9   be ordered to pay $4200 as partial reimbursement for the fees and costs that Mattel
10  has incurred on this motion.[81]

11

12  **B.    Bryant's Position**

13         Mattel requests sanctions against Bryant for failing to produce original
14  documents for inspection despite the fact that he has diligently complied with
15  Mattel's numerous inspection requests - to the point of having original documents
16  sent to Missouri on the eve of his deposition and incurring significant inconvenience
17  and expense in the process. As Mattel acknowledges, Bryant *agreed* to and actually
18  did produce original documents and tangible things for inspection.  Mattel, on the
19  other hand, has repeatedly abused its Rule 34 inspections in a manner designed solely
20  to improperly delay the proceedings, increase litigation costs *and* harass Bryant.
21  Mattel's intent to gain an improper advantage in the litigation is all the more apparent
22  by its failure to provide its own original documents for inspection, despite Bryant's
23  request.

24         Sanctions against Mattel, not Bryant, are warranted here.

25         Under 28 U.S.C. section 1927, the same section ironically cited by
26  Mattel in support of its sanctions request against Bryant, "[a]ny attorney ... who so
27  multiplies the proceedings in any case unreasonably and vexatiously may be required

28  ─────────────────────
    [81] Corey Dec., ¶ 27.

EXHIBIT 15 PAGE 238

32

1  by the court to satisfy personally the excess costs, expenses, and attorneys' fees
2  reasonably incurred because of such conduct." Furthermore, under F.R.C.P.
3  37(a)(4)(B), if a discovery motion is denied, the court "shall, after affording an
4  opportunity to be heard, require the moving party or the attorney filing the motion or
5  both of them to pay the party or deponent who opposed the motion the reasonable
6  expenses incurred in opposing the motion, including attorneys' fees, unless the court
7  finds that the making of the motion was substantially justified or that other
8  circumstances make an award of expenses unjust."

9      Bryant's counsel has spent more than five hours preparing this Joint
10  Stipulation, and anticipates spending additional time preparing a supplemental brief
11  in this matter and attending the hearing. Counsel's hourly rate in $295 per hour. See
12  Messiha Declaration at Par 2. Accordingly, Bryant requests sanctions in the amount
13  of at least $1475.00 for the costs expended in defending this application.

14      Bryant respectfully submits that he has ample justification in opposing
15  Mattel's motion, and that Mattel's request for sanctions should therefore be denied.

16

17  **C.   MGA's Position**

18      If anyone is to be sanctioned here, it should be Mattel for two main
19  reasons. First, Mattel has brought a needless motion that could have been avoided
20  had it but made an honest, good faith effort to cooperate with MGA. Second, Mattel
21  has refused to provide MGA with the declarations and exhibits that Mattel refers to
22  in its portion of the Joint Stipulation until *after* the stipulation is signed and filed and
23  *after* it is too late for MGA to respond to whatever it is that Mattel is withholding.[82]

24

25

26

27  [82] In addition, Mattel omitted this Issue Three from the portion of the Joint
    Stipulation it provided on February 9, 2005. Only after much debate did Mr. Zeller relent
28  and give Defendants the five days required under the Local Rules to draft their portions for
    Issue Three. (Ambrosini Decl. ¶ 9 & Exs. E, F.)   EXHIBIT 15 PAGE 239

33

JOINT STIPULATION

1        **1.     This Motion Was Completely Unnecessary, and Mattel Failed**
                                     **to Make an Honest, Good Faith Effort to Resolve the Issues**

2                                         **Without Court Intervention.**

3             This motion was wholly unnecessary and serves only to "unreasonably

4  and vexatiously" multiply the proceedings in this case in violation of 28 U.S.C.

