THIS PAGE IS TO BE LEFT INTENTIONALLY BLANK

PAGE 5

THIS PAGE IS TO BE LEFT INTENTIONALLY BLANK

PAGE 6

**Exhibit 1**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT

 2            CENTRAL DISTRICT OF CALIFORNIA

 3                  EASTERN DIVISION          Certified Copy

 4

 5      --------------------------------

 6    MATTEL, INC., a Delaware          )

 7    Corporation,                      )

 8                   Plaintiff,         )

 9           vs.                        )  No. CV 04-9059

10    CARTER BRYANT, an individual;     )  NM (RNBx)

11    and DOES 1 through 10,            )  VOLUME II

12    Inclusive,                        )

13                   Defendants.        )

14      ---------------------------- )

15    (COMPLETE CAPTION ON NEXT PAGE.)

16

17       CONFIDENTIAL - ATTORNEYS' EYES ONLY

18

19       Continued Videotaped 30(b)(6) Deposition

20       of FRED T. KAWASHIMA, taken at 400 South

21       Hope Street, Los Angeles, California,

22       commencing at 9:57 A.M., Tuesday,

23       June 19, 2007, before Wendy S. Schreiber,

24       CSR No. 3558, RPR, CLR.

25    PAGES 281 - 517
```

281

EXHIBIT _1_, PAGE _7_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      Q.   Well, I think you had testified earlier that

2   in '98 the policy was 30 days instead of 90 days.

3   So from the time that the policy became 90 days are

4   you aware of any exceptions to that policy?

5          MR. COREY:  And I also object to the                01:29PM

6   extent -- and instruct the witness not to answer to

7   the extent that it may relate to security measures

8   that Mattel has taken.

9   BY MR. JENAL

10     Q.   Go ahead.                                          01:30PM

11     A.   I can't answer that.

12     Q.   You can't answer that --

13         MR. COREY:  What was the question?  What was

14  the question?

15  BY MR. JENAL:                                              01:30PM

16     Q.   The question was simply since the policy for

17  auto-deletion after 90 days became the policy, were

18  you aware of any exceptions to that policy and you

19  say you can't answer that.  Is that you can't answer

20  it because you don't know it or is it relying on      01:30PM

21  some instruction from counsel?  Let's start with a

22  simple yes-or-no question.

23         Do you know whether there are any

24  exceptions?

25     A.   There are -- there are exceptions.             01:30PM

376

EXHIBIT __1__, PAGE __8__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      Q.   And in what instances are there exceptions

2   when are exceptions made, let me put it that way?

3          MR. COREY:  I'm going to object and instruct

4   the witness not to answer to the extent it discloses

5   security measures that Mattel has taken.          01:31PM

6   BY MR. JENAL

7      Q.   Can you answer the question?

8      A.   No.

9      Q.   And that's no relying on the instruction of

10  your counsel; is that correct?                    01:31PM

11     A.   Yes.

12     Q.   You know the answer -- you know the answer

13  as to when exceptions are created; is that right?

14     A.   Yes.

15     Q.   So you could testify as to when exceptions  01:31PM

16  are made to the 90-day E-mail auto-deletion policy

17  but you're not going to relying on the instruction

18  of your counsel; is that correct?

19     A.   It's my understanding -- well, yes.

20         MR. JENAL:  I don't know what the disclosure 01:32PM

21  of security measures at Mattel exception for

22  instructing a witness not to answer comes from.

23  What's the rule that you're relying on for that,

24  Counsel?

25         MR. COREY:  Well, it's Rule 26 and I can    01:32PM

                                                       377

EXHIBIT ___1___, PAGE __9__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    suspend the deposition and move for a protective
 2    order which I'm more than willing to do.  I don't
 3    think that's in anyone's interest and so the witness
 4    is here to testify about the things that --
 5         MR. JENAL:  I'm just trying to understand      01:32PM
 6    what your basis is for instructing the witness not
 7    to answer.  That's all I'm trying to know.
 8         MR. COREY:  And if you think that that's --
 9    if you think there's an issue with that, then I can
10    suspend the deposition and move for a protective     01:32PM
11    order.  You have, and I provided to you yesterday
12    evening, a proposed form of stipulation which is
13    along the lines of the letter that you sent me
14    yesterday and if you'd like, we can discuss that now
15    so we can take care of that because I'm more than    01:32PM
16    willing to have the witness testify once we get the
17    agreement of the parties but I would note Mr. Bryant
18    does not have counsel here so I don't know that we
19    can do that today.  But the choice I think is yours,
20    Counsel.  The witness -- the witness is prepared to  01:33PM
21    testify with the exception -- the witness is
22    prepared to testify and here to testify about the
23    topic on which he's been designated except for this
24    narrow exception that we need to get resolved.
25         MR. JENAL:  Just so the record is clear, in     01:33PM
                                                              378
```

EXHIBIT __1__, PAGE _10_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1  fact, the draft stipulation that you sent to me was

2  E-mailed to me shortly after midnight this morning,

3  not yesterday evening, and you're right, counsel for

4  Mr. Bryant is not present so we can't address that

5  on this kind of a time line regardless.  So we'll          01:33PM

6  continue with the deposition.  We'll just flag the

7  places where you believe that you're entitled to

8  instruct the witness not to answer and we'll take

9  that up at another time.

10       MR. COREY:  I mean, if that's going to be an  01:33PM

11  issue, then we can stop the deposition now and I can

12  move for a protective order.

13       MR. JENAL:  I have plenty of questions I can

14  ask him and what I'd like to find out as we go along

15  is what are the contours of what you think is          01:34PM

16  protected here.  I suspect that in the course of

17  those questions we'll find that out.

18       Q.  Do you know whether as a result of the April

19  18th, 2005 E-mail that you testified was sent by

20  Mattel's general counsel to all Mattel employees       01:34PM

21  worldwide if there was ever any alteration in the

22  90-day deletion of E-mail policy that's in Mailbox

23  Manager?

24       MR. COREY:  I think one of the questions

25  that you had asked before was what the proper          01:34PM

379

EXHIBIT ___1___, PAGE __11__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    terminology was for that particular functionality

2    and I think the witness has provided that to you and

3    so I think if you use that, that would be

4    appropriate.

5    BY MR. JENAL:                                          01:34PM

6        Q.    Do you understand my question?

7        A.    That was a long question.  Can you ask that

8    again, please?

9        Q.    I sure can.  You recall testifying that on

10   April 18th, 2005 you got an E-mail along with          01:34PM

11   everyone else at Mattel worldwide from the general

12   counsel at Mattel, Mr. Normile, correct?

13       A.    Yes.

14       Q.    My question to you was:  Do you know whether

15   subsequent to that E-mail whether the 90-day policy    01:35PM

16   by which E-mails are automatically deleted based on

17   the functionality in Mailbox Manager, if that was

18   ever suspended?

