QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>              Plaintiff,<br><br>      vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>              Defendant.<br><br>AND CONSOLIDATED CASES | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727<br><br>[PUBLIC REDACTED] DECLARATION OF MICHAEL MOORE IN SUPPORT OF MATTEL, INC.'S OPPOSITION TO MGA ENTERTAINMENT, INC.'S MOTION FOR TERMINATING SANCTIONS<br><br>Date:  August 27, 2007<br>Time:  10:00 a.m.<br>Place:  Courtroom 1<br><br>Discovery Cut-off:  January 14, 2008<br>Pre-trial Conference:  April 7, 2008<br>Trial Date:  April 29, 2008 |

07209/2191062.6

DECLARATION OF MICHAEL MOORE

## DECLARATION OF MICHAEL MOORE

I, Michael Moore, declare as follows:

1. I make this declaration in support of Mattel's Opposition to MGA Entertainment, Inc.'s Motion for Terminating Sanctions. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2. I have been a Mattel employee since December 2000. I am currently Senior Counsel in Mattel's Legal Department.

3. I have been personally involved with the collection and preservation of evidence in not only Bryant v. Mattel and the consolidated cases, but with other litigation (to which MGA and Bryant were not parties) involving Mattel products and product lines known as MY SCENE and DIVA STARZ.

4. On November 24, 2003, I, with outside counsel, received a copy of Carter Bryant's contract with MGA dated "as of September 18, 2000" from a party in litigation with MGA in the Hong Kong courts (in a case to which Mattel was not a party). A true and correct copy of that contract is attached as Exhibit 1.

5. I personally participated in and supervised the investigation, collection and preservation of documents that relate to the basis of Mattel's claims in this litigation. I personally have spent hundreds of hours beginning in 2003 searching for, collecting and preserving documents, including electronic data, in connection with this litigation. All told, the legal personnel working at or on behalf of Mattel alone have devoted many thousands of hours beginning in and since 2003 searching for, collecting and preserving documents, including electronic data, in connection with this litigation. Throughout the process, on an on-going basis whenever a Mattel employee was identified as having potentially pertinent information, outside counsel and I instructed those Mattel employees who potentially could have had Bryant related documents to collect them and give them to me. Because the efforts have been considerable, it is difficult to summarize in a

1 Declaration the entirety of what Mattel has done to preserve documents, including
2 electronic data, in connection with this litigation, this Declaration focuses on certain
3 categories of examples of such preservation efforts.

4       6.     Mattel employed Carter Bryant, most recently, from January 4,
5 1999 to October 21, 2000. During that time he worked in Mattel's "Barbie
6 Collector" group. Because Mattel has an e-mail retention policy of 90-days on its e-
7 mail servers and had a 30-day rotation policy for e-mail server backup tapes, any e-
8 mail message that Carter Bryant authored or received or was related to him would
9 not have been on either an e-mail server or a backup tape 120-days after he quit, by
10 mid-February 2001. Nevertheless, starting in 2003 and more than once, I searched
11 for old e-mail server backup tapes, but located none in any location where they were
12 usually stored.

13       7.     Mattel employees, however, also store e-mails older than 90 days
14 in other places, including by printing them out, saving them on personal hard drives
15 or saving them on network data servers (as opposed to e-mail servers). During its
16 numerous and repeated searches, Mattel located certain e-mail messages on which
17 Carter Bryant was an addressee and preserved them. A true and correct copy of
18 examples of these e-mail messages are attached as Exhibit 2. Mattel searched for,
19 identified and preserved e-mails relating to Bryant that it could locate.

20
21                            **REDACTED**
22
23

24       8.     The efforts to search, collect and preserve e-mails relating to
25 Bryant aimed to encompass, among other things, (i) e-mails written by, to or
26 mentioning current or former employees, including Carter Bryant, Cassidy Park,
27 Ann Driskill, Lily Martinez, Mercedeh Ward, Margaret Hatch-Leahy, and certain
28

07209/2191062.6

-3-

DECLARATION OF MICHAEL MOORE

third parties, including Isaac Larian and any other persons using an MGA e-mail address; and (ii) e-mails discussing Bratz and MGA.

