even though the requested leave to amend was tendered <u>before</u> the time, as set forth in a Rule 16(b) pre-trial scheduling order, for amending pleadings had expired. See <u>AmerisourceBergen Corp. v. Dialysist West, Inc.</u>, 465 F.3d 946 (9th Cir. 2006). The Ninth Circuit observed that, even when a request for leave to amend is timely under a Rule 16(b) schedule for pretrial motions, the district court may nonetheless still deny the request based on any of the <u>Forman</u> factors. <u>Id</u>. at 951-52. The Ninth Circuit then noted that the issue of untimeliness (regardless of whether the amendment is tendered "within the period of time allotted by the district court in a Rule 16 scheduling order") in seeking to amend can constitute a justification for denying leave to amend if "the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." <u>Id</u>. at 953. Toward that end, the Ninth Circuit observed that "an eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable." <u>Id</u>. In this regard, the Ninth Circuit in <u>Dialysist</u> was unpersuaded by the fact that, even though the moving party had known of the facts prompting the amendment for a long period of time, there still remained eight more months of discovery for the parties to marshal facts against the allegations raised by the amended pleading: "Even though eight months of discovery remained, requiring the parties to scramble and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was tainted, would have unfairly imposed potentially high, additional litigation costs on Dialysist West that could have easily been avoided had AmerisourceBergen pursued its 'tainted product' theory in its original complaint or reply." <u>Id</u>. Thus, absent "a satisfactory explanation" for the delay in amending the complaint, the Court is well within its rights to deny leave to amend. <u>Id</u>.

Mattel proffers the following reasons for taking the time that it did before presenting its amended complaint: (1) Acting out of an abundance of caution to its obligations under Rule 11 to present "factual contentions [that] have evidentiary support," Mattel waited until its claims were better supported by evidence

7

**EXHIBIT 7-46**

1   uncovered in discovery; and (2) the delay in the proceedings caused by "the year-

2   long stay and the parties' prior jurisdictional disputes" have left the case still in its

3   "nascent stage." (Reply to MGA Opp. at 2, 4).

4        The first reason is not well-founded. Rule 11 specifically allows parties to

5   aver factual allegations that "are likely to have evidentiary support after a

6   reasonable opportunity for further investigation or discovery" so long as the party

7   makes clear in its pleading that its factual contentions on those points are with the

8   caveat that they are based on a good faith belief that further discovery would

9   unearth evidence to support them. See FED. R. CIV. P. 11(b)(3). Simply put, Rule

10   11 did not stand in the way of Mattel averring the factual contentions it now claims it

11   "merely suspected" as being the case based on the limited information before it.

12   Mattel could have gone ahead and made such suspected factual allegations so

13   long as it caveated those claims with the declaration that it reasonably believed that

14   those allegations would be borne out by further discovery. Perhaps the time by

15   which Mattel could have reasonably believed such allegations would be borne out

16   by further discovery occurred after the dates noted by MGA, but it is hard to fathom

17   that such materialization took three or four years to occur.

18        The second reason would have some merit to it but for the fact that the

19   information that alerted (or should have alerted) Mattel to the existence of its now

20   asserted copyright and intentional interference claims was brought to Mattel's

21   attention well before the case was stayed on May 20, 2005. The stay, therefore,

22   did not operate as an obstacle to Mattel asserting its claims; nor even if it did, the

23   stay does not explain why Mattel waited nearly six months after the stay was lifted

24   on May 16, 2006, to present those claims now.

25        All of that being said, the one thing that gives the Court pause in denying

26   leave based on the tardiness in Mattel's presentation is the lack of any evidence

27   that MGA or Bryant have been prejudiced by the delay. Delay unconnected to

28   some showing of prejudice, be it prejudice to the parties or disruption in judicial

8

**EXHIBIT 7-47**

1   management of the case, does not suffice to deny granting leave to amend.  The

2   Ninth Circuit has noted that, "where a defendant is on notice of the facts contained

3   in an amendment to a complaint, there is no serious prejudice to defendant in

4   allowing the amendment" even if it is made tardily.  Sierra Club, 813 F.2d at 1493.

5   Indeed, the denial of leave was proper in the Dialysist case not simply because of

6   the length of the delay, but because the delay itself was "detrimental" in that it

7   would entail the opposing party to have "unfairly" incurred "potentially high,

8   additional litigation costs" that could have been avoided if the moving party had

9   made clear its intentions earlier.  465 F.3d at 953.

10          Here, as well demonstrated in Mattel's papers, it is readily apparent from the

11   pleadings filed by MGA and Bryant in this case that both have been aware for some

12   time of the factual predicates now underlying Mattel's copyright claim and

13   intentional interference claim.  (See MGA Opp. at 5 ("As Bryant and MGA

14   suspected at the time of filing — and Mattel now concedes by conduct — those

15   deceptively-pled state-law claims [in 04-9059] were copyright infringement claims all

16   along")(emphasis added)).  The parties have engaged in meaningful discovery

17   regarding many of the facts touched upon by these new claims, be it tracking down

18   experts in various forensic fields or taking depositions of various of the key players

19   to those claims.   In point of fact, in their papers filed with this Court before this

20   present motion, both Bryant and MGA have made it abundantly clear that they have

21   long suspected that a copyright infringement claim was in the offing as evidenced

22   by Bryant's filing of the declaratory judgment action and MGA's intervention in the

23   05-9059 matter to protect its rights to the BRATZ dolls.  Similarly, MGA and Bryant

24   have been on notice to the facts comprising the interference claim concerning

25   Bryant's contract as evidenced by the identity of the individuals who have been

26   deposed by Mattel, as well as the nature of the questions posed and the testimony

27   proffered at those depositions.  MGA's argument that, with the amendments, it

28   faces the prospect of defending "against stale claims" owing to faded memories and

9

**EXHIBIT 7-48**

1   loss of documents caused by the great passage of time, (see MGA Opp. at 3, 13),

2   is diminished by the fact that (no doubt owing to the sophistication of all counsel

3   involved) discovery on these very issues have been proceeding apace by both

4   sides long before Mattel filed its proposed amendments.  This is simply not a case

5   where "additional litigation costs" will be "unfairly" visited upon Bryant and MGA by

6   allowing the proposed amendments; much of those costs have already been borne

7   by the parties for some time.

8        2.    <u>Spoilation of Evidence</u>

9       MGA next argues that Mattel's delay in bringing the amended complaint has

10   caused it prejudice as, in the interim, critical pieces of evidence have been or are

11   suspected of having become lost.  For instance, MGA asserts that Mattel's Rule

12   30(b)(6) witness concerning its Zeus computer system, Julia Marine, testified that,

13   "although Mattel identified and segregated its most relevant backup tapes available

14   for Zeus, Mattel allowed its tape backup system to expire the database for those

15   backup tapes, thereby eliminating all information about what was actually stored on

16   those backup tapes."  (MGA Opp. at 9-10).  Information on the Zeus computer

17   system is critical because of Mattel's assertion that part of its copyright claim rests

18   on Bryant's exposure to Mattel development programs.  (First Am. Compl. ¶ 26(a)).

19   As explained by MGA: "[C]oncept data and drawings created by [Mattel] design

20   center personnel are stored on Zeus.  Thus, the electronic documents stored on

21   Zeus – which should include the metadata showing who created, edited and

22   accessed Mattel's concept drawings and designs – during the time Bryant worked

23   in the design center at Mattel is vitally important to defending against Mattel's

24   claims." (MGA Opp. at 14).  MGA's argument is neither an accurate

25   characterization of Ms. Marine's testimony nor of the nature of Mattel's exposure

26   claim.

27       Ms. Marine did not testify that the information on the backup tapes (some

28   fifty in total) was lost, but rather that Mattel no longer carried the type of hardware

10

**EXHIBIT 7-49**

1    that could restore the information still found on those tapes:

2         Q.    So if you wanted to restore that 2002 backup
               tape[s] then, how would you go about doing that?

3                      . . . .

4         A.    You need the hardware so if we don't have the
               hardware — if [the technology used by the tape
5              is] DLT we don't have the hardware and you've
               got to buy it and – well, first you have to find a
6              place to put it with adequate power which we
               don't have in the design center.  You need to
7              have a tape library.  You need to have the tape
               drives that carried those tapes.  You need a
8              server that has the capability to – that's big
               enough to handle all of the hardware.  You need
9              the software – the license for the backup
               software[, Net Backup].  You need the disk space
10             to restore it to and then you have to start reading
               in all those tapes.
11
         Q.    You said that you don't have that in the design
12             center.  Do you have that hardware anywhere
               else in the company?
13
         A.    DLT? No, no.
14
         Q.    At what point did you get rid of the hardware?
15
         A.    Once the last backups — DLT backups expired
16             so it would have been a couple years ago
               probably.
17

18   (Decl. Diana Torres, Ex. K at 118-119).

19         The above testimony clearly denotes the difficulty in restoring what was on

20   Mattel's Zeus computer system during the relevant time frame, but it certainly does

21   not demonstrate that the information on those backup tapes has been "eliminated"

22   or forever lost.  Undoubtedly it will be a costly endeavor to recover that information

23   (not to mention to later search and sort through it); but to argue, as MGA does, that

24   the information is "unavailable" or "lost", (MGA Opp. at 9, 14), exaggerates its

25   plight.  Indeed, Ms. Marine's testimony indicates that the difficulty in retrieving the

26   information on the Zeus backup tapes has been present for some time (maybe

27   since 2004 or perhaps even earlier).  This is important because it undermines

28   MGA's claim that Mattel's undue delay in bringing its amended complaint will cause

                                    11

                              EXHIBIT 7-50

1  it to suffer prejudice it otherwise would not have faced if the amendments were

2  brought sooner.  Such prejudice has been present for years, and Mattel's failure to

3  bring its amended complaint sooner would not have changed this situation.

4       Similarly, MGA's point that access to what was on the Zeus computer

5  system is vital in demonstrating that Bryant was not exposed to or otherwise did not

6  hack the system to steal other designers work is diminished to some extent by the

7  fact that Bryant himself testified that he did not use the Zeus computer system and

8  was "pretty much computer illiterate" while employed at Mattel.  Admittedly, the

9  ability to point to information on the Zeus system backup tapes to prove that Bryant

10  did not access other designers drawings or to prove the date those drawings were

11  created by those other designers would be useful evidence to negate Mattel's

12  factual claims.  Nonetheless, such evidence still would not discount other avenues

13  outside of the Zeus computer system by which Mattel could seek to prove that

14  Bryant was exposed to its copyrighted works, e.g., witness testimony that Bryant

15  saw drawings of the same posted on other designers' cubicles.

16       MGA next surmises that Mattel's e-mail records have disappeared, not

17  because it has any proof on that point, but simply because Mattel has postponed

18  the deposition of the individual most knowledgeable of Mattel's e-mail records until

19  after the hearing on Mattel's motion for leave to amend.  (MGA Opp. at 10).

