QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff
Mattel, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]**<br><br>[PUBLIC REDACTED] DECLARATION OF B. DYLAN PROCTOR IN SUPPORT OF MOTION OF PLAINTIFF MATTEL, INC. FOR ADDITIONAL TIME AND/OR TO REOPEN THE DEPOSITION OF CARTER BRYANT FOR ALL PURPOSES AND TO OVERRULE ADDITIONAL INSTRUCTIONS NOT TO ANSWER AT THE DEPOSITION<br><br>Date:  TBA<br>Time:  TBA<br>Place:  Telephonic<br><br>**Phase 1**<br>Discovery Cut-Off:  January 14, 2008<br>Pre-Trial Conference: April 7, 2008<br>Trial Date:  April 29, 2008<br><br>**Phase 2**<br>Discovery Cut-Off:  March 3, 2008<br>Pre-Trial Conference: June 2, 2008<br>Trial Date:  July 1, 2008 |

07209/2179913.1

## DECLARATION OF B. DYLAN PROCTOR

I, B. Dylan Proctor, declare as follows:

1.    I am a member of the bar of the State of California and a partner of Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc.  I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

I.    **EXAMPLES OF EVIDENCE PRODUCED AFTER BRYANT'S DEPOSITION**

2.    Attached as Exhibit 1 is a true and correct copy of Carter Bryant's fee agreement with his prior counsel, Littler Mendelson, dated May 13, 2004, as produced by Bryant on June 28, 2007.  Bryant was compelled to produce this document pursuant to the Discovery Master's Orders of January 25, 2007 and June 19, 2007.

3.    Attached as Exhibit 2 is a true and correct copy of a fax from Carter Bryant to David Rosenbaum, outside counsel for MGA, dated September 14, 2000, as produced by MGA on May 16, 2005, wherein Bryant states that he cannot ask Mattel's Human Resources any more questions regarding his employment contract with Mattel "without risking suspicion."

4.    Attached as Exhibit 3 is a true and correct copy of October 10, 2000 e-mails between Isaac Larian, Victoria O'Connor and Paula Garcia (formerly Treantafelles), as produced by MGA on May 16, 2005, reflecting that Bryant worked on Bratz with MGA "on average about 4 hours a day" starting several weeks before he left Mattel on or about October 20, 2000.

5.    Attached as Exhibit 4 is a true and correct copy of invoices from Veronica Marlow to MGA, dated November 14, 2000, as produced by MGA on September 11, 2006, reflecting that approximately 169 hours of Bratz-related work for MGA were performed while Bryant was still employed by Mattel.

6.    Attached as Exhibit 5 is a true and correct copy of a February 24, 2003 declaration, signed by Bryant, as produced by MGA on June 19, 2007.

7.    Attached as Exhibit 6 are true and correct copies of September 29, October 11 and October 13, 2000 checks from ABC International Traders (MGA's predecessor) to Carter Bryant, as produced by Union Bank on August 21, 2006.

8.    Attached as Exhibit 7 are true and correct copies of Bratz design drawings dated September 19, 1999, as produced by Bryant on March 2, 2007.

9.    Attached as Exhibit 8 are true and correct copies of Bratz-related documents produced by Steve Linker on September 13, 2006. According to Mr. Linker's deposition testimony, he received these documents from MGA on October 19, 2000, when Bryant was still employed by Mattel. Attached as Exhibit 9 is a true and correct copy of excerpts from Steve Linker's deposition transcript, dated September 13, 2006.

10.    Attached as Exhibit 10 is a true and correct copy of excerpts from Anna Rhee's deposition transcript (including exhibit 201), dated February 3, 2005, reflecting that she was painting three-dimensional Bratz heads by June 2000, months before Bryant left Mattel. Attached as Exhibit 11 is a true and correct copy of an invoice produced by Rhee on January 7, 2005 regarding work that Rhee testified was code-named "Angel," but was in fact "Bratz." Only after Rhee produced this document, MGA produced the invoice in question and its alleged internal backup. Attached as Exhibit 12 is a true and correct copy of Rhee invoice as produced by MGA on January 28, 2005.

II.    **BRYANT'S DEPOSITION**

11.    Mattel served Bryant with a Notice of Deposition on June 17, 2004. Attached as Exhibit 13 is a true and correct copy of that document.

