CONFIDENTIAL

M.G.A. ENTERTAINMENT

| NAME | ANNA RHEE | | | | SHIP TO | | |
|---|---|---|---|---|---|---|---|
| ADDRESS | 1613 FORD AVE. | | | | ADDRESS | | |
| CITY, STATE, ZIP | REDONDO BCH, CA. 90278 | | | | CITY, STATE, ZIP | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|---|---|---|---|---|---|---|
| | | | | 30 DAYS | | 5/17/01 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 2 | Monkey-See. Monkey-do (paint master i appv. def.) | | 400.00 |
| 1 | set of color chips | | 100.00 |
| | | prices | 500.00 |
| | | tax | 40.00 |
| | TOTAL PRICE → INCLUDING TAX | | 540.00 |
| | | | |
| | Request by Paton Alacantra | | |

BUYER:

E.Adams 8100

KEEP THIS SLIP FOR REFERENCE

221-76
AR 0036

EXHIBIT 10 PAGE 126

CONFIDENTIAL

M.G.A. ENTERTAINMENT

| NAME | ANNA RHEE | | SHIP TO | | | | |
|------|-----------|--|---------|--|--|--|--|
| ADDRESS | 16 13    FORD AVE. | | ADDRESS | | | | |
| CITY, STATE, ZIP | R.B.   CA. 91278 | | CITY, STATE, ZIP | | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|--------------|-----------|-------------|-----------|-------|----------|------|
| | | | | 30 DAYS | | 5/10/01 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|----------|-------------|-------|--------|
| 14 | Pairs of "brat" shoes | $ | 1,050.00 |
| 23 | All swatch colors | $ | 180.00 |
| | | price → $ | 1,230.00 |
| | | tax → $ | 98.00 |
| | TOTAL PRICE → INCLUDING TAX | $ | 1,328.40 |
| | | | |
| | Request by Carter Bryant | | |

| BUYER: | | | |

KEEP THIS SLIP FOR REFERENCE

⬛Adams
8100

20 1 - 37
AR 0037

EXHIBIT 10 PAGE 127

CONFIDENTIAL

TO: M.G.A. ENTERTAINMENT

| NAME ANNA RHEE | SHIP TO | | | | |
|---|---|---|---|---|---|
| ADDRESS 1613 FORD AVE. | ADDRESS | | | | |
| CITY, STATE, ZIP REDONDO BCH, CA. 90278 | CITY, STATE, ZIP | | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS 30 DAYS | HOW SHIP | DATE 6/27/01 |
|---|---|---|---|---|---|---|

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 1 | Muffin face          price → tax → | $ $ | 200.00 16.00 |
| | TOTAL PRICE → INCLUDING TAX | $ | 216.00 |

Request by Paula Treantafalles

| BUYER: | |
|---|---|

E. Adams
810C

KEEP THIS SLIP FOR REFERENCE

201-38
AR 0038

EXHIBIT _10_ PAGE _128_

CONFIDENTIAL

M.G.A. ENTERTAINMENT

| NAME | ANNA RHEE | SHIP TO | | | | |
|------|-----------|---------|--|--|--|--|
| ADDRESS | 613 FORD AVE. | ADDRESS | | | | |
| CITY, STATE, ZIP | R. B. CA. 90278 | CITY, STATE, ZIP | | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|---|---|---|---|---|---|---|
| | | | | 30 DAYS | | 7/22/01 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 1 | Mermaid Body      price→ | | 400.00 |
| | tax→ | | 32.00 |
| | TOTAL PRICE →  INCLUDING TAX | | 432.00 |
| | Request by Paula Treant atelier | | |

BUYER:

KEEP THIS SLIP FOR REFERENCE

EXHIBIT _10_ PAGE _129_

201-39
AR 0039

CONFIDENTIAL

TO: MGA ENTERTAINMENT

| NAME | ANNA RHEE | SHIP TO | | | | |
|---|---|---|---|---|---|---|
| ADDRESS | 1613 FORD AVE. | ADDRESS | | | | |
| CITY, STATE, ZIP | REDONDO BCH, CA. 90278 | CITY, STATE, ZIP | | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|---|---|---|---|---|---|---|
| | | | | 30 DAYS | | 5/20/01 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 9 | Pairs of "BRAT" shoes       price→ | | 675.00 |
| | tax→ | | 54.00 |
| | TOTAL PRICE → | | 729.00 |
| | INCLUDING TAX | | |
| | | | |
| | Request by Carter Bryant | | |

BUYER:

Acme
3100

KEEP THIS SLIP FOR REFERENCE

2 01-40

AR 0040

EXHIBIT 10 PAGE 130

CONFIDENTIAL

TO: MGA ENTERTAINMENT

| NAME | ANNA RHEE | SHIP TO | |
| ADDRESS | 1613 FORD AVE. | ADDRESS | |
| CITY, STATE, ZIP | REDONDO BCH, CA. 90278 | CITY, STATE, ZIP | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
| | | | | 30 DAYS | | 5 / 25 / 01 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 5 | Pairs of "BRAT" SHOES | | 375.00 |
| 23 | All swatch colors | | 180.00 |
| | | | |
| | | price → | # 555.00 |
| | | tax → | # 44.40 |
| | TOTAL PRICE → | | # 599.40 |
| | INCLUDING TAX | | |
| | | | |
| | | | |
| | | | |
| | Request by Carter Bryant | | |

BUYER:

Adams
3100

KEEP THIS SLIP FOR REFERENCE

201-41

AR 0041

EXHIBIT __10__ PAGE __131__

CONFIDENTIAL

M.G.A. ENTERTAINMENT

| NAME | ANNA RHEE | SHIP TO | |
|---|---|---|---|
| ADDRESS | 1613 FORD AVE. | ADDRESS | |
| CITY, STATE, ZIP | REDONDO BCH, CA. 90278 | CITY, STATE, ZIP | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|---|---|---|---|---|---|---|
| | | | | 30 DAYS | | 8/29/01 |

| QUANTITY | DESCRIPTION | | PRICE | AMOUNT |
|---|---|---|---|---|
| 4 | Mini Bratz Paint Masters | price → | $ | 400.00 |
| | | tax → | $ | 32.00 |
| | | TOTAL PRICE → INCLUDING TAX | $ | 432.00 |

Request by Paula Treantafelles

| BUYER: | |
|---|---|

C.Adams
8100

KEEP THIS SLIP FOR REFERENCE

201-4

EXHIBIT _10_ PAGE _132_

AR 004

CONFIDENTIAL

M.G.A. ENTERTAINMENT

| NAME | ANNA RHEE | | SHIP TO | | | | |
| ADDRESS | 1613 FORD NE. | | ADDRESS | | | | |
| CITY, STATE, ZIP | REDONDO BCH, CA. 90278 | | CITY, STATE, ZIP | | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS 30 DAYS | HOW SHIP | DATE 8/24/01 |
|---|---|---|---|---|---|---|

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 1 | mermaid paint master swatches & drawing | price → tax → | 100.00 |
| | | | 8.00 |
| | TOTAL PRICE INCLUDING TAX | | 108.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | Request by Paula Treantafelles | | |
| | | | |

BUYER:

KEEP THIS SLIP FOR REFERENCE

Adams 8100

201-43

EXHIBIT 10 PAGE 133

AR 004

CONFIDENTIAL

TO: M.G.A. ENTERTAINMENT

| NAME | ANNA RHEE | SHIP TO | |
|------|-----------|---------|---|
| ADDRESS | 1613 FORD AVE. | ADDRESS | |
| CITY, STATE, ZIP | REDONDO BCH, CA. 90278 | CITY, STATE, ZIP | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|---|---|---|---|---|---|---|
| | | | | 30 DAYS | | 9/10/8 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 2 | doll faces (Brown eyes) | $ 400 | 00 |
| | price → | $ | |
| | tax → | $ 32 | 00 |
| | TOTAL PRICE → INCLUDING TAX | $ 432 | 00 |
| | | | |
| | | | |
| | | | |
| | Request by Maureen Mullen | | |

BUYER:

