1  please?

2

3  22. **PAGE:    128:4 – 129:4**

4      Q.   By Mr. Jacoby:  And so it's true, then, that Mattel has used in its internal

5      investigations electronic documents that are older than four months old,

6      including emails?

7           Mr. Zeller:  I'm going to instruct the witness not to answer the

8      question.

9           Mr. Jacoby:  On what basis?

10          Mr. Zeller:  On the grounds of privilege and work product.

11          Mr. Jacoby:  I'm not asking for any communications.

12          Mr. Zeller:  You are asking for information that he has received

13     from counsel.

14          Mr. Jacoby:  That's not true.

15          Mr. Zeller:  That's exactly what -- you are asking about specific

16     instances in which misconduct was alleged.  And so that clearly is.

17          Mr. Jacoby:  He hasn't mentioned word one about an attorney.

18          Mr. Zeller:  That's because you haven't -- you haven't asked the

19     question.  But that's not the point.

20     Q.   By Mr. Jacoby:  Are you going to not --follow your attorney's instruction

21     and not answer?

22     A.   I'm going to follow my attorney's   instructions.

23  23. **PAGE:    139:2-16**

24     A.   I have no way of concluding whether Sandy was alone or not.

25     Q.   Is it the practice of Mattel that if an attorney presents it to an employee

26     that the attorney signs it as the witness?

27          Mr. Zeller:  I'm going to instruct the witness not to answer that

28     question.

16.

EXHIBIT 22 PAGE 363

1        Mr. Jacoby:  And you are not going to answer.  Okay.

2    Q.   Does H.R... –

3    Ms. Torres:  On what grounds.

4        Mr. Jacoby:  On what grounds?  Privilege?

5        Mr. Zeller:  On privilege and work product.  Because you are

6    obviously asking about instances in which there may be contemplated

7    litigation.

8  24.    **PAGE:    240:9 – 243:22**

9    Q.   What's his title?

10    A.   Matt Bousquette is President of Mattel Brands.

11    Q.  Do you know if he was involved in the rollout of the 2004

12  inventions and assignment agreement or the conflict of interest questionnaire

13        Mr. Zeller:  You can answer that "yes" or "no."

14    The Witness:  Yes.

15    Q.   By Mr. Jacoby:  Yes, you know?

16    A.   Yes, I know.

17    Q.   Was he involved?

18    A.   Yes.

19    Q.   What was the nature of his involvement?

20        Mr. Zeller:  I'm going to instruct the witness not to disclose in his

21  answer information that he has derived from counsel or communications with

22  counsel on that subject.

23        The Witness:  Communication derived from counsel.

24    Q.   By Mr. Jacoby:  So you can't answer?

25    A.   Correct.

26    Q.   Did you ever talk to Mr. Bousquette about the new agreements

27  without counsel present?

28

LITTLER MENDELSON
A Professional Corporation
501 W. Broadway
Suite 900
San Diego, CA 92101-3577
619.232.0441

17.

EXHIBIT 22 PAGE 364

1     A.    No.

2     Q.    Have you ever talked to anyone who is not a lawyer about the new

3 agreements?

4     A.    Not without the presence of counsel.

5     Q.    And what was counsel's role in these meetings?

6     Mr. Zeller:  I'm going to instruct the witness not to answer the

7 question as framed.

8     Q    By Mr. Jacoby:  Were these meetings held at the direction of

9 counsel?

10     Mr. Zeller:  You can answer that "yes" or "no" or "I don't know."

11     The Witness:  I don't know.

12     Mr. Jacoby:  Okay.

13     Q.    Do you know if counsel was participating to give legal advice to

14 the group?

15     Mr. Zeller:  Same instruction.

16     The Witness:  Not solely.

17     By Mr. Jacoby:  Okay.

18     Q.    What other things did counsel do besides give legal advice in these

19 meetings?

20     Mr. Zeller:  I'm going to instruct the witness not to answer that

21 question as framed.

22     Mr. Jacoby:  Well, Mr. Zeller, you know that in-house legal

23 counsel can act in a nonlegal capacity, and that's what I'm trying to get at.

24     Mr. Zeller:  Well, you are asking the question in a way, as you

25 know, that is designed to disclose the privileged information.

26     Mr. Jacoby:  I'm absolutely not trying to do that.

27     Mr. Zeller:  So you can ask the question in the proper way.

28

LITTLER MENDELSON
A Professional Corporation
101 W. Broadway
Suite 900
San Diego, CA 92101-3577
619.232.0441

18.

EXHIBIT 22 PAGE 365

1    Mr. Jacoby:  Can you –

2    Mr. Zeller:  That question is not proper.

3    Q.    By Mr. Jacoby:  Can you identify anything that counsel did at

4    these meetings regarding the 2004 agreements that was other than giving legal

5    advice?

6    A.    No.

7    Q.    Did counsel at those meetings offer their interpretation of the

8    agreement?

9    Mr. Zeller:  You can answer that "yes" or "no."

10   The Witness:  Yes.

11   Q. - .  By Mr. Jacoby:  What did you mean when you said "not solely"

12   Mr. Zeller:  That's the question I instructed on.  I'm instructing the

13   witness not to answer that question as framed.

14   Q.    By Mr. Jacoby:  Who -- who was the attorney who was in the

15   meetings that you were -- that you   attended?

16   Mr. Zeller:  You can state the person's name if you recall.

17   The Witness:  Don't recall.

18   Q.    By Mr. Jacoby:  Did the attorney articulate a business reason for

19   changing the agreements

20   Mr. Zeller:  The question lacks foundation.  I'm going to instruct

21   the witness not to answer the question as posed.

22   Mr. Jacoby:  Lacks foundation isn't a basis not to instruct.

23   Mr. Zeller:  No I'm instructing because your -- the way that you

24   are asking these questions is designed to elicit privileged communications.

25   You can ask the question in a proper way.  That question is not.

26   25.  **PAGE:**    **279:23 – 280:10**

27   Q.    By Mr. Jacoby:  Have you ever requested records -- phone records from

28

LITTLER MENDELSON
A Professional Corporation
501 W. Broadway
Suite 900
San Diego, CA  92101-3577
619.232.0441

19.

EXHIBIT 22 PAGE 366

1    I.T. and not been able to get them?

2        Mr. Zeller:  You can answer that "yes" or "no."

3        The Witness:  Yes.

4    Q.    By Mr. Jacoby:  How often has that occurred?

5    A.    Can't recall.

6    Q.    More than once?

7    A.    Yes.

8    Q.    Is it always because the records you were seeking were too remote in

9        time?

10       Mr. Zeller:  I'm going to instruct the witness not to answer the

11   question as framed.

12   26. **PAGE:**    **309:25-310:25**

13   Q.    By Ms. Torres:  Does Mattel Monitor its employees' activities after they

14       give notice of termination?

15       Mr., Zeller:  I'm going to object first of all the question is

16   overbroad.  Doesn't have a particular time period, is vague and

17   ambiguous.  Second, I'm going to instruct the witness not to answer the

18   question to the extent that it would disclose information that you have

19   received from counsel or communications with counsel.

20       The Witness:  I don't understand the question.

21   Q.    By Ms. Torres:  Well, an employee—you testified earlier an employee

22   sometimes give notice, two weeks' notice sometimes longer, before they

23   actually leave Mattel.  In those situations today does Mattel do anything

24   to monitor their employees' activities?

25       Mr. Zeller:  Again, I'm going to –

26   Q.    By Ms. Torres:  I mean other than what they do to monitor all

27   employees' activities.

28

LITTLER MENDELSON
A Professional Corporation
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

20.

EXHIBIT 22 PAGE 367

1        Mr. Zeller:  I'm going to, again, instruct you to exclude from your

2   answer any information that you received from counsel or

3   communications with counsel.

4        The Witness:  It depends.  And any further clarification would be

5   communications with counsel.

6

7   27. **PAGE:**    **328:1-12**

8     Q.   By Ms. Torres:  Does Mattel have in place any practice with respect to

9   the handling of -- of confidential information that a new Mattel employee

10   may have from a prior employer?

11   A.   Yes.  We do.

12   Q.   And what -- what is that practice?

13        Mr. Zeller:  I instruct the witness not to answer the question on the

14   grounds of privilege.

15        Mr. Jacoby:  how can practice be privileged?

16        The Witness:  I get that -- we developed that policy and

17   information from -- with -- in conjunction with the legal organization.

18   28. **PAGE:**    **135:25 – 137:3**

19   Q.   By Mr. Jacoby:  Is it your testimony that this document is presented to

20   Mattel employees by a Mattel lawyer?

21   A.   No.

22   Q.   Who do you know who presents this form of document to separating

23   Mattel employees?

24        Mr. Zeller:  Question is overbroad.

25        The Witness:  Depends.

26   Q.   By Mr. Jacoby:  What does it depend on?

27   A.   The circumstances of the employee separation.

28   Q.   Well, who -- under what circumstances would this document be

21.

LITTLER MENDELSON
A Professional Corporation
101 W. Broadway
Suite 500
San Diego, CA 92101-3577
619.232.0441

EXHIBIT *22* PAGE *368*

1   presented by a Mattel lawyer to a Mattel employee?

2         Mr. Zeller:  I'm going to instruct the witness not to answer that

3   question.

4         Mr. Jacoby:  It doesn't call for communication.  That's an improper

5   instruction.

6         Mr. Zeller:  No, it calls for the disclosure of information and advice

7   that this executive has received from legal counsel.

8   Q.   By Mr. Jacoby:  and you are going to follow your attorney's instruction

9   not to answer?

10  A.   Yes.

11  Q.   And I don't need to ask that again; right?

12  A.   Correct.

13  Q.   You'll always follow your attorney's instruction?

14  A.   Correct.

15  29.  **PAGE:    197:9-198:5**

16  Q.   Have you ever had any input on the contents of this agreement?

17  A.   Yes.

18  Q.   Tell me—

19  A.   Not this specific agreement, but on these agreements.

20  Q.   What input have you given during your tenure of employment about

21  these form of agreements?

