CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    Q.   Do you know whether you first -- you had
2  E-mail in 1999?
3    A.   I'm not positive, no.
4        (Deposition Exhibit 475 was marked
5    for identification and is annexed hereto.)      04:03PM
6  BY MS. TORRES:
7    Q.   I'm going to ask the court reporter to mark
8  as Exhibit 475 a document bearing Bates No. M
9  0000127.  I apologize, I don't have a copy but it's
10  quite short.                                     04:03PM
11        Looking at that document does that refresh
12  your recollection as to whether or not you had
13  E-mail in 1998?
14    A.   I guess I did.
15    Q.   Who is Patricia Contrares?               04:04PM
16    A.   I remember the name but I don't remember who
17  she is.
18    Q.   Do you recall whether she was somebody in
19  your Design group?
20    A.   I can't recall.                          04:05PM
21    Q.   Looking at that document -- well, can you
22  identify that document for the record?
23    A.   What -- do you want me to explain what it
24  is?
25    Q.   Yeah, what is it?                        04:05PM
412

EXHIBIT 28 PAGE 428

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      A.   It's a E-mail to me from Laura Lum about

2    potential songs we could use with the holiday doll.

3      Q.   And it was an E-mail that you received?

4      A.   It looks like it.

5      Q.   Is it your recollection that as long as          04:06PM

6    you've had E-mail you've retained E-mail documents

7    related to Mattel's business that you thought were

8    important?

9          MR. PROCTOR:  Asked and answered.

10          THE WITNESS:  I thought I said I don't          04:06PM

11   remember -- I mean, I can't even estimate it because

12   I don't remember how I dealt with E-mail early on.

13   BY MS. TORRES:

14      Q.   Don't remember at all?

15      A.   Not really.                                    04:06PM

16      Q.   Do you know whether it was the practice of

17   your designers to retain E-mail in the 1999, 2000

18   time period?

19          MR. PROCTOR:  Calls for speculation.

20          THE WITNESS:  I have no idea.                   04:06PM

21   BY MS. TORRES:

22      Q.   Has the location of the Barbie Collectibles

23   group moved at Mattel in the past seven years?

24          MR. PROCTOR:  The entire group you're asking

25   about?                                                 04:07PM

413

EXHIBIT 28 PAGE 429

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1      Q.   Yes.
 2      A.   I don't know whether it's north, south, east
 3  or west but it's close to the side dock area of the
 4  design area.  I think it's close to the cafeteria,
 5  close to the side dock, whatever that quadrant would  04:09PM
 6  be.
 7      Q.   And did Carter Bryant sit with the other
 8  designers in Collectibles?
 9      A.   Yes.
10      Q.   Did he sit with the other designers in        04:09PM
11  Collectibles the entire time that he was at Mattel
12  working in your group?
13      A.   You just mean his office?
14      Q.   His office or his cubicle.  His work area.
15      A.   I think so.                                    04:09PM
16      Q.   That's your best recollection?
17      A.   Yes.
18          (Deposition Exhibit 476 was marked
19      for identification and is annexed hereto.)
20  BY MS. TORRES:                                          04:09PM
21      Q.   I'd like to ask the court reporter to mark
22  as Exhibit 475 -- 476 a document -- well, a document
23  bearing Bates No. M 0013365 but I will represent
24  that it is not in the same form that it was produced
25  to us.  So we can put an X after that if that makes     04:10PM
                                                            415
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   it easier.

2          MR. PROCTOR:  That's fine.  Do you have

3   seven copies of this?

4          MS. TORRES:  I don't, but I don't think

5   seven copies of this would fit on this table.          04:11PM

6          MR. PROCTOR:  It's upside down.

7          MR. PAGE:  We had it actually facing north

8   correctly.

9          THE WITNESS:  So -- is this the side dock?

10  I guess.                                               04:11PM

11         MR. PROCTOR:  I don't think there's any

12  question pending.

13         THE WITNESS:  Sorry.

14  BY MS. TORRES:

15     Q.  Do you recognize that as a form of floor      04:11PM

16  plan for the Mattel Design Center?

17         MR. PROCTOR:  Vague and ambiguous as to

18  time.

19         THE WITNESS:  I've never seen -- seen it

20  look exactly like this so I'm trying.                  04:11PM

21  BY MS. TORRES:

22     Q.  Do you see where it says "Wood Shop"?

23     A.  Okay, yes.

24     Q.  Is there a wood shop in the Design Center at

25  Mattel that's more or less in that vicinity?           04:12PM

                                                              416

EXHIBIT 28 PAGE 431

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      A.    I've never heard of anything called a wood

2   shop so I don't know.   I don't know.

3      Q.    Can you place approximately where the

4   Collectibles group is located now?

5      A.    I think it's here.                    04:12PM

6      Q.    And is that approximately where the

7   Collectibles group was located when Carter Bryant

8   worked at Mattel in your group?

9          MR. PROCTOR:   Asked and answered, misstates

10   the testimony.                                04:13PM

11          THE WITNESS:   If I'm right about where it

12   is, then, yes.

13   BY MS. TORRES:

14      Q.    Could you mark -- put a circle around the

15   area that you believe is the location of the      04:13PM

16   Collectibles group.

17      A.    Can I just say some of this doesn't look

18   right to me.   I'm kind of half guessing here.   I

19   mean --

20          MR. PROCTOR:   I don't think they want you to 04:13PM

21   guess.

22   BY MS. TORRES:

23      Q.    Let me ask you that question.   Does this

24   look -- if you look at the bottom of the page, can

25   you see where it says "Men" and "Women"?           04:14PM

                                                        417

EXHIBIT 28 PAGE 432

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    A.   Uh-huh.  I see "Women."

