QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for Plaintiff Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| Plaintiff, | Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | [PUBLIC REDACTED] AFFIDAVIT OF MICHAEL MOORE IN SUPPORT OF MATTEL, INC.'S OPPOSITION TO MGA ENTERTAINMENT, INC.'S MOTION FOR TERMINATING SANCTIONS DUE TO SPOLIATION OF EVIDENCE |
| Defendant. | |
| AND CONSOLIDATED CASES | |
| | Discovery Cut-off: January 14, 2008<br>Pre-trial Conference: April 7, 2008<br>Trial Date: April 29, 2008 |

07209/2212847.2

MICHAEL MOORE AFFIDAVIT

# AFFIDAVIT OF MICHAEL MOORE

I, Michael Moore, being duly sworn, state as follows:

1. I submit this affidavit pursuant to the Court's Order denying MGA Entertainment, Inc.'s and Byrant's Motion for Terminating Sanctions, dated August 27, 2007, which directed Mattel, Inc. ("Mattel") and the other parties to this litigation to set forth in affidavit form their preservation efforts and policies with respect to the present litigation, with a particular focus on the time period identified by the Court, namely fall 2003 and spring 2005. Except as identified herein, I make this affidavit of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify as set forth below.

2. I have been a Mattel employee since December 2000. I am currently Senior Counsel in Mattel's Legal Department.

3. I have been personally involved with the collection and preservation of documents and tangible things in Mattel, Inc. v. Bryant, Case No. 04-9059; Bryant v. Mattel, Inc., Case No. 04-9049; MGA Entertainment, Inc. v. Mattel, Inc., Case No. 05-2727, which have been consolidated. I have also been personally involved in the collection and preservation of documents and tangible things in other cases (to which MGA and Bryant were not parties) involving Mattel products and product lines known as MY SCENE and DIVA STARZ.

4. I personally participated in and supervised the investigation, identification, collection and preservation of documents and tangible things that relate to the basis of Mattel's claims and Mattel's defenses to MGA's claims in these consolidated cases.

### PRESERVATION PRIOR TO APRIL 2005

5. Mattel employed Carter Bryant, most recently, from January 4, 1999 to October 20, 2000. During that time he worked in Mattel's *Barbie Collector* group, which was located in Mattel's Design Center in El Segundo, California.

07209/2212847.2

6. During the summer of 2003, I, with others, began investigating any potential misconduct by Bryant while a Mattel employee or thereafter. During the course of that investigation I interviewed numerous Mattel employees regarding Bryant and his work for Mattel. During those interviews, I inquired about possible sources of documents and things on that subject. A list of employees that I recall interviewing from the time that my investigation began through the time that Mattel filed its complaint in April 2004 is attached at Exhibit A. I, and those acting at my direction, also collected and preserved Bryant-related documents from those individuals. Whenever a person with potentially relevant information was interviewed, either I or other counsel, asked the interviewee to provide any Bryant-related materials in his or her possession, and if they come across Bryant-related materials thereafter, to preserve and to provide them to me.

7. I spoke with members of Mattel's IT department to obtain an understanding about Mattel's policies, procedures and practices regarding the use, storage and preservation of electronic data, and regarding server infrastructure. I specifically inquired about possible locations of electronic information related to Bryant, and the policies, procedures and practices regarding the preservation or backup of electronic information that could pertain to Bryant.

8. Also, during the investigation phase, I, and those acting at my request, created and preserved forensic images of the hard drives of the personal computers of those employees who we believed could have potentially pertinent information and who still worked at Mattel, namely the hard drives of

**REDACTED**

9. Due to the Mattel e-mail retention policy of 90-days on its e-mail servers and a 30-day rotation policy for e-mail server backup tapes, any e-mail

-3-

1 message that Carter Bryant authored or received would not have been on either an e-
2 mail server or a backup tape 120-days after he quit, by mid-February 2001.
3 Nevertheless, starting in 2003, I searched and instructed others to search for old e-
4 mail server backup tapes. No such old tapes were located.

