Proctor Decl.

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone:   (213) 443-3000
7  Facsimile:    (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                   EASTERN DIVISION

12  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

13              Plaintiff,                Consolidated with
                                          Case No. CV 04-09059
14       vs.                             Case No. CV 05-02727

15  MATTEL, INC., a Delaware             **DISCOVERY MATTER**
   corporation,
16                                        **[To Be Heard By Discovery Master
              Defendant.                 Hon. Edward Infante (Ret.) Pursuant
17                                        To The Court's Order of December 6,
   _____       2006]**

18  AND CONSOLIDATED ACTIONS             DECLARATION OF B. DYLAN
19                                        PROCTOR IN SUPPORT OF (1)
                                          MATTEL, INC.'S MOTION TO
20                                        COMPEL RESPONSES TO
                                          INTERROGATORIES (THIRD SET);
21                                        AND (2) MATTEL'S OPPOSITION
                                          TO DEFENDANTS' MOTION FOR
22                                        PROTECTIVE ORDER RE
                                          MATTEL'S INTERROGATORIES
23
                                          Date:   TBA
24                                        Time:   TBA
                                          Place:  Telephonic
25
                                          Discovery Cut-off: January 14, 2008
26                                        Pre-trial Conference: April 7, 2008
                                          Trial Date: April 29, 2008
27
28  **CONFIDENTIAL -- FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

07209/2167409.3

                                          DECLARATION OF B. DYLAN PROCTOR

1        <u>DECLARATION OF B. DYLAN PROCTOR</u>

2        I, B. Dylan Proctor, declare as follows:

3        1.    I am a member of the bar of the State of California and a partner

4 of Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc.

5 ("Mattel"). I make this declaration of personal, firsthand knowledge, and if called

6 and sworn as a witness, I could and would testify competently thereto.

7        2.    Attached as Exhibit 1 is a true and correct copy of Mattel, Inc.'s

8 First Set of Interrogatories to Carter Bryant.

9        3.    Attached as Exhibit 2 is a true and correct copy of Mattel's First

10 Set of Interrogatories to MGA Entertainment, Inc. ("MGA").

11        4.    Attached as Exhibit 3 is a true and correct copy of Mattel's

12 Second Set of Interrogatories to Carter Bryant.

13        5.    Attached as Exhibit 4 is a true and correct copy of Mattel's

14 Second Set of Interrogatories to MGA.

15        6.    Attached as Exhibit 5 is a true and correct copy of Mattel's First

16 Set of Interrogatories Re Claims of Unfair Competition To MGA.

17        7.    Attached as Exhibit 6 is a true and correct copy of the Court's

18 Minute Order dated February 12, 2007.

19        8.    Attached as Exhibit 7 is a true and correct copy of the Transcript

20 of Proceedings of a February 12, 2007 Scheduling Conference in this action.

21        9.    Attached as Exhibit 8 is a true and correct copy of Mattel's Third

22 Set of Interrogatories to MGA, Isaac Larian, Carter Bryant and MGA Entertainment

23 (HK) Ltd. ("MGA Hong Kong"), dated June 7, 2007.

24        10.    Attached as Exhibit 9 is a true and correct copy of MGA's

25 Objections and Responses to Mattel's Third Set of Interrogatories, dated July 9,

26 2007. Attached as Exhibits 10, 11 and 12 are true and correct copies, respectively,

27 of MGA Hong Kong's, Isaac Larian's and Carter Bryant's Objections and Responses

28 to Mattel's Third Set of Interrogatories, dated July 9, 2007.

07209/2167409.3

-1-
DECLARATION OF B. DYLAN PROCTOR RE. MATTEL'S THIRD SET OF INTERROGATORIES

1    11.    I met and conferred with counsel for MGA, Larian, MGA Hong

2  Kong and Bryant on July 10, 2007, regarding Defendants' responses to Mattel's

3  Third Set of Interrogatories and Defendants' position that Mattel has exceeded the

4  fifty interrogatory "per side" limit set forth in Judge Larson's February 12, 2007

5  Order.  During the meet and confer, Defendants did not specify which

6  interrogatories they contend count as more than one, instead referring Mattel to their

7  objections.  Defendants stated that they did not provide responses to any of Mattel's

8  interrogatories because Mattel purportedly exceeded the numerical limit, but also

9  stated that they were standing on all of their other objections to the interrogatories.

10    12.    It became clear early in the meet and confer that the parties

11  disagreed about whether Mattel has exceeded the fifty interrogatory limit, and

12  whether Defendants' service of only objections was proper.  However, the parties

13  went on to discuss the possibility of stipulating to a greater number of

14  interrogatories to obviate motion practice.  MGA's counsel represented that they

15  would discuss such a stipulation with their client.  However, while the conference

16  was on-going -- indeed, more than half an hour before it ended -- Defendants filed

17  their motion for protective order regarding the Third Set of Interrogatories.

18  Defendants did not include me in their e-mail to the Discovery Master attaching

19  their motion, even though I am often copied on such e-mails.  Defendants also did

20  not disclose at any point during the conference that they had already filed their

21  motion.

22    13.    Attached as Exhibit 13 is a true and correct copy of a letter I sent

23  to Jennifer Glad and John Trinidad dated July 11, 2007, confirming aspects of the

24  July 10, 2007 meet and confer.

25    14.    Attached as Exhibit 14 is a true and correct copy of Ms. Glad's

26  response letter dated July 12, 2007.

27    15.    Attached as Exhibit 15 is a true and correct copy of a letter I sent

28  to Ms. Glad dated July 15, 2007, responding to her July 12, 2007 letter.

DECLARATION OF B. DYLAN PROCTOR

16.     Attached as Exhibit 16 are true and correct copies of relevant sections of Mattel, Inc.'s Second Amended Answer In Case No. 05-2727 and Counterclaims, dated July 12, 2007.

17.     Attached as Exhibit 17 is a true and correct copy of MGA's Responses to Mattel's First Set of Interrogatories Re Claims of Unfair Competition, dated January 19, 2007.

