QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]**<br><br>[PUBLIC REDACTED] DECLARATION OF MICHAEL T. ZELLER IN SUPPORT OF MATTEL, INC.'S MOTION TO ENFORCE STIPULATION AND COMPEL BRYANT TO MAKE ORIGINAL DOCUMENTS AVAILABLE AND FOR SANCTIONS<br><br>Hearing Date: TBA<br>Time: TBA<br>Place: TBA<br><br>Discovery cutoff: None set<br>Final Pretrial Conf. Date: None set<br>Trial Date: None set |

2007 JAN 23 AM 11:19

LODGED

## DECLARATION OF MICHAEL T. ZELLER

I, Michael T. Zeller, declare as follows:

I am a member of the bars of the States of California, New York and Illinois, am admitted to practice before this court and am a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for plaintiff and cross-defendant Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

1.      Attached as Exhibit 1 hereto is a true and correct copy of Mattel's Complaint in this action, which was filed on April 27, 2004 in Los Angeles County Superior Court. Attached as Exhibit 2 hereto is a true and complete copy of Mattel's Amended Answer and Counterclaims, dated January 12, 2007, which Judge Larson granted Mattel leave to file by Order dated January 12, 2007.

2.      Exhibit A to the Complaint is a true and correct copy of the Mattel Employee Confidential Information and Inventions Agreement signed by Carter Bryant on January 4, 1999. In the Employee Agreement, Bryant agreed that he would not, without Mattel's express written consent, "engage in any employment or business other than for [Mattel], or invest in or assist (in any manner) any business competitive with the business or future business plans of [Mattel]." In addition, Bryant assigned to Mattel all right, title and interest in "inventions," including without limitation "designs," that he conceived, created or reduced to practice during his employment by Mattel.

3.      As set forth in the Complaint and in Mattel's Amended Answer and Counterclaims, in late November 2003, Mattel obtained a copy of a contract between Bryant and a Mattel competitor, MGA Entertainment Inc. ("MGA"). That contract-- which Bryant and MGA had entered into while Bryant was employed by Mattel-- required Bryant to provide design services to MGA on a "top priority" basis. It also purported to grant MGA ownership of works produced by Bryant, both before and

02527/2040046.1

-2-

1  after the agreement's effective date.  Attached as Exhibit 3 hereto is a true and correct

2  copy of the contract between Bryant and MGA (as obtained by Mattel).

3         4.     Attached as Exhibit 4 hereto are true and correct excerpts from the

4  deposition transcript of Carter Bryant.  Bryant testified that he worked on two projects

5  with MGA while he was employed by Mattel.  One was the "Bratz" project.  See Exh.

6  4, at 178:3-22.  The other was an ostensibly separate project known as "Angel".  See

7  Exh. 4, at 195:21-196:20.  Bryant and MGA claim that Bryant created most or all of

8  his drawings, and performed other relevant work, either during the few months in

9  1998 when he was not working for Mattel or else after the time he had left Mattel.

10         5.     Bryant made an initial production of documents in this action on

11  August 12, 2004.  Bryant made subsequent productions of documents on October 14,

12  2004 and November 1, 2004, respectively.  Bryant's entire production in this case to

13  date consists of approximately 1588 pages.

14         6.     Most of Bryant's production consists of materials that are largely

15  undated, including notes, drawings and sketches.   The documents were not

16  accompanied by any indication about their source or the manner in which they were

17  kept.  All of the drawings produced by Bryant were black and white photocopies.

18  Additionally, the overwhelming majority of the drawings produced by Bryant are

19  undated.   Attached as Exhibit 5 are true and correct copies of examples of the

20  documents produced by Bryant on August 12, 2004, Bates Nos. BRYANT 00188,

21  00193, 00189-91, 00196, and 00198-200, as received by Mattel.  With respect to the

22  original drawings that Mattel has been allowed to see in this case, many were created

23  using different kinds and colors of pencils, inks and markers. They also have what

24  appears to be different handwriting from different sources made at different times on

25  them.

26         7.     Moreover, as produced by Bryant, some documents appear to omit

27  information without indication that they were redacted.  Attached hereto as Exhibit 6

28  is a true and correct copy of a faxed document dated April 10, 2000 (as produced by

-3-

ZELLER DECLARATION

1   Bryant on August 12, 2004, Bates No. BRYANT 00167). The document appears to

2   be Bratz designs. Although the header on the fax indicates that it is the third page of a

3   fax transmission, neither the first nor the second page of the transmission were

4   produced, nor were any subsequent pages produced. Moreover, neither the name of

5   the sender nor the sender's telephone number appears in the header, and no cover sheet

6   for the fax was produced. Attached as Exhibit 7 is a true and correct copy of a faxed

7   document as produced by Bryant, Bates No. BRYANT 1220. The fax number is

8   obliterated from the header of the document, and no fax cover sheet was produced

9   identifying the sender and recipient of the fax.

10          8.      Attached hereto as Exhibit 8 is a true and correct excerpt from

11   Victoria O'Connor's deposition transcript. According to the testimony of Ms.

12   O'Connor, a former MGA executive and one of Bryant's initial contacts at MGA, Issac

13   Larian, President of MGA, instructed her to white out fax header information

14   appearing on Carter Bryant's original contract with MGA, which showed it was faxed

15   by Bryant from Mattel's design center. Ms. O'Connor testified that she did alter this

16   document at Mr. Larian's direction because it demonstrated Bryant "was still

17   employed at Mattel at the time the contract was executed."

18          9.      Attached as Exhibit 9 is a true and correct copy of a letter dated

19   October 27, 2004 from Kirkland Garey, my colleague, to Keith Jacoby, confirming

20   aspects of the October 25, 2004 meet and confer in which Mr. Jacoby agreed to allow

21   Mattel to inspect original documents and tangible things.

22          10.     Attached as Exhibit 10 is a true and correct copy of Mr. Jacoby's

23   October 28, 2004 letter to Kirkland Garey, in which Mr. Jacoby states, "[y]ou can

24   come to my office for this inspection at 3:00 p.m. on Monday [November 1, 2004]."

25          11.     Attached as Exhibit 11 is a true and correct copy of Mr. Garey's

26   October 28, 2004 letter to Keith Jacoby, in which Mr. Garey asks that the inspection

27   of original documents and tangible things scheduled for November 1, 2004 include:

28   "1) all of the non-privileged responsive documents in Bryant's possession or control;

2) the additional documents you agreed to allow us to inspect at the meeting of counsel; and 3) all of the tangible items that Mattel requested." Before the inspection on November 1, 2004, Bryant's counsel unilaterally limited Mattel's inspection to only the tangible things produced by Bryant up to that point. At the inspection, Bryant failed to provide any originals of the drawings or other documents that he had produced.

12. Attached as Exhibit 12 is a true and correct copy of the November 1, 2004 letter to Keith Jacoby, requesting that Mr. Bryant have his originals available at his deposition in Missouri.

13. Attached as Exhibit 13 is a true and correct copy of an e-mail message from Keith Jacoby dated November 3, 2004 in which he stated that "we will have these originals sent to Missouri."

14. As shown by the transcript of Carter Bryant's deposition, because Bryant did not make available his originals at his deposition, Mattel's counsel again requested the originals. Bryant's counsel specifically represented on the record during the deposition that, as to Bryant's original documents and drawings, "we certainly will make them available for inspection at a reasonable time upon reasonable notice." See Exh. 4 (at 120:17-18).

15. Attached as Exhibit 14 is a true and correct copy of my January 24, 2005 letter to Keith Jacoby again requesting originals.

16. After meeting and conferring and still not having obtained all of Bryant's requested originals, Mattel filed on February 18, 2005 a motion to compel Bryant to make them available. Attached as Exhibit 15 is a true and correct copy of the Joint Stipulation Re:  Mattel, Inc.'s Motion to Compel Inspection of Original Documents and Tangible Things, dated February 18, 2005.

17.    The motion to compel was held in abeyance while the case was stayed.   After the jurisdictional appeal was resolved and discovery resumed in approximately May 2006, Magistrate Judge Block ordered the parties to appear in his courtroom on June 20, 2006 to further meet and confer on the then-pending discovery motions, which included Mattel's motion to compel Bryant to produce his originals. As a result of the meet and confer among counsel for Mattel, Bryant and MGA on that day regarding Mattel's motion to compel Bryant to produce his originals, the parties agreed, and stipulated on the record before Judge Block, that Bryant (as well as the other parties) would produce originals requested by any other party for inspection and photographing within 15 days of such a request.  (No party has ordered the transcript for this session before Judge Block, although the stipulation is documented in contemporaneous letters attached to the Declaration of Shane McKenzie.)

18.    Attached as Exhibits 16 and 17 hereto are true and correct hard copies of email exchanges between me and Mr. Jacoby as of October 2005 reflecting Bryant's counsel's further refusals to make available to Mattel the complete original of a spiral notebook containing Bratz drawings by Bryant.

19.    Because Bryant still had not produced the requested originals despite the June 20, 2006 stipulation, and prior to the time of the appointment of the Discovery Master, Mattel had began the Joint Stipulation process on another motion to compel Bryant to produce his originals.  At the December 19, 2006 telephone conference with the parties, the Discovery Master instructed the parties to discuss that potential motion further, which Dylan Proctor of my office did with Bryant's counsel on December 28, 2006.  Attached as Exhibit 18 is a true and correct copy of a letter to counsel for Bryant dated December 21, 2006, requesting and listing the three topics to be discussed at the December 28, 2006 meet and confer.

20.    Attached as Exhibit 19 hereto is a true and correct copy of Order Denying Motion for Appointment of Expert Witness, dated August 10, 2006.

1    21.    Attached as Exhibit 20 is a true and correct copy of an excerpt

2  from the deposition transcript of Jacqueline Prince, dated December 21, 2004.

3    22.    Attached as Exhibit 21 is a true and correct copy of an excerpt

4  from the deposition transcript of Steve Linker, dated September 13, 2006.

5    23.    Mattel has incurred attorneys' fees and costs in excess of $2,200 in

6  bringing this motion.  I spent more than two hours of time preparing the motion and

7  my declaration, for a total of more than $ 1,200.00 at my billing rate of $600.00 per

8  hour.  Shane McKenzie and Kristelia Garcia, Quinn Emanuel associates, were also

9  involved in preparing this motion and the related declarations.  Ms. McKenzie and

10  Ms. Garcia spent more than three hours of their time in researching and preparing this

11  motion and the related declarations, for a total of more than $1,000.00 at their billing

12  rate of $340.00 per hour.

