ᴊ equitable relief in the nature of injunction and to all other available relief, at law and/or in

8.      **Notices:** All notices, statements and/or payments to be given to the parties hereunder shall be addressed to the parties at the addresses set forth on the first page hereof or at such other address as the parties shall designate in writing from time to time. All notices shall be in writing and shall either be served by personal delivery, mail, or facsimile (if confirmed by mail or personal delivery of the hard copy), all charges prepaid. Except as otherwise provided herein, such notices shall be deemed given when personally delivered, all charges prepaid, or on the date five (5) days following the date of mailing, except that notices of change of address shall be effective only after the actual receipt thereof. Copies of all notices to MGA shall be sent to Fischbach, Perlstein & Lieberman LLP, 1875 Century Park East, Suite 850, Los Angeles, California 90067, Attention: David S. Rosenbaum, Esq. Copies of all notices to Bryant shall be sent to Carter Bryant 1319 West 160th Street, Gardena, California 90247:

9.      **Independent Contractor/No Partnership/Third Party Beneficiary:** Bryant's relationship with MGA is that of an independent contractor. Bryant does not have, and will not represent that he has, any power, right or authority to bind MGA, or to assume or create any obligation or responsibility, express or implied, on behalf of MGA in MGA's name. Nothing stated in the Agreement shall be construed as constituting a partnership or as creating the relationships of employer/employee or principal/agent between the parties. In all matters relating to the Agreement, Bryant shall not act as MGA's employee within the meaning or application of any federal or state unemployment insurance laws, or any other laws or regulations which may impute any obligations or liabilities to MGA by reason of an employment relationship. Bryant will be solely responsible for all taxes, including without limitation, employee and employer, and that he carries all of his own insurance. Neither of the parties hereto shall hold itself out contrary to the terms of this provision by advertising or otherwise. This Agreement shall not be construed to be for the benefit of any third party.

10.     **Services Rendered Deemed Special, etc.:** Bryant acknowledges that the services to be rendered by him hereunder are of a special, unique, extraordinary and intellectual character which gives them peculiar value, the loss of which cannot be adequately compensated for in an action at law and that a breach of any term, condition or covenant hereof will cause irreparable harm and injury to MGA and in addition to any other available relief MGA will be entitled to seek injunctive relief.

11.     **General Provisions:**

        (a) .   This Agreement may not be assigned by either Party hereto either voluntarily or by operation of law. Any such assignment shall not relieve such Party of its obligations hereunder.

        (b)     The titles of the paragraphs of this Agreement are for convenience only and shall not in any way affect the interpretation of any paragraph of this Agreement or the Agreement itself. .

        (c)     A waiver by either Party of the terms or conditions of this Agreement in any instance shall not be deemed or construed to be a waiver of such terms or conditions for the future or of any subsequent breach thereof. All remedies, rights, undertakings, obligations and agreements contained herein shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either Party.

        (d)     Neither Party hereto shall be liable to the other for any incidental, consequential, special or punitive damages of any nature or kind, arising out of in connection with a breach by such Party of this Agreement, whether such liability is asserted on the basis of contract, tort (including negligence or strict liability), or otherwise, even if such Party has been warned of the possibility of any such loss or damage.

[C0008652.DOC;1 / 10/04/2000 C1:25 PM]

5

EXHIBIT 3    PAGE 116

(e)     This Agreement shall be construed and interpreted pursuant to the laws of the State of California, applicable to agreements made and to be performed entirely therein, and the parties hereto submit and consent to the jurisdiction of the courts of the State of California, including Federal Courts located therein, should Federal jurisdiction requirements exist, in any action brought to enforce (or otherwise relating to) this contract.

(f)     This Agreement constitutes the entire Agreement between the parties hereto and supersedes all prior agreements, whether written or oral, with respect to the subject matter herein contained. No provision of this Agreement shall be deemed waived, amended or modified by either Party unless such waiver, amendment or modification shall be in writing and signed by a duly authorized officer of the Party against whom the waiver, amendment or modification is to be enforced.

(g)     Nothing contained in this Agreement shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provision of this Agreement and any material statute, law, ordinance, order or regulation contrary to which the parties hereto have no legal right to contract, the latter shall prevail, but in such event any provision of this Agreement so affected shall be curtailed and limited only to the extent necessary to bring it within the legal requirements.

Kindly indicate your agreement with the foregoing by signing in the space provided below.

Very truly yours,

MGA ENTERTAINMENT

By: _____

Its: _____

AGREED TO AND ACCEPTED:

CARTER BRYANT

Social Security Number

**REDACTED**

[00006462.DOC/2] 10/04/2003 03:05 PM]

6

EXHIBIT **3**   PAGE **117**

**Exhibit  4**

CONFIDENTIAL                                          1

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware corporation, )      CASE NO.
                                      )      CV 04-9059 DDP (AJWx)
                    Plaintiff,        )
                                      )
          vs.                         )
                                      )
CARTER BRYANT, an individual, and     )
DOES 1 through 10, inclusive,         )
                                      )
                    Defendants.       )
_____
CARTER BRYANT, on behalf of himself,  )
all present and former employees of   )
Mattel, Inc., and the general public, )
                                      )
                    Cross-Complainant,)
                                      )
          vs.                         )
                                      )
MATTEL, INC., a Delaware corporation, )
                                      )
                    Cross-Defendant.  )


VOLUME I
THE VIDEOTAPED DEPOSITION OF CARTER BRYANT,
produced, sworn, and examined on Thursday, November 4, 2004,
at 9:10 a.m. of that day, pursuant to Notice to Take
Deposition at the University Plaza, Executive Boardroom,
333 South John Q. Hammons Parkway, in the City of Springfield,
County of Greene, State of Missouri, before Sherrie L. Hunt,
Certified Court Reporter, and Notary Public, in a certain
cause now pending in the United States District Court for the
Central District of California, wherein the parties are as
above set forth; taken on behalf of the Plaintiff and
Cross-Defendant.


COURT REPORTERS OF THE MIDWEST, INC.
P.O. Box 4282
Springfield, MO 65808 (417) 889-2079

EXHIBIT 4   PAGE 118

CONFIDENTIAL                                                              2

A P P E A R A N C E S

For Plaintiff and                    MR. JOHN B. QUINN
Cross-Defendant:                     MR. MICHAEL T. ZELLER
                                     MS. TANIA KREBS
                                     Quinn, Emanuel, Urquhart,
                                       Oliver & Hedges
                                     865 South Figueroa Street
                                     10th Floor
                                     Los Angeles, California 90017

For Defendants and                   MR. DOUGLAS A. WICKHAM
Cross-Complainant:                   Littler Mendelson
                                     2049 Century Park East
                                     5th Floor
                                     Los Angeles, California 90067

Also Present:                        Ms. Dale M. Cendali
                                     Mr. Michael Moore

Videotaped by:                       Mr. Donald Gifford
                                     Mr. Donald Gifford, II
                                     1528 East Glenwood
                                     Springfield, Missouri 65804

I N D E X

WITNESS:  CARTER BRYANT                              Page
Direct Examination by Mr. Quinn ..................    4
Notarial Certificate and Costs ...................  262

* * *

E X H I B I T S

DEPOSITION EXHIBIT        DESCRIPTION                 IDENTIFIED

                            (NONE)

Phonetic spelling:  (Ph.)
Exactly as stated:  (Sic)

EXHIBIT 4    PAGE 119

CONFIDENTIAL                                                44

1    you showed it to anyone else on earth?                    10:1

2    A    Yes.  I had shown it to my mother.  I had shown it to my

3         partner, Richard.  My mother informs me that she had shown

4         the drawings to my father, and I showed it to Veronica,

5         Veronica Marlow.                                      10:1

6    Q    What is Richard's last name?

7    A    Irmen, I-R-M-E-N.

8    Q    And where does he reside?

9    A    He resides here in Springfield.

10   Q    Could you give us his address, please.                10:14

11   A    1303 South Farm Road 115.

12   Q    Is that your residence as well?

13   A    Yes.

14   Q    And when was it that you showed this to Mr. Irmen?

15   A    It was when I was returning to California from Missouri.  10:14

16        I believe it was New Year's Eve when I was unpacking my

17        things.

18   Q    New Year's Eve in what year?

19   A    1998.

20   Q    So you were unpacking in California?                   10:14

21   A    Yes.

22   Q    And you showed it to him on December 31st, 1998?

23   A    Yes.  He was living in California at the time.

24   Q    So, as I understand it, in 1998 for some period of time

25        you had come back here to live; is that true?          10:15

EXHIBIT 4   PAGE 120

CONFIDENTIAL                                              45

1    A    Yes.

2    Q    "Here" meaning Springfield, Missouri?

3    A    Yes.  Springfield area, yes.

4    Q    And Mr. Irmen had remained in California during that

5         period?

6    A    Yes.

7    Q    When was it that you showed the Bratz concept to your

8         mother?

9    A    It was sometime in August, late August 1998.

10   Q    And how is it that you remember that particular month?

11   A    That's when I created them.

12   Q    And it's your recollection that you showed them to her at

13        the time that you created them?

14   A    Yes.

15   Q    And were you living with your mother at the time?

16   A    Yes.

17   Q    And does your father reside there as well?

18   A    Yes.

19   Q    And what address was that?

20   A    That was 1-A Sycamore Drive, Kimberling City.

21   Q    Missouri?

22   A    Missouri.

23   Q    Does your mother still reside at that address?

24   A    No.

25   Q    Where does your mother reside now?

EXHIBIT 4     PAGE 121

CONFIDENTIAL                                          46

```
 1   A    They reside at --                                    10:1
 2              MR. WICKHAM:  For the time being I'm going
 3        to instruct the witness not to respond.  At a break I may
 4        revisit that instruction but for the time being I'll
 5        object on privacy grounds and instruct the witness not to   10:1
 6        respond.
 7              MR. QUINN:  As to what his mother's address
 8        is?
 9              MR. WICKHAM:  Yes.
10   Q    (By Mr. Quinn)  What's your mother's name?  Can I know   10:16
11        that?
12   A    Janet Bryant.
13   Q    And your father?
14   A    Tom Bryant.
15              MR. QUINN:  Okay.  Change the tape.  We'll    10:17
16        have to change tape.
17              VIDEOGRAPHER:  We're off the record.  Time's
18        10:17.
19              (Break in proceedings.)
20              VIDEOGRAPHER:  Back on the record.  The     10:28
21        time's 10:28.
22   Q    (By Mr. Quinn)  Mr. Bryant, is it true that as of the time
23        that you first presented the Bratz materials to MGA in
24        late August of 2000, the only people you had shown those
25        materials to were your mother, Mr. Irwin, and Veronica   10:28
```

EXHIBIT 4   PAGE 122

CONFIDENTIAL                                    119

1       just don't recall?                                        12:15
2    A  I don't recall.
3    Q  Do you recall at some point that you did see some
4       preliminary fashion designs she had done for Bratz?
5    A  Yes.                                                      12:15
6    Q  And did you give some feedback on that?
7    A  Yes.
8    Q  Do you know a Jesse Ramirez?
9    A  Jesse Ramirez.  I know the name.
10   Q  Do you know what context you know the name from?        12:16
11   A  I believe Margaret used him as a mold maker, some sort of
12      a model maker.
13   Q  A mold -- can you tell me what a mold maker does as it
14      relates -- I assume it relates to dolls.
15   A  I couldn't tell you specifically what he does because I've  12:16
16      never had any personal contact with him.  I don't know
17      what -- what he does.
18   Q  You've never met him?
19   A  I've never met him.
20   Q  But it's your understanding that he worked with Margaret  12:16
21      relating to some molds or something like that?
22   A  I believe he made some fastcasts for Margaret at some
23      point.
24   Q  What are fastcasts?
25   A  They are hard casts of a sculpture that are made from      12:17

EXHIBIT 4   PAGE 123

CONFIDENTIAL

120

1      resin.

