Received: 10/28/04 12:     -> quinn,emanuel;  Page 1
OCT-28-2004 12:18 FROM:LITTLER MENDELSON   310 553 5583     TO:12136240643     P.1/2

# LITTLER MENDELSON®

A PROFESSIONAL CORPORATION

## FACSIMILE COVER SHEET

### October 28, 2004

☐ Call addressee or addressee's authorized personal representative before transmitting

☒ Attorney/client privileged

To:   Kirkland Garey, Esq.          Fax:   (213) 443-3100   Phone:   (213) 624-0643
      Quinn Emanuel Urquhart Oliver &
      Hedges, LLP

Fax #(s) verified before sending (initial):

From:   Keith A. Jacoby          Fax:   310.553.5583   Phone:   310.772.7284

Length, including this cover letter:   2      Pages

If you do not receive all pages, please call Sender's Phone Number.

This is the only copy sent to you unless one of the following is checked.

☒ Original sent by regular mail.   ☐ Original sent by overnight service.

☐ Original will be hand-delivered.

Message:

EXHIBIT 10   PAGE 191

CONFIDENTIALITY – The information contained in this fax message is intended only for the personal and confidential use of the designated recipient(s) named above. This message is a communication from attorneys or their agents relating to pending legal matters and, as such, is intended to be privileged and/or confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us by mail. Thank you.

Transmittal Completed: _____ am / pm   Client Code: 028307.1010   User Number: 1498

**Exhibit  11**




**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

October 28, 2004

<u>VIA FACSIMILE AND U.S. MAIL</u>

Keith A. Jacoby, Esq.
Littler Mendelson, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California  90067-3107

Re:     *Mattel, Inc. v. Carter Bryant*

Dear Mr. Jacoby:

While we will accept the documents and inspection of the prototypes on Monday at 3:00 p.m., we would prefer to have them earlier and will take them as they become available, if necessary. Making all of this material available at the end of the day on Monday, November 1, 2004 will interfere with our ability to meaningfully prepare for the deposition of Mr. Bryant scheduled to start on November 4.

Please confirm that this production will include: 1) all of the non-privileged responsive documents in Bryant's possession or control; 2) the additional documents you agreed to allow us to inspect at the meeting of counsel; and 3) all of the tangible items that Mattel requested.

These requests have been outstanding for a considerable period of time and there is no excuse for this delay.

Very truly yours,

Kirkland W. Garey
07209/615816.1

EXHIBIT  11  PAGE 192

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94104 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 46-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**PALM SPRINGS**
45-025 Manitou Drive,  Suite 8
Indian  Wells, CA 92210
(760) 345-4757
Facsimile: (760) 345-2414

**LOS ANGELES**
865 So. Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000
Facsimile: (213) 443-3100

**NEW YORK**
335 Madison Avenue, 17th Floor
New York, NY  10017-4611
(212) 702-8100
Facsimile: (212) 702-8200

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA  94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA  94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:**   October 28, 2004

**NUMBER OF PAGES, INCLUDING COVER:  2**

**TO/COMPANY:**

| NAME | PHONE NO. | FAX NO. |
|---|---|---|
| Keith A. Jacoby, Esq. <br> *Littler Mendelson, P.C.* | 310.553.0308 | 310.553.5583 |

**FROM:**   Kirkland W. Garey, Esq.

**RE:**   *Mattel, Inc. v. Carter Bryant*

**MESSAGE:**

Please see attached letter. Thank you.

EXHIBIT  \_\_11\_\_  PAGE  \_\_193\_\_

| CLIENT #:  **7209** | ROUTE/ <br> RETURN TO:  **Aida Kaliniyan - 5th Floor** | ☒ CONFIRM FAX <br> ☐ INCLUDE CONF. REPORT |
|---|---|---|
| OPERATOR: | CONFIRMED?  ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product.  The information is intended only for the use of the individual or entity to whom it is addressed.  If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited.  If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service.  Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3863 AS SOON AS POSSIBLE.**

LaserJet 3100
Printer/Fax/Copier/Scanner

SEND CONFIRMATION REPORT for
Quinn Emanuel
12134433081
Oct-28-04   3:18PM

| Job | Start Time | Usage | Phone Number or ID | Type | Pages | Mode | Status |
|-----|-----------|-------|--------------------|------|-------|------|--------|
| 333 | 10/28  3:18PM | 0'37" | 3105535583 | Send............. | 2/2 | EC144 | Completed................................. |
| | Total | 0'37" | Pages Sent: 2 | Pages Printed: 0 | | | |



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

LOS ANGELES OFFICE

FACSIMILE TRANSMISSION

DATE: October 28, 2004

NUMBER OF PAGES, INCLUDING COVER: 2

TO/COMPANY:

| NAME | PHONE NO. | FAX NO. |
|------|-----------|---------|
| Keith A. Jacoby, Esq. Littler Mendelson, P.C. | 310.553.0308 | 310.553.5583 |

FROM: Kirkland W. Garey, Esq.

RE: Mattel, Inc. v. Carter Bryant

MESSAGE:

Please see attached letter. Thank you.

| CLIENT #: 7269 | ROUTE/RETURN TO: Aida Kalinlyan – 5th Floor | ☑ CONFIRM FAX ☐ INCLUDE CONF. REPORT |
| OPERATOR: | COMMENT: ☐ NO ☐ YES | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3063 AS SOON AS POSSIBLE.

EXHIBIT __11__ PAGE __194__

**Exhibit  12**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

November 1, 2004

VIA FACSIMILE
AND U.S. MAIL

Keith Jacoby, Esq.
Littler Mendelson, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107

Mattel, Inc. v. Bryant

Dear Mr. Jacoby:

Given the importance of having available at Carter Bryant's deposition all potentially useful material about which we may wish to examine Mr. Bryant, Mattel requests that Bryant ensure that all originals of Mr. Bryant's document production, as well as the original physical items inspected by Tania Krebs yesterday afternoon, are available at Mr. Bryant's deposition in Missouri. Please confirm with our office that you will have these items shipped to Missouri in time for the deposition on Thursday morning. If you have any questions regarding the foregoing, please do not hesitate to call.

Best regards,

Jon D. Corey

07209/0616773.01

EXHIBIT __12__ PAGE __195__

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94104 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 46-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-4700 FAX 760-345-2401
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-612-3446

**Exhibit  13**

| | |
|---|---|
| **From:** | "Jacoby, Keith" <KJacoby@littler.com> |
| **To:** | "'Jon Corey'" <joncorey@quinnemanuel.com>, "'John Quinn'" <johnquinn@quinnemanuel.com> |
| **Date:** | 11/3/04 4:51PM |
| **Subject:** | Mattel v. Bryant |

I received your request this morning for Mr. Bryant to make available the originals of the Bratz drawings produced in this case for use in his deposition.  It would have been easier if this request were made earlier, before my partner Douglas Wickham went to Missouri.  Nevertheless, we will have these originals sent to Missouri. We have to retrieve them from the bank safety deposit box they are maintained in, so they will likely be available in Missouri on Friday.

Keith A. Jacoby, Esq.
Littler Mendelson, P.C.
2049 Century Park East
Fifth Floor
Los Angeles, California 90067
ph. (310) 553-0308
direct (310) 772-7284
fax (310) 553-5583
kjacoby@littler.com


----
This email may contain confidential and privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

To reply to our email administrator directly, send an email to postmaster@littler.com

Littler Mendelson, P.C.
http://www.littler.com

EXHIBIT 13 PAGE 196

**Exhibit  14**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

January 24, 2005

<u>VIA FACSIMILE</u>
<u>AND U.S. MAIL</u>

Keith Jacoby, Esq.
Littler Mendelson, P.C.
2049 Century Park East, Fifth Floor
Los Angeles, California 90067

<u>Mattel, Inc. v. Bryant</u>

Dear Mr. Jacoby:

I write to follow up on the discussion that we had on Friday, January 14, 2005 with Ms. Ambrosini regarding certain outstanding discovery issues. I will address them by topic.

**Deposition of Mr. Bousquette**

I have reviewed both Mattel's initial disclosures and Mattel's Response to Bryant's Interrogatory No. 6. Neither response persuaded me that Mattel has done anything improper with respect to its damages claim or, as you suggest, that Mattel is somehow required to produce Mr. Bousquette, Mattel's President, to testify about any lost profits theory of damages. Nor am I persuaded that the generic information that Bryant seeks requires Mattel to disrupt a senior executives' activities to testify, particularly when Bryant can obtain that information via less intrusive manner, such as through a proper interrogatory or the depositions of lower-level employees. Because Mr. Bousquette has no unique, personal knowledge on relevant matters, and because Bryant can obtain the information that he allegedly seeks from Mr. Bousquette by proper interrogatory or other depositions, there is no need to discuss potential limitations to a deposition of Mr. Bousquette.

EXHIBIT _14_ PAGE _197_

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94104 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

**Original Documents**

Mattel has repeatedly requested that Bryant make available for inspection and imaging the originals of all of Bryant's documents, including those that have been "redacted." Both you and your colleague Mr. Wickham have, on many occasions, committed to make all such documents available for Mattel's inspection without reservation. As you must understand, your recent refusal to provide some of these originals only further suggests irregularities with respect to those originals. The most prudent way allay Mattel's concerns is to produce all originals for inspection. You are welcome, as you have in the past, to take whatever reasonable safeguards you feel necessary to protect and preserve any originals, including the redacted originals, but Mattel reiterates that it wishes to inspect them all.

Bryant has not produced a significant number of documents. Producing the remaining documents for inspection will not impose a logistical burden. Please let me know by the close of business on Tuesday, January 25, 2005 when, within the next ten days Mattel can inspect all of the remaining documents.

**Stipulation to a Special Master**

Mattel will not stipulate to the appointment of a special master or to pay any portion of a special master's costs. Contrary to your mischaracterizations, Mattel's counsel's conduct does not justify the appointment of a special master. Mattel sees no reason why it should have to bear the increased cost and logistical complexity associated with a special master's attendance at all subsequent depositions.

I have reviewed your letter regarding the depositions of Ms. Driskill and Mr. Kaye. Not only does the record contradict your erroneous claims about Mattel's counsel's defense of those depositions, but Bryant has provided no authority to support his contention that it could support the appointment of a special master. Indeed, your letter also lacks the authority I requested that you provide--authority for the proposition that examination of a deponent on a document that the deponent has not seen before and that does not refresh the deponents' recollection is proper examination. See January 14, 2005 Transcript at 25:10-16.

