Request Nos. 132-137 seek communications with Morad Zarabi regarding Bratz or Bryant and contracts or agreements between MGA or Larian and Morad Zarabi and payments to Morad Zarabi or members of his family since January 1, 2001. Morad Zarabi was the arbitrator in the arbitration proceeding between Isaac Larian and Farhad Larian. These documents are relevant for all of the reasons discussed with respect to the requests regarding Farhad Larian.

Likewise, Request No. 121, which seeks documents relating to the litigation encaptioned *The Ships Carpenter, Inc. v. MGA Entertainment, Inc.* seeks clearly relevant documents.

**Request Nos. 138-146 and 221.** Request Nos. 138-146 seek documents relating to payments or transfers of anything of value to Bryant and others who worked on Bratz or their family members. The Discovery Master has already found that documents regarding payments to Bryant by MGA and others are "relevant to several Mattel claims." For example, the Discovery Master ruled that documents regarding such payments are relevant to Mattel's claims for damages, including the disgorgement of "all benefits Bryant received as a result of his alleged violations of his duties to Mattel" and Mattel's claim for copyright damages. In addition, the Discovery Master also reasoned that such documents "might be traceable to work Bryant performed while employed by Mattel, regardless of when the payments were actually made" and that payments to Bryant "could show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel." (See Discovery Master's Order dated January 25, 2007 at 13-14.) Payments or transfers to Bryant's family members are also relevant to Mattel's claims for damages, particularly if they conceal amounts paid for the benefit of Bryant. Documents regarding payments to Bryant and his family members are relevant to the issue of bias, much like documents relating to fee and indemnity agreements between MGA and Bryant, which the Discovery Master held are "relevant to demonstrate bias and lack of credibility." (Id. at 11-12.)

Documents regarding payments to other individuals who worked on Bratz or their family members are relevant for many of the same reasons. For example, such documents could show the timing of work performed by such individuals for MGA, including work performed in connection with Bratz and while such individuals were still employed by Mattel. In addition, such documents go to the issue of bias and lack of credibility.

Request No. 221, which seeks documents regarding payments of or offers to pay legal fees for individuals who, as of June 8, 2007, were not employees of MGA, also goes to the issue of bias and lack of credibility. The Discovery Master has rejected defendants' attempts to evade providing such discovery more than once.

**Request Nos. 174-175.** These requests seek any personnel file Larian created, controls or maintains concerning Shirin Salemnia and documents sufficient to show the relationship between Larian or any family member of Larian and Salemnia. Salemnia is a former Mattel employee who has also worked for MGA. The requested documents are clearly relevant to a number of Mattel's claims in this lawsuit, including to predicate acts of commercial bribery.

**Request Nos. 180, 198, 200-206 and 212.** These requests seek documents relating to Larian and MGA's targeting and recruiting of Mattel employees and other documents that are

EXHIBIT __4__ , PAGE __332__

relevant to Mattel's claims for trade secret misappropriation. The Discovery Master has already ruled that many of these requests properly sought discoverable and relevant information in granting a Mattel motion to compel against MGA. For example, the Discovery Master found that requests identical to Request Nos. 201 and 212 were proper and ordered MGA to produce documents in response to them. (See Request Nos. 60 and 161 to Mattel's First Set of Requests for Production of Documents and Things Re Claims for Unfair Competition to MGA Entertainment, Inc. and the Discovery Master's Order dated August 13, 2007 regarding the same at 12-14.) Indeed, MGA, recognizing that it has no legitimate objection, previously agreed to produce documents responsive to other requests that are identical to the requests here, including with respect to requests that are identical to Request Nos. 202-203 and 205-206. Larian has no legitimate basis for refusing to do the same.

The remaining requests are also highly relevant. For example, Request No. 204 seeks documents relating to Larian's knowledge of Mattel designs that were never manufactured for sale or placed into the retail market. Larian cannot legitimately dispute that such documents are relevant to Mattel's trade secret claims and defenses to MGA's unfair competition claims.

    **Request No. 190-197 and 199**. These requests seek communications between Larian and members of the press or to financial institutions relating to Bratz, Bryant, Mattel or this action. The requests are narrowly tailored to seek information that goes to the issues in this lawsuit and include requests that the Discovery Master held were proper in granting a Mattel motion to compel against MGA. Larian has no basis for refusing to produce responsive documents.

    **Request Nos. 207-209**. These requests seek information that relates to Larian's financial condition. Such documents are relevant to Mattel's claims against Larian for damages, including punitive damages. Such documents may also show that Larian has siphoned off MGA assets for his own personal benefit and thus are also relevant to Mattel's damages claims against the MGA entities. Request No. 208 seeks information regarding the identity of Larian's accounts with banks and other financial institutions which may lead to information regarding the timing of payments by Larian to Bryant and others which are relevant for all of the reasons discussed above.

    **Request No. 213 and 222-228**. Request No. 213 seeks communications between Larian and any person relating to the retention or destruction of documents or digital information between January 1, 1999 and the present. Larian cannot legitimately claim that such documents are not relevant, particularly in light of the positions that defendants recently took on their unsuccessful motion for terminating sanctions. Indeed, MGA has conceded that it must produce all responsive, non-privileged documents in response to this same requests. (See MGA's Supplemental Response to Request For Production No. 163 to Mattel's First Set of Requests for Production of Documents and Things Re Unfair Competition.) Request Nos. 222-228 seek digital storage devices and documents relating to digital storage devices used by Larian and Bryant to create, prepare, generate, copy, transmit, receive, delete or modify digital information relating to Bratz or Angel or (in the case of Larian) Bryant or (in the case of Bryant) MGA. These requests seek information that is relevant to numerous issues in this lawsuit, including the conception, creation and design of Bratz and the timing thereof.

EXHIBIT __4__ , PAGE __333__

**Request Nos. 216 and 276**. Request No. 216 seeks documents relating to any facts underlying Mattel's claims for relief and Request No. 276 seeks documents, to the extent not produced in response to other requests, upon which Larian intends to rely in this action. Larian has no plausible grounds for refusing to produce these documents. Indeed, the Discovery Master has already held that a request identical to Request No. 276 was proper. (See Request No. 166 to Mattel's First Set of Requests for Production of Documents and Things Re Claims for Unfair Competition to MGA Entertainment, Inc. and the Discovery Master's Order dated August 13, 2007 regarding the same at 11-12.)

**Request Nos. 219-220**. In his Order dated May 15, 2007, the Discovery Master ordered MGA to produce all documents that refer or relate to "any testing of or sampling from any documents that refer or relate to Bratz or Bryant, including without limitation any such testing or sampling in connection with ink, paper or chemical analysis to date" other than expert reports. The Discovery Master rejected all of MGA's objections, including MGA's objection that the request was premature and called for information that is the subject of expert testimony. (See Discovery Master's Order dated May 15, 2007 at 11.) Indeed, as you know, Judge Infante and Judge Larson both have upheld as proper a Rule 30(b)(6) topic seeking such information and rejected MGA's objections to it. Mattel is entitled to documents regarding Larian's knowledge of such testing (Request No. 219) and documents relating to Erich Speckin, the individual who performed at least some of these tests (Request No. 220) for the same reasons.

**Request Nos. 231-237, 240-246, 248-250, 253-354, 258-260 and 262-269.** Each of these requests seeks documents relating to Mattel's claims for damages. Larian has no basis for refusing to produce them.

**Request Nos. 272-273**. These requests seek documents relating to the ownership of MGA Entertainment HK Limited and MGAE de Mexico, S.r.l. de C.V., both which are named defendants in this lawsuit. Larian has no legitimate basis for refusing to produce them.

**Request Nos. 274-275**. These requests seek an electronic copy of and the metadata for documents that were created, prepared, generated, maintained or transmitted in digital form. Mattel is clearly entitled to this information, and Larian should produce it.

Larian has no basis for refusing to produce any of the requested documents. As shown above, the documents sought are clearly relevant and indeed, as to many of them, the Discovery Master has so found, sometimes more than once. Nor are the requests overbroad or unduly burdensome. Moreover, as the Discovery Master has already found, any legitimate concerns regarding "confidential, proprietary or commercially sensitive information" are adequately addressed by the protective order in place in this lawsuit.

Unless we can resolve these issues with Larian's responses, Mattel seek relief that asks the Discovery Master to order Larian to provide supplemental responses and produce all responsive non-privileged documents and to impose monetary sanctions.

EXHIBIT __4__, PAGE __334__

**III.     Request Nos. 3-13, 15-45, 58-68, 70-78, 82-92, 94-103, 113, 116-120, 122, 147-173, 176-177, 182-189, 214-215, 217-218, 229-230, 238-239, 247, 251-252, 255-257, 261 and 270-271.**

In response to each of these requests, Larian states that subject to his general and specific objections, he will produce "relevant and responsive non-objectionable documents that it discovers in the course of its reasonable search and diligent inquiry, which are within the permissible scope of discovery, to which no privilege or other protection applies . . . ."

This response is wholly inadequate. It permits Larian to withhold entire categories of responsive documents he unilaterally deems to be not relevant or otherwise "objectionable" without providing Mattel with the slightest hint as to what those documents might be. For all we know, Larian deems all documents responsive to particular requests to be "objectionable" and has no intention of producing anything. Even if Larian intends to produce some responsive documents, neither Mattel--nor the Discovery Master for that matter--has any basis for evaluating the propriety of Larian's decision to withhold other, undisclosed responsive documents.

