1    Pursuant to <u>Rule</u> 34 of the <u>Federal Rules of Civil Procedure,</u> Plaintiff
2  and Counter-Defendant Mattel, Inc. hereby requests that MGA Entertainment Inc.
3  make available for inspection and copying the following documents and things
4  within thirty days of the service of these Requests, at the offices of Quinn Emanuel
5  Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th Floor, Los
6  Angeles, California 90036.
7    These Requests shall be deemed to be continuing, and MGA
8  Entertainment Inc. shall be obligated to supplement its responses to these requests
9  at such times and to the extent required by <u>Rule</u> 26(e) of the <u>Federal Rules of Civil</u>
10  <u>Procedure</u>.
11
12                           <u>DEFINITIONS</u>
13
14    For purposes of this Request for Production of Documents:
15    A.    "YOU" or "YOUR" means MGA Entertainment Inc. and any of
16  its current or former employees, officers, directors, agents, representatives,
17  attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and
18  successors-in-interest, and any other PERSON acting on its behalf, pursuant to its
19  authority or subject to its control.
20    B.    "MATTEL" means Mattel, Inc. and any of its current or former
21  employees, officers, directors, agents, representatives, attorneys, subsidiaries,
22  divisions, affiliates, predecessors-in-interest and successors-in-interest, and any
23  other PERSON acting on its behalf, pursuant to its authority or subject to its
24  control.
25    C.    "DOCUMENT" or "DOCUMENTS" means all "writings" and
26  "recordings" as those terms are defined in <u>Rule</u> 34 of the <u>Federal Rules of Civil</u>
27  <u>Procedure</u> and <u>Rule</u> 1001 of the <u>Federal Rules of Evidence,</u> including, but not
28  limited to, all writings and records of every type and description including, but not

07209/642197.1

**EXHIBIT 7 , PAGE 376**

-2-

FIRST REQUEST FOR PRODUCTION TO MGA

1   limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles,

2   electronic mail ("e-mail"), records of telephone conversations, handwritten and

3   typewritten notes of any kind, statements, reports, minutes, recordings, transcripts

4   and summaries of meetings, voice recordings, pictures, photographs, drawings,

5   computer cards, tapes, discs, printouts and records of all types, studies, instruction

6   manuals, policy manuals and statements, books, pamphlets, invoices, canceled

7   checks and every other device or medium by which or through which information

8   of any type is transmitted, recorded or preserved.  Without any limitation on the

9   foregoing, the term "DOCUMENT" shall include all copies that differ in any

10  respect from the original or other versions of the DOCUMENT, including, but not

11  limited to, all drafts and all copies of such drafts or originals containing initials,

12  comments, notations, insertions, corrections, marginal notes, amendments or any

13  other variation of any kind.

14          D.      "REFER OR RELATE TO" means constituting, embodying,

15  containing, referring to, commenting on, evidencing, regarding, discussing,

16  describing, mentioning, reflecting, expressing, pertaining to, concerning,

17  supporting, contradicting, negating, revoking or otherwise relating to in any

18  manner.

19          E.      "PERSON" or "PERSONS" means all natural persons,

20  partnerships, corporations, joint ventures and any kind of business, legal or public

21  entity or organization, as well as its, its or her agents, representatives, employees,

22  officers and directors and any one else acting on its, its or her behalf, pursuant to

23  its, its or her authority or subject to its, its or her control.

24          F.      "BRYANT" means Carter Bryant, any of his current or former

25  agents, representatives, attorneys, employees, partners, joint venturers,

26  predecessors-in-interest and successors-in-interest, and any other PERSON acting

27  on his behalf, pursuant to his authority or subject to his control.

28

EXHIBIT _7_ , PAGE _377_

FIRST REQUEST FOR PRODUCTION TO MGA

G.    "BRATZ" means any project ever known by that name (whether in whole or in part and regardless of what such project is or has been also, previously or subsequently called) and any doll or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such doll is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and all prototypes, models, samples and versions of such doll or any portion thereof.

H.    "ANGEL" means any project that is the subject of MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20, MGA000724-28 and MGA000734, and any doll (sometimes purportedly called "Angel," "Angel Faces" and/or "Prayer Angels") or any portion thereof that is the subject of MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20, MGA000724-28 and MGA000734, including all prototypes, models, samples and versions of such doll(s) or any portion thereof.  Without limiting the generality of the foregoing, "ANGEL" means any project or any doll or any portion thereof that is the subject of MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20, MGA000724-28 and MGA000734, regardless of what any such project or doll has in fact been called, and regardless of what any such project or doll is or has been also, previously or subsequently called.

I.    "DESIGNS" means any and all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, descriptions, sculptures, prototypes, models, samples, reductions to practice, developments, know-how, ideas, concepts, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

EXHIBIT __7__ , PAGE 37ᵇ

-4-

1    J.    "COMMUNICATION" or "COMMUNICATIONS" means and

2   includes any disclosure, transfer or exchange of information between two or more

3   PERSONS, whether orally or in writing, including, without limitation, any

4   conversation or discussion by means of meeting, letter, telephone, note,

5   memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic

6   or other medium, including without limitation in written, audio or video form.

7    K.    The singular form of a noun or pronoun includes within its

8   meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of

9   the masculine form of a pronoun also includes within its meaning the feminine

10   form of the pronoun so used, and *vice versa*; the use of any tense of any verb

11   includes also within its meaning all other tenses of the verb so used, whenever

12   such construction results in a broader request for information; and "and" includes

13   "or" and *vice versa*, whenever such construction results in a broader disclosure of

14   documents or information.

15

16                           <u>INSTRUCTIONS</u>

17

18    A.    Unless otherwise specified, these requests call for

19   DOCUMENTS prepared on or after January 1, 1995 through the present.

20   Documents shall be produced in their original file folders, or in lieu thereof, any

21   writing on the file folder from which each such document is taken shall be copied

22   and appended to such document and the person for whom or department, division,

23   or office for which the document or the file folder is maintained shall be

24   identified.

25    B.    YOU are to produce all DOCUMENTS requested hereby that

26   are in YOUR possession, custody and control.

27    C.    In the event that any document called for by these requests is to

28   be withheld on the basis of a claim of privilege or immunity from discovery, that

-5-

EXHIBIT __7__ , PAGE __379__

FIRST REQUEST FOR PRODUCTION TO MGA

1   document is to be identified by stating (i) any addressor and addressee; (ii) any

2   indicated or blind copy; (iii) the document's date, subject matter, number of pages,

3   and attachments or appendices; (iv) all persons to whom the document was

4   distributed, shown, or explained; (v) its present custodian; and (vi) the nature of

5   the privilege or immunity asserted.

6          D.   In the event that any document called for by these requests has

7   been destroyed or discarded, that document is to be identified by stating: (i) any

8   addressor and addressee; (ii) any indicated or blind copies; (iii) the document's

9   date, subject matter, number of pages, and attachments or appendices; (iv) all

10   persons to whom the document was distributed, shown, or explained; (v) the date

11   of destruction or discard, manner of destruction or discard, and reason for

12   destruction or discard; (vi) the persons who were authorized to carry out such

13   destruction or discard; and (vii) whether any copies of the document presently

14   exist and, if so, the name of the custodian of each copy.

15

16                     REQUESTS FOR PRODUCTION

17

18   REQUEST FOR PRODUCTION NO. 1:

19          All DOCUMENTS that REFER OR RELATE TO any agreement or

20   contract between YOU and BRYANT, including without limitation all drafts

21   thereof and all actual or proposed amendments, modifications and revisions

22   thereto.

23

24   REQUEST FOR PRODUCTION NO. 2:

25          All DOCUMENTS that REFER OR RELATE TO the performance of

26   any agreement or contract between YOU and BRYANT.

27

28

07209/642197.1

-6-

**EXHIBIT ⁊ , PAGE 380**

FIRST REQUEST FOR PRODUCTION TO MGA

REQUEST FOR PRODUCTION NO. 3:

ALL DOCUMENTS that REFER OR RELATE TO the agreement dated as of September 18, 2000 between YOU and BRYANT, including without limitation all drafts thereof and any actual or proposed modifications, amendments or revisions thereto.

REQUEST FOR PRODUCTION NO. 4:

ALL DOCUMENTS that REFER OR RELATE TO the Modification and Clarification of the Agreement dated as of September 18, 2000 between YOU and BRYANT, including without limitation all drafts thereof and any actual or proposed modifications, amendments or revisions thereto.

REQUEST FOR PRODUCTION NO. 5:

ALL DOCUMENTS that REFER OR RELATE TO the agreement dated April 2001 between YOU and BRYANT, including without limitation all drafts thereof and any actual or proposed modifications, amendments or revisions thereto.

REQUEST FOR PRODUCTION NO. 6:

All DOCUMENTS prepared, created, received or transmitted (whether in whole or in part) prior to January 1, 2001 that REFER OR RELATE TO BRYANT.

