As an initial matter, MGA failed to serve a response to Mattel's Second Set of Interrogatories within the 30 days required by Rule 33(b)(3).[58] By failing to serve a timely response (or timely objection), MGA has waived all objections. "Any ground not stated in a timely objection is waived . . . ." Federal Rule of Civil Procedure 33(b)(4). Any objection not made within 30 days of service of an interrogatory is waived unless the responding party seeks an extension of time to answer or object. Id.; see Moore's Federal Practice § 33.174[2]; Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981) (holding that untimely service of response to interrogatories waives objections); Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir.) (stating that "failure to object to discovery requests within the time required constitutes a waiver of any objection."), cert. denied, 506 U.S. 948 (1992). Because MGA failed to provide full and complete responses (without objection), Mattel may move the Court to order MGA to do so. See, e.g., Richmark Corp., 959 F.2d at 1473.

Furthermore, MGA's responses to Mattel's Second Set of Interrogatories were, and remain, substantively deficient. Indeed, MGA's responses to many of the Interrogatories simply consist of improper objections without any substantive response. For example, the instructions to Mattel's Interrogatories direct

---

[58] MGA's unverified Responses to Mattel's Second Set of Interrogatories were faxed, without proof of service, at approximately 10:30 p.m. on May 30, 2006—six days after they were due. Mattel personally served its Second Set of Interrogatories to Defendant MGA Entertainment, Inc. on April 28, 2005. Pursuant to Federal Rule of Civil Procedure 33(b)(3), MGA had thirty (30) days to respond to Mattel's interrogatories. Judge Manella issued an order staying proceedings on May 20, 2005. At the time of the order, seven days remained for MGA to respond to Mattel's Second Set of Interrogatories. Judge Larson issued an order lifting the stay on May 17, 2006. Accordingly, taking the stay into account, MGA's responses were due no later than May 24, 2006. See Zeller Dec., Exh. 30; see also Court's Order Staying Discovery in Mattel, Inc. v. Bryant; Bryant v. Mattel, Inc.; and MGA Entertainment, Inc. v. Mattel, Inc., dated May 20, 2005, Zeller Dec., Exh. 31.

EXHIBIT 8, PAGE 424

MGA to provide particulars about responsive individuals such as each individual's name, address, telephone number and relationship to MGA.[59] MGA completely disregarded this. Interrogatory No. 5 asked MGA to identify each person who was involved in the creation, design and development of Bratz. In response, MGA named a few individuals who were known already in this litigation, in addition to wholly unspecified "various people then employed in Hong Kong, the names of whom are contained in documents previously produced by MGA."

MGA's responses violate Fed. R. Civ. P. 33(d). Rule 33(d) requires MGA to identify referenced documents specifically and in detail, either by their Bates numbers or else through a sufficiently detailed description of them to allow Mattel to ascertain which specific documents are being referenced. See, e.g., Miller v. Federal Express Corp., 186 F.R.D. 376, 385 (W.D. Tenn. 1999) (holding that, under Rule 33(d), "[t]he responding party must specify the documents from which the answer may be derived with sufficient detail to permit the requesting party to locate it" and compelling party to identify such documents "by Bates numbers the documents" being referenced); VNA Plus, Inc. v. Apria Healthcare Group, Inc., 1999 WL 386949, at *5 (D. Kan. 1999) (party may not "simply refer generically" to documents produced in interrogatory response). This deficiency is present in MGA's response to Interrogatory No. 6 as well. MGA's vague, generalized reference to a heavily redacted, incomplete production also compounds the shortcomings of an already deficient answer. The particular information requested in Mattel's instruction is exactly the type of information—among other information—that MGA redacted in its production or have explicitly stated it is withholding, such as the MGA Hong Kong documents.

---

[59] See Interrogatories at 4:1-5:5, Zeller Dec, Exh. 24.

Moreover, MGA simply objects to Interrogatory Nos. 7-9 and 11 without providing any substantive response. As noted above, these objections were waived by MGA's failure to timely respond to the Interrogatories. Even if the objections were timely, MGA's objections don't hold water. Interrogatories 7 and 8 seek critical evidence that goes to the heart of this case—the earliest representations of Bratz and the project known as "Angel." As the Discovery Master has noted, the rights to Bratz are at issue in this case.[60] Further, MGA contests Anna Rhee's testimony that work she performed work in June 2000 on Bratz, contending that Rhee actually worked on a different project identified as "Angel" or "Prayer Angels" at that time. Interrogatory No. 9 asks MGA to identify each sworn statement that refers or relates to the origins and creation of Bratz. As with the evidence sought by Interrogatory Nos. 7 and 8, this information is critical to this case. Finally, Interrogatory No. 11 asks MGA to identify phone numbers for its CEO Isaac Larian. Given Mr. Larian's personal involvement in Bratz, this information may bear on the defendants' story regarding the timing of Bratz. Without the numbers, Mattel cannot check for them against phone records. MGA has no basis for withholding any of this information and, therefore, should be compelled to provide full and complete answers to the Interrogatories in question.

## VI. MGA Should Be Sanctioned.

Under the Federal Rules, a party bringing a motion to compel is entitled to the "reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response or objection was substantially justified,

---

[60] Discovery Master's Order at 2, Zeller Dec., Exh. 1.

EXHIBIT 8, PAGE 426

or that other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(4). The burden of establishing substantial justification is on the party being sanctioned. Hyde & Drath v. Baker, 24 F.3d 1162, 1171 (9th Cir. 1994). Independently, sanctions may be imposed under 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions under this section are appropriate "for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." RTC v. Dabney, 73 F.3d 262, 265 (10th Cir. 1995), citing Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987).

Sanctions are called for here. MGA cannot offer any legitimate excuse for its repeated failure to produce clearly responsive documents and fully answer Interrogatories on matters that go to core issues in this case. MGA has asserted numerous objections that have no basis in law or fact. MGA has withheld, and continues to withhold, indisputably relevant information. MGA has redacted vast portions of documents, stripping them of salient information, and rendering them unintelligible. And MGA has produced documents that are demonstrably incomplete, including faxed communications that omit crucial information. Most troubling, MGA has been caught hiding the ball: failing to produce highly relevant MGA documents until after Mattel discovers the documents via third parties. MGA's actions are contrary to its obligations and imperil the truth-seeking function of the Court.

