**Exhibit 22**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Exhibit 23

1   DALE M. CENDALI
    (of counsel, not admitted in California)
2   DIANA M. TORRES (S.B. #162284)
    PAULA E. AMBROSINI (S.B. #193126)
3   O'MELVENY & MYERS LLP
    400 South Hope Street
4   Los Angeles, CA 90071-2899
    Telephone: (213) 430-6000
5   Facsimile: (213) 430-6407
    email:      pambrosini@omm.com
6
7   PATRICIA GLASER (S.B. # 55668)
    CHRISTENSEN, MILLER, FINK, JACOBS,
    GLASER, WEIL & SHAPIRO LLP
8   10250 Constellation Boulevard, 19th Floor
    Los Angeles, CA 90067
9   Telephone: (310) 553-3000
    Facsimile: (310) 556-2920
10
    Attorneys for Plaintiff
11  MGA Entertainment, Inc.

RECEIVED

JUN 0 3 2005

12

### UNITED STATES DISTRICT COURT

13

### CENTRAL DISTRICT OF CALIFORNIA

14

15

| | |
|---|---|
| 16  MGA ENTERTAINMENT, INC., | Case No.  CV 05-02727 NM (RNBx) |
| 17        Plaintiff, | **MGA'S MEMORANDUM OF** |
| 18     v. | **POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL'S** |
| 19  MATTEL, INC., a Delaware | **MOTION TO DISMISS AND STRIKE PORTIONS OF** |
| Corporation, and DOES 1-10, | **COMPLAINT** |
| 20        Defendants. | |
| 21 | Hearing Date:  August 8, 2005 |
| 22 | Time:           10:00 a.m.
Place:          Courtroom 11 |
| 23 | Judge:          Hon. Nora M. Manella |
| 24 | Action Filed:   April 13, 2005
Discovery Cut-off:  TBD |
| 25 | Trial Date:      TBD |

26

27

28

EXHIBIT __23__ PAGE __818__

MGA'S OPPOSITION TO MATTEL'S MOTION
TO DISMISS & STRIKE PORTIONS OF
COMPLAINT

G. 3

# TABLE OF CONTENTS

Page

I. INTRODUCTION.................................................................1

II. THE "NON-TRADE DRESS" ALLEGATIONS CONTAINED IN PARAGRAPHS 74 TO 100 AND 113 AND 114 SHOULD NOT BE DISMISSED OR STRICKEN...........................4

    A. Mattel's Motion to "Dismiss" Paragraphs 74 to 100 and 113 and 114 Is, in Reality, a Motion to Strike..................4

    B. Paragraphs 74 to 100 and 113 and 114 Should be Left Undisturbed Under Either the Motion to Dismiss or Motion to Strike Standard.......................................5

        1. Paragraphs 74 to 100 and 113 and 114 are Pertinent to and Supportive of MGA's Trade Dress Infringement and Unfair Competition Claims Under the Lanham Act.............................................7

            a. A Defendant's Intent May Be an Important Factor in the Likelihood of Confusion Analysis..............................................7

            b. A Defendant's Intent May Be Inferred From a Variety of Conduct................................8

            c. A Lanham Act Defendant's State of Mind Also Bears On Whether a Plaintiff Is Entitled to a Fee Award and Injunctive Relief..............11

            d. The Allegations That Mattel Seeks to Excise Are Important To Assessing Mattel's State Of Mind In Violating the Lanham Act.................11

        2. Paragraphs 74 to 100 and 113 and 114 Are Also Pertinent to and Supportive of MGA's Unfair Competition Claim under California Business and Professions Code Section 17200......................14

            a. The Allegations State a Claim Under the "Unfair" Prong of Section 17200....................14

            b. The Allegations Also State a Claim Under the "Unlawful" Prong of Section 17200................18

            c. Mattel's "Standing" Arguments are Red Herrings............................................19

            d. Mattel's Privilege Argument is Also Nothing More Than an Attempted Distraction.................20

            e. MGA Has Every Right to Request Restitution in its Prayer for Relief For Unfair Competition.........................................21

EXHIBIT _23_   PAGE _819_   - i -

## TABLE OF CONTENTS (cont.)

Page

C.   Paragraphs 74 to 100 and 113 and 114 Are Also Pertinent to and Supportive of MGA's Unfair Competition Claim under California Common Law. .......................................... 23

III.  THE BACKGROUND ALLEGATIONS CONTAINED IN PARAGRAPHS 11-20, 30-31, 35 AND 98, SHOULD NOT BE STRICKEN. .................................................................. 23

IV.  CONCLUSION ................................................................ 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT ___23___ PAGE ___820___ ii -

MGA'S OPPOSITION TO MATTEL'S MOTION
TO DISMISS & STRIKE PORTIONS OF
COMPLAINT

## TABLE OF AUTHORITIES

Page

### CASES

*ABC International Traders, Inc. v. Matsushita Elec. Corp.,*
14 Cal. 4th 1247, 61 Cal. Rptr. 2d 112 (1997) ................................................ 22

*Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.,*
944 F.2d 1446 (9th Cir. 1991)................................................................ 19

*Adolph Coors Co. v. Federal Trade Com.,*
497 F.2d 1178 (10th Cir. 1974) ............................................................ 17

*Amarel v. Connel,*
202 Cal. App. 3d 137, 248 Cal. Rptr. 276 (1988).......................................... 17

*AmBrit Inc. v. Kraft, Inc.,*
812 F.2d 1531 (11th Cir. 1986) ........................................................ 9, 10

*Armstrong Cork Co. v. Armstrong Plastic Covers, Co.,*
434 F. Supp. 860 (E.D. Mo. 1997) ........................................................ 11

*Balistreri v. Pacifica Police Dep't,*
901 F.2d 696 (9th Cir. 1990)................................................................ 6

*Bandag, Inc. v. Al Bolser's Tire Stores, Inc.,*
750 F.2d 903 (Fed. Cir. 1984)................................................................ 7

*Bartholet v. Reishauer A.G.,*
953 F.2d 1073 (7th Cir. 1992)................................................................ 3

*Blue Bell Bio-Medical v. Cin-Bad, Inc.,*
864 F.2d 1253 (5th Cir. 1989).......................................................... 9, 11

*Cahill v. Liberty Mut. Ins. Co.,*
80 F.3d 336 (9th Cir. 1996)................................................................ 5, 6

*Carter Carburetor Corp. v. F.T.C.,*
112 F.2d 722 (8th Cir. 1940)................................................................ 18

*Cel-Tech Comm. v. Los Angeles Cellular Tel. Co.,*
20 Cal. 4th 163, 83 Cal. Rptr. 2d 548 (1999) .................................... 14, 15, 16

*Chrysler Corp. v. Newfield Publications, Inc.,*
880 F. Supp. 504 (E.D. Mich. 1995) ...................................................... 10

*Clairol, Inc. v. Save-Way Indus., Inc.,*
210 U.S.P.Q. 459 (S.D. Fla. 1980) .......................................................... 9

*Clicks Billiards, Inc. v. Sixshooters, Inc.,*
251 F.3d 1252 (9th Cir. 2001) .......................................................... 8, 11

*Coca-Cola Co. v. Old Dominion Beverage Corp.,*
271 F. 600 (4th Cir. 1921).................................................................. 18

*Colaprico v. Sun Microsystems, Inc.,*
758 F. Supp. 1335 (N.D. Cal. 1991) .................................................... 7, 23

*Commerce Foods, Inc. v. PLC Commerce Corp.,*
504 F. Supp. 190 (S.D.N.Y. 1980) ...................................................... 8, 12

*Commission for Idaho's High Desert, Inc. v. Yost,*
92 F.3d 814 (9th Cir. 1996)................................................................ 11

*Conley v. Gibson,*
355 U.S. 41 (1957)........................................................................ 5, 6

EXHIBIT __23__ PAGE __891__   - iii -

## TABLE OF AUTHORITIES (cont.)

Page

*Day v. Moscow,*
955 F.2d 807 (2d Cir. 1992)................................................................. 5

*Denbicare U.S.A., Inc. v. Toys 'R' Us, Inc.,*
84 F.3d 1143 (9th Cir. 1996)............................................................ 19, 23

*E. & J. Gallo Winery v. Spider Webs Ltd.,*
286 F.3d 270 (5th Cir. 2002)............................................................... 10

*Fantasy, Inc. v. Fogerty,*
984 F.2d 1524 (9th Cir. 1993)......................................................... 23, 24

*Farmers Ins. Exch. v. Superior Ct.,*
2 Cal 4th 377, 6 Cal. Rptr. 2d 487 (1992)............................................. 18

*Federal Agric. Mort. Corp. v. It's a Jungle Out There,*
2004 U.S. Dist. LEXIS 22933 (N.D. Cal. 2004) .................................... 23

*Federal Trade Com. v. Motion Picture Advertising Serv. Co.,*
344 U.S. 392 (1953).............................................................................. 15

*Federal Trade Com. v. Wallace,*
75 F.2d 733 (8th Cir. 1935)................................................................... 18

*Federated Dep't Stores, Inc. v. Grinnell Corp.,*
287 F. Supp. 744 (S.D.N.Y. 1968) ....................................................... 24

*Fleischmann Distilling Corp. v. Maier Brewing Co.,*
314 F. 2d 149 (9th Cir. 1963)................................................................. 8

*Fletcher v. Security Pac. Nat'l Bank,*
23 Cal. 3d 442, 153 Cal. Rptr. 28 (1979)............................................... 22

*Fuchs Sugars & Syrups, Inc. v. Amstar Corp.,*
402 F. Supp. 636 (S.D.N.Y. 1975) ................................................... 5, 24

*Gilligan v. Jamco Dev. Corp.,*
108 F.3d 246 (9th Cir. 1997)............................................................... 5, 6

*Haddock v. Board of Dental Examiners,*
777 F.2d 462 (9th Cir. 1985)................................................................... 6

*Harley-Davidson Motor Co., Inc. v. Pierce Foods Corp.,*
231 U.S.P.Q. 857 (T.T.A.B. 1986)......................................................... 9

*Hastings Mfg. Co. v. Federal Trade Com.,*
153 F.2d 253 (6th Cir. 1946).................................................................. 18

*Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.,*
212 U.S.P.Q. 170 (N.D. Ga. 1981) ......................................................... 9

*Jerry's Famous Deli, Inc. v. Constantino Papanicolaou,*
383 F.3d 998 (9th Cir. 2004)................................................................. 21

*Kelley Blue Book v. Car-Smarts, Inc.,*
802 F. Supp. 278 (C.D. Cal. 1992) ................................................... 5, 19

*Kolling v. Dow Jones & Co.,*
137 Cal. App. 3d 709, 187 Cal. Rptr. 797 (1982).................................. 17

*Korea Supply Co. v. Lockheed Martin Corp.,*
29 Cal. 4th 1134, 131 Cal. Rptr. 2d 29 (2003) ..................................... 22

*Lambda Electronics Corp. v. Lambda Tech., Inc.,*
515 F. Supp. 915 (S.D.N.Y. 1981) ....................................................... 11

EXHIBIT __23__ PAGE __822__

- iv -

MGA'S OPPOSITION TO MATTEL'S MOTION
TO DISMISS & STRIKE PORTIONS OF
COMPLAINT

## TABLE OF AUTHORITIES (cont.)

Page

*Lazar v. Trans Union LLC,*
195 F.R.D. 665 (C.D. Cal. 2000) ................................................................ 6-8, 25

*LeDuc v. Kentucky Cent. Life Ins. Co.,*
814 F. Supp. 820 (N.D. Cal. 1992) .................................................................. 23

*Lipsky v. Commonwealth United Corp.,*
551 F.2d 887 (2d Cir. 1976) ............................................................................. 6

*Lisa Frank, Inc. v. Impact Intern., Inc.,*
799 F. Supp. 980 (D. Ariz. 1992) ................................................................... 10

*Max Factor & Co. v. Factor,*
226 F. Supp. 120 (S.D. Cal. 1963) .................................................................. 10

