1    Request no. 47 seeks documents relevant to MGA's allegation that Mattel made a false

2    representation to a major United States retailer that MGA was giving another retailer below-

3    market pricing, and falsely told a United Kingdom retailer that MGA was discontinuing a product

4    line.  The Federal Rules of Civil Procedure do not require MGA to identify the businesses to

5    whom Mattel allegedly made the false statements as a precondition to propounding discovery.

6    Nor is MGA required to identify every instance in which Mattel allegedly made such false

7    representations before propounding discovery.  Nevertheless, the request is extremely broad and

8    burdensome, requiring Mattel to search for "all documents referring or relating to any

9    communications between Mattel" and buyers, merchandisers, general merchandise managers, or

10   retailers referring or relating to whether MGA was giving another United States retailer below-

11   marketing pricing, or whether MGA was discontinuing one of its lines.  To alleviate some of the

12   burden to Mattel, the request is hereby limited to require production of only Mattel's

13   communications with any buyers, merchandisers, general merchandise managers or retailers

14   about MGA providing below-market pricing or MGA discontinuing a product line.  With this

15   limitation, MGA's motion is granted as to request no. 47.

16                           5. Document Request Nos. 48 – 50

17   Request nos. 48 through 50 essentially seek all documents referring or relating to Mattel's

18   communications with any buyers, merchandisers, general merchandise managers, retailers,

19   suppliers, licensees, and potential licensees, referring or relating to Bratz, Larian or MGA

20   regarding the origins, design, development, product launch, sales, promotions, advertising,

21   quality, or price of Bratz or any other MGA product.  During the meet and confer, Mattel agreed

22   to produce some, but not all, responsive documents.  In particular, Mattel objected to producing

23   documents relating to the pricing of Bratz or any MGA product.  Mattel also objected to

24   producing documents relating to Bratz unless the documents also referenced Mattel's My Scene

25   or Barbie products.

26

27

28

1        MGA contends that these documents are relevant to its allegation that Mattel interfered

2    with its business dealings with third parties.  In its reply brief, MGA asserts that it seeks

3    documents and communications between Mattel and certain third parties "from June 2001 tending

4    to support or refute MGA's assertions that Mattel interfered with MGA's dealings with such

5    parties by providing false or misleading information concerning MGA products, the ownership of

6    'Bratz' and exerting pressure on these parties not to license or sell MGA products." MGA's

7    Reply at 8.

8        Mattel contends that these requests are overbroad and amount to an improper fishing

9    expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other MGA

10   product, whether or not they have anything to do with anything placed at issue by MGA.  Mattel's

11   Opposition at 7-8.  Mattel also contends that the requests have no linkage to any possible

12   consumer confusion between Bratz and My Scene or between the other products mentioned in

13   MGA's complaint or MGA's responses to Mattel's contention interrogatories. Id. at 8.

14        This category of requests is clearly overbroad, requiring production of documents that

15   merely mention MGA, Larian, Bratz or other MGA products, regardless of whether or not they

16   have anything to do with the claims and defenses in the case.  MGA has not made any attempt to

17   link these requests to any of the numerous and far-ranging allegations of unfair competition set

18   forth in its complaint.  Instead MGA makes a very generalized argument that the requests seek

19   information relevant to its allegation that Mattel interfered with MGA's business dealings with

20   third parties.  Furthermore, Mattel has carried its burden of establishing that the burden and

21   expense of complying with the requests far exceed their likely benefit, taking into account the

22   needs of the case.  Accordingly, MGA's motion is denied as to request nos. 48 through 50.

23               6. Document Request Nos. 51 – 55

24        This category of document requests requires production of essentially all documents

25   referring or relating to any communications between Mattel and any public relations firms,

26   members of the press, current or former MGA employees, or former Mattel employees, relating to

27

28

1  Bratz, Larian, or MGA regarding the origins, design, development, product launch, sales,

2  promotions, advertising, quality, or price of Bratz or any other MGA product.  During the meet

3  and confer process, Mattel agreed to produce some, but not all responsive documents.

4       MGA contends that these documents are relevant to its allegations that Mattel has engaged

5  in serial imitation of MGA products in an attempt to dilute their distinctiveness and create

6  confusion in the marketplace.  MGA also contends that these documents are likely to lead to

7  admissible evidence relating to the creation and ownership of Bratz, Mattel's knowledge and

8  awareness of Bratz products and marketing and its attempt to imitate those products and dilute

9  their distinctiveness.

10      Mattel contends that these requests are overbroad and amount to an improper fishing

11  expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other MGA

12  product, whether or not they have anything to do with anything placed at issue by MGA.  Mattel's

13  Opposition at 7-8.  Mattel also contends that the requests have no linkage to any possible

14  consumer confusion between Bratz and My Scene or between the other products mentioned in

15  MGA's complaint or MGA' responses to Mattel's contention interrogatories.  Id. at 8.

16      Like the previous category of requests, this category of requests is grossly overbroad,

17  requiring production of documents that merely mention MGA, Larian, Bratz or other MGA

18  products, regardless of whether or not they have anything to do with the claims and defenses in

19  the case.  MGA has not made any attempt to link these requests to any of the allegations of unfair

20  competition set forth in its complaint or to the responses it provided to Mattel's contention

21  interrogatories.  Furthermore, Mattel has carried its burden of establishing that the burden and

22  expense of complying with these requests far exceed their likely benefit, taking into account the

23  needs of the case.  Accordingly, MGA's motion is denied as to request nos. 51-55.

24                   7. Document Request Nos. 56 – 58

25      This category of requests requires production of all documents relating to business

26  dealings between any licensee, supplier, manufacturer, retailer, distributor, or merchandiser and

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

18

EXHIBIT ___5___ PAGE /28

1   MGA.  MGA contends that these document requests are specifically tailored to documents in

2   Mattel's possession, custody or control concerning MGA's business dealings with licensees,

3   suppliers, manufacturers, retailers, distributors, or merchandisers, and are directly relevant to its

4   claims that Mattel interfered with MGA's business dealings with third parties.

5        Again, Mattel contends that these requests are overbroad and amount to an improper

6   fishing expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other

7   MGA product, whether or not they have anything to do with anything placed at issue by MGA.

8   Mattel's Opposition at 7-8.  Mattel also contends that the requests have no linkage to any possible

9   consumer confusion between Bratz and My Scene or between the other products mentioned in

10  MGA's complaint or MGA' responses to Mattel's contention interrogatories.  Id. at 8.  Mattel

11  also objects to request nos. 57 and 58 insofar as they require Mattel to produce documents that

12  refer "explicitly or implicitly" to business dealings involving MGA.

13       Like the previous two categories of document requests, this category of requests is grossly

14  overbroad.  Request nos. 56 and 57 require production of documents referring or relating to

15  MGA's business dealings, without specifying any products or other subject matter limitations.

16  Request no. 58 is narrower, but is unreasonable insofar as it requires Mattel to produce documents

17  that refer "explicitly or implicitly" to business deals involving MGA's Bratz or other products.

18  Furthermore, Mattel has carried its burden of establishing that the burden and expense of

19  complying with the requests far exceed their likely benefit, taking into account the needs of the

20  case.  Accordingly, MGA's motion is denied as to request nos. 56 through 58.

21                 8. Document Request Nos. 59, 60, 62-63, 99, 101

22       This category of requests requires production of all documents relating to (a) any

23  interference with or inhibition of the licensing or potential licensing of MGA's products, or

24  relating to any limitations or restrictions on any MGA licensee (request nos. 59, 62-63); (b) any

25  third party's licensing or potential licensing of MGA products (request no. 60); and (c)

26  communications between Mattel and MGA's licensees and distributors referring to MGA, Bratz

27

28

1    or the claims in this lawsuit (request nos. 99, 101). MGA contends that the documents it seeks are

2    relevant to its allegation that Mattel exerted its influence on retailers and other third parties not to

3    do business with MGA.

4         Mattel contends that request nos. 59, 60, 62 and 63 are overbroad, seeking all documents

5    that might bear on MGA's business without identifying any particular business dealings. Mattel

6    also contends that they are overbroad insofar as they require production of all documents related

7    to "any MGA PRODUCT world wide," where "product" is defined as "each image, character,

8    logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been

9    manufactured, marketed or sold by MGA or others under license." Mattel's Opposition at 9.

10        Mattel also contends that request nos. 99 and 101 are overbroad and amount to an

11   improper fishing expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or

12   any other MGA product, whether or not they have anything to do with anything placed at issue by

13   MGA. Mattel's Opposition at 7-8. Mattel also contends that the requests have no linkage to any

14   possible consumer confusion between Bratz and My Scene or between the other products

15   mentioned in MGA's complaint or MGA' responses to Mattel's contention interrogatories. Id. at

16   8.

17        Request nos. 59, 60, 62, and 63 seek information relevant to MGA's allegations, including

18   among others, that Mattel "warned a number of companies, including the biggest publishing

19   entity in the United Kingdom, not to license MGA products, or risk retribution," and that Mattel

20   "terminated one of its licensees, apparently in retribution for licensing Bratz." MGA's Complaint

21   at ¶76. They are also reasonably tailored to require production of only those documents and

22   communications that refer or relate to interference with or inhibition of the licensing or potential

23   licensing of MGA's products, that refer or relate to any limitations or restrictions on any MGA

24   licensee, and that refer or relate to any third party's licensing or potential licensing of MGA

25   products. Mattel has not established that searching for theses types of responsive documents is

26   unduly burdensome. Therefore, MGA's motion is granted as to request nos. 59, 60, 62 and 63.

