**Exhibit 12**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA

3         EASTERN DIVISION

**Certified Copy**

4

5  -------------------------------

6  MATTEL, INC., a Delaware     )

7  Corporation,              )

8           Plaintiff,     )

9          vs.          ) No. CV 04-9059

10  CARTER BRYANT, an individual; )  NM (RNBx)

11  and DOES 1 through 10,

12  Inclusive,

13          Defendants.    )

14  ---------------------------- )

15  (COMPLETE CAPTION ON NEXT PAGE.)

16

17     CONFIDENTIAL - ATTORNEYS' EYES ONLY

18

19     Videotaped 30(b)(6) Deposition of

20  JOHN PRATTE, taken at 400 South Hope

21  Street, Los Angeles, California,

22  commencing at 10:06 A.M., Friday,

23  June 1, 2007, before Wendy S.

24  Schreiber, CSR No. 3558, RPR, CLR.

25  PAGES 1 - 230

1

EXHIBIT __12__ PAGE _183_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT

 2            CENTRAL DISTRICT OF CALIFORNIA

 3                   EASTERN DIVISION

 4

 5     ------------------------------

 6   MATTEL, INC., a Delaware          )

 7   Corporation,                      )

 8               Plaintiff,            )

 9               vs.                   ) No. CV 04-9059

10   CARTER BRYANT, an individual;     )    NM (RNBx)

11   and DOES 1 through 10,            )

12   Inclusive,                        )

13               Defendants.          )

14     ------------------------------ )

15   CARTER BRYANT, on behalf of       )

16   himself, all present and          )

17   former employees of Mattel,       )

18   Inc., and the general public,     )

19               Counter-Claimants,   )

20               vs.                   )

21   MATTEL, INC., a Delaware          )

22   Corporation,                      )

23               Counter-Defendant.   )

24     ------------------------------

25
```

EXHIBIT _12_ PAGE _184_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   APPEARANCES OF COUNSEL:

 2

 3       FOR THE PLAINTIFF:

 4

 5           QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

 6           BY:  MICHAEL ZELLER, ESQ.

 7           865 South Figueroa Street, Tenth Floor

 8           Los Angeles, California 90017

 9           (213) 443-3000

10           mzeller@quinnemanuel.com

11

12                        -AND-

13

14           MATTEL, INC.

15           BY:  MICHAEL MOORE, ESQ.

16           333 Continental Boulevard

17           El Segundo, California 90245-5012

18           (310) 252-2000

19           michael.moore@mattel.com

20

21

22

23

24

25
```

3

EXHIBIT __12__ PAGE __185__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES (CONTINUED):

 2

 3       FOR THE DEFENDANT AND COUNTERCLAIMANT

 4       CARTER BRYANT:

 5

 6           KEKER & VAN NEST LLP

 7           BY:  MICHAEL PAGE, ESQ.

 8           710 Sansome Street

 9           San Francisco, California 94111-1704

10           (415) 391-5400

11           mpage@kvn.com

12

13       FOR DEFENDANT MGA ENTERTAINMENT, INC.:

14

15           O'MELVENY & MYERS LLP

16           BY:  JAMES JENAL, ESQ.

17           400 South Hope Street

18           Los Angeles, California 90071-2899

19           (213) 430-6000

20           jjenal@omm.com

21

22       ALSO PRESENT:

23

24           RYAN GULINO, VIDEO OPERATOR

25
                                                    4
```

EXHIBIT _12_ PAGE _186_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   in mind.

 2           One, although in conversation you often can

 3   tell where a question is going and simply jump in

 4   and answer it, the reporter needs to take down my

 5   questions and your answers so we both have to try to   10:09AM

 6   be unnatural in waiting for the other to finish and

 7   pausing and then answering.  We'll both try to do

 8   that.

 9           More importantly, if at any time my

10   questions don't make sense to you or seem ambiguous,   10:09AM

11   please tell me.  If you guess at what I mean and

12   answer, someone reading the transcript may have a

13   different guess at what I meant and therefore change

14   your answer.  Feel free to at any time ask me to

15   rephrase.                                              10:09AM

16       A.   Okay.

17       Q.   Any time you want to take a break, just let

18   me know.

19       A.   Excellent.  Thank you.

20       Q.   Do you understand that you're here to        10:09AM

21   testify in certain categories on behalf of Mattel?

22       A.   Yes, I do.

23            (Exhibit 385 previously marked.)

24   BY MR. PAGE:

25       Q.   Let me show you what's been marked as        10:09AM
                                                                 7
```

EXHIBIT ___12___ PAGE ___187___

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    Exhibit 385.  Have you seen this document before?

 2        A.   No, I do not believe I have.

 3        Q.   If you could turn to --

 4        A.   I apologize.  I have seen this the first

 5    time that I met with counsel.                        10:10AM

 6        Q.   If you could turn to page 4 of this

 7    document.  Is it your understanding that -- let me

 8    strike that.

 9            My understanding is that you are here to

10    testify in categories 1 through 8, 13 and 24.  Is    10:10AM

11    that also your understanding?

12            MR. ZELLER:  Sorry, 13 and 24.

13            MR. PAGE:  Did I say 1 through 8?  I meant

14    to say 2 through 8, 13 and 24.

15            THE WITNESS:  Yes.                            10:11AM

16            MR. PAGE:  Mr. Zeller, is it -- we had

17    discussed this earlier.  My understanding is that

18    she's going to be testifying just as to her own

19    knowledge as opposed to information provided to her

20    from other Mattel employees.  Is that correct?       10:11AM

21            MR. ZELLER:  Right.  I mean, she's here to

22    testify so, of course, she'll testify about

23    documents and that sort of thing but, right, she is

24    not someone we have educated on topics that she does

25    not otherwise have knowledge of.                     10:11AM
                                                              8
```

EXHIBIT _12_ PAGE _188_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1           MR. PAGE:  Excellent.  Once I exhaust her

2    personal knowledge I'm done?

3           MR. ZELLER:  I believe that's correct.

4           MR. PAGE:  Her personal knowledge on the

5    relevant topics.                                10:11AM

6           MR. ZELLER:  Yes.

7    BY MR. PAGE:

8        Q.   Who do you work for?

9        A.   Mattel, Inc.

10       Q.   When did you -- when did you start working    10:11AM

11   for Mattel?

12       A.   I started in October of 1998 as a temporary

13   employee.

14       Q.   And in October of 1998 what was your job?

15       A.   I was a package designer on the customized    10:12AM

16   Barbie line.

17       Q.   What is the customized Barbie line?

18       A.   Customized Packaging would do packaging for

19   dolls specifically for certain consumers -- Toys "R"

20   Us, Target, United States of America, Air Force --    10:12AM

21   that kind of.

22       Q.   I see.  So when you say "customized," it's

23   customized for a particular customer?

24       A.   Correct.

25       Q.   Now, what sort of customization did Mattel    10:12AM

                                                             9

EXHIBIT ___12___ PAGE ___189___

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   do for particular customers in 1998?

 2       A.   One of the products that I worked on was a

 3   doll that was done for the military installations

 4   and it was a Barbie that came with postcards and I

 5   did the packaging, you know, to be, you know, very      10:12AM

 6   girl-friendly but all about mailing postcards from

 7   around the world.

 8       Q.   I see.  What sort of customizations did

 9   Mattel do for, say, a Target or Toys "R" Us?

10       A.   They would -- in Packaging we would           10:13AM

11   create -- there'd be a doll that was created for the

12   customer which I didn't create the dolls; I only

13   created packaging, and we would design it to, say,

14   Target specifications and it would be exclusively

15   for Target.  It would be their logo.                    10:13AM

16       Q.   I see.  So the dolls themselves would be

17   custom for the consumer, not just the packaging; is

18   that correct?

19       A.   To my knowledge, yes, but I know that it

20   wasn't always that way.                                 10:13AM

21       Q.   When you say it wasn't always that way, do

22   you mean that before you were doing it it was

23   different or after you were doing it it was

24   different?

25       A.   I don't have -- I don't have complete         10:13AM
                                                                 10
```

EXHIBIT _/2_ PAGE _/90_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    STATE OF CALIFORNIA    ) ss:
 2    COUNTY OF LOS ANGELES )
 3
 4          I, WENDY S. SCHREIBER, CSR No. 3558, do
 5    hereby certify:
 6
 7          That the foregoing deposition of JONI
 8    PRATTE was taken before me at the time and place
 9    therein set forth, at which time the witness was
10    placed under oath and was sworn by me to tell the
11    truth, the whole truth, and nothing but the truth;
12          That the testimony of the witness and all
13    objections made by counsel at the time of the
14    examination were recorded stenographically by me,
15    and were thereafter transcribed under my direction
16    and supervision, and that the foregoing pages
17    contain a full, true and accurate record of all
18    proceedings and testimony to the best of my skill
19    and ability.
20          I further certify that I am neither
21    counsel for any party in said action, nor am I
22    related to any party to said action, nor am I in any
23    way interested in the outcome thereof.
24
25
```

225

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        IN WITNESS WHEREOF, I have subscribed my

2   name this 7th day of June, 2007

3

4

5

6    _____

7    WENDY S. SCHREIBER, CSR No. 3558, RPR

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

226

EXHIBIT  12   PAGE 192

**Exhibit 13**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3    EASTERN DIVISION

**Certified Copy**

4    -------------------------------

5    MATTEL, INC., a Delaware   )

6    Corporation,          )

7          Plaintiff,   )

8          vs.        )  No. CV 04-9059

9    CARTER BRYANT, an individual; )    NM (RNBx)

10   and DOES 1 through 10,    ) VOLUME I

11   Inclusive,         )

12         Defendants.  )

13   --------------------------)

14   (COMPLETE CAPTION ON NEXT PAGE.)

15

16    CONFIDENTIAL - ATTORNEYS' EYES ONLY

17

18    Videotaped 30(b)(6) Deposition of

19   RENE PASKO, taken at 400 South Hope

20   Street, Los Angeles, California,

21   commencing at 10:05 A.M., Wednesday,

22   June 13, 2007, before Wendy S.

23   Schreiber, CSR No. 3558, RPR, CLR.

24

25   PAGES 1 - 222

1

EXHIBIT ___13___ PAGE ___193___

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1            UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA

 3                  EASTERN DIVISION

 4

 5      -------------------------------

 6      MATTEL, INC., a Delaware            )

 7      Corporation,                        )

 8                   Plaintiff,             )

 9                   vs.                    ) No. CV 04-9059

10      CARTER BRYANT, an individual;       )    NM (RNBx)

11      and DOES 1 through 10,              )

12      Inclusive,                          )

13                   Defendants.            )

14      ------------------------------      )

15      CARTER BRYANT, on behalf of         )

16      himself, all present and            )

17      former employees of Mattel,         )

18      Inc., and the general public,       )

19                   Counter-Claimants,     )

20                   vs.                    )

21      MATTEL, INC., a Delaware            )

22      Corporation,                        )

23                   Counter-Defendant.     )

24      ------------------------------

25
```

2

EXHIBIT _13_ PAGE _194_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    APPEARANCES OF COUNSEL:

2

3       FOR THE PLAINTIFF:

4

5          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

6          BY:  MICHAEL ZELLER, ESQ.

7          865 South Figueroa Street, Tenth Floor

8          Los Angeles, California 90017

9          (213) 443-3000

10         mzeller@quinnemanuel.com

11

12              -AND-

13

14         MATTEL, INC.

15         BY:  MICHAEL MOORE, ESQ.

16         333 Continental Boulevard

17         El Segundo, California 90245-5012

18         (310) 252-2000

19         michael.moore@mattel.com

20

21

22

23

24

25
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES OF COUNSEL (CONTINUED):

