1  MGA's and other defendants' theft of Mattel's intellectual property and trade secrets

2  in the United States and around the world, and MGA's business practices.

3      Andrea Ramirez has knowledge and information regarding, among

4  other things, MGA's access to Mattel's intellectual property and trade secrets,

5  MGA's and other defendants' theft of Mattel's intellectual property and trade secrets

6  in the United States and around the world, and MGA's business practices.

7      Erika Rangel has knowledge and information regarding, among other

8  things, MGA's access to Mattel's intellectual property and trade secrets, MGA's and

9  other defendants' theft of Mattel's intellectual property and trade secrets in the

10  United States and around the world, and MGA's business practices.

11      Lee Ratleff has knowledge and information regarding, among other

12  things, MGA's access to Mattel's intellectual property and trade secrets, MGA's and

13  other defendants' theft of Mattel's intellectual property and trade secrets in the

14  United States and around the world, and MGA's business practices.

15      Wendy Reed has knowledge and information regarding, among other

16  things, the design and development of Bratz, Bryant's work with or for MGA during

17  his Mattel employment, and MGA's business practices.

18      Scot Anthony Reyes has knowledge and information regarding, among

19  other things, MGA's access to Mattel's intellectual property and trade secrets,

20  MGA's and other defendants' theft of Mattel's intellectual property and trade secrets

21  in the United States and around the world, and MGA's business practices.

22      Judy Rich has knowledge and information regarding, among other

23  things, the design and development of Bratz, Bryant's work with or for MGA during

24  his Mattel employment, and MGA's business practices.

25      Ian Richter has knowledge and information regarding, among other

26  things, the development and ownership of intellectual property at issue.

27      Alejandro Gurza Romay has knowledge and information regarding,

28  among other things, MGA's access to Mattel's intellectual property and trade secrets,

-92-

SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

EXHIBIT _15_ PAGE _319_

1   MGA's and other defendants' theft of Mattel's intellectual property and trade secrets

2   in the United States and around the world, and MGA's business practices.

3   　　　　Desiree E. Ronquillo has knowledge and information regarding, among

4   other things, MGA's access to Mattel's intellectual property and trade secrets,

5   MGA's and other defendants' theft of Mattel's intellectual property and trade secrets

6   in the United States and around the world, and MGA's business practices.

7   　　　　David Rosenbaum and/or Law Offices of David S. Rosenbaum has

8   knowledge and information regarding, among other things, Bryant's breach of his

9   contracts and obligations to Mattel, and Bryant's work with or for MGA during his

10  Mattel employment.

11  　　　　Lon P. Ross has knowledge and information regarding, among other

12  things, MGA's access to Mattel's intellectual property and trade secrets, MGA's and

13  other defendants' theft of Mattel's intellectual property and trade secrets in the

14  United States and around the world, and MGA's business practices.

15  　　　　Arnold Rubin and/or Toy Industry Association, Inc. has knowledge and

16  information regarding, among other things, Toy of the Year and the dealings of

17  Mattel and MGA with TIA.

18  　　　　Shirin Salemnia has knowledge and information regarding, among

19  other things, MGA's access to Mattel's intellectual property and trade secrets, and

20  MGA's business practices.

21  　　　　Chuck Scothon has knowledge and information regarding, among other

22  things, Mattel's business operations and the development and ownership of

23  intellectual property at issue.

24  　　　　Harvey Scott has knowledge and information regarding, among other

25  things, MGA's access to Mattel's intellectual property and trade secrets, MGA's and

26  other defendants' theft of Mattel's intellectual property and trade secrets in the

27  United States and around the world, and MGA's business practices.

28

07209/2267105.11

-93-

SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

EXHIBIT _15_ PAGE _320_

1    Mark Spencer and/or First Advantage Litigation Consulting has
2  knowledge and information regarding, among other things, MGA's access to
3  Mattel's intellectual property and trade secrets, and MGA's and other defendants'
4  theft of Mattel's intellectual property and trade secrets in the United States and
5  around the world.

6    Holly Aileen Stinnett has knowledge and information regarding, among
7  other things, MGA's access to Mattel's intellectual property and trade secrets,
8  MGA's and other defendants' theft of Mattel's intellectual property and trade secrets
9  in the United States and around the world, and MGA's business practices.

10    Jier Su has knowledge and information regarding, among other things,
11  MGA's access to Mattel's intellectual property and trade secrets, MGA's and other
12  defendants' theft of Mattel's intellectual property and trade secrets in the United
13  States and around the world, and MGA's business practices.

14    Maureen Tafoya has knowledge and information regarding, among
15  other things, MGA's access to Mattel's intellectual property and trade secrets,
16  MGA's.

17    Gail Tamae has knowledge and information regarding, among other
18  things, the development and ownership of intellectual property at issue.

19    Lisa Tawil has knowledge and information regarding, among other
20  things, MGA's access to Mattel's intellectual property and trade secrets, MGA's and
21  other defendants' theft of Mattel's intellectual property and trade secrets in the
22  United States and around the world, and MGA's business practices.

23    Marla Reynolds Thompson has knowledge and information regarding,
24  among other things, MGA's access to Mattel's intellectual property and trade secrets.

25    Michele Thompson has knowledge and information regarding, among
26  other things, MGA's access to Mattel's intellectual property and trade secrets,
27  MGA's and other defendants' theft of Mattel's intellectual property and trade secrets
28  in the United States and around the world, and MGA's business practices.

SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

EXHIBIT _15_ PAGE _321_

1   Ben Ton has knowledge and information regarding, among other
2   things, the design and development of Bratz, Bryant's work with or for MGA during
3   his Mattel employment and MGA business practices.
4   Vivianne Waisman has knowledge and information regarding, among
5   other things, MGA's access to Mattel's intellectual property and trade secrets.
6   Simon Waldron has knowledge and information regarding, among
7   other things, the development and ownership of intellectual property at issue.
8   Anne Wang and/or Christie Parker Hale LLP has knowledge and
9   information regarding, among other things, Bryant's breach of his contracts and
10  obligations to Mattel and Bryant's work with or for MGA during his Mattel
11  employment.
12  Chang-Chin Wang has knowledge and information regarding, among
13  other things, MGA's access to Mattel's intellectual property and trade secrets,
14  MGA's and other defendants' theft of Mattel's intellectual property and trade secrets
15  in the United States and around the world, and MGA's business practices.
16  Dawn Whitaker has knowledge and information regarding, among
17  other things, MGA's access to Mattel's intellectual property and trade secrets,
18  MGA's and other defendants' theft of Mattel's intellectual property and trade secrets
19  in the United States and around the world, and MGA's business practices.
20  Therese Wilbur has knowledge and information regarding, among other
21  things, MGA's access to Mattel's intellectual property and trade secrets.
22  Jenny M.L. Wong has knowledge and information regarding, among
23  other things, MGA's access to Mattel's intellectual property and trade secrets,
24  MGA's and other defendants' theft of Mattel's intellectual property and trade secrets
25  in the United States and around the world, and MGA's business practices.
26  Tricia Wong has knowledge and information regarding, among other
27  things, the development and ownership of intellectual property at issue.
28

07209/2267105.11

-95-

1    Lissa Freed has knowledge and information regarding, among other
2 things, Mattel's relevant contracts and the other matters testified to at her deposition.
3    MGA, including persons who MGA and the other defendants' have
4 failed and refused to disclose and/or refused to produce for deposition, has
5 knowledge and information regarding, among other things, Bryant's breach of his
6 contracts and obligations to Mattel, the chronology, timing, creation, and
7 development of Bratz, Bryant's work with or for MGA during his Mattel
8 employment, MGA's complicity in the theft of Bratz, Bryant and MGA's
9 concealment of their misconduct, MGA's and other defendants' theft of Mattel's
10 intellectual property and trade secrets in the United States and around the world, and
11 MGA's business practices.
12    MGA Hong Kong, including persons who MGA and the other
13 defendants' have failed and refused to disclose and/or refused to produce for
14 deposition, has knowledge and information regarding, among other things, Bryant's
15 breach of his contracts and obligations to Mattel, the chronology, timing, creation,
16 and development of Bratz, Bryant's work with or for MGA during his Mattel
17 employment, MGA's complicity in the theft of Bratz, Bryant and MGA's
18 concealment of their misconduct, MGA's and other defendants' theft of Mattel's
19 intellectual property and trade secrets in the United States and around the world, and
20 MGA's business practices.
21    MGA de Mexico, including persons who MGA and the other
22 defendants' have failed and refused to disclose and/or refused to produce for
23 deposition, has knowledge and information regarding, among other things, MGA's
24 and other defendants' theft of Mattel's intellectual property and trade secrets in the
25 United States and around the world, Bryant and MGA's concealment of their
26 misconduct, and MGA de Mexico's business practices.
27    By way of further answer, pursuant to <u>Federal Rule of Civil Procedure</u>
28 33(d), Mattel has produced responsive, non-privileged documents and tangible items

07209/2267105.11

-96-
SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

EXHIBIT _15_ PAGE _323_

1  in its possession, custody or control from which the answer to this Interrogatory may

2  be derived, including the transcripts and documents identified in response to

3  Interrogatory No. 1 above.

4          By way of further answer, this topic may be the subject of expert

5  testimony, which will be disclosed in the manner, and at the time, required for

6  expert disclosures pursuant to the Federal and Local Rules.

