TKACIK

1

2      Q     Do you have any reason to believe what

3  you wrote wasn't accurate?

4      A     No.

5      Q     Did you get that information from one

6  of your confidential sources you're not revealing?

7      A     I don't know.

8            MR. KARLE:  I am going to

9            instruct the witness not to answer that

10           question.

11     Q     It goes on to say, "Ivy Ross, head of

12  girls' design, suggested bringing them to market

13  for the spring 2004 season.  Mr. Bousquette said

14  the company should aim for this July instead."

15           Do you see that?

16     A     Yes.

17     Q     Did you discuss with Miss Ross and

18  Mr. Bousquette the timing of the release of the

19  Flavas dolls?

20     A     I don't remember.  I believe I did.

21     Q     Did they make statements to you to the

22  effect that the original plan was to up launch

23  Flavas in 2004, but instead they wanted to rush

24  them to market earlier?

25     A     I don't know.

60

EXHIBIT 19 PAGE 437

```
 1                      TKACIK
 2        Q    Well, the article goes on to say, "We
 3   were stunned says a designer who worked on the
 4   Flavas and left the company in May, another
 5   surprise:  Mr Bousquette asked the team to make the
 6   dolls look more hip-hop than the prototypes.  No
 7   one had really believed in the concept before that
 8   meeting, and it was stuck in this back and forth
 9   where first they were too edgy, then they weren't
10   edgy enough," says the designer.  "Matt came
11   through and cut all of that out."
12             You see that?
13        A    Uh-huh.
14        Q    Did you discuss this with
15   Mr. Bousquette?
16        A    I don't remember.
17        Q    You go on to say, "Mr. Bousquette says
18   he told designers to make the dolls as authentic as
19   possible as quickly as possible."
20        A    Then I would presume that I did.
21        Q    So you were accurately quoting
22   Mr. Bousquette there?
23        A    I have no reason to believe I am not.
24        Q    And does that refresh your recollection
25   as to whether Mr. Bousquette and Miss Ross told you
```

EXHIBIT _19_ PAGE _438_

```
 1                        TKACIK

 2    that they instructed their subordinates at Mattel

 3    to rush production of Flavas in three months?

 4         A    It does.  I am fairly certain now

 5    reading this over again that I discussed the timing

 6    with Mr. Bousquette.

 7         Q    And you understood from your

 8    discussions with him that he had instructed the

 9    Mattel team to rush Flavas into production in

10    three months; isn't that true?

11         A    Yes.

12         Q    This next paragraph goes on to say,

13    "Flavas design team often slept in their cubicles

14    to get the dolls ready in time for summer

15    shipment."

16              You see that?

17         A    Yes.

18         Q    You remember discussing that with

19    Mr. Bousquette and Miss Ross?

20         A    No.

21         Q    I believe you testified that you left

22    the Wall Street Journal in August or September of

23    2003; is that right?

24         A    Yeah, end of August.

25         Q    Pardon?
```

62

EXHIBIT 19 PAGE 439

```
 1                          TKACIK

 2        A      The end of August.

 3        Q      So that was approximately a month after

 4   that article came out, right?

 5        A      Yes.

 6        Q      Why did you leave the Journal?

 7        A      I was really young and stressed out,

 8   and I wanted to go into magazine journalism, and I

 9   had a friend who had been named editor of

10   Philadelphia Magazine, and I wanted to leave L.A.

11        Q      So, you would have no way of knowing

12   one way or the other, what communications MGA may

13   have had with The Wall Street Journal about your

14   article after you left; is that true?

15        A      Yes.  I kept in touch with them.  I

16   never heard about anything.  I kept in touch with

17   The Wall Street Journal.

18        Q      When was the last time you did any work

19   for The Wall Street Journal?

20        A      When I left.

21        Q      When was the first time you heard about

22   the lawsuit Mattel filed against Carter Bryant?

23        A      I don't remember.

24        Q      I'll represent to you that lawsuit was

25   filed in or about April of 2004.  You recall
```

EXHIBIT _19_ PAGE _440_

```
                              TKACIK
 1
 2    hearing about it approximately at that time?
 3         A     I don't recall.
 4         Q     Were you aware of the lawsuit in 2005
 5    when you were thinking of doing your article about
 6    Lilly Martinez?
 7         A     Yes.
 8         Q     How had you become aware of the
 9    lawsuit?
10         A     The Internet.  I read the paper.  I
11    don't know how I had become aware in that window of
12    time.
13         Q     Prior to your deposition today and your
14    meetings, if any, with counsel for the Wall Street
15    Journal who is representing you today, had you
16    discussed the lawsuit with anyone?
17         A     I don't know.  No.  I mean casually.
18         Q     Had you discussed the lawsuit with
19    anyone at Mattel?
20         A     I don't know.
21         Q     You might have?
22         A     It's a possibility.
23         Q     Do you know who?
24         A     It would have been Julia Jensen.  That
25    would probably be the extent of it.  I really don't
```

64

EXHIBIT 15 PAGE 441

|   |   |
|---|---|
| 1 | TKACIK |
| 2 | remember. |
| 3 | Q    Do you recall discussing the lawsuit |
| 4 | with any ex-Mattel employees? |
| 5 | A    No.  I may have, I don't know. |
| 6 | MS. CENDALI:  I have no further |
| 7 | questions. |
| 8 | MR. NIBORSKI:  Just a couple |
| 9 | quick closing remarks.  I just wanted to |
| 10 | go over the custody of the transcript, |
| 11 | just to let you know there is going to |
| 12 | be a transcript prepared, I will receive |
| 13 | a copy and send it to your attorney.  He |
| 14 | would give you a chance to review it and |
| 15 | make any changes or corrections and then |
| 16 | you can return it to him; and we will |
| 17 | maintain custody of the original. |
| 18 |  |
| 19 |  |
| 20 |  |
| 21 | (Continued on next page to include jurat.) |
| 22 |  |
| 23 |  |
| 24 |  |
| 25 |  |

65

EXHIBIT _15_ PAGE _442_

```
 1                          TKACIK

 2          I also want to confirm that there was no

 3          medical or other reason why you were

 4          unable to give your best testimony today?

 5                    THE WITNESS:  No.

 6                    MR. NIBORSKI:  And I appreciate

 7          your time.  Thank you.

 8                    (Whereupon, at 12:15 p.m., the

 9          Examination of this Witness was

10          concluded.

11

12

13                    _____

14                         MAUREEN TKACIK

15

16   Subscribed and sworn to before me
     this _____ day of _____, 2007.

17

18

19   _____
              NOTARY PUBLIC

20

21

22

23

24

25
```

66

EXHIBIT 15 PAGE 443

```
1

2                    E X H I B I T S

3
      PLAINTIFF'S EXHIBITS:
4     EXHIBIT      EXHIBIT                    PAGE
      NUMBER       DESCRIPTION
5

6       1          7/18/03 Article              7

7       2          Notice of Deposition        11

8       3          Subpoena                    11

9       4          2/1/02 Article              13

10      5          2/7/02 Article              15

11      6          2/8/02 Article              16

12      7          4/3/03 Article              20

13      8          E-mail                      36

14

15

16                    I N D E X

17

18    EXAMINATION BY                   PAGE

19    MR. NIBORSKI

20    MS. CENDALI

21

22

23

24

25

                                              67
```

EXHIBIT 19 PAGE 444

1

2    QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER

3              PAGE      LINE

4              42        20

5              43        25

6              45        14

7              45        22

8              47        21

9              50        23

10             52        23

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

68

EXHIBIT _19_ PAGE _445_

```
 1
 2                    C E R T I F I C A T E
 3
 4    STATE OF NEW YORK      )
                          :   SS.:
 5    COUNTY OF KINGS        )
 6
 7
 8          I, KAREN D. WILLIAMS, a Notary Public for and
 9    within the State of New York, do hereby certify:
10          That the witness whose examination is
11    hereinbefore set forth was duly sworn and that such
12    examination is a true record of the testimony given
13    by that witness.
14          I further certify that I am not related to
15    any of the parties to this action by blood or by
16    marriage and that I am in no way interested in the
17    outcome of this matter.
18          IN WITNESS WHEREOF, I have hereunto set my
19    hand this 2nd day of October, 2007.
20
21                         _____
22                         KAREN D. WILLIAMS
23
24
25    Signature Requested
```

EXHIBIT 19 PAGE 446

**Exhibit 20**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an
individual,

      Plaintiff,

  vs.

MATTEL, INC., a Delaware
corporation,

      Defendants.

No. CV 04-9049 SGL
(RNBx)

**CERTIFIED COPY**

_____

Consolidated with MATTEL, INC. v.
BRYANT and MGA ENTERTAINMENT, INC.
v. MATTEL, INC.

_____

HEARING BEFORE THE HONORABLE EDWARD A. INFANTE

San Francisco, California

Thursday, January 3, 2008

Reported by:
DANA M. FREED
CSR No. 10602

JOB No. 79867

EXHIBIT 20 PAGE 447

1              UNITED STATES DISTRICT COURT
2              CENTRAL DISTRICT OF CALIFORNIA
                      EASTERN DIVISION

3    CARTER BRYANT, an
     individual,
4
              Plaintiff,
5
         vs.                          No. CV 04-9049 SGL
6                                         (RNBx)
     MATTEL, INC., a Delaware
7    corporation,

8             Defendants.

9

10   _____

11   Consolidated with MATTEL, INC. v.
     BRYANT and MGA ENTERTAINMENT, INC.
     v. MATTEL, INC.
12   _____

13

14              Hearing before the Honorable EDWARD A. INFANTE,

15   at JAMS, Two Embarcadero Center, Suite 1500, San Francisco,

16   California, beginning at 1:30 p.m. and ending at 4:05 p.m.

17   on Thursday, January 3, 2008, before DANA M. FREED,

18   Certified Shorthand Reporter No. 10602.

19

20

21

22

23

24

25

                                                              2

EXHIBIT 20 PAGE 448

```
 1   APPEARANCES:

 2

 3   For the Plaintiff CARTER BRYANT, an individual:

 4         KEKER & VAN NEST LLP
           BY:   MATTHEW M. WERDEGAR
 5               JOHN TRINIDAD
           Attorneys at Law
 6         710 Sansome Street
           San Francisco, California 94111-1704
 7         415.391.5400

 8   For the Defendant MATTEL, INC., a Delaware
     corporation:
 9
           QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
10         BY:   JON COREY
                 TIMOTHY L. ALGER
11               B. DYLAN PROCTOR
           Attorneys at Law
12         865 Figueroa Street, 10th Floor
           Los Angeles, California 90017
13         213.443.3000

14   For the Defendants MGA Entertainment, Inc., MGA
     Entertainment (HK) Limited, and Isaac Larian:
15
           SKADDEN ARPS SLATE MEAGHER & FLOM LLP
16         BY:   RAOUL D. KENNEDY
                 AMY S. PARK
17         Attorneys at Law
           Four Embarcadero Center, 38th Floor
18         San Francisco, California 94111-5974
           415.984.6400
19
     Also Present:
20
           MAUREEN McCUAIG
21

22

23

24

25
```

3

EXHIBIT 20 PAGE 449

1   55 and 56.

