1  focus, however, is whether the allegations supporting the predicate acts of criminal
2  copyright infringement involve fraudulent conduct.
3        Here, there are two types of works allegedly infringed. The first type is the
4  Bratz-related and Bratz-derivative works. The second type is Mattel's other trade
5  secrets and confidential information. Both types are alleged -- with particularity -- to
6  have been procured by MGA through fraudulent conduct, but the criminal copyright
7  infringement predicate acts do not implicate that fraudulent conduct. Rather, they
8  implicate only questions of whether counter-defendants wilfully infringed Mattel's
9  works for commercial advantage or private financial gain. Here, Mattel has
10 sufficiently alleged predicate acts of criminal copyright infringement by alleging that
11 MGA and other counter-defendants willfully infringed its copyrights for purposes of
12 gaining commercial advantage and private financial gain. As Mattel correctly
13 contends, state of mind, in this instance willfulness, may be pleaded generally. See
14 Ferguson Beauregard/Logic Controls v. Mega systems, LLC, 350 F.3d 1327, 1343
15 (Fed. Cir. 2003).
16    **4.**   **Injury to Business or Property**
17       "Recovery under RICO is limited to those injuries flowing from predicate
18 acts . . . ." Resolution Trust Corp. v. Keating, 186 F.3d 1110, 1117 (9th Cir. 1999)
19 (citing Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497 (1985)). Here, Mattel
20 has alleged damages flowing from the alleged acts of racketeering activity. (AAC
21 ¶ 96). Damages easily flow from theft of trade secrets and confidential information
22 committed by a direct competitor and from infringement of copyrights that are
23 alleged to have been used to make millions -- if not billions -- of dollars.
24       Counter-defendants argue that Mattel lacks standing to sue on behalf of its
25 subsidiaries. This issue arises because many of the allegations of the thefts of
26 trade secrets involve actions taken in Mexico or Canada by employees of Mattel's
27 foreign subsidiaries. Mattel argues that it is not attempting to sue for damages
28 incurred by its subsidiaries; rather, Mattel alleges that much of the confidential

EXHIBIT 35 PAGE 905

information stolen by the employees of Mattel's subsidiaries belonged not to Mattel's subsidiaries, but to Mattel itself. Based on these allegations, Mattel may sue for damages it sustained. Mattel may not sue for damages incurred by its foreign subsidiaries.

### 5. Ruling on Motions to Dismiss

The Motions to Dismiss the RICO claims are **GRANTED** in part. As set forth herein, the alleged predicate acts of mail fraud and wire fraud are insufficiently alleged, and Mattel is **GRANTED** leave to amend the AAC.

### C. Trade Secrets

MGA contends that Mattel has failed to plead its trade secrets with sufficient particularity to comply with its duties under Cal. Code Civ. P. § 2019.210, which provides:

> In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act . . . , before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code [involving in camera reviews and sealing of court documents].

Id. Based on the unambiguous language of the statute, the Court agrees with Mattel's characterization of this requirement as one related to discovery rather than related to pleading.

The Court also agrees that, by identifying documents in discovery by Bates-stamp number, Mattel has complied with the dictates of § 2019.210. See Advanced Modular Sputtering, Inc. v. Superior Court, 132 Cal.App.4th 826, 835-36, (2005) (internal quotation marks and citations omitted) ("[Reasonable particularity] means that the plaintiff must make some showing that is reasonable, i.e., fair, proper, just and rational[,] . . . under all of the circumstances to identify its alleged

