147.  Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel is entitled to an order restraining further breach of Counter-defendants' duty of loyalty to Mattel and/or restraining Counter-defendants from continuing to benefit from such breach.

148.  In breaching their duty of loyalty to Mattel, Bryant and Machado acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

## Tenth Counterclaim

### Aiding and Abetting Breach of Duty of Loyalty

### (Against MGA, Larian and Does 4 through 10)

149.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 148, above, as though fully set forth at length.

150.  MGA, Larian and Does 4 through 10 knew that Bryant, as an employee of Mattel, owed a duty of loyalty to his employer.  MGA, Larian and Does 4 through 10 knew that this duty included an obligation on the part of Bryant not to compete with Mattel or assist a competitor of Mattel during the term of his employment with Mattel.  MGA, Larian and Does 4 through 10 also knew that Bryant was required to give preference to Mattel's business over his own, similar interests or those of Mattel's competitors. or those of Mattel's competitors during the course of his employment with Mattel.

151.  MGA, Larian and Does 4 through 10 knew that the Mattel Employees (excluding Bryant) were employed by Mattel, and, as employees of Mattel, that they owed duties of loyalty to Mattel.  MGA, Larian and Does 4 through 10 knew that these duties included an obligation on the part of the Mattel

SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 3
PAGE 175

21543632

1  Employees (excluding Bryant) not to compete with Mattel or assist a competitor of
2  Mattel during their Mattel employment.

3       152. Despite such knowledge, Counter-defendants MGA, Larian and
4  Does 4 through 10 intentionally and without justification solicited, encouraged,
5  aided and abetted and gave substantial assistance to the Mattel Employees to
6  breach their duties of loyalty to Mattel, knowing that their conduct would constitute
7  breaches of their duties of loyalty to Mattel.

8       153. As a further consequence of Counter-defendants' efforts, Mattel
9  has suffered injury and is entitled to compensatory damages in an amount to be
10  proven at trial.

11       154. In taking the aforesaid actions, MGA, Larian and Does 4 through
12  10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's
13  rights. Accordingly, Mattel is entitled to recover exemplary damages from
14  Counter-defendants in an amount to be determined at trial.

15       **Eleventh Counterclaim**
16       **Conversion**
17       **(Against All Counter-defendants)**

18       155. Mattel repeats and realleges each and every allegation set forth in
19  paragraphs 1 through 154, above, as though fully set forth at length.

20       156. Counter-defendants wrongfully converted Mattel property and
21  resources by appropriating and using them for their own benefit and gain and for
22  the benefit and gain of others, without the permission of Mattel.

23       157. Mattel was entitled to, among other things, the exclusive right
24  and enjoyment in property and tangible materials owned by Mattel, including
25  without limitation such proper and materials that were created by Bryant while he
26  was a Mattel product designer. Such property was taken by Bryant from Mattel to
27  further his own interests and, in at least some instances, provided by Bryant to
28  Larian and MGA in furtherance of the interests of Bryant, Larian and MGA.

2154363.2

-72-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 3

PAGE 179

1       158.  In addition, Counter-defendants wrongfully converted Mattel's
2  property by removing the Trade Secret Materials in electronic and paper form from
3  Mattel's offices.  Counter-defendants did so without Mattel's permission and
4  continue to possess them.

5       159.  As a direct and proximate result of Counter-defendants' wrongful
6  conversion of Mattel property, including those relating to Bratz and Mattel's Trade
7  Secret Materials, Mattel has incurred damages.  Mattel, therefore, is entitled to
8  recover compensatory damages in an amount to be determined at trial.

9       160.   As a result of Counter-defendants' acts of conversion, Mattel is
10 entitled to damages in an amount sufficient to indemnify Mattel for the loss
11 suffered, which is not measured by the value of the property misappropriated, but
12 includes the lost profits that Mattel suffered as a result of the conversion or,
13 alternatively, the profits generated by the Counter-defendants that would not have
14 been generated but for the conversion.  Only such a measure of damages would
15 fully and fairly compensate Mattel for the injury it suffered due to Counter-
16 defendants' acts of conversion.

