**Exhibit 1**

**Christopher Tayback**

| | |
|---|---|
| **From:** | Christopher Tayback |
| **Sent:** | Wednesday, December 26, 2007 9:27 PM |
| **To:** | 'Robert.Herrington@skadden.com' |
| **Cc:** | Timothy Alger |
| **Subject:** | Re: Follow-up to today's telephone call |

Robert--

You clearly have concluded that whatever Mattel did to search for documents it was insufficient based on the fact that what was produced was not what MGA expected to receive. I can't respond to MGA's expectations (or yours) regarding the type or quantity of documents that you expected to receive.

I do ask, however, that you at least identify for me precisely which Mattel witnesses you believe have responsive documents that were not produced and which electronic data base you believe contains responsive documents that were not searched. To say that you believe some of the dozens of witnesses identified by Mattel in its initial disclosures and "interrogatory" responses is hardly helpful. As I said, if you want me to respond to any particular concern, I will try--but you have to state it with particularity. Indeed, you asked whether we searched Lily Martinez's computer, and I confirmed for you that we had.

I also note here that Tim Alger told you earlier that the next couple document productions will include emails. Of course, I cannot assure you that what we produce will meet MGA's expectations as to quantity of type of documents.

Having said that, you did not answer my question back to you: is MGA prepared to disclose to Mattel the manner and method by which it has searched for documents, including responding to the interrogatories previously propounded and which I referenced in my last email?


----- Original Message -----
From: Herrington, Robert J <Robert.Herrington@skadden.com>
To: Christopher Tayback
Cc: Timothy Alger
Sent: Wed Dec 26 18:31:43 2007
Subject: RE: Follow-up to today's telephone call

Chris:

We have reason to believe that the email Mattel preserved for several witnesses described as likely to have information regarding MGA, Bratz, and Carter Bryant, as set forth in Mr. Moore's affidavit, contain responsive information. Each of these witnesses has been listed in Mattel's initial disclosures and interrogatory responses as someone with relevant knowledge. It stands to reason that these individuals' emails would contain documents responsive to the topics identified in MGA and Bryant's document requests and the Court's Orders. We also believe the email files Mattel began to preserve in 2004 and 2005 in a more wholesale fashion are likely to have relevant information, as described in Mr. Moore's affidavit. As I explained, we have reason to believe that these email files have not been searched based on the very small number of emails produced by Mattel (less than 2000 at this point) and the objections previously raised by Mattel regarding searching email files. I also understood that Mattel had not searched these email records based on my prior conversation with you and Mr. Alger. Please confirm one way or the other whether these email files were searched for responsive information.

Thank you,
--rob

THIS E-MAIL MESSAGE IS CONFIDENTIAL AND INTENDED FOR THE PERSON(S) NAMED ABOVE ONLY. ALL OTHER USE, COPYING, OR DISTRIBUTION IS STRICTLY PROHIBITED.

EXHIBIT __1__ PAGE __7__

Robert J. Herrington
Skadden, Arps, Slate, Meagher & Flom LLP 300 South Grand Ave. | Suite 3400 | Los Angeles, CA | 90071 ' Direct: (213) 687-5368 | 7 Fax: (213) 621-5368 | , Email: rherring@skadden.com

Joanne Otero, Assistant to Robert Herrington ' Direct: (213) 687-5252 | , Email: jootero@skadden.com <mailto:jootero@skadden.com>

---

From: Christopher Tayback [mailto:christayback@quinnemanuel.com]
Sent: Wednesday, December 26, 2007 6:07 PM
To: Herrington, Robert J (LAC)
Cc: Timothy Alger
Subject: Re: Follow-up to today's telephone call

Robert--

That's incorrect.  I said that Mattel has searched the various electronic media in its possession which were likely to have responsive documents.  That includes searches of some data retrieved from back-up tapes and some data retrieved from Zeus.  What we have not done is incur the substantial time and expense associated with searching locations where we have no reason to believe responsive documents are located.  If you have reason to believe some specific relevant document (or documents) is in Mattel's possession, please let us know.  If you have information as to where such a document is located within the various data compilations maintained by Mattel, please say so and we will focus our efforts there.  When we spoke, you did not identify any specific relevant document or location that you believed contained a relevant document.

As I said before, we have previously sought from MGA specific information about whether it had searched specific boxes for particular documents.  MGA refused to say whether it would or would not (or did or did not) search those specifically requested boxes, but said only that they searched boxes where they thought responsive documents would be located.  MGA also has objected and refused to provide a proper answer to our interrogatory asking which databases it searched for responsive documents regarding the early timeframe for Bratz.  Why is MGA entitled to a response from Mattel about how it has searched for responsive documentsd that MGA has been unwilling to provide to Mattel?

I am available tomorrow if you wish to discuss this further.

Chris Tayback

----- Original Message -----
From: Herrington, Robert J <Robert.Herrington@skadden.com>
To: Christopher Tayback
Cc: Timothy Alger
Sent: Wed Dec 26 17:24:13 2007
Subject: RE: Follow-up to today's telephone call

Chris:

I want to reconfirm my understanding based on our second conversation this afternoon.  As I understand it, Mattel has been searching the sources of electronic information identified in Mr. Moore's affidavit to the extent Mattel believes they might contain responsive documents.  The only exception is that Mattel has not been searching archived email / email backup tapes because of concerns regarding cost and whether the archives or backup tapes contain responsive information.  Please let me know if that is not correct.

Our view is that archived email and backup tapes are sources that are reasonably likely to contain responsive documents and should be (should have been) searched.  We also believe the burden/cost issue was addressed and overruled in connection with Judge Infante's May and September 2007 Orders. I will call you tomorrow morning to discuss.

EXHIBIT 1 PAGE 8

Thank you,
--rob

THIS E-MAIL MESSAGE IS CONFIDENTIAL AND INTENDED FOR THE PERSON(S) NAMED ABOVE ONLY. ALL
OTHER USE, COPYING, OR DISTRIBUTION IS STRICTLY PROHIBITED.


Robert J. Herrington
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Ave. | Suite 3400 | Los Angeles, CA | 90071
' Direct: (213) 687-5368 | 7 Fax: (213) 621-5368 | , Email: rherring@skadden.com

Joanne Otero, Assistant to Robert Herrington
' Direct: (213) 687-5252 | , Email: jootero@skadden.com <mailto:jootero@skadden.com>


------------------------------------

From: Christopher Tayback [mailto:christayback@quinnemanuel.com]
Sent: Wednesday, December 26, 2007 2:36 PM
To: Herrington, Robert J (LAC)
Cc: Timothy Alger
Subject: RE: Follow-up to today's telephone call


I don't think you understood me.  Call me when you have 5 minutes.  213-443-3170.


