1    MGA contends that these documents are relevant to its allegation that Mattel interfered

2    with its business dealings with third parties.  In its reply brief, MGA asserts that it seeks

3    documents and communications between Mattel and certain third parties "from June 2001 tending

4    to support or refute MGA's assertions that Mattel interfered with MGA's dealings with such

5    parties by providing false or misleading information concerning MGA products, the ownership of

6    'Bratz' and exerting pressure on these parties not to license or sell MGA products."  MGA's

7    Reply at 8.

8         Mattel contends that these requests are overbroad and amount to an improper fishing

9    expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other MGA

10   product, whether or not they have anything to do with anything placed at issue by MGA.  Mattel's

11   Opposition at 7-8.  Mattel also contends that the requests have no linkage to any possible

12   consumer confusion between Bratz and My Scene or between the other products mentioned in

13   MGA's complaint or MGA's responses to Mattel's contention interrogatories.  Id. at 8.

14        This category of requests is clearly overbroad, requiring production of documents that

15   merely mention MGA, Larian, Bratz or other MGA products, regardless of whether or not they

16   have anything to do with the claims and defenses in the case.  MGA has not made any attempt to

17   link these requests to any of the numerous and far-ranging allegations of unfair competition set

18   forth in its complaint.  Instead MGA makes a very generalized argument that the requests seek

19   information relevant to its allegation that Mattel interfered with MGA's business dealings with

20   third parties.  Furthermore, Mattel has carried its burden of establishing that the burden and

21   expense of complying with the requests far exceed their likely benefit, taking into account the

22   needs of the case.  Accordingly, MGA's motion is denied as to request nos. 48 through 50.

23                          6. Document Request Nos. 51 – 55

24        This category of document requests requires production of essentially all documents

25   referring or relating to any communications between Mattel and any public relations firms,

26   members of the press, current or former MGA employees, or former Mattel employees, relating to

27

28   EXHIBIT 4 PAGE 32    17

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

1 | Bratz, Larian, or MGA regarding the origins, design, development, product launch, sales,

2 | promotions, advertising, quality, or price of Bratz or any other MGA product. During the meet

3 | and confer process, Mattel agreed to produce some, but not all responsive documents.

4 | MGA contends that these documents are relevant to its allegations that Mattel has engaged

5 | in serial imitation of MGA products in an attempt to dilute their distinctiveness and create

6 | confusion in the marketplace. MGA also contends that these documents are likely to lead to

7 | admissible evidence relating to the creation and ownership of Bratz, Mattel's knowledge and

8 | awareness of Bratz products and marketing and its attempt to imitate those products and dilute

9 | their distinctiveness.

10 | Mattel contends that these requests are overbroad and amount to an improper fishing

11 | expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other MGA

12 | product, whether or not they have anything to do with anything placed at issue by MGA. Mattel's

13 | Opposition at 7-8. Mattel also contends that the requests have no linkage to any possible

14 | consumer confusion between Bratz and My Scene or between the other products mentioned in

15 | MGA's complaint or MGA' responses to Mattel's contention interrogatories. Id. at 8.

16 | Like the previous category of requests, this category of requests is grossly overbroad,

17 | requiring production of documents that merely mention MGA, Larian, Bratz or other MGA

18 | products, regardless of whether or not they have anything to do with the claims and defenses in

19 | the case. MGA has not made any attempt to link these requests to any of the allegations of unfair

20 | competition set forth in its complaint or to the responses it provided to Mattel's contention

21 | interrogatories. Furthermore, Mattel has carried its burden of establishing that the burden and

22 | expense of complying with these requests far exceed their likely benefit, taking into account the

23 | needs of the case. Accordingly, MGA's motion is denied as to request nos. 51-55.

24 | <u>7. Document Request Nos. 56 – 58</u>

25 | This category of requests requires production of all documents relating to business

26 | dealings between any licensee, supplier, manufacturer, retailer, distributor, or merchandiser and

27 |

28 |

EXHIBIT 4 PAGE 33

18

1   MGA. MGA contends that these document requests are specifically tailored to documents in

2   Mattel's possession, custody or control concerning MGA's business dealings with licensees,

3   suppliers, manufacturers, retailers, distributors, or merchandisers, and are directly relevant to its

4   claims that Mattel interfered with MGA's business dealings with third parties.

5         Again, Mattel contends that these requests are overbroad and amount to an improper

6   fishing expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or any other

7   MGA product, whether or not they have anything to do with anything placed at issue by MGA.

8   Mattel's Opposition at 7-8. Mattel also contends that the requests have no linkage to any possible

9   consumer confusion between Bratz and My Scene or between the other products mentioned in

10   MGA's complaint or MGA' responses to Mattel's contention interrogatories. Id. at 8. Mattel

11   also objects to request nos. 57 and 58 insofar as they require Mattel to produce documents that

12   refer "explicitly or implicitly" to business dealings involving MGA.

13         Like the previous two categories of document requests, this category of requests is grossly

14   overbroad. Request nos. 56 and 57 require production of documents referring or relating to

15   MGA's business dealings, without specifying any products or other subject matter limitations.

16   Request no. 58 is narrower, but is unreasonable insofar as it requires Mattel to produce documents

17   that refer "explicitly or implicitly" to business deals involving MGA's Bratz or other products.

18   Furthermore, Mattel has carried its burden of establishing that the burden and expense of

19   complying with the requests far exceed their likely benefit, taking into account the needs of the

20   case. Accordingly, MGA's motion is denied as to request nos. 56 through 58.

                     **8. Document Request Nos. 59, 60, 62-63, 99, 101**

21

22         This category of requests requires production of all documents relating to (a) any

23   interference with or inhibition of the licensing or potential licensing of MGA's products, or

24   relating to any limitations or restrictions on any MGA licensee (request nos. 59, 62-63); (b) any

25   third party's licensing or potential licensing of MGA products (request no. 60); and (c)

26   communications between Mattel and MGA's licensees and distributors referring to MGA, Bratz

27

28

EXHIBIT 4 PAGE 34

    19

1   or the claims in this lawsuit (request nos. 99, 101). MGA contends that the documents it seeks are

2   relevant to its allegation that Mattel exerted its influence on retailers and other third parties not to

3   do business with MGA.

4        Mattel contends that request nos. 59, 60, 62 and 63 are overbroad, seeking all documents

5   that might bear on MGA's business without identifying any particular business dealings. Mattel

6   also contends that they are overbroad insofar as they require production of all documents related

7   to "any MGA PRODUCT world wide," where "product" is defined as "each image, character,

8   logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been

9   manufactured, marketed or sold by MGA or others under license." Mattel's Opposition at 9.

10       Mattel also contends that request nos. 99 and 101 are overbroad and amount to an

11  improper fishing expedition, seeking virtually all documents that mention MGA, Larian, Bratz, or

12  any other MGA product, whether or not they have anything to do with anything placed at issue by

13  MGA. Mattel's Opposition at 7-8. Mattel also contends that the requests have no linkage to any

14  possible consumer confusion between Bratz and My Scene or between the other products

15  mentioned in MGA's complaint or MGA' responses to Mattel's contention interrogatories. Id. at

16  8.

17       Request nos. 59, 60, 62, and 63 seek information relevant to MGA's allegations, including

18  among others, that Mattel "warned a number of companies, including the biggest publishing

19  entity in the United Kingdom, not to license MGA products, or risk retribution," and that Mattel

20  "terminated one of its licensees, apparently in retribution for licensing Bratz." MGA's Complaint

21  at ¶76. They are also reasonably tailored to require production of only those documents and

22  communications that refer or relate to interference with or inhibition of the licensing or potential

23  licensing of MGA's products, that refer or relate to any limitations or restrictions on any MGA

24  licensee, and that refer or relate to any third party's licensing or potential licensing of MGA

25  products. Mattel has not established that searching for theses types of responsive documents is

26  unduly burdensome. Therefore, MGA's motion is granted as to request nos. 59, 60, 62 and 63.

27

28

EXHIBIT __4__ PAGE __35__  [20]

1    In contrast, however, request nos. 99 and 101 are overbroad, requiring Mattel to search for

2  and produce all documents referring or relating to communications between Mattel and any MGA

3  licensee or distributor that refer or relate to MGA, Bratz, this lawsuit, other litigation involving

4  the parties or their employees, claims by MGA against Mattel or claims by Mattel against MGA

5  or its employees.  For example, the requests would potentially require production of documents

6  that merely mentioned MGA and Bratz but that otherwise have no relevance to the claims and

7  defenses in the suit.  Therefore, MGA's motion is denied as to request nos. 99 and 101.

