1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2  johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3  (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4  (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5  (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Plaintiff Mattel, Inc.

9  UNITED STATES DISTRICT COURT

10  CENTRAL DISTRICT OF CALIFORNIA

11  EASTERN DIVISION

| | |
|---|---|
| 12   CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| 13        Plaintiff, | Consolidated with Case Nos. CV 04-9059 and CV 05-2727 |
| 14     vs. | |
| 15   MATTEL, INC., a Delaware corporation, | MATTEL, INC.'S FIFTH SET OF INTERROGATORIES |
| 16        Defendant. | Discovery Cut-off:  January 14, 2008<br>Pre-trial Conference:  April 7, 2008<br>Trial Date:  April 29, 2008 |
| 17 | |
| 18   AND CONSOLIDATED ACTIONS | Discovery Cutoff:  March 3, 2008<br>Final Pretrial Conf.:  June 2, 2008 |
| 19 | Trial Date:  July 1, 2008 |

20

21

22  PROPOUNDING PARTY:  Mattel, Inc.

23  RESPONDING PARTIES:  MGA Entertainment, Inc., Isaac Larian, Carter

24  Bryant, MGA Entertainment (HK) Limited, MGAE

25  de Mexico S.R.L. de C.V., and Carlos Gustavo

26  Machado Gomez

27  SET NO.:  FIVE

28

07209/2259967.1

*10-19*

EXHIBIT 9 PAGE 108

1   Pursuant to <u>Federal Rule of Civil Procedure</u> 33, plaintiff Mattel, Inc.
2   ("Mattel") hereby requests that MGA Entertainment, Inc., Isaac Larian, Carter Bryant,
3   MGA Entertainment (HK) Limited, MGAE de Mexico S.R.L. de C.V., and Carlos
4   Gustavo Machado Gomez (collectively, "the Responding Parties") individually answer
5   the following Interrogatories separately and fully, in writing and under oath, within 30
6   days after service hereof.  The Responding Parties shall be obligated to supplement
7   their responses to the Interrogatories at such times and to the extent required by the
8   <u>Federal Rules of Civil Procedure.</u>
9
10   <u>**Definitions**</u>
11
12   1.   "YOU" and "YOUR" mean each of the Responding Parties.
13   2.   "MGA" means MGA Entertainment, Inc., any of its current or
14   former employees, officers, directors, agents, representatives, attorneys, experts,
15   divisions, AFFILIATES (including without limitation defendants MGA Entertainment
16   (HK) Limited, MGAE de Mexico S.R.L. de C.V.), predecessors-in-interest and
17   successors-in-interest, and any other PERSON acting on its behalf, pursuant to its
18   authority or subject to its control.  Without limiting the foregoing, "MGA" includes the
19   entities known as ABC International Traders or ABC International Traders, Inc.  For
20   purposes of the these Interrogatories, "MGA" does not include BRYANT.
21   3.   "MATTEL" means Mattel, Inc., its current employees, officers,
22   directors, agents, representatives, attorneys, parents, subsidiaries, divisions,
23   AFFILIATES, predecessors-in-interest and successors-in-interest, and any other
24   PERSON acting on its behalf, pursuant to its authority or subject to its control.
25   4.   "O'MELVENY" means the law firm of O'Melveny & Myers, LLP,
26   and any of its current or former attorneys, partners, associates, employees, agents,
27   representatives, predecessors-in-interest and successors-in-interest, and any other
28   PERSON acting on its behalf, pursuant to its authority or subject to its control.

EXHIBIT 9  PAGE 109

1      5.     "CHRISTENSEN" means the law firm of Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP and any of its current or former attorneys, partners, associates, employees, agents, representatives, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

6.     "BRYANT" means Carter Bryant individually, and his current or former employees, agents, representatives, attorneys, accountants, experts, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

7.     "LARIAN" means Isaac Larian individually, and his current or former employees, agents, representatives, attorneys, accountants, experts, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

8.     "MACHADO" means Carlos Gustavo Machado Gomez, and his current or former employees, agents, representatives, attorneys, accountants, experts, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

9.     "AFFILIATES" means any and all corporations, proprietorships, d/b/a's, partnerships, joint ventures and business entities of any kind that, directly or indirectly, in whole or in part, own or control, are under common ownership or control with, or are owned or controlled by a PERSON, party or entity, including without limitation each parent, subsidiary and joint venture of such PERSON, party or entity.

10.     "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

EXHIBIT  9  PAGE  110

1    11.    "BRATZ" means any project, product, doll or DESIGN ever known
2  by that name (whether in whole or in part and regardless of what such project, product
3  or doll is or has been also, previously or subsequently called) and any product, doll or
4  DESIGN or any portion thereof that is now or has ever been known as, or sold or
5  marketed under, the name or term "Bratz" (whether in whole or in part and regardless
6  of what such product, doll or DESIGN or portion thereof is or has been also, previously
7  or subsequently called) or that is now or has ever been sold or marketed as part of the
8  "Bratz" line, and each version or iteration of such product, doll or DESIGN or any
9  portion thereof.  As used herein, "product, doll or DESIGN or any portion thereof" also
10  includes without limitation any names, fashions, accessories, artwork, packaging or any
11  other works, materials, matters or items included or associated therewith.  Without
12  limiting the generality of the foregoing, and contrary to MGA's recent assertions in
13  connection with other Mattel discovery requests, the term "BRATZ" does not and shall
14  not require that there be a doll existing at the time of the event, incident or occurrence
15  that is the subject of, or otherwise relevant or responsive to, the Interrogatories.

16    12.    "DESIGN" or "DESIGNS" means any and all representations,
17  whether two-dimensional or three-dimensional, and whether in tangible, digital,
18  electronic or other form, including but not limited to all works, designs, artwork,
19  sketches, drawings, illustrations, representations, depictions, blueprints, schematics,
20  diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to
21  practice, developments, inventions and/or improvements, as well as all other items,
22  things and DOCUMENTS in which any of the foregoing are or have been
23  expressed, embodied, contained, fixed or reflected in any manner, whether in whole
24  or in part.

25    13.    "DOCUMENT" or "DOCUMENTS" means all "writings" and
26  "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil
27  Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited
28  to, all writings and records of every type and description including, but not limited to,

07209/2259967.1

-4-

EXHIBIT 9 PAGE 111

1  contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail
2  ("e-mail"), records of telephone conversations, handwritten and typewritten notes of
3  any kind, statements, reports, minutes, recordings, transcripts and summaries of
4  meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes,
5  discs, printouts and records of all types, studies, instruction manuals, policy manuals
6  and statements, books, pamphlets, invoices, canceled checks and every other device or
7  medium by which or through which information of any type is transmitted, recorded or
8  preserved.  Without any limitation on the foregoing, the term "DOCUMENT" shall
9  include all copies that differ in any respect from the original or other versions of the
10  DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or
11  originals containing initials, comments, notations, insertions, corrections, marginal
12  notes, amendments or any other variation of any kind.

13      14.    "COMMUNICATION" or "COMMUNICATIONS" means and
14  includes any disclosure, transfer or exchange of information between two or more
15  PERSONS, whether orally or in writing, including without limitation, any conversation
16  or discussion by means of meeting, letter, telephone, note, memorandum, telegraph,
17  telex, telecopier, electronic mail, or any other electronic or other medium, including
18  without limitation in written, audio or video form.

19      15.    "REFER OR RELATE TO" a given subject matter means relate to,
20  refer to, constitute, contain, embody, depict, incorporate, reflect, evidence, identify,
21  state, deal with, comment on, respond to, describe, analyze, support, refute, contradict,
22  or in any way pertain to that subject matter, either directly or indirectly.

23      16.    "DIGITAL INFORMATION" means any information created or
24  stored digitally, including but not limited to electronically, magnetically or optically.

25      17.    "STORAGE DEVICE" means any computer hard drive,
26  memory, USB device, tape, storage array or any other device or medium that allows
27  a user, whether permanently, temporarily or otherwise, to create, generate, transmit,
28  copy, retain, store or maintain DIGITAL INFORMATION.

EXHIBIT 9 PAGE 112

18.   "SOURCE OF INFORMATION" means any medium containing DOCUMENTS or other information, whether in paper, electronic or other form, including but not limited to any STORAGE DEVICE, file, file cabinet or other any other source of information or DOCUMENTS.

