1

**Exhibit E**

2       1.    Sharon Zuckerman
3       2.    April Walker
        3.    Ronnie Ruggeri
4       4.    Juan Rodriguez
5       5.    Cassidy Beal-Park
        6.    Jill Nordquist
6       7.    Bill Martinez
7       8.    Rita Liu
        9.    Erica Kane
8       10.   Katiana Jiminez
9       11.   Hoi Hoffman
        12.   Kitti Hammons
10      13.   Ei Fong
11      14.   Ann Driskill
        15.   Patricia Chan
12      16.   Robert Best
13      17.   Kelly Matheny
        18.   Vived Gonzalez
14      19.   Carmen Monteagudo
15      20.   Megan Sepanik
        21.   Elizabeth Arriola
16      22.   Ariana Sarinana
17      23.   Tina Tomiyama
        24.   Michael Hebden
18      25.   Desiree Rouquillo
19      26.   Ivy Palijo
        27.   James Mills-Winkler
20      28.   Mina Mirkazemi
21      29.   V. Karpio
        30.   Daniel Leahy
22      31.   J. Holmes
23

24

25

26

27      EXHIBIT 11 PAGE 153
28

07209/2212847.2

# EXHIBIT F

EXHIBIT 11  PAGE 154

**Exhibit F**

1.  DC-6250 Data cartridge labeled "Jul.00.ARK."
2.  DC-6250 Data cartridge labeled "Aug.00.ARK."
3.  DC-6250 Data cartridge labeled "Sep.00.ARK."
4.  DC-6250 Data cartridge labeled "Nov.00.ARK."
5.  DC-6250 Data cartridge labeled "Jan.01.ARK."
6.  DC-6250 Data cartridge labeled "Feb.01.ARK."
7.  DC-6250 Data cartridge labeled "Mar.01.ARK."
8.  DC-6250 Data cartridge labeled "Apr.01.ARK."
9.  DC-6250 Data cartridge labeled "May.01.ARK."
10. DC-6250 Data cartridge labeled "Jun.01.ARK."
11. DC-6250 Data cartridge labeled "Jul.01.ARK."
12. DC-6250 Data cartridge labeled "Aug.01.ARK."
13. DC-6250 Data cartridge labeled "Sep.01.ARK."
14. DC-6250 Data cartridge labeled "Oct.01.ARK."
15. DC-6250 Data cartridge labeled "Nov.01.ARK."
16. DC-6250 Data cartridge labeled "Dec.01.ARK."
17. DC-6250 Data cartridge labeled "Jan.02.ARK."
18. DC-6250 Data cartridge labeled "Feb.02.ARK."
19. DC-6250 Data cartridge labeled "Mar.02.ARK."
20. DC-6250 Data cartridge labeled "Apr.02.ARK."
21. DC-6250 Data cartridge labeled "May.02.ARK."
22. DC-6250 Data cartridge labeled "Jun.02.ARK."
23. DC-6250 Data cartridge labeled "Jul.02.ARK."
24. DC-6250 Data cartridge labeled "Sep.02.ARK."
25. DC-6250 Data cartridge labeled "Oct.02.ARK."
26. DC-6250 Data cartridge labeled "Jan.03.ARK."
27. DC-6250 Data cartridge labeled "Feb.03.ARK."
28. DC-6250 Data cartridge labeled "Mar.03.ARK."
29. DC-6250 Data cartridge labeled "Apr.03.ARK."
30. DC-6250 Data cartridge labeled "May.03.ARK."
31. DC-6250 Data cartridge labeled "Jun.03.ARK."
32. DC-6250 Data cartridge labeled "Jul.03.ARK."
33. DC-6250 Data cartridge labeled "Sep.03.ARK."
34. DC-6250 Data cartridge labeled "Oct.03.ARK."
35. DC-6250 Data cartridge labeled "Nov.03.ARK."
36. DC-6250 Data cartridge labeled "Jan.04.ARK."
37. DC-6250 Data cartridge labeled "Feb.04.ARK."

EXHIBIT () PAGE 155

# EXHIBIT G

EXHIBIT 11 PAGE 156

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit G**

EXHIBIT 11 PAGE 157

**quinn emanuel** trial lawyers | los angeles

May 3, 2005

BY FACSIMILE
AND U.S. MAIL

Diana M. Torres, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, California 90071-2899

MGA Entertainment, Inc. v. Mattel, Inc.

Dear Ms. Torres:

As Michael Zeller informed you previously by e-mail message, this firm is representing Mattel in the above-referenced case. Please direct all future communications regarding the case to us.

I write to respond to the April 16, 2005 letter that you sent to Robert Normile, Mattel's General Counsel. Mattel is aware of its obligations to preserve evidence and will comply with them. As discussed further below, Mattel likewise expects MGA to comply with its obligations to preserve evidence in this case and in the Bryant case.

Consistent with the allegations in MGA's complaint, Mattel has taken steps to ensure the preservation of all documents relating to the accused Mattel products and the third-party organizations referenced in the complaint. These consist of the following categories of documents, information or tangible items in its possession, custody or control:

1. The MY SCENE product line, including packaging and advertising relating thereto.
2. The WEE 3 FRIENDS product line, including packaging and advertising relating thereto.
3. "Acceleracers" products.

quinn emanuel urquhart oliver & hedges, llp

EXHIBIT 11 PAGE 158

4.     The "Little Mommy Potty Training Baby Doll."
5.     Communications regarding MGA to or from any of the following organizations: TIA, CARU or NPD.
6.     Communications with MGA.
7.     TIA voting procedures.

By agreeing to preserve the foregoing general categories of documents, Mattel does not concede that they are relevant or discoverable, and reserves any and all objections that may be asserted during the course of discovery and/or trial.

In your letter, MGA appears to ask that Mattel suspend all its long-standing, lawful policies regarding the preservation or destruction of documents. Mattel, as explained above, has taken steps to preserve those documents and information in the categories set forth above, consistent with its obligations under the applicable law. The expense and burden of suspending all Mattel's retention policies and preserving all documents, information or tangible items simply to ensure the preservation of irrelevant documents and information, as MGA is apparently demanding, would be prohibitively expensive and unjustified.

To take just one example, Mattel has investigated the cost of preserving in perpetuity each and every e-mail message in and out of its El Segundo Campus, the vast majority of which could have no conceivable bearing on MGA's claims. The cost of preserving these e-mail messages is hundreds of thousands of dollars a year; that cost goes up by multiples if the e-mail messages are to be retained in a format that reduces the difficulty in retrieving them. This cost would greatly increase if applied to all of Mattel's e-mail servers worldwide. Because each allegation in the complaint relates to past conduct and the vast majority of the e-mail messages traveling through Mattel's networks are neither relevant nor discoverable, Mattel will not agree to incur this significant cost on a going-forward or on-going basis.

Mattel has approximately 25,000 employees in 36 countries. These employees generate innumerable pages of documents on a daily basis, the vast majority of which have nothing to do with the allegations in the complaint. For example, approximately 80,000 e-mail messages alone are transmitted over Mattel's exchange servers each day. Mattel's policy, like that of other major U.S. companies, is to retain e-mail messages for 90 days on its servers. Although Mattel has taken steps to preserve e-mail messages within the categories described above, irrelevant and non-discoverable e-mail messages will be treated consistent with Mattel's existing policy, and there is no reasonable basis for insisting that Mattel's normal policies be changed.

We invite MGA's agreement, by May 4, 2005, that Mattel's retention of the above categories of documents is sufficient. If MGA does not so agree, then Mattel will seek guidance from the Court. In that connection, Mattel will also ask the Court to require MGA to bear the cost of its overbroad document retention requests.

