**Exhibit 1**

Hearing re Motion to Disqualify Skadden Arps and Ms. Tomiyama 4/7/2008 7:54:00 AM

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                  EASTERN DIVISION

4                      - - -

5        HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                      - - -

7     CARTER BRYANT, ET. AL.,        )

                                     )

8              PLAINTIFFS,  )

                                )

9        ` VS.            )  NO. ED CV 04-09049

                     )  (LEAD LOW NUMBER)

10    MATTEL, INC., ET. AL.,         )

                                )

11            DEFENDANTS.  )  HEARING

   _____)

12    AND CONSOLIDATED ACTIONS,      )

                                )

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16            RIVERSIDE, CALIFORNIA

17           MONDAY, APRIL 7TH, 2008

18               11:34 A.M.

19

20

21

22

23        THERESA A. LANZA, RPR, CSR

          FEDERAL OFFICIAL COURT REPORTER

24        3470 12TH STREET, RM. 134

          RIVERSIDE, CALIFORNIA  92501

25           951-274-0844

          WWW.THERESALANZA.COM

Mattel v. MGA II              Unsigned                    Page 1

EXHIBIT __1__

PAGE __4__

Hearing re Motion to Disqualify Skadden Arps and Ms. Tomiyama 4/7/2008 7:54:00 AM

1    APPEARANCES:

2

     ON BEHALF OF CARTER BRYANT:

3            KEKER & VAN NEST

             BY:  CHRISTA ANDERSON

4            710 SANSOME STREET

             SAN FRANCISCO, CALIFORNIA  94111-1704

5            415-391-5400

6

7    ON BEHALF OF MATTEL:

8            QUINN EMANUEL

             BY:  JOHN QUINN

9            BY:  MICHAEL T. ZELLER

             865 S. FIGUEROA STREET,

10           10TH FLOOR

             LOS ANGELES, CALIFORNIA  90017

11           213-624-7707

12

13   ON BEHALF OF MGA ENTERTAINMENT AND ISAAC LARIAN:

14           SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

             BY:  THOMAS J. NOLAN

15           BY:  CARL ALAN ROTH

             BY:  KENNETH PLEVAN

16           300 SOUTH GRAND AVENUE

             LOS ANGELES, CALIFORNIA  90071-3144

17           213-687-5000

18

19

20

21

22

23

24

25

Mattel v. MGA II                    Unsigned                    Page  2

EXHIBIT ___1___

PAGE ___6___

Hearing re Motion to Disqualify Skadden Arps and Ms. Tomiyama  4/7/2008  7:54:00 AM

1                    I N D E X

2                              PAGE

3     HEARING...........................   4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Mattel v. MGA II                     Unsigned      EXHIBIT _____ 1 _____      Page  3

PAGE _____ 6 _____

Hearing re Motion to Disqualify Skadden Arps and Ms. Tomiyama 4/7/2008 7:54:00 AM

1  MR. PLEVAN'S AND MS. CAMPAGNA'S INVOLVEMENT IN OTHER ASPECTS OF

2  THE CASE BEYOND THEIR WORK WITH THE EXPERT WITNESS.

3      AND, PERHAPS, I DON'T EVEN NEED TO QUESTION THEM

4  ABOUT THAT.  PERHAPS, YOU COULD LET THE COURT KNOW WHAT THAT

5  INVOLVEMENT IS.

6      MR. NOLAN:  WHATEVER THE COURT WISHES, I'M HAPPY TO

7  ADDRESS THAT.

8      LIKE MOST COMPLICATED CASES AS COMPLEX AND AS BROAD

9  RANGING IN ISSUES, WE HAVE DIVIDED THE CASE IN TERMS OF TEAMS.

10  MR. PLEVAN, FROM THE OUTSET OF THE CASE, HAS BEEN ASSIGNED TO

11  WHAT I CALL THE IP PORTION OF THE CASE, THE COPYRIGHT ISSUES,

12  AND DEALING WITH AND PREPARING AND DEFENDING DEPOSITIONS WITH

13  RESPECT TO THE EXPERT WITNESSES THAT HE'S BEEN PARTICULARLY

14  ASSIGNED TO.  MICHELLE CAMPAGNA HAS BEEN SPECIFICALLY ASSIGNED

15  TO MR. PLEVAN; AND THEY GENERALLY WORK AS A TEAM.

16      WE DO NOT NECESSARILY INTEGRATE THE TEAMS WITH

17  RESPECT TO CROSSOVERS.  IN OTHER WORDS, MR. PLEVAN IS NOT

18  INVOLVED, NECESSARILY, TO THE GREATEST DEGREE IN THE FACTUAL

19  DEVELOPMENT OF, LET'S SAY, CARTER BRYANT'S DRAWINGS, ALTHOUGH

20  CERTAINLY WE WORK AS A TEAM.  I DON'T WANT TO, IN ANY WAY, DENY

21  THAT POINT, YOUR HONOR.  MR. PLEVAN HAS BEEN INVOLVED IN EVERY

22  SIGNIFICANT MEETING THAT WE'VE HAD DISCUSSING A WIDE-RANGING

23  NUMBER OF ISSUES IN THE CASE.

24      NOT SO TRUE WITH RESPECT TO MICHELLE CAMPAGNA.  HER

25  ROLE HAS BEEN FAIRLY DISCRETE.

EXHIBIT ___1___

PAGE ___7___

Hearing re Motion to Disqualify Skadden Arps and Ms. Tomiyama  4/7/2008 7:54:00 AM

1    I ALSO SHOULD NOTE THAT I'VE KIND OF BROKEN THIS DOWN

2    INTO TWO MOTIONS.  I'M CONSIDERING THE MOTION TO DISQUALIFY THE

3    EXPERT, AND THEN THE MOTION TO DISQUALIFY COUNSEL, IN KIND OF A

4    SEPARATE ANALYSIS ON BOTH.

5         LET ME BEGIN WITH THE FINDINGS OF FACT THAT THE COURT

6    IS TENTATIVELY MAKING.  AND THIS IS TENTATIVE SUBJECT TO

7    ARGUMENTATION.  WE'RE APPROACHING THE NOON LUNCH HOUR.  I DO

8    INTEND TO TAKE A BREAK FOR LUNCH AND RESUME THIS IN THE

9    AFTERNOON.  I DO NOT WANT THIS RUSHED.  AS MR. NOLAN JUST

10   ALLUDED TO A MOMENT AGO, OBVIOUSLY THIS IS A SERIOUS MATTER

11   THAT THE COURT TAKES SERIOUSLY.  I DON'T WANT ANYONE TO BE

12   RUSHED.  I WANT EVERYONE TO HAVE AN OPPORTUNITY TO SAY WHAT

13   THEY NEED TO SAY.  BUT PERHAPS I COULD BEGIN BY GIVING THIS

14   TENTATIVE, AND THEN WE CAN TAKE A BREAK AND RESUME WITH

15   ARGUMENT AT THAT TIME.

16        BASED ON THE EVIDENCE AVAILABLE TO ALL OF THE

17   PARTIES, THOUGH -- THIS IS NOT CONSIDERING AT ALL THE

18   IN-CAMERA -- THIS IS WHAT I THINK IS UNCONTROVERTED:

19        FIRST OF ALL, IT IS UNCONTROVERTED THAT MGA

20   UNDERSTOOD THAT MS. TOMIYAMA, A FORMER EMPLOYEE, WHO HAD BEEN

21   MATTEL'S EMPLOYEE FOR 15 YEARS, HAD BEEN CONSULTED, WHILE SO

22   EMPLOYED BY MATTEL'S LEGAL COUNSEL, TO COMPARE MATTEL'S DOLLS

23   WITH OTHER COMPANIES' DOLLS AND PROVIDE TO COUNSEL AN ANALYSIS

24   OF HER COMPARISON FOR THE PURPOSE OF ASSISTING COUNSEL TO

25   ADVISE MATTEL ON LEGAL ISSUES REGARDING THE DOLLS.

Mattel v. MGA II                    Unsigned                         Page  10

EXHIBIT _____ 1

PAGE _____ 8

Hearing re Motion to Disqualify Skadden Arps and Ms. Tomiyama 4/7/2008 7:54:00 AM

1    IT IS UNCONTROVERTED THAT SHE WAS ENGAGED BY

2    SKADDEN ARPS ON BEHALF OF MGA TO PERFORM THE SAME TYPE OF

3    ANALYSIS AND THAT SHE DID, IN FACT, PROVIDE SUCH AN ANALYSIS.

4    THIS IS THE ANALYSIS RELATED TO THE COMPARISONS OF THE FACE

5    PAINTINGS.

6    IT IS UNCONTROVERTED THAT SHE WAS EMPLOYED BY MATTEL

7    DURING THE TIME PERIOD THAT MGA FILED ITS COMPLAINT AGAINST

8    MATTEL IN THE CASE PENDING BEFORE THIS COURT; THAT'S

9    CV-05-2727.

10    IT IS NOT DISPUTED THAT SHE WAS SHOWN THE COMPLAINT

11    IN THAT CASE BY MATTEL ATTORNEYS AND DISCUSSED THE CONTENTS, AT

12    LEAST IN PASSING, ON THAT COMPLAINT.

13    IT IS NOT CONTROVERTED THAT MS. TOMIYAMA WAS SUBJECT

14    TO A SEPARATION AGREEMENT THAT REQUIRED HER TO GIVE NOTICE TO

15    MATTEL BEFORE PROVIDING SERVICES TO A COMPETITOR, AND THAT BY

16    THE TERMS OF THAT AGREEMENT, THAT REQUIREMENT CONTINUES TO THIS

17    DAY.

18    IT'S NOT DISPUTED THAT MS. TOMIYAMA DID NOT GIVE SUCH

19    NOTICE, NOR IS IT DISPUTED THAT MS. TOMIYAMA SHOWED A COPY OF

20    THE AGREEMENT TO AND WAS ADVISED BY A SKADDEN ARPS ATTORNEY

21    THAT SHE WAS UNDER NO OBLIGATION TO COMPLY WITH IT, DESPITE THE

22    LANGUAGE SET FORTH IN THE AGREEMENT.

23    IT IS NOT CONTROVERTED THAT MS. TOMIYAMA IS UNABLE TO

24    DISTINGUISH BETWEEN PRIVILEGED AND UNPRIVILEGED DOCUMENTS.

25    THIS WAS CLEAR TO THE COURT IN REVIEWING HER ANSWERS TO HER

Hearing re Motion to Disqualify Skadden Arps and Ms. Tomiyama 4/7/2008 7:54:00 AM

