Received: 2/7/05 6:10PM; 310 553 5583 -> JetFax; Page 9
FEB-07-2005 18:08 FROM:LITTLER MENDELSON 310 553 5583 TO:12136240643 P.9/31

## IV.

## MATTEL'S STATEMENT OF FACTS

TBA

## V.

## ISSUE NUMBER ONE

Should Ann Driskill and Alan Kaye Be Compelled To Answer Deposition Questions That Were Improperly Objected To And To Which Mattel's Counsel Improperly Instructed Them Not To Answer?

### A. Bryant's Position

**1. Mattel Instructed Driskill Not To Answer On Impermissible Grounds.**

As a matter of law, Bryant is entitled to resume his questioning of Driskill and Kaye in all areas where Mattel instructed the witnesses not to answer questions based on lack of foundation, relevance and other impermissible grounds. Under the Federal Rules, "[a] person may instruct a witness not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)." Fed. R. Civ. P. 30 (d)(1). Instructions not to answer based on other grounds, such as those asserted by Mattel's attorneys, are "devoid of merit and fail[] to comply with the established procedure of FRCP 30(c)." Shapiro v. Paul Revere Life Ins. Co., 1997 WL 601430 at *1 (N.D. Cal. 1997) ("FRCP 30(d)(1) provides exclusive grounds for instructing a deponent not to answer."); see also Ralston Purina Co. v. McFarland, 550 F.2d 967, 973 (4th Cir. 1997) ("Counsel for party had no right to impose silence or instruct witnesses not to answer and if he believed questions to be without scope of [the discovery] orders, he should have done nothing more than state his objections"); Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995) ("It is inappropriate [for an attorney] to instruct a witness not to answer based on the basis of relevance."); Hearst/ABC-Viacom Entertainment Services v. Goodway Marketing, Inc., 145 F.R.D. 59, 63 (E.D. Pa. 1992) (the mere

Received: 2/7/05 6:11 ... 310 553 5583 -> JetFax ...920; Page 10
FEB-07-2005 18:08 FROM:LITTLER MENDELSON   310 553 5583   TO:12136240643   P.10/31

fact that a question is repetitive or irrelevant is not a proper ground to instruct a witness not to answer). If a deponent's counsel has an objection, the proper procedure is to state the objection for the record and allow the question to be answered. See Ralston Purina Co., 550 F.2d at 973.

Mattel disobeyed well-established procedural rules repeatedly. Counsel's improper objections and conduct during the depositions infected them from the start.[6] For example, Bryant's counsel attempted to question Driskill about some of Mattel's employment agreements, including its "Confidential Information and Inventions Agreement", which is directly at issue in this lawsuit. (Jacoby Decl., ¶ ). According to Driskill's own testimony, during her 11 year tenure as an employee of Mattel she had previously signed, or declined to sign, several versions of this agreement and, as Bryant's former supervisor and manager at Mattel, she was involved in administering Mattel's employment policies, including the enforcement of this agreement. (Jacoby Decl., ¶ ). She could identify no fact suggesting she signed agreements that were any different than those presented to former colleague Bryant.[7] (Jacoby Decl., ¶ ). Nonetheless, Mattel blocked any questioning about her knowledge of Mattel's employment agreements, objecting and instructing Driskill not to answer on the grounds that the questions "lacked foundation." (Jacoby Decl., ¶ ). The following excerpts are illustrative:

> Q:   Do you understand what that paragraph [in the Proprietary Information Check-Out Form] means?
>
> Mr. Zeller: I'm instructing the witness not to answer the question. Let's move on, counsel.
>
> Mr. Jacoby: On what grounds? Privilege?
>
> Mr. Zeller: No. On the complete lack of foundation. Were you

---

[6] Only select examples are quoted herein; all relevant excerpts are attached as exhibits to the declaration of Keith Jacoby filed concurrently in support of this Joint Stipulation and Motion, and highlighted for the Court's convenience. (Jacoby Decl., ¶ ).
[7] Specifically, in response to the question, "Do you have any reason to believe that the agreement that Carter Bryant signed was different in any way from the agreement that anybody else in collectibles signed back in 1999?," the witness responded, "no." (Jacoby Decl., ¶ ).

