EXHIBIT 5

CONFORMED COPY

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2   johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
    Timothy L. Alger (Bar No. 160303)
5   (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Plaintiff Mattel, Inc.

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                  EASTERN DIVISION

| | |
|---|---|
| 13  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 14          Plaintiff, | Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727 |
| 15     vs. | |
| 16  MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| 17          Defendant. | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order of December 6, 2006]** |
| 18 | |
| 19  AND CONSOLIDATED CASES | DECLARATION OF RICHARD DE ANDA |
| 20 | |
| 21 | [Submitted in support of Opposition to MGA and Bryant's Joint Motion to (1) Compel Production of Certain Documents Withheld Under Claim of Privilege, (2) Attest to the Completeness of its February 2007 Production of March 2002 Investigation Documents, and (3) De-Designate Attorneys' Eyes Only Document.] |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

26

27         **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

28              **SUBJECT TO PROTECTIVE ORDER**

                    EXHIBIT _____5_____

                    PAGE _____55_____

77209/2104123.1

## DECLARATION OF RICHARD DE ANDA

I, Richard de Anda, declare as follows:

      1.     I am Vice President, Global Security, of Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

      2.     One of my responsibilities as Vice President, Global Security, is to manage investigations and inquiries into whether Mattel has been the victim of a criminal offense. I frequently work and consult with Mattel's in-house and outside counsel in connection with such matters for purposes of obtaining legal advice to carry out my responsibilities for Mattel and because they involve either actual or potential litigation by or against Mattel. Moreover, on some occasions my work is carried out at the express request and direction of Mattel's lawyers for purposes of assisting them in actual or potential litigation involving Mattel. I also consider my position an especially sensitive one within Mattel because, for example, disclosure of Global Security's methods of investigation to those who do not have a need to know (and in many instances even whether it is conducting or has conducted a particular investigation) risks comprising Mattel's ability to protect against thefts of its property and information. Among other things, it would help individuals and competitors to tailor their activities and behavior to circumvent or conceal detection.

      3.     I understand that outside counsel for Mattel have produced in this litigation documents for four inquiries that Mattel Global Security undertook relating to possible theft of Mattel property and trade secrets by MGA Entertainment, Carter Bryant, Ron Brawer and others. I am familiar with the records maintained by Mattel for those matters.

      4.     In the first matter, in the spring of 2002, I followed up on information that Carter Bryant might have misappropriated "Toon Teens," a doll line created by Mattel designer Lily Martinez, after Mr. Bryant left Mattel. The

07209/2104123.1

EXHIBIT _____ 5

PAGE _____ 56

1  second occurred in August 2002, after I received from Alan Kaye, Senior Vice

2  President, Human Resources, an anonymous letter addressed to Robert Eckert,

3  Mattel's Chief Executive Officer. I made inquiries into the allegations in that letter

4  and, in the course of doing so, spoke with Michele McShane, a Mattel in-house

5  attorney at Mattel, for the purpose of obtaining confidential legal advice about the

6  allegations to carry out by responsibilities for Mattel as its head of Global Security.

7  Ms. McShane conveyed to me her views and the views of outside counsel for

8  Mattel. I then wrote down my understanding of those statements in the document

9  that is attached, in redacted form, as Exhibit A. I have at all times kept these

10 communications in confidence and am not aware of them being transmitted to

11 anyone who is not a Mattel employee or served as outside counsel for Mattel.

12 Mattel's counsel has redacted those portions of Exhibit A that repeated the legal

13 advice provided to me by Ms. McShane and, through Ms. McShane, by outside

14 counsel in August 2002. In fact, the portions that are redacted were statements

15 made to me by Ms. McShane that I had at the time no knowledge or information

16 about other than as conveyed to me by Ms. McShane.

17        5.    In a third matter, commencing in June 2003, I looked into

18 whether and how MGA obtained information from inside Mattel relating to as-yet

19 unreleased products. In another matter, I looked into the circumstances involving

20 the departure of Ron Brawer, a then-Mattel executive, who went to work for MGA

21 in September 2004. As part of this, I printed out screen shots of a directory of

22 emails from Mr. Brawer's Outlook file.

