EXHIBIT 7

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California 94111
   Telephone:   (415) 774-2611
4  Facsimile:   (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION TO COMPEL DOCUMENTS RESPONSIVE TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS DATED NOVEMBER 22, 2006** |

## I. INTRODUCTION

On April 13, 2007, MGA Entertainment, Inc. ("MGA") submitted a motion to compel Mattel, Inc. ("Mattel") to produce documents responsive to MGA's First Set of Requests for Production of Documents dated November 22, 2006 (the "requests"), which generally seeks documents that MGA contends are relevant to its Lanham Act and unfair competition claims. On April 25, 2007, Mattel submitted its opposition brief, and on May 2, 2007, MGA submitted a reply brief. The matter was heard via telephonic conference on May 11, 2007. Having

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT   7

PAGE   68

1

1   considered the motion papers and comments of counsel at the hearing, MGA's motion to compel
2   is granted in part and denied in part.

## II. BACKGROUND

There are two themes underlying MGA's claims for unfair competition against Mattel. First, MGA alleges that Mattel has intentionally "serially imitated and copy-catted the look of MGA products, trade dress, trademarks, themes, ideas, advertising and packaging, including for the 'Bratz' line of dolls," to dilute MGA's brand, create customer confusion, and unfairly stifle competition. MGA's Complaint at ¶¶9, 65. Second, MGA alleges, on information and belief, that "Mattel has intimidated, coerced and threatened retailers, licensees, suppliers and others in the industry – both in the U.S. and internationally – in order to inhibit and stifle MGA's ability to compete with Mattel and to prevent MGA from obtaining licensees, contracts and supplies for its products." Id. at ¶9.

### The Alleged Copy-catting

Mattel's alleged serial copycatting "began with the 'Bratz' dolls themselves, but quickly extended to MGA's packaging, themes, accessories, advertising and even other product lines." Id. at ¶33. Mattel allegedly "designed its 'My Scene' dolls to evoke the unique and distinctive look of the 'Bratz' – also with disproportionately oversized heads, artfully made-up almond-shaped eyes, large, overly-lined and lipsticked lips, trendy, hip clothes and hair styles, and over-sized feet." Id. at ¶34. Mattel also allegedly "systematically proceeded to modify the 'My Scene' dolls since their original release, particularly their eyes, to increase their similarity to 'Bratz' more and more over time." Id.

Further, Mattel allegedly "modified its 'My Scene' packaging, and the manner in which the dolls are displayed, to more closely mimic the packaging, trade-dress and overall look and total image of MGA's 'Bratz.'" Id. at ¶41. For example, Mattel allegedly changed its packaging "to the open and transparent style of the 'Bratz' packaging." Id. at ¶43. Mattel also allegedly hung its packaging and product display to "look even more closely and confusingly similar to

MGA's packaging and '*tout ensemble.*'" Id. at ¶45. Mattel also allegedly "discarded its traditional rectangular shaped box, and like 'Bratz', adopted an unusual, non-rectangular shaped box." Id. at ¶46. Mattel also allegedly "adopted the 'flying banner' ribbon-style slogan running across the middle of the box, similar to that used on the 'Bratz' packaging." Id.

In addition to the packaging changes, Mattel allegedly copied "MGA's practice of regularly releasing new dolls in connection with a theme – but not just any theme, often MGA's theme." Id. at ¶47. For example, when MGA released its "Wintertime Wonderland" theme, Mattel allegedly released "Chillin Out." Id. at ¶48. Mattel also allegedly imitated Bratz accessories and related products in order to create consumer confusion in the marketplace. Id. at ¶52. Further, Mattel allegedly "began running television commercials for its 'My Scene' dolls bearing a remarkable similarity to 'Bratz' commercials, combining live action with animated sequences set to similar sounding pop music and lyrics." Id. at ¶51. MGA alleges that Mattel's conduct described above "is a calculated and intentional effort unquestionably designed to trade off of MGA's hard work and goodwill, create confusion in the marketplace, steal MGA's thunder and momentum, and dilute and blur away the novelty and distinctiveness of MGA's products." Id. at ¶54.

Further, MGA alleges that when it "came out with a 'Bratz' 'Funky Fashion Makeover Head,' Mattel came out with a confusingly similar – indeed, practically identical – 'My Scene' styling head." Id. at ¶55. Mattel also allegedly "used a portion of the Bratz doll's now-famous trademarked tag line 'The Girls With a Passion for Fashion' on Mattel's website for its 'Diva Starz' dolls, asking its website users: 'Do you have a passion for fashion?'" Id. at ¶58.

