1 and preserve Mattel's market share rankings in the critical fashion doll category –
2 and thereby lower MGA's.

87. The Children's Advertising Review Unit ("CARU") is another organization that, upon information and belief, appears to have been subject to improper influence by Mattel. CARU is the toy industry's supposedly independent self-regulatory body in charge of maintaining standards in advertising. CARU's approval is considered critical within the toy industry to avoiding regulatory action by the Federal Trade Commission.

88. CARU is heavily subsidized by Mattel.

89. Upon information and belief, Mattel has used its influence as a major contributor to CARU's budget to induce CARU to place onerous restrictions on MGA advertisements, and require MGA to amend aspects of commercials that have gone unchallenged in other parties' commercials.

90. As a result of CARU's restrictions, MGA has been forced to incur unnecessary costs for reshooting and producing or re-editing its commercials.

91. On several occasions, CARU has also either strongly suggested, if not also required, that MGA respond to inquiries about its website policies and make substantial changes to the "BRATZ" website notably and significantly in excess of restrictions imposed on Mattel and others.

92. Even TIA, the toy industry's trade association, is apparently not untainted by Mattel's influence and power. Each year, TIA presents the Toy-of-the-Year Awards, the most prestigious of which had been the award for Toy of the Year. Winning the Toy of the Year Award is a significant achievement that not only very likely increases the sales of the winning toy, but also denotes the winning company as a leader in toy innovation and generates substantial goodwill with retailers, distributors, licensees, and customers.

93. For the years 2000 (the first year of the award), 2001 and 2002, the Toy of the Year award was chosen by consumer vote. The awards ceremony was

29

EXHIBIT 8

PAGE 120

1  then held the following year, at a dinner in New York. (For example, the awards
2  dinner for the year 2000 award was held in February 2001). Leap Frog won the
3  2000 People's Choice Toy of the Year Award and MGA won the 2001 and 2002
4  People's Choice Toy of the Year Awards. With the 2003 Toy of the Year Award,
5  however, the rules suddenly changed. Now, the award is selected by members of
6  the industry.

7      94. Upon information and belief, this change was orchestrated by a Fisher
8  Price (a Mattel subsidiary) executive who, until recently, served as the Chairman of
9  TIA.

10      95. Perhaps not surprisingly given this change in the winner selection
11  procedures, "Hokey Pokey Elmo" ("Elmo"), a Fisher Price toy, won for the year
12  2003 (awarded in 2004), beating out the other leading nominee, "BRATZ Formal
13  Funk Super Stylin' Runway Disco."

14      96. TIA has refused to provide MGA with the vote count procedure and
15  totals for this award, despite repeated requests.

16      97. MGA is also informed and believes that Mattel was instrumental in
17  attempting to keep MGA from participating as a sponsor in this year's "Kids'
18  Choice Awards."

19      98. Mattel has clearly engaged in tortious, illegal and unethical behavior in
20  its unfettered efforts to disrupt, if not destroy, MGA. Indeed, this is apparently
21  Mattel's current *modus operandi* when it comes to "competing" in the industry.
22  The once immensely successful "LeapFrog" interactive learning product, for
23  example, has apparently been one of Mattel's other recent victims.

24      99. Mattel may not shield its illegal, unfair and unethical business practices
25  from the public eye. It is time for the truth to be told, and the world to know of
26  Mattel's unfair, unethical and illegal business practices and unfair competition.
27  "Barbie" does not "play nice" with others (particularly her competitors), and needs
28  to be taught how "to share" (at least in the fashion doll marketplace). She cannot be

