1 awards, which generate substantial goodwill with retailers, distributors, licensees, and
2 customers for the winning toys.  For the first three years of the awards (2000, 2001,
3 and 2002), the Toy-of-the-Year award was chosen by consumer vote.  MGA's "Bratz"
4 dolls won the 2001 and 2002 Toy-of-the-Year awards.  However, beginning with the
5 2003 Toy-of-the-Year award, the TIA changed the rules to have the award selected by
6 members of the industry (rather than by consumers).  MGA believes that Mattel
7 orchestrated this change, as it is the largest, and accordingly, most influential member
8 of TIA, and the Chairman of TIA at the time was Neil Friedman, who was also the
9 President of Fisher Price (a subsidiary of Mattel).  Under the new voting rules, Fisher
10 Price's "Hokey Pokey Elmo" won the 2003 Toy-of-the-Year award, beating out
11 MGA's "Bratz Super Stylin' Runway Disco."  MGA asked TIA to substantiate the
12 vote count for the 2003 Toy-of-the-Year award in order to ensure that the voting
13 process was impartial, but the TIA refused.
14        Other examples of Mattel's unfair competition and unclean hands include:
15 Mattel's efforts to create negative publicity or press about MGA, MGA products,
16 Bryant, Larian, or MGA employees; Mattel's efforts to fund or commission market
17 research or studies that portray Bratz or MGA products negatively; Mattel's efforts to
18 interfere with MGA's acquisition of or investment in Zapf Creation AG; Mattel's
19 efforts to include negative references to MGA or Bratz on Mattel's "We Believe in
20 Girls" website; Mattel's efforts or intent to interfere with business dealings or
21 contractual relations between MGA and Smoby Group; Mattel's influencing
22 Nickelodeon to reject MGA advertisements or to limit time slot for advertisements;
23 assisting parties in lawsuits against MGA; Mattel's monitoring, "spying on" or
24 gaining knowledge of MGA's trade secrets, non-public information, non-public
25 activities, unreleased products, and product development; gaining access, or attempts
26 to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, Toy Fair
27 displays on false pretenses; Mattel's wrongfully obtaining MGA's costs and sales
28 information through Mattel-employed category managers at retailers; Mattel's

EXHIBIT 1
PAGE 150

inducing non-party customers to breach confidentiality agreements with MGA and divulge non-public information about MGA's unreleased products; Mattel's covertly investigating MGA, its officers and employees, and their family members; Mattel's contacting persons under false pretense in order to interrogate them about Bratz and this litigation; Mattel's coercing its employees to accept restrictive covenants (right before a massive layoff) and non-compete clauses and other efforts to prevent prospective MGA employees from accepting offers of employment; Mattel's delay in suing Carter Bryant because, *inter alia*, Mattel wanted Bryant to testify in an unrelated Mattel case; and Mattel's falsely inflating its Barbie sales figures in an effort to mislead the public and retailers. The MGA Defendants also incorporate by reference its response below regarding its laches defense as though set forth fully herein.

      Discovery is ongoing and many third party subpoenas served by the MGA Defendants are currently outstanding and the subject of meet-and-confers. The MGA Defendants reserve the right to supplement this response and, consistent with its obligations under Federal Rule of Civil Procedure 26(e), the MGA Defendants will supplement this response if they receive additional responsive information.

      The following persons have knowledge of facts and circumstances surrounding the foregoing: various current and former employees and contractors of MGA and its affiliates, including, without limitation, Isaac Larian, Veronica Marlow, Susana Kuemmerle, Sandrine de Raspide, Stephen Lee, Bruno Carlson, Paula Garcia, Shirin Salemnia, Margo Eldridge, Gustavo Machado Gomez, Edmund Lee, Chuck Scothon, Jaime Cygielman, Thomas Debrowski, Dave Malacrida, Thomas Pfau, Yuval Caspi, Jim Huntley, Carter Bryant, and Dan Cooney; various current or former employees and contractors of Mattel, including, without limitation, Matt Bousquette, Erica Ashbrook, Lily Martinez, Ron Brawer, Adrienne Fontanella, Tim Kiplin, Neil Friedman, Bob Eckert, Richard De Anda, Tina Patel, Ivy Ross, and Connie Hibbert (or Hebert); current or former employees of Kidz Entertainment, including, without

