of Civil Procedure §§ 337, 339, 343 and 338(c). Mattel intentionally delayed taking legal action against MGA or Carter Bryant for several years after the launch of Bratz in the belief that Mattel would be able to drive Bratz (and as a result, drive MGA) out of the market for fashion dolls and/or the belief that Mattel did not have any rights under the "Inventions Agreement" as against Bryant, based on its own interpretations of the "Inventions Agreement," and on the advice that Mattel received from in-house and outside counsel. As a result, Mattel only took legal action well after MGA had invested substantial amounts of capital and creative and innovative efforts into the Bratz line of dolls and had experienced enormous success in the marketplace.

A report from Bryant's exit interview at Mattel shows that Bryant told Mattel's human resources representative he was leaving because an "[o]pportunity arose; had to take it." Mattel has acknowledged that employees leaving under similar circumstances to work for an unnamed competitor have "caused Mattel to begin investigating their activities."

Furthermore, numerous Mattel employees knew and/or believed in the summer of 2001 that Carter Bryant was involved in the development and introduction of the Bratz line. This knowledge and/or these beliefs by Mattel employees went well beyond mere "rumor and innuendo," as has been suggested by Mattel. In its interrogatory responses, Mattel also asserts that Bryant used several "other Mattel employees" to work on the Bratz dolls so that they "had been designed and were far along in development during the time that Bryant was employed by Mattel."

Shortly after Bratz dolls were in retail stores in the United States in or about September 2001, Mattel knew or was on notice that Carter Bryant was involved in the development of that line. Mattel now asserts in this lawsuit that the idea for Bratz was a violation of rights that Mattel had in a proposed flanker brand called "Toon Teens," which Mattel was developing in the summer of 1999, but never introduced to market. In this connection, during 2001, Toon Teens samples were taken out of

MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES    NO. CV 04-9049 SGL (RNBx)

storage by Mattel employees and delivered to Mattel's legal department for analysis of possible copyright infringement and other claims against Bryant and MGA.

Mattel knew Bryant's role in Bratz and was investigating possible claims *at least as early as summer 2001*, when Bratz came out. Margaret Leahy, the third-party sculptor of Bratz, testified that in the summer of 2001 a friend from Mattel was "grilling" her, "like somebody put her up to it," about whether "Carter [was] the designer on the doll or what was [MGA employee and former Mattel employee] Paula [Garcia's] involvement" in Bratz. Leahy testified that she told the Mattel employee that "Carter initially came up with a design and Paula carried it out."

Mattel actively investigated Bryant's role in creating Bratz in 2001 and 2002. Mattel's internal investigative files confirm that Mattel commenced an official investigation into whether Bryant stole the Bratz idea in March 2002. Mattel admitted that in 2002 it investigated "rumor and innuendo that Bryant may be working with MGA on Bratz," including whether "Bryant ... plagiarized [Mattel product] 'Toon Teens' and created Bratz dolls for MGA" and whether Bryant helped MGA create Bratz "[w]hile he was working with Mattel." Mattel's CEO Robert Eckert received an "anonymous letter" on or about August 5, 2002 that alleged that Bryant helped MGA create Bratz while working for Mattel. As part of an official investigation requested by Mattel CEO Robert Eckert in August 2002 as to whether Bryant helped MGA create Bratz "[w]hile he was working with Mattel," Mattel's head of security, Richard De Anda, wrote that he had been "aware of this situation and ... working on it for several months" but it was in the hands of Mattel's attorneys. Testimony from former Mattel employee Elise Cloonan confirms that by at least late 2001, Mattel's lawyers were conducting an investigation involving Bryant's work on Bratz in the design department.

On March 15, 2002, Mattel opened an investigative file on MGA and Isaac Larian after receiving information from Evelyn Viohl and Ivy Ross that MGA had

recently hired Mattel employees and was reportedly manufacturing products that appeared to be Mattel designs.

Issues concerning this Defense are currently the subject of outstanding discovery requests. In particular, Mattel has staunchly refused to provide discovery that would address when, in fact, Mattel first had reason to suspect Bryant's involvement in Bratz, his alleged breach of contract, his work for MGA, and Mattel's alleged "true owner[ship] of Bratz," in spite of numerous interrogatory requests, document requests, requests for admission, and deposition notices. Defendants' concerns regarding Mattel's discovery abuses have recently been addresses in multiple motions to compel both before Judge Infante and Judge Larson. Indeed, on January 3, 2008, Judge Infante overruled all of Mattel's objections and compelled discovery relevant to Defendants' statute of limitations and laches defenses. Factual investigation and discovery is ongoing and the MGA Defendants reserve the right to supplement this response and, consistent with its obligations under Federal Rule of Civil Procedure 26(e), the MGA Defendants will supplement this response if they receive additional responsive information.

