1   Mattel actively investigated Bryant's role in creating Bratz in 2001 and 2002.
2 Mattel's internal investigative files confirm that Mattel commenced an official
3 investigation into whether Bryant stole the Bratz idea in March 2002. Mattel admitted
4 that in 2002 it investigated "rumor and innuendo that Bryant may be working with
5 MGA on Bratz," including whether "Bryant … plagiarized [Mattel product] 'Toon
6 Teens' and created Bratz dolls for MGA" and whether Bryant helped MGA create
7 Bratz "[w]hile he was working with Mattel." Mattel's CEO Robert Eckert received
8 an "anonymous letter" on or about August 5, 2002 that alleged that Bryant helped
9 MGA create Bratz while working for Mattel. As part of an official investigation
10 requested by Mattel CEO Robert Eckert in August 2002 as to whether Bryant helped
11 MGA create Bratz "[w]hile he was working with Mattel," Mattel's head of security,
12 Richard De Anda, wrote that he had been "aware of this situation and … working on
13 it for several months" but it was in the hands of Mattel's attorneys. Testimony from
14 former Mattel employee Elise Cloonan confirms that by at least late 2001, Mattel's
15 lawyers were conducting an investigation involving Bryant's work on Bratz in the
16 design department.
17   On March 15, 2002, Mattel opened an investigative file on MGA and Isaac
18 Larian after receiving information from Evelyn Viohl and Ivy Ross that MGA had
19 recently hired a number of former Mattel employees and was reportedly
20 manufacturing products that appeared to be Mattel designs.
21   Mattel has also forfeited any right it may have had to enforce Paragraph 3-a of
22 the "Inventions Agreement" against Carter Bryant as a result of laches, estoppel,
23 acquiescence, and waiver. MGA is informed and believes that it was common
24 knowledge at Mattel that many Mattel employees employed in the Mattel design
25 center worked on a freelance basis for third parties, including Mattel competitors,
26 and/or on their own projects with the anticipation that such projects eventually would
27 be offered for sale to third parties, including Mattel competitors. Mattel employees
28 performed non-Mattel work while employed by Mattel and Mattel acquiesced to this

EXHIBIT "1"
PAGE 177

moonlighting. For example, Robert Best developed a fashion line while employed at Mattel. Best disclosed this to Mattel and was not terminated. Joni Pratt created volleyball and basketball books for her daughter's high school outside of work, along with invitation and wrapping paper. Pratt testified that she showed these works to her supervisor at Mattel so there could be no misunderstanding that it was not related to her work at Mattel. Pratt has not disclosed everything she has drawn outside of work and testified that she does not feel she has an obligation to show her supervisors everything she has drawn outside of work. Lori Sipos, a designer at Mattel, created puppets as a hobby while she worked at Mattel. Sipos told Jill Nordquist about her hobby when showing her one of her puppets, but she did not tell Nordquist about the puppets in an effort to "report" her work. Nordquist testified that she was informed about the designs other people created outside of work in the course of sharing hobbies and not as part of an effort to report their works. Veronica Marlow helped Dianne Gavin develop a line of handbags while both were employed at Mattel. At her deposition, Veronica Marlow testified that Isabel Cabrera, Beatrice Morales, and Maria Elena Salazar worked with her on fashions for Bratz while they were employed by Mattel. Additionally, some of Mattel's sample makers made wedding gowns and did nails on the weekends and evenings and some of Mattel's hair rooters worked in hair salons on weekends. During her deposition, Margaret Leahy testified that her Mattel supervisor, Michael Hebden, suggested to her while she was working for Mattel, that she seek out moonlighting work. During her deposition, Elise Cloonan testified that the practice was so widespread that there was even a name for it at Mattel: a "G-job." Indeed, Richard De Anda, Mattel's Vice President of Global Security, testified at his deposition that he also moonlighted as an expert witness and consultant while working for Mattel. De Anda further testified that he does not believe that Mattel owns or has a claim on the work he does for himself. Despite knowledge of this activity, Mattel rarely, if ever, enforced any rights it may have had to prohibit such moonlighting.

EXHIBIT 7 PAGE 176

1   Issues concerning this defense are currently the subject of outstanding
2  discovery requests. In particular, Mattel has staunchly refused to provide discovery
3  that would address when, in fact, Mattel first had reason to suspect Bryant's
4  involvement in Bratz, his alleged breach of contract, his work for MGA, and Mattel's
5  alleged "true owner[ship] of Bratz," in spite of numerous interrogatory requests,
6  document requests, requests for admission, and deposition notices. Defendants'
7  concerns regarding Mattel's discovery abuses have recently been addresses in
8  multiple motions to compel both before Judge Infante and Judge Larson. Indeed, on
9  January 3, 2008, Judge Infante overruled all of Mattel's objections and compelled
10 discovery relevant to Defendants' statute of limitations and laches defenses. Factual
11 investigation and discovery is ongoing and the MGA Defendants reserve the right to
12 supplement this response and, consistent with its obligations under Federal Rule of
13 Civil Procedure 26(e), the MGA Defendants will supplement this response if they
14 receive additional responsive information.

