1   • Head size (dolls' heads are proportionally smaller than characters' heads

2   in the drawings)

3   • Eyes (dolls' eyes are more open than characters' eyes in the drawings)

4   • Eye to lips ratio (lips of characters in drawings are proportionally larger

5   relative to eyes than are lips of dolls)

6   • Hair (characters in drawings have much edgier hairstyles than the dolls

7   do)

8   • Shapes of eyes and eye design

9   • Shapes of lips

10  • Overall look and feel (dolls are overall softer, less extreme than

11  drawings)

12      That the dolls and the drawings are not substantially similar also is consistent

13  with the fact that Carter Bryant was not a sculptor, and, as discussed above, any effort

14  to translate his pre-1999 two-dimensional flat art into a three-dimensional form for

15  use as a fashion doll sculpt would have produced shapes that were different from the

16  actual shape of the final three-dimensional Bratz sculpt used in manufacturing the first

17  generation of Bratz dolls released on the market by MGA in or about June 2001.

18  Indeed, a team of highly-skilled artists (including several that had been used by

19  Mattel) spent months developing the Bratz first-generation dolls—valuable time and

20  original creative effort that would not have been necessary if said first-generation

21  Bratz dolls were simply a copy of Bryant's designs.

22      The absence of substantial similarity is further shown in the close correlation

23  between Bryant's drawings and the inspiration he points to, including but not limited

24  to the Steve Madden and Paris Blues advertisements in the August 1998 issue of

25  *Seventeen Magazine*, as well as other advertisements in that issue, such as the Coca

26  Cola advertisement.

27      Mattel's own My Scene Barbie line of dolls provides further proof that the first

28  generation of Bratz dolls was not substantially similar to the Bryant drawings, in that

74

1  (i) Mattel asserts that the My Scene Barbie dolls are independent works of art, not

2  copied from Bratz, yet (ii) said dolls are far closer in appearance to Bratz dolls than

3  are Bryant's two-dimensional drawings.

4         Additional details regarding such differences will be the subject of expert

5  disclosures and will be provided in accordance with the Court's schedule for expert

6  discovery.

7         With respect to any Carter Bryant contribution to the first generation Bratz

8  product after October 4, 2000 and before October 21, 2000, MGA notes that any such

9  contribution was far outweighed by the original and/or creative input of other artists

10  working for or on behalf of MGA on the Bratz concept, which was owned by MGA as

11  a consequence of the transfer of rights from Bryant to MGA.

12        With respect to Bratz two-dimensional character art utilized on, for example,

13  Bratz product packaging and licensed products, while the initial Bratz character art

14  was derivative of Bryant's initial sketches from 1998, by no later than August, 2003,

15  the Bratz character art had changed sufficiently such that it was no longer derivative

16  of Bryant's sketches.

17        The following persons have knowledge of facts and circumstances surrounding

18  the foregoing: Isaac Larian; Carter Bryant; Margaret Leahy; Veronica Marlow;

19  Mercedeh Ward; Sarah Halpern; Paula Garcia; Steve Tarmichael; Rebecca Harris;

20  Tina Tomiyama; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel Wong; Lily

21  Martinez; Ei Akiko Fong; John Steven Baulch; Aileen Storer; Debora Middleton;

22  Ronan Spelman; Charlotte Broussard.

23        The following documents may be relevant to the foregoing:  all documents that

24  refer to or evidence the work performed by MGA employees and freelancers toward

25  the reduction to practice of the first generation of Bratz dolls during the period after

26  October 20, 2000 through June 1, 2001, including but not limited to:  Carter Bryant's

27  drawings; documents and tangible things produced by Margaret Leahy; tangible

28  things produced by Veronica Marlow; invoices submitted by employees and/or

EXHIBIT 9   PAGE 205

MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES          NO. CV 04-9049 SGL (RNBx)

1   freelance artists working for MGA for work performed on the Bratz project; all

2   documents that constitute samples of the following items in the public domain in

3   1998: Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and Barbie dolls;

4   Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little Miss No Name;

5   Hello Kitty; anime, including, e.g., Sailor Moon; manga; Coca-Cola advertisements;

6   Steve Madden advertisements; and Paris Blues advertisements; Bratz prototypes,

7   samples, sculpts, and rotocasts found in Hong Kong and produced to Mattel.  The

8   documents evidencing this work are too numerous to identify individually.

9          Q.    Competition Privilege/Justification

10          Mattel's counterclaims are barred in whole or in part on the grounds that the

11   acts of the MGA Defendants were lawful competition or justified.  MGA's

12   development and marketing of toys, including its Bratz fashion dolls and other

13   products constitutes lawful competition.

14          Discovery is ongoing and the MGA Defendants reserve the right to supplement

15   this response and, consistent with its obligations under Federal Rule of Civil

16   Procedure 26(e), the MGA Defendants will supplement this response if they receive

17   additional responsive information.

