1 additional responsive information.

2     The following persons have knowledge of facts and circumstances relating to
3 the foregoing: Carter Bryant; Bryant's mother, Janet Bryant; Bryant's father, Thomas
4 Bryant; Jeanne Galvano; Richard Irmen, Elise Cloonan; Ramona Price; Margaret
5 Leahy; Veronica Marlow; Anna Rhee; Mercedeh Ward; Sarah Halpern; Paula
6 Treantafelles (Garcia); Steve Tarmichael; Rebecca Harris, Cecilia Kwok; David Dees;
7 Jesse Ramirez; Samuel Wong; Edmond Lee; Steven Lee; Aileen Storer; Eric Yip;
8 Leon Djiguerian; Rachel Harris; Maggie Siu; Ben Ton; Sam Wong; Ray Wong;
9 Sandy Yonemoto; Alan Kaye; Lissa Freed; Richard De Anda; Elise Cloonan; Ann
10 Driskill; Ron Longsdorf; Tina Tomiyama; Cassidy Park; Mattel's in-house legal staff,
11 including Michael Moore; Mattel's outside counsel, including "outside attorneys"
12 referred to by Richard De Anda in an undated email written by De Anda and sent to
13 Alan Kaye (M 0074400); Matt Bousquette; Ivy Ross; Adrienne Fontanella.

14     The following documents may be relevant to these facts: the sketches drawn, in
15 whole or in part, by Bryant in or about August 1998, including those bearing the bates
16 numbers BRYANT 175, 176, 177, 178, 179, 180, 181, 182, 183, 186, 189, 190, 192,
17 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209,
18 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 277, 300, 301, 302, 303, 1003,
19 1243, 1977, 1993 and Exhibits 1, 2, and 3 to his deposition; publicly available
20 materials that Bryant identified in his deposition testimony as inspiring his conception
21 of a line of dolls in or about August 1998, including but not limited to the August
22 1998 issue of Seventeen Magazine; other documents shown to Bryant at his
23 November 2004 deposition and marked as exhibits thereto relating to the development
24 of his idea for Bratz; Transcript of the Deposition of Carter Bryant, the various
25 versions of Mattel's form of "Employee Confidential Information and Inventions
26 Agreement," including but not limited to the documents produced in this litigation
27 bearing bates numbers M0079358; M0079344-45; M0079342-43; M0079340-41;
28 M0079346-50; M0079352-57; M0096936-37; M0096983-84; all versions and/or

EXHIBIT 1 PAGE 713

1 iterations of the Mattel Conflict of Interest Policy and/or Conflict of Interest
2 Questionnaire, including the version signed by Carter Bryant in January 1999 (M
3 0001621), and any versions used by Mattel that preceded or followed the one signed
4 by Bryant in January 1999; all versions and/or iterations of the Mattel Proprietary
5 Information Checkout Form, including the version signed by Carter Bryant in October
6 2000 (M 0001604), and any versions used by Mattel that preceded or followed the
7 one signed by Bryant in January 1999.

     U.    <u>Joinder in Defenses of Co-Defendants</u>

    MGA Defendants hereby adopt and incorporate by reference any and all other affirmative defenses that have been or will be asserted by any other defendant (including Bryant) in this litigation to the extent that defendants may share in such affirmative defenses.

    Discovery is ongoing and the MGA Defendants reserve the right to supplement this response and, consistent with its obligations under <u>Federal Rule of Civil Procedure</u> 26(e), the MGA Defendants will supplement this response if they receive additional responsive information.

     V.    <u>Undiscovered Defenses</u>

    The MGA Defendants have insufficient knowledge or information upon which to form a belief as to whether additional defenses are available. Throughout this case, Mattel has failed to comply with its discovery obligation and abused the discovery process by, among other things, destroying evidence, unilaterally canceling scheduled depositions, asserting meritless objections, and causing delay after delay. The MGA Defendants continue their factual investigation and currently await Mattel's compliance with multiple Court Orders compelling discovery. The MGA Defendants

///
///
///
///

EXHIBIT 4 PAGE 214

also have pending motions to compel against Mattel. The MGA Defendants reserve the right to assert any further or additional defenses upon receiving more complete information regarding the matters alleged in the Counterclaims, through discovery or otherwise.

