CARTER BRYANT, V. 4
HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY
01/23/08

12:20 1    by "access."

12:20 2    BY MR. QUINN:

12:20 3        Q    Well, were you ever -- were you ever living

12:20 4    with your niece --

12:20 5        A    No.

12:20 6        Q    -- under the same roof?

12:20 7        A    No.

12:20 8        Q    Do you know of anyone who has used that

12:20 9    computer, that desktop that you gave to your niece,

12:20 10   other than your niece, since you gave it to her?

12:20 11       MR. WERDEGAR:  Objection.  Lacks foundation,

12:20 12   calls for speculation.

12:20 13       THE WITNESS:  I wouldn't have any idea.

12:20 14   BY MR. QUINN:

12:20 15       Q    Do you know whether the hard drive on that

12:21 16   desktop computer was ever imaged?

12:21 17       A    Yes.

12:21 18       Q    When was that done?

12:21 19       A    That was done, I think, roughly May of 2004.

12:21 20   It was right after the lawsuit was filed.

12:21 21       Q    And how do you know that that was done?

12:21 22       A    The computer was borrowed back from my niece

12:21 23   and the lawyers came in and brought somebody in to

12:21 24   sweep the computer, take an image of it.

12:21 25       Q    Were you present when that was done?

747

EXHIBIT ___4___

PAGE ___56___

CARTER BRYANT, V. 4                                    01/23/08
HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

12:24 1    you're sure of?

12:24 2        A    That's probably about the last time that --

12:24 3    when they took that imaging, that's basically the last

12:24 4    I remember of it.

12:24 5        Q    And you just don't know where it is today?

12:24 6        A    I believe it's with the attorneys.

12:24 7        Q    Do you have a recollection of some occasion,

12:24 8    after the time they imaged it, that the attorneys

12:24 9    then, you're sure, did take possession of the laptop?

12:24 10       A    No, I'm not exactly sure when they took

12:24 11   possession of it.

12:24 12       Q    But you do know at some point they took

12:24 13   possession of it?

12:24 14       A    Yes.

12:24 15       Q    Can you tell me what year it was that the

12:25 16   attorneys took possession of the laptop that you're

12:25 17   sure of?

12:25 18       A    I couldn't say for sure.

12:25 19       Q    What would be your best approximation of the

12:25 20   year when the attorneys took possession of the laptop?

12:25 21       A    Oh, gosh, I would be guessing.  I just really

12:25 22   can't remember.

12:25 23       Q    Can you give me a time frame in terms of

12:25 24   years, like it was no earlier than 2005, but --

12:25 25       A    Well --

750

EXHIBIT __4__

PAGE __57__

12:25 1        MR. WERDEGAR:  Objection.  Asked and answered,

12:25 2   lacks foundation.

12:25 3        THE WITNESS:  It would have been somewhere

12:25 4   between 2004 and now.

12:25 5   BY MR. QUINN:

12:25 6        Q    Did you use that laptop to do any work

12:25 7   relating to Bratz?

12:25 8        A    Yes, I think I did.

12:26 9        Q    During what period of time did you use the

12:26 10  laptop for that purpose?

12:26 11       MR. WERDEGAR:  Objection.  Vague as to "purpose."

12:26 12       THE WITNESS:  For the purpose of working on

12:26 13  Bratz?

12:26 14  BY MR. QUINN:

12:26 15       Q    Yes, sir.

12:26 16       A    Well, I bought the computer in 2001, and like

12:26 17  I said, from 2004 until now I don't know where it is.

12:26 18  So it would have been sometime between 2001 and 2004.

12:26 19       Q    That you used it to work -- do work on Bratz?

12:26 20       A    Yes, occasionally.

12:26 21       Q    Did you ever use that desktop that you gave

12:26 22  to your niece to do any work relating to Bratz?

12:26 23       MR. WERDEGAR:  Objection.  Vague as to "relating

12:26 24  to Bratz."

12:26 25       THE WITNESS:  Yes.

751

EXHIBIT  4

PAGE  58

CARTER BRYANT, V. 4
HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY                     01/23/08

12:26  1    BY MR. QUINN:

12:26  2        Q   Do you recall what work relating to Bratz you

12:27  3    did using the desktop?

12:27  4        MR. WERDEGAR:  Objection.  Vague as to time.

12:27  5        THE WITNESS:  Yeah, can you kind of give me a

12:27  6    time frame.

12:27  7    BY MR. QUINN:

12:27  8        Q   Anytime.

12:27  9        A   Anytime?

12:27 10        Q   Anytime.

12:27 11        A   Let's see, I bought the computer in October

12:27 12    of 2000 and I used it up until the time I gave it to

12:27 13    my niece.  And yeah, I would have done Bratz work on

12:27 14    that computer.

12:27 15        Q   Can you recall what Bratz work you would have

12:27 16    done on that computer?

12:27 17        A   Well, e-mails, scanning in some sketches or

12:27 18    drawings or things of that nature.

12:27 19        Q   Anything else you can think of?

12:27 20        A   Not right this minute.

12:27 21        Q   Did you use the laptop also to do work

12:27 22    relating to Bratz?

12:27 23        MR. WERDEGAR:  Objection.  Asked and answered and

12:27 24    vague as to "relating to Bratz."

12:27 25        THE WITNESS:  Yeah, I think I did answer that

752

EXHIBIT ____4_____

PAGE _____59_____

```
12:28  1    before.
12:28  2    BY MR. QUINN:
12:28  3        Q    Can you tell me what kind of work relating to
12:28  4    Bratz you used the laptop for?
12:28  5        A    Mainly I would use the laptop for e-mails.
12:28  6        Q    Scan in any images, drawings, designs
12:28  7    relating to Bratz?
12:28  8        A    I don't remember that I used the laptop for
12:28  9    that.  I'm not sure.
12:28 10        Q    Since 2000 have you used any other computers
12:28 11    other than the desktop which you gave to your niece
12:28 12    and this laptop that we've been discussing?
12:28 13        MR. WERDEGAR:  Since anytime in 2000?
12:28 14        MR. QUINN:  Yeah, since 2000.
12:28 15        THE WITNESS:  Since 2000.
12:28 16    BY MR. QUINN:
12:28 17        Q    To date.
12:28 18        A    Yes.
12:28 19        Q    What other computers have you used?
12:28 20        A    Let's see, I have had since then about six
12:29 21    other computers that I can think of.
12:29 22        Q    Six other computers that you've owned, sir?
12:29 23        A    Yes.
12:29 24        Q    What I'd like to do is get a list of what
12:29 25    those computers are in however way you can identify
```

EXHIBIT ___4___

PAGE ___80___

12:29 1   them for me, and as best you can, approximations of

12:29 2   the time when you acquired each of them, okay?

12:29 3        A    Okay.

12:29 4        Q    Can you do that for me, please?

12:29 5        MR. WERDEGAR:  Objection.  Calls for a narrative.

12:29 6        THE WITNESS:  Okay.  Well, I would have to say

12:29 7   that the third computer I got was also a laptop.  Let

12:29 8   me think.  I think I bought a laptop and a desktop at

12:30 9   the same time, and that was roughly -- when was that?

12:30 10  I think it was around 2004.  Since then those

12:30 11  computers have been imaged by the lawyers.  They came

12:30 12  to my house, took imaging again, collected documents.

12:30 13  And at present I have three computers.

12:30 14  BY MR. QUINN:

12:30 15       Q    So can you describe those three for me and

12:30 16  tell me approximately when you acquired them?

12:30 17       A    The three that I have now are two desktops

12:30 18  and one laptop, and those were acquired -- I think

12:30 19  those were acquired sometime last year, 2007.

12:31 20       Q    Let's go back to the third computer -- the

12:31 21  third and fourth computers.  You referred to a laptop

12:31 22  and a desktop which you acquired in 2004?

12:31 23       MR. WERDEGAR:  Objection.  Misstates prior

12:31 24  testimony.

12:31 25       THE WITNESS:  Yeah, I think I got them in 2004,

754

EXHIBIT  4

PAGE  61

12:31  1    but I'm a little hazy on the date.

12:31  2    BY MR. QUINN:

12:31  3        Q    Can you recall the make of those computers?

12:31  4        A    No.

12:31  5        Q    Have you used those computers to do work on

12:31  6    Bratz?

12:31  7        MR. WERDEGAR:  Objection.  Vague as to time,

12:31  8    compound.

12:31  9        THE WITNESS:  During a specific time frame or --

12:31 10    BY MR. QUINN:

12:31 11        Q    At any time since you acquired them.  Let's

12:31 12    start with the laptop.  Have you used that computer to

12:31 13    work on Bratz?

12:31 14        MR. WERDEGAR:  Same objections.  And also vague

12:31 15    as to "work on Bratz."

12:31 16        THE WITNESS:  I believe so.

12:32 17    BY MR. QUINN:

12:32 18        Q    And what kind of work have you done using

12:32 19    that laptop relating to Bratz?

12:32 20        A    I think the laptop is mainly I use for

12:32 21    e-mail.

12:32 22        Q    Exclusively?

12:32 23        A    I don't remember.

12:32 24        Q    And how about the desktop?

12:32 25        A    Well, I would have used it to do the same

EXHIBIT ___4___

PAGE ___62___

12:32 1   kinds of things that I use my other desktops for,

12:32 2   scanning images, sending e-mails, Internet, research.

12:32 3        Q    Do you still have possession of that laptop

12:32 4   and the desktop which you say you acquired in

12:32 5   approximately 2004?

12:32 6        A    No.

