IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware Corporation,

Plaintiff,

vs.                    NO. CV 04-9059 NM (RJBx)

CARTER BRYANT, an individual, and
DOES 1 through 10, Inclusive.

Defendants.

_____

CARTER BRYANT, on behalf of himself,
all present and former employees of
Mattel, Inc., and the general public.

Cross-Complaint.

vs.                         CERTIFIED
                            COPY

MATTEL, INC.,
a Delaware corporation.

Cross-Defendant.

_____

CONFIDENTIAL - ATTORNEYS' EYES ONLY

DEPOSITION OF PAULA GARCIA

Thursday, May 24, 2007

Los Angeles, California

VOLUME 1

Reported by:
DAVID OCANAS
CSR No. 12567

JOB NO. 66418

EXHIBIT ___8___

PAGE ___112___

```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3

 4    MATTEL, INC., a Delaware Corporation,

 5                  Plaintiff,

 6            vs.           NO. CV 04-9059 NM (RJBx)

 7    CARTER BRYANT, an individual, and
      DOES 1 through 10, Inclusive.
 8
                    Defendants.
 9    _____

      CARTER BRYANT, on behalf of himself,
10    all present and former employees of
      Mattel, Inc., and the general public.
11
                    Cross-Complaint.
12
              vs.
13
      MATTEL, INC.,
14    a Delaware corporation.

15                  Cross-Defendant.

16    _____

17

18          Videotaped Deposition of PAULA GARCIA,

19    Volume 1, taken on behalf of Plaintiff and

20    Cross-Defendant, at 865 South Figueroa Street,

21    Tenth Floor, Los Angeles, California, beginning at

22    10:18 a.m. and ending at 7:08 p.m. on Thursday, May

23    24, 2007 before David Ocanas, Certified Shorthand

24    Reporter No. 12567.

25
```

                                                        2

EXHIBIT 2

PAGE 113

PAULA GARCIA, V. 1                                    05/24/07
CONFIDENTIAL ATTORNEYS' EYES ONLY

```
1    APPEARANCES:
2
3    For Mattel:
4          QUINN, EMANUEL, URQUHART, OLIVER &
           HEDGES, LLP
5          BY:  BRIDGET MORRIS
           Attorney at Law
6          865 South Figueroa Street
           Tenth Floor
7          Los Angeles, California 90017
           213-624-7707
8          E-mail:  Michaelzeller@quinnemanuel.com
                    bridgetmorris@quinnemanuel.com
9
     For MGA Entertainment:
10
           O'MELVENY & MYERS LLP
11         BY:  DIANA M. TORRES
           Attorney at Law
12         400 South Hope Street
           Los Angeles, California 90071-2899
13         (213) 430-6000
           E-mail:  Dtorres@omm.com
14
     For Carter Bryant:
15
           KEKER & VAN NEST
16         BY:  MICHAEL H. PAGE
           Attorney at Law
17         710 Sansome Street
           San Francisco, California 94111-1704
18         (415) 397-7188
           E-mail:  Mhp@kvn.com
19
     Also Present:
20
           MICHAEL MOORE, Mattel
21         JILL THOMAS, Mattel
           DAPHNE GRONICH, MGA Entertainment
22         CRAIG HOLDEN, MGA Entertainment
23
24
25
```

3

EXHIBIT 8

PAGE 114



```
 1    APPEARANCES: (CONT'D)

 2

 3    Videographer:

 4            CHARLIE GUILLEN
              SARNOFF COURT REPORTERS
 5            AND LEGAL TECHNOLOGIES
              20 Corporate Park
 6            Irvine, California 92606
              (877) 955-3855
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

4

EXHIBIT 8

PAGE 115

```
 1          Q    Were they for catalogs, for

 2    advertisements, what were these photos for?

 3          A    They were primarily intended for the

 4    packaging.

16:01 5     Q    Prior to the time of that photo shoot and

 6    this particular work on the Hoppity Bouncy Baby

 7    that you mentioned, had Veronica Marlow done other

 8    work for MGA?

 9          A    Yes.

16:01 10    Q    What had she done prior to that time?

11          A    She assisted in design for Prayer Angels.

12          Q    Anything else?

13               MS. TORRES:  Objection, calls for

14    speculation.

16:01 15         THE WITNESS:  Not to my knowledge, no.

16    BY MR. ZELLER:

17          Q    It's fair to say that Veronica Marlow's

18    first project for MGA was Prayer Angels?

19               MS. TORRES:  Objection, lack of

16:02 20   foundation, calls for speculation.

21               THE WITNESS:  In my knowledge, yes.  EXHIBIT 8

22    BY MR. ZELLER:                                    PAGE 116

23          Q    Who is it that you think would have

24    information or knowledge about what Veronica Marlow

16:02 25   did for MGA prior to Hoppity Bouncy Baby and Prayer
```

1    Angels?

2        A    I don't know anyone specifically.

3        Q    How was it that Veronica Marlow came to

4    work for MGA?

16:02  5         MS. TORRES:  Objection, calls for

6    speculation, lack of foundation.

7             THE WITNESS:  I only know how she came to

8    work at MGA with me.

9    BY MR. ZELLER:

16:02 10        Q    Why don't you tell us what that is,

11    please?

12        A    I believe that Maureen Mullen recommended

13    her.

14        Q    Recommended her to who?

16:03 15        A    To me.

16        Q    At the time that Maureen Mullen had

17    recommended Veronica Marlow to you for MGA work,

18    was Maureen Mullen doing work for MGA?

19        A    Yes.

16:03 20        Q    How is it that Maureen Mullen came to be

21    doing work for MGA?

22             MS. TORRES:  Objection, lacks foundation,

23    calls for speculation.

24             THE WITNESS:  Maureen came to work at MGA

16:03 25    for me and my contacting her.    EXHIBIT 8

PAGE 117

191

PAULA GARCIA, V. 1                        05/24/07
CONFIDENTIAL ATTORNEYS' EYES ONLY

BY MR. ZELLER:

Q   If I understand what you're saying correctly, Maureen Mullen came to work for MGA because you contacted her and asked her to work for MGA; is that correct?

MS. TORRES:  Objection, misstates the witness' testimony.

THE WITNESS:  Yes.

BY MR. ZELLER:

Q   At that time, did you ask Maureen to come over as a full-time employee or do freelance or did you discuss with her what the potential status would be?

A   We discussed that she would work in the capacity as a freelancer.

Q   When did you have this conversation with or contact or communication with Maureen Mullen about that?

A   I don't remember exactly.

Q   Was it prior to the time that she left Mattel, or was it after she left Mattel?

A   After she left Mattel.

Q   Was it right after she left Mattel?

MS. TORRES:  Objection, vague.

THE WITNESS:  I don't know.

EXHIBIT 8

PAGE 118

192

PAULA GARCIA, V. 1                               05/24/07
CONFIDENTIAL ATTORNEYS' EYES ONLY

1   BY MR. ZELLER:

2        Q    It's fair to say that you were close to

3   Maureen Mullen when you were at Mattel, right?

4             MS. TORRES:  Objection, vague.

16:05  5          THE WITNESS:  Close -- can you be more

6   specific, please?

7   BY MR. ZELLER:

8        Q    She was your friend, right?

9        A    Yes.

16:05 10        Q    And she was someone who you had regular

11  contact with when you were at Mattel and when she

12  was at Mattel; isn't that true?

13       A    Yes.

14       Q    She was a friend to an extent that you saw

16:05 15 her outside of work; isn't that true?

16       A    A few times, yes.

17       Q    So my question is:  You knew when it is

18  that Maureen Mullen left Mattel, you were aware she

19  was leaving; is that correct?

16:05 20          MS. TORRES:  Objection, vague as to time.

21             At that time?

22  BY MR. ZELLER:

23       Q    Right.  You knew contemporaneously when it

24  was that Maureen Mullen was leaving Mattel.

16:06 25       A    I don't remember when Maureen Mullen left

EXHIBIT 8

PAGE 119

193

1      Q   Because I take it at some point you talked

2   to the Human Resource people, is that right, before

3   you were hired?

4      A   Yes.

16:19  5      Q   When is it that you had this interview

6   with Kami Gillmour, the first interview for your

7   job at MGA?

8          MS. TORRES:  Objection, vague.

9          THE WITNESS:  I don't remember the exact

16:19 10   date.

11   BY MR. ZELLER:

12      Q   Was it at some point in -- let me try it

13   this way.

14          I'll represent to you that the last date

16:19 15   you were actually at Mattel was April 6th of 2000.

16          And we'll go into that a little bit more

17   in detail in a second.

18          But with that representation, are you able

19   to tell me how far in advance you knew about your

16:20 20   job offer or when you had your interview prior to

21   that -- prior to that last day you were there at

22   MGA -- excuse me, at Mattel?

23          MS. TORRES:  Objection, compound.

24          THE WITNESS:  I can't be specific on the

16:20 25   exact date.

EXHIBIT 8

PAGE 120

