arbitration2.txt

```
10   come out very, very -- they came out very nice and
11   especially off of a sketch, off of a drawing.  There
12   was no parameters given.
13        Q.  Prior to this meeting had you had any
14   discussions with anyone at MGA about doing Bratz in
15   a plush format?
16        A.  There were several meetings.  There was one
17   meeting which was almost -- when I say
18   "companywide," the marketing, product development,
19   creative departments were gathered.  In that meeting
20   we ran through a list of what seemed like every
21   possible category and sort of discussed whether or
22   not -- which categories we wished to keep.
23             And there was some indecision there, some
24   arguments back and forth.  That was one meeting.
25   There were some small -- probably some smaller
```

page 367
```
 1   internal meetings prior to the Licensing Show.  Of
 2   course during the Licensing Show, those were just
 3   informal meetings, you know, someone comes by and
 4   you discuss the possibility whether this is a viable
 5   category, whether it should be licensed, et cetera.
 6   And then after there were some discussions.
 7        Q.  The discussions that took place prior to
 8   the meeting with Mr. Bachrach, did MGA or anyone at
 9   MGA have anything to say about the ability to do
10   plush or desire to do plush?
11        A.  Yes.  Yeah.  Mr. Larian had felt that toy
12   rights, plush in particular, plush and other items
13   that fall -- that are sold into a toy store should
14   be kept by MGA.
15        Q.  So back to this meeting.  Did you
16   personally like the samples that Mr. Bachrach had
17   brought?
18        A.  Yes.  I was surprised how nicely they came
19   out.
20        Q.  How did the meeting end?
21        A.  The meeting ended, Mr. Bachrach was
22   asked -- Victoria O'Connor said, "Can you leave me
23   the samples to review so we can take a look at it."
24   The general feeling was both she and myself liked
25   the samples.  Paula Treantafelles who was the
```

page 368
```
 1   product manager on the line wasn't sure if plush was
 2   the right execution for the item.  And I think the
 3   feeling was that we needed to convince her a little,
```

Page 13

EXHIBIT __21__

PAGE ___433___          M 0060765

arbitration2.txt

4   needed to talk it over.  So Mr. Bachrach left the
5   samples.
6           And I don't recall when he said he would
7   pick them up, et cetera, but he left them and we
8   said we would be in touch.
9       Q.  After you left work for that day, did you
10  receive a telephone call from Ms. O'Connor?
11      A.  Yes.
12      Q.  Is the contents of that telephone
13  conversation you had with Ms. O'Connor reflected in
14  paragraph 8 of your declaration?
15      A.  Yes.  Yes.
16      Q.  Is that a "yes"?
17          Do you recall Ms. O'Connor specifically
18  telling you that Ms. Gidget Earle had said that
19  Mr. Larian had given her the dolls and told her to
20  knock it off?
21      A.  Yes.
22          MS. GLASER:  Your Honor, we object to
23  paragraph 8 because it is hearsay.  And I understand
24  your orders and the court's admonition yesterday,
25  but I am just doing it for the record.

page 369
☐ 1          ARBITRATOR PHILLIPS:  Before you arrived,
2   all these exhibits were received without objection
3   so I am going to allow the exhibit to remain in the
4   record.  And I think it's appropriate for you to
5   bring to my attention any concerns you have with
6   respect to the weight that I should accord exhibits
7   based on hearsay.  But absent anything further, the
8   exhibit will stay and the objection will be
9   overruled.
10          MR. SMITH:  I did have just a response on
11  the hearsay objection, Your Honor.  It is an
12  admission of a party opponent, so --
13          ARBITRATOR PHILLIPS:  What paragraph are we
14  dealing with?  Frankly, I didn't pay much attention
15  to it since it's in and it was in without objection.
16  But I understand why you are saying this in light of
17  my comment about weight, so let me take a look at
18  it.
19          MS. GLASER:  Paragraph 8 is the one that
20  was just referred to, Your Honor.
21          ARBITRATOR PHILLIPS:  All right.  So tell
22  me why this would not be a statement of a party
23  opponent?  For example, if this were a Federal
24  Court, I would think this would be admissible under

Page 14

EXHIBIT ___29___

PAGE____434____          M 0060766

arbitration2.txt

```
22
23
24
25

page 651
 1   STATE OF CALIFORNIA     )
 2                           ) ss:
 3   COUNTY OF LOS ANGELES )
 4           I, SYLVIA P. SHEAR, CSR #3010, in and for
 5   the State of California do hereby certify:
 6           That said Transcript of Proceedings was
 7   taken down by me in shorthand at the time and place
 8   therein named, and thereafter reduced to typewriting
 9   under my direction, and the same is a true, correct
10   and complete transcript of said proceedings.
11           I further certify that I am not
12   interested in the event of the action.
13   WITNESS MY HAND this 3st day of May, 2002.
14
15
16           _____
17           Certified Shorthand Reporter
18           for the State of California
19
20
21
22
23
24
25

page 652
```

Page 173

EXHIBIT ___79___

PAGE ___435___        M 0060925

**EXHIBIT 30**

**THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**EXHIBIT 31**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

- - -

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

- - -

CARTER BRYANT,　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　PLAINTIFF,　　)
　　　　　　　　　　　　　　　　)
　　　　　　　VS.　　　　　　　 )　　NO. ED CV 04-09049
　　　　　　　　　　　　　　　　)　　(LEAD LOW NUMBER)
MATTEL, INC.,　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　DEFENDANT.　　)
　　　　　　　　　　　　　　　　)
AND RELATED ACTIONS,　　　　　 )
　　　　　　　　　　　　　　　　)

# CERTIFIED COPY

REPORTER'S TRANSCRIPT OF PROCEEDINGS

RIVERSIDE, CALIFORNIA

MONDAY, JUNE 26, 2006

10:56 A.M.

THERESA A. LANZA, RPR, CSR
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET, RM. 134
RIVERSIDE, CALIFORNIA  92501
(951) 274-0844
CSR11457@SBCGLOBAL.NET

EXHIBIT ___31___

PAGE ___454___

2

1    APPEARANCES:

2

3    ON BEHALF OF PLAINTIFF/COUNTER DEFENDANT MATTEL, INC.:

4

5                        QUINN EMANUEL
                         BY:  JON D. COREY
                         BY:  JOHN B. QUINN
6                        865 S. FIGUEROA STREET,
                         10TH FLOOR
7                        LOS ANGELES, CALIFORNIA  90017
                         (213) 624-7707
8

9

      ON BEHALF OF PLAINTIFF/COUNTER COMPLAINANT/DEFENDANT,
10   CARTER BRYANT:

11                       LITTLER MENDELSON
                         BY:  KEITH A. JACOBY
12                       BY:  DOUGLAS A. WICKHAM
                         2049 CENTURY PARK EAST,
13                       FIFTH FLOOR
                         LOS ANGELES, CALIFORNIA  90067
14                       (310) 553-0308

15

16   ON BEHALF OF MGA ENTERTAINMENT:

17                       O'MELVENY & MYERS LLP
                         BY:  DIANA M. TORRES
18                       BY:  DALE CENDALI
                         400 SOUTH HOPE STREET
19                       LOS ANGELES, CALIFORNIA  90071
                         (213) 430-6000
20

21

22

23

24

25                       EXHIBIT ___31___

                         PAGE ___455___

      JUNE 26, 2006        ED CV 04-9049-SGL

11

1   BROUGHT.  WHAT'S NOT CLEAR TO THE COURT AT THIS POINT IS

2   EXACTLY WHAT ALLEGATIONS ARE SUPPORTING THESE CLAIMS.

3        FOR EXAMPLE, YOU ARGUE THAT IT'S UNCONSCIONABLE.

4   WHAT ABOUT IT IS UNCONSCIONABLE?  YOU CAN CERTAINLY

5   CHARACTERIZE THIS VERY EASILY AS SOMETHING WHICH IS SIMPLY AN     11:0

6   EFFORT -- EVEN IF I ASSUME THAT PROCEDURALLY IT'S AN ADHESION

7   CONTRACT -- IS AN EFFORT BY MATTEL TO REQUIRE EMPLOYEE LOYALTY

8   BY ITSELF UNCONSCIONABLE?

9        MR. WICKHAM:  THE NINTH CIRCUIT IN THE LAST SEVERAL

10  YEARS -- I'D SAY ACTUALLY ABOUT THE LAST SEVEN OR EIGHT YEARS     11:0

11  -- HAS DEVELOPED A DOCTRINE AND A BODY OF LAW GOVERNING

12  UNCONSCIONABILITY.  ACTUALLY, IT'S SOME OFFSHOOT FROM

13  CALIFORNIA COURT DECISIONS -- TING VERSUS AT&T AND INGALL

14  VERSUS CIRCUIT CITY -- AND THOSE CASES HAVE ANALYZED THE

15  UNCONSCIONABILITY ISSUE IN THE CONTEXT OF PRE-DISPUTE            11:09

16  ARBITRATION AGREEMENTS IN THE EMPLOYMENT CONTEXT.  THOSE CASES

17  THEMSELVES APPLIED AND ANALYZED THE CALIFORNIA SUPREME COURT'S

18  DECISION IN ALMENDAREZ.

19        THERE'S TWO ELEMENTS TO ESTABLISH A CLAIM OF

20  UNCONSCIONABILITY:  ONE IS PROCEDURAL UNCONSCIONABILITY; THE     11:10

21  OTHER IS SUBSTANTIVE UNCONSCIONABILITY.  THE PROCEDURAL

22  UNCONSCIONABILITY GOES TO THE MANNER OF FORMATION.  IS THE

23  AGREEMENT ON A PRE-PRINTED FORM CONTRACT, A CONTRACT OF

24  ADHESION?  IS THERE ANY MEANINGFUL OPPORTUNITY FOR

25  NEGOTIATIONS?  IS IT PRESENTED TO THE EMPLOYEE ON A TAKE IT OR    11:10

EXHIBIT 31

PAGE 456

JUNE 26, 2006

12

1   LEAVE IT BASIS?

2          WE WOULD SUBMIT THAT, FIRST OF ALL, THOSE ARE PLED IN

3   THE COUNTERCLAIM AND THAT THOSE ESTABLISH THE EXISTENCE OF

4   PROCEDURAL UNCONSCIONABILITY.

5          THE COURT:  I'M ASSUMING THAT FROM MY QUESTION, IS          11:1

6   THE SUBSTANTIVE UNCONSCIONABILITY --

7          MR. WICKHAM:  WITH REGARD TO SUBSTANTIVE

8   UNCONSCIONABILITY, THIS GOES TO SOME OF THE CLAIMS THAT ARE

9   PART AND PARCEL OF THE 17200 CLAIM:  ARE THERE PROVISIONS IN

10  THE AGREEMENT THAT ARE UNFAIR OR UNLAWFUL?                        11:1

11         AND WE WOULD SUBMIT THAT, FIRST OF ALL, WITH REGARD

12  TO THE INVENTIONS ASSIGNMENT, AS DRAFTED HERE, IT VIOLATES

13  CALIFORNIA LABOR CODE SECTION 2870 AND 2871.

14         THE COURT:  WHICH IS SPECIFICALLY REFERENCED IN THE

15  AGREEMENT, IS IT NOT?                                            11:1

16         MR. WICKHAM:  YOUR HONOR, IT'S REFERENCED IN THE

17  AGREEMENT, BUT IT IS NOT REFERENCED IN THE MANNER THAT THE

18  STATUTE ACTUALLY CONTEMPLATES.  THE STATUTE SPECIFICALLY

19  CONTEMPLATES THAT THE NATURE OF ANY ASSIGNMENT, AS A

20  SUBSTANTIVE MATTER OF THE CONTRACT, WOULD NOT EXTEND TO THOSE    11:1

21  MATTERS.  2871 SAYS THAT ANY ASSIGNMENT THAT GOES BEYOND WHAT

22  2870 PERMITS IS, TO THAT EXTENT, VOID.

23         THE NATURE OF THE ASSIGNMENT HERE IS THAT IT IS A

24  BROAD BASED ASSIGNMENT OF ALL INVENTIONS DURING THEIR

25  EMPLOYMENT; ALL THINGS THAT WERE CONCEIVED AND PRACTICED.       11:1

EXHIBIT  31

PAGE  457

13

1        NOW, TWO PARAGRAPHS DOWN, IT SAYS, 'OF COURSE,

2   NOTHING IN HERE WILL APPLY IF 2870 APPLIES.'

3        WELL, THERE'S TWO RESPONSES WITH REGARD TO THAT.

4        FIRST OF ALL, THAT IS A SEPARATE NOTICE THAT THEY ARE

5   REQUIRED TO PROVIDE IN THE CONTRACT UNDER 2872.  AND SECONDLY,

6   THAT IF YOU PUT YOURSELF IN THE POSITION OF AN EMPLOYEE WHO

7   DOES NOT HAVE A COLLEGE DEGREE; WHO IS GETTING A $30,000 A YEAR

8   JOB; WHO DOESN'T HAVE THE WHEREWITHAL TO RETAIN COUNSEL TO BE

9   ABLE TO INFORM THEM WHAT 2870 MEANS...  MY EYES ARE GLAZING

10  OVER; I HAVE NO IDEA; I'M NOT A LAWYER ON THIS.

11       YOUR HONOR, WHAT IS PARTICULARLY TELLING ABOUT THIS

12  IS THAT SUBSEQUENT TO THE MOTION, WE DEPOSED MR. BRYANT'S

13  SUPERVISOR, ANN DRISCAL.  THE AGREEMENT IS PREDICATED ON AN

14  ASSIGNMENT OF THINGS THAT WERE CONCEIVED OR THAT WERE REDUCED

15  TO PRACTICE.

16       I WILL CONFESS, YOUR HONOR, THAT PRIOR TO THIS CASE,

17  I DID NOT KNOW WHAT 'REDUCED TO PRACTICE' WAS; AND, IN FACT, IT

18  IS A TERM OF ART WHICH IS IN THE PATENT FIELD; AND AS AN

19  EMPLOYMENT LAWYER, I'M NOT FAMILIAR WITH THAT.  AND HERE WE'RE

20  EXPECTING 30-YEAR OLD PEOPLE WITHOUT COLLEGE DEGREES TO KNOW

21  WHAT 'REDUCED TO PRACTICE' MEANS?

22       WELL, WE ASKED MR. BRYANT'S SUPERVISOR, THE ONE WHO

23  WAS CHARGED AT LEAST WITH SOME RESPONSIBILITY FOR THIS

24  AGREEMENT; WE ASKED HER WHETHER OR NOT SHE KNEW WHAT LABOR CODE

25  SECTION 2870 WAS.        EXHIBIT ___31___

                             PAGE ___458___

JUNE 26, 2006        ED CV 04-9049-SGL

66

1      THE CLERK:   COURT STANDS IN RECESS.

2

3

4

5

6

7

8

9

10

11

12

13

14

15                          CERTIFICATE

16

17   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
18   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
19   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.
20

21
     THERESA A. LANZA, RPR, CSR                    7-3-06
22   OFFICIAL COURT REPORTER                        DATE

23

24

25                                        EXHIBIT ___31___

                                          PAGE ___457___

**BLUEBIRD** OFFICE SUPPLIES   (888) 477-0700   www.bluebirdoffice.com

**EXHIBIT 32**

CERTIFIED COPY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL,  )
                         PLAINTIFF,  )
                                 )
        V                   )  CASE NO   CV 04-9040 SGL (RNBX)
                                 )
MATTEL, INC , A DELAWARE  )
CORPORATION,  )
                                 )
             DEFENDANTS  )
                                 )
AND CONSOLIDATED ACTION (S)  )
                                 )

# TRANSCRIPTION OF

# AUDIOTAPED INTERVIEW OF

# ISABEL ANA CABRERA

# JANUARY 2, 2008



REPORTED BY.
EMILY MCCARY
CSR NO  7584
JOB NO  08EM001

515 S Flower Street
Suite 3600
Los Angeles, California 90071
Office  (213) 955-0070
Fax  (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___32___

