QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059 and<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| Defendant. | **[PUBLIC REDACTED] MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' MOTION *IN LIMINE* NO. 3 TO EXCLUDE REFERENCE TO AND USE OF EVIDENCE OF OTHER LEGAL PROCEEDINGS** |
| AND CONSOLIDATED ACTIONS | [Notice of Lodging and Declarations of Tamar Buchakjian and Stephen Hauss filed concurrently herewith]<br><br>Date:  May 21, 2008<br>Time: 1:00 p.m.<br>Place: Courtroom 1<br><br>**Phase 1**<br>Pre-Trial Conference:     May 19, 2008<br>Trial Date:                     May 27, 2008 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS .................................................................................... 2

ARGUMENT ......................................................................................................... 9

I.     EVIDENCE FROM THE PRIOR PROCEEDINGS IS DIRECTLY
RELEVANT AND IS PROBATIVE OF KEY ISSUES IN THIS
ACTION ................................................................................................... 9

II.     PARTY ADMISSIONS FROM PRIOR DISPUTES RELATED TO
THE BRATZ INTELLECTUAL PROPERTY ARE ADMISSIBLE ............. 11

    A.     Courts Routinely Admit Relevant Statements -- Including Party
Admissions -- Made in Other Proceedings ............................................. 11

    B.     Evidence Necessary to Establish Judicial Estoppel Is Also
Relevant ................................................................................................. 13

    C.     Mattel Seeks to Introduce Highly Relevant Party Admissions ............. 13

    D.     Defendants' Authority Purportedly Supporting Exclusion of All
Evidence from Other Trials Is Inapposite ............................................. 15

III.     ADMITTING MATTEL'S EVIDENCE WILL NOT WASTE TIME OR
CONFUSE THE JURY ........................................................................... 19

CONCLUSION ................................................................................................... 21

07209/2485662.2

1

## **TABLE OF AUTHORITIES**

2
**Page**
3

### Cases

4

*Art Attacks Ink. v. MGA Entm't, Inc.*
  HCA 1883/2003.................................................................................. 8

*Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.,*
  1995 WL. 261407 (N.D. Cal. 1995)...................................................... 10

*Carballo-Rodriguez v. Clark Equipment Co.,*
  147 F. Supp. 2d 66 (D. Puerto Rico 2001).......................................... 12

*Contractor Utility Sales Co., Inc. v. Certain-teed Products Corp.,*
  638 F.2d 1061 (7th Cir. 1981)............................................................. 12

*Fun 4 All Corp. v. MGA Entm't, Inc.*
  Arb. (May 29, 2002)............................................................................. 6

*GNB Battery Technologies, Inc. v. Exide Corp.,*
  876 F. Supp. 582 (D. Del. 1995).......................................................... 9

*Gise LLC v. Olympia Terrace Corp.,*
  2003 WL. 25674800 (S.D. Cal. 2003) ................................................ 10

*Gonzalez v. City of Garden Grove,*
  2006 WL. 5112757 (C.D. Cal. 2006).................................................. 10

*Grant-Thornton, LLP v. Federal Deposit Ins. Co.,*
  2007 WL. 518421 (S.D. W.Va. Feb. 13, 2007) .................................. 17

*Gusse v. Damon Corp.,*
  2007 WL. 4440891 (C.D. Cal. 2007)................................................... 19

*Hamilton v. State Farm Fire & Cas. Co.,*
  270 F.3d 778, Charles Alan Wright, Et Al., Federal Practice and Procedure, §
  4477 (3d ed. 2002)............................................................................. 13

*Janky v. Lake County Convention & Visitors Bureau,*
  2007 WL. 733902 ............................................................................... 17

*Johnson v. Ford Motor Co.,*
  988 F.2d 573 (5th Cir. 1993).............................................................. 18

*MGA Entm't, Inc. v. UBI Soft Entm't,*
  Arb. No. AAA Claim No. 50 .......................................................... 5, 6

*McEuin v. Crown Equip. Corp.,*
  328 F.3d 1028 (9th Cir. 2003)............................................................ 16

*Mendenhall v. Cedar Rapids,*
  5 F.3d 1557 (Fed. Cir. 1993).............................................................. 18

ii

07209/2485662.2

*Moore v. Metropolitan Water Reclamation Dist. of Greater Chicago,*
2005 WL. 2007291 (N.D. Ill.)................................................................. 11

*Nettles v. Farmers Ins. Exchange & Farmers Group, Inc.,*
2007 WL. 1417304 (W.D. Wash. 2007) .............................................. 19

*Pfizer Inc. v. Teva Pharmaceuticals USA, Inc.,*
2006 WL. 3041110 (D. N.J.)....................................................... 9, 11, 19

*Rapture Shipping, Ltd. v. Allround Fuel Trading B.V.,*
350 F. Supp. 2d 369 (S.D.N.Y. 2004)................................................. 13

*Raulie v. U.S.,*
400 F.2d 487 (10th Cir. 1968)............................................................ 12

*Restorative Products, Inc. v. NMAR Medical Group, Inc.,*
1996 WL. 221786 (M.D. Fla.)........................................................ 9, 10

*Reynolds Metals Co. v. Alcan, Inc.,*
2006 WL. 5165236 (W.D. Wash. 2006) .............................................. 19

*Rosenberg v. Curry Chevrolet Sales & Service, Inc.,*
1998 WL. 406307 (2d Cir. 1998)........................................................ 12

*Saucier v. Coldwell Banker JME Realty,*
2007 WL. 2898525 (S.D. Miss. Sept. 27, 2007).................................. 17

*Smith v. G.M.G. Partners, L.L.C.,*
2002 WL. 31749184 (N.D. Ill. 2002).................................................. 12

*Smith v. Surjaamadja & Halburton Energy Servs.,*
2003 WL. 21790196 (E.D. La. 2003).................................................. 12

*Trull v. Volkswagen of Am.,*
187 F.3d 88 (1st Cir. 1999) ............................................................... 12

*U.S. v. Gonzales-Flores,*
418 F.3d 1093 (9th Cir. 2005)........................................................... 16

*U.S. v. Hitt,*
981 F.2d 422 (9th Cir. 1992)............................................................. 16

*Ward v. Estaleiro Itajai S/A,*
2008 WL. 1749475 (S.D. Fla. 2008)................................................... 10

**Statutes**

*Fed. R. Evid.* 402 ................................................................................ 11

*Fed. R. Evid.* 403 ................................................................................ 20

*Fed. R. Evid.* 801(d)(2) ................................................................. 12, 15

07209/2485662.2

MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' MOTION IN LIMINE NO. 3
CONFIDENTIAL – ATTORNEY'S EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Trial courts admit evidence arising from other litigation when the evidence is relevant and not subject to exclusion under the hearsay rule or other applicable rule. Defendants' motion *in limine* no. 3 seeks to exclude highly relevant party admissions from other proceedings where the development and ownership of the Bratz intellectual property was the central issue, as it is now. The admissions are damaging to the MGA defendants because they directly contradict their core factual defense -- they show, among other things, that Bryant's drawings were and are the basis upon which all Bratz dolls were created. The admissions could not be more relevant, and the motion must be denied because no authority supports an exclusion of such relevant admissions.

