**Exhibit 1**

AO88 (Rev. 12/06) Subpoena in a Civil Case.

**Issued by the**

# UNITED STATES DISTRICT COURT

CENTRAL    DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware Corporation

v.

CARTER BRYANT, an Individual; and DOES
1 through 10, inclusive

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] CV 04-9049 SGL (RNBx)
Consolidated with cases CV 04-9059 and
CV 05-2727

TO: Custodian of Records, Wells Fargo Bank
First Interstate Tower
707 Wilshire Blvd., Los Angeles, CA 90017

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, CA 90017          (213) 443-3000 | June 18, 2007<br>10:00 a.m. |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _[signature]_ Attorney for Plaintiff, Mattel, Inc. | June 1, 2007 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
Susan L. Wines, Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor, Los Angeles, CA 90017     (213)443-3000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

**EXHIBIT** 1

**PAGE** 4

AO-88

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).



EXHIBIT **5**

PAGE ____

## ATTACHMENT A

### Documents To Be Produced

1.  **DEFINITIONS.**

      i.   "YOU" or "YOUR" means Wells Fargo Bank, and all of YOUR parents, subsidiaries, affiliates or affiliated entities, past or present employees, agents, representatives, consultants, independent contractors, any predecessors or successors in interest, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

      ii.   "MARIA MARLOW" means the individual named Maria Veronica Marlow, Maria Marlow and/or Veronica Marlow, Social Security No. 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, date of birth 03/02/1966, and any of her current or former agents or representatives, including any trustees acting for her benefit, and any other PERSON acting on her behalf, pursuant to her authority or subject to her control.

      iii.   "ACCOUNT" or "ACCOUNTS" means any account of any type, including but not limited to any checking account, savings account, deposit account, credit card account, line of credit account, charge account, and any other account of any other type.

      iv.   "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and anyone else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

      v.   "DOCUMENT" means any "writing" or "recording" as defined in Federal Rule of Civil Procedure 34 and/or Federal Rule of Evidence 1001 and includes any tangible thing upon which any expression, communication or representation has been recorded, including but not limited to correspondence, e-mails, preliminary, intermediate or final drafts, memoranda, notes, reports of telephone or other oral conversations, audio or videotape recordings, computer tape, computer disk or storage media, computer printout, CD-ROM disk, optical storage disk, other electronic medium, and all other writings and recordings of any kind.

EXHIBIT 1

PAGE 6

vi.    "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

vii.    "REFERRING OR RELATING TO" means reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing or indicating in any way.

viii.    Wherever used herein, the singular shall include the plural and the plural shall include the singular.

2.    <u>INSTRUCTIONS.</u>

a.    YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

b.    If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such DOCUMENTS identify each DOCUMENT and provide the following information:

(1)    The privilege or protection that you claim precludes disclosure;

(2)    The subject matter of the DOCUMENT (without revealing the content as to which the privilege or protection is claimed);

(3)    The date, author(s), addressee(s); and

(4)    Any additional facts on which YOU would base YOUR claim of privilege or protection.

c.    YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

d.    YOU are required to identify the source of all DOCUMENTS

EXHIBIT ___1___

PAGE ___7___

produced, and the person for whom, or department, division or office for which, such DOCUMENTS are maintained.

        e.    Each DOCUMENT shall be produced in its original file folder, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT.

3.    <u>DOCUMENTS TO BE PRODUCED.</u>

    (1)    All DOCUMENTS REFERRING OR RELATING TO MARIA MARLOW from January 1, 1999 to the present, inclusive.

    (2)    All DOCUMENTS REFERRING OR RELATING TO the ACCOUNT maintained by YOU numbered 0804-413086, including but not limited to statements, monthly statements, annual statements, daily transaction history reports, monthly transaction history reports, deposit reports, deposit slips, canceled checks, signature cards, and COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNT, created between January 1, 1999 and the present, inclusive.

    (3)    All DOCUMENTS REFERRING OR RELATING TO the ACCOUNT maintained by YOU numbered 0604-413086, including but not limited to statements, monthly statements, annual statements, daily transaction history reports, monthly transaction history reports, deposit reports, deposit slips, canceled checks, signature cards, and COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNT, created between January 1, 1999 and the present, inclusive.

    (4)    All DOCUMENTS REFERRING OR RELATING TO any other ACCOUNT maintained by YOU that is in the name of, for the benefit of or concerns MARIA MARLOW, including but not limited to statements, monthly statements, annual statements, daily transaction history reports, monthly transaction history reports, deposit reports, deposit slips, canceled checks, signature cards, and COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNTS, created between January , 1999 and the present, inclusive.

    (5)    DOCUMENTS sufficient to show the account number of all ACCOUNTS maintained by YOU in the name of, for the benefit of or concerning MARIA MARLOW between January 1, 1999 and the present, inclusive.

EXHIBIT _____1_____

PAGE _____8_____

07209/2126514.1

**PROOF OF SERVICE**

1
2      I am employed in the County of Los Angeles, State of California.  I am over the age of
eighteen years and not a party to the within action.  My business address is 865 South Figueroa
3      Street, 10th Floor, Los Angeles, California  90017-2543.

4      On June 1, 2007, I served true copies of the following document(s) described as **NOTICE OF SUBPOENA ISSUED TO WELLS FARGO** on the parties in this action as follows:

5

6      DIANA M. TORRES, ESQ.                    MICHAEL H. PAGE, ESQ.
       *O'MELVENY & MEYERS*                     *KEKER & VAN NEST, LLP*
7      400 S. Hope Street                       710 Sansome Street
       Los Angeles, CA  90071                   San Francisco, CA  94111-1704

8      LARRY MCFARLAND, ESQ.
       Keats, McFarland & Wilson, LLP
9      9720 Wilshire Blvd., Penthouse Suite
       Beverly Hills, CA 90212
10

11

12     **BY MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I
deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with
13     postage thereon fully prepaid.

14     I declare that I am employed in the office of a member of the bar of this Court at whose
direction the service was made.

15     Executed on June 1, 2007, at Los Angeles, California.

16

17                                        _Rita Turner_
                                          _____
18                                        Rita Turner

19

20

21

22

23

24

25

26
                                          EXHIBIT ____1____
27
                                          PAGE ____9____
28

09384/2132985.1

PROOF OF SERVICE

**Exhibit 2**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

June 14, 2007

**VIA FACSIMILE AND U.S. MAIL**

Charles Fitzner
Subpoena Processing Representative
Wells Fargo Bank
P.O. Box 29728
Phoenix, Arizona 85038-9728

Re:   Mattel, Inc. v. Bryant et al.
       Bank Reference No. 1169626

Dear Mr. Fitzner:

I follow up on the subpoena issued to Wells Fargo regarding Veronica Marlow. I have reached an agreement with Larry McFarland, counsel for Ms. Marlow, that all documents responsive to the subpoenas should be produced to Mr. McFarland directly.

Please consecutively number the documents you produce with litigation control (or "bates stamp") numbers and designations to clearly indicate their source. For example, you could use the designation: "WELLS MAR #" to indicate documents from Ms. Marlow's records.

If you have any questions, please feel free to call me.

Very truly yours,

Susan L. Wines

cc:   Larry McFarland, Esq. (by fax)

EXHIBIT ____2____

PAGE ____10____

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700

SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2144038.1

**Exhibit 3**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

June 14, 2007

<u>VIA FACSIMILE AND U.S. MAIL</u>
(310) 860-0363

Larry McFarland, Esq.
Keats McFarland & Wilson LLP
9720 Wilshire Boulevard
Penthouse Suite
Beverly Hills, California 90212

Re:   <u>Mattel, Inc. v. Bryant et al.</u>

Dear Mr. McFarland:

I write to follow up on our telephone conversations regarding the subpoena that Mattel, Inc. ("Mattel") served on Wells Fargo Bank ("Wells Fargo") on June 1, 2007 requesting records of Veronica Marlow.  To avoid motion practice on the Wells Fargo subpoena, Mattel is amenable to handling Wells Fargo's production of documents in response to the subpoenas regarding Veronica Marlow in the following way:

1.      As counsel for Ms. Marlow, you will receive production of all documents Wells Fargo produces in response to the subpoenas.

