QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>          Plaintiff,<br><br>     vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>          Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**[PUBLIC REDACTED]**<br>**DECLARATION OF MELISSA GRANT IN SUPPORT OF MATTEL, INC.'S OPPOSITION TO MGA'S MOTION TO QUASH SUBPOENA TO BANK OF AMERICA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**<br><br>**DISCOVERY MATTER**<br><br>[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006]<br><br>Hearing Date: TBA<br>Time:         TBA<br>Courtroom:    TBA<br><br>**Phase 1:**<br>Discovery Cut-off:     January 28, 2008<br>Pre-trial Conference:  May 5, 2008<br>Trial Date:            May 27, 2008 |

# DECLARATION OF MELISSA GRANT

I, Melissa Grant, declare as follows:

1. I am a member of the bars of the State of California and an associate at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for plaintiff and counter-defendant, Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2. Attached as Exhibit A is a true and correct copy of MGA's Complaint in this matter, filed April 13, 2007.

3. Attached as Exhibit B is a true and correct copy of Mattel's Second Amended Answer and Counterclaims, excluding Exhibit C thereto.

4. Attached as Exhibit C is a true and correct copy of the subpoena *duces tecum* served on Bank of America by Mattel on January 17, 2008 and the notice thereof served on opposing parties.

5. On January 24, 2008, Mattel deposed MGA designee Lisa Tonnu. Ms. Tonnu was MGA's designee on certain compelled topics, including Topic of Examination No. 11 of Mattel's Third Notice of Deposition of MGA Entertainment, Inc., Pursuant to <u>Federal Rule of Civil</u> Procedure 30(b)(6). Topic of Examination No. 11 required MGA to designate a witness to testify as to "Payments of money or any other item of value that [MGA defendants] have made to, for or on behalf of Isaac Larian or any Family Member of Isaac Larian since January 1, 1999, including without limitation (a) the amounts of such payment and the equivalent dollar value of each item of value, (b) the dates of such payment, (c) the Identify of each recipient of such payment, (d) the Identify of each bank of financial institution account to which such payment was made and (e) the reasons for each payment." Attached as Exhibit D is a true and correct copy of the Third Notice of Deposition. Ms. Tonnu, however, testified that she could not quantify the total amount of money transferred from MGA to Larian,

1  nor could she provide specific information regarding each aspect of Topic 11.
2  Attached as Exhibit E is a true and correct copy of excerpts from the rough
3  transcript of the January 24, 2008 deposition of MGA designee Lisa Tonnu.
4    6. By letter dated January 28, 2008, the Bank of America advised
5  me that it had received the January 17, 2008 subpoena and would produce the
6  requested documents without objection. Attached as Exhibit F is a true and
7  correct copy of that letter.
8    7. On January 28, 2008, Timothy A. Miller, counsel for MGA and
9  Isaac Larian, sent a e-mail message to my colleague, B. Dylan Proctor, advising
10  Mattel of MGA would file a motion to quash the Bank of America the next day
11  because the Bank of America purportedly told MGA's counsel that the bank
12  would process the subpoena and produce responsive documents "unless we file a
13  motion to quash." Mr. Miller also stated that MGA's counsel "ha[d] no choice
14  but to file the motion to quash as soon as possible," although he "remained willing
15  to meet and confer regarding the issues raised in [MGA's] written objections."
16  Attached as Exhibit G is a true and correct of Mr. Miller's e-mail message.
17    8. On January 29, 2008, I called the Bank of America to ascertain
18  the status of the bank's production. Jermaine in the Bank of America Subpoena
19  Processing Department told me that in accordance with bank policy, Bank of
20  America had suspended processing the subpoena and would not produce
21  responsive documents until it received a court order advising the bank that
22  MGA's objections had been overruled. The Bank has produced no documents in
23  response to the subpoena.
24    9. On January 29, 2008, I called Timothy A. Miller in response to
25  the e-mail he sent to B. Dylan Proctor the previous day. I proposed the parties
26  stipulate to extend the return date of the subpoena to February 11, 2008 and advise
27  the bank that it should not produce documents until that date to permit the parties
28  time to meet and confer over MGA's objections. Mr. Miller stated that he would

discuss my proposal with his colleague, Amy Park, and either Ms. Park or Mr. Miller would call me back. Minutes later, MGA's counsel filed the instant Motion to quash the Bank of America subpoena. Thereafter, Ms. Park called me and stated that because MGA had already filed its motion to quash Mattel's proposed stipulation was moot.

10. I, along with others in my office, began reviewing the documents produced by MGA defendants in January 2008 soon after received, and although MGA argues that the subpoena should be quashed because the information sought is available from and/or was purportedly produced by the parties, MGA neglects to mention in its moving papers that Larian **failed to produce any documents showing transfers of value between him and any MGA entity or any other defendant or transfers of value between him and Mattel employees** — notwithstanding the Court's December 31, 2007 Order to do so. Attached as Exhibit H is a true and correct copy of the Discovery Master's December 31, 2007 Order granting Mattel's motion to compel.

