1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit A**

-80-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _B_ PAGE _126_

1  **Exhibit B**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2154363.2

-81-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

EXHIBIT _B_  PAGE 127

**EXHIBIT  C**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5      (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
    Telephone: (213) 443-3000
7  Facsimile: (213) 443-3100

8  Attorneys for Mattel, Inc.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                   EASTERN DIVISION

12

13  CARTER BRYANT, an individual,      CASE NO. CV 04-09049 SGL (RNBx)

14              Plaintiff,             Consolidated with Case Nos. CV 04-
                                       9059 and CV 05-2727
15       v.
                                       NOTICE OF SUBPOENA ISSUED TO
16  MATTEL, INC., a Delaware           BANK OF AMERICA
    Corporation,
17                                     
                Defendant,             Phase 1:
18                                     Discovery Cut-off:      January 28, 2008
                                       Pre-trial Conference:   April 21, 2008
19                                     Trial Date:             May 27, 2008

20  AND CONSOLIDATED CASES

21

22

23

24

25

26

27                                     EXHIBIT __C__ PAGE 128

28

07209/2352678.1                        /-22

                                       NOTICE OF SUBPOENA ISSUED TO BANK OF AMERICA.

1      PLEASE TAKE NOTICE that, pursuant to Rule 45 of the <u>Federal Rules of</u>

2 <u>Civil Procedure</u>, Mattel, Inc., has issued a subpoena attached as Exhibit 1,

3 requesting the production of specified documents to the following:

4      1)   Bank of America, 16944 San Fernando Mission Blvd., Granada Hills,

5 CA 91344.

6

7 DATED: January 22, 2008      QUINN EMANUEL URQUHART OLIVER &
          HEDGES, LLP

8

9                    By

10                    Melissa Grant
                    Attorneys for Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                          EXHIBIT ___C___ PAGE 129

28

07209/2352678.1

AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT, an Individual

**SUBPOENA IN A CIVIL CASE**

V.

MATTEL, INC., a Delaware Corporation

Case Number:[1] CV 04-9049 SGL (RNBx)
Consolidated with cases CV 04-9059 and
CV 05-2727

TO: Bank of America
    16944 San Fernando Mission Blvd.
    Granada Hills, CA 91344

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | January 28, 2008 |
| 865 S. Figueroa Street, 10th Floor | 9:00 a.m. |
| Los Angeles, CA 90017 | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for Mattel, Inc. | January 15, 2008 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER
Melissa Grant, Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa St., 10th Fl., Los Angeles, CA 90017 (213)443-3000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

EXHIBIT __C__ PAGE 130

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 1/17/2008 | 16944 San Fernando Mission Boulevard Granada Hills, CA 91344 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Nazaranir Tehrani, Custodian of Records, Bank of America | Personal --Witness Fee Paid $40.00 (Served 1-17-08 at 3:35 p.m.) |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Kenneth Wright | Process Server |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

| Executed on | 1/18/2008 | _Kenneth Wright_ |
|---|---|---|
| | DATE | SIGNATURE OF SERVER |

Now Legal Service, 1301 W. 2nd St., #206, Los

ADDRESS OF SERVER

Angeles, CA 90026, (213) 482-1567, L.A. Cty. #5426

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested.  If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling.  Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved.  A receiving party may promptly present the information to the court under seal for a determination of the claim.  If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it.  The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued.  An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

EXHIBIT _C_ PAGE _131_

## ATTACHMENT A

## Documents To Be Produced

1.  **DEFINITIONS.**

    i.      "YOU" or "YOUR" means Bank of America, and all of YOUR parents, subsidiaries, affiliates or affiliated entities, past or present employees, agents, representatives, consultants, independent contractors, any predecessors or successors in interest, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

    ii.     "ISAAC LARIAN" means the individual named Isaac Larian, Social Security No. 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, date of birth 03/28/1954, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, relatives (whether by blood or marriage), and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

    iii.    "ACCOUNT" or "ACCOUNTS" means any account of any type, including but not limited to any checking account, savings account, deposit account, credit card account, line of credit account, charge account, and any other account of any other type.

    iv.     "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and anyone else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

    v.      "DOCUMENT" means any "writing" or "recording" as defined in Federal Rule of Civil Procedure 34 and/or Federal Rule of Evidence 1001 and includes any tangible thing upon which any expression, communication or representation has been recorded, including but not limited to correspondence, e-mails, preliminary, intermediate or final drafts, memoranda, notes, reports of telephone or other oral conversations, audio or videotape recordings, computer tape, computer disk or storage media, computer printout, CD-ROM disk, optical storage disk, other electronic medium, and all other writings and recordings of any kind.

EXHIBIT __C__ PAGE 132

vi.   "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

vii.   "REFERRING OR RELATING TO" means reflecting, identifying, describing, summarizing, evidencing, referencing, concerning, discussing or indicating in any way.

viii.   Wherever used herein, the singular shall include the plural and the plural shall include the singular.

2.   **INSTRUCTIONS.**

a.   YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

b.   If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such DOCUMENTS identify each DOCUMENT and provide the following information:

(1)   The privilege or protection that you claim precludes disclosure;

(2)   The subject matter of the DOCUMENT (without revealing the content as to which the privilege or protection is claimed);

(3)   The date, author(s), addressee(s); and

(4)   Any additional facts on which YOU would base YOUR claim of privilege or protection.

c.   YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

d.   YOU are required to identify the source of all DOCUMENTS

07209/2324961.1

EXHIBIT __C__ PAGE 133

produced, and the person for whom, or department, division or office for which, such DOCUMENTS are maintained.

        e.    Each DOCUMENT shall be produced in its original file folder, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT.

3.    <u>DOCUMENTS TO BE PRODUCED.</u>

    (1)    All DOCUMENTS REFERRING OR RELATING TO ISAAC LARIAN from January 1, 1999 to the present, inclusive.

    (2)    All DOCUMENTS REFERRING OR RELATING TO any ACCOUNTS maintained by YOU that are in the name of, for the benefit of or concern ISAAC LARIAN, including but not limited to statements, monthly statements, annual statements, daily transaction history reports, monthly transaction history reports, deposit reports, deposit slips, canceled checks, signature cards, and COMMUNICATIONS REFERRING OR RELATING TO such ACCOUNTS, created between January 1, 1999 and the present, inclusive.

    (3)    DOCUMENTS sufficient to show the account number of all ACCOUNTS maintained by YOU in the name of, for the benefit of or concerning ISAAC LARIAN between January 1, 1999 and the present, inclusive.

    (4)    All DOCUMENTS showing or relating to any ACCOUNTS held by ISAAC LARIAN or any ACCOUNTS on which ISAAC LARIAN has signatory authority at any other financial institution.

EXHIBIT __C__ PAGE 134

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Plaintiff and Cross-
   Defendant Mattel, Inc.
9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                    EASTERN DIVISION

13  CARTER BRYANT, an            CASE NO. CV 04-9049 SGL (RNBx)
    individual,
14                               Consolidated with Case Nos. CV 04-09059
              Plaintiff,         and CV 05-02727
15
         vs.                     **PROOF OF SERVICE**
16
    MATTEL, INC., a Delaware
17  corporation,

18            Defendant.

19
    AND CONSOLIDATED
20  ACTIONS

21

22

23

24

25

26

27

28                       EXHIBIT __C__ PAGE 135

                              PROOF OF SERVICE

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1301 West 2nd Street, Suite 206, Los Angeles, California 90026.

On January 24, 2008, I served true copies of the following document(s) described :

1)    NOTICE OF SUBPOENA ISSUED TO A. MICH BHATIA, CPA

2)    NOTICE OF SUBPOENA ISSUED TO CAPITAL BANK & TRUST

3)    NOTICE OF SUBPOENA ISSUED TO BANK OF AMERICA

on the parties in this action as follows:

**SEE ATTACHED LIST**

**BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 24, 2008, at Los Angeles, California.


NOW LEGAL -- Dave Quintana

EXHIBIT __C__ PAGE 136

SERVICE LIST

Thomas J. Nolan
**Skadden, Arps, Slate, Meagher & Flom , LLP**
300 South Grand Ave., Ste. 3400
Los Angeles, California 90071
TEL: (213) 687-5000
FAX: (213) 687-5600
tnolan@skadden.com
miller@skadden.com

John W. Keker
Michael H. Page
Christa M. Anderson
**Keker & Van Nest, LLP**
710 Sansome Street
San Francisco, CA 94111
TEL: (415) 391-5400
FAX: (415) 397-7188
jkeker@kvn.com
mhp@kvn.com

Mark E. Overland, Esq.
David E. Scheper, Esq.
Alexander H. Cote, Esq.
**Overland Borenstein Scheper & Kim, LLP**
300 South Grand Avenue
Suite 2750
Los Angeles, CA 90071-3144
TEL: (213) 613-4655
FAX: (213) 613-4656
moverland@obsklaw.com

EXHIBIT ___C___ PAGE 137

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On January 24, 2008, I served true copies of the following document(s) described as:

1)   NOTICE OF SUBPOENA ISSUED TO A. MICH BHATIA, CPA

2)   NOTICE OF SUBPOENA ISSUED TO CAPITAL BANK & TRUST

3)   NOTICE OF SUBPOENA ISSUED TO BANK OF AMERICA

on the parties in this action as follows:

### SEE ATTACHED LIST

.

**BY ELECTRONIC MAIL TRANSMISSION:** By electronic mail transmission from lucilleclavel@quinnemanuel.com on January 24, 2008, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address listed below their address(es). The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 24, 2008, at Los Angeles, California.

