# EXHIBIT 1

CONFORMED COPY

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Plaintiff Mattel, Inc.

```
                         LODGED
              CLERK, U.S. DISTRICT COURT

                      AUG - 2 2007

              CENTRAL DISTRICT OF CALIFORNIA
              EASTERN DIVISION      BY DEPUTY
```

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)
                                           Consolidated with
12            Plaintiff,                    Case Nos. CV 04-09059 & CV 05-2727
       vs.
13                                         **DISCOVERY MATTER**
   MATTEL, INC., a Delaware
14  corporation,                          **[To Be Heard By Discovery Master
                                          Hon. Edward Infante (Ret.)]**
15            Defendant.
                                          NOTICE OF MOTION AND MOTION
16  ────────────────────────────         OF PLAINTIFF MATTEL, INC. FOR
                                          ADDITIONAL TIME AND/OR TO
17  AND CONSOLIDATED ACTIONS              REOPEN THE DEPOSITION OF
                                          CARTER BRYANT FOR ALL
18  **CONFIDENTIAL**                       PURPOSES AND TO OVERRULE
                                          ADDITIONAL INSTRUCTIONS NOT
19  **FILED UNDER SEAL PURSUANT**          TO ANSWER AT THE DEPOSITION;
    **TO PROTECTIVE ORDER**                AND

20                                         MEMORANDUM OF POINTS AND
                                          AUTHORITIES
21
22                                         Date:   TBA
                                          Time:   TBA
23                                         Place:  Telephonic

24                                         **Phase 1**
                                          Discovery Cut-Off:   January 14, 2008
25                                         Pre-Trial Conference: April 7, 2008
                                          Trial Date:          April 29, 2008
26
                                          **Phase 2**
27                                         Discovery Cut-Off:   March 3, 2008
                                          Pre-Trial Conference: June 2, 2008
28                                         Trial Date:          July 1, 2008

EXHIBIT  1  PAGE  4

CONFORMED COPY

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
6   Facsimile:  (213) 443-3100

7   Attorneys for Plaintiff Mattel, Inc.

8                UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10                    EASTERN DIVISION

11  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)
                                           Consolidated with
12              Plaintiff,                 Case Nos. CV 04-09059 & CV 05-2727
          vs.
13                                         **DISCOVERY MATTER**
    MATTEL, INC., a Delaware
14  corporation,                           **[To Be Heard By Discovery Master
                                           Hon. Edward Infante (Ret.)]**
15              Defendant.
                                           NOTICE OF MOTION AND MOTION
16  _____            OF PLAINTIFF MATTEL, INC. FOR
                                           ADDITIONAL TIME AND/OR TO
17  AND CONSOLIDATED ACTIONS               REOPEN THE DEPOSITION OF
                                           CARTER BRYANT FOR ALL
18  **CONFIDENTIAL**                       PURPOSES AND TO OVERRULE
                                           ADDITIONAL INSTRUCTIONS NOT
19  **FILED UNDER SEAL PURSUANT**          TO ANSWER AT THE DEPOSITION;
    **TO PROTECTIVE ORDER**                AND
20
                                           MEMORANDUM OF POINTS AND
21                                         AUTHORITIES

22                                         Date:   TBA
                                           Time:   TBA
23                                         Place:  Telephonic

24                                         **Phase 1**
                                           Discovery Cut-Off:   January 14, 2008
25                                         Pre-Trial Conference: April 7, 2008
                                           Trial Date:          April 29, 2008
26
                                           **Phase 2**
27                                         Discovery Cut-Off:   March 3, 2008
                                           Pre-Trial Conference: June 2, 2008
28                                         Trial Date:          July 1, 2008

                                           MATTEL'S MOTION RE: BRYANT

EXHIBIT ___1___ PAGE ___5___

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that Mattel, Inc. will, and hereby does, move the

3  Court, pursuant to Federal Rules of Civil Procedure 30(d)(3) and 37, for an order

4  compelling Carter Bryant to sit for an additional 21 hours of deposition, and

5  overruling improper instructions not to answer on privilege grounds made during the

6  deposition.

7    This Motion is made on the grounds that: (1) there are numerous claims and

8  parties in this case which were not at issue when Bryant was deposed, about which

9  Mattel is entitled to question Bryant; (2) defendants have now produced dozens of

10  crucial documents and originals of key documents which were requested prior to the

11  Bryant deposition, but which defendants withheld until compelled by the Court,

12  requiring that the deposition be reopened for all purposes and that Mattel be granted

13  additional deposition time; (3) counsel's improper instructions, together with

14  counsel's coaching, lengthy speaking objections, interruptions of Bryant in the

15  middle of his answers, and extractions of Bryant from the deposition room with

16  questions pending, prevented a fair examination and unreasonably delayed the

17  deposition, requiring that the deposition be reopened and that Mattel be granted

18  additional deposition time; and (4) Bryant's counsel did not have a proper basis for

19  certain instructions not to answer on privilege grounds, which should be overruled.

20    This Motion shall be heard by the Honorable Edward Infante, Discovery

21  Master.  This Motion is based on this Notice of Motion and Motion, the

22  accompanying Memorandum of Points and Authorities, the Declarations of B.

23  Dylan Proctor and Michael T. Zeller filed concurrently herewith, the Separate

24  Statement filed concurrently herewith, the Notice of Lodging lodged concurrently

25  herewith, the [Proposed] Order lodged concurrently herewith, the records and files

26  of this Court, and all other matters of which the Court may take judicial notice.

27

28

EXHIBIT ___1___ PAGE _6_

1

**Statement of Rule 37-1 Compliance**

2          The parties met and conferred on May 17, 2007, and times thereafter

3    regarding the issues set forth in this motion.

4

5    DATED: August 1, 2007

QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP

6

7                                             By

8                                                   B. Dylan Proctor
                                                   Attorneys for Plaintiff Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2179788.3

MATTEL'S MOTION RE: BRYANT

EXHIBIT ___1___ PAGE ___4___

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ...................................................................................................... 3

A.   Mattel's 2004 Discovery .......................................................................... 3

B.   The Court Grants Mattel's Motions to Compel Bryant and MGA
     to Produce Their Improperly Withheld Documents ................................. 4

C.   The Court Grants Mattel's Motion to Compel Bryant to Make
     Original Documents Available .................................................................. 7

D.   The Parties Add New Claims Following Bryant's Deposition ................. 8

E.   The Court Grants Mattel's Motion to Overrule Specific
     Instructions Not to Answer at the Bryant Deposition ............................ 10

F.   Bryant Moves to Overrule the Same Instructions His Own
     Counsel Had Given .................................................................................. 11

G.   Mattel's Efforts to Meet and Confer ...................................................... 12

ARGUMENT .......................................................................................................... 13

I.   THE COURT SHOULD REOPEN BRYANT'S DEPOSITION FOR
     ALL PURPOSES AND GRANT MATTEL ADDITIONAL TIME
     FOR QUESTIONING .......................................................................... 13

     A.   Defendants Have Finally Produced Long Withheld Documents .......... 13

          1.   New Evidence Produced By Bryant ............................................ 14

          2.   New Evidence Produced By MGA ............................................. 17

          3.   New Evidence Produced By Third Parties ................................. 18

     B.   New Claims Have Been Filed Since Bryant's First Deposition ........... 19

II.  THE COURT SHOULD OVERRULE ADDITIONAL
     INSTRUCTIONS NOT TO ANSWER ............................................... 20

CONCLUSION ....................................................................................................... 23

07209/2179788.3

MATTEL'S MOTION RE: BRYANT

EXHIBIT ___ PAGE ___

# TABLE OF AUTHORITIES

**Page**

### Cases

AMCO Ins. Co. v. Madera Quality Nut LLC,
  2006 WL 931437 (E.D. Cal. 2006) ........................................................ 22

Burrows v. Redbud Community Hosp. Dist.,
  187 F.R.D. 606 (N.D. Cal. 1998) .......................................................... 24

Clarke v. American Commerce Nat'l Bank,
  974 F.2d 127 (9th Cir. 1992) ................................................................ 21

Collins v. International Dairy Queen,
  189 F.R.D. 496 (M.D. Ga. 1999) .......................................................... 20

Communications Center, Inc. v. Hewitt,
  2005 WL 3277983 (E.D. Cal. 2005) ..................................................... 16

Dixon v. Certainteed Corp.,
  164 F.R.D. 685, 692 (D. Kan. 1996) ............................................... 14, 19

Garcia v. City of El Centro,
  214 F.R.D. 587 (S.D. Cal. 2003) .......................................................... 22

Keck v. Union Bank of Switzerland,
  1997 WL 411931 (S.D.N.Y. 1997) .................................................. 14, 19

Keithley v. Homestore.com, Inc.,
  2006 WL 1646119 (N.D. Cal. 2006) ..................................................... 20

Kucala Enterprises, Ltd. v. Auto Wax Co., Inc.,
  2003 WL 22433095 (N.D. Ill. 2003) ..................................................... 16

McKay v. C.I.R.,
  886 F.2d 1237, 1238 (9th Cir. 1989) .................................................... 21

Nutmeg Ins. Co. v. Atwell, Vogel & Sterling A Div. of Equifax Services, Inc.,
  120 F.R.D. 504 (W.D. La. 1988) ........................................................... 22

Resolution Trust Corp. v. Dabney,
  73 F.3d 262 (10th Cir. 1995) ................................................................ 22

Ritchie v. U.S.,
  2004 WL 1161171 (N.D. Cal. 2004) ..................................................... 14

Robins v. Scholastic Book Fairs,
  928 F. Supp. 1027 (D. Or. 1996) .......................................................... 14

Stempler v. Collect America, Ltd.,
  2000 WL 288377 (E.D. La. 2000) ......................................................... 24

-ii-

MATTEL'S MOTION RE: BRYANT

EXHIBIT ___1___ PAGE ___9___

Tillery v. Darby-Rogers Co.,
    2006 WL 2735162 (M.D. Fla. 2006).................................................................20

U.S. v. Munoz,
    233 F.3d 1117 (9th Cir. 2000)........................................................................23

### Miscellaneous

8 Wright & Miller,
    Fed. Practice & Procedures § 2023 (1970) ........................................................23



## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

The Discovery Master previously ruled, in an Order that was upheld by the District Court almost in its entirety, that Carter Bryant must reappear at deposition to answer approximately 50 questions he was improperly instructed not to answer. When Bryant is deposed further, Mattel should be permitted to question him on any topic, even beyond those on which he was instructed, and should be granted additional time to do so, for several reasons.

First, new evidence, which defendants withheld without excuse, has come to light since Bryant's deposition. Mattel served Bryant with its document requests and served MGA with a document subpoena well before the Bryant deposition was taken in late 2004. However, Defendants produced a total of 2264 pages of documents -- 1588 by Bryant and 676 by MGA -- prior to Bryant's deposition. Following the Discovery Master's Orders compelling Bryant and MGA to produce documents that were improperly withheld, MGA has now produced more than 157,000 pages and Bryant has produced more than 20,000 pages of documents. Thus, more than 98 percent of defendants' document production took place after Bryant's deposition.

