1   that MGA was developing Bratz by early 2000.  Nevertheless, MGA objects to producing

2   documents from the Larians' arbitration on the grounds that the arbitration was governed by a

3   protective order that prohibits the use of any documents or testimony for any purpose other than

4   the arbitration.  MGA, however, has not provided any evidence of the protective order.

5   Accordingly, Mattel's motion to compel is granted as to request nos. 37, 38, 39, 40 and 41.[4]

6         6. Documents Regarding Date-Testing (Request No. 92)

7       Mattel's request no. 92 seeks documents that refer or relate to "any testing of or sampling

8   from any documents that refer or relate to Bratz or Bryant, including without limitation any such

9   testing or sampling in connection with ink, paper or chemical analysis to date any such documents

10   and including without limitation all results and reports relating thereto."  MGA contends that the

11   request is premature, and should proceed in the course of expert discovery.

12       The request calls for relevant discovery and there is no basis for delaying production of

13   responsive documents, other than expert reports.  The timing of expert reports is governed by

14   Rule 26(a)(2)(C), Fed.R.Civ.P.  Accordingly, Mattel's motion is granted as to request no. 92.

15       C. Interrogatories

16       Mattel contends that MGA's responses to interrogatories were untimely, and therefore

17   MGA has waived its objections to the interrogatories.  Pursuant to Rule 33(b)(3), Fed.R.Civ.P.,

18   responses to interrogatories are due thirty days after service.  In this case, Mattel served its

19   interrogatories on April 28, 2005, and responses were initially due May 31, 2005.  The district

20   court, however, issued a stay on May 20, 2005, twenty-two days after the interrogatories were

21   served.  The district court lifted the stay on May 17, 2006.

22

23

24

25

26      [4] In its discussion of the arbitration proceedings, MGA raises an objection to producing Isaac Larian's personnel file based upon privacy grounds.  The personnel file may have documents relevant to Bratz, and therefore should be produced.  The protective order is sufficient to alleviate Mr. Isaac Larian's privacy concerns.

27

28

EXHIBIT 5 PAGE 73

1    Neither party has cited to any caselaw governing the calculation of the 30-day period

2    when there is an intervening stay in discovery.  In the absence of any caselaw, MGA's responses

3    will be treated as timely in order to preserve any valid objections MGA may have asserted.

4    Interrogatory No. 5 seeks the identity of each and every person who was involved in the

5    conception, origin, creation, design, development, sculpting, engineering, reduction to practice,

6    tooling or painting of, or who otherwise produced or contributed to any embodiment of Bratz

7    before December 31, 2001, including a description of each person's role and the start and end

8    dates of each person's involvement.  In response, MGA asserted numerous objections, but did

9    provide the names of five individuals.

10    The interrogatory clearly seeks information relevant to the claims at issue.  MGA's

11    objections are without merit.  The interrogatory is not vague, ambiguous, compound or overbroad.

12    Nor has MGA carried its burden of establishing that the interrogatory is unduly burdensome, calls

13    for confidential, proprietary or commercially sensitive information, or seeks information

14    protected by the attorney-client privilege.  Furthermore, MGA's response is incomplete insofar as

15    it fails to provide the description of each person's role and the start and end dates of each person's

16    involvement.  Accordingly, MGA is ordered to provide a complete response to Interrogatory No.

17    5 and identify documents in compliance with Rule 33(d), Fed.R.Civ.P.

18    Interrogatory No. 6 seeks the same information as Interrogatory No. 5 with respect to any

19    embodiment of Angel.  MGA is ordered to provide a complete response to Interrogatory No. 6 for

20    the reasons previously discussed in connection with Interrogatory No. 5.

21    Interrogatory No. 7 asks MGA to identify each and every embodiment of Bratz prior to

22    December 31, 2001.  In response, MGA asserted numerous objections and did not provide any

23    substantive information.

24    MGA's objections are without merit.  The interrogatory clearly seeks information relevant

25    to establishing when Bryant first conceived Bratz.  The interrogatory is not vague, ambiguous,

26    compound or overbroad.  Nor has MGA carried its burden of establishing that the interrogatory is

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

12

EXHIBIT 5 PAGE 74

1   unduly burdensome, calls for confidential, proprietary or commercially sensitive information, or

2   seeks information protected by the attorney-client privilege.  Accordingly, MG is ordered to

3   provide a complete response to Interrogatory No. 7.

4       Interrogatory No.8 asks MGA to identify each and every embodiment of Angel.  MGA is

5   ordered to provide a complete response to Interrogatory No. 8 for the reasons previously

6   discussed in connection with Interrogatory No. 7.

7       Interrogatory No. 9 requires MGA to identify each and every sworn statement that refers

8   or relates to the conception, origin, creation, design, development, sculpting, engineering, tooling

9   or painting of Bratz.  In response, MGA asserted numerous objections and did not provide any

10  substantive information.

11      The interrogatory seeks information relevant to establishing when Bryant first conceived

12  Bratz.  Furthermore, MGA's boiler-plate objections are unsubstantiated.  Accordingly, MGA is

13  ordered to provide a complete response to Interrogatory No. 9.

14      Interrogatory No. 10 requires MGA to identify each and every instance in which Bratz

15  was shown, displayed, or exhibited prior to June 1, 2001, including by stating the date(s) on

16  which each such instance occurred, the location of each show or exhibit, and the identity of

17  persons with knowledge of the shows or exhibits.  In response, MGA asserted numerous

18  objections and provided the following information:  Hong Kong Toy Fair in Hong Kong in or

19  about January 2001 and New York Toy Fair, New York, in or about February 2001.

20      Once again, MGA's boiler-plate objections are unsubstantiated.  The information is

21  potentially relevant to establish when Bryant conceived Bratz.  Further, the response is

22  incomplete insofar as it fails to identify any persons with knowledge.  Therefore, MGA is ordered

23  to provide a complete response to Interrogatory No. 10.

24      Interrogatory No. 11 requires MGA to state the "number for each and every telephone,

25  including without limitation each office, home and cell phone number, in the name of, for the

26  benefit of or for the account of Isaac Larian and any other telephone that Isaac Larian used from

27

28

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

13

EXHIBIT 5 PAGE 75

1   January 1, 1998 through the present, and IDENTIFY each and every carrier (including without

2   limitation any long-distance carrier) for each such number.  In response, MGA asserted numerous

3   boiler-plate objections.

4        Once again, MGA has failed to substantiate any of its objections with supporting

5   declarations or legal authorities.  Accordingly, all objections are overruled and MGA is ordered to

6   provide a full response to Interrogatory No. 11.

7                         IV. CONCLUSION

8        For the reasons set forth above, Mattel's motion to compel production of documents is

9   granted.  MGA shall produce all non-privileged documents that are responsive to the requests

10   identified in this Order.  Further, MGA shall produce all documents in un-redacted form, except

11   for redactions that are justified by the attorney-client privilege or work product doctrine.  Mattel's

12   motion to compel interrogatory answers is also granted.  MGA shall produce documents and

13   provide responses to interrogatories consistent with this Order, and produce a privilege log in

14   compliance with Rule 26(b)(5), Fed.R.Civ.P., no later than May 31, 2007.  Mattel's request for

15   sanctions is denied.

16        Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

17   Master, Mattel shall file this Order with the Clerk of Court forthwith.

18

19

20

21   Dated: May /5, 2007

22                             HON. EDWARD A. INFANTE (Ret.)

23                               Discovery Master

24

25

26

27

28

EXHIBIT 5 PAGE 76

## PROOF OF SERVICE BY E-MAIL

I, Anthony Sales, not a party to the within action, hereby declare that on May 15, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES BY MGA in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Rastegar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| Brady Mitchell, Esq. | Littler Mendelson | bmitchell@littler.com |
| Carol Miller, Esq. | Littler Mendelson | cmiller@littler.com |
| Ryan P. Eskin, Esq. | Littler Mendelson | reskin@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendall@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on May 15, 2007, at San Francisco, California.

Anthony Sales

EXHIBIT S PAGE 77

**Exhibit 6**

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(D).

**PRIORITY SEND**
& ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
<u>CIVIL MINUTES – GENERAL</u>

Case No.     CV 04-09049 SGL(RNBx)                          Date:  July 2, 2007

Title:      CARTER BRYANT -v- MATTEL, INC.
                AND CONSOLIDATED ACTIONS
==============================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

            Jim Holmes                              Theresa Lanza
            Courtroom Deputy Clerk                  Court Reporter

ATTORNEYS PRESENT FOR CARTER           ATTORNEYS PRESENT FOR MATTEL:
BRYANT:

John W. Keker                           John B. Quinn
                                        Brett Dylan Proctor
                                        Michael T. Zeller

ATTORNEYS PRESENT FOR MGA:

Dale M. Cendali

Patricia Glaser

PROCEEDINGS:   MINUTE ORDER

ENTERED
CLERK, U.S. DISTRICT COURT

JUL - 5 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

DOCKETED ON CM

JUL - 5 2007

BY _____ 164

        As set forth more fully herein, the Court hereby makes the following ruling regarding matters
heard on July 2, 2007:

(1)     The Court **GRANTS** Mattel's Motion re Trial Structure (docket #462);

(2)     The Court **GRANTS IN PART AND DENIES IN PART** MGA's Motion re Discovery Master's
        May 15, 2007, Order (docket #505);

(3)     The Court **GRANTS IN PART AND DENIES IN PART** MGA's Ex Parte Application

MINUTES FORM 90                                              Initials of Deputy Clerk ____
CIVIL – GEN                          1                       Time: 01/15

EXHIBIT 6 PAGE 78 608

07/c2/c7

regarding date of production of documents (docket #545); and

(4)   The Court **DENIES** MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508).

(5)   The Court **DENIES** the parties' oral request for modification of pretrial and trial dates.

(1)   Motion re Trial Structure (docket #462)

Previous orders of the Court specified that the claims and counterclaims brought in this action will be tried in two phases. The parties have agreed, in large part, to a refinement of the Court's mandate that all issues regarding the ownership of Bratz shall be tried in Phase 1. Where the parties differ is upon a proposal by Mattel that the Phase 1 be bifurcated into two sub-phases, with Mattel's copyright infringement claim (its first counterclaim in the 05-02727 case) and all Phase 1 damages being tried after all the other issues. Phase 1(a) would be limited to issues surrounding Carter Bryant's employment with Mattel, and how those issues impact the ownership of certain original Bratz drawings, while Phase 1(b) would address approximately two-hundred Bratz products that are potentially derivative of the original drawings. This approach has the appeal of limiting Phase 1(a) to discrete issue of the ownership of the original Bratz drawings. A finding that Bryant owns these original drawings in Phase 1(a) has the potential to eliminate the need for Phase 1(b).

Accordingly, **THE COURT ADOPTS MATTEL'S MODIFICATION OF DEFENDANTS' PROPOSAL**, as set forth at 8-9 of its Memorandum Regarding Trial Structure, filed June 20, 2007. Phase 1(a) and Phase 1(b) (if necessary) will be tried to the same jury.

(2)   MGA's Motion re Discovery Master's May 15, 2007, Order (docket #505); and
(3)   MGA's Ex Parte Application regarding date of production of documents (docket #545).

The Discovery Master's May 15, 2007, Order compels production of documents regarding ink, paper, and chemical analysis and documents relating to unreleased MGA products. The order required that documents be produced no later than the end of May.

