Evidence Eliminator – What evidence ̣n your hard drive?                                    Page 6 of 6

▶ **Webmasters: <u>Click Here</u>**

**To protect and to serve the public...** that is our mission! Employers, parents, surfers and Internet professionals from all over the world use, trust and depend upon **Evidence Eliminator™**'s state-of-the-art technology. Even the best Forensic Laboratory Analysis with electron microscopes is no match for **Evidence Eliminator™**'s formidable display of new, innovative, World-Leading data destruction technologies.

**Whatever reasons you have...** for needing **Evidence Eliminator™**, one thing is for sure - downloading **Evidence Eliminator™** will be the most important thing you have ever done. Act now, try it risk free, and transform your computer into a safe, clean and faster machine!

**Easy to use...** **Evidence Eliminator™** is **the** essential one-click user-friendly technology for the security-conscious surfer. If you use just one program on your PC - make it **Evidence Eliminator™** before it's too late!

▶ **<u>Download Evidence Eliminator™ right now - Click Here!</u>**

▶ **<u>Click Here</u>** for information on downloading and our **Incredible Special Offer.**



   Webmasters & ISPs: We will pay you to link to us. Join our <u>Associate Program</u>   
<u>Trademarks, Terms & Copyright</u>


Evidence Eliminator™ recommends **alibis.com** uncensored newsgroups. Access banned newsgroups now, you'll be amazed what you can find - **<u>Click Here</u>**

EXHIBIT ⟋⟍ PAGE 124

# EXHIBIT 6

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2 |   John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
3 |   Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
4 |   (joncorey@quinnemanuel.com)
5 | 865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
6 | Facsimile: (213) 443-3100

**CONFORMED COPY**

7 | Attorneys for Plaintiff Mattel, Inc.

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | EASTERN DIVISION

11

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case Nos. CV 04-09059 & CV 05-2727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| Defendant. | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]** |
| AND CONSOLIDATED ACTIONS | **REPLY OF PLAINTIFF MATTEL, INC. IN SUPPORT OF MOTION FOR ADDITIONAL TIME AND/OR TO REOPEN THE DEPOSITION OF CARTER BRYANT FOR ALL PURPOSES AND TO OVERRULE ADDITIONAL INSTRUCTIONS NOT TO ANSWER AT THE DEPOSITION** |
| **CONFIDENTIAL** | |
| **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** | |
| | Date: TBA
Time: TBA
Place: Telephonic |
| | **Phase 1**
Discovery Cut-Off: January 14, 2008
Pre-Trial Conference: April 7, 2008
Trial Date: April 29, 2008 |
| | **Phase 2**
Discovery Cut-Off: March 3, 2008
Pre-Trial Conference: June 2, 2008
Trial Date: July 1, 2008 |

Stamp: LODGED CLERK, U.S. DISTRICT COURT AUG 23 2007 CENTRAL DISTRICT OF CALIFORNIA EASTERN DIVISION BY ___ DEPUTY

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

J7209/2198506.2

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Plaintiff Mattel, Inc.

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  EASTERN DIVISION

11 | CARTER BRYANT, an individual,        | CASE NO. CV 04-9049 SGL (RNBx)
12 |              Plaintiff,              | Consolidated with
   |       vs.                           | Case Nos. CV 04-09059 & CV 05-2727
13 |                                      |
   | MATTEL, INC., a Delaware            | **DISCOVERY MATTER**
14 | corporation,                         |
   |                                      | **[To Be Heard By Discovery Master**
15 |              Defendant.             | **Hon. Edward Infante (Ret.)]**
16 |                                      | REPLY OF PLAINTIFF MATTEL,
   | AND CONSOLIDATED ACTIONS            | INC. IN SUPPORT OF MOTION FOR
17 |                                      | ADDITIONAL TIME AND/OR TO
   |                                      | REOPEN THE DEPOSITION OF
18 | **CONFIDENTIAL**                    | CARTER BRYANT FOR ALL
   |                                      | PURPOSES AND TO OVERRULE
19 | **FILED UNDER SEAL PURSUANT**       | ADDITIONAL INSTRUCTIONS NOT
   | **TO PROTECTIVE ORDER**             | TO ANSWER AT THE DEPOSITION
20 |                                      |
   |                                      | Date:   TBA
21 |                                      | Time:   TBA
   |                                      | Place:  Telephonic
22 |                                      |
   |                                      | **Phase 1**
23 |                                      | Discovery Cut-Off:   January 14, 2008
   |                                      | Pre-Trial Conference: April 7, 2008
24 |                                      | Trial Date:          April 29, 2008
25 |                                      | **Phase 2**
   |                                      | Discovery Cut-Off:   March 3, 2008
26 |                                      | Pre-Trial Conference: June 2, 2008
   |                                      | Trial Date:          July 1, 2008
27
28

CONFORMED COPY

07209/2198506.2

MATTEL'S REPLY ISO MOTION RE: BRYANT

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ....................................................................................................... 3

I.    THE COURT SHOULD ORDER BRYANT'S DEPOSITION ...................... 3

    A.    There Is Good Reason to Further Depose Bryant.................................... 3

        1.    The Court Should Reopen Bryant's Deposition Based on New Claims Filed Since His Deposition Was Taken.................. 6

        2.    The Court Should Reopen Bryant's Deposition Based on New Evidence Produced to Mattel Since His Deposition Was Taken ....................................................................... 7

            (a)    Mattel Does Not Seek to Readjudicate Its February 2007 Motion ......................................................... 8

            (b)    Bryant's "Phased Discovery" Argument Is Misleading ................................................................ 9

            (c)    The Newly Produced Evidence Justifies Reopening Bryant's Deposition ..................................... 11

                (i)    Bryant Ignores Much of the New Evidence Mattel Cites ................................................. 11

                (ii)    Bryant's Arguments About the Limited Evidence He Does Choose to Address Are Unavailing ................................................. 11

        3.    The Court Should Reopen Bryant's Deposition Based on Defense Counsels' Coaching and Obstructionist Tactics at the Deposition ..................................................................... 13

    B.    Bryant Bears The Burden Of Proof Under Rule 26(b)(2) .................... 13

        1.    The Requested Discovery Is Not Unreasonably Cumulative or Duplicative Nor Has Mattel Had "Ample Opportunity" to Obtain the Requested Discovery..................... 15

        2.    The Benefits of Reopening Bryant's Deposition Clearly Outweigh Any Burdens ............................................... 15

II.    THE COURT SHOULD OVERRULE ADDITIONAL INSTRUCTIONS NOT TO ANSWER ........................................................ 16

CONCLUSION.................................................................................................... 19

MATTEL'S REPLY ISO MOTION RE: BRYANT

# TABLE OF AUTHORITIES

**Page**

### Cases

*AMCO Ins. Co. v. Madera Quality Nut LLC,*
2006 WL 931437 (E.D. Cal. 2006) ........................................... 18

*Boston Edison Co. v. U.S.,*
75 Fed. Cl. 557 (Fed. Cl. 2007) ................................................ 13

*Burrows v. Redbud Community Hosp. Dist.,*
187 F.R.D. 606 (N.D. Cal. 1998) ........................................ 4, 13

*Collins v. International Dairy Queen,*
189 F.R.D. 496 (M.D. Ga. 1999) ........................................ 4, 14

*Dixon v. Certainteed Corp.,*
164 F.R.D. 685 (D. Kan. 1996) ................................................. 5

*In re Enron Corp.,*
349 B.R. 115 (Bankr. S.D.N.Y. 2006) ...................................... 14

*Fresenius Medical Care Holdings, Inc. v. Roxane Laboratories, Inc.,*
2007 WL 764302 (S.D. Ohio 2007) ....................................... 5, 8

*Judicial Watch, Inc. v. U.S. Dept. of Commerce,*
34 F. Supp. 2d 47 (D.D.C. 1998) .............................................. 13

*Keck v. Union Bank of Switzerland,*
1997 WL 411931 (S.D.N.Y. 1997) ............................................. 4

*Keithley v. Homestore.Com, Inc.,*
2006 WL 1646119 (N.D. Cal. 2006) ........................................... 7

*Lowery v. Noble Drilling Corp., F. Supp.,*
1997 WL 675328 (E.D. La. 1997) ............................................... 5

*Resolution Trust Corp. v. Dabney,*
73 F.3d 262 (10th Cir. 1995) .................................................... 18

*Ritchie v. U.S.,*
2004 WL 1161171 (N.D. Cal. 2004) ............................................ 4

*Robins v. Scholastic Book Fairs,*
928 F. Supp. 1027 (D. Or. 1996) ................................................ 7

*Stempler v. Collect America, Ltd.,*
2000 WL 288377 (E.D. La. 2000) ......................................... 4, 13

*Tillery v. Darby-Rogers Co.,*
2006 WL 2735162 (M.D. Fla. 2006) ........................................... 4

07209/2198506.2

*Zamora v. D'Arrigo Bro. Co. of Cal.*,
   2006 WL. 3227870 (N.D. Cal. 2006)..................................................................... 14

**Statutes**

Fed. R. Civ. P. 26(b)(2) .................................................................................... 13, 14

Fed. R. Civ. P. 30(d)............................................................................................. 13

MATTEL'S REPLY ISO MOTION RE: BRYANT

07209/2198506.2

## Preliminary Statement

Bryant does not contest that he is the single most important witness in this case, which defendants claim is worth "billions" of dollars, that key documents were withheld by defendants until after his November 2004 deposition, or that he has unique personal knowledge regarding the dozen-plus claims in two complaints and answers and affirmative defenses that were filed after his deposition. Bryant does not even argue that, on the merits, Mattel should not be permitted to question him regarding these new claims and most of the evidence defendants withheld before his deposition. Mattel is entitled to additional time with this witness.

Since Bryant's deposition: (i) MGA filed a broad array of unfair competition claims against Mattel, putting the *entire* Bratz line at issue; (ii) Mattel filed 13 counterclaims against Bryant, MGA and other defendants in MGA's case against Mattel, including for copyright infringement and RICO violations (based on predicate acts of mail and wire fraud, commercial bribery, document tampering, and others); and (iii) Bryant alone filed an answer asserting over 20 affirmative defenses to Mattel's Counterclaims in the <u>MGA v. Mattel</u> case. Mattel has never had an opportunity question Bryant on any of this. Bryant cannot deny that Mattel has a right to question him regarding the new claims, counterclaims and affirmative defenses in the <u>MGA v. Mattel</u> matter, which Bryant has never been deposed on. Indeed, Bryant offers virtually no opposition on this point.

Bryant also does not contest that key evidence was withheld by defendants until compelled by the Court, even though requested by Mattel before his November 2004 deposition. Bryant simply ignores all the evidence that he and MGA originally suppressed, including a September 2000 fax from Bryant to David Rosenbaum, outside counsel for MGA, in which Bryant stated that he could not ask Mattel's Human Resources Department any more questions about his contract with Mattel "without risking suspicion," a February 2003 declaration of Bryant that contains false dates about the timing of Bratz's release, and other key documents. As of

1 | today, MGA has produced nearly 175,000 pages of documents since Bryant was
2 | first deposed, including over 17,000 pages of documents produced since Mattel filed
3 | this motion. Bryant's only argument here is that he should not be compelled to
4 | testify about these documents because MGA is "another party." However, Bryant
5 | cannot evade questioning simply because this evidence was withheld by MGA, his
6 | co-defendant and co-conspirator, the party with which Bryant has a joint defense
7 | agreement and the party which is paying his attorneys' fees. The law is clear that
8 | Mattel would be entitled to additional time based on new evidence even if it had *not*
9 | requested it prior to Bryant's deposition, which it had.

10 |     In any case, Bryant himself withheld key evidence prior to his deposition.
11 | Bryant does not deny that he installed and used "Evidence Eliminator" software on
12 | his computer, nor that the *only* use for such software is to intentionally destroy data.
13 | Instead, Bryant suggests that Mattel should not be entitled to question him about this
14 | because he was smart enough to install the destructive software before Mattel
15 | discovered Bryant's theft of the Bratz designs and sued. That explanation just shows
16 | why Mattel needs to question Bryant about this evidence -- to see why he installed
17 | and ran it, and when. Bryant also does not deny he withheld key original Bratz
18 | drawings prior to his deposition, despite his promise to produce them before it. He
19 | does not deny that he withheld Bratz drawings dated "September 19, 1999" prior to
20 | his first deposition, that he withheld his fee agreement with MGA -- a new version
21 | of which was produced just two days ago -- or that he withheld thousands of other
22 | documents Mattel requested before his deposition.

