1    of any of these terms based on -- of these terms or this

2    sentence based on advice of counsel, I instruct you not to

3    respond.

4    Q  (By Mr. Quinn)  And the question is whether there's

5    particular words there that you find confusing.

6          MR. WICKHAM:  And if he has an understanding

7    of those terms based on advice of counsel, he's not to

8    respond to your question.

9    Q  (By Mr. Quinn)  Your turn.

10   A  I'm going to choose not to respond.

11

12   **34.**    **PAGE:**    **641:20 - 642:5**

13   Q  (By Mr. Quinn)  It says that, you know, inventions that I

14   create will be owned by the company.  Do you have any

15   understanding what those words mean?

16         MR. WICKHAM:  Counsel, I would -- if you --

17   attorney-client privilege.  To the extent your

18   understanding of this phrase, this paragraph, or this

19   document is based on advice of counsel, instruct you not

20   to respond.

21         MS. CENDALI:  I also object on the grounds

22   of vagueness and time frame.

23   A  I'm not going to respond.

24

25   **35.**    **PAGE:**    **642:22 - 643:5**

26   Q  In this passage here where it says, quote, inventions that

27   I create will be owned by the company, closed quote, are

28

-34-
SEPARATE STATEMENT ISO MOTION RE: DEPOSITION OF CARTER BRYANT

EXHIBIT _5_, PAGE _64_

1   there particular words that you find confusing or that you

2   don't understand?

3        MS. CENDALI:  Objection.

4        MR. WICKHAM:  Objection, attorney-client

5   privilege.  To the extent that you have an understanding

6   of this document based on advice of counsel, I instruct

7   you not to respond.

8

9   **36.**   **PAGE:**   **650:2 - 654:13**

10   Q  (By Mr. Quinn)  Do you have any understanding of that

11       sentence which is not based on what your attorneys have

12       told you?

13        MS. CENDALI:  Asked and answered.  He said

14       he doesn't understand it.

15   A  I don't understand these -- I don't understand that

16       sentence.

17   Q  (By Mr. Quinn)  Okay.  So even putting aside what your

18       attorneys told -- putting aside what your attorneys told

19       you, you have no understanding of that sentence, correct?

20        MR. WICKHAM:  Objection, asked and answered.

21       Could the reporter please read back the witness's last

22       response.

23   Q  (By Mr. Quinn)  Is that true?  You don't understand it?

24        MR. WICKHAM:  Would the reporter please read

25       back the witness's prior response.

26        COURT REPORTER:  ANSWER:  I don't understand

27       that sentence.

28   Q  (By Mr. Quinn)  With or without the help of lawyers, you

7209/2049496.1

-35-

SEPARATE STATEMENT ISO MOTION RE: DEPOSITION OF CARTER BRYANT

EXHIBIT __5__, PAGE _65_

1   have no understanding of the sentence; is that true?

2   MR. WICKHAM:  Objection, asked and answered.

3   Instruct the witness not to respond with regard to any

4   understanding that you received from counsel.

5   A   I don't understand that sentence at all.

6   MR. QUINN:  Actually, that question just

7   called for a yes or no answer and it doesn't call for any

8   attorney-client communications.

9   Q   (By Mr. Quinn)  I mean, the question is, with or without

10   the benefit of legal advice, it's true that you have no

11   understanding of what that means?

12   MR. QUINN:  He can tell me, yes, I

13   understand it, and then we've closed the loop.  We

14   understand his understanding is based solely on what

15   counsel has told him.  That's the end of inquiry, but you

16   really can't tell him that he can't answer the question I

17   posed.

18   MS. CENDALI:  Counsel --

19   MR. QUINN:  It does not --

20   MR. WICKHAM:  Wait.  Wait.  Counsel --

21   MR. QUINN:  It does not -- it does not get

22   into the substance of any confidential communication.

23   MR. WICKHAM:  Time-out, Counsel.  He

24   answered the question.  Okay.  I gave him an instruction.

25   He answered your question.  Please move on.

26   MR. QUINN:  What I'm trying to find out is

27   whether there is anything behind the invocation of

28   privilege, whether he has an understanding with the advice

'209/2049496.1

-36-

SEPARATE STATEMENT ISO MOTION RE: DEPOSITION OF CARTER BRYANT

EXHIBIT __5__, PAGE __66__

1   of counsel.

2        MS. CENDALI:  Could you please read back

3   the -- before this colloquy the last four questions and

4   answers in which case he clearly stated, regardless of

5   what counsel said, that he doesn't understand the question

6   today.

7        MR. QUINN:  I'll accept that.  I'll accept

8   that if that's his testimony.

9        MS. CENDALI:  Well, read it -- read it back.

10        MR. QUINN:  Well, that's -- that's a waste

11   of time.  If that's -- if that's what you're telling me,

12   I'll accept that.

13        MS. CENDALI:  The record speaks for itself.

14   I don't want to testify.  He's already answered those

15   questions.

16        MR. WICKHAM:  He's -- he's answered the

17   question.

18        MR. QUINN:  With or without the advice of

19   counsel he has no understanding; is that true?  See, the

20   problem is you've given an instruction and then I don't

21   know if he's withholding something based on --

22        MS. CENDALI:  It wasn't based on the

23   instruction.  Read it back.

24        MR. WICKHAM:  Could the reporter just read

25   back his last response.

26        MS. CENDALI:  The three or four questions

27   before that.

28        MR. WICKHAM:  His last response.

SEPARATE STATEMENT ISO MOTION RE: DEPOSITION OF CARTER BRYANT

EXHIBIT ___5___, PAGE _67_

1    MR. QUINN: No. We're not going to do that.
2    I mean, you don't have a standing to ask that anything be
3    read back and this is a new delaying tactic just to have
4    things read back.
5          MR. WICKHAM: Mr. Quinn --
6          MR. QUINN: You -- you understand what I'm
7    saying.
8          MR. WICKHAM: He's answered the question.
9    He really has and you're just -- you keep on asking it and
10   reasking it. He said he doesn't understand it. He said
11   he doesn't understand it.
12         MR. QUINN: What I couldn't understand is
13   whether he's saying he doesn't understand it putting aside
14   what counsel has told him, that the only understanding he
15   has is based on what counsel has told him. That's what
16   I -- I don't know.
17         MR. WICKHAM: And I'm not going to have him
18   testify whether -- you know, having -- having been --
19   Counsel, he's answered the question.
20         MR. QUINN: No. I don't want to get into
21   the substance of what counsel told him. What I'm trying
22   to find out is does he have an understanding -- it really
23   calls for a yes or no answer. It will be the end of the
24   inquiry.
25         MS. CENDALI: And he's answered that.
26         MR. WICKHAM: If you --
27         MR. QUINN: Excuse me, nonparty.
28         MS. CENDALI: Please don't interrupt me.

7209/2049496.1

-38-
SEPARATE STATEMENT ISO MOTION RE: DEPOSITION OF CARTER BRYANT

EXHIBIT ___5___, PAGE __68__

1    MR. QUINN:  What I want to understand here
2    is whether he's saying he does have an understanding now
3    and it's only based on what counsel has told him.  It's
4    that simple.
5    MR. WICKHAM:  Okay.  Will the reporter
6    please reread the witness's last answer in response to the
7    very same question that is being posed once again.
8    COURT REPORTER:  The last answer is "I don't
9    understand that sentence at all."
10
11   37.   **PAGE:    654:14 - 654:25**
12   Q  (By Mr. Quinn)  You don't understand it at all even with
13   the benefit of counsel's advice; is that true?
14   MR. WICKHAM:  Okay.  Objection.  Instruct
15   the witness not to respond.  Badgering, asked and
16   answered, attorney-client privilege.  Please move on,
17   Counsel.
18   MR. QUINN:  I'm very disappointed.
19   MR. WICKHAM:  He's answered the question 14
20   times over, Counsel.  You've got your answer.  "14 times
21   over" was an exaggeration.  He's answered at least three
22   times.
23
24
25
26
27
28

r7209/2049496.1

-39-
SEPARATE STATEMENT ISO MOTION RE: DEPOSITION OF CARTER BRYANT

EXHIBIT ___5___, PAGE __6a__

1  objections, you know, we would be willing to entertain

2  appropriate interrogatories on the subject at the

3  appropriate time if it calls for expert testimony.

4

5

6  DATED: February 1, 2007      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

7

8                               By _____

9                               Michael T. Zeller
                                 Attorneys for Plaintiff and Cross-Defendant
10                               Mattel, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7209/2049496.1

-59-

SEPARATE STATEMENT ISO MOTION RE: DEPOSITION OF CARTER BRYANT

EXHIBIT __S__ , PAGE __70__

**Exhibit 6**

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5      (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
7   Facsimile:  (213) 443-3100

8   Attorneys for Plaintiff and Cross-
    Defendant Mattel, Inc.

9

10                    UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12                          EASTERN DIVISION

13

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | **DISCOVERY MATTER** |
| MATTEL, INC., a Delaware corporation, | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant to the Court's Order of December 6, 2006]** |
| Defendant. | |
| AND CONSOLIDATED CASES | [PROPOSED] ORDER RE. MOTION OF PLAINTIFF MATTEL, INC. TO OVERRULE INSTRUCTIONS NOT TO ANSWER DURING THE DEPOSITION OF CARTER BRYANT, TO COMPEL BRYANT TO ANSWER THOSE QUESTIONS, AND FOR SANCTIONS |
| | Date:   TBA<br>Time:   TBA<br>Place:   TBA |
| | Discovery Cut-Off: None Set<br>Pre-Trial Conference: None Set<br>Trial Date:  None Set |

07209/2049216.1

-1-

2-01

ORDER RE: DEPOSITION OF CARTER BRYANT

EXHIBIT 6 , PAGE 71

[PROPOSED] ORDER

Having considered Mattel, Inc.'s Motion to Overrule Instructions Not To Answer During the Deposition of Carter Bryant, to Compel Bryant To Answer Those Questions, and for Sanctions, and all other papers filed in opposition to or in connection therewith, and finding good cause therefore,

IT IS HEREBY ORDERED that

1.    Each of the instructions marked as "Overruled" in Attachment "A" hereto is hereby overruled and Carter Bryant is ordered to answer those questions at further deposition; and

