**EXHIBIT 1**

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2    (johnquinn@quinnemanuel.com)
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California  90017-2543
   Telephone:   (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mattel, Inc.

8

9                 UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11                      EASTERN DIVISION

12

| | |
|---|---|
| 13 CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
| 14                Plaintiff, | Consolidated with Case Nos. CV 04-9059 and CV 05-2727 |
| 15        v. | |
| 16 MATTEL, INC., a Delaware Corporation, | MATTEL, INC.'S FIRST SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA ENTERTAINMENT, INC.; CARTER BRYANT; MGA ENTERTAINMENT (HK) LIMITED; AND ISAAC LARIAN |
| 17                Defendant, | |
| 18 | |
| 19 | |
| 20 | |
| 21 AND CONSOLIDATED ACTIONS. | |

22

23

24 PROPOUNDING PARTY:   MATTEL, INC.

25 RESPONDING PARTY:     MGA Entertainment, Inc.; Carter Bryant; MGA
                         Entertainment (HK) Limited; and Isaac Larian

26 SET NO.:              First

27

28                                            EXHIBIT __1__ PAGE __4__

              12-27

Pursuant to <u>Federal Rule of Civil Procedure</u> 36, MGA Entertainment, Inc.; Carter Bryant; MGA Entertainment (HK) Limited; and Isaac Larian ("DEFENDANTS") are hereby requested to respond to the following Requests for Admission (the "Requests") within thirty days hereof.  The DEFENDANTS shall be obligated to supplement their responses to the Requests at such times and to the extent required by the <u>Federal Rules of Civil Procedure.</u>

## Definitions

1.    "YOU" means each of the DEFENDANTS individually, as defined below in paragraphs 2-7, and collectively, where the plural YOU would result in a broader meaning of a Request.

2.    "MGA" means MGA Entertainment, Inc., any of its current or former employees, officers, directors, agents, representatives, experts, divisions, AFFILIATES, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control. Without limiting the foregoing, "MGA" includes the entities known as ABC International Traders or ABC International Traders, Inc.  For purposes of the Requests, "MGA" does not include BRYANT.

3.    "BRYANT" means Carter Bryant individually.

4.    "MGA HK" means MGA Entertainment (HK) Limited, any of its current or former employees, officers, directors, agents, representatives, experts, divisions, AFFILIATES, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control. For purposes of the Requests, "MGA HK" does not include BRYANT.

5.    "LARIAN" means Isaac Larian individually.

EXHIBIT _1_ PAGE _5_

07209/2336517.1

-1-

1    6.    "DEFENDANT" means MGA, BRYANT, MGA HONG

2  KONG, or LARIAN, individually. "DEFENDANTS" means MGA, BRYANT,

3  MGA HONG KONG, and LARIAN, collectively.

4    7.    "AFFILIATES" means any and all corporations, proprietorships,

5  d/b/as, partnerships, joint ventures and business entities of any kind that, directly or

6  indirectly, in whole or in part, own or control, are under common ownership or

7  control with, or are owned or controlled by a PERSON, party or entity, including

8  without limitation each parent, subsidiary and joint venture of such PERSON, party

9  or entity.

10    8.    "PERSON" or "PERSONS" means all natural persons,

11  partnerships, corporations, joint ventures and any kind of business, legal or public

12  entity or organization, as well as its, his or her agents, representatives, employees,

13  officers and directors and any one else acting on its, his or her behalf, pursuant to

14  its, his or her authority or subject to its, his or her control.

15    9.    "DESIGN" or "DESIGNS" means any and all representations,

16  whether two-dimensional or three-dimensional, and whether in tangible, digital,

17  electronic or other form, including but not limited to all works, designs, artwork,

18  sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

19  diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

20  practice, developments, inventions and/or improvements, as well as all other items,

21  things and DOCUMENTS in which any of the foregoing are or have been

22  expressed, embodied, contained, fixed or reflected in any manner, whether in whole

23  or in part.

24    10.    "BASED ON" means substantially similar to, based on, a copy of

25  or a derivative of.

26    11.    "BRATZ" means any project, product, doll or DESIGN ever

27  known by that name (whether in whole or in part and regardless of what such

28  project, product or doll is or has been also, previously or subsequently called) and

-2-

EXHIBIT ___/___ PAGE __6__

1  any product, doll or DESIGN or any portion thereof that is now or has ever been

2  known as, or sold or marketed under, the name or term "Bratz" (whether in whole or

3  in part and regardless of what such product, doll or DESIGN or portion thereof is or

4  has been also, previously or subsequently called) or that is now or has ever been

5  sold or marketed as part of the "Bratz" line, and each version or iteration of such

6  product, doll or DESIGN or any portion thereof.  As used herein, "product, doll or

7  DESIGN or any portion thereof" also includes without limitation any names,

8  fashions, accessories, artwork, packaging or any other works, materials, matters or

9  items included or associated therewith.  Without limiting the generality of the

10 foregoing, and contrary to MGA's recent assertions in connection with other Mattel

11 discovery requests, the term "BRATZ" does not and shall not require that there be a

12 doll existing at the time of the event, incident or occurrence that is the subject of, or

13 otherwise relevant or responsive to, the Requests.

14       12.    "BRATZ WORK" or "BRATZ WORKS" means any

15 representation of BRATZ, whether in whole or in part, whether two-dimensional or

16 three-dimensional, and whether in tangible, digital, electronic or other form,

17 including but not limited to any DESIGN that REFERS OR RELATES TO BRATZ,

18 and including but not limited to all works, designs, artwork, sketches, drawings,

19 illustrations, representations, depictions, blueprints, schematics, diagrams, images,

20 photographs, sculptures, prototypes, models, samples, reductions to practice,

21 developments, inventions and/or improvements, as well as all other items, things

22 and DOCUMENTS in which any of the foregoing are or have been expressed,

23 embodied, contained, fixed or reflected in any manner, whether in whole or in part.

24       13.    "BRATZ DOLLS" means any and all dolls that are or ever have

25 been sold, marketed or produced that REFER OR RELATE to BRATZ.

26       14.    "ASSIGNMENT AGREEMENT" means the agreement between

27 BRYANT and MGA, dated as of September 18, 2000, a copy of which was Bates-

28 numbered BRYANT 00794 – BRYANT 00799 and produced in THIS ACTION.

15. "BRYANT'S BRATZ DESIGNS" means any and all DESIGNS CREATED by BRYANT before BRYANT and MGA entered into the ASSIGNMENT AGREEMENT which REFER OR RELATE TO BRATZ and/or the project, doll and/or brand that first was released to market with the name "Bratz" by MGA in or about June 2001.

16. "BRYANT'S BRATZ IDEAS" means all concepts, ideas, or other intangible items or matter CREATED by BRYANT before BRYANT and MGA entered into the ASSIGNMENT AGREEMENT which REFER OR RELATE TO BRATZ and/or the project, doll and/or brand that first was released to market with the name "Bratz" by MGA in or about June 2001.

17. "BRYANT'S PITCH MATERIALS" means any DESIGNS, tangible items, drawings and/or written materials REFERRING OR RELATING TO BRATZ and/or the project, doll and/or brand that first was released to market with the name "Bratz" by MGA in or about June 2001 which were presented by BRYANT to MGA before BRYANT and MGA entered into the ASSIGNMENT AGREEMENT.

18. "MATTEL" means plaintiff and counter-defendant Mattel, Inc., its current employees, officers, directors, agents, representatives, attorneys, parents, subsidiaries, divisions, AFFILIATES, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

19. "CREATED" means created, produced, prepared, authored, improved, developed, altered, conceived of or reduced to practice, whether in whole or in part, and whether alone or jointly with others.

20. "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-9059 SGL (RNBx), filed on April 27, 2004, and the cases consolidated therewith.

