COPY

1   DALE M. CENDALI (admitted *pro hac vice*)
    DIANA M. TORRES (S.B. #162284)
2   JAMES P. JENAL (S.B. #180190)
    O'MELVENY & MYERS LLP
3   400 South Hope Street
    Los Angeles, CA 90071-2899
4   Telephone: (213) 430-6000
    Facsimile: (213) 430-6407
5   jjenal@omm.com

6   PATRICIA GLASER (S.B. #55668)
    CHRISTENSEN, GLASER, FINK, JACOBS, WEIL & SHAPIRO, LLP
7   10250 Constellation Boulevard, 19th Floor
    Los Angeles, CA 90067
8   Telephone: (310) 553-3000
    Facsimile: (310) 557-9815
9
    Attorneys for MGA Entertainment, Inc.
10
    MICHAEL H. PAGE (S.B. #154913)
11  KEKER & VAN NEST LLP
    710 Sansome Street
12  San Francisco, CA 94111
    Telephone: (415) 391-5400
13  Facsimile: (415) 397-7188

14  Attorneys for Carter Bryant

15          UNITED STATES DISTRICT COURT

16          CENTRAL DISTRICT OF CALIFORNIA

17                  EASTERN DIVISION

18

19  CARTER BRYANT, an individual,          Case No. CV 04-9059 SGL (RNBx)
                                           (consolidated with CV 04-9059 & 05-
20                  Plaintiff,             2727)

21          v.                            [DISCOVERY MATTER]
                                          [PUBLIC REDACTED]
22  MATTEL, INC., a Delaware              DECLARATION OF JAMES P.
    corporation,                          JENAL IN SUPPORT OF MGA
23                                        ENTERTAINMENT, INC.'S AND
                    Defendant.            CARTER BRYANT'S JOINT
24                                        MOTION TO COMPEL RE:
                                          MATTEL'S BANDYING OF 30(B)(6)
25                                        WITNESSES

26                                        Hearing Date: T.B.D.
                                          Time: T.B.D.
27  AND CONSOLIDATED ACTIONS

28
                                          DECL. OF JAMES P. JENAL ISO JOINT
                                          MTN TO COMPEL RE MATTEL'S 30(B)(6)
                                          WITNESSES CV 04-9059 SGL (RNBX)

LODGED
CLERK, U.S. DISTRICT COURT
SEP - 7 2007
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION
BY DEPUTY

I, James P. Jenal, declare and state as follows:

1.    I am a counsel in the law firm of O'Melveny & Myers LLP, counsel for MGA Entertainment, Inc. ("MGA") and I make this declaration in support of MGA's and Carter Bryant's ("Bryant," collectively "Defendants") Motion to Compel re: Mattel's Bandying of 30(b)(6) Witnesses. All of the facts set forth herein are known to me personally, and if called as a witness, I would testify competently thereto.

2.    Attached hereto as **Exhibit 1** is a true and correct copy of Carter Bryant's Notice of Deposition of Plaintiff and Counter-Defendant Mattel, Inc. pursuant to Fed. R. Civ. P. 30(b)(6) dated December 21, 2004.

3.    Mattel deposed Carter Bryant for three days on November 4, 5, and 8, 2004. An electronic search of Bryant's deposition transcript reveals no reference to the words "Diva," "Starz," or "Stars." Mattel did, however, question Bryant regarding his exposure to Lily Martinez's Toon Teens project. (Bryant Dep. at 254:16-259:22.) Attached hereto as **Exhibit 2** is a true and correct copy of excerpts from that deposition.

4.    Jules Andres was Mattel's original designee on Topic 41 from Bryant's 30(b)(6) Notice. The day before that deposition was to occur, counsel for Mattel contacted me and told me that Mattel had realized that Ms. Andres would not be Mattel's "best witness" on that topic and instead proposed substituting Julia Jensen in her place. By the time Mattel's counsel advised me of this change, Bryant's counsel had already departed from San Francisco to attend Ms. Andres' deposition in Los Angeles. To accommodate this change resulted in the deposition being delayed by three weeks.

5.    On June 26, 2007 I took the deposition of Mattel's 30(b)(6) witness Julia Marine, and attached hereto as **Exhibit 3** is a true and correct copy of excerpts from that deposition. In addition to Mattel's outside counsel, Jon Corey (who defended the deposition), also attending the deposition was Mattel's in-house

DECL. OF JAMES P. JENAL ISO JOINT
MTN TO COMPEL RE MATTEL'S 30(B)(6)
WITNESSES CV 04-9059 SGL (RNBX)

1   lawyer, Michael Moore. Ms. Marine testified that to prepare for her deposition she

2   met with both Mr. Moore and Mr. Corey. Although at least two breaks were taken

3   during the deposition, at no time did either Mr. Moore or Mr. Corey attempt to

4   correct Ms. Marine's testimony and she never sought to change any of her

5   testimony either during the deposition, or afterwards.

6          6.   Ms. Marine testified that, as far as she knew as Mattel's 30(b)(6)

7   designee, there were no Zeus backup tapes for the time period from 1998 through

8   2001. Specifically, Ms. Marine said: "[Q.]  Do you know whether Mattel has

9   preserved backup tapes from the Zeus server for the period of 1998? MR. COREY:

10  Objection: scope. THE WITNESS: I'm not aware of that. BY MR. JENAL: Q.

11  Do you know whether Mattel has preserved backup tapes for the Zeus file server

12  from 1999? MR. COREY: Objection: scope. THE WITNESS: I'm not aware of

13  backups that old. BY MR. JENAL: Q.   Are you aware of whether Mattel has

14  preserved backup tapes from the Zeus server from the year 2000? MR. COREY:

15  Objection: scope. THE WITNESS: I don't think we have anything going back so

16  far. BY MR. JENAL: Q.  Do you know whether Mattel has preserved backup

17  tapes from the Zeus file server for the year 2001? MR. COREY: Objection:

18  scope. THE WITNESS: I'm sorry, I don't know of old backups like this." Marine

19  Dep., 243:5-244:4.

20         7.   Ms. Marine's testimony directly contradicted a sworn

21  declaration by Mattel's counsel, Michael Zeller that was submitted to Judge Larson

22  in support of Mattel's motion for leave to amend its complaint. Attached hereto as

23  **Exhibit 4** is a true and correct copy of Mr. Zeller's declaration dated December 28,

24  2006. Specifically, Mr. Zeller declared, "Mattel has preserved backup tapes from

25  Mattel's file server known as Zeus that were created in 1998, 1999, 2000 and 2001

26  and at various other times." Ex. 4, ¶ 14. Although Mr. Zeller's declaration

27  suggests that he is relying upon Ms. Marine's earlier deposition testimony to

28  support his claim, she did not so testify and the attached testimony does not support

- 3 -

1    Mr. Zeller's claim.

2          8.      Mattel did nothing to correct the record from Ms. Marine's June

3    26, 2007 deposition until after Defendants filed a spoliation motion seeking

4    terminating sanctions from Judge Larson on July 24, 2007.  That motion relied

5    heavily on Ms. Marine's testimony.  In opposition to that motion, Mattel put

6    forward a declaration from its in-house counsel, Michael Moore, which directly

7    contradicted Ms. Marine's testimony.  Attached hereto as **Exhibit 5** is a true and

8    correct copy of Mr. Moore's declaration.

9          9.      Defendants' costs for taking the seven depositions at issue in

10   this case are in excess of $15,000.  In preparing this Motion, Defendants have

11   incurred in excess of $17,000, including at least 20 hours of my time at $550/hour

12   and 20 hours of Yvonne Garcia's time at $300/hour.

13

14         I declare under penalty of perjury under the laws of the United States

15   of America that the foregoing is true and correct.

16

17         Executed on September 6, 2007, at Los Angeles, California.

18

19                                                James P. Jenal

20

21

22

23

24

25

26

27

28

                                               DECL. OF JAMES P. JENAL ISO JOINT
                              - 4 -           MTN TO COMPEL RE MATTEL'S 30(B)(6)
                                               WITNESSES CV 04-9059 SGL (RNBX)

**Exhibit 1**

ROBERT F. MILLMAN, Bar No. CA 062152
DOUGLAS A. WICKHAM, Bar No. CA 127268
KEITH A. JACOBY, Bar No. 150233
LITTLER MENDELSON
A Professional Corporation
2049 Century Park East, 5th Floor
Los Angeles, CA  90067.3107
Telephone:   310.553.0308
Facsimile:   310.553.5583

Attorneys for Defendant and Counter-Claimant
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> CARTER BRYANT, an individual; and DOES 1 through 10, inclusive, <br><br> Defendant. <br><br> CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public, <br><br> Counter-Claimant, <br><br> v. <br><br> MATTEL, INC., a Delaware Corporation, <br><br> Counter-Defendant. | Case No. CV 04-9059 NM (RNBx) <br><br> HON. NORA M. MANELLA <br><br> **NOTICE OF DEPOSITION OF PLAINTIFF AND COUNTER-DEFENDANT MATTEL, INC.** <br><br> **[F.R.C.P. 30(b)(6)]** <br><br> Date:       January 11, 2005 <br> Time:       9:30 a.m. <br> Place:       Littler Mendelson, PC <br> 2049 Century Park East <br> Suite 500, Los Angeles <br> California 90067 |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
8th Floor
Los Angeles, CA 90067.3107
310.553.0308

5

**TO PLAINTIFF MATTEL INC. AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant and Counter-Claimant Carter Bryant ("Bryant") in the above-captioned matter shall take the deposition of the Person(s) Most Knowledgeable from Plaintiff and Counter-Defendant Mattel, Inc. ("Plaintiff" or "Mattel") at the offices of Littler Mendelson, 2049 Century Park East, Fifth Floor, Los Angeles, California 90067, beginning at 9:30 a.m. on January 11, 2005. The deposition shall continue from day to day excluding Saturdays, Sundays and holidays, until completed. The deposition will be taken before an officer or other person duly authorized to administer oaths and shall be recorded by stenographic, sound and visual (videotape), and real-time transcription means.

Pursuant to Rule 30(b)(6), the deponent is directed to designate one or more officers, directors, managing agents or other individuals able to fully and completely testify on its behalf concerning the matters listed in Exhibit "A" attached hereto.

Dated: December 21, 2004

Respectfully submitted,

ROBERT F. MILLMAN
DOUGLAS A. WICKHAM
KEITH A. JACOBY

DOUGLAS A. WICKHAM
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant
and Counter-Claimant
CARTER BRYANT

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

1.

## EXHIBIT A

### Definitions

1. "You," "Your" and "Mattel" refer to Plaintiff Mattel, Inc. and its officers, directors, agents, employees and all individuals acting under its direction or control or on its behalf.

2. "Complaint" means the complaint filed by Mattel against Bryant in the Superior Court of the State of California for the County of Los Angeles dated April 27, 2004.

3. "Communication" means any oral or written transmittal or receipt of words or information, by whatever manner or means, and regardless of how or by whom the communication was initiated and shall include any contact between two or more persons, including but not limited to written contact by such means as letter, memorandum, telegram, telex, email, facsimile or any Document, and oral contact by such means as face-to-face meeting or telephone.

4. "Concerning" means relating to, referring to, describing, discussing, mentioning, evidencing, or constituting.

5. "Contract" and/or "Agreement" mean the contract or agreement itself, and any drafts thereof, together with all schedules, exhibits, attachments or addenda thereto and any amendments of the foregoing.

6. "Document(s)" means all "WRITINGS" and "RECORDINGS," including, but not limited to, writings and records of every type and description including, but not limited to, notes (including notes made contemporaneously with meetings or conversations or thereafter), books, records, letters, telegrams, memoranda, electronic mail messages (including electronic mail messages stored on network or individual servers, hard drives, back-up tapes or other storage media, collectively referred to as "e-mail"), reports, studies, speeches, calendars or diary entries, tabulations, data compilations, drawings, designs, sketches, paintings, artwork, graphs, charts, photographs, computer disks, backup tapes and diskettes and

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

2.

7

1    other data compilations from which information can be obtained or tabulated through

2    detection devices into reasonably usable forms. "Document" also includes

3    reproductions or film impressions of any of the aforementioned documents, tape

4    recordings and copies of documents, which are not identical duplicates of the originals

5    and copies of all documents of which the originals are not in the possession, custody

6    or control of Mattel.

7        7.    "Relate To" and "Relating To" mean in any way directly or

8    indirectly, concerning, referring to, pertaining to, mentioning, discussing, describing,

9    disclosing, confirming, supporting, evidencing, representing, or being connected with

10    a stated subject matter or any aspect thereof.

11        8.    "And" and "Or" mean either the conjunctive or the disjunctive as context

12    may require so that the meaning of the term is inclusive rather than exclusive.

13        9.    "Person" or "Persons" means any or all entities including, without

14    limitation, any or all individuals, single proprietorships, associations, companies,

15    firms, partnerships, joint ventures, corporations, employees or former employees, or

16    any other business, governmental or labor entity, and any division, departments or

17    other units thereof.

18        10.    "MGA" means and refers to MGA Entertainment, Inc., formerly known

19    as ABC International Traders, Inc. dba MGA Entertainment and Micro Games of

20    America, Inc., and each of its officers, directors, agents, and employees or any other

21    person acting on its behalf.

22        11.    "Bryant" means and refers to Defendant Carter Bryant and each of his

23    agents, employees or any other person acting on his behalf.

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

3.

8

## DESIGNATED SUBJECTS OF TESTIMONY AT PERSONS MOST KNOWLEDGEABLE DEPOSITION

1. All Contracts, and the terms thereof, that You contend You had with Bryant.

2. All contractual and non-contractual duties and obligations Bryant owed or performed for Mattel during his employment with Mattel, and thereafter.

3. All of Bryant's acts or omissions which breached any contractual or non-contractual duty or obligation Bryant owed to Mattel.

4. All of Bryant's acts or omissions which breached any duties or obligations imposed by the Conflict of Interest Questionnaire and/or the Employee Confidential Information and Inventions Agreement.

5. All Mattel proprietary or confidential information Bryant had access to during his employment with Mattel.

6. All of Bryant's acts or omissions pursuant to which he aided, assisted and worked for a competitor of Mattel while employed by Mattel from 1995 to the present.

7. The services and property belonging to Mattel that Bryant provided to any third party, including MGA, from 1995 to the present.

8. All acts, omissions, circumstances and/or evidence showing, or tending to show, that any and all products of MGA, including but not limited to, any and all products sold under the trade name "Bratz," originated from, were derived from, are based upon, are copied or incorporated from, or are substantially or confusingly similar to, any design, research and developmental work, work in progress, or product owned at any time by Mattel or created by any Mattel employee, including but not limited to Bryant, or by any independent contractor during the time that such Person was working for Mattel.

9. All facts and circumstances showing the conception, origination, creation, development and/or reduction to practice of "Toon Teens,"

4.

