**Exhibit 1**

1

1    UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA

3    EASTERN DIVISION

4    - - -

5    HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6    - - -

7    CARTER BRYANT, ET. AL.,            )
                                        )
8                   PLAINTIFFS,         )
                                        )
9           VS.                         )   NO. ED CV 04-09049
                                        )   (LEAD LOW NUMBER)
10   MATTEL, INC., ET. AL.,             )
                                        )
11                  DEFENDANTS.         )
     _____)
12   AND CONSOLIDATED ACTIONS,          )
                                        )
13   _____)

**CERTIFIED COPY**

14

15   REPORTER'S TRANSCRIPT OF PROCEEDINGS

16   RIVERSIDE, CALIFORNIA

17   MONDAY, MARCH 31, 2008

18   10:09 A.M.

19

20

21

22

23   THERESA A. LANZA, RPR, CSR
     FEDERAL OFFICIAL COURT REPORTER
24   3470 12TH STREET, RM. 134
     RIVERSIDE, CALIFORNIA  92501
25   951-274-0844
     WWW.THERESALANZA.COM

MARCH 31, 2008          ED CV 04-09049-SGL

**EXHIBIT** 1
**PAGE** 3

1    OF THE PUBLIC RECORD, ANYTHING THAT'S USED AT TRIAL.   THIS IS

2    GOING TO BE A PUBLIC TRIAL.

3            MR. NOLAN:   GOOD.

4            THE COURT:   AND I FEEL VERY STRONGLY, ON FIRST

5    AMENDMENT GROUNDS, THIS HAS TO BE AS OPEN AS POSSIBLE.   I'VE          10:58

6    BEEN VERY LAX OR LENIENT, I SUPPOSE, WHEN IT COMES TO AFFORDING

7    PARTIES DISCRETION TO MAKE DOCUMENTS CONFIDENTIAL DURING THE

8    DISCOVERY PROCESS.   BUT WHEN WE MOVE TO THE TRIAL PROCESS AND

9    WE'RE DEALING WITH ADMISSIBLE EVIDENCE, OR POTENTIALLY

10   ADMISSIBLE EVIDENCE, AS OPPOSED TO DISCOVERY EVIDENCE, THEN THE       10:58

11   PRESUMPTION, THE VERY STRONG PRESUMPTION, IS THAT THIS IS AN

12   OPEN DOCUMENT.

13           WHAT I'M SUGGESTING -- AND I TRUST YOU HAVE NO

14   OBJECTION TO IT -- IS SAVE FOR THOSE CATEGORICAL RESTRICTIONS,

15   UNRELEASED PRODUCTS, FUTURE THEMES, PRODUCT LINE LISTS AND            10:59

16   SCHEDULES FOR A PERIOD AFTER JANUARY 1, 2008, MARKETING AND

17   ADVERTISING PLANS AFTER JANUARY 1, 2008, THOSE CATEGORIES THAT

18   ARE SET FORTH IN MATTEL'S PAPER, AS WELL AS THE CATEGORIES THAT

19   ARE SET FORTH IN YOURS, BUT FOR THOSE CATEGORIES, THAT IT'S

20   GOING TO BE THE DISCRETION OF THE AMBASSADOR TO USE, WITHIN THE       10:59

21   CONFINES OF A CONFIDENTIAL SETTLEMENT CONFERENCE, DOCUMENTS

22   THAT HE BELIEVES, IN HIS DISCRETION, ARE NEEDED TO ADVISE AND

23   FURTHER THE EFFORTS OF MEDIATION.

24           I TRUST YOU HAVE NO OBJECTION THAT.

25           MR. NOLAN:   ABSOLUTELY NOT, YOUR HONOR.                      10:59

MARCH 31, 2008              ED CV 04-09049-SGL

EXHIBIT __1__
PAGE __4__

1          -IN THREE WEEKS, WE'RE GOING TO BE BEFORE YOU ARGUING

2   THE MOTION FOR SUMMARY JUDGMENT.  SOMETIME IN THE NEXT THREE

3   WEEKS, WE'VE GOT TO WORK OUT, I ASSUME, WHAT YOU'VE BEEN ASKING

4   US TO DO.  MY ONLY CONCERN, YOUR HONOR, WAS THAT I THOUGHT NOW

5   WAS THE TIME -- YOU KNOW, IF WE'RE GOING TO HAVE THIS SESSION          11:00

6   WITH AMBASSADOR PROSPER, WE MIGHT AS WELL DEAL WITH IT IN THAT

7   CONTEXT.

8          WHAT I WOULD RATHER SAY, YOUR HONOR, IN YOUR ORDER,

9   IS, BUT FOR THOSE CATEGORIES, THE PARTIES SHOULD MEET AND

10  CONFER AND RELEASE THOSE DOCUMENTS FROM AEO PROTECTION.                11:00

11  BECAUSE WHAT IS ACTUALLY GOING ON HERE, YOUR HONOR, I

12  BELIEVE -- WHICH WILL BE SOLVED ONCE WE GET TO THIS OPEN AIR

13  VIEW OF THIS EVIDENCE -- IS THAT I BELIEVE THE PROTECTIVE ORDER

14  HAS BEEN MISUSED IN THIS CASE TO KEEP UNDER WRAPS A SITUATION

15  WITH RESPECT TO MATTEL AND ITS CONDITION, FINANCIAL CONDITION,         11:00

16  THAT WAS NOT KNOWN TO ITS ANALYST AND WAS -- I THINK THE

17  EVIDENCE -- THEY'VE GOT A LOT OF SECURITIES FRAUD MATTERS GOING

18  ON REGARDING REPRESENTATIONS THAT WERE MADE TO THEIR SECURITY

19  ANALYST.

20          THE COURT:  WELL, LET ME STOP YOU THERE, BECAUSE YOU          11:00

21  MADE CERTAIN -- YOU'RE UPSET WITH CERTAIN ALLEGATIONS THAT

22  THEY'RE MAKING ABOUT TRADE SECRETS.  LET'S TEMPER THE

23  ALLEGATIONS AT THIS POINT.

24          MR. NOLAN:  BUT, YOUR HONOR, THEY DON'T HAVE TO

25  TEMPER THEIR ALLEGATIONS.                                             11:01

1      THE COURT:  I'M ASKING YOU --

2      MR. NOLAN:  SEE, THEY CAN DO IT AT ANYTIME, AND THEY

3   FILE IT WITH --

4      THEY CAN MAKE THESE SERIOUS ALLEGATIONS IN THE PUBLIC

5   RECORD, AND SOME OF THEM GET REPRODUCED IN NEWSPAPER ARTICLES,    11:0

6   YOUR HONOR; SO IT'S EASY FOR THEM TO DO IT IN PAPER.  BUT IN

7   THE COURTROOM, YOUR HONOR, WHEN WE ARE ADDRESSING IT, I THINK

8   IT'S ONLY FAIR THAT I CAN AT LEAST ALERT THE COURT'S ATTENTION

9   TO THE POTENTIAL FOR ABUSE.  AND THAT'S WHY I BELIEVE EVERY

10   AUTHORITY THAT'S EVER LOOKED AT THIS HAS SAID, 'BEWARE OF THE    11:0

11   PROTECTIVE ORDER PROCESS, BECAUSE IT CAN BE USED AS AN ABUSE.'

12   AND WE BELIEVE IT HAS BEEN USED AS AN ABUSE.

13      THE COURT:  I'M NOT SUGGESTING THAT IT HAS OR HAS NOT

14   BEEN USED AS AN ABUSE, BUT COME THE MOTION FOR SUMMARY

15   JUDGMENT, IN THREE WEEKS AS YOU INDICATE, IT'S GOING TO COME TO    11:0

16   AN END.

17      MR. NOLAN:  GREAT.  SO THAT I UNDERSTAND, YOUR HONOR,

18   WHEN WE MAKE THE ARGUMENT ON THE MOTION FOR SUMMARY JUDGMENT,

19   WE WILL BE ABLE TO, IN AN OPEN COURTROOM, BE ABLE TO REFER TO

20   THE EVIDENCE THAT'S BEEN PRODUCED IN THIS CASE WHICH SUPPORTS    11:0

21   OUR CONTENTION THAT SUMMARY JUDGMENT SHOULD BE GRANTED ON

22   BEHALF OF MGA.

23      THE COURT:  ABSOLUTELY, SUBJECT TO ANY GOOD CAUSE

24   SHOWING BY EITHER SIDE THAT A PARTICULAR DOCUMENT OR A

25   PARTICULAR PIECE OF EVIDENCE NEEDS TO BE MAINTAINED IN-CAMERA    11:0

MARCH 31, 2008              ED CV 04-09049-SGL

EXHIBIT 1
PAGE 6

1    GROUP THAT WAS NOT INVOLVED IN THE TRIAL PREPARATIONS OR WHO

2    HAD BEEN INVOLVED IN DEALING WITH MS. TOMIYAMA TO ACTUALLY

3    PREPARE AND WRITE THE BRIEF.

4          THE COURT:  SO THIS IS COMING FROM THE SKADDEN ARPS'

5    WASHINGTON, D.C. OFFICE.                                    11:10

6          MR. NOLAN:  RIGHT, YOUR HONOR.

7          BUT ONE OF THE MOST IMPORTANT DECISIONS IS WHO WILL

8    ARGUE THE MOTION.  I DID NOT HAVE ANY SUBSTANTIAL CONTACT,

9    OTHER THAN A CASUAL HELLO, WITH MS. TOMIYAMA.  MY INTENT IS TO

10   STAND BEFORE YOU AND ARGUE THAT MOTION.                     11:10

11         THE COURT:  VERY WELL.

12         MR. NOLAN:  THANK YOU.

13         THE COURT:  I'LL SEE YOU NEXT MONDAY.

14         MR. COREY:  THANK YOU, YOUR HONOR.

15         THE COURT:  WE'RE GOING TO TAKE A VERY SHORT BREAK     11:10

16   FOR THE COURT REPORTER, AND WE'LL RESUME WITH THE REST OF THE

17   CALENDAR.

18                          CERTIFICATE

19

20   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
     STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
21   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE ABOVE-
     ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
22   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
     THE UNITED STATES.