5  § 1927 ("Any attorney . . . who so multiplies the proceedings in any case

6  unreasonably and vexatiously may be required by the court to satisfy personally the

7  excess costs, expenses, and attorneys' fees reasonably incurred because of such

8  conduct."). *MGA agreed to cooperate with Mattel's request to inspect originals.*

9  MGA simply could not – and still cannot – understand what more Mattel wants to see

10  besides the original artwork, tangibles and invoices that MGA agreed to make

11  available. Although MGA explained this to Mattel, and tried to resolve the issue

12  without burdening the Court, Mattel was apparently eager to bring a motion on even

13  the slightest pretext. Ignoring MGA's questions entirely, it served this Joint

14  Stipulation instead. (Ambrosini Decl. ¶ 6 & Ex. C.)

15             *Mattel's actions exemplify the sort of unreasonable litigation tactics*

16  *that the Federal and Local Rules are designed to avoid, and which the Court*

17  *should not reward. Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc.,* 339 F.3d

18  180, 186-87 (3d Cir. 2003) (reversing sanctions awarded to plaintiff, and noting that

19  "plaintiff's counsel, in its zeal, at times proliferated and complicated the discovery

20  disputes through numerous and lengthy submissions and with an approach

21  best-characterized as 'shoot first and find out later'") (additional quotation marks

22  omitted); *Soto v. City of Concord,* 162 F.R.D. 603, 623 (N.D. Cal. 1995) (denying

23  motion for sanctions because plaintiff failed to adequately confer, and stating that

24  "sending a letter to the opposing party demanding compliance with a discovery

25  request is not what this Court regards as an earnest attempt to 'meet and confer' on

26  the issues. Rather, a lively exchange of ideas and opinions is required."). Good faith

27  under Rule 37 "contemplates, among other things, honesty in one's purpose to

28  meaningfully discuss the discovery dispute . . . and faithfulness to one's obligation to

1  secure information with court action." *In re Lane*, 302 B.R. 75, 79-80 (D. Idaho

2  2003). In other words, good faith "mandates a ***genuine attempt*** to resolve the

3  discovery dispute through non-judicial means." *Id.* (emphasis added). Mattel's

4  conduct does not evidence any genuine attempt to resolve the issue at all and does not

5  comply with the requirements of the Rule, or meet its policy and purpose.

6          Indeed, Mattel still refuses to explain what more it wants, even in its

7  motion. It appears, therefore, that Mattel's request is a thinly veiled attempt to obtain

8  access to irrelevant (but competitively sensitive) information that MGA legitimately

9  redacted. Mattel does not, and cannot, contest the propriety of the redactions and so,

10  instead, has simply disguised its effort by calling it a request to inspect originals.

11  Alternatively, if this is not Mattel's goal, the only other additional things that Mattel

12  could be asking for are the originals of a variety of tangible things that are pictured

13  in e-mail attachments from many years ago. If it were even possible for MGA to

14  identify and locate the pictured objects – some or all of which may not even exist –

15  Mattel has not shown that its supposed need to view them justifies the immense

16  burden and expense that it would place on MGA to perform the search. While MGA

17  attempted, in good faith, to conduct a meaningful discussion with Mattel to try to

18  reach an amicable solution, MGA's efforts were for naught. Mattel ignored MGA's

19  efforts entirely and should be sanctioned for its lack of good faith compliance with

20  the Rules.

21

22          **2.      Mattel Will Not Permit MGA to See the Declarations and**
23          **Exhibits that Mattel Has Referenced in its Portion of the**
            **Joint Stipulation.**

24          Mattel should also be sanctioned because it refuses to permit MGA to

25  see the Declarations and Exhibits that Mattel has referenced in its portion of the Joint

26  Stipulation. Indeed, this is the *second* time that Mattel has served MGA with an

27  unfinished Joint Stipulation containing references such as "Zeller Decl. ¶ __," with

28  blanks in place of citations, and unaccompanied by the declarations or exhibits that

EXHIBIT 15  PAGE 241

35

1  are incorporated by reference. (Ambrosini Decl. ¶¶ 6-7 & Ex. D.) Mattel steadfastly
2  maintains that it is allowed to refer to and cite declarations and exhibits in its Joint
3  Stipulation without telling MGA what those declarations say, without telling MGA
4  what those exhibits are, and without providing MGA with the declarations and
5  exhibits, until *after* MGA responds to Joint Stipulation, signs the Joint Stipulation
6  and Mattel files the Joint Stipulation. (Ambrosini Decl. ¶ 8 & Exs. F, G, & H.)