19           MR. COREY:  Objection:  vague and ambiguous.

20           THE WITNESS:  If it was ever suspended?        01:35PM

21   BY MR. JENAL:

22       Q.    Correct.

23       A.    No.

24       Q.    Was it ever changed in any way in response

25   to Mr. Normile's E-mail?                               01:35PM

                                                            380

EXHIBIT ___1___, PAGE _12_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1      Q.   Do you know whether such exceptions were
 2  ever created at Mattel under Exchange 5.5?
 3      A.   Through inferences I overheard that some
 4  were created.
 5      Q.   Do you know for whom those exceptions were    01:40PM
 6  created?
 7      A.   No, I don't recall.
 8      Q.   Were they created for individuals or were
 9  they created for groups of people?
10          MR. COREY:  Objection:  speculation.           01:40PM
11          THE WITNESS:  I don't know.
12  BY MR. JENAL
13      Q.   Who would know that?
14      A.   Karen Sagawa.
15      Q.   Anyone else?                                  01:40PM
16      A.   I can't recall anyone else.
17      Q.   So no one presently at Mattel would have
18  that knowledge?
19      A.   Not that I'm aware of.
20      Q.   Would there be any historical records that    01:40PM
21  would indicate for whom such exceptions had been
22  created?
23      A.   I'm not aware of those either.
24      Q.   When an exception is created today, is it
25  documented somehow?                                    01:40PM
                                                               384
```

EXHIBIT ___1___, PAGE __13__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1          MR. COREY:  Objection:  assumes facts,

2     mischaracterizes the witness' testimony.

3          THE WITNESS:  I'm not sure.

4     BY MR. JENAL

5        Q.   Who would know that?                    01:40PM

6        A.   Possibly Laura Martel.

7        Q.   Anyone else?

8        A.   Not that I'm aware of.

9        Q.   Is it your understanding that currently when

10    exceptions are made those are made with regards to   01:41PM

11    terminated employees?

12          MR. COREY:  Objection:  mischaracterizes the

13    witness' testimony and assumes facts.

14          THE WITNESS:  Could you ask the question

15    again?                                          01:41PM

16    BY MR. JENAL

17       Q.   Is it your understanding that currently when

18    exceptions to the auto-delete policy are made those

19    are only made as to terminated employees?

20          MR. COREY:  Same objections.              01:41PM

21          THE WITNESS:  I'm not aware of exceptions

22    being made with respect to terminated employees.

23    BY MR. JENAL

24       Q.   Your understanding is when the exceptions

25    are made it has to do with existing employees?     01:42PM

385

EXHIBIT ___1___, PAGE _14_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      A.    I'm not -- I'm not aware of exceptions being

2    made to that either.

3      Q.    Well, I thought you had testified that

4    exceptions indeed were made to the auto-deletion

5    policy from time to time?                          01:42PM

6            MR. COREY:  Objection:  mischaracterizes the

7    witness' testimony and assumes facts.

8            THE WITNESS:  I did state that.

9    BY MR. JENAL

10     Q.    Okay.  So I'm trying to ask that -- you said 01:42PM

11   it didn't apply to terminated employees.  I take it

12   then that it applies or is applied to existing

13   employees, correct?

14           MR. COREY:  Objection:  assumes facts,

15   mischaracterizes the witness' testimony and you can  01:43PM

16   answer that question "yes" or "no," if you know.

17           THE WITNESS:  Ask the question again,

18   please.

19   BY MR. JENAL

20     Q.    I can only think of two categories of folks 01:43PM

21   to whom this exception could apply, terminated

22   employees or existing employees.  You told me it

23   didn't apply to terminated employees, correct?

24     A.    That's correct.

25     Q.    My question then is:  Is it applied to      01:43PM

386

EXHIBIT __1__, PAGE __15__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1   existing employees when it occurs?

2          MR. COREY:  Same objections.

3          You can answer that question "yes" or "no."

4          THE WITNESS:  No.

5   BY MR. JENAL:                              01:43PM

6      Q.   What third group does it apply -- is it

7   applied to?

8          MR. COREY:  I'm going to object and instruct

9   the witness not to answer on the grounds that it may

10  disclose Mattel security measures.         01:43PM

11  BY MR. JENAL

12     Q.   Is there a third group of Mattel employees

13  besides present employees and former employees that

14  I'm not aware of?

15         MR. COREY:  The same objection; same    01:44PM

16  instruction.

17         MR. JENAL:  That cannot possibly call for

18  the disclosure of anything even confidential let

19  alone subject to a protective order.

20     Q.   Are you going to follow counsel's        01:44PM

21  instruction and not answer that question?

22     A.   Yes.

23     Q.   Does Mattel have possession of E-mail other

24  than from its own employees?

25         MR. COREY:  Objection:  vague and ambiguous. 01:44PM

                                                    387
```

EXHIBIT ____1____, PAGE _16_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1           THE WITNESS:  Can you kind of expound on

2      that question, please?  I don't understand it.

3      BY MR. JENAL

4           Q.    We've excluded so far terminated employees

5      and we've excluded active employees and as near as I   01:45PM

6      can tell that exhausts the universe of Mattel

7      employees.  So my question to you is:  Does Mattel

8      have access to E-mail of individuals who are not

9      Mattel employees?

10           MR. COREY:  I'm going to object and instruct  01:45PM

11      the witness not to answer on the same grounds as

12      before.

13      BY MR. JENAL

14           Q.    You're going to follow that instruction?

15           A.    Yes.                                      01:45PM

16           Q.    If I recall your testimony correctly, under

17      Exchange Server 2003 I can have more than one policy

18      and apply that to -- the different policies can have

19      different auto-deletion periods, correct?

20           MR. COREY:  Objection:  vague and ambiguous,  01:45PM

21      mischaracterizes the witness' testimony.

22      BY MR. JENAL

23           Q.    You said that 5.5 allows the functionality

24      in Mailbox Manager to have exceptions to the general

25      policy, correct?                                    01:46PM

                                                            388

EXHIBIT __1__, PAGE 17

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1      A.   Yes.

 2      Q.   Did 5.0 have that same approach; that you

 3  could have exceptions to the general policy?

 4      A.   Based on my recollection, I believe so.

 5      Q.   But in 2003 I think it was your testimony    01:46PM

 6  that Mailbox Manager doesn't allow for exceptions in

 7  the same way that 5.0 and 5.5 had allowed exceptions

 8  to the policy, correct?

 9      A.   That's correct.

10      Q.   But what you could do is have a global       01:46PM

11  policy in one or more local policies; is that

12  correct, under 2003?

13           MR. COREY:  Objection:  mischaracterizes the

14  testimony.

15           THE WITNESS:  That's not how -- that's not   01:46PM

16  correct.

17  BY MR. JENAL

18      Q.   Correct me, please.  Explain how it works.

19           MR. COREY:  Objection:  scope.

20  BY MR. JENAL:                                         01:47PM

21      Q.   Go ahead.

22      A.   There are multiple policies.  They're at the

23  same level.