9. Mattel also collected and preserved relevant documentary files and created forensic images of hard drives on the personal computers of those employees who were believed to have potentially pertinent information who still worked at Mattel, including, the hard drives of Ann Driskill, Cassidy Park and Lily Martinez. Mattel additionally preserved approximately 130 hard drives that Mattel's IT department had in its possession from prior years.

10. I identified, collected and preserved Mattel's electronic telephone records for the El Segundo campus, which included archive tapes containing the phone logs generated by Mattel's MicroCall software. The archive tapes that were located are currently preserved in a secure, off-site location. Although I, along with others assisting me, also searched for them in 2003, we were unable to locate archive tapes containing such phone logs for October 2000 or December 2000.

11. I also initiated a search for backup tapes for the data server commonly known at Mattel as Zeus beginning in 2003. As a result of the searches, Mattel located and has preserved various archived LTO and DLT back up tapes from its Zeus server. Some older Zeus backup tapes were separately discovered in Mattel's Data Center, located in Phoenix, Arizona. These backup tapes were delivered to me and are from the time periods April, May, August, September and December 1998, January and February 1999, February, March, April, May, June, July, August and December 2000 and January 2001. I have also received Zeus backup tapes for later periods. All of the Zeus backup tapes that have been provided to me are currently preserved in a secure, off-site storage facility.

12. In 2002, Mattel released a new fashion doll line called MY SCENE. In early 2003, Simba Toys & Co. GmbH KG ("Simba") began to market and sell knock-offs of MY SCENE dolls at a toy fair in Nuremberg, Germany. Beginning by no later than approximately Spring 2003, I instructed Mattel

07209/2191062.6

-4-

DECLARATION OF MICHAEL MOORE

employees known to me to have worked on designs for Mattel's MY SCENE dolls to gather and preserve documents related to the development of MY SCENE for purposes of litigation against Simba.

13. Mattel filed its action against Simba on July 25, 2003 in the United Kingdom. A true and correct copy of that complaint is attached as Exhibit 3. Mattel and Simba had an expedited trial in October 2003 in London, England. Mattel prevailed. All materials that were collected for the Simba litigation have also been preserved for this litigation.

14. In 2002, an individual named Gustavo Duarte Viveros pursued an action in Mexico against Mattel de Mexico claiming that Mattel's DIVA STARZ doll line infringed copyrights in drawings he allegedly created. After abandoning that action, Duarte Viveros sued Mattel in the Central District of California in October 2004, claiming that Mattel's DIVA STARZ doll line infringed the copyright in his drawings and constituted idea theft.

15. In connection with the Duarte Viveros litigation, Mattel collected and preserved existing documents, electronic files, e-mail and tangible items (making up in excess of 70 boxes) related to DIVA STARZ, including e-mails and other documents of Mattel employees who worked on DIVA STARZ, such as designers Maureen Mullen, Rene Pasko, Joni Pratte and Rob Hudnut, and from various third parties who worked on the project, such as Steve Linker. In connection with this effort as well, Mattel collected and preserved pertinent existing electronic files from the Zeus server and back-up tapes as well as from the hard drives and other electronic media used by numerous individuals. All materials that were collected for the Duarte Viveros litigation have also been preserved for this litigation.

16. Beginning in 2005, during the course of defending Duarte Viveros' claims, Mattel discovered certain documents and designs for the DIVA STARZ project that were never publicly released and that pre-date the release of

Bratz, but that appear to share certain common elements with the Bratz dolls. Attached as Exhibit 4 are true and correct copies of examples of such documents, bates labeled M 0016585-M 0016586.001, M 0016817, M 0016504, TP 0008, TP 0009 and TP 0011.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 13, 2007, at Los Angeles County, California.

_____
Michael Moore