20  Speculation of spoilation does not suffice.  That MGA's argumentation on this point

21  is nothing more than speculation is best exhibited by the evidence it has proffered

22  in support of its argument:  "[I]f the sole retained backup for Zeus is no longer

23  available, it is not hard to imagine that Mattel's electronic mail archives are similarly

24  out of reach."  (MGA Opp. at 15 (emphasis added)).  MGA then makes much of a

25  deposition from a Mattel executive, Alan Kaye, who testified that e-mails in his

26  inbox would be automatically deleted if they had remained there for more than a

27  certain time period.  (Decl. Diana Torres, Ex. H at 292-93).  MGA takes from this

28  acknowledgment that Mattel has an "automatic email deletion system" that has

12

**EXHIBIT 7-51**

1  compromised Mattel's "duty to preserve documents."  (MGA's Opp. at 14).

2  Noticeably absent from MGA's argument is any evidence that the e-mails so

3  deleted from a Mattel employee's inbox are forever lost or, as is far more likely,

4  whether such information remains or is otherwise archived on some backup file on

5  Mattel's computer system.  Absent concrete proof that spoilation has occurred,

6  nothing in MGA's argument forms a basis for denying Mattel its requested leave to

7  amend.

8      3.    Statute of Limitations

9      MGA next argues that Mattel's copyright and intentional interference claims

10  are futile as both are barred by the applicable statute of limitations.  This argument

11  was pressed emphatically at oral argument.  With respect to the copyright claim,

12  MGA argues that the applicable statute of limitations is three years, with the

13  limitations period accruing from when a party has knowledge of a violation or when

14  a reasonably diligent person would have been put on inquiry of the infringement.

15  (MGA Opp. at 16 (citing Roley v. New World Pictures, 19 F.3d 479, 481 (9th Cir.

16  1994)).  MGA argues that Mattel was put on notice about its copyright claim in

17  August, 2002, upon the receipt of the anonymous letter to Mattel's CEO that Bryant

18  had stolen the idea for BRATZ while working at Mattel.  Thus, according to MGA,

19  the limitations period on Mattel's claim expired in August, 2005, rendering Mattel's

20  current copyright claim stale.

21      The problem with MGA's analysis is it fails to take into account the relations-

22  back principles found in Rule 15(c), which provides that "[a]n amendment of a

23  pleading relates back to the date of the original pleading when "the claim . . . in the

24  amended pleading arose out of the conduct, transaction, or occurrence set forth . . .

25  in the original pleading," or if such relation back is otherwise permissible by the

26  state "law that provides the statute of limitations applicable to the action."  By

27  MGA's own admission Mattel's copyright claim arises out of the same conduct or

28  transaction contained in the original complaint filed in April, 2004, well within the

13

**EXHIBIT 7-52**

1  applicable limitations period.[2]  (MGA Opp. at 12 ("These very same allegations

2  [contained in the original complaint] underlie the copyright infringement and

3  intentional interference contract claims Mattel now seeks to allege against MGA,

4  Mr. Larian and Bryant")).

5        MGA's statute of limitations argument with respect to the intentional

6  interference claims fares no better.  According to MGA, the applicable statute of

7  limitations is two years for an intentional interference with contract claim and Mattel

8  was aware of the facts alerting it to this claim (insofar as Bryant's contract is

9  concerned) on November 24, 2003, when it learned "that Bryant worked with MGA

10 to develop the 'Bratz' dolls prior to his last day of employment by Mattel and, hence,

11 prior to the expiration of his contractual relationship with Mattel."[3]  (MGA Opp. at 18

12 (citing Knoell v. Petrovich, 76 Cal. App.4th 164, 168 (1999)).  Such a time line

13 would, according to MGA, mean that the applicable limitations period expired on

14 Mattel's interference with Bryant's contract claim on November 24, 2005, well

15 before Mattel sought leave to file its amended complaint.  (Id).  The problem again

16 with MGA's argument is that it ignores that through Rule 15(c) Mattel's intentional

17 interference claim would relate back to when it filed its original complaint in April,

18

19

20     [2] The same would appear to be true — that the amendments would be timely

21 — if the amendments related back to Mattel's answer (filed on May 13, 2005) to MGA's complaint in the 05-2727 case.

22     [3] With respect to Mattel's interference with contract claim as to one of its

23 former executives, Ron Brawer, MGA claims Mattel was put on notice of that claim on September 17, 2004, when Brawer informed Mattel that he leaving to go to work

24 for MGA.  (MGA Opp. at 19-20).  The problem with this argument is that nothing from

25 that simple event — Brawer's declaration of his intent to leave — in any way would apprise Mattel that MGA had encouraged Brawer to engage in nefarious conduct

26 (the stealing of proprietary information) causing Brawer to breach his contract with Mattel that he would not do anything to help a competitor while working for them.

27 MGA's contention that Mattel must have known of those misdeeds in mid-September is nothing more than speculation.  Futility cannot be founded on what might or might

28 not be the case; either a claim is futile to bring or it is not.

14

**EXHIBIT 7-53**

2004, well before the limitations period expired.[4]

Accordingly, MGA's futility argument is not well-founded.

4.   Prior Disavowals of Asserting a Copyright Claim

Finally, MGA takes umbrage with the cageyness to which Mattel has taken in this case as to whether or not it is asserting a copyright infringement claim against it. To MGA, such ducking and weaving on Mattel's part renders its effort to now bring such a copyright claim as one done in bad faith. No doubt the Court itself has been subjected to Mattel's overly vague statements on this point, but in the end nothing in those statements has ever foreclosed the possibility that such a claim may be in the offing. Indeed, during the oral argument on Mattel's motion to dismiss Bryant's declaratory judgment action, the Court pressed Mattel's counsel as to whether it would assert such a copyright claim against Bryant as it is currently seeking to do. The most that Mattel's counsel would proffer was that Mattel would not assert a copyright claim against Bryant based on Mattel's copyright rights in TOON TEENS. At that point, the Court directed the parties to engage in a meet and confer based on counsel for Mattel's representation and to provide a report to the Court based on those discussions. The report submitted to the Court made clear that, although Mattel was willing to accede that it would not bring a copyright claim based on TOON TEENS, it refused to accede to Bryant's broader request that "Bryant 'never copied anything' and that no Mattel product has any 'relevance' to any claim that Mattel has or ever will assert against Bryant." This by itself should have dispelled any illusion either Bryant or MGA was operating under that Mattel's prior statements had foreclosed any potential copyright claim against them.[5]

---

[4] Again the relations-back principle would also seem to render its claim timely if it were filed as an amended answer (the original having been filed in May, 2005) in the 05-2727 case.

[5] MGA also argues that Mattel's effort to substitute MGA and its CEO, Isaac Larian, for the "Doe" defendants listed in its original complaint is improper because Mattel knew of their identity when it filed the original complaint. The argument is

15

**EXHIBIT 7-54**

1    That said, Mattel's allegation in the amended complaint as to how it is

2  seeking to lay claim to the copyright in BRATZ is disconcerting.  Paragraph 26,

3  subsection a, in the amended complaint alleges that Bryant "misappropriated and

4  misused Mattel property" by "using his exposure to Mattel development programs to

5  create the concept, design and name of Bratz." (First Am. Compl. ¶ 26(a)).  Such

6  "exposure" could include Bryant misappropriating the Mattel design concept in

7  TOON TEENS in drawing his inspiration for the BRATZ doll.  Were Mattel's

8  copyright claim so predicated it would be barred by this Court's July, 2006, Order,

9  dismissing Bryant's declaratory judgment action.  Mattel was pressed on this point

10  during oral argument and conceded that such "exposure" to Mattel "development

11  programs" did not include TOON TEENS.  With this representation, nothing in

12  Mattel's proposed copyright claim is barred under the rubric of bad faith.

13    5.    <u>Judicial Economy Considerations</u>

14    In his opposition, Bryant adds an additional reason for denying leave beyond

15  those contained in MGA's papers — the amendment would muddy the waters in the

16  04-9059 by adding "tangential" issues that would only serve to delay resolution of

17  the key issue lying at the heart of the complaint:  Who owns the rights to the

18  BRATZ line of dolls.  (Bryant Opp. at 2 ).  Bryant notes that the case has proceeded

19  apace in moving toward resolving that issue, and the amendment would "transform

20

21  misplaced.  As made clear by Mattel, California law allows a plaintiff to substitute in a
22  defendant for a "Doe" if the plaintiff was ignorant of that defendant's identity or
23  ignorant of the basis for liability at the time the complaint was filed.  <u>See Miller v.
    Thomas</u>, 121 Cal.App:3d 440 (1981).  MGA does not dispute this legal contention
24  but at oral argument disputed that Mattel did not know the basis for liability against
    itself or Mr. Larian due to the "uncanny" similarity between the allegations averred in
25  the original complaint and those now proffered against the two in the amended
    complaint.  Specifically, MGA notes that the original complaint spoke of Bryant
26  working for one of Mattel's competitors and of that employee's theft of Mattel's
    intellectual property before leaving to work for that competitor.  At most, all this
27  shows is that Mattel knew that Bryant went to work for MGA, not that MGA or Mr.
    Larian encouraged Bryant's alleged unlawful behavior recited in the original
28  complaint.

16

**EXHIBIT 7-55**

1  what Mattel has always claimed was a straightforward employment action against

2  an individual defendant into a global commercial dispute against Mattel's primary

3  competitor, MGA," that "will last years" thereby "delay[ing]" resolution of who owns

4  BRATZ.[6] (Bryant Opp. at 2). Mattel argues that "the law does not deny leave to

5  amend because claims are 'tangential'" and then reiterates its point that some

6  showing of prejudice, namely, seeking leave after expiration of discovery, is

7  necessary. (Reply to Bryant Opp. at 3). That is not entirely correct.

8      As noted previously, the Ninth Circuit recently upheld a denial for leave to

9  amend because the amendment would have "drastically changed" the litigation,

10  even though the leave request was tendered <u>before</u> the time, as set forth in a Rule

11  16(b) pre-trial scheduling order, for filing a motion to amend had expired and well

12  before the discovery cut-off. See <u>AmerisourceBergen Corp. v. Dialysist West, Inc.</u>,

13  465 F.3d 946, 953 (9th Cir. 2006). In justifying its reasoning the Ninth Circuit cited

14  approvingly to the following statement from a well-respected treatise: "If an

15  amendment substantially changes the theory on which the case has been

16  proceeding and is proposed late enough so that the opponent would be required to

17  engage in significant new preparation, the court may deem it prejudicial." <u>Id.</u> at 953

18  n.2 (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,

19  Federal Practice and Procedure § 1487 (2nd ed. 1990)). Thus, <u>Dialysist</u>

20  recognized that the introduction of "different legal theories" and/or proof of

21  materially different facts well into the litigation can itself be a basis for finding

22  prejudice regardless of whether the period for discovery has expired (or is even

23  close to expiring) or the parties have already filed summary judgment motions. <u>Id.</u>

24  at 953-54.

25      Although the parties can safely be said to be at this point well into the

26

27      [6] Bryant also brings intricate legal arguments about the sufficiency of the
allegations Mattel has averred in building its RICO claims against him. Such
28  considerations are best left to be resolved on a properly filed motion to dismiss.