12.    At Bryant's deposition sessions on November 4, 5 and 8, 2004, defense counsel took Bryant out of the room with questions pending, interrupted Bryant in the middle of his answers, and engaged in lengthy

DECLARATION OF B. DYLAN PROCTOR

1 │ speaking objections on a number of other occasions.  The following excerpts
2 │ are illustrative:

3 │     Q   What documents did you review?
          MR. WICKHAM:  I'm going to take a brief
4 │ break to make sure --
          MR. QUINN:  No, not with a question pending.
5 │           MR. WICKHAM:  -- he's not going to be
revealing any privileged information.
6 │           MR. QUINN:  No.
    Q   (By Mr. Quinn)  I'm just asking what documents you
7 │ reviewed to refresh your recollection yesterday.
          MR. QUINN:  With a question pending, you
8 │ really can't take the witness out of the room.
          MR. WICKHAM:  I want to be sure that the
9 │ witness does not communicate any privileged communication.
I am going to take a brief break solely for the purpose of
10 │ ensuring that no privileged information is going to be
divulged by the witness.
11 │           MR. QUINN:  This is completely improper but
consistent.
12 │           VIDEOGRAPHER:  Off the record.  The time is
12:24.
13 │
Bryant Depo., at 124:7-125:1.
14 │
    Q   (By Mr. Quinn)  Who was the attorney who gave you an
15 │ understanding of this agreement?
    A   The only person I remember having any conversation with
16 │ about this at all was -- I believe it was Daphne, Daphne
Gronich.
17 │     Q   Now, this is a contract between you and MGA, right?
    A   Yes.
18 │     Q   And she's MGA's lawyer?
    A   Yes.
19 │     Q   She's not your lawyer?
    A   No.
20 │     Q   All right.  So what did Ms. Gronich tell you was the
purpose of this agreement?
21 │           MR. WICKHAM:  I'm going to instruct the
witness not to respond and I'm going to take a break
22 │ because --
          MR. QUINN:  He's answering questions and we
23 │ don't want that to happen.
          MR. WICKHAM:  No.  No.  It's late in the
24 │ day.  It's 4:30.  The witness is tired and I want to be
sure --
25 │     Q   (By Mr. Quinn)  Are you tired?  Are you tired, Mr. Bryant?
          MR. WICKHAM:  I want to be sure that the
26 │ witness --
    A   Yes, I am tired.
27 │           MR. WICKHAM:  -- does not violate his
attorney-client privilege, and I suspect that you would do
28 │ the same in your -- in the same circumstances.  We're

1   going to take a break for purposes of --
    MR. QUINN:  We're going to learn now that --
2   MR. WICKHAM:  -- preservation of the
    privilege.
3       MR. QUINN:  We're going to learn now that
    Daphne is his lawyer?
4       MR. WICKHAM:  Counsel, come on.
    MR. QUINN:  Well, indeed, come on.
5       VIDEOGRAPHER:  Off the record.  Time's 4:31.
    (Break in proceedings.)
6       VIDEOGRAPHER:  Back on the record.  Time's
    4:37.
7   Q  (By Mr. Quinn)  Okay.  So what understanding did you have
    about what the purpose of this agreement that's Exhibit
8   17?
    A  Well --
9       MR. WICKHAM:  Mr. Bryant has a clarification
    of his prior response.
10  A  I need to make a clarification.  I'm exhausted and I'm not
    thinking clearly.  The attorney who advised me on this
11  document was my attorney Larry McFarland.

12  Bryant Depo., at 478:22-480:20.

13  Q  So you were not -- it's your testimony that as of
    September 18th you were not working with MGA
14  Entertainment?
    MR. WICKHAM:  It's his testimony that he
15  wasn't employed by MGA.  Using the term "working" in the
    manner in which he's used it in this document has yet to
16  be brought out for you -- by you by virtue of a
    foundation.
17      MR. QUINN:  So you're coaching him?
    MR. WICKHAM:  He's already -- he's already
18  provided his explanation of the answer.
    MR. QUINN:  So you're throwing him a life
19  raft here?  I mean, you're telling him how to answer?
    MR. WICKHAM:  You're trying to deliberately
20  mislead him.
    MR. QUINN:  No.  You're -- you're on the
21  record coaching him in an extraordinary way.

22  Bryant Depo., at 682:17-683:8.

23  Q  And I had asked you before whether that ever occurred to
    you and you said no, and I -- then I said to this day is
24  it true that that never occurred to you, and your counsel
    said, well, in answering just leave out anything your
25  lawyers have told you.
    A  Well -- I'm sorry.  No, it hadn't occurred to me
26  because --
    MR. WICKHAM:  You've answered.
27      MR. QUINN:  Let him -- no.  Let him finish.
    You really should not raise your hand like that and cut a
28  witness off when he's answering the question.