G. Adams
8100

EXHIBIT 10 PAGE 134

201-44
AR 0044

TO: M G A . ENTERTAINMENT

| NAME ANNA RHEE | SHIP TO | | | | | |
|---|---|---|---|---|---|---|
| ADDRESS 1613 FORD AVE. | ADDRESS | | | | | |
| CITY, STATE, ZIP REDONDO BCH, CA. 90278 | CITY, STATE, ZIP | | | | | |
| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS 30 DAY | HOW SHIP | DATE 9/12/01 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 2 | Angel dolls                    price → | $ | 400.00 |
| | tax → | $ | 32.00 |
| | TOTAL PRICE → | $ | 432.00 |
| | INCLUDING TAX | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | Request by Nunett | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| BUYER: | | | |

E.Adams 8100

KEEP THIS SLIP FOR REFERENCE

2014

EXHIBIT 10 PAGE 135

CONFIDENTIAL

TO: M.G.A. ENTERTAINMENT

| NAME | ANNA RHEE | SHIP TO | |
|---|---|---|---|
| ADDRESS | 16 13 FORD AVE. | ADDRESS | |
| CITY, STATE, ZIP | R.B. CA. 90278 | CITY, STATE, ZIP | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|---|---|---|---|---|---|---|
| | | | | 30 DAYS | | 9/18/01 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 3 | Micro Bratz Heads | | $ 600. 00 |
| 3 | Bodies painted | | $ 150. 00 |
| 3 | pairs of shoes | | $ 175. 00 |
| | | | |
| | price → | | $ 925. 00 |
| | tax → | | $ 79. 00 |
| | TOTAL PRICE → INCLUDING TAX | | $ 999. 00 |

Request by Paula Treantafelles

C.Adams
8100

EXHIBIT 10 PAGE 136

201 40
AR 004

CONFIDENTIAL

TO: M.G.A ENTERTAINMENT

| NAME ANNA RHEE | | | SHIP TO | | | |
|---|---|---|---|---|---|---|
| ADDRESS 1613 FORD AVE. | | | ADDRESS | | | |
| CITY, STATE, ZIP REDONDO BCH, CA. 90278 | | | CITY, STATE, ZIP | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS 30 DAYs | HOW SHIP | DATE 9/17/01 |
|---|---|---|---|---|---|---|

| QUANTITY | DESCRIPTION | | PRICE | AMOUNT | |
|---|---|---|---|---|---|
| 3 | BRATZ HEADS | | | 600. | 00 |
| 4 | Pairs of shoes | | | 300. | 00 |
| | | | | | |
| | | price → | | ✓ 900. | 00 |
| | | tax → | | $ 72. | 00 |
| | TOTAL PRICE → | | | $ 972. | 00 |
| | INCLUDING TAX | | | | |
| | | | | | |
| | | | | | |
| | Request by Carter Bryant | | | | |

BUYER:

KEEP THIS SLIP FOR REFERENCE

E.Adams 8100

2014

AR 0047

EXHIBIT 10 PAGE 137

CONFIDENTIAL

TO: MGA ENTERTAINMENT

| NAME | | | | SHIP TO | | | |
|---|---|---|---|---|---|---|---|
| ANNA RHEE | | | | | | | |
| ADDRESS | | | | ADDRESS | | | |
| 1613 FORD AVE. | | | | | | | |
| CITY, STATE, ZIP | | | | CITY, STATE, ZIP | | | |
| REDONDO 3cH CA. 90278 | | | | | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|---|---|---|---|---|---|---|
| | | | | 30 DAYS | | 9/22/01 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 1 | Pair of large rotocast shoes | price→ | $ 100.00 |
| | | tax→ | $ 8.00 |
| | TOTAL PRICE INCLUDING TAX | | $ 108.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | Requested by Maureen Mullen | | |
| | | | |

BUYER:

S. Adams
8100

KEEP THIS SLIP FOR REFERENCE

201-48
AR 004

EXHIBIT _10_ PAGE _138_

CONFIDENTIAL

TO  MGA ENTERTAINMENT

| NAME | ANNA RHEE | | | | SHIP TO | | |
| ADDRESS | 16 13 FORD AVE. | | | | ADDRESS | | |
| CITY, STATE, ZIP | REDONDO BCH, CA. 90278 | | | | CITY, STATE, ZIP | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|---|---|---|---|---|---|---|
| | | | | 30 DAYs | | 9/24/01 |

| QUANTITY | DESCRIPTION | | PRICE | AMOUNT |
|---|---|---|---|---|
| 3 | Angel Faces | | | 600. 00 |
| 1 | Body Check-up face chan | | | 200. 00 |
| | | price → | | 800. 00 |
| | | tax → | | 64. 00 |
| | TOTAL PRICE → INCLUDING TAX | | | 864. 00 |
| | | | | |
| | Request by Ninette Pendleton | | | |
| | | | | |
| | 1 (818) 894-2525 X 141 | | | |

BUYER:

CADIETTE
8100

KEEP THIS SLIP FOR REFERENCE

2-1-4;

EXHIBIT 10 PAGE 139

AR 0049

CONFIDENTIAL

TO: M.G.A. ENTERTAINMENT

| NAME | ANNA RHEE | SHIP TO | |
| ADDRESS | 1613 FORD AVE. | ADDRESS | |
| CITY, STATE, ZIP | R.B. CA. 90278 | CITY, STATE, ZIP | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
| | | | | 30 DAYS | | 9 /26 /01 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 1 | Set of Sugar Plum Toy (including pet) | | ~~~~~~ 00 |
| | price → | | 325.00 |
| | tax → | | 26.00 |
| | TOTAL PRICE | | 351.00 |
| | INCLUDING TAX | | |
| | | | |
| | | | |
| | | | |
| | Request by Carter Bryant | | |
| | | | |

BUYER:

Adams 8100

KEEP THIS SLIP FOR REFERENCE

201-5

AR 0050

EXHIBIT __10__ PAGE __140__

CONFIDENTIAL

TO: MGA ENTERTAINMENT

| NAME | | | SHIP TO | | |
|---|---|---|---|---|---|
| ANNA RHEE | | | | | |
| ADDRESS | | | ADDRESS | | |
| 1613 FORD AVE. | | | | | |
| CITY, STATE, ZIP | | | CITY, STATE, ZIP | | |
| REDONDO BCH, CA. 90278 | | | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|---|---|---|---|---|---|---|
| | | | | 30 DAYs | | 9/30/01 |

| QUANTITY | DESCRIPTION | PRICE | | AMOUNT | |
|---|---|---|---|---|---|
| 1 | Make-up Bratz Hispanic Head (Ex. Large) price → | $ | | 250 | 00 |
| | tax → | $ | | 20. | 00 |
| | TOTAL PRICE → | | $ | 270. | 00 |
| | INCLUDING TAX | | | | |

Request by Paula Treantafelles

BUYER:

C. Adams
8100

KEEP THIS SLIP FOR REFERENCE

501-5;
AR 005

EXHIBIT __10__ PAGE __141__

CONFIDENTIAL

TO. M. G. A. ENTERTAINMENT

| NAME ANNA RHEE | SHIP TO | | | | |
|---|---|---|---|---|---|
| ADDRESS 1613 FORD AVE. | ADDRESS | | | | |
| CITY, STATE, ZIP REDONDO BCH, CA. 90278 | CITY, STATE, ZIP | | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS 30 DAYS | HOW SHIP | DATE 10/9/01 |
|---|---|---|---|---|---|---|

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 4 | Bratz Heads (photo shoot)    price → | 800.00 |
| | tax → | 64.00 |
| | TOTAL PRICE → | 864.00 |
| | INCLUDING TAX | |
| | | |
| | | |
| | | |
| | Requested by Paula Triantafella | |

BUYER:

S. Adams
8100

KEEP THIS SLIP FOR REFERENCE

201-5

EXHIBIT 10 PAGE 142

AR 0052

CONFIDENTIAL

TO: MGA ENTERTAINMENT

| NAME | ANNA RHEE | | SHIP TO | | | | |
|---|---|---|---|---|---|---|---|
| ADDRESS | 1613 FORD AVE. | | ADDRESS | | | | |
| CITY, STATE, ZIP | REDONDO BCH CA 90278 | | CITY, STATE, ZIP | | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS 30 DAYS | HOW SHIP | | DATE 11/14/01 |
|---|---|---|---|---|---|---|---|

| QUANTITY | DESCRIPTION | | PRICE | AMOUNT |
|---|---|---|---|---|
| 1 | Sugar Plum Set (accessories & background)  price→ | | $ | 500.00 |
| | tax→ | | $ | 40.00 |
| | TOTAL PRICE → INCLUDING TAX | | $ | 540.00 |
| | | | | |
| | | | | |
| | Requested by Carter Bryant | | | |