22         Mr. Zeller:    To the extent that those were communications with

23  counsel concerning the content of the agreement I would instruct the

24  witness not to disclose those.

25  Q.   By Mr. Jacoby:  Well, I'm asking what you said, what your input is, and

26  that's asking for what you say.  I would suggest to you that that's not

27  privileged.  Because saying something to a lawyer doesn't make it

28

LITTLER MENDELSON
A Professional Corporation
501 W. Broadway
Suite 900
San Diego, CA 92101-3577
619.232.0441

EXHIBIT 22 PAGE 369

1  privileged.

2  Mr. Zeller:   It depends on what it is, counsel.  And what I'm

3  telling him is that he should not be disclosing his communications with

4  counsel

5  The Witness:  Obviously these were all communications with

6  counsel.

7

8  30. **PAGE:**     267:16 -268:4

9  Q.   By Mr. Jacoby:  Do you know from any source what the Mattel project

10  that was scrapped at the testing stage in 1998 refers to?

11  Mr. Zeller:  I will give you the admonition that you should exclude

12  from your answer any information that you learned from—solely from

13  counsel or any communication with counsel.

14  The Witness:  How about with that counsel?

15  Mr. Zeller:  Well, you shouldn't assume that you are actually

16  learning anything.

17  No disrespect intended.

18  But you shouldn't be taking what he says as necessarily being fact.

19  So I think the question as posed is confusing.

20  31. **PAGE:**    156:1 – 158:20

21  Q.   By Mr. Jacoby:  Are you aware that any people who work in your design

22  department create work at home for their own pleasure?

23  A.   Yes.

24  Q.   And that, in fact, occurs; correct?

25  A.   Correct.

26  Q.   And there's no policy at Mattel either in this agreement or any other

27  Mattel handbook or memo that requires them to show their homemade

28  artwork to Mattel while they are employed, is there?

23.

LITTLER MENDELSON
A Professional Corporation
501 W. Broadway
Suite 900
San Diego, CA 92101-3577
619.232.0441

EXHIBIT 22 PAGE 370

1        Mr. Zeller:  I'm going to instruct the witness not to answer the

2   question to the extent that it would reveal communications with counsel

3   or advice that you received from counsel.

4        Mr. Jacoby:  Okay.

5   Q.   I'll tell you as an employment lawyer -- and you should know it as the

6   head of H.R. -- that policies that you promulgate to employees are not

7   privileged.  So I'm asking you as the head of H.R. of a 35,000 employee

8   company are you aware of any policy at Mattel now or at any time since

9   '96 that requires employees to show Mattel artwork they create at home?

10        Mr. Zeller:  Same instruction.  Also can we have the question read

11   back.

12        The Witness:  can you repeat your instruction as well.

13        Mr. Zeller:  Yes, I will.

14   (Record read as follows:

15   "Question:  I'll tell you as an employment lawyer -- and you should know

16   it as the head of H.R. -- that policies that you promulgate to employees

17   are not privileged.  So I'm asking you as the head of H.R. of a 35,000

18   employee company are you aware of any policy at Mattel now or at any

19   time since '96 that requires employees to show Mattel artwork they create

20   at home?")

21        Mr. Zeller:  First of all, assumes facts not in evidence with respect

22   to the number of employees, which you have misstated.  Second, telling

23   the witness about what it is that you represent as  privileged or not is

24   utterly irrelevant and makes the question incoherent. why don't you just

25   ask the question you are asking.

26   32. **PAGE     328:16-329:9**

27   Q.   When was the last time you implemented that practice?  I don't mean –

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
101 W. Broadway
Suite 900
San Diego, CA 92101-3577
619 232 0441

EXHIBIT _22_ PAGE _371_

1   sort of generally speaking, is it recently?  Several months ago?

2   A.   It's been in place for awhile.

3        Mr. Jacoby:  And you are instructing not to testify what the

4   practice is?

5        Mr. Zeller:  As to the substance of it, yes.

6        Ms. Torres:  On the grounds of privilege.

7        Mr. Zeller:  As well as the fact that it's absolutely irrelevant to this

8   case.  But you can go ahead.

9        Ms. Torres:  You are not instructing him on the ground of

10  relevance, you are instructing him on the grounds of privilege?

11       Mr. Zeller:  I am instructing him on the grounds of privilege, that is

12  correct.  I'm also pointing out that this is particularly improper because

13  of its absolutely irrelevant nature of this case.

14       Ms. Torres:  I disagree.

15  **II.**

16  **IMPROPER INSTRUCTIONS BASED ON NON-PRIVILEGE OBJECTIONS**

17  33.  PAGE:      111:1-112:9

18  A.   You will have—

19       Mr. Zeller:  Object to the form of the question.

20       The Witness:  You will have to repeat the question.

21       Mr. Jacoby:  Okay.

22  Q.   What I'm trying to do is I'm trying to find out the first time that you

23  consulted with legal about Mr. Bryant's possible misappropriation of

24  Mattel's property.  Now, we've talked about the anonymous letter that

25  led to the conversation with Legal.  Let me finish.  We've also talked

26  about several conversations with other Mattel employees who you don't

27  specifically recall that deal with Mr. Bryant's possible misappropriation

28

EXHIBIT 22 PAGE 370

65. **PAGE:** __276:16 – 22__

Q.   Does Mattel use vendors in connection with Barbie that other toy companies use?

Mr. Zeller:  Question lacks foundation, is overbroad.  Clearly outside the witness's knowledge. I don't know why you are wasting an executive's time on areas outside of his responsibilities.

The Witness:  I have no idea.


Dated: March 28, 2007                          Respectfully submitted,

DOUGLAS A. WICKHAM
KEITH A. JACOBY

DOUGLAS A. WICKHAM
LITTLER MENDELSON
A Professional Corporation
Attorneys for CARTER BRYANT

Firmwide:82195156.2 028307.1010

46.

EXHIBIT 22 PAGE 373

**Exhibit  23**

1  DOUGLAS A. WICKHAM, Bar No.127268
   dwickham@littler.com
2  KEITH A. JACOBY, Bar No. #150233
   kjacoby@littler.com
3  LITTLER MENDELSON
   A Professional Corporation
4  2049 Century Park East, 5th Floor
   Los Angeles, CA 90067.3107
5  Telephone: (310) 553-0308
   Facsimile: (310) 553-5583
6  Attorneys for Carter Bryant

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

| 11  CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-09059 and 05-02727) |
|---|---|
| 12          Plaintiff, | |
| 13  v. | **DISCOVERY MATTER** |
| 14  MATTEL, INC., a Delaware Corporation, | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006]** |
| 15          Defendant. | |
| 16 | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF CARTER BRYANT TO OVERRULE INSTRUCTIONS NOT TO ANSWER DURING THE DEPOSITION OF ANN DRISKILL, TO COMPEL ANSWERS TO THOSE QUESTIONS, AND FOR SANCTIONS** |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | Date: To Be Determined<br>Time: To Be Determined<br>Place: Telephonic |
| 22 | |
| 23 | Discovery Cut-Off: October 31, 2007<br>Trial Date: February 12, 2008 |
| 24 | |
| 25  CONSOLIDATED WITH MATTEL, INC. v. BRYANT and | Judge: Hon. Stephen G. Larson |
| 26  MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |
| 27 | |

27            **CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

3-28

EXHIBIT 23 PAGE 374

B.   **Counsel for Mattel Obstructed the Deposition of Ann Driskill**

1.   **Mattel's Counsel Relied On Improper Privilege Instructions**

Several of Mattel's instructions not to answer, which were purportedly based on the attorney-client privilege, were asserted in connection with questions that did *not* ask for the substance of communications between attorney and client. For example, one frequent privilege instruction came after "yes" or "no" questions that did *not* call for the disclosure of attorney-client privilege communications. The following excerpt is illustrative.

> Q (Mr. Jacoby): Did Mr. Zeller show [the document] to you this week?
>
> (Mr. Zeller): I'm going to instruct the witness not to answer the question as framed.
>
> (Mr. Jacoby): Are you going to follow your attorney's instruction?
>
> The Witness: Yes.

(Wickham Decl., ¶ 8, Exh. B at 114:6-11).

Similarly, Mattel's counsel repeatedly relied on improper blanket "privilege" instructions to shield from discovery the answer to "yes" or "no" questions that reveal the underlying *facts* of the subject matter at issue, without any indication that the question called for the disclosure of attorney-client communications. The following excerpt is illustrative.

> Q: Okay. Had you heard – or have you heard that anyone else at Mattel was questioned about Carter Bryant prior to the lawyers coming around and possibly talking to people in connection with this lawsuit?
>
> A: I'm going to instruct the witness not to disclose in her answer information that she's obtained from counsel.
>
> The Witness: No.

(Wickham Decl., 8 ¶, Exh. B at 314:5-13).

At bottom, Mattel's counsel's improper privilege instructions obstructed the deposition of Driskill by preventing her from testifying about facts and issues directly relevant to the claims and defenses in this matter. As such, the Discovery Master

4.

EXHIBIT 23 PAGE 375

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

1  should overrule Mattel's counsel's baseless instructions not to answer, and compel her

2  to respond to those questions.

3

4      2.    **Mattel's Counsel Relied On Improper Non-Privilege Instructions**

5      Contrary to California Code of Civil Procedure section 30(d)(1), Mattel's

6  counsel repeatedly instructed Driskill not to answer questions based upon non-

7  privilege objections such as lack of foundation, relevance, "asked and answered," and

8  "wasting time."  For instance, Mattel's counsel instructed or objected to questions

9  based on a purported "lack of foundation" at least 157 times, "vague and ambiguous"

10 at least 67 times, "asked and answered" at least 34 times, "waste of time" at least 14

11 times, and "relevance" at least 8 times.  (Wickham Decl., ¶ 9).