2    Q.   Directly below it it's "Men"?

3    A.   Okay.  Now that you've told me that that's

4  what it says I can see that.

5    Q.   Is there more than one set of rest rooms on   04:14PM

6  the floor of the Design Center?

7    A.   I think so.

8    Q.   Is there a set of rest rooms on the floor of

9  the Design Center close to an exit?

10    A.   Well -- I mean, this is close to.          04:15PM

11         MR. PROCTOR:  She's asking about your

12  knowledge of where they are in the Design Center

13  today.  She's not asking about this form.

14         THE WITNESS:  Now?  Yeah, there's a set

15  that's close -- it's not an exit out of the building   04:15PM

16  but it's an exit into a different part of the

17  building.

18  BY MS. TORRES:

19    Q.   And is it near an exit to the cafeteria?

20    A.   It kind of leads there, yes.               04:15PM

21    Q.   Is the Collectible -- does the Collectibles

22  group presently sit near those rest rooms?

23    A.   Yes.

24    Q.   Approximately where?

25    A.   Do you want me to use this now?            04:15PM

                                                      418

EXHIBIT 28 PAGE 433

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1       Q.   Yes.

2       A.   I think this is -- this is it.

3       Q.   Do you want to circle the general area you

4   believe the Collectibles group is in.

5       A.   (Indicating.)                          04:16PM

6       Q.   Do you recall who Carter Bryant sat next to

7   when he was at Mattel in your group?

8       A.   No.

9       Q.   Do you recall whether it was another

10  designer?                                       04:16PM

11          MR. PROCTOR:  Overbroad.  Are you asking

12  about the entire time period?

13          THE WITNESS:  I don't recall exactly who sat

14  next to him.

15  BY MS. TORRES:                                   04:17PM

16      Q.   Is it your best recollection that it was

17  somebody else in your group?

18          MR. PROCTOR:  Overbroad.

19          THE WITNESS:  I would -- I would think it

20  would have been.                                04:17PM

21  BY MS. TORRES:

22      Q.   Did you know a woman by the name of Paula

23  Treantafelles?

24      A.   No.

25      Q.   Is it fair to say then that Paula          04:17PM
                                                        419
```

Veritext National Deposition & Litigation Services
866 299-5127

EXHIBIT 28 PAGE 424

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        I declare under penalty of perjury

2   under the laws of the State of California

3   that the foregoing is true and correct.

4        Executed on _____,

5   2007, at _____,

6   California.

7

8

9

10        _____

11        ANN LAWSON DRISKILL

12

13

14

15

16

17

18

19

20

21

22

23

24

25

441

EXHIBIT 28 PAGE 435

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    STATE OF CALIFORNIA    ) ss:

2    COUNTY OF LOS ANGELES )

3

4            I, WENDY S. SCHREIBER, CSR No. 3558, do

5    hereby certify:

6

7            That the foregoing deposition of ANN

8    LAWSON DRISKILL was taken before me at the time and

9    place therein set forth, at which time the witness

10   was placed under oath and was sworn by me to tell

11   the truth, the whole truth, and nothing but the

12   truth;

13           That the testimony of the witness and all

14   objections made by counsel at the time of the

15   examination were recorded stenographically by me,

16   and were thereafter transcribed under my direction

17   and supervision, and that the foregoing pages

18   contain a full, true and accurate record of all

19   proceedings and testimony to the best of my skill

20   and ability.

21           I further certify that I am neither

22   counsel for any party in said action, nor am I

23   related to any party to said action, nor am I in any

24   way interested in the outcome thereof.

25
                                                    442
```

EXHIBIT 28 PAGE 436

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1          IN WITNESS WHEREOF, I have subscribed my

2    name this 20th day of July, 2007.

3

4

5

6    _____

7    WENDY S. SCHREIBER, CSR No. 3558, RPR

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

443

EXHIBIT 28 PAGE 437

**Exhibit  29**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112
WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

May 11, 2007

VIA FACSIMILE AND U.S. MAIL

Michael Page, Esq.
Keker & Van Nest LLP
710 Sansome St.
San Francisco, CA 94111

Re:   Mattel, Inc. v. Carter Bryant, et al.

Dear Michael:

Pursuant to paragraph 5 of the Order appointing a Discovery Master, I write to request a meet and confer regarding a motion Mattel contemplates filing to: (1) overrule additional instructions not to answer during Carter Bryant's deposition; and (2) reopen Mr. Bryant's deposition for all purposes based on repeated instances of coaching and improper conduct by defendants' counsel in violation of Fed. R. Civ. Proc. 30(d)(1).

Mattel previously moved to overrule instructions not to answer at the Bryant deposition in a motion dated February 1, 2007, which the Discovery Master granted in substantial part. See March 7, 2007 Order Granting in Part and Denying in Part Mattel's Motion to Overrule Instructions Not to Answer During the Deposition of Carter Bryant. However, Mattel did not include many instructions not to answer in that motion, including instructions not to disclose facts learned through communications with counsel, based on an understanding between the parties that such information is protected by the attorney-client privilege.

On May 4, 2007, the Discovery Master issued Orders overruling instructions made during the depositions of Alan Kaye and Ann Driskill that are comparable to those excluded in Mattel's prior motion. The Discovery Master also ordered those two depositions reopened for all purposes. See Order Granting in Part Bryant's Motion to Overrule Instructions Not to Answer

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2116572.2

EXHIBIT 29 PAGE 438

During the Deposition Alan Kaye, dated May 4, 2007; Order Granting in Part Bryant's Motion to Overrule Instructions Not to Answer During the Deposition of Ann Driskill, dated May 4, 2007.