5     10. Starting in the fall of 2003, Mattel used SMTP logs to collect
6 some e-mail messages received by Mattel employees from specific locations on the
7 Internet, including <mgae.com>, and sent by Mattel employees to those locations.
8 To the extent that Mattel was able to identify such e-mail messages that appeared to
9 be potentially relevant, they have been preserved.

10     11. Beginning on or about December 23, 2003, Mattel implemented
11 an automated security tool that monitored e-mail messages that traveled into Mattel
12 or that were sent from Mattel's e-mail system. Mattel used certain keywords,
13 including Bryant and MGA, for which the security tool monitored incoming and
14 outgoing e-mail messages. If an e-mail message contained a keyword, then the
15 security tool made a copy of the e-mail and delivered it to a separate mailbox. Since
16 Mattel implemented this security tool, it has preserved in excess of 184 gigabytes of
17 e-mail messages and attachments, (although not all relate to Mattel's dispute with
18 MGA and Bryant).

19     12. Mattel employees can also store e-mail messages older than 90
20 days in places other than e-mail servers, including by printing them out and filing
21 them, by saving them on their local hard drives or by saving them to their personal
22 storage space on Mattel's data servers or by creating archive files denoted by the
23 suffix ".pst," which contain multiple e-mail messages and may be stored in similar
24 locations.

25     13. I, and others, searched for, identified and preserved e-mail
26 messages relating to Bryant that we could locate. In particular, during late 2003
27 through 2004, Mattel searched for, and to the extent such accounts existed,
28 preserved e-mails then contained in the mailboxes of Mattel employees who we

believed may have sent e-mail messages to Carter Bryant or who may have Bryant-related e-mail messages. These include (i) e-mail messages written by, to or mentioning current or former employees, including Carter Bryant, Cassidy Park, Ann Driskill, Lily Martinez, Mercedeh Ward, Margaret Hatch-Leahy, and certain third parties, including Isaac Larian and any other person using an mgae.com e-mail address; and (ii) e-mail messages referring to Bratz or MGA. Later, in or about October 2004, Mattel collected and preserved the mailboxes of a broader range of individuals who are identified on Exhibit B. These e-mail archives are currently stored in a secure, off-site storage facility.

14. In addition I, and others with me, searched Mattel's El Segundo Tower and Design Center for personal computers that were potentially in use during the relevant time period. Mattel located approximately 130 computer hard drives and 14 workstation computers that Mattel's IT department had in its possession from prior years. These hard drives and workstation computers are currently preserved in a secure, off-site storage facility. A list of these hard drives is attached as Exhibit C. A list of these workstation computers is attached as Exhibit D.

15. In an effort to identify any computer used by Carter Bryant, in October 2004, the Mattel Help Desk data center reviewed its Help Desk records for the time periods of Bryant's employment to determine whether the data center had any help tickets or other records of Carter Bryant requesting assistance with any computer. No such records were found.

16. In 2004, Mattel also searched its records of employee desktop computers in an effort to identify a desktop computer used by Carter Bryant when he was a Mattel employee. Mattel collected, preserved and reviewed obsolete equipment lists, records from IT procurement, including invoices for computers that Mattel had purchased. To locate and preserve any Mattel computer that Carter Bryant could have used three years previously, Mattel identified the type of computer from its procurement records. The hard drive of one of the possible

1. computers was located in Mattel's Design Center IT storage facility. This hard drive is currently preserved in a secure, off-site storage facility.

17. Mattel preserved the original hard drive of this computer and other computers, and also created forensic images of hard drives of persons who could have relevant information, including those persons identified on Exhibit E.

**REDACTED**

As a result of the searches, backup tapes containing data from Zeus were located and preserved as explained at the hearing. In addition, Mattel has preserved backup tapes for 2003, 2005 and 2006. Those tapes are stored in a secure location.