18.     Attached as Exhibit 18 is a true and correct copy of MGA's Supplemental Responses to Mattel's Second Set of Interrogatories, dated March 11, 2007.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 17, 2007, at Los Angeles, California.

_____
B. Dylan Proctor

07209/2167409.3

-3-

DECLARATION OF B. DYLAN PROCTOR

Moore Affidavit

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Plaintiff Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | [PUBLIC REDACTED] AFFIDAVIT OF MICHAEL MOORE IN SUPPORT OF MATTEL, INC.'S OPPOSITION TO MGA ENTERTAINMENT, INC.'S MOTION FOR TERMINATING SANCTIONS DUE TO SPOLIATION OF EVIDENCE |
| Defendant. | |
| AND CONSOLIDATED CASES | |
| | Discovery Cut-off: January 14, 2008 Pre-trial Conference: April 7, 2008 Trial Date: April 29, 2008 |

07209/2212847.2

## AFFIDAVIT OF MICHAEL MOORE

I, Michael Moore, being duly sworn, state as follows:

1.    I submit this affidavit pursuant to the Court's Order denying MGA Entertainment, Inc.'s and Bryant's Motion for Terminating Sanctions, dated August 27, 2007, which directed Mattel, Inc. ("Mattel") and the other parties to this litigation to set forth in affidavit form their preservation efforts and policies with respect to the present litigation, with a particular focus on the time period identified by the Court, namely fall 2003 and spring 2005. Except as identified herein, I make this affidavit of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify as set forth below.

2.    I have been a Mattel employee since December 2000. I am currently Senior Counsel in Mattel's Legal Department.

3.    I have been personally involved with the collection and preservation of documents and tangible things in Mattel, Inc. v. Bryant, Case No. 04-9059; Bryant v. Mattel, Inc., Case No. 04-9049; MGA Entertainment, Inc. v. Mattel, Inc., Case No. 05-2727, which have been consolidated. I have also been personally involved in the collection and preservation of documents and tangible things in other cases (to which MGA and Bryant were not parties) involving Mattel products and product lines known as MY SCENE and DIVA STARZ.

4.    I personally participated in and supervised the investigation, identification, collection and preservation of documents and tangible things that relate to the basis of Mattel's claims and Mattel's defenses to MGA's claims in these consolidated cases.

## PRESERVATION PRIOR TO APRIL 2005

5.    Mattel employed Carter Bryant, most recently, from January 4, 1999 to October 20, 2000. During that time he worked in Mattel's "*Barbie Collector*" group, which was located in Mattel's Design Center in El Segundo, California.

6.     During the summer of 2003, I, with others, began investigating any potential misconduct by Bryant while a Mattel employee or thereafter. During the course of that investigation I interviewed numerous Mattel employees regarding Bryant and his work for Mattel. During those interviews, I inquired about possible sources of documents and things on that subject. A list of employees that I recall interviewing from the time that my investigation began through the time that Mattel filed its complaint in April 2004 is attached at Exhibit A. I, and those acting at my direction, also collected and preserved Bryant-related documents from those individuals. Whenever a person with potentially relevant information was interviewed, either I or other counsel, asked the interviewee to provide any Bryant-related materials in his or her possession, and if they come across Bryant-related materials thereafter, to preserve and to provide them to me.

7.     I spoke with members of Mattel's IT department to obtain an understanding about Mattel's policies, procedures and practices regarding the use, storage and preservation of electronic data, and regarding server infrastructure. I specifically inquired about possible locations of electronic information related to Bryant, and the policies, procedures and practices regarding the preservation or backup of electronic information that could pertain to Bryant.

8.     Also, during the investigation phase, I, and those acting at my request, created and preserved forensic images of the hard drives of the personal computers of those employees who we believed could have potentially pertinent information and who still worked at Mattel, namely the hard drives of

## REDACTED

9.     Due to the Mattel e-mail retention policy of 90-days on its e-mail servers and a 30-day rotation policy for e-mail server backup tapes, any e-mail

1 | message that Carter Bryant authored or received would not have been on either an e-
2 | mail server or a backup tape 120-days after he quit, by mid-February 2001.
3 | Nevertheless, starting in 2003, I searched and instructed others to search for old e-
4 | mail server backup tapes. No such old tapes were located.

5 |      10.    Starting in the fall of 2003, Mattel used SMTP logs to collect
6 | some e-mail messages received by Mattel employees from specific locations on the
7 | Internet, including <mgae.com>, and sent by Mattel employees to those locations.
8 | To the extent that Mattel was able to identify such e-mail messages that appeared to
9 | be potentially relevant, they have been preserved.

10 |      11.    Beginning on or about December 23, 2003, Mattel implemented
11 | an automated security tool that monitored e-mail messages that traveled into Mattel
12 | or that were sent from Mattel's e-mail system. Mattel used certain keywords,
13 | including Bryant and MGA, for which the security tool monitored incoming and
14 | outgoing e-mail messages. If an e-mail message contained a keyword, then the
15 | security tool made a copy of the e-mail and delivered it to a separate mailbox. Since
16 | Mattel implemented this security tool, it has preserved in excess of 184 gigabytes of
17 | e-mail messages and attachments, (although not all relate to Mattel's dispute with
18 | MGA and Bryant).

19 |      12.    Mattel employees can also store e-mail messages older than 90
20 | days in places other than e-mail servers, including by printing them out and filing
21 | them, by saving them on their local hard drives or by saving them to their personal
22 | storage space on Mattel's data servers or by creating archive files denoted by the
23 | suffix ".pst," which contain multiple e-mail messages and may be stored in similar
24 | locations.

25 |      13.    I, and others, searched for, identified and preserved e-mail
26 | messages relating to Bryant that we could locate. In particular, during late 2003
27 | through 2004, Mattel searched for, and to the extent such accounts existed,
28 | preserved e-mails then contained in the mailboxes of Mattel employees who we

1   believed may have sent e-mail messages to Carter Bryant or who may have Bryant-
2   related e-mail messages.  These include (i) e-mail messages written by, to or
3   mentioning current or former employees, including Carter Bryant, Cassidy Park,
4   Ann Driskill, Lily Martinez, Mercedeh Ward, Margaret Hatch-Leahy, and certain
5   third parties, including Isaac Larian and any other person using an mgae.com e-mail
6   address; and (ii) e-mail messages referring to Bratz or MGA.  Later, in or about
7   October 2004, Mattel collected and preserved the mailboxes of a broader range of
8   individuals who are identified on Exhibit B.  These e-mail archives are currently
9   stored in a secure, off-site storage facility.