13

14    I declare under penalty of perjury under the laws of the State of

15  California and the United States of America that the foregoing is true and correct.

16  Executed this 22nd day of January, 2007, at Los Angeles, CA.

17

18  Michael T. Zeller

19

20

21

22

23

24

25

26

27

28

**EXHIBIT  1**

**COPY**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2    Michael T. Zeller (Bar No. 196417)
     865 South Figueroa Street, 10th Floor
3    Los Angeles, California 90017
     Telephone:    (213) 443-3000
4    Facsimile:    (213) 443-3100

5    Attorneys for Plaintiff
     Mattel, Inc.

6

7

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

APR 27 2004

John A. Clarke, Executive Officer/Clerk
By ⸺⸺⸺⸺⸺, Deputy
      SUE GABB

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      FOR THE COUNTY OF LOS ANGELES

10

11   MATTEL, INC., a Delaware corporation,       )   CASE NO.   BC314398
                                                  )
12                         Plaintiff,             )
                                                  )   COMPLAINT FOR:
13                                                )
                                                  )   (1)   BREACH OF CONTRACT;
14           v.                                   )   (2)   BREACH OF FIDUCIARY
                                                  )         DUTY;
15                                                )   (3)   BREACH OF DUTY OF
     CARTER BRYANT, an individual; and            )         LOYALTY;
16   DOES 1 through 10, inclusive,                )   (4)   UNJUST ENRICHMENT; AND
                                                  )   (5)   CONVERSION
17                                                )
                           Defendants.            )
18                                                )
                                                  )
19   ⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺⸺ )

20

21

22

23

24

25

26

27

28

EXHIBIT ___1___   PAGE ___8___
COMPLAINT

Plaintiff Mattel, Inc. ("Mattel") brings this action against defendants Carter Bryant ("Bryant") and Does 1 through 10 (all defendants being collectively referred to as "defendants") and alleges as follows:

Parties

1.      Mattel is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business in El Segundo, California.

2.      Mattel is informed and believes, and on that basis alleges, that defendant Bryant is an individual currently residing in Springfield, Missouri.

3.      The true names and capacities of defendants sued herein as Does 1 through 10, inclusive, are unknown to Mattel, which therefore sues said defendants by such fictitious names.  Mattel will amend this Complaint to allege their true names and capacities when the same are ascertained.

4.      Mattel is informed and believes, and on that basis alleges, that at all times relevant herein, defendants, and each of them, were acting in concert and active participation with each other in committing the wrongful acts alleged herein, and were the agents of each other, and in doing the things alleged herein, each defendant was acting within the course and scope of his, her or its agency and was subject to and under the supervision of, and was acting with the knowledge of, his, her or its co-defendants.

Jurisdiction and Venue

5.      During the time of the acts complained of herein, Bryant was employed by Mattel in, and was a resident of, Los Angeles County.  Bryant's contracts with Mattel that are at issue in this action were executed, performed and breached by Bryant in Los Angeles County.  In addition, defendants committed the tortious conduct alleged herein while physically located in Los Angeles County, and Mattel felt the effects of Bryant's breach and

-2-

EXHIBIT ___1___ PAGE ___9___

COMPLAINT

1 | defendants' other wrongful acts in Los Angeles County.   Accordingly, this Court has
2 | personal jurisdiction over defendants.

3 |     6.      Venue is proper pursuant to <u>Code of Civil Procedure</u> §§ 393 and 395(a),
4 | as the causes of action arose in Los Angeles County, the contractual obligations at issue were
5 | incurred, were to be performed and were breached by Bryant in Los Angeles County, and
6 | Bryant does not currently reside in California.

7 |

8 |                     <u>Factual Background</u>
9 |

10 |     7.      Mattel is a long standing and successful independent manufacturer and
11 | marketer of toys, dolls, games and stuffed toys and animals.  Mattel was founded in 1945 by
12 | Elliot and Ruth Handler and Harold "Matt" Mattson.  The name of the company was created
13 | by incorporating the names of two of its founders, "MATT-son" and "EL-liot."  Originating
14 | from the Handlers' garage in Southern California, the company greatly expanded its
15 | operations following World War II and soon began to thrive as its reputation for producing
16 | high-quality toys spread.  During the next several decades, Mattel became world famous for
17 | producing high-quality products at reasonable prices.  Today, some of Mattel's most famous
18 | brands include BARBIE, HOT WHEELS, MATCHBOX and FISHER-PRICE.

19 |     8.      Critical to Mattel's success, and to the livelihood of its employees, is
20 | Mattel's ability to design and develop new products.  Mattel invests many millions of dollars
21 | in product design and development annually, and it introduces hundreds of new products
22 | each year.  In El Segundo, California alone, Mattel maintains a 180,000 square-foot design
23 | center that houses more than 850 designers, sculptors, painters and other artists, whom
24 | Mattel pays to work exclusively and full-time to create the products that Mattel sells and on
25 | which Mattel's business depends.

26 |     9.      Defendant Bryant was employed by Mattel from September 1995
27 | through April 1998, and then again from January 1999 through October 2000, as a product
28 | designer at Mattel's design center in El Segundo, California.

EXHIBIT ___ PAGE ___ COMPLAINT 0

1      10.     On January 4, 1999, upon starting his second term of employment by
2   Mattel, and as a condition of and in consideration for his employment, Bryant executed an
3   Employee Confidential Information and Inventions Agreement (the "Employee
4   Agreement").  Among other things, Bryant agreed that he would not, without Mattel's
5   express written consent, "engage in any employment or business other than for [Mattel], or
6   invest in or assist (in any manner) any business competitive with the business or future
7   business plans of [Mattel]."  Bryant further acknowledged that he held a position of trust
8   with Mattel.  In addition, Bryant assigned to Mattel all rights, title and interest in
9   "inventions," including without limitation "designs," that he conceived or reduced to practice
10  during his employment by Mattel. A true and correct copy of Bryant's Employee Agreement
11  with Mattel is attached as Exhibit A.

12      11.     Also on January 4, 1999, Bryant executed Mattel's Conflict of Interest
13  Questionnaire (the "Conflict Questionnaire").  Among other things, Bryant certified in the
14  Conflict Questionnaire that, other than as disclosed, he had not worked for any competitor
15  of Mattel in the prior twelve months and had not engaged in any business venture or
16  transaction involving a Mattel competitor that could be construed as a conflict of interest.
17  Bryant specifically agreed that he would immediately notify his supervisor of any change
18  in his situation that would cause him to change any of the foregoing certifications. The only
19  conflict disclosure that Bryant made on the Conflict Questionnaire (or at any time
20  subsequently) concerned freelance work that is unrelated to the conduct alleged herein.  A
21  true and correct copy of the Conflict Questionnaire executed by Bryant is attached as
22  Exhibit B.

23      12.     In late November 2003, Mattel learned that Bryant had secretly aided,
24  assisted and worked for a Mattel competitor, including without limitation by entering into
25  an agreement with the competitor, during the time Bryant was employed by Mattel pursuant
26  to the above-referenced agreements and was being paid by Mattel as a product designer.
27  Bryant's agreement with the competitor obligated Bryant to provide product design services
28  to the competitor on a "top priority" basis. Bryant's agreement also provided, among other

1  things, that Bryant would receive royalties and other consideration for sales of products on

2  which Bryant provided aid or assistance; that all work and services furnished by Bryant to

3  the competitor under the agreement purportedly would be considered "works for hire"; and

4  that all intellectual property rights to preexisting work by Bryant purportedly would be

5  assigned to the competitor.  In addition, while Bryant was employed by Mattel, Bryant and

6  the other defendants converted, misappropriated and misused Mattel property and resources

7  for the benefit of, and to aid and assist, Bryant personally and Mattel's competitor.

8          13.    During the time that he was employed by Mattel and thereafter, Bryant

9  concealed these actions from Mattel, including without limitation by failing to notify his

10  supervisor of his conflict of interest regarding the competitor and by making affirmative

11  misrepresentations to Mattel management upon his departure from Mattel.  Because of

12  Bryant's acts of concealment and his misrepresentations to Mattel, Mattel had no reason to

13  suspect that Bryant had worked for the competitor while still employed by Mattel until late

14  November 2003, when Mattel received, through an unrelated legal action, a copy of Bryant's

15  agreement with the competitor and saw that the date of the agreement predated Bryant's

16  departure from Mattel.

17          14.    As a consequence, Bryant breached his contracts with Mattel and

18  violated his duty of loyalty and his fiduciary duties to Mattel; the other defendants have

19  unlawfully aided and abetted his violation of such duties; and each of the defendants has

20  been unjustly enriched and engaged in acts of conversion.

21

22                      FIRST CLAIM FOR RELIEF

23                         (Breach of Contract)

24

25          15.    Mattel repeats and realleges each and every allegation set forth in

26  paragraphs 1 through 14, above, as though fully set forth at length.

27          16.    Pursuant to his Mattel Employment Agreement, and for good and

28  valuable consideration, Bryant agreed that he would not, without Mattel's express written

07209/579342.1

-5-

EXHIBIT ___1___ PAGE 12

COMPLAINT

1  consent, engage in any employment or business other than for Mattel or assist in any manner
2  any business competitive with the business or future business plans of Mattel during his
3  employment with Mattel.  Pursuant to his Mattel Employment Agreement, Bryant further
4  assigned to Mattel all right, title and interest in "inventions," including without limitation
5  "designs," that he conceived or reduced to practice during his employment by Mattel.  In
6  addition, pursuant to the Conflict Questionnaire, Bryant certified that, other than as
7  disclosed, he had not worked for any competitor of Mattel and had not engaged in any
8  business venture or transaction involving a Mattel competitor that could be construed as a
9  conflict of interest.  Bryant further promised that he would notify his superior immediately
10 of any change in his situation that would cause him to change any of the foregoing
11 certifications or representations.

12         17.    The Employment Agreement and the Conflict Questionnaire are valid,
13 enforceable contracts, and Mattel has performed each and every term and condition of the
14 Employment Agreement and Conflict Questionnaire required to be performed by Mattel.

15         18.    Bryant materially breached the foregoing contracts with Mattel, in that,
16 among other things, he secretly aided, assisted and worked for a Mattel competitor during
17 his employment with Mattel, without the express written consent of Mattel.

18         19.    As a consequence of Bryant's breach, Mattel has suffered and will in
19 the future continue to suffer damages in an amount to be proven at trial.  Such damages
20 include, without limitation, the amounts paid by the competitor to Bryant during his Mattel
21 employment; the amounts paid by the competitor to Bryant as a result of the work he
22 performed for the competitor during his Mattel employment; the amount that Mattel paid
23 Bryant during the time he wrongfully worked for the competitor; the value of information
24 and intellectual property owned by Mattel which Bryant provided to the competitor; the
25 value of the benefits the competitor obtained from Bryant during the time he was employed
26 by Mattel; and the value of the benefits the competitor obtained from Bryant as a result of
27 the work he performed for the competitor during his Mattel employment.

28

EXHIBIT ___1___ PAGE __13__    -6-    COMPLAINT

20.     Furthermore, Bryant's conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Bryant specifically acknowledged in his Employment Agreement that his breach of the Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies." Accordingly, Mattel is entitled to orders mandating Bryant's specific performance of his contracts with Mattel and restraining Bryant from further breach.

## SECOND CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

21.     Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 20, above, as though fully set forth at length.