2   Q   And he did these for the Bratz project?

3   A   Yes.

4   Q   Did you ever see any of these casts?

5   A   Yes.                                                         12:17

6   Q   Did you see them before the last day of your employment at

7      Mattel?

8   A   I don't recall.

9   Q   You saw them at some point?  You just don't recall whether

10      it was before your last day?                                12:17

11  A   Right.

12  Q   Do you have any understanding how Mr. Ramirez came to be

13      engaged to work on the Bratz project?

14  A   I think it was through Margaret.

15  Q   He was an independent contractor?                           12:17

16  A   Yes.

17  Q   Was he ever employed by MGA to your knowledge?

18  A   Not to my knowledge, no.

19  Q   Were the molds -- did he end up creating molds that were

20      then used in connection with the Bratz project?            12:18

21              MR. WICKHAM:  Objection, ambiguous, lacks

22      foundation.

23  A   I don't know.  My -- I don't know.  I don't think so.

24  Q   (By Mr. Quinn)  You indicated that Margaret Leahy's

25      preliminary sculp was -- that it had to be redone.         12:18

EXHIBIT 4    PAGE 124

CONFIDENTIAL                                        121

1   A   Yes.                                                    12:18

2   Q   In what way did it have to be redone?

3   A   Pretty much completely.

4   Q   And who is the one who redid it?

5   A   Margaret redid the sculpt.                             12:18

6   Q   And when was it that she redid it?

7   A   It was after Mercedeh Ward had come on board to MGA.  She

8       saw the work that Margaret had done and said this is not

9       going to work, we need to start again, and Mercedeh was

10      really the one who knew how to put together a doll.  She   12:19

11      knew how to form the joints.  She knew how to construct a

12      doll.  None of us really did, so she was the one that said

13      this sculpt is not going to work, we're going need to

14      start from scratch.

15  Q   Did you have any understanding as to what it was about the  12:19

16      sculpt that Margaret had done that wasn't going to work

17      according to Mercedeh?

18  A   Yes.  She basically said, you know, what we have here is a

19      figurine.  The doll had a curved sort of structure in the

20      hips that wouldn't work for a doll.  The body was not      12:19

21      really aesthetically pleasing.  We wanted to make the doll

22      younger looking.

23  Q   Do you recall any -- any other issues that Mercedeh had

24      with the preliminary sculpt Margaret had done?

25  A   Well, as I said before, basically that it was just -- it   12:20

EXHIBIT 4   PAGE 125

CONFIDENTIAL

138

1  Q  Did they send you some samples?                    12:42

2  A  Yes.

3  Q  Did you receive those before the last day of your

4     employment at Mattel?

5  A  I don't recall.                                     12:42

6  Q  One way or the other?

7  A  I don't recall when I got them.

8  Q  But whenever you got them, you then shared them with MGA?

9  A  Yes.

10 Q  Who -- who did you provide them to?                 12:42

11 A  I believe I provided them to Paula Treantafelles.

12 Q  Did you have any communication with Universal other than

13    this phone call where you asked for samples and their

14    sending you samples?

15 A  Not to my recollection, no.                         12:43

16 Q  Did you ever have any written communications with

17    Universal?

18 A  I may have.  I don't recall what they were, but I may

19    have.

20 Q  During the time that you were employed by Mattel did    12:43

21    you -- do you recall receiving any written communications

22    from Universal?

23 A  I may have, but I don't remember.

24 Q  Have you reviewed any written communications between you

25    and Universal in preparation for your deposition?        12:43

EXHIBIT 4    PAGE 126

CONFIDENTIAL                    139

1          MS. CENDALI:  Objection.                    12:43

2     A    I don't recall.

3     Q    (By Mr. Quinn)  Did you review any yesterday?

4          MR. WICKHAM:  Objection.  If you reviewed

5     any documents in connection with preparation for your    12:43

6     deposition for purposes of refreshing your memory -- you

7     know what, you've already asked this question about 14

8     times.  Objection, attorney-client privilege.  Instruct

9     the witness not to respond.  Harassing, burdensome.

10         MR. QUINN:  Okay.  On that note why don't we    12:44

11    break for lunch.

12         VIDEOGRAPHER:  We're off the record.  The

13    time's 12:40 --

14         MR. QUINN:  Wait.  Wait.  One hour enough?

15         MR. WICKHAM:  That's fine.                    12:44

16         MR. QUINN:  Okay.

17         VIDEOGRAPHER:  The time is 12:44.

18         (Break in proceedings.)

19         VIDEOGRAPHER:  Back on the record.  Time is

20    1:47.                                             01:47

21    Q    (By Mr. Quinn)  Good afternoon, Mr. Bryant.

22    A    Good afternoon.

23    Q    You've told us this morning that you first came up with

24    the Bratz concept, as I understand it, in 1998; is that --

25    A    Yes.

EXHIBIT 4    PAGE 127

CONFIDENTIAL                                      140

1    Q    -- correct?                                          01:47

2    A    Yes.

3    Q    We've used the "Bratz" name.  Did you come up with the

4         "Bratz" name as well?

5    A    Yes.                                                 01:47

6    Q    And when did you come up with the name?

7    A    About the time of the creation of the Bratz.  About the

8         same time.

9    Q    Can you tell me as best you can recall when it was that

10        you created the Bratz?                               01:47

11   A    Yes.  Let's see.  I was driving by a high school.  I

12        believe it was on my way home from work, and there were --

13        the kids were getting out of school and I was just kind of

14        struck by the way they looked.  They were wearing kind of,

15        you know, oversized clothes, big, baggy jeans.  They had   01:48

16        on backpacks and -- I don't know.  There was just

17        something very interesting and exciting about their energy

18        and just got me to kind of thinking, you know, wouldn't it

19        be cool if there were some characters that kind of

20        accurately represented today's teenager.             01:48

21             And so when I got home I started doing a little bit

22        of sketching and sketched some characters fairly quickly.

23        I had also kind of been looking at magazines and things

24        like that.  There were some advertising things that were

25        going on at the same time that kind of all melded together  01:49

EXHIBIT  4   PAGE 128

CONFIDENTIAL                                    141

```
1        and kind of gave me the idea.  There was a Paris Blues ad.    01:49
2        There was -- 17 Magazine had a Steve Madden ad.  There was
3        an ad for the Dixie Chicks' album and it said "Chicks with
4        Attitude" on it, and it all just kind of came together and
5        it all just kind of really struck me when I drove by that    01:49
6        high school.
7    Q   Can you place this in a month in 1998?
8    A   It was in late August.
9    Q   And do you recall the high school?
10   A   I believe it was Kickapoo High.                               01:49
11   Q   Kickapoo?
12   A   Uh-huh.
13   Q   Is that here in Springfield?
14   A   Yes.
15   Q   And there is a street that you were driving on that          01:50
16       actually fronts right on this high school?
17   A   Yes.
18   Q   And do you recall what the name of that street is?
19   A   I think it's Primrose.
20   Q   So school was in session in late August?                     01:50
21   A   Yes, as far as I know.
22   Q   And did these kids seem to be coming out of school?
23   A   Yeah.  They seemed like they were getting out of school,
24       going to their cars, whatever.
25   Q   It wasn't just one or two kids?  There was a whole bunch     01:50
```

EXHIBIT 4    PAGE 129

CONFIDENTIAL

142

1    of kids like the school was empty?                              01:50

2  A  There were, yeah, quite a few kids.

3  Q  And this would have been what time of day?

4  A  I don't recall.  Maybe around -- I don't know -- two

5     o'clock or so.                                                 01:50

6  Q  And you said that you were coming home from work; is that

7     right?

8  A  You know, I think I was coming home from work, but I'm not

9     sure whether it was going or coming.

10  Q  And where were you working at that time?                      01:51

11  A  I was working at Old Navy at the mall.

12  Q  Which mall would that -- would that be?

13  A  Battlefield Mall.

14  Q  Battlefield?

15  A  Uh-huh.                                                       01:51

16  Q  Is that a yes?

17  A  Yes.  I'm sorry.

18  Q  And do you recall what shift you were working?

19  A  I don't.

20  Q  Did you sometimes work days, sometimes swing different       01:51

21     hours or --

22  A  Yes.  I think sometimes it was days, sometimes it was

23     evenings, but I don't recall.

24  Q  And did you say that that very day you went home and

25     actually did some sketches?                                   01:51

EXHIBIT 4    PAGE 130

CONFIDENTIAL                                            177

1   A   I think she was around nine.

2   Q   Do you recall anything else that you said at this meeting

3       that you haven't already told me about?

4   A   Not at this time I don't.

5   Q   Was there any discussion about the terms on which MGA

6       might pursue this project?

7   A   I believe there was.  Again, I would be kind of

8       paraphrasing, but I believe that Isaac said if we -- if we

9       were to do this project, I would like you to be involved,

10      help develop it with our team.  That's about all I

11      remember.

12  Q   Was there any discussion about financial terms?

13  A   No, not at that time.

14  Q   All right.  And did you make any response to him when he

15      indicated that he would like you to be involved in the

16      development of the project?

17  A   I told him that I would be glad to help, that I thought it

18      would be -- since it was my original idea, it would be

19      good to be involved, but I was of the understanding that I

20      would be working with the team, that I would be taking my

21      direction from MGA.

22  Q   Was there any discussion of any projects that you might

23      work on for MGA other than Bratz?

24             MR. WICKHAM:  This is at the September 1

25      meeting?