Finally, Mattel questions the timing of Bryant's suggestion of a special master. Given Mr. Wickham's lengthy speaking objections and numerous instructions not to answer at Mr. Bryant's deposition, which Mr. Wickham then unilaterally terminated, it appears that you delayed your request for a special master so as to avoid having your client examined--and Mr. Wickham's objections and instructions ruled upon--under a special master's supervision.

I will address your letter regarding the Driskill and Kaye depositions and any remaining issues that have not been address in prior correspondence under separate cover.

2

EXHIBIT 14   PAGE 198

If you have any questions regarding the foregoing, please do not hesitate to call.

Best regards,

*Jon Corey*

Jon Corey

07209/631745.1

cc:     Paula Ambrosini, Esq. (via facsimile)

EXHIBIT 14   PAGE 199

3

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA  92121
(858) 812-3107
Facsimile: (858) 812-3336

**PALM SPRINGS**
45-025 Manitou Drive,  Suite 8
Indian Wells, CA  92210
(760) 345-4757
Facsimile: (760) 345-2414

**LOS ANGELES**
865 So. Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000
Facsimile: (213) 443-3100

**NEW YORK**
335 Madison Avenue, 17th Floor
New York, NY  10017-4611
(212) 702-8100
Facsimile: (212) 702-8200

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA  94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA  94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:**   January 24, 2005

**NUMBER OF PAGES, INCLUDING COVER: 4**

**TO/COMPANY:**

| NAME | PHONE NO. | FAX NO. |
|------|-----------|---------|
| Keith A. Jacoby, Esq. | (310) 553-0308 | (310) 553-5583 |
| Paula Ambrosini, Esq. | 213-430-6000 | 213-430-6407 |

**FROM:**   Jon Corey

**RE:**   Mattel, Inc. v. Carter Bryant


FAXED JAN 2 4 2005

EXHIBIT ___14___ PAGE 200

| CLIENT #:  7209 | ROUTE/ RETURN TO:  **Samantha S.** | ☒ CONFIRM FAX ☐ INCLUDE CONF. REPORT |
|---|---|---|
| OPERATOR: | CONFIRMED?  ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed.  If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited.  If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service.  Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3863 AS SOON AS POSSIBLE.**

Confirmation Report — Memory Send

Page       : 001
Date & Time: Jan-24-05  08:29am
Line 1     : 2136240643
Line 2     :
Machine ID : QUINN EMANUEL

| | | |
|---|---|---|
| Job number | : | 957 |
| Date | : | Jan-24 08:27am |
| To | : | ☎9350#7209#13105535583# |
| Number of pages | : | 004 |
| Start time | : | Jan-24 08:27am |
| End time | : | Jan-24 08:29am |
| Pages sent | : | 004 |
| Status | : | OK |
| Job number | : 957 | *** SEND SUCCESSFUL *** |

## QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

| LOS ANGELES | SAN FRANCISCO |
|---|---|
| 865 So. Figueroa Street, 10th Floor | 50 California Street, 22nd Floor |

LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

DATE:   January 24, 2005

NUMBER OF PAGES, INCLUDING COVER: 4

TO/COMPANY:

| NAME | PHONE NO. | FAX NO. |
|---|---|---|
| Keith A. Jacoby, Esq. | (310) 553-0308 | (310) 553-5583 |
| Paula Ambrosini, Esq. | 213-430-6000 | 213-430-6407 |

FROM:   Jon Corey

RE:     Mattel, Inc. v. Carter Bryant

EXHIBIT 14    PAGE 201

| CLIENT #:  7209 | ROUTE/ RETURN TO:  Samantha S. | ☐ CONFIRM FAX  ☐ INCLUDE CONF. REPORT |
|---|---|---|
| OPERATOR: | CONFIRMED?  ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of the communication is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3963 AS SOON AS POSSIBLE.

# Group Send Report

Page      : 001
Date & Time: Jan-24-05  08:02am
Line 1    : 2136240643
Line 2    :
Machine ID : QUINN EMANUEL

| | | |
|---|---|---|
| Job number | : | 956 |
| Date | : | Jan-24 07:59am |
| Number of pages | : | 004 |
| Start time | : | Jan-24 07:59am |
| End time | : | Jan-24 08:02am |

Successful nbrs.

Fax numbers

☎9350#7209#12134306407#

Unsuccessful nbrs.                                              Pages sent

Fax numbers

☎9350#7209#13105535583#93                                         000

EXHIBIT 14   PAGE 202

Exhibit  15

CONFORMED COPY

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
       John B. Quinn (Bar No. 090378)
2      Michael T. Zeller (Bar No. 196417)
       Jon D. Corey (Bar No. 185066)
3  865 South Figueroa Street, 10th Floor
   Los Angeles, California  90017-2543
4  (213) 443-3000 (telephone)
   (213) 443-3100 (facsimile)
5
   Attorneys for Plaintiff and Counter-Defendant
6  Mattel, Inc.

7  LITTLER MENDELSON
       Robert F. Millman (Bar No. 062152)
8      Douglas A. Wickham (Bar No. 127268)
       Keith A. Jacoby (Bar No. 150233)
9  2049 Century Park East, 5th Floor
   Los Angeles, California  90067-3107
10 (310) 553-0308 (telephone)
   (310) 553-5583 (facsimile)
11
   Attorneys for Defendant and Counter-Claimant
12 Carter Bryant

13 O'MELVENY & MYERS, LLP
       Diana M. Torres (Bar No. 162284)
14     Paula E. Ambrosini (Bar No. 193126)
       Alicia C. Meyer (Bar No. 230189)
15 400 South Hope Street
   Los Angeles, California  90071-2899
16 (213) 430-6000 (telephone)
   (213) 430-6407 (facsimile)
17
   Attorneys for Defendant
18 MGA Entertainment Inc.

19

20                 UNITED STATES DISTRICT COURT

21                CENTRAL DISTRICT OF CALIFORNIA

22 MATTEL, INC., a Delaware corporation,   )  CASE NO. CV 04-9059 NM (RNBx)
                                           )
23                        Plaintiff,       )  **DISCOVERY MATTER**
                                           )
24            v.                           )  JOINT STIPULATION RE:
                                           )  MATTEL, INC.'S MOTION TO
25 CARTER BRYANT, an individual, MGA       )  COMPEL INSPECTION OF
   ENTERTAINMENT INC., a California        )  ORIGINAL DOCUMENTS AND
26 corporation, and DOES 1 through 10,     )  TANGIBLE THINGS
   inclusive,                              )
27                                         )  Hearing Date:  March 15, 2005
                          Defendants.      )  Time:  9:30 a.m.
28                                         )
                                           )  Hon. Robert N. Block

FILED
CLERK, U.S. DISTRICT COURT
FEB 18 2005
CENTRAL DISTRICT OF CALIFORNIA
BY                            DEPUTY

2-7

EXHIBIT 15   PAGE 203   JOINT STIPULATION

1  CARTER BRYANT, on behalf of himself,  )  Discovery Cut-Off:     None Set
   all present and former employees of    )  Pretrial Conference:   None Set
2  Mattel, Inc., and the general public,    )  Trial:                 None Set

3                    Counter-Claimant,      )

4          v.                               )

5  MATTEL, INC., a Delaware corporation,    )

6                    Counter-Defendant.     )

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT __15__ PAGE: __204__

## TABLE OF CONTENTS

**Page**

Mattel's Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Defendant and Counter-Claimant Carter Bryant's Introductory Statement . . . . . . 5

MGA's Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Issue No. 1    Should Bryant Be Compelled to Make Available for Inspection the Originals of Documents That He Has Produced? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.    Mattel's Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       Nature Of This Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       Bryant's Failures To Make Originals And Tangible Items Available for Inspection . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       The Court Should Order Bryant to Make The Original Drawings, Documents And Tangible Things Available For Inspection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    B.    Bryant's Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

       Mattel Has Had a More Than Reasonable Opportunity To Inspect Bryant's Original Documents And Things . . . . . . . . . . . . 20

       A Court Is Required To Place Reasonable Limitations On The Inspection Of Documents . . . . . . . . . . . . . . . . . . . . . . 21

       Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Issue No. 2    Should MGA Be Compelled to Make Available for Inspection the Originals of Documents That It Has Produced? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    A.    Mattel's Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    B.    MGA's Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

       1.    MGA Has Agreed to Produce for Inspection Original Artwork and Tangible Things . . . . . . . . . . . . . . . . . . . . . . 28

       2.    The Purported Fax Testified To By Victoria O'Connor . . . . . 29

Issue No. 3    Should Defendants Be Sanctioned? . . . . . . . . . . . . . . . . . . . . 31

    A.    Mattel's Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

    B.    Bryant's Position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

EXHIBIT 15 PAGE 205

i

JOINT STIPULATION

C.   MGA's Position  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

    1.   This Motion Was Completely Unnecessary, and Mattel Failed to Make an Honest, Good Faith Effort to Resolve the Issues Without Court Intervention . . . . . . . . . . . . . . . . . 34

    2.   Mattel Will Not Permit MGA to See the Declarations and Exhibits that Mattel Has Referenced in its Portion of the Joint Stipulation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

EXHIBIT 15 PAGE 206

ii

**JOINT STIPULATION**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2     Michael T. Zeller (Bar No. 196417)
     Jon D. Corey (Bar No. 185066)
3  865 South Figueroa Street, 10th Floor
   Los Angeles, California  90017-2543
4  (213) 443-3000 (telephone)
   (213) 443-3100 (facsimile)
5
   Attorneys for Plaintiff and Counter-Defendant
6  Mattel, Inc.

7  LITTLER MENDELSON
     Robert F. Millman (Bar No. 062152)
8     Douglas A. Wickham (Bar No. 127268)
     Keith A. Jacoby (Bar No. 150233)
9  2049 Century Park East, 5th Floor
   Los Angeles, California  90067-3107
10 (310) 553-0308 (telephone)
   (310) 553-5583 (facsimile)
11
   Attorneys for Defendant and Counter-Claimant
12 Carter Bryant

13 O'MELVENY & MYERS, LLP
     Diana M. Torres (Bar No. 162284)
14    Paula E. Ambrosini (Bar No. 193126)
     Alicia C. Meyer (Bar No. 230189)
15 400 South Hope Street
   Los Angeles, California  90071-2899
16 (213) 430-6000 (telephone)
   (213) 430-6407 (facsimile)
17
   Attorneys for Defendant
18 MGA Entertainment Inc.