Indeed, the Discovery Master previously rejected as improper MGA's identical limitation to produce only supposedly "relevant and responsive non-objectionable documents". As you know, in his May 15, 2007 Order, Judge Infante expressly ruled:

> As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted its production to "relevant and responsive non-objectionable documents" or documents "sufficient" to show when events relating to Bratz occurred. These restrictions suggest that MGA might be excluding documents that are responsive to the request based upon its unilateral determination of what is "relevant" or "sufficient." [MGA] shall provide the responses to document requests ordered herein without these restrictions.

That Larian now repeats this improper limitation in his responses to the above requests highlights the continued obstructionist tactics of delay and bad faith exhibited by the MGA defendants throughout the discovery process. We expect this improper limitation to be withdrawn immediately.

Each of the requests, including the categories specifically discussed below, seeks documents that are highly relevant to Mattel's claims and defenses in this lawsuit and Mattel is entitled to all responsive non-privileged documents.

**Request Nos. 3-4, 8-13, 15, 18-19, 24-41, 58-62, 102-103, 155, 157-158, 182-189.** Each of these requests seeks information relating to, among other things, the conception, creation, design and development of Bratz, including the timing thereof. Larian can hardly dispute the relevance of these documents. Indeed, in granting prior Mattel motions to compel, the Discovery Master has already found to be proper requests that are identical to or substantially the same as these requests, including Request Nos. 3, 8-12, 18-19, 24-36, 30-31, 34, 36, 38-39, 41, 61-62, 102-103, 155, 157-158, 182-189. For example, Request No. 8 to Larian seeks documents relating to Bryant's participation in the conception, creation, design, development, sculpting,

**EXHIBIT   4  , PAGE 335**

tooling, production or manufacture of Bratz. The Discovery Master has found, on Mattel motions to compel against both MGA and Bryant, this same request to be proper. (See Request No. 40 to Mattel's First Set of Requests for Production of Documents to Carter Bryant and the Discovery Master's Order dated January 25, 2007 at 12; Request No. 46 to Mattel's First Set of Requests for Production of Documents to MGA Entertainment, Inc. and Discovery Master's Order dated May 15, 2007 at 9.)

Larian's limitation on Request Nos. 19 and 61-62 to documents relating to "Bratz or Prayer Angel" is improper. Each of these requests is tailored to seek information relevant to the claims and defenses in this lawsuit and there is no basis for Larian's unilateral restriction. For example, Request No. 19 seeks documents relating to designs created, authored, conceived of or reduced to practice by Bryant prior to December 31, 2001 in which Larian or MGA purport to own any right, title or interest. Such documents are clearly relevant whether or not Larian or MGA deem them to relate to Bratz or Prayer Angel. Indeed, the Discovery Master has already upheld Mattel document requests identical to Requests Nos. 19 and 61-62 for the time period prior to January 1, 2001.

Likewise, Larian's limitation on Requests Nos. 27, 29 and 33 to documents "related to first generation of Prayer Angel" is improper. The Discovery Master has already rejected similar attempts by MGA to unilaterally restrict the scope of production in this manner.

Larian's attempt to limit Request Nos. 58-59 to documents "received prior to the inception of this litigation" is also without merit. Request No. 58 seeks documents relating to Mattel's consideration or proposed use of "Brats", "Chat Brats" or any variation thereon and relating to the time period prior to December 31, 2001. Request No. 59 seeks documents relating to "Toon Teens." For reasons already repeatedly aired in this case, the requested documents may contain highly relevant information regardless when they were created or received. Similarly, Larian's attempt to limit Request No. 60 to documents "relating to the knowledge prior to the inception of this litigation" is without merit. Request No. 60 seeks documents relating to Larian or MGA's knowledge of "Toon Teens." Among other things, such documents may contain highly relevant admissions -- including to issues of similarity that defendants themselves have put at issue -- regardless of when the knowledge was purportedly received.

Nos. 102-103 seek certain documents relating to Angel. Larian's attempt to restrict these requests to documents he deems to be related to "the achievement of major milestones for Prayer Angels" is improper. The Discovery Master previously found these same requests proper on a Mattel motion to compel against MGA. (See Request Nos. 34 and 35 to Mattel's First Set of Requests for Production of Documents and Tangible Things to MGA Entertainment, Inc. and Order Dated May 15, 2007 with respect thereto.)

**Request Nos. 5-7 and 22.** These requests seek documents regarding payments by Larian or MGA to Bryant. The Discovery Master has already found that "documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims." (See Order Dated January 25, 2007 at 13-14.) Documents relating to any payments by Larian to Bryant are relevant for the same reason. Larian has no basis for refusing to produce all responsive documents.

EXHIBIT __4__, PAGE __336__

**Request Nos. 16-17 and 20-21.** These requests seek documents regarding Larian and MGA's knowledge of Bryant's employment and agreements with and obligations to Mattel. This information is clearly relevant to Mattel's claims in this lawsuit, including its claims for intentional interference with contract, aiding and abetting breach of fiduciary duty and aiding and abetting breach of duty of loyalty.

**Request Nos. 23 and 42-45.** These requests seek documents relating to contracts or agreements between Larian or MGA and Bryant. The Discovery Master has found such information to be discoverable and relevant on two prior Mattel motions to compel that he granted. (See Request No. 1 and 2 to Mattel's First Set of Requests for Production of Documents and Tangible Things to MGA Entertainment, Inc. and Order Dated May 15, 2007 with respect thereto; Request No. 13 to Mattel's First Set of Requests for Production of Documents to Carter Bryant and Order Dated January 25, 2007 with respect thereto.) Larian has no basis for refusing to produce anything less than all documents in response to these same requests and his attempt to unilaterally limit Request No. 42 to documents relating to Bratz and Prayer Angel is completely without merit.

**Request Nos. 63-68, 70-78, 82-92, 94-101 and 159-166.** Each of these requests seek documents concerning Larian and MGA's relationship with individuals involved in the development of Bratz and/or Angel, including (1) documents regarding actual, potential, proposed or contemplated work, activities or services by such individuals for or on behalf of Larian or MGA; (2) documents relating to actual, potential, proposed or contemplated agreements or contracts between such individuals or their family members and Larian or MGA; and (3) documents relating to payments of money or the transfer of anything of value to such individuals or their family members.

Among other things, the requested documents seek information regarding the timing of the conception, creation, design and development of Bratz, which goes to the heart of Mattel's claims in this lawsuit, as well as issues of bias and credibility. Larian's unilaterally imposed restriction to documents dated prior to January 1, 2001 or June 1, 2001 in response to a number of the requests is improper. For example, documents that discuss work these individuals may have performed in connection with the development of Bratz are obviously highly relevant regardless of when such documents were dated. Likewise, documents showing payments to or agreements with such individuals after January or June 2001 are highly relevant to the issue of bias, particularly if such payments were made or agreements entered into during a period of time when such individuals were not providing services to Larian or MGA. And, such payments are relevant to defendants' commercial bribery that serve as predicate acts for Mattel's RICO claims. Indeed, these very issues have been litigated before Judge Infante more than once, and he has rejected attempted limitations by MGA and Bryant that are virtually identical to Larian's here.

Larian's unilaterally imposed restriction to documents relating to Bratz and/or Prayer Angel in response to many of these requests is also improper. For example, documents showing payments to such individuals or their family members may be highly relevant precisely because they are not be related to work performed on Bratz or Prayer Angel or, for that matter, any other work for Larian or MGA.

EXHIBIT __4__, PAGE __337__

Larian's limitation on Request No. 78 to documents "sufficient to show the achievement of major milestones on Prayer Angel dated prior to January 1, 2001" is improper for the several reasons discussed above.

**Request Nos. 116 and 156**. These requests seek communications between Larian or MGA and Bryant regarding Mattel and Mattel employees (No. 116) and documents prepared by or that refer or relate to Mattel that Bryant provided to Larian or MGA (No. 156). The Discovery Master previously ruled that communications between Bryant and MGA regarding Mattel and Mattel employees "unquestionably seek relevant information" because "they will reveal what Mattel information Bryant shared with MGA, if any, and when." (See Request No. 20 to Mattel's First Set of Requests for Production of Documents to Carter Bryant and the Discovery Master's Order dated January 25, 2007 at 15-16.) Request No. 156 likewise seeks relevant information for the same reason.

**Request Nos. 117-120**. These requests seek declarations, affidavits and other sworn statements and testimony regarding Bratz and Angel. The Discovery Master has already found such requests proper. (See Request Nos. 37-40 to Mattel's First Set of Requests for Production of Documents and Tangible Things to MGA Entertainment, Inc. and Order Dated May 15, 2007 with respect thereto.) Judge Infante and Judge Larson further found such information to be discoverable in connection with Mattel's Rule 30(b)(6) notice to MGA.