REQUEST FOR PRODUCTION NO. 7:

All DOCUMENTS that REFER OR RELATE TO any work, activities or services, including without limitation any freelance work or consulting services, that BRYANT performed for or with YOU or on YOUR

EXHIBIT __7__, PAGE __381__

FIRST REQUEST FOR PRODUCTION TO MGA

1  behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was

2  prepared, created, received or transmitted, whether in whole or in part).

3

4  REQUEST FOR PRODUCTION NO. 8:

5       All DOCUMENTS that REFER OR RELATE TO any work,

6  activities or services, including without limitation any freelance work or

7  consulting services, that Anna Rhee performed for or with YOU or on YOUR

8  behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was

9  prepared, created, received or transmitted, whether in whole or in part).

10

11 REQUEST FOR PRODUCTION NO. 9:

12      All DOCUMENTS that REFER OR RELATE TO any work,

13 activities or services, including without limitation any freelance work or

14 consulting services, that Veronica Marlow performed for or with YOU or on

15 YOUR behalf prior to January 1, 2001 (regardless of when any such DOCUMENT

16 was prepared, created, received or transmitted, whether in whole or in part).

17

18 REQUEST FOR PRODUCTION NO. 10:

19      All DOCUMENTS that REFER OR RELATE TO any work,

20 activities or services, including without limitation any freelance work or

21 consulting services, that Sarah Halpern performed for or with YOU or on YOUR

22 behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was

23 prepared, created, received or transmitted, whether in whole or in part).

24

25 REQUEST FOR PRODUCTION NO. 11:

26      All DOCUMENTS that REFER OR RELATE TO any work,

27 activities or services, including without limitation any freelance work or

28 consulting services, that Jesse Ramirez performed for or with YOU or on YOUR

EXHIBIT ____ , PAGE ____

-8-

FIRST REQUEST FOR PRODUCTION TO MGA

1  behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was

2  prepared, created, received or transmitted, whether in whole or in part).

3

4  REQUEST FOR PRODUCTION NO. 12:

5       All DOCUMENTS that REFER OR RELATE TO any work,

6  activities or services, including without limitation any freelance work or

7  consulting services, that Margaret Hatch (also known as Margaret Leahy and/or

8  Margaret Hatch-Leahy) performed for or with YOU or on YOUR behalf prior to

9  January 1, 2001 (regardless of when any such DOCUMENT was prepared,

10  created, received or transmitted, whether in whole or in part).

11

12  REQUEST FOR PRODUCTION NO. 13:

13       All DOCUMENTS that REFER OR RELATE TO any work,

14  activities or services, including without limitation any freelance work or

15  consulting services, that Elise Cloonan performed for or with YOU or on YOUR

16  behalf prior to January 1, 2001 (regardless of when any such DOCUMENT was

17  prepared, created, received or transmitted, whether in whole or in part).

18

19  REQUEST FOR PRODUCTION NO. 14:

20       All agreements and contracts between YOU and Anna Rhee,

21  including without limitation all drafts thereof and amendments, modifications and

22  revisions thereto.

23

24  REQUEST FOR PRODUCTION NO. 15:

25       All DOCUMENTS that REFER OR RELATE TO any agreement or

26  contract between YOU and Anna Rhee, including without limitation all

27  COMMUNICATIONS that REFER OR RELATE thereto.

28

EXHIBIT __7__, PAGE __383__

-9-

FIRST REQUEST FOR PRODUCTION TO MGA

**REQUEST FOR PRODUCTION NO. 16:**

All agreements and contracts between YOU and Veronica Marlow, including without limitation all drafts thereof and amendments, modifications and revisions thereto.

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Veronica Marlow, including without limitation all COMMUNICATIONS that REFER OR RELATE thereto.

**REQUEST FOR PRODUCTION NO. 18:**

All agreements and contracts between YOU and Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), including without limitation all drafts thereof and amendments, modifications and revisions thereto.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), including without limitation all COMMUNICATIONS that REFER OR RELATE thereto.

**REQUEST FOR PRODUCTION NO. 20:**

All agreements and contracts between YOU and Sarah Halpern, including without limitation all drafts thereof and amendments, modifications and revisions thereto.

EXHIBIT __7__ , PAGE __384__

REQUEST FOR PRODUCTION NO. 21:

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Sarah Halpern, including without limitation all COMMUNICATIONS that REFER OR RELATE thereto.

REQUEST FOR PRODUCTION NO. 22:

All agreements and contracts between YOU and Jesse Ramirez, including without limitation all drafts thereof and amendments, modifications and revisions thereto.

REQUEST FOR PRODUCTION NO. 23:

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Jesse Ramirez, including without limitation all COMMUNICATIONS that REFER OR RELATE thereto.

REQUEST FOR PRODUCTION NO. 24:

All agreements and contracts between YOU and Elise Cloonan, including without limitation all drafts thereof and amendments, modifications and revisions thereto.

REQUEST FOR PRODUCTION NO. 25:

All DOCUMENTS that REFER OR RELATE TO any agreement or contract between YOU and Elise Cloonan, including without limitation all COMMUNICATIONS that REFER OR RELATE thereto.

EXHIBIT 7, PAGE 385

FIRST REQUEST FOR PRODUCTION TO MGA

REQUEST FOR PRODUCTION NO. 26:

All DOCUMENTS that REFER OR RELATE TO DESIGNS that BRYANT produced, prepared, created, authored, conceived of or reduced to practice, whether alone or jointly with others, prior to January 1, 2001.

REQUEST FOR PRODUCTION NO. 27:

All DOCUMENTS that REFER OR RELATE TO DESIGNS produced, prepared, created, authored, conceived of or reduced to practice prior to January 1, 2001 by BRYANT, whether alone or jointly with others, in which YOU have purported at any time to purchase, acquire or own any right, title or interest (whether in whole or in part).

REQUEST FOR PRODUCTION NO. 28:

All DOCUMENTS that REFER OR RELATE TO DESIGNS produced, prepared, created, authored, conceived of or reduced to practice prior to January 1, 2001 by Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy), whether alone or jointly with others, in which YOU have purported at any time to purchase, acquire or own any right, title or interest (whether in whole or in part).

REQUEST FOR PRODUCTION NO. 29:

All DOCUMENTS, including without limitation all COMMUNICATIONS between YOU and any PERSON, that REFER OR RELATE TO any agreement or contract between BRYANT and Mattel, Inc.

REQUEST FOR PRODUCTION NO. 30:

All DOCUMENTS, including without limitation all COMMUNICATIONS between YOU and any PERSON, that REFER OR

EXHIBIT 7 , PAGE 386

-12-

FIRST REQUEST FOR PRODUCTION TO MGA

1  RELATE TO any agreement or contract between Margaret Hatch (also known as

2  Margaret Leahy and/or Margaret Hatch-Leahy) and Mattel, Inc.

3

4  REQUEST FOR PRODUCTION NO. 31:

5      All COMMUNICATIONS between YOU and BRYANT that REFER

6  OR RELATE TO Mattel, Inc. or any officer, director, employee or representative

7  of Mattel, Inc.

8

9  REQUEST FOR PRODUCTION NO. 32:

10      All DOCUMENTS prepared, written, transmitted or received

11  (whether in whole or in part) prior to January 1, 2001 that REFER OR RELATE

12  TO BRATZ.

13

14  REQUEST FOR PRODUCTION NO. 33:

15      All DOCUMENTS that REFER OR RELATE TO BRATZ that

16  REFER OR RELATE TO any time prior to January 1, 2001 (regardless of when

17  such document was prepared, written, transmitted or received, whether in whole or

18  in part).

19

20  REQUEST FOR PRODUCTION NO. 34:

21      All DOCUMENTS prepared, written, transmitted or received

22  (whether in whole or in part) prior to January 1, 2001 that REFER OR RELATE

23  TO ANGEL.

24

25  REQUEST FOR PRODUCTION NO. 35:

26      All DOCUMENTS that REFER OR RELATE TO ANGEL that

27  REFER OR RELATE TO any time prior to January 1, 2001 (regardless of when

28

EXHIBIT  7 , PAGE 387

-13-

FIRST REQUEST FOR PRODUCTION TO MGA

such document was prepared, written, transmitted or received, whether in whole or in part).

REQUEST FOR PRODUCTION NO. 36:

All DOCUMENTS that REFER OR RELATE TO the origin(s), conception or creation of BRATZ, including without limitation all DOCUMENTS that REFER OR RELATE TO the timing of, and the method and manner in which, BRATZ first came to YOUR attention.

REQUEST FOR PRODUCTION NO. 37:

All declarations, affidavits and other sworn written statements of any other type or form by YOU that REFER OR RELATE TO BRATZ (other than those previously filed and served in this action).

REQUEST FOR PRODUCTION NO. 38:

All transcripts and video and/or audio recordings of statements made by YOU under oath, including without limitation all deposition transcripts, trial transcripts and arbitration transcripts, that REFER OR RELATE TO BRATZ (other than those taken in this action when Mattel, Inc.'s counsel was in attendance).

REQUEST FOR PRODUCTION NO. 39:

All declarations, affidavits and other sworn written statements of any other type or form by any PERSON that REFER OR RELATE TO ANGEL (other than those previously filed and served in this action).