Throughout the meet and confer process, MGA claimed it would remedy the deficiencies with its production, but never actually took any action to do

EXHIBIT 8, PAGE 427

so.[61] When Mattel again approached MGA after the holidays to obtain compliance in the hopes of avoiding motion practice, MGA promised that it would rectify some unspecified problems with the May 2005 production, but then still did not do so. When queried as to its intent, during a meet and confer on January 26, 2007, all MGA would commit to was making superficial changes to its production, such as correcting illegible text and cut-offs, rather than addressing the production's substantive defects.[62] Although MGA represented at that time that it would review the Discovery Master's recent Order compelling Bryant's production to determine whether or not MGA would reconsider any of its positions and that it would let Mattel know by January 30, that date came and went without further response by MGA.[63]

MGA's stratagems are the definition of unreasonable and vexatious, and MGA and its counsel should be sanctioned for the fees and costs Mattel has been forced to expend as a result of its evasions in connection with its document production and Interrogatory responses. Mattel therefore requests that MGA be ordered to pay $4,700.00 as partial reimbursement for the fees and costs that Mattel has incurred on this Motion.[64]

---

61 See Zeller Dec., ¶ 34, Exh. 32-43.
62 See Zeller Dec., Exhs. 42 & 43.
63 See Zeller Dec. Exh. 43.
64 See Zeller Dec., ¶ 57.

EXHIBIT 8, PAGE 428

**Conclusion**

In light of the myriad deficiencies in MGA's production, Mattel respectfully requests that MGA be compelled to fully answer Mattel's Interrogatories and to produce all documents responsive to Mattel's document requests, including, most importantly, those relating to the origin, conception, design and development of Bratz.

DATED: February 2, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By [signature]
Michael T. Zeller
Attorneys for Plaintiff and Cross-Defendant Mattel, Inc.

EXHIBIT 8, PAGE 429

**Exhibit 9**

on April 23, 2007. Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted.

## II. BACKGROUND

A. Requests for Documents

In June of 2004, two months after Mattel filed suit against Bryant, and before MGA became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one categories of documents, to be produced in ten days. MGA filed a motion to quash, which the court granted because of the short amount of time provided for compliance with the subpoena. The parties met and conferred in July of 2004, and reached an agreement to limit the scope of some of Mattel's requests. In particular, the parties agreed to limit production to the "first generation" Bratz dolls. On August 12, 2004, MGA produced documents.

In 2005, the parties stipulated to supplementing their document productions on May 16, 2005. Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

In September of 2006, MGA made a supplemental production of documents. On February 5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents with legibility problems. On February 20, 2007, MGA produced an additional 224 pages of documents to replace earlier produced documents with legibility problems.

Mattel now moves to compel MGA to produce documents responsive to its requests. As a preliminary matter, Mattel contends that MGA's production is deficient because it contains redactions and cut-off text. Further, Mattel contends that MGA's production is incomplete with respect to essentially five categories of documents. First, Mattel contends that MGA is withholding documents relating to the origins of Bratz and Bryant's work for MGA. Mattel believes that MGA's production is incomplete based upon its review of documents that have been produced by third party Steven Linker. According to Mattel, Linker's documents from October of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant previously represented. Mattel also contends that MGA's responses to the document requests

Mattel also asserts that MGA is improperly withholding documents relating to products, services and matters other than those relating to "dolls." According to Mattel, it has evidence that Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the Inventions Agreement.

Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel; (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual damages; and (3) payments may show when and what trade secret information Bryant and other defendants allegedly misappropriated from Mattel.

Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel contends that all agreements between Bryant and MGA are relevant, not just the original September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all documents relating to MGA and Bryant's alleged joint defense agreement because such information would be relevant to demonstrate bias and lack of credibility.

Fifth, Mattel seeks production of all declarations, affidavits and other sworn written statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such information may reveal relevant information about the date of creation of Bryant's Bratz drawings.

In response, MGA denies withholding responsive documents and asserts that it has produced volumes of documents responsive to Mattel's requests. In particular, MGA represents that it has produced all responsive and relevant documents that it was able to locate in response to request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even before the motion was filed, it had agreed to address the vast majority of the issues raised in this motion. In particular, MGA represents that it is diligently working to produce documents related

to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46, 49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100. MGA represents that it informed Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that have been released on the market. In addition, MGA represents that it has agreed to produce documents relevant to Bratz or Prayer Angels that it received from Union Bank. More specifically, MGA represents that it agreed to review and produce documents provided to it by Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for Bratz or Prayer Angels. MGA also represents that it has agreed to produce royalty statements. Therefore, MGA views the motion as unnecessary.

MGA next contends that Mattel's motion should be denied for the following additional reasons. First, MGA contends that Mattel is not entitled to MGA's product design documents for unreleased products. MGA asserts that its product design documents for its unreleased toy concepts are among its most highly valuable trade secrets. Furthermore, MGA contends that designs and drawings for products currently under development, over six years after Bryant first created his original Bratz drawings, have no relevance to any of Mattel's claims. In the event that documents relating to unreleased products are ordered produced, MGA requests a protective order under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically than the current protective order provides. In the alternative, MGA requests that any order compelling production of documents relating to unreleased products should essentially be stayed until after MGA's products are publicly released.

Second, MGA contends that Mattel is not entitled to information concerning Bryant's attorneys' fees because the information is privileged. Furthermore, MGA contends that the information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's Opposition at 24:9-12.[2]

Third, MGA asserts that Mattel is not entitled to review all non-public witness statements and litigation documents concerning Bratz for a variety of reasons, including because Mattel has refused to produce similar types of documents. More significantly, MGA contends that Mattel's requests for non-public witness statements are "a blatant attempt to avoid the discovery limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations imposed by this Court." MGA's Opposition at 25:6-7. MGA explains its position as follows. MGA is involved in litigation against a number of counterfeiters and infringers in Asia. In 2003, Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel abandoned its claims based upon "Toon Teens" in this court. Thereafter, those defendants took the position that MGA did not own, and therefore could not enforce, the rights to Bratz. MGA was thus forced to litigate the issue of ownership. MGA contends that "[i]n effect, by prompting foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created a situation in which MGA has been forced to give testimony and provide evidence related to issues in this case that Mattel now seeks to obtain wholesale." MGA's Opposition at 25:5-24.