*Miller Brewing Co. v. Carling O'Keefe Breweries of Canada, Ltd.,*
452 F. Supp. 429 (W.D.N.Y. 1978) ................................................................ 11

*Motors, Inc. v. Times-Mirror Co.,*
102 Cal. App. 3d 735, 162 Cal. Rptr. 543 (1980) ........................................... 15

*National Football League Properties, Inc. v. Wichita Falls*
*Sportswear, Inc.,* 532 F. Supp 651 (W.D. Wash. 1982) .................................. 13

*NEXXUS Prods. Co. v. Gentle Concepts,*
28 U.S.P.Q. 2d 1257 (M.D. Fla. 1993) ............................................................ 10

*Northeast Airlines, Inc. v. World Airways, Inc.,*
262 F. Supp. 316 (D. Mass 1966) ................................................................... 17

*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma,*
*Inc.,* 42 Cal. 3d 1157, 232 Cal. Rptr. 567 (1986) ...................................... 20, 21

*People ex rel. Mosk v. National Research Co. of Calif.,*
201 Cal. App. 2d 765 (1962) .......................................................................... 15

*People v. McKale,*
25 Cal. 3d 626, 159 Cal. Rptr. 811 (1975) ..................................................... 15

*People v. Superior Court,*
9 Cal. 3d 283, 107 Cal. Rptr. 192 (1973) ....................................................... 22

*Pro Hardware, Inc. v. Home Centers of America, Inc.,*
607 F. Supp. 146 (S.D. Texas 1984) ............................................................. 9, 20

*R.E. Spriggs Co. v. Adolph Coors Co.,*
94 Cal. App. 3d 419, 156 Cal. Rptr. 738 (1979) ............................................. 17

*Rosales v. Citibank,*
9133 F. Supp. 2d 1177 (N.D. Cal. 2001) .......................................................... 7

*Sagan v. Apple Computer, Inc.,*
874 F. Supp. 1072 (C.D. Cal. 1994) ................................................................. 7

*Shakey's Inc. v. Covalt,*
704 F.2d 426 (9th Cir. 1983) .......................................................................... 7

*Sicilia Di R. Biebow & Co. v. Cox,*
732 F.2d 417 (5th Cir. 1984) ......................................................................... 10

*Source Perrier, S.A. v. Waters of Saratoga Springs, Inc.,*
217 U.S.P.Q 617 (S.D.N.Y. 1982) ................................................................... 9

*Spiegel, Inc. v. Federal Trade Com.,*
540 F.2d 287 (7th Cir. 1976) ......................................................................... 18

EXHIBIT _23_ PAGE _883_   - v -

**MGA'S OPPOSITION TO MATTEL'S MOTION TO DISMISS & STRIKE PORTIONS OF COMPLAINT**

## TABLE OF AUTHORITIES (cont.)

**Page**

*Stacy & Witbeck, Inc. v. City and County of San Francisco,*
    36 Cal. App. 4th 1074, 44 Cal. Rptr. 2d 472 (1995)...................................... 20, 21

*Stanbury Law Firm, P.A. v. IRS,*
    221 F. 3d 1059 (8th Cir. 2000).................................................................... 6, 23

*Stewart v. Wachowski,*
    2004 U.S. Dist. LEXIS 26607 (C.D. Cal. 2004) .............................................. 7

*Sturgis Area Chamber of Commerce v. Sturgis Rally & Races, Inc.,*
    99 F. Supp. 2d 1090 (D.S.D. 2000) ................................................................ 10

*Union Circulation Co. v. Federal Trade Com.,*
    241 F.2d 652 (2d Cir. 1957)............................................................................ 18

*United States v. $200,266.00 in U.S. Currency,*
    864 F. Supp. 1414 (D.P.R. 1994)..................................................................... 25

*United States v. Redwood City,*
    640 F.2d 963 (9th Cir. 1981)............................................................................. 6

*White v. Western Title Ins. Co.,*
    40 Cal. 3d 870, 221 Cal. Rptr. 509 (1985)...................................................... 21

*Wynn Oil Co. v. American Way Serv. Corp.,*
    943 F.2d 595 (6th Cir. 1991)............................................................................ 9

### STATUTES

15 U.S.C. § 1117 (a)................................................................................................ 11

15 U.S.C. § 1125 (a)................................................................................................. 7

15 U.S.C. § 1125 (d)............................................................................................... 10

15 U.S.C. § 45 (a)................................................................................................... 15

Cal. Bus. & Prof. Code § 17203 ............................................................................ 22

Cal. Bus. & Prof. Code § 17200 ............................................................14-16, 18-22

Cal. Civ. Code § 47 ................................................................................................ 20

### OTHER AUTHORITIES

Rudolf Callmann, Callmann on Unfair Competition, Trademarks and
    Monopolies (4th ed.)......................................................................... 16, 17, 18

5A Charles A. Wright & Arthur R. Miller, *Federal Practice and
    Procedure* § 1380 (1990) ................................................................................ 5

### RULES

Federal Rule of Civil Procedure Rule 12(b)(6)........................................... 2, 4, 5, 7

Federal Rule of Civil Procedure Rule 12(f)................................................... 2, 4, 7

EXHIBIT __23__ PAGE __824__     - vi -

## I.   INTRODUCTION

Plaintiff MGA Entertainment, Inc. ("MGA") alleges that defendant Mattel, Inc. ("Mattel") has devised and utilized a number of schemes that, on their face, violate fundamental rules of honesty and fair dealing.  These schemes range from the intentional and deliberate infringement of MGA's trade dress to the manipulation, intimidation and coercion of retailers, licensees, industry bodies and others, all to inhibit and stifle the competition that MGA has posed to Mattel *and* to seize for itself the good will that MGA successfully garnered with its "Bratz" line of products (and others).  MGA also alleges facts that help explain why Mattel has chosen this course of conduct, which Mattel itself apparently agrees is lamentable. (Mot. at 1.)  Even before the introduction of "Bratz", Mattel had been suffering from years of plummeting stock prices and bad business decisions.  With Mattel struggling to recover under new management, "Bratz" was the proverbial straw that broke the camel's back.

Motivated to rid itself of this unprecedented competition from MGA as quickly as possible, Mattel resorted to unfair business practices.  Mattel now wants to rid itself of MGA's allegations as well, claiming that MGA has no legal redress or remedy for Mattel's egregious behavior despite the requirement that all of these allegations must be accepted as true for purposes of this motion and viewed in the light most favorable to MGA.  (*See infra* § II.B.)  Specifically, Mattel:

- moves to "dismiss" what it calls MGA's "non trade-dress" allegations (paragraphs 74-100 and 113 and 114)(Mot. at 2), including MGA's request for restitution based thereon; and
- moves to "strike" what it calls "historical" background allegations (paragraphs 11-20, 30-31, 35 and 98)(Mot. at 3).

Mattel's motion has no merit and should be denied in its entirety.

In its zeal to purge the complaint of the so-called "non-trade dress" allegations – the manipulative, coercive and intimidating conduct at the heart of

EXHIBIT ___23___ PAGE ___875___    - 1 -    MGA'S OPPOSITION TO MATTEL'S MOTION TO DISMISS & STRIKE PORTIONS OF COMPLAINT

1   Mattel's anti-competitive behavior – Mattel first urges the court to apply the wrong

2   standard to this part of its motion, improperly framing it as a "motion to *dismiss*

3   *portions* of MGA's second cause of action" for unfair competition under Rule

4   12(b)(6), rather than as a motion to strike under 12 (f). (Mot. at 3 (emphasis

5   added).) Focusing on the motion to dismiss standard, Mattel argues that paragraphs

6   74-100 and 113 and 114 fail to state a claim under federal and state unfair

7   competition law. (Mot. at 2.)

8        As Mattel well-knows – but conveniently ignores – these allegations are

9   pertinent to MGA's *first* cause of action for trade dress infringement under the

10  Lanham Act. Indeed, these allegations are particularly probative of the element of

11  intent, which, when established, leads to a presumption of likelihood of confusion

12  under Ninth Circuit law. (*See infra* § II.B.1.a.) The allegations cannot be stricken,

13  accordingly, and Mattel's motion must be denied for this reason alone. (*See infra* §

14  II.B.1.)

15       Separate and apart from their pertinence to MGA's trade dress infringement

16  claims, these allegations cannot be stricken (or "dismissed") because they also

17  independently support MGA's second claim for unfair competition. Indeed, the

18  manipulation of the competitive landscape and the diversion of business away from

19  a competitor through intimidation, threats and coercion are classic examples of

20  behavior that has long been condemned by unfair competition law. For this

21  independent reason also, Mattel's motion must be denied. (*See infra* § II.B.2.)

22       Zeroing in on two specific paragraphs of the complaint, paragraph 75 (Mot.

23  at 7-8) and paragraph 98 (Mot. at 17), Mattel argues that, if nothing else, at least

24  these paragraphs must be wiped from the complaint because the allegations

25  contained therein do not individually demonstrate standing. Mattel's standing

26  argument is nothing more than a red herring, however. (*See infra* § II.B.2.c.)

27  MGA's unfair competition claim is not founded on each or either of these two

28  allegations alone, and Mattel cites no authority for its novel proposition that to

- 2 -

**MGA'S OPPOSITION TO MATTEL'S MOTION TO DISMISS & STRIKE PORTIONS OF COMPLAINT**

EXHIBIT 23 PAGE 826

1  remain in a complaint each individual factual allegation must, in and of itself,

2  support standing and liability apart from the other allegations in the complaint.  The

3  very idea contravenes modern rules of federal pleading, which do not even require

4  the plaintiff to match facts to a particular legal theory.  *Bartholet v. Reishauer A.G.,*

5  953 F.2d 1073, 1078 (7th Cir. 1992).  Resorting to another specious argument,

6  Mattel also contends that the litigation privilege somehow bars MGA from alleging

7  the facts contained in paragraph 75.  (Mot. at 9-11).  It does not.  While the

8  litigation privilege bars certain tort causes of action predicated on a judicial

9  statement, it does not create an evidentiary privilege for such statements.  (*See infra*

10 § II.B.2.d.)  MGA is a direct victim of Mattel's actions, with uncontested standing

11 to state a claim for unfair competition based on a host of facts evidencing Mattel's

12 conduct, including the allegations contained in the two paragraphs that Mattel

13 chooses to single out.  As such, MGA also has every right to seek and obtain

14 restitutionary relief in addition to injunctive relief and damages as well as other

15 relief available under the Lanham Act and California unfair competition law.  (*See*

16 *infra* § II.B.2.e.)  Again, Mattel's motion to "remove" (strike) paragraphs 74-100

17 and 113 and 114 from the complaint must be denied.

18      Mattel's separate attack against what it terms "historical" background

19 allegations fares no better.  Those facts – paragraphs 11-20, 30-31, 35 and 98 – set

20 the stage and supply the motive for Mattel's wrongful conduct.  It is well

21 established that background or historical material should not be stricken unless it is

22 unduly prejudicial.  While Mattel dreams up a wide array of imaginary evils that it

23 asserts may befall this case should these paragraphs remain in the complaint, its

24 fears are unfounded.  Indeed, the allegations contained in these paragraphs are

25 nearly all matters of public record that Mattel has no reason not to simply admit;

26 some may even be subject to judicial notice.  Background information such as this

27 should not be stricken where, as here, the allegations are crucial to understanding

28 the evidence and, when read with the complaint as a whole, provide a full


EXHIBIT __23__ PAGE __837__   - 3 -   MGA'S OPPOSITION TO MATTEL'S MOTION
TO DISMISS & STRIKE PORTIONS OF
COMPLAINT

1  understanding of the alleged misconduct and the defendant's motive therefor.