27

28

1    In contrast, however, request nos. 99 and 101 are overbroad, requiring Mattel to search for

2    and produce all documents referring or relating to communications between Mattel and any MGA

3    licensee or distributor that refer or relate to MGA, Bratz, this lawsuit, other litigation involving

4    the parties or their employees, claims by MGA against Mattel or claims by Mattel against MGA

5    or its employees.  For example, the requests would potentially require production of documents

6    that merely mentioned MGA and Bratz but that otherwise have no relevance to the claims and

7    defenses in the suit.  Therefore, MGA's motion is denied as to request nos. 99 and 101.

8                        9. Document Request Nos. 64, 65, 66, 67

9    This category of requests requires production of all documents relating to (a) any third

10   party's agreement or decision not to license, manufacture, promote, distribute or sell MGA

11   products or supply materials or services to MGA, or to limit, restrict, curtail or reduce such

12   activities (request nos. 64-65); and (b) any interference with or inhibition of the supply of goods

13   or services to MGA, or of MGA's distribution of its products (request nos. 66-67).  MGA

14   contends that these documents are relevant to its claims that Mattel interfered with MGA's

15   business dealings with distributors, retailers, and other third parties, as alleged in paragraphs 76-

16   79 of its complaint.

17   Mattel contends that these requests are overbroad, seeking all documents that might bear

18   on MGA's business without identifying any particular business dealings.  Mattel also contends

19   that they are overbroad insofar as they require production of all documents related to "any MGA

20   PRODUCT world wide," where "product" is defined as "each image, character, logo, doll, toy,

21   accessory, product, packaging or other thing or matter that is or has ever been manufactured,

22   marketed or sold by MGA or others under license."  Mattel's Opposition at 9.

23   These requests seek information relevant to MGA's allegation that Mattel interfered with

24   its business dealings.  In particular, MGA has alleged that Mattel "warned a number of

25   companies, including the biggest publishing entity in the United Kingdom, not to license MGA

26   products, or risk retribution," and that Mattel "terminated one of its licensees, apparently in

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

21

EXHIBIT ____5____ PAGE _131_

1  retribution for licensing Bratz." MGA's Complaint at ¶76. MGA's requests are reasonably

2  calculated to lead to information relevant to this allegation. Although the definition of product is

3  broad, the definition does not render the requests overbroad because they are otherwise limited in

4  subject matter. Further Mattel has failed to establish that it is unduly burdensome to search for

5  and produce documents responsive to this category of requests. Therefore, MGA's motion is

6  granted as to request nos. 64, 65, 66, and 67.

7                                  10. Document Request Nos. 102-104

8          This category of requests requires production of Mattel's communications with three

9  companies referring to MGA, Bratz or Larian. MGA contends that these documents are relevant

10  to its claims that Mattel interfered with its business dealings with third parties.

11         Mattel now represents that it will produce communications with Nickelodeon that bear on

12  MGA's allegation regarding sponsorship of the 2005 Kids Choice Awards. Mattel contends,

13  however, that communications with Cartoon Network or 4kids Entertainment are not relevant to

14  any claim or defense in suit.

15         Mattel's communications with Nickelodeon regarding MGA, Bratz or Larian are relevant

16  in light of MGA's allegation that Mattel was "instrumental in attempting to keep MGA from

17  participating as a sponsor in the 'Kids' Choice Awards.'" Id. at ¶97. Therefore, MGA's motion

18  is granted as to request nos. 102. In contrast, MGA has failed to establish that similar

19  communications with Cartoon Network and 4kids Entertainment are relevant to a claim or

20  defense in suit. Therefore, MGA's motion is denied as to request nos. 103 and 104.

21  //

22  //

23  //

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

22

EXHIBIT ___5___ PAGE _132_

V. CONCLUSION

For the reasons set forth above, MGA's motion to compel is granted in part as to document request nos. 32 ( as modified), 33 (as modified), 61 (as modified), 37, 39, 47 (as modified) , 59, 60, 62, 63, 64, 65, 66, 67, and 102, and denied in part as to document request nos. 38, 43, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 99, 101, 103 and 104.  MGA's request for sanctions is denied.  Mattel shall produce responsive documents as set forth above no later than June 15, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, MGA shall file this Order with the Clerk of Court forthwith.

Dated: May 22, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___5___ PAGE ___133___

23

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 22, 2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION TO COMPEL DOCUMENTS RESPONSIVE TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DATED NOVEMBER 22, 2006 in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 22, 2007, at San Francisco, California.

_____
ANTHONY SALES

EXHIBIT ___5___ PAGE _134_

Exhibit 6

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

525 UNIVERSITY AVENUE

PALO ALTO, CALIFORNIA 94301

TEL: (650) 470-4500

FAX: (650) 470-4570

www.skadden.com

DIRECT DIAL
650-470-4624
DIRECT FAX
650-470-4570
EMAIL ADDRESS
ATEMKIN@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 9, 2008

**BY EMAIL AND FEDEX**

Dylan Proctor, Esq.
Scott Kidman, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

RE:     Bryant v. Mattel; Mattel's Third Set of RFP To MGA

Dear Dylan and Scott:

This letter is to follow up on our teleconferences over the past several weeks regarding MGA's responses and objections to Mattel's Third Set of Requests for Production to MGA. I enclose MGA's Objections and Supplemental Responses to Mattel, Inc.'s Third Set Of Requests For Production Of Documents And Things (the "Supplemental RFP Responses"), which reflect MGA's agreement to produce certain documents in response to Requests Nos. 31, 35, 37, 39, 41, and 78-85, as we discussed during our conferences.

**Requests Nos. 1-30: Documents from unrelated litigations involving MGA entities**

Requests 1-30 seek a broad array of documents related to 25 "BRATZ LAWSUITS" that purportedly involved the MGA entities and the Bratz line of products.[1] As I noted in our conferences, MGA has already produced over 14,599 pages[2] of documents from a number of the

---

[1] During the meet and confer with Mr. Proctor on December 31, we notified you that three of the cases defined as "BRATZ LAWSUITS" did not involve the Bratz line of products at all. These matters include: Kin Yat Industrial Company Limited v. MGA Entertainment (H.K.) Limited, Golden Bright Manufacturer Limited v. Sunlight Electronic Toys, and MGA Entertainment Inc. and Elliot Rudell trading as Rudell Design v. Wealth Ocean Industrial Limited.

[2] Among the over 3.4 million pages already produced by MGA in this case.

EXHIBIT ___6___ PAGE _135_

Dylan Proctor
Scott Kidman
January 9, 2008
Page 2

identified cases in response to other duplicative discovery requests.[3]  In particular, we call your attention to these specific documents, among others, that have already been produced for the following cases:

- Art Attacks Ink, LLC v. MGA Entertainment, Inc. (MGA 0862033- MGA 0862245, MGA 0863002-MGA 0863859, MGA 0863902-MGA 0864225, MGA 0868866-MGA 0869526, and MGA 0874043-MGA 0875237)

- MGA Entertainment v. Fun 4 All (MGA 0862246-MGA 0863001 and MGA 0871766-MGA 0872521)

- MGA Entertainment v. Ubisoft (MGA 0864226-MGA 0865640, MGA 0872522-MGA 0873936, and MGA 0873990-MGA 0874042)

- McDonald's Corporation v. MGA Entertainment, Inc. f/k/a ABC International Traders (MGA 0866262-MGA 0868038, MGA0869995 - MGA0871306)

- MGA Entertainment, Inc. v. Thomas Christopher Joseph Metson  (MGA 0868039-MGA 0868091 and MGA 0873937-MGA 0873989)

- Karen Dudnikov, Michael Meadors v. MGA Entertainment, Inc. (MGA0871307 - MGA0871499)

- MGA Entertainment, Inc. v. Multitoy, Inc., Yuan-Lan Liu, Jeff Wu dba TMC Toys, All Toys Imports, Inc., Susan Liu, ToysDivision, Inc., Tom Liu, Does 1-20 (MGA0871500 - MGA0871749)

- Declarations and exhibits from proceedings in Hong Kong (MGA 0883033-MGA 0886347), including:

  o   MGA Entertainment Inc. v. Hunglam Toys Company Limited; Choy Kam Ying, Candy; Kwok Yin Kwan, May; Kwok Chin Hung

  o   MGA Entertainment Inc. formerly known as ABC  International Traders, Inc. doing business as MGA Entertainment v. Toys & Trends (Hong Kong) Limited, Cityworld Limited, Jurg Willi Kesselring

---

[3] As set forth in MGA's Responses to Mattel's Third Set of RFPs to MGA, Requests 1-30 are duplicative of, among other previously propounded document requests, the following: Request Nos. 38, 41 and 90 from Mattel's First Set of Requests for Production of Documents and Tangible Things to MGA, Request Nos. 5-12, and 20 from Mattel, Inc.'s First Set of Requests for Documents and Things re Claims of Unfair Competition to MGA Entertainment, Inc.

EXHIBIT   6   PAGE  136

Dylan Proctor
Scott Kidman
January 9, 2008
Page 3

     o    ABC International Traders, Inc. doing business as MGA Entertainment V. Qualiman Industrial Company Limited; Prime Designs, Limited

     o    MGA Entertainment Inc. & MGA Entertainment (H.K.) Limited V. Double Grand Corporation Limited

     o    MGA Entertainment Inc. V. Hujnglam Toys Company Limited

In addition, documents relating to MGA's rights with respect to the Bratz line of products (Requests No. 26, 27, and 28) have also been produced in this case.

Mattel has made no showing that any additional documents that may come within the scope of Requests 1-30 relate to the claims and defenses in this case or would otherwise lead to the discovery of admissible evidence. During the course of our meet and confers, I repeatedly requested that Mattel narrow these requests, particularly in light of the burden to MGA to produce (or log privileged) responsive documents. For example, we suggested that Mattel should start by limiting its requests to a subset of the actions identified in the defined term "BRATZ LAWSUITS." You refused to limit these requests in any way.