 2

 3         FOR THE DEFENDANT AND COUNTERCLAIMANT

 4         CARTER BRYANT:

 5

 6              KEKER & VAN NEST LLP

 7              BY:  JOHN TRINIDAD, ESQ.

 8              710 Sansome Street

 9              San Francisco, California 94111-1704

10              (415) 391-5400

11              jtrinidad@kvn.com

12

13         FOR DEFENDANT MGA ENTERTAINMENT, INC.:

14

15              O'MELVENY & MYERS LLP

16              BY:  DIANA TORRES, ESQ.

17                   JENNIFER GLAD, ESQ.

18              400 South Hope Street

19              Los Angeles, California 90071-2899

20              (213) 430-6000

21              dtorres@omm.com

22              jglad@omm.com

23

24    ALSO PRESENT:

25              DAVID WEST, VIDEO OPERATOR
```

                                                                    4

EXHIBIT __13__ PAGE __196__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1  explain it to you so that I know that you're

2  answering the question that I intend to ask.  Fair

3  enough?

4      A.   Yes.

5      Q.   Your counsel will object from time to time    10:08AM

6  whether or not my questions are clear.  In those

7  instances unless he instructs you not to answer you

8  should give me your answer.  Do you understand?

9      A.   Yes.

10      Q.   At any time if you want to take a break you    10:08AM

11  should let me know.  The only thing I ask is if

12  there's a question pending and there's no issue of

13  privilege that you just answer the question.  Okay?

14      A.   Yes.

15      Q.   Do you understand that you're here to          10:09AM

16  testify on behalf of Mattel as its corporate

17  representative?

18      A.   Yes.

19      Q.   And do you know what topics you're here to

20  testify on?                                           10:09AM

21      A.   I believe I'm here to testify about Diva

22  Starz.

23      Q.   I'm going to hand you a document.  I'm --

24  it's been marked previously but I don't have a

25  marked copy so I'm going to ask the court reporter    10:09AM

                                                              9

EXHIBIT ___13___ PAGE ___197___

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    to mark it as Exhibit 435.

2              Mike, if you have the number --

3              MR. ZELLER:  I have it -- it's been marked I

4    think more than once but I have it as 385.  This is

5    the Notice of Deposition of Plaintiff and          10:09AM

6    Counter-Defendant Mattel, Inc.

7              MS. TORRES:  January 11, 2005?

8              MR. ZELLER:  That's right.

9              MS. TORRES:  All right, so we can just use

10   385.                                               10:09AM

11             (Exhibit 385 previously marked.)

12   BY MS. TORRES:

13        Q.  The court reporter has handed you what's

14   been previously marked as Exhibit 385 and I'd like

15   you to take a look at it and let me know if you've   10:10AM

16   ever seen that document before.

17        A.  Yes, I've seen the document before.

18        Q.  Can you tell me -- I understand that you're

19   here to testify on topics 2 through 7 and 10 through

20   11.                                                 10:11AM

21             MR. ZELLER:  I'm not sure that that's

22   correct but....

23             MS. TORRES:  Counsel, do you know which ones

24   she's here to testify on?

25             MR. ZELLER:  No one understands perhaps the  10:11AM

                                                              10

EXHIBIT _13_ PAGE _198_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    appropriate distinction.  I believe that she's been

2    designated for topics 2 through 8, 11 through 13 and

3    24 with, of course, the same kinds of caveats and

4    explanations and the like that have all gone into

5    this.  She is here as she said to really testify          10:12AM

6    about Diva Starz as it relates to all these various

7    topics to the extent that they do relate to them.

8    BY MS. TORRES:

9        Q.    You've heard your counsel's representation.

10   Is that your understanding of what you're here to         10:12AM

11   testify on?

12       A.    Yes, it is.

13       Q.    Did you do anything to prepare for today's

14   deposition?

15       A.    What do you mean by "prepare"?                   10:12AM

16       Q.    Did you meet with counsel?

17       A.    Yes.

18       Q.    Did you review documents?

19       A.    Yes.

20       Q.    Did you talk to anyone?                          10:12AM

21       A.    Other than counsel?  No.

22       Q.    When did you meet with counsel?

23       A.    Roughly a month ago.

24       Q.    Have you met with counsel since then?

25       A.    Yes.                                             10:13AM

                                                                   11

EXHIBIT _13_ PAGE _199_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        Q.   How long did you meet with counsel roughly a

2   month ago?  For how long?

3        A.   I'd be estimating but I'd have to say

4   roughly eight to -- eight to 12 hours.

5        Q.   Who was present?                          10:13AM

6        A.   Mr. Zeller, Ms. Halleron and Mr. Moore.

7        Q.   Was anyone else present?

8        A.   No.

9        Q.   Did you speak with anyone by telephone?

10       A.   About the case.                           10:13AM

11       Q.   During the deposition prep.

12       A.   Other than?

13       Q.   Other than the three people you've just

14   mentioned.

15       A.   Yes.                                      10:14AM

16       Q.   Who did you speak to?

17       A.   Jill -- what's her last name?

18       Q.   Is she also a lawyer?

19            MS. HALLER:  Jill Thomas.

20            THE WITNESS:  Jill Thomas, yes.           10:14AM

21   BY MS. TORRES:

22       Q.   Did you speak to anyone else by telephone?

23       A.   No.

24       Q.   You said you've met with counsel more

25   recently than approximately a month ago.           10:14AM

                                                             12

EXHIBIT ___13___ PAGE ___200___

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    STATE OF CALIFORNIA    ) ss:
 2    COUNTY OF LOS ANGELES )
 3
 4         I, WENDY S. SCHREIBER, CSR No. 3558, do
 5    hereby certify:
 6
 7         That the foregoing deposition of RENE
 8    PASKO was taken before me at the time and place
 9    therein set forth, at which time the witness was
10    placed under oath and was sworn by me to tell the
11    truth, the whole truth, and nothing but the truth;
12         That the testimony of the witness and all
13    objections made by counsel at the time of the
14    examination were recorded stenographically by me,
15    and were thereafter transcribed under my direction
16    and supervision, and that the foregoing pages
17    contain a full, true and accurate record of all
18    proceedings and testimony to the best of my skill
19    and ability.
20         I further certify that I am neither
21    counsel for any party in said action, nor am I
22    related to any party to said action, nor am I in any
23    way interested in the outcome thereof.
24
25
```