7          Mattel continues its factual investigation and currently has outstanding

8  discovery requests to Bryant and to MGA, as well as motions to compel Bryant and

9  MGA to disclose information relevant to this subject.  Mattel reserves the right to

10  supplement this response and, consistent with its obligations under Federal Rule of

11  Civil Procedure 26(e), Mattel will supplement this response if Mattel receives

12  additional responsive information.

13

14  **INTERROGATORY NO. 3:**

15          State, with particularity, the nature, amount, cause and calculation of

16  every item of YOUR alleged damages, including, without limitation, general, actual

17  and statutory damages, restitution, disgorgement of unlawful profits, lost profits, lost

18  payments, lost revenues, lost monies, lost royalties or license fees, reputational

19  harm, lost relationships, lost business opportunities, interest, attorneys' fees, costs,

20  expenses, and any other form of injury or damage or quantifiable remedy that YOU

21  seek to recover in this lawsuit.

22

23  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

24          In addition to the general objections stated above, Mattel specifically

25  objects to this Interrogatory on the grounds that it calls for the disclosure of

26  information subject to the attorney-client privilege, the attorney work-product

27  doctrine and other applicable privileges.  Mattel further objects to this Interrogatory

28  as unreasonably burdensome and overbroad in that it purports to require Mattel to

SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

EXHIBIT 15 PAGE 324

J7209/2267105.11

1 summarize all facts on this subject, including without limitation facts that are known

2 to or in the possession, custody and control of defendants and non-parties, including

3 non-parties associated with defendants.  Mattel further objects to this Request on the

4 grounds that it is premature and seeks to circumvent the expert disclosure provisions

5 of the Federal and Local Rules.   In addition, Bryant, MGA, Larian and Machado

6 refused to produce, and in some instances continue to refuse to produce, or

7 otherwise have failed to produced, financial information, products and other relevant

8 information and thus have materially interfered with Mattel's ability to ascertain the

9 amount, nature or source of its damages.  Mattel further objects to this Interrogatory

10 on the grounds that it is premature in that it purports to seek to all facts relating to

11 this subject at the outset of discovery in this action and also seeks to circumvent the

12 expert disclosure provisions of the Federal and Local Rules.

13          Subject to and without waiving the foregoing general and specific

14 objections, Mattel responds as follows:

15          Mattel has not yet computed the exact amount of its damages because

16 the facts necessary to make those calculations are uniquely in the possession of

17 Bryant, MGA, Larian, Machado and third parties who refused to produce, and in

18 some instances continue to refuse to produce, or otherwise have not yet produced

19 that information in discovery, including information that is currently being sought

20 by way of pending motions to compel.  Once Mattel receives the necessary

21 information, it will compute the exact amount of its damages it suffered and

22 continues to suffer which will include, at a minimum and without limitation, the

23 following: (a) monies paid to Bryant and Machado by any Mattel competitor,

24 including without limitation, counter-defendant MGA, during their periods of

25 disloyalty; (b) monies paid to Bryant and Machado by any Mattel competitor,

26 including without limitation, counter-defendant MGA, as a result of Bryant's and

27 Machado's misconduct; (c) disgorgement of any benefit, or its value, or its proceeds,

28 derived or obtained by Bryant and Machado as a result of their disloyalty, their

1  breach of contract and other misconduct or as a result of work that they performed

2  for any Mattel competitor, including without limitation counter-defendant MGA,

3  during their Mattel employment; (d) the value of Mattel assets, resources,

4  opportunities and/or property, including intellectual property, that Bryant and

5  Machado converted, diverted from Mattel or otherwise improperly used or usurped;

6  (e) the value of confidential, proprietary or trade secret information and intellectual

7  property owned by Mattel that Bryant or Machado provided to any Mattel

8  competitor, including without limitation counter-defendant MGA, in violation of

9  their obligations to Mattel; (f) compensation paid by Mattel to Bryant and Machado

10  during Bryant's and Machado's periods of disloyalty; (g) disgorgement of any profits

11  or other benefit, or its value, or its proceeds, derived or obtained by counter-

12  defendants as a result of their misconduct including, without limitation, all profits

13  obtained by counter-defendants that are attributable to the infringement of Mattel's

14  copyrights, their breaches of duty to Mattel or other unlawful or improper conduct;

15  (h) the lost profits that Mattel suffered as a result of counter-defendants' misconduct;

16  (i) damages for the actual loss caused by defendants' misappropriation of Mattel's

17  trade secrets and/or the value of the Mattel trade secrets misappropriated by counter-

18  defendants; (j) restitution of all amounts received by counter-defendants as a result

19  of their misconduct; (k) all unjust enrichment obtained by counter-defendants as a

20  result of their misconduct; (l) damages from Larian's misrepresentations and

21  disparagement of Mattel's products; (m) a reasonable royalty for Mattel trade secrets

22  misappropriated by counter-defendants, (n) exemplary damages to which Mattel is

23  entitled as a result of counter-defendants' oppressive, fraudulent and malicious

24  conduct; (o) any profits and the value of any other benefits that others acting in

25  concert with counter-defendants derived or obtained as a result of counter-

26  defendants' misconduct;  (p) costs and attorneys' fees; and (q) all other damages and

27  relief sought in Mattel's Complaint.

28

EXHIBIT __15__ PAGE _326_

SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

1      By way of further answer, pursuant to <u>Federal Rule of Civil Procedure</u>

2  33(d), Mattel has produced responsive, non-privileged documents and tangible items

3  in its possession, custody or control from which the answer to this Interrogatory may

4  be derived, including the transcripts and documents identified in response to

5  Interrogatory No. 1 above.

6      By way of further answer, this topic may be the subject of expert

7  testimony, which will be disclosed in the manner, and at the time, required for

8  expert disclosures pursuant to the <u>Federal</u> and <u>Local Rules</u>.

9      Mattel continues its factual investigation and currently has outstanding

10  discovery requests to Bryant and to MGA, as well as motions to compel Bryant and

11  MGA to disclose information relevant to this subject.  Mattel reserves the right to

12  supplement this response and, consistent with its obligations under <u>Federal Rule of</u>

13  <u>Civil Procedure</u> 26(e), Mattel will supplement this response if Mattel receives

14  additional responsive information.

15

16  **<u>INTERROGATORY NO. 4</u>:**

17      State all facts, with particularity, and IDENTIFY all DOCUMENTS

18  that support YOUR contention, if YOU so contend, that YOU are entitled to

19  exemplary damages, attorneys' fees and costs.

20

21  **<u>SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4</u>:**

22      In addition to the general objections stated above, Mattel specifically

23  objects to this Interrogatory on the grounds that it is overbroad, oppressive and

24  harassing, including without limitation that the Interrogatory is not restricted to

25  claims in this suit and thus purports to require disclosure of matters that have no

26  bearing on and are not at issue in this suit.  Such matters will not be revealed or

27  addressed.  Mattel further objects to this Interrogatory on the grounds that it calls for

28  the disclosure of information subject to the attorney-client privilege, the attorney

1  work-product doctrine and other applicable privileges. Mattel further objects to this

2  Interrogatory as unreasonably burdensome and overbroad in that it purports to

3  require Mattel to summarize all facts on this subject, including without limitation

4  facts that are known to or in the possession, custody and control of defendants and

5  non-parties, including non-parties associated with defendants. Mattel further objects

6  to this Request on the grounds that it is premature and seeks to circumvent the

7  expert disclosure provisions of the Federal and Local Rules. Mattel continues its

8  factual investigation and currently has outstanding discovery requests to Bryant,

9  MGA and other Defendants relevant to this Interrogatory, including as to matters

10  that are the subject of pending motions to compel. Mattel further objects that a

11  contention interrogatory is not the proper means to determine the basis for Mattel's

12  claims for attorney fees and costs which may be awarded post-verdict. Mattel

13  continues its factual investigation and currently awaits MGA's compliance with

14  multiple Court Orders compelling MGA to produce documents, to answer

15  Interrogatories and to produce witnesses for deposition which MGA still has not

16  complied with and indeed that the Court has found MGA violated. Mattel also has

17  pending motions to compel against defendants MGA, Bryant, Machado and others

18  associated with defendants, including to compel them to produce documents, to

19  appear for deposition and to answer requests for admissions. In addition, the

20  depositions of certain witnesses, including without limitation Carter Bryant and

21  various MGA representatives, have yet to be completed, and other witnesses,

22  including various MGA representatives such as Gustavo Machado, Ron Brawer,

23  Mariana Trueba, Pablo Vargas, Janine Brisbois, Shirin Salemnia, as well as

24  Veronica Marlow, Margaret Hatch-Leahy and Elise Cloonan, have yet to be

25  produced for deposition. Furthermore, although MGA's original production in this

26  case regarding the alleged origins and development of Bratz consisted of only a few

27  thousand pages, and only after multiple Court Orders compelling MGA and Bryant

28  to produce their documents, MGA and other Defendants have begun to produced

1  voluminous documents only in recent weeks, including documents that Mattel has

2  been unable to access or review because of technical deficiencies in MGA's

3  production that MGA only recently corrected.  Furthermore, despite prior Court

4  Order directing MGA to provide documents in unredacted form, MGA has failed to

5  comply and thus continues to deny Mattel information that the Court has ruled

6  Mattel is entitled to.  The review of MGA's, Bryant's and other Defendants' belated,

7  and still incomplete, productions continues.  Mattel reserves the right to supplement

8  this response consistent with <u>Federal Rule of Civil Procedure</u> 26(e).