2         JUDGE INFANTE:   I'm not sure those are part

3   of the motion.

4         MR. COREY:   Those are the topics relating to

5   Bryant's exit interview.   If they're not part of the

6   motion, I'll be quiet.

7         JUDGE INFANTE:   Well, I thought the motion

8   was Topics 2 through 8, 11 through 13, 24, 41 and

9   Zeus.

10        MR. TRINIDAD:   Your Honor, I believe

11  that's -- that there was an additional mention of the

12  topics that Mr. Corey was about to address in the

13  briefs.   I don't believe they were --

14        JUDGE INFANTE:   It wasn't clear.

15        MR. COREY:   I don't have the notice.

16        JUDGE INFANTE:   It wasn't clear you were

17  seeking an order as to those topics.

18        MR. COREY:   With that, I will submit unless

19  the Court has any questions.

20        JUDGE INFANTE:   No.   You've covered the

21  ground very comprehensively in your papers.

22        MR. TRINIDAD:   Your Honor, briefly --

23        JUDGE INFANTE:   I'm inclined not to grant 41,

24  because it's like proving a negative.   Julie Jensen

25  I believe testified.   Is that her name?

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

EXHIBIT _20_ PAGE _450_

1      MR. COREY:  Yes, that's correct, Your Honor

2      MR. TRINIDAD:  Right.

3      JUDGE INFANTE:  And you know, I read that.

4  And she's the one who first contacted the reporter.

5  You know, I'm inclined not to grant your 41 or Zeus.

6  I am inclined to grant you -- now that I've heard

7  Mr. Corey's arguments, I am inclined to grant the rest

8  of the motion.

9      So here's what I'll do.  I find, reading all

10  of the testimony of Mr. Hudnut, Ms. Newquist,

11  Mr. Ong Changco, O-n-g C-h-a-n-g-c-o, Ms. Pasko,

12  Ms. Pratte, P-r-a-t-t-e, and Ms. Yamamoto, Ms. Jensen

13  and Ms. Marine.  I've taken the time to read all of

14  that, and I do not feel that you adequately prepared

15  these witnesses in the spirit of Rule 30(b)(6) on

16  behalf of the corporation.

17      For the most part, these witnesses' testimony

18  was limited to their open percipient knowledge.  You

19  were operating on the notion that that was okay,

20  because of prior agreements of the parties which they

21  deny they ever made.  I've read that entire record.

22      And my judgment is to grant the motion and

23  compel Mattel to produce, at your own expense,

24  properly educated and adequately prepared 30(b)(6)

25  witnesses to testify competently as to Mattel's

82

EXHIBIT 20 PAGE 451

1    knowledge on topics 2 through 8, 11 through 13, and

2    24.

3           Mattel shall produce no more than one

4    competent witness on any one topic.  Normally, you

5    have discretion on that point to produce one or more

6    witnesses.  But I believe there's been an abuse here,

7    de-facto not necessarily intentional.  And therefore,

8    my order says you shall produce no more than one

9    competent witness on any one topic.

10          You shall comply with this order by

11   January 28th of '08.  Failure to comply with this

12   order may result in preclusion of evidence orders at

13   trial pursuant to Rule 37.

14          MGA's motion for $32,000 in attorney time,

15   plus fees for bringing this motion, is denied.

16   Because it would be unjust, under the circumstances of

17   all the history leading up to this deposition, to

18   grant such motions.  I mean, such sanctions.  The only

19   penalty I'm putting you under is the deposition shall

20   be at your expense.  Meaning court reporter fees,

21   et cetera.

22          MR. COREY:  Correct.  That's what I understood.

23   If I may ask one question.

24          JUDGE INFANTE:  Sure.

25          MR. COREY:  The --

EXHIBIT 20 PAGE 452

1          JUDGE INFANTE:  You may prepare the order.

2    I'm denying the motion as to 41.  I find the testimony

3    is adequate.

4          MR. COREY:  But by this order, the Court is

5    not compelling Mattel to provide information subject

6    to the protective order to its witnesses to prepare

7    them?

8          JUDGE INFANTE:  I'm not speaking to that.

9          You have my order.

10         MR. COREY:  Thank you, Your Honor.

11         JUDGE INFANTE:  You may prepare the order.

12   Any questions regarding what my order was?  You want

13   me to repeat it?  I'll repeat it again.

14         MR. TRINIDAD:  Certainly, Your Honor.

15         JUDGE INFANTE:  Mattel shall produce, at its

16   own expense, properly educated and adequately prepared

17   Rule 30(b)(6) witnesses to testify competently as to

18   Mattel's knowledge on topics 2 through 8, 11 through

19   13, and 24, period.  Mattel shall produce no more than

20   one competent witness on any one topic.

21         The motion is denied as to Topics 20 -- I'm

22   sorry, 41 and Zeus, that's Z-e-u-s.  Failure to comply

23   with this order may result in preclusion of evidence

24   offered by Mattel at trial pursuant to Rule 37.

25         All motions for monetary sanctions are

84

EXHIBIT _20_ PAGE _453_

1    denied, because the Court would find it is unjust

2    under the circumstances of this case to award such

3    monetary sanctions.

4              Compliance by January 28th of '08.

5              MR. TRINIDAD:  Thank you, Your Honor.

6              JUDGE INFANTE:  Okay.

7              MR. ALGER:  And again, Your Honor, for

8    clarity, when you say "at Mattel's expense," we're

9    talking about costs, not attorneys' fees?

10             JUDGE INFANTE:  Correct.

11             MR. ALGER:  Thank you.

12             JUDGE INFANTE:  Okay.  One more motion to be

13   heard.  This is Motion No. 15, Mattel's Motion to

14   Enforce the Court's Discovery Orders and to Overrule

15   Improper Instructions and For Sanctions.  This

16   pertains to 30(b)(6) witnesses produced by MGA,

17   Lisa Tonnu, T-o-n-n-u, Kenneth Lockhart, Rebecca Harris,

18   Spencer Woodman on 16 noticed topics.

19             You may proceed.

20             MR. COREY:  Thank you, Your Honor.  Jon Corey.

21   There is a lot of paper associated with this motion.

22   Is there anything in particular that you would like me

23   to address?

24             JUDGE INFANTE:  No.

25             MR. COREY:  I will make this very brief,

85

EXHIBIT 20 PAGE 454

1        I, the undersigned, a Certified Shorthand

2   Reporter of the State of California, do hereby certify:

3        That the foregoing proceedings were taken

4   before me at the time and place herein set forth; that

5   any witnesses in the foregoing proceedings, prior to

6   testifying, were duly sworn; that a record of the

7   proceedings was made by me using machine shorthand

8   which was thereafter transcribed under my direction;

9   that the foregoing transcript is a true record of the

10  testimony given.

11       Further, that if the foregoing pertains to

12  the original transcript of a deposition in a Federal

13  Case, before completion of the proceedings, review of

14  the transcript [   ] was [   ] was not requested.

15       I further certify I am neither financially

16  interested in the action nor a relative or employee

17  of any attorney or party to this action.

18       IN WITNESS WHEREOF, I have this date

19  subscribed my name.

20

21  Dated:   JAN - 4 2008

22

23

             DANA M. FREED

24               CSR No. 10602

25

EXHIBIT 20 PAGE 455

Exhibit  21

THOMAS J. NOLAN (Bar No. 66992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA  90071-3144
Telephone:  (213) 687-5000
Facsimile:   (213) 687-5600
E-mail:   tnolan@skadden.com

RAOUL D. KENNEDY (Bar No.  40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, 38th Floor
San Francisco, California  94111-5974
Telephone:  (415) 984-6400
Facsimile:   (415) 984-2698
Email:       rkennedy@skadden.com

Attorneys for Counter-Defendants,
MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA
ENTERTAINMENT (HK) LIMITED, and MGAE de MEXICO S.R.L. de C.V.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation<br><br>Defendant.<br><br>Consolidated with MATTEL, INC. v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>**DISCOVERY MATTER**<br><br>**Discovery Master Hon. Edward A. Infante (Ret.)**<br><br>[PROPOSED] ORDER REGARDING MGA AND CARTER BRYANT'S JOINT MOTION TO OVERRULE MATTEL'S RELEVANCE OBJECTIONS AND COMPEL DISCOVERY RELEVANT TO STATUE OF LIMITATIONS AND LACHES DEFENSES<br><br>**Phase I:**<br>Discovery Cut-Off:   January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date:              May 27, 2008 |

07209/2345649.1

[PROPOSED] ORDER

EXHIBIT 21 PAGE 456

MGA and Carter Bryant's Joint Motion to Overrule Mattel's Relevance Objections and Compel Discovery Relevant to Statue of Limitations and Laches Defenses came on for hearing before me on January 3, 2008.  MGA and Bryant having withdrawn their request that Mattel supplement its discovery responses, and the matter having otherwise been fully briefed and argued, and good cause appearing, IT IS HEREBY ORDERED THAT:

1.     The motion is GRANTED as to Topics 15, 16, 17, 18, 19, 20 and 21 in Carter Bryant's Rule 30(b)(6) Deposition Notice.   All of Mattel's objections as to those topics are overruled, as the information sought is relevant, *inter alia*, to MGA's and Bryant's statute of limitations and laches defenses.   Topics 19 and 21 are narrowed to the time period prior to November 24, 2003;

2.     Mattel shall produce a competent and adequately prepared Rule 30(b)(6) witness or witnesses for deposition on Topics 15, 16, 17, 18 and 20 and Topics 19 and 21 as temporally narrowed by the Discovery Master. Mattel shall have complied with this Order by January 28, 2008.

3.     A ruling on the Motion with respect to Topic 26 is deferred for consideration in connection with MGA's Motion To Compel Regarding Mattel's Privilege Waiver By Claim Assertion .