EXHIBIT 35 PAGE 906

1. trade secret in a manner that will allow the trial court to control the scope of
2. subsequent discovery, protect all parties' proprietary information, and allow them a
3. fair opportunity to prepare and present their best case or defense at a trial on the
4. merits."). MGA's complaints regarding the volume of documents so identified, and
5. their skepticism of Mattel appropriately attaching such an identification to many of
6. those identified documents, are not properly addressed at this stage of the
7. proceedings.
8.     The motion to dismiss the trade secrets claim on this basis is therefore
9. **DENIED.**
10. **D.  Duplicative State-Law Claims**
11.     Bryant's motion to dismiss Mattel's duplicative state-law claims is **DENIED**.
12. The state-law counterclaims asserted against Bryant in the AAC admittedly overlap
13. with the claims asserted against him in the 04-9059 case, however, the factual
14. allegations underlying the claims asserted in the AAC are broader in scope than
15. those underlying the claims asserted in the 04-9059 case.
16.     **IV. Motion to Dismiss for Lack of Personal Jurisdiction**
17.     MGA Mexico challenges this Court's exercise of personal jurisdiction over it.
18. As set forth below, the Court concludes that it may, consistent with California law
19. and the federal Due Process Clause, exercise specific personal jurisdiction over
20. this admittedly foreign corporation.
21. **A.  The Constitutional Exercise of Personal Jurisdiction**
22.     Where a party moves to dismiss a claim for lack of personal jurisdiction, the
23. party asserting the claim bears the burden of demonstrating that jurisdiction is
24. appropriate. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir.
25. 2004). However, in opposing a motion to dismiss for lack of personal jurisdiction,
26. the party asserting the claim need only make a *prima facie* showing of jurisdictional
27. facts. Id. Disputed facts are to be resolved in favor of the exercise of personal
28. jurisdiction. Id.

EXHIBIT 35 PAGE 907

Because there is no applicable federal statute governing personal jurisdiction, the Court applies the law of the state in which the district court sits. Id. (citations omitted). "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." Id. at 800-01 (citations omitted). In order for a court's exercise of personal jurisdiction over a nonresident defendant to be constitutionally permissible, the defendant must have "minimum contacts" with the forum state "such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." Id. at 801 (internal quotation marks and citation omitted).

Personal jurisdiction may be either general or specific. For general personal jurisdiction to apply, a defendant (or here, a counter-defendant) "must engage in continuous and systematic general business contacts . . . that approximate a physical presence in the forum state." Id. (internal quotation marks and citations omitted).

To determine whether it has specific personal jurisdiction over a nonresident defendant, the Court employs a three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Id. at 802.

The party asserting the claim bears the burden of establishing the first two parts of the test. Id. If that party establishes the first two parts, then the burden

EXHIBIT 35 PAGE 908

shifts to the party resisting the Court's exercise of personal jurisdiction "to present a *compelling case* that the exercise of jurisdiction would not be reasonable." Id. (emphasis added).

The first part of the test is satisfied by either "purposeful availment" or "purposeful direction." Id. Purposeful availment is shown when a defendant avails itself of the privilege of doing business in a forum state, usually met when the defendant took some action in the forum, such as executing or performing a contract there. Id. By virtue of such actions, a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). When taking advantage of these "benefits and protections," a defendant must also "submit to the burdens of litigation in that forum." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985).

By contrast, purposeful direction, involves actions by the defendant outside of the forum state but that are directed at the forum. Schwarzenegger, 374 F.3d at 803. The purposeful direction analysis is derived from a three-part "effects test" that finds its roots in the Supreme Court's decision in Calder v. Jones, 465 U.S. 783 (1984). Pursuant to this analysis, the defendant must "have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Id.; Schwarzenegger, 374 F.3d at 803. All three parts of the test must be satisfied. The second part of the effects test is described by the Ninth Circuit as the "express aiming" requirement, and requires that the counter-defendants "expressly aimed" its intentional act at California. See Schwarzenegger, 374 F.3d at 806. Specifically, "express aiming" is found where the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082,

1  1087 (9th Cir. 2000).[5]

Assuming that the party asserting a claim can establish that the party resisting the Court's exercise of personal jurisdiction has met either the purposeful availment or express aiming part of the three-part test regarding the exercise of specific personal jurisdiction, courts next consider whether the claim arises out of or relates to the forum-related activities. In making this determination, the Court considers whether the contacts with the forum gave rise to the claims asserted, employing a "but for" standard. See Doe v. Unocal Corp., 248 F.3d 915, 924 (9th Cir. 2001).