17      161.  Counter-defendants performed the aforementioned conduct with
18 malice, fraud and oppression, and in conscious disregard of Mattel's rights.
19 Accordingly, Mattel is entitled to recover exemplary damages from Counter-
20 defendants in an amount to be determined at trial.

21      162.  Furthermore, Counter-defendants' conduct has caused, and unless
22 enjoined will continue to cause, irreparable injury to Mattel that cannot be
23 adequately compensated by money damages and for which Mattel has no adequate
24 remedy at law.  Accordingly, Mattel is entitled to an order restraining Counter-
25 defendants from further conversion of Mattel property and resources and/or
26 restraining Counter-defendants from continuing to benefit from such conversion.
27
28

2154363.2

SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 3
PAGE 177

**Twelfth Counterclaim**

**Unfair Competition**

**(Common Law and *Cal. Bus. & Prof. Code* § 17200)**

**(Against All Counter-defendants)**

163.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 162, above, as though fully set forth at length.

164.  Section 17200 of the California Business and Professions Code prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice . . . ."

165.  By engaging in the foregoing conduct, Counter-defendants have, individually and in combination, engaged in unlawful, unfair and/or fraudulent acts of unfair competition in violation of both the common law of the state of California and *Cal. Bus. & Prof. Code* § 17200 *et seq.*  Such conduct included, without limitation, MGA's commercial bribery of Bryant in violation of *Cal. Penal Code* § 641.3 and misappropriation of trade secrets in violation of 18 U.S.C. § 1832(a).  Such conduct also included, without limitation, MGA's and Larian's disparagement of Mattel's products and misrepresentations as alleged above.

166.  As a result of the aforementioned conduct, Mattel has suffered damages and will imminently suffer further damages, including but not limited to lost profits in an amount to be proven at trial.  No adequate remedy at law exists for the wrongs and injuries Mattel has suffered and will continue to suffer, and Mattel is entitled to an injunction enjoining Counter-defendants' continued wrongful acts.  Mattel is also entitled to recover compensatory and exemplary damages pursuant to the doctrine of common law unfair competition and *Cal. Civ. Code* § 3294.

EXHIBIT 3

PAGE 178

SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

## Thirteenth Counterclaim
### Declaratory Relief
### (Against All Counter-defendants)

167. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 166, above, as though fully set forth at length.

168. As shown in the foregoing paragraphs above, an actual controversy exists between Mattel and Counter-defendants regarding Counter-defendants' lack of ownership interests in Bratz and Mattel's rights in the same.

169. Accordingly, Mattel seeks a declaration of the Court that Counter-defendants have no valid or protectable ownership rights or interests in Bratz, and that Mattel is the true owner of the same, and further seeks an accounting and imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and over all revenues and other monies or benefits derived or obtained from MGA's and Bryant's purported ownership, use, sale, distribution and licensing of Bratz.

170. Mattel seeks a declaration of the Court that any and all agreements between Bryant, on the one hand, and MGA, on the other hand, in which Bryant purports to assign to MGA any right, title or interests in any work that he conceived, created or reduced to practice while a Mattel employee, including but not limited to the Bratz designs, is void and of no effect, including without limitation because Bryant had previously assigned said right, title or interest to Mattel and because Mattel was otherwise the owner of said right, title or interest.

### Prayer for Relief

WHEREFORE, Mattel respectfully requests judgment:

1. For a declaration that Counter-defendants have no valid or protectable ownership interests or rights in Bratz designs and works conceived,

-75-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

EXHIBIT 3
PAGE 179

1  created or reduced to practice by Bryant during the term of his Mattel employment
2  and/or by any others then-employed by Mattel, as well as in all derivatives
3  prepared therefrom, and that Mattel is the true owner of the foregoing;