------------------------------------

From: Herrington, Robert J [mailto:Robert.Herrington@skadden.com]
Sent: Wednesday, December 26, 2007 2:30 PM
To: Christopher Tayback
Cc: Timothy Alger
Subject: RE: Follow-up to today's telephone call


My letter sought confirmation that Mattel had searched all of the electronic sources
identified in Mr. Moore's affidavit (dated 9/10/07) for responsive documents.  From our
conversation earlier today, I had understand that the answer was "yes" - except for email
backup tapes.  My email below was referring to the computers identified in Mr. Moore's
affidavit, paragraphs 14, 17, and 23.

Thank you,
--rob

THIS E-MAIL MESSAGE IS CONFIDENTIAL AND INTENDED FOR THE PERSON(S) NAMED ABOVE ONLY.  ALL
OTHER USE, COPYING, OR DISTRIBUTION IS STRICTLY PROHIBITED.


Robert J. Herrington
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Ave. | Suite 3400 | Los Angeles, CA | 90071
' Direct: (213) 687-5368 | 7 Fax: (213) 621-5368 | , Email: rherring@skadden.com

Joanne Otero, Assistant to Robert Herrington
' Direct: (213) 687-5252 | , Email: jootero@skadden.com <mailto:jootero@skadden.com>


------------------------------------

From: Christopher Tayback [mailto:christayback@quinnemanuel.com]
Sent: Wednesday, December 26, 2007 2:18 PM
To: Herrington, Robert J (LAC)
Cc: Timothy Alger
Subject: RE: Follow-up to today's telephone call

3

EXHIBIT 1 PAGE 9

Robert--

What "other computers" are you referring to below?  Are you referring to the three people listed in paragraph 9 of Michael Moore's declaration?

Chris

---

From: Herrington, Robert J [mailto:Robert.Herrington@skadden.com]
Sent: Wednesday, December 26, 2007 11:39 AM
To: Christopher Tayback
Cc: Timothy Alger
Subject: RE: Follow-up to today's telephone call

Thank you Chris.

One point of clarification:  Based on our conversation this morning, my understanding is that Mattel has searched all the other sources of electronically stored information identified in Mr. Moore's affidavit for responsive documents, aside from email backup tapes (and Zeus, which we are discussing separately).  Is that correct?  For example, has Lily Martinez's imaged hard drive been searched?  What about the other computers identified in Mr. Moore's affidavit?  I just want to make sure my understanding is correct on this point.

Thanks,
--rob

THIS E-MAIL MESSAGE IS CONFIDENTIAL AND INTENDED FOR THE PERSON(S) NAMED ABOVE ONLY.  ALL OTHER USE, COPYING, OR DISTRIBUTION IS STRICTLY PROHIBITED.

Robert J. Herrington
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Ave. | Suite 3400 | Los Angeles, CA | 90071
' Direct: (213) 687-5368 | 7 Fax: (213) 621-5368 | , Email: rherring@skadden.com

Joanne Otero, Assistant to Robert Herrington
' Direct: (213) 687-5252 | , Email: jootero@skadden.com <mailto:jootero@skadden.com>

---

From: Christopher Tayback [mailto:christayback@quinnemanuel.com]
Sent: Wednesday, December 26, 2007 10:44 AM
To: Herrington, Robert J (LAC)
Cc: Timothy Alger
Subject: Follow-up to today's telephone call

Robert--

One of the two issues I said I would follow up on after the call today is whether there are any Fontanella documents that are non-privileged and responsive to the third-party subpoena MGA served on her.  The answer is no.  Neither she nor Patel have any documents responsive to the third-party subpoenas.

Chris

-------------------------------------------------------------------
To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

4

EXHIBIT __1__ PAGE _10_

**************************************************
This e-mail and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any e-mail, and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
**************************************************
====================================================================

EXHIBIT __1__ PAGE __11__

**Exhibit 2**

---

**From:** Herrington, Robert J [mailto:Robert.Herrington@skadden.com]
**Sent:** Thursday, December 27, 2007 8:12 PM
**To:** Christopher Tayback
**Cc:** Timothy Alger; Eckles, Paul M (NYC)
**Subject:** RE: Follow-up to today's telephone call

Chris:

We are finding it very hard to understand why Mattel is refusing to provide a straightforward response to what is a very simple question - *has Mattel searched the archived email files and email backup tapes identified in Mr. Moore's affidavit (paragraphs 8, 10, 11, 12, 13, 22, 23, 27, 28) for documents responsive to MGA and Bryant's document requests and the categories of documents Mattel was ordered to produce by Judge Infante?*

As explained in my prior correspondence and during our telephone conversations, we are very concerned that Mattel has not been searching email because Mattel has produced about 2000 emails in this case (as compared to almost 20,000 emails produced by MGA) and because Mattel previously objected to searching or producing email. In connection with Judge Infante's May 22, 2007 Order compelling Mattel to produce documents, Mattel objected to searching and producing email based on a burden objection. Judge Infante overruled this and other objections and ordered Mattel to produce certain categories of documents. Mattel moved for reconsideration and asked for an extension of time. On July 19, 2007, Judge Infante denied the motion for reconsideration and ordered Mattel to produce all responsive documents called for in his Order by August 6, 2007. On September 12, 2007, Judge Infante granted another motion to compel filed by MGA, again overruling Mattel's objections and ordering Mattel to produce all responsive documents by September 28, 2007.

After the Court entered these Orders, Mattel produced some 1164 emails (broken down as follows: May 30, 2007: 67 emails produced; June 15, 2007: 292 emails produced; July 6, 2007: 6 emails produced; July 20, 2007: 98 emails produced; August 6, 2007: 45 emails produced; October 29, 2007: 656 emails produced). We have reviewed these documents and a majority have handwriting or other markings, indicating that they were stored and produced from hardcopy files, rather than from electronically stored data sources. This further supports our view that Mattel has not been searching archived email and email backup tapes for responsive documents.