8    <u>9. Document Request Nos. 64, 65, 66, 67</u>

9    This category of requests requires production of all documents relating to (a) any third

10  party's agreement or decision not to license, manufacture, promote, distribute or sell MGA

11  products or supply materials or services to MGA, or to limit, restrict, curtail or reduce such

12  activities (request nos. 64-65); and (b) any interference with or inhibition of the supply of goods

13  or services to MGA, or of MGA's distribution of its products (request nos. 66-67).  MGA

14  contends that these documents are relevant to its claims that Mattel interfered with MGA's

15  business dealings with distributors, retailers, and other third parties, as alleged in paragraphs 76-

16  79 of its complaint.

17    Mattel contends that these requests are overbroad, seeking all documents that might bear

18  on MGA's business without identifying any particular business dealings.  Mattel also contends

19  that they are overbroad insofar as they require production of all documents related to "any MGA

20  PRODUCT world wide," where "product" is defined as "each image, character, logo, doll, toy,

21  accessory, product, packaging or other thing or matter that is or has ever been manufactured,

22  marketed or sold by MGA or others under license."  Mattel's Opposition at 9.

23    These requests seek information relevant to MGA's allegation that Mattel interfered with

24  its business dealings.  In particular, MGA has alleged that Mattel "warned a number of

25  companies, including the biggest publishing entity in the United Kingdom, not to license MGA

26  products, or risk retribution," and that Mattel "terminated one of its licensees, apparently in

27

28    **EXHIBIT 4 PAGE 30**    21

1   retribution for licensing Bratz." MGA's Complaint at ¶76.  MGA's requests are reasonably

2   calculated to lead to information relevant to this allegation.  Although the definition of product is

3   broad, the definition does not render the requests overbroad because they are otherwise limited in

4   subject matter.  Further Mattel has failed to establish that it is unduly burdensome to search for

5   and produce documents responsive to this category of requests.  Therefore, MGA's motion is

6   granted as to request nos. 64, 65, 66, and 67.

7                               <u>10. Document Request Nos. 102-104</u>

8        This category of requests requires production of Mattel's communications with three

9   companies referring to MGA, Bratz or Larian.  MGA contends that these documents are relevant

10   to its claims that Mattel interfered with its business dealings with third parties.

11        Mattel now represents that it will produce communications with Nickelodeon that bear on

12   MGA's allegation regarding sponsorship of the 2005 Kids Choice Awards.  Mattel contends,

13   however, that communications with Cartoon Network or 4kids Entertainment are not relevant to

14   any claim or defense in suit.

15        Mattel's communications with Nickelodeon regarding MGA, Bratz or Larian are relevant

16   in light of MGA's allegation that Mattel was "instrumental in attempting to keep MGA from

17   participating as a sponsor in the 'Kids' Choice Awards.'" <u>Id</u>. at ¶97.  Therefore, MGA's motion

18   is granted as to request nos. 102.  In contrast, MGA has failed to establish that similar

19   communications with Cartoon Network and 4kids Entertainment are relevant to a claim or

20   defense in suit.  Therefore, MGA's motion is denied as to request nos. 103 and 104.

21   //

22   //

23   //

24

25

26

27

28

V. CONCLUSION

For the reasons set forth above, MGA's motion to compel is granted in part as to document request nos. 32 ( as modified), 33 (as modified), 61 (as modified), 37, 39, 47 (as modified) , 59, 60, 62, 63, 64, 65, 66, 67, and 102, and denied in part as to document request nos. 38, 43, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 99, 101, 103 and 104.  MGA's request for sanctions is denied.  Mattel shall produce responsive documents as set forth above no later than June 15, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, MGA shall file this Order with the Clerk of Court forthwith.

Dated: May 22, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

EXHIBIT 4 PAGE 38

23

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 22, 2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION TO COMPEL DOCUMENTS RESPONSIVE TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DATED NOVEMBER 22, 2006 in the within action by e-mail addressed as follows:

| Name | Firm | Email |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 22, 2007, at San Francisco, California.

ANTHONY SALES

EXHIBIT __4__ PAGE 39

**Exhibit 5**

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7              UNITED STATES DISTRICT COURT

8            CENTRAL DISTRICT OF CALIFORNIA

9                    EASTERN DIVISION

10

11  CARTER BRYANT, an individual,        CASE NO. C 04-09049 SGL (RNBx)
                                         JAMS Reference No. 1100049530
12           Plaintiff,

13       v.                             Consolidated with
                                        Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation, Case No. CV 05-2727

15           Defendant.                 ORDER GRANTING IN PART AND
                                        DENYING IN PART MGA'S MOTION
16                                      TO COMPEL MATTEL TO
                                        SUPPLEMENT RESPONSES AND
17                                      PRODUCE DOCUMENTS
                                        RESPONSIVE TO FIRST SET OF
18                                      REQUESTS FOR PRODUCTION OF
                                        DOCUMENTS AND THINGS;
19                                      DENYING REQUEST FOR
                                        SANCTIONS
20

21  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
22  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
23

24

25

26

27

28
    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

Exhibit  7 , P. 215        EXHIBIT  5  PAGE  40

## I. INTRODUCTION

On July 3, 2007, MGA Entertainment, Inc. ("MGA") submitted its "Motion to Compel Mattel, Inc. ("Mattel") to Supplement its Responses and Produce Documents Responsive to MGA's First Set of Requests for the Production of Documents and Things dated January 31, 2005" (the "Requests") in the Mattel v. Bryant case.  On July 16, 2007, Mattel submitted an opposition brief and served its Second Supplemental Responses to MGA's Requests.  On July 26, 2007, MGA submitted a reply brief.[1]  The matter was heard on September 11, 2007.  Having considered the motion papers and the comments of counsel at the hearing, MGA's motion to compel is granted in part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

On January 31, 2005, MGA propounded its Requests, which consisted of 332 separate requests for, *inter alia*, (a) documents relating to Bryant, his employment, the property MGA allegedly misappropriated, and Mattel's decision to sue; (b) documents generally concerning the agreements Mattel alleges Bryant breached and the fiduciary duties of similarly situated Mattel employees; (c) MGA's Bratz dolls, including comparisons to Mattel products and evidence that Bryant created, developed, or reduced the Bratz idea to practice during his employment with Mattel; and (d) documents relating to allegations in Mattel's complaint, including damages.  Burr Decl., Ex. 1.  Mattel served its responses on March 3, 2005, which consisted entirely of objections.  Burr Decl., Ex. 2.  Most notably, Mattel objected to many of the Requests as duplicative of requests that Bryant had previously propounded and to which Mattel had already responded to by stating it would produce documents.

---

[1] After MGA filed its reply brief, Mattel filed several "supplemental declarations" in support of its Opposition to MGA's motion to compel, which it contends addressed several arguments raised for the first time in MGA's reply brief.  On August 22, 2007, MGA submitted a letter brief requesting that the supplemental declarations be stricken and not considered.  The next day, Mattel submitted a letter brief asserting that the request to strike should be denied on procedural and substantive grounds, and in the alternative, requesting leave to file the "supplemental declarations."  MGA's request to strike the "supplemental declarations" is denied, and Mattel's request for leave to file the "supplemental declarations" is granted.

1  Thereafter, the case was stayed while one of the parties pursued an interlocutory appeal.
2  When the stay was lifted, the parties met and conferred regarding the Requests. Although they
3  were not able to resolve all of their disputes, Mattel apparently confirmed to MGA that it "had
4  already produced documents and would continue to produce documents on the subjects that
5  duplicated Bryant's requests in a manner that was consistent with Mattel's earlier responses."
6  Mattel's Opposition at p.9. In January of 2007, Mattel served supplemental responses to 48
7  Requests ("Supplemental Responses"). Burr Decl., Ex. 3.