19.   "COLLECT," "COLLECTED" or "COLLECTION," with reference to DOCUMENTS, means to collect, review, produce, request, seek, look for, search for, analyze or in any other way collect or review or attempt to collect or review such DOCUMENTS in connection with YOUR search for, review of and/or production of DOCUMENTS in this ACTION.

20.   "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-9059 SGL (RNBx), filed by Mattel on April 27, 2004, and the cases consolidated therewith.

21.   "IDENTIFY" or "IDENTITY" means the following:

(a)   with reference to an individual or individuals, means to state, fully and separately as to each, such individual's full name, any known business title, current or last known business affiliation, current or last known residential address, current or last known business address, current or last known relationship to MGA, and current or last known telephone number.

(b)   with reference to an entity or entities, means to state, fully and separately as to each, such entity's full name, state (or country) of incorporation or organization, present or last known address, and present or last known telephone number.

(c)   with reference to a SOURCE OF INFORMATION, means to describe and state, fully and separately as to each, the SOURCE OF INFORMATION so as to distinctly identify each such SOURCE OF INFORMATION and differentiate each such SOURCE OF INFORMATION from all other SOURCES OF INFORMATION, including without limitation by stating its nature (e.g., USB drive, computer hard drive, file cabinet, etc.), and any unique identifier information

MATTEL'S FIFTH SET OF INTERROGATORIES

EXHIBIT  9  PAGE 113

1  (such as hard drive serial number); the physical location(s), including full address

2  information and full identifying computer network drive information if applicable, of

3  each such SOURCE OF INFORMATION (as of the time of YOUR COLLECTION of

4  DOCUMENTS from the SOURCE OF INFORMATION, regardless of whether such

5  DOCUMENTS were thereafter moved elsewhere for the purpose of YOUR review); the

6  IDENTITY of each natural person or individual who is, was or has been associated

7  with each such SOURCE OF INFORMATION; the date(s) on which YOU

8  COLLECTED DOCUMENTS from each such SOURCE OF INFORMATION in

9  connection with this ACTION; whether, at the time of YOUR COLLECTION of

10  DOCUMENTS from such SOURCE OF INFORMATION, each such SOURCE OF

11  INFORMATION contained or included DOCUMENTS that REFER OR RELATE TO

12  BRATZ and the time period prior to February 28, 2001; and the IDENTITY of any

13  DOCUMENTS, by Bates number, that YOU have produced from each such SOURCE

14  OF INFORMATION to Mattel in this ACTION that REFER OR RELATE TO BRATZ

15  and that also REFER OR RELATE TO the time period prior to February 28, 2001

16  (regardless of when such DOCUMENT was, in whole or part, created, drafted,

17  generated, sent, received or transmitted).

18         (d)    with reference to any other DOCUMENT or DOCUMENTS,

19  means to describe each DOCUMENT by Bates number.  In the event that a

20  DOCUMENT does not have a Bates number, IDENTIFY means, with respect to each

21  such DOCUMENT, to provide a complete description of it such that it may be the

22  subject of a request for the production of documents, including by stating the date,

23  identity of the author, addressee(s), signatories, parties, or other PERSONS identified

24  therein, its present location or custodian and a description of its contents.

25        22.   "Any" as used in these interrogatories includes the word "all," and

26  the word "all" as used in these interrogatories includes the word "any."

27        23.   The singular form of a noun or pronoun includes within its meaning

28  the plural form of the noun or pronoun so used, and vice versa; the use of the masculine

07209/2259967.1

-7-

EXHIBIT __9__ PAGE __114__

form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and vice versa; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and vice versa, whenever such construction results in a broader disclosure of documents or information.

## **Instructions**

A.   When   an   interrogatory   requests   disclosure   of   a COMMUNICATION or other information as to which YOU claim any privilege or protection as a ground for nondisclosure, identify each PERSON who participated in or had knowledge of the COMMUNICATION or other information and provide the following:

> (i)     the privilege or protection that YOU claim precludes disclosure;
>
> (ii)    the subject matter of the COMMUNICATION or information (without revealing the content as to which the privilege is claimed); and
>
> (iii)   any additional facts or grounds on which YOU base YOUR claim of privilege or protection.

B.    When an interrogatory requests that YOU provide information, YOU are required to supply all information known by or available to YOU or YOUR employees, officers, directors, agents, representatives, attorneys and experts. If YOU cannot completely answer the interrogatory after making diligent efforts to do so, please so state.  Then describe in detail all efforts made to answer the interrogatory; identify every PERSON involved in such efforts; and state the additional information YOU need, if any, to respond completely to the interrogatory.

07209/2259967.1

-8-

EXHIBIT 9 PAGE 115

## Interrogatories

**INTERROGATORY NO. 46:**

Without disclosing the content of communications which are protected by the attorney-client privilege, state fully and in detail all facts which REFER OR RELATE TO any dispute relating to THIS ACTION between, on the one hand, MGA, LARIAN, BRYANT and/or MACHADO and, on the other hand, O'MELVENY and/or CHRISTENSEN, including but not limited to any and all disputes which were or have been asserted as a basis for, or which underlie, contributed to or were a factor in, the withdrawal, termination and/or substitution of O'MELVENY and/or CHRISTENSEN as counsel of record in this ACTION, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**INTERROGATORY NO. 47:**

IDENTIFY each and every SOURCE OF INFORMATION from which YOU have COLLECTED DOCUMENTS in THIS ACTION that REFER OR RELATE TO BRATZ and that also REFER OR RELATE TO the time period prior to February 28, 2001 (regardless of when such DOCUMENT was, in whole or part, created, drafted, generated, sent, received or transmitted).

DATED:  October 19, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By: _B. Dylan Proctor_
B. Dylan Proctor
Attorneys for Plaintiff
Mattel, Inc.

MATTEL'S FIFTH SET OF INTERROGATORIES

EXHIBIT 9  PAGE 116

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On October 19, 2007, I served true copies of the following document(s) described as

1.      **MATTEL, INC.'S FIFTH SET OF INTERROGATORIES**

on the parties in this action as follows:

Thomas Nolan, Esq.                          Mark E. Overland, Esq.
**SKADDEN ARPS SLATE MEAGHER**   David C. Scheper, Esq.
**& FLOM, LLP**                             Alexander H. Cote
300 South Grand Avenue, Suite 3400   **OVERLAND BORENSTEIN**
Los Angeles, CA 90071                       **SCHEPER & KIM LLP**
                                            300 South Grand Avenue, Suite 2750
                                            Los Angeles, CA 90071-3144

**BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 19, 2007, at Los Angeles, California.

_____
NOW LEGAL -- Dave Quintana

07209/2261472.1                          -1-

EXHIBIT 9 PAGE 117

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On October 19, 2007, I served true copies of the following document(s) described as **MATTEL, INC.'S FIFTH SET OF INTERROGATORIES** on the parties in this action as follows:

Michael H. Page, Esq.
**KEKER & VAN NEST, LLP**
710 Sansome Street
San Francisco, CA 94111

**BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 19, 2007, at Los Angeles, California.

Charlene Ho

07209/2261482.1

EXHIBIT 9 PAGE 118

**Exhibit 10**

1  THOMAS J. NOLAN (Bar No. 066992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California 90071-3144
3  Telephone: (213) 687-5000
   Facsimile: (213) 687-5600
4  E-mail:    tnolan@skadden.com

5  KENNETH A. PLEVAN (Admitted *Pro Hac Vice*)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  4 Times Square
   New York, NY 10036
7  Telephone: (212) 735-3000
   Facsimile: (212) 735-2000
8  E-mail:    kplevan@skadden.com

9  Attorneys for Counter-Defendants,
   MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
10 (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

11            UNITED STATES DISTRICT COURT

12            CENTRAL DISTRICT OF CALIFORNIA

13                  EASTERN DIVISION

14 | CARTER BRYANT, an individual | ) | CASE NO. CV 04-9049 SGL (RNBx) |

   Plaintiff,                        Consolidated with Case No. 04-9059
15                                   and Case No. 05-2727

16        v.                         **MGA ENTERTAINMENT
                                     INC.'S OBJECTIONS AND
17 MATTEL, INC., a Delaware          RESPONSES TO MATTEL
   corporation                       INC.'S FIFTH SET OF
                                     INTERROGATORIES**
18        Defendant.