Mattel likewise expects MGA to comply with its obligation to preserve relevant and discoverable documents, information or tangible things in its possession, custody or control. Mattel expects

EXHIBIT _11_ PAGE _159_

MGA not to deface, destroy or engage in destructive testing of evidence, including original drawings, as we believe MGA or Carter Bryant has done in the Bryant case. As MGA is well aware, its obligation to preserve evidence was triggered not by this letter, but by its reasonable anticipation that evidence in its possession, custody or control may be relevant or discoverable in anticipated litigation. Accordingly, we expect that MGA has not destroyed and will preserve on an ongoing basis any relevant or discoverable evidence relating to the allegations in the complaint. Please confirm, in writing, that MGA has preserved all relevant and discoverable evidence and that it will continue to comply with those obligations as these actions move forward.

If you have any questions regarding the foregoing, please do not hesitate to call.

Best regards,

Jon Corey

07975/065112.1

EXHIBIT 11 PAGE 160

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**PALM SPRINGS**
45-025 Manitou Drive, Suite 8
Indian Wells, CA 92210
(760) 345-4757
Facsimile: (760) 345-2414

**LOS ANGELES**
865 So. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**NEW YORK**
335 Madison Avenue, 17th Floor
New York, NY 10017-4611
(212) 702-8100
Facsimile: (212) 702-8200

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

DATE:   May 3, 2005

NUMBER OF PAGES, INCLUDING COVER: 4

TO/COMPANY:

| NAME | PHONE NO. | FAX NO. |
|------|-----------|---------|
| Diane M. Torres, Esq.<br>O'Melveny & Myers LLP<br>400 South Hope Street<br>Los Angeles, California 90017-2899 | 213-430-6000 | 213-430-6407 |

FROM:   Jon Corey

RE:

MESSAGE:



FAXED
MAY 0 3 2005

| CLIENT #:  7975 | ROUTE/<br>RETURN TO:  Samantha-6 | ☒ CONFIRM FAX<br>☒ INCLUDE CONF. REPORT |
|---|---|---|
| OPERATOR: | CONFIRMED?  ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible for delivery it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service.  Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3863 AS SOON AS POSSIBLE.

EXHIBIT 11 PAGE 161



Confirmation Report — Memory Send

Page         : 001
Date & Time: May-03-05  02:43pm
Line 1      : 2136240543
Line 2      :
Machine ID : QUINN EMANUEL

Job number          :   945

Date                :   May-03 02:41pm

To                  :   ☎76039☎07975☎12134306407

Number of pages     :   004

Start time          :   May-03 02:41pm

End time            :   May-03 02:43pm

Pages sent          :   004

Status              :   OK

Job number    : 945          *** SEND SUCCESSFUL ***

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

LOS ANGELES OFFICE

FACSIMILE TRANSMISSION

DATE:  MAY 3, 2005                                    NUMBER OF PAGES, INCLUDING COVER: 4

TO/COMPANY:

| NAME | PHONE NO. | FAX NO. |
|------|-----------|---------|
| Diane M. Torres, Esq. O'Melveny & Myers LLP 400 South Hope Street Los Angeles, California 90017-2899 | 213-430-6000 | 213-430-6407 |

FROM:  Jon Corey

RE:

MESSAGE:

| CLIENT #:  7975 | ROUTE/ RETURN TO:  Samantha | ☒ CONFIRM FAX ☒ INCLUDE CONF. REPORT |
|------|------|------|
| OPERATOR: | CONFIRMED?  ☐ NO  ☐ YES | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original message to us at the address above via the U.S. Postal Service.  Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3663 AS SOON AS POSSIBLE.

EXHIBIT 11 PAGE 161

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On September 10, 2007, I served true copies of the following document(s) described as: **AFFIDAVIT OF MICHAEL MOORE IN SUPPORT OF MATTEL, INC.'S OPPOSITION TO MGA ENTERTAINMENT, INC.'S MOTION FOR TERMINATING SANCTIONS DUE TO SPOLIATION OF EVIDENCE** on the parties in this action as follows:

Diana M. Torres, Esq.                          James W. Spertus, Esq.
**O'Melveny & Myers**                       **Law Offices Of James W. Spertus**
400 So. Hope Street                            12100 Wilshire Blvd., Suite 620
Los Angeles, CA  90071                       Los Angeles, CA 90025

[√] **BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 10, 2007, at Los Angeles, California.

_____
NOW LEGAL -- Dave Quintana

EXHIBIT 11 PAGE 162

1
2
3
4

## PROOF OF SERVICE

5       I am employed in the County of Los Angeles, State of California.  I am over the age of
eighteen years and not a party to the within action; my business address is 865 South Figueroa
6   Street, 10th Floor, Los Angeles, California.

7       On September 10, 2007, I served true copies of the following document(s) described as:
**AFFIDAVIT OF MICHAEL MOORE IN SUPPORT OF MATTEL, INC.'S OPPOSITION
8   TO MGA ENTERTAINMENT, INC.'S MOTION FOR TERMINATING SANCTIONS
DUE TO SPOLIATION OF EVIDENCE)** on the parties in this action as follows:

9

10      John W. Keker, Esq.                        Patricia Glaser, Esq.
        Michael H. Page, Esq.                      **Christensen, Glaser, Fink, Jacobs, Weil**
11      Christina M. Anderson, Esq.                **& Shapiro, LLP**
        **Keker & Van Nest, LLP**                  10250 Constellation Blvd., 19th Floor
12      710 Sansome Street                         Los Angeles, CA  90067
        San Francisco, CA 94111
13

14

15   [√] **BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I
16   deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with
     postage thereon fully prepaid.
17

18      Executed on September 10, 2007, at Los Angeles, California.

19
20
21
22      _____
        Johanna Lopez
23
24
25
26
27
28   EXHIBIT _11_ PAGE _163_

**Exhibit 12**

CONFIDENTIAL - ATTORNEYS' EYES ~LY

1          UNITED STATES DISTRICT COURT

2         CENTRAL DISTRICT OF CALIFORNIA

3                EASTERN DIVISION                Certified Copy

4    ------------------------------

5    MATTEL, INC., a Delaware             )

6    Corporation,                         )

7                  Plaintiff,             )

8                  vs.                    ) No. CV 04-9059 NM

9    CARTER BRYANT, an individual;        )    (RNBx)

10   and DOES 1 through 10,               ) VOLUME III

11   Inclusive,                           )

12                  Defendants.           )

13   ------------------------------)

14   (COMPLETE CAPTION ON NEXT PAGE.)

15

16        CONFIDENTIAL - ATTORNEYS' EYES ONLY

17

18   Continued Videotaped 30(b)(6) Deposition

19   of FRED T. KAWASHIMA, taken at 400 South

20   Hope Street, Los Angeles, California,

21   Commencing at 1:52 P.M., Thursday,

22   September 13, 2007, before Wendy S.

23   Schreiber, CSR No. 3558, RPR, CLR.

24

25   PAGES 518 - 675

518

EXHIBIT 12 PAGE 164

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1    APPEARANCES OF COUNSEL:

2

3       FOR THE PLAINTIFF:

4

5          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

6          BY:  JON COREY, ESQ.

7          865 South Figueroa Street, Tenth Floor

8          Los Angeles, California 90017

9          (213) 443-3000

10         joncorey@quinnemanuel.com

11

12                    -AND-

13

14         MATTEL, INC.

15         BY:  MICHAEL MOORE, ESQ.

16         333 Continental Boulevard

17         El Segundo, California 90245-5012

18         (310) 252-2000

19         michael.moore@mattel.com

20         (NOT PRESENT)

21

22

23

24

25
```
                                                                519

EXHIBIT 12 PAGE 145

CONFIDENTIAL - ATTORNEYS' EYES  LY

```
 1    APPEARANCES OF COUNSEL (CONTINUED):