1    DEPOSITION.  SHE ADMITTED AS MUCH IN HER DEPOSITION, AND

2    THERE'S A NUMBER OF EXAMPLES IN HER DEPOSITION WHICH

3    DEMONSTRATE THAT INABILITY TO DISTINGUISH BETWEEN PRIVILEGED

4    AND UNPRIVILEGED COMMUNICATIONS.

5         IT IS NOT DISPUTED, AS SET FORTH IN HER EXPERT

6    REPORT, EXPRESSLY IN HER REPORT, THAT SHE'S UNABLE TO

7    DISTINGUISH BETWEEN FACT TESTIMONY AND EXPERT TESTIMONY.  SHE

8    STATES AS MUCH.

9         SO THOSE ARE KIND OF A LIST OF FACTS THAT I THINK ARE

10   NOT DISPUTED, JUST BASED ON MY READING OF THE DEPOSITIONS AND

11   TRANSCRIPTS AND DECLARATIONS THAT ARE SET FORTH ON THE RECORD.

12        I THEN HAVE THE IN-CAMERA FILING MADE BY MATTEL.  AND

13   AS I INDICATED, I NEED TO TEMPER MY OBSERVATIONS REGARDING THE

14   ENGAGEMENT OF MS. TOMIYAMA AS AN EXPERT, WITH THE UNDERSTANDING

15   THAT NEITHER MGA NOR THE ATTORNEYS OF SKADDEN ARPS HAVE BEEN

16   ABLE TO REVIEW THE IN-CAMERA MATERIAL THAT PURPORTEDLY REVEALS

17   THE EXTENT OF MS. TOMIYAMA'S INVOLVEMENT ON BEHALF OF MATTEL IN

18   THESE CONSOLIDATED CASES.

19        I HAVE NO REASON NOT TO ACCEPT THOSE REPRESENTATIONS,

20   BUT I AM MINDFUL OF THE FACT THAT THEY ARE BEING SUBMITTED

21   IN-CAMERA.

22        BUT WHEN I COMPARE THE IN-CAMERA DECLARATION TO

23   MS. TOMIYAMA'S DEPOSITION, SPECIFICALLY HERE, I HAVE IN MY

24   NOTES, PAGES 262 TO 263 -- WHEREIN SHE CANNOT MERELY NOT RECALL

25   BUT CANNOT DENY ANALYZING BRATZ DOLLS FOR MATTEL'S LAWYERS.  IT

Mattel v. MGA II                    Unsigned          Page 12

EXHIBIT ___1___

PAGE ___10___

Hearing re Motion to Disqualify Skadden Arps and Ms. Tomiyama  4/7/2008  7:54:00 AM

1    IS ALSO UNCONTROVERTED THAT MS. TOMIYAMA WAS EXTENSIVELY

2    INVOLVED IN ISSUES REGARDING THE CLAIMS AND DEFENSES IMPLICATED

3    BY MGA'S COMPLAINT AGAINST MATTEL IN CASE 05-2727 BEFORE THIS

4    COURT.  SHE WAS PRIVY TO COUNSEL'S ANALYSIS, THOUGHTS, AND

5    IMPRESSIONS RELATING TO COMPARISONS OF THE "MY SCENE" DOLLS AND

6    THE BRATZ DOLLS.

7         ALSO COMPARING THE IN-CAMERA DECLARATIONS TO

8    MS. TOMIYAMA'S DEPOSITION AT PAGES 266 TO 268, WHERE, AGAIN,

9    SHE MERELY CANNOT RECALL BUT DOES NOT DENY ASSISTING COUNSEL'S

10   INVESTIGATION OF CARTER BRYANT'S ACTIVITIES AT MATTEL.  IT IS

11   UNCONTROVERTED THAT MS. TOMIYAMA WAS DEEPLY INVOLVED IN

12   MATTEL'S INVESTIGATIONS OF CARTER BRYANT'S ACTIVITIES AND WAS

13   PRIVY TO COUNSEL'S ANALYSIS, THOUGHTS, AND IMPRESSIONS ABOUT

14   ISSUES DIRECTLY RELATED TO PHASE ONE OF THIS TRIAL.

15        IT'S SOMEWHAT DISTURBING, THE SERIES OF 'I DON'T

16   RECALLS,' 'I DON'T RECALLS' FROM MS. TOMIYAMA, BUT IT'S

17   SIGNIFICANT THAT SHE DOES NOT DENY THAT ANALYSIS; AND WHEN

18   COMBINED WITH THE INFORMATION SET FORTH IN THE IN-CAMERA

19   DECLARATION, THE COURT MAKES THE FINDINGS THAT IT DOES.

20        THE THIRD COMPARISON I WOULD DO IS MAKING THE

21   COMPARISON BETWEEN THE IN-CAMERA DECLARATIONS TO MS. TOMIYAMA'S

22   DEPOSITION AT PAGES 246 TO 248, WHERE SHE DISCUSSES THE

23   DOCUMENT ATTACHED AS EXHIBIT A TO HER EXPERT REPORT, THE SIMBA

24   VERSUS BARBIE PHOTO MONTAGE.  THE COURT CONCLUDES THAT THE

25   DOCUMENT IS BOTH ATTORNEY WORK-PRODUCT AND PROTECTED BY THE

1

PAGE    11

Hearing re Motion to Disqualify Skadden Arps and Ms. Tomiyama  4/7/2008  7:54:00 AM

1    ATTORNEY-CLIENT PRIVILEGE.

2         WITH THIS RECORD IN MIND, I'LL SET FORTH THE COURT'S

3    LEGAL ANALYSIS.  I BEGIN BY LOOKING TO STENCEL V. FAIRCHILD

4    CORPORATION, 174 F. SUPP. 2D 1080, A CENTRAL DISTRICT CASE.

5    THE COURT MUST CONSIDER THREE FACTORS, AND DOES SO AS FOLLOWS,

6    AT LEAST TENTATIVELY:

7         THE FIRST IS THAT MATTEL MUST PROVE THAT IT WAS

8    OBJECTIVELY REASONABLE TO BELIEVE THAT A CONFIDENTIAL

9    RELATIONSHIP EXISTED BETWEEN MS. TOMIYAMA AND MATTEL.  AT THIS

10   POINT, IT'S UNQUESTIONABLE THAT BASED ON THE IN-CAMERA

11   DECLARATIONS, AS WELL AS THE DEPOSITION TESTIMONY OF

12   MS. TOMIYAMA AND THE EXPERT REPORT, THAT MATTEL HAS ESTABLISHED

13   A CONFIDENTIAL RELATIONSHIP WITH MS. TOMIYAMA.

14        ACCORDING TO HER OWN TESTIMONY DURING THE LAST TWO

15   YEARS OF HER EMPLOYMENT, MATTEL'S LEGAL DEPARTMENT CONSULTED

16   WITH HER REGULARLY, ABOUT ONCE PER MONTH, REGARDING LITIGATION

17   ISSUES INVOLVING COMPARISONS OF MATTEL'S PRODUCTS WITH

18   COMPETITORS' PRODUCTS.  THE IN-CAMERA DECLARATIONS GO ON TO

19   PROVIDE A MORE IN-DEPTH DETAILED ANALYSIS OF THESE

20   CONSULTATIONS; BUT, AGAIN, FROM HER OWN TESTIMONY ITSELF, IT'S

21   QUITE CLEAR THAT SHE HAD THOSE TYPES OF CONSULTATIONS AT LEAST

22   ONCE A MONTH.

23        THE SECOND FACTOR IS THAT MATTEL MUST ESTABLISH THAT

24   IT IN FACT DISCLOSED CONFIDENTIAL INFORMATION TO THE EXPERT.

25   THE COURT TENTATIVELY FINDS THIS HAS BEEN MET BY VIRTUE OF THE

Mattel v. MGA II                    Unsigned          **EXHIBIT** ___1___        Page  14

                                                      **PAGE** ___12___

Hearing re Motion to Disqualify Skadden Arps and Ms. Tomiyama 4/7/2008 7:54:00 AM

1    DELAY IN BRINGING THIS MOTION TO DISQUALIFY HER.  NOR IS THERE

2    A QUESTION THAT DISQUALIFICATION WOULD IMPAIR MS. TOMIYAMA'S

3    ABILITY TO PURSUE HER TRADE.  AS NOTED IN HER EXPERT REPORT, I

4    BELIEVE, THIS IS HER FIRST ATTEMPT AT BEING AN EXPERT, OR

5    PROVIDING EXPERT TESTIMONY.

6          MGA HAS NOTED IN ITS OPPOSITION THAT EXPERTS IN THE

7    FIELD OF FASHION DOLL FACE PAINTING ARE IN SHORT SUPPLY; AND

8    EVEN THOUGH IT HAS NOT SUBMITTED EVIDENCE IN SUPPORT OF THAT

9    STATEMENT, THE COURT HAS NO REASON NOT TO ACCEPT THAT

10   REPRESENTATION; THAT, ALONG WITH THE FACT THAT THE EXPERT

11   DESIGNATION DATE IN THIS ACTION HAS PASSED, IMPACTS GREATLY

12   UPON MGA'S ABILITY TO SELECT ITS OWN EXPERTS.

13          NONETHELESS, THE CONSIDERATION MUST BE WEIGHED

14   AGAINST THE POTENTIAL PREJUDICE TO MATTEL ABSENT

15   DISQUALIFICATION, WHICH THE COURT FINDS TENTATIVELY IS QUITE

16   SUBSTANTIAL.  EVEN ABSENT ANY FINDING OF BAD FAITH ON THE PART

17   OF COUNSEL, MGA HAD THE BENEFIT OF CONSULTING WITH A LONG-TERM

18   EMPLOYEE OF MATTEL, WHOSE EXPERTISE IN APPLYING HER ANALYSIS TO

19   LEGAL CLAIMS AND DEFENSES WAS DEVELOPED UNDER THE DIRECTION OF

20   MATTEL'S ATTORNEYS, AND WHO WAS EXPOSED TO THE THOUGHTS,

21   THEORIES, ANALYSIS, AND IMPRESSIONS OF THOSE VARIOUS SAME

22   ATTORNEYS IN THE YEARS LEADING UP TO THIS CASE AND INVOLVING

23   THIS PARTICULAR CASE.

24          THIS SAME EXPERT HAS ADMITTED TO AND DEMONSTRATED

25   REPEATEDLY A WHOLESALE INABILITY TO DISTINGUISH BETWEEN

Mattel v. MGA II                    Unsigned                              Page 16

EXHIBIT    1

PAGE    13

Hearing re Motion to Disqualify Skadden Arps and Ms. Tomiyama 4/7/2008 7:54:00 AM