Received: 2/ 7/05 8:11     310 553 5583 -> JetFax 020; Page 11
FEB-07-2005 18:09 FROM:LITTLER MENDELSON   310 553 5583      TO:12136240643         P.11/31

1  not listening when she testified that she had not seen this document which you haven't bothered to mark as an exhibit?

2  (Jacoby Decl., ¶   ).

3  Q:  I understand you've testified that you haven't seen this document. Are you familiar with the policy that that paragraph articulates?

5           * * * *

6  Mr. Zeller: I'm going to instruct the witness not to answer the question as phrased ... on the basis there is no foundation for this, counsel.

8           * * * *

9  Mr. Jacoby .... I've laid 20 minutes of foundation that over the course of 11 years she's familiar with the policies and practices of the company. You don't get to immunize her from this testimony because she hasn't read this particular document. Mr. Zeller, you are obstructing the deposition, you are obstructing my ability to prove the facts in my cross-complaint. ...

13          * * * *

14  Mr. Zeller: Oh, I see. Well, then, that's another basis on which I'm instructing [the witness not to answer] because we've moved to dismiss your nonsensical cross-complaint. And you haven't shown any entitlement to discovery on it. So why don't you move on.

17  (Jacoby Decl., ¶   ).

18  Q:  Now, I'm going to ask you some questions about Carter Bryant's [Inventions and Assignment] Agreement, which I'm perfectly entitled to do.

20  Mr. Zeller: No, actually you're not, counsel. This lacks foundation. Why don't you move on?

21  Q:  What does the term "reduced to practice" mean to you?

22  Mr. Zeller: I'm instructing the witness not to answer the question. This completely lacks foundation.

24  (Jacoby Decl., ¶   ).

25  Q:  Okay. I've given you an opportunity to review this [Inventions and Assignments Agreement]. Why don't you take the opportunity to read it from top to bottom.

27  Mr. Zeller: What's your question, counsel?

28  Mr. Jacoby: I'm going to have lots of questions.

EXHIBIT 1    CASE NO. 04-9059 NM (RNBx)

PAGE 13

> Mr. Zeller: Well, she's not answering questions about -- you're not going to have a witness sit down, read a document that she's told you that she doesn't recall seeing before and ask her questions about it. It's that simple. You've been told that. So if you want to waste your time and have the witness reading the -- this document at the deposition, I guess that's your prerogative.

(Jacoby Decl., ¶ ). These "lack of foundation" objections were improper and did not provide any basis for instructing the witness not to answer. An attorney may not foreclose questioning about a document just because a witness may not recall seeing the particular document:

> When the deposing attorney presents a document to a witness at a deposition, that attorney is entitled to have the witness, and the witness alone, answer questions about the document. . . . *If the witness does not recall having seen the document before or does not understand the document, the witness may ask the deposing lawyer for some additional information, or the witness may simply testify to the lack of knowledge or understanding.*

Plaisted v. Geisinger Medical Center, 210 F.R.D. 527, 530 (2002)(emphasis added)("[d]irections to a deponent not to answer a question can be even more disruptive than objections. . . a party may instruct a deponent not to answer only when necessary to preserve a privilege" or on other limited grounds set forth in FRCP 30(d)).

At other points during the deposition, Mattel precluded Bryant from obtaining testimony concerning key employment agreements, by claiming that the questions had been "asked and answered," stating: "I'm instructing the witness not to answer repeated questions." (Jacoby Decl., ¶ ). This, too, was improper. That a question may have been asked and answered is not a legitimate basis for instructing a witness not to answer. First Tennessee Bank v. Federal Deposit Ins. Corp., 108 F.R.D. 640 (E.D. Tenn. 1985)(inappropriate to instruct a witness not to answer on the grounds that the question has been asked and answered).