23        6.    I understand that Mattel produced to counsel for MGA and

24 Bryant copies of the entirety of my files (with redactions of privileged information)

25 for the four matters described above on February 23, 2007 and also produced

26 electronic documents on April 17, 2007. The documents produced on February 23,

27 2007 are Bates numbered M 0074307-M 0075252. The additional electronic

28 documents are (1) security camera video files of Mr. Brawer leaving Mattel's

EXHIBIT  5

PAGE  57

1  headquarters in El Segundo, and (2) a download from Mattel's network servers of
2  "pst" files maintained by Mr. Brawer. Disks containing these files are Bates
3  numbered M 0079230 and M 0079231, respectively.

4          7.      I understand that Mattel's counsel withheld or redacted some of
5  the documents in the Global Security files for the four matters described previously
6  (including the document attached as Exhibit A and discussed above) because the
7  information is subject to attorney-client privilege or the attorney work-product
8  doctrine. Each of the documents in the Global Security files (with exception of two
9  letters and an email described below) -- which are identified on a privilege log that I
10  understand was provided to counsel for MGA on February 23, 2007 -- constituted or
11  recorded confidential communications between me and either in-house counsel for
12  Mattel or outside counsel for Mattel in which counsel conveyed to me legal advice.
13  These are items 29, 32, 33, 35, 50, 51, 57, and 63 through 69 on the privilege log, a
14  copy of which is attached as Exhibit B. The two letters that do not fall into this
15  category (items 68 and 69 on the log) are communications from a private
16  investigator to outside counsel for Mattel relating to work that investigator
17  performed at counsel's request. The email that does not fall into this category (item
18  32 on the log) was a confidential communication between Cassidy Park, a Mattel
19  employee, and in-house counsel for Mattel.

20          8.      I understand that MGA and Bryant have asserted that the Global
21  Security files for the four matters are not complete because they do not contain any
22  written "findings or conclusions." To my knowledge, no one in Mattel Global
23  Security prepared written "findings or conclusions" for these four matters. As
24  discussed above, Exhibit A contains statements and advice given to me by Mattel's
25  counsel. I also understand that MGA and Bryant have asserted that certain emails
26  are not included in the documents produced. All of the emails in the Global
27  Security files for these four matters either were produced on February 23, 2007 or
28  identified in the privilege log provided to MGA and Bryant on that same date.

-4-

EXHIBIT ____5____

PAGE ____58____

1       I declare under penalty of perjury under the laws of the United States of

2   America that the foregoing is true and correct.

3       Executed on April 19, 2007, at Los Angeles, California.

4

5

6       Richard de Anda

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   EXHIBIT _____5_____

27   PAGE _____59_____

28

07209/2104123.1

-5-

DECLARATION OF RICHARD DE ANDA

EXHIBIT 6

## CONFORMED COPY

FILED

2007 APR 19  PM II: 07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY_____

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California  94111
   Telephone:    (415) 774-2611
4  Facsimile:    (415) 982-5287

5

6

7                 UNITED STATES DISTRICT COURT

8                 CENTRAL DISTRICT OF CALIFORNIA

9                        EASTERN DIVISION

10

11  CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                           JAMS Reference No.1100049530
12          Plaintiff,

13     v.                                  Consolidated with
                                           Case No. CV 04-09059
14  MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15          Defendant.                     ORDER GRANTING IN PART AND
                                           DENYING IN PART MATTEL'S
16                                         MOTION FOR PROTECTIVE ORDER
                                           REGARDING "POLLY POCKET"
17  CONSOLIDATED WITH                      DOCUMENTS
    MATTEL, INC. v. BRYANT and
18  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
19

20

21                      I.  INTRODUCTION

22     On March 30, 2007, Mattel, Inc. ("Mattel") submitted its Motion For Protective Order

23  Regarding "Polly Pocket" Documents.  Pursuant to Rule 26(c), Fed.R.Civ.P., Mattel seeks a

24  protective order to limit the scope of MGA Entertainment, Inc.'s ("MGA") and Carter Bryant's

25  ("Bryant") subpoenas for production of documents relating to Polly Pocket to only those

26  documents that relate to a single Polly Pocket commercial identified by MGA in an interrogatory

27

28  Bryant v. Mattel, Inc.,                                                              1
    CV-04-09049 SGL (RNBx)

                    EXHIBIT ____6____

                    PAGE ____60____              04|19|07

1   response.  On April 6, 2007, MGA submitted its opposition brief, and on April 11, 2007, Mattel

2   submitted a reply brief.  The matter was heard via telephonic conference on April 19, 2007.