MGA also alleges that Mattel recently came out with a confusingly similar line of "My Scene" plush pets that have the distinctive look of MGA's "Bratz" line. Id. at ¶59. In addition, Mattel allegedly "chose to package its pets the same way that MGA packaged its 'Bratz Petz', sitting in an open box, with no top and with partial side panels that slope from a narrow front panel to a higher back panel." Id. at ¶60. MGA alleges that the similarity of the "My Scene" pets

1  and the "Bratz Petz" has confused sophisticated retailers who have mistakenly merchandised the
2  products together. Id. at ¶61.

3  MGA alleges that Mattel's television commercials and "My Scene" products have become
4  so confusingly similar to MGA's commercials and products that advertising executives have
5  expressed concern. Id. at ¶62. MGA also alleges that the press has taken notice of Mattel's
6  alleged attempts to confuse consumers. Id. at ¶63. Further, MGA alleges that some customers
7  have contacted MGA seeking to purchase "My Scene" dolls. Id. at ¶64.

8  MGA alleges that Mattel's conduct has reached beyond "Bratz" to include other new
9  MGA toy lines. Id. at ¶67. For example, Mattel allegedly modeled its "Wee 3 Friends" line of
10 dolls and packaging on MGA's "4-Ever Best Friends" line. Id. at ¶68. Mattel also allegedly
11 modeled its "Little Mommy Potty Training Baby Doll" on MGA's "Mommy's Little Patient." Id.
12 at ¶69. Mattel also allegedly revamped and renamed one of its "Hot Wheels" lines with the
13 "AcceleRacerS" logo based upon MGA's "AlienRacers" radio controlled racing vehicles. Id. at
14 ¶70.

## Additional Allegedly Anti-Competitive Conduct

16 MGA alleges that Mattel has engaged in additional allegedly anti-competitive conduct,
17 including "sending threatening letters to several of its former employees who now work for MGA
18 warning them not to disclose *even publicly available information* about Mattel, including the
19 names and positions of Mattel employees." Id. at ¶75 (emphasis in original). Mattel has also
20 allegedly "warned a number of companies, including the biggest publishing entity in the United
21 Kingdom, not to license MGA products, or risk retribution." Id. at ¶76. MGA alleges that it has
22 lost valuable licensing opportunities as a result of Mattel's conduct. Id.

23 MGA also alleges that "Mattel has used similar intimidation to pressure distributors and
24 retailers, particularly in foreign countries, not to distribute 'Bratz', to reduce shelf and display
25 space for 'Bratz' and to place 'Bratz' in unfavorable locations at retail outlets." Id. at ¶77. MGA
26 further alleges that "[w]hen MGA faced a shortage of doll hair in October 2002, MGA is

1 informed and believes that the reason for that shortage was that Mattel had locked MGA out by
2 buying up the supply from the two main hair supply companies." Id. at ¶78.

3   MGA also alleges that Mattel manipulated the retail market. More specifically, MGA
4 alleges that "Mattel merchandisers have been caught tampering with MGA's retail displays,
5 replacing favorably located MGA merchandise with Mattel merchandise instead." Id. at ¶79.
6 MGA further alleges on information and belief that "Mattel has falsely told a major United States
7 retailer that MGA was giving another major United States retailer below-market pricing and
8 falsely told a United Kingdom retailer that MGA was discontinuing one of its lines, in order to
9 make such line less attractive to buyers and thereby attempt to increase sales of the competitive
10 Mattel product and improve its own sales, at MGA's expense." Id.

11   Next MGA alleges on information and belief that NPD Funworld ("NPD"), the leading
12 supplier of sales statistics in the toy industry, terminated MGA's subscription ostensibly for
13 misusing NPD data and that "the termination was the result of pressure from Mattel." Id. at ¶¶80-
14 85. MGA also alleges on information and belief that Mattel pressured NPD into changing certain
15 product classifications for "Bratz" products to manipulate the data and preserve Mattel's market
16 share rankings in the "fashion doll" category. Id. at ¶86.

17   MGA further alleges on information and belief that Mattel used its influence as a major
18 contributor to the Children's Advertising Review Unit ("CARU"), which is a unit of the Council
19 of Better Business Bureaus, to "place onerous restrictions on MGA advertisements, and require
20 MGA to amend aspects of commercials that have gone unchallenged in other parties'
21 commercials." Id. at ¶89. As a result of CARU's restrictions, MGA allegedly incurred
22 unnecessary costs for reshooting and producing or re-editing its commercials. Id. at ¶90.