30

EXHIBIT 6

PAGE 121

1  allowed to continue to be the playground bully and trample on the rights of others,
2  including MGA.
3      100. As a result of Mattel's manipulative, illegal, unfair, unethical and anti-
4  competitive conduct, MGA has suffered and, unless abated, will continue to suffer
5  lost sales, lost licensing fees, lost contracts, lost relationships, lost business
6  opportunities and other damages and harm for which there is no adequate remedy at
7  law. Its ability to enter new markets and product lines has been hampered and
8  delayed. Its production costs have increased, its reputation and relationships with
9  important players in the industry have been negatively impacted, the value of its
10 business has been diminished, and its ability to attract, hire and retain employees
11 has been affected.
12
13                          **FIRST CLAIM FOR RELIEF**
14 **(False Designation of Origin or Affiliation in Violation of 15 U.S.C. § 1125 (a))**
15     101. MGA repeats and realleges the allegations contained in paragraphs 1
16 through 100 of this Complaint and incorporates them by reference as though fully
17 and completely set forth herein.
18     102. MGA's "BRATZ" line has a unique and distinctive style and
19 distinctive characteristics, such as the disproportionately large head, large dramatic
20 eyes with a distinctive presentation (including the eye shape, make-up and lashes),
21 pouty, plump lips with a distinctive presentation (including the lip shape and make-
22 up), small, thin bodies, oversized feet, and up-to-date fashions. MGA's "BRATZ"
23 line is known for and recognized by the total image that is presented by its product
24 and the style and arrangement of the packaging and display. This "*tout ensemble*"
25 is representatively described and depicted herein. The characteristics of MGA's
26 "BRATZ" line, alone or in combination, have come to identify the "BRATZ" line
27 and its source, MGA, and thus serve as protectable trade dress. MGA's trade dress
28 in its "BRATZ" line is purely aesthetic and non-functional or, if any utility exists, it


is not essential to the purpose, quality or source identifying attributes of the aesthetics. MGA's trade dress in its "BRATZ" line is inherently distinctive or has acquired distinction within the meaning of the Lanham Act.

103. Similarly, MGA's "BRATZ PETZ," part of the "BRATZ" line, also has its own unique and distinctive characteristics, such as the humanlike eye and unusual appearance of the animals dressed in clothing. MGA's "BRATZ PETZ" line has become known for and recognized by the total image that is presented by the product and the style and arrangement of its packaging. This "*tout ensemble*" is representatively described and depicted herein. The characteristics of MGA's "BRATZ PETZ", alone or in combination, have come to identify the "BRATZ PETZ" line and its source, MGA, and thus serve as protectable trade dress. MGA's trade dress in its "BRATZ PETZ" line is purely aesthetic and non-functional or, if any utility exists, it is not essential to the purpose, quality or source identifying attributes of the aesthetics. MGA's trade dress in its "BRATZ PETZ" line is inherently distinctive or has acquired distinction within the meaning of the Lanham Act.

104. Mattel's production, sale and marketing of "My Scene" dolls, including styling heads and doll heads, and "My Scene" pets that are confusingly similar to MGA's "BRATZ" line (including its "BRATZ PETZ"), without MGA's permission or consent, constitutes designation and use of a term, symbol, device or combination thereof that is false or misleading within the meaning of 15 U.S.C. Section 1125 and is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association, or as to the origin, sponsorship, or approval of Mattel's goods or commercial activities, within the meaning of 15 U.S.C. Section 1125. MGA has been damaged by Mattel's acts.

105. Mattel's conduct has been intentional and willful, and is calculated specifically to trade off the goodwill that MGA has developed in its successful "BRATZ" line. By its aforesaid acts, particularly its imitation of the distinctive

32

EXHIBIT 6
PAGE 123

features of MGA's "BRATZ" line in connection with goods sold and distributed in interstate commerce, Mattel has infringed and is likely to continue to infringe on MGA's substantial rights in and to the "BRATZ" line trade dress. In so doing, Mattel has falsely represented and designated to the public generally and consumers of fashion doll products specifically the source and origin of Mattel's "My Scene" fashion doll products in violation of 15 U.S.C. § 1125(a).

106. MGA has been damaged by, and Mattel has profited from, Mattel's wrongful conduct in an amount to be proven at trial.

107. For each act of infringement, MGA is entitled to recover its actual damages as well as Mattel's profits from such infringement.

108. Monetary relief alone, however, is not adequate to address fully the irreparable injury that Mattel's illegal actions have caused and will continue to cause MGA, if not enjoined. MGA is therefore entitled to preliminary and permanent injunctive relief to stop Mattel's ongoing infringement of MGA's trade dress.