1 limitation, Morten Geschwendtner, Steffen Kragh, and Anna-Lisa McBride; current or
2 former employees of The Licensing Company, including, without limitation, Melvin
3 Thomas; current or former employees of Euromic, including, without limitation, Niels
4 Buchholst; current or former employees of Character Licensing and Marketing,
5 including, without limitation, Graham Stephen; current or former employees of
6 Egmont, including, without limitation, Frank Knau; current or former employees of
7 Saran; current or former employees of Endemol U.K. plc, including, without
8 limitation, Hayley Sussman; current and former employees of ConsumerQuest,
9 including, without limitation, Cory Schwartz; current or former employees of Smith
10 & Brooks; current or former employees of Zeon; current or former employees of
11 Gemma International; current or former employees of Hart Concepts; current or
12 former employees of MV Sports; current or former employees of JNH Israel,
13 including, without limitation, Muki Agami; current or former employees of Sea Port;
14 current or former employees of Random House, including, without limitation, Kate
15 Kilmo; current or former employees of Vivid Entertainment, Inc., including, without
16 limitation, Nick Austin; current or former employees of Early Light, including,
17 without limitation, Francis Choi; current or former employees of ITC, including,
18 without limitation, Peter Carrero; current or former employees of Candide; current or
19 former employees of Rose Art Industries, Inc., including, without limitation, Larry
20 Rosen; anyone who is familiar with MGA's and Mattel's products, including, without
21 limitation, consumers, retailers, licensees, distributors, and the trade press; various
22 current or former employees and contractors of Wal-Mart, including, without
23 limitation, Heather Hocut and Barb Lubestine; various current or former employees of
24 Toys 'R Us, including, without limitation, Manny Francione; current or former
25 employees of Zellers, including, without limitation, Robin Hogels; current or former
26 employees of Woolworth UK, including, without limitation, Lin Sherlock; current or
27 former employees of J.P. Morgan, including, without limitation, Dean Gianoukis;
28 Margo Eldridge; Michael D of JNH; Rosana Ferrer; Berte Dario; Fontini Karageorgi;

22

MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES     NO. CV 04-9049 SGL (RNBx)

EXHIBIT 7   PAGE 152

1  Jose Antonio; current and former employees of Vivid U.K., including, but not limited
2  to, Nick Austin and Emma Sherski; current or former employees of NPD, including,
3  but not limited to, Kelly Falco, Esther Han, Karyn Shonbart, and Frederique Tutt;
4  current or former employees and contractors of Mattel; Ketchum, Young & Rubicam
5  Brands, Peterson Milla Hooks, Brian Hooks, Ogilvy & Mather Worldwide; MTV
6  Networks / Nickelodeon.

   The following documents may be relevant to the foregoing: the products, trade dress, trademarks, themes, ideas, advertising and product packaging identified above; letters and emails to MGA from Euromic, Character Licensing and Marketing, Egmont, ConsumerQuest, Endemol, Kidz-Entertainment, Endemol U.K. plc, The Licensing Company, Rose Art Industries, ITC, Early Light, and Vivid Imagination; mails from consumers to MGA or Internet postings by consumers evidencing confusion between "Bratz" and "My Scene," articles in the press evidencing confusion between "Bratz" and "My Scene"; copies of web pages from eBay, La Papa, and Amazon; and a photograph of display of "Bratz" products at Target, which includes "My Scene" plush pet; emails to MGA from Toys 'R Us, Zellers, Woolworth UK, Margo Eldridge, JNH, Rosanna Ferrer, and J.P. Morgan; and press releases and articles with false information reported by Mattel; emails from Kelly Falco of NPD to MGA; emails from Nick Austin of Vivid U.K. to MGA; Mattel's press releases and communications with retailers and financial investors that improperly contain NPD data; Mattel's focus group studies and consumer research campaigns for MyScene products; documents regarding TIA's rules for the Toy-of-the-Year awards; correspondence between MGA's representatives and TIA; and correspondence between CARU and MGA representatives; documents produced by TIA in response to subpoena (TIA00001-00400); documents produced by CARU in response to subpoena; documents produced by NPD (NPD00001-00496)

   C.  Laches

   Mattel's counterclaims are barred by the equitable doctrine of laches because,

among other things, Mattel intentionally delayed taking legal action against MGA or Carter Bryant for several years after the launch of Bratz in the belief that Mattel would be able to drive Bratz (and as a result, drive MGA) out of the market for fashion dolls and/or the belief that Mattel did not have any rights under the "Inventions Agreement" as against Bryant, based on its own interpretations of the "Inventions Agreement," and on the advice that Mattel received from in-house and outside counsel. As a result, Mattel only took legal action well after MGA had invested substantial amounts of capital and creative and innovative efforts into the Bratz line of dolls and had experienced enormous success in the marketplace.

A report from Bryant's exit interview at Mattel shows that Bryant told Mattel's human resources representative he was leaving because an "[o]pportunity arose; had to take it." Mattel has acknowledged that employees leaving under similar circumstances to work for an unnamed competitor have "caused Mattel to begin investigating their activities."