The following persons have knowledge of Facts and circumstances regarding the foregoing: Richard De Anda; Robert Eckert; Alan Kaye; Michele McShane; Robert Normile; Margaret Leahy; Elise Cloonan; Veronica Marlow; Ilana Raynes; Michael Hebden; Frederick Jackson; Ray Moore; Joe Benet; Carter Bryant; Carolyn Oros; Hung Lee; Diana Troup; Cynthia Young; Margo Michelle; Kitty Black-Perkins; Janet Unalp; Debbie Meyer; Carol Spencer; Jennifer Kiernan; Bill Kelly; Steve McAdam; Howie Jesser, Ken Smith; Bob Tomamora; Tom Hodges; Julie Ashe Nobles; Morris Batay; Bruce Ryniker; Larry Wood; Eric Ostendorf; Steve Ryniker; Melody Hansen; Carter Bryant; Anna Rhee; Joe Feldman; Janet Blaser; Bill Greening; Roxanna Powell; Ken O'Leary; Lily Martinez; Cassidy Park; Ivy Ross; Joe Franke; Ann Driskill; Robert Best; Anne Olson; Dennis Soai; Kislap Ongchango; Nick Patean; Jerry Richardson; Spencer Davis; Bill Martinez; Barbara Meyer; Larry

31

1  Clayton; Elon Dancer; Maury Kessel; Chris McAdam; Michael Norgren; Chris Sesto;
2  Paul Sesto; Michael Hastey; Sullivan Hastey; Mark Rigger; Jeff Fuller; Tim Lewis;
3  Tim Correa; Doc O'Connor; Myziue Hamilton; Joan Gaynor; Patty Gaynor; Mina
4  Mirkazemi; Mercedeh Ward; Tony Yao; Aldo Fazilli; Isabel Cabrera; Beatrice
5  Morales; Pedro Salazar; Maria Elena Salazar; Roger Simoneau, Tina Tomiyama, and
6  Evelyn Viohl.

7  The following documents may be relevant to the foregoing: Transcript from the
8  Deposition of Margaret Leahy, Transcript from the Deposition of Elise Cloonan
9  Depo, Mattel's Responses and Supplemental Responses to Defendants'
10 Interrogatories, Mattel's Internal Investigative Files regarding its investigations into
11 Carter Bryant, MGA, or Isaac Larian, all Mattel worldwide consumer research reports
12 produced by Mattel, internal marketing documents analyzing the performance of
13 Bratz in the marketplace, M0001654-55, M0074397-74402, and M0074307-0074396.

14      E.   *Bona Fide* Purchaser for Value

15      Mattel cannot maintain its counterclaims against MGA Defendants because
16 MGA Defendants paid valuable consideration for Bryant's assignment of his rights in
17 the original Bratz drawings to MGA Defendants, and MGA Defendants acted with a
18 good faith belief that Bryant owned the rights to his original Bratz drawings and that
19 his assignment of such rights to MGA Defendants was valid and permissible. The
20 MGA Defendants also incorporate by reference its response below regarding its good
21 faith defense as though set forth fully herein.

22      Discovery is ongoing and the MGA Defendants reserve the right to supplement
23 this response and, consistent with its obligations under Federal Rule of Civil
24 Procedure 26(e), the MGA Defendants will supplement this response if they receive
25 additional responsive information.

26      The following persons have knowledge of facts and circumstances regarding
27 the foregoing: Carter Bryant; Bryant's mother, Janet Bryant; Bryant's father, Thomas
28 Bryant; Isaac Larian; Jeanne Galvano; Richard Irmen; Elise Cloonan; Ramona Prince;

Margaret Leahy; Veronica Marlow; Mercedeh Ward; Sarah Halpern; Paula Garcia; Steve Tarmichael; Rebecca Harris; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel Wong; Edmond Lee; Steven Lee; Aileen Storer; Eric Yip; Leon Djiguerian; Steffen Smith; Rachel Harris; Maggie Siu; Ben Ton; Sam Wong; Ray Wong; Ann Wang; David Rosenbaum.