15   The following persons have knowledge of facts and circumstances regarding
16 the foregoing: Richard De Anda; Robert Eckert; Alan Kaye; Michele McShane;
17 Robert Normile; Margaret Leahy; Elise Cloonan; Veronica Marlow; Ilana Raynes;
18 Michael Hebden; Frederick Jackson; Ray Moore; Joe Benet; Carolyn Oros; Hung
19 Lee; Diana Troup; Cynthia Young; Margo Michelle; Kitty Black-Perkins; Janet
20 Unalp; Debbie Meyer; Carol Spencer; Jennifer Kiernan; Bill Kelly; Steve McAdam;
21 Howie Jesser, Ken Smith; Michael Moore; Jill Thomas; Tom Hodges; Julie Ashe
22 Nobles; Morris Batay; Bruce Ryniker; Larry Wood; Eric Ostendorf; Steve Ryniker;
23 Melody Hansen; Carter Bryant; Anna Rhee; Joe Feldman; Janet Blaser; Bill
24 Greening; Roxanna Powell; Ken O'Leary; Lily Martinez; Cassidy Park; Ivy Ross; Joe
25 Franke; Ann Driskill; Robert Best; Anne Olson; Dennis Soai; Kislap Ongchango;
26 Nick Patean; Jerry Richardson; Spencer Davis; Bill Martinez; Barbara Meyer; Larry
27 Clayton; Elon Dancer; Maury Kessel; Chris McAdam; Michael Norgren; Chris Sesto;
28 Paul Sesto; Michael Hastey; Sullivan Hastey; Mark Rigger; Jeff Fuller; Tim Lewis;

MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES      NO. CV 04-9049 SGL (RNBx)

EXHIBIT 9
PAGE 179

1 Tim Correa; Doc O'Connor; Myziue Hamilton; Joan Gaynor; Patty Gaynor; Mina
2 Mirkazemi; Mercedeh Ward; Tony Yao; Aldo Fazilli; Isabel Cabrera; Beatrice
3 Morales; Pedro Salazar; Maria Elena Salazar; Roger Simoneau, Jill Nordquist, Joni
4 Pratt, Tina Tomiyama, and Evelyn Viohl.

The following documents may be relevant to the foregoing: Leahy Depo, Cloonan Depo, Kaye Depo, De Anda Depo, Driskill Depo, Nordquist Depo, Marlow Depo, Pratt Depo Mattel's Responses and Supplemental Responses to Defendants' Interrogatories, Mattel's Internal Investigative Files regarding its investigations into Carter Bryant, MGA, or Isaac Larian, all Mattel worldwide consumer research reports produced by Mattel, internal marketing documents analyzing the performance of Bratz in the marketplace, M0001654-55, M0074397-74402, and M0074307-0074396.

K. **Failure to Mitigate**

MGA Defendants deny that Mattel suffered any damages, but even if it did, Mattel failed to take reasonable steps to mitigate those purported damages. Mattel intentionally delayed taking legal action against MGA or Carter Bryant for several years after the launch of Bratz in the belief that Mattel would be able to drive Bratz (and as a result, drive MGA) out of the market for fashion dolls and/or the belief that Mattel did not have any rights under the "Inventions Agreement" as against Bryant, based on its own interpretations of the "Inventions Agreement," and on the advice that Mattel received from in-house and outside counsel. As a result, Mattel only took legal action well after MGA had invested substantial amounts of capital and creative and innovative efforts into the Bratz line of dolls and had experienced enormous success in the marketplace.

A report from Bryant's exit interview at Mattel shows that Bryant told Mattel's human resources representative he was leaving because an "[o]pportunity arose; had to take it." Mattel has acknowledged that employees leaving under similar circumstances to work for an unnamed competitor have "caused Mattel to begin investigating their activities."

MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES   NO. CV 04-9049 SGL (RNBx)

Furthermore, numerous Mattel employees knew and/or believed in the summer of 2001 that Carter Bryant was involved in the development and introduction of the Bratz line. This knowledge and/or these beliefs by Mattel employees went well beyond mere "rumor and innuendo," as has been suggested by Mattel. In its interrogatory responses, Mattel also asserts that Bryant used several "other Mattel employees" to work on the Bratz dolls so that they "had been designed and were far along in development during the time that Bryant was employed by Mattel."