18          R.    Good Faith

19          Mattel's counterclaims are barred in whole or in part because the MGA

20   Defendants acted in good faith.  MGA acted in good faith when Bryant transferred

21   and MGA acquired all rights to the Bratz concept, because of the following facts of

22   which MGA was aware in the September to October 2000 time period: (i) Bryant had

23   an idea in August or September of 1998, when he was not employed by Mattel, for a

24   series of characters that he named Bratz that could be used to create a line of fashion

25   dolls; (ii) at the same time, Bryant sketched a series of drawings to illustrate his

26   conception; (iii) Bryant was the rightful owner of the concepts reflected in his

27   drawings and other representations of his ideas and of his drawings; (iv) Bryant and

28   his counsel, who MGA understood to have conducted an investigation, represented

76

EXHIBIT 7   PAGE 206

1  and warranted to MGA that Bryant was the exclusive originator and owner of his

2  Bratz ideas and drawing and that no third party had any interest or rights in the

3  drawings or the ideas reflected in the drawings; (v) Bryant came recommended by

4  Veronica Marlow, a trusted freelancer who had worked for MGA in the past; (vi)

5  immediately upon entering into a written freelance agreement with Bryant, Isaac

6  Larian, the CEO of MGA, instructed Bryant to immediately resign from Mattel (and

7  to the extent that anyone at MGA knew or had reason to know that Bryant had given

8  two-weeks' notice at Mattel, his continuing presence at Mattel during that notice

9  period had nothing to do with MGA's efforts to invest in and develop a line of dolls

10  based on Bryant's concepts); (vii) assuming some part of the Bratz concept was a

11  feature that could have been protected by a design patent, any such invention was not

12  "conceived of" or "reduced to practice" prior to October 21, 2000, and such

13  conception and reduction to practice were effectuated by Margaret Leahy, working on

14  behalf of MGA, after October 20, 2000 and before June 1, 2001, along with other

15  MGA agents and employees such as employees in Hong Kong and Mercedeh Ward;

16  and (viii) MGA perceived (correctly) that Bryant's concept for a new line of dolls was

17  one that needed considerable original, creative contributions and development by

18  skilled artists who would be retained by MGA.  MGA also perceived (correctly) while

19  Bryant's idea provided a starting point, a significant amount of time, skill, resources,

20  and original creative effort would be required to create a line of dolls that would have

21  a chance of succeeding in the highly competitive fashion doll market, historically

22  dominated by Mattel's Barbie.  MGA thus retained for that purpose skilled artists,

23  including Margaret Leahy, who worked for MGA as a sculptor throughout the

24  relevant time period, and face painter Anna Rhee.  Considerable contributions to the

25  development of this product were also made by, among others, Paula Garcia, who was

26  responsible for the overall supervision of the project, Isaac Larian, Mercedeh Ward,

27  Veronica Marlow, and those involved in package design.  This major investment by

28  MGA, and the risks it faced, confirms MGA's good faith.

MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES            NO. CV 04-9049 SGL (RNBx)

EXHIBIT ___4___

PAGE ___107___

1   Discovery is ongoing and the MGA Defendants reserve the right to supplement

2   this response and, consistent with its obligations under Federal Rule of Civil

3   Procedure 26(e), the MGA Defendants will supplement this response if they receive

4   additional responsive information.

5       The following persons have knowledge of facts and circumstances regarding

6   the foregoing:  Carter Bryant; Bryant's mother, Janet Bryant; Bryant's father, Thomas

7   Bryant; Isaac Larian; Jeanne Galvano; Richard Irmen; Elise Cloonan; Ramona Prince;

8   Margaret Leahy; Veronica Marlow; Mercedeh Ward; Sarah Halpern; Paula Garcia;

9   Steve Tarmichael; Rebecca Harris; Cecilia Kwok; David Dees; Jesse Ramirez;

10  Samuel Wong; Edmond Lee; Steven Lee; Aileen Storer; Eric Yip; Leon Djiguerian;

11  Steffen Smith; Rachel Harris; Maggie Siu; Ben Ton; Sam Wong; Ray Wong; Ann

12  Wang; David Rosenbaum.

13      The following documents are relevant to the foregoing: Carter Bryant's

14  August and September 1998 drawings that he called "Bratz" (including, but not

15  limited to, those drawings identified by Carter Bryant in Exhibit 5 of his deposition as

16  being sketched in August 1998); publicly available materials that Bryant identified in

17  his deposition testimony as inspiring his conception of a line of dolls in August or

18  September of 1998, including but not limited to the August 1998 issue of *Seventeen*

19  *Magazine*; all of Carter Bryant's sketches and/or modifications of sketches relating to