DATED: January 7, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____
Thomas J. Nolan
Attorneys for Counter-Defendants, MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) Ltd., and MGAE de MEXICO S.R.L. de C.V.

EXHIBIT 9

PAGE 115

EXHIBIT 10

FILED

2006 JUL 18 AM 10:16

ENTERED

JUL 18 2006
CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION
DEPUTY

Priority ✓
Send ✓
Enter ✓
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, <br><br> Plaintiff, <br><br> v. <br><br> MATTEL, INC., <br><br> Defendant, <br><br> and related actions. | CASE NO. CV 04-09049 SGL (RNBx) <br><br> (Consolidated with cases CV 04-09059 and CV 05-02727) <br><br> ORDER GRANTING MOTIONS TO DISMISS |

## I. Introduction

This consolidated action involves the individual cases of Bryant v. Mattel, Inc., CV 04-09049; Mattel, Inc. v. Bryant, CV 04-09059; and MGA Entertainment, Inc. v. Mattel, Inc., CV 05-02727. This Order rules on Motions to Dismiss previously docketed in cases 04-09049 and 04-9059.

The factual background underlying this consolidated action is complex. The Court sets forth the factual background only to the extent that it is necessary to discuss its ruling on two pending motions to dismiss. A hearing regarding these motions was held on June 26, 2006. For the reasons and in the manner set forth below, the Court grants both motions.

EXHIBIT 10

PAGE 216

DOCKETED ON CM
JUL 18 2006

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(D).

## II. Motion to Dismiss (04-09049)

### A. Factual Background

Carter Bryant is a designer to whom creation of MGA's "Bratz" line of dolls has been attributed. Compl. ¶ 6. Mattel has sued him under a variety of state-law theories relating to certain agreements Bryant signed while an employee with Mattel. See generally Compl. filed in 04-09059. Although Mattel has not sued him for copyright infringement of any Mattel product, Bryant nevertheless claims that he is reasonably apprehensive regarding being sued for copyright infringement. Specifically, Bryant makes the following allegations in his complaint seeking declaratory relief:

First, Bryant claims that an article published in the Wall Street Journal in July, 2003, attributed to Mattel sources a belief that "the Bratz borrow liberally from a Mattel project that was scrapped at the testing stage in 1998." Compl. Ex. A; Compl. ¶ 54. The scrapped Mattel project is alleged to be the project referred to by Mattel as "Toon Teens." Compl. ¶ 56.

Second, Bryant alleges that he suggested, as a way to resolve a discovery dispute, that Mattel stipulate that it would not sue based on "Toon Teens." Compl. ¶ 55. Mattel refused to do so. Id. However, since that initial refusal, Mattel has represented to the Court that it "will not maintain that Bratz infringes the copyright in Toon Teens." June 26, 2006, Tr. at 64 (statement of Mattel counsel John B. Quinn). Mattel has reiterated this position in a post-hearing brief, filed on July 5, 2006.

Third, Mattel cooperated with a Hong Kong toy company that MGA sued for copyright infringement. Compl. ¶ 56. MGA's claims involved the Bratz dolls. Id. Mattel's cooperation consisted of providing the Hong Kong toy company with documents and photographs of the Toon Teens products, ostensibly to help prove that Bratz was not an original design and that Bryant had copied and infringed Toon Teens. Compl. ¶ 57.

Finally, Bryant notes that Mattel did not seek copyright registration until November, 2003, which is the same time Mattel claims it first learned of Bryant's

EXHIBIT 10
PAGE 217

2

1 contract with MGA. Compl. ¶¶ 59-60. Bryant alleges that registration of a copyright is
2 a necessary step to be taken prior to filing a copyright infringement action. Compl.
3 ¶ 60.