12:32 7        Q    Where are those now?

12:32 8        A    I'm not exactly sure, but I believe they're

12:32 9   with the attorneys.

12:32 10       Q    Were they -- those two computers scanned at

12:33 11   the same time that you indicated that the earlier

12:33 12   laptop and desktop were scanned at your home?

12:33 13       A    No.   There was a separate occasion.   More

12:33 14   lawyers came out and scanned those computers.   I

12:33 15   believe that was in 2005.

12:33 16       Q    And did they take possession of those two

12:33 17   computers at that time?

12:33 18       A    I believe so.

12:33 19       Q    Have you had possession of those two

12:33 20   computers since the lawyers came and imaged them?

12:33 21       A    I don't think so.

12:33 22       Q    You presently have two desktops and a laptop;

12:33 23   is that true?

12:33 24       A    Yes.

12:33 25       Q    Do you use those computers to do work related

756

EXHIBIT 4
PAGE 43

12:34 1    to Bratz?

12:34 2        MR. WERDEGAR:  Objection.  Compound, vague as to

12:34 3    "related to Bratz."

12:34 4        THE WITNESS:  Just any Bratz work; is that what

12:34 5    you mean?

12:34 6    BY MR. QUINN:

12:34 7        Q   Yes, sir.

12:34 8        A   Yes.

12:34 9        Q   Okay.  Same types of things, e-mails,

12:34 10   scanning of images, and things of that nature?

12:34 11       A   Yes.

12:34 12       Q   Did you install Evidence Eliminator on any of

12:34 13   these other five computers?

12:34 14       A   No.

12:34 15       Q   You're aware, I assume, Mr. Bryant, that in

12:34 16   connection with this litigation process the parties,

12:34 17   including yourself, have been requested to search for

12:34 18   documents and electronic data to determine what exists

12:35 19   that should be turned over to other parties to the

12:35 20   case?  You're aware of that?

12:35 21       A   Yes.

12:35 22       Q   Are you aware of whether anyone has searched

12:35 23   the hard drives of these various computers that you've

12:35 24   identified to see whether there is information that

12:35 25   should be disclosed to Mattel in discovery in this

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

EXHIBIT  4

PAGE  64

CARTER BRYANT, V. 4                    01/23/08
HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

14:04 1      Q    Did you work on Diva Starz?

14:04 2      A    No.

14:04 3      Q    What was the nature of your familiarity with

14:04 4   Diva Starz?

14:04 5      MR. WERDEGAR:   Okay.  Vague as to nature of

14:04 6   familiarity.

14:04 7      THE WITNESS:  I really had no familiarity with

14:04 8   Diva Starz until after they came out on the market.

14:04 9   BY MR. QUINN:

14:04 10     Q    So you did not know people who were working

14:04 11  on Diva Starz before it came out on the market?

14:04 12     A    No.

14:04 13     MR. WERDEGAR:  Objection.  Lacks foundation.

14:04 14  BY MR. QUINN:

14:04 15     Q    Do you recall ever seeing any prototypes or

14:04 16  mockups or ideas for Diva Starz dolls before it came

14:05 17  out on the market?

14:05 18     MR. WERDEGAR:  Objection.  Lacks foundation,

14:05 19  calls for speculation, asked and answered.

14:05 20     THE WITNESS:  No, I don't.

14:05 21  BY MR. QUINN:

14:05 22     Q    Do you know the names of the doll designers

14:05 23  who were involved in Diva Starz?

14:05 24     A    No.

14:05 25     Q    Did you ever see any drawings for what became

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

EXHIBIT __4__

PAGE __l͞o5__

CARTER BRYANT, V. 4                    01/23/08
HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

14:05 1    Diva Starz before it went out on the market?

14:05 2         MR. WERDEGAR:  Objection.  Asked and answered,

14:05 3    also lacks foundation, calls for speculation.

14:05 4         THE WITNESS:  Not that I remember.

14:05 5    BY MR. QUINN:

14:05 6         Q   Or any packaging for Diva Starz before it

14:05 7    went out on the market?

14:05 8         MR. WERDEGAR:  Same objections.

14:05 9         THE WITNESS:  No.

14:05 10   BY MR. QUINN:

14:05 11        Q   Are all the doll designers at one location at

14:05 12   Mattel?

14:05 13        MR. WERDEGAR:  Objection.  Vague as to time,

14:05 14   vague as to "one location."

14:05 15        THE WITNESS:  Yeah, I'm not sure what you mean.

14:06 16   Are they all in the same building, is that what you

14:06 17   mean?

14:06 18   BY MR. QUINN:

14:06 19        Q   Let's start with that.

14:06 20        A   To the best of my knowledge, yes, they're in

14:06 21   the design center.

14:06 22        Q   And is that a big -- does that have a big

14:06 23   open area with a lot of cubby holes and carrels in it?

14:06 24        MR. WERDEGAR:  Objection.  Vague as to time.

14:06 25        THE WITNESS:  When I worked there, there were

828

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

EXHIBIT __4__

PAGE __66__

CARTER BRYANT, V. 4                                    01/23/08
HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

```
14:06  1   certain open areas and then a lot of cubicles.
14:06  2   BY MR. QUINN:
14:06  3        Q    And by "cubicles," you mean with dividers
14:06  4   that did not go to the ceiling; is that true?
14:06  5        A    Yes.
14:06  6        Q    And did the doll designers work in those
14:06  7   cubicles?
14:06  8        MR. WERDEGAR:  Objection.  Vague as to time.
14:06  9        MS. CAMPANA:  Objection.  Also vague as to "doll
14:06 10   designers."
14:06 11        MR. WERDEGAR:  Vague as to "doll designers" as
14:06 12   well.
14:06 13        THE WITNESS:  You mean employees?  Or what do you
14:06 14   mean by doll designers?
14:06 15   BY MR. QUINN:
14:06 16        Q    Doll designers employed by Mattel.
14:06 17        MR. WERDEGAR:  Objection.  Vague as to what a
14:07 18   doll designer is.
14:07 19        THE WITNESS:  Yeah, I mean I think most everybody
14:07 20   had their own cubicle.
14:07 21   BY MR. QUINN:
14:07 22        Q    And did these cubicles have four walls and a
14:07 23   door?
14:07 24        A    No.
14:07 25        MR. WERDEGAR:  Objection.  Vague as to time.
```

829

EXHIBIT __4__

PAGE __67__

CARTER BRYANT, V. 4                                      01/23/08
HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

| | |
|---|---|
| 14:07 1 | BY MR. QUINN: |
| 14:07 2 | Q   How many walls did they have that didn't go |
| 14:07 3 | -- how many -- on how many sides were they enclosed? |
| 14:07 4 | MR. WERDEGAR:  Objection.  Vague as to time, |
| 14:07 5 | lacks foundation. |
| 14:07 6 | THE WITNESS:  When I was there, there was three. |
| 14:07 7 | BY MR. QUINN: |
| 14:07 8 | Q   And the fourth side was just open? |
| 14:07 9 | A   Right. |
| 14:07 10 | Q   So somebody could walk by and see what a doll |
| 14:07 11 | designer sitting in the cubicle was doing? |
| 14:07 12 | MR. WERDEGAR:  Objection.  Vague as to time, |
| 14:07 13 | lacks foundation, calls for speculation, incomplete |
| 14:07 14 | hypothetical. |
| 14:07 15 | THE WITNESS:  Yeah, it's possible. |
| 14:08 16 | BY MR. QUINN: |
| 14:08 17 | Q   Do you know a woman by the name of Isabelle |
| 14:08 18 | Cabrera? |
| 14:08 19 | A   No. |
| 14:08 20 | Q   Never heard of that name? |
| 14:08 21 | A   No. |
| 14:08 22 | Q   How about Maria Salazar? |
| 14:08 23 | A   No. |
| 14:08 24 | Q   Do you have any information about any Mattel |
| 14:08 25 | employees who did any work relating to Bratz after |

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

EXHIBIT  4

PAGE  68

CARTER BRYANT, V. 4                01/23/08
HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

14:08 1    your Mattel employment ended?

14:08 2        MR. WERDEGAR:  Objection.  Lacks foundation,

14:08 3    calls for speculation, and vague as to Mattel

14:09 4    employee.

14:09 5        MS. CAMPANA:  Objection.  Also vague as to "work

14:09 6    relating to Bratz."

14:09 7        MR. WERDEGAR:  I join in that objection.

14:09 8    BY MR. QUINN:

14:09 9        Q    Your turn.

14:09 10       A    No.

14:09 11       Q    Do you know an Anna Cabrera, Cabera or

14:09 12   Cabrera, either version?

14:09 13       A    No.

14:09 14       Q    How about Maria Elana Salazar or Elana

14:09 15   Salazar?

14:09 16       A    Yes, I know -- yeah, Maria Elana, I know her.

14:09 17       Q    Okay.  Who is she?

14:09 18       A    She is -- well, she is a sample maker.  She

14:09 19   works for MGA.

14:09 20       Q    Did she formerly work for Mattel?

14:10 21       MR. WERDEGAR:  Objection.  Lacks foundation,

14:10 22   calls for speculation.

14:10 23       THE WITNESS:  I don't remember.

14:10 24   BY MR. QUINN:

14:10 25       Q    At MGA has she done work relating to Bratz?