```
 1            I expect it was a very short time between
 2       the extended offer and my last date at Mattel.
 3       BY MR. ZELLER:
 4            Q   It's your recollection that you accepted
16:20 5       the offer pretty close in time to when it was
 6       extended to you from MGA?
 7            A   Yes.
 8            Q   And then you told Mattel, by your
 9       recollection, fairly promptly that you were
16:20 10      leaving?
11            A   Yes.
12            Q   And it's fair to say that that date in
13       April when you were last there at Mattel, that was
14       the day that you told people that you were leaving;
16:20 15      is that right?
16            A   Yes, I think -- yes, that's my memory,
17       yes.
18            Q   How much time elapsed or passed between
19       the time that you had the interview with Kami
16:21 20      Gillmour there for MGA and the time you were
21       extended an offer for your job?
22            A   I don't remember.
23            Q   Was it months?
24            A   No.
16:21 25           Q   So it was weeks or less?
```

EXHIBIT 8
PAGE 121

205

1       A    Yes.

2       Q    How much time was it between when you

3  first called or contacted MGA in some way after

4  seeing the notice on the website for the potential

16:21 5  job there and the time you had the interview with

6  Kami Gillmour?

7       A    I don't remember exactly.

8       Q    Was it months?

9       A    No.

16:21 10      Q    It was a matter of weeks?

11      A    Yes.

12      Q    Prior to the time that you had the

13  interview with Kami Gillmour in connection with

14  this potential Associate Product Manager job at

16:22 15  MGA, did you have any conversations or discussions

16  with anyone about MGA?

17      A    I don't remember -- no.

18      Q    Did you talk to anyone about MGA other

19  than people at MGA as part of this whole interview

16:22 20  process?

21           By that, I'm asking -- obviously, in many

22  situations, if people are considering a job, they

23  will go and call friends or ask for people who had

24  worked there previously to find out about the

16:22 25  company.                           EXHIBIT 8

                                          PAGE 122

                                                          206

1

2

3

4        I, the undersigned, a Certified

5   Shorthand Reporter, do hereby certify:

6        That the foregoing proceedings were

7   taken before me at the time and place herein set

8   forth; that any witness in the foregoing

9   proceedings, prior to testifying, were placed under

10  oath; that a verbatim record of the proceedings was

11  made by me using machine shorthand which was

12  thereafter transcribed under my direction; further,

13  that the foregoing is an accurate transcription

14  thereof.

15        I further certify that I am neither

16  financially interested in the action nor a relative

17  or employee of any attorney of any of the parties.

18        IN WITNESS WHEREOF, I have this

19  date subscribed by name.

20

21  Dated:

22        MAY 3 0 2007

23

24        _____

          DAVID OCANAS

25        CSR No. 12567

EXHIBIT  **8**

PAGE  **123**

**EXHIBIT  9**

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware Corporation,

            Plaintiff,

        vs.              NO. CV 04-9059 NM (RJBx)

CARTER BRYANT, an individual, and
DOES 1 through 10, Inclusive.

            Defendants.

_____

CARTER BRYANT, on behalf of himself,
all present and former employees of
Mattel, Inc., and the general public.

            Cross-Complaint.

        vs.

MATTEL, INC.,
a Delaware corporation.

            Cross-Defendant.

_____

**CERTIFIED COPY**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

DEPOSITION OF PAULA GARCIA

Friday, May 25, 2007

Los Angeles, California

VOLUME 2

Reported by:
DAVID OCANAS
CSR No. 12567

JOB NO. 66420

EXHIBIT 9

PAGE 124

1          IN THE UNITED STATES DISTRICT COURT

2         FOR THE CENTRAL DISTRICT OF CALIFORNIA

3

4   MATTEL, INC., a Delaware Corporation,

5                    Plaintiff,

6              vs.           NO. CV 04-9059 NM (RJBx)

7   CARTER BRYANT, an individual, and
    DOES 1 through 10, Inclusive.
8
                        Defendants.
9
    CARTER BRYANT, on behalf of himself,
10  all present and former employees of
    Mattel, Inc., and the general public.
11
                    Cross-Complaint.
12
              vs.
13
    MATTEL, INC.,
14  a Delaware corporation.

15                  Cross-Defendant.

16

17

18        Videotaped Deposition of PAULA GARCIA,

19  Volume 2, taken on behalf of Plaintiff and

20  Cross-Defendant, at 865 South Figueroa Street,

21  Tenth Floor, Los Angeles, California, beginning at

22  9:56 a.m. and ending at 8:21 p.m. on Friday, May

23  25, 2007 before David Ocanas, Certified Shorthand

24  Reporter No. 12567.

                        EXHIBIT 9
25
                        PAGE 125

                                                    301

```
 1   APPEARANCES:
 2
 3   For Mattel:
 4           QUINN, EMANUEL, URQUHART, OLIVER &
             HEDGES, LLP
 5           BY:  BRIDGET MORRIS
             Attorney at Law
 6           865 South Figueroa Street
             Tenth Floor
 7           Los Angeles, California 90017
             213-624-7707
 8           E-mail:  Michaelzeller@quinnemanuel.com
                      bridgetmorris@quinnemanuel.com
 9
     For MGA Entertainment:
10
11           O'MELVENY & MYERS LLP
             BY:  DIANA M. TORRES
             Attorney at Law
12           400 South Hope Street
             Los Angeles, California 90071-2899
13           (213) 430-6000
             E-mail:  Dtorres@omm.com
14
     For Carter Bryant:
15
16           KEKER & VAN NEST
             BY:  MICHAEL H. PAGE
             Attorney at Law
17           710 Sansome Street
             San Francisco, California 94111-1704
18           (415) 397-7188
             E-mail:  Mhp@kvn.com
19
     Also Present:
20
21           MICHAEL MOORE, Mattel
             DAPHNE GRONICH, MGA Entertainment
             CRAIG HOLDEN, MGA Entertainment
22
23
                              EXHIBIT __9__
24
25                            PAGE __126__
```

302

```
 1    APPEARANCES: (CONT'D)

 2

 3    Videographer:

 4            CHARLIE GUILLEN
              SARNOFF COURT REPORTERS
 5            AND LEGAL TECHNOLOGIES
              20 Corporate Park
 6            Irvine, California 92606
              (877) 955-3855
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                              EXHIBIT  9

25                              PAGE  127
```

303

1          MS. TORRES:  Objection, asked and

2     answered.

3          THE WITNESS:  I am not clear on my first

4     interaction with Steve.

18:06 5   BY MR. ZELLER:

6          Q   Did Mr. Linker work on the Hoppity

7     product?

8          A   Yes.

9          Q   Isn't it true that he worked on the

18:06 10   Hoppity product no later than August of 2000?

11          A   Yes.

12          Q   You'll agree with me that you contacted

13     Steve Linker prior to August of 2000, correct?

14          MS. TORRES:  Objection, misstates the

18:06 15   witness' testimony and asked and answered.

16          THE WITNESS:  I don't remember when I

17     contacted him.

18     BY MR. ZELLER:

19          Q   It was prior to his work on the Hoppity

18:06 20   project; is that correct?

21          A   It was in regards to the Hoppity project.

22          Q   Did Maureen Mullen recommend Steve Linker

23     to you?

24          A   Yes, that's my memory.

18:07 25          Q   Isn't it the case in the summer of 2000

EXHIBIT 9

PAGE 128

567

1    you called Steve Linker and told him that Maureen

2    Mullen had recommended him and that you had seen

3    his work on Diva Stars?

4            MS. TORRES:  Objection, compound.

18:07 5          THE WITNESS:  I don't remember that

6    conversation.

7    BY MR. ZELLER:

8        Q   Are you saying that it didn't occur, or

9    you're just not certain?

18:07 10         MS. TORRES:  Objection, compound.

11           THE WITNESS:  I'm not certain.

12   BY MR. ZELLER:

13       Q   It's true that by the summer of 2000 you

14   were aware of the Diva Stars project at Mattel;

18:07 15   isn't that correct?

16           MS. TORRES:  Objection, vague.

17           THE WITNESS:  I can't remember.

18   BY MR. ZELLER:

19       Q   You knew Maureen Mullen by the summer of

18:08 20   2000; isn't that correct?

21       A   Yes.

22       Q   And you knew by the summer of 2000 that

23   Maureen Mullen had worked on the Diva Stars

24·  project; isn't that correct?

18:08 25         MS. TORRES:  Objection, vague.   EXHIBIT  9

PAGE  129

568

```
 1              THE WITNESS:  Yes.
 2    BY MR. ZELLER:
 3         Q    And you had known by August of 2000 that
 4    Kami Gillmour worked on the Diva Stars project at
18:08 5   Mattel; isn't that correct?
 6              MS. TORRES:  Objection, vague, misstates
 7    the witness' testimony.
 8              THE WITNESS:  I don't remember Kami
 9    Gillmour working on the Diva Stars project at
18:08 10  Mattel.
11    BY MR. ZELLER:
12         Q    Who else do you know of who worked on the
13    Diva Stars project at Mattel?
14         A    The only person I remember working at
18:08 15  Mattel on the Diva Stars project was Rene Pasko.
16         Q    You knew that at the time you were at
17    Mattel, isn't that true?
18         A    Yes.
19         Q    So you knew about that prior to the time
18:09 20  you left in April of 2000 and went to MGA, correct?
21         A    Yes.
22         Q    What did Maureen Mullen say about Steve
23    Linker when she recommended to you that you contact
24    him?
18:09 25        A    I don't remember.
```

EXHIBIT  9

PAGE  130

PAULA GARCIA, V. 2                    05/25/07
CONFIDENTIAL ATTORNEYS' EYES ONLY

1    Q   You don't recall anything about that
2  conversation or communication with Maureen Mullen?
3    A   The only thing I can recall was speaking
4  about my interest to create graphically the letters
18:09 5  of the word Hoppity to look like of a rubber
6  material as if the letters were bouncing like
7  balls.
8    Q   It was during that conversation with
9  Maureen Mullen where she suggested Steve Linker as
18:10 10  a person who could work on that?
11    A   I am not sure, but I think that's probably
12  the case.
13    Q   At some point during your communications
14  with Steve Linker, did you mention to him that you
18:10 15  knew he had worked on Diva Stars?
16    A   I don't remember that conversation.
17    Q   You don't remember one way or the other
18  when that occurred; is that correct?
19    MS. TORRES:  Objection, asked and
18:10 20  answered.
21    THE WITNESS:  Correct.
22  BY MR. ZELLER:
23    Q   Was your first meeting with Steve Linker
24  in August of 2000 on the Hoppity project?
18:10 25    A   Can you be more specific with the word

EX 9
PAGE 131

570

```
 1

 2

 3

 4              I, the undersigned, a Certified

 5   Shorthand Reporter, do hereby certify:

 6              That the foregoing proceedings were

 7   taken before me at the time and place herein set

 8   forth; that any witness in the foregoing

 9   proceedings, prior to testifying, were placed under

10   oath; that a verbatim record of the proceedings was

11   made by me using machine shorthand which was

12   thereafter transcribed under my direction; further,

13   that the foregoing is an accurate transcription

14   thereof.

15              I further certify that I am neither

16   financially interested in the action nor a relative

17   or employee of any attorney of any of the parties.

18              IN WITNESS WHEREOF, I have this

19   date subscribed by name.