PAGE ___460___

M 0261971

TRANSCRIPTION OF RECORDING

VOLUME I

JANUARY 2, 2008

1

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___32___

PAGE ___4|6|___

M 0261972

```
1         A      NO, NO.   YEARS
2         Q      WELL, DID IT HAPPEN FIVE YEARS AGO,
3    DO YOU THINK, IN '05?
4         A      NO, NO, NO, NO
5         Q      CAN YOU GIVE ME A ROUGH IDEA?
6                AND IT'S VERY, VERY, VERY IMPORTANT.
7    I CAN'T TELL YOU HOW IMPORTANT THIS IS, BUT THAT
8    YOU HELP US WITH THIS.   IT'S IN YOUR BEST
9    INTEREST.
10        A      YEAH, IT'S LIKE 2005 MAYBE, IN THE
11   MIDDLE.
12        Q      IN THE MIDDLE OF '05?
13        MS  FRIED:   IS THAT AROUND WHEN SHE ASKED
14   YOU TO COME WORK FOR HER?   YOU HAD SAID IT WAS
15   MAYBE 2005.
16        THE WITNESS.  NO, NO   LIKE TWO YEARS
17   AGO.
18        MS. FRIED:   OKAY.
19   BY MR  DE ANDA.
20        Q     AND THEN AFTER THAT DRESS OR THAT
21   ITEM, WHAT'S THE NEXT ONE THAT YOU HELPED SEW?
22        A      NO   NO MORE.   WE STOPPED.
23        Q     NO, NO, NO.   AFTER -- I MEAN PRIOR
24   TO, BEFORE THAT ONE.   WE'RE STARTING FROM THE
25   MOST RECENT AND GOING BACKWARDS
```

A&E COURT REPORTERS (213) 955-0070 FAX  (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___32___

PAGE ___4V2___

M 0262009

1          A     UH-HUH

2          Q     OKAY.  DO YOU REMEMBER THE NEXT ONE

3     THAT YOU DID?

4          A     NO.  IT'S JUST PANTS AND BLOUSE    _.

5     AND --

6          MS. FRIED:  WERE THEY LITTLE, THE LITTLE

7     SIZE OR THE BIG TALL SIZE?

8          THE WITNESS·  SOMETHING LIKE THAT.

9          MS. FRIED:  THE STANDARD SIZE

10    BY MR. DE·ANDA:

11         Q     HOW -- HOW MANY TIMES FROM 2000 TO --

12    EXCUSE ME.  LET ME ASK THIS QUESTION:

13              WHEN DID YOU REALIZE THAT THE ITEMS

14    THAT YOU WERE SEWING WERE FOR THE BRATZ DOLLS?

15         A     WHEN -- WHEN THEY HAVE MEETINGS IN

16    HERE, AND THEN I SAID MAYBE IT'S THAT, THE SAME

17    DOLL, YEAH.

18         Q     WHEN WAS THAT?

19         A     MAYBE 2004.

20         Q     2004.  AND WHO WAS IN THIS

21    MEETINGS?

22              YOU WERE IN THIS MEETING AND YOU SAW

23    THE BRATZ DOLL?

24         A     NO, NO, NO.

25         Q     THEN HELP ME UNDERSTAND HOW DID

39

CONFIDENTIAL - ATTORNEYS' EYES ONLY   EXHIBIT __32__          M 0262010

PAGE ___463___

1    YOU -- HOW DID YOU MAKE THE CONNECTION THAT YOUR

2    SEWING WAS ACTUALLY GOING FOR THE BRATZ DOLLS?

3         A     BECAUSE THEY SAY WHEN -- WHEN THE --

4    WHEN MATTEL MAKE THE SUIT TO THE OTHER COMPANY,

5    THEN I START THINKING THAT MAYBE IT'S THE SAME

6    DOLL

7         Q     OKAY.  AND WHEN WAS THAT?

8         A     I DON'T KNOW.

9         MS. FRIED.  IS THAT THE MEETING WHERE --

10   WHERE HUMAN RESOURCES WAS THERE AND --

11        THE WITNESS:  MAYBE.

12        MS. FRIED·  -- AND WE TALKED ABOUT

13   CONFIDENTIALITY?

14        THE WITNESS:  YEAH.

15        MS  FRIED   DID YOU SIGN SOMETHING AT THAT

16   MEETING?

17        THE WITNESS:  UH-HUH

18        MS  FRIED:  IS THAT THE MEETING YOU'RE

19   TALKING ABOUT?

20        THE WITNESS:  YEAH   I DON'T KNOW

21        MS. FRIED.  THAT WAS MARCH OF 2003.

22        THE WITNESS:  2003.

23        MS. FRIED.  DOES THAT SOUND ABOUT RIGHT?

24        THE WITNESS:  OH

25   BY MR  DE ANDA:

                                                    40

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT __32__

PAGE __464__

M 0262011

1        Q     AND DID YOU TALK TO MARLOW AND ASK

2  MARLOW OR ANYONE IF YOUR SEWING WAS --

3        A     NO, NO, NO.  I DON'T SAY NOTHING.

4        Q     YOU DON'T SAY ANYTHING?

5        A     NO.

6        Q     BUT AT THAT TIME DID YOU KNOW OR DID

7  YOU REALIZE THAT IT WAS THE SAME?

8        A     NO, I DON'T -- I JUST THINK IT, BUT I

9  DIDN'T SAY NOTHING

10       Q     YOU THOUGHT THAT IT WAS, BUT YOU

11 DIDN'T SAY ANYTHING?

12       A     NO, AFTER LATER ON, LIKE MAYBE ONE

13 MONTH OR SOMETHING LIKE THAT

14       Q     BUT YOU DIDN'T -- ONE MONTH AFTER THE

15 MEETING YOU THOUGHT MAYBE THAT SOME OF THE SEWING

16 YOU WERE DOING --

17       A     UH-HUH

18       Q     WHERE DID YOU THINK MARLOW WORKED?

19 WHO DID SHE WORK FOR?

20       A     SHE HAS HER COMPANY   SHE NEVER SAY

21 NOTHING ABOUT -- AND I NEVER ASK NOTHING

22       Q     WHAT IF I SAY THAT SHE SAID THAT?

23       A     WHAT?  THAT I KNOW IT?

24       Q     THAT YOU KNEW IT; THAT SHE TOLD YOU

25 WHEN YOU ASKED HER.  DO YOU REMEMBER THAT?

41

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___32___

PAGE ___405___

M 0262012

1   IMPORTANT.

2       A   NO, I'M VERY HONEST   I NEVER TAKE --

3   I THINK IT'S NOTHING WRONG BECAUSE I DO IT ON MY

4   OWN TIME.  AND WHEN THEY NEED ME HERE, I'M ALWAYS

5   HERE, AND THAT'S IT.

6       Q   WELL, BUT WHAT WE'RE ASKING HERE --

7   WE UNDERSTAND WHAT YOU THINK AND WHAT YOU

8   BELIEVE.  OKAY.  WE HEAR THAT.  BUT WHAT I'M

9   ASKING FOR IS -- IS THE ACCURATE INFORMATION

10  AND I KNOW THAT YOU KNOW IT   ALL RIGHT   AND

11  I'LL TELL YOU WHY LATER I KNOW THAT YOU KNOW IT.

12  OKAY?

13      A   UH-HUH

14      Q   SO YOU'RE MAKING THIS VERY DIFFICULT,

15  AND IT DOESN'T HAVE TO BE DIFFICULT   ALL RIGHT.

16  WHAT I'M SAYING IS YOU KNOW THAT -- THAT YOU HAD

17  A CONVERSATION WITH MARLOW WITH REGARDS TO THE

18  SEWING THAT YOU WERE DOING WAS WITH -- FOR BRATZ,

19  AND SHE SAID "YES," RIGHT?  SHE CONFIRMED IT?

20      A   YES.

21      Q   THAT HAPPENED RIGHT AROUND '03?

22      A   MAYBE

23      Q   MAYBE OR YES?  I THINK IT DID,

24  BECAUSE I -- WE'RE PRETTY CERTAIN IT DID

25      A   I'M NOT SURE.

45

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT  32        M 0262016

PAGE  466

```
 1        Q     WELL, WHEN DO YOU THINK IT
 2   HAPPENED?
 3        A     AFTER WE RECEIVED THE MEETING, THEN
 4   WE KNOW.
 5        Q     HOW FAR AFTER?
 6        A     LIKE ONE MONTH LATER.
 7        Q     SO IT WAS EARLY '03?
 8        A     UH-HUH
 9        Q     THAT'S WHEN IT HAPPENED    AND YOU
10   CONTINUED TO SEW FOR HER AFTER THAT, RIGHT?
11              I'M SORRY?
12        A     YES.
13        Q     YES    OKAY
14              HOW MANY MORE FASHIONS AFTER THAT DID
15   YOU CONTINUE TO SEW?
16        A     MANY.
17        Q     MANY?  10, 20?
18        A     MAYBE.
19        Q     30, 40?
20        A     I DON'T KNOW.
21        Q     BUT LOTS?
22        A     A LOT.
23        Q     AND YOU WOULD SAY --
24        A     EVERY -- EVERY WEEKEND ON THE
25   NIGHTTIME I HELP.  WHEN SHE FINISH, SHE TAKE IT,
```

46

CONFIDENTIAL - ATTORNEYS' EYES ONLY   EXHIBIT ___32___        M 0262017

PAGE ___467___

```
 1    AND THAT'S IT.
 2         Q    AND SHE WOULD PAY YOU HOURLY,
 3    RIGHT?
 4         A    UH-HUH.
 5         Q    HOW MUCH WOULD SHE PAY YOU?
 6         A    TWENTY    SHE START WITH 20.
 7         Q    AND WHAT DID YOU END UP?
 8         A    LIKE 26 OR 28.  I DON'T REMEMBER.
 9    MAYBE 28.
10         Q    TWENTY-SIX OR 28    OKAY.  AT THE END.
11              AND THE LAST TIME YOU SEWED ANYTHING
12    FOR HER WAS WHEN?
13         A    LIKE IN JUNE
14         Q    IN JUNE OF '05?
15         A    '05.
16         Q    AND DO YOU REMEMBER WHAT -- AND THAT
17    WAS THE ONE WITH THE BEADS?
18              OKAY    DO YOU REMEMBER -- DO YOU WANT
19    SOME WATER?
20         A    NO
21         Q    OKAY.  DO YOU REMEMBER ANY -- ANY OF
22    THE NAMES OF THE ITEMS THAT YOU SEWED?
23         A    NAMES?
24         Q    THE NAMES OF --
25         MS. FRIED:  PROJECT NAMES OR FASHION
```

47

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___32___

PAGE ___468___

M 0262018

```
1            A      I KNOW HIM
2            Q      DO YOU KNOW WHAT HE DID?
3            A      DESIGNER.
4            Q      BUT DO YOU KNOW WHAT HE DID FOR
5     M G.A.?
6            A      NO.
7            Q      DO YOU KNOW WHAT HE DID WITH THE
8     BRATZ DOLL?
9            A      HE INVENT IT, NO?
10           Q      THE BRATZ DOLL?
11           A      UH-HUH.
12           Q      AND HOW DO YOU KNOW THAT?
13           A      BECAUSE I HEAR HERE THAT HE DID
14    THAT.
15           Q      OKAY   DID MARLOW TELL YOU HE DID
16    THAT?
17           A      LATER, YEAH, BUT NOT AT -- NOT WHEN I
18    START.
19           Q      DO YOU KNOW HOW MUCH MONEY MARLOW
20    MADE OFF OF THIS?
21           A      NO, NO.
22           Q      DO YOU KNOW HOW MUCH MONEY SHE MADE
23    OFF OF YOUR WORK?
24           A      NO.
25           Q      OKAY.  OKAY   LOTS.  LOTS.
```

58

CONFIDENTIAL - ATTORNEYS' EYES ONLY    EXHIBIT ___32___

PAGE ___469___

M 0262029

```
1        A     I DON'T KNOW.
2        Q     OFF OF YOUR EFFORTS.
3              OKAY.  DO YOU HAVE ANYTHING -- AND
4    THIS IS SO IMPORTANT.  DO YOU HAVE ANYTHING,
5    MATERIAL, PICTURES, ANYTHING, PHOTOGRAPHS OF YOU
6    AND MARLOW HOLDING UP DOLLS OF BRATZ, ANYTHING --
7        A     NO.
8        Q     -- FROM ANY OF THE SEWING YOU'VE DONE
9    FOR HER?
10       A     NO.
11       Q     NOTHING?
12       A     NOTHING
13       Q     NOTHING AT HOME?  NOTHING AT ALL?
14       MS  FRIED:  NO PATTERNS OR ANYTHING?
15       THE WITNESS   NO, NO, NO
16             I HAVE SOME BOXES WITH MATERIAL, LIKE
17   PANTS.
18       MS. FRIED:  SAMPLES YOU DIDN'T USE?
19       THE WITNESS:  NO, NOT LITTLE.  REGULAR
20   CLOTHES.  I HAVE SOME THAT'S FROM HER
21       MS. FRIED:  OH, THAT -- THE ONES THAT YOU
22   CUT OUT?
23       THE WITNESS:  YEAH, UH-HUH.
24       MS  FRIED:  SO WHAT WAS LEFT, THE SCRAPS?
25       THE WITNESS:  IT'S LIKE GARBAGE.
```

59

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT   32

PAGE   470

M 0262030

1    BY MR. DE ANDA

2         Q    LET'S ME ASK YOU A QUESTION:   WHERE

3    IS THE GARBAGE AT?

4         A    WHERE THE GARBAGE?

5         Q    THE GARBAGE THAT YOU JUST SAID.

6         MS  FRIED·  THE BOXES.

7         THE WITNESS:  IN MY GARAGE.

8    BY MR  DE ANDA:

9         Q    DO THEY HAVE THE CUT-OUT PATTERNS OF

10   THE ITEMS THAT YOU WERE CUTTING OUT OF?

11        A    MAYBE.  I DON'T KNOW, NO.  BECAUSE WE

12   CUT IT IN PIECE -- PIECES.

13        Q    AND, THEN THE PIECES -- ALL RIGHT

14        A    LIKE IF WE WANT ONE LEG, WE CUT THE

15   LEG, AND THAT'S IT.

16        Q    OH, I SEE.  THEN YOU PUT THE PATTERN

17   ON TOP OF THE FLAT MATERIAL AND THEN LOOK AT IT.

18             WHEN IS THE LAST TIME YOU LOOKED AT

19   THAT MATERIAL?

20        A    I DON'T KNOW.  A LONG TIME.

21        Q    YEARS?

22             IT WOULD BE REALLY IMPORTANT THAT WE

23   LOOK AT THAT MATERIAL AGAIN AND JUST TO SEE

24   OKAY?  IT'S VERY, VERY IMPORTANT   OKAY?

25             DID YOU EVER E-MAIL MARLOW?

60

CONFIDENTIAL - ATTORNEYS' EYES ONLY    EXHIBIT ___32___    M 0262031

PAGE ___471___

1    MR. DE ANDA· OF '06.  OKAY.

2        Q    AND THEN HERE WE HAVE OTHER ITEMS,

3    THESE LITTLE -- THOSE LOOK LIKE A NICE LITTLE

4    WARM JACKET THERE.  DID YOU SEW THAT?

5        A    YES, I SEWED THAT.

6        MS  FRIED:  THIS IS THE FUR·COAT YOU WERE

7    TALKING ABOUT FOR THE WINTER SET.

8    BY MR. DE ANDA·

9        Q    AND THAT -- WHEN WAS THAT DONE; DO

10   YOU REMEMBER?

11       A    MAYBE IN THE WINTERTIME

12       MS. FRIED:  WHICH LINE?

13   BY MR  DE ANDA:

14       Q    WINTERTIME WHICH YEAR?

15       MS. FRIED:  DO YOU KNOW WHICH LINE?  IS

16   THIS THE BOY OR GIRL?

17       THE WITNESS   THE GIRL.

18       MS. FRIED   THIS IS THE GIRL

19   BY MR. DE ANDA:

20       Q    OKAY.  HERE YOU GO.  HERE ARE SOME

21   MORE PATTERNS AND STUFF HERE.  SO THESE ARE THE

22   PATTERNS WITH ACTUALLY THE CLOTHES ATTACHED OR

23   THE FABRIC ATTACHED TO IT HERE.

24            DO YOU REMEMBER DOING THESE?

25       A    YES, I...

116

A&E COURT REPORTERS (213) 955-0070 FAX  (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___32___

M 0262087

PAGE ___472___

```
 1    WRITING WE DIDN'T RECOGNIZE.
 2              DENNIS SOA   DO YOU KNOW THAT --
 3    DENNIS SOA, EXTENSION 120?
 4    MR. DE ANDA:
 5         Q    WELL, HERE WE GO.  HERE IS AN ENTIRE
 6    BAG FULL OF DRAWINGS THAT WE'RE GONNA TAKE A LOOK
 7    AT NOW THAT'S IN THIS BAG HERE   AND THEN -- ARE
 8    THESE BARBIES?
 9         A    YEAH, THAT'S THE --
10         Q    THESE ARE BARBIES   AND THESE ARE --
11    WHY -- WHY -- WHY DO WE HAVE BARBIES IN HERE?
12         A    NO, IT'S NOT BARBIES   THAT'S
13    BRATZ
14         Q    THAT IS BRATZ?  AWFUL SKINNY BRATZ.
15         MS  FRIED:  LET ME READ THE BACK.
16              YEAH, M.G A.
17         MR. DE ANDA  OH, I'M SORRY
18         MS. FRIED.  M.G.A.  DID YOU SEW THAT ONE?
19         THE WITNESS:  YEAH.  SHE WANTED TO MAKE A
20    DETAILS.
21         MS. FRIED:  THEN SHE WOULD PUT THE DETAILS
22    ON?
23    BY MR. DE ANDA.
24         Q    DO YOU REMEMBER WHEN YOU SEWED
25    THAT?
```

                                                                    108

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY   EXHIBIT _32_                        M 0262079

                        PAGE _473_

1        A    NO, BECAUSE SOMETIMES WE TRIED TO AND
2   SHE NEVER DOES IT (UNINTELLIGIBLE).
3        Q    SO WHEN YOU SAY SHE TRIED THINGS --
4   OH, OKAY.
5        A    SHE BRING THE PATTERN.  SHE ASKED ME
6   TO MAKE IT, AND THEN WHEN SHE TRY IT, SHE SAY,
7   "NO.  I WANT TO CHANGE THE -- THE MATERIAL.  IT
8   LOOK TOO FAT."
9        Q    SO THIS ONE LITTLE BAG HERE, THIS ONE
10  LITTLE ZIP LOCK BAG THAT'S IN BOX NUMBER 6, IT'S
11  TO VERONICA MARLOW FROM -- IT LOOKS LIKE FROM
12  DENNIS, AND IT LOOKS LIKE S-O-A WITH AN "X"
13  LOOKING AS AN EXTENSION 120.  DO YOU KNOW WHO
14  THAT IS?
15       A    HUH-UH.
16       Q    OKAY.  THERE'S ALSO ANOTHER PLASTIC
17  BAG HERE, A BIG WHITE PLASTIC BAG, THAT HAS --
18       A    THAT'S FOR GARBAGE
19       Q    THIS IS GARBAGE, BUT IT HAS DRAWINGS
20  IN IT.
21       MS. FRIED:  YEAH.
22  BY MR. DE ANDA·
23       Q    AND THESE DRAWINGS LOOK LIKE THEY'RE
24  DRAWINGS OF BRATZ WITH WRITING ALL OVER IT,
25  AND -- BUT THESE ARE ALL HERS?