Indeed, the motion tacitly concedes admissions in other proceedings are admissible for impeachment. MGA asserts without explanation, however, that the jury should not be told of the context in which the MGA defendants' damaging admissions were made. Defendants vaguely proffered reason for the exclusion, *i.e.*, that this will require a "trial within a trial," and will confuse the jury, is misguided.

There is no reason to deprive the jury of a brief explanation of the nature of the other proceedings in which MGA's admissions were made. This will allow the jury to understand the purpose and context of MGA's statements. This context can easily be elicited through examination of MGA witnesses. For example, it will not confuse the jury to know that MGA has litigated the ownership and scope of the Bratz intellectual property against other parties, claiming that competitors' dolls infringe Bryant's drawings. To do as the Motion says and withhold the context of the other proceedings -- leaving the jury to wonder why MGA's admissions were made in other proceedings and what context they were made in -- will only confuse the jury. Once the jury understands that an admission was made, and the general context of the

07209/2485662.2

1

MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' MOTION IN LIMINE NO. 3
CONFIDENTIAL – ATTORNEY'S EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

1  admission, it will then understand that MGA was singing a different tune when it

2  suited them to do so.

3       Moreover, the Court can hardly order exclusion of all evidence from

4  "other litigation" because the motion does not even submit the evidence to be

5  excluded.  As with its other motions *in limine*, MGA unfairly and improperly seeks to

6  obtain a broad ruling excluding evidence without advising the Court what it truly

7  seeks to exclude.  For example, this motion *in limine* apparently overlaps with

8  defendants' motion *in limine* no. 1, which seeks the exclusion of all evidence related

9  to the *Larian v. Larian* case, but defendants motion does not address the seemingly

10  obvious overlap. This is exacerbated by the fact that the only authority defendants

11  offer to support exclusion is a handful of unpublished district court opinions granting

12  motions *in limine* that give no indication of the nature of the excluded evidence and

13  no rationale for the exclusion of the evidence (whatever exactly was at issue there).

14  Mattel respectfully submits that the Motion must be denied.

15

16                      **Statement of Facts**

17       The MGA Defendants have been party to numerous legal proceedings in

18  which the core issue was the ownership or infringement of Bratz intellectual property.

19  In each case, the MGA Defendants made admissions through testimony and pleadings

20  regarding when Carter Bryant conceived and drew the Bratz dolls, and when highly

21  relevant matters such as the fact that the dolls are based entirely on the drawings.

22       MGA's Copyright Enforcement Proceedings.

23       MGA has filed at least three copyright enforcement actions in Hong

24  Kong.  In those proceedings, MGA averred that the Bratz dolls were derived from

25  Bryant's two-dimensional drawings -- and no other works -- and that the defendants'

26  dolls infringed the copyright of Bryant's two-dimensional drawings of Bratz dolls.  In

27  at least one of them, MGA obtained an injunction enjoining sales of the competitor's

28

07209/2485662.2

1  dolls, finding that they infringed Bryant's drawings -- the same drawings Mattel

2  claims have been infringed here.

3            a.      *MGA Entm't, Inc. v. Double Grand Corp. Ltd.*, HCA 1883/2003.

4  In *Double Grand*, MGA submitted an affidavit of its employee Lee Shiu Cheung

5  referencing an agreement whereby "all intellectual property rights including

6  copyright subsisting in the works generated by Mr. Bryant shall be owned by MGA

7  US" and stating that "[t]he designs of the BRATZ dolls are all original drawings

8  created by Mr. Bryant using his own independent labour, skill and judgement."

9  (Buchakjian decl.[1], Ex. 83 (Cheung Aff. dated June 18, 2003) ¶ 8.)[2]  MGA then

10 asserted that the Double Grand doll was a "slavish copy" of a mini version of Cloe,

11 (*Id.* ¶ 35), even though the Double Grand doll is <u>less</u> similar to Bryant's drawings

12 than the Bratz dolls.  (Buchakjian decl., Ex. 97 (Affidavit of Lam Yeun Chak dated

13 June 16, 2003) at MGA 0885069.)

14            b.      *MGA Entm't, Inc. v. Toys & Trends*, HCA 1883/2003.  In *Toys &*

15 *Trends*, MGA submitted an affidavit of its CEO Isaac Larian in which Larian swore,

16 "[t]he complaint made by MGA is that the 3 dimensional Funky Tweenz dolls have

17 infringed the 2 dimensional drawings which are artistic works in which copyright

18 subsists."  (Russell Decl., Ex. 16 (Larian Aff. dated July 4, 2002) ¶12.)  In this

19 litigation against Mattel, the MGA Defendants take the directly contrary position that

20 Bratz dolls are not and could never be substantially similar to Bryant's drawings,

21

22  [1]  All citations to the "Buchakjian decl." refer to the Declaration of Tamar Buchakjian
     dated April 28, 2008 filed in support of Mattel's oppositions to defendants' motions in limine
23  on April 14, 2008.

24  [2]  In the Motion, defendants cite to an affidavit of Double Grand employee Peter Leung,
     presumably seeking to exclude that exhibit.  The Leung affidavit is a direct response to the
25  Cheung affidavit submitted by MGA and quoted above, and provides context to the Cheung
     affidavit.  (Russell Dec., Ex. 15 (Leung Aff. dated June 26, 2003), ¶ 7 (direct quotation from
26  Cheung Aff.), ¶ 8, et. seq., (responding).)  All citations to the "Russell decl." refer to the
     Declaration of Jason D. Russell filed in support of defendants' motions in limine on April
27  14, 2008.