2.      Attached as Exhibit A is a list of individuals and/or entities Mattel has reason to believe are related to MGA, Carter Bryant, Bratz, or other matters relevant to this litigation.

3.      You will review the records produced by Wells Fargo and produce to Mattel any and all records constituting or referring or relating to any payments or transactions that relate to MGA, Isaac Larian, Carter Bryant and/or any of the individuals and/or entities on the list which Mattel provides to you or that otherwise relate to the Bratz project in any manner.  Ms. Marlow will review the produced records and certify that they constitute all records from the documents obtained from Wells Fargo that refer or relate to any payments or transactions regarding the

**EXHIBIT** _____ **3**

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7100 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

**PAGE** _____ **11**

07209/2144030.1

Received:   6/14/07 11:~^AM;                    3108600363 -> QUINN EMA...2L;   Page 3

JUN 14 2007 11:24 '   KEATS MCFARLAND WILSO  310860003L   TO 7141#10306#000033 P.03/03

06-14-2007  08:33am  From-QUINN EMANUEL

individuals, entities and projects on Exhibit A and that none of the records withheld from production relate to the individuals, entities or projects on Exhibit A.

4.      In the event Mattel adds other individuals and/or entities at a later time that it has reason to believe are related to this litigation, it will provide those names to you and the parties will meet and confer regarding the production of any additional documents at that time.

5.      You will also produce to Mattel documents produced by Wells Fargo showing: (1) the identities of individuals with access to or control over any Wells Fargo account for which records are being produced, including, for example, all signature cards and depository agreements and (2) the type of account at issue, whether it be a single, joint or multiple party account.

The purpose of this agreement is to resolve potential motion practice over the subpoena to Wells Fargo. It is without prejudice to Mattel's rights to seek or compel the production of documents of any kind from your clients, MGA, Bryant or any other person or entity, including without limitation, the production of financial documents from any source.

Please let me know if this proposal is satisfactory to you and your clients. If you and your clients agree to this proposal, please sign below and return your signature to me at your earliest convenience.

Very truly yours,

Susan L. Wines

AGREED:

Signed:

Larry McFarland, Esq.
Attorney for Veronica Marlow

Dated: ___6-14-07___

07209/2144030.1

2

EXHIBIT ___3___

PAGE ___12___

**Exhibit 4**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3112**

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

November 29, 2007

**VIA FEDEX**

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:    Mattel, Inc. v. Bryant

Dear Larry:

Further to our conversation of today, enclosed herewith you will find the Wells Fargo documents relating to your client, Veronica Marlow, as produced by Mattel to the other parties in this action.  As I explained, Wells Fargo sent these documents directly to us without any prompting by us, notwithstanding our prior understanding that the documents would be produced to you, and in the normal course of handling they were produced to all parties on October 2, 2007. Please do not hesitate to contact me if you wish to discuss this matter further.

Very truly yours,

B. Dylan Proctor

EXHIBIT _____4_____

PAGE _____13_____

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07209/2307918.1

**Exhibit  5**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

December 6, 2007

**VIA FACSIMILE AND U.S. MAIL**

Larry McFarland, Esq.
Keats, McFarland & Wilson, LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212

Re:    Mattel v. Bryant, et al.

Dear Larry:

I write in response to your letter of December 3, 2007.

First, thank you for agreeing to provide unredacted copies of all documents produced by Ms. Marlow, Ms. Leahy and Ms. Cloonan in this action, other than Ms. Leahy's planner. Although I have not yet had an opportunity to examine its contents, I received today a letter from you enclosing unredacted documents. We will let you know if there are any further issues regarding these documents (other than, of course, our ongoing disagreement with Ms. Leahy's refusal to produce unredacted copies of her planner).

Second, please let us know when we can expect to receive the Bates numbered photocopies of the three-dimensional objects that have been produced by your clients. Regarding your request that we inform you whether we intend to show photographs or videotapes of these objects to your clients at deposition, please understand that we are not required to inform you in advance what documents and exhibits we intend to show your clients at deposition. However, as you know Mattel has subpoenaed the original objects produced by Ms. Leahy for production at the deposition.

EXHIBIT ___5___

PAGE ___14___

**quinn emanuel urquhart oliver & hedges, llp**

07209/2314479.1

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

Third, we continue to disagree with your assertions that your clients' fee agreements with MGA need not be produced for reasons we have explained previously. We appear to have inadvertently failed to include the Order holding that federal privilege law applies in this case with our prior letter. See Order Re Motions Heard On June 11, 2007, dated June 27, 2007, at 33-34. Therefore, a copy of this order is attached for your reference, pursuant to your request. As you will see, the Court has clearly held that the Business and Professions Code's privilege provisions which you cited in your November 21, 2007 letter do not apply in this federal question case, which is governed by federal privilege law. Your misguided assertions about Mattel's objections to other subpoenas and Mattel's responses to other parties' requests for production are irrelevant here. Your clients' obligations to produce fee agreements revealing their biases are quite clear under prior Court Orders. If you will not produce them, we will move to compel their production.

Fourth, your assertion that your clients need not log or provide any description of documents they are withholding on privilege claims is erroneous. Third parties are required to produce privilege logs under the Federal Rules. See Federal Rule of Civil Procedure 45(d)(2) ("When information subject to a subpoena is withheld on a claim that it is privileged . . ., the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim"). The "universally accepted" means of claiming that requested documents are privileged is the production of a document-by-document privilege log. See Gail v. New England Gas Co., Inc., 243 F.R.D. 28, 33 (D. R.I. 2007) (discussing requirement in the context of Rule 45); Martinez v. City of Fresno, 2006 WL 3762050, at *6 (E.D. Cal. 2006) (over-generalized descriptions that fail to adequately identify specific documents are insufficient in a privilege log). Here, you have offered literally no description of the purportedly privileged documents you are withholding. That is clearly improper.

Your remark that you have never before logged "all of the correspondence between me and my clients where my clients are not parties to the litigation" is a red herring. The point is, your clients have not produced a privilege log for *any* of their withheld documents, including any documents they are withholding from key time periods in the case. Nevertheless, in an effort to avoid burdening you and your clients to greatest extent possible, we are willing to accept privilege logs from Ms. Marlow, Ms. Cloonan, Ms. Leahy and Ms. Halpern that do not include or log communications that are exclusively between Marlow, Cloonan, Leahy or Halpern and yourself or other attorneys at your firm sent on or after January 1, 2006, that were not copied or addressed to other parties or third parties and that do not relate to fee or indemnification matters. All other documents should be logged. We will assume you are not willing to do so, but please let us know if you will reconsider and will produce the overdue privilege logs as soon as possible.

Fifth, pursuant to your request for this information, our records indicate that we received Ms. Marlow's Wells Fargo bank records from Wells Fargo on September 6, 2007. Contrary to your assertions, however, and as I explained on our call, we did not violate the agreement between yourself and Ms. Wines in any way. In fact, to the contrary, Ms. Wines sent a letter to Wells

EXHIBIT _____5_____

PAGE _____15_____

Fargo on June 14, 2007 specifically requesting that Wells Fargo produce Ms. Marlow's documents directly to your office.  You were copied on this letter.  Thus, as you know, Wells Fargo's production of these documents to our offices was simply a mistake on the part of Wells Fargo, and nothing more.