11. The inconsistency in what MGA claims to have produced and what it actually produced is epitomized by its assertion in its Separate Statement regarding the Bank of America Subpoena at 6:3-6 that Larian recently produced "13,000 pages of documents showing his net worth, his income from multiple sources, as well as information regarding his banks and bank accounts," and the statement in Larian's counsel's—Timothy A. Miller's Declaration in support of the motion, at ¶ 10, that "in mid–January Mr. Larian produced to Mattel nearly 50,000 pages" of such documents. Because MGA document productions do not distinguish "Larian" documents from MGA documents, Mattel has not been able to determine how many of the hundreds of thousands of pages that MGA defendants have produced in the past three weeks are in fact "Larian" documents. To date, Mattel has been able to identify only a fraction those documents as being even arguably Larian "financial" records. And **none** of them include monthly

**statements of his personal Bank of America account or accounts, Bank of America cancelled checks or wire transfers reflecting transfer of value to or from Larian, or any other document sought by Mattel's subpoena to Bank of America.** The only documents that Larian appears to have produced related to his personal Bank of America account(s)—as opposed to accounts of MGA entities—are those relating to payments he made to his brother Farhad Larian.

12. Even the description of documents that MGA claims Larian produced is notable for its lack of specificity. Indeed, conspicuously missing from that description—and Larian's production to date—are documents from 1999 to the present that the Discovery Master ordered him to produce, including:

- Documents sufficient to determine Larian's net worth.
- Bank of America banking records for Larian.
- Documents related to payments to third-parties or other defendants by Larian, or the Larian trusts (such as to Bryant and other Mattel employees and vendors).
- Documents related to the Larian trusts, including any documents showing Isaac Larian's interest in, payments received, or transfers to those trusts.

13. In short, Larian has refused to produce relevant and discoverable documents for months and now seeks to prevent Mattel from obtaining those documents from third parties. As the Phase 1 discovery cut-off approached, Mattel had no choice but to seek documents essential to its claims and defenses from third parties, including the Bank of America.

14. Attached as Exhibit I is a true and correct copy of excerpts from Isaac Larian's December 15, 2005 Deposition Testimony in <u>Art Attacks Ink, LLC v. MGA Entertainment, Inc.</u>, Central District of California Case No. 04-1035-J, in which he testified that he personally banks with Bank of America.

15. As made clear by in the Discovery Master's December 31, 2007 Order, even if Larian had documents that were requested by the Bank of America

subpoena, his track record of obstruction of discovery, even to the point of violating his own promises to produce, means that Mattel should not be forced to rely exclusively on his production. At the time the subpoena was served, Isaac Larian had not produced financial records—including his personal banking records—reflecting his income, the source of his income, his net worth, or transfers of value from any MGA entity to him or transfers of value from him to any other defendant or any Mattel employee—notwithstanding the Discovery Master's December 31, 2007 Order. In fact, Larian's failure to produce a single document in discovery in 2007 convinced the Discovery Master to grant Mattel's motion to compel and to order Larian to produce documents in response to 71 document requests; 52 of which Larian had already promised to respond.

16. Attached as Exhibit J is a true and correct copy of Objections of MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE De Mexico S.R.L. De C.V. to Mattel Inc.'s Subpoena to Bank of America, dated January 25, 2008.

17. Attached as Exhibit K is a true and correct copy of the Court's August 9, 2006 Order Denying Appointment of Expert Witnesses.

18. Notwithstanding MGA's claims to the contrary, it has not been prejudiced by lack of "prior notice" of the subpoena served on Bank of America. MGA was able to intervene, assert its objections, and stop any production by the Bank pending the Court's decision on the Motion to Quash.

19. Attached as Exhibit L is a true and correct copy of the July 2, 2007 Order of the Court in this matter.

20. Attached as Exhibit M is a true and correct copy of excerpts from Lisa Tonnu's September 24, 2007 Deposition Testimony in Carter Bryant v. Mattel Inc, Central District of California Case No. 04-9040.

21. Attached as Exhibit N is a true and correct copy of excerpts from Veronica Marlow's December 28, 2007 Deposition Testimony in Carter Bryant v. Mattel Inc., Central District of California Case No. CV-9040.

22. Attached as Exhibit O is a true and correct copy of excerpts from Carter Bryant's November 5, 2005 Deposition Testimony in Carter Bryant v. Mattel Inc., Central District of California Case No. CV-9059.

23. Attached as Exhibit P is a true and correct copy of MGA Entertainment (HK) Limited's Supplemental Responses to Mattel, Inc's Revised Third Set of Interrogatories, dated November 11, 2007.

24. Attached as Exhibit Q is a true and correct copy of excerpts from Richard Irmen's September 28, 2007 Deposition Testimony in Carter Bryant v. Mattel Inc., Central District of California Case No. CV-9059.

25. Attached as Exhibit R is a true and correct copy of excerpts from Stephen Linker September 13, 2006 Deposition Testimony in Carter Bryant v. Mattel Inc., Central District of California Case No. CV 04-09049.

26. Attached as Exhibit S is a true and correct copy of the January 28, 2008 Order of the Court in this matter.

27. Attached as Exhibit T is a true and correct copy of the May 15, 2007 Order of the Court in this matter.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 7th day of February, 2008, at Los Angeles, California.

*Melissa Grant* (signature)