*Lucille Clavel*
LUCILLE CLAVEL

07209/2364436.1

EXHIBIT C PAGE 138

## SERVICE LIST

Thomas J. Nolan
**Skadden, Arps, Slate, Meagher & Flom , LLP**
300 South Grand Ave., Ste. 3400
Los Angeles, California 90071
TEL: (213) 687-5000
FAX: (213) 687-5600
tnolan@skadden.com
miller@skadden.com

John W. Keker
Michael H. Page
Christa M. Anderson
**Keker & Van Nest, LLP**
710 Sansome Street
San Francisco, CA 94111
TEL: (415) 391-5400
FAX: (415) 397-7188
jkeker@kvn.com
mhp@kvn.com

Mark E. Overland, Esq.
David E. Scheper, Esq.
Alexander H. Cote, Esq.
**Overland Borenstein Scheper & Kim, LLP**
300 South Grand Avenue
Suite 2750
Los Angeles, CA 90071-3144
TEL: (213) 613-4655
FAX: (213) 613-4656
moverland@obsklaw.com

EXHIBIT C PAGE 139

**EXHIBIT  D**

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
6   Facsimile:  (213) 443-3100

7   Attorneys for Mattel, Inc.

8

                    UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                       EASTERN DIVISION

11

12  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

            Plaintiff,                   Consolidated with
13                                       Case No. CV 04-09059
                                         Case No. CV 05-02727
14        vs.

                                         THIRD NOTICE OF DEPOSITION OF
15  MATTEL, INC., a Delaware             MGA ENTERTAINMENT, INC.
    corporation,                         PURSUANT TO FEDERAL RULE OF
16                                       CIVIL PROCEDURE 30(B)(6)
            Defendant.
17                                       Discovery Cut-Off:  October 22, 2007
                                         Pre-Trial Conference:  January 14, 2008
18  ─────────────────────────────       Trial Date:  February 12, 2008

    AND CONSOLIDATED ACTIONS
19

20

21

22

23

24

25

26

27

28

07209/2048031.1

06|05|c7

THIRD NOTICE OF DEPOSITION OF MGA
EXHIBIT  D  PAGE  140

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 26, 2007 beginning on 9:30 a.m. Mattel, Inc. ("Mattel") will take the deposition upon oral examination of defendant MGA Entertainment, Inc. at the offices of Quinn Emanuel Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017. Pursuant to Fed. R. Civ. P. 30(b)(6), MGA Entertainment, Inc. shall designate one or more officers, directors, managing agents or other persons who consent to testify on its behalf concerning each of the topics set forth in Exhibit A hereto.

PLEASE TAKE FURTHER NOTICE that the deposition will take place before a duly authorized notary public or other officer authorized to administer oaths at depositions, and will continue from day to day, Sundays, Saturdays and legal holidays excepted, until completed.

PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(2), the deposition will be videotaped. Mattel also reserves the right to use Livenote or other technology for real-time transcription of the testimony.

DATED: June 5, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By
Michael T. Zeller
Attorneys for Mattel, Inc.

EXHIBIT D PAGE 141

07209/2048031.

-1-

THIRD NOTICE OF DEPOSITION OF MGA

**EXHIBIT A**

1.    "YOU," "YOUR" or "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

2.    "BRYANT" means Carter Bryant, any of his current or former agents, representatives, attorneys, employees, partners, joint venturers, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

3.    "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof. As used herein, "product, doll or DESIGNS or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith. Without limiting the generality of the foregoing, and contrary to MGA's recent assertions in connection with other Mattel discovery requests, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

EXHIBIT __D__ PAGE __142__

-2-

4.    "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part.

5.    "ANGEL" refers to those projects, products, dolls or DESIGNS, sometimes called "Angel Faces" and/or "Prayer Angels," that MGA has claimed are the subject of MGA000706-08, MGA000710-12, MGA000714-16, MGA000718-20, MGA000724-28 and MGA000734.  Without limiting the generality of the foregoing, and contrary to MGA's recent assertions in connection with other Mattel discovery requests, the term "ANGEL" does not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Topics of Examination herein.

6.    "IDENTIFY" or "IDENTITY" means the following:

(a)    With reference to an individual, means such individual's name, current or last known business title, current or last known business affiliation, current or last known relationship to YOU, current or last known residential and business address, and current or last known telephone number.

(b)    With reference to an entity or governmental organization, means such entity's or organization's name, present or last-known address, and present or last-known telephone number and the IDENTITY of each individual who has served or participated as a contact for or on behalf of such entity or organization.

(c)    With reference to an account with a bank or financial institution, means the name and address of the bank or financial institution, the account

EXHIBIT D    PAGE 143

-3-

number(s) for or otherwise associated with such account and the name of each holder, including without limitation each beneficial holder, of each such account.

(d)     With reference to a STORAGE DEVICE, means the manufacturer name, brand, model name and number, serial number and all other manufacturer identifiers, and the technical specifications and capacities of such STORAGE DEVICE.

7.     "ACTION" means this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.*, first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entertainment, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

8.     "DIGITAL INFORMATION" means any information created or stored digitally, including but not limited to electronically, magnetically or optically.

9.     "STORAGE DEVICE" means any computer hard drive, memory, USB device, tape, storage array or any other device or medium that allows a user, whether permanently, temporarily or otherwise, to create, generate, transmit, copy, retain, store or maintain DIGITAL INFORMATION.

10.     "EMPLOYEE AGREEMENT" or "EMPLOYEE AGREEMENTS" means any agreement or contract between YOU and any of YOUR employees that purports to assign to, convey to or vest in YOU in any manner, whether in whole or in part, and whether expressly or by implication or in effect, any right, title or interest in any such employee's inventions, works, work product, ideas, concepts, discoveries, improvements, processes, developments, DESIGNS, know-how, data and/or formulae.

11.     "FAMILY MEMBER" means any PERSON who at any time is, was or has been a parent, spouse, or child of another PERSON.

12.     "REFER OR RELATE TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing,

mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

13.    "DOCUMENT" means all "WRITINGS" and "RECORDINGS" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved. Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or other versions of the DOCUMENT, including, but not limited to, all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

14.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

15.    The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and *vice versa*; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and *vice versa*; the use of any tense of any verb includes also within its meaning

EXHIBIT D   PAGE 145

-5-

THIRD NOTICE OF DEPOSITION OF MGA

07209/2048031.

all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and *vice versa*, whenever such construction results in a broader disclosure of documents or information.

### Topics of Examination

1.    The IDENTITY, current or last known location, and disposition of each STORAGE DEVICE that each of the following PERSONS has used to create, generate, prepare, draft, send and/or receive any DOCUMENT or DIGITAL INFORMATION that REFERS OR RELATES TO BRATZ and/or ANGEL at any time since January 1, 1999, including without limitation the date of acquisition and the date of disposition of each such STORAGE DEVICE:

Isaac Larian

Farhad Larian

Paula Garcia

BRYANT

Kami Gillmour

Veronica Marlow

Mercedeh Ward

Margaret Hatch-Leahy

Jennifer Maurus

Judy Rich

Ninette Pembleton

Kerri Brode

Victoria O'Connor

Aileen Storer

Charles O'Connor

Helene Bartels

Colleen O'Higgins

EXHIBIT _D_ PAGE 146

THIRD NOTICE OF DEPOSITION OF MGA

07209/2048031.

1    Vivian Matt

2    Maureen Mullen

3    Rachel Harris

4    Barbara Malcolm

5    David Dees

6    Ben Ton

7    Dave Malacrida

8        2.    The IDENTITY, current or last known location, and disposition of

9    each backup, copy or image of the STORAGE DEVICES referenced in Topic 1 of this

10   Notice, including without limitation the date of creation and the date of disposition of

11   each such backup or copy.

12       3.    YOUR search for and production of DOCUMENTS and DIGITAL

13   INFORMATION from the STORAGE DEVICES referenced in Topic 1 of this Notice.

14       4.    Each of YOUR EMPLOYEE AGREEMENTS since January 1,

15   1995, including without limitation the meaning, validity and enforcement of such

16   EMPLOYEE AGREEMENTS.

17       5.    Any requirement or practice by YOU, at any time since January 1,

18   1995, that YOUR employees sign or execute EMPLOYEE AGREEMENTS.

19       6.    YOUR statements to Christopher Palmeri in connection with the

20   *Business Week* article entitled "To Really Be A Player, Mattel Needs Hotter Toys,"

21   published on or about July 28, 2003, including without limitation in connection with the

22   statement that Isaac Larian "got the idea for Bratz after seeing his own kids run around

23   in navel-bearing tops and hip-huggers."

24       7.    YOUR statements to Denise I. O'Neal in connection with the

25   *Chicago Sun-Times* article entitled "Bratz Packers Are What's Cool in Doll World,"

26   published on or about March 5, 2004, including without limitation in connection with

27   the statements that MGA's "creative team decided the name should be catchy and not

28

EXHIBIT __D__ PAGE __147__

07209/2048031.

-7-

THIRD NOTICE OF DEPOSITION OF MGA

1   have more than six letters. Keeping with today's trend of making names more 'cool' by

2   changing the spelling, MGA executives decided to replace the 's' with a 'z.'"

3          8.     YOUR statements to Jeff Weiss in connection with the *San*

4   *Fernando Valley Business Journal* article entitled "Immigrant's Creative Company

5   Shakes Up Toy Industry," published on or about March 29, 2004, including without

6   limitation in connection with the statement that "[i]t was Jason's idea for Bratz."

7          9.     The IDENTITY of each PERSON who YOU had perform, or who

8   YOU requested, asked or solicited to perform, any "test project" in advance of or in

9   consideration of employment by YOU since January 1, 1995, including without

10  limitation the IDENTITY of each such PERSON who was a MATTEL employee at the

11  time.

12         10.    YOUR relationship with Stephen Lee since April 1, 2004, including

13  without limitation any agreements or contracts between YOU and Stephen Lee.

14         11.    Payments of money or any other item of value that YOU have made

15  to, for or on behalf of Isaac Larian or any FAMILY MEMBER of Isaac Larian since

16  January 1, 1999, including without limitation (a) the amounts of such payment and the

17  equivalent dollar value of each of item of value, (b) the dates of such payment, (c) the

18  IDENTITY of each recipient of such payment, (d) the IDENTITY of each bank or

19  financial institution account to which such payment was made and (e) the reasons for

20  each such payment.