As a result, defendants have now belatedly produced dozens of key documents, including documents relating to the origins of Bratz, that Mattel is entitled to question Bryant about. For example, Bryant has recently produced Bratz design drawings that are dated September 1999 -- a time when he was employed by Mattel. Bryant has also recently produced the hard drive of the computer he used during the relevant time period -- which he provided only after being ordered by the Court to do so, after then saying that he couldn't find it, and after then forcing Mattel to move to enforce the Court's Order. Why Bryant went to such extraordinary lengths to avoid producing that hard drive has now become clear: it had a program called "Evidence Eliminator" installed on it. Both courts and the creators of that

07209/2179788.3

-1-

MATTEL'S MOTION RE: BRYANT

EXHIBIT __1__ PAGE __11__

1  program have stated that, as its name suggests, the program's purpose is to

2  permanently destroy data and render it unrecoverable in legal proceedings.  As

3  another example, MGA now has produced October 10, 2000 e-mails between Isaac

4  Larian, Paula Garcia (formerly Treantafelles) and Victoria O'Connor reflecting that

5  Bryant worked with MGA on Bratz "on average about 4 hours a day" starting at

6  least six weeks before he left Mattel, and invoices showing that one vendor alone

7  billed MGA for 169 hours of "Bratz dolls research, development and support

8  services" that were performed before Bryant left Mattel.  Examples of other

9  similarly key documents (though by no means all, or even most of them) are

10  included as exhibits.[1]  Because this evidence had not been produced, Mattel could

11  not question Bryant about any of it when he was first deposed.

12        Bryant's deposition should also be reopened for all purposes because this case

13  includes several more claims than when Bryant was first deposed.  At the time

14  Bryant's deposition was taken in 2004, Mattel had asserted five state law claims

15  against Bryant.  Since then, MGA has sued Mattel on a variety of alleged federal

16  and state law unfair competition claims in the <u>MGA v. Mattel</u> case, and MGA lists

17  Bryant as a knowledgeable witness regarding these claims.  Indeed, MGA's product

18  manager for Bratz, Paula Garcia, has declared that Carter Bryant is one of only two

19  MGA people who know about the initial concept of and see the early product

20  drawings for many Bratz products.  Given the importance of timing issues to both

21  MGA's and Mattel's claims and the fact that Bryant is one of only two people

22  involved in the earliest phases of the conception and design of the Bratz dolls,

23  Bryant is a critical witness on MGA's claims -- which, according to MGA, put at

24  issue each of the hundreds of Bratz dolls.  To date, Mattel has been afforded no

25  opportunity to depose Bryant on any of these issues.

26

27  _____
   [1]  <u>See</u> Declaration of B. Dylan Proctor, dated July 30, 2007 ("Proctor Dec."),
   filed concurrently herewith, Exhs. 1-8, 11-12.

28



EXHIBIT ___1___ PAGE ___12___

1   Since his deposition was taken in 2004, Mattel has also alleged 13

2   Counterclaims against Bryant and other defendants in MGA's case against Mattel,

3   including RICO and copyright infringement counterclaims.  Mattel is entitled to

4   question Bryant about issues such as his own acts of copyright infringement and his

5   participation in the RICO enterprise alleged by Mattel.  Mattel is also entitled to

6   question Bryant about his knowledge of MGA's and other defendants' acts of

7   copyright infringement and their roles in the enterprise.

8   Last, Bryant's deposition should be reopened based on defense counsel's

9   obstruction of the earlier deposition sessions.  Both Bryant's and MGA's counsel

10  abused the discovery process and obstructed the original Bryant deposition by

11  coaching the witness, interposing lengthy narrative objections and repeatedly taking

12  the witness out of the room with questions pending.  The Court previously found

13  that Bryant's counsel had improperly coached at the deposition and had interposed

14  47 improper instructions not to answer.  In addition to those, defense counsel

15  interposed another 12 improper instructions not to answer based on ostensible

16  privilege grounds, as set forth in the concurrently filed Separate Statement, which

17  should be overruled.  Bryant's counsel's obstruction of the deposition justifies its

18  being reopened even beyond the actual instructions not to answer.

19  For all of these reasons, Mattel asks that Bryant be compelled to sit for

20  additional deposition time and that his deposition be reopened for all purposes.

21  **Background**

22  **A.   Mattel's 2004 Discovery**

23  Mattel served its first set of document requests to Bryant on June 14, 2004,

24  and subpoenaed MGA to produce and permit inspection of its documents on

25  June 15, 2004.[2]  Shortly thereafter, on June 17, 2004, Mattel served a Notice of

26  ───────────────

27  [2] See Plaintiff Mattel, Inc.'s First Set of Requests for the Production of
    Documents and Tangible Things to Defendant Carter Bryant, dated June 14, 2004;

28  (footnote continued)

07209/2179788.3

-3-

1  Deposition for Bryant.[3]  Following a series of delay tactics by Bryant, refusals to

2  meet and confer, his counsel's broken promise made upon their "word as attorneys"

3  that he would appear and two Court Orders compelling Bryant to sit for deposition

4  (the second being necessary because Bryant refused to obey the first Order), Bryant

5  finally appeared for deposition beginning on November 4, 2004.[4]  As of that date,

6  Bryant had produced 1588 pages of documents and MGA had produced 676 pages

7  of documents in response to Mattel's document requests.[5]

8      At the deposition, Bryant's counsel thwarted a fair examination by instructing

9  Bryant not to answer questions on many dozens of occasions, including on such

10  frivolous grounds as "calls for speculation."[6]  Both Bryant's and MGA's counsel also

11  engaged in lengthy narrative objections and speeches that suggested answers to

12  questions, interrupted Bryant in the middle of his responses, and took Bryant out of

13  the room while questions were pending.[7]

14     **B.**   **The Court Grants Mattel's Motions to Compel Bryant and MGA to**

15         **Produce Their Improperly Withheld Documents**

16      Mattel moved to compel Bryant to produce the documents that Mattel had

17  requested in June 2004, prior to the Bryant deposition.[8]  The Discovery Master

18  _____

19  Mattel's Subpoena to MGA for Inspection and Production of Documents, dated
June 15, 2004, Zeller Dec. Exhs. 1-2.

20    [3]  See Notice of Deposition for Carter Bryant, dated June 17, 2004, Proctor Dec.

21  Exh. 13.
  [4]  See Declaration of Michael T. Zeller in Support of Mattel's Motion to Overrule

22  Instructions Not to Answer During the Deposition of Carter Bryant, dated

23  February 1, 2007 ("02/01/07 Zeller Dec.") at ¶¶ 3-13 & Exhs. 2-3, 5-11, Notice of
Lodging, dated July 30, 2007 ("Notice of Lodging"), lodged concurrently herewith,

24  Exh. 1.

25    [5]  Zeller Dec. ¶ 3.
  [6]  Bryant Depo. at 111:21-113:12, 705:21-706:10, Proctor Dec. Exh. 14.

26    [7]  See, e.g., Proctor Dec. ¶¶ 12-14, Exh. 14.

27    [8]  Zeller Dec. ¶ 4.  Mattel had moved to compel Bryant to produce his documents
in January of 2005.  That motion was not heard before the Court stayed discovery.

28      (footnote continued)

EXHIBIT __1__ PAGE __14__

1  granted that motion almost in its entirety on January 25, 2007.[9]  Since then, Bryant

2  has produced more than 18,000 additional pages, including a number of key

3  documents.[10]

4       One set of documents that Bryant had not produced -- and that Bryant

5  continued to refuse to produce even after the Discovery Master's January 25, 2007

6  Order -- was his fee agreements.  Accordingly, Mattel moved to compel again, and

7  the Court again ordered Bryant to produce his withheld fee agreements in an Order

8  dated June 19, 2007.[11]  Bryant still did not produce his fee agreements but, after

9  further requests by Mattel that he comply with the Court's Orders, eventually

10 produced one.[12]  That agreement provides that MGA "has agreed to assume

11 responsibility for payment of [Bryant's] legal fees," but "reserve[s] its right to

12 terminate this agreement at any time, for any reason and, if appropriate, seek

13 reimbursement of any fees expended in [Bryant's] defense."[13]

14 _____

15 On June 20, 2006, after the discovery stay was lifted, the parties met and conferred in Magistrate Judge Block's courtroom to discuss outstanding discovery issues that

16 predated the stay.  Though the parties were able to reach apparent tentative agreement regarding Bryant's document production during the meet and confer,

17 Bryant later backed out of the agreement and made additional demands, such as

18 insisting that Mattel waive its right to all further discovery.  Over the next several months, Mattel attempted to persuade Bryant to cure the deficiencies in his

19 production without judicial intervention and, at the direction of the Discovery

20 Master, met and conferred again on December 28, 2006.  However, Bryant's counsel refused to produce any additional documents unless Mattel waived its right to

21 further discovery.  Accordingly, Mattel moved to compel on January 3, 2007.  Id.

22 ¶¶ 4-5.

23    [9]  Order Granting Mattel's Motion to Compel Production of Documents, dated January 25, 2007, Zeller Dec. Exh. 3.

24    [10]  Zeller Dec. ¶ 5.

25    [11]  See Order Granting Mattel's Motion to Compel Production of Documents at 11:24-12:14; Order Granting in Part and Denying in Part Mattel's Motion to Enforce

26 the Court's Order of January 25, 2007, Zeller Dec. Exhs. 3-4.

27    [12]  Proctor Dec. ¶ 2, Exh. 1.
   [13]  Proctor Dec. Exh. 1, at BRYANT2 000011.

28

07209/2179788.3

-5-

EXHIBIT ___1___  PAGE __15__

MATTEL'S MOTION RE: BRYANT

1    In its January 25, 2007 Order, the Court also ordered Bryant to produce the

2  hard drive of his computer for forensic imaging.[14]  After that, Bryant told Mattel that

3  he could not locate the computer.[15]  It was only after Mattel moved for sanctions

4  that Bryant "found" it.[16]  Examination of the image of Bryant's hard drive has

5  revealed that it had a program called "Evidence Eliminator" installed on it.[17]  This is

6  so even though Bryant's counsel, in opposing Mattel's motions to compel Bryant's

7  hard drive, represented to Judge Block and the Discovery Master that defendants

8  had reviewed the hard drive of Bryant's computer but located no "relevant" or

9  "responsive" documents.[18]  For example, Bryant's counsel swore to Judge Block that

10  they had "tirelessly searched for and inspected [Bryant's] hard drives for relevant

11  information," but found none.[19]

12    Other documents that Mattel requested before Bryant's deposition, but that

13  Bryant withheld, were Bratz designs that he created during the time of his Mattel

14  employment.  Only after being compelled, Bryant has now produced Bratz drawings

15  dated September 19, 1999 -- more than a year before Bryant left Mattel.[20]

16    Mattel also had to move to compel MGA to produce documents on

17  February 2, 2007.[21]  The Court granted that motion in a written Order dated May 15,

18

19    [14]   Zeller Dec. Exh. 3.  Before that, Mattel first moved to compel production of
Bryant's hard drives in January of 2005, and had reminded Bryant that he should

20  secure possession of all relevant computer hard drives to prevent the possible

21  destruction of evidence as early as November 2004.  See id. ¶ 14, Exh. 10.

   [15]   Zeller Dec. ¶ 16, Exh. 13.

22  [16]   Zeller Dec. ¶ 16, Exh. 14.

   [17]   Zeller Dec. ¶ 17.

23  [18]   Zeller Dec. ¶ 15, Exhs. 11-12.

24  [19]   Zeller Dec. ¶ 15, Exh. 11.  These representations were misleading at best,
given that the existence of the "Evidence Eliminator" program on Bryant's hard

25  drive alone was highly relevant and fell well within Mattel's requests for the

26  production of documents and tangible things to Bryant.

   [20]   Proctor Dec. Exh. 7.

27  [21]   Zeller Dec. ¶ 6.