The Court reviews the Discovery Master's orders under the "clearly erroneous" or "contrary to law" standard set forth in Fed. R. Civ. P. 72(a).

The Discovery Master's order compels the production of only non-privileged documents. Therefore, MGA's arguments that the Discovery Master's order requires production of documents in violation of the attorney-client privilege are misplaced. If the only responsive documents are privileged, then MGA need not produce them, but must produce a privilege log.

MGA acknowledges that it has raised an argument before the Court that was not raised

MINUTES FORM 90
CIVIL – GEN

2

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT _4_ PAGE _79_

before the Discovery Master, namely, that Mattel has failed to establish that there are "exceptional circumstances" that allow Mattel to "discover facts known or opinions held by an expert . . . who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B). MGA contends that the Discovery Master's order is contrary to law based on this standard, and that it was incumbent upon Mattel to raise it below. The Court disagrees. Mattel would be required to establish that exceptional circumstances existed if MGA objected to production on that grounds. A party seeking production cannot be expected to rebut all arguments that could possibly be raised by a party resisting production. MGA has not convinced the Court that the Discovery Master's failure to require Mattel to rebut an argument that was not raised by MGA is contrary to law.

MGA contends that the Discovery Master's order compelling production of documents regarding unreleased products is contrary to law. Relevant to that determination is a balancing test required to be applied by the Ninth Circuit when trade secrets are requested by a competitor in discovery. See Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992) ("Specifically, in this case we must balance the risk to [defendant] of inadvertent disclosure of trade secrets to competitors against the risk to [plaintiff] that protection of [defendant's] trade secrets [will] impair[] prosecution of [plaintiff's] claims.").

Here, the documents sought are of a particularly sensitive nature. They represent some of the most secretive documents maintained by MGA, and they are being ordered to be produced to MGA's fierce competitor. The Discovery Master recognized the sensitive nature of the documents and entered a strict protective order that severely limits access to those documents and that goes well beyond the normal "attorney eyes only" designation.

MGA argues that unreleased products are irrelevant to the issue of who owns the original Bratz drawings. That is clear. However, MGA's argument attempts to limit the discovery to issues involved in Phase 1 of the trial. There has been no bifurcation of discovery.

Mattel correctly points out that these documents are relevant to a number of its other claims. Specifically, if they show unreleased products that are similar to Mattel's unreleased products, the documents would be highly probative of Mattel's misappropriation of trade secrets claim. Moreover, these documents could be relevant to Mattel's RICO claims based on alleged acts of criminal copyright infringement.

Balancing tests are inherently subjective and particularly susceptible to varying interpretation by individual judicial officers. This Court, upon considering this issue from the outset, may very well have weighed the evidence differently and reached a contrary result. However, this Court is bound by the standard of review, and MGA's motion falls far short of convincing the Court that the Discovery Master's order is contrary to law.

The parties have a long history regarding the production of documents ordered in the May 15, 2007, Order, which is set forth in their papers and which need not be repeated here. Counsel for MGA represented that the remaining documents could be produced no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which could be produced no

MINUTES FORM 90
CIVIL -- GEN

3

Initials of Deputy Clerk __jh_____
Time: 01/15

EXHIBIT 6 PAGE 80

later than two weeks after that date. Accordingly, the Court **ORDERS** that MGA complete the document production set forth in the Discovery Master's May 15, 2007, order no later than July 31, 2007, with the exception of the documents from MGA Hong Kong, which shall be produced no later than August 14, 2007.

Accordingly, the Court **GRANTS** in part MGA's motion re the Discovery Master's May 15, 2007, Order, extending the document production date as set forth above. The Motion is **DENIED** in all other respects.

Likewise, the Court **GRANTS** in part MGA's ex parte application re date of production of documents, extending the document production date as set forth above. The application is **DENIED** in all other respects.

(4)   MGA's Motion re Discovery Master's May 16, 2007, Order (docket #508)

The Discovery Master's May 16, 2007, Order compelled the Rule 30(b)(6) depositions of witnesses on the topics of MGA's net worth, prior sworn statements, and ink, paper, and chemical analysis performed by MGA.

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. . . . The persons so designated shall testify as to matters *known or reasonably available* to the organization.

Fed. R. Civ. P. 30(b)(6) (emphasis added). "The purpose behind Rule 30(b)(6) is to create testimony that will bind the corporation." Sanders v. Circle K Corp., 137 F.R.D. 292, 294 (D. Ariz. 1991) (internal citation omitted). Another purpose of Rule 30(b)(6) is aptly described by the District Court for the District of Columbia:

> [The purpose of Rule 30(b)(6) is to] prevent[] serial depositions of various witnesses without knowledge within an organization and eliminating 'bandying', which is the name given to the practice in which people are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to the organization itself.

Alexander v. F.B.I., 186 F.R.D. 148, 152 (D.D.C. 1999) (citing the 1970 Advisory Committee Notes to Rule 30(b)(6)).

The Discovery Master's order compelling Rule 30(b)(6) depositions in the specified

categories serve both these purposes and is not contrary to law.

Although MGA's net worth may not be known to it, MGA does not contend that the information is not readily available. That net worth is generally the subject of expert testimony at trial -- a proposition disputed by neither Mattel nor the Court -- does not render it an improper subject for a Rule 30(b)(6). Therefore, the Discovery Master's ruling on this issue is not contrary to law.

MGA likewise does not contend that information regarding prior sworn statements are not readily available to it. Although contending that this is not an appropriate subject for a Rule 30(b)(6) deposition, MGA fails to cite authority in support of that contention. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

The ink, paper, and chemical analysis topic is likewise a proper subject of a Rule 30(b)(6) deposition. To the extent that such a deposition has the potential to encroach upon information protected by the work-product privilege, then that objection must be made on a question-by-question basis. MGA may not make a blanket objection and justify its refusal to produce a Rule 30(b)(6) designee on this topic based on that blanket objection. Therefore, the Discovery Master's ruling on this issue is not contrary to law.

Accordingly, the Court **DENIES** MGA's motion re the Discovery Master's May 16, 2007, Order.

(5)     Oral Request for Modification of pretrial and trial dates.

Although no motion or ex parte application on the subject was pending before the Court, the parties made an oral request at the hearing to continue certain pretrial and trial dates. A discussion ensued and it became apparent that no final agreement was reached by the parties regarding extending these dates. Accordingly, the Court **DENIES** the parties' oral request for modification of pretrial and trial dates. The Court will consider counsels' stipulation regarding extensions of those dates only where all counsel unqualifiedly stipulate to those dates. Until the scheduling order is modified by the Court, the dates previously set by the Court remain in effect. In addition, the Court is unlikely to entertain a continuance of the Phase 1 trial past April, 2008.

IT IS SO ORDERED.

**Exhibit 7**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

October 27, 2004

<u>VIA FACSIMILE AND U.S. MAIL</u>

Keith A. Jacoby, Esq.
Littler Mendelson, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107

Re:     *Mattel, Inc. v. Carter Bryant*

Dear Mr. Jacoby:

This will confirm some aspects of the discussion that we had on October 25, 2004 regarding Carter Bryant's October 14, 2004 Objections and Responses to Mattel, Inc.'s First Set of Requests for Production of Documents and Tangible Things.

First, and most significantly, during our discussion, you indicated that you had in your possession non-privileged documents that were responsive to Mattel's requests that had not yet been produced, including telephone records. You stated that these documents would be produced no later than Monday, November 1, 2004. We request that those records be provided to us by Friday, October 29, 2004 to allow Mattel sufficient time to review those documents to prepare for Mr. Bryant's November 4 deposition.

Second, you agreed to allow counsel for Mattel to inspect the documents that Mr. Bryant created during the hiatus between his two periods of employment with Mattel. You further suggested that you would, at the same time, provide for inspection the tangible items responsive to Mattel's requests. So that Mattel can inspect the materials sufficiently in advance of Mr. Bryant's deposition, Mattel requests that this inspection occur on October 29, 2004.

The other issues that we discussed last Monday will be addressed under separate cover. I look forward to your prompt response. If you have any questions regarding the foregoing, please do not hesitate to call.

Very truly yours,

Kirkland W. Garey

07/09/615460.1

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200

SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94104 | TEL 415-875-6600 FAX 415-875-6700

SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

PALM SPRINGS | 45-025 Manitou Drive, Suite 10, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414

SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

EXHIBIT 7 PAGE 83

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**PALM SPRINGS**
45-025 Manitou Drive, Suite 8
Indian Wells, CA 92210
(760) 345-4757
Facsimile: (760) 345-2414

**LOS ANGELES**
865 So. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**NEW YORK**
335 Madison Avenue, 17th Floor
New York, NY 10017-4611
(212) 702-8100
Facsimile: (212) 702-8200

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

# FACSIMILE TRANSMISSION

**DATE:**   October 27, 2004

**NUMBER OF PAGES, INCLUDING COVER: 2**

**TO/COMPANY:**

| NAME | PHONE NO. | FAX NO. |
|---|---|---|
| Keith A. Jacoby, Esq. *Littler Mendelson, P.C.* | 310.553.0308 | 310.553.5583 |

**FROM:**   Kirkland W. Garey, Esq.

**RE:**   *Mattel, Inc. v. Carter Bryant*

**MESSAGE:**

Please see attached letter. Thank you.



| CLIENT #:  7209 | ROUTE/ RETURN TO:  **Aida Kaliniyan – 5th Floor** | ☒ CONFIRM FAX ☒ INCLUDE CONF. REPORT |
|---|---|---|
| OPERATOR: | CONFIRMED?  ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed.  If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited.  If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service.  Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3863 AS SOON AS POSSIBLE.**

EXHIBIT 7 PAGE 84

```
HP·LaserJet 3100                                              SEND CONFIRMATION REPORT for
Printer/Fax/Copier/Scanner                                   Quinn Emanuel
                                                             12134433081
                                                             Oct-27-04   1:34PM
```

| Job | Start Time | Usage | Phone Number or ID | Type | Pages | Mode | Status |
|-----|-----------|-------|--------------------|------|-------|------|--------|
| 324 | 10/27  1:34PM | 0'45" | 3105535583 | Send............. | 2/ 2 | EC144 | Completed.......................... |

Total     0'45"     Pages Sent: 2     Pages Printed: 0

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

LOS ANGELES OFFICE

FACSIMILE TRANSMISSION

DATE:   October 27, 2004

NUMBER OF PAGES, INCLUDING COVER: 2

TO/COMPANY:

| NAME | PHONE NO. | FAX NO. |
|------|-----------|---------|
| Keith A. Jacoby, Esq. Littler Mendelson, P.C. | 310.553.0306 | 310.553.5583 |

FROM:   Kirkland W. Garey, Esq.

RE:   Mattel, Inc. v. Carter Bryant

MESSAGE:

Please see attached letter. Thank you.

| CLIENT #: 7209 | ROUTE/ RETURN TO: Aida Kallaiyan - 5th Floor | ■ CONFIRM FAX ■ INCLUDE CONF. REPORT |
| OPERATOR: | COMMENT? ☐ NO ☐ YES: | |

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3043 AS SOON AS POSSIBLE.