23 |     Bryant's only real argument in opposition is that Mattel previously moved to
24 | overrule certain instructions not to answer at his deposition, and should not be
25 | entitled to a "do-over." Mattel's prior motion was entirely different from the motion
26 | at bar. In that motion, Mattel did not discuss the new evidence produced after
27 | Bryant's November 2004 deposition; did not discuss the new claims filed after the
28 | 2004 deposition; and did not even seek to reopen Bryant's deposition for all

1   purposes -- it moved to overrule specific instructions. Bryant fails to cite a single

2   authority to support his apparent assertion that a party must bring all arguments

3   relating to discovery disputes with a single witness at the same time. Further, any

4   motion to reopen Bryant's deposition for all purposes in February 2007 would have

5   been premature, given that defendants have produced more than 185,000 pages of

6   documents since that motion was filed, including much of the key evidence

7   discussed in Mattel's Motion, with less than 10,000 pages produced before Mattel

8   filed its motion in February 2007.

9         Finally, Bryant's argument that Mattel is not entitled to discover Bryant's own

10   understanding of facts, events and information known to him because such

11   understandings and information are privileged is remarkable. Bryant fails to even

12   acknowledge the fact that he has argued the exact opposite in his motions and

13   persuaded the Discovery Master of his positions. Bryant asserts that Mattel moved

14   on comparable instructions in its February motion, but in fact Mattel made clear it

15   was *not* seeking a ruling on those privilege issues in its February motion precisely

16   because of the understanding between the parties that Bryant later chose to abandon.

17   The additional instructions listed in Mattel's Separate Statement should be

18   overruled.

19                                  **Argument**

20   **I.     THE COURT SHOULD ORDER BRYANT'S DEPOSITION**

21        **A.     There Is Good Reason to Further Depose Bryant**

22        Bryant concedes that Mattel need only show "good reason" to reopen his

23   deposition.[1] Mattel clearly has made that showing here. In fact, there are three

24   independent reasons why Bryant's deposition should be reopened: (1) the wealth of

25

26   [1]   See Bryant's Opposition to Mattel's Motion for Additional Time and/or to

27   Reopen Carter Bryant's Deposition for All Purposes and to Overrule Additional
     Instructions at the Deposition (the "Opposition") at 6:21-23.

28

1   new evidence that has come to light after Bryant's first deposition; (2) the multiple

2   new claims and parties added to this case after Bryant's first deposition; and (3)

3   defense counsel's lengthy speaking objections and coaching of Bryant, which

4   obstructed the deposition and prevented a fair examination.

5         Each of these reasons independently justifies reopening a deposition, even in

6   an ordinary case involving an ordinary witness. New evidence justifies reopening a

7   deposition. See, e.g., Keck v. Union Bank of Switzerland, 1997 WL 411931, at *1

8   (S.D.N.Y. 1997) (permitting plaintiff to reopen depositions of witnesses because

9   "the request to reopen the questioning is based on new information"); Ritchie v.

10   U.S., 2004 WL 1161171, at *3 (N.D. Cal. 2004) (same). New claims justify

11   reopening a deposition. See e.g., Collins v. International Dairy Queen, 189 F.R.D.

12   496, 498 (M.D. Ga. 1999) (granting defendants' request to reopen depositions based

13   on new claims in amended complaint: "Because of the time that has elapsed, the

14   addition of new claims, and the evident knowledge of the witnesses in particular

15   areas, re-examination of the two witnesses is likely to provide additional

16   information not obtainable at the first depositions."); Tillery v. Darby-Rogers Co.,

17   2006 WL 2735162, at *5 (M.D. Fla. 2006) (same). And, improper deposition

18   conduct justifies reopening a deposition. See, e.g., Burrows v. Redbud Community

19   Hosp. Dist., 187 F.R.D. 606, 613 (N.D. Cal. 1998) ("allow[ing] plaintiffs to

20   complete the deposition because defendants' counsel impermissibly coached [the

21   witness]"); Stempler v. Collect America, Ltd., 2000 WL 288377, at *1 (E.D. La.

22   2000) (same). This is all the more true here: Bryant is no ordinary witness -- he is

23   the *most important* witness in this litigation -- and this is no ordinary case --

24   according to defendants, it is worth *billions* of dollars.[2] If more time were ever

25   appropriate with any witness, it is with Bryant here.

26

27     [2]   See ABC Nightline Transcript, attached as Exhibit 2 to the concurrently filed
Supplemental Declaration of B. Dylan Proctor ("Supp. Proctor Dec."), at M

28       (footnote continued)

1        With one exception, Bryant fails to address or distinguish any of the many

2   cases Mattel cited in its Motion supporting the reopening of his deposition.  Further,

3   virtually all the authorities Bryant relies on actually favor Mattel.  See Dixon v.

4   Certainteed Corp., 164 F.R.D. 685, 692 (D. Kan. 1996) (*allowing* plaintiff to depose

5   witness a second time because defendant failed to conduct reasonable investigation

6   to uncover relevant documents prior to the first deposition);[3] Fresenius Medical

7   Care Holdings, Inc. v. Roxane Laboratories, Inc., 2007 WL 764302, at *2 (S.D.

8   Ohio 2007) (*allowing* second deposition because defendant failed to produce

9   requested documents prior to witness' first deposition); 7 James W. Moore et al.,

10  Moore's Federal Practice-Civil § 30.05[1][c], 30-31 ("Second deposition may be

11  justified in light of disclosure or discovery after the first deposition.").  The only

12  case Bryant cites where the court actually refused to allow a second deposition,

13  Lowery v. Noble Drilling Corp., 1997 WL 675328 (E.D. La. 1997), did so only

14  because the new evidence defendant sought to depose plaintiff on was actually

15  produced at plaintiff's first deposition, and defendant thus had an opportunity to

16  depose plaintiff on that evidence at that time.  This obviously is not the situation

17  here, where the new evidence Mattel seeks to question Bryant about was not

18  produced until long after Bryant's deposition was taken and where that new

19  evidence is voluminous and significant.

20

21

22

23  _____

    0062152.  Another article reports that: "MGA Entertainment says worldwide
24  revenue for all Bratz products -- dolls, CDs, video games, DVDs, etc. -- came to $2
25  billion for the 13-month period straddling last holiday season."  Supp. Proctor Dec.,
    Exh. 9; see also id., Exh. 10.
26  [3]  Here, defendants did not merely fail to conduct a reasonable investigation, but
27  knowingly withheld relevant documents until compelled.  Thus, there is even more
    reason to allow further questioning here.
28

1.   **The Court Should Reopen Bryant's Deposition Based on New Claims Filed Since His Deposition Was Taken**

Mattel cited a number of authorities in its motion for the straightforward, logical proposition that witnesses who have already sat for deposition can be questioned about new claims which are later added to a case. With one exception, Bryant fails to even acknowledge these authorities. Bryant also fails to provide any authority or even reasoning supporting his assertion that he should not be deposed on the new claims in this case.

Mattel's counterclaims present a variety of new issues about Bryant's acts of copyright infringement, his RICO violations, the violations of his co-defendants, and other new issues. Mattel's copyright infringement claim against Bryant alone relates to *hundreds* of products.[4] Bryant was also personally involved, either as sender or recipient, in approximately 100 of the predicate acts of mail and wire fraud alleged in Mattel's Second Amended Answer and Counterclaims.[5] Mattel is entitled to question Bryant about these predicate acts.  Mattel is also entitled to question Bryant about MGA's unfair competition claims against Mattel, which MGA claims are worth "billions of dollars" and about which MGA claims Bryant has unique and almost exclusive knowledge.[6] Bryant offers no argument in opposition on any of these points.

---

[4]   See MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz Ownership in Phase One at 3:12-19 (italics in original), Supp. Proctor Dec. Exh. 8.
[5]   See Mattel's Second Amended Answer & Counterclaims, Exhibit C.
[6]   See Supp. Proctor Dec. Exh. 2, at M 0062152. MGA witnesses have declared that there are more than 200 Bratz products allegedly infringed by Mattel, and that Carter Bryant is one of only two "people who know what the concept is and who see the early product drawings" with respect to many of these products. See Declaration of Patricia Perrier in Support of MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz Ownership in Phase One, ¶ 2; Declaration of Paula Garcia in Support of MGA's Opposition to Mattel's Motion to Compel, dated February 9, 2007, ¶ 6 (emphasis in original), 08/01/07 Proctor Dec. ¶¶ 19-20 & Exhs. 19-20.

1    Moreover, just last week, Bryant filed his answer to Mattel's Counterclaims in

2  MGA's case, putting at issue 22 alleged affirmative defenses.[7]  Many of these are

3  wholly new and were not previously pleaded, including standing, duress, *res*

4  *judicata* and copyright invalidity, among others.  Mattel needs substantial additional

5  time to question Bryant about the new claims, counterclaims and affirmative

6  defenses added in the MGA v. Mattel case.

7    Bryant suggests that he should not be deposed on these new claims and issues

8  because Mattel has had "ample opportunity" to obtain the requested discovery *via* its

9  Requests for Admission.[8]  That is nonsensical.  Requests for admission are not

10  adequate replacements for the opportunity to question a witness face to face, with

11  follow up questions and cross-examination.  Bryant also asserts that Mattel miscited

12  Keithley v. Homestore.Com, Inc., 2006 WL 1646119 (N.D. Cal. 2006) -- the only

13  case he discusses -- because that case involved new claims added in a separate case.

14  Even if there were a "second case" requirement (which there is not, as the many

15  other cases Mattel cited show), there is such a "second case" here.  All the new

16  claims at issue now were filed in the in the MGA v. Mattel case, whereas Bryant's

17  prior deposition was taken in the Mattel v. Bryant case.

18    Bryant has no genuine opposition here.  Mattel's motion should be granted.

19    **2.    The Court Should Reopen Bryant's Deposition Based on New**

20    **Evidence Produced to Mattel Since His Deposition Was**

21    **Taken**

22    As Mattel showed in its motion, a party's failure to produce requested

23  evidence prior to its deposition is "good cause" for reopening that deposition.  See,

24  e.g., Robins v. Scholastic Book Fairs, 928 F. Supp. 1027, 1036 (D. Or. 1996)

25  (finding "that the second set of depositions of these individuals was necessary

26

27    [7]  Supp. Proctor Dec. Exh. 11.

28    [8]  See Opposition at 13.

1  because they had to be questioned about additional documents that Defendant

2  produced after the first set of depositions").  The Discovery Master recently

3  confirmed as much, holding that production of documents after a witness' deposition

4  is "justification for resuming [the witness'] deposition."[9]  Even Bryant's authorities

5  make this clear.  See, e.g., Fresenius Medical Care Holdings, Inc. v. Roxane

6  Laboratories, Inc., 2007 WL 764302, at *2 (S.D. Ohio 2007) (cited by Bryant)

7  (allowing second deposition because defendant failed to produce requested

8  documents prior to first deposition).

9       **(a)**     **Mattel Does Not Seek to Readjudicate Its February 2007**

10                **Motion**

11       Notwithstanding this clear, undisputed law, Bryant argues that the Court

12  should simply ignore all the key new evidence and hundreds of thousands of

13  documents defendants recently produced because Mattel purportedly could have

14  raised this issue in its February 2007 motion.  That is a red herring.

15       First, the predicate for the argument is simply incorrect.  Contrary to Bryant's

16  representations, much of the evidence Mattel now seeks to question Bryant about

17  was not produced to Mattel by defendants until *after* Mattel filed its February 2007

18  motion.  For example: (1) Bryant's fee agreement, which reflects that MGA is

19  paying Bryant's legal fees at its discretion, was not produced by Bryant until June

20  28, 2007; (2) Bryant's Bratz design drawings, dated September 19, 1999, were not

21  produced by Bryant until March 2, 2007; (3) Bryant did not make the originals of

22  key documents in this case available for inspection until May and June 2007; (4)

23  Bryant did not produce the mirror image of his desktop hard drive (revealing his use

24  of "Evidence Eliminator" software) until April 2007; and (5) Bryant's declaration

25

26  [9]  See Order Granting Mattel's Motion for an Extension of Time to Depose Paula

27  Garcia in Her Individual Capacity and as a 30(b)(6) Designee, dated August 14,

2007 ("Garcia Order"), at 12, n. 6, Supp. Proctor Dec. Exh. 4.