2.    Bryant and MGA shall pay sanctions, evenly split, to Mattel, Inc. in the amount of $5,500.

DATED:                 . 2007


_____
Hon. Edward Infante (Ret.)
Discovery Master

07209/2049216.1

-2-

ORDER RE: DEPOSITION OF CARTER BRYANT

EXHIBIT ___6___, PAGE _72_

## ATTACHMENT "A"

## INSTRUCTIONS NOT TO ANSWER AT ISSUE DURING THE BRYANT DEPOSITION

### Honorable Edward Infante (Ret.)

## I. INSTRUCTIONS BASED ON THE ATTORNEY-CLIENT PRIVILEGE

| PAGE/LINE | ALLEGED BASES FOR INSTRUCTION | OVERRULED? |
|---|---|---|
| 17:21-18:8 | Attorney/Client Privilege | |
| 22:6-22:18 | Attorney-Client Privilege | |
| 36:25-37:22 | Attorney/Client Privilege<br>Lacks Foundation<br>Calls for Speculation | |
| 37:23-38:1 | Attorney/Client Privilege | |
| 38:2-38:9 | Attorney/Client Privilege | |
| 38:10-38:14 | Attorney/Client Privilege | |
| 41:2-42:18 | Attorney/Client Privilege | |
| 63:21-64:11 | Attorney/Client Privilege | |
| 64:12-64:16 | Attorney/Client Privilege<br>Joint Defense Privilege<br>Harassing | |
| 100:16-101:18 | Attorney/Client Privilege | |
| 124:4-124:24 | Attorney/Client Privilege | |
| 125:7-125:11 | Attorney/Client Privilege | |
| 125:12-126:9 | Attorney/Client Privilege<br>Attorney Work Product Doctrine | |
| 126:10-126:19 | Attorney/Client Privilege<br>Attorney Work Product Doctrine | |
| 126:20-127:1 | Attorney/Client Privilege<br>Attorney Work Product Doctrine | |
| 127:2-127:5 | Attorney/Client Privilege<br>Attorney Work Product Doctrine | |
| 127:6-130:2 | Attorney/Client Privilege<br>Attorney Work Product Doctrine | |
| 138:24-139:11 | Attorney/Client Privilege<br>Harassing<br>Burdensome | |
| 184:17-190:1 | Attorney/Client Privilege | |

07209/2049216.1

-3-

ORDER RE: DEPOSITION OF CARTER BRYANT

EXHIBIT _6_, PAGE _73_

| PAGE/LINE | ALLEGED BASES FOR INSTRUCTION | OVERRULED? |
|---|---|---|
| 186:3-187:10 | Attorney/Client Privilege | |
| 204:16-205:15 | Attorney/Client Privilege | |
| 215:13-216:8 | Attorney/Client Privilege | |
| 250:22-252:3 | Attorney/Client Privilege | |
| 450:11-451:19 | Potential Attorney/Client Privilege Asked and Answered | |
| 471:2-473:7 | Attorney/Client Privilege | |
| 476:9-476:24 | Potential Attorney/Client Privilege Calls for Legal Conclusion | |
| 478:1-478:21 | Attorney/Client Privilege | |
| 478:22-480:7 | Potential Attorney/Client Privilege | |
| 481:14-482:1 | Attorney/Client Privilege Joint Defense Privilege | |
| 622:10-622:23 | Attorney/Client Privilege | |
| 623:14-624:6 | Attorney/Client Privilege | |
| 624:7-624:21 | Calls for a Legal Conclusion Attorney/Client Privilege | |
| 640:15-641:6 | Attorney/Client Privilege | |
| 641:20-642:5 | Attorney/Client Privilege | |
| 642:22-643:5 | Attorney/Client Privilege | |
| 650:2-654:13 | Asked and Answered Attorney/Client Privilege | |
| 654:14-654:25 | Attorney/Client Privilege Asked and Answered Badgering | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07209/2049216.1

-4-

ORDER RE: DEPOSITION OF CARTER BRYANT

EXHIBIT 6 , PAGE 74

## II. INSTRUCTIONS BASED ON THE JOINT DEFENSE PRIVILEGE

| PAGE/LINE | ALLEGED BASES FOR INSTRUCTION | OVERRULED? |
|---|---|---|
| 18:15-18:19 | Attorney/Client Privilege<br>Joint Defense Privilege | |
| 18:20-19:21 | Attorney/Client Privilege<br>Joint Defense Privilege | |
| 19:22-20:1 | Attorney/Client Privilege<br>Joint Defense Privilege | |
| 20:2-20:21 | Attorney/Client Privilege<br>Joint Defense Privilege | |
| 20:22-21:2 | Attorney/Client Privilege<br>Joint Defense Privilege | |
| 21:8-21:12 | Attorney/Client Privilege<br>Joint Defense Privilege | |
| 53:9-53:13 | Attorney/Client Privilege<br>Joint Defense Privilege | |
| 59:2-59:9 | Attorneys/Client Privilege<br>Attorney Work Product Doctrine re any communications with MGA General Counsel or people in the General Counsel's office | |
| 59:10-59:17 | Attorney/Client Privilege<br>Attorney Work Product Doctrine | |
| 60:1-60:13 | Attorney/Client Privilege<br>Joint Defense Privilege | |
| 60:14-61:1 | Attorney/Client Privilege<br>Joint Defense Privilege | |
| 99:12-99:22 | Attorney/Client Privilege<br>Joint Defense Privilege | |
| 269:14-270:1 | Attorney/Client Privilege<br>Joint Defense Privilege | |

ORDER RE: DEPOSITION OF CARTER BRYANT

EXHIBIT ___6___, PAGE ___75___

## III. INSTRUCTIONS BASED ON NON-PRIVILEGE OBJECTIONS

| PAGE/LINE | ALLEGED BASES FOR INSTRUCTION | OVERRULED? |
|---|---|---|
| 24:13-24:19 | Asked and Answered<br>Harassing<br>Burdensome | |
| 45:25-46:9 | Privacy | |
| 111:21-113:12 | Witness' Response on the Record Would be a Guess | |
| 130:3-130:9 | Asked and Answered | |
| 130:10-130:13 | Asked and Answered | |
| 205:16-205:21 | Asked and Answered<br>Burdensome<br>Harassing | |
| 249:7-249:13 | Confidentiality | |
| 249:14-249:19 | Confidentiality | |
| 253:9-253:17 | Asked and Answered<br>Harassing | |
| 445:17-447:22 | Mischaracterization of Witness' Testimony<br>Asked and Answered | |
| 447:23-450:10 | Lacks Foundation<br>Speculative<br>Asked and Answered | |
| 565:18-566:3 | Calls for Legal Conclusion<br>Lack of Foundation<br>Speculative<br>Ambiguous | |
| 566:12-566:25 | Lacks Foundation<br>Calls for a Legal Conclusion | |
| 598:7-599:13 | Asked and Answered | |
| 599:14-600:7 | Asked and Answered<br>Badgering the Witness<br>Harassing | |
| 641:7-641:18 | Asked and Answered<br>Badgering the Witness<br>Harassment | |
| 705:21-706:10 | Proper subject of expert testimony<br>Foundation<br>Not having done an accounting | |

07209/2049216 1

-6-

ORDER RE: DEPOSITION OF CARTER BRYANT

EXHIBIT 6 , PAGE 20

**Exhibit 7**



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Cross-Defendant
Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with
Case No. CV 04-09059
Case No. CV 05-02727

**DISCOVERY MATTER**

**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order of December 6, 2006]**

**CONSOLIDATED SEPARATE STATEMENT IN SUPPORT OF MATTEL INC.'S MOTION TO OVERRULE INSTRUCTIONS NOT TO ANSWER DURING THE DEPOSITION OF CARTER BRYANT, TO COMPEL BRYANT TO ANSWER THOSE QUESTIONS, AND FOR SANCTIONS**

Hearing Date: March 5, 2007
Time: 8:00 a.m.
Courtroom: Telephonic

Discovery Cut-Off: Oct. 22, 2007
Pre-Trial Conference: Jan. 14, 2008
Trial Date: Feb. 12, 2008

**CONFIDENTIAL
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

07209/2064812.7

CONSOLIDATED SEPARATE STATEMENT
EXHIBIT __7__, PAGE __77__

1    Mattel, Inc. respectfully submits this reply to Carter Bryant's Responses
2  To Separate Statement In Support Of Mattel's Motion to Overrule Instructions Not
3  to Answer During the Deposition of Mr. Bryant, to Compel Mr. Bryant to Answer
4  Those Questions, and for Sanctions.
5    For the Discovery Master's convenience, this Consolidated Separate
6  Statement includes the text of the relevant portions of the deposition and Bryant's
7  argument regarding the same verbatim.[1]
8  **MATTEL OBJECTION NO. 1.    PAGE: 17:21 - 18:8**
9    Q    (By Mr. Quinn) Okay. Mr. Bryant, at your request we just took a
10    break?
11    A    Yes.
12    Q    And during the break did you speak with your counsel?
13    MR. WICKHAM: Objection, attorney-client privilege and instruct my
14    witness not to respond.
15    MR. QUINN:    It just calls for a yes or no answer. It doesn't call for
16    the disclosure of any communication.
17    MR. WICKHAM: I'm happy to meet and confer with you on this issue
18    at some other point in time. I'm instructing the witness not to respond.
19    I request that you please proceed.
20
21
22
23    [1]  Mattel believes MGA's responses are set forth accurately herein. However, if
     there any typographical errors therein, that is because Mattel was forced to scan
24  Bryant's opposition separate statement. Notwithstanding the parties' agreement that
     electronic copies of documents like separate statements would be provided upon
25  request, and despite Mattel's own past compliance with that agreement, Bryant
26  ignored (until less than 48 hours before Mattel's response here was due, when it was
     too late) Mattel's repeated requests that he provide an electronic copy of the
27  opposition separate statement here.
28

07209/2064812.7

1

CONSOLIDATED SEPARATE STATEMENT

EXHIBIT __7__ , PAGE _78_

1   in 2004 through the present time concerning this litigation. Accordingly, Bryant is

2   prepared to agree to resume his deposition (telephonically) for this limited purpose -

3   as Bryant previously offered to Mattel on multiple occasions.

4   **MATTEL'S REPLY IN SUPPORT OF OBJECTION NO. 30**:

5          Whether Bryant thinks contractual clauses are unfair or unreasonable

6   simply is not privileged.  The impropriety of counsel's blanket instruction is clear.

7   Counsel cannot interpose instructions not to answer to avoid unfavorable responses.

8   *See* Reply in support of Obj. Nos. 1, 5.  As for Bryant's limited waiver offer, *see*

9   Reply in support of Objections 7 & 21.  As for his "offers" of a telephonic

10  deposition, *see* Reply in support of Objection 21.

11  **MATTEL OBJECTION NO. 31.     PAGE: 622:24-624:6**

12          This excerpt was inadvertently included and is hereby withdrawn.

13  **MATTEL OBJECTION NO. 32.     PAGE: 624:7-624:21**

14  This excerpt was inadvertently included and is hereby withdrawn.

15  **MATTEL OBJECTION NO. 33.     PAGE: 640:15-641:6**

16          Q      Are there particular words there that you find confusing or not

17          intelligible?

18          MS. CENDALI: Objection to form. Objection, mischaracterizes his

19          testimony.

20          Q      (By Mr. Quinn) Your turn.

21          MR. WICKHAM: Objection, attorney-client privilege. To the extent

22          that you have an understanding of any of these terms based on -- of

23          these terms or this sentence based on advice of counsel, I instruct you

24          not to respond.

25          Q      (By Mr. Quinn) And the question is whether there's particular

26          words there that you find confusing.

27          MR. WICKHAM: And if he has an understanding of those terms based

28          on advice of counsel, he's not to respond to your question.

07209/2064812.7

51

1    Q     (By Mr. Quinn) Your turn.

2    A     I'm going to choose not to respond.

3  **BRYANT'S RESPONSE TO OBJECTION NO. 33:**

4         The attorney-client privilege provides protection from disclosure of

5  confidential communications between an attorney and his or her client that are

6  related to the subject matter of the representation. United States v. Martin,

7  278 F.3d at 999-1000.