EXHIBIT __/__ PAGE __8__

21.    "THE COURT" means and refers to the United States District Court of the Central District of California and the Discovery Master appointed in THIS ACTION by the Stipulation for Appointment of a Discovery Master dated December 6, 2006, and any of their clerks, employees, agents, representatives, and any other PERSON acting on their behalf, pursuant to their authority or subject to their control, including without limitation Magistrate Judge Robert N. Block, Judge Stephen G. Larson, and Judge Edward A. Infante (Ret.).

22.    "RELATING TO" or "REFER OR RELATE TO" a given subject matter means relate to, refer to, constitute, contain, embody, reflect, identify, state, deal with, comment on, respond to, describe, analyze, support, refute, contradict, or in any way pertain to that subject matter, either directly or indirectly.

23.    "COMMUNICATION," in the plural as well as the singular, means any transmittal and/or receipt of information, whether such was oral or written, and whether such was by chance, prearranged, formal or informal, and specifically includes, but is not limited to, conversations in person, telephone conversations, electronic mail (including instant messages and text messages), voicemail, letters, memoranda, statements, media releases, magazine and newspaper articles, and video and audio transmissions.

24.    "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, facsimiles, electronic mail ("e-mail"), records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, cancelled

-5-

EXHIBIT ___/___ PAGE ___9___

1 | checks and every other device or medium by which or through which information of
2 | any type is transmitted, recorded or preserved.  Without any limitation on the
3 | foregoing, the term "DOCUMENT" shall include all copies that differ in any respect
4 | from the original or other versions of the DOCUMENT, including, but not limited
5 | to, all drafts and all copies of such drafts or originals containing initials, comments,
6 | notations, insertions, corrections, marginal notes, amendments or any other variation
7 | of any kind.

8 |         25.    The singular form of a noun or pronoun includes within its
9 | meaning the plural form of the noun or pronoun so used, and vice versa; the use of
10 | the masculine form of a pronoun also includes within its meaning the feminine form
11 | of the pronoun so used, and vice versa; the use of any tense of any verb includes
12 | also within its meaning all other tenses of the verb so used, whenever such
13 | construction results in a broader request for information; and "and" includes "or"
14 | and vice versa, whenever such construction results in a broader disclosure of
15 | documents or information.

16 |
17 | **<u>Requests for Admission</u>**
18 |
19 | <u>REQUEST FOR ADMISSION NO. 1</u>:
20 |         Admit that BRATZ competes with one or more products marketed and
21 | sold by MATTEL.
22 |
23 | <u>REQUEST FOR ADMISSION NO. 2</u>:
24 |         Admit that BRATZ does not compete with any products marketed and sold
25 | by MATTEL.
26 |
27 |
28 |         EXHIBIT ___*l*___ PAGE ___*l0*___

-6-
MATTEL'S FIRST SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA, BRYANT, MGA HONG
KONG AND LARIAN

1  REQUEST FOR ADMISSION NO. 3:

2          Admit that BRATZ DOLLS compete with one or more products marketed

3  and sold by MATTEL.

4

5  REQUEST FOR ADMISSION NO. 4:

6          Admit that BRATZ DOLLS do not compete with any products marketed

7  and sold by MATTEL.

8

9  REQUEST FOR ADMISSION NO. 5:

10          Admit that BRYANT's assignment of rights to BRATZ to MGA in the

11  ASSIGNMENT AGREEMENT gave MGA property rights.

12

13  REQUEST FOR ADMISSION NO. 6:

14          Admit that BRYANT's assignment of rights to BRATZ to MGA in the

15  ASSIGNMENT AGREEMENT did not give MGA property rights.

16

17  REQUEST FOR ADMISSION NO. 7:

18          Admit that BRYANT's assignment of rights to BRATZ to MGA in the

19  ASSIGNMENT AGREEMENT gave MGA valuable property rights.

20

21  REQUEST FOR ADMISSION NO. 8:

22          Admit that BRYANT's assignment of rights to BRATZ to MGA in the

23  ASSIGNMENT AGREEMENT did not give MGA valuable property rights.

24

25  REQUEST FOR ADMISSION NO. 9:

26          Admit that BRATZ is valuable property.

27

28                              EXHIBIT ___(___ PAGE __(/___

07209/2336517.1

-7-

1  REQUEST FOR ADMISSION NO. 10:
2      Admit that BRATZ is not valuable property.
3
4  REQUEST FOR ADMISSION NO. 11:
5      Admit that BRATZ DOLLS are valuable property.
6
7  REQUEST FOR ADMISSION NO. 12:
8      Admit that BRATZ DOLLS are not valuable property.
9
10 REQUEST FOR ADMISSION NO. 13:
11     Admit that BRYANT'S BRATZ DESIGNS are valuable property.
12
13 REQUEST FOR ADMISSION NO. 14:
14     Admit that BRYANT'S BRATZ DESIGNS are not valuable property.
15
16 REQUEST FOR ADMISSION NO. 15:
17     Admit that BRYANT'S BRATZ DESIGNS were valuable property at the
18 time of the ASSIGNMENT AGREEMENT.
19
20 REQUEST FOR ADMISSION NO. 16:
21     Admit that BRYANT'S BRATZ DESIGNS were not valuable property at
22 the time of the ASSIGNMENT AGREEMENT.
23
24 REQUEST FOR ADMISSION NO. 17:
25     Admit that BRYANT'S BRATZ IDEAS are valuable property.
26
27 REQUEST FOR ADMISSION NO. 18:
28     Admit that BRYANT'S BRATZ IDEAS are not valuable property.

REQUEST FOR ADMISSION NO. 19:

Admit that BRYANT'S BRATZ IDEAS were valuable property at the time of the ASSIGNMENT AGREEMENT.

REQUEST FOR ADMISSION NO. 20:

Admit that BRYANT'S BRATZ IDEAS were not valuable property at the time of the ASSIGNMENT AGREEMENT.

REQUEST FOR ADMISSION NO. 21:

Admit that rights to BRYANT'S BRATZ DESIGNS were assigned to MGA in the ASSIGNMENT AGREEMENT.

REQUEST FOR ADMISSION NO. 22:

Admit that rights to BRYANT'S BRATZ DESIGNS were not assigned to MGA in the ASSIGNMENT AGREEMENT.

REQUEST FOR ADMISSION NO. 23:

Admit that rights to BRYANT'S BRATZ IDEAS were assigned to MGA in the ASSIGNMENT AGREEMENT.

REQUEST FOR ADMISSION NO. 24:

Admit that rights to BRYANT'S BRATZ IDEAS were not assigned to MGA in the ASSIGNMENT AGREEMENT.

REQUEST FOR ADMISSION NO. 25:

Admit that BRYANT assigned all rights to BRATZ to MGA in the ASSIGNMENT AGREEMENT.

07209/2336517.1

EXHIBIT  /  PAGE  / 3

1   REQUEST FOR ADMISSION NO. 26:

2          Admit that BRYANT did not assign all rights to BRATZ to MGA in the

3   ASSIGNMENT AGREEMENT.

4

5   REQUEST FOR ADMISSION NO. 27:

6          Admit that BRYANT assigned at least some rights to BRATZ to MGA in

7   the ASSIGNMENT AGREEMENT.

8

9   REQUEST FOR ADMISSION NO. 28:

10          Admit that BRYANT did not assign any rights to BRATZ to MGA in the

11   ASSIGNMENT AGREEMENT.

12

13   REQUEST FOR ADMISSION NO. 29:

14          Admit that David Rosenbaum acted as an authorized agent of MGA in the

15   year 2000 insofar as he performed services RELATING TO the ASSIGNMENT

16   AGREEMENT.

17

18   REQUEST FOR ADMISSION NO. 30:

19          Admit that David Rosenbaum did not act as an authorized agent of MGA

20   in the year 2000 insofar as he performed services RELATING TO the ASSIGNMENT

21   AGREEMENT.

22

23   REQUEST FOR ADMISSION NO. 31:

24          Admit that David Rosenbaum acted as an authorized agent of MGA in the

25   year 2000 insofar as he performed services RELATING TO BRYANT.