9

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

10.     All facts and circumstances showing the conception, origination, creation, development and/or reduction to practice of "My Scene Barbie" and each of the other "My Scene" characters or dolls.

11.     All facts and circumstances showing the conception, origination, creation, development and/or reduction to practice of "Diva Starz."

12.     All facts and circumstances showing the conception, origination, creation, development and/or reduction to practice of "Mini Diva Starz."

13.     All acts, omissions, circumstances and/or evidence showing, or tending to show, that any product sold at any time by MGA under the trade name "Bratz" originated from, is derived from, is based on, copies, incorporates, or is substantially or confusingly similar to any design or work product owned at any time by Mattel or created by Bryant during the time Bryant was working for Mattel.

14.     All acts, omissions, circumstances and/or evidence showing, or tending to show, that Mattel has been damaged or suffered any financial or other loss by any act or omission of Bryant.

15.     All acts, omissions, circumstances and/or evidence showing, or tending to show, when Mattel first became aware of any alleged wrongful conduct of Bryant.

16.     All acts, omissions, circumstances and/or evidence showing, or tending to show, the manner and mode by which Mattel first became aware of any alleged wrongful conduct of Bryant.

17.     All acts, omissions, circumstances and/or evidence showing, or tending to show, when You first became aware that Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz.

18.     All acts, omissions, circumstances and/or evidence showing, or tending to show, how You first became aware that Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz.

19.     All acts, omissions, circumstances and/or evidence showing, or tending to show, all actions taken by You, including but not limited to all circumstances

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

5.

1 surrounding any investigations you have undertaken, relating to Bratz after You

2 learned that Bryant was involved in the conception, creation, design and/or reduction

3 to practice of Bratz.

4    20.    All acts, omissions, circumstances and/or evidence showing, or tending

5 to show, all actions taken by You, including but not limited to all circumstances

6 surrounding any investigations You have undertaken, relating to Bryant and any act or

7 omission of Bryant that breached any contractual or non-contractual duty or obligation

8 Bryant owed to Mattel.

9    21.    All Communications regarding Bryant's involvement in the conception,

10 creation, design and/or reduction to practice of Bratz from 1998 until the date of the

11 filing of the Complaint.

12    22.    All acts, omissions, circumstances and/or evidence showing, or tending

13 to show, that Bryant misappropriated Mattel property, including without limitation

14 intellectual property, at any time.

15    23.    All acts, omissions, circumstances and/or evidence showing, or tending

16 to show, that Bryant owed fiduciary duties to, or occupied a fiduciary relationship

17 with, Mattel.

18    24.    All acts, omissions, circumstances and/or evidence showing, or tending

19 to show, that prior to October 21, 2000, Mattel had any toy concept or project which

20 had not yet been offered for sale to the public, including without limitation, any toy

21 concept or project in the pre-production or development phase, that Bryant improperly

22 copied, replicated, borrowed or otherwise used in whole, or in any part, during or after

23 Bryant's employment with Mattel.

24    25.    All measures taken by Mattel including, without limitation, any legal

25 action brought or threatened to be brought (including in demand letters or other

26 notices), from 1998 to the present to achieve, or attempt to achieve, compliance with

27 or adherence to any or all of the terms and conditions of Mattel's "Employee

28 Confidential Information and Inventions Agreement" (including all forms or versions

6.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

11

1  of that agreement) from 1998 to the present, and/or Mattel's "Conflict of Interest

2  Questionnaire" (including all forms or versions of that agreement) from 1998 to the

3  present.

4      26.  Communications, discussion, meetings, analyses and the decision-

5  making process regarding measures taken or contemplated by Mattel including,

6  without limitation, any legal action brought or threatened to be brought (including

7  demand letters or other notices) against Bryant including, without limitation, the filing

8  of the Complaint.

9      27.  Mattel's electronic mail system's ability to retrieve electronic mail

10  messages from any Mattel server, Mattel electronic mail archive tape, or hard drive

11  networked to the Mattel computer network, as that network existed from January 1998

12  to the present.

13      28.  Mattel's policies or procedures or practice in effect or use, from January

14  1998 to the present, regarding Document retention or destruction (including with

15  respect to e-mails), including without limitation, e-mail backup procedures and

16  policies; location of saved or backed-up e-mails, procedures for accessing saved or

17  backed-up e-mails; policies regarding deletion of e-mails; and Mattel's document

18  retention or destruction policies (including with respect to emails) when Mattel had

19  notice of a potential claim or lawsuit in each of the years 1998, 1999, 2000, 2001,

20  2002, 2003 and 2004.

21      29.  Mattel's policies, procedures and practices in effect or use, at any time

22  from January 1, 1998 to the present, regarding Document retention, deletion and

23  destruction (including with respect to electronic documents and e-mail), including

24  without limitation, e-mail backup policies, procedures and practices in effect or use;

25  location of saved or backed-up e-mails, procedures for accessing saved or backed-up

26  e-mails; policies, procedures and practices in effect or use regarding deletion of e-

27  mails; and policies, procedures and practices in effect or use regarding retention of e-

28  mails.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

7.

12

30.    All hardware and software used by Mattel at any time from January 1, 1998 to the present for Mattel's e-mail systems including, without limitation, all on-site and off-site back-up computer systems and files, exchange servers and computer storage space.

31.    The ability of Mattel to retrieve e-mail messages from any server, disk, drive, archive disk, tape, server or drive, storage disk, tape server or drive, individual computer hard drive, or any hard drive or server networked to any Mattel computer network, at any time from January 1, 1998 to the present.

32.    Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction (including with respect to e-mails and other electronic documents) when Mattel is aware of a potential claim or lawsuit in which it may be involved.

33.    Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction (including with respect to e-mails and other electronic documents) after Mattel began considering or analyzing any potential claim or lawsuit against MGA or Bryant regarding "Bratz" or other claim of any nature.

34.    Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction (including with respect to e-mails and other electronic documents) after Mattel began investigating facts pertaining to Bryant's involvement with MGA or "Bratz" or any claim of any nature, actual or potential, against Bryant.

35.    Mattel's policies, procedures and practices in effect or use, at any time from January 1, 1998 to the present, regarding Document retention, deletion or destruction including with respect to e-mails and other electronic documents) after Mattel began investigating facts pertaining to the relationship, if any, between Bryant's involvement with MGA or "Bratz" and work or projects that Bryant may have seen during his employment with Mattel.

8.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

36.    Files (including human resources and legal files and files kept or maintained at business locations and personal residences), locations, offices, computers (including business, lap top and residence computers), warehouses, records centers, file rooms, archives, servers, storage facilities, back up or storage tapes, and any and other method and/or location for maintaining or storing Documents that were searched or reviewed by Mattel when searching for Documents responsive to Bryant's Request for Identification and Production of Documents and Tangible Things (Set One) including, without limitation, all efforts made and steps undertaken when searching for and producing Documents in a tangible, electronic, magnetic or any other form.

37.    The facts and circumstances surrounding the filing of the copyright registration for "Toon Teens, produced by Mattel as Document Control Nos. M0012564-65.

38.    The development of "Toon Teens," including Your decision to not offer "Toon Teens" for sale to the public.

39.    What actions, if any, You took with respect to the "Toon Teens" project after You decided not to offer this project for sale to the public.

40.    The current status of the "Toon Teens" project.

41.    All statements of Mattel or ex-Mattel employees in the July 2003 Wall Street Journal article (produced by Mattel to Bryant in the present case), including, without limitation, "Inside Mattel, some are convinced the Bratz borrow liberally from a Mattel project that was scrapped at the testing stage in 1998"; "But the Bratz' oversized heads -- with their pursed lips and cartoonist eyes -- are 'virtually identical' to the heads of the dolls her team created"; "Anyone who passed by [Lily Martinez's] cubicle would see the picture up on the wall"; and "The big heads, the big eyes, the big feet -- they were all the same [as the Bratz]."

42.    Documents produced by Mattel as Document Control Nos. M0012567-71.

9.

14

43.   Documents produced by Mattel as Document Control Nos. M0012572-78.

44.   Documents produced by Mattel as Document Control Nos. M0012579-86.

45.   Documents produced by Mattel as Document Control Nos. M0012587.

46.   Documents produced by Mattel as Document Control Nos. M0012594-617 and Nos. M0001558-81.

47.   Mattel's phone log system, and the maintenance, storage and ability to retrieve phone logs from an individual extension, such as the log produced by Mattel as Document Control Nos. M0001808-24, including Bryant's phone logs for extension 6099 for October 2000.

48.   All board of director's meeting minutes that evidence, relate or refer to Bryant from January 1998 to the present.

49.   All versions of the "Employee Confidential Information and Inventions Agreement" used by Mattel since January 1, 1995 including, without limitation, the "Employee Confidential Information and Inventions Agreement" produced by Mattel as Document Control Nos. M0001638-39 and the "Employee Confidential Information and Inventions Agreement" attached to the Complaint as Exhibit "A."

50.   All versions of the "Conflict of Interest Agreement" used by Mattel since January 1, 1995 including, without limitation, the "Conflict of Interest Agreement" produced by Mattel as Document Control Nos. M0001636-37 and the "Conflict of Interest Agreement" attached to the Complaint as Exhibit "B."

51.   The "Proprietary Information Checkout" form produced by Mattel as Document Control No. M0001597.

52.   All forms or other documents which Mattel has requested prospective and actual employees to sign since January 1, 1995.

53.   All recording and tracking of the time spent by Bryant while working on various Mattel projects.

10.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

54.   Bryant's "Job Summary" report, produced by Mattel as Document Control Nos. M001667-68.

55.   All acts, omissions, circumstances and/or evidence showing, or tending to show, that Bryant made affirmative misrepresentations to any and all Mattel employees upon his departure from Mattel.

56.   Bryant's "Exit Interview Report" dated October 19, 2000, produced by Mattel as Document Control No. M0001654.

Los_Angeles:388196.2 028307.1010

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

11.

16

## PROOF OF SERVICE BY MESSENGER

I am employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is Allstar Messenger Service, 345 South Figueroa Street, Suite 305, Los Angeles, California 90071. On December 21, 2004, I personally served:

**NOTICE OF DEPOSITION OF PLAINTIFF AND COUNTER DEFENDANT MATTEL, INC.**

by delivering copies thereof to:

Michael T. Zeller, Esq.              Diana M. Torres, Esq.
Quinn Emanuel Urquhart Oliver &      O'Melveny & Myers LLP
Hedges LLP                           400 S. Hope Street, 10th Floor
865 S. Figueroa Street, 10th Floor   Los Angeles, CA 90071
Los Angeles, CA 90017

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on December 21, 2004, at Los Angeles, California.

_MARCUS ROBINSON_

Los_Angeles:388357.1 028307.1010

LITTLER MENDELSON
A Professional Corporation
2048 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310.553.0308

PROOF OF SERVICE

17

Exhibit 2

0001

1        CONFIDENTIAL
2
3
4        IN THE UNITED STATES DISTRICT COURT
         FOR THE CENTRAL DISTRICT OF CALIFORNIA
5
6
         MATTEL, INC., a Delaware corporation )  CASE NO.
7        Corporation                )  CV 04-9059 DDP (AJWx)
                                     )
8              Plaintiff,            )
                                     )
9          vs.                       )
                                     )
10       CARTER BRYANT, an individual, and  )
         DOES 1 through 10, inclusive,      )
11                                   )
               Defendants.           )
12       _____   )
         CARTER BRYANT, on behalf of himself, )
13       all present and former employees of )
         Mattel, Inc., and the general public, )
14                                   )
               Cross-Complainant,    )
15                                   )
           vs.                       )
16                                   )
         MATTEL, INC., a Delaware corporation, )
17                                   )
               Cross-Defendant.      )
18
19
                     VOLUME I
20            THE VIDEOTAPED DEPOSITION OF CARTER BRYANT,
         produced, sworn, and examined on Thursday, November 4, 2004,
21       at 9:13 a.m. of that day, pursuant to Notice to Take
         Deposition at the University Plaza, Executive Boardroom,
22       333 South John Q. Hammons Parkway, in the City of Springfield,
         County of Greene, State of Missouri, before Sherrie L. Hunt,
23       Certified Court Reporter, and Notary Public, in a certain
         cause now pending in the United States District Court for the
24       Central District of California, wherein the parties are as
         above set forth, taken on behalf of the Plaintiff Mattel,
25       Inc.
26
27            COURT REPORTERS OF THE MIDWEST, INC.
                     P.O. Box 4282
28            Springfield, MO 65808 (417) 889-2079
29
30

MGA v. MATTEL              18        None                    Page 1

1          CONFIDENTIAL

2

3

4          A P P E A R A N C E S

5    For Plaintiff and          MR. JOHN B. QUINN
     Cross-Defendant:           MR. MICHAEL T. ZELLER

6

     MS. TANIA KREBS

7    Quinn, Emanuel, Urquhart,

8    Oliver & Hedges

     865 South Figueroa Street

9    10th Floor

     Los Angeles, California 90017

10

     For Defendants and        MR. DOUGLAS A. WICKHAM

11   Cross-Complainant:         Littler Mendelson

     2049 Century Park East

12   5th Floor

     Los Angeles, California 90067

13

14   Also Present:             Ms. Dale M. Cendali

     Mr. Michael Moore

15

     Videotaped by:            Mr. Donald Gifford

16   Mr. Donald Gifford, II

     1528 East Glenwood

17   Springfield, Missouri 65804

18

19

     I N D E X

20

     WITNESS:  CARTER BRYANT                    Page

21   Direct Examination by Mr. Quinn ................   3

     Notarial Certificate and Costs ..................

22

     * * *

23

24

25          E X H I B I T S

26   DEPOSITION EXHIBIT      DESCRIPTION         IDENTIFIED

27           (NONE)

28

29   Phonetic spelling:  (Ph.)

     Exactly as stated:  (Sic)

30

31

32

19

1    second?

2            MR. QUINN:  Certainly.

3            VIDEOGRAPHER:  We're off the record.  Time's

4    4:50.

5            (Break in proceedings.)

6            VIDEOGRAPHER:  Back on the record.  The

7    time's 4:52.

8            MR. WICKHAM:  Mr. Bryant's getting fatigued,

9    you know, given the lateness of the hour, and so we ask

10   that if you could wrap up, you know, pretty soon, that

11   would be terrific.

12   Q   (By Mr. Quinn)  So we call it a day for today and --

13   shortly and reconvene tomorrow morning same time, same

14   place?

15   A   Uh-huh.

16   Q   Okay.  Let me just try to cover a couple of things.  I

17   won't prolong this.  Did you see Lily Martinez' Toon Teens

18   drawings at Mattel?

19           MR. WICKHAM:  Objection, lacks foundation,

20   vague as to time.  Are you asking when he was employed at

21   Mattel did he see anything that Ms. Martinez worked on or

22   are you asking if this is something that he's recently

23   seen in connection with litigation?