23

24   _____          4-4-08
     THERESA A. LANZA, CSR, RPR                  DATE
25   FEDERAL OFFICIAL COURT REPORTER

**Exhibit 2**

1    THOMAS J. NOLAN (Bar No. 66992)
     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2    300 South Grand Avenue
     Los Angeles, California  90071-3144
3    Telephone:   (213) 687-5000
     Facsimile:   (213) 687-5600
4    E-mail:      tnolan@skadden.com

5    RAOUL D. KENNEDY (Bar No. 40892)
     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6    Four Embarcadero Center, 38th Floor
     San Francisco, California  94111-5974
7    Telephone:   (415) 984-6400
     Facsimile:   (415) 984-2698
8    E-mail:      rkennedy@skadden.com

9    Attorneys for Cross-Defendants
     MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
10   MGAE De Mexico, S.R.L. De C.V., and ISAAC LARIAN

11                    UNITED STATES DISTRICT COURT

12                    CENTRAL DISTRICT OF CALIFORNIA

13                         EASTERN DIVISION

14   CARTER BRYANT, an individual          )  CASE NO. CV 04-9049 SGL (RNBx)
                                           )  Consolidated with Case No. 04-9059
15                  Plaintiff,             )  and Case No. 05-2727
                                           )
16        v.                               )  DISCOVERY MATTER
                                           )  [To be heard by Discovery Master
17   MATTEL, INC., a Delaware              )  Hon. Edward A. Infante (Ret.)]
     corporation                           )
18                                         )  NOTICE OF MOTION AND
                  Defendant.               )  MOTION OF MGA PARTIES FOR
19                                         )  CLARIFICATION REGARDING
                                           )  PORTIONS OF FEBRUARY 15,
20   Consolidated with MATTEL, INC. v.     )  2008, ORDER GRANTING IN PART
     BRYANT and MGA                        )  AND DENYING IN PART
21   ENTERTAINMENT, INC. v.                )  MATTEL'S MOTION TO COMPEL
     MATTEL, INC.                          )  RESPONSES TO
22                                         )  INTERROGATORY NOS. 27-44
                                           )  AND 46-50 BY THE MGA PARTIES
23
24                                            Date:  TBD
                                              Time:  TBD
25                                            Place: JAMS
                                              Phase 1:
26                                            Discovery Cut-Off:      January 28, 2008
                                              Pre-Trial Conference:   May 5, 2008
27                                            Trial Date:             May 27, 2008

28

---

MGA PARTIES' MOTION FOR CLARIFICATION OF FEB. 15, 2008, ORDER

EXHIBIT ___2___
PAGE ___8___

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that MGA Entertainment, Inc. ("MGA"), MGA Entertainment (HK) Limited ("MGA HK"), MGAE De Mexico, S.R.L. De C.V. ("MGA Mexico") and Isaac Larian (collectively, the "MGA Parties") hereby move the Court for an order clarifying it's February 15, 2008, Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties (the "February 15, 2008, Order") to confirm that any obligation under the Court's February 15, 2008, Order to provide supplemental responses to interrogatories that seek discovery regarding Phase 2 issues is stayed by operation of the February 4, 2008, Minute Order of the Honorable Stephen Larson in this action staying Phase 2 discovery.  In particular, the MGA Parties seek an order confirming that (i) any obligation of the MGA Parties under the February 15, 2008, Order to respond to Interrogatories Nos. 41 (other than as to Carter Bryant), 43 and 44 is stayed by Judge Larson's February 4, 2008, Minute Order on the ground that these interrogatories seek Phase 2 discovery, and (ii) any obligation of MGA Mexico under the February 15, 2008, Order to provide supplemental interrogatory responses is stayed by operation of Judge Larson's February 4, 2008, Minute Order on the ground that discovery directed to MGA Mexcio, which was formed in April 2004, constitutes Phase 2 discovery.

This Motion is based upon this Notice of Motion and accompanying memorandum of points and authorities; the accompanying Declaration of Timothy A. Miller filed concurrently herewith; the records and files of this Court; and any other matter of which the Court may take judicial notice.  Discovery Master Hon. Edward Infante (Ret.) will preside over the hearing on this Motion, which will occur on a date and at a time and manner to be determined by the Discovery Master.

EXHIBIT __2__
PAGE __9__

1    Statement of Rule 37-1 Compliance.  Counsel for the MGA Parties met and

2  conferred with counsel for Mattel on February 25, 27 and 29, 2008, but were unable

3  to reach agreement on the issue addressed in this motion.  (Miller Decl. ¶¶ 11-13 and

4  Exs. J & K.)

5

6  DATED:  March 3, 2008                    SKADDEN, ARPS, SLATE, MEAGHER &
                                            FLOM, LLP
7

8                                           By: _____
                                                RAOUL D. KENNEDY
9
                                            Attorneys for Cross-Defendants
10                                          MGA Entertainment, Inc., MGA
                                            Entertainment (HK) Limited,
11                                          MGAE De Mexico, S.R.L. De C.V.,
                                            and ISAAC LARIAN
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA PARTIES' MOTION FOR CLARIFICATION OF FEB. 15, 2008, ORDER

EXHIBIT ___2___
PAGE ___10___

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

<u>**INTRODUCTION**</u>

On February 15, 2008, this Court issued its Order Granting in Part and Denying in Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties[1] (the "February 15, 2008, Order").   In that order, the Court denied Mattel's motion to compel, in part, and compelled the MGA Parties to provide supplemental responses to Interrogatories Nos. 38, 40, 41 (as limited by the Court), 43-44, and 47.  (February 15, 2008, Order at 10-12, 18-20, Miller Decl. Ex. C.)  The MGA Parties respectfully request that the Court clarify its February 15, 2008, Order to make clear that (i) any obligation of the MGA Parties under the February 15, 2008, Order to respond to Interrogatories Nos. 41 (other than as to Carter Bryant), 43 and 44 is stayed by Judge Larson's February 4, 2008, Minute Order staying Phase 2 discovery, and (ii) any obligation of MGA Mexico under the February 15, 2008, Order to provide supplemental interrogatory responses is also stayed because discovery directed to MGA Mexcio, which was formed in April 2004, constitutes Phase 2 discovery.

<u>**PERTINENT FACTUAL BACKGROUND**</u>

On December 20, 2007 Mattel filed its Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 By the MGA Parties (the "Motion to Compel"). The Motion to Compel was fully briefed by January 7, 2008.  (Miller Decl. ¶ 2.)

On February 4, 2008, Judge Larson issued a Minute Order which provided, in part, that:  "All discovery related to Phase 2 . . . is STAYED until further order of the Court."  (Feb. 4, 2008, Minute Order at 3, ¶ 4, Miller Decl. Ex. A.)

At a February 25, 2008, hearing, Judge Larson reconfirmed his commitment to the stay of Phase 2 discovery:

---

[1]      The "MGA Parties" are MGA Entertainment, Inc. ("MGA"), MGA Entertainment (HK) Limited ("MGA HK"), MGAE de Mexico, S.R.L. de C.V. ("MGA Mexico") and Isaac Larian.

-1-

EXHIBIT 2
PAGE 11

1       MR. COREY, IF I LIFT THE STAY ON PHASE TWO
         DISCOVERY, I CAN'T IMAGINE WHAT THAT

2       WOULD DO. I MEAN, POOR JUDGE INFANTE. I
         JUST COULDN'T DO THAT TO HIM. I JUST

3       COULDN'T. THAT WOULD DERAIL THIS
         LITIGATION. BASED ON HOW -- AND I'M NOT

4       POINTING ANY FINGERS HERE, THIS IS JUST
         ACROSS THE BOARD -- HOW DISCOVERY HAS

5       BEEN CONDUCTED, THE MILLIONS OF
         DOCUMENTS; THE, I DON'T KNOW, UNTOLD

6       NUMBER OF DEPOSITIONS AND THE
         INTERROGATORIES AND RFA'S; TO LIFT STAY

7       TWO DISCOVERY DURING THIS CRITICAL PERIOD
         AS WE'RE TRYING TO DO THE MOTIONS, THE

8       PRETRIAL ORDERS, AND GET READY FOR THE
         FIRST TRIAL IN MAY, WHICH IS GOING FORWARD

9       IN MAY, TO START IN ON FULL SCALE PHASE
         TWO DISCOVERY, THAT'S UNFATHOMABLE.

10

(Reporter's Tr. of Proceedings, Feb. 25, 2008, at 30:7-19, Miller Decl. Ex. D).