7          This has forced MGA to draft its response based on incomplete
8  information. For example, at note 32 of Ex. D to the Ambrosini Declaration, Mattel
9  cites a declaration that purportedly lists a range of Bates-numbered documents that
10 are neither identified in the Joint Stipulation itself nor provided as an exhibit. MGA
11 is left to guess what those unidentified Bates-numbered documents might be. Worse
12 yet, under Mattel's procedure, MGA will not know this information until *after* the
13 Joint Stipulation is sent to the court, which is then too late for MGA to take the
14 information into account in its response. That leaves MGA at a distinct disadvantage
15 because MGA is forced to respond to incomplete information. Further, it will not
16 have an opportunity to respond in the Joint Stipulation once Mattel has completed and
17 filed the Stipulation, its declarations and exhibits. MGA has now begun to reference
18 this problem when it signs the Joint Stipulations.

19         The Local Rules surely do not condone this practice. On the contrary,
20 the Local Rules require the moving party to provide its "portion of the stipulation,"
21 not a rough draft of that portion or an incomplete version thereof. *See* C.D. Cal. Loc.
22 R. 37-2.2. Certainly, Mattel's undisclosed declarations and exhibits are part of the
23 Joint Stipulation and must accompany it when Mattel's portion is served. That is
24 clearly the tone of the rule and, indeed, is the only interpretation that makes logical
25 sense. Otherwise, MGA does not have a fair opportunity to respond to Mattel's
26 positions, because it is not fully informed of what those positions are. Worse yet,
27 Mattel has an unfair opportunity to put whatever it wants in its declarations, after it
28

EXHIBIT 15   PAGE 242

JOINT STIPULATION

1   receives MGA's papers and after MGA's opportunity to address the issue in the Joint

2   Stipulation has passed.

3         Mattel's gamesmanship should not be tolerated.  *Marchand v. Mercy*

4   *Med. Ctr.*, 22 F.3d 933, 936 (9th Cir. 1994) (stating that parties "should focus on the

5   goal of the Rules, full and efficient discovery, not evasion and word play").  This

6   motion is but one more example of Mattel's scorched earth and patently unreasonable

7   discovery practices in this case to date.  Perhaps Mattel is trying to create issues

8   where there are none, in the hope that the Court will simply get tired of its tactics and

9   ignore the discovery disputes, thereby giving Mattel free reign to engage in even

10  more unreasonable and unacceptable tactics with impunity.  The Court should not

11  reward Mattel for its behavior by permitting this to occur.  MGA respectfully requests

12  that the Court deny Mattel's request for sanctions[83] and, instead, impose sanctions on

13  Mattel's counsel for bringing a frivolous motion and unreasonably multiplying the

14  proceedings in this case. 28 U.S.C. § 1927 ("Any attorney . . . who so multiplies the

15  proceedings in any case unreasonably and vexatiously may be required by the court

16  to satisfy personally the excess costs, expenses, and attorneys' fees reasonably

17  incurred because of such conduct.").

18        MGA also requests that Mattel be ordered to pay the fees and expenses

19  that MGA reasonably incurred in responding to Mattel's frivolous motion, in the

20  amount of $5,000.  (Ambrosini Decl. ¶ 13.)