24      Q.   Okay.  So I can have multiple policies and

25  some -- one version -- or one policy applies to some  01:47PM
                                                              389
```

EXHIBIT _1_, PAGE _18_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      Q.   Are there presently multiple or more than

2   one mail -- E-mail retention policy in effect at

3   Mattel?

4      A.   You mean, globally?

5      Q.   No -- well, you said -- let's back up.        02:04PM

6           To the question that was pending before the

7   break you answered that, yes, you were aware that

8   there was an instance where there was multiple

9   E-mail retention policies implemented at Mattel on a

10   mailbox server?                                       02:04PM

11          MR. COREY:   That mischaracterizes the

12   witness' testimony.

13          THE WITNESS:   I thought we were talking

14   about El Segundo servers?

15   BY MR. JENAL:                                         02:04PM

16      Q.   Correct.

17      A.   Only.

18      Q.   That's what I'm talking about.

19      A.   Right.

20      Q.   And you said yes.                             02:04PM

21          MR. COREY:   What's the question?

22   BY MR. JENAL

23      Q.   The question had been:   Do you know whether

24   it's ever been done at Mattel El Segundo to create

25   multiple retention policies for mailbox servers and  02:05PM

                                                              398

EXHIBIT ___1___, PAGE ___19___

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1
 2
 3
 4
 5                        REDACTED                        02:05PM
 6
 7
 8
 9
10                                                        02:05PM
11
12
13
14
15                                                        02:05PM
16
17
18                        REDACTED
19
20                                                        02:05PM
21
22
23
24
25                                                        :05PM
                                                           399
```

EXHIBIT _____1_____, PAGE 20

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1

2

3

4

5                                                              02:06PM

6

7

8                              REDACTED

9

10                                                             02:06PM

11

12

13

14

15                                                             02:06PM

16

17

18

19

20                                                             02:07PM

21

22                        REDACTED

23

24

25                                                             02:07PM

400

EXHIBIT _____/____, PAGE _____2/____

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      A.   You asked multiple questions.

2      Q.   I asked two questions recently, yes.

3      A.   Yes.

4      Q.   Do you know the answer to both of those

5  questions?                                        02:07PM

6      A.   The first -- repeat the first one, please,

7  of the two.

8      Q.   The first one was:  Do you know when that

9  second E-mail retention policy was implemented?

10          And then the second question was whether you 02:07PM

11 knew whether that was in response to Mr. Normile's

12 E-mail.  You know the answer to those questions,

13 correct?

14     A.   I -- approximately -- not definitively in

15 terms of, you know, like dates and everything like   02:08PM

16 that.

17     Q.   Who would have the definitive answer as to

18 dates and things like that?

19     A.   I'm not sure at this point in time.

20     Q.   Who would have been the person to have      02:08PM

21 implemented that policy?  This would be the same

22 Mr. Ouk that we were talking about before?

23          MR. COREY:  Objection:  vague and ambiguous.

24 BY MR. JENAL

25     Q.   I think you testified --                    02:08PM

                                                       401

EXHIBIT __1__, PAGE 22

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    A.   I don't recall of any others.

2    Q.   You're not aware of any others?

3    A.   Yes, I'm not aware -- I don't recall any

4    additional ones.

5    Q.   Are you aware that Mattel filed its initial   04:44PM

6    complaint against Carter Bryant in April of 2004?

7    A.   That date doesn't -- I'm not aware of that

8    date -- that specific date.

9    Q.   In 2004 was there an E-mail tape rotation

10   policy in place for Mattel's mailbox servers?       04:44PM

11   A.   Yes, there was.

12   Q.   And was that retention policy 30 days?

13   A.   Yes.

14   Q.   Does Mattel have in its possession, custody

15   or control any tapes from 2004 that contain E-mail  04:44PM

16   from 2004 or prior?

17   A.   Not to my knowledge.

18   Q.   Was there any other method employed in 2004

19   by Mattel to preserve E-mails from the Exchange

20   servers?                                            04:45PM

21        MR. COREY:  Other than what he's testified

22   to?

23        MR. JENAL:  Correct.

24        THE WITNESS:  Not that I'm aware of.

25   Q.   Leaving aside changes to Mailbox Manager      04:46PM

497

EXHIBIT ___1___, PAGE 23

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   retention policies dictated as a result of Mattel's

 2   secret investigative processes, are you aware of any

 3   changes ever made to those mailbox retention

 4   policies based on this litigation?

 5       A.   Any changes to the 90-day retention?        04:46PM

 6       Q.   Correct.

 7       A.   There was a change due to this litigation.

 8       Q.   Pardon me?

 9       A.   It was changed -- you're asking me if it was

10   changed due to this litigation?                      04:46PM

11       Q.   Yes.

12       A.   I'm not aware of any global changes that

13   were made to the 90-day Mailbox Manager policy.

14       Q.   Are you aware of any other changes besides

15   global changes to that policy?                       04:47PM

16          MR. COREY:  I'll instruct the witness not to

17   answer on the grounds that it might disclose Mattel

18   security measures.

19          MR. JENAL:  I'm not looking to get into

20   Mattel security measures.  I'm asking if this was    04:47PM

21   ever changed globally -- you said no -- in any other

22   way with regard to this litigation.

23          MR. COREY:  Same objection.

24   BY MR. JENAL

25       Q.   Are you going to follow that instruction?   04:47PM
                                                              498
```

EXHIBIT ___/___, PAGE 24

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      A.   Yes.

2      Q.   Do you know the answer to that question?

3      A.   Yes.

4      Q.   Do you know of any actions taken by Mattel

5  to locate or identify within whatever E-mail it has      04:47PM

6  preserved E-mails to or from Carter Bryant?

7          MR. COREY:   Objection beyond the scope.

8  BY MR. JENAL

9      Q.   You can answer.

10     A.   Your question was any investigations done?      04:48PM

11     Q.   No.  Do you know of any actions of any type

12  taken by Mattel to identify or locate within

13  whatever E-mail it has preserved E-mails to or from

14  Carter Bryant?

15         MR. COREY:   Objection:  scope and assumes      04:48PM

16  facts.

17         THE WITNESS:   I have no knowledge of that.

18  BY MR. JENAL

19     Q.   Who would have knowledge of that, if that

20  was done?                                               04:48PM

21     A.   My assumption would be it would emanate from

22  Legal.

23     Q.   I'm sorry?

24     A.   It would emanate from the Legal department.

25     Q.   Have you seen any requests from the Legal      04:49PM

                                                            499

EXHIBIT ___1___, PAGE 25

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    department to perform such actions?

2         A.   No.

3         Q.   You testified previously that amongst the

4    E-mail that has been preserved in those tape backups

5    since April of 2005 there has been no requests that     04:49PM

6    you're aware of to restore any of those E-mail

7    backups, correct?

8         A.   That is correct.

9         Q.   But that it's your understanding that this

10   vendor known as Evident Data has copies of -- strike    04:49PM

11   that.

12              Does Evident Data also have copies of the

13   E-mail data that has been preserved?

14        A.   As I indicated --

15              MR. COREY:  Hold on just a second.           04:50PM

16   Objection:  vague and ambiguous.  Are you asking --

17   BY MR. JENAL

18        Q.   Go ahead.  You were saying?

19              MR. COREY:  Are you asking about the tapes?

20   Because the witness has testified about a bunch of      04:50PM

21   different types.

22              MR. JENAL:  Yeah, that's true.  I'm just --

23        Q.   Does Evident Data -- you had testified that

24   some information was provided to Evident Data,

25   correct?                                                04:50PM
                                                                500
```

EXHIBIT ___/___, PAGE 26

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        I declare under penalty of perjury

2    under the laws of the State of California

3    that the foregoing is true and correct.