17

**EXHIBIT 7-56**

1  litigation in this consolidated action (as evidenced by the protracted discovery

2  disputes contained in the docket sheet that the parties have had before the

3  magistrate judge and now the special master, and the litigation of motions to

4  dismiss in both the 04-9049 and 04-9059 cases), the fact remains that, as Mattel

5  has made painfully clear in its papers, no scheduling order has been entered in this

6  case.[7]  This takes away somewhat from the prejudice Dialysist found to exist when

7  a "drastic change [in a party's] litigation theory" takes place mid-stream in the

8  litigation process.  Id. at 953.  Simply put, without a schedule for the filing of pre-trial

9  motions and other matters (e.g., discovery cutoff), the parties have been given free

10  reign in how to conduct the litigation in this case.

11          That the delay in bringing the proposed amendments and the relative length

12  of time into the litigation when those amendments were brought may not neatly fold

13  into Dialysist's reasoning does not mean that leave must nonetheless be granted.

14  The 04-9059 action, as it is presently constituted, is not a complex one.  It asks a

15  rather narrow and straightforward question — Did anything from Bryant's

16  employment at Mattel during the 1999-2000 period give Mattel ownership rights to

17  the BRATZ doll line?  The proposed amendments would radically alter the litigation

18  in that case to include far ranging disputes involving multiple parties and concerning

19  events not connected with the BRATZ ownership issue.  That the original action

20  was a relatively simple and straight-forward matter raises another point beyond the

21  change in the action's litigation posture — whether entangling the rival doll makers'

22  other commercial disputes into this particular case would serve to muddy the waters

23  and make the matter that much more difficult to manage from the Court's

24  perspective.

25          [7]  Mattel's repeated refrain that the matter is in its nascent stage as evidenced
26  by the fact that the parties only just recently exchanged in initial disclosures is
   misleading.  The exchange of initial disclosures referred to by Mattel is in the 05-
27  2727 case.  With respect to the 04-9059 case it appears that such initial disclosures
   were completed long ago as evidenced by the fact that discovery disputes appeared
28  in that case as far back as January, 2005.

18

**EXHIBIT 7-57**

1   As has long been recognized, equally important in determining whether to

2   grant such leave is what impact such amendments would have on the court's ability

3   to manage the case.  See 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE

4   § 15.15[1] at 15-42.1 to 15-43 (3rd ed. 2006)("A court should also consider judicial

5   economy and its ability to manage the case. . . . The court should also temper the

6   policy favoring freely granting leave to amend with consideration of the ability of the

7   district court to manage the case adequately if amendment is allowed").  As Judge

8   Clark for the Fifth Circuit once observed:  "In keeping with the purposes of the rule,

9   the court should consider judicial economy and whether the amendments would

10   lead to expeditious disposition of the merits of the litigation.  Finally, the court

11   should consider whether the amendment adds substance to the original allegations,

12   and whether it is germane to the original case of action."  Chitimacha Tribe of

13   Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982); see also

14   Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir.

15   1987)("General considerations of judicial economy also justify allowing the

16   amendments. The violations included in the proposed amendment relate to the

17   same subject matter as the original complaint.  Allowing the amendment will further

18   the federal policy of 'wrapping in one bundle all matters concerning the same

19   subject matter.'").

20   Mattel's amendments do not add substance to the claims contained in its

21   original complaint.  Rather, they would expand the universe of claims and

22   defendants stretching well-beyond the questions raised in the original complaint

23   over whether Bryant's conduct while in the employ of Mattel subjected his later

24   attributed creation of the BRATZ dolls to the provisions in Mattel's Inventions

25   Agreement or otherwise rendered his creation subject to an infringement action.

26   Nowhere does Mattel seek to reconcile the breadth of its present amendments with

27   the narrowness of the allegations contained in its original complaint.  In fact, the

28   precise opposite is true.  Mattel acknowledges that its proposed amendments bear

19

EXHIBIT 7-58

1  more congruity to the allegations leveled against it in MGA's Lanham Act case than

2  to those in the action to which it seeks to add them:

3               [M]any of the matters raised by Mattel's proposed

4               Amended Complaint are and will remain at issue
             because of MGA's Complaint, whether or not leave to

5               amend is granted.  MGA's claims allege that a broad
             array of purported Mattel conduct across the globe,

6               starting at least as early as 1999, has violated the
             Lanham Act and unfair competition law.  This includes

7               Mattel's alleged infringement of Bratz and other MGA
             products.  As a result, <u>issues in the proposed Amended</u>

8               <u>Complaint are already part and parcel of Mattel's</u>
             <u>defenses to MGA's unfair competition claims</u>, including

9               because they show that MGA and Bryant, and not
             Mattel, are ones who stole the products and other

10               properties involved.

11  (Reply to Bryant Opp. at 7 (emphasis added)).  Mattel apparently finds this

12  discongruity unimportant because "all of these matters have been consolidated with

13  the <u>Bryant</u> case." (<u>Id</u>. at 7).  As noted earlier, the fact that the cases have been

14  consolidated does not mean that the parties can ignore the distinctions that still

15  exist between them.  If, as Mattel acknowledges, the present amendments are

16  nothing more than re-formulated defenses and counterclaims it presently has to

17  MGA's complaint against it in the 05-2727 case, then such amendments should be

18  brought in the form of an amended answer and counterclaim in that case.

19       Consideration of the distinctions between the two cases is wise as it serves

20  as a useful tool in providing the Court a better means to manage the cases now

21  that they have been consolidated.  The proverbial dog (ownership in BRATZ)

22  should be wagging the proverbial tail (the remaining commercial disputes), not the

23  other way around.  Admittedly, the dog's tail has grown in size both by MGA's filing

24  of its complaint in the 05-2727 action and Mattel's response thereto through its

25  proposed amendments.  Nonetheless, it is readily apparent to the Court that the

26  crown jewel in this action still remains the ownership rights to the BRATZ dolls.  The

27  parties have engaged in extensive and undoubtedly expensive discovery on this

28  very issue (from hiring world-renowned experts to test the age of Bryant's design

20

**EXHIBIT 7-59**

1   drawings to technically complex discovery of what is on each other's computers).

2       Indeed the separateness of the two matters is reflected in how the cases are

3   currently structured, namely, the narrowness of the issue involved in 04-9059 and

4   the expansiveness of the facts at issue in 05-2727. In light of this fact, the Court

5   believes a two-track scheduling order wherein the 04-9059 matter's discovery cut

6   off and trial date are set well-ahead of those in 05-2727 makes the most sense. As

7   noted earlier, many of the legal claims being pressed in 05-2727 will be affected by

8   the result of the litigation in 04-9059. If, for instance, Mattel does own the rights to

9   the BRATZ dolls (either owing to Bryant's stealing his idea from one of Mattel's

10  "development programs" or by way of the Inventions Agreement because he

11  continued to work on his designs while at Mattel), then large portions of MGA's

12  Lanham Act infringement claims may become moot. By the same token, if Mattel

13  does not own rights to BRATZ, then some of the defenses and counterclaims set

14  forth as independent claims in the present amended complaint may become moot,

15  including Mattel's copyright infringement claim as well as portions of its remaining

16  RICO, misappropriation, and aiding and abetting claims. If, however, the Court

17  were to allow the amended complaint to be filed in the 04-9059 action, such case

18  management would be difficult, if not impossible as many of the issues being

19  litigated in the 05-2727 case would have been poured into the 04-9059 case by the

20  amendment. Due to this substantial overlap in claims and facts, a two-track

21  scheduling order utilizing the case number distinctions would be impossible to craft.

22  When pressed by the Court at oral argument as to which of its proposed claims it

23  believed would not undermine the BRATZ ownership posture of the 04-9059 case,

24  Mattel cited to its copyright and RICO claims. However, upon further questioning

25  by the Court, counsel for Mattel acknowledged that much of those claims were, like

26  the claims at issue in 05-2727, dependent upon resolution of the ownership issue.

27      In light of the burden allowing Mattel's amendment to proceed would have on

28  this Court's ability to efficiently manage these consolidated matters denial of

21

**EXHIBIT 7-60**

1  Mattel's request to amend its complaint in the 04-9059 matter is justified. <u>See</u>

2  <u>Perrian v. O'Grady</u>, 958 F.2d 192, 195 (7th Cir. 1992)("The burden to the judicial

3  system can justify a denial of a motion to amend 'even if the amendment would

4  cause no hardship at all to the opposing party'").  Buttressing the Court's decision is

5  the fact that, even with such a denial, Mattel may file (and the Court provides leave

6  to Mattel to so file) an amended answer and counterclaim in the 05-2727 case

7  raising all the new claims and defendants presently sought to be achieved through

8  amendment of its complaint in the 04-9059 action.  None of the substantive

9  concerns raised by MGA and Bryant to the present amended complaint, <u>e.g.</u>,

10  statutes of limitations, would appear to be affected if the new claims and

11  defendants were brought as defenses and counterclaims in the 05-2727 case as

12  opposed to the 04-9059 one.

13       Accordingly, the Court GRANTS Mattel's motion for leave to file its proposed

14  amendments, but only insofar as they are pled in the form of an amended answer

15  and counterclaim in the 05-2727 case.

16       Finally, the lack of a scheduling order in this case is problematic; one should

17  have been entered long ago. <u>See</u> Fed. R. Civ. P. 16(b)(noting that a scheduling

18  "order shall issue as soon as practicable but in any event within 90 days after the

19  appearance of a defendant and within 120 days after the complaint has been

20  served on a defendant").  In light of the fact that entry of a scheduling order is

21  woefully overdue in this case, the Court hereby ORDERS that a Rule 16(b)

22  scheduling conference be held in this consolidated matter on February 12, 2007, at

23  1:30 p.m. in Courtroom One.  The parties are directed to file a Joint Rule 26(f)

24  report with the Court by February 5, 2007.