                              DECLARATION OF B. DYLAN PROCTOR

1    MR. WICKHAM: Counsel, when the witness has answered the question, he's answered the question

2    Bryant Depo., at 23:21-24:8.

3    Q  (By Mr. Quinn)  Would it be true, sir, that -- I
4    understand what you just told me, that -- and your answer literally was that you didn't understand any of this
5    document at the time you first signed it.  If I go phrase by phrase in this document, would your answer remain the
6    same, that at the time you had no understanding about what any phrase in this document meant?
7         MS. CENDALI:  Objection.
     Q  (By Mr. Quinn)  I'm trying to see if we have a short --
8    shortcut available to us or whether we need to do that -- go phrase by phrase.
9         MR. WICKHAM:  Just tell him yes and we can move on.  Okay?  I take that back.  I'm not telling him --
10   the witness to respond.  Mr. Bryant, listen to counsel's question and respond on your own.  I do not intend on
11   conveying anything other than that.

12   Bryant Depo., at 601:15-602:5.

13   Q  Was it your understanding, sir, that in this first paragraph we've been reading from at the time you signed
14   this that you were making certain promises to Mattel?
          MR. WICKHAM:  Objection, asked and answered.
15        MS. CENDALI:  Objection, mischaracterizes his testimony.  He's already plainly testified that he did
16   not --
          MR. QUINN:  Are you going to tell him how
17   you want him to testify now, Counsel?
          MS. CENDALI:  Yes, because it's misleading.
18   When a witness answers -- when a witness answers that he doesn't even remember signing a document and then a lawyer
19   then says -- ignores that and asks him the question, you know, presupposing that he does remember signing, I don't
20   think that's proper.  You have to at a minimum lay your foundation.

21
22   Bryant Depo., at 645:7-645:22.

23   Q  (By Mr. Quinn)  You know of no such exhibition that you can tell me about; is that true?
          MS. CENDALI:  Objection --
24        MR. WICKHAM:  Objection.
          MS. CENDALI:  -- mischaracterizes his
25   testimony.  You already testified about the possible retailer show, Counsel.  Are you excluding that or not?
26        MR. QUINN:  Throw a lifesaver to the witness and remind him of some testimony.
27
28   Bryant Depo., at 437:21-438:4.

07209/2179913.1                        -5-
                          DECLARATION OF B. DYLAN PROCTOR

13.   In many cases, defense counsel's coaching resulted in parroted answers from Bryant.  For instance:

> Q   (By Mr. Quinn)  Do you have any understanding of that sentence which is not based on what your attorneys have told you?
>    MS. CENDALI:  Asked and answered.  He said he doesn't understand it.
> A   I don't understand these -- I don't understand that sentence.

Bryant Depo., at 650:2-8.

> Q   (By Mr. Quinn)  So have you ever discussed with anyone that account of how Mr. Larian came to choose Bratz?
>    MR. WICKHAM:  Objection.  To the extent that you've had any discussions with your lawyers, I instruct you not to respond.  To the extent that you've had any discussions other than with attorneys, you can and should respond.  I will also object on the grounds that it lacks foundation, calls for speculation since the witness has already said that he didn't read the article that counsel claims is a Wall Street Journal article.
> A   I didn't read the article.  I haven't spoken with anybody about those statements that Mr. Merritt -- Mr. Larian made.

Bryant's Depo., at 433:24-434:11.

14.   Attached as Exhibit 14 is a true and correct copy of excerpts from Carter Bryant's deposition transcript, dated November 4, 5, and 8, 2004.  These excerpts include the instructions not to answer at issue in this motion, as well as selected examples of defense counsel's coaching and other improper behavior.

15.   Mattel filed a Notice of Motion and Motion to Overrule Instructions Not to Answer During the Deposition of Carter Bryant on February 1, 2007.  At oral argument, the Discovery Master found that defense counsel attempted to "coach" Bryant's answers during the course of the deposition.  Attached as Exhibit 15 is a true and correct copy of Discovery Master's March 7, 2007 Order Granting in Part and Denying in Part Mattel's Motion to Overrule Instructions Not to Answer During the Deposition of Carter Bryant (the "March 7 Order"), overruling 49 instructions not to answer.

16.    MGA and Bryant then appealed the March 7 Order.  Attached as Exhibit 16 is a true and correct copy of the Order Re: Motions Heard on June 11, 2007, dated June 27, 2007, affirming the Discovery Master's ruling except as to two of these instructions (Nos. 39 & 50).

### III.    BRYANT'S KNOWLEDGE REGARDING MGA'S CLAIMS AGAINST MATTEL AND MATTEL'S COUNTERCLAIMS

17.    MGA has listed Bryant as a "person who was involved in the marketing, advertising, promotion, licensing, offering for sale, conception, origin, creation, design, development, sculpting, engineering, reduction to practice, tooling, or painting of" the allegedly infringed MGA products that MGA has put at issue in its complaint.  Attached as Exhibit 17 is a true and correct copy of excerpts from MGA's Responses to Mattel's First Set of Interrogatories Re: Claims of Unfair Competition, dated January 19, 2007, reflecting same.