BUYER:

Adams 100

KEEP THIS SLIP FOR REFERENCE

2015

**EXHIBIT 10 PAGE 143**

AR 005

CONFIDENTIAL

TO MGA ENTERTAINMENT

| NAME | | | | | | SHIP TO | |
|------|--|--|--|--|--|---------|--|
| ANNA RHEE | | | | | | | |
| ADDRESS | | | | | | ADDRESS | |
| 1613   FORD AVE. | | | | | | | |
| CITY, STATE, ZIP | | | | | | CITY, STATE, ZIP | |
| REDONDO BCH, CA. 91278 | | | | | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|--------------|-----------|-------------|-----------|-------|----------|------|
| | | | | 30 DAYS | | 10/15/01 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|----------|-------------|-------|--------|
| 1 | Extra Large Bratz Head (Make-up)   price → | | $250.00 |
| | tax → | | $20.00 |
| | TOTAL PRICE → INCLUDING TAX | | $270.00 |
| | | | |
| | | | |
| | | | |
| | Request by Paula Treantafelles | | |

BUYER:

E.Adams #100

KEEP THIS SLIP FOR REFERENCE

EXHIBIT 10 PAGE 144

CONFIDENTIAL

T°: M G A . ENTERTAINMENT

| NAME | | | | | | |
|------|--|--|--|--|--|--|
| ANNA RHEE | | | SHIP TO | | | |

| ADDRESS | | | | | ADDRESS | | |
|---------|--|--|--|--|---------|--|--|
| 1613 FORD AVE. | | | | | | | |

| CITY, STATE, ZIP | | | | | CITY, STATE, ZIP | | |
|------------------|--|--|--|--|------------------|--|--|
| REDONDO BCH  CA. 90278 | | | | | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|--------------|-----------|-------------|-----------|-------|----------|------|
| | | | | 30 DAYS | | 11/2/01 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|----------|-------------|-------|--------|
| 1 | Dress up Amy.              price → | # | 200.00 |
| | tax → | # | 16.00 |
| | TOTAL PRICE → | # | 216.00 |
| | INCLUDING TAX | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | Request by Nanette Pembleton | | |
| | | | |

BUYER:

Adams
00

KEEP THIS SLIP FOR REFERENCE

AR 0055

EXHIBIT 10 PAGE 145

CONFIDENTIAL

TO: MGA ENTERTAINMENT

| NAME | ANNA RHEE | SHIP TO | |
|---|---|---|---|
| ADDRESS | 1613 FORD AVE. | ADDRESS | |
| CITY, STATE, ZIP | REDONDO BCH, CA. 90278 | CITY, STATE, ZIP | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|---|---|---|---|---|---|---|
| | | | | 30 DAYS | | 12/10/01 |

| QUANTITY | DESCRIPTION | | PRICE | AMOUNT |
|---|---|---|---|---|
| 1 | Sugar Plum Planet Play set — "Frozen Candy" | | | 700 00 |
| 1 | Sugar Plum — (Hawaiin Girl | | | 200. 00 |
| | | price → | $ 900. 00 | |
| | | tax → | $ 72. 00 | |
| | | TOTAL PRICE → | $ 972. 00 | |
| | | INCLUDING TAX | | |
| | | | | |
| | | | | |
| | Requested by   Carter Bryant | | | |

BUYER:

J. Adams
100

KEEP THIS SLIP FOR REFERENCE

201-56
AR 005

EXHIBIT 10 PAGE 146

CONFIDENTIAL

TO MGA ENTERTAINMENT

| NAME | | | SHIP TO | | | |
|------|---|---|---------|---|---|---|
| ANNA RHEE | | | | | | |
| ADDRESS | | | ADDRESS | | | |
| 1613 FORD AVE. | | | | | | |
| CITY, STATE, ZIP | | | CITY, STATE, ZIP | | | |
| REDONDO BCH, CA 90278 | | | | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|---|---|---|---|---|---|---|
| | | | | 30 DAYS | | 12/21/01 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 1 | Sugar Plum Alaska "Frozen Cutu" Gift Set | | 325.00 |
| 1 | Sugar Plum Planet Play Set (Hawaiin) Touch-up | | 200.00 |
| | | price → | 525.00 |
| | | tax → | 42.00 |
| | TOTAL PRICE → | | 567.00 |
| | INCLUDING TAX | | |
| | | | |
| | Request by Carter Bryant | | |
| | | | |
| | BUYER: | | |

Adams
8100

201-57

AR 005

**EXHIBIT 10 PAGE 147**

CONFIDENTIAL

ANNA RHEE
1613 FORD AVE.
REDONDO. BCH, CA. 90278

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|---|---|---|---|---|---|---|
| | | | | 30 DAYS | | 12/27/01 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 1 | Sugar Plum Planet Play Set — "Mermaid" | | 700.00 |
| | "  " Mermaid Girl & Pet | | 325.00 |
| | price → | | $1,025.00 |
| | tax → | | $82.00 |
| | TOTAL PRICE → | | $1,107.00 |
| | INCLUDING TAX | | |

Carter Bryant

Request by ~~Paula Treantifilles~~

BUYER:

C.Adams
8100

KEEP THIS SLIP FOR REFERENCE

201-5
AR 00

EXHIBIT __10__ PAGE __148__

**Exhibit 11**

CONFIDENTIAL

TO: MGA Eentertainment

| NAME | ANNA RHEE | SHIP TO | |
|---|---|---|---|
| ADDRESS | 1613 FORD AVE. | ADDRESS | |
| CITY, STATE, ZIP | REDONDO BCH, CA·90278 | CITY, STATE, ZIP | |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 2 | Angel baby Doll Heads | price → $ | 400.00 |
| | | Tax → | 33.00 |
| | | TOTAL PRICE → $ | 433.00 |
| | | INCLUDING TAX | |

(PAID)

Request by
Kerri Legg

EXHIBIT 11 PAGE 314

EXHIBIT
Rhee
201
2/8/05

201-1

KEEP THIS SLIP FOR REFERENCE

AR 0001

**EXHIBIT 11 PAGE 149**

**Exhibit 12**

**096588**

Req# 02903                                    PO# 3002

V 22974
PM 5039
RLT04332

To: MGA Entertainment

| NAME | ANNA RHEE | SHIP TO | |
| ADDRESS | 1613 FORD AVE. | ADDRESS | |
| CITY, STATE, ZIP | REDONDO BCH, CA-90278 | CITY, STATE, ZIP | |

| 2 | Angel Baby Doll Heads | price | $ | 400. | 00 |
| | | | $ | 33. | 00 |
| | | | $ | 433. | 00 |

TOTAL PRICE
INCLUDING TAX

Request by
Kerri Legg

→ (310) 374-2000

tax id # 570.67-1518

PAULA

KEEP THIS SLIP FOR REFERENCE

EXHIBIT 12 PAGE 315

Confidential
Attorneys' Eyes Only

TD 8100

MGA000706

**EXHIBIT 12 PAGE 150**

**Exhibit  13**



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff
Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

MATTEL, INC., a Delaware corporation,

                      Plaintiff,

        v.

CARTER BRYANT, an individual; and DOES 1 through 10, inclusive,

                      Defendants.

Case No. CV 04-3431 NM (RNBx)

PLAINTIFF MATTEL, INC.'S NOTICE OF DEPOSITION OF CARTER BRYANT

02284/589933.1

NOTICE OF DEPOSITION

EXHIBIT 13 PAGE 151

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that plaintiff Mattel, Inc. will take the deposition of defendant Carter Bryant on June 29, 2004, beginning at 9:30 a.m., at the offices of Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th Floor, Los Angeles, California.