12     Throughout the deposition of Driskill, Mattel's counsel repeatedly refused to

13 permit Driskill to answer questions about Mattel's employment agreements, including

14 its "Confidential Information and Inventions Agreement," which is directly at issue in

15 this lawsuit.  (Wickham Decl., ¶ 8, Exh. B).  According to Driskill's own testimony,

16 during her 11 year tenure as an employee of Mattel, she had previously signed, or

17 declined to sign, several versions of this agreement and, as Bryant's former supervisor

18 and manager at Mattel, she was involved in administering Mattel's employment

19 policies, including the enforcement of this agreement.  (Wickham Decl., ¶ 8, Exh. B).

20 Nonetheless, Mattel's counsel blocked any questioning about her knowledge of such

21 agreements, instead objecting and instructing Driskill not to answer on the grounds

22 that the questions "lacked foundation."  (Wickham Decl., ¶ 9. Exh. B).  The following

23 excerpts are illustrative:

24     Q (Mr. Jacoby):    Do you understand what that paragraph [in the
25     Proprietary Information Check-Out Form] means?

26     (Mr. Zeller):   I'm instructing the witness not to answer the
       question. Let's move on, counsel.

27
       (Mr. Jacoby):  On what grounds? Privilege?

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles CA 90067-3107
310 553 0308

5.

EXHIBIT 23 PAGE 374

**III.**

**ARGUMENT**

A.   **Mattel's Counsel's Privilege Instructions Were Wholly Improper**

      1.   **Mattel's Counsel Improperly Asserted Privilege Instructions Not to Answer Questions That Did *Not* Call For The Disclosure of Attorney-Client Communications**

The attorney-client privilege protects from discovery only those "confidential communications" between a client and his attorney.  <u>Clarke v. American Commerce Nat'l. Bank</u>, 974 F.2d 127, 129 (9th Cir. 1992); <u>U.S. v. Friedman</u>, 445 F.2d 1076, 1085 (9th Cir. 1971); see also Cal. Evid. Code § 952 ("confidential communication" is "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client").  The party asserting the privilege has the burden of establishing that the privilege exists.  <u>U.S. v. Munoz</u>, 233 F.3d 1117, 1128 (9th Cir. 2000).

Here, several of Mattel's counsel's instructions not to answer, that were purportedly based on the attorney-client privilege, were asserted in connection with questions that did *not* ask for the substance of communications between attorney and client, such as "yes" or "no" questions.  As such, Mattel's counsel clearly exceeded the proper boundaries of the attorney-client privilege.  The following excerpt is illustrative.

    (Mr. Jacoby):  Do you recall ever seeing this document before today?

    (Mr. Zeller):  I'm going to instruct the witness to exclude in the instances if she has seen it only from – during the course of conversations with counsel.

(Wickham Decl., ¶ 8, Exh. B at 114:13-18).

Similarly, Mattel's counsel repeatedly relied upon improper "privilege" instructions to shield the underlying *facts* from discovery, even where no attorney-

15.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

EXHIBIT 23 PAGE 377

1    client communications were involved.  Initially, Mattel's counsel did not properly
2    assert the work product doctrine in the vast majority of his instructions, citing only a
3    purported attorney-client privilege.  Even if he had asserted the work product doctrine,
4    however, the mere fact that a witness reveals facts to a lawyer or learns facts from a
5    lawyer does not make such facts privileged.  "[C]ourts have consistently held that the
6    work-product concept furnishes no shield against discovery . . . by deposition, *of the*
7    *facts* that the adverse party's lawyer has learned, or the persons from whom he has
8    learned such facts, or the existence or non-existence of documents, even though such
9    documents themselves may not be subject to discovery."  Nutmeg Insurance Co. v.
10   Atwell, Vogel & Sterling, et al., 120 F.R.D. 504, 509 (W.D. La. 1988) (*citing* 8
11   Wright & Miller, Federal Practice & Procedure, § 2023, at 194 (1970)) (emphasis
12   added); Resolution Trust Corp., 73 F.3d at 266 ("Because the work product doctrine is
13   intended only to guard against divulging the attorney's strategies and legal
14   impressions, it does not protect *facts* concerning the creation of work product or *facts*
15   contained within work product.") (emphasis added).

16        In essence, Mattel's counsel improperly asserted blanket "privilege" objections
17   to prevent Kaye from testifying about the underlying *facts* and practices of Mattel,
18   even when the questions posed called for a "yes" or "no" response that did not in any
19   way call for an attorney's strategies or legal impressions.  For instance:

20        Q: Okay.  Had you heard – or have you heard that anyone else at
          Mattel was questioned about Carter Bryant prior to the lawyers coming
21        around and possibly talking to people in connection with this lawsuit?

22        A: I'm going to instruct the witness not to disclose in her answer
          information that she's obtained from counsel.
23
          The Witness: No.
24
     (Wickham Decl., ¶ 8, Exh. B at 314:5-13).
25
          Accordingly, because Mattel's counsel flagrantly abused the discovery process
26
     by asserting blanket "privilege" instructions that consistently exceeded the scope of
27
     the privilege, his improper instructions should be overruled.
28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

16.

EXHIBIT 23 PAGE 378

1    reckless disregard for the attorney's duty to the court." Braley v. Campbell, 832 F.2d

2    1504, 1512 (10th Cir. 1987).   Instructing a witness not to answer questions at a

3    deposition on the basis of relevance, and objecting on work product grounds to

4    questions that clearly did not call for work product material, has been found to be

5    conduct that "viewed objectively, manifested intentional or reckless disregard of the

6    attorney's duties to the court" and warrants sanctions against the attorney under

7    Section 1927. Resolution Trust Corp., 73 F.3d at 266.

8         In sum, there is no excuse for Mattel's counsel's behavior, and it should not be

9    tolerated by this Court.

## IV.
## CONCLUSION

10

11        Based on the foregoing, Bryant respectfully requests that the Discovery Master

12   (1) overrule the improper instructions not to answer that Mattel's counsel asserted

13   throughout the deposition of Driskill, and compel her to answer those questions; (2)

14   instruct counsel for Mattel to refrain from coaching the witness (or any other

15   witnesses); and (3) impose sanctions against Mattel and/or its counsel due to Mattel's

16   counsel's pervasive obstructionist tactics used to thwart a fair examination of Driskill.

17   Bryant respectfully asks this Court to award sanctions in the amount of $9,152.25 to

18   compensate him for his reasonable costs and attorney's fees incurred in connection

19   with bringing this motion.

20

21   Dated: March 28, 2007              Respectfully submitted,

22                                      DOUGLAS A. WICKHAM
                                        KEITH A. JACOBY
23

24

25                                      DOUGLAS A. WICKHAM
                                        LITTLER MENDELSON
26                                      A Professional Corporation
                                        Attorneys for CARTER BRYANT
27   Firmwide:82251394.2 028307.1010

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

25.

EXHIBIT 2³ PAGE 37⁹

**Exhibit  24**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

March 23, 2007

VIA FACSIMILE AND U.S. MAIL

Douglas Wickham, Esq.
Littler Mendelson, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California 90067

Re:    Mattel v. Bryant

Dear Doug:

I write in connection with our telephonic conference on Tuesday, March 20, 2007, regarding Carter Bryant's contemplated motion to compel further deposition testimony from Ann Driskill and Alan Kaye.

On the call, I asked you to identify which specific instructions Bryant intends to move on. Bryant has not provided Mattel with a list of relevant pages and lines or questions and answers in any meet and confer letter or otherwise. You declined on the call to provide that information and stated instead that Bryant intends to move on all "improper" instructions and objections at the depositions. Of course, Mattel does not know which instructions and objections Bryant deems improper. That is why it would be helpful if you would provide the requested list of questions and answers for Mattel's consideration. You referred Mattel to Bryant's February 2005 motion on these depositions, but, as I stated, that motion does not provide specificity about what Bryant now thinks is objectionable; indeed, it does not even include citations to the transcript of the deposition. And, as discussed below, much of that motion involved admonitions that Bryant's counsel has conceded, and MGA's counsel has also argued, were consistent with privilege law. In our view, Bryant's failure to identify the questions and answers that will be the subject of a

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

EXHIBIT 24 PAGE 380

motion is not consistent with his obligations to attempt to resolve these issues in good faith without the need for motion practice.[1]

We also discussed whether facts or information known to an individual exclusively through communications with counsel are discoverable or are privileged from disclosure. This was perhaps the main issue that Bryant raised in his 2005 motion. As Mattel made clear in its motion to compel instructions not to answer made at the Bryant deposition, Mattel agrees that facts a witness knows *only* through communications with counsel are protected from disclosure. I reminded you that Bryant's counsel acknowledged that same point at the Kaye deposition in his witness admonitions. Bryant's counsel also gave dozens of similar admonitions to Bryant during his deposition, and Mattel did not move to overrule such admonitions.

Nonetheless, you would not take any clear position on this issue during the call. Instead, you stated that Bryant intends to move on "everything that Mattel moved on" in the Bryant deposition motion. That is ambiguous, because we appear to disagree on what Mattel's motion covered. You suggested that Objections 9, 21, 23, 26, 29, 32-37, 45-49 in Mattel's motion to overrule instructions not to answer at the Bryant deposition were comparable "limited instructions" on which Mattel moved to compel. That is incorrect. These were, by and large, *not* limited admonitions of the type at issue here, but instead were categorical instructions not to answer. Moreover, some of these were expressly withdrawn by Mattel from its motion because they were inadvertently included (Nos. 26, 32, 36) and therefore not the subject of the Order granting Mattel's motion. As I stated on our call, if Bryant moves to compel on questions seeking information that a witness knows only through communications with counsel, Mattel will file another motion to overrule those same admonitions at the Bryant deposition, which Mattel avoided putting at issue in the motion it filed.

I thought going into our call that it might be possible to resolve many of the parties' disputes without the need for motion practice. As I mentioned during the call, we would be willing to consider bringing one or more witnesses back for limited questioning in the event that Bryant could identify particular answers that he believed were not adequately answered because of an unwarranted instruction or admonition. However, Bryant's failure to specify the particular questions and instructions at issue rendered that impossible.