In light of these rulings, Mattel contemplates moving to overrule additional instructions not to answer during the deposition of Carter Bryant, which have not been previously ruled on.[1] Mattel also intends to move to reopen Bryant's deposition for all purposes because, in addition to improperly instructing Mr. Bryant not to answer legitimate questions, counsel abused the discovery process and obstructed the deposition by coaching the witness, interposing lengthy narrative objections, and repeatedly taking the witness out of the room with questions pending.[2] The March 7, 2007 Order currently permits Mattel to depose Mr. Bryant for two hours. See id. ¶ 2. Mattel intends to seek additional time at the renewed Bryant deposition in light of the additional questioning necessitated by defendants' counsel's improper conduct at the original deposition.

As Bryant made substantially similar arguments to the Discovery Master in his motions regarding the depositions of Alan Kaye and Ann Driskill, and the Discovery Master agreed with these arguments, Mattel hopes that the parties can resolve Mattel's contemplated motion informally, without involving the Discovery Master in further motion practice.

Please advise when you are available to meet and confer. Of course, please do not hesitate to contact me if you have any questions.


Very truly yours,

B. Dylan Proctor

cc:    Douglas Wickham, Esq.
       Diana Torres, Esq.

---

[1]   These include the following excerpts from Mr. Bryant's deposition: 22:14-18; 23:6-14; 36:6-38:14; 41:14-42:18; 61:10-62:3; 62:7-9; 62:24-64:16; 92:20-93:5; 127:6-14; 139:1-9; 205:11-15; 246:19-247:15; 251:4-20; 463:4-21; 465:9-16; 466:16-24; 467:21-468:5; 470:4-11; 474:4-10; 475:5-11; 476:9-24; 477:4-9; 478:1-21; 591:11-22; 592:3-15; 595:15-21; 596:6-12; 621:24-622:5; 624:7-21; 639:11-17; 639:23-640:11; 642:6-17; 649:13-25; 677:17-22.

[2]   The following deposition excerpts are exemplary: 124:4-24; 187:17-190:1; 471:2-473:7; 478:22-480:7; 703:5-22.

EXHIBIT 29 PAGE 439

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:**   May 11, 2007

**NUMBER OF PAGES, INCLUDING COVER: 3**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Michael H. Page, Esq.<br>Keker & Van Nest, LLP | (415) 391-5400 | (415) 397-7188 |
| Diana Torres, Esq.<br>O'Melveny & Myers, LLP | (213) 430-6000 | (213) 430-6407 |
| Douglas Wickham, Esq.<br>Littler Mendelson | (310) 553-0308 | (310) 553-5583 |