19. In the summer of 2003, I instructed the people responsible for Mattel's phone system to identify, collect and preserve all phone logs for the El Segundo Campus for 2000. Mattel had a PC with Microcall software installed that logged calls going into and out of Mattel's El Segundo campus. In 2000, there was a practice to archive the Microcall phone log data on archive tapes on a monthly basis. These tapes were on a three-year rotation schedule. Attached as Exhibit F is a list identifying the Microcall archive tapes that were located. I never received the October 2000 or December 2000 archive tapes. I instructed those responsible to continue to search for those tapes. They have not been located. Those archive tapes that were located are currently preserved in a secure location.

20. I am informed and believe that Mattel maintains a project and time reporting system for design and manufacturing of Mattel products known as the TRACS Database Server. Mattel has preserved the data contained in the TRACS database. As a precautionary measure, on October 7, 2004, a backup of the TRACS database was created and is currently preserved in a secure, off-site location. A hard drive containing the data export is also currently preserved in a secure, off-site storage facility.

21. In addition to collecting and preserving the foregoing information I, with others assisting me, sought and preserved the following types of electronic information:

- a forensic image of the Mattel badging computer
- optical platters containing accounting records
- focus group media and related documents
- phone bills and phone call logs received from the carriers used by Mattel.
- Barbie Collector planning files

**PRESERVATION FROM OTHER MATTEL CASES**

22. In 2002, Mattel released a new fashion doll line called MY SCENE. In early 2003, Simba Toys & Co. GmbH KG ("Simba") began to market and sell knock-offs of MY SCENE dolls at a toy fair in Nuremberg, Germany. Beginning at least as early as Spring 2003, Mattel employees that were known to have worked on designs for Mattel's MY SCENE dolls were instructed to gather and preserve documents related to the development of MY SCENE for purposes of litigation against Simba. Mattel and Simba had an expedited trial in October 2003 in London, England. Mattel prevailed. All materials that were collected for the Simba litigation have also been preserved for this litigation.

23. In 2002, an individual named Gustavo Duarte Viveros pursued an action in Mexico against Mattel de Mexico claiming that Mattel's DIVA STARZ doll line infringed copyrights in drawings he allegedly created. After abandoning that action in Mexico, Duarte Viveros sued Mattel in the Central District of California in October 2004, alleging that Mattel's DIVA STARZ doll line infringed his allegedly copyright protected drawings and constituted idea theft. In connection with the Duarte Viveros litigation, Mattel collected and preserved existing documents, electronic files, e-mail and tangible items (making up in excess of 70 boxes) related to DIVA STARZ, including e-mails and other documents of Mattel

employees who worked on DIVA STARZ, such as designers Maureen Mullen, Rene Pasko, Joni Pratte and Rob Hudnut, and from various third parties who worked on the project, such as Steve Linker. In connection with this effort as well, Mattel collected and preserved pertinent existing electronic files from the Zeus server and back-up tapes as well as from the hard drives and other electronic media used by numerous individuals. All materials that were collected for the Duarte Viveros litigation have also been preserved for this litigation.

## PRESERVATION IN APRIL 2005 AND LATER

24. MGA Entertainment, Inc. served a complaint on Mattel, Inc. on April 13, 2005. The allegations in that complaint were broad, and were different from those that Mattel had previously investigated and asserted against Bryant. MGA accused Mattel of trademark infringement, dilution and other claims with respect to a number of Mattel's product lines and accused Mattel of engaging in unfair competition.

25. Since April 2005, I have helped coordinate the collection and preservation of documents and things in connection with the allegations in MGA's complaint. On April 18, 2005, a memorandum from Robert Normile, Mattel's General Counsel, was distributed to all Mattel employees instructing them to preserve documents related to the allegations in the complaint, as Mattel understood them. Mattel's outside counsel informed MGA of the general categories of documents that it would preserve. A true and correct copy of a letter from Jon Corey, Mattel's outside counsel, to Diana Torres, who I understand to be counsel for MGA, is attached as Exhibit G. Mattel has, thereafter, reminded its employees of their document preservation obligations.