10          14.    In addition I, and others with me, searched Mattel's El Segundo
11  Tower and Design Center for personal computers that were potentially in use during
12  the relevant time period.  Mattel located approximately 130 computer hard drives
13  and 14 workstation computers that Mattel's IT department had in its possession from
14  prior years.  These hard drives and workstation computers are currently preserved in
15  a secure, off-site storage facility.  A list of these hard drives is attached as Exhibit C.
16  A list of these workstation computers is attached as Exhibit D.

17          15.    In an effort to identify any computer used by Carter Bryant, in
18  October 2004, the Mattel Help Desk data center reviewed its Help Desk records for
19  the time periods of Bryant's employment to determine whether the data center had
20  any help tickets or other records of Carter Bryant requesting assistance with any
21  computer.  No such records were found.

22          16.    In 2004, Mattel also searched its records of employee desktop
23  computers in an effort to identify a desktop computer used by Carter Bryant when
24  he was a Mattel employee.  Mattel collected, preserved and reviewed obsolete
25  equipment lists, records from IT procurement, including invoices for computers that
26  Mattel had purchased.  To locate and preserve any Mattel computer that Carter
27  Bryant could have used three years previously, Mattel identified the type of
28  computer from its procurement records.  The hard drive of one of the possible

1 | computers was located in Mattel's Design Center IT storage facility.  This hard drive
2 | is currently preserved in a secure, off-site storage facility.

3 |       17.    Mattel preserved the original hard drive of this computer and
4 | other computers, and also created forensic images of hard drives of persons who
5 | could have relevant information, including those persons identified on Exhibit E.

6 |
7 | REDACTED
8 |

9 |     As a result of the searches, backup tapes containing data from Zeus were
10 | located and preserved as explained at the hearing.  In addition, Mattel has preserved
11 | backup tapes for 2003, 2005 and 2006.  Those tapes are stored in a secure location.

12 |       19.    In the summer of 2003, I instructed the people responsible for
13 | Mattel's phone system to identify, collect and preserve all phone logs for the
14 | El Segundo Campus for 2000.  Mattel had a PC with Microcall software installed
15 | that logged calls going into and out of Mattel's El Segundo campus.  In 2000, there
16 | was a practice to archive the Microcall phone log data on archive tapes on a monthly
17 | basis.  These tapes were on a three-year rotation schedule.  Attached as Exhibit F is
18 | a list identifying the Microcall archive tapes that were located.  I never received the
19 | October 2000 or December 2000 archive tapes.  I instructed those responsible to
20 | continue to search for those tapes.  They have not been located.  Those archive tapes
21 | that were located are currently preserved in a secure location.

22 |       20.    I am informed and believe that Mattel maintains a project and
23 | time reporting system for design and manufacturing of Mattel products known as the
24 | TRACS Database Server.  Mattel has preserved the data contained in the TRACS
25 | database.  As a precautionary measure, on October 7, 2004, a backup of the TRACS
26 | database was created and is currently preserved in a secure, off-site location.  A
27 | hard drive containing the data export is also currently preserved in a secure, off-site
28 | storage facility.

1      21.    In addition to collecting and preserving the foregoing

2  information I, with others assisting me, sought and preserved the following types of

3  electronic information:

4      • a forensic image of the Mattel badging computer

5      • optical platters containing accounting records

6      • focus group media and related documents

7      • phone bills and phone call logs received from the carriers used by

8        Mattel.

9      • Barbie Collector planning files

10     **PRESERVATION FROM OTHER MATTEL CASES**

11     22.    In 2002, Mattel released a new fashion doll line called MY

12  SCENE.  In early 2003, Simba Toys & Co. GmbH KG ("Simba") began to market

13  and sell knock-offs of MY SCENE dolls at a toy fair in Nuremberg, Germany.

14  Beginning at least as early as Spring 2003, Mattel employees that were known to

15  have worked on designs for Mattel's MY SCENE dolls were instructed to gather and

16  preserve documents related to the development of MY SCENE for purposes of

17  litigation against Simba.  Mattel and Simba had an expedited trial in October 2003

18  in London, England.  Mattel prevailed.  All materials that were collected for the

19  Simba litigation have also been preserved for this litigation.

20     23.    In 2002, an individual named Gustavo Duarte Viveros pursued

21  an action in Mexico against Mattel de Mexico claiming that Mattel's DIVA STARZ

22  doll line infringed copyrights in drawings he allegedly created.  After abandoning

23  that action in Mexico, Duarte Viveros sued Mattel in the Central District of

24  California in October 2004, alleging that Mattel's DIVA STARZ doll line infringed

25  his allegedly copyright protected drawings and constituted idea theft.  In connection

26  with the Duarte Viveros litigation, Mattel collected and preserved existing

27  documents, electronic files, e-mail and tangible items (making up in excess of 70

28  boxes) related to DIVA STARZ, including e-mails and other documents of Mattel

1  employees who worked on DIVA STARZ, such as designers Maureen Mullen, Rene

2  Pasko, Joni Pratte and Rob Hudnut, and from various third parties who worked on

3  the project, such as Steve Linker.  In connection with this effort as well, Mattel

4  collected and preserved pertinent existing electronic files from the Zeus server and

5  back-up tapes as well as from the hard drives and other electronic media used by

6  numerous individuals.  All materials that were collected for the Duarte Viveros

7  litigation have also been preserved for this litigation.

**PRESERVATION IN APRIL 2005 AND LATER**

9        24.    MGA Entertainment, Inc. served a complaint on Mattel, Inc. on

10  April 13, 2005.  The allegations in that complaint were broad, and were different

11  from those that Mattel had previously investigated and asserted against Bryant.