22.     Bryant held a position of trust and confidence with Mattel.  In his position, Bryant had access to and was entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently in many of his job assignments and duties.  In his position, Bryant also represented Mattel in its dealings with third parties and, in his actions in the course and scope of his employment with Mattel, was an agent of Mattel.  Bryant confirmed his relationship of trust with Mattel in the Employee Agreement.  Bryant thus owed Mattel a fiduciary duty that included, but was not limited to, an obligation not to take any action that would be contrary to Mattel's best interests or that would deprive Mattel of any opportunities, profit or advantage which Bryant might bring to Mattel.

23.     Bryant breached his fiduciary duty to Mattel in that, while employed by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including without limitation by entering into an agreement with a Mattel competitor.  As alleged

1   above, Bryant also breached the aforementioned duty by using Mattel property and resources

2   for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3         24.     The other defendants, acting with full knowledge of Bryant's obligations

4   to Mattel, aided and abetted Bryant in such conduct.

5         25.     As a direct and proximate result of defendants' wrongful conduct,

6   Mattel has incurred damages in an amount to be determined at trial.

7         26.     Defendants acted with malice, fraud and oppression, and in conscious

8   disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages

9   against defendants in an amount to be determined at trial.

10        27.     Furthermore, defendants' conduct has caused, and unless enjoined will

11   continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

12   money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel

13   is entitled to an order restraining further breach of Bryant's fiduciary duty to Mattel and/or

14   restraining defendants from continuing to benefit from such breach.

15

16                       THIRD CLAIM FOR RELIEF

17                       (Breach of Duty of Loyalty)

18

19        28.     Mattel repeats and realleges each and every allegation set forth in

20   paragraphs 1 through 27, above, as though fully set forth at length.

21        29.     As an employee of Mattel, Bryant owed a duty of undivided loyalty to

22   Mattel, his employer. Pursuant to this duty, Bryant could not compete with Mattel or assist

23   a competitor of Mattel during his employment with Mattel. Pursuant to this duty, Bryant

24   was required to always give preference to Mattel's business over his own, similar interests

25   during the course of his employment with Mattel.

26        30.     Bryant breached his duty of loyalty to Mattel in that, while employed

27   by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including

28   without limitation by entering into an agreement with a Mattel competitor. As alleged

07209/579342.1

EXHIBIT ___1___ PAGE __15__          COMPLAINT

1   above, Bryant also breached the aforementioned duty by using Mattel property and resources

2   for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3        31.    The other defendants, acting with full knowledge of Bryant's obligations

4   to Mattel, aided and abetted Bryant in such wrongful conduct.

5        32.    As a direct and proximate result of defendants' wrongful conduct,

6   Mattel has incurred damages in an amount to be determined at trial.

7        33.    Defendants acted with malice, fraud and oppression, and in conscious

8   disregard of Mattel's rights.  Accordingly, Mattel is entitled to an award of punitive damages

9   against defendants in an amount to be determined at trial.

10       34.    Furthermore, defendants' conduct has caused, and unless enjoined will

11  continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

12  money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel

13  is entitled to an order restraining further breach of Bryant's duty of loyalty to Mattel and/or

14  restraining defendants from continuing to benefit from such breach.

15

16                    FOURTH CLAIM FOR RELIEF

17                       (Unjust Enrichment)

18

19       35.    Mattel repeats and realleges each and every allegation set forth in

20  paragraphs 1 through 34, above, as though fully set forth at length.

21       36.    Defendants, by the aforementioned conduct, unfairly used and diverted

22  Mattel property, resources and opportunities for the benefit of, and to aid and assist,

23  themselves, all without authorization by or payment to Mattel for the same. Defendants have

24  been unjustly enriched as a result.

25       37.    Mattel is entitled to an award of all such amounts by which defendants

26  have been unjustly enriched in an amount to be determined at trial.

27

28

07209/579342.1

-9-

EXHIBIT 1    PAGE 16                        COMPLAINT

1      38.    Defendants acted with malice, fraud and oppression, and in conscious

2  disregard of Mattel's rights.  Accordingly, Mattel is entitled to an award of punitive damages

3  against defendants in an amount to be determined at trial.

4      39.    Furthermore, defendants' conduct has caused, and unless enjoined will

5  continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

6  money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel

7  is entitled to an order restraining defendants from any further unjust enrichment.

8

9                    FIFTH CLAIM FOR RELIEF

10                        (Conversion)

11

12      40.    Mattel repeats and realleges each and every allegation set forth in

13  paragraphs 1 through 39, above, as though fully set forth at length.

14      41.    Mattel was entitled to, _inter alia_, Bryant's exclusive services and the

15  exclusive ownership of his inventions as a Mattel product designer.  However, Bryant

16  provided such services, and purported to grant rights to such inventions, to a competitor

17  during the time of his exclusive Mattel employment.  All such services and the inventions

18  and work product resulting from such services, including without limitation ideas, concepts,

19  rights, designs, proprietary information, and other intellectual property and intangible

20  property created by Bryant during the term of the aforesaid agreements, were the property

21  of Mattel.  Such services and property were provided by Bryant to others, including

22  defendants, and used by them.

23      42.    Defendants wrongfully converted Mattel property and resources by

24  asserting ownership thereto and by appropriating and using Mattel's property and resources

25  for their own benefit and gain and for the benefit and gain of others, without the permission

26  of Mattel.

27

28

07209/579342.1

-10-

EXHIBIT  1  PAGE 17

43.    As a direct and proximate result of defendants' wrongful conversion of Mattel's property and resources, Mattel has incurred damages.  Mattel is entitled to recover compensatory damages against defendants in an amount to be determined at trial.

44.    Defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to an award of punitive damages against defendants in an amount to be determined at trial.

45.    Furthermore, defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel is entitled to an order restraining defendants from further conversion of Mattel property and resources and/or restraining defendants from continuing to benefit from such conversion.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Mattel hereby respectfully requests that this Court:

A.    Award Mattel its damages;

B.    Order defendants to disgorge to Mattel all payments, revenue, profits, monies, royalties and any other benefits derived or obtained by defendants as a result of the conduct described herein;

C.    Order specific performance by Bryant to comply with and satisfy Bryant's contractual obligations to Mattel;

D.    Enter an injunction restraining defendants, and all those acting in concert or participation with them, from engaging in further wrongful conduct and/or from continuing to benefit from their wrongful conduct;

E.    Order defendants to pay Mattel the full cost of this action and Mattel's reasonable attorneys' fees;

F.    Award Mattel punitive damages in an amount sufficient to punish defendants and deter such misconduct in the future; and

EXHIBIT ___1___ PAGE ___18___

COMPLAINT

1          G.     Award such other and further relief as this Court deems just and proper.

2

3    DATED:  April 27, 2004              QUINN EMANUEL URQUHART OLIVER &
                                         HEDGES, LLP
4

5                                        By _____
6                                           Michael T. Zeller
                                            Attorneys for Plaintiff
7                                           Mattel, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/579342.1                           -12-
                                                              COMPLAINT

EXHIBIT ___1___ PAGE ___19___

**Exhibit A**

EXHIBIT 1 PAGE 20

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

### 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including Information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint-ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

### 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominee(s) all my right, title and interest in such Inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any Invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

### 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

### 4. Miscellaneous

(a) My obligation under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement. In addition to damages and other available remedies.

(f) This Agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement will be executed in counterpart. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature _____

Employee Name (print)   CARTER H. BRYANT

Date   01/04/99

MATTEL, INC.

By: _____
Signature

Name of Witness (print)   TERESA NEWCOMB

EXHIBIT A PAGE 13

EXHIBIT 1 PAGE 21

**Exhibit B**

EXHIBIT __1__ PAGE _22_

## CONFLICT OF INTEREST QUESTIONNAIRE

*BRYANT, CARTER H.          PROJECT DESIGNER*

Name (Last, First, M.I.)                         Job Title                                    Department

**Instructions:** The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**Mattel Supplier** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**Mattel Competitor** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**Interest** means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

**Recipient of any commission, etc.,** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

○ YES ● NO   1. Have you owned, directly or indirectly, any interest in a Mattel supplier?

○ YES ● NO   2. Have you owned, directly or indirectly, and interest in a Mattel competitor?

○ YES ● NO   3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?

● YES ○ NO   4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?

● YES ○ NO   5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?

○ YES ● NO   6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?

○ YES ● NO   7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor?

○ YES ● NO   8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?

○ YES ● NO   9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

*4, 5,  freelance design & artwork in 1998,*
*from appx. 5/98 - 11/98 for the Ashton Drake*
*galleries.*

I certify that I have read Mattel's policies concerning Conflict of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged in any capacity which creates a Conflict of Interest.

Signature: *Carter Bryant*                      Date: *01/04/98*

EXHIBIT **B** PAGE **14**

EXHIBIT __1__ PAGE __23__

**EXHIBIT  2**

COPY

1    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2      John B. Quinn (Bar No. 90378)
       (johnquinn@quinnemanuel.com)
3      Michael T. Zeller (Bar No. 196417)
       (michaelzeller@quinnemanuel.com)
4      Jon D. Corey (Bar No. 185066)
       (joncorey@quinnemanuel.com)
5      Duane R. Lyons (Bar No. 125091)
       (duanelyons@quinnemanuel.com)
6    865 South Figueroa Street, 10th Floor
     Los Angeles, California  90017-2543
7    Telephone:  (213) 443-3000
     Facsimile:  (213) 443-3100
8
     Attorneys for Mattel, Inc.
9
                      UNITED STATES DISTRICT COURT
10
                     CENTRAL DISTRICT OF CALIFORNIA
11
     CARTER BRYANT, an individual,      CASE NO. CV 04-9049 SGL (RNBx)
12
                 Plaintiff,             Consolidated With Case No. 04-9059 and
13                                      Case No. 05-2727
           v.
14                                      MATTEL, INC.'S AMENDED ANSWER
                                        IN CASE NO. 05-2727 AND
15   MATTEL, INC., a Delaware           COUNTERCLAIMS FOR:
     corporation,
16                                      1.   COPYRIGHT INFRINGEMENT;
                 Defendant.             2.   VIOLATION OF THE
17                                           RACKETEER INFLUENCED AND
                                             CORRUPT ORGANIZATIONS
18                                           ACT;
     MGA ENTERTAINMENT, INC. a          3.   CONSPIRACY TO VIOLATE THE
19   California corporation,                 RACKETEER INFLUENCED AND
                                             CORRUPT ORGANIZATIONS
20                 Plaintiff,                ACT;
                                        4.   MISAPPROPRIATION OF TRADE
21         v.                                SECRETS;
                                        5.   BREACH OF CONTRACT;
22   MATTEL, INC., a Delaware           6.   INTENTIONAL INTERFERENCE
     corporation, and DOES 1-10,             WITH CONTRACT;
23                                      7.   BREACH OF FIDUCIARY DUTY;
                 Defendants.            8.   AIDING AND ABETTING
24                                           BREACH OF FIDUCIARY DUTY;
                                        9.   BREACH OF DUTY OF
25                                           LOYALTY;
                                        10.  AIDING AND ABETTING
26   MATTEL, INC., a Delaware                BREACH OF DUTY OF
     corporation,                            LOYALTY;
27                                      11.  CONVERSION;
                 Counter-claimant,      12.  UNFAIR COMPETITION; AND
28