02:41

02:42

02:42

02:43

02:43

02:43

EXHIBIT 4 PAGE 131

CONFIDENTIAL

178

```
 1              MR. QUINN:  Yes, sir.                            02:4:
 2      A   No.
 3      Q   (By Mr. Quinn)  At any time prior to the last day of your
 4          employment at Mattel did you have any discussion with MGA
 5          about any projects you might work on with them other than    02:43
 6          Bratz?
 7      A   I did sort of a tryout kind of a project for them.  It was
 8          an angel project.  It was actually not my project.  It was
 9          Veronica's project, and I did some face designs for them,
10          just some drawings, and I don't know if they used any of     02:44
11          them or not, but it was my -- excuse me, my understanding
12          that this was kind of a test to see how well I would do,
13          you know, with working with the team, working with
14          direction.
15      Q   And this work that you did on face designs for the angel     02:44
16          project, that's work that you did before your last day of
17          employment at Mattel?
18      A   Yes.
19      Q   All right.  When you entered into your agreement with MGA,
20          was it your understanding at that point that you were        02:45
21          being engaged to work with them on the Bratz project?
22      A   Yes.
23      Q   There was -- at that point was there any other project
24          which you understood you were being engaged to work on?
25      A   No.                                                          02:45
```

EXHIBIT 4   PAGE 132

CONFIDENTIAL

179

1   Q   The work that you were going to do with MGA as

2       contemplated by you at that time was just Bratz?

3   A   That's right.

4               MR. QUINN:  Okay.  We need to change tape.

5               VIDEOGRAPHER:  Off the record.  The time's

6       2:45.

7               (Break in proceedings.)

8               VIDEOGRAPHER:  Back on the record.  Time is

9       2:53.

10  Q   (By Mr. Quinn)  Mr. Bryant, at any time during your

11      discussions with MGA leading up to the agreement that you

12      entered into with MGA, did you contemplate that you would

13      be working with MGA on anything other than the Bratz

14      project?

15  A   No, not at that time.

16  Q   And basically this was -- as far as you were concerned,

17      these discussions all related to the potential

18      exploitation of the Bratz idea?

19  A   Yes.

20  Q   Did you contemplate that if MGA -- if you were able to

21      reach an agreement with MGA that, you know, this would

22      require all your time?

23              MR. WICKHAM:  Objection --

24              MS. CENDALI:  Objection.

25              MR. WICKHAM:  -- vague -- vague as to time,

02:45

02:45

02:53

02:53

02:54

02:54

EXHIBIT  4    PAGE 133

CONFIDENTIAL

193

1   Q   (By Mr. Quinn)  Sir, you understand I'm not asking you to    03:16

2       make something up and tell me something if you don't

3       recall it?  Do you understand that?

4   A   Yes.  Can you restate the question?

5   Q   Sure.  I'm asking you whether you ever saw any draft of an    03:16

6       agreement between you and MGA other than this draft that

7       MGA provided around September 18th.

8                   MR. WICKHAM:  Asked and answered.  Asked and

9       answered.

10  Q   (By Mr. Quinn)  Remind me.  What was the answer?    03:16

11                  MR. WICKHAM:  He said he didn't recall,

12      Counsel.

13                  MR. QUINN:  No.  That's what you said.

14                  MR. WICKHAM:  No.  That's what he said.  You

15      see, you don't like the answers to his questions at times    03:16

16      and so you re-ask the same question four or five times, as

17      the record will reflect.

18  Q   (By Mr. Quinn)  Go ahead.

19  A   I don't recall.

20  Q   Is it your recollection that the agreement -- or that the    03:16

21      form of agreement that you received from MGA on or about

22      September 18th ended up being the agreement which you

23      signed?

24  A   For the most part, yes.

25  Q   Were there some differences between the form of agreement    03:17

EXHIBIT 4   PAGE 134

CONFIDENTIAL

194

1    that you received from MGA on or about September 18th and          03:17

2    the form of agreement which you signed?

3              MR. WICKHAM:  Lacks foundation, calls for

4    speculation.

5  A  All I remember is that there were some minor changes made.        03:17

6  Q  (By Mr. Quinn)  Do you remember what they were?

7  A  I don't.

8  Q  Do you have a copy of that draft that MGA sent to you on

9    or about September 18th?

10 A  Somewhere, yes.                                                     03:17

11             MR. QUINN:  Has that been provided to us,

12   folks?

13             MR. ZELLER:   (Shakes head.)

14             MR. QUINN:  My troops are telling me no.  Do

15   you know, Counsel?

16             MR. WICKHAM:  I don't know.  I don't believe

17   so.

18             MR. QUINN:  May we have it, please.

19             MR. WICKHAM:  I believe that we have

20   addressed that issue in correspondence and with regard to          03:17

21   objections.  We can take up those issues in the

22   appropriate meet-and-confer session.

23             MR. QUINN:  Well, just help me out here.

24   What would be the basis for not giving us a copy of a

25   draft prepared by MGA and submitted to Mr. Bryant?                 03:18

EXHIBIT 4   PAGE 135

CONFIDENTIAL

195

1      MR. WICKHAM:  Counsel, I'm more than willing       03:18

2  to meet and confer with you at an appropriate time, at an

3  appropriate place, and this is neither.

4      MR. QUINN:  You're not willing to discuss

5  that now?                                               03:18

6      MR. WICKHAM:  Correct.  I am here for Mr.

7  Bryant's deposition.

8      MR. QUINN:  Is it your view that that's

9  privileged, something that MGA drafted and sent to this

10  individual?  Is that your view, sir?                   03:18

11      MR. WICKHAM:  Counsel, can we proceed with

12  the deposition?

13      MR. QUINN:  Yeah, if you'll just tell me.

14  Will you answer my question or no?

15      MR. WICKHAM:  I will take that up with you        03:18

16  at an appropriate time pursuant to a meet-and-confer

17  session.  Happy to do so.

18      MR. QUINN:  I'm going to assume that you're

19  just refusing to answer the question now and we'll

20  proceed.                                               03:18

21  Q   (By Mr. Quinn)  Did you prior to the time of your -- prior

22  to your last day of employment with Mattel, did you

23  receive any money at all from MGA?

24  A   I think I received a payment for the angel face designs.

25  Q   And how much was that?                             03:19

EXHIBIT 4    PAGE 136

196

1    A    I don't recall.                                              03:19

2    Q    Can you give me an approximation, a wild ballpark

3         speculation?

4                    MS. CENDALI:   Objection.

5                    MR. WICKHAM:   Compound.                          03:19

6    Q    (By Mr. Quinn)   Bigger than a breadbox, more --

7                    MR. WICKHAM:   Do you want an

8         approximation --

9                    MR. QUINN:   Yeah.

10                   MR. WICKHAM:   -- or wild ballpark                03:19

11        speculation?

12                   MR. QUINN:   Whichever you'll let him answer.

13        If it works for you, it works for me.

14                   MR. WICKHAM:   If you have -- if you have a

15        memory that is --                                           03:19

16   A    To the --

17                   THE WITNESS:   Okay.  Go ahead.

18                   MR. WICKHAM:   If you have a memory, by all

19        means tell him.

20   A    I think to the best of my recollection it was maybe around  03:19

21        $500 or so.

22   Q    (By Mr. Quinn)   Did you have a bank account somewhere back

23        in September 2000?

24   A    Yes.

25   Q    Where was your bank account?                                03:20

EXHIBIT 4    PAGE 137

CONFIDENTIAL                                    261

DEPONENT'S SIGNATURE PAGE

RE:  Mattel, Inc., vs. Carter Bryant, et al.
     Carter Bryant vs. Mattel, Inc.
     Case No. CV 04-9059 DDP (AJWx)
     Deposition taken on November 4, 2004

     I do hereby certify that the foregoing is a true and
correct transcript of the deposition in the foregoing-styled
and numbered cause, and I now sign the same as true and
correct, with the exception of the corrections which I have
noted on the correction sheet provided.

_____
            CARTER BRYANT

Subscribed and sworn to before me this  2ᵈ  day of
_____, 20 05 .

_____
            Notary Public

My Commission Expires:

Dec. 31, 2008



EXHIBIT 4   PAGE 138

CONFIDENTIAL

197

1   A   It was at the Mattel Federal Credit Union.    03:20

2   Q   Is that the only account that you have?

3   A   To the best of my recollection, yes.

4   Q   You didn't have a checking account with any commercial

5       bank anywhere?    03:20

6   A   Not to my recollection.

7   Q   Would it be true that whatever payment you received from

8       MGA you would have deposited in that account with the

9       Mattel Credit Union?

10  A   Probably.    03:20

11  Q   Do you still have an account with the Mattel Credit Union?

12  A   No.

13  Q   When did you close out that account?

14  A   I believe I closed that account in 2002.

15  Q   At any time during the year 2000 did you open any other    03:20

16      bank account?

17  A   During the year 2000.  I don't remember opening any other

18      account.

19  Q   All right.  So after your -- the last day of your

20      employment at Mattel did you begin to receive these    03:21

21      monthly checks from MGA?

22              MR. WICKHAM:  Would the reporter please read

23      back that question.

24  Q   (By Mr. Quinn)  After your employment with Mattel ended,

25      did you begin to receive monthly checks from MGA?    03:21

EXHIBIT 4   PAGE 139

CONFIDENTIAL

262

NOTARIAL CERTIFICATE

STATE OF MISSOURI    )
                     )  ss.
COUNTY OF GREENE     )

     I, Sherrie L. Hunt, Certified Court Reporter, and Notary Public within and for the State of Missouri, do hereby certify that on November 4, 2004, pursuant to Notice, the above witness, CARTER BRYANT, was by me first duly sworn to testify the truth, the whole truth, and nothing but the truth in the case aforesaid; and that the deposition by him was reduced to writing by me in stenotype, and thereafter transcribed by me, and is fully and accurately set forth in the preceding pages; that presentment by me to the witness for signature was waived; and that the deposition will be thereafter by the witness read, signed, and sworn to on or before the date of trial.

     I do further certify that I am not related to, nor attorney for, nor employed by any of the said parties, nor otherwise interested in the event of said action.

> Sherrie L Hunt
> Notary Public
> Greene County
> State of Missouri
> My Commission Expires May 17, 2005

_____
Sherrie L. Hunt
Certified Court Reporter
C.C.R. Number 1027
Notary Public

My commission expires:  May 17, 2005

Costs:  To Plaintiff and Cross-Defendant $1,399.25
       To Defendants and Cross-Complainant $422.65

COURT REPORTERS OF THE MIDWEST, INC.
P.O. Box 4282
Springfield, MO 65808 (417) 889-2079

EXHIBIT 4 PAGE 140

<u>**Confidential; Subject to Protective Order**</u>

CORRECTIONS TO THE DEPOSITION OF

CARTER BRYANT

VOLUME I

---

RE:   Mattel, Inc., vs. Carter Bryant, et al.
      Carter Bryant vs. Mattel, Inc.
      Case No. CV 04-9059 NM (RNBx)
      Deposition taken on November 4, 2004

<u>Page/Line</u>                    <u>Change Requested</u>

86:5                         Delete: "I may have." Insert: "I don't recall."