19
                UNITED STATES DISTRICT COURT
20
               CENTRAL DISTRICT OF CALIFORNIA
21

22 MATTEL, INC., a Delaware corporation,  )  CASE NO. CV 04-9059 NM (RNBx)
                                          )
23              Plaintiff,                )  **DISCOVERY MATTER**
                                          )
24        v.                              )  JOINT STIPULATION RE:
                                          )  MATTEL, INC.'S MOTION TO
25 CARTER BRYANT, an individual, MGA      )  COMPEL INSPECTION OF
   ENTERTAINMENT INC., a California       )  ORIGINAL DOCUMENTS AND
26 corporation, and DOES 1 through 10,    )  TANGIBLE THINGS
   inclusive,                             )
27                                        )  Hearing Date:  March 15, 2005
                Defendants.               )  Time:  9:30 a.m.
28                                        )
                                          )  Hon. Robert N. Block

                                             JOINT STIPULATION

EXHIBIT 15   PAGE 207

| | | |
|---|---|---|
| 1 | CARTER BRYANT, on behalf of himself, ) all present and former employees of | Discovery Cut-Off:   None Set |
| 2 | Mattel, Inc., and the general public, ) | Pretrial Conference:   None Set<br>Trial:   None Set |
| 3 | Counter-Claimant, ) | |
| 4 | v. ) | |
| 5 | MATTEL, INC., a Delaware corporation, ) | |
| 6 | Counter-Defendant. ) | |
| 7 | | |

8         Pursuant to <u>Federal Rule of Civil Procedure</u> 37 and <u>Local Rule</u> 37,

9   Plaintiff and Counter-Defendant Mattel, Inc. ("Mattel"), Defendant and Counter-

10   Claimant Carter Bryant ("Bryant") and Defendant MGA Entertainment Inc. ("MGA")

11   respectfully submit this Joint Stipulation on Mattel's Motion to Compel Inspection

12   of Original Documents And Tangible Things.

13

14   **<u>Mattel's Introduction</u>**

15         This suit involves defendant Carter Bryant's aid and assistance to a Mattel

16   competitor, defendant MGA, during the time of his employment by Mattel as a

17   product designer.  Thus far, discovery has shown that Bryant assisted MGA on

18   projects, known as "Bratz" and "Angel," while he worked for Mattel.  What Bryant

19   did on these and any other projects with MGA, and when he did it, are central issues.

20         The bulk of Bryant's document production consists of undated (and

21   unorganized) design drawings pertaining to his work on MGA-related projects.  For

22   months now, Mattel has been seeking to inspect and photograph the originals of the

23   materials produced by defendants.  In fact, Mattel has been requesting that Bryant

24   make his originals available since October and has been requesting that MGA do so

25   since early December.  Both defendants agreed at various times to make their

26   originals available and promised dates for the inspections would be forthcoming.

27         Nevertheless, Mattel has been getting the run-around and still has not

28   been allowed to make a complete inspection.  MGA has not made available any of the

2

EXHIBIT 15   PAGE 208   JOINT STIPULATION

1   originals of the drawings and other documents it has produced and, despite MGA's
2   promise that it would propose dates for the inspection, MGA has never provided even
3   those. As for Bryant, although he promised on more than one occasion beginning in
4   November 2004 that he would make all of his originals available, he has allowed
5   Mattel to inspect and photograph less than a third of the originals of the materials he
6   has produced. He has failed to make the majority of originals--including *any* of his
7   Bratz drawings--available for inspection and photographing. Bryant now refuses to
8   turn over many of his originals and, in any event, has not provided any dates for when
9   a complete inspection can be made as to any of his remaining originals.

10         Defendants agreed to make the originals available, and the Court should
11  enforce those promises. Even apart from defendants' agreements, Mattel is entitled
12  to inspect and photograph the originals of Bryant's and MGA's documents. The
13  express terms of <u>Federal Rule of Civil Procedure</u> 34 give Mattel a right to inspect
14  their originals. Indeed, the policies underlying <u>Federal Rule of Evidence</u> 1002 also
15  require defendants here to turn them over for inspection.

16         The circumstances of this case make defendants' failures especially unfair and
17  inappropriate. Not only do the originals provide information and details not
18  discernible from the copies, but there are serious questions about the genuineness and
19  authenticity of defendants' documents. First, there already is evidence that
20  defendants have spoliated original documents. One former MGA executive testified
21  that, at the direction of MGA's CEO, she altered Bryant's contract with MGA to
22  conceal a fax header which showed Bryant was working for Mattel at the time he
23  signed the contract. The document with this fax header has never been produced
24  (even as a copy), nor has MGA allowed Mattel to see the original of what it had
25  purported to produce earlier as a copy of the "original" faxed contract. Bryant also
26  has produced copies of documents that omit fax header information. This includes,
27  most notably, a fax of Bratz drawings dated April 10, 2000 that is missing
28  information regarding who transmitted it and is missing its surrounding pages. The

3

EXHIBIT 15  PAGE 209

1  omissions are all the more troubling because this fax was sent during a time that
2  Bryant was working for Mattel and during a time that he claimed he was doing
3  nothing on the Bratz project.

4      Second, Bryant and MGA have engaged in the destructive testing of originals,
5  without providing advance notice to either the Court or to Mattel. Originals of a few
6  Bratz drawings that Mattel's counsel was shown at Bryant's deposition (but which
7  Mattel has never had the opportunity to photograph) had holes punched in them
8  where one or both defendants appear to have had destructive ink and paper analysis
9  performed. Needless to say, courts not only have condemned such destructive testing
10  without prior notice to the court or to the opposing party as an unfair practice, but
11  indeed have imposed evidentiary sanctions for it. Mattel is entitled to find out and
12  fully document, through an inspection, which originals defendants have altered,
13  including through testing.

14      Third, Bryant has allowed inspection of only some originals, but then failed to
15  allow Mattel to inspect the originals of many other drawings and other documents.
16  Before he ceased allowing Mattel access to additional originals, Mattel learned that
17  many of the black and white photocopies of undated drawings that Bryant had
18  produced were not even from original drawings. They instead are photocopies of
19  other photocopies of unknown origin. Bryant also claimed that during the limited
20  inspection that, as to some of these materials, he is suddenly unable to locate the
21  originals of documents that he had produced in this case.

22      Without a complete inspection, Mattel has no way of knowing what drawings
23  and other documents defendants even have originals of. Not only is Mattel entitled
24  to that information, but it is particularly important in this case because, as mentioned
25  above, timing is critical, including when drawings and other documents were created.
26  The chemical composition of certain types of inks and papers, and details such as
27  watermarks and other impressions found only on the originals of the documents, may
28  bear on when a document was created or when the various writings on them were

EXHIBIT 15 PAGE 210

4

1  made. Mattel anticipates, as is its right, that it may seek to have experts examine the
2  documents to determine whether anything on the originals would reveal the true date
3  of their creation. But Mattel needs detailed information about the originals before it
4  can ascertain what, if any, kind of analysis would be appropriate (or even possible in
5  the aftermath of defendants' testing and handling of the documents)[1] and,
6  furthermore, to determine which of the originals are potentially appropriate
7  candidates for testing. Mattel cannot even begin this process, however, without being
8  able to inspect and photograph the originals.

9         Mattel therefore respectfully requests that the Court order defendants to
10  provide their original drawings, documents and items for inspection and
11  photographing.

12

13  **Defendant and Counter-Claimant Carter Bryant's Introductory Statement**

14         Mattel's attorneys have spent well in excess of three full days inspecting
15  original documents and things produced by Bryant. In addition, Mattel has had two
16  *more* days to examine documents - and question Bryant about them - at his deposition
17  in Springfield, Missouri. Mattel has inspected each and every tangible thing that
18  Bryant has produced in this litigation. Nevertheless, it has brought yet another
19  discovery motion, claiming that it has not had the opportunity to inspect the originals
20  of Bryant's production.

21         Bryant has gone to extreme measures to accommodate Mattel's inspection
22  requests. After his counsel had already left Los Angeles to travel to Springfield,
23  Missouri to attend Bryant's deposition on November 3, 2004, Mattel made an
24  eleventh-hour request, *for the first time*, that original documents be produced there.
25  Bryant was forced to incur the significant expense of hand-delivering the

26

27  [1] As discussed below, defendants' handling and destructive testing of the originals
    may well preclude any further effective testing from being performed. That can be
28  determined only from an inspection of the originals, which is another reason it should be
    ordered.

EXHIBIT 15   PAGE 211

JOINT STIPULATION

1 | irreplaceable documents to Missouri, on literally a few hours' notice, simply at
2 | Mattel's whim.  Remarkably, although the parties had engaged in several months of
3 | negotiation and motion practice before the deposition took place - notably because
4 | of Mattel's own failure to produce documents - Mattel had never requested the
5 | original documents until just before the start of the deposition.[2]

6 |      While Bryant has expended significant time and resources to comply with
7 | Mattel's request for inspection, *Mattel has completely stonewalled in response to*
8 | *Bryant's request to inspect Mattel's original documents*.  Despite Bryant's repeated
9 | requests, <u>Mattel has not permitted him to inspect a single original document, even</u>
10 | <u>after meeting and conferring with his counsel</u>.  In the face of its blanket refusal to
11 | comply with its Rule 34 obligations, Mattel nevertheless asks this Court to compel
12 | Bryant to *again* make his documents available for inspection, despite the burden and
13 | expense already imposed on him by Mattel's repeated inspections.

14 |      While a party is entitled to inspect another party's relevant documents and
15 | things during litigation, it does not have an unfettered right to disrupt, burden and
16 | harass the opposing party by conducting repeated, unreasonably long inspections that
17 | are intended primarily to consume undue time and drive up litigation costs.  Bryant
18 | has cooperated fully in providing Mattel a reasonable opportunity to inspect the
19 | documents and things he has produced.  Mattel has taken undue advantage of that
20 | opportunity much like it has abused the discovery process in so many other respects
21 | during this litigation - Mattel has attempted to use its rights under Rule 34 as a sword,
22 | to consume undue time, wage an expensive war of attrition, and prevent Bryant from
23 | defending the action and pursuing his legitimate cross-claims.  It has done this by
24 | forcing Bryant to respond to its daily barrage of meaningless (and frequently false)
25 | faxes and correspondence, and by failing to cooperate in discovery at every turn.
26 | Mattel's intentional lackadaisical approach to carrying out its inspections is a
27 |
28 |    [2] See Declaration of Keith A. Jacoby ("Jacoby Decl."), filed concurrently herewith at Par. 5.