**Request Nos. 147-154**. Each of these requests seek documents relating to any indemnification Bryant and others (including Paula Garcia, Elise Cloonan and Veronica Marlow) have sought, proposed, requested or obtained in connection with this litigation. In granting Mattel motions to compel against both MGA and Bryant, the Discovery Master has already ruled that documents relating to any indemnification sought, proposed or obtained by Bryant are properly discoverable on grounds that such documents are "relevant to demonstrate bias or lack of credibility." (See Request No. 49 to Mattel's First Set of Requests for Production of Documents and Tangible Things to MGA Entertainment, Inc. and Order Dated May 15, 2007 with respect thereto; Request No. 48 to Mattel's First Set of Requests for Production of Documents to Carter Bryant and Order Dated January 25, 2007 with respect thereto.) Documents relating to indemnification sought, proposed, requested or obtained by others is relevant, and Larian must produce them.

**Request Nos. 167-173 and 176-177**. These requests seek personnel and vendor files Larian created, controlled or maintained concerning Bryant, other individuals involved in the development of Bratz and/or Angel and Farhad Larian. These requests seek documents that are highly relevant to, among other things, the conception, creation, design and development of Bratz and the timing thereof. Indeed, the Discovery Master has already found MGA's personnel and vendor files for Farhad Larian to be relevant for this very reason. (See Request No. 88 to Mattel's First Set of Requests for Production of Documents and Tangible Things to MGA Entertainment, Inc. and Order Dated May 15, 2007 at 9-10.) Moreover, as the Discovery Master previously ruled with respect to the personnel file of Isaac Larian, the protective order in place in this case is sufficient to alleviate any privacy concerns. (See Order Dated May 15, 2007 at 11, n.4.)

EXHIBIT __4__ , PAGE __338__

**Request Nos. 214-215 and 217**.  These requests specifically seek documents and things relating to facts underlying Mattel's claims for relief and Larian's defenses thereto.  Larian has no basis for not producing all responsive documents.  Indeed, the Discovery Master previously found a request that is the same as Request No. 215 to be proper.  (See Request No. 100 to Mattel's First Set of Requests for Production of Documents and Tangible Things to MGA Entertainment, Inc. and Order Dated May 15, 2007 with respect thereto.)

**Request No. 218**.  This request seeks documents relating to testing or sampling from any documents relating to Bratz or Bryant.  The Discovery Master compelled MGA to produce all such responsive documents (other than expert reports).  (See Request No. 92 to Mattel's First Set of Requests for Production of Documents and Tangible Things to MGA Entertainment, Inc. and Order Dated May 15, 2007 with respect thereto.)  And, as you know, both Judge Infante and Judge Larson held that such information was discoverable with respect to Mattel's Rule 30(b)(6) notice to MGA.

**Request Nos. 229-230, 238-239, 247, 251-252, 255-257, 261 and 270**.  Each of these requests seeks documents that are centrally relevant to Mattel's damages claims in this lawsuit, including damages in connection with its claims for copyright infringement.  Moreover, the requests are limited to documents "sufficient to show" the requested information.  Larian has no basis for refusing to produce responsive documents.

**Request No. 271**.  This request merely seeks documents sufficient to show his positions, titles and functions with and relationship to MGA, including without limitation MGA Entertainment HK Limited and MGAE de Mexico, S.r.l. de C.V.  Larian has no basis for refusing to produce responsive documents.

Larian's other boilerplate objections, which it repeats in response to nearly everyone of the above requests, are also without merit. The requests are not overbroad or unduly burdensome and Larian cannot demonstrate otherwise.  And, as stated above, the Discovery Master has already found that any legitimate concerns regarding "confidential, proprietary or commercially sensitive information" are adequately addressed by the protective order in place in this lawsuit.

Absent Larian's agreement to provide a supplement response stating that he will produce all responsive non-privileged documents, Mattel will file a motion to compel a further response to each of these requests and seek sanctions as well.

Please let me know when Larian's counsel is available to meet and confer on these issues within the time required.  I look forward to hearing from you.

Very truly yours,

Scott B. Kidman

EXHIBIT __4__ , PAGE __339__

**Exhibit 5**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 90378)
2    Michael T. Zeller (Bar No. 196417)
   865 South Figueroa Street, 10th Floor
3  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
4  Facsimile: (213) 443-3100

5  Attorneys for Plaintiff
   Mattel, Inc.

6

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                WESTERN DIVISION

11

12  MATTEL, INC., a Delaware          )   Case No. CV 04-3431 NM (RNBx)
    corporation,                      )
13                                    )
              Plaintiff,              )   PLAINTIFF MATTEL, INC.'S
14                                    )   FIRST SET OF REQUESTS FOR
         v.                           )   THE PRODUCTION OF
15                                    )   DOCUMENTS AND TANGIBLE
    CARTER BRYANT, an individual; and )   THINGS TO DEFENDANT
    DOES 1 through 10, inclusive,     )   CARTER BRYANT
16                                    )
              Defendants.             )
17  _____ )

18

19

20

21

22

23

24

25

26

27

28                          EXHIBIT __5__ , PAGE __340__

02284/588892.2

MATTEL'S DOCUMENT REQUESTS

1    Pursuant to Rule 34 of the Federal Rules of Civil Procedure, plaintiff

2   Mattel, Inc. ("Mattel") hereby requests that defendant Carter Bryant produce the

3   following documents and tangible things within thirty days hereof at the offices of

4   Quinn Emanuel Urquhart Oliver & Hedges, LLP, located at 865 South Figueroa

5   Street, 10th Floor, Los Angeles, California 90017-2543. Defendant shall be obligated

6   to supplement responses to these requests at such times and to the extent required by

7   Rule 26(e) of the Federal Rules of Civil Procedure.

8

9                                    Definitions

10

11         1.    "YOU" or "YOUR" means defendant Carter Bryant and any of his

12   current or former agents, representatives, attorneys, employees, predecessors-in-

13   interest and successors-in-interest, and any other PERSON acting on his behalf,

14   pursuant to his authority or subject to his control.

15         2.    "MGA" means MGA Entertainment, Inc., any of its current or

16   former employees, officers, directors, agents, representatives, attorneys, parents,

17   subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest,

18   and any other PERSON acting on its behalf, pursuant to its authority or subject to its

19   control.

20         3.    "BRATZ" means any doll or any portion thereof that is now or has

21   ever been known as, or sold or marketed under, the name "Bratz" (regardless of what

22   such doll is or has been also or previously called) or that is now or has ever been sold

23   or marketed as part of the "Bratz" line, and all prototypes, models, samples and

24   versions of such doll or any portion thereof.

25         4.    "REFER OR RELATE TO" means constituting, embodying,

26   containing, referring to, commenting on, evidencing, regarding, discussing,

27   describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting,

28   contradicting, negating, revoking or otherwise relating to in any manner.

1    5.    "DESIGNS" means any and all works, designs, artwork, sketches,

2  drawings, illustrations, representations, depictions, blueprints, schematics, diagrams,

3  descriptions, sculptures, prototypes, models, samples, reductions to practice,

4  developments, know-how, ideas, concepts, inventions and/or improvements, as well

5  as all other items, things and DOCUMENTS in which any of the foregoing are or

6  have been expressed, embodied, contained, fixed or reflected in any manner, whether

7  in whole or in part.

8    6.    "DOCUMENT" means all "WRITINGS" and "RECORDINGS"

9  as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and

10  Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings

11  and records of every type and description including, but not limited to, contracts,

12  agreements, correspondence, memoranda, letters, facsimiles, electronic mail

13  ("e-mail"), records of telephone conversations, handwritten and typewritten notes of

14  any kind, statements, reports, minutes, recordings, transcripts and summaries of

15  meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes,

16  discs, printouts and records of all types, studies, instruction manuals, policy manuals

17  and statements, books, pamphlets, invoices, canceled checks and every other device

18  or medium by which or through which information of any type is transmitted,

19  recorded or preserved.   Without any limitation on the foregoing, the term

20  "DOCUMENT" shall include all copies that differ in any respect from the original or

21  other versions of the DOCUMENT, including, but not limited to, all drafts and all

22  copies of such drafts or originals containing initials, comments, notations, insertions,

23  corrections, marginal notes, amendments or any other variation of any kind.

24    7.    "COMMUNICATION" or "COMMUNICATIONS" means and

25  includes any disclosure, transfer or exchange of information between two or more

26  PERSONS, whether orally or in writing, including, without limitation, any

27  conversation or discussion by means of meeting, letter, telephone, note,

28

-3-    MATTEL'S DOCUMENT REQUESTS

EXHIBIT  5 , PAGE 342

1  memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or
2  other medium, including without limitation in written, audio or video form.

3       8.    "PERSON" or "PERSONS" means all natural persons,
4  partnerships, corporations, joint ventures and any kind of business, legal or public
5  entity or organization, as well as its, his or her agents, representatives, employees,
6  officers and directors and any one else acting on its, his or her behalf, pursuant to its,
7  his or her authority or subject to its, his or her control.

8       9.    The singular form of a noun or pronoun includes within its
9  meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of
10  the masculine form of a pronoun also includes within its meaning the feminine form
11  of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also
12  within its meaning all other tenses of the verb so used, whenever such construction
13  results in a broader request for information; and "and" includes "or" and *vice versa*,
14  whenever such construction results in a broader disclosure of documents or
15  information.