EXHIBIT ⊥ , PAGE 388

FIRST REQUEST FOR PRODUCTION TO MGA

**REQUEST FOR PRODUCTION NO. 40:**

All transcripts and video and/or audio recordings of statements made by any PERSON under oath, including without limitation all deposition transcripts, trial transcripts and arbitration transcripts, that REFER OR RELATE TO ANGEL (other than those taken in this action when Mattel, Inc.'s counsel was in attendance).

**REQUEST FOR PRODUCTION NO. 41:**

All DOCUMENTS that REFER OR RELATE TO BRATZ and/or ANGEL filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad Larian against Isaac Larian, including without limitation all declarations, affidavits and sworn testimony given by any PERSON in such suit or arbitration proceedings.

**REQUEST FOR PRODUCTION NO. 42:**

All DOCUMENTS that REFER OR RELATE TO any payment made to or on behalf of BRYANT prior to October 21, 2000 or for work or services performed by BRYANT prior to October 21, 2000 regardless of when such payment was actually made.

**REQUEST FOR PRODUCTION NO. 43:**

All DOCUMENTS that REFER OR RELATE TO any payment made to or on behalf of BRYANT for DESIGNS that BRYANT assigned or transferred to YOU prior to October 21, 2000, regardless of when such payment was actually made.

EXHIBIT 7 , PAGE 389

FIRST REQUEST FOR PRODUCTION TO MGA

**REQUEST FOR PRODUCTION NO. 44:**

All DOCUMENTS that REFER OR RELATE TO invoices submitted by BRYANT to YOU prior to January 31, 2001.

**REQUEST FOR PRODUCTION NO. 45:**

All of YOUR royalty statements to or for BRYANT.

**REQUEST FOR PRODUCTION NO. 46:**

All DOCUMENTS that REFER OR RELATE TO BRYANT'S participation in the conception, creation, design, development, sculpting, tooling, production or manufacture of BRATZ.

**REQUEST FOR PRODUCTION NO. 47:**

All DOCUMENTS that REFER OR RELATE TO BRYANT'S participation in the conception, creation, design, development, sculpting, tooling, production or manufacture of ANGEL.

**REQUEST FOR PRODUCTION NO. 48:**

All non-privileged COMMUNICATIONS between YOU and any PERSON that REFER OR RELATE TO this action.

**REQUEST FOR PRODUCTION NO. 49:**

All DOCUMENTS that REFER OR RELATE TO any indemnification that BRYANT has sought, proposed, requested or obtained in connection with this action.

EXHIBIT __7__, PAGE 390

-16-

FIRST REQUEST FOR PRODUCTION TO MGA

REQUEST FOR PRODUCTION NO. 50:

All DOCUMENTS that REFER OR RELATE TO any indemnification that YOU have sought, proposed, requested or obtained in connection with this action.

REQUEST FOR PRODUCTION NO. 51:

All DOCUMENTS that REFER OR RELATE TO each and every sculpt of BRATZ (including without limitation any model, prototype or sample thereof) prior to June 1, 2001.

REQUEST FOR PRODUCTION NO. 52:

All DOCUMENTS that REFER OR RELATE TO each and every sculpt of ANGEL (including without limitation any model, prototype or sample thereof).

REQUEST FOR PRODUCTION NO. 53:

All DOCUMENTS that REFER OR RELATE TO the procurement, fabrication, preparation and production of each and every mold for BRATZ (including without limitation for any model, prototype or sample thereof) prior June 1, 2001, including without limitation all orders, purchase orders and invoices relating thereto.

REQUEST FOR PRODUCTION NO. 54:

DOCUMENTS sufficient to show when any mold for ANGEL (including without limitation for any model, prototype or sample thereof) was first ordered, procured, fabricated, prepared and produced.

EXHIBIT __7__ , PAGE _391_

07209/642197.1

-17-

**REQUEST FOR PRODUCTION NO. 55:**

All DOCUMENTS that REFER OR RELATE TO the exhibition, or proposed, offered or requested exhibition, of BRATZ (including without limitation any model, prototype or sample thereof) to any third party prior to June 1, 2001.

**REQUEST FOR PRODUCTION NO. 56:**

DOCUMENTS sufficient to show when ANGEL (including without limitation any model, prototype or sample thereof) was first exhibited to any third party.

**REQUEST FOR PRODUCTION NO. 57:**

DOCUMENTS sufficient to show when and where BRATZ (including without limitation any model, prototype or sample thereof) was first marketed to any wholesaler, distributor and/or retailer.

**REQUEST FOR PRODUCTION NO. 58:**

DOCUMENTS sufficient to show when and where ANGEL (including without limitation any model, prototype or sample thereof) was first marketed to any wholesaler, distributor and/or retailer.

**REQUEST FOR PRODUCTION NO. 59:**

DOCUMENTS sufficient to show when and where BRATZ (including without limitation any model, prototype or sample thereof) was first offered for sale to any wholesaler, distributor and/or retailer.

EXHIBIT __7__, PAGE 372

FIRST REQUEST FOR PRODUCTION TO MGA

REQUEST FOR PRODUCTION NO. 60:

DOCUMENTS sufficient to show when and where ANGEL (including without limitation any model, prototype or sample thereof) was first offered for sale by YOU to any wholesaler, distributor and/or retailer.

REQUEST FOR PRODUCTION NO. 61:

DOCUMENTS sufficient to show when and where BRATZ was first shipped, distributed and sold.

REQUEST FOR PRODUCTION NO. 62:

DOCUMENTS sufficient to show when and where ANGEL was first shipped, distributed and sold.

REQUEST FOR PRODUCTION NO. 63:

All DOCUMENTS that REFER OR RELATE TO the licensing, including without limitation the proposed or requested licensing, of BRATZ prior to December 31, 2001.

REQUEST FOR PRODUCTION NO. 64:

All COMMUNICATIONS between YOU and any manufacturer, or any contemplated, proposed or potential manufacturer, that REFER OR RELATE TO BRATZ prior to June 1, 2001.

REQUEST FOR PRODUCTION NO. 65:

DOCUMENTS sufficient to identify when YOU first contacted any manufacturer, or any contemplated, proposed or potential manufacturer, for the manufacture of ANGEL.

EXHIBIT __7__ , PAGE __393__

07209/642197.1

-19-

FIRST REQUEST FOR PRODUCTION TO MGA

REQUEST FOR PRODUCTION NO. 66:

All COMMUNICATIONS between YOU and any PERSON that REFER OR RELATE TO the distribution or proposed or potential distribution of BRATZ prior to June 1, 2001.

REQUEST FOR PRODUCTION NO. 67:

All COMMUNICATIONS between YOU and Universal Commerce Corp., Ltd. prior to June 1, 2001.

REQUEST FOR PRODUCTION NO. 68:

All DOCUMENTS that REFER OR RELATE TO Mattel, Inc., or that were prepared, authored or created by Mattel, Inc. or any officer, director, employee or representative of Mattel, Inc., that BRYANT has ever provided to, shown, described to, communicated to or disclosed in any manner to YOU.

REQUEST FOR PRODUCTION NO. 69:

All COMMUNICATIONS between YOU and BRYANT prior to January 1, 2001, including without limitation all diaries, notes, calendars, logs, phone records and letters, that reflect, record or memorialize or otherwise REFER OR RELATE TO any such COMMUNICATIONS.

REQUEST FOR PRODUCTION NO. 70:

All COMMUNICATIONS between YOU and Elise Cloonan that REFER OR RELATE TO BRYANT, Mattel, Inc., BRATZ and/or Anna Rhee, including without limitation all diaries, notes, calendars, logs, phone records and letters, that reflect, record or memorialize or otherwise REFER OR RELATE TO any such COMMUNICATIONS.

**EXHIBIT 7, PAGE 374**

07209/642197.1

-20-

FIRST REQUEST FOR PRODUCTION TO MGA

**REQUEST FOR PRODUCTION NO. 71:**

All COMMUNICATIONS between YOU and Elise Cloonan prior to June 11, 2002, including without limitation all diaries, notes, calendars, logs, phone records and letters, that reflect, record or memorialize or otherwise REFER OR RELATE TO any such COMMUNICATIONS.

**REQUEST FOR PRODUCTION NO. 72:**

All COMMUNICATIONS between YOU and Veronica Marlow prior to January 1, 2001, including without limitation all diaries, notes, calendars, logs, phone records and letters, that reflect, record or memorialize or otherwise REFER OR RELATE TO any such COMMUNICATIONS.

**REQUEST FOR PRODUCTION NO. 73:**

All COMMUNICATIONS between YOU and Mercedeh Ward prior to November 6, 2000, including without limitation all diaries, notes, calendars, logs, phone records and letters, that reflect, record or memorialize or otherwise REFER OR RELATE TO any such COMMUNICATIONS.

**REQUEST FOR PRODUCTION NO. 74:**

All COMMUNICATIONS between YOU and Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy) prior to January 1, 2001, including without limitation all diaries, notes, calendars, logs, phone records and letters, that reflect, record or memorialize or otherwise REFER OR RELATE TO any such COMMUNICATIONS.