Fourth, MGA contends that Mattel is not entitled to documents concerning a family dispute between MGA's chief executive officer and his brother because such documents are in no way relevant to this lawsuit. MGA explains that the brothers were involved in an arbitration proceeding relating to MGA's CEO's purchase of his brother's interest in MGA. Moreover, MGA contends that the brothers were bound by a protective order prohibiting the use of any documents or testimony for any purpose other than the arbitration.

---

[2] Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.

Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel files because they contain confidential information and are not relevant to the lawsuit. Sixth, MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd. Lastly, MGA objects to producing documents relating to any testing performed to determine the date that Bratz documents were created. MGA contends that such discovery is premature and should not proceed until experts are designated.

B. Interrogatories

On April 28, 2005, Mattel served its Second Set of Interrogatories. On May 20, 2005, however, the district court stayed the action. On May 17, 2006, the district court lifted the stay. On May 30, 2006, MGA responded to the interrogatories.

Mattel contends that MGA's responses to the interrogatories were untimely. Further, Mattel contends that the interrogatory responses to numbers five through eleven are deficient because they lack substantive information and consist almost entirely of objections. MGA responds that the motion is moot because it is prepared to provide supplemental responses to its interrogatories. MGA does not otherwise assert any additional grounds for opposing Mattel's motion to compel responses to interrogatories.

## III. DISCUSSION

A. Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

B. Document Requests

1. Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100

The requests above seek discoverable information regarding the origins of Bratz and Bryant's work for MGA. MGA represents that it has produced all responsive documents in response to request nos. 6, 26, 27, 32, 33, 34, 35, 55,and 69 (MGA's Opposition at 13:4-5), and is "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99, and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at 14:1-4 and note 39). MGA does, however, object to producing design documents for unreleased products and documents from MGA Hong Kong.

As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted its production to "relevant and responsive non-objectionable documents" or documents "sufficient" to show when events relating to Bratz occurred. These restrictions suggest that MGA might be excluding documents that are responsive to the request based upon its unilateral determination of what is "relevant" or "sufficient." Mattel shall provide the responses to document requests ordered herein without these restrictions.

Design Documents for Unreleased Products

MGA's design documents for unreleased products are relevant to Mattel's claims and defenses and must be produced. See Order Modifying Protective Order. On April 23, 2007, the parties submitted a stipulation to modify the existing protective order to limit the disclosure of design documents for unreleased products that constitute trade secret information. See Stipulation

to Modify Protective Order; And Proposed Order Thereon ("stipulation"). The parties' stipulation has been approved and entered as an order of the court. MGA is ordered to produce design documents for unreleased products that are responsive to Mattel's document requests in accordance with the terms of the stipulation and order.

Documents from MGA Hong Kong

Documents relating to activities or conduct in foreign countries are relevant and discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with Bratz. Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel provides reciprocal discovery from its subsidiaries.

Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in the context of this motion, and therefore is not addressed herein. MGA is ordered to produce documents from MGA Hong Kong.

Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100.

2. Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59, 61, 63, 66, 67, 70, 88, 90, 91

Mattel contends that MGA is improperly limiting its document production to the "first generation" Bratz dolls. MGA represents, however, that it has agreed to produce subsequent generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design documents for yet unreleased products.

As stated previously, design documents for yet unreleased products are relevant and discoverable. See Order Modifying Protective Order. Accordingly, MGA is ordered to produce all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59, 61, 63, 66, 67, 70, 88, 90, and 91.

//

//

3. MGA's Payments to Bryant (Nos.43, 45)

MGA represents that it has already agreed to produce documents related to Bratz, without limiting its production to "first generation" Bratz. MGA's motion at 13:7-14:3. Nevertheless, Mattel is entitled to an order compelling production of such documents by a date certain. Mattel's motion is granted with respect to request nos. 43 and 45.

4. MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)

MGA represents that it has already agreed to produce non-privileged documents responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not relevant (MGA's motion at 13:7-14:3). These requests seek documents relating to fee or indemnity agreements between MGA and Bryant .

Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility. Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50. Any responsive documents withheld on the basis of a privilege must be properly identified in a privilege log.

5. Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40, 41,

In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits, and other sworn written statements from cases that refer or relate to Bratz or Angel. Mattel anticipates that these documents could provide evidence relating to the conception date for Bratz.

Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception date for Bratz. MGA admits in its opposition brief that this issue was litigated in its suits against alleged counterfeiters and infringers.[3] The issue also appears to have been raised in the arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother Farhad Larian. In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

[3] Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority that prohibits Mattel's conduct.

that MGA was developing Bratz by early 2000. Nevertheless, MGA objects to producing documents from the Larians' arbitration on the grounds that the arbitration was governed by a protective order that prohibits the use of any documents or testimony for any purpose other than the arbitration. MGA, however, has not provided any evidence of the protective order. Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6. Documents Regarding Date-Testing (Request No. 92)

Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling from any documents that refer or relate to Bratz or Bryant, including without limitation any such testing or sampling in connection with ink, paper or chemical analysis to date any such documents and including without limitation all results and reports relating thereto." MGA contends that the request is premature, and should proceed in the course of expert discovery.

The request calls for relevant discovery and there is no basis for delaying production of responsive documents, other than expert reports. The timing of expert reports is governed by Rule 26(a)(2)(C), Fed.R.Civ.P. Accordingly, Mattel's motion is granted as to request no. 92.

C. Interrogatories

Mattel contends that MGA's responses to interrogatories were untimely, and therefore MGA has waived its objections to the interrogatories. Pursuant to Rule 33(b)(3), Fed.R.Civ.P., responses to interrogatories are due thirty days after service. In this case, Mattel served its interrogatories on April 28, 2005, and responses were initially due May 31, 2005. The district court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were served. The district court lifted the stay on May 17, 2006.

---

[4] In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's personnel file based upon privacy grounds. The personnel file may have documents relevant to Bratz, and therefore should be produced. The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

Neither party has cited to any caselaw governing the calculation of the 30-day period when there is an intervening stay in discovery. In the absence of any caselaw, MGA's responses will be treated as timely in order to preserve any valid objections MGA may have asserted.

Interrogatory No. 5 seeks the identity of each and every person who was involved in the conception, origin, creation, design, development, sculpting, engineering, reduction to practice, tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz before December 31, 2001, including a description of each person's role and the start and end dates of each person's involvement. In response, MGA asserted numerous objections, but did provide the names of five individuals.