2  These paragraphs properly lay the foundation for the causes of action pled by

3  MGA. (*See infra* § III.)

4        In short, there is no justifiable reason for the Court to disturb the pleadings.

5  Mattel's motion should be denied.[1]

6  **II.    THE "NON-TRADE DRESS" ALLEGATIONS CONTAINED IN**
         **PARAGRAPHS 74 TO 100 AND 113 AND 114 SHOULD NOT BE**
7        **DISMISSED OR STRICKEN.**

8        **A.    Mattel's Motion to "Dismiss" Paragraphs 74 to 100 and 113 and**
               **114 Is, in Reality, a Motion to Strike.**

9        Mattel has no legitimate basis for arguing that what it calls MGA's "non-

10 trade dress," "non-trademark" allegations (paragraphs 74 to 100 and 113 to 114)

11 should be removed from the Complaint for an alleged failure to state a claim. (Mot.

12 at 2.)[2]  As a threshold matter, the standard governing motions to *strike* under

13 Federal Rule of Civil Procedure Rule 12 (f) should apply here, not the Rule

14 12(b)(6) standard for a motion to *dismiss*.  Mattel does not seek to dismiss MGA's

15 second cause of action for unfair competition as a whole, but, instead, argues that

16 "multiple *portions* of the second cause of action" should be "dismissed" because

17 those "portions" fail to state a claim on which relief can be granted.  (Mot. at 4

18 (emphasis added).)  To be clear – and what Mattel leaves unspoken but tacitly

19 acknowledges – MGA's second cause of action for unfair competition will remain

20 in this case no matter what happens to the specific allegations that Mattel

21

22 ―――――――――――
[1] As a matter of note, Mattel's counsel certifies that its motion was made following a
23 timely conference of counsel on May 8, 2005 in purported compliance with Local Rule 7-
   3.  This certification is inaccurate. (*See* Declaration of Diana M. Torres Re Local Rule 7-
24 3 Conference filed concurrently, ¶¶ 2-4.)
   [2] Mattel generally includes paragraph 75, in which MGA contends that Mattel has acted
25 intentionally and maliciously to intimidate and threaten current and potential MGA
   employees, in its general category of "non-trade-dress" allegations, but also devotes a
26 substantial portion of its motion singling out paragraph 75. (Mot. at 4-12).  The
   arguments it makes, however, are essentially the same as those it makes with respect to
27 the rest of the paragraphs, 74, 76-100 and 113-114 (Mot. at 12-17), with the exception of
   its misguided "standing" argument and litigation privilege argument.  Accordingly, MGA
28 includes paragraph 75 in its analysis here, but addresses the standing and privilege
   arguments separately *infra* at Sections II.B.2.c and II.B.2.d.

EXHIBIT  23  PAGE  828   - 4 -

                              MGA'S OPPOSITION TO MATTEL'S MOTION
                              TO DISMISS & STRIKE PORTIONS OF
                              COMPLAINT

1  challenges, because MGA's unchallenged trade dress allegations *alone* are

2  sufficient to sustain claims for unfair competition under federal and California state

3  law. *Kelley Blue Book v. Car-Smarts, Inc.*, 802 F. Supp. 278, 288-89 (C.D. Cal.

4  1992)(where a Lanham Act violation is present, an unfair competition violation

5  under California law is also present).

6       Mattel offers no persuasive authority to support the idea that it may,

7  nonetheless, selectively excise only certain allegations from an otherwise sufficient

8  claim under Rule 12(b)(6).  On the contrary, a motion to dismiss must be denied

9  where a plaintiff alleges *any set of facts* that support a claim relief.  *See Cahill v.*

10  *Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996).  A motion to dismiss tests

11  the legal sufficiency of the pleadings to determine whether any claim is stated, not

12  whether each and every paragraph in and of itself sets forth all the elements of any

13  particular claim, as Mattel seems to contend.  *See, e.g., Conley v. Gibson*, 355 U.S.

14  41, 45-46 (1957).  A motion to strike is the proper vehicle for attacking and

15  excising selective portions of a pleading.  *See Day v. Moscow*, 955 F.2d 807, 811

16  (2d Cir. 1992)(citing 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL

17  PRACTICE AND PROCEDURE § 1380 (1990)(Rule 12(f) designed for excision of

18  material from a pleading). While Mattel urges the Court to apply the Rule 12(b)(6)

19  standard instead, the end result must be the same either way:  Mattel's motion must

20  be denied.

21  **B.     Paragraphs 74 to 100 and 113 and 114 Should be Left Undisturbed Under Either the Motion to Dismiss or Motion to Strike Standard.**

22       No matter which standard is applied, paragraphs 74 to 100 and 113 to 114

23  should not be cut, particularly at this early juncture.  "At this still early stage of the

24  litigation, far from the jury, the pleadings are best left undisturbed." *Fuchs Sugars*

25  *& Syrups, Inc. v. Amstar Corp.*, 402 F. Supp. 636, 638 (S.D.N.Y. 1975)(denying

26  motion to dismiss and to strike "certain portions of the pleadings").  "Modern

27  federal practice permits wide latitude in pleading." *Id.* at 637.  Thus, "a powerful

28  presumption against rejecting pleadings" exists. *Gilligan v. Jamco Dev. Corp.*, 108

EXHIBIT 23   PAGE 839   - 5 -

MGA'S OPPOSITION TO MATTEL'S MOTION TO DISMISS & STRIKE PORTIONS OF COMPLAINT

1   F.3d 246, 249 (9th Cir. 1997).  Courts are not to judge the merits of the alleged

2   claims, or the admissibility of alleged facts.  *See id.*  Rather, federal courts and

3   litigants "must rely on summary judgment and control of discovery to weed out

4   unmeritorious claims sooner rather than later," not motions on the pleadings.  *Id.*

5   Evidentiary questions must be avoided at the pleading stage.  *Lipsky v.*

6   *Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir. 1976).  Indeed, questions

7   of relevancy and admissibility generally require the context of an "ongoing and

8   unfolding trial" to be properly decided.  *Id.*

9       Motions to dismiss are viewed with disfavor, accordingly, and rarely granted

10  except in "extraordinary case[s]"  *United States v. Redwood City,* 640 F.2d 963, 966

11  (9th Cir. 1981); *Gilligan,* 108 F.3d at 49.  Dismissal is proper only where there is

12  either a "lack of a cognizable legal theory" or "the absence of sufficient facts

13  alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901

14  F.2d 696, 699 (9th Cir. 1990).  The Court must construe the complaint in the light

15  most favorable to the plaintiff and accept as true all material allegations, as well as

16  reasonable inferences to be drawn from them.  *Cahill,* 80 F.3d at 337-38.  Under

17  this test, a Court should not dismiss a claim "unless it appears beyond doubt that the

18  plaintiff can prove *no set of facts* in support of his claim which would entitle him to

19  relief." *Conley,* 355 U.S. at 45-46 (emphasis added); *Haddock v. Board of Dental*

20  *Examiners,* 777 F.2d 462, 464 (9th Cir. 1985)(test is whether the facts alleged

21  support any valid claim entitling plaintiff to relief – even if not necessarily the one

22  intended by plaintiff).

23      Motions to strike are also regarded with disfavor and infrequently granted.

24  *Lazar v. Trans Union LLC,* 195 F.R.D. 665, 669 (C.D. Cal. 2000); *Stanbury Law*

25  *Firm, P.A. v. IRS,* 221 F.3d 1059, 1063 (8th Cir. 2000)(finding abuse of discretion in

26  striking information providing important context and background to suit).  While a

27  Court may strike "redundant, immaterial, impertinent, or scandalous matter" from a

28  pleading, it is considered an "extreme measure" *Stanbury,* 221 F.3d at 1063.  As

EXHIBIT __93__  PAGE __830__  - 6 -

MGA'S OPPOSITION TO MATTEL'S MOTION
TO DISMISS & STRIKE PORTIONS OF
COMPLAINT

1   such, a motion to strike should not be granted "unless it is clear that the matter to be

2   stricken could have *no possible bearing on the subject matter of the litigation."*

3   *Lazar*, 195 F.R.D. at 669 (emphasis added); *Colaprico v. Sun Microsystems, Inc.*,

4   758 F. Supp. 1335, 1339 (N.D. Cal. 1991)(same).   As with a motion to dismiss, the

5   Court must treat all well pleaded facts as admitted and all reasonable presumptions

6   that can be drawn therefrom.   *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180

7   (N.D. Cal. 2001).   Where there is any doubt, courts err on the side of permitting the

8   allegations to stand.   *See, e.g., Stewart v. Wachowski*, 2004 U.S. Dist. LEXIS

9   26607, *19 (C.D. Cal. 2004); *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072,

10   1080 (C.D. Cal. 1994).

11   Under either the Rule 12(b)(6) or the Rule 12(f) standard, Mattel's motion

12   must fail for the reasons to follow.

**1.   Paragraphs 74 to 100 and 113 and 114 are Pertinent to and Supportive of MGA's Trade Dress Infringement and Unfair Competition Claims Under the Lanham Act.**

One reason MGA's supposed "non-trade dress" allegations cannot be stricken

or "dismissed" is because they are pertinent to and directly supportive of MGA's

trade dress infringement claim and unfair competition claim under the Lanham Act,

15 U.S.C. § 1125 (a).   Mattel argues that matters alleged in paragraphs 74-100 and

113 and 144 fail to state a claim under the Lanham Act because the matters alleged

are not likely to cause confusion.   (Mot. at 2, 6, 13.)   Mattel completely ignores,

however, the relevance of a defendant's state of mind to the likelihood of confusion

inquiry.

**a.   A Defendant's Intent May Be an Important Factor in the Likelihood of Confusion Analysis.**

Trademark or trade dress infringement is a type of unfair competition, "the

gravamen of which is whether the defendant has created a 'likelihood of

confusion.'"   *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 911 (Fed.

Cir. 1984)(citing *Shakey's Inc. v. Covalt*, 704 F.2d 426, 431 (9th Cir. 1983)).   A

defendant's intent plays a pivotal role in the likelihood of confusion analysis.

EXHIBIT __23__ PAGE __631__   - 7 -

MGA'S OPPOSITION TO MATTEL'S MOTION
TO DISMISS & STRIKE PORTIONS OF
COMPLAINT

1    Although evidence of intent is certainly not essential for a finding of liability,

2    courts "look sternly" on deliberate attempts to cash in on the reputation, good will

3    and market position of a competitor. *Commerce Foods, Inc. v. PLC Commerce*

4    *Corp.*, 504 F. Supp. 190, 195 (S.D.N.Y. 1980). Where evidence shows that a

5    defendant deliberately adopted another's mark "with a view to obtain some

6    advantage from the good will, good name and good trade which another has built

7    up, then an inference of likelihood of confusion is readily drawn." *Fleischmann*

8    *Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 158 (9th Cir. 1963); *see also*

9    *Lazar*, 195 F.R.D. at 671-72 (holding that even if plaintiff could not recover for

10   events alleged, they could not be stricken at pleading stage because "they may be

11   used to demonstrate… willfulness" and were "an integral part of Plaintiff's claims

12   of continuous inappropriate conduct"). On a proper showing of intent, a

13   presumption arises that there exists a likelihood of confusion which, in turn, shifts

14   the burden of proof to the defendant to rebut the presumption. *See Fleischmann*,

15   314 F.2d at 158.

16        Where, as here, the plaintiff alleges that the defendant intended to deceive

17   consumers and deprive the plaintiff of the benefits of its reputation or good will in

18   the market, the defendant may be allowed to try to convince the jury of an innocent

19   explanation for its conduct, or may dispute that the conduct ever actually took

20   place, but "that is a factual determination reserved for trial." *Clicks Billiards, Inc.*

21   *v. Sixshooters, Inc.*, 251 F.3d 1252, 1266 (9th Cir. 2001)(reversing summary

22   judgment; district court required to draw all inferences in favor of non-moving

23   party, including inference of confusion and copying based on intent to deprive

24   plaintiff of the benefit of its reputation).