Responding to these requests as stated would place undue burden on MGA. The 25 lawsuits identified in your definition of the term "BRATZ LAWSUITS" span approximately seven years of litigation, include approximately 29 parties and, conservatively, have generated hundreds of volumes of files. Each of these files would need to be reviewed carefully because, as one would expect, they are likely to contain vast quantities of information that is protected from disclosure by the attorney-client privilege and work product doctrine. The extreme burden and cost to MGA of reviewing these documents and logging privileged documents far outweighs any marginal relevance of the documents related to these litigations that have not already been produced in response to other requests.

In light of the foregoing, MGA will not produce additional documents in response to these requests as stated.

**Request No. 31: Documents Relating to the use of the term "Jade" in connection with any MGA doll**

As we discussed during our meet and confer, subject to and without waving MGA's objections, MGA will produce non-privileged documents responsive to this request, if any exist, that were created prior to January 1, 2001 that refer or relate to the use (or considered, proposed or potential use) of the term "Jade" in connection with any MGA doll, product or other matter, to the extent any such documents are within MGA's and can be located following a reasonably diligent search.

EXHIBIT _____6_____ PAGE ___137___

Dylan Proctor
Scott Kidman
January 9, 2008
Page 4

**Requests Nos. 32-41: Documents Relating to Sandra Bilotto**

As we also have discussed, documents responsive to these requests relating to Sandra Bilotto and, in particular, payments to and invoices from Ms. Bilotto have already been produced in response to prior, duplicative requests. *See* MGA 0878994-MGA 0879007. Several of the requests relating to Ms. Bilotto seek documents concerning MGA's knowledge of and Ms. Bilotto's work for Mattel. We asked you to inform us whether Ms. Bilotto actually performed any work for Mattel to understand the relevance of these requests. You could not tell us whether Ms. Bilotto worked for Mattel. Please provide us with this information so that we may better understand how these requests seek documents that are relevant to the claims and defenses in this action.

During the meet and confer on January 7, 2008, we raised the fact that, contrary to your letter, Requests Nos. 32-41 are not narrowly tailored to Ms. Bilotto's work on Prayer Angels and are therefore needlessly burdensome on MGA. We invited you to narrow these requests to Ms. Bilotto's work on Prayer Angels. You refused any such limitation. MGA will not produce documents in response to these overly broad requests as stated. Although it has already produced documents that are responsive to these requests in connection with its responses to prior duplicative requests, MGA will produce documents in response to Requests Nos. 32-34, 36, 38, 40 as follows (to the extent that additional documents can be found following a reasonably diligent search):

Request No. 35: Subject to its objections, MGA will produce non-privileged documents in its possession, custody or control, if any, that it is able to locate following a reasonably diligent search that refer or relate to work or services provided by Sandra Bilotto on Prayer Angels to MGA prior to January 1, 2001.

Request No. 37: Subject to its objections, MGA will produce non-privileged tangible items provided by Sandra Bilotto to MGA prior to January 1, 2001, relating to Prayer Angels, including head sculpts, prototypes and models in its possession, custody or control, if any, that it is able to locate following a reasonably diligent search.

Request No. 39: Subject to its objections, MGA will produce non-privileged documents in its possession, custody or control, if any, that it is able to locate following a reasonably diligent search that refer or relate payments made to Sandra Bilotto for work on Prayer Angels prior to January 1, 2001.

Request No. 41: Subject to its objections, MGA will produce non-privileged documents in its possession, custody or control, if any, that it is able to locate following a reasonably diligent search that refer or relate, to communications between Isaac Larian and Sandra Bilotto prior to January 1, 2001 that refer and relate to Prayer Angels.

**EXHIBIT ___6___ PAGE _138_**

Dylan Proctor
Scott Kidman
January 9, 2008
Page 5

We understand that Requests Nos. 36, 38 and 41 relate to issues that will be addressed in Phase II of the trial in this action. As you know, at the hearing held before Judge Larson on Monday, January 7, 2008, Tom Nolan proposed that Phase II discovery be stayed to permit the parties to complete Phase I discovery and preserve the current trial schedule. Judge Larson agreed to consider that proposal. As we discussed during our meet and confers, we believe that it is inefficient to expend the parties' efforts on Phase II discovery at this time, particularly in light of the fact that only three weeks remain to the Phase I cutoff. MGA will not produce documents in response to Requests Nos. 36, 38, and 41 (or Requests 32-35, 37 and 39-40 to the extent those requests seek documents related to Phase II issues) at this time in order to permit Judge Larson to consider our suggestion that Phase II discovery should be deferred to permit the parties to complete Phase I discovery.

**Requests 42, 76, and 77: Documents Relating to Paula Garcia**

As we discussed during the meet and confer with Mr. Kidman, Request No. 42[4] is overbroad and completely untethered to the issues in the present litigation. In particular, as we also discussed, due to Ms. Garcia's position at MGA, this request conceivably calls for virtually every communication between Mr. Larian and Ms. Garcia since the inception of the Bratz product to today. In addition, MGA has produced over 3.4 million pages of documents in this case, including communications sought by this request. If there are specific communications that you contend have not been produced, please let us know.

You refused to limit Request No. 42 in any way. Accordingly, in light of the foregoing and the fact that MGA has already produced documents responsive to this request, MGA will not produce additional documents in response to Request No. 42.

Requests Nos. 76 and 77 seek all payments by MGA to Ms. Garcia prior to January 1, 2002 and all payments, including bonuses and incentive payments by MGA to Ms. Garcia without limitation, respectively. We proposed limiting these requests to payments to Ms. Garcia associated with Bratz, which you rejected.

---

[4] Request No. 42 seeks "All COMMUNICATIONS between Isaac Larian and Paula Garcia, including without limitation all such COMMUNICATIONS that REFER OR RELATE TO MATTEL, and MATTEL doll or product, BRYANT or BRATZ." During the meet and confer you stated that Mattel would amend the request to delete the words "including without limitation all such communications."

EXHIBIT ___6___ PAGE _139_

Dylan Proctor
Scott Kidman
January 9, 2008
Page 6


**Requests 43-54: Documents relating to Scooter Samantha; Requests 56-66, 67-72: Documents relating to Space Babes; and Requests 67-68, and 73: Documents relating to Scott Reyes**

We understand that Requests Nos. 43-55 (Scooter Samantha), 56-67 and 69-72 (Space Babes);[5] 68, 73-75 (Scot Reyes), seek documents relating to Phase II issues. As discussed above, we believe it is inefficient to expend the parties' efforts on Phase II discovery at this time, particularly in light of the fact that only three weeks remain to the Phase I cutoff. Judge Larson is considering our suggestion that Phase II discovery should be deferred until after Phase I discovery is complete. Accordingly, MGA will not produce documents in response to these requests at this time in order to permit Judge Larson to consider our suggestion that Phase II discovery should be deferred to permit the parties to complete Phase I discovery.

**Request 78-88: Personnel and vendor files**

Requests Nos. 78-86 seek personnel and vendor files for the following: Maureen Mullen (née Chianese), Scot Reyes, Sandra Bilotto, Steve Linker, Veronica Marlow, Peter Marlow, Wendy Ragsdale, Billy Ragsdale and Sarah Halpern. As I told you during our conferences, MGA may have already produced some documents from these files in response to other more narrowly tailored requests. Nevertheless, subject to and without waiving its objections, MGA will produce non-privileged documents from the identified personal and vendor files that refer or relate to work or services provided by named individuals on Bratz prior to January 1, 2001, if any, in its possession, custody or control, that it is able to locate following a reasonably diligent search.

With respect to Request Nos. 87, 88 (and to the extent Requests Nos. 78-86 seek the same documents or information), these requests seek the personnel and vendor files for 114 persons that Mattel claim have performed work for both MGA and Mattel. We understand these requests to seek documents relating to Phase II issues. Accordingly, MGA will not produce documents in response to these requests at this time in order to permit Judge Larson to consider our suggestion that Phase II discovery should be deferred to permit the parties to complete Phase I discovery.

Please feel free to call me if you have any questions or would like to discuss these matters further.

Very truly yours,

Andrew C. Temkin

---

[5] During the meet and confer we explained that the "Space Babes" product was not released to the market.

EXHIBIT ___6___ PAGE _140_

**Exhibit 7**

1

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3               EASTERN DIVISION

4                  - - -

5     HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                  - - -

7  CARTER BRYANT, ET. AL.,          )

8                    PLAINTIFFS,    )

9           VS.                     )   NO. ED CV 04-09049
                                    )   (LEAD LOW NUMBER)
10  MATTEL, INC., ET. AL.,          )
                                    )
11                   DEFENDANTS.    )   MOTIONS
                                    )
12  AND CONSOLIDATED ACTIONS,       )
                                    )

**CERTIFIED COPY**

13

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16               RIVERSIDE, CALIFORNIA

17              MONDAY, DECEMBER 3, 2007

18                  10:06 A.M.