218

EXHIBIT _____13_____ PAGE __201__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1          IN WITNESS WHEREOF, I have subscribed my
 2   name this 22nd day of June, 2007.
 3
 4
 5
 6   _____
 7        WENDY S. SCHREIBER, CSR No. 3558, RPR
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                                                    219
```

EXHIBIT _13_ PAGE _202_

Exhibit  14

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., A DELAWARE )
CORPORATION, )
            )
      PLAINTIFF, )
            )
VS. )   NO. CV-04 9059 (NM)
            )
CARTER BRYANT, AN INDIVIDUAL; AND )
DOES 1 THROUGH 10, INCLUSIVE, )
            )
      DEFENDANTS. )
_____ )
            )
CARTER BRYANT, ON BEHALF OF )
HIMSELF, ALL PRESENT AND FORMER, )
EMPLOYEES OF MATTEL, INC., AND THE )
GENERAL PUBLIC, )
            )
      COUNTER-COMPLAINANT, )
            )
VS. )
            )
MATTEL, INC., A DELAWARE )
CORPORATION, )
            )
      COUNTER-DEFENDANT. )
_____ )


VOLUME II

REPORTER'S TRANSCRIPT OF PROCEEDINGS

TUESDAY, MARCH 15, 2005

LOS ANGELES, CALIFORNIA

REPORTED BY:

JOHN M. TAXTER
C.S.R. NO. 3579, R.P.R.

JOB NUMBER:
41191LMF

**LUDWIG KLEIN**
REPORTERS & VIDEO, INC.
10868 KLING STREET
TOLUCA LAKE, CALIFORNIA 91602
800.540.0681      Fax 818.508.6326
e-mail: lois@ludwigklein.com

EXHIBIT ___14___ PAGE 203

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1              UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3

4    MATTEL, INC., A DELAWARE              )
     CORPORATION,                         )
5                                         )
              PLAINTIFF,                  )
6                                         )
         VS.                              )
                                          ) NO. CV-04 9059 (NM)
7                                         )
     CARTER BRYANT, AN INDIVIDUAL; AND )
8    DOES 1 THROUGH 10, INCLUSIVE,        )
                                          )
9             DEFENDANTS.                 )
     ─────────────────────────────────────)
10                                        )
                                          )
11   CARTER BRYANT, ON BEHALF OF          )
     HIMSELF, ALL PRESENT AND FORMER,     )
12   EMPLOYEES OF MATTEL, INC., AND THE )
     GENERAL PUBLIC,                      )
13                                        )
              COUNTER-COMPLAINANT,        )
14                                        )
         VS.                              )
15                                        )
     MATTEL, INC., A DELAWARE             )
16   CORPORATION,                         )
                                          )
17            COUNTER-DEFENDANT.          )
     ─────────────────────────────────────)

18

19        REPORTER'S TRANSCRIPT OF PROCEEDINGS, VOLUME

20    II, TAKEN AT 9:36 A.M., ON TUESDAY, MARCH 15, 2005,

21    AT 2049 CENTURY PARK EAST, FIFTH FLOOR, LOS

22    ANGELES, CALIFORNIA, BEFORE JOHN M. TAXTER,

23    C.S.R. NO. 3579, R.P.R., A CERTIFIED SHORTHAND

24    REPORTER IN AND FOR THE STATE OF CALIFORNIA.

25

                                                  139

                    VOLUME II

                    EXHIBIT __14__ PAGE __204__

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   APPEARANCES:

2       FOR PLAINTIFF AND COUNTER-DEFENDANT MATTEL, INC.:

3           QUINN EMANUEL URQUHART OLIVER & HEDGES,
                L.L.P.
4           BY:  MICHAEL ZELLER
                ATTORNEY AT LAW
5           865 SOUTH FIGUEROA STREET
            TENTH FLOOR
6           LOS ANGELES, CALIFORNIA   90017
            213.443.3180

7

8

9       FOR DEFENDANT CARTER BRYANT:

10          LITTLER MENDELSON
            BY:  DOUGLAS WICKHAM
                ATTORNEY AT LAW
11                  -AND-
                KEITH JACOBY
12              ATTORNEY AT LAW
            2049 CENTURY PARK EAST
13          FIFTH FLOOR
            LOS ANGELES, CALIFORNIA   90067-2709
14          310.553.0308

15

16      FOR INTERVENOR M.G.A. ENTERTAINMENT, INC.:

17          O'MELVENY & MYERS, L.L.P.
            BY:  ALICIA CARRASQUILLO MEYER
18              ATTORNEY AT LAW
                    -AND-
19          PAULA AMBROSINI
                ATTORNEY AT LAW
20          400 SOUTH HOPE STREET
            LOS ANGELES, CALIFORNIA   90071-2899
21          213.430.6000

22

23

24

25

                                                    140

                    VOLUME II

EXHIBIT ___14___ PAGE __205__

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    OF THE LAWSUIT.  BUT, I MEAN, I CAN'T THINK OF A

2    CATEGORY THAT'S MORE FOURSQUARE ABOUT WHAT THIS LAWSUIT

3    IS ABOUT THAN THIS ONE.

4            AND SO, GIVEN THE FACT THAT YOU -- MATTEL HAS

5    NOT SPELLED OUT TO DATE PRECISELY THE DUTIES, EITHER

6    CONTRACTUAL, RELATED TO THE AGREEMENT, OR NONCONTRACTUAL

7    VIOLATIONS OF A HANDBOOK THAT HAVE BEEN VIOLATED, THE

8    ONLY WAY THAT WE CAN FLESH THAT OUT IS TO PROPOUND

9    A REQUEST SUCH AS THIS.  AND, AGAIN, WE DON'T -- WE

10   DON'T TAKE ISSUE WITH THE POSITION THAT MATTEL ISN'T

11   OBLIGATED TO SPELL OUT EXACTLY WHAT DUTIES THEY BELIEVE

12   WERE VIOLATED UNTIL SOME LATER DATE.  I SUPPOSE THAT

13   DATE WOULD BE THE PRETRIAL CONFERENCE ORDER.

14            MR. WICKHAM:  IT ALSO GOES TO LAYING THE

15   FACTUAL FOUNDATION FOR THE CLAIM OF A PARTICULAR DUTY.

16   I MEAN MATTEL HAS CLAIMED THAT BRYANT BREACHED FIDUCIARY

17   DUTIES.  WE BELIEVE THAT HE WAS NOT A FIDUCIARY; THAT HE

18   DOES NOT OWE FIDUCIARY DUTIES; THAT THE -- OH,

19   GOODNESS -- THE BANCROFT-WHITNEY CASE OUT OF THE

20   CALIFORNIA SUPREME COURT DEFINES THE NATURE AND EXTENT

21   OF FIDUCIARY DUTIES IN A CORPORATE CONTEXT, AND, FOR A

22   LINE EMPLOYEE OF MR. BRYANT'S LEVEL, THAT HE SIMPLY

23   DOESN'T RISE TO THE LEVEL OF BEING A FIDUCIARY;

24   THEREFORE, HE CAN'T BE SUED FOR BREACH OF FIDUCIARY

25   DUTY.

155

VOLUME II

EXHIBIT ___14___ PAGE ___206___

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1          BUT, TO THE EXTENT THAT YOU HAVE A WITNESS WHO

2     WILL TESTIFY AS TO THE FACTUAL BASIS FOR YOUR CONTENTION

3     THAT HE OWES FIDUCIARY DUTIES -- I.E., DOES HE OCCUPY

4     A POSITION OF TRUST? DOES HE HOLD SOME HIGH CORPORATE

5     POSITION AS A MANAGING DIRECTOR, OFFICER, OR SOME OTHER

6     CAPACITY ESTABLISHING CORPORATE FIDUCIARY DUTIES? -- WE

7     NEED TO BE ABLE TO ASK THAT WITNESS THOSE QUESTIONS IN

8     ORDER TO EITHER CHALLENGE MATTEL'S ASSERTION THAT HE

9     OWED FIDUCIARY DUTIES OR TO SIMPLY ACCEPT IT BECAUSE

10    YOU'VE LAID A FOUNDATION FOR IT.

11          MR. ZELLER:   OKAY.  WELL, THERE ARE A COUPLE

12    THINGS, SOME OF WHICH HAVE POTENTIALLY THE SEEDS OF A

13    RESOLUTION ON THIS.

14          ONE CONCERN WITH RESPECT TO TOPIC 2 -- AND THE

15    WAY THAT YOU WERE TALKING ABOUT IT, KEITH, IS THAT IT

16    SOUNDS LIKE YOU WANT SOMEONE TO COME IN AND TESTIFY

17    ABOUT, YOU KNOW, LEGAL OBLIGATIONS, CONTENTIONS; THAT

18    SORT OF THING.  OBVIOUSLY, WE DON'T THINK THAT'S THE

19    APPROPRIATE VEHICLE FOR FINDING OUT THAT KIND OF

20    INFORMATION.  CERTAINLY, THE FACTUAL BASIS IS CERTAINLY

21    FAIR GAME.  THAT I DON'T HAVE AN ISSUE WITH.  SO TO THE

22    EXTENT -- I MEAN ONE THING IS, OF COURSE, THIS IS --

23    THIS IS FRAMED IN TERMS OF, YOU KNOW, WHAT WILL HAVE

24    BEEN THE ULTIMATE LEGAL CONCLUSION.  WITH RESPECT TO

25    PROVIDING A WITNESS TO TALK ABOUT THE FACTUAL

156

VOLUME II

EXHIBIT __14__ PAGE __207__

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    UNDERPINNINGS FOR THOSE DUTIES, THAT'S NOT AN ISSUE.

2    THAT WE CAN DO.  BUT PART OF THE ISSUE, YOU KNOW,

3    PERTAINS TO, YOU KNOW, HOW THIS THING IS FRAMED AND SET

4    OUT.

5            WITH RESPECT TO, YOU KNOW, THE NOTION OF

6    FIDUCIARY DUTIES, YOU KNOW, I DON'T WANT TO GO TOO FAR

7    AFIELD HERE, BUT, YOU KNOW, THE BANCROFT CASE ALSO

8    STATED VERY CLEARLY, AS WELL AS OTHER CASES DEALING WITH

9    THIS SITUATION, THAT FIDUCIARY DUTY CAN ARISE NOT ONLY

10   BECAUSE OF THE NATURE OF THE PERSON'S OBLIGATIONS OR THE

11   POSITION THAT THAT PERSON HAD BUT BECAUSE THEY'RE

12   CONTRACTUALLY ACQUIRED.  AND THERE IS A PROVISION IN

13   MR. BRYANT'S CONTRACT THAT SO STATES.

14           SO, YOU KNOW, IT'S NOT -- SO THESE DO OVERLAP

15   TO SOME DEGREE.  I MEAN, OBVIOUSLY, HAVING A WITNESS

16   COME IN AND TESTIFY AND SAY, "WELL, YOU KNOW, MATTEL'S

17   POSITION IS THAT HE IS A FIDUCIARY BECAUSE IT'S SET

18   FORTH HERE IN THE CONTRACT," I MEAN, I PRESUME THAT'S

19   NOT WHAT YOU'RE LOOKING FOR.

20           MR. JACOBY:  NO.  I MEAN TO IMPOSE AN

21   OBLIGATION ON SOMEONE, EITHER CONTRACTUAL OR

22   NONCONTRACTUAL, THAT OBLIGATION HAS TO BE ARTICULATED.

23   I MEAN IT GOES -- THERE IS -- I AGREE THAT IT WOULD BE

24   IMPROPER TO SAY TO THIS P.M.K., "UNDER CALIFORNIA LAW

25   DOES THIS CONTRACT MEAN THIS?"

157

VOLUME II

EXHIBIT ___14___ PAGE __208__

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1        AND, IF YOU'RE INTERPRETING THIS CATEGORY TO

2   CALL FOR THOSE TYPE OF QUESTIONS, WELL, THEN AGAIN YOU

3   COULD OBJECT AND SAY THAT CALLS FOR A LEGAL CONCLUSION.

4        BUT, IF I SAY, "DOES MATTEL EXPECT THAT

5   EMPLOYEES OWE A DUTY NOT TO HAND OVER, YOU KNOW, SECRET

6   PROJECTS TO COMPETITORS?" I PRESUME THE ANSWER WOULD BE,

7   "YES."

8        AND THEN I'D SAY, "WELL, WHAT IS THE SOURCE OF

9   YOUR BELIEF THAT THAT IS -- THAT MATTEL EMPLOYEES OWE

10  SUCH A DUTY?" AND THEN THEY CAN TALK ABOUT WHAT WHATEVER

11  THEY'RE GOING TO TALK ABOUT.

12       "IT'S IN THE HANDBOOK.  IT'S IN THE CONTRACT.

13  WE HAVE MEETINGS ABOUT THAT.  IT'S POSTED ON THE WALL."

14  I MEAN THAT'S HOW -- TO IMPOSE AN OBLIGATION ON AN

15  EMPLOYEE, YOU HAVE TO EXPLAIN IT TO THEM.  YOU CAN'T

16  KEEP IT -- AND, CERTAINLY, IF YOU'RE GOING TO SUE ON IT,