9          Without waiving the foregoing General and Specific objections, and

10  subject thereto, Mattel responds to this interrogatory as follows:

11          Exemplary damages are available for the breach of an obligation not

12  arising from contract, where it is proven by clear and convincing evidence that the

13  defendant has been guilty of oppression, fraud, or malice, pursuant to <u>California</u>

14  <u>Civil Code</u> § 3294.  As a result of defendants' oppression, fraud and malice, Mattel

15  is entitled to exemplary damages in connection with many of its claims and

16  counterclaims.  Mattel further contends that it is entitled to exemplary damages for

17  all the reasons set forth in Mattel's Supplemental Response to Interrogatory No. 1

18  and Mattel's Supplemental Response to Interrogatory No. 2, including without

19  limitation, the following:

20          As alleged in the Complaint, Carter Bryant breached obligations to

21  Mattel not arising from contract, including without limitation by knowingly aiding,

22  assisting and working with a Mattel competitor during the term of his Mattel

23  employment.  Carter Bryant conceived, created, and developed Bratz designs while

24  employed by Mattel as a designer.  Bryant intentionally breached his obligations to

25  Mattel by knowingly aiding, assisting and working with a Mattel competitor, MGA,

26  during the term of his Mattel employment.  Bryant wrongfully concealed his Bratz

27  work from Mattel and wrongfully sold Bratz to MGA while he was a Mattel

28  employee.  Moreover, while still working for Mattel he (1) accepted money from

EXHIBIT _15_ PAGE _329_

1  MGA; (2) did work for MGA; (3) used Mattel personnel and resources for his own

2  and MGA's benefit, including without limitation to pitch, design and develop Bratz.

3  MGA and Isaac Larian knew that Bryant was a Mattel employee, but nonetheless

4  knowingly and intentionally encouraged, aided and financed Bryant to develop

5  Bratz, knowing that by performing such work, including design-related work, for his

6  own benefit and/or the benefit of MGA, Bryant would be, and was, in breach of his

7  contractual, statutory and common law duties to Mattel.

8          Bryant, MGA, and other Defendants have knowingly and intentionally

9  infringed Mattel's copyrights in Bratz drawings and works created by Bryant while

10 employed by Mattel by copying and preparing derivative works based on those

11 Bratz works.

12         During his Mattel employment, Bryant knowingly entered into a

13 contract with a Mattel competitor, MGA. As Bryant was aware, his agreement with

14 MGA, dated as of September 18, 2000, squarely conflicted with Bryant's preexisting

15 obligations to Mattel. It also purported to grant MGA ownership of works produced

16 by Bryant both before and after the agreement's effective date, in further

17 contravention of Bryant's obligations to Mattel under the Inventions Agreement.

18 Bryant knew that his actions were in direct violation of his obligations to Mattel.

19         Moreover, Bryant misrepresented that he was leaving his employment

20 with Mattel to pursue non-competitive business interests as set forth above. At the

21 time that Bryant made those misrepresentations, he knew that the statements were

22 false. He also knew at the time that he made the misrepresentations that he had

23 engaged in business activities that were competitive with Mattel, which he failed to

24 disclose. Rather, Bryant falsely told his co-workers that he was going to leave

25 Mattel for "non-competitive" pursuits. Bryant knew at the time that those

26 representations were false and made those false statements to conceal from Mattel

27 the facts that Bryant was already working with and for MGA and that he had

28

**-103-**

SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

EXHIBIT _15_ PAGE _330_

1  contracted with MGA to assign Bratz works to MGA and to provide design and

2  development services to MGA, a Mattel competitor.

3          Further, as set forth above, Bryant knowingly and intentionally worked

4  for his own and MGA's benefit during his Mattel employment, and did so using

5  Mattel resources. Moreover, Bryant and MGA have concealed and intentionally

6  spoliated evidence in an effort to conceal the true nature, timing and extent of their

7  unlawful behavior. Showing their guilty knowledge and further harming Mattel,

8  Bryant and MGA attempted to conceal their unlawful conduct from Mattel for as

9  long as possible, hiding that Bryant developed Bratz while working for Mattel,

10 among other things. Thus, not only did Bryant mislead his supervisor as noted

11 above, but evidence revealed in discovery to date also shows that: (1) MGA's CEO,

12 Isaac Larian, ordered former MGA executive, Victoria O'Connor, to redact "Barbie

13 Collectibles" from the faxed version of Bryant's Bratz agreement with MGA to

14 conceal that Bryant had sent the contract from Mattel's Design Center; (2) While he

15 was still a Mattel employee, Bryant sent a fax to an MGA attorney to provide

16 information about his Mattel employment to MGA. In the fax, Bryant advised

17 MGA, "I am unable to look into this too much further with our [i.e., Mattel's]

18 Human Resources director without risking suspicion"; and (3) MGA, Larian and

19 Bryant altered numerous original Bratz drawings created by Bryant by adding false

20 and misleading date notations of "8/1998" and "© 8/1998" to the drawings even

21 though the drawings were not created in August 1998.

22          To further conceal their unlawful conduct from Mattel, MGA and Isaac

23 Larian knowingly and intentionally made conflicting and false claims regarding the

24 origins and creation of Bratz -- as more fully explained in Mattel's Supplemental

25 Respose to Interrogatory No. 1. Additionally, as more fully explained in Mattel's

26 Supplemental Response to Interrogatory No. 1, Bryant has intentionally concealed

27 highly relevant information and destroyed evidence that go to the heart of Mattel's

28

07209/2267105.11

EXHIBIT _15_ PAGE _331_

-104-

SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

1  claims by installing and using a program called "Evidence Eliminator" on his

2  desktop computer.

3         As more fully explained in Mattel's Supplemental Respose to

4  Interrogatory No. 1, MGA knowingly and intentionally stole not just Mattel's

5  property, such as Bratz designs, prototypes and related materials, but also a vast

6  array of trade secrets and other confidential information that comprise Mattel's

7  intellectual infrastructure.  MGA has intentionally engaged in a course of conduct

8  designed to systematically steal Mattel's trade secrets.  By encouraging Mattel

9  employees to join MGA and steal Mattel's confidential information on their way out,

10  MGA has unlawfully obtained valuable trade secrets relating to Mattel's business in

11  the United States and worldwide.  MGA has used the misappropriated confidential

12  and proprietary information taken from Mattel for its own benefit and commercial

13  gain, and the detriment of Mattel.  Moreover, many of the MGA product attributes

14  allegedly imitated by Mattel were in fact first conceived by Mattel and utilized by

15  MGA only after the trade secret ideas were stolen from Mattel by MGA.  Further, as

16  more fully explained in Mattel's Supplemental Respose to Interrogatory No. 1,

17  MGA and Larian, in their efforts to compete unfairly with Mattel, have knowingly

18  made false representations about Mattel and Mattel products, among other subjects.

19         By way of further answer, pursuant to Federal Rule of Civil Procedure

20  33(d), Mattel has produced responsive, non-privileged documents and tangible items

21  in its possession, custody or control from which the answer to this Interrogatory may

22  be derived, including the transcripts and documents identified in response to

23  Interrogatory No. 1 above.

24         By way of further answer, this topic may be the subject of expert

25  testimony, which will be disclosed in the manner, and at the time, required for

26  expert disclosures pursuant to the Federal and Local Rules.

27         Mattel continues its factual investigation and currently has outstanding

28  discovery requests to Bryant and to MGA, as well as motions to compel Bryant and

1 | MGA to disclose information relevant to this subject. Mattel reserves the right to
2 | supplement this response and, consistent with its obligations under Federal Rule of
3 | Civil Procedure 26(e), Mattel will supplement this response if Mattel receives
4 | additional responsive information.