**IT IS SO ORDERED.**

DATED: Jan 9 , 2008

Hon. Edward A. Infante (Ret.)
Discovery Master

07209/2345649.1

1

[PROPOSED] ORDER

EXHIBIT 21 PAGE 457

### PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 10, 2008, I served the attached: (1) ORDER REGARDING MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF IMPROPERLY WITHHELD MGA DOCUMENT SHOWING MGA'S AND BRYANT'S MISREPRESENTATIVEIONS TO THE PATENT OFFICE IN CONNECTION WITH BRATZ AND TO COMPEL 30(B)(6) TESTIMONY; (2) ORDER REGARDING MGA AND CARTER BRYANT'S JOINT MOTION TO COMPEL THE DEPOSITION TESTIMONY OF ROBERT ECKERT; and (3) ORDER REGARDING MGA AND CARTER BRYAN'TS JOINT MOTION TO OVERRULE MATTEL'S RELEVANCE OBJECTIONS AND COMPEL DISCOVERY RELEVANT TO STATUE OF LIMITIATIONS AND LACHES DEFENSES in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 10, 2008, at San Francisco, California.

_____
Sandra Chan

EXHIBIT 21 PAGE 458

Exhibit 22

COPY

FILED

2001 SEP 28 PM 3: 16

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2     John B. Quinn (Bar No. 090378)
      (johnquinn@quinnemanuel.com)
3     Michael T. Zeller (Bar No. 196417)
      (michaelzeller@quinnemanuel.com)
4     Jon D. Corey (Bar No. 185066)
      (joncorey@quinnemanuel.com)
5     Timothy L. Alger (Bar No. 160303)
      (timalger@quinnemanul.com)
6   865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
7   Telephone: (213) 443-3000
    Facsimile: (213) 443-3100
8   Attorneys for Mattel, Inc.

9

10                  UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12                        EASTERN DIVISION

13   CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

         Plaintiff,                       Consolidated with
14                                        Case No. CV 04-09059
                                          Case No. CV 05-02727
15       vs.
                                          **DISCOVERY MATTER**
16   MATTEL, INC., a Delaware
     corporation,                         **[To Be Heard By Discovery Master
17                                        Hon. Edward Infante (Ret.)]**
         Defendant.
18                                        MATTEL, INC.'S OPPOSITION TO
                                          MGA AND CARTER BRYANT'S
19   _____          JOINT MOTION TO COMPEL RE:
                                          MATTEL'S ALLEGED BANDYING
20   AND CONSOLIDATED ACTIONS             OF 30(B)(6) WITNESSES

21                                        [Declarations of Dylan B. Proctor, Jon
                                          D. Corey and Michael T. Zeller filed
22                                        concurrently herewith]

23                                        Hearing Date: TBA
                                          Time: TBA
24                                        Place: Telephonic

25                                        Discovery Cut-off: January 14, 2008
                                          Pre-trial Conference: April 7, 2007
26                                        Trial Date: April 29, 2007

27

28

19/22217061.2
─────────────────────────────────────────────────────────────
     MATTEL'S OPPOSITION TO MGA'S AND BRYANT'S JOINT MOTION TO COMPEL RE 30(B)(6) WITNESSES

EXHIBIT 22 PAGE 459

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 3

ARGUMENT ......................................................................................................... 21

I.    THE MOTION SHOULD BE DENIED SUMMARILY BECAUSE MGA AND BRYANT AGAIN FAILED TO MEET AND CONFER BEFORE FILING IT ...................................................................................... 21

II.   MATTEL'S WITNESS PREPARATION AND DESIGNATION WAS ENTIRELY APPROPRIATE ........................................................................ 25

    A.    Rule 30(b)(6) Does Not Require A Designee to Personally Interview Witnesses or Review Documents; Preparation by Counsel Is Sufficient ................................................................... 25

    B.    Designating Multiple Witnesses for a Topic Under Rule 30(b)(6) Is Entirely Acceptable .......................................................... 26

III.  MATTEL'S 30(B)(6) DESIGNEES WERE PREPARED TO AND DID TESTIFY ON THEIR DESIGNATED TOPICS--MGA AND BRYANT SIMPLY DO NOT LIKE WHAT THEY HAD TO SAY ............. 27

IV.   PRECLUSION AND MONETARY SANCTIONS SHOULD BE SUMMARILY DENIED ............................................................................. 37

CONCLUSION ...................................................................................................... 38

07209/2217061.2

MATTEL'S OPPOSITION TO MGA'S AND BRYANT'S JOINT MOTION TO COMPEL RE 30(B)(6) WITNESSES

EXHIBIT *22* PAGE *460*

1

## TABLE OF AUTHORITIES

2
**Page**

3

### Cases

4
Alexander v. FBI,
  186 F.R.D. 137 (D.D.C. 1998) ...................................................27

6
Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.,
  190 F.R.D. 644 (N.D. Cal. 2000) ...............................................39

7
Banks v. Office of the Senate Sergeant-at-Arms,
  241 F.R.D. 370 (D.D.C. 2007)...................................................27

9
Qualcomm Inc. v. Broadcom Corp.,
  2007 WL 935617, *2 (S.D. Cal.) ..............................................38

10
Reichhold, Inc. v. U.S. Metal Refining Co.,
  No. CIV 03-453, 2007 WL 1428559, at *8 (D.N.J. May 10, 2007) ....................26

12
U.S. ex rel Fago v. M & T Mortgage Corp.,
  235 F.R.D. 11 (D.D.C. 2006) ....................................................27

13
Ward v. Circus Casinos, Inc.,
  473 F.3d 994 (9th Cir. 2007).....................................................25

15
Waters v. Weyerhaeuser Mortgage Co.,
  582 F.2d 503 (9th Cir. 1978)....................................................25

### Statutes

18
California Labor Code § 2870 ...............................................10, 30, 31

19
Federal Rule 37................................................................................39

20
Local Rule 37-1 ...........................................................................2, 23, 25

21
Rule 30(b)(6) ............................1, 2, 3, 7, 12, 13, 16, 17, 22, 23, 24, 25, 26, 27, 28, 39

22

23

24

25

26

27

28

## **Preliminary Statement**

Defendants have ignored Judge Larson's observation that their "overzealous conviction" is "no substitute for proof."  In their efforts to portray Mattel's witnesses as unknowledgeable, defendants omit important facts about the parties' prior agreements regarding their Rule 30(b)(6) topics.  These topics were overbroad and improperly called for witnesses to testify as to legal conclusions, among other deficiencies, and Mattel therefore objected to them.  The parties participated in lengthy meet and confers and agreed to narrow the topics significantly.  Mattel also made clear, and defendants agreed, that Mattel's 30(b)(6) witnesses would testify about their knowledge of facts going to the topics as narrowed, not to all facts going to any particular topic on which a witness would be designated.  Defendants also understood that Mattel could designate multiple witnesses per topic, if the topic so required, as is Mattel's right.

To read defendants' motion, it is as if none of this ever happened.  Indeed, not only do defendants fail to inform the Court about these agreements, but they fail to mention that these limitations were stipulated to.  Defendants' motion takes aim at Mattel's 30(b)(6) witnesses for giving the very information that the parties agreed they would give.

Ignoring (and not disclosing) the parties' prior agreements defendants highlight any "I don't know" answers they could find in the transcripts.  There is nothing wrong with "I don't know" answers where, as here, the questions asked were either outside the designated subject matter, completely irrelevant, or called for a legal conclusion.  Moreover, defendants have not identified any relevant, substantive information they were denied.

Nor is there anything wrong with how Mattel's witnesses were prepared.  Defendants criticize Mattel for not having required the witnesses to have gone out to interview people or review the parties' document production.  But, as defendants acknowledge, each witness met with counsel and prepared with counsel

EXHIBIT _22_ PAGE _462_

1  for his or her deposition, and the <u>Federal Rules</u> require no more than that.  Further, a

2  personal investigation by Mattel's designees would be an unnecessary undertaking

3  anyhow because Mattel designated witnesses who were involved in, and thus had

4  knowledge of, the relevant facts, and the parties agreed that Mattel's witnesses

5  would testify to facts within their own personal knowledge.

6          In any event, the Court should not even consider this motion on the

7  merits.  Defendants flagrantly misrepresent that they met and conferred with Mattel

8  before filing this motion.  They did not.  Defendants claim the parties met and

9  conferred on July 10, 2007, but their own letter dated July 11, 2007 shows

10  otherwise.  In that letter, defendants complain that the parties were **unable** to meet

11  and confer on July 10 regarding Mattel's supposed "bandying" of witnesses.  And, in

12  a letter, dated July 12, 2007 -- which defendants conceal from the Court --

13  defendants themselves acknowledge that "MGA and Bryant **will send** a second

14  letter further detailing the discovery abuses for which MGA and Bryant intend to

15  seek a protective order absent resolution of these issues."  Mattel responded by

16  committing to meet and confer when it received that letter, but the letter defendants

17  promised to send listing the issues subject to dispute never came.  Instead, two

18  months later, this motion came out of the blue.[1]

19          Mattel's 30(b)(6) witnesses were properly prepared and testified on the

20  subject matter consistent with Mattel's objections and as the parties agreed.  Because

21  it lacks merit and because defendants did not comply with the requirements of the

22  <u>Local Rules</u> and the Discovery Master Stipulation, this motion should be denied.

23

24  _____

25  [1]   Mattel offered to provide one of the witnesses who is the subject of this motion, Rene Pasko, for additional deposition time and even provided four possible

26  dates. Rather than pick one of those dates, defendants opted instead to file this motion. Similarly, with Julia Jensen, Mattel offered to meet and confer over

27  whatever issues (which had not been identified) defendants wanted to raise about

28  her deposition, but instead of meeting and conferring, defendants filed this motion.

-2-

EXHIBIT 22 PAGE 463

## Statement of Facts

### MGA and Bryant Fail to Inform the Court Of The Parties' Prior Agreements Limiting the Scope of Bryant's 30(b)(6) Topics.

MGA and Bryant fail to tell the Court anything about a March 15, 2005 transcribed meet and confer on the scope of defendant's 30(b)(6) deposition topics. Had they done so, they would have had to come clean about the fact that the parties agreed to significant limitations on many of the 30(b)(6) topics defendants now complain about--limitations which show that Mattel's witnesses testified about what they were supposed to.

For example, topics 2-7 were grossly overbroad and were framed as legal contentions.[2] Therefore, Mattel agreed to designate witnesses to testify only about "the factual basis" underlying the topics, and Bryant's counsel acknowledged that Mattel would designate one or more witnesses for each topic who would give their personal knowledge as to "factual information pertaining to these categories."[3]

---

[2]   Those topics are as follows:

Topic 2:  All contractual and non-contractual duties and obligations Bryant owed or performed for Mattel during his employment with Mattel, and thereafter.

Topic 3:  All of Bryant's acts or omissions which breached any contractual or non-contractual duty or obligation Bryant owed to Mattel.

Topic 4:  All of Bryant's acts or omissions which breached any duties or obligations imposed by the Conflict of Interest Questionnaire and/or the Employee Confidential information and Inventions Agreement.