Once the purposeful availment/express aiming and relatedness requirements are established, the burden shifts to the party resisting the Court's exercise of jurisdiction to show that exercise of jurisdiction is unreasonable. In determining reasonableness, the Court considers seven factors:

> 1) the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden on the defendant; 3) conflicts of law between the forum and defendant's home jurisdiction; 4) the forum's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum.

---

[5] What constitutes, or doesn't constitute, "express aiming" is best illustrated by example. For instance, in Pebble Beach Co. v. Caddy, 453 F.3d 1151 (9th Cir. 2006), no express aiming was found where the owner of a bed-and-breakfast in England (overlooking a pebbly beach) used the term "pebblebeach," the name of a famous golf course located in California, on its web site. Id. at 1153, 1156-57. The Ninth Circuit acknowledged that it might be foreseeable that the defendant's use of the web site might have some effect on California, but noted that mere foreseeability of effect in a forum state is not enough to constitute express aiming. Id. at 1157. In contrast to Pebble Beach is the case of Panavision Intem., L.P. v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998), in which the Ninth Circuit found that the express aiming requirement was met where the defendant registered plaintiff's marks as Internet domain names in order to force a California plaintiff to pay him money.

EXHIBIT 95 PAGE 910

Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991) (internal citation omitted). No factor is dispositive and the Court must balance all seven. Id. (internal citation omitted).

### B.  MGA Mexico's Contacts with the Forum State

The AAC alleges that Issac Larian and other MGA officers, while in California, executed a plot to target three high-level employees of Mattel Mexico, and entice them to steal Mattel's trade secrets. In written offers of employment to these three individuals, Issac Larian held himself out to be the CEO of MGA Mexico. This plot was facilitated by a number of cross-border communications among the participants as well as travel to the United States by the targeted employees.

### C.  The Court May Exercise Personal Jurisdiction over MGA Mexico

The AAC repeatedly alleges that Larian, who held himself out to be MGA Mexico's CEO, and who was designated as MGA Mexico's "legal agent" in Mexican registration document actively sought to induce others to access and steal Mattel's trade secrets while located in the California. See Velázquez Decl. Exs. A-C; Salem Decl. Ex. B. This constitutes purposeful availment.

To the extent that any of the actions taken in Mexico by the three Mexican employees may be imputed to Mattel Mexico, there is also purposeful direction. The alleged actions taken on behalf of MGA Mexico were specifically engineered to result in the alleged illegal acquisition of trade secrets belonging to Mattel, a California resident.[6]

The relatedness requirement is also clearly met. The contacts with California involve actions allegedly taken in order to further the illegal acquisition of Mattel's trade secrets, leading to the present claims against MGA Mexico for misappropriation of trade secrets and the related RICO claims.

---

[6] The AAC alleges the theft of trade secrets belonging not only to Mattel's Mexican subsidiary, but also to Mattel itself, which is a California corporation.

The burden, therefore, is on MGA Mexico to show that the exercise of jurisdiction is unreasonable.[7] As noted previously, the Court considers seven factors. The first factor the Court considers is the defendant's purposeful interjection. For the reasons the Court has found purposeful availment and purposeful direction, this factor favors the exercise of personal jurisdiction.

MGA Mexico argues, without elaboration, that the burden of defending itself in California is "significant." However, the assumption underlying this argument is that the present action is more properly litigated by MGA's and Mattel's Mexican subsidiaries. This assumption misses the point of Mattel's claim against MGA Mexico; Mattel, the parent company, was itself injured by MGA's Mexico's alleged misappropriation of its own trade secrets because the alleged misappropriation was not limited to trade secrets belonging to its Mexican subsidiary. The argument based on this faulty assumption is therefore unconvincing. In order to show unreasonableness, the burden on the defendant must be great. See Panavision, 141 F.3d at 1323 ("A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.") (internal quotation marks and citation omitted).