4       2.    For a declaration that any agreement between Bryant, on the one
5  hand, and MGA or any person or entity, on the other hand, in which Bryant
6  purported to assign any right, title or interests in any work that he conceived,
7  created or reduced to practice while a Mattel employee, including but not limited to
8  the Bratz designs, is void and of no effect;

9       3.    For an Order enjoining and restraining Counter-defendants, their
10 agents, servants and employees, and all persons in active concert or participation
11 with them, from further wrongful conduct, including without limitation from
12 imitating, copying, distributing, importing, displaying, preparing derivatives from
13 and otherwise infringing Mattel's copyright-protected works;

14      4.    For an Order, pursuant to 17 U.S.C. § 503(a) and other
15 applicable law, impounding all of Counter-defendants' products and materials that
16 infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles
17 by which copies of the works embodied in Mattel's copyrights may be reproduced
18 or otherwise infringed;

19      5.    For an Order mandating that Counter-defendants return to Mattel
20 all tangible items, documents, designs, diagrams, sketches or any other
21 memorialization of inventions created or reduced to practice during Bryant's
22 employment with Mattel as well as all Mattel property converted by Counter-
23 defendants;

24      6.    For an Order mandating specific performance by Bryant to
25 comply with and satisfy Bryant's contractual obligations to Mattel;

26      7.    That Mattel be awarded, and Counter-defendants be ordered to
27 disgorge, all payments, revenues, profits, monies and royalties and any other
28 benefits derived or obtained as a result of the conduct alleged herein, including

EXHIBIT 3

PAGE 160

2154363.2

-76-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1   without limitation of all revenues and profits attributable to Counter-defendants'
2   infringement of Mattel's copyrights under 17 U.S.C. § 504;

3         8.   For an accounting of all profits, monies and/or royalties from the
4   exercise of ownership, use, distribution, sales and licensing of Bratz;

5         9.   For the imposition of a constructive trust over Bratz, including
6   without limitation registrations and applications for registrations relating thereto
7   made or filed by Counter-defendants and third parties, and all profits, monies,
8   royalties and any other benefits derived or obtained from Counter-defendant's
9   exercise of ownership, use, sale, distribution and licensing of Bratz;

10      10.   That Mattel recover its actual damages and lost profits;

11      11.   That Counter-defendants be ordered to pay exemplary damages
12  in a sum sufficient to punish and to make an example of them, and deter them and
13  others from similar wrongdoing;

14      12.   That Counter-defendants be ordered to pay treble its general and
15  special damages, plus interest, costs and attorney's fees incurred by reason of
16  Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

17      13.   That Counter-defendants be ordered to pay double damages due
18  to their willful and malicious misappropriation of Mattel's trade secrets with
19  deliberate intent to injure Mattel's business and improve its own;

20      14.   That Counter-defendants pay to Mattel the full cost of this action
21  and Mattel's attorneys' and investigators' fees; and

22
23
24
25
26
27
28

21542363.2

SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 3
PAGE 181

1    15.   That Mattel have such other and further relief as the Court may

2    deem just and proper.

3

4    DATED:  July 12, 2007              QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
5

6                                       By _John Quinn (BBP_
7                                          John B. Quinn
                                           Attorneys for Defendant and Counter-
8                                          claimant Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2154363.2

-78-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT 3
PAGE 162

# DEMAND FOR JURY TRIAL

Mattel, Inc. respectfully requests a jury trial on all issues triable thereby.

DATED:  July 12, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _John Quinn 1BØ_

John B. Quinn
Attorneys for Defendant and Counter-claimant Mattel, Inc.