We also are concerned because we are receiving conflicting messages from Mattel on this issue. During our meet and confer conference on December 14, 2007, Mr. Alger indicated that Mattel had not been searching archived or backed up email because of costs concerns and that these issues already had been addressed in prior briefing, including references to it costing more than $900,000 to search backed up email. Mr. Alger, however, declined to provide any further information until I put a further request in writing. I did so on

**EXHIBIT 2 PAGE 12**

Re: Follow-up to today's telephone call                                    Page 4 of 9

December 17, 2007, and we met and conferred on December 26, 2007. During our call at 9:00am on December 26, I understood both you and Mr. Alger to say that archived and backed up email had not been searched because of cost concerns. When we spoke again later that afternoon, I understood you to be saying basically the same thing. But Mattel now appears to be retreating from that position. After multiple meetings and discussions, we still don't have a clear answer as to whether Mattel has been searching archived and backed up email. Mattel's refusal to answer the simple question of whether it has been searching email heightens our concern that Mattel is standing on its prior objections and has not been searching or producing email in response to our document requests and the Court's Orders.

Our inquiry regarding whether Mattel has been searching and producing email is no different from inquiries your firm has made of us regarding whether our client is standing on certain objections. I participated in a conference call with your partner, Scott Kidman, on Monday December 24, 2007 during which Mr. Kidman repeatedly asked whether MGA was standing on certain objections and we agreed to provide him with responses. Our current inquiry regarding Mattel email is no different. Mattel previously objected to searching for and producing email because of cost concerns. We are entitled to know whether Mattel is standing on that objection or not.

Finally, you reference the outstanding dispute regarding the interrogatory Mattel served on MGA regarding its search for documents. As noted in your papers, MGA agreed to provide a source log for documents it has produced in this case, provided that Mattel provides a similar log. As I understand it, Mattel refused this offer and filed a motion to compel. Are you suggesting that Mattel has reconsidered its position and wishes to exchange source logs as previously offered?

Thank you,
--rob

THIS E-MAIL MESSAGE IS CONFIDENTIAL AND INTENDED FOR THE PERSON(S) NAMED ABOVE ONLY. ALL OTHER USE, COPYING, OR DISTRIBUTION IS STRICTLY PROHIBITED.

**Robert J. Herrington**
**Skadden, Arps, Slate, Meagher & Flom LLP**
300 South Grand Ave. | Suite 3400 | Los Angeles, CA | 90071
☏ Direct: (213) 687-5368 | 🖷 Fax: (213) 621-5368 | ✉ Email: rherring@skadden.com

**Joanne Otero, Assistant to Robert Herrington**
☏ Direct: (213) 687-5252 | ✉ Email: jootero@skadden.com

**From:** Christopher Tayback [mailto:christayback@quinnemanuel.com]
**Sent:** Wednesday, December 26, 2007 9:27 PM
**To:** Herrington, Robert J (LAC)
**Cc:** Timothy Alger
**Subject:** Re: Follow-up to today's telephone call

EXHIBIT 2 PAGE 13

**Exhibit  3**

Re: Follow-up to today's tele~¹one ~²ll                                    Page 1 of 9

---

**From:**   Christopher Tayback
**Sent:**   Friday, January 04, 2008 9:20 AM
**To:**     'Herrington, Robert J'
**Cc:**     Timothy Alger; 'Eckles, Paul M (NYC)'; Christopher Tayback
**Subject:** RE: Follow-up to today's telephone call

Robert--

You seem to have changed what started out as a meet and confer on several issues to a series of interrogatories by email.

I believe I have answered several times now, on the telephone and by email, the "simple" question you claim to be asking. As I said to you by email on December 26: ". . . Mattel has searched the various electronic media in its possession which were likely to have responsive documents. That includes searches of some data retrieved from back-up tapes and some data retrieved from Zeus. What we have not done is incur the substantial time and expense associated with searching locations where we have no reason to believe responsive documents are located. If you have reason to believe some specific relevant document (or documents) is in Mattel's possession, please let us know. If you have information as to where such a document is located within the various data compilations maintained by Mattel, please say so and we will focus our efforts there."

You have not done so. Instead, you are asking whether Mattel has "searched" virtually every data compilation in existence for potentially responsive documents. As I have said to you, Mattel has not searched every document, or every data compilation, in the off-chance of finding something relevant. As you know, we are talking about lots of different systems, tapes, devices, storage mechanisms, etc., that span over a decade of data. You clearly want a short "sound bite" describing what Mattel did or did not do to search for documents. In fact, the way you described it to me on the telephone was that you were looking for some "categorical exclusion" of what, if anything, Mattel did not search. As I told you then, and reiterate now, the scope of what Mattel has done to search for documents involves a huge amount and a wide variety of data, and is not susceptible to a "categorical" statement or a sound bite. Mattel has properly looked where it has reason to believe it will find non-privileged, relevant documents, but not in places where it has no reasonable belief that it will find such documents. So, when you ask whether Mattel has searched the "backup tapes identified in Mr. Moore's [September 10, 2007] affidavit," you are expressly referring to his testimony that stated that Mattel preserved "in excess of 4,000 backup tapes containing hundreds of terabytes of data." (Paragraph 27). I told you myself, several times, that Mattel has not, and will not, restore every backup tape. However, I told you, if there was some specific document, or custodian, or location where some specific relevant document would likely be located, we could discuss how to obtain such a document (and at whose cost).

Indeed, I was not the first person to advise MGA of this fact. It has been discussed between counsel several times in the life of this case, and Mattel's counsel told the Court precisely this. And, we have offered to MGA on several occasions (in writing, on the record and orally) the Zeus backup tapes if MGA would prefer to search them itself.

In any event, you are asking now sweeping questions about whether Mattel searched any of dozens of different data sources, including over 4,000 backup tapes. Those are questions properly asked as interrogatories (or depositions) in my opinion. In fact both parties have asked similar questions in

**EXHIBIT 3 PAGE 14**

discovery.

Mattel propounded an interrogatory (No. 47) asking MGA to identify the sources of information from which it collected documents. MGA objected and refused to respond (MGA's Response to Mattel's Interrogatory No. 47). That is the subject of a pending motion to compel. Why should Mattel answer "simple" questions--which you ask about dozens of different custodians and topics in sweeping, cursory fashion--when MGA refused to answer a similar interrogatory. I have to say, I think I showed more direct responsiveness in our few telephone conversations than it appears MGA has shown throughout the discovery process in this case. When you did ask me a discrete, answerable question--such as whether we had searched Lily Martinez's hard drive--I obtained the answer for you and gave it to you (the answer was "yes", though I don't think you liked that answer).

MGA has itself asked virtually the same question in the form of an interrogatory (No. 31)--signed by you, and propounded on December 4. I further cannot understand why you are asking me--in the guise of a "meet and confer"--to answer something that you know you just asked in the form of a discovery request.