8      MGA and Mattel met and conferred again on March 27, 2007. Mattel reiterated that
9  MGA's Requests were duplicative of Bryant's requests. Mattel also contended that MGA's
10 Requests were duplicative of other MGA requests served on November 22, 2006. A few days
11 later, MGA sent a follow-up letter to Mattel identifying the Requests it contended were not
12 duplicative of other requests. Burr Decl., Ex. 5. MGA also sent another letter asking Mattel to
13 confirm whether it would supplement its responses and proposing that Mattel provide such
14 responses by April 10, 2007. When no response was received, on July 3, 2007, MGA filed the
15 instant motion to compel Mattel to supplement its responses to the Requests.

16     MGA contends that Mattel's boilerplate objections, including objections based upon
17 relevance, overbreadth and burden, "vague and ambiguous," and/or "duplicative" are all improper
18 because Mattel has failed to provide any explanation for its objections, much less any evidentiary
19 support for its objections. In addition, MGA contends that Mattel has failed to substantiate its
20 objection that certain Requests are purportedly "duplicative" of other requests. Lastly, MGA
21 contends that Mattel has failed to fulfill its obligation to supplement its responses to the Requests
22 with sufficient information for MGA to determine exactly which documents exist, do not exist,
23 have been produced, or otherwise will not be produced. MGA contends that without the required
24 supplementation, it lacks any means to ascertain the state of Mattel's discovery compliance.
25 Therefore, MGA seeks a court order overruling each of Mattel's objections and compelling
26 Mattel to supplement its responses and produce any remaining documents responsive to MGA's
27 Requests.

28

1        On July 16, 2007, Mattel submitted its opposition to the instant motion, its Second
2 Supplemental Responses to MGA's Requests, and its Corrected Second Supplemental Responses
3 to MGA's Requests (hereinafter collectively referred to as "Second Supplemental Responses").
4 Mattel contends that MGA filed the instant motion without completing the meet and confer
5 process and without identifying which responses are purportedly deficient. Mattel contends that
6 in any event, there is no genuine dispute as to many of the Requests that are the subject of MGA's
7 motion to compel. Mattel contends that during the meet and confer process, Mattel told MGA
8 that it had already produced documents and would continue to produce documents on the subjects
9 that duplicated Bryant's requests in a manner that was consistent with Mattel's earlier responses.
10 Mattel represents that it has been producing documents it can locate after a reasonable search, and
11 that its Second Supplemental Responses confirm which documents it has been producing in
12 response to 45 out of the 72 Requests at issue. Mattel also represents that it has produced in
13 excess of 100,000 pages of documents and has offered to make vast quantities of electronic data
14 available for review, inspection, and copying, including electronic data from Mattel's Zeus
15 computer system tapes. As to the remaining Requests at issue, Mattel stands by its objections that
16 they are overbroad and unduly burdensome.

17        In its reply brief, MGA acknowledges Mattel's Second Supplemental Responses, but
18 contends that they remain inadequate for several reasons. First, MGA contends that Mattel
19 persists in its objections even for those Requests to which Mattel has agreed to produce
20 responsive documents. In particular, MGA takes issue with Mattel's continuing objection that the
21 Requests are "duplicative" of other requests propounded by Bryant or MGA. Therefore, MGA
22 seeks a court order overruling each of Mattel's purportedly baseless objections. Second, MGA
23 contends that Mattel continues to refuse to collect and produce documents in response to 28
24 Requests that are clearly relevant to the claims and defenses in the case. Third, MGA contends
25 that Mattel improperly refuses to conduct a "reasonable search for documents," including a search
26 of its Zeus file server and backup tapes of the Zeus server. MGA's Reply at p.2. Therefore,
27 MGA seeks an order compelling Mattel to search the Zeus file server and backup tapes for

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

4

Exhibit _7_, P. _218_

EXHIBIT _5_ PAGE _43_

1  responsive documents at Mattel's expense. Finally, MGA anticipates that Mattel will withhold

2  responsive documents as long as possible to prejudice MGA's ability to prepare for depositions

3  and trial, and therefore should be ordered to complete its production forthwith.

4                                      III. STANDARDS

5        Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

6  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

7  party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the

8  discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

9  Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P.

10 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not

11 condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins.

12 Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note

13 to Amendments Effective December 1, 2000) (Congress's changes in the language of Rule 26(c),

14 substituting the words "claim or defense" for the phrase "subject matter involved in the pending

15 action," were intended to prevent discovery that swept far beyond the claims and defenses of the

16 parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to

17 develop new claims or defenses.).

18      Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or

19 extent of use of the discovery methods if the court determines that "(i) the discovery sought is

20 unreasonably cumulative or duplicative, or is obtainable from some other source that is more

21 convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

22 opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

23 expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

24 the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

25 the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

26 26(b)(2).

27 //

28

Exhibit _7_, P. _2/9_        EXHIBIT _5_ PAGE _44_

## IV. DISCUSSION

**1. Requests Concerning Bryant, Bryant's Employment, and Mattel's Decision to Sue Bryant**

> **a. Requests seeking documents relating to Mattel's decision to sue Bryant and the timing thereof, any Mattel decision not to sue Bryant, and any Mattel decision as to the litigation against MGA or involving Bratz (Nos. 172-174, 188 and 190)**

In Request Nos. 172-174, MGA seeks documents related to Mattel's Board of Directors' resolution to litigate regarding Bryant, MGA or Bratz. In Request Nos. 188 and 190, MGA seeks all documents related to "any decision [to sue or not to sue] Bryant."

MGA contends that documents responsive to Request Nos. 172-174, 188, and 190 are relevant to Bryant's and MGA's defenses based upon the statute of limitations, laches, waiver, and mitigation of damages. MGA contends that during the meet and confer process, Mattel agreed to produce documents responsive to Request Nos. 172-174 and 188, however, the documents have not been produced.

Mattel represents that it has already produced the Board of Directors meeting minutes that are responsive to Request Nos. 172-174, and that other meeting minutes that have been withheld or redacted for privilege have been placed on a privilege log. Mattel's Opposition at p.32. Mattel objects to Request Nos. 188 and 190 on the grounds that they seek information protected by the attorney-client privilege and/or the work product doctrine. Moreover, Mattel contends that the documents are irrelevant, asserting that Mattel's reasons for suing Bryant have no bearing on the merits of Mattel's claims or MGA's defenses thereto. Nevertheless, Mattel acknowledges that documents responsive to Request Nos. 188 and 190 might be relevant to MGA's statute of limitations and laches defenses. Mattel contends, however, that it has "already agreed to produce documents related to the first time Mattel became aware that Bryant was involved with the creation of Bratz" (Mattel's Opposition at p.33), and that these documents are far more relevant than documents responsive to Request Nos. 188 and 190.

In its reply, MGA contends that contrary to Mattel's representations, it has not produced non-privileged documents responsive to Request Nos. 172-174. To ensure production, MGA's

Exhibit  7 , P. 220      EXHIBIT  5  PAGE  45

1   motion is granted as to Request Nos. 172-174. Any responsive documents withheld on the basis

2   of a privilege must be identified on a privilege log.

3        Like Request Nos. 172-174, Request Nos. 188 and 190 seek documents that are relevant to

4   MGA's defenses, including the statute of limitations and laches because the documents might

5   establish when Mattel first considered taking legal action against Bryant. That Mattel believes it

6   has produced documents that are more relevant to MGA's and Bryant's defenses (regarding when

7   Mattel became of aware of Bryant's involvement with the creation of Bratz) does not excuse

8   Mattel from complying with Request Nos. 188 and 190. If responsive documents are protected by

9   the attorney-client privilege or work product doctrine, Mattel must identify such documents on a

10  privilege log. MGA's motion is granted as to Request Nos. 188 and 190.

11          **b. Requests seeking documents pertaining to Bryant's work at Mattel, *e.g.*, the terms of his employment, job duties and responsibilities; his work at Mattel, including the projects he worked on, days and hours worked, with time and data entries; phone records; and vacation absence records (Nos. 180-183 and 258)**

14       In Request No. 180, MGA seeks all documents mentioning, referring or relating to Bryant,

15  including but not limited to Bryant's personnel file and all documents on Mattel's Zeus computer

16  system that mention Bryant. In Request No. 181, MGA seeks all documents constituting,

17  evidencing, referring to, or reflecting Bryant's work at Mattel, including the projects he worked

18  on. In Request No. 182, MGA seeks all documents "evidencing the days and hours Bryant

19  worked for Mattel, including all time entries and data on Mattel's 'P2' computer system, and all

20  records reflecting the days and hours Bryant was on vacation or leave of absence." In Request

21  No. 183, MGA seeks all documents "reflecting records of all phone calls Bryant placed and

22  received and all facsimiles Bryant sent and received during his employment at Mattel." In

23  Request No. 258, MGA seeks all documents relating to Bryant's employment including, without

24  limitation, documents reflecting the period and conditions of the employment, the terms of the

25  employment, and his job duties and responsibilities.