19

20                                   Honorable Stephen G. Larson
                                     Courtroom 1
21

22 Consolidated with MATTEL, INC. v.  Discovery Cut-Off: March 3, 2008
   BRYANT and MGA
23 ENTERTAINMENT, INC. v.
   MATTEL, INC.

24 **PROPOUNDING PARTY:    MATTEL, INC.**

25 **RESPONDING PARTY:     MGA ENTERTAINMENT, INC.**

26 **SET NUMBER:           FIFTH**

27

28

                          11-19

EXHIBIT 10 PAGE 119

## PRELIMINARY STATEMENT

1
2      The General Response set forth herein applies to all responses that
3 MGA is providing in response to these interrogatories or may in the future provide in
4 response to any discovery request in this action.  The Response is made without
5 waiving, or intending to waive but, on the contrary, expressly reserving: (a) the right
6 to object, on the grounds of competency, privilege, relevancy or materiality, or any
7 other proper grounds, to the use of the Response, for any purpose in whole or in part,
8 in any subsequent step or proceeding in this action or any other action; (b) the right
9 to object on any and all grounds, at any time, to other interrogatories or other
10 discovery procedures; and (c) the right at any time to revise, correct, add to, or
11 clarify any of the responses propounded herein.
12      The Response reflects only the present state of MGA's discovery
13 regarding the information that Mattel seeks.  Discovery and other investigation or
14 research concerning this litigation are continuing.  It is anticipated that further
15 discovery, independent investigation, and legal research and analysis will supply
16 additional facts and meaning to the known facts, as well as establish entirely new
17 factual conclusions, all of which may lead MGA to discover other information
18 responsive to these interrogatories.  MGA therefore reserves the right to amend or
19 supplement this Response at any time in light of future investigation, research or
20 analysis, and also expressly reserves the right to rely on, at any time, including trial,
21 subsequently discovered information omitted from this Response as a result of
22 mistake, error, oversight or inadvertence.  MGA does not hereby admit, adopt or
23 acquiesce in any factual or legal contention, assertion or characterization contained
24 in the Interrogatories or any particular request therein, even where MGA has not
25 otherwise objected to a particular interrogatory, or has agreed to provide information
26 responsive to a particular interrogatory.
27      No incidental or implied admissions are intended by this Response.
28 These responses should not be taken as an admission that MGA accepts or admits the

1

MGA'S RESPONSES TO MATTEL INC.'S FIFTH SET OF INTERROGATORIES          NO. CV 04-9049 SGL (RNBx)

EXHIBIT 10 PAGE 120

1  existence of any facts set forth or assumed by any instruction, definition or

2  interrogatory.

3  **GENERAL OBJECTIONS**

4      MGA responds to these interrogatories subject to the following general

5  objections and limitations, each of which is incorporated into each and every

6  response as though fully set forth therein:

7      1.    MGA objects to these interrogatories to the extent they seek

8  information that is not subject to disclosure under any applicable privilege, doctrine

9  or immunity, including without limitation the attorney-client privilege, the work

10  product doctrine, the right of privacy, and all other privileges recognized under the

11  constitutional, statutory or decisional law of the United States of America, the State

12  of California or any other applicable jurisdiction.

13      2.    MGA objects to these interrogatories to the extent they seek

14  information not relevant to the claims or defenses of any party to this action and not

15  reasonably calculated to lead to the discovery of admissible evidence.

16      3.    MGA objects to these interrogatories to the extent they seek

17  information which by reason of public filing or otherwise is already in Mattel's

18  possession or is readily accessible to Mattel.

19      4.    MGA objects to these interrogatories to the extent they seek the

20  disclosure of information (1) not currently within its possession, custody or control;

21  (2) that MGA cannot locate after a reasonably diligent search; or (3) that refer to

22  persons, entities, or events not known to MGA.  Such instructions, definitions, or

23  requests are objectionable where they seek to require more of MGA than any

24  obligation imposed by the Federal Rules of Civil Procedure; subject MGA to

25  unreasonable and undue annoyance, oppression, burden, and expense; and/or seek to

26  impose upon MGA an obligation to investigate or discover information or materials

27  from sources equally accessible to Mattel.

28

2

EXHIBIT 10 PAGE 121

5.   MGA objects to these interrogatories to the extent they are overbroad and unduly burdensome.

6.   MGA objects to the definitions and instructions to the extent such definitions and instructions purport to enlarge, expand, or alter in any way the plain meaning and scope of any specific term or specific interrogatories on the ground that such enlargement, expansion, or alteration renders such a term or request vague, ambiguous, unintelligible, overbroad, unduly burdensome, and/or uncertain.

7.   MGA objects to the following definitions in these interrogatories:

(a)   MGA objects to the definition of the term "BRATZ" (Definitions ¶ 11) as vague, ambiguous, overly broad and unduly burdensome, and designed to mislead and confuse the trier of fact.  The definition includes "any project, product, doll or DESIGN ever known by [the Bratz] name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term 'Bratz' (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been marketed as part of the 'Bratz' line, and each version or iteration of such product, doll or DESIGN or any portion thereof," and it goes on. By incorporating the definition of "DESIGN," the overly broad definition of BRATZ includes two-dimensional and three-dimensional representations, including "works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, inventions and/or improvements . . . ."  (Definitions ¶ 12.)  These convoluted and multi-part definitions combine to render the interrogatories vague, ambiguous and overly broad, and to include within the term BRATZ things that do not fairly represent the Bratz line of dolls, accessories and related products that are the subject of this case.  In responding

3

EXHIBIT 10 PAGE 122

1  to these interrogatories, MGA will interpret the term "BRATZ" to mean the line of

2  dolls introduced by MGA to the market for sale in May or June 2001 and subsequent

3  dolls, accessories and other products known as Bratz or associated by MGA with the

4  Bratz line of dolls;

5                (b)    MGA objects to the definition of the terms "IDENTIFY" or

6  "IDENTITY" as overbroad, unduly burdensome, vague and ambiguous, and

7  oppressive. Mattel's definition of these terms inherently call for answers to multiple

8  discrete questions or subparts to questions. For example, as those terms are used

9  with reference to a "SOURCE OF INFORMATION" (Definitions ¶ 21(c)), the use of

10  those terms request at least seven different and distinct facts: (a) the nature of the

11  "SOURCE OF INFORMATION"; (b) any "unique identifier information" for each

12  "SOURCE OF INFORMATION"; (c) the "SOURCE OF INFORMATION's"

13  physical location(s), including full address information and computer network drive

14  information; (d) the "IDENTITY" of each natural person or individual who is, was or

15  has been associated with each such "SOURCE OF INFORMATION"; (e) the date(s)

16  on which documents were collected from each "SOURCE OF INFORMATION"; (f)

17  whether each "SOURCE OF INFORMATION" contained documents that "REFER

18  OR RELATE TO" "BRATZ" during the time period prior to February 28, 2001; and

19  (g) the "IDENTITY of any DOCUMENTS". Therefore, any interrogatory that

20  includes or incorporates the terms "IDENTIFY" or "IDENTITY" are necessarily

21  compound, and should be posed as separate interrogatories. MGA will interpret the

22  term "IDENTIFY" when used in these interrogatories with reference to a "SOURCE

23  OF INFORMATION" as requesting MGA to identify the "SOURCE OF

24  INFORMATION" searched for the referenced documents with reasonable

25  particularity so as to distinguish it from other sources of information searched for

26  those documents;

27                (c)    MGA also objects to the terms "any" (Definitions ¶ 22) and

28  "REFER OR RELATE TO" (Definitions ¶ 15) on the grounds and to the extent they

4

EXHIBIT 10 PAGE 123

1  are overbroad, unduly burdensome, and/or are vague and ambiguous in the context

2  of the interrogatories as written and as those interrogatories would be plainly

3  understood absent Mattel's definitions.