 2

 3       FOR THE DEFENDANT AND COUNTERCLAIMANT

 4       CARTER BRYANT:

 5

 6          KEKER & VAN NEST LLP

 7          710 Sansome Street

 8          San Francisco, California 94111-1704

 9          (415) 391-5400

10          (NOT PRESENT)

11

12     FOR DEFENDANT MGA ENTERTAINMENT, INC.:

13

14          O'MELVENY & MYERS LLP

15          BY:  DIANA M. TORRES, ESQ.

16               JAMES PAUL JENAL, ESQ.

17          400 South Hope Street

18          Los Angeles, California 90071-2899

19          (213) 430-6000

20          jjenal@omm.com

21

22     ALSO PRESENT:

23

24          VIDEO OPERATOR - MIKE RUBIO

25
                                              520
```

EXHIBIT 12 PAGE 166

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   LOS ANGELES, CALIFORNIA; THURSDAY, SEPTEMBER 13, 2007

 2                   1:52 P.M.

 3                 -      -      -

 4

 5         VIDEO OPERATOR:  We're on the record.  I am      01:51PM

 6   Mike Rubio, your videographer, and I represent

 7   Veritext LLC in Los Angeles, California.  I'm a

 8   notary public.  I'm not financially interested in

 9   this action nor am I a relative or employee of any

10   attorney or any of the parties.                       01:51PM

11         The date is September 13th, 2007.  The time

12   is 1:52 p.m.  This deposition is taking place at the

13   offices of O'Melveny & Myers in Los Angeles,

14   California.

15         This is case No. CV 04-9059 NM entitled        01:52PM

16   Mattel versus Carter Bryant.  The deponent is

17   Mr. Fred Kawashima.  This is Volume 3.  This

18   deposition is being taken on behalf of the

19   defendant.  The court reporter is Ms. Wendy

20   Schreiber from Veritext LLC in Los Angeles,           01:52PM

21   California.

22         Counsel will now please introduce

23   themselves.

24         MS. TORRES:  Diana Torres, O'Melveny &

25   Myers, for MGA Entertainment, Inc.                    01:52PM
```

521

EXHIBIT 12 PAGE 147

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    MR. JENAL:  Jim Jenal also for MGA

2    Entertainment, Inc.

3    MR. COREY:  Jon Corey on behalf of Mattel.

4    Before we start I think to be clear

5    Mr. Kawashima is a designated Mattel employee.  I          01:53PM

6    think you read that it was Mr. Kawashima's

7    deposition.

8    (Whereupon Mr. Kawashima remains under

9    oath by the court reporter.)

10

11    EXAMINATION (CONTINUING)

12    BY MS. TORRES:

13    Q.   Good afternoon, Mr. Kawashima.

14    A.   Good afternoon.

15    Q.   You understand that this is a continuation          01:53PM

16    of your prior deposition, correct?

17    MR. COREY:  Of the topic that he was

18    designated on at the most immediately-preceding

19    deposition.

20    BY MS. TORRES:          01:53PM

21    Q.   With your counsel's clarification do you

22    understand that this is a continuation of the

23    preceding deposition on the topic on which you were

24    designated at that deposition?

25    A.   I do.          01:54PM

522

EXHIBIT 12 PAGE 168

**PAGES 556 THROUGH 665 OF THE DEPOSITION OF FRED T. KAWASHIMA (VOLUME III) IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Exhibit 12
Pages 169-192