1    PRIVILEGED AND NONPRIVILEGED INFORMATION OR COMMUNICATIONS,

2    WHICH FURTHER UNDERSCORES THE PROBLEM THAT WE HAVE BEFORE US.

3        IN ITS DECISION TO DISQUALIFY AN EXPERT, THE COURT

4    NEED NOT CONCLUDE WHETHER OR NOT COUNSEL FOR MGA ADMONISHED

5    MS. TOMIYAMA REGARDING THE DISCLOSURE OF PRIVILEGED

6    COMMUNICATIONS OR ATTORNEY WORK PRODUCT.  INDEED, IT IS CLEAR

7    THAT WHETHER THEY DID OR DID NOT IS IRRELEVANT ON THIS ISSUE,

8    BECAUSE GIVEN HER INABILITY TO DISTINGUISH BETWEEN THE TWO, IT

9    WOULD HAVE HAD LITTLE OR NO EFFECT.

10       MOREOVER, THIS COURT IS STRUCK BY THE REASONING OF

11   THE CALIFORNIA COURT OF APPEAL IN SHADOW TRAFFIC, WHERE THE

12   COURT CONCLUDED THAT WHERE AN EXPERT WAS EXPOSED TO AN

13   ADVERSARY'S CONFIDENTIAL INFORMATION ON A GIVEN TOPIC, EVEN IN

14   THE ABSENCE OF DISCLOSURE OF THAT INFORMATION, THE ADVERSARY,

15   QUOTE, "COULD STILL OBTAIN THE BENEFIT OF THE INFORMATION,

16   BECAUSE THE DATA, CONSCIOUSLY OR UNCONSCIOUSLY, COULD SHAPE OR

17   AFFECT THE ANALYSIS AND ADVICE," CLOSED QUOTE, OFFERED BY THE

18   EXPERT.

19       SO TOO IS THE CASE HERE.

20       MS. TOMIYAMA'S INVOLVEMENT FOR MATTEL IN THE PRESENT

21   LITIGATION CANNOT BE UNDERSTATED, NOR HER ABILITY TO

22   COMPARTMENTALIZE INFORMATION UPON WHICH SHE MAY NOT RELY IN HER

23   COMMUNICATIONS WITH MGA AND IN THE PREPARATION OF HER EXPERT

24   REPORT.  FOR THIS REASON, SHE CARRIES WITH HER A TAINT.  AND

25   BASED ON EVERYTHING THAT I HAVE SET FORTH, IT IS THE COURT'S

Mattel v. MGA II                    Unsigned                    Page 17

EXHIBIT ____1____

PAGE ____14____

Hearing re Motion to Disqualify Skadden Arps and Ms. Tomiyama 4/7/2008 7:54:00 AM

1        THE STATEMENTS OF COUNSEL THAT MS. TOMIYAMA DID NOT

2    DISCLOSE CONFIDENTIAL INFORMATION TO THEM PRESUPPOSES THAT SHE

3    WOULD RECOGNIZE WHAT IS CONFIDENTIAL INFORMATION.  AND AS BORNE

4    OUT IN THE DEPOSITIONS, SHE DOESN'T SEEM TO GET WHAT IS

5    CONFIDENTIAL AND WHAT IS NOT CONFIDENTIAL.  SO TO SAY IN A

6    DECLARATION THAT SHE HAS NOT SAID THAT SHE HAS DISCLOSED

7    ANYTHING THAT IS CONFIDENTIAL, THE COURT DOESN'T HAVE ANY BASIS

8    TO RELY UPON THAT -- AND I DON'T THINK COUNSEL HAS A BASIS TO

9    RELY UPON THAT -- AS ASSURING THAT CONFIDENTIAL INFORMATION HAS

10   NOT BEEN DISCLOSED.

11       ADDITIONALLY, COUNSEL STATES IN HIS DECLARATION THAT

12   MS. TOMIYAMA'S SEPARATION AGREEMENT EXPIRED ON APRIL 13TH OF

13   LAST YEAR, DESPITE EXPLICIT LANGUAGE TO THE CONTRARY IN A

14   CLAUSE REGARDING MS. TOMIYAMA'S RESPONSIBILITY TO NOTIFY MATTEL

15   IF SHE PROVIDED SERVICES TO A COMPETITOR, WHICH CERTAINLY GOES

16   BEYOND THAT DATE.

17       THERE IS A CONTINUING OBLIGATION HERE.

18       IN SUM, WE HAVE AN EXPERT RETAINED BY MGA WHO WAS

19   TAINTED BY HER EXPOSURE TO MATTEL'S ATTORNEY-CLIENT PRIVILEGED

20   COMMUNICATIONS AND ATTORNEY WORK PRODUCT.  SHE IS UNABLE TO

21   DISTINGUISH BETWEEN THESE AND INNOCUOUS COMMUNICATIONS AND

22   MATERIALS.  MGA'S COUNSEL HAS PROVEN SIMILARLY UNABLE TO

23   IDENTIFY MATTEL'S ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS AND

24   ATTORNEY WORK PRODUCT WHEN PRESENTED WITH IT, ALBEIT NOT FROM /

25   LACK OF ABILITY, BUT FROM A LACK OF INFORMATION.

Mattel v. MGA II                    Unsigned          EXHIBIT ____1____          Page  21

PAGE ____15____

Hearing re Motion to Disqualify Skadden Arps and Ms. Tomiyama 4/7/2008 7:54:00 AM

1      IT APPEARS TO THE COURT, THEN, THAT ITS DUTIES NOW

2   REQUIRE IT TO ATTEND TO THE TASK OF DETERMINING THE EXTENT OF

3   MS. TOMIYAMA'S TAINT.

4      THAT IS WHAT PROMPTED THOSE INITIAL QUESTIONS TO THE

5   COURT, THAT THE COURT ASKED TO COUNSEL.  AND THAT'S WHERE I'M

6   LEFT.  I HAVE NOT REACHED EVEN A TENTATIVE CONCLUSION REGARDING

7   THE MOTION TO DISQUALIFY COUNSEL.  THERE ARE SEVERAL LEVELS OF

8   THIS.  THERE'S THE POSSIBILITY OF CABINING OFF THOSE COUNSEL

9   WHO HAVE WORKED DIRECTLY WITH MS. TOMIYAMA; THAT WOULD BE

10   MR. PLEVAN AND MS. CAMPAGNA BACK IN NEW YORK.

11      THE COSTS TO THE COURT, THE COSTS TO MGA, THE COSTS

12   TO THIS WHOLE PROCESS OF DISQUALIFYING THE ENTIRE FIRM OF

13   SKADDEN ARPS ARE ENORMOUS.  THE BURDEN THAT PLACES ON THE

14   ENTIRE SYSTEM WOULD BE DRAMATIC.  AND IT'S NOT AT ALL CLEAR TO

15   THE COURT THAT SUCH A DRASTIC REMEDY, AS BEING URGED BY

16   PLAINTIFF'S COUNSEL, IS NECESSARY.  BUT CLEARLY, SOMETHING

17   NEEDS TO BE DONE.

18      AS I INDICATED, I'M FAIRLY COMFORTABLE, BASED ON THE

19   RECORD BEFORE ME -- AND I CERTAINLY WANT TO HEAR COUNSELS'

20   RESPONSES TO THE COURT'S FINDINGS -- BUT BASED ON THE FINDINGS

21   -- AND THE COURT HAS TRIED TO THOROUGHLY REVIEW EVERYTHING

22   THAT'S BEEN SUBMITTED IN THE LAST SEVERAL WEEKS ON THIS -- IT'S

23   PRETTY CLEAR THAT MS. TOMIYAMA HAS GOT TO BE DISQUALIFIED.

24      YOU KNOW, SOMETHING THAT JUST KEEPS COMING BACK TO ME

25   THIS PAST WEEK IS, WHY, WHEN THAT EXPERT REPORT CAME OUT AND

EXHIBIT _____ 1

PAGE _____ 11

1   DON'T HAVE THE VERBATIM OF THE DISCUSSIONS THAT TOOK PLACE

2   BEFORE. WE HAVE THIS EXPERT REPORT, THOUGH. AND I PLACE A LOT

3   OF STOCK IN THAT BECAUSE IT'S IN HER OWN WORDS, AND THERE'S NO

4   GETTING AROUND THAT. AND YOU HAVE REFERRED SEVERAL TIMES TO

5   HER INVOLVEMENT WITH MATTEL LEGAL AS BEING A CREDENTIAL, BUT

6   THAT ALL SHE DID WAS FACE PAINT.

7       THE REPORT LEADS ME TO CONCLUDE THAT THERE WAS MORE

8   THAN THAT. I'LL READ ONE LINE, AND I WOULD LIKE TO HEAR YOUR

9   RESPONSE TO THAT. THIS IS ON PAGE 2 OF THE REPORT. IT'S UNDER

10  THE SECTION OF HER QUALIFICATIONS: SHE WRITES, "RESPONDING TO

11  A REQUEST FROM MATTEL'S PRODUCT LEGAL GROUP IN MID 2004, I

12  WORKED WITH MY STAFF TO PAINT AND PHOTOGRAPH FACE PAINT

13  VARIATIONS THAT ANOTHER DOLL COMPANY COULD USE WITHOUT

14  OBJECTION FROM MATTEL." THAT'S EXHIBIT A.

15      "FROM MID 2004" -- THIS IS GOING FORWARD -- "I WAS

16  REGULARLY CONSULTED BY MATTEL'S PRODUCT LEGAL GROUP, WHO

17  BROUGHT ME DOLLS FROM OTHER MANUFACTURERS AND ASKED IF I

18  BELIEVED THEY INFRINGED ON MATTEL'S TRADE DRESS, THE TERM

19  MATTEL LAWYERS USE."

20      PUTTING ASIDE ANYTHING I'VE LEARNED FROM THE

21  IN-CAMERA, IF LAWYERS ASK AN EXPERT TO SAY, 'I WANT YOUR

22  OPINION AS TO WHETHER THIS VIOLATES A TRADE DRESS,' TO A

23  NONLAWYER, OBVIOUSLY AN EXPLANATION AS TO WHAT A TRADE DRESS

24  VIOLATION IS, OR MORE IMPORTANTLY, WHAT THEY PERCEIVE TO BE A

25  TRADE DRESS VIOLATION -- THOSE ARE THE THOUGHTS AND IMPRESSIONS

Mattel v. MGA II                Unsigned       EXHIBIT _____ 1        Page 53

                                               PAGE _____ 17

Hearing re Motion to Disqualify Skadden Arps and Ms. Tomiyama 4/7/2008 7:54:00 AM

1    THAT I WAS REFERRING TO IN MY FINDINGS.  THOSE HAD TO HAVE BEEN

2    COMMUNICATED, BASED ON WHAT SHE TELLS ME HERE, BECAUSE GIVEN

3    WHAT SHE COMES ACROSS WITH IN HER DEPOSITION, SHE DOESN'T KNOW

4    TRADE DRESS FROM ANYTHING ELSE, RIGHT?  SHE HAS NO

5    UNDERSTANDING OF THESE LEGAL CONCEPTS.  BUT SHE STATES IN HER

6    REPORT THAT SHE WAS TOLD TO OFFER AN OPINION ABOUT TRADE DRESS

7    VIOLATIONS.

8        WELL, HOW ELSE COULD SHE HAVE DONE THAT REGULAR TASK

9    THAT SHE DESCRIBES WITHOUT HAVING RECEIVED MATTEL'S IMPRESSIONS

10   OF WHAT CONSTITUTES A TRADE DRESS VIOLATION?

11       MR. NOLAN:  YOUR HONOR, IF I MIGHT, THERE'S A LOT

12   THAT I'VE DONE FOR PREPARATION OF THIS ARGUMENT.  BUT THERE WAS

13   A DIFFICULT CHOICE TO MAKE AS TO WHO SHOULD MAKE THIS ARGUMENT.

14   AS I TOLD YOU LAST WEEK, I CAME INTO THIS CASE; I ACCEPTED THE

15   RESPONSIBILITY; AND I'M GOING TO STAND HERE AND I'M GOING TO

16   DEFEND SKADDEN ARPS.

17       HOWEVER, I DID NOT READ MS. TOMIYAMA'S FINAL REPORT,

18   AND I HAVE NOT YET.  WHAT I WOULD ASK --

19       THE COURT:  OKAY.

20       MR. NOLAN:  AND I WILL JUST SAY THAT.

21       THE COURT:  VERY WELL.

22       MR. NOLAN:  EARLIER VARIATIONS MAYBE CROSSED MY WAY,

23   BUT SHE'S NOT ON MY RADAR SCREEN.

24       WHAT I WOULD ASK IN THIS SPECIFIC REGARD, WITHOUT IT

25   BEING PERCEIVED AS A PUNT FROM ME, IS TO HAVE MR. PLEVAN

Mattel v. MGA II                    Unsigned      EXHIBIT _____ \        Page 54

                                                  PAGE _____ 18

Hearing re Motion to Disqualify Skadden Arps and Ms. Tomiyama 4/7/2008 7:54:00 AM