Bryant's counsel's efforts to question Driskill about her understanding of Mattel's employment policies based, again, on her 11 years of knowledge and experience as a Mattel manager and employee were also foreclosed. (Jacoby Decl., ¶

). Here, too, Mattel's attorney obstructed Bryant's ability to obtain relevant testimony on the subject, by repeatedly interposing improper speaking objections and effectively precluding the witness from answering the questions. The following is illustrative:

> Q: Ok. If a Mattel employee in your department did a drawing, a pencil drawing, at home, would you believe – do you believe that it belongs to Mattel?
>
> Mr. Zeller: A pencil drawing of what?
>
> Mr. Jacoby: Anything.
>
> Mr. Zeller: Well, the question is incomplete. It's also a hypothetical. Lacks foundation.
>
> The witness: I think it depends on what the drawing is.
>
> Q: What kind of drawings would belong to Mattel?
>
> Mr. Zeller: Counsel, this is completely inappropriate and hypothetical. There's no foundation for this. You don't have a right to ask lay witnesses hypothetical questions.
>
> Mr. Jacoby: I'm asking her about Mattel's policies. And again, every time my questions go into an area you're uncomfortable with you [object] –
>
> Mr. Zeller: It's not uncomfortable with. It has to do with the fact that, as you know, you have to have a foundation to ask [these questions] –
>
> Mr. Jacoby: No, I don't, not in a deposition.
>
> Mr. Zeller: You don't think you have to have a foundation? Well, then I guess we better leave now, because we will go to court on that. That's absurd. You know full well you have to have foundation.
>
> Mr. Jacoby: I laid the foundation. She says she's familiar with [Mattel's employment] policies.

(Jacoby Decl., ¶  ).

Objections, such as these, to the competency of a witness to testify about certain subjects provide no basis for an instruction not to answer and, indeed, are preserved for trial without an objection even being stated during the deposition. See Fed. R. Civ. P. 32(d)(3)(A); see also Hall v. Clifton Precision, 150 F.R.D. 525, 528 n.3 (E.D.

Pa. 1993)( Under Fed. R. Civ. P. 32(d)(3)(A), objections to the competency, relevancy, or materiality of deposition testimony generally are preserved for trial. Therefore, counsel should not repeatedly interrupt the deposition to make these objections).

Mattel's counsel similarly prevented Driskill from answering a line of questions from Bryant's counsel regarding what similarities or differences Driskill observed, as an experienced designer, between "Bratz" dolls and Mattel's property and products, on the alleged grounds that the questions were a "waste of time", "overbroad" "vague", "irrelevant" and "just improper." (Jacoby Decl., ¶ ).

> Q: Okay. The Bratz dolls don't look like Barbie dolls. That's true, isn't it?
>
> A: I'm going to object. The question is overbroad. Lacks foundation. Vague and ambiguous.
>
> * * * *
>
> Q: What about the Bratz, as you first saw them, was different from anything you had seen at Mattel?
>
> Mr. Zeller: You know, counsel, this is – I'm going to start instructing the witness [not to answer]. This is [a?] complete and utter waste of time. Having a designer give a verbal inventory, without any documents or any foundation laid, as to differences, similarities, and the like in response to these overbroad and vague questions is just improper.
>
> Mr. Jacoby: She's – she testified that there were things that were different. I'm just following up on her answer.
>
> Mr. Zeller: I understand. And, you know, there's a point at which this is just –
>
> Mr. Jacoby: It's funny how that point comes when it gets to the part that would be helpful to my client's case.
>
> Mr. Zeller: I don't think that's – that's the case. I'm just giving you some forewarning that this is – this is only going to for so long because it's just completely irrelevant. Having a designer, like I [said], give a series of verbal inventory of things just from memory is about an irrelevant as it gets.