3   Having considered the motion papers and comments of counsel at the hearing, Mattel's motion

4   for a protective order is granted in part and denied in part.[1]

II. BACKGROUND

5

6       This consolidated action includes MGA's claims for unfair competition against Mattel.

7   Among other things, MGA alleges that Mattel has engaged in "serial copycatting" of MGA

8   products, packaging and advertising, including Bratz dolls and other Bratz products, Bratz

9   packaging and Bratz television commercials.

10      On March 7, 2007 and March 12, 2007, MGA and Bryant issued subpoenas to three of

11  Mattel's advertising agencies:  Young & Rubicam Brands, Peterson Milla Hooks, Inc., and

12  Ogilvy & Mather Worldwide.  The subpoenas seek, among other things, documents relating to

13  Mattel's products, including the Polly Pocket line of products.  See Request Nos. 3, 4, 7, 12, 13,

14  and 14.  The subpoenas define Polly Pocket as "each image, character, logo, doll, toy, accessory,

15  product, packaging or other thing or matter that is or has ever been manufactured, marketed or

16  sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise

17  commonly known as, or sold and marketed under the POLLY POCKET trademark or trade

18  dress."  The requests at issue are set forth below:

19      Request No. 3:  All DOCUMENTS REFERRING OR RELATING TO any focus

20          group for "MY SCENE," "POLLY POCKET," or "ACCELERACERS" products

21          and which also REFER OR RELATE TO "BRATZ," "ALIEN RACERS," or

22          MGA.

23      Request No. 4:  All DOCUMENTS REFERRING OR RELATING TO any

24          participant comments from any focus group for "MY SCENE," "POLLY

25  _____

26      [1] Pursuant to the Order for Appointment Of A Discovery Master, dated December 6, 2006, the undersigned
    is authorized to resolve disputes regarding third party subpoenas.  See Order at 3-4, 6.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

                                                                    2

EXHIBIT _____ 6

PAGE _____ 61

1   POCKET," or "ACCELERACERS" products and which also REFER OR

2   RELATE TO "BRATZ," "ALIEN RACERS," or MGA.

3   Request No. 7:  All DOCUMENTS REFERRING OR RELATING TO any

4   MARKET RESEARCH REFERRING OR RELATING TO "MY SCENE,"

5   "POLLY POCKET," or "ACCELERACERS" or MATTEL, and which also

6   REFER OR RELATE TO "BRATZ," "ALIEN RACERS," or MGA.

7   Request No. 12:  All DOCUMENTS REFERRING OR RELATING TO proposed

8   or actual advertisements for "MY SCENE," "POLLY POCKET," OR

9   "ACCELERACERS" products and which also REFER OR RELATE TO

10  "BRATZ," "ALIEN RACERS," or MGA.

11  Request No. 13:  All DOCUMENTS REFERRING OR RELATING TO

12  directives, suggestions, or instructions from MATTEL to create advertisements

13  for "MY SCENE," "POLLY POCKET," OR "ACCELERACERS" products using

14  elements that are similar to or the same as elements used in advertisements for

15  "BRATZ," "ALIEN RACERS," or MGA products.

16  Request No. 14:  Copies of all advertisements for "BRATZ," "ALIEN RACERS,"

17  or MGA products that YOU consulted or reviewed to create advertisements for

18  "MY SCENE," "POLLY POCKET," or "ACCELERACERS" products.

19  (collectively referred to hereinafter as the "Polly Pocket Requests"). See Decl. of B. Dylan

20  Proctor in Support of Mattel's Motion for Protective Order, Exs. 1-3.

21        Mattel served objections to the subpoenas and requested a meet and confer with MGA and

22  Bryant regarding the scope of the Polly Pocket Requests.  The parties met and conferred on

23  March 27, 2007.  MGA asserted that the Polly Pocket Requests sought information relevant to

24  MGA's claims that Mattel has serially copied and imitated MGA's commercials.  MGA pointed

25  out that it is currently aware of at least one Polly Pocket commercial that copied elements from a

26  MGA Bratz commercial.  More specifically, in response to a contention interrogatory, MGA

27  identified twenty-two separate instances of alleged serial copycatting and imitating, one of which

28  was that "Mattel filmed a 'Polly Pocket' commercial in the same mall and featuring the same

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT _____ 6

PAGE _____ 62

1    escalator as appeared in a previous 'Bratz' commercial." See MGA's Second Supplemental

2    Responses to Mattel's First Set of Interrogatories re Claims of Unfair Competition, Response to

3    Interrogatory No. 6.  MGA asserted that it was entitled to discovery to determine whether

4    Mattel's advertising agencies have documents evidencing plans, strategies or intentions to

5    copycat or imitate MGA commercials for this or any other Polly Pocket commercials in the past

6    or future.  Further, MGA asserted that the Polly Pocket Requests sought only those documents

7    that specifically related to MGA and its products.  In contrast, Mattel asserted that the Polly

8    Pocket Requests were overbroad, seeking information far beyond the Polly Pocket commercial

9    identified in MGA's interrogatory response.  The parties later exchanged meet and confer letters,

     but were unable to resolve their dispute.