23   MGA also alleges on information and belief that Mattel's subsidiary, Fisher Price,
24 "orchestrated" a change to the selection process for TIA's "Toy-of-the-Year Awards," which
25 allegedly resulted in a Fisher Price toy beating out "BRATZ Formal Funk Super Stylin' Runway
26 Disco." Id. at ¶¶92-96. MGA also alleges on information and belief that one year "Mattel was
27
28

1 | instrumental in attempting to keep MGA from participating as a sponsor in the 'Kids' Choice
2 | Awards.'" Id. at ¶97.
3 |     As a result of Mattel's alleged conduct described above, MGA has allegedly suffered, and
4 | unless abated, will continue to suffer lost sales, lost licensing fees, lost contracts, lost
5 | relationships, lost business opportunities and other damages. Id. at ¶100. MGA also alleges that
6 | its ability to enter new markets and product lines has been hampered and delayed. Id.
7 | Furthermore, MGA alleges that "[i]ts production costs have increased, its reputation and
8 | relationships with important players in the industry have been negatively impacted, the value of
9 | its business has been diminished, and its ability to attract, hire and retain employees has been
10 | affected." Id. Based upon the foregoing, MGA asserts claims for (1) false designation of origin
11 | or affiliation in violation of 15 U.S.C. §1125(a); (2) unfair competition in violation of 15 U.S.C.
12 | §1125(a) and unfair competition and unfair business practices in violation of Cal. Bus. & Prof.
13 | Code §17200 *et seq.* and California common law; (3) dilution in violation of 15 U.S.C. §1125(c),
14 | Cal. Bus. & Prof. Code §14330 and California common law; and (4) unjust enrichment.

<u>MGA's First Set of Requests for Production of Documents</u>

16 |     On November 22, 2006, MGA propounded one hundred fifteen (115) document requests
17 | seeking discovery regarding, among other things: (a) Mattel's alleged copycatting efforts and
18 | activities with respect to Bratz and other MGA product lines; (b) anti-competitive business
19 | practices allegedly carried out by Mattel; and (c) any similar or related activities. In response,
20 | Mattel objected to many requests primarily on the grounds that they were overly broad and
21 | unduly burdensome. Mattel agreed, however, to produce documents responsive to many of the
22 | requests.
23 |     The parties met and conferred in person on March 9, 2007. MGA's counsel demanded
24 | that Mattel withdraw all objections based on relevance. Alger Decl. in Support of Mattel's
25 | Opposition at ¶7. Mattel's counsel responded that Mattel was producing responsive documents
26 | and would continue to produce responsive documents, but had concerns over the "lack of focus

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT  7
PAGE  73

6

1 and infinite scope" of MGA's document requests. Id. Mattel's counsel suggested that MGA
2 narrow the requests to "those products, retailers, licensees, and time frames that MGA has put at
3 issue in its Complaint and response to interrogatories." Id. MGA's counsel, however, rejected
4 the proposal. Id.
5  A few days later, counsel for MGA sent Mattel's counsel a letter offering several
6 suggestions for limiting the requests. Glad Decl. in Support of MGA's Motion, Ex. 1. In
7 particular, MGA stated that "it would be amenable to certain limitations on the number and
8 identities of custodians whose files must be searched, so long as Mattel is willing to accept
9 reciprocal accommodations for MGA's own document review." Id. Mattel did not respond to the
10 letter, and the instant motion ensued.

### III. STANDARDS

12  Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain
13 discovery regarding any matter, not privileged, that is relevant to the claim or defense of any
14 party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not
15 permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir.
16 2004) ("District courts need not condone the use of discovery to engage in 'fishing
17 expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006)
18 (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000)
19 (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for
20 the phrase "subject matter involved in the pending action," were intended to target discovery that
21 swept far beyond the claims and defenses of the parties and that seemed designed not to fairly
22 litigate the issues presented by the pleadings but to develop new claims or defenses.). Further,
23 pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit discovery where "the burden or
24 expense of the proposed discovery outweighs its likely benefit, taking into account the needs of
25 the case, the amount in controversy, the parties' resources, the importance of the issues at stake in
26 the litigation, and the importance of the proposed discovery in resolving the issues."

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 7
PAGE 74

7

## IV. DISCUSSION

### A. General Objections

MGA contends that Mattel has improperly withheld documents based on three generalized objections. First, MGA contends that Mattel has asserted an objection based upon relevance to requests that are not related to facts specifically alleged in MGA's complaint. MGA contends the objection is improper because it essentially grafts a heightened pleading standard onto discovery requests, is inconsistent with the standard for discovery set forth in Rule 26(b), Fed.R.Civ.P., and goes against the very purpose of discovery. MGA denies "fishing" for new claims, contending that it is seeking discovery tending to support or refute existing claims.

Second, MGA contends that Mattel has improperly refused to produce "documents related to MGA's BRATZ dolls unless the documents are 'in the context' of Mattel's BARBIE or MY SCENE products." MGA's Motion at 9:10-11. MGA contends that all of the documents related to Bratz that it seeks are relevant, regardless of whether they refer to or contemplate Barbie or My Scene. In particular, MGA contends that documents related to Bratz, even if they do not refer to Barbie or My Scene, are relevant to its claims that (1) Mattel has exerted pressure on licensees not to license Bratz products; (2) Mattel has exerted pressure on retailers or distributors not to distribute Bratz products; (3) Mattel has tampered with Bratz displays; and (4) Mattel intentionally copied Bratz products.