### SECOND CLAIM FOR RELIEF

**(Unfair Competition in Violation of 15 U.S.C. § 1125 (a) and Unfair Competition and Unfair Business Practices in Violation of Cal. Bus. & Prof. Code § 17200 *et seq.* and California Common Law)**

109. MGA repeats and realleges the allegations contained in paragraphs 1 through 108 of this Complaint and incorporates them by reference as though fully and completely set forth herein.

110. Mattel has deliberately and, indeed, repeatedly adopted, imitated and mimicked the make-up, appearance, features, trade dress, and image of MGA's products, packaging and advertising, including its repackaging and refreshing of older Mattel toys. Mattel's actions were and are done with the intent to deceive consumers, cause confusion and mistake, and interfere with the ability of consumers to identify the source of goods by appearance and packaging. By this

conduct, Mattel pirates and exploits, by subliminal or conscious association with MGA, the goodwill and reputation of MGA and derives benefit therefrom.

111. Mattel has particularly and deliberately poached upon the commercial magnetism of MGA's "BRATZ" and the success of "BRATZ". Mattel's conduct has been intentional and willful, and is calculated specifically to trade off the goodwill that MGA has developed in its successful "BRATZ" line.

112. By its acts, including its intentional imitation of the distinctive features of MGA's "BRATZ" dolls, which has progressively become closer and closer, as well as its imitation of "BRATZ" themes, packaging and the overall look, feel and total image of the "BRATZ" line, imitation of other MGA products, packaging and advertising, and other conduct alleged herein, Mattel has engaged in unfair competition under both federal and California state law.

113. Mattel has also willfully and maliciously used its power, influence and intimidation to threaten certain retailers, suppliers, licensees, distributors and manufacturers so as to limit, if not prevent, MGA from doing business with these retailers, suppliers, licensees, distributors and manufacturers, using its power and influence to intimidate and manipulate industry bodies. Mattel has further used its power and influence to attempt to, if not actually, intimidate and threaten MGA's current and potential employees so as to cause MGA competitive injury.

114. Alone, in combination, or in totality, Mattel's actions discussed and alleged herein constitute unfair competition and unfair business practices within the meaning of federal law, California statutory law and/or California common law.

115. As a result of its conduct, Mattel has derived substantial monetary and non-monetary benefit and business advantage. Mattel has also wrongfully diverted profits away from MGA and to Mattel and, on information and belief, deprived MGA of the patronage of a large number of actual and potential customers.

116. MGA has been damaged by, and Mattel has profited from, Mattel's wrongful conduct in an amount to be proven at trial.

EXHIBIT 4

PAGE 125

117. Monetary relief alone, however, is not adequate to address fully the irreparable injury that Mattel's actions have caused and will continue to cause MGA, if not enjoined. MGA is therefore entitled to preliminary and permanent injunctive relief to stop Mattel, and all persons acting in concert with Mattel, from engaging in acts of unfair competition and unfair business practices.

118. MGA is further entitled to relief whereby Mattel is ordered to pay restitution for damages resulting from Mattel's unfair competition and unfair business practices.

### THIRD CLAIM FOR RELIEF
### (Dilution in Violation of 15 U.S.C. § 1125 (c); Cal. Bus. & Prof. Code § 14330 and California Common Law)

119. MGA repeats and realleges the allegations contained in paragraphs 1 through 118 of this Complaint and incorporates them by reference as though fully and completely set forth herein.

120. The look and trade dress of the MGA products referenced herein are distinctive and famous, and have been since before Mattel launched its similar versions. By its aforesaid acts, Mattel caused and continues to cause blurring and dilution of the distinctive look of MGA's products and trade dress, which previously served as a unique source identifier for MGA, within the meaning of the Lanham Act, California Business and Professions Code § 14330 and/or California common law.

121. Mattel's conduct has been intentional and willful, calculated specifically to trade on MGA's goodwill and reputation and to cause dilution of MGA's famous marks, particularly those connected with MGA's famous and successful "BRATZ" doll head, "BRATZ" doll product line, "BRATZ Funky Fashion Makeover Head" and "BRATZ PETZ" line.

122. MGA has been damaged by, and Mattel has profited from, Mattel's wrongful conduct in an amount to be proven at trial.