Furthermore, numerous Mattel employees knew and/or believed in the summer of 2001 that Carter Bryant was involved in the development and introduction of the Bratz line. This knowledge and/or these beliefs by Mattel employees went well beyond mere "rumor and innuendo," as has been suggested by Mattel. In its interrogatory responses, Mattel also asserts that Bryant used several "other Mattel employees" to work on the Bratz dolls so that they "had been designed and were far along in development during the time that Bryant was employed by Mattel."

Shortly after Bratz dolls were in retail stores in the United States in or about September 2001, Mattel knew or was on notice that Carter Bryant was involved in the development of that line. Mattel now asserts in this lawsuit that the idea for Bratz was a violation of rights that Mattel had in a proposed flanker brand called "Toon Teens," which Mattel was developing in the summer of 1999, but never introduced to market. In this connection, during 2001, Toon Teens samples were taken out of

storage by Mattel employees and delivered to Mattel's legal department for analysis of possible copyright infringement and other claims against Bryant and MGA.

Mattel knew Bryant's role in Bratz and was investigating possible claims *at least as early as summer 2001*, when Bratz came out. Margaret Leahy, the third-party sculptor of Bratz, testified that in the summer of 2001 a friend from Mattel was "grilling" her, "like somebody put her up to it," about whether "Carter [was] the designer on the doll or what was [MGA employee and former Mattel employee] Paula [Garcia's] involvement" in Bratz. Leahy testified that she told the Mattel employee that "Carter initially came up with a design and Paula carried it out."

Mattel actively investigated Bryant's role in creating Bratz in 2001 and 2002. Mattel's internal investigative files confirm that Mattel commenced an official investigation into whether Bryant stole the Bratz idea in March 2002. Mattel admitted that in 2002 it investigated "rumor and innuendo that Bryant may be working with MGA on Bratz," including whether "Bryant ... plagiarized [Mattel product] 'Toon Teens' and created Bratz dolls for MGA" and whether Bryant helped MGA create Bratz "[w]hile he was working with Mattel." Mattel's CEO Robert Eckert received an "anonymous letter" on or about August 5, 2002 that alleged that Bryant helped MGA create Bratz while working for Mattel. As part of an official investigation requested by Mattel CEO Robert Eckert in August 2002 as to whether Bryant helped MGA create Bratz "[w]hile he was working with Mattel," Mattel's head of security, Richard De Anda, wrote that he had been "aware of this situation and ... working on it for several months" but it was in the hands of Mattel's attorneys. Testimony from former Mattel employee Elise Cloonan confirms that by at least late 2001, Mattel's lawyers were conducting an investigation involving Bryant's work on Bratz in the design department.

On March 15, 2002, Mattel opened an investigative file on MGA and Isaac Larian after receiving information from Evelyn Viohl and Ivy Ross that MGA had

recently hired Mattel employees and was reportedly manufacturing products that appeared to be Mattel designs.

Mattel has also forfeited any right it may have had to enforce Paragraph 3-a of the "Inventions Agreement" against Carter Bryant as a result of laches, estoppel, acquiescence, and waiver. MGA is informed and believes that it was common knowledge at Mattel that many Mattel employees employed in the Mattel design center worked on a freelance basis for third parties, including Mattel competitors, and/or on their own projects with the anticipation that such projects eventually would be offered for sale to third parties, including Mattel competitors. Mattel employees performed non-Mattel work while employed by Mattel and Mattel acquiesced to this moonlighting. For example, Robert Best developed a fashion line while employed at Mattel. Best disclosed this to Mattel and was not terminated. Joni Pratt created volleyball and basketball books for her daughter's high school outside of work, along with invitation and wrapping paper. Pratt testified that she showed these works to her supervisor at Mattel so there could be no misunderstanding that it was not related to her work at Mattel. Pratt has not disclosed everything she has drawn outside of work and testified that she does not feel she has an obligation to show her supervisors everything she has drawn outside of work. Lori Sipos, a designer at Mattel, created puppets as a hobby while she worked at Mattel. Sipos told Jill Nordquist about her hobby when showing her one of her puppets, but she did not tell Nordquist about the puppets in an effort to "report" her work. Nordquist testified that she was informed about the designs other people created outside of work in the course of sharing hobbies and not as part of an effort to report their works. Veronica Marlow helped Dianne Gavin develop a line of handbags while both were employed at Mattel. At her deposition, Veronica Marlow testified that Isabel Cabrera, Beatrice Morales, and Maria Elena Salazar worked with her on fashions for Bratz while they were employed by Mattel. Additionally, some of Mattel's sample makers made wedding gowns and did nails on the weekends and evenings and some of Mattel's hair rooters worked in

26

1  hair salons on weekends. During her deposition, Margaret Leahy testified that her
2  Mattel supervisor, Michael Hebden, suggested to her while she was working for
3  Mattel, that she seek out moonlighting work. During her deposition, Elise Cloonan
4  testified that the practice was so widespread that there was even a name for it at
5  Mattel: a "G-job." Indeed, Richard De Anda, Mattel's Vice President of Global
6  Security, testified at his deposition that he also moonlighted as an expert witness and
7  consultant while working for Mattel. De Anda further testified that he does not
8  believe that Mattel owns or has a claim on the work he does for himself. Despite
9  knowledge of this activity, Mattel rarely, if ever, enforced any rights it may have had
10 to prohibit such moonlighting.