The following documents are relevant to the foregoing: Carter Bryant's August and September 1998 drawings that he called "Bratz" (including, but not limited to, those drawings identified by Carter Bryant in Exhibit 5 of his deposition as being sketched in August 1998); publicly available materials that Bryant identified in his deposition testimony as inspiring his conception of a line of dolls in August or September of 1998, including but not limited to the August 1998 issue of *Seventeen Magazine*; all of Carter Bryant's sketches and/or modifications of sketches relating to Bratz concepts which were made by him after January 4, 1999 and prior to October 21, 2000; each and every document, prototype, and sample produced by Margaret Leahy, including Documents and items marked as exhibits at her deposition and those not marked as exhibits at her deposition; castings produced by Veronica Marlow at her deposition, including photographs of such castings marked as exhibits at her deposition; invoices submitted from Carter Bryant, Veronica Marlow, Anna Rhee, Victoria O'Connor, and other invoices submitted by freelancers for work performed on the Bratz project, all documents that refer to or evidence the work performed by MGA employees and freelancers toward the reduction to practice of the first generation of Bratz dolls during the period after October 19, 2000 through June 1, 2001, including but not limited to: Documents showing the development of the first generation of Bratz dolls; Documents showing exchanges with the Hong Kong factory regarding the development of the first generation of Bratz dolls; Documents showing the timing of the development of packaging, fashion, and accessories for the first generation of Bratz dolls; documents related to the January 2001 Hong Kong toy fair; Documents related to the February 2001 New York toy fair; polyurethane samples of

prototypes; rotocasts and sculpts in Hong Kong; all prototypes, samples, and tangible items produced by Margaret Leahy and Veronica Marlow, including items marked as exhibits at their depositions and those not marked as exhibits at their depositions; invoices submitted from Carter Bryant, Veronica Marlow, Anna Rhee, Victoria O'Connor, and other invoices submitted by freelancers for work performed on the Bratz project; Carter Bryant's August and September 1998 drawings that he called "Bratz" (including, but not limited to, those drawings identified by Carter Bryant in Exhibit 5 of his deposition as being sketched in August 1998); and all of Carter Bryant's sketches and/or modifications of sketches relating to Bratz concepts which were made by him after January 4, 1999 and prior to October 21, 2000, Carter Bryant's August and September 1998 drawings that he called "Bratz" (including, but not limited to, those drawings identified by Carter Bryant in Exhibit 5 of his deposition as being sketched in August 1998); publicly available materials that Bryant identified in his deposition testimony as inspiring his conception of a line of dolls in August or September of 1998, including but not limited to the August 1998 issue of *Seventeen Magazine*; Mattel's Brand Directional Outlines; analyses and assessments of Mattel's marketing strategies prepared and/or produced by Young and Rubicam Brands and Peterson Milla Hooks; Mattel's Marketing Department assessments of Mattel's advertising and branding strategies; Mattel's Creative Briefs; Documents generated by Mattel Worldwide Consumer Research relating to any aspect of the market for fashion dolls, including without limitation Bratz, My Scene, and Barbie; each and every document, prototype, and sample produced by Margaret Leahy, including Documents and items marked as exhibits at her deposition and those not marked as exhibits at her deposition; castings produced by Veronica Marlow at her deposition, including photographs of such castings marked at her deposition; invoices submitted from Carter Bryant, Veronica Marlow, Anna Rhee, Victoria O'Connor, and other invoices submitted by freelancers for work performed on the Bratz project; all of Carter Bryant's sketches and/or modifications of sketches relating to Bratz concepts

1 which were made by him after January 4, 1999 and prior to October 21, 2000; written
2 agreement between MGA and Carter Bryant, dated September 18, 2000 (M0001547-
3 M0001552).

    F.   17 U.S.C. § 205(d)

Mattel cannot maintain its counterclaims against MGA Defendants because, among other things, MGA Defendants acted with a good faith belief that Bryant owned the rights to his original Bratz drawings and that his assignment of such rights to MGA Defendants was valid and permissible. MGA acted in good faith when Bryant transferred and MGA acquired all rights to the Bratz concept, because of the following facts of which MGA was aware in the September to October 2000 time period: (i) Bryant had an idea in August or September of 1998, when he was not employed by Mattel, for a series of characters that he named Bratz that could be used to create a line of fashion dolls; (ii) at the same time, Bryant sketched a series of drawings to illustrate his conception; (iii) Bryant was the rightful owner of the concepts reflected in his drawings and other representations of his ideas and of his drawings; (iv) Bryant and his counsel, who MGA understood to have conducted an investigation, represented and warranted to MGA that Bryant was the exclusive originator and owner of his Bratz ideas and drawing and that no third party had any interest or rights in the drawings or the ideas reflected in the drawings; (v) Bryant came recommended by Veronica Marlow, a trusted freelancer who had worked for MGA in the past; (vi) immediately upon entering into a written freelance agreement with Bryant, Isaac Larian, the CEO of MGA, instructed Bryant to immediately resign from Mattel (and to the extent that anyone at MGA knew or had reason to know that Bryant had given two-weeks' notice at Mattel, his continuing presence at Mattel during that notice period had nothing to do with MGA's efforts to invest in and develop a line of dolls based on Bryant's concepts); (vii) assuming some part of the Bratz concept was a feature that could have been protected by a design patent, any such invention was not "conceived of" or "reduced to practice" prior to October 21,