Shortly after Bratz dolls were in retail stores in the United States in or about September 2001, Mattel knew or was on notice that Carter Bryant was involved in the development of that line. Mattel now asserts in this lawsuit that the idea for Bratz was a violation of rights that Mattel had in a proposed flanker brand called "Toon Teens," which Mattel was developing in the summer of 1999, but never introduced to market. In this connection, during 2001, Toon Teens samples were taken out of storage by Mattel employees and delivered to Mattel's legal department for analysis of possible copyright infringement and other claims against Bryant and MGA.

Mattel knew Bryant's role in Bratz and was investigating possible claims *at least as early as summer 2001*, when Bratz came out. Margaret Leahy, the third-party sculptor of Bratz, testified that in the summer of 2001 a friend from Mattel was "grilling" her, "like somebody put her up to it," about whether "Carter [was] the designer on the doll or what was [MGA employee and former Mattel employee] Paula [Garcia's] involvement" in Bratz. Leahy testified that she told the Mattel employee that "Carter initially came up with a design and Paula carried it out."

Mattel actively investigated Bryant's role in creating Bratz in 2001 and 2002. Mattel's internal investigative files confirm that Mattel commenced an official investigation into whether Bryant stole the Bratz idea in March 2002. Mattel admitted that in 2002 it investigated "rumor and innuendo that Bryant may be working with MGA on Bratz," including whether "Bryant ... plagiarized [Mattel product] 'Toon Teens' and created Bratz dolls for MGA" and whether Bryant helped MGA create

51

Bratz "[w]hile he was working with Mattel." Mattel's CEO Robert Eckert received an "anonymous letter" on or about August 5, 2002 that alleged that Bryant helped MGA create Bratz while working for Mattel. As part of an official investigation requested by Mattel CEO Robert Eckert in August 2002 as to whether Bryant helped MGA create Bratz "[w]hile he was working with Mattel," Mattel's head of security, Richard De Anda, wrote that he had been "aware of this situation and ... working on it for several months" but it was in the hands of Mattel's attorneys. Testimony from former Mattel employee Elise Cloonan confirms that by at least late 2001, Mattel's lawyers were conducting an investigation involving Bryant's work on Bratz in the design department.

On March 15, 2002, Mattel opened an investigative file on MGA and Isaac Larian after receiving information from Evelyn Viohl and Ivy Ross that MGA had recently hired a number of former Mattel employees and was reportedly manufacturing products that appeared to be Mattel designs.

Mattel has also forfeited any right it may have had to enforce Paragraph 3-a of the "Inventions Agreement" against Carter Bryant as a result of laches, estoppel, acquiescence, and waiver. MGA is informed and believes that it was common knowledge at Mattel that many Mattel employees employed in the Mattel design center worked on a freelance basis for third parties, including Mattel competitors, and/or on their own projects with the anticipation that such projects eventually would be offered for sale to third parties, including Mattel competitors. Mattel employees performed non-Mattel work while employed by Mattel and Mattel acquiesced to this moonlighting. For example, Robert Best developed a fashion line while employed at Mattel. Best disclosed this to Mattel and was not terminated. Joni Pratt created volleyball and basketball books for her daughter's high school outside of work, along with invitation and wrapping paper. Pratt testified that she showed these works to her supervisor at Mattel so there could be no misunderstanding that it was not related to her work at Mattel. Pratt has not disclosed everything she has drawn outside of work

EXHIBIT 1 PAGE 162

and testified that she does not feel she has an obligation to show her supervisors everything she has drawn outside of work. Lori Sipos, a designer at Mattel, created puppets as a hobby while she worked at Mattel. Sipos told Jill Nordquist about her hobby when showing her one of her puppets, but she did not tell Nordquist about the puppets in an effort to "report" her work. Nordquist testified that she was informed about the designs other people created outside of work in the course of sharing hobbies and not as part of an effort to report their works. Veronica Marlow helped Dianne Gavin develop a line of handbags while both were employed at Mattel. At her deposition, Veronica Marlow testified that Isabel Cabrera, Beatrice Morales, and Maria Elena Salazar worked with her on fashions for Bratz while they were employed by Mattel. Additionally, some of Mattel's sample makers made wedding gowns and did nails on the weekends and evenings and some of Mattel's hair rooters worked in hair salons on weekends. During her deposition, Margaret Leahy testified that her Mattel supervisor, Michael Hebden, suggested to her while she was working for Mattel, that she seek out moonlighting work. During her deposition, Elise Cloonan testified that the practice was so widespread that there was even a name for it at Mattel: a "G-job." Indeed, Richard De Anda, Mattel's Vice President of Global Security, testified at his deposition that he also moonlighted as an expert witness and consultant while working for Mattel. De Anda further testified that he does not believe that Mattel owns or has a claim on the work he does for himself. Despite knowledge of this activity, Mattel rarely, if ever, enforced any rights it may have had to prohibit such moonlighting.