20  Bratz concepts which were made by him after January 4, 1999 and prior to October

21  21, 2000; each and every document, prototype, and sample produced by Margaret

22  Leahy, including documents and items marked as exhibits at her deposition and those

23  not marked as exhibits at her deposition; castings produced by Veronica Marlow at

24  her deposition, including photographs of such castings marked as exhibits at her

25  deposition; invoices submitted from Carter Bryant, Veronica Marlow, Anna Rhee,

26  Victoria O'Connor, and other invoices submitted by freelancers for work performed

27  on the Bratz project; documents relating to the work performed by MGA employees

28  and freelancers toward the reduction to practice of the first generation of Bratz dolls

MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES          NO. CV 04-9049 SGL (RNBx)

1  during the period after October 19, 2000 through June 1, 2001, including but not

2  limited to: documents showing the development of the first generation of Bratz dolls;

3  documents showing exchanges with the Hong Kong factory regarding the

4  development of the first generation of Bratz dolls; documents showing the timing of

5  the development of packaging, fashion, and accessories for the first generation of

6  Bratz dolls; documents related to the January 2001 Hong Kong toy fair; documents

7  related to the February 2001 New York toy fair; polyurethane samples of prototypes;

8  rotocasts and sculpts in Hong Kong; all prototypes, samples, and tangible items

9  produced by Margaret Leahy and Veronica Marlow, including items marked as

10  exhibits at their depositions and those not marked as exhibits at their depositions;

11  invoices submitted from Carter Bryant, Veronica Marlow, Anna Rhee, Victoria

12  O'Connor, and other invoices submitted by freelancers for work performed on the

13  Bratz project; Carter Bryant's August and September 1998 drawings that he called

14  "Bratz" (including, but not limited to, those drawings identified by Carter Bryant in

15  Exhibit 5 of his deposition as being sketched in August 1998); and all of Carter

16  Bryant's sketches and/or modifications of sketches relating to Bratz concepts which

17  were made by him after January 4, 1999 and prior to October 21, 2000; Carter

18  Bryant's August and September 1998 drawings that he called "Bratz" (including, but

19  not limited to, those drawings identified by Carter Bryant in Exhibit 5 of his

20  deposition as being sketched in August 1998); publicly available materials that Bryant

21  identified in his deposition testimony as inspiring his conception of a line of dolls in

22  August or September of 1998, including but not limited to the August 1998 issue of

23  *Seventeen Magazine*; Mattel's Brand Directional Outlines; analyses and assessments

24  of Mattel's marketing strategies prepared and/or produced by Young and Rubicam

25  Brands and Peterson Milla Hooks; Mattel's Marketing Department assessments of

26  Mattel's advertising and branding strategies; Mattel's Creative Briefs; documents

27  generated by Mattel Worldwide Consumer Research relating to any aspect of the

28  market for fashion dolls, including without limitation Bratz, My Scene, and Barbie;

MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES     NO. CV 04-9049 SGL (RNBx)

1   each and every document, prototype, and sample produced by Margaret Leahy,

2   including documents and items marked as exhibits at her deposition and those not

3   marked as exhibits at her deposition; castings produced by Veronica Marlow at her

4   deposition, including photographs of such castings marked at her deposition; invoices

5   submitted from Carter Bryant, Veronica Marlow, Anna Rhee, Victoria O'Connor, and

6   other invoices submitted by freelancers for work performed on the Bratz project; all of

7   Carter Bryant's sketches and/or modifications of sketches relating to Bratz concepts

8   which were made by him after January 4, 1999 and prior to October 21, 2000.

9        S.    Lack of Authority

10       Mattel's counterclaims are barred in whole or in part on the grounds that to the

11   extent any person committed an unlawful or tortious act, the person lacked authority

12   to commit such act on behalf of the MGA Defendants.

13       Discovery is ongoing and the MGA Defendants reserve the right to supplement

14   this response and, consistent with its obligations under Federal Rule of Civil

15   Procedure 26(e), the MGA Defendants will supplement this response if they receive

16   additional responsive information.

17       T.    Lack of Standing

18       Mattel's counterclaims are barred in whole or in part by its lack of standing

19   because does not have any ownership interest in Bratz.  Carter Bryant conceived of

20   the idea for a new line of fashion dolls that he called "Bratz" in August/September

21   1998, a time when he was not employed by Mattel.  There was neither a conception

22   nor a reduction to practice of Bryant's idea for Bratz, as those terms are used in patent

23   law and/or in the Employee Confidential Information and Inventions Agreement

24   produced in this action by Mattel as M0001596 ("Employee Agreement"), during the

25   period of Bryant's employment Mattel.  Any work that Bryant performed relating to

26   his Bratz ideas during the time period that he was still employed by Mattel constituted

27   lawful steps by Bryant to prepare to embark upon a new career.  Consequently, the

28   Employee Agreement, which by its express terms is limited to inventions conceived

MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES          NO. CV 04-9049 SGL (RNBx)

EXHIBIT  7
PAGE  210

1 || or reduced to practice during Bryant's term of employment with Mattel, does not

2 || apply to Bryant's Bratz idea, and Bryant was the rightful and sole owner of his Bratz

3 || idea and the concepts reflected in his illustrative drawings of his idea at the time he

4 || transferred rights to Bratz to MGA.