4 **B.  Standing to Seek Declaratory Relief**

5       The purpose of the Declaratory Judgment Act is "to relieve potential defendants
6 from the Damoclean threat of impending litigation which a harassing adversary might
7 brandish, while initiating suit at his leisure — or never." Societe de Conditionnement
8 v. Hunter Engineering Co., 655 F.2d 938, 943 (9th Cir.1981). However, a party
9 seeking declaratory relief must still satisfy the "case or controversy" requirement found
10 in 28 U.S.C. § 2201(a). Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896
11 F.2d 1542, 1555 (9th Cir. 1990). This requirement must be satisfied at the time the
12 suit is filed and must continue throughout the term of the suit. Id. at 1556 (citing
13 International Harvester Co. v. Deere & Co., 623 F.2d 1207, 1210 (7th Cir.1980)).
14       To meet this requirement, a party seeking declaratory relief must show that,
15 based on his reasonable perceptions, under all the circumstances of the case, there is
16 a substantial controversy between parties having adverse legal interests that causes
17 in the plaintiff a real and reasonable apprehension that he will be subject to liability,
18 and the controversy is of sufficient immediacy and reality to warrant declaratory relief.
19 Hal Roach, 896 F.2d at 1555. The apprehension must have been caused by the
20 defendant's actions. Id. (citing International Harvester, 623 F.2d at 1211).
21       Viewing Bryant's allegations in light of this standard, and in light of recent
22 developments, the Court must conclude that Bryant, although having a reasonable
23 apprehension of suit prior to counsel's representations regarding the intent to sue
24 based on Toon Teens, no longer has a reasonable apprehension that he will be
25 subject to liability. Bryant's Complaint, of course, makes reference to "other Mattel
26 products;" however, the substance of his allegations all address the product "Toon
27 Teens." The Wall Street Journal article is alleged to have involved Toon Teens.
28 Mattel's cooperation with the Hong Kong toy company allegedly involved Toon Teens.

EXHIBIT 10
PAGE 218

1  The copyright registration referenced in the Complaint relates to Toon Teens. No
2  other allegations are made that might tend to raise a real and reasonable
3  apprehension that Bryant could be subject to liability for copyright infringement based
4  on any other Mattel product. Accordingly, Bryant has not met the standard for
5  asserting a claim for declaratory relief.
6  **C.    Ruling on Motion to Dismiss**
7        Accordingly, the Court **GRANTS** the Motion to Dismiss and dismisses without
8  prejudice Bryant's claim for declaratory relief. Should Bryant, through discovery or
9  otherwise, acquire a real and reasonable apprehension of being subject to liability on
10 the basis of another identifiable Mattel product, Bryant may file a declaratory relief
11 claim. A claim by Mattel of copyright infringement based on the Toon Teens product
12 is barred by counsel's representation; therefore, Bryant may not seek declaratory relief
13 regarding this issue.
14                             **III. Motion to Dismiss (04-9059)**
15 **A.    Factual Background**
16       The parties make the following factual allegations and assert the following
17 claims and counterclaims.
18       Bryant was employed by Mattel from September, 1995, to April, 1998, and
19 again beginning in January, 1999, and ending in October, 2000. Compl. ¶ 9. In
20 January, 1999, Bryant signed documents entitled "Employee Confidential Information
21 and Inventions Agreement" ("Employee Agreement") and "Conflict of Interest
22 Questionnaire" ("COI Questionnaire"). The Employee Agreement provides:
23     This Agreement is designed to make clear that: (I) I will maintain the
24     confidentiality of the Company's trade secrets; (ii) I will use those trade
25     secrets for the exclusive benefit of the Company; (iii) inventions that I
26     create will be owned by the Company; (iv) my prior and continuing
27     activities separate from the Company will not conflict with the Company's
28     development of its proprietary rights; and (v) when and if my employment

1  with the Company terminates I will not use my prior position with the
2  Company to the detriment of the Company.
3      1.    Provisions Related to Trade Secrets
4  . . . .
5  (b) As used in the Agreement, "Proprietary Information" means
6  any information (including formula, pattern, compilation, device, method,
7  technique or process) that derives independent economic value, actual
8  or potential, from not being generally known to the public or to other
9  persons who can obtain economic value from its disclosure or use, and
10 includes information on the Company, its customers, suppliers, joint
11 ventures, licensors, licensees, distributors and other persons and entities
12 with whom the Company does Business.
13 (c) I will not disclose or use at any time either during or after my
14 employment with the Company, any Proprietary Information except for
15 the exclusive benefit of the Company as required by my duties for the
16 Company, or as the Company expressly may consent to in writing, I will
17 cooperate with the Company and use my best efforts to prevent the
18 unauthorized disclosure, use or reproduction of all Proprietary
19 Information.
20 . . . .
21     2.    Ownership of Inventions
22 (a) I agree to communicate to the Company as promptly and fully
23 as practicable all inventions [as defined below] conceived or reduced to
24 practice to me (alone or jointly by others) at any time during my
25 employment by the Company, I hereby assign to the Company and/or its
26 nominees all my right, title and interest in such inventions, and all my
27 right, title and interest in any patents, copyrights, patent applications or
28 copyright applications based thereon. . . .