831

EXHIBIT   4

PAGE   69

```
 1

 2

 3

 4

 5

 6

 7

 8

 9

10           I, CARTER BRYANT, do hereby declare under

11   penalty of perjury that I have read the foregoing

12   transcript; that I have made any corrections as appear

13   noted, in ink, initialed by me, or attached hereto; that

14   my testimony as contained herein, as corrected,

15   is true and correct.

16           EXECUTED this _____ day of _____,

17   20___, at _____, _____.
                        (City)                (State)

18

19

20

21

22                    _____

23                    CARTER BRYANT
                      VOLUME 4
24

25
```

EXHIBIT  4

PAGE  70

1        I, the undersigned, a Certified Shorthand

2  Reporter of the State of California, do hereby certify:

3        That the foregoing proceedings were taken

4  before me at the time and place herein set forth; that

5  any witnesses in the foregoing proceedings, prior to

6  testifying, were duly sworn; that a record of the

7  proceedings was made by me using machine shorthand

8  which was thereafter transcribed under my direction;

9  that the foregoing transcript is a true record of the

10  testimony given.

11        Further, that if the foregoing pertains to

12  the original transcript of a deposition in a Federal

13  Case, before completion of the proceedings, review of

14  the transcript [   ] was [ X ] was not requested.

15        I further certify I am neither financially

16  interested in the action nor a relative or employee

17  of any attorney or party to this action.

18        IN WITNESS WHEREOF, I have this date

19  subscribed my name.

20

21  Dated:    JAN 3 0 2008

22

23

24  JODI/L. BOSETTI

     CSR No. 11316

25

EXHIBIT ___4___

71

**EXHIBIT 5**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an
individual,

     Plaintiff,

    vs.

MATTEL, INC., a Delaware
Corporation,

     Defendants.

No. CV 04-9049 SGL
(RNBx)

Consolidated with
No. CV 04-09059
CV 05-2727

Consolidated with MATTEL, INC.
vs. BRYANT and MGA ENTERTAINMENT,
INC. vs. MATTEL, INC.

CERTIFIED
COPY

CONFIDENTIAL - ATTORNEYS' EYES ONLY

VIDEOTAPED DEPOSITION OF CARTER BRYANT

San Francisco, California

Thursday, January 24, 2008

Volume 5

Reported by:
DANA M. FREED
CSR No. 10602

JOB No. 81228

EXHIBIT _____ 5

PAGE _____ 72

1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3                    EASTERN DIVISION

4     CARTER BRYANT, an
      individual,

5
                    Plaintiff,

6
                 vs.                    No. CV 04-9049 SGL

7                                       (RNBx)

      MATTEL, INC., a Delaware
8     Corporation,                      Consolidated with
                                        No. 04-09059
9                 Defendants.           05-2727

10    _____

      Consolidated with MATTEL, INC.
11    vs. BRYANT and MGA ENTERTAINMENT,
      INC. vs. MATTEL, INC.

12    _____

13

14          Confidential - Attorney's Eyes Only,

15    Videotaped deposition of Carter Bryant, Volume 5,

16    taken on behalf of Mattel, Inc., at 50 California Street,

17    22nd Floor, San Francisco, California, beginning at

18    8:14 a.m. and ending at 3:51 p.m. on Thursday,

19    January 24, 2008, before DANA M. FREED, Certified

20    Shorthand Reporter No. 10602.

21

22

23

24

25

                                                        892

```
1    APPEARANCES:

2

3    For CARTER BRYANT, an individual:

4           KEKER & VAN NEST LLP
            BY:    MATTHEW M. WERDEGAR

5           Attorney at Law
            710 Sansome Street

6           San Francisco, California 94111-1704
            415.391.5400

7

8    For MATTEL, INC., a Delaware Corporation:

9           QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
            BY:    JOHN QUINN

10                 MICHAEL T. ZELLER
                   BRIDGET A. HAULER

11          Attorneys at Law
            865 Figueroa Street, 10th Floor

12          Los Angeles, California 90017
            213.443.3000

13

14   For MGA Entertainment, Inc., MGA Entertainment (HK)
     Limited, and Isaac Larian:

15
            SKADDEN ARPS SLATE MEAGHER & FLOM LLP

16          BY:    MICHELLE M. CAMPANA
            Attorney at Law

17          Four Embarcadero Center, 38th Floor
            San Francisco, California 94111-5974

18          415.984.6400

19

     VIDEOGRAPHER:
20
            SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES

21          BY:    RAY TYLER
            450 Sansome Street, Suite 1550

22          San Francisco, California 94111
            415.274.9977

23

24

25
```

893

EXHIBIT __5__

PAGE __74__

```
      1          Q    And does she do anything having anything to
      2     do with toys or dolls?
      3               MR. WERDEGAR:  Objection; vague.
      4               THE WITNESS:  What do you mean, ever?
02:07 5     BY MR. QUINN:
      6          Q    Yes.
      7          A    I don't know.  Like I said, I think that they
      8     had a fabric-printing business.  And I believe
      9     Billy -- Billy did some fabric printing for us.
02:0710          Q    So Billy and Wendy had their own business?
     11               MR. WERDEGAR:  Objection; lacks foundation,
     12     calls for speculation.
     13               THE WITNESS:  I believe so, yes.
     14     BY MR. QUINN:
02:0715          Q    Did you ever do any work with them relating
     16     to Bratz after the year 2000?
     17               MR. WERDEGAR:  Objection; assumes facts, vague.
     18               THE WITNESS:  I didn't personally, no.
     19     BY MR. QUINN:
02:0720          Q    Did MGA?
     21               MR. WERDEGAR:  Objection; lacks foundation,
     22     calls for speculation.  Vague.
     23               THE WITNESS:  I don't know.
     24               MR. QUINN:  Do we have the photos yet?
02:0825               MS. HAULER:  No, I should have it shortly,
```

1149

```
 1     though.  I'll let you know as soon as it's ready.
 2             MR. QUINN:  Okay.  Let's go back to Evidence
 3     Eliminator.
 4     BY MR. QUINN:
02:08 5     Q   Did you ever install Evidence Eliminator on
 6     any computer before the October 2000 desktop and
 7     2001 laptop?
 8         A   No.
 9         Q   Did you run the Evidence Eliminator program
02:08 10    on the computers on which you installed it?
 11            MR. WERDEGAR:  Objection; vague as to run the
 12    program.
 13            THE WITNESS:  Yes, I believe I did.
 14    BY MR. QUINN:
02:08 15    Q   Did you do that once or more than once?
 16            MR. WERDEGAR:  Objection; vague as to "that."
 17            THE WITNESS:  It was more than once.
 18    BY MR. QUINN:
 19        Q   How many times did you run Evidence Eliminator
02:08 20    on the desktop?
 21            MR. WERDEGAR:  Objection; vague as to "run
 22    Evidence Eliminator."
 23            THE WITNESS:  I don't remember.
 24    BY MR. QUINN:
02:09 25    Q   Can you approximate?
```

1150

EXHIBIT ___5___

PAGE ___76___

```
          1          A    I don't think so.

          2          Q    More than 10 times?

          3               MR. WERDEGAR:  Objection; asked and answered.

          4     Calls for speculation.  You don't need to guess.

02:09     5               THE WITNESS:  I don't know.

          6     BY MR. QUINN:

          7          Q    It might have been more than 10, it might

          8     have been less than 10, you're just not sure; is that

          9     true?

02:09    10               MR. WERDEGAR:  Objection misstates prior

         11     testimony.  Asked and answered, and calls for

         12     speculation.

         13               THE WITNESS:  I'm not sure at all.

         14     BY MR. QUINN:

02:09    15          Q    Did you run it more than 100 times?

         16               MR. WERDEGAR:  Same objections.

         17               THE WITNESS:  I don't think so.

         18     BY MR. QUINN:

         19          Q    Did you run Evidence Eliminator on the

02:09    20     desktop more than 50 times?

         21               MR. WERDEGAR:  Same objections.

         22               THE WITNESS:  I don't know.

         23     BY MR. QUINN:

         24          Q    You might have, you might not have, you're

02:09    25     just not sure?
```

1151

EXHIBIT _____ 5 _____

PAGE _____ 77

1        I, the undersigned, a Certified Shorthand

2  Reporter of the State of California, do hereby certify:

3        That the foregoing proceedings were taken

4  before me at the time and place herein set forth; that

5  any witnesses in the foregoing proceedings, prior to

6  testifying, were duly sworn; that a record of the

7  proceedings was made by me using machine shorthand

8  which was thereafter transcribed under my direction;

9  that the foregoing transcript is a true record of the

10  testimony given.

11        Further, that if the foregoing pertains to

12  the original transcript of a deposition in a Federal

13  Case, before completion of the proceedings, review of

14  the transcript [   ] was [ X ] was not requested.

15        I further certify I am neither financially

16  interested in the action nor a relative or employee

17  of any attorney or party to this action.

18        IN WITNESS WHEREOF, I have this date

19  subscribed my name.