20

21   Dated:    MAY 3 0 2007

22

23             _____

24             DAVID OCANAS

25             CSR No. 12567
```

EXHIBIT 9

PAGE 132

**EXHIBIT 10**

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL,   )
                              )
          PLAINTIFF,     )
                              )
        V.           )    NO. CV 04-9040 SGL (RNBX)
                              )
MATTEL, INC., A DELAWARE   )
CORPORATION,           )
                              )
        DEFENDANTS.   )
_____)
                              )
AND CONSOLIDATED ACTION (S).   )
_____)


# C O N F I D E N T I A L

### (ATTORNEYS' EYES ONLY)

## DEPOSITION OF PAULA GARCIA

## OCTOBER 9, 2007



COURT REPORTERS

REPORTED BY:
J'ANA SIEGERS
CSR NO. 10845
JOB NO. 07AE633-JS

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT _10_

PAGE _133_

```
 1              UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3                   EASTERN DIVISION

 4

 5   CARTER BRYANT, AN INDIVIDUAL,)
                                  )  CASE NO.
 6              PLAINTIFF,        )  CV 04-9049 SGL (RNBX)
                                  )
 7      VS.                       )
                                  )
 8   MATTEL, INC., A DELAWARE     )
     CORPORATION,                 )
 9                                )
                DEFENDANT.        )
10                                )
     _____)
11                                )
     AND CONSOLIDATED ACTIONS.    )
12   _____)

13

14

15

16       CONFIDENTIAL - ATTORNEYS' EYES ONLY

17

18                  VOLUME III

19

20     VIDEOTAPED DEPOSITION OF PAULA GARCIA,

21   TAKEN ON BEHALF OF THE DEFENDANT, AT

22   865 SOUTH FIGUEROA STREET, TENTH FLOOR,

23   LOS ANGELES, CALIFORNIA, COMMENCING AT

24   9:49 A.M., TUESDAY, OCTOBER 9, 2007,

25   BEFORE J'ANA SIEGERS, CSR NUMBER 10845.
```

652

A & E Court Reporters     (213) 955-0070     Fax: (213) 955-0077

EXHIBIT 10

PAGE 134

| | | |
|---|---|---|
| 05:11:17 | 1 | A.    CORRECT. |
| 05:11:20 | 2 | Q.    SO THEN IF I ASKED YOU THE QUESTIONS ABOUT |
| 05:11:22 | 3 | "HAIR PLAY" AS USED IN THIS SENTENCE AND ASKED YOU |
| 05:11:28 | 4 | ABOUT THE CHANGEABLE HAIR, YOU'D GIVE ME THE SAME |
| 05:11:31 | 5 | ANSWERS? |
| 05:11:32 | 6 | A.    YES. |
| 05:11:36 | 7 | Q.    CONTINUING ON WITH THE "CONCEPT OVERVIEW" |
| 05:11:38 | 8 | SECTION IN EXHIBIT 923, SEE WHERE IT SAYS: |
| 05:11:43 | 9 | "THESE DOLLS WILL BE SOLD WITH |
| 05:11:44 | 10 | TWO OUTFITS AND HAIRSTYLES FOR BOTH |
| 05:11:47 | 11 | DAYTIME AND NIGHTTIME LOOKS"? |
| 05:11:53 | 12 | DO YOU SEE THAT? |
| 05:11:54 | 13 | A.    YES. |
| 05:11:55 | 14 | Q.    WAS IT YOUR DECISION THAT THIS IS HOW THE |
| 05:11:56 | 15 | DOLLS WOULD BE SOLD? |
| 05:11:57 | 16 | MS. TORRES:  OBJECTION.  VAGUE. |
| 05:12:04 | 17 | THE DEPONENT:  YES. |
| 05:12:05 | 18 | BY MR. ZELLER: |
| 05:12:06 | 19 | Q.    AND WAS THIS A CONCEPT THAT CARTER BRYANT |
| 05:12:08 | 20 | HAD COME UP WITH? |
| 05:12:13 | 21 | MS. TORRES:  OBJECTION.  VAGUE. |
| 05:12:17 | 22 | THE DEPONENT:  TRULY, I CAN'T REMEMBER. |
| 05:12:20 | 23 | BY MR. ZELLER: |
| 05:12:21 | 24 | Q.    DO YOU THINK YOU CAME UP WITH IT? |
| 05:12:24 | 25 | A.    I'M NOT SURE. |

872

EXHIBIT _10_

PAGE _135_

05:12:31   1      Q.   CONTINUING ON WITH THE SECOND PAGE OF

05:12:34   2   EXHIBIT 923, THIS "CONCEPT OVERVIEW" SECTION, WHERE

05:12:37   3   IT SAYS:

05:12:38   4          "CONSUMER CAN CHANGE THE

05:12:39   5      HAIRSTYLES, FASHION AND FEET (SCULPTED

05:12:44   6      SHOES THAT SNAP INTO LEG AT ANKLE) TO

05:12:48   7      MODIFY THE 'LOOK' OF HER DOLL."

05:12:49   8      DO YOU SEE THAT?

05:12:50.   9      A.   YES.

05:12:52  10      Q.   IS IT CORRECT THAT YOU WERE THE ONE WHO

05:12:54  11   MADE THE DECISION THAT THE BRATZ DOLLS WOULD HAVE

05:12:58  12   THIS CONCEPT?

05:13:00  13      A.   YES.

05:13:00  14      Q.   AND IS THIS A CONCEPT THAT CARTER BRYANT

05:13:03  15   CAME UP WITH?

05:13:07  16        MS. TORRES:  OBJECTION.  VAGUE.

05:13:13  17        THE DEPONENT:  YES.

05:13:15  18   BY MR. ZELLER:

05:13:29  19      Q.   I'M GOING TO SHOW YOU WHAT WAS PREVIOUSLY

05:13:30  20   MARKED AS EXHIBIT 305, WHICH IS AN E-MAIL FROM --

05:13:34  21   WELL, THE TOP E-MAIL IS FROM ISAAC LARIAN TO

05:13:39  22   VICTORIA O'CONNOR AND DENNIS MEDICI DATED

05:13:43  23   OCTOBER 10, 2000.  IT BEARS BATES NUMBER MGA 004717.

05:14:11  24      HAVE YOU LOOKED AT EXHIBIT 305?

05:14:14  25      A.   YES.

873

EXHIBIT 10

PAGE 136

| | | |
|---|---|---|
| 05:14:14 | 1 | Q.   DIRECTING YOUR ATTENTION TO THE THIRD |
| 05:14:20 | 2 | E-MAIL DOWN, IT'S THE ONE FROM PAULA TREANTAFELLES |
| 05:14:24 | 3 | TO VICTORIA O'CONNOR, THE SUBJECT "CARTER |
| 05:14:28 | 4 | COMPENSATION." DO YOU SEE THAT? |
| 05:14:30 | 5 | A.   YES. |
| 05:14:30 | 6 | Q.   IS THAT AN E-MAIL THAT YOU SENT TO |
| 05:14:31 | 7 | VICTORIA O'CONNOR ON OR ABOUT OCTOBER 10, 2000? |
| 05:14:36 | 8 | A.   YES. |
| 05:14:38 | 9 | Q.   UNDERNEATH THAT, IS THAT AN E-MAIL THAT |
| 05:14:43 | 10 | VICTORIA O'CONNOR SENT TO YOU ON OR ABOUT |
| 05:14:46 | 11 | OCTOBER 10, 2000? |
| 05:14:48 | 12 | A.   YES. |
| 05:14:49 | 13 | Q.   AND FOCUSING ON THAT E-MAIL FIRST, IN THAT |
| 05:14:52 | 14 | E-MAIL VICTORIA O'CONNOR ASKED YOU: |
| 05:14:55 | 15 | "PLEASE LET ME KNOW HOW MANY |
| 05:14:57 | 16 | HOURS CARTER HAS WORKED AND THE DAY HE |
| 05:14:59 | 17 | STARTED MEETINGS WITH YOU." |
| 05:15:01 | 18 | DO YOU SEE THAT? |
| 05:15:02 | 19 | A.   YES. |
| 05:15:02 | 20 | Q.   THIS IS REFERRING TO CARTER BRYANT, RIGHT? |
| 05:15:04 | 21 | A.   YES. |
| 05:15:06 | 22 | Q.   AND IN RESPONSE TO THAT E-MAIL, YOU SAID |
| 05:15:10 | 23 | TO VICTORIA O'CONNOR: |
| 05:15:12 | 24 | "I WOULD SAY THAT CARTER HAS |
| 05:15:13 | 25 | WORKED ON AVERAGE ABOUT 4 HOURS A DAY, |

874

EXHIBIT 10

PAGE 137

| | | |
|---|---|---|
| 05:15:15 | 1 | AND WE BEGAN WORKING ON THIS LINE THE |