                                            109

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT __32__

PAGE __474__

M 0262080

1      A      YES

2      Q      SHE BROUGHT THESE IN?

3      A      THIS IS HER'S, YEAH.

4      MS. FRIED:   THIS IS WHAT YOU WERE SPEAKING

5  OF EARLIER, THAT YOU WOULD GET DRAWINGS, BLACK

6  AND WHITE?  THIS ONE'S COLOR.   THAT LOOKS LIKE

7  CARTER?  IS THAT COLOR?

8      THE WITNESS·  MAYBE.

9  BY MR  DE ANDA:

10     Q      DO YOU KNOW WHAT CARTER'S DRAWINGS

11 LOOK LIKE?  DOES THIS LOOK LIKE CARTER'S

12 DRAWINGS?

13     A      NO.  HE ALWAYS DREW VERY BEAUTIFUL --

14 NO, NO, WITH TWO EYES.

15      I DON'T KNOW.  MAYBE IT'S HIM.

16 BY MR. DE ANDA:

17     Q      MAYBE IT'S HIM?

18      OKAY   DO YOU KNOW WHEN THIS BAG --

19 WHEN WAS THE FIRST TIME YOU SAW THIS, THIS BAG

20 WITH ALL THESE --

21     A      NO, I NEVER SAW THIS BAG

22     Q      YOU NEVER SAW THIS BAG?

23     A      NO.  IT WAS HER THINGS THAT SHE MAYBE

24 IS GONNA PUT IT IN THE TRASH CAN AND SHE

25 DIDN'T.

110

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___32___

PAGE ___475___

M 0262081

1        MS. FRIED:  WELL, THESE DRAWINGS ARE DATED
2   MARCH '05.
3        MR DE ANDA:  YES   SAME HERE, MARCH '05
4   ALSO.  SO THIS WAS LATER ON THEN, HUH?
5        MS. FRIED:  DO YOU HAVE THE OVER PIECE TO
6   THIS?
7        MR. DE ANDA:  IT COULD BE ANYWHERE
8        Q    BUT THIS STUFF HERE, YOU NEVER SAW
9   IT?
10       A    NO.  MAYBE SHE HAVE IT ON HER TABLE
11  WHEN SHE'S WORKING
12       Q    OKAY.
13       MS. FRIED:  THIS SAYS "REBEL PRINCESS."
14  BY MR. DE ANDA:
15       Q    DO YOU EVER REMEMBER MAKING ANY
16  FASHIONS FROM THIS STUFF?
17       A    YES, WE MAKE IT.
18       Q    FROM THIS STUFF HERE IN '05   SO YOU
19  DO REMEMBER THESE ITEMS HERE.   THERE'S ALL
20  DIFFERENT KINDS OF SAMPLINGS HERE.
21            DO YOU REMEMBER HER TEARING THEM UP?
22       A    WHAT?
23       Q    DO YOU REMEMBER HER TEARING THIS
24  UP?
25       A    YEAH.   THIS IS THE LAST ONE THAT WE

111

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___32___

M 0262082

PAGE ___476___

```
1        Q     WHEN DID YOU --
2        MS. FRIED:  BOHEMIAN BABE FASHION PACK.
3        MR. DE ANDA.  RIGHT.  THERE'S A WHOLE BUNCH
4   OF PATTERNS IN HERE.
5        Q     DO YOU REMEMBER WHEN YOU DID THESE?
6        A     NO
7        Q     YOU DON'T REMEMBER.  DO YOU REMEMBER
8   WHAT YEAR?
9        A     MAYBE 2004 OR 2003.
10       Q     OKAY.  2004 OR 2003   OKAY.  WELL,
11  ALL RIGHT   OKAY.  ALL RIGHT   THE REST OF IT IS
12  JUST MATERIALS, IT WOULD APPEAR.
13            OKAY.  IS THERE ANYTHING THAT WE
14  SHOULD KNOW -- AND LISTEN TO WHAT I'M GOING TO
15  ASK YOU   THIS IS VERY IMPORTANT
16            IS THERE ANYTHING THAT WE SHOULD KNOW
17  ABOUT WHAT'S HAPPENED, THIS WHOLE BRATZ M.G.A
18  CASE, MARLOW, ANYONE, THAT I HAVEN'T ASKED YOU,
19  THAT LISSA HASN'T ASKED YOU, THAT YOU THINK WE
20  SHOULD KNOW?
21            THINK REAL HARD BEFORE YOU ANSWER
22  THAT.  VERY IMPORTANT
23       A     THE LAST -- LIKE THE LAST TWO YEARS,
24  LIKE IN 2003 THEY GIVE THE MEETING, THEN I TOLD
25  HER AFTER I WANT -- I TELL HER I DON'T WANT TO
```

117

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___32___

PAGE ___477___

M 0262088

```
1    KEEP WORKING WITH HER
2         MS. FRIED:  RIGHT.
3         THE WITNESS.  BECAUSE IT'S -- IT'S NOT --
4    IT'S -- I DON'T WANT TO LOSE MY JOB   AND THEN I
5    DECIDE TO PUT MY -- MY -- MY SISTER-IN-LAW'S
6    NAME, AND THEN I TOLD HER I DON'T WANT -- I DON'T
7    WANT CHECKS   I DON'T WANT NOTHING.   AND THEN SHE
8    PAY ME IN CASH
9         MS. FRIED:   SHE STARTED PAYING IN YOU CASH?
10        THE WITNESS   IN CASH
11   BY MR DE ANDA
12        Q    FROM WHAT YEAR?   FROM 2003?
13        A    2003
14        Q    NOW, YOU SAID YOU PUT IT IN YOUR
15   SISTER-IN-LAW'S NAME   I DON'T UNDERSTAND THAT
16   WHAT DO YOU MEAN?
17        A    LIKE I DON'T WANT TO -- BECAUSE SHE
18   GIVE ME THE CHECKS IN MY NAME, AND I SAY I
19   WANT -- I WANT TO STOP   I DON'T WANT TO HELP YOU
20   NO MORE.
21        AND THEN I SAY MAYBE IF I USE MY --
22   LIKE I ASK MY SISTER-IN-LAW, BECAUSE SHE IS IN
23   MEXICO, AND IF SHE LET ME TO USE HER SOCIAL
24   SECURITY, HER NAME, AND I WORK IN HER NAME THE
25   LAST TWO YEARS.
```

118

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___32___

M 0262089

PAGE ___478___

1    Q     SO --

2    A     I DON'T KNOW THE LAST TWO YEARS.

3 MAYBE YEAR AND A HALF.

4    Q     SO MARLOW WAS SIGNING CHECKS TO YOUR

5 SISTER FOR THE WORK THAT YOU WERE DOING?

6    A     NO, NO.

7    Q     YOU USED HER NAME TO OPEN A BANK

8 ACCOUNT?

9    A     NO, NO, NO

10   Q     THEN HOW DID SHE -- I DON'T

11 UNDERSTAND.

12   A     SHE PAY ME IN CASH.

13   Q     SHE PAID YOU IN CASH, BUT WHY DID YOU

14 GIVE HER, MARLOW, YOUR SISTER-IN-LAW'S NAME AND

15 SOCIAL SECURITY?

16   A     BECAUSE SHE GAVE ME A PAPER TO SIGN

17 IT WHEN SHE GAVE ME THE MONEY

18   MS. FRIED:  LIKE A W-2, LIKE TAX PAPERS?

19   THE WITNESS:  NO, NOT A TAX.. WHEN SHE PAY

20 ME, SHE GIVE ME IT TO SIGN   THAT'S IT.

21 BY MR  DE ANDA:

22   Q     A RECEIPT?

23   A     YEAH, LIKE A RECEIPT

24   MS. FRIED·  OR LIKE A TIME SHEET?  DID SHE

25 HAVE YOU KEEP A TIME SHEET?

119

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___32___

PAGE ___479___

M 0262090

1          THE WITNESS:  YEAH, LIKE A TIME.  NOT A --
2     BY MR. DE ANDA:
3          Q     WHAT DID THE PAPER SAY ON IT?
4          A     LIKE SHE SAY I PAID THAT MUCH MONEY.
5     TO ROSALVA (PHONETIC) CABRERA
6          Q     AND THAT'S YOUR SISTER-IN-LAW'S NAME,
7     IS ROSALVA?
8          A     CABRERA.
9          Q     GABRIELLA?
10         A     CABRERA.
11         MS FRIED·  CAN YOU SPELL THAT FOR ME?
12    ROSALVA?
13         THE WITNESS·  ROSALVA.
14         MS. FRIED.  CAN YOU WRITE IT?
15         AND WHAT WAS THE LAST NAME?
16         CABRERA.  LIKE YOU.
17    BY MR. DE ANDA:
18         Q     SO WOULD YOU SIGN YOUR NAME OR
19    GABRIELLA'S NAME?
20         MS. FRIED·  ROSALVA.
21         THE WITNESS:  ROSALVA.
22    BY MR. DE ANDA:
23         Q     YOU WOULD SIGN ROSALVA'S NAME   OKAY.
24         MS. FRIED   SO THEN IT JUST LOOKED LIKE SHE
25    WAS PAYING ROSALVA INSTEAD OF YOU   BUT SHE PAID

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT     32

PAGE        480

M 0262091

```
 1   STATE OF CALIFORNIA   )
 2                         ) SS.
 3   COUNTY OF LOS ANGELES )
 4
 5      I, EMILY MCCARY, CERTIFIED SHORTHAND
 6   REPORTER, CERTIFICATE NO. 7584, FOR THE STATE OF
 7   CALIFORNIA, HEREBY CERTIFY:
 8      THE TESTIMONY GIVEN AND ALL COMMENTARY MADE
 9   DURING THE FOREGOING PROCEEDINGS WERE RECORDED ON
10   AUDIOTAPES AT THE TIME OF THE PROCEEDINGS AND
11   THEREAFTER PROVIDED TO ME   A STENOGRAPHIC
12   REPORTING WAS MADE BY ME AND THEREAFTER
13   TRANSCRIBED.   THE FOREGOING TRANSCRIPT IS A TRUE
14   AND CORRECT TRANSCRIPT OF MY SHORTHAND NOTES SO
15   TAKEN;
16      I FURTHER CERTIFY THAT I AM NEITHER COUNSEL
17   FOR NOR RELATED TO ANY PARTY TO SAID ACTION NOR
18   IN ANY WAY INTERESTED IN THE OUTCOME THEREOF,
19      IN WITNESS WHEREOF, I HAVE HEREUNTO
20   SUBSCRIBED MY NAME THIS 4TH OF JANUARY, 2008.
21
22                    _____
23                    EMILY MCCARY
24
25
```

186

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ____32____      M 0262157

PAGE ____481____

BLUEBIRD OFFICE SUPPLIES (888) 477-0700 www.bluebirdnow.com

**EXHIBIT 33**

CERTIFIED COPY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, AN INDIVIDUAL, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| V ) | CASE NO  CV 04-9040 SGL (RNBX) |
| ) | |
| MATTEL, INC , A DELAWARE ) | |
| CORPORATION, ) | |
| ) | |
| DEFENDANTS ) | |
| _____) | |
| ) | |
| AND CONSOLIDATED ACTION (S) ) | |
| _____) | |

# TRANSCRIPTION OF

# AUDIOTAPED INTERVIEW OF

# ISABEL ANA CABRERA

# JANUARY 3, 2008



REPORTED BY
EMILY MCCARY
CSR NO  7584
JOB NO  08EM002

A&E
COURT REPORTERS
515 S Flower Street
Suite 3600
Los Angeles, California 90071
Office  (213) 955-0070
Fax  (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___33___

PAGE ___482___

M 0262177

TRANSCRIPTION OF RECORDING

VOLUME II

JANUARY 3, 2008

1

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___33___  M 0262178

PAGE ___483___

1   IN YOUR NAME STARTING SEPTEMBER 23RD, '04 THROUGH

2   OCTOBER 16TH, '04, AND THE PROJECT DESCRIPTION

3   BOX IS LEFT BLANK

4          THIS IS ALSO BRATZ?

5      A   YES.

6      Q   OKAY.  THE NEXT DOCUMENT IS DATED

7   AUGUST 10TH, 2004 THROUGH SEPTEMBER 22ND, 2004.

8   YOU RECEIVED $209 -- EXCUSE ME -- $2,938 ON

9   OCTOBER 6TH, 2004.  ONE TIME SHEET BEHIND THAT IN

10  YOUR NAME DATED AUGUST 10TH, '04 THROUGH

11  SEPTEMBER 22ND, '04.  THE PROJECT DESCRIPTION BOX

12  IS BLANK   THAT'S ALSO BRATZ?

13     A   YES.

14     Q   OKAY.  THE NEXT TWO DOCUMENTS, THAT

15  ARE NOT STAPLED TOGETHER, IS THE DOCUMENT -- IS

16  DATED JUNE 2ND, 2004 THROUGH JUNE 23RD, 2004.

17  YOU RECEIVED $2,132 ON AUGUST 20TH, 2004   BEHIND

18  THAT THERE IS ONE TIME SHEET IN YOUR NAME

19  STARTING -- STARTING DATE OF JUNE 2ND, 2004

20  THROUGH JUNE 23RD, 2004.  THE PROJECT DESCRIPTION

21  IS ALSO BLANK.

22          IS THAT ALSO BRATZ?

23     A   YES.

24     Q   OKAY.  THE NEXT DOCUMENT THAT IS

25  STAPLED STARTS -- IT HAS A DATE OF -- FROM MARCH

27

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___33___

PAGE ___484___

M 0262204

```
1    24TH, 2005 THROUGH APRIL 18TH, 2005.  YOU
2    RECEIVED $3,248 ON MAY 9TH, 2005.  YOU HAVE ONE
3    SHEET BEHIND IT   IT IS A TIME SHEET IN YOUR NAME
4    STARTING MARCH 24TH, 2005 THROUGH APRIL 18TH,
5    2005   THE PROJECT DESCRIPTION IS ALSO BLANK.
6              THIS WAS A BRATZ PROJECT?
7         A    (INAUDIBLE )
8         Q    OKAY   WE'RE GETTING THERE.
9              OKAY.  THE NEXT DOCUMENT IS DATED
10   APRIL 21ST, 2005 TO JUNE 11TH, 2005.  YOU
11   RECEIVED $5,068 ON JUNE 16TH, 2005.
12        A    THE NAME.
13        Q    OH, YES   THE NAME HERE, THOUGH, HAS
14   CHANGED TO ROSALBA CABRERA.  NOW, WHO IS THAT?
15        A    MY SISTER-IN-LAW.
16        Q    OKAY.  AND WHY DID YOU CHANGE -- WHY
17   DID YOU HAVE HER CHANGE THE NAME?
18        A    BECAUSE I DON'T WANT TO WORK WITH MY
19   NAME.  AND I SAY I'M GONNA USE MY SISTER-IN-LAW'S
20   NAME BECAUSE I, YOU KNOW, WANT TO STOP IT, BUT
21   SHE HAVE MANY THINGS TO FINISH AND I WANT TO
22   HELP.
23        Q    OKAY
24        A    AND I STILL SEWING, JUST I CHANGE THE
25   NAME
```