28

07209/2485662.2

1  because a three-dimensional doll necessarily comprises engineering work that is not

2  included in the regular realm of drawings. (Buchakjian decl., Ex. 98 (Vilppu Report)

3  at ¶ 25. ("[w]ithout being critical of sketches, in my opinion, one of the reasons that

4  may underlie the differences between the sketches and the dolls is that Carter Bryant

5  does not appear to have the skill set necessary to create three-dimensional "control"

6  drawings that a sculptor would need in order to faithfully execute the drawings in a

7  doll. . . . This type of drawing in three dimensions is a different realm than drawing in

8  two dimensions and I have not seen any drawings indicating that Mr. Bryant was

9  trained in that realm of drawing.")  They also claim, contrary to Larian's affidavit in

10  that case, that Bryant's drawings are only entitled to "thin," not full, protection.

11  (Buchakjian Decl., Ex. 99 (Menell Report) at ¶ 35.)

12         c.  *MGA Entm't, Inc. v. Hunglam Toys Co.*  In *Hunglam Toys*, MGA

13  submitted an affidavit of its counsel Raymond David Black attaching a complaint,

14  stating, "The designs of the BRATZ dolls were originally created by Mr. Carter

15  Bryant in 1999 and subsequently amended." (Buchakjian decl., Ex. 96 (Exhibits to

16  Declaration of Raymond David Black at MGA 0885377-0885378 (Particulars of

17  Claim in *MGA Entm't, Inc. v. Connolly*)).)  MGA apparently relied upon that date to

18  establish priority of its copyright over any design subsequently created by Hunglam.

19  MGA's general counsel Daphne Gronich also submitted an affidavit, stating that

20  "Carter Bryant . . . made . . . 15 design drawings of various BRATZ fashion dolls," "1

21  drawing of a body sketch of the BRATZ fashion dolls," "4 drawings of the facial

22  decoration of the BRATZ dolls," and "8 drawings 4 of which are pantone colour

23  guides of the facial decorations of the BRATZ fashion dolls." (Buchakjian decl., Ex.

24  100 (Gronich Aff. dated December 6, 2005) ¶¶ 5, 6.)  Gronich averred that Bryant

25  developed the design drawings "[b]etween 1998 and prior to 18th September 2000."

26  (*Id.* ¶6(b).)  MGA also averred that the dolls were substantially similar.  Mattel

27  employee Lee Shiu Cheung declared that, "it is really obvious that SCAMPZ dolls are

28  virtually the same as the BRATZ dolls in all material respects." (Buchakjian decl.

4

1   (Cheung Aff. dated August 12, 2003) ¶ 40.)  It is apparent that the Hunglam dolls are

2   less similar to Bratz than Bryant's drawings are.  (Buchakjian decl., Ex. 102 (pictures

3   of Scampz, the allegedly infringing doll).)  Nevertheless, based on that evidence

4   MGA presented, *i.e.*, showing that Bryant created the Bratz drawings and that the

5   creation date was in 1999, MGA obtained an injunction against Double Grand.

6   (Buchakjian decl., Ex. 144 (court order issuing injunction).)

7           d.      In U.S. litigation also, MGA has prosecuted copyright

8   infringement actions by relying on Bryant's drawings of Bratz to show elements of

9   the design that other defendants allegedly copied.  In *MGA Entm't, Inc. v. Multitoy,*

10  *Inc.*, MGA alleged that the defendant counterfeited Bratz dolls.  (Buchakjian decl.,

11  Ex. 104 (Complaint in *Multitoy* case).)  In the complaint, MGA referred to and

12  attached Bryant's initial drawings of the Bratz dolls as constituting the intellectual

13  property that Multitoy infringed by creating a doll similar to Bratz.  (*Id.* ¶ 5, 17 and

14  Ex. 3 thereto at M0078589-M0078590 (registration of copyright of Bryant drawing).)

15  In this action against Mattel, the Defendants have taken the directly contradictory

16  position that Bratz dolls could not possibly be substantially similar to Bryant's

17  drawings because a three-dimensional doll necessarily comprises engineering work

18  that is not included in a drawing.  (Buchakjian decl., Ex. 98 (Vilppu Report) at ¶ 25.)

19          MGA's Litigation Concerning the Licensing of Bratz.

20          Two relevant disputes relate to licensing agreements between MGA and

21  third parties who purchased rights to sell Bratz derivative products.

22          a.      *MGA Entm't, Inc. v. UBI Soft Entm't*, Arb. No. AAA Claim No. 50

23  T 133 00467 (March 13, 2006).

24          The *UBI Soft* action related to a dispute over an agreement whereby

25  MGA licensed the rights to a Bratz video game.  The context of that action was a

26  failed video game based on Bratz.  MGA employee Paula Treantafelles Garcia

27  submitted an affidavit explaining UBI Soft's purported contractual breaches.  (Russell

28  Decl., Ex. 22 (Garcia Aff.).)  MGA took the position through Garcia's affidavit that it

07209/2485662.2

5

1   was important for the Bratz characters in the video games to look just like the Bratz

2   dolls and that UBI Soft failed in that task. (*Id.* ¶¶ 16-22.)

3   MGA also claimed that UBI Soft's Bratz video game failed to use two-

4   dimensional models of Bratz dolls for the video game characters. Garcia averred that

5   UBI Soft's three-dimensional characters were unacceptable to MGA because they did

6   not sufficiently resemble Bratz dolls. (*Id.*) Garcia thus admits that the Bratz-based

7   video game will be more successful if the characters in the game look exactly like

8   Bratz dolls. A corollary to that admission is that neither the mere Bratz name nor the

9   quality of the video game would be sufficient to generate optimal sales of the game.

10  Garcia's admission is consistent with the opinion of Mattel's expert in this case, Carol

11  Scott. Dr. Scott explained that "[t]he sale of . . . other merchandise sold as a part of

12  the Bratz product line or as Bratz licensed goods are directly dependent on, and

13  derive their value from, the success of the Bratz dolls." (Proctor decl.,[3] Ex. 57 (Scott

14  Report) at ¶ 7.) Even if the Bratz-based video game has some non-infringing content,

15  the sales of the game are based largely on the infringing content. Thus, Garcia's

16  admission supports Mattel's claim that there is a causal nexus between MGA's

17  infringement and indirect profits from the Bratz product line or as Bratz licensed

18  goods. That is a key issue in the litigation because Mattel is seeking and Defendants

19  are opposing damages from indirect profits that Defendants obtained through the sale

20  of products that derive their value in large part from the Bryant drawings. *See*

21  *generally* Mattel's Opp'n to Defendants' Motion *in Limine* No. 10.