Regarding your request that we somehow unring the bell and return the Wells Fargo bank records to you, your letter identifies no basis for your position.  As you have seen, the documents are non-privileged and discoverable, and they were circulated to all parties months ago.  If you have any basis for requesting the return of these non-privileged documents or authorities supporting that request, please let us know.  However, the parties' prior agreement that you would pre-screen these documents appears moot at this stage of the proceedings with respect to those documents.  Please let us know if you wish to discuss this matter further.

In any case, pursuant to your request, we will agree to identify your office as the place of production on future subpoenas for Ms. Marlow's records that we serve on the additional financial institutions you have agreed to identify.  Please provide us with the information concerning additional bank accounts used by Ms. Marlow as soon as possible.

I look forward to hearing from you.


Very truly yours,


B. Dylan Proctor

Enclosures


EXHIBIT ___5___

PAGE ___16___

**Exhibit 6**

CONFORMED COPY
LODGED                    FILED

2007 MAY 16 PM 1: 59   2007 MAY 16 PM 2: 00

CLERK U.S. DISTRICT COURT   CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.   CENTRAL DIST. OF CALIF.
RIVERSIDE                 RIVERSIDE

BY_____

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California  94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

                          EASTERN DIVISION
9

10

11   CARTER BRYANT, an individual,          CASE NO. C 04-09049 SGL (RNBx)
                                            JAMS Reference No. 1100049530
12           Plaintiff,

13        v.                                Consolidated with
                                            Case No. CV 04-09059
14   MATTEL, INC., a Delaware corporation,  Case No. CV 05-2727

15           Defendant.                     **ORDER GRANTING MATTEL'S
                                            MOTION TO COMPEL PRODUCTION
16                                          OF DOCUMENTS AND
                                            INTERROGATORY RESPONSES BY
17   CONSOLIDATED WITH                      MGA**
     MATTEL, INC. v. BRYANT and
18   MGA ENTERTAINMENT, INC. v. MATTEL,
     INC.
19

20                         I. INTRODUCTION

21        On February 2, 2007, Mattel, Inc. ("Mattel") submitted its Motion To Compel Production

22   of Documents and Interrogatory Answers by MGA Entertainment, Inc. ("MGA").  On February

23   20, 2007, MGA submitted its opposition brief, and on February 26, 2007, Mattel submitted a

24   reply brief.  The matter was heard on March 5, 2007.  Thereafter the motion was taken under

25   submission pending the parties' submission of a proposed protective order, which was received

26

27

28   Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)

                                            EXHIBIT ___6___

                                            PAGE ___17___

1  on April 23, 2007.  Having considered the motion papers and comments of counsel at the hearing,

2  Mattel's motion to compel is granted.

3  ## II. BACKGROUND

4  A. Requests for Documents

5  In June of 2004, two months after Mattel filed suit against Bryant, and before MGA

6  became a party to the action, Mattel served MGA with an eight-page subpoena for twenty-one

7  categories of documents, to be produced in ten days.  MGA filed a motion to quash, which the

8  court granted because of the short amount of time provided for compliance with the subpoena.

9  The parties met and conferred in July of 2004, and reached an agreement to limit the scope of

10  some of Mattel's requests.  In particular, the parties agreed to limit production to the "first

11  generation" Bratz dolls.  On August 12, 2004, MGA produced documents.

12  In 2005, the parties stipulated to supplementing their document productions on May 16,

13  2005.  Mattel agreed to continue limiting its discovery requests to "first generation" Bratz dolls.

14  In September of 2006, MGA made a supplemental production of documents.  On February

15  5, 2007, MGA produced about 2,300 pages of documents to replace earlier produced documents

16  with legibility problems.  On February 20, 2007, MGA produced an additional 224 pages of

17  documents to replace earlier produced documents with legibility problems.

18  Mattel now moves to compel MGA to produce documents responsive to its requests.  As a

19  preliminary matter, Mattel contends that MGA's production is deficient because it contains

20  redactions and cut-off text.  Further, Mattel contends that MGA's production is incomplete with

21  respect to essentially five categories of documents.  First, Mattel contends that MGA is

22  withholding documents relating to the origins of Bratz and Bryant's work for MGA.  Mattel

23  believes that MGA's production is incomplete based upon its review of documents that have been

24  produced by third party Steven Linker.  According to Mattel, Linker's documents from October

25  of 2000 show that Bratz was much farther along before Bryant left Mattel than MGA or Bryant

26  previously represented.  Mattel also contends that MGA's responses to the document requests

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT ___6___

PAGE ___18___

1   contain inappropriate limitations, such as MGA's statement that it will produce "relevant and
2   responsive non-objectionable documents" or only that it will produce documents "sufficient" to
3   show when certain dates relating to Bratz occurred. Mattel contends that these "carve outs
4   purport to allow MGA to cherry-pick what it will and will not produce to Mattel." Mattel's
5   Separate Statement at 17:11-13. Mattel also contends that the carve-outs fail to provide notice of
6   what is or is not being withheld. Mattel also contends that MGA's objections based upon its
7   confidentiality concerns or the privacy rights of third parties are unwarranted in light of the
8   protective order in place. In addition, Mattel contends that MGA's objection to producing
9   documents relating to activities or conduct in foreign countries is wholly improper because those
10  documents may contain information relevant to Mattel's claims.
11      Second, Mattel seeks documents relating to the origins of Bratz, regardless of whether
12  such documents relate to the "first generation" Bratz dolls. Mattel argues that whether the work
13  ultimately resulted in Bratz dolls that were released at a particular time does not matter for
14  discovery purposes. Mattel contends that the works created by Bryant during his Mattel
15  employment are highly relevant because Mattel owns them, regardless of whether they resulted in
16  a Bratz doll released at a particular time.[1]
17      Mattel next contends that MGA is improperly withholding documents about designs
18  Bryant created on Bratz dolls that were released after June 2001, even though such designs may
19  be derivative of work he did when employed by Mattel. Mattel contends that it is entitled to
20  explore whether such works and the profits from Bratz dolls other than the "first generation"
21  Bratz dolls were derived from works owned by Mattel both for purposes of establishing liability
22  and damages. Furthermore, Mattel asserts that the "first generation" limitation on discovery is
23  improper in light of Bryant's continuing duty not to use Mattel's confidential and proprietary
24  information as well as MGA's unfair competition claims.

25  _____

26  [1] Mattel also reiterates many of the arguments it made previously in connection with its earlier filed motion to compel Bryant to produce documents.

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                              3

EXHIBIT ___6___
PAGE ___19___

1    Mattel also asserts that MGA is improperly withholding documents relating to products,

2    services and matters other than those relating to "dolls." According to Mattel, it has evidence that

3    Bryant conceived of marketing and advertising ideas for the Bratz line while he was employed by

4    Mattel. Mattel contends that any such ideas or contributions may belong to it pursuant to the

5    Inventions Agreement.

6        Third, Mattel seeks documents relating to all of MGA's payments to Bryant, and not just

7    payments for the "first generation" Bratz dolls. Mattel asserts that such information is relevant

8    because (1) Mattel seeks all benefits Bryant received as a result of violating his duties to Mattel;

9    (2) under the Copyright Act, Mattel is entitled to all profits from infringement as well as actual

10   damages; and (3) payments may show when and what trade secret information Bryant and other

11   defendants allegedly misappropriated from Mattel.

12       Fourth, Mattel seeks documents relating to MGA's agreements with Bryant. Mattel

13   contends that all agreements between Bryant and MGA are relevant, not just the original

14   September 18, 2000 agreement. In particular, Mattel contends that it is entitled to discover all

15   documents relating to MGA and Bryant's alleged joint defense agreement because such

16   information would be relevant to demonstrate bias and lack of credibility.