21         12.    Payments of money or any other item of value that YOU have made

22  to, for or on behalf of Farhad Larian or any FAMILY MEMBER of Farhad Larian since

23  January 1, 1999, including without limitation (a) the amounts of each such payment and

24  the equivalent dollar value of each of item of value, (b) the timing of each such

25  payment, (c) the IDENTITY of each recipient of each such payment, (d) the

26  IDENTITY of each bank or financial institution account to which such payment was

27  made and (e) the reasons for each such payment.

28

EXHIBIT _D_   PAGE _148_

07209/2048031.

-8-

THIRD NOTICE OF DEPOSITION OF MGA

13.   Payments of money or any other item of value that YOU have made to, for or on behalf of Morad Zarabi or any FAMILY MEMBER of Morad Zarabi since January 1, 1999, including without limitation (a) the amounts of each such payment and the equivalent dollar value of each of item of value, (b) the timing of each such payment, (c) the IDENTITY of each recipient of each such payment, (d) the IDENTITY of each bank or financial institution account to which such payment was made and (e) the reasons for each such payment.

14.   The nature, extent and timing of work and services that Veronica Marlow, Amy Myers, Sarah Halpern, Maureen Mullen and David Dees provided to, or were requested, solicited or proposed by, YOU at any time from January 1, 1999 through December 31, 2001, inclusive.

15.   Payments of money or any other item of value that YOU have made to Veronica Marlow, Amy Myers, Sarah Halpern, Maureen Mullen and David Dees since January 1, 1999, including without limitation (a) the amounts of each such payment and the equivalent dollar value of each of item of value, (b) the timing of each such payment, (c) the IDENTITY of each recipient of each such payment, (d) the IDENTITY of each bank or financial institution account to which such payment was made and (e) the reasons for each such payment.

16.   The IDENTITY of each PERSON who is not, as of June 5, 2007, an MGA employee and for whom or on behalf of whom YOU are paying, have paid or have offered, promised or agreed to pay fees or costs in connection with this ACTION, any contracts, agreements or other DOCUMENTS between YOU and such PERSON pertaining thereto, the amounts YOU have so paid or agreed to pay to such PERSON and the dates on which such payments were made.

EXHIBIT _D_ PAGE _149_

THIRD NOTICE OF DEPOSITION OF MGA

**EXHIBIT  E**

Tonnu, Lisa - Vol 5  1/24/2008  9:46:00 AM

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                    EASTERN DIVISION

4

5    CARTER BRYANT, AN          )
     INDIVIDUAL,                )
6                          ) CASE NO.
          PLAINTIFF,        ) CV 04-9049 SGL(RNBX)
7                     )
     V.                ) CONSOLIDATED WITH
8                     ) CASE NO. 04-9059
     MATTEL, INC., A DELAWARE    )       AND
9    CORPORATION,           ) CASE NO. 05-2727
                     )
10      DEFENDANT.        )
     _____)
11                    )
     AND CONSOLIDATED ACTION(S)   )
12   _____)  .
13
14        CONFIDENTIAL ATTORNEYS' EYES ONLY
15        VIDEOTAPED DEPOSITION OF M.G.A.
16        ENTERTAINMENT, INC., M.G.A. (HK)
17        LTD., M.G.A.E. DE MEXICO, S.R.L. DE
18        C.V., PURSUANT TO RULE 30(B)(6)(LISA
19        TONNU, VOLUME V), TAKEN ON BEHALF OF
20        MATTEL, INC., AT 865 SOUTH FIGUEROA
21        STREET, 2ND FLOOR, LOS ANGELES,
22        CALIFORNIA, COMMENCING AT 9:46 A.M.,
23        THURSDAY, JANUARY 24, 2008, BEFORE
24        PAULA A. PYBURN, C.S.R. 7304,
25        R.P.R., C.L.R.

Mattel v. MGA II                    Unsigned                    Page 987

EXHIBIT ___E___ PAGE __150__

Tonnu, Lisa - Vol 5  1/24/2008 9:46:00 AM

1    APPEARANCES OF COUNSEL:

2    FOR M.G.A. ENTERTAINMENT, INC.:

3    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
     BY:  CARL ALAN ROTH, ESQ.

4    BY:  RYAN WEINSTEIN, ESQ.
     300 SOUTH GRAND AVENUE

5    LOS ANGELES, CALIFORNIA 90071
     (213) 687-5000

6    RWEINSTE@SKADDEN.COM
     CROTH@SKADDEN.COM

7

8    FOR DEFENDANT MATTEL, INC.:

9    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     BY:  DIANE HUTNYAN, ESQ.