28

07209/2179788.3

-6-

EXHIBIT __1__ PAGE __6__

1    2007 and, before that, stated it was granting the motion at oral argument on

2    March 5, 2007.[22] As of the date of Bryant's deposition, MGA had produced 676

3    pages of documents in response to Mattel's requests.[23] Since the date of Bryant's

4    deposition, MGA has produced nearly 157,000 pages of documents, the vast

5    majority of which were produced after the Court granted Mattel's motion to compel

6    in March 2007.[24] Moreover, as of today, MGA still has additional time to produce

7    its withheld documents from MGA Hong Kong.[25] Accordingly, Mattel expects

8    MGA to produce yet more relevant documents that it has long withheld.

9         Altogether, MGA and Bryant have produced nearly 175,000 pages of

10   documents since Bryant's deposition was taken.[26]

11        **C.**    **The Court Grants Mattel's Motion to Compel Bryant to Make**

12               **Original Documents Available**

13        Mattel asked Bryant to make his original drawings and other documents

14   available for inspection and photographing at least as early as October 25, 2004.[27]

15   Although Bryant's counsel stated that the originals would be made available at

16   Bryant's deposition, only a few original drawings were made available at that time.[28]

17

18

19

20   _____

21   [22]   Order Granting Mattel's Motion to Compel Production of Documents and
     Interrogatory Answers by MGA, dated May 15, 2007, Zeller Dec. ¶ 6, Exh. 5.

22   [23]   Zeller Dec. ¶ 3.

23   [24]   Zeller Dec. ¶ 7.
     [25]   July 2, 2007 Order, Zeller Dec. ¶ 7, Exh. 6.

24   [26]   Zeller Dec. ¶ 7.

25   [27]   Zeller Dec. ¶ 9, Exh. 7.
     [28]   Zeller Dec. ¶ 10, Exh. 8; see also Bryant Depo. at 617:17-21, Proctor Dec.,

26   Exh. 14 (Mattel noting at the deposition itself that "we won't be able to complete

27   this deposition until, among other things, we have a chance to examine the witness
     with respect to all the originals.").

28

EXHIBIT ___1___ PAGE ___17___

1  Even after the deposition and multiple additional requests from Mattel, Bryant still

2  did not turn over a single additional original Bratz drawing or sketch.[29]

3      On February 14, 2007, the Discovery Master ordered Bryant to make all

4  original documents and three-dimensional items requested by Mattel available for

5  inspection and photographing no later than February 28, 2007.[30]  On February 27

6  and 28, 2007, Bryant allowed Mattel to inspect some, but not all, of the remaining

7  originals.[31]  Only after repeated requests by Mattel that he comply with the Order,

8  and only after Mattel had to threaten motion practice to enforce the Order, Bryant

9  finally allowed the inspection of yet more previously withheld originals on May 31,

10  June 20 and June 21, 2007.[32]

11      **D.    The Parties Add New Claims Following Bryant's Deposition**

12      In April 2005, after Bryant's deposition, MGA filed its lawsuit against Mattel

13  alleging a broad array of unfair competition claims.[33]  MGA asserts that Mattel has

14  engaged in "serial copycatting" of Bratz dolls, Bratz "pets" and other Bratz products,

---

15  [29]  Declaration of Shane McKenzie in Support of Mattel's Motion to Enforce
16  Stipulation and Compel Bryant to Make Original Documents Available, dated
17  January 22, 2007 ("McKenzie Dec."), ¶¶ 2-4 & Exh. 1, Notice of Lodging Exh. 2;
Zeller Dec. ¶ 11.  Mattel first filed a motion to compel Bryant to produce his
18  originals for inspection and photographing on February 18, 2005.  Zeller Dec. ¶ 11.
19  The case was stayed before the motion was heard.  After the stay was lifted, Bryant
stipulated on the record before Judge Block, on June 20, 2006, that he would
20  produce for inspection and photographing originals requested by Mattel on 15 days'
21  notice.  McKenzie Dec. ¶ 8, Zeller Dec. ¶ 11.  Mattel then repeatedly requested in
writing that certain originals be made available by Bryant, but Bryant still refused --
22  in the face of his own stipulation -- to make all the requested originals available for
23  inspection and photographing.  McKenzie Dec. Exh. 3, Zeller Dec. ¶ 12.  Mattel
thus filed a Motion To Enforce Stipulation And Compel Bryant To Make Original
24  Documents Available on January 23, 2007.  Zeller Dec. ¶ 12.
25  [30]  Zeller Dec. ¶ 12, Exh. 9.
    [31]  Id ¶ 13.
26  [32]  Id.
27  [33]  See MGA Entertainment, Inc.'s Complaint ("MGA Complaint"), filed
April 13, 2005.

28

-8-

MATTEL'S MOTION RE: BRYANT

EXHIBIT ___1___ PAGE ___18___

1  Bratz television commercials and Bratz packaging.[34]  MGA's Complaint also asserts

2  various other unfair competition claims.[35]  In its interrogatory responses, MGA lists

3  Bryant as a "person who was involved in the marketing, advertising, promotion,

4  licensing, offering for sale, conception, origin, creation, design, development,

5  sculpting, engineering, reduction to practice, tooling, or painting of" the allegedly

6  infringed MGA products that MGA has put at issue.[36]  There are hundreds such

7  products.  MGA's responses to Mattel's interrogatories state that the <u>entire</u> Bratz line

8  is the subject of MGA's claims, and an MGA witness has declared that there are

9  more than 200 Bratz products.[37]  Further, MGA's Vice President of Product Design

10  and Development, Paula Garcia, has stated that she and Carter Bryant are "the *only*

11  people who know what the concept is and who see the early product drawings" with

12  respect to many Bratz products.[38]

13      Also after Bryant's deposition, Mattel filed 13 counterclaims against Bryant,

14  MGA and other defendants in MGA's case against Mattel, including for copyright

15  infringement, RICO violations and misappropriation of trade secrets, among other

16  claims.[39]  These claims present new issues, such as Bryant's copying of or

17

18  _____

[34]  Id. at, e.g., ¶¶ 7, 33, 41, 59.

19  [35]  Id. at ¶¶ 101-125.

20  [36]  MGA's Responses to Mattel's First Set of Interrogatories Re: Claims of Unfair Competition, dated January 19, 2007, Response No. 1 at 6:9, Proctor Dec.

21  Exh. 17.

22  [37]  See Declaration of Patricia Perrier in Support of MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz Ownership in Phase One, ¶ 2;

23  MGA Entertainment, Inc.'s Supplemental Response to Interrogatory No. 2 of Mattel, Inc.'s First Set of Interrogatories Re: Claims of Unfair Competition, Proctor

24  Dec. ¶¶ 18, 20 & Exhs. 18, 20.

25  [38]  Declaration of Paula Garcia in Support of MGA's Opposition to Mattel's Motion to Compel, dated February 9, 2007, ¶ 6 (emphasis in original),  Proctor Dec.

26  Exh. 19.

27  [39]  See Mattel's Second Amended Answer and Counterclaims, dated July 12, 2007.

28

MATTEL'S MOTION RE: BRYANT

EXHIBIT ___1___ PAGE ___19___

1  preparation of derivative works from the Bratz works Mattel claims it owns and

2  Bryant's activities in concert with the other members of the MGA Criminal

3  Enterprise.[40]  Mattel's counterclaims also implicate defendants' thefts of Mattel trade

4  secrets in the United States, Mexico and Canada, arising from events which

5  occurred after the original complaint was filed.[41]

6  **E.      The Court Grants Mattel's Motion to Overrule Specific**

7  **Instructions Not to Answer at the Bryant Deposition**

8       Mattel moved to overrule specified instructions not to answer at the Bryant

9  deposition in a motion dated February 1, 2007.[42]  The Court granted this motion in

10  substantial part, overruling 47 instructions not to answer.[43]  The Court also found

11  that defense counsel coached Bryant during the deposition.[44]  The Court ordered

12  Bryant to appear for an additional two hours to answer the questions he was

13  improperly instructed not to answer and follow up questions.[45]

14

15

16  [40]  See, e.g., id., at ¶¶ 82-97, 122-128, 136-141, 149-166.

17  [41]  Mattel has pleaded 13 pending counterclaims: (1) Copyright Infringement,
    (2) Racketeer Influenced and Corrupt Organizations Act, (3) Conspiracy to Violate

18  the Racketeer Influenced and Corrupt Organizations Act, (4) Misappropriation of

19  Trade Secrets, (5) Breach of Contract, (6) Intentional Interference With Contract,
    (7) Breach of Fiduciary Duty, (8) Aiding and Abetting Breach of Fiduciary Duty,

20  (9) Breach of Duty of Loyalty, (10) Aiding and Abetting Breach of Duty of Loyalty,

21  (11) Conversion, (12) Unfair Competition, and (13) Declaratory Relief.  See id.
    [42]  Proctor Dec. ¶ 15.

22  [43]  See Discovery Master's March 7, 2007 Order Granting in Part and Denying in

23  Part Mattel's Motion to Overrule Instructions Not to Answer During the Deposition
    of Carter Bryant ("March 7 Order") ¶ 1 & Attachment A, overruling 49 instructions

24  not to answer made at Bryant's deposition.  Proctor Dec. Exh. 15.  The Discovery

25  Master's ruling was affirmed except as to two of these instructions (Nos. 39 & 50).
    See Order Re: Motions Heard on June 11, 2007, dated June 27, 2007, at 32-35,

26  Proctor Dec. ¶ 16, Exh. 16.

27  [44]  Proctor Dec. ¶ 15.
    [45]  March 7 Order ¶¶ 1-2, Proctor Dec. Exh. 15.

28

-10-

MATTEL'S MOTION RE: BRYANT

EXHIBIT __1__ PAGE __20__

F.     **Bryant Moves to Overrule the Same Instructions His Own Counsel Had Given**

When Mattel filed its February 2007 motion to overrule instructions not to answer at the Bryant deposition, it did not include certain instructions, including instructions not to disclose Bryant's understanding of subjects or facts learned through communications with counsel, based on an understanding between the parties that such information was protected by the attorney-client privilege.[46] Nevertheless, after Mattel's motion had been filed and ruled upon by the Discovery Master, Bryant moved to overrule comparable instructions given at the deposition of Alan Kaye.[47] The Discovery Master granted Bryant's motion to compel in substantial part and overruled Mattel's instructions not to disclose facts or understandings learned from communications with counsel, holding that such facts and understandings are not privileged.[48] The Court also permitted Bryant to

---

[46]   Proctor Dec. ¶ 21.

[47]   *See* Motion of Carter Bryant to Overrule Instructions Not to Answer During Deposition of Alan Kaye, dated March 28, 2007 ("Kaye Motion"), Proctor Dec. ¶ 22, Exh. 21. During the meet and confer process on that motion, Mattel informed Bryant that if Bryant so abandoned the parties' agreement, Mattel would move to overrule comparable instructions not to answer made at Bryant's deposition, which Mattel had not yet moved on. Proctor Dec. ¶ 23, Exh. 24.

[48]   For example, the Discovery Master overruled the following instructions given at Mr. Kaye's deposition:

Page: 80:3-21

Q: Going back to the first page for a minute. Do you know if anyone on behalf of Mattel ever talked to any of the people on the first page for Carter Bryant?

. . .

Mr. Zeller: You should exclude from your answer any information that you received from counsel.

The Witness: I believe its information received from counsel.

Q: By Mr. Jacoby: Exclusively?

A: Exclusively.