EXHIBIT 1 PAGE 85

**Exhibit 8**

**From:**       "Jacoby, Keith" <KJacoby@littler.com>
**To:**         "'Jon Corey'" <joncorey@quinnemanuel.com>, "'John Quinn'"
<johnquinn@quinnemanuel.com>
**Date:**       11/3/04 4:51PM
**Subject:**    Mattel v. Bryant

I received your request this morning for Mr. Bryant to make available the
originals of the Bratz drawings produced in this case for use in his
deposition.  It would have been easier if this request were made earlier,
before my partner Douglas Wickham went to Missouri.  Nevertheless, we will
have these originals sent to Missouri. We have to retrieve them from the
bank safety deposit box they are maintained in, so they will likely be
available in Missouri on Friday.

Keith A. Jacoby, Esq.
Littler Mendelson, P.C.
2049 Century Park East
Fifth Floor
Los Angeles, California 90067
ph. (310) 553-0308
direct (310) 772-7284
fax (310) 553-5583
kjacoby@littler.com

----
This email may contain confidential and privileged material for the sole use of the intended recipient(s).
Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended
recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all
copies of this message.

To reply to our email administrator directly, send an email to
postmaster@littler.com

Littler Mendelson, P.C.
http://www.littler.com

EXHIBIT  PAGE

**Exhibit 9**

# COPY

FILED

2007 FEB 14  PM 3: 39

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY_____

1   Hon. Edward A. Infante (Ret.)
    JAMS
2   Two Embarcadero Center
    Suite 1500
3   San Francisco, California 94111
    Telephone:    (415) 774-2611
4   Facsimile:    (415) 982-5287

5

6

7               UNITED STATES DISTRICT COURT

8               CENTRAL DISTRICT OF CALIFORNIA

9                      EASTERN DIVISION

10

11   CARTER BRYANT, an individual,        CASE NO. C 04-09049 SGL (RNBx)
                                          JAMS Reference No. 1100049530
12              Plaintiff,

13        v.                              Consolidated with
                                          Case No. CV 04-09059
14   MATTEL, INC., a Delaware corporation,   Case No. CV 05-2727

15              Defendant.                **ORDER GRANTING MATTEL'S
                                          MOTION TO ENFORCE
16   _____  STIPULATION TO MAKE ORIGINAL
                                          DOCUMENTS AVAILABLE**
17   CONSOLIDATED WITH
18   MATTEL, INC. v. BRYANT and
     MGA ENTERTAINMENT, INC. v. MATTEL,
19   INC.

20

21

22

23

24

25                       I. INTRODUCTION

26       On January 22, 2007, Mattel, Inc. ("Mattel") submitted its "Motion to Enforce Stipulation

27   And Compel Bryant to Make Original Documents Available And For Sanctions. Mattel seeks an

28   order compelling Bryant to make the originals of his documents and three-dimensional objects

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                          1

EXHIBIT 9 PAGE 87   2-14

available for inspection and photographing by Mattel and for sanctions in the amount of $2,200.[1] On January 29, 2007, Carter Bryant ("Bryant") submitted his opposition brief, and on February 5, 2007, Mattel submitted a reply brief. The matter was heard via telephonic conference on February 13, 2007. Having considered the motion papers and comments of counsel at the hearing, Mattel's motion to compel is granted.

## II. BACKGROUND

In this suit Mattel asserts claims for breach of an Employee Confidential Information and Inventions Agreement, breach of fiduciary duty, breach of the duty of loyalty, unjust enrichment, and conversion against its former employee Bryant. At the heart of the lawsuit is a dispute over the rights to the "Bratz" dolls, a highly lucrative line of dolls conceived by Bryant and made commercially available by MGA Entertainment, Inc. ("MGA"). One of Mattel's main theories in the case is that Bryant worked on the "Bratz" dolls while he was employed by Mattel, and therefore the "Bratz" doll designs are rightfully Mattel's property pursuant to the terms of the Employee Confidential Information and Inventions Agreement. Bryant contends that he created most of his Bratz drawings either during the few months in 1998 when he was not working for Mattel, or else after the time he left Mattel.

Bryant made an initial production of documents on August 12, 2004, and subsequent productions of documents on October 14, 2004, and November 1, 2004. The production to date consists of approximately 1,588 pages of documents.

In October of 2004 Mattel requested inspection of Bryant's original documents, including (1) all non-privileged responsive documents in Bryant's possession or control; (2) documents Bryant agreed to produce as a result of meet and confer sessions; and (3) all tangible items that Mattel requested. At the inspection held on November 1, 2004, Bryant produced some tangible items, but none of the originals of the drawings or other documents that Bryant had produced. A few days later, Bryant made some original drawings available at his deposition.

---

[1] This amount represents a portion of the attorneys' fees incurred for the three attorneys who collectively spent five hours preparing the motion.

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)

2

EXHIBIT 9  PAGE 88

On December 22 and 23, 2004, Bryant made additional original documents available for inspection. At each of the inspections, Mattel brought at least one attorney, a videographer, and a still photographer. Bryant's attorneys and paralegals observed each of the inspections. The photographs taken on December 22 and 23 were provided to Bryant. Apparently Mattel's photographer provided the photographs to Bryant without Mattel's knowledge. See Mattel's Reply Brief at 3:12-16.

When no other original documents were forthcoming, on February 18, 2005, Mattel filed a motion to compel Bryant to produce his originals for inspection and photographing. Before the motion was heard, however, the case was stayed for approximately a year while Mattel appealed a jurisdictional issue.

After the appeal was resolved, the parties met and conferred on June 20, 2006, at the direction of the magistrate judge assigned to the case. At that time the parties placed on the record a stipulation that Bryant (as well as other parties) would make the originals of documents requested by another party available on 15 days' notice.

The next day, Mattel requested inspection of the originals of the 450-plus pages of documents it had not yet been provided. On July 12, 2006, Bryant produced some, but not all of the originals requested. Among the originals not produced was a spiral notebook containing Bratz drawings. The parties disputed whether Mattel was entitled to inspect the entire notebook or only those pages containing Bratz drawings. Bryant ultimately agreed to make the notebook available. The parties also disputed, however, whether Mattel was required to provide Bryant with copies of the photographs taken of Bryant's originals. Mattel refused to provide copies of its photographs to Bryant, asserting that at least some of the photographs were protected from disclosure by the work product doctrine.

The parties met and conferred and Mattel proposed that each party "share their photographs, subject to an agreement that it would not be deemed a waiver of work product protections and that a party could withhold particular photographs if they revealed a party's litigation strategy, such as photographs that focus on particular portions of documents or tangible

EXHIBIT 9 PAGE 89

1  items." Mattel's Motion at 4:4-8.  Apparently Bryant never responded to the proposal and the

2  instant motion ensued.

3      By Mattel's account, there are at least 35 originals that Bryant has yet to produce for

4  inspection.  Mattel contends that it is entitled to inspect these originals pursuant to Rule 34,

5  Fed.R.Civ.P., and because Bryant has already agreed Mattel may do so.  Mattel contends that

6  original documents are potentially relevant to establish Mattel's rights to any of Bryant's

7  drawings or other works that were created during his Mattel employment.  Mattel contends that

8  originals are necessary in order to search for impressions, watermarks, alterations or other clues

9  that might disclose the date of creation for each original.  Mattel contemplates having experts

10  examine original documents to determine, if possible, the date of their creation.  Furthermore,

11  Mattel contends that it is entitled to inspect and photograph originals to determine whether any

12  documents have been altered and how.

13      Mattel objects to providing its photographs of originals to Bryant.  Mattel contends that

14  the parties' stipulation did not condition the right to inspect originals on handing over

15  photographs taken of the originals.  Furthermore, Mattel contends that Bryant has no legal basis

16  for insisting that Mattel hand over its photographs, and in a footnote, Mattel lays out its argument

17  that photographs taken at the direction of counsel during litigation can be protected from

18  disclosure by the work product doctrine.  Mattel's Motion at 17, footnote 69.  Relying on Rule

19  26(b)(3), Fed.R.Civ.P., and Gonnuscio v. Seabrand Shipping Ltd., 1997 WL 118436 (D. Or.

20  1997), Mattel reasons that photos taken at the direction of counsel may disclose mental

21  impressions and/or strategies "such as, for example, by focusing on particular aspects of a

22  particular doll or drawings." Id.

23      Bryant opposes the motion, asserting that he has gone to great lengths to make hundreds

24  of original documents and three-dimensional objects available for inspection.  From Bryant's

25  perspective, there is only one issue in dispute: whether he is entitled to copies of photographs

26  that Mattel took of his original documents and three-dimensional objects.  Bryant contends that

27  the work product doctrine is inapplicable, arguing that Gonnuscio, supra, is clearly

28  distinguishable from the present case. More specifically, Bryant argues that Gonnuscio involved

EXHIBIT 9 PAGE 90

1   photographs of an accident scene taken to defend against a personal injury suit, whereas the

2   present suit involves photographs of original drawings, sketches, and doll parts and accessories

3   relating to claims for breach of contract and the like.  Further, Bryant argues that Mattel's

4   photographs were taken by a professional photographer, not the attorney himself, and that a

5   Bryant attorney was present at all times to hear and could observe the instructions given to the

6   photographer by Mattel's counsel.  Citing C&F Packing Co., Inc. v. IBP, Inc., 1994 U.S. Dist.

7   LEXUS 1210 (N.D. Ill. Feb. 7, 1994), Bryant contends that the presence of his attorney, who

8   was privy to Mattel's counsel's instructions to the photographer, destroys any notion of work

9   product.

10          Bryant contends that Mattel's proposal for resolving the issue is unacceptable because it

11   "would give Mattel carte blanche to withhold documents it could later spring on witnesses at

12   deposition and at trial."  Bryant's Opposition at 1:22-23.  Bryant is particularly concerned about

13   Mattel's photographer taking pictures in a way that might deceive the jury.  Bryant suggests, for

14   example, that a photograph taken from a particular angle might distort the appearance of

15   Bryant's drawing or figure.  Bryant is also concerned about pictures being cropped so that, for

16   example, a Bratz doll head is superimposed on a Barbie doll head.  Bryant believes he is entitled

17   to copies of Mattel's photos at the time they are taken to prevent the possibility of any such

18   misuses or distortions.  Accordingly, Bryant asks that the Court deny Mattel's motion and

19   instead require that Mattel turn over copies of any photographs it takes or has taken during

20   inspections of original Bryant documents and three-dimensional objects as a condition to

21   producing the originals.

22          In its Reply brief, Mattel contends Bryant is raising a "red herring" by arguing about his

23   purported right to copies of photographs.  Mattel contends that the only issue that should be

24   considered at this point is whether Mattel has a right to inspect originals, and that Bryant has

25   acknowledged that Mattel does.  Mattel contends that it is premature to consider the work

26   product doctrine issue until the following steps are taken:  (1) Bryant produces all of its originals

27   for inspection; (2) Mattel takes its photographs; (3) Bryant requests copies of the photographs

28   and follows the requisite meet and confer process; and (4) Bryant files a motion to compel.