28

1    containing false dates about the timing of Bratz's release was not produced by MGA

2    until June 19, 2007.[10]  In fact, Bryant is *still* producing new documents that Mattel is

3    entitled to question him about.  Just two days ago, for example, Bryant first

4    produced a fee agreement between his counsel, Keker & Van Nest LLP, and MGA,

5    relating to the Keker firm's representation of Bryant, after previously representing

6    that there was no written fee agreement between Keker and MGA.[11]

7          Moreover, Mattel's February 2007 motion was entirely different from the

8    motion at bar.  In that motion, Mattel did not discuss the new evidence produced

9    after Bryant's November 2004 deposition; did not discuss the new claims filed after

10   the 2004 deposition; and did not even seek to reopen Bryant's deposition for all

11   purposes.  It moved to overrule specific instructions.  For relief, Mattel sought only

12   to overrule specific instructions not to answer and monetary sanctions.[12]  Thus,

13   Bryant's assertion that the Discovery Master has somehow already considered

14   Mattel's current request to reopen Bryant's deposition and rejected it is false.  Mattel

15   does not seek to "second-guess" the March 7, 2007 Order because that Order never

16   addressed the points raised by this motion.

17         Finally, Bryant tellingly cites *no* authority whatsoever for his apparent

18   assertion that a party must bring all arguments relating to any and all discovery

19   disputes with a single witness at the same time.  The <u>Federal Rules</u> do not so

20   provide.  Bryant's "do-over" argument lacks merit.

21         **(b)    <u>Bryant's "Phased Discovery" Argument Is Misleading</u>**

22         Bryant also argues that the Court should ignore all the new evidence that has

23   been produced since his deposition in 2004 because he proposed "phased discovery"

24

25   [10]  <u>See</u> 08/01/07 Proctor Dec. Exhs. 1, 7; Declaration of Michael T. Zeller, dated August 1, 2007 ("Zeller Dec."), ¶¶ 13, 16 & Exh. 13.

26   [11]  <u>See</u> Supp. Proctor Dec. ¶ 2 & Exh. 1.

27   [12]  <u>See</u> Mattel's [Proposed] Order regarding February Motion, dated February 1, 2007, Supp. Proctor Dec. Exh. 6.

28

1   before that deposition, and Mattel rejected that proposal.[13]   That is both irrelevant

2   and misleading.  The issue at that time was whether Bryant should be deposed

3   before *Mattel* produced all the documents Bryant requested, not *vice versa*.  See

4   Declaration of Christa M. Anderson in support of Bryant's Opposition, Exh. 2 at

5   2:12-13 ("Once *Mattel* complies with its discovery obligations and fully produces

6   documents in response to Bryant's document demands, Bryant will submit to

7   deposition") (emphasis added); Id. at 10:4-5 ("Bryant's counsel is now declining to

8   produce Bryant because of *Mattel's* failure to produce documents").  Bryant's

9   purported concern was that he would be sandbagged if Mattel questioned him about

10   documents it had not produced, on which Bryant could not be prepared.[14]  Nowhere

11   did he reveal that *he* was actually withholding tens of thousands pages of documents

12   Mattel had requested.

13       Moreover, even if Bryant had argued that, he offers no authority for the

14   proposition that Mattel somehow waived its discovery rights by proceeding with his

15   deposition.  It did not.  Bryant withheld requested documents at his own peril, not at

16   Mattel's.  As the Discovery Master recently held with respect to Paula Garcia's

17   deposition, after MGA argued that it was supposedly Mattel's tactical choice to

18   depose Garcia despite having received 7,600 pages of previously withheld MGA

19   documents on the eve of her deposition, "[r]egardless of where the fault lies for the

20   belated document production, Mattel is entitled to a fair examination of the

21   deponent" regarding these documents."[15]

22

23

24

25

26   [13]  See Opposition at 3.

27   [14]  See, e.g., id. at 2:12-13, 10:4-5.

28   [15]  See Garcia Order at 12:2-3, Supp. Proctor Dec. Exh. 4.

07209/2198506.2

(c)   **The Newly Produced Evidence Justifies Reopening Bryant's Deposition**

(i)   **Bryant Ignores Much of the New Evidence Mattel Cites**

When it comes to the actual new evidence set forth in Mattel's Motion, Bryant wholly ignores much of it because it was produced by "another party." That other party is MGA, whose interests defendants have claimed are aligned with those of Bryant and who helped to defend Bryant's deposition. Bryant fails to offer any authority for the proposition that a witness' deposition cannot be reopened based on new evidence produced by his co-defendant. Bryant cannot evade questioning simply because this evidence was withheld by MGA, the party with which Bryant has a joint defense agreement and which is paying his attorneys' fees.[16]

(ii)   **Bryant's Arguments About the Limited Evidence He Does Choose to Address Are Unavailing**

Where he does at least acknowledge the new evidence at issue, Bryant's arguments clearly lack merit. First, Bryant does not deny that "Evidence Eliminator" software was installed on his computer, nor does he contend this program has any legitimate purpose. Nor does he deny the program was run, either before or after this lawsuit was filed, or both. Instead, after previously asserting that

---

[16] This evidence, which Bryant ignores, includes among the other 175,000 documents recently produced by MGA: (1) the fax from Bryant to MGA from September 14, 2000, in which Bryant states that he cannot ask Mattel's Human Resources Department any more questions about his contract with Mattel "without risking suspicion"; (2) the October 10, 2000 e-mails between Isaac Larian, Victoria O'Connor and Paula Garcia, reflecting that Bryant worked on Bratz with MGA "on average about 4 hours a day," starting at least six weeks before he left Mattel; (3) the invoices showing that one vendor alone billed MGA for 169 hours of development services on Bratz that were performed before Bryant left Mattel; and (4) the Bryant declaration that contains false dates about the timing of Bratz's release.

1  the desktop had no "relevant" or "responsive" documents,[17] and after then claiming

2  that he could not locate it,[18] Bryant now claims he did not spoliate evidence merely

3  because the "Evidence Eliminator" program was installed on his computer in July

4  2002, before this lawsuit was filed.[19]

5      Why Bryant believes that furthers his current cause is unclear. If anything, it

6  undermines him. The motion at bar is not about spoliation. Mattel is entitled to

7  question Bryant regarding his possession and use of evidence-destroying software.

8  Bryant argues that Mattel should not be allowed to do so because he installed the

9  software before Mattel discovered his theft of the Bratz designs and sued, but that

10 shows exactly why Mattel needs discovery on this issue -- to at least learn Bryant's

11 story about how and why he installed the program, and when and why he ran it.

12 That Bryant claims to have an excuse or explanation for the software does not

13 justify the summary denial of discovery. To the contrary, it justifies it.

14     Second, any claim that defendants produced the Bratz drawings listed in this

15 motion prior to Bryant's deposition is false.[20] The Bratz drawings produced by

16 Bryant in March 2007 bear handwritten dates of September 19, 1999. Mattel has

17 never had an opportunity to question Bryant about these dates.[21] It is entitled to do

18 so.

19     Third, Bryant does not deny that he refused to allow Mattel to inspect key

20 original documents, including Bratz drawings, until May and June 2007, though he

21

22

23   [17] 08/01/07 Zeller Dec. ¶ 15, Exh. 11; see generally Motion at 6:1-11.

24   [18] 08/01/07 Zeller Dec. ¶ 16, Exh. 13; see generally Motion at 6:1-11.
  [19] See Opposition at III(B)(4).

25   [20] See Opposition at 10-11.
  [21] The testimony cited by Bryant shows that Mattel never asked about the

26 September 19, 1999 dates on the Bratz drawings. See Bryant Depo. at 151:12-

27 153:5, Supp. Proctor Dec. Exh. 3. Obviously, Mattel could not do so because, at
that time, this evidence had not yet been produced.

28

1   promised to produce them at his November 2004 deposition.[22]  In fact, Bryant fails

2   to even acknowledge this fact.

3        Last, Bryant does not dispute that Mattel is entitled to question him regarding

4   his fee agreements with MGA and his lawyers.  He argues Mattel is already entitled

5   to question him about his fee agreements, presumably including the one he produced

6   just two days ago.[23]  Hence, there is no real dispute here.

7                    3.    **The Court Should Reopen Bryant's Deposition Based on**

8                          **Defense Counsels' Coaching and Obstructionist Tactics at**

9                          **the Deposition**

10       Bryant does not deny that defense counsel engaged in coaching and

11  obstructionist tactics at his deposition, preventing a full and fair examination.  Nor

12  does he deny that such misconduct by counsel at deposition is grounds to reopen the

13  deposition.  See, e.g., Burrows v. Redbud Community Hosp. Dist., 187 F.R.D. 606,

14  613 (N.D. Cal. 1998) ("allow[ing] plaintiffs to complete the deposition because

15  defendants' counsel impermissibly coached [the witness]"); Stempler v. Collect

16  America, Ltd., 2000 WL 288377, at *1 (E.D. La. 2000) (same); Advisory

17  Committee Notes on the 2000 Amendments to Fed. R. Civ. P. 30(d) ("if deponent or

18  another person impedes or delays the examination, the court *must* authorize extra

19  time") (emphasis added).  The Court should do so here.

20       **B.    Bryant Bears The Burden Of Proof Under Rule 26(b)(2)**

21       As shown above, Mattel clearly has shown "good reason" to reopen Bryant's

22  deposition, as Bryant says it must.  However, the standard is not even that high.

23  "Leave to conduct a second deposition should ordinarily be granted."  Boston

24  Edison Co. v. U.S., 75 Fed. Cl. 557, 566 (Fed. Cl. 2007); Judicial Watch, Inc. v.

25  U.S. Dept. of Commerce, 34 F. Supp. 2d 47, 54 (D.D.C. 1998) (same).  Indeed, the

26

27  [22]  See Motion at Background (C).
    [23]  See Opposition at III(B)(2).

28

07209/2198506.2

-13-

MATTEL'S REPLY ISO MOTION RE: BRYANT

1  burden falls on Bryant to show that additional time should not be granted under <u>Fed.</u>

2  <u>R. Civ. P.</u> 26(b)(2), which

3      requires the party opposing the second deposition to demonstrate that:
       (1) the [second deposition] sought is unreasonably cumulative or

4      duplicative, or is obtainable from another source that is more
       convenient, less burdensome, or less expensive; (2) the party seeking

5      [second deposition] has had ample opportunity to obtain the
       information sought; or (3) the burden or expense of the proposed

6      [second deposition] outweighs its likely benefit, taking into account

7      the needs of the case, the amount in controversy, the parties' resources,
       the importance of the issues at stake in the litigation, and the

8      importance of the proposed discovery in resolving the issues.

9

10  7 James W. Moore et al., <u>Moore's Federal Practice-Civil</u> § 30.05[1][c];[24] <u>see</u> <u>Zamora</u>

11  <u>v. D'Arrigo Bro. Co. of Cal.</u>, 2006 WL 3227870, at *1 (N.D. Cal. 2006) (accord); <u>In</u>

12  <u>re Enron Corp.</u>, 349 B.R. 115, 128-129 (Bankr. S.D.N.Y. 2006) (same); <u>Collins v.</u>

13  <u>International Dairy Queen</u>, 189 F.R.D. 496, 498  (M.D. Ga. 1999) (allowing second

14  depositions because party opposing discovery failed to satisfy factors enumerated in

15  <u>Rule</u> 26(b)(2)).  Bryant clearly has not met this burden of proof.[25]

16      The Discovery Master recently ruled that Mattel is entitled to an additional 14

17  hours to question Paula Garcia because she is "one of the most important witnesses

18  in this case" and because MGA produced approximately 7,600 pages of documents

19  just two days prior to her deposition (among other reasons).[26]  Here, these factors

20  weigh even more heavily in favor of Mattel.  Bryant is the most important witness in

21  this case, bar none, and defendants have produced more than 185,000 pages of

22

23

24      [24]  Bryant relies upon this treatise.  <u>See</u> Opposition, at 6, n. 22

25      [25]  The <u>Rule</u> 26(b)(2) standard applies because, under <u>Rule</u> 30(d)(2), "[t]he court
        must allow additional time consistent with Rule 26(b)(2) if needed for a fair

26      examination of the deponent or if the deponent or another person, or other

27      circumstance, impedes or delays the examination."
        [26]  <u>See</u> Garcia Order at IV(A), Supp. Proctor Dec. Exh. 4.