8         Here, as shown above, counsel for Mr. Bryant explicitly limited his

9  instruction not to respond to the extent that the response was based upon privileged

10  communications. After receiving this instruction, Mr. Bryant stated on the record

11  that he chose not to respond, indicating that he would not be able to answer the

12  question without revealing privileged information. Counsel may instruct a deponent

13  not to respond when necessary to protect a privilege. FED. R. Crv. P. 30(d)(1).

14  Thus, counsel's instruction to Mr. Bryant was proper.

15  **MATTEL'S REPLY IN SUPPORT OF OBJECTION NO. 33:**

16         As Mattel made clear in its motion, Mattel agrees that facts a witness

17  knows *only* through communications with counsel are protected from disclosure.

18  Mot. at p. 20, n.47 and accompanying text.  However, this question seeks to

19  discover no such facts.  Instead, this question calls for a simple yes or no answer --

20  either there were particular words that Bryant found confusing or there were not.

21  No answer to this question could have revealed privileged communications.

22  **MATTEL OBJECTION NO. 34.     PAGE: 641:20-642:5**

23    Q     (By Mr. Quinn) It says that, you know, inventions that I create

24         will be owned by the company. Do you have any understanding what

25         those words mean?

26    MR. WICKHAM: Counsel, I would -- if you --attorney-client privilege.

27         To the extent your understanding of this phrase, this paragraph, or this

28         document is based on advice of counsel, instruct you not to respond.

07209/2064812.7

52

1    MS. CENDALI: I also object on the grounds of vagueness and time

2    frame.

3         A    I'm not going to respond.

4  **BRYANT'S RESPONSE TO OBJECTION NO. 34:**

5         The attorney-client privilege provides protection from disclosure of

6  confidential communications between an attorney and his or her client that are

7  related to the subject matter of the representation. <u>United States v. Martin</u>,

8  278 F.3d at 999-1000.

9         Here, as shown above, counsel for Mr. Bryant explicitly limited his

10  instruction not to respond to the extent that the response was based upon privileged

11  communications. After receiving this instruction, Mr. Bryant stated on the record

12  that he chose not to respond, indicating that he would not be able to answer the

13  question without revealing privileged information. Counsel may instruct a deponent

14  not to respond when necessary to protect a privilege. FED. R. Civ. P. 30(d)(1).

15  Thus, counsel's instruction to Mr. Bryant was proper.

16  **MATTEL'S REPLY IN SUPPORT OF OBJECTION NO. 34:**

17         *See* Reply in support of Objection 33. Here as well, the question seeks

18  a yes or no answer that could not possibly reveal privileged communications or facts

19  learned only through counsel. Accordingly, counsel's instruction was improper. If

20  Mattel had asked what Bryant's understanding was, counsel's qualified instruction

21  might have been proper. But that was not the question here.

22  **MATTEL OBJECTION NO. 35.    PAGE: 642:22-643:5**

23         Q    In this passage here where it says, quote, inventions that I create

24         will be owned by the company, closed quote, are there particular words

25         that you find confusing or that you don't understand?

26         MS. CENDALI: Objection.

27

28

07209/2064812.7

53

1  been paid on what dolls.  That is discoverable.  And in any case, counsel's
2  instructions not to answer were, again, improper.
3       Bryant's deposition reveals a pattern of obstructionism, including a truly
4  astonishing number of instructions not to answer on non-privilege grounds.  Some
5  of those may have been proper, but most were not.  As set forth herein, the
6  instructions should be overruled, and Bryant should be compelled to reappear for
7  further questioning.
8
9  DATED:  February 26, 2007        QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
10
11                                  By _____
12                                     Michael T. Zeller
                                       Attorneys for Plaintiff and Cross-Defendant
13                                     Mattel, Inc.
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

07209/2064812.7

113

CONSOLIDATED SEPARATE STATEMENT

EXHIBIT ___7___, PAGE _82_

**Exhibit 8**

1   DALE M. CENDALI (admitted *pro hac vice*)
    dcendali@omm.com
2   DIANA M. TORRES (S.B. #162284)
    dtorres@omm.com
3   JAMES P. JENAL (S.B. #180190)
    jjenal@omm.com
4   O'MELVENY & MYERS LLP
    400 South Hope Street
5   Los Angeles, CA 90071-2899
    Telephone: (213) 430-6000
6   Facsimile: (213) 430-6407

7   PATRICIA GLASER (S.B. #55668)
    CHRISTENSEN, GLASER, FINK,
8   JACOBS, WEIL & SHAPIRO, LLP
    10250 Constellation Boulevard, 19th Floor
9   Los Angeles, CA 90067
    Telephone: (310) 553-3000
10  Facsimile: (310) 557-9815

11  Attorneys for MGA Entertainment, Inc.

12              UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14                   EASTERN DIVISION

15

16  CARTER BRYANT, an individual,        Case No. CV 04-9049 SGL (RNBx)
                                         (consolidated with CV 04-9059 & 05-
17             Plaintiff,                2727)

18      v.                              **MGA's Opposition to Mattel's Motion
                                        to Try All Claims Related to Bratz
19  MATTEL, INC., a Delaware            Ownership in Phase One**
    corporation,
20                                       Hearing Date: June 11, 2007
               Defendant.                Time: 10:00 a.m.
21                                       Place: Courtroom 1
                                         Judge: Hon. Stephen G. Larson
22
    AND CONSOLIDATED ACTIONS
23

24

25

26

27

28
                                         MGA'S OPP'N TO MATTEL'S MTN RE:
                                         PHASE ONE TRIAL CV 04-9049

                    EXHIBIT  8  , PAGE  0835 1 c7

1        MGA Entertainment, Inc. ("MGA") respectfully submits this Memorandum

2   of Points and Authorities in Support of its Opposition to Mattel, Inc.'s ("Mattel")

3   Motion to Try All Claims Related to Bratz Ownership in Phase One and All

4   Accompanying Documents in the case originally captioned *Mattel, Inc. v. Bryant*,

5   Case No. CV 04-9059 SGL (RNBx).

6                     **PRELIMINARY STATEMENT**

7        Mattel's "Motion to Try All Claims Related to Bratz Ownership in Phase

8   One" merely rehashes the same ill-conceived arguments that this Court twice

9   rejected in bifurcating trial of this litigation – first, in response to Mattel's

10   amendment motion which it resolved in its January 12, 2006 Order and, again, at

11   this Court's February 12, 2006 conference, when Mattel orally asked the Court to

12   reconsider its decision.  The strength of Mattel's arguments has not increased by

13   force of repetition on what is in essence its second motion for reconsideration.

14        Following briefing and argument, the sole issue that the Court identified for

15   the Phase One Trial is whether Carter Bryant or Mattel owned the drawings that

16   Bryant assigned to MGA Entertainment, Inc. ("MGA").  As the Court explained,

17   bifurcation here promotes judicial economy and the fair administration of justice:

18             [I]f Mattel does not own rights to BRATZ, then some of

19             the defenses and counterclaims set forth as independent

20             claims in the present amended complaint may become

21             moot, *including Mattel's copyright infringement claim*

22             *as well as portions of its remaining RICO,*

23             *misappropriation, and aiding and abetting claims.*  If,

24             however, the court were to allow the amended complaint

25             to be filed in the 04-9059 action, *such case management*

26             *would be difficult, if not impossible* as many of the issues

27             being litigated in the 05-2727 case would have been

28

-2-         MGA'S OPP'N TO MATTEL'S MTN RE:
                       PHASE ONE TRIAL CV 04-9049

EXHIBIT 8 , PAGE 84

1    poured into the 04-9059 case by the amendment.[1]

2    Tellingly, Mattel does *not* contend that the *ten* Phase Two counterclaims it

3    now wishes to shift to the Phase One trial are about who owns the *original*

4    *drawings* that Carter Bryant assigned to MGA.  Nor could it, as just a couple of

5    examples demonstrate:

6    • Many of the Phase Two Counterclaims are exclusively against third

7        parties and are *not even against Carter Bryant*.  (Counterclaims 6, 8,

8        10, and 13).  By definition, those claims do not address ownership of

9        Bryant's drawings as between Mattel and Bryant.  Indeed, Plaintiff's

10       counsel candidly admitted at the February 12, 2007 conference that it

11       could win the ownership issue, and *still lose* those counterclaims.[2]

12   • Mattel's Phase Two copyright infringement claims against MGA,

13       MGA Hong Kong, Isaac Larian and Bryant (Counterclaim 1) relate to

14       *hundreds* of products that MGA created and released between 2001

15       and 2007, long *after* Bryant left Mattel.  Trial of those claims will

16       require a jury to analyze each product to determine whether it is even a

17       derivative work of Bryant's original drawings.  Those issues are

18       entirely separate and distinct from the narrow issue of whether Bryant

19       or Mattel own Bryant's original drawings.

20   The opening that Mattel apparently relies upon to squeeze these

21   counterclaims into Phase One is its unsupported assertion that the Court's "stated

22   objective" was to try "*all* Bratz ownership claims in Phase One."[3]  Mattel is

23   apparently misinterpreting the court's language to mean that the Phase 1 trial

24   should address *any* claims remotely relating to the general subject of ownership.

25   [1] Order Regarding Mattel's Motion for Leave to Amend, dated January 12, 2006 ("January 12
26   Order"), at 21 (emphasis added), Proctor Decl., Ex. 8.
     [2] *See* Transcript of the Status/Scheduling Conference Hearing held on February 12, 2007
27   ("February 12 Transcript"), at 6:9-17; 8:2-5, Declaration of James P. Jenal ("Jenal Decl.") filed
     concurrently, Ex. 1.
28   [3] Pl. Mem. at 1 (emphasis added).

- 3 -                          MGA'S OPP'N TO MATTEL'S MTN RE:
                               PHASE ONE TRIAL CV 04-9049

EXHIBIT __8__, PAGE __85__

1    hope to prevail on its claim that it owns Carter Bryant's original "Bratz" drawings

2    without creating jury confusion.  It is, therefore, resorting to injecting its irrelevant

3    and inflammatory accusations into the process, in a transparent attempt designed

4    solely to prejudice Bryant, MGA and Larian.  Such tactics – particularly on what is,

5    in essence, a *second* reconsideration motion – should not be rewarded.

6          The Court should deny Mattel's motion as to all claims in order to prevent

7    defendants MGA and Larian, not to mention Bryant, from being unfairly prejudiced

8    as a result of Mattel's tactics, and to ensure that Phase One moves forward without

9    any further delay.

10   **II.    CONCLUSION**

11         For the foregoing reasons, MGA respectfully requests that the Court deny

12   Mattel's motion to modify the Scheduling Order to include Mattel claims 1-4 of the

13   original complaint and Mattel counterclaims 1 and 5-13 as part of Phase One.

14

15

16         Dated:      May 25, 2007

17                                     DIANA M. TORRES
                                       JAMES P. JENAL
18                                     DALE M. CENDALI
                                       O'MELVENY & MYERS LLP
19

20                                     By:

21                                           James P. Jenal
                                       Attorneys for Plaintiff
22                                     MGA Entertainment, Inc.