26

27

28                                          EXHIBIT __1__ PAGE _14_

MATTEL'S FIRST SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA, BRYANT, MGA HONG KONG AND LARIAN

1  REQUEST FOR ADMISSION NO. 32:

2        Admit that David Rosenbaum did not act as an authorized agent of MGA

3  in the year 2000 insofar as he performed services RELATING TO BRYANT.

4

5  REQUEST FOR ADMISSION NO. 33:

6        Admit that David Rosenbaum acted as an authorized agent of MGA in the

7  year 2000 insofar as he performed services RELATING TO BRATZ.

8

9  REQUEST FOR ADMISSION NO. 34:

10        Admit that David Rosenbaum did not act as an authorized agent of MGA

11  in the year 2000 insofar as he performed services RELATING TO BRATZ.

12

13  REQUEST FOR ADMISSION NO. 35:

14        Admit that David Rosenbaum did not act as an authorized agent of MGA

15  in the year 2000 in any capacity.

16

17  REQUEST FOR ADMISSION NO. 36:

18        Admit that MGA did not conduct any focus group testing RELATING TO

19  BRATZ prior to March 2001.

20

21  REQUEST FOR ADMISSION NO. 37:

22        Admit that MGA did conduct focus group testing RELATING TO BRATZ

23  prior to March 2001.

24

25  REQUEST FOR ADMISSION NO. 38:

26        Admit that MGA did not conduct any focus group testing RELATING TO

27  BRATZ in the year 2000.

28

EXHIBIT _1_ PAGE _15_

-11-

MATTEL'S FIRST SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA, BRYANT, MGA HONG KONG AND LARIAN

1    REQUEST FOR ADMISSION NO. 39:

2         Admit that MGA did conduct focus group testing RELATING TO BRATZ

3    in the year 2000.

4

5    REQUEST FOR ADMISSION NO. 40:

6         Admit that YOU have not produced any DOCUMENTS RELATING TO

7    focus group testing RELATING TO BRATZ which occurred prior to March 2001.

8

9    REQUEST FOR ADMISSION NO. 41:

10        Admit that YOU have produced one or more DOCUMENTS RELATING

11   TO focus group testing RELATING TO BRATZ which occurred prior to March 2001.

12

13   REQUEST FOR ADMISSION NO. 42:

14        Admit that YOU have not produced any DOCUMENTS RELATING TO

15   focus group testing RELATING TO BRATZ which occurred in the year 2000.

16

17   REQUEST FOR ADMISSION NO. 43:

18        Admit that YOU have produced one or more DOCUMENTS RELATING

19   TO focus group testing RELATING TO BRATZ which occurred in the year 2000.

20

21   REQUEST FOR ADMISSION NO. 44:

22        Admit that the so-called "First Generation" BRATZ DOLLS marketed by

23   MGA and sold to the public in or about June 2001 were BASED ON one or more of the

24   BRATZ PITCH MATERIALS.

25

26

27

28

EXHIBIT _1_ PAGE _16_

MATTEL'S FIRST SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA, BRYANT, MGA HONG KONG AND LARIAN

07209/2336517.1

1    REQUEST FOR ADMISSION NO. 45:

2         Admit that the so-called "First Generation" BRATZ DOLLS marketed by

3    MGA and sold to the public in or about June 2001 were not BASED ON any of the

4    BRATZ PITCH MATERIALS.

5

6    REQUEST FOR ADMISSION NO. 46:

7         Admit that the so-called "First Generation" BRATZ DOLLS marketed by

8    MGA and sold to the public in or about June 2001 were BASED ON one or more of

9    BRYANT'S BRATZ DESIGNS.

10

11   REQUEST FOR ADMISSION NO. 47:

12        Admit that the so-called "First Generation" BRATZ DOLLS marketed by

13   MGA and sold to the public in or about June 2001 were not BASED ON any of

14   BRYANT'S BRATZ DESIGNS.

15

16   REQUEST FOR ADMISSION NO. 48:

17        Admit that the so-called "First Generation" BRATZ DOLLS marketed by

18   MGA and sold to the public in or about June 2001 were BASED ON one or more of

19   BRYANT'S BRATZ IDEAS.

20

21   REQUEST FOR ADMISSION NO. 49:

22        Admit that the so-called "First Generation" BRATZ DOLLS marketed by

23   MGA and sold to the public in or about June 2001 were not BASED ON any of

24   BRYANT'S BRATZ IDEAS.

25

26   REQUEST FOR ADMISSION NO. 50:

27        Admit that the one or more "Subsequent Generation" BRATZ DOLLS

28   marketed by MGA and sold to the public after June 2001, which differ in some manner

07209/2336517.1

EXHIBIT __1__ PAGE __17__

1  from the so-called "First Generation" BRATZ DOLLS marketed by MGA and sold to

2  the public in or about June 2001, were BASED ON one or more of the BRATZ PITCH

3  MATERIALS.

4

5  REQUEST FOR ADMISSION NO. 51:

6          Admit that all of the "Subsequent Generation" BRATZ DOLLS marketed

7  by MGA and sold to the public after June 2001, which differ in some manner from the

8  so-called "First Generation" BRATZ DOLLS marketed by MGA and sold to the public

9  in or about June 2001, were not BASED ON any of the BRATZ PITCH MATERIALS.

10

11  REQUEST FOR ADMISSION NO. 52:

12          Admit that one or more "Subsequent Generation" BRATZ DOLLS

13  marketed by MGA and sold to the public after June 2001, which differ in some manner

14  from the so-called "First Generation" BRATZ DOLLS marketed by MGA and sold to

15  the public in or about June 2001, were BASED ON one or more of BRYANT'S

16  BRATZ DESIGNS.

17

18  REQUEST FOR ADMISSION NO. 53:

19          Admit that the all of the "Subsequent Generation" BRATZ DOLLS

20  marketed by MGA and sold to the public after June 2001, which differ in some manner

21  from the so-called "First Generation" BRATZ DOLLS marketed by MGA and sold to

22  the public in or about June 2001, were not BASED ON any of BRYANT'S BRATZ

23  DESIGNS.

24

25  REQUEST FOR ADMISSION NO. 54:

26          Admit that the one or more "Subsequent Generation" BRATZ DOLLS

27  marketed by MGA and sold to the public after June 2001, which differ in some manner

28  from the so-called "First Generation" BRATZ DOLLS marketed by MGA and sold to

-14-

EXHIBIT ___ PAGE _18_

1  the public in or about June 2001, were BASED ON one or more of BRYANT'S

2  BRATZ IDEAS.

3

4  REQUEST FOR ADMISSION NO. 55:

5           Admit that the all of the "Subsequent Generation" BRATZ DOLLS

6  marketed by MGA and sold to the public after June 2001, which differ in some manner

7  from the so-called "First Generation" BRATZ DOLLS marketed by MGA and sold to

8  the public in or about June 2001, were not BASED ON any of BRYANT'S BRATZ

9  IDEAS.

10

11  REQUEST FOR ADMISSION NO. 56:

12           Admit that the so-called "First Generation" BRATZ DOLLS marketed by

13  MGA and sold to the public in or about June 2001 were not BASED ON any DESIGNS

14  CREATED BY BRYANT prior to October 21, 2000.

15

16  REQUEST FOR ADMISSION NO. 57:

17           Admit that the so-called "First Generation" BRATZ DOLLS marketed by

18  MGA and sold to the public in or about June 2001 were BASED ON one or more

19  DESIGNS CREATED BY BRYANT prior to October 21, 2000.

20

21  REQUEST FOR ADMISSION NO. 58:

22           Admit that all of the "Subsequent Generation" BRATZ DOLLS marketed

23  by MGA and sold to the public after June 2001, which differ in some manner from the

24  so-called "First Generation" BRATZ DOLLS marketed by MGA and sold to the public

25  in or about June 2001, were not BASED ON any DESIGNS CREATED BY BRYANT

26  prior to October 21, 2000.