24           MR. QUINN:  I'm asking my question.  While

25   he was at Mattel did he see Lily Martinez's Toon Teens

20

1    drawings.

2        MS. CENDALI:  Objection.

3        MR. WICKHAM:  I'll object on the -- it lacks

4    foundation as to the naming of any of Ms. Martinez's

5    projects, Toon Teens or, you know, any other name, during

6    the time that Mr. Bryant was employed there, but setting

7    aside that, if you understand the question, you can

8    answer.

9    A  I saw some project that Lily Martinez was working on.

10   Q  (By Mr. Quinn)  And when was that?

11   A  I think that was in the spring of 1999.

12   Q  And how did you come to see that?

13   A  I was over in the main line Barbie area.  I think I was

14   over there to talk to Elise and just happened to see --

15   she was setting it up on the table for some reason or

16   another.

17   Q  The "she" being?

18   A  Lily Martinez.

19   Q  All right.  And can you describe these drawings?

20       MS. CENDALI:  Objection.

21       MR. WICKHAM:  Objection, foundation,

22   mischaracterizes the witness's testimony.

23   A  I didn't see any drawings.

24   Q  (By Mr. Quinn)  What was it that you saw?

25   A  I saw some dolls and a playset that she was setting up.

21

1    Q  Okay.  Can you describe them?

2    A  Yes.  The dolls were very sort of baby-like.  They had

3       sort of baby faces and fancy-colored hair and they had

4       stuffed bodies.  They had big, swollen wrists and ankles.

5       They were cartoonish, very brightly colored.  I think it

6       had a car, like a -- sort of a Pee Wee's Playhouse type

7       car.

8    Q  Large eyes?

9           MR. WICKHAM:  Objection, foundation.

10   A  I don't remember them exactly, but I think they had large

11      eyes.

12   Q  (By Mr. Quinn)  Large lips?

13          MR. WICKHAM:  Objection, foundation.

14   A  I believe -- I believe they had fairly large lips.

15   Q  (By Mr. Quinn)  Nose feature not defined?

16          MR. WICKHAM:  Objection, lacks foundation.

17   A  I don't remember.  I only saw it briefly in passing.

18   Q  (By Mr. Quinn)  Oversize head?

19   A  No.  The dolls were large.

20   Q  Did you have any reaction to these figures when you saw

21      them?

22   A  I told Lily I thought they were cute.  I didn't really

23      think much about it.  I told her I thought they were cute.

24   Q  Did they have oversized feet?

25          MR. WICKHAM:  Objection, foundation.

22

1    A  Not really for the size of the doll.

2    Q  (By Mr. Quinn)  Do the Bratz have oversized feet?

3    A  Yes.

4    Q  Was anybody else with you and Lily?  Was Elise there?

5    A  I don't recall.

6    Q  Did you -- did you make the comment that you thought they

7       were cute?

8    A  I believe I told her I thought they were cute.

9    Q  Did you -- did you say anything else?

10   A  Not that I can remember.

11   Q  Did you say anything to Elise about these figures?

12   A  I think I may have told her that I had seen Lily's project

13      or whatever it was called and that I told her I thought it

14      was cute.

15   Q  Anything else that you said to Elise?

16   A  Not that I can recall.

17   Q  What was your reaction to Lily's project?

18          MR. WICKHAM:  Objection, asked and answered.

19   A  Again, I didn't really think too much of it other than I

20      thought it was -- it was different.  It was very bright.

21      It was -- looked like it was geared for a very young

22      consumer.

23   Q  (By Mr. Quinn)  Did it occur to you that it had some

24      similarities with your Bratz idea?

25   A  No.

23

1    Q   Did you ever discuss those figures that Lily had been

2        working on that you saw with anybody else besides Elise?

3    A   No.

4    Q   At no time?

5    A   No.

6    Q   Did you know Lily Martinez?

7    A   Yeah.  I knew her fairly -- fairly well.

8    Q   Fairly well?

9    A   Uh-huh.

10   Q   Before this?  Before seeing these figures?

11   A   Yes, I knew her fairly well before then.

12   Q   How did you know her?

13   A   Well, her cubicle was, I think, right nextdoor to Elise's

14       cubicle, so sometimes if I would go over to visit with

15       Elise, Lily would be over there and so we would just get

16       to talking and, you know, I was -- I was pretty friendly

17       with most people at Mattel, so --

18   Q   Did you ever make any comments to anybody about whether

19       Mattel should or should not pursue that project?

20   A   No, not that I can remember.

21   Q   Did you have any understanding at all as to why Lily had

22       created these figures?

23   A   Not at all.  Like I said, I just briefly passed by when

24       she was setting them up.  I didn't really ask a lot of

25       questions.  I just basically commented that I thought they

24

1      were cute and went about my business.

2   Q   Did you know -- or did you have any knowledge about

3      whether or not those figures were being considered by

4      Mattel as a Mattel product?

5   A   I guess my assumption would have been that they would have

6      been considered for a Mattel project since they were being

7      done by a Mattel designer.

8   Q   Was that shocking to you that Mattel was considering those

9      figures?

10          MR. WICKHAM:  Objection, lacks foundation,

11      mischaracterizes the witness's testimony.

12          MS. CENDALI:  Vague.

13   A   No, I don't think it was shocking.  Again, I don't think I

14      really thought about it very much one way or another.

15   Q   (By Mr. Quinn)  Did you ever express any view to anybody

16      as to whether or not Mattel ought to pursue that

17      project --

18          MS. CENDALI:  Asked and --

19          MR. WICKHAM:  Objection, asked and --

20   Q   (By Mr. Quinn)  -- Lily's figures?

21          MR. WICKHAM:  Objection, asked and answered.

22   A   Yeah.  As I said before, I didn't.

23          MR. QUINN:  And so shall we call it a day?

24      The witness is tired and indicated he would like to break

25      now and that's fine with us.

MGA v. MATTEL                    None                    Page 259

25

**Exhibit 3**

Marine, Julia (Vol. 03)  [CONFIDENTIAL]  6/26/2007  12:00:00 AM

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3               EASTERN DIVISION

4

5     ----------------------------

6     MATTEL, INC., a Delaware      )

7     Corporation,                  )

8          Plaintiff,               )

9          vs.                      ) No. CV 04-9059

10    CARTER BRYANT, an individual;  )    NM (RNBx)

11    and DOES 1 through 10,         ) VOLUME III

12    Inclusive,                     )

13         Defendants.               )

14    ----------------------------  )

15    (COMPLETE CAPTION ON NEXT PAGE.)

16

17          CONFIDENTIAL - ATTORNEYS' EYES ONLY

18

19    Continued Videotaped 30(b)(6) Deposition

20    of JULIA MARINE, taken at 400 South Hope

21    Street, Los Angeles, California, commencing

22    at 10:05 A.M., Tuesday, June 26, 2007,

23    before Wendy S. Schreiber, CSR No. 3558,

24    RPR, CLR.

25

26    PAGES 151 - 259

Marine, Julia (Vol. 03)  [CONFIDENTIAL] 6/26/2007 12:00:00 AM

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3          EASTERN DIVISION

4

5     ------------------------

6     MATTEL, INC., a Delaware        )

7     Corporation,              )

8          Plaintiff,        )

9          vs.          ) No. CV 04-9059

10    CARTER BRYANT, an individual;  )    NM (RNBx)

11    and DOES 1 through 10,         )

12    Inclusive,            )

13         Defendants.       )

14    -------------------------- )

15    CARTER BRYANT, on behalf of   )

16    himself, all present and      )

17    former employees of Mattel,   )

18    Inc., and the general public,  )

19         Counter-Claimants, )

20         vs.          )

21    MATTEL, INC., a Delaware       )

22    Corporation,             )

23         Counter-Defendant. )

24    --------------------------

25

27

Marine, Julia (Vol. 03)  [CONFIDENTIAL]  6/26/2007  12:00:00 AM

1    APPEARANCES OF COUNSEL:

2

3    FOR THE PLAINTIFF:

4

5    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

6    BY:  JON COREY, ESQ.

7    865 South Figueroa Street, Tenth Floor

8    Los Angeles, California 90017

9    (213) 443-3000

10   jcorey@quinnemanuel.com

11

12              -AND-

13

14   MATTEL, INC.

15   BY:  MICHAEL MOORE, ESQ.

16   333 Continental Boulevard

17   El Segundo, California 90245-5012

18   (310) 252-2000

19   michael.moore@mattel.com

20

21

22

23

24

25

1   APPEARANCES OF COUNSEL (CONTINUED):

2

3        FOR THE DEFENDANT AND COUNTERCLAIMANT

4        CARTER BRYANT:

5

6             KEKER & VAN NEST LLP

7             710 Sansome Street

8             San Francisco, California 94111-1704

9             (415) 391-5400

10            (NOT PRESENT)

11

12       FOR DEFENDANT MGA ENTERTAINMENT, INC.:

13

14            O'MELVENY & MYERS LLP

15            BY:  JAMES PAUL JENAL, ESQ.

16            400 South Hope Street

17            Los Angeles, California 90071-2899

18            (213) 430-6000

19            jjenal@omm.com

20

21       ALSO PRESENT:

22

23            WEN BU

24            RYAN GULINO, VIDEO OPERATOR

25

1    not to answer you are obligated to provide your best

2    and most complete testimony.  Do you understand

3    that?

4        A.  Yes.

5        Q.  And this is not a marathon, although I

6    anticipate this will be a relatively short

7    deposition here today, but should you desire to take

8    a break, just let me know and we'll do that.  My

9    only request is if there's a question pending that

10   you answer the question before taking the break.  Do

11   you understand that?

12       A.  Yes.

13       Q.  Is there anything that would interfere with

14   your ability today to give your best possible

15   testimony?

16       A.  No.

17       Q.  What did you do to prepare for your

18   deposition today?

19       A.  I talked with in-house counsel and Jon

20   Corey.

21       Q.  You said you talked with in-house counsel

22   and Jon Corey.

23       A.  Yes.

24       Q.  Who is the in-house counsel?

25       A.  Michael Moore.

1      Q.   Mr. Moore who is sitting here today?

2      A.   Yes.

3      Q.   Apart from speaking with counsel, whether

4   Mr. Corey or Mr. Moore, what else did you do to

5   prepare for your deposition?

6      A.   That's all.

7      Q.   Did you review your transcript from your

8   prior deposition?

9      A.   I did do that.

10      Q.   Did you do that recently or when did you do

11   that?

12      A.   That was last week.

13      Q.   Did you do that to refresh your recollection

14   as to what was said and asked of you during your

15   prior deposition?

16      A.   Yes.

17      Q.   In the course of reviewing that transcript

18   did you become aware of any things that you would

19   care to correct for the record?

20      A.   No.

21      Q.   So your understanding is that what you said

22   in your prior testimony that all of that is accurate

23   to the best of your ability?

24      A.   Yes.

25      Q.   How often -- excuse me, how long did you

Marine, Julia (Vol. 03)  [CONFIDENTIAL]  6/26/2007  12:00:00 AM

1    testified before.

2         MR. JENAL:  Yes, that's understood.

3         Q.   I was, in fact, not referring to preparation

4    you may have made prior to your previous appearance

5    for deposition but efforts that you made in

6    preparation for this session today.

7         A.   Just -- just meeting -- when I met with the

8    lawyers here.

9         Q.   Okay.  And reviewing your prior transcript?

10        A.   Right.

11        Q.   And you understand that you're here today to

12   testify about the Zeus data system for lack of a

13   better way of phrasing it as it was used in the

14   Design Center and elsewhere at Mattel from basically

15   1998 through the present; is that correct?

16        MR. COREY:  Actually, the topic on which

17   she's been designated is narrower than that.  It's

18   the document management system used by designers at

19   the Design Center.

20        MR. JENAL:  I guess we'll explore what the

21   difference is between those two understandings.

22        Q.   But is it your understanding that that's

23   your designation as recited by counsel?

24        A.   Yes.

25        Q.   What document management system do you

1    understand to have been used by designers at Mattel?

2        A.  As far as I know, there isn't one.

3        Q.  So in terms of a document management system,

4    is there -- there is a system where designers at

5    Mattel were encouraged to keep documents, correct?

6        A.  A file server, yes.

7        Q.  And that's a file server that we talked

8    about before that's known as Zeus, correct?

9        A.  Correct.

10       Q.  And do you have an understanding as to

11   practices associated with the retention of

12   information on the file server known as Zeus from

13   1998 to the present?

14       A.  I'm not aware of any retention policy.  Is

15   that what --

16       Q.  Backup systems?

17       A.  Backup, certainly.

18       Q.  So let's see if we can kind of recap some of

19   the things I think you told me just so that we have

20   those fresh before us.

21           I think you told us that the Zeus system,

22   the file server that you named Zeus -- correct?

23       A.  Uh-huh, correct.

24       Q.  For the god Zeus; is that right?

25       A.  Yes.

1    BY MR. JENAL:

2        Q.   Do you know of anything that you did --

3    well, let me ask this.  Strike that.  I'll ask a

4    different question.

5            Do you know whether Mattel has preserved

6    backup tapes from the Zeus server for the period of

7    1998?

8            MR. COREY:  Objection:  scope.

9            THE WITNESS:  I'm not aware of that.

10   BY MR. JENAL:

11       Q.   Do you know whether Mattel has preserved

12   backup tapes for the Zeus file server from 1999?

13           MR. COREY:  Objection:  scope.

14           THE WITNESS:  I'm not aware of backups that

15   old.

16   BY MR. JENAL:

17       Q.   Are you aware of whether Mattel has

18   preserved backup tapes from the Zeus server from the

19   year 2000?

20           MR. COREY:  Objection:  scope.

21           THE WITNESS:  I don't think we have anything

22   going back so far.

23   BY MR. JENAL:

24       Q.   Do you know whether Mattel has preserved

25   backup tapes from the Zeus file server for the year

1    2001?

2        MR. COREY:  Objection:  scope.

3        THE WITNESS:  I'm sorry, I don't know of old

4    backups like this.

5    BY MR. JENAL:

6    Q.   And we've talked about —

7        MR. COREY:  You don't need to apologize.

8    You can just answer the question.

9    BY MR. JENAL:

10   Q.   We've talked about a backup from 2002 so

11   we'll set that aside for the moment.  Are you aware

12   of whether Mattel has preserved backup tapes of the

13   Zeus file server from 2003?

14       MR. COREY:  Objection:  scope and asked and

15   answered.

16       THE WITNESS:  I know that we are preserving

17   some of the tapes that are coming off — in from off

18   site that we're not reusing them but I don't know

19   the dates on those.

20   BY MR. JENAL:

21   Q.   Is Mattel — let me ask this differently.

22       You don't know the dates that those tapes

23   cover that are being preserved as they come back

24   from off site?  Is that what you're telling me?