11

12      Meanwhile, on February 11, 2008, this Court held a hearing on the Motion to

Compel along with 10 other pending motions. (Miller Decl. ¶ 4.)  At the February

13

11, 2008, hearing, counsel for the MGA Parties informed the Court of the stay of

14

Phase 2 discovery:

15

16       ON A PROCEDURAL FRONT ALSO, ON FEBRUARY
         4, JUDGE LARSON CLARIFIED, AND THAT

         CLARIFICATION WAS NEEDED, THAT PHASE II

17       DISCOVERY IS BIFURCATED. AND I SUBMIT, AT
         LEAST AS TO QUESTIONS 43, 44, 48, 49, 50, ARE

18       CLEARLY ALL PHASE II, AND THERE MAY BE
         PORTIONS OF SOME OF THE OTHERS THAT ARE

19       AS WELL.

20

(Telephonic Tr. of Proceedings, Feb. 11, 2008, at 34:6-12, Miller Decl. Ex. B.)

21      As mentioned above, on February 15, 2008, this Court issued its Order

22  Granting in Part and Denying in Part Mattel's Motion to Compel Responses to

23  Interrogatory Nos. 27-44 and 46-50 by the MGA Parties.  That order does not

24  expressly address the effect of Judge Larson's stay of Phase 2 discovery.

25      As discussed in more detail below, Interrogatory Nos. 41 (except with respect

26  to Carter Bryant), 43 and 44 seek discovery related to Phase 2 and, therefore, any

27  further obligation to respond to those interrogatories has been stayed by Judge

28  Larson.  Interrogatory No. 41 seeks information about former Mattel employees

MGA PARTIES' MOTION FOR CLARIFICATION OF FEB. 15, 2008, ORDER

EXHIBIT ___2___

PAGE ___12___

1 hired by MGA to support Mattel's claims of trade secret misappropriation, and

2 Interrogatories Nos. 43-44 relate to MGA's Phase 2 claims of copying and

3 infringement by Mattel. The February 15, 2008, Order also compels additional

4 responses from MGA Mexico. That entity did not come into existence until April

5 2004 and thus all claims against that entity relate to Phase 2.

6       As Mattel argued in a recent filing, Judge Larson "clarified what was in Phase

7 1 and Phase 2 in [his] July 2, 2007 Minute Order." (Mattel Inc.'s Opp'n to MGA

8 Defendants' Ex Parte Application to Compel the Depositions of Matthew Bousquette

9 and Tina Patel at 9:7-8, Miller Decl. Ex. E.) Mattel quoted the following passage

10 from Judge Larson's order:

> 11     Phase 1(a) would be limited to issues surrounding Carter
> Bryant's employment with Mattel, and how those issues
> 12 impact the ownership of certain original Bratz drawings,
> while Phase 1(b) would address approximately two-
> 13 hundred Bratz products that are potentially derivative of
> the original drawings. This approach has the appeal of
> 14 limiting Phase 1(a) to discrete issue of the ownership of the
> original Bratz drawings. A finding that Bryant owns these
> 15 original drawings in Phase 1(a) has the potential to
> eliminate the need for Phase 1(b).
> 16

17 (July 2, 2007 Minute Order at 2, Miller Decl. Ex. F.)

18       The information sought by Mattel in Interrogatory Nos. 41 (except with

19 respect to Carter Bryant), 43 and 44 has nothing to do with Carter Bryant's

20 employment with Mattel or the ownership of Carter Bryant's Bratz drawings. Mattel

21 named MGA Mexico as a defendant in its counterclaims of trade secret

22 misappropriation, clearly a Phase 2 claim. Accordingly, the MGA Parties

23 respectfully request an order clarifying the February 15, 2008, Order to make clear

24 that any obligation of the MGA Parties' under that order to supplement their

25 responses to Interrogatory Nos. 41 (except with respect to Carter Bryant) and 43-44,

26 and MGA Mexico's obligation to further respond to any of Mattel's interrogatories,

27 is stayed pursuant Judge Larson's February 4, 2008, Minute Order.

28

MGA PARTIES' MOTION FOR CLARIFICATION OF FEB. 15, 2008, ORDER

EXHIBIT 2
PAGE 13

1

**ARGUMENT**

2    I.    **THE COURT SHOULD CLARIFY ITS FEBRUARY 15, 2008, ORDER**
**TO CONFIRM THAT ANY OBLIGATION IN THAT ORDER TO**
3    **PROVIDE DISCOVERY RELATED TO PHASE 2 IS STAYED UNDER**
**JUDGE LARSON'S FEBRUARY 4, 2008, MINUTE ORDER**
4

5        The MGA Parties respectfully submit that Interrogatories Nos. 41 (except with

6    respect to Carter Bryant), 43 and 44, and all interrogatories to the extent they are

7    directed to MGA Mexico, relate to Phase 2 and, therefore, any further response to

8    those interrogatories has been stayed by Judge Larson.

9        A.    **Interrogatory No. 41**

10       Interrogatory No. 41 seeks information concerning MGA's hiring of former

11   Mattel employees, as follows:

12              IDENTIFY all PERSONS who at any time have been
            employed by or under contract with MATTEL who are
13              now or have been employed by or under contract with
            YOU since January 1, 1999, and, for each such PERSON,
14              state his or her name, date of hire or effective date of
            contract, the date on which YOU first had contact with
15              such PERSON regarding potential employment or
            contracting, the date(s) on which such PERSON was
16              interviewed for possible employment or contracting, each
            title (if any) such PERSON has held while employed by or
17              under contract with YOU, and the date of termination (if
            applicable).
18

19   Prior to the stay of Phase 2 discovery, the MGA Parties provided "a list of well over

20   a hundred individuals with their position title and employment dates." (Feb. 15,

21   2008, Order at 10:13-14, Miller Decl. Ex. C)  The Court compelled supplemental

22   responses to this interrogatory, in part, ordering the MGA Parties to "provide the

23   interview dates for each of the individuals identified in their supplemental

24   responses." (*Id.* at 11:1-2, Miller Decl. Ex. C)

25       The Court based it order compelling further response to Interrogatory No. 41

26   on its conclusion that "[t]he interview dates are potentially relevant to Mattel's claim

27   that the MGA parties induced former Mattel employees to abscond with Mattel's

28   trade secrets." (*Id.* at 11:2-3, Miller Decl. Ex. C)  With the exception of Mattel's

-4-

EXHIBIT __2__
PAGE __14__

1 claims that MGA misappropriated Bratz when it acquired Bratz from Carter Bryant,

2 Mattel's claims of trade secret theft through the hiring of former Mattel employees

3 relate to Phase 2 in that they relate to Mattel's counterclaims against the MGA

4 Parties for trade secret misappropriation.  (*See* July 2, 2007, Minute Order at 2

5 (adopting chart of Phase 1 and Phase 2 claims proposed by Mattel at pages 8-9 of

6 Mattel's Memorandum Regarding Trial Structure), Miller Decl. Exs. F & G.)

7 Therefore, any further response to Interrogatory No. 41 (other than with respect to

8 Carter Bryant) is stayed under Judge Larson's February 4, 2008, Minute Order.  (The

9 MGA Parties will provide the ordered supplemental response with respect to Carter

10 Bryant.)

11     **B.     Interrogatories 43 and 44.**

12          As the Court summarized in its February 15, 2008, Order, "Interrogatory Nos.

13 43 and 44 request dates on which each 'concept, design, product, product packaging

14 or other matter that [the MGA Parties] contend Mattel copied or infringed' was (1)

15 'conceived' and (2) 'first fixed in any tangible medium of expression' . . . ."

16 (Feb. 15, 2008, Order at 11:8-11, Miller Decl. Ex. C.)[2]  Thus, by definition,

17

18     [2]     Interrogatories Nos. 43 and 44 read, in full, as follows:

19          For each concept, design, product, product packaging or
       other matter that YOU contend MATTEL copied or
20     infringed, including but not limited to those identified in
       MGA's Responses To Mattel, Inc.'s First Set Of
21     Interrogatories Re Claims Of Unfair Competition,
       Response To Interrogatory No. 2 (and any Supplemental
22     Responses to such Interrogatory), state the date that each
       such concept, design, product, product packaging or other
23     matter was conceived, and IDENTIFY all PERSONS with
       knowledge of, and all DOCUMENTS that REFER OR
24     RELATE TO, the foregoing.