21

22

23

24        [83]  Mattel has come nowhere near showing that MGA acted "recklessly or in bad

25  faith" to justify its requests for sanction against MGA under 28 U.S.C. § 1927.  *See In re*
    *Integrated Circuit Sys., Inc. v. Realtek Semiconductor Co.*, No. C00-4035 MMC(BZ), 2002

26  WL 532122, at *1 (N.D. Cal. Apr. 5, 2002) (sanctions under § 1927 "requires a finding that

27  a party acted recklessly or in bad faith") (citing *Pacific Harbor Capital, Inc. v. Carnival*
    *Airlines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000).  Mattel's request for sanctions under

28  Rule 37(a)(4) is similarly unauthorized because Mattel failed to make "a good faith effort
    to obtain the disclosure or discovery without court action." Fed. R. Civ. P. 37(a)(4)(A).

37

DATED: February 17, 2005

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP

By Jon D. Corey /ate
Jon D. Corey
Attorneys for Plaintiff/Counter-Defendant
Mattel, Inc.

DATED: February ___, 2005

LITTLER MENDELSON, P.C.

By
Keith A. Jacoby
Attorneys for Defendant and Counter-
Claimant Carter Bryant

DATED: February ___, 2005

O'MELVENY & MYERS, LLP

By
Paula Ambrosini
Attorneys for Defendant
MGA Entertainment Inc.

38

Received:   2/17/06   2:30PM                    310 553 5583 -> JetFax   20;   Page 2
FEB-17-2005 14:26 FROM:LITTLER MENDELSON   310 553 5583        TO:12136240643        P.2/2

1   DATED: February __, 2005        QUINN EMANUEL URQUHART
                                    OLIVER & HEDGES, LLP
2

3                                   By_____
                                      Jon D. Corey
4                                     Attorneys for Plaintiff/Counter-Defendant
                                      Mattel, Inc.
5

6   DATED: February 17, 2005        LITTLER MENDELSON, P.C.

7                                   By _W/ D. Wickham
8                                     Keith A. Jacoby Douglas A. Wickham
                                      Attorneys for Defendant and Counter-
9                                     Claimant Carter Bryant

10  DATED: February __, 2005        O'MELVENY & MYERS, LLP

11

12                                  By_____
                                      Paula Ambrosini
13                                    Attorneys for Defendant
                                      MGA Entertainment Inc.
14

15

16

17

18

19

20

21

22

23

24

25                                         Joint stipulation Re
26                                         Mattel's motion to
27                                         compel production of
28                                         originals

                                    38
EXHIBIT 15   PAGE 245                       JOINT STIPULATION

1    DATED: February ___, 2005    QUINN EMANUEL URQUHART
                                  OLIVER & HEDGES, LLP
2

3                                 By:_____
4                                    Jon D. Corey
                                     Attorneys for Plaintiff/Counter-Defendant
5                                    Mattel, Inc.

6

7    DATED: February ___, 2005    LITTLER MENDELSON, P.C.

8

9                                 By:_____
                                     Keith A. Jacoby
10                                   Attorneys for Defendant and Counter-
                                     Claimant Carter Bryant
11

12   DATED: February 17ᴮ, 2005    O'MELVENY & MYERS, LLP

13

14                                By: _Paula E. Or_____
15                                   Paula Ambrosini
                                     Attorneys for Defendant
16                                   MGA Entertainment Inc.*

17
     *Signed with the caveat that because Mattel has refused to provide MGA with the
18   declarations and exhibits referenced in Mattel's portion of this Joint Stipulation,
     MGA's portion of the Joint Stipulation cannot and does not take into consideration
19   or respond to any such material. MGA signs this Joint Stipulation, therefore,
     reserving the right to respond to any material it has not yet been able to review or
20   consider, and to move to strike such material as appropriate.

21

22

23

24

25

26

27

28
                                      -38-
                                                        JOINT STIPULATION

EXHIBIT 15    PAGE 246

**Exhibit 16**

| | |
|---|---|
| **From:** | Jacoby, Keith A. [KJacoby@littler.com] |
| **Sent:** | Friday, October 06, 2006 10:37 AM |
| **To:** | Michael T Zeller; Wickham, Douglas A. |
| **Cc:** | John Quinn; Jon Corey; Torres, Diana; Cendali, Dale |
| **Subject:** | RE: Originals |

We have not torn the pages out of the book.  That is the procedure we are proposing. If it is unacceptable, we will give you dates to meet and confer.