4        Executed on _____,

5    2007, at _____,

6    California.

7

8

9

10       _____

11           FRED T. KAWASHIMA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

513

EXHIBIT ___1___, PAGE 27

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    STATE OF CALIFORNIA    ) ss
2    COUNTY OF LOS ANGELES )
3
4         I, WENDY S. SCHREIBER, CSR No. 3558, do
5    hereby certify
6
7         That the foregoing deposition of FRED T.
8    KAWASHIMA was taken before me at the time and place
9    therein set forth, at which time the witness was
10   placed under oath and was sworn by me to tell the
11   truth, the whole truth, and nothing but the truth;
12        That the testimony of the witness and all
13   objections made by counsel at the time of the
14   examination were recorded stenographically by me,
15   and were thereafter transcribed under my direction
16   and supervision, and that the foregoing pages
17   contain a full, true and accurate record of all
18   proceedings and testimony to the best of my skill
19   and ability.
20        I further certify that I am neither
21   counsel for any party in said action, nor am I
22   related to any party to said action, nor am I in any
23   way interested in the outcome thereof.
24
25
```

                                                           514

EXHIBIT ___1___, PAGE 28

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1          IN WITNESS WHEREOF, I have subscribed my

2     name this 29th day of June, 2007.

3

4

5

6     _____

7       WENDY S. SCHREIBER, CSR No. 3558, RPR

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

515

EXHIBIT ___/___, PAGE 29

**Exhibit 2**

ORIGINAL

LODGED

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2     Michael T. Zeller (Bar No. 196417)
      Jon D. Corey (Bar No. 185066)
3   865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
4   Telephone: (213) 443-3000
    Facsimile: (213) 443-3100
5
    Attorneys for Plaintiff and Counter-Defendant
6   Mattel, Inc.

7

FILED
CLERK, U.S. DISTRICT COURT
JAN - 4 2005
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

8           UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

10

11   MATTEL, INC., a Delaware
     Corporation,
12
                        Plaintiff,
13
          v.
14
     CARTER BRYANT, an individual; and
15   DOES 1 through 10, inclusive,

16                      Defendants.

17
     CARTER BRYANT, on behalf of
18   himself, all present and former
     employees of Mattel, Inc., and the
19   general public,

20                      Counter-Claimant,

21        v.

22   MATTEL, INC., a Delaware
     Corporation,
23
24                      Counter-Defendant.

CASE NO. CV 04-9059 NM (RNBx)

STIPULATED PROTECTIVE
ORDER; AND

[PROPOSED] ORDER

[Discovery Matter]

DOCKETED ON CM
JAN - 5 2005
BY                006

25
26
27
28

SERVED ON US BY MAIL
1-6-05

07272/625581.2

EXHIBIT 2, PAGE 30

54

PROTECTIVE ORDER

## GOOD CAUSE STATEMENT

1

2

3          Plaintiff Mattel, Inc. ("Mattel"), defendant Carter Bryant, and intervenor-

4  defendant MGA Entertainment, Inc. ("MGA") are parties to the above-captioned

5  litigation (hereinafter, the "Action"). (Mattel, Carter Bryant and MGA Entertainment,

6  Inc. are each referred to herein as a "Party" and collectively are the "Parties.")

7          In this Action, Mattel has alleged, and defendants dispute, that Bryant

8  worked for and otherwise aided and assisted MGA while defendant was employed by

9  Mattel as a designer, in violation of his contractual and other legal duties to Mattel.

10          All parties believe that they will or may be required to produce or

11  disclose in this Action, and that nonparties may produce or disclose, information that

12  is trade secret, proprietary, confidential and/or is of a private or personal nature and

13  that, if disclosed in this Action without restriction on its use or further disclosure,

14  may cause disadvantage, harm, damage and loss to the disclosing Party or to the

15  disclosing nonparty.

16          In addition, the Parties are currently in a competitive relationship in the

17  toy industry, with Mattel and MGA operating as a manufacturers and marketers of

18  dolls, toys and other products and Bryant working at this time as a contractor for a

19  Mattel competitor, MGA, and further anticipate that nonparty competitor information

20  may be produced or disclosed in this Action.

21          In particular, without prejudice to any Party's right to object to or resist

22  disclosure of such categories of information on relevance or any other grounds, the

23  Parties currently anticipate that categories of such trade secret, proprietary,

24  confidential and/or private documents and other information that may be disclosed

25  in discovery by the Parties and by nonparties will or may include:

26          (1)    Personnel files and other private or confidential employment,

27  contractor or vendor information;

28

EXHIBIT __2__, PAGE 31

07272/625581.2

-2-

PROTECTIVE ORDER

1     (2)   The specific terms of agreements with, and information received

2  from, third parties that a Party is required to disclose only under conditions of

3  confidentiality;

4     (3)   Personal or private financial information, and confidential

5  financial data that is not known generally to the trade or to competitors, including

6  financial data relating to specific sales, cost and profit information for specific

7  products and product lines; and

8     (4)   Business plans and product information that are not known

9  generally to the trade or to competitors, including non-public information relating to

10  product development and design.

11

12     WHEREFORE, believing that good cause exists, the Parties HEREBY

13  STIPULATE that, subject to the Court's approval, the following procedures shall be

14  followed in this Action to facilitate the orderly and efficient discovery of relevant

15  information while minimizing the potential for unauthorized disclosure or use of

16  confidential or proprietary information:

17

18     <u>SCOPE OF THIS ORDER</u>

19

20     1.   This Protective Order shall apply to trade secret, confidential and

21  proprietary information, documents and things that are produced or disclosed in any

22  form during the course of the Action by any Party or any nonparty:

23     (a)   through discovery;

24     (b)   in any pleading, document or other writing; or

25     (c)   in testimony given at a deposition.

26  (The foregoing information, documents and things shall be referred to hereinafter

27  collectively as "Litigation Materials.")

28

EXHIBIT ___2___, PAGE 32

07272/625581.2                          -3-

PROTECTIVE ORDER

## CONFIDENTIAL AND ATTORNEYS' EYES ONLY INFORMATION

2.    Any Party or nonparty producing or disclosing Litigation Materials in this Action may designate such information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by designating it in the manner set forth in paragraph 3 below.  The designation of Litigation Materials as "CONFIDENTIAL" shall be limited to information which the disclosing Party or nonparty believes in good faith contains, constitutes or reveals confidential design, engineering or development information, confidential commercial information, non-public financial information, confidential or private information about current or former employees, contractors or vendors (including employee, contractor and vendor personnel records), or other information of a confidential, proprietary, private or personal nature.   The designation of information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be limited to trade secrets or other confidential commercial information, including without limitation non-public designs and drawings, which the disclosing Party or nonparty in good faith believes will result in competitive disadvantage or harm if disclosed to another Party to this Action without restriction upon use or further disclosure.    Information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may only be used and disclosed as provided in this Protective Order.

## MANNER OF DESIGNATION OF MATERIALS

3.    A Party or nonparty may designate Litigation Materials as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in the following manner:

(a)    Documents or Things.    "CONFIDENTIAL"    or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment may be

EXHIBIT 2, PAGE 33

PROTECTIVE ORDER

1  obtained by typing or stamping "CONFIDENTIAL" or "CONFIDENTIAL --

2  ATTORNEYS' EYES ONLY" on the particular document or thing.

3         (b)   <u>Interrogatory Answers and Responses to Requests for</u>

4  <u>Admissions</u>.  In answering any interrogatory or request for admission, or any

5  part thereof, a Party may designate its or his answer as "CONFIDENTIAL" or

6  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by affixing thereto the

7  legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

8  ONLY."  Such "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'

9  EYES ONLY" answers shall be made on separate pages from any other

10  answers or portions thereof that are not designated as "CONFIDENTIAL" or

11  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

12         (c)   <u>Deposition Testimony</u>.  Any Party or nonparty giving

13  deposition testimony in this Action may obtain "CONFIDENTIAL" or

14  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment therefor by

15  designating, during the course of that testimony, for which "CONFIDENTIAL"

16  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment is desired,

17  the testimony that is claimed to be "CONFIDENTIAL" or "CONFIDENTIAL

18  -- ATTORNEYS' EYES ONLY,"  or alternatively by designating the entire

19  testimony to be "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'

20  EYES ONLY," subject to a good faith obligation to identify any non-

21  confidential portions of the testimony (and/or any lesser "CONFIDENTIAL"

22  portions in the event that the entire testimony is designated "CONFIDENTIAL

23  -- ATTORNEYS' EYES ONLY") within fourteen (14) calendar days after

24  receipt of the transcript of the testimony.  The reporter shall separately

25  transcribe and bind the testimony so designated as "CONFIDENTIAL" and

26  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" and shall mark the face

27  of the separate bound transcript containing such testimony with the term

28  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

EXHIBIT __2__ , PAGE __34__

PROTECTIVE ORDER

A Party or nonparty also may make the above-referenced designation of confidentiality in writing and within fourteen (14) calendar days of the receipt by said Party or nonparty of the transcript of said testimony. In that event, said portion of the transcript will be treated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" under the provisions of this Protective Order, except that it will not be separately bound. If, during the course of deposition testimony, any Party or nonparty reasonably believes that the answer to a question will result in the disclosure of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information, all persons other than those persons entitled to receive such information pursuant to paragraphs 5 and 6 hereof shall be excluded from the room in which the deposition testimony is given.   Unless previously designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," all transcripts of deposition testimony and any related exhibits, and all information adduced in deposition, shall, in their entirety, be treated as "CONFIDENTIAL" for a period of fourteen (14) calendar days after receipt of the transcript by counsel for the designating Party or nonparty. The Party or nonparty designating the testimony or information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may, within that fourteen (14) calendar day period described above, specifically designate information contained in the transcript(s) and/or exhibit(s) as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," whether or not previously designated as such, by notifying all Parties in writing of the portions of the transcript or exhibit which contains such information. Each Party shall attach a copy of such written statement to the face page of the transcript or exhibit and to each copy in its or his possession, custody or control. Thereafter, these portions of the transcript or exhibits designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be treated in

EXHIBIT __2__, PAGE __35__

-6-

PROTECTIVE ORDER

accordance with the terms of this Protective Order. In addition, the provisions of Paragraph 3(e) for later designating transcripts or exhibits shall apply after the expiration of the fourteen (14) calendar day period described in this Paragraph 3(c).

(d)    Typing or stamping the legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" upon the first page of a collection of Litigation Materials which are bound together shall have the effect of designating such collection in its entirety as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY." In the case of disks, tapes, CD-ROMs, DVDs and other tangible storage media or devices, labeling, stamping or marking the outside of such disk, tape, CD-ROM, DVD or other medium or device with the legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall have the effect of designating the entire contents of such disk, tape, CD-ROM, DVD or other medium or device, and all data stored thereupon, as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," as the case may be.

(e)    Except as otherwise provided in Paragraph 3(c) of this Protective Order, the receiving Party shall not reveal any information produced for a period of seven (7) calendar days following receipt. Failure to designate a document, thing or other information as CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in accordance with this Protective Order shall not preclude any Party or nonparty desiring to so designate the document, thing or information from so designating thereafter; provided that the Party or nonparty proceeds promptly after discovery of any omission of marking, in good faith marks the document, thing or other information and requests, in writing, that each receiving Party so mark and treat the document, thing or other information in accordance with this Protective Order. Thereafter, the document, thing or other information shall

EXHIBIT __2__, PAGE __36__

-7-

PROTECTIVE ORDER

be fully subject to this Protective Order. No Party shall incur liability for any disclosures made prior to notice of such designation, except to the extent that any such disclosures occurred prior to the seven (7) day period described above or prior to such other time periods as are provided by this Protective Order, including without limitation such time periods as are provided in Paragraph 3(c) above.

## RESTRICTIONS ON DISCLOSURE OF DESIGNATED MATERIALS

4.   Any Litigation Materials produced or disclosed in this Action, whether or not designated "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," may only be used by the receiving Party of such information for purposes of litigation and not for any other purpose, including without limitation for any business or trade purpose. As used herein, the term "litigation" shall mean preparation for, participation in and prosecution and defense of any suit, motion, trial, appeal, hearing, review or other judicial proceeding or in connection with any mediation or other alternative dispute resolution procedure that this or any other court may order or that the Parties may agree to.

5.   Subject to Paragraph 7 herein, and unless as otherwise ordered by the Court, Litigation Materials designated as "CONFIDENTIAL" shall not be disclosed to any person other than:

(a)   the attorneys for the Parties and their partners, shareholders, associates, document clerks and paralegals who are necessary to assist such attorneys;

(b)   secretaries, stenographers and other office or clerical personnel employed by said attorneys and who are necessary to assist such attorneys;

EXHIBIT ___2___, PAGE _37_

07272/625581.2                                    -8-

PROTECTIVE ORDER

(c)   a named Party or officers or employees of a named Party, to the extent deemed necessary by their respective attorneys for purposes assisting in litigation;

(d)   the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL" information;

(e)   such other persons as may be consented to by the Party or nonparty designating such information as "CONFIDENTIAL" information;