25       IT IS SO ORDERED.

26  DATE: _1-11-07_

27

28                      STEPHEN G. LARSON
                    UNITED STATES DISTRICT JUDGE

**EXHIBIT 7-61**

**EXHIBIT 8**

DIANA M. TORRES (S.B. #162284)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email:    dtorres@omm.com

DALE M. CENDALI (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
Times Square Tower, 7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

PATRICIA GLASER (S.B. #55668)
CHRISTENSEN, GLASER, FINK,
JACOBS, WEIL & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
Telephone: (310) 553-3000
Facsimile: (310) 557-9815

Attorneys for MGA Entertainment, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware<br>Corporation,<br>Defendant.<br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v.<br>MATTEL, INC. | Case No. CV 04-09049 SGL (RNBx)<br>(consolidated with CV 04-9059 & 05-2727)<br><br>**MGA ENTERTAINMENT, INC.'S OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**<br><br>Judge: Hon. Stephen G. Larson<br>Date: January 8, 2007<br>Time: 10:00 a.m.<br>Place: Courtroom 1, Riverside<br>Discovery Cut-Off: T.B.D. |

12-21

**EXHIBIT 8-62**

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ..................................................................................2

II.  FACTUAL BACKGROUND..................................................................4

     A.   Background.................................................................................4

     B.   Mattel Takes to the Courts and Tests Out Various Theories of
          Copyright Infringement, All the While Denying it Was
          Asserting Claims For Infringement............................................4

     C.   Mattel Lays Claim to "Bratz"....................................................8

     D.   Mattel Has Been Well Aware Of Its Current Theory of
          Copyright Infringement For Almost Four-and-A-Half Years............9

     E.   Evidence Regarding Mattel's Copyright Claims is Now
          Unavailable................................................................................9

III. ARGUMENT ...................................................................................... 10

     A.   Mattel Has No Excuse For Failing To Asserting These Claims
          Years Ago................................................................................. 11

     B.   Mattel's Undue Delay Has Caused Unfair Prejudice........................ 12

          1.   Forcing Bryant, MGA and Mr. Larian to Defend Against
               Claims Based On Allegations of Six Year Old Facts Is
               Inherently Prejudicial ....................................................... 13

          2.   Mattel Waited to Assert its Claim to "Bratz" Until it
               Knew That Evidence Would Be Unavailable ......................... 14

     C.   Mattel's Claim is Futile............................................................. 15

          1.   The Statute of Limitations Bars Mattel's Claim For
               Copyright Infringement...................................................... 16

          2.   The Statute of Limitations Bars Mattel's Claim For
               Intentional Interference With Contract .................................... 18

               a.   The Time For Mattel To Claim Interference With
                    Bryant's Contract Passed More Than A Year Ago ....... 18

               b.   The Time For Mattel To Claim Interference With
                    Brawer's Contract Has Passed......................................... 19

     D.   Mattel's Amendment is Made in Bad Faith ...................................... 20

          1.   Mattel Has Long Known the Identities of MGA and Isaac
               Larian and Should Not be Permitted to Substitute Them
               as "Doe" Defendants........................................................... 20

          2.   Mattel Has Denied in Front of This Court and in
               Discovery That it Seeks the Rights to "Bratz"........................ 22

IV.  CONCLUSION.................................................................................... 23

**EXHIBIT 8-63**

1
2

# TABLE OF AUTHORITIES
(continued)

Page

3  *Stone v. Williams*,
   970 F.2d 1043 (2d Cir. 1992).................................................................. 16, 17

4  *U.S. v. Kubrick*,
5     444 U.S. 111 (1979)........................................................................... 13

6  *William T. Thompson Co. v. Gen'l Nutrition Corp.*,
      593 F. Supp. 1443 (C.D. Cal. 1984) ............................................... 15

7  *Zenith Radio Corp. v. Hazeltine Research, Inc.*,
      401 U.S. 321 (1971)......................................................................... 12

8  **STATUTES**

9  17 U.S.C. § 507(b) ........................................................................... 16

   Cal. Civ. Proc. § 128.7 ..................................................................... 12

10 Cal. Civ. Proc. § 339(1) ................................................................... 18

11 Cal. Civ. Proc. § 474 ..................................................................... 20, 21

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 8-64**

1    This memorandum of points and authorities is filed in support of MGA

2  Entertainment, Inc.'s ("MGA") opposition to Mattel, Inc.'s ("Mattel") motion for

3  leave to file an amended complaint in the case originally captioned *Mattel, Inc. v.*

4  *Bryant,* Case No. CV 04-9059 SGL (RNBx).

5  **I.    INTRODUCTION**

6    For over two and a half years, Mattel has played games.  Mattel began this

7  litigation to avoid federal jurisdiction by filing only common law and statutory

8  employment claims solely against its former employee, Carter Bryant ("Bryant"), in

9  Los Angeles Superior Court.  All the while, Mattel danced around the claim it

10  harbored from the start - a claim for copyright infringement - by aggressively

11  pursuing discovery related directly to that claim while steadfastly maintaining it had

12  no intention of seeking copyright relief.

13    Mattel's dance is now over.  Its proposed amended complaint seeks to assert,

14  amongst other new causes of action, its long disclaimed copyright infringement

15  action.  In support of its motion for leave to assert these claims at this late date,

16  Mattel argues it has not unduly delayed in seeking leave to amend and that any

17  amendment would not prejudice MGA or Bryant.  Mattel contends that there has

18  been no undue delay because it "only recently discovered information upon which

19  to base its claims," while conceding that its newly asserted claims are based, at least

20  in some part, on the same general facts alleged in Mattel's original complaint.

21  (Mot. at 1, 15.)

22    That concession is no accident.  Mattel seeks to insert MGA and its Chief

23  Executive Officer, Isaac Larian, in place of "Doe" Defendants, and argues that

24  MGA, Mr. Larian and Bryant will not be prejudiced because they have been on

25  notice of these claims since the lawsuit was first filed.  In making this argument,

26  however, Mattel conveniently forgets its repeated averment that it was "not

27  asserting copyright infringement . . . in this action."[1]

28  ---
[1] *See* Declaration of Diana M. Torres in Support of MGA's Opposition to Mattel's Motion for

MGA'S OPPOSITION TO MATTEL'S MOTION<br>
- 2 -    FOR LEAVE TO FILE AMENDED COMPLAINT<br>
CV 04-09049 SGL (RNBX)

**EXHIBIT 8-65**

1   Mattel's assertion that MGA, Mr. Larian, and Bryant have long known of its

2   claims is, in effect, an admission that *Mattel itself* has long known of its claims.

3   Mattel's long delay in seeking to bring those claims, however, is both inexcusable

4   and highly prejudicial. If allowed to add these new claims now, Mattel will

5   effectively force MGA and Bryant to defend against stale and time-barred claims

6   without critical evidence that has now been made unavailable through Mattel's own

7   actions.[2]

8   The prejudice Mattel has inflicted on Defendants and this Court is real and

9   palpable. Years have gone by, memories have faded, and critical electronic

10  information from Mattel's systems is no longer available. Moreover, hundreds of

11  thousands of dollars in legal fees have been needlessly spent litigating the propriety

12  of federal jurisdiction, and along with that waste of financial assets has been a

13  waste of the District Court's and the Ninth Circuit's valuable time and resources.

14  Indeed, the law and motion work connected with the two removals of this case from

15  state court and the appeal need not have occurred, and the case itself need not have

16  been stayed for a year, if Mattel had honestly stated its intentions years ago.

17  While motions to amend are routine, Mattel's conduct in this instance is

18  anything but. Lying in wait -- denying its real intentions to the parties and this

19  Court -- deceptively masking the true nature of its intended claims until memories

20  have faded and documentary evidence has been erased -- that is what Mattel has

21  done. Mattel's undue delay was in bad faith and caused the very type of prejudice

22  that warrants denying this motion. MGA respectfully submits that, in these

23  circumstances, both law and equity demand that this Court deny Mattel the

24

25  Leave to File an Amended Complaint ("Torres Decl.") ¶ 6 & Exs. E & F (Mattel, Inc.'s Responses and Objections to MGA's Second Set of Requests For Admission, Nos. 168, 169, 171,

26  173-182, 190-199, 204 & 205; Mattel Inc.'s Objections and Responses to MGA's First Set of Interrogatories, No. 5.)

27  [2] As set forth more fully in section III.B.2 *infra*, Mattel has intentionally made relevant electronic documents inaccessible. Such intentional bad faith conduct is a sufficient basis to deny Mattel's

28  motion. *See Foman v. David*, 371 U.S. 178, 182 (1962).

- 3 -

MGA'S OPPOSITION TO MATTEL'S MOTION
FOR LEAVE TO FILE AMENDED COMPLAINT
CV 04-09049 SGL (RNBX)

**EXHIBIT 8-66**

1  opportunity to file its copyright and intentional interference claims[3] and deny its

2  request to substitute MGA and Mr. Larian for "Doe" defendants, and thereby

3  preclude Mattel from unfairly inflicting prejudice through its deceptive tactics.

4  **II.   FACTUAL BACKGROUND**

5      **A.   Background**

6      In 2001, MGA, a family-owned business headquartered in Van Nuys,

7  California, introduced a line of fashion dolls named "Bratz," which demonstrated

8  the ability to do what no other fashion doll had done before -- go head-to-head with

9  Mattel's "Barbie." The "Bratz" dolls, based on drawings originally created in 1998

10  by Bryant, a former Mattel employee who became, and remains, a consultant to

11  MGA, have a hip, edgy look and "attitude" very unlike the "Barbie" doll - or, at

12  that time, any other doll. And, unlike "Barbie," the "Bratz" dolls appealed to

13  "tween" age girls, an audience Mattel had considered unreachable. In 2002, only

14  one year after launch, the "Bratz" dolls supplanted "Barbie" as the top-selling

15  fashion doll for six consecutive months. Mattel executives professed that the

16  "Bratz" were a fad, and like all fads, would fade. That did not happen. In each

17  year since the line's introduction, "Bratz" sales rose, and the pressure on Mattel

18  grew more severe with each season and each financial report.

19      **B.   Mattel Takes to the Courts and Tests Out Various Theories of**
20          **Copyright Infringement, All the While Denying it Was Asserting**
21          **Claims For Infringement**

22      On April 27, 2004, three-and-a-half years after Bryant left Mattel, Mattel

23  filed suit against Bryant and ten "Does" in Los Angeles Superior Court, asserting a

24  variety of purportedly employment-related claims.[4] Careful never to mention MGA

25

26  [3] As more fully set forth in Carter Bryant's Opposition to Mattel's Motion For Leave to Amend,
   that to the extent the Court allow Mattel leave to add its RICO or trade secrets claims, it should
27  allow them only as counter claims to MGA's unfair competition complaint. MGA does not waive
   its defenses or right to move to dismiss any of Mattel's proposed new claims.
28  [4] Mattel's Complaint in Case No. 04-9059 SGL (RNBx) dated April 27, 2004 ("Compl.")

MGA'S OPPOSITION TO MATTEL'S MOTION
                    FOR LEAVE TO FILE AMENDED COMPLAINT
                    CV 04-09049 SGL (RNBX)

**EXHIBIT 8-67**

1   or "Bratz" by name, Mattel alleged that Bryant provided an unnamed "competitor"

2   - MGA - with "intellectual property owned by Mattel," that he "used Mattel's

3   property and resources" for the benefit of himself and that "competitor," and that he

4   "converted" Mattel's "intellectual property and intangible property" by "asserting

5   ownership" of the property and providing it to "others."[5]  The complaint sought,

6   among other things, damages for the alleged misappropriation of Mattel's

7   intellectual property and an injunction against Bryant and "those acting in concert

8   or participation" with him, prohibiting them from "continuing to benefit from"

9   Bryant's alleged misappropriation.[6]

10        As Bryant and MGA suspected at the time of filing – and Mattel now

11  concedes by conduct – those deceptively-pled state-law claims were copyright

12  infringement claims all along.  In fact, Mattel's April 2004 complaint was not the

13  first time Mattel had floated such allegations.  In a July 2003 *Wall Street Journal*

14  article, sources related to Mattel were quoted as stating:

15              Inside Mattel, some are convinced the "Bratz" borrow
            liberally from a Mattel project that was scrapped at the
16          testing stage in 1998.... [The "Bratz'"] oversized heads -
            with their pursed lips and cartoonist eyes - are "virtually
17          identical" to the heads of the dolls her team created, says
            the designer, who left Mattel in 2001.... "Anyone who
18          passed by her cubicle would see the picture up on the
            wall," says another designer who also left Mattel in 2001.
19          "The big heads, the big eyes, the big feet - they were all
20          the same" as the 'Bratz.'[7]
21

22  Not surprisingly, in October 2004, following the original remand of this case to

23  state court, Mattel began to try to prove the allegations published in the *Wall Street*

24  *Journal* article and produced a number of documents about that "scrapped" project,

25  known as "Toon Teens."  Mattel's litigation plan was so clear, in fact, that Judge

26  ────────────────────

27  [5] Compl. ¶¶ 12, 18, 23, 24, 30, 31, 36, 41 & 42.
    [6] Compl. ¶¶ 19, 27, 34, 39 & 45.
28  [7] Torres Decl., ¶ 3 & Ex. B

                                  - 5 -            MGA'S OPPOSITION TO MATTEL'S MOTION
                                                   FOR LEAVE TO FILE AMENDED COMPLAINT
                                                          CV 04-09049 SGL (RNBX)

                        **EXHIBIT 8-68**

1    Nora M. Manella, speaking to the existence of federal question jurisdiction in her

2    order denying Mattel's second motion for remand, noted Mattel's machinations:

> Mattel has acknowledged the similarity of the Toon Teens
> and the Bratz in its responses to discovery requests;
> Mattel has sought discovery regarding the 'substantial
> similarity' between the Toon Teens and the Bratz; Mattel
> has agreed to provide a third party with documentation
> regarding the Toon Teens to demonstrate the Bratz are
> knock-offs of the Toon Teens; Mattel has admitted
> launching an investigation into the allegation that Bryant
> stole the idea for the Bratz from Mattel; Mattel has
> vigorously pursued discovery relating to the Bratz; and
> Mattel has admitted that its case involves that [sic] same
> issues as Bryant's declaratory relief action regarding the
> Bratz.