18.    Attached as Exhibit 18 is a true and correct copy of MGA's Supplemental Response to Interrogatory No. 2 of Mattel's First Set of Interrogatories Re: Claims of Unfair Competition, dated June 20, 2007.  In this Response, MGA asserts that "Mattel has copied and infringed . . . [a]ll Bratz female fashion dolls," and then lists 8 pages of names and SKU numbers for such dolls.

19.    MGA's Vice President of Product Design and Development, Paula Garcia (formerly Treantafelles), has declared that she and Carter Bryant are "the *only* people who know what the concept is and who see the early product drawings" with respect to many Bratz products (emphasis in the original).  Attached as Exhibit 19 is a true and correct copy of the Declaration of Paula Garcia in Support of MGA's Opposition to Mattel's Motion to Compel, dated February 9, 2007.

DECLARATION OF B. DYLAN PROCTOR

20.   According to MGA, more than 200 Bratz-related products have been created over the last six years.  Attached as Exhibit 20 is a true and correct copy of the Declaration of Patricia Perrier in Support of MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz Ownership in Phase One, stating same.

## IV.   BRYANT'S MOTIONS TO COMPEL KAYE AND DRISKILL DEPOSITIONS

21.   When Mattel filed its February 1, 2007 motion to overrule instructions not to answer at the Bryant deposition, it did not include certain instructions, including instructions not to disclose Bryant's understanding of subjects or facts learned through communications with counsel, based on an understanding between the parties that such information was protected by the attorney-client privilege.

22.   Nevertheless, despite this understanding between the parties and after Mattel's prior motion had been filed and ruled upon by the Discovery Master, Bryant moved on March 28, 2007 to overrule comparable instructions given at the deposition of Alan Kaye (the "Kaye Motion").  On the same date, Bryant also moved to overrule instructions given at the deposition of Ann Driskill (the "Driskill Motion").  Attached as Exhibits 21, 22, and 23 are true and correct copies of relevant excerpts from the Kaye Motion, Bryant's Separate Statement in support of the Kaye Motion, and the Driskill Motion.

23.   During the meet and confer process on the Kaye and Driskill Motions, I informed Bryant's counsel, Douglas Wickham, that if Bryant so abandoned the parties' agreement Mattel would move to overrule comparable instructions not to answer made at Bryant's deposition, which Mattel had not yet moved on.  Attached as Exhibit 24 is a true and correct copy of my letter to Douglas Wickham, dated March 23, 2007, reflecting same.  Bryant nonetheless chose to file those motions and abandon the parties' agreement.

-8-

24.     On May 4, 2007, the Discovery Master granted the Kaye and Driskill Motions in substantial part, overruling Mattel's instructions not to disclose facts or understandings learned from communications with counsel. The Court also permitted Bryant to resume questioning Mr. Kaye and Ms. Driskill "on all areas that Bryant's counsel previously attempted to cover in his prior deposition," and granted Bryant four hours for the continued Kaye deposition and two hours for the continued Driskill deposition. Attached as Exhibits 25 and 26 are true and correct copies of the May 4, 2007 Orders on the Kaye and Driskill Motions.

25.     When Mattel's witnesses, Alan Kaye and Ann Driskill, appeared for depositions this year following their original 2004 depositions, defendants questioned them extensively regarding documents and topics that were not addressed at the prior depositions. Attached as Exhibits 27 and 28 are true and correct copies of relevant excerpts from the deposition transcripts of Alan Kaye and Ann Driskill, dated June 21 and July 12, 2007, reflecting examples of such questioning.

## V.     MATTEL'S MEET AND CONFER EFFORTS

26.     Mattel attempted to resolve this matter without the need for further motion practice. During the parties' meet and confers, I explained Mattel's position that Bryant's deposition should be reopened for the reasons set forth in this motion, including to allow Mattel to question Bryant about new evidence first produced by defendants after Bryant's deposition. Attached as Exhibits 29 and 30 are true and correct copies of my meet and confer letters to Bryant's counsel, dated May 11, 2007 and July 17, 2007. The second of these letters encloses several examples of new documents produced by defendants after Bryant's deposition was taken.

27.     Bryant's counsel, Michael Page, refused to make Bryant available to resume questioning on the stated basis that Mattel is not entitled to a "do over" of its prior motion. However, at no point did Bryant's counsel provide authority or

suggest that, on the merits, Mattel should not be permitted to question Bryant regarding new evidence produced by defendants and new claims filed after Bryant's deposition was taken in 2004.  Attached as Exhibits 31 and 32 are true and correct copies of May 15, 2007 and July 19, 2007 letters from Bryant's counsel to me, reiterating his refusal to reopen Bryant's deposition.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 1, 2007, at Los Angeles, California.

B. Dylan Proctor

DECLARATION OF B. DYLAN PROCTOR

07209/2179913.1