PLEASE TAKE FURTHER NOTICE that the deposition will take place upon oral examination before a duly authorized notary public or other officer authorized to administer oaths at depositions, and will continue from day to day, Sundays, Saturdays and legal holidays excepted, until completed.

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(2), the deposition will be videotaped.

DATED: June 17, 2004

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _____
Michael T. Zeller
Attorneys for Plaintiff
Mattel, Inc.

-2-

NOTICE OF DEPOSITION

**EXHIBIT 13  PAGE 152**

## PROOF OF SERVICE

1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES )

I am employed in the county of Los Angeles  State of California.  I am over the age of 18 and not a party to the within action; my business address is: 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017.

On June 17, 2004, I served the foregoing document(s) described as **PLAINTIFF MATTEL, INC'S NOTICE OF DEPOSITION OF CARTER BRYANT** on all interested parties in this action.

**Robert F. Millman, Esq.**
**Doughlas A. Wickham, Esq.**
**Littler Mendelson**
**A Professional Corporation**
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107
Phone: 310-553-0308
Fax: 310-553-5583

[X]    By placing [ ] the original [X ] true copies thereof enclosed in sealed envelopes addressed as follows:

[X]    **BY MAIL**

[ ]    I deposited such envelope in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

[X]    As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    **BY OVERNIGHT COURIER** I caused each envelope with postage prepaid to be sent by Federal Express.

[X]    **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

[]    **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

Executed on June 17, 2004, at Los Angeles, California.

[ ]    (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]    (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

SONIJA N. WILLIAMS
Print Name                                          Signature

# EXHIBIT 13 PAGE 153

**Exhibit 14**

CONFIDENTIAL                                    1

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA


MATTEL, INC., a Delaware corporation, )   CASE NO.
                                      )   CV 04-9059 DDP (AJWx)
                  Plaintiff,          )
                                      )
         vs.                          )
                                      )
CARTER BRYANT, an individual, and     )
DOES 1 through 10, inclusive,         )
                                      )
                  Defendants.         )
_____ )
CARTER BRYANT, on behalf of himself,  )
all present and former employees of   )
Mattel, Inc., and the general public, )
                                      )
                  Cross-Complainant,  )
                                      )
         vs.                          )
                                      )
MATTEL, INC., a Delaware corporation, )
                                      )
                  Cross-Defendant.    )


VOLUME I
THE VIDEOTAPED DEPOSITION OF CARTER BRYANT,
produced, sworn, and examined on Thursday, November 4, 2004,
at 9:10 a.m. of that day, pursuant to Notice to Take
Deposition at the University Plaza, Executive Boardroom,
333 South John Q. Hammons Parkway, in the City of Springfield,
County of Greene, State of Missouri, before Sherrie L. Hunt,
Certified Court Reporter, and Notary Public, in a certain
cause now pending in the United States District Court for the
Central District of California, wherein the parties are as
above set forth; taken on behalf of the Plaintiff and
Cross-Defendant.


COURT REPORTERS OF THE MIDWEST, INC.
P.O. Box 4282
Springfield, MO 65808 (417) 889-2079

EXHIBIT _14_ PAGE _154_

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware corporation, )   CASE NO.
                                      )   CV 04-9059 DDP (AJWx)
                Plaintiff,            )
                                      )
          vs.                         )
                                      )
CARTER BRYANT, an individual, and     )
DOES 1 through 10, inclusive,         )
                                      )
                Defendants.           )
_____
CARTER BRYANT, on behalf of himself,  )
all present and former employees of   )
Mattel, Inc., and the general public, )
                                      )
                Cross-Complainant,    )
                                      )
          vs.                         )
                                      )
MATTEL, INC., a Delaware corporation, )
                                      )
                Cross-Defendant.      )

VOLUME II
THE VIDEOTAPED DEPOSITION OF CARTER BRYANT,
produced, sworn, and examined on Friday, November 5, 2004,
at 9:10 a.m. of that day, pursuant to Notice to Take
Deposition at the University Plaza, Executive Boardroom,
333 South John Q. Hammons Parkway, in the City of Springfield,
County of Greene, State of Missouri, before Sherrie L. Hunt,
Certified Court Reporter, and Notary Public, in a certain
cause now pending in the United States District Court for the
Central District of California, wherein the parties are as
above set forth; taken on behalf of the Plaintiff and
Cross-Defendant.

COURT REPORTERS OF THE MIDWEST, INC.
P.O. Box 4282
Springfield, MO 65808 (417) 889-2079

EXHIBIT _14_ PAGE _155_

CONFIDENTIAL                                        497

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware corporation, )   CASE NO.
                                      )   CV 04-9059 DDP (AJWx)
                Plaintiff,            )
                                      )
          vs.                         )
                                      )
CARTER BRYANT, an individual, and     )
DOES 1 through 10, inclusive,         )
                                      )
                Defendants.           )
_____)
CARTER BRYANT, on behalf of himself,  )
all present and former employees of   )
Mattel, Inc., and the general public, )
                                      )
                Cross-Complainant,    )
                                      )
          vs.                         )
                                      )
MATTEL, INC., a Delaware corporation, )
                                      )
                Cross-Defendant.      )

VOLUME III
THE VIDEOTAPED DEPOSITION OF CARTER BRYANT,
produced, sworn, and examined on Monday, November 8, 2004,
at 10:27 a.m. of that day, pursuant to Notice to Take
Deposition at the University Plaza, Executive Boardroom,
333 South John Q. Hammons Parkway, in the City of Springfield,
County of Greene, State of Missouri, before Sherrie L. Hunt,
Certified Court Reporter, and Notary Public, in a certain
cause now pending in the United States District Court for the
Central District of California, wherein the parties are as
above set forth; taken on behalf of the Plaintiff and
Cross-Defendant.

COURT REPORTERS OF THE MIDWEST, INC.
P.O. Box 4282
Springfield, MO 65808 (417) 889-2079

EXHIBIT _14_ PAGE _156_

1  potential liability to MGA?                                    09:44

2          MR. WICKHAM:  Calls for a legal conclusion.

3  A  I don't know.  I don't know if that's the case.

4  Q  (By Mr. Quinn)  Did that ever occur to you?

5  A  No, I don't think it ever did occur to me.          09:44

6  Q  And to this day it's never occurred to you that you might

7     have some liability to MGA under that agreement; is that

8     true?

9          MR. WICKHAM:  Objection, overbroad,

10    potentially invades the attorney-client privilege.  To the   09:45

11    extent that his question calls for any information that

12    you received from counsel, I instruct you not to respond.

13    To the extent that you have any understanding other than

14    obtained from your attorneys, you can respond.

15 A  Can you restate your question?                        09:45

16 Q  (By Mr. Quinn)  Sure.  The question was about whether it

17    ever occurred to you that you might have some liability to

18    MGA if it turned out that you didn't own the rights to

19    Bratz.  Do you understand that much?

20 A  Yes.                                                 09:45

21 Q  And I had asked you before whether that ever occurred to

22    you and you said no, and I -- then I said to this day is

23    it true that that never occurred to you, and your counsel

24    said, well, in answering just leave out anything your

25    lawyers have told you.                               09:45

**EXHIBIT _14_ PAGE _157_**

CONFIDENTIAL                                                24

1   A    Well -- I'm sorry.  No, it hadn't occurred to me                    09:4!

2        because --

3                  MR. WICKHAM:  You've answered.

4                  MR. QUINN:  Let him -- no.  Let him finish.

5        You really should not raise your hand like that and cut a          09:4&

6        witness off when he's answering the question.

7                  MR. WICKHAM:  Counsel, when the witness has

8        answered the question, he's answered the question.

9   Q    (By Mr. Quinn)  You may finish your answer, please.

10  A    I -- in my mind I own the rights -- I owned the rights to          09:46

11       the Bratz and felt perfectly comfortable assigning them to

12       MGA.

13  Q    And is it true that to this day it's never occurred to you

14       that you might have some liability to MGA if it turned out

15       that you didn't own the rights?  Is that true?                     09:46

16                 MR. WICKHAM:  Objection, asked and answered,

17       harassing, burdensome.  It's about the fourth or fifth

18       time that you've asked that question.  At this point in

19       time I'll instruct the witness not to respond.