Further, when I asked what relief Bryant sought, you insisted on a broad stipulation and order overruling all "improper" instructions not to answer and objections (although, as discussed, at this point Mattel does not know which instructions and objections Bryant believes are improper), requiring Mattel to adhere to <u>Rule</u> 30, and requiring the deponents to sit for an unspecified amount of additional deposition time. Indeed, Bryant appears to plan to move for an order overruling not just *instructions*, but also *objections*, and hence finding certain answers to be admissible at trial. It is doubtful that such rulings on admissibility would be appropriate on a

---

[1]   Your refusal to identify which instructions, admonitions and/or objections Bryant intends to move on is particularly puzzling since you stated on our call that Bryant intends to prepare a separate statement that sets them forth.

EXHIBIT 24 PAGE 381

discovery motion, and in any event such a request clearly would be inappropriate and premature at this stage of the litigation.

Please do not hesitate to contact me if you have any questions or concerns.

Very truly yours,

B. Dylan Proctor

cc:  Jim Jenal, Esq.

07209/2086483.1

07209/2086483.1

3

EXHIBIT 24 PAGE 382

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100



### LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

DATE:    ~~January 9, 2007~~   *March 23, 2007*

NUMBER OF PAGES, INCLUDING COVER: 2

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Douglas A. Wickham, Esq.<br>**Littler Mendelson** | (310) 553-0308 | (310) 553-5583 |
| James Jenal, Esq.<br>**O'Melveny & Myers, LLP** | (213) 430-6000 | (213) 430-6407 |

FROM:    B. Dylan Proctor

RE:      *Mattel, Inc. v. Bryant*

MESSAGE:



07209/2042625.1

| CLIENT # | 07209 | ROUTE/<br>RETURN TO: | ~~Mia Albert/3rd Floor~~ | ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED?  ☐ No  ☐ Yes: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT 24 PAGE 383

03/23/2007 17:50 FAX 213624064?     QEUOH-LA0     ☒001

```
*********************
***   TX REPORT   ***
*********************


TRANSMISSION OK

TX/RX NO              1480
RECIPIENT ADDRESS    76399#7209#13105535583
DESTINATION ID
ST. TIME             03/23 17:49
TIME USE             01'04
PAGES SENT           4
RESULT               OK
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

# FACSIMILE TRANSMISSION

DATE: ~~January 9, 2007~~ *March 23, 2007*

NUMBER OF PAGES, INCLUDING COVER: 2

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Douglas A. Wickham, Esq.<br>Littler Mendelson | (310) 553-0308 | (310) 553-5583 |
| James Jenal, Esq.<br>O'Melveny & Myers, LLP | (213) 430-6000 | (213) 430-6407 |

FROM:     B. Dylan Proctor

RE:     *Mattel, Inc. v. Bryant*

MESSAGE:

*Proctor*

EXHIBIT 24 PAGE 384

03/23/2007 17:56 FAX  21362406¹²      QEUOH-LAO                    Ø001

```
                          ************************
                          ***    TX REPORT   ***
                          ************************

          TRANSMISSION OK

          TX/RX NO              1481
          RECIPIENT ADDRESS     9414#07209#12134306407
          DESTINATION ID
          ST. TIME              03/23 17:55
          TIME USE              01'07
          PAGES SENT            4
          RESULT                OK
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
# FACSIMILE TRANSMISSION

DATE:    ~~January 9, 2007~~ March 23, 2007        NUMBER OF PAGES, INCLUDING COVER: 2

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Douglas A. Wickham, Esq. Littler Mendelson | (310) 553-0308 | (310) 553-5583 |
| James Jenal, Esq. O'Melveny & Myers, LLP | (213) 430-6000 | (213) 430-6407 |

FROM:    B. Dylan Proctor

RE:    *Mattel, Inc. v. Bryant*

MESSAGE:

D...t   EXHIBIT 24 PAGE 385

**Exhibit  25**

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6                    UNITED STATES DISTRICT COURT

7                    CENTRAL DISTRICT OF CALIFORNIA

8                          EASTERN DIVISION

9

10

11  CARTER BRYANT, an individual,        CASE NO. C 04-09049 SGL (RNBx)
                                         JAMS Reference No. 1100049530
12             Plaintiff,

13        v.                             Consolidated with
                                         Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,   Case No. CV 05-2727

15             Defendant.                ORDER GRANTING IN PART
                                         BRYANT'S MOTION TO OVERRULE
16                                       INSTRUCTIONS NOT TO ANSWER
                                         DURING THE DEPOSITION OF ALAN
17                                       KAYE, TO COMPEL KAYE TO
                                         ANSWER THOSE QUESTION, AND
18                                       FOR SANCTIONS

19  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
20  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
21

22        Having considered Carter Bryant's Motion to Overrule Instructions Not to Answer During

23  the Deposition of Alan Kaye, to Compel Kaye to Answer Those Questions, and for Sanctions (the

24  "Motion"), and all other papers filed in opposition to or in connection therewith, and finding good

25  cause therefore,

26        IT IS HEREBY ORDERED that:

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                              1

EXHIBIT 25 PAGE 380

1.      Each of the instructions not to answer or to limit a deposition question marked as "Overruled" in Exhibit "A" to this Order is hereby overruled.  Alan Kaye is ordered to answer those questions and reasonable follow up questions at a further deposition.

2.      Although Mattel's counsel is entitled to make evidentiary objections consistent with Rule 32, Fed.R.Civ.P., there were numerous instances in which Mattel's counsel failed to comply with the requirements of Rule 30(d)(1), Fed.R.Civ.P., by failing to state an objection concisely and in a non-argumentative and non-suggestive manner, or by instructing the deponent not to answer based upon an objection other than privilege.

3.      Mattel's counsel impeded, delayed, and frustrated the fair examination of Mr. Kaye.  Therefore, Mattel is ordered to re-produce Mr. Kaye for his deposition for an additional four (4) hours so that Bryant's counsel can resume questioning Mr. Kaye on all areas that Bryant's counsel previously attempted to cover in his prior deposition.  During the deposition, Mattel's counsel shall strictly comply with Rule 30(d)(1), Fed.R.Civ.P.

4.      Because some, but not all, of counsel's objection and violations of Rule 30(d)(1) were without substantial justification, Bryant's request for sanction is granted in part in the amount of $2,000 pursuant to Rule 30(d)(3), Fed.R.Civ.P.  These sanctions shall be paid within fourteen (14) days of the date of this Order by check to be personally delivered to counsel for Bryant.

5.      The parties shall meet and confer to schedule the resumption of Mr. Kaye's deposition, which shall occur at a mutually convenient date and time no later than thirty (30) days of the date of this Order.

6.      Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Bryant shall file this Order with the Clerk of Court forthwith.

Dated:   ___May 4_____, 2007

                                          /s/Edward A. Infante
                                          _____
                                          HON. Edward Infant (Ret.)
                                          Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT 25 PAGE 381

# EXHIBIT "A"

## INSTRUCTIONS NOT TO ANSWER

## BASED ON ATTORNEY-CLIENT PRIVILEGE

| | PAGE/LINE | ASSERTED BASIS FOR BLANKET INSTRUCTION OR LIMITING INSTRUCTION | RULING |
|---|---|---|---|
| 1. | 24:25-25:11 | Attorney-Client Privilege | Sustained |
| 2. | 26:16-27:8 | Attorney-Client Privilege | Overruled |
| 3. | 30:6-31:14 | Attorney-Client Privilege | Sustained |
| 4. | 32:19-33:18 | Attorney-Client Privilege | Sustained |
| 5. | 35:25-36:10 | Attorney-Client Privilege | There is no question pending. |
| 6. | 41:14-24 | Attorney-Client Privilege | Overruled |
| 7. | 43:2-19 | Attorney-Client Privilege | Withdrawn from Bryant's motion. |
| 8. | 170:20-171:8 | Attorney-Client Privilege | Overruled |
| 9. | 218:2-10 | Attorney-Client Privilege | The witness answered the question later in the deposition. |
| 10. | 103:25-106:23 | Attorney-Client Privilege | Sustained |
| 11. | 366:5-366:13 | Attorney-Client Privilege | Overruled |
| 12. | 48:17-49:6 | Attorney-Client Privilege and Work Product | Overruled |
| 13. | 49:8-53:16 | Attorney-Client Privilege | Overruled |
| 14. | 45:16-47:8 | Attorney-Client Privilege | Overruled |
| 15. | 80:3-21 | Attorney-Client Privilege | Overruled |
| 16. | 96:18-25 | Attorney-Client Privilege | Overruled |
| 17. | 98:5-19 | Attorney-Client Privilege | Overruled |
| 18. | 106:2-23 | Attorney-Client Privilege | This excerpt is a duplicate of excerpt number 10. |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT 2 PAGE 388

| | | | |
|---|---|---|---|
| 19. | 116:11-19 | Attorney-Client Privilege | Sustained |
| 20. | 114:25-115:6 | Attorney-Client Privilege | Overruled |
| 21. | 298:11-300:6 | Attorney-Client Privilege | Overruled |
| 22. | 128:4-129:4 | Attorney-Client Privilege and Work Product | Overruled |
| 23. | 139:2-16 | Attorney-Client Privilege and Work Product | Overruled |
| 24. | 240:9-243:22 | Attorney-Client Privilege | Overruled |
| 25. | 279:23-280:10 | Attorney-Client Privilege | The witness gave an adequate response to the question later in the deposition. |
| 26. | 307:24-310:25 | Attorney-Client Privilege and Work Product | Overruled |
| 27. | 328:1-12 | Attorney-Client Privilege | Overruled |
| 28. | 135:25-137:3 | Attorney-Client Privilege | Overruled |
| 29. | 197:9-198:5 | Attorney-Client Privilege | Overruled |
| 30. | 267:16-268:4 | Attorney-Client Privilege | Withdrawn from Bryant's motion. |
| 31. | 156:1-158:20 | Attorney-Client Privilege | Withdrawn from Bryant's motion. |
| 32. | 328:16-329:9 | Attorney-Client Privilege | Overruled |

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4



## <u>PROOF OF SERVICE BY E-MAIL</u>

I, Sandra Chan, not a party to the within action, hereby declare that on April 24, 2007,