**FROM:**   B. Dylan Proctor, Esq.

**RE:**   *Bryant v. Mattel*

**MESSAGE:**



FAXED
MAY 11 2007

07209/2119865.1

| CLIENT # | 7209 | ROUTE/<br>RETURN TO: | Mia Albert/3rd Floor | ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED?   ☐ No  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT 29 PAGE 440

```
05/11/2007 16:32 FAX  121344    0        QEUOH-LAO                        Ø001

        *********************************
        ***   MULTI TX/RX REPORT   ***
        *********************************
  TX/RX NO              1711
  PGS.                  3
  TX/RX INCOMPLETE      -----

  TRANSACTION OK
                   (1)  9414#007209#14153977188
                   (2)  9414#007209#12134306407
                   (3)  9414#007209#13105535583

  ERROR INFORMATION     -----
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

# FACSIMILE TRANSMISSION

DATE:     May 11, 2007

NUMBER OF PAGES, INCLUDING COVER: 3

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Michael H. Page, Esq. **Keker & Van Nest, LLP** | (415) 391-5400 | (415) 397-7188 |
| Diana Torres, Esq. **O'Melveny & Myers, LLP** | (213) 430-6000 | (213) 430-6407 |
| Douglas Wickham, Esq. **Littler Mendelson** | (310) 553-0308 | (310) 553-5583 |

FROM:      B. Dylan Proctor, Esq.

RE:        *Bryant v. Mattel*

MESSAGE:

EXHIBIT 2 PAGE 441

**Exhibit 30**

**quinn emanuel** trial lawyers I los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

July 17, 2007

**VIA FACSIMILE AND U.S. MAIL**

Michael Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

Re:     Mattel, Inc. v. Bryant

Dear Michael:

I write further to our telephone conference on June 19, 2007, and in response to your letter of the same date.

As we have discussed on several prior occasions, Mattel contemplates moving to re-open the Bryant deposition for all purposes, and for additional time at the renewed deposition beyond the two hours that Judge Infante has already allowed.  In addition to the other bases we have discussed (including that, when viewed as a whole, counsel's obstructive tactics at the Bryant deposition justify its being re-opened for all purposes), Bryant and MGA have now produced many highly relevant documents which were (1) requested prior to the Bryant deposition but (2) withheld by Defendants.  Mattel is entitled to question Bryant about these documents.

When we spoke on the telephone, you stated that you could not assess whether Bryant would agree to re-open the deposition for all purposes and allow Mattel additional time based on Defendants' prior withholding of evidence without seeing the evidence.  Just as defendants did not show Mattel the new documents they questioned Ann Driskill and Alan Kaye about at their renewed depositions in advance, Mattel is not willing to give Bryant a roadmap of its examination.  However, enclosed please find some of the highly relevant documents about which Mattel intends to question Bryant.  To be clear, this is a subset of the documents that Mattel

EXHIBIT 30 PAGE 442

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2176139.1

intends to ask Bryant about.  In offering these documents now, Mattel in no way limits its right to question Bryant about additional documents or other matters at the renewed deposition.

In addition to newly produced documents, Mattel is also entitled to question Bryant about the many new claims in this case that had not yet been filed when Bryant was first deposed.  Since that time, MGA has alleged broad unfair competition claims against Mattel and Mattel has filed a number of counterclaims against MGA, Bryant and other defendants.  Bryant undoubtedly has discoverable knowledge bearing on these claims.  Mattel is entitled to explore that knowledge at deposition.

Please let me know as soon as possible whether Bryant will agree that his deposition should be re-opened for all purposes and allow Mattel more than the currently allotted two hours for continued examination.  I look forward to hearing from you.

Very truly yours,

B. Dylan Proctor

BDP:lak
Enclosures

EXHIBIT 30 PAGE 443

2

| | |
|---|---|
| From: | Isaac Larian |
| Sent: | Tuesday, October 10, 2000 6:38 PM |
| To: | Victoria O'Connor |
| Cc: | Dennis Medici |
| Subject: | RE: CARTER COMPENSATION |

from the date he signed the contract.

-----Original Message-----
| | |
|---|---|
| From: | Victoria O'Connor |
| Sent: | Tuesday, October 10, 2000 10:56 AM |
| To: | Isaac Larian |
| Cc: | Dennis Medici |
| Subject: | FW: CARTER COMPENSATION |

Do you want to start his salary for the month of Octoebr since he began in September? Please advise.

-----Original Message-----
| | |
|---|---|
| From: | Paula Treantafelles |
| Sent: | Tuesday, October 10, 2000 9:02 AM |
| To: | Victoria O'Connor |
| Subject: | RE: CARTER COMPENSATION |

I would say that Carter has worked on average about 4 hours a day and we began working on this line the first part of September.

-----Original Message-----
| | |
|---|---|
| From: | Victoria O'Connor |
| Sent: | Tuesday, October 10, 2000 8:11 AM |
| To: | Paula Treantafelles |
| Subject: | FW: CARTER COMPENSATION |

Please let me know how many hours Carter has worked and the day he started meetings with you.  Thanks.

-----Original Message-----
| | |
|---|---|
| From: | Dennis Medici |
| Sent: | Tuesday, October 10, 2000 6:46 AM |
| To: | Victoria O'Connor |
| Subject: | CARTER COMPENSATION |

Victoria,
Please reply what amount we should pay Carter and have Isaac approve.  Thanks.

Dennis Medici
MGA Entertainment
(818) 894-2525
(818) 830-7176 fax

EXHIBIT 30 PAGE 444

1

CONFIDENTIAL
ATTORNEY'S EYES ONLY

# Veronica Marlow

**12250 Woodley Ave.**
**Granada Hills CA, 91344**

# INVOICE

INVOICE NO.:  G000625

DATE:      11/14/00

**Sold To:**

Paula Treantafales
MGA Entertainment
16730 Schoenborn St.
North Hills, CA 91343

**Ship To:**

Same

| SALESPERSON | P.O. NUMBER | DATE SHIPPED | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
| | PO03521 | 10/26/00 | | | net |

| QUANTITY | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|
| | "Bratz" dolls research, development and support services from 9/29/00 to 10/20/00. | | |
| 18 hrs. | Brainstorm and development meetings. | 50.00 | 900.00 |
| 12 hrs. | Support for body sculpting and packaging. | 50.00 | 600.00 |
| 18 hrs. | Fashion research. | 50.00 | 900.00 |
| 19 hrs. | Fashion development and support. | 50.00 | 950.00 |
| 21 hrs. | Pattern and sample development. | 50.00 | 1,050.00 |
| | | SUBTOTAL | 4,400.00 |
| | | SALES TAX @ 8.25% | 363.00 |
| | | SHIPPING & HANDLING | |
| | | TOTAL DUE | 4,763.00 |

*Only pay*
*(per P.O.)*      *$4,400.00*

_Customer Signature_

**THANK YOU FOR YOUR BUSINESS!**

EXHIBIT 30 PAGE 415

CONFIDENTIAL -
ATTORNEYS' EYES ONLY          REDACTED

MGA0008739

# Veronica Marlow

12250 Woodley Ave.
Granada Hills CA, 91344

# INVOICE

INVOICE NO.: G000626

DATE:      11/14/00

| Sold To: | | Ship To: | |
|---|---|---|---|
| | Paula Treantafales<br>MGA Entertainment<br>16730 Schoenborn St.<br>North Hills, CA 91343 | | Same |

| SALESPERSON | P.O. NUMBER | DATE SHIPPED | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
| | PO03522 | 10/26/00 | | | net |

| QUANTITY | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|