26. Based on the breadth of the allegations in MGA's complaint, Mattel began interviewing employees who may have knowledge of the allegations contained in that complaint or who may have documents containing information relevant to those allegations. Starting in April 2005, Mattel has conducted

1 | interviews of more than 60 individuals, and Mattel continues its investigation and interviews to this day. I, or others from the law department, have attended the majority of those interviews. One purpose of these interviews was to determine whether those individuals had documents (whether physical or electronic) that could contain potentially relevant information or possessed tangible things that could be relevant to MGA's allegations, or if they knew who would. If they did, then those documents and things were collected and reviewed and, in some cases, their hard drives were imaged. To date, Mattel has reviewed approximately two million pages of documents.

27. On April 18, 2005, Mattel's IT department stopped recycling the backup tapes used to back up Mattel's e-mail servers located in El Segundo, California. Mattel performed a backup of these e-mail servers every day, Mattel retained e-mail messages on its e-mail servers for 90 days, and Mattel reused its e-mail server backup tapes every 30 days. So, the oldest e-mail server backup tapes—dated April 18, 2005—have e-mail messages going back to approximately mid-December 2004. Mattel has continued to preserve the tapes created by the nightly backups of the El Segundo e-mail servers to the present. Currently, Mattel has in excess of 4,000 of these backup tapes containing hundreds of terabytes of data.

28. Hundreds of people leave Mattel's employ every year. Since May 2, 2005, Mattel has reviewed the identity of those who leave Mattel in an effort to preserve the information associated with those individuals, to the extent that they may have potentially relevant information.

**REDACTED**

29. Prior to 2003, Mattel used a high performance disk array for much of its network storage in El Segundo. In 2006, Mattel retired its old disk array and purchased a new, larger and more reliable disk array. Before Mattel did so, it prepared a backup of the data on the old disk array, which is preserved in a secure, offsite location. Mattel then took steps to ensure that all of the information was transferred from the old disk array to the new disk array. The old disk array was taken to a secure, off-site location.

30. Since I first began investigating Bryant's potential misconduct while an employee or thereafter, in connection with these consolidated cases and the Viveros and Simba cases, Mattel has preserved thousands of backup tapes, hard drives, computers, electronic media (in addition to preserving the information existing on its computer systems). Mattel has also preserved millions of pages of documents. This affidavit has described Mattel's preservation efforts generally over the past four years with a particular focus on the topics identified by the Court. Mattel has not, however, audited or listed each piece of electronic media or document that it has preserved over those four years and that it continues to preserve, because the extensive scope and wide variety of the tapes and media involved makes fully cataloging all of it impracticable.

_____
Michael Moore

Duly sworn and subscribed before me on the 10th day of September, 2007.

State of California County of
Los Angeles
Subscribed and sworn to (or affirmed)
before me on this 10 day of Sept 2007 by
Michael T. Moore
personally known to me or proved to me on
the basis of satisfactory evidence to be the
person(s) who appeared before me.
Signature: F. Fahmie

F. FAHMIE
Comm. No. 1639258
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. Jan. 17, 2010

(Seal)

07209/2212847.2

-10-

MICHAEL MOORE AFFIDAVIT

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California.

On September 10, 2007, I served true copies of the following document(s) described as: **AFFIDAVIT OF MICHAEL MOORE IN SUPPORT OF MATTEL, INC.'S OPPOSITION TO MGA ENTERTAINMENT, INC.'S MOTION FOR TERMINATING SANCTIONS DUE TO SPOLIATION OF EVIDENCE)** on the parties in this action as follows:

John W. Keker, Esq.
Michael H. Page, Esq.
Christina M. Anderson, Esq.
**Keker & Van Nest, LLP**
710 Sansome Street
San Francisco, CA 94111

Patricia Glaser, Esq.
**Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP**
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067

[√] **BY MAIL:** I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

Executed on September 10, 2007, at Los Angeles, California.

Johanna Lopez

07209/2211071.1