12  MGA accused Mattel of trademark infringement, dilution and other claims with

13  respect to a number of Mattel's product lines and accused Mattel of engaging in

14  unfair competition.

15        25.    Since April 2005, I have helped coordinate the collection and

16  preservation of documents and things in connection with the allegations in MGA's

17  complaint.  On April 18, 2005, a memorandum from Robert Normile, Mattel's

18  General Counsel, was distributed to all Mattel employees instructing them to

19  preserve documents related to the allegations in the complaint, as Mattel understood

20  them.  Mattel's outside counsel informed MGA of the general categories of

21  documents that it would preserve.  A true and correct copy of a letter from Jon

22  Corey, Mattel's outside counsel, to Diana Torres, who I understand to be counsel for

23  MGA, is attached as Exhibit G. Mattel has, thereafter, reminded its employees of

24  their document preservation obligations.

25        26.    Based on the breadth of the allegations in MGA's complaint,

26  Mattel began interviewing employees who may have knowledge of the allegations

27  contained in that complaint or who may have documents containing information

28  relevant to those allegations.  Starting in April 2005, Mattel has conducted

1  interviews of more than 60 individuals, and Mattel continues its investigation and
2  interviews to this day.  I, or others from the law department, have attended the
3  majority of those interviews.  One purpose of these interviews was to determine
4  whether those individuals had documents (whether physical or electronic) that could
5  contain potentially relevant information or possessed tangible things that could be
6  relevant to MGA's allegations, or if they knew who would.  If they did, then those
7  documents and things were collected and reviewed and, in some cases, their hard
8  drives were imaged.  To date, Mattel has reviewed approximately two million pages
9  of documents.

10      27.     On April 18, 2005, Mattel's IT department stopped recycling the
11  backup tapes used to back up Mattel's e-mail servers located in El Segundo,
12  California.  Mattel performed a backup of these e-mail servers every day, Mattel
13  retained e-mail messages on its e-mail servers for 90 days,  and Mattel reused its e-
14  mail server backup tapes every 30 days.  So, the oldest e-mail server backup tapes—
15  dated April 18, 2005—have e-mail messages going back to approximately mid-
16  December 2004.  Mattel has continued to preserve the tapes created by the nightly
17  backups of the El Segundo e-mail servers to the present.  Currently, Mattel has in
18  excess of 4,000 of these backup tapes containing hundreds of terabytes of data.

19      28.     Hundreds of people leave Mattel's employ every year.  Since
20  May 2, 2005, Mattel has reviewed the identity of those who leave Mattel in an effort
21  to preserve the information associated with those individuals, to the extent that they
22  may have potentially relevant information.

23
24
25
26
27
28

**REDACTED**

07209/2212847.2

29. Prior to 2003, Mattel used a high performance disk array for much of its network storage in El Segundo. In 2006, Mattel retired its old disk array and purchased a new, larger and more reliable disk array. Before Mattel did so, it prepared a backup of the data on the old disk array, which is preserved in a secure, offsite location. Mattel then took steps to ensure that all of the information was transferred from the old disk array to the new disk array. The old disk array was taken to a secure, off-site location.

30. Since I first began investigating Bryant's potential misconduct while an employee or thereafter, in connection with these consolidated cases and the Viveros and Simba cases, Mattel has preserved thousands of backup tapes, hard drives, computers, electronic media (in addition to preserving the information existing on its computer systems). Mattel has also preserved millions of pages of documents. This affidavit has described Mattel's preservation efforts generally over the past four years with a particular focus on the topics identified by the Court. Mattel has not, however, audited or listed each piece of electronic media or document that it has preserved over those four years and that it continues to preserve, because the extensive scope and wide variety of the tapes and media involved makes fully cataloging all of it impractible.

Michael Moore

Duly sworn and subscribed before me on the 10th day of September, 2007.

State of California County of
Los Angeles
Subscribed and sworn to (or affirmed)
Before me on this 10 day of Sept 2007 by
Michael Moore
personally known to me or proved to me on
the basis of satisfactory evidence to be the
person(s) who appeared before me.

Signature F. Fahmie

(Seal)

F. FAHMIE
Comm. No. 1639288
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. Jan. 17, 2010

07209/2212847.2

-10-

MICHAEL MOORE AFFIDAVIT

1
2
3
4

### PROOF OF SERVICE

5     I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California.

6

7     On September 10, 2007, I served true copies of the following document(s) described as: **AFFIDAVIT OF MICHAEL MOORE IN SUPPORT OF MATTEL, INC.'S OPPOSITION TO MGA ENTERTAINMENT, INC.'S MOTION FOR TERMINATING SANCTIONS DUE TO SPOLIATION OF EVIDENCE)** on the parties in this action as follows:

8

9

10   John W. Keker, Esq.          Patricia Glaser, Esq.
Michael H. Page, Esq.      **Christensen, Glaser, Fink, Jacobs, Weil**

11   Christina M. Anderson, Esq.  **& Shapiro, LLP**
**Keker & Van Nest, LLP**      10250 Constellation Blvd., 19th Floor

12   710 Sansome Street         Los Angeles, CA  90067
San Francisco, CA 94111

13

14

15  [√] **BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with

16  postage thereon fully prepaid.

17

18     Executed on September 10, 2007, at Los Angeles, California.

19

20

21                                Johanna Lopez

22

23
24
25
26
27
28

07209/2211071.1

# EXHIBIT A

# Exhibit A

1. Cassidy Beal-Park
2. Robert Best
3. Larry Clayton
4. Ann Driskill
5. Helene Frost
6. Lily Martinez
7. Mina Mirkazemi
8. Rene Pasko
9. Abbo Hussein
10. Izzy Garr
11. Michael Hebden
12. Ryan Katayama
13. Sujata Luther
14. Irene Torres
15. Joe Franke
16. Vanessa Karpio
17. Julia Jensen
18. Ivy Ross
19. Sandra Yonemoto
20. Vicki Cerrito
21. Cassandra Kroskrity
22. Carol D'Eath
23. Denise Clark
24. Tiffany Singleton
25. Fred Kawashima
26. John Berger
27. Sergio Hernandez
28. Mike Sclimenti
29. Roy Schwarz
30. Julia Marine
31. Steve Zickerman
32. Jimmy Corona
33. Janice Day
34. Mary Domazet
35. Jan Hodges
36. Rodney Palmer
37. Donna Kanehl