EXHIBIT _2_   PAGE _24_

1-12

309/2035982.1

FILED

2007 JAN 12 PM 3: 21

| | | |
|---|---|---|
| 1 | v. | 13. DECLARATORY RELIEF. |
| 2 | MGA ENTERTAINMENT, INC., a California corporation; ISAAC | DEMAND FOR JURY TRIAL |
| 3 | LARIAN, an individual; CARTER BRYANT, an individual; MGA | |
| 4 | ENTERTAINMENT (HK) LIMITED, a Hong Kong Special Administrative | |
| 5 | Region business entity; MGAE DE MEXICO, S.R.L. DE C.V., a | |
| 6 | Mexico business entity; CARLOS GUSTAVO MACHADO GOMEZ, an | |
| 7 | individual; and DOES 4 through 10, | |
| 8 | Counter-defendants. | |
| 9 | | |
| 10 | AND CONSOLIDATED CASES | |
| 11 | | |

EXHIBIT 2 PAGE 25

AMENDED ANSWER AND COUNTERCLAIMS

## AMENDED ANSWER

Pursuant to the Court's Order of January 12, 2007, Defendant Mattel, Inc. ("Mattel") answers the Complaint of MGA Entertainment, Inc. ("Complaint") as follows:

### Preliminary Statement

The Complaint in this case contravenes Rule 8(a) of the Federal Rules of Civil Procedure in multiple respects. For example, in many places, the Complaint improperly mixes factual averments with argumentative rhetoric. The Complaint also includes a selective recitation of alleged historical facts and "rumor," much of which is both irrelevant and inflammatory in tone and content. In addition, many of the allegations of the Complaint are overly broad, vague or conclusory and include terms which are undefined and which are susceptible to different meanings. Accordingly, by way of a general response, all allegations are denied unless specifically admitted, and any factual averment admitted is admitted only as to the specific facts and not as to any conclusions, characterizations, implications or speculations which are contained in the averment or in the Complaint as a whole. These comments and objections are incorporated, to the extent appropriate, into each numbered paragraph of this Answer.

Mattel further submits that the use of the headings throughout the Complaint is improper, and therefore no response to them is required. In the event that a response is required, Mattel denies those allegations.

The Complaint also contains many purported photographs of various items, and it uses one or more headings purporting to describe, either individually or in groups, these various photographs. The images of these photographs contained in the Complaint are all relatively small and some are of less than optimal quality, making it difficult to evaluate the adequacy of the photographs or their fairness and accuracy in depicting what they purport to represent. The Complaint also does not describe the circumstances or time frame in which these photographs were taken,

1   and in many cases does not identify, or does not sufficiently or properly identify, the

2   item depicted in the photographs.  All of these factors, as well as the use of these

3   photographs and headings out of context, or with an insufficient context, impair the

4   ability of Mattel to fully respond to these photographs and headings, or to any

5   purported allegations involving, or relying upon, the use of such photographs and

6   accompanying headings.  By way of a general response, Mattel therefore does not

7   admit the authenticity of any photograph, or the accuracy or adequacy of any

8   heading, nor does it admit any allegation or inference that is based on, or purports to

9   be based on, any photograph or accompanying heading in the Complaint.  Mattel

10  reserves the right to challenge the authenticity of any photograph and the accuracy

11  or adequacy of any heading (either as included in the Complaint or in the context of

12  additional material not included).  Further, with reference to all photographs and

13  accompanying headings, or any averments based on the Complaint's use of such

14  photographs and headings, which might be offered into evidence, Mattel specifically

15  reserves its right to object to any use of such photographs, headings, and averments,

16  or the Complaint as a whole or in part, in evidence for any purpose whatsoever.

17         To the extent that Mattel has endeavored to answer any particular

18  allegation containing any such photographs and headings, any admission concerning

19  the item purported to be depicted in such photograph, or described in such headings,

20  shall not constitute an admission that the photograph is authentic, adequate, or

21  admissible, nor that any heading is accurate, adequate, or admissible.  All such items

22  purportedly depicted in such photographs, and described in such headings, "speak

23  for themselves".  Accordingly, to the extent that any such referenced materials are

24  deemed allegations against Mattel, they are denied.

25                            Responses

26         1.     Answering paragraph 1 of the Complaint, Mattel admits that

27  plaintiff MGA Entertainment, Inc. ("plaintiff" or "MGA") is a California

28  corporation with a principal place of business in Van Nuys, California.

EXHIBIT 2   PAGE 27

109/2035941.2

-4-

AMENDED ANSWER AND COUNTERCLAIMS

1          2.      Answering paragraph 2 of the Complaint, Mattel admits that
2    Mattel is a Delaware corporation with a principal place of business in El Segundo,
3    California.

4          3.      Answering paragraph 3 of the Complaint, Mattel denies that
5    there has been wrongful conduct on its part and states that it is without knowledge
6    or information sufficient to form a belief as to the truth or falsity of the remaining
7    allegations set forth therein and, on that basis, denies them.

8          4.      Answering paragraph 4 of the Complaint, Mattel admits that
9    plaintiff purports to assert claims under the Lanham Act, 15 U.S.C. §§ 1125(a) and
10   (c), <u>California Business and Professions Code</u> §§ 17200 *et seq.*, <u>California Business</u>
11   <u>and Professions Code</u> § 14330 and California common law, denies that plaintiff is
12   entitled to any relief thereunder and denies the truth of the remaining allegations set
13   forth in paragraph 4.

14         5.      Answering paragraph 5 of the Complaint, Mattel admits that it is
15   subject to personal jurisdiction in this District and denies the truth of the remaining
16   allegations set forth in paragraph 5.

17         6.      Answering paragraph 6 of the Complaint, Mattel admits that
18   venue is proper in this District and denies the truth of the remaining allegations set
19   forth in paragraph 6.

20         7.      Answering paragraph 7 of the Complaint, Mattel admits that
21   MGA has filed the instant lawsuit and denies the truth of the remaining allegations
22   set forth in paragraph 7.

23         8.      Answering paragraph 8 of the Complaint, Mattel states that it is
24   without knowledge or information sufficient to form a belief as to the truth or falsity
25   of the allegations regarding MGA's history set forth therein and, on that basis,
26   denies them, states that MGA has made conflicting representations, including in
27   sworn statements, that are at odds with the allegations of the Complaint and denies
28   the truth of the remaining allegations set forth in paragraph 8.

EXHIBIT 2   PAGE 28

-5-

1        9.     Answering paragraph 9 of the Complaint, Mattel admits that

2  MGA filed this action, states that Mattel's web site and corporate governance

3  policies speak for themselves and denies the truth of the remaining allegations set

4  forth in paragraph 9.

5        10.    Answering paragraphs 10 through 20 of the Complaint,

6  inclusive, Mattel admits that it is the world's most successful toy company, states

7  that the first doll in its BARBIE line was publicly introduced in 1959 and that

8  BARBIE-branded dolls have been the world's best-selling toys, states that Mattel's

9  sales speak for themselves and states that the remaining allegations set forth therein

10  are the subject of a pending motion to strike pursuant to <u>Federal Rule of Civil</u>

11  <u>Procedure</u> 12(f) and that no further answer is therefore required at this time.

12       11.    Answering paragraph 21 of the Complaint, Mattel admits that

13  products in plaintiff's "Bratz" line compete with products in Mattel's BARBIE and

14  other product lines and states that the remainder of the allegation contained

15  therein—consisting of a sentence fragment—is unintelligible and on that basis

16  denies the truth of any such remaining allegation set forth therein.

17       12.    Answering paragraph 22 of the Complaint, Mattel admits that

18  products in plaintiff's "Bratz" line compete with Mattel products, states that the

19  remainder of the allegations contained therein are characterizations, not factual

20  assertions, and that therefore no response is necessary under <u>Fed. R. Civ. P.</u> 8(b)

21  and, to the extent any further response is required, denies the truth of any remaining

22  allegations set forth therein.

23       13.    Answering paragraph 23 of the Complaint, Mattel states that

24  MGA has made conflicting statements, including in sworn statements, that are

25  inconsistent with the allegations set forth in paragraph 23 of the Complaint and

26  states that it is therefore without knowledge or information sufficient to form a

27  belief as to the truth or falsity of the allegations set forth therein and, on that basis,

28  denies them.

EXHIBIT 2 PAGE 29

1    14.    Answering paragraph 24 of the Complaint, Mattel states that the
2  "look" of the referenced dolls speak for themselves and denies the truth of the
3  remaining allegations set forth therein.  By way of further answer, Mattel states that
4  the photographs and their accompanying caption on page 7 of the Complaint are
5  false and misleading to the extent they are intended to suggest that MGA has
6  produced or used a consistent packaging shape or look or that it has protectible
7  rights in the matters depicted in the photographs.

8    15.    Answering paragraph 25 of the Complaint, Mattel admits that
9  Bratz dolls are between approximately 9.5 to 10 inches in height, states that the
10  appearances of the dolls speak for themselves, denies that "Bratz" dolls are or "were
11  intentionally shorter" than dolls in Mattel's BARBIE line, denies that the "Bratz"
12  dolls "looked like no other" and denies the truth of the remaining allegations set
13  forth in paragraph 25.

14    16.    Answering paragraph 26 of the Complaint, Mattel states that the
15  use of the term "classic" is unintelligible, since Mattel has designed and sold
16  different dolls using different heads and with different fashions and themes over the
17  years, and denies the truth of any remaining allegations.  By way of further answer,
18  Mattel states that the image encaptioned "Mattel's 'Barbie'" on page 8 of the
19  Complaint is misleading in that it depicts one of the doll heads that have been used
20  as part of the BARBIE line for many years, and therefore ignores that Mattel has
21  long designed and sold an array of different BARBIE line dolls that use different
22  doll heads, including doll heads which depict different ethnicities, and that are
23  dressed in different clothing and fashion styles.

24    17.    Answering paragraph 27 of the Complaint, Mattel admits that
25  MGA has used the line "The Girls With a Passion for Fashion" in some contexts,
26  denies that MGA originated or otherwise has rights to that phrase, admits that one
27  audience for products in the "Bratz" line has been "tweens" and denies the truth of
28  the remaining allegations set forth in paragraph 27.    EXHIBIT 2    PAGE 30

209/2035941.2

-7-

1    18.    Answering paragraph 28 of the Complaint, Mattel admits that

2    certain "Bratz" dolls have won certain awards, the terms of which speak for

3    themselves, states that it is without knowledge or information sufficient to form a

4    belief as to the truth or falsity of the allegations regarding the "awards" MGA claims

5    and, on that basis, denies them, denies that plaintiff has protectible rights and denies

6    the truth of any remaining allegations set forth in paragraph 28.