124:1 and 3                  Delete: "No." Insert: "Other than my communications with Universal, I don't recall that I did."

131:19                       Delete: "No, I did not." Insert: "Other than my communications with Universal, I don't recall that I did."

132:3                        Delete: "I don't remember telling anybody that, no." Insert: "Other than my communications with Universal, I don't recall telling anybody that."

132:18                       Delete: "To the best of my recollection that's true." Insert: "To the best of my recollection, other than my communications with Universal, that's true."

195:24                       Insert: "I also received expense reimbursements from MGA and an advance against royalties."

252:24                       Delete: "No." Insert: "No. I interpreted your question as asking whether I was employed by MGA at that time and the answer is no."

253:20                       Delete: "I don't remember that, no." Insert: "Other than my communications with Universal, I don't remember that."

253:22                       Delete: "That – as far as I can remember that never happened." Insert: "Other than my communications with Universal, as far as I can remember, that never happened."

EXHIBIT 4    PAGE 141

253:25    Delete: "No." Insert: "Other than my communications with Universal, no that I remember."

EXHIBIT 4   PAGE 142

<u>CONFIDENTIAL</u>                                          264

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA


MATTEL, INC., a Delaware corporation, )   CASE NO.
                                      )   CV 04-9059 DDP (AJWx)
                    Plaintiff,        )
                                      )
          vs.                         )
                                      )
CARTER BRYANT, an individual, and     )
DOES 1 through 10, inclusive,         )
                                      )
                    Defendants.       )
_____)
CARTER BRYANT, on behalf of himself,  )
all present and former employees of   )
Mattel, Inc., and the general public, )
                                      )
                    Cross-Complainant,)
                                      )
          vs.                         )
                                      )
MATTEL, INC., a Delaware corporation, )
                                      )
                    Cross-Defendant.  )


VOLUME II
THE VIDEOTAPED DEPOSITION OF CARTER BRYANT,
produced, sworn, and examined on Friday, November 5, 2004,
at 9:10 a.m. of that day, pursuant to Notice to Take
Deposition at the University Plaza, Executive Boardroom,
333 South John Q. Hammons Parkway, in the City of Springfield,
County of Greene, State of Missouri, before Sherrie L. Hunt,
Certified Court Reporter, and Notary Public, in a certain
cause now pending in the United States District Court for the
Central District of California, wherein the parties are as
above set forth; taken on behalf of the Plaintiff and
Cross-Defendant.


COURT REPORTERS OF THE MIDWEST, INC.
P.O. Box 4282
Springfield, MO 65808 (417) 889-2079

EXHIBIT 4  PAGE 143

CONFIDENTIAL                                          265

## A P P E A R A N C E S

For Plaintiff and
Cross-Defendant:

                                    MR. JOHN B. QUINN
                                    MR. MICHAEL T. ZELLER
                                    MS. TANIA KREBS
                                    Quinn, Emanuel, Urquhart,
                                       Oliver & Hedges
                                    865 South Figueroa Street
                                    10th Floor
                                    Los Angeles, California 90017

For Defendants and
Cross-Complainant:

                                    MR. DOUGLAS A. WICKHAM
                                    MS. DIBA RASTEGAR
                                    Littler Mendelson
                                    2049 Century Park East
                                    5th Floor
                                    Los Angeles, California 90067

Also Present:

                                    Ms. Dale M. Cendali
                                    Mr. Michael Moore

Videotaped by:

                                    Mr. Donald Gifford
                                    Mr. Donald Gifford, II
                                    1528 East Glenwood
                                    Springfield, Missouri 65804

## I N D E X

WITNESS:  CARTER BRYANT                                Page

Direct Examination (Cont.) By Mr. Quinn ..........    267

Notarial Certificate and Costs ...................    495

* * *

Phonetic spelling:   (Ph.)
Exactly as stated:   (Sic)

EXHIBIT 4   PAGE 144

CONFIDENTIAL                                                          318

| | | | |
|---|---|---|---|
| 1 | Q | And why -- why do you think that? | 10:35 |
| 2 | A | Because these were the final designs and the final designs | |
| 3 | | for the fashions weren't finished until December of 2000. | |
| 4 | Q | I see that there's a fax header on the top that says April | |
| 5 | | 10th, 2000, 7:57 a.m. -- | 10:35 |
| 6 | A | Yes. | |
| 7 | Q | -- page 3.  Do you see that? | |
| 8 | A | Yes. | |
| 9 | Q | Do you have any recollection or knowledge or information | |
| 10 | | you can share with us about this being faxed or the | 10:36 |
| 11 | | circumstances or -- | |
| 12 | A | I don't really remember, but if it had anything to do with | |
| 13 | | my fax machine at home, my fax machine was not set | |
| 14 | | correctly. | |
| 15 | Q | So if it was sent from your fax machine, the date on your | 10:36 |
| 16 | | machine wasn't set right? | |
| 17 | A | Right. | |
| 18 | Q | It was off by some -- by some number of months? | |
| 19 | A | Yes. | |
| 20 | Q | Do you know? | 10:36 |
| 21 | A | I don't -- I don't recall. | |
| 22 | Q | The -- | |
| 23 | | MR. QUINN:  Maybe counsel can tell us.  Has | |
| 24 | | some information been redacted from the fax header here? | |
| 25 | | It looks like there's -- it says from blank, fax number | 10:36 |

EXHIBIT  4   PAGE 145

CONFIDENTIAL                                          319

1     blank.  I don't know if that's redacted or --                    10:36

2  A  I don't think I had any of that set on my fax machine.

3  Q  (By Mr. Quinn)  So if you sent a fax from your machine --

4     if you sent or you received -- if you received, it would

5     be blank?  Is that how it worked?                               10:36

6  A  I don't know.  I don't know.

7               (Pause in proceedings.)

8  Q  (By Mr. Quinn)  If this is -- I mean, this -- can you tell

9     whether this is something that you received on your fax

10    machine?                                                        10:37

11 A  I don't know.

12 Q  But when you receive things on your fax, because the -- it

13    wasn't set right --

14 A  Uh-huh.

15 Q  -- you wouldn't get the right date and things?                 10:37

16 A  Right.

17 Q  And are you saying that your fax machine also wouldn't

18    indicate the number and the identity of the sender?

19 A  That's right.

20 Q  So looking at this, does this then appear to be something    10:37

21    that you received on your fax machine?

22 A  I don't recall if I received this or if I sent it.

23               MR. QUINN:  I would assume, Counsel, if

24    something was redacted when it was produced, you would

25    tell us that.                                                   10:38

EXHIBIT 4  PAGE 146

CONFIDENTIAL                                    320

1              MR. WICKHAM:  Yes.  I'll look into it.          10:38

2                   (Pause in proceedings.)

3    Q    (By Mr. Quinn)  Also -- also it says page 3 there?

4    A    Uh-huh.

5    Q    Is that yes?                                          10:38

6    A    Yes.

7    Q    Were there other pages or did your fax machine just

8         designate everything as page 3 or what?

9    A    I don't know.  You're asking me things that happened four

10        years ago.  I can't recall.                          10:38

11   Q    All right.

12   A    I don't know.

13   Q    But do you remember that there was some problem on your

14        fax machine with the capability of designating the number

15        of pages in a fax, also?                             10:38

16   A    I don't recall.

17   Q    Do you know where the rest of the pages of this fax are?

18              MR. WICKHAM:  Objection, foundation, calls

19        for speculation.

20   A    I have no idea.                                       10:38

21   Q    (By Mr. Quinn)  Do you know any reason why people --

22        someone might be faxing to you drawings that you did?

23   A    No.

24                  (Pause in proceedings.)

25   Q    (By Mr. Quinn)  Can you rule out the possibility, sir,   10:39

EXHIBIT 4   PAGE 147

CONFIDENTIAL

321

1     that this is something you either faxed or received in          10:39

2     April of 2000?

3  A  Yes.  Absolutely.

4  Q  And that's because?

5  A  Because these drawings weren't done until December of          10:39

6     2000.

7  Q  I hesitate to ask what 168 is but --

8  A  This is a sketch for a headpiece.

9  Q  Okay.

10                  (Pause in proceedings.)                           10:39

11  Q  (By Mr. Quinn)  So is this also something that was created

12     in November or December?

13  A  Yes.

14  Q  And 169?

15  A  This is just a fashion sketch that was created in that         10:40

16     same time period with some swatches.

17  Q  That you selected?

18  A  Yes.

19  Q  Same questions regarding 170.

20  A  Same thing.  Drawings that were done in the November,          10:40

21     December time period.

22  Q  What is -- it looks like we've got a photocopy of some

23     type of retail hang tag.

24  A  Yes.  That was attached to an earring which had the kind

25     of fabric that I wanted to use for one of the tops.           10:40

EXHIBIT  4  PAGE 148

CONFIDENTIAL                                            353

1    A    I did the drawing for the new body.                          11:40

2    Q    (By Mr. Quinn)  Was that the first depiction of the new

3         body, what you drew?

4    A    Yes.

5    Q    And is that what we're looking at here in 278?               11:40

6    A    Yes.

7    Q    Is that the first one that you did of the new form of the

8         body?

9    A    Yes.

10   Q    And also the final form that you did?                        11:40

11             MR. WICKHAM:  Objection, assumes facts not

12        in evidence.

13   A    Yes.  This was the last drawing that I did of this body.

14   Q    (By Mr. Quinn)  Okay.  279, what is this?

15   A    This is a drawing of one of the shoe designs that was done   11:41

16        in November of 2000.

17   Q    Is that your handwriting?

18   A    Yes.

19   Q    280?

20   A    I believe that this is a drawing from Mercedeh showing how   11:41

21        the joints would work.

22   Q    So you didn't do any of the drawing here?

23   A    No.  I didn't create this.

24   Q    Is that Mercedeh's handwriting there at the bottom?

25             MR. WICKHAM:  Objection, foundation.                    11:41

EXHIBIT 4   PAGE 149

CONFIDENTIAL

354

1   A   I don't know.

2   Q   (By Mr. Quinn)   It's not yours?

3   A   No, it's not.

4               MR. QUINN:  Do we have the rest or can

5       anybody clue us in on what's been cut off here?

6               (Pause in proceedings.)

7   Q   (By Mr. Quinn)  Do we know what the rest of this said?

8   A   I have no idea.

9               MR. QUINN:  Do we -- do we have the original

10      of this present yet or can we get that, Counsel?