EXHIBIT 15 PAGE 212

JOINT STIPULATION

1   deliberate part of its broader scorched-earth strategy to outspend Bryant, and to bury
2   him under so much paper that he can no longer effectively defend himself against
3   Mattel's allegations.[3]
4          Mattel's claims of spoliation are nothing more than mere speculation.  There
5   is no evidence that Bryant has conducted or intends to conduct any destructive testing
6   of the original documents at issue, because no such testing has occurred or will take
7   place.[4]  Bryant has every interest in preserving all the documentary evidence in his
8   possession, given that it refutes Mattel's claims *and* supports his counter-claims.
9   There can therefore be no legitimate concern regarding their safekeeping.  Mattel's
10  claims here are yet another shell game to deflect attention from its own failures to
11  maintain and/or produce hundreds of pages of emails that are either being improperly
12  withheld or that have been intentionally and/or systematically destroyed.[5]
13         As even Mattel acknowledges, Bryant has *agreed* to produce original
14  documents and things contained in his document production for inspection.[6]  More
15  importantly, Bryant has actually made those originals available over the course of
16  three full days - during which Mattel lawyers conducted their inspection - as well as
17
18
19
20
21

---

22         [3] Jacoby Decl. at Par. 9.

23         [4] Jacoby Decl. at Par. 11.

24         [5] Typical of Mattel's obfuscation is an extended, nonsensical discussion in its portion
    of the Joint Stipulation regarding the redaction of a fax header by witness Victoria
25  O'Connor.  Ms. O'Connor testified that she redacted that information on a document
    received by MGA from Bryant while he worked at Mattel.  What Mattel fails to do is
26  demonstrate what, if anything, this has to do with its request to inspect original documents.
    Given O'Connor's testimony, Mattel's inspection of the original document will not reveal
27  any additional information beyond that found on the copy produced.

28         [6] Jacoby Decl. at Par. 2.

EXHIBIT 15  PAGE 213

7

1 | two additional days of deposition.[7] Bryant has also made available all tangible things

2 | he has produced for inspection, and Mattel has inspected them.[8]

3 |       Bryant submits that Mattel has had a full opportunity to inspect his original

4 | documents and things, and he should not be forced to bear the brunt of Mattel's

5 | failure to effectively use its time. In the alternative, should this Court be inclined to

6 | permit a further inspection by Mattel, it should be specifically delimited in time and

7 | scope. Moreover, because the original documents Mattel requested during Bryant's

8 | deposition are now located in Missouri, Mattel should be required to pay any

9 | necessary costs in transporting those materials again, or be required to fly to Missouri

10 | to inspect them and pay Bryant's counsel's expenses in conjunction with any such

11 | trip. Finally, because of Mattel's dereliction in failing to permit Bryant to inspect its

12 | original documents, no inspection should take place unless Mattel is simultaneously

13 | ordered to comply with *its* Rule 34 obligations.

14 |

15 |       **<u>MGA's Introduction</u>**

16 |       Mattel has, once again, managed to create a "dispute" where there is none for

17 | the apparent purposes of driving up the costs of this litigation, distracting MGA's

18 | attention from the defense of this case, and inflaming the Court against MGA. Mattel

19 | itself acknowledges that ***MGA has agreed to make available for inspection, on a***

20 | ***mutually convenient date, any original artwork and tangible things in its***

21 | ***possession and produced in this matter.*** (Ex. D to Declaration of Paula E.

22 | Ambrosini ("Ambrosini Decl.") at 17:10-12; Ex. A at 2 to Ambrosini Decl.) In

23 | addition to this, MGA has also agreed that it will provide for inspection all original

24 | ―――――――――――――――――――――

25 |    [7] Mattel's factual statement is misleading as well. While Mattel's first request to inspect originals was made in October, a large number of documents that Mattel now seeks

26 | to inspect were produced by Bryant *subsequent to that request*. In fact, Bryant produced approximately one-third of the documents at issue *after* Mattel's first suggestion that it

27 | sought to inspect originals. For Mattel to claim, as it does, that it has been seeking to inspect all of the more than 1500 pages of documents produced by Bryant since October is just false.

28 |   [8] Jacoby Decl. at Par. 2.

EXHIBIT 15 PAGE 214

8

1 invoices. (Ex. C at 2 to Ambrosini Decl.). In fact, MGA has made clear to Mattel's

2 counsel on several occasions that MGA is in the process of locating the original

3 artwork and tangible things that Mattel asked to inspect and assembling them for

4 Mattel's inspection. (Exs. A & C to Ambrosini Decl.)

5      Nonetheless, despite MGA's demonstrated cooperation on this issue in agreeing

6 to locate and allow Mattel to inspect all of the documents that it understood Mattel

7 wanted, Mattel, true to form, again conjured up a supposed dispute as an excuse to

8 bring a motion. A week after MGA agreed, in writing, to Mattel's request to inspect

9 originals, Mattel's counsel nonetheless complained, on January 17, 2005, that MGA's

10 agreement was still inadequate, but failed to explain why. (Ex. B to Ambrosini Decl.)

11 The only "originals" that MGA had not agreed to make available were electronic

12 records, for which a request to inspect originals made no logical sense. MGA

13 wondered, therefore, whether Mattel might be expecting MGA to identify and locate

14 the original artwork and tangibles that are pictured in some of the email attachments

15 that MGA produced. MGA had never understood Mattel to be asking for this because

16 MGA's production was not made directly from the original artwork or goods, but

17 rather from the electronic records themselves.

18      If Mattel expected MGA to search for and identify the original source material

19 from which the electronic records were originally made many years ago, it was

20 important for MGA to understand that because the burden placed on MGA to do so

21 would be immense – if, indeed, it is even possible for MGA to identify and locate the

22 original source material for the email attachments at all. MGA asked Mattel,

23 accordingly to clarify precisely what Mattel wanted, so there could be no question of

24 MGA's compliance, and so that Mattel could not use its own vague demands to later

25 accuse MGA of providing an incomplete inspection. (Ex. C to Ambrosini Decl.) In

26 an effort to speed the process along, MGA made clear to Mattel that the sooner Mattel

27 provided this necessary clarification, the sooner MGA would be able to undertake

28 such efforts and make the requested documents and tangibles available for inspection.

EXHIBIT 15 PAGE 215

9

1  (*Id.*) ***Mattel ignored MGA's request, and MGA received no clarification of Mattel's***

2  ***request.***  Instead, MGA received this Joint Stipulation.

3          Apparently, no matter what MGA does, and no matter how reasonable it tries

4  to be, Mattel is determined to place MGA in a no win situation and involve this Court

5  at every opportunity. Astonishingly, even with this Joint Stipulation, Mattel still fails

6  to clarify exactly what it wants to inspect – other than what MGA has already agreed

7  to make available.  There is certainly nothing additional identified in the text of its

8  stated position, and if any such information is contained in its declarations, Mattel

9  failed to provide such declarations to MGA. (Ambrosini Decl. ¶¶ 6-7 & Ex. D

10  thereto.)  ***Indeed, Mattel routinely makes a habit of serving Joint Stipulations***

11  ***without the accompanying declarations, without the accompanying exhibits, and***

12  ***with all of the citations left blank, unfairly requiring MGA to respond based on***

13  ***incomplete information.***

14          Nonetheless, Mattel is not short on rhetoric when it comes to accusing MGA

15  of "spoliating" evidence by supposedly redacting a fax header. Indeed, parading this

16  accusation past the Court appears to be one of Mattel's primary motives for bringing

17  this wholly unnecessary motion.  As MGA has told Mattel over and over again,

18  however, MGA has searched high and low for this supposedly redacted document,

19  and even had a number of others outside of MGA search for the same thing, but has

20  never located such a document.

21          Mattel has brought this motion in bad faith without any legitimate reason. The

22  motion should be denied, accordingly, and sanctions awarded in favor of MGA in the

23  amount of $5000.

24

25

26

27

28

EXHIBIT 15   PAGE 216

JOINT STIPULATION

1                    **Issue No. 1**

2         Should Bryant Be Compelled to Make Available for

3     Inspection the Originals of Documents That He Has Produced?

4

5         Set forth below are (A) Mattel's position and (B) Bryant's position with

6 respect to Issue No. 1.

7

8    A.    **Mattel's Position**

9        **Nature Of This Action**

10         Defendant Carter Bryant is a former Mattel employee. He worked as a

11 Mattel product designer from September 1995 to April 1998, and then again from

12 January 1999 to October 2000.[9] Upon starting his second term of employment with

13 Mattel, Bryant executed an Employee Confidential Information and Inventions

14 Agreement.[10] There, he agreed that during his Mattel employment he would not,

15 without Mattel's express written consent, "engage in any employment or business

16 other than for [Mattel], or invest in or assist (in any manner) any business competitive

17 with the business or future business plans of [Mattel]." Bryant also assigned to

18 Mattel, to the fullest extent of the law, all rights in "inventions," including "designs,"

19 that he created during his Mattel employment. In his agreement, Bryant further

20 promised not to disclose or misuse Mattel's proprietary or confidential information,

21 which is an obligation that continues to this day.

22         In November 2003, Mattel obtained a copy of a contract between Bryant

23 and MGA, a Mattel competitor.[11] That contract--which was entered into while Bryant

24 was employed by Mattel--required Bryant to provide design services to MGA on a

25 "top priority" basis, in conflict with his then-existing duties to Mattel. It also

---

26     [9] See Declaration of Jon D. Corey ("Corey Dec."), Exh. 1 (Complaint at ¶ 9) & Exh.

27 3 (Cross-Complaint at ¶ 7).

28     [10] Exhibit A to the Complaint (Corey Dec., ¶ 2 and Exh. 1).

    [11] Corey Dec., ¶ 3 and Exh. 2.

EXHIBIT 15   PAGE 217

JOINT STIPULATION

1 │ purported to grant MGA ownership of works made by Bryant, both before and after

2 │ the agreement's effective date, in further contravention of his obligations to Mattel.

3 │      Mattel filed this suit against Bryant for breach of contract, breach of

4 │ fiduciary duty, breach of the duty of loyalty, unjust enrichment and conversion.

5 │ MGA subsequently intervened and is now a party-defendant in this action.[12]

6 │ **Bryant's Failures To Make Originals And Tangible Items Available**

7 │ **for Inspection**

8 │      Discovery has shown so far that Bryant worked on at least two projects

9 │ with MGA while he was employed by Mattel.  One was the "Bratz" project.[13]  The

10 │ other was an ostensibly separate project known as "Angel".[14]  In this case, the timing

11 │ of Bryant's actions are important to many of Mattel's claims.  Indeed, Bryant and

12 │ MGA have put timing at issue by claiming that Bryant created most or all of his

13 │ drawings, and performed other relevant work, either during the few months in 1998

14 │ when he was not working for Mattel or else after the time he had left Mattel.[15]

15 │      Much of the documentary evidence produced by Bryant consists of

16 │ undated design drawings, which Bryant has produced to Mattel as black and white

17 │ photocopies.[16]  Moreover, information that one would naturally expect--such as

18 │ complete fax headers, date and time stamps and fax cover pages--are missing from

19 │ his production.[17]

20 │      Mattel has been requesting for over three months now that it be allowed

21 │ to make a complete inspection of the originals of the documents that Bryant has

22 │ produced in this case, but Bryant has not permitted Mattel to do so.  More

---

[12] Id., Exh. 4.