16
17                    Instructions
18

19       A.    Unless otherwise specified, these requests call for DOCUMENTS
20  prepared on or after January 1, 1995 through the present.  Documents shall be
21  produced in their original file folders, or in lieu thereof, any writing on the file folder
22  from which each such document is taken shall be copied and appended to such
23  document and the person for whom or department, division, or office for which the
24  document or the file folder is maintained shall be identified.

25       B.    In the event that any document called for by these requests is to
26  be withheld on the basis of a claim of privilege or immunity from discovery, that
27  document is to be identified by stating (i) any addressor and addressee; (ii) any
28  indicated or blind copy; (iii) the document's date, subject matter, number of pages,

1   and attachments or appendices; (iv) all persons to whom the document was

2   distributed, shown, or explained; (v) its present custodian; and (vi) the nature of the

3   privilege or immunity asserted.

4           C.      In the event that any document called for by these requests has

5   been destroyed or discarded, that document is to be identified by stating: (i) any

6   addressor and addressee; (ii) any indicated or blind copies; (iii) the document's date,

7   subject matter, number of pages, and attachments or appendices; (iv) all persons to

8   whom the document was distributed, shown, or explained; (v) the date of destruction

9   or discard, manner of destruction or discard, and reason for destruction or discard;

10  (vi) the persons who were authorized to carry out such destruction or discard; and

11  (vii) whether any copies of the document presently exist and, if so, the name of the

12  custodian of each copy.

13

14                          <u>Requests for Production</u>

15

16  <u>REQUEST FOR PRODUCTION NO. 1:</u>

17          All DOCUMENTS that REFER OR RELATE TO any work or services

18  pertaining to dolls, doll accessories or toys that YOU performed for or on behalf of

19  any PERSON other than Mattel, Inc. during the time period(s) that YOU were

20  employed by Mattel, Inc.

21

22  <u>REQUEST FOR PRODUCTION NO. 2:</u>

23          All DOCUMENTS that REFER OR RELATE TO any agreement or

24  contract between YOU and any PERSON pertaining in any manner to any doll, doll

25  accessory or toy that was proposed, offered, discussed, negotiated or executed during

26  the time period(s) that YOU were employed by Mattel, Inc., including without

27  limitation all drafts thereof and all COMMUNICATIONS that REFER OR RELATE

28  TO such agreement or contract.

EXHIBIT  5 , PAGE  344

REQUEST FOR PRODUCTION NO. 3:

All DOCUMENTS that REFER OR RELATE TO DESIGNS that YOU produced, created, authored, conceived of or reduced to practice, whether alone or jointly with others, for or on behalf of any PERSON other than Mattel, Inc. during the time period(s) that YOU were employed by Mattel, Inc.

REQUEST FOR PRODUCTION NO. 4:

All DOCUMENTS that REFER OR RELATE TO DESIGNS for any doll, doll accessory or toy that YOU produced, created, authored, conceived of or reduced to practice, whether alone or jointly with others, prior to October 21, 2000.

REQUEST FOR PRODUCTION NO. 5:

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Mattel, Inc.

REQUEST FOR PRODUCTION NO. 6:

All DOCUMENTS that REFER OR RELATE TO any work or services YOU performed for or on behalf of Mattel, Inc. during the time period(s) that YOU were employed by Mattel, Inc.

REQUEST FOR PRODUCTION NO. 7:

All DOCUMENTS that REFER OR RELATE TO DESIGNS that YOU produced, created, authored, conceived of or reduced to practice, whether alone or jointly with others, for or on behalf of Mattel, Inc. during the time period(s) that YOU were employed by Mattel, Inc.

EXHIBIT _5_ , PAGE _345_

**REQUEST FOR PRODUCTION NO. 8:**

DOCUMENTS sufficient to identify each and every PERSON for whom or on whose behalf YOU have performed any work or services, including without limitation any freelance work or consulting services, since January 1, 1995.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS that REFER OR RELATE TO any copyright, patent or any other application or registration for DESIGNS that YOU produced, created, authored, conceived of or reduced to practice, whether alone or jointly with others, since January 1, 1995, including without limitation all COMMUNICATIONS pertaining thereto.

**REQUEST FOR PRODUCTION NO. 10:**

All DOCUMENTS that REFER OR RELATE TO work or services, including without limitation any freelance work or consulting services, that YOU performed for or on behalf of MGA during that time period(s) that YOU were employed by Mattel, Inc.

**REQUEST FOR PRODUCTION NO. 11:**

All DOCUMENTS that REFER OR RELATE TO work or services, including without limitation any freelance work or consulting services, that YOU performed for or on behalf of MGA prior to October 21, 2000.

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS that REFER OR RELATE TO work or services, including without limitation any freelance work or consulting services, that YOU performed for or on behalf of MGA after October 20, 2000.

EXHIBIT __5__ , PAGE 346

MATTEL'S DOCUMENT REQUESTS

1  REQUEST FOR PRODUCTION NO. 13:

2          All DOCUMENTS that REFER OR RELATE TO any agreement or

3  contract between YOU and MGA, including without limitation all drafts thereof and

4  all COMMUNICATIONS that REFER OR RELATE TO such agreement or contract.

5

6  REQUEST FOR PRODUCTION NO. 14:

7          All DOCUMENTS that REFER OR RELATE TO DESIGNS that YOU,

8  whether alone or jointly with others, produced, created, authored, conceived of or

9  reduced to practice during the time period(s) of YOUR employment by Mattel, Inc.

10  and that YOU have purported to license, offer for license, sell, offer for sale, convey,

11  assign or transfer any right, title or interest in (whether in whole or in part) to any

12  PERSON other than Mattel, Inc., including without limitation to MGA.

13

14  REQUEST FOR PRODUCTION NO. 15:

15          All DOCUMENTS that REFER OR RELATE TO DESIGNS produced,

16  created, authored, conceived of or reduced to practice prior to October 21, 2000 by

17  YOU, whether alone or jointly with others, that YOU have purported to license, offer

18  for license, sell, offer for sale, convey, assign or transfer any right, title or interest in

19  (whether in whole or in part) to any PERSON other than Mattel, Inc., including

20  without limitation to MGA.

21

22  REQUEST FOR PRODUCTION NO. 16:

23          All DOCUMENTS that REFER OR RELATE TO DESIGNS produced,

24  created, authored, conceived of or reduced to practice after October 20, 2000 by

25  YOU, whether alone or jointly with others, that YOU have purported to license, offer

26  for license, sell, offer for sale, convey, assign or transfer any right, title or interest in

27  (whether in whole or in part) to MGA.

28

EXHIBIT __5__, PAGE 347

REQUEST FOR PRODUCTION NO. 17:

All DOCUMENTS that REFER OR RELATE TO DESIGNS that YOU created, authored, produced, conceived of or reduced to practice during the time period(s) of YOUR employment by Mattel, Inc. as purported "works-made-for-hire" (whether in whole or in part) for or on behalf of MGA.

REQUEST FOR PRODUCTION NO. 18:

All DOCUMENTS that REFER OR RELATE TO DESIGNS that YOU created, authored, produced, conceived of or reduced to practice prior to October 21, 2000 as purported "works-made-for-hire" (whether in whole or in part) for or on behalf of MGA.

REQUEST FOR PRODUCTION NO. 19:

All DOCUMENTS that REFER OR RELATE TO DESIGNS that YOU created, authored, produced, conceived of or reduced to practice after October 20, 2000 as purported "works-made-for-hire" (whether in whole or in part) for or on behalf of MGA.

REQUEST FOR PRODUCTION NO. 20:

All COMMUNICATIONS between YOU and MGA that REFER OR RELATE TO Mattel, Inc. or any officer, director, employee or representative of Mattel, Inc.

REQUEST FOR PRODUCTION NO. 21:

All COMMUNICATIONS between YOU and any PERSON, including without limitation MGA, that REFER OR RELATE TO any of YOUR agreements or contracts with Mattel, Inc.

EXHIBIT __5__, PAGE 348

**REQUEST FOR PRODUCTION NO. 22:**

All COMMUNICATIONS between YOU and MGA that REFER OR RELATE TO any work or services that YOU performed for or on behalf of Mattel, Inc. or YOUR employment by Mattel, Inc.

**REQUEST FOR PRODUCTION NO. 23:**

All DOCUMENTS that REFER OR RELATE TO COMMUNICATIONS between YOU and any officer, director, employee or representative of Mattel, Inc. that REFER OR RELATE TO MGA or BRATZ.

**REQUEST FOR PRODUCTION NO. 24:**

All COMMUNICATIONS between YOU and any PERSON that REFER OR RELATE TO BRATZ, including without limitation to any DESIGNS for BRATZ, prior to October 21, 2000.

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS that REFER OR RELATE TO COMMUNICATIONS between YOU and MGA prior to October 21, 2000, including without limitation all COMMUNICATIONS between YOU and MGA concerning YOUR performing work or services for or on behalf of MGA.

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS that REFER OR RELATE TO COMMUNICATIONS between YOU and MGA after October 20, 2000.

**REQUEST FOR PRODUCTION NO. 27:**

All COMMUNICATIONS between YOU and any PERSON, including without limitation MGA, that REFER OR RELATE TO any DESIGNS that YOU

1 produced, created, authored, conceived of or reduced to practice, whether alone or
2 jointly with others, during the time period(s) that YOU were employed by Mattel, Inc.