**REQUEST FOR PRODUCTION NO. 75:**

All COMMUNICATIONS between YOU and Anna Rhee prior to January 1, 2001, including without limitation all diaries, notes, calendars, logs,

-21-

EXHIBIT 7 , PAGE 395

FIRST REQUEST FOR PRODUCTION TO MGA

1 │ phone records and letters, that reflect, record or memorialize or otherwise REFER

2 │ OR RELATE TO any such COMMUNICATIONS.

3 │

4 │ REQUEST FOR PRODUCTION NO. 76:

5 │       All COMMUNICATIONS between Veronica Marlow and Anna Rhee

6 │ prior to January 1, 2001, including without limitation all diaries, notes, calendars,

7 │ logs, phone records and letters, that reflect, record or memorialize or otherwise

8 │ REFER OR RELATE TO any such COMMUNICATIONS.

9 │

10 │ REQUEST FOR PRODUCTION NO. 77:

11 │       All COMMUNICATIONS between YOU and Sarah Halpern prior to

12 │ January 1, 2001, including without limitation all diaries, notes, calendars, logs,

13 │ phone records and letters, that reflect, record or memorialize or otherwise REFER

14 │ OR RELATE TO any such COMMUNICATIONS.

15 │

16 │ REQUEST FOR PRODUCTION NO. 78:

17 │       All COMMUNICATIONS between YOU and Jesse Ramirez prior to

18 │ January 1, 2001, including without limitation all diaries, notes, calendars, logs,

19 │ phone records and letters, that reflect, record or memorialize or otherwise REFER

20 │ OR RELATE TO any such COMMUNICATIONS.

21 │

22 │ REQUEST FOR PRODUCTION NO. 79:

23 │       Any personnel or vendor file that YOU have created or maintained

24 │ concerning BRYANT.

25 │

26 │ REQUEST FOR PRODUCTION NO. 80:

27 │       Any personnel file that YOU have created or maintained concerning

28 │ Paula Treantafellas.

-22-

EXHIBIT __7__, PAGE 396

FIRST REQUEST FOR PRODUCTION TO MGA

1  REQUEST FOR PRODUCTION NO. 81:

2        Any personnel file that YOU have created or maintained concerning

3  Mercedeh Ward.

4

5  REQUEST FOR PRODUCTION NO. 82:

6        Any personnel or vendor file that YOU have created or maintained

7  concerning Margaret Hatch (also known as Margaret Leahy and/or Margaret

8  Hatch-Leahy).

9

10  REQUEST FOR PRODUCTION NO. 83:

11        Any personnel or vendor file that YOU have created or maintained

12  concerning Veronica Marlow.

13

14  REQUEST FOR PRODUCTION NO. 84:

15        Any personnel or vendor file that YOU have created or maintained

16  concerning Anna Rhee.

17

18  REQUEST FOR PRODUCTION NO. 85:

19        Any personnel or vendor file that YOU have created or maintained

20  concerning Jessie Ramirez.

21

22  REQUEST FOR PRODUCTION NO. 86:

23        Any personnel file that YOU have created or maintained concerning

24  Shirin Salemnia.

25

26  REQUEST FOR PRODUCTION NO. 87:

27        Any personnel file that YOU have created or maintained concerning

28  Victoria O'Connor.

EXHIBIT __7__ , PAGE 377

07209/642197.1

1  REQUEST FOR PRODUCTION NO. 88:

2       Any personnel file that YOU have created or maintained concerning

3  Farhad Larian.

4

5  REQUEST FOR PRODUCTION NO. 89:

6       All telephone records for MGA Entertainment Inc. for the time period

7  from January 1, 1998 through January 1, 2001.

8

9  REQUEST FOR PRODUCTION NO. 90:

10      All DOCUMENTS that REFER OR RELATE TO any copyright,

11  patent or any other application or registration for BRATZ DESIGNS, including

12  without limitation all COMMUNICATIONS pertaining thereto.

13

14  REQUEST FOR PRODUCTION NO. 91:

15      All DOCUMENTS that REFER OR RELATE TO any copyright,

16  patent or any other application or registration for ANGEL DESIGNS, including

17  without limitation all COMMUNICATIONS pertaining thereto.

18

19  REQUEST FOR PRODUCTION NO. 92:

20      All DOCUMENTS that REFER OR RELATE TO any testing of or

21  sampling from any DOCUMENTS that REFER OR RELATE TO BRATZ or

22  BRYANT, including without limitation any such testing or sampling in connection

23  with any ink, paper or chemical analysis to date any such DOCUMENTS and

24  including without limitation all results and reports relating thereto.

25

26

27

28

EXHIBIT  7 , PAGE  398

FIRST REQUEST FOR PRODUCTION TO MGA

1   REQUEST FOR PRODUCTION NO. 93:

2            An electronic copy of each DOCUMENT that YOU have produced in

3   this action, or that is responsive to these Requests, that is or was created, prepared,

4   generated, maintained or transmitted in digital form.

5

6   REQUEST FOR PRODUCTION NO. 94:

7            The metadata for each DOCUMENT that YOU have produced in this

8   action, or that is responsive to these Requests, that is or was created, prepared,

9   generated, maintained or transmitted in digital form.

10

11  REQUEST FOR PRODUCTION NO. 95:

12           All DOCUMENTS that support, refute or otherwise REFER OR

13  RELATE TO any facts underlying YOUR Affirmative Defenses in this action.

14

15  REQUEST FOR PRODUCTION NO. 96:

16           All doll heads, sculpts, prototypes, models, samples and tangible

17  items that were created, prepared or made, whether in whole or in part, prior to

18  January 1, 2001 that REFER OR RELATE TO BRATZ.

19

20  REQUEST FOR PRODUCTION NO. 97:

21           All doll heads, sculpts, prototypes, models, samples and tangible

22  items that were created, prepared or made, whether in whole or in part, prior to

23  January 1, 2001 that REFER OR RELATE TO ANGEL.

24

25  REQUEST FOR PRODUCTION NO. 98:

26           All doll heads, sculpts, prototypes, models, samples and tangible

27  items that Anna Rhee painted, whether in whole or in part, for or with YOU or on

28  YOUR behalf or for or on behalf of BRYANT prior to January 1, 2001.

EXHIBIT __7__, PAGE 399

FIRST REQUEST FOR PRODUCTION TO MGA

1  **REQUEST FOR PRODUCTION NO. 99:**

2         All doll heads, sculpts, prototypes, models, samples and tangible

3  items that REFER OR RELATE TO DESIGNS for dolls, doll accessories or toys

4  that BRYANT produced, created, authored, conceived of or reduced to practice,

5  whether alone or jointly with others, prior to January 1, 2001.

6

7  **REQUEST FOR PRODUCTION NO. 100:**

8         All doll heads, sculpts, prototypes, models, samples and tangible

9  items that support, refute or otherwise REFER OR RELATE TO any facts

10  underlying YOUR Affirmative Defenses in this action.

11

12  DATED:  March 14, 2005        QUINN EMANUEL URQUHART

13         OLIVER & HEDGES, LLP

14         By

15         Shane Heather McKenzie

16         Attorneys for Plaintiff/Counter-defendant

       Mattel, Inc.

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT  7 , PAGE 400**

07209/642197.1        -26-

FIRST REQUEST FOR PRODUCTION TO MGA

## PROOF OF SERVICE

1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA        )
                           ) SS
COUNTY OF LOS ANGELES      )

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017.

On March 14, 2005, I served the foregoing document described as **Mattel, Inc.'s First Set of Requests For Production of Documents And Tangible Things to MGA Entertainment Inc.** on all interested parties in this action.

Robert F. Millman, Esq.
Douglas A. Wickham, Esq.
**Littler Mendelson**
**A Professional Corporation**
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107
**FAX: 310-553-5583**

[ ]   By placing [ ] the original [ ] true copies thereof enclosed in sealed envelopes addressed as follows:

[ X ]   **BY MAIL:**   I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ X ]   **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s) set forth above on this date.

Executed on March 14, 2005, at Los Angeles, California.

[ ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[ X ]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Rebecca A. Ramos
Print Name

_____
Signature

EXHIBIT __7__, PAGE __401__

1

## PROOF OF SERVICE

1013A(3) CCP Revised 5/1/88

2

STATE OF CALIFORNIA           )
                              ) SS
3     COUNTY OF LOS ANGELES        )

4          I am employed in the county of Los Angeles  State of California.  I am over the age of 18
and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor,
5     Los Angeles, California  90017.

6          On March 14, 2005, I served the foregoing document described as **Mattel, Inc.'s First Set
of Requests For Production of Documents And Tangible Things to MGA Entertainment Inc.**
7     on all interested parties in this action.