The interrogatory clearly seeks information relevant to the claims at issue. MGA's objections are without merit. The interrogatory is not vague, ambiguous, compound or overbroad. Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or seeks information protected by the attorney-client privilege. Furthermore, MGA's response is incomplete insofar as it fails to provide the description of each person's role and the start and end dates of each person's involvement. Accordingly, MGA is ordered to provide a complete response to Interrogatory No. 5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any embodiment of Angel. MGA is ordered to provide a complete response to Interrogatory No. 6 for the reasons previously discussed in connection with Interrogatory No. 5.

Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to December 31, 2001. In response, MGA asserted numerous objections and did not provide any substantive information.

MGA's objections are without merit. The interrogatory clearly seeks information relevant to establishing when Bryant first conceived Bratz. The interrogatory is not vague, ambiguous, compound or overbroad. Nor has MGA carried its burden of establishing that the interrogatory is

unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or seeks information protected by the attorney-client privilege. Accordingly, MG is ordered to provide a complete response to Interrogatory No. 7.

Interrogatory No.8 asks MGA to identify each and every embodiment of Angel. MGA is ordered to provide a complete response to Interrogatory No. 8 for the reasons previously discussed in connection with Interrogatory No. 7.

Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling or painting of Bratz. In response, MGA asserted numerous objections and did not provide any substantive information.

The interrogatory seeks information relevant to establishing when Bryant first conceived Bratz. Furthermore, MGA's boiler-plate objections are unsubstantiated. Accordingly, MGA is ordered to provide a complete response to Interrogatory No. 9.

Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on which each such instance occurred, the location of each show or exhibit, and the identity of persons with knowledge of the shows or exhibits. In response, MGA asserted numerous objections and provided the following information: Hong Kong Toy Fair in Hong Kong in or about January 2001 and New York Toy Fair, New York, in or about February 2001.

Once again, MGA's boiler-plate objections are unsubstantiated. The information is potentially relevant to establish when Bryant conceived Bratz. Further, the response is incomplete insofar as it fails to identify any persons with knowledge. Therefore, MGA is ordered to provide a complete response to Interrogatory No. 10.

Interrogatory No. 11 requires MGA to state the "number for each and every telephone, including without limitation each office, home and cell phone number, in the name of, for the benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

January 1, 1998 through the present, and IDENTIFY each and every carrier (including without limitation any long-distance carrier) for each such number. In response, MGA asserted numerous boiler-plate objections.

Once again, MGA has failed to substantiate any of its objections with supporting declarations or legal authorities. Accordingly, all objections are overruled and MGA is ordered to provide a full response to Interrogatory No. 11.

IV. CONCLUSION

For the reasons set forth above, Mattel's motion to compel production of documents is granted. MGA shall produce all non-privileged documents that are responsive to the requests identified in this Order. Further, MGA shall produce all documents in un-redacted form, except for redactions that are justified by the attorney-client privilege or work product doctrine. Mattel's motion to compel interrogatory answers is also granted. MGA shall produce documents and provide responses to interrogatories consistent with this Order, and produce a privilege log in compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007. Mattel's request for sanctions is denied.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

Dated: May 15, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

**Exhibit 10**

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
(timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br>Plaintiff,<br>v.<br>MATTEL, INC., a Delaware corporation,<br>Defendant.<br><br>AND CONSOLIDATED CASES. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>MATTEL, INC.'S FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS RE CLAIMS OF UNFAIR COMPETITION TO MGA ENTERTAINMENT, INC. |

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Mattel, Inc. hereby requests that MGA Entertainment, Inc. ("MGA") respond to these document requests ("Requests") and make available for inspection and copying originals of the following documents within 30 days of service at the offices of Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 South Figueroa Street, 10th floor, Los Angeles, CA 90017. MGA shall be obligated to supplement responses to these requests at such times and to the extent required by Rule 26(e) of the Federal Rules of Civil Procedure.

## I. DEFINITIONS

For purposes of these Requests, the following definitions apply:

A. The terms "YOU," "YOUR" and "MGA" mean MGA Entertainment, Inc. and any individual or entity acting directly or indirectly by, through, under or on behalf of MGA Entertainment, Inc., including but not limited to current or former directors, officers, employees, agents, contractors, attorneys, accountants, or representatives of MGA Entertainment, Inc. and any corporation, partnership, association, trust, parent, subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest, and any other PERSON acting on its behalf.

B. The term "MATTEL" means Mattel, Inc. and all current or former directors, officers, employees, agents, contractors, attorneys, accountants, representatives, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

C. "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in Rule 1001 of the Federal Rules of Evidence and Rule 34 of the Federal Rules of Civil Procedure and shall include all writings, including but not limited to handwriting, typewriting, printing, image, photograph, photocopy, digital file of any kind, transmittal by (or as an attachment to) electronic mail (including instant messages and text messages) or facsimile, video and audio recordings, and every other means of recording upon any tangible thing, any form of communication or representation, and any record thereby created, regardless of the manner in which the record has been stored, and all non-identical copies of such DOCUMENTS, in the possession, custody, or control of YOU, YOUR counsel, or any other PERSON acting on YOUR behalf.

D. The term "COMMUNICATION," in the plural as well as the singular, means any transmittal and/or receipt of information, whether such was oral or written, and whether such was by chance, prearranged, formal or informal, and

specifically includes, but is not limited to, conversations in person, telephone conversations, electronic mail (including instant messages and text messages), voicemail, letters, memoranda, statements, media releases, magazine and newspaper articles, and video and audio transmissions.

E. "EMBODIMENT" means any representation of the identified product or its retail packaging, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

F. "CONTESTED MGA PRODUCTS" means the CONTESTED BRATZ DOLLS PRODUCTS, the CONTESTED BRATZ PETZ PRODUCTS, the CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD, the CONTESTED 4-EVER BEST FRIENDS PRODUCTS, the CONTESTED MOMMY'S LITTLE DOLL PRODUCTS, and the CONTESTED ALIENRACERS PRODUCTS, and any doll, toy, portion thereof, or version thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under the name or terms "Bratz," "4-ever Best Friends," "Mommy's Little," "Alienracers," or any derivative thereof, that provides a basis for any claim by YOU against MATTEL, including but not limited to "Bratz Dolls," "Bratz Dogz," "Winter Wonderland," "Bratz Sportz," "Formal Funk," "Sun-Kissed Summer," "Funky Fashion Makeover Head," "Runway Disco," "4-ever Best Friends," "Mommy's Little Patient," and "Alienracers."