25        **b.    A Defendant's Intent May Be Inferred From a Variety of Conduct.**

26        A Lanham Act defendant's malicious intent often is inferred from conduct

27   that goes beyond evidence of a specific intent to copy. It goes without saying that a

28   defendant is not likely to admit that it intentionally adopted a plaintiff's trade dress

EXHIBIT _23_ PAGE _832_    - 8 -

MGA'S OPPOSITION TO MATTEL'S MOTION
TO DISMISS & STRIKE PORTIONS OF
COMPLAINT

1  in an effort to trade on the plaintiff's good will.  Far more predictably, a defendant

2  will do as Mattel has done – namely, "vigorously den[y]" that it has engaged in any

3  wrongdoing.  (Mot. at 1.)  The only way, then, to ascertain whether there has been

4  intentional infringement is to consider all of the surrounding circumstances.  *See,*

5  *e.g., Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.,* 212 U.S.P.Q. 170, \*17 (N.D.

6  Ga. 1981)("Since improper motive is rarely, if ever admitted" by a defendant, "the

7  court can only infer bad intent from the facts and circumstances in evidence.") *aff'd*

8  716 F.2d 833 (11th Cir. 1983).  The proper approach "look[s] to the *entire record."*

9  *Wynn Oil Co. v. American Way Serv. Corp.,* 943 F.2d 595, 603 (6th Cir.

10  1991)(emphasis added).

11        Circumstantial evidence probative of a defendant's "impure motives" or

12  intent to deceive or profit at the plaintiff's expense is highly relevant to the analysis.

13  *Blue Bell Bio-Medical v. Cin-Bad, Inc.,* 864 F.2d 1253, 1258 (5th Cir. 1989);

14  *Harley-Davidson Motor Co., Inc. v. Pierce Foods Corp.,* 231 U.S.P.Q. 857, \*24

15  (T.T.A.B. 1986)(noting significance of "the plagiarist's motive"); *Wynn Oil,* 943

16  F.2d at 603 ("intent to infringe can be shown by circumstantial evidence"); *AmBrit*

17  *Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1543 (11th Cir. 1986)(considering intent to

18  benefit from plaintiff's goodwill and noting that "[t]here is nothing unusual about a

19  finding of intent based on circumstantial evidence"); *Source Perrier, S.A. v. Waters*

20  *of Saratoga Springs, Inc.,* 217 U.S.P.Q 617, \*10 (S.D.N.Y. 1982)(circumstantial

21  evidence is admissible to show the infringer's intent to benefit from the trademark

22  owner's good will).  A predatory course of conduct, cavalier treatment of business

23  property rights, and other circumstantial evidence of deliberate and willful activities

24  may help prove subjective intent, and may all be considered.  *See, e.g., Clairol, Inc.*

25  *v. Save-Way Indus., Inc.,* 210 U.S.P.Q. 459, 469 (S.D. Fla. 1980)(course of conduct

26  meant to capitalize on the good will of others and "cavalier treatment" of business

27  property rights indicated intent to trade on plaintiff's trademark, including using

28  consultation with attorney as an artifice to negate intent); *Pro Hardware, Inc. v.*

- 9 -

MGA'S OPPOSITION TO MATTEL'S MOTION
TO DISMISS & STRIKE PORTIONS OF
COMPLAINT

EXHIBIT __23__ PAGE __883__

1   *Home Centers of America, Inc.,* 607 F. Supp. 146, 152 (S.D. Texas 1984)(course of

2   conduct justified inference that defendant used plaintiffs' mark with intent to

3   benefit off of the reputation of the plaintiffs); *NEXXUS Prods. Co. v. Gentle*

4   *Concepts,* 28 U.S.P.Q. 2d 1257, *28 (M.D. Fla. 1993)(courts examine defendant's

5   subjective intent for evidence of "deliberate and willful" actions, including pattern

6   of activities designed to confuse, mislead, deceive or derive benefit from plaintiff's

7   reputation).

8       Evidence of an intent to obtain an unfair advantage over the plaintiff, to harm

9   plaintiff's goodwill, or to divert sales away from the plaintiff, is similarly probative.

10  *See, e.g., Max Factor & Co. v. Factor,* 226 F. Supp. 120, 126 (S.D. Cal.

11  1963)(evidence of intent to "obtain an unfair advantage" probative); *see also, e.g.,*

12  *E. & J. Gallo Winery v. Spider Webs Ltd.,* 286 F.3d 270, 274 (5th Cir. 2002)(intent

13  to confuse, mislead and divert customers to defendant's website, causing harm to

14  plaintiff's good will, held to be probative of bad faith intent to profit in claim under

15  Lanham Act, 15 U.S.C. § 1125 (d)).  "[A]n openly avowed intention to compete

16  unfairly" will also "tip the scales in favor of" the plaintiffs, including evidence of a

17  defendant's intent to deliberately steal from the plaintiff.  *Lisa Frank, Inc. v. Impact*

18  *Intern., Inc.,* 799 F. Supp. 980, 1002 (D. Ariz. 1992)(considering the balance of

19  equities between the parties in granting preliminary injunction in trademark

20  infringement case).

21      Any evidence that generally "demonstrates a commercial intent" should be

22  considered, including the business relationship between the parties.  *Chrysler Corp.*

23  *v. Newfield Publications, Inc.,* 880 F. Supp. 504, 511 (E.D. Mich. 1995); *Sturgis*

24  *Area Chamber of Commerce v. Sturgis Rally & Races, Inc.,* 99 F. Supp. 2d 1090,

25  1098-99 (D.S.D. 2000).  Indeed, the nature of the parties' "contractual or business

26  relations" can provide significant evidence of the alleged infringer's intent to trade

27  on the plaintiff's good will and will "usually be considered as a subcategory of

28  'intent.'" *Sicilia Di R. Biebow & Co. v. Cox,* 732 F.2d 417, 432 (5th Cir. 1984)

- 10 -

EXHIBIT _83_ PAGE _834_

MGA'S OPPOSITION TO MATTEL'S MOTION
TO DISMISS & STRIKE PORTIONS OF
COMPLAINT

1    (internal quotations and citations omitted); *see also AmBrit*, 812 F.2d at 1543 n. 61.

2         In short, any allegation that helps establish that a defendant acted with the

3    intent to usurp the plaintiff's good will or deprive plaintiff of the benefits of its

4    reputation may support a finding of intent and, thus, help establish a presumption of

5    likelihood of confusion and a violation of the Lanham Act.  *See, e.g., Clicks*

6    *Billiards*, 251 F.3d at 1266; *Blue Bell*, 864 F.2d at 1258; *Miller Brewing Co. v.*

7    *Carling O'Keefe Breweries of Canada, Ltd.*, 452 F. Supp. 429, 448 (W.D.N.Y.

8    1978)(evidence of intent "may properly include *all the circumstances* surrounding

9    the development" of the mark)(emphasis added).

        c.     **A Lanham Act Defendant's State of Mind Also Bears**
10                 **On Whether a Plaintiff Is Entitled to a Fee Award and**
11                 **Injunctive Relief.**

12        Mattel's state of mind is also pertinent to the relief to which MGA may be

13   entitled after prevailing on its Lanham Act claim.  First, Mattel's state of mind is

14   critical to the determination of whether the case is "exceptional" within the

15   meaning of 15 U.S.C. Section 1117 (a) and would, thus, allow MGA to recover its

16   attorneys' fees based on a finding that Mattel's infringement was willful, deliberate,

17   knowing or malicious.  *Commission for Idaho's High Desert, Inc. v. Yost*, 92 F.3d

18   814, 825 (9th Cir. 1996)(awarding fees where defendants knowingly and

19   intentionally infringed in order to cause confusion and to obstruct pursuit of

20   plaintiff's environmental agenda).  Evidence of bad faith or willful conduct is

21   additionally an important factor in striking the balance of equities and may render

22   injunctive relief inevitable.  *Lambda Electronics Corp. v. Lambda Tech., Inc.*, 515

23   F. Supp. 915, 929 (S.D.N.Y. 1981); *Armstrong Cork Co. v. Armstrong Plastic*

24   *Covers, Co.*, 434 F. Supp. 860, 873 (E.D. Mo. 1977)(intent relevant to terms of

25   injunction and damages in addition to likelihood of confusion).

        d.     **The Allegations That Mattel Seeks to Excise Are**
26                 **Important To Assessing Mattel's State Of Mind In**
              **Violating the Lanham Act.**
27        Mattel's motion to dismiss or to strike paragraphs 74 to 100 and 113 to 114

28

EXHIBIT __23__ PAGE __835__  - 11 -    **MGA'S OPPOSITION TO MATTEL'S MOTION**
                                        **TO DISMISS & STRIKE PORTIONS OF**
                                        **COMPLAINT**

1 must be denied, accordingly, because these allegations are pertinent to showing that

2 Mattel's infringement of MGA's trade dress was an intentional and deliberate part

3 of a carefully crafted and calculated course of conduct in the face of competition,

4 which conduct was designed to usurp the hard-earned good will and reputation that

5 MGA has built up in its "Bratz" product line by supplanting it with Mattel's

6 confusingly similar – but infringing – goods. Knowing the success of MGA's

7 "Bratz" line, Mattel first and foremost imitated MGA's trade dress through a

8 calculated, progressive, element by element encroachment. *See Commerce Foods,*

9 504 F. Supp. at 195. But that is not the only evidence of Mattel's state of mind and

10 intent to deceive.

11         The allegations Mattel seeks to strike further show that Mattel plainly

12 believed that because of the similarity it cultivated between its surrogate product

13 and MGA's brand, Mattel's product could easily stand in place of "Bratz" as an

14 unnoticeable, interchangeable proxy. This is evident, for example, from Mattel's

15 apparent belief that licensees, distributors and retailers would be willing to swap out

16 MGA's product in favor of Mattel's (with just a bit of extra pressure from Mattel to

17 sweeten the deal). If that weren't enough, Mattel swapped the products itself,

18 replacing "Bratz" on the shelves with Mattel's own products. To make it even

19 easier for Mattel's surrogate to be mistaken for, and purchased instead of, the real

20 "Bratz", Mattel also used its power and influence in the industry to take MGA's

21 product out of the limelight as much as possible, for instance by making it more

22 difficult and expensive for MGA to advertise; by influencing award voting criteria

23 affecting MGA's securing of a prestigious industry association award; by meddling

24 with MGA's sponsorship opportunities; by manipulating market share data to

25 diminish MGA's product standing; and by interfering with MGA's supply chain

26 and production capacity. Specifically, MGA alleges that Mattel:

27     • Tampered with retail displays, replacing favorably located MGA

28         merchandise with Mattel's infringing merchandise (Compl ¶¶ 79, 77);

EXHIBIT 23   PAGE 836   - 12 -

MGA'S OPPOSITION TO MATTEL'S MOTION
TO DISMISS & STRIKE PORTIONS OF
COMPLAINT

1   • Falsely represented facts to retailers and engaged in other conduct

2   designed to make MGA's line less attractive than Mattel's infringing line

3   to buyers, licensees and distributors (Compl. ¶¶ 79, 76-77);

4   • Manipulated industry market-share product groupings and statistics to

5   misleadingly lower MGA's product ranking and improve the ranking of

6   Mattel's infringing line – while also inhibiting MGA's access to those

7   statistics (Compl. ¶¶ 80-86);

8   • Meddled with MGA's ability to advertise its products to harm MGA's

9   brand and decrease its fame and recognition (Compl. ¶¶ 87-91);

10  • Interfered with the fair and impartial selection of toy industry awards to

11  harm MGA's brand and decrease its fame and recognition (Compl. ¶¶ 92-

12  96);

13  • Attempted to prevent MGA from being a sponsor of the "Kids' Choice

14  Awards" to harm MGA's brand and decrease its fame and recognition

15  (Compl. ¶ 97); and

16  • Obstructed MGA's ability to procure materials for its products (Compl. ¶

17  78).

18  All of this unquestionably was intended to disadvantage MGA's brand, diminish its

19  fame and recognizability and make it all the more likely – indeed, inevitable – that

20  Mattel's infringing product would be mixed up with and confused for MGA's

21  "Bratz".