19

20

21

22

23           THERESA A. LANZA, RPR, CSR
24        FEDERAL OFFICIAL COURT REPORTER
          3470 12TH STREET, RM. 134
          RIVERSIDE, CALIFORNIA  92501
25             951-274-0844
          CSR11457@SBCGLOBAL.NET

2

```
1   APPEARANCES:

2   ON BEHALF OF CARTER BRYANT:

3                        KEKER & VAN NEST
                         BY:  MATTHEW M. WERDEGAR
4                        710 SANSOME STREET
                         SAN FRANCISCO, CALIFORNIA  94111-1704
5                        415-391-5400

6
    ON BEHALF OF MATTEL:
7
                         QUINN EMANUEL
8                        BY:  JON COREY
                         BY:  MICHAEL T. ZELLER
9                        BY:  B. DYLAN PROCTOR
                         865 S. FIGUEROA STREET,
10                       10TH FLOOR
                         LOS ANGELES, CALIFORNIA  90017
11                       213-624-7707

12
    ON BEHALF OF MGA ENTERTAINMENT (INCOMING):
13
                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
14                       BY:  THOMAS J. NOLAN
                         BY:  CRAIG HOLDEN (IN-HOUSE)
15                       300 SOUTH GRAND AVENUE
                         LOS ANGELES, CALIFORNIA  90071-3144
16                       213-687-5000

17
    ON BEHALF OF GUSTAVO MACHADO:
18
                         OVERLAND BORENSTEIN COTE & KIM
19                       BY:  ALEXANDER H. COTE
                         300 SOUTH GRAND AVENUE
20                       SUITE 2750
                         LOS ANGELES, CALIFORNIA  90071
21                       213-613-4660

22

23

24

25
```

DECEMBER 3. 2007                    BRYANT V MATTEL

EXHIBIT ___7___ PAGE __142__

3

1                              I N D E X

2                                                    PAGE

3     MOTION.........................................    4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DECEMBER 3. 2007                    BRYANT V MATTEL

EXHIBIT ___7___ PAGE _143_

14

1       CAN ANYONE SPEAK TO THIS CONVERSATION THAT SUPPOSEDLY

2  TOOK PLACE?

3          **MR. NOLAN:**  YOUR HONOR, I CANNOT, BUT IF I COULD JUST

4  INQUIRE WITH COUNSEL WHO MADE THE STATEMENT FROM MY TEAM.

5          **THE COURT:**  THAT'S REASONABLE.

6          (SOTTO VOCE DISCUSSION BETWEEN COUNSEL.)

7          **MR. ROTH:**  YOUR HONOR, AS I INDICATED, OUR VIEW IS

8  THAT FOR THE MOST PART, THE UNCLEAN HANDS DEFENSE RELATES TO

9  PHASE TWO OF THE CASE.

10          **THE COURT:**  SO ARE YOU WILLING TO SAY THAT YOU ARE

11  NOT GOING TO BE BRINGING AN UNCLEAN HANDS DEFENSE IN PHASE ONE?

12          **MR. ROTH:**  NO, WE'RE NOT WILLING TO --

13          **THE COURT:**  OKAY.  THEN YOU'RE GOING TO NEED TO

14  EXPLAIN THE EXTENT TO WHICH THE UNCLEAN HANDS DEFENSE IS GOING

15  TO BE RAISED IN PHASE ONE.

16          **MR. ROTH:**  OKAY.

17          THE UNCLEAN HANDS DEFENSE RELATES TO THE BRATZ

18  INTELLECTUAL PROPERTY.

19          **THE COURT:**  OKAY.  THAT'S PRETTY BROAD.