17  YOU HAVE TO PROVE IT AS AN ELEMENT OF YOUR CASE.

18       SO WHAT I'M TRYING TO FIND OUT BEFORE THE

19  PRETRIAL CONFERENCE ORDER IS, WHAT ARE THE DUTIES THAT

20  YOU BELIEVE -- MATTEL BELIEVES HAVE BEEN BROKEN, HAVE

21  NOT BEEN MET BY CARTER?

22       AND SO THE FIRST STEP IN MY FINDING OUT THAT

23  PROCESS AFTER READING THE CONTRACTS AND READING THE

24  HANDBOOKS IS TO GET LIVE TESTIMONY ON WHAT PEOPLE

25  BELIEVE THOSE DUTIES ARE, WHAT MATTEL ASSERTS THOSE

158

VOLUME II

EXHIBIT __14__ PAGE _209_

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    DUTIES ARE.  AND I THINK THAT, WHILE TECHNICALLY THERE

2    IS A LEGAL ASPECT TO IT, THE DEPOSITION ISN'T DIRECTED

3    TOWARD THE LEGAL ASPECT TO IT.  SOME DAY A JUDGE WILL

4    DECIDE WHETHER MATTEL HAS COMMUNICATED THOSE DUTIES,

5    WHETHER THOSE DUTIES EXIST, WHETHER THOSE DUTIES ARE

6    UNCONSISTENT OR CONSISTENT WITH CALIFORNIA OR FEDERAL

7    LAW.

8         BUT IN DISCOVERY MATTEL IS OBLIGATED, WHEN

9    THEY SUE ON BREACH OF CONTRACT OR OR BREACH OF FIDUCIARY

10   DUTY, TO SAY WHAT THE DUTIES ARE, AND THAT'S THE

11   TESTIMONY WE'RE TRYING TO GET.

12        SO I'M WILLING TO STIPULATE THAT YOU CAN

13   RESERVE THE RIGHT ON THIS CATEGORY AND EVERY CATEGORY TO

14   ASSERT THAT A PARTICULAR QUESTION CALLS FOR A LEGAL

15   CONCLUSION, BUT, CLEARLY, THERE ARE QUESTIONS RELATED TO

16   THIS CATEGORY THAT WOULD NOT.

17        MR. ZELLER:  IF WHAT YOU'RE SAYING IS THAT

18   YOU'RE LOOKING FOR FACTUAL -- YOU KNOW, FACTUAL

19   INFORMATION PERTAINING TO THESE CATEGORIES, THEN THAT

20   WOULD BE POTENTIALLY --

21        MR. JACOBY:  EVERY SINGLE ONE OF THEM.

22        MR. ZELLER:  OKAY.

23        MR. JACOBY:  EVERY SINGLE ONE OF THEM.

24        MR. WICKHAM:  IT SO HAPPENS THAT PEOPLE IN THE

25   HUMAN RESOURCES DEPARTMENT WHO HAVE FACILITY WITH

159

VOLUME II

EXHIBIT ___14___ PAGE ___210___

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   CONTRACTS AND ARE RESPONSIBLE FOR EMPLOYEE ORIENTATION

2   AND THINGS OF THAT NATURE WILL HAVE A LAY UNDERSTANDING

3   OF CERTAIN LEGAL TERMS.  AND SO BECAUSE -- JUST BECAUSE

4   THERE MAY BE A LEGAL ASPECT OF A PARTICULAR QUESTION, IF

5   IT'S PART AND PARCEL OF THE H.R. PERSON'S DUTIES AND

6   RESPONSIBILITIES TO UNDERSTAND THESE THINGS AND TO

7   EXPLAIN THEM TO EMPLOYEES, THEN WE ALSO WOULD BE

8   ENTITLED TO BE EXPLORING THOSE ISSUES, YOU KNOW, WITH

9   THE H.R. PEOPLE AND EXPLORING THE DEGREE TO WHICH THEY

10  COMMUNICATE THESE THINGS TO THE EMPLOYEES AND

11  SPECIFICALLY THE DEGREE TO WHICH THEY COMMUNICATED THE

12  DUTIES TO MR. BRYANT.

13        SO, I MEAN, WHILE YOU ABSOLUTELY HAVE A RIGHT

14  TO MAKE WHATEVER OBJECTIONS AS TO FORM AND ANYTHING ELSE

15  AT DEPOSITIONS THAT, YOU KNOW, ARE APPROPRIATE UNDER THE

16  RULES, THAT A PARTICULAR QUESTION IN A PARTICULAR

17  CONTEXT, YOU KNOW, MAY TECHNICALLY CALL FOR A LEGAL

18  CONCLUSION WOULDN'T BE A BASIS EITHER FOR REFUSING TO

19  PRODUCE SOMEONE IN RESPONSE TO A TOPIC OR FOR, YOU KNOW,

20  WITHHOLDING THAT, IF IT'S PART OF THAT PERSON'S

21  THEMSELVES DUTIES AND RESPONSIBILITIES AS IN THE

22  H.R. FUNCTION.

23        MR. JACOBY:  LET ME GIVE YOU AN EXAMPLE OF HOW

24  I THINK THE DISTINCTION BETWEEN THESE TWO ISSUES WOULD

25  PLAY OUT IN A LINE OF QUESTIONING.

160

VOLUME II

EXHIBIT ___14___ PAGE ___211___

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   PROVISIONS OF THE CONTRACT DOES MATTEL BELIEVE WERE

2   BREACHED, AND WHAT'S YOUR BASIS -- WHAT IS THE FACTUAL

3   BASIS FOR THAT BELIEF?"

4   "WELL, WE ALLEGE THAT HE BREACHED SUBSECTION 4

5   OF THE INVENTIONS AND ASSIGNMENT AGREEMENT."

6   "WHY DO YOU BELIEVE THAT?"

7   "WELL, BECAUSE HE WAS USING OUR FAX MACHINE

8   AND HE SHOULDN'T HAVE BEEN USING IT TO WORK WITH M.G.A."

9   I MEAN THAT'S HOW YOU DO THIS.  I CAN'T GET INSIDE

10  MATTEL'S HEAD AND GUESS WHAT THEY THINK BRYANT DID

11  WRONG.  SOMEBODY HAS TO TELL ME, "THIS IS WHAT WE THINK

12  BRYANT DID WRONG."

13  MR. WICKHAM:  AND WHAT WE DID DO IS TO SERVE

14  CONTENTION INTERROGATORIES.  WE DID ASK IN INTERROGATORY

15  NO. 3 FOR MATTEL TO STATE ALL FACTS EVIDENCING ITS

16  CONTENTION THAT BRYANT IS IN A FIDUCIARY RELATIONSHIP

17  WITH MATTEL.  MATTEL RESPONDED WITH ITS VERIFIED

18  INTERROGATORY RESPONSES, AND WE SEEK TO DEPOSE A

19  30(B)(6) WITNESS WITH REGARD TO THE FACTS THAT ARE LAID

20  OUT IN MATTEL'S INTERROGATORY RESPONSES WHICH GO TO WHAT

21  DUTIES THAT MATTEL BELIEVES THAT BRYANT OWED TO THEM.

22  SO I THINK THAT, AGAIN, THERE IS SOME CHANCE

23  THAT WE CAN RESOLVE THIS, IF WE CAN AGREE THAT, AS TO

24  THE FACTUAL BASIS FOR THE PARTICULAR TOPICS THAT WE'RE

25  TALKING ABOUT, THAT SHOULD BE FAIR GAME.  AND, AS TO ANY

168

VOLUME II

EXHIBIT ___14___ PAGE __212__

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    OTHER MATTERS, I MEAN, I DON'T WANT TO -- YOU WANT TO

2    RESERVE YOUR OBJECTIONS, BUT I DON'T WANT TO

3    CHARACTERIZE THAT.   BUT THIS IS A DISCOVERABLE TOPIC.

4              MR. JACOBY:   I MEAN I AGREE THAT I ANTICIPATE

5    FULLY THAT THERE WILL BE DISAGREEMENTS ABOUT ANY GIVEN

6    QUESTION ABOUT WHETHER IT CALLS FOR A PURE LEGAL

7    CONCLUSION OR WHETHER IT CALLS FOR THE ACTUAL

8    UNDERPINNING OF A LEGAL CONTENTION.   THERE'S NO WAY I

9    COULD GUARANTEE, NOR COULD YOU, THAT I WON'T COME UP

10   WITH SOME QUESTION THAT YOU WOULD OBJECT TO ON THAT

11   BASIS, NOR COULD I GUARANTEE OR ALICIA GUARANTEE THAT

12   MATTEL WON'T COME UP WITH SOME OBJECTION OR THAT THEY

13   WON'T COME UP WITH SOME OBJECTION WHEN MATTEL ASKS THE

14   SAME KIND OF QUESTIONS TO BRYANT OR M.G.A.   BUT I THINK

15   THAT THERE'S AGREEMENT HERE THAT, IN TERMS OF FACTUAL

16   UNDERPINNINGS, THAT IS FAIR GAME FOR DISCOVERY.

17             WHAT I WOULD PROPOSE IS THAT WE AGREE, WITH

18   RESPECT TO NO. 2, THAT YOU WILL PRODUCE A WITNESS ON THE

19   FACTUAL UNDERPINNINGS OF THE DUTIES THAT BRYANT OWED TO

20   MATTEL DURING HIS EMPLOYMENT AND THAT WE WILL MEET AND

21   CONFER AFTER THAT SECTION OF THE DEPOSITION CONCLUDES ON

22   ANY AREAS WHERE YOU BELIEVE WE WERE ASKING FOR SOMETHING

23   MORE THAN THAT BECAUSE I AGREE WITH YOU IN PRINCIPLE

24   THAT WE'RE ENTITLED TO FACTS, NOT LEGAL CONCLUSIONS.

25             MR. ZELLER:   RIGHT.   AND JUST SO IT'S CLEAR,

169

VOLUME II

EXHIBIT ___14___ PAGE __213__

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    THOUGH, WE APPEAR TO HAVE A FAIR AMOUNT OF COMMON GROUND

2    HERE, BUT THE ONE THING I JUST WANT TO MAKE VERY CLEAR

3    IS THAT WHEN -- IF YOU'RE GOING TO BE ASKING WITNESSES

4    LIKE, "DOES MATTEL ALLEGE," "DOES MATTEL CONTEND," THOSE

5    SORT OF QUESTIONS I DON'T THINK ARE APPROPRIATELY

6    DIRECTED TO A 30(B)(6) WITNESS.  I THINK THAT THERE IS

7    PRETTY DECENT AUTHORITY FOR THE PROPOSITION THAT ASKING

8    OR -- ASKING FOR THE DESIGNATION OF A CORPORATE

9    REPRESENTATIVE TO SAY, "WELL, OUR ALLEGATIONS IN THE

10   CASE OR OUR CONTENTIONS IN THE CASE ARE 'X,' 'Y,' AND

11   'Z,'" ISN'T A PROPER STARTING POINT FOR WITNESS

12   TESTIMONY.  AND THAT'S WHERE I THINK WE HAVE, YOU KNOW,

13   AT LEAST ONE -- PROBABLY THE ONLY THING IT APPEARS THAT

14   WE REALLY NEED TO SORT OUT ON THAT, OR, "DOES MATTEL

15   ALLEGE"; THOSE KIND OF QUESTIONS THAT YOU WERE GIVING

16   EXAMPLES OF.

17           MR. WICKHAM:  WELL, I THINK THAT THOSE ARE

18   THINGS THAT ARE THE SUBJECT OF THE INTERROGATORIES THAT

19   WE HAD SERVED AND THAT WE'VE GOT SOME ISSUES WITH THAT.

20   IN PRINCIPLE, I AGREE WITH YOU.

21           ON THE OTHER HAND, A CORPORATION, LIKE AN

22   INDIVIDUAL, HAS TO HAVE A GOOD-FAITH BASIS GROUNDED IN

23   FACTS AND LAW FOR ASSERTING ITS COMPLAINT.  A

24   CORPORATION IS SUBJECT TO NUMEROUS OBLIGATIONS.

25           MR. ZELLER:  ALL I'M ACTUALLY SAYING IS THAT

170

VOLUME II

EXHIBIT __14__ PAGE __214__

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    I AGREE AT SOME POINT IN SOME MANNER MATTEL DOES HAVE TO

2    SPELL OUT ITS CONTENTIONS.  I AGREE THAT, IF WHAT YOU

3    WOULD LIKE TO DO TO AVOID THAT PROBLEM AND PUSH THROUGH

4    THAT ISSUE IS REVISIT YOUR INTERROGATORY RESPONSES, NOW

5    THAT YOU HAVE HAD BRYANT'S DEPOSITION AND ABOUT FOUR

6    OTHER DEPOSITIONS AND YOU'VE GOTTEN DOCUMENTS FROM

7    M.G.A. AND YOU'RE MORE INFORMED THAN YOU MAY HAVE BEEN

8    WHEN YOU WERE FIRST ANSWERED THEM -- MAYBE YOU'VE DONE

9    MORE INTERNAL INVESTIGATION -- THEN I THINK THAT'S FINE;

10   THAT WE CAN AGREE ON A DATE THAT YOU AMEND YOUR

11   INTERROGATORY RESPONSES, AND THEN THAT WILL BE PART OF

12   THE FRAMEWORK FOR THESE 30(B)(6) DEPOSITIONS.

13        MR. WICKHAM:  RIGHT.  BUT ONE THING, JUST

14   BY -- FOR CLARITY, IS THAT JUST BECAUSE A PARTICULAR

15   ALLEGATION IS A CONTENTION IN THIS COMPLAINT DOESN'T

16   MEAN THAT IT MAY NOT BE A PROPER 30(B)(6) TOPIC.

17        I MEAN MATTEL DOES CONTEND THAT BRYANT

18   CONVERTED ITS PROPERTY.  WE WANT TO ASK THE 30(B)(6)

19   WITNESS, "TELL US ALL PROPERTY -- ALL MATTEL PROPERTY

20   THAT YOU -- THAT MATTEL BELIEVES BRYANT STOLE,

21   CONVERTED, USED."  I MEAN WE'LL TRY TO AVOID USING

22   LEGALLY CHARGED TERMINOLOGY IN ASKING THE QUESTION, BUT,

23   BASICALLY, WE WANT TO GET TO THE BOTTOM OF WHAT IT IS

24   THAT MATTEL THINKS THAT BRYANT DID.  THAT IS A FACTUAL

25   QUESTION DIRECTED TO THE WITNESS.  IT SO HAPPENS TO BE

172

VOLUME II

EXHIBIT ____14____ PAGE __215__

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    ONE OF MATTEL'S CONTENTIONS, BUT IT DOESN'T MEAN THAT

2    IT'S NOT OTHERWISE FAIR GAME, YOU KNOW, FOR A 30(B)(6)

3    DEPOSITION.

4         MR. JACOBY:  I MEAN IT'S -- I THINK YOU CAN

5    PROBABLY FRAME THAT TYPE OF A QUESTION IN AN IMPROPER

6    WAY AND IN A PROPER WAY.  I THINK, IF BRYANT WERE TO

7    POSE, "PLEASE STATE THE BASIS FOR MATTEL'S CONTENTION