5 |

6 | **INTERROGATORY NO. 5:**

7 | State all facts, with particularity, and IDENTIFY all DOCUMENTS

8 | that YOU contend prove, directly or circumstantially, that MGA copied YOUR

9 | PROPERTY, including, without limitation, "Toon Teens".

10 |

11 | **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

12 | In addition to the general objections stated above, Mattel specifically

13 | objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome,

14 | oppressive and harassing, including without limitation that the Interrogatory is not

15 | restricted to claims in this suit and thus purports to require disclosure of matters that

16 | have no bearing on and are not at issue in this suit. Such matters will not be

17 | revealed or addressed. Mattel further objects to this Interrogatory as unreasonably

18 | burdensome and overbroad in that it purports to require Mattel to identify all facts

19 | and documents relating to this subject. Mattel further objects to this interrogatory

20 | on the grounds that it is vague and ambiguous with regard to the phrase "YOUR

21 | PROPERTY." Moreover, the Request is vague and ambiguous in its use of

22 | "copied" in this context, including in particular because defendant fails to specify

23 | whether it is a reference to a copyright infringement term of art or whether it is

24 | being given some other meaning, and its use of "some element" in this context,

25 | including in particular because it is unclear whether the Request intends to include

26 | matters that may be used as evidence. The Request is further vague and ambiguous

27 | in its use of "Toon Teens," including in particular whether it is referring to

28 | drawings, prototypes, photographs, ideas, concepts or any other specified matter in

EXHIBIT _15_ PAGE _333_

1   connection with that project. Mattel further objects to this Interrogatory on the

2   grounds that it calls for information that is neither relevant to the claims or defenses

3   of any party to the pending action nor reasonably calculated to lead to the discovery

4   of admissible evidence. Mattel further objects to this Interrogatory on the grounds

5   that it calls for the disclosure of information subject to the attorney-client privilege,

6   the attorney work-product doctrine and other applicable privileges. Mattel further

7   objects to this Request on the grounds that it is premature and seeks to circumvent

8   the expert disclosure provisions of the Federal and Local Rules. Mattel continues its

9   factual investigation and currently awaits MGA's compliance with multiple Court

10  Orders compelling MGA to produce documents, to answer Interrogatories and to

11  produce witnesses for deposition which MGA still has not complied with and indeed

12  that the Court has found MGA violated. Mattel also has pending motions to compel

13  against defendants MGA, Bryant, Machado and others associated with defendants,

14  including to compel them to produce documents, to appear for deposition and to

15  answer requests for admissions. In addition, the depositions of certain witnesses,

16  including without limitation Carter Bryant and various MGA representatives, have

17  yet to be completed, and other witnesses, including various MGA representatives

18  such as Gustavo Machado, Ron Brawer, Mariana Trueba, Pablo Vargas, Janine

19  Brisbois, Shirin Salemnia, as well as Veronica Marlow, Margaret Hatch-Leahy and

20  Elise Cloonan, have yet to be produced for deposition. Furthermore, although

21  MGA's original production in this case regarding the alleged origins and

22  development of Bratz consisted of only a few thousand pages, and only after

23  multiple Court Orders compelling MGA and Bryant to produce their documents,

24  MGA and other Defendants have begun to produced voluminous documents only in

25  recent weeks, including documents that Mattel has been unable to access or review

26  because of technical deficiencies in MGA's production that MGA only recently

27  corrected. Furthermore, despite prior Court Order directing MGA to provide

28  documents in unredacted form, MGA has failed to comply and thus continues to

-107-
SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

EXHIBIT _15_ PAGE _334_

1  deny Mattel information that the Court has ruled Mattel is entitled to. The review of

2  MGA's, Bryant's and other Defendants' belated, and still incomplete, productions

3  continues. Mattel reserves the right to supplement this response consistent with

4  Federal Rule of Civil Procedure 26(e).

5          Without waiving the foregoing General and Specific objections, and

6  subject thereto, Mattel responds to this interrogatory as follows:

7          Mattel is not asserting claims for infringement of DIVA STARZ

8  copyrights or TOON TEENS copyrights in this action. Mattel contends, however,

9  that Bryant's, Paula Garcia's and other individual's exposure to aspects of "Toon

10 Teens" and "Diva Starz," including designs and names, while they were Mattel

11 employees tends to establish that Bryant created Bratz works and conceived of the

12 name "Bratz" while he was a Mattel employee and not in 1998 as Bryant has

13 claimed. The factual bases regarding the foregoing are set forth in response to

14 Interrogatory No. 1 above and in documents identified in Interrogatory No. 1 above.

15         Mattel also contends that its trade secret documents were copied by

16 MGA and other defendants. These trade secrets were additionally misappropriated

17 by MGA such that some elements of its property (including, but not limited to,

18 certain "My Scene" lines, themes, products, accessories and related marketing; the

19 Wee 3 Friends line, products, accessories, and packaging; the Little Mommy line,

20 products, theme, and related marketing; and the AcceleRacerS line, products, theme,

21 and related marketing) and business methods were unlawfully used by MGA in its

22 products (including certain Bratz lines, themes, products, accessories and related

23 marketing; the 4-Ever Best Friends line, products, accessories, and packaging; the

24 Mommy's Little Patient line, products, theme, and related marketing; and the

25 AlienRacerS line, products, theme, and related marketing) and business methods.

26 The factual bases regarding the foregoing are set forth in response to Interrogatory

27 No. 1 above and in documents identified in Interrogatory No. 1 above.

28

1    By way of further answer, pursuant to <u>Federal Rule of Civil Procedure</u>

2    33(d), Mattel has produced responsive, non-privileged documents and tangible items

3    in its possession, custody or control from which the answer to this Interrogatory may

4    be derived, including those identified in response to Interrogatory No. 1.

5    By way of further answer, this topic may be the subject of expert

6    testimony, which will be disclosed in the manner, and at the time, required for

7    expert disclosures pursuant to the <u>Federal</u> and <u>Local</u> <u>Rules</u>.

8    Mattel continues its factual investigation and currently has outstanding

9    discovery requests to Bryant and to MGA, as well as motions to compel Bryant and

10   MGA to disclose information relevant to this subject.  Mattel reserves the right to

11   supplement this response and, consistent with its obligations under <u>Federal Rule of</u>

12   <u>Civil Procedure</u> 26(e), Mattel will supplement this response if Mattel receives

13   additional responsive information.

14

15   **INTERROGATORY NO. 7:**

16   IDENTIFY all PERSONS interviewed for the July 18, 2003 Wall

17   Street Journal article.

18

19   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7:**

20   In addition to the general objections stated above, Mattel specifically

21   objects to this Interrogatory on the grounds that it is unreasonably burdensome and

22   overbroad in that it purports to require Mattel to gather and summarize all facts on

23   this subject, including without limitation facts that are known to or in the

24   possession, custody and control of defendants and non-parties.  Mattel further

25   objects to the Interrogatory as purporting to seek information not known to and not

26   readily ascertainable by Mattel.  Much of the information sought is protected by the

27   constitutional, common law, and statutory reporters' privilege, and it is not available

28   to Mattle.  Mattel further objects to this Interrogatory on the grounds that it calls for

1  information that is neither relevant to the claims or defenses of any party to the
2  pending action, nor reasonably calculated to lead to the discovery of admissible
3  evidence.  Mattel reserves the right to supplement this response and, consistent with
4  its obligations under <u>Federal Rule of Civil Procedure</u> 26(e), Mattel will supplement
5  this response if Mattel receives additional responsive information.

6        Subject to and without waiving the foregoing general and specific
7  objections, Mattel responds as follows:

8        The July 18, 2003 <u>Wall Street Journal</u> article was not prepared by
9  Mattel.  Further, Mattel does not know where the <u>Journal</u> obtained much of its
10  information.  The article identifies some, but not all, of its sources, including Isaac
11  Larian of MGA, Crystal Audigier (a then ten-year-old at a Los Angeles FAO
12  Schwarz store), Manny Francione of Toys "R" Us Inc., an unnamed source from
13  NPD Group, Inc., Sean McGowan of Gerard Klauer Mattison, Fred Hurley of KB
14  Toys Inc., Pittsfield Massachusetts, and Telejah Dean (a then nine-year-old from
15  West Los Angeles).

16        Julia Jensen of Mattel Public Relations was interviewed for the article
17  regarding the launch of a new Mattel toy, called "Flavas."  Matt Bousquette, at the
18  time the President of Mattel Brands, also was interviewed regarding Mattel's launch
19  of "Flavas."  Ivy Ross, at the time Head of Design at Mattel, and Lisa Tauber, at the
20  time Director of Marketing at Mattel, also made statements to the <u>Journal</u> regarding
21  Mattel's launch of "Flavas."  Unbeknownst to Mattel before the article was
22  published, Bruce Stein, a former president of Mattel, made statements to the <u>Journal</u>
23  regarding the portfolio of brands at Mattel.