Topic 5:  All Mattel proprietary or confidential information Bryant had access to during his employment with Mattel.

Topic 6:  All of Bryant's acts or omissions pursuant to which he aided, assisted and worked for a competitor of Mattel while employed by Mattel from 1995 to the present.

Topic 7:  The services and property belonging to Mattel that Bryant provided to any third party, including MGA, from 1995 to the present.

(footnote continued)

07209/2217061.2

EXHIBIT 22 PAGE 464

1  Had defendants not made these concessions, Mattel would have stood on its

2  objections and would not have produced witnesses in the first place because the

3  topics are overly broad and call for improper legal opinion.[4]

4

5

_____

6  [3]   Letter from Jon D. Corey to Douglas A. Wickham dated May 13, 2005 ("5/13/05 letter"), Declaration of Jon D. Corey, dated September 26, 2007 and filed

7  concurrently herewith ("Corey Dec."), Exh. 1; Deposition Transcript of Sandy Yonemoto ("Yonemoto Depo Tr."), dated May 30, 2007, Declaration of B. Dylan

8  Proctor, dated September 26, 2007 and filed concurrently herewith ("Proctor Dec."), Exh. 22, at 37:7-9; Deposition Transcript of Kislap Ongchangco ("Ongchangco

9  Depo Tr."), dated April 24, 2007, Proctor Dec., Exh. 23, at 159:2-160:14;

10  Deposition Transcript of Robert Hudnut, Vol. I ("Hudnut Depo Tr., Vol. I"), dated

11  July 13, 2007, Proctor Dec., Exh. 24, at 92:7-94:24; Deposition Transcript of Joni Pratte ("Pratte Depo Tr."), dated June 1, 2007, Proctor Dec., Exh. 26, at 8:16-9:6;

12  Deposition Transcript of Rene Pasko ("Pasko Depo Tr."), dated June 13, 2007,

13  Proctor Dec., Exh. 27, at 10:23-11:12; Meet and Confer Transcript dated March 15, 2005 ("3/15/05 Tr."), Declaration of Michael T. Zeller, filed concurrently herewith

14  ("Zeller Dec."), Exh. 1, at 156:11-159:23, 169:4-24, 173:4-176:19, 178:5-179:8,

15  191:10-21.

16  [4]   Mattel's Objections to Carter Bryant's 30(b)(6) Deposition Notice, dated December 29, 2004, Proctor Dec., Exh. 12; 3/15/05 Tr., Zeller Dec., Exh. 1, at

17  156:11-157:19, 164:24-166:18; Zeller Dec, ¶ 2.

18

19

20

21

22

23

24

25

26

27

28

-4-

EXHIBIT 22 PAGE 465

For topics 8, 11, 12, 13 and 24,[5] Mattel agreed to designate a witness to testify about "the factual basis" regarding aspects of two internal Mattel projects during 1999 and 2000 that ended up in Bratz in some form, which tends to refute Bryant's claim that he created Bratz in 1998 when he was not employed by Mattel: (1) aspects of Mattel's "Toon Teens" project; (2) certain names that Mattel considered using in connection with the DIVA STARZ project, such as "Brats" and "Boyz"; and (3) internal Mattel designs done by Steve Linker, a Mattel contractor who Paula Garcia later approached during the Summer of 2000 - before the DIVA

---

[5] Those topics are:

Topic 8:  All acts, omissions, circumstances and/or evidence showing, or tending to show, that any and all products of MGA, including but not limited to, any and all products sold under the trade name "Bratz," originated from, were derived from, are based upon, are copied or incorporated from, or are substantially or confusingly similar to, any design, research and developmental work, work in progress, or product owned at any time by Mattel or created by any Mattel employee, including but not limited to Bryant, or by any independent contractor during the time that such Person was working for Mattel.

Topic 11:  All facts and circumstances showing the conception, origination, creation, development and/or reduction to practice of "DIVA STARZ."

Topic 12 reads:  All facts and circumstances showing the conception, origination, creation, development and/or reduction to practice of "Mini DIVA STARZ."

Topic 13:  All acts, omissions, circumstances and/or evidence showing, or tending to show, that any and all products of MGA, including but not limited to, any and all products sold under the trade name "Bratz," originated from, were derived from, are based upon, copies, incorporates, or is substantially or confusingly similar to any design or work product owned at any time by Mattel or created by Bryant during the time Bryant was working for Mattel.

Topic 24:  All acts, omissions, circumstances and/or evidence showing, or tending to show, that prior to October 21, 2000, Mattel had any toy concept or project which had not yet been offered for sale to the public, including without limitation, any toy concept or project in the pre-production or development phase, that Bryant improperly copied, replicated, borrowed or otherwise used in whole, or in any part, during or after Bryant's employment with Mattel.

The parties did not come to agreement concerning the narrowing of topics 8, 11 or 12 during the March 15, 2005 meet and confer, but rather, during subsequent discussions concerning the breadth of the topics. See infra, pp. 16-22.

1  STARZ dolls were on the shelf - to work for MGA because she "was fond of [his]

2  work" on DIVA STARZ.[6]

3           On topic 41,[7] Mattel agreed to designate a witness to testify about

4  "Mattel's lack of knowledge of who made the statements (other than those made by

5  Matt Bousquette) quoted in the 2003 Wall Street Journal article."[8]

6           On topics 22, 54-56,[9] Mattel agreed to designate a witness to testify on

7  the "factual basis" regarding these topics.[10]  On topics 54-56, in particular, Mattel

8  agreed to designate a witness about "Bryant's exit interview and misrepresentations

9

10

11  [6]   Zeller Dec., ¶ 3; Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 159:2-

12  160:14; Hudnut Depo Tr., Vol. I, Proctor Dec., Exh. 24, at 92:7-94:24; Pratte Depo
    Tr., Proctor Dec., Exh. 26, at 8:16-9:6; Pasko Depo Tr., Proctor Dec., Exh. 27, at

13  10:23-11:12; Deposition Transcript of Steven Linker ("Linker Depo Tr."), dated
    September 13, 2006, at 44:3-44:22, Proctor Dec., Exh. 21.

14
    [7]   Topic 41 reads:  All statements of Mattel or ex-Mattel employees in the
15       July 2003 Wall Street Journal article (produced by Mattel to Bryant in the
         present case), including, without limitation, "Inside Mattel, some are
16       convinced the Bratz borrow liberally from a Mattel project that was
         scrapped at the testing stage in 1998"; "But the Bratz' oversized heads--
17       with their pursed lips and cartoonist eyes--are 'virtually identical' to the
         heads of the dolls her team created'" "Anyone who passed by [Lily
18       Martinez's] cubicle would see the picture up on the wall'" and "The big
         heads, the big eyes, the big feet--they were all the same [as the Bratz]."

19
    [8]   5/13/05 letter, Corey Dec., Exh. 1, at 2.
20  [9]   Those topics are:

21       Topic 22:  All acts, omissions, circumstances and/or evidence showing, or
                tending to show, that Bryant misappropriated Mattel property,
22                including without limitation intellectual property, at any time.

23       Topic 54:  Bryant's "Job Summary" report, produced by Mattel as Document
                Control Nos. M001-667-68.
24
         Topic 55:  All acts, omissions, circumstances and/or evidence showing, or
25                tending to show, that Bryant made affirmative misrepresentations to
                any and all Mattel employees upon his departure from Mattel.
26
         Topic 56:  Bryant's "Exit Interview Report" dated October 19, 2000, produced
27                by Mattel as Document Control No. M0001654.

28  [10]   Yonemoto Depo Tr., Proctor Dec., Exh. 22, at 14:9-15:17.

1   that he made in that interview, including documents bates-labeled M0011667-68

2   and M001654."[11]

3           For each topic, Bryant's counsel expressly acknowledged that Mattel

4   could designate several witnesses for a single topic, stating: "Mattel will reserve the

5   right to produce one or more witnesses on a single category, if the scope of the

6   request is broad enough that it would require it."[12] Mattel confirmed this fact in

7   subsequent letters and during deposition, and neither MGA nor Bryant ever

8   objected.[13]

9           MGA and Bryant also fail to tell the Court that these on-the-record

10  limitations were formally made applicable to all depositions on these topics by way

11  of a Stipulation and Order entered by Judge Block on May 4, 2005. That Stipulation

12  and Order, signed by all parties and the Court, expressly stated that Mattel would

13  designate witnesses pursuant to Bryant's 30(b)(6) notice "as agreed to by Bryant and

14  Mattel in the March 15, 2005 meeting of counsel and as reflected in the transcript of

15  that meeting."[14]

16  Mattel's 30(b)(6) Witnesses Were Properly Prepared To And Did Give

17  Testimony On Their Designated Topics. Defendants fail to give any cogent

18  presentation of what Mattel's 30(b)(6) witnesses said during their depositions

19  because doing so would show that the witnesses were as advertised. Each witness

20

---

21  [11] 5/13/05 letter, Corey Dec., Exh. 1, at 2; Yonemoto Depo Tr., Proctor Dec., Exh. 22, at 37:7-9.

22  [12] 3/15/05 Tr., Zeller Dec., Exh. 1, at 178:5-179:8.

23  [13] Letter from Jon Corey to Diana Torres and Douglas Wickham, dated May 16, 2005 ("5/16/05 letter"), Corey Dec., Exh. 2, at 2; Letter from Jon Corey to Keith

24  Jacoby and James Jenal, dated April 11, 2007 ("4/11/07 letter"), Corey Dec., Exh. 3, at 1; Hearing: Scheduling of 30(b)(6) Depositions Transcript, dated April 4, 2007

25  ("30(b)(6) Scheduling Hearing Tr."), Proctor Dec., Exh. 33, at 11:4-11; Deposition

26  Transcript of Jill Nordquist ("Nordquist Depo Tr."), dated July 31, 2007, Proctor Dec., Exh. 28, at 14:24-15:10.

27  [14] Stipulation and [Proposed Order] Re Certain Discovery Issues, dated May 4,

28  2005, Proctor Dec., Exh. 5, at 1.

1  testified to facts related to his or her designated topics, even though defendants'
2  counsel strayed beyond--and often far beyond--any reasonable interpretation of
3  relevance and/or demanded legal opinions.  The testimony of each witness is briefly
4  summarized below.