As to the third and seventh factors, regarding conflicts of law and the

---

[7] In its reply, MGA Mexico declares that it "made a 'compelling case' in support of its motion to dismiss that it would be unreasonable to force it to litigate in this forum." MGA Mexico Reply at 10. However, MGA Mexico's motion papers fail to acknowledge that they bear the burden on this issue. See MGA Mexico's Memorandum of Points and Authorities at 10 ("Finally, Mattel has failed to satisfy the third element required for specific jurisdiction -- that the exercise of jurisdiction over the defendant would be reasonable."). As Mattel accurately predicted in its opposition papers, MGA Mexico implicitly acknowledged its burden in the reply, and used the occasion to improperly present additional arguments for the first time. Although the Court ordinarily would not consider such arguments, it does so here because it does not change the Court's ultimate conclusion. See In re Intuit Privacy Litigation, 138 F.Supp.2d 1272, 1275 n.3 (C.D. Cal. 2001) ("this court does not consider arguments raised anew for the first time in a reply brief as to do so would unfairly deny the non-moving party an opportunity to respond.").

EXHIBIT 35 PAGE 912

existence of an alternative forum, MGA Mexico makes veiled references to the criminal action in Mexico as constituting a choice of forum made by Mattel, apparently implying that Mattel, having chosen to pursue criminal charges in Mexico, should be precluded from invoking the power of this Court. It appears to the Court that MGA Mexico has failed to fully and clearly articulate this argument because it is untenable. Whether Mexican authorities pursue criminal charges based on the same conduct underlying the claims in this action is irrelevant to whether this Court may constitutionally exercise personal jurisdiction over MGA Mexico. Therefore, MGA Mexico's argument on this issue is unpersuasive.

The fourth factor, the interest in adjudicating the dispute, weighs in favor of the exercise of personal jurisdiction, as does the sixth, the plaintiff's interest in convenient and effective relief.

MGA Mexico argues that the fifth factor weighs in its favor when the Court considers that the site of injury, which it does not believe is California, is the most efficient forum. However, this argument is premised on the rejected assumption that the present action is more properly litigated between MGA's and Mattel's Mexican subsidiaries.

On balance, a consideration of the reasonableness factors reveals that MGA Mexico has fallen far short of establishing the "compelling case" necessary to render the Court's exercise of personal jurisdiction unreasonable.

The Court concludes that Mattel has established the first two parts of the specific personal jurisdiction test, and that MGA Mexico has failed to establish that the Court's exercise of personal jurisdiction over it is otherwise unreasonable. Accordingly, the Court **DENIES** MGA Mexico's motion to dismiss.

### V. MGA's and Bryant's Motions Regarding the Discovery Master's March 7, 2007, Order

MGA and Bryant seek review of a decision that resolved discovery disputes that arose during Bryant's deposition, and that was rendered by the Court-

EXHIBIT 35 PAGE 9/3

appointed discovery master, Judge Edward A. Infante (Ret.), on March 7, 2007. The Court's order appointing Judge Infante provides that his orders resolving discovery disputes shall be reviewed in the same manner as those made by a magistrate judge of this Court.

Pursuant to Fed. R. Civ. P. 72(a), when the parties object to the ruling of a magistrate judge on a non-dispositive manner, such as a discovery dispute, the district judge may modify or set aside only those portions of the magistrate judge's order that are "clearly erroneous or contrary to law." Id.

The "clearly erroneous" language refers to factual findings. See e.g., Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust, 508 U.S. 602, 622 (1993) (discussing the clearly erroneous standard). Here, there were no explicit factual findings or legal conclusions made by Judge Infante regarding the relevant rulings; therefore, the Court reviews the record presented to Judge Infante to determine whether his rulings are contrary to law. See March 7, 2007, Order.