-79-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

2154363.2

EXHIBIT 3

PAGE 183

**Exhibit A**

EXHIBIT 3

PAGE 184

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing obligations separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

## 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company; or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

## 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees at any right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any Invention does not apply to an Invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an Invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those Inventions that either (1) relate at the time of conception or reduction to practice of the Invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an Invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

## 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

## 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligations under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS
THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

_(signature)_ _____    MATTEL, INC. _(signature)_ _____
Employee Signature                        

CARTER H. BRYANT                         TERESA NEWCOMB
Employee Name (print)                     Name of Witness (print)

01/04/99
Date

EXHIBIT _A_ PAGE _80_        M 0001622

EXHIBIT 3

PAGE 185

**Exhibit B**

EXHIBIT 3

PAGE 186

## CONFLICT OF INTEREST QUESTIONNAIRE

Name (Last, First, M.I.)  _BRYANT, CARTER H._      Job Title  _PROJECT DESIGNER_      Department

**Instructions:** The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**Mattel Supplier** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**Mattel Competitor** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**Interest** means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

**Recipient of any commission, etc.** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

○ YES  ● NO  1. Have you owned, directly or indirectly, any interest in a Mattel supplier?

○ YES  ● NO  2. Have you owned, directly or indirectly, and interest in a Mattel competitor?

○ YES  ● NO  3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?

● YES  ○ NO  4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?

● YES  ○ NO  5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?

○ YES  ● NO  6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?

○ YES  ● NO  7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor?

○ YES  ● NO  8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?

○ YES  ● NO  9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

_4, 5; freelance design & artwork in 1995,_
_from apprx. 5/98 - 11/98 for the Ashton Drake_
_galleries._

I certify that I have read Mattel's policies concerning Conflict of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged in any capacity which creates a Conflict of Interest.

Signature  _Carter (H.) Bryant_          Date  _01/04/98_

EXHIBIT _B_  PAGE _81_          M 0001621

EXHIBIT _3_

PAGE _187_

**Exhibit 4**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**Exhibit 5**

**From:** Timothy Alger [mailto:timalger@quinnemanuel.com]
**Sent:** Monday, January 28, 2008 12:24 PM
**To:** Herrington, Robert J (LAC); Miller, Timothy A (SFC)
**Subject:** MGA's Responses to Mattel's Fifth Set of Requests for Production

1/28/2008

EXHIBIT ___6___

PAGE ___215___

Page 2 of 2

Rob and Tim:

I would like to meet and confer with you today regarding MGA's responses to Mattel's Fifth Set of Requests for Production. The wholesale, boilerplate objections made by MGA lack merit and should be withdrawn, and MGA should produce all documents requested.

Let me know when you can discuss today.

Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3223
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: timalger@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader or written to be used, and cannot be used, or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

*********************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein. *********************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request. ***********************************************

EXHIBIT 5
PAGE 216

1/28/2008

**Exhibit 6**

**From:** Miller, Timothy A [mailto:Timothy.Miller@skadden.com]
**Sent:** Monday, January 28, 2008 2:24 PM
**To:** Timothy Alger; Herrington, Robert J (LAC)
**Subject:** RE: MGA's Responses to Mattel's Fifth Set of Requests for Production

Tim:

According to our files, MGA served its Objections and Responses to Mattel's Fifth Set of Requests for Production and Things more than one month ago, on December 27, 2008. To my knowledge, this is Mattel's first request to meet and confer regarding those objections and responses. Your request violates Paragraph 5 of the Discovery Master Stipulation, which requires you to "identify each dispute, state the relief sought, and identify the authority supporting the requested relief in a meet and confer letter." Your brief e-mail does not address any of the specific objections made in MGA's 82-page response. In addition, under Paragraph 5, MGA is entitled to consider any specific issues raised by Mattel and to meet and confer within 5 court days of receipt of the letter required by Paragraph 5. In violation of that mandated timeline, your request for an immediate meet and confer comes literally at the 11th hour, after Noon on the last day of Phase 1 discovery when, as you know, many depositions are in progress. The attorney who supervised the preparation of MGA's responses is tied up in one of those depositions. It simply is not possible to meet and confer regarding those responses today, even if you had complied with the requirement to specify your dispute in a meet and confer letter.

Regards,

Tim

**Timothy A. Miller**
**Skadden, Arps, Slate, Meagher & Flom LLP**
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111
Direct Dial: 415-984-2647
Fax: 415-984-2698
tmiller@skadden.com

EXHIBIT 6

PAGE 217

1/28/2008