You also say that you have received "conflicting" messages from Mattel. That is incorrect. As the support for your conclusion, you cite to your characterizations of conversations you had with me and Tim Alger--yet you will recall that as soon as you tried to summarize our conversation in an email, I promptly corrected you. Disingenuously, when you cite to your understanding of what I said, you refer only to your understanding of our oral conversations, and not the several emails that I have sent you explicitly stating our position. What I have said is consistent with what I wrote, not in conflict with it. I sincerely hope that we do not have to resort to communicating only in writing going forward.

You further compare your request to "similar" ones made by our firm to yours regarding whether it intended to stand on certain objections. I am perplexed by that comparison. To which "objections" to which RFP or Interrogatory are you referring? To my knowledge, you have not identified any.

Lastly, you mention the offer of a "source log"--which MGA offered to exchange in lieu of answering Mattel's Interrogatory No. 47. That offer was rejected because, among other things, the source log proposed by MGA would only identify the source of documents actually produced, not the places where searches were conducted (or not conducted) for documents not produced. As such, the source log would not be a satisfactory substitute for a response to Interrogatory No. 47. That is undoubtedly why MGA has refused to answer Mattel's Interrogatory -- because it calls for specific information about where MGA has searched and not searched for key early Bratz documents, which MGA does not want to disclose. Based on what you are seeking from me in your email, the source log proposed to be exchanged by MGA would not appear to provide MGA what it is looking for either to the extent any source searched did not ultimately result in the production of a responsive document. And, I note also that Mattel did not reject MGA's proposal to exchange a source log. In fact, Mattel asked MGA if that was a freestanding proposal MGA was making. MGA said it was not. The only "proposal" Mattel rejected was MGA's demand that Mattel waive its right to the information sought in Interrogatory 47 -- which MGA refuses to provide even in discovery and yet you now effectively demand we provide via email.

Regards,

Christopher Tayback

EXHIBIT _3_ PAGE _15_

**Exhibit 4**

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California  94111
Telephone:      (415) 774-2611
Facsimile:      (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>          Plaintiff,<br><br>     v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>          Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION TO COMPEL DOCUMENTS RESPONSIVE TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DATED NOVEMBER 22, 2006** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

## I.  INTRODUCTION

On April 13, 2007, MGA Entertainment, Inc. ("MGA") submitted a motion to compel Mattel, Inc. ("Mattel") to produce documents responsive to MGA's First Set of Requests for Production of Documents dated November 22, 2006 (the "requests"), which generally seeks documents that MGA contends are relevant to its Lanham Act and unfair competition claims.  On April 25, 2007, Mattel submitted its opposition brief, and on May 2, 2007, MGA submitted a reply brief.  The matter was heard via telephonic conference on May 11, 2007.  Having

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

**EXHIBIT  4  PAGE  14**

1  considered the motion papers and comments of counsel at the hearing, MGA's motion to compel

2  is granted in part and denied in part.

3  II. BACKGROUND

4      There are two themes underlying MGA's claims for unfair competition against Mattel.

5  First, MGA alleges that Mattel has intentionally "serially imitated and copy-catted the look of

6  MGA products, trade dress, trademarks, themes, ideas, advertising and packaging, including for

7  the 'Bratz' line of dolls," to dilute MGA's brand, create customer confusion, and unfairly stifle

8  competition. MGA's Complaint at ¶¶9, 65. Second, MGA alleges, on information and belief,

9  that "Mattel has intimidated, coerced and threatened retailers, licensees, suppliers and others in

10 the industry – both in the U.S. and internationally – in order to inhibit and stifle MGA's ability to

11 compete with Mattel and to prevent MGA from obtaining licensees, contracts and supplies for its

12 products." Id. at ¶9.

13 The Alleged Copy-catting

14     Mattel's alleged serial copycatting "began with the 'Bratz' dolls themselves, but quickly

15 extended to MGA's packaging, themes, accessories, advertising and even other product lines."

16 Id. at ¶33. Mattel allegedly "designed its 'My Scene' dolls to evoke the unique and distinctive

17 look of the 'Bratz' – also with disproportionately oversized heads, artfully made-up almond-

18 shaped eyes, large, overly-lined and lipsticked lips, trendy, hip clothes and hair styles, and over-

19 sized feet." Id. at ¶34. Mattel also allegedly "systematically proceeded to modify the 'My Scene'

20 dolls since their original release, particularly their eyes, to increase their similarity to 'Bratz' more

21 and more over time." Id.

22     Further, Mattel allegedly "modified its 'My Scene' packaging, and the manner in which

23 the dolls are displayed, to more closely mimic the packaging, trade-dress and overall look and

24 total image of MGA's 'Bratz.'" Id. at ¶41. For example, Mattel allegedly changed its packaging

25 "to the open and transparent style of the 'Bratz' packaging." Id. at ¶43. Mattel also allegedly

26 hung its packaging and product display to "look even more closely and confusingly similar to

27

28

EXHIBIT 4 PAGE 172

1    MGA's packaging and '*tout ensemble*.'" Id. at ¶45.  Mattel also allegedly "discarded its

2    traditional rectangular shaped box, and like 'Bratz', adopted an unusual, non-rectangular shaped

3    box." Id. at ¶46.  Mattel also allegedly "adopted the 'flying banner' ribbon-style slogan running

4    across the middle of the box, similar to that used on the 'Bratz' packaging." Id.

5            In addition to the packaging changes, Mattel allegedly copied "MGA's practice of

6    regularly releasing new dolls in connection with a theme – but not just any theme, often MGA's

7    theme." Id. at ¶47.  For example, when MGA released its "Wintertime Wonderland" theme,

8    Mattel allegedly released "Chillin Out." Id. at ¶48.  Mattel also allegedly imitated Bratz

9    accessories and related products in order to create consumer confusion in the marketplace. Id. at

10   ¶52.  Further, Mattel allegedly "began running television commercials for its 'My Scene' dolls

11   bearing a remarkable similarity to 'Bratz' commercials, combining live action with animated

12   sequences set to similar sounding pop music and lyrics." Id. at ¶51.  MGA alleges that Mattel's

13   conduct described above "is a calculated and intentional effort unquestionably designed to trade

14   off of MGA's hard work and goodwill, create confusion in the marketplace, steal MGA's thunder

15   and momentum, and dilute and blur away the novelty and distinctiveness of MGA's products."