26       MGA contends that Request Nos. 180-183 and 258 seek information that is clearly

27  relevant to support or refute Mattel's claims, and that Mattel has improperly refused to produce

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

7

Exhibit  7 , P.  221

EXHIBIT 5 PAGE 40

1    responsive documents based upon an array of objections.  MGA acknowledges, however, that

2    Mattel has produced Bryant's personnel file, telephone records through September 2000 and some

3    additional responsive documents.  Despite this production, MGA continues to seek phone records

4    from October 2000, when Bryant was still working at Mattel.

5         Mattel's Second Supplemental Responses confirm that it will produce documents

6    responsive to all of the Requests in this category except Request No. 180.  MGA's motion is

7    granted as to Request Nos. 181-183 and 258 to establish a deadline for completing production.

8         With respect to Request No. 180, Mattel represents that it has "repeatedly offered to make

9    Zeus backup tapes, and other electronic data, available to MGA on mutually agreeable terms."

10   Mattel's Opposition at p.23.  Further, Mattel contends that pursuant to Rule 26(b)(2)(B),

11   Fed.R.Civ.P., it is not required to search its Zeus file server data and backup tapes because such

12   an endeavor would be unduly burdensome and costly.  Mattel explains that its Zeus system is an

13   immense computer system consisting of 50 terabytes of electronic files that is largely used by

14   Mattel designers and engineers and overwhelmingly consists of graphical files whose content

15   cannot be searched by keywords.  Mattel's Opposition at p.20.  Further, Mattel represents that it

16   does not have the necessary hardware to restore or search the Zeus backup tapes.  Mattel's

17   Opposition at p.25, n. 98.

18        In its reply brief, MGA counters that Mattel has mischaracterized its Zeus system.

19   According to MGA, Mattel's 30(b)(6) witness, Julia Marine, testified that Zeus' directory

20   structure is organized with top-level folders and various levels of subfolders; that individual

21   Mattel employees are each given a home folder and can create subfolders; and that when an

22   employee leaves the company, the folders set up by that employee are not deleted by Mattel's IT

23   department.  MGA's Reply at p.9.  Therefore, MGA believes it is possible to search the Zeus

24   server for responsive documents by simply locating the folders of relevant departments and

25   employees.  Furthermore, MGA suspects that Mattel should be able to conduct a keyword search

26   of file names, even if the contents of the files consist of graphical images.

27        MGA also contends that Mattel has failed to satisfy its burden of showing that a search of

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                                    8

Exhibit 7 , P. 222

EXHIBIT 5 PAGE 47

1    its backup tapes for the Zeus server would be unduly burdensome. Although MGA acknowledges

2    Mattel's representation that it does not have the hardware for searching the backup tapes, MGA

3    contends that Mattel "does not identify any unreasonable cost associated with such a review."

4    MGA's Reply at p.10.

5         Mattel has failed to make the requisite showing that the information on the Zeus system

6    and backup tapes "is not reasonably accessible because of undue burden or cost." Fed.R.Civ.P.

7    26(b)(2)(B). MGA has suggested a few reasonable methods for searching the Zeus system based

8    upon the deposition testimony of Julia Marine. For example, Mattel could search its system for

9    folders of relevant departments and employees. Mattel could apply a keyword search to locate

10   file names for potentially responsive documents.[2] Further, Mattel has not attempted to quantify

11   the burden and expense of obtaining the necessary hardware to restore or search the backup tapes,

12   whether in terms of time, financial costs, labor, or otherwise.[3] Therefore, MGA's motion is

13   granted as to Request No. 180.[4]

14        **c. Documents relating to Bryant's involvement with work on Bratz or for
          MGA, and relating to any activities of Bryant other than his work for Mattel**
15        **(Nos. 186-187, 260)**

16        MGA contends that Request Nos. 186-187 and 260 seek documents relevant to Mattel's

17   claims against Bryant and Bryant's defenses thereto. MGA contends that Mattel has improperly

18

19   _____

20        [2] Indeed, in its supplemental submissions, Mattel clarifies that it has conducted searches for Zeus file
     names by keyword. Supp. Zeller Decl. at ¶3.

21        [3] Rather, the information Mattel has provided suggests that searching the backup tapes is not unduly
22   burdensome. In a declaration filed after the reply brief, counsel for Mattel, Mr. Zeller, represents that "vendors
     retained by Mattel's counsel, as well as other electronic discovery vendors I am familiar with, have the hardware and
     other data needed to read the Zeus backup tapes and in fact can read them." Mattel's Notice of Lodging Regarding
23   Mattel's Opposition to MGA's Motion to Compel, Ex. 2, ¶14. Further, Mr. Zeller states, "[a]s Mattel's 30(b)(6)
     designee Julia Marine also confirmed, one simply needs to buy the tape drives to read these tapes [citation omitted],
24   which Mattel's vendors have done." Id.

25        [4] The parties have a general disagreement over whether Mattel has an obligation to search the Zeus system
     and backup tapes for documents responsive to all of MGA's Requests, not just Request No. 180. See MGA's Reply
26   at pp. 18-20. As explained above, Mattel has failed to carry its burden of proving that searching the Zeus system and
     backup tapes is unduly burdensome or costly. Therefore, to the extent MGA's motion to compel is granted as to
27   other Requests herein, Mattel shall conduct a reasonable search of the Zeus system and backup tapes to locate
     responsive documents.

28

Exhibit _7_ p. _223_

EXHIBIT _5_ PAGE _48_

1  refused to produce any responsive documents based upon an array of boilerplate objections.

2  Nevertheless, MGA acknowledges that Mattel "has produced several documents that appear to be

3  responsive." MGA's Motion at p.13. MGA seeks an order overruling Mattel's objections and

4  compelling Mattel to supplement its responses and produce any remaining responsive documents.

5        Mattel's Second Supplemental Responses confirm that it will produce responsive

6  documents. More specifically, in response to Request Nos. 186-187 and 260, Mattel stated, in

7  pertinent part that "[s]ubject to and without waiving the foregoing general and specific objections,

8  Mattel will produce such responsive, non-privileged documents that are in Mattel's possession,

9  custody or control, if any, that Mattel has been able to locate after a diligent search and reasonable

10  inquiry, to the extent not previously produced." Supp. Zeller Dec., Ex. 4. MGA is entitled to a

11  court order to establish a deadline for production. MGA's motion is granted as to Request Nos.

12  186-187 and 260.

13        **d. Documents in Mattel's possession that were exchanged between Bryant and**
14        **Anne Wang, and between Bryant and MGA (Nos. 270-271)**

15        In Request Nos. 270-271, MGA seeks production of documents in Mattel's possession

16  that were exchanged between Bryant and Anne Wang, and between Bryant and MGA. Mattel's

17  Second Supplemental Responses confirm that it will produce responsive documents. MGA is

18  entitled to a court order to establish a deadline for completing production. MGA's motion is

19  granted as to Request Nos. 270-271.

20        **e. Communications and documents referring to communications with various**
       **specified individuals concerning Bratz, Bryant's work for MGA, or relating to**
21        **this litigation, the facts and circumstances giving rise to it, or Bryant's alleged**
       **misconduct (Request Nos. 224-249)**
22

23        In Request Nos. 224-249, MGA seeks communications with a host of individuals that

24  refer or relate to the Bratz Concept, the First Bratz Dolls or Bryant's work for MGA, or that refer

25  or relate to this litigation, the facts and circumstances giving rise to this litigation, or Bryant's

26  alleged misconduct, and all documents that refer or relate to such communications. For example,

27  Request No. 224 requires production of "[a]ll communications and all documents constituting,

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                              10

Exhibit 8 , P. 224

EXHIBIT 5 PAGE 49

1    mentioning, describing, discussing, referring or relating to all communications with Anna Rhee

2    that refer or relate to the Bratz concept, the First Bratz dolls or Bryant's work for MGA." Zeller

3    Decl., Ex. 8.

4        MGA contends that the requested documents are relevant to Mattel's claims that Bryant

5    converted, used, sold, assigned or transferred property that Mattel supposedly owns. Further,

6    MGA contends that the requested documents are relevant to Bryant's defenses based on the

7    statute of limitations, laches, and waiver because the documents could show when Mattel first

8    became aware of Bryant's relationship with MGA. MGA also contends that these Requests are

9    "self-limiting to subject matters of direct relevance to this litigation." MGA's Reply at p.8.