4          8.      MGA objects to these interrogatories to the extent they may

5  unfairly seek to restrict the facts on which MGA may rely at trial.  Discovery has not

6  been completed and MGA is not yet necessarily in possession of all the facts and

7  documents upon which MGA intends to rely.  All of the responses submitted

8  herewith are tendered to Mattel with the reservation that the responses are submitted

9  without limiting the evidence on which MGA may rely to support the contentions

10  and defenses that MGA may assert at the trial of this action and to rebut or impeach

11  the contentions, assertions and evidence that Mattel may present.  MGA reserves the

12  right to supplement or amend these responses at a future date.

13          9.      MGA objects to each interrogatory to the extent it seeks

14  information that will be the subject of expert witness testimony and that is therefore

15  premature.

16          10.     MGA objects to each interrogatory to the extent it calls for a legal

17  conclusion.

18          11.     MGA objects to each interrogatory to the extent it seeks the

19  disclosure of confidential, proprietary, or trade-secret information.

20          12.     MGA reserves the right to object on any ground at any time to

21  such other supplemental discovery requests as Mattel may propound involving or

22  relating to the same subject matter of these interrogatories.

23          13.     In responding to these interrogatories, MGA has not complied

24  and will not comply with any instructions or definitions that seek to impose

25  requirements in addition to those imposed by the Federal Rules of Civil Procedure,

26  the local rules of this Court, any orders entered by the Court in this action, or other

27  applicable law.

28

MGA'S RESPONSES TO MATTEL INC.'S FIFTH SET OF INTERROGATORIES                    NO. CV 04-9049 SGL (RNBx)

EXHIBIT 10 PAGE 124

14.     Consistent with Rule 33(d) of the Federal Rules of Civil Procedure, MGA objects to providing responses to interrogatories that can be derived from documents that have been or will be produced (when requested in compliance with Rule 26) and where the burden to derive such information is substantially the same for Mattel as it is for MGA.

15.     MGA objects to the definitions, instructions, and interrogatories to the extent they seek information that was prepared in anticipation of litigation, constitutes attorney work product, discloses mental impressions, conclusions, opinions or legal theories of any attorney for or otherwise representative of MGA, contains privileged attorney-client communications, or is otherwise protected from disclosure by any privileges, laws or rules.  MGA shall not produce such information in response to Mattel's interrogatories.  Any disclosure of such protected or privileged information is inadvertent and shall not be construed as a waiver of those privileges or protections.  MGA reserves the right to correct the record with regard to any such inadvertent disclosure, as provided for in the Protective Order governing this case.

16.     MGA objects to each of Mattel's interrogatories because Mattel has propounded more than 50 interrogatories, including discrete subparts.  Under Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

17.     The responses below shall not be construed as an admission as to the relevance or admissibility of any statement or characterization contained in any interrogatory.  MGA reserves all objections, including without limitation, objections as to competency, relevance, materiality, privilege, authenticity, or admissibility.

18.     To the extent MGA responds to an interrogatory, it does so without waiving or intending to waive but rather, on the contrary, preserving and intending to preserve, its contention that anything Mr. Bryant did on weekends, evenings, vacation and any other time outside ordinary business hours was not done

6

EXHIBIT 10 PAGE 125

1 while he was working for Mattel.  MGA's response may not be taken as an admission

2 that the information it provides in its response in any way reflects or evidences work

3 performed by Mr. Bryant while he was working for Mattel or that MGA adopts or

4 agrees with any fact or legal conclusion assumed, presumed or contained in Mattel's

5 interrogatory.

6 **OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES**

7 Without waiving or departing from its General Response and General

8 Objections, and specifically incorporating them in its response to each interrogatory

9 below, MGA makes the following additional objections and responses to specific

10 interrogatories:

11 **INTERROGATORY NO. 46:**

12 Without disclosing the content of communications which are protected

13 by the attorney-client privilege, state fully and in detail all facts which REFER OR

14 RELATE TO any dispute relating to THIS ACTION between, on the one hand,

15 MGA, LARIAN, BRYANT and/or MACHADO and, on the other hand,

16 O'MELVENY and/or CHRISTENSEN, including but not limited to any and all

17 disputes which were or have been asserted as a basis for, or which underlie,

18 contributed to or were a factor in, the withdrawal, termination and/or substitution of

19 O'MELVENY and/or CHRISTENSEN as counsel of record in this ACTION, and

20 IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that

21 REFER OR RELATE TO such facts.

22 **RESPONSE TO INTERROGATORY NO. 46:**

23 MGA incorporates by reference its General Response and General

24 Objections above, as though fully set forth herein and specifically incorporates

25 General Objection No. 7 (regarding Definitions), including but not limited to its

26 objections to the definitions of the terms "IDENTIFY" and "REFER OR RELATE

27 TO".  MGA also objects to this interrogatory to the extent it seeks information that is

28 not subject to disclosure under any applicable privilege, doctrine or immunity,

7

EXHIBIT _10_ PAGE _240_

1  including without limitation the attorney-client privilege, the work product doctrine,

2  the right of privacy, and all other privileges recognized under the constitutional,

3  statutory or decisional law of the United States of America, the State of California or

4  any other applicable jurisdiction. MGA further objects to this interrogatory on the

5  grounds that it is compound, vague, ambiguous and overly broad in that it seeks

6  disclosure of "facts" that "REFER OR RELATE TO" a "dispute" between certain

7  parties and their former counsel without any reference to the claims or defenses in

8  this action. MGA also objects to the extent that this interrogatory requests that MGA

9  "state . . . *all* facts . . . IDENTIFY *all* PERSONS . . . and *all* DOCUMENTS"

10  (emphasis added). MGA further objects to this interrogatory as oppressive and

11  harassing in that it seeks information not relevant to the claims or defenses of any

12  party to this action and not reasonably calculated to lead to the discovery of

13  admissible evidence.

14        MGA objects to this interrogatory because Mattel has propounded more

15  than 50 interrogatories. Under Judge Larson's order of February 22, 2007,

16  "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-

17  SGL and CV 05-02727]."

18        Based on these objections, MGA will not respond further to this

19  interrogatory.

20  **INTERROGATORY NO. 47:**

21        IDENTIFY each and every SOURCE OF INFORMATION from which

22  YOU have COLLECTED DOCUMENTS in THIS ACTION that REFER OR

23  RELATE TO BRATZ and that also REFER OR RELATE TO the time period prior

24  to February 28, 2001 (regardless of when such DOCUMENT was, in whole or part,

25  created, drafted, generated, sent, received or transmitted).

26  **RESPONSE TO INTERROGATORY NO. 47:**

27        MGA incorporates by reference its General Response and General

28  Objections above, as though fully set forth herein and specifically incorporates

8

EXHIBIT 10 PAGE 127

1  General Objection No. 7 (regarding Definitions), including without limitation its

2  objection to the definition of the term "IDENTIFY" insofar as it is used to refer to a

3  "SOURCE OF INFORMATION" and "REFER OR RELATE TO." MGA also

4  objects to this interrogatory to the extent it seeks information that is not subject to

5  disclosure under any applicable privilege, doctrine or immunity, including without

6  limitation the attorney-client privilege, the work product doctrine, the right of

7  privacy, and all other privileges recognized under the constitutional, statutory or

8  decisional law of the United States of America, the State of California or any other

9  applicable jurisdiction. MGA further objects to the interrogatory on the grounds that

10  it is vague, ambiguous, overly broad and unduly burdensome insofar as it could be

11  read to require MGA to search the hundreds of thousands of pages of documents it

12  has produced in this action to "IDENTIFY" each document that "REFERS OR

13  RELATES TO" "BRATZ" and also "REFERS OR RELATES TO" the period prior

14  to February 28, 2001. The Federal Rules of Civil Procedure do not require MGA to

15  conduct such a search.