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   STATE OF CALIFORNIA    ) ss:
 2   COUNTY OF LOS ANGELES )
 3
 4        I, WENDY S. SCHREIBER, CSR No. 3558, do
 5   hereby certify:
 6
 7        That the foregoing deposition of FRED T.
 8   KAWASHIMA was taken before me at the time and place
 9   therein set forth, at which time the witness was
10   placed under oath and was sworn by me to tell the
11   truth, the whole truth, and nothing but the truth;
12        That the testimony of the witness and all
13   objections made by counsel at the time of the
14   examination were recorded stenographically by me,
15   and were thereafter transcribed under my direction
16   and supervision, and that the foregoing pages
17   contain a full, true and accurate record of all
18   proceedings and testimony to the best of my skill
19   and ability.
20        I further certify that I am neither
21   counsel for any party in said action, nor am I
22   related to any party to said action, nor am I in any
23   way interested in the outcome thereof.
24
25
```

672

EXHIBIT 12 PAGE 193

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      IN WITNESS WHEREOF, I have subscribed my

2  name this 26th day of September, 2007.

3

4

5

6

7  WENDY S. SCHREIBER, CSR No. 3558, RPR

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

673

EXHIBIT 12 PAGE 194

**Exhibit  13**

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
2 | johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
5 | (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
6 | Los Angeles, California 90017-2543
Telephone: (213) 443-3000
7 | Facsimile: (213) 443-3100

8 | Attorneys for Plaintiff Mattel, Inc.

9

10 | UNITED STATES DISTRICT COURT

11 | CENTRAL DISTRICT OF CALIFORNIA

12 | EASTERN DIVISION

13 | CARTER BRYANT, an individual,

14 |                   Plaintiff,

15 |     vs.

16 | MATTEL, INC., a Delaware corporation,

17 |

18 |                   Defendant.

19 | AND CONSOLIDATED ACTIONS

20 |

21 |

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with Case Nos. CV 04-09059 and CV 05-02727

**DISCOVERY MATTER**

**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order of December 6, 2006]**

[~~PROPOSED~~] ORDER REGARDING MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF METADATA

22

23

24

25

26

27

28

07209/2345470.29/234173
2.1

1-9

EXHIBIT 13 PAGE 195

[PROPOSED] ORDER

[Proposed] Order

1

2        The Court having received the motion of Mattel, Inc. ("Mattel") to compel the

3   production of metadata for specified emails by MGA Entertainment, Inc. ("MGA"),

4   which was filed and served on November 21, 2007 (the "Motion"), and having

5   considered the Motion and all papers in support and opposition thereto, the Court

6   hereby ORDERS:

7        1.      The Motion is GRANTED IN PART.  MGA shall produce to Mattel,

8   on or before January 10, 2008, the approximately 80 native format emails requested

9   by Mattel in its Motion and identified by MGA at argument on January 3, 2008 as

10  the emails MGA's vendors have been able to locate in native electronic format to

11  date.  The emails shall be produced in their native electronic format sufficient to

12  show from where the email was sent and to where the email traveled.

13       2.      Mattel's Motion as to the remaining emails is DENIED WITHOUT

14  PREJUDICE because Mattel need not prove that each and every email

15  communication crossed commerce lines.

16       3.      The Court finds that monetary sanctions against MGA are appropriate

17  and that some shifting of the costs of this production is also appropriate.  However,

18  in lieu of awarding monetary sanctions against MGA, the Court ORDERS that there

19  shall be no cost shifting associated with this Motion and/or the production that is

20  ordered herein.

21       IT IS SO ORDERED.

22

23

24  DATED: January 9, 2008          By

25                                       Hon. Edward A. Infante (Ret.)
                                         Special Discovery Master

26

27

28

07209/2345470.20720/13
45470.2345470.107209/13
45470.17209/2341732.1

-1-

EXHIBIT 13 PAGE 190

[PROPOSED] ORDER

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on January 9, 2008, I served the attached: (1) ORDER REGARDING MATTEL, INC.'S MOTION TO ENFORCE COURT'S AUGUST 20, 2007 ORDER REQUIRING CARTER BRYANT TO ANSWER REQUESTS FOR ADMISSION; and (2) ORDER REGARDING MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF METADATA in the within action by email addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| Matthew M. Werdegar, Esq. | Keker & Van Nest | mwerdegar@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| Audrey Walton-Hadlock, Esq. | Keker & Van Nest | awalton-hadlock@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Thomas J. Nolan, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tnolan@skadden.com |
| Raoul D. Kennedy, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | rkennedy@skadden.com |
| Amy S. Park, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | apark@skadden.com |
| Harriet S. Posner, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | hposner@skadden.com |
| Carl Alan Roth, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | croth@skadden.com |
| Timothy A. Miller, Esq. | Skadden, Arps, Slate, Meagher & Flom LLP | tmiller@skadden.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on January 9, 2008, at San Francisco, California.

_____
Sandra Chan

EXHIBIT 13 PAGE 197

# Miscellaneous Filings (Other Documents)

2:04-cv-09049-SGL-RNB Carter Bryant v. Mattel Inc
(RNBx), AO279, DISCOVERY, RELATED-G

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### Notice of Electronic Filing

The following transaction was entered by Proctor, Brett on 1/10/2008 at 11:35 AM PST and filed on 1/10/2008

**Case Name:**  Carter Bryant v. Mattel Inc
**Case Number:**  2:04-cv-9049
**Filer:**  Mattel Inc
**Document Number:** 1506

**Docket Text:**
Order Regarding Mattel, Inc.'s Motion to Compel Production of Metadata filed by Defendant Mattel Inc re: MOTION to Compel Metadata MOTION to Produce Metadata[1138] (Proctor, Brett)

**2:04-cv-9049 Notice has been electronically mailed to:**

Timothy L Alger    timalger@quinnemanuel.com

Christa M Anderson    canderson@kvn.com

Michelle M Campana    michelle.campana@skadden.com

Jon D Corey    joncorey@quinnemanuel.com

Alexander H Cote    acote@obsklaw.com

Leah Chava Gershon    leah@spertuslaw.com

Alan Neil Goldberg    agoldberg@sgattys.com

Emil W Herich    eherich@kmwlaw.com

John W Keker    jkeker@kvn.com

Raoul D Kennedy    rkennedy@skadden.com

Alisa Morgenthaler Lever    amorgenthaler@chrisglase.com

Nathan Meyer    nmeyer@kayescholer.com, dclow@kayescholer.com

Cyrus S Naim    cyrusnaim@quinnemanuel.com

EXHIBIT 12 PAGE 198

Thomas J Nolan    tnolan@skadden.com

Mark E Overland    moverland@obsklaw.com

Michael H Page    mhp@kvn.com

Brett Dylan Proctor    dylanproctor@quinnemanuel.com

John B Quinn    johnquinn@quinnemanuel.com

David C Scheper    dscheper@obsklaw.com, feseroma@obsklaw.com

Kien C Tiet    ktiet@sgattys.com

John Elliot Trinidad    jtrinidad@kvn.com, efiling@kvn.com, yjayasuriya@kvn.com

Audrey Walton-Hadlock    awaltonhadlock@kvn.com

Matthew M Werdegar    mmw@kvn.com

Michael T Zeller    michaelzeller@quinnemanuel.com

**2:04-cv-9049 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Kenneth A Plevan
Skadden Arps Slate Meagher & Flom
4 Times Sq
New York, NY 10036-6522

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\laurakinsey\Desktop\Order re Metadata.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=1/10/2008] [FileNumber=5179148-0]
[5bf3b923060ecd5eeed87063cb36cb16d30354a53076d14842f4747dc93f1d6c8203
2ea82378bae7fd2fef0e47ca1a6b1cd94e302415cd74ef2207ed3f7e52c1]]

EXHIBIT 13 PAGE 199

**Exhibit 14**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an
individual,

        Plaintiff,

    vs.                  No. CV 04-9049 SGL
                          (RNBx)

MATTEL, INC., a Delaware
corporation,

        Defendants.

                            CERTIFIED
                            COPY

Consolidated with MATTEL, INC. v.
BRYANT and MGA ENTERTAINMENT, INC.
v. MATTEL, INC.

HEARING BEFORE THE HONORABLE EDWARD A. INFANTE

San Francisco, California

Thursday, January 3, 2008

Reported by:
DANA M. FREED
CSR No. 10602

JOB No. 79867

EXHIBIT 14 PAGE 200

1                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA
2                          EASTERN DIVISION

3    CARTER BRYANT, an
     individual,
4
              Plaintiff,
5
          vs.                        No. CV 04-9049 SGL
6                                    (RNBx)
     MATTEL, INC., a Delaware
7    corporation,

8             Defendants.

9

10   _____

     Consolidated with MATTEL, INC. v.
11   BRYANT and MGA ENTERTAINMENT, INC.
     v. MATTEL, INC.
12   _____

13

14            Hearing before the Honorable EDWARD A. INFANTE,

15   at JAMS, Two Embarcadero Center, Suite 1500, San Francisco,

16   California, beginning at 1:30 p.m. and ending at 4:05 p.m.

17   on Thursday, January 3, 2008, before DANA M. FREED,

18   Certified Shorthand Reporter No. 10602.

19

20

21

22

23

24

25

EXHIBIT  14 PAGE  20  SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

HEARING                                    01/03/08

```
 1    APPEARANCES:

 2

 3    For the Plaintiff CARTER BRYANT, an individual:

 4         KEKER & VAN NEST LLP
           BY:   MATTHEW M. WERDEGAR
 5               JOHN TRINIDAD
           Attorneys at Law
 6         710 Sansome Street
           San Francisco, California 94111-1704
 7         415.391.5400

 8    For the Defendant MATTEL, INC., a Delaware
      corporation:
 9
           QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
10         BY:   JON COREY
                 TIMOTHY L. ALGER
11               B. DYLAN PROCTOR
           Attorneys at Law
12         865 Figueroa Street, 10th Floor
           Los Angeles, California 90017
13         213.443.3000

14    For the Defendants MGA Entertainment, Inc., MGA
      Entertainment (HK) Limited, and Isaac Larian:
15
           SKADDEN ARPS SLATE MEAGHER & FLOM LLP
16         BY:   RAOUL D. KENNEDY
                 AMY S. PARK
17         Attorneys at Law
           Four Embarcadero Center, 38th Floor
18         San Francisco, California 94111-5974
           415.984.6400
19
      Also Present:
20
           MAUREEN McCUAIG
21

22

23

24

25
```

EXHIBIT 14 PAGE 202 — SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

3

```
 1    San Francisco, California, Thursday, January 3, 2008

 2                 1:30 p.m. - 4:05 p.m.

 3

 4         JUDGE INFANTE:  This is a hearing on various

 5    motions to compel discovery.  I'd like counsel to

 6    enter their appearances, please, first from Mattel.

 7         MR. COREY:  Jon Corey on behalf of Mattel.

 8         MR. ALGER:  Timothy Alger on behalf of

 9    Mattel.

10         MR. PROCTOR:  B. Dylan Proctor for Mattel.

11         MR. TRINIDAD:  John Trinidad for Carter Bryant.

12         MR. WERDEGAR:  Mathew Werdegar for Carter Bryant.

13         MS. PARK:  Amy Park for MGM Industries and

14    Isaac Larian.

15         MR. KENNEDY:  Raoul Kennedy also for the MGA

16    entities and Mr. Larian.

17         JUDGE INFANTE:  There are several motions

18    that have been filed since our last hearing date.