1   INCLUDE MR. NOLAN?

2       WELL, HE SAID HE READ A DRAFT; HE SAID HE HASN'T READ

3   THE FINAL ONE; THAT A DRAFT MAY HAVE CROSSED HIS DESK.

4       WHERE DO WE DRAW THAT LINE?

5       HOW ABOUT EVERYONE WHO MR. PLEVAN OR MS. CAMPAGNA

6   COMMUNICATED WITH OR REPORTED ON THE NATURE OF THEIR

7   CONVERSATIONS WITH THIS WITNESS?  WOULD THEY BE EXCLUDED OR

8   NOT?  HOW WOULD WE EVER KNOW --

9       THE COURT:  LET ME TRY TO ANSWER SOME OF THESE

10  QUESTIONS, ASSUMING THAT THEY'RE MORE THAN RHETORICAL, AND GET

11  YOUR RESPONSE TO THEM.

12      THE REPORT ITSELF HAS, IN THE COURT'S VIEW, BASED ON

13  MY PRELIMINARY FINDINGS, INFORMATION OR CONCLUSIONS THAT

14  INESCAPABLY, I THINK, ARE PREDICATED UPON ATTORNEY WORK

15  PRODUCT.  HOWEVER, PROVIDED THAT THE COURT EXCLUDES THIS

16  REPORT, EXCLUDES THE WITNESS, DISQUALIFIES THE EXPERT, IT IS

17  NOT CLEAR THAT SIMPLY HAVING READ THIS REPORT, PROVIDED THAT IT

18  COULD NOT BE USED IN ANY WAY, WOULD REALLY EMPOWER OPPOSING

19  COUNSEL WITH INFORMATION THAT WOULD BE TO YOUR DETRIMENT.

20      WHAT IS TO YOUR DETRIMENT, PERHAPS, IS CERTAINLY THE

21  INFORMATION THAT MS. TOMIYAMA RECEIVED FROM MR. MOORE, FROM

22  MR. ZELLER, FROM OTHER INDIVIDUALS.  BUT I HAVE COUNSELS'

23  REPRESENTATIONS, DECLARED UNDER PENALTY OF PERJURY, THAT THEY

24  HAVE NOT RECEIVED ANY INFORMATION THAT THEY WOULD CONSIDER TO

25  BE ATTORNEY-CLIENT PRIVILEGE.

Mattel v. MGA II                     Unsigned      **EXHIBIT** _____ |        Page 90

                                                   PAGE _____ 19

Hearing re Motion to Disqualify Skadden Arps and Ms. Tomiyama  4/7/2008  7:54:00 AM

1        YOUR HONOR, IN TRUTH, SAM CHARE, A 30(B)(6) WITNESS

2    FOR MGA, ACTUALLY TESTIFIED, BEFORE MS. TOMIYAMA WAS IDENTIFIED

3    AND RETAINED AND CONSULTED WITH, THAT IT'S DIFFICULT TO COMPARE

4    2-D DRAWINGS TO 3-D.  THAT WAS MR. CHARE'S ORIGINAL TESTIMONY,

5    30(B)(6), NOT INFLUENCED BY MS. TOMIYAMA.

6        I'D ALSO POINT OUT, YOUR HONOR, THAT IT'S CURIOUS

7    THAT MR. QUINN ARGUES THAT CONTAMINATION APPLIES.  YOUR HONOR,

8    THEIR OWN EXPERT -- THIS GOES BACK TO THE RECEIPT OF THE

9    TOMIYAMA EXPERT REPORT AND THAT THEY KNEW IMMEDIATELY -- YOUR

10   HONOR, MR. GOMEZ, I BELIEVE IS HIS NAME, IS ONE OF THEIR

11   REBUTTAL EXPERTS.  MR. GOMEZ, IN A FOOTNOTE TO HIS OPINION, A

12   PROFESSOR AT SOUTHWESTERN LAW, CITES TO CHRISTINA TOMIYAMA'S

13   EXPERT REPORT.  THEIR OWN EXPERT CITES TO CHRISTINA TOMIYAMA.

14       WITH RESPECT TO THE REMEDY -- AND, YOUR HONOR, I

15   DON'T KNOW IF THAT'S IN THE RECORD, AND I WILL SUBMIT THAT TO

16   THE COURT.

17       YOUR HONOR, WITH RESPECT TO THE REMEDY, LET ME JUST

18   ADDRESS THIS:

19       I RESPECT MR. QUINN IMMENSELY; HE'S A VERY TALENTED

20   LAWYER.  FOR MR. QUINN TO SAY THAT THIS ISSUE OF WHETHER OR NOT

21   YOU CAN GO FROM A 2-D DRAWING TO A 3-DEGREE OBJECT IS THE SOLE

22   PURPOSE FOR HAVING MS. TOMIYAMA APPEAR AS AN EXPERT IN THIS

23   CASE.

24       THE COURT:  I DON'T THINK HE WAS SUGGESTING IT'S HIS

25   SOLE PURPOSE, COUNSEL.

EXHIBIT       l

PAGE       20

Hearing re Motion to Disqualify Skadden Arps and Ms. Tomiyama 4/7/2008 7:54:00 AM

1    MGA, THE REMEDY OF NOT ALLOWING US TO TAKE THE CONCLUSIONS THAT

2    ARE CONTAINED IN THE REPORT, NOT USING HER AS A WITNESS, PUTS

3    US IN A POSITION WHERE MATTEL DOES NOT HAVE TO FEAR TAINT,

4    ESPECIALLY IF I'M NOT ALLOWED TO ARGUE -- WHICH I WOULDN'T

5    ANYWAY; I WOULDN'T ARGUE THAT MATTEL DOESN'T MAKE THIS

6    COMPARISON.

7        SHE TESTIFIES, YOUR HONOR, IN HER REPORT THAT THE

8    REASON WHY SHE PUT IT IN THERE WAS MORE OR LESS TO WEAKEN HER

9    OWN ANALYSIS, SAYING THAT WHAT MGA WAS ASKING HER TO DO IS

10   SOMETHING SHE NEVER DID FOR MATTEL.

11       I WOULD RESPECTFULLY SUBMIT, YOUR HONOR, AND I'LL END

12   ON THIS NOTE, THAT WEIGHING ALL OF THE WEIGHTY ISSUES THAT YOU

13   MUST IN THIS CASE, THAT TO THE EXTENT THAT MS. TOMIYAMA'S

14   REPORT CONTAINS LEGAL COMMUNICATIONS IN THE FORM OF

15   COMMUNICATIONS THAT SHE HAD WITH COUNSEL, BY NOT BEING ABLE TO

16   USE THAT REPORT, NOT BEING ABLE TO USE HER AS A WITNESS,

17   FORBIDDING US FROM MAKING ANY REFERENCE TO THE METHODOLOGY

18   EMPLOYED BY MATTEL IN OTHER CASES, COMPARING FACE PAINT TO FACE

19   PAINT ON INFRINGING PRODUCT, IS A SIGNIFICANT IMPEDIMENT TO OUR

20   PRESENTATION OF THE CASE.  IT ENSURES THE INTEGRITY OF THE

21   PROCESS GOING FORWARD.  AND I THINK IT PROPERLY PUTS INTO

22   BALANCE THE NEED FOR ASSURANCE THAT COUNSEL ARE TRYING A CASE

23   WITHOUT A BENEFIT.

24       FOR THE LIFE OF ME, AS I STAND BEFORE YOU, AS THE

25   TRIAL ATTORNEY IN THIS CASE THAT WILL BE PRESENTING THE MGA

Mattel v. MGA II                    Unsigned    EXHIBIT ____1____                 Page 96

                                                PAGE ____21____

Hearing re Motion to Disqualify Skadden Arps and Ms. Tomiyama 4/7/2008 7:54:00 AM

1   GET THROUGH THIS THIS AFTERNOON.  I WANTED TO MAKE SURE

2   EVERYONE HAD AN OPPORTUNITY TO ADDRESS THE COURT.

3       I WILL GET AN ORDER OUT ON THIS AS SOON AS POSSIBLE.

4   I'LL ALSO TAKE UP THAT DISCOVERY MATTER WITH THOSE DEPOSITIONS

5   WHICH SEEM TO BE GOING ON AND ON.  I'VE SEEN THOSE NAMES

6   BEFORE.  BUT I'LL TAKE A CLOSE LOOK AT THAT, AND WE'LL TRY TO

7   GET AN ORDER OUT.

8       THE CLERK:  COURT IS IN RECESS.

9

10

11

12

13

14

15

16                  CERTIFICATE

17

18   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
19   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
20   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

21

22   _____        _____
     THERESA A. LANZA, CSR, RPR        DATE

23   FEDERAL OFFICIAL COURT REPORTER

24

25

Mattel v. MGA II                Unsigned   **EXHIBIT** ___1___     Page  105

                                           PAGE ___22___

**Exhibit 2**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA  92501
CIVIL MINUTES – GENERAL

Case No.    CV 04-09049 SGL(RNBx)                            Date:  April 8, 2008

Title:      **CARTER BRYANT -v- MATTEL, INC.**

Consolidated With Related Actions:
CASE NO. CV 04-09059 SGL(RNBx):  MATTEL, INC.,  v. CARTER BRYANT,
CASE NO. CV 05-02727 SGL (RNBx): MGA ENTERTAINMENT, INC., v. MATTEL, INC.,
=============================================================
PRESENT:  HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

          Jim Holmes
          Courtroom Deputy Clerk

PROCEEDINGS
(issued in chambers):       **ORDER GRANTING MOTION TO DISQUALIFY EXPERT**
                            **ORDER DENYING MOTION TO DISQUALIFY COUNSEL**

       Based on the findings of fact set forth on the record, and for the reasons stated therein, the
Court **GRANTS** the motion to disqualify the expert, Christina Tomiyama.

       Toward that end, the Court **ORDERS** the following:

              Counsel for MGA, including in-house counsel, shall have no
       further contact with Ms. Tomiyama regarding this litigation except as
       necessary to effectuate the Court's orders.

              All counsel for MGA and Ms. Tomiyama, and any persons
       subject to their authority or control, or those acting in concert with them,
       are **ORDERED**  to refrain from using, disclosing, or otherwise
       disseminating any of Mattel's privileged communications or attorney
       work product for any purpose.