(Jacoby Decl., ¶ ). Mattel's instructions not to answer based on relevance were wholly improper. Hall, 150 F.R.D. at 528 n.3; Resolution Trust Corp., 73 F.3d at 266

13.                                CASE NO. 04-9059 NM (RNBX)

EXHIBIT ___1___
PAGE ___16___

Received: 2/7/05 6:13P   310 553 5583 -> JetFax 920;  Page 15
FEB-07-2005 18:10 FROM:LITTLER MENDELSON   310 553 5583   TO:12136240643   P.15/31

(objections not to answer based on relevancy are improper). The objections were also specious because discovery of this information is, without question, relevant. Mattel contends that Bryant "stole" the "Bratz" concept from Mattel, by copying Mattel's abandoned "Toon Teens" project or some other Mattel project. (Jacoby Decl., ¶  ). Whether Driskill observed similarities or differences between "Bratz" and Mattel's property is directly probative of whether "Bratz" was "stolen" or copied from Mattel property. Moreover, it goes without saying that information need not be admissible to be discoverable. Fed. R. Civ. P. 26 (b)(1). For discovery purposes, areas of inquiry need only appear "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26 (c); Ralston Purina Co., 550 F.2d at 973 ("it is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence") This standard was unquestionably satisfied by Bryant's counsel's questions at the deposition.

    **2.    Mattel Instructed Kaye Not To Answer On Impermissible Grounds.**

Mattel's counsel employed the same tactic at Kaye's deposition when Kaye was asked questions about the interpretation of Mattel's form employment contracts:

Q: If a Mattel designer paints a home as a hobby, is he required to offer those paintings to Mattel as a condition of his employment?

Mr. Zeller: The question is hypothetical, lacks foundation, and is incomplete as a hypothetical.

Q: By Mr. Jacoby: Based on your understanding of this paragraph, if a Mattel employee paints at home is he required to offer those paintings to Mattel?

Mr. Zeller: What's he painting? His house?

The witness: I would say it depends on his painting.

Q: By Mr. Jacoby: What does it depend on?

A: Depends on what he's painting.

* * * *

14.   CASE NO. 04-9059 NM (RNBx)

EXHIBIT _____1_____

PAGE _____

Q: He paints a picture of his house, is he required to offer it to Mattel?

A. I would say --

Mr. Zeller: Same objections.

The witness: I would say no.

\* \* \* \*

Q: How could someone distinguish between what Mattel can use to be made into a Mattel product versus what they can't, in your mind. . . . I'm saying given the fact that maybe a house — a house could be something that Mattel wouldn't be interested in turning into a dollhouse versus something that Mattel would be interested in turning into a dollhouse, it would require judgment to distinguish between the two; isn't that right?

Mr. Zeller: I'm going to instruct the witness not to answer this question. This is just abusive.

Mr. Jacoby: On the basis of what?

Mr. Zeller: On the basis that you are so completely out of bounds of wasting an executive's time on your hypotheticals. What basis do you think you have for asking these opinion hypotheticals of a lay witness and wasting the executive's time? Why don't you cite me a rule.

Mr. Jacoby: I'm not required ... to do that ... I'm asking him to explain a form that emanates from his department.

\* \* \* \*

Mr. Zeller: You've been asking him hypotheticals. And it is completely inappropriate . . . I'm telling you move on, counsel.

(Jacoby Decl., ¶ ).

Bryant's counsel also attempted to ask Kaye about an investigation that Mattel conducted of Bryant's purported "conversion" of Mattel's property. These efforts, too, were stifled by Mattel's counsel. (Jacoby Decl., ¶ ). For example, Bryant's counsel asked Kaye, based on his 28 years of experience in the field of Human Resources, "is it typical in an internal investigation that interviews are conducted[?]" Mattel's attorney retorted:

[T]his has absolutely nothing to do with this case. And so unless you lay some foundation as to how this could have anything whatsoever to do with this case,

15.   CASE NO. 04-9059 NM (RNBx)

EXHIBIT  1

PAGE  18

Received: 2/ 7/05  6:13P    310 553 5583 -> JetFax  20;  Page 17
FEB-07-2005 18:11 FROM:LITTLER MENDELSON  310 553 5583  TO:12136240643    P.17/31

I'm going to instruct the witness not to answer these questions.