10        In this motion, Mattel contends that it is entitled to a protective order because the Polly

11   Pocket Requests are overbroad, seeking documents that have no connection or relevance to the

12   claims or defenses in the case, other than the single television commercial identified in MGA's

13   interrogatory response.  Mattel also contends that MGA and Bryant should not be permitted to

14   engage in a fishing expedition for potential claims involving Polly Pocket products.  Furthermore,

15   Mattel contends that its Polly Pocket line of dolls is in direct competition with MGA's doll

16   products, and that MGA and Bryant are not entitled to issue sweeping subpoenas for the improper

17   purpose of discovering Mattel's confidential focus group and market research documents relating

18   to competing products and other matters that are not even alleged to be at issue.  Accordingly,

19   Mattel seeks an order limiting the scope of the Polly Pocket Requests to only those Polly Pocket

20   documents that relate to the television commercial MGA claims that Mattel copied.

21        MGA and Bryant contend that Mattel has not demonstrated the requisite "good cause" for

22   a protective order.  They contend that there has been no showing that a protective order is

23   necessary to avoid annoyance, embarrassment, oppression or undue burden or expense.  Further,

24   they contend that the Stipulated Protective Order is sufficient to address Mattel's confidentiality

25   concerns.  MGA and Bryant also contend that the Polly Pocket Requests are narrowly tailored to

26   seek documents relevant to the claims that Mattel has serially imitated and copycatted MGA's

27   advertising for Bratz and other products.  Further, they contend that the Polly Pocket Requests

28

Bryant v. Mattel, Inc.,                                                                        4
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 6

PAGE _____ 63

1  target documents that specifically relate to MGA or its products.  Lastly, MGA and Bryant object

2  to limiting discovery to the one Polly Pocket commercial referenced in MGA's interrogatory

3  response.  They contend that such a limitation would prevent them from obtaining documents

4  "that reveal Mattel's plans to copy or imitate MGA commercials for other 'Polly Pocket'

5  commercials and related efforts by Mattel's ad agencies to effectuate or evaluate these plans,

6  simply because the plans are non-public and about which MGA and Bryant could not possibly

7  have any actual knowledge."  Opposition at p.7.

## III. DISCUSSION

8

9          Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

10  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

11  party."  Fed.R.Civ.P. 26(b)(1).  Fishing expeditions to discover new claims, however, are not

12  permitted.  See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.

13  2004) ("District courts need not condone the use of discovery to engage in 'fishing

14  expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)

15  (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)

16  (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for

17  the phrase "subject matter involved in the pending action," were intended to target discovery that

18  swept far beyond the claims and defenses of the parties and that seemed designed not to fairly

19  litigate the issues presented by the pleadings but to develop new claims or defenses.).

20  Furthermore, Rule 26(c), Fed.R.Civ.P., provides, in pertinent part, that upon motion and for good

21  cause shown, "the court in which the action is pending may make any order which justice requires

22  to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

23  expense, including that certain matters not be inquired into, that the scope of the disclosure or

24  discovery be limited to certain matters, or that a trade secret or other confidential research,

25  development or commercial information not be revealed or be revealed only in a designated way."