Third, MGA contends that Mattel has improperly limited its production of My Scene documents to only those documents related to the specific acts of product and packaging infringement identified in MGA's complaint. MGA contends that it is entitled to far more, including documents concerning potential acts of infringement not mentioned in the complaint and documents concerning the development of the My Scene product line from inception of this suit to the present. In particular, MGA contends that documents concerning the current development of My Scene may tend to show continuing infringement, and therefore are relevant to prove that Mattel's conduct is willful.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 7

PAGE 75

8

1   Mattel contends that it has produced documents in response to many of MGA's requests,
2   and will continue to do so. Mattel objects, however, to those requests that require Mattel to
3   produce virtually every document, anywhere in the world, that mentions MGA, Larian, Bratz, or
4   any other MGA product. Mattel contends that MGA is engaging in an improper fishing
5   expedition, casting its requests so broadly as to require production of documents relating to
6   products and entire product lines that are irrelevant to the suit. Mattel also contends that the
7   requests are overbroad because they seek documents about subjects such as quality and pricing
8   which do not appear anywhere in MGA's pleadings. Id. Furthermore, Mattel contends that
9   MGA's requests are not linked in any manner to MGA's claims in the suit and do not reference
10  any particular alleged wrongdoing by Mattel.

11  Mattel also contends that responding to MGA's document requests would impose a
12  considerable, unjustifiable burden on Mattel. Mattel emphasizes that it is a large company, with
13  over 140 subsidiaries and affiliates in approximately 43 different countries. Mattel represents that
14  it has over 5,000 employees in the United States and more than 25,000 employees at subsidiaries
15  and affiliates worldwide.

16  Mattel also represents that its products are sold in thousands of stores. It represents that it
17  deals with Wal-Mart, Target, K-Mart, and Toys "R" Us on a daily basis, and that these four
18  retailers have more than 4,500 stores in the United States. Mattel also represents that it deals with
19  many hundreds more retailers domestically and overseas. Further, Mattel represents that it has
20  relationships with more than 1,400 licensees and licensors.

21  Mattel also represents that the toys it produces vary widely, including collectible card
22  games, electronic handheld devices, toy cars, and the Barbie doll line. Mattel asserts that it
23  introduces annually more than 2,000 different types of toys, dolls and other products in more than
24  150 nations throughout the world. Mattel asserts that many products often involve the creation of
25  many categories of documents relating to design, marketing, consumer and market research,
26  planning, engineering, cost, manufacturing, distribution, sales and finance. Mattel represents that
27
28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)

EXHIBIT  7
PAGE  76

9

1  these types of documents are stored on Mattel's over 800 computer servers worldwide, and that
2  countless others are stored in hardcopy or stored on individual employees' desktop computers and
3  laptops. Furthermore, Mattel represents that many of its network systems, including its e-mail
4  system, are not readily searchable, or searchable at all, by use of keyword terms. For example,
5  Mattel asserts that the computer system used by Mattel's designers and engineers overwhelmingly
6  consists of graphical files whose content cannot be searched by keywords.

7  Mattel estimates that MGA and its products are referenced in millions of pages of
8  documents and computer files at Mattel. More specifically, Mattel contends that many groups
9  across Mattel, such as marketing, consumer research, sales, finance, human resources and safety
10 testing, have documents that refer or relate to MGA or its products in some way. Mattel also
11 contends that a large volume of this information is from third party analysts and third party
12 sources, including retail sales reports that track doll sales across the entire industry, newspaper
13 and magazine articles, commercials and advertisements. Mattel also represents that it collects
14 great quantities of documents about its competitors that are readily available on the Internet or
15 other public sources, including catalogs, advertising, press releases, and media reports, and from
16 retailers and distributors throughout the world.

17 Furthermore, Mattel represents that its documents, particularly its marketing and sales
18 research documents, often reference many competing products, not just the Bratz dolls at issue.
19 Mattel contends that these types of documents would be difficult to search and collect because, in
20 many instances, the only way to determine whether a particular document mentions Bratz would
21 be to review the entire document.

22 Mattel contends that virtually any employee at Mattel might have documents that are
23 responsive to MGA's requests. Mattel estimates that "to locate all such documents would take
24 years, cost millions of dollars, and seriously interfere with the operation of Mattel's business."
25 Mattel's Opposition at 17. Matter also asserts that "[s]uch efforts – including search of Mattel's
26 servers, its employees' computer workstations, hard copy files, computer disks, and video files –

28 Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 7

PAGE 77

10