35

EXHIBIT 6

PAGE 126

123. Monetary relief alone, however, is not adequate to address fully the irreparable injury that Mattel's actions have caused and will continue to cause MGA, if not enjoined. MGA is therefore entitled to preliminary and permanent injunctive relief to stop Mattel's ongoing dilution.

## FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment)

124. MGA repeats and realleges the allegations contained in paragraphs 1 through 123 of this Complaint and incorporates them by reference as though fully and completely set forth herein.

125. As a result of the conduct alleged herein, Mattel has been unjustly enriched to MGA's detriment. MGA seeks a worldwide accounting and disgorgement of all ill-gotten gains and profits resulting from Mattel's inequitable activities.

## PRAYER FOR RELIEF

WHEREFORE, MGA prays for relief, as follows:

1. That Mattel, its agents, servants and employees and all persons acting in concert be restrained preliminarily and permanently from directly or indirectly:
   a. using confusingly similar trade dress;
   b. improperly influencing, or attempting to improperly influence, standard-setting and industry organizations;
   c. engaging in unfair competition and unfair business practices; and
   d. diluting MGA's trade dress;
2. For general and actual damages, according to proof at trial but believed to reach or exceed tens of millions of dollars;
3. For the disgorgement of all profits derived by Mattel for its acts of:
   a. false designation of origin or affiliation;

36

EXHIBIT 8
PAGE 127

     b.    unfair competition and unfair business practices; and

     c.    dilution;

4.    For costs of suit and reasonable attorneys' fees;

5.    For punitive and/or exemplary damages as a result of Mattel's willful and malicious conduct to the extent allowable by law; and

6.    For such other and further relief as the Court deems just and proper.

Dated:    April 13, 2005

PATRICIA GLASER
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO LLP

DALE M. CENDALI
DIANA M. TORRES
PAULA E. AMBROSINI
O'MELVENY & MYERS LLP

By: _____
Diana M. Torres
Attorneys for Plaintiff
MGA ENTERTAINMENT, INC.

37

EXHIBIT 6

PAGE 128

## DEMAND FOR JURY TRIAL

MGA hereby demands a jury trial on all triable issues.

Dated: April 13, 2005

PATRICIA GLASER
CHRISTENSEN, MILLER, FINK,
JACOBS, GLASER, WEIL &
SHAPIRO LLP

DALE M. CENDALI
DIANA M. TORRES
PAULA E. AMBROSINI
O'MELVENY & MYERS LLP

By: /s/ Diana M. Torres
Diana M. Torres
Attorneys for Plaintiff
MGA ENTERTAINMENT, INC.

EXHIBIT 6
PAGE 129

EXHIBIT 9

RECEIVED
JAN - 8 2008

1  THOMAS J. NOLAN (Bar No. 066992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, CA 90071-3144
3  Telephone: (213) 687-5000
   Facsimile: (213) 687-5600
4  E-mail:    tnolan@skadden.com

5  KENNETH A. PLEVAN (Admitted *Pro Hac Vice*)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  4 Times Square
   New York, NY 10036
7  Telephone: (212) 735-3000
   Facsimile: (212) 735-2000
8  E-mail:    kplevan@skadden.com

9  Attorneys for Counter-Defendants,
   MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
10 (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

11              **UNITED STATES DISTRICT COURT**
12              **CENTRAL DISTRICT OF CALIFORNIA**
13                    **EASTERN DIVISION**

| | |
|---|---|
| CARTER BRYANT, an individual | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| v. | **MGA'S RESPONSE TO MATTEL, INC.'S AMENDED SUPPLEMENTAL INTERROGATORY REGARDING DEFENDANTS' AFFIRMATIVE DEFENSES** |
| MATTEL, INC., a Delaware corporation | |
| Defendant. | **CONFIDENTIAL -- ATTORNEYS' EYES ONLY** |
| | Honorable Stephen G. Larson Courtroom 1 |
| | Discovery Cut-Off: March 3, 2008 |

EXHIBIT ___9___
PAGE ___130___

1-7

MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES     NO. CV 04-9049 SGL (RNBx)