11         Issues concerning this defense are currently the subject of outstanding
12 discovery requests. In particular, Mattel has staunchly refused to provide discovery
13 that would address when, in fact, Mattel first had reason to suspect Bryant's
14 involvement in Bratz, his alleged breach of contract, his work for MGA, and Mattel's
15 alleged "true owner[ship] of Bratz," in spite of numerous interrogatory requests,
16 document requests, requests for admission, and deposition notices. Defendants'
17 concerns regarding Mattel's discovery abuses have recently been addresses in
18 multiple motions to compel both before Judge Infante and Judge Larson. Indeed, on
19 January 3, 2008, Judge Infante overruled all of Mattel's objections and compelled
20 discovery relevant to Defendants' statute of limitations and laches defenses. Factual
21 investigation and discovery is ongoing and the MGA Defendants reserve the right to
22 supplement this response and, consistent with its obligations under Federal Rule of
23 Civil Procedure 26(e), the MGA Defendants will supplement this response if they
24 receive additional responsive information.

25         The following persons have knowledge of facts and circumstances regarding
26 the foregoing: Richard De Anda; Robert Eckert; Alan Kaye; Michele McShane;
27 Robert Normile; Margaret Leahy; Elise Cloonan; Veronica Marlow; Ilana Raynes;
28 Michael Hebden; Frederick Jackson; Ray Moore; Joe Benet; Carolyn Oros; Hung

Lee; Diana Troup; Cynthia Young; Margo Michelle; Kitty Black-Perkins; Janet Unalp; Debbie Meyer; Carol Spencer; Jennifer Kiernan; Bill Kelly; Steve McAdam; Howie Jesser, Ken Smith; Michael Moore; Jill Thomas; Tom Hodges; Julie Ashe Nobles; Morris Batay; Bruce Ryniker; Larry Wood; Eric Ostendorf; Steve Ryniker; Melody Hansen; Carter Bryant; Anna Rhee; Joe Feldman; Janet Blaser; Bill Greening; Roxanna Powell; Ken O'Leary; Lily Martinez; Cassidy Park; Ivy Ross; Joe Franke; Ann Driskill; Robert Best; Anne Olson; Dennis Soai; Kislap Ongchango; Nick Patean; Jerry Richardson; Spencer Davis; Bill Martinez; Barbara Meyer; Larry Clayton; Elon Dancer; Maury Kessel; Chris McAdam; Michael Norgren; Chris Sesto; Paul Sesto; Michael Hastey; Sullivan Hastey; Mark Rigger; Jeff Fuller; Tim Lewis; Tim Correa; Doc O'Connor; Myziue Hamilton; Joan Gaynor; Patty Gaynor; Mina Mirkazemi; Mercedeh Ward; Tony Yao; Aldo Fazilli; Isabel Cabrera; Beatrice Morales; Pedro Salazar; Maria Elena Salazar; Roger Simoneau, Jill Nordquist, Joni Pratt, Tina Tomiyama, and Evelyn Viohl.

The following documents may be relevant to the foregoing: Transcript from the Deposition of Margaret Leahy, Transcript from the Deposition of Elise Cloonan, Transcript from the Deposition of Alan Kaye, Transcript from the Deposition of Richard De Anda, Transcript from the Deposition of Ann Driskill, Transcript from the Deposition of Jill Nordquist, Transcript from the Deposition of Veronica Marlow, Transcript from the Deposition of Joni Pratt, Mattel's Responses and Supplemental Responses to Defendants' Interrogatories, Mattel's Internal Investigative Files regarding its investigations into Carter Bryant, MGA, or Isaac Larian, all Mattel worldwide consumer research reports produced by Mattel, internal marketing documents analyzing the performance of Bratz in the marketplace, M0001654-55, M0074397-74402, and M0074307-0074396.

D.  Statute of Limitations

Mattel's counterclaims are barred by the applicable statutes of limitations, including but not limited to, 18 U.S.C. § 1961 *eq seq.*, 17 U.S.C. § 507(b), and Code

EXHIBIT 4 PAGE 156