2000, and such conception and reduction to practice were effectuated by Margaret Leahy, working on behalf of MGA, after October 20, 2000 and before June 1, 2001, along with other MGA agents and employees such as employees in Hong Kong and Mercedeh Ward; and (viii) MGA perceived (correctly) that Bryant's concept for a new line of dolls was one that needed considerable original, creative contributions and development by skilled artists who would be retained by MGA. MGA also perceived (correctly) while Bryant's idea provided a starting point, a significant amount of time, skill, resources, and original creative effort would be required to create a line of dolls that would have a chance of succeeding in the highly competitive fashion doll market, historically dominated by Mattel's Barbie. MGA thus retained for that purpose skilled artists, including Margaret Leahy, who worked for MGA as a sculptor throughout the relevant time period, and face painter Anna Rhee. Considerable contributions to the development of this product were also made by, among others, Paula Garcia, who was responsible for the overall supervision of the project, Isaac Larian, Mercedeh Ward, Veronica Marlow, and those involved in package design. This major investment by MGA, and the risks it faced, confirms MGA's good faith.

      Discovery is ongoing and the MGA Defendants reserve the right to supplement this response and, consistent with its obligations under Federal Rule of Civil Procedure 26(e), the MGA Defendants will supplement this response if they receive additional responsive information.

      The following persons have knowledge of facts and circumstances regarding the foregoing: Carter Bryant; Bryant's mother, Janet Bryant; Bryant's father, Thomas Bryant; Isaac Larian; Jeanne Galvano; Richard Irmen; Elise Cloonan; Ramona Prince; Margaret Leahy; Veronica Marlow; Mercedeh Ward; Sarah Halpern; Paula Garcia; Steve Tarmichael; Rebecca Harris; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel Wong; Edmond Lee; Steven Lee; Aileen Storer; Eric Yip; Leon Djiguerian; Steffen Smith; Rachel Harris; Maggie Siu; Ben Ton; Sam Wong; Ray Wong; Ann Wang; David Rosenbaum.

EXHIBIT 7 PAGE 16

1        The following documents are relevant to the foregoing: Carter Bryant's
2 August and September 1998 drawings that he called "Bratz" (including, but not
3 limited to, those drawings identified by Carter Bryant in Exhibit 5 of his deposition as
4 being sketched in August 1998); publicly available materials that Bryant identified in
5 his deposition testimony as inspiring his conception of a line of dolls in August or
6 September of 1998, including but not limited to the August 1998 issue of *Seventeen*
7 *Magazine*; all of Carter Bryant's sketches and/or modifications of sketches relating to
8 Bratz concepts which were made by him after January 4, 1999 and prior to October
9 21, 2000; each and every document, prototype, and sample produced by Margaret
10 Leahy, including Documents and items marked as exhibits at her deposition and those
11 not marked as exhibits at her deposition; castings produced by Veronica Marlow at
12 her deposition, including photographs of such castings marked as exhibits at her
13 deposition; invoices submitted from Carter Bryant, Veronica Marlow, Anna Rhee,
14 Victoria O'Connor, and other invoices submitted by freelancers for work performed
15 on the Bratz project, all documents that refer to or evidence the work performed by
16 MGA employees and freelancers toward the reduction to practice of the first
17 generation of Bratz dolls during the period after October 19, 2000 through June 1,
18 2001, including but not limited to: documents showing the development of the first
19 generation of Bratz dolls; documents showing exchanges with the Hong Kong factory
20 regarding the development of the first generation of Bratz dolls; documents showing
21 the timing of the development of packaging, fashion, and accessories for the first
22 generation of Bratz dolls; documents related to the January 2001 Hong Kong toy fair;
23 documents related to the February 2001 New York toy fair; polyurethane samples of
24 prototypes; rotocasts and sculpts in Hong Kong; all prototypes, samples, and tangible
25 items produced by Margaret Leahy and Veronica Marlow, including items marked as
26 exhibits at their depositions and those not marked as exhibits at their depositions;
27 invoices submitted from Carter Bryant, Veronica Marlow, Anna Rhee, Victoria
28 O'Connor, and other invoices submitted by freelancers for work performed on the

| MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES | NO. CV 04-9049 SGL (RNBx) |
|---|---|

EXHIBIT 5 PAGE 167