    Issues concerning this defense are currently the subject of outstanding discovery requests. In particular, Mattel has staunchly refused to provide discovery that would address when, in fact, Mattel first had reason to suspect Bryant's involvement in Bratz, his alleged breach of contract, his work for MGA, and Mattel's alleged "true owner[ship] of Bratz," in spite of numerous interrogatory requests, document requests, requests for admission, and deposition notices. Defendants'

concerns regarding Mattel's discovery abuses have recently been addresses in multiple motions to compel both before Judge Infante and Judge Larson. Indeed, on January 3, 2008, Judge Infante overruled all of Mattel's objections and compelled discovery relevant to Defendants' statute of limitations and laches defenses. Factual investigation and discovery is ongoing and the MGA Defendants reserve the right to supplement this response and, consistent with its obligations under <u>Federal Rule of Civil Procedure</u> 26(e), the MGA Defendants will supplement this response if they receive additional responsive information.

The following persons have knowledge of facts and circumstances regarding the foregoing: Richard De Anda; Robert Eckert; Alan Kaye; Michele McShane; Robert Normile; Margaret Leahy; Elise Cloonan; Veronica Marlow; Ilana Raynes; Michael Hebden; Frederick Jackson; Ray Moore; Joe Benet; Carolyn Oros; Hung Lee; Diana Troup; Cynthia Young; Margo Michelle; Kitty Black-Perkins; Janet Unalp; Debbie Meyer; Carol Spencer; Jennifer Kiernan; Bill Kelly; Steve McAdam; Howie Jesser, Ken Smith; Michael Moore; Jill Thomas; Tom Hodges; Julie Ashe Nobles; Morris Batay; Bruce Ryniker; Larry Wood; Eric Ostendorf; Steve Ryniker; Melody Hansen; Carter Bryant; Anna Rhee; Joe Feldman; Janet Blaser; Bill Greening; Roxanna Powell; Ken O'Leary; Lily Martinez; Cassidy Park; Ivy Ross; Joe Franke; Ann Driskill; Robert Best; Anne Olson; Dennis Soai; Kislap Ongchango; Nick Patean; Jerry Richardson; Spencer Davis; Bill Martinez; Barbara Meyer; Larry Clayton; Elon Dancer; Maury Kessel; Chris McAdam; Michael Norgren; Chris Sesto; Paul Sesto; Michael Hastey; Sullivan Hastey; Mark Rigger; Jeff Fuller; Tim Lewis; Tim Correa; Doc O'Connor; Myziue Hamilton; Joan Gaynor; Patty Gaynor; Mina Mirkazemi; Mercedeh Ward; Tony Yao; Aldo Fazilli; Isabel Cabrera; Beatrice Morales; Pedro Salazar; Maria Elena Salazar; Roger Simoneau, Jill Nordquist, Joni Pratt, Tina Tomiyama, and Evelyn Viohl.

The following documents may be relevant to the foregoing: Transcript from the Deposition of Margaret Leahy, Transcript from the Deposition of Elise Cloonan,

54

MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES    NO. CV 04-9049 SGL (RNBx)

EXHIBIT 9 PAGE 164

1 Transcript from the Deposition of Alan Kaye, Transcript from the Deposition of
2 Richard De Anda, Transcript from the Deposition of Ann Driskill, Transcript from the
3 Deposition of Jill Nordquist, Transcript from the Deposition of Veronica Marlow,
4 Transcript from the Deposition of Joni Pratt, Mattel's Responses and Supplemental
5 Responses to Defendants' Interrogatories, Mattel's Internal Investigative Files
6 regarding its investigations into Carter Bryant, MGA, or Isaac Larian, all Mattel
7 worldwide consumer research reports produced by Mattel, internal marketing
8 documents analyzing the performance of Bratz in the marketplace, M0001654-55,
9 M0074397-74402, and M0074307-0074396.

L. No Statutory Damages or Attorneys' Fees

Mattel is barred from recovering statutory damages and/or attorneys' fees because it failed to register the copyrights that are purportedly at issue within the time required by 17 U.S.C. § 412.

The following documents may be relevant to the foregoing: Mattel's copyright registrations at issue in this case, including but not limited to Mattel's registration for Toon Teens (M12564-M12565) and My Scene (M62033-62116), and Bratz (M59698-M59761; M59579-M59609).

M. Waiver

Mattel's counterclaims are barred in whole or in part by waiver because, among other things, Mattel intentionally delayed taking legal action against MGA or Carter Bryant for several years after the launch of Bratz in the belief that Mattel would be able to drive Bratz (and as a result, drive MGA) out of the market for fashion dolls and/or the belief that Mattel did not have any rights under the "Inventions Agreement" as against Bryant, based on its own interpretations of the "Inventions Agreement," and on the advice that Mattel received from in-house and outside counsel. As a result, Mattel only took legal action well after MGA had invested substantial amounts of capital and creative and innovative efforts into the Bratz line of dolls and had experienced enormous success in the marketplace.