5 ||      While the Inventions Agreement covers utility patents, the concept of fashion

6 || dolls was already in the public domain and could not and cannot be protected by a

7 || utility patent.  The Inventions Agreement does not apply to design patents in that said

8 || Agreement did not include any reference to the statutory definition of a design patent.

9 || 35 U.S.C. §171 extends design patent protection for "any new, original and

10 || ornamental design for an article of manufacture."  Even if the Inventions Agreement

11 || did cover design patents, no conception nor reduction to practice of an original

12 || ornamental design for an article of manufacture related to Bratz occurred during

13 || Carter Bryant's employment at Mattel.  From a design patent law perspective, the

14 || conception and reduction to practice of the Bratz dolls was accomplished on or after

15 || October 21, 2001 by an artist, Margaret Leahy, working for MGA, and other Mattel

16 || employees and agents, and not by Carter Bryant.

17 ||      The Inventions Agreement does not cover copyright subject matter.  In contrast

18 || to earlier versions of the Inventions Agreement signed by Mattel employees as a

19 || condition of their employment status, and other Mattel documents, the Agreement

20 || signed by Carter Bryant specifically omitted a reference to "copyright subject matter."

21 || Nor does the Inventions Agreement apply to Bryant's conception of a line of fashion

22 || dolls.

23 ||      To the extent that Mattel alleges that Bryant's concept for a new line of fashion

24 || dolls, or the name "Bratz," are trade secrets of Mattel's, they are not covered by the

25 || Inventions Agreement because they were conceived of by Bryant prior to his re-

26 || employment by Mattel.  In addition, even if they had been conceived of during

27 || Bryant's second tenure at Mattel, they would not fall within the scope of the

28 || Inventions Agreement because they were not concepts that were developed "as a

EXHIBIT ____ PAGE ____ 21

81

MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES        NO. CV 04-9049 SGL (RNBx)

1 result of [Carter Bryant's] employment with the company." Bryant's job

2 responsibilities in his position that began on January 4, 1999 (in the Barbie

3 Collectibles group at Mattel) was to design fashions, hairstyles, and face appearances

4 using the standard Barbie sculpt for dolls that were marketed by Mattel as "Barbie".

5 In addition, the Inventions Agreement signed by Bryant on January 4, 1999,

6 specifically omitted references to Mattel's ownership of employee ideas, whereas

7 earlier and later versions of the Inventions Agreement and other similar documents,

8 including but not limited to the Mattel Proprietary Information Checkout Form signed

9 by Carter Bryant in October 2000, included employee "ideas" within their scope.

10 The Mattel Proprietary Information Checkout Form, to the extent it attempted to

11 impose new obligations and restrictions on Bryant on his last day at Mattel, would be

12 unenforceable for lack of consideration and fraud.

13       None of Mattel's employment-related forms signed by Carter Bryant required

14 him to disclose pre-existing concepts that he had created. However, prior and

15 subsequent employment forms utilized by Mattel did impose such a requirement on

16 new Mattel employees.

17       All of Mattel's employment-related form agreements are contracts of adhesion

18 under California law. Ambiguous contracts are to be construed strictly against the

19 drafter under California law. See Calif. Civil Code § 1654; Carsten's v. U.S. Shoe

20 Corp.'s Long-Term Benefits Disability Plan, 2007 WL 3236353 (N.D. Cal. October

21 31, 2007); Mayhew v. Benninghoff, 53 Cal. App. 4th 1365 (Cal. Ct. App. 1997). This

22 is particularly true in the case of a contract of adhesion. See generally Goddard v.

23 South Bay Union High Sch. Dist., 79 Cal. App. 3d 98 (Cal. Ct. App. 1978); Gray v.

24 Zurich Ins. Co., 65 Cal. 2d 263 (1966). All ambiguities in the "INVENTIONS

25 AGREEMENT" must therefore be resolved against Mattel.

26       Discovery is ongoing and the MGA Defendants reserve the right to supplement

27 this response and, consistent with its obligations under Federal Rule of Civil

28 Procedure 26(e), the MGA Defendants will supplement this response if they receive

MGA'S RESPONSE TO MATTEL'S AMEND. SUPP. ROG RE AFFIRM. DEFENSES     NO. CV 04-9049 SGL (RNBx)

EXHIBIT ___ 4 ___

PAGE ___ 212 ___