EXHIBIT 10

PAGE 220

  (b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

  (c) Any provision in this Agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

. . . .

  3. Conflicts with Other Activities

  (a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

  4. Miscellaneous

. . . .

EXHIBIT _____ 10
PAGE _____ 221

    (f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

    . . . .

    CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.

Employment Agreement, attached to the Compl. as Ex. A.[1]

**B.**  **The Parties' Claims**

    Mattel brings a number of claims based on these documents, including breach of contract, breach of fiduciary duty, breach of the duty of loyalty, unjust enrichment, and conversion.

    Bryant brings a number of counterclaims based on these documents. Specifically, Bryant makes the following challenges to the Employment Agreement:

    In his first counterclaim, Bryant claims that the Employment Agreement violates Cal. Bus. & Prof. Code §§ 17200 (unfair competition law) because (a) it is an unfair restraint of trade (restricting job mobility and use of publicly available information) in violation of Cal. Bus. & Prof. Code § 16600; (b) it violates Cal. Labor Code §§ 96(k), 98.6, and 2699; (c) it violates Cal. Labor Code § 2870; and (d) it is procedurally and substantively unconscionable. See Bryant's Counterclaims ¶¶ 33-47.

    In his second counterclaim, Bryant claims that the Employment Agreement should be rescinded because it was procured due to mistake, duress, menace and/or

---

[1] Bryant objects to the Court's consideration of the Agreement and the COI Questionnaire. Bryant purports to dispute the authenticity of these documents. However, examining the substance of Bryant's objections, it becomes clear that Bryant objects not to the content of these documents, but to the validity and legal effect of these documents. Accordingly, the Court's consideration of these documents in connection with the present Motion to Dismiss is proper. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998) (the Court may consider documents whose authenticity is not questioned and upon which the complaint necessarily relies).

EXHIBIT 10

1  fraud. See Bryant's Counterclaims ¶¶ 48-54.

2  In his third counterclaim, Bryant alleges that the Employment Agreement was
3  procured by fraud in that Mattel "fail[ed] to disclose to Bryant the true meaning of the
4  terms and the purported legal effect of the [Employment] Agreement." See Bryant's
5  Counterclaims ¶¶ 55-60.

6  Finally, in his fourth counterclaim, Bryant seeks declaratory judgment that
7  Mattel's conduct in requiring Bryant and other employees to execute the Employment
8  Agreement constitutes unfair competition and unfair business practices in violation of
9  Cal. Bus. & Prof. Code §§ 17200 and 16600. Bryant also seeks a declaration that the
10 Employment Agreement is unlawful and unenforceable as to him and as to other
11 current and former employees of Mattel. See Bryant's Counterclaims ¶¶ 61-65.

12 **C.  Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

13 The present Motion to Dismiss requires the Court to determine whether the
14 counterclaims state any claim upon which relief may be granted. See Fed R. Civ. P.
15 12(b)(6). The Court will not dismiss the claims for relief unless Bryant cannot prove
16 any set of facts in support of the claims that would entitle him to relief. See Steckman
17 v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir. 1998). In limiting its inquiry to the
18 content of the counterclaims, the Court must take the allegations of material fact as
19 true and construe them in the light most favorable to Bryant. See Western Reserve
20 Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir. 1985). Additionally, the Court "is
21 not required to accept legal conclusions cast in the form of factual allegations if those
22 conclusions cannot be reasonably drawn from the facts alleged." Clegg v. Cult
23 Awareness Network, 18 F.3d 752, 755 (9th Cir. 1994).

24 **D.  § 17200 Claim**

25 **1.  Generally**

26 "California's unfair competition law (UCL) (17200 et seq.) defines 'unfair
27 competition' to mean and include any unlawful, unfair or fraudulent business act or
28 practice. . . ." Kasky v. Nike, Inc., 27 Cal.4th 939, 949, 119 Cal.Rptr.2d 296 (2002)

EXHIBIT 10
8
PAGE 233