20

21  Dated:   JAN 2 9 2008  _____

22

23                   _Dana M Freed_
                  DANA M. FREED

24                  CSR No. 10602

25

EXHIBIT \_\_\_\_5_____

PAGE \_\_\_\_78_____

**EXHIBIT 6**

CERTIFIED COPY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL,  )
                              )
          PLAINTIFF,  )
                              )
    V.  )     NO.  CV 04-9040 SGL (RNBX)
                              )
MATTEL, INC., A DELAWARE   )
CORPORATION,  )
                              )
          DEFENDANTS.  )
_____)
                              )
AND CONSOLIDATED ACTION (S).  )
_____)

# C O N F I D E N T I A L

**(PURSUANT TO PROTECTIVE ORDER, THIS TRANSCRIPT HAS BEEN DESIGNATED CONFIDENTIAL, ATTORNEYS' EYES ONLY)**

# DEPOSITION OF ELISE CLOONAN

# DECEMBER 14, 2007



COURT REPORTERS

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

**REPORTED BY:**
RENEE PACHECO
CSR NO. 11564
JOB NO. 07AE756-RP

EXHIBIT ___6___

PAGE ___79___

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL,　　)
　　　　　　　　　　　　　　　　　)
　　　　　　PLAINTIFF)　　　　　　 )
　　　　　　　　　　　　　　　　　)
　　　VS.　　　　　　　　　　　　 ) NO. CV 04-9049 SGL
　　　　　　　　　　　　　　　　　)
MATTEL, INC., A DELAWARE　　　　  )
CORPORATION,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　DEFENDANT.　　　　　　 )
　　　　　　　　　　　　　　　　　)
_____)
　　　　　　　　　　　　　　　　　)
AND CONSOLIDATED ACTION(S).　　　 )
_____)

C O N F I D E N T I A L

(PURSUANT TO PROTECTIVE ORDER, THIS
TRANSCRIPT HAS BEEN DESIGNATED
CONFIDENTIAL FOR ATTORNEYS' EYES ONLY)

DEPOSITION OF ELISE CLOONAN, TAKEN
ON BEHALF OF THE DEFENDANTS, AT
865 SOUTH FIGUEROA STREET, 10TH
FLOOR, LOS ANGELES, CALIFORNIA,
COMMENCING AT 10:11 A.M., FRIDAY,
DECEMBER 14, 2007, BEFORE RENEE A.
PACHECO, RPR, CSR 11564.

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077   EXHIBIT ___ 6 ___

PAGE ___ 80 ___

```
 1    APPEARANCES OF COUNSEL:
 2
 3    FOR THE PLAINTIFF CARTER BRYANT:
 4         KEKER & VAN NEST, LLP
           BY:  MATTHEW M. WERDEGAR, ESQ.
 5         710 SANSOME STREET
           SAN FRANCISCO, CALIFORNIA  94111-1704
 6         (415) 391-5400
 7
 8    FOR THE DEFENDANT MATTEL, INC.
 9         QUINN EMANUEL URQUHART OLIVER & HEDGES
           BY:  MICHAEL T. ZELLER, ESQ.
10              BRIDGET HAULER, ESQ.
           865 SOUTH FIGUEROA STREET
11         10TH FLOOR
           LOS ANGELES, CALIFORNIA  90017-2543
12         (213) 443-3000
13
14    FOR THE DEFENDANT MGA ENTERTAINMENT, INC.:
15         SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
           BY:  KENNETH A. PLEVAN, ESQ.
16         FOUR TIMES SQUARE
           NEW YORK, NEW YORK  10036
17         (212) 735-3000
18
19    FOR THE DEPONENT:
20         KEATS, MCFARLAND & WILSON, LLP
           BY:  LARRY W. MCFARLAND, ESQ.
21              CHRISTIAN C. DOWELL, ESQ.
           9720 WILSHIRE BOULEVARD
22         PENTHOUSE SUITE
           BEVERLY HILLS, CALIFORNIA 90212
23         (310) 777-3750
           LMCFARLAND@KMWLAW.COM
24         CDOWELL@KMWLAW.COM
25
```

3

EXHIBIT 6

PAGE 81



```
 1    APPEARANCES (CONTINUED):
 2    ALSO PRESENT:
 3        STEVEN TOGAMI - VIDEOGRAPHER
 4        MICHAEL MOORE
 5        JILL THOMAS
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

4

EXHIBIT 6

PAGE 82

1    Q.    AND WHEN THERE WAS THAT TRANSITION WHERE

2  YOU'RE FIRST REPORTING TO JANET AND THEN REPORTING

3  TO DEBBIE MEYER, DID YOUR JOB RESPONSIBILITIES

4  CHANGE OR DID THEY --

5    A.    THEY WERE PRETTY MUCH THE SAME BETWEEN          11:43:30

6  JANET AND DEBBIE.  I WAS -- UNDER DEBBIE, I WAS

7  DOING SLIGHTLY MORE DEVELOPMENT WORK.

8    Q.    DURING THAT 1998-1999 TIME PERIOD, IF YOU

9  COULD JUST TELL US, GENERALLY SPEAKING, WHAT --

10  WHAT KIND OF WORK YOU WERE DOING THERE.            11:43:54

11    A.    UNDER JANET?

12    Q.    YES.  LET'S START WITH UNDER JANET.

13    A.    JANET.  JANET WAS PRIMARILY A BLUE SKIES

14  PERSON.  SO SHE WOULD COME UP WITH CONCEPTS ONLY.

15        WHEN I STARTED WORKING WITH HER AND SHE       11:44:10

16  ACQUIRED A GROUP, WHICH WAS AROUND WHEN SHE -- YOU

17  KNOW, SHE -- I STARTED WORKING FOR HER, SHE BEGAN

18  TO GET PRODUCTS ON THE SHELF, CARRY THEM THROUGH

19  FROM PRELIM TO DEVELOPMENT.  SO I WOULD DO ANYTHING

20  FROM ORIGINAL CONCEPT, PLAY PATTERN, GRAPHICS,      11:44:30

21  BASICALLY EVERYTHING BUT FASHION.

22    Q.    AND THESE -- THE PRODUCTS WERE -- THAT

23  YOU DID THIS FOR WERE DOLLS?

24    A.    YES.

25    Q.    AND YOU ALREADY MENTIONED THAT WHEN YOU      11:44:53

71

EXHIBIT  6

PAGE  83

```
 1    THEN BEGAN WORKING UNDER DEBBIE MEYER THAT YOU

 2    BEGAN DOING MORE IN THE NATURE OF DEVELOPMENT WORK.

 3        A.   YES.

 4        Q.   DID YOU CONTINUE TO DO THE PRELIMINARY

 5    DESIGN KIND OF WORK WHEN YOU WERE WORKING WITH        11:45:11

 6    DEBBIE?

 7        A.   NOT AS MUCH, WHICH IS ONE OF THE REASONS

 8    I WENT OVER TO DEBBIE, BECAUSE I DID WANT TO DO

 9    MORE DEVELOPMENT.

10        Q.   AT SOME POINT IN 1999 YOU STARTED           11:45:21

11    BECOMING INVOLVED WITH A PROJECT CALLED TOON TEENS;

12    IS THAT RIGHT?

13        A.   YES.

14        Q.   WERE YOU WORKING FOR JANET AT THE TIME OR

15    DEBBIE?                                               11:45:38

16        A.   DEBBIE.

17        Q.   AND ON TOON TEENS YOU WORKED WITH ANOTHER

18    MATTEL DESIGNER NAMED LILY MARTINEZ?

19        A.   LILY SARINANA, LILY MARTINEZ, YES.

20        Q.   HOW WAS IT YOU FIRST BECAME AWARE OF THE     11:46:02

21    TOON TEENS PROJECT?

22        A.   IT WAS ACTUALLY -- I DON'T REMEMBER IF IT

23    WAS DEBBIE OR LILY'S INITIAL CONCEPT.  BUT IT CAME

24    FROM THEM.  AND THEN I JUST STARTED -- DEBBIE WAS

25    BASICALLY MANAGING THE GROUP AT THE TIME SO SHE       11:46:26
```

72

1   REALLY WASN'T DOING A LOT OF HANDS-ON WORK.  SO

2   LILY AND I WERE DOING ALL THE HANDS-ON WORK.  BUT

3   IT WAS PRIMARILY LILY'S CONCEPT.

4       MR. PLEVAN:  I'M SORRY.  COULD I GET THE LAST

5   PART OF THAT ANSWER READ BACK.                        11:46:40

6           (THE RECORD WAS READ AS FOLLOWS:

7           A   SO LILY AND I WERE DOING ALL

8           THE HANDS-ON WORK.  BUT IT WAS

9           PRIMARILY LILY'S CONCEPT.)

10      MR. PLEVAN:  THANK YOU.                            11:46:49

11  BY MR. ZELLER:

12      Q.   WITH RESPECT TO THE DESIGN OF TOON TEENS,

13  WHAT -- WHAT KIND OF ROLE DID YOU HAVE IN THAT?

14      A.   DESIGN.  DESIGN GRAPHICS.  I WORKED ON

15  THE SOUNDS.  THE -- SOME OF THE MODEL MAKING, PLAY   11:47:04

16  PATTERN.

17      Q.   ANY OTHER ASPECTS OF IT YOU CAN RECALL

18  WORKING ON?

19      A.   THAT WAS PRETTY MUCH IT EXCEPT FOR THE

20  FASHIONS.  LILY DID ALL THE FASHIONS.               11:47:32

21      Q.   NOW, DID YOU DO ANY OF THE DRAWINGS OR

22  SKETCHES FOR --

23      A.   NO.

24      Q.   THOSE WERE LILY'S?

25      A.   YES.                                         11:47:45

73

EXHIBIT ___6___

PAGE ___85___

```
 1    STATE OF CALIFORNIA      )
                               )    SS.
 2    COUNTY OF LOS ANGELES    )

 3              I,   RENEE A. PACHECO    , CERTIFIED

 4    SHORTHAND REPORTER, CERTIFICATE NUMBER 11564, FOR

 5    THE STATE OF CALIFORNIA, HEREBY CERTIFY:

 6              THE FOREGOING PROCEEDINGS WERE TAKEN

 7    BEFORE ME AT THE TIME AND PLACE THEREIN SET FORTH,

 8    AT WHICH TIME THE DEPONENT WAS PLACED UNDER OATH BY

 9    ME;

10              THE TESTIMONY OF THE DEPONENT AND ALL

11    OBJECTIONS MADE AT THE TIME OF THE EXAMINATION WERE

12    RECORDED STENOGRAPHICALLY BY ME AND WERE THEREAFTER

13    TRANSCRIBED;

14              THE FOREGOING TRANSCRIPT IS A TRUE AND

15    CORRECT TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN;

16              I FURTHER CERTIFY THAT I AM NEITHER

17    COUNSEL FOR NOR RELATED TO ANY PARTY TO SAID ACTION

18    NOR IN ANY WAY INTERESTED IN THE OUTCOME THEREOF.

19              IN WITNESS WHEREOF, I HAVE HEREUNTO

20    SUBSCRIBED MY NAME THAT  _28th_ DAY OF

21    _DECEMBER_____, 2007.