| 05:15:18 | 2 | FIRST PART OF SEPTEMBER." |
| 05:15:19 | 3 | DO YOU SEE THAT? |
| 05:15:19 | 4 | A.   YES. |
| 05:15:21 | 5 | Q.   FOCUSING ON THIS PART WHERE IT SAYS, |
| 05:15:23 | 6 | "CARTER HAS WORKED ON AVERAGE ABOUT 4 HOURS A |
| 05:15:25 | 7 | DAY" -- |
| 05:15:26 | 8 | A.   YES. |
| 05:15:26 | 9 | Q.   -- WAS THAT A TRUE STATEMENT AS OF |
| 05:15:30 | 10 | OCTOBER 10, 2000? |
| 05:15:33 | 11 | A.   SITTING HERE TODAY, NO. |
| 05:15:37 | 12 | Q.   WELL, YOU BELIEVED IT TO BE TRUE WHEN YOU |
| 05:15:39 | 13 | SENT IT, RIGHT? |
| 05:15:39 | 14 | MS. TORRES:  OBJECTION.  MISSTATES THE |
| 05:15:41 | 15 | WITNESS'S TESTIMONY AND ARGUMENTATIVE. |
| 05:15:49 | 16 | THE DEPONENT:  I BELIEVE THAT I MISWROTE |
| 05:15:49 | 17 | OR MISTYPED THIS E-MAIL. |
| 05:15:49 | 18 | BY MR. ZELLER: |
| 05:15:50 | 19 | Q.   AND HOW DID YOU MISTYPE IT? |
| 05:15:54 | 20 | A.   MY INCORRECTION IS AS IT RELATES TO |
| 05:16:00 | 21 | 4 HOURS A DAY. |
| 05:16:04 | 22 | Q.   WELL, HOW IS THAT INACCURATE? |
| 05:16:06 | 23 | A.   IT'S IMPOSSIBLE FOR CARTER TO HAVE WORKED |
| 05:16:09 | 24 | 4 HOURS A DAY AT THIS TIME ON THE BRATZ CONCEPT. |
| 05:16:12 | 25 | Q.   AND WHY IS THAT? |

875

A & E Court Reporters      (213) 955-0070      Fax: (213) 955-0077

EXHIBIT 10

PAGE 138

| | | |
|---|---|---|
| 05:16:14 | 1 | A.   BECAUSE WE WERE NOT DOING ANYTHING -- WE |
| 05:16:22 | 2 | WERE NOT DESIGNING, WE WERE NOT DEVELOPING, WE WERE |
| 05:16:24 | 3 | NOT DOING ANYTHING AT THIS TIME AS IT RELATED TO THE |
| 05:16:27 | 4 | DESIGN AND DEVELOPMENT OF THE BRATZ DOLLS. |
| 05:16:31 | 5 | Q.   AND THAT'S YOUR BASIS FOR BELIEVING THAT, |
| 05:16:34 | 6 | THE STATEMENT THAT YOU MADE AS OF OCTOBER 10, 2000, |
| 05:16:37 | 7 | THAT "CARTER HAS WORKED ON AVERAGE ABOUT 4 HOURS A |
| 05:16:40 | 8 | DAY"? |
| 05:16:43 | 9 | A.   YES. |
| 05:16:44 | 10 | Q.   AND THIS REFERENCE HERE TO THAT "CARTER |
| 05:16:48 | 11 | HAS WORKED ON AVERAGE ABOUT 4 HOURS A DAY" BACK WHEN |
| 05:16:51 | 12 | YOU WROTE IT AS OF OCTOBER 10, 2000, YOU WERE |
| 05:16:54 | 13 | REFERRING TO THE AMOUNT OF WORK THAT HE DID ON THE |
| 05:16:56 | 14 | BRATZ LINE; IS THAT CORRECT? |
| 05:17:00 | 15 | MS. TORRES:   OBJECTION.   MISSTATES THE |
| 05:17:01 | 16 | WITNESS'S TESTIMONY. |
| 05:17:08 | 17 | THE DEPONENT:   YES. |
| 05:17:08 | 18 | BY MR. ZELLER: |
| 05:17:10 | 19 | Q.   THEN THE PART WHERE IT SAYS, "WE BEGAN |
| 05:17:12 | 20 | WORKING ON THIS LINE THE FIRST PART OF SEPTEMBER," |
| 05:17:14 | 21 | "THIS LINE" IS REFERRING TO BRATZ; IS THAT CORRECT? |
| 05:17:21 | 22 | A.   YES. |
| 05:17:32 | 23 | Q.   DID YOU EVER SEND A FOLLOW-UP E-MAIL TO |
| 05:17:35 | 24 | VICTORIA O'CONNOR, ISAAC LARIAN, OR ANYONE ELSE |
| 05:17:39 | 25 | RETRACTING THIS STATEMENT THAT YOU'D MADE ON |

876

EXHIBIT _10_

PAGE 139

1      <u>DEPOSITION OFFICER'S CERTIFICATE</u>

2

3   STATE OF CALIFORNIA    )
                           )   SS.

4   COUNTY OF ORANGE      )

5

6      I, J'ANA SIEGERS, HEREBY CERTIFY:

7      I AM A DULY QUALIFIED CERTIFIED SHORTHAND

8   REPORTER IN THE STATE OF CALIFORNIA, HOLDER OF

9   CERTIFICATE NUMBER CSR 10845 ISSUED BY THE COURT

10  REPORTERS BOARD OF CALIFORNIA AND WHICH IS IN FULL

11  FORCE AND EFFECT.  [FED. R. DIV. P. 28(A)].

12     I AM AUTHORIZED TO ADMINISTER OATHS OR

13  AFFIRMATIONS PURSUANT TO CALIFORNIA CODE OF CIVIL

14  PROCEDURE, SECTION 2093(B) AND PRIOR TO BEING

15  EXAMINED, THE DEPONENT WAS FIRST DULY SWORN BY ME.

16  [FED. R. CIV. P. 28(A), 30(F)(1)].

17     I AM NOT A RELATIVE OR EMPLOYEE OR ATTORNEY OR

18  COUNSEL OF ANY OF THE PARTIES, NOR AM I A RELATIVE

19  OR EMPLOYEE OF SUCH ATTORNEY OR COUNSEL, NOR AM I

20  FINANCIALLY INTERESTED IN THIS ACTION.

21  [FED. R. CIV. P. 28].

22     I AM THE DEPOSITION OFFICER THAT

23  STENOGRAPHICALLY RECORDED THE TESTIMONY IN THE

24  FOREGOING DEPOSITION AND THE FOREGOING TRANSCRIPT IS

25  A TRUE RECORD OF THE TESTIMONY GIVEN BY THE

960

EXHIBIT _10_

PAGE _140_

1   DEPONENT.   [FED. R. CIV. P. 30(F)(1)].

2        BEFORE COMPLETION OF THE DEPOSITION, REVIEW OF

3   THE TRANSCRIPT [X] WAS [ ] WAS NOT REQUESTED.   IF

4   REQUESTED, ANY CHANGES MADE BY THE DEPONENT (AND

5   PROVIDED TO THE REPORTER) DURING THE PERIOD ALLOWED

6   ARE APPENDED HERETO.   [FED. R. CIV. P. 30(E)].

7

8

9   DATED:   OCTOBER 21, 2007.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

961

EXHIBIT _10_

PAGE _141_

**EXHIBIT 11**

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL,   )
                                      )
          PLAINTIFF,   )
                                        )
     V.                        )    NO. CV 04-9040 SGL (RNBX)
                                        )
MATTEL, INC., A DELAWARE     )
CORPORATION,                 )
                                        )
         DEFENDANTS.   )
                                        )
AND CONSOLIDATED ACTION (S).   )

# C O N F I D E N T I A L

### (ATTORNEYS' EYES ONLY)

## DEPOSITION OF PAULA GARCIA

## VOLUME IV

## OCTOBER 10, 2007



COURT REPORTERS

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

REPORTED BY:
J'ANA SIEGERS
CSR NO. 10845
JOB NO. 07AE634-JS

EXHIBIT __11__

PAGE __142__

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF      RECEIVED

3              EASTERN DIVIS:       OCT 2 4 2007

4

5   CARTER BRYANT, AN INDIVIDUAL,)    CALENDARED

6                  PLAINTIFF,    ) CV 04-9049 SGL (RNBX)

7       VS.

8   MATTEL, INC., A DELAWARE
    CORPORATION,

9                  DEFENDANT.

10

11  AND CONSOLIDATED ACTIONS.

12

13

14

15

16      CONFIDENTIAL - ATTORNEYS' EYES ONLY

17

18              VOLUME IV

19

20      VIDEOTAPED DEPOSITION OF PAULA GARCIA,

21   TAKEN ON BEHALF OF THE DEFENDANT, AT

22   865 SOUTH FIGUEROA STREET, TENTH FLOOR,

23   LOS ANGELES, CALIFORNIA, COMMENCING AT

24   10:22 A.M., WEDNESDAY, OCTOBER 10, 2007,

25   BEFORE J'ANA SIEGERS, CSR NUMBER 10845.

EXHIBIT 11

PAGE 143                        963