28

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___33___

PAGE ___485___

M 0262205

1       Q    BUT YOU STILL SEWED, RIGHT.   YOU GAVE

2   HER -- AND YOU GAVE HER -- YOU CHANGED THE NAME

3   YOU ASKED HER TO USE YOUR SISTER-IN-LAW'S NAME --

4       A    YEAH

5       Q    -- AND SOCIAL SECURITY NUMBER, AND

6   BECAUSE YOU WANTED TO HELP HER, BUT YOU DIDN'T

7   WANT PEOPLE TO KNOW THAT YOU WERE HELPING HER?

8       A    YES.

9       Q    IS THAT RIGHT?

10      A    YES

11      Q    OKAY   AND SHE WAS OKAY WITH THAT?

12  MARLOW WAS OKAY?

13      A    YEAH

14      Q    YEAH   SHE WAS FINE WITH THAT   OKAY

15  SO OKAY.   AND --

16      A    AT LEAST I'M THE ONE THAT RECEIVED

17  THE MONEY AND GAVE IT TO HER   LIKE I SIGNED HERE

18  AND GAVE IT, BUT I..

19      Q    OH, I SEE, BECAUSE YOUR NAME STILL --

20  ANA CABRERA IS STILL ON THE SIGNATURE BLOCK, AND

21  THIS IS STILL YOUR PHONE NUMBER.  SO YOU WOULD

22  SIGN, BUT IT WOULD SHOW THAT ROSALBA WORKED --

23      MS. FRIED·  DID THE WORK

24  BY MR  DE ANDA:

25      Q    DID THE WORK, BUT REALLY YOU DID THE

29

A&E COURΓ REPORTERS (213) 955-0070 FAX (213) 955-0077

**CONFIDENTIAL - ATTORNEYS' EYES ONLY** EXHIBIT ___33___      M 0262206

PAGE ___486___

```
1    WORK?
2         A    YES
3         Q    DID ROSALBA RECEIVE ANY MONEY?
4         A    NO
5         Q    NO    IS SHE HERE OR IS SHE IN
6    MEXICO?
7         A    NO, SHE'S HERE
8         Q    SHE'S HERE.  WAS SHE IN MEXICO THEN,
9    BACK IN 2005?
10        A    YEAH, BUT -- YEAH, 2000 -- YEAH, I
11   THINK SHE COME HERE LIKE IN 2005, BUT LIKE IN
12   MAYBE SEPTEMBER
13        Q    OKAY.
14        A    AFTER I FINISH, AND THEN I -- WHEN,
15   YOU KNOW, I RECEIVED MY PAPER TO MAKE THE TAXES,
16   I GIVE THE MONEY I OWE IN HER NAME    WHEN SHE
17   MADE HER TAXES --
18        MS. FRIED    YOU PAID HER TAXES?
19        THE WITNESS·  -- I HELP PAY HER TAXES
20        MR. DE ANDA·   OKAY
21        MS. FRIED.   SO VERONICA GAVE YOU A 1099 AT
22   THE END OF THE YEAR SO YOU COULD FILE YOUR -- AND
23   YOU HAD TO PAY YOUR TAXES?
24        THE WITNESS    YES
25        MS. FRIED·   SO IN '05 WHEN YOU WERE USING
```

30

CONFIDENTIAL - ATTORNEYS' EYES ONLY   EXHIBIT ____33____        M 0262207

PAGE ____487____

1    ROSALBA, THEN YOU PAID HER TAXES FOR HER?

2         THE WITNESS:  YES.

3         MS. FRIED:  OKAY.

4    BY MR. DE ANDA:

5         Q    DID YOU HAVE A 10- -- DID ROSALBA

6    HAVE A 1099?

7         A    I DON'T KNOW.

8         Q    DID SHE HAVE A TAX FORM THAT YOU HAD

9    TO SIGN?

10        MS. FRIED:  YES.

11   BY MR. DE ANDA:

12        Q    DID MARLOW GIVE YOU A TAX FORM FOR

13   ROSALBA TO SIGN, AND DID YOU SIGN IT FOR HER?

14        A    I THINK SHE GIVE IT TO ME AND I MAKE

15   THE TAXES, BECAUSE SHE GIVE ME HER FORM.

16        MS. FRIED:  SHE GAVE HER THE 1099.

17        THE WITNESS:  YEAH, AND I WENT TO MAKE HER

18   TAXES.  MY HUSBAND GO AND MAKE THE TAXES FOR HER

19   TOO.

20   BY MR  DE ANDA:

21        Q    RIGHT.  DID YOU HAVE TO SIGN

22   ANYTHING, A DOCUMENT, THOUGH, FOR ROSALBA?

23        A    NO   SHE SIGN HER TAXES.

24        Q    OKAY.  ALL RIGHT.  WELL, THIS

25   DOCUMENT, THEN, WITH ROSALBA'S NAME, YOUR

31

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ____33____

M 0262208

PAGE ____488____

1   THE NEXT DAY..

2       MS  FRIED:  YEAH   DO YOU ALWAYS KNOW WHAT

3   PROJECT YOU'RE WORKING ON FOR THE MATTEL

4   DESIGNERS, OR DO THEY JUST SAY, "HERE.  SEW

5   THIS"?  IT COULD BE MATTEL IT COULD NOT BE MAYBE?

6       THE WITNESS:  NO, I KNOW.  NO.

7       MS. FRIED:  YOU KNOW THAT IT'S MATTEL?

8       THE WITNESS:  IT'S MATTEL, BECAUSE I KNOW

9   MY (UNINTELLIGIBLE), BUT SOMETIMES THEY HAVE THE

10  NAMES AND I NEVER PAY ATTENTION.

11      MS  FRIED:  TO THE NAMES OF THE PROJECTS.

12  OKAY.

13      MR. DE ANDA:  OKAY..  THANK YOU SO MUCH

14  ALL RIGHT.

15      MS. FRIED:  THANK YOU

16

17              -OOO-

18

19

20

21

22

23

24

25

                                                44

CONFIDENTIAL - ATTORNEYS' EYES ONLY   EXHIBIT   33                    M 0262221

                                   PAGE    489

```
1   STATE OF CALIFORNIA    )
2                          ) SS.
3   COUNTY OF LOS ANGELES  )
4
5        I, EMILY MCCARY, CERTIFIED SHORTHAND
6   REPORTER, CERTIFICATE NO. 7584, FOR THE STATE OF
7   CALIFORNIA, HEREBY CERTIFY.
8        THE TESTIMONY GIVEN AND ALL COMMENTARY MADE
9   DURING THE FOREGOING PROCEEDINGS WERE RECORDED ON
10  AUDIOTAPES AT THE TIME OF THE PROCEEDINGS AND
11  THEREAFTER PROVIDED TO ME.  A STENOGRAPHIC
12  REPORTING WAS MADE BY ME AND THEREAFTER
13  TRANSCRIBED   THE FOREGOING TRANSCRIPT IS A TRUE
14  AND CORRECT TRANSCRIPT OF MY SHORTHAND NOTES SO
15  TAKEN;
16       I FURTHER CERTIFY THAT I AM NEITHER COUNSEL
17  FOR NOR RELATED TO ANY PARTY TO SAID ACTION NOR
18  IN ANY WAY INTERESTED IN THE OUTCOME THEREOF;
19       IN WITNESS WHEREOF, I HAVE HEREUNTO
20  SUBSCRIBED MY NAME THIS 6TH OF JANUARY, 2008.
21
22                    _____
                            EMILY MCCARY
23
24
25
```

45

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT 33   M 0262222

PAGE 490

BLUEBIRD OFFICE SUPPLIES   (888) 477-0700   www.bluebirdoffice.com

**EXHIBIT 34**

CERTIFIED COPY

BRYANT vs. MATTEL

CASE NO. CV 04-9040 SGL (RNBX)

AUDIOTAPED INTERVIEW OF

BEATRIZ MORALES

JANUARY 14, 2008



REPORTED BY:
NEALY KENDRICK
CSR NO 11265
JOB NO 08AE028-NK

COURT REPORTERS
515 S Flower Street
Suite 3600
Los Angeles, California 90071
Office (213) 955-0070
Fax (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___34___

PAGE ___491___

M 0262230

TRANSCRIPTION OF AUDIORECORDED INTERVIEW OF

BEATRIZ MORALES

MONDAY, JANUARY 14, 2008

1

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT _____ 34 _____

PAGE _____ 342 _____

M 0262231

1      Q      YEAH.

2      A      -- THE WINTER.

3      Q      SO -- SO DURING THOSE SEASONAL TIMES,

4   WOULD YOU SAY YOU WORKED PRETTY MUCH EVERY WEEKEND

5   FOR THE SEASON?  AND THEN AFTER THE SEASON, YOU'D

6   STOP?  LIKE, FOR INSTANCE, IN SEPTEMBER, DO YOU

7   THINK YOU WORKED PRETTY MUCH EVERY WEEKEND?

8      A      YEAH.

9      Q      OKAY.  AND THEN STOPPED FOR THE SUMMER?

10   AND THEN SOMETIME IN SEPTEMBER, IT WOULD START

11   AGAIN, AND THEN YOU'D --

12      A      UH-HUH.

13      Q      -- WORK --

14      A      YEAH.

15      Q      -- ALMOST PRETTY MUCH EVERY WEEKEND

16   TILL -- TILL WHAT?  TILL --

17      A      YEAH.  BECAUSE SHE DISAPPEAR.  SOMETIMES

18   SHE GO -- I DON'T KNOW.  IT'S HER LIFE.  I NEVER

19   ASK --

20      Q      UH-HUH.  I KNOW.

21      A      -- BECAUSE I DON'T HAVE TOO MUCH

22   COMMUNICATION WITH HER.  SHE DISAPPEAR.

23          AND THEN ISABEL OR ANA -- WHATEVER -- SHE

24   CALL ME.  AND SHE SAY, "OH, YOU KNOW WHAT?  SHE CALL

25   ME.  AND SHE SAY SHE HAD ANOTHER LINE" OR SOMETHING.

23

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY      EXHIBIT ___34___          M 0262253

PAGE ___393___

```
1      Q    HMM.

2      A    AND THEN, "OKAY."

3      Q    OKAY.

4      A    THAT'S THE ONLY THINGS --

5      Q    OKAY.

6      A    -- I CAN REMEMBER.

7      Q    SO THAT'S 2002.

8           THEN IN 2003, IS THAT WHEN YOU HAD KIND OF

9    A --

10     A    IT'S THE SAME THING.

11     Q    IT'S THE SAME THING?  BEEN THE -- THE

12   SEASON -- SEASONAL PART IN SPRING AND FALL?

13     A    YEAH.  SOMETHING LIKE THAT..

14     Q    OKAY.  AND THEN IN 2004, YOU'RE STILL

15   WORKING WITH THEM?

16     A    YES.

17     Q    RIGHT.  AND IT'S THE SAME THING?

18     A    YES.

19     Q    AND IN 2005?

20     A    OKAY.  IN 2004, WE DISCOVER TOO MANY

21   THINGS.

22        MS. FRIED:  UH-HUH.

23        THE WITNESS:  AND THEN WE SCARE.  WE WORRY.

24   AND WE SAY, "WE DON'T WANT TO CONTINUE" --

25   BY MR. DE ANDA:
```

24

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___34___

PAGE ___394___

M 0262254

```
1        Q    OKAY.

2        A    -- "WITH THESE THINGS."

3             AND THEN SHE SAY, "WHY NOT?"

4             WE SAY, "NO.  BECAUSE WE START TO DISCOVER

5   SOME THINGS.  AND WE HEAR IS SOMETHING WRONG WITH

6   THOSE COMPANIES."

7        MS. FRIED:  UH-HUH.

8        THE WITNESS:  AND -- AND THEN WE KNOW EXACTLY

9   WHAT -- WHAT ARE WE DOING --

10       MR. DE ANDA:  UH-HUH.

11       THE WITNESS:  -- YOU KNOW?

12       MS. FRIED:  UH-HUH.

13       THE WITNESS:  AND THEN WE SCARED.  AND WE SAY,

14  "NO.  WE DON'T WANT TO CONTINUE."

15  BY MR. DE ANDA.

16       Q    OKAY.  THAT WAS --

17       A    AND THEN --

18       Q    -- IN 2004?

19       A    YES.

20       MS. FRIED:  YES.  UH-HUH.

21       MR. DE ANDA:  OKAY.

22       THE WITNESS:  AND THEN SHE SAID -- AH, IT WAS

23  IN THE BEGINNING --

24       MS. FRIED:  UH-HUH.

25  BY MR. DE ANDA:
```

25

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY    EXHIBIT ___34___    M 0262255

PAGE ___395___

```
 1        Q    OF 2004?
 2        A    YES.
 3        Q    YEAH.
 4        A    -- AND THAT -- WHEN WE MAKING THIS.
 5        Q    OKAY.
 6        A    AND THEN SHE SAID -- FIRST, SHE -- SHE
 7   PUTS -- SHE STARE -- QUIET, SERIOUS.
 8            AND -- AND LATER SHE SAY, "I KNOW YOU'RE
 9   RIGHT."  SHE SAY, "OKAY."  (SPEAKING SPANISH)
10   (UNINTELLIGIBLE) "PROPUSO" (PHONETIC)?
11        Q    "SI.  QUE ES?"
12        A    YEAH.  SHE SAY, "OKAY.  I CAN TELL YOU
13   GUYS.  DID YOU WANT TO COME WITH ME TO THE COMPANY
14   AND" --
15        MS. FRIED:  UH-HUH.
16        MR. DE ANDA:  RIGHT.
17        THE WITNESS:  -- SHE OFFER.  SHE SAY --
18        MS. FRIED:  SHE OFFERED YOU A JOB TO GO THERE?
19        THE WITNESS:  YEAH.
20        MR. DE ANDA:  RIGHT.
21        MS. FRIED:  UH-HUH.
22        THE WITNESS:  AND THEN WE SAY, "NO."  BECAUSE
23   WE LOVE MATTEL.
24   BY MR. DE ANDA:
25        Q    OKAY.
```

                                                          26

CONFIDENTIAL - ATTORNEYS' EYES ONLY     EXHIBIT ____34____        M 0262256

                                         PAGE ____896____

```
 1        MS. FRIED:  UH-HUH.

 2        THE WITNESS:  WE ARE HAPPY HERE.

 3        MS. FRIED:  UH-HUH.

 4        THE WITNESS:  AND IT'S VERY CONVENIENT FOR US.

 5   WE ALREADY KNOW THE PEOPLE, THE --

 6   BY MR. DE ANDA:

 7        Q    UH-HUH.

 8        A    -- WHEN DO WE HAVE TO DO EVERYTHING, YOU

 9   KNOW, WITH IT, YOU KNOW.

10        Q    OKAY.

11        A    AND THEN SHE SAY, "OKAY."

12             WE TELL HER, "START LOOKING FOR SOMEBODY,"

13   BECAUSE WE DON'T WANT IT TO CONTINUE NO MORE.

14        Q    RIGHT.

15        A    AND THEN, "OKAY."  THE PANTS RUN IN,

16   AND -- AND THEN WE SAY AGAIN.  AND WE JUST FINISH

17   WITH A -- A SPRING LINE FOR 2005.

18        Q    OKAY.

19        A    THAT'S ALL --

20        Q    OKAY.

21        A    -- WE START.

22        Q    OKAY.  AFTER -- AFTER 2000 -- AFTER THE

23   SPRING LINE IN 2005.

24        A    YEAH.

25        Q    SO --
```