22            b.    *Fun 4 All Corp. v. MGA Entm't, Inc.*, Arb. (May 29, 2002).

23  The *Fun 4 All* action was venued in Los Angeles. The arbitration

24  concerned an agreement whereby MGA licensed the rights to Bratz plush dolls. Fun

25

26     [3]   All citations to the "Hauss decl." refer to the Declaration of Stephen Hauss dated

27  April 28, 2008 filed in support of Mattel's oppositions to defendants' motions in limine on
    April 14, 2008.

28

1   4 All alleged that it attended a meeting with MGA where Fun 4 All proposed to
2   license the right to make "plush" dolls based on the Bratz characters.  Former MGA
3   employee Lon Ross testified that Fun 4 All made a prototype plush doll from a sketch
4   of Bratz dolls and presented that prototype at the meeting.  (Hauss decl.,[4] Ex. 29
5   (Ross Tr.) at 366:13-367:14.)[5]  The Ross testimony shows that Carter Bryant's design
6   drawings of Bratz dolls were sufficient to create a three-dimensional Bratz doll
7   without the addition of any new artistic inspiration.  That is exactly what Mattel
8   expert Heather McComb opines, and is in direct conflict with the opinion of
9   Defendants' expert Robert Tonner.  (*Compare* Buchakjian decl., Ex. 93 (McComb
10   Report) at 3 (stating that the Bratz doll is "a highly faithful execution of Carter
11   Bryant's original design drawings") *with* Proctor decl., Ex. 52 (Tonner Report) at 12-
12   14 (emphasizing importance of features of Bratz that Bryant did not design including
13   sculpt, face design, hair design, fashion design, among others).)

14   <u>Bratz-Related Actions Filed Against MGA</u>.

15          Since the development of Bratz, third parties have accused MGA of
16   copyright and/or trademark infringement in relation to the Bratz intellectual property.
17   In each of those cases, MGA has taken positions regarding the circumstances under
18   which Carter Bryant developed Bratz.  Those facts are crucial to this action.  First,
19   because Mattel indisputably owns any works that Bryant created while working for
20   Mattel, evidence that Bryant developed the sketches during that time period is
21   relevant.  Second, Mattel alleges that Bratz dolls constitute a direct copy of the
22   Bryant drawings, so evidence that MGA merely "translated" or "transposed" Bryant's
23   drawings into dolls supports Mattel's position.

---

25   [4]  All citations to the "Proctor decl." refer to the Declaration of B. Dylan Proctor dated
26   April 14, 2008 filed in support of Mattel's motions in limine.
   [5]  Fun 4 All further alleged that MGA stole portions of Fun 4 All's prototype plush doll
27   and made the product itself, *i.e.*, rather than license to Fun 4 All the production of plush
   dolls based on the Bratz characters.

07209/2485662.2

MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' MOTION IN LIMINE NO. 3
CONFIDENTIAL – ATTORNEY'S EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20        b.    *Dispute Between MGA Entm't, Inc. and Bandai America, Inc.*

21              In this dispute, MGA claimed that the "Glamma Jammaz dolls,"

22    marketed by Bandai, were substantially similar to the Bratz dolls. (Buchakjian decl.,

23    Ex. 106 (E-mail from Mitchell Kamarack to Cynthia Mishimoto dated February 6,

24    2003).) In the present motion, MGA seeks to exclude all evidence related to the

25    Bandai dispute, and attempts to show that the dispute is irrelevant by attaching a draft

26    settlement agreement relating to that dispute. That draft agreement, however, does

27    not provide a full picture of the dispute, and does not contain the relevant admission.

28    The admissions are set forth in the email to which the settlement agreement was

07209/2485662.2

8

REDACTED

1  attached, and the related emails between the parties. (*Id.*)  For example, MGA

2  claimed that the mere presence of a birthmark on the Glamma Jamma dolls in the

3  same place as the birthmark on a Bratz doll showed substantial similarity between the

4  two products. (*Id.*)  Again, the Bandai Glamma Jammaz doll, is much less similar to

5  Bryant's drawings than the Bratz dolls are. (Buchakjian decl., Ex. 107 (pictures of

6  Glamma Jammaz).)  MGA's admission shows that, by MGA's own account, the

7  Bryant drawings are substantially similar to the Bratz dolls.

8

9  <u>**Argument**</u>

10  I.    <u>**EVIDENCE FROM THE PRIOR PROCEEDINGS IS DIRECTLY**</u>

11        <u>**RELEVANT AND IS PROBATIVE OF KEY ISSUES IN THIS ACTION**</u>

12          The Motion asserts that none of the evidence from or fact of prior

13  proceedings is relevant. (Motion at 3.)  The Motion even states that it is "difficult to

14  imagine how it could be" relevant. (*Id.*)  To the contrary, because the subject matter

15  of those prior proceedings fundamentally overlaps with this action, much of the

16  testimony and many of the pleadings that the MGA Defendants seek to exclude are

17  critically relevant.

18          Each of the prior proceedings relates to the copyright and/or trademark

19  in Bratz dolls and derivative products.  When two or more lawsuits relate to the same

20  intellectual property, the underlying facts may overlap and courts routinely admit

21  evidence from one in the trial of the other. *See GNB Battery Technologies, Inc. v.*

22  *Exide Corp.*, 876 F. Supp. 582, 599 (D. Del. 1995) (denying motion for judgment as

23  matter of law notwithstanding jury verdict in favor of patentee on grounds testimony

24  by defendant in <u>prior litigation</u> supported plaintiff's position that patent was valid);

25  *Pfizer Inc. v. Teva Pharmaceuticals USA, Inc.* 2006 WL 3041110 at *1 (D. N.J.)