17       Fifth, Mattel seeks production of all declarations, affidavits and other sworn written

18   statements from other cases that refer or relate to Bratz or Angel. Mattel contends that such

19   information may reveal relevant information about the date of creation of Bryant's Bratz

20   drawings.

21       In response, MGA denies withholding responsive documents and asserts that it has

22   produced volumes of documents responsive to Mattel's requests. In particular, MGA represents

23   that it has produced all responsive and relevant documents that it was able to locate in response to

24   request nos. 6, 7, 9, 26, 27, 32, 33, 34, 35, 36, 55, 69, and 70. Further, MGA asserts that even

25   before the motion was filed, it had agreed to address the vast majority of the issues raised in this

26   motion. In particular, MGA represents that it is diligently working to produce documents related

27

28
Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                                    4



EXHIBIT  6

PAGE  20

1  to Bratz other than "first generation" Bratz in response to request nos. 1, 2, 8, 10, 11, 43, 45, 46,

2  49, 50, 51, 53, 57, 59, 61, 63, 64, 66, 96, 97, 98, 99 and 100.  MGA represents that it informed

3  Mattel that it would produce documents pertaining to subsequent generations of Bratz dolls that

4  have been released on the market.  In addition, MGA represents that it has agreed to produce

5  documents relevant to Bratz or Prayer Angels that it received from Union Bank.  More

6  specifically, MGA represents that it agreed to review and produce documents provided to it by

7  Union Bank for the years 1999 – 2001 concerning payments that it could identify as being for

8  Bratz or Prayer Angels.  MGA also represents that it has agreed to produce royalty statements.

9  Therefore, MGA views the motion as unnecessary.

10       MGA next contends that Mattel's motion should be denied for the following additional

11  reasons.  First, MGA contends that Mattel is not entitled to MGA's product design documents for

12  unreleased products.  MGA asserts that its product design documents for its unreleased toy

13  concepts are among its most highly valuable trade secrets.  Furthermore, MGA contends that

14  designs and drawings for products currently under development, over six years after Bryant first

15  created his original Bratz drawings, have no relevance to any of Mattel's claims.  In the event that

16  documents relating to unreleased products are ordered produced, MGA requests a protective order

17  under Rule 26(c), Fed.R.Civ.P., that limits the dissemination of its documents more drastically

18  than the current protective order provides.  In the alternative, MGA requests that any order

19  compelling production of documents relating to unreleased products should essentially be stayed

20  until after MGA's products are publicly released.

21       Second, MGA contends that Mattel is not entitled to information concerning Bryant's

22  attorneys' fees because the information is privileged.  Furthermore, MGA contends that the

23  information is not relevant to demonstrate bias because "there is no dispute that Bryant's interests

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT 6
PAGE 21

1  in this case are aligned with those of MGA, and that Bryant is 'biased' in that sense." MGA's

2  Opposition at 24:9-12.[2]

3        Third, MGA asserts that Mattel is not entitled to review all non-public witness statements

4  and litigation documents concerning Bratz for a variety of reasons, including because Mattel has

5  refused to produce similar types of documents.  More significantly, MGA contends that Mattel's

6  requests for non-public witness statements are "a blatant attempt to avoid the discovery

7  limitations imposed by both the Federal Rules of Civil Procedure and those additional limitations

8  imposed by this Court." MGA's Opposition at 25:6-7.  MGA explains its position as follows.

9  MGA is involved in litigation against a number of counterfeiters and infringers in Asia.  In 2003,

10 Mattel allegedly began feeding documents concerning "Toon Teens" to those defendants in an

11 attempt to prove that Bryant created Bratz while working at Mattel, even though Mattel

12 abandoned its claims based upon "Toon Teens" in this court.  Thereafter, those defendants took

13 the position that MGA did not own, and therefore could not enforce, the rights to Bratz.  MGA

14 was thus forced to litigate the issue of ownership.  MGA contends that "[i]n effect, by prompting

15 foreign counterfeiters to espouse a theory that Mattel now admits has no merit, Mattel has created

16 a situation in which MGA has been forced to give testimony and provide evidence related to

17 issues in this case that Mattel now seeks to obtain wholesale." MGA's Opposition at 25:5-24.

18       Fourth, MGA contends that Mattel is not entitled to documents concerning a family

19 dispute between MGA's chief executive officer and his brother because such documents are in no

20 way relevant to this lawsuit.  MGA explains that the brothers were involved in an arbitration

21 proceeding relating to MGA's CEO's purchase of his brother's interest in MGA.  Moreover,

22 MGA contends that the brothers were bound by a protective order prohibiting the use of any

23 documents or testimony for any purpose other than the arbitration.

24

25 ─────────────────────

26     [2] Nevertheless, MGA represents that it has produced the only non-privileged document responsive to the request.

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __6__[6]

PAGE __22__

1      Fifth, MGA contends that Mattel is not entitled to its chief executive officer's personnel

2  files because they contain confidential information and are not relevant to the lawsuit.  Sixth,

3  MGA contends that Mattel is not entitled to obtain documents from MGA that belong to, and are

4  in the possession, custody and control of, its indirect foreign subsidiary, MGA HK Ltd.  Lastly,

5  MGA objects to producing documents relating to any testing performed to determine the date that

6  Bratz documents were created.  MGA contends that such discovery is premature and should not

7  proceed until experts are designated.

8      B.  Interrogatories

9      On April 28, 2005, Mattel served its Second Set of Interrogatories.  On May 20, 2005,

10  however, the district court stayed the action.  On May 17, 2006, the district court lifted the stay.

11  On May 30, 2006, MGA responded to the interrogatories.

12      Mattel contends that MGA's responses to the interrogatories were untimely.  Further,

13  Mattel contends that the interrogatory responses to numbers five through eleven are deficient

14  because they lack substantive information and consist almost entirely of objections.  MGA

15  responds that the motion is moot because it is prepared to provide supplemental responses to its

16  interrogatories.  MGA does not otherwise assert any additional grounds for opposing Mattel's

17  motion to compel responses to interrogatories.

18      III. DISCUSSION

19      A.  Rule 26 of the Federal Rules of Civil Procedure

20      Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

21  discovery regarding any matter, not privileged, that is relevant to the claim or defense of any

22  party." Fed.R.Civ.P. 26(b)(1).  "Relevant information need not be admissible at trial if the

23  discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

24  Discovery shall, however, be limited by the court if it determines that: "(i) the discovery sought is

25  unreasonably cumulative or duplicative, or is obtainable from some other source that is more

26  convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

27

28

7

EXHIBIT  6

PAGE  23

1   opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

2   expense of the proposed discovery outweighs its likely benefit, taking into account the needs of

3   the case, the amount in controversy, the parties' resources, the importance of the issues at stake in

4   the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P.

5   26(b)(2).

6       B.  <u>Document Requests</u>

7          1.  <u>Requests re Origins of Bratz and Bryant's Work for MGA (Nos. 6, 26, 27, 32, 33,</u>

8             <u>34, 35, 51, 53, 55, 64, 69, 96, 97, 98, 99, 100</u>

9      The requests above seek discoverable information regarding the origins of Bratz and

10  Bryant's work for MGA.  MGA represents that it has produced all responsive documents in

11  response to request nos. 6, 26, 27, 32, 33, 34, 35, 55,and  69 (MGA's Opposition at 13:4-5), and is

12  "diligently working to produce documents in response to" request nos. 51, 53, 64, 96, 97, 98, 99,

13  and 100, including documents related to Bratz other than "first generation" (MGA's Opposition at

14  14:1-4 and note 39).  MGA does, however, object to producing design documents for unreleased

15  products and documents from MGA Hong Kong.