10   865 SOUTH FIGUEROA STREET
     2ND FLOOR

11   LOS ANGELES, CALIFORNIA 90017-2543
     (213) 443-3000

12   DIANEHUTNYAN@QUINNEMANUEL.COM

13
     FOR CARTER BRYANT:

14
     KEKER & VAN NEST LLP

15   BY:  AUDREY WALTON-HADLOCK, ESQ.
        (NOT PRESENT)

16   710 SANSOME STREET
     SAN FRANCISCO, CALIFORNIA 94111

17   (415) 391-5400
     AWALTONHADLOCK@KVN.COM

18

19   ALSO PRESENT:

20   HEIDI FRAHM (WHERE INDICATED)
     STEVEN TOGAMI, J.T.V. LITIGATION SERVICES, INC.

21

22

23

24

25

Mattel v. MGA II                    Unsigned                    Page  988

EXHIBIT  E  PAGE  151

Tonnu, Lisa - Vol 5  1/24/2008  9:46:00 AM

1              I N D E X

2

3    WITNESS:     EXAMINED BY:        PAGE:

4    LISA TONNU

5         MS. HUTNYAN          996

6         AFTERNOON SESSION        1118

7

8

9    EXHIBITS FOR IDENTIFICATION:  (BOUND SEPARATELY)

10   NUMBER:

11   1705 -  FOURTH NOTICE OF DEPOSITION OF     997

         M.G.A. ENTERTAINMENT, INC.,

12       UNNUMBERED DOCUMENT, 30 PAGES

13   1706 -  BRATZ ROYALTIES FOR THE QUARTER     998

         ENDING MARCH 31ST, 2004, BRYANT

14       12237 - BRYANT 12240, 4 PAGES

15   1707 -  LOVINS ROYALTY REPORTS, MGA     1006

         3720802 - MGA 3720805, 4 PAGES

16

     1708 -  BARHAM PARINCHY ROYALTY REPORTS,  1011

17       MGA 3720813 - MGA 3720816, 4

         PAGES

18

     1709 -  DOMESTIC LICENSING PAYMENT LOG,   1014

19       MGA 3743606 - MGA 3745687, 2,082

         PAGES (RETAINED BY MATTEL

20       COUNSEL)

21   1709A-  DOMESTIC LICENSING PAYMENT LOG,   1014

         MGA 3743606 - MGA 3743615, 10

22       PAGES

23   1710 -  M.G.A.'S CONSOLIDATED PROFIT-AND-  1032

         LOSS STATEMENT FOR THE 12 MONTHS

24       ENDING DECEMBER 31, 2005, MGA

         3710565 - MGA 3710580, 16 PAGES

25

Mattel v. MGA II                    Unsigned                    Page 989

EXHIBIT __E__ PAGE 152

Tonnu, Lisa - Vol 5  1/24/2008 9:46:00 AM

1      A.  I DON'T RECALL.

2      Q.  OKAY.  BUT YOU SAW IT EARLIER TODAY?

3      A.  I DON'T KNOW IF IT WAS TODAY OR LAST WEEK'S

4   DEPOSITION.

5      Q.  OKAY.  AND SO IF YOU NEEDED TO FIGURE OUT

6   THE COSTS -- WELL, STRIKE THAT.

7         SO IF YOU NEEDED TO FIGURE OUT THE PROFITS,

8   M.G.A.'S PROFITS, YOU WOULD LOOK AT EXHIBIT 1724?

9         MR. ROTH:  VAGUE AND AMBIGUOUS.

10   BY MS. HUTNYAN:

11      Q.  AT LEAST FOR YEAR-TO-DATE 2007?

12         MR. ROTH:  SAME OBJECTION.

13         THE WITNESS:  CAN YOU REPEAT THAT?

14   BY MS. HUTNYAN:

15      Q.  IF YOU NEEDED TO FIGURE OUT M.G.A.'S TOTAL

16   PROFIT FOR YEAR-TO-DATE JULY 2007, WOULD YOU LOOK AT

17   EXHIBIT 1724?

18         MR. ROTH:  VAGUE AND AMBIGUOUS.

19         THE WITNESS:  WHAT DO YOU MEAN BY "PROFIT"?

20   BY MS. HUTNYAN:

21      Q.  REVENUE MINUS COSTS.

22         MR. ROTH:  VAGUE AND AMBIGUOUS.

23         THE WITNESS:  CAN YOU BE MORE SPECIFIC?

24   BY MS. HUTNYAN:

25      Q.  NO, BECAUSE I DON'T KNOW HOW M.G.A. DOES

EXHIBIT  E  PAGE 153

1    IT; YOU DO.  DO YOU KNOW HOW PROFITS ARE CALCULATED

2    AT M.G.A.?

3         MR. ROTH:  VAGUE AND AMBIGUOUS.

4         THE WITNESS:  CAN YOU DEFINE WHAT YOU MEAN

5    BY REV- -- PROFITS?

6    BY MS. HUTNYAN:

7       Q.  HOW DOES M.G.A. DEFINE PROFITS?

8         MR. ROTH:  VAGUE AND AMBIGUOUS.

9         THE WITNESS:  CAN YOU BE MORE SPECIFIC?

10   BY MS. HUTNYAN:

11      Q.  M.G.A. HOLDS ITSELF OUT AS BEING VERY

12   PROFITABLE, DOESN'T IT?

13        MR. ROTH:  BEYOND THE SCOPE.

14        THE WITNESS:  I DON'T KNOW.

15   BY MS. HUTNYAN:

16      Q.  IS M.G.A. PAYING ISAAC LARIAN'S ATTORNEYS'

17   FEES IN THIS CASE?

18      A.  I DON'T KNOW.

19      Q.  YOU WERE DESIGNATED ON TOPIC 11 OF THE

20   THIRD NOTICE OF DEPOSITION, WHICH WAS PAYMENTS OF

21   MONEY OR ANY OTHER ITEM OF VALUE THAT YOU -- THAT

22   M.G.A. HAS MADE TO, FOR, OR ON BEHALF OF ISAAC

23   LARIAN OR ANY FAMILY MEMBER OF ISAAC LARIAN SINCE

24   JANUARY 1ST, 1999, INCLUDING WITHOUT LIMITATION THE

25   AMOUNTS OF SUCH PAYMENT AND THE EQUIVALENT DOLLAR

EXHIBIT ___E___ PAGE 154

Tonnu, Lisa - Vol 5  1/24/2008 9:46:00 AM

1     VALUE OF EACH ITEM OF VALUE, THE DATES OF SUCH

2     PAYMENT, THE IDENTITY OF EACH RECIPIENT OF SUCH

3     PAYMENT, THE IDENTITY OF EACH BANK OR FINANCIAL

4     INSTITUTION ACCOUNT TO WHICH SUCH PAYMENT WAS MADE

5     AND THE REASONS FOR EACH SUCH PAYMENT.

6          WERE YOU DESIGNATED ON THAT TOPIC?

7     A.  YES.

8     Q.  BUT YOU DON'T KNOW WHETHER M.G.A.'S PAYING

9     ISAAC LARIAN'S ATTORNEYS' FEES IN THIS CASE?

10    A.  I DON'T KNOW.

11    Q.  DID YOU DO ANYTHING TO PREPARE FOR

12    TOPIC 11?

13         MR. ROTH:  ASKED AND ANSWERED.

14         THE WITNESS:  YES.

15    BY MS. HUTNYAN:

16    Q.  WHAT DID YOU DO?

17         MR. ROTH:  ASKED AND ANSWERED.

18         THE WITNESS:  I REVIEWED A REPORT THAT WAS

19    PROVIDED.

20    BY MS. HUTNYAN:

21    Q.  WAS THE REPORT -- WAS -- WAS THE REPORT

22    MARKED AS AN EXHIBIT AT YOUR DEPOSITION EARLIER?

23    A.  I BELIEVE SO.

24    Q.  IS M.G.A. PAYING FARHAD LARIAN'S ATTORNEYS'

25    FEES IN THIS CASE?

Mattel v. MGA II                    Unsigned                    Page 1174

EXHIBIT ___E___ PAGE __155__

1     A.  YES.

2     Q.  IS ISAAC -- OKAY.  WHO ARE FARHAD'S

3   LARIAN'S ATTORNEYS?

4     A.  I CAN'T RECALL.

5     Q.  HOW MUCH HAS M.G.A. PAID SO FAR?

6     A.  I DON'T KNOW.

7     Q.  HAS M.G.A. PAID ANY ATTORNEYS' FEES OR

8   COSTS IN RELATION TO THIS LITIGATION FOR CARTER

9   BRYANT?

10    A.  I'M SORRY, JUST TO BACKTRACK, ON THE FARHAD

11   ONE?  I DON'T BELIEVE WE'VE PAID ANYTHING YET.

12    Q.  M.G.A. HAS AGREED TO PAY FOR MR. FAR- --

13   MR. FARHAD LARIAN'S REPRESENTATION IN THIS

14   LITIGATION?

15    A.  YES.

16    Q.  HOW MUCH HAS MR. FARHAD LARIAN ACCRUED IN

17   ATTORNEYS' FEES IN THIS LITIGATION?

18    A.  I DON'T KNOW.

19    Q.  BUT M.G.A. HAS TAKEN RESPONSIBILITY FOR ALL

20   OF IT?

21    A.  I BELIEVE SO.

22    Q.  WHY HAS IT NOT BEEN PAID?

23    A.  I DON'T --

24       MR. ROTH:  VAGUE -- VAGUE AND AMBIGUOUS.

25       THE WITNESS:  I DON'T KNOW.

EXHIBIT __E__ PAGE 156

Tonnu, Lisa - Vol 5  1/24/2008  9:46:00 AM

1    BY MS. HUTNYAN:

2       Q.  IS MR. FARHAD LARIAN GOING TO BE REIMBURSED

3    FOR THOSE FEES, OR HAVE THE LAWYERS NOT BEEN PAID?

4          MR. ROTH:  VAGUE AND AMBIGUOUS.

5          THE WITNESS:  CAN YOU BE MORE SPECIFIC?

6    BY MS. HUTNYAN:

7       Q.  WELL, M.G.A. HASN'T PAID IT YET; RIGHT?

8       A.  THAT'S CORRECT.

9       Q.  SO ARE THE LAWYERS GOING WITHOUT PAYMENT

10   RIGHT NOW, OR HAS HE PAID AND THEN M.G.A.'S PLANNING

11   TO REIMBURSE HIM?

12         MR. ROTH:  BEYOND THE SCOPE.

13         THE WITNESS:  I DON'T KNOW.

14   BY MS. HUTNYAN:

15      Q.  IS M.G.A. PAYING FOR CARTER BRYANT'S

16   REPRESENTATION IN THIS CASE?

17      A.  YES.

18      Q.  HAS IT PAID FOR ALL OF CARTER BRYANT'S

19   REPRESENTATION IN THIS CASE?

20      A.  I CAN'T RECALL.

21      Q.  CARTER BRYANT HAS HAD THREE SETS OF

22   ATTORNEYS IN THIS CASE, HASN'T HE?

23      A.  I CAN'T RECALL THE NUMBER --

24      Q.  HE'S --

25      A.  -- OF ATTORNEYS.

Mattel v. MGA II                    Unsigned                    Page 1176

EXHIBIT  E   PAGE  157

Tonnu, Lisa - Vol 5  1/24/2008  9:46:00 AM

1    Q.  GAIL UPSHAW?

2    A.  I DON'T KNOW.

3    Q.  PABLO VARGAS?

4    A.  I DON'T KNOW.

5    Q.  ANNE WANG?

6    A.  I DON'T KNOW.

7    Q.  CHANG WANG?

8    A.  I DON'T KNOW.

9    Q.  LANCE WARD?

10   A.  I DON'T KNOW.

11   Q.  MERCEDEH WARD?

12   A.  I DON'T KNOW.

13   Q.  JEFF WEISS?

14   A.  I DON'T KNOW.

15   Q.  LINDA WHALEY?

16   A.  I DON'T KNOW.

17   Q.  DAWN WHITAKER?

18   A.  I DON'T KNOW.

19   Q.  JENNY WONG?

20   A.  I DON'T KNOW.

21   Q.  SAMUEL WONG?

22   A.  I DON'T KNOW.

23   Q.  CHERISE WRIGHT?

24   A.  I DON'T KNOW.

25   Q.  CAROL ZENS?