(footnote continued)

EXHIBIT ___1___ PAGE ___21___

1  "resume questioning Mr. Kaye on all areas that Bryant's counsel previously

2  attempted to cover in his prior deposition," and granted Bryant four hours for the

3  continued Kaye deposition.[49]

4       G.    **Mattel's Efforts to Meet and Confer**

5       Mattel attempted to resolve this motion without further burdening the Court,

6  to no avail.  During several meet and confers, Mattel explained that Bryant's

7  deposition should be reopened for the reasons set forth in this motion, including

8  because of the new claims and parties added to the case after Bryant's deposition

9  and the new evidence requested by Mattel before Bryant's deposition but first

10  produced by defendants after the deposition.[50]   At their request, Mattel also provided

11  Bryant's counsel with examples of the newly produced documents that warrant

12  further deposition time.[51]

13       Bryant refused Mattel's requests on the sole stated basis that Mattel is not

14  entitled to a "do over" of its prior motion, which in fact addressed only specific

---

15       Page:  98:5-19

16       Mr. Jacoby:  Can I have it -- can I have it read back please.

17       (Record read as follows:  "Question: Do you have any
     understanding as to whether Mr. Bryant, Quote, Misappropriated

18       intellectual property, close quote?")

19       Mr. Zeller:  Two things.  One is I object to the form of the
     question as lack of foundation.  Second, to the extent that the

20       information that you have is solely as the result of your

21       communications with counsel, you should exclude that from your
     answer.

22       The Witness:  The information is a result of my discussions with

23       counsel.
   Bryant's Separate Statement in Support of the Kaye Motion, Instruction Nos. 15, 17;

24  May 4, 2007 Order Granting in Part Bryant's Motion to Overrule Instructions Not to
   Answer During the Deposition of Alan Kaye ("May 4 Order re: Kaye"), ¶ 1 &

25  Attachment A, Proctor Dec. Exhs. 22, 25.

26   [49]  May 4 Order re: Kaye, at 2:10-12, Proctor Dec. Exh. 25.

27   [50]  Proctor Dec. ¶ 26, Exhs. 29-30.

28   [51]  Proctor Dec. Exh. 30.

MATTEL'S MOTION RE: BRYANT

EXHIBIT ___1___ PAGE __22__

1   instructions not to answer at the Bryant deposition -- <u>not</u> the instructions at issue on

2   this motion or the present request for additional time to question Bryant on new

3   evidence and subsequently asserted claims.[52]  At no point did Bryant even suggest,

4   let alone offer authority, that on the merits Mattel should not be permitted to

5   question him regarding new evidence produced by defendants or the claims filed

6   after Bryant's deposition was taken in 2004.[53]

7                                    **Argument**

8   I.    **THE COURT SHOULD REOPEN BRYANT'S DEPOSITION FOR ALL**

9         **PURPOSES AND GRANT MATTEL ADDITIONAL TIME FOR**

10        **QUESTIONING**

11        A.    **Defendants Have Finally Produced Long Withheld Documents**

12              It is well established that a party can be compelled to testify regarding new

13  evidence that comes to light following his initial deposition.  "[A] second deposition

14  is often permitted, where new information comes to light triggering questions that

15  the discovering party would not have thought to ask at the first deposition." <u>Keck v.</u>

16  <u>Union Bank of Switzerland</u>, 1997 WL 411931, at *1 (S.D.N.Y. 1997) (permitting

17  plaintiff to reopen depositions of two witnesses because "the request to reopen the

18  questioning is based on new information"); <u>see also</u> <u>Ritchie v. U.S.</u>, 2004 WL

19  1161171, at *3 (N.D. Cal. 2004) ("when further evidence linking [witness to the

20  project in dispute] subsequently came to light this court permitted plaintiff to depose

21  [the witness] a second time"); <u>Robins v. Scholastic Book Fairs</u>, 928 F. Supp. 1027,

22  1036 (D. Or. 1996) (finding "that the second set of depositions of these individuals

23  was necessary because they had to be questioned about additional documents that

24  Defendant produced after the first set of depositions"); <u>Dixon v. Certainteed Corp.</u>,

25

26  _____

27  [52]  Proctor Dec. ¶ 27, Exhs. 31-32.
    [53]  Proctor Dec. ¶ 27, Exhs 31-32.
28

07209/2179788.3

-13-

EXHIBIT ___1___ PAGE __23__

1  164 F.R.D. 685, 692 (D. Kan. 1996) (production of document containing statement

2  by witness after first deposition warranted second deposition).

3      Indeed, when Mattel's witnesses, Alan Kaye and Ann Driskill, appeared for

4  depositions this year following their original 2004 depositions, defendants

5  questioned them extensively regarding documents and topics that were not

6  addressed at the prior depositions -- even though the Court's orders only permitted

7  them to question the witnesses on "areas that Bryant's counsel previously attempted

8  to cover" in the prior depositions.[54]  That was proper, according to defendants,

9  because this new evidence had not yet come to light at the time of the prior

10  depositions.[55]  The same is true here.  A wealth of new evidence has come to light

11  since Bryant's initial deposition.  Nearly all of it was requested by Mattel prior to

12  Bryant's deposition but withheld by defendants for tactical reasons, and

13  subsequently compelled by the Discovery Master.  Mattel should be allowed to

14  question Bryant about it.

15          **1.  New Evidence Produced By Bryant**

16      Well after Mattel served document requests on Bryant and subpoenaed MGA,

17  Mattel took Bryant's deposition in November 2004.[56]  As of the date of Mr. Bryant's

18  deposition, Bryant had produced 1588 pages of documents, and MGA had produced

19

20

21

---

22  [54]  See, e.g., Kaye Depo. at 395:7-18, 394:19-398:6, 459:21-466:6, 554:16-
23  565:8, 566:9-569:24; Driskill Depo. at 360:19-362:11, 401:2-403:1, 412:4-413:15,
24  415:18-419:5 (defense counsel examining Kaye and Driskill regarding documents
    that were not addressed in their prior depositions), Proctor Dec. ¶ 25, Exhs. 27-28.
25  [55]  See, e.g., Kaye Depo. at 395:7-18, Proctor Dec. Exh. 27 (Bryant's counsel
    arguing that he was entitled to go beyond the prior deposition into new areas
26  because the documents he was showing "weren't shown to the witness at [his prior]
27  deposition because you [Mattel] hadn't produced them yet").
    [56]  Proctor Dec. ¶ 12.

28

MATTEL'S MOTION RE: BRYANT

EXHIBIT __1__ PAGE 24

1   676 pages of documents.[57] Mattel's questioning of Bryant was necessarily limited by

2   the evidence defendants chose to produce.

3          Since then, Bryant has produced almost 20,000 additional pages, including a

4   number of key documents.[58] For instance, Bryant first produced his fee agreement

5   on June 28, 2007.[59] This agreement reflects that MGA has indeed been paying

6   Bryant's legal fees and provides that MGA "reserve[s] its right to terminate this

7   agreement at any time, for any reason and, if appropriate, seek reimbursement of

8   any fees expended in your defense. . . [U]pon receipt of that termination notice, you

9   agree to personally assume responsibility for fees under this Agreement, on a going

10  forward basis."[60] Thus, the fee agreement shows that Bryant had and continues to

11  have a strong bias to tilt his testimony in favor of MGA, which is paying his legal

12  fees and which can seek reimbursement of those fees from Bryant if it so chooses.

13  Mattel is entitled to question Bryant about his understanding of this and other

14  relevant, withheld documents.

15         Mattel is also entitled to question Bryant about the "Evidence Eliminator"

16  software loaded onto his computer. The "Evidence Eliminator" website advertises

17  that, with use of this software, "the data destroyed is gone forever and it is

18  impossible to create mirror images of defendants' hard drives."[61] Courts have also

19  recognized this, and imposed terminating sanctions based on use of this program.

20  See Communications Center, Inc. v. Hewitt, 2005 WL 3277983, at *2-3 (E.D. Cal.

21  2005) (finding that defendant's use of "Evidence Eliminator" software warranted

22  default judgment for plaintiff: "the data destroyed is "gone forever" and it is

23  impossible to create mirror images of defendants' hard drives as they existed. . . no

24

25  [57] Zeller Dec. ¶ 3.
    [58] Zeller Dec. ¶ 5.
26  [59] Proctor Dec. ¶ 2, Exh. 1.
    [60] Proctor Dec. Exh. 1, at BRYANT2 000011.
27  [61] Zeller Dec. Exh. 15.

28

07209/2179788.3

-15-

EXHIBIT __1__ PAGE __25__

1   sanction short of default is available to return the parties to the position in which

2   they would have been but for the deliberate [use of "Evidence Eliminator" software]

3   by defendant."); Kucala Enterprises, Ltd. v. Auto Wax Co., Inc., 2003 WL

4   22433095, at *3 (N.D. Ill. 2003) (party's possession of "Evidence Eliminator"

5   software and the fact that documents that one would reasonably expect to be found

6   were not produced or discovered supports a finding that documents were

7   purposefully destroyed).

8        In March 2007, Bryant also first produced Bratz drawings dated September

9   19, 1999 -- a date that falls in the middle of Bryant's second term of employment

10  with Mattel.[62]  These documents are important to many of Mattel's claims -- indeed,

11  Mattel claims that it owns drawings that Bryant created during his Mattel

12  employment.  Bryant and MGA have put timing at issue by claiming that Bryant

13  created his drawings and performed other relevant work either during the few

14  months in 1998 when he was not working for Mattel or after he left Mattel in

15  October 2000.[63]  Mattel is entitled to question Bryant regarding these key

16  documents.

17        In May and June 2007, after being compelled to do so, Bryant belatedly made

18  the originals of many of the key original documents in this case available for

19  inspection and photographing.  Despite Bryant's counsel's promise to bring them to

20  the deposition, Bryant made only a few original drawings available at his

21  deposition.[64]  Much of the documentary evidence produced by Bryant consists of

22  undated design drawings, without complete fax headers, date and time stamps and

23  fax cover pages, which Bryant produced to Mattel as black and white photocopies.[65]

24  Inspecting the original documents has opened a number of new lines of questioning

25  _____

    [62]  Proctor Dec. Exh. 7.

26  [63]  See, e.g., Bryant Depo. at 45:7-14, 139:23-141:8, Proctor Dec. Exh. 14.

27  [64]  See supra, at Background (C).

    [65]  Zeller Dec. ¶ 8.

28

-16-

EXHIBIT    1    PAGE    24

1   for Mattel, including based on new information that was not reflected in Bryant's

2   black and white photocopies.  Mattel is entitled to question Bryant regarding the

3   original documents that he promised, but failed, to produce at deposition.

4               2.      **New Evidence Produced By MGA**

5         As of the date of Bryant's deposition, MGA had produced 676 pages of

6   documents.[66]  Since then, after being compelled by the Discovery Master, MGA has

7   produced more than 155,000 additional pages.[67]  These new productions include the

8   following key documents, among many others: (1) a fax from Bryant to David

9   Rosenbaum, outside counsel for MGA, dated September 14, 2000, wherein Bryant

10  stated that he cannot ask Mattel's Human Resources any more questions about his

11  contract with Mattel "without risking suspicion";[68] (2) October 10, 2000 e-mails

12  between Isaac Larian, Victoria O'Connor and Paula Garcia (formerly Treantafelles),

13  reflecting that Bryant worked on Bratz with MGA "on average about 4 hours a day,"

14  starting at least six weeks before he left Mattel;[69] (3) invoices showing that one

15  vendor alone billed MGA for 169 hours of development services on Bratz that were

16  performed before Bryant left Mattel;[70] and (4) a February 24, 2003 declaration

17  signed by Bryant that contains false dates about the timing of Bratz's release and

18  was submitted in support of a patent application in which Larian claimed to be the

19  sole inventor of Bratz features which Bryant had previously claimed Bryant

20  created.[71]  Mattel is entitled to question Bryant about these and other highly relevant

21  documents produced in the past few months.[72]

22  _____

23  [66]   Zeller Dec. ¶ 3.
    [67]   Zeller Dec. ¶ 7.

24  [68]   Proctor Dec. Exh. 2.
    [69]   Proctor Dec. Exh. 3.

25  [70]   Proctor Dec. Exh. 4.