EXHIBIT 1 PAGE 91

### III. DISCUSSION

Pursuant to Rule 26(b)(1) and 34, Fed.R.Civ.P., Mattel is clearly entitled to inspect
Bryant's original documents and three-dimensional objects, and Bryant has acknowledged as
much by producing many originals for inspection.  There is no question that originals,
particularly the sketches of Bryant's Bratz designs, are discoverable.  Bryant's attempt to
condition production on a promise by Mattel to share photographs taken of his originals is
improper.  Bryant has failed to cite to any legal authority that excuses a party from producing for
inspection discoverable documents and things unless and until the receiving party agrees to
produce copies of photographs taken of the originals.  Rule 34 of the Federal Rules of Civil
Procedure contains no such condition.

Whether Mattel's photographs are protected by the work product doctrine is not ripe for
determination.  The issue will not be ripe unless and until several events have occurred.  Bryant
must produce the remainder of his original documents and things for inspection.  Mattel must
then be permitted to take its photographs.  Next Bryant must request production of Mattel's
photographs and Mattel must substantiate its claims of work product on a log pursuant to Rule
26(b)(5), Fed.R.Civ.P.  The parties must exhaust the meet and confer process and Bryant must
bring a motion to compel.

### IV. CONCLUSION

For the reasons set forth above, Mattel's motion to compel Bryant to make original
documents available is GRANTED.  No later than February 28, 2007, Bryant shall produce the
originals of all documents and three-dimensional designs that have been requested by Mattel.
Mattel's request for sanctions is DENIED.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery
Master, Mattel shall file this Order with the Clerk of Court forthwith.

IT IS SO ORDERED.

Dated: February 14, 2007                    /s/Edward A. Infante
                                            HON. EDWARD A. INFANTE (Ret.)
                                            Discovery Master

Bryant v. Mattel, Inc.,
CV-04-09049 SGL (RNBx)                                                              6

EXHIBIT 9 PAGE 92

## PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on February 5, 2007, I served the attached ORDER GRANTING MATTEL'S MOTION TO ENFORCE STIPULATION TO MAKE ORIGINAL DOCUMENTS AVAILABLE in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| Robert Millman Esq. | Littler Mendelson | rfmillman@littler.com |
| Douglas Wickham Esq. | Littler Mendelson | dwickham@littler.com |
| Keith Jacoby Esq. | Littler Mendelson | kjacoby@littler.com |
| Dominic Messiha Esq | Littler Mendelson | dmessiha@littler.com |
| Diba Restagar Esq. | Littler Mendelson | drastegar@littler.com |
| Michelle Park Esq. | Littler Mendelson | mpark@littler.com |
| Alaya B. Meyers, Esq. | Littler Mendelson | ameyers@littler.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | jbq@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Morris Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgetmorris@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| Benjamin Kim Esq. | O'Melveny & Myers LLP | bjkim@omm.com |
| Hamid Jabbar Esq. | O'Melveny & Myers LLP | hjabbar@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrismill.com |

EXHIBIT 9 PAGE 93

**Exhibit 10**

**quinn emanuel** trial lawyers | los angeles

Six, South Figueroa Street, 10th Floor, Los Angeles, California 90017   tel 213 443 3000   fax 213 443 3100

November 17, 2004

**Via Facsimile and U.S. Mail**

Keith A. Jacoby, Esq.
Littler Mendelson, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107

Re:   *Mattel, Inc. v. Carter Bryant*

Dear Mr. Jacoby:

I write in response to your letter of November 1, 2004 regarding Carter Bryant's Objections and Responses to Mattel, Inc.'s First Set of Requests for Production of Documents and Tangible Things. Mattel has not accused you or your client of "sanitizing" the Bryant document production. My letter of October 28, 2004 stated, "We cited [during our October 25, 2004 meet and confer] certain examples in which it appeared that the production had been 'sanitized' of such information." For example, the MGA production contained documents that suggested that there had been facsimile communications between Bryant and Kinuyo Shichijyo in the fall of 2000 and that had not been produced by Bryant (MGA Bates #427-28). On the eve of the Bryant deposition, on November 1, 2004 at 3:00 p.m., you made available for the first time, several previously withheld documents, including two letters, dated September 18, 2000, between Carter Bryant and Kinuyo Shichijyo regarding Bryant's attempts to find a hair supplier for MGA's "new doll line" (Bryant Bates #s 1201-02). This was when Bryant was still employed at Mattel. It would strain credulity to suggest that these documents were simply overlooked by Mr. Bryant in responding to Mattel's earlier document requests. We cited several other examples of what appeared to be gaps in your client's production to you in our conference call which you indicated you would look into. Please advise when we might expect the results of your further inquiry.

Despite the existence of a protective order, your client is refusing to produce the hard drive from the computer he apparently gave to his niece. Previously produced documents evidence e-mail correspondence between Bryant and others. These and other e-mail messages, not to mention

quinn emanuel urquhart oliver & hedges, llp

EXHIBIT 10 PAGE 94

other responsive documents, likely exist on that hard drive. We must insist that this hard drive be made available for inspection and copying by Mattel in the next ten days. Moreover, as you are aware, the continued use of the hard drive may result in the destruction of relevant evidence. Until this dispute can be resolved, Mattel expects you, as Bryant's counsel, to secure possession of the hard drive and not to use it until an inspection can be agreed upon or ordered by the Court.

Despite our request for unredacted phone records and the existence of a protective order, on November 1, 2004, Bryant provided us with photocopies of phone records that had a significant number of telephone numbers redacted from them. Because of the existence of the protective order, which covers the phone records. Mattel is entitled to unredacted telephone records. We also note that you committed to review other documents being withheld from production that you thought might not be covered by the protective order and provide us with a list of any such documents. To date, we have not received any list from you and must assume that there are no such documents.

Mattel requested Bryant to produce any documents referring or relating to any agreement or contract between Bryant and any other individual that was proposed, offered, discussed, negotiated or executed while Bryant was employed with Mattel, including all drafts of such agreements or contracts, save for the final agreement which has been produced. It appears from your most recent correspondence regarding this topic that you are now attempting to narrow this request down to one specific document, apparently prepared by Bryant's counsel. To date, your client has produced no correspondence or notes, memoranda, e-mails, or any other documentation pertaining to any communications concerning draft employment agreements. Any such documentation, should it exist, is relevant to this lawsuit. Your attempt to link the production of these requested documents to Mattel's objection to producing draft employment agreements between it and other Mattel employees besides Bryant is misplaced. If your client still refuses to produce all documents responsive to this request, you will leave us no alternative but to move to compel.

With respect to the "First Generation Bratz" objection, we must stand on our earlier stated position and insist that these documents be produced.

By the statements in your November 1 letter, you have now backtracked from the representations you made during our October 25, 2004 conference call regarding those responses to which Bryant objected to without indicating that responsive documents would be produced. You have now limited that representation to Mattel's Request No. 21. We disagree with your characterization that any of the Mattel requests are "unintelligible," "wildly overbroad," or "otherwise objectionable." If you are unable to withdraw these unfounded objections as to all other requests in which no responsive documents were produced, you will leave us no alternative but to move to compel.

We are still awaiting receipt of the verification you agreed your client would provide attesting to the fact that all non-privileged responsive documents have been produced or that a diligent

2

EXHIBIT _ID_ PAGE _95_     1

search has been made with respect to all other requests and no responsive documents were located. Finally, you have acknowledged that Bryant's responses were incomplete and incorrect. Please provide an amended verified response that corrects these deficiencies by close of business on November 22, 2004.

Mattel is of the opinion that we have resolved all those outstanding issues that can be resolved without judicial assistance. If you disagree, please contact me at your convenience.

Best regards.

Kirkland Garey

07209/619572 1

EXHIBIT 10 PAGE 96

**Exhibit 11**

1   ROBERT F. MILLMAN, Bar No. CA 062152
    DOUGLAS A. WICKHAM, Bar No. CA 127268
2   KEITH A. JACOBY, Bar No. 150233
    LITTLER MENDELSON
3   A Professional Corporation
    2049 Century Park East, 5th Floor
4   Los Angeles, CA 90067.3107
    Telephone:  310.553.0308
5   Facsimile:  310.553.5583

6   Attorneys for Defendant and Cross-Claimant
    CARTER BRYANT
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  MATTEL, INC., a Delaware              Case No. CV 04-9059 NM (RNBx)
    Corporation,
12                                        HON. NORA M. MANELLA
                    Plaintiff,
13                                        **DISCOVERY MATTER**
         v.
14                                        **CONFIDENTIAL**
    CARTER BRYANT, an individual;
15  and DOES 1 through 10, inclusive,     **[UNREDACTED] DECLARATION
                                          OF KEITH A. JACOBY IN
16                  Defendant.            SUPPORT OF DEFENDANT AND
                                          CROSS-CLAIMANT CARTER
17                                        BRYANT'S PORTION OF JOINT
                                          STIPULATION RE:  MATTEL'S
18                                        MOTION TO COMPEL**

19                                        [Local Rule 37-3]

20                                        Hearing Date:        T.B.D.

21  CARTER BRYANT, on behalf of
    himself, all present and former
22  employees of Mattel, Inc., and the
    general public,
23
                    Cross-Claimant,
24
         v.
25
    MATTEL, INC., a Delaware
26  Corporation,
                    Cross-Defendant.
27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

EXHIBIT 11  PAGE 97

## DECLARATION OF KEITH A. JACOBY

I, KEITH A. JACOBY, declare as follows:

1.      I am a shareholder of the law firm of Littler Mendelson, a Professional Corporation, counsel of record for Defendant Carter Bryant ("Bryant") in this matter. I have personal knowledge of the matters set forth herein and, if called as a witness, I could and would testify competently thereto.

2.      Mattel is an international toy manufacturer based in El Segundo, California that markets numerous lines of toys, including its most well-known product, the "Barbie" doll line. See Mattel's Complaint at ¶ 7.

3.      Defendant Carter Bryant was deposed in this matter on November 4, 5 and 8, 2004. True and correct copies of excerpts of his depositions transcript are attached as Exhibit "1" hereto. At his deposition, Bryant testified to the following:

(a)      Bryant was formerly employed by Mattel as a designer of Barbie fashions. He worked from September 1995 to April 1998 in the "mainline Barbie" fashions department, and from January 4, 1999 to October 20, 2000 in the Barbie "Collectibles" unit. Deposition of Carter Bryant ("Bryant Depo."), Vol. 1, page 36, lines 10-11 and 14-16 (hereafter, 36:10-11 and 14-16); 37:3-5; Vol 2, 274:13.

(b)      During his 1998 hiatus from Mattel, Bryant moved to his family's home in Missouri, worked part time at Old Navy, and created artwork. One of his creations was drawings of hip teenage girls in funky modern clothes. He called the girls in these totally original drawings "Bratz," but he made no efforts to commercialize them at the time. Bryant Depo. Vol. 1, 9:5-12, 142:10-15, 144:19-20.

(c)      Needing money, and wanting to live on his own again, Bryant moved back to California and returned to work at Mattel in January 1999. Bryant Depo. Vol. 1, 44:15, 48:9-11.

(d)      Bryant left his employment at Mattel for a second time on October

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553.0308

1.

EXHIBIT 11 PAGE 98

1    20, 2000 in order to pursue more financially and creatively lucrative employment

2    elsewhere.  Bryant Depo. Vol. 1, 55:18.

3            (e)    In October 2000, Bryant licensed the creations reflected in his

4    1998 "Bratz" master drawings to Intervenor MGA Entertainment, Inc. ("MGA"),

5    which hired a team of designers and toymakers that used the Bryant drawings to create

6    a set of four dolls.  Bryant Depo. Vol. 1, 43:1-14; Vol. 2, 275:18-19.