28

1   documents since his deposition.[27]   Mattel should be granted the full 21 hours it

2   requests.

### 1. The Requested Discovery Is Not Unreasonably Cumulative or Duplicative Nor Has Mattel Had "Ample Opportunity" to Obtain the Requested Discovery

6        Bryant's knowledge about relevant matters is vast and unique.  Deposing him

7   on the new claims in this case, and on old claims based on new evidence, would be

8   far from duplicative or cumulative.  Indeed, Bryant hardly even suggests otherwise.

9   He does not assert that the discovery Mattel now seeks is obtainable from another

10  source that is more convenient, less burdensome or less expensive.  There is no

11  other source for this discovery.  MGA and Bryant themselves acknowledged as

12  much in their protective order motion with respect to "unreleased" Bratz products.[28]

13       Nor has Mattel had "ample opportunity" to obtain the discovery sought here

14  for the simple reason that the claims had not yet been filed and the documents had

15  been suppressed when Bryant's deposition was taken.  Bryant argues that Mattel has

16  served requests for admissions, but written discovery does not replace the

17  opportunity to question a key witness face to face.

### 2. The Benefits of Reopening Bryant's Deposition Clearly Outweigh Any Burdens

20       This factor strongly favors Mattel.  Bryant does not dispute that he is the most

21  important witness in this case.  For instance, MGA's Vice President of Product

22  Design and Development, Paula Garcia, has stated that Bryant is one of only two

23  "people who know what the concept is and who see the early product drawings"

---

27   Supp. Proctor Dec. ¶ 13.
28   See 08/01/07 Proctor Dec. Exh. 19.

1  with respect to many Bratz products.[29]  Bryant's knowledge about Mattel's claims

2  against him is obvious.  Mattel needs this testimony and cannot obtain it from any

3  other source.  Defendants have themselves asserted that the amount in controversy

4  here is in the "billions of dollars."[30]

5       In contrast, the burden or expense of the proposed discovery is slight,

6  particularly given the parties' resources.  MGA is a large international company, and

7  it is paying Bryant's attorneys fees.  Further, the Discovery Master has already

8  ordered Bryant to appear for deposition in Los Angeles.[31]  Thus, Bryant will have to

9  appear for questioning in Los Angeles in any case.  Clearly, the amount in

10  controversy (billions of dollars), the needs of the case and the importance of the

11  proposed discovery (Bryant is the most important witness) far outweigh any

12  purported burden or expense.

13  **II.  THE COURT SHOULD OVERRULE ADDITIONAL INSTRUCTIONS**

14  **NOT TO ANSWER**

15       The Discovery Master has already ruled that a witness' own understanding of

16  facts, events and information known to a witness are discoverable.[32]  Bryant has also

17  previously argued that "the mere fact that a witness reveals facts to a lawyer or

18  learns facts from a lawyer does not make such facts privileged."[33]  Yet, the

19

20

21  [29]   Declaration of Paula Garcia in Support of MGA's Opposition to Mattel's
       Motion to Compel, dated February 9, 2007, ¶ 6 (emphasis in original), 08/01/07
22  Proctor Dec. Exh. 19.
       [30]   See Supp. Proctor Dec. Exhs. 2, 9, 10.
23     [31]   See March 7, 2007 Order, 08/01/07 Proctor Dec. Exh. 15.
       [32]   See Motion at Background (F).
24     [33]   See, e.g., Bryant's Motion to Overrule Instructions Not to Answer During the
25  Deposition of Alan Kaye, dated March 28, 2007, at 17:10-16 (emphasis in the
       original); Bryant's Motion to Overrule Instructions Not to Answer During the
26  Deposition of Ann Driskill, dated March 28, 2007, at 15-16, 08/01/07 Proctor Dec.
27  Exhs. 21, 23.

28

1  Opposition completely ignores both this law of the case and Bryant's own prior

2  assertions.  Indeed, here as well, Bryant offers virtually no opposition on the merits.

3    Mattel has moved to overrule 12 instructions that fall squarely within the

4  Court's prior ruling on the Kaye deposition motion.[34]  Since Mattel filed its Motion,

5  the Discovery Master again ruled that the attorney-client privilege "does not extend

6  to the facts underlying privileged communications."  Garcia Order, at 12:20-22; see

7  id. at 13:16-14:4 (holding that a question that "calls for the disclosure of facts only"

8  is proper).  That is because the mere fact that a witness reveals facts to a lawyer or

---

[34]  For example, the Discovery Master overruled the following comparable
instructions given at Mr. Kaye's deposition:

 Page: 80:3-21
 Q: Going back to the first page for a minute.  Do you know if
anyone on behalf of Mattel ever talked to any of the people on the
first page for Carter Bryant?
 . . .
 Mr. Zeller:  You should exclude from your answer any
information that you received from counsel.
 The Witness:  I believe its information received from counsel.
 Q: By Mr. Jacoby:  Exclusively?
 A: Exclusively.
 Page: 98:5-19
 Mr. Jacoby:  Can I have it -- can I have it read back please.
 (Record read as follows:  "Question: Do you have any
understanding as to whether Mr. Bryant, Quote, Misappropriated
intellectual property, close quote?")
 Mr. Zeller:  Two things.  One is I object to the form of the
question as lack of foundation.  Second, to the extent that the
information that you have is solely as the result of your
communications with counsel, you should exclude that from your
answer.
 The Witness:  The information is a result of my discussions with
counsel.
Bryant's Separate Statement in Support of the Kaye Motion, Instruction Nos. 15, 17;
May 4, 2007 Order Granting in Part Bryant's Motion to Overrule Instructions Not to
Answer During the Deposition of Alan Kaye, ¶ 1 & Attachment A, 08/01/07 Proctor
Dec. Exhs. 22, 25.

1   learns facts from a lawyer does not make the facts themselves privileged. "[I]t is
2   only the communications that are subject to attorney-client privilege, and not the
3   foundational facts concerning the communication, or the underlying, independent
4   facts." <u>AMCO Ins. Co. v. Madera Quality Nut LLC</u>, 2006 WL 931437, at *18 (E.D.
5   Cal. 2006); <u>Resolution Trust Corp. v. Dabney</u>, 73 F.3d 262, 266 (10th Cir. 1995)
6   ("Because the work product doctrine is intended only to guard against divulging the
7   attorney's strategies and legal impressions, it does not protect facts concerning the
8   creation of work product or facts contained within work product").

9        Bryant argues that Mattel's inclusion of a certain instruction in its prior
10   motion shows there never was any "understanding" between the parties about facts
11   learned from counsel.  However, Bryant does not disclose that Mattel explicitly
12   stated that it was not seeking an order overruling such instructions in its prior
13   motion papers.[35]  Bryant asserts that Mattel's prior Objection No. 34 shows that the
14   parties never had any such understanding, but omits Mattel's reply in support of its
15   Objection No. 34, which provided that the instruction was only improper because
16   the question sought "a yes or no answer that could not possibly reveal privileged
17   communications or facts learned only through counsel."[36]

18        In any case, the fact remains that the instructions set forth in the concurrently
19   filed Separate Statement have not been previously ruled on.  Bryant cites no
20   authority suggesting they should not be ruled on now.  They should be, and they
21   should be overruled.

22

23   _____

[35]   Consolidated Separate Statement, Mattel's Reply in Support of Objection No.
24   33, Supp. Proctor Dec. Exh. 7.  Mattel also withdrew Objection Nos. 24, 26-27, 31-
25   32, and 36 from its earlier motion after they were inadvertently included.  <u>See</u>
     Separate Statement in support of Mattel's February 2007 Motion, Supp. Proctor Dec.
26   Exh. 5; March 7, 2007 Order, 08/01/07 Proctor Dec. Exh. 15.
27   [36]   <u>See</u> Consolidated Separate Statement, Mattel's Reply in Support of Objection
     No. 34, at 53:17-21, Supp. Proctor Dec. Exh. 7.
28

1

## Conclusion

2      For the foregoing reasons, Mattel respectfully requests that the Court grant

3  Mattel's Motion for Additional Time and/or to Reopen Bryant's Deposition for All

4  Purposes and to Overrule Additional Instructions Not to Answer at the Deposition in

5  its entirety.

6

7  DATED:  August 22, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

8

9                                   By

10                                     B. Dylan Proctor
                                       Attorneys for Plaintiff Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-19-

MATTEL'S REPLY ISO MOTION RE: BRYANT

# EXHIBIT 7

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

CONFORMED COPY

Attorneys for Plaintiff, Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

**CONFIDENTIAL**

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

**DISCOVERY MATTER**

**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]**

CONSOLIDATED SEPARATE STATEMENT IN SUPPORT OF MOTION OF PLAINTIFF MATTEL INC. FOR ADDITIONAL TIME AND/OR TO REOPEN THE DEPOSITION OF CARTER BRYANT FOR ALL PURPOSES AND TO OVERRULE ADDITIONAL INSTRUCTIONS NOT TO ANSWER AT THE DEPOSITION

Date:   TBA
Time:   TBA
Place:  Telephonic

**Phase 1**
Discovery Cut-Off:     January 14, 2008
Pre-Trial Conference:  April 7, 2008
Trial Date:            April 29, 2008

**Phase 2**
Discovery Cut-Off:     March 3, 2008
Pre-Trial Conference:  June 2, 2008
Trial Date:            July 1, 2008

LODGED
CLERK, U.S. DISTRICT COURT

2 3 200?

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION    BY DEP

07209/2197053.3

CONSOLIDATED SEPARATE STATEMENT

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
6   Facsimile: (213) 443-3100

7   Attorneys for Plaintiff, Mattel, Inc.

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                      EASTERN DIVISION

11  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

12            Plaintiff,                  Consolidated with
                                          Case No. CV 04-09059
13       vs.                             Case No. CV 05-02727

14  MATTEL, INC., a Delaware             **DISCOVERY MATTER**
    corporation,
15                                        **[To Be Heard By Discovery Master
            Defendant.                    Hon. Edward Infante (Ret.)]**
16
    ─────────────────────────────        CONSOLIDATED SEPARATE
17  AND CONSOLIDATED ACTIONS             STATEMENT IN SUPPORT OF
                                          MOTION OF PLAINTIFF MATTEL
18                                        INC. FOR ADDITIONAL TIME
                                          AND/OR TO REOPEN THE
19                                        DEPOSITION OF CARTER BRYANT
    **CONFIDENTIAL**                      FOR ALL PURPOSES AND TO
20                                        OVERRULE ADDITIONAL
    **FILED UNDER SEAL PURSUANT**         INSTRUCTIONS NOT TO ANSWER
21  **TO PROTECTIVE ORDER**              AT THE DEPOSITION

22                                        Date:   TBA
                                          Time:   TBA
23                                        Place:  Telephonic

24                                        **Phase 1**
                                          Discovery Cut-Off:   January 14, 2008
25                                        Pre-Trial Conference: April 7, 2008
                                          Trial Date:          April 29, 2008
26
                                          **Phase 2**
27                                        Discovery Cut-Off:   March 3, 2008
                                          Pre-Trial Conference: June 2, 2008
28                                        Trial Date:          July 1, 2008

07209/2197053.3

                          CONSOLIDATED SEPARATE STATEMENT

1   Mattel, Inc. respectfully submits this reply to Carter Bryant's Responses

2   to Separate Statement In Support of Mattel's Motion for Additional Time and/or to

3   Reopen the Deposition of Carter Bryant for All Purposes and to Overrule Additional

4   Instructions Not to Answer at the Deposition.

5   For the Discovery Master's convenience, this Consolidated Separate

6   Statement includes the text of the relevant portions of the deposition and Bryant's

7   arguments regarding the same verbatim, followed by Mattel's replies.

8   **MATTEL OBJECTION NO. 1.**       **PAGE: 92:20-93:18**

9   This instruction was inadvertently included and is withdrawn.

10  **MATTEL OBJECTION NO. 2.**       **PAGE: 246:19 - 247:15**

11  Q      Do you know whether anybody has looked at that computer to

12  see if there's any information on it relating to Bratz?