23

24

25

26

27

28

                              - 12 -         MGA'S OPP'N TO MATTEL'S MTN RE:
                                             PHASE ONE TRIAL CV 04-9049

                    EXHIBIT ___8___, PAGE ___86___

1

## PROOF OF SERVICE

2      I, Karen A. Nakatsu, declare:

3      I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles,
4  California 90071-2899.  On May 25, 2007, I served the within document(s):

5      **MGA'S OPPOSITION TO MATTEL'S MOTION TO TRY
       ALL CLAIMS RELATED TO BRATZ OWNERSHIP IN**
6      **PHASE ONE**

7

8      ☒   by causing to be personally served the document(s) listed above to the person(s) listed below.

9      John Quinn, Esq.
       Quinn Emanuel Urquhart Oliver & Hedges, LLP
10     865 South Figueroa Street, 10th Floor
       Los Angeles, CA 90017
11     jquinn@quinnemanuel.com

12

13     ☒   by putting a true and correct copy thereof, together with an unsigned copy of this declaration, in a sealed envelope designated by the carrier, with delivery fees paid or provided for, for delivery the next business day to the person(s) listed below,
14     and placing the envelope for collection today by the overnight courier in accordance with the firm's ordinary business practices.  I am readily familiar with
15     this firm's practice for collection and processing of overnight courier correspondence.  In the ordinary course of business, such correspondence
16     collected from me would be processed on the same day, with fees thereon fully prepaid, and deposited that day in a box or other facility regularly maintained by
17     FedEx, which is an express carrier.

18     Patricia Glaser, Esq,
       Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP
19     10250 Constellation Blvd.
       19th Floor
20     Los Angeles, CA 90067
       pglaser@chrimill.com
21

22     Michael H. Page, Esq.
       Keker & Van Nest LLP
23     710 Sansome Street
       San Francisco, CA 94111
24     mpage@kvn.com

25

26

27

28

LA2:822283.1

EXHIBIT ___8___, PAGE __82__

1    I declare under penalty of perjury under the laws of the United States that the
above is true and correct.

2    Executed on May 25, 2007, at Los Angeles, California.

3

4                                    _Karen A. Nakatsu_

5                                    Karen A. Nakatsu

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LA2:822283.1

EXHIBIT ___8___, PAGE ___88___

**Exhibit 9**

**From:** westlaw@westlaw.com [mailto:westlaw@westlaw.com]
**Sent:** Tuesday, August 07, 2007 1:50 AM
**To:** Moore, Michael
**Subject:** WestClip: MGA-ALL

Westlaw.                                                                    NewsRoom

8/6/07 BSX-TRBREV (No Page)

8/6/07 Trib. Rev. (Greensburg Pa.) (Pg. Unavail. Online)
2007 WLNR 15082166

                    Pittsburgh Tribune Review
            Copyright 2007 Tribune-Review Publishing Co.

                        August 6, 2007


                'Bratz' movie renews doll debate

                    The Associated Press

NEW YORK -- The Bratz universe was humming along as usual last week at the Toys
'R' Us flagship store in Manhattan. Like bees to honey, little girls buzzed
about shelves lined with those famous pouty dolls with huge heads, plush lips
to put Angelina to shame, and bared, toned midriffs.

There was much to choose from: Bratz Babyz. Bratz Kidz. Fashion Pixiez. Magic
Hair. Bratz Spiderman 3. Bratz Shrek. The Bratz RC cruiser. Alarm clocks, CDs,
video games. "I love it!" one girl cried, actually jumping for joy. "Look at
all the makeup!"

These are the Bratz lovers -- young girls who, negative reviews aside, are the
target audience for the new "Bratz" movie. What they'll see is a more wholesome
look to Yasmin, Jade, Sasha and Cloe, the main characters behind the billion-
dollar global franchise.

Then there are the Bratz haters, including some (but not all) parents, who say
that film or no film, the Bratz doll message is troubling: friendship may be
good, but what's really important is to be chic and, above all, sexy.

Few dolls seem to inspire as much opinion as the Bratz, created in 2001 by
Isaac Larian of MGA Entertainment Inc. The blogosphere is littered with

                                        EXHIBIT 9, PAGE 89

8/22/2007

references to the dolls as tarts or prostitutes. The American Psychological Association got into the act earlier this year, mentioning **Bratz** in a broader report on the sexualization of girls: "It is worrisome when dolls designed specifically for 4- to 8-year-olds are associated with an objectified adult sexuality."

Some parents, alarmed by the sexy clothing and pouty looks, simply ban the dolls. "We don't allow them in the house," says Helene Lewis, of Moorestown, N.J. "It's the name, the look, the whole feeling about them. There are already enough negative influences out there."

But Lewis recognizes that banning something outright might lead her 5-year-old daughter to want it more. So she tempers her response: "We're going to avoid it as long as possible."

At the Toys 'R' Us display, Vera Dias-Freitas was going through the same balancing act. "It's hard to say no, now that all the kids are getting it -- it's peer pressure," she said, as her 7-year-old daughter Emily weighed her options. "What bothers me is that they give off an aggressive attitude. And why do they have to be sexy?" said the mother from Framingham, Mass. "The heels, and the low-rise jeans -- it's too much."

Some, though, say young girls simply love to dress up their dolls -- and it doesn't mean your 5-year-old will demand stilettos and spaghetti straps next time she leaves for preschool. "I like the dolls," said Mary Ann Savage, of Fenton, Mich., as daughter Kylee, 8, exulted over the Magic Makeup kit. "At this age, they all want to dress up and wear makeup. My daughter's a total girly-girl."

Though producers of the "Bratz" movie say they expect mainly a "tween" audience -- roughly ages seven to 13 -- many fans of the dolls are as young as four and five. And perhaps younger for the babies, who wear diapers that look more like bikini bottoms, with midriff showing, and bottles stylishly attached to a chain necklace.

Psychologist Sharon Lamb, who often gives talks on the sexualization of girls, says one seventh-grade class gasped when she showed them a Bratz Baby.

"The baby looked just like a blowup sex doll in a bikini," says Lamb, co-author of "Packaging Girlhood: Rescuing Our Daughters From Marketers' Schemes." She's also concerned by some of the social scenarios Bratz dolls are placed in, which she calls "'Sex and the City' scenarios for little girl dolls -- hanging out on corners, at parties, in hot tubs."

Lamb said the "Bratz" filmmakers had no choice but to outfit the girls more modestly than the dolls, "because if they dressed real girls in those outfits they'd look sleazy." But she added that parents "need to look at the whole package. Girls will still want to buy Bratz dolls or padded Bratz bralettes. It's the whole Bratz package that they're buying and supporting."

The film's producers see it differently. Avi Arad, who co-produced the film and made a career in the toy industry, says criticism of the dolls is unjustified.

"I don't think parents are looking at (the whole) picture," Arad said. "In all fairness, this is a huge brand. You couldn't be that successful if most parents really hated it." **MGA** Entertainment says worldwide revenue for all **Bratz** products -- dolls, CDs, video games, DVDs, etc. -- came to $2 billion for the 13-month period straddling last holiday season.

What critics don't understand, Arad says, is the stylistic reasons behind the doll's design. "A big head allows more hair play," he says. "The lips are for styling." As for the film, he says the aim was to create a truly multiethnic group of characters who learn to value friendship over the need for social acceptance.

"If parents give it a chance, they'll walk out and say, 'I like these kids,'" says Arad. Besides, he says, what's wrong with a little passion for fashion? "I see kids today folding down their skirts because it's fashionable to have a little belly," he says. "It doesn't make them bad girls. It doesn't reflect their beliefs." (And he points out that the costume designer, Bernadene Morgan, is a grandmother.)

Nonetheless, at least one young girl has no intention of seeing the film, and has never played with the doll. "I think they're really immodest," says Hannah Brown, 13, who's entering the eighth grade in Spartansburg, S.C. "Third-graders will see these dolls wearing halter tops and spaghetti straps and really short miniskirts, and think it's OK for them, too. It's not."

But Lauren Kaufman, whose daughters own several Bratz dolls, thinks Yasmin and cohorts get a slightly bum rap.

"My kids just think they're cool dolls," said the mother of two from Scarsdale, N.Y. "As for their values, they get them from me. I really don't worry about that."

And as for the movie, she says, "yes, we'll probably go see it."

---- INDEX REFERENCES ----

COMPANY: ABC INTERNATIONAL TRADERS INC; MGA ENTERTAINMENT INC

INDUSTRY:  (Entertainment (1EN08); Consumer Products & Services (1CO62); Games & Toys (1GA85))

REGION:  (USA (1US73); Americas (1AM92); North America (1NO39); New York (1NE72))

Language:  EN

OTHER INDEXING:  (AMERICAN PSYCHOLOGICAL ASSOCIATION; MGA ENTERTAINMENT; MGA ENTERTAINMENT INC; RC; TOYS)  (Angelina; Arad; Avi Arad; Bernadene Morgan; Bratz; Bratz Kidz; Bratz Shrek; Bratz Spiderman; CDs; Cloe; DVDs; Hannah Brown; Helene Lewis; Kylee; Lamb; Lauren Kaufman; Lewis; Magic Hair; Mary Ann Savage; Nonetheless; Sharon Lamb; Vera Dias)

Word Count: 1181
8/6/07 BSX-TRBREV (No Page)
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.                                                                    NewsRoom

7/30/07 MOBILEREG A6

7/30/07 Press-Register (Mobile, AL) A6

8/22/2007                                                    EXHIBIT ___9___, PAGE __91__

**Exhibit  10**

**From:** westlaw@westlaw.com [mailto:westlaw@westlaw.com]
**Sent:** Monday, August 06, 2007 1:24 AM
**To:** Moore, Michael
**Subject:** WestClip: MGA-ALL

Westlaw.                                                                      NewsRoom

8/6/07 NWSDAY B04

8/6/07 Newsday B04
2007 WLNR 15040145

Newsday (USA)
Copyright 2007 Newsday, Inc.

August 6, 2007

Section: PART II

Too dolled up?

GEOFF BOUCHER. Los Angeles Times

Remember Tiger Beat magazine? Sean McNamara is the Tiger Beat of Hollywood, and
he knows his audience. He's directed 13 films, delivered television hits such
as "That's So Raven" and "Even Stevens" to Disney, and was astute enough to
giveyoungsters named Jessica Alba, Shia LaBeouf and Hilary Duff some of the
first big roles in their careers. Still, when McNamara was approached about
making a live-action film based on the wildly successful dolls called Bratz, he
had to admit he was out of touch.

"I have to be honest, I had never heard of these toys." McNamara trundled off
to the Toys "R" Us with his 5-year-old son. "We checked out the Thomas the
Train aisle, and then I went looking for Bratz. I was blown away. There were
two full walls of Bratz stuff. But when I saw them I thought, 'These aren't
cute dolls - they look like sluts.'"

And there you have it, the unique challenge of McNamara's new film, "Bratz: The
Movie," which opened nationwide Friday. Like the filmmakers behind
"Transformers," McNamara and company are looking for an instant audience by
riding a hugely successful brand name from the toy stores up to the silver
screen. The movie they have made is a fairly wholesome affair, but the brand

EXHIBIT_____ 10 , PAGE_____ 92

they picked clearly has a checkered past. Simply put, parents pay for the movie tickets, and a lot of parents think the Bratz dolls look like 10-inch-tall hoochie mamas.

Extreme doll makeover

The dolls have dewy lips, fishnet stockings and barely-there miniskirts - a creep-out factor for a lot of moms. Earlier this year, a report from the American Psychological Association even mentioned the Bratz dolls by name and said "it is worrisome when dolls designed specifically for 4- to 8-year-olds are associated with an objectified adult sexuality."