27

28                                              EXHIBIT __1__ PAGE _19_

                                    -15-

1   REQUEST FOR ADMISSION NO. 59:

2          Admit that one or more of the "Subsequent Generation" BRATZ DOLLS

3   marketed by MGA and sold to the public after June 2001, which differ in some manner

4   from the so-called "First Generation" BRATZ DOLLS marketed by MGA and sold to

5   the public in or about June 2001, were BASED ON one or more DESIGNS CREATED

6   BY BRYANT prior to October 21, 2000.

7

8   REQUEST FOR ADMISSION NO. 60:

9          Admit that MGA's Copyright Registration No. VA 1-090-287, and any

10  corrections thereto, do not list any derivative works on which the copyrighted material

11  which is subject to that Registration is based other than the materials subject to

12  Copyright Registration No. VA 1-218-487.

13

14  REQUEST FOR ADMISSION NO. 61:

15         Admit that the copyrighted material which is subject to Copyright

16  Registration No. VA 1-090-287 is not BASED ON any DESIGNS CREATED BY

17  BRYANT prior to October 21, 2000.

18

19  REQUEST FOR ADMISSION NO. 62:

20         Admit that the copyrighted material which is subject to Copyright

21  Registration No. VA 1-090-287 is not BASED ON any DESIGNS CREATED BY

22  BRYANT prior to October 21, 2000, other than the materials subject to Copyright

23  Registration No. VA 1-218-487.

24

25  REQUEST FOR ADMISSION NO. 63:

26         Admit that MGA's Copyright Registration No. VA 1-090-288, and any

27  corrections thereto, do not list any derivative works on which the copyrighted material

28

MATTEL'S FIRST SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA, BRYANT, MGA HONG KONG AND LARIAN

EXHIBIT ___1___ PAGE ___20___

1 | which is subject to that Registration is based other than the materials subject to
2 | Copyright Registration No. VA 1-218-488.

3

4 | REQUEST FOR ADMISSION NO. 64:

5 |     Admit that the copyrighted material which is subject to Copyright
6 | Registration No. VA 1-090-288 is not BASED ON any DESIGNS CREATED BY
7 | BRYANT prior to October 21, 2000.

8

9 | REQUEST FOR ADMISSION NO. 65:

10 |     Admit that the copyrighted material which is subject to Copyright
11 | Registration No. VA 1-090-288 is not BASED ON any DESIGNS CREATED BY
12 | BRYANT prior to October 21, 2000, other than the materials subject to Copyright
13 | Registration No. VA 1-218-488.

14

15 | REQUEST FOR ADMISSION NO. 66:

16 |     Admit that MGA's Copyright Registration No. VA 1-090-289, and any
17 | corrections thereto, do not list any derivative works on which the copyrighted material
18 | which is subject to that Registration is based other than the materials subject to
19 | Copyright Registration No. VA 1-218-490.

20

21 | REQUEST FOR ADMISSION NO. 67:

22 |     Admit that the copyrighted material which is subject to Copyright
23 | Registration No. VA 1-090-289 is not BASED ON any DESIGNS CREATED BY
24 | BRYANT prior to October 21, 2000.

25

26 | REQUEST FOR ADMISSION NO. 68:

27 |     Admit that the copyrighted material which is subject to Copyright
28 | Registration No. VA 1-090-289 is not BASED ON any DESIGNS CREATED BY

-17-

EXHIBIT ___/___ PAGE __2/__

1  BRYANT prior to October 21, 2000, other than the materials subject to Copyright
2  Registration No. VA 1-218-490.

3

4  REQUEST FOR ADMISSION NO. 69:

5      Admit that MGA's Copyright Registration No. VA 1-090-290, and any
6  corrections thereto, do not list any derivative works on which the copyrighted material
7  which is subject to that Registration is based other than the materials subject to
8  Copyright Registration No. VA 1-218-491.

9

10  REQUEST FOR ADMISSION NO. 70:

11      Admit that the copyrighted material which is subject to Copyright
12  Registration No. VA 1-090-290 is not BASED ON any DESIGNS CREATED BY
13  BRYANT prior to October 21, 2000.

14

15  REQUEST FOR ADMISSION NO. 71:

16      Admit that the copyrighted material which is subject to Copyright
17  Registration No. VA 1-090-290 is not BASED ON any DESIGNS CREATED BY
18  BRYANT prior to October 21, 2000, other than the materials subject to Copyright
19  Registration No. VA 1-218-491.

20

21

22  DATED: December 27, 2007        QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
23

24                                   By _Michael T. Zeller_ *MM*
25                                      Michael T. Zeller
                                        Attorneys for Mattel, Inc.
26

27

28                                        EXHIBIT ___/___ PAGE _22_

07209/2336517.1

-18-

MATTEL'S FIRST SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA, BRYANT, MGA HONG KONG AND LARIAN

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is Now Legal Service, 1301 W. 2nd Street, Suite 206, Los Angeles, CA 90026.

On December 27, 2007, I served true copies of the following document(s) described as **MATTEL, INC.'S FIRST SET OF REQUESTS FOR ADMISSION PROPOUNDED TO MGA ENTERTAINMENT, INC.; CARTER BRYANT; MGA ENTERTAINMENT (HK) LIMITED; AND ISAAC LARIAN** on the parties in this action as follows:

Thomas J. Nolan
**Skadden, Arps, Slate, Meagher & Flom LLP**
300 South Grand Ave., Ste. 3400
Los Angeles, CA 90071

Mark E. Overland
David C. Scheper
Alexander H. Cote
**Overland Borenstein Scheper & Kim LLP**
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071

John W. Keker, Esq.
Michael H. Page, Esq.
Christina M. Anderson, Esq.
**Keker & Van Nest, LLP**
710 Sansome Street
San Francisco, CA 94111

**BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 27, 2007, at Los Angeles, California.

_____
NOW LEGAL -- Dave Quintana

07209/2217862.1

EXHIBIT ___/___ PAGE ___23___

**EXHIBIT 2**

RECEIVED

FEB 0 4 2008

1 THOMAS J. NOLAN (Bar No. 66992)
  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 300 South Grand Avenue
  Los Angeles, California 90071-3144
3 Telephone: (213) 687-5000
  Facsimile: (213) 687-5600
4 E-mail: tnolan@skadden.com

5 RAOUL D. KENNEDY (Bar No. 40892)
  TIMOTHY A. MILLER (Bar No. 154744)
6 SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
  Four Embarcadero Center, 38th Floor
7 San Francisco, California 94111-5974
  Telephone: (415) 984-6400
8 Facsimile: (415) 984-2698
  E-mail: rkennedy@skadden.com
9 E-mail: tmiller@skadden.com

10 Attorneys for Cross-Defendants
   MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
11 MGAE De Mexico, S.R.L. De C.V., and ISAAC LARIAN

12        UNITED STATES DISTRICT COURT

13        CENTRAL DISTRICT OF CALIFORNIA

14              EASTERN DIVISION

15 CARTER BRYANT, an individual        ) CASE NO. CV 04-9049 SGL (RNBx)
                                        ) Consolidated with Case No. 04-9059
16            Plaintiff,                ) and Case No. 05-2727
                                        )
17     v.                               ) DISCOVERY MATTER
                                        )
18 MATTEL, INC., a Delaware            ) [To be heard by Discovery Master Hon.
   corporation                          ) Edward A. Infante (Ret.)]
19                                      )
             Defendant.                 ) MGA ENTERTAINMENT, INC.'S
20 ─────────────────────────────       ) OBJECTIONS AND RESPONSES TO
                                        ) MATTEL'S "FIRST" SET OF
21 Consolidated with MATTEL, INC. v.   ) REQUESTS FOR ADMISSION TO
   BRYANT and MGA                       ) MGA ENTERTAINMENT, INC.;
22 ENTERTAINMENT, INC. v.              ) CARTER BRYANT; MGA
   MATTEL, INC.                         ) ENTERTAINMENT (HK) LIMITED;
23                                      ) AND ISAAC LARIAN
   CONFIDENTIAL – ATTORNEYS'           )
24 EYES ONLY                           ) Phase 1:
                                        ) Discovery Cut-Off: January 28, 2008
25                                      ) Pre-Trial Conference: May 5, 2008
                                        ) Trial Date: May 27, 2008
26 ─────────────────────────────

27

28

─────────────────────────────────────────────────────────────
MGA'S RESPONSE TO MATTEL'S 1ST SET OF RFA TO BRYANT, MGA, MGA HK AND LARIAN

EXHIBIT 2 PAGE 24

1 | PROPOUNDING PARTY:     MATTEL, INC. ("Mattel")

2 | RESPONDING PARTIES:    MGA ENTERTAINMENT, INC.