25       MR. COREY:  Objection:  scope.

1    STATE OF CALIFORNIA    ) ss:

2    COUNTY OF LOS ANGELES )

3

4        I, WENDY S. SCHREIBER, CSR No. 3558, do

5    hereby certify:

6

7        That the foregoing deposition of JULIA

8    MARINE was taken before me at the time and place

9    therein set forth, at which time the witness was

10   placed under oath and was sworn by me to tell the

11   truth, the whole truth, and nothing but the truth;

12       That the testimony of the witness and all

13   objections made by counsel at the time of the

14   examination were recorded stenographically by me,

15   and were thereafter transcribed under my direction

16   and supervision, and that the foregoing pages

17   contain a full, true and accurate record of all

18   proceedings and testimony to the best of my skill

19   and ability.

20       I further certify that I am neither

21   counsel for any party in said action, nor am I

22   related to any party to said action, nor am I in any

23   way interested in the outcome thereof.

24

25

1          IN WITNESS WHEREOF, I have subscribed my

2     name this 9th day of July, 2007.

3

4

5

6     _____

7          WENDY S. SCHREIBER, CSR No. 3558, RPR

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*37*

**Exhibit 4**

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     (johnquinn@quinnemanuel.com)
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Duane R. Lyons (Bar No. 125091)
5     (duanelyons@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
7   Facsimile:  (213) 443-3100

8   Attorneys for Plaintiff and Counter-
    Defendant Mattel, Inc.

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                    EASTERN DIVISION

13  CARTER BRYANT, an individual,      CASE NO. CV 04-9049 SGL (RNBx)

14                Plaintiff,           Consolidated With Case No. 04-9059 and
                                       Case No. 05-2727
15        vs.
                                       Hon. Stephen G. Larson
16  MATTEL, INC., a Delaware corporation,
                                       DECLARATION OF MICHAEL T.
17                Defendant.           ZELLER IN SUPPORT OF MATTEL,
                                       INC.'S REPLY TO OPPOSITIONS TO
18  AND CONSOLIDATED ACTIONS.          MOTION FOR LEAVE TO FILE
                                       AMENDED COMPLAINT
19
                                       Hearing Date:  January 8, 2007
20                                     Time:  10:00 a.m.
                                       Place:  Courtroom 1
21
                                       Discovery Cut-off:  None Set
22                                     Pre-trial Conference:  None Set
                                       Trial Date:  None Set
23

24

25                    **CONFIDENTIAL**

26      **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

27

28

9/2024753.2

38

                                DECLARATION OF MICHAEL T. ZELLER ISO REPLIES

1    DECLARATION OF MICHAEL T. ZELLER

2          I, Michael T. Zeller, declare as follows:

3          1.     I am a member of the bar of the States of California, New York
4    and Illinois and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP,
5    attorneys for plaintiff and counter-defendant, Mattel, Inc. ("Mattel"). I make this
6    declaration of personal, firsthand knowledge, and if called and sworn as a witness, I
7    could and would testify competently thereto.

8          2.     Attached as Exhibit 1 is a true and correct copy of excerpts from
9    Carter Bryant's Notice of Removal, dated November 2, 2004.

10         3.     Attached as Exhibit 2 is a true and correct copy of excerpts of the
11   Opposition of Carter Bryant and MGA Entertainment, Inc. to Mattel, Inc.'s Petition
12   for Permission to Appeal Under 28 U.S.C. § 1292(b), dated March 28, 2005.

13         4.     Attached as Exhibit 3 is a true and correct copy of excerpts from
14   Defendants' Supplemental Brief In Opposition to Plaintiff Mattel's Motion to
15   Remand, dated January 14, 2005.

16         5.     Attached as Exhibit 4 is a true and correct copy of Defendant and
17   Cross-Claimant Carter Bryant's Brief In Support of Consolidation, dated June 5,
18   2006.

19         6.     Attached as Exhibit 5 is a true and correct copy of excerpts from
20   the transcript of oral argument on Mattel's Motion to Dismiss Bryant's Action for
21   Declaratory Relief and Counterclaims, held on June 26, 2006.

22         7.     Attached as Exhibit 6 is a true and correct copy of Mattel, Inc.'s
23   Report of Meeting of Counsel Regarding Mattel's Motion to Dismiss Bryant's
24   Declaratory Relief Claim, dated July 5, 2006.

25         8.     Attached as Exhibit 7 are true and correct excerpts from the
26   transcript of the deposition of Carter Bryant.

27

28

1/2024753.2

-1-

39

1      9.    Attached as Exhibit 8 are true and correct excerpts from the

2  transcript of the deposition of Steven Linker, which took place on September 13,

3  2006.

4      10.   Attached as Exhibit 9 is a true and correct copy of an email dated

5  October 10, 2000, produced by MGA and bearing production number MGA004717.

6      11.   Attached as Exhibits 10 and 11 are invoices submitted by

7  Veronica Marlow to MGA for 169 hours of time performing "Bratz" dolls research,

8  development and support services, produced by MGA and bearing production

9  numbers MGA0008739 and MGA0008742.  These invoices reflect that this work

10  was performed on Bratz during September 2000 and up through October 20, 2000,

11  all of which were during times that Mr. Bryant was employed by Mattel.

12      12.   There has been no trial date set in this matter.  No discovery

13  cutoff has been set.  No Rule 16 scheduling Order has been entered.  The parties are

14  just now scheduled to exchange, on January 4, 2007, initial disclosures in MGA's

15  case against Mattel.  Mattel has not previously amended its Complaint in this matter.

16      13.   Attached as Exhibit 12 is a true and correct copy of MGA

17  Entertainment, Inc.'s Answer in Intervention to Plaintiff's Unverified Complaint,

18  dated December 7, 2004.

19      14.   Attached as Exhibit 13 are true and correct excerpts from the

20  transcript of the deposition of Julia Marine.  Mattel has preserved backup tapes from

21  Mattel's file server known as Zeus that were created in 1998, 1999, 2000 and 2001

22  and at various other times.  Mattel's counsel informed defendants' counsel of this

23  months ago and offered to make Zeus backup tapes (and other electronic data)

24  available to them, if they wished, on mutually satisfactory terms.  As just one

25  example, during a meet and confer between the parties on March 15, 2005, in the

26  context of discussing the backup tapes for Zeus and for other Mattel systems in the

27  possession of Mattel or its counsel, I confirmed that Mattel had "offered to provide

28  anything in electronic form, if you would like, that we have."  Attached as Exhibit

2024753.2

-2-
DECLARATION OF MICHAEL T. ZELLER ISO REPLIES

40

1  14 are true and correct excerpts of the transcript reflecting this. Neither counsel for

2  MGA nor Bryant have accepted Mattel's offers or otherwise requested inspection of

3  the Zeus tapes. Contrary to MGA's claim that the hardware or data for reading the

4  tapes no longer exist, vendors retained by Mattel's counsel, as well as other

5  electronic discovery vendors I am familiar with, have the hardware and other data

6  needed to read the Zeus backup tapes and in fact can read them. As Mattel's

7  30(b)(6) designee Julia Marine also confirmed, one simply needs to buy the tape

8  drives to read these tapes (see Marine Deposition at 118:13-20, Zeller Dec., Exh.

9  13), which Mattel's vendors have done.

10          15.    David Kayano was Mattel's designee on certain email subjects

11 pursuant to Carter Bryant's Rule 30(b)(6) notice of Mattel. Mattel recently acquired

12 another company called Radica, and Mr. Kayano's deposition was rescheduled

13 because Mr. Kayano is a key member of a small team of Mattel IT professionals

14 responsible for the integration of Radica's computer systems into Mattel's systems.

15 The deadline for that integration was accelerated, making Mr. Kayano unavailable

16 until the completion of that integration, which will occur on January 15, 2006.

17 Attached as Exhibit 15 is a true and correct copy of a December 1, 2006 letter from

18 my partner, Jon Corey, to Jim Jenal, which has attached to it Mattel's Notice of

19 Deposition of MGA Entertainment, Inc. Pursuant to Federal Rule of Civil Procedure

20 30(b)(6). Mattel also has in the past produced witnesses in response to Bryant's

21 Rule 30(b)(6) notice. In contrast, MGA has not produced any Rule 30(b)(6)

22 witnesses in response to Mattel's Notice of Deposition of MGA that was served on

23 February 16, 2005 or even provided proposed dates for any of them. This is despite

24 Mattel's requests that MGA produce such witnesses (see, e.g., Exhibit 15 and

25 attachment thereto) and despite previously promising Judge Infante that they would

26 provide proposed dates for them during a teleconference earlier this month.

27          16.    Attached as Exhibit 16 are true and correct excerpts from the

28 transcript of the deposition of Liliana Martinez.

2024753.2

-3-

_41_

17.   The proposed Amended Complaint alleges that Bryant concealed certain facts from Mattel, including that (1) he developed Bratz while working for Mattel, using Mattel resources; (2) he was working for MGA on Bratz while still employed by Mattel; and (3) he was leaving Mattel for a competitor to develop a competing doll line.  See Amended Complaint ¶¶ 26-28.   Examples of documentary evidence supporting these allegations include a fax from Carter Bryant to David Rosenbaum, dated September 14, 2000, produced by MGA and bearing production numbers MGA001356-MGA001359, a true and correct copy of which is attached as Exhibit 17.  In that document, which was written while Mr. Bryant was a Mattel employee, Mr. Bryant states to Mr. Rosenbaum, an MGA attorney, in connection with Mr. Bryant's efforts to provide MGA information about his Mattel employment:  "I am unable to look into this too much further with our Human Resources director without risking suspicion".  As further examples of such evidence, MGA and Isaac Larian made conflicting claims regarding the origins and creation of Bratz, claiming at points that Larian himself created Bratz, that MGA created Bratz or that Larian chose Bratz during a "competition" hosted by MGA. Attached as Exhibit 18 are true and correct copies of examples of newspaper articles containing such claims by MGA and Larian regarding the creation of Bratz.

18.   Attached as Exhibit 19 is a true and correct copy of excerpts from Mattel's Reply in Support of Motion for Remand, dated July 12, 2004.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 28, 2006, at Los Angeles, California.

_Michael T. Zeller_
Michael T. Zeller

DECLARATION OF MICHAEL T. ZELLER ISO REPLIES

2024753.2

<u>CONFIDENTIAL</u> 1

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA


MATTEL, INC., a Delaware corporation, )   CASE NO.
)   CV 04-9059 DDP (AJWx)
        Plaintiff,              )
)
    vs.                      )
)
CARTER BRYANT, an individual, and )
DOES 1 through 10, inclusive, )
)
        Defendants.       )
_____)
CARTER BRYANT, on behalf of himself, )
all present and former employees of )
Mattel, Inc., and the general public, )
)
        Cross-Complainant,  )
)
    vs.                      )
)
MATTEL, INC., a Delaware corporation, )
)
        Cross-Defendant.   )


VOLUME I
THE VIDEOTAPED DEPOSITION OF CARTER BRYANT,
produced, sworn, and examined on Thursday, November 4, 2004,
at 9:10 a.m. of that day, pursuant to Notice to Take
Deposition at the University Plaza, Executive Boardroom,
333 South John Q. Hammons Parkway, in the City of Springfield,
County of Greene, State of Missouri, before Sherrie L. Hunt,
Certified Court Reporter, and Notary Public, in a certain
cause now pending in the United States District Court for the
Central District of California, wherein the parties are as
above set forth; taken on behalf of the Plaintiff and
Cross-Defendant.


COURT REPORTERS OF THE MIDWEST, INC.
P.O. Box 4282
Springfield, MO 65808  (417) 889-2079

EXHIBIT 7 PAGE 35

43

CONFIDENTIAL                                                           2

                          A P P E A R A N C E S

For Plaintiff and                    MR. JOHN B. QUINN
Cross-Defendant:                     MR. MICHAEL T. ZELLER
                                     MS. TANIA KREBS
                                     Quinn, Emanuel, Urquhart,
                                       Oliver & Hedges
                                     865 South Figueroa Street
                                     10th Floor
                                     Los Angeles, California 90017

For Defendants and                   MR. DOUGLAS A. WICKHAM
Cross-Complainant:                   Littler Mendelson
                                     2049 Century Park East
                                     5th Floor
                                     Los Angeles, California 90067

Also Present:                        Ms. Dale M. Cendali
                                     Mr. Michael Moore

Videotaped by:                       Mr. Donald Gifford
                                     Mr. Donald Gifford, II
                                     1528 East Glenwood
                                     Springfield, Missouri 65804


                             I N D E X

WITNESS:  CARTER BRYANT
Direct Examination by Mr. Quinn ...................    Page
                                                          4
Notarial Certificate and Costs ...................     262

                              * * *


                          E X H I B I T S

DEPOSITION EXHIBIT          DESCRIPTION              IDENTIFIED

                             (NONE)


Phonetic spelling:  (Ph.)
Exactly as stated:  (Sic)

                                          EXHIBIT   PAGE 26

                            44

CONFIDENTIAL                                    236

```
 1       calls for speculation.                              04:24
 2   A   I don't remember.
 3   Q   (By Mr. Quinn)  I'm just trying to find out whether your
 4       decision to have her start working on the sculpt was
 5       driven by some particular goal in terms of when the Bratz   04:24
 6       project would be ready.
 7                 MS. CENDALI:  Objection, mischaracterizes --
 8                 MR. WICKHAM:  That completely --
 9                 MS. CENDALI:  -- his testimony as to whether
10       he had any decision.                                  04:25
11                 MR. WICKHAM:  And Mr. Bryant didn't have Ms.
12       Leahy start on working anything and he's made that clear
13       throughout the day.
14                 MR. QUINN:  That's a nice piece of
15       testimony, Counsel.                                   04:25
16   Q   (By Mr. Quinn)  You can answer the question.
17   A   I don't recall.  I don't recall why I had -- why I had her
18       start when she did.
19   Q   All right.
20   A   Or if it was even -- I don't even remember if it was my   04:25
21       direction for her to start.
22   Q   You know, if -- was there some time pressure if the Bratz
23       doll was going to be ready in time for the Hong Kong and
24       New York toy fairs?
25                 MR. WICKHAM:  Objection, lacks foundation.   04:25
```

45

EXHIBIT 7 PAGE 37

<u>CONFIDENTIAL</u>                                              237

1    A   At the time, no, not to my knowledge.                      04:25

2    Q   (By Mr. Quinn)  Well, was that -- in your own view was

3        that a -- I mean, I think you said the New York time --

4        Toy Fair is in February.

5    A   Right.                                                     04:26

6    Q   And this doll, you know, as of the time you left Mattel,

7        it didn't yet exist; is that true?