25          For each concept, design, product, product packaging or
       other matter that YOU contend MATTEL copied or
26     infringed, including but not limited to those identified in
       MGA's Responses To Mattel, Inc.'s First Set Of
27     Interrogatories Re Claims Of Unfair Competition,
       Response To Interrogatory No. 2 (and any Supplemental
       Responses to such Interrogatory), state the date that each
28     such concept, design, product, product packaging or other

*(cont'd)*

EXHIBIT 2
PAGE 15

1 Interrogatories Nos. 43 and 44 relate to Phase 2 because they relate to MGA's claims

2 of copying or infringement against Mattel.  (*See* MGA's Complaint for False

3 Designation of Origin, Affiliation, Associate or Sponsorship (15 U.S.C. § 1125(a));

4 Unfair Competition (15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code § 17200 *et seq.*

5 and California Common Law); Dilution (15 U.S.C. § 1125(c), Cal. Bus. & Prof.

6 Code § 14330 and California Common Law); and Unjust Enrichment, at 10-26,

7 Miller Decl. Ex. H.)  Judge Larson deferred all of MGA's affirmative claims against

8 Mattel to Phase 2.  (July 2, 2007, Minute Order at 2 (adopting chart of Phase 1 and

9 Phase 2 claims proposed by Mattel at pages 8-9 of Mattel's Memorandum Regarding

10 Trial Structure), Miller Decl. Exs. F & G.)  Therefore, any further response to

11 Interrogatory Nos. 43 and 44, which relate solely to MGA's claims against Mattel, is

12 stayed under Judge Larson's February 4, 2008, Minute Order.

13       C.    **Interrogatories to MGA Mexico**

14       Mattel does not contend that MGA Mexico was involved in the acquisition or

15 early development of Bratz, nor could it.  MGA Mexico was not formed until April

16 2004, and thus was not in existence when MGA acquired Bratz in 2000 and launched

17 the first generation of Bratz in 2001.  (Mattel's Counterclaim ¶ 37, Miller Decl. Ex.

18 I.)  Mattel claims that MGA Mexico misappropriated Mattel trade secrets through the

19 hiring of former Mattel employees in Mexico.  (*Id.*)  Claims related to MGA Mexico

20 have nothing to do with the ownership of Carter Bryant's original Bratz drawings.

21 Mattel's claims of trade secret misappropriation with respect to the formation of

22 MGA Mexico have been deferred to Phase 2.  (July 2, 2007, Minute Order at 2

23 (adopting chart of Phase 1 and Phase 2 claims proposed by Mattel at pages 8-9 of

24 _____

25 (*cont'd from previous page*)

26         matter was first fixed in any tangible medium of expression
(if ever), and IDENTIFY all PERSONS with knowledge of,

27         and all DOCUMENTS that REFER OR RELATE TO, the
foregoing.

28 (Mattel's Amended Fourth Set of Interrogatories, Miller Decl. Ex. L.)

EXHIBIT ___2___
PAGE ___16___

1  Mattel's Memorandum Regarding Trial Structure), Miller Decl. Exs. F & G.)   Thus,

2  discovery directed to MGA Mexico is stayed.

### CONCLUSION

4        For the foregoing reasons, the MGA Parties respectfully request the Court to

5  clarify its February 15, 2008, Order to make clear that the MGA Parties' obligation

6  to supplement their responses to Interrogatory Nos. 41 (except with respect to Carter

7  Bryant) and 43-44, and MGA Mexico's obligation to supplement any of the

8  interrogatories directed to it, is stayed until further order of Judge Larson lifting his

9  stay on Phase 2 discovery.

11  DATED: March 3, 2008              SKADDEN, ARPS, SLATE, MEAGHER &
                                      FLOM, LLP

13                                    By: _____
14                                          RAOUL D. KENNEDY

15                                    Attorneys for Cross-Defendants
                                      MGA Entertainment, Inc., MGA
16                                    Entertainment (HK) Limited,
                                      MGAE De Mexico, S.R.L. De C.V.,
17                                    and ISAAC LARIAN

-7-

204355-San Francisco Server 1A - MSW

EXHIBIT __2__
PAGE __17__

**Exhibit  3**

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, AN INDIVIDUAL, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| V. | ) CASE NO. CV04-9049 SGL (RNBX) |
| | ) [CONSOLIDATED WITH |
| | ) CASE NO. 04-9059 AND |
| | ) CASE NO. 05-2727] |
| MATTEL, INC., A DELAWARE, A CORPORATION, | ) |
| | ) |
| | ) |
| DEFENDANT. | ) |
| | ) |