*Keith A. Jacoby, Esq.*

*Littler Mendelson, P.C.*

*2049 Century Park East*

*Fifth Floor*

*Los Angeles, California 90067*

*ph. (310) 553-0308*

*direct (310) 772-7284*

*fax (310) 553-5583*

*kjacoby@littler.com*

-----Original Message-----
**From:** Michael T Zeller [mailto:michaelzeller@quinnemanuel.com]
**Sent:** Friday, October 06, 2006 10:34 AM
**To:** Jacoby, Keith A.; Wickham, Douglas A.
**Cc:** John Quinn; Jon Corey; Torres, Diana; Cendali, Dale
**Subject:** RE: Originals

John has been traveling and will respond separately later today to your email on the draft stipulation.

Your proposal on the originals is neither workable nor what we're entitled to.  Bratz-related documents in a spiral notebook make the other pages discoverable since those surrounding pages may have dates, impressions and other information on them that could tend to show when the Bratz-related documents were created.  I presume neither you nor Bryant have in fact torn pages out of the spiral notebook containing Bratz documents, since that clearly would constitute spoliation of evidence, and in no way would we or have we agreed to such a procedure.

Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

EXHIBIT 16 PAGE 247

1/19/2007

Message

Direct: (213) 443-3180
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  michaelzeller@quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Jacoby, Keith A. [mailto:KJacoby@littler.com]
**Sent:** Friday, October 06, 2006 10:26 AM
**To:** Michael T Zeller; Wickham, Douglas A.
**Cc:** John Quinn; Jon Corey; Torres, Diana; Cendali, Dale
**Subject:** RE: Originals

I do have a proposal.  The primary issue is that most of the remaining originals reside in a spiral notebook. We will agree to make those documents available for inspection as follows: We will show you the cover of the notebook so you can see where the documents came from. We will then turn out each page from the notebook that was produced so you may inspect-copy it.  The remaining pages of the notebook (the other side of the spiral binder) will remain in a manila folder, and those pages may not be inspected.

If that is acceptable, we can arrange a date for the inspection.

Neither you nor John responded to my email on Tuesday in which I reiterated Bryant's position on the Mattel stip. Do you intend to move forward on your motion or are we going to try to resolve the three remaining issues?

*Keith A. Jacoby, Esq.*

*Littler Mendelson, P.C.*

*2049 Century Park East*

*Fifth Floor*

*Los Angeles, California 90067*

*ph. (310) 553-0308*

*direct (310) 772-7284*

*fax (310) 553-5583*

*kjacoby@littler.com*

1/19/2007

EXHIBIT 16 PAGE

Message                                                                    Page 3 of 4

-----Original Message-----
**From:** Michael T Zeller [mailto:michaelzeller@quinnemanuel.com]
**Sent:** Friday, October 06, 2006 10:05 AM
**To:** Jacoby, Keith A.; Wickham, Douglas A.
**Cc:** John Quinn; Jon Corey; Torres, Diana; Cendali, Dale
**Subject:** Originals

Keith, as you know, at the June 20 meet and confer session before Judge Block, and in order to
resolve a Mattel motion, all parties stipulated on the record that they would produce originals for
inspection and photographing within 15 days of a request by another party. We have been asking
now for months for Bryant to so produce specified originals. We nevertheless still have not been
provided with all of the originals we have long been asking Bryant for. At least two letters we sent
you on the subject were ignored. Then, pursuant to Judge Block's procedures, I emailed you asking
for proposed dates when you and MGA's counsel were available to meet and confer in Judge
Block's chambers about these unproduced originals. In response, you did not provide any proposed
dates, but instead said you'd be making a "proposal." To date, however, we have received neither
defendants' counsel's availability nor any such proposal.