(f)   outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(g)   professional court reporters engaged to transcribe deposition testimony, professional videographers engaged to videotape deposition testimony and translators;

(h)   independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for purposes of litigation; and

(i)   non-party fact witnesses in a deposition, provided, however, that such persons may not retain such "CONFIDENTIAL" information unless otherwise authorized to receive it. If the attendance of a non-party fact witness at a deposition can only be obtained through compulsory process, the witness need not execute an Assurance of Compliance in the form attached as Exhibit A, provided that: (1) the witness acknowledges his obligation to maintain the confidentiality of "CONFIDENTIAL" information under oath; and (2) such "CONFIDENTIAL" information may only be shown to the witness during the deposition.

6.      Subject to paragraph 7 herein, and unless as otherwise ordered by the Court, Litigation Materials designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be disclosed to any person other than:

(a)     the attorneys for the Parties (but not including in-house counsel for the Parties or any attorney who is an officer, director, shareholder or employee of any Party or its corporate affiliates) and their partners, shareholders, associates, document clerks and paralegals who are assigned to and necessary to assist such attorneys. For the purposes of this subparagraph, "affiliate" shall mean any corporate parent or subsidiary of any Party, or any other entity that is under common control with any Party or corporate parent or subsidiary of any Party, or any of their successors or predecessors in interest;

(b)     secretaries, stenographers and other office or clerical personnel employed by said attorneys and who assist them with respect to litigation;

(c)     the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(d)     such other persons as may be consented to by the Party designating such information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(e)     outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(f)     independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for the purposes of litigation; and

EXHIBIT _2_, PAGE _39_

PROTECTIVE ORDER

1     (g)   professional court reporters engaged to transcribe

2    deposition testimony, professional videographers engaged to videotape

3    deposition testimony and translators.

4       7.   None of the following is bound by or obligated under this Order

5    in any respect and specifically are not bound or obligated to treat information

6    designated as "CONFIDENTIAL" or "CONFIDENTIAL — ATTORNEYS' EYES

7    ONLY" in any particular manner: The Court hearing this Action (including the Court

8    having jurisdiction of any appeal), Court personnel, court reporters working for the

9    Court, translators working for the Court, or any jury impaneled in this Action.

10      8.   Other than those identified in Paragraph 7 above, each person to

11    whom information designated as "CONFIDENTIAL" or "CONFIDENTIAL --

12    ATTORNEYS' EYES ONLY" is disclosed shall be informed of the terms of this

13    Protective Order and agree to be bound by it before disclosure to such persons of any

14    such information. The persons described in Paragraphs 5(f), 5(h), 6(e) and 6(f) shall

15    not have access to either "CONFIDENTIAL" or "CONFIDENTIAL --

16    ATTORNEYS' EYES ONLY" information, as the case may be, until they have

17    certified that they have read this Protective Order and have manifested their assent

18    to be bound thereby by signing a copy of the Assurance of Compliance attached

19    hereto as Exhibit A. Once a person has executed such an Assurance of Compliance,

20    it shall not be necessary for that person to sign a separate Assurance of Compliance

21    each time that person is subsequently given access to confidential material. Any

22    person who signed an Assurance of Compliance in connection with the Stipulation

23    for Protection of Confidential Information and Protective Order filed September 16,

24    2004 in Mattel Inc. v. Bryant, Case No. BC 314398, pending in Los Angeles County

25    Superior Court, need not re-sign the Assurance of Compliance attached hereto but

26    shall, by virtue of his or her prior signature, be deemed to have signed the attached

27    Assurance of Compliance.

28

-11-

EXHIBIT  2 , PAGE 40

PROTECTIVE ORDER

9. The failure of any Party to object to the designation of information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be deemed an admission that such information qualifies for such designation.

10. If any Party wishes to have any information, document or testimony marked "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by another Party or nonparty reclassified as non-confidential, or from "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" to "CONFIDENTIAL," the Parties and/or relevant nonparty or nonparties will confer and try to reach agreement. If the Parties and/or relevant nonparty or nonparties cannot reach agreement, either Party and/or the relevant nonparty or nonparties may apply to the Court to resolve the matter in accordance with the Local Rules. Unless and until this Court enters an Order changing the designation of the information, it shall be afforded the treatment prescribed in this Protective Order for its designation.

11. Nothing contained in this Protective Order shall restrict or prevent any Party or nonparty from disclosing or otherwise using its or his own Litigation Materials which that Party or nonparty produces or discloses in this action.

12. The inadvertent or unintentional disclosure by a producing Party or nonparty of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" Litigation Materials during the course of this litigation, regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a Party's or nonparty's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter. Counsel for the Parties and/or nonparties shall in any event, to the extent possible, upon discovery of inadvertent error, cooperate to restore the confidentiality of the "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material that was inadvertently or unintentionally disclosed.

13.    If a Party or nonparty through inadvertence produces or provides discovery that it, he or she believes is subject to a claim of attorney-client privilege or work product immunity, the producing Party or nonparty may give written notice to the receiving Party that the document is subject to a claim of attorney-client privilege or work product immunity and request that the document be returned to the producing Party or nonparty.  The receiving Party shall promptly return to the producing Party or nonparty the inadvertedly disclosed document and all copies of such document.  Return of the document by the receiving Party shall not constitute an admission or concession, or permit any inference, that the returned document is, in fact, properly subject to a claim of attorney-client privilege or work product immunity, nor shall it foreclose any Party from moving the Court for an Order that such document has been improperly designated or should be producible for reasons other than a waiver caused by the inadvertent production.

14.    Nothing contained in this Protective Order shall affect the right of any Party or nonparty to make any objection, claim any privilege, or otherwise contest any request for production of documents, interrogatory, request for admission, or question at a deposition or to seek further relief or protective orders from the Court in accordance with the <u>Federal Rules of Civil Procedure</u> and the <u>Local Rules</u>. Nothing in this Protective Order shall constitute an admission or waiver of any claim or defense by any Party.

## <u>FILING AND USE IN COURT OF DESIGNATED MATERIALS</u>

15.    Except when the filing under seal is otherwise authorized by statute or federal rule, the Parties shall seek the Court's prior approval for the filing under seal of pleadings and other documents containing properly designated "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information in accordance with the procedures set forth in <u>Local Rule 79-5.1</u>, as such

-13-

EXHIBIT  2 , PAGE  42

PROTECTIVE ORDER

07272/625581.2

1  Rule may be amended from time to time.  Prior to the time that a Party receiving the