12    As Judge Manella concluded then, and as this Court acknowledged just six

13    months ago, Mattel was developing a case against Bryant for infringement of its

14    copyright to "Toon Teens."[8]  In June 2006, however, Mattel changed course and

15    abruptly abandoned its "Toon Teens" theory of infringement.  No doubt realizing

16    that such a theory would fail, and wanting to avoid litigating a declaratory relief

17    claim for non-infringement brought by Bryant, Mattel averred to this Court that it

18    would not assert a claim for copyright infringement of "Toon Teens."[9]  Relying on

19    Mattel's in-court representation, this Court granted Mattel's motion to dismiss

20    Bryant's declaratory relief action for non-infringement, finding that Bryant no

21    longer had any reasonable apprehension of being sued for copyright

22    infringement.[10]

23    Its ploy successful, Mattel went right back to doing what it had been doing

24    from the start, prosecuting a copyright infringement case under the guise of the

---

[8] Torres Decl. ¶ 5; July 18, 2006 Order Granting Motions to Dismiss at 3:22-24.
[9] Torres Decl., ¶ 8 & Ex. J (Transcript for June 26, 2006 Hearing Regarding Motions to Dismiss at 63:19-64:10.)  Notably, Mattel had refused to make that very same representation in October 2004, when asked to do so by Bryant in the context of a discovery dispute.
[10] See July 18, 2006 Order Granting Motions to Dismiss at 3:21-25.

1    Bryant action. Its revamped copyright theory premiered on September 8, 2006,

2    when Mattel produced a series of drawings, logos and other documents, related to

3    its "Diva Starz" line of products – a line on which Bryant apparently did no work

4    and that has no discernable relevance to any of Mattel's "employment" claims

5    against Bryant.[11] Nevertheless, five days later, Mattel sought extensive deposition

6    testimony from freelance packaging designer, and frequent Mattel contributor,

7    Steve Linker regarding his work on the "Diva Starz" line and his discussions with

8    MGA in late 2000 about possible work on "Bratz," presumably to test out Mattel's

9    new theory of infringement, this time of "Diva Starz."[12]

10        From the inception of this litigation, however, until October 31, 2006, when

11   Mattel first notified MGA and Bryant of its intent to bring this motion, Mattel

12   denied time and again - to the press, this Court, the state court, the Ninth Circuit

13   and back again - that it ever intended to assert copyright claims. For example,

14   Mattel stated to the press that its lawsuit against Bryant "doesn't have anything to

15   do with the Bratz doll."[13] In its opposition to Bryant's original removal of this case

16   to federal court and again in its opposition to Bryant's *second* removal, Mattel

17   likewise claimed that it did not know whether even $75,000 was at stake, let alone

18   whether the case involved the copyrights to "Bratz."[14] And, as late as June 19,

19   2006, Mattel swore to MGA, Bryant and this Court that "[t]here is no actual

20   controversy (and hence no case or controversy) as to the copying claim because

21   Mattel has never even threatened, let alone taken, any such copyright action."[15]

22        There can be no doubt that Mattel's overriding purpose in making these

23

24   [11] Despite three days of deposition, Mattel's lawyers failed to ask Bryant a single question regarding "Diva Starz" and the words "diva" and "starz" do not even appear in the transcripts. (Torres Decl. ¶ 14 & Ex. P.)

25   [12] Torres Decl., ¶ 14.

26   [13] Torres Decl. ¶ 2 & Ex. A.

27   [14] Torres Decl. ¶ 4 & Exs. C & D (Mattel's June 14, 2004 Motion for Remand at 5-13; Mattel's November 30, 2004 Motion for Order Remanding Action, at 13-22).

28   [15] Torres Decl. ¶ 8 & Ex. I (Mattel's Supplemental Reply In Support Of Its Motion To Dismiss at 1:10-13.)

- 7 -    MGA'S OPPOSITION TO MATTEL'S MOTION
FOR LEAVE TO FILE AMENDED COMPLAINT
CV 04-09049 SGL (RNBX)

**EXHIBIT 8-70**

1  repeated denials was to foreclose discovery that would pin it down on copyright-
2  related issues while it tested out its various theories of infringement. Mattel used
3  the fact that its complaint stated only state law claims to justify refusing to provide
4  substantive responses to numerous discovery requests concerning copying or
5  similarity, objecting thereto that "Mattel has not asserted [or is not asserting]
6  copyright infringement claims against Bryant in this action."[16] To date, despite
7  countless hours of conferences of counsel, Mattel has steadfastly *refused* to produce
8  discovery in any way relevant to a claim of copyright infringement.[17]

9  ### C.    Mattel Lays Claim to "Bratz"

10      MGA, meanwhile, has spent the past several years growing its business and
11  investing tens of millions of dollars in the "Bratz" brand. In fact, from the original
12  four dolls with a "Passion for Fashion," MGA has built an entire "Bratz World,"
13  with products ranging from "Bratz Babyz," to "Lil Bratz" to "Bratz Kidz," to "Big
14  Bratz" and even "Bratz Petz," with accessories, play sets, home goods, electronics
15  and licensed products. It is this "Bratz World" to which Mattel - after years of
16  denial - now seeks to lay claim.

17      On November 20, 2006, Mattel filed its Motion for Leave to File an
18  Amended Complaint and lodged its First Amended Complaint. In that complaint,
19  Mattel seeks a declaration of ownership of the "Bratz" copyrights and demands
20  relief for MGA's "infringement" of Mattel's purported rights in "Bratz" - the exact
21  claim against which Bryant sought declaratory relief, and of which Mattel
22  convinced this Court he had no reasonable apprehension. Notably, Mattel appears
23  to have taken drawings that MGA registered with the Copyright Office long ago,
24  and registered them as their own.

25

26  _____
[16] Torres Decl. ¶ 6 & Exs. E & F (Mattel, Inc.'s Responses and Objections to MGA's Second Set
27  of Requests For Admission, Nos. 168, 169, 171, 173-182, 190-199, 204 & 205, Mattel Inc.'s
    Objections and Responses to MGA's First Set of Interrogatories, No. 5.)
28  [17] Torres Decl. ¶ 6.

MGA'S OPPOSITION TO MATTEL'S MOTION
FOR LEAVE TO FILE AMENDED COMPLAINT
CV 04-09049 SGL (RNBX)

**EXHIBIT 8-71**

**D.**   **Mattel Has Been Well Aware Of Its Current Theory of Copyright Infringement For Almost Four-and-A-Half Years**

Although newly asserted, Mattel's present theory of copyright infringement is not new at all.  Over four years ago, in August 2002, Mattel CEO Bob Eckert received an anonymous letter stating that Bryant created the project that became the "Bratz" dolls – and worked with MGA to "steal" that project – while still employed at Mattel.[18]  Mr. Eckert forwarded that letter to Alan Kaye, Mattel's Vice President of Human Resources, who, at Mr. Eckert's direction, instructed Richard de Anda, Mattel's Vice President of World Wide Security, to conduct an investigation into the allegations in the 2002 Anonymous Letter.[19]  At his deposition, Mr. Kaye confirmed that he instructed Mr. de Anda to conduct the investigation and that he had further discussions with Mr. de Anda regarding the investigation, but would not testify about the subject of those discussions because they involved Mattel's counsel.[20]

**E.**   **Evidence Regarding Mattel's Copyright Claims is Now Unavailable**

The passage of time has taken its toll on the evidence - and on MGA's and Bryant's ability to discover from Mattel proof of the falsity of Mattel's allegations.  Last month, Julia Marine, Mattel's Rule 30(b)(6) witness on its "Zeus" computer system (used by the doll designers at Mattel), testified that, although Mattel identified and segregated its most relevant backup tapes available for Zeus,[21] Mattel allowed its tape backup system to "expire" the database for those backup tapes,

---

[18] Torres Decl., ¶ 7 & Ex. G (the "2002 Anonymous Letter.")

[19] Torres Decl., ¶ 7 & Exs. G & H (Kaye Dep. at 18-19, 23-24.)

[20] Torres Decl., ¶ 7 & Ex. H (Kaye Dep. at 24-27.)  Mattel has refused to produce documents related to the 2002 investigation, or to include the documents it has withheld concerning that investigation on its privilege log.  Mattel's failure to do so is the subject of a pending motion to compel before the Discovery Master.

[21] Although the backup tapes are from 2002, according to Mattel's 30(b)(6) witness, they are the oldest backup tapes that Mattel had available and are likely to contain relevant data from the 1998-2000 time period.  (Torres Decl., ¶ 9 & Ex. K (Marine Dep. at 99:5-22.))

- 9 -

MGA'S OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT
CV 04-09049 SGL (RNBX)

**EXHIBIT 8-72**

1    thereby eliminating all information about what was actually stored on those backup

2    tapes.[22]  (Torres Decl., ¶ 9 & Ex. K (Marine Dep. at 111-112).))  Moreover, after

3    those backup tapes were turned over to Mattel's legal department, Mattel disposed

4    of the hardware needed to read the tapes.[23]  As a result, not only can Mattel not read

5    the backup tapes, but it also cannot recreate the database to determine what is on

6    the backup tapes.