20                 MR. QUINN:  Well, he hasn't answered the                  09:46

21       question, so it's going to be hard to complete this

22       deposition with all the instructions not to answer we're

23       racking up.  Do you have something to write me notes

24       with?

25                 MR. ZELLER:  Yes.                                         09:47

EXHIBIT 14 PAGE 158

CONFIDENTIAL                                          25

1              MR. QUINN:  Feel free to do that.                    09:4'

2              MR. ZELLER:  Okay.

3    Q   (By Mr. Quinn)  In your understanding of the agreement

4        that you had with Mattel while you were working at Mattel,

5        would it be acceptable for you to do work for a Mattel      09:4'

6        competitor while you were employed by Mattel?

7              MR. WICKHAM:  Objection, lacks foundation,

8        calls for a legal conclusion.

9    A   I wasn't particularly sure of what the terms of the

10       agreement were.                                             09:47

11   Q   (By Mr. Quinn)  So, I mean, that may be the answer, that

12       you don't know one way or another.  I'm just trying to

13       find out what your understanding was.  So my question to

14       you, sir, is, in your understanding of your agreement with

15       Mattel that you had while you worked at Mattel, was it      09:47

16       acceptable for you to work for a competitor while you were

17       employed by Mattel?

18             MR. WICKHAM:  Counsel, your continued

19       reference to an agreement is the subject of the

20       witness's -- of Mr. Bryant's cross-complaint where he is    09:48

21       making a number of different claims challenging the

22       document that purports to be an agreement, Number 1, and,

23       Number 2, that there were a number of different pieces of

24       paper over the course of his --

25             MR. QUINN:  Is this an objection or is this           09:48

**EXHIBIT _14_ PAGE _159_**

CONFIDENTIAL                                                        26

1    just a speech?

2                    MR. WICKHAM:   -- two terms of employment

3    with Mattel, so I would ask that you be more specific.

4    You vaguely refer to an agreement without identifying what

5    it is that you're referring to.

6    Q   (By Mr. Quinn)  I'm going to stick with my question.  In

7        your understanding, sir, under any of the agreements that

8        you've had with Mattel at any time, was it acceptable for

9        you to do work for a competitor while you were employed by

10       Mattel?

11                   MR. WICKHAM:   Okay.  Objection, calls for a

12   legal conclusion, overbroad, lacks foundation.  Counsel

13   has refused to be more specific as to what it is that he

14   is referring to, so he's vaguely asserting whatever that

15   you have information of from 1995 through 2000.

16   Q   (By Mr. Quinn)  Your turn.

17   A   I'm not sure what contract you're referring to and I'm not

18       sure what my understanding of the contract was.

19   Q   Under any contract that you had or any agreement that you

20       ever had with Mattel -- are you with me so far?

21   A   Uh-huh.

22   Q   Is that a yes?

23   A   Yes.

24   Q   Okay.  Was it your understanding under any of those

25       agreements that it was acceptable for you to do work for a

EXHIBIT _14_ PAGE _160_

CONFIDENTIAL                                        45

```
1    A   Yes.                                                    10:1
2    Q   "Here" meaning Springfield, Missouri?
3    A   Yes.  Springfield area, yes.
4    Q   And Mr. Irmen had remained in California during that
5        period?                                                10:1
6    A   Yes.
7    Q   When was it that you showed the Bratz concept to your
8        mother?
9    A   It was sometime in August, late August 1998.
10   Q   And how is it that you remember that particular month?  10:1
11   A   That's when I created them.
12   Q   And it's your recollection that you showed them to her at
13       the time that you created them?
14   A   Yes.
15   Q   And were you living with your mother at the time?       10:15
16   A   Yes.
17   Q   And does your father reside there as well?
18   A   Yes.
19   Q   And what address was that?
20   A   That was 1-A Sycamore Drive, Kimberling City.           10:16
21   Q   Missouri?
22   A   Missouri.
23   Q   Does your mother still reside at that address?
24   A   No.
25   Q   Where does your mother reside now?                      10:16
```

**EXHIBIT _14_ PAGE _161_**

CONFIDENTIAL                                      51

```
 1        time with protecting the confidentiality of your idea and    10:3
 2        your drawings?
 3                   MR. WICKHAM:  Objection, ambiguous.
 4    A   I don't remember being concerned with that or not.
 5    Q   (By Mr. Quinn)  One way or another?                           10:3
 6    A   I don't recall.
 7    Q   You might have been concerned, you might not have been
 8        concerned, you're just not sure?
 9    A   Right.
10    Q   What was her reaction when you showed her these drawings?     10:3
11    A   She liked them.  She thought they were interesting.  I
12        don't remember exactly what she said about them.
13    Q   Did you only show them to her on the one occasion?
14    A   No.  She saw them on more than one occasion.
15    Q   And what were those other occasions?                          10:35
16                   MR. WICKHAM:  Objection, vague as to time,
17        overbroad.
18    A   I'm not sure exactly when the other occasions were.
19    Q   (By Mr. Quinn)  Were they also in the year 1999?
20    A   Yes.                                                          10:35
21    Q   But you just can't narrow it down to time of year; is that
22        true?
23    A   That's true.
24    Q   All right.  Putting aside the issue of time, can you
25        recall at all what the context was or the occasion was       10:35
```

EXHIBIT _14_ PAGE _162_

1           MR. WICKHAM:  Objection, lacks foundation,    10:54

2     calls for speculation, overbroad.

3           MS. CENDALI:  Vague and ambiguous.

4   A  Can you be more specific?

5   Q  (By Mr. Quinn)  No.                                 10:54

6   A  Can you restate the question?

7   Q  Sure.  Prior to the October 4, 2000, agreement did you

8     provide any materials to MGA relating to the Bratz project

9     other than these 13 drawings?

10          MS. CENDALI:  Same objections.                 10:55

11          MR. WICKHAM:  Join.

12  A  Not that I can recall.

13  Q  (By Mr. Quinn)  So as best your recollection is that prior

14    to the time you signed that agreement with MGA, the only

15    thing that you provided them regarding Bratz were these 13  10:55

16    drawings; is that true?

17          MR. WICKHAM:  Okay.  That's a different

18    question.  That mischaracterizes the witness's testimony.

19    Tell him again what your prior answers were.

20  A  The drawings were the only thing that I can remember that  10:55

21    I provided them.

22  Q  (By Mr. Quinn)  Did you have any concern that MGA could

23    just take the project or the idea that you were disclosing

24    to them if you didn't have an agreement with them?

25          MR. WICKHAM:  Objection, vague as to time.      10:55

EXHIBIT _14_ PAGE _163_

CONFIDENTIAL                                    78

1     understanding it would compete with any Mattel products?                    11:08

2            MR. WICKHAM:  Objection, vague as to time,

3     foundation.

4  A  I don't think I really even thought about that.

5  Q  (By Mr. Quinn)  All right.  So you didn't have any                          11:09

6     understanding one way or another as to whether the Bratz

7     doll would compete with Mattel products; is that true?

8            MR. WICKHAM:  Objection, vague as to time.

9  A  Like I said before, I just -- I didn't even really think

10    about it.                                                                   11:09

11 Q  (By Mr. Quinn)  All right.  So is it true that at the time

12    you engaged Ms. Leahy to create the sculpt for the Bratz

13    doll you had no understanding one way or another as to

14    whether that doll, if brought to market, would compete

15    with Mattel products; is that true?                                         11:09

16           MS. CENDALI:  Objection, mischaracterizes

17    his testimony.  He did not state that he engaged Ms.

18    Leahy.

19 Q  (By Mr. Quinn)  Go ahead.

20 A  Again, I didn't think about it one way or another because                   11:09

21    I didn't know that this project would even come to market.

22 Q  Did you think about whether it would compete with Mattel

23    products if it did come to market one way or the other?