I served the attached ORDER GRANTING IN PART BRYANT'S MOTION TO

OVERRULE INSTRUCTIONS NOT TO ANSWER DURING THE DEPOSITION OF

ALAN KAYE, TO COMPEL KAYE TO ANSWER THOSE QUESTIONS, AND FOR

SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messina Esq | Littler Mendelson | dmessina@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 4, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT 15 PAGE 390

**Exhibit  26**

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6                          UNITED STATES DISTRICT COURT

7                          CENTRAL DISTRICT OF CALIFORNIA

8                                 EASTERN DIVISION

9

10

11  CARTER BRYANT, an individual,                CASE NO. C 04-09049 SGL (RNBx)
                                                 JAMS Reference No. 1100049530
12              Plaintiff,

13         v.                                    Consolidated with
                                                 Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,        Case No. CV 05-2727

15              Defendant.                       ORDER GRANTING IN PART
                                                 CARTER BRYANT'S MOTION TO
16                                               OVERRULE INSTRUCTIONS NOT TO
                                                 ANSWER DURING THE DEPOSITION
17                                               OF ANN DRISKILL, TO COMPEL
                                                 ANSWERS TO THOSE QUESTIONS,
18                                               AND FOR SANCTIONS

19  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
20  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
21

22         Having considered Carter Bryant's Motion to Overrule Instructions Not to Answer During

23  the Deposition of Ann Driskill, to Compel Driskill to Answer Those Questions, and for Sanctions

24  (the "Motion"), and all other papers filed in opposition to or in connection therewith, and finding

25  good cause therefore,

26         IT IS HEREBY ORDERED as follows:

27

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT 26 PAGE 391

1      1.      The instruction not to answer based upon the attorney-client privilege cited as

2  deposition excerpt number one (page 114:6-24) is overruled.  Ms. Driskill is ordered to respond to

3  the question posed in the cited deposition excerpt.

4      2.      Although Mattel's counsel is entitled to make evidentiary objections consistent

5  with Rule 32, Fed.R.Civ.P., there were numerous instances in which Mattel's counsel failed to

6  comply with the requirements of Rule 30(d)(1), Fed.R.Civ.P., by failing to state an objection

7  concisely and in a non-argumentative and non-suggestive manner, or by instructing the deponent

8  not to answer based upon an objection other than privilege.

9      3.      Mattel's counsel impeded, delayed, and frustrated the fair examination of Ms.

10 Driskill.  Therefore, Mattel is ordered to re-produce Ms. Driskill for her deposition for an

11 additional two (2) hours so that Bryant's counsel can resume questioning Ms. Driskill on all areas

12 that Bryant's counsel previously attempted to cover in her prior deposition.  During the

13 deposition, Mattel's counsel shall strictly comply with Rule 30(d)(1), Fed.R.Civ.P.

14      4.      Because some, but not all, of counsel's objection and violations of Rule 30(d)(1)

15 were without substantial justification, Bryant's request for sanction is granted in part in the

16 amount of $2,000 pursuant to Rule 30(d)(3), Fed.R.Civ.P.  These sanctions shall be paid within

17 fourteen (14) days of the date of this Order by check to be personally delivered to counsel for

18 Bryant.

19      5.      The parties shall meet and confer to schedule the resumption of Ms. Driskill's

20 deposition, which shall occur at a mutually convenient date and time no later than thirty (30) days

21 of the date of this Order.

22      6.      Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a

23 Discovery Master, Bryant shall file this Order with the Clerk of Court forthwith.

24

25 Dated:  May 4      , 2007            /s/Edward A. Infante

26                                     HON. Edward Infante (Ret.)
                                       Discovery Master

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                                                    2

EXHIBIT 26 PAGE 392

<u>**PROOF OF SERVICE BY E-MAIL**</u>

I, Sandra Chan, not a party to the within action, hereby declare that on April 24, 2007,

I served the attached ORDER GRANTING IN PART CARTER BRYANT'S MOTION TO

OVERRULE INSTRUCTIONS NOT TO ANSWER DURING THE DEPOSITION OF

ANN DRISKILL, TO COMPEL ANSWERS TO THOSE QUESTIONS, AND FOR

SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 4, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT 26 PAGE 392

**Exhibit  27**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        UNITED STATES DISTRICT COURT

 2      CENTRAL DISTRICT OF CALIFORNIA

 3           EASTERN DIVISION                Certified Copy

 4

 5   -------------------------------

 6   MATTEL, INC., a Delaware         )

 7   Corporation,                     )

 8            Plaintiff,              )

         vs.                          )  No. CV 04-9059

 9   CARTER BRYANT, an individual;    )      (RNBx)

10   and DOES 1 through 10,           )  VOLUME II

11   Inclusive,                       )

12            Defendants.             )

13   ------------------------------- )

14   (COMPLETE CAPTION ON NEXT PAGE.)

15

16      CONFIDENTIAL - ATTORNEYS' EYES ONLY

17

18   Continued videotaped deposition of

19   ALAN KAYE, taken at 400 South Hope

20   Street, Los Angeles, California,

21   Commencing at 10:13 A.M., Thursday,

22   June 21, 2007, before Wendy S. Schreiber,

23   CSR No. 3558, RPR, CLR.

24

25   PAGES 379 - 587

                                                     379
```

EXHIBIT 27 PAGE 394

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   BY MR. PAGE:

 2        Q.   It's his handwriting on this asking you to

 3   look at this, right?

 4        A.   Right.

 5        Q.   So regardless of whether his secretary gave    10:25AM

 6   it to you, you understood he was sending you this

 7   letter and asking you to follow up, right?

 8        A.   Yes, that is correct.

 9             MR. PROCTOR:   Objection --

10             THE WITNESS:   That is correct -- no, it's      10:25AM

11   not correct.

12   BY MR. PAGE:

13        Q.   You don't think he was asking you to do

14   anything about this?

15        A.   No.                                             10:26AM

16        Q.   And to the best of your knowledge you never

17   told him what you did or didn't do about this?

18        A.   That is correct.

19             (Deposition Exhibit 471 was marked

20        for identification and is annexed hereto.)          10:26AM

21   BY MR. PAGE:

22        Q.   I'm going to mark as Exhibit 471 -- 471 is a

23   stack of documents Bates-numbered M 0074307 through

24   0074430.  If you could take a look at this and let

25   me know if you've ever seen these documents before.     10:26AM
                                                                 394
```

EXHIBIT 27 PAGE 395

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    I'll represent to you that this appears at least to

2    me to be the contents of several different

3    investigative files that were all produced together

4    but....

5        A.    You want me to look at each page?  It will    10:27AM

6    take me awhile.

7        Q.    Yeah, if you could leaf through it and if

8    you hit any documents you have seen before, please

9    identify them.

10            MR. PROCTOR:  For the record, these clearly    10:27AM

11   were not shown to the witness at the prior

12   deposition so I do think it's beyond the scope of

13   the prior deposition, but I'll allow you to ask

14   questions about it.

15            MR. PAGE:  It's certainly on the same         10:28AM

16   subject matter as the prior deposition and they

17   weren't shown to the witness at that deposition

18   because you hadn't produced them yet.

19            MR. PROCTOR:  When were these produced?

20            MR. JENAL:  February of this year.            10:28AM

21            MR. PAGE:  What he said.

22       Q.    Actually, let me see if I can help you out.

23   If you could flip forward to the page numbered -- or

24   back depending on where you are -- 74400.

25       A.    Okay.                                        10:31AM

                                                                395

EXHIBIT 27 PAGE 394

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1     Q.    Have you seen this document before?

2     A.    Yes.

3     Q.    What is this document?

4     A.    What is this document?

5     Q.    Yeah, what is this document?                    10:31AM

6     A.    It's a -- it looks like a copy of an E-mail

7     with some parts missing.

8     Q.    And, in fact, it's an E-mail to you from

9     Richard DeAnda, correct?

10    A.    Correct.                                          10:32AM

11    Q.    Do you recall receiving this E-mail?

12    A.    No.

13    Q.    In this E-mail Mr. DeAnda says "Alan, I've

14    received your anonymous letter originally sent to

15    Bob Eckert regarding Carter Bryant and 'Bratz.'  I'm   10:32AM

16    aware of this situation and have been working on it

17    for several months."

18          Does this refresh your recollection as to

19    whether Mr. DeAnda ever reported back to you after

20    you sent him the letter?                                10:32AM

21    A.    No.

22    Q.    No, still no recollection of it whatsoever?

23    A.    I believe I got this.  I don't know when.  I

24    don't know if it was before the date you gave me.

25    Q.    Unfortunately it was produced to us with the 10:32AM

                                                              396

EXHIBIT 28 PAGE 397

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    date redacted so I can't help you but it certainly

2    appears to be contemporaneous.  Is it your -- is it

3    your belief that this was sent to you years after

4    you gave him the letter?

5         A.   I don't know.                          10:33AM

6         Q.   Do you have any recollection whatsoever of

7    Mr. DeAnda telling you after you had sent him the

8    letter about Carter Bryant that he was already aware

9    of the situation and had been as he put it working

10   on it for several months?                        10:33AM

11        A.   I have no recollection.

12        Q.   None whatsoever?

13        A.   No.

14        Q.   In this letter Mr. DeAnda also says "My

15   frustration in this matter was the genesis of..."  10:33AM

16   and then there's some material redacted.  Do you

17   have any recollection of Mr. DeAnda expressing to

18   you any frustration he was experiencing in the

19   course of investigating Carter Bryant?

20        A.   No recollection.                        10:33AM

21        Q.   Who is Robert Normile?

22        A.   He's the general counsel of Mattel.

23        Q.   What is your understanding of what

24   Mr. DeAnda meant by saying it is now in the -- and

25   that is now in the hands of Robert Normile?        10:33AM

                                                           397

EXHIBIT 27 PAGE 398

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1          MR. PROCTOR:  Objection:  calls for

 2   speculation.

 3          MR. PAGE:  It may or may not.

 4          THE WITNESS:  I would believe that says --

 5   that would mean that Legal has taken over the       10:34AM

 6   investigation or looked at this issue.