| | "Bratz" dolls third party services from 10/13/00 to 10/20/00. | | |
| 49 hrs. | Third party sewing and pattern making support. | 30.00 | 1,470.00 |
| 32 hrs. | Third party sewing and pattern making support. | 30.00 | 960.00 |

| | |
|---|---|
| SUBTOTAL | 2,430.00 |
| SALES TAX @ 8.25% | ~~200.48~~ |
| SHIPPING & HANDLING | |
| TOTAL DUE | 2,630.48 |

*Only pay $2,430.00*
*(per P.O.)*

Customer Signature

### THANK YOU FOR YOUR BUSINESS!

CONFIDENTIAL -
ATTORNEYS' EYES ONLY

REDACTED

MGA0008742

EXHIBIT 30  PAGE 446

SEP 14 '00 11:38 FR BHP   COLLECTIBLES  310 252 6059 TO 955P'517        P.01/04

To: David Rosenbaum

From: Carter H. Bryant

Total Pages: 4

EXHIBIT 20 PAGE 447

CONFIDENTIAL
ATTORNEY'S EYES ONLY                        MGA007337

September 14, 2000

Dear David,

Enclosed is a copy of my original offer of employment with Mattel. To the best of my knowledge, other than an agreement of confidentiality, there are no other expressed contracts that have been signed. I am unable to look into this too much further with our Human Resources director without risking suspicion, but I am quite certain that this should suffice.

Thank you very much.

Sincerely,


Carter H. Bryant


310-252-6099or
310-538-3615 home

EXHIBIT 3⁰ PAGE 448

CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA007338

SEP 14  '00 11:58 FR BH     COLLECTIBLES  310 252 8059 TO 555   511         P.03/04



**Mattel, Inc.**

331 Continental Boulevard
El Segundo, California 90245-5012
Phone: (310) 252-2000
Telex: 188133 or 188170

December 11, 1998

Mr. Carter Bryant
1-A Sycamore Dr.
Kimberling, MO 65686

Dear Carter,
Congratulations and welcome to Mattel!

We are pleased to confirm your acceptance of our offer for the position of Project Designer, and to outline the various benefits that are available to you as a member of the Mattel team.

**Compensation**

Your annual base salary will be ▮▮▮▮ payable on a bi-weekly basis.

**Relocation**

You will receive a relocation payment of ▮▮▮▮ less appropriate federal and state taxes, payable to you no later than 30 days following commencement of your employment.

If you choose to voluntarily terminate your employment with Mattel within one year of your date of hire, you will be required to repay this amount in full.

**Benefits**

The following is a brief outline of benefits in which you will be eligible to participate as of your date of hire. Specific details and plan limitations are provided in Summary Plan Descriptions or Plan Documents, and are subject to periodic modification and revision.

You and your qualified dependents, if applicable, will be eligible for the following coverage:

- Medical
- Dental
- Vision
- Prescription

- Life Insurance – 1-1/2 x base salary
- Accidental Death & Dismemberment – 1-1/2 x base salary
- Business Travel Coverage – $1,000.000
- Short & Long-Term Disability

You will be enrolled in the Mattel Personal Investment Plan (PIP), which is a 401(k) savings/retirement plan. The plan offers both Company Automatic and Matching contribution provisions as outlined below:

EXHIBIT 30  PAGE 449

CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA007339

SEP 14 '00 11:38 FR B↔   COLLECTIBLES  310 252 8659 TO 933*   LA        P.04/04

- **Company Automatic Contributions**
  The Company will make automatic contributions to your account ranging from 3% to 8% of your salary, based on age.

- **Company Matching Provision**
  The Company will match up to the first 6% of pay you contribute to your PIP account on a dollar-for-dollar basis up to 2% of your annual salary and on a fifty-cents-on-the-dollar basis for up to the next 4% of your salary

Of course, this offer is contingent upon satisfactory verification of all information as to previous employers and academic institutions attended, eligibility to work in the United States, and the signing of a Confidential Information and Inventions Agreement. Further, you understand that this letter does not imply employment for a specific term and thus your employment is at will; either you or the Company can terminate it at any time, with or without cause. This letter acknowledges there are no oral or written side agreements or representations concerning the term or conditions of employment. Additional details of your employment relationship are contained in our employment application.

Enclosed is a packet containing various information and forms required to activate your employment. Please complete these forms and bring them with you on your first day of employment. Also, you will need to bring with you certain documents as set forth in the enclosed directions. Upon your arrival in the second floor lobby, please advise the security officer that you are a new employee. You will be escorted to an orientation session beginning at 8:00 a.m., which will last most of the morning.

Carter, we are all looking forward to you joining the Mattel team on 1/4/99. As a new member of the Mattel family, please feel free to call me at [310] 252-2535 if you have any questions.

Sincerely,

Lynne Robinson
VP, Human Resources

EXHIBIT 30 PAGE 45C

2

** TOTAL PAGE.04 **

CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA007340

# ENGAGEMENT AGREEMENT

## Scope of Representation

We are pleased you have decided to retain Littler Mendelson to provide legal services in the area of employment law. The scope of representation that you have asked us to undertake is representation of you in the matter of *Mattel, Inc. v. Carter Bryant and Does 1 through 10*, Los Angeles Superior Court Case No. BC314398. All of the attorneys in our Firm are well-versed in employment law, although some attorneys have greater experience in particular areas. As appropriate, various attorneys within the Firm may participate in representing your interests. In addition, the Firm may utilize the services provided by our paralegal staff. The scope of our representation may expand from the work described above (a) as specifically agreed in writing or (b) to the extent of work actually rendered and billed.

## The Retainer

The Firm will not require a retainer at this time. Depending on the nature and extent of the services which will be required from us, we may require a retainer based on probable fees and expenses to be incurred. Please understand that this initial retainer deposit is not meant to be an estimate of the total fees and expenses to be incurred but rather is your good faith deposit against such fees and expenses that may be incurred.

Any retainer will not be applied to any billings; rather it will be retained until such time as is agreed that our services for this matter are complete. In the event that any of the matters referred to us are set for trial, we reserve the right to request that you pay an additional retainer in an amount equal to the probable fees, costs, and expenses to be incurred in preparation for and during trial. You hereby authorize us to withdraw amounts from the trust account and apply them to any delinquent invoice. You will be invoiced for replenishment of the amount withdrawn. Non-replenishment within thirty (30) days of the replenishment amount plus amounts then due shall be a breach of this agreement. Any unused portion of the retainer will be returned to you promptly upon completion of our services, or any amounts due to us in excess of the retainer will be billed to you.