# EXHIBIT B

**Exhibit B**

1. Anzoategui, C.pst
2. Arriola, E.pst
3. Best R.pst
4. Bivens, M.pst
5. Carson, M.pst
6. Chan, P.pst
7. Coleman, B.pst
8. Donham, S.pst
9. Driskill, A.pst
10. Fong, Ei.pst
11. Gonzales, Steven.pst
12. Gonzalez, V.pst
13. Hammons, K.pst
14. Hoffman, Hoi.pst
15. Jackson, F.pst
16. Jimenez, K.pst
17. Kane, E.pst
18. Karpio, V.pst
19. Katayama, R.pst
20. Liu, R.pst
21. Martinez, B.pst
22. Martinez, L.pst
23. Matheny, K.pst
24. Monteagudo, C.pst
25. Ng, Jayson.pst
26. Nordquist, J.pst
27. Park, C.pst
28. Pasko, Rene.pst
29. Rodriguez, J.pst
30. Ruggeri, V.pst
31. Sarinana, Ariana.pst
32. Sepanik, M.pst
33. Shui, S.pst
34. Tomiyama, C.pst
35. Vandenberg, J.pst
36. Walker, A.pst
37. Yuen, E.pst
38. Zuckerman, S.pst

# EXHIBIT C

**Exhibit C**

1. Intergraph design workstation hard drive
2. Hard drive from a Dell PC, S/N WMADK3524729
3. Hard drive from a Dell PC, S/N 163108942052 SAPXX
4. Hard drive from a Dell PC S/N, UFG3P1B013U
5. Hard drive from a Dell PC S/N, UFG3P1B013NW
6. Hard drive from a Compaq PC, S/N 30KQB301178091
7. Hard drive from a Compaq PC, S/N 7CN056CR
8. Hard drive from a Compaq PC, S/N 3HT3V6PA
9. Hard drive from a Compaq PC, S/N WMAAR2424859
10. Hard drive from a Compaq PC, S/N 31028676
11. Hard drive from a Compaq PC, S/N 24670-002
12. Hard drive from a Compaq PC, S/N VHL63774
13. Hard drive from Intergraph PC, S/N NJ118890
14. Hard drive from a Compaq PC, S/N TVMK1459
15. Hard drive from a External Enclosure, S/N AY259442
16. Hard drive from a Compaq PC, S/N T2KBYTECDT22A
17. Hard drive from a Compaq PC, S/N WMA001721407D
18. Hard drive from a Dell PC, S/N WMAAR2662760
19. Hard drive from a Intergraph PC, S/N 184015639975 PFZXX
20. Hard  drive from a Compaq PC, S/N T4HYRGNCDT24A
21. Hard drive from a Toshiba Laptop, S/N 46H7083E169280S5B
22. Hard drive from a Apple/Mac LT, S/N 90B40914T
23. Hard drive from a Apple/Mac LT, S/N T8118181
24. Hard drive from a Apple/Mac LT, S/N 1.3131E+11
25. Hard drive from a Apple/Mac LT, S/N N7527178
26. Hard drive from a Apple/Mac LT, S/N 1.31404E+11
27. Hard drive from a Apple/Mac LT, S/N N7540335
28. Hard drive from a Apple/Mac LT, S/N N7542840
29. Hard drive from a HP Omni Book, S/N 38J73718G
30. Hard drive from a Apple/Mac LT, S/N V8040971
31. Hard drive from a Apple/Mac LT, S/N 1.3131E+11
32. Hard drive from a Apple/Mac LT, S/N IB24914KD54F
33. Hard drive from a Apple/Mac LT, S/N YDLX4015
34. Hard drive from a Compaq PC, S/N FNJ38MQ
35. Hard drive from a Compaq PC, S/N 31277703
36. Hard drive from a Compaq PC, S/N WM3460330779
37. Hard drive from a Compaq PC, S/N 31031021
38. Hard drive from a Compaq PC, S/N X5Z16355
39. Hard drive from a Compaq PC, S/N WMA451046915

40. Hard drive from a Compaq PC, S/N XJS27739
41. Hard drive from a Compaq PC, S/N 3037436
42. Hard drive from a Compaq PC, S/N 1005203
43. Hard drive from a Compaq PC, S/N 09531-011876
44. Hard drive from a Compaq PC, S/N CT20446A2RE20H9V
45. Hard drive from a Macintosh G3, S/N NH040595
46. Maxtor loose hard drive, S/N T2J7XSFC
47. Western Digital loose hard drive, S/N WMAAR3163741
48. Western Digital loose hard drive, S/N WMAAR1550444
49. Quantum loose hard drive, S/N 382619660905Y
50. Hard drive from a Intergraph PC, S/N WFF08343
51. Western Digital loose hard drive, S/N WT2900069875
52. Western Digital loose hard drive, S/N WT2880032046
53. Hard drive from a Intergraph PC, S/N 632812858891
54. Hard drive from a Intergraph PC, S/N LG452912
55. Hard drive from a Intergraph PC, S/N WT4110097368
56. Hard drive from a Dell PC, S/N H3H57ACCDH13A
57. Hard drive from a Intergraph PC, S/N WDFJ5200
58. IBM loose hard drive, S/N YHF88594
59. Seagate loose hard drive, S/N XAA92395
60. Hard drive from a Intergraph PC, S/N WFF60861
61. Western Digital loose hard drive, S/N WM4201407019
62. Hard drive from a Intergraph PC, S/N LJB68824
63. IBM hard drive from a PC, S/N TH0903DP1256716C2G80
64. Hard drive from a MAC, IZ742123AKUB
65. Hard drive from a MAC, IJ91502CZDHCA
66. Hard drive from a Compaq PC, S/N 3CM0SS25
67. Hard drive from a Intergraph PC, S/N JD682166
68. Hard drive from a Compaq PC, S/N 30047811
69. Hard drive from a Compaq PC, S/N 7EG279C8
70. Maxtor hard drive from a PC, S/N SG061TTY24951126A2Q2
71. Hard drive from a MAC, S/N IJ73615RAKUB
72. Seagate hard drive from a PC, S/N FNGJMW7
73. Loose hard drive, S/N 7469838
74. Hard drive from a Intergraph PC, S/N KCT08990
75. IBM loose hard drive, S/N YKVGT549
76. Quantum loose hard drive, S/N HN45S01102D
77. Western Digital loose hard drive, S/N WMAFL1028371
78. IBM loose hard drive, YKVGS821
79. Hard drive from a Intergraph PC, S/N 632813126832
80. Hard drive from a Intergraph PC, S/N LM863336