7    19.    Answering paragraph 29 of the Complaint, Mattel admits that

8    dolls in the "Bratz" line compete with dolls in Mattel product lines, denies that

9    Mattel has or has ever had a "stranglehold" on any market, states that the market

10   allegations contained in paragraph 29 are vague and ambiguous, including without

11   limitation in that the allegations fail to specify what products among the parties'

12   respective lines are being referred to and what time period is being referred to, and

13   denies the truth of any remaining allegations set forth in paragraph 29.

14   20.    Answering paragraph 30 of the Complaint, Mattel admits MGA

15   has been a licensee of Mattel and states that the remaining allegations set forth

16   therein are the subject of a motion to strike and that no further response is therefore

17   required at this time.

18   21.    Answering paragraph 31 of the Complaint, Mattel states that the

19   allegations set forth therein are the subject of a motion to strike and that no further

20   response is therefore required at this time.

21   22.    Answering paragraph 32 of the Complaint, Mattel denies the

22   truth of the allegations set forth therein.

23   23.    Answering paragraph 33 of the Complaint, Mattel denies the

24   truth of the allegations set forth therein.

25   24.    Answering paragraph 34 of the Complaint, Mattel states that it

26   has released various MY SCENE dolls, including MY SCENE dolls named

27   "Madison", "Chelsea" and "Barbie," states that the appearance of the Bratz and MY

28   SCENE dolls speak for themselves, denies that Mattel designed its MY SCENE

EXHIBIT ___2___ PAGE ___31___

1   dolls to "evoke" or resemble the alleged "look" of "Bratz" dolls, denies that plaintiff

2   has protectible rights, states that MGA has made conflicting representations that are

3   at odds with the allegations of the Complaint and that it is therefore without

4   knowledge or information sufficient to form a belief as to the truth or falsity of the

5   allegations regarding the "launch" of Bratz dolls set forth therein and, on that basis,

6   denies them, and denies the truth of the remaining allegations set forth therein.  By

7   way of further answer, Mattel states that the photographs and their accompanying

8   captions on page 10 of the Complaint are misleading and false to the extent they are

9   intended to suggest that a particular Mattel doll has been changed over time as

10   purportedly depicted.  Among other things, Mattel has long designed and sold an

11   array of different BARBIE line dolls using different doll heads, and the photographs

12   encaptioned "Mattel's Traditional 'Barbie'" is one of the doll heads that has been

13   used, and continues to be used, as part of the BARBIE line.  In addition, the

14   photographs encaptioned MY SCENE doll "circa 2002" is, in fact, a Mattel doll

15   character called BARBIE that continues to be sold and/or marketed with that head,

16   and the photographs encaptioned MY SCENE doll "circa 2004" depict a MY

17   SCENE doll character separate and apart from the one depicted in the "circa 2002"

18   image (and is not a revised character as plaintiff apparently attempts to imply).

19         25.    Answering paragraph 35 of the Complaint, Mattel admits that

20   Mattel released a product line called FLAVAS, states that the appearance of the

21   FLAVAS dolls speaks for themselves, states that it is without knowledge or

22   information sufficient to form a belief as to the truth or falsity of the allegations

23   regarding the "rumor" relied upon by plaintiff and the undefined "media"

24   purportedly quoting Isaac Larian and, on that basis, denies them, denies that Mattel

25   has abandoned the FLAVAS line, and denies the truth of the remaining allegations

26   set forth in paragraph 35.

27         26.    Answering paragraph 36 of the Complaint, Mattel denies the

28   truth of the allegations set forth therein.  EXHIBIT __2__  PAGE __32__

27.    Answering paragraph 37 of the Complaint, Mattel denies the truth of the allegations set forth therein.  By way of further answer, Mattel states that the unnumbered photographs and their accompanying captions on pages 11 through 16 of the Complaint -- which apparently were included to purportedly support the allegation that MY SCENE dolls "became 'Bratz,'" which allegation Mattel specifically denies -- are false and misleading.  Among other things, the heads depicted are among an array of different doll heads that Mattel has used, and continues to use, over the course of many years.  Moreover, the images purport to compare different Mattel doll lines to show alleged changes in appearance even though, in fact, each of the heads are currently sold and/or marketed to the public.  The "Blonde" series of photographs encaptioned "original" and "recent" MY SCENE is further and specifically misleading in that it purports to compare two differently named and outfitted dolls in the MY SCENE doll line, both of which continue to be sold and/or marketed.

28.    Answering paragraph 38 of the Complaint, Mattel states that the phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein, denies that MGA was the originator of or the first to use the eye shape or makeup depicted as purportedly constituting "the 'BRATZ' eye," denies that Mattel has copied the "the 'BRATZ' eye" and denies the truth of the remaining allegations contained in paragraph 38.  By way of further answer, Mattel states that the unnumbered photographs and accompanying caption on page 13 of the Complaint are false and misleading.  Among other things, the purported "Original Mattel 'My Scene' Eye" is one of the eye and makeup designs that Mattel has used over the course of many years, and Mattel continues to sell and/or market dolls using the eye and makeup design depicted therein.

29.    Answering paragraph 39 of the Complaint, Mattel states that the phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein, denies that MGA was the originator of or the first to use the eye shape or makeup

EXHIBIT 2    PAGE 33

1   purportedly described as constituting "the 'BRATZ' eye," denies that Mattel has

2   copied the "the 'BRATZ' eye," states that the relevant dolls speak for themselves

3   and denies the truth of the remaining allegations contained in paragraph 38. By way

4   of further answer, Mattel states that the unnumbered photographs and accompanying

5   captions on page 14 of the Complaint are false and misleading. Among other things,

6   the purported "New Mattel 'My Scene' Eye" is one of the eye and makeup designs

7   that Mattel has used over the course of many years, and Mattel continues to sell

8   and/or market dolls using the eye and makeup design depicted on page 14 of the

9   Complaint.

10          30.     Answering paragraph 40 of the Complaint, Mattel denies the

11  truth of the allegations therein. By way of further answer, Mattel states that the

12  unnumbered photographs and their accompanying captions on pages 15 to 16 are

13  false and misleading. Among other things, the heads depicted are among an array of

14  different doll heads that Mattel has used, and continues to use, over the course of

15  many years. Moreover, the photographs purport to compare different Mattel doll

16  lines to show alleged changes in appearance even though, in fact, each of the heads

17  are currently sold and/or marketed to the public. The "Blonde" series of

18  photographs encaptioned "original" and "recent" MY SCENE is further and

19  specifically misleading in that it purports to compare two differently named and

20  outfitted dolls in the MY SCENE doll line, both of which continue to be sold and/or

21  marketed.

22          31.     Answering paragraph 41 of the Complaint, Mattel denies the

23  truth of the allegations set forth therein.

24          32.     Answering paragraph 42 of the Complaint, Mattel admits that the

25  photographs purport to depict two packages that were, among others, part of the MY

26  SCENE line, state that the packages speak for themselves and denies the truth of any

27  remaining allegations set forth therein.

28                                          EXHIBIT __2__  PAGE _34__

209/2035941.2

-11-

33.     Answering paragraph 43 of the Complaint, Mattel admits that the photograph purports to depict one of the packages that were, among others, part of the MY SCENE line, states that the parties' packages speak for themselves, states that MGA has failed to establish that it originated, or has protectible rights in, an "open and transparent style" for packaging and denies the truth of the remaining allegations set forth therein.

34.     Answering paragraph 44 of the Complaint, Mattel admits that one photograph purports to depict one of the packages that were, among others, part of the MY SCENE line, admits that the other photograph purports to depict one of the packages that were, among others, used as part of the Bratz line, states that the parties' packages speak for themselves, denies that MGA originated, or has protectible rights in, "the 'BRATZ' packaging" or in the packaging depicted in the Complaint and denies the truth of any remaining allegations set forth therein.

35.     Answering paragraph 45 of the Complaint, Mattel admits that one photograph purports to depict one of the packages that were, among others, part of the MY SCENE line, admits that the other photograph purports to depict one of the packages that were, among others, used as part of the Bratz line, states that the parties' packages speak for themselves, denies that MGA originated, or has protectible rights in, the packaging depicted in the Complaint and denies the truth of any remaining allegations set forth therein.

36.     Answering paragraph 46 of the Complaint, Mattel states that it has utilized a wide variety of packaging styles and shapes over the years, states that the relevant packaging speaks for itself, states that MGA lacks protectible rights in "non-rectangular shaped box" packaging or in the other elements MGA claims in paragraph 46, and denies the truth of the remaining allegations set forth therein.

37.     Answering paragraph 47 of the Complaint, Mattel denies that any alleged "theme" is "MGA's theme," denies that MGA originated or has rights to any theme and denies the truth of the remaining allegations set forth therein.

EXHIBIT __2__ PAGE __35__

1        38.    Answering paragraph 48 of the Complaint, Mattel admits that it

2   released a doll called "Chillin Out!", states that it has released such themed dolls

3   over the course of many years, admits MGA released a "Wintertime Wonderland"

4   themed doll, denies that MGA originated or has rights to such theme, states that the

5   relevant products speak for themselves and denies the truth of the remaining

6   allegations set forth therein.

7        39.    Answering paragraph 49 of the Complaint, Mattel admits that it

8   released a doll called "Night on the Town", states that it has released such themed

9   dolls over the course of many years, admits MGA released a "Formal Funk" themed

10  doll, denies that MGA originated or has rights to such theme, states that the relevant

11  products speak for themselves and denies the truth of the remaining allegations set

12  forth therein.

13       40.    Answering paragraph 50 of the Complaint, Mattel admits that it

14  released a doll called "Jammin' in Jamaica" and a playset called "Guava Gulch Tiki

15  Lounge", states that it has released such themed dolls and products over the course

16  of many years, admits that MGA released a "Sun-Kissed Summer" themed doll and

17  playset, denies that MGA originated or has rights to such theme, states that the

18  relevant products speak for themselves and denies the truth of the remaining

19  allegations set forth therein.

20       41.    Answering paragraph 51 of the Complaint, Mattel admits that it

21  has aired television commercials for its MY SCENE line, states that such

22  commercials speak for themselves, denies the truth of the remaining allegations set

23  forth therein and specifically denies that MGA was the originator of or has rights to

24  commercials "combining live action with animated sequences" set to "pop music

25  and lyrics".

26       42.    Answering paragraph 52 of the Complaint, Mattel denies the

27  truth of the allegations set forth therein.

EXHIBIT __2__   PAGE __36__

1    43.    Answering paragraph 53 of the Complaint, Mattel admits that it

2    released a MY SCENE "Sound Lounge", admits that MGA released a product called

3    "Runway Disco", states that the relevant products speak for themselves, denies that

4    it "imitated MGA's trapezoidal box," denies that MGA has rights thereto, and

5    denies the truth of the remaining allegations set forth therein.