11              MR. WICKHAM:  I'll see.

12              MR. QUINN:  Thank you.

13  Q   (By Mr. Quinn)  I take it you don't recall what was -- the

14      full note that was written here?

15  A   No.

16  Q   Do you know why you received a copy of this?

17              MS. CENDALI:  Objection.

18  A   No.

19  Q   (By Mr. Quinn)  Do you know when you received this?

20              MR. WICKHAM:  Objection, foundation.

21  A   I don't remember ever having received this before this --

22      before this case came up.

23  Q   (By Mr. Quinn)  So you don't even know if this came out of

24      your files?

25  A   No.

11:41

11:41

11:42

11:42

11:42

11:42

11:42

EXHIBIT 4   PAGE 150

CONFIDENTIAL

355

1   Q   So far as you know, you may never have even seen this back   11:42
2       in 19 -- or back in 2000, 2001?
3   A   Right.
4   Q   You just have no recollection?
5   A   No.                                                          11:42
6   Q   My statement's correct?
7   A   Yes.
8   Q   Do you have any understanding as to what file this Exhibit
9       280 came out of?
10  A   I have no idea.                                              11:43
11  Q   281, same question.  Have you seen this before this case?
12  A   No.
13          MR. WICKHAM:  It looks like that's a
14      continuation of the previous page.
15          MR. QUINN:  Might well be.  It says page 2              11:43
16      of 3.
17  Q   (By Mr. Quinn)  Do you know where page 1 of 3 is?  Oh.
18      It's behind that.  So let me just ask this about all three
19      pages, 280, 281, and 282.  You don't have any recollection
20      of having received those back in the year 2000 or 2001,     11:44
21      right?
22  A   No, not at all.
23  Q   You never -- so far as you can recall, you never even saw
24      these before this case?
25          MR. WICKHAM:  Objection, mischaracterizes               11:44

EXHIBIT  4   PAGE 151

CONFIDENTIAL                                                    494

DEPONENT'S SIGNATURE PAGE


RE:  Mattel, Inc., vs. Carter Bryant, et al.
     Carter Bryant vs. Mattel, Inc.
     Case No. CV 04-9059 DDP (AJWx)
     Deposition taken on November 5, 2004


        I do hereby certify that the foregoing is a true and

correct transcript of the deposition in the foregoing-styled

and numbered cause, and I now sign the same as true and

correct, with the exception of the corrections which I have

noted on the correction sheet provided.


                            _____
                                    CARTER BRYANT



        Subscribed and sworn to before me this 2nd day of

_____, 2005.
      March


                            _____
                                   Notary Public


My Commission Expires:

Dec. 31, 2008                 


                              EXHIBIT 4    PAGE 152

CONFIDENTIAL                                                      495

## NOTARIAL CERTIFICATE


STATE OF MISSOURI        )
                         )   ss.
COUNTY OF GREENE         )


I, Sherrie L. Hunt, Certified Court Reporter, and Notary Public within and for the State of Missouri, do hereby certify that on November 5, 2004, pursuant to Notice, the above witness, CARTER BRYANT, was by me first duly sworn to testify the truth, the whole truth, and nothing but the truth in the case aforesaid; and that the deposition by him was reduced to writing by me in stenotype, and thereafter transcribed by me, and is fully and accurately set forth in the preceding pages; that presentment by me to the witness for signature was waived; and that the deposition will be thereafter by the witness read, signed, and sworn to on or before the date of trial.

I do further certify that I am not related to, nor attorney for, nor employed by any of the said parties, nor otherwise interested in the event of said action.


```
Sherrie L. Hunt
Notary Public
Greene County
State of Missouri
My Commission Expires May 17, 2005
```

_____
Sherrie L. Hunt
Certified Court Reporter
C.C.R. Number 1027
Notary Public


My commission expires:  May 17, 2005


Costs:   To Plaintiff and Cross-Defendant $1,344.45
         To Defendants and Cross-Complainant $430.85


COURT REPORTERS OF THE MIDWEST, INC.
P.O. Box 4282
Springfield, MO 65808  (417) 889-2079

EXHIBIT 4   PAGE 153

**Confidential; Subject to Protective Order**

CORRECTIONS TO THE DEPOSITION OF

CARTER BRYANT

VOLUME II

RE:   Mattel, Inc., vs. Carter Bryant, et al.
      Carter Bryant vs. Mattel, Inc.
      Case No. CV 04-9059 NM (RNBx)
      Deposition taken on November 5, 2004

| Page/Line | Change Requested |
|---|---|
| 346:6 | Delete: Yes, I believe I did." Insert: "I am not sure." |
| 422:14 | Add: "or August." after "June." |

EXHIBIT __4__  PAGE 154

CONFIDENTIAL                                                    497

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA


MATTEL, INC., a Delaware corporation, )   CASE NO.
                                      )   CV 04-9059 DDP (AJWx)
                    Plaintiff,        )
                                      )
          vs.                         )
                                      )
CARTER BRYANT, an individual, and     )
DOES 1 through 10, inclusive,         )
                                      )
                    Defendants.       )
_____
CARTER BRYANT, on behalf of himself,  )
all present and former employees of   )
Mattel, Inc., and the general public, )
                                      )
                Cross-Complainant,    )
                                      )
          vs.                         )
                                      )
MATTEL, INC., a Delaware corporation, )
                                      )
                Cross-Defendant.      )


VOLUME III
THE VIDEOTAPED DEPOSITION OF CARTER BRYANT,
produced, sworn, and examined on Monday, November 8, 2004,
at 10:27 a.m. of that day, pursuant to Notice to Take
Deposition at the University Plaza, Executive Boardroom,
333 South John Q. Hammons Parkway, in the City of Springfield,
County of Greene, State of Missouri, before Sherrie L. Hunt,
Certified Court Reporter, and Notary Public, in a certain
cause now pending in the United States District Court for the
Central District of California, wherein the parties are as
above set forth; taken on behalf of the Plaintiff and
Cross-Defendant.



COURT REPORTERS OF THE MIDWEST, INC.
P.O. Box 4282
Springfield, MO 65808 (417) 889-2079

EXHIBIT 4   PAGE 155

CONFIDENTIAL                                              498

## A P P E A R A N C E S

For Plaintiff and                          MR. JOHN B. QUINN
Cross-Defendant:                           MR. MICHAEL T. ZELLER
                                           MS. TANIA KREBS
                                           Quinn, Emanuel, Urquhart,
                                              Oliver & Hedges
                                           865 South Figueroa Street
                                           10th Floor
                                           Los Angeles, California 90017

For Defendants and                         MR. DOUGLAS A. WICKHAM
Cross-Complainant:                         Littler Mendelson
                                           2049 Century Park East
                                           5th Floor
                                           Los Angeles, California 90067

Also Present:                          **  Ms. Dale M. Cendali
                                       **  Mr. Michael Moore

Videotaped by:                             Mr. Donald Gifford
                                           Mr. Donald Gifford, II
                                           1528 East Glenwood
                                           Springfield, Missouri 65804

** Not continuously present.

## I N D E X

WITNESS:  CARTER BRYANT                                    Page
Direct Examination (Cont.) By Mr. Quinn ..........        500
Notarial Certificate and Costs ...................        727

* * *

ANSWERS REQUESTED TO BE MARKED:         PAGE      LINE
                                        646        4
                                        646       15

Phonetic spelling:   (Ph.)
Exactly as stated:   (Sic)

EXHIBIT 4   PAGE 156

CONFIDENTIAL                                      615

1               MR. WICKHAM:  -- asked and answered.

2               MS. CENDALI:  We went over this last week at

3      length.

4  A   I only recall that it had one or two pages on it.  I don't

5      recall any enclosures.                                        01:27

6  Q   (By Mr. Quinn)  Just the letter?

7  A   Yes.

8               MR. QUINN:  Okay.  We have to change tape.

9               VIDEOGRAPHER:  We're off the record.  Time's

10     1:27.                                                         01:27

11              (Break in proceedings.)

12              VIDEOGRAPHER:  Back on the record.  Time is

13     2:10.

14              MR. QUINN:  Do we have any more of those

15     originals here with us today?  There were a number that      02:10

16     were missing last Friday.

17              MR. WICKHAM:  You know, Mr. Zeller

18     apparently sent an E-mail to my work E-mail with a request

19     in that regard on Saturday night at 8 p.m.  I did not go

20     into the office over the course of the weekend at all and,   02:11

21     in fact, I didn't even receive that E-mail until last

22     night around 11 or 11:15 p.m. when I already had returned

23     to Missouri.  No phone call was made to my office, no

24     voice mail was left for me, you know, making that request,

25     so I had no ability to -- to even respond to that request,   02:11

EXHIBIT 4   PAGE 157

CONFIDENTIAL

616

1   which was made over the course of the weekend.                     02:11

2        With regard to the originals, they were made

3   available to you all at the -- at the last session.  I do

4   believe -- I can't swear to it but I had the impression

5   that you were completed -- finished your review of those,   02:11

6   and also Ms. Krebs was at our office a week ago today

7   taking a look at some of the -- some of the other dolls,

8   and had there been some strong desire to inspect every

9   single original, she certainly could have raised that

10  issue at that point in time, so bottom line is that I --    02:12

11  you know, if you want to take a look at the same originals

12  that were looked -- that you looked at last week, I can go

13  out to the car and get them but in terms of --

14            MR. QUINN:  No.  It's the -- it's the ones

15  that weren't here last week.                                02:12

16            MR. WICKHAM:  But in terms of any additional

17  documents, we certainly will make them available for

18  inspection at a reasonable time upon reasonable notice.

19  It is my understanding that the deposition notice for Mr.

20  Bryant's deposition was not accompanied by a request for    02:12

21  production of documents and so we brought the originals

22  out as a courtesy last week but there was nothing that had

23  directed or compelled us to do so, but we, nevertheless,

24  moved heaven and earth and at significant expense to get

25  those originals out to you -- to have them brought here.     02:12

EXHIBIT 4    PAGE 158

CONFIDENTIAL                                          617

1          MR. QUINN:  We're talking about the ones

2    that weren't here.  I take it there are no more originals

3    here today in your car or otherwise.  Is that true?

4          MR. WICKHAM:  The originals that were here

5    last Friday --

6          MR. QUINN:  Are still here?

7          MR. WICKHAM:  -- are available for your

8    further inspection if you so choose.

9          MR. QUINN:  All right.  And there are no

10   additional ones that you've brought?

11         MR. WICKHAM:  I have not brought any

12   additional ones and there is nothing in the deposition

13   notice that had compelled that at all or even requested

14   that and the only request that I'm familiar with was Mr.

15   Corey's letter that had been sent to Mr. Jacoby after I

16   had already left for Missouri.