[13] Id., Exh. 5 (at 178:3-22).

[14] Id., Exh. 5 (at 178:3-18, 195:21-196:20).

[15] E.g., id., ¶ 7 and Exhs. 3 and 5 (at 45:7-14, 139:23-141:8).

[16] Id., ¶¶ 8-9 and Exh. 6.

[17] Id., ¶¶ 9-10 and Exhs. 7-8.

EXHIBIT 15   PAGE 218

JOINT STIPULATION

1  specifically, Mattel made its first request for inspection on October 25, 2004.[18]
2  Bryant responded that Mattel could make the inspection on November 1, 2004.[19]
3  Mattel asked Bryant to confirm that the inspection would include: "1) all of the non-
4  privileged responsive documents in Bryant's possession or control; 2) the additional
5  documents you agreed to allow us to inspect at the meeting of counsel; and 3) all of
6  the tangible items that Mattel requested."[20] Before the inspection, Bryant's counsel
7  unilaterally limited Mattel's inspection to only the tangible things produced by Bryant
8  up to that point.[21] Then, at the inspection on November 1, 2004, Bryant's counsel
9  provided only a few tangible items for Mattel's inspection, but provided none of the
10  originals of the drawings and other documents that Bryant had produced.[22]

11         Mattel again asked that all of the originals be made available for
12  inspection, this time requesting that the originals be made available for inspection
13  during Bryant's deposition, which the Court had twice compelled.[23] Bryant's counsel
14  stated that "we will have the originals sent to Missouri," where the deposition was
15  taking place.[24] Despite this, and despite Mattel's further requests at that time for the
16  originals,[25] Bryant made only a few of the original drawings available to be used in
17  questioning.[26] As shown by the deposition transcript, in response to Mattel's
18  additional inquiries, Bryant's counsel specifically represented that, as to Bryant's

19  [18] Corey Dec., ¶ 11 and Exh. 9 (letter from K. Garey to K. Jacoby dated October 27,
20  2004).

21  [19] Id., ¶ 12 and Exh. 10 (letter from K. Jacoby to J. Corey dated October 28, 2004).

22  [20] Id., ¶ 13 and Exh. 11 (letter from K. Garey to K. Jacoby dated October 28, 2004).

23  [21] Declaration of Tania Krebs, dated February 9, 2005 and filed concurrently
      herewith ("Krebs Dec."), ¶ 2.

24  [22] Id.

25  [23] Corey Dec., ¶ 14 and Exh. 12 (letter from J. Corey to K. Jacoby dated November
      1, 2004).

26  [24] Id., Exh. 13 (e-mail from K. Jacoby to J. Corey dated November 11, 2004).

27  [25] Declaration of Michael T. Zeller, dated February 9, 2005 and filed concurrently
      herewith ("Zeller Dec."), Exh. 1; see also Corey Dec., ¶ 16 & Exh. 5 (at ¶20:17-18).

28  [26] Id; Krebs Dec., ¶ 3.

EXHIBIT 15 PAGE 219

13

1  original documents and drawings, "we certainly will make them available for
2  inspection at a reasonable time upon reasonable notice."[27]

3          During the deposition, Mattel questioned Bryant about the condition of
4  the few original Bratz drawings that Bryant's counsel had brought.  These originals
5  included Bratz drawings that had numerous "plugs" or holes in them, consistent with
6  the extraction of ink and paper samples for chemical analysis.[28]  Bryant testified that
7  he was unaware of the origin of the plugs, but did confirm that they were not present
8  on the documents when he turned them over to defendants' counsel.[29]

9          Mattel also questioned Bryant about a one-page document of Bratz
10  drawings that had a fax header date of April 10, 2000.[30]  Although the fax header
11  information on the page states that it was the third page of a fax transmission, neither
12  the first nor the second page of the transmission were produced, nor were any
13  subsequent pages or any cover sheet produced.  Moreover, neither the name of the
14  sender nor the sender's telephone number appears in the header.  Bryant stated that,
15  because his fax machine "wasn't set right," his fax machine did not indicate
16  information such as date and the sender's information.[31]  When asked if his fax
17  machine's setting would also cause all pages to be numbered page three, he stated that
18  he didn't recall.[32]

19          After the deposition, Mattel made additional requests to see all of the
20  originals produced by Mr. Bryant, including on November 17, 2004 and eventually
21  by sending a letter on December 14, 2004 requesting a Rule 37-1 meet and confer on
22
23
      _____
24  [27] Id., Exh. 5 (at 120:17-18).
      [28] Id., Exh. 5 (at 459:19-460:15); Krebs Dec., ¶ 4.
25  [29] Corey Dec., Exh. 5 (at 459:19-460:15).
26  [30] Id., ¶ 10 and Exh. 7.  The fax was produced by Bryant on August 12, 2004, as
27  Bates No. BRYANT 00167.
      [31] Id., Exh. 5 (at 319:15-19).
28  [32] Id., Exh. 5 (at 320:13-16).          EXHIBIT 15  PAGE 220

1  the subject.[33]  Bryant's counsel then agreed, again, to make all original documents

2  available for inspection and photographing, and the inspection was scheduled to

3  begin on December 22, 2004.[34]   Mattel's counsel, with a videographer and

4  photographer, inspected originals on December 22 and on December 23.[35]  Yet, at the

5  inspection, Bryant's counsel did not turn over a single original Bratz drawing or

6  sketch[36] and, indeed, did not turn over the majority of the originals of documents that

7  he has produced.[37]  Equally troubling, Bryant's counsel claimed not to be able to turn

8  over or locate many of the originals, including the original Bratz drawings that Bryant

9  had brought to the deposition and that reflect defendants' destructive testing on the

10  originals.[38]  During the inspection on December 22 and 23, Bryant's counsel made

11  repeated promises that *all* original documents would be made available for inspection

12  "when found."[39]

13          Over the course of yet another month following the incomplete

14  inspection of documents that Bryant allowed, Mattel made further requests to inspect

15  the remaining original documents, including on January 24,[40] but to no avail.  Bryant

16

---

17    [33] Corey Dec., ¶¶ 17 and 20 and Exhs. 14 and 18.

18    [34] Krebs Dec., ¶ 5.

19    [35] Id.; Declaration of Shane McKenzie, dated February 9, 2005 and filed concurrently herewith ("McKenzie Dec."), ¶ 2.

20    [36] The documents for which only copies of Bratz drawings, and not originals, were
21  provided include: CB00957, 00958-976, 00977, 00978-983, 00984, 986-987, 00985, 00988-1016, 01018-01048, 01051, 01049-1050, 1052-1053, 01054-1094, 01095-1096, 01097-
22  1119. See McKenzie Dec., ¶¶ 2-4 & Exh. 1.

23    [37] Id.  A complete listing of the original Bratz drawings, sketches and other documents that Bryant's counsel could not account for in any way, even as to their
24  whereabouts, are detailed in Exhibit 1 to the McKenzie Dec.

25    [38] The original sketches and drawings that Bryant had at his deposition, but did not produce for Mattel's inspection and photographing, include: CB00001-12; CB00175-182,
26  184-192, 194-199, 201-213, 215-218, 220, 222-224, 226-227, 229-230, 232-246, 273-275,
27  CB01246-1247 and CB01243.  McKenzie Dec., ¶¶ 3-4 & Exh. 1.

28    [39] McKenzie Dec., Exh. 1.
    [40] Corey Dec., ¶ 18 and Exh. 15.

EXHIBIT 15 PAGE 221

JOINT STIPULATION

1  has not provided any dates on which the inspection can be completed and, moreover,

2  is now refusing to allow the inspection of any originals that have been redacted.[41]

3  Thus, despite Bryant's earlier promises, and more than three months after Mattel

4  began asking for the inspection, Bryant still has failed to turn over for inspection and

5  photographing the majority of the originals in his production.[42] He also has failed to

6  allow the inspection and photographing of *any* of the originals of Bratz drawings in

7  his production.[43] Indeed, the only "originals" of Bratz drawings that Mattel has been

8  allowed to inspect and photograph were, in fact, photocopies.[44]

9  <u>**The Court Should Order Bryant to Make The Original Drawings,**</u>

10  <u>**Documents And Tangible Things Available For Inspection.**</u>

11  There are several reasons why Bryant should be ordered to make his

12  originals and tangible items available for Mattel's inspection and photographing.

13  First, he agreed to it multiple times, including on the record at the Bryant deposition

14  and at a December 15 meet and confer.  Despite the fact that Mattel has spent

15  considerable time and money in reliance on these promises--showing up with

16  attorneys, videographers and photographers on three occasions to inspect documents

17  and other tangible things--Bryant's counsel has not lived up to their agreements.

18  Therefore, this Court should compel Bryant to do so.

19  Second, the plain language of <u>Rule 34</u> allows Mattel to inspect Bryant's

20  responsive documents. It specifically allows a party requesting documents "*to inspect*

21  and copy, any designated documents"--including "writings" and "*drawings*"--"or *to*

22  *inspect* and copy, test, or sample any tangible things which constitute or contain

23  matters within the scope of Rule 26(b) and which are in the possession, custody or

24  control of the party upon whom the request is served".   <u>Fed. R. Civ. P.</u> 34(a)

25  _____

26  [41] Corey Dec., ¶¶ 18-19. Notably, the multitude of redactions in Bryant's production are not based on privilege. <u>Id.</u>, ¶ 19 and Exh. 17.

27  [42] <u>Id.</u>, ¶ 21.

28  [43] <u>Id.</u>; McKenzie Dec., ¶ 3 & Exh. 1.

[44] McKenzie Dec., ¶ 3 & Exh. 1.

EXHIBIT  15  PAGE 222

16

1  (emphasis added.)  This language means what it says.  As one court has stated, Rule
2  34 confers "a right to inspect the originals.  Possession of copies of documents does
3  not prevent discovery of actual documents so as to avoid possible challenges to the
4  genuineness of copies at the trial."  In re Kolinsky, 140 B.R. 79, 87 (S.D.N.Y. 1992)
5  (citing 4 Moore's Federal Practice, § 26-184 (2d ed. 1991));  see also Gielow v.
6  Warner Bros. Pictures, 26 F. Supp. 425 (S.D.N.Y. 1938) (holding originals were
7  "evidence material to any matter involved" within Rule 34 providing for discovery
8  and granting motion to compel).