3

4 REQUEST FOR PRODUCTION NO. 28:

5      All DOCUMENTS that REFER OR RELATE TO any payment of money
6 or consideration made to YOU or for YOUR benefit by any PERSON other than
7 Mattel, Inc., including without limitation by MGA, for work, activities or services
8 that YOU performed during the time period(s) that YOU were employed by Mattel,
9 Inc.

10

11 REQUEST FOR PRODUCTION NO. 29:

12      All DOCUMENTS that REFER OR RELATE TO any payment of money
13 or consideration made to YOU or for YOUR benefit by any PERSON other than
14 Mattel, Inc., including without limitation by MGA, for DESIGNS that YOU
15 produced, created, authored, conceived of or reduced to practice, whether alone or
16 jointly with others, during the time period(s) that YOU were employed by Mattel, Inc.

17

18 REQUEST FOR PRODUCTION NO. 30:

19      All DOCUMENTS that REFER OR RELATE TO any payment of money
20 or consideration made to YOU or for YOUR benefit by MGA for services or work
21 that YOU performed for or on behalf of MGA during the time period(s) that YOU
22 were employed by Mattel, Inc.

23

24 REQUEST FOR PRODUCTION NO. 31:

25      All DOCUMENTS that REFER OR RELATE TO any payment of money
26 or consideration made to YOU or for YOUR benefit by MGA for services or work
27 that YOU performed for or on behalf of MGA prior to October 21, 2000.

28

**EXHIBIT  5  , PAGE 350**

1    REQUEST FOR PRODUCTION NO. 32:

2            All DOCUMENTS that REFER OR RELATE TO any payment of money

3    or consideration made to YOU or for YOUR benefit by MGA for services or work

4    that YOU performed for or on behalf of MGA after October 20, 2000.

5

6    REQUEST FOR PRODUCTION NO. 33:

7            All DOCUMENTS that REFER OR RELATE TO any payment of money

8    or consideration made to YOU or for YOUR benefit by MGA for any DESIGNS, or

9    for any right, title or interest in any DESIGNS, that YOU produced, created, authored,

10   conceived of or reduced to practice, whether alone or jointly with others, prior to

11   October 21, 2000.

12

13   REQUEST FOR PRODUCTION NO. 34:

14           All DOCUMENTS that REFER OR RELATE TO any payment of money

15   or consideration made to YOU or for YOUR benefit by MGA for any DESIGNS, or

16   for any right, title or interest in any DESIGNS, that YOU produced, created, authored,

17   conceived of or reduced to practice, whether alone or jointly with others, after

18   October 20, 2000.

19

20   REQUEST FOR PRODUCTION NO. 35:

21           All of YOUR royalty statements from MGA.

22

23   REQUEST FOR PRODUCTION NO. 36:

24           All DOCUMENTS that REFER OR RELATE TO BRATZ, including

25   without limitation all DOCUMENTS that REFER OR RELATE TO the conception,

26   creation, design, development, engineering or sculpting of BRATZ.

27

28                              **EXHIBIT** 5 **, PAGE** 351

**REQUEST FOR PRODUCTION NO. 37:**

All DOCUMENTS that REFER OR RELATE TO work, activities or services that YOU performed concerning BRATZ during the time period(s) that YOU were employed by Mattel, Inc.

**REQUEST FOR PRODUCTION NO. 38:**

All DOCUMENTS that REFER OR RELATE TO work, activities or services that YOU performed concerning BRATZ prior to October 21, 2000.

**REQUEST FOR PRODUCTION NO. 39:**

All DOCUMENTS that REFER OR RELATE TO work, activities or services that YOU performed concerning BRATZ after October 20, 2000.

**REQUEST FOR PRODUCTION NO. 40:**

All DOCUMENTS that REFER OR RELATE TO YOUR participation in the conception, creation, design, development, sculpting, tooling, production or manufacture of BRATZ.

**REQUEST FOR PRODUCTION NO. 41:**

All DOCUMENTS that REFER OR RELATE TO DESIGNS for BRATZ.

**REQUEST FOR PRODUCTION NO. 42:**

All DOCUMENTS that REFER OR RELATE TO DESIGNS for BRATZ that YOU produced, created, authored, conceived of or reduced to practice, whether alone or jointly with others, during the time period(s) that YOU were employed by Mattel, Inc.

EXHIBIT 5 , PAGE 350

REQUEST FOR PRODUCTION NO. 43:

All DOCUMENTS that REFER OR RELATE TO any right, title or interest that YOU claim, or ever have claimed, to have or own in BRATZ or any DESIGN for BRATZ.

REQUEST FOR PRODUCTION NO. 44:

All DOCUMENTS that REFER OR RELATE TO any amount that YOU have been paid for the license, sale, conveyance, assignment or transfer of any right, title or interest that YOU claim, or ever have claimed, to have or own in BRATZ or any DESIGN for BRATZ.

REQUEST FOR PRODUCTION NO. 45:

All DOCUMENTS that REFER OR RELATE TO any amount that YOU have been paid by any PERSON other Mattel, Inc. for the license, sale, conveyance, assignment or transfer of any right, title or interest in any DESIGN, including without limitation for any DESIGN for BRATZ, that YOU produced, created, authored, conceived of or reduced to practice, whether alone or jointly with others, during the time period(s) that YOU were employed by Mattel, Inc.

REQUEST FOR PRODUCTION NO. 46:

All DOCUMENTS that REFER OR RELATE TO any work, activities or services that YOU performed in connection with dolls, doll accessories or toys between April 30, 1998 and January 4, 1999.

REQUEST FOR PRODUCTION NO. 47:

All DOCUMENTS that REFER OR RELATE TO DESIGNS for dolls, doll accessories or toys that YOU produced, created, authored, conceived of or

EXHIBIT 5 , PAGE 353

1  reduced to practice, whether alone or jointly with others, between April 30, 1998 and
2  January 4, 1999.

3

4  REQUEST FOR PRODUCTION NO. 48:

5            All DOCUMENTS that REFER OR RELATE TO this action, including
6  without limitation all DOCUMENTS that REFER OR RELATE TO any
7  indemnification that YOU have sought, proposed, requested or obtained in
8  connection with the claims asserted in this action.

9

10 REQUEST FOR PRODUCTION NO. 49:

11           All DOCUMENTS that YOU obtained during the course of YOUR
12 employment by Mattel, Inc. that REFER OR RELATE TO dolls, doll accessories or
13 toys.

14

15 REQUEST FOR PRODUCTION NO. 50:

16           All DOCUMENTS that REFER OR RELATE TO Mattel, Inc., or that
17 were prepared, authored or created by Mattel, Inc. or any officer, director, employee
18 or representative of Mattel, Inc., that YOU have ever provided to, shown, described
19 to, communicated to or disclosed in any manner to MGA.

20

21 REQUEST FOR PRODUCTION NO. 51:

22           All prototypes, models and samples that REFER OR RELATE TO
23 DESIGNS that YOU produced, created, authored, conceived of or reduced to
24 practice, whether alone or jointly with others, during the time period(s) that YOU
25 were employed by Mattel, Inc.

26

27

28

EXHIBIT __5__, PAGE 354

MATTEL'S DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 52:**

All prototypes, models, samples and tangible items that REFER OR RELATE TO DESIGNS for dolls, doll accessories or toys that YOU produced, created, authored, conceived of or reduced to practice, whether alone or jointly with others, prior to October 21, 2000.

**REQUEST FOR PRODUCTION NO. 53:**

All prototypes, models, samples and tangible items that REFER OR RELATE TO DESIGNS for dolls, doll accessories or toys that YOU produced, created, authored, conceived of or reduced to practice, whether alone or jointly with others, after October 20, 2000.

**REQUEST FOR PRODUCTION NO. 54:**

All prototypes, models, samples and tangible items that REFER OR RELATE TO BRATZ.

**REQUEST FOR PRODUCTION NO. 55:**

All DOCUMENTS and all prototypes, models, samples and tangible items that support, refute or otherwise REFER OR RELATE TO any facts underlying YOUR Affirmative Defenses in this action.

DATED:  June 14, 2004

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP

By _Michael T. Zeller_
Michael T. Zeller
Attorneys for Plaintiff
Mattel, Inc.

EXHIBIT 5 , PAGE 355

**PROOF OF SERVICE**

1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES )

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 1055 W. 7th Street, Suite 250, Los Angeles, CA 90017.

On June 14, 2004, I served the foregoing document(s) described as **PLAINTIFF MATTEL, INC.'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND TANGIBLE THINGS TO DEFENDANT CARTER BRYANT** on all interested parties in this action.

**Robert F. Millman, Esq.**
**Doughlas A. Wickham, Esq.**
**Littler Mendelson**
**A Professional Corporation**
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107

[ ]   By placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

[ ]   **BY MAIL**

[ ]   I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

[ ]   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]   **BY OVERNIGHT COURIER** I caused each envelope with postage prepaid to be sent by Federal Express.

[ ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth below on this date.

[X]   **BY PERSONAL SERVICE** I delivered such envelope by hand to the addressee.

Executed on June 14, 2004, at Los Angeles, California.

[ ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Stephen D. Gilroth
Print Name

_(signature)_
Signature

**EXHIBIT 5 , PAGE 35b**

**Exhibit 6**

CONFORMED COPY                    FILED

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, CA 94111
415-774-2611
415-982-5287 (fax)

2007 JAN 26  PM 12: 25

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>    Defendant.<br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL,<br>INC. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING MATTEL'S<br>MOTION TO COMPEL PRODUCTION<br>OF DOCUMENTS** |

## I. INTRODUCTION

On January 3, 2007, Mattel, Inc. ("Mattel") submitted its Motion to Compel Production of Documents to the undersigned Discovery Master for disposition.[1] On January 11, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on January 18, 2007, Mattel submitted a reply brief. The matter was heard via telephonic conference call on January 24, 2007. Having

---

[1] Pursuant to a stipulation and order filed December 6, 2006, the undersigned was designated Discovery Master in accordance with Rule 53 of the Federal Rules of Civil Procedure.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1

EXHIBIT __6__, PAGE __357__    1-26

considered the motion papers and comments of counsel at the hearing, Mattel's Motion to Compel

Production of Documents is GRANTED.

## II. BACKGROUND

At the heart of this lawsuit is a dispute over the rights to the "Bratz" dolls. This highly
lucrative line of dolls was first conceived by Bryant, a former Mattel employee, and made
commercially available by MGA Entertainment, Inc. ("MGA") in the summer of 2001. Sales of
Bratz dolls now rival Mattel's Barbie doll.

A. Mattel's Original Complaint

On April 27, 2004, Mattel, the world's largest manufacturer and marketer of toys, filed
suit against its former employee Bryant in state court asserting claims for breach of contract,
breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel
employed Bryant as a product designer from September 1995 through April 1998, and from
January 1999 through October 2000. Upon starting his second term, Bryant signed an Employee
Confidential Information and Inventions Agreement which required him not to engage in any
employment or business other than for Mattel, or invest or assist in any manner any business
competitive with the business or future business plans of Mattel. Bryant also assigned to Mattel
all rights, title, and interest in the "inventions" he conceived of, or reduced to practice, during his
employment.

In addition, Bryant completed Mattel's Conflict of Interest Questionnaire, certifying that
he had not worked for any of Mattel's competitors in the prior twelve months and had not
engaged in any business dealings creating a conflict of interest. Bryant agreed to notify Mattel of
any future events raising a conflict of interest.

Mattel alleges that during his employment, Bryant secretly aided, assisted and worked for
a Mattel competitor (later identified as MGA). Bryant entered into an agreement with MGA to

EXHIBIT __6__, PAGE 358

provide product design services on a "top priority" basis.[2] The agreement further provided that Bryant would receive royalties and other consideration for sales of products on which he provided aid or assistance; that all work and services furnished by Bryant to MGA under the agreement would be considered "works for hire"; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to MGA. Mattel further alleges that Bryant converted, misappropriated and misused Mattel property and resources while he was employed at Mattel. In the complaint, Mattel claims ownership of all inventions and works created by Bryant during his Mattel employment and seeks to recover all benefits obtained as a result of his alleged breach of duties.

In May of 2004, Bryant removed the state court action to the U.S. District Court, asserting subject matter jurisdiction under both 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1332 (diversity jurisdiction). Mattel filed a motion to remand and submitted a copy of Bryant's agreement with Mattel's competitor, namely MGA. The agreement was dated September 18, 2000 – a time when Bryant was still employed by Mattel — and required Bryant to provide MGA with design services for the Bratz dolls. In return, MGA agreed to compensate Bryant at a monthly rate for a period of time and to pay Bryant a 3% royalty on sales of Bratz dolls. In August of 2004, the district court remanded the action.

B. <u>Bryant's Cross-complaint</u>

In September of 2004, after the case was returned to state court, Bryant filed a cross-complaint against Mattel to challenge the legality of Mattel's Employee Confidential Information and Inventions Agreement. Bryant's cross-complaint included claims for unfair competition, rescission, declaratory relief, and fraud.

//

---

[2] Bryant has already produced his agreement with MGA. Therefore, the existence of the agreement does not appear to be in dispute.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT __6__, PAGE 357

### C. Bryant's Second Notice of Removal (CV 04-9059)

In November of 2004, Bryant filed a second notice of removal, once again invoking federal question and diversity jurisdiction. Bryant asserted that Mattel's complaint presented a federal question because events occurring since the first removal and remand demonstrated that Mattel's conversion claim involved the rights to the Bratz dolls, and therefore was preempted by the Copyright Act. Bryant also contended that there was diversity jurisdiction because he and Mattel were citizens of different states and the amount in controversy exceeded the $75,000 jurisdictional limit because the rights to the Bratz dolls were at stake. After the second notice of removal, MGA intervened as a defendant pursuant to a stipulation and order.

### D. Bryant's Declaratory Relief Action Against Mattel (CV 04-9049)

On the same day that Bryant filed his second notice of removal, he also filed a complaint in federal court seeking a declaratory judgment that the Bratz dolls do not infringe Mattel's copyrights in a project known as "Toon Teens."

### E. MGA's Complaint Against Mattel (CV 05-2727)

In April of 2005, MGA filed suit against Mattel alleging essentially unfair competition claims. MGA alleged that Mattel engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products, Bratz television commercials, and Bratz packaging.

### F. Mattel's Second Motion to Remand its Complaint against Bryant

Mattel filed another motion to remand its suit against Bryant. In March of 2005, the district court issued an order denying the motion to remand and certifying the order for interlocutory review. Mattel filed an appeal, and the district court stayed discovery in May of 2005. Discovery did not resume until May 2006, when the Ninth Circuit affirmed the district court ruling. After the stay was lifted the district court consolidated all three actions for all purposes. There is no scheduling order currently in place.

EXHIBIT _6_, PAGE 360

G. _Court Dismisses Bryant's Cross-claims and Declaratory Relief Action_

In July of 2006, the district court dismissed Bryant's cross-claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief may be granted. The district court also dismissed Bryant's declaratory relief action, finding there existed no reasonable apprehension of an imminent copyright infringement claim against him by Mattel based upon Mattel's Toon Teen intellectual property.

H. _Mattel's Counterclaims against MGA_

Mattel sought leave to file an amended complaint in case no. CV 05-9059 to add five defendants and nine new legal claims alleging a wide range of commercial disputes. For example, Mattel's proposed amended complaint contains RICO claims, a trade secret misappropriation claim, and aiding and abetting claims predicated on allegations that MGA cherry-picked certain high ranking Mattel executives or designers and then enticed them to steal Mattel's trade and proprietary secrets and deliver them to MGA before beginning work with MGA. Mattel also sought leave to add a copyright infringement claim. Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various Bratz doll designs created by Bryant.

On January 11, 2007, the district court granted Mattel leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the case MGA filed against Mattel, CV 05-2727. The next day, Mattel filed its amendments as ordered in case no. CV 05-2727.

I. _Mattel's Requests for Production of Documents_

Mattel served the requests for production of documents at issue in this motion on June 14, 2004. Bryant served objections and responses on July 16, 2004. The parties met and conferred, but ultimately Mattel moved to compel production in January of 2005. That motion, however,

EXHIBIT _6_, PAGE _361_

1   was not heard before the district court stayed all discovery pending resolution of Mattel's appeal

2   to the Ninth Circuit on subject matter jurisdiction issues.

3       After the stay of discovery was lifted, the parties met and conferred on June 20, 2006, at

4   the courthouse, and were able to achieve apparent agreement on the bulk of the present motion to

5   compel. The parties informed the court that they would submit a stipulation and order. See

6   Minutes dated June 20, 2006, Zeller Dec. Ex. 6 ("With respect to Mattel's Motion to Compel

7   Production of Documents, counsel will be submitting a stipulation and order which will be

8   dispositive of all the issues in dispute.").

9       Over the next several months, the parties exchanged draft stipulations and orders to

10  memorialize the parties' meet and confer session, but were unable to reach final agreement

11  because Bryant insisted upon including the following sentence in the stipulation: "The stipulation

12  resolves all issues raised in Mattel's motion to compel, which is hereby withdrawn." Bryant's

13  Opposition at 1:18-20. By including this sentence, Bryant intended to prevent further law and

14  motion regarding the requests at issue in Mattel's original motion to compel. Id. at 1:21-23.

15  From Mattel's perspective, however, the proposed sentence amounted to a demand that Mattel

16  waive its right to all further discovery in connection with its requests. Mattel proposed the

17  following provision as an alternative:

18          Except as, and only as set forth in the terms of Paragraph One above, nothing in
            this Stipulation shall preclude or limit Mattel from seeking further discovery on
19          any matter, including as to matter on which the parties could not reach complete
            agreement, or preclude or limit any right of Bryant to object or resist to such
20          discovery.

21  Bryant's Opposition at 7:5-11. Apparently Mattel's alternative language was

22  unacceptable to Bryant. At the direction of the Discovery Master, the parties met and

23  conferred again in late December 2006, but to no avail.

24      Despite the parties' inability to reach final agreement, Bryant produced approximately

EXHIBIT _6_, PAGE _362_

1,600 pages of documents to date. Mattel contends, however, that the production is inadequate and consistent with a pattern of stonewalling.[3] Accordingly, Mattel filed the instant motion to compel responsive documents, which includes a request for sanctions in the amount of $7,805.