8                              Paula E. Ambrosini, Esq.
                              O'Melveny & Meyers
9                              400 So. Hope Street
                              Los Angeles, CA  90071
10                             (213) 430-6407

11    [  ]  By placing [  ] the original [  ] true copies thereof enclosed in sealed envelopes addressed as
follows:

12    [  ]  **BY MAIL:**    I deposited such envelope in the mail at Los Angeles, California.  The
envelope was mailed with postage thereon fully prepaid. As follows:  I am "readily familiar"
13          with the firm's practice of collection and processing correspondence for mailing.  Under that
practice it would be deposited with U.S. postal service on that same day with postage thereon
14          fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that
on motion of the party served, service is presumed invalid if postal cancellation date or
15          postage meter date is more than one day after date of deposit for mailing in affidavit.

16
[ X ]  **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s)
17          set forth above on this date.

18    [ X ]  **BY PERSONAL SERVICE** I caused to be delivered such envelope by hand to the
addressee.

19    Executed on March 14, 2005, at Los Angeles, California.

20    [  ]  (State) I declare under penalty of perjury under the laws of the State of California that the
above is true and correct.
21

22    [ X ]  (Federal) I declare that I am employed in the office of a member of the bar of this court at
whose direction the service was made.

23

24

25    Rebecca A. Ramos
      Print Name                          Signature

26

27

28

                              EXHIBIT __7__, PAGE 462

**Exhibit 8**

**ORIGINAL**

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
7   Facsimile:  (213) 443-3100

8   Attorneys for Plaintiff and Cross-
    Defendant
9   Mattel, Inc.

10                UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                     EASTERN DIVISION

13  CARTER BRYANT, an           CASE NO. CV 04-9049 SGL (RNBx)
    individual,
14                              Consolidated with
            Plaintiff,          Case No. CV 04-09059
15                              Case No. CV 05-02727

16      vs.                     **DISCOVERY MATTER**

17  MATTEL, INC., a Delaware    **[To Be Heard By Discovery Master Hon.
    corporation,                Edward Infante (Ret.) Pursuant To The Court's
18                              Order Of December 6, 2006]**
            Defendant.
19                              MATTEL, INC.'S NOTICE OF MOTION AND
    ──────────────────────      MOTION TO COMPEL PRODUCTION OF
20  AND CONSOLIDATED            DOCUMENTS AND INTERROGATORY
    ACTIONS                     ANSWERS BY MGA ENTERTAINMENT, INC.;
21
                                AND MEMORANDUM OF POINTS AND
22                              AUTHORITIES

23                              [Separate Statement and Declaration of Michael T.
                                Zeller filed concurrently herewith]
24
                                Hearing Date:  TBA
25                              Time:  TBA
                                Place:  TBA
26
                                Discovery Cut-off:  None Set
27                              Pre-trial Conference:  None Set
                                Trial Date:  None Set
28

07209/2046181.3

            EXHIBIT  8  , PAGE  403   2-2

                              MATTEL, INC.'S MOTION TO COMPEL

1 | TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2 |     PLEASE TAKE NOTICE that at a telephonic conference before

3 | Discovery Master Hon. Edward Infante (Ret.) that will occur on a date and at a time

4 | to be determined by Judge Infante, plaintiff Mattel, Inc. ("Mattel") will, and hereby

5 | does, move the Court:

6 |     (1) to compel MGA Entertainment, Inc. ("MGA") to produce

7 | documents responsive to Mattel Request Nos. 1, 2, 6, 7, 8, 9, 10, 11, 12, 13, 26, 27,

8 | 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 43, 45, 46, 49, 50, 51, 53, 55, 57, 59, 61, 63,

9 | 64, 66, 67, 69, 70, 88, 90, 91, 92, 96, 97, 98, 99, 100, including all documents,

10 | regardless of date of creation, relating to the origins of Bratz and the design,

11 | development and marketing of Bratz prior to June 31, 2001;

12 |     (2) to compel MGA to produce all redacted documents in un-redacted

13 | form; serve a complete privilege log; and complete its production by producing

14 | missing attachments, fax cover pages and the like;

15 |     (3) to compel MGA to answer fully and completely Mattel

16 | Interrogatories Nos. 5-11; and

17 |     (3) for an award of sanctions against MGA in the amount of $6,700.00,

18 | which represents a portion of the costs incurred by Mattel in bringing this Motion.

19 |     This Motion is made pursuant to Federal Rules of Civil Procedure 34

20 | and 37 on the grounds that Mattel's Requests seek discoverable information and

21 | MGA's objections lack merit.

22 |     This motion shall be heard by the Honorable Edward Infante,

23 | Discovery Master.  The parties met and conferred regarding this motion on August 8

24 | and 16, 2006 and on January 26, 2007.

25 |

26 |

27 |

28 | EXHIBIT __8__ , PAGE 404

07209/2046181.3

i

MATTEL, INC.'S MOTION TO COMPEL

1         This Motion is based on this Notice of Motion and Motion, the

2    accompanying Memorandum of Points and Authorities, the Declaration of

3    Michael T. Zeller filed concurrently herewith, the Separate Statement filed

4    concurrently herewith, the records and files of this Court, and all other matters of

5    which the Court may take judicial notice.

6

7    DATED: February 2, 2007       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

8

9                          By _____

10                           Michael T. Zeller
                        Attorneys for Plaintiff and Cross-Defendant

11                           Mattel, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                           EXHIBIT __8__, PAGE __405__

07209/2046181.3

-ii-

## TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

Preliminary Statement ............................................................................................. 1

Argument ................................................................................................................... 3

I.  MGA's Production Is Incomplete And Unintelligible. ................................... 3

II. MGA Has Engaged In A Practice Of Failing To Produce Responsive Documents Until Mattel Discovers Such Documents From Other Sources. .................................................................................................... 7

III. MGA's Refusal To Produce Any Documents From Its Hong Kong Subsidiary Is Contrary To Law. ........................................................... 11

IV. MGA's Failure To Produce Prior Testimony Regarding Bratz Frustrates Mattel's Ability To Gather Evidence And Identify Witnesses. ................... 13

V.  MGA's Failure To Provide Full And Complete Answers To Mattel's Interrogatories Relating To The Origins Of Bratz Frustrates Mattel's Ability To Gather Evidence And Identify Witnesses. ................................. 15

VI. MGA Should Be Sanctioned. .................................................................... 18

EXHIBIT _8_ , PAGE _406_

## TABLE OF AUTHORITIES

**Page**

### Cases

In re ATM Fee Antitrust Litigation,
    233 F.R.D. 542 (N.D. Cal. 2005) ........................................... 12

Bohannon v. Honda Motor Co., Ltd., et al.,
    127 F.R.D. 536 (D. Kan. 1989) ............................................. 14

Braley v. Campbell,
    832 F.2d 1504 (10th Cir. 1987) ............................................ 19

Davis v. Fendler,
    650 F.2d 1154 (9th Cir. 1981) ............................................. 16

Hyde & Drath v. Baker,
    24 F.3d 1162 (9th Cir. 1994) .............................................. 19

Miller v. Federal Express Corp.,
    186 F.R.D. 376 (W.D. Tenn. 1999) ......................................... 17

RTC v. Dabney,
    73 F.3d 262 (10th Cir. 1995) ............................................. 19

Richmark Corp. v. Timber Falling Consultants,
    959 F.2d 1468 (9th Cir.), cert. denied, 506 U.S. 948 (1992) .............. 16

U.S. v. Internaitonal Union of Petroleum and Industrial Workers,
    870 F.2d 1450 (9th Cir. 1989) ............................................ 12

VNA Plus, Inc. v. Apria Healthcare Group, Inc.,
    1999 WL. 386949 (D. Kan. 1999) ........................................... 17

### Statutes

28 U.S.C. § 1927 ............................................................. 19

Fed. R. Civ. P. 33(b)(3) .................................................... 16

Fed. R. Civ. P. 33(b)(6) .................................................... 7

Fed. R. Civ. P. 33(d) ....................................................... 17

Fed. R. Civ. P. 34 .......................................................... i

Fed. R. Civ. P. 37(a)(4) .................................................... 19

EXHIBIT _8_, PAGE _407_

-ii-

**Miscellaneous**

Moore's Federal Practice § 33.174[2].........................................................16

EXHIBIT 8 , PAGE 408

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Mattel, Inc. ("Mattel") seeks to compel defendant MGA Entertainment, Inc. ("MGA") to produce all documents—regardless of their date of creation—relating to the origin, conception, design and development of Bratz and to fully answer Mattel's Interrogatories on those subjects.   As the Discovery Master observed in his recent Order granting Mattel's motion to compel against defendant Carter Bryant, "at the heart of this lawsuit is a dispute over the rights to the 'Bratz' dolls."[1]   The Order makes clear that documents relating to the origin, design and development of Bratz are thus discoverable.

MGA, however, continues to withhold information on these subjects and, despite Mattel's repeated requests, has failed to cure the deficiencies in MGA's production.   To date, Mattel has produced nearly 60,000 pages of documents.   In contrast, MGA has produced a few thousand pages.[2]   Not only are certain categories of critical documents relating to Bratz absent from MGA's production,[3] but what little MGA has produced is itself deficient.   Among other things, MGA's production includes pages that are replete with redactions, often to the point where all or most of the entire page is blank except for the Bates number, "Attorneys' Eyes Only" and "Redacted" stamps put on them by attorneys.[4]   The net result of these multiple deficiencies is to render MGA's production both woefully incomplete and

---

[1]   Order Granting Mattel's Motion to Compel Production of Documents, dated January 25, 2007, at 2, attached as Exhibit 1 to the Declaration of Michael T. Zeller, dated February 1, 2007 and filed concurrently herewith ("Zeller Dec.").