G. "CONTESTED BRATZ DOLLS PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL: (i) any

EMBODIMENT or project ever known by the name "Bratz" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any doll or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "Bratz" or any derivative thereof (whether in whole or in part and regardless of what such doll is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that YOU distribute under the name "Bratz" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by YOU or on YOUR behalf under the name "Bratz" or any derivative thereof.

H. "CONTESTED BRATZ PETZ PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL: (i) any EMBODIMENT or project ever known by the name "Bratz Petz" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any toy pet or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "Bratz" or any derivative thereof (whether in whole or in part and regardless of what such toy pet is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, toy pet or any portion thereof; (ii) any playset and accessory that YOU distribute under the name "Bratz Petz" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted,

displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Petz" or any derivative thereof.

I. "CONTESTED BRATZ FUNKY FASHION MAKEOVER HEAD" means any of the following that provides a basis for any claim by YOU against MATTEL: (i) any EMBODIMENT or project ever known by the name "Bratz Funky Fashion Makeover Head" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any styling head or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "Bratz" or any derivative thereof (whether in whole or in part and regardless of what such styling head is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, styling head or any portion thereof; (ii) any accessory that YOU distribute under the name "Bratz Funky Fashion Makeover Head" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by YOU or on YOUR behalf under the name "Bratz Funky Fashion Makeover Head" or any derivative thereof.

J. "CONTESTED 4-EVER BEST FRIENDS PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL: (i) any EMBODIMENT or project ever known by the name "4-ever Best Friends" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any doll or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term

"4-ever Best Friends" or any derivative thereof (whether in whole or in part and regardless of what such doll is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that YOU distribute under the name "4-ever Best Friends" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by YOU or on YOUR behalf under the name "4-ever Best Friends" or any derivative thereof.

K. "CONTESTED MOMMY'S LITTLE DOLL PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL: (i) any EMBODIMENT or project ever known by the name "Mommy's Little Patient" or similar name or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any doll or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "Mommy's Little Patient" or similar name or any derivative thereof (whether in whole or in part and regardless of what such doll is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that YOU distribute under the name "Mommy's Little Patient" or similar name or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by YOU or on YOUR behalf under the name "Mommy's Little Patient" or similar name or any derivative thereof.

L. "CONTESTED ALIENRACERS PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL: (i) any EMBODIMENT or project ever known by the name "Alienracers" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any toy vehicle, character, or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "Alienracers" or any derivative thereof (whether in whole or in part and regardless of what such toy is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, toy vehicle, character, or any portion thereof; (ii) any playset and accessory that YOU distribute under the name "Alienracers" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by YOU or on YOUR behalf under the name "Alienracers" or any derivative thereof.

M. "CONTESTED MATTEL PRODUCTS" means the CONTESTED MATTEL MY SCENE DOLLS PRODUCTS, the CONTESTED MATTEL MY SCENE PETS PRODUCTS, the CONTESTED MATTEL MY SCENE STYLING HEAD, the CONTESTED MATTEL WEE-3 PRODUCTS, the CONTESTED MATTEL LITTLE MOMMY DOLL PRODUCTS, and the CONTESTED MATTEL ACCELERACERS PRODUCTS, and any doll, toy, portion thereof, or version thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under the name or terms "My Scene," "Wee-3," "Little Mommy," "AcceleRacerS," or any derivative thereof, that provides a basis for any claim by YOU against MATTEL, including but not limited to "My Scene Dolls," "My Scene Pets," "My Scene Chillin' Out," "My Scene

Miami Getaway," "My Scene Night on the Town," "My Scene Jammin' in Jamaica," "My Scene Guava Gulch Tiki Lounge," "My Scene Sound Lounge," "My Scene Stylin' Head," "Mattel Wee-3," "Mattel Little Mommy Potty Training Baby Doll," and "Mattel Acceleracers."

N. "CONTESTED MATTEL MY SCENE DOLLS PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any doll or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "My Scene" or any derivative thereof (whether in whole or in part and regardless of what such doll is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that MATTEL distributes under the name "My Scene" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by MATTEL under the name "My Scene" or any derivative thereof.

O. "CONTESTED MATTEL MY SCENE PETS PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene Pets" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any toy pet or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or

term "My Scene" or any derivative thereof (whether in whole or in part and regardless of what such toy pet is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, toy pet or any portion thereof; (ii) any playset and accessory that MATTEL distributes under the name "My Scene Pets" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by MATTEL under the name "My Scene Pets" or any derivative thereof.

P. "CONTESTED MATTEL MY SCENE STYLING HEAD" means any of the following that provides a basis for any claim by YOU against MATTEL: (i) any EMBODIMENT or project ever known by the name "My Scene Styling Head" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any styling head or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "My Scene" or any derivative thereof (whether in whole or in part and regardless of what such styling head is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, styling head or any portion thereof; (ii) any accessory that MATTEL distributes under the name "My Scene Styling Head" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by MATTEL under the name "My Scene Styling Head" or any derivative thereof.

Q. "CONTESTED MATTEL WEE-3 PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL: (i) any EMBODIMENT or project ever known by the name "Wee-3" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any doll or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "Wee-3" or any derivative thereof (whether in whole or in part and regardless of what such doll is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that MATTEL distributes under the name "Wee-3" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by MATTEL under the name "Wee-3" or any derivative thereof.

R. "CONTESTED MATTEL LITTLE MOMMY DOLL PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL: (i) any EMBODIMENT or project ever known by the name "Little Mommy" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any doll or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "Little Mommy" or any derivative thereof (whether in whole or in part and regardless of what such doll is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, doll or any portion thereof; (ii) any playset and accessory that MATTEL distributes

under the name "Little Mommy" or any derivative thereof; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by MATTEL under the name "Little Mommy" or any derivative thereof.

S. "CONTESTED MATTEL ACCELERACERS PRODUCTS" means any of the following that provides a basis for any claim by YOU against MATTEL: (i) any EMBODIMENT or project ever known by the name "AcceleRacers" or any derivative thereof (whether in whole or in part and regardless of what such EMBODIMENT or project is or has been also, previously or subsequently called) and any toy vehicle, character, or any portion thereof that is now or has ever been known as, or sold, offered for sale, licensed, offered for license or marketed under, the name or term "AcceleRacers" or any derivative thereof (whether in whole or in part and regardless of what such toy is or has been also, previously or subsequently called), and all prototypes, models, samples and versions of such EMBODIMENT, toy vehicle, character, or any portion thereof; (ii) any playset and accessory that MATTEL distributes under the name "AcceleRacers" or any derivative thereof ; and/or (iii) any and all other goods, product packaging, advertisements, promotional materials or other thing or item or material manufactured, produced, printed, ordered, marketed, advertised, promoted, displayed, distributed, shipped, imported, exported, licensed, offered for license, sold or offered for sale by MATTEL under the name "AcceleRacers" or any derivative thereof.