22    In short, Mattel had the motive, the resources, the ability and the intent to

23  adopt a confusingly similarly trade dress to usurp and trade off of MGA's good will

24  – and did just that. Its serial imitation of MGA products, trade dress, themes, ideas,

25  advertising and packaging was no accident or coincidence. This is not a case of a

26  defendant legitimately trying to compete – but of an entity calculatedly operating to

27  deceive and harm. *See, e.g., National Football League Properties, Inc. v. Wichita*

28  *Falls Sportswear, Inc.*, 532 F. Supp 651, 664 (W.D. Wash. 1982). The allegations

- 13 -

MGA'S OPPOSITION TO MATTEL'S MOTION
TO DISMISS & STRIKE PORTIONS OF
COMPLAINT

EXHIBIT __23__ PAGE __837__

1    Mattel seeks to dismiss go directly to Mattel's state of mind – its intentional, willful

2    and deliberate conduct – and Mattel's motion to dismiss or strike should be denied

3    for this reason alone.

         **2.**    **Paragraphs 74 to 100 and 113 and 114 Are Also Pertinent to**

4                    **and Supportive of MGA's Unfair Competition Claim under**

5                    **California Business and Professions Code Section 17200**

6           Separate and apart from any Lanham Act claim, a second reason that

7    paragraphs 74 to 100 and 113 and 114 cannot be dismissed is because these

8    allegations independently support a claim for unfair competition under California

    Business and Professions Code Section 17200.  Section 17200 prohibits (1) *unfair*

9    business acts or practices; (2) *unlawful* business acts or practices; and (3)

10   *fraudulent* business acts or practices.  *Cel-Tech Comm. v. Los Angeles Cellular Tel.*

11   *Co.*, 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548 (1999).  The conduct described in

12   these paragraphs supports a cause of action under at least the first two prongs.

         **a.**    **The Allegations State a Claim Under the "Unfair"**

13                  **Prong of Section 17200.**

14          Mattel argues that the matters alleged in paragraphs 74-100 and 113 and 144

15   fail to state a claim under the "unfairness" branch of Section 17200, based on

16   Mattel's interpretation of the California Supreme Court's decision in *Cel-Tech*, 20

17   Cal. 4th 163.  (Mot. at 14-16.)  Mattel's interpretation is flawed.

18          In *Cel-Tech*, the California Supreme Court set forth a number of "general

19   principles" with respect to claims under the "unfair" prong of Section 17200.  *Id.* at

20   179-187.  Unlike the Unfair Practices Act, California Unfair Competition Law

21   under Section 17200 does not proscribe specific practices.  *Id.* at 180.  Instead, a

22   practice may be deemed "unfair" – and thus may violate section 17200 – "even if

23   not specifically proscribed by some other law."  *Id.*  As the California Supreme

24   Court explained, Section 17200 has a broad scope for a reason. "[T]he section was

25   intentionally framed in its broad, sweeping language, precisely to enable judicial

26   tribunals to deal with the innumerable new schemes which the fertility of man's

27   invention would contrive."  *Id.*  at 181.  Thus, "[w]hen a scheme is evolved which on

28

EXHIBIT __23__ PAGE __838__      - 14 -      **MGA'S OPPOSITION TO MATTEL'S MOTION TO DISMISS & STRIKE PORTIONS OF COMPLAINT**

1    its face violates the fundamental rules of honesty and fair dealing, a court of equity

2    is not impotent to frustrate its consummation because the scheme is an original

3    one." *Id.* Because "unfair or fraudulent business practices may run the gamut of

4    human ingenuity and chicanery," it would "be impossible to draft in advance

5    detailed plans and specifications of all acts and conduct to be prohibited." *Id.*

6         For this reason, liberality in pleading is imperative, and courts rarely, if ever,

7    dismiss an unfair competition claim under Section 17200 on the pleadings. *See*

8    *Motors, Inc. v. Times-Mirror Co.,* 102 Cal. App. 3d 735, 740, 162 Cal. Rptr. 543

9    (1980). By its nature, the determination of whether a practice is unfair requires a

10   balancing of policy interests, which requires a full factual record. *Id.*; *see also*

11   *People v. McKale*, 25 Cal. 3d 626, 635, 159 Cal. Rptr. 811 (1975)(reversing the

12   sustaining of demurrer). Of course, if the Legislature has specifically *permitted* the

13   conduct at issue, such legislation provides a "safe harbor" from unfair competition

14   law. *Cel-Tech*, 20 Cal. 4th at 183-84. Acts not expressly *permitted* by law,

15   however, may be challenged. *Id.*

16        Nonetheless, the Supreme Court in *Cel-Tech* formulated a test to help guide

17   courts, and let businesses know, with reasonable certainty, what conduct may be

18   "unfair" in the absence of a statutory "safe harbor." In doing so, the Supreme Court

19   looked to Section 5 of the Federal Trade Commission Act (15 U.S.C. § 45

20   (a)(hereinafter "Section 5") for help "in view of the similarity of language and

21   obvious identity of purpose of the two statutes." *Id.* at 185 (quoting *People ex rel.*

22   *Mosk v. National Research Co. of Calif.,* 201 Cal. App. 2d 765, 722 (1962)). The

23   statute's purpose is to "foster and encourage competition" by prohibiting "practices

24   by which fair and honest competition is destroyed or prevented." *Id.* at 186

25   (internal quotations and citation omitted). Practices that conflict with the "basic

26   policies" of other laws may be actionable "even though such practices may not

27   actually violate these laws" or amount to "trade restraints in their incipiency." *Id.*

28   at 186 (internal quotations and citation omitted). Indeed, one of the objects of an

- 15 -

**MGA'S OPPOSITION TO MATTEL'S MOTION TO DISMISS & STRIKE PORTIONS OF COMPLAINT**

EXHIBIT 23 PAGE 839

1  unfair competition claim is to stop unfair methods of competition before they turn

2  into full-blown violations of antitrust law.  *Federal Trade Com. v. Motion Picture*

3  *Advertising Serv. Co.*, 344 U.S. 392, 394-95 (1953).

4       Thus, the California Supreme Court determined that to violate Section 17200,

5  a finding of "unfairness to competitors" need only be "tethered" to some

6  legislatively declared policy *or* to proof of some actual or threatened impact on

7  competition.  *Cel Tech.*, 20 Cal. 4th at 186-87.  Conduct passes the test for

8  unfairness, for example, if it threatens an incipient violation of an antitrust law.  But

9  it also passes the test for unfairness if it ***violates the policy or spirit of one of those***

10 ***laws*** because its effects are comparable to or the same as a violation of the law, *or*

11 if it otherwise significantly ***threatens or harms competition.***"  *Id.* (emphasis added).

12       MGA's allegations of coercion, intimidation and market manipulation more

13 than meet this test.  Indeed, this type of behavior is paradigmatic of unfair

14 competition.[3]  "In the competitive contest, constructive effort is the basic and

15 permissible weapon; it is not a struggle of one competitor *against* the other but of

16 all *with* the others for a common prize."  1 RUDOLF CALLMANN, CALLMANN ON

17 UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 2:30 (4th ed.)(emphasis in

18 original).  In other words:

19       [Fair] [c]ompetition consists in trying to do things better than someone else;
20       that is, making or selling a better article at a lesser cost, or otherwise giving
         better service.  It is not [fair] competition to resort to methods of the prize
21       ring, and simply "knock the other man out."  That is killing a competitor.

22 *Id.* (quoting Justice Louis D. Brandeis, *Competition*, AMERICAN LEGAL NEWS, vol.

23 44, January 1913, quoted in Mason, *The Brandeis Way, A Case Study in the*

24 *Working of Democracy*, PRINCETON UNIVERSITY PRESS, 1938, Ch. III, p 72).

25       But that is exactly what Mattel has chosen to do:  use its substantial clout and

26 influence in the toy industry (and its infringing product) to muscle MGA out of the

27 _____

[3] Because California's unfair competition statute is a "little FTC" law, decisions of the
28 federal court on the subject of unfair competition are "more than ordinarily persuasive."
   *See Cel-Tech*, 20 Cal. 4th at 185.

EXHIBIT __23__ PAGE __840__       - 16 -       MGA'S OPPOSITION TO MATTEL'S MOTION
                                               TO DISMISS & STRIKE PORTIONS OF
                                               COMPLAINT

1    market. Its use of "coercive and oppressive means of acquiring patronage" – *i.e.*

2    Mattel's intimidation and bullying of distributors, retailers and licensees – is the

3    very essence of unfair competition and unquestionably violates the policy and spirit

4    of antitrust law. CALLMAN, §§ 2:35, 4:27; *see also Kolling v. Dow Jones & Co.*,

5    137 Cal. App. 3d 709, 719-21, 187 Cal. Rptr. 797 (1982)(illegal restraint of trade

6    for single supplier to, by coercive conduct, pressure customers or dealers into

7    acquiescing to supplier's demands); *R.E. Spriggs Co. v. Adolph Coors Co.*, 94 Cal.

8    App. 3d 419, 425-26, 156 Cal. Rptr. 738 (1979)(an entity with substantial economic

9    clout that makes suggestions that distributors "could not refuse" may be

10    actionable). Purchasing decisions of licensees, distributors, retailers and customers

11    should be affected only by the quality, price or service of competing products, not

12    by intimidation, bribery, influence or coercion. *See* CALLMAN, §§ 2:35, 2:36.

13        Similarly, Mattel's efforts to destroy MGA as a competitor through the

14    deceptive manipulation of market share data, inequitable application of advertising

15    standards, and by exerting improper influence over seemingly impartial trade

16    awards, is unfair and anti-competitive. "[T]he purpose of destroying a competitor

17    by means that are not within the area of fair and honest competition is a purpose

18    that clearly subverts the goal of [antitrust law]." *Northeast Airlines, Inc. v. World*

19    *Airways, Inc.*, 262 F. Supp. 316, 319 (D. Mass 1966)("agreements or practices

20    which because of their pernicious effect on competition and lack of any redeeming

21    virtue" presumed unreasonable, including the making of false and defamatory

22    statements made to divert business from competitor, malicious intimidation and

23    malicious prosecution); *see also, Amarel v. Connel*, 202 Cal. App. 3d 137, 143, 248

24    Cal. Rptr. 276 (1988)(reversing dismissal of 17200 claim). Mattel's use of lawsuits

25    or threats of lawsuits as "a deliberate weapon of business aggression rather than an

26    instrument for adjudicating honest disputes" also constitutes unfair competition.

27    CALLMAN, § 2:34 (quoting recommendations to the Department of Justice with

28    respect to provisions against abuses in the patent field in Final Report and

MGA'S OPPOSITION TO MATTEL'S MOTION
TO DISMISS & STRIKE PORTIONS OF
COMPLAINT

EXHIBIT ___23___ PAGE ___841___

1   Recommendations of the Temporary National Economic Committee, S 35, 77th

2   Cong., 1st sess, Exhibit No. 2794, p 249).

3        As one court described it long ago, conduct that "amounts to an unauthorized

4   interference with the normal operation of [a] legitimate business. . . in order to

5   divert a material portion of the profit from those who have earned it to those who

6   have not" is unfair competition.  *Coca-Cola Co. v. Old Dominion Beverage Corp.,*

7   271 F. 600, 604 (4th Cir. 1921)(internal quotations omitted); *see also, e.g., Union*

8   *Circulation Co. v. Federal Trade Com.,* 241 F.2d 652, 655 (2nd Cir. 1957)(coercive

9   manipulation of market); *Adolph Coors Co. v. Federal Trade Com.,* 497 F.2d 1178,

10  1185 *et seq.* (10th Cir. 1974)(coercion of retailer to sell defendants' product to the

11  exclusion of its competitors); *Hastings Mfg. Co. v. Federal Trade Com.,* 153 F.2d

12  253, 255-56 (6th Cir. 1946)(inducing distributors to discontinue products of other

13  manufacturers); *Carter Carburetor Corp. v. F.T.C.,* 112 F.2d 722 (8th Cir.