20          IN WHAT WAY, COUNSEL?

21          **MR. ROTH:**  IN THE SENSE THAT WE ALLEGE, IN CONNECTION

22  WITH THE COPYRIGHT CLAIMS, INFRINGEMENT AND UNFAIR PRACTICE AS

23  IT RELATES TO MR. CARTER [SIC] AND THE BRATZ INTELLECTUAL

24  PROPERTY.  THAT IS THE SUBJECT MATTER PHASE.

25          **THE COURT:**  WHAT SPECIFICALLY HAPPENED HERE THAT WAS

DECEMBER 3. 2007                          BRYANT V MATTEL

**EXHIBIT** ___7___ **PAGE** _144_

15

1   UNCLEAN BY MATTEL?

2          MR. ROTH:   OUR ALLEGATIONS ARE THAT MATTEL MADE

3   DISPARAGING REMARKS REGARDING MR. BRYANT, MGA, AND THE BRATZ

4   PRODUCTS FOLLOWING THE COMMERCIAL EXPLOITATION OF THAT

5   INTELLECTUAL PROPERTY BY MGA.

6          NOW, THAT, WE THINK, IS RELEVANT TO PHASE ONE OF THE

7   CASE.   IT'S PRIMARILY RELEVANT, WE ACKNOWLEDGE, TO PHASE TWO OF

8   THE CASE.

9          IN ADDITION, WITH RESPECT TO PHASE 1-A AND THE

10  INFRINGEMENT ISSUES THAT ARISE IN CONNECTION WITH PHASE 1-A,

11  THIS COURT MAY BE ASKED, IF LIABILITY IS DETERMINED AT SOME

12  POINT, TO ISSUE AN INJUNCTION IN THIS CASE.   IN THE CONTEXT OF

13  A PROCEEDING BEFORE THIS COURT REGARDING WHETHER OR NOT AN

14  INJUNCTION SHOULD BE ISSUED, ALL OF THE ALLEGATIONS REGARDING

15  INEQUITABLE CONDUCT WILL BE RELEVANT TO THIS COURT.

16          THE COURT:   GO BACK TO THESE NEGATIVE COMMENTS.

17          ARE THESE -- AND I DON'T MEAN TO MAKE TOO FINE A

18  POINT ON THIS -- ARE THESE NEGATIVE STATEMENTS ABOUT BRATZ, OR

19  ARE THESE ABSOLUTELY FALSE DISPARAGING COMMENTS?

20          WHAT IS YOUR ALLEGATION?

21          MR. ROTH:   THEY ARE FALSE DISPARAGING COMMENTS

22  REGARDING BRATZ AND MGA.

23          THE COURT:   DIRECTED TO CARTER BRYANT, OR DIRECTED TO

24  MGA?

25          MR. ROTH:   DIRECTED TO MGA.

DECEMBER 3. 2007                    BRYANT V MATTEL

EXHIBIT ___7___ PAGE ___145___

16

1          THE COURT:  SUCH AS?

2          MR. ROTH:  COMMENTS REGARDING THE CHARACTERISTICS OF

3   THE PRODUCTS AND SO FORTH.

4          THE COURT:  BUT GIVE ME AN EXAMPLE OF A COMMENT THAT

5   WAS MADE.

6          MR. ROTH:  YOUR HONOR, I CAN'T GO --

7          THE COURT:  YOU CAN'T GIVE ME ONE EXAMPLE?

8          MR. ROTH:  NO, I CAN'T.

9          THE COURT:  CAN ANYBODY FROM MGA GIVE ME ONE EXAMPLE

10  OF ONE DISPARAGING FALSE STATEMENT MADE BY MATTEL TOWARDS MGA?

11         MR. NOLAN:  YOUR HONOR, I THINK IT GOES --

12         IF I COULD.

13         THE CONTENTION WILL BE THAT MATTEL ENGAGED IN A

14  SERIES OF FALSE STATEMENTS TO THE PRESS WITH RESPECT TO THE

15  NATURE OF THE BUSINESS PRACTICES OF MGA, AND, IN PARTICULAR,

16  HOW IT RELATES TO THE MARKETING OF BRATZ.  THERE'S A CONTENTION

17  THAT BRATZ -- MGA WAS MISSTATING IN THE MARKETPLACE THE BREADTH

18  OF ITS SUCCESS, THE ORIGINALITY OF ITS DESIGN, THE SCOPE OF THE

19  MARKET SHARE THAT IT ENJOYED, AND ITS MARKET POSITION RELATING

20  TO MATTEL AT VARIOUS POINTS; ALL OF WHICH, WE BELIEVE, WERE

21  FALSE AND WERE INTENDED TO INJURE THE BRATZ LINE.

22         AND NOW YOU'RE GOING TO ASK, 'WELL, WHAT RELEVANCE

23  DOES THAT HAVE TO POSSIBLY' --

24         THE COURT:  THAT'S NOT GOING TO BE MY QUESTION.  MY

25  QUESTION GOES BACK TO -- YOU REFER TO A SERIES OF STATEMENTS,

DECEMBER 3. 2007                    BRYANT V MATTEL

EXHIBIT __7__ PAGE _146_

17

1    AND I'M ASKING FOR ONE EXAMPLE OF ONE STATEMENT.

2            I SENSE, AND I'M GETTING AN APPRECIATION FOR, THE

3    FRUSTRATION THAT THE PLAINTIFF HAS IN ADDRESSING THIS

4    AFFIRMATIVE DEFENSE WITHOUT, AT THIS LATE DATE, HAVING

5    SPECIFICS.  FOR THE COURT TO BE ABLE TO DETERMINE WHETHER OR

6    NOT THIS IS LEGALLY A SUFFICIENT BASIS TO BRING THE UNCLEAN

7    HANDS DEFENSE, SPECIFICALLY IN THIS FIRST PHASE WHERE IT'S MORE

8    LIMITED AND THE NEXUS NEEDS TO BE MUCH MORE TIGHTER IN THE

9    CONTEXT OF THIS COPYRIGHT CLAIM FOR IT TO BE A COLORABLE

10   DEFENSE, IT WOULD BE EXTRAORDINARY HELPFUL TO KNOW EXACTLY WHAT

11   STATEMENTS WE'RE TALKING ABOUT.

12           **MR. NOLAN:**  I CAN APPRECIATE THAT, YOUR HONOR, AND I

13   APOLOGIZE FOR NOT BEING ABLE TO GIVE YOU THE DATE AND THE

14   SPECIFIC COMMENTS.  I CAN ONLY TALK ABOUT GENERALITIES.  BUT,

15   FRANKLY, THE POSITION THAT WE UNDERSTOOD --

16           **THE COURT:**  WHEN ARE WE GOING TO MOVE ON FROM THE

17   POINT WHERE WE CAN ONLY SPEAK ABOUT GENERALITIES?

18           **MR. NOLAN:**  YOUR HONOR, I THINK PART OF IT IS GOING

19   TO BE TRYING TO RESOLVE THE ISSUE OF THE INTERROGATORY RESPONSE

20   AND OUR COMING FORWARD AND GIVING EXAMPLES AS TO WHAT EVIDENCE

21   WE WILL BE RELYING ON, YOUR HONOR.

22           **THE COURT:**  BUT I TRUST YOU HAD THE EVIDENCE THAT

23   YOU'RE GOING TO RELY ON BEFORE YOU MADE THE DEFENSE.  YOU DON'T

24   MAKE THE DEFENSE AND THEN COME UP WITH THE EVIDENCE YOU'RE

25   GOING TO RELY ON.

18

1       MR. NOLAN:  OF COURSE, YOUR HONOR, AND I APOLOGIZE.

2   WE ARE IN THE CASE, WE'VE DONE AN AWFUL LOT OF WORK.  THE FACT

3   THAT I CAN'T GO FROM 'A' TO 'Z' ON SPECIFIC --

4       THE COURT:  I'M JUST ASKING FOR 'A,' COUNSEL; NOT 'A'

5   THROUGH 'Z.'

6       MR. NOLAN:  WELL, YOUR HONOR, I TALKED ABOUT THE

7   COMMENTS THAT WERE EMANATING FROM MATTEL IN THE MARKETPLACE

8   ABOUT MGA'S MISSTATEMENTS WITH RESPECT TO THE ORIGIN OF THE

9   BRATZ DOLL; FALSE STATEMENTS WITH RESPECT TO WHAT WE WERE DOING

10  IN CONNECTION WITH STEALING MATERIALS FROM MATTEL, TRADE

11  SECRETS; STATEMENTS WITH RESPECT TO -- OVER STATEMENTS BY MGA

12  WITH RESPECT TO THE SUCCESS IN THE MARKETPLACE; ALL OF WHICH

13  WAS DESIGNED TO CALL INTO QUESTION THE INTEGRITY OF THE BRATZ

14  MARKETING SCHEME.  NOT IN AN EFFORT, FRANKLY, TO COMPETE FAIRLY

15  WITH MGA, BUT, FRANKLY, TO PUT INTO THE MARKETPLACE, AND WITH

16  OTHER VENDORS, THE SUGGESTION THAT MGA WAS NOT PLAYING STRAIGHT

17  AND THAT VENDORS SHOULD NOT BE DEALING WITH MGA.

18       WE CAN LAY ALL OF THAT OUT.  IT WILL BE IN THE FORM

19  OF DISCOVERY.  WE HAVE PROVIDED A SUBSTANTIAL AMOUNT OF

20  INFORMATION ALREADY TO THEM IN TERMS OF RESPONDING TO

21  INTERROGATORIES, PRODUCTION OF DOCUMENTS, RFA'S.

22       THE COURT:  YOU COULD HAVE DONE THIS IN THE STATEMENT

23  OF GENUINE ISSUES IN RESPONSE TO THE MOTION FOR SUMMARY

24  JUDGMENT.  I LOOKED FOR THAT IN VAIN.  AN ALTERNATIVE MOTION

25  WAS BROUGHT SEEKING SUMMARY JUDGMENT ON THESE DEFENSES, AND I

DECEMBER 3. 2007                          BRYANT V MATTEL

                                 EXHIBIT __7__ PAGE _148_

39

1  HEARING, PARTICULARLY IN THE CONTEXT OF PHASE ONE, WHICH IS A

2  SLIGHTLY DIFFERENT STANDARD WITH RESPECT TO, AT LEAST, THE

3  UNCLEAN HANDS DEFENSE IN PHASE ONE.  BUT I'LL TAKE A LOOK AT

4  THAT, AND I'LL ISSUE SOMETHING IN WRITING SOON.

5         I DON'T WANT TO HOLD UP THE DISCOVERY PROCESS AT ALL,

6  SO LET'S GO AHEAD AND GET THIS INTERROGATORY SERVED.  LET'S

7  MEET AND CONFER ABOUT FURTHER INTERROGATORIES THAT MGA MIGHT

8  NEED, THAT CARTER BRYANT MIGHT NEED, WITH RESPECT TO THESE

9  AFFIRMATIVE DEFENSES, AND LET'S START SHOWING WHAT WE HAVE AND

10  MOVE THIS THING ALONG.  AS MR. NOLAN HAS REMINDED US ALL, WE

11  HAVE 57 DAYS UNTIL DISCOVERY ENDS.

12         THANK YOU, COUNSEL.

13

14

15

16

17

18                        CERTIFICATE

19

20  I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
21  THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
    ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
22  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.

23

24  _____      12-10-07
    THERESA A. LANZA, CSR, RPR            DATE
25  FEDERAL OFFICIAL COURT REPORTER

DECEMBER 3. 2007                         BRYANT V MATTEL

EXHIBIT __7__ PAGE __149__

**Exhibit 8**

May 13, 2005

**VIA FACSIMILE
AND U.S. MAIL**

Douglas A. Wickham, Esq.
Littler Mendelson
2049 Century Park East, 5th Floor
Los Angeles, California 90067

Bryant v. Mattel, Inc.

Dear Mr. Wickham:

I write in response to your April 26, 2005 letter to correct Bryant's mischaracterization that at the March 15, 2005 meeting of counsel Mattel agreed to produce witnesses to address "topic numbers from Mr. Bryant's Rule 30(b)(6) deposition notice 1, 2, 3, 4, 5, 6, 7, 8 (currently limited to "Bratz"), 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 49, 50, 51, 53, 54, 55 and 56."

First, you assert that we agreed to designate witnesses to testify to the above-referenced topics without the critical qualification that Mattel and Bryant agreed to significantly narrow the topics designated in Bryant's 30(b)(6) notice. The agreements are documented in the 250+ page transcript of our March 15, 2005 meeting. Mattel will, of course, designate witnesses to testify regarding those narrowed topics on which we reached agreement. For Topics 1 and 49-51, Mattel agreed to designate a witness to testify about the agreements that Bryant signed with Mattel, and Mattel and Bryant agreed that would include no discussion of interpretation of those agreements. For topics 2-6, 7, and 22-23, Mattel agreed to designate a witness to testify only about the factual basis for Bryant's contractual and non-contractual obligations to Mattel and Bryant's breach of those obligations, including identification of what was disclosed, converted or misappropriated. As to topics 9, 38-40 and 42-45, Mattel agreed to designate a witness to testify

EXHIBIT _____8_____ PAGE _____150_____

about Toon Teens, including the development, the decision not to commercialize, the current status of Toon Teens, and the origination and creation of documents bates-labeled M0012567-71, M0012572-78, M0012579-86 and M0012587. As to topics 13 and 24, Mattel agreed to designate a witness to testify about the factual basis for Mattel's contention, if any, that Bratz originated from or is substantially similar to a Mattel property or work created by Bryant while employed by Mattel. As to topic 14, Mattel agreed to designate a witness to testify about Mattel's damages. As to topics 15-20, Mattel agreed to designate a witness to testify about when Mattel learned (a) that Bryant was working for MGA while employed by Mattel, and (b) of Bryant's involvement in the creation of Bratz. For topics 27-36, 47 and 53, Mattel agreed to designate a witness to testify about Electronic Information Topics, including (a) Operation of Electronic Mail System (1998-2000), Zeus (1998-2000) and P-2 System/Data (1998-2000) and (b) the Retention Policy for e-mail servers from 1998 to present, the document management system (for Designers) (1998-present) and phone logs (1999-2000). As to topic 41, Mattel agreed to designate a witness to testify about Mattel's lack of knowledge of who made the statements (other than those made by Matt Bousquette) quoted in the 2003 Wall Street Journal article. For topics 54-56, Mattel agreed to designate a witness to testify about Bryant's exit interview and misrepresentations that he made in that interview, including documents bates-labeled M0011667-68 and M001654. The transcript makes it very clear that Bryant similarly agreed to all of the above limitations. If you intend to back pedal on these agreements, please let me know as soon as possible.

Second, Mattel did not agree to designate witnesses for several of the topics identified in your letter. For example, Mattel refused to produce a witness for topics 10-12, despite your assertion to the contrary. Mr. Zeller stated: "We've discussed 10, 11 and 12, although more explicitly 10, and it's our intention to move for protective order on these other kinds of products." March 15, 2005 Tr. at 249:10-13.

Finally, Mattel should clarify its position with respect to topic 46. Topics 42-46 all request that Mattel designate a witness to testify about the creation of a series of bates-numbered documents ranging from M0012567-12617 and M0001558-81. Topics 42-45 relate to Toon Teens drawings, which Mattel has agreed to designate a witness to discuss. Topic 46, however, relates to pleadings filed by MGA in two litigations filed in the High Court of Hong Kong, MGA v. Uni-Fortune Toys, et al. and MGA v. Toys & Trends Ltd., et al. When the parties were discussing these topics, they did not have the documents before them. Mattel's agreement to designate a witness to testify to certain Toon Teens drawings does not include an agreement to designate a witness to testify about documents created by MGA or counsel for MGA and filed on its behalf in MGA's Hong Kong litigations. Mattel does not have knowledge of the creation of those documents. Accordingly, Mattel does not agree to designate a witness to testify about the MGA documents referenced in topic 46.

EXHIBIT __8__ PAGE _151_

If you have any questions regarding the foregoing, please do not hesitate to call.

Best regards,


Jon D. Corey

07209/#654164v1<QuinnEmanuel> -Ltr to Wickham resp to 4.26 ltr re Mattel's 30b6

cc: Paula A. Ambrosini, Esq.