8    THAT BRYANT CONVERTED ANYTHING," IT WOULD PROBABLY NOT

9    BE A PROPER QUESTION.

10        BUT, IF I ASKED, "ARE YOU AWARE THAT BRYANT

11   GAVE ANYTHING THAT MATTEL OWNED TO SOMEBODY ELSE OUTSIDE

12   MATTEL?" I THINK THAT IS A PROPER QUESTION AND CALLS FOR

13   A FACT.  IT CALLS FOR WHAT THIS MATTEL WITNESS KNOWS

14   ABOUT WHAT BRYANT TOOK FROM MATTEL AND HANDED TO

15   SOMEBODY ELSE.  AND WHETHER THAT CONSTITUTES CONVERSION

16   IS A MATTER OF LAW; IS SOMETHING A JUDGE WILL DECIDE OR

17   A JURY WILL DECIDE LATER.

18        MR. WICKHAM:  I MEAN WE'LL GET REALLY SIMPLE.

19        DOES MATTEL BELIEVE THAT MR. BRYANT STOLE

20   SOMETHING FROM MATTEL?  YOU KNOW, DOES MATTEL BELIEVE

21   THAT, YOU KNOW, MR. BRYANT, YOU KNOW, GAVE SOMETHING OF

22   MATTEL'S TO SOMEONE THAT HE WASN'T ALLOWED TO GIVE IT

23   TO?

24        I MEAN WE CAN HAVE IT AS SIMPLE AND

25   STRAIGHTFORWARD.  BUT, AGAIN, ALTHOUGH THOSE MAY BE

173

VOLUME II

EXHIBIT ___14___ PAGE ___216___

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   CONTENTIONS IN MATTEL'S COMPLAINT, IT DOESN'T MEAN THAT

2   THEY'RE NOT PROPER FACTUAL INQUIRIES OF A 30(B)(6)

3   DEPOSITION WITNESS.

4         MR. ZELLER:  WELL, I MEAN, WITHOUT COMMENTING

5   ON THE PARTICULAR EXAMPLES THAT YOU'RE GIVING OF THE

6   TYPES OF QUESTIONS, MY PARTICULAR CONCERN JUST GOES TO,

7   YOU KNOW, AT THIS JUNCTURE, IN TRYING TO COME UP WITH A

8   FRAMEWORK FOR DEALING WITH THESE VARIOUS ISSUES -- IS

9   THAT, YOU KNOW, WE REACH RESOLUTION -- AND I BELIEVE

10  THAT WE HAVE -- THAT IT'S NOT YOUR EXPECTATION THAT

11  WITNESSES ARE GOING TO BE PRODUCED THAT ARE GOING TO SAY

12  IN RESPONSE TO QUESTIONS, "DOES MATTEL ALLEGE 'X'?  DOES

13  MATTEL ALLEGE 'Y'?" AND THAT THESE WITNESSES --

14        MR. JACOBY:  THAT'S NOT MY ENVISIONING OF HOW

15  WE'RE DOING TO DO THIS.  I THINK THE WAY I ENVISION THAT

16  WE'RE GOING TO DO THIS IS THAT WE'RE GOING TO ASK IN

17  INTERROGATORIES, "WHAT DO YOU CONTEND BRYANT CONVERTED?"

18        AND SO LET'S SAY THE ANSWER TO THE QUESTION

19  WAS, "THE MASTER BRATZ DRAWINGS."

20        AND THEN WE GO TO THE 30(B)(6) DEPOSITION AND

21  SAY, "WHY DO YOU BELIEVE MR. BRYANT CONVERTED THE MASTER

22  BRATZ DRAWINGS?"

23        "WELL, MATTEL BELIEVES THAT BECAUSE MATTEL

24  BELIEVES THAT THEY WERE DRAWN WHILE HE WORKED AT

25  MATTEL."

174

VOLUME II

EXHIBIT __14__ PAGE __217__

LUDWIG KLEIN REPORTERS & VIDEO, INC..   800.540.0681

1        "WHY DO YOU BELIEVE THAT?"

2        "WELL, BECAUSE WE SAW SOMEONE DRAWING THEM

3   WHILE HE WAS AT MATTEL."  I MEAN THAT'S PROPER QUESTIONS

4   AND ANSWERS IN A 30(B)(6) DEPOSITION.  IT'S NOT TRUE,

5   BUT THAT WOULD BE PROPER.  THE CONTENTION, APPLYING

6   FACTS TO LAW, MATTEL IS OBLIGATED TO DO IN INTERROGATORY

7   RESPONSES WITH THE ASSISTANCE OF COUNSEL.  ASCERTAINING

8   THE FACTUAL BASIS THAT UNDERPINS THAT CONTENTION, WHAT

9   HE CONVERTED, IN MY VIEW, THAT'S THE PROPER BASIS OF A

10   30(B)(6) DEPOSITION.

11        NOW, THEORETICALLY YOU COULD GIVE THOSE SAME

12   FACTS IN AN INTERROGATORY RESPONSE.  "WE BELIEVE BRYANT

13   CONVERTED THE MASTER BRATZ DRAWINGS BECAUSE WE SAW HIM

14   DOING THEM ON SEPTEMBER 20TH, 2000."  THAT COULD BE PART

15   OF AN INTERROGATORY RESPONSE.  BUT THE PURPOSE OF A

16   30(B)(6) DEPOSITION IS TO EXPLORE THOSE FACTS.

17        WHO SAW HIM DRAWING IT?  WHERE DID YOU SEE IT?

18   WHEN DID THAT HAPPEN?  WHO DID YOU TELL?

19        I MEAN THAT'S -- THOSE ARE ALL FACTS.  THEY

20   DON'T CALL FOR LEGAL CONCLUSIONS, AND I THINK THAT'S

21   WITHIN THE SCOPE OF AT LEAST, YOU KNOW, FIVE OR TEN OF

22   THESE CATEGORIES.

23        SO CAN WE AGREE, THEN, THAT THE FRAMEWORK FOR

24   THESE RESPONSES TO -- AND WE CAN SEE IF WE CAN APPLY

25   THIS TO OTHERS -- IS THAT MATTEL WILL REVISIT ITS

175

EXHIBIT __14__ PAGE __218__

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    INTERROGATORY RESPONSES AND LAY OUT ANY FURTHER

2    FACTUAL -- ANY FURTHER CONTENTIONS THAT IT BELIEVES IT

3    NEEDS TO DO TO PROPERLY FRAME IN ITS MIND THE SCOPE OF

4    THESE 30(B)(6) CATEGORIES, AND THEN AT THE DEPOSITION

5    YOU WILL HAVE THE RIGHT TO OBJECT AND INSTRUCT ON THE

6    GROUNDS THAT WE CROSSED THE LINE INTO A LEGAL

7    CONCLUSION, BUT WE WOULD HAVE THE RIGHT TO EXPLORE THE

8    FACTUAL UNDERPINNINGS OF THE CONTENTIONS THAT ARE

9    IDENTIFIED EITHER IN THE COMPLAINT OR IN THE

10   INTERROGATORY RESPONSES OR ARE SUGGESTED BY DOCUMENTS OR

11   OTHER INFORMATION THAT'S BEEN PRODUCED OR THAT WE'VE

12   LEARNED THROUGH OTHER SOURCES?

13          MR. ZELLER:  YEAH.  I THINK THAT THAT'S SORT

14   OF THE FRAMEWORK I WAS PROPOSING, AND I THINK THAT

15   THAT'S --

16          MR. JACOBY:  OKAY.

17          MR. ZELLER:  I THINK THAT GETS US A FAIR

18   DISTANCE.

19          MR. JACOBY:  OKAY.

20          MR. ZELLER:  ONE THING, JUST SO IT'S CLEAR,

21   YOU'RE RAISING, TOO, IN TERMS OF, YOU KNOW, SOME OF

22   THESE, SOME OF THESE, YOU KNOW, WILL HAVE TO BE ANOTHER

23   SET OF ISSUES WE'RE GOING TO HAVE TO ADDRESS KIND OF

24   GENERALLY SPEAKING WITH RESPECT TO PRODUCING A 30(B)(6)

25   WITNESS TO, YOU KNOW, TALK ABOUT CERTAIN THINGS THAT

176

VOLUME II   EXHIBIT __14__ PAGE __219__

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   CARTER BRYANT DID THAT WEREN'T NECESSARILY AT MATTEL'S

2   DESIGN CENTER OR, YOU KNOW, THE LIKE.

3           I MEAN THAT'S SORT OF A SEPARATE ISSUE

4   BECAUSE, OBVIOUSLY, THERE'S INFORMATION THROUGH

5   DISCOVERY AND THAT SORT OF THING IN THE LAWSUIT.  YOU

6   KNOW, WE CAN TALK ABOUT WHAT THE PARAMETERS OF THOSE

7   SORT OF THINGS WOULD BE WITH RESPECT TO OUR HAVING TO

8   EDUCATE A WITNESS TO DISCUSS THOSE SORT OF THINGS.  BUT,

9   I MEAN, I THINK GENERALLY SPEAKING WE'RE SORT OF -- I

10  THINK WE HAVE AN AGREEABLE FRAMEWORK FOR TRYING TO DEAL

11  WITH THESE THINGS.

12          MR. WICKHAM:  AND IT'S PERFECTLY APPROPRIATE

13  FOR A WITNESS TO SAY, "I DON'T KNOW WHAT HE DID AT

14  M.G.A., BUT IT SURE LOOKS BAD TO US," OR SOMETHING LIKE

15  THAT.  SO, I MEAN --

16          MR. ZELLER:  ALSO, I MEAN, PART OF THE PROBLEM

17  IS, TOO, IN TERMS OF WHAT DO WE -- WHAT ARE THE

18  PARTIES' EX -- YOU KNOW, WHAT ARE YOUR EXPECTATIONS, AND

19  WHAT CAN WE DO IN TRYING TO RESOLVE SOME OF THESE

20  ISSUES?

21          AND PARTICULARLY THE SCOPE OF SOME OF THE

22  TOPICS THAT ARE SET FORTH IN THE 30(B)(6) NOTICE IS THAT

23  OBVIOUSLY THERE ARE RESTRICTIONS ON WHAT IT IS THAT WE

24  CAN SHARE WITH, YOU KNOW, THE CORPORATE REPRESENTATIVES,

25  YOU KNOW, THE INFORMATION THAT'S IN THE CASE.  SO --

177

VOLUME II

EXHIBIT __14__ PAGE __220__

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1          MR. JACOBY:  I UNDERSTAND THAT.

2          MR. ZELLER:  -- THAT'S SOMETHING WE'RE GOING

3   TO HAVE TO DEAL WITH IN TERMS OF THE PARAMETERS OF SOME

4   OF THESE TOPICS.

5          MR. JACOBY:  I UNDERSTAND.  THAT'S PROBABLY

6   TRUE OF EVERY TOPIC.  BUT, AGAIN, WE'RE JUST TRYING TO

7   FIND OUT WHAT YOU'RE GOING TO TELL THE JURY ONE DAY.  AT

8   LEAST ON THE FACE OF IT, YOU KNOW, I'D BE INTERESTED IN

9   KNOWING WHAT YOU AND MICHAEL MOORE BELIEVE ON THIS

10  STUFF.  I DON'T HAVE ANY EXPECTATION THAT THAT'S WHAT

11  WE'RE GOING TO GET HERE.

12          SO I THINK WHY DON'T WE TRY TO SEE HOW MANY OF

13  THESE OTHER CATEGORIES IN GROUP 3 WE COULD APPLY THE

14  CAVEAT I BELIEVE WE'VE JUST AGREED TO THAT, 1, MATTEL

15  WILL GO BACK AND REVISIT ITS RESPONSES TO THE CONTENTION

16  INTERROGATORIES THAT HAVE BEEN PROPOUNDED AND AMEND THEM

17  BEFORE THE 30(B)(6) DEPOSITION;

18          2, THAT YOU WILL TRY AND WE'LL TRY TO IDENTIFY

19  A WITNESS TO TESTIFY TO THE FACTUAL UNDERPINNINGS OF

20  THOSE CONTENTIONS;

21          3, THAT MATTEL WILL RESERVE THE RIGHT TO

22  PRODUCE ONE OR MORE WITNESSES ON A SINGLE CATEGORY, IF

23  THE SCOPE OF THE REQUEST IS BROAD ENOUGH THAT IT WOULD

24  REQUIRE IT;

25          4, THAT MATTEL RESERVES ITS RIGHT TO OBJECT ON

178

VOLUME II

EXHIBIT _____14_____ PAGE _221_

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    THE GROUNDS THAT THE QUESTIONS -- THE QUESTION IS AN

2    IMPROPER CONTENTION INTERROGATORY -- IS AN IMPROPER

3    SUBJECT OF A 30(B)(6) DEPOSITION BECAUSE IT'S MORE

4    APPROPRIATE AS A CONTENTION INTERROGATORY OR IT'S

5    OUTSIDE THE SCOPE OF THE LAWSUIT, OBJECTIONS WHICH I

6    BELIEVE EVERY PARTY HAS MADE BEFORE AND CERTAINLY WE CAN

7    RESERVE HERE AND WOULD BE THE SUBJECT OF A LATER MEET

8    AND CONFER.

9          MR. WICKHAM:  WITH ALL THOSE THINGS IN MIND,

10   COULD YOU LOOK AT 2 THROUGH 8 AND SEE WHETHER OR NOT WE

11   COULD APPLY WHAT WE JUST DISCUSSED TO THESE PARTICULAR

12   CATEGORIES?

13         MR. JACOBY:  SKIP 5 BECAUSE I THINK 5 IS IN MY

14   LETTER.

15         MR. ZELLER:  YEAH.  WE'LL HAVE TO DEAL WITH 5

16   SEPARATELY.

17         MR. WICKHAM:  WE CAN NARROW THAT.

18         MR. JACOBY:  WHY DON'T WE SEE -- LET'S GO

19   THROUGH THE THIRD CATEGORIES OF STUFF AND SEE HOW MANY

20   OF THOSE WE CAN PUT UNDER OUR BELTS.  THE NEXT ONE I

21   HAVE IS 3.

22         MR. ZELLER:  RIGHT.

23         MR. WICKHAM:  DO WE HAVE AN AGREEMENT IN

24   PRINCIPLE ON 2?

25         MR. ZELLER:  WELL, I THINK, YEAH, WE HAVE AN

179

VOLUME II

EXHIBIT ___14___ PAGE ___222___

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    AGREEMENT IN TERMS OF THE FRAMEWORK THAT WE'LL SET UP TO

2    DEAL WITH THESE THINGS, YOU KNOW, SO THAT THERE'S AN

3    UNDERSTANDING AS TO, YOU KNOW, WHAT THESE PEOPLE ARE

4    GOING TO BE DEPOSED ABOUT.   I MEAN THAT'S -- YOU KNOW,

5    THAT'S PART OF MY CONCERN, TOO, IN TERMS OF, YOU KNOW,

6    THE SCOPE OF THE TOPICS.

7             I MEAN LIKE, FOR EXAMPLE, THIS -- YOU KNOW,

8    BECAUSE I THINK THAT FRAMEWORK WILL ACTUALLY RESOLVE A

9    HUGE NUMBER OF THESE, BY THE WAY, BOTH THOSE THAT WERE,