24        Mattel does not know the identity or identities of the anonymous
25  source(s) cited in the article.

26        By way of a further answer, the depositions of Julia Jensen and
27  Maureen Tkacik were taken in this action from which the answer to this
28  Interrogatory may be further derived.

J7209/2267105.11

EXHIBIT _15_ PAGE _337_

1   By way of further answer, pursuant to Federal Rule of Civil Procedure

2   33(d), Mattel has produced responsive, non-privileged documents and tangible items

3   in its possession, custody or control from which the answer to this Interrogatory may

4   be derived.

5   Mattel continues its factual investigation and currently has outstanding

6   discovery requests to Bryant and to MGA, as well as motions to compel Bryant and

7   MGA to disclose information relevant to this subject. Mattel reserves the right to

8   supplement this response and, consistent with its obligations under Federal Rule of

9   Civil Procedure 26(e), Mattel will supplement this response if Mattel receives

10  additional responsive information.

11

12  **INTERROGATORY NO. 10:**

13  State, with particularity, when and how MATTEL first learned that

14  BRYANT performed work for MGA.

15

16  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:**

17  In addition to the general objections stated above, Mattel specifically

18  objects to this Interrogatory as unreasonably burdensome, overbroad and

19  incomprehensible in that it defines "Mattel" to include "past . . . employees,"

20  including but not limited to defendant Carter Bryant and a number of other former

21  Mattel employees who worked with Carter Bryant to design and develop Bratz after

22  each had been a Mattel employee and who, at that time, had no relationship with

23  Mattel that would have required those persons to disclose to Mattel the development

24  of the Bratz dolls. Mattel further objects to this interrogatory on the grounds that it

25  is vague and ambiguous with regard to the phrase "first learned that BRYANT

26  performed work for MGA." Mattel further objects to this Interrogatory on the

27  grounds that it calls for information that is neither relevant to the claims or defenses

28  of any party to the pending action nor reasonably calculated to lead to the discovery

1   of admissible evidence.  Mattel further objects to this Interrogatory on the grounds

2   that it calls for the disclosure of information subject to the attorney-client privilege,

3   the attorney work-product doctrine and other applicable privileges.  Mattel

4   continues its factual investigation and currently awaits MGA's compliance with

5   multiple Court Orders compelling MGA to produce documents, to answer

6   Interrogatories and to produce witnesses for deposition which MGA still has not

7   complied with and indeed that the Court has found MGA violated.  Mattel also has

8   pending motions to compel against defendants MGA, Bryant, Machado and others

9   associated with defendants, including to compel them to produce documents, to

10  appear for deposition and to answer requests for admissions.  In addition, the

11  depositions of certain witnesses, including without limitation Carter Bryant and

12  various MGA representatives, have yet to be completed, and other witnesses,

13  including various MGA representatives such as Gustavo Machado, Ron Brawer,

14  Mariana Trueba, Pablo Vargas, Janine Brisbois, Shirin Salemnia, as well as

15  Veronica Marlow, Margaret Hatch-Leahy and Elise Cloonan, have yet to be

16  produced for deposition.  Furthermore, although MGA's original production in this

17  case regarding the alleged origins and development of Bratz consisted of only a few

18  thousand pages, and only after multiple Court Orders compelling MGA and Bryant

19  to produce their documents, MGA and other Defendants have begun to produced

20  voluminous documents only in recent weeks, including documents that Mattel has

21  been unable to access or review because of technical deficiencies in MGA's

22  production that MGA only recently corrected.  Furthermore, despite prior Court

23  Order directing MGA to provide documents in unredacted form, MGA has failed to

24  comply and thus continues to deny Mattel information that the Court has ruled

25  Mattel is entitled to.  The review of MGA's, Bryant's and other Defendants' belated,

26  and still incomplete, productions continues.  Mattel reserves the right to supplement

27  this response consistent with Federal Rule of Civil Procedure 26(e).

28

07209/2267105.11

SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

EXHIBIT 15 PAGE 339

1    Subject to and without waiving the foregoing general and specific

2  objections, Mattel responds as follows:

3    Excluding from this response defendant Carter Bryant and those former

4  Mattel employees who worked with defendant Carter Bryant to design and develop

5  Bratz, Mattel states as follows:  Bryant and MGA acted to conceal, including by

6  Bryant's affirmative misrepresentations to Mattel during his Mattel employment,

7  Bryant's involvement with Bratz.  To Mattel's knowledge, Bryant was first publicly

8  and definitively confirmed as the Bratz designer in the July 18, 2003 Wall Street

9  Journal article, in which Isaac Larian also indicated that Bryant had been involved in

10  some manner with MGA in or about "late 1999."

11    After Bryant left Mattel, but prior to the July 18, 2003 article, there was

12  rumor and innuendo that Bryant may be working with MGA on Bratz.  Mattel

13  conducted an investigation in Spring 2002 based on allegations that Bryant may

14  have plagiarized "Toon Teens" and created Bratz dolls for MGA, and later in

15  August 2002 based on an anonymous letter sent to Mattel.  The letter's author

16  (whoever it was) offered no evidence for his or her allegations.  The potential claims

17  investigated in 2002 have not been asserted in this case.  In March 2002, Mattel

18  investigated allegations of possible copyright infringement of "Toon Teens" designs,

19  not whether Mr. Bryant created Bratz or worked with MGA during his Mattel

20  employment.  The potential claims investigated in 2002 did not give Mattel any

21  knowledge, or even reason to believe, that Bryant worked for MGA and/or

22  conceived of Bratz while a Mattel employee.

23    Subsequently, on November 24, 2003, Mattel obtained a copy of a

24  contract between defendant Carter Bryant and defendant MGA.  That contract--

25  which Bryant and MGA had entered into while Bryant was employed by Mattel--

26  required Bryant to provide design services to MGA on a "top priority" basis, in

27  conflict with his then-existing obligations to Mattel.  It also purported to grant MGA

28  ownership of works produced by Bryant both before and after the agreement's

07209/2267105.11

-113-

SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

EXHIBIT _15_ PAGE _340_

1  effective date, in further contravention of his obligations to Mattel.  Through this

2  agreement, Mattel first determined that it was likely that Bryant worked as a

3  designer for a Mattel competitor, MGA, while being employed and paid by Mattel

4  for his exclusive services as a designer.

5       Also, and as the Court determined in its Order denying defendant's

6  Motion for Termination Sanctions dated August 29, 2007 — one of defendants'

7  unsuccessful attempts to avoid a trial on the merits of Mattel's claims — that

8  "November 24, 2003, marks the date when litigation between Mattel and Bryant

9  became more than merely speculative and in fact became probable. . . . Although

10  prior to this date an internal investigation may have raised suspicion on Mattel's part

11  that litigation might arise, there was no evidence presented to the Court that Mattel

12  should have known it had a viable claim against Bryant before November 2003."

13       Answering further, the fact that Bryant worked with MGA while

14  employed by Mattel was confirmed for the first time by Bryant at his deposition in

15  November 2004, which took place only after Bryant had refused to be deposed for

16  months and only after the Court entered two Orders compelling him to testify.  At

17  that time, he acknowledged that he worked on the "Bratz" project and an ostensibly

18  separate project that defendants purport to call "Angel" during the time of his Mattel

19  employment.

20       By way of a further answer, the deposition of Jill Nordquist was taken

21  in this action from which the answer to this Interrogatory may be further derived.

22       By way of further answer, pursuant to Federal Rule of Civil Procedure

23  33(d), Mattel has produced responsive, non-privileged documents and tangible items

24  in its possession, custody or control from which the answer to this Interrogatory may

25  be derived, including the documents identified in response to Interrogatory No. 1.

26       By way of further answer, this topic may be the subject of expert

27  testimony, which will be disclosed in the manner, and at the time, required for

28  expert disclosures pursuant to the Federal and Local Rules.

EXHIBIT _15_ PAGE _341_

1      Mattel continues its factual investigation and currently has outstanding

2 discovery requests to Bryant and to MGA, as well as motions to compel Bryant and

3 MGA to disclose information relevant to this subject.  Mattel reserves the right to

4 supplement this response and, consistent with its obligations under <u>Federal Rule of</u>

5 <u>Civil Procedure</u> 26(e), Mattel will supplement this response if Mattel receives

6 additional responsive information.