5       <u>Sandy Yonemoto</u>:  Ms. Yonemoto is a Senior Manager of Human
6  Resources Operations at Mattel and conducted Carter Bryant's exit interview in
7  2000.[15]  Mattel made clear to MGA and Bryant during the meet and confer process
8  that Ms. Yonemoto was designated to testify as to topics 2-7, 22, and 54-56,[16] but
9  only to the extent those topics were relevant to Carter Bryant's exit interview.[17]

10       The core facts surrounding that exit interview are not in dispute and
11  Ms. Yonemoto testified as to information reasonably available to her.  She had no
12  specific recollection of Mr. Bryant's exit interview; indeed, she conducted over 50
13  exit interviews during the roughly five years she conducted exit interviews at
14  Mattel.[18]  There is no one at Mattel she could ask about the interview since she and
15  Bryant were the only ones there.[19]  Ms. Yonemoto instead properly relied on her
16  knowledge of Mattel's practices in conducting exit interviews, and the notes she
17  made on Bryant's Exit Interview Report to testify on this topic.[20]  During that
18  interview, as memorialized by Mr. Bryant's Exit Interview Report, Bryant failed to
19  mention he was going to work for a competitor (MGA) and instead stated that he
20  was doing unrelated "illustration and product design."[21]

21

22  [15]  Yonemoto Depo Tr., Proctor Dec., Exh. 22, at 26:10-18, 146:17-21.
23  [16]  30(b)(6) Scheduling Hearing Tr., Proctor Dec., Exh. 33, at 28:24-29:9.
    [17]  5/16/05 letter, Corey Dec., Exh. 2, at 2; Yonemoto Depo Tr., Proctor Dec.,
24  Exh. 22., at 37:7-9 (". . . we have said that Sandy [Yonemoto] is here to talk about
25  the exit interview.  I mean, that's what she participated in with respect to
    Mr. Bryant.").
26  [18]  Yonemoto Depo Tr., Proctor Dec., Exh. 22, at 44:17-46:13, 57:15-18.
    [19]  <u>Id.</u> at 60:10-17.
27  [20]  <u>Id.</u> at 47:7-51:12, 59:8-12, 59:20-69:20, 77:22-78:13.
28  [21]  <u>Id.</u> at 180:23-181:2.

07209/2217061.2

-8-
MATTEL'S OPPOSITION TO MGA'S AND BRYANT'S JOINT MOTION TO COMPEL RE 30(B)(6) WITNESSES

EXHIBIT 22 PAGE 469

1      MGA and Bryant spent hours questioning Ms. Yonemoto about

2 Bryant's exit interview and the exit interview process; her testimony on these topics

3 spans nearly 30 pages.[22]  She described her experience conducting exit interviews;[23]

4 the training she received in conducting exit interviews;[24] guidelines she uses when

5 conducting exit interviews;[25] the documents she explains to employees when

6 conducting exit interviews;[26] the purpose of a Proprietary Information Checkout

7 form given to exiting employees;[27] her statements to exiting employees of their

8 obligation to return any proprietary information back to Mattel and to protect Mattel

9 trade secrets;[28] the fact that if Mattel had known Bryant would be going to a

10 competitor, he would have been immediately escorted out of the building rather than

11 having been allowed to work for another two weeks;[29] and her understanding of the

12 obligations of Mattel employees to disclose work they perform outside of Mattel.[30]

13      MGA's and Bryant's frustrations with Ms. Yonemoto's deposition are

14 more appropriately directed at the inept questioning of their own counsel.  Bryant's

15 lawyer took the lead and spent her time asking about topics that were outside the

16 witness's designation, including, for example: the circumstances under which

17 Bryant came to work at Mattel and the orientation of employees at that time;[31]

18 Mattel's "PeopleSoft" technical system used to house employee personnel

19 information;[32] whether Mattel maintains contact information for former

20

21   [22] Id. at 43:11-70:19.
22   [23] Id. at 44:17-46:17, 47:7-51:12, 59:2-7, 59:20-69:20, 88:3-93:25.
     [24] Id. at 47:7-48:7.
23   [25] Id. at 48:8-50:17, 62:24-64:6.
24   [26] Id. at 48:8-18, 49:14-50:6, 50:18-51:9, 97:5-16.
     [27] Id. at 50:18-51:9, 65:7-24, 107:1-16.
25   [28] Id. at 50:18-51:9; 65:7-24, 106:6-108:24.
26   [29] Id. at 66:16-67:19, 123:13-23, 125:2-126:16.
     [30] Id. at 114:1-126:16.
27   [31] Id. at 18:8-15.
28   [32] Id. at 80:10-84:20, 139:18-146:2.

07209/2217061.2

EXHIBIT 22 PAGE 470

-9-

1    employees;[33] Mattel's "practices with respect to having employees sign agreements

2    in the form that is reflected in Exhibit 25" [an "onboarding" form signed by all

3    Mattel employees upon hiring];[34] Mattel's prior reduction in force;[35] and

4    investigations by Mattel's Security Department.[36]  Bryant's lawyer also repeatedly

5    asked questions that required Ms. Yonemoto to testify about the "provisions of

6    Section 2870 of the California Labor Code."[37]

7             Julia Jensen.  Ms. Jensen is the Vice President of Public Relations for

8    the Girls' Division at Mattel and was designated to testify as to Topic 41, which has

9    to do with a July 2003 Wall Street Journal article.[38]  Ms. Jensen was very

10   knowledgeable about the article subject of topic 41, as shown by the fact that MGA

11   and Bryant's counsel questioned her on this single topic from approximately

12   10:15 a.m. until 3:30 p.m.[39]  Ms. Jensen testified that she was the person at Mattel

13   who, in June 2003, first contacted the reporter who wrote the article to initiate the

14

15   [33]  Id. at 152:22-154:15.

16   [34]  Id. at 34:20-35:25.

17   [35]  Id. at 129:17-133:6.
     [36]  Id. at 148:4-151:25.

18   [37]  Id. at 96:10-103:2.  Indeed, the questioning--all of which relied on improper

19   legal opinion--spans several pages of deposition transcript and conveys counsel's
     condescending tone:  "Let me help you out, Ms. Yonemoto.  Can you identify

20   anyplace on the Proprietary Information checkout form which is Exhibit 27 that
     talks about the rights of employees under Section 2870 of the California Labor

21   Code?"  Id. at 99:10-14.

22   [38]  Deposition Transcript of Julia Jensen ("Jensen Depo Tr."), dated June 8,

23   2007, Proctor Dec., Exh. 29, at 17:14-23, 21:6-23:12.
     [39]  Jensen Depo Tr., Proctor Dec., Exh. 29, at 3:1-7, 187:18-19.  MGA and

24   Bryant's counsel make much of the fact that Ms. Jensen was substituted for another

25   witness who Mattel originally designated to testify on this topic and complain that
     Ms. Jensen did not know the answers to all of the questions they asked.  One could

26   only get the impression that Ms. Jensen did not have much to say on the subject if,

27   as MGA and Bryant did in their moving papers, one simply ignores the vast amount
     of information she gave on the topic.  Her detailed testimony regarding her personal

28   involvement in the Wall Street Journal article speaks for itself.

-10-

MATTEL'S OPPOSITION TO MGA'S AND BRYANT'S JOINT MOTION TO COMPEL RE 30(B)(6) WITNESSES

EXHIBIT 22 PAGE 471

1  process;[40] she testified in detail about the number and subject matter of internal

2  discussions she had with Matt Bousquette, president of Mattel brands, and Lisa

3  Tauber, Director of Marketing, including the documents she reviewed during those

4  meetings;[41] that Mattel was interested in giving the Wall Street Journal an exclusive

5  for the launch of the Flavas brand;[42] Mattel's prior experience with the Wall Street

6  Journal reporter;[43] the substance and timing of at least six telephone conversations

7  with the Wall Street Journal reporter before the article was published;[44] her

8  arranging for the reporter to preview the Flavas dolls along with Mattel's doll line;[45]

9  the identities of individuals who spoke with the reporter at Toy Fair 2003 and the

10  substance of those discussions;[46] what she learned from the reporter regarding the

11  reporter's interviews of other individuals for the story, such as retailers, Isaac Larian,

12  and Lily Martinez, a Mattel designer;[47] Ms. Jensen's internal discussions at Mattel

13  and subsequent conversations with the reporter;[48] and a sentence-by-sentence review

14  of the article and what she knew about each sentence in terms of its source, her

15  discussions with anyone at Mattel or the reporter herself about the topic of the

16  sentence.[49]

17

18

---

[40] Jensen Depo Tr., Proctor Dec., Exh. 29, at 25:21-26:9.
[41] Jensen Depo Tr., Proctor Dec., Exh. 29, at 26:11-36:7.
[42] Jensen Depo Tr., Proctor Dec., Exh. 29, at 29:2-30:16, 33:8-16.
[43] Jensen Depo Tr., Proctor Dec., Exh. 29, at 31:12-32:17.
[44] Jensen Depo Tr., Proctor Dec., Exh. 29, at 39:3-40:15, 50:3-52:4, 52:18-56:10, 57:17-65:11, 65:12-67:5, 67:6-72:14.
[45] Jensen Depo Tr., Proctor Dec., Exh. 29, at 41:21-42:7, 45:7-47:23.
[46] Jensen Depo Tr., Proctor Dec., Exh. 29, at 78:15-79:22, 92:12-93:18, 97:21-99:15, 136:19-137:12, 138:17-140:22, 144:21-145:23.
[47] Jensen Depo Tr., Proctor Dec., Exh. 29, at 60:2-64:13, 67:14-72:14, 135:3-16.
[48] Jensen Depo Tr., Proctor Dec., Exh. 29, at 72:22-73:18, 75:6-22, 94:14-95:4.
[49] Jensen Depo Tr., Proctor Dec., Exh. 29, at 79:23-81:5, 81:19-25, 83:2-88:16, 90:3-18, 92:7-11, 96:2-101:10, 104:12-107:25, 112:4-117:8, 118:18-124:4, 125:12-133:6, 136:9-141:25, 143:6-145:23, 156:7-165:5, 185:5-186:15.

1        That article also purports to quote Mattel employees or ex-Mattel

2  employees as unnamed sources for the article. Mattel told MGA and Bryant on

3  numerous occasions that Mattel did not know the identities of those unnamed

4  sources and so a 30(b)(6) witness would only be testifying to that lack of

5  knowledge.[50] Bryant's counsel acknowledged that fact and agreed to the production

6  of a witness by Mattel with those limitations.[51]

7        However, after Ms. Jensen's deposition, MGA's counsel sent an e-mail

8  to Mattel's counsel complaining that Ms. Jensen did not know the identities of the

9  unnamed sources and had not herself engaged in an investigation to find out the

10  information.[52] This is patently false as Ms. Jensen testified that she asked Maureen

11  Tkacik, the Wall Street Journal reporter, who her sources were.[53] Ms. Jensen also

12  had discussions with counsel preparing for her deposition, and counsel had

13  previously and repeatedly told defendants that Mattel simply did not know who the

14  sources were.[54] In response to the email, Mattel's counsel wrote back and asked for

15  MGA to identify any specific information that was "asked for and not provided by

16  Ms. Jensen," and, while not agreeing with MGA's complaint, offered to meet and

17  confer over those questions that Ms. Jensen allegedly failed to answer sufficiently.[55]

18  Mattel's counsel also offered to meet and confer regarding those questions and

19  answers pursuant to the Discovery Stipulation.[56] Rather than respond, defendants

20  simply filed this motion. Furthermore, Ms. Tkacik herself has been noticed for

---

[50]  5/13/05 letter, Corey Dec., Exh. 1, at 2; 3/15/05 Tr., Zeller Dec., Exh. 1, at 353:9-23; 354:19-355:21.