Questions that do not seek the substance of attorney-client communications generally do not implicate the attorney-client privilege. United States v. Carrillo, 16 F.3d 1046, 1050 (9th Cir. 1994) (finding no violation of the attorney-client privilege where prosecutor, who asked whether a criminal defendant had consulted with his attorney during a recess in order to raise an inference of attorney coaching of testimony during the trial, stopped short of asking defendant the substance of defendant's communications with his attorney). Therefore, questions such as the one addressed by objection No. 38, asking whether Bryant talked to counsel for MGA during a break from his deposition, are not subject to objection based on the attorney-client privilege. This conclusion is consistent with Judge Infante's Order.

Mattel's question regarding who is paying Bryant's legal fees, addressed by objection No. 42, is likewise not objectionable. MGA and Bryant argue that state law applies; however, because the present consolidated actions involve both

33

EXHIBIT 35 PAGE 914

federal and state-law claims, the federal law of privilege applies. Agster v. Maricopa County, 422 F.3d 836, 839-40 (9th Cir. 2005) ("Where there are federal question claims and pendent state law claims present, the federal law of privilege applies."). To that end, consistent with federal privilege law, fee-payment arrangements are relevant to credibility and bias, and if asked in discovery, Bryant must disclose who is paying his legal fees. See United States v. Blackman, 72 F.3d 1418, 1424 (9th Cir. 1995) ("As a general rule, client identity and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege."). This conclusion is also consistent with Judge Infante's Order.

However, in this case, the joint-defense privilege protects from disclosure the substance of certain statements made by Bryant and his attorneys in the presence of attorneys representing MGA. "The joint defense privilege protects communications between an individual and an attorney for another when the communications are 'part of an on-going and joint effort to set up a common defense strategy.'" United States v. Bay State Ambulance and Hosp. Rental Service, Inc., 874 F.2d 20, 28 (1st Cir. 1989) (internal quotation marks and citation omitted). Generally, to rely on the joint-defense privilege, a party must establish three elements: "(1) [T]he communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived." Id.

The Court finds the first element was met. The Court, based on its review of the record pending before Judge Infante, is satisfied that the parties had in place at the time of Bryant's deposition, and have in place today, a valid joint-defense agreement. The Court also finds that the second element was met. Mattel cannot seriously contend that MGA's interests are not aligned with Bryant's in this action, or that counsels' thorough preparation of Bryant for his deposition was not designed to further the joint defense effort. Finally, as for the third element, there is no

EXHIBIT 35 PAGE 915

1 | suggestion in the record that any party has waived the attorney-client privilege.
2 | Accordingly, the Court holds that Judge Infante's rulings on Objection Nos.
3 | 39 and 50 are contrary to law to the extent those rulings require Bryant to divulge
4 | the substance of his communications with counsel for MGA.

## VII. Conclusion

In the manner set forth more fully herein, the Court makes the following rulings:

1. Motion of MGA Entertainment, Inc., ("MGA") and Issac Larian ("Larian") to Dismiss Mattel's Amended Answer and Counterclaims (docket # 189): **GRANTED IN PART AND DENIED IN PART.**

2. Motion of Carter Bryant to Dismiss Counterclaims II, III, V, VII, IX, and XI (docket # 191): **GRANTED IN PART AND DENIED IN PART.**

3. Motion of MGA Mexico to Dismiss Mattel's Amended Answer and Counterclaims (docket # 266): **DENIED.**

4. Motion of MGA Objecting to Discovery Master's March 7, 2007, Order (docket # 308): **GRANTED IN PART AND DENIED IN PART.**

5. Motion of Carter Bryant Objecting to Discovery Master's March 7, 2007, Order (docket # 306): **GRANTED IN PART AND DENIED IN PART.**

Mattel is **GRANTED** ten days' leave to amend the AAC in conformity with this Order. The Counter-defendants shall answer or otherwise respond to the SAAC no later than thirty days after the filing of the SAAC.

EXHIBIT 35 PAGE 916

The Motion Re Trial Structure (docket #462) has been the subject of further briefing by the parties and is set for further oral argument on July 2, 2007. Ruling on that matter is **DEFERRED** pending oral argument.

DATE: June 27, 2007

*/s/ Larson*

STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE

EXHIBIT 35 PAGE 917