16   Id. at ¶54.

17           Further, MGA alleges that when it "came out with a 'Bratz' 'Funky Fashion Makeover

18   Head,' Mattel came out with a confusingly similar – indeed, practically identical – 'My Scene'

19   styling head." Id. at ¶55.  Mattel also allegedly "used a portion of the Bratz doll's now-famous

20   trademarked tag line 'The Girls With a Passion for Fashion' on Mattel's website for its 'Diva

21   Starz' dolls, asking its website users:  'Do you have a passion for fashion?'" Id. at ¶58.

22           MGA also alleges that Mattel recently came out with a confusingly similar line of "My

23   Scene" plush pets that have the distinctive look of MGA's "Bratz" line. Id. at ¶59.  In addition,

24   Mattel allegedly "chose to package its pets the same way that MGA packaged its 'Bratz Petz',

25   sitting in an open box, with no top and with partial side panels that slope from a narrow front

26   panel to a higher back panel." Id. at ¶60.  MGA alleges that the similarity of the "My Scene" pets

27

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                              EXHIBIT 4 PAGE 18                    3

1   and the "Bratz Petz" has confused sophisticated retailers who have mistakenly merchandised the

2   products together. Id. at ¶61.

3        MGA alleges that Mattel's television commercials and "My Scene" products have become

4   so confusingly similar to MGA's commercials and products that advertising executives have

5   expressed concern. Id. at ¶62. MGA also alleges that the press has taken notice of Mattel's

6   alleged attempts to confuse consumers. Id. at ¶63. Further, MGA alleges that some customers

7   have contacted MGA seeking to purchase "My Scene" dolls. Id. at ¶64.

8        MGA alleges that Mattel's conduct has reached beyond "Bratz" to include other new

9   MGA toy lines. Id. at ¶67. For example, Mattel allegedly modeled its "Wee 3 Friends" line of

10  dolls and packaging on MGA's "4-Ever Best Friends" line. Id. at ¶68. Mattel also allegedly

11  modeled its "Little Mommy Potty Training Baby Doll" on MGA's "Mommy's Little Patient." Id.

12  at ¶69. Mattel also allegedly revamped and renamed one of its "Hot Wheels" lines with the

13  "AcceleRacerS" logo based upon MGA's "AlienRacers" radio controlled racing vehicles. Id. at

14  ¶70.

15                        Additional Allegedly Anti-Competitive Conduct

16       MGA alleges that Mattel has engaged in additional allegedly anti-competitive conduct,

17  including "sending threatening letters to several of its former employees who now work for MGA

18  warning them not to disclose *even publicly available information* about Mattel, including the

19  names and positions of Mattel employees." Id. at ¶75 (emphasis in original). Mattel has also

20  allegedly "warned a number of companies, including the biggest publishing entity in the United

21  Kingdom, not to license MGA products, or risk retribution." Id. at ¶76. MGA alleges that it has

22  lost valuable licensing opportunities as a result of Mattel's conduct. Id.

23       MGA also alleges that "Mattel has used similar intimidation to pressure distributors and

24  retailers, particularly in foreign countries, not to distribute 'Bratz', to reduce shelf and display

25  space for 'Bratz' and to place 'Bratz' in unfavorable locations at retail outlets." Id. at ¶77. MGA

26  further alleges that "[w]hen MGA faced a shortage of doll hair in October 2002, MGA is

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 4 PAGE 19     4

1   informed and believes that the reason for that shortage was that Mattel had locked MGA out by

2   buying up the supply from the two main hair supply companies." Id. at ¶78.

3       MGA also alleges that Mattel manipulated the retail market.  More specifically, MGA

4   alleges that "Mattel merchandisers have been caught tampering with MGA's retail displays,

5   replacing favorably located MGA merchandise with Mattel merchandise instead." Id. at ¶79.

6   MGA further alleges on information and belief that "Mattel has falsely told a major United States

7   retailer that MGA was giving another major United States retailer below-market pricing and

8   falsely told a United Kingdom retailer that MGA was discontinuing one of its lines, in order to

9   make such line less attractive to buyers and thereby attempt to increase sales of the competitive

10  Mattel product and improve its own sales, at MGA's expense." Id.

11      Next MGA alleges on information and belief that NPD Funworld ("NPD"), the leading

12  supplier of sales statistics in the toy industry, terminated MGA's subscription ostensibly for

13  misusing NPD data and that "the termination was the result of pressure from Mattel." Id. at ¶¶80-

14  85.  MGA also alleges on information and belief that Mattel pressured NPD into changing certain

15  product classifications for "Bratz" products to manipulate the data and preserve Mattel's market

16  share rankings in the "fashion doll" category. Id. at ¶86.

17      MGA further alleges on information and belief that Mattel used its influence as a major

18  contributor to the Children's Advertising Review Unit ("CARU"), which is a unit of the Council

19  of Better Business Bureaus, to "place onerous restrictions on MGA advertisements, and require

20  MGA to amend aspects of commercials that have gone unchallenged in other parties'

21  commercials." Id. at ¶89.  As a result of CARU's restrictions, MGA allegedly incurred

22  unnecessary costs for reshooting and producing or re-editing its commercials. Id. at ¶90.

23      MGA also alleges on information and belief that Mattel's subsidiary, Fisher Price,

24  "orchestrated" a change to the selection process for TIA's "Toy-of-the-Year Awards," which

25  allegedly resulted in a Fisher Price toy beating out "BRATZ Formal Funk Super Stylin' Runway

26  Disco." Id. at ¶¶92-96.  MGA also alleges on information and belief that one year "Mattel was

27

28

EXHIBIT _4_ PAGE _20_ [5]

1   instrumental in attempting to keep MGA from participating as a sponsor in the 'Kids' Choice

2   Awards.'" Id. at ¶97.

3       As a result of Mattel's alleged conduct described above, MGA has allegedly suffered, and

4   unless abated, will continue to suffer lost sales, lost licensing fees, lost contracts, lost

5   relationships, lost business opportunities and other damages. Id. at ¶100. MGA also alleges that

6   its ability to enter new markets and product lines has been hampered and delayed. Id.

7   Furthermore, MGA alleges that "[i]ts production costs have increased, its reputation and

8   relationships with important players in the industry have been negatively impacted, the value of

9   its business has been diminished, and its ability to attract, hire and retain employees has been

10  affected." Id. Based upon the foregoing, MGA asserts claims for (1) false designation of origin

11  or affiliation in violation of 15 U.S.C. §1125(a); (2) unfair competition in violation of 15 U.S.C.

12  §1125(a) and unfair competition and unfair business practices in violation of Cal. Bus. & Prof.