10       Mattel's Second Supplemental Responses confirm that it will produce responsive

11   documents, with two qualifications. First, Mattel agrees to search for and produce only

12   documents that pertain to matters at issue, and not just because they reference MGA. Mattel's

13   Opposition at p.34. Second, Mattel agrees to produce the communications with the various

14   individuals identified in the Requests, but not all documents referring or relating to all

15   communications. Id.

16       Request Nos. 224-249 seek information relevant to the claims and defenses in the case.

17   They are limited to communications with certain key individuals (Anna Rhee, Margaret Leahy,

18   Margaret Leahy's husband, Victoria O'Connor, Ramona Prince, Lilly Martinez, Ron Longsdorff,

19   Matt Bosquette, Adrienne Fontanella, Tim Kilpin, Sujata Luther, Alan Kaye, and Veronica

20   Marlowe), as well as limited in subject matter. Documents relating to the communications are

21   also relevant to the claims and defenses in the case, and Mattel has failed to establish that the

22   burden of producing responsive documents outweighs their likely benefit under Rule 26(b)(2),

23   Fed.R.Civ.P. MGA's motion is granted as to Request Nos. 224-249.

### f. Hard drives and backup data for all computers used by Bryant while employed by Mattel (Request No. 268)

26       In Request No. 268, MGA seeks "[a]ll hard drives and back-up data, no matter how

27   stored, for all computers used by Bryant while employed by Mattel, to the extent such drives and

28

Exhibit ___7___, P. _225_    EXHIBIT 5 PAGE 50

1   back-up data contain data made or accessed by, sent to or received by Bryant." Supp. Zeller

2   Decl., Ex. 4.

3       Mattel contends that issues regarding Bryant's Mattel computer "have long been settled."

4   Mattel's Opposition at p.16. Mattel explains that Bryant claimed at his deposition that he was

5   "computer illiterate," that he had never created any files on any Mattel computers, and that he did

6   not use them for his design work. Id. Further, Mattel represents that when Bryant requested such

7   hard drives, Mattel told him that it would produce any hard drives for computers used by Bryant

8   while at Mattel that could be located. Id. Mattel asserts that it has yet to identify a computer

9   Bryant has used, and that Bryant and MGA have not offered any meaningful information that

10  would assist Mattel in locating one. Mattel represents that Bryant's computer will be produced if

11  and when it is located.

12      Mattel's Second Supplemental Responses confirm that Mattel will produce Bryant's

13  computer if and when it is located. MGA's motion is granted as to Request No. 268 to ensure

14  Mattel's compliance if and when Bryant's computer is located.

15  2. Documents concerning the agreements that Mattel alleges were breached by Bryant and the
    fiduciary duties of persons employed by Mattel in the same or similar capacity as Bryant

16

17      **a. Documents from 1997 to the present relating to Mattel's form "Employee
    Confidential Information and Inventions Agreement" and "Conflict of
18  Interest Questionnaire," and negotiations with any employee or prospective
    employee concerning those agreements (Nos. 281-282 and 284-285)**

19

20      In Request Nos. 281 and 284, MGA seeks all versions of Mattel's form "Employee

21  Confidential Information and Inventions Agreement" and Mattel's form "Conflict of Interest

22  Questionnaire," and all documents referring or relating to these agreements, including documents

23  related to any negotiations regarding these agreements and Mattel's enforcement of such

24  agreements. In Request Nos. 282 and 285, MGA seeks all documents referring or relating to

25  negotiations regarding these agreements.

26      MGA contends that the documents it seeks are central to Mattel's claim that Bryant

27  breached the two agreements and Bryant's defenses thereto, including Bryant's contention that

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

Exhibit __7__, P. __224__

EXHIBIT 5 PAGE 51

1   the agreements are unenforceable as contracts of adhesion, unconscionable and violate California

2   law. MGA contends that the manner in which Mattel negotiates, interprets, enforces and applies

3   the terms of the two contracts is highly relevant.

4       Mattel represents that it has produced all iterations of the two agreements, including

5   examples of each version of the agreements that Mattel has used since 1995. Mattel, however,

6   objects to Request Nos. 281-282 and 284-285 as overbroad to the extent MGA seeks all

7   documents "mentioning, discussing, describing, referring or relating to" such agreements and any

8   and all documents involving negotiations concerning these agreements. Mattel contends that any

9   benefits of producing these additional documents are far outweighed by the cost of production.

10   Mattel further contends that the production is unjustified because Mattel has already produced a

11   Rule 30(b)(6) witness to testify regarding the two agreements. According to Mattel, MGA and

12   Bryant asked Mattel's designee how often the agreements changed, the process, if any, by which

13   an employee negotiated the terms of an agreement, and whether signing the agreement was a

14   condition of employment. In addition, Mattel represents that both MGA and Bryant have

15   questioned several designers and other employees about the circumstances under which each

16   signed his or her agreements and whether or not each understood his or her agreements.

17       In its reply brief, MGA represents that it offered to narrow Request Nos. 281-282 and 284-

18   285 during the meet and confer to the following categories of documents:

19       *All documents relating to any form "Employee Confidential Information and Inventions

20       Agreement" or "Conflict of Interest Questionnaire" that Mattel alleges to exist between
    Mattel and Bryant;

21       *All documents relating to any discussions or negotiations between Mattel and anyone

22       regarding the terms and conditions of any version of either of those agreements; and

23       *All documents relating to any instance in which Mattel has taken any action whatsoever
    to enforce against anyone the same terms of any such agreement that Mattel alleges
    Bryant violated.

24

25   MGA's Reply at p. 16. Apparently, MGA's motion to compel is directed to only the three subsets

26   of responsive documents described above, and not the Requests as originally written. As

27   narrowed, Request Nos. 281-282 and 284-285 seek documents relevant to the claims and defenses

28

Exhibit   7  , P.  227

EXHIBIT  5  PAGE  52

1    in the case, which Mattel implicitly conceded by producing various iterations of the two

2    agreements. As narrowed, the Requests are not overbroad or unduly burdensome because they no

3    longer call for production of documents "mentioning, discussing, describing, referring or relating

4    to" the two agreements and any and all documents involving negotiations concerning these

5    agreements. That MGA has already deposed a few witnesses regarding the two agreements does

6    not preclude MGA from obtaining documentary evidence on the same subject. Therefore,

7    MGA's motion is granted as to Request Nos. 281-282 and 284-285, as narrowed by MGA.

8          **b. Documents created after January 4, 1999, concerning the activities of any**
           **Mattel employee in connection with the creation of any property, doll or toy**

9            **for anyone other than Mattel; Mattel's employment policies/contracts**
           **governing the extent to which a part-time or temporary employee may work**

10         **for himself or other companies while also employed by Mattel (Nos. 262-267)**

11    In Request Nos. 262-263, MGA seeks all documents created after January 4, 1999 that

12    evidence, relate or refer to any activities of any current or former Mattel employee performed,

13    while such person was employed by Mattel, in connection with the conception, creation, design or

14    development of any intellectual property, doll, or toy done for or at the request of any company,

15    entity, or person other than Mattel. In Request Nos. 264-265, MGA seeks all documents that

16    constitute, describe, mention, refer or relate to Mattel's policy regarding part-time or temporary

17    employment at Mattel. In Request Nos. 266-267, MGA seeks all documents that constitute,

18    describe, mention, refer, or relate to Mattel's policy regarding part-time or temporary employment

19    at Mattel including, without limitation, all documents, agreements, and contracts that describe,

20    discuss, govern, control, regulate, or limit how and to what extent a person employed part-time at

21    Mattel is allowed, or not allowed, to work for himself or herself or other companies or entities,

22    including MGA, while employed by Mattel.