16       MGA objects to this interrogatory as compound because it contains

17  discrete subparts that require separate, distinct and multiple responses. Specifically,

18  Mattel's definitions of the terms "IDENTIFY" and "SOURCE OF INFORMATION"

19  require MGA to provide separate, distinct, and multiple responses. For example,

20  Mattel's definition of the term IDENTIFY in the context of this interrogatory

21  purports to require MGA to provide a multitude of discrete facts for each SOURCE

22  OF INFORMATION, including: (a) the nature of the SOURCE OF

23  INFORMATION; (b) any "unique identifier information" for each SOURCE OF

24  INFORMATION; (c) the SOURCE OF INFORMATION's physical location(s),

25  including full address information and computer network drive information; (d) the

26  "IDENTITY" of each natural person or individual who is, was or has been associated

27  with each such SOURCE OF INFORMATION; (e) the date(s) on which documents

28  were collected from each SOURCE OF INFORMATION; (f) whether each

9

EXHIBIT 10 PAGE 128

1  SOURCE OF INFORMATION contained documents that "REFER OR RELATE

2  TO" "BRATZ" during the time period prior to February 28, 2001; and (g) the

3  IDENTITY of any DOCUMENTS. This interrogatory is further compounded by

4  Mattel's definition of "IDENTITY," which purports to require MGA to provide the

5  following information for each of the "natural persons" requested to be identified as

6  part of Mattel's definition of "IDENTIFY," above: (1) the individual's name; (2) any

7  known business title; (3) the current or last known business affiliation; (4) the current

8  or last known residential address; (5) the current or last known business address; (6)

9  the current or last known relationship to MGA; and (7) the current or last known

10 telephone number. Additionally, through Mattel's definition of "YOU," this

11 interrogatory asks for all of the foregoing information about "SOURCES OF

12 INFORMATION" relating to, and searched by, each of the multiple separate

13 responding parties in this litigation. MGA further objects to the extent this

14 interrogatory seeks information that is beyond MGA's personal knowledge and is not

15 in MGA's possession, custody, or control.

16       MGA objects to this interrogatory because Mattel has propounded more

17 than 50 interrogatories. Under Judge Larson's order of February 22, 2007,

18 "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-

19 SGL and CV 05-02727.]"

20

21

22

23

24

25

26

27

28

10

EXHIBIT  10 PAGE 129

1         Subject to and without waiving the foregoing objections, MGA

2 responds as follows:  MGA is willing to meet and confer with Mattel regarding this

3 interrogatory.

4         AS TO OBJECTIONS ONLY:

5 DATED:  November 19, 2007

6

7                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

8                         By: _____

9                            Thomas J. Nolan
                 Attorneys for Counter-Defendants, MGA

10            ENTERTAINMENT, INC., ISAAC LARIAN,
                 MGA ENTERTAINMENT (HK) LIMITED,
                 AND MGAE de MEXICO S.R.L. de C.V.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

EXHIBIT 10 PAGE 130

**Exhibit 11**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
    Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:   (213) 443-3100

8  Attorneys for Plaintiff Mattel, Inc.

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                   EASTERN DIVISION

13  CARTER BRYANT, an individual,       CASE NO. CV 04-9049 SGL (RNBx)

14              Plaintiff,               Consolidated with Case No. CV 04-
                                         09059 and Case No. CV 05-02727
15       vs.

16  MATTEL, INC., a Delaware            AFFIDAVIT OF MICHAEL MOORE
    corporation,                        IN SUPPORT OF MATTEL, INC.'S
17                                       OPPOSITION TO MGA
                Defendant.               ENTERTAINMENT, INC.'S MOTION
18                                       FOR TERMINATING SANCTIONS
   _____       DUE TO SPOLIATION OF
19                                       EVIDENCE
   AND CONSOLIDATED CASES
20                                       Discovery Cut-off: January 14, 2008
21                                       Pre-trial Conference:  April 7, 2008
                                         Trial Date:  April 29, 2008
22

23

24            **CONFIDENTIAL - ATTORNEYS' EYES ONLY**

25        **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

26

27

28

07209/2212847.2

                                              MICHAEL MOORE AFFIDAVIT

## AFFIDAVIT OF MICHAEL MOORE

I, Michael Moore, being duly sworn, state as follows:

1.      I submit this affidavit pursuant to the Court's Order denying MGA Entertainment, Inc.'s and Bryant's Motion for Terminating Sanctions, dated August 27, 2007, which directed Mattel, Inc. ("Mattel") and the other parties to this litigation to set forth in affidavit form their preservation efforts and policies with respect to the present litigation, with a particular focus on the time period identified by the Court, namely fall 2003 and spring 2005.  Except as identified herein, I make this affidavit of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify as set forth below.

2.      I have been a Mattel employee since December 2000.  I am currently Senior Counsel in Mattel's Legal Department.

3.      I have been personally involved with the collection and preservation of documents and tangible things in Mattel, Inc. v. Bryant, Case No. 04-9059; Bryant v. Mattel, Inc., Case No. 04-9049; MGA Entertainment, Inc. v. Mattel, Inc., Case No. 05-2727, which have been consolidated.  I have also been personally involved in the collection and preservation of documents and tangible things in other cases (to which MGA and Bryant were not parties) involving Mattel products and product lines known as MY SCENE and DIVA STARZ.

4.      I personally participated in and supervised the investigation, identification, collection and preservation of documents and tangible things that relate to the basis of Mattel's claims and Mattel's defenses to MGA's claims in these consolidated cases.

## PRESERVATION PRIOR TO APRIL 2005

5.      Mattel employed Carter Bryant, most recently, from January 4, 1999 to October 20, 2000.  During that time he worked in Mattel's "*Barbie Collector*" group, which was located in Mattel's Design Center in El Segundo, California.

07209/2212847.2

6.      During the summer of 2003, I, with others, began investigating any potential misconduct by Bryant while a Mattel employee or thereafter.  During the course of that investigation I interviewed numerous Mattel employees regarding Bryant and his work for Mattel.  During those interviews, I inquired about possible sources of documents and things on that subject.  A list of employees that I recall interviewing from the time that my investigation began through the time that Mattel filed its complaint in April 2004 is attached at Exhibit A.  I, and those acting at my direction, also collected and preserved Bryant-related documents from those individuals.  Whenever a person with potentially relevant information was interviewed, either I or other counsel, asked the interviewee to provide any Bryant-related materials in his or her possession, and if they come across Bryant-related materials thereafter, to preserve and to provide them to me.

7.      I spoke with members of Mattel's IT department to obtain an understanding about Mattel's policies,  procedures and practices regarding the use, storage and preservation of electronic data, and regarding server infrastructure.  I specifically inquired about possible locations of electronic information related to Bryant, and the policies, procedures and practices regarding the preservation or backup of electronic information that could pertain to Bryant.

8.      Also, during the investigation phase, I, and those acting at my request, created and preserved forensic images of the hard drives of the personal computers of those employees who we believed could have potentially pertinent information and who still worked at Mattel, namely the hard drives of

REDACTED

9.      Due to the Mattel e-mail retention policy of 90-days on its e-mail servers and a 30-day rotation policy for e-mail server backup tapes, any e-mail

-3-

07209/72128472

1   message that Carter Bryant authored or received would not have been on either an e-

2   mail server or a backup tape 120-days after he quit, by mid-February 2001.

3   Nevertheless, starting in 2003, I searched and instructed others to search for old e-

4   mail server backup tapes.  No such old tapes were located.

5         10.    Starting in the fall of 2003, Mattel used SMTP logs to collect

6   some e-mail messages received by Mattel employees from specific locations on the

7   Internet, including <mgae.com>, and sent by Mattel employees to those locations.

8   To the extent that Mattel was able to identify such e-mail messages that appeared to

9   be potentially relevant, they have been preserved.

10        11.    Beginning on or about December 23, 2003, Mattel implemented

11   an automated security tool that monitored e-mail messages that traveled into Mattel

12   or that were sent from Mattel's e-mail system.  Mattel used certain keywords,

13   including Bryant and MGA, for which the security tool monitored incoming and

14   outgoing e-mail messages.  If an e-mail message contained a keyword, then the

15   security tool made a copy of the e-mail and delivered it to a separate mailbox.  Since

16   Mattel implemented this security tool, it has preserved in excess of 184 gigabytes of

17   e-mail messages and attachments, (although not all relate to Mattel's dispute with

18   MGA and Bryant).

19        12.    Mattel employees can also store e-mail messages older than 90

20   days in places other than e-mail servers, including by printing them out and filing

21   them, by saving them on their local hard drives or by saving them to their personal

22   storage space on Mattel's data servers or by creating archive files denoted by the

23   suffix ".pst," which contain multiple e-mail messages and may be stored in similar

24   locations.