19    There was one motion that was not heard at our last

20    hearing date, which was MGA's motion with respect to

21    30(b)(6) bandying of witnesses.  I indicated I was not

22    prepared to hear that motion, because the day before

23    the hearing there was a letter indicating the parties

24    were still attempting to meet and confer regarding

25    that motion.  I would like to begin by finding out
```

EXHIBIT 14 PAGE 203

1   whether that motion still needs resolution.

2         MR. KENNEDY:  It does, Your Honor.

3         JUDGE INFANTE:  I'm prepared to hear it and

4   decide it today.

5         With respect to other motions, I believe that

6   was the only motion from that hearing date that is

7   undecided.  I do recall that one motion you were

8   directed to rebrief --

9         MR. COREY:  That's correct, Your Honor ~ --

10        JUDGE INFANTE:  -- which I have received.

11        I don't believe there are any other open

12  motions from that hearing date.  Am I correct on that?

13        MR. COREY:  I believe that's correct,

14  Your Honor.

15        JUDGE INFANTE:  So that motion, MGA, you have

16  a right to bring it, to argue it, if you wish, today

17  or you can submit it on the papers.  I'm prepared to

18  rule on it.

19        With respect to all the other motions, there

20  have been many motions filed since, or that were in

21  the process of being filed at the time of our last

22  hearing.  And I have a list of them.  I'd like to give

23  you a hearing on all the motions on which the briefing

24  is completed.  And I would give you the opportunity to

25  argue them in whatever order you wish to.  MGA has

EXHIBIT 14 PAGE 204

1    a number of motions and so does Mattel.

2            I do have a list that Ms. Chan prepared.   If

3    we wanted to go chronologically in that list, we could

4    do that.   For example, on her list we have Motion No.

5    12, Mattel's Motion to Compel Production of Metadata.

6    We could begin with that one, if you would like.

7            MR. COREY:   That's fine with Mattel,

8    Your Honor.

9            JUDGE INFANTE:   You are free to argue these

10   motions or submit them, as you wish.   It's your

11   opportunity to be heard.

12           MR. PROCTOR:   Thank you, Your Honor.   Dylan

13   Proctor for Mattel again.

14           This motion presents what we think are very

15   straightforward issues.   Mattel has requested the

16   metadata for 163 e-mails, all of which are alleged

17   RICO predicate acts of wire fraud and are a part of

18   Mattel's pleading, these e-mails are attached to

19   Mattel's counterclaims in this case.

20           The metadata that Mattel is seeking, has been

21   seeking from MGA for a long time now, is information

22   or should have information that's not reflected on the

23   face of the documents.   And that could in and of

24   itself prove an element to Mattel's claim's effect on

25   interstate commerce.

EXHIBIT 14 PAGE 205

1          And for that reason, after we provided this

2     explanation, MGA repeatedly promised to provide this

3     information, to provide the metadata.  But it never

4     came.  And instead, we kept getting strung along with

5     promises which were not satisfied.  And so

6     three months after we requested a meet and confer and

7     requested metadata, and after MGA had effectively gone

8     full circle and was taking the position that they had

9     taken months earlier, which was they need to

10    investigate what's involved in gathering the metadata,

11    we filed a motion.

12         .    And then in its opposition for the first

13    time, MGA said, Mattel's not entitled to the

14    information.  That was the first time I ever heard

15    anyone from MGA say that.  And that assertion is

16    simply inconsistent with the conduct of the parties

17    and all the other facts surrounding the situation.

18    The parties have an agreement about metadata.  MGA has

19    requested metadata from Mattel and Mattel has provided

20    it.  And the case they cite, the Kentucky Speedway

21    case, which MGA heavily relies on, in fact says

22    metadata can be relevant and produceable when

23    specifically requested by Bates number, which is what

24    Mattel did.  And that's MGA's authority saying that.

25    And so I think that information is clearly critical.

EXHIBIT 14 PAGE 206

1    There is no other way of adequately getting it and MGA

2    doesn't deny that it possesses it, so I believe MGA

3    should be ordered to produce all of the e-mails in

4    native format with full e-mail header information.

5            JUDGE INFANTE:   There were about 163 e-mails

6    that you had specified; is that correct?

7            MR. PROCTOR:   Correct.

8            JUDGE INFANTE:   The relevance that you stated

9    in your papers is that the information pertaining to

10   where the e-mail was sent from, how it traveled, who

11   the recipients were, where they were located is

12   relevant to your interstate or foreign commerce burden

13   of proof under your RICO claim; is that correct?

14           MR. PROCTOR:   Correct.

15           JUDGE INFANTE:   Any other relevance?

16           MR. PROCTOR:   No.   The relevance of the

17   metadata, the asserted relevance is strictly

18   establishing the elements of effect on interstate

19   commerce.

20           JUDGE INFANTE:   That's right as to these

21   particular e-mails.

22           MR. PROCTOR:   Correct.

23           JUDGE INFANTE:   So my question to you is

24   this, yes, you have that burden of proof which you

25   didn't have at the pleading stage, why do you need all

1   163?  Won't 30 or 40 or 50 do to prove interstate

2   commerce?

3         MR. PROCTOR:  Well, MGA has challenged, MGA

4   has challenged at the motion to dismiss phase the

5   culpability to prove a pattern of racketeering

6   activity.  We believe the law is clear that a pattern

7   exists if there are only two or more predicate acts.

8   But MGA challenged, as to a number of these e-mails

9   specifically, whether these e-mails could in fact

10  constitute predicate acts for other reasons.

11  For example, because some post-date the close of

12  Carter Bryant's employment.  And so we have -- we have

13  alleged about, you know, 200, roughly, predicate acts.

14  We're entitled, I believe, to try to obtain proof as

15  to all of these predicate acts.  MGA is undoubtedly on

16  summary judgment --

17        JUDGE INFANTE:  But on the question of

18  interstate commerce, doesn't seem to me you need to

19  prove each and every communication crossed commerce

20  lines.

21        MR. PROCTOR:  I would agree that we do not

22  bear the burden of proving all of them crossed

23  commerce lines, for the simple reason that I don't

24  think we have to prove 200 predicate acts.

25        JUDGE INFANTE:  That's right.

EXHIBIT 14 PAGE 208

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

1        MR. PROCTOR:  But we have alleged 200

2   predicate acts.  And I believe we're entitled to

3   discovery to attempt to prove that, because MGA is

4   undoubtedly going to attack all of those.

5        JUDGE INFANTE:  Burden is an issue here.  Are

6   you taking the position that you must have all?

7        MR. PROCTOR:  I'm taking the position that

8   I believe that we are entitled to all, since it is

9   critical information that goes directly to the --

10        JUDGE INFANTE:  You're never entitled to all

11   under the Federal Rules of Civil Procedure, because

12   that would read out of the rules, Rules 26(b)(2).

13        MR. PROCTOR:  I do understand that.  However,

14   this is not -- this is not, I would submit, a

15   situation where we are seeking all metadata for an

16   overbroad set of categories.  For example, each of the

17   cases cited by MGA involve a request for metadata for

18   all documents produced in the case.  Here MGA has

19   produced 3.4 million documents or approximately.

20   We're not seeking metadata for those documents, we're

21   seeking metadata for 163 alleged predicate acts.

22        JUDGE INFANTE:  Only for the purpose of

23   proving interstate commerce or foreign commerce.

24        MR. PROCTOR:  Correct.  However, I believe

25   MGA's position will be that that has to be proven for

EXHIBIT __14__ PAGE __209__

1   each and every predicate act.  That is the position

2   which they have taken previously.

3           JUDGE INFANTE:  That's not correct.

4           Okay.  Anything further?

5           MR. PROCTOR:  No, Your Honor.

6           JUDGE INFANTE:  Okay.  You may proceed.

7           MR. KENNEDY:  Thank you, Your Honor.  And let

8   me not try to reconstruct what's happened at all of

9   the meet and confers.  I don't think we need to get

10  into that.  I'd like to offer a very pragmatic

11  suggestion or proposal.

12          We asserted the particularized need because

13  of this demand for all 163.  The 163 fall into