              All counsel for MGA and Ms. Tomiyama, and any persons

MINUTES FORM 90
CIVIL -- GEN                        Page 1                        Initials of Deputy Clerk: jh

EXHIBIT ___2___

PAGE ___23___

subject to their authority or control or those acting in concert with them,
are **ORDERED** to return to Mattel and/or destroy all of Mattel's
privileged and work-product materials.

Counsel for MGA is **ORDERED** to file under seal the original
Tomiyama expert report, and to destroy all other copies thereof.  If the
original report has been destroyed, a copy of the report shall be so
filed, along with a declaration of trial counsel regarding the original's
destruction.

Counsel for MGA are **ORDERED** to arrange for a copy of this
Order to be personally served on Ms. Tomiyama and shall file a proof
of service with an accompanying declaration of the process server.

Should Ms. Tomiyama wish to serve in the future as an expert
witness in any unrelated litigation, she is **ORDERED** to provide to
counsel for all parties in that litigation a copy of this Order before
entering into an agreement to provide expert witness opinions, reports,
or testimony.

The Court **DENIES** the motion to disqualify counsel.  Given the nature of the attorney-client
privileged material and attorney work product possessed by Ms. Tomiyama and the particular
circumstances of this case, this Court finds that it was incumbent upon Mattel to seek a protective
order once she was no longer employed by Mattel.  See Nalian Truck Lines, Inc. v. Nakano
Warehouse & Transportation Corp., 6 Cal.App.4th 1256, 1264 (1992) ("[I]t is incumbent upon a
party who knows that its former employees . . . possess privileged information to seek a protective
order.").  Moreover, a careful consideration of the relative burdens and costs to each party and to
the Court does not warrant disqualification.  See City of Santa Barbara v. Superior Court, 122
Cal.App.4th 17, 23 (2004) (noting that motions for disqualification should be "examined carefully"
because attorney disqualification "imposes heavy burdens on both the clients and courts [because]
clients are deprived of their chosen counsel, litigation costs inevitably increase and delays
inevitably occur.").

Nevertheless, in addition to the steps taken in the injunction set forth above, in order to
further limit any inadvertent disclosure of privilege, at the appropriate time, the Court will consider
both a motion in limine to preclude Ms. Tomiyama from testifying as a fact witness and a motion in
limine to preclude MGA from presenting its legal argument based on the ramifications of
comparing two-dimensional drawings of Bratz dolls with the three-dimensional products.

The Court **DENIES** Mattel's request for attorney fees.

**IT IS SO ORDERED.**

EXHIBIT ____2____

PAGE ____2Ꮞ____

## NOTICE PARTY SERVICE LIST

**Case No.**  CV 04-09049 SGL(RNBx)    **Case Title**  Carter Bryant v. Mattel, Inc.

**Title of Document**  Minute Order of April 8, 2008

| | |
|---|---|
| Atty Sttlmnt Officer Panel Coordinator | US Attorneys Office - Civil Division -L.A. |
| BAP (Bankruptcy Appellate Panel) | US Attorneys Office - Civil Division - S.A. |
| Beck, Michael J (Clerk, MDL Panel) | US Attorneys Office - Criminal Division -L.A. |
| BOP (Bureau of Prisons) | US Attorneys Office - Criminal Division -S.A. |
| CA St Pub Defender (Calif. State PD) | US Bankruptcy Court |
| CAAG (California Attorney General's Office - Keith H. Borjon, L.A. Death Penalty Coordinator) | US Marshal Service - Los Angeles (USMLA) |
| Case Asgmt Admin (Case Assignment Administrator) | US Marshal Service - Riverside (USMED) |
| Catterson, Cathy (9th Circuit Court of Appeal) | US Marshal Service -Santa Ana (USMSA) |
| Chief Deputy Admin | US Probation Office (USPO) |
| Chief Deputy Ops | US Trustee's Office |
| Clerk of Court | Warden, San Quentin State Prison, CA |
| Death Penalty H/C (Law Clerks) | |
| Dep In Chg E Div | |
| Dep In Chg So Div | |
| Federal Public Defender | |
| Fiscal Section | |
| Intake Section, Criminal LA | |
| Intake Section, Criminal SA | |
| Intake Supervisor, Civil | |
| PIA Clerk - Los Angeles (PIALA) | |
| PIA Clerk - Riverside (PIAED) | |
| PIA Clerk - Santa Ana (PIASA) | |
| PSA - Los Angeles (PSALA) | |
| PSA - Riverside (PSAED) | |
| PSA - Santa Ana (PSASA) | |
| Schnack, Randall (CJA Supervising Attorney) | |
| Statistics Clerk | |

✓ **ADD NEW NOTICE PARTY**
(if sending by fax, mailing address must also be provided)

Name: Ambassador Pierre-Richard Prosper

Firm:

Address (include suite or floor): P.O. Box 581103

Salt Lake City, UT  84158

*E-mail: Prosper.Pierre@Arentfox.com

*Fax No.:

* For CIVIL cases only

**JUDGE / MAGISTRATE JUDGE (list below):**

Initials of Deputy Clerk  jh

EXHIBIT  2

PAGE  25

**Exhibit  3**

1 | THOMAS J. NOLAN (Bar No. 66992)
  | (tnolan@skadden.com)
2 | JASON D. RUSSELL (Bar No. 169219)
  | (jrussell@skadden.com)
3 | MARINA V. BOGORAD (Bar No. 217524)
  | (mbogorad@skadden.com)
4 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
  | 300 South Grand Avenue, Los Angeles, CA  90071-3144
5 | Tel.: (213) 687-5000 / Fax: (213) 687-5600
6 | KENNETH PLEVAN (admitted *pro hac vice*)
  | (kplevan@skadden.com)
7 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
  | Four Times Square, New York, NY 10046
8 | Tel.: (212) 735-3000 / Fax: (212) 735-2000
9 | Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
10 | MGAE de Mexico, S.R.L. de C.V., and Isaac Larian

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| v. | Honorable Stephen G. Larson |
| MATTEL, INC., a Delaware corporation, | MGA PARTIES' MEM. OF POINTS AND AUTHORITIES IN OPPOSITION TO MATTEL, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| Defendant. | |
| AND CONSOLIDATED ACTIONS | **FILED UNDER SEPARATE COVER:** |

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**FILED UNDER SEPARATE COVER:**
(1) MGA PARTIES' OPP'N TO MATTEL, INC.'S [CORRECTED] SEP. STMT. OF UNCONTESTED FACTS AND CONCLUSIONS OF LAW;
(2) DECLARATIONS OF THOMAS J. NOLAN, ROBERT TONNER, CARTER BRYANT, PETER S. MENELL, GLENN V. VILPPU and PAULA GARCIA;
(3) MGA PARTIES' OPP'N TO MATTEL, INC.'S REQ. FOR JUDICIAL NOTICE;
(4) MGA PARTIES' REQ. FOR JUDICIAL NOTICE;
(5) MGA PARTIES' OBJECTIONS TO MATTEL, INC.'S EVIDENCE;
(6) [PROPOSED] ORDER; and
(7) PROOF OF SERVICE.

Hearing Date: April 22, 2008; Time: 10:00 a.m.

MGA Parties' Opposition to Mattel's Motion for Partial Summary Judgment, Case No. CV 04-9049 SGL (RNBx)

EXHIBIT   3

PAGE   216

1  (Id.)  Under her guidance, MGA's development team did not try to copy Bryant's drawings,

2  in fact they decided that the final dolls should not look like the drawings.  (Id.)

3       In addition, Margaret Leahy, the sculptor commissioned to create the exploratory

4  sculpt for the new doll line, was given full freedom to utilize her own artistic vision in

5  creating the sculpt.  (See, e.g., OF ¶ 25.)  When Bryant provided Leahy with his sketches,

6  he told her: "'Here's what I've done.  Let's see what you come up with.'"  (Id.)  Leahy

7  recognized that, "[f]rom a sculptor's standpoint, [Bryant's] drawings [weren't] really

8  usable."  (Id.)  MGA Parties' expert Vilppu, confirms this, pointing out "Bryant's sketches

9  lack three dimensional information."  (Vilppu Report ("Vilppu") ¶¶ 25-26.)

10       The preliminary sculpt completed on October 25, 2000 differed from the figures in

11  Bryant's sketches in significant ways: (i) the hips were far more narrow, and the legs were

12  far more slender, than depicted in Bryant's sketches; (ii) the posture was straight-up-and-

13  down, rather than slouched-back as in Bryant's sketches; the angle at which the hands met

14  the arms was reversed; (iii) the cheeks were rounder than in Bryant's sketches and the

15  features were "washed out," rather than rigidly defined as in Bryant's sketches; (iv) the

16  upper torso was made smaller relative to the waist, creating a less curvy silhouette, than that

17  depicted in Bryant's sketches; and (v) the lips on the sculpt were reduced in overall size and

18  became less pouty and more conservative vis-à-vis Bryant's sketches. (OF ¶ 167.)  The

19  October 25, 2000 version of the sculpt, however, was by no means final, as the involvement

20  of engineering and other creative input resulted in more changes.  (Id. ¶ 168.)

21       Finally, the face designs of MGA's BRATZ dolls were created independently by a

22  freelance artist.  (Id. ¶ 61.)  Thus, the BRATZ dolls looked considerably different than the

23  Bryant sketches. (Garcia Decl. ¶ 19.) As Vilppu notes, "it is clear that there was a dramatic

24  evolution that occurred in between the initial sketches and the dolls."  (Vilppu ¶ 24.) Thus,

25  ample evidence supports MGA's denial of copying, which presents a genuine issue.

26       **2.**   **Mattel's Similarity Analysis Is Completely Controverted by Vilppu**

27       In a 50-plus page rebuttal report, Vilppu comprehensively refutes the position of

28  Mattel's art expert, Lee Loetz – using the same exhibit comparisons Loetz used.  A few

then did so only as a means of "litigating MGA to death." (MGA MSJ at 1-4, 12.) If Mattel had legitimate claims, it does not, its failure to act on them promptly is a failure to mitigate.

## V.  IF THE COURT HAS ANY DOUBTS, THEN THE MGA PARTIES ARE ENTITLED TO 56(F) RELIEF TO OBTAIN PENDING DISCOVERY

"[S]ummary judgment is disfavored where relevant evidence remains to be discovered," and can be granted only where such discovery would be "fruitless." Jones v. Blanas, 393 F.3d 918, 930, 935 (9th Cir. 2004). Although the MGA Parties believe there is ample evidence to deny Mattel's motion, if the Court has any doubts on the MGA Parties' affirmative defenses of statute of limitations, laches, waiver, estoppel, acquiescence, consent, abandonment, or mitigation, then Rule 56(f) relief is plainly warranted.[38]

Indeed, Mattel is withholding vital evidence on: (i) the timing of its knowledge that Bryant created BRATZ and took that creation to MGA; (ii) prior and subsequent alterations in the Inventions Agreements that show that Mattel knew that its agreements did not convey the interests that Mattel now claims; (iii) Mattel's efforts to enforce, discuss or negotiate agreements with its employees between 1995 and 2005, including specifically its knowledge that employees were "moonlighting" and earning monies while employed at Mattel for engaging in creative and inventive work for competitors; and (iv) its decision whether to sue MGA and Larian. (Nolan Decl. ¶¶ 2-6.) These items are subject to pending motions to compel that will not be resolved until summary judgment briefing is complete.