(Jacoby Decl., ¶ ). He then argued that Bryant was not "allow[ed] to engage in what is clearly a fishing expedition on behalf of MGA in order to find out how it is Mattel ascertains its wrongdoing." (Jacoby Decl., ¶ ). This is nonsense under the modern rules of discovery.

> [N]o longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. *Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.* To that end, either party may compel the other to disgorge whatever facts he has in his possession.

Ralston Purina Co., 550 F.2d at 973 (emphasis added).

### 3. Mattel's Improper Instructions Not To Answer Are Alone Sufficient Grounds To Grant Bryant's Motion To Compel And Award Sanctions.

A motion to compel and an award of sanctions is appropriate based solely on Mattel's improper instructions to the deponents not to answer properly propounded questions. See FRCP 30(d)(1) and (3) ("If the court finds that any impediment, delay, or other conduct has frustrated the fair examination of the deponent, it may impose upon the persons responsible an appropriate sanction, including the reasonable costs and attorney's fees incurred by any parties as a result thereof"); see also Banco Nacional De Credito Ejidal, S.A. v. Bank of America Nat. Trust & Savings Ass'n, 11 F.R.D. 497, 499-500 (N.D. Cal. 1951) (granting motion to compel answers to deposition questions under FRCP 37 and issuing sanctions where opposing counsel improperly instructed witness not to answer questions); Plaisted, 210 F.R.D. at 530 (finding improper instructions not to answer during a deposition to be particularly disruptive and that the "making of an excessive number of objections may itself constitute sanctionable conduct"); see also Paramount Communications Inc. v. QVC Network Inc., 637 A.2d 34, 56 (Del. 1994) (finding counsel's behavior unacceptable

Received: 2/ 7/05 6:14P    310 553 5583 -> JetFax 920;  Page 18
FEB-07-2005 18:11 FROM:LITTLER MENDELSON  310 553 5583    TO:12136240643    P.18/31

where he "continually interrupted questioning, engaged in colloquies and objections . . . . and constantly pressed the questioner for time throughout the deposition"); One Bancorp Securities Litigation v. One Bancorp, 134 F.R.D. 4, 5-8 (D. Me. 1991) (granting motion to compel responses to deposition questions where the deponent, on advice of counsel, had refused to answer questions based on irrelevance); Ralston Purina Co., 550 F.2d at 973 (granting motion to compel because deponent's counsel improperly instructed the deponent not to answer a series of questions on grounds other than privilege or other bases specifically recognized in FRCP 30(d)(1), and stating that "[t]he action of plaintiff's counsel in directing [the witness] not to answer the questions posed to him was *indefensible and utterly at variance* with the discovery provisions of the Federal Rules of Civil Procedure").

Mattel deliberately frustrated Bryant's ability to obtain relevant testimony necessary for Bryant's defense and the prosecution of his cross-claims and to fairly examine the witnesses. Mattel's disruptive objections and improper instructions also unnecessarily prolonged and disrupted the depositions of Driskill and Kaye. (Jacoby Decl., ¶ ). Bryant's motion to compel and for sanctions should be granted for this reason alone.

4. **Mattel Also Instructed Driskill And Kaye Not To Answer Questions Based On Improper Assertions Of Privilege And Work Product.**

Even when Mattel seemingly instructed its witnesses not to answer questions on the permissible grounds of privilege, its instructions were often improper because it was using the privilege not only to shield advice sought or obtained in an attorney-client communication or legitimate attorney work-product, but also to shield underlying facts from discovery merely because the facts were transmitted, at some point, to an attorney. That a witness reveals facts to a lawyer or learns facts from a lawyer does not make such facts privileged. "[C]ourts have consistently held that the work-product concept furnishes no shield against discovery . . . by deposition, *of the*

17.   CASE NO. 04-9059 NM (RNBx)

EXHIBIT 1
PAGE 20