26  Fed.R.Civ.P. 26(c).

27          Polly Pocket is not mentioned in either MGA's or Bryant's complaint or any of the other

28  pleadings filed in this consolidated action.  Rather, MGA's complaint alleges that Mattel's

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

5

EXHIBIT ___6___

PAGE ___64___

1  advertising and marketing schemes for two of its products – "My Scene" and "AcceleRacers" –

2  have "serially imitated" MGA's advertising. MGA's complaint does not even reference the Polly

3  Pocket line of dolls or other Polly Pocket products.

4          The only proffered justification for the Polly Pocket Requests is an interrogatory response

5  in which MGA claims that one of Mattel's Polly Pocket commercials was allegedly filmed in the

6  same mall using the same escalator as an MGA Bratz commercial. [2]  The bulk of the Polly Pocket

7  Requests (Nos. 3, 4, 7, 12, 14), however, are far broader than the commercial identified by MGA.

8  The definition for Polly Pocket includes not just commercials, but  "each image, character, logo,

9  doll, toy, accessory, product, and packaging that is or has ever been manufactured, marketed or

10 sold by Mattel as part of a line of goods or merchandise known as, or sold and marketed under the

11 Polly Pocket trademark or trade dress.  Furthermore, MGA and Bryant seek all Polly Pocket focus

12 group documents, including participant comments which relate to Bratz, MGA or Alien Racers.

13 They seek all "market research" referring or relating to Polly Pocket and which also relate to

14 Bratz, MGA, or Alien Racers, where "market research" is defined as "any type of research, study,

15 survey or analysis of consumers or potential consumers of a product or potential product

16 including, without limitation, focus groups, consumer surveys, market analyses, behavioral

17 analyses and consumer research." They also seek all documents relating to proposed or actual

18 advertisements for Polly Pocket dolls which also relate to Bratz, MGA or Alien Racers.  MGA

19 and Bryant also seek copies of all advertisements for Bratz, Alien Racers, or MGA products that

20 were consulted or reviewed to create any and all advertisements for Polly Pocket products.  These

21 requests are clearly overbroad, extending far beyond the single Polly Pocket commercial that

22 MGA has contended is actionable.  The Federal Rules of Civil Procedure do not permit MGA and

23

24

25          [2]  Like MGA's complaint, MGA's response to Mattel's contention interrogatory regarding the alleged serial imitating and copycatting focus primarily on Mattel's "My Scene" and "Acceleracers" products.

26          See MGA's Second Supplemental Responses to Mattel's First Set of Interrogatories re Claims of Unfair Competition

27

28

Bryant v. Mattel, Inc.,                                                                                         6
CV-04-09049 SGL (RNBx)

EXHIBIT _____ 6 _____

PAGE _____ 65 _____

1  Bryant to use broad discovery requests, untethered to a claim or defense, to fish for new claims.

2  <u>Rivera v. NIBCO, Inc.,</u> <u>supra</u>.  Because Request Nos. 3, 4, 7, 12, and 14 extend far beyond the

3  permissible scope of discovery under Rule 26, Fed.R.Civ.P., there is good cause to issue the

4  requested protective order limiting their scope to the Polly Pocket commercial identified in

5  MGA's interrogatory response.

6      In contrast, however, Request No. 13 is reasonably tailored to documents relevant to

7  MGA's unfair competition claim.  Evidence of directives, suggestions, or instructions from Mattel

8  to its advertising agencies to create advertisements for Polly Pocket using elements that are

9  similar to or the same as elements used in advertisements for "BRATZ," "ALIEN RACERS," or

10 MGA products could establish that Mattel intentionally used the same mall and escalator to

11 produce the Polly Pocket commercial identified in MGA's interrogatory response.  Therefore,

12 Mattel's motion is denied with respect to Request No. 13.

13                          IV. CONCLUSION

14     For the reasons set forth above, Mattel's motion for a protective order is granted in part

15 and denied in part.  Request Numbers 3, 4, 7, 12, and 14 of MGA's and Bryant's subpoenas to

16 Young & Rubicam Brands, Peterson Milla Hooks, Inc., and Ogilvy & Mather Worldwide relating

17 to Polly Pocket are hereby limited in scope to Polly Pocket documents relating to the single Polly

18 Pocket television commercial identified in MGA's interrogatory response.  Mattel's motion is

19 denied as to Request No. 13.

20     Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

21 Master, Mattel shall file this Order with the Clerk of Court forthwith.

22 Dated: April 19, 2007

23                          _Edward Infante_

24                          HON. EDWARD A. INFANTE (Ret.)

25                          Discovery Master

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                    7

EXHIBIT _____6_____

PAGE _____66_____

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on April 19, 2007,

I served the attached ORDER GRANTING IN PART AND DENYING IN PART

MATTEL'S MOTION FOR PROTECTIVE ORDER REGARDING "POLLY POCKET"

DOCUMENTS" in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on April 19, 2007, at San Francisco, California.

Sandra Chan

EXHIBIT ___6___

PAGE ___67___