22

23                    _Renee Pacheco_

24

25
```

340

EXHIBIT __6__

PAGE __86__

**EXHIBIT  7**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION


CARTER BRYANT, an individual,

              Plaintiff,

vs.                 No. CV 04-09049 SGL (RNBx)

MATTEL, INC., a Delaware
Corporation,

              Defendants.

CONSOLIDATED WITH MATTEL, INC.,
v BRYANT and MGA ENTERTAINMENT, INC.,
v MATTEL, INC.

CERTIFIED COPY

───────────────────────────────

DEPOSITION OF GARY FUNCK

San Francisco, California

Tuesday, April 8, 2008


REPORTED BY:
LYNNE LEDANOIS
CSR No. 6811

Job No. 86126

EXHIBIT 7

PAGE 87

GARY FUNCK                                    04/08/08

1                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA
2                          EASTERN DIVISION

3

4        CARTER BRYANT, an individual,

5                              Plaintiff,

6        vs.                        No. CV 04-09049 SGL (RNBx)

7        MATTEL, INC., a Delaware
         Corporation,
8
                                Defendants.
9
         CONSOLIDATED WITH MATTEL, INC.,
10       v BRYANT and MGA ENTERTAINMENT, INC.,
         v MATTEL, INC.
11

12       _____

13

14

15

16           Deposition of GARY FUNCK, taken on behalf of

17       Defendant, at 50 California Street, 21st Floor, San

18       Francisco, California, beginning at 10:01 a.m. and

19       ending at 2:25 p.m. on Tuesday, April 8, 2008, before

20       LYNNE LEDANOIS, CSR 6811.

21

22

23

24

25

1   APPEARANCE OF COUNSEL:

2

3   For Plaintiff:

4       KEKER & VAN NEST
       BY: MICHAEL H. PAGE
5       Attorney at Law
       710 Sansome Street
6       San Francisco, California 94111-1704
       415.391.5400
7       mpage@kvn.com

8

9   For Defendants:

10      QUINN EMANUEL URQUHART OLIVER & HEDGES
       BY: CHRISTOPHER TAYBACK
11      Attorney at Law
       865 S. Figueroa Street, 10th Floor
12      Los Angeles, California 90017
       213.433.3170
13      christayback@quinnemanuel.com

14

15  VIDEOGRAPHER:

16      SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
       BY: SEAN GRANT
17

18

19

20

21

22

23

24

25

EXHIBIT __7__

PAGE __89__

GARY FUNCK                                            04/08/08

| | |
|---|---|
| 11:58:10 1 | image -- |
| 11:58:10 2 | A   Yes. |
| 11:58:10 3 | Q   -- would you have that meta data someplace? |
| 11:58:13 4 | A   Yes. |
| 11:58:15 5 | Q   Where? |
| 11:58:15 6 | A   In the image file. |
| 11:58:17 7 | Q   And that's an image file that you still have in |
| 11:58:19 8 | your possession? |
| 11:58:20 9 | A   Yes. |
| 11:58:20 10 | Q   And is that information that you looked at in |
| 11:58:23 11 | preparing this report? |
| 11:58:26 12 | A   Incidentally, but since my statement is that I |
| 11:58:29 13 | did not review it any further than -- then I did not |
| 11:58:34 14 | include that. |
| 11:58:34 15 | Q   Okay.  So you had it, but you did not actually |
| 11:58:38 16 | review it in any further detail other than as referenced |
| 11:58:42 17 | here? |
| 11:58:43 18 | A   I looked quickly at it, but when I noted that |
| 11:58:49 19 | it was different than the ones that -- from the one that |
| 11:58:50 20 | Menz had reviewed, I did not see any purpose in |
| 11:58:53 21 | proceeding further. |
| 11:58:54 22 | Q   Let me ask you, you note there -- not only is |
| 11:58:57 23 | it predated; it has different content than another image |
| 11:59:00 24 | that Mr. Menz reviewed. |
| 11:59:02 25 | What leads you to believe it had a different |

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855                EXHIBIT  7

PAGE  90

GARY FUNCK                                    04/08/08

11:59:04  1    content than that?

11:59:05  2        A    The MD5 check sums are different.

11:59:08  3        Q    Do you remember the difference, what the

11:59:12  4    quantity of difference is?

11:59:13  5        A    I did not look.

11:59:14  6        Q    Do you know anything -- did you note any

11:59:18  7    specific content that appeared to be different between

11:59:21  8    what this is versus what had -- the April 27th version?

11:59:25  9        A    No.   Once I determined they were different, I

11:59:28  10   did not see the purpose in proceeding.

11:59:30  11       Q    Do you know what, if anything, happened to the

11:59:35  12   original computer itself that was the subject of the

11:59:39  13   April 20th and April 27th images between April 20th and

11:59:42  14   April 27th, 2007?

11:59:44  15       A    I do not.

12:00:03  16       Q    With respect to the desktop that I am going to

12:00:14  17   focus my questions, I think, on this -- on the one

12:00:17  18   that's imaged dated July 13th, 2004 --

12:00:22  19       A    That's the way I dated it, right.

12:00:26  20       Q    Okay.   Is it fair to say that that is the image

12:00:30  21   that you performed your testing on, your analysis of?

12:00:37  22       A    It's the system that I performed my analysis

12:00:40  23   on.

12:00:41  24       Q    Okay.   Not the April 20th one?

12:00:44  25       A    2007?

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

EXHIBIT _7_

PAGE _91_

GARY FUNCK                                                04/08/08

12:00:48  1      Q    2007.  Correct?

12:00:48  2      A    Correct.

12:00:49  3      Q    When I refer then to the image of the HP

12:00:53  4   Pavilion or the desktop image, from now on I'm going to

12:00:57  5   be focused on that, the July 13th, 2004 image that you

12:01:02  6   performed your analysis of.  Okay?

12:01:05  7      A    Yes.

12:01:05  8      Q    Is it your opinion that the Evidence Eliminator

12:01:12  9   was never run on the desktop?

12:01:16 10      A    No.

12:01:18 11      Q    Is it your opinion that it was run on the

12:01:20 12   desktop?

12:01:21 13      A    No.

12:01:23 14      Q    Did you look to determine whether it was ever

12:01:25 15   run on the desktop?

12:01:27 16      A    I want to be clear we're talking about the

12:01:29 17   version -- the definition of run that we've agreed upon,

12:01:31 18   meaning the user ran it to invoke its functions?

12:01:35 19      Q    Yes.

12:01:36 20      A    Okay.  Now, please repeat your question.

12:01:39 21      Q    Is that how you answered the last two

12:01:42 22   questions, using that interpretation?

12:01:44 23      A    Yes.

12:01:48 24      Q    Did you look at the desktop to determine

12:01:51 25   whether or not Evidence Eliminator had ever been run?

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

EXHIBIT  7

PAGE  92

GARY FUNCK                                        04/08/08

12:01:57  1      A    I think we looked generally at the image and --
12:02:05  2  but we did not look particularly at that question.
12:02:07  3      Q    Is there something you could have done in your
12:02:10  4  analysis to determine whether it had ever been run?
12:02:24  5      A    Yes.
12:02:25  6      Q    What could you have done?
12:02:29  7      A    We could have run tests on Evidence Eliminator
12:02:32  8  having been run under the Windows ME operating system
12:02:38  9  which was present on that system and on a hard drive
12:02:44 10  that has the FAT32 format which is present in that
12:02:49 11  image.  From those tests, we could determine, perhaps,
12:02:58 12  indicia of Evidence Eliminator having been run on that
12:03:01 13  sort of system.
12:03:10 14      Q    Why didn't you do that?
12:03:14 15      A    There were many tasks that we had to perform.
12:03:17 16  When we prioritized them, that didn't seem to be
12:03:22 17  important.  And it was also, obviously, time-consuming.
12:03:33 18      Q    Is it possible that Evidence Eliminator was run
12:03:36 19  on the desktop in 2002?
12:03:44 20      A    It's possible.
12:03:46 21      Q    Is it possible that it was run in 2003?
12:03:50 22      A    Run by the user to perform its functions?
12:03:53 23      Q    Using the definition --
12:03:55 24      A    Based upon -- as I concluded in my report, we
12:04:00 25  don't see -- we see indications that would imply or

93

GARY FUNCK                                    04/08/08

12:04:05  1   state that it was not run past a certain date in 2002.

12:04:16  2       Q   But you cannot say that it was not run at

12:04:20  3   that -- on that date in 2002 or anytime before that?

12:04:27  4       A   We can't say is a double negative, so I'm not

12:04:31  5   sure how to answer.

12:04:32  6           MR. PAGE:   Object as compound.

12:04:34  7           MR. TAYBACK:   Sure.   That was unclear.

12:04:35  8   BY MR. TAYBACK:

12:04:36  9       Q   But it's not your opinion that it was not

12:04:38  10  run -- withdraw that.