```
 1   APPEARANCES OF COUNSEL:

 2

 3   FOR PLAINTIFF CARTER BRYANT:

 4        KEKER & VAN NEST, LLP
          BY:  MICHAEL H. PAGE, ESQ.
 5        710 SANSOME STREET
          SAN FRANCISCO, CALIFORNIA 94111
 6        (415) 391-5400
          MPAGE@KVN.COM
 7

 8

 9   FOR DEFENDANT MATTEL, INC.:

10        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
          BY:  MICHAEL T. ZELLER, ESQ.
11             BRIDGET HAULER, ESQ.
          865 SOUTH FIGUEROA STREET
12        TENTH FLOOR
          LOS ANGELES, CALIFORNIA 90017-2543
13        (213) 443-3000
          MICHAELZELLER@QUINNEMANUEL.COM
14        BRIDGETHAULER@QUINNEMANUEL.COM

15

16   FOR MGA ENTERTAINMENT, INC.:

17        O'MELVENY & MYERS, LLP
          BY:  DIANA M. TORRES, ESQ.
18        400 SOUTH HOPE STREET
          LOS ANGELES, CALIFORNIA 90071-2899
19        (213) 430-6000
          DTORRES@OMM.COM

20

21

22   ALSO PRESENT:

23        PETER ACHESON, JTV LITIGATION SERVICES, INC.

24        MICHAEL MOORE, MATTEL, INC.

25        RICH DANIELS, MGA ENTERTAINMENT, INC.
```

EXHIBIT ___11___

PAGE ___144___

964

| | | |
|---|---|---|
| 12:58:38 | 1 | WERE PERSONALLY INVOLVED IN THE VARIOUS THINGS THAT |
| 12:58:41 | 2 | ARE LISTED HERE, BUT ALSO THAT YOU HAVE KNOWLEDGE OF |
| 12:58:44 | 3 | THE CIRCUMSTANCES SURROUNDING THE CONCEPTION.  DO |
| 12:58:46 | 4 | YOU SEE THAT? |
| 12:58:48 | 5 | MS. TORRES:  OBJECTION.  VAGUE. |
| 12:58:50 | 6 | THE DEPONENT:  YES. |
| 12:58:50 | 7 | BY MR. ZELLER: |
| 12:58:51 | 8 | Q.   DO YOU HAVE ANY KNOWLEDGE APART FROM WHAT |
| 12:58:54 | 9 | YOU ALREADY TOLD ME IN TERMS OF YOUR PERSONAL |
| 12:58:56 | 10 | INVOLVEMENT IN THE VARIOUS THINGS THAT ARE LISTED |
| 12:58:57 | 11 | HERE IN PARAGRAPH 2? |
| 12:59:01 | 12 | MS. TORRES:  OBJECTION.  VAGUE.  CALLS FOR |
| 12:59:03 | 13 | A NARRATIVE. |
| 12:59:04 | 14 | THE DEPONENT:  NO. |
| 12:59:04 | 15 | BY MR. ZELLER: |
| 12:59:06 | 16 | Q.   THEY'RE ONE AND THE SAME IN THIS |
| 12:59:07 | 17 | PARAGRAPH, RIGHT?  YOUR PERSONAL INVOLVEMENT AND |
| 12:59:10 | 18 | YOUR KNOWLEDGE THAT YOU'RE REFERRING TO HERE? |
| 12:59:13 | 19 | MS. TORRES:  OBJECTION.  VAGUE. |
| 12:59:14 | 20 | MISCHARACTERIZES THE DOCUMENT. |
| 12:59:32 | 21 | THE DEPONENT:  YES. |
| 12:59:35 | 22 | BY MR. ZELLER: |
| 12:59:36 | 23 | Q.   WHAT DID YOU MEAN BY "INDEPENDENTLY |
| 12:59:38 | 24 | CONCEIVED" HERE IN PARAGRAPH 2? |
| 12:59:54 | 25 | A.   I BELIEVE THAT -- I BELIEVE THAT -- WHAT I |

EXHIBIT  11

PAGE  140

1079

| 01:00:02 | 1 | UNDERSTAND IT TO BE, THAT "INDEPENDENTLY CONCEIVED" |
| 01:00:04 | 2 | IS THAT EACH ONE OF THE LISTED ABOVE WERE CONCEIVED |
| 01:00:10 | 3 | SEPARATE OF -- ARE INDIVIDUAL CONCEPTIONS SEPARATE |
| 01:00:13 | 4 | FROM ONE ANOTHER. |
| 01:00:13 | 5 | Q.   I'M SORRY.   SEPARATE FROM? |
| 01:00:15 | 6 | A.   ONE ANOTHER. |
| 01:00:16 | 7 | Q.   ONE ANOTHER OF WHAT? |
| 01:00:20 | 8 | A.   ONE ANOTHER OF WHAT IS LISTED ABOVE HERE. |
| 01:00:25 | 9 | Q.   SO THAT THE -- YOU'RE SAYING THAT THE |
| 01:00:27 | 10 | BRATZ PRODUCT LINE -- I'M SORRY.   LET ME REPHRASE |
| 01:00:31 | 11 | THAT. |
| 01:00:32 | 12 | SO YOU'RE SAYING THAT THE DESIGN FEATURES, |
| 01:00:34 | 13 | THE PACKAGING, THE MARK, AND THE OTHER MARKS WERE |
| 01:00:37 | 14 | CONCEIVED OF INDEPENDENTLY OF ONE ANOTHER? |
| 01:00:42 | 15 | MS. TORRES:  OBJECTION.   VAGUE.   MISSTATES |
| 01:00:43 | 16 | THE WITNESS'S TESTIMONY. |
| 01:00:49 | 17 | THE DEPONENT:  YES. |
| 01:00:50 | 18 | BY MR. ZELLER: |
| 01:00:50 | 19 | Q.   ANY OTHER MEANING THAT YOU UNDERSTOOD THAT |
| 01:00:53 | 20 | PHRASE TO HAVE? |
| 01:00:55 | 21 | A.   NO. |
| 01:01:03 | 22 | Q.   AT ANY TIME DID ANYONE AT MGA CONSIDER |
| 01:01:09 | 23 | CALLING THE BRATZ LINE, B-R-A-T-Z, BY THE NAME |
| 01:01:13 | 24 | "BRATS," B-R-A-T-S? |
| 01:01:17 | 25 | MS. TORRES:  OBJECTION.   LACK OF |

EXHIBIT 11

PAGE 146

1080

| | | |
|---|---|---|
| 01:01:18 | 1 | FOUNDATION.  CALLS FOR SPECULATION. |
| 01:01:27 | 2 | THE DEPONENT:  I BELIEVE SO. |
| 01:01:29 | 3 | BY MR. ZELLER: |
| 01:01:29 | 4 | Q.   AND IN WHAT CONTEXT DO YOU RECALL THAT. |
| 01:01:32 | 5 | BEING RAISED? |
| 01:01:35 | 6 | A.   IT'S VERY -- MY MEMORY'S VERY VAGUE, BUT I |
| 01:01:40 | 7 | BELIEVE IT WAS A CONSIDERATION IN THE -- IN THE |
| 01:01:52 | 8 | PERIOD IN WHICH THAT WE WERE CONSIDERING ALL NAME |
| 01:01:55 | 9 | OPTIONS FOR BRATZ. |
| 01:02:00 | 10 | Q.   WAS THERE A PARTICULAR PERSON THERE AT MGA |
| 01:02:03 | 11 | WHO SUGGESTED "BRATS," B-R-A-T-S, AS A NAME FOR THE |
| 01:02:10 | 12 | LINE? |
| 01:02:12 | 13 | A.   I DON'T REMEMBER A SPECIFIC PERSON.  IT IS |
| 01:02:16 | 14 | POSSIBLE -- IT'S POSSIBLE, BUT I'M NOT SURE THAT IT |
| 01:02:21 | 15 | MAY HAVE BEEN CHARLES O'CONNOR. |
| 01:02:22 | 16 | Q.   AND CHARLES O'CONNOR, AS WE TALKED ABOUT |
| 01:02:25 | 17 | BEFORE, WAS A COPY WRITER WHO WORKED ON BRATZ |
| 01:02:30 | 18 | PACKAGING BACK IN 2000? |
| 01:02:32 | 19 | A.   YES. |
| 01:02:33 | 20 | Q.   IS IT YOUR BEST RECOLLECTION THAT THESE |
| 01:02:36 | 21 | DISCUSSIONS OF "BRATS," B-R-A-T-S, AS A POTENTIAL |
| 01:02:40 | 22 | NAME FOR THE LINE OCCURRED IN 2000? |
| 01:02:48 | 23 | MS. TORRES:  OBJECTION.  CALLS FOR |
| 01:02:48 | 24 | SPECULATION. |
| 01:02:51 | 25 | THE DEPONENT:  IT IS POSSIBLE.  I DON'T |

EXHIBIT _11_

PAGE _147_

1081

| | | |
|---|---|---|
| 01:02:52 | 1 | REMEMBER. |
| 01:02:52 | 2 | BY MR. ZELLER: |
| 01:02:53 | 3 | Q.   IS IT YOUR BEST RECOLLECTION THAT IT |
| 01:02:55 | 4 | STARTED IN 2000 AT SOME POINT? |
| 01:03:02 | 5 | A.   I BELIEVE SO, BUT I AM NOT SURE. |
| 01:03:09 | 6 | Q.   I TAKE IT THAT THE FIRST TIME ANYONE |
| 01:03:15 | 7 | RAISED "BRATS" AS A POSSIBLE NAME -- AGAIN, |
| 01:03:17 | 8 | B-R-A-T-S -- WAS SOMETIME SUBSEQUENT TO CARTER |
| 01:03:23 | 9 | BRYANT'S INITIAL PITCH TO MGA FOR THE LINE? |
| 01:03:28 | 10 | A.   SOMETIME AFTER? |
| 01:03:29 | 11 | Q.   RIGHT. |
| 01:03:29 | 12 | A.   YES. |
| 01:03:37 | 13 | Q.   DID CHARLES O'CONNOR CREATE ANY KIND OF |
| 01:03:40 | 14 | LIST, THAT YOU RECALL, OF POTENTIAL NAMES THAT HE |
| 01:03:43 | 15 | WAS PROPOSING OR SUGGESTING OR BRAINSTORMING ON FOR |
| 01:03:46 | 16 | BRATZ? |
| 01:03:49 | 17 | A.   I BELIEVE SO, YES. |
| 01:03:55 | 18 | Q.   DO YOU RECALL RECEIVING THAT BY AN E-MAIL? |
| 01:03:59 | 19 | A.   YES. |
| 01:04:10 | 20 | Q.   SO I'M CLEAR ON THIS, YOU BELIEVE THAT -- |
| 01:04:14 | 21 | OR STRIKE THAT. |
| 01:04:16 | 22 | CHARLES O'CONNOR IN AN E-MAIL AT SOME |
| 01:04:18 | 23 | POINT SUGGESTED "BRATS," B-R-A-T-S, AS A NAME.  BUT |
| 01:04:23 | 24 | IF I UNDERSTAND YOUR OTHER TESTIMONY CORRECTLY, |
| 01:04:25 | 25 | YOU'RE NOT SURE WHETHER HE WAS THE ONE WHO ACTUALLY |

EXHIBIT __11__

PAGE __148__

1082

| | | |
|---|---|---|
| 01:25:52 | 1 | LOOKED AND HER UNDERSTANDING AS TO HOW THEY'RE |
| 01:25:57 | 2 | PERFORMING. |
| 01:26:02 | 3 | Q.   AND WHAT'S YOUR UNDERSTANDING AS TO HOW |
| 01:26:05 | 4 | MAUREEN MULLEN KNEW PRIOR TO THAT POINT THAT YOU |
| 01:26:07 | 5 | WERE INVOLVED WITH THE BRATZ LINE? |
| 01:26:21 | 6 | A.   I DON'T -- I DON'T KNOW.   I CAN'T BE SURE, |
| 01:26:22 | 7 | ACTUALLY. |
| 01:26:25 | 8 | Q.   IS IT YOUR BEST RECOLLECTION THAT YOU'D |
| 01:26:27 | 9 | MENTIONED IT TO HER PRIOR TO THAT TIME? |
| 01:26:32 | 10 | A.   I DON'T REMEMBER. |
| 01:26:34 | 11 | Q.   BACK IN THE 2000 TIME PERIOD, YOU WERE |
| 01:26:36 | 12 | WORKING WITH MAUREEN MULLEN, RIGHT? |
| 01:26:40 | 13 | A.   YES. |
| 01:26:42 | 14 | Q.   AND YOU SAW HER SOCIALLY DURING THAT TIME |
| 01:26:45 | 15 | PERIOD TOO? |
| 01:26:50 | 16 | A.   IT'S POSSIBLE.   I DON'T REMEMBER. |
| 01:26:53 | 17 | Q.   THERE HAVE BEEN PERIODS OF TIME WHERE |
| 01:26:55 | 18 | YOU'VE SEEN MAUREEN MULLEN SOCIALLY, RIGHT? |
| 01:27:01 | 19 | A.   YES. |
| 01:27:03 | 20 | Q.   IS IT YOUR BEST RECOLLECTION AT SOME POINT |
| 01:27:06 | 21 | DURING THE YEAR 2000 YOU MENTIONED TO MAUREEN WHAT |
| 01:27:10 | 22 | YOU WERE WORKING ON, NAMELY, THE BRATZ LINE? |
| 01:27:15 | 23 | MS. TORRES:   OBJECTION.   ASKED AND |
| 01:27:16 | 24 | ANSWERED. |
| 01:27:22 | 25 | THE DEPONENT:   I DON'T REMEMBER SPEAKING |

EXHIBIT __11__

PAGE __149__

1098

| | | |
|---|---|---|
| 01:27:22 | 1 | TO MAUREEN ABOUT THE BRATZ LINE IN THE YEAR 2000. |
| 01:27:26 | 2 | BY MR. ZELLER: |