27

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT _____34_____

PAGE _____847_____

M 0262257

```
1        A    THAT'S ALL THE WORK WE DO.

2        Q    YEAH.

3             SO IN 2004, THE EARLY PART OF 2004, WHEN

4   YOU FELT THAT'S -- YOU FELT THAT SHE WASN'T TELLING

5   YOU EVERYTHING AND YOU ASKED HER WHAT SHE WAS -- IF

6   THIS WAS -- DID YOU TALKED ABOUT BRATZ AS BEING --

7   BUT YOU WERE DESIGNING?

8             DID SHE TELL YOU AT THAT TIME OF BEING --

9   VERONICA -- VERONICA TELL YOU THAT THE --

10       A    SHE AND -- SHE THEN START -- SHE -- SHE

11  DISCOVER EVERYTHING.  YEAH.  BECAUSE BEFORE, SHE

12  DON'T WANT TO TALK.

13       Q    AH.

14       A    AND WHEN WE START TO SEW TOO MANY THINGS

15  AND HEARING AND WE START SAW THE DOLLS LINE HERE

16  BECAUSE, YOU KNOW, SOME DESIGNER BRING FOR HER --

17  IT'S, LIKE, THE FASHION.  YOU KNOW HOW IS --

18       Q    RIGHT.

19       A    -- EVERYTHING.

20            AND THEN WE SAW AND THEN SAY, "LOOK AT

21  THAT.  AND, OH, MY GOD."  THEN -- THEN WE STARTED,

22  YOU KNOW -- ANA AND ME -- THEN WE SAY, "OH."  YOU

23  KNOW, WE START TO GET IT.

24       Q    RIGHT.  THAT'S WHEN YOU BECAME AWARE,

25  REALIZED THAT THIS WAS FOR BRATZ.
```

28

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY   EXHIBIT __34__   M 0262258

PAGE __398__

1      A     SAY AGAIN.

2      Q     OKAY.  I'M SORRY.

3            WAS IT AFTER YOU FOUND OUT THAT YOU WERE

4   MAKING FASHIONS FOR BRATZ FOR VERONICA THAT YOU

5   CHANGED TO YOUR HUSBAND'S NAME?

6      A     (NO AUDIBLE RESPONSE.)

7      Q     IN OTHER WORDS -- LET ME HELP YOU.

8            OKAY.  WHEN YOU FOUND OUT, WHEN YOU

9   FINALLY REALIZED THAT WHAT VERONICA WAS HAVING YOU

10  DO WAS MAKE FASHIONS FOR BRATZ, SOON THEREAFTER OR

11  RIGHT THEN IS WHEN YOU CHANGED TO YOUR HUSBAND'S

12  NAME?

13     A     YES.

14     Q     "YES."  OKAY.

15           AND YOUR HUSBAND'S SOCIAL SECURITY NUMBER;

16  RIGHT?

17     A     YES.

18     Q     DID YOU DO THAT BEFORE THEN OR AFTER?

19  JUST RIGHT AFTER THAT; RIGHT?

20     A     YES.

21     Q     RIGHT.  OKAY.  GOOD.  THAT'S WHAT I

22  THOUGHT.  OKAY.

23        MS. FRIED:  DO YOU THINK ANYONE HERE KNEW YOU

24  AND ANA WERE DOING THE WORK -- ANYONE YOU WORKED

25  WITH HERE?

                                              115

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___34___

PAGE ___899___

M 0262345

```
 1    STATE OF CALIFORNIA    )
                             )  SS
 2    COUNTY OF LOS ANGELES  )

 3

 4         I, NEALY KENDRICK, CERTIFIED SHORTHAND REPORTER,

 5    CERTIFICATE NO. 11265, FOR THE STATE OF CALIFORNIA, HEREBY

 6    CERTIFY:

 7         THAT THE FOREGOING TRANSCRIPT WAS PREPARED BY ME

 8    FROM A TAPE RECORDING OF THE PROCEEDINGS,

 9         I CERTIFY THAT THE TRANSCRIPT WAS PREPARED TO THE

10    BEST OF MY ABILITY;

11         I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR

12    NOR RELATED TO ANY PARTY TO SAID ACTION NOR IN ANY WAY

13    INTERESTED IN THE EVENT OF THE ACTION

14         WITNESS MY HAND THIS 17TH DAY OF JANUARY, 2008.

15

16

17         _Nealy Kendrick_

18         NEALY KENDRICK

19

20

21

22

23

24

25
```

148

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___34___          M 0262378

PAGE ___400___

BLUEBIRD (888) 477-3704

**EXHIBIT 35**

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

- - -

HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

- - -

CARTER BRYANT, ET. AL.,              )
                                     )
                 PLAINTIFFS,         )
                                     )
         VS.                         )
                                     )   NO. ED CV 04-09049
MATTEL, INC., ET. AL.,               )   (LEAD LOW NUMBER)
                                     )
                 DEFENDANTS.         )   MOTIONS
                                     )
AND CONSOLIDATED ACTIONS,            )
                                     )

**CERTIFIED COPY**

REPORTER'S TRANSCRIPT OF PROCEEDINGS

RIVERSIDE, CALIFORNIA

MONDAY, JANUARY 7, 2008

10:11 A.M.

THERESA A. LANZA, RPR, CSR
FEDERAL OFFICIAL COURT REPORTER
3470 12TH STREET, RM. 134
RIVERSIDE, CALIFORNIA  92501
951-274-0844
CSR11457@SBCGLOBAL.NET

EXHIBIT 35
PAGE 401

JANUARY 7, 2008                         BRYANT VS. MATTEL

2

```
 1   APPEARANCES:

 2   ON BEHALF OF CARTER BRYANT:

 3                              KEKER & VAN NEST
                               BY:  CHRISTA M. ANDERSON
 4                              710 SANSOME STREET
                               SAN FRANCISCO, CALIFORNIA  94111-1704
 5                              415-391-5400

 6

 7   ON BEHALF OF MATTEL:

 8                              QUINN EMANUEL
                               BY:   JOHN QUINN
 9                              BY:   MICHAEL T. ZELLER
                               865 S. FIGUEROA STREET,
10                              10TH FLOOR
                               LOS ANGELES, CALIFORNIA  90017
11                              213-624-7707

12   ON BEHALF OF MGA ENTERTAINMENT:

13                              SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                               BY:   THOMAS J. NOLAN
14                              BY:   CARL ALAN ROTH
                               BY:   AMY S. PARK
15                              300 SOUTH GRAND AVENUE
                               LOS ANGELES, CALIFORNIA  90071-3144
16                              213-687-5000

17   ON BEHALF OF GUSTAVO MACHADO:

18
                               OVERLAND BORENSTEIN COTE & KIM LLP
19                              BY:   MARK E. OVERLAND
                               300 SOUTH GRAND AVENUE
20                              SUITE 2750
                               LOS ANGELES, CALIFORNIA  90071
21                              213-613-4660

22

23

24   /  /  /

25   /  /  /                        EXHIBIT    35
                                   _____

                                   PAGE    402
                                   _____
```

JANUARY 7, 2008                         BRYANT VS. MATTEL

3

```
1   APPEARANCES (CONT'D):

2

3   ON BEHALF OF NON-PARTY KAYE SCHOLER:

4                   KAYE SCHOLER LLP
                    BY:  BRYANT S. DELGADILLO
5                   1999 AVENUE OF THE STARS
                    SUITE 1600
6                   LOS ANGELES, CALIFORNIA  90067-6048
                    310-788-1341
7

8   ON BEHALF OF NON-PARTY STERN & GOLDBERG:

9                   STERN & GOLDBERG:
                    BY:  KIEN C. TIET
10                  6345 BALBOA BOULEVARD,
                    SUITE 200
11                  ENCINO, CALIFORNIA  91316
                    818-758-3940
12

13  ON BEHALF OF NON-PARTY FARHAD LARIAN:

14                  CHRISTENSEN, GLASER, FINK,
                     JACOBS, WEIL & SHAPIRO, LLP
15                  BY:  ALISA MORGENTHALER LEVER
                    10250 CONSTELLATION BOULEVARD
16                  LOS ANGELES, CALIFORNIA  90067
                    310-553-3000
17

18  ON BEHALF OF DEFENDANTS CLOONAN, MARLOW,
    HALPERN, LEAHY, AND ARONT:
19
                    KEATS MCFARLAND & WILSON, LLP
20                  BY:  LARRY W. MCFARLAND
                    9720 WILSHIRE BOULEVARD
21                  BEVERLY HILLS, CALIFORNIA  90212
                    310-777-3750
22

23

24

25                          EXHIBIT    35

                            PAGE      403
```

JANUARY 7, 2008                    BRYANT VS. MATTEL

28

1  TELL WHETHER OR NOT IT'S PHASE ONE OR PHASE TWO?'

2      THAT ISSUE IS REMOVED BECAUSE OF THE HARD DISCOVERY

3  STAY ON JANUARY 28TH.  IF WE FOCUS ALL ON PHASE ONE --

4      THE COURT:  LET ME HEAR MR. QUINN'S RESPONSE TO YOUR

5  PROPOSAL.  AND I DON'T MEAN TO MOVE YOU ALONG HERE, BUT WE HAVE          10:44

6  TO MOVE YOU ALONG.

7      MR. QUINN, WHAT'S YOUR THOUGHT ON --

8      MR. QUINN:  YOUR HONOR, BECAUSE I'M NOT INTIMATELY

9  FAMILIAR WITH THE MATTERS THAT ARE TEED UP BEFORE JUDGE INFANTE

10 ON THAT PORTION AND THE IDEA THAT BE DEFERRED TO MAGISTRATE          10:45

11 BLOCK, I'D LIKE TO DEFER THAT TO MR. ZELLER.

12     BUT BEFORE I DO THAT, IF I COULD RESPOND TO THE

13 PROPOSAL.

14     THE COURT:  PLEASE.

15     MR. QUINN:  WHAT I'M HEARING IS THAT MR. NOLAN IS          10:45

16 PREPARED, IF WE REALLY NEED IT, TO GIVE US THREE MORE

17 DEPOSITIONS ON PHASE ONE TOPICS.

18     THE COURT:  I DON'T THINK HE'S LOCKED INTO THREE.  I

19 THINK HE WAS USING THREE AS AN EXAMPLE.  BUT I THINK WHAT HE'S

20 RELUCTANT TO DO IS GIVE YOU A BLANK CHECK.          10:45

21     WHAT I'M HEARING IS THAT IF YOU CAN IDENTIFY THOSE

22 PARTICULAR DEPOSITIONS OR THAT PARTICULAR DISCOVERY THAT YOU

23 NEED TO COMPLETE THE PHASE ONE DISCOVERY -- AND I DO ACCEPT THE

24 NOTION THAT WE'RE AT A DIFFERENT POINT NOW THAN WE WERE SEVERAL

25 MONTHS AGO IN TERMS OF BEING ABLE TO IDENTIFY WHAT IS PHASE ONE          10:46

35

29

1   AND PHASE TWO.  I MEAN, WE SHOULD BE NEARING THE END.  YOU

2   SHOULD HAVE A PRETTY CLEAR SENSE OF WHAT YOU NEED TO TRY YOUR

3   CASE AND WHAT THEY NEED TO TRY THEIR CASE.

4         MR. QUINN:  RIGHT.

5         THE COURT:  I THINK WE SHOULD BE AT A POINT WHERE         10:46

6   PEOPLE OF THE CALIBER THAT ARE GATHERED HERE SHOULD BE ABLE TO

7   SAY, 'THIS IS WHAT WE NEED TO PIN DOWN BEFORE WE CAN GO TO

8   TRIAL.'  AND YOU NEED SOME MORE; THEY NEED SOME MORE; LET'S GET

9   THAT DONE.

10        THAT SUGGESTION IS SOMETHING THAT RESONATES WITH THE      10:46

11  COURT QUITE WELL.  IT REQUIRES THE LEVEL OF MATURITY THAT IS

12  NOT ALWAYS PRESENT IN LITIGATION, BUT I TRUST IS PRESENT IN

13  THIS COURTROOM.

14        MR. QUINN:  YOUR HONOR, I THINK THERE IS SOME WISDOM

15  THERE.  THE DEVIL IS IN THE DETAILS.                           10:46

16        THE COURT:  AS ALWAYS.

17        MR. QUINN:  LET ME SAY THAT JUST, FOR EXAMPLE, THE

18  WEEK BEFORE LAST, WE TOOK -- AND THIS IS SOMETHING THAT

19  HAPPENED SINCE THIS MOTION WAS FILED -- WE TOOK THE DEPOSITION

20  OF A PERSON NAMED VERONICA MARLOW, WHO IS THEIR VENDOR FOR      10:46

21  FASHION DESIGN FOR BRATZ, AND LEARNED IN THE COURSE OF THAT

22  DEPOSITION THAT THREE MATTEL EMPLOYEES OTHER THAN CARTER BRYANT

23  HAVE BEEN WORKING ON BRATZ FOR YEARS.  THAT WAS THE TESTIMONY.

24        THIS WAS NEWS TO US.

25        MOREOVER, SHE TESTIFIED THAT SHE HAD A CONVERSATION       10:47

EXHIBIT    35

405

JANUARY 7, 2008                              BRYANT VS. MATTEL

30

1  WITH AN MGA EXECUTIVE ABOUT THIS, WHERE SHE REFUSED TO ANSWER

2  POINTED QUESTIONS ABOUT WHETHER THERE WAS SOMEBODY ELSE AT

3  MATTEL WORKING ON THIS.

4          I SUBMIT, YOUR HONOR, THAT IS BLOCKBUSTER TESTIMONY,

5  IN OUR VIEW.  WE THOUGHT THIS WAS JUST CARTER BRYANT; SO          10:47

6  THERE'S THREE EMPLOYEES, TWO OF WHICH ARE FORMER EMPLOYEES NOW,

7  AND THIS EXECUTIVE, MEL WOODS -- HIS NAME ISN'T EVEN IN THIS

8  LIST THAT WE'VE SUBMITTED -- THAT I THINK WE NEED TO TAKE THEIR

9  DEPOSITIONS.

10         NOW, MR. NOLAN BANDIED ABOUT THE NUMBER OF 50.  THE     10:47

11 NUMBER ISN'T 50.  WE'VE LISTED THE DEPOSITIONS IN OUR PROPOSED

12 FORM OF ORDER THAT WE SUBMITTED TO THE COURT.  I DO THINK WE

13 COULD SIT DOWN AND SAY THIS GROUP -- AND MOST OF THEM ARE -- IS

14 TRULY JUST PHASE TWO.  THERE'S GOING TO BE A SIGNIFICANT

15 CATEGORY THAT ARE BOTH PHASE ONE AND PHASE TWO, AND THEN THERE   10:48

16 WILL BE SOME SMALLER NUMBER WHICH ARE PHASE ONE ALONE.

17         THE COURT:  THIS IS HELPFUL IN TERMS OF THE COURT

18 FASHIONING AN ORDER FOR THIS MOTION.

19         MR. QUINN:  IN TERMS OF MR. BRYANT, YOUR HONOR, AND

20 WHAT HAPPENED LAST FALL -- AND COUNSEL FOR MR. BRYANT SAID SHE   10:48

21 DIDN'T HAVE ANYTHING BEFORE HER ABOUT THE ORDER THAT THE COURT

22 ENTERED.  WE RAISED THIS IN OUR MOVING PAPERS.  WE CALLED THE

23 COURT'S ATTENTION -- REMEMBER WHEN THEY WERE HERE BEFORE,

24 ASKING TO CUT SOME SLACK FROM THE MAGISTRATE'S ORDER.  IN THE

25 MOVING ORDERS, PAGE 24, WE DISCUSSED THAT, AND AGAIN IN OUR      10:48

35

400

JANUARY 7, 2008              BRYANT VS. MATTEL

31

1   REPLY PAPERS ON PAGE 11; SO I SUBMIT, WE DID TEE UP THAT ISSUE.

2   THIS IS AT LEAST AS COMPELLING A SITUATION TO TAKE ANOTHER LOOK

3   AT WHAT JUDGE INFANTE RULED.

4        WITH RESPECT TO THE NIECE, THE NIECE HAD HIS

5   COMPUTER.  WE WENT THROUGH A RUNAROUND TO GET HIS COMPUTER.  WE        10:48

6   FOUND THIS 'EVIDENCE ELIMINATOR' -- THAT'S THE NAME OF A

7   PROGRAM; IT'S NOT A GREAT NAME -- ON THE COMPUTER, AND JUST TO

8   GET ASSURANCE THAT SOMEBODY WASN'T GOING TO SAY -- NOW, TELL ME

9   I'M BEING TOO DEVIOUS AND OVER THINKING THIS HERE -- THAT

10  SOMEBODY MIGHT SAY THE NIECE PUT 'EVIDENCE ELIMINATOR' ON THE       10:49

11  COMPUTER.  WE TOOK HER DEPOSITION FOR ONE HOUR AND 15 MINUTES;

12  THAT WAS IT.

13        SO IF THE PROPOSITION IS THAT --

14        THE COURT:  A LONG TIME TO ASK A QUESTION.

15        MR. QUINN:  YEAH.                                             10:49

16        THE COURT:  ALL RIGHT.

17        MR. QUINN:  IF THE PROPOSITION IS THAT MR. NOLAN AND

18  I SHOULD SIT DOWN AND FIGURE OUT WHICH ARE TRULY PHASE ONE AND

19  WHICH ARE SORT OF A MIX AND WHICH ARE PHASE TWO AND WE CAN

20  FORGET ABOUT FOR NOW, I'M SURE WE CAN DO THAT.  BUT, AGAIN, I       10:49

21  UNDERSCORE THE IDEA, IT'S NOT GOING TO BE THREE, AND IT'S NOT

22  GOING TO BE TEN; IT'S GOING TO BE MORE THAN THAT THAT WE NEED

23  FOR PHASE ONE.

24        THE COURT:  I'LL TRY TO PROVIDE AS MUCH GUIDANCE AS I

25  CAN IN THE COURT'S ORDER.        EXHIBIT __35__                     10:49

                                     PAGE __407__

        JANUARY 7, 2008                    BRYANT VS. MATTEL

59

```
1                          CERTIFICATE

2

3     I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
      STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
4     THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
      ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
5     CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
      THE UNITED STATES.

6

7                                              1-16-08
                                               DATE
8     THERESA A. LANZA, CSR, RPR
      FEDERAL OFFICIAL COURT REPORTER
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                        EXHIBIT ___35___

25                        PAGE   408
```