26  (denying motion *in limine* because: (1) testimony from a prior action involving the

27  <u>same</u> intellectual property would be relevant; and (2) testimony from a separate

28  proceeding regarding <u>prior art</u> also at issue in current litigation was likely relevant);

07209/2485662.2

9

1   *Restorative Products, Inc. v. NMAR Medical Group, Inc.*, 1996 WL 221786 at *3

2   (M.D. Fla.) (considering testimony of plaintiff in prior proceeding on summary

3   judgment); *cf. Gonzalez v. City of Garden Grove*, 2006 WL 5112757 at *1-2 (C.D.

4   Cal. 2006) (denying motion in limine seeking to exclude all evidence of prior

5   litigation involving prior or subsequent acts similar to those at issue in current

6   litigation); *Gise LLC v. Olympia Terrace Corp.* , 2003 WL 25674800 at *5-7 (S.D.

7   Cal. 2003) (denying motion in limine to exclude evidence from prior litigation where

8   ownership of trademark was at issue in both lawsuits); *Ward v. Estaleiro Itajai S/A*,

9   2008 WL 1749475, at *1 (S.D. Fla. 2008) ("Defendants will be permitted to introduce

10  evidence touching on Plaintiff's prior experience in contracts or agreements similar to

11  the subject of the above-styled cause. Moreover, Defendants are of course free to use

12  testimony given in prior litigation to impeach or refresh recollection or for other uses

13  contemplated by the Federal Rules of Evidence."); *Applied Materials, Inc. v.*

14  *Advanced Semiconductor Materials America, Inc.*, 1995 WL 261407, at *7 (N.D. Cal.

15  1995) (refusing to grant *in limine* request to exclude all evidence of prior litigation

16  where expert testimony from prior litigation relevant to current litigation).[6]

17          In sum, the MGA defendants offer no substantial analysis as to why

18  admissions of fact that directly undermine the factual and legal defense now offered

19  to Mattel's claims is somehow irrelevant. For this reason alone the Motion must be

20  denied.

21

22

23

---

24  [6]   Although the most persuasive authority on this issue relates to court decisions in

25  connection with motions *in limine*, courts have considered testimony and/or pleading from
    prior proceedings in a number of scenarios. *See Restorative Products, Inc. v. NMAR*

26  *Medical Group, Inc.*, 1996 WL 221786 at *3 (M.D. Fla.) (considering prior testimony of

27  plaintiff but denying motion for summary judgment based on reasoning unrelated to
    admissibility of evidence).

28

07209/2485662.2

10

MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' MOTION IN LIMINE NO. 3
CONFIDENTIAL – ATTORNEY'S EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## II.   PARTY ADMISSIONS FROM PRIOR DISPUTES RELATED TO THE BRATZ INTELLECTUAL PROPERTY ARE ADMISSIBLE

### A.   Courts Routinely Admit Relevant Statements -- Including Party Admissions -- Made in Other Proceedings

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules [the Federal Rules of Evidence], or by other rules prescribed by the Supreme Court pursuant to statutory authority. *See Fed. R. Evid.* 402. Defendants' motion is ill conceived because it seeks a blanket prohibition on references to prior proceedings.

Courts admit statements from prior proceedings, just as they admit all other relevant evidence. *Pfizer Inc. v. Teva Pharmaceuticals USA, Inc.*, 2006 WL 3041110 at *1 (D. N.J. 2006) (denying motion in limine to exclude testimony from other litigation on grounds moving party failed to sufficiently describe the evidence it sought to exclude and any reasons the evidence should not be admitted); *Moore v. Metropolitan Water Reclamation Dist. of Greater Chicago*, 2005 WL 2007291 at *10 (N.D. Ill.) (admitting evidence from other proceedings where plaintiffs were other employees who alleged sexual harassment in same workplace). In *Pfizer*, the court assumed that prior lawsuits involving the same intellectual property would be relevant and thus addressed the moving party's more nuanced argument that the testimony from other litigation was irrelevant because the prior actions "did not involve the patents-in-suit and concerned different legal and scientific issues from those now in dispute." *Id.* Even on that more nuanced issue, the *Pfizer* court found that litigation involving <u>different</u> intellectual property and addressing <u>different</u> legal issues could well be relevant. Here, where defendants are seeking a blanket exclusion of references to prior litigation -- including testimony and sworn statements related to the very same copyright and the same legal issues in dispute with Mattel -- the *Pfizer* rationale requires the court to deny the motion.

07209/2485662.2

11

MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' MOTION IN LIMINE NO. 3
CONFIDENTIAL – ATTORNEY'S EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

1    Prior statements and pleadings *by a party* -- whether made in the context

2  of a prior litigation or otherwise -- can constitute non-hearsay admissions. *Fed. R.*

3  *Evid.* 801(d)(2).  Such admissions can be relevant whether or not the party's

4  statements were made in connection with other litigation.  *See Rosenberg v. Curry*

5  *Chevrolet Sales & Service, Inc.*, 1998 WL 406307 at *1 (2d Cir. 1998) (denying

6  motion in limine to exclude pleadings from separate lawsuit on grounds that

7  "pleadings constitute admissions under Rule 801(d)(2) and are admissible in the case

8  in which they were originally filed as well as in any subsequent litigation involving

9  that party.") (internal citations omitted); *Raulie v. U.S.*, 400 F.2d 487, 526 (10th Cir.

10  1968) (affirming judgment on grounds court properly considered prior pleadings);

11  *Trull v. Volkswagen of Am.*, 187 F.3d 88, 99 (1st Cir. 1999) (affirming ruling to admit

12  contradictory evidence provided by a party in prior litigation); *Carballo-Rodriguez v.*

13  *Clark Equipment Co.*, 147 F. Supp. 2d 66, 74 (D. Puerto Rico 2001) (denying motion

14  in limine as to pleading from separate action);[7] *Smith v. G.M.G. Partners, L.L.C.*,

15  2002 WL 31749184, 2 (N.D. Ill. 2002) (denying in part motion in limine and

16  allowing evidence in employment discrimination case of admissions made by

17  plaintiff in unemployment compensation case); *Smith v. Surjaamadja & Halburton*

18  *Energy Servs.*, 2003 WL 21790196, 2 (E.D. La. 2003) (denying motion in limine

19  regarding defendant's pleadings in prior lawsuit on grounds such pleadings constitute

20  admissions and fall within an exception to the hearsay rule); *cf. Contractor Utility*

21  *Sales Co., Inc. v. Certain-teed Products Corp.* 638 F.2d 1061, 1085 (7th Cir. 1981)

22  (abrogated on other grounds) (reversing portion of directed verdict on grounds trial

23  court improperly excluded evidence of prior version of complaint in same case

24

25

---

[7]   The *Carballo-Rodrigues* excluded a complaint from a second collateral case but only
on the grounds the complaint was not properly authenticated, not on relevance or prejudice
grounds.  Here, MGA has itself produced most of the prior pleadings on which Mattel will
seek to rely, and there is no challenge to their authenticity.