16      As a threshold matter, MGA's responses are inadequate to the extent MGA has restricted

17  its production to "relevant and responsive non-objectionable documents" or documents

18  "sufficient" to show when events relating to Bratz occurred.  These restrictions suggest that MGA

19  might be excluding documents that are responsive to the request based upon its unilateral

20  determination of what is "relevant" or "sufficient."  Mattel shall provide the responses to

21  document requests ordered herein without these restrictions.

22                 <u>Design Documents for Unreleased Products</u>

23      MGA's design documents for unreleased products are relevant to Mattel's claims and

24  defenses and must be produced.  <u>See</u> Order Modifying Protective Order.  On April 23, 2007, the

25  parties submitted a stipulation to modify the existing protective order to limit the disclosure of

26  design documents for unreleased products that constitute trade secret information.  <u>See</u> Stipulation

27

28

EXHIBIT __6__[8]

PAGE __24__

1  to Modify Protective Order; And Proposed Order Thereon ("stipulation"). The parties' stipulation

2  has been approved and entered as an order of the court. MGA is ordered to produce design

3  documents for unreleased products that are responsive to Mattel's document requests in

4  accordance with the terms of the stipulation and order.

5  <u>Documents from MGA Hong Kong</u>

6  Documents relating to activities or conduct in foreign countries are relevant and

7  discoverable because Mattel has evidence indicating that MGA Hong Kong was involved with

8  Bratz. Nevertheless, MGA objects to producing documents from Hong Kong unless Mattel

9  provides reciprocal discovery from its subsidiaries.

10  Whether MGA is entitled to discovery from Mattel's subsidiaries has not been briefed in

11  the context of this motion, and therefore is not addressed herein. MGA is ordered to produce

12  documents from MGA Hong Kong.

13  Mattel's motion is granted with respect to request nos. 6, 26, 27, 32, 33, 34, 35, 51, 53, 55,

14  64, 69, 96, 97, 98, 99, 100.

15  2. <u>Additional Requests re Origins of Bratz (Nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57, 59,</u>

16  <u>61, 63, 66, 67, 70, 88, 90, 91</u>

17  Mattel contends that MGA is improperly limiting its document production to the "first

18  generation" Bratz dolls. MGA represents, however, that it has agreed to produce subsequent

19  generations of Bratz products (MGA's Opposition at 9:20-25, 13:6-14:1), except design

20  documents for yet unreleased products.

21  As stated previously, design documents for yet unreleased products are relevant and

22  discoverable. <u>See</u> Order Modifying Protective Order. Accordingly, MGA is ordered to produce

23  all non-privileged documents that are responsive to request nos. 7, 8, 9, 10, 11, 12, 13, 36, 46, 57,

24  59, 61, 63, 66, 67, 70, 88, 90, and 91.

25  //

26  //

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___6___

PAGE ___25___

1       3. <u>MGA's Payments to Bryant (Nos.43, 45)</u>

2     MGA represents that it has already agreed to produce documents related to Bratz, without

3 limiting its production to "first generation" Bratz.  MGA's motion at 13:7-14:3.  Nevertheless,

4 Mattel is entitled to an order compelling production of such documents by a date certain.  Mattel's

5 motion is granted with respect to request nos. 43 and 45.

6       4. <u>MGA's Agreements with Bryant (Nos. 1, 2, 49, 50)</u>

7     MGA represents that it has already agreed to produce non-privileged documents

8 responsive to request nos. 1, 2, 49, and 50, even though it believes that such documents are not

9 relevant (MGA's motion at 13:7-14:3).  These requests seek documents relating to fee or

10 indemnity agreements between MGA and Bryant .

11     Fee or indemnity agreements are relevant to demonstrate bias and lack of credibility.

12 Accordingly, Mattel's motion is granted with respect to request nos. 1, 2, 49, and 50.  Any

13 responsive documents withheld on the basis of a privilege must be properly identified in a

14 privilege log.

15       5. <u>Declarations, Affidavits & Other Sworn Written Statements (Nos. 37, 38, 39, 40,</u>

16       <u>41,</u>

17     In request nos. 37, 38, 390, 40, and 41, Mattel seeks production of declarations, affidavits,

18 and other sworn written statements from cases that refer or relate to Bratz or Angel.  Mattel

19 anticipates that these documents could provide evidence relating to the conception date for Bratz.

20     Request nos. 37, 38, 39, 40, and 41 seek relevant information regarding the conception

21 date for Bratz.  MGA admits in its opposition brief that this issue was litigated in its suits against

22 alleged counterfeiters and infringers.[3]  The issue also appears to have been raised in the

23 arbitration proceedings between MGA's chief executive officer, Isaac Larian, and his brother

24 Farhad Larian.  In those proceedings, Farhad Larian alleged that Isaac Larian concealed from him

25 _____

26    [3]  Although MGA questions the propriety of Mattel providing assistance to the alleged counterfeiters and infringers in raising ownership of Bratz as a defense against MGA's claims, MGA has not cited to any legal authority

27 that prohibits Mattel's conduct.

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT __6__

PAGE __26__

that MGA was developing Bratz by early 2000. Nevertheless, MGA objects to producing documents from the Larians' arbitration on the grounds that the arbitration was governed by a protective order that prohibits the use of any documents or testimony for any purpose other than the arbitration. MGA, however, has not provided any evidence of the protective order. Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

### 6. Documents Regarding Date-Testing (Request No. 92)

Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling from any documents that refer or relate to Bratz or Bryant, including without limitation any such testing or sampling in connection with ink, paper or chemical analysis to date any such documents and including without limitation all results and reports relating thereto." MGA contends that the request is premature, and should proceed in the course of expert discovery.

The request calls for relevant discovery and there is no basis for delaying production of responsive documents, other than expert reports. The timing of expert reports is governed by Rule 26(a)(2)(C), Fed.R.Civ.P. Accordingly, Mattel's motion is granted as to request no. 92.

### C. Interrogatories

Mattel contends that MGA's responses to interrogatories were untimely, and therefore MGA has waived its objections to the interrogatories. Pursuant to Rule 33(b)(3), Fed.R.Civ.P., responses to interrogatories are due thirty days after service. In this case, Mattel served its interrogatories on April 28, 2005, and responses were initially due May 31, 2005. The district court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were served. The district court lifted the stay on May 17, 2006.

---

[4] In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's personnel file based upon privacy grounds. The personnel file may have documents relevant to Bratz, and therefore should be produced. The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

11

EXHIBIT __6__

PAGE __27__

1      Neither party has cited to any caselaw governing the calculation of the 30-day period

2  when there is an intervening stay in discovery.  In the absence of any caselaw, MGA's responses

3  will be treated as timely in order to preserve any valid objections MGA may have asserted.

4      Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5  conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6  tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7  before December 31, 2001, including a description of each person's role and the start and end

8  dates of each person's involvement.  In response, MGA asserted numerous objections, but did

9  provide the names of five individuals.

10      The interrogatory clearly seeks information relevant to the claims at issue.  MGA's

11  objections are without merit.  The interrogatory is not vague, ambiguous, compound or overbroad.

12  Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13  for confidential, proprietary or commercially sensitive information, or seeks information

14  protected by the attorney-client privilege.  Furthermore, MGA's response is incomplete insofar as

15  it fails to provide the description of each person's role and the start and end dates of each person's

16  involvement.  Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17  5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18      Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19  embodiment of Angel.  MGA is ordered to provide a complete response to Interrogatory No. 6 for

20  the reasons previously discussed in connection with Interrogatory No. 5.

21      Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22  December 31, 2001.  In response, MGA asserted numerous objections and did not provide any

23  substantive information.

24      MGA's objections are without merit.  The interrogatory clearly seeks information relevant

25  to establishing when Bryant first conceived Bratz.  The interrogatory is not vague, ambiguous,

26  compound or overbroad.  Nor has MGA carried its burden of establishing that the interrogatory is

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT  12

PAGE

1  unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2  seeks information protected by the attorney-client privilege.  Accordingly, MG is ordered to

3  provide a complete response to Interrogatory No. 7.