EXHIBIT _E_ PAGE 158

Tonnu, Lisa - Vol 5  1/24/2008  9:46:00 AM

1    A.  I DON'T KNOW.

2      Q.  HAS ISAAC LARIAN PERSONALLY PAID -- AGREED

3  TO PAY ANY OF THE ATTORNEYS' FEES OR COSTS FOR ANY

4  OF THE PEOPLE I JUST NAMED?

5      A.  I DON'T KNOW.

6        CAN I ASK YOU A QUESTION?

7      Q.  FOR THOSE PEOPLE WHO M.G.A. IS NOT PAYING

8  ATTORNEYS' FEES AND COSTS FOR, HAS M.G.A.

9  INVESTIGATED WHO IS PAYING THEIR ATTORNEYS' FEES AND

10  COSTS?

11      A.  I'M SORRY, CAN YOU CLARIFY THAT?

12      Q.  SURE.  FOR THE PEOPLE THAT YOU SAID YOU

13  DIDN'T KNOW, DO YOU KNOW WHETHER M.G.A. HAS

14  INVESTIGATED WHO IS PAYING THEIR ATTORNEYS' FEES AND

15  THE COSTS?

16        MR. ROTH:  BEYOND THE SCOPE.

17        THE WITNESS:  I DON'T KNOW.

18  BY MS. HUTNYAN:

19      Q.  SO WHEN YOU SAID "I DON'T KNOW" TO ALL OF

20  THESE DIFFERENT NAMES THAT YOU SAID "I DON'T KNOW"

21  TO, IS IT POSSIBLE THAT M.G.A. IS PAYING FOR THEIR

22  REPRESENTATION AS WELL?

23      A.  IT'S NOT THAT I'M AWARE OF, WE'RE NOT

24  PAYING THEIR FEES.

25      Q.  THE TRANSCRIPT SAYS, "IT'S NOT THAT I'M

Mattel v. MGA II                Unsigned                Page 1202

EXHIBIT  E  PAGE  159

1      Q.  WHAT IS THE POSTING DATE?

2      A.  THE DATE IN WHICH THE INVOICE WAS POSTED

3   INTO THE ACCOUNTING SYSTEM.

4      Q.  SO SEVERAL INVOICES WERE POSTED TO THE

5   ACCOUNTING SYSTEM ON THE SAME DAY OFTEN, IT LOOKS

6   LIKE?

7      A.  WHAT DO YOU MEAN BY "OFTEN"?

8      Q.  WELL, IT LOOKS LIKE FREQUENTLY YOU HAVE THE

9   SAME POSTING DATE FOR SEVERAL OF THE INVOICES.  FOR

10  EXAMPLE, THE ONES STARTING AT LINE 19, LIKE

11  SKATEBOARDING -- FROM LINE 19 THROUGH LINE 26, THOSE

12  WERE ALL PAID -- I'M SORRY -- THOSE WERE ALL POSTED

13  TO THE ACCOUNTING SYSTEM ON THE SAME DAY; IS THAT

14  RIGHT?

15     A.  YES.

16     Q.  IS THAT BECAUSE MR. DEES WOULD -- WOULD DO

17  INVOICES FOR PARTICULAR WORK THAT HE DID AND THEN

18  THOSE WOULD BE GROUPED TOGETHER AND POSTED ON THE

19  SAME DAY?

20     A.  I DON'T KNOW.

21     Q.  WHAT IS THE WORK THAT WAS DONE -- WHAT

22  IS -- STRIKE THAT.

23        WHAT IS COLUMN G?

24     A.  THAT'S THE GENERAL LEDGER ACCOUNT IN WHICH

25  THE EXPENSE ITEM WILL BE BOOKED TO.

EXHIBIT _E_   Page 1244
PAGE 160

Tonnu, Lisa - Vol 5  1/24/2008  9:46:00 AM

1    Q.  DO YOU KNOW WHAT DAVID DEES DID TO BE PAID

2    FOR THIS -- FOR ALL THESE PAYMENTS?

3    A.  NOT OTHER THAN THE DESCRIPTION IN COLUMN G.

4    Q.  SO IT'S YOUR UNDERSTANDING THAT HE WAS

5    HELPING WITH PRODUCT DEVELOPMENT?

6    A.  YES.

7    Q.  BUT BEYOND THAT, M.G.A. DOESN'T KNOW WHAT

8    HE WAS DOING?

9    A.  NO.

10   Q.  I THINK THAT WAS ONE OF THOSE DOUBLE --

11   DOUBLE NEGATIVES AGAIN.

12       BEYOND THAT M.G.A. DOESN'T KNOW; RIGHT?

13   A.  CORRECT.

14   Q.  OKAY.  SEEM TO HAVE A PROBLEM WITH THAT.

15   OKAY.

16       EXHIBIT 1743, ARE THESE ALL THE PAYMENTS

17   THAT HAVE BEEN MADE TO VERONICA MARLOW BETWEEN --

18   WELL, EVER, BY M.G.A.?

19       MR. ROTH:  VAGUE AND AMBIGUOUS.

20       THE WITNESS:  WHAT DO YOU MEAN BY "EVER"?

21   BY MS. HUTNYAN:

22   Q.  WHAT IS THIS REPORT?

23   A.  IT'S A REPORT OF PAYMENTS MADE TO VERONICA

24   MARLOW.

25   Q.  BY M.G.A.?

EXHIBIT  E  PAGE 161

Tonnu, Lisa - Vol 5  1/24/2008  9:46:00 AM

1    A.  YES.

2    Q.  DOES IT REFLECT ANY PAYMENTS MADE BY ISAAC

3    LARIAN TO VERONICA MARLOW?

4    A.  NO.

5    Q.  ARE THESE ALL OF -- ARE THESE ALL OF THE

6    PAYMENTS THAT WERE MADE BY M.G.A. TO VERONICA MARLOW

7    BETWEEN OCTOBER 26TH, 2000, AND THE END OF 2005?

8    A.  YES.

9    Q.  WERE ANY PAYMENTS MADE TO MS. MARLOW BY

10   M.G.A. IN 2006?

11   A.  NOT THAT I'M AWARE OF.

12   Q.  IN 2007?

13   A.  NOT THAT I'M AWARE OF.

14   Q.  IN 2008?

15   A.  NOT THAT I'M AWARE OF.

16   Q.  WHEN YOU SAY, "NOT THAT I'M AWARE OF," DOES

17   THAT MEAN YOU DON'T KNOW WHETHER PAYMENTS WERE MADE

18   IN THOSE PERIODS?

19   A.  NO, THAT'S NOT WHAT I MEANT.

20   Q.  OKAY.

21   A.  AS FAR AS WE'RE AWARE OF, THERE'S NO

22   PAYMENTS MADE IN THOSE PERIODS.

23   Q.  OKAY.  SO NO PAYMENTS WERE MADE IN THOSE

24   PERIODS; IS THAT M.G.A.'S TESTIMONY?

25   A.  YES.

EXHIBIT  E   PAGE 162

Tonnu, Lisa - Vol 5  1/24/2008  9:46:00 AM

1    TRUSTS FOR MR. LARIAN?

2      A.  YES.

3      Q.  HOW MANY TRUSTS FOR MR. LARIAN DO YOU ISSUE

4    K-1S FOR?

5      A.  THREE.

6      Q.  WHAT ARE THOSE TRUSTS?

7          MR. ROTH:  THIS WAS ASKED AND ANSWERED LAST

8    WEEK.

9          THE WITNESS:  ISAAC LARIAN GRANTOR ANNUITY

10   TRUST, ANGELA LARIAN GRANTOR ANNUITY TRUST, LARIAN

11   LIVING -- LARIAN FAMILY TRUST.  I BELIEVE THAT'S THE

12   NAME OF IT.

13         THE REPORTER:  ARE YOU SAYING "TRUSTS"?

14         THE WITNESS:  TRUST.

15   BY MS. HUTNYAN:

16     Q.  THEN ANOTHER QUESTION WHICH RECEIVED AN

17   INSTRUCTION WAS, "IS THERE ONE TRUST THAT HOLDS THE

18   SHARES FOR MR. LARIAN IN M.G.A. ENTERTAINMENT,

19   INC.?"

20         MR. ROTH:  ASKED AND ANSWERED LAST WEEK,

21   COUNSEL.

22         THE WITNESS:  IS THERE ONE TRUST; IS THAT

23   WHAT YOUR QUESTION WAS?

24   BY MS. HUTNYAN:

25     Q.  IS THERE ONE TRUST THAT HOLDS THE SHARES

Mattel v. MGA II                    Unsigned                    Page 1286

EXHIBIT  E  PAGE 163

1    FOR MR. LARIAN IN M.G.A. ENTERTAINMENT, INC.?

2        MR. ROTH:  THIS WAS GONE OVER IN DETAIL BY

3    JON LAST WEEK.

4        MS. HUTNYAN:  JON GAVE ME THIS FOLDER AND

5    TOLD ME TO MAKE SURE THAT I ASK THESE QUESTIONS.

6        MR. ROTH:  WELL, I -- I'M NOT GOING TO GET

7    INTO WHAT YOU DISCUSSED WITH JON.  I CAN TELL YOU

8    THIS WAS GONE OVER IN DETAIL BY JON LAST WEEK.

9        MS. HUTNYAN:  OKAY.  UNFORTUNATELY I

10   HAVEN'T HAD A CHANCE TO REVIEW ALL OF THE TESTIMONY

11   THAT JON TOOK, BUT IF THAT IS NOT THE CASE AND IF

12   THERE ARE ANY QUESTIONS AS TO WHICH INSTRUCTIONS

13   WERE MADE NOT TO ANSWER, WILL YOU AGREE TO REPRODUCE

14   HER FOR PURPOSES OF ANSWERING THOSE QUESTIONS?

15       MR. ROTH:  NO.  IF YOU HAVE FURTHER

16   QUESTIONS, GO ON.  I WILL TELL YOU WHICH QUESTIONS

17   HAVE BEEN ASKED AND ANSWERED.

18   BY MS. HUTNYAN:

19     Q.  IS THERE ONE TRUST THAT HOLDS THE SHARES

20   FOR MR. LARIAN IN M.G.A. ENTERTAINMENT, INC.?

21       MR. ROTH:  ASKED AND ANSWERED.

22       THE WITNESS:  DO I ANSWER AGAIN?

23       MR. ROTH:  GO AHEAD.

24       THE WITNESS:  NO.

25   ///

Mattei v. MGA II                    Unsigned              Page 1287

EXHIBIT  E  PAGE 164

1    BY MS. HUTNYAN:

2    Q.  HOW MANY ARE THERE?

3    MR. ROTH:  ASKED AND ANSWERED.

4    THE WITNESS:  THREE.

5    BY MS. HUTNYAN:

6    Q.  THE THREE THAT YOU JUST MENTIONED?

7    A.  YES.

8    Q.  WHO IS THE TRUSTEE OF THE TRUSTS?

9    A.  WHICH ONE?

10    Q.  ALL THREE.

11    A.  CAN YOU BE MORE SPECIFIC?

12    Q.  WHO IS THE TRUSTEE OF THE FIRST TRUST THAT

13    YOU MENTIONED?

14    A.  WHICH WAS THE FIRST ONE I MENTIONED?

15    MS. HUTNYAN:  UNFORTUNATELY I CAN'T SEE

16    THAT PAGE AND THIS COMPUTER WILL NOT COOPERATE WITH

17    ME. I WILL WRITE DOWN THE THREE IF YOU WANT TO TELL

18    ME AGAIN.

19    OR CAN YOU BACK UP REAL EASILY TO FIND IT?

20    THE REPORTER:  YES.

21    (THE RECORD WAS READ BY THE REPORTER

22    AS FOLLOWS:

23    "A.  ISAAC LARIAN GRANTOR ANNUITY

24    TRUST, ANGELA LARIAN GRANTOR ANNUITY

25    TRUST, LARIAN LIVING -- LARIAN

EXHIBIT _E__ PAGE _165_

Tonnu, Lisa - Vol 5  1/24/2008  9:46:00 AM

1        DECLARATION OF WITNESS

2

3      I CERTIFY UNDER PENALTY OF PERJURY UNDER THE LAWS

4    OF THE STATE OF CALIFORNIA THAT THE FOREGOING IS

5    TRUE AND CORRECT.

6

7

8    EXECUTED AT          , ON                    ,

             (PLACE)        (DATE)

9

10

11         (SIGNATURE OF WITNESS)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Mattel v. MGA II                    Unsigned                    Page  1327