26  [71]   Proctor Dec. Exh. 5.
    [72]   As mentioned above, Mattel also expects MGA to produce many additional

27  documents in coming weeks.  See supra at Background (B).

28

07209/2179788.3

-17-

MATTEL'S MOTION RE: BRYANT

EXHIBIT ____1____   PAGE __21__

### 3.   <u>New Evidence Produced By Third Parties</u>

Finally, third parties have also produced new evidence since Bryant's deposition.  For example, on August 21, 2006, Union Bank produced documents which show that that Bryant was receiving payments from MGA while still employed by Mattel.[73]  In September of 2006, Steve Linker produced documents which, along with his deposition testimony, show that Bryant created a key design drawing that was the basis for three-dimensional sculptures of the Bratz dolls while Bryant was still employed by Mattel.[74]  In February 2005, Anna Rhee testified that she was painting three-dimensional Bratz heads by June 2000 -- a time well before Bryant left Mattel.[75]  Documents relating to Ms. Rhee's work were produced only after Bryant's deposition -- and were first produced by Ms. Rhee.  It was only after Ms. Rhee produced them that MGA belatedly did so.[76]  The list of relevant new evidence literally goes on and on.

Carter Bryant is the most important witness in this case.  Since he was deposed, and since Mattel's motions to compel were granted, a treasure trove of new evidence has come to light.  Mattel is entitled to explore this crucial new evidence at a resumed deposition.  <u>See, e.g.</u>, <u>Keck v. Union Bank of Switzerland</u>, 1997 WL 411931, at *2 (permitting plaintiff to reopen depositions of witnesses because "the request to reopen the questioning is based on new information"); <u>Dixon v. Certainteed Corp.</u>, 164 F.R.D. at 692 (production of document containing statement

---

[73]   <u>See</u> September 29, October 11, and October 13 invoices from ABC International Traders (MGA's predecessor) to Bryant, Proctor Dec. Exh. 6.

[74]   Linker, who worked as an independent consultant/designer for MGA, recently testified that MGA gave that design drawing (as well as other Bratz development documents) to him at a meeting held *before* Bryant left Mattel. Deposition of Steven Linker ("Linker Depo.") at 77:6-78:23, Proctor Dec. Exhs. 8-9.

[75]   Rhee Depo. at 105:2-110:9; 146:25-154:24 & Exh. 201, Proctor Dec. Exh. 10.

[76]   Proctor Dec. ¶ 10, Ehs. 11-12.

1  by witness after first deposition warranted second deposition).  Bryant's deposition

2  should be reopened for all purposes.

3        **B.    New Claims Have Been Filed Since Bryant's First Deposition**

4        - Mattel is also entitled to explore Bryant's knowledge and information

5  regarding the many new claims that have been filed since he was deposed.  In

6  April 2005, MGA filed suit against Mattel alleging claims for false designation of

7  origin, unfair competition, trade dress dilution and unjust enrichment.[77]  Mattel has

8  also filed thirteen counterclaims against Bryant, MGA and others, including

9  copyright infringement and RICO claims against Bryant, MGA and Larian.[78]

10  Bryant is obviously knowledgeable about the counterclaims Mattel has alleged

11  against him, and MGA has listed him as a knowledgeable witness regarding its

12  unfair competition claims against Mattel.[79]

13        It is well established that witnesses may be deposed further on new claims

14  filed after their initial depositions were taken.  See, e.g., Keithley v.

15  Homestore.com, Inc., 2006 WL 1646119, at *1 (N.D. Cal. 2006) (rejecting

16  argument that witness should not have to be deposed again, "in light of the . . .

17  additional claims that have been added since his [] deposition more than two years

18  ago."); Tillery v. Darby-Rogers Co., 2006 WL 2735162, at *5 (M.D. Fla. 2006)

19  ("The Court will allow Defendants to re-depose Plaintiffs regarding the new

20  claims"); Collins v. International Dairy Queen, 189 F.R.D. 496, 498 (M.D. Ga.

21  1999) (granting defendants' request to reopen depositions of several witnesses based

22  on new claims in amended complaint: "Because of the time that has elapsed, the

23

24  [77]  MGA Complaint, ¶¶ 101-125.

25  [78]  See, e.g., Second Amended Answer and Counterclaims at ¶¶ 82-97, 122-128, 136-141, 149-166.

26  [79]  MGA's Responses to Mattel's First Set of Interrogatories Re: Claims of

27  Unfair Competition, dated January 19, 2007, Response No. 1 at 6:9, Proctor Dec. Exh. 17.

28

-19-

EXHIBIT __1__ PAGE __25__

1   addition of new claims, and the evident knowledge of the witnesses in particular

2   areas, re-examination of the two witnesses is likely to provide additional

3   information not obtainable at the first depositions.").

4       Here, likewise, because of the time that has elapsed since Bryant's first

5   deposition, the claims in MGA's Complaint and Mattel's Counterclaims and the

6   evident knowledge of Mr. Bryant in relevant areas, Bryant's re-examination is likely

7   to provide additional information not obtainable at his first deposition.  Even putting

8   MGA's entire Complaint to the side, Mattel needs to question Bryant about the

9   following topics, among others: (1) what copies Bryant has made of the works

10  Mattel claims it owns and Bryant infringed; (2) Bryant's knowledge of any copies

11  other defendants made of the works Mattel claims it owns; and (3) Bryant's role in

12  the alleged RICO enterprise, his knowledge of other participants' roles, and his acts

13  of mail fraud and wire fraud.

14      Moreover, Mattel is entitled to question Bryant regarding his participation in

15  the design and development of the many dozens of Bratz products MGA put at issue

16  by filing its unfair competition complaint.  Mattel had no reason to question Bryant

17  regarding any of these topics at his first deposition.  MGA agrees that he is one of

18  the most knowledgeable people about them.[80]  Mattel is entitled to question him on

19  them now.

20  **II.   THE COURT SHOULD OVERRULE ADDITIONAL INSTRUCTIONS**

21      **NOT TO ANSWER**

22      The Court previously overruled 47 instructions not to answer at the Bryant

23  deposition.  Aside from those, there are an additional 12 instructions which Mattel's

24  prior motion did not address that should be overruled because the questions did not

25  call for the disclosure of privileged communications.

26

27  [80]   Proctor Dec. Exh. 19.

28

07209/2179788.3

-20-

MATTEL'S MOTION RE: BRYANT

EXHIBIT __1__ PAGE __30__

1   The attorney-client privilege protects from discovery only the substance of
2  "confidential communications" between a client and his attorney.  Clarke v.
3  American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992); McKay v.
4  C.I.R., 886 F.2d 1237, 1238 (9th Cir. 1989).  As set forth in the accompanying
5  Separate Statement, Bryant's counsel repeatedly instructed Bryant not to answer
6  questions that did not call for the substance of attorney-client communications.
7  Instead, they merely called for disclosure of facts and information known to Bryant.
8  Many did not require anything more than a simple "yes" or "no" answer.  The
9  following excerpts are illustrative:

10   Q  And in your understanding what was the purpose of
      that agreement?

11
12   MR. WICKHAM:  If your understanding of the purpose of
      the agreement was -- came solely from your attorneys, I
      instruct you not to respond.

13   A  Okay.  My understanding came from my attorneys.

14
15   Q  (By Mr. Quinn)  So is it true that you had no
      understanding of what the purpose of this document was
      except what your lawyers told you?

16   A  Yes.[81]

17

18   Q  And then one little I, I will maintain the confidentiality
19   of the company's trade secrets.  Do you understand that?

20   MR. WICKHAM:  Objection.  To the extent that you have
      an understanding of this language or this document based
21   on advice of counsel, I instruct you not to respond.

22   A  Well, then I'm not going to respond.[82]

23   The Court has already ruled on a motion that Bryant brought that a witness'
24  own understanding of events and information known to a witness are discoverable.[83]
25  That is because the mere fact that a witness reveals facts to a lawyer or learns facts

26  [81] Bryant Depo. at 477:4-13, Proctor Dec. Exh. 14.
27  [82] Bryant Depo. at 639:11-17, Proctor Dec. Exh. 14.
     [83] See supra at Background (F).
28

07209/2179788.3

-21-

MATTEL'S MOTION RE: BRYANT

EXHIBIT ___1___ PAGE __31__

1  from a lawyer does not make the facts themselves privileged.  "[I]t is only the

2  communications that are subject to attorney-client privilege, and not the

3  foundational facts concerning the communication, or the underlying, independent

4  facts." AMCO Ins. Co. v. Madera Quality Nut LLC, 2006 WL 931437, at *18 (E.D.

5  Cal. 2006); see also Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir.

6  1995) ("Because the work product doctrine is intended only to guard against

7  divulging the attorney's strategies and legal impressions, it does not protect facts

8  concerning the creation of work product or facts contained within work product");

9  Garcia v. City of El Centro, 214 F.R.D. 587, 591 (S.D. Cal. 2003) (same); Nutmeg

10  Ins. Co. v. Atwell, Vogel & Sterling A Div. of Equifax Services, Inc., 120 F.R.D.

11  504, 509 (W.D. La. 1988) ("The courts have consistently held that the work-product

12  concept furnishes no shield against discovery, by interrogatories or by deposition, *of*

13  *the facts* that the adverse party's lawyer has learned, or the persons from whom he

14  has learned such facts, or the existence or non-existence of documents, even though

15  the documents themselves may not be subject to discovery.") (citing 8 Wright &

16  Miller, Fed. Practice and Procedure § 2023 (1970) (emphasis in the original)).

17       Questions about Bryant's understanding of agreements he signed do not call

18  for the substance of any attorney-client communications and are not protected by the

19  work-product doctrine. Such facts are not privileged. This is the law of the case as

20  a result of motions Bryant brought against Mattel.[84] Bryant bears the burden of

21

---

22  [84]  Bryant's counsel argued in his motions regarding the Kaye and Driskill

23  depositions that "Mattels' counsel repeatedly relied upon improper privilege instructions to shield the underlying *facts* from discovery, even where no attorney-

24  client communications were involved. . . the mere fact that a witness reveals facts to a lawyer or learns facts from a lawyer do not make such facts privileged." See,

25  e.g., Kaye Motion at 17:10-16 (emphasis in the original); Memorandum of Points

26  and Authorities in Support of Motion of Carter Bryant to Overrule Instructions Not to Answer During the Deposition of Ann Driskill, dated March 28, 2007, at 15-16,

27  Proctor Dec. Exhs. 21, 23. The Discovery Master agreed with Bryant's arguments,

28       (footnote continued)

                                              MATTEL'S MOTION RE: BRYANT

EXHIBIT __1__  PAGE __32__

1   supporting his privilege assertions. U.S. v. Munoz, 233 F.3d 1117, 1128 (9th Cir.

2   2000). Because he cannot do so, the improper instructions set forth in the

3   concurrently filed Separate Statement should be overruled.

4        Moreover, Mattel submits that defense counsel's conduct at the Bryant

5   deposition independently requires that it be reopened. The Court has already found

6   that defense counsel attempted to coach Bryant at his deposition and interposed 47

7   improper instructions not to answer.[85] When viewed as a whole, counsel's conduct

8   obstructed a fair and complete examination of the witness. Therefore, as the Court

9   also previously ruled in connection with the Kaye and Driskill depositions, Mattel

10  should be allowed to further question Bryant on all topics it attempted to address at

11  the prior deposition, and not just those topics which were the subject of specific

12  improper instructions not to answer.[86] See, e.g., Burrows v. Redbud Community

13  Hosp. Dist., 187 F.R.D. 606, 613 (N.D. Cal. 1998) ("allow[ing] plaintiffs to

14  complete the deposition because defendants' counsel impermissibly coached [the

15  witness]"); Stempler v. Collect America, Ltd., 2000 WL 288377, at *1 (E.D. La.