7            (f)    Those dolls and subsequent "Bratz" dolls that Bryant has worked

8    on have earned Bryant over $10,000,000 and have earned MGA substantially more.

9    MGA produced various Bratz related products in addition to dolls, but Bryant receives

10    no royalties on non-doll "Bratz" products.  Bryant Depo. Vol. 3, 705:25.

11

12    4.    Mattel filed an action against Bryant in the Los Angeles Superior Court on

13    April 27, 2004, *three and one half years* after he resigned from Mattel.  Mattel

14    asserted claims against Bryant for breach of contract, breach of the duty of loyalty,

15    breach of fiduciary duty and conversion.  Mattel alleges, among other things, that

16    Bryant "misappropriate[ed] and misus[ed] Mattel property and resources" and

17    "secretly aid[ed], assist[ed] and work[ed] for a Mattel competitor."  Complaint at ¶ 12.

18

19    5.    Bryant removed this case to federal court on the basis of diversity and federal

20    question jurisdiction on May 14, 2004.  Mattel propounded the discovery at issue on

21    June 14, 2004 and Bryant responded to that request on July 16, 2004.

22

23    6.    The parties produced responsive documents in August 2004 upon the execution

24    of a mutually agreeable protective order.

25    7.    Mattel immediately moved to remand the case to state court and represented to

26    Judge Manella that it was not certain more than $75,000 was in controversy.  Judge

27    Manella accepted Mattel's representation and remanded the case to state court on

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553 0308

2.

EXHIBIT *11*  PAGE *99*

1    August 23, 2004.  She made the following observation that is pertinent to the scope of

2    discovery currently being sought by Mattel:

> Defendant signed the MGA Agreement on September 18, 2000, and resigned from Mattel on October 20, 2000, representing only a one-month overlap of employment for both employees…Plaintiff seeks only to enjoin Defendant from profiting from the services rendered during the approximately one-month time period Defendant worked for both Plaintiff and MGA. . . It cannot be automatically inferred that every dollar he has earned from the "Bratz" dolls is a result of work performed during the on-month period he worked for both Plaintiff and MGA. Nor can it be inferred that all the work he performed during that month directly resulted in the creation of the "Bratz" dolls.

(Order of Remand at 6.)


8.    After conducting further discovery, and receiving documents that unequivocally demonstrate that Mattel is seeking to recover all monies Bryant has earned from MGA as well as injunctive relief, Bryant removed this matter to federal court again on November 1, 2004.


9.    In its most recent motion for remand, Mattel does not dispute Judge Manella's assertion in the August 23 Remand Order that this case is about the fruits of one single alleged month of disloyalty.  At the same time, Mattel's discovery requests, and its statements on this joint stipulation, demonstrate that Mattel is seeking something altogether different.  It seeks **all monies earned by Bryant to date,** as well as a judgment for all profits earned by MGA as a result of Bryant's work.


10.    Bryant's compensation during his last weeks of employment at Mattel totaled less than 10,000.


11.    Bryant has produced his 2000 agreement with MGA, which remained in effect for over three years, and which dictated the amount of royalties he earned for all of his initial work done on the "Bratz" project.  Bryant was no longer receiving royalties for any work done on the First Generation "Bratz" dolls (the four dolls that premiered on the market in the summer of 2001) by 2004.

3.

EXHIBIT LL PAGE 100

12.  The limitation to "First Generation 'Bratz' Designs" placed on Bryant's responses to Mattel's requests calling for "Bratz" related documents created after October 20, 2000 was **mutually agreed upon** by the parties in July 2004.  For example, in response to request nos. 12, 19, 41, 42, 54, and 55, Bryant agreed to produce documents relating to the First Generation "Bratz" Designs, which were created by Mr. Bryant in 1998 and which led to the release of the first generation of "Bratz" dolls (the 2001 versions of the Jade, Cloe, Yasmin and Sasha dolls) in or about June 2001.

13.  A meet and confer among counsel in this matter was convened at the law offices of O'Melveny & Myers on or about July 13, 2004.  It was attended by counsel for MGA (Diana Torres), counsel for Bryant (Douglas Wickham and Keith Jacoby) and counsel for Mattel (Michael Zeller).  In discussing a subpoena Mattel directed at then third party MGA (which has since intervened in the litigation), Mr. Zeller agreed that MGA could limit its response to Mattel's subpoena to document production to the First Generation "Bratz" Designs.

14.  Mr. Zeller, upon inquiry by me, also expressly agreed that Bryant could similarly limit his initial document production.  The parties agreed that documents pertaining to subsequent generations would be produced if developments in the case demonstrated that production was warranted.  While Mr. Zeller indicated that Mattel was not irrevocably waiving the right to seek documents related to subsequent generations of Bratz designs, it was agreed that the "First Generation" limitation would facilitate discovery and an initial production of documents.

15.  On October 26 and 28, 2004, during the course of a further meet and confer on the document request Mattel propounded in state court after this matter was remanded, Mattel unceremoniously reneged on its agreement, and then denied any agreement

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

4.

EXHIBIT _1_ PAGE _10_

1  ever existed.  Attached hereto as Exhibit "2" is a true and correct copy of email

2  correspondence from Mr. Zeller to me, dated October 25, 2004.

3
4  16.   Mattel has utterly failed to show why a further production is required.  Bryant

5  has produced over one hundred of drawings related to the First Generation designs.

6  Given Mattel's position on the scope of this lawsuit, the First Generation "Bratz"

7  designs are the only designs relevant to the issues raised in this lawsuit.  Mattel's

8  theory is that Mr. Bryant breached his employee agreements with Mattel by working

9  for Mattel and MGA at the same time for approximately one month.  Thus, only the

10 work performed prior to joining Mattel or prepared in connection with his interviews

11 with MGA (all of which has been produced to the extent they remain in Bryant's

12 possession, custody and control), and thereafter, to the extent it relates to the First

13 Generation "Bratz" dolls, has any bearing on this lawsuit.  MGA, for its part, has

14 produced hundreds of documents relating to the creation of the First Generation

15 "Bratz" prototypes for the 2001 Hong Kong and New York toy fairs.  Despite the

16 narrow frame of relevance, Mattel's improper and overbroad requests seek virtually

17 every Bryant document regarding Bratz, with no attendant time or scope limitations.

18 The requests, taken together, seek all "Bratz" related documents, from the beginning

19 of time through today.

20 17.   Mattel has sought Bryant's royalty statements from both Bryant and MGA.  The

21 royalty statements contain trade secret information of the most sensitive nature, and

22 much of that information is unrelated to this suit in the first instance.

23
24 18.   The unredacted Bryant royalty statements show SKU numbers for "Bratz" and

25 "Bratz" related products, the revenue generated from those products, and Bryant's

26 royalty.   In other words, they show how much revenue MGA earned on various

27 "Bratz" products.

28

LITTLER MENDELSON

5.

EXHIBIT 11  PAGE 102

19.    Contrary to Mattel's representations, Bryant does not object to producing "responsive, non-privileged documents generated after the suit was filed." Rather, Bryant asserted an objection – identical to one Mattel asserted – that was designed to reserve Bryant's right not to place on a privilege log the innumerable privileged documents and documents containing attorney work product that have been created since this lawsuit was filed. Bryant is unaware of any unprivileged document which does not contain attorney work product that is responsive to the requests and that was created since the lawsuit was filed. The only document that conceivably falls into these categories of documents that Mattel has conducted discovery on to date is Bryant's retainer letter with Littler Mendelson. At deposition, Mattel's counsel quizzed Bryant about his retainer and whether MGA agreed to pay his legal fees in this matter. Bryant asserted the attorney client privilege and did not respond.

20.    Mattel has not produced its retainer letter in discovery, nor has it logged it on any privilege log.

21.    Bryant has not "refused" to produce communications between himself and MGA. To the contrary, he has produced his agreement, his royalty statements, all manner of artwork that was done for MGA or assigned to MGA.

22.    Moreover, and contrary to Mattel's contentions, Bryant has conducted an extensive and diligent search for responsive and relevant information. Bryant made the hard drive of the computer he used from 2000 to 2002 available to his counsel, and counsel have not found any responsive documents or relevant information in his computer hard drives, or documents related to his communications with MGA.

23.    Mattel's speculation that Bryant's counsel "apparently has made no effort to look for or recover deleted data from that hard drive and made no effort to examine the other computers at all" is a complete falsehood, and contradicts express representations made to Mattel's counsel in the meet and confer that such a search was

6.

EXHIBIT _11_ PAGE 103

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

1   undertaken and did not reveal any responsive documents.  It ignores the fact that that
2   Bryant's counsel has examined his hard drive extensively for any responsive
3   documents, and it has not found any.  It also ignores the fact that scores of attorney
4   hours have been spent searching for documents at Bryant's home and in his studio.
5   While Bryant has tirelessly searched for and inspected his computer hard drives for
6   relevant information, there is irrefutable evidence that Mattel has not turned over all of
7   Bryant's electronic data, such as responsive emails or their attachments.

8
9   24.   Further, the hard drive from Bryant's home computer, which he gave to his
10   niece in 2002,  contains personal information and data that is unquestionably protected
11   by his constitutional right of privacy as well as that of his niece.

12   25.   Bryant has been even more accomodating in his furnishing of personal
13   telephone records, but to no avail. He has produced pages of telephone records
14   reflecting phone calls between MGA and himself.  He also produced redacted phone
15   records from Veronica Marlow, the individual that introduced Bryant to MGA.  He
16   produced those records in good faith, even though they are not his own, because they
17   were turned over by Marlow to his attorneys during this litigation.

18
19   26.   Those records contain calls to and from family and friends, and calls by his
20   roommates to others, which are obviously unrelated to this action.

21   27.   In its Motion, Mattel also seeks an order compelling Bryant to produce all
22   "Mattel-related" documents.  Bryant worked for Mattel for approximately five years,
23   and in that time, received innumerable documents from Mattel.  A vast majority of the
24   Mattel documents responsive to these requests have no bearing on any issue in this
25   case.  Documents that Bryant would have received from Mattel during his five years
26   of employment there would likely include insurance, benefits, employee handbooks,
27   administrative memoranda, reports, paychecks, etc.

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553 0308

7.

EXHIBIT 11  PAGE 104

28.    Mattel has imposed precisely the same type of limitation on its production, not even turning over portions of its employee handbook that it unilaterally deemed irrelevant to the case.  Additionally, Mattel has admitted that most of the hundreds of Mattel documents Bryant has already produced in response to these requests are of little value.

29.    In addition, Mattel's counsel Michael Zeller and Tania Krebs have admitted in various meet and confers that there could be many documents responsive to its request that Mattel does *not* want.  For example, Bryant offered to return to Mattel all original drawings belonging to Mattel in his possession, custody or control.  Mattel's counsel refused this offer.   Moreover, Mattel has again and again declined to narrow its requests in any way.  As they are currently written, Mattel's requests are virtually unintelligible.