13  MR. WICKHAM: Objection, attorney-client privilege, attorney work

14  product. To the extent you have any understanding from your

15  attorneys, I instruct you not to respond.

16  A      Okay.

17  Q      (By Mr. Quinn) Put you in a pickle, huh? Do you have anything

18  you can tell me?

19  THE WITNESS: Can you repeat your objection Doug? I'm sorry.

20  MR. WICKHAM: If - if you only have information on that subject

21  from your attorneys, then you should not respond to the question.

22  A      Okay. Then I'm not going to respond.

23  Q      (By Mr. Quinn) And that's because of your lawyer's instruction?

24  A      Yes.

25  **BRYANT'S RESPONSE TO OBJECTION NO. 2**:

26  There is no basis for Mattel's objection to this portion of the deposition

27  testimony. Counsel excluded the following excerpt which immediately followed the

28  above testimony:

07209/2197053.3

1

1  Q    What you know on that subject you learned from your lawyers?

2  A    Yes.

Bryant Depo. 247:16-18.

The attorney work product privilege "protect[s] against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed. R. Civ. P. 26(b)(3). The attorney-client privilege provides protection from disclosure of confidential communications between an attorney and his or her client that are related to the subject matter of the representation. U.S. v. Martin, 278 F.3d 988, 999-1000 (9th Cir. 2002). Under Fed. R. Civ. P. 30(d)(1), counsel may instruct deponent not to respond when necessary in order to protect a privilege. Here, counsel made clear that that his instruction not to respond was limited, and only applied to the extent that the response was based on privileged communication. In the deposition testimony omitted by Mattel, Mr. Bryant stated that no portion of his answer would be outside the realm of the attorney-client or work product privilege. Thus, nothing further could be gained by compelling Mr. Bryant to respond.

**MATTEL'S REPLY IN SUPPORT OF OBJECTION NO. 2:**

The facts and information known to Mr. Bryant are discoverable, and counsel prevented Mr. Bryant from disclosing them here. The attorney-client privilege protects only the substance of confidential communications between attorney and client. See, e.g., Clarke v. American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992); McKay v. C.I.R., 886 F.2d 1237, 1238 (9th Cir. 1989); Matter of Fischel, 557 F. 2d 209, 211-212 (9th Cir. 1977) ("The privilege does not extend . . . beyond the substance of the client's confidential communications to the attorney . . . It will not conceal everything said and done in connection with an attorney's legal representation of a client in a matter."). The question here clearly did not call for disclosure of privileged communications.

2

CONSOLIDATED SEPARATE STATEMENT

1 "[W]hether anybody has looked at that computer to see if there's any information on
2 it relating to Bratz" requires a simple "yes" or "no" answer that does not call for the
3 disclosure of the substance of any confidential attorney-client communications.

4     Nor did this question call for the disclosure of attorney "work product."  The
5 mere fact that a witness reveals facts to a lawyer or learns facts from a lawyer does
6 not make *the facts themselves* privileged.  Resolution Trust Corp. v. Dabney, 73
7 F.3d 262, 266 (10th Cir. 1995) ("Because the work product doctrine is intended only
8 to guard against divulging the attorney's strategies and legal impressions, it does not
9 protect facts concerning the creation of work product or facts contained within work
10 product"); Garcia v. City of El Centro, 214 F.R.D. 587, 591 (S.D. Cal. 2003) (same);
11 Nutmeg Ins. Co. v. Atwell, Vogel & Sterling A Div. of Equifax Services, Inc., 120
12 F.R.D. 504, 509 (W.D. La. 1988) ("The courts have consistently held that the work-
13 product concept furnishes no shield against discovery, by interrogatories or by
14 deposition, *of the facts* that the adverse party's lawyer has learned, or the persons
15 from whom he has learned such facts, or the existence or non-existence of
16 documents, even though the documents themselves may not be subject to
17 discovery.") (citing 8 Wright & Miller, Fed. Practice and Procedure § 2023 (1970)
18 (emphasis in the original)); see also AMCO Ins. Co. v. Madera Quality Nut LLC,
19 2006 WL 931437, at *18 (E.D. Cal. 2006) ("it is only the communications that are
20 subject to attorney-client privilege, and not the foundational facts concerning the
21 communication, or the underlying, independent facts.").

22     Although Bryant ignores this, this Court also has already ruled on a
23 motion that Bryant brought that a witness' own understanding of events and
24 information known to a witness are discoverable.[1]  For example, upon Bryant's
25

26 [1]  See Mattel's Motion for Additional Time and/or to Reopen the Deposition of
27 Carter Bryant for All Purposes and to Overrule Additional Instructions Not to
Answer at the Deposition (the "Motion"), at Background (F).
28

CONSOLIDATED SEPARATE STATEMENT

motion, the Discovery Master overruled the following instructions given at Mr. Kaye's deposition:

Page: 80:3-21

Q:  Going back to the first page for a minute.  Do you know if anyone on behalf of Mattel ever talked to any of the people on the first page for Carter Bryant?

. . .

Mr. Zeller:  You should exclude from your answer any information that you received from counsel.

The Witness:  I believe its information received from counsel.

Q: By Mr. Jacoby: Exclusively?

A: Exclusively.

Page: 98:5-19

Mr. Jacoby:  Can I have it -- can I have it read back please.

(Record read as follows:  "Question: Do you have any understanding as to whether Mr. Bryant, Quote, Misappropriated intellectual property, close quote?")

Mr. Zeller:  Two things.  One is I object to the form of the question as lack of foundation.  Second, to the extent that the information that you have is solely as the result of your communications with counsel, you should exclude that from your answer.

The Witness:  The information is a result of my discussions with counsel.[2]

The Court's clear holding was that facts and understandings are discoverable, even if obtained through privileged communications.  The Discovery Master made that clear again more recently, holding that a question that "calls for the disclosure

---

[2]  Bryant's Separate Statement in Support of Bryant's Motion to Overrule Instructions Not to Answer During the Deposition of Alan Kaye, Instruction Nos. 15, 17; May 4, 2007 Order Granting in Part Bryant's Motion to Overrule Instructions Not to Answer During the Deposition of Alan Kaye ("Kaye Order"), ¶ 1 & Attachment A, Declaration of B. Dylan Proctor, dated August 1, 2007 ("01/01/07 Proctor Dec."), Exhs. 22, 25.

07209/2197053.3

4

1  of facts only" is proper and that the attorney-client privilege "does not extend to the

2  facts underlying privileged communications."[3]

3        On his prior motion, Bryant himself argued that "Mattel's counsel repeatedly

4  relied upon improper privilege instructions to shield the underlying *facts* from

5  discovery . . . the mere fact that a witness reveals facts to a lawyer or learns facts

6  from a lawyer does not make such facts privileged."[4]  The Discovery Master agreed

7  with Bryant's arguments, overruling Mattel's counsel's instructions not to disclose

8  information learned from counsel.[5]  There should be no double standard.  Bryant

9  bears the burden of supporting his privilege assertions.  U.S. v. Munoz, 233

10  F.3d 1117, 1128 (9th Cir. 2000).  Because he cannot do so, this instruction should be

11  overruled.

12  **MATTEL OBJECTION NO. 3.**     **PAGE: 463:4 - 464:19**

13        Q     Then it goes on to say, and any other material, whether written or

14        oral, collectively, the Bryant work product.  Did you understand that

15        that was defining the term that would be defined as the Bryant work

16        product?

17        MR. WICKHAM: Objection, calls for legal conclusion, calls for

18        speculation, lacks foundation, potentially infringes on the attorney-

19        client privilege.  If you had an understanding concerning this paragraph

20        or the individual words of this paragraph and you've gained that

21

22    [3]  See Order Granting Mattel's Motion for an Extension of Time to Depose Paula

23  Garcia in Her Individual Capacity and as a 30(b)(6) Designee, dated August 14, 2007 ("Garcia Order") at 12:20-22, 13:16-14:4, attached as Exhibit 4 to the

24  concurrently filed Supplemental Declaration of B. Dylan Proctor ("Proctor Dec.").

25    [4]  See, e.g., Kaye Motion at 17:10-16 (emphasis in the original); Memorandum of Points and Authorities in Support of Motion of Carter Bryant to Overrule

26  Instructions Not to Answer During the Deposition of Ann Driskill, dated March 28,

27  2007 ("Driskill Motion") at 15-16, 08/01/07 Proctor Dec. Exhs. 21, 23.

  [5]  See Kaye Order, 08/01/07 Proctor Dec. Exhs. 25.

28

1   understanding solely from having obtained legal advice, then I'll

2   instruct you not to respond.  If you understand what the word "all"

3   means or what the word "results" mean or what the word "and" means

4   and if you can get a dictionary and go through and define each of those

5   terms individually, then, you know, we can go and do that.  If you only

6   have an understanding of the import of this language in here through

7   advice of your legal counsel, I would instruct you not to respond.

8   A      That's how I came to an understanding of this paragraph was

9   through legal counsel.[6]

10  **BRYANT'S RESPONSE TO NEW OBJECTION NO. 3:**

11  There is no basis for Mattel's objection.  Even though Mattel objects to

12  Bryant Depo 463:4 - 464:19, it conspicuously omits a large portion of that testimony

13  in their separate statement.  The full excerpt shows that Bryant made clear that he

14  had no recollection whether or not he read the text in question before he spoke with

15  a lawyer about it.

16  Q      (By Mr. Quinn) So before you got legal counsel you
    didn't have any understanding of what those words that I
17  just read were.  Is that a true statement?

18  MR. WICKHAM: Lacks foundation.  He had - he
    already has testified that he had legal counsel before he
19  received this document.

20  Q      (By Mr. Quinn) You may answer.

21  A      What was your question again?

22  Q      It's my understanding that you read this before you
    talked to your lawyer about the language.  Is that true?
23
    MS. CENDALI: Objection.
24
    MR. WICKHAM: Lacks - lacks foundation,
25  mischaracterizes the witness's testimony.

26  _____

27  [6]  Mattel cites Bryant Depo. 463:4 – 464:19 in its New Objection No. 3, yet fails
    to include the entire testimony in its Separate Statement ISO of Mattel's motion.
28

CONSOLIDATED SEPARATE STATEMENT

1          MR. QUINN: Well, why not let him - let him tell me?

2

3          A    I don't recall.

           Q   (By Mr. Quinn) You don't recall one way or the

4          other?

5          A    No.

6          Q   So you might have read this before you talked to your lawyer about it, you might not, you just don't know?

7

8          A    Right.

9  Bryant Depo 463:24-464:19.

10        Bryant made clear he could not recall whether or not he had read the

11  above passage before obtaining legal counsel, and thus could not recall if he had

12  even read this passage before obtaining legal counsel.  Mattel can not expect Bryant

13  to have an "understanding" of text that he doesn't even remember reading.

14        The attorney-client privilege provides protection from disclosure of

15  confidential communications between an attorney and his or her client that are

16  related to the subject matter of the representation.  U.S. v. Martin, 278 F.3d at 999-

17  1000.  Under Fed.. R. Civ. P. 30(d)(1), counsel may instruct deponent not to respond

18  when necessary in order to protect a privilege.  Here, counsel made clear that that

19  his instruction not to respond was limited, and only applied to the extent that the

20  response was based on privileged communication.  Mr. Bryant indicated that no

21  portion of his answer would be outside the realm of the attorney-client privilege.

22  Thus, nothing further could be gained by compelling Mr. Bryant to respond.

23  Therefore, the instruction should be sustained.

24  **MATTEL'S REPLY IN SUPPORT OF OBJECTION NO. 3**:

25        See Reply in Support of Objection No. 2.

26        The question here calls for a "yes" or "no" answer and does not call for

27  the substance of confidential communications between attorney and client.  It calls

28  only for disclosure of Bryant's understanding of an agreement he signed.  Regardless

1 | of how Bryant came to that understanding, Mattel is entitled to discover it.

2 | Accordingly, this instruction should be overruled.

3 | **MATTEL OBJECTION NO. 4.**     **PAGE: 467:21-468:7**

4 | Q     (By Mr. Quinn) Did you have an understanding as to what you

5 | were agreeing to do pursuant to this paragraph?

6 | MR. WICKHAM: Objection, potentially infringes on the attorney-

7 | client privilege.  To the extent you had an understanding of your legal

8 | obligations under this agreement from your counsel at the time, Ms.