Those young doll owners may not recognize their beloved Yasmin, Jade, Sasha and Cloe when they sit down in the theater. The film gives the Bratz a complete makeover that takes them from nightclub sexpots to flirty schoolgirls.

Like the dolls, the film characters are four BFFs (that's "best friends forever," but you knew that) who are ethnically diverse but share "a passion for fashion." Really, though, beyond that, the film has very little connection to the toys. "Bratz: The Movie" seems more indebted to "The Cheetah Girls," "High School Musical," "Clueless" and, oddly, the subversive "Heathers" than it does to its namesake source material. The name's the thing, though. The "Bratz" brand is a stunningly potent one; the dolls first caught the imagination of young girls in late 2001, and by the end of 2005, Bratz products had topped $2 billion in global sales. They are especially popular in England and Australia.

In elementary schools you are either a Bratz girl or a Barbie girl. You'll find some girls who are neither, of course, but very few who claim allegiance to both camps. They are just too different, and, besides, their accessories aren't interchangeable.

There's plenty of bad blood between Mattel Inc., the maker of the venerable Barbie collection, and MGA Entertainment Inc., too, which makes the Bratz. There have been lawsuits and a nasty feud as MGA has cut into Barbie's plasticized hegemony, and the rivals vie for the hearts of girls with Internet social sites, fashion accessories, video games, lip gloss, cartoons on DVD, pajamas and CD players.

Barbie is country-club white (although she has plenty of diverse Barbie pals), while the Bratz are the urban poly-hues of a Benetton ad. This makes it easy to assume that consumers are divided along race lines, and although that certainly is part of it, the assumption doesn't hold up all that well. There are far too many white kids playing with Bratz. One of the big determining factors may be the age of the parents or elders who are actually buying the toys; if they were born in the hip-hop era, they are more likely to consider the toys to be cute versions of the MTV images of Mariah, Missy or Fergie, music artists they play in their car on the way to work. Barbie, meanwhile, is so not hip-hop.

Losing street cred?

The problem presented by "Bratz: The Movie" is that some loyalists may wonder if their sassy and urban heroes are sliding a bit toward the white, suburban Barbie ethos.

To keep the separation line clear, the filmmakers decided early on that a Barbie-esque character pretty much had to be the villain in the movie. The heavy in the film is student-body president Meredith, who is platinum blond, affluent, haughty and in possession of both nefarious plans to rule the school and a pampered pooch named (ahem) Paris.

8/22/2007

EXHIBIT __10__, PAGE __93__

Avi Arad has a unique point of view on this contemporary valley of the dolls. He made his name as a toy designer and executive of note in the 1980s and '90s, and he worked on the Barbie line for a time. By the end of that decade, he was leading Marvel Enterprises. Now Arad has his own production company, and he has been the driving force behind "Bratz: The Movie."

"The genius in Barbie is that they made her belong to no one," Arad said. "And she had an aura of perfection about her. But then the world changed. Perfection is imperfection. Not everyone is going to look like the cover of the fashion magazine."

Arad said that "the Bratz are the X-Men for girls," an allusion to the struggle against the establishment and the outsiders' stigma that are key in the story of the mutant superheroes.

"The first thing I saw in them was diversity," Arad said. "I really liked the idea that they had a Latino girl, an Asian girl, an African-American girl and a lily-white kid. They show that your color is not going to set up your path in life. And I think that works because, among kids, it's becoming more and more of 'one world for a change.'"

The screenplay is already being written for a sequel to "Bratz: The Movie," and he is sizing up a venture that would adapt the property for a Broadway musical. Arad also said a line of Bratz dolls and tie-in products would be launched based on the film's imagery, story and less-saucy characters.

"I wanted a movie with the kind of kids I would want my daughter's friends to be like," Arad said. "They ended up being the kind of people I would want as my daughters."

---- INDEX REFERENCES ----

COMPANY: MATTEL INC; JADE; MAYOTTE TOURISME ET VOYAGES; TOYS R US INC; BRATZ F C; P AND B HOLDINGS INC; MERLIN GERIN ALPES SAS; MGA ENTERTAINMENT INC; BENETTON

INDUSTRY: (Entertainment (1EN08); Consumer Products & Services (1CO62); Games & Toys (1GA85))

Language: EN

OTHER INDEXING: (AMERICAN PSYCHOLOGICAL ASSOCIATION; BENETTON; BRATZ; CD; DVD; JADE; MATTEL INC; MGA; MGA ENTERTAINMENT INC; MTV; SASHA; TIGER BEAT; TOYS "R; YASMIN) (Arad; Avi Arad; Barbie; Cloe; Extreme; Hilary Duff; Jessica Alba; McNamara; Meredith; Remember Tiger Beat; Sean McNamara; Shia LaBeouf)

KEYWORDS: COVER.MOVIES.

EDITION: ALL EDITIONS

Word Count: 1235
8/6/07 NWSDAY B04
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit 11**

1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  jkeker@kvn.com
   MICHAEL H. PAGE - #154913
3  mpage@kvn.com
   CHRISTA M. ANDERSON - #184325
4  canderson@kvn.com
   710 Sansome Street
5  San Francisco, CA 94111-1704
   Telephone: (415) 391-5400
6  Facsimile: (415) 397-7188

7  Attorneys for Plaintiff
   CARTER BRYANT

8

9

10                  UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12                        EASTERN DIVISION

13

14  CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)
                                         (consolidated with CV 04-9059 & 05-
15                         Plaintiff,    2727

16        v.                             CARTER BRYANT'S REPLY TO
                                         MATTEL'S COUNTERCLAIMS
16  MATTEL, INC. a Delaware
17  Corporation,                         DEMAND FOR JURY TRIAL

18                         Defendant.    Dept:      Courtroom 1
                                         Judge:     Hon. Stephen G. Larson
19
    CONSOLIDATED WITH MATTEL,
20  INC., v. BRYANT and MGA
    ENTERTAINMENT, INC. v.               Discovery Cut-Off: Jan. 14, 2008
21  MATTEL, INC.                         Pre-Trial Conference: April 7, 2008
                                         Trial Date: April 29, 2008
22

23

24        Counter-defendant Carter Bryant ("Bryant") replies to Mattel's counter-

25  claims, set forth in Mattel's Second Amended Answer and Counterclaims, as

26  follows:

27        As a preliminary matter, Bryant notes that many of Mattel's allegations

28  implicitly include false premises or assumptions. Bryant's denial of any allegation

400554.01

EXHIBIT 11, PAGE 95

1  should be construed as a denial of both the allegation itself, and any of the
2  allegation's underlying, unsupported assumptions.

3      Mattel's counterclaims also contain just the sort of argumentative rhetoric in
4  place of factual allegations that Mattel claimed to protest in responding to MGA's
5  claims against it. Bryant denies all allegations not specifically admitted, including
6  Mattel's argument and innuendo. Where Bryant admits any portion of an
7  allegation, Bryant admits only the specific facts admitted, and denies all of
8  Mattel's accompanying characterizations, conclusions, and speculation contained
9  in that allegation or in Mattel's counterclaims as a whole.

10     Bryant also submits that Mattel's use of headings throughout its
11 counterclaims is improper, and that therefore no response to Mattel's headings is
12 required. If any response is required, Bryant denies all allegations contained in
13 Mattel's headings.

14     Finally, Bryant notes that many of the allegations in this complaint allege
15 nothing relating Bryant. Although Bryant recognizes that he is nonetheless
16 required to answer them, Bryant lacks any knowledge or information concerning
17 these allegations. In denying these allegations based on his lack of knowledge and
18 information regarding alleged events not involving him, as with all his other
19 denials, Bryant also denies Mattel's negative characterizations and innuendo about
20 all of the alleged events, including any events or facts that may in fact have
21 occurred (such as, for example, MGA's hiring of certain individuals previously
22 employed by Mattel).

### Responses

24  1.   Bryant denies the allegations of this paragraph.
25  2.   Bryant admits that he conceived, created and developed Bratz designs,
26 that he entered into an agreement with MGA regarding Bratz, and that Mattel has
27 improperly sought to register copyrights for certain Bratz designs. Bryant denies
28 all remaining allegations of this paragraph.

EXHIBIT __1__, PAGE _96_

1      3.    Bryant denies that MGA engaged in illegal conduct in entering the

2  agreement with Bryant. Bryant lacks knowledge or information sufficient to form

3  a belief as to the truth of the remaining allegations of this paragraph, and on that

4  basis denies them.

5      4.    Bryant lacks knowledge or information sufficient to form a belief as

6  to the truth of the allegations of this paragraph, and on that basis denies them.

7      5.    Bryant denies the allegations of this paragraph.

8      6.    Bryant admits that Mattel purports to seek relief under 17 U.S.C. § §

9  101 *et seq.*, and 18 U.S.C. § 1964(c), with supplemental jurisdiction under 28

10  U.S.C. § 1367 for its purported state law claims. Bryant admits that the Court has

11  jurisdiction to hear claims against Bryant, based on those allegations, but denies

12  that Mattel is entitled to any relief or recovery whatsoever on its alleged claims.

13  Bryant lacks knowledge or information sufficient to form a belief as to the truth of

14  the allegations of this paragraph regarding other defendants, and on that basis

15  denies them.

16      7.    Bryant admits that venue is proper in this District as to claims against

17  Bryant, but denies that Mattel is entitled to any relief or recovery whatsoever on its

18  alleged claims. Bryant lacks knowledge or information sufficient to form a belief

19  as to the truth of the allegations of this paragraph regarding other defendants, and

20  on that basis denies them.

21      8.    Bryant admits the allegation of this paragraph.

22      9.    Bryant admits the allegations of the first and second sentences of this

23  paragraph. Bryant denies the remaining allegations of this paragraph.

24      10.    Bryant admits the allegations of this paragraph.

25      11.    Bryant lacks knowledge or information sufficient to form a belief as

26  to the truth of the allegations of this paragraph, and on that basis denies them.

27      12.    Bryant lacks knowledge or information sufficient to form a belief as

28  to the truth of the allegations of this paragraph, and on that basis denies them.

3

EXHIBIT \_\_ll\_\_, PAGE 97

CARTER BRYANT'S REPLY TO MATTEL'S COUNTERCLAIMS
CASE NO. CV 04-09049 SGL (RNBx)

1        13.   Bryant admits that Isaac Larian is the President and CEO of MGA and

2   an individual residing in the County of Los Angeles.  Bryant denies the remaining

3   allegations of this paragraph.

4       14.   Bryant lacks knowledge or information sufficient to form a belief as

5   to the truth of the allegations of this paragraph, and on that basis denies them.

6       15.   Bryant denies the allegations of this paragraph.

7       16.   Bryant admits that Mattel manufactures and markets toys, games,

8   dolls and other consumer products.  Bryant lacks knowledge or information

9   sufficient to form a belief as to the truth of the allegations of the second, third, and

10   fourth sentences of this paragraph, and on that basis denies them.  Bryant admits

11   that Mattel is a well-known company, and denies all remaining allegations of this

12   paragraph.

13       17.   Bryant admits that Mattel maintains a large design center in El

14   Segundo, California at which many designers, sculptors, painters and other artists

15   work to create Mattel products.  Bryant lacks knowledge or information sufficient

16   to form a belief as to the truth of all remaining allegations of this paragraph, and on

17   that basis denies them.