3 | SET NUMBER:            ONE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA'S RESPONSE TO MATTEL'S 1ST SET OF RFA TO BRYANT, MGA, MGA HK AND LARIAN

EXHIBIT 2 PAGE 25

Pursuant to Federal Rule of Civil procedure 36, MGA Entertainment, Inc. ("MGA") submits its objections and responses (the "Response"), for reasons stated below, to Mattel's "First" Set of Requests for Admission to MGA Entertainment, Inc.; Carter Bryant; MGA Entertainment (HK) Limited; and Isaac Larian.

### GENERAL RESPONSE

The General Response set forth herein applies to all responses MGA is providing in response to these requests for admission (the "Request") or may in the future provide in response to any discovery request in this action. The Response is made without waiving or intending to waive but, on the contrary, expressly reserving: (a) the right to object, on the grounds of competency, privilege, relevancy or materiality, or any other proper grounds, to the use of the Response, for any purpose in whole or in part, in any subsequent step or proceeding in this action or any other action; (b) the right to object on any and all grounds, at any time, to other requests for admissions or other discovery procedures; and (c) the right at any time to revise, correct, add to, or clarify any of the responses propounded herein.

The Responses reflect only the present state of MGA's discovery regarding the information Mattel seeks. Discovery for Phase Two and other investigation or research concerning this litigation are continuing. It is anticipated that further discovery, independent investigation, and legal research and analysis will supply additional facts and meaning to the known facts, as well as establish entirely new factual conclusions, all of which may lead MGA to discover other information responsive to this Request. MGA therefore reserves the right to amend or supplement this Response at any time in light of future investigation, research or analysis, and also expressly reserves the right to rely on, at any time, including trial, subsequently discovered information omitted from this Response as a result of mistake, error, oversight or inadvertence. MGA does not hereby admit, adopt or

1

EXHIBIT _2_ PAGE _26_

1  acquiesce in any factual or legal contention, assertion or characterization contained

2  in the Request or any particular request therein, even where MGA has not otherwise

3  objected to a particular request, or has agreed to provide information responsive to a

4  particular request.

5      No incidental or implied admissions are intended by this Response.

6  These responses should not be taken as an admission that MGA accepts or admits the

7  existence of any facts set forth or assumed by any instruction, definition or request.

8                              **GENERAL OBJECTIONS**

9      MGA incorporates the following General Objections, as well as the

10  General Response, into its Specific Objections and Responses to each and every

11  Request.  The assertion of same, similar, or additional objections to the individual

12  requests does not waive any of MGA's general objections as set forth below:

13      1.  MGA objects to the Request insofar as it seeks disclosure of

14  information that is not required to be disclosed under any applicable privilege,

15  doctrine or immunity, including without limitation the attorney-client privilege, the

16  work product doctrine, the right of privacy, the joint defense privilege, the common

17  interest privilege, and all other privileges recognized under the constitutional,

18  statutory or decisional law of the United States of America, the State of California or

19  any other applicable jurisdiction.

20      2.  MGA objects to the Request to the extent it seeks information not

21  relevant to the claims or defenses of any party to this action and is not reasonably

22  calculated to lead to the discovery of admissible evidence.

23      3.  MGA objects to the Request insofar as it seeks information that

24  is, by reason of public filing or otherwise, already in Mattel's possession or is readily

25  accessible to Mattel.

26      4.  MGA objects to the Request insofar as it (1) seeks information

27  not within MGA's possession, custody or control; (2) seeks information that MGA

28

MGA'S RESPONSE TO MATTEL'S 1ST SET OF RFA TO BRYANT, MGA, MGA HK AND LARIAN

EXHIBIT _2_ PAGE _27_

1  cannot locate after a reasonably diligent search; or (3) refers to persons, entities, or

2  events not known to MGA.

3          5.      MGA objects to the Request insofar it seeks confidential

4  information, trade secrets or other proprietary information.

5          6.      MGA objects to the Request to the extent it is unduly burdensome

6  and oppressive.

7          7.      To the extent the Request asks MGA to provide information

8  concerning the legal basis of its defense of this matter, MGA objects on the grounds

9  that the Request impermissibly call for mental impressions, conclusions, opinions

10  and/or legal theories of MGA's attorneys.

11          8.      In responding to the Request, MGA has not and will not comply

12  with any instructions or definitions that seek to impose requirements in addition to

13  those imposed by the Federal Rules of Civil Procedure or any applicable local rule.

14          9.      MGA objects to the Request to the extent that it may unfairly

15  seek to restrict the facts on which MGA may rely at trial.  Discovery has not been

16  completed and MGA is not yet necessarily in possession of all the facts and

17  documents upon which MGA intends to rely.  All of the responses submitted

18  herewith are tendered to Mattel with the reservation that the responses are submitted

19  without limiting the evidence on which MGA may rely to support the contentions

20  and defenses that MGA may assert at the trial of this action and to rebut or impeach

21  the contentions, assertions and evidence that Mattel may present.  MGA reserves the

22  right to supplement or amend these responses at a future date.

23          10.     MGA objects to the Request to the extent it seeks information

24  that will be the subject of expert witness testimony and that is therefore premature.

25  MGA further objects to the Request to the extent that it seeks to circumvent the

26  expert disclosure provisions of the <u>Federal</u> and <u>Local Rules</u>.

27          11.     MGA reserves the right to object on any ground at any time to

28  such other and supplemental discovery requests as Mattel may propound involving

3

MGA'S RESPONSE TO MATTEL'S 1ST SET OF RFA TO BRYANT, MGA, MGA HK AND LARIAN

EXHIBIT 2 PAGE 28

1   or relating to the same subject matter of the Request.

2          12.    MGA objects to the definitions and instructions to the extent such

3   definitions and instructions purport to enlarge, expand, or alter in any way the plain

4   meaning and scope of any specific term or specific requests on the grounds that such

5   enlargement, expansion or alteration renders such term or request vague, ambiguous,

6   unintelligible, overly broad, unduly burdensome or uncertain.

7          13.    MGA objects to the defined terms "YOU," "MGA," "MGA HK,"

8   "DEFENDANT," "DEFENDANTS," "AFFILIATES," "DESIGN" or "DESIGNS,"

9   "BASED ON," "BRATZ," "BRATZ WORK," "BRATZ DOLLS," "BRYANT'S

10  BRATZ DESIGNS," "BRYANT'S BRATZ IDEAS," "BRYANT'S PITCH

11  MATERIALS," "MATTEL," "CREATED," "RELATING TO" or "REFER OR

12  RELATE TO," and "COMMUNICATION" in the Request on the grounds that these

13  terms use defined terms that distort the commonly used and understood meanings of

14  terms, including legal terms of art, by sweeping in concepts not properly associated

15  with them and render the Request overly broad, unduly burdensome, vague and

16  ambiguous, including, by way of example and without limitation, as follows:

17          (a)    MGA objects to the definition of the term "BRATZ"

18  (Definitions ¶ 11) as vague, ambiguous, overly broad and unduly burdensome, and

19  designed to mislead and confuse the trier of fact.  The definition includes "any

20  project, product, doll or DESIGN ever known by [the Bratz] name (whether in whole

21  or in part and regardless of what such project, product or doll is or has been also,

22  previously or subsequently called) and any product, doll or DESIGN or any portion

23  thereof that is now or has ever been known as, or sold or marketed under, the name

24  or term 'Bratz' (whether in whole or in part and regardless of what such product, doll

25  or DESIGN or portion thereof is or has been also, previously or subsequently called)

26  or that is now or has ever been sold or marketed as part of the 'Bratz' line, and each