8    A   That's right.

9    Q   So was there a lot to be done if this was going to be

10       ready in time for the Toy Fair?                            04:26

11   A   After I left on the 20th there was a lot to be done for it

12       to get ready for a Toy Fair.

13   Q   Was there something at -- was there a computer system at

14       Mattel called the Zeus system?  Are you familiar with

15       that?                                                      04:27

16   A   No, I'm not.

17   Q   Did you ever use any computers at Mattel?

18   A   I used a PC and I used a system that was called P2.

19   Q   What is P2?

20   A   P2 was basically just a computer that we would enter our   04:27

21       hours, log our hours against a particular project on.

22   Q   And the PC, was it -- was there some Mattel data system

23       that you could access from this PC?

24   A   I'm not sure I understand what you mean.

25   Q   Was there particular Mattel databases or information       04:27

EXHIBIT____PAGE 38

46

CONFIDENTIAL                                                                    238

```
 1        systems that you could access from this PC?               04:27

 2                   MS. CENDALI:  Objection to form, vague.

 3                   MR. QUINN:  That's another MGA trade secret,

 4        Counsel?

 5                   MS. CENDALI:  It's a vague question,           04:27

 6        Counsel, and you know it.

 7    A   Not to my knowledge.

 8    Q   (By Mr. Quinn)  Did -- what -- what did you use the PC

 9        for?

10    A   Basically we just used it for interoffice E-mail.        04:28

11    Q   You didn't -- you yourself didn't use it for anything

12        else?

13    A   We had Internet capability, but that's all I remember

14        using it for.  I was pretty computer illiterate.

15    Q   Did you ever create any files relating to any of the    04:28

16        projects you were working on?

17                   MR. WICKHAM:  Objection, ambiguous, vague as

18        to time.

19    A   Are you talking about on the computer?

20    Q   (By Mr. Quinn)  Yeah, electronic files.                  04:28

21    A   No, not that I remember.

22    Q   Did you ever create any password-protected files on the

23        computer system at Mattel?

24    A   I don't remember.

25    Q   You might have done that, you might not have done that,  04:28
```

EXHIBIT 7 PAGE 39

41

CONFIDENTIAL

239

1    you just don't remember one way or the other?                04:28

2  A   I don't remember at all.

3  Q   One way or the other?

4  A   I don't remember at all.

5  Q   Again, you don't remember if you did, you don't remember   04:29

6    if you didn't?

7  A   I don't remember.

8  Q   Either way?

9  A   Either way.

10 Q   Did you ever use computers in connection with any of your  04:29

11   design work?

12             MR. WICKHAM:  Objection, vague as to time.

13   Are you talking about at Mattel?

14             MR. QUINN:  Yes, sir.

15 A   I really didn't, no.  Like I said, I was pretty much       04:29

16   computer illiterate.

17 Q   (By Mr. Quinn)  During the time that you were employed --

18   excuse me.  Did you ever ask anyone to create a

19   password-protected file at Mattel?

20 A   I don't remember.                                          04:29

21 Q   One way or the other?

22 A   No.

23 Q   My statement's correct?  You don't remember one way or the

24   other?

25 A   I don't remember one way or the other.                     04:29

48

EXHIBIT 1 PAGE 40

CONFIDENTIAL                                                      240

```
 1    Q   Did you ever -- while you were at Mattel did you ever come    04:30
 2        up with any ideas for products or designs that you
 3        presented to anybody at Mattel?
 4                MS. CENDALI:  Objection.
 5    A   What do you mean specifically?                                04:30
 6    Q   (By Mr. Quinn)  Just any at all, any designs or concepts
 7        or any ideas that you presented to anybody at Mattel.  Did
 8        you ever do that?
 9                MR. WICKHAM:  At any point in time?
10                MR. QUINN:  During his Mattel employment.            04:30
11        Exactly.
12                MR. WICKHAM:  Objection, overbroad,
13        ambiguous, compound.  If you know what he's talking about.
14    A   I don't know.  I would have to ask you to be more
15        specific.                                                     04:30
16    Q   (By Mr. Quinn)  Well, do you -- do you recall ever coming
17        up with any ideas or concepts or designs that you
18        presented to people at Mattel?
19                MS. CENDALI:  Objection.
20                MR. WICKHAM:  Objection, overbroad,                  04:30
21        ambiguous.
22    A   If you're talking about products -- or if you're talking
23        about products that I came up with that were the result of
24        the assignments that were given to me, yes.
25    Q   (By Mr. Quinn)  I mean, did you -- did they ever have,       04:31
```

EXHIBIT 11 PAGE 4

49

CONFIDENTIAL                                      253

1   A   I wouldn't -- no.  I would say it's not.                    04:48

2   Q   Isn't it true that you were working with MGA during the

3       time that you were employed by Mattel?

4                   MR. WICKHAM:  Objection, ambiguous,

5       mischaracterizes the witness's testimony.                  04:48

6   A   The only things that I was doing for MGA was putting some

7       people in touch with one another, getting some vendors

8       lined up to work with MGA.

9   Q   (By Mr. Quinn)  So isn't it true that while you were

10      employed by Mattel you were working with MGA?              04:48

11                  MR. WICKHAM:  Objection, asked and answered,

12      harassing, instruct the witness not to respond.

13                  MR. QUINN:  I don't think he answered my

14      question, so I would like an answer to my question.

15                  MR. WICKHAM:  I heard the question two or       04:48

16      three times.  I've heard at least two responses and I've

17      instructed.  I'd request that you please move on.

18  Q   (By Mr. Quinn)  Did you ever tell anyone that you were

19      working with MGA as of September 18th, 2000?

20  A   I don't remember that, no.                                 04:49

21  Q   Can you rule it out?  Can you tell us that never happened?

22  A   That -- as far as I can remember that never happened.

23  Q   Did you ever tell anyone that you were working with MGA

24      during the time you were employed by Mattel?

25  A   No.                                                        04:49

50

EXHIBIT 11 PAGE 42

CONFIDENTIAL                                                      254

1          MR. WICKHAM:  Can we go off the record for a                     04:50

2     second?

3          MR. QUINN:  Certainly.

4          VIDEOGRAPHER:  We're off the record.  Time's

5     4:50.                                                                 04:50

6          (Break in proceedings.)

7          VIDEOGRAPHER:  Back on the record.  The

8     time's 4:52.

9          MR. WICKHAM:  Mr. Bryant's getting fatigued,

10    you know, given the lateness of the hour, and so we ask             04:52

11    that if you could wrap up, you know, pretty soon, that

12    would be terrific.

13  Q  (By Mr. Quinn)  So we call it a day for today and --

14    shortly and reconvene tomorrow morning same time, same

15    place?                                                               04:52

16  A  Uh-huh.

17  Q  Okay.  Let me just try to cover a couple of things.  I

18    won't prolong this.  Did you see Lily Martinez' Toon Teens

19    drawings at Mattel?

20         MR. WICKHAM:  Objection, lacks foundation,                      04:53

21    vague as to time.  Are you asking when he was employed at

22    Mattel did he see anything that Ms. Martinez worked on or

23    are you asking if this is something that he's recently

24    seen in connection with litigation?

25         MR. QUINN:  I'm asking my question.  While                      04:53

EXHIBIT 7  PAGE 47

51

CONFIDENTIAL                                                          255

1    he was at Mattel did he see Lily Martinez's Toon Teens        04:53

2    drawings.

3              MS. CENDALI:  Objection.

4              MR. WICKHAM:  I'll object on the -- it lacks

5    foundation as to the naming of any of Ms. Martinez's          04:53

6    projects, Toon Teens or, you know, any other name, during

7    the time that Mr. Bryant was employed there, but setting

8    aside that, if you understand the question, you can

9    answer.

10   A   I saw some project that Lily Martinez was working on.     04:53

11   Q   (By Mr. Quinn)  And when was that?

12   A   I think that was in the spring of 1999.

13   Q   And how did you come to see that?

14   A   I was over in the main line Barbie area.  I think I was

15       over there to talk to Elise and just happened to see --   04:54

16       she was setting it up on the table for some reason or

17       another.

18   Q   The "she" being?

19   A   Lily Martinez.

20   Q   All right.  And can you describe these drawings?          04:54

21              MS. CENDALI:  Objection.

22              MR. WICKHAM:  Objection, foundation,

23       mischaracterizes the witness's testimony.

24   A   I didn't see any drawings.

25   Q   (By Mr. Quinn)  What was it that you saw?                 04:54

52                              EXHIBIT ____ PAGE ____

CONFIDENTIAL                                                    256

```
 1   A   I saw some dolls and a playset that she was setting up.        04:54
 2   Q   Okay.  Can you describe them?
 3   A   Yes.  The dolls were very sort of baby-like.  They had
 4       sort of baby faces and fancy-colored hair and they had
 5       stuffed bodies.  They had big, swollen wrists and ankles.      04:55
 6       They were cartoonish, very brightly colored.  I think it
 7       had a car, like a -- sort of a Pee Wee's Playhouse type
 8       car.
 9   Q   Large eyes?
10            MR. WICKHAM:  Objection, foundation.                      04:55
11   A   I don't remember them exactly, but I think they had large
12       eyes.
13   Q   (By Mr. Quinn)  Large lips?
14            MR. WICKHAM:  Objection, foundation.
15   A   I believe -- I believe they had fairly large lips.            04:55
16   Q   (By Mr. Quinn)  Nose feature not defined?
17            MR. WICKHAM:  Objection, lacks foundation.
18   A   I don't remember.  I only saw it briefly in passing.
19   Q   (By Mr. Quinn)  Oversize head?
20   A   No.  The dolls were large.                                    04:56
21   Q   Did you have any reaction to these figures when you saw
22       them?
23   A   I told Lily I thought they were cute.  I didn't really
24       think much about it.  I told her I thought they were cute.
25   Q   Did they have oversized feet?                                 04:56
```

53                                    EXHIBIT 7  PAGE 45

CONFIDENTIAL

DEPONENT'S SIGNATURE PAGE

RE:   Mattel, Inc., vs. Carter Bryant, et al.
      Carter Bryant vs. Mattel, Inc.
      Case No. CV 04-9059 DDP (AJWx)
      Deposition taken on November 4, 2004

     I do hereby certify that the foregoing is a true and

correct transcript of the deposition in the foregoing-styled

and numbered cause, and I now sign the same as true and

correct, with the exception of the corrections which I have

noted on the correction sheet provided.

_____
            CARTER BRYANT

     Subscribed and sworn to before me this _2nd_ day of

_____ March _____, 20 05 :

_____
            Notary Public

My Commission Expires:

Dec. 31, 2008



CECILY THOMAS-MCKOY
Commission # 1539977
Notary Public · California
Los Angeles County
My Comm. Expires Dec 31, 2008

54                    EXHIBIT ___7___ PAGE __46__

CONFIDENTIAL                                262

## NOTARIAL CERTIFICATE

STATE OF MISSOURI        )
                         )  ss.
COUNTY OF GREENE         )


    I, Sherrie L. Hunt, Certified Court Reporter, and Notary Public within and for the State of Missouri, do hereby certify that on November 4, 2004, pursuant to Notice, the above witness, CARTER BRYANT, was by me first duly sworn to testify the truth, the whole truth, and nothing but the truth in the case aforesaid; and that the deposition by him was reduced to writing by me in stenotype, and thereafter transcribed by me, and is fully and accurately set forth in the preceding pages; that presentment by me to the witness for signature was waived; and that the deposition will be thereafter by the witness read, signed, and sworn to on or before the date of trial.

    I do further certify that I am not related to, nor attorney for, nor employed by any of the said parties, nor otherwise interested in the event of said action.


```
Sherrie L Hunt
Notary Public
Greene County
State of Missouri
My Commission Expires May 17, 2005
```

_____
Sherrie L. Hunt
Certified Court Reporter
C.C.R. Number 1027
Notary Public

My commission expires:  May 17, 2005


Costs:  To Plaintiff and Cross-Defendant $1,399.25
       To Defendants and Cross-Complainant $422.65


COURT REPORTERS OF THE MIDWEST, INC.
P.O. Box 4282
Springfield, MO 65808 (417) 889-2079

55                    EXHIBIT 7 PAGE 47

<u>Confidential; Subject to Protective Order</u>

CORRECTIONS TO THE DEPOSITION OF

CARTER BRYANT

VOLUME I

---

RE:   Mattel, Inc., vs. Carter Bryant, et al.
      Carter Bryant vs. Mattel, Inc.
      Case No. CV 04-9059 NM (RNBx)
      Deposition taken on November 4, 2004

| <u>Page/Line</u> | <u>Change Requested</u> |
|---|---|
| 86:5 | Delete: "I may have." Insert: "I don't recall." |
| 124:1 and 3 | Delete: "No." Insert: "Other than my communications with Universal, I don't recall that I did." |
| 131:19 | Delete: "No, I did not." Insert: "Other than my communications with Universal, I don't recall that I did." |
| 132:3 | Delete: "I don't remember telling anybody that, no." Insert: "Other than my communications with Universal, I don't recall telling anybody that." |
| 132:18 | Delete: "To the best of my recollection that's true." Insert: "To the best of my recollection, other than my communications with Universal, that's true." |
| 195:24 | Insert: "I also received expense reimbursements from MGA and an advance against royalties." |
| 252:24 | Delete: "No." Insert: "No. I interpreted your question as asking whether I was employed by MGA at that time and the answer is no." |
| 253:20 | Delete: "I don't remember that, no." Insert: "Other than my communications with Universal, I don't remember that." |
| 253:22 | Delete: "That — as far as I can remember that never happened." Insert: "Other than my communications with Universal, as far as I can remember, that never happened." |

EXHIBIT __7__ PAGE __48__

56

253:25                          Delete:   "No."   Insert:   "Other than my communications with
                                Universal, no that I remember."