# TELEPHONIC TRANSCRIPT OF PROCEEDINGS

# MARCH 10, 2008



REPORTED BY:
ANGELA DUPRE
CSR NO. 7804
JOB NO. 08AD016

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT 3
PAGE 18

1          WE'D REQUEST THAT THE MOTION BE GRANTED;

2    THAT HE BE ORDERED TO APPEAR FOR DEPOSITION.

3    ALTERNATIVELY, AT MINIMUM, WE REQUEST THAT WE BE

4    GIVEN DISPENSATION FROM THE JANUARY 28TH DISCOVERY

5    CUTOFF DATE AND GIVEN A REASONABLE OPPORTUNITY TO

6    GO INTO THE NORTHERN DISTRICT OF ILLINOIS AND

7    APPARENTLY TO BATTLE WITH MR. CALDWELL OVER GETTING

8    A SUBPOENA FOR HIM.

9          AS FAR AS THE SUBSTITUTE RELEVANCY -- WE

10   HAVE TWO DEPOSITIONS HERE, BOTH OF MR. BOUSQUETTE

11   AND PATEL.  AND JUST SUMMARIZING VERY BRIEFLY, EVEN

12   THOUGH MR. BOUSQUETTE MAY NOT HAVE BEEN AROUND IN

13   2000 AND 2001, HE WAS THE CHAIR OR LEADER OF THE

14   MATTEL COMMITTEE, WHICH IN 2004 RADICALLY AMENDED

15   THE EMPLOYEE AGREEMENTS TO SUBSTANTIALLY INCREASE

16   WHAT THEY COVERED OVER WHAT THEY COVERED AT THE

17   TIME MR. BRYANT WAS THERE.  PLUS YOU HAVE YOUR

18   SUBSEQUENT REPAIRS CASE, WHY DID YOU CHANGE THOSE

19   WORDS, AND WHAT WAS THE PURPOSE FOR IT?

20          AND THEN MS. PATEL IS ACTUALLY A FORMER

21   MGA EMPLOYEE, WHO HAS ENORMOUS KNOWLEDGE CONCERNING

22   WHAT IT TAKES FOR A SUCCESSFUL PRODUCT AND HAS

23   WORKED AT BOTH MGA AND MATTEL, CLEARLY PHASE I

24   ISSUES.

25          THERE IS A LOT THERE AND A LOT HAS

72

EXHIBIT __3__
PAGE ___19___

1   HAPPENED RECENTLY.   IF YOUR HONOR HAS ANY

2   QUESTIONS, PLEASE LET ME KNOW.

3        JUDGE INFANTE:   GO AHEAD.   YES.

4   MR. COREY:   YOUR HONOR, THIS IS JON COREY.

5        THERE WAS SOME PAPER THAT WAS SUBMITTED

6   TO THE DISCOVERY MASTER ON -- ON FRIDAY.   AND I

7   DON'T KNOW IF THE DISCOVERY MASTER HAS HAD AN

8   OPPORTUNITY TO LOOK AT THAT OR NOT.

9        BUT YOU'LL FIND TWO THINGS CONSPICUOUSLY

10  ABSENT FROM ANY OF THIS:   NUMBER ONE IS A PROOF OF

11  SERVICE OF A DEPOSITION FOR MR. BOUSQUETTE FROM THE

12  NORTHERN DISTRICT OF ILLINOIS, WHERE HE NOW

13  RESIDES, AND WHERE HE HAS RESIDED FOR QUITE A

14  WHILE; AND NOR WILL YOU FIND ANY -- EITHER REQUESTS

15  OR RESPONSE, ON BEHALF OF QUINN EMANUEL, SUGGESTING

16  THAT WE WERE -- THAT MY FIRM WAS ENTITLED -- OR

17  AUTHORIZED TO ACCEPT SERVICE OF A SUBPOENA ON

18  BEHALF OF MR. BOUSQUETTE.

19        AND WE'VE PUT IN OUR PAPERS, AND WE'VE

20  MADE THIS VERY CLEAR REPEATEDLY TO COUNSEL FOR MGA,

21  BOTH CURRENT COUNSEL AND PRIOR COUNSEL, IF THEY

22  WANTED TO SERVE A DEPOSITION SUBPOENA ON A FORMER

23  EXECUTIVE, THEY WOULD ASK AND -- THEY WOULD ASK US

24  AND WE WOULD FIND OUT IF WE WERE ABLE TO DO THAT.

25        NO SUCH REQUEST WAS EVER MADE WITH

73

EXHIBIT 3
PAGE 20

1   RESPECT TO MR. BOUSQUETTE.  AND I THINK THAT,

2   REALLY, WITH RESPECT TO MR. BOUSQUETTE IS AS FAR AS

3   THE DISCOVERY MASTER NEEDS TO GO ON THIS PARTICULAR

4   MOTION.

5          IF THERE IS AN ISSUE -- IF MGA CAN SHOW

6   THAT THE DEPOSITION SUBPOENA WAS PROPERLY SERVED,

7   THEY CAN TAKE THAT IN FRONT OF A MAGISTRATE JUDGE

8   IN THE NORTHERN DISTRICT OF ILLINOIS AND CAN COMPEL

9   IT THERE.

10          IT'S NOT AN ISSUE FOR -- IT'S NOT AN

11  ISSUE THAT EITHER JUDGE LARSON OR YOUR HONOR HAS

12  THE JURISDICTION TO RULE UPON.

13          WITH RESPECT TO THE SUBJECT MATTER -- OR

14  THE ISSUES REGARDING WHETHER MR. BOUSQUETTE AND

15  MS. PATEL FALL WITHIN THE SCOPE OF PHASE I OR

16  PHASE II, WE'VE IDENTIFIED IN -- ON PAGES 6 AND 7

17  OF OUR BRIEF, EXACTLY WHAT MGA THOUGHT, AS OF A

18  COUPLE MONTHS AGO, WHAT INFORMATION MS. PATEL AND

19  MR. BOUSQUETTE HAD.

20          IT'S EXCLUSIVELY RELATED TO PHASE II.  IT

21  RELATES SPECIFICALLY TO THE UNFAIR COMPETITION AND

22  UNCLEAN HANDS CLAIM -- UNCLEAN HANDS DEFENSE.  AND

23  THE UNCLEAN HANDS DEFENSE, I BELIEVE THE DISCOVERY

24  MASTER IS AWARE MGA HAS WITHDRAWN THAT, WITH

25  RESPECT TO ALL OF THE PHASE I CLAIMS THAT MATTEL IS

EXHIBIT 3
PAGE 21

1  STATE OF CALIFORNIA        )

                             )   SS.

2  COUNTY OF LOS ANGELES      )

3

4          I,    ANGELA DUPRE   , CERTIFIED

5  SHORTHAND REPORTER, CERTIFICATE NUMBER 7804, FOR

6  THE STATE OF CALIFORNIA, HEREBY CERTIFY:

7          THE PROCEEDINGS WERE RECORDED

8  STENOGRAPHICALLY BY ME AND WERE TRANSCRIBED TO THE

9  BEST OF MY ABILITY;

10          THE FOREGOING TRANSCRIPT IS A TRUE AND

11  CORRECT TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN;

12          I FURTHER CERTIFY THAT I AM NEITHER

13  COUNSEL FOR NOR RELATED TO ANY PARTY TO SAID ACTION

14  NOR IN ANY WAY INTERESTED IN THE OUTCOME THEREOF.

15          IN WITNESS WHEREOF, I HAVE HEREUNTO

16  SUBSCRIBED MY NAME THIS 17th DAY OF

17  March          , 2008.

18

19

20

21  _____

22

23

24

25

90

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

EXHIBIT 3
PAGE 22

**Exhibit  4**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1            UNITED STATES DISTRICT COURT

2           CENTRAL DISTRICT OF CALIFORNIA

3               EASTERN DIVISION        Certified Copy

4     -----------------------------

5     MATTEL, INC., a Delaware        )

6     corporation,                    )

7               Plaintiff,            )

8          vs.                        ) No. CV04-9059

9     CARTER BRYANT, an individual; ) NM (RNBx)

10    and DOES 1 through 10,          )

11    Inclusive,                      )

12               Defendants.          )

13    -----------------------------)

14    AND RELATED COUNTER-CLAIM       )

15    -----------------------------

16

17        CONFIDENTIAL - ATTORNEYS' EYES ONLY

18

19    Videotaped Deposition of ROBERT A. ECKERT,

20    taken at 1985 East Grand Avenue, El Segundo,

21    California, commencing at 8:04 A.M., Monday,

22    January 28, 2008, before Kathleen E.

23    Barney, CSR No. 5698.

24

25    PAGES 1 - 196

1

EXHIBIT 4
PAGE 23

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES OF COUNSEL:

 2

 3    FOR THE PLAINTIFF:

 4

 5        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

 6        BY:   JOHN B. QUINN

 7              BRIDGET A. HAULER

 8        865 South Figueroa Street

 9        10th Floor

10        Los Angeles, California   90017

11        (213) 624-7707

12        johnquinn@quinnemanuel.com

13        bridgethauler@quinnemanuel.com

14

15        MATTEL, INC.

16        BY:   BOB NORMILE

17        Senior Vice President

18        General Counsel & Secretary

19        333 Continental Boulevard

20        El Segundo, California   90245

21

22

23

24

25
                                                          2
```

EXHIBIT  4
PAGE  24

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES OF COUNSEL (CONTINUED):

 2

 3    FOR DEFENDANT MGA ENTERTAINMENT, INC.:

 4

 5         SKADDEN, ARPS, SLATE, MEAGHER & FLOM

 6         BY:  THOMAS J. NOLAN

 7              ROBERT J. HERRINGTON

 8         300 South Grand Avenue

 9         Los Angeles, California  90071-3144

10         (213) 687-5000

11         tnolan@skadden.com

12         rherring@skadden.com

13

14

15    ALSO PRESENT:

16

17         RYAN GULINO, VIDEOGRAPHER

18

19

20

21

22

23

24

25
                                              3
```

EXHIBIT __4__
PAGE __25__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1          Q.   Do you have a recollection of what you

2      learned when you started to study the performance of

3      Barbie shortly after coming aboard at Mattel?

4          A.   No, I don't remember.

5          Q.   Do you know whether or not the sales were      08:14

6      trending up for Barbie or trending down?

7               MR. QUINN:   Vague and ambiguous.

8               THE WITNESS:   Can I answer?

9               MR. QUINN:   Yes.   Unless I instruct you not

10     to answer, you always can.                              08:14

11              THE WITNESS:   No, I don't remember.

12     BY MR. NOLAN:

13         Q.   Did you -- did you request and cause a

14     management change in terms of the organization of the

15     fashion doll line at Mattel shortly after you came     08:15

16     aboard?

17         A.   Not that I remember.

18         Q.   How many direct reports did you have in

19     2000?

20         A.   May I take a moment to count in my head?      08:15

21         Q.   Please.

22         A.   I believe it was five.

23         Q.   And who were they, if you can recall for us?

24         A.   Bob Normile, Kevin Farr, Alan Kaye, Matt

25     Bousquette, Neil Friedman.   There would be a sixth,   08:16
                                                               14

EXHIBIT   4
PAGE ___ 26

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    Adrienne Fontanella.

2          There may have been others, but those are

3    the ones I can recall.

4       Q.  Had you worked for any of these -- I'm

5    sorry.  Had you worked with any of these direct          08:16

6    reports prior to coming to Mattel?

7       A.  No.

8       Q.  What position did Matt Bousquette have when

9    you joined Mattel?

10      A.  I don't remember the specific title.             08:16

11      Q.  Generally do you have an idea of what his

12   area of responsibility was?

13      A.  Yes.

14      Q.  What was that?

15      A.  Boys toys and perhaps international.              08:16

16      Q.  What about Neil Friedman, what was his area

17   of responsibility?

18      A.  Fisher Price brands and manufacturing.

19      Q.  And same question for Adrienne Fontanella,

20   what was her area of responsibility?                     08:17

21      A.  Girls toys.

22      Q.  Responsibility for girls toys, would that

23   include the Barbie line?

24      A.  Yes.

25      Q.  As part of your responsibility as chairman        08:17

                                                                15

EXHIBIT 4
PAGE 27

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    and CEO, do you talk to analysts on a quarterly

 2    basis?

 3         A.  I do.

 4         Q.  And is that in relationship to earnings

 5    reports that are issued by Mattel?                    08:17

 6         A.  Yes.

 7         Q.  And as a -- Mattel is a public company,

 8    correct?

 9         A.  That's correct.

10         Q.  Its shares are registered on what exchange?  08:17

11         A.  The New York Stock Exchange, and there may

12    be others.

13         Q.  And as a public company, are you required to

14    discuss with analysts the results of the quarterly

15    performances of Mattel?                               08:17

16         A.  I don't believe so.

17         Q.  But as a practice, since joining Mattel,

18    have you had quarterly analyst phone calls?

19         A.  Yes.

20         Q.  Did you review the analyst reports -- I'm    08:18

21    sorry.

22              Did you review, over the last three days,

23    transcripts of your various earnings calls with

24    analysts?

25         A.  No.                                          08:18
                                                              16
```

EXHIBIT ___4___
PAGE ___28___

CONFIDENTIAL - ATTORNEYS' EYES ONLY

REDACTED

EXHIBIT 4
PAGE 29

CONFIDENTIAL - ATTORNEYS' EYES ONLY

08:26

)8:26

**REDACTED**

8:27

3:27

:27
23

Merrill National Deposition & Litigation Services
866 299-5127

EXHIBIT __4__
PAGE __30__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1

 2

 3

 4

 5                                                    08:28

 6

 7

 8

 9

10                                                    08:28

11

12

13                REDACTED

14

15                                                    08:28

16

17

18

19

20                                                    08:28

21

22

23

24

25                                                    08:28
                                                        24
```

EXHIBIT __4__
PAGE ___31___

1

2

3

4

5                                                                    08:28

6

7

8

9

10                                                                   08:29

11

12

13

14

15                                                                   08:29

16

17

18

19

20                                                                   08:29

21

22

23

24

25                                                                   08:29
                                                                     25

EXHIBIT __4__
PAGE __32__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    STATE OF CALIFORNIA      )
                               ) ss
 2    COUNTY OF LOS ANGELES    )

 3

 4          I, Kathleen E. Barney, a Certified Shorthand

 5    Reporter, do hereby certify:

 6          That prior to being examined, the witness in

 7    the foregoing proceedings was by me duly sworn to

 8    testify to the truth, the whole truth, and nothing

 9    but the truth;

10          That said proceedings were taken before me

11    at the time and place therein set forth and were

12    taken down by me in shorthand and thereafter

13    transcribed into typewriting under my direction and

14    supervision;

15          I further certify that I am neither counsel

16    for, nor related to, any party to said proceedings,

17    nor in anywise interested in the outcome thereof.