Please provide me by the end of the day defendants' counsel's availability for a meet and confer
session on the originals in Judge Block's chambers. If I don't receive it, we will contact his
chambers and obtain a date, which is also in accordance with Judge Block's procedures in these
circumstances where our requests for available dates have gone unheeded.


Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3180
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: michaelzeller@quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential
use of the recipient(s) named above. This message may be an attorney-client communication
and/or work product and as such is privileged and confidential. If the reader of this message is not
the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby
notified that you have received this document in error and that any review, dissemination,
distribution, or copying of this message is strictly prohibited. If you have received this
communication in error, please notify us immediately by e-mail, and delete the original message.



----

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal
tax advice contained in this document (including any attachments) is not intended or written to be
used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue
Code or (ii) promoting, marketing or recommending to another party any transaction or matter
addressed herein.

This email may contain confidential and privileged material for the sole use of the intended
recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are
not the intended recipient (or authorized to receive for the recipient), please contact the sender by
reply email and delete all copies of this message.

EXHIBIT __16__ PAGE __249__

To reply to our email administrator directly, send an email to postmaster@littler.com

Littler Mendelson, P.C.
http://www.littler.com

----

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this document (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

To reply to our email administrator directly, send an email to postmaster@littler.com

Littler Mendelson, P.C.
http://www.littler.com

EXHIBIT 16   PAGE 250

**Exhibit 17**

| | |
|---|---|
| **From:** | Jacoby, Keith A. [KJacoby@littler.com] |
| **Sent:** | Wednesday, October 11, 2006 1:50 PM |
| **To:** | John Quinn; Michael T Zeller |
| **Cc:** | Cendali, Dale; 'Torres, Diana'; Wickham, Douglas A. |
| **Subject:** | Mattel v. Bryant - Handling of originals |

Regarding the handling of the originals, I am reviewing the notebooks again and giving more thought on how they can be handled in an inspection, and I would ask that you give a little more thought to our position on the production of the pictures you have been taking of these originals. In my view, there is no basis for Mattel to create quasi-evidence and potential exhibits by taking pictures of our originals, and at the same time refuse to give us copies because it is allegedly work product. All due respect, that is a ridiculous position. Does Mattel intend to waive this "privilege" later on and use the documents at trial, or as exhibits at some later date? Will witnesses be allowed to see them prior to their depositions? I understand MGA has done one inspection, and I think we should reach a three way agreement on this point .From my perspective, the documents should be exchanged.

*Keith A. Jacoby, Esq.*

*Littler Mendelson, P.C.*

*2049 Century Park East*

*Fifth Floor*

*Los Angeles, California 90067*

*ph. (310) 553-0308*

*direct (310) 772-7284*

*fax (310) 553-5583*

*kjacoby@littler.com*

----

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this document (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended

EXHIBIT __17__ PAGE 251

recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

To reply to our email administrator directly, send an email to postmaster@littler.com

Littler Mendelson, P.C.
http://www.littler.com

EXHIBIT _17_ PAGE _252_

**Exhibit  18**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

December 21, 2006

<u>**VIA FACSIMILE AND U.S. MAIL**</u>

Douglas Wickham, Esq.
Keith A. Jacoby, Esq.
Littler Mendelson, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California 90067

Re:   <u>Mattel v. Bryant</u>

Dear Counsel:

I write to follow up on Judge Infante's direction at the recent scheduling hearing to determine when you are available to meet and confer regarding (a) Mattel's Motion to Compel Bryant to Produce Documents; (b) Mattel's Motion to Compel Bryant to Produce Originals for Inspection; and (c) Bryant's Motion to Overrule Objections Asserted at the Kaye and Driskill Depositions. As I understand the Judge's direction, the parties are to meet and confer by December 30, 2006. If you have any questions regarding the foregoing, please do not hesitate to call.