2  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY"

3  information from any other Party files with the Court an application and the other

4  materials required by Local Rule 79-5.1, as such Rule may be amended from time to

5  time, to seal the producing Party's confidential information, the receiving Party shall

6  consult with the producing Party's attorney to determine whether the producing Party

7  will re-designate the previously designated confidential information so as to avoid the

8  need for the request to file such information under the seal.  Upon the default of a

9  Party to seek the Court's approval to file a document containing "CONFIDENTIAL"

10  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information under seal, any

11  Party may subsequently seek the approval of the Court to file that document under

12  seal, in accordance with the procedures set forth in Local Rule 79-5.1, as such Rule

13  may be amended from time to time.

14

15  ### THIRD-PARTY REQUEST FOR DESIGNATED MATERIALS

16

17      16.   If any Party or nonparty receives a subpoena or document request

18  from a third party which purports to require the production of materials in that Party's

19  possession which have previously been designated as "CONFIDENTIAL" or

20  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by any other Party or nonparty,

21  the Party or nonparty receiving such subpoena or document request (a) shall object

22  and refuse to produce documents absent a Court Order or the consent of the Party or

23  nonparty who designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL

24  -- ATTORNEYS' EYES ONLY", (b) immediately notify the Party or nonparty who

25  designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL --

26  ATTORNEYS' EYES ONLY" of the receipt of said subpoena or document request,

27  and (c) shall not oppose any effort by the Party or nonparty which designated the

28  material as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

EXHIBIT _2_ , PAGE _43_

-14-

PROTECTIVE ORDER

1   ONLY" to quash the subpoena or obtain a protective order limiting discovery of such

2   material.

### DISCOVERY FROM NONPARTIES

6   17.   Discovery of nonparties may involve receipt of information,

7   documents, things or testimony which include or contain "CONFIDENTIAL" or

8   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" materials or information. A

9   nonparty producing such material in this case may designate as "CONFIDENTIAL"

10  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" some or all of the material it

11  produces in the same manner provided for in this Protective Order with respect to

12  material furnished by or on behalf of the Parties. Any Party may also designate as

13  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any

14  materials or information produced by a nonparty that constitute "CONFIDENTIAL"

15  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material of the designating

16  Party under Paragraph 2 of this Protective Order, regardless of whether the producing

17  nonparty has also so designated. In addition, a nonparty may also designate as

18  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any

19  materials or information produced by a Party that constitute "CONFIDENTIAL" or

20  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material or information of such

21  nonparty under Paragraph 2 of this Protective Order, regardless of whether the

22  producing Party has also so designated. In either such an event, the designation

23  providing for the greater level of protection for the material information shall control,

24  subject to Paragraph 10 of this Protective Order. Nonparty materials designated

25  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by a

26  nonparty or Party shall be governed by the terms of this Protective Order.

27

28

EXHIBIT __2__, PAGE __44__

07272/625581.2

-15-

PROTECTIVE ORDER

## CONCLUSION OF LITIGATION

18.    Within thirty (30) days of the conclusion of this Action, including any post-trial motions or appellate proceedings relating thereto, all documents, transcripts or other things or information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," and all copies thereof, shall be returned to the attorneys for the Party or nonparty furnishing the same, or shall be destroyed by the attorneys having such documents in their possession.  In addition, all summaries or other materials containing or disclosing information contained in such documents, answers, transcripts or other things shall be destroyed; provided, however, that outside counsel for each Party may retain one complete and unredacted set of pleadings and papers filed with the Court or served on the other Parties.  Such retained copy of pleadings and papers shall be maintained in a file accessible only to outside counsel bound by this Protective Order.  This Protective Order shall continue to be binding after the conclusion of this Action.

## AMENDMENT OF THIS AGREEMENT

19.    The provisions of this Stipulation and Protective Order may be  modified at any time by stipulation of the Parties as approved by Order of the Court. In addition, a Party may at any time apply to the Court for modification of this

EXHIBIT __2__, PAGE __45__

-16-

PROTECTIVE ORDER

07272/625581.2

1  Stipulation and Protective Order pursuant to a motion brought in accordance with the

2  rules of the Court.

3

4  **IT IS SO STIPULATED.**

5

6  DATED: December 22, 2004          QUINN EMANUEL URQUHART
                                      OLIVER & HEDGES, LLP
7

8                                     By _____

9                                        Jon Corey
                                         Attorneys for Plaintiff
10                                       Mattel, Inc.

11  DATED: December ___, 2004         LITTLER MENDELSON

12

13                                    By _____

14                                       Douglas A. Wickham
                                         Attorneys for Defendant
15                                       Carter Bryant

16  DATED: December ___, 2004         O'MELVENY & MEYERS, LLP

17

18                                    By _____
                                         Diana M. Torres
19                                       Attorneys for Interventor-Defendant
                                         MGA Entertainment, Inc.

20

21  **IT IS SO ORDERED.**

22

23  DATED: ___1/4/05___

24                                    THE HONORABLE ROBERT N. BLOCK
                                      United States Magistrate Judge
25

26

27

28

                                      EXHIBIT __2__, PAGE __46__

                                      **PROTECTIVE ORDER**

1  Stipulation and Protective Order pursuant to a motion brought in accordance with the

2  rules of the Court.

3

4  **IT IS SO STIPULATED.**

5

6  DATED: December ___, 2004         QUINN EMANUEL URQUHART
                                     OLIVER & HEDGES, LLP
7

8                                    By _____
                                        Jon Corey
9                                       Attorneys for Plaintiff
                                        Mattel, Inc.
10

11  DATED: December 21, 2004          LITTLER MENDELSON

12                                    By _____
13                                       Douglas A. Wickham
                                         Attorneys for Defendant
14                                       Carter Bryant

15

16  DATED: December ___, 2004         O'MELVENY & MEYERS, LLP

17

18                                    By _____
                                         Diana M. Torres
                                         Attorneys for Intervenor-Defendant
19                                       MGA Entertainment, Inc.

20

21  **IT IS SO ORDERED.**

22

23  DATED: _____           _____
24                                   THE HONORABLE ROBERT N. BLOCK
                                     United States Magistrate Judge
25

26

27

28
                                     EXHIBIT ___2___, PAGE _47_

07272/625581.2                -17-                    PROTECTIVE ORDER

1   Stipulation and Protective Order pursuant to a motion brought in accordance with the

2   rules of the Court.

3

4        IT IS SO STIPULATED.