7         Similarly, unless Mattel is intentionally withholding documents, its electronic

8    mail records also appear to have disappeared.  MGA and Bryant have requested a

9    date for the deposition of a corporate designee pursuant to Federal Rule of Civil

10   Procedure 30(b)(6) *since the summer of 2004*.  Mattel refused to produce any such

11   witness for deposition before the case was stayed pending Mattel's appeal of

12   federal jurisdiction.[24]  Then, after this Court lifted the stay, Mattel continued its

13   delay and, even after providing a date for that deposition, began a series of

14   unexplained unilateral cancellations spanning the course of several months.[25]

15   Mattel's delays have guaranteed that it will not put forth a witness on its email

16   system until after this Court's hearing on the instant Motion.[26]

17   **III.   ARGUMENT**

18        Although leave to amend is liberally granted, the Supreme Court has held

19   that a plaintiff should *not* be permitted to amend a complaint if the amendment

20

21   [22] Mattel's 30(b)(6) witness testified that in order to determine what was contained on the backup
     tapes, Mattel would have to restore the entirety of the backup tapes, which it cannot do given that

22   it no longer has the hardware necessary. (Torres Decl., ¶ 9 & Ex. K (Marine Dep. at 111-112,
     115-116.))  Moreover, Mattel's 30(b)(6) witness testified that even if it had the hardware, it

23   would be extremely difficult and time consuming to restore the backup tapes to access any
     information contained on them.  (Torres Decl., ¶ 9 & Ex. K (Marine Dep. at 113-114, 117-119.))

24   [23] Torres Decl., ¶ 9 & Ex. K (Marine Dep. at 117-119.)
     [24] Torres Decl., ¶ 10.

25   [25] Torres Decl., ¶¶ 10-11.

26   [26] (Torres Decl., ¶¶ 10-11.)  The delay was ostensibly due to work demands on Mattel's designee,
     David Kayano.  In particular, Mattel claimed that it's designee was not available because of

27   additional work due to the fact that Mattel had just acquired a company.  (Torres Decl., ¶¶ 11-12
     & Ex. M.)  According to a press release on its website, however, Mattel closed the acquisition of

28   this company in October, long before it ever proposed (and subsequently withdrew) December 6,
     2006 as the 30(b)(6) witness' deposition date.  (Torres Decl., ¶ 12, Ex. N.)

MGA'S OPPOSITION TO MATTEL'S MOTION
                                        FOR LEAVE TO FILE AMENDED COMPLAINT
                                        CV 04-09049 SGL (RNBX)

**EXHIBIT 8-73**

1  would result in undue delay, is the result of bad faith, would result in prejudice to

2  the opposing party, or would be futile. *Foman*, 371 U.S. at 182; *Klamath-Lake*

3  *Pharmaceutical Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th

4  Cir. 1983) ("futile amendments should not be permitted"); *Jackson v. Bank of*

5  *Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (denying leave to amend complaint on

6  grounds of prejudice and undue delay).  With respect to at least two causes of

7  action in Mattel's proposed amended complaint, each of these factors is present

8  here.  With respect to those claims, therefore, the Court should deny Mattel's

9  motion to amend its complaint.

10    **A.**   <u>**Mattel Has No Excuse For Failing To Assert These Claims Years**</u>

11         <u>**Ago**</u>

12      In determining whether a plaintiff has unduly delayed in seeking to amend a

13 complaint, courts look to "whether the moving party knew or should have known

14 the facts and theories raised by the amendment in the original pleading." *Jackson*,

15 902 F.2d at 1388.  A plaintiff's delay is particularly relevant in deciding whether to

16 grant leave to amend "when no reason is given for the delay." *Lockheed Martin*

17 *Corp. v. Network Solutions*, 194 F.3d 980, 986 (9th Cir. 1999).  Moreover, "late

18 amendments to assert new theories are not reviewed favorably when the facts and

19 the theory have been known to the party seeking amendment since the inception of

20 the cause of action." *Acri v. International Ass'n of Machinists & Aerospace*

21 *Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) (denying motion for leave to amend

22 where plaintiff chose not to bring a cause of action in the original pleading as a

23 tactical decision).

24      Mattel has known of the acts that it now asserts give rise to its claim for

25 copyright infringement since August 2002, and of MGA's alleged intentional

26 interference with Bryant's "contract" since at least November 2003.  By Mattel's

27 own admission, it learned in November 2003 – *more than three years ago* – that

28 Bryant had signed a contract with MGA "dated as of" a month prior to his final day

MGA'S OPPOSITION TO MATTEL'S MOTION
FOR LEAVE TO FILE AMENDED COMPLAINT
CV 04-09049 SGL (RNBX)

**EXHIBIT 8-74**

1    sufficient basis for denying Mattel's motion.  *See e.g., William T. Thompson Co. v.*

2    *Gen'l Nutrition Corp.*, 593 F. Supp. 1443, 1456 (C.D. Cal. 1984) (dismissal proper

3    sanction in view of party's "willful destruction of documents and records that

4    deprived [the opposing party] of the opportunity to present critical evidence on its

5    key claims to the jury.")

6        Judging by Mattel's conduct, the loss of electronic data likely does not end

7    with its Zeus data.  As described above, Mattel has successfully postponed the

8    deposition of its electronic mail witness until *after* this Court's hearing on this

9    motion.  There can be little question as to why:  if the sole retained backup for Zeus

10   is no longer available, it is not hard to imagine that Mattel's electronic mail

11   archives are similarly out of reach.[37]

12       Given the prejudice that MGA and Bryant will suffer as a result of Mattel's

13   intentional and undue delay, as well as the overt steps Mattel has taken to put

14   discovery out of reach, the Court should deny Mattel's motion for leave to file an

15   amended complaint.

16   **C.    Mattel's Claim is Futile**

17       Federal courts routinely deny leave to amend where the claims sought to be

18   added would be futile.  *See, e.g., Gabrielson v. Montgomery Ward & Co.*, 785 F.2d

19   762, 766 (9th Cir. 1986) (affirming denial of leave to amend based on futility); *see*

20   *also Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989);

21   *Roth v. Garcia Marquez*, 942 F.2d 617, 628 (9th Cir. 1991) (affirming denial on

22   futility grounds).  Because Mattel's claims for copyright infringement and

23   intentional interference with contract are barred by the statute of limitations,

24   Mattel's claims are futile, and its motion for leave to file an amended complaint

25   should be denied.  *See Deutsch v. Turner Corp.*, 324 F.3d 692, 718 (9th Cir. 2003)

26   (denying leave to amend complaint where amendment would be futile because

27

28   [37] Electronic mail can also be stored on Zeus. (Torres Decl., ¶ 9, Ex. K (Marine Dep. at 94-95.))

**EXHIBIT 8-75**

1   at Mattel.[27]  Indeed, in its original complaint, Mattel alleged that Bryant had "aided,

2   assisted and worked for a Mattel competitor...by entering into an agreement with

3   the competitor, during the time Bryant was employed by Mattel..."[28]  Mattel also

4   alleged that Bryant had "converted" Mattel intellectual property.[29]  In filing its

5   original complaint, Mattel effectively avowed that it had a good faith belief in the

6   allegations it made therein.  *See* Cal. Civ. P. § 128.7.

7       These very same allegations underlie the copyright infringement and

8   intentional interference contract claims Mattel now seeks to allege against MGA,

9   Mr. Larian and Bryant.  For example, in its proposed amended complaint, Mattel

10  alleges that Bryant used Mattel resources "to assist MGA to produce Bratz dolls"

11  and that Bryant "contracted with MGA to assign Bratz works to MGA and to

12  provide design and development services to MGA, a Mattel competitor."[30]  Mattel

13  also alleges in its proposed amended complaint that Bryant "converted Mattel

14  property and resources" "including those relating to Bratz and Mattel's Trade

15  Secret Materials."[31]  Mattel's failure to assert in 2004 the copyright infringement

16  claim and intentional interference claim that it now seeks to assert is inexcusable.

17  **B.    Mattel's Undue Delay Has Caused Unfair Prejudice**

18      The most important factor in determining whether a party should be granted

19  leave to amend a complaint is the prejudice to the opposing party.  *See Jackson*, 902

20  F.2d at 1387 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321,

21  330-31 (1971).  Indeed, "[p]rejudice is the touchstone inquiry under rule 15(a)."

22  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  The

23  prejudice threatened here by Mattel's delay weighs heavily against its motion.

24

25

---

26  [27] FAC ¶ 36.

    [28] Compl. ¶ 12.

27  [29] Compl. ¶ 41.

    [30] FAC ¶¶ 26, 28.

28  [31] FAC ¶¶ 156, 158.

- 12 -

### 1. Forcing Bryant, MGA and Mr. Larian to Defend Against Claims Based On Allegations of Six Year Old Facts Is Inherently Prejudicial

In American jurisprudence, statutes of limitations serve an important function – to "protect defendants from the stale claims of dilatory plaintiffs and encourage plaintiffs to assert fresh claims against defendants in a diligent fashion." *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1038 (C.D. Cal. 2003). Indeed, statutes of limitations protect both defendants and courts from cases "in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *U.S. v. Kubrick*, 444 U.S. 111, 117 (1979). Such impairment arising from a failure to put a defendant on notice to defend is not just inconvenient, but "unjust." *Id.*

The dangers against which statutes of limitations are designed to defend are surely present here. Both the copyright claims and the claim for intentional interference with Bryant's contractual relationship with Mattel are based on facts that allegedly occurred more than six years ago, when Bryant left Mattel's employ. Six years is *twice* the limitations period applicable to Mattel's copyright claims, and *three times* that applicable to its contractual interference claim. By law, MGA's ability to defend itself against those claims has thus been "seriously impaired." *Id.*

Mattel's conduct throughout this litigation has compounded the prejudice inherent in undue delay. Rather than allow MGA or Bryant to conduct the type of discovery that could have preserved the evidence undermining Mattel's new claims, Mattel has stonewalled and stalled at every turn, denying discovery under the guise that it "is not asserting copyright infringement . . . in this action."[32] Now, with the passage of time, that evidence will be substantially more difficult to obtain, if,

---

[32] Torres Decl., ¶ 6 & Exs. E & F (Mattel, Inc.'s Responses and Objections to MGA's Second Set of Requests For Admission, Nos. 168, 169, 171, 173-182, 190-199, 204 & 205; Mattel Inc.'s Objections and Responses to MGA's First Set of Interrogatories, No. 5.)

- 13 -

MGA'S OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT
CV 04-09049 SGL (RNBX)

**EXHIBIT 8-77**

1  indeed, it can be obtained at all.  This is particularly the case in light of Mattel's

2  claimed automatic email deletion system,[33] notwithstanding its duty to preserve

3  documents and its refusal to produce witnesses to address this for over two years.

4      2.    **Mattel Waited to Assert its Claim to "Bratz" Until it Knew**

5                  **That Evidence Would Be Unavailable**

6        Mattel's calculated delay in bringing its copyright infringement claim has

7  already prejudiced MGA's and Bryant's ability to defend Mattel's allegations in a

8  very concrete way.  *Last month, Mattel's 30(b)(6) witness regarding Mattel's*

9  *computer system used by doll designers and known as Zeus, admitted that critical*

10  *evidence has been lost since Mattel filed its original complaint.*  The loss of this

11  data threatens a very real injustice.  In its proposed amended complaint, Mattel

12  asserts that Bryant was exposed to concepts from other Mattel employees in the

13  design center where Bryant worked, and that Bryant used Mattel resources to create

14  "Bratz."[34]  Notably, concept data and drawings created by design center personnel

15  are stored on Zeus.[35]  Thus, the electronic documents stored on Zeus – which

16  should include the metadata showing who created, edited and accessed Mattel's

17  concept drawings and designs – during the time Bryant worked in the design center

18  at Mattel is vitally important to defending against Mattel's claims.[36]  Such

19  intentional spoliation of evidence has been routinely held to be grounds for

20  sanctions – including adverse inferences and even dismissal – and is certainly a

---

[33] Torres Decl., Ex. H (Kaye Dep. at 292-293.)