24           MR. WICKHAM:  Objection, mischaracterizes

25    the witness's testimony, asked and answered.                               11:10

EXHIBIT _14_ PAGE _164_

CONFIDENTIAL                                          79

| | | | |
|---|---|---|---|
| 1 | A | No.  I didn't think about that. | 11:10 |
| 2 | Q | (By Mr. Quinn)  Was it -- did any -- was it your | |
| 3 | | understanding that you're the one who engaged Ms. Leahy? | |
| 4 | A | No, it was not my understanding.  I had contacted Ms. | |
| 5 | | Leahy but MGA was actually engaging her to do the work. | 11:10 |
| 6 | Q | I see.  Who was it who had the first contact with Ms. | |
| 7 | | Leahy as far as you're aware?  Was it you or was it | |
| 8 | | somebody from MGA? | |
| 9 | | MR. WICKHAM:  Objection, foundation, calls | |
| 10 | | for speculation. | 11:10 |
| 11 | A | I don't know if anybody from MGA had contacted her before | |
| 12 | | but I did contact her. | |
| 13 | Q | (By Mr. Quinn)  And you contacted her about doing some | |
| 14 | | sculpting on Bratz, correct? | |
| 15 | A | Yes. | 11:10 |
| 16 | Q | Did she indicate to you that, oh, what a coincidence, I've | |
| 17 | | already been contacted by MGA about this? | |
| 18 | A | Not to my recollection. | |
| 19 | Q | It was your understanding at the time that you were the | |
| 20 | | first one to contact her about this project; is that true? | 11:11 |
| 21 | A | That was my understanding at the time. | |
| 22 | Q | Did you tell her how she would get paid? | |
| 23 | A | I don't recall anything like that. | |
| 24 | Q | Did you have any understanding at that time as to how she | |
| 25 | | would be paid for her work? | 11:11 |

EXHIBIT _14_ PAGE _165_

CONFIDENTIAL                                                          102

| | | |
|---|---|---|
| 1 | | meeting.  At any time prior to the time that you left | 11:52 |
| 2 | | Mattel did Mr. Larian ever say that you ought to keep |
| 3 | | something in confidence or not share it with anybody? |
| 4 | A | I don't recall. |
| 5 | Q | You don't recall him ever doing that? | 11:52 |
| 6 | A | No. |
| 7 | Q | All right.  In the meeting that -- with Mr. Larian where |
| 8 | | these other people were present, did Victoria or anybody |
| 9 | | else make any comments to the effect that you ought to |
| 10 | | keep some information confidential or not share it with | 11:53 |
| 11 | | others? |
| 12 | A | Not to my recollection. |
| 13 | Q | At any time prior to the last day of your employment at |
| 14 | | Mattel did anybody on the MGA side tell you that you ought |
| 15 | | to keep any activities or any information about Bratz or | 11:53 |
| 16 | | anything else confidential or not share it with other |
| 17 | | people? |
| 18 | | MR. WICKHAM:  Well, you're asking him to |
| 19 | | interpret the terms of his October 4 agreement with MGA |
| 20 | | which you have not put in front of him.  If you want to | 11:53 |
| 21 | | put that agreement in front of him and point to the |
| 22 | | confidentiality clause and ask him whether he read it and |
| 23 | | understood that clause and he understood what his |
| 24 | | obligations were in that regard, that's fine, but just to |
| 25 | | be asking him these broad questions and trying somehow to | 11:53 |

EXHIBIT _14_ PAGE _166_

| | | |
|---|---|---|
| 1 | | set him up -- set him up in a trap is inappropriate. | 11:53 |
| 2 | Q | (By Mr. Quinn)  Your turn. |
| 3 | A | Can you restate the question? |
| 4 | Q | Yeah.  Anytime before your last day of employment did |
| 5 | | anybody at MGA tell you they wanted you to keep anything | 11:54 |
| 6 | | confidential or not share it with other people? |
| 7 | | MR. WICKHAM:  Objection, overbroad, |
| 8 | | misleading, ambiguous. |
| 9 | A | Not that I remember, no. |
| 10 | Q | (By Mr. Quinn)  Prior to the time this case was filed did | 11:54 |
| 11 | | anybody from MGA ever tell you you ought to keep something |
| 12 | | confidential? |
| 13 | A | What do you mean by "something"? |
| 14 | Q | Well, specifically anything relating to your activities |
| 15 | | regarding Bratz before your last day of Mattel employment | 11:54 |
| 16 | | or your communications with MGA before your last day of |
| 17 | | employment or the idea of MGA pursuing the Bratz project. |
| 18 | | Did anybody ever tell you that you ought to keep that |
| 19 | | confidential, again, before this case was filed? |
| 20 | | MS. CENDALI:  Objection to form. | 11:55 |
| 21 | | MR. WICKHAM:  Counsel, once again, he signed |
| 22 | | an agreement on October 4 which has a confidentiality |
| 23 | | provision to it.  Are you asking him whether -- besides |
| 24 | | the confidentiality obligations that he owes under that |
| 25 | | agreement with regard to matters that he was doing as part | 11:55 |

EXHIBIT _14_ PAGE _167_

CONFIDENTIAL                                         104

1   of his freelance design?  Are you asking something besides          11:55
2   that or are you asking including that?  And if you're
3   including that, then I would ask that you present the
4   agreement to him, ask him whether he complied with his
5   obligations under that agreement.  Otherwise you're             11:55
6   misleading.  You're attempting to set the witness up in an
7   improper trap.
8   Q   (By Mr. Quinn)  Your turn.
9   A   I don't recall.  I don't recall having any conversations
10      of this sort.                                                11:55
11  Q   All right.  Nobody ever said, you know, you really
12      shouldn't tell anybody about your Bratz-related activities
13      with MGA that you engaged in before your last day of
14      employment at Mattel?  Nobody ever said anything to that
15      effect to you; is that true?                                 11:56
16  A   To the best of my -- best of my knowledge, yes, that's
17      true.
18  Q   This meeting where you had the six people --
19  A   Yes.
20  Q   -- present --                                                11:56
21  A   Yes.
22  Q   -- Jasmine's there, Mr. Larian's there, how did that
23      meeting come to be set up?
24  A   That meeting was set up I think through Victoria after the
25      first meeting at which Mr. Larian was not present.- He was   11:56

EXHIBIT 14 PAGE 168

CONFIDENTIAL                                                                              106

```
 1      than 13.  What was the second part of your question?  I'm        11:57
 2      sorry.
 3    Q  (By Mr. Quinn)  I was trying to find out whether there --
 4      I had understood you to say that there was a set of 13
 5      drawings.  Did you refer to 13 drawings at one point this       11:58
 6      morning?
 7    A  I think I did.
 8    Q  Are you telling me now that that number is not accurate?
 9      That's just an estimate or --
10           MR. WICKHAM:  He referred showing 13                       11:58
11      drawings and having 13 drawings presented to Ms. Prince.
12           MR. QUINN:  Well, I don't think that's what
13      he said, but let's let the witness answer.
14    A  I think that that was just an estimate of how many
15      drawings.                                                       11:58
16    Q  (By Mr. Quinn)  So there were some number of drawings that
17      you created in the spring of 19 -- I'm sorry.  There are
18      some number of drawings that you created in 1998?
19    A  Yes.
20    Q  And you just don't know how many there are, there were in      11:58
21      that that you created in 1998?
22    A  No.  There were -- there were quite a few.
23    Q  All right.  You just don't know how many?
24    A  I don't know how many.
25    Q  Do you still have copies of all of those?                      11:58
```

EXHIBIT 14 PAGE 169

```
 1              MS. CENDALI:  Objection, vague.  Which        12:04
 2      agreement?
 3   A  I'm sorry.  Which agreement are you referring to?
 4   Q  (By Mr. Quinn)  Any agreement.  Was there any discussion
 5      that you had with her about the terms of any of your     12:04
 6      agreements with Mattel?
 7   A  I don't remember.
 8   Q  One way or the other?
 9   A  No.
10   Q  Did you give her any reassurance that this would -- the  12:05
11      activities that you were doing would not be a problem
12      under any agreement that you had with Mattel?  Did you say
13      that to her?
14   A  I don't remember if I said that to her but that was my
15      thought.  I thought that, you know, this was a project    12:05
16      that I had created while I was not employed with Mattel,
17      so I didn't think there would be a problem.
18   Q  And is that -- did you tell that to Victoria?
19   A  I may have.  I don't remember exactly.
20              (Pause in proceedings.)                          12:05
21   Q  (By Mr. Quinn)  Did you know a -- do you know a woman by
22      the name of Anna Rhee?
23   A  Yes.
24   Q  Who is she?
25   A  She was a face painter.  She was a friend of mine.       12:06
```