 7   BY MR. PAGE:

 8      Q.   Okay.  How does -- how does Mattel decide

 9   what matters get -- get referred on to Legal for

10   investigation?                                       10:34AM

11          MR. PROCTOR:  Objection:  overbroad.

12          THE WITNESS:  I do not know all the -- I

13   would not know all the answers to that question.

14   BY MR. PAGE:

15      Q.   I only want the answers you know.            10:34AM

16          MR. PROCTOR:  Same objection.

17          THE WITNESS:  I could only -- so from a

18   Human Resource point of view --

19   BY MR. PAGE:

20      Q.   Yeah, okay.  Let me rephrase it.             10:34AM

21          From time to time Human Resources becomes

22   aware of allegations of misconduct by employees,

23   correct?

24      A.   Correct.

25      Q.   When you receive your first information      10:34AM
                                                             398
```

EXHIBIT 22 PAGE 399

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    employee whether there's a policy that Mattel wipes

 2    the previous user's data off the computer.  And I

 3    believe your answer was that it would make -- that

 4    you don't know but it would make sense for that to

 5    be done.  Is that correct?                    11:57AM

 6         MR. PROCTOR:  I'll object as misstates the

 7    testimony.

 8         THE WITNESS:  That is correct.

 9    BY MR. PAGE:

10    Q.   And my question is:  Why does it make sense  11:57AM

11    that that would be done?  Why would you want to do

12    it?

13         MR. PROCTOR:  Object:  assumes facts not in

14    evidence, calls for speculation.

15         THE WITNESS:  Again, not my sphere of      11:57AM

16    influence but I would believe that there's

17    confidential data on a computer.  You don't want

18    that confidential data on a computer moving to

19    people who shouldn't be seeing a certain type of

20    confidential data.                             11:58AM

21         (Exhibit 389 previously marked.)

22    BY MR. PAGE:

23    Q.   Let me show you what was previously marked

24    as Exhibit 389 and I'm not going to be asking you

25    about all of the documents in here.  389 is a stack  11:58AM
                                                        459
```

EXHIBIT 77 PAGE 400

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   of various versions of various Mattel employee

2   agreements and I'm actually going to ask you about

3   the multi-page Employee Confidentiality and

4   Inventions Agreement that starts at 79351 if you

5   want to take a look at that and let me know when          11:59AM

6   you're ready to answer questions.

7       A.   Okay.  Do you want me to just look at the

8   data -- look at this?  Do you want me to read this?

9       Q.   You do whatever -- I just want you to tell

10  me when you're ready to answer questions.  I don't       11:59AM

11  think -- I'm not going to ask you to read the whole

12  thing.

13      A.   It depends on what the questions are.

14      Q.   Let me just ask questions and then if you

15  need time to look at something to answer just let me     11:59AM

16  know.

17          The first page is an employee -- is a cover

18  letter from you to Dear Employee.  Do you recall

19  writing or at least signing this letter?

20      A.   Yes.                                             11:59AM

21      Q.   Did you write this letter?

22      A.   Yes.

23      Q.   And at the bottom it says "Version

24  3/20/2006."  Is it your understanding that that's

25  when you sent this letter to employees?                  12:00PM

                                                                 460

EXHIBIT 27 PAGE 401

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1       A.   I do not know.

2       Q.   To whom was this letter sent?  In other

3  words, was there a particular class of employees

4  that received this or was it everyone?

5       A.   I do not know specifically.  I believe this  12:00PM

6  was domestic employees.

7       Q.   And this was -- this was sent out to current

8  domestic employees, correct?

9       A.   Correct.

10      Q.   Who had already executed an invention --     12:00PM

11 Confidentiality and Inventions Agreement when they

12 were hired, correct?

13      A.   Theoretically correct.

14      Q.   In the normal course one would have?

15      A.   Yeah.                                         12:00PM

16      Q.   So why was it that Mattel was having current

17 employees execute another Confidentiality and

18 Inventions Agreement?

19      A.   Advice from counsel.

20      Q.   Did you have any input into the terms of      12:01PM

21 Attachment A to this letter which is the

22 Confidentiality and Inventions Agreement?

23      A.   Not the terms.

24      Q.   Which implies to me you had some other input

25 into it.                                               12:01PM
                                                           461
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      A.   Okay, because you had switched some of the

2  beginning words around.  I'm trying to pay attention

3  to do I recollect, do I know.

4      Q.   Do you know whether anybody in HR in 2002 or

5  2003 requested someone in HRIT to try to assist in      02:50PM

6  locating Carter Bryant?

7      A.   I do not recall.

8      Q.   If you wanted to find out the answer to that

9  question, what would you do?

10         MR. PROCTOR:  Vague and ambiguous.            02:50PM

11         THE WITNESS:  What would I do?  I have no

12  idea what I would do.  I probably would not do that

13  because I have no idea how -- how I would find out

14  that information.

15  BY MR. JENAL:                                          02:51PM

16      Q.   Let me ask you to turn to Exhibit 471.

17      A.   I'm sorry, where are we?

18      Q.   It's the thick investigation file and --

19      A.   471.

20      Q.   Exhibit 4 -- you have the exhibit.  The      02:51PM

21  Bates number page that I want you to turn to is

22  74405 back where the handwriting that we were

23  talking about before.

24      A.   Okay.  74405.  I'm there.

25      Q.   Okay.  And this is a series of pages that my  02:51PM

554

EXHIBIT 27 PAGE 40

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    colleague here had asked you about that are labeled

2    at the top of those pages "Investigative Log,"

3    correct?

4        A.   Uh-huh, uh-huh.

5        Q.   Do you recall being asked about this          02:51PM

6    handwriting and trying to decipher it for us?

7    Simple question --

8        A.   Did we talk about this page?

9        Q.   I believe we did and we also talked about

10   the page after.                                         02:52PM

11       A.   Okay.

12       Q.   And I believe we talked about the page after

13   that.

14       A.   I remember -- I think we started on 406 but

15   that's my recollection.                                 02:52PM

16       Q.   All right.  Well, let's take 406 then.

17       A.   Okay.

18       Q.   Do you recognize this handwriting?

19       A.   I can't say that I can identify this

20   handwriting.                                            02:52PM

21       Q.   Are you familiar with Mr. DeAnda's

22   handwriting?

23       A.   I should be, yes, but I can't say that this

24   is his handwriting.

25       Q.   Okay.  If you back up a few pages to the       02:52PM

                                                                555

EXHIBIT 2) PAGE 40 4

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   page 403 -- 74403 --

2        A.   Okay.

3        Q.   -- and this is a typed page of some sort and

4   it says "Incident Report."  Do you see that?

5        A.   Yes.                                    02:53PM

6        Q.   Have you seen incident reports previously?

7        A.   Not in this format.

8        Q.   In what format, if any, have you seen

9   incident reports?

10       A.   I've seen reports -- full reports that I    02:53PM

11   would view as -- well, they weren't -- that I would

12   call an incident report.

13       Q.   How would that differ from what you see

14   here?

15       A.   It's a narrative.  It's a typed -- typed    02:53PM

16   report, not -- not this.  Not this format, not

17   notes.

18       Q.   Okay.  More like a memorandum?

19       A.   Yes.

20       Q.   Summarizing whatever the incident was and    02:53PM

21   what was done to investigate it?

22       A.   Yes.

23       Q.   Do you know where those types of memorandum

24   are kept at Mattel?

25       A.   No.                                       02:54PM

                                                           556

EXHIBIT 21 PAGE 405

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      Q.    Who would know that?

2            MR. PROCTOR:  Calls for speculation.

3            THE WITNESS:  I would assume Richard DeAnda.

4   BY MR. JENAL:

5      Q.    If you look on page 403 here, there's a file    02:54PM

6   number.  It says 03-664.  Do you see that?

7      A.    No.

8      Q.    Top left-hand corner of the incident report.

9      A.    Yes.

10     Q.    Do you have any understanding of what that    02:54PM

11  nomenclature 03-664 means?

12     A.    No.

13     Q.    Do you see underneath that it's a category

14  and it says "01 - Theft"?

15     A.    I see it.                                    02:54PM

16     Q.    And underneath that there's a subcategory

17  that says "13 - Proprietary Information."  Do you

18  see that?

19     A.    Yes.

20     Q.    Do you have any understanding of the        02:54PM

21  categories and subcategories of incident reports at

22  Mattel?

23     A.    No.

24     Q.    Do you know whether there are 13 different

25  types of thefts noted as subcategories at Mattel?    02:55PM

                                                                557

EXHIBIT 27 PAGE 406

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    A.   I do not know.

2    Q.   Who would know that?

3    A.   Mr. DeAnda, I would assume.

4    Q.   I would assume, too.  There's an occurrence

5  date and a reported date that both appear to be     02:55PM

6  6/9/2003.  Do you see that?

7    A.   Yes.

8    Q.   It has an indication of "Building/Site,

9  Status:  Open" and then "Report Taken By:" and it

10 says "DeAnda, Rich."  Do you see that?              02:55PM

11   A.   Yes.

12   Q.   Does that give you any greater reason to

13 believe that the handwritten notes that follow on

14 pages 405, 406 and 407 are, in fact, Mr. DeAnda's

15 handwriting?                                        02:55PM

16        MR. PROCTOR:  I'll object to the form.

17        THE WITNESS:  I would only assume so if this

18 was -- if this was the same document.  I don't know

19 if this is a connected document.  I don't know if

20 this has anything to do with the next note so....   02:56PM

21 BY MR. JENAL:

22   Q.   I'll simply represent to you that Mattel

23 produced these documents in the sequence that we

24 have them here but whether that --

25   A.   I didn't produce them.                       02:56PM
                                                       558

EXHIBIT 27 PAGE 407

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    Q.   Fair enough.  Do you know who did?

2    A.   No.

3    Q.   Would you turn forward to 74413.  I believe

4    we also looked at that page earlier.  And 414.  Do

5    you see those pages?                              02:56PM

6    A.   74413.

7    Q.   Right.  Do you see -- do you see those -- do

8    you see the handwriting on those pages?  Do you

9    recognize that handwriting?