## Our Fees and Billing Policy

Our legal fees are based on how much time is spent on your matter and by whom it is spent. A minimum time of 1/4 hour is charged for work performed, even though the actual time expended may be less. Work in excess of 1/4 hour is billed similarly in increments of 1/4 of an hour. Under the Firm's fee structure, the hourly fees for attorney time, paralegal time, and legal research assistance vary by individual. The hourly rates of the attorneys assigned to this matter, and the hourly rates of other attorneys in the Firm who may assist me in representing you are from $155 to $325 and from $50

1.

EXHIBIT __30__ PAGE __451__

Attorneys' Eyes Only    BRYANT2 000010

to $175 for non-attorneys. From time to time the Firm reviews and may increase hourly rates. If the hourly rate of any individual is increased, the new rate will be indicated on your next bill. The current hourly rates are in effect:

Robert Millman: $525/hour

Keith Jacoby: $425/hour

Douglas Wickham: $425/hour

Our hourly rates are subject to revision. We will provide you with information regarding our current hourly rates at your request at any time. You will be able to determine the hourly rates of each attorney and paralegal working on your matter from our monthly statement. Accordingly, it is understood that our fees charged in this matter may include increases and that these increases will be reflected in our monthly statements.

We will bill you for reasonable and necessary individual expenses of less than $1000 which we incur in connection with your representation. We will provide you with additional details on these and any expenses upon request. Invoices for out-of-pocket expenses, such as long-distance telephone charges, deposition transcripts, expert witness fees, courier and messenger services, any postage over one dollar, purchased copies, car rental, and travel expenses will be billed at the actual cost incurred by us. In-office photocopying is billed at 15¢ per page, outgoing facsimiles at $1.50 per page, and personal automobile mileage at 37.5¢ per mile.

We will forward to you invoices from vendors in amounts in excess of $1000 and will expect that you will promptly pay the vendors. Failure to make prompt payments could adversely affect our relationships with the vendors and hinder our ability to successfully represent you.

MGA Entertainment has agreed to assume responsibility for payment of the legal fees incurred as a result of Littler Mendelson's representation of you in the Action. While, at this time, MGA is aware of no facts that would call your truthfulness into question and sees no reason to do so, MGA must reserve its right to terminate this agreement at any time, for any reason and, if appropriate, seek reimbursement of any fees expended in your defense. Any termination of this agreement will be in writing and shall be immediately effective, and upon receipt of that termination notice, you agree to personally assume responsibility for fees under this Agreement on a going forward basis. We will bill you for our services and expenses monthly, and you agree to pay our statements upon presentation. We believe that our billing procedures are simple and clear. Our billings, together with communications with you through telephone conversations, meetings, letters, facsimiles and copies of significant documents, serve to inform you of the work being performed on your behalf. However, should you have any questions or comments about hourly rates, hours charged, billing practices, or expenses, we strongly encourage you to contact us promptly.

2.

EXHIBIT 30 PAGE 452

Attorneys' Eyes Only          BRYANT2 000011

If you request or require any changes to the format of our billings, including the amount of detail or itemization of our work, or if you have concerns with the accuracy or amount of any billing to you, you agree to notify us in writing within 60 days of receipt of the billing of any such concern, request, requirement or objection. Upon the expiration of the 60-day period, all billings not previously objected to in writing shall be deemed accepted and a part of this written agreement.

In certain circumstances, a court or arbitrator might order payment of costs or attorney fees by one party to the other. If any such fees or costs are paid to us, they will be credited against the amount you owe us, but you will remain liable for any unpaid portion of our bills. If a court awards fees or costs against you, in favor of the opposing party, you will be responsible for payment of that amount separately from, and in addition to, any amounts due us. In the event a recovery is obtained, our Firm will have a lien for all unpaid attorney fees and costs advanced on all claims and causes of action that are the subject of the representation under this agreement and on all proceeds of any recovery obtained whether by settlement, arbitration award, or court judgment.

### Your Duty to Provide Information and Cooperate With Us

We, as your attorneys, strive to provide the highest quality of services, and we expect from our clients the highest degree of cooperation and assistance. You agree to fully respond to any inquiries we make, provide written materials or documents in a timely manner, and otherwise provide us with any and all information necessary for your defense. Failure to provide such information could prejudice your case and ultimately reduce the effectiveness of our representation.

Further, we make every effort to ensure there are no conflicts of interest among our clients. For this purpose we ask that you submit to us a list of all subsidiary or affiliated entities and your parent company, as well as a list of the shareholders of closely held corporations, if applicable, principal officers and board members, and any other entity involved in your matter that you have reason to believe has, or has had, a relationship with the Firm. Please update this information as changes occur.

### Responsibility for Fees

If more than one entity or person has signed this Engagement Agreement, then each is jointly and severally responsible for all fees and costs accruing hereunder, notwithstanding the fact that the clients may agree to apportionment among themselves or that the Firm may bill or accept payment in accordance with such an apportionment agreement.

### Insurance Coverage Issues

Any or all of the claims made in this matter may be covered by insurance. Because such matters are outside the scope of our representation, specific questions of insurance coverage should be directed to your insurance professional or other counsel.

3.

EXHIBIT *30* PAGE *453*

Attorneys' Eyes Only       BRYANT2 000012

FRI 13 2004 16:33 FR KEATSMCFARLAHDWILSON 310 6660363 TO 11111HI6S06H00001 P.12/14
MAY 13 04 06:44P    HAY-13 2004 15:51 KEATSMCFARLAHDWILSON 310 9660363 TO 11111H9366H4033 P.12/12