81. Hard drive from Intergraph PC, S/N AJHS3724
82. Hard Drive from Compaq PC, S/N 09526-010386
83. Hard Drive from Compaq PC, S/N 632809523146
84. Hard Drive from Compaq PC, S/N H307H7SCDH03A
85. Hard Drive from Compaq PC, S/N 7CN06S38
86. Hard Drive from Compaq PC, S/N WMA6Y5909204
87. Hard Drive from Compaq PC, S/N 31046526
88. Hard Drive from Compaq PC, S/N 3CL0NETH
89. Hard Drive from Compaq PC, S/N 3CM0KLNR
90. Hard Drive from Compaq PC, S/N 3CM0KGXB
91. Hard Drive from Compaq PC, S/N 3BT007PY
92. Hard Drive from Compaq PC, S/N WMA001785122
93. Western Digital loose hard drive, S/N WT2651436160
94. Hard drive from a Intergraph PC, S/N WM4110122051
95. Hard drive from a Intergraph PC, S/N JKD99584
96. Maxtor loose hard drive, S/N R601790S
97. Hard drive from a Compaq PC, S/N WMA001291388
98. Hard drive from a Compaq PC, S/N FJBNXY4
99. Hard drive from a Compaq PC, S/N FJBTV3X
100. IBM loose hard drive, S/N 1MTH2013104
101. Western Digital loose hard drive, S/N WM2920407538
102. Hard drive from a Compaq PC, S/N FNHTN6J
103. Hard drive from a Compaq PC, S/N 30WAH201031592
104. Western Digital loose hard drive, S/N WT2900162872
105. Samsung loose hard drive, S/N J1UF512998
106. Hard drive from a Intergraph PC, S/N WT4110093796
107. Hard drive from a Compaq PC, S/N 00MJBC01067507
108. Western Digital loose hard drive, S/N WT3070393711
109. Hard drive from a Intergraph PC, S/N JK236906
110. IBM loose hard drive, S/N P0015833
111. Seagate loose hard drive S/N FNG655K
112. Western Digital loose hard drive, S/N WM3461125481
113. Western Digital loose hard drive, S/N WT3070353784
114. Seagate loose hard drive, S/N FK9TH06
115. IBM loose hard drive, SN YKVGN922
116. Hard drive from a Apple/Mac 8100/100, S/N 327510270532M
117. Western Digital loose hard drive, S/N WT2890295980
118. Seagate loose hard drive, S/N FJBTW9A
119. Western Digital loose hard drive, S/N WM4110072382
120. Quantum loose hard drive, S/N 154724913971M
121. IBM loose hard drive, S/N 1MH5D108311

15

122. Western Digital loose hard drive, S/N WT3420886199
123. Fujitsu loose hard drive, S/N 30049208
124. Western Digital loose hard drive, S/N WT4230015743
125. Western Digital loose hard drive, S/N WT2470182985
126. Western Digital loose hard drive, S/N WM3460236545
127. Western Digital loose hard drive, S/N WM3460240890
128. Samsung loose hard drive, S/N J1MD647510
129. Western Digital loose hard drive, S/N WT2890071563
130. IBM loose hard drive, S/N JMJ89284
131. Seagate loose hard drive, S/N FJBP9LD
132. Western Digital loose hard drive, S/N WT3800405533
133. Quantum loose hard drive, S/N 1RG2RCTAY1Z
134. Seagate loose hard drive, S/N XJP84884
135. Quantum loose hard drive, S/N 20446A2REJ0EXT
136. Quantum loose hard drive, S/N 20445A2RDP07MI
137. Quantum loose hard drive, S/N 20446A2RE20H9V

# EXHIBIT D

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Exhibit D

1.  SiliconGraphics O2, S/N 0800690CBA6F
2.  Silicon Graphics O2, S/N 0800690CC048
3.  Stream Logic, S/N SL8200UWDPCI
4.  Stream Logic, S/N 2SPE010151A9
5.  Stream Logic, S/N 2SPE010148A9
6.  Stream Logic, S/N 2SPE010150A9
7.  Megadrive Enterprise 8, S/N 3C9N114174
8.  SiliconGraphics 10000 Impact Indigo 2, S/N 0800690A3AE9
9.  MicroNet RAID Subsystem, S/N 9700149
10. SiliconGraphics Indy, S/N 08006907977A
11. SiliconGraphics Indy, S/N 080069088C56
12. SiliconGraphics Indigo 2, S/N 0800690785F3
13. SiliconGraphics Indigo 2, S/N 08006909008E
14. MicroTech XL2000, S/N 2112840

# EXHIBIT E

1

**Exhibit E**

2
1.   Sharon Zuckerman
3
2.   April Walker
3.   Ronnie Ruggeri
4
4.   Juan Rodriguez
5
5.   Cassidy Beal-Park
6.   Jill Nordquist
6
7.   Bill Martinez
7
8.   Rita Liu
9.   Erica Kane
8
10.  Katiana Jiminez
9
11.  Hoi Hoffman
12.  Kitti Hammons
10
13.  Ei Fong
11
14.  Ann Driskill
15.  Patricia Chan
12
16.  Robert Best
13
17.  Kelly Matheny
18.  Vived Gonzalez
14
19.  Carmen Monteagudo
15
20.  Megan Sepanik
21.  Elizabeth Arriola
16
22.  Ariana Sarinana
17
23.  Tina Tomiyama
24.  Michael Hebden
18
25.  Desiree Rouquillo
19
26.  Ivy Palijo
20
27.  James Mills-Winkler
28.  Mina Mirkazemi
21
29.  V. Karpio
22
30.  Daniel Leahy
31.  J. Holmes
23