6    44.    Answering paragraph 54 of the Complaint, Mattel denies the

7    truth of the allegations set forth therein.

8    45.    Answering paragraph 55 of the Complaint, Mattel admits that,

9    among the styling heads it has produced and sold over the course of many years, it

10    released a MY SCENE styling head, admits that MGA released a styling head called

11    "Funky Fashion Makeover Head", states that the relevant products speak for

12    themselves, denies that MGA has protectible rights and denies the truth of the

13    remaining allegations set forth in paragraph 55.

14    46.    Answering paragraph 56 of the Complaint, Mattel is without

15    knowledge or information sufficient to form a belief as to the truth or falsity of the

16    allegations set forth therein because plaintiff fails to identify the alleged instances of

17    confusion, including the source of the unidentified picture titled "Hairstyle practice",

18    and on that basis, denies them, and denies the truth of any remaining allegations set

19    forth in paragraph 56.

20    47.    Answering paragraph 57 of the Complaint, Mattel admits that it

21    has aired television commercials for its MY SCENE line, states that such

22    commercials speak for themselves and denies the truth of the remaining allegations

23    set forth therein.

24    48.    Answering paragraph 58 of the Complaint, Mattel admits that

25    MGA has used the line "The Girls With a Passion for Fashion" in some contexts,

26    denies that MGA originated that phrase or otherwise has rights to it, states that

27    Mattel's web site speaks for itself and denies the truth of the remaining allegations

28    set forth therein.

EXHIBIT _2_ PAGE _37_

AMENDED ANSWER AND COUNTERCLAIMS

1        49.    Answering paragraph 59 of the Complaint, Mattel admits that,

2   among the plush products that it has produced and sold over the course of many

3   years, it has released plush dogs as part of its MY SCENE "Miami Getaway"

4   themed product line, states that Mattel has for many years sold plush pets of the type

5   used with its MY SCENE dog, admits that MGA has released various Bratz pets,

6   states that MGA was not the originator of and has no rights to the features and other

7   elements described therein, states that the relevant products speak for themselves

8   and denies the truth of the remaining allegations set forth therein.

9        50.    Answering paragraph 60 of the Complaint, Mattel admits that,

10   among the plush toys that it has release over the course of many years, its MY

11   SCENE dog has been sold in packaging depicted (in part) on page 22 of the

12   Complaint, states that Mattel has for many years sold plush pets and other plush

13   products in packaging of the type used with its MY SCENE dog, admits that MGA

14   has released a "Bratz" dog, states that MGA was not the originator of and has no

15   rights to the packaging described therein, states that the relevant packages speak for

16   themselves and denies the truth of the remaining allegations set forth therein.

17        51.    Answering paragraph 61 of the Complaint, Mattel denies that it

18   has intended to cause any consumer confusion and states that it is without

19   knowledge or information sufficient to form a belief as to the truth or falsity of the

20   allegations set forth therein concerning unnamed retailers, customers and others

21   because plaintiff fails to identify any source for the matters alleged and, on that

22   basis, denies them and denies the truth of any remaining allegations set forth therein.

23        52.    Answering paragraph 62 of the Complaint, Mattel denies that it

24   has intended to cause any confusion and states that it is without knowledge or

25   information sufficient to form a belief as to the truth or falsity of the allegations set

26   forth therein concerning alleged comments and conversations because plaintiff fails

27   to identify any source for the alleged comments and conversations and, on that

28

EXHIBIT 2   PAGE 38

1  basis, denies them, and denies the truth of any remaining allegations set forth

2  therein.

3        53.    Answering paragraph 63 of the Complaint, Mattel denies that it

4  has intended to cause any confusion and states that it is without knowledge or

5  information sufficient to form a belief as to the truth or falsity of the allegations set

6  forth therein because plaintiff fails to identify any source for the alleged comments

7  and conversations and, on that basis, denies them, and denies the truth of any

8  remaining allegations set forth therein.

9        54.    Answering paragraph 64 of the Complaint, Mattel denies that it

10 has intended to cause any confusion and states that it is without knowledge or

11 information sufficient to form a belief as to the truth or falsity of the allegations set

12 forth therein because plaintiff fails to identify any source for the alleged comments

13 and conversations and, on that basis, denies them, and denies the truth of any

14 remaining allegations set forth therein.

15       55.    Answering paragraph 65 of the Complaint, Mattel denies the

16 truth of the allegations set forth therein.

17       56.    Answering paragraph 66 of the Complaint, Mattel admits that it

18 sued a competitor in the German courts for unfair competition for copying various

19 Mattel BARBIE line products, states that such claims exclusively arose under and

20 were the subject of German law, and denies the truth of the remaining allegations set

21 forth therein.

22       57.    Answering paragraph 67 of the Complaint, Mattel denies the

23 truth of the allegations set forth therein.

24       58.    Answering paragraph 68 of the Complaint, Mattel admits that it

25 has released dolls called "Wee 3 Friends," admits that MGA has released dolls

26 called "4-Ever Best Friends," states that the relevant products speak for themselves,

27 denies that MGA's packaging is distinctive, denies that MGA has protectible rights

28 thereto and denies the truth of the remaining allegations set forth in paragraph 68.

EXHIBIT 2    PAGE 39

1    59.    Answering paragraph 69 of the Complaint, Mattel admits that its

2  Fisher Price division has released, among other dolls called "Little Mommy," the

3  "Little Mommy Potty Training Baby Doll," admits that MGA has released a

4  "Mommy's Little Patient" doll and denies the truth of the remaining allegations set

5  forth therein.

6    60.    Answering paragraph 70 of the Complaint, Mattel admits that it

7  has released die-cast cars and other products called "Acceleracers" as part of its

8  HOT WHEELS line,  admits that MGA has released products called "AlienRacers,"

9  denies that MGA was the originator of or has rights to the elements and matters

10  described in paragraph 70, states that the relevant products speak for themselves and

11  denies the truth of the remaining allegations set forth therein.

12    61.    Answering paragraph 71 of the Complaint, Mattel admits that it

13  has aired commercials relating to "Acceleracers," states that such commercials

14  speak for themselves, denies the truth of the remaining allegations set forth therein

15  and specifically denies that MGA originated or has rights to commercials and other

16  matters described therein.

17    62.    Answering paragraph 72 of the Complaint, Mattel states that its

18  web site speaks for itself, denies the truth of the remaining allegations contained in

19  paragraph 72 and specifically denies that Mattel intended to create confusion in the

20  marketplace.

21    63.    Answering paragraph 73 of the Complaint, Mattel denies the

22  truth of the allegations set forth therein.

23    64.    Answering paragraph 74 of the Complaint, Mattel denies the

24  truth of the allegations set forth therein.

25    65.    Answering paragraph 75 of the Complaint, Mattel states that it

26  has brought a motion under Federal Rule of Civil Procedure 12 against the

27  allegations set forth therein and that no further response is therefore required at this

28  time.                                            EXHIBIT 2    PAGE 40

1           66.     Answering paragraph 76 of the Complaint, Mattel states that

2  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

3  including such acts that are lawful in foreign nations, and denies the truth of

4  allegations set forth therein.

5           67.     Answering paragraph 77 of the Complaint, Mattel states that

6  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

7  including such acts that are lawful in foreign nations, and denies the truth of the

8  allegations set forth therein.

9           68.     Answering paragraph 78 of the Complaint, Mattel states that it is

10  without knowledge or information sufficient to form a belief as to the truth or falsity

11  of the allegations regarding MGA's claimed "shortage of doll hair" and, on that

12  basis, denies them and denies the truth of the remaining allegations set forth therein.

13          69.     Answering paragraph 79 of the Complaint, Mattel states that

14  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

15  including such acts that are lawful in foreign nations, and denies the truth of

16  allegations set forth therein.

17          70.     Answering paragraph 80 of the Complaint, Mattel denies the

18  truth of the allegations set forth therein.

19          71.     Answering paragraph 81 of the Complaint, Mattel admits that

20  NPD Funworld ("NPD") supplies sales statistics in *inter alia* the toy, PC games and

21  video games industries, admits that to Mattel's knowledge NPD restricts the use of

22  its subscriber information, states that MGA was sued by NPD and states that it is

23  without it is without knowledge or information sufficient to form a belief as to the

24  truth or falsity of the allegations regarding the need of unspecified "toy companies"

25  for NPD statistics and, on that basis, denies them and denies the truth of any

26  remaining allegations set forth therein.

27          72.     Answering paragraph 82 of the Complaint, Mattel denies the

28  truth of the allegations set forth therein.

EXHIBIT _2_ PAGE _41_

09/20035941.2

1      73.     Answering paragraph 83 of the Complaint, Mattel states that it is

2  without knowledge or information sufficient to form a belief as to the truth or falsity

3  of the allegations set forth therein because MGA fails to quantify its annual

4  subscription fees and, on that basis, denies them.

5      74.     Answering paragraph 84 of the Complaint, Mattel states that it is

6  without it is without knowledge or information sufficient to form a belief as to the

7  truth or falsity of the allegations set forth therein and, on that basis, denies them.

8      75.     Answering paragraph 85 of the Complaint, Mattel states that

9  MGA was sued by NPD, states that it is without knowledge or information sufficient

10  to form a belief as to such nature and grounds for such litigation (to which Mattel

11  was not a party) and, on that basis denies the allegations relating thereto, and denies

12  the truth of the remaining allegations set forth therein.

13      76.     Answering paragraph 86 of the Complaint, Mattel denies the

14  truth of the allegations set forth therein.

15      77.     Answering paragraph 87 of the Complaint, Mattel admits that the

16  Children's Advertising Review Unit ("CARU") is the children's arm of the

17  advertising industry's self-regulation program, states that compliance with CARU's

18  Privacy Program can provide FTC-approved Safe Harbor under the Children's

19  Online Privacy Protection Act ("COPPA"), and denies the truth of the remaining

20  allegations set forth therein.

21      78.     Answering paragraph 88 of the Complaint, Mattel admits that it

22  is one of dozens of CARU Supporters and denies the truth of the remaining

23  allegations set forth therein.

24      79.     Answering paragraph 89 of the Complaint, Mattel denies the

25  truth of the allegations set forth therein.

26      80.     Answering paragraph 90 of the Complaint, Mattel states that it is

27  without knowledge or information sufficient to form a belief as to the truth or falsity

28  EXHIBIT  2  PAGE 42

1  of the allegations as to the consequences to MGA of MGA's violations of CARU

2  standards and, on that basis, denies them.

3          81.    Answering paragraph 91 of the Complaint, Mattel states that it is

4  without knowledge or information sufficient to form a belief as to the truth or falsity

5  of the allegations as to the consequences to MGA of MGA violation of CARU

6  standards and, on that basis, denies them.