17         MR. QUINN:  Well, we can argue about that if

18   we need to at some other time but we won't be able to

19   complete this deposition until, among other things, we

20   have a chance to examine the witness with respect to all

21   the originals.

22         MR. WICKHAM:  Okay.  But there was nothing

23   in the deposition notice that called for production of

24   documents despite your ability and right to request that

25   under the Code of Civil Procedure, which is what the

02:12

02:13

02:13

02:13

02:13

02:13

EXHIBIT 4   PAGE 159

CONFIDENTIAL

726

DEPONENT'S SIGNATURE PAGE


RE:  Mattel, Inc., vs. Carter Bryant, et al.
     Carter Bryant vs. Mattel, Inc.
     Case No. CV 04-9059 DDP (AJWx)
     Deposition taken on November 8, 2004


        I do hereby certify that the foregoing is a true and
correct transcript of the deposition in the foregoing-styled
and numbered cause, and I now sign the same as true and
correct, with the exception of the corrections which I have
noted on the correction sheet provided.


                                    _____
                                         CARTER BRYANT


        Subscribed and sworn to before me this  2nd  day of
March                    , 20 05 .


                                    _____
                                         Notary Public


My Commission Expires:

Dec. 31, 2008



EXHIBIT  4   PAGE 160

CONFIDENTIAL                                              727

NOTARIAL CERTIFICATE

STATE OF MISSOURI        )
                         )   ss.
COUNTY OF GREENE         )

          I, Sherrie L. Hunt, Certified Court Reporter, and
Notary Public within and for the State of Missouri, do
hereby certify that on November 8, 2004, pursuant to Notice,
the above witness, CARTER BRYANT, was by me first duly sworn
to testify the truth, the whole truth, and nothing but the
truth in the case aforesaid; and that the deposition by him
was reduced to writing by me in stenotype, and thereafter
transcribed by me, and is fully and accurately set forth in
the preceding pages; that presentment by me to the witness for
signature was waived; and that the deposition will be
thereafter by the witness read, signed, and sworn to on or
before the date of trial.

          I do further certify that I am not related to, nor
attorney for, nor employed by any of the said parties, nor
otherwise interested in the event of said action.

```
Sherrie L. Hunt
Notary Public
Greene County
State of Missouri
My Commission Expires May 17, 2005
```

Sherrie L. Hunt
Certified Court Reporter
C.C.R. Number 1027
Notary Public

My commission expires:  May 17, 2005

Costs:  To Plaintiff and Cross-Defendant $1,243.65
        To Defendants and Cross-Complainant $420.00

COURT REPORTERS OF THE MIDWEST, INC.
P.O. Box 4282
Springfield, MO 65808 (417) 889-2079

EXHIBIT 4  PAGE 161

CONFIDENTIAL                                        728

CORRECTIONS TO THE DEPOSITION OF

CARTER BRYANT

VOLUME III

RE:  Mattel, Inc., vs. Carter Bryant, et al.
     Carter Bryant vs. Mattel, Inc.
     Case No. CV 04-9059 DDP (AJWx)
     Deposition taken on November 8, 2004


| Page | Line | Change Requested and Reason |
|------|------|------------------------------|
| ____ | ____ | _____ |
| ____ | ____ | _____ |
| ____ | ____ | _____ |
| ____ | ____ | _____ |
| ____ | ____ | _____ |
| ____ | ____ | _____ |
| ____ | ____ | _____ |
| ____ | ____ | _____ |
| ____ | ____ | _____ |
| ____ | ____ | _____ |
| ____ | ____ | _____ |
| ____ | ____ | _____ |
| ____ | ____ | _____ |

_____              _____
   (Date)                             CARTER BRYANT

EXHIBIT 4    PAGE 162

**Exhibit 5**



ATTORNEY'S EYES ONLY

BRYANT 00188

EXHIBIT 5 PAGE 163



20C

ATTORNEY'S EYES
ONLY

BRYANT 00193

EXHIBIT  5  PAGE 164



JADE

fave color: pink
fave insect: dragonfly
fave food:

clear bag

ATTORNEY'S EYES ONLY

BRYANT 00189

EXHIBIT 5   PAGE 165



white
T

pink & grey

eye on you

Khaki

ATTORNEY'S EYES
ONLY

BRYANT 00190
EXHIBIT __5__   PAGE 166



ATTORNEY'S EYES ONLY

BRYANT 00191

EXHIBIT 5 PAGE 167



ATTORNEY'S EYES
ONLY

BRYANT 00196

EXHIBIT 5    PAGE 168



ATTORNEY'S EYES ONLY

BRYANT 00198
EXHIBIT 5 PAGE 169



Hollidae

ATTORNEY'S EYES ONLY

BRYANT 00199

EXHIBIT 5 PAGE 170



ATTORNEY'S EYES
ONLY

BRYANT 00200

EXHIBIT __5__ PAGE __171__

**Exhibit  6**

FROM :                              FAX NO. :                    Apr. 10 2000 07:57AM  P3

NO

TWEEDY/FELT
W/GRANNY
SQUARES,
BROWN W/
BEIGE
BLANKET
STITCH

YASMIN

Surefeet

JADE

SILVER NYLON
W/RED TYPE

Oyster white
nylon heavy duty

animal
print

b lack topstitch

aqua
pearlized
vinyl
piping

FIONA

WHITE PEARLIZED VINYL
W/ANIMAL PRINT FLAP
& ELASTICIZED CLSP,
BLACK PIPING &
RIBBON

orange/wire
navy

Stripe on side

1/4  1/2  1/8

KADEISHA

LIGHT BLUE NYLON  w/stripe & strap like

~~WHITE / ORANGE/BLACK~~
~~BLUE          FLAP~~ ??

strap
(1/4"
only)

FINAL DESIGNS



YASMIN



BROWN "SUEDE-Y" LOOKING FABRIC
W/BEIGE WHIPSTITCHING,
BLUE, PURPLE CROCHET BODY

ATTORNEY'S EYES
ONLY

BRYANT 00167

EXHIBIT __6__  PAGE _172_

**Exhibit 7**

Jun-21-98 11:55A Tom ;    Janet Bryant



Summer

**BRYANT 1220**
**ATTORNEYS EYES ONLY**
EXHIBIT __7__ PAGE __173__

**Exhibit  8**

CERTIFIED COPY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MATTEL, INC., A DELAWARE CORPORATION, | ) ) ) | |
| PLAINTIFF, | ) ) | |
| V. | ) ) | NO. CV 04-9059 DDP (AJWX) |
| CARTER BRYANT, AN INDIVIDUAL, AND DOES 1 THROUGH 10, INCLUSIVE, | ) ) ) ) | |
| DEFENDANTS. | ) ) | |

# C O N F I D E N T I A L

## ATTORNEYS' EYES ONLY

### (PAGES 1 - 83, 125 - 159, 166 - 168, 173 - 180, 203 - 216)

# DEPOSITION OF VICTORIA O'CONNOR

# DECEMBER 6, 2004

**REPORTED BY:**
PAULA A. PYBURN
CSR. NO. 7304
JOB NO. 04AE373-PP



COURT REPORTERS
700 S. Flower Street
Suite 1100
Los Angeles, California 90017
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT __8__ PAGE 174

```
 1    APPEARANCES OF COUNSEL:
 2
 3    FOR THE PLAINTIFF AND CROSS-DEFENDANT:
 4        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
          BY:   JOHN B. QUINN, ESQ.
 5                        AND
              MICHAEL T. ZELLER, ESQ.
 6                        AND
              TANIA KREBS, ESQ.
 7        865 SOUTH FIGUEROA STREET, 10TH FLOOR
          LOS ANGELES, CALIFORNIA 90017-2543
 8        (213) 443-3000
 9
10    FOR THE DEFENDANTS AND CROSS-COMPLAINANT:
11        LITTLER MENDELSON
          BY:   KEITH A. JACOBY, ESQ.
12        2049 CENTURY PARK EAST, 5TH FLOOR
          LOS ANGELES, CALIFORNIA 90067-3107
13        (310) 553-0308
14
15    FOR DEFENDANT IN INTERVENTION, MGA ENTERTAINMENT:
16        O'MELVENY & MEYERS LLP
          BY:   DIANA M. TORRES, ESQ.
17        400 SOUTH HOPE STREET
          LOS ANGELES, CALIFORNIA 90071-2899
18        (213) 430-6000
19
20    ALSO PRESENT:
21        RICHARD DANIELS, MGA SENIOR COUNSEL
          MICHAEL MOORE, MATTEL SENIOR COUNSEL
22        SHERRI MULFORD, VIDEOGRAPHER
          JILL E. THOMAS, MATTEL ASSISTANT GENERAL COUNSEL
23
24
25
```

EXHIBIT 8   PAGE 175

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

```
 1                        I N D E X
 2    DEPONENT:          EXAMINED BY:              PAGE:
 3    VICTORIA O'CONNOR   MR. QUINN                  7
 4                        MR. JACOBY                203
 5
 6
 7
      EXHIBITS FOR IDENTIFICATION:
 8
                          (NONE)
 9
10
11
      QUESTIONS UNANSWERED BY DEPONENT:
12
                          (NONE)
13
14
15
16
17
18
19
20
21
22
23
24
25                          EXHIBIT 8    PAGE 176
```

| | |
|---|---|
| 1 | TO INTIMIDATE YOU OR TO MAKE LIFE DIFFICULT FOR YOU |
| 2 | OR TO SLOW DOWN THEIR PROCESS; THAT'S PART OF THEIR |
| 3 | JOB, TO TRY TO MAKE SURE THEY PUT IN THE RECORD ANY |
| 4 | POTENTIAL PROBLEMS OR ISSUES THAT THEY MAY HAVE WITH |
| 5 | THE QUESTION SO THAT THAT CAN LATER BE RULED ON.      09:52AM |
| 6 |      OKAY? |
| 7 | A.   OKAY. |
| 8 | Q.   ALL RIGHT.  WITH THAT -- |
| 9 |      MS. TORRES:  JOHN, BEFORE YOU ACTUALLY ASK |
| 10 | YOUR FIRST QUESTION, I JUST WANT TO CLARIFY THAT MGA      09:52AM |
| 11 | DOES HAVE THE RIGHT TO OBJECT AND INSTRUCT THE |
| 12 | WITNESS NOT TO ANSWER ON THE GROUNDS OF PRIVILEGE TO |
| 13 | THE EXTENT THAT THE WITNESS HAS PRIVILEGED |
| 14 | INFORMATION THAT IS OWN- -- IS CONTROLLED BY MGA. |
| 15 |      MR. QUINN:  I DON'T THINK I AGREE WITH      09:52AM |
| 16 | THAT, BUT IF THAT ISSUE COMES UP WE CAN DEAL WITH IT |
| 17 | THEN. |
| 18 |      MS. TORRES:  THAT'S FINE. |
| 19 |      MR. QUINN:  WE DON'T -- WE DON'T AGREE THAT |
| 20 | YOU HAVE ANY ABILITY TO INSTRUCT THIS WITNESS NOT TO      09:52AM |
| 21 | ANSWER. |
| 22 |      THE WITNESS:  I HAVE A QUESTION. |
| 23 |      MR. QUINN:  SURE. |
| 24 |      THE WITNESS:  SO IT WAS MY UNDERSTANDING |
| 25 | THAT THE CONFIDENTIALITY AGREEMENT THAT I SIGNED      09:52AM |