9        The reasons for this are apparent:  originals often reveal significant
10  information not obtainable from copies.  As McCormick has stated, "[i]t has long
11  been observed that the opportunity to inspect original writings may be of substantial
12  importance in the detection of fraud," and "[m]any indicia of putative fraud such as
13  watermarks, types of paper and inks, etc., will not be discernable on the copy."
14  McCormick, Evidence §§ 231, 236 (4th ed. 1992).  Indeed, the policies seeking to
15  prevent inaccuracy and fraud with respect to documents are what animate Federal
16  Rule of Evidence 1002, which independently requires defendants to produce their
17  originals here.  "[W]ritings exhibit a fineness of detail . . . which will often be of
18  critical importance.  Prevention of loss of this fine detail through mistransmission is
19  a basic objective of the rule requiring production of documentary originals."
20  McCormick, supra, § 232; see also United States v. Yamin, 868 F.2d 130, 134 (5th
21  Cir. 1989) (explaining purpose of rule requiring production of originals is "to prevent
22  inaccuracy and fraud when attempting to prove the contents of a writing.").

23        Allowing Mattel equal access to the information shown by the originals--
24  which defendants obviously have access to--is particularly appropriate in this case.
25  This case involves numerous drawings, and the ones that Mattel has seen (but not
26  been able to photograph) were created using different kinds and colors of pencils,
27
28

EXHIBIT 15  PAGE 223

17

1  inks and markers.[45] They also have what appears to be different handwriting from
2  different sources made at different times on them, which is a point Bryant confirmed
3  in deposition.[46] Another witness, a third-party, testified that certain annotations on
4  the copy of a Bryant drawing as produced by defendants here did not appear on the
5  original drawing that Bryant had previously shown to her.[47] The timing of the
6  creation of these documents and of the various additional matter on them can be
7  critical, as noted above. Mattel is entitled to know which originals defendants have
8  and is entitled to know the information that is evident only from originals, such as the
9  existence of watermarks or impressions and the use of different inks on particular
10 documents. Without inspecting and photographing the originals of these drawings,
11 it will be effectively impossible for Mattel to fully understand the evidence and to test
12 any claims that the drawings are authentic.

13          Third, and independently, Mattel is entitled to inspect and photograph
14 the originals because there is evidence of both spoliation and destructive testing by
15 defendants to the originals. <u>Sedrati v. Allstate Life Insurance Co.</u>, 185 F.R.D. 388
16 (M.D. Ga. 1998), illustrates why.   There, defendant's expert had engaged in
17 destructive testing on original documents, without actual, prior notice to the Court or
18 to the other side. <u>Id.</u> at 391. Even though the Court found that the destructive testing
19 was not done in bad faith, it ordered the exclusion of defendant's evidence because
20 of defendant's conduct: "Our rules of evidence and procedure, as well as our system
21 of justice generally, demand fairness to all concerned parties throughout the process
22 of discovery. The Court finds that Defendant's conduct with respect to the handling
23 and testing the subject documents falls far short of that standard."

24          Mattel is entitled to know which originals have been altered, including
25 through testing, and to document defendants' unauthorized actions through inspecting

26 _____

27    [45] <u>E.g.</u>, Krebs Dec., ¶ 4.
28    [46] <u>E.g.</u>, <u>id.</u>; Corey Dec., Exhs. 5 and 6.
      [47] Corey Dec., Exh. 23.

EXHIBIT 15   PAGE 224

18

1    and photographing them. Not only is Mattel entitled to do so in connection with any

2    potential motion regarding appropriate remedies for defendants' conduct, but without

3    an inspection Mattel has no way of knowing what drawings and other documents

4    defendants even have originals of and cannot ascertain whether additional testing can

5    potentially be performed. The chemical composition of certain types of inks and

6    papers, and details such as watermarks and other impressions found only on the

7    originals of the documents, may bear on when a document was created and on when

8    the various writings on them were made.[48] As noted above, Mattel anticipates that

9    it may seek to have experts examine the documents to determine whether anything

10   on the originals would reveal the true date of their creation. Such information is

11   relevant in this case because it may either confirm or contradict Bryant's testimony

12   about when he was doing the work on Bratz and/or Angel that he says he did. But

13   Mattel needs detailed information about the originals before it can ascertain what, if

14   any, type of analysis would be appropriate and furthermore to determine which of the

15   originals are potentially appropriate candidates for testing. Mattel cannot do so,

16   however, without being able to inspect and photograph the originals. Indeed,

17   defendants' destructive testing may well have precluded any further effective testing

18   from being conducted. See, e.g., Sedrati, 185 F.R.D. at 393 ("Clearly, preservation

19   of the documents in their original state is a crucial precondition for conducing

20   accurate forensic tests on them."). That can be determined only from an inspection

21   of the originals, which is another reason it should be ordered.

22          Finally, Bryant cannot legitimately complain that an order compelling

23   him to make the originals available would be burdensome. Apart from his prior

24   agreements to make the originals available, Bryant's entire production is only some

25

---

26    [48] See, e.g., Equal Employment Opportunity Commission v. Ethan Allen, Inc., 259

27   F.Supp.2d 625, 626 n.1 (N.D. Ohio 2003) ("Sometimes, the determination of the type of ink used can, by itself, prove conclusively that the claimed date of writing is false. For example, a given ink may: (1) have been manufactured only during certain years; and/or (2) contain

28   'tags,' which are chemical components added to the ink for the precise purpose of providing a date of manufacture.").

EXHIBIT 15 PAGE 225

19

JOINT STIPULATION

1  1588 pages.[49]  At the prior, limited inspection, Mattel was allowed to inspect 462

2  pages of the "originals" of Bryant's production.[50] The additional, remaining pages are

3  not an unreasonable amount for Bryant to collect and make available for inspection,

4  especially in light of the fact that the originals he has not produced for inspection are

5  among the most relevant and significant in this case.

6          Mattel respectfully requests that its motion be granted as to Issue No. 1.

7

8      **B.    Bryant's Position**

9  **Mattel Has Had A More Than Reasonable Opportunity To Inspect Bryant's**

10                          **Original Documents And Things**

11         The true issue here is whether Mattel has already had a full and fair

12  opportunity to inspect documents or, in the alternative, whether the Court should

13  issue an order placing a reasonable time limit on Mattel's future inspection of

14  Bryant's documents.  Given the excessive time Mattel has spent performing its

15  "inspection" thus far, Mattel's motion should be denied. But, if the Court is inclined

16  to grant Mattel one last chance to conduct a further inspection, any such Order must

17  be limited to protect Bryant from further harassment, undue burden, annoyance and

18  expense, *and* it must be mutual.

19         Mattel fails to mention that on the three days during which its attorneys

20  inspected original documents at the offices of Bryant's counsel, it "inspected" an

21  average of just over one hundred pages per day, for a total of about three hundred and

22  fifty (350) pages.[51]  In fact, each of the inspections was concluded by Mattel's

23  counsel at or near the close of business, and not due to a lack of documents to inspect.

24  This was due to the fact that Mattel brought at least one attorney, a videographer and

25

26  _____

27      [49] E.g., McKenzie Dec., ¶ 3 & Exh. 1.

28      [50] Id.
        [51] Jacoby Decl. at Par. 8.

EXHIBIT 15 - PAGE 226

JOINT STIPULATION

1  a still photographer to each inspection.[52] This resulted in a staggering amount of time

2  being spent with each separate document before moving on to the next.  Bryant has

3  been more than accommodating of Mattel's lengthy inspection of his production, but

4  Mattel cannot be heard to complain.  It is Mattel that has failed to make the most

5  efficient use of its time - three days *exclusive* of Bryant's 3-day deposition - to inspect

6  originals.

7         Mattel's portion of this Joint Stipulation also ignores that much of

8  Bryant's 1588-page production[53] consisted of royalty statements and telephone

9  records.  In turn, a large number of those records are redacted to protect confidential,

10  and/or proprietary information.[54]  Permitting Mattel to inspect the originals of

11  documents that were produced in redacted form would obviously render futile

12  Bryant's right to safeguard this protected information - a fact Mattel completely

13  ignores.  Mattel is improperly attempting to gain access to originals of redacted

14  documents through this motion.  For Mattel to claim that Bryant has failed to

15  cooperate in the inspection because he has not permitted it to inspect documents it is

16  not entitled to see is specious and illogical.

17         In the spirit of cooperation, Bryant invited Mattel to meet and confer to

18  determine a way for such an inspection to be conducted without compromising

19  Bryant's rights, but Mattel failed to respond.[55]

20  **A Court Is Required To Place Reasonable Limitations On The**

21  **Inspection Of Documents**

22         The right to inspect documents under Rule 34 is not unfettered.  Rather,

23  it is subject to reasonable limitations, which must be delimited by a court when

24  issuing an order permitting an inspection.  For example, the time, place and manner

25  _____

26  [52] Id.

[53] Royalty statements and telephone records comprise over 380 pages, or more than

27  one-fifth his total production.

28  [54] Jacoby Decl. at Par. 6.

[55] Id.

EXHIBIT 15 - PAGE 227

JOINT STIPULATION

1 of inspection must be specified in such an order. <u>Rosenblum v Dingfelder</u>, 1 F.R.D.
2 179 (DC NY 1939). The place of inspection and the cost of transportation of the
3 documents, if inspection is to be carried out at a location other than where the
4 documents are found, must also be identified. <u>Id.</u>; <u>See Also</u> <u>Fairwater Transp. Co. v</u>
5 <u>Chris-Craft Corp.</u>, 1 F.R.D. 509 (DC NY 1940).

6         At least one other court has found that a pretrial discovery order under
7 Rule 34 was defective in failing to specify a time and place for the production,
8 inspection and copying of books and papers. <u>Securities & Exchange Com. v Los</u>
9 <u>Angeles Trust Deed & Mortg. Exchange</u>, 24 FRD 460 (SD Cal. 1959). Furthermore,
10 even in the absence of a court order, a party is allowed to set reasonable limitations
11 on the inspection of documents. <u>Federal Sav. & Loan Ins. Corp. v Village Creed</u>
12 <u>Joint Venture</u>, 130 FRD 357 (ND Tex. 1989).