    J.   Mattel's Motion to Compel Production of Documents

    Mattel's motion has three parts. First, Mattel seeks an order compelling Bryant to produce the following categories of requested documents: (a) documents relating to Bratz designs created by Bryant while employed by Mattel; (b) doll prototypes created by Bryant while working for Mattel; (c) documents that refer to the conception, creating or development of Bratz; (d) Mattel-related documents that Bryant disclosed to MGA; (e) communications between Bryant and MGA that relate to Mattel or Mattel employees; and (f) documents showing what dolls Bryant was exposed to while working at Mattel. Mattel's Motion at 6. Mattel asserts that these categories of documents are relevant to establish Bryant's liability and would reveal works rightfully owned by Mattel.

    Second, as to other categories of documents which Bryant has agreed to produce, Mattel contends that Bryant has imposed unjustified limitations. According to Mattel, Bryant will not produce any responsive documents that were created after the suit was filed; Bryant will not produce any communications with MGA "created" after the end of his Mattel employment; Bryant is limiting production of Bratz-related documents to designs that, in Bryant's view, "resulted in" the first line of Bratz dolls released in June 2001; Bryant has not produced known contracts between him and MGA and refuses to produce non-privileged communications relating to those contracts; and Bryant has withheld all but one category of financial documents relating to

---

[3]  According to Mattel, Bryant evaded a deposition until Mattel obtained a court order compelling him to appear. Similarly, MGA allegedly refused to permit its CEO, Isaac Larian, from being deposed. Mattel again obtained a court order compelling the deposition and sanctions. To date, only Bryant and Larian have been deposed.

EXHIBIT 6 , PAGE 363

his earnings from his work for MGA.  Mattel's Motion at 7.  Mattel seeks full production of responsive documents without any of the limitations described above.

Third, Mattel contends that the documents Bryant has produced are inadequate for a number of reasons: the financial documents are so heavily redacted they are useless; faxed documents are missing fax header information, including the sending and receiving parties[4]; e-mails and other electronic documents that are known to exist have not been produced; Bryant refuses to inspect, and refuses to permit Mattel to inspect, the hard drive of a computer he used during the relevant period; and Bryant's privilege log is facially incomplete and lists only four documents.

K. Bryant's Opposition to Mattel's Motion to Compel

Bryant opposes Mattel's motion to compel.  He views the motion as nothing more than Mattel's unwillingness to allow closure on any discovery matter after a lengthy meet and confer process which began back in 2004.  Bryant emphasizes that the document requests at issue were first propounded at a time when Mattel was attempting to remand the case, making the claim that it did not know whether $75,000 was in controversy and insisting that it was asserting solely state law claims.  Bryant explains that given Mattel's view of the case in 2004, he took the position that discovery should be limited to what occurred in his last days at Mattel and shortly thereafter.  See Bryant's Opposition at 4-5 ("Bryant's activities and earnings in connection with Bratz in later years could have no conceivable relevance to the case because if those activities and earnings were at stake, the case was worth millions, not pennies.").  Accordingly, in the summer and fall of 2004, he produced the following categories of documents:  documents evidencing the artwork used to create the "First Generation" of Bratz dolls – the first dolls sold to the public in the summer of 2001; hundreds of pieces of artwork he was permitted to retain from his employment

---

[4]  There is evidence that MGA's CEO instructed an employee to obliterate the fax header on a fax Bryant sent to MGA from Mattel's Design Center.  MGA denies the accusation.

EXHIBIT 6 , PAGE 364

at Mattel; MGA statements revealing his earnings connected with the sale of the First Generation Bratz dolls and his 2000 contract with MGA; personal phone records and bank records; and hundreds of three dimensional doll parts and toy accessories that came into his possession over the years, including a prototype of the First Generation "Jade" doll.

Bryant generally agrees with Mattel's description of the meet and confer session held at the courthouse on June 20, 2006 and the parties' exchange of draft stipulations. According to Bryant, all the requests addressed in Mattel's original motion to compel and the instant motion led to agreement on the following points: (a) Bryant would produce all agreements for work he performed with or on behalf of MGA prior to June 30, 2001 (the approximate date the First Generation Bratz dolls were released to the public); (b) Bryant would waive the attorney-client privilege with respect to communications with the attorney who assisted him in negotiating his contract with MGA, so long as that waiver would be limited and in no way waive the privilege with respect to litigation counsel; (c) Bryant would produce any documents relating to any payments he received from MGA while employed at Mattel, irrespective of the date of creation; (d) Bryant agreed to make a diligent search for all computers referenced in his deposition and search them for responsive documents; (e) Bryant agreed to produce all documents and tangible things obtained from Mattel during the course of his employment at Mattel; (f) Bryant agreed to conduct a search and produce any patent, trademark or copyright applications, registrations and other non-privileged documents in his possession in connection with his work with MGA prior to June 2001; (g) Bryant agreed to identify documents responsive to particular requests if Mattel could demonstrate that the requests asked for such identification of documents; (h) Bryant agreed to sign a verification that none of the information redacted from his phone records related to Bratz or his work for MGA prior to June 30, 2001; (i) Bryant agreed to supplement his privilege log; and (j) the parties agreed that the stipulation modified Bryant's prior response to the discovery

EXHIBIT __6__, PAGE __365__

requests and that the stipulation controlled to the extent they were inconsistent.  Bryant's Opposition at 5:22-6:21.

Bryant emphasizes that the parties have engaged in an extensive meet and confer process and asks the Discovery Master to order the disposition of this motion in a manner consistent with the parties' draft stipulation.  If the draft stipulation is not adopted, Bryant fears the parties will have no incentive to compromise in the future.  Bryant's Opposition at 1:24-2:3.  Bryant also asks the Discovery Master to order Mattel not to revisit any of the requests that were the subject of Mattel's original motion to compel or the instant motion to compel.  Id. at 2:11-13 and 10:9-10.

Furthermore, Bryant asserts that Mattel's requests are overbroad in numerous respects.  In particular, Bryant asserts that Mattel is not entitled to all communications with MGA relating to Mattel employees.  Bryant also asserts that Mattel is not entitled to unredacted personal phone records and financial information because these records are protected by privacy rights.  Lastly, Bryant asserts that Mattel is not entitled to all Bratz related documents created after the lawsuit was filed.

### III.  DISCUSSION

A. The Parties Did Not Reach a Stipulation to Resolve the Instant Motion

The parties' extensive submissions make it clear that the parties did not resolve the issues raised in the instant motion.  The parties met and conferred extensively and in good faith, reaching compromises on virtually all categories of documents in dispute.  Despite their efforts, however, the parties were ultimately unable to execute a binding stipulation because they were unable to agree on any provision to govern Mattel's future right to pursue additional discovery from Bryant.  It is clear that the parties deemed it necessary to include such a provision in the draft stipulation in order to protect their respective positions.  Because the parties did not execute a binding stipulation, there is no legal basis to enforce the terms contained in the draft stipulation.

EXHIBIT __6__ , PAGE __366__

Therefore, Mattel's right to the discovery it seeks in the instant motion to compel is governed by the familiar guidelines set forth in Rule 26 of the Federal Rules of Civil Procedure.

Furthermore, because the parties met and conferred in good faith and because they had a legitimate dispute over language governing Mattel's future right to pursue additional discovery from Bryant, the Discovery Master denies Mattel's request for sanctions.

B. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

C. Mattel's Requests for Production

Request Nos. 2, 13, 48: Documents Relating to Bryant's Agreements with MGA

Mattel seeks documents relating to Bryant's agreements with MGA, including doll-related agreements. Bryant is withholding responsive documents, including (a) documents relating to his Bratz agreements with MGA other than final signed agreements, including communications exchanged by the parties and drafts of the agreements, (b) documents relating to doll-related

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT 6 , PAGE 367

agreements discussed or negotiated by Bryant and third parties while he was employed by Mattel other than signed agreements that were "reached" while Bryant was employed by Mattel, and (c) documents relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action.

The Discovery Master finds that the withheld documents are relevant to Mattel's claims. Among other things, the withheld documents could establish the timing, nature and scope of Bryant's work for MGA (or others), ongoing acts of copyright infringement, and damages. In addition, the withheld documents could be used for impeachment purposes. Further, documents relating to fee or indemnity agreements between MGA and Bryant are relevant to demonstrate bias and lack of credibility. Bryant has failed to establish that the requested discovery is barred by Rule 26(b)(2), Fed.R.Civ.P. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 2, 13, and 48.

Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, 55: Documents Relating to Bratz's Development and Other Projects that Bryant Worked on for MGA

Mattel seeks documents relating to the Bratz project and any other projects Bryant worked on for MGA. Bryant produced documents relating only to the First Generation Bratz dolls. Bryant is prepared to produce additional documents relating to work he performed for MGA prior to June 30, 2001, acknowledging that those documents are relevant to Mattel's claim that Bryant breached his employee agreement by allegedly performing services for Mattel and MGA at the same time. Bryant objects to the requests to the extent they seek any additional documents on relevancy and overbreadth grounds.