[2]   Zeller Dec., ¶ 3.

[3]   For instance, MGA has not produced any internal documents from its Hong Kong office, even though it was involved in the development of Bratz.   See Zeller Dec., Exh. 7.

[4]   See e.g., sample pages from MGA's production, Zeller Dec., Exhs. 2-6.

EXHIBIT __6__, PAGE __407__

-1-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

07209/2046181.3

1   unintelligible, and MGA has failed to produce clearly relevant documents regarding

2   the origin, conception, design and development of Bratz. MGA's failure to comply

3   with its discovery obligations also extends to its incomplete or non-existent answers

4   to Mattel's Interrogatories seeking basic information about these same subjects.

5   These facts alone justify granting Mattel's Motion to Compel. However, these

6   deficiencies are even more disturbing in light of MGA's pattern of not producing

7   critical documents or identifying witnesses involved with Bratz until Mattel

8   independently discovers such documents from another source or such witnesses

9   come forward.

10        MGA also has no legitimate excuse for its stonewalling here. MGA's

11   arguments attempting to justify its incomplete and heavily redacted production, such

12   as its artificial "First Generation Bratz" distinction, are virtually identical to the

13   positions that Bryant had asserted in his refusals to produce relevant Bratz

14   documents and that the Discovery Master had rejected in his Order granting Mattel's

15   Motion to Compel against Bryant. Although MGA at one point stated that it would

16   reconsider its positions in light of that Order, MGA nevertheless opted to persist in

17   its failures and refusals. MGA should be compelled to produce responsive

18   documents without redactions (except to protect attorney-client privilege or attorney

19   work product and are reflected on a privilege log) responsive to Mattel's document

20   requests and to fully and completely answer Mattel's Interrogatories.

21        MGA's (and Bryant's) pattern of obstructionism notwithstanding,

22   Mattel has uncovered evidence confirming that (1) Bryant designed Bratz while

23   employed by Mattel; (2) Bryant used Mattel resources to design Bratz; (3) MGA

24   contracted with Bryant to obtain the rights to Bratz knowing that Bryant was

25   employed by Mattel; and (4) MGA paid Bryant for work performed on Bratz while

26

27

28                      EXHIBIT __8__ , PAGE __4(0__

1  he was still employed by Mattel.[5]  Furthermore, Mattel has uncovered evidence of,

2  and is asserting claims for, trade secret theft, copyright infringement and acts of

3  unfair competition by defendants.[6]   MGA's incomplete production and its

4  inadequate Interrogatory answers jeopardize Mattel's ability to pursue its rights and

5  to defend itself against MGA's own claims -- claims for which MGA recently

6  announced it would be seeking "billions" of dollars in damages.[7]  Mattel respectfully

7  requests that the Discovery Master grant this motion in its entirety, including by

8  ordering MGA to produce all non-privileged documents relating to the origin,

9  conception, design and development of Bratz, and to fully answer Mattel's

10  Interrogatories.

11

12                                              **Argument**

13  **I.    MGA's Production Is Incomplete And Unintelligible.**

14            MGA's production contains numerous inappropriate redactions that do

15  not appear to be based on privilege, such that more than half of MGA's production

16  consists of pages that are <u>entirely</u> redacted.[8]  Pages with text are frequently so

17  heavily redacted as to be unintelligible.  For instance, multiple emails produced by

18  MGA have everything but the "To," "From" and "Subject" header information

19  redacted.[9]  Other pages include illegible text or images and/or have text or other

20

21  _____

22      [5]  Mattel's Amended Answer and Cross-Complaint in *MGA v. Mattel, Inc.*, Case
    No. CV 05-2727 SGL (RNBx) (the "Unfair Competition Case") at ¶¶ 26-27, Zeller
23  Dec., Exh. 8.

24      [6]  <u>Id.</u> at ¶¶ 37-54.
        [7]  "Nightline" transcript at 5, Zeller Dec., Exh. 56.  MGA Complaint at ¶ 101-
25  125, Zeller Dec., Exh. 9.  Moreover, MGA's Complaint states on its face that it
    seeks "tens of millions" of dollars from Mattel.  <u>Id.</u> at Prayer ¶ 2.
26
        [8]  <u>See, e.g.</u> Entirely redacted pages from MGA's production, Zeller Dec., Exh. 2.
27      [9]  <u>See, e.g.</u> Heavily redacted emails from MGA's production Zeller Dec., Exh. 3.

28

EXHIBIT  8  , PAGE 411

-3-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1  information cut-off.[10]   Other pages reference attachments to emails and other
2  documents, but the attachments are missing.[11]  In addition, invoices are produced for
3  which no corresponding check stubs, purchase orders or requisitions were
4  produced.[12]  In some cases, the identifying information necessary to match invoices
5  with other financial documents may have been redacted.  Many other pages are even
6  redacted in their entirety.[13]

7          MGA's justifications for its heavy-handed redactions are almost
8  identical to the ones that Bryant had asserted and that were rejected by the
9  Discovery Master in his Order Granting Mattel's Motion to Compel Production of
10  Documents of Bryant.  For instance, like Bryant, MGA has withheld information
11  and documents relating to any Bratz product other than "First Generation" Bratz—
12  an artificial, and illogical, limitation which the Discovery Master rejected.[14]
13  Further, MGA imposed a "First Generation" Bratz limitation with regards to royalty
14  statements from MGA to Bryant, producing heavily redacted statements that show
15  only Bryant's earnings on the "First Generation" Bratz.  This limitation, too, was one
16  rejected by the Discovery Master in his Order.[15]  Like Bryant, MGA also stood on
17  its refusal to produce evidence relating to agreements between MGA and Bryant,
18  including their fee arrangements.  The Discovery Master similarly rejected this
19  limitation on discovery, noting that such agreements go to issues of liability, bias
20  and lack of credibility.[16]

21  _____

22  [10]  See, e.g., Cut-off and illegible pages from MGA's production, Zeller Dec.,
23  Exh. 4.
     [11]  See, e.g., Email with missing attachment from MGA's production, Zeller
24  Dec., Exh. 5.
25  [12]  See, e.g., Invoice from MGA's production, Zeller Dec., Exh. 6.
     [13]  See, e.g., Zeller Dec, Exh. 2.
26  [14]  See Discovery Master's Order at 12-13, Zeller Dec., Exh. 1.
27  [15]  Id. at 13-14.
     [16]  Id. at 12.
28

Consistent with the Discovery Master's Order, and because they seek clearly discoverable information, MGA should be compelled to produce the following categories of documents:

- Documents referring or relating to Bryant's agreements with MGA, including communications exchanged by the parties and drafts of the agreements;[17]

- Documents referring or relating to agreements discussed or negotiated by Bryant and MGA while he was employed by Mattel other than signed agreements that were "reached" while Bryant was employed by Mattel;[18]

- Documents referring or relating to Bryant's fee agreements with MGA or other indemnity agreements relating to this action;[19]

- All documents relating to works created or services provided by Bryant to MGA during his Mattel employment, regardless of whether they resulted in a Bratz doll released in June of 2001;[20]

- All non-privileged documents referring or relating to designs that Bryant created, authored, produced, conceived of or reduced to practice after October 20, 2000 as purported "works-made-for-hire" (whether in whole or in part) for or on behalf of MGA;[21]

- All documents referring or relating to the conception, creation, design, development, engineering or sculpting of Bratz;[22]

---

[17] Id. at 12.
[18] Id. at 12.
[19] Id. at 12.
[20] Id. at 12-13.
[21] Id. at 12-13.
[22] Id. at 12-13.

EXHIBIT 8 , PAGE 413

1   • All non-privileged documents referring or relating to work, activities or
2     services that Bryant performed concerning Bratz after October 20,
3     2000;[23]

4   • All non-privileged documents referring or relating to Bryant's
5     participation in the conception, creation, design, development,
6     sculpting, tooling, production or manufacture of Bratz;[24]

7   • All prototypes, models, samples and tangibles referring or relating to
8     designs for dolls, doll accessories or toys that Bryant produced, created,
9     authored, conceived of or reduced to practice, whether alone or jointly
10    with others, for MGA;[25]

11  • All documents relating to Bryant's payments from MGA, including all
12    royalty statements in unredacted form;[26]

13  • All communications between Bryant and MGA or third parties that
14    relate to designs Bryant created while employed by Mattel;[27]

15  • All communications between Bryant and MGA that relate to Mattel
16    employees;[28]

17  • All communications between Bryant and MGA relating to Bryant's
18    Mattel employment or work Bryant performed for Mattel, except those
19    communications "created" prior to the close of Bryant's Mattel
20    employment;[29]

---

[23]  Id. at 12-13.
[24]  Id. at 12-13.
[25]  Id. at 12-13.
[26]  Id. at 13-14.
[27]  Id. at 15-16.
[28]  Id. at 15-16.
[29]  Id. at 15-16.