T. The term "PERSON," in the plural as well as the singular, means any natural person, association, partnership, corporation, joint venture, government entity, organization, trust, institution, proprietorship, or any other entity recognized as having an existence under the laws in United States or any other nation.

U. The term "RELATING TO" means any and all of the following terms and their synonyms: refer to, discuss, constitute, evidence, pertain to, mention, support, contradict, negate, bear on, touch on, contain, embody, reflect, identify, state, deal with, concern, comment on, respond to, relevant to, or describe.

V. "COMPLAINT" means the Complaint for False Designation of Origin, Affiliation, Association or Sponsorship (15 U.S.C. § 1125(a)); Unfair Competition (15 U.S.C. § 1125(a)); Cal. Bus. & Prof. Code § 17200 *et seq.* and California Common Law); Dilution (15 U.S.C. § 1125(c), Cal Bus. & Prof. Code § 14330 and California Common Law); and Unjust Enrichment, filed by YOU on or about April 13, 2005.

## II. INSTRUCTIONS

A. YOU are to produce all requested DOCUMENTS in YOUR possession, custody or control.

B. If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these Requests on the grounds of a privilege or protection that YOU are not prepared to waive, identify each such DOCUMENT and provide the following information:

1. the date and type of the DOCUMENT, the author(s) and all recipients;
2. the privilege or protection that YOU claim permits YOU to withhold the DOCUMENT;
3. the title and subject matter of the DOCUMENT;
4. any additional facts on which YOU base YOUR claim of privilege or protection; and
5. the identity of the current custodian of the original of the DOCUMENT.

EXHIBIT 10, PAGE 456

C. DOCUMENTS shall be produced in their original file folders, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT and the PERSON for whom or department, division or office for which the DOCUMENT or the file folder is maintained shall be identified.

D. The DOCUMENTS should be produced in their complete and unaltered form. Attachments to DOCUMENTS should not be removed. The DOCUMENTS should not be cut-up, pasted over, redacted or altered in any way for any reason, including alleged nonrelevance. If emails are produced that had attachments, the attachments shall be attached when produced.

E. DOCUMENTS in electronic form shall be produced in that form.

F. In the event that any DOCUMENT called for by these requests has been destroyed or discarded, that DOCUMENT is to be identified by stating:

1. the date and type of the DOCUMENT, the author(s) and all recipients;

2. the DOCUMENT's date, subject matter, number of pages, and attachments or appendices;

3. the date of destruction or discard, manner of destruction or discard, and reason for destruction or discard;

4. the PERSONS who were authorized to carry out such destruction or discard;

5. the PERSONS who have knowledge of the content, origins, distribution and destruction of the DOCUMENT; and

6. whether any copies of the document exist and, if so, the name of the custodian of each copy.

EXHIBIT 10, PAGE 457

## III. REQUESTS FOR DOCUMENTS AND THINGS

REQUEST FOR PRODUCTION NO. 1:

A sample of each of the CONTESTED MGA PRODUCTS, together with each such product's packaging and all instructions, promotional literature, coupons, bounce-back cards and any other materials inserted in or associated with such packaging.

REQUEST FOR PRODUCTION NO. 2:

A sample of each display, including but not limited to each point-of-purchase or in-store display, prepared, produced, printed, manufactured or used in connection with the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 3:

A complete copy of each advertisement or promotional statement prepared, produced, printed, broadcast, made available to anyone in any manner via the Internet, or otherwise used or disseminated in any way in connection with the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 4:

A complete copy of each COMMUNICATION, advertisement, promotional statement that provides a basis for any claim by YOU against MATTEL.

REQUEST FOR PRODUCTION NO. 5:

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, and ownership of the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 6:

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, and ownership of any product packaging that provides a basis for any claim by YOU against MATTEL.

REQUEST FOR PRODUCTION NO. 7:

All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, and ownership of the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 8:

All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, and ownership of all product packaging that provides a basis for any claim by YOU against MATTEL.

REQUEST FOR PRODUCTION NO. 9:

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of products and packaging that YOU contend provide a basis for any claim against MATTEL, whether or not such claim is made in the COMPLAINT.

REQUEST FOR PRODUCTION NO. 10:

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of all products and packaging that YOU contend MATTEL copied or infringed.

REQUEST FOR PRODUCTION NO. 11:

All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of the CONTESTED MATTEL PRODUCTS and their associated packaging.

REQUEST FOR PRODUCTION NO. 12:

All DOCUMENTS RELATING TO COMMUNICATIONS with any PERSON regarding the invention, creation, origin, conception, authorship, design, development, production, engineering, manufacture, distribution, sale, and ownership of all products and packaging that YOU contend MATTEL copied or infringed.

REQUEST FOR PRODUCTION NO. 13:

All DOCUMENTS RELATING TO any revision of any CONTESTED MGA PRODUCTS, including but not limited to any proposed alternatives, modifications or changes (whether or not implemented) to such CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 14:

All DOCUMENTS RELATING TO the first date of availability for retail sale of each of the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 15:

All DOCUMENTS RELATING TO the first date that each of the CONTESTED MGA PRODUCTS was shown to any PERSON not employed by MGA, whether in concept, prototype, or finished form.

EXHIBIT 10, PAGE 460

REQUEST FOR PRODUCTION NO. 16:

All head sculptures, including all preliminary head sculptures and all versions of such sculptures, made, produced or prepared in connection with the CONTESTED BRATZ DOLLS PRODUCTS.

REQUEST FOR PRODUCTION NO. 17:

All DOCUMENTS RELATING TO the tooling for any of the CONTESTED BRATZ DOLLS PRODUCTS, including but not limited to all invoices, contracts, sales orders, purchase orders and payment relating thereto and including but not limited to all DOCUMENTS relating to the engineering, preparation, fabrication and creation of the molds and face paint masks used in connection therewith and to the film and/or digital files used in connection with the packaging therefor.