14  1940)(attempt to coerce retailers into handling only petitioner's goods); *Federal*

15  *Trade Com. v. Wallace,* 75 F.2d 733 (8th Cir. 1935)(use of intimidation, threats of

16  boycott and coercion).  That is precisely the case here and, for this reason too,

17  Mattel's motion to dismiss or strike these allegations must be denied.

18        **b.    The Allegations Also State a Claim Under the "Unlawful" Prong of Section 17200.**

19        Mattel is also wrong in arguing that paragraphs 74 to 100 and 113 and 114 do

20  not state a claim under the "unlawful" prong of the statute. (Mot. at 14.)  Under

21  this prong, any violation of any other law, rule or regulation is a *per se* violation of

22  Section 17200.  Virtually any law or regulation can serve as a predicate for a 17200

23  violation.  *Farmers Ins. Exch. v. Superior Ct.,* 2 Cal 4th 377, 383, 6 Cal. Rptr. 2d

24  487 (1992).

25        Thus, conduct that violates Section 5 of the Federal Trade Commission Act

26  also violates Section 17200.  Section 5 proscribes unfair practices that are

27  "immoral, unethical, oppressive, unscrupulous or substantially injurious to

28  consumers.  *Spiegel, Inc. v. Federal Trade Com.,* 540 F.2d 287, 293 (7th Cir. 1976).

- 18 -

MGA'S OPPOSITION TO MATTEL'S MOTION TO DISMISS & STRIKE PORTIONS OF COMPLAINT

EXHIBIT 23  PAGE 842

1   There can hardly be any question that the conduct MGA alleges here falls within

2   the categories of conduct prohibited by Section 5.[4]

3       Violations of the Lanham Act are also independently actionable under

4   Section 17200. *See Denbicare U.S.A., Inc. v. Toys 'R' Us, Inc.*, 84 F.3d 1143, 1152

5   (9th Cir. 1996). Indeed, an action for unfair competition under § 17200 is

6   "substantially congruent" to a trademark infringement claim under the Lanham Act.

7   *Id.; Academy of Motion Picture Arts & Sciences v. Creative House Promotions,*

8   *Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991); *see also Kelley Blue Book*, 802 F. Supp.

9   at 288-289. Thus, because MGA has stated a claim under the Lanham Act, it has

10  also stated a claim under Section 17200. And, with respect to the particular

11  allegations at issue here, because they are pertinent to and supportive of MGA's

12  Lanham Act claim, they are also pertinent to and supportive of MGA's unfair

13  competition claim under the unlawfulness prong of section 17200.

14          c.      **Mattel's "Standing" Arguments are Red Herrings.**

15      Mattel singles out two paragraphs in particular from the complaint, 75 and

16  98, claiming that no matter what else, these should be eliminated from the

17  complaint. In paragraph 75, MGA alleges that Mattel sent threatening letters to ex-

18  employees who went to work for MGA, and brought a frivolous lawsuit against

19  one. In paragraph 98, MGA alleges that "LeapFrog", like MGA, has also been one

20  of Mattel's victims. According to Mattel, MGA cannot make these allegations

21  because, as a result of Proposition 64, MGA supposedly lacks standing to assert a

22  claim under Section 17200. (Mot. at 7-8, 17.) Mattel's standing argument is

23  specious.

24      Proposition 64, and the changes it made to standing under California

25  Business and Professions Code Section 17200, make no difference in this case.

26  Under Proposition 64, a plaintiff in a Section 17200 action must be someone "who

27  has suffered injury in fact and has lost money or property as a result of such unfair

[4] Indeed, MGA is informed and believes that the Federal Trade Commission has itself
28  recently launched an investigation into Mattel's conduct.

MGA'S OPPOSITION TO MATTEL'S MOTION
TO DISMISS & STRIKE PORTIONS OF
COMPLAINT

- 19 -

EXHIBIT __23__ PAGE __843__

1    competition." (PROP. 64, §§ 3, 5.)  This recent addition to the statute prevents

2    private attorneys from filing lawsuits for unfair competition where they have no

3    client who has been injured in fact under the standing requirements of the United

4    States Constitution.  (*Id.* § 1(e).)  But this is entirely besides the point here because

5    MGA *has* been injured in fact and *has* lost money or property as a result of the

6    totality of Mattel's unfair, illegal and unethical conduct, and has standing to assert

7    an unfair competition claim, accordingly.  MGA does not purport to state an unfair

8    competition claim based on the two allegations *alone*.  These two allegations

9    *evidence* and support MGA's allegations of Mattel's unfair conduct as a whole,[5] but

10   are just one small part of it.

11           **d.    Mattel's Privilege Argument is Also Nothing More Than an Attempted Distraction.**

12           Mattel also specifically targets Paragraph 75 for "dismissal" because,

13   according to Mattel, its conduct alleged therein is privileged.  Here too, Mattel is

14   off-base.  No privilege prohibits MGA from including these allegations in its

15   complaint as factual support for its Lanham Act and Unfair Competition claims.

16           While the litigation privilege under California Civil Code section 47 (or the

17   *Noerr-Pennington* doctrine, for that matter, to the extent it even applies) bars

18   certain tort causes of action predicated on a judicial statement, it ***does not create***

19   ***an evidentiary privilege*** for such statements."  *Oren Royal Oaks Venture v.*

20   *Greenberg, Bernhard, Weiss & Karma, Inc.,* 42 Cal. 3d 1157, 1168, 232 Cal. Rptr.

21   567 (1986) (the litigation privilege operates as a limitation upon liability but "has

22   never been thought to bar the *evidentiary* use" of statements made in the course of a

23   [5] Evidence of similar actions aimed at others is routinely held probative of intent in an
24   infringement action under the Lanham Act.  *See Pro Hardware*, 607 F. Supp. at 152;
     Excessive contractual restraints on ex-employees, and threats of litigation exceeding any
25   legitimate purpose, is condemned by law – particularly letters sent to prevent ex-
     employees from being employed by a competitor.  *See e.g., Herzog v. "A" Co., Inc.,* 138
26   Cal. App. 3d 656 (1982).  Indeed, it is clear from some of the letters themselves, which
     Mattel seeks to have judicially noticed, that Mattel threatened some who chose to leave
27   Mattel for MGA with litigation for allegedly breaching a confidentiality agreement by
     allegedly telling MGA the identity of some of Mattel's employees – hardly confidential
28   information.  *See* Exhibits D & E to Mattel's Request For Judicial Notice.  Such conduct
     clearly qualifies as a threat of litigation exceeding any legitimate purpose.

- 20 -

MGA'S OPPOSITION TO MATTEL'S MOTION
TO DISMISS & STRIKE PORTIONS OF
COMPLAINT

EXHIBIT _23_ PAGE _844_

1   judicial proceeding)(emphasis in original); *Stacy & Witbeck, Inc. v. City and*

2   *County of San Francisco,* 36 Cal. App. 4th 1074, 1091, 44 Cal. Rptr. 2d 472

3   (1995)(same).  In other words, "even if liability cannot be founded upon a judicial

4   communication, it can be proved by such a communication."  *White v. Western*

5   *Title Ins. Co.,* 40 Cal. 3d 870, 888, 221 Cal. Rptr. 509 (1985)(drawing "careful

6   distinction" between cause of action based on privileged communication – such as

7   defamation – and one based upon an underlying course of conduct evidenced by the

8   communication).

9        That is exactly the purpose of the allegations here.  MGA does not purport to

10   found an action on Mattel's letters to its ex-employees, or on the lawsuit it brought

11   against Mr. Brawer.  Rather, it is using that conduct as evidence to help prove that

12   Mattel intentionally engaged in a pattern of conduct designed to unfairly compete

13   against MGA in violation of both the Lanham Act and Section 17200.  Such use of

14   and reliance on these facts is clearly permitted, regardless of the litigation privilege.

15   *Oren,* 42 Cal. 3d at 1168; *Stacy,* 36 Cal. App. 4th at 1091.[6]

16   　　　　　　　e.   **MGA Has Every Right to Request Restitution in its Prayer for Relief For Unfair Competition.**

17        Rounding out Mattel's attack against MGA's unfair competition claims,

18   Mattel argues that even if MGA's paragraphs 74 to 100 and 113 survive, the Court

19   should nonetheless strike MGA's demands for "restitution" and "disgorgement"

20   because MGA is not entitled to such relief.  (Mot. at 17-19.)  Mattel is wrong.

21        First, such relief is entirely proper under the Lanham Act and California

22   common law, and Mattel does not contest this.  *Jerry's Famous Deli, Inc. v.*

23   *Constantino Papanicolaou,* 383 F.3d 998, 1004 (9th Cir. 2004)("disgorgement of

24   profits is a traditional trademark remedy").  Mattel's only argument is that

25   restitution or disgorgement may not be available under a 17200 claim unless MGA

26   can ultimately prove that Mattel has taken something from MGA – money or

---

[6] In addition, just because Mattel claims the privilege applies, does not necessarily make it so.  Like any other contention, Mattel's privilege claim would be subject to proof.  *See e.g., Herzog,* 138 Cal. App. 3d 656.

EXHIBIT __23__ PAGE __845__   - 21 -

MGA'S OPPOSITION TO MATTEL'S MOTION
TO DISMISS & STRIKE PORTIONS OF
COMPLAINT

1  property – that it should be compelled to return.  What MGA will ultimately be able

2  to prove, however, should not be second-guessed at this stage of the litigation.  In

3  effect, Mattel's motion is nothing more than a premature motion *in limine,* and it

4  should be denied.

5    California Unfair Competition Law authorizes a court to make "such order or

6  judgments as may be necessary. . . to prevent the use or employment by any person

7  of any practice which constitutes unfair competition, as defined in this chapter, or

8  as may be necessary to restore to any person. . . any money or property, which may

9  have been acquired by means of such unfair competition." CAL. BUS. & PROF.

10  CODE § 17203.  Courts have broad power to fashion restitutionary relief,

11  accordingly, to effect "complete justice." *Fletcher v. Security Pac. Nat'l Bank,* 23

12  Cal. 3d 442, 452, 153 Cal. Rptr. 28 (1979).  This includes "restoring if necessary

13  the *status quo ante* as nearly as may be achieved." *Id.; see also People v. Superior*

14  *Court,* 9 Cal. 3d 283, 286, 107 Cal. Rptr. 192 (1973).  Indeed, Mattel itself points

15  out that restitution may be awarded to "direct victims of an unfair practice."  (Mot.

16  at 18 (quoting *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1151

17  (2003).)

18    MGA is just such a victim and should be allowed the ability to prove that

19  Mattel "illegally enriched itself" at MGA's expense. *ABC International Traders,*

20  *Inc. v. Matsushita Elec. Corp.,* 14 Cal. 4th 1247, 1271 n.13, 61 Cal. Rptr. 2d 112

21  (1997).  MGA alleges that, through its acts of unfair competition Mattel has, in

22  effect, stolen licensing opportunities away from MGA, stolen shelf space away

23  from MGA, stolen supplies, sales, and market share away from MGA, stolen

24  prestigious awards from MGA, and stolen advertising and sponsorship

25  opportunities away from MGA.  But most of all, Mattel has stolen away the unique

26  and distinctive trade dress that propelled MGA's success with "Bratz."  Mattel has

27  most certainly taken property, including intellectual property, belonging to MGA

28  and restitution is, without question, a proper remedy for such conduct.