3

EXHIBIT ___8___ PAGE __152__

**Exhibit 9**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1              UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                  EASTERN DIVISION                    Certified Copy

4

5     -------------------------------

6     MATTEL, INC., a Delaware          )

7     Corporation,                      )

8              Plaintiff,               )

              vs.                       )  No. CV 04-9059

9     CARTER BRYANT, an individual;     )  NM (RNBx)

10    and DOES 1 through 10,            )

11    Inclusive,                        )

12              Defendants.             )

13    ------------------------------)

14    (COMPLETE CAPTION ON NEXT PAGE.)

15

16         CONFIDENTIAL - ATTORNEYS' EYES ONLY

17

18       Videotaped 30(b)(6) deposition of SANDY

19    YONEMOTO, taken at 400 South Hope Street,

20    Los Angeles, California, commencing at

21    10:19 A.M., Wednesday, May 30, 2007,

22    before Wendy S. Schreiber, CSR No. 3558,

23    RPR, CLR.

24

25    PAGES 1 - 188

                                                                    1

Confidential - Attorneys' Eyes Only

EXHIBIT ___9___ PAGE ___153___

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1            UNITED STATES DISTRICT COURT

 2            CENTRAL DISTRICT OF CALIFORNIA

 3                 EASTERN DIVISION

 4     ------------------------------

 5     MATTEL, INC., a Delaware        )

 6     Corporation,                    )

 7               Plaintiff,            )

 8               vs.                   )  No. CV 04-9059

 9     CARTER BRYANT, an individual;   )     NM (RNBx)

10     and DOES 1 through 10,          )

11     Inclusive,                      )

12               Defendants.           )

13     ------------------------------  )

14     CARTER BRYANT, on behalf of     )

15     himself, all present and        )

16     former employees of Mattel,     )

17     Inc., and the general public,   )

18               Counter-Claimants,    )

19               vs.                   )

20     MATTEL, INC., a Delaware        )

21     Corporation,                    )

22               Counter-Defendant.    )

23     ------------------------------

24

25
```

Veritext National Deposition & Litigation Services
213 623-5005

EXHIBIT ___9___ PAGE _154_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES OF COUNSEL:

 2

 3

 4        FOR THE PLAINTIFF:

 5

 6            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

 7            BY:  MICHAEL ZELLER, ESQ.

 8            865 South Figueroa Street, Tenth Floor

 9            Los Angeles, California 90017

10            (213) 443-3000

11            mzeller@quinnemanuel.com

12

13                        -AND-

14

15            MATTEL, INC.

16            BY:  MICHAEL MOORE, ESQ.

17            333 Continental Boulevard

18            El Segundo, California 90245-5012

19            (310) 252-2000

20            michael.moore@mattel.com

21

22

23

24

25
```

3

EXHIBIT ___9___ PAGE __155__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES OF COUNSEL (CONTINUED):

 2

 3        FOR THE DEFENDANT AND COUNTERCLAIMANT

 4        CARTER BRYANT:

 5

 6            KEKER & VAN NEST LLP

 7            BY:  CHRISTA MARTINE ANDERSON, ESQ.

 8            710 Sansome Street

 9            San Francisco, Califonria 94111-1704

10            (415) 391-5400

11            Canderson@kvn.com

12

13

14        FOR DEFENDANT MGA ENTERTAINMENT, INC.:

15

16            O'MELVENY & MYERS LLP

17            BY:  JAMES JENAL, ESQ.

18            400 South Hope Street

19            Los Angeles, California 90071-2899

20            (213) 430-6000

21            jjenal@omm.com

22

23    ALSO PRESENT:

24

25            RYAN GULINO, VIDEO OPERATOR

                                                  4
```

EXHIBIT ___9___ PAGE __156__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        Q.    During what period of time did Mattel use

2    this form of agreement to onboard employees?

3             MR. ZELLER:  Just so I'm clear, I haven't

4    been objecting to this being outside the scope of

5    the designation since I assume you're looking to        11:03AM

6    find out what her areas of knowledge are but so it's

7    clear, the onboarding procedures as she talks about

8    is not within the scope of her designation, but you

9    can go ahead.

10            THE WITNESS:  Okay.  Beyond the fact that       11:03AM

11   this form has been dated by Mr. Bryant in '99 I can

12   speak to the fact that it was used in '99, but I

13   don't have full knowledge as to exactly when this

14   form was in use.

15            MS. ANDERSON:  You know, I don't want to        11:03AM

16   get into a long colloquy on the record but I do

17   think this relates to the subject matters we're

18   talking about and I'm trying to figure out what her

19   scope of knowledge is.  I know you have an objection

20   and you've stated it and I just want you to know      11:03AM

21   that I'm being silent to try to move it along, not

22   because I sort of acquiesce in your position.

23            MR. ZELLER:  Well, I don't want to get into

24   a colloquy but just two quick points.

25            No. 1, we had extensive discussions, and I    11:03AM

                                                              36

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   know this was before you were involved, with Carter

2   Bryant's counsel about the scope of these topics and

3   everything else because they're phrased in legal

4   conclusionary terms and so we had extensive

5   discussions and negotiations about what the meaning        11:04AM

6   of those topics were.

7        No. 2, we have said that Sandy is here to

8   talk about the exit interview.  I mean, that's what

9   she participated in with respect to Mr. Bryant.

10  You're, again, free to explore any areas you want        11:04AM

11  but just so it's clear, we have designated her

12  because she has information about issues that are

13  part and parcel of those topics as they were

14  negotiated and narrowed and understood through that

15  process.                                                 11:04AM

16       MS. ANDERSON:  Sure, and I understand there

17  may come a day when we have to fight about it but I

18  just want you to know I understand you're putting

19  your objections on the record.  I'm still going to

20  ask the questions.                                       11:04AM

21       MR. ZELLER:  Sure.

22       MS. ANDERSON:  I'm not going to argue back

23  to you for the rest of the deposition about scope.

24  It's something we can argue about later.

25       MR. ZELLER:  I understand.                          11:04AM

                                                                 37

EXHIBIT ___9___ PAGE _158_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   BY MS. ANDERSON:

2      Q.   So talking about Mattel and the use of the

3   form that's in Exhibit 25, do you have knowledge

4   based on your long experience in the HR department

5   about what period of time did Mattel use the form      11:05AM

6   that's reflected in Exhibit 25?

7          MR. ZELLER:  Asked and answered.

8          THE WITNESS:  As I stated previously, I can

9   speak to the fact that the form was used in 1999

10  because Mr. Bryant did date it, but I don't have the   11:05AM

11  knowledge of the time frame from beginning to end of

12  when it was used.

13  BY MS. ANDERSON:

14     Q.   Can you give me any reasonable estimation of

15  the time period during which the form that's          11:05AM

16  reflected in Exhibit 25 was used by Mattel?

17         MR. ZELLER:  Asked and answered.

18         THE WITNESS:  No, I cannot.

19  BY MS. ANDERSON:

20     Q.   Do you have any recollection as you sit here  11:05AM

21  today about when, if ever, Mattel stopped using

22  Exhibit 25's format and moved on to a different

23  format for Confidential Information and Inventions

24  Agreements?

25     A.   Can you restate that question?               11:05AM

                                                          38

EXHIBIT ___9___ PAGE __159__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   STATE OF CALIFORNIA    ) ss:
 2   COUNTY OF LOS ANGELES  )
 3
 4        I, WENDY S. SCHREIBER, CSR No. 3558, do
 5   hereby certify:
 6
 7        That the foregoing deposition of SANDY
 8   YONEMOTO was taken before me at the time and place
 9   therein set forth, at which time the witness was
10   placed under oath and was sworn by me to tell the
11   truth, the whole truth, and nothing but the truth;
12        That the testimony of the witness and all
13   objections made by counsel at the time of the
14   examination were recorded stenographically by me,
15   and were thereafter transcribed under my direction
16   and supervision, and that the foregoing pages
17   contain a full, true and accurate record of all
18   proceedings and testimony to the best of my skill
19   and ability.
20        I further certify that I am neither
21   counsel for any party in said action, nor am I
22   related to any party to said action, nor am I in any
23   way interested in the outcome thereof.
24
25
```

184

EXHIBIT __9__ PAGE __160__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        IN WITNESS WHEREOF, I have subscribed my

2   name this 7th day of June, 2007.

3

4

5

6   _____

7   WENDY S. SCHREIBER, CSR No. 3558, RPR

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

185

EXHIBIT ____9____ PAGE _161_

Exhibit 10

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT

 2             CENTRAL DISTRICT OF CALIFORNIA

 3                   EASTERN DIVISION

 4                                          CORRECTED COPY

 5        -------------------------------

 6     MATTEL, INC., a Delaware          )

 7     Corporation,                      )

 8               Plaintiff,              )

 9               vs.                     ) No. CV 04-9059

10     CARTER BRYANT, an individual;     ) NM (RNBx)

11     and DOES 1 through 10,            )

12     Inclusive,                        )

13               Defendants.             )

14        ------------------------------ )

15     (COMPLETE CAPTION ON NEXT PAGE.)