10   YOU KNOW, AGREED UPON OR AT LEAST IN PRINCIPLE APPEAR TO

11   BE HEADED TOWARDS RESOLUTION.

12             MR. JACOBY:  I'M HAPPY TO HEAR THAT.

13             MR. ZELLER:  AS, YOU KNOW -- SO -- AS WELL AS

14   POTENTIALLY SOME OTHER ONES.   I MEAN THIS GETS US A LONG

15   WAYS ALONG THE WAY.   BUT ONE CONCERN, WHEN WE'RE LOOKING

16   AT SOME OF THE INDIVIDUAL FURTHER TOPICS, IT GOES BACK

17   TO THE POINT I WAS JUST MAKING A MOMENT AGO WHICH IS,

18   FOR EXAMPLE, WHERE IT SAYS ALL OF BRYANT'S ACTS OR

19   OMISSIONS WHICH BREACHED ANY CONTRACTUAL OR

20   NONCONTRACTUAL DUTY OR OBLIGATION BRYANT OWED TO MATTEL,

21   I MEAN, THAT OBVIOUSLY HEADS US RIGHT INTO THE TERRITORY

22   OF, YOU KNOW, MATTERS THAT ARE BASED UPON -- YOU KNOW,

23   IN MATERIAL PART ON DISCOVERY, FOR EXAMPLE, THAT'S BEEN

24   OBTAINED IN THE CASE AND THAT, OBVIOUSLY, WE'RE -- YOU

25   KNOW, AS THINGS PRESENTLY STAND, WE'RE NOT EVEN AT

180

VOLUME II

EXHIBIT ___14___ PAGE ___223___

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1          MR. JACOBY:  I MEAN, AM I RIGHT, DOUG?

2          MR. ZELLER:  -- IS THAT CERTAINLY, YOU KNOW,

3     THINGS THAT ARE THE RESULT OF MATTEL'S INVESTIGATION --

4     I AM SETTING ASIDE PRIVILEGE ISSUES FOR THE MOMENT, BUT

5     THE FACTUAL UNDERPINNINGS DEALING WITH WHAT IT IS THAT

6     MATTEL HAS LEARNED THROUGH INVESTIGATION --

7          MR. JACOBY:  RIGHT.

8          MR. ZELLER:  -- OBVIOUSLY, APART FROM THE

9     DISCOVERY THAT'S ALREADY IN THE CASE IN THE SENSE OF

10    WHAT WAS PRODUCED BY BRYANT, BY M.G.A., AND BY THIRD

11    PARTIES, THAT I THINK HELPS, YOU KNOW, SET SOME

12    PARAMETERS ON A LOT OF THESE TOPICS THAT ALSO WILL

13    RESOLVE THIS, IF WE HAVE A COMMON GROUND ON THAT.

14         MR. JACOBY:  WELL, I THINK WE HAVE A COMMON

15    GROUND.  I MEAN AT THE END OF THE DAY WE'RE GOING TO

16    HAVE TO -- I MEAN, TO WHITTLE DOWN, I'M KIND OF LOOKING

17    AT THE TRIAL OF THE CASE.  IN OTHER WORDS, TO KNOW HOW

18    MANY OF THE E-MAILS ARE RELEVANT TO YOUR CLAIMS OR

19    DEFENSES, AT SOME POINT YOU'RE GOING TO HAVE TO

20    COMMUNICATE TO US, "THESE ARE THE ONES THAT WE THINK

21    ESTABLISH THE BREACHES AND DEFENSES."

22         MR. ZELLER:  RIGHT.  BUT SOME OF THOSE ARE THE

23    ONES THAT WERE, YOU KNOW, PRODUCED AND PRESUMABLY WILL

24    BE PRODUCED IN THE FUTURE BY, YOU KNOW, PARTIES, YOU

25    KNOW, BY DEFENDANTS IN THE CASE, OR BY THIRD PARTIES,

EXHIBIT ___14___ PAGE ___224___

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   NOT BY MATTEL.

2          MR. JACOBY:   RIGHT.

3          MR. ZELLER:   THAT'S WHERE I GUESS I'M DRAWING

4   THE LINE.

5          MR. JACOBY:   WELL, I AGREE THAT AT LEAST

6   INITIALLY THE PURPOSE OF THESE DEPOSITIONS IS TO FIND

7   OUT WHAT MATTEL KNOWS, AND SO I'M REALLY EAGER TO FIND

8   THAT OUT.   I'M EQUALLY INTERESTED TO KNOW WHAT MATTEL

9   BELIEVES FROM WHAT IT'S HEARD AND WHAT IT HAS PRODUCED

10  SUPPORTS ITS CLAIMS, BUT PERHAPS THAT'S NOT -- I DON'T

11  THINK IT'S THE SCOPE OF A 30(B)(6) DEPOSITION FOR MATTEL

12  TO TEACH A WITNESS EVERYTHING THAT IT'S DISCOVERED AND

13  THEN KIND OF RUN THAT THROUGH THE SAUSAGE MACHINE AND

14  SAY, "HERE IS THE BREACH OF DUTY."

15         MR. ZELLER:   RIGHT.

16         MR. WICKHAM:   AND IT'S SIMPLE.   I MEAN WE'RE

17  SEEKING TO CONDUCT DEPOSITIONS TO DETERMINE THE FACTUAL

18  UNDERPINNINGS BASED ON MATTEL'S PERSONAL KNOWLEDGE OF

19  THE VARIOUS THINGS THAT ARE THE SUBJECT OF THE

20  P.M.K. NOTICES.   SO THAT'S THE PRINCIPAL OBJECTIVE HERE.

21         MR. ZELLER:   RIGHT.

22         MR. WICKHAM:   IN ADDITION, HOWEVER, TO THE

23  EXTENT THAT A PARTICULAR CORPORATE DESIGNEE IS GOING TO

24  BE TESTIFYING AT TRIAL, WE ALSO WANT TO BE TAKING A

25  FULL-AND-COMPLETE DEPOSITION CONCERNING THE SCOPE OF

191

VOLUME II

EXHIBIT __14__ PAGE __225__

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   THAT DESIGNEE'S INFORMATION, AND, AS A CONSEQUENCE,

2   MATTEL'S INFORMATION ON THE PARTICULAR TOPIC SO THAT WE

3   WON'T BE SURPRISED AT TRIAL.   SO --

4              MR. ZELLER:   YOU SEE, THAT'S -- THE LATTER

5   PART CAUSES SOME ME SOME CONCERN BECAUSE, I MEAN, FIRST

6   OF ALL, IT'S HARD FOR ME TO ENVISION EXACTLY WHAT THAT

7   SCENARIO WOULD BE, AS TO WHY WE WOULD BE HAVING A MATTEL

8   CORPORATE REPRESENTATIVE.   I MEAN PRESUMABLY THOSE SORT

9   OF THINGS, IF THEY'RE GOING TO BE TESTIFIED TO THROUGH A

10  WITNESS, IT IS EITHER GOING TO BE A FACT WITNESS WHO IS,

11  YOU KNOW, EITHER A THIRD PARTY OR SOME STATEMENT THAT

12  WAS MADE IN BRYANT'S DEPOSITION OR SOME OTHER

13  DEPOSITION.

14             MR. JACOBY:   HERE'S AN EXAMPLE OF THAT:

15  SUPPOSE THERE WAS AN E-MAIL FROM BRYANT TO SOMEONE

16  OUTSIDE OF MATTEL WHILE HE WAS WORKING AT MATTEL SAYING,

17  "MATTEL IS WORKING ON THIS GREAT NEW GIZMO.   I THINK YOU

18  GUYS SHOULD MAKE THAT GREAT NEW GIZMO" -- OKAY? -- AND

19  YOU HAD NO IDEA THAT HE DID THAT UNTIL M.G.A. PRODUCED

20  THE E-MAIL --

21             MR. ZELLER:   UNTIL YOU JUST TOLD ME NOW.

22             MR. JACOBY:   -- THERE IS NO SUCH E-MAIL THAT

23  I'M AWARE OF --

24             MR. ZELLER:   I'M JESTING.

25             MR. JACOBY:   -- AND YOU INTEND AT TRIAL TO

192

VOLUME II

EXHIBIT __14__ PAGE __226__

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

## REPORTER'S CERTIFICATE

1

2

3

4          I, JOHN M. TAXTER, C.S.R. NO. 3579,

5    R.P.R., A CERTIFIED SHORTHAND REPORTER IN AND FOR

6    THE STATE OF CALIFORNIA, DO HEREBY CERTIFY:

7          THAT, PRIOR TO BEING EXAMINED, THE WITNESS

8    NAMED IN THE FOREGOING PROCEEDINGS WAS BY ME DULY

9    SWORN TO TESTIFY THE TRUTH, THE WHOLE TRUTH, AND

10   NOTHING BUT THE TRUTH;

11         THAT SAID PROCEEDINGS WERE TAKEN BY ME IN

12   SHORTHAND AT THE TIME AND PLACE HEREIN NAMED AND

13   WERE THEREAFTER TRANSCRIBED INTO TYPEWRITING UNDER

14   MY DIRECTION, SAID TRANSCRIPT BEING A TRUE AND

15   CORRECT TRANSCRIPTION OF MY SHORTHAND NOTES.

16         I FURTHER CERTIFY THAT I HAVE NO INTEREST

17   IN THE OUTCOME OF THIS ACTION.

18

19

20                    APRIL 21, 2005

21                    _John M. Taxter_____

22                    JOHN M. TAXTER
                      C.S.R. NO. 3579, R.P.R.

23

24

25

413

EXHIBIT __14__ PAGE __227__

**Exhibit 15**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
    Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
  Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Mattel, Inc.

9

10          UNITED STATES DISTRICT COURT

11          CENTRAL DISTRICT OF CALIFORNIA

12              EASTERN DIVISION

| | |
|---|---|
| 13  CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| 14        Plaintiff, | Consolidated with Case Nos. CV 04-9059 and CV 05-2727 |
| 15    vs. | Hon. Stephen G. Larson |
| 16  MATTEL, INC., a Delaware corporation, | SUPPLEMENTAL RESPONSES TO MGA'S FIRST SET OF INTERROGATORIES TO MATTEL, INC. |
| 17        Defendant. | |
| 18  AND CONSOLIDATED ACTIONS. | |
| 19 | |

20

21  PROPOUNDING PARTY:    MGA ENTERTAINMENT, INC.

22  RESPONDING PARTY:    MATTEL, INC.

23  SET NO.:         ONE (1)

24

25             **ATTORNEY'S EYES ONLY –**

26         **SUBJECT TO PROTECTIVE ORDER**

27

28

07209/2267105.11

12-10

### Preliminary Statement

Mattel has not yet completed its investigation of the facts relating to this action, has not yet reviewed all documents relating to this action, has not yet interviewed all witnesses in this action, and has yet to receive requested discovery from defendants Carter Bryant and from defendant MGA Entertainment, Inc. ("MGA") with regard to this action.  Consequently, Mattel reserves the right to amend and/or supplement its responses if and when additional facts or documents are discovered.  Additionally, because Mattel's responses are based on facts and documents that Mattel has identified to date, they do not preclude Mattel from later relying on facts or documents discovered or generated pursuant to subsequent investigation or discovery.  Mattel's partial response to any of MGA's First Set of Interrogatories (the "Interrogatories") is not to be construed as a waiver of any of its objections or its right to object to any other Interrogatory or discovery request.

### General Objections

Mattel generally objects to each of the Interrogatories on each and every one of the following grounds, which are incorporated into and made a part of Mattel's response to each and every individual Interrogatory:

1.  Mattel objects to the Interrogatories on the grounds that they seek to impose obligations upon Mattel beyond those imposed by the Federal Rules of Civil Procedure.

2.  Mattel objects to the Interrogatories on the grounds that they call for the disclosure of information subject to the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege, including the privilege against disclosure of the identities and work product of consulting experts.  Such information and documents will not be produced.

3.  Mattel objects to the Interrogatories on the grounds that they seek the disclosure of information or documents that are in the possession, custody and control of independent parties over whom Mattel has no control, including

-2-

SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

EXHIBIT _15_ PAGE _229_

1  without limitation to defendants Carter Bryant and MGA Entertainment Inc.

2  ("MGA"), and seek the disclosure of information or documents that are in the

3  possession, custody and control of defendants or are publicly available and hence

4  equally available to all parties to this litigation.

5      4.    Mattel objects to the Interrogatories on the grounds that they

6  seek information that is neither relevant to the claims or defenses of any party to the

7  pending action nor reasonably calculated to lead to the discovery of admissible

8  evidence.