7

8 **INTERROGATORY NO. 11:**

9      State, with particularity, when and how MATTEL first learned that

10 BRYANT conceived of the BRATZ CONCEPT.

11

12 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

13      In addition to the general objections stated above, Mattel specifically

14 objects to this Interrogatory on the grounds that it calls for the disclosure of

15 information subject to the attorney-client privilege, the attorney work-product

16 doctrine and other applicable privileges.  Mattel further objects to this Interrogatory

17 as unreasonably burdensome and overbroad in that it purports to require Mattel to

18 summarize all facts on this subject, including without limitation facts that are known

19 to or in the possession, custody and control of defendants and non-parties, including

20 non-parties associated with defendants.  Mattel further objects to this interrogatory

21 on the grounds that it is vague and ambiguous with regard to the phrase "first

22 learned that BRYANT conceived of the BRATZ CONCEPT."  Mattel further

23 objects to this interrogatory on the grounds that it is unreasonably burdensome and

24 overbroad in that it defines "Mattel" to include "past . . . employees," including but

25 not limited to defendant Carter Bryant and a number of other former Mattel

26 employees who worked with Carter Bryant to design and develop Bratz after each

27 had been a Mattel employee and who, at that time, had no relationship with Mattel

28 that would have required those persons to disclose to Mattel the development of the

-115-

SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

EXHIBIT _15_ PAGE _342_

1    Bratz dolls.  Mattel further objects to this Interrogatory on the grounds that it calls

2    for information that is neither relevant to the claims or defenses of any party to the

3    pending action nor reasonably calculated to lead to the discovery of admissible

4    evidence.  Mattel further objects to this Interrogatory because defendant Bryant

5    refuses to allow the completion of his deposition and because defendant MGA

6    refuses to produce any witness for deposition.  Moreover, defendants have refused

7    for months, despite Mattel's requests, to provide the originals of their drawings,

8    including those that they performed unauthorized destructive testing on, and thus

9    continue to withhold and conceal from Mattel information necessary for it to

10   evaluate and take discovery as to the drawings and thus to respond to this

11   Interrogatory.  Mattel continues its factual investigation and currently awaits MGA's

12   compliance with multiple Court Orders compelling MGA to produce documents, to

13   answer Interrogatories and to produce witnesses for deposition which MGA still has

14   not complied with and indeed that the Court has found MGA violated.  Mattel also

15   has pending motions to compel against defendants MGA, Bryant, Machado and

16   others associated with defendants, including to compel them to produce documents,

17   to appear for deposition and to answer requests for admissions.  In addition, the

18   depositions of certain witnesses, including without limitation Carter Bryant and

19   various MGA representatives, have yet to be completed, and other witnesses,

20   including various MGA representatives such as Gustavo Machado, Ron Brawer,

21   Mariana Trueba, Pablo Vargas, Janine Brisbois, Shirin Salemnia, as well as

22   Veronica Marlow, Margaret Hatch-Leahy and Elise Cloonan, have yet to be

23   produced for deposition.  Furthermore, although MGA's original production in this

24   case regarding the alleged origins and development of Bratz consisted of only a few

25   thousand pages, and only after multiple Court Orders compelling MGA and Bryant

26   to produce their documents, MGA and other Defendants have begun to produced

27   voluminous documents only in recent weeks, including documents that Mattel has

28   been unable to access or review because of technical deficiencies in MGA's

07209/2267105.11

-116-
SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

EXHIBIT 15 PAGE 343

1 | production that MGA only recently corrected. Furthermore, despite prior Court

2 | Order directing MGA to provide documents in unredacted form, MGA has failed to

3 | comply and thus continues to deny Mattel information that the Court has ruled

4 | Mattel is entitled to. The review of MGA's, Bryant's and other Defendants' belated,

5 | and still incomplete, productions continues. Mattel reserves the right to supplement

6 | this response consistent with Federal Rule of Civil Procedure 26(e).

7 |    Subject to and without waiving the foregoing general and specific

8 | objections, Mattel responds as follows: See response to Interrogatory No. 10.

9 |    By way of further answer, this topic may be the subject of expert

10 | testimony, which will be disclosed in the manner, and at the time, required for

11 | expert disclosures pursuant to the Federal and Local Rules.

12 |    Mattel continues its factual investigation and currently has outstanding

13 | discovery requests to Bryant and to MGA, as well as motions to compel Bryant and

14 | MGA to disclose information relevant to this subject. Mattel reserves the right to

15 | supplement this response and, consistent with its obligations under Federal Rule of

16 | Civil Procedure 26(e), Mattel will supplement this response if Mattel receives

17 | additional responsive information.

18

19 | DATED: December 7, 2007    QUINN EMANUEL URQUHART OLIVER & HEDGES. LLP

20

21

22 | By

23 | B. Dylan Proctor
   | Attorneys for Plaintiff Mattel, Inc.

24

25

26

27

28

07209/2267105.11

-117-

SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

EXHIBIT _15_ PAGE _344_

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On December 10, 2007, I served true copies of the following document(s) described as **SUPPLEMENTAL RESPONSES TO MGA'S FIRST SET OF INTERROGATORIES TO MATTEL, INC.** on the parties in this action as follows:

Thomas Nolan, Esq.
**SKADDEN ARPS SLATE MEAGHER & FLOM, LLP**
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Michael H. Page, Esq.
**KEKER & VAN NEST, LLP**
710 Sansome Street
San Francisco, CA 94111

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 10, 2007, at Los Angeles, California.

NOW LEGAL -- Dave Quintana

07209/2316715.1

-1-

EXHIBIT _15_ PAGE _345_

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On December 10, 2007, I served true copies of the following document(s) described as **SUPPLEMENTAL RESPONSES TO MGA'S FIRST SET OF INTERROGATORIES TO MATTEL, INC.** on the parties in this action as follows:

> Mark E. Overland, Esq.
> David C. Scheper, Esq.
> Alexander H. Cote
> **OVERLAND BORENSTEIN**
> **SCHEPER & KIM LLP**
> 300 South Grand Avenue, Suite 2750
> Los Angeles, CA 90071-3144

**BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 10, 2007, at Los Angeles, California.

Charlene Ho

07209/2316731.1

EXHIBIT _15_ PAGE _346_

**Exhibit 16**



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
  Jon D. Corey (Bar No. 185066)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Counter-Defendant
Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware
Corporation,

                    Plaintiff,

          v.

CARTER BRYANT, an individual; and
DOES 1 through 10, inclusive,

                    Defendants.

_____

CARTER BRYANT, on behalf of
himself, all present and former
employees of Mattel, Inc., and the
general public,

                    Counter-Claimant,

          v.

MATTEL, INC., a Delaware
Corporation,

                    Counter-Defendant.

CASE NO. CV 04-9059 NM (RNBx)

STIPULATED PROTECTIVE
ORDER; AND

[PROPOSED] ORDER

[Discovery Matter]

1-4

07272/625581.2

PROTECTIVE ORDER

EXHIBIT 16 PAGE 347

## GOOD CAUSE STATEMENT

Plaintiff Mattel, Inc. ("Mattel"), defendant Carter Bryant, and intervenor-defendant MGA Entertainment, Inc. ("MGA") are parties to the above-captioned litigation (hereinafter, the "Action"). (Mattel, Carter Bryant and MGA Entertainment, Inc. are each referred to herein as a "Party" and collectively are the "Parties.")

In this Action, Mattel has alleged, and defendants dispute, that Bryant worked for and otherwise aided and assisted MGA while defendant was employed by Mattel as a designer, in violation of his contractual and other legal duties to Mattel.

All parties believe that they will or may be required to produce or disclose in this Action, and that nonparties may produce or disclose, information that is trade secret, proprietary, confidential and/or is of a private or personal nature and that, if disclosed in this Action without restriction on its use or further disclosure, may cause disadvantage, harm, damage and loss to the disclosing Party or to the disclosing nonparty.

In addition, the Parties are currently in a competitive relationship in the toy industry, with Mattel and MGA operating as a manufacturers and marketers of dolls, toys and other products and Bryant working at this time as a contractor for a Mattel competitor, MGA, and further anticipate that nonparty competitor information may be produced or disclosed in this Action.

In particular, without prejudice to any Party's right to object to or resist disclosure of such categories of information on relevance or any other grounds, the Parties currently anticipate that categories of such trade secret, proprietary, confidential and/or private documents and other information that may be disclosed in discovery by the Parties and by nonparties will or may include:

(1)   Personnel files and other private or confidential employment, contractor or vendor information;

PROTECTIVE ORDER

EXHIBIT _16_ PAGE _348_

(2)    The specific terms of agreements with, and information received from, third parties that a Party is required to disclose only under conditions of confidentiality;

(3)    Personal or private financial information, and confidential financial data that is not known generally to the trade or to competitors, including financial data relating to specific sales, cost and profit information for specific products and product lines; and

(4)    Business plans and product information that are not known generally to the trade or to competitors, including non-public information relating to product development and design.

WHEREFORE, believing that good cause exists, the Parties HEREBY STIPULATE that, subject to the Court's approval, the following procedures shall be followed in this Action to facilitate the orderly and efficient discovery of relevant information while minimizing the potential for unauthorized disclosure or use of confidential or proprietary information:

<u>SCOPE OF THIS ORDER</u>

1.    This Protective Order shall apply to trade secret, confidential and proprietary information, documents and things that are produced or disclosed in any form during the course of the Action by any Party or any nonparty:

(a)    through discovery;

(b)    in any pleading, document or other writing; or

(c)    in testimony given at a deposition.