[51]  3/15/05 Tr., Zeller Dec., Exh. 1, at 356:12-15, 357:17-24; Jensen Depo Tr., Proctor Dec., Exh. 29, at 22:23-23:11.

[52]  Email from James Jenal to Timothy Alger, dated August 11, 2007 ("8/11/07 email"), Proctor Dec., Exh. 6.

[53]  Jensen Depo Tr., Proctor Dec., Exh. 29, at 122:20-123:12.

[54]  3/15/05 Tr., Zeller Dec., Exh. 1, at 354:19-355:2, 356:16-20.

[55]  Letter from Timothy L. Alger to James Jenal, dated August 21, 2007 ("8/21/07 letter"), Proctor Dec., Exh. 7.

EXHIBIT 22 PAGE 473

MATTEL'S OPPOSITION TO MGA'S AND BRYANT'S JOINT MOTION TO COMPEL RE 30(B)(6) WITNESSES

07209/2217061.2

1  deposition in this case (scheduled for September 28) and defendants may ask her

2  any of the questions about the article they like.[57]

3       Julia Marine:  MGA and Bryant do not have any substantive

4  complaints about Ms. Marine's testimony at all, but rather, simply repeat their now

5  tired refrain that her testimony was "flatly contradicted" by the testimony of Michael

6  Moore, Mattel's in-house counsel.[58]  MGA and Bryant argued all of this at length in

7  their motion for terminating sanctions, and Judge Larson already found that there is

8  no conflict in testimony.[59]  On September 21, 2006 and November 8, 2006,

9  Ms. Marine testified as a 30(b)(6) witness on the Zeus system between 1998 and

10  2000.[60]  She was simply **never asked** what Zeus backup tapes were available during

11  these depositions.[61]  Months later, on June 26, 2007, Ms. Marine was deposed on an

12  entirely different Rule 30(b)(6) topic - namely, the document management system

13  used by designers at Mattel's Design Center.[62]  It was not until then, seven and a half

14  months later, on a different topic, and at the very end of her deposition, that

15  Ms. Marine was asked about the Zeus backup tapes Mattel did or did not possess.[63]

16  As Judge Larson already found, Ms. Marine did not testify that Zeus backup tapes

17

18  [56]  Id.

19  [57]  Notice of Deposition of Maureen Tkacik, Denise O'Neil, Christopher Palmeri and Jeff Weiss, dated August 6, 2007, Proctor Dec., Exh. 35.

20  [58]  MGA Entertainment, Inc.'s and Carter Bryant's Joint Motion to Compel Re:

21  Mattel's Bandying of 30(b)(6) Witnesses ("Motion"), dated September 6, 2007 at 17:2-12.

22  [59]  Hearing: MGA's Motion for Terminating Sanctions Transcript ("Terminating

23  Sanctions Tr."), dated August 27, 2007, Proctor Dec., Exh. 34, at 66:8-22, 93:21-24.

24  [60]  Deposition Transcript of Julia Marine, Volume I ("Marine Depo Tr., Vol. I"), dated September 21, 2006, Proctor Dec., Exh. 30, at 11:24-12:12; Deposition

25  Transcript of Julia Marine, Volume II ("Marine Depo Tr., Vol. II"), dated November 8, 2006, Proctor Dec., Exh. 31, at 81:18-21.

26  [61]  Terminating Sanctions Tr., Proctor Dec., Exh. 34, at 79:22-80:22.

27  [62]  Deposition Transcript of Julia Marine, Volume III ("Marine Depo Tr., Vol. III"), dated June 26, 2007, Proctor Dec., Exh. 32, at 161:16-19.

28  [63]  Marine Depo Tr., Vol. III, Proctor Dec., Exh. 32, at 243:5-244:19.

EXHIBIT 22 PAGE 474

1  did not exist as MGA and Bryant claim, she simply said that she did not know.[64]  No

2  matter how often or loudly MGA and Bryant assert otherwise, it does not make it so.

3         Jill Nordquist:  Ms. Nordquist is Director of Mattel Brands Consumer

4  Products and was formerly the Marketing Manager for Barbie Collectibles, the

5  group within Mattel for which Carter Bryant worked.[65]  Ms. Nordquist was

6  designated to testify as to portions of topics 2-7 and 55, specifically, her knowledge

7  concerning misstatements Carter Bryant made about his departure from Mattel.[66]

8  She testified extensively (her deposition ran from approximately 9:45 a.m. until

9  7:00 p.m.)[67] on facts relevant to those topics, including, for example:  her work and

10  interaction with Carter Bryant while he and Ms. Nordquist worked in the Design

11  Center;[68] Bryant's design work at Mattel;[69] meetings she had with Bryant;[70] the

12  layout of the Design Center;[71] what Bryant said and failed to say about his leaving

13  Mattel;[72] her discussions with others (both before and after he left Mattel) about

14  Bryant's failure to disclose that he was going to a competitor;[73] and her

15  understanding of Mattel employees' responsibilities to disclose to Mattel any work

16  done outside of Mattel.[74]

17

18    [64]  Marine Depo Tr., Vol. III, Proctor Dec., Exh. 32, at 239:9-240:5; Terminating

19  Sanctions Tr., Proctor Dec., Exh. 34, at 66:8-22; 93:21-24.  Mattel also offered to produce Zeus backup tapes for 1998 to 2001, but defendants never responded to

20  Mattel's letter.  Corey Dec., ¶ 4.

21    [65]  Nordquist Depo Tr., Proctor Dec., Exh. 28, at 29:10-20; 57:2-6.

  [66]  30(b)(6) Scheduling Hearing Tr., Proctor Dec., Exh. 33, at 20:14-18, 27:23-

22  24, 29:15-16, 30:14-15; Nordquist Depo Tr., Proctor Dec., Exh. 28, at 14:8-23,

23  144:11-145:9, 124:18-24, 180:18-181:1.

  [67]  Nordquist Depo Tr., Proctor Dec., Exh. 28, at 5:4-6, 298:1-3.

24    [68]  See e.g., id. at 56:5-58:5, 59:5-71:9.

  [69]  Id. at 67:6-21, 110:10-111:20.

25    [70]  Id. at 63:15-67:5.

26    [71]  Id. at 145:11-148:18, 160:13-167:6.

  [72]  Id. at 122:25-130:1, 141:20-145:9, 179:18-181:11.

27    [73]  Id. at 132:20-138:15, 186:16-191:20.

28    [74]  Id. at 149:4-160:11.

EXHIBIT 22 PAGE 475

-14-

MATTEL'S OPPOSITION TO MGA'S AND BRYANT'S JOINT MOTION TO COMPEL RE 30(B)(6) WITNESSES

1   Although Ms. Nordquist had much detail to give about the relevant

2   topics, Bryant's counsel chose to spent inordinate amounts of time on plainly

3   irrelevant matters such as whether members of the Design Team at Mattel were

4   considered to be "cute" or "not cute,"[75] and about an incident during which Carter

5   Bryant cried because a doll idea of his was not well received, focusing on issues

6   such as:  whether Bryant was "audibly sobbing;"[76] what kinds of sounds Bryant

7   made (whether he was sobbing, wailing, or making some other noise);[77] whether he

8   was "running" out of the room or "just moving quickly;"[78] how many feet long the

9   room was;[79] whether there was a big table in the room;[80] whether there was one

10  table in the room;[81] and whether the exit was "on one of the longer sides of the

11  rectangle or on one of the shorter sides."[82]

12          MGA's counsel also questioned Ms. Nordquist at length about matters

13  that had nothing to do with Ms. Nordquist's designated topics, including, for

14  example: preservation of emails and documents for this litigation;[83] matters relating

15  to Mattel's trade secrets claims;[84] and her familiarity with MY SCENE (including its

16  origins, target consumer, media brief, and marketing practices).[85]

17          <u>DIVA STARZ Witnesses and the Relevance of the DIVA STARZ</u>

18  <u>Project</u>.  Four witnesses identified in the motion, Joni Pratte, Kislap Ongchangco,

19  Rene Pasko and Robert Hudnut, were designated to testify as to two narrow aspects

20  of DIVA STARZ.  DIVA STARZ is a line of fashion dolls Mattel first released in

---

[75]  <u>Id.</u> at 115:8-116:3.
[76]  <u>Id.</u> at 83:22-25.
[77]  <u>Id.</u> at 84:3-19.
[78]  <u>Id.</u> at 85:12-14.
[79]  <u>Id.</u> at 85:16-86:13, 90:2-9.
[80]  <u>Id.</u> at 88:19.
[81]  <u>Id.</u> at 88:21, 90:14-15.
[82]  <u>Id.</u> at 90:25-91:13.
[83]  <u>Id.</u> at 197:23-210:11, 220:24-228:4.
[84]  <u>Id.</u> at 210:12-220:23.

EXHIBIT 22 PAGE 476

1  2000, that included four different dolls with distinct personalities.[86]  Although DIVA

2  STARZ was a vast project, only two narrow aspects of it are relevant to this case:

3  certain DIVA STARZ drawings and certain names that were considered for the

4  project.  These included certain names such as "Chat Brats," "Brats," "Girlz,"

5  "Boyz," "Diva Girlz," "Little Brats," and "Bratty Little Sister"[87] and documents and

6  designs for the DIVA STARZ project which pre-date the release of Bratz and were

7  never publicly released, but which nonetheless share common elements with the

8  Bratz dolls.[88]

9          Mattel has never argued that MGA or Mr. Bryant had direct access to

10  electronic files relating to DIVA STARZ, but rather, that Paula Garcia (a former

11  Mattel employee who left to become MGA's Bratz project manager), Carter Bryant

12  and other former Mattel employees associated with MGA had access to DIVA

13  STARZ sketches, prototypes, and names based on the physical location of their

14  workspaces in the Design Center and on the personal involvement of Ms. Garcia and

15  other former Mattel employees in the DIVA STARZ project and their relationship

16  with others who worked on DIVA STARZ.  DIVA STARZ was in development in

17  the Mattel Design Center--the same physical location where Bryant worked in 1999

18  through October 2000.[89]  Anyone who had access to the Design Center (like

19  Mr. Bryant and Ms. Garcia) also had access to other projects being worked on in

20

21

22

23  [85]  Id. at 228:5-239:16.
     [86]  Pratte Depo Tr., Proctor Dec., Exh. 26, at 89:3-23; Pasko Depo Tr., Proctor
24  Dec., Exh. 27, at 180:2-12, 188:17-189:9.
     [87]  Pratte Depo Tr., Proctor Dec., Exh. 26, at 106:24-107:7, 111:1-15;
25  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 33:14-22, 201:17-202:5.
     [88]  See, e.g., documents Bates numbered M 0016585-M 0016586.001, M
26  0016817, M 0016504, TP 0008, TP 0009 and TP 0011, Proctor Dec., Exh. 8.
27  [89]  See Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 15:2-18:2; see also
28  Pasko Depo Tr., Proctor Dec., Exh. 27, at 89:13-92:11.