13  Code §17200 et seq. and California common law; (3) dilution in violation of 15 U.S.C. §1125(c),

14  Cal. Bus. & Prof. Code §14330 and California common law; and (4) unjust enrichment.

15                      <u>MGA's First Set of Requests for Production of Documents</u>

16      On November 22, 2006, MGA propounded one hundred fifteen (115) document requests

17  seeking discovery regarding, among other things: (a) Mattel's alleged copycatting efforts and

18  activities with respect to Bratz and other MGA product lines; (b) anti-competitive business

19  practices allegedly carried out by Mattel; and (c) any similar or related activities. In response,

20  Mattel objected to many requests primarily on the grounds that they were overly broad and

21  unduly burdensome. Mattel agreed, however, to produce documents responsive to many of the

22  requests.

23      The parties met and conferred in person on March 9, 2007. MGA's counsel demanded

24  that Mattel withdraw all objections based on relevance. Alger Decl. in Support of Mattel's

25  Opposition at ¶7. Mattel's counsel responded that Mattel was producing responsive documents

26  and would continue to produce responsive documents, but had concerns over the "lack of focus

27

28                                              EXHIBIT 4 PAGE 21    6

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1   and infinite scope" of MGA's document requests. Id. Mattel's counsel suggested that MGA

2   narrow the requests to "those products, retailers, licensees, and time frames that MGA has put at

3   issue in its Complaint and response to interrogatories." Id. MGA's counsel, however, rejected

4   the proposal. Id.

5         A few days later, counsel for MGA sent Mattel's counsel a letter offering several

6   suggestions for limiting the requests. Glad Decl. in Support of MGA's Motion, Ex. 1. In

7   particular, MGA stated that "it would be amenable to certain limitations on the number and

8   identities of custodians whose files must be searched, so long as Mattel is willing to accept

9   reciprocal accommodations for MGA's own document review." Id. Mattel did not respond to the

10  letter, and the instant motion ensued.

11                              III. STANDARDS

12        Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

13  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

14  party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not

15  permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

16  2004) ("District courts need not condone the use of discovery to engage in 'fishing

17  expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

18  (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

19  (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

20  the phrase "subject matter involved in the pending action," were intended to target discovery that

21  swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

22  litigate the issues presented by the pleadings but to develop new claims or defenses.). Further,

23  pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit discovery where "the burden or

24  expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

25  the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

26  the litigation, and the importance of the proposed discovery in resolving the issues."

27

28

**EXHIBIT 4 PAGE 22**

IV. DISCUSSION

A. General Objections

MGA contends that Mattel has improperly withheld documents based on three generalized objections. First, MGA contends that Mattel has asserted an objection based upon relevance to requests that are not related to facts specifically alleged in MGA's complaint. MGA contends the objection is improper because it essentially grafts a heightened pleading standard onto discovery requests, is inconsistent with the standard for discovery set forth in Rule 26(b), Fed.R.Civ.P., and goes against the very purpose of discovery. MGA denies "fishing" for new claims, contending that it is seeking discovery tending to support or refute existing claims.

Second, MGA contends that Mattel has improperly refused to produce "documents related to MGA's BRATZ dolls unless the documents are 'in the context' of Mattel's BARBIE or MY SCENE products." MGA's Motion at 9:10-11. MGA contends that all of the documents related to Bratz that it seeks are relevant, regardless of whether they refer to or contemplate Barbie or My Scene. In particular, MGA contends that documents related to Bratz, even if they do not refer to Barbie or My Scene, are relevant to its claims that (1) Mattel has exerted pressure on licensees not to license Bratz products; (2) Mattel has exerted pressure on retailers or distributors not to distribute Bratz products; (3) Mattel has tampered with Bratz displays; and (4) Mattel intentionally copied Bratz products.

Third, MGA contends that Mattel has improperly limited its production of My Scene documents to only those documents related to the specific acts of product and packaging infringement identified in MGA's complaint. MGA contends that it is entitled to far more, including documents concerning potential acts of infringement not mentioned in the complaint and documents concerning the development of the My Scene product line from inception of this suit to the present. In particular, MGA contends that documents concerning the current development of My Scene may tend to show continuing infringement, and therefore are relevant to prove that Mattel's conduct is willful.

EXHIBIT 4 PAGE 23

8

1    Mattel contends that it has produced documents in response to many of MGA's requests,

2  and will continue to do so.  Mattel objects, however, to those requests that require Mattel to

3  produce virtually every document, anywhere in the world, that mentions MGA, Larian, Bratz, or

4  any other MGA product.  Mattel contends that MGA is engaging in an improper fishing

5  expedition, casting its requests so broadly as to require production of documents relating to

6  products and entire product lines that are irrelevant to the suit.  Mattel also contends that the

7  requests are overbroad because they seek documents about subjects such as quality and pricing

8  which do not appear anywhere in MGA's pleadings.  Id.  Furthermore, Mattel contends that

9  MGA's requests are not linked in any manner to MGA's claims in the suit and do not reference

10 any particular alleged wrongdoing by Mattel.

11    Mattel also contends that responding to MGA's document requests would impose a

12 considerable, unjustifiable burden on Mattel.  Mattel emphasizes that it is a large company, with

13 over 140 subsidiaries and affiliates in approximately 43 different countries.  Mattel represents that

14 it has over 5,000 employees in the United States and more than 25,000 employees at subsidiaries

15 and affiliates worldwide.

16    Mattel also represents that its products are sold in thousands of stores.  It represents that it

17 deals with Wal-Mart, Target, K-Mart, and Toys "R" Us on a daily basis, and that these four

18 retailers have more than 4,500 stores in the United States.  Mattel also represents that it deals with

19 many hundreds more retailers domestically and overseas.  Further, Mattel represents that it has

20 relationships with more than 1,400 licensees and licensors.

21    Mattel also represents that the toys it produces vary widely, including collectible card

22 games, electronic handheld devices, toy cars, and the Barbie doll line.  Mattel asserts that it

23 introduces annually more than 2,000 different types of toys, dolls and other products in more than

24 150 nations throughout the world.  Mattel asserts that many products often involve the creation of

25 many categories of documents relating to design, marketing, consumer and market research,

26 planning, engineering, cost, manufacturing, distribution, sales and finance.  Mattel represents that

27

28

EXHIBIT  4  PAGE  24

9

these types of documents are stored on Mattel's over 800 computer servers worldwide, and that countless others are stored in hardcopy or stored on individual employees' desktop computers and laptops. Furthermore, Mattel represents that many of its network systems, including its e-mail system, are not readily searchable, or searchable at all, by use of keyword terms. For example, Mattel asserts that the computer system used by Mattel's designers and engineers overwhelmingly consists of graphical files whose content cannot be searched by keywords.