23      MGA contends that Bryant worked for Mattel on a part-time basis in 1998, and that

24    Request Nos. 262-267 seek relevant documents concerning Mattel's employment policies for

25    part-time and temporary employees, including any restrictions on their abilities to work elsewhere

26    while employed by Mattel. MGA contends that the requested documents are directly relevant to

27    Mattel's breach of contract claims against Bryant and Bryant's defenses thereto, and therefore all

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

14

Exhibit _7_, P. _228_   EXHIBIT S PAGE 53

1    responsive documents should be produced.

2          Mattel represents that it has produced various iterations of agreements and policies applied

3    to part-time and temporary Mattel employees.  Mattel contends, however, that each of the

4    Requests in this category is overbroad to the extent they seek any additional documents.  For

5    example, Mattel contends that the Requests are broad enough to encompass documents

6    concerning subjects such as health benefits and vacation leave that have no conceivable bearing

7    on the case.  Further, Mattel contends that the burden of searching for all responsive documents is

8    outweighed by the marginal benefits of the responsive documents.  In fact, Mattel contends that

9    the requested documents are not relevant at all because Bryant claims to have conceived Bratz

10   after he was a part-time employee.  Mattel's Opposition at p.30.

11         Request Nos. 262 and 263 are overbroad.  As written, these requests would potentially

12   require Mattel to review documents relating to all of its many thousands of current and former

13   employees in order to find evidence that an employee conceived, created, designed or developed

14   any intellectual property or doll or toy for at the request of any company or person other than

15   Mattel.  Even if Mattel succeeded in finding such documents, the burden and expense of

16   conducting such a search outweigh the likely benefit of the documents.  Therefore, MGA's

17   motion is denied as to Request Nos. 262 and 263.

18         In its reply brief, MGA agrees to narrow the remaining Requests in this category as

19   follows:

20         Request No. 264:  DOCUMENTS sufficient to identify all iterations of MATTEL'S
           policy regarding part-time employment at MATTEL.

21

22         Request No. 265:  DOCUMENTS sufficient to identify all iterations of MATTEL'S
           policy regarding temporary employment at MATTEL.

23         Request No. 266:  All DOCUMENTS, including agreements and contracts, that describe,
           discuss, govern, control, regulate or limit how and to what extent a person employed part-
24         time at MATTEL is allowed, or not allowed, to work for him or herself or other
           companies or entities, including MGA, while employed by MATTEL.

25

26         Request No. 267:  All DOCUMENTS, including agreements and contracts, that describe,
           discuss, govern, control, regulate or limit how and to what extent a person employed part-
27         time at MATTEL is allowed, or not allowed, to work for him or herself or other
           companies or entities, including MGA, while employed by MATTEL.

28

1   MGA's Reply brief at p. 15. As rewritten, these requests target documents that are relevant to

2   Mattel's breach of contract claims against Bryant and Bryant's defenses thereto. MGA

3   anticipates that Mattel could argue at trial that Bryant conceived of Bratz while he was a part-time

4   employee. The documents MGA now seeks through its narrowed requests are relevant to

5   establish Mattel's policies and contracts for part-time and temporary employment. Nor are the

6   Requests unduly burdensome, taking into account the needs of the case, the amount in

7   controversy, the parties' resources, the importance of the issues at stake in the litigation, and the

8   importance of the requested documents in resolving the issues. MGA's motion is granted as to

9   Request Nos. 264-267 as rewritten in MGA's reply brief.

10   **3. Documents concerning Bratz and the purported Mattel property that forms the basis of its**

11   **claims**

12          **a. Documents concerning Bratz including any documents relating to the**
13          **similarities or differences between Bratz and any Mattel property or any**
14          **property created by a Mattel employee that it contends served as a source or**
               **origin for any Bratz concept or product (Nos. 259, 261, and 269)**

15

16          In Request No. 259, MGA seeks production of all documents that evidence, describe,

17   mention, refer, or relate to the similarity of any artwork created by any Mattel employee,

18   including but not limited to Bryant, prior to October 20, 2000, to Bratz. In Request No. 261,

19   MGA seeks all documents created after January 4, 1999 that evidence, relate or refer to any

20   activities of any current or former Mattel employee performed in connection with the conception,

21   creation, design, or development of Bratz or Bratz intellectual property. In Request No. 269,

22   MGA seeks all documents that constitute, evidence, describe, depict, refer or relate to any artwork

23   or other work product by Mattel that it contends Bryant used in connection with his creation of

24   anything for MGA, including without limitation, Bratz or Bratz intellectual property.

25          MGA contends that Request Nos. 259, 261, and 269 seek documents that are directly

26   relevant to Mattel's claims that Bryant converted, used, sold, assigned, or transferred property that

27   Mattel claims it owns; damages and causation; and Bryant's defenses, including those based on

28

Exhibit _7_, P. _230_

EXHIBIT 5 PAGE 55

1   statute of limitations, laches, waiver, and unclean hands.

2       Mattel's Second Supplemental Responses confirm that it will produce responsive

3   documents.  More specifically, Mattel represents that it will produce the "prior art that lead to

4   Bratz." Mattel's Opposition at p.36.  Mattel objects, however, to producing documents that do

5   not constitute "prior art," such as marketing, sales planning, engineering, electronics, and

6   programming of the voices of Mattel's Diva Starz line.

7       In its reply brief, MGA confirms that it is only seeking documents relating to the original

8   artwork or work product that Mattel claims Bryant copied, and is not seeking all documents

9   relating to the Diva Starz line.  With this clarification, MGA's motion is granted as to Request

10   Nos. 259, 261, and 269.

11         **b. Documents discussing or mentioning Isaac Larian, Paula Treantafelles, or Mercedeh Ward, authored between June 2000 and October 2001 that**

12         **concern, support, or refute Mattel's contentions in this litigation (Nos. 44-46)**

13       In Request Nos. 44-46, MGA seeks all documents discussing or mentioning Isaac Larian,

14   Paula Treantafelles, or Mercedeh Ward authored between June 2000 and October 2001.  Mr.

15   Larian is the President and CEO of MGA, and Ms. Treantafelles and Ms. Ward are former Mattel

16   employees who went to work for MGA and later helped develop the Bratz line.  During the meet

17   and confer process, MGA agreed to limit Request Nos. 44-46 to documents that "concern, support

18   or refute Mattel's contentions in this litigation."

19       MGA contends that the requested documents are, at the very least, relevant to MGA's

20   statute of limitations and laches defenses.  Further, MGA contends that Request Nos. 44-46 are

21   limited in scope to only documents authored between June 2000 and October 2001 and

22   concerning Mattel's contentions in this litigation.  MGA therefore seeks an order compelling

23   Mattel to supplement its responses and produce responsive documents.

24       Mattel acknowledges that MGA offered to limit Request Nos. 44-46 to only documents

25   related to the current litigation, but construes MGA's current motion to compel as seeking

26   compliance with the Requests as originally written.  Mattel contends that Request Nos. 44-46, as

27   originally written, are overbroad because there are no limitations on subject matter.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

17

Exhibit _7_, P. _231_

EXHIBIT _5_ PAGE _56_

1   MGA's motion papers make clear that it is not seeking compliance with Request Nos. 44-

2   46 as originally written. Instead, MGA stands by its offer during the meet and confer process to

3   limit the Requests to documents that "concern, support or refute Mattel's contentions in this

4   litigation." MGA's Motion at p. 19. As narrowed by MGA, Request Nos. 44-46 seek documents

5   relevant to the claims and defenses in the case and are limited in subject matter as well as in

6   temporal scope. MGA's motion is granted as to Request Nos. 44-46.

7

8   **4. Documents concerning specific allegations set forth in Mattel's complaint and demands for
    related documents**

9

10          **a. Documents supporting, refuting or evidencing specific allegations set forth
            in Mattel's complaint (Nos. 296, 302-303, 306-307, and 329-330)**

11

12          In these Requests, MGA seeks documents supporting, refuting, or evidencing specific

13   allegations in Mattel's complaint, including, among other things, documents related to (a)

14   Mattel's claims that the Employment Agreement and Conflict Questionnaire are valid,

15   enforceable contracts; (b) Mattel's allegations of damages and harm; and (c) Mattel's allegation

16   that Bryant "used and diverted" Mattel resources and opportunities. MGA also seeks documents

17   depicting the intellectual property allegedly owned by Mattel and relating to ownership of that

18   property.