25        13.    I, and others, searched for, identified and preserved e-mail

26   messages relating to Bryant that we could locate.  In particular, during late 2003

27   through 2004, Mattel searched for, and to the extent such accounts existed,

28   preserved e-mails then contained in the mailboxes of Mattel employees who we

1  believed may have sent e-mail messages to Carter Bryant or who may have Bryant-
2  related e-mail messages.  These include (i) e-mail messages written by, to or
3  mentioning current or former employees, including Carter Bryant, Cassidy Park,
4  Ann Driskill, Lily Martinez, Mercedeh Ward, Margaret Hatch-Leahy, and certain
5  third parties, including Isaac Larian and any other person using an mgae.com e-mail
6  address; and (ii) e-mail messages referring to Bratz or MGA.  Later, in or about
7  October 2004, Mattel collected and preserved the mailboxes of a broader range of
8  individuals who are identified on Exhibit B.  These e-mail archives are currently
9  stored in a secure, off-site storage facility.

10          14.    In addition I, and others with me, searched Mattel's El Segundo
11 Tower and Design Center for personal computers that were potentially in use during
12 the relevant time period.  Mattel located approximately 130 computer hard drives
13 and 14 workstation computers that Mattel's IT department had in its possession from
14 prior years.  These hard drives and workstation computers are currently preserved in
15 a secure, off-site storage facility.  A list of these hard drives is attached as Exhibit C.
16 A list of these workstation computers is attached as Exhibit D.

17          15.    In an effort to identify any computer used by Carter Bryant, in
18 October 2004, the Mattel Help Desk data center reviewed its Help Desk records for
19 the time periods of Bryant's employment to determine whether the data center had
20 any help tickets or other records of Carter Bryant requesting assistance with any
21 computer.  No such records were found.

22          16.    In 2004, Mattel also searched its records of employee desktop
23 computers in an effort to identify a desktop computer used by Carter Bryant when
24 he was a Mattel employee.  Mattel collected, preserved and reviewed obsolete
25 equipment lists, records from IT procurement, including invoices for computers that
26 Mattel had purchased.  To locate and preserve any Mattel computer that Carter
27 Bryant could have used three years previously, Mattel identified the type of
28 computer from its procurement records.  The hard drive of one of the possible

07209/2212847.2

-5-

1  computers was located in Mattel's Design Center IT storage facility. This hard drive

2  is currently preserved in a secure, off-site storage facility.

3        17.    Mattel preserved the original hard drive of this computer and

4  other computers, and also created forensic images of hard drives of persons who

5  could have relevant information, including those persons identified on Exhibit E.

6

7  # REDACTED

8

9        As a result of the searches, backup tapes containing data from Zeus were

10  located and preserved as explained at the hearing. In addition, Mattel has preserved

11  backup tapes for 2003, 2005 and 2006. Those tapes are stored in a secure location.

12        19.    In the summer of 2003, I instructed the people responsible for

13  Mattel's phone system to identify, collect and preserve all phone logs for the

14  El Segundo Campus for 2000. Mattel had a PC with Microcall software installed

15  that logged calls going into and out of Mattel's El Segundo campus. In 2000, there

16  was a practice to archive the Microcall phone log data on archive tapes on a monthly

17  basis. These tapes were on a three-year rotation schedule. Attached as Exhibit F is

18  a list identifying the Microcall archive tapes that were located. I never received the

19  October 2000 or December 2000 archive tapes. I instructed those responsible to

20  continue to search for those tapes. They have not been located. Those archive tapes

21  that were located are currently preserved in a secure location.

22        20.    I am informed and believe that Mattel maintains a project and

23  time reporting system for design and manufacturing of Mattel products known as the

24  TRACS Database Server. Mattel has preserved the data contained in the TRACS

25  database. As a precautionary measure, on October 7, 2004, a backup of the TRACS

26  database was created and is currently preserved in a secure, off-site location. A

27  hard drive containing the data export is also currently preserved in a secure, off-site

28  storage facility.

-6-

21.    In addition to collecting and preserving the foregoing information I, with others assisting me, sought and preserved the following types of electronic information:

- a forensic image of the Mattel badging computer
- optical platters containing accounting records
- focus group media and related documents
- phone bills and phone call logs received from the carriers used by Mattel.
- Barbie Collector planning files

**PRESERVATION FROM OTHER MATTEL CASES**

22.    In 2002, Mattel released a new fashion doll line called MY SCENE.  In early 2003, Simba Toys & Co. GmbH KG ("Simba") began to market and sell knock-offs of MY SCENE dolls at a toy fair in Nuremberg, Germany. Beginning at least as early as Spring 2003, Mattel employees that were known to have worked on designs for Mattel's MY SCENE dolls were instructed to gather and preserve documents related to the development of MY SCENE for purposes of litigation against Simba.  Mattel and Simba had an expedited trial in October 2003 in London, England.  Mattel prevailed.  All materials that were collected for the Simba litigation have also been preserved for this litigation.

23.    In 2002, an individual named Gustavo Duarte Viveros pursued an action in Mexico against Mattel de Mexico claiming that Mattel's DIVA STARZ doll line infringed copyrights in drawings he allegedly created.  After abandoning that action in Mexico, Duarte Viveros sued Mattel in the Central District of California in October 2004, alleging that Mattel's DIVA STARZ doll line infringed his allegedly copyright protected drawings and constituted idea theft.  In connection with the Duarte Viveros litigation, Mattel collected and preserved existing documents, electronic files, e-mail and tangible items (making up in excess of 70 boxes) related to DIVA STARZ, including e-mails and other documents of Mattel

07209/2212847.2

-7-

1  employees who worked on DIVA STARZ, such as designers Maureen Mullen, Rene

2  Pasko, Joni Pratte and Rob Hudnut, and from various third parties who worked on

3  the project, such as Steve Linker.  In connection with this effort as well, Mattel

4  collected and preserved pertinent existing electronic files from the Zeus server and

5  back-up tapes as well as from the hard drives and other electronic media used by

6  numerous individuals.  All materials that were collected for the Duarte Viveros

7  litigation have also been preserved for this litigation.

8  ## PRESERVATION IN APRIL 2005 AND LATER

9       24.   MGA Entertainment, Inc. served a complaint on Mattel, Inc. on

10  April 13, 2005.  The allegations in that complaint were broad, and were different

11  from those that Mattel had previously investigated and asserted against Bryant.

12  MGA accused Mattel of trademark infringement, dilution and other claims with

13  respect to a number of Mattel's product lines and accused Mattel of engaging in

14  unfair competition.

15       25.   Since April 2005, I have helped coordinate the collection and

16  preservation of documents and things in connection with the allegations in MGA's

17  complaint.  On April 18, 2005, a memorandum from Robert Normile, Mattel's

18  General Counsel, was distributed to all Mattel employees instructing them to

19  preserve documents related to the allegations in the complaint, as Mattel understood

20  them.  Mattel's outside counsel informed MGA of the general categories of

21  documents that it would preserve.  A true and correct copy of a letter from Jon

22  Corey, Mattel's outside counsel, to Diana Torres, who I understand to be counsel for

23  MGA, is attached as Exhibit G. Mattel has, thereafter, reminded its employees of

24  their document preservation obligations.

25       26.   Based on the breadth of the allegations in MGA's complaint,

26  Mattel began interviewing employees who may have knowledge of the allegations

27  contained in that complaint or who may have documents containing information

28  relevant to those allegations.  Starting in April 2005, Mattel has conducted

1 interviews of more than 60 individuals, and Mattel continues its investigation and
2 interviews to this day. I, or others from the law department, have attended the
3 majority of those interviews. One purpose of these interviews was to determine
4 whether those individuals had documents (whether physical or electronic) that could
5 contain potentially relevant information or possessed tangible things that could be
6 relevant to MGA's allegations, or if they knew who would. If they did, then those
7 documents and things were collected and reviewed and, in some cases, their hard
8 drives were imaged. To date, Mattel has reviewed approximately two million pages
9 of documents.

10      27.     On April 18, 2005, Mattel's IT department stopped recycling the
11 backup tapes used to back up Mattel's e-mail servers located in El Segundo,
12 California. Mattel performed a backup of these e-mail servers every day, Mattel
13 retained e-mail messages on its e-mail servers for 90 days, and Mattel reused its e-
14 mail server backup tapes every 30 days. So, the oldest e-mail server backup tapes—
15 dated April 18, 2005—have e-mail messages going back to approximately mid-
16 December 2004. Mattel has continued to preserve the tapes created by the nightly
17 backups of the El Segundo e-mail servers to the present. Currently, Mattel has in
18 excess of 4,000 of these backup tapes containing hundreds of terabytes of data.