14  three buckets, Your Honor.  One consists of about

15  20 documents that our vendor EED was able to retrieve

16  fairly readily.  And as we explained in the papers, we

17  offered those up before.

18          I would offer those up again now.  We've been

19  through them and there may be, and I'm sure there are,

20  people who are smarter about this than I am.  But of

21  those 20, there's only one that has anything that

22  would help show interstate commerce.  The metadata

23  there shows that it was once on a Japanese server.

24          On the other hand, the e-mail itself says,

25  I'm transmitting a document from a guy in Tokyo.  So

EXHIBIT 14 PAGE 210                                    11

1    it wasn't really too revolutionary.  But we would be

2    willing to offer those up.

3            In addition, we've gone -- there's a second

4    bucket, I would call them the Stroh's, like the beer,

5    for another vendor.  And we've paid $12,000 and

6    they've retrieved 60 other metadatas or metadatum,

7    whenever the plural is.  And we would also be willing

8    to offer those up, and we can argue about whether we

9    ought to get half our cost back for having done that

10   or not.

11           We have not been through those completely to

12   know how beneficial they are going to be.  But in any

13   event, there are approximately 80, about half of them

14   that are available could be turned over, as I

15   understand it, by Monday or Tuesday of next week.

16           As to the third bucket, at least at this

17   point, we have not been able to come up with any

18   readily available, quickly affordable, even in the

19   sense of $12,000 for 60 of them, method of doing it.

20   And I would propose that the Court defer any ruling on

21   the other 100 until Mattel has had a chance to go

22   through the 80 and come back and show just what kind

23   of a cost benefit analysis is coming out and how much

24   more they're going to need with regard to this issue.

25           JUDGE INFANTE:  Well, there's also a motion

                                                                    12

1    for costs of this motion, namely monetary sanctions,

2    in which they point out that MGA's prior counsel

3    agreed to produce this information on multiple

4    occasions and never produced it.

5              MR. KENNEDY:  I'm not in a position to refute

6    their side of that story.  As a mitigating factor,

7    at least since we've been in the case, we've said

8    we've got the 20 that we've retrieved.  Why don't you

9    go take a look at those before you go file a motion to

10   compel?

11             And as so often happens in this case, they

12   decide to punt on second down and go ahead and file a

13   motion without even looking at the 20.  But beyond

14   that, I'm prepared to submit, Your Honor.

15             JUDGE INFANTE:  Thank you.

16             Mr. Proctor.

17             MR. PROCTOR:  Thank you, Judge.  As to that

18   last point, we couldn't look at the 20, because they

19   never came.  To this day, they still haven't come.

20   All the e-mails, which MGA has said in fact are

21   readily available and they could just send over to us,

22   have never been delivered.

23             The only other point I would add is, under

24   Rule 26B2B, there are new provisions, limitations on

25   electronically stored information.

EXHIBIT 14 PAGE 212

13

1          JUDGE INFANTE:  That's really what I was

2     referring to.  This multifactor test which the Court

3     should balance, and that's why I challenged your

4     absolute statement.

5          MR. PROCTOR:  And I appreciate that, Judge.

6          The rule in my view makes clear that even if

7     MGA establishes undue burden -- and I'm not sure they

8     have, I don't believe they have -- but even if MGA

9     does establish undue burden, Mattel only need show

10    good cause, good cause for the production of the

11    discovery.  And in this case what I would suggest is

12    when it comes time for summary judgment or it comes

13    time for post-trial motions, or whatever the case may

14    be, MGA is clearly going to attack Mattel's burden of

15    proof in any way it can.  And it has previously

16    attempted to assert that.  I believe well more than

17    half of these e-mails are simply irrelevant, because

18    they post-date Carter Bryant's employment.

19         I don't know which are the 80 e-mails which

20    I'm now hearing we can have.  I don't know what the

21    time frame is of these e-mails.  But given these are

22    all claimed, they're all alleged predicate acts, I do

23    believe that we should be granted an order compelling

24    metadata as to all of them.

25         JUDGE INFANTE:  Okay.  Thank you very much.

EXHIBIT 14 PAGE 213

1          I have considered the motion.   The

2     opposition, the reply, and your comments here this

3     morning.   I've applied the -- the rules, specifically

4     Rule 26, as well as Rule 26B and the balancing

5     required under that rule, as well as Rule 34.

6          And after balancing all considerations,

7     I grant your motion in part.   MGA shall produce 80 of

8     the specified e-mails that have been requested, that's

9     8-0, in their native electronic format sufficient to

10    show from where the e-mail was sent and to where the

11    e-mail was sent.

12         The order shall be complied with by

13    January 10th.   The Court has discretion to shift some

14    of the costs to the discovering party.   I've

15    considered that.   Many decisions the courts shift cost

16    at least partially or in whole.

17         I have decided, in lieu of awarding monetary

18    sanctions in your favor, I am leaving the costs to the

19    producing party and not shifting any costs,

20    whatsoever.

21         The motion is denied as to the full 163

22    specified e-mails without prejudice.   And those

23    80 e-mails are e-mails selected by the responding

24    party.   You've identified 20 and 60, that totals 80.

25         Any questions regarding the ruling?

EXHIBIT 14 PAGE 214

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

1    All right.  Mr. Proctor, prepare the order.

2              MR. KENNEDY:  Your Honor, just one point.

3    The 20 and the 80 are approximations.  I think one may

4    be 22, one may be 76.

5              JUDGE INFANTE:  That's fine.

6              MR. KENNEDY:  It is approximately.  But we

7    will produce all them.  And if there happen to be more

8    than 80, they will get more than 80.  But it's in that

9    range.

10             JUDGE INFANTE:  Very good.

11             As you can see, I'm not going to give you the

12   luxury of a written lengthy opinion on each discovery

13   dispute, because your discovery cutoff date is looming

14   and there are many, many motions to be resolved.  So

15   I'm going to try to resolve them correctly and fairly

16   but without a lot of writing.

17             Prepare the order, Mr. Proctor.

18             MR. PROCTOR:  I will.

19             JUDGE INFANTE:  The next motion is Mattel's

20   motion to enforce the Court's August 20th, 2007 Order

21   Requiring Carter Bryant to Answer Requests For

22   Admissions.  This motion was filed November 27th.  The

23   opposition was received December 4th.  The reply was

24   received December 7th.

25             You may argue your motion.

EXHIBIT 14 PAGE 215 SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

1          I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4    before me at the time and place herein set forth; that

5    any witnesses in the foregoing proceedings, prior to

6    testifying, were duly sworn; that a record of the

7    proceedings was made by me using machine shorthand

8    which was thereafter transcribed under my direction;

9    that the foregoing transcript is a true record of the

10   testimony given.

11         Further, that if the foregoing pertains to

12   the original transcript of a deposition in a Federal

13   Case, before completion of the proceedings, review of

14   the transcript [   ] was [   ] was not requested.

15         I further certify I am neither financially

16   interested in the action nor a relative or employee

17   of any attorney or party to this action.

18         IN WITNESS WHEREOF, I have this date

19   subscribed my name.

20

21   Dated:   JAN - 4 2008

22

23

      DANA M. FREED

24         CSR No. 10602

25

EXHIBIT 14 PAGE 216

**Exhibit 15**

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2       (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3       (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4       (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
6   Facsimile:   (213) 443-3100

7   Attorneys for Mattel, Inc.

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                          EASTERN DIVISION

12   | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |

CARTER BRYANT, an individual,