## CONCLUSION

For the foregoing reasons, Mattel's partial summary judgment motion should be denied.

DATED: March 24, 2008            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                                 By: _____
                                         Marina V. Bogorad
                                     Attorneys for the MGA Parties

---

[38]  Orlando Residence, Ltd. v. GP Credit Co., LLC, 2006 WL 2849866, at *11 (E.D. Wis. Sept. 29, 2006) (continuing summary judgment motion under Rule 56(f) until pending motions to compel discovery relating to statute of limitations issues were resolved to allow plaintiff to "conduct [further] discovery ... regarding the accrual of its causes of action ... [and] any tolling of the statute(s) of limitations" and "supplement its summary judgment response" accordingly).

**Exhibit  4**

**THIS EXHIBIT IS FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**

**Exhibit 5**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an individual,

        Plaintiff,

                     CASE NO.
        vs.          CV 04-9040 SGL(RNBx)
                     Consolidated with
                     Case No. CV 04-09059
                     Case No. CV 05-02727

MATTEL, INC., a Delaware
corporation,

        Defendant.

**CERTIFIED
COPY**

_____

AND CONSOLIDATED ACTIONS

_____

DEPOSITION OF ROBERT ALLEN TONNER

New York, New York

Friday, March 21, 2008

Reported by:
Steven Neil Cohen, RPR

JOB NO. 84793

EXHIBIT 5

PAGE 38

ROBERT ALLEN TONNER                    03/21/08

1                    March 21, 2008

2                    10:00 a.m.

3

4           Videotaped Deposition of ROBERT

5     ALLEN TONNER, taken by Defendant, pursuant

6     to stipulation, at the offices of Quinn

7     Emanuel Urquhart Oliver & Hedges, LLP, 51

8     Madison Avenue, New York, New York, before

9     Steven Neil Cohen, a Registered Professional

10    Reporter and Notary Public of the State of

11    New York.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                         2

EXHIBIT ___5___

PAGE ___39___

```
 1                    APPEARANCES

 2

 3   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

 4   Four Times Square

 5   New York, New York 10036

 6            Attorneys for MGA and Robert Allen

 7            Tonner

 8   BY:    KENNETH A. PLEVAN

 9

10   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

11   865 South Figueroa Street

12   10th Floor

13   Los Angeles, California 90017

14

15            Attorneys for Defendant

     BY:    JON COREY, ESQ.
16

17

18   ALSO PRESENT:

19            Thomas DelVecchio, Videographer

20

21

22

23

24

25
```

3

EXHIBIT 5

PAGE 40

ROBERT ALLEN TONNER                                03/21/08

1          IT IS HEREBY STIPULATED AND

2    AGREED, by and between counsel for the

3    respective parties hereto, that the sealing

4    and filing of the within deposition be

5    waived; that such deposition may be signed

6    and sworn to before any officer authorized

7    to administer an oath; that all objections,

8    except as to form are reserved to the time

9    of trial.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

EXHIBIT  5

PAGE  41

12:06:00   1      and mentioned all the dolls.

2                     I had slides, I did a Power Point

3      of all the dolls, the fashion doll history.

4                     It is a lecture that I give at

12:06:12   5      clubs and schools and whatever.

6           Q.    Okay.

7                 Did Mr. Meyer speak?

8           A.    No; not that I remember, no.

9           Q.    Did Ms. Tomiyama speak?

12:06:25  10           A.    She answered -- oh, she spoke up

11      if she wanted to.  She interjected a couple

12      of things, I think, from what I remember.

13           Q.    You said in your report that you

14      heard from her.  What does that mean?

12:06:41  15           A.    Meaning that she was there at the

16      time.

17                     We said hello to each other and

18      she handed out a sheet of paper comparing --

19      it was about face painting.

12:06:51  20                I believe she is a face painter

21      and -- I know she is a face painter.

22                     It shows the Bratz doll and

23      Carter's sketches, a comparison sort of

24      thing.

12:07:21  25           Q.    Did she give that to people other

93

EXHIBIT   5

PAGE   42

12:07:23  1    than you?

2         A.    Oh, I believe she did.

3         Q.    It was like a handout for the

4    room?

12:07:30  5    A.    Not for the room.

6               From what I remember I think she

7    gave one to Michelle.

8               That is all I can remember.

9         Q.    Why did she give it to you?

12:07:40 10    A.    I think there is a little bit of

11   professional, you know, she is kind of a fan

12   of what we do and I think she just -- you

13   know, it was a friendly thing to do, I

14   think.

12:07:52 15             You know, she may have -- and

16   maybe it was to help me on my report or

17   whatever.

18             I don't know why she would have

19   necessarily given it to me.

12:08:02 20    Q.    Did you use it for your report?

21        A.    Well, no, not really, because I

22   thought -- I felt that it was a very

23   technical sort of thing and very -- it was

24   high detail, and I basically agreed with, if

12:08:15 25   she was saying this sketch is different from

94

EXHIBIT 6

PAGE 43

1

2

3

4

5

6

7

8

9        I, ROBERT ALLEN TONNER, do hereby declare

10   under penalty of perjury that I have read the foregoing

11   transcript; that I have made any corrections as appear

12   noted, in ink, initialed by me, or attached hereto;

13   that my testimony as contained herein, as corrected, is

14   true and correct.

15        EXECUTED this_____day of_____,

16   20___, at_____, _____.
                    (City)                    (State)

17

18

19

20        _____

21        ROBERT ALLEN TONNER

22

23

24

25

305

EXHIBIT 5

PAGE 44

18:05:12

CERTIFICATE

STATE OF NEW YORK )

: ss

COUNTY OF NEW YORK)

I, Steven Neil Cohen, a Registered

18:05:12  Professional Reporter and Notary Public

within and for the State of New York, do

hereby certify:  That ROBERT ALLEN TONNER,

the witness whose deposition is herein

before set forth, was duly sworn by me and

18:05:12  that such deposition is a true record of the

testimony given by such witness.

I further certify that I am not

related to any of the parties to this action

by blood or marriage and that I am in no way

18:05:12  interested in the outcome of this matter.

I further certify that neither the

deponent nor a party requested a review of

the transcript pursuant to Federal Rule of

Civil Procedure 30(e) before the deposition

18:05:12  was completed.

In witness whereof, I have

hereunto set my hand this 24th day of March

2008.

STEVEN NEIL COHEN, RPR

**Exhibit  6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION


CARTER BRYANT, an individual,

        Plaintiff,

        vs.

MATTEL, INC., a Delaware
corporation,

        Defendant.

CASE NO.
CV 04-9040 SGL(RNBx)
Consolidated with
CV 04-09059 and
CV 05-02727

CERTIFIED
COPY

AND CONSOLIDATED ACTIONS


CONFIDENTIAL - ATTORNEYS EYES' ONLY

DEPOSITION OF MARY BERGSTEIN

New York, New York

Monday, April 7, 2008


Reported by:
Steven Neil Cohen, RPR

JOB No. 85523

EXHIBIT 6
PAGE 46

```
 1                    April 7, 2008
 2                     9:14 a.m.
 3
 4            Videotaped Deposition of MARY
 5    BERGSTEIN, taken by Defendant, pursuant to
 6    stipulation, at the offices of Quinn Emanuel
 7    Urquhart Oliver & Hedges, LLP, 51 Madison
 8    Avenue, New York, New York, before Steven
 9    Neil Cohen, a Registered Professional
10    Reporter and Notary Public of the State of
11    New York.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

2

EXHIBIT ___6___

PAGE ___47___

```
 1                 APPEARANCES

 2

 3    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

 4    Four Times Square

 5    New York, New York 10036

 6            Attorneys for MGA and Isaac Larian

 7    BY:    LAUREN E. AGUIAR, ESQ.

 8           MICHELLE M. CAMPANA, ESQ.

 9

10    QUINN EMANUEL URQUHART OLIVER & HEDGES,

11    LLP

12    865 South Figueroa Street

13    10th Floor

14    Los Angeles, California 90017

15            Attorneys for Defendant

16    BY:    TIMOTHY L. ALGER, ESQ.

17

18    ALSO PRESENT:

19            Thomas Del Vecchio, Videographer

20

21

22

23

24

25
```

3

EXHIBIT ___6___

PAGE ___48___

1          IT IS HEREBY STIPULATED AND

2     AGREED, by and between counsel for the

3     respective parties hereto, that the sealing

4     and filing of the within deposition be

5     waived; that such deposition may be signed

6     and sworn to before any officer authorized

7     to administer an oath; that all objections,

8     except as to form are reserved to the time

9     of trial.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

EXHIBIT _____ 6

PAGE _____ 49