12:04:42  11          MR. PAGE:   We're going to go for a triple

12:04:43  12  negative this time with a half-turn.

12:04:46  13  BY MR. TAYBACK:

12:04:47  14      Q   You have no opinion -- it's correct that you

12:04:49  15  have no opinion as to whether or not it was run in 2002?

12:04:53  16      A   That's correct.

12:05:11  17          MR. PAGE:   Let me belatedly object to that as

12:05:13  18  vague and ambiguous.

12:05:14  19  BY MR. TAYBACK:

12:05:15  20      Q   In your opinion, what is the latest date on

12:05:19  21  which Evidence Eliminator could have been run on the

12:05:24  22  desktop?

12:05:53  23      A   July 29th, 2002.

12:06:25  24      Q   July 29th, 2002 is a date after it was

12:06:28  25  originally installed?

94

GARY FUNCK                                      04/08/08

| | | |
|---|---|---|
| 01:29:41 | 1 | application log. |
| 01:29:43 | 2 | Q    What is that? |
| 01:29:44 | 3 | A    Actually, I don't remember at the moment. |
| 01:29:46 | 4 | Q    Is it something that you can look at on this |
| 01:29:49 | 5 | desktop, for example, an application log somewhere? |
| 01:29:55 | 6 | A    I don't know. |
| 01:29:58 | 7 | Q    Would you -- maybe you can't answer this |
| 01:30:01 | 8 | question either, given your last answer, but would it be |
| 01:30:04 | 9 | unusual to see an empty application log? |
| 01:30:10 | 10 | A    I can't answer. |
| 01:30:17 | 11 | Q    Did you notice on the computer that there |
| 01:30:22 | 12 | appeared to be what I think you might have just |
| 01:30:22 | 13 | described as a gap, inactivity on the desktop? |
| 01:30:27 | 14 | A    I did not look at that specifically. |
| 01:30:30 | 15 | Q    Did you notice that there was -- did you |
| 01:30:33 | 16 | notice, whether you looked at it specifically or not, |
| 01:30:34 | 17 | any kind of a gap reflecting no activity between |
| 01:30:38 | 18 | September of 2002 and October of 2003? |
| 01:30:42 | 19 | A    I did not notice. |
| 01:30:44 | 20 | Q    Would that affect your opinion in any way if |
| 01:30:49 | 21 | that was the case? |
| 01:30:50 | 22 | MR. PAGE:  Objection, vague and ambiguous. |
| 01:30:51 | 23 | THE WITNESS:  You know, I think it would depend |
| 01:30:54 | 24 | upon the particulars. |
| 01:30:54 | 25 | BY MR. TAYBACK: |

122

GARY FUNCK                                    04/08/08

01:30:55  1      Q    Assume that you looked at the computer, the

01:30:58  2    desktop, and it showed that there was no activity from

01:31:02  3    September of 2002 to October of 2003.  Would that affect

01:31:05  4    your opinion in any way?

01:31:07  5           MR. PAGE:  Objection, vague and ambiguous.

01:31:08  6    Which opinion?

01:31:08  7    BY MR. TAYBACK:

01:31:09  8      Q    Any of your opinions.

01:31:13  9      A    I have to think about that.  There's a lot of

01:31:15 10    opinions.

01:31:28 11           No, I don't think so.

01:31:33 12      Q    What is a setup log?

01:31:36 13      A    That's another one of those logs that I am not

01:31:39 14    sure what it is at the moment.

01:31:42 15      Q    Did you notice that the setup log was dated

01:31:45 16    January of 2004?

01:31:47 17      A    No, I did not.

01:31:49 18      Q    Is that significant at all to anything that you

01:31:51 19    did with respect to your analysis?

01:31:54 20      A    It's -- it did not affect my analysis.

01:32:28 21      Q    Let me ask you -- let me turn to the laptop.

01:32:37 22           You agreed with Mr. Menz that the hard drive

01:32:46 23    for the laptop reflects approximately 9400 files or file

01:32:53 24    names were overwritten?

01:32:56 25      A    File names or folder names were overwritten.

123

EXHIBIT 7

PAGE 96

GARY FUNCK                                    04/08/08

01:32:59  1      Q    On July 12th, 2004?

01:33:02  2      A    Correct.

01:33:13  3      Q    Do you know who ran Evidence Eliminator on July

01:33:17  4  12th, 2004?

01:33:18  5      A    No, I do not.

01:33:20  6      Q    Did you inquire about that?

01:33:22  7      A    No, I did not.

01:33:25  8      Q    Do you have any reason to believe it was Lee

01:33:27  9  Curtis?

01:33:28 10           MR. PAGE:  Objection, calls for speculation.

01:33:34 11           THE WITNESS:  Only the fact that he seemed to

01:33:35 12  show up to do the image two days later, so I guess his

01:33:40 13  name would be in play if you were trying to determine

01:33:44 14  that.

01:33:44 15  BY MR. TAYBACK:

01:33:44 16      Q    Do you know whether it was Carter Bryant?

01:33:47 17      A    I think I already answered, I don't know.

01:33:49 18      Q    Do you have any understanding as to in whose

01:33:53 19  custody the laptop was in on July 12th, 2004?

01:33:57 20      A    I don't know.

01:33:58 21      Q    Did you make any effort to determine that?

01:34:00 22      A    I did not.

01:34:05 23      Q    As you, I believe, just alluded to, the image

01:34:09 24  that you reviewed was made two days after Internet --

01:34:14 25  Evidence Eliminator was run; correct?

| | | |
|---|---|---|
| 01:44:41 | 1 | was hard was the first part. |
| 01:44:50 | 2 | Q   Do you have any understanding as to what |
| 01:44:51 | 3 | Evidence Eliminator does, if anything, to make recovery |
| 01:44:56 | 4 | of those recipes themselves, in my example, more |
| 01:45:00 | 5 | difficult? |
| 01:45:06 | 6 | A   Yes. |
| 01:45:06 | 7 | Q   What? |
| 01:45:11 | 8 | A   If the data were still present, then it might |
| 01:45:16 | 9 | overwrite the data. |
| 01:45:17 | 10 | However, I just want to say that when you look |
| 01:45:19 | 11 | at the data on the drive and you think about the time |
| 01:45:22 | 12 | frames involved, for example in our particular example, |
| 01:45:24 | 13 | then this hypothetical might not apply. |
| 01:45:28 | 14 | Q   Put aside the specifics right now.  I guess I |
| 01:45:31 | 15 | want to understand what your understanding is of how |
| 01:45:33 | 16 | Evidence Eliminator would overwrite the data itself. |
| 01:45:41 | 17 | A   It probably -- I think we know from the |
| 01:45:44 | 18 | description that it would probably overwrite the |
| 01:45:46 | 19 | unallocated space. |
| 01:45:48 | 20 | Q   And did you look to see whether that -- any |
| 01:45:52 | 21 | unallocated space had been overwritten in the laptop? |
| 01:45:59 | 22 | A   We did not look specifically. |
| 01:46:00 | 23 | Q   When you say you did not look specifically -- |
| 01:46:02 | 24 | A   I mean, we looked at a lot of things, and from |
| 01:46:05 | 25 | what I recall, we did not look for that specific |

133

EXHIBIT 1

98

GARY FUNCK                                  04/08/08

01:46:07  1    indication.

01:46:16  2        Q    Is there something you would look for since

01:46:18  3    here the Evidence Eliminator was run -- withdraw that.

01:46:26  4             The 9400 plus file names and file folders that

01:46:33  5    were overwritten, do you have any way of knowing how

01:46:36  6    much data, if ever, was contained in any of those files

01:46:39  7    or folders?

01:46:44  8        A    No.

01:46:44  9        Q    Is there any way to recover that, to your

01:46:47  10   knowledge?

01:46:53  11       A    No.

01:46:57  12       Q    Is it your understanding that that's part of

01:46:59  13   the purpose of Evidence Eliminator?

01:47:01  14            MR. PAGE:  Objection, calls for speculation.

01:47:06  15            THE WITNESS:  I think part of the purpose of

01:47:08  16   Evidence Eliminator is to perform some of these cleaning

01:47:13  17   functions that we just talked about.

01:47:15  18   BY MR. TAYBACK:

01:47:15  19       Q    And is one effect of Evidence Eliminator, in

01:47:18  20   your understanding, that it makes it impossible to know

01:47:21  21   how much data was ever contained in any of the 9400 plus

01:47:27  22   file names and file folders overwritten by Evidence

01:47:29  23   Eliminator?

01:47:30  24            MR. PAGE:  Objection, vague and ambiguous.

01:47:33  25            THE WITNESS:  Did you say file and folder names

134

EXHIBIT 7

PAGE 99

GARY FUNCK                                04/08/08

01:47:35  1   or did you say files and folders?

01:47:37  2   BY MR. TAYBACK:

01:47:37  3       Q   The data contained in the files and folder

01:47:40  4   names overwritten by Evidence Eliminator.

01:47:44  5            MR. PAGE:  Same objection.

01:47:45  6            THE WITNESS:  The difficulty in answering that

01:47:46  7   question is that you can have a lot of leftover file and

01:47:48  8   folder names and no data at all corresponding to them.

01:47:51  9   BY MR. TAYBACK:

01:47:51  10      Q   I understand what you could have, but I'm