| 01:27:31 | 3 | Q.   AT ANY TIME PRIOR -- OR EXCUSE ME. |
| 01:27:33 | 4 | AT ANY TIME DURING THE YEAR 2000 OR PRIOR |
| 01:27:37 | 5 | TO THE YEAR 2000, DID YOU DISCUSS WITH MAUREEN |
| 01:27:40 | 6 | MULLEN THE DIVA STARZ LINE? |
| 01:27:44 | 7 | MS. TORRES:  OBJECTION.  ASKED AND |
| 01:27:48 | 8 | ANSWERED. |
| 01:27:53 | 9 | THE DEPONENT:  PRIOR TO -- |
| 01:27:53 | 10 | BY MR. ZELLER: |
| 01:27:54 | 11 | Q.   IN 2000 OR BEFORE. |
| 01:27:56 | 12 | A.   YES. |
| 01:27:57 | 13 | Q.   WHEN DID YOU FIRST SPEAK WITH MAUREEN |
| 01:27:59 | 14 | MULLEN ABOUT DIVA STARZ? |
| 01:28:07 | 15 | A.   I REMEMBER ONE CONVERSATION WITH MAUREEN |
| 01:28:09 | 16 | MULLEN AS IT RELATED TO DIVA STARZ. |
| 01:28:13 | 17 | Q.   DID YOU HAVE A CONVERSATION WITH HER PRIOR |
| 01:28:15 | 18 | TO THE TIME YOU LEFT MATTEL IN APRIL OF 2000? |
| 01:28:20 | 19 | A.   YES. |
| 01:28:21 | 20 | Q.   AND THAT'S THE CONVERSATION YOU REMEMBER? |
| 01:28:23 | 21 | A.   YES. |
| 01:28:24 | 22 | Q.   AND WHAT WAS THE CONVERSATION THAT YOU HAD |
| 01:28:26 | 23 | WITH MAUREEN MULLEN ABOUT DIVA STARZ? |
| 01:28:32 | 24 | MS. TORRES:  OBJECTION.  VAGUE. |
| 01:28:35 | 25 | THE DEPONENT:  THE CONVERSATION I REMEMBER |

EXHIBIT __11__

PAGE __150__                    1099

| | |
|---|---|
| 01:28:38 | 1 WAS IN REGARDS TO -- I JUST REMEMBER FEELING VERY |
| 01:28:44 | 2 CONCERNED FOR HER. |
| 01:28:50 | 3 BY MR. ZELLER: |
| 01:28:51 | 4 Q. AND WHY WERE YOU CONCERNED FOR HER? |
| 01:28:54 | 5 A. I REMEMBER HER BEING VERY STRESSED OUT, |
| 01:28:57 | 6 THAT SHE -- MAINLY HER HAIR WAS FALLING OUT AND -- |
| 01:29:12 | 7 DUE TO WHAT SHE BELIEVED WAS HER STRESS. |
| 01:29:16 | 8 Q. FROM WORKING ON THE PROJECT? |
| 01:29:17 | 9 A. YES. |
| 01:29:19 | 10 Q. AND DID MAUREEN MULLEN TELL YOU WHAT SHE |
| 01:29:24 | 11 DID ON THE BRATZ -- OR EXCUSE ME. STRIKE THAT. |
| 01:29:31 | 12 A. OUCH. |
| 01:29:32 | 13 Q. DID MAUREEN TELL YOU WHAT SHE WAS DOING ON |
| 01:29:42 | 14 THE DIVA STARZ PROJECT? |
| 01:29:42 | 15 A. OKAY. THE CONVERSATION I HAD WITH HER WAS |
| 01:29:43 | 16 REGARDING PROGRAMMING AND FLOWCHARTING. NOTHING |
| 01:29:50 | 17 SPECIFIC. JUST THAT I BELIEVE IT WAS THIS MOSTLY |
| 01:29:57 | 18 THAT CAUSED HER STRESS, AND MOSTLY, I THINK, BECAUSE |
| 01:30:08 | 19 IT WAS SOMEWHAT NEW TO HER IN TERMS OF DEVELOPMENT. |
| 01:30:12 | 20 Q. DOING THE PROGRAMMING AND THE LIKE? |
| 01:30:16 | 21 A. YES. |
| 01:30:16 | 22 AND ALSO THAT -- I BELIEVE IN -- |
| 01:30:17 | 23 COMPOUNDED WITH THE PROGRAMMING AND FLOWCHARTING, |
| 01:30:22 | 24 SHE -- I REMEMBER THERE BEING A SENSE OF URGENCY, |
| 01:30:27 | 25 YOU KNOW, SPEED, QUICK, "NEED TO COMPLETE QUICK" |

EXHIBIT __ll__

PAGE __151__            1100

| | | |
|---|---|---|
| 01:38:49 | 1 | MS. TORRES:  OBJECTION.  MISCHARACTERIZES |
| 01:38:52 | 2 | THE WITNESS'S TESTIMONY.  ASSUMES FACTS NOT IN |
| 01:38:53 | 3 | EVIDENCE. |
| 01:38:54 | 4 | THE DEPONENT:  YES. |
| 01:38:58 | 5 | BY MR. ZELLER: |
| 01:38:58 | 6 | Q.   BACK IN 2000, DID YOU HAVE DIRECT CONTACT |
| 01:39:02 | 7 | WITH LIZ HOGAN? |
| 01:39:04 | 8 | MS. TORRES:  OBJECTION.  VAGUE. |
| 01:39:12 | 9 | THE DEPONENT:  I DON'T REMEMBER. |
| 01:39:17 | 10 | BY MR. ZELLER: |
| 01:39:17 | 11 | Q.   SO YOU MIGHT HAVE, MIGHT NOT HAVE, BUT |
| 01:39:18 | 12 | YOU'RE NOT SURE? |
| 01:39:19 | 13 | A.   NO. |
| 01:39:34 | 14 | Q.   DID MAUREEN MULLEN EVER MENTION TO YOU |
| 01:39:36 | 15 | THAT STEVE LINKER WORKED ON DIVA STARZ? |
| 01:39:41 | 16 | MS. TORRES:  OBJECTION.  ASKED AND |
| 01:39:42 | 17 | ANSWERED. |
| 01:39:45 | 18 | THE DEPONENT:  YES. |
| 01:39:45 | 19 | BY MR. ZELLER: |
| 01:39:46 | 20 | Q.   AND WHEN DID SHE MENTION THAT TO YOU? |
| 01:39:50 | 21 | A.   I BELIEVE IT WAS IN 2- -- 2000. |
| 01:39:59 | 22 | Q.   WAS THIS AT THE TIME WHEN MAUREEN MULLEN |
| 01:40:03 | 23 | WAS SUGGESTING TO YOU OR RECOMMENDING TO YOU THAT |
| 01:40:07 | 24 | STEVE LINKER MIGHT BE SOMEONE WHO WOULD WORK ON |
| 01:40:10 | 25 | BRATZ? |

EXHIBIT _11_

PAGE _152_                              1108

| | | |
|---|---|---|
| 01:40:10 | 1 | MS. TORRES:  OBJECTION.  ASKED AND |
| 01:40:15 | 2 | ANSWERED.  MISCHARACTERIZES THE WITNESS'S TESTIMONY. |
| 01:40:18 | 3 | THE DEPONENT:  ACTUALLY, TO BE CLEAR, I -- |
| 01:40:23 | 4 | GOSH.  MAUREEN RECOMMENDED STEVE AS IT RELATED TO -- |
| 01:40:34 | 5 | NOT TO BRATZ. |
| 01:40:36 | 6 | BY MR. ZELLER: |
| 01:40:36 | 7 | Q.  I SEE. |
| 01:40:36 | 8 | SO THE ORIGINAL OR INITIAL RECOMMENDATION |
| 01:40:40 | 9 | THAT SHE MADE WAS IN RELATIONSHIP TO HOPPITY BABY? |
| 01:40:48 | 10 | MS. TORRES:  OBJECTION.  ASKED AND |
| 01:40:48 | 11 | ANSWERED. |
| 01:40:53 | 12 | THE DEPONENT:  IT WAS -- IT'S -- NO. |
| 01:40:58 | 13 | BY MR. ZELLER: |
| 01:40:58 | 14 | Q.  IT WAS JUST IN GENERAL? |
| 01:41:00 | 15 | MS. TORRES:  OBJECTION.  MISSTATES THE |
| 01:41:01 | 16 | WITNESS'S TESTIMONY.  ASKED AND ANSWERED. |
| 01:41:04 | 17 | THE DEPONENT:  NO. |
| 01:41:04 | 18 | BY MR. ZELLER: |
| 01:41:05 | 19 | Q.  PLEASE TELL ME -- WELL, MAYBE WE'LL JUST |
| 01:41:11 | 20 | TAKE THIS IN SMALLER STEPS.  I WAS TRYING TO SORT OF |
| 01:41:14 | 21 | MOVE ALONG, BUT... |
| 01:41:15 | 22 | AT SOME POINT MAUREEN MULLEN RECOMMENDED |
| 01:41:20 | 23 | STEVE LINKER AS SOMEONE WHO MIGHT DO WORK FOR MGA, |
| 01:41:23 | 24 | RIGHT? |
| 01:41:24 | 25 | A.  YES. |

EXHIBIT _11_

PAGE _153_

1109

| | | |
|---|---|---|
| 01:41:25 | 1 | Q.   AND WAS THAT SOMETHING THAT YOU ASKED HER |
| 01:41:29 | 2 | A RECOMMENDATION FOR, OR DID SHE JUST RAISE IT? |
| 01:41:31 | 3 | MS. TORRES:   OBJECTION.   ASKED AND |
| 01:41:32 | 4 | ANSWERED. |
| 01:41:33 | 5 | THE DEPONENT:   I BELIEVE THAT I REQUESTED |
| 01:41:35 | 6 | IT. |
| 01:41:35 | 7 | BY MR. ZELLER: |
| 01:41:37 | 8 | Q.   SO SHE SUGGESTED STEVE LINKER.  WAS IT IN |
| 01:41:40 | 9 | THAT INITIAL CONVERSATION THAT YOU HAD WITH MAUREEN |
| 01:41:44 | 10 | MULLEN ABOUT STEVE LINKER THAT SHE MENTIONED HE HAD |
| 01:41:48 | 11 | DONE WORK ON DIVA STARZ? |
| 01:41:51 | 12 | A.   YES. |
| 01:41:53 | 13 | Q.   AND WHEN YOU AND MAUREEN WERE DISCUSSING |
| 01:42:02 | 14 | THIS POSSIBILITY OF STEVE LINKER DOING SOME WORK FOR |
| 01:42:04 | 15 | MGA, WAS IT IN RELATIONSHIP TO A PARTICULAR PRODUCT |
| 01:42:08 | 16 | AT THAT POINT? |
| 01:42:09 | 17 | MS. TORRES:   OBJECTION.   ASKED AND |
| 01:42:10 | 18 | ANSWERED. |
| 01:42:10 | 19 | THE DEPONENT:   YES. |
| 01:42:11 | 20 | BY MR. ZELLER: |
| 01:42:12 | 21 | Q.   WHAT WAS THE PRODUCT? |
| 01:42:13 | 22 | A.   SCOOTER SAMANTHA. |
| 01:42:22 | 23 | Q.   DID MAUREEN TELL YOU IN THAT CONVERSATION |
| 01:42:24 | 24 | OR ANY OTHER CONVERSATION WHAT IT WAS THAT STEVE |
| 01:42:26 | 25 | LINKER DID ON DIVA STARZ? |

EXHIBIT  11

PAGE  154                              1110

| | | |
|---|---|---|
| 01:43:53 | 1 | Q.    WHEN YOU SAY "IT'S POSSIBLE," IS THAT JUST |
| 01:43:55 | 2 | A PURE GUESS OR IS THAT YOUR BEST RECOLLECTION? |
| 01:44:01 | 3 | A.    THAT IS MY BEST RECOLLECTION. |
| 01:44:05 | 4 | Q.    IT'S FAIR TO SAY THAT YOU CAN'T THINK OF, |
| 01:44:07 | 5 | OFFHAND, ANY OTHER SOURCE OF FIRST LEARNING ABOUT |
| 01:44:11 | 6 | LIZ HOGAN OTHER THAN STEVE LINKER, RIGHT? |
| 01:44:15 | 7 | A.    IT'S POSSIBLE THAT I MIGHT HAVE LEARNED OF |
| 01:44:17 | 8 | HER IN ONE OTHER WAY. |
| 01:44:19 | 9 | Q.    AND WHAT WOULD BE THE OTHER WAY? |
| 01:44:21 | 10 | A.    IT'S POSSIBLE THAT I MIGHT HAVE LEARNED OF |
| 01:44:24 | 11 | HER THROUGH AN E-MAIL. |
| 01:44:29 | 12 | Q.    AND WHAT E-MAIL WAS THAT? |
| 01:44:36 | 13 | A.    IT MAY HAVE -- MAY HAVE BEEN THAT SHE |
| 01:44:40 | 14 | SUBMITTED P.O. OR INVOICE INFORMATION ON BEHALF OF |
| 01:44:46 | 15 | STEVE'S WORK FOR -- FOR THE PROJECT.  I CAN'T -- I |
| 01:44:53 | 16 | CAN'T BE SURE. |
| 01:44:56 | 17 | Q.    ARE THERE ANY OTHER SOURCES THAT COME TO |
| 01:44:58 | 18 | MIND, OTHER THAN WHAT YOU'VE MENTIONED, AS TO HOW |
| 01:45:00 | 19 | YOU FIRST LEARNED ABOUT LIZ HOGAN? |
| 01:45:04 | 20 | A.    NO. |
| 01:45:10 | 21 | Q.    AT SOME POINT DID YOU LEARN THAT STEVE |
| 01:45:14 | 22 | LINKER HAD ACTUALLY WORKED AS A MATTEL EMPLOYEE? |
| 01:45:23 | 23 | A.    I DON'T REMEMBER THAT, NO. |
| 01:45:28 | 24 | Q.    ARE YOU AWARE OF THAT FACT TODAY? |
| 01:45:30 | 25 | A.    NO. |

EXHIBIT __11__

PAGE __155__                          1112