JANUARY 7, 2008                    BRYANT VS. MATTEL

EXHIBIT 36

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL,  )
                                )
        PLAINTIFF,     )
                                )
       V.              )   NO. CV 04-9040 SGL (RNBX)
                                )
MATTEL, INC., A DELAWARE   )
CORPORATION,              )
                                )
       DEFENDANTS.   )
                                )
————————————————————)
                                )
AND CONSOLIDATED ACTION (S). )
                                )

# C O N F I D E N T I A L

(PURSUANT TO PROTECTIVE ORDER, THIS TRANSCRIPT HAS BEEN
DESIGNATED CONFIDENTIAL, ATTORNEYS' EYES ONLY)

## DEPOSITION OF LISA TONNU

## VOLUME IV

## JANUARY 17, 2008



REPORTED BY:
PAULA PYBURN
CSR NO. 7304
JOB NO. 08AE029-PP

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT 36
PAGE 409

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, AN )
INDIVIDUAL, )
) CASE NO.
     PLAINTIFF, ) CV 04-9049 SGL(RNBX)
)
V. ) CONSOLIDATED WITH
) CASE NO. 04-9059
MATTEL, INC., A DELAWARE )      AND
CORPORATION, ) CASE NO. 05-2727
)
     DEFENDANT. )
——————————————————————)
)
AND CONSOLIDATED ACTION(S) )
——————————————————————)

CONFIDENTIAL ATTORNEY'S EYES ONLY
VIDEOTAPED DEPOSITION OF M.G.A.
ENTERTAINMENT, INC., PURSUANT TO
RULE 30(B)(6) (LISA TONNU, VOLUME
IV), TAKEN ON BEHALF OF MATTEL,
INC., AT 865 SOUTH FIGUEROA STREET,
2ND FLOOR, LOS ANGELES, CALIFORNIA,
COMMENCING AT 9:25 A.M., THURSDAY,
JANUARY 17, 2008, BEFORE PAULA A.
PYBURN, C.S.R. 7304, R.P.R., C.L.R.

733

EXHIBIT 36

410

```
 1   APPEARANCES OF COUNSEL:
 2   FOR M.G.A. ENTERTAINMENT, INC.:
 3    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
      BY:  CARL ALAN ROTH, ESQ.
 4    BY:  RYAN WEINSTEIN, ESQ.
      300 SOUTH GRAND AVENUE
 5    LOS ANGELES, CALIFORNIA 90071-3144
      (213) 687-5000
 6    CROTH@SKADDEN.COM
      RWEINSTE@SKADDEN.COM
 7
 8   FOR DEFENDANT MATTEL, INC.:
 9    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      BY:  JON D. COREY, ESQ.
10    BY:  DIANE HUTNYAN, ESQ.
           (WHERE INDICATED)
11    865 SOUTH FIGUEROA STREET
      2ND FLOOR
12    LOS ANGELES, CALIFORNIA 90017-2543
      (213) 443-3000
13    JONCOREY@QUINNEMANUEL.COM
      DIANEHUTNYAN@QUINNEMANUEL.COM
14
15   FOR CARTER BRYANT:
16    KEKER & VAN NEST LLP
      BY:  AUDREY WALTON-HADLOCK, ESQ.
17    710 SANSOME STREET
      SAN FRANCISCO, CALIFORNIA 94111-1704
18    (415) 391-5400
      AWALTONHADLOCK@KVN.COM
19
20   ALSO PRESENT:
21    CRAIG HOLDEN, M.G.A. ENTERTAINMENT, INC.
           (WHERE INDICATED)
22    STEVEN TOGAMI, J.T.V. LITIGATION SERVICES, INC.
23
24
25
```

734

EXHIBIT  30

PAGE  411

```
 1                         I N D E X
 2
 3   WITNESS:          EXAMINED BY:              PAGE:
 4   LISA TONNU
 5                     MR. COREY                 739
 6                     AFTERNOON SESSION         852
 7                     MS. HUTNYAN               918
 8
 9   EXHIBITS FOR IDENTIFICATION:  (BOUND SEPARATELY)
10   NUMBER:
11   1350 -   THIRD NOTICE OF DEPOSITION OF        741
             M.G.A. ENTERTAINMENT, INC.,
12           PURSUANT TO FEDERAL RULE OF CIVIL
             PROCEDURE 30(B)(6), 11 PAGES
13
14   1351 -   FOURTH DEPOSITION NOTICE OF          743
             M.G.A. ENTERTAINMENT, INC.,
15           PURSUANT TO FEDERAL RULE OF CIVIL
             PROCEDURE 30(B)(6), 30 PAGES
16   1352 -   PAYMENTS MADE TO MARLOW, MGA         759
             3787447 - MGA 3787464, 18 PAGES
17
18   1353 -   BONUS AND MERIT SCHEDULE, MGA        770
             0218357 - MGA 0218421, 65 PAGES
19   1354 -   PAYMENTS MADE TO OR ON BEHALF OF     786
             ISAAC LARIAN OR FAMILY MEMBERS,
20           MGA 3787372 - MGA 3787397, 26
             PAGES
21
22   1355 -   PAYMENTS MADE TO OR ON BEHALF OF     827
             MAKABI FAMILY MEMBERS, MGA
23           3787427 - MGA 3787446, 20 PAGES
24   1356 -   2006 W-2 AND EARNINGS SUMMARIES,     843
             MGA 3787315 - MGA 3787321, 7
25           PAGES
```

735

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

EXHIBIT _____ 34 _____

PAGE _____ 412 _____

```
1    EXHIBITS FOR IDENTIFICATION:   (BOUND SEPARATELY)
     (CONTINUED)
2
     NUMBER:
3

4    1357 -   2005 W-2 AND EARNINGS SUMMARIES,    843
              MGA 3787322 - MGA 3787328, 7
5             PAGES

6    1358 -   2004 W-2 AND EARNINGS SUMMARIES,    843
              MGA 3787329 - MGA 3787334, 6
7             PAGES

8    1359 -   2003 W-2 AND EARNINGS SUMMARIES,    843
              MGA 3787335 - MGA 3787340, 6
9             PAGES

10   1360 -   2002 W-2 AND EARNINGS SUMMARIES,    843
              MGA 3787341 - MGA 3787346, 6
11            PAGES

12   1361 -   2001 W-2 AND EARNINGS SUMMARIES,    843
              MGA 3787347 - MGA 3787353, 7
13            PAGES

14   1362 -   1999 W-2 AND EARNINGS SUMMARIES,    843
              MGA 3787361 - MGA 3787366, 6
15            PAGES

16   1363 -   2000 W-2 AND EARNINGS SUMMARIES,    843
              MGA 3787354 - MGA 3787360, 7
17            PAGES

18   1364 -   PAYMENT TO LARIAN FAMILY MEMBERS,   852
              MGA 3787400 - MGA 3787426, 27
19            PAGES

20   1365 -   M.G.A. WORLDWIDE SALES BY S.K.U.,   871
              2001, MGA 3718299 - MGA 3718343,
21            MGA 3718331 - MGA 3718598, MGA
              3718600 - MGA 3718684, 398 PAGES
22   1366 -   CONSOLIDATED STATEMENT OF           888
              OPERATIONS, MGA 3709872 - MGA
23            3709924, 53 PAGES

24   1367 -   CONSOLIDATED STATEMENT OF           908
              OPERATIONS, MGA 3710419 - MGA
25            3710429, 11 PAGES
```

736

EXHIBIT ___30___

PAGE ___413___

```
 1    EXHIBITS FOR IDENTIFICATION:   (BOUND SEPARATELY)
      (CONTINUED)
 2
      NUMBER:
 3
      1368 -   HANDWRITTEN NOTES OF 1/16/08        931
 4               MEETING WITH ERICH SPECKIN, MGA
                 3787467 AND MGA 3787468, 2 PAGES
 5
 6
 7    QUESTIONS UNANSWERED BY WITNESS:
 8                          (NONE)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

737

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

EXHIBIT _____36_____

PAGE _____414_____

1      Q.   OKAY.   HAVE THERE BEEN ANY OTHER LOCATIONS

2  IN THE PAST FOR WHICH M.G.A. HAS PAID MR. LARIAN OR

3  AN ENTITY IN WHICH HE HAS AN INTEREST RENT?

4      A.   I DO NOT KNOW.

5      Q.   YOU'RE NOW GOING BACK TO 2005 WHEN YOU                    11:05:55

6  JOINED THE COMPANY?

7      A.   YES.

8      Q.   SINCE 2005 DO YOU KNOW HOW MUCH -- TAKE A

9  STEP BACK.

10         DOES MR. LARIAN OWN THE WAREHOUSE, THE                    11:06:11

11  HEADQUARTER OFFICES OR THE SHOWROOM SPACE

12  PERSONALLY?

13         MR. ROTH:   OBJECTION; MISSTATES TESTIMONY.

14         THE WITNESS:   NO.

15  BY MR. COREY:                                                    11:06:25

16      Q.   DOES HE OWN THEM THROUGH A COMPANY OR

17  COMPANIES?

18         MR. ROTH:   OBJECTION; FOUNDATION.

19  BY MR. COREY:

20      Q.   IF YOU KNOW.                                            11:06:34

21      A.   YES.

22      Q.   DO YOU KNOW WHAT THE NAME OF THOSE

23  COMPANIES ARE, COMPANY OR COMPANIES ARE?

24         MR. ROTH:   SAME OBJECTION.

25         THE WITNESS:   YES.                                       11:06:40

802

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

EXHIBIT ___3U___

PAGE ___415___

```
 1    BY MR. COREY:

 2        Q.    WHAT -- WHAT ARE THEY?

 3        A.    FOR WHICH ONE?

 4        Q.    FOR ALL OF THEM.   WHAT ARE THEY FOR THE

 5    WAREHOUSE -- WELL, WHAT'S THE NAME OF THE COMPANY OR      11:06:48

 6    COMPANIES FOR THE WAREHOUSE?

 7        A.    TOY BOX LLC.

 8        Q.    IS THAT THE ONLY ONE?

 9        A.    NO.

10        Q.    IS THAT THE ONLY ONE FOR THE WAREHOUSE?        11:07:04

11        A.    YES.

12        Q.    OKAY.   WHAT ABOUT THE HEADQUARTER OFFICES?

13        A.    THE NAME?

14        Q.    THE NAME OF THE COMPANY.

15        A.    IT'S 16300 ROSCOE BOULEVARD LLC.              11:07:13

16        Q.    IS THAT THE ONLY COMPANY THAT OWNS THE

17    HEADQUARTER OFFICES?

18        A.    YES.

19        Q.    WHAT ABOUT THE SHOWROOM SPACE, WHAT'S THE

20    NAME OF THE COMPANY THAT OWNS THAT?                     11:07:37

21        A.    M.G.A. NORTH LLC.

22        Q.    IS THERE ANY COMPANY THAT OWNS THOSE

23    OFFICES?

24        A.    I'M SORRY, I DON'T UNDERSTAND THE QUESTION.

25              MR. ROTH:   OBJECTION; VAGUE AND AMBIGUOUS.    11:07:56
```

803

EXHIBIT ___36___

PAGE ___416___

```
 1    BY MR. COREY:
 2        Q.   SURE.  WE'LL DO IT A LITTLE BIT
 3    DIFFERENTLY.
 4             IS MR. LARIAN -- DOES MR. LARIAN OWN 100
 5    PERCENT OF THE INTEREST IN TOY BOX LLC?            11:08:07
 6             MR. ROTH:  OBJECTION; FOUNDATION.
 7    BY MR. COREY:
 8        Q.   IF YOU KNOW.
 9        A.   NO.
10        Q.   DO YOU KNOW WHO OWNS TOY BOX LLC?        11:08:14
11             MR. ROTH:  OBJECTION; FOUNDATION.
12             THE WITNESS:  YES.
13    BY MR. COREY:
14        Q.   HOW DO YOU KNOW THAT?
15        A.   I RECEIVE K-1S FOR THOSE -- FOR THAT     11:08:27
16    PARTICULAR ENTITY AS PART OF THE PREPARATION OF
17    MR. LARIAN'S TAX RETURN.
18        Q.   WHO OWNS TOY BOX LLC?
19        A.   THERE ARE VARIOUS TRUSTS THAT OWNS IT.
20        Q.   CAN YOU IDENTIFY THOSE TRUSTS FOR ME?    11:09:13
21        A.   YES.
22        Q.   WHAT ARE THEY?
23        A.   THE ISAAC LARIAN GRANTOR ANNUITY TRUST, THE
24    ANGELA LARIAN GRANTOR ANNUITY TRUST, JAHANGIR MAKABI
25    ANNUITY -- GRANTOR ANNUITY TRUST.                 11:09:36
```

804

EXHIBIT _____ 36

PAGE _____ 417

```
 1        Q.    CAN YOU SPELL MR. MAKABI'S FIRST NAME FOR
 2   THE COURT REPORTER?  SHE WOULD REALLY APPRECIATE
 3   THAT.
 4        A.    J-A-H-A-N-G-I-R.
 5              AND SHIRIN MAKABI GRANTOR ANNUITY TRUST.      11:09:51
 6        Q.    ARE THOSE THE ONLY OWNERS --
 7        A.    YES.
 8        Q.    -- OF TOY BOX LLC?
 9              DO YOU KNOW WHAT THE PROPORTION OF
10   OWNERSHIP IS?                                           11:10:09
11        A.    I DO NOT RECALL.
12        Q.    WHO OWNS 16- -- DO YOU KNOW WHO OWNS 16300
13   ROSCOE BOULEVARD LLC?
14        A.    YES.
15        Q.    HOW DO YOU KNOW THAT?                        11:10:19
16        A.    BECAUSE I RECEIVE THE K-1S FOR THAT COMPANY
17   AS WELL.
18        Q.    WHO OWNS 16300 ROSCOE BOULEVARD LLC?
19        A.    ISAAC LARIAN GRANTOR ANNUITY TRUST, ANGELA
20   LARIAN GRANTOR ANNUITY TRUST, LARIAN FAMILY TRUST,     11:10:41
21   JAHANGIR MAKABI GRANTOR ANNUITY TRUST, SHIRIN MAKABI
22   GRANTOR ANNUITY TRUST, MAKABI FAMILY TRUST.
23        Q.    DO YOU KNOW WHAT THE PROPORTIONS OF
24   OWNERSHIP ARE?
25        A.    I DO NOT RECALL.                             11:10:59
```

805

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT _36_

PAGE _418_

```
 1        Q.    WHO OWNS M.G.A. -- DO YOU KNOW WHO OWNS
 2   M.G.A. NORTH LLC?
 3        A.    I DO NOT RECALL.
 4        Q.    DO YOU KNOW WHETHER IT'S -- IT'S WHOLLY
 5   OWNED BY MR. LARIAN OR ONE OF THE TRUSTS, ONE OF HIS      11:11:13
 6   TRUSTS?
 7        A.    NO, IT'S NOT.
 8        Q.    DOES MR. MAKABI HAVE AN INTEREST IN M.G.A.
 9   NORTH LLC?
10        A.    I BELIEVE SO.                                  11:11:26
11        Q.    SINCE YOU JOINED M.G.A., DO YOU KNOW HOW
12   MUCH RENT HAS BEEN PAID TO TOY BOX LLC?
13             MR. ROTH:  OBJECTION; VAGUE AND AMBIGUOUS.
14             THE WITNESS:  NO.
15   BY MR. COREY:                                             11:11:39
16        Q.    SINCE 2005 DO YOU KNOW HOW MUCH RENT HAS
17   BEEN PAID TO 16300 ROSCOE BOULEVARD LLC?
18             MR. ROTH:  SAME OBJECTION.
19             THE WITNESS:  NO.
20   BY MR. COREY:                                             11:11:50
21        Q.    SINCE YOU JOINED M.G.A. DO YOU KNOW HOW
22   MUCH RENT HAS BEEN PAID TO M.G.A. NORTH LLC?
23        A.    NO,
24        Q.    DO YOU KNOW WHAT THE -- THE MONTHLY RENT IS
25   FOR ANY OF THESE FACILITIES?                              11:12:00
```

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

EXHIBIT _____ 36

PAGE _____ 419

```
 1        A.    NO.