1  because prior pleadings constitute admissions). The evidence at issue here is

2  especially reliable to the extent it consists of sworn statements.

3  **B.**  **Evidence Necessary to Establish Judicial Estoppel Is Also Relevant**

4  Courts will consider the rulings of their counterparts in the same or

5  different jurisdictions to establish judicial estoppel. *See Hamilton v. State Farm Fire*

6  *& Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (courts consistently "invoke[] judicial

7  estoppel not only to prevent a party from gaining an advantage by taking inconsistent

8  positions, but also because of 'general consideration[s] of the orderly administration

9  of justice and regard for the dignity of judicial proceedings,' and to 'protect against a

10 litigant playing fast and loose with the courts.'") (quoting Russell v. Rolfs, 893 F.2d

11 1033, 1037 (9th Cir. 1990)); CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE

12 AND PROCEDURE, § 4477 at 587 (3d ed. 2002) ("Inconsistency is the basic element

13 that runs through both judicial reliance and more open-ended 'fast-and-loose' theories

14 of judicial estoppel."); *Rapture Shipping, Ltd. v. Allround Fuel Trading B.V.*, 350 F.

15 Supp. 2d 369, 374 (S.D.N.Y. 2004) (applying judicial estoppel where party took

16 position contrary to successful position it took before Netherlands court).

17 **C.**  **Mattel Seeks to Introduce Highly Relevant Party Admissions**

18 As set forth above, the testimony and pleadings are needed to show

19 central facts in dispute in this litigation, including, most notably: (1) whether Bryant's

20 two dimensional drawings consist of new and unique expression, and are protectible;

21 (2) whether the Bratz dolls are derived from them; and (3) whether Bryant developed

22 Bratz while he was employed by Mattel. This evidence is clearly relevant.

23 Mattel will show that on multiple occasions MGA has admitted that the

24 Bryant drawings are <u>the</u> definitive basis for the Bratz doll designs. For example,

25 MGA's employee affidavit of Lee Shiu Cheung in Double Grand makes clear that

26 MGA entered an agreement stating that "[t]he designs of the BRATZ dolls are all

27 original drawings created by Mr. Bryant using his own independent labour, skill and

28 judgement." (Buchakjian decl., Ex. 82 (Cheung Aff. dated June 18, 2003) ¶ 8.)

07209/2485662.2

13

MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' MOTION IN LIMINE NO. 3
CONFIDENTIAL – ATTORNEY'S EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

1  MGA employee Paula Garcia made the same admission is made in the Art Attacks

2  case, (Hauss decl., Ex. 28 (Garcia Tr.) at 148:7-13, 151:13-19.).  Mattel should be

3  able to use at trial to counter the testimony of MGA expert witness Tonner, who will

4  testify that the unique features of Bratz dolls are largely the inspiration and creation

5  of other designers besides Bryant, including a sculptor and a hair designer.  (Proctor

6  decl., Ex. 52 (Tonner Report) at 12.)

7          Mattel will show that it was possible for MGA to create a product that

8  faithfully translated the Bryant drawings into doll form.  The evidence for that

9  includes the testimony of a MGA employee stating that MGA considered hiring Fun

10  4 All to mass produce "plush" doll versions of Bratz, and that MGA gave Fun 4 All a

11  sketch (rather than a doll) as a guide for Fun 4 All to make the plush doll.  (Hauss

12  decl. (Ross Tr.) at 366:13-367:14.)  And, Mattel will further show that MGA must

13  believe that Bratz dolls were made to look just like Bryant's drawings because MGA

14  uses the copyrights for Bryant's drawings in copyright enforcement actions against

15  companies that make dolls similar to Bratz.  (Buchakjian decl., Ex. 104 (Complaint in

16  *Multitoy* case) ¶ 5, 17 and Ex. 3 thereto at M0078589-M0078590 (registration of

17  copyright of Bryant drawing).)

18          Mattel will also show that MGA has on multiple occasions contended

19  that other dolls were substantially similar to Bryant's drawings when in fact they were

20  much more different from them than are the Bratz dolls.  For example, in the Double

21  Grand case, the Hunglam case, and the Bandai case, the pictures of the accused dolls

22  are far *less* similar to Bryant's drawings than the actual Bratz dolls -- the Bratz dolls

23  unsurprisingly more closely resemble Bryant's drawings than the competitive dolls

24  MGA claimed infringed the drawings.  (Buchakjian decl., Exhs. 97, 102, 103

25  (pictures of Scampz, pictures of Glamma Jammaz, pictures of dolls made by Double

26  Grand).)

27          Moreover, Mattel will show that Defendants made false statements in

28  other litigation regarding the exact same intellectual property.  For example, MGA's

07209/2485662.2

14
MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' MOTION IN LIMINE NO. 3
CONFIDENTIAL – ATTORNEY'S EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

own CEO, Isaac Larian, made false statements regarding his compensation during the period that MGA was selling Bratz in a lawsuit where the plaintiff was seeking to recover profits related to the sale of MGA's allegedly infringing dolls. (*Surpa* at 8.)

Mattel will also show that MGA has prevailed before in arguing positions opposed to its positions in this case. The evidence from the *Hunglam* case is particularly relevant because it establishes that MGA is judicially estopped from arguing that Bryant's dolls were not derived from Bryant's drawings. MGA's consistent position in other courts is that Bryant's drawings are the basis of Bratz dolls, and MGA has obtained an injunction to prevent the sale of supposedly infringing dolls based on that position. Under these circumstances, the Court should apply judicial estoppel to prevent MGA from changing its position.