4      Interrogatory No.8 asks MGA to identify each and every embodiment of Angel.  MGA is

5  ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6  discussed in connection with Interrogatory No. 7.

7      Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8  or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9  or painting of Bratz.  In response, MGA asserted numerous objections and did not provide any

10  substantive information.

11      The interrogatory seeks information relevant to establishing when Bryant first conceived

12  Bratz.  Furthermore, MGA's boiler-plate objections are unsubstantiated.  Accordingly, MGA is

13  ordered to provide a complete response to Interrogatory No. 9.

14      Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15  was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16  which each such instance occurred, the location of each show or exhibit, and the identity of

17  persons with knowledge of the shows or exhibits.  In response, MGA asserted numerous

18  objections and provided the following information:  Hong Kong Toy Fair in Hong Kong in or

19  about January 2001 and New York Toy Fair, New York, in or about February 2001.

20      Once again, MGA's boiler-plate objections are unsubstantiated.  The information is

21  potentially relevant to establish when Bryant conceived Bratz.  Further, the response is

22  incomplete insofar as it fails to identify any persons with knowledge.  Therefore, MGA is ordered

23  to provide a complete response to Interrogatory No. 10.

24      Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25  including without limitation each office, home and cell phone number, in the name of, for the

26  benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT ___6___

PAGE ___29___

1   January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2   limitation any long-distance carrier) for each such number.  In response, MGA asserted numerous

3   boiler-plate objections.

4        Once again, MGA has failed to substantiate any of its objections with supporting

5   declarations or legal authorities.  Accordingly, all objections are overruled and MGA is ordered to

6   provide a full response to Interrogatory No. 11.

7   IV. CONCLUSION

8        For the reasons set forth above, Mattel's motion to compel production of documents is

9   granted.  MGA shall produce all non-privileged documents that are responsive to the requests

10  identified in this Order.  Further, MGA shall produce all documents in un-redacted form, except

11  for redactions that are justified by the attorney-client privilege or work product doctrine.  Mattel's

12  motion to compel interrogatory answers is also granted.  MGA shall produce documents and

13  provide responses to interrogatories consistent with this Order, and produce a privilege log in

14  compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007.  Mattel's request for

15  sanctions is denied.

16       Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17  Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21  Dated: May /5/, 2007

22                              HON. EDWARD A. INFANTE (Ret.)

23                              Discovery Master

24

25

26

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

EXHIBIT ___6___ [14]

PAGE ___30___

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT 6

PAGE 31

**Exhibit 7**

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL,      )
                                   )
                   PLAINTIFF,      )
                                   )
          V.                       )      NO. CV 04-9040 SGL (RNBX)
                                   )
MATTEL, INC., A DELAWARE           )
CORPORATION,                       )
                                   )
                   DEFENDANTS.     )
_____)
                                   )
AND CONSOLIDATED ACTION (S).       )
_____)


# C O N F I D E N T I A L

(PURSUANT TO PROTECTIVE ORDER, THIS TRANSCRIPT HAS BEEN DESIGNATED CONFIDENTIAL, ATTORNEYS' EYES ONLY)