EXHIBIT __E__ PAGE 166

Tonnu, Lisa - Vol 5  1/24/2008  9:46:00 AM

1    STATE OF CALIFORNIA )

2    COUNTY OF RIVERSIDE )  SS.

3

4        I, PAULA A. PYBURN, CSR NO. 7304, R.P.R.,

5    C.L.R., IN AND FOR THE STATE OF CALIFORNIA, DO

6    HEREBY CERTIFY:

7        I AM THE DEPOSITION OFFICER THAT

8    STENOGRAPHICALLY RECORDED THE TESTIMONY IN THE

9    FOREGOING DEPOSITION;

10       PRIOR TO BEING EXAMINED THE DEPONENT WAS FIRST

11   DULY SWORN BY ME;

12       THE FOREGOING TRANSCRIPT IS A TRUE RECORD OF

13   THE TESTIMONY GIVEN.

14       BEFORE COMPLETION OF THE DEPOSITION, REVIEW OF

15   THE TRANSCRIPT [X] WAS [ ] WAS NOT REQUESTED.  IF

16   REQUESTED, ANY CHANGES MADE BY THE DEPONENT (AND

17   PROVIDED TO THE REPORTER) DURING THE PERIOD ALLOWED

18   ARE APPENDED HERETO.

19

20   DATED _____

21

22

23       _____

         PAULA A. PYBURN

24       C.S.R. NO. 7304, R.P.R.

         CERTIFIED LIVENOTE REPORTER

25

EXHIBIT __E__ PAGE |67

**EXHIBIT  F**



Bank of America
Legal Processing Site
CA9-705-05-19
P. O. Box 3609
Los Angeles, CA  90051

January 28, 2008

QUINN EMANUEL URQUHARD OLIVER & HEDGES,LLP
MELISSA GRANT
865 S. FIQUEROA ST,10TH FLOOR
LOS ANGELES, CA  90017

RE: Reference #: L011808000480
Case: CARTER BRYANT V. MATTEL, INC.
Name: SHIRIN MAKABI, ISAAC LARIAN, ISAAC LARIAN QUALIFIED ANNUITY TRUST,
ANGELA LARIAN

Please be advised that we are in receipt of the above-referenced Subpoena dated January 18,
2008.

The Los Angeles Site will produce some of the documents for your subpoena. Accordingly we
have forwarded the subpoena to the BAI OPERATION Site for production of the documents.

You may contact them at Phone #704-317-0413 for further status of your request.

Should you need to forward any additional correspondence to us regarding this matter, please
direct it to the address noted above. When contacting the Bank regarding this Subpoena please
use the Reference #  L011808000480.

Francisco A. Valerio
AVP; Operations Team Manager
Subpoena Processing
213-240-6636
ELL7

EXHIBIT _F_ PAGE 168

**EXHIBIT  G**

| | |
|---|---|
| **From:** | Miller, Timothy A (SFC) |
| **Sent:** | Monday, January 28, 2008 8:01 PM |
| **To:** | 'Dylan Proctor' |
| **Cc:** | Melissa Grant; Park, Amy S (PAL); Kennedy, Raoul D (SFC); Nolan, Thomas J (LAC) |
| **Subject:** | Mattel v. Bryant: Subpoena Duces Tecum to Bank of America |
| **Attachments:** | Amended Objections to Mattel's Subpoena to Bank of America.pdf; Notice of Subpoena Issued to BoA.pdf |

Dylan:

I am writing regarding the attached subpoena duces tecum issued by Mattel to Bank of America and the Amended Objections thereto, which we served over the weekend. We will be filing a motion to quash the subpoena before Judge Infante as soon as we can, probably tomorrow. Ordinarily, we would seek to meet and confer with you about our objections prior to filing such a motion, but we are unable to do so for two reasons: (i) according to the subpoena, Mattel served the subpoena on BofA on January 17, 2008, with a return date of January 28, 2008, but did not serve my clients with notice of the subpoena until the evening of January 24, 2008; and (ii) we have been in contact with BofA's subpoena processing department, and they say that they will process the subpoena and produce documents unless we file a motion to quash. Under these circumstances, we have no choice but to file the motion to quash as soon as possible. We remain willing to meet and confer regarding the issues raised in our written objections.

We hereby request that you agree, by reply to this email, that BofA is relieved of the obligation to respond to Mattel's subpoena until such time as we are able to file a motion to quash.

Thank you for your attention to this.

Regards,

Tim

**Timothy A. Miller**
**Skadden, Arps, Slate, Meagher & Flom LLP**
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111
Direct Dial: 415-984-2647
Fax: 415-984-2698
tmiller@skadden.com

G    PAGE 169

**EXHIBIT  H**

1  Hon. Edward A. Infante (Ret.)
   JAMS
2  Two Embarcadero Center
   Suite 1500
3  San Francisco, California  94111
   Telephone:    (415) 774-2611
4  Facsimile:     (415) 982-5287

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

11

12  | CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
13  |                               | JAMS Reference No. 1100049530 |
    |             Plaintiff,        |                               |
14  |                               |                               |
    |          v.                   | Consolidated with             |
15  |                               | Case No. CV 04-09059          |
    | MATTEL, INC., a Delaware corporation, | Case No. CV 05-2727   |
16  |                               |                               |
    |             Defendant.        | ORDER GRANTING IN PART AND    |
17  |                               | DENYING IN PART MATTEL'S      |
    |                               | MOTION TO COMPEL PRODUCTION   |
18  |                               | OF DOCUMENTS BY ISAAC LARIAN; |
    |                               | DENYING REQUEST FOR           |
19  |                               | SANCTIONS                     |

20  CONSOLIDATED WITH
    MATTEL, INC. v. BRYANT and
21  MGA ENTERTAINMENT, INC. v. MATTEL,
    INC.
22

23

24                          I. INTRODUCTION

25       On October 11, 2007, Mattel, Inc. ("Mattel") submitted a "Motion to Compel Production

26  of Documents by Isaac Larian and for Award of Monetary Sanctions."  Specifically, Mattel seeks

27  an order compelling Isaac Larian ("Larian") to produce documents responsive to Mattel's First

28  Set of Requests for Documents and Things, including, without limitation, Request Nos. 1, 2, 13,

    Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                          1

                                    EXHIBIT  H  PAGE  170

1  15, 32, 33, 35, 41, 61-76, 79-101, 113-115, 123-125, 139-146, 178, 180, 181, 190-192, 194-199,

2  207-209, 213, 221-225, 227-228, 269, 272 and 273 and a privilege log identifying all documents

3  withheld based on any claimed privilege.  Mattel also seeks an award of sanctions against Larian

4  in the amount of $4,500, which represents a portion of the costs incurred by Mattel in bringing

5  this motion.  Larian submitted an opposition on December 5, 2007.[1]  Mattel submitted a reply on

6  December 10, 2007.  The matter was heard on December 14, 2007.  Having considered the

7  motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted in

8  part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

On June 13, 2007, Mattel propounded its First Set of Requests for Production of

Documents and Things to Larian, the CEO and majority owner of MGA.  On August 6, 2007,

Larian filed his initial responses and objections.  The parties met and conferred, and on September

25, 2007, Larian served supplemental responses and objections.

Mattel filed the instant motion on October 11, 2007 seeking further responses to 87 of the

276 Requests.  The parties met and conferred further, and Larian ultimately agreed to provide

further responses to 55 of the disputed 87 Requests.  Specifically, Larian agreed to supplement his

responses and to produce documents responsive to Request Nos. 1, 2, 13, 15, 32, 33, 35, 41, 61-

76, 82-101, 139-146, 213, 221 and 223, "to include documents, if any, in his personal files that

have not previously been produced."  MGA's Opposition at pp. 1-2.

The remaining 32 Requests at issue can be grouped into ten categories:  (1) personal

financial data; (2) communications with Mattel employees; (3) statements to the media; (4)

telephone records; (5) storage devices; (6) Carter Bryant's ("Bryant") storage devices; (7) market

research concerning products not at issue; (8) Bryant's attorney and niece; (9) the Larian brother's

arbitration; and (10) MGA Hong Kong and MGA Mexico.

//

---

[1] Mattel filed an Objection to Larian's Opposition and Response to Mattel's Separate Statement, asserting that the submissions should not be considered because they are untimely and because the Response to Mattel's Separate Statement fails to set forth a complete and verbatim statement of Mattel's position.  The Objection is overruled because Mattel has not been prejudiced and because of the court's preference to resolve Mattel's motion on the merits.

Bryant v. Mattel, Inc.,
CV-04-09049 SOL (RNBx)

2

EXHIBIT __H__ PAGE __171__

## II. DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress' changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

### The 55 Requests Resolved During Meet and Confer Session

During the meet and confer session held after the instant motion was filed, Larian agreed to produce documents responsive to 55 requests. In his Opposition brief, Larian states that the 55 requests are no longer in dispute.

Nevertheless, a court order compelling production is warranted for two reasons. First, Larian has not yet produced documents responsive to the 55 requests or provided a date by which

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

3

EXHIBIT __H__ PAGE __172__

1   he will do so. Second, Larian's agreement to produce responsive documents is apparently limited
2   to documents from his so-called "personal files." <u>See</u> Opposition at 2:2-3.
3            Mattel's counsel "never agreed that Larian could limit his response to the above requests
4   to documents in his 'personal files' and Larian's counsel did not state that Larian would limit his
5   response to documents in Larian's 'personal files.'" Supp. Decl. of Scott B. Kidman.
6   Furthermore, the limitation to "personal files" suggested by Larian is contrary to Rule 34,
7   Fed.R.Civ.P, which imposes a duty to produce responsive documents within the responding
8   parties' "possession, custody or control." The limitation is also unworkable because, as Mattel
9   points out, it "would create a situation by which responsive and highly relevant documents might
10  never be produced because MGA, on the one hand, deems [a] document to belong to Larian, and
11  Larian, on the other hand, deems [a] document not to be part of his 'personal files.'" Reply at p.6.
12  <u>Market Research for Products Not at Issue: Request Nos. 79-81</u>
13           In Request No. 79, Mattel seeks all documents relating to any focus groups relating to
14  Bratz and/or Angel, including without limitation all videotapes, summaries, notes and reports. In
15  his supplemental response, Larian agrees to produce the following documents, subject to his
16  general objections:
17           Larian will produce all documents within his possession, custody, or control that
             relate to focus groups for "MGA contested products" and "Mattel contested
18           products," as those terms are defined in Mattel's First Requests for Production
             regarding Claims of Unfair Competition, if any, and that have not already been
19           produced, that he discovers in the course of his reasonable search and diligent
             inquiry, and to which no privilege or other protection applies, including without
20           limitation, the attorney-client privilege or attorney's work product doctrine.
21
22  Mattel's Consolidated Separate Statement at pp. 20-21.
23           In Request No. 80, Mattel seeks all documents relating to any services or work performed
24  by L.A. Focus between January 1, 1999 and December 31, 2001, including without limitation, all
25  videotapes, summaries, notes and reports associated therewith. In his supplemental response,
26  Larian agrees to produce documents relating or referring to Bratz or Angel that are responsive to
27  the request and to which no privilege or other protection applies.
28  <small>Bryant v. Mattel, Inc.,<br>CV-04-09049 SGL (RNBx)</small>                                                                              4