16  2000) (granting plaintiff additional time for deposition due to defense counsel's

17  inappropriate objections).

### Conclusion

19       For the foregoing reasons, Mattel respectfully requests that the Court:

20  (1) overrule each of the instructions set forth in table format in the Proposed Order

21  lodged concurrently herewith, and (2) order that Bryant's deposition be reopened for

22  all purposes to permit Mattel to question Bryant regarding the new evidence that has

23  _____

overruling Mattel's counsel's instructions not to disclose information learned from
24  counsel. See May 4, 2007 Kaye Order; May 4, 2007 Driskill Order, Proctor Dec.
Exhs. 25-26.
25  [85]   Examples of this coaching and other improper conduct are included in the
26  accompanying Proctor Declaration. Proctor Dec. ¶¶ 12-14, Exh. 14.
27  [86]   May 4, 2007 Kaye Order ¶ 3; May 4, 2007 Driskill Order ¶ 3, Proctor Dec. ¶
24, Exhs. 25-26.
28

-23-

MATTEL'S MOTION RE: BRYANT

EXHIBIT __\__ PAGE **33**

1 | come to light since his deposition was taken and claims filed since that date, and

2 | because defendants' counsel's coaching, interruptions and other improper conduct at

3 | the original Bryant deposition obstructed a fair examination of the witness.

4 | Moreover, in light of the significance of Bryant's testimony and the volume of new

5 | documents and evidence and new claims Mattel needs to question Bryant about,

6 | Mattel respectfully requests that it be granted 21 hours at the resumed deposition.

7 |

8 | DATED:  August 1, 2007                    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

9 |

10 |                                          By

11 |                                            B. Dylan Proctor
                                               Attorneys for Plaintiff Mattel, Inc.

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

# EXHIBIT 2

CONFORMED COPY

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
6   Facsimile:  (213) 443-3100

7   Attorneys for Plaintiff Mattel, Inc.

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                        EASTERN DIVISION

| | |
|---|---|
| 11   CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 12            Plaintiff, | Consolidated with |
| 13      vs. | Case No. CV 04-09059 Case No. CV 05-02727 |
| 14   MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| 15            Defendant. | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]** |
| 16 | |
| 17   AND CONSOLIDATED CASES | SEPARATE STATEMENT IN SUPPORT OF MOTION OF PLAINTIFF MATTEL, INC. FOR ADDITIONAL TIME AND/OR TO REOPEN THE DEPOSITION OF CARTER BRYANT FOR ALL PURPOSES AND TO OVERRULE ADDITIONAL INSTRUCTIONS NOT TO ANSWER AT THE DEPOSITION |
| 18 | |
| 19   **CONFIDENTIAL** | |
| 20   **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** | |
| 21 | Date:   TBA |
| 22 | Time:   TBA Place:  Telephonic |
| 23 | |
| 24 | **Phase 1** Discovery Cut-Off:   January 14, 2008 |
| 25 | Pre-Trial Conference: April 7, 2008 Trial Date:          April 29, 2008 |
| 26 | **Phase 2** |
| 27 | Discovery Cut-Off:   March 3, 2008 Pre-Trial Conference: June 2, 2008 Trial Date:          July 1, 2008 |
| 28 | |

2007 AUG -2  PM 3: 23
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

07209/2181130.1

SEPARATE STATEMENT ISO MOTION RE: BRYANT

EXHIBIT  2  PAGE  35

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Plaintiff Mattel, Inc.

CONFORMED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>                Plaintiff,<br><br>        vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                Defendant.<br><br>AND CONSOLIDATED CASES<br><br>**CONFIDENTIAL**<br><br>**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]**<br><br>SEPARATE STATEMENT IN SUPPORT OF MOTION OF PLAINTIFF MATTEL, INC. FOR ADDITIONAL TIME AND/OR TO REOPEN THE DEPOSITION OF CARTER BRYANT FOR ALL PURPOSES  AND TO OVERRULE ADDITIONAL INSTRUCTIONS NOT TO ANSWER AT THE DEPOSITION<br><br>Date:   TBA<br>Time:   TBA<br>Place:  Telephonic<br><br>**Phase 1**<br>Discovery Cut-Off:     January 14, 2008<br>Pre-Trial Conference: April 7, 2008<br>Trial Date:                April 29, 2008<br><br>**Phase 2**<br>Discovery Cut-Off:     March 3, 2008<br>Pre-Trial Conference: June 2, 2008<br>Trial Date:                July 1, 2008 |

07209/2181130.1

SEPARATE STATEMENT ISO MOTION RE: BRYANT

EXHIBIT __2__ PAGE __36__

1      Mattel, Inc. respectfully submits this Separate Statement in Support of its

2  Motion for Additional Time and/or to Reopen the Deposition of Carter Bryant for

3  All Purposes and to Overrule Additional Instructions Not to Answer at the

4  Deposition.  This Separate Statement lists each instruction in the sequence in which

5  they appear in the [Proposed] Order lodged concurrently.

6

7  **I.     IMPROPER INSTRUCTIONS BASED ON ATTORNEY-CLIENT**

8         **PRIVILEGE FOR QUESTIONS SEEKING NON-PRIVILEGED**

9         **INFORMATION**

10

11     1.     **PAGE:      92:20-93:18**

12  Q  At any time prior to the last date of your employment at

13     Mattel did Mr. Larian ever tell you that anything ought to

14     be kept confidential or not shared with other people?

15         MR. WICKHAM:  I'll object to the extent that

16     it seeks information that is the subject of

17     attorney-client privilege, attorney work product.  To the

18     extent that Mr. Larian is imparting to you information

19     that relates to legal advice that he obtained, you

20     obtained, or you and he jointly had, you should not share

21     that information with counsel.  Other than legal advice,

22     you can and should respond.

23  A  Can you please restate the question?

24  Q  (By Mr. Quinn)  Sure.  At any time prior to the time you

25     signed your October 4 agreement did Mr. Larian ever

26     indicate to you in any fashion that anything should be

27     kept confidential relating to your communications with MGA

28     or this Bratz project?

07209/2181130.1

-2-
SEPARATE STATEMENT ISO MOTION RE: BRYANT

EXHIBIT __2__ PAGE __37__

1      MR. WICKHAM:  Same objections and same

2   instructions.

3   A  I don't recall him saying anything like that.

4

5      2.    **PAGE:    246:19-247:15**

6   Q  Do you know whether anybody has looked at that computer to

7      see if there's any information on it relating to Bratz?

8      MR. WICKHAM:  Objection, attorney-client

9   privilege, attorney work product.  To the extent you have

10  any understanding from your attorneys, I instruct you not

11  to respond.

12  A  Okay.

13  Q  (By Mr. Quinn)  Put you in a pickle, huh?  Do you have

14     anything you can tell me?

15  A  About the computer?

16  Q  Yeah, and as to whether anybody's looked at it.

17     MR. WICKHAM:  Same objection, same

18  instruction.

19     THE WITNESS:  Can you repeat your objection,

20  Doug?  I'm sorry.

21     MR. WICKHAM:  If -- if you only have

22  information on that subject from your attorneys, then you

23  should not respond to the question.

24  A  Okay.  Then I'm not going to respond.

25  Q  (By Mr. Quinn)  And that's because of your lawyer's

26  instruction?

27  A  Yes.

28

-3-

SEPARATE STATEMENT ISO MOTION RE: BRYANT

EXHIBIT  2  PAGE  38

3.      **PAGE:      463:4-464:19**

1
2          Q   Then it goes on to say, and any other material, whether
3      written or oral, collectively, the Bryant work product.
4      Did you understand that that was defining the term that
5      would be defined as the Bryant work product?
6              MR. WICKHAM:  Objection, calls for a legal
7      conclusion, calls for speculation, lacks foundation,
8      potentially infringes on the attorney-client privilege.
9      If you had an understanding concerning this paragraph or
10     the individual words of this paragraph and you've gained
11     that understanding solely from having obtained legal
12     advice, then I'll instruct you not to respond.  If you
13     understand what the word "all" means or what the word
14     "results" mean or what the word "and" means and if you can
15     get a dictionary and go through and define each of those
16     terms individually, then, you know, we can go and do that.
17     If you only have an understanding of the import of this
18     language in here through advice of your legal counsel, I
19     would instruct you not to respond.
20     A   That's how I came to an understanding of this paragraph
21     was through legal counsel.
22
23
24     4.      **PAGE:      467:21-468:7**
25          Q   (By Mr. Quinn)  Did you have an understanding as to what
26     you were agreeing to do pursuant to this paragraph?
27              MR. WICKHAM:  Objection, potentially
28     infringes on the attorney-client privilege.  To the extent

Y7209/2181130.1

-4-

SEPARATE STATEMENT ISO MOTION RE: BRYANT

EXHIBIT  2  PAGE  39

1   you had an understanding of your legal obligations under

2   this agreement from your counsel, either your present

3   counsel or your counsel at the time, Ms. Wang, I instruct

4   you not to respond.  If you had an understanding that you

5   did not obtain from Ms. Wang or your other lawyers, then

6   you can respond.

7   A   I think my understanding came from my discussions with my

8       attorney.

9

10      5.    **PAGE:    474:4-475:14**

11  Q   (By Mr. Quinn)  I mean, this was just produced to us this

12      week.  Do you have any knowledge as to why this was

13      produced to us just this week?

14          MR. WICKHAM:  Objection, attorney-client

15      privilege, attorney work product.  To the extent you have

16      any information on that subject from your counsel, you

17      should not respond to the question.  If you have --

18  MR. QUINN:  Mr. Wickham --

19          MR. WICKHAM:  -- information on that subject

20      other than from --

21          MR. QUINN:  Mr. Wickham --

22          MR. WICKHAM:  -- having sought legal

23      counsel, you can and should respond.

24  . . .

25  Q   (By Mr. Quinn)  Do you have any information as to why this

26      was just produced to us this week?

27          MR. WICKHAM:  Objection, attorney-client

28      privilege, attorney work product, instruct the witness not

07209/2181130.1

-5-

SEPARATE STATEMENT ISO MOTION RE: BRYANT

EXHIBIT  2  PAGE  40

1   to respond concerning any information you've obtained from

2   counsel. If you have information obtained from any other

3   source other than your lawyers, you can respond.

4        MR. QUINN:  You kept a straight face that

5   time.

6   A   I have no idea.

7

8        6.    **PAGE:    477:4-477:13**

9   Q   And in your understanding what was the purpose of that

10   agreement?

11        MR. WICKHAM:  If your understanding of the

12   purpose of the agreement was -- came solely from your

13   attorneys, I instruct you not to respond.

14   A   Okay.  My understanding came from my attorneys.

15   Q   (By Mr. Quinn)  So is it true that you had no

16   understanding of what the purpose of this document was

17   except what your lawyers told you?

18   A   Yes.

19

20        7.    **PAGE:    478:1-478:21**

21   Q   And do you have any understanding at all as to what the

22   purpose of the new agreement was?

23        MS. CENDALI:  Asked and answered.

24        MR. WICKHAM:  Attorney-client privilege.

25   Instruct the witness not to respond.  The witness has

26   already said that his sole understanding of the -- this

27   agreement came from counsel.

28        MR. QUINN:  You know, actually, it's kind of

07209/2181130.1

-6-

SEPARATE STATEMENT ISO MOTION RE: BRYANT

EXHIBIT  **2**  PAGE  **41**

1  a fine point but a contracting party can't shield

2  examination about his understanding of his contract by

3  saying I only know what the lawyer told me because

4  otherwise there's no way to examine a contracting party

5  about his understanding and intent.