30.    Mattel cannot justify its position that it is entitled to production of a full array of Bryant's copyright, patent and other registrations, even those that pre-date his first term of employment with Mattel.  It is questionable at best whether any patent or copyright applications filed on Bryant's behalf would even shed light on whether Bryant was represented by counsel at the time.  As Mattel is undoubtedly aware, such applications would likely have been filed by his employer at the time or by MGA, and would not necessarily indicate that he was represented by counsel.  Further, even assuming he retained counsel for the purpose of filing such applications on his behalf, that would have no tendency to disprove the fact that Bryant was not given the opportunity to consult counsel when required to execute Mattel's Employee Confidential Information and Inventions Agreement ("Agreement").

31.    Finally, at deposition, Mattel has already inquired of Bryant whether he was represented by counsel at the time it required him to execute the Agreement.  Bryant responded in the negative.

EXHIBIT _1L_ PAGE _105_

32.     This Court may judicially notice that Mattel Inc. is a publicly traded corporation with tens of thousands of employees. Its record retention obligations are defined and regulated by the state and federal governments. Bryant will file a request for judicial notice prior to hearing.

33.     Carter Bryant is an individual resident of Missouri who does not have the same document organization or retention obligations as does a public company. Notwithstanding the fact that Bryant had no obligation whatsoever to retain the types of records being sought in this action, he by and large **did** retain many documents Mattel has requested, including the master drawings for the "Bratz" designs, his 2000 contract with MGA, MGA royalty statements, and all manner of documents he received as an employee of Mattel.

34.     Mattel's document requests, on their face, span Bryant's entire adult life. About half of the requests are limited in time to all times prior to October 20, 2000, and the balance are limited in time to all documents created after October 2000. Since 1995, Bryant has changed residences within California, moved out of California to Missouri, returned to California, and moved back to Missouri.

35.     In responding to Mattel's document request, Bryant's documents in his Missouri residences and studio were retrieved and then reviewed by five attorneys, at my direction. The documents were not kept in organized files, but were often stuffed in boxes or left in piles in storage areas. They have been copied and produced, and over 700 originals have been hand inspected by Mattel's attorneys. All three-dimensional items have been inspected by hand by Mattel's attorneys, and at one point a Jade doll was disrobed by a Quinn Emanuel attorney, who saw fit to photograph the doll body naked.

36.     Bryant was then deposed by Mattel's counsel for three days, in excess of 20 hours, far beyond what is permitted by the Federal Rules of Civil Procedure. During

9.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553.0308

EXHIBIT _11_ PAGE _100_

that time, Mr. Bryant was questioned on thirty-four (34) separate exhibits, collectively containing over 100 documents.

37.     Mattel's allegations regarding the manner in which documents were gathered and produced in this case are inconsistent with the procedures employed by Bryant's counsel to obtain responsive documents for Bryant.  Bryant's counsel will submit a supplemental declaration detailing the manner in which documents were gathered and produced.

38.     The manner in which Bryant has produced documents is wholly consistent with the manner in which Mattel has produced documents.  Mattel has not identified which documents correlate with specific document requests propounded by Bryant.  Over the course of five productions, it has turned over more than 13,000 documents, and has not indicated a single document to which any request corresponds.  As Bryant's counsel has represented to Mattel's counsel, Bryant's documents were, in fact, produced as they were kept.  Even Mattel acknowledges in its portion of the Joint Stipulation that this method of organization is expressly sanctioned under Federal Rule of Civil Procedure 34(b).

39.     To the extent Mattel had lingering questions about the documents produced by Bryant and their organization, it had the opportunity to question Bryant about them during the three days that it deposed him at the beginning of November, 2004. Mattel's counsel has admitted that it was not (until now) accusing Bryant of shuffling the documents in any way.

40.     Fed. R. Civ. Proc. 31 does not require a verification of document responses by a party.  When Bryant responded to Mattel's **state court document request,** he verified it, as required by Section 2031 of the Code of Civil Procedure.  No such requirement exists in Federal Court, and as Mattel knows, Mattel offered no verification of its response to Bryant's federal request. Bryant never promised to verify these federal

10.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553 0308

EXHIBIT _11_ PAGE _107_

1   requests, and Mattel is engaging in a complete misrepresentation by referring the

2   Court to letters that refer to Bryant's response to Mattel's state court request.

41.     Bryant has produced a comprehensive catalogue of drawings that allow Mattel

to trace the origins of the "Bratz" designs from the first sketches, though the drawings

exhibited to MGA, through the more detailed drawings created as MGA sought to

create actual dolls. . Bryant's counsel has exhaustively searched every place Bryant

has identified where responsive documents may be.  Mattel has every document it is

entitled to have.

10   42.     On October 5, 2004, in deciding a motion for protective order filed by Bryant,

11   Los Angeles Superior Court Judge Gregory Alarcon issued a protective order

12   expressly finding that Bryant did not have to appear for deposition until Mattel lived

13   up to its discovery obligations and produced documents Bryant needed to adequately

14   prepare for deposition.  In the two weeks Mattel produced hundreds of documents,

15   despite its prior assertion that such documents were unavailable.

43.     While this Court will find it nowhere in Mattel's joint stipulation, Bryant also

sat for three full days of deposition, and answered questions for well over 20 hours,

far in excess of the federal seven-hour limit.   Mattel had ample opportunity to

question Bryant regarding documents during this deposition.

21   44.     Mattel has refused to produce a person most knowledgeable to testify about

22   over five dozen enumerated categories of documents requested by Bryant, and has

23   declined to produce multiple other witnesses noticed by Bryant.  Mattel has instructed

24   witnesses who it has produced not to answer for no legitimate reason recognized by

25   federal or state law.  All of this will be presented to the Court in future motions.

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067-3107
310 553 0308

11.

EXHIBIT _11_ PAGE _108_

45.   Mattel is suing a Missouri individual, and litigating the case with the vigor of a massive antitrust suit. At each previous court hearing, Mattel has sent no less than *five attorneys – two partners and three associates –* to make and view the appearance.

46.   There have also been four depositions. To attend Bryant's deposition, Mattel sent *four* attorneys – two partners, one associate and one in-house counsel – to Springfield, Missouri. For a third party witness, Mattel had five attorneys – two partners (Mr. Quinn and Mr. Zeller), two in-house lawyers, and one associate.[1] And, to *defend* the deposition of one Mattel witness, Mattel sent *two* Quinn Emanuel lawyers (one partner and one associate) and one in-house counsel.

47.   As Bryant's counsel, I have spent in excess of fifteen hours preparing Bryant's portion of this joint stipulation. My hourly rate is $425 per hour. Pursuant to FRCP 37 (a)(4)(B), Bryant should be awarded that amount in partial compensation for the cost of opposing this motion.

I declare under penalty of perjury under the laws of State of California and the United States of America that the foregoing is true and correct.

Executed this 11th day of January, 2005, at Los Angeles, California.


KEITH A. JACOBY

Los_Angeles:389665.1 028307.1010

---
[1] The associate attended only part of that deposition.

12.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

EXHIBIT 11 PAGE 109

**Exhibit 12**

⊙ **RECEIVED**

JAN 1 2 2005

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
    Michael T. Zeller (Bar No. 196417)
    Jon D. Corey (Bar No. 185066)
Tania M. Krebs (Bar No. 227281)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000 (telephone)
(213) 443-3100 (facsimile)

Attorneys for Plaintiff and Counter-Defendant Mattel, Inc.

LITTLER MENDELSON
    Robert F. Millman (Bar No. 062152)
    Douglas A. Wickham (Bar No. 127268)
    Keith A. Jacoby (Bar No. 150233)
2049 Century Park East, 5th Floor
Los Angeles, California 90067-3107
(310) 553-0308 (telephone)
(310) 553-5583 (facsimile)

Attorneys for Defendant and Counter-Claimant Carter Bryant

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>        v.<br><br>CARTER BRYANT, an individual, and DOES 1 through 10, inclusive,<br><br>                    Defendants.<br><br>CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public,<br><br>                    Counter-Claimant,<br><br>        v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>                    Counter-Defendant. | CASE NO. CV 04 9059 NM (RNBx)<br><br>**DISCOVERY MATTER**<br><br>Hon. Robert N. Block<br><br>**[UNREDACTED] JOINT STIPULATION RE: MATTEL'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Hearing Date:       January 25, 2005<br>Time:               9:30 a.m.<br>Courtroom:          540<br><br>Discovery Cut-off:  Not Set<br>Pretrial Conference: Not Set<br>Trial:              Not Set<br><br>**FILED UNDER SEAL<br>HIGHLY CONFIDENTIAL<br>ATTORNEYS' EYES ONLY** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[UNREDACTED] JOINT STIPULATION

EXHIBIT 12 PAGE 10

C.     **Bryant's Position**

There is perhaps nothing more far-fetched in this motion than Mattel's contention that "Bryant has completely refused to produce communications between himself and MGA." Bryant has not "refused" to produce communications between himself and MGA. To the contrary, he has produced his agreement, his royalty statements, all manner of artwork that was done for MGA or that was assigned to MGA. Moreover, and contrary to Mattel's contentions, Bryant has made an extensive and diligent search for responsive and relevant information. As Bryant's counsel has expressly told Mattel, Bryant made the hard drive of the computer he used from 2000 to 2002 available to his counsel, and counsel spent scores of attorney hours searching for documents at Bryant's home and in his studio, and produced responsive documents. Counsel has not found any responsive documents or relevant information on his computer hard drives, however. (Jacoby Decl. ¶ 22). Mattel's unsubstantiated comment that Bryant's counsel "apparently has made no effort to look for or recover deleted data from that hard drive and made no effort to examine the other computers at all" is a complete falsehood, and contradicts express representations made to Mattel's counsel in the meet and confer that Bryant's counsel had expended significant time examining the computer. While Bryant has tirelessly searched for and inspected his computer hard drives for relevant information, there is irrefutable evidence that Mattel has not turned over all of its electronic data related to Bryant, such as responsive emails or their attachments, and Mattel has refused to make its technical person knowledgeable available for deposition. (Jacoby Decl. ¶ 23).

Mattel complains that Bryant has not simply turned over the hard drive from Bryant's home computer, which he gave to his niece in 2002. That hard drive, however, contains personal information and data that is unquestionably protected by his constitutional right of privacy, and that of his niece. See Cal. Const. art. I, § I.; also see TBG Insurance Serv's Corp. v. Superior Court, 96 Cal. App. 4th 443 (2002)

62

EXHIBIT 5   PAGE 38
[UNREDACTED] JOINT STIPULATION   EXHIBIT 12 PAGE 111

**Exhibit 13**

 

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-624-7707 FAX 213-624-0643

April 6, 2007

<u>VIA FACSIMILE AND U.S. MAIL</u>

Douglas A. Wickham, Esq.
Littler Mendelson
2049 Century Park East, 5th Floor
Los Angeles, California 90067

Re:   <u>Mattel, Inc. v. Bryant</u>

Dear Doug:

I am following up on our meet and confers earlier this week regarding Bryant's failure to produce his hard drives that Judge Infante's Order had compelled him to produce.

During our conversations, you have informed me of the following. Bryant's counsel has five images of hard drives that Bryant has used. Two of the images were created in July 2004 and have data from the 2002 and 2003 time period. One of these two images is of a 20 GB Travelstar drive from a Compaq Presario laptop, and the other is of a 20 GB Quantum Fireball LCT 15 drive. Bryant's counsel has EnCase images of the Travelstar and Quantum drives, but the physical drive from the Compaq Presario laptop only. You are going to provide me with the details of the drives from which the other three images were made. You have informed me thus far that these three images, which also are in EnCase and which have data of more recent vintage than the images of the Travelstar and Quantum drives, were made in March 2007.