9 | Wang, I instruct you not to respond.  If you had an understanding that

10 | you did not obtain from Ms. Wang or your other lawyers, then you can

11 | respond.

12 | A     I think my understanding came from my discussions with my

13 | attorney.

14 | **BRYANT'S RESPONSE TO OBJECTION NO. 4:**

15 | There is no basis for Mattel's objection to any portion of the deposition

16 | testimony shown above.  In the deposition transcript *immediately following* the

17 | excerpt above, Bryant responded to counsel's question, and provided counsel with a

18 | complete answer:

19 | Q     (By Mr. Quinn) Is it true that you had no
     | understanding what this paragraph meant except that
20 | which was explained to you by your attorney?

21 | MR. WICKHAM: Objection, mischaracterizes the
     | witness's testimony.
22 |
     | A     No, that's not true.
23 |
     | Q     (By Mr. Quinn) All right.  What understanding did
24 | you have apart from what the lawyer' told you?

25 | A     I think I just generally understood that we were to
     | keep the work that we were doing confidential, not go, you
26 | know, spreading it around to the whole world.

27 | Bryant Depo. 468:8-19.  Because Mr. Bryant has answered Mattel's question in full,

28 | there are no grounds to support Mattel's motion to compel an answer to this line of

07209/2197053.3

8

CONSOLIDATED SEPARATE STATEMENT

1  questions.  Mattel's selective parsing of the deposition testimony should not be

2  rewarded.

3  **MATTEL'S REPLY IN SUPPORT OF OBJECTION NO. 4**:

4        See Mattel's Reply in Support of Objection No. 2.

5        Bryant's Response misses the point.  Mattel is entitled to discover

6  Bryant's understanding of what he was agreeing to, *regardless of how he came to*

7  *that understanding*.  Disclosure of his understanding "apart from what his lawyer

8  told him" is inadequate.  Mattel is entitled to discover Bryant's full understanding

9  without the improper limitation.

10  **MATTEL OBJECTION NO. 5.**    **PAGE: 474:4-475:14**

11        Q    (By Mr. Quinn) I mean, this was just produced to us

12              this week.  Do you have any knowledge as to why this was

13              produced to us just this week?

14        MR. WICKHAM: Objection, attorney-client privilege,

15              attorney work product.  To the extent you have any

16              information on that subject from your counsel, you should

17              not respond to the question.  If you have –

18        MR. QUINN: Mr. Wickham –

19        MR. WICKHAM: – information on that subject other than

20              from –

21        MR. QUINN: Mr. Wickham –

22        MR. WICKHAM: –  having sought legal counsel, you can

23              and should respond....

24        Q    (By Mr. Quinn) Do you have any information as to

25              why this was just produced to us this week?

26        MR. WICKHAM: Objection, attorney-client privilege,

27              attorney work product, instruct the witness not to respond

28              concerning any information you've obtained from counsel.

9

1    If you have information obtained from any other source

2    other than your lawyers, you can respond.

3    MR. QUINN: You kept a straight face that time.

4        A    I have no idea.

5  **BRYANT'S RESPONSE TO OBJECTION NO. 5:**

6        There is no basis for Mattel's objection to any portion of the deposition

7  testimony shown above.  Mr. Bryant answered the question in full, stating that he

8  had "no idea" why the document was produced at that time.  Furthermore, counsel's

9  limited instruction here was proper.  The attorney work product privilege "protect[s]

10  against disclosure of the mental impressions, conclusions, opinions, or legal theories

11  of an attorney or other representative of a party concerning the litigation." Fed. R.

12  Civ. P. 26(b)(3).  The attorney-client privilege provides protection from disclosure

13  of confidential communications between an attorney and his or her client that are

14  related to the subject matter of the representation.  U.S. v. Martin, 278 F.3d at 999-

15  1000.  Under Fed. R. Civ. P. 30(d)(1), counsel may instruct deponent not to respond

16  when necessary in order to protect a privilege.  Here, counsel made clear that that

17  his instruction not to respond was limited, and only applied to the extent that the

18  response was based on privileged communication.  Because Bryant responded to the

19  question, and because the instruction was proper, there are no grounds for Mattel's

20  motion to compel an answer to this question or to overrule the instruction.

21  **MATTEL'S REPLY IN SUPPORT OF OBJECTION NO. 5**:

22        See Reply in Support of Objection No. 2.

23        Although Bryant answered the question, it is not clear from Bryant's

24  response whether or not he is excluding information learned from counsel.  The

25  limiting instruction should be overruled.  This question called for a "yes" or "no"

26  answer, and did not seek disclosure of the substance of confidential attorney-client

27  communications.

28

07209/2197053.3

10

CONSOLIDATED SEPARATE STATEMENT

**MATTEL OBJECTION NO. 6.**     **PAGE: 477:4-477:13**

        Q    And in your understanding what was the purpose of that agreement?

        MR. WICKHAM: If your understanding of the purpose of the agreement was — came solely from your attorneys, I instruct you not to respond.

        A    Okay. My understanding came from my attorneys.

        Q    (By Mr. Quinn) So is it true that you had no understanding of what the purpose of this document was except that your lawyers told you?

        A    Yes.

**BRYANT'S RESPONSE TO OBJECTION NO. 6:**

        The attorney-client privilege provides protection from disclosure of confidential communications between an attorney and his or her client that are related to the subject matter of the representation.  U.S. v. Martin, 278 F.3d at 999-1000.  Here, counsel made clear that that his instruction not to respond was limited, and only applied to the extent that the response was based on privileged communication.  Mr. Bryant stated that no portion of his answer would be outside the realm of the attorney-client or work product privilege.

        In addition, Mattel's New Objection No. 6 is almost identical to its previous Objection No. 28, which also discussed how Mr. Bryant came to an understanding of the agreement in question.[7]  The Discovery Master overruled Objection No. 28, granted Mattel 2 additional hours to depose Bryant, and ordered Bryant "to answer those questions [where instructions had been overruled] and reasonable follow up questions."  Thus, Mattel's New Objection No. 6 is duplicative and redundant.

**MATTEL'S REPLY IN SUPPORT OF OBJECTION NO. 6**:

See Mattel's Reply in Support of Objection No. 2.

This objection is not duplicative of Mattel's prior Objection No. 28. There, the question at issue was: "So what did Ms. Gronich tell you [Bryant] was the purpose of this Agreement?"[8]  Here, Mattel asked for Bryant's own understanding of that Agreement.  The two questions are different.

**MATTEL OBJECTION NO. 7.       PAGE: 478:1-478:21**

Q       And do you have any understanding at all as to what the purpose of this new agreement was?

MS. CENDALI: Asked and answered.

MR. WICKHAM: Attorney-client privilege.  Instruct the witness not to respond.  The witness has already said that his sole understanding of the – this agreement came from counsel.

MR. QUINN: You know, actually, its kind of a fine point but a contracting party can't shield examination about his understanding of his contract by saying I only know what the lawyer told me because otherwise there's no way to examine a contracting party about his understanding and intent.

MR. WICKHAM: If you were suing to enforce this contract I might be willing to engage in a dialogue with you on that at some other time, but to the extent that you're asking questions that seek to invade his attorney-client privilege with respect to a contract between he and

---

[7]  Objection No. 28 cites Bryant Depo. 478:22-480:7.

[8]  See Mattel's Separate Statement in Support of Its Motion to Overrule Instructions Not to Answer During the Deposition of Carter Bryant, dated February 1, 2007 ("February 2007 Separate Statement"), Objection No. 28, Proctor Dec. Exh. 5.

CONSOLIDATED SEPARATE STATEMENT

1    MGA Entertainment, Inc., I will respectfully disagree.  In any event,

2    there's no need to.  I instruct the witness not to respond.

3  **BRYANT'S RESPONSE TO OBJECTION NO. 7:**

4    See response to New Objection No. 6, which is incorporated herein by

5  reference.

6    In addition, it should be noted that Mattel previously raised objections

7  to this exact instruction.  Mattel's Objection No. 27 also cited Bryant Depo. 478:1-

8  478:21.  Mattel chose to withdraw this objection on February 28, 2007.  Mattel had

9  an opportunity to have this same Court rule on these instructions, and balked.

10 Mattel's attempt to revive its previous objection should be denied.

11 **MATTEL'S REPLY IN SUPPORT OF OBJECTION NO. 7:**

12    See Mattel's Replies in Support of Objection Nos. 2 & 6.

13    Mattel previously withdrew this objection from its February 1, 2007

14 Motion to Overrule Instructions Not to Answer During the Deposition of Carter

15 Bryant precisely because there was, at that time, an understanding between the

16 parties that a witness' understanding of subjects or facts learned through

17 communications with counsel was protected by the attorney-client privilege.  Mattel

18 discussed this understanding throughout papers in support of its February 2007

19 motion.  See, e.g., 02/26/07 Consolidated Separate Statement, Reply in Support of

20 Objection No. 34 ("If Mattel had asked what Bryant's understanding was, counsel's

21 qualified instruction might have been proper").[9]  Based on that agreement between

22 the parties, Mattel did not ask for a ruling on Objection Nos. 24, 26-27, 31-32, and

23 36 on its earlier motion after they were inadvertently included.  Bryant, however,

24 abandoned the parties' agreement in March 2007, when he filed motions to overrule

25 comparable instructions not to answer at the deposition of Alan Kaye.  Bryant's

26 _____

27    [9]  Consolidated Separate Statement in support of the February 2007 motion, at
53:17-21, Proctor Dec. Exh. 7.

28

CONSOLIDATED SEPARATE STATEMENT

1  counsel argued there that "Mattel's counsel repeatedly relied upon improper

2  privilege instructions to shield the underlying *facts* from discovery . . . the mere fact

3  that a witness reveals facts to a lawyer or learns facts from a lawyer does not make

4  such facts privileged."[10]   The Court adopted that position.

5          Accordingly, the Court should now overrule this instruction as well.

6  Notably, Bryant cites no authority for the proposition that Mattel's prior withdrawal

7  of Objection Nos. 24, 26-27, 31-32, and 36 somehow means these instructions

8  should be sustained now.

9  **MATTEL OBJECTION NO. 8.      PAGE: 592:3-592:16**

10         Q      If you look at the next subparagraph B it says, as used in this

11                agreement, the term "inventions" includes but is not limited to all

12                discoveries, improvements, processes, developments, designs, know-

13                how, data, computer programs, and formulae, whether patentable or

14                unpatentable.  Do you see that?

15         A      Yes.

16         Q.     Do you have an understanding of that sentence?

17         MR. WICKHAM: Objection, attorney-client privilege.  To the extent

18                that your understanding is based on advice that you obtained from

19                counsel, then I instruct you not to respond.  Furthermore, the question's

20                ambiguous, vague and overbroad.

21         A.     I don't understand that even now.

22  **BRYANT'S RESPONSE TO OBJECTION NO. 8:**

23         The attorney-client privilege provides protection from disclosure of

24  confidential communications between an attorney and his or her client that are

25  related to the subject matter of the representation.  United States v. Martin,

26  _____

27  [10]   See, e.g., Kaye Motion at 17:10-16 (emphasis in the original), 08/01/07
      Proctor Dec. Exh. 21.

28

1 278 F.3d at 999-1000.  Under Fed. R. Civ. P. 30(d)(1), counsel may instruct

2 deponent not to respond when necessary in order to protect a privilege.  Here,

3 counsel made clear that that his instruction not to respond was limited, and only

4 applied to the extent that the response was based on privileged communication.  Mr.

5 Bryant responded to the question, stating that he did not, and does not, have an

6 understanding of the sentence in question.  Thus, nothing further could be gained by

7 compelling Mr. Bryant to respond.

8          Furthermore, Mattel went on to question Mr. Bryant about this same

9 passage during the course of the deposition, and received complete answers, as the

10 passage below, which immediately followed the passage cited by Mattel,

11 demonstrates:

12          Q    (By. Mr. Quinn) Okay. Are there particular words
           there that you don t understand?

13

14                MS. CENDALI: Objection –

15                MR. WICKHAM: Objection.

16                MS. CENDALI: -- asked and answered.

17          Q    (By Mr. Quinn) Yeah. Why don't you go ahead and
           answer that.  Are there particular words there in that

18          subparagraph 2(b) that you don't understand?