18       18.   Bryant lacks knowledge or information sufficient to form a belief as

19   to the truth of the allegations of this paragraph, and on that basis denies them.

20       19.   Bryant admits that MGA is a toy manufacturer that launched a fashion

21   doll line.  Bryant lacks knowledge or information sufficient to form a belief as to

22   the truth of the allegations of the second sentence of this paragraph, and on that

23   basis denies them.  Bryant denies that MGA stole a fashion doll that was owned by

24   Mattel, and denies all remaining allegations of this paragraph.

25       20.   Bryant denies all allegations of this paragraph.

26       21.   Bryant admits that he is a former Mattel employee, that he began

27   working for Mattel in September 1995 and worked in Mattel's Design Center as a

28   Barbie product designer, and that he stopped working with Mattel in or about April

400554.01

4

EXHIBIT ___ll___ , PAGE 98

1   1998.  Bryant denies that he moved to Missouri to live with his parents in or about

2   April 1998.  Bryant admits that late in 1998, he applied to Mattel to be rehired, and

3   that on or about January 4, 1999, he began working at Mattel in Mattel's Design

4   Center as a product designer.  Bryant denies any remaining allegations of this

5   paragraph.

6       22.    Bryant admits that, upon his return to Mattel in January 1999, he

7   signed the document attached to Mattel's Counterclaims as Exhibit A, which is

8   titled "Employee Confidential Information and Inventions Agreement."  Bryant

9   denies all remaining allegations of this paragraph, explicit or implicit, including

10  Mattel's allegations regarding the legal significance of this document.

11      23.    Bryant denies the allegations of this paragraph.

12      24.    Bryant admits that, upon his return to Mattel in January 1999, he

13  signed the document attached to Mattel's Counterclaims as Exhibit B, which is

14  titled "Conflict of Interest Questionnaire."  Bryant admits that he disclosed on this

15  document freelance work he had performed while in Missouri for Ashton-Drake,

16  which is unrelated to Mattel's allegations here.  Bryant denies all remaining

17  allegations of this paragraph, explicit or implicit, including Mattel's allegations

18  regarding the legal significance of this document.

19      25.    Bryant denies the allegations of this paragraph.

20      26.    Bryant denies the allegations of this paragraph, including all the

21  allegations of each of its sub-paragraphs.

22      27.    Bryant denies the allegations of this paragraph.

23      28.    Bryant denies the allegations of this paragraph.

24      29.    Bryant denies the allegations of this paragraph.

25      30.    Bryant lacks knowledge or information sufficient to form a belief as

26  to the truth of the allegations of this paragraph, and on that basis denies them.

27      31.    Bryant admits that samples of the four original Bratz dolls were

28  shown at the Hong Kong Toy Fair in January 2001.  Bryant denies the remaining

1   allegations of this paragraph.

2       32.    Bryant admits that MGA distributes and sells Bratz and Bratz-related

3   products in many countries throughout the world. Bryant lacks knowledge or

4   information sufficient to form a belief as to the truth of the allegations of the

5   second sentence of this paragraph, and on that basis denies them. Bryant admits

6   the allegations of the third sentence of this paragraph. Bryant admits that MGA

7   claims current ownership of Bratz, including the copyrights and copyright

8   registrations attendant thereto. Bryant admits the allegations of the fifth sentence

9   of this paragraph. Bryant denies all remaining allegations of this paragraph

10      33.    Bryant denies the allegations of this paragraph.

11      34.    Bryant denies the allegations of this paragraph.

12      35.    Bryant denies the allegations of this paragraph.

13      36.    Bryant admits that he had an agreement with MGA and the terms of

14   that agreement speak for themselves. Bryant denies all remaining allegations of

15   this paragraph.

16      37.    Bryant lacks knowledge or information sufficient to form a belief as

17   to the truth of the allegations of this paragraph, and on that basis denies them.

18      38.    Bryant lacks knowledge or information sufficient to form a belief as

19   to the truth of the allegations of this paragraph, and on that basis denies them.

20      39.    Bryant lacks knowledge or information sufficient to form a belief as

21   to the truth of the allegations of this paragraph, and on that basis denies them.

22      40.    Bryant lacks knowledge or information sufficient to form a belief as

23   to the truth of the allegations of this paragraph, and on that basis denies them.

24      41.    Bryant lacks knowledge or information sufficient to form a belief as

25   to the truth of the allegations of this paragraph, and on that basis denies them.

26      42.    Bryant lacks knowledge or information sufficient to form a belief as

27   to the truth of the allegations of this paragraph, and on that basis denies them.

28      43.    Bryant lacks knowledge or information sufficient to form a belief as

EXHIBIT __11__, PAGE __100__

6

CARTER BRYANT'S REPLY TO MATTEL'S COUNTERCLAIMS
CASE NO. CV 04-09049 SGL (RNBx)

1  to the truth of the allegations of this paragraph, and on that basis denies them.

2     44.   Bryant lacks knowledge or information sufficient to form a belief as
3  to the truth of the allegations of this paragraph, and on that basis denies them.

4     45.   Bryant lacks knowledge or information sufficient to form a belief as
5  to the truth of the allegations of this paragraph, and on that basis denies them.

6     46.   Bryant lacks knowledge or information sufficient to form a belief as
7  to the truth of the allegations of this paragraph, and on that basis denies them.

8     47.   Bryant lacks knowledge or information sufficient to form a belief as
9  to the truth of the allegations of this paragraph, and on that basis denies them.

10    48.   Bryant lacks knowledge or information sufficient to form a belief as
11  to the truth of the allegations of this paragraph, and on that basis denies them.

12    49.   Bryant lacks knowledge or information sufficient to form a belief as
13  to the truth of the allegations of this paragraph, and on that basis denies them.

14    50.   Bryant lacks knowledge or information sufficient to form a belief as
15  to the truth of the allegations of this paragraph, and on that basis denies them.

16    51.   Bryant lacks knowledge or information sufficient to form a belief as
17  to the truth of the allegations of this paragraph, and on that basis denies them.

18    52.   Bryant lacks knowledge or information sufficient to form a belief as
19  to the truth of the allegations of this paragraph, and on that basis denies them.

20    53.   Bryant lacks knowledge or information sufficient to form a belief as
21  to the truth of the allegations of this paragraph, and on that basis denies them.

22    54.   Bryant lacks knowledge or information sufficient to form a belief as
23  to the truth of the allegations of this paragraph, and on that basis denies them.

24    55.   Bryant lacks knowledge or information sufficient to form a belief as
25  to the truth of the allegations of this paragraph, and on that basis denies them.

26    56.   Bryant lacks knowledge or information sufficient to form a belief as
27  to the truth of the allegations of this paragraph, and on that basis denies them.

28    57.   Bryant lacks knowledge or information sufficient to form a belief as

EXHIBIT __lI__, PAGE __lbl__

7

1   to the truth of the allegations of this paragraph, and on that basis denies them.

2       58.    Bryant lacks knowledge or information sufficient to form a belief as
3   to the truth of the allegations of this paragraph, and on that basis denies them.

4       59.    Bryant lacks knowledge or information sufficient to form a belief as
5   to the truth of the allegations of this paragraph, and on that basis denies them.

6       60.    Bryant lacks knowledge or information sufficient to form a belief as
7   to the truth of the allegations of this paragraph, and on that basis denies them.

8       61.    Bryant lacks knowledge or information sufficient to form a belief as
9   to the truth of the allegations of this paragraph, and on that basis denies them.

10      62.    Bryant lacks knowledge or information sufficient to form a belief as
11  to the truth of the allegations of this paragraph, and on that basis denies them.

12      63.    Bryant lacks knowledge or information sufficient to form a belief as
13  to the truth of the allegations of this paragraph, and on that basis denies them.

14      64.    Bryant lacks knowledge or information sufficient to form a belief as
15  to the truth of the allegations of this paragraph, and on that basis denies them.

16      65.    Bryant lacks knowledge or information sufficient to form a belief as
17  to the truth of the allegations of this paragraph, and on that basis denies them.

18      66.    Bryant lacks knowledge or information sufficient to form a belief as
19  to the truth of the allegations of this paragraph, and on that basis denies them.

20      67.    Bryant lacks knowledge or information sufficient to form a belief as
21  to the truth of the allegations of this paragraph, and on that basis denies them.

22      68.    Bryant lacks knowledge or information sufficient to form a belief as
23  to the truth of the allegations of this paragraph, and on that basis denies them.

24      69.    Bryant lacks knowledge or information sufficient to form a belief as
25  to the truth of the allegations of this paragraph, and on that basis denies them.

26      70.    Bryant lacks knowledge or information sufficient to form a belief as
27  to the truth of the allegations of this paragraph, and on that basis denies them.

28      71.    Bryant lacks knowledge or information sufficient to form a belief as

EXHIBIT __11__, PAGE __102__

8

1 | to the truth of the allegations of this paragraph, and on that basis denies them.

2 |       72.   Bryant lacks knowledge or information sufficient to form a belief as
3 | to the truth of the allegations of this paragraph, and on that basis denies them.

4 |       73.   Bryant lacks knowledge or information sufficient to form a belief as
5 | to the truth of the allegations of this paragraph, and on that basis denies them.

6 |       74.   Bryant lacks knowledge or information sufficient to form a belief as
7 | to the truth of the allegations of this paragraph, and on that basis denies them.

8 |       75.   Bryant lacks knowledge or information sufficient to form a belief as
9 | to the truth of the allegations of this paragraph, and on that basis denies them.

10 |       76.   Bryant lacks knowledge or information sufficient to form a belief as
11 | to the truth of the allegations of this paragraph, and on that basis denies them.

12 |       77.   Bryant lacks knowledge or information sufficient to form a belief as
13 | to the truth of the allegations of this paragraph, and on that basis denies them.

14 |       78.   Bryant lacks knowledge or information sufficient to form a belief as
15 | to the truth of the allegations of this paragraph, and on that basis denies them.

16 |       79.   Bryant lacks knowledge or information sufficient to form a belief as
17 | to the truth of the allegations of this paragraph, and on that basis denies them.

18 |       80.   Bryant lacks knowledge or information sufficient to form a belief as
19 | to the truth of the allegations of this paragraph, and on that basis denies them.

20 |       81.   Bryant lacks knowledge or information sufficient to form a belief as
21 | to the truth of the allegations of this paragraph, and on that basis denies them.

**Mattel's First Counterclaim**

82.   Bryant repeats and realleges his answers to paragraphs 1 through 81 above, as though fully set forth here at length.  Bryant denies any allegations not expressly admitted.

83.   Bryant denies the allegations of this paragraph.

84.   Bryant denies the allegations of this paragraph.

85.   Bryant denies the allegations of this paragraph.

EXHIBIT __11__, PAGE __102__

9

1    86.    Bryant denies the allegations of this paragraph.

2    87.    Bryant denies the allegations of this paragraph.

3    **Mattel's Second Counterclaim**

4    88.    Bryant repeats and realleges its answers to paragraphs 1 through 87

5    above, as though fully set forth here at length.  Bryant denies any allegations not

6    expressly admitted.

7    89.    Bryant denies the allegations of this paragraph.

8    90.    Bryant denies the allegations of this paragraph.