27  version or iteration of such product, doll or DESIGN or any portion thereof," and it

28  goes on.  By incorporating the definition of "DESIGN," the overly broad definition

4

EXHIBIT _2_ PAGE _29_

1  of "BRATZ" includes two-dimensional and three-dimensional representations,

2  including "works, design, artwork, sketches, drawings, illustrations, representations,

3  depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models,

4  samples, rotocasts, reductions to practice, developments, inventions and/or

5  improvements . . . ." (Definitions ¶ 9.)  (See objection to term "DESIGN" below)

6  These convoluted and multi-part definitions combine to render the Requests vague,

7  ambiguous and overly broad, and to include within the term "BRATZ" things that do

8  not fairly represent the Bratz line of dolls, accessories and related products that are

9  the subject of this case.  In responding to the Request, MGA will interpret the term

10  "BRATZ" to mean the line of dolls introduced by MGA to the market for sale in

11  May or June of 2001 and subsequent dolls, accessories and other products known as

12  Bratz or associated by MGA with the Bratz line of dolls;

13          (b)     MGA objects to the definition of the term "BRATZ

14  DOLLS" (Definitions ¶ 13) as vague, ambiguous, overly broad and unduly

15  burdensome, and designed to mislead and confuse the trier of fact.  The definition

16  includes any doll that "REFERS OR RELATES to BRATZ."  Mattel's definition of

17  the terms "BRATZ" and "REFERS OR RELATES" renders the definition of

18  "BRATZ DOLL" unintelligible because MGA cannot know, by way of example,

19  what dolls may "deal with, comment on, respond to, . . . or in any way pertain"

20  (Definitions ¶ 22) to "BRATZ," which is already defined to include any "doll . . . that

21  is now or has ever been known as, or sold or marketed under, the name or term

22  'Bratz' . . . or that is now or has ever been sold or marketed as part of the 'Bratz' line,

23  and each version or iteration of such . . . doll . . . ."  In responding to the Request,

24  MGA will interpret the term "BRATZ DOLL" to mean the line of dolls introduced

25  by MGA to the market for sale in May or June of 2001 and subsequent dolls known

26  as Bratz;

27          (c)     MGA objects to the definition of the term "BRATZ

28  WORK" (Definitions ¶ 12) as vague, ambiguous, overly broad and unduly

EXHIBIT __2__ PAGE __30__

1 burdensome, and designed to mislead and confuse the trier of fact. The definition
2 contains separate component parts ("any representation . . . whether in whole or in
3 part, whether two-dimensional or three-dimensional, and whether in tangible, digital,
4 electronic or other form, including . . . any DESIGN . . .as well as all other items,
5 things and DOCUMENTS in which any of the foregoing are or have been expressed,
6 embodied, contained, fixed or reflected in any manner . . . ."). The incorporation of
7 the defined term "DESIGN" adds at least another 21 elements ("all works, designs,
8 artwork, sketches, drawings, illustrations, representations, depictions, blueprints,
9 schematics, diagrams, images, sculptures, prototypes, models, samples, rotocasts,
10 reductions to practice, developments, inventions and/or improvements"). The
11 inclusion of these disparate concepts in the term "work" improperly conflates distinct
12 issues of patent law, copyright protection, trade secret law and the common law
13 protecting original ideas;

14          (d)     MGA objects to the definition of the term "BASED ON"
15 (Definitions ¶ 10) as vague, ambiguous, overly broad and unduly burdensome, and
16 designed to mislead and confuse the trier of fact. The definitions strays far from the
17 English meaning of "based on" by including terms loaded with legal significance in
18 intellectual property law, such as "substantially similar to," or "derivative of." In
19 responding to these requests, MGA will not interpret the term "BASED ON," but
20 rather will respond using "based on" as it is commonly used and understood;

21          (e)     MGA objects to the term "CREATED" (Definitions ¶ 19)
22 as vague, ambiguous, overly broad and unduly burdensome, and designed to mislead
23 and confuse the trier of fact. The definition strays far from the English meaning of
24 the term "created" by including concepts such as "improved," "altered," "conceived
25 of," and "reduced to practice." Thus, by way of example, under Mattel's definition of
26 "CREATED," the jury could be misled into believing that a person "CREATED" a
27 particular thing when that person did not, but only slightly altered or improved the
28 thing. In responding to the Request, MGA will not interpret the term "CREATED"

MGA'S RESPONSE TO MATTEL'S 1ST SET OF RFA TO BRYANT, MGA, MGA HK AND LARIAN

EXHIBIT _2_ PAGE _31_

1  according to Mattel's definition, but rather will respond using "created" in its normal,

2  accepted meaning;

3          (f)    MGA objects to the term "DESIGN" (Definitions ¶ 9) as

4  vague, ambiguous, overly broad and unduly burdensome, and designed to mislead

5  and confuse the trier of fact. The definition combines at least three or four disparate

6  intellectual property concepts. In addition to invoking copyright principles

7  ("artwork, sketches, drawings, illustrations, . . . depictions, blueprints, schematics,

8  diagrams, images, sculptures, . . . models . . . fixed . . ."), *see* 17 U.S.C. § 101, the

9  definition also includes patent law terms, such as "design," "reductions to practice"

10  and "improvements." *See* 35 U.S.C. § 102(g); 35 U.S.C. § 171; 1-GLOS *Chisum on*

11  *Patents* (2007). In addition, the definition makes no distinction between design and

12  utility patents. *See* 1-23 *Chisum on Patents* § 23.01 (highlighting the distinctions

13  between the two). Moreover, under Mattel's definition, a "DESIGN" could also be a

14  trade secret under California's Uniform Trade Secrets Act. *See* Cal. Civ. Code §

15  3426.1 (defining "Trade secret" as "information, including a formula, pattern,

16  compilation, program, device, method, technique, or process that: (1) Derives

17  independent economic value, actual or potential, from not being generally known to

18  the public . . ."). MGA will interpret the term "DESIGN" as it is commonly used and

19  understood;

20          (g)    MGA objects to the terms "RELATING TO" and "REFER

21  OR RELATE TO" on the grounds and to the extent that they are overly broad,

22  unduly burdensome, and/or are vague and ambiguous in the context of the

23  interrogatories as written and as those interrogatories would be plainly understood

24  absent Mattel's definitions;

25          (h)    MGA objects to the term "BRYANT'S BRATZ DESIGNS"

26  (Definitions ¶ 15) as vague, ambiguous, overly broad and unduly burdensome, and

27  designed to mislead and confuse the trier of fact. The definition includes the defined

28  term "CREATED," (Definitions ¶ 19) which strays far from the English meaning of

7

EXHIBIT _2_ PAGE _32_

1 | the term "created" by including concepts such as "improved," "altered," "conceived
2 | of," and "reduced to practice."    In addition, Mattel's definition of the terms
3 | "DESIGN," (Definitions ¶ 9) "REFER OR RELATE TO" (Definitions ¶ 22) and
4 | "BRATZ" (Definitions ¶ 11) renders the term "BRYANT'S BRATZ DESIGNS"
5 | unintelligible because MGA cannot know, by way of example, what designs may
6 | "deal with, comment on, respond to, . . . or in any way pertain" (Definitions ¶ 22) to
7 | "BRATZ."  In responding to these requests, MGA will interpret the term
8 | "BRYANT'S BRATZ DESIGNS" to mean the drawings depicting Bratz characters
9 | that Bryant made prior to October 4, 2000, the date on which Bryant signed his
10 | agreement with MGA;
11 |          (i)     MGA objects to the term "BRYANT'S BRATZ IDEAS"
12 | (Definitions ¶ 16) as vague, ambiguous, overly broad and unduly burdensome, and
13 | designed to mislead and confuse the trier of fact.  The definition includes the defined
14 | term "CREATED," (Definitions ¶ 19) which strays far from the English meaning of
15 | the term "created" by including concepts such as "improved," "altered," "conceived
16 | of," and "reduced to practice."    In addition, Mattel's definition of the terms "REFER
17 | OR RELATE TO" (Definitions ¶ 22) and "BRATZ" (Definitions ¶ 11) renders the
18 | term "BRYANT'S BRATZ IDEAS" unintelligible because MGA cannot know, by
19 | way of example, what intangible matter created by Bryant may "deal with, comment
20 | on, respond to, . . . or in any way pertain" (Definitions ¶ 22) to "BRATZ."  In
21 | responding to these requests, MGA will interpret the term "BRYANT'S BRATZ
22 | IDEAS" to mean Carter Bryant's idea of a line of fashion dolls that he called "Bratz,"
23 | which was sufficiently novel and original to be protected under California law as a
24 | confidential novel idea under <u>Desny v. Wilder</u>, 46 Cal.2d 715 (1956) and its
25 | progeny;
26 |          (j)     MGA objects to the term "BRYANT'S PITCH
27 | MATERIALS" (Definitions ¶ 17) as vague, ambiguous, overly broad and unduly
28 | burdensome, and designed to mislead and confuse the trier of fact.  Mattel's