EXHIBIT____7____PAGE____49____

1

```
  1              IN THE UNITED STATES DISTRICT COURT

  2               CENTRAL DISTRICT OF CALIFORNIA

  3                      EASTERN DIVISION

  4    CARTER BRYANT, an individual, )

  5                  Plaintiff, )

  6           vs.                   )        Case No.

  7    MATTEL, INC., a Delaware     )   CV 04-09049 SGL

  8    corporation,                 )        (RNBx)

  9                  Defendant. )

 10

 11         CONFIDENTIAL - ATTORNEYS' EYES ONLY

 12

 13              The videotaped deposition of

 14    STEVEN LINKER, called as a witness for examination,

 15    taken pursuant to the Federal Rules of Civil

 16    Procedure of the United States District Courts

 17    pertaining to the taking of depositions, taken

 18    before PAULINE M. VARGO, a Notary Public within and

 19    for the County of DuPage, State of Illinois, and a

 20    Certified Shorthand Reporter of said state, C.S.R.

 21    No. 84-1573, at Suite 4000, One IBM Plaza, Chicago,

 22    Illinois, on the 13th day of September, A.D. 2006,

 23    at 9:50 a.m.
```

COPY

EXHIBIT 8 PAGE 50

2

PRESENT:

LITTLER MENDELSON,

(2049 Century Park East, 5th Floor,

Los Angeles, California  90067.3107,

310.712.7314), by:

MR. DOUGLAS A. WICKHAM,

    appeared on behalf of the Plaintiff

    Carter Bryant;


MATTEL, INC.,

(333 Continental Boulevard,

El Segundo, California  90245.5012,

310.252.6733), by:

MR. MICHAEL MOORE,

Senior Counsel,

    -and-

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP,

(865 South Figueroa Street, 10th Floor,

Los Angeles, California  90017.2543,

213.443.3000), by:

MR. MICHAEL T. ZELLER,

MS. TANIA KREBS,

    appeared on behalf of Defendant

    Mattel, Inc.;

EXHIBIT _____ PAGE _____

59

3

```
 1     PRESENT (Continued):
 2          O'MELVENY & MYERS, LLP,
 3          (Times Square Tower,
 4          7 Times Square,
 5          New York, New York  10036,
 6          212.326.2000), by:
 7          MS. DALE M. CENDALI,
 8               appeared on behalf of Intervenor
 9               MGA Entertainment;
10
11          BERMAN, MAUSNER & RESSER,
12          (11601 Wilshire Boulevard, Suite 600,
13          Los Angeles, California  90025,
14          310.473.3333), by:
15          MR. LAURENCE M. BERMAN,
16               appeared on behalf of the Deponent.
17
18
19
20
21
22
23
24
```

EXHIBIT **8** PAGE **51**

60

4

```
 1        ALSO PRESENT:
 2            MR. MICHAEL A. HALL,
 3                Paralegal, Littler Mendelson;
 4            MR. CARTER BRYANT.
 5
 6        VIDEOGRAPHER:
 7            MR. JOSEPH BURKE,
 8            Esquire Deposition Services.
 9
10        REPORTED BY:
11            PAULINE M. VARGO,
12  09:46:12        C.S.R. No. 84-1573.
13
14
15
16
17
18
19
20
21
22
23
24
```

EXHIBIT 7 PAGE 52

61

1            marked Deposition Exhibit No. 317,

2            for identification, as of 9/13/06.)

3    11:00:09  BY MR. ZELLER:

4    11:00:10      Q.    Do you recognize what's depicted here as

5    11:00:12  Exhibit 317?

6    11:00:13      A.    Yes.

7    11:00:14      Q.    What are these?

8    11:00:16      A.    These are logo variations and color

9    11:00:21  variations for Chat Brats, Chat Room for the Diva

10   11:00:28  Starz lines.

11   11:00:29      Q.    Did you create these?

12   11:00:30      A.    I created these.

13   11:00:32      Q.    Did you create them for Mattel?

14   11:00:33      A.    I created them for Mattel, yes.

15   11:00:36      Q.    Approximately what time period did you

16   11:00:38  create these designs that are shown here as part of

17   11:00:41  Exhibit 317?

18   11:00:42      A.    Late 1999.

19   11:00:44      Q.    And did that include the ones that show

20   11:00:48  on the left side and the right side the word

21   11:00:51  "Brats," B-r-a-t-s?

22   11:00:53      A.    Yes.

23   11:00:57      Q.    Now I really am moving on to a new

24   11:01:02  subject.  At some point did you have contact with

EXHIBIT 7 PAGE 53

62

44

```
 1   11:01:08   anyone at MGA?

 2   11:01:12       A.   Yes.

 3   11:01:13       Q.   What was your first contact with anyone

 4   11:01:15   at MGA?

 5   11:01:16       A.   I received a call from Paula

 6   11:01:23   Treantafelles regarding she had called and

 7   11:01:27   introduced herself, and she told me she knew who I

 8   11:01:33   was from work that she has seen that I worked on

 9   11:01:36   the Diva Starz at Mattel and through Maureen

10   11:01:40   Mullen, said she referred me, and she asked me if I

11   11:01:43   was available for freelance work.  She said she was

12   11:01:47   fond of my work and she said "Could you come in to

13   11:01:49   do some packaging, graphics and logo design."

14   11:01:57       Q.   Was this a face-to-face meeting or a

15   11:01:59   phone call?

16   11:02:00       A.   This was a phone call.

17   11:02:03       Q.   And Ms. Treantafelles called you?

18   11:02:07       A.   Yes.

19   11:02:08       Q.   Approximately when was this?

20   11:02:10       A.   Approximately probably the summer of

21   11:02:12   2000, early like before summer, early summer,

22   11:02:17   somewhere in there.

23   11:02:33       MR. ZELLER:  Let's please mark as Exhibit 318

24   11:02:37   a two-page document -- I am sorry.  Actually, just
```

EXHIBIT _8_ PAGE _54_

```
 1   11:02:40  one page.  Strike that.  Let's please mark as

 2   11:02:44  Exhibit 318 a one-page document bearing Bates

 3   11:02:47  number SL 00063.

 4                        (WHEREUPON, a certain document was

 5                        marked Deposition Exhibit No. 318,

 6   11:03:07             for identification, as of 9/13/06.)

 7   11:03:07       MS. CENDALI:  Do we have copies?

 8   11:03:12       MS. KREBS:  Yeah.  That's in the Linker

 9   11:03:13  production that you all have.

10   11:03:14       MR. BERMAN:  I gave you these ones myself.

11                  MS. CENDALI:  Right.  I know that.  I am just

12   11:03:16  trying to figure out what you want.  So we will

13   11:03:17  have to just separately pull them out to make the

14   11:03:21  exhibit.

15   11:03:21       MR. BERMAN:  There is not any separate to do.

16   11:03:23  There is just pieces of paper.  Do you want me to

17   11:03:25  find it for you?

18   11:03:26       MS. CENDALI:  I will be able to find it.

19   11:03:29       MS. KREBS:  It's probably in the bottom there.

20                  MS. CENDALI:  63?

21                  MR. BERMAN:  It should be, yeah.

22   11:03:32       MS. CENDALI:  It's a one-page exhibit?

23   11:03:34       MR. ZELLER:  That's right.  SL 63.

24                  BY MR. ZELLER:
```

EXHIBIT _8_ PAGE _55_

64

```
1    14:07:19        Q.      Directing your attention to the second
2    14:07:22    page of Exhibit 10, which is the one that's M1489?
3    14:07:27        A.      1489?
4    14:07:30        Q.      Right.
5    14:07:30        A.      Yes.
6    14:07:30        Q.      At the bottom it says, "All rights
7    14:07:33    assigned to ABC International Traders," and then it
8    14:07:37    continues on.  It has a signature, a date and then
9    14:07:40    a contract date.  Do you see that material there in
10   14:07:43    the lower right-hand corner?
11   14:07:45        A.      Correct, yes.
12   14:07:46        Q.      Was any of that on the artboards that
13   14:07:49    you saw at the Starbucks meeting in October of
14   14:07:54    2000?
15   14:07:54        A.      No.
16   14:07:56        Q.      Was this information on any of the
17   14:08:01    artboard artwork that you saw, whether it was the
18   14:08:03    original or the copies, back in October of 2000?
19   14:08:06        A.      No, I did not see that stuff on those
20   14:08:08    boards.
21   14:08:09        Q.      Was it on there?
22   14:08:10        A.      It wasn't on there.
23   14:08:14        Q.      Directing your attention to the next
24   14:08:16    page, M1490, you will see that there is a
```

EXHIBIT 8 PAGE 56

65

133

1   14:08:21   handwritten notation that looks like a circle "C"

2   14:08:24   and then 8/1998.  Do you see that?

3   14:08:28       A.    Yes.

4   14:08:29       Q.    Was that handwritten notation on any of

5   14:08:33   the artboards that you saw from Mr. Bryant or MGA

6   14:08:37   in October of 2000?

7   14:08:39       A.    No.

8   14:08:41       Q.    Is the same true for the rest of the

9   14:08:44   information there in the lower right-hand corner,

10  14:08:46   "all rights assigned" and so on and then ends with

11  14:08:49   the handwritten note "contract date 9/5/00"?

12  14:08:54       A.    The same is true.  I did not see this

13  14:08:56   stuff on those boards.

14  14:08:58       Q.    None of that information was on the

15  14:09:00   artboards that you saw?

16  14:09:01       A.    No.

17  14:09:04       MR. WICKHAM:  I will actually -- counsel, I

18  14:09:05   think that you may have misread what that number

19  14:09:07   is, and actually, the number that you just read,

20  14:09:10   you said it was 9/5.  It very well could be 9/18,

21  14:09:14   but the number itself is a little bit

22          unintelligible.

23  14:09:18       MR. ZELLER:  Or 15.  So let me -- I will

24  14:09:21   rephrase the question then.

66

EXHIBIT __8__ PAGE __57__

134

1   14:09:22   BY MR. ZELLER:

2   14:09:23        Q.     You will see the typewritten portion,

3   14:09:26   "all rights assigned to ABC International Traders"?

4   14:09:31        A.     Yes.

5   14:09:31        Q.     And then it ends with "contract date"

6   14:09:33   and then some additional handwriting there; it

7   14:09:35   looks like a date of some kind, perhaps?

8   14:09:37        A.     Correct.

9   14:09:38        Q.     Was any of that information on any of

10  14:09:40   the artboards that you saw from Mr. Bryant or MGA

11  14:09:45   in October of 2000?

12  14:09:46        A.     No.

13  14:09:50        Q.     Directing your attention to the next

14  14:09:52   page, M1491, was any of the information there in

15  14:09:58   the lower right-hand corner starting with "all

16  14:10:00   rights assigned" and then again ending with a

17  14:10:03   handwritten notation, a contract date and then a

18  14:10:07   handwritten date, was any of that on the artboards

19  14:10:09   or the other artwork that you saw pertaining to

20  14:10:13   Bratz shown?

21  14:10:14        MS. CENDALI:  Mr. Zeller, this is a waste of

22  14:10:16   time.  Why don't you just ask him for each of these

23  14:10:18   whether that information was there or not and move

24  14:10:21   on?

EXHIBIT  8  PAGE  58

67

| | | |
|---|---|---|
| 1 | 14:10:21 | MR. ZELLER: Well, I will ask the question as |
| 2 | 14:10:24 | I would like. You guys were the ones who were |
| 3 | 14:10:28 | objecting earlier when I tried to do it in a more |
| 4 | 14:10:30 | leading form on foundational things just to get |
| 5 | 14:10:33 | through but -- |
| 6 | 14:10:34 | MS. CENDALI: I am not leading. I am not |
| 7 | 14:10:34 | leading. You can ask it without leading. You can |
| 8 | 14:10:37 | also ask it without going through each one and |
| 9 | 14:10:39 | asking exactly the same thing, but it's up to you. |
| 10 | 14:10:41 | MR. ZELLER: But the information on these |
| 11 | 14:10:43 | things is different, so that's why I am doing it. |
| 12 | | BY MR. ZELLER: |
| 13 | 14:10:48 | Q. So we are discussing Deposition Exhibit |
| 14 | 14:10:51 | No. 10, specifically M1491. I am sorry. Was I on |
| 15 | 14:11:03 | 90? Let me ask that question then as to M1491. |
| 16 | 14:11:11 | You will see the information in the lower |
| 17 | 14:11:13 | right-hand corner, it says "all rights assigned," |
| 18 | 14:11:16 | and then it continues on and ends with a |
| 19 | 14:11:19 | handwritten notation that starts off "contract |
| 20 | 14:11:22 | date." |
| 21 | 14:11:22 | A. Yes. |
| 22 | 14:11:22 | Q. Was that information on any of the |
| 23 | 14:11:24 | artboards that either Mr. Bryant or MGA showed to |
| 24 | 14:11:27 | you in October of 2000? |

EXHIBIT___8___PAGE___59___

136

| | | | |
|---|---|---|---|
| 1 | 14:11:28 | A. | No, it wasn't. |
| 2 | 14:11:31 | Q. | Directing your attention to the next |
| 3 | 14:11:33 | page, M1492, you will see that this drawing has a |
| 4 | 14:11:39 | circle C/1998. |
| 5 | 14:11:43 | A. | Um-hmm. |
| 6 | 14:11:45 | Q. | Was that handwritten notation or date |
| 7 | 14:11:47 | written on any of the artboards that you saw from |
| 8 | 14:11:50 | Carter Bryant or MGA in October of 2000 -- |
| 9 | 14:11:53 | A. | No. |
| 10 | 14:11:54 | Q. | -- or at any other time? |
| 11 | 14:11:57 | A. | No, I have not seen that. |
| 12 | 14:11:58 | Q. | Was the same true of the rest of the |
| 13 | 14:12:00 | printed information and the other handwriting that |
| 14 | 14:12:03 | continues on on 1492? |
| 15 | 14:12:06 | A. | The same is true. |
| 16 | 14:12:10 | Q. | Was the same true for 1493? |
| 17 | 14:12:14 | A. | Yes. |
| 18 | 14:12:18 | Q. | Is the same true for M1494? |
| 19 | 14:12:24 | A. | Yes. |
| 20 | 14:12:26 | Q. | Directing your attention to Page M1495 |
| 21 | 14:12:31 | of Deposition Exhibit 10, you will see that there |
| 22 | 14:12:34 | is a handwritten circle "C" with 8/1998 on it? |
| 23 | 14:12:39 | A. | Yes. |
| 24 | 14:12:40 | Q. | Was that on the artboards that |

EXHIBIT 8 PAGE 60

69

137

```
 1   14:12:44   Mr. Bryant or MGA showed to you in October of 2000?
 2   14:12:49      A.   No.
 3   14:12:51      Q.    Is the same true for the rest of the
 4   14:12:53   information that's there on M1495 that begins "all
 5   14:12:58   rights assigned" and then continues on to that
 6   14:13:00   handwritten notation contract date?
 7   14:13:02      A.    The same is true.
 8   14:13:04      Q.    Is the same true for the next page,
 9   14:13:06   M1496?
10   14:13:12      A.    The same is true.
11   14:13:16      Q.    Directing your attention to M1497, you
12   14:13:22   will see that that has a handwritten notation,
13   14:13:27   8/11 -- excuse me -- 8/1998.  Was that handwritten
14   14:13:34   notation or that date on the artboards or artwork
15   14:13:39   that Carter Bryant and MGA showed you in October of
16   14:13:42   2000?
17   14:13:43      A.    No.
18   14:13:44      Q.    Is the same true of the additional
19   14:13:50   written information on this page beginning with
20   14:13:52   "all rights assigned to" and then ending with that
21   14:13:56   handwritten notation "contract date" and then with
22   14:13:58   a date?
23   14:13:59      A.    The same is true.
24   14:14:01      Q.    Is the same true for 1498?
```

EXHIBIT 8 PAGE 61

70

138

| | | | |
|---|---|---|---|
| 1 | 14:14:07 | A. | The same is true. |
| 2 | 14:14:09 | Q. | Is the same true for 1499? |
| 3 | 14:14:14 | A. | The same is true. |
| 4 | 14:14:17 | Q. | Is the same true for the next page, |
| 5 | 14:14:20 | M1500? | |
| 6 | 14:14:29 | A. | In regards to this written stuff on the |
| 7 | 14:14:31 | bottom? | |
| 8 | 14:14:31 | Q. | Yes. |
| 9 | 14:14:32 | A. | Yes, the same is true. |
| 10 | 14:14:32 | Q. | Is the same true for the next page, |
| 11 | 14:14:35 | M501? | |
| 12 | 14:14:39 | A. | It's upside-down. The same is true. |
| 13 | 14:15:11 | MR. ZELLER: Would you please mark as |
| 14 | 14:15:12 | Exhibit 328 a one-page document which appears to be |
| 15 | 14:15:16 | an e-mail from Liz Hogan to Paula Treantafelles |
| 16 | 14:15:19 | with a CC to Steve Linker dated October 12, 2000. |
| 17 | 14:15:25 | It bears Bates number SL 0004. |
| 18 | | (WHEREUPON, a certain document was |
| 19 | | marked Deposition Exhibit No. 328, |
| 20 | 14:15:54 | for identification, as of 9/13/06.) |
| 21 | 14:15:54 | MS. CENDALI: Do you have copies of that for |
| 22 | 14:15:56 | us? |
| 23 | 14:15:57 | MS. KREBS: It is in the Steve Linker |
| 24 | 14:15:59 | production. SL 0004. |

EXHIBIT  8  PAGE 62

71

From:       Isaac Larian
Sent:       Tuesday, October 10, 2000 6:38 PM
To:         Victoria O'Connor
Cc:         Dennis Medici
Subject:    RE: CARTER COMPENSATION

from the date he signed the contract.