18          In witness whereof, I have hereunto

19    subscribed my name.

20

21    Dated: February 13, 2008

22

23

24          Kathleen E. Barney

25          Kathleen E. Barney, CSR No. 5698
                                                    194
```

EXHIBIT  4
PAGE  33

**Exhibit 5**

# MGA Entertainment, Inc. v. Mattel, Inc., et al.

Case No. CV 05-2727

Expert Report of Paul K. Meyer

February 11, 2008

Paul K. Meyer

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT 5
PAGE 34

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................... 2

   A.  Navigant Consulting, Inc. / Qualifications............................................................. 2

   B.  Assignment............................................................................................................ 3

   C.  Discovery Has Not Been Completed ..................................................................... 3

   D.  The Accused Property Subject To Copyright Protection....................................... 4

II.  SUMMARY OF OPINIONS ................................................................................... 5

III. MATTEL AND MGA .............................................................................................. 7

IV. OPINIONS ................................................................................................................ 8

   A.  MGA Deductible Expenses.................................................................................... 8

   B.  Apportionment Factors And Considerations........................................................ 11

     1.  Design Of The Doll...................................................................................... 15

     2.  Themes Associated With The Dolls ............................................................. 19

     3.  Fashions Sold With The Dolls ...................................................................... 24

     4.  Accessories Sold With The Dolls ................................................................. 28

     5.  Characters Associated With The Doll Line ................................................... 30

     6.  Packaging In Which The Dolls Are Sold...................................................... 35

     7.  MGA's Branding, Marketing And Advertising Efforts................................ 38

   C.  Apportionment Approaches .................................................................................. 42

     1.  Apportionment Approach: Mattel's studies of "Key Fashion Doll Attributes" in conjunction with the creative elements to develop a fashion doll ..................... 43

     2.  Apportionment Approach: Royalties paid by MGA to Mr. Bryant for his contributions to the Bratz doll line........................................................................................... 47

     3.  Apportionment Approach: Work tasks to develop the original Bratz doll ...... 48

     4.  Apportionment Approach: MGA's Bratz product development contributions ... 50

     5.  Apportionment Approach: MGA's "licensing in" and "licensing out" royalty rates ........ 50

     6.  Apportionment Approach: MGA's investments in the Bratz product line ........ 51

     7.  Apportionment Approach: Sales variation among Bratz products ................... 52

     8.  Summary Of Apportionment Analyses......................................................... 54

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT ___5___
PAGE ___35___

Expert Report of Paul K. Meyer

# I. INTRODUCTION

### A. Navigant Consulting, Inc. / Qualifications

1. I am a Managing Director at Navigant Consulting, Inc ("NCI") and a co-leader of NCI's national intellectual property practice. NCI is an international business, economic, financial and damages consulting company that provides services to business entities, individuals and counsel. NCI has approximately 2,000 professionals in over forty offices throughout the United States, Canada, Europe and China.

2. I am a Certified Public Accountant, Certified Fraud Examiner and accredited in business valuation (CPA-ABV). I am a Consulting Professor at Stanford University in the Graduate School of Engineering, where I have been co-teaching accounting, quantitative methods and financial issues for over fifteen years. I am also a member of the Advisory Board for the McIntire School of Commerce at the University of Virginia. I graduated from the University of Virginia in 1979.

3. Before joining NCI in February 2004, I was co-founder and President of Tucker Alan Inc. Tucker Alan Inc. was a business, economic, financial and damages consulting company with approximately 350 employees and 13 offices in the United States. Prior to founding Tucker Alan Inc. in July 1994, I was employed by Peterson Consulting, an international consulting firm. At Peterson Consulting, I held various positions including Executive Vice President and Member of the Board of Directors. Before joining Peterson Consulting in 1981, I worked for an international public accounting and consulting firm.

4. I am experienced in financial, economic, damage, valuation and accounting matters related to the scope of my work, analysis and study on this matter. I have analyzed and prepared numerous claims for lost profits, reasonable royalties, increased costs and other financial and economic impacts, including matters involving intellectual property misappropriation and infringement. I have also analyzed hundreds of agreements relating to the licensing of intellectual property, determined reasonable royalty rates for the use of intellectual property, and valued intellectual property on numerous occasions. These matters have involved both litigation and non-litigation assignments. I have consulted on matters involving toys, games, rights of publicity and professional sports property licensing and merchandising.

*CONFIDENTIAL – ATTORNEYS' EYES ONLY*

2

EXHIBIT   5
PAGE   36

Expert Report of Paul K. Meyer

5.      My curriculum vitae is included as **ATTACHMENT 1** to this Report. A listing of cases in which I have testified as an expert witness at trial, arbitration and/or deposition during the preceding four years is included as **ATTACHMENT 2** to this Report. My hourly billing rate on this matter is $550. I have no publications during the last ten years. NCI's compensation is not dependent on the outcome of this matter.

## B.      Assignment

6.      I was retained by counsel for MGA Entertainment, Inc. ("MGA") to address damages issues related to Mattel, Inc.'s ("Mattel") allegations set forth in its Second Amended Answer and Counterclaims. That complaint includes a variety of claims made by Mattel against MGA. For purposes of this Report, I will be addressing certain aspects of the purported damages associated with Mattel's copyright claim against MGA. At this point in time, I have been asked to offer an initial opinion regarding MGA's deductible expenses, as well as consider methods of apportioning MGA's profits attributable to the accused copyrighted property as defined in paragraph 12 of this Report.[1]

7.      To the extent Mattel submits damages opinions on additional claims in any initial expert report submitted on February 11, 2008, I will address those opinions in a Rebuttal Report which I understand must be submitted on March 17, 2008.

## C.      Discovery Has Not Been Completed

8.      The opinions in this Report are based on currently available information. I understand that a substantial amount of fact discovery has not been completed and likely will not be completed for another 30 to 45 days. I further understand that this additional discovery relates to damages issues in this case, and in particular, the damages sought by Mattel in connection with the claims asserted in its Second Amended Answers and Counterclaims. I anticipate submitting a Rebuttal Report addressing the propriety of any damages claims submitted by Mattel or experts retained on behalf of Mattel. That Rebuttal Report will also take into account any additional discovery available following the date of this Report. Given the outstanding discovery, my opinions and conclusions may be supplemented, amended or revised.

---

[1] The ultimate scope of the intellectual property allegedly owned by Mattel, and the extent such property is subject to protection, have yet to be determined.

*CONFIDENTIAL – ATTORNEYS' EYES ONLY*

3

EXHIBIT __5__
PAGE __37__

Expert Report of Paul K. Meyer

9.    ATTACHMENT 3 to this Report contains a listing of various documents, data and other information that I have considered in forming my opinions in this matter. I have also had discussions with MGA personnel including:

- Paula Garcia, *MGA Vice President of Product Design and Development*
- Ken Kaufman, *MGA Vice President of Advertising*
- Steffen Smith, *MGA Director of Structural Engineering -- Creative Package Development*
- Aileen Storer, *MGA Packaging*
- Anise Evans, *MGA Director of Financial Planning*

I have also had discussions with other experts retained on behalf of MGA, including:

- Robert Tonner
- Erich Joachimsthaler, Ph.D.
- Peter Menell, J.D., Ph.D.
- Tina Tomiyama

10.    Selected pages of the documents and information listed on ATTACHMENT 3 may be used as exhibits to summarize or support my opinions. Additionally, I may prepare graphical or illustrative exhibits to use at trial based on the documents and information relied upon and my analysis of those documents and information.

### D.  The Accused Property Subject To Copyright Protection

11.    According to Mattel's Second Amended Answer and Counterclaims dated July 12, 2007, the accused property includes the intellectual property associated either directly or indirectly with the Bratz fashion doll line that Mattel claims it owns. In its Second Amended Answer and Counterclaims, Mattel describes the accused property as: "the concept, design and name of Bratz," and "drawings and three-dimensional models of Bratz dolls, and fashion designed for the dolls, associated clothing and accessories."[2] I understand that MGA and Carter Bryant dispute these claims. The scope of the accused property, if any, that Mattel owns has not been determined and will not be determined until sometime after the submission of this Report and my

---

[2] Mattel, Inc.'s Second Amended Answer In Case No. 05-2727 And Counterclaims ("Mattel's Second Amended Answer And Counterclaims"), July 12, 2007, p. 35.