Best regards,

Jon Corey

JC:jcl
07209/2022780.1

EXHIBIT 18    PAGE 253

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336



12/21/2006 15:50 FAX  2136240(       QEUOH-LAO-2                              ☒001

```
                        **********************
                        ***   TX REPORT   ***
                        **********************

        TRANSMISSION OK

        TX/RX NO               1455
        RECIPIENT ADDRESS      9414#07209#13105535583#
        DESTINATION ID
        ST. TIME               12/21 15:49
        TIME USE               00'37
        PAGES SENT             2
        RESULT                 OK
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   December 21, 2006

**NUMBER OF PAGES, INCLUDING COVER:**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| **Keith A. Jacoby, Esq.**<br>Littler Mendelson | (310) 772-7284 | (310) 553-5583 |
| **Douglas Wickham, Esq.**<br>Littler Mendelson | 310.553.0308 | 310.553.5583 |

**FROM:**   Jon Corey

**RE:**   *Mattel, Inc. v. MGA Entertainment, Inc.*

**MESSAGE:**

EXHIBIT 18    PAGE 254

# Group Send Report

Page       : 001
Date & Time: 12-21-2006   03:19pm
Line 1     : 2136240643
Line 2     :
Machine ID : QUINN EMANUEL

Job number          :   689

Date                :   12-21   03:16pm

Number of pages     :   002

Start time          :   12-21   03:16pm

End time            :   12-21   03:19pm

Successful nbrs.

    Fax numbers

        ☎*9414#07209#12134306407#
        ☎13105535583#

Unsuccessful nbrs.                                                           Pages sent

EXHIBIT 18 PAGE 255

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

**DATE:** December 21, 2006

**NUMBER OF PAGES, INCLUDING COVER:**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| *Keith A. Jacoby, Esq.* Littler Mendelson | (310) 772-7284 | (310) 553-5583 |
| *Douglas Wickham, Esq.* Littler Mendelson | 310.553.0308 | 310.553.5583 |

**FROM:** Jon Corey

**RE:** *Mattel, Inc. v. MGA Entertainment, Inc.*

**MESSAGE:**



FAXED
DEC 21 2006

EXHIBIT 18    PAGE 256

07209/2022895.1

| CLIENT # | 7209 | ROUTE/ RETURN TO: | Johanna Lopez-10th | ☐ CONFIRM FAX ☐ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED? ☐ No ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

**Exhibit 19**

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED - EASTERN DIVISION
CLERK, U.S. DISTRICT COURT

AUG 1 0 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT,<br><br>           Plaintiff,<br><br>v.<br><br>MATTEL, INC.,<br><br>           Defendant,<br><br>and related actions. | CASE NO.  CV 04-9049 SGL (RNBx)<br><br>(Consolidated with cases CV-04-9059 and CV-05-2727)<br><br>ORDER DENYING MOTION FOR APPOINTMENT OF EXPERT WITNESSES |

Presently before the Court is Mattel, Inc.'s ("Mattel") motion for the appointment of expert witnesses pursuant to Federal Rule of Evidence 706, Carter Bryant and MGA Entertainment, Inc.'s ("MGA") opposition and response thereto, and Mattel's reply.  For the reasons set forth below, the Court **DENIES** the motion for the appointment of expert witnesses.

Federal Rule of Evidence 706(a) provides

> The court may . . . on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations.  The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witness of its own selection.  An expert witness shall not be appointed by the court unless the witness consents to act.

DOCKETED ON CM

AUG 1 1 2006

BY                    044

(73)

EXHIBIT 19   PAGE 257

> A witness so appointed shall be informed of the witness'
> duties by the court in writing, a copy of which shall be filed
> with the clerk, or at a conference in which the parties shall
> have opportunity to participate.