5

6   DATED: December ___, 2004        QUINN EMANUEL URQUHART
                                     OLIVER & HEDGES, LLP
7

8                                    By _____
                                        Jon Corey
9                                       Attorneys for Plaintiff
                                        Mattel, Inc.
10

11  DATED: December ___, 2004        LITTLER MENDELSON

12

13                                   By _____
                                        Douglas A. Wickham
14                                      Attorneys for Defendant
                                        Carter Bryant
15

16  DATED: December ___, 2004        O'MELVENY & MEYERS, LLP

17                                   By _____
                                        Diana M. Torres
18                                      Attorneys for Intervenor-Defendant
                                        MGA Entertainment, Inc.
19

20

21        IT IS SO ORDERED.

22

23  DATED: _____           _____
                                     THE HONORABLE ROBERT N. BLOCK
24                                   United States Magistrate Judge

25

26

27

28                                   EXHIBIT ___2___ , PAGE __48__

07272/625581.2                       -17-

                                     PROTECTIVE ORDER

## EXHIBIT A

## ASSURANCE OF COMPLIANCE

I, _____, under penalty of perjury under the laws of the United States of America, declare and state as follows:

I reside at _____, in the City/County of _____ and State/Country of _____.

I have read the annexed Stipulated Protective Order, ("Protective Order") dated _____ in the action entitled *Mattel, Inc. v. Carter Bryant*, Case No. CV 04-9059 NM (RNBx), which currently is pending in the United States District Court for the Central District of California; that I am fully familiar with and agree to comply with and be bound by the provisions of that Protective Order;

I will not divulge to persons other than those specifically authorized by the Protective Order, and will not copy or use any Litigation Materials designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" except solely as permitted by the Protective Order; and

I consent to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing said Protective Order, enjoining any violation or threatened violation of the Protective Order or seeking damages for the breach of said Protective Order.

_____
(Signature)

EXHIBIT __2__, PAGE __49__

07272/625581.2

PROTECTIVE ORDER

## PROOF OF SERVICE

1013A(3) CCP Revised 5/1/88

**STATE OF CALIFORNIA** }
**COUNTY OF LOS ANGELES** }

I am employed in the county of Los Angeles  State of California.  I am over the age of 18 and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90012.

On December 22, 2004, I served the foregoing document described as

**STIPULATED PROTECTIVE ORDER; AND [PROPOSED] ORDER**

on all interested parties in this action:

### SEE ATTACHED SERVICE LIST

[ ]   By placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ]   **BY MAIL**

[ ]   I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

[ ]   As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

Executed on December 22, 2004, at Los Angeles, California.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Ivana Maiorano
Print Name

_____
Signature

EXHIBIT ___2___, PAGE ___50___

Robert F. Millman, Esq.
Douglas A. Wickham, Esq.
Keith A. Jacoby, Esq.
Littler Mendelson
A Professional Corporation
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107
Phone: 310-553-0308
Fax: 310-553-5583

Diana M. Torres, Esq.
O'Melveny & Meyers
400 S. Hope Street
Los Angeles, CA 90071
Phone: 213-430-6000
Fax: 213-430-6407

Daniel J. Warren, Esq.
Sutherland, Asbill & Brennan
999 Peachtree Street NE
Atlanta, GA 30309-3996
Phone: 404-853-8698
Fax: 404-853-8806

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-2-

EXHIBIT 2, PAGE 51

**Exhibit 3**

1   DOUGLAS A. WICKHAM (S.B. #127268)
    dwickham@littler.com
2   KEITH A. JACOBY (S.B. #150233)
    kjacoby@littler.com
3   LITTLER MENDELSON
    A Professional Corporation
4   2049 Century Park East, 5th Floor
    Los Angeles, CA  90067.3107
5   Telephone:  (310) 553-0308
    Facsimile:  (310) 553-5583
6
    Attorneys for Carter Bryant
7

8                   UNITED STATES DISTRICT COURT
                   CENTRAL DISTRICT OF CALIFORNIA
9                         EASTERN DIVISION

10
    CARTER BRYANT, an individual,     Case No.  CV 04-09049 SGL (RNBx)
11                                    (consolidated with CV 04-9059 & 05-2727)

12              Plaintiff,            DISCOVERY MATTER
         v.
13                                    [To Be Heard By Discovery Master
    MATTEL, INC., a Delaware          Hon. Edward Infante (Ret.) Pursuant to
14  Corporation,                      The Court's Order of December 6, 2006

15              Defendant.            [PROPOSED] ORDER GRANTING IN
                                      PART CARTER BRYANT AND MGA
16                                    ENTERTAINMENT INC'S MOTION
                                      TO COMPEL THE PRODUCTION OF
17                                    DOCUMENTS AND 30(B)(6)
                                      DEPOSITIONS
18
                                      Date:   January 25, 2007
19                                    Time:   9:00 a.m.
                                      Place:  Telephonic
20
                                      Discovery Cut-off:  None set
21                                    Pre-trial Conference:  None Set
                                      Trial Date:  None Set
22
    CONSOLIDATED WITH                 Judge: Hon. Stephen G. Larson
23  MATTEL, INC. v. BRYANT and
    MGA ENTERTAINMENT, INC. v.        Discovery Cut-Off:   T.B.D.
24  MATTEL, INC.

25

26

27

28
    07209/2046388.17209/2045559.1                    Order

EXHIBIT 3   PAGE 52

1     On January 25, 2006, Discovery Master Edward Infante heard oral argument

2   on Defendants' Carter Bryant ("Mr. Bryant") and MGA Entertainment, Inc.'s

3   ("MGA") motion to compel the production of documents and 30(b)(6) depositions.

4   Keith Jacoby appeared on behalf of Mr. Bryant. Jim Jenal appeared on behalf of

5   MGA. Jon Corey and Dylan Proctor appeared on behalf of Mattel, Inc.  After

6   considering all of the papers filed in support of and in opposition to said motion,

7   and good cause appearing, Mr. Bryant and MGA's motion is GRANTED IN PART

8   and it is hereby ORDERED as follows:

9     1. Within two weeks of the entry of this Order, Mattel must produce all non-

10   privileged documents relating to any investigation that occurred as a result of the

11   receipt of the August 2002 "Anonymous Letter" to Mattel CEO Robert Eckert, and

12   provide a privilege log identifying all documents withheld under the attorney client

13   privilege or attorney work product doctrine.  It is suggested Mattel submit

14   declarations laying out the factual basis for any work product or privilege

15   protection it intends to assert.  The Discovery Master defers ruling on whether Alan

16   Kaye should be reproduced for further deposition testimony.  The Discovery Master

17   further rules that it is premature to rule on any issue of waiver of any claimed

18   privilege.

19     2. Mattel shall identify and produce for deposition corporate designees

20   pursuant to Federal Rule of Civil Procedure 30(b)(6) qualified to testify regarding

21   the Topics Nos. 2, 3, 4, 5, 6, 7, 23, 49 and 50 set forth in Carter Bryant's Notice of

22   Deposition of Mattel, Inc. dated December 21, 2004, as limited by Mattel's May 16,

23   2005 letter.  Mattel shall identify these witnesses with the production of the

24   //

25   //

26   //

27   //

28   //

07209/2046388.1 7209/2045559.1                    1.                    ORDER

EXHIBIT ___3___, PAGE _53_

1   privilege log with dates they can appear for deposition, such that the depositions on

2   these topics shall be completed no later than March 31, 2007.

3       IT IS SO ORDERED.

4

5   DATE: January 30, 2007

6                                                Hon. Edward A. Infante (Ret.)
                                                 Discovery Master
7   Firmwide:81960684.1 028307.1010

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2046388.17209/2045559.1        2.              ORDER

EXHIBIT __3__, PAGE __54__