[34] FAC ¶ 26.

[35] Torres Decl., ¶ 9 & Ex. K (Marine Dep. at 94, 137:18-138:1.)

[36] Mattel will no doubt argue that Bryant's testimony that he himself did not store documents on Mattel's Zeus system renders the spoliation of its back up tapes harmless.  That is not the case. Mattel contends that Bryant must have created the original "Bratz" drawings while employed at Mattel because of his exposure to other Mattel concepts in 1999.  (FAC ¶ 26.)  Thus, the data stored on the Zeus system showing when various concepts were created, who edited them and who accessed them is critically important.  Indeed, it could be compelling evidence in defense of Mattel's claims if MGA and Bryant could show that Mattel's own computer system confirmed that Bryant had never accessed concept drawings for "Diva Starz" or whatever other project(s) Mattel may yet claim are so similar to "Bratz" that they shed light on the timing of Bryant's creation.

- 14 -

MGA'S OPPOSITION TO MATTEL'S MOTION
FOR LEAVE TO FILE AMENDED COMPLAINT
CV 04-09049 SGL (RNBX)

**EXHIBIT 8-78**

statute of limitations had run).

### 1. Mattel's Copyright Infringement Claim is Barred

The statute of limitations for a copyright infringement claim is three years. 17 U.S.C. § 507(b); *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994). "A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge." *Roley*, 19 F.3d at 481. A plaintiff is "chargeable with knowledge" when "a reasonably diligent person in plaintiff's position would have been put on inquiry" of the infringement. *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992); *John G. Danielson, Inc. v. Winchester-Conant Props., Inc.*, 186 F. Supp. 2d 1, 24 (D. Mass. 2002); *Roley*, 19 F.3d at 481.

Mattel was on notice of its proposed claim for copyright infringement in August 2002 when Mattel's CEO Robert Eckert received the 2002 Anonymous Letter telling him that Bryant stole the idea for "Bratz" from Mattel. Far from dismissing the claims as not credible, Mr. Eckert directed Alan Kaye, Mattel's Vice President of Human Resources to look into the matter, who in turn instructed Richard de Anda, Mattel's Vice President of World Wide Security, to conduct an investigation into the allegations – a fact confirmed in Mr. Kaye's deposition in December 2004. While Mattel has refused to provide any further discovery about that investigation on a tenuous claim of privilege, one thing is clear: *the allegations that Mattel investigated in 2002 are the very same allegations upon which Mattel bases its proposed copyright claim.*[38] Thus, although there is no merit to these accusations, Mattel was fully aware of them more than four years before filing its motion, and the statute of limitations for that claim ran long ago.

Mattel attempts to justify its untimely filing by alleging, falsely, that MGA and Bryant "deliberately and intentionally concealed facts sufficient for Mattel to

---

[38] FAC ¶¶ 22-26.

MGA'S OPPOSITION TO MATTEL'S MOTION
FOR LEAVE TO FILE AMENDED COMPLAINT
CV 04-09049 SGL (RNBX)

**EXHIBIT 8-79**

1   know or suspect that it was the true owner of 'Bratz.'"[39]  Although "[f]raudulent

2   concealment of the existence of a cause of action tolls the running of the statute of

3   limitations" it does so "only so long as the fraud is effective." *Stone*, 970 F.2d at

4   1048.  Moreover, "[f]raudulent concealment does not lessen a plaintiff's duty of

5   diligence." *Id.* at 1049.  The alleged facts that Mattel claims MGA and Bryant

6   concealed – that Bryant worked for MGA while still employed at Mattel and that

7   Bryant was involved in the creation of "Bratz"[40] – are exactly the facts alleged,

8   again falsely, in the 2002 Anonymous Letter to Mr. Eckert, which Mattel then

9   investigated.  Moreover, Mattel asked Bryant these same questions during his

10  deposition in November 2004.  Thus, Mattel cannot credibly claim that the "facts"

11  it now seeks to allege were "effectively" – or at all – concealed.

12       Finally, Mattel's reliance on the testimony of Anna Rhee and Steve Linker,

13  two witnesses deposed in this case, to avoid the statute of limitations is unavailing.

14  The alleged facts relied upon by Mattel are not "new facts" but were disclosed in

15  Bryant's three-day deposition in November *2004*.[41]  Thus, while MGA and Bryant

16  intend to show that both Mr. Linker and Ms. Rhee are inaccurate,[42] for present

17  purposes, the accuracy of their testimony is irrelevant because neither witness

18  provided information materially different than information in Mattel's possession

19  years ago.

20       Accordingly, Mattel's motion for leave to amend to assert a claim for

21  copyright infringement should be denied because any claim for copyright

22  infringement is barred by the statute of limitations.

23

24

---

25  [39] FAC ¶ 35; Mot. at 6-7.
    [40] FAC ¶ 35.

26  [41] Torres Decl. ¶¶ 13-14, Exs. P (Bryant I at 115, 221:20-222:14; Bryant II at 282, 380-381.)

27  [42] The Court will recall that it already reached that conclusion as to Ms. Rhee: "[a]n alternative and just as plausible explanation is that Rhee is simply mistaken as to when she began performing

28  work on the BRATZ project."  (Order Denying Motion For Appointment of Expert Witnesses, dated August 10, 2006, at n. 2.)

MGA'S OPPOSITION TO MATTEL'S MOTION
FOR LEAVE TO FILE AMENDED COMPLAINT
CV 04-09049 SGL (RNBX)

**EXHIBIT 8-80**

2.      **The Statute of Limitations Bars Mattel's Claim For Intentional Interference With Contract**

In its proposed First Amended Complaint, Mattel seeks to allege that MGA interfered with its relationship with both Bryant and another former Mattel employee, Ron Brawer. As with its copyright claim, however, Mattel's claim for intentional interference with contract is futile because it is barred by the statute of limitations. The statute of limitations for a claim of intentional interference with contract is two years. Cal. Civ. P. § 339(1); *Knoell v. Petrovich*, 76 Cal. App. 4th 164, 168 (1999). It begins to run when "the plaintiff has, or should have, inquiry notice of the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). Additionally, "plaintiffs are charged with presumptive knowledge of an injury if they have information of circumstances to put them on inquiry or if they have the opportunity to obtain knowledge from sources open to their investigation." *Id.* at 807-808 (internal quotes and emphasis omitted).

a.      **The Time For Mattel To Claim Interference With Bryant's Contract Passed More Than A Year Ago**

Mattel's claim against MGA for alleged interference with Mattel's contract with Bryant is barred by its two year statute of limitations. Mattel claims that it learned on November 24, 2003, that Bryant worked with MGA to develop the "Bratz" dolls prior to his last day of employment by Mattel and, hence, prior to the expiration of his contractual relationship with Mattel.[43] The statute of limitations, therefore, bars Mattel from bringing any claim based on that supposed fact after November 24, 2005.

Mattel's efforts to avoid the statute of limitations necessarily fail. As it did in attempting to excuse its failure to bring its copyright claim earlier, Mattel again points to the deposition testimony of Anna Rhee and Steve Linker, claiming that their testimony demonstrates "the falsity of material elements of Bryant's and

---
[43] FAC ¶ 36.

- 18 -

1   MGA's story about the timing of the creation of Bratz."[44]  Not only are these

2   assertions regarding the timing of the creation of "Bratz" false, but the "new

3   information" has been available to Mattel for more than two years.  At his

4   deposition on November 4, 2004, Bryant testified that (1) he first met with MGA in

5   August 2000 and entered into an agreement with MGA regarding "Bratz" on

6   October 4, 2000;[45] (2) he met with Steve Linker about "Bratz" prior to leaving

7   Mattel;[46] and (3) Bryant asked Anna Rhee to paint the faces of the first Bratz dolls

8   (albeit in November, not June, 2000.)[47]  Both Mr. Linker and Ms. Rhee are, and

9   have long been, vendors for Mattel and thus well within Mattel's access for further

10  inquiry.[48]  Thus, the information Mattel claims to have gleaned from these

11  depositions is not "new" and does not save Mattel's claim from being barred by the

12  statute of limitations.

**b.**    **The Time For Mattel To Claim Interference With Brawer's Contract Has Passed**

15       Mattel's claim against MGA for alleged interference with Mattel's contract

16  with Brawer is also barred by the applicable two year statute of limitations.  In its

17  proposed amended complaint, Mattel alleges that MGA knew that Brawer had a

18  duty under his agreement with Mattel not to work for or assist any Mattel

19  competitor.[49]  Mattel further alleges that MGA interfered with Mattel's relationship

20  with Brawer by soliciting, inducing and encouraging him to breach his relationship

21  with Mattel.[50]  Mattel admits in its amended complaint, however, that Brawer

22  informed Mattel on September 17, 2004, that he was leaving Mattel to work for

---

[44] Mot. at 7.

[45] Torres Decl., ¶ 13, Ex. P (Bryant I at 10, 22.)

[46] Torres Decl., ¶¶ 13-14, Ex. P (Bryant I at 221:20-222:14; Bryant II at 282, 380-381.)

[47] Torres Decl., ¶ 13 & Ex. P (Bryant I at 115.)

[48] Torres Decl., ¶¶ 13-14 Exs. O & Q (Rhee Dep. at 32-33; Linker Dep. at 214-215.)

[49] FAC ¶ 124.

[50] FAC ¶ 125.

MGA'S OPPOSITION TO MATTEL'S MOTION
FOR LEAVE TO FILE AMENDED COMPLAINT
CV 04-09049 SGL (RNBX)

**EXHIBIT 8-82**

1    MGA.[51]  And, Mattel bases its claim against MGA on supposed evidence from

2    Mattel's own computer system.  There is nothing in Mattel's allegations supporting

3    its proposed claim against MGA for intentional interference with Brawer's

4    relationship with Mattel that Mattel has not known since mid-September, 2004.[52]

5    Moreover, in its proposed amended complaint, Mattel makes allegations about

6    Brawer's behavior toward MGA at the time of his departure from Mattel that, if

7    true (which MGA disputes), certainly provided inquiry notice of its asserted claim.

8    Accordingly, because the two year statute of limitations passed several months ago,

9    Mattel's claim for intentional interference with contract with regard to Brawer is

10   futile.

11       **D.    Mattel's Amendment is Made in Bad Faith**

12       Courts have discretion to deny a motion for leave to amend where the

13   plaintiff has acted in bad faith.  *See Foman*, 371 U.S. at 182.  Mattel's misdirection

14   in concealing the true nature of its claims and in now attempting to add in Mr.

15   Larian and MGA as "Doe" defendants demonstrates its bad faith in bringing this

16   motion and serves as an addition basis for its denial.

17       **1.    Mattel Has Long Known the Identities of MGA and Isaac
18               Larian and Should Not be Permitted to Substitute Them as
19               "Doe" Defendants**

20       In its motion, Mattel seeks not just to add MGA and Mr. Larian as new

21   defendants, but to substitute them as "Doe" defendants, presumably in an attempt to

22   avail itself of the "relation back" doctrine.  This tactic is improper and should not

23   be allowed.