EXHIBIT 14 PAGE 170

CONFIDENTIAL                                          112

```
 1   Q   Where did you meet her?                          12:06

 2   A   I met her at Mattel.

 3   Q   Did you meet her in connection with your Mattel

 4       employment?

 5   A   Yes.                                             12:06

 6   Q   And when you met her was she employed by Mattel?

 7   A   Yes.

 8   Q   And when you left Mattel's employment was she still

 9       employed by Mattel?

10              MR. WICKHAM:  Objection, lacks foundation, 12:06

11       calls for speculation.

12   A   To the best of my knowledge, no.  She was a freelancer.

13   Q   (By Mr. Quinn)  So at some point had her situation

14       converted from an -- from an employee to an independent

15       contractor?                                      12:06

16              MR. WICKHAM:  Objection, lacks foundation,

17       calls for speculation.

18   A   To the best of my knowledge that's what happened.

19   Q   (By Mr. Quinn)  And how did you learn that?

20   A   I think that at some point in time she told me that she 12:06

21       was going to be leaving.

22   Q   Do you recall when that was?

23   A   No, I don't.

24   Q   Do you recall the year?

25   A   No, I don't.                                     12:07
```

EXHIBIT 14 PAGE 171

CONFIDENTIAL                                    113

```
1    Q   You don't even know if it was 2000 or 1999 or 1998?        12:07
2    A   I would be guessing.  I don't remember.
3    Q   Guess.  What would your guess be?
4                   MS. CENDALI:  Objection.
5                   MR. WICKHAM:  Objection, instruct the           12:07
6        witness not to respond.
7                   MR. QUINN:  That's an objection to the form.
8        Of course, the testimony is supposed to be taken subject
9        to the objection.
10   Q   (By Mr. Quinn)  So what's your guess?                      12:07
11                  MR. WICKHAM:  I'm not going to have my
12       witness guess on the record, Counsel.
13   Q   (By Mr. Quinn)  What's your best approximation?
14   A   All I know is that she left sometime before I left the
15       first time.                                                12:07
16   Q   Okay.  So you left the first time in '98?
17   A   I left in late 1997.
18   Q   All right.  So your Mattel employment overlapped with hers
19       during the time of your first stint at Mattel; is that
20       true?                                                      12:08
21   A   Yes.
22   Q   And can you give us an idea of the kinds of projects the
23       two of you had worked together on while you were both
24       employed by Mattel?
25   A   We didn't work on any projects together.                  12:08
```

EXHIBIT 14 PAGE 122

<u>CONFIDENTIAL</u>                                        124

1   A   No.                                                          12:23

2   Q   You never told anybody that?

3   A   No.                          -

4   Q   Did -- yesterday did you review any documents to refresh

5       your recollection?                                          12:23

6   A   Yes.

7   Q   What documents did you review?

8               MR. WICKHAM:   I'm going to take a brief

9       break to make sure --

10              MR. QUINN:   No, not with a question pending.        12:23

11              MR. WICKHAM:   -- he's not going to be

12      revealing any privileged information.

13              MR. QUINN:   No.

14  Q   (By Mr. Quinn)   I'm just asking what documents you

15      reviewed to refresh your recollection yesterday.            12:24

16              MR. QUINN:   With a question pending, you

17      really can't take the witness out of the room.

18              MR. WICKHAM:   I want to be sure that the

19      witness does not communicate any privileged communication.

20      I am going to take a brief break solely for the purpose of   12:24

21      ensuring that no privileged information is going to be

22      divulged by the witness.

23              MR. QUINN:   This is completely improper but

24      consistent.

25              VIDEOGRAPHER:   Off the record.   The time is        12:24

EXHIBIT 14 PAGE 173

CONFIDENTIAL                                              125

1        12:24.                                                        12:24

2                      (Break in proceedings.)

3                      VIDEOGRAPHER:  Back on the record.  The

4        time's 12:26.

5                      MR. WICKHAM:  I'll object further to the        12:26

6        question on the grounds that it's vague and ambiguous.

7    Q   (By Mr. Quinn)  Did your counsel tell you what to say

8        during the break?

9                      MR. WICKHAM:  Objection.  Instruct the

10       witness not to respond, and I'd ask you that you need to     12:26

11       refrain from invading the attorney-client privilege.

12   Q   (By Mr. Quinn)  What documents did you review to refresh

13       your recollection?

14   A   There were no documents that refreshed my recollection

15       yesterday.  We just reviewed --                              12:26

16   Q   Go ahead.  Finish your answer.

17                     MR. WICKHAM:  No.  He's already responded to

18       the question, Counsel, and part of the problem was that he

19       did not understand what you meant by refreshing his

20       memory, which was why your question was vague and           12:27

21       ambiguous, but he has asked -- you have asked the

22       question, he has answered the question, and --

23                     MR. QUINN:  And you cut him off.

24                     MR. WICKHAM:  -- I suggest we please move

25       on.

EXHIBIT 14 PAGE 174

CONFIDENTIAL                                    126

1          MR. QUINN:  You raised your hand, made a          12:27

2    chopping motion and --

3          MR. WICKHAM:  Yes, because I don't want my

4    witness divulging any attorney-client privileged or work

5    product privileged communications, and I suspect that when    12:27

6    Mattel witnesses are being deposed in the case, you may

7    very well engage in similar activity and protecting the

8    privilege is something that you certainly must appreciate.

9    I'd suggest that we move on.

10   Q    (By Mr. Quinn)  So what documents did you review          12:27

11   yesterday --

12          MR. WICKHAM:  Objection.

13   Q    (By Mr. Quinn)  -- in connection with your preparation for

14   your deposition?

15          MR. WICKHAM:  Objection.  The witness has          12:27

16   already responded with regard to refreshing of his memory.

17   Instruct the witness not to respond as to what things may

18   be the subject of my work product and attorney-client

19   privileged communications with the witness.

20   Q    (By Mr. Quinn)  What did you review yesterday --          12:28

21          MR. WICKHAM:  Objection.  Same objection --

22   Q    (By Mr. Quinn)  -- to prepare for your --

23          MR. WICKHAM:  -- same instruction.

24   Q    (By Mr. Quinn)  -- deposition?

25          MR. WICKHAM:  Objection.  Same objection,          12:28

EXHIBIT 14 PAGE 175

1     same instruction.                                          12:28

2   Q   (By Mr. Quinn)  Did you review any documents yesterday to

3       prepare for your deposition?

4                MR. WICKHAM:  Objection.  Same objection.

5       Same objection, same instruction.                       12:28

6   Q   (By Mr. Quinn)  Did you review any documents last week to

7       prepare for your deposition?

8                MR. WICKHAM:  Objection.  If you had

9       reviewed any documents to refresh your memory on a fact,

10      then you can tell him about a document that you were shown 12:28

11      that refreshed your memory.  If you did not review any

12      documents for purposes of refreshing your memory, then I

13      instruct you not to respond on the attorney-client

14      privilege basis and the attorney work product doctrine.

15  Q   (By Mr. Quinn)  Pretty ridiculous, isn't it?           12:28

16               MS. CENDALI:  No.  Counsel is ridiculous.

17               MR. QUINN:  Don't stop him from answering.

18               MR. WICKHAM:  Listen.  Listen.  We're going

19      to take a lunch break now.