10   A.   No.                                          02:56PM

11   Q.   You'll notice that at the beginning at the

12   top of page 413 there's a date 6/11/03.  Do you see

13   that?

14   A.   Right.

15   Q.   And then it says "Meeting" and then what     02:57PM

16   appears to be a list of attendees at that meeting.

17   A.   Right.

18   Q.   And I think these are some of the same names

19   that we were looking at on another document.

20   A.   Right.                                       02:57PM

21   Q.   And Rich DeAnda is the last name listed

22   there.

23   A.   Yes.

24   Q.   Would that increase your expectation that

25   this is, in fact, Mr. DeAnda's handwriting?       02:57PM

                                                       559

EXHIBIT 27 PAGE 408

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    A.   Yes.

2    Q.   As you sit here, that's your best estimate

3    this is Mr. DeAnda's handwriting?

4         MR. PROCTOR:  Calls for speculation.

5         THE WITNESS:  Yes.                           02:57PM

6    BY MR. JENAL:

7    Q.   Would you turn forward a little out of

8    sequence in here.  After page 415 there is a page

9    414.01.  Do you see that?

10   A.   Yes.                                          02:57PM

11   Q.   And there's a name at the top of the page

12   there.  Can you read that?

13   A.   Paula Trent something.

14   Q.   Treantafelles.  Have you ever heard the name

15   Paula Treantafelles?                               02:58PM

16   A.   Yes.

17   Q.   In what context?

18   A.   From counsel.

19   Q.   Outside of communications from counsel have

20   you ever heard that name before?                   02:58PM

21   A.   No.

22   Q.   How about Paula Garcia?  Have you ever heard

23   that name?

24   A.   No.

25   Q.   It says here "Employee..." -- "Former Mattel 02:58PM
                                                        560

EXHIBIT 27 PAGE 409

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   employee now at MGA."  Do you see that after Paula

2   Treantafelles' name?

3        A.   "Former Mattel employee now at MGA."  Yes.

4        Q.   "Left Mattel (1999-2000) after" and it says

5   here "30 years."  Do you see that?                    02:58PM

6        A.   Yes.

7        Q.   I'm willing to bet that the 30 is probably a

8   typo or whatever you call it when you hand write an

9   error.  "Was in Business Planning - now holds high

10   position at MGA - works in..." -- and can you read     02:59PM

11   that next word?

12        A.   No.

13        Q.   Something "on Bratz."

14        A.   Yes.

15        Q.   Does that refresh your recollection as to     02:59PM

16   Paula Treantafelles outside of what you've heard

17   from counsel?

18        A.   No.

19        Q.   And then the next writing underneath that

20   says "Ivy Ross" dash.  Do you know who Ivy Ross is?    02:59PM

21        A.   Yes.

22        Q.   Who's Ivy Ross?

23        A.   Ivy Ross was an ex-Mattel employee.

24        Q.   Was she an ex-Mattel employee in 2003?

25        A.   I don't believe so.                          02:59PM

561

EXHIBIT 27 PAGE 40

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    Q.   Can you read what it says after the dash

2    there?

3    A.   "States."

4    Q.   Keep going.

5    A.   "Outside vendor help develop FLAVAS          02:59PM

6    concept."

7    Q.   Do you have any understanding of what that

8    sentence means?

9         MR. PROCTOR:   Objection:   calls for

10   speculation.                                      03:00PM

11        THE WITNESS:   No.

12   BY MR. JENAL:

13   Q.   Do you know of any outside vendors that

14   would have helped develop the FLAVAS concept?

15   A.   No.                                          03:00PM

16   Q.   Let me ask you to turn toward the front of

17   this document, Exhibit 471.   The first page there is

18   Bates-numbered 74307.   Do you see that?

19   A.   7 --

20   Q.   The cover page there.                        03:00PM

21   A.   74 -- yes.

22   Q.   Okay.   And the first page there appears to

23   be a photo or a copy of the cover of a file folder

24   of some sort.   Do you see that?

25   A.   Yes.                                          03:00PM

                                                       562

EXHIBIT 27 PAGE 564

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    Q.   It says "02-115."  Do you have any

2  understanding of what that nomenclature means?

3    A.   No.

4    Q.   Turn a couple of pages forward to ending in

5  310.  Do you see that?                            03:01PM

6    A.   Yes.

7    Q.   It's an incident report.  Do you see that?

8    A.   Incident report 02207, file No. 02-115.

9    Q.   Right.  And that's the same file number that

10  we have on the first page of Exhibit 471, correct?   03:01PM

11    A.   It's the same number.

12    Q.   Do you have any reason to believe it's a

13  different file number?

14    A.   Do I have any reason to believe it's a

15  different file number?  It's the same number.  I    03:01PM

16  don't know if it's the same file.

17    Q.   There's a nearly impossible to read Post-it

18  note there.  Do you see that?

19    A.   Yep.

20    Q.   And my best guess is that that looks like     03:01PM

21  "related case."  Do you see that in amongst the

22  snow?

23        MR. PROCTOR:  The document speaks for

24  itself.

25        MR. JENAL:  If we had a clear document, it    03:02PM
                                                        563

EXHIBIT 27 PAGE 42

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   probably would.  This document doesn't speak well at

2   all.

3          THE WITNESS:  I see "related."

4      Q.   And then underneath that do you see what

5   appears to be a series of three different numbers in   03:02PM

6   the same sort of format that we've been looking at

7   for file numbers, a two-digit number followed by a

8   dash followed by a four-digit number?  Do you see

9   that?

10     A.   Yes.                                         03:02PM

11     Q.   Do you know where those files would be kept?

12         MR. PROCTOR:  Objection:  vague and

13  ambiguous, calls for speculation.

14         THE WITNESS:  No.

15         MR. PROCTOR:  Also assumes facts not in       03:02PM

16  evidence.

17         THE WITNESS:  I don't know that they are

18  files.

19  BY MR. JENAL:

20     Q.   Who would know whether those are files?      03:02PM

21         MR. PROCTOR:  Vague and ambiguous, calls for

22  speculation.

23         THE WITNESS:  I don't know.

24  BY MR. JENAL:

25     Q.   This -- this incident report says that the   03:03PM

                                                              564

EXHIBIT 21 PAGE 43

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    report was taken by Bob Simoneau.  Do you see that?

2        A.   Yes.

3        Q.   And I think this is the Bob who segued into

4    Nick; is that correct?

5        A.   Yes.                                      03:03PM

6        Q.   What happened to Bob Simoneau's files, do

7    you know?

8        A.   I have no idea.

9            MR. PROCTOR:  Objection:  calls for

10   speculation, vague and ambiguous.                  03:03PM

11   BY MR. JENAL:

12       Q.   Do you know what the normal practice would

13   be with regard to the files when someone leaves the

14   company and someone else takes their position?

15           MR. COREY:  Vague and ambiguous, calls for  03:03PM

16   speculation.

17           THE WITNESS:  Depends.

18   BY MR. JENAL:

19       Q.   You don't know what the practice is in the

20   Security Investigations group?                     03:03PM

21       A.   No, not specifically.

22       Q.   What do you know generally?

23       A.   That files are -- are transitioned.

24       Q.   Which means they would be handed off to the

25   person taking over those job responsibilities?    03:03PM

565

EXHIBIT 27 PAGE 44

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1     A.   Yes.

2          MR. JENAL:  Why don't we go off the record.

3          VIDEO OPERATOR:  We're off the record at

4     3:03 p.m.

5                    (Brief recess.)                    03:09PM

6          VIDEO OPERATOR:  We're back on the record at

7     3:10 p.m.

8     BY MR. JENAL:

9     Q.   Mr. Kaye, we were looking at Exhibit 471

10    before we took the break.  I wonder if you could    03:10PM

11    turn to the page ending in Bates No. 74311.  This

12    says "Incident Report," page 2.  Do you see that?

13    A.   Yes.

14    Q.   There's a name there, Evelyn Viohl.  Do you

15    see that?                                           03:11PM

16    A.   Not yet.  Yes.

17    Q.   Do you know who that person is?

18    A.   Yes.

19    Q.   Who is she?

20    A.   She is a Mattel employee.                      03:11PM

21    Q.   In what area, do you know?

22    A.   Design.

23    Q.   What do you base that on?

24    A.   I know her.

25    Q.   You do.  How long have you known her?          03:11PM

                                                           566

EXHIBIT 27 PAGE 445

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1      A.   I've known her for, I don't know, between

 2   six and eight years.

 3      Q.   It says "person type informant."  Do you see

 4   that?

 5      A.   Yes.                                   03:11PM

 6      Q.   What's your understanding of what that

 7   means?

 8      A.   I have no idea.

 9           MR. PROCTOR:  Calls for speculation.

10   BY MR. JENAL:                                  03:11PM

11      Q.   You have no idea?

12      A.   Other than what the movies would say.

13      Q.   What would the movies say?

14      A.   That she's an informant.  She's someone

15   providing information.                         03:12PM

16      Q.   And then underneath that it says "Ivy Ross."

17   Do you see that?

18      A.   Yes.

19      Q.   She's also described as an informant.

20      A.   Yes.                                   03:12PM

21      Q.   Sex is listed as male.  Do you see that?

22      A.   Yes.

23      Q.   I'm assuming that that's incorrect.  Would

24   that be your understanding?