We recommend that you do so promptly. Insurance coverage and payment issues are expressly the responsibility of the client, unless otherwise specifically agreed to by the Firm in writing. At your instruction, we will cooperate with your insurance carrier and insurance professionals by providing information regarding your claim and copies of your billings, but insurance companies, rightfully or wrongly, sometimes dispute the issues of coverage and the amount, if any, they are willing to pay their insureds' independently retained counsel. In addition, insurance carriers sometimes impose delays before payment or apply different billing standards and methods than used by Litler. Accordingly, we will bill our fees and costs directly to you, and payment will be due from you on a current basis, whether or not your carrier eventually reimburses you. An insurance company's determination of what it will pay for Litler's services, whether greater or lesser than actually billed, is a matter of contract between the insurance company and its insured and does not affect the amount due to Litler.

### No Guarantee

No law firm or attorneys, including our Firm and our attorneys, can guarantee the outcome of any legal dispute. Thus, although an attorney or attorneys of our Firm may offer an opinion about possible results regarding any matter in which we represent or advise, we do not and cannot guarantee any particular result. Moreover, we cannot predict in advance what the total amount of fees will be for our services. You acknowledge that the Firm has made no promises about the outcome, including the costs and expenses of litigation, and that any opinion offered or budget provided by the Firm or any of its attorneys will not constitute a guarantee.

### Termination of Representation

We do not foresee any circumstances that would lead to termination of our attorney-client relationship, other than completion of all anticipated tasks on your behalf. However, the law allows a client the right to terminate the representation of an attorney or law firm at any time. Subject to our giving you reasonable notice for you to arrange alternative counsel, our Firm reserves the right to discontinue work on pending matters or terminate our attorney-client relationship at any time that a statement remains due and unpaid 60 days after it has been sent, at any time when we feel our relationship with you puts us in violation of the ethical principles and standards, or at any time termination of the relationship is required or permitted by law.

All files and/or documents retained at the Firm relating to your representation are and remain your property, as the client, except for the Firm's internal and/or administrative documents, such as attorney time sheets. You may have access to these materials at any time, and upon termination of our representation, you may withdraw these materials with prior written notice. The Firm reserves the right to photocopy the client's files at the client's expense. We reserve the right to destroy all files ten years after the cessation of representation in a matter unless you request their return. In the event you choose to change representation to any attorney outside this

4.

EXHIBIT 30 PAGE 45

Attorneys' Eyes Only        BRYANT2 000013

Firm, a written notice authorizing the transfer of your files must be submitted. We reserve the right to retain photocopies of any of these documents.

### If a Dispute Arises Between Us

We appreciate the opportunity to serve as your attorneys and look forward to a professional and mutually beneficial relationship. However, in the event you become dissatisfied with any aspect of our relationship including, for example, the quality or adequacy of our representation or the fees charged, we encourage you to bring such concerns to our attention immediately. It is our belief that most problems can be resolved by good faith discussion between us. Nevertheless, it is always possible that a dispute may arise which cannot be resolved by discussion between us. In such an event, we will first comply with any mandatory dispute resolution procedures which may apply to any such dispute.

If mandatory dispute resolution procedures regarding our fees or costs have been waived or exhausted or a dispute exists between us regarding a claim that any legal services rendered by an attorney, under this agreement or otherwise, were improperly, negligently, or incompetently rendered, or otherwise rendered in breach of a contractual, legal, or ethical duty, you and the Firm agree that the dispute will be submitted exclusively to final and binding arbitration.

In arbitration, there is no right to a trial by jury, and the arbitrator's legal and factual determinations are generally not subject to appellate review.

It is further agreed and understood that initial resort to the courts by either party shall not be considered a waiver of that party's right to compel binding arbitration under this provision. In cases in which the amount in controversy is $200,000 or greater, each party shall select a party arbitrator. These party arbitrators shall then select a retired judge or justice as a neutral arbitrator. The three arbitrators shall decide all disputed matters and render an award. If the amount in controversy is less than $200,000, the matter shall be decided by a single neutral arbitrator who shall be a retired judge or justice. Any legal or arbitral proceedings hereunder may be commenced where the Firm performed the majority of the legal services which are the subject of the dispute or where payment of fees and costs for those services is due. Arbitration shall be in accordance with the law of the state in which the proceedings are commenced.

You are free to discuss the advisability of arbitration with us or your independent counsel or any of your other advisors and to ask any questions which you may have prior to signing this agreement.

5.

EXHIBIT 30 PAGE 455

Attorneys' Eyes Only          BRYANT2 000014

MAY 13 2004 15:52

### Acknowledgement of This Agreement

Please acknowledge this agreement by signing and returning it to us, keeping a signed copy for your records, with your check in the amount of $1 representing the retainer discussed above. We appreciate the confidence you have in Littler Mendelson. We look forward to serving you.

APPROVED, ACCEPTED AND AGREED TO THIS
_13th_ DAY OF May, 2004

ON BEHALF OF CARTER BRYANT.

CARTER BRYANT

6.

EXHIBIT 36 PAGE 434

Attorneys' Eyes Only      BRYANT2 000015

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY  10010
(212) 849-7000
Facsimile: (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd  Floor
San Francisco, CA  941 11
(415) 875-6600
Facsimile: (415) 875-67 00

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA  94 065
(650) 801-5000
Facsimile: (650) 801-51 00

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:**     July 17, 2007                    **NUMBER OF PAGES, INCLUDING COVER: 16**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Michael Page, Esq. Keker & Van Nest | (415) 391-5400 | (415) 397-7188 |

**FROM:**          B. Dylan Proctor, Esq.

**RE:**          *Bryant v. Mattel*

**MESSAGE:**



07209/2158759.1

| CLIENT # | 7209 | ROUTE/ RETURN TO: | Mia Albert/3rd Floor | ☒ CONFIRM FAX ☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | *cyu* | | CONFIRMED?  ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000**   EXHIBIT 30 PAGE 457

07/17/2007 16:41 FAX 1213443:          QEUOH-LAO-2                              ☒001