24

25

26

27

28

**EXHIBIT F**

**Exhibit F**

1.  DC-6250 Data cartridge labeled "Jul.00.ARK."
2.  DC-6250 Data cartridge labeled "Aug.00.ARK."
3.  DC-6250 Data cartridge labeled "Sep.00.ARK."
4.  DC-6250 Data cartridge labeled "Nov.00.ARK."
5.  DC-6250 Data cartridge labeled "Jan.01.ARK."
6.  DC-6250 Data cartridge labeled "Feb.01.ARK."
7.  DC-6250 Data cartridge labeled "Mar.01.ARK."
8.  DC-6250 Data cartridge labeled "Apr.01.ARK."
9.  DC-6250 Data cartridge labeled "May.01.ARK."
10. DC-6250 Data cartridge labeled "Jun.01.ARK."
11. DC-6250 Data cartridge labeled "Jul.01.ARK."
12. DC-6250 Data cartridge labeled "Aug.01.ARK."
13. DC-6250 Data cartridge labeled "Sep.01.ARK."
14. DC-6250 Data cartridge labeled "Oct.01.ARK."
15. DC-6250 Data cartridge labeled "Nov.01.ARK."
16. DC-6250 Data cartridge labeled "Dec.01.ARK."
17. DC-6250 Data cartridge labeled "Jan.02.ARK."
18. DC-6250 Data cartridge labeled "Feb.02.ARK."
19. DC-6250 Data cartridge labeled "Mar.02.ARK."
20. DC-6250 Data cartridge labeled "Apr.02.ARK."
21. DC-6250 Data cartridge labeled "May.02.ARK."
22. DC-6250 Data cartridge labeled "Jun.02.ARK."
23. DC-6250 Data cartridge labeled "Jul.02.ARK."
24. DC-6250 Data cartridge labeled "Sep.02.ARK."
25. DC-6250 Data cartridge labeled "Oct.02.ARK."
26. DC-6250 Data cartridge labeled "Jan.03.ARK."
27. DC-6250 Data cartridge labeled "Feb.03.ARK."
28. DC-6250 Data cartridge labeled "Mar.03.ARK."
29. DC-6250 Data cartridge labeled "Apr.03.ARK."
30. DC-6250 Data cartridge labeled "May.03.ARK."
31. DC-6250 Data cartridge labeled "Jun.03.ARK."
32. DC-6250 Data cartridge labeled "Jul.03.ARK."
33. DC-6250 Data cartridge labeled "Sep.03.ARK."
34. DC-6250 Data cartridge labeled "Oct.03.ARK."
35. DC-6250 Data cartridge labeled "Nov.03.ARK."
36. DC-6250 Data cartridge labeled "Jan.04.ARK."
37. DC-6250 Data cartridge labeled "Feb.04.ARK."

**EXHIBIT G**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit G**

**quinn emanuel** trial lawyers | los angeles

May 3, 2005

**BY FACSIMILE
AND U.S. MAIL**

Diana M. Torres, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, California 90071-2899

MGA Entertainment, Inc. v. Mattel, Inc.

Dear Ms. Torres:

As Michael Zeller informed you previously by e-mail message, this firm is representing Mattel in the above-referenced case. Please direct all future communications regarding the case to us.

I write to respond to the April 16, 2005 letter that you sent to Robert Normile, Mattel's General Counsel. Mattel is aware of its obligations to preserve evidence and will comply with them. As discussed further below, Mattel likewise expects MGA to comply with its obligations to preserve evidence in this case and in the Bryant case.

Consistent with the allegations in MGA's complaint, Mattel has taken steps to ensure the preservation of all documents relating to the accused Mattel products and the third-party organizations referenced in the complaint. These consist of the following categories of documents, information or tangible items in its possession, custody or control:

1.   The MY SCENE product line, including packaging and advertising relating thereto.
2.   The WEE 3 FRIENDS product line, including packaging and advertising relating thereto.
3.   "Acceleracers" products.

quinn emanuel urquhart oliver & hedges, llp

4.    The "Little Mommy Potty Training Baby Doll."

5.    Communications regarding MGA to or from any of the following organizations: TIA, CARU or NPD.

6.    Communications with MGA.

7.    TIA voting procedures.

By agreeing to preserve the foregoing general categories of documents, Mattel does not concede that they are relevant or discoverable, and reserves any and all objections that may be asserted during the course of discovery and/or trial.

In your letter, MGA appears to ask that Mattel suspend all its long-standing, lawful policies regarding the preservation or destruction of documents. Mattel, as explained above, has taken steps to preserve those documents and information in the categories set forth above, consistent with its obligations under the applicable law. The expense and burden of suspending all Mattel's retention policies and preserving all documents, information or tangible items simply to ensure the preservation of irrelevant documents and information, as MGA is apparently demanding, would be prohibitively expensive and unjustified.

To take just one example, Mattel has investigated the cost of preserving in perpetuity each and every e-mail message in and out of its El Segundo Campus, the vast majority of which could have no conceivable bearing on MGA's claims. The cost of preserving these e-mail messages is hundreds of thousands of dollars a year; that cost goes up by multiples if the e-mail messages are to be retained in a format that reduces the difficulty in retrieving them. This cost would greatly increase if applied to all of Mattel's e-mail servers worldwide. Because each allegation in the complaint relates to past conduct and the vast majority of the e-mail messages traveling through Mattel's networks are neither relevant nor discoverable, Mattel will not agree to incur this significant cost on a going-forward or on-going basis.

Mattel has approximately 25,000 employees in 36 countries. These employees generate innumerable pages of documents on a daily basis, the vast majority of which have nothing to do with the allegations in the complaint. For example, approximately 80,000 e-mail messages alone are transmitted over Mattel's exchange servers each day. Mattel's policy, like that of other major U.S. companies, is to retain e-mail messages for 90 days on its servers. Although Mattel has taken steps to preserve e-mail messages within the categories described above, irrelevant and non-discoverable e-mail messages will be treated consistent with Mattel's existing policy, and there is no reasonable basis for insisting that Mattel's normal policies be changed.