7          82.    Answering paragraph 92 of the Complaint, Mattel admits that the

8  Toy Industry Association, Inc. ("TIA") is a toy industry trade association, admits

9  that at certain times TIA has given awards called the People's Choice Toy of The

10  Year or the Toy of The Year Award, denies that Mattel wrongfully influenced TIA

11  and states that it is without knowledge or information sufficient to form a belief as

12  to the truth or falsity of the remaining allegations set forth therein and, on that basis,

13  denies them.

14          83.    Answering paragraph 93 of the Complaint, Mattel states that the

15  allegations set forth therein are vague and ambiguous, including in that they fail to

16  properly identify the years in which the referenced awards were given and/or the

17  particular product which won such awards, and accordingly lacks knowledge or

18  information sufficient to form a belief as to the truth or falsity of the allegations set

19  forth therein and, on that basis, denies them.

20          84.    Answering paragraph 94 of the Complaint, Mattel admits that

21  Neil Freidman was the chairman of TIA from approximately May 2002 to May

22  2004, states that Fischer Price is a division of Mattel and denies the truth of the

23  remaining allegations set forth therein.

24          85.    Answering paragraph 95 of the Complaint, Mattel admits that

25  Hokey Pokey Elmo won the Toy of the Year Award and denies the truth of the

26  remaining allegations set forth therein.

27                                  EXHIBIT  2   PAGE 43

28

1        86.     Answering paragraph 96 of the Complaint, Mattel states that it is

2  without knowledge or information sufficient to form a belief as to the truth or falsity

3  of the allegations set forth therein and, on that basis, denies them.

4        87.     Answering paragraph 97 of the Complaint, Mattel denies the

5  truth of the allegations set forth therein.

6        88.     Answering paragraph 98 of the Complaint, Mattel denies that it

7  has engaged in wrongful, unlawful, unethical or actionable conduct and states that

8  the remaining allegations set forth therein are the subject of a motion to strike and

9  that therefore no further answer is required at this time.

10       89.     Answering paragraph 99 of the Complaint, Mattel denies the

11  truth of the allegations set forth therein.

12       90.     Answering paragraph 100 of the Complaint, Mattel denies the

13  truth of the allegations set forth therein.

14       91.     Answering paragraph 101 of the Complaint, Mattel repeats its

15  responses contained in paragraphs 1 through 90 of this Answer and incorporates

16  them by reference as though fully and completely set forth herein.

17       92.     Answering paragraph 102 of the Complaint, Mattel denies the

18  truth of the allegations set forth therein and specifically denies that MGA's alleged

19  trade dress is distinctive.

20       93.     Answering paragraph 103 of the Complaint, Mattel denies the

21  truth of the allegations set forth therein and specifically denies that MGA's alleged

22  trade dress is distinctive.

23       94.     Answering paragraph 104 of the Complaint, Mattel denies the

24  truth of the allegations set forth therein.

25       95.     Answering paragraph 105 of the Complaint, Mattel denies the

26  truth of the allegations set forth therein.

27       96.     Answering paragraph 106 of the Complaint, Mattel denies the

28  truth of the allegations set forth therein.

EXHIBIT 2   PAGE 44

1          97.     Answering paragraph 107 of the Complaint, Mattel denies the
2 truth of the allegations set forth therein.

3          98.     Answering paragraph 108 of the Complaint, Mattel denies the
4 truth of the allegations set forth therein and specifically denies that plaintiff is
5 entitled to injunctive relief.

6          99.     Answering paragraph 109 of the Complaint, Mattel repeats its
7 responses contained in paragraphs 1 through 98 of this Answer and incorporates
8 them by reference as though fully and completely set forth herein.

9        100.   Answering paragraph 110 of the Complaint, Mattel denies the
10 truth of the allegations set forth therein.

11        101.   Answering paragraph 111 of the Complaint, Mattel denies the
12 truth of the allegations set forth therein.

13        102.   Answering paragraph 112 of the Complaint, Mattel denies the
14 truth of the allegations set forth therein.

15        103.   Answering paragraph 113 of the Complaint, Mattel denies the
16 truth of the allegations set forth therein.

17        104.   Answering paragraph 114 of the Complaint, Mattel denies the
18 truth of the allegations set forth therein.

19        105.   Answering paragraph 115 of the Complaint, Mattel denies the
20 truth of the allegations set forth therein.

21        106.   Answering paragraph 116 of the Complaint, Mattel denies the
22 truth of the allegations set forth therein.

23        107.   Answering paragraph 117 of the Complaint, Mattel denies the
24 truth of the allegations set forth therein and specifically denies that plaintiff is
25 entitled to injunctive relief.

26        108.   Answering paragraph 118 of the Complaint, Mattel denies the
27 truth of the allegations set forth therein.

                                        EXHIBIT 2   PAGE 45

28

1    109.   Answering paragraph 119 of the Complaint, Mattel repeats its
2  responses contained in paragraphs 1 through 108 of this Answer and incorporates
3  them by reference as though fully and completely set forth herein.

4    110.   Answering paragraph 120 of the Complaint, Mattel denies the
5  truth of the allegations set forth therein.

6    111.   Answering paragraph 121 of the Complaint, Mattel denies the
7  truth of the allegations set forth therein.

8    112.   Answering paragraph 122 of the Complaint, Mattel denies the
9  truth of the allegations set forth therein.

10    113.   Answering paragraph 123 of the Complaint, Mattel denies the
11  truth of the allegations set forth therein and specifically denies that plaintiff is
12  entitled to injunctive relief.

13    114.   Answering paragraph 124 of the Complaint, Mattel repeats its
14  responses contained in paragraphs 1 through 113 of this Answer and incorporates
15  them by reference as though fully and completely set forth herein.

16    115.   Answering paragraph 125 of the Complaint, Mattel denies the
17  truth of the allegations set forth therein.

18

19                    General Denial

20    Unless specifically admitted herein, Mattel denies the truth of each and
21  every allegation set forth in plaintiff's Complaint and specifically denies that
22  plaintiff is entitled to any relief against Mattel.

23

24                  Affirmative Defenses

25    By alleging the Affirmative Defenses set forth below, Mattel does not
26  agree or concede that it bears the burden of proof or the burden of persuasion on any
27  of these issues, whether in whole or in part.          EXHIBIT 2   PAGE 46

28

First Affirmative Defense

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

Second Affirmative Defense

Plaintiff has no valid, enforceable or protectible rights or interest in the alleged trade dress or other matters asserted, including without limitation in that plaintiff has failed to establish that its alleged trade dress is distinctive as to plaintiff.

Third Affirmative Defense

Plaintiff's claims, including without limitation plaintiff's claims based upon alleged extra-territorial acts, are barred in whole or in part by lack of subject matter jurisdiction.

Fourth Affirmative Defense

Plaintiff's claims are barred in whole or in part by plaintiff's unclean hands.

Fifth Affirmative Defense

Plaintiff's claims are barred in whole or in part by virtue of Mattel's prior-creation of the elements and other matters asserted in the Complaint.

Sixth Affirmative Defense

Plaintiff's claims are barred in whole or in part by its lack of standing.

Seventh Affirmative Defense

Plaintiff's claims are barred in whole or in part by the applicable statutes of limitation and the doctrine of laches.

EXHIBIT 2 PAGE 47

!09/2035941.2

1

2                                **Eighth Affirmative Defense**

3              Plaintiff's claims are barred in whole or in part by the doctrines of

4    waiver, estoppel and acquiescence.

5

6                                 **Ninth Affirmative Defense**

7              Plaintiff's claims are barred in whole or in part by Mattel's

8    constitutional rights of free speech, petitioning and association, including without

9    limitation by the litigation privilege as protected by and/or codified in *inter alia*

10   Section 47(b) of the California Civil Code, the *Noerr-Pennington* doctrine, the

11   common interest privilege and by other privileges.

12

13                                **Tenth Affirmative Defense**

14             Plaintiff's claims are barred in whole or in part by Mattel's federal and

15   state constitutional rights of free speech, including without limitation under the First

16   Amendment of the United States Constitution.

17

18                               **Eleventh Affirmative Defense**

19             Plaintiff's claims are barred in whole or in part by the competitor

20   privilege.

21

22                               **Twelfth Affirmative Defense**

23             Plaintiff's claims are in whole or in part preempted by the Copyright

24   Act and barred by the *Sears-Compco* doctrine.

25

26

27                                                    EXHIBIT  2  PAGE 48

28

### Thirteenth Affirmative Defense

Plaintiff's requested relief, including plaintiff's requests for punitive and/or enhanced damages, are barred in whole or in part because all of Mattel's actions were in good faith.

### Fourteenth Affirmative Defense

Plaintiff's damages, if any, were not caused by Mattel and are not attributable to the acts or omissions of Mattel.

### Fifteenth Affirmative Defense

Plaintiff has failed to mitigate its damages, if any.

### Additional Defenses

Mattel has insufficient knowledge or information upon which to form a belief as to whether additional defenses are available. Mattel reserves the right to amend this Answer to add, delete, or modify additional defenses based on legal theories which may or will be divulged through clarification of the Complaint, through discovery, through change or clarification of the governing law or through further legal analysis of plaintiff's positions in this litigation.

### Prayer for Relief

WHEREFORE, Mattel prays for relief as follows:

1. That the Complaint be dismissed with prejudice;

2. That plaintiff take nothing by reason of the Complaint against Mattel and that judgment be entered in Mattel's favor;

3. That Mattel recover its costs and attorneys' fees; and

EXHIBIT 2 PAGE 49

1        4.     That this Court award such other and further relief as it deems

2    just and proper.

3

4    **<u>COUNTERCLAIMS</u>**

5        Pursuant to the Court's Order of January 12, 2007, and incorporating its

6    [Proposed] Amended Complaint dated November 19, 2006, Mattel, Inc. alleges as

7    follows:

8    **Preliminary Statement**

9        1.     For years MGA Entertainment, Inc. has engaged in a pattern of

10   stealing and using Mattel, Inc.'s property and trade secrets.  MGA's use of the

11   stolen property and trade secrets caused and continues to cause significant harm to

12   Mattel.  MGA first stole "Bratz," a fashion doll, from Mattel, and then continued

13   stealing Mattel's confidential and proprietary information to fuel MGA's growth.

14       2.     Carter Bryant conceived, created and developed Bratz designs

15   while he was employed by Mattel as a doll designer.  He concealed his Bratz work

16   from Mattel and wrongfully sold Bratz to MGA while he was a Mattel employee.

17   As MGA knows, Mattel owns the Bratz designs that Bryant made.  As the rightful

18   owner of those Bratz designs, Mattel has registered copyrights for them and seeks

19   damages arising from MGA's repeated infringement of those copyrights.