11

EXHIBIT 8   PAGE 177

```
 1    WHEN I WAS EMPLOYED DURING MGA, IS THAT -- THE ONLY
 2    THING I WAS -- I WAS UNDERSTOOD, THAT THIS -- THAT'S
 3    NOW NULL AND VOID BECAUSE OF THE SUBPOENA; THAT THE
 4    ONLY THING THAT WOULD BE PRIVILEGED WOULD BE ANY
 5    CONVERSATIONS I HAD WITH COUNSEL DURING MY TENURE AT      09:53AM
 6    MGA.
 7            MR. QUINN:  I'M SURE COUNSEL WILL AGREE
 8    WITH ME THAT INFORMATION THAT IS CONFIDENTIAL --
 9    SETTING ASIDE ATTORNEY-CLIENT PRIVILEGED
10    INFORMATION, ATTORNEY -- INFORMATION THAT IS            09:53AM
11    OTHERWISE CONFIDENTIAL IS SUBJECT TO DISCOVERY AND
12    YOU HAVE TO ANSWER.
13            WE HAVE IN PLACE IN THIS CASE AN
14    AGREED-UPON -- WHAT'S CALLED A STIPULATED PROTECTIVE
15    ORDER, WHICH PROVIDES THAT IF THERE IS CONFIDENTIAL     09:53AM
16    INFORMATION, IT CAN BE TREATED IN A CERTAIN WAY, SO
17    IT CAN ONLY BE USED FOR THE PURPOSE OF THIS CASE AND
18    CAN'T BE DISCLOSED TO OTHER PEOPLE, AND IF WE GET TO
19    SOMETHING LIKE THAT, COUNSEL MIGHT WELL SAY, I WANT
20    THIS QUESTION AND ANSWER TO BE PART OF THE             09:53AM
21    CONFIDENTIALITY PROVISIONS OF THE PROTECTIVE ORDER,
22    AND THEN THE PROTECTIVE ORDER PROVIDES THAT, YOU
23    KNOW, THERE'S LIMITATIONS ON USE.  BUT IN ESSENCE,
24    WHAT YOU SAID IS RIGHT.
25            THE WITNESS:  OKAY.                            09:54AM
```

12

EXHIBIT 8   PAGE 178

```
 1    BY MR. QUINN:

 2        Q.   LET ME BEGIN THEN WITH YOUR -- YOUR

 3    PREVIOUS ASSOCIATION WITH MGA.  AS I UNDERSTAND IT,

 4    YOU WERE EMPLOYED BY MGA DURING SOME TIME PERIOD?

 5        A.   YES.                                        09:54AM

 6        Q.   COULD YOU TELL US WHAT TIME PERIOD THAT

 7    WAS?

 8        A.   APRIL 5TH, 1999, THROUGH FEBRUARY 15TH,

 9    2003.

10        Q.   SO IS THAT -- IF I HEARD YOU CORRECTLY,     09:54AM

11    THAT'S A LITTLE BIT SHORT OF FOUR YEARS; IS THAT

12    RIGHT?

13        A.   CORRECT.

14        Q.   DURING THAT TIME PERIOD DID -- AT MGA WAS

15    THERE AN IN-HOUSE LAWYER ON STAFF AT MGA?           09:54AM

16        A.   DURING WHICH TIME?

17        Q.   DURING THE -- THE PERIOD THAT YOU WERE

18    EMPLOYED THERE.

19        A.   THE ENTIRE TIME?

20        Q.   YES.                                        09:54AM

21        A.   NO.

22        Q.   AT ANY POINT --

23        A.   YES.

24        Q.   -- DURING THE TIME YOU WERE EMPLOYED?

25             CAN YOU TELL ME WHAT -- ROUGHLY WHEN IT WAS 09:55AM
```

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT __8__ PAGE __179__

1    THAT THERE WAS AN IN-HOUSE LAWYER AT MGA?

2         A.    I DON'T RECALL WHICH YEAR.

3         Q.    CAN YOU TELL US ROUGHLY, APPROXIMATELY?

4         A.    MAYBE THE END OF 2001 OR 2002.

5         Q.    THE END OF ONE OF THOSE TWO YEARS --           09:55AM

6         A.    YES.

7         Q.    -- OR --

8         A.    END OF 2001 OR BEGINNING OF 2002.

9         Q.    SO BEFORE WHENEVER THAT WAS, EITHER END OF

10   2001 OR BEGINNING OF 2002, IS IT TRUE THAT THERE WAS     09:55AM

11   NOT AN IN-HOUSE LAWYER ON STAFF AT MGA?

12        A.    YES.

13        Q.    AND AFTER THAT PERIOD THERE WAS AN IN-HOUSE

14   LAWYER ON STAFF?

15        A.    YES.                                          09:55AM

16        Q.    WHAT WAS THAT INDIVIDUAL'S NAME?

17        A.    I DON'T REMEMBER HER NAME.

18        Q.    WELL, WAS IT A HER?

19        A.    IT WAS A HER.

20        Q.    AND WHATEVER HER NAME WAS, DID SHE -- DID     09:56AM

21   SHE HAVE A -- WAS SHE LIKE GENERAL COUNSEL, IS THAT

22   HOW SHE WAS REFERRED --

23        A.    YES.

24        Q.    -- TO?

25              AND DID SHE REMAIN IN THAT POSITION OF        09:56AM

14

1   NAME OF CARTER BRYANT?

2        A.   YES.

3        Q.   AND DID YOU HAVE ANY DEALINGS WITH A

4   PRODUCT KNOWN AS BRATZ?

5        A.   YES.                                            09:59AM

6        Q.   WERE YOU EVER ASKED TO DO ANYTHING RELATING

7   TO CARTER BRYANT OR HIS RELATIONSHIP WITH MGA THAT

8   MADE YOU KIND OF UNCOMFORTABLE?

9             MR. JACOBY:   OBJECTION.   VAGUE.

10            MS. TORRES:   OBJECTION.   VAGUE, AND I'M       09:59AM

11   GOING TO DESIGNATE FROM HERE ON IN AS SUBJECT TO THE

12   CONFIDENTIALITY AND PROTECTIVE ORDER.

13            MR. QUINN:   THAT'S FINE, THAT'S THE PRO- --

14   PROTECTIVE ORDER I WAS TELLING YOU ABOUT.

15            THE WITNESS:   OKAY.                            09:59AM

16   BY MR. QUINN:

17        Q.   SO THIS CAN'T BE SHARED EXCEPT WITH A

18   CERTAIN LIMITED CLASS OF PEOPLE INVOLVED IN THIS

19   CASE, AND IF IT GETS FILED WITH THE COURT -- I THINK

20   IT HAS TO BE FILED UNDER SEAL; IS THAT RIGHT?          09:59AM

21            MR. ZELLER:   THAT'S CORRECT.

22   BY MR. QUINN:

23        Q.   SO IT'S BASICALLY FOR -- WHAT YOU'RE GOING

24   TO SAY NOW IS JUST --

25        A.   BUT IT STILL CAN BE ANSWERED?                09:59AM

EXHIBIT _8__ PAGE _181_

17

```
 1      Q.    YES.  YOU STILL --

 2      A.    OKAY.

 3      Q.    -- HAVE TO ANSWER THE QUESTION.

 4      A.    CAN YOU BE MORE SPECIFIC?

 5      Q.    NO, NOT REALLY.  WAS THERE EVER ANYTHING          09:59AM

 6   THAT YOU WERE ASKED TO DO THAT YOU -- MADE YOU FEEL

 7   KIND OF UNCOMFORTABLE?

 8      A.    YES.

 9            MS. TORRES:  OBJECTION.  VAGUE.

10            MR. JACOBY:  SAME OBJECTION.                      09:59AM

11   BY MR. QUINN:

12      Q.    AND WHAT WAS THAT?

13      A.    WHEN THE ORIGINAL CONTRACT WAS EXECUTED BY

14   CARTER BRYANT, IT WAS SENT TO ME VIA FAX, AND ON THE

15   TOP OF THE FAX LISTED THE PHONE NUMBER FROM WHERE IT      10:00AM

16   WAS FAXED, WHICH SAID "BARBIE COLLECTIBLES," AND AT

17   ONE POINT MY BOSS, ISAAC LARIAN, ASKED ME TO WHITE

18   THAT OUT AND SEND IT TO A LAWYER, PATTY GLASER.

19            MS. TORRES:  NOW I'M GOING TO INSTRUCT THE

20   WITNESS NOT TO ANSWER WITH RESPECT TO ANY                 10:00AM

21   COMMUNICATIONS SHE MAY HAVE HAD WITH COUNSEL FOR

22   MGA.

23            MR. QUINN:  WELL, WE'LL GET TO THAT AS TO

24   WHETHER YOU CAN ACTUALLY MAKE THAT INSTRUCTION, BUT,

25   I MEAN, AT THIS POINT --                                  10:00AM
```

EXHIBIT 3   PAGE 182

1      Q.   DID YOU DO WHAT HE ASKED, DID YOU -- DID

2   YOU WHITE OUT THE LINE THAT SAID "BARBIE

3   COLLECTIBLES"?

4      A.   YES.

5      Q.   DID YOU HAVE ANY DISCUSSION WITH MR. LARIAN      10:01AM

6   AS TO WHY HE WANTED YOU TO WHITE THAT LINE OUT?

7      A.   I DON'T RECALL.

8      Q.   ARE YOU SAYING THAT YOU DON'T RECALL THE

9   SUBSTANCE OF THE DISCUSSION, OR THAT YOU DON'T

10  RECALL WHETHER YOU DISCUSSED THAT SUBJECT AT ALL?      10:01AM

11     A.   I -- I DON'T RECALL THE SUBSTANCE.

12     Q.   SO YOU DO KNOW YOU DISCUSSED THAT

13  INSTRUCTION WITH MR. LARIAN; YOU JUST DON'T RECALL

14  THE SUBSTANCE; IS THAT TRUE?

15     A.   YES.                                            10:01AM

16     Q.   DID YOU DISCUSS THAT WITH MR. LARIAN ONCE

17  OR MORE THAN ONCE, THAT INSTRUCTION TO WHITE OUT THE

18  "BARBIE COLLECTIBLES" HEADING ON THE DOCUMENT?