13         Should the Court be inclined to permit Mattel the further opportunity to
14 inspect Bryant's original documents, it should impose clear guidelines: (1) limiting
15 the total amount of time Mattel will be permitted to further inspect Bryant's
16 documents to one court day (seven hours); (2) limiting the inspection to specific
17 documents, referenced by Bates number, that Mattel will be permitted to inspect;
18 (3) limiting the dates(s) and times on which the inspection is to take place (after
19 giving Bryant and his counsel an opportunity to advise as to availability);
20 (4) preventing Mattel from inspecting the originals of documents produced in a
21 redacted form (unless and until Mattel has successfully secured an order compelling
22 production of the document in an unredacted form); and (5) directing Mattel to give
23 Bryant full and complete access to inspect Mattel's original documents (subject to
24 reasonable time, place and manner restrictions consistent with the length and manner
25 of Mattel's inspection of Bryant's documents). Only in this fashion will Bryant be
26 protected from Mattel's seemingly endless inspection, and the resulting burden,
27 harassment and oppression on Bryant.

28

EXHIBIT 15 PAGE 228

JOINT STIPULATION

## CONCLUSION

Mattel has had ample opportunity to complete its inspection of Bryant's documents and things.  However, should the Court be inclined to permit Mattel additional time to conduct its inspection, Bryant submits that the inspection should be specifically delimited with respect to time, duration and the specific documents to be examined.  The costs of opposing this motion and any additional costs incurred with respect to transporting and/or producing the documents in question (and expenses associated with Bryant's counsel's trip) should be borne by Mattel. Moreover, Bryant respectfully submits that any order regarding the inspection of his original documents and things should be mutual, with Mattel also being required to produce its documents and things for inspection.

### Issue No. 2

#### Should MGA Be Compelled to Make Available for
#### Inspection the Originals of Documents That It Has Produced?

Set forth below are (A) Mattel's position and (B) MGA's position with respect to Issue No. 2.

### A.    Mattel's Position

There is no question that MGA has both spoliated and been involved in the destructive testing of originals here.  Victoria O'Connor is a former MGA executive who has testified in this case.[56] According to Ms. O'Connor, Bryant signed his contract with MGA at issue in this suit and faxed the entirety of it to MGA from Mattel.[57]   That faxed contract from Bryant had a fax header that read "Barbie Collectables" and bore the number of the Mattel fax machine, showing that it came

---

[56] Corey Dec., Exh. 19 (O'Connor Dep. Tr. at 16:15-17).

[57] Id. at 18:13-14.

EXHIBIT 15  PAGE 229

23

1  from Mattel.[58]  When she brought this to the attention of her boss, Isaac Larian, the

2  CEO and founder of MGA Entertainment, he instructed her to "white-out" the fax

3  header information on all of the pages.[59]  Ms. O'Connor testified that she did, in fact,

4  alter this document at Mr. Larian's direction because it demonstrated Bryant "was still

5  employed at Mattel at the time the contract [between MGA and Bryant] was

6  executed."[60]  The copy of the signed contract that MGA produced in this case did not

7  bear the fax header that MGA's CEO had ordered be whited-out.[61]  Indeed, MGA

8  produced no copy of any Bryant contract that bore fax header information on any

9  pages of the contract at all except for the last page (which also did not include the

10  Mattel fax header that Ms. O'Connor testified about).[62]  Nor, as described further

11  below, has MGA ever allowed Mattel to inspect and photograph any of its originals--

12  including the Bryant contract that it had previously produced as a copy of the

13  supposed "original" of that document.[63]

14  After Ms. O'Connor's testimony, on December 9, 2004, Mattel sent a

15  letter to MGA seeking, among other things, MGA's agreement that Mattel could

16  inspect the original documents, drawings and tangible things responsive to Mattel's

17  discovery requests.[64]  Counsel for MGA did not respond to that letter, and Mattel sent

18  another letter asking for a meet and confer pursuant to Local Rule 37 about the

19  inspection.[65]  On December 15, 2004, counsel for MGA and Mattel held a meeting

20

21  _____

22  [58] Id. at 18:13-18.

      [59] Id. at 18:17-18.

23  [60] Id. at 18:13-18, 19:01-04, 20:8-20.

24  [61] Corey Dec., ¶ 23 and Exh. 21.

25  [62] Id.

      [63] Id.

26  [64] McKenzie Dec., Exh. 2 (letter from S. McKenzie to D. Torres dated December 9,

27  2004).

      [65] Corey Dec., ¶ 24 and Exh. 22 (letter from J. Corey to D. Torres dated December

28  13, 2004).

24

EXHIBIT 15  PAGE 230

1    where MGA's counsel declined to agree to provide MGA's originals for inspection

2    and photographing.[66]

3         A meet and confer was held on December 23, 2004.[67] Although Mattel

4    specifically had requested in advance that MGA provide proposed dates on which it

5    would make available for inspection and photographing the originals of all documents

6    and tangible things that MGA has produced in this matter, MGA did not propose any

7    available dates at the meet and confer.[68] MGA did agree, however, to provide Mattel

8    with proposed dates for the inspection of all original documents no later than January

9    10, 2005.[69]

10        January 10 came and went without MGA providing any dates for the

11    inspection as promised. In a letter, MGA instead began to backpedal on its

12    agreement, asserting only that "[t]o the extent MGA has possession of any original

13    artwork and tangible things produced in this matter, it will make such material

14    available for inspection on a mutually convenient date."[70] Similar to Bryant's claims

15    that he could not locate the originals of the documents he has produced, MGA also

16    stated that it was "in the process of locating original documents, which may be in a

17    variety of locations, and will propose a date of the inspection once it has assembled

18    all such documents."[71] Moreover, as to the altered document that Victoria O'Connor

19    testified to, MGA claimed it "continues to search for the original and any copy of the

20    purported 2000 facsimile of the Bryant-MGA contract. Whether you believe it or not,

21

22

23

24

---

[66] Krebs Decl. ¶ 6.

25
[67] Zeller Dec., ¶ 3 and Exh. 2.

26
[68] Id., see Corey Dec., Exh. 22.

27
[69] Zeller Dec., Exh. 2 (letter from M. Zeller to A. Meyers dated December 23, 2004).

28
[70] Id., Exh. 3 (letter from P. Ambrosini to M. Zeller, dated January 10, 2005).

[71] Id.

EXHIBIT 15 PAGE 231

JOINT STIPULATION

1  no such document has been located, to date.  In the event that such a document is

2  located, it will be produced and the original will be made available for inspection."[72]

3         After another week had passed, Mattel again requested that MGA

4  propose dates when it would make available for inspection *all* of the originals that it

5  has produced.  In its letter to MGA on January 17, 2005, Mattel pointed out that

6  MGA had failed to propose dates for the inspection on January 10 -- as it had

7  promised to do on December 23 -- and was inappropriately attempting to limit

8  Mattel's right to inspect all of the originals MGA had produced to artwork and

9  tangible things.[73]  Mattel again unambiguously stated: "We have been asking for

10  many weeks now that MGA provide proposed dates on which it will make available

11  for our inspection and photographing the originals of all documents and tangible

12  things that MGA has produced in this matter."[74]  Despite the clarity of Mattel's

13  repeated requests, and seeking to delay the inspection further, MGA professed

14  confusion by claiming that it needed "additional clarification" regarding "the specific

15  documents and things that Mattel wants to inspect in original form."[75]

16         To date, MGA continues with its failure to allow Mattel the right to

17  inspect its originals and, indeed, some two months after Mattel's initial request, still

18  has proposed no dates for any such inspection.[76]  The Court should compel MGA to

19  produce its originals for all of the same reasons that Bryant should be ordered to

20  produce his originals, as discussed above.  Not only did MGA at one point agree to

21  it, but Mattel is clearly entitled to the inspection under Federal Rule of Civil

22  Procedure 34 and the Federal Rules of Evidence, as shown above.  See Issue No. 1,

23  at 16:19-17:22.  The originals sought are also independently discoverable, since

24  Mattel is entitled to the additional information that only originals can show.  In

25     [72] Id.

26     [73] Id., Exh. 4 (letter from M. Zeller to P. Ambrosini dated January 17, 2005).

27     [74] Id.

28     [75] Id., Exh. 5 (letter from P. Ambrosini to M. Zeller, dated January 24, 2005).
   [76] Id., ¶ 8.

EXHIBIT 15   PAGE 232

JOINT STIPULATION

1   addition, there are serious questions about the authenticity and integrity of MGA's

2   documents here, both in light of Ms. O'Connor's testimony and in light of the

3   unauthorized destructive testing that has been performed. These facts alone warrant

4   an order that MGA provide its originals for inspection and copying, so that Mattel can

5   ascertain which documents have been altered in advance of a potential motion

6   seeking appropriate remedies for defendants' conduct. And, as explained above,

7   without inspecting and photographing the originals, Mattel cannot determine what,

8   if any, expert examination or analysis might be appropriate (or even possible at this

9   stage because of defendants' handling of the originals) to determine when documents

10   were created or to test claims about the authenticity of MGA's documents.

11        While MGA has complained about the alleged "time and trouble of

12   identifying and locating originals,"[77] an order compelling MGA to turn over for

13   inspection and photographing the originals will not be burdensome. MGA's entire

14   production to date is less than 750 pages–filling less than a single box.[78] Not only

15   has Mattel been crystal clear regarding its request to inspect *all* of the originals of

16   MGA's small production for many weeks now, but it strains credulity to suggest that

17   locating fewer than 750 pages of originals would unduly burden the resources of

18   MGA, which touts itself as a company enjoying revenues in excess of a billion dollars

19   annually,[79] or the resources of its counsel.

20        Mattel respectfully requests that its motion be granted as to Issue No. 2.

21

22

23

24

25

26

27   [77] Id., Exh. 5 (letter from P. Ambrosini to M. Zeller dated January 24, 2005).

28   [78] Corey Dec., ¶ 8.
       [79] Id., Exh. 24.

EXHIBIT 15 · PAGE 233

JOINT STIPULATION

B.   **MGA's Position**

1.   **MGA Has Agreed to Produce for Inspection Original Artwork and Tangible Things**

Mattel's complaints about MGA's efforts to make original documents and tangibles available for Mattel's inspection are disingenuous, at best, for a myriad of reasons. First and foremost, MGA already agreed to allow MGA to inspect the original artwork, tangibles and invoices that MGA produced. As previously mentioned, the only thing standing in the way of this inspection is Mattel's unreasonable refusal to explain why it contends that this agreement is somehow inadequate.

MGA cannot figure out, on its own, what exactly Mattel wants to inspect from MGA without some clear direction and explanation from Mattel. Other than artwork, tangibles and invoices, the remainder of MGA's production consists of emails and email attachments. Performing an inspection of "original" emails, however, makes no sense. Mattel may, therefore, be expecting to "inspect" original *unredacted* emails. Some emails have been redacted to omit proprietary, confidential and trade secret information that is *wholly irrelevant to this case and non-responsive to any document request*. Mattel, however, has never contended that it is entitled to these emails in unredacted form and it certainly should not be allowed to obtain the properly redacted information through the back-door by demanding to inspect unredacted "originals."