The Discovery Master finds that Mattel's requests seek relevant information and are not overbroad. The lawsuit is much broader than the First Generation Bratz dolls issued in June 30, 2001. For example, Mattel alleges that it is entitled all works created by Bryant during his Mattel

EXHIBIT __6__, PAGE __368__

employment, regardless of whether they resulted in a Bratz doll released in June of 2001. Mattel also alleges that Bryant has breached his ongoing contractual duties not to use any of Mattel's confidential and proprietary information, not just information relating to the Bratz dolls released in June of 2001. Mattel also alleges that Bryant has infringed Mattel's alleged copyrights in Bratz works – works that are allegedly owned by Mattel because they were created while Bryant was employed by Mattel – through his ongoing conduct of reproducing and creating derivative works. Accordingly, Bryant is ordered to produce all non-privileged documents responsive to Request Nos. 11, 12, 19, 37, 40, 41, 42, 43, 53, 54, and 55.

Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, 46: Documents Relating to Bryant's Payments from MGA

Mattel seeks documents relating to Bryant's payments from MGA. Bryant acknowledges that Mattel is entitled to know how much money Bryant has earned from MGA, and represents that he has produced, in redacted form, all royalty statements he has received related to the First Generation Bratz dolls and his 2000 contract with MGA. Bryant asserts that his redactions are justified as a means to avoid disclosing the breakdown of MGA's revenue by particular product, which information Bryant believes constitutes MGA's trade secret information. Bryant also objects to producing tax returns, asserting that Mattel cannot show a "compelling need" for the returns. Bryant's Opposition at 29:21-27.

The Discovery Master finds that documents relating to MGA's payments to Bryant, including royalty statements and other payment information, are relevant to several Mattel claims. First, Mattel's claims against Bryant include breach of contract, breach of fiduciary duty, breach of duty of loyalty, unjust enrichment, and conversion. Mattel seeks to recover all benefits Bryant received as a result of his alleged violations of duties to Mattel. Payments to Bryant from MGA and others might be traceable to work Bryant performed while employed by Mattel, regardless of

EXHIBIT 6, PAGE 369

when the payments were actually made.  Such payments might also lead to evidence to support Mattel's allegation that Bryant converted, misappropriated, or misused Mattel information.

Second, the payments are relevant to Mattel's recently added claim for copyright infringement.  Mattel alleges that Bryant, MGA, and others have infringed Mattel's rights in the Bratz drawings and works by copying and preparing derivative works from those works.  Under the Copyright Act, a plaintiff is entitled to recover profits from infringement as well as actual damages.  17 U.S.C. §504(b).  The works that potentially infringe Mattel's copyrights, therefore, include all Bratz doll products that MGA released to the market.  For this reason, and for reasons already discussed in the previous subsection, Bryant's limited production of documents relating to only the First Generation of Bratz dolls is inadequate.

Third, payments to Bryant are relevant to Mattel's recently added claims for trade secret misappropriation.  Payments could show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel.  Any proof of trade secret theft is also relevant to Mattel's defense against MGA's unfair competition claims.

Lastly, the breakdown of gross royalty payments may be required to prove actual causation of damages.

The protective order filed on January 4, 2005, is sufficient to address any confidentiality concerns raised by Bryant.  Among other things, the protective order provides protection for confidential trade secret information.  It has two tiers of protection, allowing a party to designate documents as either "Confidential" or "Confidential – Attorney's Eyes Only."  The protective order also requires the parties to use information produced in discovery only for purposes of this litigation and not for any other purpose.

Accordingly, Bryant is ordered to produce, without redactions, all non-privileged documents responsive to Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.  Bryant,

EXHIBIT __6__ , PAGE __370__

however, is not required to produce tax returns, provided that he otherwise fully complies with these requests as ordered.

Request Nos. 20, 23, 27, 28: Communications Between Bryant and MGA

Mattel seeks production of Bratz-related communications and communications with MGA. More specifically, Mattel seeks production of four categories of documents Bryant has refused to produce: (1) communications between Bryant and MGA or third parties that explicitly relate to designs Bryant created while employed by Mattel; (2) communications between Bryant and MGA that relate to Mattel employees; (3) communications between Bryant and MGA relating to Bryant's Mattel employment or work Bryant performed for Mattel, except those communications "created" prior to the close of Bryant's Mattel employment; and (4) communications between Bryant and MGA that post-date Bryant's Mattel employment. Bryant contends that the discovery requests for communications between Bryant and MGA are overbroad. Bryant asserts that there are many former Mattel employees and friends of his who have privacy rights that would be impinged upon if he were to disclose his communications. Bryant also asserts that he has his own confidentiality interest regarding any information that he shared with MGA. In particular, he objects to Mattel's discovery requests to the extent they would require him to reveal the identity of current Mattel employees seeking employment with MGA or Bryant.

The Discovery Master finds that Mattel's requests for all communications between Bryant and MGA unquestionably seek information relevant to Mattel's claims: they will reveal what Mattel information Bryant shared with MGA, if any, and when. The protective order is sufficient to address Bryant's confidentiality concerns. It allows parties to designate as "Confidential" private information about current or former employees, contractors or vendors (including employee, contractor and personnel records). Therefore, Bryant is ordered to produce all non-

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

15

EXHIBIT  6 , PAGE 371

privileged documents responsive to Request Nos. 20, 23, 27, and 28.  However, Bryant may continue to redact his telephone records, and shall provide a signed verification that none of the telephone calls that were redacted relate or refer in any way to MGA, Bratz, or any other project that Bryant worked on, with, for, or on behalf of MGA.  Telephone calls that do not relate or refer in any way to MGA or Bratz are irrelevant.

<u>Request Nos. 49, 51:  Mattel-Related Documents</u>

Mattel seeks production of Mattel-related documents, and Bryant agrees to produce them. Accordingly, Bryant is ordered to produce all documents responsive to Request Nos. 49 and 51.

<u>Request No. 9:  Documents re Registrations and Applications for Registrations</u>

Lastly, in Request No. 9 Mattel seeks production of documents registrations and registrations and applications for registration.  Bryant deems the motion moot with respect to Request No. 9 because he agrees to produce any patent, copyright and trademark applications, registrations or other non-privileged documents in his possession, custody or control that constitute or relate to such applications and registrations obtained or applied in connection with (1) work on Bratz prior to January 1, 2001; (2) work related to the release of the First Generation Bratz dolls; and (3) work related to any work Bryant performed with, for or on behalf of MGA during the term of Bryant's employment with Mattel.

As discussed previously, the Discovery Master finds that the First Generation Bratz limitation is improper.  Therefore, Bryant is ordered to produce all non-privileged documents responsive to Request No. 9.

IV. CONCLUSION

For the reasons set forth above, the Discovery Master orders as follows:

1.  Mattel's motion to compel production of documents responsive to its First Set of Requests for Production, Request Nos. 2, 9, 11, 12, 13, 19, 20, 23, 27, 28, 29, 30, 31, 32, 33, 34,

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

16

EXHIBIT __6__, PAGE __372__

35, 36, 37, 40, 41, 42. 43. 45, 46, 48, 49, 51, 53, 54, and 55, is GRANTED.  However, Bryant need not produce his tax returns, on the condition that he complies fully with Request Nos. 29, 30, 31, 32, 33, 34, 35, 36, 45, and 46.

2. Bryant shall produce all redacted documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine or his telephone records pursuant to the terms of this Order.

3. Bryant shall serve a complete privilege log in conformity with Rule 26(b)(5), Fed.R.Civ.P.

4. Pursuant to Rule 34, Fed.R.Civ.P., Bryant shall produce the hard drives of his computers for forensic imaging.

5. Bryant shall complete his production by producing missing attachments, fax cover pages and all other missing responsive documents.

6. Mattel's request for an award of sanctions in the amount of $7,805 is DENIED.

7. Bryant shall comply with this Order no later than February 23, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

IT IS SO ORDERED.

Dated: January 25, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

EXHIBIT _6_, PAGE _373_

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 25, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drestagar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Valerie Nannery Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | valerienannery@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchjaklan Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchjakjian@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

EXHIBIT __6__, PAGE 374

**Exhibit 7**

1    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2     Michael T. Zeller (Bar No. 196417)
      Shane H. McKenzie (Bar No. 228978)
3    865 South Figueroa Street, 10th Floor
      Los Angeles, California 90017-2543
4    Telephone: (213) 443-3000
      Facsimile: (213) 443-3100
5
    Attorneys for Plaintiff and Counter-Defendant
6    Mattel, Inc.

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11

12    MATTEL, INC., a Delaware corporation,   )   Case No. CV 04-09059 NM (RNBx)

13             Plaintiff,   )

14        v.   )   MATTEL, INC.'S FIRST SET OF
                                )   REQUESTS FOR PRODUCTION
15    CARTER BRYANT, an individual   )   OF DOCUMENTS AND
                                )   TANGIBLE THINGS TO MGA
16             Defendant.   )   ENTERTAINMENT INC.

17    _____ )

18    CARTER BRYANT, on behalf of himself,   )
      all present and former employees of   )
19    Mattel, Inc., and the general public,   )

20             Counterclaimant,   )

21        v.   )

22    MATTEL, INC., a Delaware corporation,   )

23             Counter-defendant.   )

24

25

26

27

28

ORIGINAL

EXHIBIT 7 , PAGE 375 2/14

07209/642197.1