EXHIBIT _8_, PAGE _414_

1 &bull; All non-privileged communications between Bryant and MGA that

2  post-date Bryant's Mattel employment;[30] and

3 &bull; All non-privileged documents referring or relating to any copyright,

4  patent or any other application or registration for designs that Bryant

5  produced, created, authored, conceived of or reduced to practice,

6  whether alone or jointly with others, since January 1, 1995, including

7  without limitation all communications pertaining thereto.[31]

8  An Order is necessary to ensure that MGA can no longer use artificial

9 distinctions to cherry-pick what documents it chooses to produce and which

10 documents it chooses to withhold from Mattel and to ensure that what MGA

11 produces is produced in unredacted from (unless it is to protect privilege and is

12 reflected on a privilege log).

13

14 **II.** **MGA Has Engaged In A Practice Of Failing To Produce Responsive**

15   **Documents Until Mattel Discovers Such Documents From Other Sources.**

16  On multiple occasions, MGA has failed to produce responsive

17 documents until after a third party produces them.  For example, Anna Rhee, an

18 MGA vendor, produced documents in January 2005 pursuant to subpoena and

19 testified at her deposition that invoices she submitted to MGA in June 2000 were

20 invoices for Bratz face-painting.[32]  Subsequently, MGA produced the invoices in

21

22

23  [30] Id. at 15-16.

24  [31] Id. at 16.

25  [32] Deposition of Anna Rhee ("Rhee Deposition"), dated January 7, 2005, at 105:2-110:9, Zeller Dec., Exh. 10; Rhee Invoice, Zeller Dec., Exh. 11.  A more

26 detailed account of matters pertaining to Ms. Rhee's testimony and documents is

27 included in Mattel's motion to compel with respect to MGA's Rule 30(b)(6) witness, Kerri Brode.

28

07209/2046181.3

EXHIBIT __8__ , PAGE _415_

-7-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1   question and their alleged internal backup.[33]   In September 2006, another third-party

2   witness, Steven Linker, produced design drawings, emails and other documents

3   relating to Bratz that Linker had received *from or exchanged with MGA and*

4   *Bryant* before Bryant left Mattel.[34]   Neither MGA nor Bryant had produced

5   previously many of these documents.

6           Linker's testimony and the documents he produced, including emails

7   and other documents relating to Bratz that pre-dated Bryant's departure from Mattel

8   and that had not been produced by MGA or Bryant, established that the Bratz

9   project was much further along before Bryant left Mattel than MGA and Bryant had

10   claimed.   For example, before Linker's testimony, MGA had produced an email

11   relating to Bratz development that Linker's design partner, Liz Hogan, had sent to

12   MGA on October 23, 2000, a date which was conveniently after Bryant left Mattel.

13   MGA, however, had not produced the earlier emails—those pre-dating Bryant's last

14   day of employment at Mattel—that Hogan had exchanged with MGA on that very

15   same subject.[35]   Mattel obtained those only when Linker produced them pursuant to

16   subpoena.   These were not the only documents that MGA withheld.   Among

17   Linker's production was a key design drawing for the three-dimensional Bratz

18   dolls—a drawing Bryant previously testified at his deposition that he had not created

19   until November 2000 after he had left Mattel.[36]   Linker's testimony and the

---

[33]   See, e.g., Rhee Invoice from MGA's Production, Zeller Dec., Exh. 12.

[34]   Deposition of Steven Linker ("Linker Deposition"), dated September 13, 2006, at 56:21-59:23, 66:7-67:9, 76:22-78:23, 80:16-91:5, Zeller Dec., Exh. 13; Hogan emails, Zeller Dec., Exh. 14; packet produced by Steve Linker that he received from MGA on October 19, 2000 that includes a Bratz design drawing by Carter Bryant, Bates No. SL00044, Zeller Dec., Exh. 15.

[35]   Hogan email from MGA's Production, Zeller Dec., Exh. 16.

[36]   Deposition of Carter Bryant ("Bryant Deposition") at 350:16-350:25, 351:15-353:13, 527:17-528:20, Zeller Dec., Exh. 17; Bratz design drawing by Carter Bryant, Zeller Dec., Exh. 18.

**EXHIBIT 6 , PAGE 46**

07209/2046181.3

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1   documents he produced, however, prove that MGA itself gave that same design

2   drawing (as well as other Bratz development documents) to Linker at a meeting with

3   MGA on October 19, 2000, before Bryant left Mattel.[37]  It was only after Linker's

4   deposition and MGA's glaring omissions had been revealed that MGA then

5   produced documents referencing the October 19, 2000 meeting between Linker and

6   MGA that Linker had testified.[38]

7          Although MGA produced a few documents referencing the October 19,

8   2000 meeting with Linker, and did so only after MGA's failure to produce highly

9   material documents was exposed, MGA still has not produced any drafts,

10  communications or similar documents relating to the materials that MGA gave

11  Linker before Bryant left Mattel.  Those materials, which include finished design,

12  marketing and pricing documents for Bratz, undoubtedly did not emerge from thin

13  air in full-blown fashion.  In fact, Hogan's emails show that the packaging team

14  needed detailed information about the Bratz doll products—size, piece-count, price,

15  etc.—before she and Linker could provide a quote for Bratz packaging work to

16  MGA.[39]  Yet, to this day, MGA has not produced documents or drafts showing how

17  or when the Bratz products reflected in the MGA materials that Linker produced

18  were designed, or how or when the retail prices, the product piece counts, the

19  information developed to describe each doll, and the prices for the dolls and

20  fashions that are listed in the materials were determined.

21         Further highlighting the point, there is, overall, an enormous disparity

22  between the extensive work that Mattel is now learning was done on Bratz

23  development before Bryant left Mattel and the minimalistic source documentation

24

25  [37]  Linker Deposition at 77:6-78:23, Zeller Dec., Exh. 13; Bratz design drawing

26  by Carter Bryant produced by Steve Linker, Zeller Dec., Exh. 15.

    [38]  Day Planner Pages, Zeller Dec., Exh. 19.

27

    [39]  Hogan emails, Zeller Dec., Exh. 14.

28

**EXHIBIT 8 , PAGE 417**

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1 | that MGA has produced for it. Just two days before Linker's deposition in
2 | September 2006, MGA produced for the first time bare bones invoices showing that
3 | one vendor alone had already billed at least 169 hours for Bratz work she performed
4 | before Bryant left Mattel.[40] Although this and other evidence thus strongly suggests
5 | that extensive Bratz design and development was underway before Bryant left
6 | Mattel, many categories of documents and communications that undoubtedly were
7 | created as a matter of course reflecting the particulars of all this activity (and likely
8 | also showing additional Bratz activity) have not been produced by MGA and
9 | Bryant.

10 | Mattel has reason to believe other responsive documents are being
11 | withheld as well. MGA is obligated to produce bank records in its possession,
12 | custody or control relating to products at issue in this case per a subpoena served on
13 | Union Bank of California and an agreement the parties reached relating to those
14 | records on June 20, 2006.[41] Pursuant to this agreement, MGA produced certain
15 | cancelled checks from Union Bank.[42] However, Mattel's request was broader than
16 | simply cancelled checks, encompassing signature cards, bank statements and deposit
17 | slips.[43] In addition, relevant and responsive checks appear not to have been
18 | produced. Cancelled checks from the Union Bank records and calendar entries from
19 | a recent MGA production on January 4, 2007 identify David Dees as being a design

20 |

---

21 | [40]  See Marlow invoices produced by MGA, Zeller Dec., Exh. 20.
22 | [41]  Per the parties' agreement, MGA's counsel took possession of the documents
23 | produced by Union Bank pursuant to the subpoena; MGA then was to produce any documents relating to products at issue in the litigation and to produce documents
24 | relating to particular vendors at Mattel's request. See Zeller Dec., ¶ 23; see also
     Subpoena of Union Bank of California, Zeller Dec., Exh. 21.
25 | [42]  See, e.g., Cancelled checks produced by Union Bank, Zeller Dec., Exh. 22.
26 | [43]  See Attachment A to Subpoena of Union Bank of California, Zeller Dec.,
27 | Exh. 21; see also Dees Invoices from Union Bank's production, Zeller Dec., Exh.
     22.

28 |

EXHIBIT __8__, PAGE _418_

-10-

MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL

1   vendor who billed an extensive amount of work on Bratz—$4,000 worth as of
2   February 2001 and another $7,015 by mid May 2001.[44] Nonetheless, Mattel has not
3   received other documents showing the design work that he did on the project before
4   then. MGA was obligated under Mattel's Requests to provide documents relating to
5   Dees, a vendor who worked on Bratz during the relevant time period. Moreover,
6   per the parties' agreement relating to the Union Bank records, Mattel can request
7   documents for a specific vendor by name; however, Mattel should not be forced to
8   guess which vendors performed work on Bratz.