REQUEST FOR PRODUCTION NO. 18:

All DOCUMENTS RELATING TO the marketing, advertising, promotion, licensing, offering for sale or sale of the CONTESTED MGA PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans, sales forecasts, strategies, surveys and analyses and including but not limited to all catalogs, advertisements, brochures, displays and Internet publications.

REQUEST FOR PRODUCTION NO. 19:

All DOCUMENTS RELATING TO the ownership of any right, title or interest, whether in whole or in part, in or to the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 20:

All DOCUMENTS RELATING TO any copyright, patent, design right or any other registration or application for registration of the CONTESTED MGA

PRODUCTS, including but not limited to the complete file history relating thereto, all COMMUNICATIONS relating thereto, and all filings, declarations, affidavits, correspondence, notes and other DOCUMENTS relating thereto.

REQUEST FOR PRODUCTION NO. 21:

Documents sufficient to identify each of the CONTESTED MGA PRODUCTS by internal job or product number, SKU, and bar code number.

REQUEST FOR PRODUCTION NO. 22:

Documents sufficient to identify the individuals who worked on or were involved in any manner with the invention, creation, origin, conception, authorship, or design of the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 23:

All DOCUMENTS RELATING TO the display, exhibition, distribution, publication, circulation, or other dissemination of the CONTESTED MGA PRODUCTS to distributors, the media, or the public, including but not limited to toy and trade shows and conventions.

REQUEST FOR PRODUCTION NO. 24:

All DOCUMENTS RELATING TO any contracts or licenses entered into, negotiated, proposed, or requested RELATING TO any of the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 25:

All DOCUMENTS RELATING TO any actual, proposed, offered, or requested licensing, sale, or purchase of the CONTESTED MGA PRODUCTS,

including but not limited to all contracts and proposed or offered contracts relating thereto.

REQUEST FOR PRODUCTION NO. 26:

All DOCUMENTS RELATING TO the target market or potential target market, and the demographics of any actual, potential or prospective consumers, customers, purchasers or licensees of the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 27:

All DOCUMENTS RELATING TO the number of units of the CONTESTED MGA PRODUCTS manufactured, produced, ordered, stored in inventory, imported, exported, shipped, sold, or offered for sale by any PERSON, including but not limited to YOU.

REQUEST FOR PRODUCTION NO. 28:

All DOCUMENTS RELATING TO revenues received by YOU in connection with each of the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 29:

All DOCUMENTS RELATING TO YOUR costs, including but not limited to YOUR per-unit cost, for each of the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 30:

All DOCUMENTS RELATING TO YOUR profits, including but not limited to gross, incremental and net profits, for each of the CONTESTED MGA PRODUCTS.

EXHIBIT 10, PAGE 463

REQUEST FOR PRODUCTION NO. 31:

All DOCUMENTS RELATING TO any complaints or dissatisfaction concerning the CONTESTED MGA PRODUCTS, including but not limited to DOCUMENTS recording the returns of, or the number of or rate of defects for, such products.

REQUEST FOR PRODUCTION NO. 32:

All DOCUMENTS RELATING TO the belief of any PERSON (whether or not such belief is accurate) as to the origin, affiliation, sponsorship or association of the CONTESTED MGA PRODUCTS, including but not limited to all studies, surveys, interviews, reports, and COMMUNICATIONS regarding any such belief.

REQUEST FOR PRODUCTION NO. 33:

All DOCUMENTS RELATING TO the belief of any PERSON (whether or not such belief is accurate) as to the origin, affiliation, sponsorship or association of the CONTESTED MATTEL PRODUCTS, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such belief.

REQUEST FOR PRODUCTION NO. 34:

All DOCUMENTS RELATING TO any potential or actual confusion, any potential or actual mistake or any potential or actual deception of any PERSON as to the origin, affiliation, sponsorship or association of the CONTESTED MGA PRODUCTS, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such confusion, mistake or deception.

EXHIBIT 10, PAGE 464

REQUEST FOR PRODUCTION NO. 35:

All DOCUMENTS RELATING TO any potential or actual confusion, any potential or actual mistake or any potential or actual deception of any PERSON as to the origin, affiliation, sponsorship or association of the CONTESTED MATTEL PRODUCTS, including but not limited to all studies, surveys, interviews, reports and COMMUNICATIONS regarding any such confusion, mistake or deception.

REQUEST FOR PRODUCTION NO. 36:

All DOCUMENTS RELATING TO any consumer studies, reports, surveys, interviews or reports regarding the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 37:

All DOCUMENTS RELATING TO the marketing, advertising, promotion, licensing, offering for sale or sale of the CONTESTED MATTEL PRODUCTS, including but not limited to all marketing studies, marketing plans, sales plans, sales forecasts, strategies, surveys and analyses and including but not limited to all catalogs, advertisements, brochures, displays and Internet publications.

REQUEST FOR PRODUCTION NO. 38:

All DOCUMENTS RELATING TO the ownership of any right, title or interest, whether in whole or in part, in or to the CONTESTED MATTEL PRODUCTS.

EXHIBIT 10, PAGE 465

REQUEST FOR PRODUCTION NO. 39:

All DOCUMENTS RELATING TO the invention, creation, origin, conception, authorship, design, and ownership of the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 40:

All DOCUMENTS RELATING TO the display, exhibition, distribution, publication, circulation, or other dissemination of the CONTESTED MATTEL PRODUCTS to distributors, the media, or the public, including but not limited to toy and trade shows and conventions.

REQUEST FOR PRODUCTION NO. 41:

All COMMUNICATIONS between YOU and any stock analyst, investment analyst, investment bank, institutional lender, or venture capital fund since January 1, 1999.

REQUEST FOR PRODUCTION NO. 42:

All COMMUNICATIONS between YOU and any individual while the individual was employed by MATTEL.

REQUEST FOR PRODUCTION NO. 43:

All COMMUNICATIONS between YOU and MATTEL RELATING TO the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 44:

All COMMUNICATIONS between YOU and any PERSON RELATING TO the claims made in YOUR COMPLAINT or the facts that YOU contend support such claims.

REQUEST FOR PRODUCTION NO. 45:

All DOCUMENTS RELATING TO YOUR knowledge of MATTEL's alleged infringement of YOUR claimed EMBODIMENTS.