- 22 -

MGA'S OPPOSITION TO MATTEL'S MOTION
TO DISMISS & STRIKE PORTIONS OF
COMPLAINT

EXHIBIT **23** PAGE **846**

**C. Paragraphs 74 to 100 and 113 and 114 Are Also Pertinent to and Supportive of MGA's Unfair Competition Claim under California Common Law.**

Mattel's argument that paragraphs 74-100 and 113 and 114 should also be tossed from the complaint because they fail to state a claim for unfair competition under California common law merits little attention. (Mot. at 8, 16.) Obviously, if the allegations set forth in these paragraphs remain in the complaint for any one of the reasons discussed above (as they should), Mattel's motion must be denied irrespective of whether the allegations additionally support a claim for common law unfair competition. In addition, a claim for unfair competition under California common law is also substantially congruent to a claim made under the Lanham Act. *Denbicare*, 84 F.3d at 1152. Because these allegations are pertinent to MGA's trade dress infringement claim, as discussed *supra*, they are also pertinent to MGA's unfair competition claim under California common law.

**III. THE BACKGROUND ALLEGATIONS CONTAINED IN PARAGRAPHS 11-20, 30-31, 35 AND 98, SHOULD NOT BE STRICKEN.**

Mattel also wants the Court to strike from the complaint MGA's brief recitation of Mattel's history and performance, claiming that these facts (paragraphs 11-20, 30-31, 35 and 98) will be "burdensome to answer and litigate." (Mot. at 3.) Here too, Mattel's motion should be denied.

"[A]llegations supplying background or historical material or other matter of an evidentiary nature will not be stricken unless ***unduly prejudicial*** to defendant." *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992)(emphasis added)(citing *Fuchs*, 402 F. Supp. at 637-38; *see also Stanbury*, 221 F.3d at 1063 (District Court abused discretion in striking allegations that provided "important context and background" to suit). This is particularly true where, as here, the background allegations bear on motive. *See Federal Agric. Mort. Corp. v. It's a Jungle Out There*, 2004 U.S. Dist. LEXIS 22933, *6 (N.D. Cal. 2004). But under any circumstance, background allegations should remain,

- 23 -

EXHIBIT __23__ PAGE __847__

MGA'S OPPOSITION TO MATTEL'S MOTION TO DISMISS & STRIKE PORTIONS OF COMPLAINT

1   and be "viewed as part of a 'mosaic'," in conjunction with the rest of the

2   allegations. *Colaprico*, 758 F. Supp. at 1340 (rejecting defendant's implied

3   assertion that historical facts can be viewed in isolation from rest of complaint and

4   denying motion to strike).

5        Mattel attempts to show prejudice, such as that found in *Fantasy, Inc. v.*

6   *Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), but falls far short. The allegations

7   stricken in *Fantasy* consisted of seven pages of "stale" charges, that were barred by

8   the statute of limitations and principle of *res judicata*, and which "had already been

9   extensively litigated," and, moreover, involved completely different parties. *Id.* at

10   1527-28. Plaintiff belatedly argued for the first time on appeal that the stale and

11   barred charges were really just "background and foundational facts," but, not

12   surprisingly, this did not save them. *Id.* at 1528. Obviously, allowing the plaintiff

13   to raise issues and, in effect, force a defendant to litigate stale and barred claims

14   under the guise of alleged background facts, met the "unduly prejudicial" standard

15   for a motion to strike.

16        Despite Mattel's unsupportable assertion that the same risks of prejudice

17   "hold true here," (Mot. at 20) the two situations are not close. Hard-pressed to

18   come up with an argument for prejudice, nonetheless, Mattel paints visions of

19   protracted discovery disputes and weeks added to trial for presentation of collateral

20   issues. These imaginary ills ring hollow. There is no reason why Mattel should not

21   simply admit such things as its historical sales and stock prices; its acquisition of

22   other companies; the resignation of its former Chief Executive, Jill Barad; the

23   appointment of its current Chief Executive, Robert Eckert; and his former

24   employment by Kraft Foods. All of these facts are matters of public record, simply

25   and objectively verifiable. Mattel is a public company, and its own public filings

26   contain much of this information. Thus, there is no reason for them to be stricken.

27   *See, e.g., Federated Dep't Stores, Inc. v. Grinnell Corp.*, 287 F. Supp. 744, 747

28   (S.D.N.Y. 1968)(finding no reason to strike matters of public record)(quoted in

EXHIBIT 23   PAGE 848  - 24 -    MGA'S OPPOSITION TO MATTEL'S MOTION TO DISMISS & STRIKE PORTIONS OF COMPLAINT

1  *Fuchs*, 402 F. Supp. at 638).

2      Mattel's real gripe seems to be with the descriptive language MGA uses.

3  (Mot. at 20.) While Mattel may not like MGA's choice of words, as they clearly

4  reveal Mattel's motive and intent for embarking on its scheme to infringe as it has,

5  that is no basis for striking the allegations. *United States v. $200,266.00 in U.S.*

6  *Currency,* 864 F. Supp. 1414, 1421 (D.P.R. 1994)(Rule 12(f) does not punish

7  colorful language), *vacated on other grounds,* 1995 U.S. App. LEXIS 14706 (1st

8  Cir. 1995). "[A] case should be tried on the proofs rather than the pleadings."

9  *Lazar,* 195 F.R.D. at 669. Mattel's motion should be denied.

10  **IV.  CONCLUSION**

11      While Mattel may not like MGA's allegations – or at least may not like them

12  aired publicly – Mattel does not, and cannot, provide any persuasive authority for

13  striking a single allegation from MGA's complaint. Taken together with the rest of

14  the complaint, these allegations not only bear directly on Mattel's intentional

15  conduct, they also provide important context for understanding why the self-

16  proclaimed "world's largest toymaker" became bent on destroying a smaller, but

17  successful, competitor. This Court should decline Mattel's invitation to alter the

18  pleadings at this early stage, and ***leave the case to be decided on its merits.***

19

20      Dated:  June 3, 2005           DALE M. CENDALI
                                  DIANA M. TORRES

21                                    PAULA E. AMBROSINI
                                  O'MELVENY & MYERS, LLP

22                                    PATRICIA GLASER
                                  CHRISTENSEN, MILLER, FINK,

23                                    JACOBS, GLASER, WEIL &
                                  SHAPIRO LLP

24

25                              By:  *Paula E. a...*

26                                    Paula E. Ambrosini
                                  Attorneys for Plaintiff, MGA

27                                    Entertainment, Inc.

28

EXHIBIT **23**   PAGE **849**  - 25 -

MGA'S OPPOSITION TO MATTEL'S MOTION
TO DISMISS & STRIKE PORTIONS OF
COMPLAINT

**Exhibit  24**

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

BRYANT,                        )
                               )
            PLAINTIFF,         )
                               )
      V.                       )        NO.  CV 04-9040 SGL
                               )              (RNBX)
MATTEL, INC.,                  )
                               )
            DEFENDANTS.        )
_____)

# ATTORNEYS' EYES ONLY
### (THIS TRANSCRIPT HAS BEEN DESIGNATED ATTORNEYS' EYES ONLY.)

# DEPOSITION OF ISAAC LARIAN

# JULY 18, 2006



REPORTED BY:
APRIL PRAXMARER
CSR NO.  12437
JOB NO. 06AE315-AP

COURT REPORTERS
700 S. Flower Street
Suite 1100
Los Angeles, California 90017
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT _24_ PAGE _851_

```
 1                    UNITED STATES DISTRICT COURT

 2                    CENTRAL DISTRICT OF CALIFORNIA

 3                         EASTERN DIVISION

 4

 5        BRYANT,                      )
                                       )
 6            PLAINTIFF,               )
                                       )
 7        VS.                          )CASE NO. CV 04-9040 SGL
                                       )            (RNBX)
 8        MATTEL, INC.,                )
                                       )
 9            DEFENDANTS.              )
                                       )

10

11

12                       ATTORNEYS' EYES ONLY

13              (THIS TRANSCRIPT HAS BEEN DESIGNATED

14                    ATTORNEYS' EYES ONLY.)

15

16

17             DEPOSITION OF ISAAC LARIAN, TAKEN ON BEHALF OF THE

18        PLAINTIFF, AT 1999 AVENUE OF THE STARS, SUITE 700, LOS

19        ANGELES, CALIFORNIA, COMMENCING AT 9:26 A.M., TUESDAY,

20        JULY 18, 2006, BEFORE APRIL PRAXMARER, CERTIFIED

21        SHORTHAND REPORTER NO. 12437.

22

23

24

25
```

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT __24__ PAGE __852__

| | | | |
|---|---|---|---|
| 1 | 01:10:11 | A | RIGHT. |
| 2 | 01:10:11 | Q | GOING BACK TO 2000, WOULD YOU SAY? |
| 3 | 01:10:13 | A | YES. |
| 4 | 01:10:13 | Q | YOU INDICATED THAT, YOU KNOW, MGA WAS DOING |

4    01:10:13        Q    YOU INDICATED THAT, YOU KNOW, MGA WAS DOING

5    01:10:20    WELL FINANCIALLY IN 2000.  I MEAN, WE HAVE RECEIVED

6    01:10:26    SOME FINANCIAL STATEMENTS THAT YOUR ATTORNEYS HAVE

7    01:10:28    PROVIDED TO US WHICH, IF WE'RE READING THEM

8    01:10:32    CORRECTLY --

9    01:10:33        MS. CENDALI:  OKAY.  IN MIDSENTENCE -- I'M

10   01:10:36    SORRY.  THEY HAVE TO LEAVE THE ROOM.  I REALLY

11   01:10:39    APOLOGIZE.

12   01:10:39        MR. QUINN:  WELL, LET ME -- LET ME TRY

13   01:10:40    SOMETHING -- LET ME TRY SOMETHING ELSE.  WE'LL COME

14   01:10:42    BACK TO THAT.

15   01:10:46        MS. CENDALI:  OKAY.

16   01:10:46    BY MR. QUINN:

17   01:10:46        Q    YOU HAVE A BROTHER.  WHAT'S -- YOUR BROTHER,

18   01:10:49    FARHAD?  IS THAT HIS NAME?

19   01:10:52        A    YES.  YES, IT IS.

20   01:10:53        Q    AND I UNDERSTAND THERE WAS A DISPUTE BETWEEN

21   01:10:56    YOURSELF AND YOUR BROTHER WHICH RELATED, IN PART, TO

22   01:10:58    BRATZ; IS THAT TRUE?

23   01:10:59        A    IT RELATED TO THE VALUATION OF MGA.

24   01:11:02        Q    ALL RIGHT.  DID HE EVER TELL YOU THAT HE

25   01:11:05    THOUGHT THAT YOU HAD HIDDEN FROM HIM THE STAGE OF

159

EXHIBIT ___94___ PAGE 853

| | | |
|---|---|---|
| 1 | 01:11:09 | DEVELOPMENT THAT BRATZ WAS IN BACK IN 2000?  DID HE |
| 2 | 01:11:14 | TELL THAT TO YOU? |
| 3 | 01:11:14 | A    IN 2000? |
| 4 | 01:11:15 | Q    YES. |
| 5 | 01:11:16 | A    NO. |
| 6 | 01:11:16 | Q    I MEAN, DID -- NOT THAT HE TOLD THAT TO YOU |
| 7 | 01:11:21 | IN 2000, BUT THAT YOU HAD MISREPRESENTED THE STAGE OF |
| 8 | 01:11:25 | DEVELOPMENT THAT BRATZ WAS IN. |
| 9 | 01:11:26 | A    HE FILED A LAWSUIT, SO -- |
| 10 | 01:11:28 | Q    ALL RIGHT.  AS PART OF THAT, WAS IT YOUR |
| 11 | 01:11:31 | UNDERSTANDING HE WAS CONTENDING THAT YOU HAD NOT |
| 12 | 01:11:34 | DISCLOSED TO HIM WHAT THE STATE OF DEVELOPMENT OF BRATZ |
| 13 | 01:11:37 | WAS? |
| 14 | 01:11:37 | A    I BELIEVE. |
| 15 | 01:11:38 | Q    ALL RIGHT.  AND WAS HE SAYING THAT IT WAS |
| 16 | 01:11:44 | FURTHER ALONG IN 2000 THAN WHAT YOU TOLD HIM? |
| 17 | 01:11:46 | A    I DON'T KNOW.  I DON'T HAVE THE LITIGATION IN |
| 18 | 01:11:48 | FRONT OF ME. |
| 19 | 01:11:49 | Q    HOW -- HOW -- HOW DID THAT -- HOW WAS THAT |
| 20 | 01:11:52 | MATTER RESOLVED? |
| 21 | 01:11:53 | A    HE LOST AND APOLOGIZED. |
| 22 | 01:11:55 | Q    HE LOST AND APOLOGIZED. |
| 23 | 01:12:01 | A    AND HE OWES ME LEGAL FEES. |
| 24 | 01:12:06 | Q    OKAY. |
| 25 | 01:12:06 | A    AS WILL MATTEL. |