16

17         CONFIDENTIAL - ATTORNEYS' EYES ONLY

18

19      Videotaped 30(b)(6) Deposition of KISLAP

20     ONGCHANGCO, taken at 400 South Hope Street,

21     Los Angeles, California, commencing at

22     9:45 A.M., Tuesday, April 24, 2007, before

23     Wendy S. Schreiber, CSR No. 3558, RPR, CLR.

24

25     PAGES 1 - 282
```

Veritext National Deposition & Litigation Services
866 299-5127

EXHIBIT __10__ PAGE __162__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3                    EASTERN DIVISION

 4

 5     -----------------------------

 6     MATTEL, INC., a Delaware          )

 7     Corporation,                      )

 8               Plaintiff,              )

 9               vs.                     ) No. CV 04-9059

10     CARTER BRYANT, an individual;     )    NM (RNBx)

11     And DOES 1 through 10,            )

12     Inclusive,                        )

13               Defendants.            )

14     ----------------------------- )

15     CARTER BRYANT, on behalf of       )

16     himself, all present and          )

17     former employees of Mattel,       )

18     Inc., and the general public,     )

19               Counter-Claimant,       )

20               vs.                     )

21     MATTEL, INC., a Delaware          )

22     Corporation,                      )

23               Counter-Defendant. )

24     -----------------------------

25
```

EXHIBIT _10_ PAGE _163_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES OF COUNSEL:

 2

 3        FOR THE PLAINTIFF:

 4

 5            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

 6            BY:  MICHAEL T. ZELLER, ESQ.

 7            865 South Figueroa Street, Tenth Floor

 8            Los Angeles, California 90017

 9            (213) 443-3000

10            michaelzeller@quinnemanuel.com

11

12

13        FOR THE DEFENDANT AND COUNTER-CLAIMANT

14        CARTER BRYANT:

15

16            LITTLER MENDELSON

17            BY:  KEITH JACOBY, ESQ.

18            2049 Century Park East

19            Fifth Floor

20            Los Angeles, California 90067-3107

21            (310) 553-0308

22

23                 - AND -

24

25
```

3

EXHIBIT ___10___ PAGE __164__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES OF COUNSEL (CONTINUED):

 2

 3

 4         KEKER & VAN NEST LLP

 5         BY:  MICHAEL H. PAGE, ESQ.

 6         710 Sansome Street

 7         San Francisco, California 94111-1704

 8         (415) 391-5400

 9         Mhp@kvn.com

10

11

12    FOR DEFENDANT MGA ENTERTAINMENT, INC.:

13

14         O'MELVENY & MYERS LLP

15         BY:  DIANA M. TORRES, ESQ.

16         400 South Hope Street

17         Los Angeles, California 90071-2899

18         (213) 430-6000

19         dtorres@omm.com

20         jjenal@omm.com

21

22    ALSO PRESENT:

23

24         DAVID WEST, VIDEO OPERATOR

25

                                                      4
```

EXHIBIT _10_ PAGE _165_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        MR. ZELLER:  First of all, lacks foundation.

2   It's overbroad.

3        THE WITNESS:  Yeah, I wouldn't no.

4   BY MS. TORRES:

5        Q.  You don't know?                          02:28PM

6        A.  I wouldn't know.

7        Q.  Are you familiar with the character art on

8   the Bratz packaging?

9        A.  No.  I might have seen it but I don't know

10  it.                                              02:28PM

11       Q.  The Bratz doll that you recall seeing at

12  Mattel, is it only one doll or have you seen many?

13       A.  I don't recall.  It might have been one or

14  two but I don't remember.

15       Q.  Do you recall whether it was in packaging?  02:28PM

16       A.  Yes, it was in packaging.

17       Q.  Have you ever seen a Bratz doll outside of

18  the packaging?

19       A.  No, actually, I have not.

20       VIDEO OPERATOR:  Let's go off the record at  02:28PM

21  2:29.

22               (Brief recess.)

23       VIDEO OPERATOR:  The time is 2:45 p.m.  We

24  are back on the record.  This is tape No. 3 of the

25  deposition of Kislap Ongchangco.  All parties may   02:45PM

                                                    158

EXHIBIT ____10____ PAGE __166__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    continue.

2            MR. ZELLER:   I believe I have MGA's

3    counsel's approval here to try and put something on

4    the record and try to get I think something

5    clarified because we seem to have perhaps gone awry    02:45PM

6    at some point on this.

7            The witness is designated here on a number

8    of topics that have been identified.  Of course,

9    he's not here to testify as to how those fit in or

10   how they relate to the legal contentions.  He's here   02:45PM

11   really to testify about two areas of his knowledge

12   based upon his work in connection with the Diva

13   Starz project and mostly in particular with the Mini

14   Diva Starz project, one of which was the use of

15   Brats, B-r-a-t-s, within Mattel in connection with    02:46PM

16   that project and the other one is that he does have

17   some additional knowledge about at least one of the

18   Linker drawings but he really is here on a pretty

19   narrow scope of facts that he is aware of.  Again,

20   you are free to ask him any questions now that he is    02:46PM

21   here but he is here to talk about those particular

22   factual issues.  You know, of course, how they

23   relate into what MGA and Bryant and everyone else

24   has done, I mean, that's not in his bailiwick and

25   that's not why he is here, but he can talk about the    02:46PM

                                                       159

EXHIBIT __10__ PAGE _167_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    things that were done internally that he saw when he
 2    was there at Mattel on those particular subjects we
 3    just identified.
 4         MS. TORRES:  I was going to say because that
 5    reopens it up.                                    02:46PM
 6         MR. ZELLER:  I was not doing that.
 7    BY MS. TORRES:
 8    Q.   Mr. Ongchangco, you heard Mr. Zeller's
 9    representation on the record?
10    A.   Yes.                                         02:47PM
11    Q.   Is that your understanding of your -- of the
12    scope of your testimony as a 30(b)(6) witness for
13    Mattel?
14    A.   Yes.
15    Q.   Mr. Zeller mentioned one of the -- one of   02:47PM
16    the Linker drawings and said that you had some
17    additional knowledge about one of those drawings.
18    A.   Yes.
19    Q.   What Linker drawing do you have knowledge
20    of?                                              02:47PM
21    A.   It was this one.  The one I recognized
22    earlier it's No. 311, the second page, and it's the
23    color version that we had talked about earlier above
24    the word "Joy."  So I'm familiar with that and I saw
25    that in Rene's cube on her wall.                 02:48PM
                                                       160
```

EXHIBIT ⁓10  PAGE 168

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1       Q.    When you say "Rene," who do you mean?
 2       A.    Oh, I'm sorry, Rene Pasko.
 3       Q.    When did you see it on her wall?
 4       A.    I believe it was around 2000.  I'm not sure
 5    exactly.  Beginning 2000.                        02:48PM
 6       Q.    There's a word "Joy" underneath that image.
 7       A.    Yes.
 8       Q.    Do you know what that word reflects?  Is
 9    that supposed to be the character's name?
10       A.    That I do not know.                      02:48PM
11       Q.    Did you ever talk to Ms. Pasko about that
12    image?
13       A.    I never did.
14       Q.    Did you ever talk to anybody about that
15    image?                                           02:48PM
16       A.    No.  I think I did tell her that it looks
17    great, it looks cool at that point when I saw it but
18    that was about it.  I didn't ask her anything
19    further.
20       Q.    Did she tell you anything about that image? 02:49PM
21       A.    No.
22       Q.    When you said that was cool, were you
23    already in a conversation with her?
24       A.    Yeah, we were talking about the Diva Starz,
25    but not that particular drawing.                 02:49PM
                                                          161
```

EXHIBIT __10__ PAGE _169_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    STATE OF CALIFORNIA    ) ss:

 2    COUNTY OF LOS ANGELES )

 3

 4           I, WENDY S. SCHREIBER, CSR No. 3558, do

 5    hereby certify:

 6

 7           That the foregoing deposition of KISLAP

 8    ONGCHANGCO was taken before me at the time and place

 9    therein set forth, at which time the witness was

10    placed under oath and was sworn by me to tell the

11    truth, the whole truth, and nothing but the truth;

12           That the testimony of the witness and all

13    objections made by counsel at the time of the

14    examination were recorded stenographically by me,

15    and were thereafter transcribed under my direction

16    and supervision, and that the foregoing pages

17    contain a full, true and accurate record of all

18    proceedings and testimony to the best of my skill

19    and ability.

20           I further certify that I am neither

21    counsel for any party in said action, nor am I

22    related to any party to said action, nor am I in any

23    way interested in the outcome thereof.

24

25
                                                            279
```

EXHIBIT _____10_____ PAGE _____170

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      IN WITNESS WHEREOF, I have subscribed my

2  name this 8th day of May, 2007.

3

4

5

6  _____

7  WENDY S. SCHREIBER, CSR No. 3558, RPR

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

280

EXHIBIT _____10_____ PAGE _171_

**Exhibit 11**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3             EASTERN DIVISION                    Certified Copy

4

5    --------------------------------

6    MATTEL, INC., a Delaware        )

7    Corporation,                    )

8                 Plaintiff,         )

9               vs.                  ) No. CV 04-9059

10   CARTER BRYANT, an individual;   ) NM (RNBx)

11   and DOES 1 through 10,          ) VOLUME I

12   Inclusive,                      )

13                Defendants.        )

14   ---------------------------- )

15   (COMPLETE CAPTION ON NEXT PAGE.)

16

17     CONFIDENTIAL - ATTORNEYS' EYES ONLY

18

19     Videotaped 30(b)(6) Deposition of

20     ROBERT K. HUDNUT, JR., taken at

21     400 South Hope Street, Los Angeles,

22     California, commencing at 9:35 A.M.,

23     Friday, July 13, 2007, before Wendy S.

24     Schreiber, CSR No. 3558, RPR, CLR.

25   PAGES 1 - 238
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT

 2             CENTRAL DISTRICT OF CALIFORNIA

 3                   EASTERN DIVISION

 4

 5       -------------------------------

 6       MATTEL, INC., a Delaware        )

 7       Corporation,                    )

 8                    Plaintiff,         )

 9                    vs.                ) No. CV 04-9059

10       CARTER BRYANT, an individual;   )     NM (RNBx)

11       and DOES 1 through 10,          )

12       Inclusive,                      )

13                    Defendants.        )

14       -------------------------------  )

15       CARTER BRYANT, on behalf of     )

16       himself, all present and        )

17       former employees of Mattel,     )

18       Inc., and the general public,   )

19                    Counter-Claimants, )

20                    vs.                )

21       MATTEL, INC., a Delaware        )

22       Corporation,                    )

23                    Counter-Defendant. )

24       -------------------------------

25
                                                    2
```