9      5.    Mattel objects to the Interrogatories on the grounds that they are

10 unduly burdensome and oppressive.

11     6.    Mattel objects to the Interrogatories on the grounds that they

12 seek the disclosure of information or documents in violation of the terms of

13 agreements or protective orders entered into with third parties, or in violation of the

14 privacy, contractual, or other rights of third parties.

15     7.    Mattel objects to the Interrogatories on the grounds that the

16 definition of "Mattel" is overbroad, vague and ambiguous and unduly burdensome.

17 **Specific and General Objections and Supplemental Responses**

18     Each of the following objections and responses to the Interrogatories is

19 expressly made subject to the above Preliminary Statement and General Objections,

20 all of which are incorporated in each of the following objections and responses to

21 specific Interrogatories.

22

23 **INTERROGATORY NO. 1:**

24     State all facts, with particularity, and IDENTIFY all DOCUMENTS

25 that support YOUR contention, if YOU so contend, that YOU have suffered harm as

26 a result of any act or omission of MGA.

27

28

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:

In addition to the general objections stated above, Mattel specifically objects to this Interrogatory on the grounds that it is overbroad, oppressive and harassing, including without limitation that the Interrogatory is not restricted to claims in this suit and thus purports to require disclosure of matters that have no bearing on and are not at issue in this suit. Such matters will not be revealed or addressed. Mattel further objects to this Interrogatory as unreasonably burdensome and overbroad in that it purports to require Mattel to summarize all facts and identify all documents on this subject, including without limitation facts that are known to or in the possession, custody and control of defendants and non-parties, including non-parties associated with defendants. Mattel further objects to this Interrogatory on the grounds that it is vague and ambiguous with regard to the phrase "suffered harm as a result of any act or omission." Mattel further objects to this Interrogatory on the grounds that it calls for the disclosure of information subject to the attorney-client privilege, the attorney work-product doctrine and other applicable privileges. Mattel further objects to this Request on the grounds that it is premature and seeks to circumvent the expert disclosure provisions of the Federal and Local Rules. Mattel continues its factual investigation and currently awaits MGA's compliance with multiple Court Orders compelling MGA to produce documents, to answer Interrogatories and to produce witnesses for deposition which MGA still has not complied with and indeed that the Court has found MGA violated. Mattel also has pending motions to compel against defendants MGA, Bryant, Machado and others associated with defendants, including to compel them to produce documents, to appear for deposition and to answer requests for admissions. In addition, the depositions of certain witnesses, including without limitation Carter Bryant and various MGA representatives, have yet to be completed, and other witnesses, including various MGA representatives such as Gustavo Machado, Ron Brawer, Mariana Trueba, Pablo Vargas, Janine Brisbois,

1  Shirin Salemnia, as well as Veronica Marlow, Margaret Hatch-Leahy and Elise

2  Cloonan, have yet to be produced for deposition.  Furthermore, although MGA's

3  original production in this case regarding the alleged origins and development of

4  Bratz consisted of only a few thousand pages, and only after multiple Court Orders

5  compelling MGA and Bryant to produce their documents, MGA and other

6  Defendants have begun to produced voluminous documents only in recent weeks,

7  including documents that Mattel has been unable to access or review because of

8  technical deficiencies in MGA's production that MGA only recently corrected.

9  Furthermore, despite prior Court Order directing MGA to provide documents in

10  unredacted form, MGA has failed to comply and thus continues to deny Mattel

11  information that the Court has ruled Mattel is entitled to.  The review of MGA's,

12  Bryant's and other Defendants' belated, and still incomplete, productions continues.

13  Mattel reserves the right to supplement this response consistent with <u>Federal Rule of</u>

14  <u>Civil Procedure</u> 26(e).

15         Without waiving the foregoing General and Specific objections, and

16  subject thereto, Mattel responds to this Interrogatory as follows:  Mattel has and

17  continues to suffer harm as a result of the acts and omissions of MGA and other

18  defendants in this action in numerous ways, including those enumerated below.

19         **<u>Defendants' Theft of Bratz from Mattel</u>.**  Carter Bryant is a former

20  Mattel employee who worked as a Mattel product designer during two time periods,

21  first from September 1995 to April 1998, and then from January 4, 1999 to October

22  20, 2000.  Bryant conceived, created, developed, improved and reduced to practice

23  Bratz designs while employed by Mattel as a designer.  Bryant wrongfully

24  concealed his Bratz work from Mattel.  Then, Bryant wrongfully sold Bratz to

25  MGA, and MGA wrongfully purported to acquire Bratz, while Bryant was a Mattel

26  employee.  Moreover, while still working for Mattel, Bryant (1) accepted money

27  from MGA; (2) did work for MGA; (3) used Mattel personnel and resources to

28  benefit himself and help MGA in connection with the design and development of

-5-

SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

EXHIBIT 15 PAGE 232

1   Bratz.  Through all of this, MGA and Larian knew that Bryant was a Mattel

2   employee.  Nonetheless, they encouraged, aided and financed Bryant to develop

3   Bratz, knowing that by performing such work, including design-related work, for his

4   own benefit and/or the benefit of MGA, Bryant would be, and was, in breach of his

5   contractual, statutory and common law duties to Mattel.

6          As the rightful owner of Bratz concepts, designs and properties that

7   Bryant created, conceived, reduced to practice, improved or otherwise worked on

8   pursuant to Bryant's contracts with Mattel, namely the Inventions Agreement and

9   Conflict of Interest Questionnaire, Mattel has and continues to suffer harm and is

10  entitled to damages arising from Bryant's, MGA's and other Defendants' use and

11  theft of those concepts, designs and properties, their infringement of copyrights in

12  connection therewith and their other unlawful conduct.  Bryant, MGA, and other

13  Defendants have infringed Mattel's copyrights in Bratz drawings and works created

14  by Bryant while employed by Mattel by copying and preparing derivative works

15  based on those Bratz works.  The works that infringe Mattel's copyrights and other

16  rights in such works include numerous Bratz dolls and other Bratz products that

17  MGA has released to market.  In fact, MGA's own original copyright registrations

18  for Bratz doll products admit that they are derivatives of Bryant's drawings owned

19  by Mattel.

20          When Bryant started his second term of employment with Mattel,

21  Bryant executed an Employee Confidential Information and Inventions Agreement

22  ("Inventions Agreement").  In the Inventions Agreement, Bryant assigned to Mattel

23  all rights in "inventions," including "designs," that he created during his Mattel

24  employment to the fullest extent of the law.  As Bryant's counsel has acknowledged,

25  "[t]he nature of the assignment here is that it is a broad based assignment of all

26  inventions during their employment; all things that were conceived and practiced."

27  Accordingly, under the Inventions Agreement, Mattel owns, among other things, all

28  doll and toy ideas, concepts, designs, works and other matters that were conceived,

07209/2267105.11

-6-

SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

EXHIBIT 15 PAGE 233

1   created or reduced to pratice by Bryant during the term of his Mattel employment.

2   In addition, Bryant promised in the Inventions Agreement that, during his Mattel

3   employment, he would not "engage in any employment or business other than for

4   [Mattel], or invest in or assist (in any manner) any business competitive with the

5   business or future business plans of [Mattel]" without Mattel's express written

6   consent. Similarly, in a Conflict of Interest Questionnaire Bryant signed at the same

7   time as the Inventions Agreement, Bryant certified that, other than as disclosed, he

8   had not worked for any competitor of Mattel and had not engaged in any business

9   transaction involving a Mattel competitor that could be construed as a conflict of

10   interest in the prior year. Bryant promised to immediately notify his supervisor of

11   any change in his situation that would cause him to change that certification, yet

12   never disclosed his work with MGA. To the contrary, as established by deposition

13   testimony and other evidence, Bryant misled others at Mattel upon his departure.

14   Bryant understood what the Conflict Questionnaire required because, among other

15   things, he disclosed on it the freelance work he had performed while in Missouri for

16   Ashton-Drake, but never disclosed his claimed work on Bratz in 1998. Finally,

17   Bryant promised in the Inventions Agreement not to disclose or misuse Mattel's

18   proprietary or confidential information. That obligation continues to this day, and

19   continues to be violated.

20          During his Mattel employment, Bryant knowingly entered into a

21   contract with MGA to assign the rights to Bratz. In late November 2003, Mattel