(The foregoing information, documents and things shall be referred to hereinafter collectively as "Litigation Materials.")

07272/625581.2

-3-

PROTECTIVE ORDER

EXHIBIT _16_ PAGE _349_

## CONFIDENTIAL AND ATTORNEYS' EYES ONLY INFORMATION

2.    Any Party or nonparty producing or disclosing Litigation
Materials in this Action may designate such information as "CONFIDENTIAL" or
"CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by designating it in the manner
set forth in paragraph 3 below.   The designation of Litigation Materials as
"CONFIDENTIAL" shall be limited to information which the disclosing Party or
nonparty believes in good faith contains, constitutes or reveals confidential design,
engineering or development information, confidential commercial information, non-
public financial information, confidential or private information about current or
former employees, contractors or vendors (including employee, contractor and vendor
personnel records), or other information of a confidential, proprietary, private or
personal nature.   The designation of information as "CONFIDENTIAL --
ATTORNEYS' EYES ONLY" shall be limited to trade secrets or other confidential
commercial information, including without limitation non-public designs and
drawings, which the disclosing Party or nonparty in good faith believes will result in
competitive disadvantage or harm if disclosed to another Party to this Action without
restriction upon use or further disclosure.   Information designated as
"CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may only
be used and disclosed as provided in this Protective Order.

## MANNER OF DESIGNATION OF MATERIALS

3.    A Party or nonparty may designate Litigation Materials as
"CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in the
following manner:

(a)    Documents or Things.    "CONFIDENTIAL" or
"CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment may be

1    obtained by typing or stamping "CONFIDENTIAL" or "CONFIDENTIAL --
2    ATTORNEYS' EYES ONLY" on the particular document or thing.

3              (b)    Interrogatory Answers and Responses to Requests for
4    Admissions.  In answering any interrogatory or request for admission, or any
5    part thereof, a Party may designate its or his answer as "CONFIDENTIAL" or
6    "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by affixing thereto the
7    legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES
8    ONLY."  Such "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'
9    EYES ONLY" answers shall be made on separate pages from any other
10   answers or portions thereof that are not designated as "CONFIDENTIAL" or
11   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

12             (c)    Deposition Testimony.   Any Party or nonparty giving
13   deposition testimony in this Action may obtain "CONFIDENTIAL" or
14   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment therefor by
15   designating, during the course of that testimony, for which "CONFIDENTIAL"
16   or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment is desired,
17   the testimony that is claimed to be "CONFIDENTIAL" or "CONFIDENTIAL
18   -- ATTORNEYS' EYES ONLY,"  or alternatively by designating the entire
19   testimony to be "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'
20   EYES ONLY," subject to a good faith obligation to identify any non-
21   confidential portions of the testimony (and/or any lesser "CONFIDENTIAL"
22   portions in the event that the entire testimony is designated "CONFIDENTIAL
23   -- ATTORNEYS' EYES ONLY") within fourteen (14) calendar days after
24   receipt of the transcript of the testimony.  The reporter shall separately
25   transcribe and bind the testimony so designated as "CONFIDENTIAL" and
26   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" and shall mark the face
27   of the separate bound transcript containing such testimony with the term
28   "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

A Party or nonparty also may make the above-referenced designation of confidentiality in writing and within fourteen (14) calendar days of the receipt by said Party or nonparty of the transcript of said testimony. In that event, said portion of the transcript will be treated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" under the provisions of this Protective Order, except that it will not be separately bound. If, during the course of deposition testimony, any Party or nonparty reasonably believes that the answer to a question will result in the disclosure of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information, all persons other than those persons entitled to receive such information pursuant to paragraphs 5 and 6 hereof shall be excluded from the room in which the deposition testimony is given. Unless previously designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," all transcripts of deposition testimony and any related exhibits, and all information adduced in deposition, shall, in their entirety, be treated as "CONFIDENTIAL" for a period of fourteen (14) calendar days after receipt of the transcript by counsel for the designating Party or nonparty. The Party or nonparty designating the testimony or information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may, within that fourteen (14) calendar day period described above, specifically designate information contained in the transcript(s) and/or exhibit(s) as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," whether or not previously designated as such, by notifying all Parties in writing of the portions of the transcript or exhibit which contains such information. Each Party shall attach a copy of such written statement to the face page of the transcript or exhibit and to each copy in its or his possession, custody or control. Thereafter, these portions of the transcript or exhibits designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be treated in

PROTECTIVE ORDER
EXHIBIT _16_ PAGE _352_

accordance with the terms of this Protective Order. In addition, the provisions of Paragraph 3(e) for later designating transcripts or exhibits shall apply after the expiration of the fourteen (14) calendar day period described in this Paragraph 3(c).

(d)   Typing or stamping the legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" upon the first page of a collection of Litigation Materials which are bound together shall have the effect of designating such collection in its entirety as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY." In the case of disks, tapes, CD-ROMs, DVDs and other tangible storage media or devices, labeling, stamping or marking the outside of such disk, tape, CD-ROM, DVD or other medium or device with the legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall have the effect of designating the entire contents of such disk, tape, CD-ROM, DVD or other medium or device, and all data stored thereupon, as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," as the case may be.

(e)   Except as otherwise provided in Paragraph 3(c) of this Protective Order, the receiving Party shall not reveal any information produced for a period of seven (7) calendar days following receipt. Failure to designate a document, thing or other information as CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in accordance with this Protective Order shall not preclude any Party or nonparty desiring to so designate the document, thing or information from so designating thereafter; provided that the Party or nonparty proceeds promptly after discovery of any omission of marking, in good faith marks the document, thing or other information and requests, in writing, that each receiving Party so mark and treat the document, thing or other information in accordance with this Protective Order. Thereafter, the document, thing or other information shall

PROTECTIVE ORDER

EXHIBIT _16_ PAGE _353_

be fully subject to this Protective Order. No Party shall incur liability for any disclosures made prior to notice of such designation, except to the extent that any such disclosures occurred prior to the seven (7) day period described above or prior to such other time periods as are provided by this Protective Order, including without limitation such time periods as are provided in Paragraph 3(c) above.

## RESTRICTIONS ON DISCLOSURE OF DESIGNATED MATERIALS

4.     Any Litigation Materials produced or disclosed in this Action, whether or not designated "CONFIDENTIAL" or "CONFIDENTIAL — ATTORNEYS' EYES ONLY," may only be used by the receiving Party of such information for purposes of litigation and not for any other purpose, including without limitation for any business or trade purpose. As used herein, the term "litigation" shall mean preparation for, participation in and prosecution and defense of any suit, motion, trial, appeal, hearing, review or other judicial proceeding or in connection with any mediation or other alternative dispute resolution procedure that this or any other court may order or that the Parties may agree to.

5.     Subject to Paragraph 7 herein, and unless as otherwise ordered by the Court, Litigation Materials designated as "CONFIDENTIAL" shall not be disclosed to any person other than:

(a)     the attorneys for the Parties and their partners, shareholders, associates, document clerks and paralegals who are necessary to assist such attorneys;

(b)     secretaries, stenographers and other office or clerical personnel employed by said attorneys and who are necessary to assist such attorneys;

07272/625581.2

-8-

(c)     a named Party or officers or employees of a named Party, to the extent deemed necessary by their respective attorneys for purposes assisting in litigation;

(d)     the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL" information;

(e)     such other persons as may be consented to by the Party or nonparty designating such information as "CONFIDENTIAL" information;

(f)     outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(g)     professional court reporters engaged to transcribe deposition testimony, professional videographers engaged to videotape deposition testimony and translators;

(h)     independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for purposes of litigation; and

(i)     non-party fact witnesses in a deposition, provided, however, that such persons may not retain such "CONFIDENTIAL" information unless otherwise authorized to receive it. If the attendance of a non-party fact witness at a deposition can only be obtained through compulsory process, the witness need not execute an Assurance of Compliance in the form attached as Exhibit A, provided that: (1) the witness acknowledges his obligation to maintain the confidentiality of "CONFIDENTIAL" information under oath; and (2) such "CONFIDENTIAL" information may only be shown to the witness during the deposition.

07272/625581.2

-9-

PROTECTIVE ORDER

EXHIBIT _16_ PAGE _355_

6.      Subject to paragraph 7 herein, and unless as otherwise ordered by the Court, Litigation Materials designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be disclosed to any person other than:

(a)      the attorneys for the Parties (but not including in-house counsel for the Parties or any attorney who is an officer, director, shareholder or employee of any Party or its corporate affiliates) and their partners, shareholders, associates, document clerks and paralegals who are assigned to and necessary to assist such attorneys. For the purposes of this subparagraph, "affiliate" shall mean any corporate parent or subsidiary of any Party, or any other entity that is under common control with any Party or corporate parent or subsidiary of any Party, or any of their successors or predecessors in interest;

(b)      secretaries, stenographers and other office or clerical personnel employed by said attorneys and who assist them with respect to litigation;

(c)      the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(d)      such other persons as may be consented to by the Party designating such information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(e)      outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(f)      independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for the purposes of litigation; and

PROTECTIVE ORDER

EXHIBIT 16 PAGE 35 6

1     (g) professional court reporters engaged to transcribe

2   deposition testimony, professional videographers engaged to videotape

3   deposition testimony and translators.