-16-

EXHIBIT 22 PAGE 477

07209/2217061.2

1  that space, including DIVA STARZ.[90] Ms. Garcia worked directly on the DIVA

2  STARZ project while she was at Mattel, and describes Maureen Mullen, the original

3  designer on DIVA STARZ, as one of her friends at Mattel.[91] In fact, Ms. Garcia

4  hired Ms. Mullen as a contractor for MGA in 2000.[92]

5          Mattel told defendants that its 30(b)(6) witnesses would be testifying to

6  facts within their personal knowledge concerning DIVA STARZ, and defendants

7  never objected.[93] Mattel's witnesses on DIVA STARZ testified as follows:

8          Joni Pratte: Ms. Pratte is a Product Design Manager for Mattel and has

9  previously worked as a packaging designer on DIVA STARZ, Mini DIVA STARZ,

10 ────────────

11 [90] See e.g., Hudnut Depo Tr., Vol. I, Proctor Dec., Exh. 24, at 194:15-195:7; see
   also Deposition Transcript of Ann Driskill, Volume I, dated December 15, 2004,
12 Proctor Dec., Exh. 14, at 205:3-16; Pratte Depo Tr., Proctor Dec., Exh. 26, at
   140:17-19; Nordquist Depo Tr., Proctor Dec., Exh. 28, at 179:8-17.
13 [91] See Pasko Depo Tr., Proctor Dec., Exh. 27, at 42:13-42:20, 95:15-24; see also
14 Deposition Transcript of Paula Garcia, Volume I ("Garcia Depo Tr., Vol. I"), dated
   May 24, 2007, Proctor Dec., Exh. 15, at 193:1-16.
15 [92] Garcia Depo Tr., Vol. I, Proctor Dec., Exh. 15, at 191:20-192:15.
16 [93] Pasko Depo Tr., Proctor Dec., Exh. 27, at 10:23-11:12, 26:20-27:12; Pratte
   Depo Tr., Proctor Dec., Exh. 26, at 8:16-9:6; Ongchangco Depo Tr., Proctor Dec.,
17 Exh. 23, at 159:2-160:6; Hudnut Depo Tr., Vol. I, Proctor Dec., Exh. 24, at 92:7-
18 94:24. MGA also did not contest the limited scope of Mattel's production of
   documents related to the DIVA STARZ project. See Mattel, Inc.'s Responses to
19 MGA's First Set of Requests for the Production of Documents and Things, dated
20 March 7, 2005, at Responses to Request Nos. 131, 135, 137-139, Proctor Dec.,
   Exh. 9; see also Mattel's Supplemental Responses to MGA's First Set of Requests
21 for Production of Documents and Things, dated January 5, 2007, at Responses to
22 Request Nos. 132, 134 and 136, Proctor Dec., Exh. 10. Although MGA has filed a
   motion to compel on this set of requests, MGA did not include any requests relating
23 to DIVA STARZ. See Proctor Dec., ¶ 12. To the contrary, MGA has admitted that
24 it does not want all of the documents and details concerning the DIVA STARZ
   project, telling the Discovery Master that it only seeks "documents relating to the
25 original artwork or work product that Mattel claims Bryant copied." Reply of MGA
26 Entertainment, Inc. in Support of its Motion to Compel Mattel, Inc. to Supplement
   its Responses and Produce Documents Responsive to MGA's First Set of Requests
27 for the Production of Documents and Things, dated July 26, 2006, Proctor Dec.,
28 Exh. 11, at 18:1-3.

1    and other Mattel products.[94]  Ms. Pratte was designated to testify on topics 2-7, 8,

2    13, and 24,[95] and Mattel repeatedly told MGA and Bryant that Ms. Pratte would be

3    testifying as to her personal knowledge about DIVA STARZ.  MGA's and Bryant's

4    counsel readily accepted this fact.[96]  She testified from 10:00 a.m. until 5:00 p.m.

5    about (among other things):  the logo design and development of the DIVA STARZ

6    product;[97] the design of DIVA STARZ packaging dating back to at least

7    September/October 1999;[98] the design of Mini DIVA STARZ packaging;[99] and the

8    different names considered for the DIVA STARZ and Mini DIVA STARZ,

9    including "Girlz," "Diva Girlz," "Chat Girls" and "Chat Brats.[100]

10            She also testified about other issues that go to the designated topics

11   including, for example:  similarities she saw between the packaging for Bratz dolls

12   and the earlier-introduced DIVA STARZ packaging;[101] and her understanding of her

13   responsibility to inform her supervisor of any work she did outside Mattel and her

14   not having used Mattel resources to do work for something outside Mattel.[102]

15            Kislap Ongchangco:  Mr. Ongchangco designs toys for Mattel and

16   worked on the DIVA STARZ project.[103]  He was also designated to testify on topics

17   2-7, 8, 12, 13, 24, with the same limitations as Ms. Pratte.[104]  Like Ms. Pratte,

18   _____

19   [94]   Pratte Depo Tr., Proctor Dec., Exh. 26, at 9:14-24, 11:20-23, 15:18-16:2,
      16:12-21, 57:5-8.

20   [95]   Pratte Depo Tr., Proctor Dec., Exh. 26, at 7:20-9:6; 30(b)(6) Scheduling
      Hearing Tr., Proctor Dec., Exh. 33, at 9:17-20.

21   [96]   Pratte Depo Tr., Proctor Dec., Exh. 26, at 8:16-25, 9:1-6.

22   [97]   Pratte Depo Tr., Proctor Dec., Exh. 26, at 78:21-81:4.

23   [98]   Pratte Depo Tr., Proctor Dec., Exh. 26, at 18:8-14, 21:7-22:13, 26:15-35:13.
      [99]   Pratte Depo Tr., Proctor Dec., Exh. 26, at 205:22-206:19.

24   [100]   Pratte Depo Tr., Proctor Dec., Exh. 26, at 36:10-21, 68:1-8, 106:24-107:7,
      111:1-15.

25   [101]   Pratte Depo Tr., Proctor Dec., Exh. 26, at 71:6-72:25, 81:5-84:4, 105:3-14.

26   [102]   Pratte Depo Tr., Proctor Dec., Exh. 26, at 122:22-132:8, 133:1-137:15.
      [103]   Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 11:3-14; 14:14-19.

27   [104]   Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 159:2-160:3; 200:23-201:5;

28   30(b)(6) Scheduling Hearing Tr., Proctor Dec., Exh. 33, at 12:9-16.

-18-

MATTEL'S OPPOSITION TO MGA'S AND BRYANT'S JOINT MOTION TO COMPEL RE 30(B)(6) WITNESSES

EXHIBIT _22_ PAGE _479_

1  Mr. Ongchangco testified from about 9:45 a.m. until 5:30 p.m.[105] about his

2  knowledge concerning the Linker drawings, namely, the circumstances under which

3  he had previously seen them at Mattel, when that occurred, and the similarities

4  between the drawings and the Bratz dolls.[106]  He also testified as to DIVA STARZ

5  having been referred to internally as "Chat Girls," and Mini DIVA STARZ having

6  been referred to as "Little Brats," and how those names were considered for the final

7  product.[107]  He testified about how the names "Brats" and "Chat Brats" were

8  considered for DIVA STARZ and Mini DIVA STARZ.[108]  He testified about his

9  work on Mini DIVA STARZ;[109] the involvement of Maureen Mullen (as

10  preliminary designer), and Rene Pasko (as the accessories designer) on DIVA

11  STARZ;[110] the development of Mini DIVA STARZ for public sale;[111] and the

12  differences between different "generations" of Mini DIVA STARZ.[112]

13          <u>Rene Pasko</u>:  Ms. Pasko was a Senior Designer when she began

14  working on DIVA STARZ, and was designated on topics 2-8, 11-13 and 24.[113]

15  Ms. Pasko gave many details about DIVA STARZ project, including, for example:

16  the nature and scope of her work on DIVA STARZ; the use of other names for the

17  DIVA STARZ project including "Chat Girls" and "Cool Talk'n Teens"; the approval

18  process and product development milestones; drawings and illustrations related to

19

20  [105]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 5:5-7; 277:15-17.

21  [106]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 177:12-191:9.
     [107]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 33:14-22; 55:4-14; 201:6-

22  16.
     [108]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 201:17-202:5.

23  [109]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 35:10-37:2.

24  [110]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 15:2-22; 21:10-17; 26:5-20;
  58:6-59:22.

25  [111]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 24:24-25:16.

26  [112]  Ongchangco Depo Tr., Proctor Dec., Exh. 23, at 65:18-67:8.

27  [113]  Pasko Depo Tr., Proctor Dec., Exh. 27, at 29:13-17, 10:23-11:12; 4/11/07
  letter, Corey Dec., Exh. 3, at 1; 30(b)(6) Scheduling Hearing Tr., Proctor Dec.,

28  Exh. 33, at 13:10.

EXHIBIT 22 PAGE 480

MATTEL'S OPPOSITION TO MGA'S AND BRYANT'S JOINT MOTION TO COMPEL RE 30(B)(6) WITNESSES

07209/2217061.2

1   DIVA STARZ; comparisons between physical DIVA STARZ dolls and illustrations

2   and Bratz dolls; and her display of DIVA STARZ illustrations on her cubicle walls

3   in Mattel's Design Center.[114]

4         MGA's counsel took so long with Ms. Pasko that Bryant's counsel did

5   not even get an opportunity to question her, despite her deposition lasting from

6   about 10:00 a.m. until after 7:00 p.m.[115]   Accordingly, Mattel's counsel offered to

7   make her available again during the deposition and offered four different and

8   definite dates for her continued deposition in writing just two days later.[116]   Instead

9   of accepting one of those offered dates or responding to the letter of Mattel's

10   counsel, MGA and Bryant instead filed this motion.[117]

11         <u>Robert Hudnut</u>:   Mr. Hudnut is Mattel's Vice President, Executive

12   Producer Mattel Entertainment, and was designated to testify as to limited aspects of

13   topics 2-7, 8, 11, 13, 24, namely, his work on the scripts and pitch for a potential

14   DIVA STARZ television show.[118]   Mr. Hudnut testified that he first became

15   involved in the DIVA STARZ Entertainment project in late 1999 or early 2000;[119]

16   gave details about a  brainstorming meeting he attended regarding the creation of

17   DIVA STARZ story content;[120] the creation of the DIVA STARZ "Character

18   Bible";[121] the preparation and results of a pitch to network television executives;

19

20   [114] Pasko Depo Tr., Proctor Dec., Exh. 27, at 183:3-186:21.