Mattel estimates that MGA and its products are referenced in millions of pages of documents and computer files at Mattel. More specifically, Mattel contends that many groups across Mattel, such as marketing, consumer research, sales, finance, human resources and safety testing, have documents that refer or relate to MGA or its products in some way. Mattel also contends that a large volume of this information is from third party analysts and third party sources, including retail sales reports that track doll sales across the entire industry, newspaper and magazine articles, commercials and advertisements. Mattel also represents that it collects great quantities of documents about its competitors that are readily available on the Internet or other public sources, including catalogs, advertising, press releases, and media reports, and from retailers and distributors throughout the world.

Furthermore, Mattel represents that its documents, particularly its marketing and sales research documents, often reference many competing products, not just the Bratz dolls at issue. Mattel contends that these types of documents would be difficult to search and collect because, in many instances, the only way to determine whether a particular document mentions Bratz would be to review the entire document.

Mattel contends that virtually any employee at Mattel might have documents that are responsive to MGA's requests. Mattel estimates that "to locate all such documents would take years, cost millions of dollars, and seriously interfere with the operation of Mattel's business." Mattel's Opposition at 17. Matter also asserts that "[s]uch efforts – including search of Mattel's servers, its employees' computer workstations, hard copy files, computer disks, and video files –

EXHIBIT 4 PAGE 25

1   would be in addition to the cost of attorney review of the materials before they are produced in

2   litigation." Id. Mattel also contends that the burden and expense of production is multiplied

3   several times further if Mattel is required to search the files in the possession of its worldwide

4   subsidiaries.

5          Mattel contends that even if the search for responsive documents could be accomplished,

6   the resulting document production would provide MGA with countless documents with little or

7   no relevance. For example, Mattel anticipates that many documents would be discussions of the

8   competition in the context of irrelevant dolls, such as any number of mainline Barbie dolls.

9   Mattel contends that other documents would simply be third party market reports which are

10  equally available to MGA from public sources. Accordingly, Mattel requests that the motion be

11  denied in full.

12         In its reply, MGA counters that the requests are not unduly burdensome. MGA contends

13  that contrary to Mattel's assertions, the requests are factually self-limited, containing restrictive

14  language and defining the outer parameters for the documents sought. Furthermore, MGA

15  contends that it told Mattel that it would be amenable to certain limitations on the number and

16  identities of custodians whose files must be searched, so long as Mattel was amenable to

17  reciprocal accommodations for MGA's own document review. MGA contends that, at a

18  minimum, Mattel should be required to search the physical and electronic files of its employees.

19  MGA contends that Mattel should not be released wholesale from its discovery obligations based

20  on a purported burden, particularly when it failed to work with MGA in good faith to mitigate that

21  burden.

22         Lastly, MGA argues that any burden to Mattel is outweighed by the benefit to be secured

23  from the discovery. MGA contends that it "realistically has no other way of obtaining documents

24  tending to support its claims that Mattel engaged in a pattern of conduct with suppliers,

25  distributors, licensees and others constituting unfair competition except from Mattel." MGA's

26

27

28

EXHIBIT 4 PAGE 26

1   Reply at 10. Therefore, MGA believes that the benefits of the discovery it seeks are

2   immeasurable and that in contrast, the burden to Mattel is not unreasonable.[1]

3   B. Document Requests

4        In addition to the three general objections described above, Mattel has asserted other

5   objections to certain categories of document requests which MGA contends are improper. The

6   general objections stated above, as well as the additional objections asserted by Mattel, are

7   reviewed herein in the context of the nine categories of document requests at issue.

8                     1. Document Request Nos. 32-33, 61

9        Request nos. 32, 33 and 61 seek production of communications with sales personnel,

10   merchandisers and retailers relating to alteration of displays or retail spacing of MGA products

11   other than Bratz. MGA contends that the documents it seeks are relevant to the allegation in

12   paragraph 79 of its complaint that "Mattel merchandisers have been caught tampering with

13   MGA's displays, replacing favorably located MGA merchandise with Mattel merchandise

14   instead." In its reply brief, MGA clarifies that it "seeks information tending to show that at any

15   time after June 2001, Mattel sales personnel tampered with, or directed others to tamper with,

16   MGA's in-store displays." MGA's Reply at 8.

17        During the meet and confer process, Mattel agreed to produce documents responsive to

18   request nos. 32-33 and 61 insofar as they related to displays, retail spacing, or shelf space for

19   Bratz, but refused to produce responsive documents relating to any other MGA products. Glad

20   Decl. in Support of MGA's Motion, Ex. 1. Mattel contends that request nos. 32 and 33 are

21   overbroad and unduly burdensome insofar as they require production of communications relating

22   to displays, retail spacing, or shelf-space for any other MGA products. Mattel views the requests

23   as a directive to "go out and find, review and produce essentially all of its retailer

24

25      [1] In a footnote, MGA mentions that Mattel has also withheld documents relating to conduct occurring

26   outside of the United States, and that this issue will be addressed in a separate motion. MGA's Motion at 10, n. 29. Nothing in this Order is intended in any way to permit or foreclose discovery relating to conduct occurring outside of the United States.

27

28   EXHIBIT _4_ PAGE _27_   12

1   communications about any 'change' in any 'display' or any 'retail spacing' for any MGA

2   product." Mattel's Opposition at 10. Mattel contends that MGA, not Mattel, should bear the

3   burden of identifying specific incidents of alleged tampering, and thereafter Mattel will attempt to

4   find and produce pertinent documents relating to those incidents. Id.

5       Mattel also contends that request no. 61 is overbroad and amounts to an improper fishing

6   expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other MGA

7   product, whether or not they have anything to do with anything placed at issue by MGA. Mattel's

8   Opposition at 7-8. Mattel also contends that the request has no linkage to any possible consumer

9   confusion between Bratz and My Scene or between the other products mentioned in MGA's

10  complaint or MGA's responses to Mattel's contention interrogatories. Id. at 8.