19          Mattel's Second Supplemental Responses confirm that it agrees to produce responsive,

20   non-privileged documents. MGA's motion is granted as to Request Nos. 296, 302-303, 306-307,

21   329-330.

22          **b. Documents evidencing whether persons who are or were employed by
            Mattel in the same or similar capacity as Bryant are or were subject to the
            same duties and responsibilities that Bryant was allegedly subject to, as
            alleged in Mattel's complaint (Nos. 309, 311, 313, 315, 317, 320, 323)**

23

24

25          In these Requests, MGA seeks all documents evidencing that persons who are or were

26   employed by Mattel in the same or similar capacity as Bryant: hold or held positions of trust and

27   confidence with Mattel (No. 309); had or have access to Mattel's proprietary and confidential

28

Exhibit 7, P. 232

EXHIBIT 5 PAGE 57

1   information (No. 311); were or are entrusted with Mattel's proprietary and confidential

2   information (No. 313); supervised or supervise the work of others (No. 315); exercised or

3   exercise discretion in their job assignments and duties (No. 317); worked or work independently

4   in their job assignments and duties (No. 320); and represented or represent Mattel in its dealings

5   with third parties (No. 323).

6         MGA contends that these Requests are directly relevant to Mattel's allegations in the

7   complaint that Bryant held a position of trust, had access to and was entrusted with Mattel's

8   proprietary and confidential information, supervised the work of others, exercised discretion and

9   worked independently for many of his job assignments and duties, and represented Mattel in its

10  dealings with third parties.  Further, MGA contends that documents pertaining to Mattel's

11  employees other than Bryant are likely to lead to admissible evidence relating to whether Mattel

12  ordinarily views employees in Bryant's position as fiduciaries.

13        Mattel represents that it has already agreed to produce responsive documents insofar as

14  Bryant is concerned.  Mattel, however, objects to the Requests as overbroad and unduly

15  burdensome to the extent they require production of documents pertaining to other persons who

16  are or were employed "in the same or similar capacity as Bryant," which Mattel interprets to

17  mean all of its "designers."  Mattel represents that in El Segundo, it currently employs over 320

18  individuals for the Barbie line alone, not including former employees or designers on other dolls

19  or toys.  Given the size of Mattel's work force, Mattel contends that the burden of production far

20  outweighs any marginal relevance of the responsive documents.

21        In its reply brief, MGA contends that Mattel's objections are based upon a strained

22  interpretation of the phrase "same or similar capacity as Bryant."  In MGA's view, Bryant was a

23  "low-level, salaried employee" at Mattel.  MGA's Reply at p.17.  MGA, however, does not offer

24  an alternative definition for persons employed in the "same or similar capacity as Bryant,"

25  arguing instead that only Mattel is capable of identifying a narrower group of employees.

26        MGA's motion is denied as to this last category of Requests.  The Requests are overbroad

27  and MGA has not offered to narrow the scope of the Requests to a reasonable number of Mattel

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                          19

Exhibit  7 , P.  233

EXHIBIT 5 PAGE 58

1  employees.

## V. CONCLUSION

For the reasons set forth above, it is hereby ordered as follows:

1.  Mattel's objections, except as to privilege, are overruled.

2.  Mattel shall produce all non-privileged responsive documents, to the extent they have not already been produced, for the following Requests: Nos. 44-46 (as narrowed by MGA), 172-174, 180-183, 186-188, 190, 224-249, 258-261, 264-267 (as narrowed by MGA), 268-271, 281-282 (as narrowed by MGA), 284-285 (as narrowed by MGA), 296, 302-303, 306-307, and 329-330. If no additional non-privileged responsive documents exist, Mattel shall provide such confirmation in writing as to each request.

3.  Mattel shall conduct a reasonable search for documents responsive to the Requests identified above, including a search for responsive documents in the Zeus server and back-up tapes.[5]

4.  Mattel shall complete its production of all non-privileged responsive documents in accordance with this Order no later than September 28, 2007.

5.  MGA's motion to compel is denied as to Request Nos. 262-263, 309, 311, 313, 315, 317, 320 and 323.

6.  MGA's request for sanctions is denied.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, MGA shall file this Order with the Clerk of Court forthwith.

Dated: September 12, 2007

_Edward A. Infante_

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

---

[5]  The parties shall further meet and confer to establish parameters for conducting a reasonable search of the Zeus system and backup tapes.

Exhibit 7, P. 234    EXHIBIT 5 PAGE 59

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 12, 2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION TO COMPEL MATTEL TO SUPPLEMENT RESPONSES AND PRODUCE DOCUMENTS RESPONSIVE TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS; DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 12, 2007, at San Francisco, California.

_Sandra Chan_
Sandra Chan

Exhibit ___7___, P. _235_

EXHIBIT _5_ PAGE _60_

**Exhibit 6**

1 | THOMAS J. NOLAN (Bar No. 066992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 | 300 South Grand Avenue
Los Angeles, California 90071-3144
3 | Telephone:  (213) 687-5000
Facsimile:   (213) 687-5600
4 | E-mail:    tnolan@skadden.com

5

6 | KENNETH A. PLEVAN (Admitted *Pro Hac Vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Times Square
7 | New York, NY  10036
Telephone:  (212) 735-3000
8 | Facsimile:   (212) 735-2000
E-mail:       kplevan@skadden.com

9

Attorneys for Counter-Defendants,
10 | MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
(HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

11

12 | **UNITED STATES DISTRICT COURT**

13 | **CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

14 | CARTER BRYANT, an individual ) CASE NO. CV 04-9049 SGL (RNBx)

15 |                         Plaintiff,   ) Consolidated with Case No. 04-9059
) and Case No. 05-2727
16 |       v.                              )
) **MGA'S SECOND SET OF**
17 | MATTEL, INC., a Delaware         ) **INTERROGATORIES TO**
corporation                        ) **MATTEL, INC.**
18 |                                     )
                        Defendant.  )
19 |                                     )
20 |                                     ) Honorable Stephen G. Larson
) Courtroom 1
21 |                                     )
22

23

24

25

26

27

28 | EXHIBIT _l&_ PAGE _l&l_

12-4

MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC. | NO. CV 04-9049 SGL (RNBx)

1  Consolidated with MATTEL, INC. v.
2  BRYANT and MGA
   ENTERTAINMENT, INC. v.
3  MATTEL, INC.

4

5  **PROPOUNDING PARTY:**      **MGA ENTERTAINMENT, INC.**

6  **RESPONDING PARTY:**       **MATTEL, INC.**

7  **SET NUMBER:**             **SECOND**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                              EXHIBIT 6 PAGE 162

28

MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.              NO. CV 04-9049 SGL (RNBx)

1   MGA Entertainment Inc. ("MGA"), hereby requests that Plaintiff, Mattel Inc.

2   ("Mattel") respond to the following Second Set of Interrogatories separately, fully,

3   and under oath, pursuant to Rule 33 of the Federal Rules of Civil Procedure, within

4   (30) days of service, in accordance with the definitions and instructions set forth

5   herein.

6   **DEFINITIONS**

7   1.   "AFFILIATES" means any and all corporations, proprietorships, d/b/a's,

8   partnerships, joint ventures and business entities of any kind that, directly or

9   indirectly, in whole or in part, own or control, are under common ownership or

10   control with, or are owned or controlled by a PERSON, party or entity, including

11   without limitation each parent, subsidiary and joint venture of such person, party or

12   entity.

13   2.   "ALLEGED COPYRIGHTED WORKS" means the copyrighted works

14   alleged in paragraph 83 of MATTEL'S Second Amended Answer in Case No. 05-

15   2727 and Counterclaim in THIS ACTION.

16   3.   "ALLEGED TRADE SECRETS" means the trade secret material

17   alleged in paragraphs 107 thru 111 of MATTEL'S Second Amended Answer in Case

18   No. 05-2727 and Counterclaim in THIS ACTION.

19   4.   "BARBIE" means and refers to each image, character, logo, doll, toy,

20   styling head, plush toy, play set, accessory, product, packaging or any other thing

21   that is or has ever been manufactured, marketed or sold by YOU, or others under

22   licensed by YOU, as part of a line of goods or merchandise commonly known as, or

23   sold and marketed under the name "Barbie."