19      28.     Hundreds of people leave Mattel's employ every year. Since
20 May 2, 2005, Mattel has reviewed the identity of those who leave Mattel in an effort
21 to preserve the information associated with those individuals, to the extent that they
22 may have potentially relevant information.

23
24
25
26
27
28

**REDACTED**

29.     Prior to 2003, Mattel used a high performance disk array for much of its network storage in El Segundo.  In 2006, Mattel retired its old disk array and purchased a new, larger and more reliable disk array.  Before Mattel did so, it prepared a backup of the data on the old disk array, which is preserved in a secure, offsite location.  Mattel then took steps to ensure that all of the information was transferred from the old disk array to the new disk array.  The old disk array was taken to a secure, off-site location.

30.     Since I first began investigating Bryant's potential misconduct while an employee or thereafter, in connection with these consolidated cases and the Viveros and Simba cases, Mattel has preserved thousands of backup tapes, hard drives, computers, electronic media (in addition to preserving the information existing on its computer systems).  Mattel has also preserved millions of pages of documents.  This affidavit has described Mattel's preservation efforts generally over the past four years with a particular focus on the topics identified by the Court.  Mattel has not, however, audited or listed each piece of electronic media or document that it has preserved over those four years and that it continues to preserve, because the extensive scope and wide variety of the tapes and media involved makes fully cataloging all of it impracticable.

Michael Moore

Duly sworn and subscribed before me on the 10th day of September, 2007.

State of California County of
_los Angeles_
Subscribed and sworn to (or affirmed)
before me this _10_ day of _Sept_ 20 _07_ by
_Michael Moore_
personally known to me or proved to me on
the basis of satisfactory evidence to be the
person(s) who appeared before me.
Signature _F. Fahmie_



F. FAHMIE
Comm. No. 1620258
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. Feb. 17, 2010

MICHAEL MOORE AFFIDAVIT

1

2

3

4

## PROOF OF SERVICE

5       I am employed in the County of Los Angeles, State of California.  I am over the age of
eighteen years and not a party to the within action; my business address is 865 South Figueroa
6   Street, 10th Floor, Los Angeles, California.

7       On September 10, 2007, I served true copies of the following document(s) described as:
**AFFIDAVIT OF MICHAEL MOORE IN SUPPORT OF MATTEL, INC.'S OPPOSITION**
8   **TO MGA ENTERTAINMENT, INC.'S MOTION FOR TERMINATING SANCTIONS**
**DUE TO SPOLIATION OF EVIDENCE)** on the parties in this action as follows:

9

10       John W. Keker, Esq.                         Patricia Glaser, Esq.
    Michael H. Page, Esq.                 **Christensen, Glaser, Fink, Jacobs, Weil**
11       Christina M. Anderson, Esq.         **& Shapiro, LLP**
    **Keker & Van Nest, LLP**           10250 Constellation Blvd., 19th Floor
12       710 Sansome Street                  Los Angeles, CA  90067
    San Francisco, CA 94111

13

14

15   **[√] BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I

16   deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with

17   postage thereon fully prepaid.

18       Executed on September 10, 2007, at Los Angeles, California.

19

20

21                                   _____

22                                 Johanna Lopez

23

24

25

26

27

28

07209/2211071.1

# EXHIBIT A

EXHIBIT ⊔ PAGE 141

1

## Exhibit A

2
1.      Cassidy Beal-Park
2.      Robert Best
3
3.      Larry Clayton
4
4.      Ann Driskill
5.      Helene Frost
5
6.      Lily Martinez
6
7.      Mina Mirkazemi
7
8.      Rene Pasko
9.      Abbo Hussein
8
10.     Izzy Garr
9
11.     Michael Hebden
12.     Ryan Katayama
10
13.     Sujata Luther
11
14.     Irene Torres
15.     Joe Franke
12
16.     Vanessa Karpio
13
17.     Julia Jensen
18.     Ivy Ross
14
19.     Sandra Yonemoto
15
20.     Vicki Cerrito
21.     Cassandra Kroskrity
16
22.     Carol D'Eath
17
23.     Denise Clark
24.     Tiffany Singleton
18
25.     Fred Kawashima
19
26.     John Berger
27.     Sergio Hernandez
20
28.     Mike Sclimenti
21
29.     Roy Schwarz
30.     Julia Marine
22
31.     Steve Zickerman
23
32.     Jimmy Corona
33.     Janice Day
24
34.     Mary Domazet
25
35.     Jan Hodges
36.     Rodney Palmer
26
37.     Donna Kanehl
27

28

EXHIBIT 11 PAGE 142

# EXHIBIT B

EXHIBIT 11 PAGE 143

**Exhibit B**

1. Anzoategui, C.pst
2. Arriola, E.pst
3. Best R.pst
4. Bivens, M.pst
5. Carson, M.pst
6. Chan, P.pst
7. Coleman, B.pst
8. Donham, S.pst
9. Driskill, A.pst
10. Fong, Ei.pst
11. Gonzales, Steven.pst
12. Gonzalez, V.pst
13. Hammons, K.pst
14. Hoffman, Hoi.pst
15. Jackson, F.pst
16. Jimenez, K.pst
17. Kane, E.pst
18. Karpio, V.pst
19. Katayama, R.pst
20. Liu, R.pst
21. Martinez, B.pst
22. Martinez, L.pst
23. Matheny, K.pst
24. Monteagudo, C.pst
25. Ng, Jayson.pst
26. Nordquist, J.pst
27. Park, C.pst
28. Pasko, Rene.pst
29. Rodriguez, J.pst
30. Ruggeri, V.pst
31. Sarinana, Ariana.pst
32. Sepanik, M.pst
33. Shui, S.pst
34. Tomiyama, C.pst
35. Vandenberg, J.pst
36. Walker, A.pst
37. Yuen, E.pst
38. Zuckerman, S.pst

EXHIBIT 11 PAGE 144

# EXHIBIT C

EXHIBIT __11__ PAGE __145__

# Exhibit C

1.    Intergraph design workstation hard drive
2.    Hard drive from a Dell PC, S/N WMADK3524729
3.    Hard drive from a Dell PC, S/N 163108942052 SAPXX
4.    Hard drive from a Dell PC S/N, UFG3P1B013U
5.    Hard drive from a Dell PC S/N, UFG3P1B013NW
6.    Hard drive from a Compaq PC, S/N 30KQB301178091
7.    Hard drive from a Compaq PC, S/N 7CN056CR
8.    Hard drive from a Compaq PC, S/N 3HT3V6PA
9.    Hard drive from a Compaq PC, S/N WMAAR2424859
10.   Hard drive from a Compaq PC, S/N 31028676
11.   Hard drive from a Compaq PC, S/N 24670-002
12.   Hard drive from a Compaq PC, S/N VHL63774
13.   Hard drive from Intergraph PC, S/N NJ118890
14.   Hard drive from a Compaq PC, S/N TVMK1459
15.   Hard drive from a External Enclosure, S/N AY259442
16.   Hard drive from a Compaq PC, S/N T2KBYTECDT22A
17.   Hard drive from a Compaq PC, S/N WMA001721407D
18.   Hard drive from a Dell PC, S/N WMAAR2662760
19.   Hard drive from a Intergraph PC, S/N 184015639975 PFZXX
20.   Hard drive from a Compaq PC, S/N T4HYRGNCDT24A
21.   Hard drive from a Toshiba Laptop, S/N 46H7083E169280S5B
22.   Hard drive from a Apple/Mac LT, S/N 90B40914T
23.   Hard drive from a Apple/Mac LT, S/N T8118181
24.   Hard drive from a Apple/Mac LT, S/N 1.3131E+11
25.   Hard drive from a Apple/Mac LT, S/N N7527178
26.   Hard drive from a Apple/Mac LT, S/N 1.31404E+11
27.   Hard drive from a Apple/Mac LT, S/N N7540335
28.   Hard drive from a Apple/Mac LT, S/N N7542840
29.   Hard drive from a HP Omni Book, S/N 38J73718G
30.   Hard drive from a Apple/Mac LT, S/N V8040971
31.   Hard drive from a Apple/Mac LT, S/N 1.3131E+11
32.   Hard drive from a Apple/Mac LT, S/N IB24914KD54F
33.   Hard drive from a Apple/Mac LT, S/N YDLX4015
34.   Hard drive from a Compaq PC, S/N FNJ38MQ
35.   Hard drive from a Compaq PC, S/N 31277703
36.   Hard drive from a Compaq PC, S/N WM3460330779
37.   Hard drive from a Compaq PC, S/N 31031021
38.   Hard drive from a Compaq PC, S/N X5Z16355
39.   Hard drive from a Compaq PC, S/N WMA451046915