              Plaintiff,

      vs.

MATTEL, INC., a Delaware
corporation,

              Defendant.

_____

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)
Consolidated with
Case Nos. CV 04-09059 & CV 05-2727

**DISCOVERY MATTER**

**[To Be Heard By Hon. Edward
Infante (Ret.) Pursuant To Order Of
December 6, 2006]**

DECLARATION OF CHRISTOPHER
TAYBACK IN SUPPORT OF
MATTEL, INC.'S MOTION TO
COMPEL RESPONSES TO
INTERROGATORIES (NOS. 27, 28,
29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39,
40, 41, 42, 43, 44, 46, 47, 48, 49 AND
50) BY THE MGA PARTIES

Date:   TBD
Time:   TBD
Place:  TBD

**Phase 1**
Discovery Cut-Off:   January 28, 2008
Pre-Trial Conference: May 5, 2008
Trial Date:          May 27, 2008

EXHIBIT 15 PAGE 217

1-7

7209/2342985.1

DECLARATION OF CHRISTOPHER TAYBACK

<u>DECLARATION OF CHRISTOPHER TAYBACK</u>

I, Christopher Tayback, declare as follows:

1.      I am a member of the bar of the State of California, admitted to practice in the Central District of California and elsewhere, and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. ("Mattel"). Except where otherwise indicated, I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.      MGA represents to the Court in its opposition that Mattel "still has not produced documents from its Zeus computer system, but instead has delayed any meaningful meet and confer on a search of that system." I submit this declaration to set the record straight.

3.      First, Mattel has indeed produced documents from Zeus, and has so advised MGA. In at least one phone conversation with MGA's counsel, Robert Herrington, I personally explained that Mattel had reviewed places where it believed there might be responsive evidence, including Zeus. I further explained to Mr. Herrington that where Mattel has located responsive and non-privileged documents from Zeus, it has produced them. I have advised MGA of Mattel's Zeus searches in writing on at least one occasion. Attached as Exhibit 1 is a true and correct copy of an email I sent Robert Herrington on January 4, 2008.

4.      Mattel also has not "delayed" meeting and conferring about further Zeus searches in any manner. Immediately after this Court ordered the parties to meet and confer regarding parameters to further search the Zeus system, on September 12, 2007, I diligently pursued the meet and confer but MGA refused. On September 14, I called MGA's counsel, Jennifer Glad, to schedule a specific date and time to meet and confer on the Zeus issues. Ms. Glad confirmed that she was the person responsible for discussing the Zeus issues on behalf of MGA and said that she would call back on Monday; she did not.

EXHIBIT 15 PAGE 218

DECLARATION OF CHRISTOPHER TAYBACK

5.      Three days later, on September 17, 2007, I sent Ms. Glad an email and left her a voicemail seeking to confirm a date and time to meet and confer on the Zeus issues.  Attached hereto as Exhibit 2 is a true and correct copy of an email I sent to Ms. Glad on September 17, 2007.  No one on behalf of MGA ever responded.

6.      Two months later, at a meet and confer between Mattel's counsel and MGA's new counsel on November 21, 2007, I am informed and believe that the parties discussed possible search parameters for Zeus at length, including the unfeasibility of conducting keyword searches for some files because many Zeus files are non-text, graphical files.  My partner Michael Zeller offered this explanation.  Thereafter, for over two weeks, MGA's counsel did nothing to follow up with Mattel's counsel regarding Zeus.

7.      Then, on Friday December 7, MGA's counsel sent a letter asking to schedule a meet and confer regarding Zeus.  Attached as Exhibit 3 is a true and correct copy of a letter my partner, Timothy Alger, received from Robert Herrington, counsel for MGA, dated December 7, 2007.

8.      Mattel promptly responded and agreed to be available on December 14, 2007, the earliest of the dates proposed, and the parties did in fact discuss Zeus search issues on Friday, December 14, 2007.  In that conversation, for the first time, MGA proposed that Mattel explore the feasibility of a listing of the directories within Zeus for a limited date range.

9.      Mattel's counsel committed to explore and resolve that question within a week, and did so.  Attached as Exhibit 4 is a true and correct copy of an email I sent to Robert Herrington on December 15, 2007.

10.      Exactly one week later, Mattel confirmed that such a directory listing was feasible for the date range described by MGA, and offered to provide a directory listing.  Attached as Exhibit 5 is a true and correct copy of an email I sent to Robert Herrington on December 21, 2007.  Thereafter, the parties negotiated the

EXHIBIT 15 PAGE 219      -2-

1 | scope and agreed upon timing for the production of such a voluminous listing of
2 | directories, and agreed that such a listing would be produced in early January 2008.
3 |   I declare under penalty of perjury under the laws of the United States of
4 | America that the foregoing is true and correct.
5 |   Executed on January 7, 2008 at Los Angeles, California.
6 |
7 |
8 | Christopher Tayback
9 |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 | EXHIBIT 15 PAGE 220

7209/2342985.1

-3-

DECLARATION OF CHRISTOPHER TAYBACK

EXHIBIT 15 PAGE 221

**EXHIBIT 1**

---

**From:**   Christopher Tayback
**Sent:**   Friday, January 04, 2008 9:20 AM
**To:**     'Herrington, Robert J'
**Cc:**     Timothy Alger; 'Eckles, Paul M (NYC)'; Christopher Tayback
**Subject:** RE: Follow-up to today's telephone call

Robert--

You seem to have changed what started out as a meet and confer on several issues to a series of interrogatories by email.

I believe I have answered several times now, on the telephone and by email, the "simple" question you claim to be asking. As I said to you by email on December 26: ". . . Mattel has searched the various electronic media in its possession which were likely to have responsive documents. That includes searches of some data retrieved from back-up tapes and some data retrieved from Zeus. What we have not done is incur the substantial time and expense associated with searching locations where we have no reason to believe responsive documents are located. If you have reason to believe some specific relevant document (or documents) is in Mattel's possession, please let us know. If you have information as to where such a document is located within the various data compilations maintained by Mattel, please say so and we will focus our efforts there."

You have not done so. Instead, you are asking whether Mattel has "searched" virtually every data compilation in existence for potentially responsive documents. As I have said to you, Mattel has not searched every document, or every data compilation, in the off-chance of finding something relevant. As you know, we are talking about lots of different systems, tapes, devices, storage mechanisms, etc., that span over a decade of data. You clearly want a short "sound bite" describing what Mattel did or did not do to search for documents. In fact, the way you described it to me on the telephone was that you were looking for some "categorical exclusion" of what, if anything, Mattel did not search. As I told you then, and reiterate now, the scope of what Mattel has done to search for documents involves a huge amount and a wide variety of data, and is not susceptible to a "categorical" statement or a sound bite. Mattel has properly looked where it has reason to believe it will find non-privileged, relevant documents, but not in places where it has no reasonable belief that it will find such documents. So, when you ask whether Mattel has searched the "backup tapes identified in Mr. Moore's [September 10, 2007] affidavit," you are expressly referring to his testimony that stated that Mattel preserved "in excess of 4,000 backup tapes containing hundreds of terabytes of data." (Paragraph 27). I told you myself, several times, that Mattel has not, and will not, restore every backup tape. However, I told you, if there was some specific document, or custodian, or location where some specific relevant document would likely be located, we could discuss how to obtain such a document (and at whose cost).

Indeed, I was not the first person to advise MGA of this fact. It has been discussed between counsel several times in the life of this case, and Mattel's counsel told the Court precisely this. And, we have offered to MGA on several occasions (in writing, on the record and orally) the Zeus backup tapes if MGA would prefer to search them itself.

In any event, you are asking now sweeping questions about whether Mattel searched any of dozens of different data sources, including over 4,000 backup tapes. Those are questions properly asked as interrogatories (or depositions) in my opinion. In fact both parties have asked similar questions in

discovery.