```
09:36:18    1          Q.     Do you recall generally what
            2    Ms. Middleton offered an opinion about?
            3          A.     No, I don't.  At this moment I
            4    don't.
09:36:31    5          Q.     The next day, February 23, it also
            6    mentions a witness named Tomiyama.
            7                 Do you see that?
            8          A.     Yes.
            9          Q.     I will spell it for the court
09:36:39   10    reporter; T-O-M-I-Y-A-M-A.
           11                 Did you -- do you remember
           12    reviewing a report by Ms. Tomiyama?
           13          A.     Yes.
           14          Q.     Do you recall what Ms. Tomiyama
09:36:51   15    testified -- let me rephrase the question.
           16                 Do you recall what the general
           17    area of opinion was that Ms. Tomiyama
           18    offered?
           19          A.     Yes.
09:37:01   20          Q.     What was that?
           21          A.     She was comparing -- her report
           22    had to do with the -- a comparison of the
           23    drawings, preparatory sketches, with the
           24    actual dolls.
09:37:25   25          Q.     Anything else?
```

24

EXHIBIT ___6___

PAGE ___50___

MARY BERGSTEIN                                04/07/08
CONFIDENTIAL ATTORNEYS' EYES ONLY

09:37:38  1        A.      I believe she talked about the
          2    process of doll manufacture and design.
          3        Q.      Did you rely on Ms. Tomiyama's
          4    report in any respect for -- in reaching
09:37:54  5    your opinions?
          6        A.      Yes.
          7        Q.      In what respect?
          8        A.      Verifying my opinions, I would
          9    say, more than reaching.
09:38:13 10            That was a chart that she had
         11    prepared of the physical features of the
         12    doll and drawing.
         13            I didn't rely on it to formulate
         14    my own opinion but it did confirm some of my
09:38:33 15    observations.
         16        Q.      What observations did it confirm?
         17        A.      It confirmed several of the
         18    differences between the dolls and the
         19    preparatory sketches.
09:39:11 20        Q.      Did you rely on Ms. Tomiyama's
         21    report for anything else?
         22            MS. AGUIAR:  Objection.
         23            THE WITNESS:  No.
         24    BY MR. ALGER:
09:39:30 25        Q.      The next date on your invoice, you

                                                         25

EXHIBIT ___6___
PAGE ___51___

17:55:26   1          opinions in my report.

           2                  MS. AGUIAR:  I have nothing

           3          further.

           4                  MR. ALGER:  Thank you.

17:55:37   5                  THE VIDEOGRAPHER:  The time is

           6          5:55 p.m., Monday, April 7, 2008.

           7                  This is the end of tape number 6

           8          and completes the videotaped deposition

           9          of Ms. Mary Bergstein.

17:55:49  10                  We are off the record.

          11                  (Discussion off the record)

          12                  (Time noted:  5:55 p.m.)

          13

          14          I, MARY BERGSTEIN, do hereby declare

          15   under penalty of perjury that I have read the

          16   foregoing transcript; that I have made any

          17   corrections as appear noted, in ink, initialed

          18   by me, or attached hereto; that my testimony as

          19   contained herein, as corrected, is true and

          20   correct.

          21          EXECUTED this_____day of_____,

          22   20___, at_____, _____.
                                    (City)                    (State)

          23

          24                  _____

          25                      MARY BERGSTEIN

                                                                316

EXHIBIT ___6___

PAGE ___52___

CERTIFICATE

STATE OF NEW YORK )
                  :  ss
COUNTY OF NEW YORK)

I, Steven Neil Cohen, a Registered Professional Reporter and Notary Public within and for the State of New York, do hereby certify:  That MARY BERGSTEIN, the witness whose deposition is herein before set forth, was duly sworn by me and that such deposition is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage and that I am in no way interested in the outcome of this matter.

I further certify that neither the deponent nor a party requested a review of the transcript pursuant to Federal Rule of Civil Procedure 30(e) before the deposition was completed.

In witness whereof, I have hereunto set my hand this 8th day of April 2008.

_Steven Neil Cohen_

STEVEN NEIL COHEN, RPR

EXHIBIT ___6___

PAGE ___53___

**Exhibit 7**

**MGA Entertainment, Inc. v. Mattel, Inc., et al.**

Case No. CV 05-02727

Expert Report of Peter S. Menell

February 11, 2008

CONFIDENTIAL – ATTORNEYS EYES ONLY

EXHIBIT 7

PAGE 54

Botticelli ("Birth of Venus") – depicting nude and pregnant women in a "gesture of modesty" pose. See *id.* at 111, 115-16. Slides [B38]-[B39] illustrate the challenge of filtration and comparison in the context of musical compositions. They require the audience to compare musical compositions while at the same time ignoring features – such as rhythm, short phrases, and unoriginal progressions. Slide [B40] examines three-dimensional works. Slides [B41]-[B54] illustrate how infringement analysis applies to the context of computer software, a particularly constrained medium of expression.

## II. Copyright Infringement Analysis – Whether the Bratz Dolls Infringe Copyright in Carter Bryant's Sketches

39. *Application of these Concepts to the Present Case.* In this section, I apply the principles set forth in Section I to the present dispute. In order to avoid the factual disputes relating to the time period in which Carter Bryant came up with and drew the Bratz sketches and whether Margaret Leahy and other MGA sculptors and artists "copied" from Carter Bryant's sketches, I base the analysis of this section of the report on the express assumptions that copyrights in the sketches are owned by someone other than MGA and that MGA's artists saw Carter Bryant's sketches before conducting their own work. I will be skipping over the "factual copying" element of the copyright infringement framework and focus my analysis of whether MGA's Bratz dolls are "substantially similar" to copyright-protected expression in Carter Bryant's sketches. As with Section I of this report, my analysis is illustrated through a series of slides, reproduced in Appendix C.

40. *Basis for the Analysis.* In preparing this analysis, I have drawn upon the following sources: (1) Carter Bryant Sketches; (2) Carter Bryant's Deposition Testimony; (3) MGA's Bratz dolls; (4) the blank form for MGA's Bratz dolls; (5) sculpts leading up to the final Bratz doll blank; (6) Draft Report of Mary Bergstein, Art/Popular Culture Historian; (7) Draft Report of Robert Tonner, Fashion Doll Designer, Sculptor, and History Expert; (8) Draft Report of Christina (Tina) Tomiyama, Fashion Doll Face Painting Expert, Fashion Doll Industry Expert, and Doll Product Manager; (9) Slide Presentation by Robert Tonner (presented to MGA Experts on January 3, 2008 at Skadden, Arps, Slate, Meagher & Flom LLP's Los Angeles office); (10) Prior Art and Popular Culture Material (Seventeen Magazine (August 1998 edition)); image searches on the Internet; on-line resources about specific artists, dolls, and popular culture); and (11) my own knowledge of popular culture.

41. *Avoiding the Plagiarism Trap.* As discussed in Section I of the report, copyright protection does not track the moral intuition relating to plagiarism. Rather, copyright analysis requires a systematic process to avoid hampering the freedom of expression and competition. See Paragraphs 16 and 36. Slide [C1] shows Carter Bryant's sketches of the Jade character on the left and MGA's Jade doll on the right. Copyright law does not protect a name. Nor does it protect many aspects of Carter Bryant's sketches. Yet, without careful instruction, a jury may naturally be led to think that the Jade doll "copies" Bryant's sketches. Such a conclusion would, in my opinion, overlook what is in fact protected in the sketches and to what extent those elements or compilations of elements are substantially similar or possibly virtually identical to

-15-

EXHIBIT _____7_____

PAGE _____55_____

CONFIDENTIAL –
ATTORNEYS EYES ONLY

the Jade doll.

42. *The Abstraction Framework.* Slide [C2] begins the analysis with Judge Learned Hand's classic statement of the copyright infringement framework. Drawing upon Mary Bergstein's model of the process of developing visual and sculptural art, Slide [C3] presents the levels of abstraction applicable in the context of fashion dolls. The top of the pyramid – the highest level of abstraction – contains the concepts animating the work. These ideas are excluded from copyright protection. At the next level lies sketches of the concept(s). Mary Bergstein refers to them as '"notes' on paper." They lack significant detail or expression. The next level of the abstractions waterfall consists of studies. Here, the artist is engaged in more detailed illustration, typically observing the concepts from multiple vantage points. They are still rather inchoate and copyright protection is typically judged thin at this level. Next come drawings, which are detailed expressions of the concepts. Drawings provide the basis for models and finally, in the case of fashion dolls, three-dimensional sculpts with face paint. As Robert Tonner explained during our meeting, even fully detailed drawings provided to different sculptors can result in quite different dolls. In his report, he notes that:

> Many companies produce dolls made to represent the same characters. One of the most popular characters is Scarlett O'Hara from the movie Gone with the Wind. World Doll in the 1980's, Mattel, the Franklin Mint and Tonner Doll have all done portraits of the actress, Vivian Leigh, who portrayed Scarlett in the Movie. Each of the dolls look markedly different although they are all supposed to portray the same person. The point being, that each sculptor brings his/her personal style to a project – even one as specific as Scarlett O'Hara.

At the bottom of the pyramid – where a detailed fashion doll has been sculpted and painted – copyright protection can be significantly more robust, depending, of course, on the extent to which the sculptor and face painter have departed from prior art sources.

43. *Levels of Abstraction: Carter Bryant's Sketches.* As Mary Bergstein and Tina Tomiyama have expressed, Carter Bryant's illustrations prior to October 19, 2000 of the Bratz doll can best be characterized as sketches, at least with regard to the doll features (body, face, and hair). (Tina Tomiyama notes that the illustrations of the "soft goods" – the fashions being worn by the dolls (Carter Bryant's area of expertise and passion) – are more detailed, and could be characterized as drawings. But as I understand the dispute, there is not any serious disagreement about infringement of particular fashions. In any case, such fashions changed periodically.) Slide [C4] shows that the doll features (as opposed to "soft goods") of Carter Bryant's illustrations sit quite high in the pyramid of abstractions. Carter Bryant's conception reflected three principal elements: (1) attitude: sassy, bratty fashion dolls (2) ethnic/racial orientation: an ensemble of four friends reflecting different racial and ethnic backgrounds; and (3) doll features: a disproportionately large head (relative to human dimensions and some (but not all) fashion dolls) with large eyes and particularly large feet. Apart from the clothing fashions, the illustrations were rather rudimentary. The sketches provided only a frontal (or slightly angled) view. Therefore, the depth of facial features cannot be perceived. The facial elements are particularly

-16-

EXHIBIT _____ 7

PAGE _____ 46

CONFIDENTIAL – ATTORNEYS EYES ONLY

inchoate and stylized. Tina Tomiyama notes that the sketches were not "instructional," but rather conceptual. She sees them more as carrying forward the idea of sassy, multi-racial girls, not a detailed expression. Furthermore, she does not consider the sketches to have been realistic in terms of the constraints of fashion doll manufacturing and functionality. Robert Tonner noted that the sketches did not provide much guidance to a sculptor. They were not schematic in nature, but rather high concept. He did not feel that they would provide much constraint on a sculptor. Rather, the sculptor would need to bring a lot of their own creativity to the job of building a doll.

44. *Filtration.* With the abstraction stage complete, Slide [C5] begins the analysis of filtration. The abstraction pyramid has been lowered into the filtration colander. In this stage of the analysis, I explore the various limiting doctrines aimed at determining the copyright-protected elements of Carter Bryant's illustration. As a preliminary observation, I will note that the illustrations are near the top of the pyramid. Copyright protection is quite thin at that altitude. Nonetheless, there may be enough expression for copyright to subsist, at least against slavish copying. Slides [C6]-[C19] provide a basis for assessing the principal limiting doctrines that come into play in the filtration stage of the analysis: originality, merger, scènes à faire, unprotectability of functional features (including inseparable expressive features of useful articles).

45. As developed in his deposition testimony, Carter Bryant has spent much of his life studying fashion illustration, fashion design, and fashion dolls. From a young age, he competed with his mother to read the latest fashion magazines. Growing up in the 1970s and 1980s, he was exposed to the various waves of popular culture from television, magazines, and formal study of fashion design. He studied fashion illustration following high school. He worked in the fashion doll industry through the 1990s. Thus, he was exposed to a wide range of influences. From a copyright standpoint, he was not operating in a "clean room" when he made the Bratz sketches. Rather, he acknowledges his interest in reflecting cultural trends as well as the profound influence of those who came before him. He was not interested in creating extra terrestrial beings. Rather, he sought to create a fashion doll that would appeal to girls and provide a substrate for him to pursue his interest in fashion design.

46. *Prior Widely-Known Character Illustration.* Drawing upon Robert Tonner's historical look at character art, Slides [C6]-[C7] contain several of the more influential sources for cartoon illustrators of Carter Bryant's generation. Marvin Fleischer created the Betty Boop character in a series of films released by Paramount Pictures in the early 1930s. At the time, her overt sexual appeal created quite a stir and attracted large audiences. The character was modeled after Helen Kane, a popular singer in the 1920s and actress for Paramount Pictures. As illustrated in Slide [C6], Betty Boop's features were exaggerated -- disproportionately large head, large round eyes with distinct eye lashes, hour-glass figure, long legs. Slide [C7] contains examples of break-through Japanese anime art that became popular in the United States. The "Speed Racer" cartoon series derives from Tatsu Yoshida's "Mach GoGoGo" series developed in Japan in the 1960s. Yoshida based the character on the U.S. films "Viva Las Vegas" and the James Bond film, "Goldfinger." Trans-Lux acquired the U.S. rights, recorded voice-overs, and licensed the

-17-

EXHIBIT ___7___

PAGE ___57___

CONFIDENTIAL –
ATTORNEYS EYES ONLY

within the reasonable expectations of the weaker or 'adhering' party." See *Cubic Corporation v. Marty*, 185 Cal.App.3d 438, 229 Cal.Rptr. 828, 1 U.S.P.Q.2d 1709 (Cal. Ct. App. 1986).

86. *Ineligibility of Bryant's Bratz Concept or Sketches for Utility Patent Protection circa 2000.* Based on my understanding of patent law, I do not believe that the concept or sketches for the Bratz dolls could have received a utility patent. It is doubtful that the Patent Office would seriously consider a patent application for fashion dolls apart from any mechanical or other technological features. Utility patents are not available for purely aesthetic features of articles of manufacture. There were no technological features in the Bratz concept or sketches.

87. I continue to review materials relating to this matter and reserve the right supplement my report as appropriate.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of February, 2008, at Berkeley, California.

Peter S. Menell

-31-

EXHIBIT ____7____

PAGE ____58____

CONFIDENTIAL –
ATTORNEYS EYES ONLY

**Exhibit 8**

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL,   )
                                )
                    PLAINTIFF,   )
                                )
        V.                       )        NO. CV 04-9040 SGL (RNBX)
                                )
MATTEL, INC., A DELAWARE         )
CORPORATION,                     )
                                )
              DEFENDANTS.        )
_____ )
                                )
AND CONSOLIDATED ACTION (S).     )
_____ )

# C O N F I D E N T I A L

### ATTORNEYS' EYES ONLY

## DEPOSITION OF SAMIR K. KHARE

## VOLUME I

## AUGUST 20, 2007



REPORTED BY:
PAMELA S. HARRIS
CSR NO. 3909
JOB NO. 07AE568-PH

5 l 5 S. Flower Street
Suite 3600
Los Angeles, California 9007 l
Office: (2 l 3) 955-0070
Fax: (2 l 3) 955-0077

EXHIBIT ___8___

PAGE ___69___

**RECEIVED**

SEP 1 8 2007

EXHIBIT ___8___

PAGE ___60___

DEPOSITION OF SAMIR K. KHARE

1          UNITED STATES DISTRICT COURT

2   CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

3

4   CARTER BRYANT, AN INDIVIDUAL, )
                                  )
5                  PLAINTIFF,     )
                                  )
6       V.                        ) NO. CV 04-9049 SGL
                                  )            (RNBX)
7                                 )
    MATTEL, INC., A DELAWARE      )
8   CORPORATION,                  )     VOLUME I
                                  )
9                  DEFENDANTS.    )
                                  )
10  AND CONSOLIDATED ACTIONS      )

11

12          C O N F I D E N T I A L

13            ATTORNEYS' EYES ONLY

14        (PURSUANT TO STIPULATION,
            THIS TRANSCRIPT HAS BEEN
15        DESIGNATED CONFIDENTIAL)

16      DEPOSITION OF SAMIR K. KHARE,

17      DESIGNATED AS A 30(B)(6) WITNESS

18      FOR MGA ENTERTAINMENT, INC.,

19      TAKEN ON BEHALF OF MATTEL, INC.,

20      AT 865 SOUTH FIGUEROA STREET,

21      TENTH FLOOR, LOS ANGELES,

22      CALIFORNIA, COMMENCING AT 9:37

23      A.M., ON MONDAY, AUGUST 20,

24      2007, REPORTED BY PAMELA S.

25      HARRIS, CSR #3909.

                                        2

A & E COURT REPORTERS    (213) 955-0070    FAX:  (213) 955-0077

EXHIBIT 8

PAGE 61

DEPOSITION OF SAMIR K. KHARE

1   APPEARANCES OF COUNSEL:

2   FOR DEFENDANT MATTEL, INC.:

3       QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
        BY:   MICHAEL T. ZELLER, ESQ.
4             BRIDGET A. HAULER, ESQ.
                  AND
5             DYLAN PROCTOR, ESQ.
              (A PORTION OF THE DEPOSITION)
6       865 SOUTH FIGUEROA STREET, TENTH FLOOR
        LOS ANGELES, CALIFORNIA  90017-2543
7       (213) 443-3000

8   FOR MGA ENTERTAINMENT, INC.:

9       O'MELVENY & MYERS
        BY:   DIANA M. TORRES, ESQ.
10      400 SOUTH HOPE STREET
        LOS ANGELES, CALIFORNIA 90071-2899
11      (213) 430-6000

12  ALSO PRESENT:

13      DAPHNE GRONICH, IN-HOUSE COUNSEL
        MGA ENTERTAINMENT, INC.
14
        STEVEN TOGAMI, THE VIDEOGRAPHER
15

16

17

18

19

20

21

22

23

24

25

                                              3

A & E COURT REPORTERS    (213) 955-0070    FAX:  (213) 955-0077

EXHIBIT __8__

PAGE __42__

DEPOSITION OF SAMIR K. KHARE

1        A.        CORRECT.

2        Q.        DIRECTING YOUR ATTENTION TO THE LAST

3    PAGE OF EXHIBIT 507, YOU STATED, IN SUBSTANCE, THAT

4    THIS DRAWING WAS USED ON ARTWORK AT SOME POINT; IS

5    THAT CORRECT?

6        A.        YES.

7        Q.        WAS IT USED FOR ANYTHING ELSE?

8        A.        NOT TO MY KNOWLEDGE, NO.

9        Q.        WAS THIS DRAWING THAT'S HERE ON THE

10   LAST PAGE OF EXHIBIT 507 USED IN CONNECTION WITH THE

11   CREATION OF BRATZ DOLLS IN ANY WAY?

12       MS. TORRES:   OBJECTION; BEYOND THE SCOPE, CALLS

13   FOR SPECULATION.

14       THE DEPONENT:   NO.   THAT -- THAT'S SIMPLY

15   IMPOSSIBLE.   YOU CAN'T GO FROM A 2-D FLAT DRAWING TO

16   A 3-D DOLL.   YOU SIMPLY CAN'T.

17   BY MR. ZELLER:

18       Q.        AND WHAT'S THE BASIS FOR THAT

19   STATEMENT?

20       A.        WELL, JUST WORKING WITH DOLLS AND

21   COMPARING A DOLL TO THIS, THIS DOESN'T GIVE YOU ANY

22   DIMENSIONS AT ALL.   IF YOU RECALL THE -- THE PATENTS

23   THAT WE WERE LOOKING AT EARLIER, THERE WERE MULTIPLE

24   VIEWS AND ANGLES OF THOSE ITEMS.

25                 SPECIFICALLY, THE DESIGN PATENTS, THEY

258

EXHIBIT   8

PAGE   63

DEPOSITION OF SAMIR K. KHARE

1          DECLARATION OF DEPONENT

2

3     I CERTIFY UNDER PENALTY OF PERJURY UNDER THE

4   LAWS OF THE STATE OF CALIFORNIA THAT THE FOREGOING

5   IS TRUE AND CORRECT.

6

7

8

9   EXECUTED _____, ON _____.
                    (PLACE)                    (DATE)

10

11

12                          _____
                               (SIGNATURE OF DEPONENT)
13

14

15

16

17

18

19

20

21

22

23

24

25

                                                    430

A & E COURT REPORTERS    (213) 955-0070    FAX:  (213) 955-0077

EXHIBIT ___8___

PAGE   104