01:47:54  11  saying, the ability to go back and figure out whether

01:47:56  12  there was -- what data, if any, was in any given file

01:47:59  13  folder or name, is it your understanding that Evidence

01:48:01  14  Eliminator makes it impossible to go back and figure

01:48:04  15  that out?

01:48:05  16           MR. PAGE:  Same objection.

01:48:08  17           THE WITNESS:  The name does not have the file

01:48:10  18  data, so I can't answer the question as asked.

01:48:13  19  BY MR. TAYBACK:

01:48:15  20      Q   In the absence of Evidence Eliminator in this

01:48:18  21  case, could you do anything to determine whether any of

01:48:21  22  the file names or file folders that are represented by

01:48:27  23  the 9400 plus overwritten file names had data in them?

01:48:34  24           MR. PAGE:  Objection, vague and ambiguous,

01:48:35  25  incoherent.

                                                        135

EXHIBIT 7

PAGE 100

GARY FUNCK                                    04/08/08

01:48:38  1        THE WITNESS:  They did not have data because

01:48:39  2    they were already deleted.

01:48:41  3    BY MR. TAYBACK:

01:48:42  4        Q    In the absence of Evidence Eliminator, is there

01:48:45  5    anything you could do to determine whether the data that

01:48:48  6    once was in those file names or folders was still on the

01:48:52  7    computer?

01:48:53  8        MR. PAGE:  Same objection.

01:49:00  9        THE WITNESS:  I would say no.

01:49:01  10   BY MR. TAYBACK:

01:49:12  11       Q    By eliminating the file names and folder names,

01:49:15  12   what is the -- if you have any understanding, what's

01:49:20  13   the -- withdraw that.

01:49:23  14            In your analysis of this particular -- withdraw

01:49:33  15   that.

01:49:34  16            Do you know why whoever ran Evidence Eliminator

01:49:36  17   on July 12th, 2004 ran it?

01:49:39  18       MR. PAGE:  Objection, calls for speculation.

01:49:44  19       THE WITNESS:  I have no clue.

01:49:44  20   BY MR. TAYBACK:

01:49:44  21       Q    Is there any way to recover the file names or

01:49:50  22   folder names that were overwritten on July 12th, 2004,

01:49:55  23   to your knowledge?

01:49:55  24       A    No.

01:49:56  25       Q    And is that an effect of Evidence Eliminator?

136

EXHIBIT 1

PAGE 161

GARY FUNCK                                    04/08/08

01:50:00  1        A    Yes.

01:50:01  2             MR. PAGE:  Objection, calls for speculation.

01:50:04  3             THE WITNESS:  It seems so.

01:50:05  4   BY MR. TAYBACK:

01:50:05  5        Q    If Evidence Eliminator had not been run on July

01:50:08  6   12th, 2004, could one recover the 9400 plus file names

01:50:12  7   and folder names that were overwritten?

01:50:14  8             MR. PAGE:  Objection, calls for speculation.

01:50:24  9             THE WITNESS:  Yes.

01:50:25 10   BY MR. TAYBACK:

01:50:27 11        Q    How?

01:50:43 12        A    I suppose by looking at the information that's

01:50:45 13   on the disk drive.

01:50:47 14        Q    Where would you look exactly?

01:50:49 15        A    In the MFT.

01:51:03 16        Q    Can you tell me how many times Evidence

01:51:04 17   Eliminator was run prior to July 12th, 2004 --

01:51:11 18             MR. PAGE:  Objection, vague and ambiguous.

01:51:12 19   BY MR. TAYBACK:

01:51:12 20        Q    -- on the laptop?  Sorry.

01:51:15 21        A    No.

01:51:17 22        Q    Why not?

01:51:21 23        A    Well, I think if you look for indications -- we

01:51:25 24   talked before, if you looked at the dates and times of

01:51:27 25   the configuration files that it accesses, then there's

EXHIBIT 7

PAGE 102

GARY FUNCK                                    04/08/08

01:59:43   1        A    Correct.

01:59:44   2        Q    Plus any additionally-deleted files between the

01:59:46   3    April and the July --

01:59:48   4        A    Or, more accurately, plus any other file names

01:59:51   5    and folder names that have not been allocated to new

01:59:55   6    files.

01:59:56   7        Q    Okay.  In your report again at page 3, you --

02:00:04   8    in the first bullet point around page 7, you say,

02:00:08   9    Mr. Menz does not clarify his statement by mentioning

02:00:12  10    that files names can be overwritten by Evidence

02:00:14  11    Eliminator without any actual data being overwritten.

02:00:19  12        Can they -- is the opposite of that true?  Is

02:00:22  13    it that they can be overwritten and actual data also

02:00:27  14    overwritten?

02:00:30  15        A    Not if we consider data to be a separate entity

02:00:33  16    from the file name.

02:00:36  17        Q    So when you say it can be, are you saying,

02:00:38  18    really, must be in this report?

02:00:42  19        A    I'm not sure I understand the distinction.

02:00:49  20        Q    Well, I guess I want to find out whether you're

02:00:49  21    saying it can be this and it can be that, or, you know,

02:00:50  22    it can only be this.

02:00:52  23        A    Oh, okay.  I think there are scenarios that are

02:00:55  24    not difficult to conceive where the file names are

02:00:59  25    overwritten and the data isn't.

141

EXHIBIT 7
PAGE 103

GARY FUNCK                                          04/08/08

| 02:01:02 | 1 | Q   Do you know whether the -- I just want to make |
| 02:01:06 | 2 | sure that this is clear. |
| 02:01:07 | 3 | Do you know whether Evidence Eliminator as run |
| 02:01:09 | 4 | on this laptop did anything to overwrite unallocated |
| 02:01:17 | 5 | space? |
| 02:01:22 | 6 | A   I think there are indications that it did |
| 02:01:24 | 7 | overwrite unallocated space. |
| 02:01:27 | 8 | Q   And that would be where the remnants of the |
| 02:01:31 | 9 | files, the data within the various file names would be |
| 02:01:38 | 10 | found, typically, in the absence of Evidence Eliminator; |
| 02:01:41 | 11 | correct? |
| 02:01:43 | 12 | A   If you could just say -- if you stop the |
| 02:01:46 | 13 | "typically," I would say yes. |
| 02:01:49 | 14 | Q   What is the matter with the "typically"? |
| 02:01:51 | 15 | A   It's just sort of compound.  I don't really |
| 02:01:53 | 16 | know which part of the question to answer. |
| 02:02:08 | 17 | MR. TAYBACK:  Okay.  If we could have that read |
| 02:02:08 | 18 | back and I'll take out the "typically." |
|  | 19 | (Record Read.) |
| 02:02:09 | 20 | MR. TAYBACK:  I'm not going to reask that.  I |
| 02:02:12 | 21 | will rephrase it. |
| 02:02:13 | 22 | BY MR. TAYBACK: |
| 02:02:14 | 23 | Q   In the unallocated space in this laptop that |
| 02:02:16 | 24 | you analyzed is where the underlying data would go once |
| 02:02:22 | 25 | a file is deleted, until it's used and allocated to some |

142

EXHIBIT 7

PAGE 104

02:02:28  1    other new file; correct?

02:02:30  2        A    Right, until it's reused.

02:02:33  3        Q    So by overwriting the unallocated space, in

02:02:38  4    addition to the file names and folder names, Evidence

02:02:40  5    Eliminator as used on this laptop makes recovery of any

02:02:48  6    previously-deleted data impossible; correct?

02:02:57  7        A    Well, I think that the issue again there is

02:02:58  8    that the previously-deleted data, okay, could be reused

02:03:03  9    and is reused by the operating system.  So that also

02:03:07  10   makes it irrecoverable.

02:03:11  11       Q    So either reused by the operating system and to

02:03:13  12   the extent not reused by the operating system, the

02:03:17  13   running of Evidence Eliminator, as was done on July

02:03:20  14   12th, 2004, makes recovery of that data impossible?

02:03:24  15       A    And that data is?

02:03:26  16       Q    That data is previously-deleted data, including

02:03:30  17   the file names and whatever data may have previously

02:03:33  18   existed under those files.

02:03:38  19       A    But that's compound again because you're

02:03:40  20   linking the files and the file data.

02:03:42  21       Q    Okay.  When you say "linking the files," you

02:03:46  22   mean linking the file names --

02:03:51  23       A    My point here is basically talking about

02:03:51  24   file --

02:03:51  25            MR. PAGE:  One at a time.

143

| | | |
|---|---|---|
| 02:03:54 | 1 | BY MR. TAYBACK: |
| 02:03:54 | 2 |    Q   Evidence Eliminator being run on July 12th, |
| 02:03:59 | 3 | 2004 makes recovery of the previously-deleted file names |
| 02:04:06 | 4 | impossible; correct? |
| 02:04:08 | 5 |      MR. PAGE:  Objection, misstates his previous |
| 02:04:10 | 6 | testimony and calls for speculation. |
| 02:04:17 | 7 |      THE WITNESS:  We've already talked about the |