```
 1              (DISCUSSION HELD OFF THE RECORD.)

 2              (LUNCHEON RECESS TAKEN FROM

 3         1:46 P.M. TO 2:46 P.M.)

 4    ///

 5    ///

 6    ///

 7    ///

 8    ///

 9    ///

10    ///

11    ///

12    ///

13    ///

14    ///

15    ///

16    ///

17    ///

18    ///

19    ///

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///
```

EXHIBIT __11__

PAGE __157__

1114

| | | |
|---|---|---|
| 01:45:30 | 1 | MR. PAGE:  OBJECT.  IT ASSUMES FACTS. |
| 01:45:33 | 2 | MS. TORRES:  YEAH. |
| 01:45:34 | 3 | THE DEPONENT:  SORRY. |
| 01:45:34 | 4 | NO. |
| 01:45:34 | 5 | BY MR. ZELLER: |
| 01:45:41 | 6 | Q.   AS OF THE TIME WHEN YOU FIRST HAD ANY |
| 01:45:46 | 7 | CONTACT WITH STEVE LINKER BACK THERE IN 2000, WERE |
| 01:45:49 | 8 | YOU AWARE AS TO WHETHER OR NOT HE HAD BEEN A |
| 01:45:51 | 9 | DESIGNER AT ANY TOY COMPANY? |
| 01:45:54 | 10 | A.   NO. |
| 01:46:00 | 11 | Q.   I TAKE IT THAT AS OF THE TIME WHEN YOU |
| 01:46:02 | 12 | FIRST HAD CONTACT WITH STEVE LINKER, YOU WERE |
| 01:46:04 | 13 | GENERALLY AWARE HE HAD WORKED ON THE MATTEL |
| 01:46:07 | 14 | DIVA STARZ PROJECT, RIGHT? |
| 01:46:08 | 15 | MS. TORRES:  OBJECTION.  VAGUE. |
| 01:46:13 | 16 | THE DEPONENT:  YES. |
| 01:46:15 | 17 | BY MR. ZELLER: |
| 01:46:15 | 18 | Q.   WERE YOU AWARE OF ANY OTHER PROJECTS THAT |
| 01:46:17 | 19 | HE HAD WORKED ON AS OF THAT TIME? |
| 01:46:19 | 20 | A.   NO. |
| 01:46:34 | 21 | MR. ZELLER:  WANT TO GO OFF THE RECORD FOR |
| 01:46:35 | 22 | A SECOND? |
| 01:46:36 | 23 | MS. TORRES:  SURE. |
| 01:46:36 | 24 | THE VIDEOGRAPHER:  THE TIME IS 1:46 P.M., |
| 01:46:39 | 25 | AND WE ARE OFF THE RECORD. |

EXHIBIT  11

PAGE  156

1113

```
 1    DEPONENT.   [FED. R. CIV. P. 30(F)(1)].

 2         BEFORE COMPLETION OF THE DEPOSITION, REVIEW OF

 3    THE TRANSCRIPT [X] WAS [ ] WAS NOT REQUESTED.  IF

 4    REQUESTED, ANY CHANGES MADE BY THE DEPONENT (AND

 5    PROVIDED TO THE REPORTER) DURING THE PERIOD ALLOWED

 6    ARE APPENDED HERETO.  [FED. R. CIV. P. 30(E)].

 7

 8

 9    DATED:  OCTOBER 23, 2007.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT __11__

PAGE __158__

1329

**EXHIBIT 12**

UNITED STATES DISTRICT COURT
DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an Individual,

Plaintiff,

Case No.
CV 04-9049 SGL

-against-

MATTEL INC., a Delaware corporation,

Defendant.

**CERTIFIED COPY**

HIGHLY CONFIDENTIAL

Videotaped Deposition of ERICH JOACHIMSTHALER, Ph.D., taken by Defendant, on Wednesday, March 26, 2008, at 9:17 a.m., pursuant to notice, at the offices of Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP, 51 Madison Avenue, New York, New York, before SUZANNE PASTOR, a Shorthand Reporter and Notary Public within and for the State of New York.

JOB No. 84797

EXHIBIT 12
PAGE 159

```
 1    A P P E A R A N C E S:

 2        SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
          Attorneys for Plaintiff
 3               300 South Grand Avenue
                 Los Angeles, California 90071-3144
 4
          BY:    CARL ALAN ROTH, ESQ.
 5
                 (213) 687-5000
 6               croth@skadden.com

 7

 8        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
          Attorneys for Defendant Mattel Inc.
 9               51 Madison Avenue
                 New York, New York 10010
10
          BY:    JEFFREY A. CONCIATORI, ESQ.
11
                 (212) 849-7000
12               jeffreyconciatori@quinnemanuel.com

13

14

15

16    ALSO PRESENT:

17
          THOMAS DEL VECCHIO, Videographer
18

19

20

21

22

23

24

25
```

                                                            2

EXHIBIT __12__

PAGE __100__

14:47:13   1    really.

14:47:15   2        Q.      Did you or did you not ask to speak

14:47:17   3    with him?

14:47:18   4        A.      No, I don't think I ever asked for

14:47:22   5    it.  I think it was one of these things that I

14:47:25   6    assume he is -- I asked to meet with somebody at

14:47:32   7    MGA to understand how this all evolved.  And

14:47:37   8    then the person that was there around was Paula

14:47:48   9    Garcia.  That's how I studied that whole matter.

14:48:08  10        Q.      In your discussion of proactive

14:48:11  11    brand management in your report, you mention the

14:48:15  12    organizational structure and processes in place

14:48:17  13    at MGA.  And you describe them generally as a

14:48:26  14    "loose and intuitive process."

14:48:29  15        A.      Yes.

14:48:33  16        Q.      How, if at all, does the fact that

14:48:35  17    the MGA organizational structure and processes

14:48:38  18    in your view being loose and intuitive affect

14:48:45  19    that company's ability to develop a brand?