 2        Q.    ARE THERE ANY OTHER -- TAKE A STEP BACK.

 3              OTHER THAN THE WAREHOUSE, THE HEADQUARTER

 4   OFFICES AND THE SHOWROOM, IS THERE ANY OTHER REAL

 5   ESTATE THAT MR. LARIAN OWNS OR HAS AN INTEREST IN TO      11:12:22

 6   WHICH M.G.A. ENTERTAINMENT PAYS RENT?

 7        A.    NOT THAT I'M AWARE OF.

 8        Q.    DO YOU KNOW IF ANY OF THE SUBSIDIARIES OF

 9   M.G.A. ENTERTAINMENT PAY RENT FOR FACILITIES IN

10   WHICH MR. LARIAN OWNS OR HAS AN INTEREST?                 11:12:43

11        A.    NOT THAT I'M AWARE OF.

12        Q.    DO YOU KNOW WHETHER M.G.A. HAS EVER MADE A

13   LOAN TO MR. LARIAN?

14        A.    YES.

15              NO, I'M SORRY, CAN YOU REPEAT THAT            11:13:12

16   QUESTION?

17        Q.    HAS M.G.A. EVER MADE A LOAN TO MR. LARIAN?

18        A.    NOT THAT I'M AWARE OF.  SORRY.

19        Q.    HAS -- DOES M.G.A. PAY FOR -- AND I DON'T

20   KNOW IF MR. LARIAN HAS THESE OR NOT -- HIS -- HIS        11:13:35

21   PERSONAL -- EITHER PERSONAL ASSISTANTS OR PRIVATE --

22   PRIVATE EMPLOYEES?

23              MR. ROTH:  OBJECTION.

24   BY MR. COREY:

25        Q.    LIKE DRIVERS OR THINGS LIKE THAT?             11:13:46
```

807

EXHIBIT _____ 34 _____

PAGE _____ 420 _____

1   DISTRIBUTION ACCOUNT?

2       A.   SOME OF THE TRANSACTIONS IN HERE ARE ON

3   BEHALF OF, AND SO IT WOULD -- WE TREAT IT AS A

4   DISTRIBUTION TO THE SHAREHOLDER.

5       Q.   SO -- SO -- IT'S -- SO THAT THE MONEY IS --      11:22:47

6   IS GOING TO ISAAC LARIAN'S FATHER BUT THE SOURCE OF

7   THE MONEY IS EITHER AN ADVANCE -- OR IT'S AN ADVANCE

8   ON A DISTRIBUTION OR SOMETHING LIKE THAT; IS THAT

9   RIGHT?

10      A.   IT'S NOT AN ADVANCE; IT'S TREATED AS A       11:23:03

11  DISTRIBUTION.

12      Q.   IT'S A DISTRIBUTION?

13      A.   (WITNESS NODS HEAD UP AND DOWN.)

14      Q.   IF YOU LOOK AT -- IF YOU LOOK AT ISAAC

15  LARIAN'S ENTRY, STARTING ON 22 IT HAS 1999 INCOME      11:23:34

16  TAXES AND 2001 TAXES, BUT THERE'S NO ENTRY FOR 2000

17  TAXES.

18          DO YOU KNOW WHY THAT IS?

19      A.   NO.

20      Q.   AND DO YOU KNOW WHETHER THESE ARE       11:23:52

21  DISTRIBUTIONS TO -- WELL, HELP ME -- HELP ME

22  UNDERSTAND HOW -- HOW THIS -- WELL, LET'S DO IT THIS

23  WAY.

24          AND WE HAD STARTED DOWN THIS ROAD BEFORE,

25  BUT YOU WERE INSTRUCTED NOT TO ANSWER.  CAN YOU       11:24:16

814

EXHIBIT ___36___

PAGE ___421___

```
 1    IDENTIFY FOR ME THE SHAREHOLDERS IN M.G.A.
 2    ENTERTAINMENT, INC.?
 3         A.   CURRENTLY?
 4         Q.   YES.
 5         A.   LARIAN FAMILY TRUST, ISAAC LARIAN GRANTOR       11:24:31
 6    ANNUITY TRUST, ANGELA LARIAN GRANTOR ANNUITY TRUST,
 7    MAKABI FAMILY TRUST, JAHANGIR MAKABI GRANTOR ANNUITY
 8    TRUST, SHIRIN MAKABI GRANTOR ANNUITY TRUST.
 9         Q.   DO YOU KNOW WHAT THE CURRENT PROPORTIONS OF
10    OWNERSHIP ARE?                                            11:25:07
11         A.   NOT SPECIFIC TO EACH TRUST, NO.
12         Q.   DO YOU KNOW BETWEEN MR. MAKABI'S FAMILY AND
13    MR. -- THE MAKABI TRUSTS AND THE LARIAN TRUSTS?
14         A.   CAN YOU BE MORE SPECIFIC?
15         Q.   SURE.  DO YOU KNOW -- DO YOU KNOW THE          11:25:26
16    PROPORTION OF OWNERSHIP IF YOU DIVIDE IT BETWEEN THE
17    MAKABI TRUSTS AND THE LARIAN TRUSTS?
18         A.   WHICH TRUSTS?
19         Q.   YOU SAID YOU DIDN'T -- TAKE A STEP BACK.
20              DO YOU KNOW WHAT PERCENTAGE OF M.G.A.           11:25:36
21    ENTERTAINMENT'S STOCK THE LARIAN FAMILY TRUST OWNS?
22         A.   NO, I DON'T KNOW SPECIFICALLY THE AMOUNT.
23    I CAN'T RECALL.
24         Q.   WHAT'S -- WHAT'S -- YOU CAN'T RECALL
25    CURRENTLY?                                                11:25:53
```

815

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

EXHIBIT   36

PAGE   422

```
 1      A.    RIGHT.

 2      Q.    WHAT'S YOUR BEST ESTIMATE?

 3            MR. ROTH:   OBJECTION; CALLS FOR

 4  SPECULATION.

 5            THE WITNESS:   I DON'T -- I DON'T KNOW THE          11:26:01

 6  EXACT PERCENTAGE.

 7  BY MR. COREY:

 8      Q.    DO YOU KNOW THE PERCENTAGE BETWEEN -- THAT

 9  THE LARIAN FAMILY TRUST, THE ISAAC LARIAN GRANTOR

10  ANNUITY TRUST, AND THE ANGELA LARIAN GRANTOR ANNUITY          11:26:13

11  TRUSTS TOGETHER OWN?

12      A.    YES.

13      Q.    WHAT IS THAT?

14      A.    81.82 PERCENT.

15      Q.    81-POINT --                                        11:26:23

16      A.    -82.

17      Q.    AND THE BALANCE IS OWNED IN SOME PROPORTION

18  BY THE MAKABI FAMILY TRUST, THE MR. MAKABI GRANTOR

19  ANNUITY TRUST AND THE SHIRIN MAKABI GRANTOR ANNUITY

20  TRUST; CORRECT?                                              11:26:46

21      A.    YES.

22      Q.    AND HOW LONG HAS THAT BEEN THE PROPORTION

23  OF OWNERSHIP?

24      A.    SINCE I'VE BEEN WITH THE COMPANY.

25      Q.    SO THE ENTRIES RELATING TO MR. LARIAN ON           11:26:57
```

816

EXHIBIT ___36___

PAGE ___423___

1    A.   YES.

2    Q..  WHAT DOES THAT -- HOW DO YOU KNOW THAT?

3    A.   HOW DO I KNOW THAT?

4    Q.   UH-HUH.

5    A.   I BELIEVE I HAD DISCUSSIONS WITH SOME -- IN          11:51:52

6    THE ACCOUNTING DEPARTMENT, AMY AND SOME OF THE OTHER

7    PEOPLE WHO ARE -- WHO ARE RESPONSIBLE FOR THIS, FOR

8    THIS ACCOUNT, ABOUT SOME OF THESE RECLASSES.

9    Q.   WHAT DOES TO "RECLASS" DISTRIBUTIONS REFER

10   TO?                                                       11:52:12

11   A.   IT BASICALLY MEANS THAT WE BASICALLY TREAT

12   THE AMOUNT THAT WAS FUNDED TO THE SHAREHOLDERS AS

13   ACTUALLY -- INSTEAD OF A LOAN, IT'S ACTUALLY

14   CONSIDERED A DISTRIBUTION.

15   Q.   DO YOU KNOW WHETHER ANY OF THE LOANS TO              11:52:26

16   MR. MAKABI ARE DOCUMENTED, IF THERE ARE AGREEMENTS

17   SIGNED, OR ARE THEY JUST TREATED AS ADVANCES?

18   A.   I'M NOT AWARE OF ANY DOCUMENTATION.

19   Q.   DO YOU KNOW IF THEY'RE TREATED AS ADVANCES,

20   THE NOTES RECEIVABLE?                                     11:52:56

21   A.   I DON'T KNOW.

22   Q.   AND THERE'S -- THERE'S ANOTHER ENTRY, IF

23   YOU LOOK AT NOTES RECEIVABLE OFFICERS ON LINE 22, IT

24   LOOKS LIKE IT SAYS, "RECLASS ISAAC AND SHIRIN LOAN

25   TO N.R."                                                  11:53:20

825

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT ___34___

PAGE ___424___

```
 1        A.    OKAY.

 2        Q.    THERE'S A REFERENCE THERE TO "TOY BOX

 3   COMMITMENT FEE."

 4              DO YOU KNOW WHAT THAT IS?

 5        A.    NO.                                        11:55:08

 6        Q.    DO YOU KNOW IF -- YOU CAN SET THAT ASIDE.

 7              LET ME GET THIS MARKED AS EXHIBIT 1355.

 8              (EXHIBIT 1355 MARKED.)

 9              MR. ROTH:  TWO.

10              MR. COREY:  YEAH.                           11:56:30

11        Q.    DO YOU RECOGNIZE EXHIBIT 1355?

12        A.    YES.

13        Q.    HAVE YOU SEEN EXHIBIT 1355 BEFORE?

14        A.    YES.

15        Q.    DO YOU KNOW -- YOU CAN REFER TO 1354 IF YOU   11:56:49

16   WANT TO; I JUST HAVE A COUPLE MORE QUESTIONS.

17              THE -- YOU SAID THAT THE INFORMATION ON

18   THIS CAME OUT OF YOUR OLD ACCOUNTING SYSTEM.

19        A.    THIS ONE, MEANING --

20        Q.    ON 1354.                                    11:57:19

21        A.    OH, OKAY.

22        Q.    I -- I'VE GONE BACK.  I'VE GONE BACK ONE.

23        A.    OKAY.

24        Q.    SORRY ABOUT THAT.

25        A.    YES.                                        11:57:27
```

827

EXHIBIT __36__

PAGE __425__

```
 1        Q.   IT CAME OUT -- THIS -- THE INFORMATION ON

 2   EXHIBIT 1354 CAME OUT OF YOUR OLD ACCOUNTING SYSTEM?

 3        A.   YES.

 4        Q.   AND THERE'S AN ENTRY FOR -- OR A NUMBER OF

 5   ENTRIES FOR FARHAD LARIAN, AND IT LOOKS LIKE, AT          11:57:40

 6   LEAST ON THE FIRST PAGE, THERE'S AN ENTRY FOR 1999

 7   INCOME TAXES AND THEN SOME PAYMENTS FOR FEBRUARY OF

 8   '03 THROUGH DECEMBER OF '03.

 9             DO YOU KNOW IF THOSE ARE THE ONLY

10   DISTRIBUTIONS THAT HE RECEIVED FROM THE DISTRIBUTION       11:58:02

11   ACCOUNT DURING THAT TIME PERIOD BETWEEN 1999 AND

12   DECEMBER OF 2003?.

13        A.   I'M NOT SURE.

14        Q.   DID HE -- DO YOU KNOW WHETHER HE RECEIVED

15   ANY DISTRIBUTIONS DUE TO HIS OWNERSHIP OR PART            11:58:27

16   OWNERSHIP OF M.G.A. ENTERTAINMENT IN 1999 OR 2000?

17        A.   REPEAT THAT, PLEASE.

18        Q.   SURE.  DO YOU KNOW WHETHER HE RECEIVED ANY

19   DISTRIBUTIONS FROM M.G.A. ENTERTAINMENT DUE TO HIS

20   OWNERSHIP OR PART OWNERSHIP OF THE COMPANY IN 1999        11:58:45

21   OR 2000?

22        A.   I JUST KNOW WHAT THE DETAILS IS THAT'S

23   STATED IN HERE (INDICATING).  SO IT JUST SHOWS A

24   2000 DISTRIBUTION.

25        Q.   WELL, A -- A 1999 DISTRIBUTION.               11:58:57
```

828

EXHIBIT _____ 36

PAGE _____ 424

1    A.   I -- OTHER THAN THIS, THE INFORMATION HERE,
2  I'M NOT AWARE OF ANY OTHERS (INDICATING).
3    Q.   OKAY.  YOU SAID -- YOU SAID 2 -- IT SHOWS A
4  2000 DISTRIBUTION.  I DON'T THINK YOU MEANT TO SAY
5  THAT.                                                    11:59:11
6    A.   BUT THERE IS A 2000 DISTRIBUTION ON HERE.
7  IT WAS -- THE TRANSACTION DATE WAS IN 2000.
8    Q.   OH, FOR THE 1999 INCOME TAXES?
9    A.   RIGHT.
10    Q.   AND THEN GOING BACK, THE -- DO YOU KNOW      11:59:19
11  WHETHER M.G.A. USED THE SAME ACCOUNTING SYSTEM UP
12  THROUGH THE END OF 2005?
13    A.   YES.
14    Q.   OKAY.  ALL RIGHT.  YOU CAN SET THAT ASIDE.
15        NOW, GOING BACK TO 1355, WHAT IS EXHIBIT      11:59:43
16  1355?
17    A.   IT LOOKS LIKE THE PAYMENTS THAT WERE MADE
18  TO MAKABI FAMILY MEMBERS, VARIOUS TYPES OF PAYMENTS.
19    Q.   AND IS THE INFORMATION -- LOOKING AT THE
20  FRONT OF THIS, IT LOOKS LIKE THE INFORMATION ON THE   12:00:19
21  FIRST PAGE IS FROM '05 AND '06, SO IS -- IS EXHIBIT
22  1355 COMPLETE AND UP TO DATE?
23    A.   YES.
24    Q.   NOW, THERE ARE -- IT SAYS ON HERE, "PAID
25  OUT OF THE CONCENTRATION ACCOUNT," SO THESE ARE ALL   12:00:55

829

EXHIBIT _36_

PAGE _427_

1    WIRE PAYMENTS?

2        A.   YES.

3        Q.   ALL RIGHT.  LET'S JUST START ON THE FIRST

4    PAGE.  IT SAYS THE VENDOR I.D. IS MAKABI.

5             DO YOU KNOW WHAT THAT REFERS TO?                    12:01:22

6        A.   I THINK THAT'S JUST THE -- EVERY SINGLE

7    PAYEE HAS AN IDENTIFICATION, AND THAT'S THE

8    IDENTIFICATION FOR THIS PARTICULAR PAYEE.

9        Q.   IS THIS -- DO YOU KNOW IF THIS IS

10   MR. MAKABI?                                                  12:01:38

11       A.   NO, I DON'T THINK IT IS.

12       Q.   ACTUALLY, IF YOU TURN THE PAGE, IT LOOKS

13   LIKE IT REFERS TO THE MAKABI LIVING TRUST.

14       A.   OR THE FAMILY TRUST, MAKABI FAMILY TRUST.

15       Q.   AND THEN IT SAYS, "PURCHASES ACCOUNT          12:01:56

16   NUMBER," WHAT DOES THAT REFER TO?

17       A.   THAT'S THE ACTUAL G.L. ACCOUNT THAT IT'S

18   BEING HIT AGAINST OR ACCOUNTED FOR, RECORDED IN.

19       Q.   AND -- AND IS THIS -- IS THIS AN ACCOUNT OF

20   THE 3600 SERIES?                                             12:02:17

21       A.   YES.

22       Q.   SO THIS IS JUST -- THIS IS JUST AN EXAMPLE

23   OF THE DISTRIBUTIONS THAT WERE MADE TO THE MAKABI

24   FAMILY TRUST BY WIRE TRANSFER?

25       A.   YES.                                                12:02:35

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

EXHIBIT _____ 36

PAGE _____ 428