In sum, Mattel seeks to admit such testimony, affidavits, and pleadings from other litigation involving Defendants because it is relevant to support Defendants' material factual allegations in this case. Mattel does not seek to conduct a trial-within-a-trial with respect to the allegations in the separate lawsuits. To the contrary, Mattel intends to admit specific statements in testimony and pleadings showing that MGA's current positions directly contradict its prior ones.[8]

D.    **Defendants' Authority Purportedly Supporting Exclusion of All Evidence from Other Trials Is Inapposite**

Defendants' authority cannot possibly support their claimed strict rule that evidence arising from other litigation is never admissible. Such a rule would contradict Federal Rule of Evidence 801(d)(2), and each of the cases defendants cite is inapposite here.

---

[8]   MGA's offer to admit these statements for impeachment only would deprive Mattel of the full value of MGA's admissions. For example, Mattel should have the ability to use MGA's admissions in opening statement in anticipation of evidence that Mattel believes MGA will introduce. In any case, party admissions are admissible fully, see *Fed. R. Evid.* 801(d)(2), not just for impeachment purposes.

07209/2485662.2

15

MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' MOTION IN LIMINE NO. 3
CONFIDENTIAL – ATTORNEY'S EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

1     Defendants open their argument with two criminal cases from the Ninth

2  Circuit and another criminal trial from New York, none of which has any bearing

3  here.  Defendants cite those cases as supporting the well-established and yet

4  inapplicable proposition that Federal Rule of Evidence 401 prohibits litigants from

5  presenting at trial evidence that on its face has no bearing on the issues to be decided

6  by the jury.[9]  They then argue that Mattel's evidence arising in the course of other

7  legal proceedings would be prejudicial by citing generic Ninth Circuit authority

8  (mostly in the criminal context) regarding the prejudice and relevance balancing

9  test.[10]  This authority is unhelpful in that it does not address the crux of the issue

10  before the Court -- when evidence arising in the course of other legal proceedings is

11  admissible.

12     Defendants also cite six unpublished district court opinions that appear

13  to exclude some or all evidence arising in the course of other litigation.  But those six

14  cases do not support the proposition that courts should exclude all evidence arising in

15  the course of other litigation.  Instead, they support the proposition -- helpful to

16  Mattel -- that evidence from other proceedings is subject to the same test as any other

17  evidence:

18

19

20     [9]  In *U.S. v. Cabrera*, the court excluded testimony that described Cubans generally as
being involved in drug trade because that testimony could create the inference that
21  defendants were guilty merely because they were Cuban.  *Id.*, 222 F.3d 590 (9th Cir. 2000).
In *U.S. v. Cook*, there were 3 participants in alleged wrongful conduct.  *Id.*, 776 F. Supp.
22  755 (S.D.N.Y. 1991).  Defendant "A" wanted to show that Defendant "B" had a motive to
strike a plea bargain and testify against Defendant "A" by using evidence that Defendant
23  "C" who did not cooperate with authorities received a heavy sentence.  The court excluded
the evidence as irrelevant.  *Id.*  *U.S. v. Gilley* is even less relevant.  There, the court affirmed
24  *denial* of a motion *in limine* to exclude evidence that criminal defendants were in possession
25  of firearms.  *Id.*, 836 F.2d 1206 (9th Cir. 1988).
    [10]  Defendants cite *U.S. v. Gonzales-Flores*, 418 F.3d 1093, 1098-99 (9th Cir. 2005);
26  *U.S. v. Hitt*, 981 F2d 422, 424 (9th Cir. 1992); *McEuin v. Crown Equip. Corp.*, 328 F.3d
27  1028, 1034 (9th Cir. 2003).

28

In *Janky v. Lake County Convention & Visitors Bureau*, 2007 WL 733902 ((N.D. Ind. Mar. 7, 2007), the plaintiff attempted to prove the defendant's willful infringement of plaintiff's music with collateral evidence that defendant infringed the copyright of John Dillinger's music on a separate occasion. The court excluded the evidence on the grounds that the jury would have to evaluate the merits of a completely separate dispute that would only go to the defendant's general character or propensity for wrongful conduct. That authority is inapplicable here because Mattel is seeking to introduce evidence about defendants' conduct and statements with respect to the same intellectual property at issue here -- Bryant's drawings. The timing of Carter Bryant's invention of Bratz and MGA's admissions about what Bryant's drawings cover are legitimate topics of evidence in this case.

In *Grant-Thornton, LLP v. Federal Deposit Ins. Co.*, 2007 WL 518421 (S.D. W.Va. Feb. 13, 2007), the plaintiff attempted to prove fraud and/or negligence allegedly committed by an accounting firm through evidence that it had previously been accused of fraudulent or negligent conduct. The court excluded the evidence because it attempted to prove a propensity for wrongful conduct through other, separate examples of allegedly similar conduct. There was no connection with the prior claims other than the implication that the accounting firm had a propensity for such conduct. Mattel seeks to introduce no such propensity evidence here. Further, the evidence plaintiff wanted to admit related to 12 cases that were all resolved without a finding of negligent or wrongful conduct by the defendant.

In *Saucier v. Coldwell Banker JME Realty*, 2007 WL 2898525 (S.D. Miss. Sept. 27, 2007), the moving party sought to exclude evidence of a settlement offer made in connection with a related case. The court agreed on the grounds that public policy and the Federal Rules of Evidence both support the confidentiality of settlement offers to preserve judicial resources and encourage full and frank exploration of settlement. The *Saucier* court also found that the settlement in the

1   related matter involved no admission of liability and thus information about the

2   settlement might be confusing to a jury. This conclusion has no application here.[11]

3         Defendants cite two other cases. In each case, the plaintiff attempted to

4   include information (not evidence) related to another lawsuit. Therefore, neither of

5   the cases defendants cite reaches any decision as to whether courts should properly

6   admit evidence arising from other litigation. In *Johnson v. Ford Motor Co.*, 988 F.2d

7   573 (5th Cir. 1993), the plaintiff sought to introduce a summary of claims, lawsuits,

8   and complaints against Ford. Plaintiff did not propose to introduce any evidence

9   uncovered in the other cases. *Id.* at 579-80. Because the summary of the prior actions

10  necessarily constituted hearsay, the *Johnson* court excluded the summary.

11        In *Mendenhall v. Cedar Rapids*, 5 F.3d 1557 (Fed. Cir. 1993), the

12  plaintiff sought to introduce the opinion of a sister court that one of its patents was

13  valid and enforceable. In evaluating this issue, the court stated that it "agree[s] that it

14  may be appropriate to admit evidence of prior litigation, under certain circumstances.