## DEPOSITION OF VERONICA MARLOW

## DECEMBER 28, 2007



REPORTED BY:
PAULA A. PYBURN
CSR NO. 7304
JOB NO. 07AE765-PP

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT ___7___

PAGE ___32___

1     A.   THINK.  NO, I DON'T RECALL.

2     Q.   HOW IS IT YOU -- YOU CAME TO HIRE HER ON?

3     A.   I CALLED AND ASK HER IF SHE WILL BE

4  INTERESTED IN HELPING ME OUT.

5     Q.   DID YOU GET HER NAME FROM SOMEONE?          05:31:00

6     A.   NO.  FROM HER.  I -- I KNEW HER FROM MATTEL

7  WHEN I WORK AT MATTEL.

8     Q.   I SEE.  SO MS. CABRERA WAS AT -- WAS AT

9  MATTEL AT SOME POINT?

10    A.   YES.                                        05:31:19

11    Q.   DO YOU HAVE A GENERAL UNDERSTANDING AS TO

12 WHAT SHE DID AT MATTEL?

13    A.   SHE'S A SEAMSTRESS.

14    Q.   AND I TAKE IT YOU CALLED HER UP TO -- TO

15 GET HER ONTO THE PROJECT?                           05:31:43

16    A.   YES.

17    Q.   WAS SHE STILL AT MATTEL AT THAT TIME?

18    A.   YES.

19    Q.   DID YOU CALL HER AT MATTEL OR DID -- DID

20 YOU CALL HER AT HOME?                               05:31:51

21    A.   AT HOME.  I -- I -- SHE'S MY FRIEND, SO I

22 HAD HER PHONE -- HOME PHONE NUMBER.

23    Q.   SO YOU CALLED HER AT HOME AND ASKED HER TO

24 WORK ON BRATZ?

25    A.   YES.                                        05:31:59

288

EXHIBIT _____ 7

PAGE _____ 33

1        MR. MCFARLAND:   OBJECTION; MISSTATES HER

2   TESTIMONY.

3        THE WITNESS:  I DIDN'T SAY TO WORK ON

4   BRATZ.  I ASK -- I TOLD HER I HAD SOME WORK, IF SHE

5   WAS WILLING TO HELP ME.                              05:32:13

6   BY MR. ZELLER:

7        Q.   AND DID SHE IN FACT DO WORK ON THE BRATZ

8   PROJECT?

9        A.   YES, SHE DID.

10       Q.   WHAT DID SHE DO?                            05:32:24

11       A.   SHE WOULD SEW THE OUTFITS.

12       Q.   HOW LONG DID SHE WORK ON THE BRATZ PROJECT

13  FOR YOU?

14       A.   SHE WORKED FROM THAT PERIOD UNTIL THEY --

15  UNTIL I STOPPED WORKING FOR BRATZ.                    05:32:49

16       Q.   I SEE.  SO THE -- THE WHOLE TIME PERIOD YOU

17  WERE DOING WORK FOR M.G.A. ON BRATZ, YOU HAD HER

18  DOING WORK FOR YOU?

19       A.   YES.

20       Q.   THAT WAS ON THE BRATZ PROJECT?              05:33:00

21       A.   THAT'S CORRECT.

22       Q.   DID YOU EVER TELL HER IT WAS THE BRATZ

23  PROJECT?

24       A.   NO, I DID NOT AT FIRST.

25       Q.   WELL, WHEN I SAY "EVER," I MEANT EVER.      05:33:08

289

EXHIBIT _____ 7

PAGE _____ 34

1    Q.    DID SHE EVER EXPRESS ANY CONCERN THAT

2    MATTEL WOULD FIND OUT?

3    A.    NO.    THAT SHE WAS WORKING ON THE BRATZ?

4    Q.    RIGHT.

5    A.    NO.                                          05:50:26

6    Q.    WERE YOU EVER CONCERNED ABOUT THAT?

7    A.    NO.

8    Q.    SO IF I UNDERSTAND YOU CORRECTLY, YOU DON'T

9    SEE ANYTHING WRONG WITH A MATTEL EMPLOYEE WORKING ON

10   THE BRATZ FASHIONS; IS THAT TRUE?                  05:50:37

11   A.    YEAH, THAT'S TRUE.

12   Q.    NOTHING TROUBLING AT ALL ABOUT IT TO YOU?

13   A.    NO.

14   Q.    HOW MANY PEOPLE HAVE YOU HAD DO WORK FOR

15   YOU WHILE THEY WERE EMPLOYED BY MATTEL WHEN YOU WERE   05:50:49

16   NOT A MATTEL EMPLOYEE?

17   A.    I HAD ISABELLE CABRERA AND LATER ON

18   BEATRICE MORALES.

19   Q.    AND WHAT DID YOU HAVE HER WORK ON?

20   A.    ON BRATZ.                                    05:51:09

21   Q.    AND WHAT WAS YOUR GENERAL UNDERSTANDING OF

22   WHAT IT IS THAT BEATRICE MORALES DID AT MATTEL?

23   A.    SHE'S ALSO A SEAMSTRESS, AND ISABELLE'S

24   FRIEND AND -- AND WE NEEDED HELP, AND ISABEL

25   SUGGESTED TO INVITE BEATRICE TO COME AND HELP US.   05:51:29

306

EXHIBIT ____7____

PAGE ____35____

1    Q.   WERE YOU INTRODUCED TO MS. MORALES THROUGH

2  ISABEL, OR DID YOU KNOW HER INDEPENDENTLY?

3    A.   I WAS INTRODUCED TO MS. MORALES THROUGH

4  ISABEL.

5    Q.   I'M SORRY, I DIDN'T CATCH THAT.                05:51:50

6    A.   I WAS INTRODUCED TO MRS. MORALES THROUGH

7  ISABEL.

8    Q.   AND DID MS. MORALES WORK ON BRATZ FASHIONS

9  AS WELL?

10    A.   YES.                                           05:52:07

11    Q.   AND WHAT TIME PERIOD DID SHE DO THAT?

12    A.   IT WAS A YEAR OR SO AFTER THE BRATZ CAME

13  OUT.

14         YOU HAVE THE DATES, BY THE WAY, YOU HAVE

15  HER SIGNED RECEIPTS AND TIME SHEET AND THAT ALL,     05:52:22

16  SO...

17    Q.   I TAKE IT THESE ARE ALL DOCUMENTS YOU GAVE

18  TO YOUR COUNSEL?

19    A.   YES.

20    Q.   YOU HAD MENTIONED THAT MS. MORALES WORKED      05:52:35

21  ON THE BRATZ FASHIONS A YEAR OR SO AFTER THE BRATZ

22  FIRST CAME OUT?

23    A.   YES.

24    Q.   AND FOR HOW LONG DID SHE WORK ON THE BRATZ

25  FASHIONS?                                            05:52:51

307

EXHIBIT ____7____

PAGE ____36____

1    A.    UNTIL I QUIT.   UNTIL I QUIT BRATZ.

2    Q.    WHERE IS IT THAT MS. MORALES LIVES?

3    A.    IT'S HAWTHORNE, THAT AREA.   I'M --

4    Q.    I'M SORRY WHERE?

5    A.    HAWTHORNE.                                    05:53:14

6    Q.    HAWTHORNE?

7    A.    I BELIEVE IT IS HAWTHORNE.   IT'S AROUND

8    THAT NEIGHBORHOOD.

9    Q.    OTHER THAN MS. CABRERA AND MS. MORALES WHO

10   YOU HAVE DISCUSSED SO FAR, ARE THERE ANY OTHER        05:53:34

11   PERSONS WHO YOU HIRED ON TO DO WORK FOR YOU WHILE

12   THEY WERE MATTEL EMPLOYEES AND YOU WERE NOT WORKING

13   FOR MATTEL?

14   A.    NO.

15   Q.    SO THOSE ARE THE TWO?                         05:53:44

16   A.    YEAH.

17   Q.    THE ONLY TWO?

18   A.    YES.

19   Q.    HAVE YOU DISCUSSED THIS LAWSUIT WITH

20   MS. CABRERA?                                        05:54:03

21   A.    NO.

22   Q.    HAVE --

23   A.    EXCEPT THAT AFTER I KNEW THAT I WAS GOING

24   TO HAVE THIS DEPOSITION I TOLD HER, I WARNED HER,

25   LOOK, YOUR NAME IS GOING TO COME UP, I GAVE TO MY    05:54:14

308

EXHIBIT _____7_____

PAGE _____37_____

1    A.    YES.

2    Q.    ON ALL FOUR OF THEM?

3    A.    YES, ALL FOUR OF THEM.

4    Q.    DID YOU DO THE -- THE WORK ON THESE WIGS

5    YOURSELF, OR DID YOU HAVE SOMEONE HELP?                    07:18:58

6    A.    I DID THEM MYSELF.

7    Q.    IN FACT, LET ME ASK YOU THIS MORE

8    GENERALLY.  YOU'VE OBVIOUSLY TOLD ME SO FAR ABOUT

9    PEDRO SALAZAR, ANA ISABEL CABRERA, AND BEATRICE

10   MORALES --                                                 07:19:26

11   A.    UH-HUH.

12   Q.    -- AS HELPING YOU OR DOING WORK FOR YOU ON

13   THE BRATZ PROJECT; RIGHT?

14   A.    RIGHT.

15   Q.    IS THERE ANYONE ELSE WHO YOU HAD WORK FOR     07:19:32

16   YOU ON THE BRATZ PROJECT?

17   A.    I'M -- I'M GLAD YOU MENTIONED THAT, BECAUSE

18   I FAILED TO TELL YOU THAT PEDRO SALAZAR'S WIFE,

19   MARIA ELENA SALAZAR, ALSO WORK ON SOME OF THESE

20   FASHION, BECAUSE SHE WAS HELPING HER HUSBAND, AND AT       07:19:49

21   THE TIME SHE WAS WORKING FOR MATTEL.

22   Q.    MARIA SALAZAR WAS?

23   A.    YEAH, MARIA ELENA SALAZAR.

24   Q.    OH, I'M SORRY, MARIA ELENA?

25   A.    ELENA, YEAH.  IT'S WEIRD YOU SAY MARIA        07:20:04

363

EXHIBIT ___7___

PAGE ___38___

```
 1   STATE OF CALIFORNIA      )

 2   COUNTY OF RIVERSIDE      )  SS.

 3

 4        I, PAULA A. PYBURN, CSR NO. 7304, R.P.R., C.L.R., IN

 5   AND FOR THE STATE OF CALIFORNIA, DO HEREBY CERTIFY:

 6        I AM THE DEPOSITION OFFICER THAT STENOGRAPHICALLY

 7   RECORDED THE TESTIMONY IN THE FOREGOING DEPOSITION;

 8        PRIOR TO BEING EXAMINED THE DEPONENT WAS FIRST DULY

 9   SWORN BY ME;

10        THE FOREGOING TRANSCRIPT IS A TRUE RECORD OF THE

11   TESTIMONY GIVEN.

12        BEFORE COMPLETION OF THE DEPOSITION, REVIEW OF THE

13   TRANSCRIPT [X] WAS [ ] WAS NOT REQUESTED.   IF REQUESTED,

14   ANY CHANGES MADE BY THE DEPONENT (AND PROVIDED TO THE

15   REPORTER) DURING THE PERIOD ALLOWED ARE APPENDED HERETO.

16

17   DATED _____:

18

19

20        PAULA A. PYBURN
          C.S.R. NO. 7304, R.P.R.
21        CERTIFIED LIVENOTE REPORTER

22

23

24

25
```