EXHIBIT  H  PAGE  173

1    In Request No. 81, Mattel seeks all documents relating to Alaska Momma.  In his
2  supplemental response, Larian agrees to produce all documents relating or referring to Bratz,
3  Angel or Bryant that are responsive to the request and to which no privilege or other protection
4  applies.
5    Mattel contends that the requests are as narrowly tailored as possible to capture relevant
6  information.  More specifically, Mattel contends that Request No. 79 seeks documents that bear
7  directly on the timing of the development of Bratz, as well as MGA's unfair competition claims
8  and Mattel's defense thereto.  Mattel contends that the requested documents may demonstrate that
9  MGA is guilty of copying Mattel's Barbie and My Scene products.
10    Larian contends that Request Nos. 79-81 are overbroad and unduly burdensome.  As an
11  example, Larian points to Request No. 80, which requests all documents relating to any services
12  or work performed by L.A. Focus, regardless of whether that work has any relation to the claims
13  and defenses in the action or any of the products at issue.  Larian similarly contends that Request
14  Nos. 79 and 81 are unbounded by subject matter or time, and are untethered to any claim or
   defense in this case.
15    Mattel's motion to compel Larian to produce all documents responsive to Request No. 79
16  is granted.  The request is reasonably limited in subject matter to Bratz and Angel.  The requested
17  documents are relevant to several issues in the case, including the origin, conception and creation
18  of Bratz.  The requested documents are also relevant to the unfair competition claims.  Larian's
19  supplemental response to Request No. 79 is unduly restrictive.  Among other things, the
20  definitions of "contested MGA products" encompass only those products that provide a basis for
21  any claim by MGA against Mattel, and not claims by Mattel against MGA.
22    Mattel's motion to compel Larian to produce all documents responsive to Request Nos.
23  80-81 is denied.  These requests, as drafted, are clearly overbroad because they have no
24  reasonable limitations on subject matter or time.  In particular, the requests are directed to L.A.
25  Focus and Alaska Momma without regard to whether the services or work the companies
26  provided has any relation to any product at issue.
27    Larian's supplemental responses to Request Nos. 80 and 81 are reasonably limited to
28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                              5

EXHIBIT _H_ PAGE _174_

1   documents related to the products at issue: Bratz and Angel. In Mattel's view, Larian's

2   supplemental response is too narrow and "may result in the exclusion of highly relevant

3   documents because the project, concept or design that is the subject of the focus group is deemed

4   not to relate to something then known as Bratz or Angel." However, Larian acknowledges that

5   these types of hypothetical documents would still fall within the narrower scope of production

6   proposed in his supplemental response.

7       Mattel also contends that it is entitled to all of the requested documents called for by

8   Request No. 80 because they are relevant to credibility and bias, particularly if the documents

9   show that work relating to Bratz or Angel deviate from standard procedures that MGA and L.A.

10  Focus used. It is, however, not apparent how deviations from standard procedures would impact

11  credibility or bias.

12      As to Request No. 81, Mattel contends that the documents showing the relationship

13  between Larian or MGA and Alaska Momma are relevant, even if they do not themselves

14  specifically relate to Bratz, Angel or Bryant. Mattel contends that communications from Larian

15  or MGA asking Alaska Momma to look for fashion doll opportunities around the time Bryant

16  claims to have pitched Bratz to Alaska Momma would be highly relevant in impeaching MGA's

17  and Bryant's stories about how and when they came to be introduced. Mattel also contends that

18  documents showing other dealings between Larian or MGA and Alaska Momma are relevant to

19  the issues of bias and credibility. Mattel's supposition about the types of documents that might

20  exist does not justify the type of far-reaching request it has propounded. Request No. 81 is also

21  not limited by either subject matter or time.

22      Accordingly, Larian shall produce documents responsive to Request Nos. 80 and 81 in

23  accordance with his supplemental responses.

24  <u>Bryant's Attorney and Niece: Request Nos. 113-115</u>

25      In Request No. 113, Mattel seeks all communications between Larian or MGA and Anne

26  Wang, a lawyer who represented Bryant in his contract negotiations with MGA. In Request No.

27  114, Mattel seeks all documents, including without limitation all communications, between

28  Bryant v. Mattel, Inc.,
    CV-04-09049 SGL (RNBx)                                                              6

EXHIBIT __14__ PAGE __175__

1   Larian or MGA and Anne Wang.  In Request No. 115, Mattel seeks documents relating to Brooke

2   Gilbert, Bryant's niece.  In his supplemental responses, Larian agrees to produce documents

3   relating to Bratz, Angel or Bryant that are responsive to the requests and to which no privilege or

4   other protection applies.  Thus, the only issue is whether Larian should be required to produce

5   responsive documents that do not relate to Bratz, Angel or Bryant.

6       Mattel contends that Request Nos. 113-114 seek documents that are relevant to the origin

7   and conception of Bratz and the timing thereof.  Mattel also contends that the documents may

8   disclose relevant information regarding Mattel's claims for breach of contract and inducing

9   breach of contract, including information regarding Bryant's or MGA's knowledge of Bryant's

10  contractual obligations with Mattel.  Mattel also contends that Larian has failed to carry his

11  burden of demonstrating that the requests are overly burdensome.

12      Mattel further contends that Larian's supplemental responses to Request Nos. 113 and 114

13  are inadequate because the limitations on scope may eliminate otherwise relevant documents that

14  do not specifically refer to Bratz, Angel or Bryant.  For example, Mattel contends that

15  communications with or about Bryant's lawyer that do not specifically relate to Bratz, Angel or

16  Bryant may be relevant to the issues of credibility and bias.

17      Mattel contends that Request No. 115 seeks documents that are relevant to determine

18  whether evidence on Bryant's computer was destroyed by the "Evidence Eliminator" software

19  that had been installed and run on the hard drive.  Bryant claims to have given his computer to his

20  niece.  Mattel also contends that the requested documents are relevant to the issues of credibility

21  and bias.  Further, Mattel contends that Larian's supplemental response to Request No. 115 is

22  inadequate, because evidence of any communication between Larian and his niece, regardless of

23  subject matter, is significant.

24      Larian contends that Request Nos. 113-115 are overbroad and unduly burdensome

25  because they lack any subject matter or time constraints.  Further, Larian contends that the

26  requests constitute an improper fishing expedition and necessarily sweep in documents that are

27  not relevant to any claim or defense.

28  //

Bryant v. Mattel, Inc.,                                                                          7
CV-04-09049 SGL (RNBx)

EXHIBIT __H__ PAGE __176__

1    Mattel's motion to compel documents responsive to Request Nos. 113-115 is denied. The

2  requests are overbroad because they are not focused on relevant subject matter and are untethered

3  to any claim or defense. Although Mattel asserts that responsive documents unrelated to Bratz,

4  Angel or Bryant might be relevant to the issues of credibility and bias, that speculative possibility

5  is too remote to justify the breadth of Mattel's requests.

6    Larian's supplemental responses are sufficient to provide Mattel with relevant and

7  responsive documents. Larian shall produce documents responsive to Request Nos. 113-115 in

8  accordance with his supplemental responses.

9

10  The Larian Brothers' "Arbitrations and Suits": Request Nos. 123-125

11    In Request No. 123, Mattel seeks all documents relating to any and all arbitrations and

    suits between Larian and his brother, Farhad Larian. In Request No. 124, Mattel seeks all

12  documents filed, submitted or served in the suit and/or arbitration proceedings brought by Farhad

13  Larian against Larian, including without limitation all declarations, affidavits, transcripts, video

14  and/or audio recordings and sworn testimony given by any person in such suit or arbitration

15  proceedings. In Request No. 125, Mattel seeks all documents relating to any and all settlements,

16  resolutions, or compromises of any suit and/or arbitration proceedings between Larian and Farhad

17  Larian. In his supplemental responses, Larian agrees to produce all documents referring or

18  relating to Bratz that are responsive to the requests and to which no privilege or other protection

19  applies.

20    Mattel contends that the court has already ruled that the arbitration proceedings between

21  Larian and his brother are relevant because they involve, among other matters, the conception and

22  creation date for Bratz. Mattel contends that Larian's supplemental responses improperly limit

23  the requests to the exclusion of potentially relevant documents. For example, Mattel contends

24  that documents that relate to the business, activities and plans of MGA in early 2000 are relevant

25  to the timing of the development of Bratz, whether or not they specifically refer to Bratz. Mattel

26  also contends that the requested documents are relevant to the value of the Bratz brand and

27  the net worths of Larian and MGA, as well as Mattel's claims for damages, including, for

28

EXHIBIT  H  PAGE  177

1   example, profits from the sale and licensing of Bratz and other information that would impeach

2   Larian's testimony that he has not made any profits from Bratz. Further, Mattel contends that the

3   requested documents may lead to evidence of the assessments or valuations of the net worth or

4   value of MGA or Larian, regardless of any reference to Bratz specifically. Mattel also contends

5   that settlement documents may contain information that bears on the merit of Farhad Larian's

6   claims and the value of Bratz. Mattel also claims that the requested documents are relevant to

7   motive, intent, bias and credibility.