6        .   MR. WICKHAM:  If you were suing to enforce

7  this contract I might be willing to engage in a dialogue

8  with you on that at some other time, but to the extent

9  that you're asking questions that seek to invade his

10  attorney-client privilege with respect to a contract

11  between he and MGA Entertainment, Inc., I will

12  respectfully disagree.  In any event, there's no need to.

13  I instruct the witness not to respond.

14

15       8.   **PAGE:**    **592:3-592:16**

16  Q  If you look at the next subparagraph B it says, as used in

17     this agreement, the term "inventions" includes but is not

18     limited to all discoveries, improvements, processes,

19     developments, designs, know-how, data, computer programs,

20     and formulae, whether patentable or unpatentable.  Do you

21     see that?

22  A  Yes.

23  Q  Do you have an understanding of that sentence?

24        MR. WICKHAM:  Objection, attorney-client

25     privilege.  To the extent that your understanding is based

26     on advice that you obtained from counsel, then I instruct

27     you not to respond.  Furthermore, the question's

28     ambiguous, vague, overbroad.

07209/2181130.1

-7-

1   A   I don't understand that even now.

2

3       9.   **PAGE:      639:11-639:17**

4   Q   And then one little I, I will maintain the confidentiality

5     of the company's trade secrets.  Do you understand that?

6           MR. WICKHAM:  Objection.  To the extent that

7     you have an understanding of this language or this

8     document based on advice of counsel, I instruct you not to

9     respond.

10  A   Well, then I'm not going to respond.

11

12      10.   **PAGE:      639:23-640:11**

13  Q   (By Mr. Quinn)  Okay.  Second item, it says I will use

14    those trade secrets for the exclusive benefit of the

15    company.

16          MR. WICKHAM:  Objection.  Go ahead.

17          MR. QUINN:  Thank you.

18  Q   (By Mr. Quinn)  Do you understand that sentence?

19          MR. WICKHAM:  Objection, attorney-client

20    privilege.  To the extent that your understanding is based

21    upon advice of counsel, I instruct you not to respond.

22          MS. CENDALI:  And I also object as to form

23    and the ability to parse phrases and words in an overall

24    legal document.

25  Q   (By Mr. Quinn)  Your turn.

26  A   I'm not going to respond to that.

27

28

-8-

SEPARATE STATEMENT ISO MOTION RE: BRYANT

EXHIBIT __2__ PAGE __43__

1       11.   **PAGE:**    **642:6-642:17**

2  Q  (By Mr. Quinn)  Do you have any understanding of that

3      sentence after the little Roman three other than based on

4      what your attorneys told you?

5           MS. CENDALI:  Same objections.

6  A  Same answer.

7  Q  (By Mr. Quinn)  You can't say "same answer" to that.  You

8      can say I don't have any understanding of that phrase

9      except what my lawyers -- based on what my lawyers have

10     told me or you can say, well, I have some understanding of

11     it.

12  A  I don't have any understanding other than what my lawyers

13     have told me.

14

15      12.   **PAGE:**    **649:13-650:1**

16  Q  Quote, I also agree to notify my superior immediately of

17     any changes in my situation that would cause me to answer

18     any of the above questions differently, closed quote.  Do

19     you see that, sir?

20  A  Yes.

21  Q  Did you understand that at the time you signed this --

22  A  No.

23  Q  -- that -- that sentence?

24  A  No.

25  Q  Do you understand it now?

26          MR. WICKHAM:  Objection, attorney-client

27     privilege.  To the extent your understanding now is based

28     on advice of counsel, I instruct you not to respond.

1 A I don't understand it now either.

2

3

4 DATED: August 1, 2007   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

5

6          By_____

7           B. Dylan Proctor
           Attorneys for Plaintiff Mattel, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 3

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2 | johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3 | (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4 | (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5 | (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6 | Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7 | Facsimile: (213) 443-3100

8 | Attorneys for Plaintiff and Cross-
   Defendant Mattel, Inc.

9

10 |                 UNITED STATES DISTRICT COURT

11 |                 CENTRAL DISTRICT OF CALIFORNIA

12 |                      EASTERN DIVISION

13 | CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

14 |            Plaintiff,                   Consolidated with
15 |                                         Case No. CV 04-09059
      vs.                                   Case No. CV 05-02727
16 |
      MATTEL, INC., a Delaware              **DISCOVERY MATTER**
17 | corporation,
                                            **[To Be Heard By Discovery Master**
18 |          Defendant.                     **Hon. Edward Infante (Ret.) Pursuant**
                                            **to the Court's Order of December 6,**
19 | _____           **2006]**
      AND CONSOLIDATED CASES
20 |                                         DECLARATION OF MICHAEL T.
                                            ZELLER IN SUPPORT OF MOTION
21 |                                         OF PLAINTIFF MATTEL, INC. TO
                                            OVERRULE INSTRUCTIONS NOT
22 |                                         TO ANSWER DURING THE
                                            DEPOSITION OF CARTER BRYANT,
23 |                                         TO COMPEL BRYANT TO ANSWER
                                            THOSE QUESTIONS, AND FOR
24 |                                         SANCTIONS

25 |                                         Date:  TBA
                                            Time:  TBA
26 |                                         Place: TBA

27 |                                         Discovery Cut-Off: None Set
                                            Pre-Trial Conference: None Set
28 |                                         Trial Date:  None Set

                                                                2 - 1

EXHIBIT    PAGE   ZELLER DECL. ISO MOTION RE. DEPOSITION OF CARTER BRYANT

EXHIBIT  3  PAGE  46

## DECLARATION OF MICHAEL T. ZELLER

I, Michael T. Zeller, declare as follows:

1.     I am a member of the bar of the State of California, New York and Illinois and a partner of Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.     On June 17, 2004, Mattel served its first Notice of Deposition for Bryant, a true and correct copy of which is attached as Exhibit 1.

3.     On June 18, 2004, immediately after Mattel noticed Bryant's deposition, Bryant filed an ex parte application that sought a complete stay of discovery by Mattel, including Bryant's deposition. The Court denied the entirety of Bryant's application, including his stay requests. Attached as Exhibit 2 is a true and correct copy of the Court's Order dated June 22, 2004.

4.     On July 11, 2004, due to Bryant's failure to meet and confer within the time mandated by the Local Rules, Mattel sent Bryant its portions of a Joint Stipulation on Mattel's motion to compel Bryant's deposition. Attached as Exhibit 3 is a true and correct copy of my letter to Douglas Wickham dated July 11, 2004, attaching Mattel's portions of a Joint Stipulation for Mattel's motion to compel Bryant's deposition.

5.     On July 12, 2004, in its continuing efforts to resolve Bryant's failure to appear for deposition, Mattel sent a letter again offering to continue to meet and confer regarding Bryant's refusal to be deposed to avoid burdening the Court. A true and correct copy of this letter is attached as Exhibit 4.

6.     Bryant agreed to meet. At the meeting on July 13, 2004, Bryant's counsel, Keith Jacoby and Douglas Wickham, stated that a motion to compel the deposition was "unnecessary" because Bryant's counsel were giving their "word as attorneys" that Bryant would appear for deposition in St. Louis during the week of August 16, 2004. This representation was confirmed in writing by Bryant's

-2-
ZELLER DECL. ISO MOTION RE DEPOSITION OF CARTER BRYANT

EXHIBIT 1   PAGE 4

EXHIBIT **3** PAGE **47**

1 counsel the following day.  Attached as Exhibit 5 is a true and correct copy of a

2 letter I received from Keith Jacoby dated July 14, 2004.  Mr. Jacoby's letter

3 acknowledged the parties' "agreement" that Bryant would appear for deposition on

4 August 17, 2004 and reiterated that "Mr. Wickham and I have given our

5 representations as counsel" that Bryant would appear, absent "an unforeseen

6 medical emergency or other exigent circumstances."  Mr. Jacoby further stated: "In

7 my entire career, I have never had a witness I was representing spontaneously refuse

8 to appear, nor has Mr. Wickham.  I do not believe this will occur here, and ask that

9 you accept the good faith representation of Mr. Wickham and I, rather than waste

10 the Court's time and resources with a preemptive discovery motion."  Bryant's

11 counsel also stated at the July 13 meeting that requiring a signed Stipulation to

12 ensure Bryant's appearance at the agreed-upon time and place was "unnecessary"

13 and "insulting" because their "word as attorneys" was "good enough" to ensure that

14 Bryant would appear for deposition as agreed.

15        7.     Rather than burden the Court with a motion, Mattel relied on the

16 word of Bryant's counsel and made arrangements to take Bryant's deposition.

17 Attached as Exhibit 6 is a true and correct copy of my letter to Keith Jacoby dated

18 July 14, 2004, which further confirmed Bryant's counsel's representations as

19 attorneys that Bryant would appear for deposition at the agreed-upon time and place.

20 Mattel's July 14 confirming letter, which Bryant never disputed, stated:

21        While Mattel did not agree with the delay of Mr. Bryant's previously noticed

22        deposition until August for reasons that I have already stated and does not

23        believe that the statements in your letter of earlier today accurately reflect

24        Mattel's position in all respects, we will accept your representations as an

25        attorney that Mr. Bryant will appear for deposition at the agreed-upon

26        location and time.  Thus, as I mentioned over the phone today, based upon

27        those representations, we will not be going forward at this juncture with a

28

-3-

ZELLER DECL. ISO MOTION RE DEPOSITION OF CARTER BRYANT



~~EXHIBIT 1   PAGE 6~~

EXHIBIT 3 PAGE 48

1   motion to compel his deposition, without prejudice of course to our rights to
2   seek Court relief if circumstances change.
3   (Emphasis added.)  Mattel's counsel then purchased plane tickets, arranged for
4   video and a court reporter at the deposition, obtained space in St. Louis for the
5   deposition, made hotel arrangements, and rearranged other client matters in order to
6   be free to travel to St. Louis for the deposition.
7           8.     On the afternoon of Friday, August 13, Bryant faxed to plaintiff,
8   without notice and without any discussion with Mattel beforehand, a letter
9   unconditionally canceling Bryant's scheduled deposition.  Along with the letter from
10  Mr. Millman, Bryant sent to plaintiff a 58-page Joint Stipulation with regard to
11  Mattel's document discovery that Mr. Millman's August 13 letter cited as a
12  purported justification for refusing to produce Bryant for deposition.
13          9.     On August 26, 2004, Mattel re-noticed Bryant's deposition for
14  Springfield, Missouri, where Bryant resides, for September 9, 2004, a date on which
15  Bryant had said that he was available.  Attached as Exhibit 7 is a true and correct
16  copy of Plaintiff's Notice of Videotaped Deposition of Carter Bryant.
17          10.    Bryant yet again refused to appear for deposition.  On September
18  1, 2004, in response to Bryant's counsel's oral statements that Bryant was refusing
19  to appear, my colleague, Gloria Donovan, met and conferred with Bryant's counsel
20  in yet another effort to avoid motion practice regarding Bryant's deposition.
21  Attached as Exhibit 8 is Ms. Donovan's letter of September 3, 2004 on the subject
22  of Bryant's deposition.  Attached as Exhibit 9 is a true and correct copy of a letter
23  from Bryant's counsel, Dominic Messiha, dated September 7, 2004, in which Mr.
24  Messiha confirmed that "Mr. Bryant will not be appearing for deposition in Missouri
25  on September 9."
26          11.    Mattel then filed a motion with the Los Angeles County Superior
27  Court (where the case was then pending) to compel Bryant's deposition.  On
28  September 3, 2004, Bryant also moved in the Superior Court for a protective order.