This has raised the issue, among others, of the status of Bryant's "Desktop" drive that was the specific subject of Mattel's motion to compel Bryant's production of documents which Judge Infante granted. As Bryant's counsel is aware, Bryant purchased the "Desktop" in October 2000. He testified at deposition that, prior to November 2004, he had given that computer to his niece. In correspondence and in Court papers, Bryant previously had re

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York. ...... ... ... ... ...... ...... ...
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94104 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-620-4500 FAX 650-620-4555
PALM SPRINGS | 45-025 Manitou Drive, Suite 8, Indian Wells, California 92210 | TEL 760-345-4757 FAX 760-345-2414
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-1407 FAX 858-812-1406

EXHIBIT 12 PAGE 12

had been retrieved from Bryant's niece, that it has been in Bryant's counsel's possession since at least as early as November 2004, that it had been thoroughly reviewed and that no responsive information was contained on it.

During our recent discussions, however, because your statements that the images of the Travelstar and Quantum drives had information from the 2002 and 2003 time period suggested that these images did not include the Desktop drive (which would have 2000 and 2001 information on it), I specifically raised the whereabouts and status of the Desktop drive with you. In the first instance, after you had checked with your partner Keith Jacoby, you informed me during our call on April 4, 2007 that Bryant's prior representations about the Desktop drive were "wrong" and that the drive, in fact, had neither been obtained from Bryant's niece nor reviewed. You also said in this regard yesterday that you are not entirely sure about the accuracy of the foregoing and would have Keith call me directly to discuss this.

For the reasons explained in my letter to you of March 29, 2007, we consider the apparent absence of the Desktop drive to be a troubling development. Your statements to me this week during our meet and confers have increased, rather than diminished, the number of questions surrounding this evidence which Bryant represented that he had in hand and has been compelled by Court Order to produce. I therefore would appreciate it if Keith would follow up with me promptly, either today or by the end of Monday, particularly given that we have been seeking to resolve for some time now the matter of Bryant's failure to produce (among others) the Desktop drive. If the parties are not able to resolve this issue, we will have no alternative but to seek relief from Judge Infante. One type of relief that we are contemplating potentially seeking would include, without limitation, an order to show cause requiring Bryant to fully explain the facts and circumstances surrounding the non-production of the Desktop drive and make available the salient witnesses to testify on the subject.

Accordingly, I reiterate my prior requests that Bryant be prepared to discuss the specifics surrounding his failure to produce the Desktop hard drive. I also would expect, as part of those discussions, to be informed of the particulars of the persons with knowledge of facts pertaining to the hard drive, such as the name and contact information of the niece.

Finally, this will confirm that, as we discussed yesterday, you will be circulating for Mattel's consideration a draft document which outlines a protocol for the handling of the images and drives that Bryant's counsel does have in their possession.

I look forward to hearing from you and Keith on these subjects.

Very truly yours,

Mike T. Z—

Michael T. Zeller

cc:     Keith Jacoby, Esq.
        Diana Torres, Esq.

2

EEXHIBIT 12 PAGE 13

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

| NEW YORK | LOS ANGELES | SAN FRANCISCO |
|---|---|---|
| 51 Madison Avenue, 22nd Floor | 865 South Figueroa Street, 10th Floor | 50 California Street, 22nd Floor |
| New York, NY 10010 | Los Angeles, CA 90017 | San Francisco, CA 94111 |
| (212) 849-7000 | (213) 443-3000 | (415) 875-6600 |
| Facsimile: (212) 849-7100 | Facsimile: (213) 443-3100 | Facsimile: (415) 875-6700 |

| SAN DIEGO | SILICON VALLEY |
|---|---|
| 4445 Eastgate Mall, Suite 200 | 555 Twin Dolphin Drive, Suite 560 |
| San Diego, CA 92121 | Redwood Shores, CA 94065 |
| (858) 812-3107 | (650) 801-5000 |
| Facsimile: (858) 812-3336 | Facsimile: (650) 801-5100 |

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**FAXED APR 6 6 2007**

DATE:     April 6, 2007

NUMBER OF PAGES, INCLUDING COVER:

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Douglas Wickham, Esq. Keith Jacoby, Esq. Littler Mendelson | (310) 553-0308 | (310) 553-5583 |
| Diana M. Torres, Esq. O'Melveny & Myers LLP | (213) 430-6584 | (213) 430-6407 |

FROM:     Michael T. Zeller

RE:     *Mattel, Inc. v. Carter Bryant*

MESSAGE:

## EXHIBIT 13 PAGE 14

07209/2047927.1

| CLIENT # | 7209 | ROUTE/ RETURN TO: Mia Albert./3th Floor | ☐ CONFIRM FAX ☐ INCLUDE CONF. REPORT |
|---|---|---|---|
| OPERATOR: | | CONFIRMED?   ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

Confirmation Report — Memory Send

```
                                    Page      : 001
                                    Date & Time: 04-06-2007  02:28pm
                                    Line 1    : 2134433100
                                    Line 2    :
                                    Machine ID : QUINN EMANUEL
```

| | | |
|---|---|---|
| Job number | : | 673 |
| Date | : | 04-06  02:26pm |
| To | : | ☎9643#7209#4306407 |
| Number of pages | : | 003 |
| Start time | : | 04-06  02:26pm |
| End time | : | 04-06  02:28pm |
| Pages sent | : | 003 |
| Status | : | OK |
| Job number | : 673 | **\*\*\* SEND SUCCESSFUL \*\*\*** |

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

NEW YORK
51 Madison Avenue, 22nd Floor
New York, NY 10010
Facsimile: (212) 849-7100

LOS ANGELES
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

SAN DIEGO
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

DATE:   April 6, 2007

NUMBER OF PAGES, INCLUDING COVER:

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| Douglas Wickham, Esq.<br>Keith Jacoby, Esq.<br>Littler Mendelson | (310) 553-0308 | (310) 553-5583 |
| Diana M. Torres, Esq.<br>O'Melveny & Myers LLP | (213) 430-6584 | (213) 430-6407 |

FROM:   Michael T. Zeller

RE:   Mattel, Inc. v. Carter Bryant

MESSAGE:

07209/2047927.1

| CLIENT # | 7209 | ROUTE/<br>RETURN TO: | Mia Albert /5th Floor | ☐ CONFIRM FAX<br>☐ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| | | OPERATOR: | CONFIRMED? | ☐ No   ☐ Yes: |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT 13 PAGE 115

## Group Send Report

Page        : 001
Date & Time: 04-06-2007   02:14pm
Line 1      : 2134433100
Line 2      :
Machine ID : QUINN EMANUEL

Job number          :   672

Date                :   04-06  02:11pm

Number of pages     :   003

Start time          :   04-06  02:11pm

End time            :   04-06  02:14pm

Successful nbrs.

    Fax numbers

        ☎1+13105535583


Unsuccessful nbrs.                                    Pages sent

    Fax numbers

        ☎121343064074                                    000


EXHIBIT 13 PAGE 116

**Exhibit 14**



**LITTLER MENDELSON®**

A PROFESSIONAL CORPORATION

April 23, 2007

Keith A. Jacoby
Direct: 310.772.7284
Direct Fax: 310.553.5583
kjacoby@littler.com

**VIA HAND DELIVERY**

Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

Re:   **Bryant v. Mattel**

Dear Mr. Zeller:

As you know, we recently confirmed that the July 2004 "mirror image" of the 20 GB Quantum Fireball LCT 15 hard drive ("July 2004 Mirror Image") retained by this office is indeed the copy of the hard drive from the desktop computer purchased by Carter Bryant in or about October 2000. Enclosed with this letter is a copy of the July 2004 Mirror Image.

As recounted in his deposition, Mr. Bryant gave the October 2000 computer to his niece, Brooke Lind Gilbert. We obtained this computer from Ms. Gilbert on April 19, 2007. In accordance with Discovery Master Infante's ruling, we hereby make this computer and its hard drive immediately available to Mattel's expert for forensic examination in our offices. Please contact and apprise me of the identity of your expert so we can make the appropriate arrangements.

In light of the foregoing, Mattel's motion to compel the production of said hard drive is moot. We expect that you will immediately contact Discovery Master Infante and withdraw the motion.

All of Mr. Bryant's rights and remedies are hereby reserved, including the right to seek further relief concerning the appropriate manner of inspection and disposition of the Compaq Presario laptop computer hard drive, and all other hard drives in Mr. Bryant's possession, custody or control.

EXHIBIT 14 PAGE 117

Michael T. Zeller
April 23, 2007
Page 2


If you have any questions concerning the foregoing, please do not hesitate to contact me.

Sincerely,

Keith A. Jacoby

encl.

KAJ:rpe

Firmwide:82358948.1 028307.1010

EXHIBIT 14 PAGE 118

**Exhibit 15**

Case 2:04-cv-09049-DOC-RNB   Document 3839-5   Filed 05/28/08   Page 57 of 61   Page ID #:81645

**\*\*\*\*\* NEWSFLASH \*\*\*\*\* POLICE EXPERTS ADMIT EVIDENCE ELIMINATOR IS T**

  

Retail Info

**evidence eliminator - the world's #1 PC security utility**

| | | | |
|---|---|---|---|
| PRODUCT INFO | BUY NOW! | COMPANY INFO | CUSTOMER COMMENTS | MAILING LIST |
| WHAT'S NEW | DOWNLOADS | JOBS & PRESS NEWS | SUPPORT | DIS-INFO CENTER |
| KEY FEATURES | REASONS TO BUY | ASSOCIATE PROGRAM | F.A.Q. | FORENSIC LINKS |

**Did you know...** that the **government** and **police** are installing **black boxes** in ISPs to record your Internet surfing and downloads **for evidence?**

> URGENT NEWSFLASH FRIDAY 27 JULY 2007 - YOUR INTERNET TRAFFIC IS BEING ROUTED THROUGH THE AMERICAN ISP 12.150.161.10 AND LOS ANGELES, CALIFORNIA UNITED STATES - YOU ARE AT VERY HIGH RISK OF INVESTIGATION!

**Deleting "internet cache and history", will not protect you...** your PC is storing deadly evidence. Even **FORMATTING** the disk won't work.

All those **Web Pages, Pictures, Movies, Videos, Sounds, E-mail and Everything Else** you have ever viewed could easily be recovered - even many years later.

The Times, London, 3rd December 2004

**THE TIMES**

"Evidence Eliminator, the British-made market leader"

*Defend yourself!* Make your Internet access safer. Get yourself a truly clean and faster "Like New" PC!

▶ **Download Evidence Eliminator™ Now!**

**Latest News**

**CLICK HERE TO ACCESS BANNED NEWSGROUPS!**

**Testimonials**

*Just a few of the many letters of thanks we receive daily from satisfied customers around the world:*

Seeing EE going through its comprehensive clean-up made me breathe so much easier. It is still the most worthwhile protection I have ever purchased for the computer. Your team is to be commended for the excellent product, support and upgrading. You haven't abandoned those of us who bought the product in its early stages and continued to use, enjoy and trust EE. RB, USA

Thank you for making a program that a person of my limited computer knowledge can use and understand... ...makes this something that anyone surfing the net should use. KG, USA

Wow!! That has to be the best online support I have ever had. A real person answered my mail, quickly. Thanks for making such a great product. KS, USA

I just downloaded and installed your product today. I love it! My 200 Mhz machine is noticeably faster and now has an additional

EXHIBIT 15 PAGE 119

Evidence Eliminator - What evidence ,n your hard drive?