19          MR. WICKHAM: Objection, asked and answered.

20          A    Pretty much the entire paragraph is unintelligible.
           I'm not a lawyer.  This is all written in legalese.

21

22          Q    (By Mr. Quinn) All right. Let's -- let's break it
           down.  The first phrase, "as used in this argreement" – do

23          you see that phrase?

24          A    Yes.

25          Q    Do you understand those words?

26          A    Not really.

27          Q    So you don't understand, quote, as used in this
           agreement, closed quote?

28

15

CONSOLIDATED SEPARATE STATEMENT

1   MR. WICKHAM: Objection, asked and answered.

2   MS. CENDALI: Badgering the witness.

3   A   No.

4   Q   (By Mr. Quinn) Then it goes on to -- do you
understand here that -- is it your understanding that this
5   paragraph provides a definition of the term, quote,
inventions, closed quote?

6

7   MR. WICKHAM: Objection, lacks foundation, calls
for speculation as to the proper interpretation of this
document.

8

9   A   I don't understand this paragraph.

10   Q   (By Mr. Quinn) So it would be true to say you don't
have an understanding whether or not this subparagraph is
a definition of the term "inventions"; is that true

11

12   MR. WICKHAM: Objection, asked and answered.

13   A   I don't understand what this paragraph is about at
all.

14

15   Bryant Depo 592:17 - 594:1.  Not only did Mattel get a complete answer to the

16   question it posed, it got the same answer time and again when counsel decided to

17   badger the witness by repeating the same question over and over.  Because Mr.

18   Bryant has answered Mattel's question in full, there are no grounds to support

19   Mattel's objection to this portion of the deposition.

20   **MATTEL'S REPLY IN SUPPORT OF OBJECTION NO. 8:**

21   See Reply in Support of Objection No. 2.

22   It is not clear from Bryant's response whether he did not understand the

23   paragraph at issue or whether he excluded information learned from counsel from

24   his answer, as his lawyer instructed him to.  The additional testimony cited by

25   Bryant is irrelevant because it does not make that clear either.  This instruction

26   should be overruled.

27

28

07209/2197053.3

16

CONSOLIDATED SEPARATE STATEMENT

**MATTEL OBJECTION NO. 9.**        **PAGE: 639:11-639:17**

Q      And then one little I, I will maintain the confidentiality of the
company's trade secrets. Do you understand that?

MR. WICKHAM: Objection.  To the extent that you have an
understanding of this language or this document based on advice of
counsel, I instruct you not to respond.

A.      Well, then I'm not going to respond.

**BRYANT'S RESPONSE TO OBJECTION NO. 9:**

The attorney-client privilege provides protection from disclosure of
confidential communications between an attorney and his or her client that are
related to the subject matter of the representation.  U.S. v. Martin, 278 F.3d at 999-
1000.  Under Fed. R. Civ. P. 30(d)(1), counsel may instruct deponent not to respond
when necessary in order to protect a privilege.  Bryant's counsel limited the
instruction to apply only "[t]o the extent" that the information came from privileged
communications.  Mr. Bryant's response above indicates that he would not be able to
answer the question without revealing privileged information.  Therefore, counsel's
instruction was proper.

In addition, Mattel's New Objection No. 9 is almost identical to its
previous Objection No. 33, which also discussed the Employee Confidential
Information and Inventions Agreement.[11]  The Discovery Master has already
overruled Objection No. 33.  Mattel was given 2 additional hours to depose Bryant,
and Bryant was ordered "to answer those questions [where instructions had been
overruled] and reasonable follow up questions."  Thus, Mattel's New Objection No.
9 is duplicative and redundant.

**MATTEL'S REPLY IN SUPPORT OF OBJECTION NO. 9:**

See Mattel's Reply in Support of Objection No. 2.

07209/2197053.3

17

1          This question is not duplicative of the question referenced in Mattel's

2    prior Objection No. 33.  The two questions asked Bryant about his understanding of

3    two different clauses in the Employee Confidential Information and Inventions

4    Agreement.  Compare Objection No. 33:

5            Q    Are there particular words there that you find

6            confusing or not intelligible?[12]

7    with the question at issue here:

8            Q    (By Mr. Quinn)  It says -- it goes on.  The next

9            sentence, it says this agreement is designed to make clear

10           that.  Do you understand that much?

11           A    Yes.

12           Q    And then one little I, I will maintain the

13           confidentiality of the company's trade secrets.  Do you

14           understand that?[13]

15   The questions are different.  The question at issue in prior Objection No. 33 dealt

16   with a different clause in the Agreement.[14]  This instruction should be overruled.

17   **MATTEL OBJECTION NO. 10.**    **PAGE: 639:23-640:11**

18           Q    (By Mr. Quinn) Okay. Second item, it says I will use those trade

19           secrets for the exclusive benefit of the company.

20           MR. WICKHAM: Objection. Go ahead.

21           Mr. QUINN:  Thank you.

22           Q    (By Mr. Quinn) Do you understand that sentence?

23

24

25   ---

    [11]  Objection No. 33 cites Bryant Depo. 640:15-641:6.

26       [12]  Bryant Depo. at 639:23-640:16, Proctor Dec. Exh. 3.

27       [13]  Bryant Depo. at 639:7-12, Proctor Dec. Exh. 3.

    [14]  Bryant Depo. at 639:23-640:16, Proctor Dec. Exh. 3.

28

CONSOLIDATED SEPARATE STATEMENT

1        MR. WICKHAM: Objection, attorney-client privilege.  To the

2    extent that your understanding is based upon advice of counsel, I

3    instruct you do not respond.

4        MS. CENDALI: And I also object as to form and the ability to

5    parse phrases and words in an overall legal document.

6    Q    (By Mr. Quinn) Your turn.

7    A    I'm not going to respond to that.

8    **BRYANT'S RESPONSE TO OBJECTION NO. 10:**

9        See Response to New Objection No. 9, which is incorporated herein by

10   reference.

11   **MATTEL'S REPLY IN SUPPORT OF OBJECTION NO. 10**:

12       See Mattel's Replies in Support of Objection Nos. 2 & 9.

13       The question at issue here, whether Bryant understands a clause of the

14   Employee Confidential Information and Inventions Agreement as a whole, is

15   different from the question which was previously before the Discovery Master --

16   whether there are any "particular words" in that clause that Bryant finds "confusing

17   or not intelligible."[15]

18   **MATTEL OBJECTION NO. 11.    PAGE: 642:6-642:17**

19   Q    (By Mr. Quinn) Do you have any understanding of that sentence

20       after that little Roman three other than based on what your attorneys

21       told you?

22       MS. CENDALI: Same objection.

23   Q    (By Mr. Quinn) You can't say "same answer" to that.  You can

24       say I don't have any understanding of that phrase except what my

25

26   [15]   Compare Bryant Depo. at 639:23-640:11 (Objection No. 10) with Bryant

27   Depo. at 640:15-641:6 (Objection No. 33, Consolidated Separate Statement in
     support of February 2007 motion); Proctor Dec. Exh. 7.

28

CONSOLIDATED SEPARATE STATEMENT

1    lawyers – based on what my lawyers have told me or you can say, well,

2    I have some understanding of it.

3        A    I don't have any understanding other than what my lawyers have

4    told me.

5    **BRYANT'S RESPONSE TO OBJECTION NO. 11:**

6        See Response to New Objection No. 9, which is incorporated herein by

7    reference.

8    **MATTEL'S REPLY IN SUPPORT OF OBJECTION NO. 11:**

9        <u>See</u> Mattel's Replies in Support of Objection Nos. 2 & 9.

10   **MATTEL OBJECTION NO. 12.     PAGE: 125:7-125:11**

11       Q    Quote, I also agree to notify my superior immediately of any

12   changes in my situation that would cause me to answer any of the

13   above questions differently, close quote.  Do you see that, sir?

14       A    Yes.

15       Q    Do you understand that at the time you signed this –

16       A    No.

17       Q    -- that – that sentence

18       A    No,

19       Q    Do you understand it now?

20       MR. WICKHAM: Objection, attorney-client privilege.  To the

21   extent your understanding now is based on advice of counsel, I instruct

22   you not to respond.

23       A    I don't understand it now either.

24   **BRYANT'S RESPONSE TO OBJECTION NO. 12:**

25       The attorney-client privilege provides protection from disclosure of

26   confidential communications between an attorney and his or her client that are

27   related to the subject matter of the representation.  <u>U.S. v. Martin</u>, 278 F.3d at 999-

28   1000.  Under Fed. R. Civ. P. 30(d)(1), Counsel may instruct deponent not to respond

07209/2197053.3

20

1  when necessary in order to protect a privilege.  Bryant's counsel limited the

2  instruction to apply only "[t]o the extent" that the information came from privileged

3  communications.  Therefore, counsel's instruction was proper.

4           In addition, it should be noted that Mattel previously raised objections

5  to similar instructions on the same topic matter.  Mattel's Objection No. 36 cites

6  Bryant Depo. 650:2 - 654:13, testimony that immediately follows the citation Mattel

7  objects to in its New Objection No. 12.  Mattel chose to withdraw this objection on

8  February 28, 2007.  Mattel had an opportunity to have this same Court rule on these

9  instructions, and balked.  Mattel's attempt to revive its previous objection should be

10  denied.

11  **MATTEL'S REPLY IN SUPPORT OF OBJECTION NO. 12:**

12           See Mattel's Replies in Support of Objection Nos. 2 & 7.

13           Here, again, it is not clear whether Bryant excluded information from

14  his answer based on the limiting instruction.  This instruction should be overruled.

15

16

17  DATED:  August 22, 2007            QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
18

19                                     By
20                                        B. Dylan Proctor
                                          Attorneys for Plaintiff, Mattel, Inc.
21

22

23

24

25

26

27

28

                                              CONSOLIDATED SEPARATE STATEMENT

# EXHIBIT 8

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 90378)
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)            **CONFORMED COPY**
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
6   Facsimile:  (213) 443-3100

7   Attorneys for Plaintiff
    Mattel, Inc.

8

                        UNITED STATES DISTRICT COURT
9
                       CENTRAL DISTRICT OF CALIFORNIA
10

11                            EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13          Plaintiff, | Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727 |
| 14      vs. | **DISCOVERY MATTER** |
| 15  MATTEL, INC., a Delaware | **[To Be Heard By Discovery Master<br>Hon. Edward Infante (Ret.)]** |
| 16  corporation, | SUPPLEMENTAL DECLARATION<br>OF B. DYLAN PROCTOR IN |
| 17          Defendant. | SUPPORT OF MOTION OF<br>PLAINTIFF MATTEL, INC. FOR<br>ADDITIONAL TIME AND/OR TO |
| 18 | REOPEN THE DEPOSITION OF<br>CARTER BRYANT FOR ALL |
| 19  AND CONSOLIDATED ACTIONS | PURPOSES AND TO OVERRULE<br>ADDITIONAL INSTRUCTIONS NOT |
| 20 | TO ANSWER AT THE DEPOSITION |
| 21  **CONFIDENTIAL** | Date:    TBA |
| 22  **FILED UNDER SEAL PURSUANT** | Time:    TBA<br>Place:   Telephonic |
| 23  **TO PROTECTIVE ORDER** | |

24                                        **Phase 1**
                                          Discovery Cut-Off:  January 14, 2008
25                                        Pre-Trial Conference: April 7, 2008
                                          Trial Date:           April 29, 2008
26
                                          **Phase 2**
27                                        Discovery Cut-Off:  March 3, 2008
                                          Pre-Trial Conference: June 2, 2008
28                                        Trial Date:           July 1, 2008

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 90378)
2    (johnquinn@quinnemanuel.com)
    Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100

7  Attorneys for Plaintiff
   Mattel, Inc.

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                          EASTERN DIVISION

| | |
|---|---|
| 11  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) Consolidated with |
| 12 | Case Nos. CV 04-09059 & CV 05-2727 |
| 13        Plaintiff, | **DISCOVERY MATTER** |
| 14     vs. | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]** |
| 15 | SUPPLEMENTAL DECLARATION |
| 16  MATTEL, INC., a Delaware corporation, | OF B. DYLAN PROCTOR IN SUPPORT OF MOTION OF |
| 17 | PLAINTIFF MATTEL, INC. FOR ADDITIONAL TIME AND/OR TO |
| 18        Defendant. | REOPEN THE DEPOSITION OF CARTER BRYANT FOR ALL |
| 19 | PURPOSES AND TO OVERRULE ADDITIONAL INSTRUCTIONS NOT |
| 20  AND CONSOLIDATED ACTIONS | TO ANSWER AT THE DEPOSITION |
| 21 | Date:   TBA |
| 22  **CONFIDENTIAL** | Time:   TBA |
| 23  **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** | Place:  Telephonic |
| 24 | **Phase 1** Discovery Cut-Off:    January 14, 2008 |
| 25 | Pre-Trial Conference: April 7, 2008 Trial Date:         April 29, 2008 |
| 26 | **Phase 2** |
| 27 | Discovery Cut-Off:    March 3, 2008 Pre-Trial Conference: June 2, 2008 |
| 28 | Trial Date:         July 1, 2008 |

CONFIDENTIAL COPY

07209/2198396.1

SUPPLEMENTAL DECLARATION OF B. DYLAN PROCTOR

# DECLARATION OF B. DYLAN PROCTOR

I, B. Dylan Proctor, declare as follows:

1.     I am a member of the bar of the State of California and a partner of Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for Mattel, Inc.  I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.     Attached as Exhibit 1 is a true and correct copy of a fee agreement between Carter Bryant's counsel, Keker & Van Nest LLP, and MGA, relating to the Keker firm's representation of Bryant, dated July 19, 2007, as produced by Bryant. This document was first produced by Bryant on August 20, 2007 -- two days ago -- after Bryant's counsel previously represented that there was no written fee agreement between Keker and MGA.