9    91.    Bryant denies the allegations of this paragraph.

10    92.    Bryant denies the allegations of this paragraph.

11    93.    Bryant denies the allegations of this paragraph, including the

12    allegations of all of its sub-paragraphs.

13    94.    Bryant denies the allegations of this paragraph.

14    95.    Bryant denies the allegations of this paragraph.

15    96.    Bryant denies the allegations of this paragraph.

16    97.    Bryant denies the allegations of this paragraph.

17    **Mattel's Third Counterclaim**

18    98.    Bryant repeats and realleges its answers to paragraphs 1 through 97

19    above, as though fully set forth here at length.  Bryant denies any allegations not

20    expressly admitted.

21    99.    Bryant denies the allegations of this paragraph.

22    100.    Bryant denies the allegations of this paragraph.

23    101.    Bryant denies the allegations of this paragraph.

24    102.    Bryant denies the allegations of this paragraph.

25    103.    Bryant denies the allegations of this paragraph.

26    104.    Bryant denies the allegations of this paragraph.

27    105.    Bryant denies the allegations of this paragraph.

28

EXHIBIT 11, PAGE 104

400554.01

10

CARTER BRYANT'S REPLY TO MATTEL'S COUNTERCLAIMS
CASE NO. CV 04-09049 SGL (RNBx)

**Mattel's Fourth Counterclaim**

106. Bryant repeats and realleges its answers to paragraphs 1 through 105 above, as though fully set forth here at length. Bryant denies any allegations not expressly admitted.

107. Bryant denies the allegations of this paragraph.

108. Bryant denies the allegations of this paragraph.

109. Bryant denies the allegations of this paragraph.

110. Bryant denies the allegations of this paragraph.

111. Bryant denies the allegations of this paragraph.

112. Bryant denies the allegations of this paragraph.

113. Bryant denies the allegations of this paragraph.

114. Bryant denies the allegations of this paragraph.

115. Bryant denies the allegations of this paragraph.

**Mattel's Fifth Counterclaim**

116. Bryant repeats and realleges its answers to paragraphs 1 through 115 above, as though fully set forth here at length. Bryant denies any allegations not expressly admitted.

117. Bryant denies the allegations of this paragraph.

118. Bryant denies the allegations of this paragraph.

119. Bryant denies the allegations of this paragraph.

120. Bryant denies the allegations of this paragraph.

121. Bryant denies the allegations of this paragraph.

**Mattel's Sixth Counterclaim**

122. Bryant repeats and realleges its answers to paragraphs 1 through 122 above, as though fully set forth here at length. Bryant denies any allegations not expressly admitted.

123. Bryant denies the allegations of this paragraph.

124. Bryant denies the allegations of this paragraph.

EXHIBIT 11, PAGE 105

11

400554.01

125. Bryant denies the allegations of this paragraph.

126. Bryant denies the allegations of this paragraph.

127. Bryant denies the allegations of this paragraph.

128. Bryant denies the allegations of this paragraph.

**Mattel's Seventh Counterclaim**

129. Bryant repeats and realleges its answers to paragraphs 1 through 128 above, as though fully set forth here at length. Bryant denies any allegations not expressly admitted.

130. Bryant denies the allegations of this paragraph.

131. Bryant denies the allegations of this paragraph.

132. Bryant denies the allegations of this paragraph.

133. Bryant denies the allegations of this paragraph.

134. Bryant denies the allegations of this paragraph.

135. Bryant denies the allegations of this paragraph.

**Mattel's Eighth Counterclaim**

136. Bryant repeats and realleges its answers to paragraphs 1 through 135 above, as though fully set forth here at length. Bryant denies any allegations not expressly admitted.

137. Bryant denies the allegations of this paragraph.

138. Bryant denies the allegations of this paragraph.

139. Bryant denies the allegations of this paragraph.

140. Bryant denies the allegations of this paragraph.

141. Bryant denies the allegations of this paragraph.

**Mattel's Ninth Counterclaim**

142. Bryant repeats and realleges its answers to paragraphs 1 through 141 above, as though fully set forth here at length. Bryant denies any allegations not expressly admitted.

143. Bryant denies the allegations of this paragraph.

EXHIBIT __11__, PAGE 106

12

400554.01

1    144.   Bryant denies the allegations of this paragraph.

2    145.   Bryant denies the allegations of this paragraph.

3    146.   Bryant denies the allegations of this paragraph.

4    147.   Bryant denies the allegations of this paragraph.

5    148.   Bryant denies the allegations of this paragraph

6                    **Mattel's Tenth Counterclaim**

7    149.   Bryant repeats and realleges its answers to paragraphs 1 through 148

8  above, as though fully set forth here at length.  Bryant denies any allegations not

9  expressly admitted.

10   150.   Bryant denies the allegations of this paragraph.

11   151.   Bryant denies the allegations of this paragraph.

12   152.   Bryant denies the allegations of this paragraph.

13   153.   Bryant denies the allegations of this paragraph.

14   154.   Bryant denies the allegations of this paragraph.

15                  **Mattel's Eleventh Counterclaim**

16   155.   Bryant repeats and realleges its answers to paragraphs 1 through 154

17  above, as though fully set forth here at length.  Bryant denies any allegations not

18  expressly admitted.

19   156.   Bryant denies the allegations of this paragraph.

20   157.   Bryant denies the allegations of this paragraph.

21   158.   Bryant denies the allegations of this paragraph.

22   159.   Bryant denies the allegations of this paragraph.

23   160.   Bryant denies the allegations of this paragraph.

24   161.   Bryant denies the allegations of this paragraph.

25   162.   Bryant denies the allegations of this paragraph.

26                  **Mattel's Twelfth Counterclaim**

27   163.   Bryant repeats and realleges its answers to paragraphs 1 through 162

28  above, as though fully set forth here at length.  Bryant denies any allegations not

EXHIBIT __11__, PAGE __107__

13

400554.01

CARTER BRYANT'S REPLY TO MATTEL'S COUNTERCLAIMS
CASE NO. CV 04-09049 SGL (RNBx)

1 | expressly admitted.

2     164.   Bryant admits the allegation of this paragraph regarding the contents
3 | of section 17200 of the California Business and Professions Code, but denies that
4 | Mattel is entitled to any relief or recovery whatsoever on its claims.

5     165.   Bryant denies the allegations of this paragraph.

6     166.   Bryant denies the allegations of this paragraph.

7             **Mattel's Thirteenth Counterclaim**

8     167.   Bryant repeats and realleges its answers to paragraphs 1 through 166
9 | above, as though fully set forth here at length.  Bryant denies any allegations not
10 | expressly admitted.

11     168.   Bryant admits that an actual controversy exists between the parties,
12 | because of Mattel's campaign of harassing litigation, but denies all other
13 | allegations of this paragraph, and denies that Mattel is entitled to any relief or
14 | recovery whatsoever.

15     169.   Bryant admits that Mattel seeks the relief recited in this paragraph, but
16 | denies all remaining allegations of this paragraph, and denies that Mattel is entitled
17 | to any relief or recovery whatsoever.

18     170.   Bryant admits that Mattel seeks the relief recited in this paragraph, but
19 | denies all remaining allegations of this paragraph, and denies that Mattel is entitled
20 | to any relief or recovery whatsoever.

21              **Prayer for Relief**

22     This section of Mattel's counterclaims contains no factual allegations, and
23 | requires no response.  Bryant denies that Mattel is entitled to any relief whatsoever,
24 | and respectfully requests judgment dismissing Mattel's counterclaims with
25 | prejudice and with costs and attorneys' fees to Bryant, as may be allowed by law,
26 | and whatever other relief to Bryant the Court deems appropriate.

27     Except as specifically admitted above, Bryant denies each and every
28 | allegation in Mattel's counterclaims.

EXHIBIT __1__, PAGE __175__

<u>Affirmative Defenses</u>

Bryant states the following affirmative defenses, but does so without assuming the burden of proof on any defense or issue for which that burden rests with Mattel or any other party, and without admitting any wrongful conduct by any defendant or that Mattel has any right to relief of any kind:

### First Affirmative Defense (Failure to State a Claim)

Mattel's counterclaims, and each claim for relief, fail to state a claim upon which relief may be granted.

### Second Affirmative Defense (Unclean Hands)

Mattel's counterclaims, and each claim for relief, are barred by the equitable doctrine of unclean hands.

### Third Affirmative Defense (Waiver)

Mattel's counterclaims, and each claim for relief, are barred by the equitable doctrine of waiver.

### Fourth Affirmative Defense (Estoppel)

Mattel's counterclaims, and each claim for relief, are barred by the equitable doctrine of estoppel.

### Fifth Affirmative Defense (Laches)

Mattel's counterclaims, and each claim for relief, are barred by the equitable doctrine of laches.

### Sixth Affirmative Defense (Consent)

Mattel's counterclaims, and each claim for relief, are barred by the equitable doctrine of consent.

### Seventh Affirmative Defense (Statute of Limitations)

Mattel's counterclaims, and each claim for relief, are barred by the applicable statutes of limitations, including but not limited to Code of Civil Procedure §§ 337, 339, 343, and 338(c).

EXHIBIT __11__, PAGE __107__

1  not applicable.

2                              **Prayer for Relief**

3          WHEREFORE, Bryant respectfully requests relief as follows:

4          1.     That Mattel's counterclaims be dismissed with prejudice;

5          2.     That Mattel take nothing by its counterclaims;

6          3.     That Mattel's request for injunctive and other equitable relief be

7  denied;

8          4.     That Bryant be awarded the cost of this litigation, including

9  reasonable attorneys' fees and interest; and

10         5.     That Bryant receive such other relief as the Court may deem proper.

11

12                                      Respectfully submitted,

13

14

15  Dated:  August 13, 2007              KEKER & VAN NEST, LLP

16

17

18                              By
                                  CHRISTA M. ANDERSON
19                                Attorneys for Plaintiff
                                  CARTER BRYANT
20

21

22

23

24

25

26

27

28

                                                  EXHIBIT  11  , PAGE  112

                                        18
                      CARTER BRYANT'S REPLY TO MATTEL'S COUNTERCLAIMS
                           CASE NO. CV 04-09049 SGL (RNBx)

1

**DEMAND FOR JURY TRIAL**

2

3        Bryant respectfully requests a trial by jury for all issues so triable.

4

5   Dated:  August 13, 2007

6                                                 KEKER & VAN NEST, LLP

7

8                                          By:

9                                                 CHRISTA M. ANDERSON
                                                   Attorneys for Plaintiff
                                                   CARTER BRYANT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

400554.01

EXHIBIT ___, PAGE ___

## PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On August 13, 2007, I served the following document(s):

### CARTER BRYANT'S REPLY TO MATTEL'S COUNTERCLAIMS

### DEMAND FOR JURY TRIAL

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery.

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Tel:  213/443-3000
Fax:  213/443-3100
johnquinn@quinnemanuel.com
michaelzeller@quinnemanuel.com

Patricia L. Glaser
Christensen Glaser Fink Jacobs Weil & Shapiro
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Tel:  310/553-3000
Fax:  310/556-2920
pglaser@chrisglase.com

Diana M. Torres
O'Melveny & Myers, LLP
400 S. Hope Street
Los Angeles, CA 90071
Tel:  213/430-6000
Fax:  213/430-6407
dtorres@omm.com

Executed on August 13, 2007, at San Francisco, California.