8

MGA'S RESPONSE TO MATTEL'S 1ST SET OF RFA TO BRYANT, MGA, MGA HK AND LARIAN

EXHIBIT 2 PAGE 33

1  definition of the terms "REFER OR RELATE TO" (Definitions ¶ 22) and "BRATZ"

2  (Definitions ¶ 11) renders the term "BRYANT'S BRATZ IDEAS" unintelligible

3  because MGA cannot know, by way of example, what drawings Bryant presented to

4  MGA may "comment on [or] respond to" (Definitions ¶ 22) "BRATZ."  In

5  responding to these requests, MGA will interpret the term "BRYANT'S PITCH

6  MATERIALS" to mean the materials presented by Bryant to MGA depicted in what

7  has been marked as Exhibit 302 (MGA 006453 to MGA 006466), and what was

8  described as a "dummy" in Carter Bryant's November 4, 2004 deposition;

9          (k)    MGA objects to the term "YOU" (Definitions ¶ 1) as

10 vague, ambiguous, overly broad and unduly burdensome and designed to mislead

11 and confuse the trier of fact.  Mattel's definition of the term "YOU" purports to

12 include all defendants collectively in instances where the plural "YOU" would result

13 in a broader meaning of a request.  Thus, Mattel's definition would require MGA to

14 admit or deny requests based on the actions of other defendants (such as Carter

15 Bryant) in the action, resulting in responses designed to mislead and confuse the trier

16 of fact.  In responding to the requests, MGA will interpret the term "YOU" to refer to

17 MGA.

18      14.    MGA's responses are made based on its understanding and

19 interpretation of the Request.  MGA reserves the right to supplement its objections

20 and responses should Mattel subsequently assert an interpretation of any request that

21 differs from those of MGA.

22          These general objections shall be deemed incorporated into each

23 specific response below as if they were fully set forth below.  Nevertheless, without

24 waiver of, without prejudice to, and expressly hereby reserving all of the foregoing

25 general objections, MGA submits the following responses to the Requests.

26

27

28

MGA'S RESPONSE TO MATTEL'S 1ST SET OF RFA TO BRYANT, MGA, MGA HK AND LARIAN

EXHIBIT _2_ PAGE _34_

<b><u>SPECIFIC OBJECTIONS AND RESPONSES</u></b>

1  

2  **<u>REQUEST FOR ADMISSION NO. 1:</u>**

3          Admit that BRATZ competes with one or more products marketed and

4  sold by MATTEL.

5  **<u>RESPONSE TO REQUEST FOR ADMISSION NO. 1:</u>**

6          MGA incorporates by reference its General Response and General

7  Objections above, as though fully set forth herein and specifically incorporates

8  General Objection Nos. 12-13 (regarding Definitions), including but not limited to its

9  objections to the definitions of "BRATZ" and "MATTEL" on the grounds that

10 Mattel's definitions of those terms are overly broad and renders the request vague

11 and ambiguous.

12         Subject to and without waiving the foregoing general and specific

13 objections, MGA responds as follows to the request:

14         MGA admits that one or more dolls introduced by MGA to the market

15 for sale in May or June of 2001 known as "Bratz" and subsequent dolls, accessories

16 and other products sold under the Bratz brand, or associated by MGA with the Bratz

17 line of dolls, compete with one or more products marketed and sold by Mattel.

18

19 **<u>REQUEST FOR ADMISSION NO. 2:</u>**

20         Admit that BRATZ does not compete with any products marketed and

21 sold by MATTEL.

22 **<u>RESPONSE TO REQUEST FOR ADMISSION NO. 2:</u>**

23         MGA incorporates by reference its General Response and General

24 Objections above, as though fully set forth herein and specifically incorporates

25 General Objection Nos. 12-13 (regarding Definitions), including but not limited to its

26 objections to the definitions of "BRATZ" and "MATTEL" on the grounds that

27 Mattel's definitions of those terms are overly broad and renders the request vague

28 and ambiguous.

10

EXHIBIT 2 PAGE 35

1    Subject to and without waiving the foregoing general and specific

2  objections, MGA responds as follows to the request:

3    DENIED.  MGA admits that one or more dolls introduced by MGA to

4  the market for sale in May or June of 2001 known as "Bratz" and subsequent dolls,

5  accessories and other products sold under the Bratz brand, or associated by MGA

6  with the Bratz line of dolls, compete with one or more products marketed and sold

7  by Mattel.

8

9  **REQUEST FOR ADMISSION NO. 3:**

10    Admit that BRATZ DOLLS compete with one or more products

11  marketed and sold by MATTEL.

12  **RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

13    MGA incorporates by reference its General Response and General

14  Objections above, as though fully set forth herein and specifically incorporates

15  General Objection Nos. 12-13 (regarding Definitions), including but not limited to its

16  objections to the definitions of "BRATZ DOLLS" and "MATTEL" on the grounds

17  that Mattel's definitions of those terms are overly broad and renders the request

18  vague and ambiguous.

19    Subject to and without waiving the foregoing general and specific

20  objections, MGA responds as follows to the request:

21    MGA admits that one or more dolls introduced by MGA to the market

22  for sale in May or June of 2001 known as "Bratz," and subsequent dolls introduced

23  by MGA to the market known as "Bratz," compete with one or more products

24  marketed and sold by Mattel.

25

26  **REQUEST FOR ADMISSION NO. 4:**

27    Admit that BRATZ DOLLS do not compete with any products

28  marketed and sold by MATTEL.

MGA'S RESPONSE TO MATTEL'S 1ST SET OF RFA TO BRYANT, MGA, MGA HK AND LARIAN

EXHIBIT 2 PAGE 3 6

1 | **RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

2 |     MGA incorporates by reference its General Response and General

3 | Objections above, as though fully set forth herein and specifically incorporates

4 | General Objection Nos. 12-13 (regarding Definitions), including but not limited to its

5 | objections to the definitions of "BRATZ DOLLS" and "MATTEL" on the grounds

6 | that Mattel's definitions of those terms are overly broad and renders the request

7 | vague and ambiguous.

8 |     Subject to and without waiving the foregoing general and specific

9 | objections, MGA responds as follows to the request:

10 |     DENIED.  MGA admits that one or more dolls introduced by MGA to

11 | the market for sale in May or June of 2001 known as "Bratz," and subsequent dolls

12 | introduced by MGA to the market known as "Bratz," compete with one or more

13 | products marketed and sold by Mattel.

14 |

15 | **REQUEST FOR ADMISSION NO. 5:**

16 |     Admit that BRYANT'S assignment of rights to BRATZ to MGA in the

17 | ASSIGNMENT AGREEMENT gave MGA property rights.

18 | **RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

19 |     MGA incorporates by reference its General Response and General

20 | Objections above, as though fully set forth herein and specifically incorporates

21 | General Objection Nos. 12-13 (regarding Definitions), including but not limited to its

22 | objections to the definitions of "BRATZ" and "MGA" on the grounds that Mattel's

23 | definitions of those terms are overly broad and renders the request vague and

24 | ambiguous.   MGA further objects to the use of the term "property rights" as vague

25 | and ambiguous.  MGA interprets "property rights" to mean intellectual property

26 | rights, including copyright, trademark, design patent, and utility patent.