——Original Message——
From:       Victoria O'Connor
Sent:       Tuesday, October 10, 2000 10:56 AM
To:         Isaac Larian
Cc:         Dennis Medici
Subject:    FW: CARTER COMPENSATION

Do you want to start his salary for the month of Octoebr since he began in September? Please advise.

——Original Message——
From:       Paula Treantafelles
Sent:       Tuesday, October 10, 2000 9:02 AM
To:         Victoria O'Connor
Subject:    RE: CARTER COMPENSATION

I would say that Carter has worked on average about 4 hours a day and we began working on this line the first part of September.

——Original Message——
From:       Victoria O'Connor
Sent:       Tuesday, October 10, 2000 8:11 AM
To:         Paula Treantafelles
Subject:    FW: CARTER COMPENSATION

Please let me know how many hours Carter has worked and the day he started meetings with you.  Thanks.

——Original Message——
From:       Dennis Medici
Sent:       Tuesday, October 10, 2000 6:46 AM
To:         Victoria O'Connor
Subject:    CARTER COMPENSATION

Victoria,
Please reply what amount we should pay Carter and have Isaac approve.  Thanks.

Dennis Medici
MGA Entertainment
(818) 894-2525
(818) 830-7176 fax

EX. NO. 305
PAGES 7, 18, 06
A. PRAXMARER, CSR • WIT: LARIAN

CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA004717

30 5

EXHIBIT 9 PAGE 64

72

# Veronica Marlow

12250 Woodley Ave.
Granada Hills CA, 91344

# INVOICE

INVOICE NO.:  G000625

DATE:         11/14/00

**Sold To:**

Paula Treantafales
MGA Entertainment
16730 Schoenborn St.
North Hills, CA 91343

**Ship To:**

Same

| SALESPERSON | P.O. NUMBER | DATE SHIPPED | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
| | PO03521 | 10/26/00 | | | net |

| QUANTITY | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|
| | "Bratz" dolls research, development and support services from 9/29/00 to 10/20/00. | | |
| 18 hrs. | Brainstorm and development meetings. | 50.00 | 900.00 |
| 12 hrs. | Support for body sculpting and packaging. | 50.00 | 600.00 |
| 18 hrs. | Fashion research. | 50.00 | 900.00 |
| 19 hrs. | Fashion development and support. | 50.00 | 950.00 |
| 21 hrs. | Pattern and sample development. | 50.00 | 1,050.00 |
| | | SUBTOTAL | 4,400.00 |
| | | SALES TAX @ 8.25% | 363.00 |
| | | SHIPPING & HANDLING | |
| | | TOTAL DUE | 4,763.00 |

*$4,400.00*

*only pay
(per P.O.)*

Customer Signature

### THANK YOU FOR YOUR BUSINESS!

CONFIDENTIAL -
ATTORNEYS' EYES ONLY

REDACTED

MGA0008739

73

EXHIBIT 10 PAGE 65

# Veronica Marlow

**12250 Woodley Ave.**
**Granada Hills CA, 91344**

# INVOICE

INVOICE NO.:   G000626

DATE:       11/14/00

**Sold To:**

Paula Treantafales
MGA Entertainment
16730 Schoenborn St.
North Hills, CA 91343

**Ship To:**          Same

| SALESPERSON | P.O. NUMBER | DATE SHIPPED | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
|  | PO03522 | 10/26/00 |  |  | net |

| QUANTITY | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|
|  | "Bratz" dolls third party services from 10/13/00 to 10/20/00. |  |  |
| 49 hrs. | Third party sewing and pattern making support. | 30.00 | 1,470.00 |
| 32 hrs. | Third party sewing and pattern making support. | 30.00 | 960.00 |

|  |  |
|---|---|
| SUBTOTAL | 2,430.00 |
| SALES TAX @ 8.25% |  |
| SHIPPING & HANDLING |  |
| TOTAL DUE | 2,630.48 |

*Only pay $2,430.00*
*(per P.O.)*

_____
**Customer Signature**

### THANK YOU FOR YOUR BUSINESS!

CONFIDENTIAL -
ATTORNEYS' EYES ONLY

REDACTED

MGA0008742

EXHIBIT 11   PAGE 66

74

Marine, Julia - Vol. 2  11/8/2006  11:55:00 AM

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                    EASTERN DIVISION

4

5     CARTER BRYANT, an individual,  )
                                     )
6              Plaintiff,       )
                                )
7         vs.            ) No. CV 04-09049 SGL
                         ) (RNBx) (c/w CV
8     MATTEL, INC., a Delaware    ) 04-9059 & 05-2727)
      Corporation,              )
9                        )   VOLUME II
           Defendant.      )
10                       )
      CONSOLIDATED WITH MATTEL, INC.,)
11    v. BRYANT and MGA          )
      ENTERTAINMENT, INC., v. MATTEL,)
12    INC.             )

13

14

          CONFIDENTIAL - ATTORNEYS' EYES ONLY

15

16

      VIDEOTAPED 30(b)(6) DEPOSITION OF JULIA MARINE

17

           Los Angeles, California

18

        Wednesday, November 8, 2006

19

20

21

22

23    Reported by:

24    WENDY S. SCHREIBER
      CSR No. 3558, RPR, CLR
25    Job No. 920755

EXHIBIT 12  PAGE 12

Marine, Julia - Vol. 2  11/8/2006  11:55:00 AM

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3               EASTERN DIVISION

4

5     CARTER BRYANT, an individual,  )
                                     )
6          Plaintiff,                )
                                     )
7          vs.              ) No. CV 04-09049 SGL
                            ) (RNBx) (c/w CV
8     MATTEL, INC., a Delaware    ) 04-9059 & 05-2727)
      Corporation,              )
9                               )
           Defendant.       )
10                              )
      CONSOLIDATED WITH MATTEL, INC.,)
11    v. BRYANT and MGA        )
      ENTERTAINMENT, INC., v. MATTEL,)
12    INC.            )

13

14

15        Videotaped 30(b)(6) Deposition of

16    JULIA MARINE, taken on behalf of Defendants,

17    at 400 South Hope Street, Los Angeles,

18    California, beginning at 10:09 A.M. and ending

19    at 12:06 P.M., on Wednesday, November 8, 2006,

20    before Wendy S. Schreiber, Certified Shorthand

21    Reporter No. 3558, RPR, CLR.

22

23

24

25

EXHIBIT 13 PAGE 73

```
1    APPEARANCES:

2

3       For Plaintiff:

4

5       LITTLER MENDELSON
        BY:  DOMINIC J. MESSIHA, ESQ.
6       2049 Century Park East
        Fifth Floor
7       Los Angeles, California 90067-3107
        (310) 553-0308
8

9       For Defendant MGA Entertainment, Inc.:

10

11      O'MELVENY & MYERS LLP
        BY:  JENNIFER GLAD, ATTORNEY AT LAW
12           JAMES PAUL JENAL, ESQ.
        400 South Hope Street
13      Los Angeles, California 90071-2899
        (213) 430-6000
14      jglad@omm.com
        jjenal@omm.com
15

16

        For Defendant Mattel, Inc.:
17

18

        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
19      BY:  JON COREY, ESQ.
        865 South Figueroa Street, Tenth Floor
20      Los Angeles, California 90017
        (213) 443-3000
21      joncorey@quinnemanuel.com

22

23      Video Operator - Tony Bloodworth

24

25
```

EXHIBIT 13 PAGE 74

77

Marine, Julia - Vol. 2  11/8/2006  11:55:00 AM

1      Q.  If they're on the server now or if they're

2    on that backup tape from 2002.

3           (Whereupon Mr. Messiha joined the

4      deposition proceedings.)

5           MR. COREY:  Now you've got two questions.   10:58AM

6    Ask about the backup tape.  I mean, pick a question.

7    BY MS. GLAD:

8      Q.  If you wanted -- on the backup tape from

9    2002 that included the information during that '98

10   to 2000 time period, if you wanted to find all the    10:58AM

11   files or data stored from a particular individual,

12   could you do that?

13     A.  Wow.  Not easily.  You'd have to restore it

14   somewhere, all of it, or -- yeah, you'd have to

15   restore it.                           10:59AM

16     Q.  So you couldn't restore just for that

17   particular user?

18     A.  I could not.  Those -- those backups are

19   expired so our backup system has no knowledge of

20   what's on those tapes.                    10:59AM

21     Q.  The 2002 backup is expired?

22     A.  Yes.

23     Q.  And -- so with that Net Backup software you

24   couldn't do the same thing with that tape as you

25   could with, say, a backup from a month ago?    11:00AM

EXHIBIT 13 PAGE 75

1      A.   Right, not easily.  It doesn't know what's

2    on those tapes anymore.

3      Q.   Does the Net Backup software provide any

4    kind of an index or anything to say at all what's on

5    that backup tape?                    11:00AM

6            MR. COREY:  Again, between '98 and 2000?

7            MS. GLAD:  Correct.

8            THE WITNESS:  No, not what we have, no.

9      Q.   And is there an easy way to get that kind of

10   information?                         11:00AM

11     A.   Not easy, no.

12     Q.   You said that you would have to restore the

13   entire thing?

14     A.   You're looking -- yeah, we have no

15   knowledge -- we have no idea what's on those -- what  11:00AM

16   specifically is on those tapes so you would have to

17   read them all into a Net Backup software to recreate

18   its database and even then it's not sorted by a

19   date, like file dates.

20     Q.   How is it sorted?                11:01AM

21     A.   It's by location on the server.  This is a

22   point-in-time backup so it would be files created

23   and modified any time up until the point the backup

24   was taken.

25     Q.   And if you knew that the particular person  11:01AM

EXHIBIT 13 PAGE 76

79

Marine, Julia - Vol. 2  11/8/2006  11:55:00 AM

1    was in the design center, for example, would that

2    make it any more or less difficult?

3        A.  No.

4        Q.  Is there anything that would make it less

5    difficult?                         11:01AM

6        A.  Well, if —

7            MR. COREY:  While we're wishing.  Objection:

8    speculation.

9            THE WITNESS:  Yeah, since it's stored by

10   location and not by owner or date knowing whether   11:02AM

11   the person was there or not wouldn't help.

12   BY MS. GLAD:

13       Q.  Is there anything where you could identify

14   or — strike that.

15           What about documents that are currently on   11:02AM

16   the Zeus server today that are from that '98 to 2000

17   time frame if you wanted to find all documents

18   created or worked on by a particular individual?

19           MR. COREY:  You're asking how she would do

20   that?                              11:03AM

21   BY MS. GLAD:

22       Q.  How you would go about doing that, yes.

23       A.  It would be time consuming because it's a

24   very big server but certainly we have the

25   modification date files and the owner of the file.   11:03AM



EXHIBIT 13 PAGE 77

Marine, Julia - Vol. 2  11/8/2006  11:55:00 AM

1     method of storing its backups.  Does it have

2     something like an index or a directory or something

3     like that up until the point where it is expired

4     that would let you know what's on each of those

5     tapes?                              11:15AM

6          MR. COREY:  Objection:  vague and ambiguous.

7          THE WITNESS:  It knows what backups there

8     are and I use the software to do restores and that's

9     how I get that information about what's available.

10   BY MS. GLAD:                         11:15AM

11        Q.  And you said that to make things a little

12   easier it would help if you knew what the location

13   was when I was asking you whether you could restore

14   information relevant to a particular person or data

15   stored by a particular person or documents created   11:16AM

16   by that person or things along those lines.  Right?

17        A.  Right.

18        Q.  So what do you mean by "location"?

19        A.  A path name.

20        Q.  So mapped to a particular individual or a    11:16AM

21   department or what?

22        A.  It would be specific to the server, the

23   location on the server, a path name on the server.

24        Q.  You also said that it would be time

25   consuming to kind of I guess restore that 2002    11:17AM    EXHIBIT 13 PAGE 78

81

Marine, Julia - Vol. 2  11/8/2006  11:55:00 AM

1    backup so that it was searchable or usable.

2        A.   Yeah.  I mean, if that's DLT I don't even

3    have the hardware to do it.  It would be awful.

4    Yeah, it would take -- I wouldn't want to do it.

5        Q.   Does Iron Mountain or would that be whoever   11:17AM

6    is doing the backup, maintaining that, do they have

7    the software or the hardware that's required to

8    restore that?

9        A.   No.

10       MR. COREY:  Objection:  assumes facts and   11:17AM

11   misstates her testimony.

12   BY MS. GLAD:

13       Q.   So if you wanted to restore that 2002 backup

14   tape then, how would you go about doing that?

15       A.   Oh, my God, I would --              11:18AM

16       MR. COREY:  Again, it's tapes.

17       THE WITNESS:  Tapes.  You need the hardware

18   so if we don't have the hardware -- if it's DLT we

19   don't have the hardware and you've got to buy it

20   and -- well, first you have to find a place to put   11:18AM

21   it with adequate power which we don't have in the

22   design center.  You need to have a tape library.