*CONFIDENTIAL – ATTORNEYS' EYES ONLY*

4

EXHIBIT 5

PAGE 38

Rebuttal Report.  My opinions in this Report may be supplemented, amended or revised based upon the ultimate determination of the scope of the accused property, if any, that Mattel owns.

12.   For purposes of this Report, I have accepted certain assumptions as to the scope of the accused property allegedly owned by Mattel.  The accused property is assumed to include drawings Carter Bryant created prior to his departure from Mattel that allegedly are subject to copyright protection.[3]   This Report specifically addresses damages issues relevant to the copyright infringement claims.  My opinions in this Report may be supplemented, amended or revised based upon the ultimate determination of the scope of the accused copyrighted property, if any, that Mattel owns.

## II. SUMMARY OF OPINIONS

13.   In this Report, I express opinions related to damages asserted by Mattel in connection with copyright claims it asserts in this matter.  I understand damages for copyright infringement may be based on the plaintiff's actual damages and/or the defendant's profits, to the extent they are not duplicative of plaintiff's actual damages, if any.  When measuring the defendant's profits from any infringing products, the copyright statute provides that, "…the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." (emphasis added)[4]   Determining the elements of profit attributable to factors other than the copyrighted work is referred to as apportionment of profit.

14.   The opinions in this Report include (a) an initial analysis of MGA's deductible expenses in connection with the development, production and sale of Bratz-related products, and (b) the determination of the elements of profit attributable to factors other than the copyrighted work.  I provide apportionment percentages indicating the split of profits between the accused copyrighted property and other factors.[5]

---

[3] Mattel states in its Second Amended Answer And Counterclaims that "Mattel is the owner of copyrights in works that are fixed in tangible media expression and that are the subject of valid, and subsisting, copyright registrations owned by Mattel. These include, without limitation, the works that are the subject of Registrations VA 1-378-648, VA 1-378-649, VA 1-378-650, VA 1-378-651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-378-655, VA 1-378-656, VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-378-660, VAu 715-270, VAu 715-271 and VAu 715-273." Mattel's Second Amended Answer And Counterclaims, July 12, 2007, p. 53-54.
[4] 17 U.S.C. § 504(b).
[5] If experts on behalf of Mattel put forth a claim for lost sales and profits, I will address any such claim in my Rebuttal Report.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT  5
PAGE  39

Expert Report of Paul K. Meyer

15.    MGA's deductible expenses in connection with the production and sale of Bratz-related products include (1) expenses that are tracked by MGA to a specific product, such as the manufacturing cost of a product,[6] (2) relevant expenses allocated to subsets of MGA products, such as selling discounts and allowances for SKU-related sales, and (3) other relevant expenses, such as general and administrative expenses.   The results of my initial analysis of deductible expenses are described in Section A below and summarized on ATTACHMENTS 4 and 5.

16.    Factors other than the accused copyrighted property that contribute to the profits generated by the sale of Bratz-related products by MGA include, but are not limited to: (1) design of the doll; (2) development of the characters associated with the doll line; (3) development of themes associated with the dolls; (4) development of fashions sold with the dolls; (5) development of accessories sold with the dolls; (6) packaging in which the dolls are sold; and (7) MGA's branding, marketing and advertising efforts.[7]  MGA's significant contributions to the generation of sales and profits of the Bratz fashion doll line are addressed in detail in Section B (Apportionment Factors And Considerations) below.

17.    In developing percentages to apportion MGA's profits attributable to the accused copyrighted property, I have considered and analyzed the following apportionment approaches:

1.   Mattel's studies of "Key Fashion Doll Attributes" in conjunction with the creative elements to develop a fashion doll;

2.   Royalties paid by MGA to Mr. Bryant for his contributions to the Bratz doll line;

3.   Work tasks to develop the original Bratz doll;

4.   MGA's Bratz product development contributions;

5.   MGA's "licensing in" and "licensing out" royalty rates;

6.   MGA's investments in the Bratz product line; and

7.   Sales variation among Bratz products.

18.    Based on the information available to date, my apportionment analysis indicates that approximately 14.3% to 25.0% of MGA's profits earned from sales of allegedly infringing

---

[6] Products are often referred to as "SKUs," or Stock Keeping Units.  Each finished product sold by MGA is assigned a unique SKU number for purposes of management and accounting within MGA.

[7] MGA's branding efforts have played a significant role in the success of Bratz.  I understand that another expert retained on behalf of MGA, Dr. Erich Joachimsthaler, Ph.D., is addressing the importance of branding in his expert report.

*CONFIDENTIAL – ATTORNEYS' EYES ONLY*

6

EXHIBIT   5

PAGE   40

Expert Report of Paul K. Meyer

products are attributable to the accused copyrighted property.[8]  My apportionment approaches are described in Section C (Apportionment Approaches) below and in the related ATTACHMENTS.

## III. MATTEL AND MGA

19.  MGA[9] is a privately-held company founded by Isaac Larian in 1979 as a small consumer electronics business in the San Fernando Valley.[10]  In 1987, MGA entered the toy business when it began marketing handheld video games featuring licensed Nintendo characters.[11]  MGA later began marketing products for other popular licensed properties, such as the Power Rangers and Hello Kitty.[12]  In 2001, MGA introduced a new line of dolls known as Bratz, multi-ethnic fashion dolls that "sport[ed] a fresh new urban and contemporary look and fashion."[13]  Today, in addition to Bratz, MGA sells a variety of toys, dolls and games, such as Yummi-Land Ice Cream Pop Girls, Storytime Princess Collection, Rescue Pets and Big Fish Lil' Fish.[14]

20.  Mattel was incorporated in 1948 and is headquartered in El Segundo, California.[15]  In 1959, Mattel introduced the first Barbie doll.[16]  According to its public filings, Mattel designs, manufactures and markets a broad variety of toys worldwide through its Mattel Girls & Boys Brands, its Fisher-Price Brands and its American Girl Brands.[17]  The US segment of the Mattel Girls & Boys Brands includes Barbie fashion dolls and accessories, My Scene, Barbie Collector

---

[8] I understand that other experts retained on behalf of MGA will address substantial differences between the Bratz doll and the drawings included in the accused copyrighted property, as alleged.  One of the factors identified as important to the success of Bratz is the "design of the doll."  In this Report, I do not attempt to split the category "design of the doll" between the various functions that contribute to doll design, including the accused copyrighted property, new drawings, sculpt, face paint and hair, as examples.  If such a split were performed, it would reduce apportionment percentages summarized in Section C related to the accused copyrighted property.
[9] Until 2002, MGA conducted business under the name ABC International Traders, Inc.  "Independent Auditors' Report" of MGA Entertainment, Inc, Deloitte & Touche LLP, October 8, 2002, MGA7352-62 at 52.
[10] MGA's Complaint For False Designation of Origin, Affiliation, Association or Sponsorship; Unfair Competition; Dilution; and Unjust Enrichment ("MGA's Complaint"), April 13, 2005, p. 2.
[11] MGA's Complaint, April 13, 2005, p. 2.
[12] MGA's Complaint, April 13, 2005, p. 2.
[13] MGA's Complaint, April 13, 2005, p. 2.  A third party research firm acknowledged that "[c]ompared to Barbie, Bratz dolls are seen by tweens and buyers for chains such as Toys 'R' Us as having more style, being more edgy, and consequently offering more interest to older girls."  "The U.S. Tweens Market," Packaged Facts, April 2003, p. 18.
[14] http://www.mgae.com/Fall_2007_Product_Pages/Products/Brandsindex.asp.
[15] Mattel, Inc. Form 10-K for the period ended December 31, 2006, p. 3.
[16] http://www.mattel.com/about_us/history/default.asp?f=true.
[17] Mattel, Inc. Form 10-K for the period ended December 31, 2006, p. 3.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT __5__
PAGE __41__

Expert Report of Paul K. Meyer

and "Other Girl Brands."[18]  "Other Girl Brands" have included products such as Diva Starz, What's Her Face, and Flavas.[19]

21.    Sales of Barbie peaked at approximately $1.8 billion in 1997, followed by a 14% "plummet" in 1998.[20]  Adrienne Fontanella, Mattel's former President of Barbie, Large Dolls and Small Dolls, said in 2000 that "'[t]he world changed very quickly, and we missed a beat.'"[21]  Mattel's response in 2000 included redesigning Barbie's packaging, "to put more light into the box" by removing cardboard from the front and adding transparent plastic "for a cleaner presentation" that was "'just delicious to look at.'"  Mattel also "launch[ed] more Barbie dolls aimed at pre-teen girls, using strands of hair studded with rhinestones, street-fashion clothing and a first-ever Barbie bellybutton."[22]  By 2006, sales of Barbie had declined to $1.2 billion worldwide.[23]

## IV. OPINIONS

22.    I discuss my analysis and resulting opinions in the following three sections.  In Section A, I describe my initial analysis of MGA's deductible expenses.  In Section B, I discuss apportionment factors that contributed to the successful development and generation of profits for the Bratz product line.  Lastly, in Section C, I address apportionment approaches and the resulting apportionment percentages to be applied against Bratz profits from sales of allegedly infringing products.  My findings are based on currently available information and working assumptions regarding the scope of the accused copyrighted property.

### A.    MGA Deductible Expenses

23.    In anticipation of Mattel submitting a damages claim for copyright infringement, I have performed initial analysis related to aggregating and summarizing the deductible costs and expenses from MGA's sales of its Bratz products.  I continue to review the nature of MGA's costs and will finalize my deductible costs analysis and allocation methods upon receiving

---

[18] Mattel, Inc. Form 10-K for the period ended December 31, 2006, p. 3.
[19] Mattel, Inc. Form 10-K for the period ended December 31, 2003, p. 19.
[20] "Let's Play Makeover Barbie-For Doll's Revival, Mattel Banks On Trendy Clothes, Lip Gloss And A Bellybutton," The Wall Street Journal, February 17, 2000.
[21] "Let's Play Makeover Barbie-For Doll's Revival, Mattel Banks On Trendy Clothes, Lip Gloss And A Bellybutton," The Wall Street Journal, February 17, 2000.
[22] "Let's Play Makeover Barbie – For Doll's Revival, Mattel Banks On Trendy Clothes, Lip Gloss And A Bellybutton," The Wall Street Journal, February 17, 2000.
[23] "Let's Play Makeover Barbie – For Doll's Revival, Mattel Banks On Trendy Clothes, Lip Gloss And A Bellybutton," The Wall Street Journal, February 17, 2000; Deposition of Kevin Farr (rough), January 28, 2008, p. 11.

*CONFIDENTIAL – ATTORNEYS' EYES ONLY*

8

EXHIBIT   5
PAGE   42

Expert Report of Paul K. Meyer

Mattel's damages claims. These summaries are included in **ATTACHMENTS 4** and **5** to this Report.

24. In analyzing the deductible costs and expenses associated with the development, production and sale of Bratz-related products, I have relied upon data from MGA's accounting systems, Great Plains and Axapta, to identify MGA's expenses. Between 2001 and 2005, MGA used the Great Plains accounting system and, beginning in 2006 through the present, switched to the Axapta accounting system. MGA separately maintains a detailed accounting system to track sales, costs of goods sold and returns of products shipped to MGA customers, which I also relied upon. This data resides in MGA's accounting system called Targit. The Targit data contains records reflecting all transactions by product sold to each MGA customer. The Targit data is summarized and transferred to the Axapta/Great Plains systems, which are used to accumulate and report all MGA costs and expenses.[24] Each cost category in the profit and loss statements of MGA was reviewed with Anise Evans, Director of Financial Planning. As noted above, MGA's costs were summarized from contemporaneous MGA accounting records. These costs were incurred in the normal course of MGA's business to support the development, production, management, marketing, selling and administration of Bratz dolls.

25. MGA tracks each product it sells by a SKU number. Between 2001 and 2007, MGA has sold thousands of product SKUs. The profitability of each SKU can be determined by deducting costs tracked by product and other relevant costs from the sales of each SKU. Costs tracked by each product SKU at MGA include cost of goods sold, product returns, tooling and royalty expenses. Other relevant costs include MGA costs that are not tracked by SKU, such as selling discounts and allowances, product development, sales and marketing, salaries and other general and administrative expenses. These other relevant costs would be allocated to MGA products based on factors such as SKU sales or total MGA sales. As MGA's sales have increased since 2001, so have its costs.

26. Certain other relevant costs at MGA are specific to a subset of products sold by MGA. For instance, MGA derives sales revenues from various revenue sources, including product SKUs, entertainment (e.g., television, DVD, theatrical and music) and licensing. A cost such as freight

---

[24] I have also relied upon other contemporaneous financial records produced MGA which are referenced in **ATTACHMENT 3** to this Report and included in my workpapers.

*CONFIDENTIAL – ATTORNEYS' EYES ONLY*

9

EXHIBIT __5__
PAGE __43__

relates primarily to product SKUs. Therefore, freight costs would be allocated based only on sales of product SKUs, and not MGA's other sales such as entertainment and licensing. Other costs and expenses, such as rent, are not attributable to a particular revenue source, and therefore would be allocated based on all of MGA's revenue sources. The basis for allocating costs and expenses is derived from a review of MGA's financial records and statements, as well as discussions with MGA personnel.[25]

27.  In determining deductible costs, I understand that costs that contribute to the development, production, management, marketing, selling and administration of the accused products may be deducted. Sales of Bratz products represent a significant portion of MGA's total company sales since 2001. Significant increases in MGA's sales and marketing, product development and general and administrative expenses have accompanied sales growth in the Bratz product line. The growth in these costs is demonstrated in **ATTACHMENT 4.A**, indicating overall growth rates of over 30.0% during this period for some cost accounts. These costs are necessary for MGA to manage and administer the various functions that benefit the Bratz product line. These costs have been relevant to MGA's successful development and sales of Bratz products.

28.  In summary, I have reviewed MGA costs and determined whether the expenditures are costs tracked by product or other relevant costs. **ATTACHMENT 4** includes a listing of MGA's costs tracked by product SKU that would be deductible. **ATTACHMENT 5** provides a further breakdown of costs tracked by product SKUs. Additionally, on **ATTACHMENT 4,** I have summarized other relevant costs and the basis that I preliminarily anticipate using to perform allocations to accused sales revenues.[26] I am unable to perform allocations of the other relevant costs until Mattel and/or its experts submit their damages claims and identify accused products and sales revenues. I will determine deductible costs and provide opinions in a Rebuttal Report.

---

[25] I discussed MGA's financial and accounting records with Anise Evans, MGA's Director of Financial Planning.
[26] MGA is an S Corporation. In accordance with Subchapter S of the Internal Revenue Code, the company is not subject to federal income taxes at the corporate level. Taxable income or loss of a company is allocated to the shareholders based on their respective ownership interests. From 2000 through 2006, MGA's provision for income taxes was generally less than 10% as reported on its consolidated statements of income. This provision would include foreign taxes on the company's subsidiaries and state taxes. Taxes are deductible expenses. Additionally, allocation bases and approaches may vary depending on the actual damages claims submitted by Mattel and/or its experts.

*CONFIDENTIAL – ATTORNEYS' EYES ONLY*

10

EXHIBIT  5
PAGE  44

Expert Report of Paul K. Meyer

---

### B.    Apportionment Factors And Considerations

29.    I understand that copyright law allows the accused party to identify elements of profit attributable to factors other than the copyrighted work.    I have analyzed, researched and summarized other creative elements and factors related to the success of the Bratz product line. This study has included review of MGA and Mattel documents, review of deposition testimony, discussions with MGA personnel, research, and discussions with other experts retained by MGA. Mattel's documents corroborate inputs I received from MGA personnel identifying important factors it believes contributed to Bratz success.    The results of my study to identify apportionment factors and considerations are summarized in this section of my Report.

30.    The purpose of this Section B is not to provide independent expert opinion on underlying issues and characteristics of the specifically identified apportionment factors, but to identify the important factors contributing to the generation of Bratz success and profits.    I then use these results in the next section of this Report (Section C), which addresses apportionment approaches and resulting percentages.

31.    One of the factors identified as important to the success of Bratz is the "design of the doll."    I understand that other experts retained on behalf of MGA will address substantial differences between the Bratz doll and the drawings included in the accused copyrighted property, as alleged.    In this Report, I do not attempt to split the category "design of the doll" between the various functions that contribute to doll design, including the accused copyrighted property, new drawings, sculpt, face paint and hair, as examples.    If such a split were performed, it would reduce the apportionment percentages summarized in Section C related to the accused copyrighted property.[27, 28]

---

[27] I understand that Peter Menell, Ph.D., a professor of law at UC Berkeley and an expert for MGA, will testify that MGA's Bratz dolls do not infringe copyright in the Carter Bryant doll sketches.  In his expert report dated February 10, 2008, Dr. Menell states, "His [Mr. Bryant's] concepts do not attract copyright protection.  His sketches reflect a mix of relatively detailed soft goods elements (clothing and accessory) and largely rudimentary hard goods elements.  Thus, the doll features attract relatively modest protection.  When the sketches are subjected to successive filters of copyright law's limiting doctrines (originality, merger, scènes à faire, functionality), many of the hard goods elements of Carter Bryant's fall away entirely or fade in significance…But since the individual elements themselves attract relatively modest (if any) protection, the compilation itself only enjoys protection against 'bodily appropriation' or 'virtual identity.'  As the comparisons show, MGA's Bratz blank and face paint do not reflect anywhere near that level of similarity.  The elements differ quite significantly from the Bryant sketches…Based on these considerations, I do not believe that MGA's Bratz dolls infringe copyright in the Carter Bryant doll sketches…I do not believe that the similarities between the overall compilation of elements in MGA's individual Bratz dolls reflect even substantial similarity to any protected compilation in Bryant's sketches.  In any case, they do not rise to the level of bodily appropriation." Expert Report of Professor Peter S. Menell,

---

*CONFIDENTIAL – ATTORNEYS' EYES ONLY*

11

EXHIBIT 5
PAGE 46