The appointment of an expert by a federal court is a rare occurrence. Much of this stems from a concept "[d]eeply ingrained" in the common law "that it is the responsibility of the parties to produce the evidence while the court looks on to assure that the rules are followed." 4 JOSEPH M. MCLAUGHLIN, WEINSTEIN'S FEDERAL EVIDENCE § 706.02[1], at 706-6 (2nd ed. 2006). The reluctance of courts to intrude into the evidence-gathering function normally assigned to counsel is borne out of "the fear of ex parte communications between the court and its expert," as well as the unseemliness of "[c]ollecting a share of the expense [for the work performed by the court appointed expert] from a party who has been damaged by the expert's report." Id. at 706-6, 706-7. As a result of these institutional concerns, "experts are usually appointed only in exceptional cases that present unwieldy, complex, or technical issues" or where "there is a need for an impartial, independent assessment of a disputed issue." Id. § 706.02[3], at 706-8 706-9.

Here, Mattel seeks for the court to appoint experts in the fields of questioned document examination, ink chemistry analysis, and paper chemistry analysis in order to "analyze and date (1) the originals of 'BRATZ' design drawings, (2) the faxed-version of the BRATZ-related contract between . . . Carter Bryant and MGA Entertainment, Inc., (3) MGA's internal documents relating to work performed by Anna Rhee on Bryant-related projects in the year 2000, and (4) a facsimile of BRATZ drawings bearing a fax header date of April 10, 2000," as well as "(5) any other documents that cannot be sampled or tested without destroying the sample tested or analyzed." (Mattel's Mot. Appt. Expert, Preface at 2). The reason proffered for such an appointment is two-fold: First, a generalized concern that, because the documents sought to be examined are "highly relevant" to the litigation, having a neutral expert perform the testing on the same may obviate a battle of the experts that would make

2

EXHIBIT 19   PAGE 258

1    the jury's function of sorting out the truth much more arduous; and second, concerns,

2    deduced during discovery, about the possible spoliation of key documents in the case

3    by MGA/Bryant and their counsel.

4    A.    **AVERTING A BATTLE OF THE EXPERTS**

5        Mattel's argument that the Court should appoint an expert because otherwise

6    each side will perform "separate, partisan destructive analyses of separate samples of

7    the documents" with "wide divergence" of opinion "virtually assured" is not well-

8    founded. (Mattel's Mot. Appt. Expert at 18, 20). Explicit in Mattel's argument is that

9    this feared divergence in each side's retained expert's opinions has yet to materialize.

10    This is not surprising as it appears that discovery in this case is in its nascent stage,

11    owed largely to the fact that the Court had earlier stayed the case while Mattel

12    appealed the denial of its motion to remand the case to state court. Mattel's argument

13    instead is that the Court should appoint an expert now to avoid the <u>possibility</u> that

14    there <u>may</u> be such wide divergence in each side's privately retained expert in the

15    <u>future</u>. Needless to say from the jabs each party took at the credibility and even

16    trustworthiness of the other side's retained expert during the oral argument on this

17    motion (one going so far as to label the competing ink chemistry experts as being the

18    modern day equivalent of one's Hatfield to the other's McCoy), such a possibility may

19    be more easier to imagine occurring here than in ordinary cases. Nevertheless, such

20    divergence, even if likely, is still that – a possibility, not an inevitability.

21        In those cases where an expert has been appointed by a court on account of

22    the excessive partisanship in the expert opinions retained by counsel, the rationale for

23    the appointment was based on the fact that the feared wide divergence in opinion had

24    already materialized. <u>See Students of California Sch. for the Blind v. Honig</u>, 736 F.2d

25    538, 548 (9th Cir. 1984)("the judge could not decide the merits of the students' seismic

26    safety claims on the basis of evidence presented at trial, so he reopened the case and

27    appointed a neutral expert to evaluate the adequacy of seismic testing at the Fremont

28    site"), <u>vacated on other grounds</u>, 471 U.S. 148 (1985); <u>Eastern Air Lines, Inc. v.</u>

EXHIBIT 19  PAGE 259