24       Pursuant to California Code of Civil Procedure § 474, a plaintiff may use a

25   ———————————————
26   [51] FAC ¶ 6.
     [52] Indeed, Mattel sued Brawer in October 2004, for a declaratory judgment that Brawer could not
27   perform his responsibilities at MGA without disclosing or utilizing Mattel's "proprietary
     information."  After the Court of Appeals affirmed Brawer's successful demurer to the complaint,
28   Mattel elected not to file an amended complaint against Brawer and its time to do so expired
     earlier this year.  *See* Los Angeles Superior Court Case No. BC 323381.

                                    MGA'S OPPOSITION TO MATTEL'S MOTION
                            - 20 -   FOR LEAVE TO FILE AMENDED COMPLAINT
                                    CV 04-09049 SGL (RNBX)

EXHIBIT 8-83

1   fictitious name when the plaintiff is "ignorant of the name of a defendant."

2   However, "when his true name is discovered, the pleading or proceeding must be

3   amended accordingly." *Id.* "This lack of knowledge of the true name of a

4   defendant must be real and not feigned, and must not be willful ignorance, or such

5   as might be removed by some inquiry or resort to information easily accessible."

6   *Schroeter v. Lowers*, 260 Cal. App. 2d 695, 700 (1968); *Lipman v. Rice*, 213 Cal.

7   App. 2d 474, 477 (1963); *Stephens v. Berry*, 249 Cal. App. 2d 474, 477 (1967).

8   The "requirement of good faith ignorance of the true name of a fictitiously

9   designated defendant is directed at preventing an abuse of the statute, primarily by

10  requiring those whose names and connection with the cause of action are known to

11  be named and served in order that they may properly prepare their defenses."

12  *Motor City Sales v. Superior Court*, 31 Cal. App. 3d 342, 346 (1973).

13          Mattel was well acquainted with MGA and Mr. Larian at the time it filed its

14  complaint on April 27, 2004.  Indeed, Mattel affirmatively asserts that it first

15  became aware of Bryant's agreement with MGA by (at least) November 23, 2003,

16  and that it was aware by November 2003 that Bryant had allegedly "aided, assisted

17  and worked for MGA while employed at Mattel and in violation of his Mattel

18  Employment Agreement."[53]  Thus, Mattel cannot claim credibly that it had a good

19  faith ignorance of the identity of MGA and Mr. Larian at the time it filed its

20  original complaint.

21          Mattel's knowledge of the role of MGA and Mr. Larian in Bryant's departure

22  from Mattel and involvement in the creation and development of "Bratz" is

23  apparent from similarities between the allegations in its original complaint and

24  those in its amended complaint.  For example, in its original complaint, Mattel

25  alleged that Bryant "aided, assisted and worked for *a Mattel competitor*...by

26  entering into an agreement with the competitor, during the time Bryant was

27

28  _____
    [53] FAC ¶ 36.

                                                    MGA'S OPPOSITION TO MATTEL'S MOTION
                              - 21 -                 FOR LEAVE TO FILE AMENDED COMPLAINT
                                                          CV 04-09049 SGL (RNBX)

**EXHIBIT 8-84**

1   employed at Mattel..." and that Bryant "converted" Mattel intellectual property.[54]

2   Similarly, in its proposed amended complaint, Mattel alleges that Bryant used

3   Mattel resources "to assist MGA to produce Bratz dolls" and that Bryant

4   "contracted with MGA to assign Bratz works to MGA and to provide design and

5   development services *to MGA, a Mattel competitor*."[55]  Mattel further alleges that

6   Bryant "converted Mattel property and resources" "including those relating to Bratz

7   and Mattel's Trade Secret Materials."[56]

8           Nor can Mattel credibly claim that it was unaware of the alleged wrongdoing

9   of which it accuses MGA and Mr. Larian now.  Mattel deposed Bryant for three

10  days in early November, 2004.  During his deposition, Bryant testified extensively

11  regarding his meeting with MGA in August 2000, his contract negotiations with

12  MGA following that meeting, and the subsequent work he performed for MGA in

13  October 2000.[57]  In fact, he told Mattel that MGA and Mr. Larian were aware at the

14  time Bryant first met with them and at the time the October 4 contract was signed

15  that Bryant was still employed at Mattel,.[58]  Thus, Mattel's delay in naming MGA

16  and Mr. Larian as defendants was *not* due to any ignorance of the facts on which

17  they now seek to add MGA and Mr. Larian as Doe defendants.

18

19      **2.      Mattel Has Denied in Front of This Court and in Discovery**

20      **That it Seeks the Rights to "Bratz"**

21          For over two and a half years Mattel denied that it seeks the rights to "Bratz"

22  or that it was asserting a claim based on copyright infringement.  There can be no

23  question now that Mattel's repeated denials were nothing more than a calculated

---

[54] Compl. ¶¶ 12, 41; emphasis added.

[55] FAC ¶¶ 26, 28; emphasis added.

[56] FAC ¶¶ 156, 158.

[57] Torres Decl., Ex. P (Bryant II at 317-321.)

[58] Mr. Larian testified at his deposition on July 18, 2006, that he did not know Bryant would give Mattel two-weeks notice prior to leaving Mattel's employ.  (Torres Decl., ¶ 16 & Ex. R (Larian Dep. at 32-33.))

- 22 -

MGA'S OPPOSITION TO MATTEL'S MOTION
FOR LEAVE TO FILE AMENDED COMPLAINT
CV 04-09049 SGL (RNBX)

**EXHIBIT 8-85**

1   manipulation of the entire judicial system, designed to allow Mattel to test out its

2   various theories of infringement until it happened upon one that it concluded might

3   actually work.  Such callous contempt for the judicial process – to say nothing of

4   the prejudice to MGA and Bryant from Mattel's spoliation of evidence – renders

5   hollow Mattel's claim that the interests of justice would be served by granting it

6   leave to amend.

7        Mattel has "presented no new facts" in support of its claims for copyright and

8   intentional interference with contractual relations, nor provided "a satisfactory

9   explanation for [its] failure to fully develop [its] contentions originally."  *See Allen*

10  *v. Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (denying leave to amend where

11  the factual bases of the claims were known to plaintiff long before).  This Court can

12  – and should – deny Mattel's motion for leave to state a claim for copyright

13  infringement and intentional interference with contractual relations.

14  **IV.**   **CONCLUSION**

15       Mattel has delayed too long, and seeks to prejudice MGA and Bryant through

16  its delay.  For the foregoing reasons, the Court should deny Mattel's Motion for

17  Leave to File an Amended Complaint.

18

19       Dated:      December 21, 2006      O'MELVENY & MYERS LLP

20

21                                        By: Diana M. Torres
                                          Attorneys for MGA Entertainment, Inc.

22

23

24

25

26

27

28

- 23 -      MGA'S OPPOSITION TO MATTEL'S MOTION
            FOR LEAVE TO FILE AMENDED COMPLAINT
            CV 04-09049 SGL (RNBX)

**EXHIBIT 8-86**

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 400 South Hope Street, Los Angeles, California 90071-2899.

On December 21, 2006, I caused to be personally served the following documents:

1. **MGA ENTERTAINMENT, INC.'S OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT;**

2. **DECLARATION OF DIANA M. TORRES IN SUPPORT OF MGA ENTERTAINMENT, INC.'S OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT; and**

3. **APPLICATION AND [PROPOSED] ORDER TO FILE UNDER SEAL THE DECLARATION OF DIANA M. TORRES IN SUPPORT OF MGA ENTERTAINMENT, INC.'S OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT AND ALL ACCOMPANYING DOCUMENTS.**

upon counsel named below by placing a true and correct copy thereof in an envelope addressed as follows:

John Quinn, Esq.
Michael T. Zeller, Esq.
QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
865 Figueroa Street, 10th Floor
Los Angeles, California  90017

☒  (By Personal Service)  I prepared such envelope to be delivered by hand to the addressee(s) by Worldwide Network, Inc. Attorney Services, whose address is 350 South Figueroa Street, Suite 299, Los Angeles, California  90071.

☐  (State)  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒  (Federal)  I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed on December 21, 2006, at Los Angeles, California.

Mary C. Layman

LA2:819853.1

**EXHIBIT 8-87**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PROOF OF PERSONAL SERVICE

I am a citizen of the United States and employed in the County of Los Angeles, State of California, by Worldwide Network, Inc., whose address is 350 South Figueroa Street, Suite 299, Los Angeles, CA 90071. I am over the age of eighteen years and not a party to the within action. On December 21, 2006, I personally served the following:

1. **MGA ENTERTAINMENT, INC.'S OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT;**

2. **DECLARATION OF DIANA M. TORRES IN SUPPORT OF MGA ENTERTAINMENT, INC.'S OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT;**

3. **APPLICATION AND [PROPOSED] ORDER TO FILE UNDER SEAL THE DECLARATION OF DIANA M. TORRES IN SUPPORT OF MGA ENTERTAINMENT, INC.'S OPPOSITION TO MATTEL'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT AND ALL ACCOMPANYING DOCUMENTS**

by delivering a copy thereof to the office of the following, and either handing the copy to or leaving it with the _____ of the office thereof:

### Service List

**John Quinn, Esq.**
**Michael T. Zeller, Esq.**
QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
**865 Figueroa Street, 10th Floor**
**Los Angeles, California  90017**

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on December 21, 2006, at Los Angeles, California.

SIGNATURE:   _____

PRINTED NAME:   _____

LA2:819850.1

**EXHIBIT 8-88**

**EXHIBIT 9**

**MATTEL V. CARTER BRYANT
AND CONSOLIDATED CASES**

<u>SUPPLEMENTAL PRIVILEGE LOG</u>

FEBRUARY 23, 2007

| No. | Document Type | Date | From/Author | To/Recipient(s) | Description of Document and/or Redaction | Privilege |
|---|---|---|---|---|---|---|
| 1. | Board of Directors Meeting Minutes | March 12, 2004 | - | - | Discussion of potential litigation matter. | Attorney Client Privilege<br><br>Attorney Work Product |
| 2. | Board of Directors Meeting Minutes | April 26, 2004 | - | - | Discussion of potential litigation matter. | Attorney Client Privilege<br><br>Attorney Work Product |
| 3. | Handwritten Notes | August 10, 2004 | Michael Moore | - | Attorney notes regarding Cityworld. | Attorney Client Privilege<br><br>Attorney Work Product |
| 4. | Email with handwritten notes and calendar attachment | August 10, 2004 | Michael Moore | - | Attorney notes regarding Cityworld. | Attorney Client Privilege<br><br>Attorney Work Product |
| 5. | Handwritten Notes | August 9, 2004 | Michael Moore | - | Attorney notes regarding Cityworld. | Attorney Client Privilege<br><br>Attorney Work Product |
| 6. | Handwritten Notes | August 2, 2004 | Michael Moore | - | Attorney notes regarding Cityworld. | Attorney Client Privilege<br><br>Attorney Work Product |

2064397_V2 2 23 07 Consolidated Supplemental Priv Log (Final-Served).XLS        Page 1 of 13

**EXHIBIT 9-89**