20               MR. QUINN:  You just again --                  12:28

21               MR. WICKHAM:  We're going to take a lunch

22      break right now because I don't appreciate you describing

23      my objections as ridiculous.  Your saying that is

24      improper, Counsel, and I would ask that you apply yourself

25      with the rules of civility that apply in the United States 12:29

EXHIBIT 14 PAGE 176

| | |
|---|---|
| 1 | District Court for the Central District of California and |
| 2 | those rules would not countenance your suggesting somehow |
| 3 | that I'm engaging in improper behavior.  If you believe |
| 4 | that I'm engaging in improper behavior, we can meet and |
| 5 | confer about that.  We can -- you are perfectly free to |
| 6 | seek a protective order, but I will not have you say |
| 7 | things that are demeaning, unprofessional during the |
| 8 | course of the deposition.  It's 12:30 right now.  We've |
| 9 | been going for three and a half hours.  I think it's time |
| 10 | for a lunch break. |
| 11 | MR. QUINN:  Before you started that speech |
| 12 | you once again stopped the witness from answering.  You |
| 13 | once again raised your hand.  He was about to answer and |
| 14 | you once again stopped him from answering the question. |
| 15 | MR. WICKHAM:  You -- he was about to |
| 16 | respond -- |
| 17 | MR. QUINN:  Apparently by your -- your view |
| 18 | of the world that's an okay thing for a lawyer to do and |
| 19 | by my view it's not. |
| 20 | MR. WICKHAM:  Counsel, he was about to say |
| 21 | some question -- say some statement after you had just |
| 22 | said "pretty ridiculous," and your statement in that |
| 23 | regard is unprofessional and is improper and I would ask |
| 24 | that you refrain from engaging in such unprofessional |
| 25 | conduct. |

12:29
12:29
12:29
12:29
12:30
12:30

**EXHIBIT 14 PAGE 177**

CONFIDENTIAL                                    129

1          MR. QUINN:  Well, I would like to continue       12:30

2     with the deposition now, but if you're walking out of the

3     room, I'm not going to tackle you.

4          MR. WICKHAM:  Well, it's 12:30 right now.

5          MR. QUINN:  And I'm not ready to break.           12:30

6          MR. WICKHAM:  Well, I think that the witness

7     is ready to take a break.

8          MR. QUINN:  You can read his mind?

9          MR. WICKHAM:  Are you asking me to divulge

10    my privileged communications once again, Counsel, because  12:30

11    at some point in time you may have to understand that I --

12    I won't be doing that and I'm not going to allow my

13    witness to do that.  Mr. Bryant, do you want to take a

14    lunch break right now?

15         THE WITNESS:  That would be fine with me.         12:30

16         MR. QUINN:  All right.  I would like to

17    continue with the deposition.  I mean, I believe in taking

18    lunch breaks, but I'm not ready right now to take a break.

19         MR. WICKHAM:  Okay.  When do you intend on

20    taking a lunch break?                                   12:30

21         MR. QUINN:  Well, you know, within the next

22    15, 20 minutes?

23         MR. WICKHAM:  Can you go for another 15 or

24    20 minutes.

25         THE WITNESS:  I can go for another 15             12:31

**EXHIBIT 14 PAGE 178**

CONFIDENTIAL                                            130

```
 1      minutes, sure.                                        12:31
 2                  MR. QUINN:   Thank you.
 3    Q   (By Mr. Quinn)  Did any of the documents you reviewed
 4      yesterday refresh your recollection on anything?
 5                  MR. WICKHAM:   Counsel, asked and answered.  12:31
 6      I'll instruct the witness not to respond.
 7                  MR. QUINN:   No.  Actually, that question I
 8      did not ask.
 9                  MR. WICKHAM:   You did.  Let's move on.
10    Q   (By Mr. Quinn)  Did any of the documents you reviewed last  12:31
11      week refresh your recollection?
12                  MR. WICKHAM:   Objection, asked and answered.
13      Instruct the witness not to respond.
14    Q   (By Mr. Quinn)  How did you come to learn that MGA
15      intended to show the Bratz doll at the Hong Kong and New  12:31
16      York toy fairs?
17    A   I don't recall the conversation or who it was that told me
18      that it was going to be shown.
19    Q   Did you ever tell any of the -- did you -- before you cut
20      your deal -- or before you reached your agreement with  12:32
21      MGA, did you learn that MGA intended to show the Bratz
22      doll at the Hong Kong and New York toy fairs?
23    A   No, not at all.
24    Q   Before you signed your agreement with MGA did you ever
25      tell any of the potential Bratz vendors that MGA intended  12:32
```

EXHIBIT 14 PAGE 179

CONFIDENTIAL                                                      131

1    to show the Bratz doll at the New York Toy Fair?          12:32

2              MR. WICKHAM:  Could the reporter please read

3    back the question.

4              COURT REPORTER:  "Before you signed your

5    agreement with MGA did you ever tell any of the potential   12:32

6    Bratz vendors that MGA intended to show the Bratz doll at

7    the New York Toy Fair?"

8              MS. CENDALI:  Objection.  What's the Bratz

9    vendor?

10   A   Yeah.  What do you mean by "Bratz vendors"?           12:33

11   Q   (By Mr. Quinn)  Any supplier, any company that may be

12       providing product for the Bratz doll.

13   A   What do you mean by "providing product"?  I'm not -- I

14       don't understand your question.

15   Q   Like anything that you might use, any of the physical   12:33

16       components that you might use to create a doll, whether

17       it's, you know, rubber, paint, hair, anything like that.

18              MS. CENDALI:  Objection, form.

19   A   No, I did not.

20   Q   (By Mr. Quinn)  All right.  So just to address counsel's   12:33

21       objection, just to make sure we have a question and

22       answer, you never told any potential vendor for the Bratz

23       doll that it was MGA's intention to show the Bratz doll at

24       the New York Toy Fair prior to the time that you reached

25       your agreement with MGA; is that true?              12:34

EXHIBIT 14 PAGE 180

CONFIDENTIAL                                                    139

1                MS. CENDALI:  Objection.                          12:43

2    A   I don't recall.

3    Q   (By Mr. Quinn)  Did you review any yesterday?

4                MR. WICKHAM:  Objection.  If you reviewed

5    any documents in connection with preparation for your       12:43

6    deposition for purposes of refreshing your memory -- you

7    know what, you've already asked this question about 14

8    times.  Objection, attorney-client privilege.  Instruct

9    the witness not to respond.  Harassing, burdensome.

10               MR. QUINN:  Okay.  On that note why don't we     12:44

11   break for lunch.

12               VIDEOGRAPHER:  We're off the record.  The

13   time's 12:40 --

14               MR. QUINN:  Wait.  Wait.  One hour enough?

15               MR. WICKHAM:  That's fine.                       12:44

16               MR. QUINN:  Okay.

17               VIDEOGRAPHER:  The time is 12:44.

18               (Break in proceedings.)

19               VIDEOGRAPHER:  Back on the record.  Time is

20       1:47.                                                    01:47

21   Q   (By Mr. Quinn)  Good afternoon, Mr. Bryant.

22   A   Good afternoon.

23   Q   You've told us this morning that you first came up with

24       the Bratz concept, as I understand it, in 1998; is that --

25   A   Yes.

EXHIBIT 14 PAGE 181

CONFIDENTIAL                                          140

| | | |
|---|---|---|
| 1 | Q | -- correct? |
| 2 | A | Yes. |
| 3 | Q | We've used the "Bratz" name.  Did you come up with the |
| 4 | | "Bratz" name as well? |
| 5 | A | Yes. |
| 6 | Q | And when did you come up with the name? |
| 7 | A | About the time of the creation of the Bratz.  About the |
| 8 | | same time. |
| 9 | Q | Can you tell me as best you can recall when it was that |
| 10 | | you created the Bratz? |
| 11 | A | Yes.  Let's see.  I was driving by a high school.  I |
| 12 | | believe it was on my way home from work, and there were -- |
| 13 | | the kids were getting out of school and I was just kind of |
| 14 | | struck by the way they looked.  They were wearing kind of, |
| 15 | | you know, oversized clothes, big, baggy jeans.  They had |
| 16 | | on backpacks and -- I don't know.  There was just |
| 17 | | something very interesting and exciting about their energy |
| 18 | | and just got me to kind of thinking, you know, wouldn't it |
| 19 | | be cool if there were some characters that kind of |
| 20 | | accurately represented today's teenager. |
| 21 | | And so when I got home I started doing a little bit |
| 22 | | of sketching and sketched some characters fairly quickly. |
| 23 | | I had also kind of been looking at magazines and things |
| 24 | | like that.  There were some advertising things that were |
| 25 | | going on at the same time that kind of all melded together |

01:47
01:47
01:47
01:48
01:48
01:49

EXHIBIT _14_ PAGE _182_