25      A.   I have no idea.                        03:12PM
                                                       567
```

EXHIBIT 27 PAGE 416

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      Q.   I take it you don't know Ivy Ross?

2      A.   I know Ivy Ross very well.  I have no idea

3   if this report is trying to identify her sex or, you

4   know, if it just says -- I don't know what that

5   really means.  She's not -- Ivy Ross is female.      03:12PM

6      Q.   So obviously to the extent that that's

7   purporting to describe the informant Ivy Ross it's

8   at least inaccurate?

9      A.   Correct.

10     Q.   Would you skip forward to page 74316.        03:12PM

11     A.   There.

12     Q.   Do you recognize the printout that's on this

13  page?

14     A.   No.

15     Q.   Do you see at the bottom there's a Web       03:13PM

16  address that begins http://peoplesoft?  Do you see

17  that?

18     A.   Yes.

19     Q.   Does that refresh your recollection that

20  this is something that was generated using the       03:13PM

21  PeopleSoft software at Mattel?

22         MR. PROCTOR:  He's asking if it refreshes

23  your memory of it.

24         THE WITNESS:  If it refreshes my memory?

25  No.  No.  I don't understand the question based on    03:13PM

                                                         568

Veritext National Deposition & Litigation Services
213 623-5005

EXHIBIT 27 PAGE 417

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    the previous question.  I thought the question

2    previous have I seen this before?

3    BY MR. JENAL:

4        Q.   Do you recognize this form of printout?

5        A.   This particular form I don't -- I don't        03:13PM

6    recognize.

7        Q.   Do you see where it says "Emergency Contact"

8    there?

9        A.   Yes.

10       Q.   Above that it says "Bryant, Carter H.,"        03:14PM

11   correct?

12       A.   Yes.

13       Q.   And then there's a contact address.  Do you

14   see that?

15       A.   Yes.                                            03:14PM

16       Q.   And the contact's name is above that and it

17   says "Bryant, Janet, Relationship to Employee:

18   Mother."  Do you see that?

19       A.   Yes.

20       Q.   Is it your understanding that the PeopleSoft 03:14PM

21   software at Mattel retains emergency contact

22   information for former employees?

23           MR. PROCTOR:  Overbroad.

24           THE WITNESS:  I do not know specifically.

25   /   /   /                                                03:14PM

                                                              569

EXHIBIT 27 PAGE 48

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      I declare under penalty of perjury

2   under the laws of the State of California

3   that the foregoing is true and correct.

4      Executed on _____,

5   2007, at _____,

6   California.

7

8

9

10      _____

11         ALAN KAYE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

583

EXHIBIT 27 PAGE 419

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    STATE OF CALIFORNIA     ) ss:

 2    COUNTY OF LOS ANGELES )

 3

 4           I, WENDY S. SCHREIBER, CSR No. 3558, do

 5    hereby certify:

 6

 7           That the foregoing deposition of ALAN KAYE

 8    was taken before me at the time and place therein

 9    set forth, at which time the witness was placed

10    under oath and was sworn by me to tell the truth,

11    the whole truth, and nothing but the truth;

12           That the testimony of the witness and all

13    objections made by counsel at the time of the

14    examination were recorded stenographically by me,

15    and were thereafter transcribed under my direction

16    and supervision, and that the foregoing pages

17    contain a full, true and accurate record of all

18    proceedings and testimony to the best of my skill

19    and ability.

20           I further certify that I am neither

21    counsel for any party in said action, nor am I

22    related to any party to said action, nor am I in any

23    way interested in the outcome thereof.

24

25
```

584

EXHIBIT 27 PAGE 420

CONFIDENTIAL - ATTORNEYS' EYE    LY

1          IN WITNESS WHEREOF, I have subscribed my

2    name this 3rd day of July, 2007.

3

4

5

6    _____

7         WENDY S. SCHREIBER, CSR No. 3558, RPR

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

585

EXHIBIT 27 PAGE 421

**Exhibit  28**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1              UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                  EASTERN DIVISION

4                                        Certified Copy

5      ------------------------------

6      MATTEL, INC., a Delaware        )

7      Corporation,                    )

8                  Plaintiff,          )

9            vs.                       ) No. CV 04-9059

10     CARTER BRYANT, an individual;   ) NM (RNBx)

11     and DOES 1 through 10,          ) VOLUME II

12     Inclusive,                      )

13                  Defendants.        )

14     ------------------------------)

15     (COMPLETE CAPTION ON NEXT PAGE.)

16

17          CONFIDENTIAL - ATTORNEYS' EYES ONLY

18

19     Continued Videotaped deposition of ANN LAWSON

20     DRISKILL, taken at 400 South Hope Street,

21     Los Angeles, California, commencing at

22     2:04 P.M., Thursday, July 12, 2007, before

23     Wendy S. Schreiber, CSR No. 3558, RPR, CLR.

24

25     PAGES 338 - 445

                                              338

EXHIBIT 28 PAGE 422

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    ambiguous, calls for speculation, overbroad.

2            THE WITNESS:  I would expect them to tell me

3    whatever they showed me -- you know, that whatever

4    they showed me was from another -- you know,

5    wherever it came from I would expect them to explain   02:24PM

6    that to me.

7    BY MR. PAGE:

8        Q.   Do you do anything in interviewing

9    candidates to ask that they tell you what they've

10   done in the past?                                       02:24PM

11           MR. PROCTOR:  I'll object.  Assumes facts

12   not in evidence.

13           MR. PAGE:  You know what, that's an awful

14   question.  Strike that.

15       Q.   Are you familiar with the -- with Mattel's    02:24PM

16   conflict of interest form?

17       A.   Yes.

18           MR. PROCTOR:  Object:  overbroad.

19           (Exhibit 389 previously marked.)

20   BY MR. PAGE:                                            02:24PM

21       Q.   Let me show you what has previously been

22   marked as Exhibit 389.  Would you look at the last

23   page of that stack.  Actually, not -- sorry.  If you

24   could take a look at there is a seven-page Employee

25   Confidentiality and Inventions Agreement that starts   02:25PM

                                                             360

EXHIBIT 26 PAGE 423

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    nine pages from the end at M 0079351 through 57.

2    The first page is a letter from Alan Kaye and then

3    it continues with an attachment of six pages.  Do

4    you see that?

5         A.   Uh-huh.                                    02:26PM

6         Q.   First, have you seen this document before?

7         A.   I don't remember this exact one.

8         Q.   If you look at the second page of it, the

9    Terms and Conditions of Employment, have you seen

10   this document before?                                02:26PM

11        A.   I've seen documents with similar titles for

12   different segments but I don't remember the specific

13   document.

14        Q.   If you look at the last page of the

15   document, it says page 7 of 7 on the bottom, and it  02:26PM

16   starts with a series of blank lines captioned

17   "Disclosure of Prior Inventions."  "The following is

18   a complete disclosure of all Prior Inventions."

19        Are you involved at all during the interview

20   and hiring process in asking candidates whether they 02:27PM

21   have any prior inventions to disclose?

22        MR. PROCTOR:  Object:  assumes facts not in

23   evidence, vague and ambiguous.

24        THE WITNESS:  I wouldn't think I'd be

25   involved in that.  I think that's more of an HR      02:27PM

                                                          361

EXHIBIT 28 PAGE 424

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1     A.   Some, yes.

2        Q.   Was it your practice in the 1999, 2000 time

3     period to have folders that were project specific?

4        A.   I'm not sure whether I did that then or not.

5             (Deposition Exhibit 474 was marked          03:47PM

6        for identification and is annexed hereto.)

7     BY MS. TORRES:

8        Q.   I'm going to hand you a document that --

9     actually, I'd like the court reporter to mark it as

10    Exhibit I believe it's 474.                         03:48PM

11            MR. PROCTOR:   Do you want to just identify

12    the Bates range for the record?

13            MS. TORRES:   Yeah, the Bates range for the

14    record is M 0074538 through 551.

15       Q.   Ms. Driskill, have you ever seen this        03:49PM

16    document before or any of these pages?

17            MR. PROCTOR:   In this format are you asking

18    about?

19            THE WITNESS:   Not printed up like this.

20    BY MS. TORRES:                                       03:49PM

21       Q.   Have you seen it in another form?

22       A.   I guess I saw it on my screen in 1999 or

23    whatever it was.

24       Q.   You recognize this as your -- as printouts

25    of at least part of your in box or part of your      03:50PM

                                                           401

EXHIBIT 28 PAGE 425

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1  Microsoft Outlook, correct?

2      A.   It looks that way, yes.

3          MR. PROCTOR:   I don't mean to cut you off.

4  I am just going to note this is beyond the scope of

5  the prior deposition.   I'll let you ask questions.      03:50PM

6  BY MS. TORRES:

7      Q.   If you look on the first page, to the left

8  where it says "Outlook Today - [Mailbox - Driskill,

9  Ann]", directly below that it says "Archives,"

10  correct?                                                03:50PM

11     A.   Uh-huh.

12     Q.   To the best of your recollection has your --

13  has your Microsoft Outlook always had Archives

14  there?

15     A.   I really don't know.                           03:50PM

16     Q.   Do you typically store anything in Archives

17  there?

18     A.   I don't think I do.

19     Q.   Below at the very bottom of that list it

20  says "Public Folders."  Do you see that?               03:51PM

21     A.   Uh-huh.

22     Q.   Is that where you typically store project --

23  is that typically where your project-related folders

24  are?

25     A.   I don't think so.  I'm not sure but I don't    03:51PM
                                                          402

EXHIBIT 28 PAGE 426

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    think so.

2        Q.   Where do you believe they are?

3        A.   I thought that I had personal folders.  I

4    thought that was the name of them.

5        Q.   Personal folders?                        03:51PM

6        A.   Where it would list the titles of each

7    folder.

8        Q.   Do you ever receive a message from time to

9    time that says on your -- in your Outlook that says

10   "Do you want to archive messages?"                03:51PM

11           MR. PROCTOR:  Vague and ambiguous.

12           THE WITNESS:  I've seen things along those

13   lines.  I don't know exactly what it said, you know.

14   BY MS. TORRES:

15       Q.   Do you typically click yes?              03:52PM

16           MR. PROCTOR:  Assumes facts not in evidence.

17           THE WITNESS:  I don't think so.  I'm not

18   sure.  Typically I don't know.

19   BY MS. TORRES:

20       Q.   Is it your practice -- what is your       03:52PM

21   practice -- what was your practice in the 1999, 2000

22   time period with respect to retaining E-mails?

23           MR. PROCTOR:  Assumes facts not in evidence.

24           THE WITNESS:  I really don't remember how I

25   worked it then.  I don't know.  It was seven years  03:52PM
                                                         403
```

EXHIBIT 28 PAGE 427