```
                              *********************
                         ***    TX REPORT    ***
                              *********************

            TRANSMISSION OK

            TX/RX NO             2853
            RECIPIENT ADDRESS    9414#07209#14153977188
            DESTINATION ID
            ST. TIME             07/17 16:36
            TIME USE             05'48
            PAGES SENT           16
            RESULT               OK
```

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   July 17, 2007                    **NUMBER OF PAGES, INCLUDING COVER: 16**

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Michael Page, Esq.<br>**Keker & Van Nest** | (415) 391-5400 | (415) 397-7188 |

**FROM:**       B. Dylan Proctor, Esq.

**RE:**         *Bryant v. Mattel*

**MESSAGE:**

EXHIBIT 30 PAGE 458

**Exhibit 31**

Received:   5/15/07  9:3          415 397 7188 -> QUIN   MANUEL; Page 1
05/15/07   09:21 FAX 415 397 7188          KEKER & VAN NEST                                ⌀001/003

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188

## FACSIMILE TRANSMISSION COVER SHEET

May 15, 2007

| To | Telephone | Facsimile |
|---|---|---|
| B. Dylan Proctor<br>Quinn Emanuel Urquhart Oliver & Hedges,<br>LLP | 213/443-3000 | 213/443-3100 |
| Diana M. Torres<br>O'Melveny & Myers | 213/430-6000 | 213/430-6407 |
| Douglas A. Wickham<br>Littler Mendelson | 310/553-0308 | 310/553-5583 |

| From | Telephone | Code |
|---|---|---|
| Michael H. Page | (415) 391-5400 | 6647/nsn |

Re    Bryant v. Mattel

### Number of Pages (Including Cover): 3

## COMMENTS

Please see attached.

Operator _____                                 Time Sent _____

### IF YOU ENCOUNTER ANY DIFFICULTIES RECEIVING THIS TRANSMISSION, PLEASE CALL (415) 676-2277 OR (415) 391-5400

The information contained in this facsimile transmission is legally privileged and confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please notify us immediately by telephone, and return the original transmission to us at the above address via the U.S. Postal Service. Thank you.

393005.01                                        EXHIBIT 31   PAGE 459

Received:    5/15/07   9:3⊥    ;          415  397  7188  -> QUIN     MANUEL;  Page 2
05/15/07   09:21 FAX 415 397 7188      KEKER & VAN NEST                              ☒002/003

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

MICHAEL H. PAGE
MPAGE@KVN.COM

May 15, 2007

**VIA FACSIMILE & U.S. MAIL**

B. Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

Re:    *Bryant v. Mattel*
       United States District Court, Central District of California
       Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727

Dear Mr. Proctor:

I write in response to your letter of May 11, 20007, asking to meet and confer in anticipation of your refiling the motion to compel Mr. Bryant to answer questions put to him during his deposition—a motion you have already brought and substantially won, after extensive meet-and-confer efforts, full briefing, and hearing. If I understand your position correctly, you seem to believe that something contained in Judge Infante's recent rulings concerning the depositions of Kaye and Driskill constitutes a change in either controlling law or fact that would justify reconsideration of your prior motion. If so, we do not share your understanding, and invite you to identify the basis of your request.

That being said, I have reviewed the many additional portions of Mr. Bryant's deposition you have cited, and would be happy (or at least willing) to discuss them with you. Contrary to the assertions in your letter, virtually none of them constitute instructions not to answer, but instead admonitions to omit privileged matter from the witness's answer. Any impression to the contrary is created solely by your repeated truncation of citations, typically immediately before the witness answers, and in one instance immediately before Mr. Quinn withdraws the question. I trust you will be more scrupulous if and when you present excerpts to the court.

It was your choice to select certain portions of Mr. Bryant's deposition to move on, and to omit other portions. You are not entitled to a "do-over," and I do not intend to put my client to the expense of repeating the exercise based on issues you neglected to raise the first time

EXHIBIT 31 PAGE 460

Received:   5/15/07  9:32.   .          415 397 7188 -> QUIN.   MANUEL;  Page 3
05/15/07  09:22 FAX 415 397 7188          KEKER & VAN NEST                        ☒ 003/003

B. Dylan Proctor
May 15, 2007
Page 2

around.  I will be in Los Angeles on Thursday and Friday for the depositions in this case, and can meet with you on a break on either day to discuss the matter further.

Very truly yours,

Michael H. Page

MHP/nsn

cc:     Diana M. Torres
        Douglas A. Wickham

EXHIBIT 31 PAGE 461

**Exhibit  32**

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

MICHAEL H. PAGE
MPAGE@KVN.COM

July 19, 2007

**VIA PDF AND U.S. MAIL**

B. Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

Re:   *Bryant v. Mattel*
       United States District Court, Central District of California
       Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727)

Dear Dylan:

I write in response to your letter of July 17, regarding your contemplated motion to reopen Mr. Bryant's deposition. We have considered the materials you have presented, and they do not alter our previous position. Simply put, you have already made your motion on this subject, and cannot go back and make it again because you wish the result had been better the first time. With the sole exception of Mr. Bryant's fee agreement, all of the documents you now claim justify renewing your motion were produced to you by MGA long before you filed your motion the first time: if you thought they justified additional deposition time, you should have included them in that motion.

Neither does the court's subsequent ruling on the Kaye and Driskill depositions justify a "do over." In those cases, the court found that your colleague's persistent obstruction had prevented us from conducting a full seven hours worth of deposition, and thus ordered additional time. In Mr. Bryant's case, by contrast, you have already had three full days of deposition, and the court found that only specific, individual questions on which Mr. Bryant was instructed should be answered, along with follow-up from those questions.

It was Mattel's tactical choice to take Mr. Bryant's deposition early in the litigation, before Mattel had completed document discovery from MGA. That tactical choice had its advantages and disadvantages. But it was your choice, and "C, all of the above" was not one of the options.

399431.01

EXHIBIT 32 PAGE 462

B. Dylan Proctor
July 19, 2007
Page 2

I am of course available to discuss this matter further, should you choose.

Very truly yours,

Michael H. Page

MHP/nsn

EXHIBIT 22 PAGE 403