We invite MGA's agreement, by May 4, 2005, that Mattel's retention of the above categories of documents is sufficient. If MGA does not so agree, then Mattel will seek guidance from the Court. In that connection, Mattel will also ask the Court to require MGA to bear the cost of its overbroad document retention requests.

Mattel likewise expects MGA to comply with its obligation to preserve relevant and discoverable documents, information or tangible things in its possession, custody or control. Mattel expects

MGA not to deface, destroy or engage in destructive testing of evidence, including original drawings, as we believe MGA or Carter Bryant has done in the Bryant case. As MGA is well aware, its obligation to preserve evidence was triggered not by this letter, but by its reasonable anticipation that evidence in its possession, custody or control may be relevant or discoverable in anticipated litigation. Accordingly, we expect that MGA has not destroyed and will preserve on an ongoing basis any relevant or discoverable evidence relating to the allegations in the complaint. Please confirm, in writing, that MGA has preserved all relevant and discoverable evidence and that it will continue to comply with those obligations as these actions move forward.

If you have any questions regarding the foregoing, please do not hesitate to call.

Best regards,

Jon Corey

07975/063112.1

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**PALM SPRINGS**
45-025 Manitou Drive, Suite 8
Indian Wells, CA 92210
(760) 345-4757
Facsimile: (760) 345-2414

**LOS ANGELES**
865 So. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**NEW YORK**
335 Madison Avenue, 17th Floor
New York, NY 10017-4611
(212) 702-8100
Facsimile: (212) 702-8200

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

DATE:   May 3, 2005

TO/COMPANY:                                         NUMBER OF PAGES, INCLUDING COVER: 4

| NAME | PHONE NO. | FAX NO. |
|------|-----------|---------|
| Diane M. Torres, Esq.<br>O'Melveny & Myers LLP<br>400 South Hope Street<br>Los Angeles, California 90017-2899 | 213-430-6000 | 213-430-6407 |

FROM:   Jon Corey

RE:

MESSAGE:


FAXED MAY 0 3 2005

| CLIENT #:   7975 | ROUTE/<br>RETURN TO:   Samantha-6 | ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
|---|---|---|
| OPERATOR: | CONFIRMED?  ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3863 AS SOON AS POSSIBLE.

Confirmation Report — Memory Send

Page         : 001
Date & Time: May-03-05  02:43pm
Line 1       : 2136240643
Line 2       :
Machine ID : QUINN EMANUEL

| Job number | : | 945 |
| Date | : | May-03 02:41pm |
| To | : | ☎76039407975⋆12134306407 |
| Number of pages | : | 004 |
| Start time | : | May-03 02:41pm |
| End time | : | May-03 02:43pm |
| Pages sent | : | 004 |
| Status | : | OK |

Job number    : 945          *** SEND SUCCESSFUL ***

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

SAN DIEGO
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-107
Facsimile: (858) 812-3336

LOS ANGELES
865 So. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

PALM SPRINGS
45-025 Manitou Drive, Suite 5
Indian Wells, CA 92210
(760) 346-1170
Facsimile: (760) 346-3114

NEW YORK
335 Madison Ave, 17th Floor
New York, NY 10017-4611
(212) 702-8100
Facsimile: (212) 702-8200

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

LOS ANGELES OFFICE

FACSIMILE TRANSMISSION

DATE:   May 3, 2005

NUMBER OF PAGES, INCLUDING COVER: 4

TO/COMPANY:

| NAME | PHONE NO. | FAX NO. |
| --- | --- | --- |
| Diane M. Torres, Esq. O'Melveny & Myers LLP 400 South Hope Street Los Angeles, California 90017-2899 | 213-430-6000 | 213-430-6407 |

FROM:   Jon Corey

RE:

MESSAGE:

| CLIENT #:   7975 | ROUTE/ RETURN TO:   Samantha-6 | ☐ CONFIRM FAX ☐ INCLUDE CONF. REPORT |
| --- | --- | --- |
| OPERATOR: | CONFIRMED?  ☐ No  ☐ YES | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3663 AS SOON AS POSSIBLE.

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On September 10, 2007, I served true copies of the following document(s) described as: **AFFIDAVIT OF MICHAEL MOORE IN SUPPORT OF MATTEL, INC.'S OPPOSITION TO MGA ENTERTAINMENT, INC.'S MOTION FOR TERMINATING SANCTIONS DUE TO SPOLIATION OF EVIDENCE** on the parties in this action as follows:

Diana M. Torres, Esq.
**O'Melveny & Myers**
400 So. Hope Street
Los Angeles, CA  90071

James W. Spertus, Esq.
**Law Offices Of James W. Spertus**
12100 Wilshire Blvd., Suite 620
Los Angeles, CA 90025

[√] **BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 10, 2007, at Los Angeles, California.

NOW LEGAL -- Dave Quintana

07209/2211071.1

1
2
3
4

## PROOF OF SERVICE

5       I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California.
6

7       On September 10, 2007, I served true copies of the following document(s) described as: **AFFIDAVIT OF MICHAEL MOORE IN SUPPORT OF MATTEL, INC.'S OPPOSITION**
8   **TO MGA ENTERTAINMENT, INC.'S MOTION FOR TERMINATING SANCTIONS DUE TO SPOLIATION OF EVIDENCE)** on the parties in this action as follows:
9

10   John W. Keker, Esq.                                      Patricia Glaser, Esq.
     Michael H. Page, Esq.                                   **Christensen, Glaser, Fink, Jacobs, Weil**
11   Christina M. Anderson, Esq.                        **& Shapiro, LLP**
     **Keker & Van Nest, LLP**                           10250 Constellation Blvd., 19th Floor
12   710 Sansome Street                                        Los Angeles, CA  90067
     San Francisco, CA 94111
13

14

15   [√] **BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I
16   deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.
17

18       Executed on September 10, 2007, at Los Angeles, California.

19

20

21

22   Johanna Lopez

23

24

25

26

27

28