20       3.     Emboldened by the success of its illegal conduct, MGA has

21   repeated—and even expanded—its pattern of theft on numerous occasions.  For

22   example, in or about 2004, MGA decided to expand into Mexico.  To do so, and

23   operating from its Southern California offices, MGA hired away three key Mattel

24   employees in Mexico, who, on their way out, stole virtually every category of

25   Mattel's sensitive and trade secret business plans and information for the Mexican

26   market, as well as a significant quantity of sensitive and trade secret information

27   for Mattel's U.S. and worldwide businesses, and took them to MGA.  Armed with

28

EXHIBIT  2  PAGE 50

1   Mattel's confidential business plans and methods, MGA claimed to have increased

2   its market share in Mexico alone by 90% in a single year.

3        4.   In 2005, MGA needed help in Canada. So MGA, again

4   operating from its Southern California headquarters, hired Janine Brisbois from

5   Mattel. At that time, Ms. Brisbois was responsible for Mattel's account with Toys

6   'R Us ("TRU") and Wal-Mart. MGA gave her responsibility for those same

7   accounts, and she took from Mattel documents containing proprietary advertising,

8   project, sales, customer and strategy information for not only Canada, but for the

9   United States. Eliminating any doubt that MGA then proceeded to use those stolen

10   materials, Brisbois subsequently accessed and modified certain of those Mattel

11   documents while employed by MGA.

12        5.   These are not the only instances of such misconduct, which

13   MGA orchestrated and carried out from its headquarters in this District. Counter-

14   defendants have engaged in an ongoing, widespread pattern of illegal acts,

15   consisting of inducing Mattel employees to steal Mattel's confidential information

16   or other property and take it with them to MGA to further MGA's business interests

17   and to harm Mattel.

18                      **Jurisdiction**

19        6.   This Court has federal question jurisdiction over this action

20   pursuant to 28 U.S.C. §§ 1331, 17 U.S.C. §§ 101 *et seq.*, and 18 U.S.C. § 1964(c).

21   This Court has supplemental jurisdiction over Mattel's state law claims pursuant to

22   28 U.S.C. § 1367.

23                      **Venue**

24        7.   Venue is proper in this District pursuant to 28 U.S.C.

25   §§ 1391(b)-(d), 1391(f) and 1400(a) and 18 U.S.C. § 1965.

26

27   EXHIBIT 2   PAGE 51

28

**Parties**

8.   Mattel is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in El Segundo, California.

9.   Counter-defendant MGA Entertainment, Inc. ("MGA") is a corporation organized and existing under the laws of the State of California, with its principal place of business in Van Nuys, California.  Mattel is informed and believes, and on that basis alleges, that ABC International Traders, Inc. is a predecessor corporation to MGA and that until September 16, 2002, MGA was incorporated and known as ABC International Traders, Inc.  Upon the filing of the Complaint, Mattel, being ignorant of the nature, extent and scope of MGA Entertainment, Inc.'s involvement and complicity in the conduct alleged therein and having designated MGA Entertainment, Inc. in the Complaint as Doe 1 and having discovered its involvement and complicity, Mattel hereby amends its Complaint by substituting MGA Entertainment, Inc. for the fictitious Doe name Doe 1.

10.   Counter-defendant Carter Bryant ("Bryant") is an individual who formerly was employed by Mattel and has worked for and continues to work as a contactor for MGA.  Mr. Bryant currently resides in the State of Missouri.

11.   Counter-defendant MGA Entertainment (HK) Limited is a business entity organized and existing under the laws of the Hong Kong Special Administrative Region, with its principal place of business in Hong Kong.  Upon the filing of the Complaint, Mattel, being ignorant of the nature, extent and scope of involvement and complicity of MGA Entertainment (HK) Limited in the conduct alleged therein and having designated MGA Entertainment (HK) Limited in the Complaint as Doe 2 and having discovered its involvement and complicity, Mattel hereby amends its Complaint by substituting MGA Entertainment (HK) Limited for the fictitious Doe name Doe 2.

EXHIBIT 2   PAGE 52

1    12.    Counter-defendant MGAE de Mexico, S.R.L. de C.V. ("MGA

2 de Mexico") is a business entity organized and existing under the laws of Mexico,

3 with its principal place of business in Mexico City, Mexico.

4    13.    Mattel is informed and believes, and on that basis alleges, that

5 Counter-defendant Larian is the President and CEO of MGA and an individual

6 residing in the County of Los Angeles.   Upon the filing of the Complaint, Mattel,

7 being ignorant of the nature, extent and scope of involvement and complicity of

8 Larian in the conduct alleged therein and having designated Larian in the

9 Complaint as Doe 3 and having discovered his involvement and complicity, Mattel

10 hereby amends its Complaint by substituting Larian for the fictitious Doe name

11 Doe 3.

12    14.    Counter-defendant Carlos Gustavo Machado Gomez is an

13 individual who is employed by Counter-defendant MGA and who, on information

14 and belief, currently resides in the County of Los Angeles.

15    15.    The true names and capacities of Counter-defendants sued herein

16 as DOES 4 through 10, inclusive, are unknown to Mattel, which therefore sues said

17 Counter-defendants by such fictitious names.  Mattel will amend its pleadings to

18 allege their true names and capacities when the same are ascertained.

19                         **Factual Background**

20 **I.    MATTEL**

21    16.    Mattel manufactures and markets toys, games, dolls and other

22 consumer products.  Harold Mattson and Eliot and Ruth Handler founded Mattel in

23 1945.  The name of the company was created by incorporating the names of two of

24 its founders, "MATT-son" and "EL-liot."  Originating from the Handlers' garage in

25 Southern California, the company greatly expanded its operations following World

26 War II.  During the next several decades, Mattel became famous for producing

27 high-quality products at reasonable prices.     EXHIBIT 2    PAGE 53

28

AMENDED ANSWER AND COUNTERCLAIMS

17.    Critical to Mattel's success is its ability to design and develop new products.  Mattel invests millions of dollars in product design and development and introduces hundreds of new products each year.  Mattel maintains a 180,000 square-foot design center in El Segundo, California, that houses hundreds of designers, sculptors, painters and other artists, who work exclusively to create the products on which Mattel's business depends.

18.    Mattel also has invested substantial amounts over many years to develop its business methods and practices, including, without limitation, its marketing and advertising research, plans, methods and processes; its business research and forecasts; its costs, budgets, pricing, credit terms, deal terms and finances; its manufacturing, distribution, and sales methods and processes; and its inventory methods and processes.  These represent a material part of the intellectual infrastructure of Mattel and are highly valuable.

## II.    MGA ENTERTAINMENT

19.    MGA is also a toy manufacturer.  MGA began as a consumer electronics business, but expanded into the toy business with licenses to sell handheld electronic games.  By approximately late 1999 or early 2000, MGA developed a strategy to expand its business and compete directly with Mattel by launching a fashion doll line, so it stole a fashion doll that was owned by Mattel – "Bratz."

20.    MGA intentionally stole not just specific Mattel property, such as Bratz designs, prototypes and related materials, but also a vast array of trade secrets and other confidential information that comprise Mattel's intellectual infrastructure.  MGA's rapid growth was not organic, but rather was based upon its theft of Bratz.  As a result, MGA lacked an appropriate intellectual infrastructure for a company of its size and it became increasingly difficult to manage.  To deal with these problems, as detailed below, time and time again MGA simply stole Mattel's proprietary business methods, practices and information.  This not only

EXHIBIT 2   PAGE 54

1    allowed MGA to avoid expending time, money and effort necessary to build a

2    legitimate business, but also allowed MGA to unfairly compete against Mattel by

3    taking Mattel's playbook.

4    **III.  MGA STEALS A NEW LINE OF FASHION DOLLS FROM MATTEL**

5            21.    Carter Bryant is a former Mattel employee.  Bryant joined Mattel

6    in September 1995, where he worked in Mattel's Design Center as a BARBIE

7    product designer.  In or about April 1998, Bryant resigned his position with Mattel

8    and moved to Missouri to live with his parents.  Late in 1998, Bryant applied to

9    Mattel to be rehired.  On January 4, 1999, he began working at Mattel in Mattel's

10   Design Center, again as a product designer, for Mattel's BARBIE collectibles line.

11           22.    Upon his return to Mattel in January 1999, Bryant executed an

12   Employee Confidential Information and Inventions Agreement (the "Employment

13   Agreement"), a true and correct copy of which is attached hereto as Exhibit A.

14           23.    Pursuant to his Employment Agreement and as a condition of

15   and in consideration for his employment, Bryant agreed, among other things, that

16   he held a position of trust with Mattel, that the designs and inventions he created

17   during his Mattel employment (with certain exceptions not relevant here) were

18   owned by Mattel, and that he would be loyal to the company by agreeing not to

19   assist or work for any competitor of Mattel while he was employed by Mattel.

20           24.    On January 4, 1999, Bryant also executed Mattel's Conflict of

21   Interest Questionnaire (the "Conflict Questionnaire").  Among other things, Bryant

22   certified in the Conflict Questionnaire that, other than as disclosed, he had not

23   worked for any competitor of Mattel in the prior twelve months and had not

24   engaged in any business venture or transaction involving a Mattel competitor that

25   could be construed as a conflict of interest.  Bryant understood what the Conflict

26   Questionnaire required because, among other things, he disclosed on it the

27   freelance work he had performed while in Missouri for Ashton-Drake, which is

28                                        EXHIBIT 2    PAGE 55

209/2035941.2                                    -32-

1  unrelated to the conduct alleged herein.  A true and correct copy of the Conflict

2  Questionnaire executed by Bryant is attached hereto as Exhibit B.

3        25.    Pursuant to the Conflict Questionnaire, Bryant also agreed that

4  he would immediately notify his supervisor of any change in his situation that

5  would cause him to change any of the foregoing certifications.  Despite this

6  obligation, at no time did Bryant disclose to Mattel that he was engaging in any

7  business venture or transaction with MGA or any other Mattel competitor.

8        26.    More specifically, while Bryant was employed by Mattel, Bryant

9  and other Counter-defendants misappropriated and misused Mattel property and

10  Mattel resources for the benefit of Bryant and MGA.  Such acts included, but are

11  not limited to, the following:

12        a.    using his exposure to Mattel development programs to

13  create the concept, design and name of Bratz;

14        b.    using Mattel resources, and while employed by Mattel,

15  Bryant worked by himself and with other Mattel employees and contractors to

16  design and develop Bratz, including without limitation by creating drawings and

17  three-dimensional models of Bratz dolls, and fashion designs for the dolls'

18  associated clothing and accessories; and

19        c.    using Mattel resources, and while employed by Mattel,

20  Bryant took steps to assist MGA to produce Bratz dolls.

21        27.    During the time that he was employed by Mattel and thereafter,

22  Bryant concealed these actions from Mattel, including by failing to notify his

23  supervisor of the conflict of interest he created when he began working on MGA's

24  behalf and when he began receiving payments from MGA.  Bryant additionally

25  enlisted other Mattel employees to perform work on Bratz during the time he was

26  employed by Mattel and, by all indications, in at least some cases led them to

27  believe that they were performing work on a project for Mattel.

EXHIBIT __2__ PAGE 56

28

AMENDED ANSWER AND COUNTERCLAIMS