19     A.   I DON'T RECALL.

20     Q.   DID YOU EVER DISCUSS THAT SUBJECT WITH         10:01AM

21  ANYBODY ELSE AT MGA?

22          MS. TORRES:  I'M GOING TO INSTRUCT THE

23  WITNESS NOT TO ANSWER TO THE EXTENT IT INVOLVES

24  CONVERSATIONS WITH COUNSEL.

25          THE WITNESS:  I DON'T RECALL.                  10:01AM

EXHIBIT 8    PAGE 183

19

```
 1    BY MR. QUINN:

 2       Q.   DID YOU EVER DISCUSS THAT SUBJECT -- I'M

 3    JUST ASKING -- ASKING ABOUT THE SUBJECT NOW, NOT ANY

 4    OF THE CONTENT -- WITH ANY ATTORNEY FOR MGA?

 5            MS. TORRES:  THAT SAME -- SAME INSTRUCTION.    10:02AM

 6            THE WITNESS:  I ACTUALLY DON'T RECALL.

 7    BY MR. QUINN:

 8       Q.   WHY -- WHY WAS IT A CONCERN TO YOU THAT

 9    THIS CONTRACT SIGNED BY CARTER BRYANT AND WHEN IT

10    CAME OVER THE FAX IT HAD THE HEADING AT THE TOP OF     10:02AM

11    "BARBIE COLLECTIBLES," WHY WAS THAT OF CONCERN TO

12    YOU?

13       A.   BECAUSE --

14            MS. TORRES:  OBJECTION.  MISSTATES THE

15    WITNESS'S TESTIMONY.                                   10:02AM

16    BY MR. QUINN:

17       Q.   GO AHEAD.

18       A.   I WAS CONCERNED BECAUSE HE WAS STILL

19    EMPLOYED AT MATTEL AT THE TIME THE CONTRACT WAS

20    EXECUTED.                                              10:02AM

21       Q.   DID YOU EXPRESS THAT CONCERN TO ANYBODY AT

22    MGA?

23       A.   I'M SURE I DID, BUT I DON'T RECALL SPECIFIC

24    CONVERSATIONS.

25       Q.   OKAY.  EVEN THOUGH YOU DON'T RECALL           10:02AM
```

EXHIBIT 8  PAGE 184

20

```
1    SPECIFIC CONVERSATIONS, CAN YOU IDENTIFY FOR ME A

2    CLASS OF PEOPLE WHO YOU BELIEVE YOU DISCUSSED THAT

3    WITH?

4         A.   WHAT DO YOU MEAN BY "CLASS"?

5         Q.   WELL, A GROUP, THE PEOPLE WHO YOU -- YOU      10:03AM

6    BELIEVE YOU DISCUSSED IT WITH, EVEN IF YOU CAN'T

7    RECALL THE SPECIFICS OF THE DISCUSSION.

8              MR. JACOBY:  OBJECTION.  ASSUMES FACTS NOT

9    IN EVIDENCE.

10             THE WITNESS:  IT WAS PROBABLY ONE OR TWO      10:03AM

11   INDIVIDUALS; I DON'T REMEMBER IT BEING MORE THAN

12   THAT.

13   BY MR. QUINN:

14        Q.   ALL RIGHT.  AND WHO -- WHO ARE THE ONE OR

15   TWO INDIVIDUALS THAT YOU'RE THINKING OF THAT YOU      10:03AM

16   PROBABLY DISCUSSED IT WITH?

17        A.   ISAAC LARIAN AND PAULA TREANTAFELLES,

18   SPELLED T-R-E-A-N-T-A-F-E-L-L-E-S.

19        Q.   AND THAT'S THE BEST OF YOUR RECOLLECTION?

20        A.   YES.                                         10:03AM

21        Q.   DO YOU BELIEVE THAT YOU DISCUSSED THE FACT

22   THAT MR. BRYANT WAS STILL EMPLOYED BY MATTEL WITH

23   MR. LARIAN ONCE OR MORE THAN ONCE?

24        A.   I'M SORRY, REPEAT THE QUESTION.

25        Q.   DO YOU BELIEVE THAT YOU DISCUSSED THE FACT   10:04AM
```

EXHIBIT 8   PAGE 185

21

```
 1   STATE OF CALIFORNIA      )
                              )   SS.
 2   COUNTY OF LOS ANGELES    )

 3       I, PAULA A. PYBURN, CERTIFIED SHORTHAND

 4   REPORTER, CERTIFICATE NUMBER 7304, RPR, FOR THE

 5   STATE OF CALIFORNIA, HEREBY CERTIFY:

 6           THE FOREGOING PROCEEDINGS WERE TAKEN BEFORE

 7   ME AT THE TIME AND PLACE THEREIN SET FORTH, AT WHICH

 8   TIME THE DEPONENT WAS PLACED UNDER OATH BY ME;

 9           THE TESTIMONY OF THE DEPONENT AND ALL

10   OBJECTIONS MADE AT THE TIME OF THE EXAMINATION WERE

11   RECORDED STENOGRAPHICALLY BY ME AND WERE THEREAFTER

12   TRANSCRIBED;

13           THE FOREGOING TRANSCRIPT IS A TRUE AND

14   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN;

15           I FURTHER CERTIFY THAT I AM NEITHER COUNSEL

16   FOR NOR RELATED TO ANY PARTY TO SAID ACTION NOR IN

17   ANY WAY INTERESTED IN THE OUTCOME THEREOF.

18           IN WITNESS WHEREOF, I HAVE HEREUNTO

19   SUBSCRIBED MY NAME THIS ____ DAY OF_____,

20   2006.

21

22

23

24

25                          EXHIBIT  8   PAGE 186
```

**Exhibit  9**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

October 27, 2004

**VIA FACSIMILE AND U.S. MAIL**

Keith A. Jacoby, Esq.
Littler Mendelson, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California  90067-3107

Re:    *Mattel, Inc. v. Carter Bryant*

Dear Mr. Jacoby:

This will confirm some aspects of the discussion that we had on October 25, 2004 regarding Carter Bryant's October 14, 2004 Objections and Responses to Mattel, Inc.'s First Set of Requests for Production of Documents and Tangible Things.

First, and most significantly, during our discussion, you indicated that you had in your possession non-privileged documents that were responsive to Mattel's requests that had not yet been produced, including telephone records.  You stated that these documents would be produced no later than Monday, November 1, 2004.  We request that those records be provided to us by Friday, October 29, 2004 to allow Mattel sufficient time to review those documents to prepare for Mr. Bryant's November 4 deposition.

Second, you agreed to allow counsel for Mattel to inspect the documents that Mr. Bryant created during the hiatus between his two periods of employment with Mattel.  You further suggested that you would, at the same time, provide for inspection the tangible items responsive to Mattel's requests.  So that Mattel can inspect the materials sufficiently in advance of Mr. Bryant's deposition, Mattel requests that this inspection occur on October 29, 2004.

The other issues that we discussed last Monday will be addressed under separate cover.  I look forward to your prompt response.  If you have any questions regarding the foregoing, please do not hesitate to call.

Very truly yours,

Kirkland W. Garey

07209/615460.1

EXHIBIT ___9___ PAGE _187_

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94104 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**LOS ANGELES**
865 So. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**PALM SPRINGS**
45-025 Manitou Drive, Suite 8
Indian Wells, CA 92210
(760) 345-4757
Facsimile: (760) 345-2414

**NEW YORK**
335 Madison Avenue, 17th Floor
New York, NY 10017-4611
(212) 702-8100
Facsimile: (212) 702-8200

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

# FACSIMILE TRANSMISSION

**DATE:**   October 27, 2004

**NUMBER OF PAGES, INCLUDING COVER:  2**

**TO/COMPANY:**

| NAME | PHONE NO. | FAX NO. |
|------|-----------|---------|
| Keith A. Jacoby, Esq. *Littler Mendelson, P.C.* | 310.553.0308 | 310.553.5583 |

**FROM:**   Kirkland W. Garey, Esq.

**RE:**   *Mattel, Inc. v. Carter Bryant*

**MESSAGE:**

Please see attached letter. Thank you.



EXHIBIT 9    PAGE 188

| CLIENT #:  **7209** | ROUTE/ RETURN TO:  **Aida Kaliniyan – 5th Floor** | ☒ CONFIRM FAX ☒ INCLUDE CONF. REPORT |
|---|---|---|
| OPERATOR: | CONFIRMED?  ☐ No  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3863 AS SOON AS POSSIBLE.**

```
HP·LaserJet 3100                                          SEND CONFIRMATION REPORT for
Printer/Fax/Copier/Scanner                               Quinn Emanuel
                                                         12134433081
                                                         Oct-27-04   1:34PM
```

| Job | Start Time | Usage | Phone Number or ID | Type | Pages | Mode | Status |
|-----|-----------|-------|-------------------|------|-------|------|--------|
| 324 | 1O/27  1:34PM | 0'45" | 3105535583 | Send............. | 2/ 2 | EC144 | Completed................................... |

Total    0'45"    Pages Sent: 2    Pages Printed: 0



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

LOS ANGELES OFFICE

**FACSIMILE TRANSMISSION**

DATE:   October 27, 2004

NUMBER OF PAGES, INCLUDING COVER: 2

TO/COMPANY:

| NAME | PHONE NO. | FAX NO. |
|------|-----------|---------|
| Keith A. Jacoby, Esq. Littler Mendelson, P.C. | 310.553.0308 | 310.553.5583 |

FROM:   Kirkland W. Garey, Esq.

RE:   *Mattel, Inc. v. Carter Bryant*

MESSAGE:

Please see attached letter. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3963 AS SOON AS POSSIBLE.

EXHIBIT 9  PAGE 189

**Exhibit  10**

## LITTLER MENDELSON®
A PROFESSIONAL CORPORATION

Keith A. Jacoby
Direct: 310.772.7284
Direct Fax: 310.553.5583
kjacoby@littler.com

October 28, 2004

### VIA FACSIMILE AND U.S. MAIL

Kirkland Garey, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:     **Mattel, Inc. v. Carter Bryant**

Dear Mr. Garey:

This is in response to your letter of October 27 regarding Mr. Bryant's supplemental production. The supplemental production will not be ready before November 1, 2004, because certain redacted documents are currently being reviewed by Mr. Bryant. I am happy to make it available to you at that time, and to allow you to inspect the prototypes we have in our possession that have been called for by your request. You can come to my office for this inspection at 3:00 p.m. on Monday.

Sincerely,

Keith A. Jacoby

cc:    Robert. F. Millman, Esq.
       Douglas A. Wickham, Esq.
Los_Angeles:381086.1 028307.1010

EXHIBIT 10   PAGE 190