To the extent that Mattel may be expecting to "inspect" the original source material pictured in some of the email attachments – even though Mattel has not requested such originals – identifying and locating this source material would pose an extreme burden on MGA and would provide no additional, relevant information. Most, if not all, of the email attachments are many years old. Indeed, in some instances, MGA could only guess what the pictures are of, and might not even be able to figure out, from the pictures, where the pictured objects might be, if

EXHIBIT 15    PAGE 234

JOINT STIPULATION

1   at all. Indeed, some of the objects could be overseas, or may no longer exist at all,

2   in which case MGA could perform an endless search and never find them. In any

3   event, MGA cannot even assess the feasibility of such a search, as well as any

4   additional searches that may be necessary, without knowing what Mattel actually

5   wants.

6          Mattel's request is further disingenuous because Mattel itself has refused

7   to commit to allowing MGA to inspect *any* of Mattel's originals. (Ambrosini Decl.

8   ¶ 5.) Mattel can hardly expect to have unfettered access to MGA original documents

9   and things while, at the same time, refusing to allow MGA to inspect Mattel's own

10  originals. If there is to be any inspection at all, at the very least it should be mutual.[80]

11

12         **2.    The Purported Fax Testified To By Victoria O'Connor**

13         Mattel's charges as to spoliation of evidence are not well-taken, and

14  indeed seem to be nothing more than a contrivance intended to try to inflame and

15  prejudice MGA before the Court. First, MGA does not dispute that Mr. Bryant

16  signed a contract with MGA while still employed by Mattel (and, by Mr. Bryant's

17  own admission, appears to have faxed that contract from Mattel) – which is the only

18  point on which this purported document could provide evidence. Second, MGA has

19  made clear on several occasions that it has undertaken substantial efforts to locate this

20  purportedly altered document and simply has not found anything meeting the

21  description of this document, although it *has* found faxes sent by Ms. O'Connor.

22  Indeed, MGA has diligently searched not only its own files, but has also had the

23  attorneys that worked for MGA at the relevant time search their records as well for

---

[80]   Moreover, Mattel's stonewalling as to its own originals is far from an isolated incident of Mattel's egregiously uncooperative discovery behavior. To cite just one example, Mattel has refused to produce even a copy of its own production to MGA unless MGA pays for such production. It is simply mind-boggling that Mattel would have the audacity to expect MGA to undertake the significant, time-consuming and costly endeavor to locate and assemble for production its originals, without even knowing exactly what Mattel wants, and while Mattel will not even assume the expense of producing copies of its production to MGA.

EXHIBIT 15   PAGE 235

JOINT STIPULATION

1 | any version of the contract with the Mattel fax header or that appears to have been in
2 | any way altered such as that described by Ms. O'Connor. *No such document has*
3 | *been found*.
4 |    Whether Ms. O'Connor's testimony is to be believed or not is an issue
5 | in and of itself, but there is no evidence corroborative of her testimony as to this
6 | purported altered document. Moreover, as MGA has made clear in its
7 | correspondence on this issue, if MGA locates this purported document, MGA will
8 | produce it. (Ex. A to Ambrosini Decl.) Unless and until that day arrives, however,
9 | *MGA cannot produce for inspection a document that it does not have.* Indeed, this
10 | is not the first time that Mattel has brought a motion on the basis of its own
11 | unquestioned acceptance of the dubious and uncorroborated testimony of third
12 | parties. In another Joint Stipulation served the same day as this one, Mattel also
13 | moved to compel MGA to produce documents that do not exist based on the
14 | incredible, unsubstantiated and false testimony of third-party witness Anna Rhee.
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 15 PAGE 236

JOINT STIPULATION

## Issue No. 3

Should Defendants Be Sanctioned?

Set forth below are (A) Mattel's position, (B) Bryant's position and (C) MGA's position with respect to Issue No. 3.

### A.    Mattel's Position

Rule 37(a)(4) of the Federal Rules of Civil Procedure provides that a party bringing a motion to compel is entitled to the "reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response or objection was substantially justified, or that other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(4). The burden of establishing substantial justification is on the party being sanctioned. Hyde & Drath v. Baker, 24 F.3d 1162, 1171 (9th Cir. 1994). Independently, sanctions may be imposed under 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions under this section are appropriate "for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." RTC v. Dabney, 73 F.3d 262, 265 (10th Cir. 1995) (citing Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987)).

Here, there is no legitimate excuse for defendants' failures to produce the originals for inspection and photographing. They agreed to do it, but then failed to abide by their promises, despite having had literally months to do so. Nor, in any event, is there any substantial or good faith basis for defendants' long-standing failures. It is more than obvious that Mattel is entitled to inspect and photograph the

31

EXHIBIT 15  PAGE 334  JOINT STIPULATION

1 | originals and gave defendants more than an ample, reasonable time to collect them
2 | and make them available. Indeed, Mattel gave Bryant over three months and MGA
3 | some two months to allow the inspection. Instead, Mattel got the run-around and thus
4 | was forced to burden this Court with this motion as a result of defendants' lack of
5 | cooperation.

6 | Defendants should be sanctioned for the fees and costs that they have
7 | forced Mattel to expend as a result of their evasion and lack of a good faith
8 | justification for withholding the originals. Mattel therefore requests that defendants
9 | be ordered to pay $4200 as partial reimbursement for the fees and costs that Mattel
10 | has incurred on this motion.[81]

11

12 | **B.    Bryant's Position**

13 | Mattel requests sanctions against Bryant for failing to produce original
14 | documents for inspection despite the fact that he has diligently complied with
15 | Mattel's numerous inspection requests - to the point of having original documents
16 | sent to Missouri on the eve of his deposition and incurring significant inconvenience
17 | and expense in the process. As Mattel acknowledges, Bryant *agreed* to and actually
18 | did produce original documents and tangible things for inspection. Mattel, on the
19 | other hand, has repeatedly abused its Rule 34 inspections in a manner designed solely
20 | to improperly delay the proceedings, increase litigation costs *and* harass Bryant.
21 | Mattel's intent to gain an improper advantage in the litigation is all the more apparent
22 | by its failure to provide its own original documents for inspection, despite Bryant's
23 | request.

24 | Sanctions against Mattel, not Bryant, are warranted here.

25 | Under 28 U.S.C. section 1927, the same section ironically cited by
26 | Mattel in support of its sanctions request against Bryant, "[a]ny attorney ... who so
27 | multiplies the proceedings in any case unreasonably and vexatiously may be required
28

---

[81] Corey Dec., ¶ 27.

EXHIBIT 15 PAGE 238

1 | by the court to satisfy personally the excess costs, expenses, and attorneys' fees
2 | reasonably incurred because of such conduct." Furthermore, under F.R.C.P.
3 | 37(a)(4)(B), if a discovery motion is denied, the court "shall, after affording an
4 | opportunity to be heard, require the moving party or the attorney filing the motion or
5 | both of them to pay the party or deponent who opposed the motion the reasonable
6 | expenses incurred in opposing the motion, including attorneys' fees, unless the court
7 | finds that the making of the motion was substantially justified or that other
8 | circumstances make an award of expenses unjust."

9 | Bryant's counsel has spent more than five hours preparing this Joint
10 | Stipulation, and anticipates spending additional time preparing a supplemental brief
11 | in this matter and attending the hearing. Counsel's hourly rate in $295 per hour. See
12 | Messiha Declaration at Par 2. Accordingly, Bryant requests sanctions in the amount
13 | of at least $1475.00 for the costs expended in defending this application.

14 | Bryant respectfully submits that he has ample justification in opposing
15 | Mattel's motion, and that Mattel's request for sanctions should therefore be denied.

16 |

17 | **C.    MGA's Position**

18 | If anyone is to be sanctioned here, it should be Mattel for two main
19 | reasons. First, Mattel has brought a needless motion that could have been avoided
20 | had it but made an honest, good faith effort to cooperate with MGA. Second, Mattel
21 | has refused to provide MGA with the declarations and exhibits that Mattel refers to
22 | in its portion of the Joint Stipulation until *after* the stipulation is signed and filed and
23 | *after* it is too late for MGA to respond to whatever it is that Mattel is withholding.[82]

24 |
25 |
26 |

27 | [82] In addition, Mattel omitted this Issue Three from the portion of the Joint
28 | Stipulation it provided on February 9, 2005. Only after much debate did Mr. Zeller relent and give Defendants the five days required under the Local Rules to draft their portions for Issue Three. (Ambrosini Decl. ¶ 9 & Exs. E, F.)

EXHIBIT 15 PAGE 239

33

JOINT STIPULATION

1.    **This Motion Was Completely Unnecessary, and Mattel Failed to Make an Honest, Good Faith Effort to Resolve the Issues Without Court Intervention.**

This motion was wholly unnecessary and serves only to "unreasonably and vexatiously" multiply the proceedings in this case in violation of 28 U.S.C. § 1927 ("Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."). *MGA agreed to cooperate with Mattel's request to inspect originals.* MGA simply could not – and still cannot – understand what more Mattel wants to see besides the original artwork, tangibles and invoices that MGA agreed to make available. Although MGA explained this to Mattel, and tried to resolve the issue without burdening the Court, Mattel was apparently eager to bring a motion on even the slightest pretext. Ignoring MGA's questions entirely, it served this Joint Stipulation instead. (Ambrosini Decl. ¶ 6 & Ex. C.)

*Mattel's actions exemplify the sort of unreasonable litigation tactics that the Federal and Local Rules are designed to avoid, and which the Court should not reward.* Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc., 339 F.3d 180, 186-87 (3d Cir. 2003) (reversing sanctions awarded to plaintiff, and noting that "plaintiff's counsel, in its zeal, at times proliferated and complicated the discovery disputes through numerous and lengthy submissions and with an approach best-characterized as 'shoot first and find out later'") (additional quotation marks omitted); Soto v. City of Concord, 162 F.R.D. 603, 623 (N.D. Cal. 1995) (denying motion for sanctions because plaintiff failed to adequately confer, and stating that "sending a letter to the opposing party demanding compliance with a discovery request is not what this Court regards as an earnest attempt to 'meet and confer' on the issues. Rather, a lively exchange of ideas and opinions is required."). Good faith under Rule 37 "contemplates, among other things, honesty in one's purpose to meaningfully discuss the discovery dispute . . . and faithfulness to one's obligation to

34

EXHIBIT 15 PAGE 240

JOINT STIPULATION