9           Mattel cannot be expected to receive only those MGA documents it
10  happens to obtain from third parties who have responsive documents—particularly
11  given that MGA and Bryant also had failed to identify third parties who have
12  relevant knowledge and documents, such as Linker, in their Interrogatory
13  responses.[45] MGA should be compelled to produce all documents—regardless of
14  date of creation—relating to the origin, creation, conception, design and
15  development of Bratz.

16

17  **III.    MGA's Refusal To Produce Any Documents From Its Hong Kong**
18          **Subsidiary Is Contrary To Law.**

19          MGA's Hong Kong office, MGA Entertainment (HK) Limited ("MGA
20  Hong Kong"), played a key role in Bratz and has documents and things responsive
21  to Mattel's document requests. MGA, however, refuses to produce documents or
22  things from MGA Hong Kong, and instead has limited its production to only

23

24  _____

25  [44]   Id.; see also Day planner pages, Zeller Dec., Exh. 23.
    [45]   See MGA's Response to Mattel's Interrogatory Nos. 5 & 6, Zeller Dec., Exh.
26  25; see also Mattel's Separate Statement In Support Of Mattel's Motion To Compel,
27  dated February 1, 2007 and filed concurrently herewith, ("Separate Statement") at
    60:16-60:26.
28
                                    EXHIBIT ___6___ , PAGE __449__

1   communications between MGA in the U.S. and MGA Hong Kong.[46]   MGA

2   maintains that MGA Hong Kong is a separate company not located within the

3   jurisdiction of the United States and that documents and things located there are not

4   under MGA's "possession, custody or control."   However, MGA Hong Kong is

5   controlled by MGA and its central purpose is to implement parent MGA's policy.

6   Therefore, MGA has "legal control" over MGA Hong Kong and should be

7   compelled to produce any documents in its Hong Kong subsidiary's possession,

8   custody or control.   See In re ATM Fee Antitrust Litigation, 233 F.R.D. 542, 544

9   (N.D. Cal. 2005) (where the court ordered a company to produce any documents in

10  its wholly-owned subsidiary's custody that were responsive to the plaintiffs' requests

11  for production of documents as well as answer any interrogatories related to

12  information within the possession of the subsidiary).

13          Like MGA, the defendant in ATM conceded that its subsidiary had

14  responsive documents, but it contended that because the subsidiary was a "separate

15  legal entity," the defendant company did not have control over the documents. Id. at

16  545.   The ATM court rejected this argument, instead applying the "legal control

17  standard" for a parent's obligation to produce documents in the possession and

18  custody of a subsidiary.   Id. at 545 (internal cites omitted).   A parent company has

19  "legal control" of its subsidiary if it has "the legal right to obtain documents upon

20  demand" and not simply the defendant's practical ability to obtain the documents

21  requested.   See U.S. v. Internaitonal Union of Petroleum and Industrial Workers,

22  870 F.2d 1450, 1463 (9th Cir. 1989).

23          Even based upon MGA's limited, heavily sanitized production, it is

24  clear that MGA exercises legal control over MGA Hong Kong.   There are numerous

25  emails in which MGA's CEO Isaac Larian gives specific direction to MGA Hong

---

[46]   Zeller Dec., Exh. 7.

**EXHIBIT 8 , PAGE 400**

07209/2046181.3

1 Kong about everything from personnel issues in Hong Kong to more general
2 manufacturing and sales issues.[47]  In addition, Mr. Larian and Jahangir Makabi, both
3 of whom are MGA officers, are the sole directors of MGA Hong Kong.  Bryant also
4 personally visited and worked at MGA Hong Kong in the Fall of 2000 to work on
5 Bratz.[48]  Obtaining discovery from MGA Hong Kong is critical because MGA Hong
6 Kong was intimately involved with the production of Bratz in 2000 and early 2001;
7 thus it unquestionably has internal documents and things that can shed light on this
8 critical, and contested, time period.  Further, in its Interrogatory responses, MGA
9 identifies only five people in the United States and then "various people then
10 employed in Hong Kong" as being involved in the conception, origin, creation, etc.
11 of the first embodiments of Bratz.[49]  On the one hand, MGA states that it is not
12 obligated to produce responsive documents from MGA Hong Kong in response to
13 the Requests; simultaneously, MGA states that it does not have to identify by name
14 individuals in Hong Kong who worked on Bratz in response to the Interrogatories
15 because their identities can be determined from the documents.  Neither argument
16 taken alone has merit, but together they certainly must fail.

17

18 **IV.  MGA's Failure To Produce Prior Testimony Regarding Bratz Frustrates**
19    **Mattel's Ability To Gather Evidence And Identify Witnesses.**

20        Initially, MGA categorically refused to produce any declarations,
21 affidavits or other sworn written statements of any type by MGA that referred or
22 related to Bratz or Angel—the name that Rhee testified she was told to use on her

23

24

---

25  [47]  See Larian email produced by MGA, Zeller Dec., Exhs. 26.
26  [48]  See Bryant Deposition at 489:12-490:9, Zeller Dec., Exh. 17.
27  [49]  See MGA's Response to Mattel's Interrogatory No. 5, Zeller Dec., Exh. 25;
    see also Separate Statement at 60:11-61:20.
28

EXHIBIT  8 , PAGE  421

1  early invoices for Bratz.[50]  Similarly, MGA categorically refused to produce any

2  transcripts or video and/or audio recordings of statements made by MGA under oath

3  that referred or related to Bratz or Angel.[51]  MGA also refused to produce any

4  documents that referred or related to Bratz or Angel that were filed, submitted and

5  served in the suit and/or arbitration proceedings brought by Farhad Larian—a

6  former MGA executive and Isaac Larian's brother.[52]  MGA maintained that such

7  documents were not relevant to the subject matter of the lawsuit or reasonably

8  calculated to lead to the discovery of admissible evidence.[53]

9  This argument is without merit.  Any statements of fact made by MGA

10  in other sworn testimony relating to the timing, origins, and creation of Bratz or

11  Angel are relevant to this case in myriad ways, including for purposes of identifying

12  additional witnesses, establishing admissions of fact and impeachment through prior

13  statements.  See Bohannon v. Honda Motor Co., Ltd., et al., 127 F.R.D. 536, 540 (D.

14  Kan. 1989) ("The transcripts of deposition testimony given and approved by

15  employees of [defendant]...are discoverable statements.")  The prior sworn

16  statements by MGA that Mattel has been able to obtain through a third party—but

17  that were never produced by MGA—revealed that (1) Bratz was first exhibited in

18  the fall of 2000 and (2) key Bratz design drawings that Bryant had testified in this

19

20

21

22

23  [50]  Zeller Dec., Exh. 7.

24  [51]  Id.

25  [52]  Id.  Farhad Larian brought suit against his brother because Farhad claimed that Isaac had concealed the development of Bratz beginning in early 2000 from

26  Farhad in order to buy Farhad's share of the company at a reduced price.  Thus

27  materials in the case would be directly relevant to the origins and timing of Bratz.

28  [53]  Id.

EXHIBIT __&__, PAGE __4∂∂__

1  case were created in 1998 were, in fact, created in 2000.[54]  Both of these facts are

2  obviously highly relevant to the present suit.

3            Over the course of the parties' meet and confers, MGA stated that it

4  would explore the possibility of producing such testimony and sworn statements if

5  Mattel agreed to produce testimony regarding products such as Flavas.[55]  However,

6  such products are at best only tangentially related to this suit.  While Mattel may be

7  amenable to producing such materials, Mattel should not have to barter to get

8  discovery to which it is clearly entitled and has long sought.   Such testimony

9  relating to Bratz is particularly important because the early development of Bratz is

10 highly contested in this case and MGA has made conflicting public statements over

11 the years regarding the origins of Bratz—attributing Bratz to everyone from Larian's

12 son to Larian himself to the result of some sort of doll design contest.[56]

13

14 **V.    MGA's Failure To Provide Full And Complete Answers To Mattel's**

15     **Interrogatories Relating To The Origins Of Bratz Frustrates Mattel's**

16     **Ability To Gather Evidence And Identify Witnesses.**

17            The deficiencies in MGA's production are magnified by the equally

18 serious shortcomings in MGA's responses to Mattel's Interrogatories relating to the

19 origins of Bratz.[57]

20

21  _____

22

23  [54]  See Larian affidavit, Zeller Dec., Exh. 27;  see also Lee Shiu Cheung
    affidavit and Exhibit LSC-3 to the affidavit, Zeller Dec., Exh. 28.
24  [55]  Torres Letter, Zeller Dec., Exh. 36.
    [56]  See, e.g., Zeller Dec., Exh. 29.
25  [57]  See Mattel, Inc.'s Second Set of Interrogatories to Defendant MGA
26  Entertainment, Inc. (the "Interrogatories"), Zeller Dec., Exh. 24; MGA's Response to
    Mattel's Second Set of Interrogatories (the "Interrogatory Responses"), Zeller Dec.,
27  Exh. 25.

28
                                              EXHIBIT  8 , PAGE 403