REQUEST FOR PRODUCTION NO. 46:

All DOCUMENTS RELATING TO any unjust enrichment, damage, loss, or injury that YOU claim has been sustained by reason of any act or omission by MATTEL, including but not limited to all DOCUMENTS RELATING TO any alleged lost profits, lost sales, lost opportunity, lost license, price erosion, consequential or incidental damage, information or intellectual property provided to any competitor, or benefit obtained by any competitor, including but not limited to all DOCUMENTS RELATING TO the causation for any such alleged unjust enrichment, damage, loss, or injury.

REQUEST FOR PRODUCTION NO. 47:

All DOCUMENTS supporting YOUR contention that MATTEL created, designed, derived, or developed products, packaging, and advertising using concepts, products, or intellectual property owned by YOU.

REQUEST FOR PRODUCTION NO. 48:

All DOCUMENTS RELATING TO the copying, reproduction or use of any MATTEL work, product, or EMBODIMENT by YOU or on YOUR behalf.

REQUEST FOR PRODUCTION NO. 49:

All DOCUMENTS RELATING TO any similarity or dissimilarity between, on the one hand, any of the CONTESTED MGA PRODUCTS and any other work or product developed, manufactured, or distributed by any other person or entity, including but not limited to MATTEL.

REQUEST FOR PRODUCTION NO. 50:

All DOCUMENTS RELATING TO the reasons why consumers purchase any of the CONTESTED MGA PRODUCTS, including but not limited to all consumer surveys, studies and comments pertaining thereto.

REQUEST FOR PRODUCTION NO. 51:

All DOCUMENTS RELATING TO the channels of trade or potential or prospective channels of trade for the CONTESTED MGA PRODUCTS.

REQUEST FOR PRODUCTION NO. 52:

All DOCUMENTS RELATING TO any similarity or dissimilarity between any of the CONTESTED MGA PRODUCTS and any EMBODIMENTS authored, created, distributed, made, sold or offered for sale by any PERSON other than YOU.

REQUEST FOR PRODUCTION NO. 53:

All DOCUMENTS RELATING TO any similarity or dissimilarity between any of the CONTESTED MGA PRODUCTS and any of the CONTESTED MATTEL PRODUCTS.

EXHIBIT 10, PAGE 468

REQUEST FOR PRODUCTION NO. 54:

All DOCUMENTS RELATING TO any COMMUNICATION by YOU with any news organization regarding the CONTESTED MGA PRODUCTS or the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 55:

All periodicals, whether they be magazines, newspapers, newsletters, or any other type of periodical, that mention the CONTESTED MGA PRODUCTS that have been published since January 1, 1999.

REQUEST FOR PRODUCTION NO. 56:

All television or radio broadcasts or cablecasts that mention the CONTESTED MGA PRODUCTS that have been disseminated since January 1, 1999.

REQUEST FOR PRODUCTION NO. 57:

All Internet postings or COMMUNICATIONS that mention the CONTESTED MGA PRODUCTS that have been disseminated since January 1, 1999.

REQUEST FOR PRODUCTION NO. 58:

All DOCUMENTS RELATING TO publicity by YOU or about the CONTESTED MGA PRODUCTS since January 1, 1999, including but not limited to advertising, media releases, and public relations material.

REQUEST FOR PRODUCTION NO. 59:

All DOCUMENTS RELATING TO any effort by YOU to recruit employees or contractors since January 1, 1999, including but not limited to

advertising, media releases, brochures, articles, catalogs, handbooks, and public relations material.

REQUEST FOR PRODUCTION NO. 60:

All DOCUMENTS RELATING TO the hiring, engagement, or retention by YOU of any current or former MATTEL employee or contractor since January 1, 1999, including but not limited to all employment agreements and agreements RELATING TO confidentiality or the invention, authorship, or ownership of any concept or product.

REQUEST FOR PRODUCTION NO. 61:

All DOCUMENTS RELATING TO any of the CONTESTED MATTEL PRODUCTS that were obtained by YOU before the date that such product was first offered for sale to the general public.

REQUEST FOR PRODUCTION NO. 62:

All DOCUMENTS, since January 1, 1999, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, data and/or information, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that was not publicly available at the time of YOUR receipt of such DOCUMENT, data and/or information.

REQUEST FOR PRODUCTION NO. 63:

All DOCUMENTS, since January 1, 1999, RELATING TO YOUR knowledge of any MATTEL product prior to the time that such product had been

announced or disclosed by MATTEL to retailers or the public, including but not limited to the CONTESTED MATTEL PRODUCTS.

REQUEST FOR PRODUCTION NO. 64:

All DOCUMENTS, since January 1, 1999, RELATING TO YOUR receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any MATTEL line list or other DOCUMENT prepared by MATTEL identifying MATTEL products in the planning, design or development phase.

REQUEST FOR PRODUCTION NO. 65:

Copies of all DOCUMENTS that were seized by Mexican authorities from MGA's office in Mexico City, Mexico.

REQUEST FOR PRODUCTION NO. 66:

All DOCUMENTS RELATING TO the DOCUMENTS, data and/or information that were seized by Mexican authorities from MGA's office in Mexico City, Mexico.

REQUEST FOR PRODUCTION NO. 67:

All DOCUMENTS, including all COMMUNICATIONS, RELATING to the search of MGA's office in Mexico City, Mexico that was conducted by Mexican authorities.

REQUEST FOR PRODUCTION NO. 68:

All DOCUMENTS RELATING TO the email account <plot04@aol.com>, including but not limited to all emails and attachments sent

from, sent to, received by, transmitted by way of or through and/or stored in such account in any manner.

REQUEST FOR PRODUCTION NO. 69:

All DOCUMENTS RELATING TO when the email account <plot04@aol.com> was first registered, set up or established.

REQUEST FOR PRODUCTION NO. 70:

All DOCUMENTS identifying each PERSON who registered, set up, established or used the email account <plot04@aol.com>.

REQUEST FOR PRODUCTION NO. 71:

All COMMUNICATIONS between YOU and Carlos Gustavo Machado Gomez ("Machado") prior to April 20, 2004.

REQUEST FOR PRODUCTION NO. 72:

All DOCUMENTS RELATING TO COMMUNICATIONS between YOU and Machado prior to April 20, 2004, including but not limited to all calendar entries, phone logs, phone records and notes reflecting such COMMUNICATIONS.

REQUEST FOR PRODUCTION NO. 73:

All DOCUMENTS, including but not limited to all COMMUNICATIONS with any PERSON, RELATING TO Machado prior to April 20, 2004.

EXHIBIT 10, PAGE 472