160

EXHIBIT __24__ PAGE __854__

```
1    01:12:07       Q    I'M SORRY?

2    01:12:07       A    AS WILL MATTEL.

3    01:12:08            MS. CENDALI:  OKAY.  LET'S WAIT SO THERE'S A

4    01:12:08   QUESTION.

5    01:12:09   BY MR. QUINN:

6    01:12:09       Q    SO THERE WAS AN ARBITRATION, IF I UNDERSTAND

7    01:12:11   THAT CORRECTLY?

8    01:12:12       A    YES.

9    01:12:12       Q    AND THAT ARBITRATION WAS -- IT WENT TO A

10   01:12:13   CONCLUSION; IS THAT TRUE?

11   01:12:13       A    IN THE MIDDLE OF THE ARBITRATION, HE DROPPED

12   01:12:17   THE CASE AND APOLOGIZED.

13   01:12:18       Q    ALL RIGHT.  WAS THERE SOME TYPE OF

14   01:12:20   SETTLEMENT?

15   01:12:20       A    NO.

16   01:12:21       Q    DID YOU MAKE -- DID YOU OR MGA MAKE ANY

17   01:12:23   PAYMENT TO HIM?

18   01:12:24       A    NO.

19   01:12:24       Q    DID ANYONE MAKE ANY PAYMENT TO HIM AS PART OF

20   01:12:29   THE SETTLEMENT?

21   01:12:29       A    NO.  HE MADE A PAYMENT TO ME, TO MGA.

22   01:12:33       Q    HE MADE A PAYMENT TO YOU.

23   01:12:35            SO THERE -- THERE WAS NOTHING THAT HE

24   01:12:36   RECEIVED AS PART OF THAT SETTLEMENT; IS THAT TRUE?

25   01:12:39            MS. CENDALI:  OBJECTION.  IT MISCHARACTERIZES
```

161

EXHIBIT 24   PAGE 855

| | | |
|---|---|---|
| 1 | 01:12:42 | HIS TESTIMONY ABOUT WHETHER THERE WAS A SETTLEMENT. |
| 2 | 01:12:46 | BY MR. QUINN: |
| 3 | 01:12:46 | Q    WELL, LET'S CALL IT A RESOLUTION, WHATEVER IT |
| 4 | 01:12:50 | WAS? |
| 5 | 01:12:50 | A    UH-HUH. |
| 6 | 01:12:50 | Q    IN CONNECTION WITH THE RESOLUTION OF THAT |
| 7 | 01:12:52 | MATTER, DID YOU OR MGA PROVIDE ANY TYPES OF BENEFIT TO |
| 8 | 01:12:56 | FARHAD? |
| 9 | 01:12:57 | A    NO. |
| 10 | 01:12:57 | Q    ALL THE BENEFIT WENT THE OTHER WAY, TO YOU |
| 11 | 01:13:00 | AND MGA; IS THAT TRUE? |
| 12 | 01:13:02 | A    YES. |
| 13 | 01:13:02 | Q    DID THE ISSUE OF -- THAT ISSUE CONCERNED THE |
| 14 | 01:13:05 | ACCURACY OF AN APPRAISAL, THAT DISPUTE? |
| 15 | 01:13:13 | A    YES. |
| 16 | 01:13:13 | Q    AND DID THAT INCLUDE AN APPRAISAL RELATING TO |
| 17 | 01:13:13 | THE VALUE OF MGA AT A CERTAIN PERIOD OF TIME? |
| 18 | 01:13:14 | A    I DON'T UNDERSTAND YOUR QUESTION. |
| 19 | 01:13:15 | Q    WELL, WAS PART OF THE ISSUE ABOUT THAT |
| 20 | 01:13:18 | APPRAISAL, THE VALUE OF BRATZ AT A CERTAIN PERIOD OF |
| 21 | 01:13:24 | TIME? |
| 22 | 01:13:24 | A    I DON'T RECALL HIS ALLEGATION.  ALL I KNOW IS |
| 23 | 01:13:27 | THE END RESULT. |
| 24 | 01:13:28 | Q    ALL RIGHT.  DO YOU HAVE AN UNDERSTANDING |
| 25 | 01:13:30 | WHETHER OR NOT THE VALUE OF BRATZ WAS PART OF THE ISSUE |

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT 24  PAGE 856

**Exhibit 25**

1   DALE M. CENDALI (admitted *pro hac vice*)
    DIANA M. TORRES (S.B. #162284)
2   WILLIAM J. CHARRON (S.B. #220518)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, CA  90071-2899
4   Telephone:  (213) 430-6000
    Facsimile:  (213) 430-6407
5   wcharron@omm.com

6   PATRICIA GLASER (S.B. #55668)
    CHRISTENSEN, GLASER, FINK,
7   JACOBS, WEIL & SHAPIRO, LLP
    10250 Constellation Boulevard, 19th Floor
8   Los Angeles, CA 90067
    Telephone:  (310) 553-3000
9   Facsimile:  (310) 557-9815

10  Attorneys for MGA Entertainment, Inc.,
    MGA Entertainment (HK) Ltd., and Isaac
11  Larian

12              UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14                  EASTERN DIVISION

15

16  CARTER BRYANT, an individual,        Case No.  CV 04-9049 SGL (RNBx)
                                         (consolidated with 04-9059 and 05-
17                 Plaintiff,            2727)

18       v.                             **Isaac Larian's Supplemental
                                        Responses To Mattel, Inc.'s First Set
19  MATTEL, INC., a Delaware            Of Requests For Documents And
    Corporation,                        Things**
20
                   Defendant.
21
22  AND CONSOLIDATED ACTIONS
23
24
25
26
27                                      EXHIBIT __25__ PAGE __857__
28
                                        LARIAN'S SUPP. RESPONSE TO MATTEL'S
                                        1ST SET OF REQUESTS FOR PRODUCTION
                                        CV 04-9049 SGL (RNBX)

## PRELIMINARY STATEMENT

Defendant Isaac Larian ("Larian") has not yet completed his investigation relating to the facts of this action and has not completed preparation for trial. Larian makes its response to these document requests ("requests," or individually, "request") based upon the information presently available to him and without prejudice to his right to amend or supplement his responses and to present evidence which may hereafter be discovered or become available.

Larian will respond to each request as he understands and interprets each request. If Mattel, Inc. ("Mattel") subsequently asserts any interpretation of any request that differs from that of Larian, Larian reserves the right to supplement his objections and responses.

By making these responses, Larian does not concede that any of the information sought by these requests is relevant or discoverable. Larian makes these responses and objections without waiving or intending to waive but rather, on the contrary, preserving and intending to preserve: (a) the right to object on any grounds to the use or introduction into evidence of the documents or information provided in response to these requests; (b) the right to object to the use of the documents or information provided in response to the requests in any subsequent proceeding in, or the arbitration of this or any other action; and (c) the right to object on any ground at any time to other requests or further discovery into any of the subject matters addressed in these requests or the responses thereto.

Larian shall not provide any privileged or protected information, including without limitation, information protected by the attorney-client privilege or the attorney work product doctrine, and nothing herein may be construed as a waiver of any applicable privilege or protection. Any inadvertent production of privileged or protected documents or information shall not be construed as a waiver of any privilege or protection attaching thereto and Larian reserves the right to correct the record with regard to any such information and to supplement or amend

EXHIBIT __25__ PAGE __858__   - 2 -

LARIAN'S SUPP. RESPONSE TO MATTEL'S
1ST SET OF REQUESTS FOR PRODUCTION
CV 04-9049 SGL (RNBX)

1  these responses, which supplemental or amended response shall become the

2  operative response.

## GENERAL OBJECTIONS

3

4       1.    Larian objects to each and every request on the ground that

5  production at the date and time demanded will subject Larian to unwarranted

6  oppression and undue burden and expenses.  The time set for compliance is unduly

7  burdensome, especially in light of the number of document requests, and the scope

8  and volume of the material being sought.  Larian intends to proceed expeditiously

9  to collect the documents for production, if any, and will produce them at a date and

10  time, and in such a manner, as may be mutually agreed by counsel for the parties.

11       2.    Larian objects to each request to the extent that it seeks

12  information protected from discovery by the attorney-client privilege, work-product

13  doctrine, right to privacy, or any other applicable privilege.

14       3.    Larian objects to each request to the extent that it seeks the

15  disclosure of confidential, proprietary or trade-secret information.  Should such

16  documents be otherwise responsive, Larian will produce such documents subject to

17  the terms and conditions of the protective order governing this case.

18       4.    Larian objects to each request to the extent that it seeks

19  documents in Mattel's own possession, custody or control or that are accessible to

20  Mattel from public sources or from third parties.

21       5.    Larian objects to each request to the extent that it asks for

22  documents that are not relevant to claims or defenses in this case.

23       6.    Larian objects to each and every request to the extent it purports

24  to require Larian to search all documents and things within his possession, custody

25  or control or within the possession, custody, or control of any of Larian's or MGA's

26  current or former employees, officers, directors, agents, representatives, attorneys,

27  parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-

28  in-interest, and any other person acting on his behalf, pursuant to his authority or

EXHIBIT _____25_____ PAGE _____859_____

- 3 -

LARIAN'S SUPP. RESPONSE TO MATTEL'S
1ST SET OF REQUESTS FOR PRODUCTION
CV 04-9049 SGL (RNBX)

1   subject to his control, on the grounds that such request is unreasonable, overbroad,

2   unduly burdensome and oppressive, violates the right of privacy, and purports to

3   require Larian to search for documents not within his possession, custody, or

4   control.  Larian will make a reasonably diligent search for responsive documents

5   within his possession, custody, or control.

6          7.    Larian objects to each and every request to the extent it seeks

7   "all documents" responsive to a certain category on the grounds that such request is

8   overbroad and unduly burdensome and oppressive.  On grounds of oppression and

9   undue burden, Larian will not respond to duplicative or cumulative requests and

10  will not re-produce documents it has already produced or produce documents that it

11  has received from Mattel or others in the course of discovery in this matter.

12         8.    Larian objects to each request to the extent it seeks documents

13  not within Larian's possession, custody, or control.

14         9.    Larian objects to the defined terms "You," "Your," and "Larian"

15  on the grounds that these terms, as defined, are overbroad, are vague and

16  ambiguous, and call for legal conclusions.

17         10.   Larian objects to the defined terms "Bratz," "Angel," "Bratz

18  Doll," "Bratz Product," "Bratz License," "Bratz Movie," and "Bratz Television

19  Show" on the grounds that these terms, as defined, are overbroad, are vague and

20  ambiguous, and call for legal conclusions.

21         11.   Larian objects to the defined term "Family Member" on the

22  grounds that this term, as defined, is overbroad, vague, and ambiguous, and calls

23  for legal conclusions.  Larian will interpret the term "Family Member" to be those

24  individuals he knows or believes to be family members of the person at issue.

25              **SPECIFIC OBJECTIONS AND RESPONSES**

26

27  **REQUEST FOR PRODUCTION NO. 1:**

28         All DOCUMENTS prepared, drafted, written, transmitted or received

EXHIBIT __25__ PAGE __860__        - 4 -        LARIAN'S SUPP. RESPONSE TO MATTEL'S
                                                1ST SET OF REQUESTS FOR PRODUCTION
                                                CV 04-9049 SGL (RNBX)