EXHIBIT ___11___ PAGE _173_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES OF COUNSEL:

 2

 3

 4        FOR THE PLAINTIFF:

 5

 6            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

 7            BY:  DIANE C. HUTNYAN, ATTORNEY AT LAW

 8            865 South Figueroa Street, Tenth Floor

 9            Los Angeles, California 90017

10            (213) 443-3000

11            dianehutnyan@quinnemanuel.com

12

13                    -AND-

14

15            MATTEL, INC.

16            BY:  MICHAEL MOORE, ESQ.

17            333 Continental Boulevard

18            El Segundo, California 90245-5012

19            (310) 252-2000

20            michael.moore@mattel.com

21

22

23

24

25
```

3

EXHIBIT __11__ PAGE __174__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES OF COUNSEL (CONTINUED):

 2

 3        FOR THE DEFENDANT AND COUNTERCLAIMANT

 4        CARTER BRYANT:

 5

 6            KEKER & VAN NEST LLP

 7            BY:  MICHAEL H. PAGE, ESQ.

 8            710 Sansome Street

 9            San Francisco, California 94111-1704

10            (415) 391-5400

11            mhp@kvn.com

12

13

14        FOR DEFENDANT MGA ENTERTAINMENT, INC.:

15

16            O'MELVENY & MYERS LLP

17            BY:  JAMES PAUL JENAL, ESQ.

18            400 South Hope Street

19            Los Angeles, California 90071-2899

20            (213) 430-6000

21            jjenal@omm.com

22

23    ALSO PRESENT:

24

25            DAVID WEST, VIDEO OPERATOR

                                              4
```

EXHIBIT __11__ PAGE _175_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        MS. HUTNYAN:  I think I was extraordinarily

2   clear.  If you'd like to read back on your screen,

3   maybe review it, then you can answer my question.  I

4   just want to know if you are going to take the

5   position that responses as to what he did within his    11:45AM

6   preparation for his deposition won't constitute a

7   waiver of any kind.  I just want that reassurance

8   that it doesn't.  My understanding is that in

9   countless depositions before this you've agreed to

10  that so I'm not really sure why you're giving me a     11:45AM

11  hard time.  It seems like a no brainer.

12       MR. JENAL:  The question has never come up,

13  Counsel, so --

14       MS. HUTNYAN:  I've read it in deposition

15  transcripts.  Maybe you need to read up.            11:45AM

16       MR. JENAL:  I think I've read more

17  transcripts in this case than you have.  It hasn't

18  come up in my experience.  Let's just go and ask a

19  question.

20       MS. HUTNYAN:  Anything that relates to your   11:46AM

21  deposition preparation we need to find that out

22  before we answer questions related to it.

23       THE WITNESS:  Okay.

24  BY MR. JENAL:

25   Q.   So I was asking if you could turn to page 4  11:46AM

91

EXHIBIT ___11___ PAGE ___176___

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   of Exhibit 385.  Do you see that?

2      A.   Yes.

3      Q.   And is it your understanding that you've

4   been designated today to testify on behalf of Mattel

5   as to some of the topics in this deposition notice?   11:46AM

6      A.   That's correct.

7      Q.   And my understanding as to the topics that

8   you've been designated on is as follows:  It's

9   topics 2 through 8 that appear here on page 4, topic

10   11 which appears on the next page, topic 13 also on   11:46AM

11   that page and topic 24 which is on page 6 of Exhibit

12   385.  Is that your understanding as well, sir?

13           MS. HUTNYAN:  No, there's -- that's not what

14   he's been designated on.  He said 2 through 8, 11,

15   what and 24?                                           11:47AM

16           MR. JENAL:  11, 13 and 24.

17           MS. HAULER:  No, my understanding is 2

18   through 7 and 11.

19           MS. HUTNYAN:  Portions of those.

20           MR. JENAL:  Your understanding is what,       11:47AM

21   Bridget?

22           MS. HAULER:  Two through 7 and 11.

23           MS. HUTNYAN:  And the portions of those that

24   specifically relate to the scripts that he's worked

25   on within those categories.                           11:47AM

92

EXHIBIT ___11___ PAGE _177_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1          MR. JENAL:  And the basis for -- let's take
 2   those in two steps, all right, because the notes
 3   that I have from the meet and confer with Judge
 4   Infante included 2 through 8, 11, 13 and 24.
 5          MS. HAULER:  I can double-check but mine was  11:47AM
 6   I had 2 through 7 from the same so I'll
 7   double-check.  I'll have someone check it and E-mail
 8   us back, but that was not mine.
 9          MR. JENAL:  That's fine, Bridget.  Let's --
10          MR. PAGE:  Let's just look at it at a break.  11:48AM
11          MR. JENAL:  Yeah, we'll resolve that part of
12   the question on a break.
13      Q.   You understand then at least you agree as to
14   2 through 7 and 11; is that correct?
15          MS. HUTNYAN:  With the qualification that I    11:48AM
16   mentioned.
17          MR. JENAL:  Right, and we'll get to that in
18   just a second.
19      Q.   That's -- your understanding is that's the
20   designation?                                         11:48AM
21      A.   That is my understanding.
22          MR. JENAL:  Okay.  And then the second part
23   of this was a limitation as to what, Counsel?
24          MS. HUTNYAN:  It's only the portions of
25   those topics that deal with his knowledge as to the  11:48AM
                                                          93
```

EXHIBIT __11__ PAGE __178__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   scripts that might be pertinent to those topics.  So

2   it's not those entire topics.

3          MR. JENAL:  And is there some communication

4   that establishes that restriction?

5          MS. HAULER:  Yes, the same as it's been the   11:48AM

6   same for every Diva Starz person that's been

7   deposed.

8          MR. JENAL:  Sorry --

9          MS. HAULER:  I couldn't tell you off the top

10  of my head exactly where that comes from but if you   11:48AM

11  look at the transcript for RenT Pasko, Kislap, Joni

12  Pratte, it's been the same practice for every single

13  one of those witnesses.

14         MR. JENAL:  Okay.  Just so I'm clear and the

15  record is clear that practice being what?  I'm just   11:48AM

16  not sure what you meant by that.

17         MS. HAULER:  That it's basically his

18  personal knowledge regarding his work on Diva Starz.

19  BY MR. JENAL:

20     Q.   Okay.  Is that your understanding as well,   11:49AM

21  sir, that you're here today to testify as to your

22  personal knowledge with regards to these topics as

23  they pertain to Diva Starz?

24     A.   Yes.

25     Q.   Just so that the record is clear.  So let me 11:49AM

                                                          94

EXHIBIT __11__ PAGE __179__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   ask you this.  If you would turn to page 4, topic 2,

2   which is all contractual and non-contractual duties

3   and obligations Bryant owned or performed for Mattel

4   during his employment with Mattel and thereafter, do

5   you see that?                                    11:49AM

6       A.   Yes, I did.

7       Q.   What did you do to prepare today to testify

8   on behalf of Mattel as to that topic?

9       A.   Is that an okay question?

10          MR. PAGE:  If it isn't, she'll tell you.   11:49AM

11          MS. HUTNYAN:  Do you agree that questions as

12   to his preparation for his 30(b)(6) designation

13   testimony is not -- I'm sorry, that his responses do

14   not constitute a waiver of some kind?

15          MR. JENAL:  Well, insofar as that question   11:50AM

16   doesn't implicate any attorney-client privilege I

17   don't know how it could be a waiver of anything.

18   I'm asking what he did to prepare to testify on

19   behalf of the corporation for which he's been

20   designated.                                      11:50AM

21          MS. HUTNYAN:  Okay, so you agree that it's

22   not a waiver.  That was easy.  Okay, it's not a

23   waiver.  Can you just repeat the question for me?

24          (The pending question was read as follows:

25              "Q.   What did you do to prepare       11:49AM

                                                        95

EXHIBIT ___11___ PAGE ___180___

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   STATE OF CALIFORNIA     ) ss:
 2   COUNTY OF LOS ANGELES )
 3
 4          I, WENDY S. SCHREIBER, CSR No. 3558, do
 5   hereby certify:
 6
 7          That the foregoing deposition of ROBERT K.
 8   HUDNUT, JR. was taken before me at the time and
 9   place therein set forth, at which time the witness
10   was placed under oath and was sworn by me to tell
11   the truth, the whole truth, and nothing but the
12   truth;
13          That the testimony of the witness and all
14   objections made by counsel at the time of the
15   examination were recorded stenographically by me,
16   and were thereafter transcribed under my direction
17   and supervision, and that the foregoing pages
18   contain a full, true and accurate record of all
19   proceedings and testimony to the best of my skill
20   and ability.
21          I further certify that I am neither
22   counsel for any party in said action, nor am I
23   related to any party to said action, nor am I in any
24   way interested in the outcome thereof.
25
```

235

EXHIBIT ___11___ PAGE __181__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1          IN WITNESS WHEREOF, I have subscribed my

2     name this 20th day of July, 2007.

3

4

5

6     _____

7     WENDY S. SCHREIBER, CSR No. 3558, RPR

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

236

EXHIBIT ____11____ PAGE ___182__