22   first obtained a copy of a contract between Bryant and MGA, a Mattel competitor,

23   dated as of September 18, 2000 — a time when Bryant was still employed by

24   Mattel. That contract required Bryant to provide design services on Bratz, a line of

25   dolls created by Bryant and marketed by MGA, to MGA on a "top priority" basis.

26   Obviously, this agreement squarely conflicted with Bryant's preexisting obligations

27   to Mattel. It also purported to grant MGA ownership of works produced by Bryant

28   both before and after the agreement's effective date, in further contravention of

07209/2267105.11

-7-

EXHIBIT 15 PAGE 234

1 | Bryant's obligations to Mattel under the Inventions Agreement.  Bryant knew that
2 | these actions were in direct violation of his obligations to Mattel, as did MGA.
3 |        Moreover, Bryant misrepresented that he was leaving his employment
4 | with Mattel to pursue non-competitive interests.  At the time that Bryant made those
5 | misrepresentations, he knew the statements were false.  He also knew at the time
6 | that he made those misrepresentations that he had engaged in business activities that
7 | were competitive with Mattel and planned to continue to do so, which he failed to
8 | dislose.
9 |        Bryant's last day of employment with Mattel was October 20, 2000.  At
10 | that time, he signed a further agreement, called the "Proprietary Information
11 | Checkout."  In it, Bryant acknowledged that "he has agreed to transfer all inventions
12 | made or conceived during the period of his employment to Mattel," and that:
13 |        My interest in (a) any and all inventions . . . which I have made
14 |        or conceived . . . and in (b) any . . . designs, trademarks,
15 |        copyright subject matter [or] . . . artistic works which I have
16 |        made or conceived . . . during the period of my employment
17 |        which relate or are applicable directly or indirectly to any phase
18 |        of [Mattel's] business shall be the exclusive property of [Mattel].
19 | Bryant executed the Proprietary Information Checkout notwithstanding his
20 | execution of the MGA/Bratz agreement purporting to convey Bryant's Bratz works
21 | to MGA one month earlier.  Nor did Bryant otherwise disclose to Mattel his MGA
22 | agreement or work.  To the contrary, Bryant concealed from Mattel that he was
23 | going to a competitor and explicitly told others at Mattel that he was going to do
24 | "non-competitive" pursuits.  Bryant knew at the time that those representations were
25 | false and made those false statements to conceal from Mattel the facts that he was
26 | already working with MGA and that he had contracted with MGA to purportedly
27 | assign Bratz works to MGA and to provide design and development services to
28 | MGA, a Mattel competitor.

EXHIBIT _15_ PAGE _235_

1    As a result of the efforts of Bryant and other Mattel employees working

2 on Bratz (done without Mattel's knowledge until the time Bryant admitted it at

3 deposition in 2004), the Bratz dolls had been designed and were far along in

4 development during the time that Bryant was employed by Mattel and prior to the

5 time that Bryant left Mattel on October 20, 2000. Not only did Bryant create and

6 develop designs for the dolls as well as other aspects of the products such as their

7 fashion accessories during the time he was employed by Mattel, but MGA showed

8 Bratz prototypes and/or visual representations of Bratz to numerous third parties,

9 including without limitation retailers, no later than November 2000, less than three

10 weeks after Bryant left Mattel. Bryant, Larian and others at MGA arranged these

11 presentations while Bryant was still employed by Mattel. Bryant and MGA

12 employees also repeatedly and continuously communicated with employees of

13 MGA Entertainment (HK) Limited regarding the design and manufacturing of

14 Bratz. Bratz also were shown to retailers at the Hong Kong Toy Fair in January

15 2001 and very soon thereafter at the New York Toy Fair. The Bratz dolls which had

16 been created during the time of Bryant's employment by Mattel, and based on

17 Bryant's concepts, designs, three-dimensional items and other works, were very

18 similar to the dolls as released, which was possible only because of Bryant's work

19 on Bratz with MGA during his Mattel employment, using Mattel resources.

20    Evidence Mattel has been able to obtain thus far has established that

21 Bryant worked for his own and MGA's benefit during his Mattel employment, and

22 did so using Mattel resources. First, Bryant admitted at deposition, and documents

23 confirm, that he worked and aided MGA during the term of his Mattel employment

24 without Mattel's consent or knowledge, although further showing his guilty

25 knowledge he sought to minimize and conceal the time period and extent of his aid

26 to and work with MGA. At deposition, Bryant further admitted, and documents

27 confirm, among other things, that: (1) he worked on his Bratz drawings while

28 employed by Mattel and showed them to MGA while employed by Mattel; (2) he

-9-

SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

EXHIBIT *15* PAGE *236*

1 | used Mattel employees and materials to prepare a three-dimensional doll prototype
2 | for his pitch to MGA — a pitch he made while employed by Mattel; (3) he
3 | performed development-related work on Bratz while employed by Mattel; (4) he
4 | worked on an ostensibly separate doll called "Angel" for MGA while employed by
5 | Mattel; (5) he targeted Mattel vendors and engaged them to start their work on Bratz
6 | before he left Mattel, using Mattel resources; (5) he used Mattel personnel and other
7 | Mattel resources to work on the Bratz project during his Mattel employment,
8 | including without limitation by identifying Mattel vendors who Bryant knew as a
9 | consequence of his Mattel employment to work on the project and enlisting them to
10 | work on the Bratz project during the term of his Mattel employment; and (6) he
11 | received monetary payments and other benefits from MGA during the term of his
12 | Mattel employment, at least some of which Bryant and MGA sought to conceal in
13 | this litigation. MGA and Isaac Larian, MGA's CEO, were aware when Bryant first
14 | met with them that Bryant was still employed at Mattel and furthermore were aware
15 | of Bryant's obligations to Mattel. Both Bryant and MGA benefitted as a
16 | consequence of his aid and assistance to and work with MGA during the term of his
17 | Mattel employment.

18 |       Other evidence adduced to date also shows, among other things, that:
19 | (1) Contrary to Bryant's testimony, Bryant created a key design drawing that was the
20 | basis for three-dimensional Bratz dolls while employed by Mattel. Bryant testified
21 | at deposition that he created this drawing in November 2000, after he had left
22 | Mattel. However, Steve Linker, a third-party vendor working with MGA, testified
23 | that he received that design drawing (as well as other Bratz development
24 | documents) from MGA at a meeting held *before* Bryant left Mattel. (2) Bryant
25 | created Bratz designs that bear an April 2000 fax header date, six months before he
26 | left Mattel; (3) Contrary to Bryant's testimony, Bryant had faces of three-
27 | dimensional Bratz dolls painted as of June 2000 (*i.e.,* some five months before he
28 | left Mattel). Anna Rhee, a third party vendor also working for MGA, has testified

1  that she was asked by Bryant and paid by MGA to paint Bratz doll heads in June

2  2000. (4) Bratz design drawings produced by defendants with alleged "8/1998"

3  creation dates (*i.e.*, purportedly when Bryant was not employed by Mattel) did not

4  bear those dates as of October 2000, and thus the dates were added to the drawings

5  produced by defendants *post hoc.* These include drawings registered by MGA with

6  the Copyright Office which bear false '8/1998' creation dates. (5) According to

7  MGA's own emails, Bryant worked on Bratz with MGA for at least 4 hours per day

8  starting weeks before he left Mattel. (6) One vendor alone, Veronica Marlow, billed

9  for 169 hours of development services on Bratz before Bryant left Mattel. (7)

10  While he was working for Mattel, Bryant contacted vendors for his own and MGA's

11  benefit, including but not limited to, vendors in Hong Kong for doll hair for Bratz

12  and admitted to them that he was working with MGA.

13          Other witnesses who have testified in the case have provided testimony

14  revealing that Bryant aided and worked with MGA during his Mattel employment.

15  Bryant introduced Ms. Rhee to MGA (which is undisputed--Bryant and Ms. Rhee

16  agree that she had no involvement with MGA prior to Bryant's introduction). As

17  stated above, Anna Rhee was asked by Bryant and paid by MGA to paint Bratz doll

18  heads in June 2000. Ms. Rhee produced approximately twenty invoices for work

19  that she performed on Bryant-related MGA projects in the year 2000. These

20  invoices also reveal that Ms. Rhee performed work with Bryant and MGA on at

21  least seven separate occasions before Bryant's departure from Mattel--including one

22  invoice that dates to June 12, 2000, well before Bryant claimed at deposition to have

23  even heard of MGA.

24          After Ms. Rhee produced these documents, MGA then made a

25  supplemental production of certain internal documents relating to work performed

26  by Ms. Rhee during the June-October 2000 time period. These belatedly produced

27  MGA records purport to show that Ms. Rhee's work during that time period related

28  to a project known as "Angel" and/or "Prayer Angels." At her deposition, however,

07209/2267105.11

-11-

SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

EXHIBIT *15* PAGE *238*