4     7. None of the following is bound by or obligated under this Order

5 in any respect and specifically are not bound or obligated to treat information

6 designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

7 ONLY" in any particular manner: The Court hearing this Action (including the Court

8 having jurisdiction of any appeal), Court personnel, court reporters working for the

9 Court, translators working for the Court, or any jury impaneled in this Action.

10     8. Other than those identified in Paragraph 7 above, each person to

11 whom information designated as "CONFIDENTIAL" or "CONFIDENTIAL --

12 ATTORNEYS' EYES ONLY" is disclosed shall be informed of the terms of this

13 Protective Order and agree to be bound by it before disclosure to such persons of any

14 such information. The persons described in Paragraphs 5(f), 5(h), 6(e) and 6(f) shall

15 not have access to either "CONFIDENTIAL" or "CONFIDENTIAL --

16 ATTORNEYS' EYES ONLY" information, as the case may be, until they have

17 certified that they have read this Protective Order and have manifested their assent

18 to be bound thereby by signing a copy of the Assurance of Compliance attached

19 hereto as Exhibit A. Once a person has executed such an Assurance of Compliance,

20 it shall not be necessary for that person to sign a separate Assurance of Compliance

21 each time that person is subsequently given access to confidential material. Any

22 person who signed an Assurance of Compliance in connection with the Stipulation

23 for Protection of Confidential Information and Protective Order filed September 16,

24 2004 in <u>Mattel Inc. v. Bryant</u>, Case No. BC 314398, pending in Los Angeles County

25 Superior Court, need not re-sign the Assurance of Compliance attached hereto but

26 shall, by virtue of his or her prior signature, be deemed to have signed the attached

27 Assurance of Compliance.

28

-11-

PROTECTIVE ORDER

EXHIBIT _16_ PAGE _357_

9.    The failure of any Party to object to the designation of information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be deemed an admission that such information qualifies for such designation.

10.   If any Party wishes to have any information, document or testimony marked "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by another Party or nonparty reclassified as non-confidential, or from "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" to "CONFIDENTIAL," the Parties and/or relevant nonparty or nonparties will confer and try to reach agreement. If the Parties and/or relevant nonparty or nonparties cannot reach agreement, either Party and/or the relevant nonparty or nonparties may apply to the Court to resolve the matter in accordance with the Local Rules. Unless and until this Court enters an Order changing the designation of the information, it shall be afforded the treatment prescribed in this Protective Order for its designation.

11.   Nothing contained in this Protective Order shall restrict or prevent any Party or nonparty from disclosing or otherwise using its or his own Litigation Materials which that Party or nonparty produces or discloses in this action.

12.   The inadvertent or unintentional disclosure by a producing Party or nonparty of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" Litigation Materials during the course of this litigation, regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a Party's or nonparty's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter. Counsel for the Parties and/or nonparties shall in any event, to the extent possible, upon discovery of inadvertent error, cooperate to restore the confidentiality of the "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material that was inadvertently or unintentionally disclosed.

13.    If a Party or nonparty through inadvertence produces or provides discovery that it, he or she believes is subject to a claim of attorney-client privilege or work product immunity, the producing Party or nonparty may give written notice to the receiving Party that the document is subject to a claim of attorney-client privilege or work product immunity and request that the document be returned to the producing Party or nonparty.  The receiving Party shall promptly return to the producing Party or nonparty the inadvertedly disclosed document and all copies of such document.  Return of the document by the receiving Party shall not constitute an admission or concession, or permit any inference, that the returned document is, in fact, properly subject to a claim of attorney-client privilege or work product immunity, nor shall it foreclose any Party from moving the Court for an Order that such document has been improperly designated or should be producible for reasons other than a waiver caused by the inadvertent production.

14.    Nothing contained in this Protective Order shall affect the right of any Party or nonparty to make any objection, claim any privilege, or otherwise contest any request for production of documents, interrogatory, request for admission, or question at a deposition or to seek further relief or protective orders from the Court in accordance with the <u>Federal Rules of Civil Procedure</u> and the <u>Local Rules</u>. Nothing in this Protective Order shall constitute an admission or waiver of any claim or defense by any Party.

## FILING AND USE IN COURT OF DESIGNATED MATERIALS

15.    Except when the filing under seal is otherwise authorized by statute or federal rule, the Parties shall seek the Court's prior approval for the filing under seal of pleadings and other documents containing properly designated "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information in accordance with the procedures set forth in <u>Local Rule 79-5.1</u>, as such

PROTECTIVE ORDER

EXHIBIT _16_ PAGE 3 5 9

1 Rule may be amended from time to time.  Prior to the time that a Party receiving the
2 "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY"
3 information from any other Party files with the Court an application and the other
4 materials required by Local Rule 79-5.1, as such Rule may be amended from time to
5 time, to seal the producing Party's confidential information, the receiving Party shall
6 consult with the producing Party's attorney to determine whether the producing Party
7 will re-designate the previously designated confidential information so as to avoid the
8 need for the request to file such information under the seal.  Upon the default of a
9 Party to seek the Court's approval to file a document containing "CONFIDENTIAL"
10 or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information under seal, any
11 Party may subsequently seek the approval of the Court to file that document under
12 seal, in accordance with the procedures set forth in Local Rule 79-5.1, as such Rule
13 may be amended from time to time.

14

15 <u>THIRD-PARTY REQUEST FOR DESIGNATED MATERIALS</u>

16

17       16.    If any Party or nonparty receives a subpoena or document request
18 from a third party which purports to require the production of materials in that Party's
19 possession which have previously been designated as "CONFIDENTIAL" or
20 "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by any other Party or nonparty,
21 the Party or nonparty receiving such subpoena or document request (a) shall object
22 and refuse to produce documents absent a Court Order or the consent of the Party or
23 nonparty who designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL
24 -- ATTORNEYS' EYES ONLY", (b) immediately notify the Party or nonparty who
25 designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL --
26 ATTORNEYS' EYES ONLY" of the receipt of said subpoena or document request,
27 and (c) shall not oppose any effort by the Party or nonparty which designated the
28 material as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

1   ONLY" to quash the subpoena or obtain a protective order limiting discovery of such

2   material.

3

4                    DISCOVERY FROM NONPARTIES

5

6           17.     Discovery of nonparties may involve receipt of information,

7   documents, things or testimony which include or contain "CONFIDENTIAL" or

8   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" materials or information.  A

9   nonparty producing such material in this case may designate as "CONFIDENTIAL"

10  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" some or all of the material it

11  produces in the same manner provided for in this Protective Order with respect to

12  material furnished by or on behalf of the Parties.  Any Party may also designate as

13  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any

14  materials or information produced by a nonparty that constitute "CONFIDENTIAL"

15  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material of the designating

16  Party under Paragraph 2 of this Protective Order, regardless of whether the producing

17  nonparty has also so designated.  In addition, a nonparty may also designate as

18  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any

19  materials or information produced by a Party that constitute "CONFIDENTIAL" or

20  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material or information of such

21  nonparty under Paragraph 2 of this Protective Order, regardless of whether the

22  producing Party has also so designated.  In cither such an event, the designation

23  providing for the greater level of protection for the material information shall control,

24  subject to Paragraph 10 of this Protective Order.  Nonparty materials designated

25  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by a

26  nonparty or Party shall be governed by the terms of this Protective Order.

27

28

07272/625581.2

-15-

PROTECTIVE ORDER

EXHiBIT _16_ PAGE _361_

## CONCLUSION OF LITIGATION

18.     Within thirty (30) days of the conclusion of this Action, including any post-trial motions or appellate proceedings relating thereto, all documents, transcripts or other things or information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," and all copies thereof, shall be returned to the attorneys for the Party or nonparty furnishing the same, or shall be destroyed by the attorneys having such documents in their possession. In addition, all summaries or other materials containing or disclosing information contained in such documents, answers, transcripts or other things shall be destroyed; provided, however, that outside counsel for each Party may retain one complete and unredacted set of pleadings and papers filed with the Court or served on the other Parties. Such retained copy of pleadings and papers shall be maintained in a file accessible only to outside counsel bound by this Protective Order. This Protective Order shall continue to be binding after the conclusion of this Action.

## AMENDMENT OF THIS AGREEMENT

19.     The provisions of this Stipulation and Protective Order may be  modified at any time by stipulation of the Parties as approved by Order of the Court. In addition, a Party may at any time apply to the Court for modification of this

07272/625581.2

-16-

PROTECTIVE ORDER

EXHIBIT _16_ PAGE _362_