   [115] Pasko Depo Tr., Proctor Dec., Exh. 27, at 5:5-16, 212:25-213:18.

21   [116] Letter from Michael Zeller to Diana Torres and John Trinidad, dated

22   June 15, 2007 ("6/15/07 letter"), Zeller Dec., Exh. 2.

   [117] Zeller Dec., ¶ 4.

23   [118] 4/11/07 letter, Corey Dec., Exh. 3, at 1; Hudnut Depo Tr., Vol. I, Proctor

24   Dec., Exh. 24, at 92:17-25, 93:15-16, 93:13-94:2, 97:13-21.  Indeed, counsel for

25   Mattel noted at the deposition that, "It's only the portions of those topics that deal

with his knowledge as to the scripts that might be pertinent to those topics.  So it's

26   not those entire topics." <u>Id.</u> at 93:24-94:2.

   [119] Hudnut Depo Tr., Vol. I, Proctor Dec., Exh. 24, at 129:3-6.

27   [120] <u>Id.</u> at 129:18-141:20.

28   [121] <u>Id.</u> at 141:21-144:14.

EXHIBIT 22 PAGE 481

MATTEL'S OPPOSITION TO MGA'S AND BRYANT'S JOINT MOTION TO COMPEL RE 30(B)(6) WITNESSES

07209/2217061.2

1  discussions with Maureen Mullen concerning the television show;[122] and the multi-

2  ethnic nature of the DIVA STARZ dolls, their different characters, their oversized

3  heads, feet and big eyes.[123]

4          MGA and Bryant chastise Mr. Hudnut for having "childcare issues" as

5  if he had somehow left his deposition early.[124]  But Mr. Hudnut's deposition ran

6  from 9:30 a.m. until 4:30 p.m. on the first day and then he appeared for a second day

7  of deposition, stating that he did not need to leave at any particular time.[125]  After 45

8  minutes of questioning Mr. Hudnut on the second day, none of which had to do with

9  the topic on which Mr. Hudnut was designated, counsel stated he had no further

10  questions.[126]

11                              **Argument**

12  I.    **THE MOTION SHOULD BE DENIED SUMMARILY BECAUSE MGA**

13        **AND BRYANT AGAIN FAILED TO MEET AND CONFER BEFORE**

14        **FILING IT**

15          Defendants claim that the parties met and conferred on July 10, 2007,

16  but that is false.  On July 2, 2007, MGA and Bryant requested that Mattel meet and

17  confer regarding Mattel's Third Set of Interrogatories and its supposedly "abusive"

18

19  [122] Id. at 151:4-152:3, 160:14-161:2.

20  [123] Id. at 173:24-174:6.  Mr. Hudnut also testified about his having negotiated a
    side agreement to his Confidential Information and Inventions Agreement which

21  clarified what he had created prior to starting again with Mattel to ensure there were

22  no conflicts of interest.  Id. at 209:2-220:3.

23  [124] Motion at 5 n.11.

    [125] Deposition of Robert Hudnut, Volume II, dated August 20, 2007 ("Hudnut

24  Depo Tr., Vol. II"), Proctor Dec., Exh. 25, at 244:15-17:

25          MR. PAGE:          Just to check, do you need to leave at any
                               particular time to pick up children or

26                             anything?

27          MR. HUDNUT:        Today, no.

28  [126] Id. at 243:4-6, 269:23-24.

07209/2217061.2                            EXHIBIT 22 PAGE 482

1  discovery practices.[127] As to Mattel's purportedly "abusive" discovery practices,

2  defendants only stated that "Mattel has engaged in a multitude of discovery abuses,

3  including improper use of the Rule 30(b)(6) deposition notice procedure to avoid

4  noticing witnesses in their individual capacity, bandying, and exceeding the page

5  limits on motions filed before the Discovery Master, among others."[128] Defendants

6  provided <u>no</u> further detail regarding their claims of Mattel's alleged "bandying" and

7  other purported discovery abuses.[129]

8          During a conference on July 10, 2007, the parties discussed defendants'

9  separate motion regarding Mattel's interrogatories, but Mattel explained that it could

10  not meet and confer on defendants' allegations regarding Mattel's "bandying"

11  because defendants failed to explain their concerns, or identify topics or witnesses at

12  issue.[130] In response, defendants identified Kislap Ongchangco, as an allegedly

13  unprepared witness.[131] Counsel for Mattel explained to defendants that because he

14  was not involved in Mr. Ongchangco's deposition and had no prior notice that

15  Mr. Ongchangco's deposition (or any other deposition) was at issue, he could not

16  discuss the matter at that time.[132] Counsel for Mattel requested that defendants

17  provide a letter that complied with <u>Local Rule</u> 37-1 and the Discovery Master

18  Stipulation and that specified which 30(b)(6) witnesses defendants believed were

19  not sufficiently knowledgeable, what aspects of their testimony defendants found to

20  be troublesome, and how Mattel engaged in supposed bandying.[133]

21          The next day, July 11, 2007, MGA wrote to Mattel and explained that

22  "MGA is concerned about the testimony of Mattel's 30(b)(6) witnesses in general,

---

[127] Letter from James Jenal to Dylan Proctor, dated July 2, 2007, Proctor Dec., Exh. 1.

[128] <u>Id.</u>

[129] <u>Id.</u>

[130] Proctor Dec., ¶ 3.

[131] <u>Id.</u>

[132] <u>Id.</u>

EXHIBIT 22 PAGE 483

MATTEL'S OPPOSITION TO MGA'S AND BRYANT'S JOINT MOTION TO COMPEL RE 30(B)(6) WITNESSES

I7209/2217061.2

1 including, but not limited to the testimony of Julia Jensen, Kislap Ongchangco,

2 Rene Pasko, Joni Pratte, and Sandy Yonemoto with respect to topics 2-8 and 41 of

3 Carter Bryant's Notice of Rule 30(b)(6) depositions. . . MGA is seeking for Mattel to

4 produce a properly educated 30(b)(6) witness who can testify competently as to

5 Mattel's knowledge on these topics."[134]  Topics 11-13, 22, 24, and 54-56 were not

6 mentioned.  Nor were witnesses Robert Hudnut, Jill Nordquist or Julia Marine.

7       On July 12, 2007, the next day,  MGA wrote another letter to Mattel,

8 promising to send a "second letter further detailing the discovery abuses for which

9 MGA and Bryant intend to seek a protective order absent resolution of these

10 issues."[135]  Mattel responded to both letters on July 15, 2007 and explained that

11 defendants had yet to provide sufficient notice of what aspects of the topics they

12 believed needed to be further addressed or what further testimony should be offered

13 by Mattel.[136]  Mattel pointed out that in its most recent letter, MGA promised to

14 send a proper meet and confer letter which would enable Mattel to prepare for the

15 meet and confer, and Mattel committed to meet and confer on these matters once

16 defendants provided the promised second meet and confer letter.[137]  MGA never

17 sent the letter it promised to send and never responded to Mattel's July 15 letter.[138]

18 Instead, nearly two months later, it filed this motion.

19       MGA and Bryant also failed to meet and confer regarding Julia

20 Jensen's deposition on topic No. 41.  On August 11, 2007, MGA demanded that

21 Mattel designate Jules Andres as a Rule 30(b)(6) witness regarding Topic No. 41 of

---

22 [133] Id.

23 [134] Letter from William Charron to Dylan Proctor, dated July 11, 2007, Proctor

24 Dec., Exh. 2.

25 [135] Letter from Jennifer Glad to Dylan Proctor, dated July 12, 2007, Proctor Dec., Exh. 3.

26 [136] Letter from Dylan Proctor to Jennifer Glad and William Charron, dated

27 July 15, 2007, Proctor Dec., Exh. 4.

[137] Id.

28 [138] Proctor Dec., ¶ 6.

EXHIBIT 22 PAGE 484

07209/2217061.2

1  Carter Bryant's Rule 30(b)(6) Notice of Deposition.[139]  Counsel for Mattel replied on

2  August 21, reminding MGA that Mattel had offered Julia Jenson as its topic 41

3  witness instead of Ms. Andres, and that MGA and Bryant had accepted that offer.[140]

4  Mattel offered to meet and confer with defendants on Topic No. 41 once defendants

5  identified the specific information to which MGA and Bryant claimed they are

6  entitled that was asked for and not provided by Ms. Jensen.[141]  Rather than respond

7  to this Mattel letter,[142] defendants filed this motion.

8        Likewise, defendants failed to meet and confer regarding Rene Pasko's

9  deposition.  Defendants spent so much time questioning Ms. Pasko that they did not

10  finish her deposition the first day even though she testified from 10:00 a.m. until

11  7:00 p.m.  On June 15, 2007, two days later, Mattel offered four additional dates for

12  Ms. Pasko's continued deposition.[143]  Again, rather than respond, defendants filed

13  this motion.

14        Local Rule 37-1 and the Discovery Stipulation plainly require

15  defendants to meet and confer with Mattel before filing a motion to compel.  This

16  motion raises issues, topics, and witnesses that were never identified during any

17  meet and confer, and seeks  substantial sanctions, both monetary and evidentiary,

18  that were never mentioned either.  The Court should reject defendants' motion for

19  their false certification to the Court that they met and conferred with Mattel before

20  filing and for their failure to comply with the requirements of the Local Rules and

21  the Discovery Master Stipulation.  Ward v. Circus Casinos, Inc., 473 F.3d 994, 1000

22  (9th Cir. 2007); Waters v. Weyerhaeuser Mortgage Co., 582 F.2d 503, 507 (9th Cir.

23  1978) (upholding trial court's denial of motion to amend for violation of local rule).

24

25  _____

26  [139]  8/11/07 email, Proctor Dec., Exh. 6.
    [140]  8/21/07 letter, Proctor Dec., Exh. 7.
27  [141]  Id.
    [142]  Proctor Dec., ¶ 9.
28

EXHIBIT 22 PAGE 485

J7209/2217061.2

-24-