11      Request nos. 32, 33, and 61 seek documents relevant to MGA's allegation that "Mattel

12  merchandisers have been caught tampering with MGA's displays, replacing favorably located

13  MGA merchandise with Mattel merchandise instead." MGA's allegation of tampering is broader

14  than just Bratz products, and therefore, Mattel's objection to producing responsive documents for

15  MGA products other than the Bratz line is overruled.

16      Further, the requests are not unduly burdensome. Request nos. 32 and 33 are limited to

17  communications between Mattel and its sales personnel and merchandisers relating to alterations

18  of display or retail spacing for MGA products, and therefore do not require Mattel to search for

19  documents from every single one of its employees. Request no. 61 is also reasonably tailored to

20  seek relevant information, requiring production of communications between Mattel and any

21  retailer, sales person or merchandiser referring or relating to the allocation of shelf space, altering

22  of retail displays, or placement of Bratz in retail stores, including but not limited to

23  communications concerning the placement of "Bratz" relative to My Scene. Contrary to Mattel's

24  assertion, request no. 61 does not require Mattel to search for virtually all documents that mention

25  MGA, Larian, Bratz, or any other MGA product, whether or not they have anything to do with

26  anything placed at issue by MGA. Instead request no. 61 is clearly limited to a defined category

27

28  EXHIBIT 4 PAGE 28                                                        13

1  of communications with certain individuals and/or entities regarding a defined subject matter.  In

2  addition, MGA indicates in its reply brief that it seeks documents and communications from June

3  2001 forward.  With this temporal limitation, MGA's motion is granted as to request nos. 32, 33

4  and 61.

5                    2. Document Request Nos. 37-39

6         Request nos. 37 through 39 call for production of Mattel's communications with CARU

7  relating to MGA and restrictions to be placed on MGA, as well as documents supporting Mattel's

8  allegation in its answer that MGA violated CARU standards.  MGA contends that the documents

9  it seeks are relevant to its allegation in paragraph 89 of its complaint that "Mattel used its

10  influence as a major contributor to CARU's budget to induce CARU to place onerous restrictions

11  on MGA advertisements, and to require MGA to amend aspects of commercials that have gone

12  unchallenged in other parties' commercials."

13        In its opposition brief, Mattel represents that is prepared to produce documents that bear

14  on MGA's claims and Mattel's defenses involving CARU, but nothing further.  Mattel contends

15  that the sweep of these requests "goes far beyond any particular advertisements or the allegations

16  in MGA's complaint that Mattel pressured CARU or obtained better treatment different than

17  MGA." Mattel's Opposition at 10.  Furthermore, Mattel contends that the requests are improper

18  because CARU investigates complaints and claims in confidence.

19        MGA's request nos. 37 and 39 seek information relevant to MGA's allegation that Mattel

20  influenced CARU to place restrictions on MGA's advertisements.  The Federal Rules of Civil

21  Procedure do not require MGA to identify every instance when CARU imposed restrictions or

22  required amendments to MGA's advertisements before propounding discovery on the subject.

23        Request no. 38 is much broader, however, seeking all communications between Mattel

24  and CARU referring or relating to MGA, Larian, Bratz, or MGA products.  Request no. 38 is not

25  limited to the subject of MGA's advertisements, or any other subject that is at issue in the case.

26  Further, request no. 38 is, to a certain extent, cumulative of request nos. 37 and 39.

27

28

EXHIBIT __4__ PAGE _29_    14

1       Accordingly, MGA's motion is granted with respect to request nos. 37 and 39, but denied

2   as to request no. 38.

3   <u>3. Document Request No. 43</u>

4       Request no. 43 seeks documents relating to any attempts by Mattel to price My Scene

5   below Bratz. MGA contends that the documents it seeks are likely to lead to admissible evidence

6   relating to whether Mattel has an "organic process" for setting prices, or whether it set prices

7   based on confidential information obtained from MGA. MGA's Motion at 13:22.

8       Mattel contends that there is no allegation in MGA's complaint of below-market pricing.

9   Further, Mattel contends that the request is overbroad and seeks documents that have no relevance

10  to any other subject matter in suit.

11      Request no. 43 seeks documents that have no relevance to any claim or defense in the

12  case. There is no allegation in MGA's complaint related to below-market pricing. Nor is there

13  any allegation that Mattel misappropriated confidential pricing information from MGA.

14  Accordingly, MGA's motion is denied as to request no. 43.

15  <u>4. Document Request No. 47</u>

16      Request no. 47 calls for production of documents relating to Mattel's communications

17  with buyers, merchandisers, general merchandise managers, or retailers relating to whether MGA

18  was giving any other U.S. retailer below-market pricing or whether MGA was discontinuing one

19  of its product lines. MGA contends that these documents are relevant to the allegation in

20  paragraph 79 of its complaint that "Mattel has falsely told a major United States retailer that

21  MGA was giving another major United States retailer below-market pricing and falsely told a

22  United Kingdom retailer that MGA was discontinuing one of its lines."

23      Mattel contends that request no. 47 is improper because it demands documents about

24  "alleged statements to an unidentified retailer and an unidentified toy line" without giving Mattel

25  "a hint as to where to look in order to perform a good-faith search for documents." Mattel's

26  Opposition at 12.

27

28  EXHIBIT 4 PAGE 30

1   Request no. 47 seeks documents relevant to MGA's allegation that Mattel made a false

2   representation to a major United States retailer that MGA was giving another retailer below-

3   market pricing, and falsely told a United Kingdom retailer that MGA was discontinuing a product

4   line.  The Federal Rules of Civil Procedure do not require MGA to identify the businesses to

5   whom Mattel allegedly made the false statements as a precondition to propounding discovery.

6   Nor is MGA required to identify every instance in which Mattel allegedly made such false

7   representations before propounding discovery.  Nevertheless, the request is extremely broad and

8   burdensome, requiring Mattel to search for "all documents referring or relating to any

9   communications between Mattel" and buyers, merchandisers, general merchandise managers, or

10  retailers referring or relating to whether MGA was giving another United States retailer below-

11  marketing pricing, or whether MGA was discontinuing one of its lines.  To alleviate some of the

12  burden to Mattel, the request is hereby limited to require production of only Mattel's

13  communications with any buyers, merchandisers, general merchandise managers or retailers

14  about MGA providing below-market pricing or MGA discontinuing a product line.  With this

15  limitation, MGA's motion is granted as to request no. 47.

16                              5. Document Request Nos. 48 – 50

17  Request nos. 48 through 50 essentially seek all documents referring or relating to Mattel's

18  communications with any buyers, merchandisers, general merchandise managers, retailers,

19  suppliers, licensees, and potential licensees, referring or relating to Bratz, Larian or MGA

20  regarding the origins, design, development, product launch, sales, promotions, advertising,

21  quality, or price of Bratz or any other MGA product.  During the meet and confer, Mattel agreed

22  to produce some, but not all, responsive documents.  In particular, Mattel objected to producing

23  documents relating to the pricing of Bratz or any MGA product.  Mattel also objected to

24  producing documents relating to Bratz unless the documents also referenced Mattel's My Scene

25  or Barbie products.

26

27

28

**EXHIBIT 4 PAGE 31**     16