24   5.   "BRYANT" means Carter Bryant individually and does not include his

25   agents, representatives, attorneys, experts or any other PERSON acting on his behalf,

26   pursuant to his authority or subject to his control.

27   6.   "BRATZ" means and refers to each image, character, logo, doll, fashion

28   doll, plush toy, styling head, toy, accessory, product, packaging, theme, or other

2

EXHIBIT _10_ PAGE _63_

1  thing or matter that is or has ever been manufactured, marketed or sold by MGA, or
2  others under license, as part of a line of goods or merchandise commonly known as,
3  or sold and marketed under the "Bratz" trademark or trade dress.

4      7.     "COLLECT," "COLLECTED" or "COLLECTION" with reference to
5  DOCUMENTS means to collect, review, produce, request, seek, look for, search for,
6  analyze or in any other way collect or review or attempt to collect or review such
7  DOCUMENTS in connection with YOUR search for, review of and/or production of
8  DOCUMENTS in this ACTION."

9      8.     The term "CONFLICT OF INTEREST QUESTIONNAIRE" refers to
10 Mattel's form of employment agreement concerning, inter alia, relations, if any,
11 between Mattel's employees, suppliers, and/or competition, whether known by the
12 title "Conflict of Interest Questionnaire" or any other title, including without
13 limitation the form of Conflict of Interest Questionnaire entitled "Conflict of Interest
14 Questionnaire" executed by Carter Bryant on or about January 4, 1999.

15     9.     "CONTESTED MATTEL PRODUCTS" means:
16     (a) each female fashion doll and its packaging that is or has ever been
17 manufactured, marketed or sold by MATTEL, or others under license by MATTEL,
18 as part of a line of goods or merchandise commonly known as, or sold and marketed
19 under the "My Scene" trademark or trade dress;
20     (b) each image, character, logo, fashion doll, doll, toy, accessory, product,
21 packaging or other thing or matter that is or has ever been manufactured, marketed or
22 sold by MATTEL, or others under license by MATTEL, as part of a line of goods or
23 merchandise commonly known as, or sold and marketed under the "My Scene"
24 "Chillin' Out!" trademark or trade dress, the "My Scene" "Night on the Town"
25 trademark or trade dress, the "My Scene" "My Bling Bling" trademark or trade
26 dress, and/or the "My Scene" "Jammin' in Jamaica" trademark or trade dress;
27     (c) each plush toy and its packaging that is or has ever been manufactured,
28 marketed or sold by MATTEL, or others under license by MATTEL, as part of a line

3

EXHIBIT __ PAGE __

1  of goods or merchandise commonly known as, or sold and marketed under the "My

2  Scene" trademark or trade dress;

3          (d)  each styling head that is or has ever been manufactured, marketed or sold

4  by MATTEL, or others under license by MATTEL, as part of a line of goods or

5  merchandise commonly known as, or sold and marketed under the "My Scene"

6  trademark or trade dress;

7          (e) the "My Scene Sound Lounge" play set and packaging;

8          (f) each image, character, logo, doll, toy, accessory, product, packaging or any

9  other thing that is or has ever been manufactured, marketed or sold by MATTEL, or

10  others under license by MATTEL, as part of a line of goods or merchandise

11  commonly known as, or sold and marketed under the name "Little Mommy";

12          (g) each image, character, logo, doll, toy, accessory, product, packaging or any

13  other thing that is or has ever been manufactured, marketed or sold by YOU, or

14  others under licensed by YOU, as part of a line of goods or merchandise commonly

15  known as, or sold and marketed under the name "Wee 3 Friends"; and

16          (h) each image, character, logo, toy, accessory, product, packaging or any

17  other thing that is or has ever been manufactured, marketed or sold by MATTEL, or

18  others under license by MATTEL, as part of a line of goods or merchandise

19  commonly known as, or sold and marketed under the name "AcceleRacerS."

20          10.   "COUNTERCLAIMS" means Mattel, Inc.'s Second Amended Answer

21  and Counterclaims for: 1. Copyright Infringement; 2. Violation of the Racketeer

22  Influenced and Corrupt Organizations Act; 3. Conspiracy to Violate the Racketeer

23  Influenced and Corrupt Organizations Act; 4. Misappropriation of Trade Secrets; 5.

24  Breach of Contract; 6. Intentional Interference with Contract; 7. Breach of Fiduciary

25  Duty; 8. Aiding and Abetting Breach of Fiduciary Duty; 9. Breach of Duty of

26  Loyalty; 10. Aiding and Abetting Breach of Duty of Loyalty; 11. Conversion; 12.

27  Unfair Competition; and 13. Declaratory Relief filed July 12, 2007, in MGA v.

28  Mattel, Inc., CV 05-02727, including any amendment or supplement thereto.

4

EXHIBIT ⑥ PAGE ⑥5

11.    "DESCRIBE THE SALES AND PROFITS" means to state fully and separately for each MATTEL PRODUCT by year (a) the number of units of each such MATTEL PRODUCT sold by YOU or YOUR licensees, (b) the gross and net revenue received by YOU from such sales of each such MATTEL PRODUCT, (c) all costs YOU have incurred in connection with each such MATTEL PRODUCT, including but not limited to YOUR cost of goods sold, and (d) YOUR gross and net profits from each such MATTEL PRODUCT.

12.    "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blue prints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, development, inventions, or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, which in whole or in part.

13.    "DIGITAL INFORMATION" means any information created or stored digitally, including but not limited to electronically, magnetically, or optically.

14.    "DOCUMENT[S]" incorporates the full meaning of Federal Rule of Civil Procedure 34, and shall be construed in the broadest sense to mean any and all DIGITAL INFORMATION, STORAGE DEVICE, writings, tangible things and property, of any kind, that are now or that have been in YOUR actual or constructive possession, custody or control, including, but not limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed, punched, copied, recorded, transcribed, graphic or photographic matter of any kind or nature, in, through, or from which information may be embodied, translated, conveyed or stored, whether an original, a draft or copy, however produced or reproduced, whether sent or received or neither, including, but not limited to, notes, memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports, inter- and intra-office

EXHIBIT _U_ PAGE _ulo_

1 | COMMUNICATIONS, work papers, work sheets, work records, ledgers, graphs,
2 | indexes, advertisements, brochures, price lists, cost sheets, estimating sheets, bills,
3 | bills of lading, bids, time cards, receipts, purchase orders, telephone records,
4 | telegrams, telexes, literature, invoices, contracts, purchase orders, estimates,
5 | recordings, transcriptions of recordings, records, books, pamphlets, periodicals,
6 | publications, papers, tapes, DVDs, video CDs, video, audio and digital recordings,
7 | television commercials, story boards, website or other spot advertisements, movies,
8 | movie trailers, prototypes, products, diaries, calendars, charts, drawings, sketches,
9 | messages, photographs and data contained in or accessible through any electronic
10 | data processing system, including, but not limited to, computer databases, data sheets,
11 | data processing cards, computer files and tapes, computer disks, CD-ROMs,
12 | computer metadata, microfilm, microfiche, electronic mail, website and web pages
13 | and transcriptions thereof and all other memorializations of any conversations,
14 | meetings and conference, by telephone or otherwise.  The term DOCUMENT also
15 | means every copy of a DOCUMENT, where such copy is not an identical duplicate
16 | of the original, whether because of deletions, underlinings, showing of blind copies,
17 | initialing, signatures, receipt stamps, comments, notations, differences in stationery
18 | or any other difference or modification of any kind.

19 |     15.    The term "EMPLOYEE INVENTIONS AGREEMENT" refers to
20 | Mattel's form of employment agreement concerning, inter alia, (i) ownership of
21 | inventions, and (ii)(a) trade secrets and/or (iii) conflicts, whether known by the title
22 | "Employee Confidential Information and Inventions Agreement" or any other title,
23 | including without limitation the form of Employee Inventions Agreement entitled
24 | "Employee Confidential Information and Inventions Agreement" executed by Carter
25 | Bryant on or about January 4, 1999.

26 |     16.    "IDENTIFY," "IDENTITY," or "IDENTIFYING" mean the following:
27 |        •    With reference to an *individual*, means to state fully and
28 | separately for each, such individual's full name, any known business title, current or

6

EXHIBIT _U_ PAGE _67_