EXHIBIT 11 PAGE 146

40. Hard drive from a Compaq PC, S/N XJS27739
41. Hard drive from a Compaq PC, S/N 3037436
42. Hard drive from a Compaq PC, S/N 1005203
43. Hard drive from a Compaq PC, S/N 09531-011876
44. Hard drive from a Compaq PC, S/N CT20446A2RE20H9V
45. Hard drive from a Macintosh G3, S/N NH040595
46. Maxtor loose hard drive, S/N T2J7XSFC
47. Western Digital loose hard drive, S/N WMAAR3163741
48. Western Digital loose hard drive, S/N WMAAR1550444
49. Quantum loose hard drive, S/N 382619660905Y
50. Hard drive from a Intergraph PC, S/N WFF08343
51. Western Digital loose hard drive, S/N WT2900069875
52. Western Digital loose hard drive, S/N WT2880032046
53. Hard drive from a Intergraph PC, S/N 632812858891
54. Hard drive from a Intergraph PC, S/N LG452912
55. Hard drive from a Intergraph PC, S/N WT4110097368
56. Hard drive from a Dell PC, S/N H3H57ACCDH13A
57. Hard drive from a Intergraph PC, S/N WDFJ5200
58. IBM loose hard drive, S/N YHF88594
59. Seagate loose hard drive, S/N XAA92395
60. Hard drive from a Intergraph PC, S/N WFF60861
61. Western Digital loose hard drive, S/N WM4201407019
62. Hard drive from a Intergraph PC, S/N LJB68824
63. IBM hard drive from a PC, S/N TH0903DP1256716C2G80
64. Hard drive from a MAC, IZ742123AKUB
65. Hard drive from a MAC, IJ91502CZDHCA
66. Hard drive from a Compaq PC, S/N 3CM0SS25
67. Hard drive from a Intergraph PC, S/N JD682166
68. Hard drive from a Compaq PC, S/N 30047811
69. Hard drive from a Compaq PC, S/N 7EG279C8
70. Maxtor hard drive from a PC, S/N SG061TTY24951126A2Q2
71. Hard drive from a MAC, S/N IJ73615RAKUB
72. Seagate hard drive from a PC, S/N FNGJMW7
73. Loose hard drive, S/N 7469838
74. Hard drive from a Intergraph PC, S/N KCT08990
75. IBM loose hard drive, S/N YKVGT549
76. Quantum loose hard drive, S/N HN45S01102D
77. Western Digital loose hard drive, S/N WMAFL1028371
78. IBM loose hard drive, YKVGS821
79. Hard drive from a Intergraph PC, S/N 632813126832
80. Hard drive from a Intergraph PC, S/N LM863336

EXHIBIT 11  PAGE 147

81.  Hard drive from Intergraph PC, S/N AJHS3724
82.  Hard Drive from Compaq PC, S/N 09526-010386
83.  Hard Drive from Compaq PC, S/N 632809523146
84.  Hard Drive from Compaq PC, S/N H307H7SCDH03A
85.  Hard Drive from Compaq PC, S/N 7CN06S38
86.  Hard Drive from Compaq PC, S/N WMA6Y5909204
87.  Hard Drive from Compaq PC, S/N 31046526
88.  Hard Drive from Compaq PC, S/N 3CL0NETH
89.  Hard Drive from Compaq PC, S/N 3CM0KLNR
90.  Hard Drive from Compaq PC, S/N 3CM0KGXB
91.  Hard Drive from Compaq PC, S/N 3BT007PY
92.  Hard Drive from Compaq PC, S/N WMA001785122
93.  Western Digital loose hard drive, S/N WT2651436160
94.  Hard drive from a Intergraph PC, S/N WM4110122051
95.  Hard drive from a Intergraph PC, S/N JKD99584
96.  Maxtor loose hard drive, S/N R601790S
97.  Hard drive from a Compaq PC, S/N WMA001291388
98.  Hard drive from a Compaq PC, S/N FJBNXY4
99.  Hard drive from a Compaq PC, S/N FJBTV3X
100. IBM loose hard drive, S/N 1MTH2013104
101. Western Digital loose hard drive, S/N WM2920407538
102. Hard drive from a Compaq PC, S/N FNHTN6J
103. Hard drive from a Compaq PC, S/N 30WAH201031592
104. Western Digital loose hard drive, S/N WT2900162872
105. Samsung loose hard drive, S/N J1UF512998
106. Hard drive from a Intergraph PC, S/N WT4110093796
107. Hard drive from a Compaq PC, S/N 00MJBC01067507
108. Western Digital loose hard drive, S/N WT3070393711
109. Hard drive from a Intergraph PC, S/N JK236906
110. IBM loose hard drive, S/N P0015833
111. Seagate loose hard drive S/N FNG655K
112. Western Digital loose hard drive, S/N WM3461125481
113. Western Digital loose hard drive, S/N WT3070353784
114. Seagate loose hard drive, S/N FK9TH06
115. IBM loose hard drive, SN YKVGN922
116. Hard drive from a Apple/Mac 8100/100, S/N 327510270532M
117. Western Digital loose hard drive, S/N WT2890295980
118. Seagate loose hard drive, S/N FJBTW9A
119. Western Digital loose hard drive, S/N WM4110072382
120. Quantum loose hard drive, S/N 154724913971M
121. IBM loose hard drive, S/N 1MH5D108311

EXHIBIT 11 PAGE 148

122. Western Digital loose hard drive, S/N WT3420886199
123. Fujitsu loose hard drive, S/N 30049208
124. Western Digital loose hard drive, S/N WT4230015743
125. Western Digital loose hard drive, S/N WT2470182985
126. Western Digital loose hard drive, S/N WM3460236545
127. Western Digital loose hard drive, S/N WM3460240890
128. Samsung loose hard drive, S/N J1MD647510
129. Western Digital loose hard drive, S/N WT2890071563
130. IBM loose hard drive, S/N JMJ89284
131. Seagate loose hard drive, S/N FJBP9LD
132. Western Digital loose hard drive, S/N WT3800405533
133. Quantum loose hard drive, S/N 1RG2RCTAY1Z
134. Seagate loose hard drive, S/N XJP84884
135. Quantum loose hard drive, S/N 20446A2REJ0EXT
136. Quantum loose hard drive, S/N 20445A2RDP07MI
137. Quantum loose hard drive, S/N 20446A2RE20H9V

EXHIBIT 11 PAGE 149

# EXHIBIT D

EXHIBIT __11__ PAGE __150__

**Exhibit D**

1.  SiliconGraphics O2, S/N 0800690CBA6F
2.  Silicon Graphics O2, S/N 0800690CC048
3.  Stream Logic, S/N SL8200UWDPCI
4.  Stream Logic, S/N 2SPE010151A9
5.  Stream Logic, S/N 2SPE010148A9
6.  Stream Logic, S/N 2SPE010150A9
7.  Megadrive Enterprise 8, S/N 3C9N114174
8.  SiliconGraphics 10000 Impact Indigo 2, S/N 0800690A3AE9
9.  MicroNet RAID Subsystem, S/N 9700149
10. SiliconGraphics Indy, S/N 08006907977A
11. SiliconGraphics Indy, S/N 080069088C56
12. SiliconGraphics Indigo 2, S/N 0800690785F3
13. SiliconGraphics Indigo 2, S/N 08006909008E
14. MicroTech XL2000, S/N 2112840

EXHIBIT JL PAGE 151

# EXHIBIT E

EXHIBIT 11 PAGE 152