Mattel propounded an interrogatory (No. 47) asking MGA to identify the sources of information from which it collected documents. MGA objected and refused to respond (MGA's Response to Mattel's Interrogatory No. 47). That is the subject of a pending motion to compel. Why should Mattel answer "simple" questions--which you ask about dozens of different custodians and topics in sweeping, cursory fashion--when MGA refused to answer a similar interrogatory. I have to say, I think I showed more direct responsiveness in our few telephone conversations than it appears MGA has shown throughout the discovery process in this case. When you did ask me a discrete, answerable question--such as whether we had searched Lily Martinez's hard drive--I obtained the answer for you and gave it to you (the answer was "yes", though I don't think you liked that answer).

MGA has itself asked virtually the same question in the form of an interrogatory (No. 31)--signed by you, and propounded on December 4. I further cannot understand why you are asking me--in the guise of a "meet and confer"--to answer something that you know you just asked in the form of a discovery request.

You also say that you have received "conflicting" messages from Mattel. That is incorrect. As the support for your conclusion, you cite to your characterizations of conversations you had with me and Tim Alger--yet you will recall that as soon as you tried to summarize our conversation in an email, I promptly corrected you. Disingenuously, when you cite to your understanding of what I said, you refer only to your understanding of our oral conversations, and not the several emails that I have sent you explicitly stating our position. What I have said is consistent with what I wrote, not in conflict with it. I sincerely hope that we do not have to resort to communicating only in writing going forward.

You further compare your request to "similar" ones made by our firm to yours regarding whether it intended to stand on certain objections. I am perplexed by that comparison. To which "objections" to which RFP or Interrogatory are you referring? To my knowledge, you have not identified any.

Lastly, you mention the offer of a "source log"--which MGA offered to exchange in lieu of answering Mattel's Interrogatory No. 47. That offer was rejected because, among other things, the source log proposed by MGA would only identify the source of documents actually produced, not the places where searches were conducted (or not conducted) for documents not produced. As such, the source log would not be a satisfactory substitute for a response to Interrogatory No. 47. That is undoubtedly why MGA has refused to answer Mattel's Interrogatory -- because it calls for specific information about where MGA has searched and not searched for key early Bratz documents, which MGA does not want to disclose. Based on what you are seeking from me in your email, the source log proposed to be exchanged by MGA would not appear to provide MGA what it is looking for either to the extent any source searched did not ultimately result in the production of a responsive document. And, I note also that Mattel did not reject MGA's proposal to exchange a source log. In fact, Mattel asked MGA if that was a freestanding proposal MGA was making. MGA said it was not. The only "proposal" Mattel rejected was MGA's demand that Mattel waive its right to the information sought in Interrogatory 47 -- which MGA refuses to provide even in discovery and yet you now effectively demand we provide via email.

Regards,

Christopher Tayback

EXHIBIT 15 PAGE 223          **EXHIBIT  1**    **PAGE**  **5**

---

**From:** Herrington, Robert J [mailto:Robert.Herrington@skadden.com]
**Sent:** Thursday, December 27, 2007 8:12 PM
**To:** Christopher Tayback
**Cc:** Timothy Alger; Eckles, Paul M (NYC)
**Subject:** RE: Follow-up to today's telephone call

Chris:

We are finding it very hard to understand why Mattel is refusing to provide a straightforward response to what is a very simple question - *has Mattel searched the archived email files and email backup tapes identified in Mr. Moore's affidavit (paragraphs 8, 10, 11, 12, 13, 22, 23, 27, 28) for documents responsive to MGA and Bryant's document requests and the categories of documents Mattel was ordered to produce by Judge Infante?*

As explained in my prior correspondence and during our telephone conversations, we are very concerned that Mattel has not been searching email because Mattel has produced about 2000 emails in this case (as compared to almost 20,000 emails produced by MGA) and because Mattel previously objected to searching or producing email. In connection with Judge Infante's May 22, 2007 Order compelling Mattel to produce documents, Mattel objected to searching and producing email based on a burden objection. Judge Infante overruled this and other objections and ordered Mattel to produce certain categories of documents.  Mattel moved for reconsideration and asked for an extension of time.  On July 19, 2007, Judge Infante denied the motion for reconsideration and ordered Mattel to produce all responsive documents called for in his Order by August 6, 2007.  On September 12, 2007, Judge Infante granted another motion to compel filed by MGA, again overruling Mattel's objections and ordering Mattel to produce all responsive documents by September 28, 2007.

After the Court entered these Orders, Mattel produced some 1164 emails (broken down as follows: May 30, 2007: 67 emails produced; June 15, 2007: 292 emails produced; July 6, 2007: 6 emails produced; July 20, 2007: 98 emails produced; August 6, 2007: 45 emails produced; October 29, 2007: 656 emails produced).  We have reviewed these documents and a majority have handwriting or other markings, indicating that they were stored and produced from hardcopy files, rather than from electronically stored data sources.  This further supports our view that Mattel has not been searching archived email and email backup tapes for responsive documents.

We also are concerned because we are receiving conflicting messages from Mattel on this issue.  During our meet and confer conference on December 14, 2007, Mr. Alger indicated that Mattel had not been searching archived or backed up email because of costs concerns and that these issues already had been addressed in prior briefing, including references to it costing more than $900,000 to search backed up email.  Mr. Alger, however, declined to provide any further information until I put a further request in writing.  I did so on

EXHIBIT 15 PAGE 224                          EXHIBIT ___1___    PAGE  6

1/7/2008

December 17, 2007, and we met and conferred on December 26, 2007. During our call at 9:00am on December 26, I understood both you and Mr. Alger to say that archived and backed up email had not been searched because of cost concerns. When we spoke again later that afternoon, I understood you to be saying basically the same thing. But Mattel now appears to be retreating from that position. After multiple meetings and discussions, we still don't have a clear answer as to whether Mattel has been searching archived and backed up email. Mattel's refusal to answer the simple question of whether it has been searching email heightens our concern that Mattel is standing on its prior objections and has not been searching or producing email in response to our document requests and the Court's Orders.

Our inquiry regarding whether Mattel has been searching and producing email is no different from inquiries your firm has made of us regarding whether our client is standing on certain objections. I participated in a conference call with your partner, Scott Kidman, on Monday December 24, 2007 during which Mr. Kidman repeatedly asked whether MGA was standing on certain objections and we agreed to provide him with responses. Our current inquiry regarding Mattel email is no different. Mattel previously objected to searching for and producing email because of cost concerns. We are entitled to know whether Mattel is standing on that objection or not.

Finally, you reference the outstanding dispute regarding the interrogatory Mattel served on MGA regarding its search for documents. As noted in your papers, MGA agreed to provide a source log for documents it has produced in this case, provided that Mattel provides a similar log. As I understand it, Mattel refused this offer and filed a motion to compel. Are you suggesting that Mattel has reconsidered its position and wishes to exchange source logs as previously offered?

Thank you,
--rob


THIS E-MAIL MESSAGE IS CONFIDENTIAL AND INTENDED FOR THE PERSON(S) NAMED ABOVE ONLY. ALL OTHER USE, COPYING, OR DISTRIBUTION IS STRICTLY PROHIBITED.

**Robert J. Herrington**
**Skadden, Arps, Slate, Meagher & Flom LLP**
300 South Grand Ave. | Suite 3400 | Los Angeles, CA | 90071
☎ Direct: (213) 687-5368 | 🖷 Fax: (213) 621-5368 | 🖂 Email: rherring@skadden.com

**Joanne Otero, Assistant to Robert Herrington**
☎ Direct: (213) 687-5252 | 🖂 Email: jootero@skadden.com

---

**From:** Christopher Tayback [mailto:christayback@quinnemanuel.com]
**Sent:** Wednesday, December 26, 2007 9:27 PM
**To:** Herrington, Robert J (LAC)
**Cc:** Timothy Alger
**Subject:** Re: Follow-up to today's telephone call

EXHIBIT _15_ PAGE _225_          EXHIBIT _1_   PAGE _7_