```
 1   STATE OF CALIFORNIA      )
                              )        SS.
 2   COUNTY OF LOS ANGELES    )

 3

 4        I, PAMELA S. HARRIS, CERTIFIED SHORTHAND

 5   REPORTER, CERTIFICATE NO. 3909, FOR THE STATE OF

 6   CALIFORNIA, HEREBY CERTIFY:

 7              THE FOREGOING PROCEEDINGS WERE TAKEN

 8   BEFORE ME AT THE TIME AND PLACE THEREIN SET FORTH,

 9   AT WHICH TIME THE DEPONENT WAS PLACED UNDER OATH BY

10   ME;

11              THE TESTIMONY OF THE DEPONENT AND ALL

12   OBJECTIONS MADE AT THE TIME OF THE EXAMINATION WERE

13   RECORDED STENOGRAPHICALLY BE ME AND WERE THEREAFTER

14   TRANSCRIBED;

15              THE FOREGOING TRANSCRIPT IS A TRUE AND

16   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN;

17              I FURTHER CERTIFY THAT I AM NEITHER

18   COUNSEL FOR NOR RELATED TO ANY PARTY TO SAID ACTION

19   NOR IN ANY WAY INTERESTED IN THE OUTCOME

20   THEREOF.

21              IN WITNESS WHEREOF, I HAVE HEREUNTO

22   SUBSCRIBED MY NAME THIS ___17_____ DAY OF

23   September , 2007.

24

25
                    Pamela S. Harris
             PAMELA S. HARRIS, CSR NO. 3909
```

EXHIBIT ___8_____

PAGE ___65_____

**Exhibit  9**

1    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2      johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5      (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6    Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7    Facsimile: (213) 443-3100

8    Attorneys for Mattel, Inc.

9            UNITED STATES DISTRICT COURT

10         CENTRAL DISTRICT OF CALIFORNIA

11              EASTERN DIVISION

12    CARTER BRYANT, an individual,     CASE NO. CV 04-9049 SGL (RNBx)

13          Plaintiff,     Consolidated with
14        vs.     Case No. CV 04-09059
    Case No. CV 05-02727

15    MATTEL, INC., a Delaware
   corporation,     Hon. Stephen G. Larson

16          Defendant.     **DISPUTED JURY INSTRUCTIONS**

17

18    AND CONSOLIDATED ACTIONS     **Phase 1:**

19         Pre-Trial Conference:    May 5, 2008
        Trial Date:            May 27, 2008

20

21

22

23

24

25

26

27                        EXHIBIT ___9___

28                        PAGE ___166___

09/2476951.3

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___

## COPYRIGHT INFRINGEMENT—THREE-DIMENSIONAL WORKS CAN INFRINGE TWO-DIMENSIONAL WORKS

A two-dimensional work, such as a drawing, can be infringed by a three-dimensional work, such as a doll, when the works are substantially similar in their appearance.

**Authority:** *King Features Syndicate v. Fleischer*, 299 F. 533, 534, 538 (2d Cir. 1924) (copyright of a comic book infringed by three-dimensional dolls of a character); *Fleischer Studios v. Ralph A. Freundlich, Inc.*, 73 F.2d 276, 278 (2d Cir. 1934) (drawing of Betty Boop character infringed by substantially similar doll: "a three-dimensional form of doll, is an infringement of the two-dimensional picture or drawing").

EXHIBIT 9

PAGE 67

DISPUTED PROPOSED JURY INSTRUCTIONS

09/2476951 3