| 02:04:18 | 8 | file names and the previous file names.  So can you ask |
| 02:04:22 | 9 | me a specific question? |
| 02:04:23 | 10 | BY MR. TAYBACK: |
| 02:04:24 | 11 |    Q   I thought that was a specific question. |
| 02:04:27 | 12 |      The running of Evidence Eliminator on July |
| 02:04:31 | 13 | 12th, 2004 makes recovery of the previously-deleted file |
| 02:04:38 | 14 | or folder names impossible; correct? |
| 02:04:43 | 15 |      MR. PAGE:  Objection, calls for speculation and |
| 02:04:45 | 16 | misstates his prior testimony. |
| 02:04:49 | 17 | BY MR. TAYBACK: |
| 02:04:50 | 18 |    Q   If you're saying no because it could have been |
| 02:04:52 | 19 | run before and that would have previously deleted it, is |
| 02:04:55 | 20 | that why -- |
| 02:04:55 | 21 |    A   No. |
| 02:04:56 | 22 |    Q   -- or is there something else that I am |
| 02:04:58 | 23 | missing?  Okay. |
| 02:05:00 | 24 |      What is wrong with my example?  I don't want to |
| 02:05:02 | 25 | misstate your testimony; I want to understand it. |

EXHIBIT 7

PAGE 106

GARY FUNCK                                    04/08/08

| | | |
|---|---|---|
| 02:05:05 | 1 | MR. PAGE:  For the record, that was the basis |
| 02:05:07 | 2 | of my objection. |
| 02:05:08 | 3 | MR. TAYBACK:  All right. |
| 02:05:17 | 4 | THE WITNESS:  Actually, I think now I'm |
| 02:05:19 | 5 | confused. |
| 02:05:19 | 6 | So if -- the problem I'm having with this is |
| 02:05:31 | 7 | that in this scenario there, these original file names, |
| 02:05:35 | 8 | okay, and then there's the possibility of Evidence |
| 02:05:39 | 9 | Eliminator having run and then those are new file names. |
| 02:05:42 | 10 | BY MR. TAYBACK: |
| 02:05:43 | 11 | Q   Sure.  Whatever the last existing file names |
| 02:05:45 | 12 | were of deleted files. |
| 02:05:47 | 13 | A   All right. |
| 02:05:47 | 14 | Q   The running of Evidence Eliminator on July |
| 02:05:50 | 15 | 12th, 2004 made recovery of those previously-deleted |
| 02:05:54 | 16 | file names impossible to recover? |
| 02:05:56 | 17 | A   And that includes the file names that might |
| 02:05:59 | 18 | have been overwritten by a prior run of Evidence |
| 02:06:02 | 19 | Eliminator? |
| 02:06:03 | 20 | Q   Yes? |
| 02:06:03 | 21 | A   Yes. |
| 02:06:06 | 22 | Q   And by the same token, the running of Evidence |
| 02:06:09 | 23 | Eliminator on July 12th, 2004 on the laptop made |
| 02:06:14 | 24 | recovery of whatever remnants of previously-deleted data |
| 02:06:18 | 25 | may have existed in unallocated space unrecoverable? |

145

EXHIBIT 7

PAGE 107

GARY FUNCK                                    04/08/08

02:06:33  1          MR. PAGE:  I object that it assumes facts.

02:07:10  2          THE WITNESS:  So the answer is that if you go

02:07:12  3    back again to Evidence Eliminator having been run

02:07:15  4    before, it also affects the data, okay, which means that

02:07:19  5    it cleaned the data, which means that that -- at that

02:07:24  6    point in time, then there's -- you know, then whatever

02:07:27  7    data you see is just the result of its cleaning.

02:07:31  8          Okay, that can be a lot of data, because on

02:07:37  9    this hard drive, only about -- only like 4 gigs out of,

02:07:38 10    say, 20 are actually in use.  So there's a lot of it

02:07:42 11    that's not in use.  Okay.

02:07:44 12          Thus, when you combine that effect with the

02:07:47 13    idea that the operating system is also reusing data,

02:07:51 14    there could be a lot of data that is not recoverable

02:07:58 15    because of the prior run of Evidence Eliminator.  It

02:08:01 16    could have been as far back as 2002, 2003.  It's --

02:08:04 17    because the drive is mainly empty, you know, it depends

02:08:07 18    upon the activity level.

02:08:08 19    BY MR. TAYBACK:

02:08:11 20      Q    Assume that Evidence Eliminator had not been

02:08:14 21    run prior to July 12th, 2004.  Okay.

02:08:19 22          The running of Evidence Eliminator on July

02:08:23 23    12th, 2004 made the recovery of previously-deleted data

02:08:27 24    that still existed in unallocated space as of July 11th,

02:08:32 25    2004 unrecoverable; correct?

                                                         146

| | |
|---|---|
| 02:08:34 | 1 |
| 02:08:38 | 2 |
| 02:08:39 | 3 |
| 02:08:42 | 4 |
| 02:08:43 | 5 |
| 02:08:43 | 6 |
| 02:08:47 | 7 |
| 02:08:49 | 8 |
| 02:08:51 | 9 |
| 02:08:54 | 10 |
| 02:08:57 | 11 |
| 02:08:58 | 12 |
| 02:09:01 | 13 |
| 02:09:06 | 14 |
| 02:09:13 | 15 |
| 02:09:17 | 16 |
| 02:09:21 | 17 |
| 02:09:22 | 18 |
| 02:09:26 | 19 |
| 02:09:29 | 20 |
| 02:09:35 | 21 |
| 02:09:39 | 22 |
| 02:09:42 | 23 |
| 02:09:47 | 24 |
| 02:09:49 | 25 |

1    MR. PAGE:  Object, assumes facts.

2    THE WITNESS:  Right.  I mean, we don't have

3  firsthand knowledge of that, so it's really a

4  hypothetical.

5  BY MR. TAYBACK:

6    Q   If there was data to recover from July 11th,

7  2004, that would be the case; right?

8    A   If there were data, but I think there are

9  situations where there is not data, where the operating

10  system reused the space and allocated to another file.

11    Q   I understand.  I'm saying if there was data,

12  that would be the result, wouldn't it?

13    If there was remnants of previously-deleted

14  data in the unallocated space on this laptop on July

15  11th, 2004, the running of Evidence Eliminator on July

16  12th of 2004 would make those remnants unrecoverable;

17  correct?

18    A   I don't know what "those remnants" are, but

19  there are situations in which there might be some data

20  that was present and was overwritten.  The real question

21  is, is that data relevant at all?

22    Q   I'm just saying can we recover anything in that

23  scenario is my question, whether it's relevant or not --

24    A   Or meaningful.

25    Q   If there is -- let me ask it again.

02:09:51  1        If there is any data to recover that exists as

02:09:57  2   remnants of previously-deleted files in unallocated

02:10:01  3   space on July 11th, 2004, would the running of Evidence

02:10:06  4   Eliminator on July 12th, 2004 have prevented the

02:10:16  5   recovery of that -- those remnants, whatever they might

02:10:16  6   have been?

02:10:17  7        MR. PAGE:  Object, assumes facts.

02:10:23  8        THE WITNESS:  Given the hypothetical, I would

02:10:25  9   say yes.

02:10:27 10   BY MR. TAYBACK:

02:10:32 11        Q   Do you know as you sit here now whether there

02:10:35 12   was any data in that unallocated space that relates to

02:10:41 13   the issues in this lawsuit on July 11th, 2004?

02:10:47 14        A   No.

02:10:47 15        Q   You have no way of knowing one way or the

02:10:49 16   other; correct?

02:10:50 17        A   I don't even know what the data is that relates

02:10:53 18   to the lawsuit.

02:10:54 19        Q   And, in fact --

02:10:56 20        MR. PAGE:  Objection.  Excellent point.

02:10:57 21   BY MR. TAYBACK:

02:10:58 22        Q   And, in fact, you have no way of knowing what

02:11:01 23   data, if anything, existed in that unallocated space on

02:11:04 24   July 11th, 2004?

02:11:06 25        A   That's true.

148

EXHIBIT  7

PAGE  110

| | | |
|---|---|---|
| 02:11:13 | 1 | Q   Let me ask you whether the following is |
| 02:11:25 | 2 | consistent with your analysis and your findings. |
| 02:11:28 | 3 | A   Okay. |
| 02:11:30 | 4 | Q   Is it consistent with your opinion that in |
| 02:11:34 | 5 | July -- between July 24th and July 29th, 2002, Carter |
| 02:11:41 | 6 | Bryant installed Evidence Eliminator on his desktop and |
| 02:11:47 | 7 | ran it? |
| 02:11:48 | 8 | A   I think I've already -- |
| 02:11:50 | 9 | MR. PAGE:   Object as compound. |
| 02:11:54 | 10 | THE WITNESS:   I think I already answered that. |
| 02:11:57 | 11 | BY MR. TAYBACK: |
| 02:11:58 | 12 | Q   This is a slightly different question. |
| 02:11:59 | 13 | A   Okay. |
| 02:12:00 | 14 | Q   And I'll even break it down. |
| 02:12:02 | 15 | Is it consistent with your opinion in this case |
| 02:12:05 | 16 | that in July 2002 Carter Bryant installed Evidence |
| 02:12:08 | 17 | Eliminator on his desktop computer? |
| 02:12:11 | 18 | A   Yes. |
| 02:12:12 | 19 | Q   Is it consistent with your opinion that in July |
| 02:12:15 | 20 | 2002 Carter Bryant ran Evidence Eliminator on his |
| 02:12:19 | 21 | desktop? |
| 02:12:21 | 22 | A   I think I've stated that I don't know. |
| 02:12:24 | 23 | Q   I know you don't know whether he did or not. |
| 02:12:27 | 24 | My question is, is it consistent with your opinion? |
| 02:12:32 | 25 | Could that have happened and would it still -- your |

149

EXHIBIT 7

111

**EXHIBIT 8**