14:48:52  20        A.      You have to understand what

14:48:53  21    creative cultures are all about.  In a culture

14:48:57  22    such as -- in a market like this, to succeed two

14:49:04  23    times a year, to produce collection after

14:49:08  24    collection.  Today there are two collections a

14:49:11  25    year.  In some markets such as the doll market,

EXHIBIT __12__

PAGE ___161___

ERICH JOACHIMSTHALER                          03/26/08
HIGHLY CONFIDENTIAL

```
14:49:14   1    if you take fashion markets, today you have per
14:49:20   2    year eight collections.
14:49:21   3             So you have to understand that a
14:49:23   4    designer, a marketing person, a merchandising
14:49:27   5    person and very different people have to come
14:49:30   6    together in a very creative environment.  And in
14:49:34   7    some markets there are eight collections a year.
14:49:37   8    They have to produce again and again and again a
14:49:40   9    success.
14:49:41  10             And in order to manage a creative
14:49:45  11    organization, you need, unlike maybe a company
14:49:50  12    like GE or Procter & Gamble, large companies,
14:49:55  13    you need to have a certain creative process in
14:49:58  14    this kind of organization.
14:50:00  15             And so the loose, almost intuitive
14:50:04  16    approach to managing the brand and win again and
14:50:12  17    again with one collection, accessories,
14:50:15  18    products, licensing in a very, very, very fast
14:50:19  19    pace environment, that's how this kind of
14:50:21  20    organization helps to win.
14:50:27  21             The reason why this is so important
14:50:29  22    is because the context of the brand changes all
14:50:31  23    the time.  The context of the brand is the
14:50:35  24    consumer, and the consumer in this environment
14:50:39  25    changes rapidly, every two, three years there is
```

168

EXHIBIT __12__

PAGE __162__

```
14:51:52  1    would be Levi Strauss.  I worked with designers
14:51:56  2    and merchandisers for Levi Strauss.  I actually
14:52:00  3    helped implement the entire brand management
14:52:03  4    system at Levi Strauss years ago.
14:52:07  5             I worked for companies like
14:52:16  6    Unilever, very large companies that work with
14:52:21  7    specific brand groups.  Each of the brands are
14:52:26  8    billion dollar brands, sometimes only
14:52:27  9    300 million, sometime 2 billion or 5 billion.
14:52:32 10    And they need to create a structure so that
14:52:35 11    within the large context of a large company they
14:52:39 12    can retain the loose and intuitive structure
14:52:43 13    that attracts the right people.
14:52:46 14        Q.    So in your view, in your opinion,
14:52:49 15    it is the correct business move to create an
14:52:57 16    environment that is loose and intuitive whether
14:53:00 17    you're a small company or a large company.
14:53:02 18        A.    No.  The way I see it is it's not
14:53:07 19    just a different shade between small and large.
14:53:13 20    But it is the different shade between small and
14:53:15 21    large plus the kind of industry that you're in.
14:53:20 22    We work with very large companies that are in
14:53:24 23    different industries where a more structured
14:53:27 24    environment to brand management is more helpful.
14:53:32 25    I studied these aspects in research that is
```

170

| | | |
|---|---|---|
| 14:50:43 | 1 | a new consumer.  Every five years the whole |
| 14:50:45 | 2 | consumer base is changing.  The relevance of how |
| 14:50:48 | 3 | this ties into the culture of fabric here and |
| 14:50:52 | 4 | now, music, entertainment, fashion, has to |
| 14:50:56 | 5 | change all the time.  And only in that kind of a |
| 14:51:00 | 6 | structure you can actually succeed in these |
| 14:51:07 | 7 | short intervals in time repeatedly. |
| 14:51:09 | 8 | Q.    Have you ever worked with large |
| 14:51:11 | 9 | companies that also are engaged in similar |
| 14:51:16 | 10 | environments and need to stay loose and |
| 14:51:21 | 11 | intuitive in order to meet consumer demands? |
| 14:51:24 | 12 | MR. ROTH:  Objection; vague and |
| 14:51:25 | 13 | ambiguous. |
| 14:51:26 | 14 | A.    I would like to clarify the |
| 14:51:28 | 15 | question.  You asked me whether I worked? |
| 14:51:31 | 16 | Q.    Whether you have ever worked with |
| 14:51:32 | 17 | or studied large companies -- |
| 14:51:35 | 18 | A.    Yes. |
| 14:51:35 | 19 | Q.    -- that must remain loose and |
| 14:51:38 | 20 | intuitive to stay abreast or ahead of consumer |
| 14:51:43 | 21 | demand. |
| 14:51:43 | 22 | A.    Yes. |
| 14:51:43 | 23 | Q.    What companies have you worked with |
| 14:51:45 | 24 | or studied that fall into that category? |
| 14:51:48 | 25 | A.    Among large companies, an example |

EXHIBIT 12

PAGE 163

1

2

3

4

5

6

7

8

9      I, ERICH JOACHIMSTHALER, Ph.D., do hereby declare

10   under penalty of perjury that I have read the foregoing

11   transcript; that I have made any corrections as appear

12   noted, in ink, initialed by me, or attached hereto;

13   that my testimony as contained herein, as corrected, is

14   true and correct.

15          EXECUTED this_____day of_____,

16   20___, at_____,_____.
                  (City)                        (State)

17

18

19

20                    _____

21                    ERICH JOACHIMSTHALER, Ph.D.

22

23

24

25

                                                    256

EXHIBIT  12

PAGE  105

```
 1              C E R T I F I C A T E
 2   STATE OF NEW YORK   )
 3                       : ss.
 4   COUNTY OF NEW YORK  )
 5
 6           I, SUZANNE PASTOR, a Shorthand
 7   Reporter and Notary Public within and for the
 8   State of New York, do hereby certify:
 9           That ERICH JOACHIMSTHALER, Ph.D., the
10   witness whose deposition is hereinbefore set
11   forth, was duly sworn by me and that such
12   deposition is a true record of the testimony
13   given by the witness.
14           I further certify that I am not
15   related to any of the parties to this action by
16   blood or marriage, and that I am in no way
17   interested in the outcome of this matter.
18           IN WITNESS WHEREOF, I have hereunto
19   set my hand this 1ST day of April, 2008.
20
21
22
23           Suzanne Pastor
24           SUZANNE PASTOR
25
```

EXHIBIT \_\_\_12\_\_\_

PAGE \_\_\_160\_\_\_

**EXHIBIT 13**

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL,   )
                                )
                PLAINTIFF,      )
                                )
        V.                      )      NO.  CV 04-9040  SGL (RNBX)
                                )
MATTEL, INC., A DELAWARE        )
CORPORATION,                    )
                                )
            .   DEFENDANTS.      )
_____)
                                )
AND CONSOLIDATED ACTION (S).    )
_____)

# C O N F I D E N T I A L

ATTORNEYS' EYES ONLY

# DEPOSITION OF SAMIR K. KHARE

# VOLUME I

# AUGUST 20, 2007



COURT REPORTERS

REPORTED BY:
PAMELA S. HARRIS
CSR NO. 3909
JOB NO. 07AE568-PH

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT __13__

PAGE __167__

DEPOSITION OF SAMIR K. KHARE

```
 1              UNITED STATES DISTRICT COURT

 2        CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

 3

 4   CARTER BRYANT, AN INDIVIDUAL, )
                                   )
 5                  PLAINTIFF,     )
                                   )
 6        V.                       ) NO. CV 04-9049 SGL
                                   )            (RNBX)
 7                                 )
     MATTEL, INC., A DELAWARE      )
 8   CORPORATION,                  )       VOLUME I
                                   )
 9               DEFENDANTS.       )
                                   )
10   AND CONSOLIDATED ACTIONS      )
                                   )
11

12         C O N F I D E N T I A L

13            ATTORNEYS' EYES ONLY

14         (PURSUANT TO STIPULATION,
              THIS TRANSCRIPT HAS BEEN
15            DESIGNATED CONFIDENTIAL)

16        DEPOSITION OF SAMIR K. KHARE,

17        DESIGNATED AS A 30(B)(6) WITNESS

18        FOR MGA ENTERTAINMENT, INC.,

19        TAKEN ON BEHALF OF MATTEL, INC.,

20        AT 865 SOUTH FIGUEROA STREET,

21        TENTH FLOOR, LOS ANGELES,

22        CALIFORNIA, COMMENCING AT 9:37

23        A.M., ON MONDAY, AUGUST 20,

24        2007, REPORTED BY PAMELA S.

25        HARRIS, CSR #3909.
                                              2
```

A & E COURT REPORTERS    (213) 955-0070    FAX:  (213) 955-0077

EXHIBIT 13

PAGE 168

DEPOSITION OF SAMIR K. KHARE

1   APPEARANCES OF COUNSEL:

2   FOR DEFENDANT MATTEL, INC.:

3        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
           BY:  MICHAEL T. ZELLER, ESQ.
4               BRIDGET A. HAULER, ESQ.
                      AND
5               DYLAN PROCTOR, ESQ.
                (A PORTION OF THE DEPOSITION)
6        865 SOUTH FIGUEROA STREET, TENTH FLOOR
         LOS ANGELES, CALIFORNIA  90017-2543
7        (213) 443-3000

8   FOR MGA ENTERTAINMENT, INC.:

9        O'MELVENY & MYERS
         BY:  DIANA M. TORRES, ESQ.
10       400 SOUTH HOPE STREET
         LOS ANGELES, CALIFORNIA 90071-2899
11       (213) 430-6000

12  ALSO PRESENT:

13       DAPHNE GRONICH, IN-HOUSE COUNSEL
         MGA ENTERTAINMENT, INC.
14
         STEVEN TOGAMI, THE VIDEOGRAPHER
15

16

17

18

19

20

21

22

23

24

25

                                                      3

A & E COURT REPORTERS     (213) 955-0070     FAX:  (213) 955-0077

EXHIBIT __13__

PAGE __169__

DEPOSITION OF SAMIR K. KHARE

1     MR. ZELLER:  MIKE ZELLER FOR MATTEL, INC.

2     MS. HAULER:  BRIDGET HAULER FOR MATTEL, INC.

3     THE VIDEOGRAPHER:  THANK YOU.

4

5                 SAMIR K. KHARE,

6        DEPONENT, WAS SWORN AND EXAMINED

7              AND TESTIFIED AS FOLLOWS:

8

9     THE REPORTER:  WOULD YOU RAISE YOUR RIGHT HAND,

10    PLEASE.

11              DO YOU SOLEMNLY SWEAR THAT THE

12    TESTIMONY YOU ARE ABOUT TO GIVE IN TODAY'S

13    DEPOSITION SHALL BE THE TRUTH, THE WHOLE TRUTH, AND

14    NOTHING BUT THE TRUTH, SO HELP YOU GOD?

15    THE DEPONENT:  YES.

16    THE REPORTER:  THANK YOU.

17

18              EXAMINATION

19    BY MR. ZELLER:

20    Q.      GOOD MORNING.

21    A.      GOOD MORNING.

22    Q.      COULD YOU PLEASE TELL US YOUR FULL NAME

23    FOR THE RECORD.

24    A.      SURE.  SAMIR, S-A-M-I-R, LAST NAME

25    KHARE, K-H-A-R-E.

                                                    7

EXHIBIT __13__

PAGE __170__