```
 1        Q.    AND -- AND -- AND JUST SO I'M CLEAR, BUT IF
 2   I -- IF I LOOK -- THERE -- THESE TRANSACTIONS ON THE
 3   FIRST TWO PAGES OF EXHIBIT 1355 SHOULD BE REFLECTED
 4   IN 1354?
 5        A.    FOR THE YEARS THAT 1354 --                      12:02:50
 6        Q.    CORRECT.
 7        A.    -- HAS INFORMATION.
 8        Q.    RIGHT.   OKAY.   IT'S NOT -- 1355 IS NOT
 9   INTENDED TO REPRESENT A SEPARATE, DISCRETE CATEGORY
10   OF DISTRIBUTION PAYMENTS TO THE MAKABI FAMILY TRUST?   12:03:01
11        A.    NOT THAT I'M AWARE OF, NO.
12        Q.    OKAY.   NOW, IF YOU TURN THE PAGE TO
13   3787429.
14        A.    UH-HUH.
15        Q.    IT LOOKS LIKE THE VENDOR NAME HERE IS        12:03:17
16   SHIRIN MAKABI, THAT'S ACTUALLY ON PAGE 31, COLUMN F,
17   AND IT LOOKS LIKE MOST OF THE ENTRIES ARE FOR --
18   WELL, STRIKE THAT.
19             WHAT DO YOU UNDERSTAND THESE PAYMENTS TO
20   SHIRIN MAKABI TO BE?                                   12:03:41
21        A.    I BELIEVE COLUMN G HAS DESCRIPTION FOR EACH
22   TRANSACTION.
23        Q.    AND COLUMN G -- COLUMN G SAYS
24   "REIMBURSEMENT AND INCOME TAXES" ON PAGE 31.
25             DO YOU KNOW WHAT'S BEING REIMBURSED?          12:03:58
```

831

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT ___ 36

PAGE ___ 429

1      A.    I THINK COLUMN D TELLS YOU IN A LITTLE MORE

2    DETAIL WHAT'S BEING REIMBURSED, EXPENSE ITEMS.

3      Q.    THESE ARE -- THESE ARE EXPENSE REPORT

4    CHECKS?

5      A.    YES.                                          12:04:13

6      Q.    IS SHIRIN MAKABI AN EMPLOYEE OF M.G.A.

7    ENTERTAINMENT?

8      A.    SHE IS.

9      Q.    WHAT IS HER TITLE CURRENTLY?

10     A.    I DON'T KNOW HER EXACT TITLE.                 12:04:20

11     Q.    DO YOU KNOW WHAT HER GENERAL RESPONSIBILITY

12   IS?

13     A.    YES.

14           MR. ROTH:   OBJECTION; FOUNDATION.

15   BY MR. COREY:                                         12:04:30

16     Q.    HOW DO YOU KNOW THAT?

17     A.    BECAUSE I'VE USED HER IN HER CAPACITY AS AN

18   EMPLOYEE FOR THE COMPANY.

19     Q.    WHAT DOES SHE DO?

20     A.    SHE HANDLES TRAVEL FOR THE COMPANY.           12:04:39

21     Q.    IF YOU TURN THE PAGE TO 3787433, YOU'LL SEE

22   THAT IN ADDITION TO WHAT I UNDERSTAND TO BE THE

23   EXPENSE REPORT ENTRIES AND THE TAX ENTRIES, THERE

24   ARE SOME OTHER ENTRIES THERE THAT JUST CONTAIN

25   NUMBERS.                                              12:05:33

832

EXHIBIT ___36___

PAGE ___430___

```
 1          FOR EXAMPLE, ON LINE 64, DO YOU SEE THOSE,
 2    UNDER COLUMN D?
 3          A.   UH-HUH, YES.
 4          Q.   DO YOU KNOW WHAT THOSE REFER TO?
 5          A.   THAT'S A DOCUMENT NUMBER, SO IT'S SOME KIND      12:05:49
 6    OF SOURCE DOCUMENT, SOME REFERENCE TO A SOURCE
 7    DOCUMENT.
 8          Q.   BUT TO KNOW WHAT THOSE SPECIFICALLY ARE YOU
 9    WOULD HAVE TO LOOK AT THE SOURCE DOCUMENT?
10          A.   YES.                                             12:06:11
11          Q.   DO YOU KNOW WHAT OTHER TYPES OF THINGS,
12    OTHER THAN -- THAN EXPENSES IDENTIFIED IN EXPENSE
13    REPORTS MS. MAKABI HAS SOUGHT REIMBURSEMENT FOR?
14          MR. ROTH:   OBJECTION; FOUNDATION.
15          THE WITNESS:   CAN YOU BE MORE SPECIFIC?             12:06:33
16    BY MR. COREY:
17          Q.   NO, ACTUALLY, I CAN'T.  I'M TRYING TO FIND
18    OUT WHAT -- WHAT CATEGORY, WHAT TYPES OF THINGS
19    WOULD FALL WITHIN THE -- THE REIMBURSEMENT FOR THE
20    DOCUMENT NUMBERS IDENTIFIED IN COLUMN B.  I'M JUST        12:06:48
21    NOT SURE -- I'M JUST NOT SURE WHAT THEY WOULD BE.
22    YOU MAY NOT EITHER, BUT -- BUT I CAN'T BE MORE
23    SPECIFIC.
24          A.   OTHER THAN WHAT'S STATED IN THIS
25    DESCRIPTION, "D," COLUMN D, I DON'T KNOW OTHERWISE.       12:06:59
```

833

EXHIBIT ___ 86

PAGE ___ 431

```
1        Q.   DO YOU KNOW IF THAT INFORMATION IS
2   AVAILABLE IN YOUR ACCOUNTING SYSTEM?
3        A.   I DO NOT KNOW.
4        Q.   IF YOU LOOK AT 3787442, IT LOOKS LIKE THERE
5   ARE ENTRIES FOR INTEREST ON THE LAST -- FOR EXAMPLE,     12:07:48
6   ON LINE 300.  DO YOU KNOW WHAT THOSE REFER TO?
7        A.   APPEARS TO BE INTEREST PAYMENTS TO SHIRIN
8   MAKABI.
9        Q.   AND THOSE -- THOSE LOOK LIKE THOSE ARE
10  PAYMENTS THAT ARE MADE TO HER?                           12:08:15
11       A.   YES.
12       Q.   AND WHY WOULD THE -- DO YOU KNOW WHY M.G.A.
13  ENTERTAINMENT WOULD BE MAKING INTEREST PAYMENTS TO
14  MS. -- MRS. MAKABI?
15            MR. ROTH:  OBJECTION; FOUNDATION.             12:08:27
16            THE WITNESS:  THE -- MS. MAKABI LOANED
17  MONEY TO THE COMPANY.
18  BY MR. COREY:
19       Q.   DO YOU KNOW WHY?
20       A.   NO.                                            12:08:40
21            MR. ROTH:  OBJECTION; FOUNDATION, CALLS FOR
22  SPECULATION.
23  BY MR. COREY:
24       Q.   DO YOU KNOW HOW MUCH?
25       A.   NO.                                            12:08:45
```

834

EXHIBIT ___36___

PAGE ___432___

```
 1        Q.    DO YOU KNOW WHEN THE LOAN WAS MADE?

 2        A.    NO.

 3        Q.    DO YOU HAVE AN ESTIMATE AS TO HOW MUCH IT

 4    WOULD BE?

 5            MR. ROTH:   OBJECTION; CALLS FOR              12:08:53

 6    SPECULATION, LACKS FOUNDATION.

 7            THE WITNESS:   NO.

 8    BY MR. COREY:

 9        Q.    DO YOU KNOW WHAT THE INTEREST RATE WAS ON

10    THAT LOAN?                                           12:09:08

11            MR. ROTH:   SAME OBJECTIONS.

12            THE WITNESS:   NO.

13    BY MR. COREY:

14        Q.    IF YOU LOOK UP A LITTLE BIT HIGHER, THERE

15    ARE -- FOR EXAMPLE, ON -- I THINK IT'S LINE 295, IT  12:09:21

16    LOOKS LIKE -- WELL, THERE ARE A SERIES OF NEGATIVE

17    NUMBERS ON THE -- WHAT APPEARS TO BE AN EXPENSE

18    REPORT ENTRY, AND I BELIEVE IT'S ON 295, THERE'S A

19    NEGATIVE ENTRY OF $451,887.

20            AND DO YOU KNOW WHY THERE'S A NEGATIVE        12:09:46

21    ENTRY FOR THAT?

22        A.    NO.

23        Q.    DO YOU KNOW WHY THERE WOULD BE A NEGATIVE

24    ENTRY FOR ANY EXPENSE REPORT ENTRY?

25            MR. ROTH:   OBJECTION; VAGUE AND AMBIGUOUS.   12:10:09
```

835

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

EXHIBIT ___36___

PAGE _____433_____

```
 1        Q.   DO YOU KNOW WHEN THE LOAN WAS MADE?

 2        A.   NO.

 3        Q.   DO YOU HAVE AN ESTIMATE AS TO HOW MUCH IT

 4   WOULD BE?

 5             MR. ROTH:  OBJECTION; CALLS FOR              12:08:53

 6   SPECULATION, LACKS FOUNDATION.

 7             THE WITNESS:  NO.

 8   BY MR. COREY:

 9        Q.   DO YOU KNOW WHAT THE INTEREST RATE WAS ON

10   THAT LOAN?                                             12:09:08

11             MR. ROTH:  SAME OBJECTIONS.

12             THE WITNESS:  NO.

13   BY MR. COREY:

14        Q.   IF YOU LOOK UP A LITTLE BIT HIGHER, THERE

15   ARE -- FOR EXAMPLE, ON -- I THINK IT'S LINE 295, IT    12:09:21

16   LOOKS LIKE -- WELL, THERE ARE A SERIES OF NEGATIVE

17   NUMBERS ON THE -- WHAT APPEARS TO BE AN EXPENSE

18   REPORT ENTRY, AND I BELIEVE IT'S ON 295, THERE'S A

19   NEGATIVE ENTRY OF $451,887.

20             AND DO YOU KNOW WHY THERE'S A NEGATIVE       12:09:46

21   ENTRY FOR THAT?

22        A.   NO.

23        Q.   DO YOU KNOW WHY THERE WOULD BE A NEGATIVE

24   ENTRY FOR ANY EXPENSE REPORT ENTRY?

25             MR. ROTH:  OBJECTION; VAGUE AND AMBIGUOUS.   12:10:09
```

835

EXHIBIT ___80___

PAGE ___434___

```
 1              THE WITNESS:  NO.
 2      BY MR. COREY:
 3          Q.  AND DOES IT MAKE SENSE TO YOU AS AN
 4      ACCOUNTANT?
 5              MR. ROTH:  OBJECTION; VAGUE AND AMBIGUOUS.        12:10:18
 6              THE WITNESS:  I DON'T KNOW WHAT IT'S FOR.
 7      BY MR. COREY:
 8          Q.  I DIDN'T ASK YOU WHAT IT WAS FOR; I ASKED
 9      YOU IF IT MADE SENSE TO YOU AS -- AS AN ACCOUNTANT?
10              MR. ROTH:  OBJECTION; ARGUMENTATIVE.             12:10:33
11              THE WITNESS:  AM I TESTIFYING AS MYSELF OR
12      AS M.G.A.?
13      BY MR. COREY:
14          Q.  YOU CAN TESTIFY AS YOURSELF FOR THIS
15      QUESTION.                                                12:10:44
16              MR. ROTH:  OBJECTION; ARGUMENTATIVE, VAGUE
17      AND AMBIGUOUS.
18              THE WITNESS:  I MEAN, IT COULD BE A MISTAKE
19      THAT'S BEING REVERSED OUT.  SO DOES IT MAKE SENSE TO
20      ME?  POTENTIALLY, IF THERE IS A REASON BEHIND IT.       12:11:02
21      BY MR. COREY:
22          Q.  BUT YOU DON'T KNOW -- YOU DON'T KNOW WHAT
23      THE REASON BEHIND IT WAS?
24          A.  NO.
25          Q.  I MEAN, BECAUSE THE -- THE NUMBERS ARE IN       12:11:13
```

836

EXHIBIT ___ 36 ___

PAGE ___ 435 ___

```
 1    THE HUNDREDS OF THOUSANDS OF DOLLARS FOR -- IF IT'S

 2    A REVERSING ENTRY FOR AN EXPENSE REPORT.  DO YOU SEE

 3    THAT?

 4         A.   (WITNESS NODS HEAD UP AND DOWN.)

 5         Q.   AND DO YOU KNOW IF SHE WAS PAID HUNDREDS OF      12:11:23

 6    THOUSANDS OF DOLLARS FOR EXPENSES?

 7         A.   I DON'T KNOW.

 8         Q.   DO YOU KNOW WHAT THE TOTAL AMOUNT PAID TO

 9    MS. MAKABI -- MRS. MAKABI OUT OF THE CONCENTRATION

10    ACCOUNT IS?                                               12:11:52

11         MR. ROTH:  OBJECTION; VAGUE AND AMBIGUOUS,

12    MISSTATES TESTIMONY.

13         THE WITNESS:  NO.

14    BY MR. COREY:

15         Q.   IS SHE PERSONALLY PAYING FOR COMPANY            12:12:31

16    TRAVEL --

17         MR. ROTH:  OBJECTION.

18    BY MR. COREY:

19         Q.   -- AND THEN -- AND THEN SUBMITTING THAT AS

20    AN EXPENSE?                                               12:12:38

21         MR. ROTH:  OBJECTION; CALLS FOR

22    SPECULATION, LACKS FOUNDATION.

23         THE WITNESS:  I BELIEVE THAT SHE USES A

24    CORPORATE CARD WHEN SHE IS PAYING FOR AND GETTING

25    REIMBURSEMENT.                                            12:12:53
```

837

EXHIBIT _____ 36

PAGE _____ 436

```
 1    BY MR. COREY:
 2        Q.    SHE USES A CORPORATE CARD THAT SHE
 3    PERSONALLY PAYS?
 4        A.    YES.
 5        Q.    AND THEN THE COMPANY REIMBURSES HER?          12:12:59
 6        A.    YES.
 7        Q.    DO YOU KNOW IF THAT'S WHAT THE -- THE
 8    REVERSING ENTRIES ARE HERE FOR?
 9            MR. ROTH:   OBJECTION; CALLS FOR
10    SPECULATION.                                            12:13:10
11            THE WITNESS:   NO.
12    BY MR. COREY:
13        Q.    IF YOU CAN LOOK AT 3787445, THESE LOOK TO
14    BE MR. MAKABI'S -- PAYMENTS MADE TO MR. MAKABI OUT
15    OF THE CONCENTRATION ACCOUNT.                           12:14:01
16            DO YOU AGREE WITH THAT?
17        A.    YES.
18        Q.    AND THEN -- YOU'RE A BETTER ACCOUNTANT THAN
19    I AM.  IF YOU LOOK ON PAGE -- EXCUSE ME -- IF YOU
20    LOOK ON LINE 13, I BELIEVE, THE LOAN OF                 12:14:18
21    $1,195,513.44, THAT'S A LOAN FROM THE COMPANY TO
22    MR. MAKABI; THAT'S NOT A LOAN FROM MR. MAKABI TO THE
23    COMPANY?
24        A.    DID YOU SAY LINE 12?
25        Q.    I SAID "LINE 13," I MEANT LINE 12.            12:14:48
```

838

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT ___36___

PAGE ___437___