15  5 F. 3d 1557, 1574-75 (Fed. Cir. 1993). However, the court noted that admitting the

16  sister court's ruling created the danger of prejudicing defendant by creating a heavy

17  presumption in the jury's mind that the sister court made the right decision -- the

18  effect would be essentially the same as a rule permitting offensive non-mutual

19  collateral estoppel. *Id.* at 1569. Here, Mattel seeks no such presumption. It does not

20  seek to rely on any prior judicial findings, except as relevant to judicial estoppel

21  (*supra* at 14-15.)

22        In sum, none of the authorities cited in the Motion support a blanket

23  prohibition against the admission of evidence from other trials; at most they show

24  

---

[11]  The court in *In re Safety-Kleen Bondholders Litig.*, *Proctor & Gamble Co. v.*

25  *Haugen*, and *Slidell, Inc. v. Millennium, Inorganic Chemicals, Inc.* provided no explanation

26  of the facts of the case and no reasoning supporting its decision. Each of those three

27  opinions is like a black box with the only information provided being the result of the

(footnote continued)

28

1  (unsurprisingly) that the evidence must be considered for its relevance and probity as

2  the circumstances dictate.[12]  *Pfizer Inc.*, 2006 WL 3041110 at *1 (denying motion in

3  limine on grounds moving party failed to meet burden of proof where it did not

4  present sufficient evidence of content of pleadings and testimony it sought to

5  exclude); *Gusse v. Damon Corp.*, 2007 WL 4440891, at * 3 (C.D. Cal. 2007)

6  (denying motion *in limine* where it could not make admissibility determination "in

7  the abstract"); *Nettles v. Farmers Ins. Exchange & Farmers Group, Inc.*, 2007 WL

8  1417304, at *1 (W.D. Wash. 2007) (denying motion *in limine* where court could

9  better determine relevance when offered at trial); *Reynolds Metals Co. v. Alcan, Inc.*,

10  2006 WL 5165236, at *3 (W.D. Wash. 2006) (same).  Here, defendants give the court

11  insufficient information regarding the evidence to be excluded.  For example, taking

12  defendants' request literally, that the Court exclude all evidence from "other

13  litigation," then defendants' motion in limine no. 1 -- related to evidence from the

14  *Larian v. Larian* case would be superfluous.  Defendants provide no explanation as to

15  what litigation is excluded from "other litigation," even though it is apparent that

16  defendants must intend to exclude something.

17

18  **III.   ADMITTING MATTEL'S EVIDENCE WILL NOT WASTE TIME OR**

19  **CONFUSE THE JURY**

20  "Although relevant, evidence may be excluded if its probative value is

21  substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

22

23

---

24  motion.  The Court here cannot reasonably make its decision based on speculation about whether the facts of the cited case might be similar to the facts here.

25  [12]  The Motion should be denied outright, and in any event no evidence from the prior

26  proceedings should be excluded unless and until, at a minimum, the Court has the opportunity to review the admissibility of any portion of the evidence from the other

27  litigation on a case-by-case basis. This can only occur when the parties and the Court have more information about the particular evidence and its context.

28

07209/2485662.2

1  misleading the jury, or by considerations of undue delay, waste of time, or needless

2  presentation of cumulative evidence." *Fed. R. Evid.* 403.

3         Here, defendants cannot meet their burden to show that presenting

4  evidence regarding other litigation where MGA made admissions that, among other

5  things, Bryant's drawings were and are the basis upon which all Bratz dolls were

6  created.  The jury can be told simply -- and this could easily be elicited through cross-

7  examination -- that MGA was party to another action involving the issue of whether

8  Carter Bryant's drawings were the basis for the creation of Bratz.  The jury can

9  likewise be told without any undue prejudice or confusion that MGA filed actions

10  against other parties contending that the Bratz dolls were directly created from

11  Bryant's Bratz drawings, and that their less similar dolls infringed Bryant's drawings.

12  The jury need not be told much more in order for it understand why MGA made the

13  relevant admissions it made.  But this basic context is warranted to permit the jury to

14  understand the importance of the admissions, otherwise it may well be confused.

15  Mattel does not seek to delay or waste its limited trial time on collateral matters.

16  Mattel should not, however, be hampered in its ability to present to the jury the

17  damning evidence of MGA's prior litigation statements and positions.

18

19

20

21

22

23

24

25

26

27

28

07209/2485662.2

1

## Conclusion

2      For all the foregoing reasons, Mattel respectfully requests that the Court

3  deny in its entirety Defendants' Motion *in limine* No. 3 to exclude reference to and

4  use of evidence of other legal proceedings.

5

6  DATED:  April 28, 2008          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

7

8                                  By _____

9                                     John B. Quinn
                                      Attorneys for Plaintiff
10                                    Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' MOTION IN LIMINE NO. 3
CONFIDENTIAL – ATTORNEY'S EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

1

## **PROOF OF SERVICE**

2        I am employed in the County of Los Angeles, State of California.  I am over the age of
eighteen years and not a party to the within action; my business address is Now Legal Service,

3   1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4        On April 28, 2008, I served true copies of the following document(s) described as
**MATTEL, INC.'S OPPOSITION TO THE MGA PARTIES' MOTION *IN LIMINE* NO. 3**

5   **TO EXCLUDE REFERENCE TO AND USE OF EVIDENCE OF OTHER LEGAL
PROCEEDINGS** on the parties in this action as follows:

6

7     Thomas J. Nolan                                   Mark E. Overland
      **Skadden, Arps, Slate, Meageher & Flom**         David C. Scheper

8     **LLP**                                           Alexander H. Cote
      300 South Grand Ave., Ste. 3400                   **Overland Borenstein Scheper & Kim**

9     Los Angeles, CA 90071                             **LLP**
                                                        601 West Fifth Street, 12th Floor

10                                                      Los Angeles, CA 90017

11    John W. Keker, Esq.
      Michael H. Page, Esq.

12    Christina M. Anderson, Esq.
      **Keker & Van Nest, LLP**

13    710 Sansome Street
      San Francisco, CA 94111

14

**BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s)
15   being served.

16        I declare that I am employed in the office of a member of the bar of this Court at whose
direction the service was made.

17

18        Executed on April 28, 2008, at Los Angeles, California.

19

20                                              NOW LEGAL -- Dave Quintana

21

22

23

24

25

26

27

28

07209/2442344.1