EXHIBIT ____7____

PAGE ____39____

**Exhibit 8**

Page 1

TRANSCRIPTION OF RECORDING

VOLUME I

JANUARY 2, 2008

EXHIBIT ____8____

PAGE ____40____

Page 118

1    KEEP WORKING WITH HER.

2         MS. FRIED:  RIGHT.

3         THE WITNESS:  BECAUSE IT'S -- IT'S NOT --

4    IT'S -- I DON'T WANT TO LOSE MY JOB.  AND THEN I

5    DECIDE TO PUT MY -- MY -- MY SISTER-IN-LAW'S

6    NAME, AND THEN I TOLD HER I DON'T WANT -- I DON'T

7    WANT CHECKS.  I DON'T WANT NOTHING.  AND THEN SHE

8    PAY ME IN CASH.

9         MS. FRIED:  SHE STARTED PAYING IN YOU CASH?

10        THE WITNESS:  IN CASH.

11   BY MR. DE ANDA:

12        Q    FROM WHAT YEAR?  FROM 2003?

13        A    2003.

14        Q    NOW, YOU SAID YOU PUT IT IN YOUR

15   SISTER-IN-LAW'S NAME.  I DON'T UNDERSTAND THAT.

16   WHAT DO YOU MEAN?

17        A    LIKE I DON'T WANT TO -- BECAUSE SHE

18   GIVE ME THE CHECKS IN MY NAME, AND I SAY I

19   WANT -- I WANT TO STOP.  I DON'T WANT TO HELP YOU

20   NO MORE.

21             AND THEN I SAY MAYBE IF I USE MY --

22   LIKE I ASK MY SISTER-IN-LAW, BECAUSE SHE IS IN

23   MEXICO, AND IF SHE LET ME TO USE HER SOCIAL

24   SECURITY, HER NAME, AND I WORK IN HER NAME THE

25   LAST TWO YEARS.

EXHIBIT _____8_____

PAGE    41

e2b80d2e-39ef-491f-94d0-9c07afff72d1

Page 186

1   STATE OF CALIFORNIA     )

2                           ) SS.

3   COUNTY OF LOS ANGELES   )

4

5       I, EMILY MCCARY, CERTIFIED SHORTHAND

6   REPORTER, CERTIFICATE NO. 7584, FOR THE STATE OF

7   CALIFORNIA, HEREBY CERTIFY:

8       THE TESTIMONY GIVEN AND ALL COMMENTARY MADE

9   DURING THE FOREGOING PROCEEDINGS WERE RECORDED ON

10  AUDIOTAPES AT THE TIME OF THE PROCEEDINGS AND

11  THEREAFTER PROVIDED TO ME.  A STENOGRAPHIC

12  REPORTING WAS MADE BY ME AND THEREAFTER

13  TRANSCRIBED.  THE FOREGOING TRANSCRIPT IS A TRUE

14  AND CORRECT TRANSCRIPT OF MY SHORTHAND NOTES SO

15  TAKEN;

16      I FURTHER CERTIFY THAT I AM NEITHER COUNSEL

17  FOR NOR RELATED TO ANY PARTY TO SAID ACTION NOR

18  IN ANY WAY INTERESTED IN THE OUTCOME THEREOF;

19      IN WITNESS WHEREOF, I HAVE HEREUNTO

20  SUBSCRIBED MY NAME THIS 4TH OF JANUARY, 2008.

21

22                          _____

                            EMILY MCCARY
23

24                          EXHIBIT ____8____

25                          PAGE _____42____

**Exhibit 9**

Page 1

TRANSCRIPTION OF AUDIORECORDED INTERVIEW OF

BEATRIZ MORALES

MONDAY, JANUARY 14, 2008

EXHIBIT ____**9**____

PAGE ____**43**____

e8051574-c77f-47e0-8a8a-ba51c1eb3ae1

Page 115

1      A     SAY AGAIN.

2      Q     OKAY.  I'M SORRY.

3            WAS IT AFTER YOU FOUND OUT THAT YOU WERE

4   MAKING FASHIONS FOR BRATZ FOR VERONICA THAT YOU

5   CHANGED TO YOUR HUSBAND'S NAME?

6      A     (NO AUDIBLE RESPONSE.)

7      Q     IN OTHER WORDS -- LET ME HELP YOU.

8            OKAY.  WHEN YOU FOUND OUT, WHEN YOU

9   FINALLY REALIZED THAT WHAT VERONICA WAS HAVING YOU

10  DO WAS MAKE FASHIONS FOR BRATZ, SOON THEREAFTER OR

11  RIGHT THEN IS WHEN YOU CHANGED TO YOUR HUSBAND'S

12  NAME?

13     A     YES.

14     Q     "YES."  OKAY.

15           AND YOUR HUSBAND'S SOCIAL SECURITY NUMBER;

16  RIGHT?

17     A     YES.

18     Q     DID YOU DO THAT BEFORE THEN OR AFTER?

19  JUST RIGHT AFTER THAT; RIGHT?

20     A     YES.

21     Q     RIGHT.  OKAY.  GOOD.  THAT'S WHAT I

22  THOUGHT.  OKAY.

23         MS. FRIED:  DO YOU THINK ANYONE HERE KNEW YOU

24  AND ANA WERE DOING THE WORK -- ANYONE YOU WORKED

25  WITH HERE?

EXHIBIT 9

PAGE 44

e8051574-c77f-47e0-8a8a-ba51c1eb3ae1

Page 148

1    STATE OF CALIFORNIA    )
                            ) SS
2    COUNTY OF LOS ANGELES )

3

4            I, NEALY KENDRICK, CERTIFIED SHORTHAND REPORTER,

5    CERTIFICATE NO. 11265, FOR THE STATE OF CALIFORNIA, HEREBY

6    CERTIFY:

7            THAT THE FOREGOING TRANSCRIPT WAS PREPARED BY ME

8    FROM A TAPE RECORDING OF THE PROCEEDINGS;

9            I CERTIFY THAT THE TRANSCRIPT WAS PREPARED TO THE

10   BEST OF MY ABILITY;

11           I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR

12   NOR RELATED TO ANY PARTY TO SAID ACTION NOR IN ANY WAY

13   INTERESTED IN THE EVENT OF THE ACTION.

14           WITNESS MY HAND THIS 17TH DAY OF JANUARY,  2008.

15

16

17   _____

18           NEALY KENDRICK

19

20

21

22

23

24   EXHIBIT ____9____

25   PAGE ____45____

e8051574-c77f-47e0-8a8a-ba51c1eb3ae1

**Exhibit  10**



15-JUN-07

-------- THIS ITEM IS PART OF A LEGAL ORDER SUBPOENA ------------

Group:    GLPU1169626FF

Oper:    IN6066                              Type:        LP-MN-EM

Request ID      Account      Capture      Seq #      Pod #    Amount
08220-13JUN07   5357180131   09-FEB-04   000927700979          3,240.00/U

                TOTAL ITEMS:    0
                C1      COMPLETED

EXHIBIT ____10____

PAGE ____46____

CONFIDENTIAL-
ATTORNEYS' EYES ONLY

WFB0363

**Exhibit 11**





26-JUN-07

------- THIS ITEM IS PART OF A LEGAL ORDER SUBPOENA -------------

Group:      GLPU1169626FF

Oper:        IN4213                              Type:        LP-MN-EM

Request ID    Account      Capture      Seq #        Pod #      Amount
08221-13JUN07 5357180131   10-FEB-04   000425179196              2,489.00/U

                        TOTAL ITEMS:    0
                        C1     COMPLETED

EXHIBIT ___11___

PAGE ___47___

CONFIDENTIAL-
ATTORNEYS' EYES ONLY
                                                    WFB0407

**Exhibit 12**

25-JUN-07

-------- THIS ITEM IS PART OF A LEGAL ORDER SUBPOENA ------------

Group:        GLPU1169626FF

Oper:        INEVOL                                Type:        LP-MN-EM

Request ID      Account       Capture      Seq #       Pod #    Amount
08353-13JUN07   5357180131    29-MAR-04    006927743378          2,400.00/U

                        TOTAL ITEMS:    0                 EXHIBIT ____ 12
                        C1      COMPLETED                 PAGE _____ 48

CONFIDENTIAL-
ATTORNEYS' EYES ONLY                                              WFB0375

**Exhibit 13**