8        Larian contends the instant requests are overbroad and unduly burdensome. Further,

9   Larian contends that the relationship of the requested documents to any of the claims or defenses
  in the present action is questionable, and the existence of such documents is conjectural.

10   Moreover, Larian contends that many of the categories of documents of interest to Mattel are

11   already the subject of other requests. Larian also contends that Request Nos. 123-125 impose an

12   undue burden because of the protective orders in place that strictly limit the use of any documents

13   from an arbitration and suit between Larian and his brother. Larian represents that he is currently

14   working with Mattel and his brother in an attempt to achieve suitable modifications to the orders

15   that are agreeable to all parties.

16        Mattel's motion to compel documents responsive to Request Nos. 123-125 as drafted is

17   denied. The requests are clearly overbroad in calling for all documents from the arbitrations and

18   suits between Larian and his brother, without any subject matter limitations. Furthermore, these

19   requests are unduly burdensome to the extent they require production of documents that do not

20   refer or relate to Bratz. Such documents have marginal relevance, at best, to the claims and

21   defenses in the case.

22        Larian's supplemental responses to Request Nos. 123 -125 are sufficient. Larian's

23   agreement to produce documents that refer or relate to Bratz is a reasonable compromise that will

24   enable Mattel to obtain documents relevant to the claims and defenses in the case, including many

25   of the categories of documents of interest to Mattel. For example, under Larian's proposed

26   limitation, documents that relate to the business, activities and plans of MGA in 2000 that also

27   refer or relate to Bratz must be produced. Documents relating to the value of the Bratz brand are

28

1  also within the scope of Larian's proposed limitation and would have to be produced.  Documents

2  relating to the net worth of Larian or MGA that refer or relate to Bratz would also have to be

3  produced.  Further, Larian's proposed limitation does not necessarily foreclose discovery

4  regarding the appraisal of MGA prepared by Mr. Dutcher.  In particular, documents relating to

5  MGA's liabilities, debt, intangible assets, inventory, loans, growth rate projection, and revenue

6  projections must be produced if such documents refer or relate to Bratz.  Accordingly, Larian

7  shall produce documents responsive to Request Nos. 123-125 in accordance with his

8  supplemental responses.

9

10  <u>Telephone Records:  Request Nos. 178-181</u>

11      In Request No. 178, Mattel seeks all documents relating to, including without limitation

12  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

13  from January 1, 1998 through January 1, 2001.  Larian objects to this request.

14      In Request No. 179, Mattel seeks all documents relating to, including without limitation

15  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

16  from January 1, 1998 through January 1, 2001 relating to Bratz and/or Angel.  In his supplemental

17  responses, Larian agrees to produce documents responsive to Request No. 179.  In response to

18  this motion, however, Larian contends that he should be permitted to produce documents

19  responsive to Request No. 179 in redacted form as discussed more fully below.

20      In Request No. 180, Mattel seeks all documents relating to, including without limitation

21  phone records for, telephone calls by or to Larian or anyone on Larian's behalf for the time period

22  from April 1, 2004 through June 1, 2004.  Larian objects to this request.

23      In Request No. 181, Mattel seeks all documents relating to, including without limitation

24  phone records for, telephone calls relating to Bryant by or to Larian or anyone on Larian's behalf

25  at any time.  In his supplemental response, Larian agrees to produce all documents pertaining to

26  communications made prior to January 1, 2001 that are responsive to the request and to which no

27  privilege or other protection applies.

28  //

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

10

EXHIBIT H PAGE 179

1    Mattel contends that Request No. 178 seeks documents relevant to show Larian's

2 communications with Bryant and other Mattel employees while such employees may still have

3 been employed by Mattel and before Larian claims to have known about Bratz. Similarly, Mattel

4 contends that Request No. 180 seeks documents relevant to Mattel's allegation that MGA, and

5 Larian in particular, were recruiting employees of Mattel's Mexican subsidiary and enticing them

6 to steal Mattel trade secrets.

7    Further, Mattel contends that the requested documents regarding telephone records are

8 relevant to (a) Mattel's claims regarding ownership of Bratz to the extent they show

9 communications with Carter Bryant; (b) Mattel's claims for theft of trade secrets to the extent

10 they show communications with current and former Mattel employees, including Machado,

11 Vargas, Trueba, Brawer, and Brisbois; (c) Mattel's claims regarding allegedly false statements

12 Larian made to retailers; (d) MGA's counterclaims; and (e) Mattel's defenses. With respect to

13 burden, Mattel contends that it would be more burdensome to attempt to produce the requested

14 records in redacted form, and further, that the protective order in place is sufficient to protect

15 Larian's privacy concerns.

16    Larian contends that the requests regarding telephone records are overbroad, completely

17 unbounded as to subject matter, and necessarily sweep in private information that is completely

18 irrelevant to any of the claims or defenses in the case. Larian also points out that the court

19 previously considered similar requests served on Bryant and allowed production of redacted

20 copies of telephone records as long as Bryant provided a signed verification that none of his

21 redactions related to Bratz, MGA or any other project he worked on for MGA. Specifically,

22 Bryant was permitted to produce redacted phone records as long as he provided a "signed

23 verification that none of the telephone records that were redacted relate or refer in any way to

24 MGA, Bratz, or any other project that Bryant worked on, with, for or on behalf of MGA."

25 Kennedy Decl., Ex. 1 (January 25, 2007 Order Granting Mattel's Motion to Compel Production

26 of Documents by Bryant). Larian contends that he should be permitted to redact responsive

27 documents consistent with the court's prior order. During the meet and confer, Larian offered to

28 provide redacted records and a signed verification that none of the redacted information was

EXHIBIT __H__ PAGE __180__

1    relevant to the case, but Mattel did not respond to the offer.

2        Mattel's motion to compel documents responsive to Request Nos. 178 (all documents

3    relating to phone records by or to Larian for January 1, 1998 – January 1, 2001) is denied.  The

4    request is overbroad because it lacks any subject matter limitation, and thus necessarily sweeps in

5    private information that is completely irrelevant to the case.  Larian should not be subjected to

6    such an intrusion into his private and business affairs when Mattel has made no attempt to tailor

7    the request to the communications, claims, and defenses identified above.

8        In contrast to Request No. 178, Request No. 179 is reasonably tailored to phone records

9    for a particular time frame (January 1, 1998 to January 1, 2001), and to particular subject matters

10   (Bratz and/or Angel).  Accordingly, Larian shall abide by his agreement to comply with Request

11   No. 179, as stated in his supplemental response.  Larian's proposal to produce responsive

12   documents in redacted form is appropriate to address his privacy concerns.  More specifically,

13   Larian may produce documents responsive to Request No. 179 in redacted form as long as Larian

14   provides a signed verification that none of the redacted material refers or relates in any way to

15   MGA, Bratz, or any other proposed or actual project worked on, with, for or on behalf of MGA,

16   or that are otherwise relevant to the case.

17       Mattel's motion to compel documents responsive to Request No. 180 (documents relating

18   to telephone calls by or to Larian from April 1, 2004 – June 1, 2004) is granted.  Request No. 180

19   is reasonably tailored to a two month period during which MGA and Larian allegedly recruited

20   employees out of Mattel's Mexican subsidiary and enticed them to steal Mattel trade secrets.  See

21   Mattel's Second Amended Answer and Counterclaims, ¶¶37-54.  Larian may produce documents

22   responsive to Request No. 180 in redacted form as specified above with respect to Request No.

23   179.

24       Request No. 181 (documents relating to telephone calls relating to Bryant by or to Larian)

25   is overbroad as written because it has no time limits.  In his supplemental response, Larian agrees

26   to produce communications prior to January 1, 2001 that are responsive to the request.  Larian's

27   proposed limitation is a reasonable compromise that will provide Mattel with relevant documents

28   without imposing an undue burden.  Accordingly, Larian shall produce documents responsive to

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                             12

EXHIBIT  H   PAGE  181

1 | Request No. 181 consistent with his supplemental response, and may produce such documents in

2 | redacted form as specified above with respect to Request No. 179.

3

4 | Statements to the Media:  Request Nos. 190-192, 194-197 and 199

5 |   In Request Nos. 190-192, 194-197 and 199, Mattel seeks communications between Larian

6 | and members of the press or financial institutions relating to Bratz, Bryant, Mattel or this action.

7 | Mattel contends that the requests are sufficiently narrowly tailored to seek information that goes

8 | to the issues in the lawsuit.  More specifically, Mattel contends that the request are relevant to

9 | Mattel's allegation that MGA and Larian repeatedly issued false and misleading press releases

10 | regarding Bratz's sales, Bratz's market share, Bratz's position relative to Mattel's Barbie

11 | products, sales of Mattel's Barbie products, and the market share of Mattel's Barbie products.

12 | Further, Mattel contends that statements to lenders or investors relating to Bratz or Bryant may

13 | also contain admissions regarding the origin and conception of Bratz and statements relevant to

14 | damages.

15 |   Larian contends that the requests are overbroad and unduly burdensome, particularly

16 | because several of the requests seek publicly available information.  Further, Larian points out

17 | that the court has already considered and rejected as overbroad a nearly identical request served

18 | on MGA that called for all documents relating to any communications by MGA with any news

19 | organization regarding the contested MGA products or the contested Mattel products.  Larian

20 | contends that the same reasoning applies to the instant requests.

21 |   Mattel's motion to compel documents responsive to Request Nos. 190-192, 194-197 and

22 | 199 is denied.  Although several of the requests encompass potentially relevant documents, the

23 | requests are overbroad and encompass documents that have little to no relevance to the claims and

24 | defenses in the case.  Not one of the requests is limited to relevant subject matters, such as Bratz's

25 | sales, Bratz's market share, Bratz's position relative to Mattel's Barbie products, sales of Mattel's

26 | Barbie products, the market share of Mattel's Barbie products, the origin and conception of Bratz,

27 | or damages.

28 | //

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT H PAGE 182