-4-

ZELLER DECL. ISO MOTION RE DEPOSITION OF CARTER BRYANT

EXHIBIT 𝟣 PAGE 𝟨

EXHIBIT 3 PAGE 49

1  Attached as Exhibit 10 is a true and correct copy of excerpts from Bryant's Motion

2  for a Protective Order and to Establish the Sequence and Timing of Discovery.

3        12.    As shown in Exh. 11, the Superior Court granted Mattel's motion

4  to compel Bryant's deposition on October 5, 2004 and ordered Bryant to appear for

5  deposition twenty days after Mattel furnished a verification as to the "certain

6  documents" that Bryant claimed he needed before his deposition. As the Court's

7  ruling stated: "[I]t appears that Defendant wants Plaintiff to produce certain

8  documents before the deposition, which will assist Defendant in preparation of his

9  deposition . . . . Plaintiff is ordered to produce these documents or state in verified

10  responses that none exists, and after a diligent search and reasonable inquiry, there

11  are no such documents in Plaintiff's possession, custody, or control." Twenty days

12  after that was done, the Court ruled, "Defendant is ordered to be deposed".

13  (Emphasis added.)

14        13.    Even after Mattel provided the verification (twice), however,

15  Bryant announced on October 14, 2004 that he still refused to be deposed as ordered

16  by the Superior Court. Accordingly, on October 19, 2004, Mattel filed a second

17  motion (by <u>ex parte</u>) to compel Bryant's deposition. The Superior Court rejected

18  Bryant's grounds for refusing to abide by the October 5 Order and compelled

19  Bryant, for the second time, to appear for deposition. As shown in the Court's order

20  with respect to the <u>ex parte</u> in Exh. 11, the Superior Court specifically ordered

21  Bryant's deposition to commence on November 4, 2004.

22        14.    Attached as Exh. 12 are true and correct copies of excerpts from

23  the deposition transcript of Carter Bryant, taken on November 4, 5 and 8, 2004. At

24  the deposition, Bryant's counsel asserted more than ninety instructions not to

25  answer. MGA's counsel asserted more than four hundred objections over the

26  deposition's course.

27        15.    After the deposition, the parties met and conferred on February,

28  18, 2005, in an effort to resolve the issues in this motion, but to no avail.

7209/2048728.2

-5-

ZELLER DECL. ISO MOTION RE DEPOSITION OF CARTER BRYANT



EXHIBIT **3** PAGE **50**

1    16.    Attached as Exh. 13 is a true and correct copy of the Court's

2 Order Granting Mattel's Motion to Compel Production of Documents by Carter

3 Bryant, filed on January 26, 2007.

4    17.    Attached as Exh. 14 are true and correct DVD copies of excerpts

5 from the video of the deposition of Carter Bryant.

6    18.    Mattel has incurred attorneys' fees and costs in excess of $5,875

7 in bringing this motion.  I spent more than 3 hours of time preparing the motion, for

8 a total of more than $1,800.00 at my billing rate of $600 per hour.  Juan Pablo

9 Albán, a Quinn Emanuel associate, also was involved in preparing this motion.  Mr.

10 Albán spent more than 10 hours of his time researching and preparing this motion,

11 for a total of more than $3,700 at his billing rate of $370.00 per hour.

12

13    I declare under penalty of perjury under the laws of the United States of

14 America that the foregoing is true and correct.

15    Executed on February 1, 2007, at Los Angeles, California.

16

17                        Michael T. Zeller

18

19

20

21

22

23

24

25

26

27

28

Received:   8/23/04  2:08PM;   -> Quinn, emanuel;   Page 2
RightFAX                  6   /2004 1:56   PAGE 002/002   1x Server

_____ Priority
_____ Send
_____ Clsd.
_____ Enter
_____ JS-5/JS-6
_____ JS-2/JS-3

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

#### CIVIL MINUTES-GENERAL

CASE NO.  CV 04-03431-NM(RNBx)                    DATE: 6/22/04

TITLE: Mattel, Inc. -v- Carter Bryant

PRESENT:          HON. NORA M. MANELLA, JUDGE

Judith Hurley                N/A
Deputy Clerk                 Court Reporter

ATTORNEY FOR PLAINTIFF        ATTORNEY FOR DEFENDANT
N/A                          N/A

PROCEEDINGS:  IN CHAMBERS

    On June 18, 2004, Defendant Carter Bryant filed an Ex Parte Application for
an Order Postponing Rule 26 Obligations, Staying Discovery Pending Resolution of
Plaintiff's Motion for Remand, and Advancing the Hearing Date on Plaintiff's
Motion for Remand to July 19, 2004. Motions before the court are scheduled for the
first available hearing date. Accordingly, Defendant's request to advance the hearing
date is denied. Having removed this action, Defendant cannot now complain about
having to comply with the federal rules. Defendant's ex parte application is
DENIED.

> DOCKETED ON CM
>
> JUN 2 3 2004
>
> BY _____ 013
>
> Initials of Deputy Clerk

cc: Counsel
CIVIL MINUTES 11


EXHIBIT ___ PAGE 9

EXHIBIT **3**  PAGE **52**

EXHIBIT 1 PAGE 10

EXHIBIT 3 PAGE 53

**quinn emanuel** trial lawyers | los angeles
865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-624-7707 FAX 213-624-0643

July 11, 2004

BY FACSIMILE

Douglas Wickham, Esq.
Littler Mendelson
2049 Century Park East, 5th Floor
Los Angeles, California 90067

Mattel v. Bryant

Dear Mr. Wickham:

Because defendant declined to meet and confer within the time mandated by Local Rule 37-1, I am enclosing Mattel's draft portions of a Joint Stipulation for Mattel's motion to compel the defendant's deposition. Pursuant to the Local Rules, defendant's portions are due no later than Friday, July 16, 2004.

Please let me know if you have any questions or concerns.

Very truly yours,

Michael T. Zeller

quinn emanuel urquhart oliver & hedges, llp

new york | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | tel 212-849-7000 fax 212-849-7100
san francisco | 50 California Street, 22nd Floor, San Francisco, California 94111 | tel 415-875-6600 fax 415-875-6700
silicon valley | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | tel 650-801-5000 fax 650-801-5100
san diego | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | tel 858-812-3107 fax 858-812-3336
los angeles | 865 S. Figueroa St., 10th Floor, Los Angeles, California 90017 | tel 213-443-3000 fax 213-443-3100



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff
Mattel, Inc.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>CARTER BRYANT, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. CV 04-3431 NM (RNBx)<br><br>DISCOVERY MATTER<br><br>JOINT STIPULATION RE: MATTEL, INC.'S MOTION TO COMPEL DEPOSITION OF DEFENDANT CARTER BRYANT<br><br>[Declarations of Michael T. Zeller and _____ filed concurrently herewith]<br><br>Date:   August 10, 2004<br>Time:   9:30 a.m.<br><br>Magistrate Judge Robert N. Block<br><br>Discovery cut-off:  None set |

Pursuant to Local Rule 37-2, plaintiff Mattel, Inc. ("Mattel") and defendant Carter Bryant hereby respectfully submit this Joint Stipulation regarding Mattel's Motion to Compel the Deposition of Defendant Carter Bryant.

07209/593681.1

EXHIBIT 1 PAGE 14

EXHIBIT 3 PAGE 55

### Mattel's Introductory Statement

Defendant Carter Bryant is a former Mattel employee. He worked as a designer at Mattel's design center in El Segundo, California from September 1995 to April 1998, and then again from January 1999 to October 2000.[1] On January 4, 1999, upon starting his second term of Mattel employment, defendant executed an Employee Confidential Information and Inventions Agreement (the "Employee Agreement").[2] In the Employee Agreement, Bryant agreed that he would not, without Mattel's express written consent, "engage in any employment or business other than for [Mattel], or invest in or assist (in any manner) any business competitive with the business or future business plans of [Mattel]." In addition, Bryant assigned to Mattel all right, title and interest in "inventions," including without limitation "designs," that he conceived, created or reduced to practice during his employment by Mattel.

In November 2003, Mattel obtained a copy of a contract between defendant and a Mattel competitor, MGA Entertainment Inc.[3] That contract, which defendant and MGA entered into while defendant was employed by Mattel, required defendant to provide design services to MGA on a "top priority" basis,[4] in conflict with his then-existing obligations to Mattel. It also purported to grant MGA ownership of works produced by defendant, both before and after the agreement's effective date, in further contravention of his obligations to Mattel.[5] Through this agreement, Mattel thus first learned that defendant--while being employed and paid by Mattel for his

---

[1]   Declaration of Michael T. Zeller, dated July __, 2004 and filed concurrently herewith ("Zeller Dec."), Exh. I, at ¶ 9.

[2]   Exhibit A to Mattel's Complaint (Zeller Dec., Exh. 1).

[3]   Zeller Dec., Exh. 2. MGA is a substantial toy company, enjoying revenues in excess of $700 million annually, that is based in Southern California.  See id., Exh. __.

[4]   Id., Exh. 2, ¶ 1.

[5]   Id., Exh. 2, at ¶ 3(a) ("[a]ll results and proceeds of the services provided by Bryant hereunder . . . shall be considered 'work made for hire' and shall be owned exclusively" by competitor) & ¶ 3(b) ("Bryant hereby irrevocably grants, conveys, transfers, sets over and assigns" to competitor works produced by Bryant "prior to the commencement of the term of this Agreement").

07209/593681.1

-2-

E

EXHIBIT 1 PAGE 5

EXHIBIT 3 PAGE 56

1  exclusive services as a designer--secretly also worked as a designer for a Mattel

2  competitor.  As a result, in April 2004, Mattel sued for breach of contract, breach of

3  fiduciary duty, breach of the duty of loyalty, unjust enrichment and conversion.

4       Mattel noticed defendant's deposition for June 29, 2004.[6]  Almost immediately

5  after the notice was served, defendant declined to appear for deposition and sought

6  an ex parte Order from Judge Manella to stay all discovery by Mattel.  Judge Manella

7  rejected defendant's request.[7]  Defendant began in earnest with a litany of moving-

8  target excuses as to why he could not be deposed for an indeterminate period of time

9  and thereby sought to arrogate to himself the very discovery stay that Judge Manella

10  denied.[8]  For example, defendant asserted, without authority, that he is immune from

11  deposition until Mattel "provide[s] full and complete responses to Mr. Bryant's recent

12  discovery"--even though Mattel's responses were not even due yet.  As Rule 26(d)

13  expressly provides, "the fact that a party is conducting discovery, whether by

14  deposition or otherwise, does not operate to delay any other party's discovery."

15  Moreover, it is defendant and third parties associated with him (such as MGA) who

16  are uniquely in possession of facts concerning defendant's secret work for MGA

17  while he was employed by Mattel.  Indeed, defendant's discovery requests to Mattel--

18  which he urged must be answered before he can be deposed--purport to demand that

19  Mattel disclose facts that are known by defendant and his third-party associates, and

20  not by Mattel.  Defendant further claimed that he was not available at all, for a host

21  of scheduling reasons, for deposition until August 16, 2004 at the earliest.

22       To cut through the obstacles that defendant raised, and in the hopes of

23  avoiding burdening the Court with a motion, Mattel made a simple proposal.  Mattel

24  agreed to take defendant's deposition in St. Louis, Missouri (the location defendant

25  stated he preferred) on August 16, 2004 (the date when defendant stated he was first

26     [6] Id., Exh. 4.

27     [7] Id., Exh. 3.

28     [8] The facts surrounding this discovery dispute are discussed in greater detail below and are evidenced in the Zeller Dec., ¶¶ __ and Exhs. __ through

.07209/593681.1             -3-

EXHIBIT __ PAGE __

EXHIBIT 3   PAGE 51