Click here to see more Screenshots! or ▶ Download Now!

**PROTECT YOUR JOB, PROPERTY, FAMILY, CAR, FRIENDS AND YOUR REPUTATION - BEFORE IT'S TOO LATE!**

**You are being watched...** how about your **Boss**? Do you surf the internet and send **E-mail** at work? Your work PC will be **full of evidence**. It is becoming common in the workplace for companies to copy and investigate the contents of workers computers out of hours - without your consent or knowledge. This is perfectly legal and it is happening **now**! Your job could be at risk, what would happen to you if you **lost your job**? People like you are losing their jobs right now because of their Internet activities in **America** and the **UK**.

According to an **APBNews** report, 73.5% of all companies **admit** they "*record and review their employees' communications and activities on the job.*"

There is no need for you to play Russian roulette with your job, family, car, property and everything else that depends on it! Act now! We can help, **Evidence Eliminator™** can protect you from the dangers of the Internet! Download today with no risk, guaranteed. Act now! And transform your computer into a safe, clean and faster machine!

▶ **Get Evidence Eliminator and Be Safe!**

## Proven in the US Courts!

*'Evidence Eliminator ... the data destroyed is "gone forever" and it is impossible to create mirror images of defendants' hard drives ...'*

UNITED STATES MAGISTRATE JUDGE

EXHIBIT 15  PAGE 27

100+ meg of hard disk space available. I just ordered Evidence Eliminator this evening. This beats anything I've seen to date. Please keep up the good work!I RR, USA

...the program you have designed is simply excellent. nothing like it can compare. JG, USA

Great product - you need to get the message across more widely! Anyone with teenage sons knows how likely it is that something unwanted is lurking on the h/d... ...Well - most impressive! Somehow the whole product had a certain 'aura of quality' about it and seemed worth buying... Seems I was right - money well spent! SC, UK

Just wanted to say "THANK YOU" for such a GREAT program. EE does an amazing job of finding and removing things I don't really want to leave on the equipment. I Also want to express my appreciation for the rapid response to my registration... ...FAST! I am looking forward to the updated version that is supposed to be released soon. Again, Thank you for an excellent product, quick registration, and ease of mind. RB, USA

It appears to be as useful as a system cleaner as it is a security program... ...I appreciate your response and follow-up. I've never seen any company follow up as well as you guys have. Thanks again! GB, USA

Evidence-Eliminator is the perfect tool for the casual or frequent Internet user that makes purchases online. The safe and secure deletion of files

Evidence Eliminator - What evidence in your hard drive?

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA
CASE NO. CIV S-03-1968 WBS KJM. APRIL 5, 2005

### SEE THE PROOF ON THE POLICE EVIDENCE SCANNER

This is the view of a porn-filled hard drive on EnCase police software, both before, and after, the **Evidence Eliminator™** treatment.



that might possibly store financial information on one's hard drive can be wiped clean without fear of it being used or accessed dishonestly. Overall, an OUTSTANDING program and worth every penny. I will spread the word with my colleagues about this fantastic way to make sure their computers are safe on an everyday basis. JG, USA

Even more amazing, is a software company that has such a positive and rapid trouble shooting team (an all too rare occurrence). I had a response within hours of my last e-mail to you. Congratulations on your professionalism and Customer Services. It is really impressive and appreciated. MM, USA

Until I tried this unique product I had spent several hours each week manually reducing the size of my registry and trying to eliminate the numerous and bloated entries that had accumulated each time I installed software or just spent time on the Internet. GC, USA

It's about time that someone created software that performs multiple functions from one source and is user friendly. I can now delete all of the various items that were installed on my computer with the push of a button and let Evidence Eliminator do all of the work. I was running three different types of software and still did not get half of the results that were achieved the first time I used your product. Thanks, MW, USA

---

**⚠️ CONSUMER SCAM ALERT** - Fraud artists target privacy consumers

False advertising has duped many consumers into buying worthless imitation software - "eraser / internet washers" that do not work - you might as well throw your money away. If you have recently been the victim of a scam by one of these fly-by-night outfits you are strongly urged to get your money back as quickly as possible, and not to use the software under any circumstances because it could even damage your hard disk! You don't have to take risks, make sure you accept only the authentic, original **Evidence Eliminator™** and be sure you are both 100% safe and secure!

---

Do you have an ex-spouse or ex-partner with a grudge against you, have you been "Grassed"? Has anyone ever put a floppy disk in your computer? Is someone after your job? Can you honestly say that you **really know for sure** what may have been accidentally downloaded or purposefully hidden on your PC?

Do your **children or their friends** use your computers? What have they downloaded and tried to delete?

Did you know for example that every click you make on Windows 98 Start Menu is logged and stored permanently on a hidden encrypted database within your own computer?

EXHIBIT __15__ PAGE __2__

Your courtesy, kindness and prompt

http://www.evidence-eliminator.com/product.d2w

7/26/2007

If you have a business, protect your workplace and computers with **Evidence Eliminator™**. Don't get investigated - **get protected!**

**Evidence Eliminator™** is proven to defeat the exact same forensic software as used by the US Secret Service, Customs Department and Los Angeles Police Department (LAPD), and the UK Metropolitan Police Scotland Yard.

**It is a proven fact...** routine Forensic Analysis equipment such as **EnCase** and **F.R.E.D.** used by Private and Business Investigators, Law-Enforcement and others, can recover evidence from parts of your hard drive that you thought were empty, **parts that you had cleaned.**

# what ever you do

**Your hard drive might appear clean...** but still be full of **'sensitive material'** that you did not want to download in the first place and it might very well be a **Serious Criminal Offence** in your country to have that data stored on your computer even if you didn't know it was still there. **You could go to Jail!** Pressing 'Delete' or emptying your 'Recycle Bin' - or even 'Formatting' your disk - simply **will not work,** the **'sensitive material'** will still remain on your hard drive!

**You will be held responsible** for any data which you allow to remain on your computer, even if it was only by accident. Even files and **Internet Searches** you have made which you thought you had never "saved to disk" can be recorded as **permanent evidence** on your hard drive

**Get total protection now...** If you do not use **Evidence Eliminator™** your PC is "a ticking **Time Bomb** waiting to go off!" Only with **Evidence Eliminator™** can you get the protection you deserve, only then can you use your PC to explore the Internet with confidence.

The distinctive style and unsurpassed quality of **Evidence Eliminator™** and its rapid ongoing development and success have firmly established **Evidence Eliminator™** as the **world's premier** computer hard drive cleansing system!

**Evidence Eliminator™** is a powerful and easy-to-use program, no other commercially available program can do the same job. Every day, **Evidence Eliminator™** quickly and professionally deep cleans your computer of 'sensitive material', leaving you with a clean PC, a clean conscience and instant **peace of mind.**

**We are so confident** that you will want **Evidence Eliminator™** protecting you and your interests we can give you this unbeatable **Limited Time Special Offer!** Order and download **Evidence Eliminator™** software now and we will include **free** lifetime Technical Support and **free** extremely valuable lifetime Upgrades! There is no risk, you are protected by our 30 day money-back guarantee. Start to enjoy the benefits of a truly clean and faster "Like New" PC! Download today with no risk, guaranteed. **This incredible Limited Time Special Offer is guaranteed for today only and may be cancelled at any time!**

▶ **Download Now And Protect Yourself!**

responses to my emails is wonderful and all too rare these days. Thanks again, sincerely. NC, USA

This is a great product - it takes care of essential cleanup & important system maintenance with one click. Thanks again. BI, USA

Hi guys.. for starters, I love this program... ...Not only does it give you peace of mind by deleting garbage that could hang around for months, it also keeps my hard drives clean of unwanted files. JC, USA

This is to me THE best software program ever introduced to the public!... ... It has been such a pleasure to use. I am telling my family and friends about your wonderful product... ... I was so impressed by the program I purchased mine as soon as I could. Thank you for not only your product, but also for the most actively involved Technical Support anywhere in cyberspace!! My sincere gratitude to you all. DT, USA

I'm truly amazed that you can provide this sort of quality at the price you charge. Best wishes. JC, USA

Thank you for everything this is the kind of program that I will use forever. RB, USA

I have 7 years experience w/computers and have never seen anything even close to EE on the market... ...I would just like the rest of the .Net consumer public know EE is for REAL. JS, USA

It's a pleasure to be dealing with professional people like you with such a

EXHIBIT 15 PAGE 122

Evidence Eliminator - What evidence ... n your hard drive?

Page 5 of 6



Click here to see more Screenshots!

**SPEED-UP YOUR PC AND INTERNET BROWSER - MAKE IT SAFER TO USE THE INTERNET!**

## Working deep below your Windows operating system... Evidence Eliminator™ employs the exact same sector analysis technology as available in ultra-high-priced tools available to law-enforcement agencies, for example the **FBI**. After identifying and analyzing the unwanted data hidden in your drives, **Evidence Eliminator™** destroys it with **proven methods of secure disposal** similar to US Department of Defense standards for destruction of classified material.

## Award winning... Evidence Eliminator™ has been featured on TV, Radio shows, many top Magazines and has been decorated with high praise, admiration and awards:

*"I tested the software recently and was astonished at its thoroughness. It did wipe clean a ton of stuff... ...I was truly impressed"* Mark A. Kellner, "On Computers" Columnist, THE WASHINGTON TIMES Click here to read review

*"performs its stated goal admirably...Short of dousing it with gasoline and setting it ablaze, the only way to keep things spotless and shiny clean is with Evidence Eliminator."* Slaughterhouse.com "Pick Of the Day" Click here to read review

*"an ultra-powerful application... Evidence Eliminator keeps your system running fast and on the right side of the law... Evidence Eliminator really is an excellent program for protecting your privacy."* RocketDownload.com "5-Smileys Award" Click here to read review

*"it performs secure file wipes, making it all but impossible to recover data within... Evidence Eliminator is thorough yet very easy to set up and use"* ZDNet PC Magazine "5-Star Editors Pick" and "ZDNet 7th Annual Awards Finalist" Click here to read review

## The fact is... your computer is spying on you and is filling up with evidence, only **Evidence Eliminator™** can protect and help you. In tests, **Evidence Eliminator™** defeats **EnCase** and other Forensic Analysis equipment as used by investigators, police and government agencies. So enjoy the benefits of our unbeatable **Limited Time Special Offer** and download yours now!

http://www.evidence-eliminator.com/product.d2w

---

brilliant product. AD, UK

Appreciate the great technical support and service... please keep up the good work. DB, USA

In the dubious, treacherous and sometimes ominous world of Internet browsing and all it's legalistic issues, it's reassuring to know that a product like EE is out here to protect the innocent and unwary browser... Bravo..and thanks. VC, USA

EE it is a really wonderful and powerful software. I love it more and more, every day passing by. I have tried different erasers but EE is WOW. DP, USA

---

*Don't miss out! Act now and enjoy the benefits of our unbeatable Limited Time Special Offer!*

---

EXHIBIT 15 PAGE 123

7/26/2007