3.     Attached as Exhibit 2 is a true and correct copy of an ABC Nightline transcript dated December 23, 2006, which reflects a statement by Isaac Larian that the litigation between Mattel and MGA is worth "billions of dollars."

4.     Attached as Exhibit 3 is a true and correct copy of excerpts from Carter Bryant's deposition transcript, dated November 4, 5, and 8, 2004.

5.     Attached as Exhibit 4 is a true and correct copy of the Discovery Master's Order Granting Mattel's Motion for an Extension of Time to Depose Paula Garcia in Her Individual Capacity and as a 30(b)(6) Designee, dated August 14, 2007.

6.     Attached as Exhibit 5 is a true and correct copy of excerpts from Mattel's Separate Statement in support of its Motion to Overrule Instructions Not to Answer During the Deposition of Carter Bryant, dated February 1, 2007.

1    7.    Attached as Exhibit 6 is a true and correct copy of Mattel's

2    [Proposed] Order regarding Mattel's Motion to Overrule Instructions Not to

3    Answer During the Deposition of Carter Bryant, dated February 1, 2007.

4    8.    Attached as Exhibit 7 is a true and correct copy of excerpts from

5    Mattel's Consolidated Separate Statement in support of its Motion to Overrule

6    Instructions Not to Answer During the Deposition of Carter Bryant, dated

7    February 26, 2007.

8    9.    Attached as Exhibit 8 is a true and correct copy of excerpts from

9    MGA's Opposition to Mattel's Motion to Try All Claims Related to Bratz

10   Ownership in Phase One.

11   10.   Attached as Exhibit 9 is a true and correct copy of an August 6,

12   2007 article in Pittsburg Tribune Review, reflecting MGA's assertion that

13   "worldwide revenue for all Bratz products -- dolls, CDs, video games, DVDs,

14   etc. -- came to $2 billion for the 13-month period straddling last holiday

15   season."

16   11.   Attached as Exhibit 10 is a true and correct copy of an August 6,

17   2007 article in Newsday, stating that "by the end of 2005, Bratz products had

18   topped $2 billion in global sales."

19   12.   Attached as Exhibit 11 is a true and correct copy of Carter

20   Bryant's Reply to Mattel's Counterclaims, dated August 13, 2007.

21   13.   As of today, MGA has produced nearly 175,000 pages of

22   documents since Bryant's deposition was taken, including over 17,000 pages

23   of documents since Mattel filed this motion (including documents from MGA

24   Hong Kong).  Collectively, Defendants have produced more than 185,000

25   //

26   //

27   //

28   //

1 pages of documents since Mattel filed its February 1, 2007 Motion to Overrule

2 Instructions Not to Answer During the Deposition of Carter Bryant.

3      I declare under penalty of perjury under the laws of the United States of

4 America that the foregoing is true and correct.

5

6      Executed on August 22, 2007, at Los Angeles, California.

7

8              B. Dylan Proctor

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2198396.1

-3-

SUPPLEMENTAL DECLARATION OF B. DYLAN PROCTOR

**Exhibit 1**

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

JOHN E. TRINIDAD
JTRINIDAD@KVN.COM

August 20, 2007

**VIA EMAIL & U.S. MAIL**

B. Dylan Proctor
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543

Re:     *Bryant v. Mattel*
        United States District Court, Central District of California
        Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727)

Dear Dylan:

        Enclosed please find a copy of documents bearing Bates Number BRYANT2 000017-26. Pursuant to the Protective Order, these documents are designated Attorney's Eyes Only.

                                Very truly yours,

                                John E. Trinidad

JET/jas
Encl.

cc:  Diana Torres (w/ encl.)

401456.01

EXHIBIT ___1___ , PAGE __3__

LAW OFFICES

# KEKER & VAN NEST
LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

JOHN W. KEKER

July 19, 2007

**VIA PDF AND FEDERAL EXPRESS**

Craig Holden
MGA Entertainment, Inc.
16360 Roscoe Boulevard
Van Nuys, CA 91406

**RETAINER LETTER**

Dear Craig:

As you know, Carter Bryant has asked Keker & Van Nest (KVN) to represent him in connection with litigation pending between Mattell, Inc., MGA Entertainment, Inc. ("MGA"), and Carter Bryant, Case Nos. CV 04-9049, CV 04-9059, and CV 05-2727 SGL (RNBx) ("the Litigation"), now pending in the Central District of California. I understand that MGA has agreed to pay for our services, other than transition costs which are being billed directly to Mr. Bryant.

This letter sets forth our proposed retainer agreement for services rendered to Carter Bryant. Please review this agreement and, if it is acceptable, please sign it and return it to me.

I will send our bills directly to you, with the understanding that they are being submitted under a Joint-Defense Privilege and without waiving any attorney-client or work-product privilege as against third parties.

The terms of the Retention Agreement are:

1.   Subject to the allocation and discounts set forth in Paragraph 5 below, MGA agrees to pay attorneys' fees and costs for services rendered by KVN to represent Carter Bryant in the above-referenced litigation, but only with regard to fees and costs incurred after May 17, 2007. With regard to fees and costs incurred on or before May 17, 2007, including on the Art Attacks litigation, MGA and KVN agree that these will be billed directly to, and paid by, Carter Bryant, except that MGA will pay KVN a total of $100,000.00 towards the pre-May 18, 2007 fees and costs of KVN.

| 398584.01                        ATTORNEYS EYES ONLY

CONFIDENTIAL                    BRYANT2 000017

EXHIBIT __1__, PAGE __4__

Craig Holden
July 19, 2007
Page 2

2.    MGA's 2007 Billing Guidelines have been provided to KVN and are hereby incorporated
into this Agreement by reference. While KVN has indicated that it cannot or does not
agree to all of the terms of MGA's 2007 Billing Guidelines, it is agreed between KVN
and MGA that MGA is not obligated to pay those portions of KVN's invoices that MGA
determines do not comport with its 2007 Billing Guidelines.

3.    The representation shall be only for the purpose described above. Any additional
representation requires a separate agreement.

4.    You will be charged prevailing rates for time spent on the case, including any time spent
traveling in connection with this engagement. At present, our rates range from $350 per
hour to $950 per hour for attorney time, $150 per hour to $250 per hour for paralegal
time, and $110 per hour for paralegal case clerks. My time is billed at $950 per hour,
Michael Page's time is billed at $650 per hour, Christa Anderson's time is billed at $600
per hour, Audrey Walton-Hadlock's time is billed at $370 per hour, and John Trinidad's
time is billed at $360 per hour. Rates may increase from time to time. All bills will list
time charged by person, task and day (minimum time unit is 1/8 hour). In addition, you
will be billed for out-of-pocket costs, such as investigation, copy costs, travel, expert
fees, research expenses, deposition costs, and similar expenses. You will be billed
monthly for fees and costs, and you agree to pay such bills within 30 days of receipt,
except that you may withhold payment of any questioned amounts until the propriety of
such charge can be reasonably determined. Until any dispute is resolved, all undisputed
amounts will be paid. For all cost items exceeding $3,000, invoices will be sent directly
to you and we will not advance payment of such cost items.

5.    MGA will pay 97% of the fees and costs hereunder, while Carter Bryant will pay 3% of
said fees and costs. For any invoice which MGA pays in full within 30 days of receipt,
MGA shall be entitled to a 15% discount. This discount applies only to payments that are
actually made and received within thirty days of receipt of invoice.

6.    We prepare bills monthly, itemizing the time spent and costs incurred. We ask and
expect payment of our bills within 30 days of receipt, except payments of any questioned
amounts may be withheld until the propriety of such charges can be reasonably
determined. Until any dispute is resolved, all undisputed amounts will be paid.

7.    Keker & Van Nest understands that MGA intends to pay 97% of all fees and costs,
incurred on or after May 18, 2007, for the representation of Carter Bryant. MGA
understands that no matter who agrees to pay fees and costs, it is ultimately responsible
for such payment. Even though MGA or another entity may pay our fees and costs,
Keker & Van Nest's entire allegiance lies with Carter Bryant and not MGA or anyone
else. Keker & Van Nest states that it feels no pressure, actual or implied, to be influenced
in the exercise of its professional judgment by the fact that MGA will pay our fees. If
any such pressure is perceived, Keker & Van Nest will notify Carter Bryant immediately
and permit him to take whatever action is appropriate.

ATTORNEYS EYES ONLY

398584.01

CONFIDENTIAL                    BRYANT2 000018

EXHIBIT ___1___, PAGE __5__

Craig Holden
July 19, 2007
Page 3

8.   While Keker & Van Nest is unaware of any actual conflict between Carter Bryant and
MGA, in the even that Keker & Van Nest discovers any potential or actual conflict(s) of
interests between Carter Bryant and MGA, Keker & Van Nest will immediately notify
MGA in writing of the existence of such conflict(s) so MGA can take whatever action it
finds appropriate, including withdrawing from this Agreement.

9.   If any dispute arises between and among Carter Bryant or MGA and Keker & Van Nest
regarding our legal representation, including services performed, claims of alleged
malpractice, or any other matter relating to the above-referenced representation or this
Agreement, such dispute shall be submitted to binding arbitration and will not be
determined by the courts or a jury, except as California law provides for judicial review
of arbitration proceedings. Any dispute will be arbitrated according to the rules of the
American Arbitration Association. The prevailing party shall receive all costs and
reasonable attorneys' fees from the losing party in the event of such arbitration.

In any dispute relating to our billings, fees, or costs, the parties agree to binding
arbitration according to the rules of the American Arbitration Association to the extent
permitted by law, or, if not so permitted, to arbitration as permitted by the California
Business & Professions Code, § 6200, et seq.

10.   Carter Bryant may discharge Keker & Van Nest at any time, and Keker & Van Nest may
withdraw from this case for good cause, including nonpayment of fees. In the event
MGA withdraws from the fee agreement, it will give 30 days prior written notice to
Carter Bryant and to Keker & Van Nest. In the event of the termination of Keker & Van
Nest's representation, Keker & Van Nest will promptly return all funds advanced in
excess of costs and fees. Conversely, if any fees and costs are owed to Keker & Van
Nest, such fees and costs will be promptly paid at the time the representation is
terminated.

11.   This Agreement constitutes the entire, final and binding agreement between Keker &
Van Nest LLP and MGA. No other statement or representation, written or oral, express
or implied, has been received or relied upon, and all prior or contemporaneous
discussions, statements, and negotiations relating to the subject matter of this Agreement
are superseded and merged into this Agreement.

12.   This Agreement may be amended, altered, modified or otherwise changed in any respect
or particular only by a writing duly executed by Keker & Van Nest LLP and MGA.

398584.01

ATTORNEYS EYES ONLY           CONFIDENTIAL           BRYANT2 000019

EXHIBIT ___1___, PAGE __6__