EXHIBIT 11 , PAGE 114

1      I declare under penalty of perjury under the laws of the State of California

2  that the above is true and correct.

3

4                                        _Julie Selby_

5                          JULIE A. SELBY

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                      EXHIBIT __1__, PAGE __16__

395645.01

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)

# EXHIBIT 9

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
   Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:  (213) 443-3100

8  Attorneys for Plaintiff Mattel, Inc.

9

10                UNITED STATES DISTRICT COURT

11               CENTRAL DISTRICT OF CALIFORNIA

12                     EASTERN DIVISION

| | |
|---|---|
| 13  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 14  Plaintiff, | Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727 |
| 15  vs. | |
| 16  MATTEL, INC., a Delaware corporation, | [PUBLIC REDACTED] DECLARATION OF MICHAEL MOORE IN SUPPORT OF MATTEL, INC.'S OPPOSITION TO MGA ENTERTAINMENT, INC.'S MOTION FOR TERMINATING SANCTIONS |
| 17 | |
| 18  Defendant. | |
| 19  AND CONSOLIDATED CASES | Date:    August 27, 2007 Time:    10:00 a.m. Place:   Courtroom 1 |
| 20 | |
| 21 | Discovery Cut-off:  January 14, 2008 Pre-trial Conference:  April 7, 2008 Trial Date:  April 29, 2008 |
| 22 | |
| 23 | |

24

25

26

27

28

<u>DECLARATION OF MICHAEL MOORE</u>

I, Michael Moore, declare as follows:

1.    I make this declaration in support of Mattel's Opposition to MGA Entertainment, Inc.'s Motion for Terminating Sanctions. I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.    I have been a Mattel employee since December 2000. I am currently Senior Counsel in Mattel's Legal Department.

3.    I have been personally involved with the collection and preservation of evidence in not only <u>Bryant v. Mattel</u> and the consolidated cases, but with other litigation (to which MGA and Bryant were not parties) involving Mattel products and product lines known as MY SCENE and DIVA STARZ.

4.    On November 24, 2003, I, with outside counsel, received a copy of Carter Bryant's contract with MGA dated "as of September 18, 2000" from a party in litigation with MGA in the Hong Kong courts (in a case to which Mattel was not a party). A true and correct copy of that contract is attached as Exhibit 1.

5.    I personally participated in and supervised the investigation, collection and preservation of documents that relate to the basis of Mattel's claims in this litigation. I personally have spent hundreds of hours beginning in 2003 searching for, collecting and preserving documents, including electronic data, in connection with this litigation. All told, the legal personnel working at or on behalf of Mattel alone have devoted many thousands of hours beginning in and since 2003 searching for, collecting and preserving documents, including electronic data, in connection with this litigation. Throughout the process, on an on-going basis whenever a Mattel employee was identified as having potentially pertinent information, outside counsel and I instructed those Mattel employees who potentially could have had Bryant related documents to collect them and give them to me. Because the efforts have been considerable, it is difficult to summarize in a

1  Declaration the entirety of what Mattel has done to preserve documents, including
2  electronic data, in connection with this litigation, this Declaration focuses on certain
3  categories of examples of such preservation efforts.

4       6.     Mattel employed Carter Bryant, most recently, from January 4,
5  1999 to October 21, 2000.  During that time he worked in Mattel's "Barbie
6  Collector" group.  Because Mattel has an e-mail retention policy of 90-days on its e-
7  mail servers and had a 30-day rotation policy for e-mail server backup tapes, any e-
8  mail message that Carter Bryant authored or received or was related to him would
9  not have been on either an e-mail server or a backup tape 120-days after he quit, by
10 mid-February 2001.  Nevertheless, starting in 2003 and more than once, I searched
11 for old e-mail server backup tapes, but located none in any location where they were
12 usually stored.

13      7.     Mattel employees, however, also store e-mails older than 90 days
14 in other places, including by printing them out, saving them on personal hard drives
15 or saving them on network data servers (as opposed to e-mail servers).  During its
16 numerous and repeated searches, Mattel located certain e-mail messages on which
17 Carter Bryant was an addressee and preserved them.  A true and correct copy of
18 examples of these e-mail messages are attached as Exhibit 2.  Mattel searched for,
19 identified and preserved e-mails relating to Bryant that it could locate.

20
21                        REDACTED
22
23
24      8.     The efforts to search, collect and preserve e-mails relating to
25 Bryant aimed to encompass, among other things, (i) e-mails written by, to or
26 mentioning current or former employees, including Carter Bryant, Cassidy Park,
27 Ann Driskill, Lily Martinez, Mercedeh Ward, Margaret Hatch-Leahy, and certain
28

                              DECLARATION OF MICHAEL MOORE

1   third parties, including Isaac Larian and any other persons using an MGA e-mail
2   address; and (ii) e-mails discussing Bratz and MGA.

3        9.    Mattel also collected and preserved relevant documentary files
4   and created forensic images of hard drives on the personal computers of those
5   employees who were believed to have potentially pertinent information who still
6   worked at Mattel, including, the hard drives of Ann Driskill, Cassidy Park and Lily
7   Martinez. Mattel additionally preserved approximately 130 hard drives that Mattel's
8   IT department had in its possession from prior years.

9        10.   I identified, collected and preserved Mattel's electronic telephone
10  records for the El Segundo campus, which included archive tapes containing the
11  phone logs generated by Mattel's MicroCall software. The archive tapes that were
12  located are currently preserved in a secure, off-site location. Although I, along with
13  others assisting me, also searched for them in 2003, we were unable to locate
14  archive tapes containing such phone logs for October 2000 or December 2000.

15       11.   I also initiated a search for backup tapes for the data server
16  commonly known at Mattel as Zeus beginning in 2003. As a result of the searches,
17  Mattel located and has preserved various archived LTO and DLT back up tapes
18  from its Zeus server. Some older Zeus backup tapes were separately discovered in
19  Mattel's Data Center, located in Phoenix, Arizona. These backup tapes were
20  delivered to me and are from the time periods April, May, August, September and
21  December 1998, January and February 1999, February, March, April, May, June,
22  July, August and December 2000 and January 2001. I have also received Zeus
23  backup tapes for later periods. All of the Zeus backup tapes that have been provided
24  to me are currently preserved in a secure, off-site storage facility.

25       12.   In 2002, Mattel released a new fashion doll line called MY
26  SCENE. In early 2003, Simba Toys & Co. GmbH KG ("Simba") began to market
27  and sell knock-offs of MY SCENE dolls at a toy fair in Nuremberg, Germany.
28  Beginning by no later than approximately Spring 2003, I instructed Mattel

07209/2191062.6

-4-

DECLARATION OF MICHAEL MOORE

1   employees known to me to have worked on designs for Mattel's MY SCENE dolls

2   to gather and preserve documents related to the development of MY SCENE for

3   purposes of litigation against Simba.

4           13.     Mattel filed its action against Simba on July 25, 2003 in the

5   United Kingdom.  A true and correct copy of that complaint is attached as Exhibit 3.

6   Mattel and Simba had an expedited trial in October 2003 in London, England.

7   Mattel prevailed.  All materials that were collected for the Simba litigation have

8   also been preserved for this litigation.

9           14.    In 2002, an individual named Gustavo Duarte Viveros pursued

10  an action in Mexico against Mattel de Mexico claiming that Mattel's DIVA STARZ

11  doll line infringed copyrights in drawings he allegedly created.  After abandoning

12  that action, Duarte Viveros sued Mattel in the Central District of California in

13  October 2004, claiming that Mattel's DIVA STARZ doll line infringed the copyright

14  in his drawings and constituted idea theft.

15          15.    In connection with the Duarte Viveros litigation, Mattel collected

16  and preserved existing documents, electronic files, e-mail and tangible items

17  (making up in excess of 70 boxes) related to DIVA STARZ, including e-mails and

18  other documents of Mattel employees who worked on DIVA STARZ, such as

19  designers Maureen Mullen, Rene Pasko, Joni Pratte and Rob Hudnut, and from

20  various third parties who worked on the project, such as Steve Linker.  In

21  connection with this effort as well, Mattel collected and preserved pertinent existing

22  electronic files from the Zeus server and back-up tapes as well as from the hard

23  drives and other electronic media used by numerous individuals.  All materials that

24  were collected for the Duarte Viveros litigation have also been preserved for this

25  litigation.

26          16.    Beginning in 2005, during the course of defending Duarte

27  Viveros' claims, Mattel discovered certain documents and designs for the DIVA

28  STARZ project that were never publicly released and that pre-date the release of

07209/2191062.6

-5-

DECLARATION OF MICHAEL MOORE

1  Bratz, but that appear to share certain common elements with the Bratz dolls.

2  Attached as Exhibit 4 are true and correct copies of examples of such documents,

3  bates labeled M 0016585-M 0016586.001, M 0016817, M 0016504, TP 0008, TP

4  0009 and TP 0011.

5         I declare under penalty of perjury under the laws of the United States of

6  America that the foregoing is true and correct.

7         Executed on August 13, 2007, at Los Angeles County, California.

8

9

10             Michael Moore

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07209/2191062.6

-6-

1

**PROOF OF SERVICE**

2      I am employed in the County of Los Angeles, State of California. I am over the age of
eighteen years and not a party to the within action; my business address is Now Legal Service,
3   1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

4      On August 21, 2007, I served true copies of the following document(s) described as
**MATTEL, INC.'S SUPPLEMENTAL NOTICE OF LODGING REGARDING MATTEL,**
5   **INC.'S OPPOSITION TO MGA'S MOTION TO COMPEL** on the parties in this action as
follows:

6

7      Diana M. Torres, Esq.
       **O'MELVENY & MYERS, LLP**
       400 S. Hope Street
8      Los Angeles, CA 90071
       *Attorneys for MGA ENTERTAINMENT,*
9      *INC.*

10  **BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s)
being served.
11

       I declare that I am employed in the office of a member of the bar of this Court at whose
12  direction the service was made.

13     Executed on August 21, 2007, at Los Angeles, California.

14

15                                                      _____

16                                                      NOW LEGAL -- Dave Quintana

17

18

19

20

21

22

23

24

25

26

27

28

07209/2169461.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On August 21, 2007, I served true copies of the following document(s) described as **MATTEL, INC.'S SUPPLEMENTAL NOTICE OF LODGING REGARDING MATTEL, INC.'S OPPOSITION TO MGA'S MOTION TO COMPEL** on the parties in this action as follows:

John W. Keker, Esq.
Michael H. Page, Esq.
Christina M. Anderson, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
*Attorneys for Carter Bryant*

Patricia Glaser, Esq.
**Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP**
10250 Constellation Blvd., 19th Floor
Los Angeles, CA  90067
*Attorney for MGA Entertainment*

James Spertus
**Law Offices of James W. Spertus**
12100 Wilshire Blvd., Suite 620
Los Angeles, CA 90025

**BY U.S. MAIL:**  I enclosed the foregoing into sealed envelope(s) addressed as shown above, and I deposited such envelope(s) in the mail at Los Angeles, California.  The envelope was mailed with postage thereon fully prepaid.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 21, 2007, at Los Angeles, California.

Yalonda J. Dekle

07209/2128071.1