27 |     Subject to and without waiving the foregoing general and specific

28 | objections, MGA responds as follows to the request:

MGA'S RESPONSE TO MATTEL'S 1ST SET OF RFA TO BRYANT, MGA, MGA HK AND LARIAN

EXHIBIT _2_ PAGE _37_

1    MGA admits that in the Assignment Agreement, Bryant assigned to

2 MGA any copyright rights that he may have possessed in his drawings of characters

3 that he called "Bratz." With respect to design patent law, MGA denies that Bryant

4 assigned any such rights to MGA in the Assignment Agreement. In this connection,

5 MGA further asserts that Bryant had no design patent rights that he could assign,

6 because to the extent that Bryant's two-dimensional drawings could have suggested

7 or be considered the conception of a potential three-dimensional design, such three-

8 dimensional design would not have been sufficiently original to qualify for design

9 patent protection. MGA further asserts that the actual three-dimensional shapes of

10 any of MGA's Bratz do not resemble, and are not substantially similar to, the three-

11 dimensional design that could be considered to have been suggested by Bryant's two-

12 dimensional drawings.

13

14 **REQUEST FOR ADMISSION NO. 6:**

15    Admit that BRYANT'S assignment of rights to BRATZ to MGA in the

16 ASSIGNMENT AGREEMENT did not give MGA property rights.

17 **RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

18    MGA incorporates by reference its General Response and General

19 Objections above, as though fully set forth herein and specifically incorporates

20 General Objection Nos. 12-13 (regarding Definitions), including but not limited to its

21 objections to the definitions of "BRATZ" and "MGA" on the grounds that Mattel's

22 definitions of those terms are overly broad and renders the request vague and

23 ambiguous. MGA further objects to the use of the term "property rights" as vague

24 and ambiguous. MGA interprets "property rights" to mean intellectual property

25 rights, including copyright, trademark, design patent, and utility patent.

26    Subject to and without waiving the foregoing general and specific

27 objections, MGA responds as follows to the request:

28    MGA admits that in the Assignment Agreement, Bryant assigned to

13

MGA'S RESPONSE TO MATTEL'S 1ST SET OF RFA TO BRYANT, MGA, MGA HK AND LARIAN

EXHIBIT _2_ PAGE _38_

1  MGA any copyright rights that he may have possessed in his drawings of characters

2  that he called "Bratz."  With respect to design patent law, MGA denies that Bryant

3  assigned any such rights to MGA in the Assignment Agreement.  In this connection,

4  MGA further asserts that Bryant had no design patent rights that he could assign,

5  because to the extent that Bryant's two-dimensional drawings could have suggested

6  or be considered the conception of a potential three-dimensional design, such three-

7  dimensional design would not have been sufficiently original to qualify for design

8  patent protection.  MGA further asserts that the actual three-dimensional shapes of

9  any of MGA's Bratz do not resemble, and are not substantially similar to, the three-

10  dimensional design that could be considered to have been suggested by Bryant's two-

11  dimensional drawings.

12

13  **REQUEST FOR ADMISSION NO. 7:**

14         Admit that BRYANT'S assignment of rights to BRATZ to MGA in the

15  ASSIGNMENT AGREEMENT gave MGA valuable property rights.

16  **RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

17         MGA incorporates by reference its General Response and General

18  Objections above, as though fully set forth herein and specifically incorporates

19  General Objection Nos. 12-13 (regarding Definitions), including but not limited to its

20  objections to the definitions of "BRATZ" and "MGA" on the grounds that Mattel's

21  definitions of those terms are overly broad and renders the request vague and

22  ambiguous.  MGA further objects to the use of the terms "valuable" and "property

23  rights" as vague and ambiguous.  MGA interprets "valuable" as it is commonly used

24  and understood.  MGA interprets "property rights" to mean intellectual property

25  rights, including copyright, trademark, design patent, and utility patent.

26         Subject to and without waiving the foregoing general and specific

27  objections, MGA responds as follows to the request:

28         MGA denies that Bryant assigned to MGA in the Assignment

14

MGA'S RESPONSE TO MATTEL'S 1ST SET OF RFA TO BRYANT, MGA, MGA HK AND LARIAN

EXHIBIT __2__ PAGE __39__

1  Agreement intellectual property rights that were valuable, except MGA admits that
2  Bryant assigned to MGA rights that could, after the successful introduction and
3  growing success of the Bratz line, which were predominantly the result of substantial
4  investment, development, and marketing by MGA, be considered in hindsight to
5  have been valuable at the time of the Assignment Agreement.
6
7  **REQUEST FOR ADMISSION NO. 8:**
8          Admit that BRYANT'S assignment of rights to BRATZ to MGA in the
9  ASSIGNMENT AGREEMENT did not give MGA valuable property rights.
10 **RESPONSE TO REQUEST FOR ADMISSION NO. 8:**
11         MGA incorporates by reference its General Response and General
12 Objections above, as though fully set forth herein and specifically incorporates
13 General Objection Nos. 12-13 (regarding Definitions), including but not limited to its
14 objections to the definitions of "BRATZ" and "MGA" on the grounds that Mattel's
15 definitions of those terms are overly broad and renders the request vague and
16 ambiguous.  MGA further objects to the use of the terms "valuable" and "property
17 rights" as vague and ambiguous.  MGA interprets "valuable" as it is commonly used
18 and understood.  MGA interprets "property rights" to mean intellectual property
19 rights, including copyright, trademark, design patent, and utility patent.
20         Subject to and without waiving the foregoing general and specific
21 objections, MGA responds as follows to the request:
22         MGA admits that Bryant's assignment of rights to Bratz to MGA in the
23 Assignment Agreement did not give MGA "valuable property rights," but further
24 asserts that Bryant assigned to MGA rights that could, after the successful
25 introduction and growing success of the Bratz line, which were predominantly the
26 result of substantial investment, development, and marketing by MGA, be
27 considered in hindsight to have been valuable at the time of the Assignment
28 Agreement.

15

EXHIBIT _2_ PAGE _40_

1

2  **REQUEST FOR ADMISSION NO. 9:**

3        Admit that BRATZ is valuable property.

4  **RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

5        MGA incorporates by reference its General Response and General

6  Objections above, as though fully set forth herein and specifically incorporates

7  General Objection Nos. 12-13 (regarding Definitions), including but not limited to its

8  objections to the definition of "BRATZ" on the grounds that Mattel's definition of

9  the term is overly broad and renders the request vague and ambiguous.  MGA further

10  objects to the use of the terms "valuable" and "property" as vague and ambiguous.

11        Subject to and without waiving the foregoing general and specific

12  objections, MGA responds as follows to the request:

13        Due to the overly broad and confusing nature of the Requests as a

14  consequence of Mattel's definitions, MGA states that it cannot "admit" or "deny" this

15  Request in a manner that would provide an accurate statement of MGA's position

16  that could not be used by Mattel to try to mislead the jury.  In lieu thereof, MGA

17  responds as follows: MGA admits that the dolls introduced by MGA to the market

18  for sale in May or June of 2001 known as "Bratz," and subsequent dolls, accessories

19  and other products sold under the Bratz brand, or associated by MGA with the Bratz

20  line of dolls, have value.

21

22  **REQUEST FOR ADMISSION NO. 10:**

23        Admit that BRATZ is not valuable property.

24  **RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

25        MGA incorporates by reference its General Response and General

26  Objections above, as though fully set forth herein and specifically incorporates

27  General Objection Nos. 12-13 (regarding Definitions), including but not limited to its

28  objections to the definition of "BRATZ" on the grounds that Mattel's definition of

16

MGA'S RESPONSE TO MATTEL'S 1ST SET OF RFA TO BRYANT, MGA, MGA HK AND LARIAN

EXHIBIT _2_ PAGE _41_