23   You need to have the tape drives that carried those

24   tapes.  You need a server that has the capability

25   to -- that's big enough to handle all of the       11:18AM

EXHIBIT 13 PAGE 79

82

Marine, Julia - Vol. 2  11/8/2006  11:55:00 AM

1    hardware.  You need the software – the license for

2    the backup software.  You need the disk space to

3    restore it to and then you have to start reading in

4    all those tapes.

5    BY MS. GLAD:                          11:19AM

6        Q.  You said that you don't have that in the

7    design center.  Do you have that hardware anywhere

8    else in the company?

9        A.  DLT?  No, no.

10       Q.  At what point did you get rid of the        11:19AM

11   hardware?

12       A.  Once the last backups -- DLT backups expired

13   so it would have been a couple years ago probably.

14       Q.  Can you narrow it down any more than that?

15       A.  No.                          11:19AM

16       Q.  Is there any way for you to find out the

17   specific date or an approximate date?

18       MR. COREY:  The specific date that the –

19   they no longer used the DLT tape drives?

20       MS. GLAD:  That you got rid of the hardware. 11:19AM

21       MR. COREY:  Vague and ambiguous.  I'm trying

22   to find out what "hardware" means.

23   BY MS. GLAD:

24       Q.  Yeah, the DLT.

25       A.  The DLT hardware?  Yeah, I could ask my      11:19AM

EXHIBIT 13 PAGE 80

83

Marine, Julia - Vol. 2  11/8/2006  11:55:00 AM

1      STATE OF CALIFORNIA   ) ss:

2      COUNTY OF LOS ANGELES )

3

4          I, WENDY S. SCHREIBER, C.S.R. No. 3558, do

5      hereby certify:

6

7          That the foregoing deposition of JULIA

8      MARINE was taken before me at the time and place

9      therein set forth, at which time the witness was

10     placed under oath and was sworn by me to tell the

11     truth, the whole truth, and nothing but the truth;

12          That the testimony of the witness and all

13     objections made by counsel at the time of the

14     examination were recorded stenographically by me,

15     and were thereafter transcribed under my direction

16     and supervision, and that the foregoing pages

17     contain a full, true and accurate record of all

18     proceedings and testimony to the best of my skill

19     and ability.

20          I further certify that I am neither

21     counsel for any party in said action, nor am I

22     related to any party to said action, nor am I in any

23     way interested in the outcome thereof.

24

25

EXHIBIT 13 PAGE 81

84

Martinez, Liliana 5/20/2005

1    APPEARANCES OF COUNSEL (CONTINUED):

2

3       FOR THE DEFENDANT-IN-INTERVENTION MGA

4       ENTERTAINMENT, INC.:

5

6          O'MELVENY & MYERS, LLP

7          BY:  DALE M. CENDALI, ESQ.

8          Times Square Tower

9          7 Times Square

10         New York, New York 10036

11         212 326-2000

12         -AND-

13         O'MELVENY & MYERS, LLP

14         BY:  BENJAMIN A. KIM, ESQ.

15         400 S. Hope Street

16         Los Angeles, California 90071

17         213 430-6000

18

19

20    ALSO PRESENT:

21

22         CARTER BRYANT

23         MICHAEL MOORE, Mattel Senior Counsel

24

25

EXHIBIT 16 PAGE 87

85

Martinez, Liliana 5/20/2005

```
 1      APPEARANCES OF COUNSEL:

 2

 3          FOR THE PLAINTIFF:

 4

 5              QUINN EMANUEL URQUHART OLIVER & HEDGES

 6                  BY: MICHAEL ZELLER, ESQ.

 7                  TANIA KREBS, ESQ.

 8                  865 S. Figueroa Street

 9                  10th Floor

10                  Los Angeles, California 90017

11                  213 443-3000

12

13          FOR THE DEFENDANT CARTER BRYANT:

14

15              LITTLER MENDELSON, APC

16                  BY: KEITH A. JACOBY, ESQ.

17                  2049 Century Park East

18                  Fifth Floor

19                  Los Angeles, California 90067

20                  310 553-0308

21

22

23

24

25
```



EXHIBIT 16 PAGE 98

Page 2

86

Martinez, Liliana 5/20/2005

1             UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3

4    ------------------------------)

5    MATTEL, INC., a Delaware        )

6    Corporation,                    )

7                    Plaintiff,      ) Case No.

8              vs.                   ) CV 04-9059NM (RNBx)

9    CARTER BRYANT, an individual    ) VOLUME I

10   and MGA ENTERTAINMENT, INC.,    )

11   a California Corporation,       )

12   Defendants and                  )

13   Defendants-in-Intervention.     )

14   ------------------------------)

15   AND RELATED COUNTERCLAIMS       )

16   ------------------------------)

17

18        Deposition of LILIANA MARTINEZ, at 1999

19        Avenue of the Stars, Suite 700, Los Angeles,

20        California, 90067, commencing at 8:38 A.M.,

21        Friday, May 20, 2005, before Judith

22        Schlussel, CSR No. 4307.

23

24

25


EXHIBIT 16 PAGE 99

87

Martinez, Liliana 5/20/2005

1   1998?

2          MR. ZELLER:  The question is overbroad.

3   Lacks foundation.

4          THE WITNESS:  No.

5      Q.   BY MS. CENDALI:  When was the next time you

6   recall seeing Mr. Bryant?

7      A.   I don't.

8      Q.   Did you understand that he was a designer

9   in the Barbie Collectibles group?

10     A.   I did.

11     Q.   Did he have a reputation as being a good

12  designer?

13     A.   Um, I wouldn't -- sure.

14     Q.   As far as you knew from your own point of

15  view, did you think he was a good designer?

16     A.   I thought he was talented.

17     Q.   Did you think he was an honest person?

18     A.   Um, I didn't have an opinion about that.

19     Q.   Did he ever do anything that made you think

20  he wasn't honest?

21         MR. ZELLER:  You mean at any time or when

22  he was at Mattel?

23         MS. CENDALI:  When he was at Mattel?

24         THE WITNESS:  I didn't know him.

25     Q.   BY MS. CENDALI:  But were you aware of

EXHIBIT 16 PAGE 100

Page 191

88

Martinez, Liliana 5/20/2005

1 anything during the time that he was at Mattel that

2 anyone had ever said that made you think he wasn't

3 an honest person?

4     A.   I -- I don't -- can you repeat that.

5     Q.   Sure.  During the time Mr. Bryant was at

6 Mattel, did anyone ever say anything to you that

7 made you think he wasn't an honest person?

8     A.   I don't recall.

9     Q.   Did you ever have a conversation with

10 Carter Bryant about Toon Teens?

11    A.   Yes.

12    Q.   When was that?

13    A.   When Elise brought him over to look at

14 them.

15    Q.   And when did she do that?

16    A.   I don't remember.

17    Q.   At what stage was Toon Teens in at that

18 point?

19    A.   I don't remember.  I think it was after we

20 first presented the first time.

21    Q.   So the accessories and the dolls had

22 already been constructed and the accessories were

23 done; is that right?

24    A.   Yes.

25    Q.   What did -- how did you know that Elise was


EXHIBIT 16 PAGE 101

89

Martinez, Liliana 5/20/2005

1  bringing Mr. Bryant over to see Toon Teens?

2     A.   I didn't.

3     Q.   Well, what led you to say that?

4     A.   I was in the area where they were and she

5  and him walked over and said "hey, I brought Carter

6  to check out your dolls."

7     Q.   What did -- did Carter say anything to you?

8     A.   Yeah.

9     Q.   What did he say?

10    A.   In regards to that?

11    Q.   With regards to Toon Teens, yes.

12    A.   He said they're cute and that Mattel would

13  be crazy if they don't do them.

14    Q.   Do you recall anything else Mr. Bryant

15  said?

16    A.   No.  I don't recall.

17    Q.   Do you recall anything you said in this

18  conversation?

19    A.   I said "oh, well, you know," I said

20  "thanks, you know, we'll see what happens, we'll see

21  what happens."

22    Q.   Do you recall anything Elise said?

23    A.   No.  She just -- no.  Just look at the

24  dolls.

25    Q.   What happened at the the end of the



EXHIBIT 16 PAGE 102

90

Martinez, Liliana 5/20/2005

1  conversation?

2     A.   Everybody left to their cubicles.  I don't

3  know.  I left to my cubicle.

4     Q.   How long did the conversation last?

5     A.   Not very long.

6     Q.   Other than that one time, are you aware of

7  Carter Bryant having any other contacts with you

8  regarding Toon Teens?

9     A.   Not that I recall.

10     Q.   Other than that one time, are you aware of

11  whether Carter ever saw Toon Teens again?

12          MR. ZELLER:  Object.  The question is vague

13  and ambiguous when you say Toon Teens.  Are you

14  talking about the dolls, the prototypes?

15          THE WITNESS:  In what form?

16     Q.  BY MS. CENDALI:  In any form?

17          MR. ZELLER:  The question is vague and

18  ambiguous and overbroad.

19          THE WITNESS:  And when?  I don't know.  I

20  worked on the dolls for a long time and there were a

21  lot of people had parts of them.  I mean, I don't

22  know.  I don't know.  He could have seen them

23  wherever, whenever.

24     Q.   BY MS. CENDALI:  But you don't know whether

25  in fact that was the case, right?

EXHIBIT 16   Page 103
PAGE 103

91

1    attorneys.

2         THE WITNESS:  I don't recall, remember.

3         Q.  BY MS. CENDALI:  Do you, sitting here

4    today, do you think Carter Bryant copied Toon Teens

5    when he came up with the idea for Bratz?

6         A.  I -- you're asking my personal opinion?

7         Q.  Yes.

8         A.  Well, it's strangely to me that it's a

9    very, very strong coincidence that, you know, the

10   faces look very similar, the concept of head and,

11   you know, and legs, are, you know, the proportions

12   are very similar; not to mention that a lot of

13   people had my drawings -- the face, the hair

14   department, the sample maker, they were pinned up on

15   my cubicle.  Elise, which was a cube in between like

16   where I sat and she worked very close with me,

17   they're like really good friends.  I mean I don't

18   know.  All points to me that, you know, there was

19   something, something happened.  But I don't know.

20   My instinct tells me that something -- it's -- yeah.

21   I've never seen any of his stuff other than fashion,

22   you know, nothing stylized or cartoony in his stuff

23   that I've seen.  Yeah.

24        Q.  Have you ever seen his portfolio?

25        A.  No, but I've seen a sketch or two of his.

Mattel v. MGA II                    None

92

EXHIBIT 16    Page 164
PAGE 164

1    I further certify that I am not a relative or

2  employee or attorney or counsel of any of the parties,

3  nor am I a relative or employee of such attorney or

4  counsel, nor am I financially interested in the outcome

5  of this action.

6

7    IN WITNESS WHEREOF, I have subscribed my name

8  this 5th day of June         , 2005.

9

10

11  _____

12  JUDITH SCHLUSSEL, CSR No. 4307

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 16 PAGE 105

93

To: David Rosenbaum

From: Carter H. Bryant

Total Pages: 4

CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA001356



EXHIBIT 17 PAGE 106

94

September 14, 2000.

Dear David,

Enclosed is a copy of my original offer of employment with Mattel. To the best of my knowledge, other than an agreement of confidentiality, there are no other expressed contracts that have been signed. I am unable to look into this too much further with our Human Resources director without risking suspicion, but I am quite certain that this should suffice.

Thank you very much.

Sincerely,

Carter H. Bryant

**REDACTED**

CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA001357

EXHIBIT 17 PAGE 107



Mattel, Inc.

333 Continental Boulevard
El Segundo, California 90245-5012
Phone: (310) 333-2000
News: 1081156 or 10Q1720

December 11, 1998

Mr. Carter Bryant
1-A Sycamore Dr.
Kimberling, MO 65686

Dear Carter,
Congratulations and welcome to Mattel!

We are pleased to confirm your acceptance of our offer for the position of Project Designer, and to outline the various benefits that are available to you as a member of the Mattel team.

**Compensation**

Your annual base salary will be ▓▓▓▓▓ payable on a bi-weekly basis.

**Relocation**

You will receive a relocation payment of ▓▓▓▓▓ less appropriate federal and state taxes, payable to you no later than 30 days following commencement of your employment.

If you choose to voluntarily terminate your employment with Mattel within one year of your date of hire, you will be required to repay this amount in full.

**Benefits**

The following is a brief outline of benefits in which you will be eligible to participate as of your date of hire. Specific details and plan limitations are provided in Summary Plan Descriptions or Plan Documents, and are subject to periodic modification and revision..

You and your qualified dependents, if applicable, will be eligible for the following coverage:

- Medical
- Dental
- Vision
- Prescription

- Life Insurance – 1-1/2 x base salary
- Accidental Death & Dismemberment – 1-1/2 x base salary
- Business Travel Coverage – $1,000,000
- Short & Long-Term Disability

You will be enrolled in the Mattel Personal Investment Plan (PIP), which is a 401(k) savings/retirement plan. The plan offers both Company Automatic and Matching contribution provisions as outlined below.

CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA001358



EXHIBIT 17 PAGE 108

96

SEP 14 '00 11:30 PM B4      LITTLE FIELD   310 252 6609 TO 007   P1

- **Company Automatic Contributions**
  The Company will make automatic contributions to your account ranging from 3% to 8% of your salary, based on age.

- **Company Matching Provision**
  The Company will match up to the first 6% of pay you contribute to your PIP account on a dollar-for-dollar basis up to 2% of your annual salary and on a fifty-cents-on-the-dollar basis for up to the next 4% of your salary.

Of course, this offer is contingent upon satisfactory verification of all information as to previous employers and academic institutions attended, eligibility to work in the United States, and the signing of a Confidential Information and Inventions Agreement. Further, you understand that this letter does not imply employment for a specific term and thus your employment is at will; either you or the Company can terminate it at any time, with or without cause. This letter acknowledges there are no oral or written prior agreement or representations concerning the term or conditions of employment. Additional details of your employment relationship are contained in our employment application.

Enclosed is a packet containing various information and forms required to activate your employment. Please complete these forms and bring them with you on your first day of employment. Also, you will need to bring with you certain documents as set forth in the enclosed directions. Upon your arrival in the second floor lobby, please advise the security officer that you are a new employee. You will be escorted to an orientation session beginning at 8:00 a.m., which will last most of the morning.

Carter, we are all looking forward to you joining the Mattel team on 1/4/99. As a new member of the Mattel family, please feel free to call me at (310) 252-2535 if you have any questions.

Sincerely,

Lynne Robinson
VP, Human Resources

-2-

CONFIDENTIAL
ATTORNEY'S EYES ONLY

** TOTAL PAGE.04 **

MGA001359

EXHIBIT 67 PAGE 105

97

**Exhibit 5**

# THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER