THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA  90071-3144
Tel.: (213) 687-5000/Fax: (213) 687-5600

KENNETH PLEVAN (admitted *pro hac vice*)
(kplevan@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY  10046
Tel.: (212) 735-3000 / Fax: (212) 735-2000

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE de Mexico, S.R.L. de C.V., and Isaac Larian

UNITED STATED DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>        Plaintiff,<br><br>     v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>        Defendant. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br>[PUBLIC REDACTED]<br>DECLARATION OF MARCUS R. MUMFORD IN SUPPORT OF MGA'S OPPOSITION TO MATTEL'S *EX PARTE* "SUPPLEMENT" SEEKING TO DEPOSE MEL WOODS<br><br>Honorable Stephen G. Larson<br><br>Hearing Date: February 4, 2008<br>Time: 10:00 a.m.<br>Place: Courtroom 1 |
| AND CONSOLIDATED ACTIONS | |

I, Marcus R. Mumford, hereby declare as follows:

1.     I am an attorney licensed to practice law in the State of California and am an associate at the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, counsel of record for MGA Entertainment, Inc. ("MGA"), Isaac Larian ("Mr. Larian" or "Larian"), MGA Entertainment (HK) Limited ("MGA HK"), and MGAE de Mexico S.R.L. de C.V. ("MGA Mexico") (collectively, the "MGA Defendants") in the above-captioned matter.  I submit this Declaration in Support of MGA's Opposition to Mattel, Inc.'s *Ex Parte* "Supplement" Seeking to Depose Mel Woods. Unless otherwise stated, I have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently thereto.

2.     On or about December 8, 2007, Mattel, Inc. ("Mattel") served its Supplemental Responses to MGA's First Set of Interrogatories.  A true and correct copy of excerpts from that document is attached hereto as **Exhibit 1**.

3.     On or about December 13, 2007, Mattel served its Objections and Second Supplemental Responses to Defendants' First Set of Interrogatories, Numbers 1-14.  A true and correct copy of excerpts from that document is attached hereto as **Exhibit 2**.

4.     On or about August 13, 2007, Mattel filed its Opposition to Motion for Terminating Sanctions.  A true and correct copy of that opposition is attached hereto as **Exhibit 3**.

5.     Veronica Marlow was deposed in this case on December 28, 2007.  A true and correct copy of excerpts from the certified reporter's transcript of that proceeding is attached hereto as **Exhibit 4**.

6.     Margaret Leahy was deposed in this case on December 12, 2007.  A true and correct copy of excerpts from the certified reporter's transcript of that proceeding is attached hereto as **Exhibit 5**.

7.   Elise Cloonan was deposed in this case on December 14, 2007. A true and correct copy of excerpts from the certified reporter's transcript of that proceeding is attached hereto as **Exhibit 6.**

8.   Robert Simoneau was deposed in this case on January 28, 2008. A true and correct copy of excerpts from the rough reporter's transcript of that proceeding is attached hereto as **Exhibit 7.**

9.   Richard De Anda was deposed in this case on December 19, 2007. A true and correct copy of excerpts from the certified reporter's transcript of that proceeding is attached hereto as **Exhibit 8.**

10.   David Rosenbaum was deposed in this case on January 25, 2008. A true and correct copy of excerpts from the rough reporter's transcript of that proceeding is attached hereto as **Exhibit 9.**

11.   Maureen Tafoya was deposed in this case on January 28, 2008. A true and correct copy of excerpts from the rough reporter's transcript of that proceeding is attached hereto as **Exhibit 10.**

12.   A true and correct copy of documents produced by Mattel, Bates Nos. M0155946-47, is attached hereto as **Exhibit 11.**

13.   A true and correct copy of a document produced by Peterson, Milla, Hooks in response to a third party subpoena in this case, Bates No. PMH002273, is attached hereto as **Exhibit 12.**

14.   A true and correct copy of documents produced by Mattel, Bates Nos. M0069084-86, is attached hereto as **Exhibit 13.**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 31th day of January, 2008, in Los Angeles, California.

_____
Marcus R. Mumford

504642.01-Los Angeles Server 2A - MSW

# EXHIBIT 1

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Timothy L. Alger (Bar No. 160303)
  (timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-09049 SGL (RNBx)<br><br>Consolidated with Case Nos. CV 04-9059 and CV 05-2727<br><br>Hon. Stephen G. Larson<br><br>SUPPLEMENTAL RESPONSES TO MGA'S FIRST SET OF INTERROGATORIES TO MATTEL, INC. |

PROPOUNDING PARTY:       MGA ENTERTAINMENT, INC.

RESPONDING PARTY:        MATTEL, INC.

SET NO.:                              ONE (1)

**ATTORNEY'S EYES ONLY --**

**SUBJECT TO PROTECTIVE ORDER**

SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

Exhibit___1___, P.___3___

1    By way of further answer, pursuant to Federal Rule of Civil Procedure

2  33(d), Mattel has produced responsive, non-privileged documents and tangible items

3  in its possession, custody or control from which the answer to this Interrogatory may

4  be derived.

5    Mattel continues its factual investigation and currently has outstanding

6  discovery requests to Bryant and to MGA, as well as motions to compel Bryant and

7  MGA to disclose information relevant to this subject.  Mattel reserves the right to

8  supplement this response and, consistent with its obligations under Federal Rule of

9  Civil Procedure 26(e), Mattel will supplement this response if Mattel receives

10  additional responsive information.

11

12  **INTERROGATORY NO. 10:**

13    State, with particularity, when and how MATTEL first learned that

14  BRYANT performed work for MGA.

15

16  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:**

17    In addition to the general objections stated above, Mattel specifically

18  objects to this Interrogatory as unreasonably burdensome, overbroad and

19  incomprehensible in that it defines "Mattel" to include "past . . . employees,"

20  including but not limited to defendant Carter Bryant and a number of other former

21  Mattel employees who worked with Carter Bryant to design and develop Bratz after

22  each had been a Mattel employee and who, at that time, had no relationship with

23  Mattel that would have required those persons to disclose to Mattel the development

24  of the Bratz dolls.  Mattel further objects to this interrogatory on the grounds that it

25  is vague and ambiguous with regard to the phrase "first learned that BRYANT

26  performed work for MGA."  Mattel further objects to this Interrogatory on the

27  grounds that it calls for information that is neither relevant to the claims or defenses

28  of any party to the pending action nor reasonably calculated to lead to the discovery

07209/2267105.11

-111-
SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

Exhibit __1__, P. __4__

1  of admissible evidence.  Mattel further objects to this Interrogatory on the grounds

2  that it calls for the disclosure of information subject to the attorney-client privilege,

3  the attorney work-product doctrine and other applicable privileges.  Mattel

4  continues its factual investigation and currently awaits MGA's compliance with

5  multiple Court Orders compelling MGA to produce documents, to answer

6  Interrogatories and to produce witnesses for deposition which MGA still has not

7  complied with and indeed that the Court has found MGA violated.  Mattel also has

8  pending motions to compel against defendants MGA, Bryant, Machado and others

9  associated with defendants, including to compel them to produce documents, to

10  appear for deposition and to answer requests for admissions.  In addition, the

11  depositions of certain witnesses, including without limitation Carter Bryant and

12  various MGA representatives, have yet to be completed, and other witnesses,

13  including various MGA representatives such as Gustavo Machado, Ron Brawer,

14  Mariana Trueba, Pablo Vargas, Janine Brisbois, Shirin Salemnia, as well as

15  Veronica Marlow, Margaret Hatch-Leahy and Elise Cloonan, have yet to be

16  produced for deposition.  Furthermore, although MGA's original production in this

17  case regarding the alleged origins and development of Bratz consisted of only a few

18  thousand pages, and only after multiple Court Orders compelling MGA and Bryant

19  to produce their documents, MGA and other Defendants have begun to produced

20  voluminous documents only in recent weeks, including documents that Mattel has

21  been unable to access or review because of technical deficiencies in MGA's

22  production that MGA only recently corrected.  Furthermore, despite prior Court

23  Order directing MGA to provide documents in unredacted form, MGA has failed to

24  comply and thus continues to deny Mattel information that the Court has ruled

25  Mattel is entitled to.  The review of MGA's, Bryant's and other Defendants' belated,

26  and still incomplete, productions continues.  Mattel reserves the right to supplement

27  this response consistent with <u>Federal Rule of Civil Procedure 26(e)</u>.

28

-112-

SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

Exhibit ___1___, P. _5_

1        Subject to and without waiving the foregoing general and specific

2    objections, Mattel responds as follows:

3        Excluding from this response defendant Carter Bryant and those former

4    Mattel employees who worked with defendant Carter Bryant to design and develop

5    Bratz, Mattel states as follows: Bryant and MGA acted to conceal, including by

6    Bryant's affirmative misrepresentations to Mattel during his Mattel employment,

7    Bryant's involvement with Bratz. To Mattel's knowledge, Bryant was first publicly

8    and definitively confirmed as the Bratz designer in the July 18, 2003 <u>Wall Street</u>

9    <u>Journal</u> article, in which Isaac Larian also indicated that Bryant had been involved in

10   some manner with MGA in or about "late 1999."

11       After Bryant left Mattel, but prior to the July 18, 2003 article, there was

12   rumor and innuendo that Bryant may be working with MGA on Bratz. Mattel

13   conducted an investigation in Spring 2002 based on allegations that Bryant may

14   have plagiarized "Toon Teens" and created Bratz dolls for MGA, and later in

15   August 2002 based on an anonymous letter sent to Mattel. The letter's author

16   (whoever it was) offered no evidence for his or her allegations. The potential claims

17   investigated in 2002 have not been asserted in this case. In March 2002, Mattel

18   investigated allegations of possible copyright infringement of "Toon Teens" designs,

19   not whether Mr. Bryant created Bratz or worked with MGA during his Mattel

20   employment. The potential claims investigated in 2002 did not give Mattel any

21   knowledge, or even reason to believe, that Bryant worked for MGA and/or

22   conceived of Bratz while a Mattel employee.

23       Subsequently, on November 24, 2003, Mattel obtained a copy of a

24   contract between defendant Carter Bryant and defendant MGA. That contract--

25   which Bryant and MGA had entered into while Bryant was employed by Mattel--

26   required Bryant to provide design services to MGA on a "top priority" basis, in

27   conflict with his then-existing obligations to Mattel. It also purported to grant MGA

28   ownership of works produced by Bryant both before and after the agreement's

Exhibit ___1___, P. _6_

1  effective date, in further contravention of his obligations to Mattel. Through this
2  agreement, Mattel first determined that it was likely that Bryant worked as a
3  designer for a Mattel competitor, MGA, while being employed and paid by Mattel
4  for his exclusive services as a designer.

5        Also, and as the Court determined in its Order denying defendant's
6  Motion for Termination Sanctions dated August 29, 2007 — one of defendants'
7  unsuccessful attempts to avoid a trial on the merits of Mattel's claims — that
8  "November 24, 2003, marks the date when litigation between Mattel and Bryant
9  became more than merely speculative and in fact became probable. . . . Although
10 prior to this date an internal investigation may have raised suspicion on Mattel's part
11 that litigation might arise, there was no evidence presented to the Court that Mattel
12 should have known it had a viable claim against Bryant before November 2003."

13       Answering further, the fact that Bryant worked with MGA while
14 employed by Mattel was confirmed for the first time by Bryant at his deposition in
15 November 2004, which took place only after Bryant had refused to be deposed for
16 months and only after the Court entered two Orders compelling him to testify. At
17 that time, he acknowledged that he worked on the "Bratz" project and an ostensibly
18 separate project that defendants purport to call "Angel" during the time of his Mattel
19 employment.

20       By way of a further answer, the deposition of Jill Nordquist was taken
21 in this action from which the answer to this Interrogatory may be further derived.

22       By way of further answer, pursuant to Federal Rule of Civil Procedure
23 33(d), Mattel has produced responsive, non-privileged documents and tangible items
24 in its possession, custody or control from which the answer to this Interrogatory may
25 be derived, including the documents identified in response to Interrogatory No. 1.

26       By way of further answer, this topic may be the subject of expert
27 testimony, which will be disclosed in the manner, and at the time, required for
28 expert disclosures pursuant to the Federal and Local Rules.

-114-
SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES


Exhibit __1__, P. __7__

1    Mattel continues its factual investigation and currently has outstanding
2  discovery requests to Bryant and to MGA, as well as motions to compel Bryant and
3  MGA to disclose information relevant to this subject. Mattel reserves the right to
4  supplement this response and, consistent with its obligations under Federal Rule of
5  Civil Procedure 26(e), Mattel will supplement this response if Mattel receives
6  additional responsive information.

7

8  **INTERROGATORY NO. 11:**
9    State, with particularity, when and how MATTEL first learned that
10  BRYANT conceived of the BRATZ CONCEPT.

11

12  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**
13    In addition to the general objections stated above, Mattel specifically
14  objects to this Interrogatory on the grounds that it calls for the disclosure of
15  information subject to the attorney-client privilege, the attorney work-product
16  doctrine and other applicable privileges. Mattel further objects to this Interrogatory
17  as unreasonably burdensome and overbroad in that it purports to require Mattel to
18  summarize all facts on this subject, including without limitation facts that are known
19  to or in the possession, custody and control of defendants and non-parties, including
20  non-parties associated with defendants. Mattel further objects to this interrogatory
21  on the grounds that it is vague and ambiguous with regard to the phrase "first
22  learned that BRYANT conceived of the BRATZ CONCEPT." Mattel further
23  objects to this interrogatory on the grounds that it is unreasonably burdensome and
24  overbroad in that it defines "Mattel" to include "past . . . employees," including but
25  not limited to defendant Carter Bryant and a number of other former Mattel
26  employees who worked with Carter Bryant to design and develop Bratz after each
27  had been a Mattel employee and who, at that time, had no relationship with Mattel
28  that would have required those persons to disclose to Mattel the development of the

-115-
SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

Exhibit ___1___, P. ___0___

1  production that MGA only recently corrected.  Furthermore, despite prior Court

2  Order directing MGA to provide documents in unredacted form, MGA has failed to

3  comply and thus continues to deny Mattel information that the Court has ruled

4  Mattel is entitled to.  The review of MGA's, Bryant's and other Defendants' belated,

5  and still incomplete, productions continues.  Mattel reserves the right to supplement

6  this response consistent with Federal Rule of Civil Procedure 26(e).

7              Subject to and without waiving the foregoing general and specific

8  objections, Mattel responds as follows: See response to Interrogatory No. 10.

9              By way of further answer, this topic may be the subject of expert

10  testimony, which will be disclosed in the manner, and at the time, required for

11  expert disclosures pursuant to the Federal and Local Rules.

12              Mattel continues its factual investigation and currently has outstanding

13  discovery requests to Bryant and to MGA, as well as motions to compel Bryant and

14  MGA to disclose information relevant to this subject.  Mattel reserves the right to

15  supplement this response and, consistent with its obligations under Federal Rule of

16  Civil Procedure 26(e), Mattel will supplement this response if Mattel receives

17  additional responsive information.

18

19  DATED:  December 7, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

20

21                                    By

22                                        B. Dylan Proctor
                                          Attorneys for Plaintiff Mattel, Inc.
23

24

25

26

27

28

-117-
SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MGA'S FIRST SET OF INTERROGATORIES

Exhibit ___1___, P. _9_

# EXHIBIT 2

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2      johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3      (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4      (joncorey@quinnemanuel.com)
5   865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
6   Facsimile:  (213) 443-3100

7   Attorneys for Mattel, Inc.

8

9                   UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                        EASTERN DIVISION

12  CARTER BRYANT, an individual,      CASE NO. CV 04-9049 SGL (RNBx)

13            Plaintiff,               Consolidated with
                                       Case No. CV 04-09059
14       vs.                           Case No. CV 05-02727

15  MATTEL, INC., a Delaware           Hon. Stephen G. Larson
    corporation,
16                                     MATTEL, INC.'S OBJECTIONS AND
              Defendant.               SECOND SUPPLEMENTAL
17                                     RESPONSES TO DEFENDANT'S
                                       FIRST SET OF INTERROGATORIES,
18  AND CONSOLIDATED ACTIONS           NUMBERS 1-14

19

20

21  PROPOUNDING PARTY:      CARTER BRYANT

22  RESPONDING PARTY:       MATTEL, INC.

23  SET NO.:                ONE (1)

24

25              ATTORNEY'S EYES ONLY --

26          SUBJECT TO PROTECTIVE ORDER

27

28

07209/2323329.2

Exhibit __2__, P. _10_

1 | INTERROGATORY NO. 9:

2       State all facts supporting YOUR contention that MATTEL first became

3 aware of the alleged wrongful conduct of Bryant in November 2003, as set forth in

4 Paragraph 12 of the Complaint.

5

6 | RESPONSE TO INTERROGATORY NO. 9:

7       In addition to the general objections stated above, Mattel specifically

8 objects to this Interrogatory on the grounds that it calls for the disclosure of

9 information subject to the attorney-client privilege, the attorney work-product

10 doctrine and other applicable privileges. Mattel further objects to this Interrogatory

11 on the ground that it calls for the disclosure of confidential and/or proprietary

12 information, which Mattel will disclose only subject to and in reliance upon a

13 suitable protective order. Mattel further objects to this Interrogatory as

14 unreasonably burdensome and overbroad in that it purports to require Mattel to

15 summarize all facts on this subject. Mattel further objects to this Interrogatory on

16 the grounds that it is premature in that it purports to seek to all facts relating to this

17 subject at the outset of discovery in this action.

18       Subject to and without waiving the foregoing general and specific

19 objections, Mattel responds as follows:

20       Pursuant to Federal Rule of Civil Procedure 33(d), Mattel will produce

21 responsive, non-privileged documents and tangible items in its possession, custody

22 or control from which the answer to this Interrogatory may be derived.

23

24 | SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:

25       In addition to the general objections stated above, Mattel specifically

26 objects to this Interrogatory as unreasonably burdensome, overbroad and

27 incomprehensible in that it defines "Mattel" to include "past . . . employees,"

28 including but not limited to defendant Carter Bryant and a number of other former

-298-

Exhibit __Z__, P. __11__

1  Mattel employees who worked with Carter Bryant to design and develop Bratz after
2  each had been a Mattel employee and who, at that time, had no relationship with
3  Mattel that would have required those persons to disclose to Mattel the development
4  of the Bratz dolls. Mattel further objects to this interrogatory on the grounds that it
5  is vague and ambiguous with regard to the phrase "first became aware of the alleged
6  wrongful conduct of Bryant in November 2003." Mattel further objects to this
7  Interrogatory on the grounds that it calls for information that is neither relevant to
8  the claims or defenses of any party to the pending action nor reasonably calculated
9  to lead to the discovery of admissible evidence. Mattel further objects to this
10 Interrogatory on the grounds that it calls for the disclosure of information subject to
11 the attorney-client privilege, the attorney work-product doctrine and other applicable
12 privileges. Mattel continues its factual investigation and currently awaits opposing
13 parties compliance with multiple Court Orders compelling the production of
14 documents, to answer Interrogatories and to produce witnesses for deposition which
15 have not been complied with and indeed that the Court has found MGA violated.
16 Mattel also has pending motions to compel against defendants MGA, Bryant,
17 Machado and others associated with defendants, including to compel them to
18 produce documents, to appear for deposition and to answer requests for admissions.
19 In addition, the depositions of certain witnesses, including without limitation Carter
20 Bryant and various MGA representatives, have yet to be completed, and other
21 witnesses, such as Veronica Marlow and Elise Cloonan, have yet to be produced for
22 deposition. Furthermore, although Bryant's original production in this case
23 regarding the alleged origins and development of Bratz consisted of only a few
24 thousand pages, and only after multiple Court Orders compelling MGA and Bryant
25 to produce their documents, MGA and other Defendants have begun to produce
26 voluminous documents only in recent weeks, including documents that Mattel has
27 been unable to access or review because of technical deficiencies in MGA's
28 production that MGA only recently corrected. Furthermore, despite prior Court

MATTEL, INC.'S SECOND SUPP. RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

b7209/2323329.2

Exhibit  2 , P. 12

1   Order directing MGA to provide documents in unredacted form, MGA has failed to

2   comply and thus continues to deny Mattel information that the Court has ruled

3   Mattel is entitled to.  The review of MGA's, Bryant's and other Defendants' belated,

4   and still incomplete, productions continues.  Mattel reserves the right to supplement

5   this response consistent with Federal Rule of Civil Procedure 26(e).

6        Without waiving the foregoing General and Specific objections, and

7   subject thereto, Mattel responds to this interrogatory as follows:

8        Excluding from this response defendant Carter Bryant and those former

9   Mattel employees who worked with defendant Carter Bryant to design and develop

10  Bratz, Mattel states as follows:  Bryant and MGA acted to conceal, including by

11  Bryant's affirmative misrepresentations to Mattel during his Mattel employment,

12  Bryant's involvement with Bratz.  To Mattel's knowledge, Bryant was first publicly

13  and definitively confirmed as the Bratz designer in the July 18, 2003 *Wall Street*

14  *Journal* article, in which Isaac Larian also indicated that Bryant had been involved

15  in some manner with MGA in or about "late 1999."

16       After Bryant left Mattel, but prior to the July 18, 2003 article, there was

17  rumor and innuendo that Bryant may be working with MGA on Bratz.  Mattel

18  conducted an investigation in Spring 2002 based on allegations that Bryant may

19  have plagiarized "Toon Teens" and created Bratz dolls for MGA, and later in

20  August 2002 based on an anonymous letter sent to Mattel.  The letter's author

21  (whoever it was) offered no evidence for his or her allegations.  The potential claims

22  investigated in 2002 have not been asserted in this case.  In March 2002, Mattel

23  investigated allegations of possible copyright infringement of "Toon Teens" designs,

24  not whether Mr. Bryant created Bratz or worked with MGA during his Mattel

25  employment.  The potential claims investigated in 2002 did not give Mattel any

26  knowledge, or even reason to believe, that Bryant worked for MGA and/or

27  conceived of Bratz while a Mattel employee.

28

Exhibit  2 , P. 13

1    Subsequently, on November 24, 2003, Mattel obtained a copy of a
2    contract between defendant Carter Bryant and defendant MGA. That contract—
3    which Bryant and MGA had entered into while Bryant was employed by Mattel—
4    required Bryant to provide design services to MGA on a "top priority" basis, in
5    conflict with his then-existing obligations to Mattel. It also purported to grant MGA
6    ownership of works produced by Bryant both before and after the agreement's
7    effective date, in further contravention of his obligations to Mattel. Through this
8    agreement, Mattel first determined that it was likely that Bryant worked as a
9    designer for a Mattel competitor, MGA, while being employed and paid by Mattel
10   for his exclusive services as a designer.

11       Also, and as the Court determined in its Order denying defendant's
12   Motion for Termination Sanctions dated August 29, 2007 — one of defendants'
13   unsuccessful attempts to avoid a trial on the merits of Mattel's claims — that
14   "November 24, 2003, marks the date when litigation between Mattel and Bryant
15   became more than merely speculative and in fact became probable. . . . Although
16   prior to this date an internal investigation may have raised suspicion on Mattel's part
17   that litigation might arise, there was no evidence presented to the Court that Mattel
18   should have known it had a viable claim against Bryant before November 2003."

19       Answering further, the fact that Bryant worked with MGA while
20   employed by Mattel was confirmed for the first time by Bryant at his deposition in
21   November 2004, which took place only after Bryant had refused to be deposed for
22   months and only after the Court entered two Orders compelling him to testify. At
23   that time, he acknowledged that he worked on the "Bratz" project and an ostensibly
24   separate project that defendants purport to call "Angel" during the time of his Mattel
25   employment.

26       By way of further answer, pursuant to Federal Rule of Civil Procedure
27   33(d), Mattel has produced responsive, non-privileged documents and tangible items
28   in its possession, custody or control from which the answer to this Interrogatory may

Exhibit __2__, P. _14_

1  be derived. The documents supporting Mattel's response to this Interrogatory and

2  containing additional information responsive to this Interrogatory include, but are

3  not limited to, the following: Deposition Transcript of Carter Bryant, dated

4  November 4, 5 and 8, 2004; Deposition Transcript of Steven Linker, dated

5  September 13, 2006; Deposition Transcript of Anna Rhee, dated February 3, 2005;

6  Deposition Transcript of Paula Garcia, dated May 24, 2007, May 25, 2007, October

7  9, 2007 and October 10, 2007; Deposition Transcript of Rene Pasko, dated June 13,

8  2007; Deposition Transcript of Isaac Larian, dated July 18, 2006; Deposition

9  Transcript of Brian Armstrong, dated July 18, 2007 and August 1, 2007; Deposition

10  Transcript of Sandy Yonemoto, dated May 30, 2007; Deposition Transcript of

11  Victoria O'Connor, dated December 6, 2004; Deposition Transcript of Sam Khare,

12  dated August 20, 2007; Deposition Transcript of Jill Nordquist, dated July 31, 2007;

13  Deposition Transcript of Jacqueline Prince, dated December 21, 2004; Deposition

14  Transcript of Liliana Martinez, May 20, 2005; Deposition Transcript of Kislap

15  Ongchango, dated April 24, 2007; Deposition Transcript of Joni Pratte, dated June

16  1, 2007; Deposition Transcript of Robert Hudnut, July 13, 2007 and August 20,

17  2007; Deposition Transcript of Rebecca Harris, dated July 20, 2007; Deposition

18  Transcript of Kerri Brode, dated August 15, 2007 and January 19, 2007; Deposition

19  Transcript of Charmayne Brooks, dated March 2, 2007; Deposition Transcript of

20  Janet Bryant, dated September 25, 2007; Deposition Transcript of Tom Bryant,

21  dated September 26, 2007; Deposition Transcript of Kenneth Lockhart, dated June

22  14, 2007 and June 15, 2007; Deposition Transcript of Dave Malacrida, dated August

23  30, 2007; Deposition Transcript of Rodney Palmer, dated June 26, 2007; Deposition

24  Transcript of Mei Wah (Sarah) Chui, dated September 28, 2007; Deposition

25  Transcript of Edmond Lee, dated October 4, 2007 and October 5, 2007; Deposition

26  Transcript of Richard Irmen, dated September 28, 2007; Deposition of Brooke

27  Gilbert, dated July 24, 2007; Deposition Transcript of Arnoldo Artavia, dated

28  September 21, 2006; Deposition Transcript of Carter Bryant, dated September 9,

07209/2323329.2

MATTEL, INC.'S SECOND SUPP. RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Exhibit  2 , P. 15

1    2003 in Gunther Wahl Productions, Inc. v. Mattel, Inc., Case No. BC 269746;

2    Deposition Transcript of Cassidy Park, dated March 2, 2005; Deposition Transcript

3    of Julia Marine, dated September 21, 2006, November 8, 2006, and June 26, 2007;

4    Deposition Transcript of Fred Kawashima, dated January 17, 2007, June 19, 2007

5    and September 13, 2007; Deposition Transcript of Lissa Freed, dated May 3, 2007;

6    Deposition Transcript of Julia Jensen, dated June 8, 2007; Deposition Transcript of

7    Alan Kaye, dated December 10, 2004 and June 21, 2007; Deposition Transcript of

8    Ann Driskill, dated December 15, 2004, and July 12, 2007; Deposition Transcript of

9    Lisa Tonnu, dated July 19, 2007, September 24, 2007 and September 25, 2007;

10   Deposition Transcript of Spencer Woodman, dated October 9, 2007; Deposition

11   Transcript of Maureen Tkacik, dated September 28, 2007; BRYANT 02440-1,

12   2456-9, 02462-7, 10431-3, 10451-67; MGA HK 0001515-43; SABW-M 00247-58;

13   SABW-M 00597-8, 589-90; SABW-M 00037-8; MGA 0068915; SABW-M 00179-

14   88; MGA 0184197-8; MGA 0053574-7; MGA 0053569-73; SABW-M 00601-2,

15   00599-600; BRYANT 07015-9; MGA 0183938-9; MGA 0183934-7; SABW-M

16   00595-6, 593-4; MGA 0186063-7; MGA HK 0001935; SABW-M 00587-8; MGA

17   0008859-64; MGA 0009145; MGA 0068962-75; KMW-M 01646-52; MGA

18   0050711; MGA 0009146B-9B; MGA 0008858; MGA 0050554-5; MGA 0007363-

19   72; MGA HK 0002476-8; MGA HK 0008253-70; SABW-M 00283-96; SABW-M

20   00271-82; SABW-M00437, 00431, 436, 429; MGA 003704-13; MGA 0069001;

21   MGA 0007430; MGA 0051546; MGA 0008035A-8A; MGA 0072176-9; MGA

22   0050710-2; MGA000705; MGA 0008851-5; TARM0031-47; UB0001; MGA

23   HK0008205-70; MGA HK 0008553-4; MGA0050707-9; MGA 0008039-42; MGA

24   0053422; MGA0007479-81; MGA0007487-9; MGA0007490-2; MGA 0005369-71;

25   MGA0002338A-9A; MGA 0070857-8; MGA HK 0008468-9; MGA 0007482-3;

26   UB0006; UB0004; UB0003; UB 0005; MGA 005372-5; MGA 0007498-501; MGA

27   0007495-7; MGA 0053154-6; MGA 0007502; MGA 0007511-2; MGA0007503;

28   MGA HK 0008036-7; MGA HK 0008475-82; MGA HK 0008483-6;

-303-

MATTEL, INC.'S SECOND SUPP. RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Exhibit   2 , P. 16

1  MGA0008616A; MGA 0049234-6; MGA 00050702-9; MGA 0008043-6; MGA
2  0007513; MGA 0007514; MGA 0007515-9; MGA HK 0008470-4; MGA 0053442-
3  6; MGA 0008856 A; MGA 000753E-41; UB 0007; UB 0199; MGA 0842107-9;
4  MGA 0007542-5; SABW-M 00319-46; MGA 0008043A-6A; MGA 0007547-9;
5  MGA 0053081-3; MGA 0049230-3; MGA 0001461-6; MGA 0007553-4; MGA
6  0007555-6; MGA HK 0008508-9; MGA HK 0008518-9; MGA 0007567-8; MGA
7  0007574-5; MGA 0007562-3; MGA 0007578; MGA 0007581-2; MGA 0053079-
8  80; MGA 0051890; MGA HK 0008594-5; MGA 0051453-5; MGA HK 0008592-3;
9  MGA 0007609; MGA 0007608; UB 0200; SABW-M 00427; MGA 0007612-3;
10  MGA 0001628-9; MGA 0007621; MGA 0007622; MGA 0007633-5; MGA
11  0140783-6; MGA 0053050-2; MGA 0001630-2; MGA 0008865; UB 0008; MGA
12  0008615A-8A; MGA 0072019-27; MGA 0001298; SABW - L 00001-12; MGA
13  0836832-3; MGA 0868092-3; MGA 0051574-6; MGA 0007845-6; MGA 0007843-
14  4; MGA 000726; MGA 0007847; MGA 0007848-52; MGA 001342; MGA
15  0064572; MGA 001341; MGA 001340; MGA 0868100A-3A; MGA 001318-37;
16  MGA 0842078-81; MGA 0064575; BRYANT 01211; MGA 0064577; UB 0013;
17  MGA 000713; MGA 001299-302; MGA 0046778; MGA 0067816-23; MGA
18  0199003; MGA 0004717; MGA 0008595A; MGA 0007891; MGA HK 0009036-
19  49; SL 00001; MGA HK 0002342-4; UB 0014; MGA 0190944-7; MGA 0046776-7;
20  SL 00004; SL 00008-9; MGA 0046774; MGA 0051568; MGA 0004718B; MGA
21  0051566-7; MGA HK 0002331; UB 0015; UB 0016; MGA 001297-8; MGA HK
22  0000158; MGA HK 0002359; MGA HK 0002336; MGA HK 0002332-4; SL
23  00005-7; MGA 0051562-3; MGA HK 0008993-9017; MGA HK 0002345-8; MGA
24  0003866B-8B; MGA HK 0002375-8; MGA HK 0002379-82; MGA 0008570B;
25  MGA 0053317-21; MGA 0066403-7; MGA 0004611-6B; MGA 0005320B-4B;
26  MGA HK 0002341; MGA HK 0002328; MGA 0009136; MGA 0005484B; MGA
27  HK 0002353-4; MGA 0049268-71; MGA HK 0002360; MGA HK 0002361-2;
28  MGA HK 0000159-260; MGA HK 0007118-487; MGA 0009134; MGA HK

07209/2323329.2

Exhibit _2_, P. _7_

1   0008989-90; MGA 0046704-5; MGA 002639-64; MGA HK 0002367-8; MGA HK
2   0002369-88; MGA 0046750-72; AR 0008; MGA HK 0002396-7; MGA HK
3   0008974-88; MGA HK 0002403-4; MGA HK 0002401-2; MGA HK 0002391-2;
4   MGA 0009128A-32A; MGA 005496-7; MGA 0837088-9; MGA 001477; MGA
5   0066270-6; MGA 0005592A; MGA HK 0002398-400; MGA HK 0002401-2; MGA
6   0427516; MGA 001467-9; MGA 001470-2; MGA 000425-6; MGA HK 0001837-9;
7   MGA 0046743; MGA HK 0002406-8; MGA HK 0002409-11; MGA 0065327-31;
8   MGA 0009062-5; MGA HK 0002439-41; MGA HK 0002442-5; MGA HK
9   0002446-50; MGA HK 0002451-4; MGA 0005529B-30B; Bryant 19372-4; SABW-
10  M 00065-78; Bryant 01276-8; MGA 0005543B-4B; MGA 0008030-1; MGA HK
11  0001840-2; MGA 0007943; MGA HK 0002435-8; MGA 0046868-70; MGA
12  0067834-5; MGA HK 0008956-72; MGA HK 0002490-601; MGA HK 0002602-3;
13  MGA HK 0001856; SABW-M 00383; MGA 0008070; MGA 0008625; MGA
14  0008619-40; Bryant 01286-92; MGA HK 0002604-20; MGA HK 0008939-55;
15  MGA HK 0001848-51; MGA HK 0002487-9; MGA HK 0001852-5; Bryant 04428;
16  Bryant 02089-92; Bryant 02941; Bryant 00787-9; MGA HK 0002621-37; MGA HK
17  0008925-38; MGA HK 0002645-61; MGA HK 0002665-6; MGA HK 0002689-
18  765; MGA HK 0008919-24; MGA HK 0002783-880; MGA 0836721-2; SL 0001O;
19  MGA 0004721B-2B; MGA HK 0002884-7; MGA 0052031-6; MGA 0005316B;
20  MGA 0053331-4; MGA HK 0002904-7; MGA HK 0002908-9; MGA 0005491B-
21  3B; MGA 0005438B; MGA HK 0002910-2; MGA HK 0007748-9; MGA 0050752-
22  4; MGA HK 0002913-5; MGA HK 0002916-7; MGA HK 0008864; MGA 000427-
23  8; MGA HK 0002938-40; MGA HK 0001858-60; MGA 0008557; MGA HK
24  0002921-3; MGA 0004562B-3B; MGA 0836578-89; MGA 0046691-3; MGA HK
25  0008846-57; MGA HK 0002941-2; Bryant 01293; MGA HK 0002948-9; MGA HK
26  0002950-1; MGA HK 0002954-6; MGA 0009125-6; Bryant 00219; MGA 000010-
27  1; MGA 006396-7; MGA HK 0007747; MGA 0836593; MGA 0004578B; MGA
28  HK 0002982-4; MGA 0046681-2; MGA 0829273-89; MGA 0009122A-4A; MGA

MATTEL, INC.'S SECOND SUPP. RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Exhibit _Z_, P. _18_

1  000014; MGA HK 0002997; MGA HK 0003000-2; MGA HK 0001933; MGA HK
2  0003003-5; MGA 0046680; MGA 5018; MGA 0046672; MGA HK 0003020-119;
3  MGA HK 0008814-6; MGA 000018; MGA 0008551; Bryant 04427; MGA
4  0008886A-97A; MGA 0008549; MGA 0008587; MGA 9354B-7B; MGA 9407B-
5  12B; MGA HK 0008708-25; MGA HK 0008679-706; MGA 0837468-70; MGA
6  0066304; MGA HK 0003138-40; MGA HK 0004434-7; UB 0000127B-31B; MGA
7  HK 0001870-3; MGA HK 0003150-4; MGA HK 0000261; MGA HK 0003168-72;
8  MGA HK 1874-8; MGA 0836601; MGA 0046668; Bryant 02761; MGA 0072003-
9  9; MGA 0046498-501; SABW-M 00145-8; MGA 006631-3; MGA 006599B-
10 6611B; MGA HK 0009901-46; MGA 0008653B; MGA0008578B-9B; MGA
11 0005555B-8B; MGA 0861632; MGA 0004558; MGA 0006945-75; MGA 0068078-
12 95; MGA 0009198; MGA 0005559B; MGA 0834205-6; MGA 0046493-4; MGA
13 0009185-9; MGA HK 0001176; MGA 0009190-1; MGA HK 0010186-98; MGA
14 HK 0010152-85; MGA HK 0002066; SH 0129; MGA 0006579-86; MGA 0006849-
15 917; MGA 0009083B; MGA 0050727-29; MGA 0837363-72; SBM 0009-10; SBM
16 0005-6; SBM 0007-8; MGA HK 0010121-42; MGA 001430; AR 0013; MGA
17 000678; MGA HK 0001588; MGA HK 0010109-18; MGA HK 0008068-90; MGA
18 0050698-9; MGA 0140757-60; MGA0008578B; MGA 0836315; MGA 0009403-4;
19 MGA 000077-81; MGA HK 0009974-97; MGA 0004628; MGA HK 0004104-5;
20 MGA HK 0004381-2; MGA 0046486-90; MGA 0005633B; MGA 0006278; MGA
21 0066608; MGA 0835737; MGA HK 0001187; MGA 000083; MGA HK 0009850-
22 2; MGA 0009093-9; MGA 0000734; MGA HK 0000647-756; MGA HK 0000079-
23 155; MGA 0065464-6, 65575-7; MGA 0002625, 2618; MGA HK 0009805-25;
24 MGA 0065444; MGA 0836640; MGA HK 0002131-5; MGA 0004635B; MGA HK
25 0002136-7, 2270-1; MGA 000682; MGA 0001423, 1426; MGA 0002632-3; SBM
26 0011; MGA 0002630; MGA HK 0002146-56, 2263-5; MGA HK 0002157-9; MGA
27 HK 0002260; MGA HK 0002266; MGA 0004637B-38B; MGA 0051649-52; MGA
28 HK 0002292-5, 2296-7; MGA HK 0009776; SH 0109; MGA HK 0004048-55,

MATTEL, INC.'S SECOND SUPP. RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

07209/2503329.2

Exhibit  2  P.  19

1  2310-2, 4069-72; MGA 000089-92; MGA HK 0002093-4; MGA 0004639-40;
2  MGA 0009041-2; MGA HK 0009771; MGA HK 0000267-8; MGA 0068289-96,
3  68434-42; MGA HK 0004087-9; MGA 000093-6; MGA HK 0004092-103; MGA
4  HK 0009669-79; MGA 006978; MGA 007109; MGA HK 0001200; MGA 0002635,
5  2621, 2631, 2634, 2624; MGA HK 0009767; MGA 0046457; MGA HK 0004115-7;
6  MGA HK 0004123-229; MGA HK 0004230; MGA 000097-104; MGA HK
7  0009756-8; MGA HK 0004231-2; MGA HK 0004244; MGA 0066423-5; MGA
8  0836650; MGA 0001422, 1425; MGA 000533-6; MGA HK 0009712-55; MGA HK
9  0004245-6; MGA HK 0004250-1; MGA HK 0002099-100; MGA 0004282; MGA
10  HK 0001209; MGA 0000532; MGA 000113-22; MGA HK 0004293, 4294; MGA
11  0004295-301; MGA 000123-5; MGA 0009117; MGA 000127-8; MGA 0046418-
12  27; MGA 0837512-3; MGA 0068493-561; MGA HK 0000078-155; MGA
13  0050696-7; MGA 003914-50; MGA 000150-60; MGA 0000161B-5B; MGA
14  0066432-4; MGA 0066435-9; MGA HK0001593-621; MGA 0836862-5; MGA
15  0149307-26; MGA 000166-7; MGK HK 0004413-27; MGA 006272; MGA 006504;
16  MGA 0006480-503; MGA HK 0001242-4; MGA HK 0002462-75; MGA HK
17  0001553-4; MGA 0003598-602; MGA 0003569B-71B; MGA 0047267-334;
18  MGA0006447-67; M 0001638-9; M 0001596; MGA004717; MGA000730; M
19  0001621; M 0001636; BRYANT 00794-9; M 0001597; MGA 0069426-7;
20  MGA006453-67; M 0074054-6; M 0070398-9; M 0101133-5; M 0001808-10;
21  BRYANT 01294-6; BRYANT 01297-9; BRYANT 01300-3; MGA 0064571;
22  MGA007337-40; BRYANT 01200-1; MGA001355; MGA000422; MGA 0064572;
23  MGA001318-27; MGA001329; MGA000423; MGA 0064575; MGA 0009131R-
24  2R; MGA 0009128R; MGA 0052031-6; MGA000425-6; MGA0008032-4; MGA
25  0065335; MGA000427-8; MGA005053B-5B; MGA000015-7; MGA000542-4;
26  MGA000015-7; MGA 0046799-802; MGA 006396-7; MGA000012-3; BRYANT
27  00219; MGA000012-3; MGA 0009121R-3R; MGA 0046672; MGA000019-21;
28  MGA000037-42; MGA 0053419-20; MGA000043-5; MGA000047; MGA000071-

MATTEL, INC.'S SECOND SUPP. RESPONSES TO DEFENDANTS FIRST SET OF INTERROGATORIES

07/209/2323329.2

Exhibit __2__, P. __20__

1  4; MGA000046; MGA 0046656; MGA 0052683-4; MGA 0046660; MGA000049;
2  MGA 0046875-82; MGA0004611B-6B; MGA 0046580-99; MGA004251; MGA
3  0009205-8; MGA000075; MGA000076; MGA 0046463-7; MGA 0009351-3;
4  MGA000147-9; MGA000131-2; MGA000091-2; MGA000097-104; MGA000212-
5  7; MGA000113-22; MGA000124-5; MGA000530B-1B; MGA000140B-1B;
6  MGA000124-5; MGA000190; MGA000253; MGA000524B-8B; MGA000197-9;
7  MGA000091-2; MGA000202; MGA000211; MGA000219; MGA000248;
8  MGA000249-50; MGA000255; MGA000482 B; MGA000234-6; MGA000256;
9  MGA000254; MGA000322; MGA000333; MGA 0009177-78.5; MGA 0048571;
10  MGA003727B-8B; MGA000365; MGA000369-70; MGA000366-8; MGA000380;
11  MGA000371-8; BRYANT 00376; MGA000603-5; MGA000612; MGA000613;
12  MGA000381; MGA000611; MGA000610; MGA000609; MGA000608 B;
13  MGA000606; MGA000602; MGA000600; MGA000599 B; MGA000576;
14  MGA000582; MGA000583B-7B; MGA000589; MGA000590; MGA 0048576-9;
15  MGA000579; MGA000571-2; MGA000575; MGA000574; MGA000588;
16  MGA000573; MGA000568; MGA000569-70; MGA000566; MGA000561;
17  MGA000556-7; MGA000560; MGA000551; MGA000554; MGA000558;
18  MGA004260-8; MGA000549; MGA000550; MGA000548 B; MGA004260-8;
19  MGA000546-7; MGA000545; MGA000634; MGA000625-6; MGA000621-2;
20  MGA001289B-90B; MGA000620 B; MGA000618; MGA000617; MGA001278B-
21  2B; MGA000747 B; MGA001116B-7B; MGA001113B-4B; MGA 0049106-13;
22  MGA0001105 B; MGA001099B-100B; MGA001040B-4B; MGA004383-4;
23  MGA001030B-2B; MGA001061B-4B; MGA000635; MGA001027B-9B;
24  MGA001219B-20B; MGA000766B-7B; MGA000746; MGA000748B-50B;
25  MGA001213B-4B; MGA001219B-20B; MGA001208B-9B; MGA000654; MGA
26  0051621; MGA 0052265-6; MGA 0047234-7; MGA000666B-7B; MGA 0046316;
27  MGA 0051427-35; MGA000655; M 0110188-92; M 0110193-7; M 0110179-83; M
28  0110184-7; M 0110198-202; M 0012536-9; M 0074057-9; M 0074224-5; M

-308-

MATTEL, INC.'S SECOND SUPP. RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Exhibit _l_, P. _21_

1   0070398-9; M 0101133-5; M 0070439-41; M 0059788; M 0059789; M 0059790-2;

2   M 0059785; M 0059766-7; M 0059771-2; M 0059776-8; M 0059808-9; M

3   0059812; M 0059814; M 0059815; M 0059832; M 0059818-9; M 0059826-7; M

4   0059828; M 0059833; M 0059829-30; M 0059831; M 0059784; M 0059834-5; M

5   0059786; M 0059787; M 0059782-3; BRYANT 00262-72; BRYANT 00310-9;

6   BRYANT 00222-34; BRYANT 00238-61; BRYANT 00138-70; BRYANT 00173;

7   BRYANT 00175-218; BRYANT 00220-1; BRYANT 00235-7; BRYANT 00273-

8   303; BRYANT 00320-51; BRYANT 00358-61; BRYANT 00869; MGA000455-64;

9   MGA000465-81; M 0001489A; M 0001489-505; M 0012536-9; M 0001558-69; M

10  0001613-4; BRYANT 01198-9; BRYANT 00794-9; BRYANT 1234-5;

11  MGA000429-34; MGA000422; MGA000007-9; M 0001615-6; M 0001648; M

12  0001649-50; M 0001638-9; M 0001636-9; M 0001596; M 0001621; M 0001604; M

13  0001666; BRYANT 1232-3; BRYANT 01200-3; M 0001594-5; M 0012593-617;

14  BRYANT 00751; M 0001654-5; BRYANT 00277-8; BRYANT 00290; BRYANT

15  00167; Deposition Exhibit No. 200 No Bates (3 pages); AR 0001-58; BRYANT

16  00173; Deposition Exhibit No. 203 No Bates (1 page); Deposition Exhibit No. 204

17  No Bates (1 page); Deposition Exhibit No. 300 No Bates (3 pages); MGA 001473;

18  MGA006453-67; MGA001356-9; MGA004717; MGA001291; M 0016504; M

19  0016474-501; M 0016495-6; M 0016595-6; M 0016816-24; TP 0012-7; TP 0109-

20  18; M 0016585-86.001; M 0016806; M 0016809-11; TP 0008-9; TP 0011; M

21  0016482; SL 000063.001; SL00002; SL00001; SL00005-7; SL00003; SL00013-63;

22  MGA0008030-1; MGA0008032-4; SL00008-9; SL00010-2; SL00004; SL00064;

23  M 0016620; M 0016812-5; TP 0005; SL000065-6; Deposition Exhibit No. 334 No

24  Bates (36 pages); Deposition Exhibit No. 366 No Bates (7 pages); MGA000706;

25  MGA002627; AR 0001; MGA000707; MGA000708; MGA000710; MGA000711;

26  MGA000712; MGA000714; MGA000715; MGA000716; MGA000718; AR 0004;

27  MGA000719; MGA000720; MGA000724; MGA000725; MGA000726;

28  MGA000728; Deposition Exhibit No. 390 No Bates (15 pages); Deposition Exhibit

MATTEL, INC.'S SECOND SUPP. RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Exhibit __2__, P. __74__

No. 391 No Bates (1 page); Deposition Exhibit No. 392 No Bates (11 pages); BRYANT 00173-4; MGA 0008968; Deposition Exhibit No. 395 No Bates (18 pages); MGA0007363-72; MGA0007376; MGA0007380-4; MGA0053555-9; MGA0007495-7; MGA0007502; MGA0007612-3; MGA0007609; M 0073817-27; Deposition Exhibit No. 405 No Bates (4 pages); Deposition Exhibit No. 452 No Bates (15 pages); MGA 0800022; MGA 0800080; MGA 0800006-8; MGA 0800023-6; MGA 0800037; MGA 0800051-79; MGA 0800097-102; MGA 0800084-5; MGA003485-6; MGA003572-3; MGA 0800117-24; MGA 0800114; Deposition Exhibit No. 481 No Bates (164 pages); MGA 0010208; MGA 0049814; MGA 0049793-8; MGA 0049616; MGA 0049552-3; MGA 0052379; MGA 0048673-5; MGA 0049758; MGA 0050154; MGA 0052277-91; MGA 0047198-200; MGA 0049705-8; MGA 0009237-9; MGA 0009240-1; MGA 0047738-61; MGA 0051808-10; MGA 0825431-2; MGA 0825485-95; MGA 0825438-45; MGA 0825457-60; MGA 0825461; Deposition Exhibit No. 504 No Bates (1 page); M 0110179-83; M 0110209-10; M 0110184-7; M 0110211-2; M 0110193-7; M 0110213-4; M 0110198-202; M 0110215-6; M 0110188-92; M 0110207-8; Deposition Exhibit No. 515 No Bates (1 page); Deposition Exhibit No. 516 No Bates (1 page); Deposition Exhibit No. 517 No Bates (17 pages); Deposition Exhibit No. 518 No Bates (9 pages); BRYANT 000010-5; BRYANT 00794-9; Deposition Exhibit No. 521 No Bates (1 page); Deposition Exhibit No. 522 No Bates (8 pages); BRYANT 00179; M 0059833; MGA 0842238; MGA 0842239; MGA 0842240; MGA 0842241; MGA 0842242; MGA 0842243; MGA 0842244; MGA 0842245; MGA 0010149-51; MGA 0010130; MGA008878RB-81RB; MGA0008888R B; MGA0008900 R B; MGA 0046691-3; MGA001303-7; MGA000422; MGA 0048518-23; MGA001144; MGA 0049327-31; MGA 0825466-71; MGA 0825627-45; MGA 0825447-56; Deposition Exhibit No. 549 No Bates (1 page); MGA 0069426-7; MGA 0825262-6; MGA 0802727-9; MGA 0803951-3; MGA 0802758-67; MGA 0804028-47; M 0110155-9; M 0110217-8; M 0110160-4; M 0110219-20;

MATTEL, INC.'S SECOND SUPP. RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

07209/2323329.2

Exhibit _2_, P. _23_

1  M 0110165-9; M 0110221-2; M 0110639-42; M 0110223-4; M 0110174-8; M

2  0110225-6; M 0110231-2; M 0110233-4; M 0110235-6; M 0110237-8; M 0110239-

3  40; M 0110227-8; M 0110229-30; M 0110205-6; M 0110203-4; MGA 0842202-17,

4  20-25; MGA 0842218-9; MGA 0027281-3; MGA 0828136-7; MGA 0800982-5;

5  MGA 0803777-8; MGA 0804579-80; MGA 0803668-9; MGA 0803353-4; MGA

6  0800863-5; MGA 0803753-5; MGA 0804559-61; MGA 0803651-3; MGA

7  0803381-3; MGA 0801966-9; MGA 0801921-3; Deposition Exhibit No. 592 No

8  Bates (1 page); MGA 001294-6; MGA 0007613; MGA 0007496; MGA 0842182;

9  MGA 0051566-7, MGA 004562-3, MGA 0836578-89; MGA 0066294-6; MGA

10  0067842-7; MGA 0836789; MGA 004814-40; MGA 005645-57; MGA 0009190-3;

11  MGA 0072161-7; MGA 0842199-201; MGA 0842189; MGA 0842185-7; MGA

12  0868092-3; MGA 0868100-3; MGA 0829273-89; MGA 0868129-30; MGA

13  0800982-5; MGA 0825342-9; MGA 0868139-40; Bryant 00208; Bryant 00204;

14  Bryant 00201; Bryant 00194; Bryant 00202; Bryant 00211; Bryant 00210; Bryant

15  00192; MGA 0868141-4; MGA 0822933-42; MGA004587; MGA 0047048-9;

16  MGA 0860577-9; M 0074054-6; M 0070398-9; MGA 0066084-8; LAF 0083; LAF

17  002; LAF 043; MGA 0046968-70; MGA 0049639-41; MGA 0046962-7; MGA

18  0049529-32; MGA 0046944-8; MGA 0046949-61; MGA 0046936-42;

19  MGA0001065 B; MGA 0868159-362; Deposition Exhibit No. 646 No Bates (39

20  pages); MGA 0052662-8; MGA 0808032; M 0109323-5; MGA 0072499; MGA

21  0024962-3; MGA 0835259-60; MGA 0203816-7; M 0070483-4; MGA 0863860-

22  73; MGA 0863874-87; MGA 0863888-901; MGA 0868693-706; MGA 0868707-

23  22; MGA 0868723-865; MGA 0101018-21; MGA 0815789; Bryant2 000017-26;

24  MGA 0868630-1; TP 0115; TP 0116; M 0016496; M 0016596; Deposition Exhibit

25  No. 669 No Bates (12 pages); Bryant 00176; Bryant 00177; Bryant 00189; Bryant

26  00190; Bryant 00216; Bryant 00217; Bryant 00300; Bryant 00183; Bryant 00186;

27  Bryant 00341; Bryant 00163; Bryant 00164; Bryant 00232; Bryant 00236; Bryant

28  00273; Deposition Exhibit No. 717 No Bates (1 page); Bryant 00228; Deposition

Exhibit _Z_, P. _24_

1   Exhibit No. 719 No Bates (1 page); Bryant 00235; Bryant 00221; Deposition

2   Exhibit No. 711 No Bates (1 page); Bryant 00237; Bryant 00297; Deposition

3   Exhibit No. 725 No Bates (1 page); Bryant 00223; Deposition Exhibit No. 727 No

4   Bates (1 page); Deposition Exhibit No. 728 No Bates (1 page); Bryant 00314;

5   Deposition Exhibit No. 730 No Bates (1 page); Deposition Exhibit No. 731 No

6   Bates (1 page); Bryant 01111; Bryant 00318; Deposition Exhibit No. 734 No Bates

7   (1 page); Bryant 00231; Deposition Exhibit No. 736 No Bates (1 page); Bryant

8   00313; Deposition Exhibit No. 738 No Bates (1 page); Bryant 00199; Deposition

9   Exhibit No. 740 No Bates (1 page); Bryant 00213; Deposition Exhibit No. 742 No

10   Bates (1 page); Bryant 00317; Deposition Exhibit No. 744 No Bates (1 page);

11   Bryant 00315; Deposition Exhibit No. 746 No Bates (1 page); Bryant 01110;

12   Deposition Exhibit No. 748 No Bates (1 page); Bryant 01112; Deposition Exhibit

13   No. 750 (1 page); Bryant 00179; Deposition Exhibit No. 752 No Bates (1 page);

14   Bryant 00180; Deposition Exhibit No. 754 No Bates (1 page); Bryant 00181; Bryant

15   00182; Bryant 00175; Bryant 00203; Deposition Exhibit No. 759 No Bates (1 page);

16   Deposition Exhibit No. 760 No Bates (1 page); Bryant 00200; Bryant 00178;

17   Deposition Exhibit No. 763 No Bates (1 page); Deposition Exhibit No. 764 No

18   Bates (1 page); Deposition Exhibit No. 765 No Bates (1 page); Bryant 01247;

19   Bryant 00202; Deposition Exhibit No. 768 No Bates (1 page); Bryant 00211;

20   Deposition Exhibit No. 770 No Bates (1 page); Bryant 02775; Bryant 001115;

21   Bryant 02777; Bryant 00194; Deposition Exhibit No. 775 No Bates (1 page); Bryant

22   00197; Deposition Exhibit No. 777 No Bates (1 page); Bryant 00222; Deposition

23   Exhibit No. 780 No Bates (1 page); Bryant 00208; Deposition Exhibit No. 782 No

24   Bates (1 page); Deposition Exhibit No. 783 No Bates (1 page); Deposition Exhibit

25   No. 784 No Bates (1 page); Deposition Exhibit No. 785 No Bates (1 page);

26   Deposition Exhibit No. 786 No Bates (1 page); Bryant 00220; Bryant 00230; Bryant

27   00229; Deposition Exhibit No. 790 No Bates (1 page); Bryant 00226; Bryant 00233;

28   Bryant 00234; Bryant 00206; Bryant 00204; Bryant 00201; Bryant 04965-76; MGA

Exhibit  2 , P.  25

1  0146604; MGA 0146905-6; MGA 0147303; MGA 0147327; MGA 0147888-9;

2  MGA 0153714; MGA 0154586; MGA 0154602-3; MGA 0154605-6; MGA

3  0156244; MGA 0877238-9, 0877242-7, 0877249-50; MGA 0877238-50; MGA

4  0877284-8; MGA 1165499-500; MGA 1753095; MGA 1753126; MGA 1753193;

5  MGA 1753235; MGA 1753319-21; MGA 1753312-8; MGA 1753241-2; MGA

6  1753327-31; MGA 1753324-6; MGA 1753364-75; MGA 1753380-3; MGA

7  0868630-91; Deposition Exhibit No. 824 No Bates (1 page); MGA 0068725-7;

8  Bryant 04434; Bryant 04436; Bryant 04439-40; Bryant 03001; Bryant 04458;

9  Bryant 01668-70; Deposition Exhibit No. 831 No Bates (5 pages); Bryant 00349-51;

10  Bryant 04883, 04888-922, 04930-6, 04923-9, 04937-68, 04974-6, 04969-73; MGA

11  0067500-4; MGA 0050733-6; MGA 0045943-66; M 0059728, 0059732, 0059724,

12  0059736, 0059748, 0059740, 0059708, 0059700, 0059716, 0059712, 0059704;

13  MGA 0015264; MGA 0018537-9; MGA 0015928-9; MGA 0015842-3; MGA HK

14  0009340-1; MGA 0048434-5; MGA HK 0001243-4; MGA 0070841-8; MGA

15  0070833-40; MGA HK 0002370-4; MGA HK 0002369; MGA HK 0002383-8;

16  MGA HK 0009169-89; Deposition Exhibit No. 929 No Bates (4 pages); Deposition

17  Exhibit No. 930 No Bates (17 pages); Deposition Exhibit No. 931 No Bates (13

18  pages); Deposition Exhibit No. 932 No Bates (16 pages); MGA HK 0002353-4;

19  MGA HK 0009066-125; MGA HK 0008974-6; MGA HK 0002602-3; MGA HK

20  0008919-24; MGA HK 0007748-9; MGA HK 0002952; MGA HK 0002953; M

21  0001570-81; MGA 0147524-6; Deposition Exhibit No. 943 No Bates (22 pages);

22  Deposition Exhibit No. 944 No Bates (1 page); MGA000425-6; M 0001553-7;

23  MGA 0868039-91; MGA 0873720-4; MGA 0873736; MGA 0883230-66, 290-5,

24  298-303; MGA 0883346-7; MGA 0883339-45; MGA 0883920-37, 62-3; MGA

25  0883995-4010; MGA 0883968-93; MGA HK 0009776-7; MGA 0046567-9; MGA

26  0061969-72; MGA HK 0011152-4; MGA HK 0002375-8; MGA HK 0011155-6;

27  Deposition Exhibit No. 1006 No Bates (1 page); Bryant 02774; Bryant 02776;

28  Bryant 02775; Bryant 02777; Deposition Exhibit No. 1111 No Bates (2 pages)

-313-

MATTEL, INC.'S SECOND SUPP. RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Exhibit 2, P. 26

1  MGA 0051574; M 0079181; MGA 0046493-4; M 0079187; M 0079201-2; MGA
2  0876578-85; Deposition Exhibit No. 1118 No Bates (3 pages); Bryant 00325;
3  Bryant 01003; Bryant 01201; Bryant 00794-9; Bryant 01200; Bryant 01202; Bryant
4  01234-5; Bryant 01203; Bryant 01204; Bryant 01211; Bryant 01094; Bryant 01212;
5  SABW-L 00001-12; SL00002; SL00001; SABW-M 00431; SABW-M 00436;
6  SABW-M 00429; SABW-M 00437; M 0032515; M 0013373-6; M 0066948; M
7  0032505; M 0032506; M 0021507; M 0032508; M 0032510; M 0032514; M
8  0032524; M 0032525; M 0032526-8; M 0034353-6; M 0034359-62; M 0041064-5;
9  M 0066951; M 0066950; M 0014331, M 0001489A; M 0110207-8; M 0110209-10;
10  M 0110211-2; M 0110213-4; M 0110215-6; M 0110217-8; M 0110219-20; M
11  0110221-2; M 0110223-4; M 0110225-6;  MGA HK 0001928; MGA HK 0001935;
12  MGA HK 004040-1; MGA HK 004042-4; MGA HK 0002940; MGA HK 0002924-
13  5; MGA HK 0002938-9; MGA HK 0002941-2; MGA HK 0002943-5; MGA HK
14  0002946-7; MGA HK 0002948-9; MGA HK 0002950-1; MGA HK 0002952; MGA
15  HK 0002953; MGA HK 0002957-8; MGA HK 0002997; MGA HK 0003000-2;
16  MGA HK 0003138-40; MGA HK 0004048; MGA HK 0004049-53; MGA HK
17  0004056-8; MGA HK 0004059-61; MGA HK 0004069-72; MGA HK 0004079-80;
18  Copyright registrations VA 1-378-648, VA 1-378-649, VA 1-378-650, VA 1-378-
19  651, VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-378-655, VA 1-378-656,
20  VA 1-378-657, VA 1-378-658, VA 1-378-659, VA 1-378-660, VAu 715-270, VAu
21  715-271 and VAu 715-273; M 0191294-6, 299-345; M 0254773-818; MGA
22  001295; MGA 0009008-17; MGA 0072188-9; MGA 0072032-5; MGA 0072028-
23  31; MGA 0072176-9; MGA 0008039-42; MGA 0072020-3; MGA 0008047A-50A;
24  MGA 1476883-4; MGA 1476891; MGA 0072199-219; MGA 0050753-4; MGA
25  0072039-40; MGA 0072041-2; MGA 0072043-4; MGA 0072045-6; MGA
26  0072161-7; MGA 0008648B-54B; MGA 0050729; MGA 0050728; MGA 0050461-
27  2; MGA 0050463; MGA 0072158-60; MGA 0008746-7; MGA 0072155-7; MGA
28  0072152-4; MGA 0072155-7; MGA 0072149-51; MGA 005090; MGA 0050598;

MATTEL, INC.'S SECOND SUPP. RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES.

Exhibit __2__, P. __27__

1  MGA 0050725-6; MGA 0066487; MGA 0072098-100; MGA 0072112-4; MGA
2  0072105-7; MGA 0072118-44; MGA 0050717; MGA 0072115-7; MGA
3  0008770A-3A; MGA 0052435; MGA 000706-8; MGA 000710-2; MGA 000714-6;
4  MGA 000718-20; MGA 000721-3; MGA 000724-6; MGA 000734; MGA 000727-
5  8; MGA 0072358-60; MGA 0072361-3; MGA 000678-80; MGA 000681-3; MGA
6  000684-6; MGA 000687-9; MGA 000691-3; MGA 0072326-8; MGA 0007002;
7  MGA 000699; MGA 007200; MGA 000703; MGA 0022099; MGA 0878994-5;
8  MGA 0842185; MGA 0878996-9007; MGA 0842184; MGA 0842182; MGA
9  002616-7; MGA 002620-4; MGA 002619; MGA 002630-1; MGA 002633-4; MGA
10  002636-7; MGA 0008859-61; MGA 0050570-1; MGA 0050711-2; MGA 0050554-
11  5; documents referring or relating to payments or compensation that Bryant and
12  other former Mattel employees received from Mattel and MGA; telephone records
13  produced in this action, including those showing communications between Bryant
14  and MGA while Mattel was employed by Mattel; and the tangible items produced
15  for inspection in this action, including all photographs and videotape of such
16  tangible items.
17         By way of further answer, this topic may be the subject of expert
18  testimony, which will be disclosed in the manner, and at the time, required for
19  expert disclosures pursuant to the Federal and Local Rules.
20         Mattel continues its factual investigation and currently has outstanding
21  discovery requests to Bryant and to MGA, as well as motions to compel Bryant and
22  MGA to disclose information relevant to this subject. Mattel reserves the right to
23  supplement this response and, consistent with its obligations under Federal Rule of
24  Civil Procedure 26(e), Mattel will supplement this response if Mattel receives
25  additional responsive information.
26
27
28

07209/2323329.2

-315-

MATTEL, INC.'S SECOND SUPP. RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Exhibit _2_, P. _28_

1        By way of further answer, this topic may be the subject of expert

2   testimony, which will be disclosed in the manner, and at the time, required for

3   expert disclosures pursuant to the Federal and Local Rules.

4        Mattel continues its factual investigation and currently has outstanding

5   discovery requests to Bryant and to MGA, as well as motions to compel Bryant and

6   MGA to disclose information relevant to this subject. Mattel reserves the right to

7   supplement this response and, consistent with its obligations under Federal Rule of

8   Civil Procedure 26(e), Mattel will supplement this response if Mattel receives

9   additional responsive information.

10

11  DATED: December 13, 2007          QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
12

13                                   By Jon D. Corey
                                        _____
14                                      Jon D. Corey
                                        Attorneys for Mattel, Inc.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

-507-
MATTEL, INC.'S SECOND SUPP. RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Exhibit 2 , P. 29

# EXHIBIT 3

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
7   Facsimile:  (213) 443-3100

8   Attorneys for Plaintiff Mattel, Inc.

9

10                   UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12                        EASTERN DIVISION

13  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

14              Plaintiff,                  Consolidated with Case Nos. CV 04-
                                            09059 and CV 05-02727
15       vs.
                                            MEMORANDUM OF POINTS AND
16  MATTEL, INC., a Delaware corporation,  AUTHORITIES OF MATTEL, INC. IN
                                            OPPOSITION TO MOTION OF MGA
17              Defendant.                  ENTERTAINMENT, INC. AND
                                            CARTER BRYANT FOR
18                                          TERMINATING SANCTIONS
    AND CONSOLIDATED ACTIONS
19                                          [Declarations of Fred T. Kawashima,
                                            Michael Moore, Richard De Anda, Jon
20                                          D. Corey, Timothy L. Alger, Michael T.
                                            Zeller and B. Dylan Proctor, filed
21                                          concurrently]

22                                          [Notice of Lodging lodged concurrently]

23                                          Date:   August 27, 2007
                                            Time:   10:00 a.m.
24                                          Place:  Courtroom 1

25                                          Discovery Cut-off: January 14, 2008
                                            Pre-trial Conference: April 7, 2008
26                                          Trial Date: April 29, 2008

27

28
    Exhibit __3__, P. 30

    07209/2191979.7                                    Case No. CV 04-9049 SGL (RNBx)
                MATTEL INC.'S OPPOSITION TO MOTION FOR TERMINATING SANCTIONS

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................. 1

STATEMENT OF FACTS ...................................................................... 2

ARGUMENT ................................................................................. 10

I.  MGA AND BRYANT HAVE NO CLEAR AND CONVINCING EVIDENCE THAT MATTEL KNOWINGLY DESTROYED RELEVANT EVIDENCE, AS REQUIRED ............................................. 10

    A.  Mattel's Litigation Hold Obligations Attached In Late 2003, At The Earliest ........................................................ 11

    B.  Mattel Preserved All Relevant Documents, And Certainly Did Not Knowingly Fail To Do So ....................................... 13

II.  MGA AND BRYANT HAVE NOT SHOWN EXTRAORDINARY CIRCUMSTANCES TO WARRANT DISMISSAL ....................................... 16

    A.  There Are No Extraordinary Circumstances ........................... 16

    B.  Mattel Did Not Act With Bad Faith, Willfulness Or Fault ............. 17

    C.  There Is No Nexus Between The Alleged Misconduct And The Merits Of The Case ................................................ 19

        1.  Mattel Has Overwhelming Evidence That Bryant Created Bratz While Employed By Mattel, And Aided By MGA ........... 19

        2.  The Allegedly Lost Evidence Does Not Even Bear On The Issues To Be Tried ......................................... 20

    D.  MGA and Bryant Were Not Prejudiced ................................. 22

    E.  Lesser Sanctions Are Available, Although they Are Not Appropriate Either ................................................ 23

III.  DEFENDANTS' HANDS ARE UNCLEAN ........................................... 23

CONCLUSION ............................................................................. 25

Exhibit _3_ , P. _31_

07209/2191979.6

# TABLE OF AUTHORITIES

**Page**

## Cases

Adriana Int'l Corp. v. Thoeren,
913 F.2d 1406 (9th Cir. 1990).................................................................23

Advantacare Health Partners v. Access IV,
2004 WL 1837997 (N.D. Cal. 2004)........................................................16

Agency Holding Corp. v. Malley-Duff & Associates, Inc.,
483 U.S. 143 (1987).................................................................................22

Akiona v. U.S.,
938 F.2d 158 (9th Cir. 1991)..............................................................17, 18

Anheuser-Busch, Inc. v. Natural Beverage Distribs.,
69 F.3d 337 (9th Cir. 1995).........................................................16, 17, 18

Bowmar Instrument Corp. v. Texas Instruments Inc.,
1977 U.S. Dist. LEXIS 16078 (N.D. Ind. 1977)......................................13

Broccoli v. Echostar Communications Corp.,
229 F.R.D. 506 (D. Md. 2005).........................................................14, 18

Cache La Poudre Feeds, LLC v. Land O Lakes, Inc.,
2007 WL 684001 (D. Colo. 2007)...........................................................17

Chambers v. NASCO, Inc.,
501 U.S. 32 (1991).................................................................................10

Columbia Pictures Industries v. Bunnell,
2007 WL 2080419 (C.D. Cal. 2007).......................................................18

Communications Center, Inc. v. Hewitt,
2005 WL 3277983 (E.D. Cal. 2005)........................................................25

Convolve, Inc. v. Compaq Computer Corp.,
223 F.R.D. 162 (S.D.N.Y. 2004).............................................................23

Daimler Chrysler Motors v. Bill Davis Racing, Inc.,
2005 U.S. Dist. LEXIS 38162 (D. Mich. 2005).......................................17

Estrada v. Speno & Cohen,
244 F.3d 1050 (9th Cir. 2001).................................................................16

In re Everett,
364 B.R. 711 (D. Ariz. 2007)..................................................................24

Fayemi v. Hambrecht & Quist, Inc.,
174 F.R.D. 319 (S.D.N.Y. 1997).............................................................24

Exhibit _3_ , P. _32_

FMC Technologies, Inc. v. Edwards,
    2007 WL 1725098 (W.D. Wash. 2007) ............................................ 11

Fink v. Gomez,
    239 F.3d 989 (9th Cir. 1991) ......................................................... 11

Google, Inc. v. Am. Blind Wallpaper Factory, Inc.,
    2007 U.S. Dist. LEXIS 48309 (N.D. Cal. 2007) ............................... 23

Halaco Engineering Co. v. Costle,
    843 F.2d 376 (9th Cir. 1988) .............................. 16, 19, 23, 24

Hall v. Wright,
    240 F.2d 787 (9th Cir. 1957) ......................................................... 24

Heller v. Plave et al.,
    1993 U.S. Dist. LEXIS 20936 (S.D. Fla. 1993) ............................... 12

Henry v. Gill Industries, Inc.,
    983 F.2d 943 (9th Cir. 1993) ................................................... 18, 23

Hobson v. Wilson,
    737 F.2d 1 (D.C. Cir. 1984) .......................................................... 21

Housing Rights Center v. Sterling,
    2004 U.S. Dist. LEXIS 28877 (C.D. Cal. 2004) .............................. 17

Hynix Semiconductor Inc. v. Rambus, Inc.,
    2006 WL 565893 (N.D. Cal. 2006) ........................................... 11, 13

In re Kmart Corp.,
    2007 WL 2198309 (N.D. Ill. 2007) ................................................ 11

Lamont v. Wolfe,
    142 Cal. App. 3d 375, 379 (1983) .................................................. 21

Leon v. IDM Systems Corp.,
    464 F.3d 951 (9th Cir. 2006) ................................................... 17, 18

Linnen v. A.H. Robins Co., Inc.,
    1999 WL 462015 (Mass. Sup. 1999) .............................................. 14

Maynard v. Nygren,
    332 F.3d 462 (7th Cir. 2003) ......................................................... 11

Mosaid Technologies Incorporated v. Samsung Electronic Co., Ltd.,
    348 F.Supp. 2d 332 (D.N.J. 2004) ................................................. 18

In re Napster, Inc. Copyright Litigation,
    462 F. Supp. 2d 1060 (N.D. Cal. 2006) ..................... 11, 12, 13, 16, 18

Nostalgia Network, Inc. v. Rayle,
    56 Fed. Appx. 344 (9th Cir. 2003) ................................................ 16

Padgett v. City of Monte Sereno,
    2007 U.S. Dist. LEXIS 23409 .................................................... 18

07209/2191979.6

Pennar Software Corp. v. Fortune 500 Systems Ltd.,
    2001 WL 1319162 (N.D. Cal. 2001) .................................................... 11

Phoceene Sous-Marine v. U.S. Phosmarine, Inc.,
    682 F.2d 802 (9th Cir. 1982) ............................................................... 10

Polar Bear Prod. v. Timex Corp.,
    384 F.3d 700 (9th Cir. 2004) ............................................................... 22

Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,
    324 U.S. 806 (1945) ............................................................................. 24

Residential Funding Corp. v. DeGeorge Financial Corp.,
    306 F.3d 99 (2d Cir. 2002) .................................................................. 23

Ritchie v. U.S.,
    451 F.3d 1019 (9th Cir. 2006) ............................................................. 10

Roadway Express, Inc. v. Piper,
    447 U.S. 752 (1980) ............................................................................. 10

Rohn v. U.S.,
    2002 WL 32123927 (E.D. Cal. 2002) ................................................. 11

Roley v. New World Pictures,
    19 F.3d 479 (9th Cir. 1994) ........................................................... 21, 22

Shepherd v. American Broadcasting Cos., Inc.,
    62 F.3d 1469 (D.C. Cir. 1995) ............................................................ 11

U.S. v. Kitsap Physicians Service,
    314 F.3d 995 (9th Cir. 2002) ......................................................... 12, 15

U.S. v. Lynch,
    437 F.3d 902 (9th Cir. 2006) ............................................................... 16

U.S. v. National Medical Enterprises, Inc.,
    792 F.2d 906 (9th Cir. 1986) ............................................................... 23

United States ex rel. Lujan v. Hughes Aircraft Co.,
    67 F.3d 242 (9th Cir. 1995) .......................................................... 16, 24

Wanderer v. Johnston,
    910 F.2d 652 (9th Cir. 1990) ............................................................... 23

Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc.,
    106 F.3d 894 (9th Cir. 1997) ............................................................... 21

Wm. T. Thompson Co. v. General Nutrition Corp., Inc.,
    593 F. Supp. 1443 (C.D. Cal. 1984) .............................................. 14, 17

Zubulake v. UBS Warburg LLC,
    220 F.R.D. 212 (SD NY 2003) ..................................................... 14, 23

1

**Statutes**

2  Local Rule 7-3 ................................................................................................. 2

3  Fed. R. Civ. P. 15(c) ........................................................................................ 21

4  Cal. Civ. Code § 3426.6 ................................................................................. 22

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit _3_, p. _35_

**Preliminary Statement**

From the beginning, defendants' strategy in this case was to conceal the true facts, including by obstructing discovery. Mattel has now obtained numerous Orders compelling discovery from them, and the evidence mounts with each. Evidence that Mattel has recently obtained powerfully shows that, on the merits, Mattel will prevail -- Bryant was disloyal and worked with MGA on Bratz while he was employed and paid by Mattel. This motion is a desperate attempt to avoid confronting that evidence with a get-out-of-jail-free card.

Indeed, defendants have already made many of the arguments they make here in opposing Mattel's Motion for Leave to Amend, and the Court rejected them. To justify their improper request for reconsideration, they accuse Mattel of "defrauding" the Court when Mattel said it had Zeus backup tapes for 1999 and 2000. Mattel has the tapes and long ago offered to produce them. They are still available whenever MGA and Bryant want them. Defendants also argue that emails have been lost since Bryant left Mattel, but they gloss over that Bryant left Mattel *in 2000*. Not even defendants contend Mattel had an obligation to preserve evidence before 2002. Emails relating to Bryant's work at Mattel were automatically deleted from the live servers, and the backup tapes reused, more than a year and a half before the date on which even defendants contend Mattel had to start keeping them.

The fact is that Mattel did not have any duty to preserve until late 2003. MGA and Bryant argue the duty was triggered in 2002 because of a Mattel security investigation, but that investigation concerned potential claims that are *not* at issue here. It did not relate to Bryant's creation of Bratz while he was a Mattel employee or his work for MGA while he was a Mattel employee. An obligation to preserve occurs when a claim is "probable." No claim was probable until late 2003, when Mattel first learned that Bryant worked for MGA while still employed by Mattel.

Exhibit _3_, P. _36_

MATTEL INC.'S OPPOSITION TO MOTION FOR TERMINATING SANCTIONS

1  Unwittingly, even MGA acknowledges in its motion that, prior to then, Mattel's

2  claims were not "probable" -- they were "speculative."[1]

3      As discussed below, Mattel also has preserved hundreds of terabytes of data

4  and expended many thousands of hours of legal personnel time alone in preserving

5  and collecting documents -- far more than defendants could claim.  There was no

6  spoliation.  Nor do defendants show that any documents essential to their claims or

7  defenses have been lost.  For example, MGA asserts (as it did on Mattel's Motion

8  for Leave to Amend) that a phone log from October 2000 would somehow counter

9  Mattel's claims.  The October 2000 phone logs were no longer accessible long

10  before the claims asserted here were "probable."  Moreover, a phone log only lists

11  phone numbers and dates of calls, not substance -- a log from October 2000 would

12  add nothing new, particularly since it is undisputed that Bryant was actively

13  working with MGA in October 2000 (and before) while employed by Mattel.  MGA

14  asserts that missing evidence could prove its statute of limitations defense, but it

15  could not possibly do so.  Among other reasons, that defense was ruled out six

16  months ago in accordance with well-settled law.

17      This motion has the sound and fury typical of hotly contested litigation, but

18  the evidence does not support it.  There was no willful destruction of pertinent

19  documents.  Defendants' motion should be denied.[2]

20                    **Statement of Facts**

21      **Mattel Learned of the Misconduct At Issue In This Case In 2003.**  Mattel did

22  not know of the present claims until 2003, precisely because, from the beginning,

23  defendants concealed their joint activities and misconduct.  When Bryant left

24  Mattel's employ in October 2000, he lied about where he was going, telling Mattel

25

26

---

27  [1] Mot. at 22:9-12.

28  [2] MGA and Bryant did not meet and confer before filing this motion, nor do they represent that they complied with Local Rule 7-3.  See Declaration of Jon D. Corey, ¶ 2; Declaration of Timothy L. Alger, ¶ 6.

1    that he was going to do "non-competitive" freelance work.[3]   After that, MGA

2    repeatedly made public statements about the origins of Bratz in the press that

3    claimed persons other than Bryant created Bratz -- sometimes Larian took credit for

4    inventing Bratz (either his kid's clothes inspired him or boredom with Barbie did),

5    sometimes he gave credit to his son for the idea.[4]   Similarly, Larian represented to

6    the U.S. Patent and Trademark Office that Bratz originated from him.[5]   MGA admits

7    that no public statement even recognizing Bryant as Bratz's creator was issued until

8    July 18, 2003, when the Wall Street Journal published an article saying that.[6]

9         In late November 2003, Mattel first learned that Bryant had worked for MGA

10    while employed by Mattel when it obtained a copy of the agreement MGA and

11    Bryant signed while he worked for Mattel.[7]   As this Court has noted, MGA has

12    acknowledged that Mattel was only on notice of its breach of contract-related claims

13    on November 24, 2003.[8]   Mattel sued Bryant on April 27, 2004, accusing him of

14    working for MGA, using Mattel resources, while employed by Mattel.[9]

15    <u>When Mattel Learned of Bryant's Disloyalty, It Took Steps To Preserve</u>

16    <u>Relevant Evidence.</u>   When it learned of Bryant's disloyalty, Mattel investigated and

17    took steps to preserve relevant evidence.   For every percipient Mattel witness Mattel

18

19

20    [3]  Tr. of Jill Nordquist Depo. dated July 31, 2007 at 124:18-125:8, attached as
     Exh. 1 to the Declaration of B. Dylan Proctor, filed concurrently.
21    [4]  July 8, 2003 Business Week, March 5, 2004 Chicago Sun-Times and March
     29, 2004 San Fernando Valley Business Journal articles, Proctor Dec., Exhs. 2-4.
22    [5]  U.S. Patent Application, U.S. PTO Dec'n, Proctor Dec., Exhs. 35, 36.
     [6]  MGA's Responses to Mattel's Requests for Admission (Third Set) at 120
23    (Resp, to RFA No. 185), Proctor Dec., Exh. 5 (MGA searched for and was unable to
     find a prior public statement).
     [7]  Declaration of Michael Moore, ¶ 4; Bryant's Contract With MGA "as of
24    September 18, 2000," attached as Exhibit 1 to Moore Dec.; Mattel's April 27, 2004
     Complaint at 4, ¶ 12, Proctor Dec. Ex. 6.
25    [8]  Order Re Mattel's Motion For Leave To Amend, entered January 12, 2007
     ("Order re FAC") at 14:6-11, Proctor Dec., Exh. 7 ("According to MGA, . . .
26    [Mattel] was aware of the facts alerting it to this claim (insofar as Bryant's contract
     is concerned) on November 24, 2003, when it learned 'that Bryant worked with
27    MGA to develop the 'Bratz' dolls prior to his last day of employment by Mattel and
     hence, prior to the expiration of his contractual relationship with Mattel.") (quoting
28    MGA's Opp. re. FAC at 18, Proctor Dec., Exh. 8).
     [9]  Mattel's Complaint, ¶¶ 12, 18, 23, 30, 41, Proctor Dec., Exh. 6.

1  could identify and find, Mattel collected emails and other documents that were

2  stored on Mattel's data servers or personal hard drives, or that could be found in

3  hard copy, and advised them to preserve evidence.[10]  Mattel imaged employee hard

4  drives and preserved over one hundred of them.[11]  Mattel preserved e-mails and any

5  hard drives it could locate in its possession for the percipient witnesses defendants'

6  motion identifies -- Ward, Park, Martinez, Driskill and Treantafelles -- and many

7  more.[12]  Bryant was obviously included in the e-mail and hard drive searches.[13]

8       <u>Mattel's 2002 "Investigation" Did Not Lead To Mattel's Claims in This Case.</u>

9  Defendants argue that Mattel had a duty to preserve evidence as of March 2002

10  based on a Spring 2002 investigation conducted by Mattel and an August 2002

11  anonymous letter sent to Mattel.  They claim that Mattel's 2004 "complaint

12  contained, *almost verbatim*, the allegations that Mattel investigated in 2002."[14]  The

13  claims investigated in 2002 have *not* been asserted in this case.  In March 2002,

14  Mattel investigated allegations of possible copyright infringement of "Toon Teens"

15  designs, not whether Mr. Bryant created Bratz or worked with MGA during his

16  Mattel employment.[15]  The same allegations relating to copyright infringement of

17  "Toon Teens" were reported in the <u>Wall Street Journal</u> in 2003.[16]  Mattel has not

18  asserted Toon Teens copyright claims in this case; in fact, it has been explicit that it

19  is not pursuing any such copyright infringement claim.[17]  In its 2004 Complaint,

20  Mattel asserted tort and breach of contract claims because it learned that Bryant

21

22

---

23  [10] Moore Dec. ¶¶ 5-11.
     [11] Id. ¶ 9.
24  [12] Id. ¶¶ 8, 9.  <u>See also</u> Mot. at 12:17-20.
     [13] Moore Dec., ¶¶ 6, 8.
25  [14] Mot. at 6:27-28.
     [15] Declaration of Richard De Anda, ¶ 2.  As Mr. De Anda has confirmed,
26  Cassidy Park's March 28, 2002 statement about "the design of Lily Martinez" (Burr
    Dec., Exh. 4) refers to Toon Teens.  De Anda Dec. Re Defendants' Joint Motion to
27  Compel, lodged concurrently.
     [16] Wall Street Journal Article, Proctor Dec., Exh. 11.
28  [17] Tr. of Jan. 8, 2007 Proceedings re. FAC at 6:7-7:1, Proctor Dec., Exh. 12;
    Order re FAC at 15:13-16:11, Proctor Dec., Exh. 7.

1   worked for MGA while Mattel paid him.[18]  Mattel learned in discovery that Bryant

2   created Bratz and worked with MGA to develop it while Mattel paid him, and filed

3   amended claims to clarify that it contends it owns Bratz based on Bryant's

4   Inventions Agreement with Mattel.[19]  None of Mattel's claims asserts infringement

5   of any Toon Teens copyright.[20]

6       Even With An Earlier Notice Date, No Bryant Emails Could Possibly Have

7   Been Spoliated.  Mattel has for many years had a policy of retaining e-mails on its

8   live servers for only 90 days.[21]  MGA asserts that Bryant e-mails were lost because

9   Mattel did not suspend that policy, but that ignores that Bryant left Mattel in

10  October 2000.[22]  Any e-mails Mr. Bryant sent or received, including e-mails

11  pertaining to his work on Bratz while at Mattel, were deleted from the e-mail servers

12  and backup tapes were overwritten by early 2001 at the latest -- long before the

13  March 15, 2002 date on which MGA claims Mattel should have started preserving

14  documents, and even before Bratz was first sold in stores.[23]

15      Mattel Preserved Documents Pertaining To MGA's Complaint.  On April 13,

16  2005, MGA served Mattel with a complaint alleging that Mattel engaged in "serial

17  copycatting" of the Bratz dolls and other MGA products, and that certain alleged

18  conduct by Mattel with buyers, licensees, industry associations, vendors and other

19

20  _____

    [18]  Mattel's Complaint at 5-11, Proctor Dec. Exh. 6.
21  [19]  Mattel's Second Amended Answer and Counterclaims dated July 12, 2007 at
    53-54, ¶¶ 82-87, Proctor Dec. Exh. 13.
22  [20]  MGA's counsel has submitted a false declaration in this regard.  Counsel
    declares that Mattel has "not explained" its redactions to an e-mail about the 2002
23  investigation.  Burr Dec., ¶ 6.  However, Mattel produced the document together
    with a privilege log stating the redactions reflect opinions of legal counsel.  Mattel's
24  Supp. Priv. Log Dated February 23, 2007 at 7 (Item No. 29), Proctor Dec., Exh. 9.
    When MGA challenged the propriety of the redaction, Judge Infante reviewed the
25  un-redacted document *in camera* and *sustained* Mattel's redactions to the document
    on the basis of privilege.  Jul. 10, 2007 Order at 1-2, Proctor Dec., Exh. 10.
26  [21]  Mattel preserved e-mail messages on its e-mail servers for 90 days and
    recycled backup tapes every 30 days.  Depo. Tr. of Fred T. Kawashima (Vol. 1)
27  dated Jan. 17, 2007 ("Kawashima Tr.") at 157:3-158:10, Proctor Dec. Exh. 14.
    [22]  Depo. Tr. of Carter Bryant ("Bryant Tr."), dated November 4, 2007, at 55:15-
28  55:21, Declaration of Michael T. Zeller filed concurrently ("Zeller Dec."), Exh. 1.
    [23]  Moore Dec. ¶ 6.

Exhibit  3 , P. 40          -5-          Case No. CV 04-9049 SGL (RNBx)
                    MATTEL INC.'S OPPOSITION TO MOTION FOR TERMINATING SANCTIONS

1  third parties harmed MGA.[24]  Mattel did not have prior notice that these claims were

2  probable, and MGA does not argue otherwise.  Three days after service of the

3  complaint -- on April 16, 2005 -- MGA sent Mattel a document preservation letter.[25]

4  Two days later, Mattel instructed all Mattel employees to preserve evidence relevant

5  to MGA's newly asserted claims.[26]

6      Mattel responded to MGA shortly thereafter, advising by letter that it would

7  preserve several broad categories of documents which tracked MGA's allegations,

8  including the "My Scene," "Acceleracers," "Wee 3 Friends" and other product lines,

9  communications with MGA and other categories of documents.[27]  Mattel then

10  explained that its e-mail retention period is 90 days, that the allegations in MGA's

11  complaint related to past conduct and that preserving the millions of future,

12  irrelevant e-mails that traverse Mattel's servers each month would cost hundreds of

13  thousands of dollars a year.  *Mattel told MGA, inviting a response, that it did not*

14  *plan to suspend its 90 day retention policy.*[28]  MGA never responded.[29]

15      Instead, MGA chose to remain silent, wait two years and then move for

16  sanctions based on Mattel's disclosed preservation practices, now arguing that

17  Mattel should have suspended its 90-day retention policy.[30]  Within three days of

18  MGA's preservation letter, Mattel took steps to ensure that e-mails *were* preserved.

19  Every day Mattel does a backup of e-mails on its exchange servers.[31]  On April 19,

20  2005, five days after MGA filed suit, Mattel stopped recycling backup tapes of the

21  e-mails on its El Segundo exchange servers.[32]  Mattel has preserved about 4200

22

23

24  [24] MGA's Complaint filed on April 13, 2005 at 2, Proctor Dec., Exh. 16.
25  [25] MGA Letter to Mattel dated April 16, Proctor Dec., Exh. 17.
   [26] Kawashima Tr. (Vol. 2) at 366:1-14. Proctor Dec., Exh. 15.
26  [27] Mattel Letter to MGA dated May 3, 2005, Proctor Dec., Exh. 18.
   [28] Id.
27  [29] Mattel Letter to MGA dated June 11, 2007, Proctor Dec., Exh. 19.
   [30] Mot., §II(A) at 3-4.
28  [31] Kawashima Tr. (Vol. 2) at 475:20-476:4, Proctor Dec., Exh. 15.
   [32] Id. at 300:4-21, MGA admits Mattel implemented this process. Mot. at 4:4-6.

1  tapes.[33]  This process has cost Mattel $500,000 to date for tapes alone.[34]  The Court

2  previously ruled that the existence of e-mail backups defeats any spoliation claim.[35]

3       Mattel's 90-day retention policy ensures effective and stable server

4  performance, *i.e.*, delivery of e-mail.[36]  The accumulation of e-mails on Mattel's live

5  servers that MGA now demands would crash these servers.[37]  Mattel's retention

6  period policy and rotation of backup tapes is typical of the policies of other

7  reputable companies such as, for example, Microsoft, TRW, DreamWorks and

8  TCW.[38]  While MGA suggests that Mattel should have suspended the auto-delete

9  policy for individual mailboxes, that is not currently possible, and the only possible

10 workaround would require dramatic configuration changes to the servers.[39]  Given

11 Mattel's preservation of *complete* backup tapes, such dramatic changes were not

12 called for.  That MGA did not respond when Mattel advised it was not discontinuing

13 its preexisting policy for its live servers is telling.[40]

14       MGA asserts that Mattel did not preserve evidence relevant to the "early"

15 development of Mattel's "My Scene" line, but Mattel preserved "My Scene"

16 evidence as soon as MGA filed its lawsuit making claims regarding "My Scene."[41]

17 Mattel's claims against Bryant in April 2004 were unrelated to the "My Scene" dolls,

18 and there was no reason to preserve such evidence at that time.  In any case,

19

20  [33] Id. at 475:13-19.  See also Alger Dec., ¶¶ 3-5 (Mattel has collected, reviewed
    and produced hundreds of thousands of pages of pages of documents, including
21  electronic files).
    [34] Declaration of Fred T. Kawashima Dec. ¶ 3.
22  [35] Order re FAC at 13:2-5, Proctor Dec., Exh. 7 ("Noticeably absent from
    MGA's [spoliation] argument is any evidence that the e-mails so deleted from a
23  Mattel employee's inbox are forever lost or, as is far more likely, whether such
    information remains or is otherwise archived on some backup file . . .").
24  [36] Kawashima Tr. (Vol. 1) at 256:11-21, Proctor Dec., Exh. 14.
    [37] Id. at 256:24-257:3 ("If you rely on the user population to perform their own
25  housekeeping, they won't.  They'll just let e-mail grow and grow consuming
    valuable disk space which will eventually impede performance and shut the server
26  down.").
    [38] Id. at 215:3-217:13.
27  [39] Kawashima Tr. (Vol. 2) at 381:4-11, 389:10-390:22, 394:25-396:1, 397:2-
    403:2, Proctor Dec., Exh. 15.
28  [40] Mattel Letter to MGA dated June 11, 2007, Proctor Dec., Exh. 19.
    [41] Mot. at 23:20; Proctor Dec., Exh. 18.

1  fortuitously Mattel *has* preserved documents relevant to the "My Scene" doll line

2  since 2003 because of a separate litigation that involved those dolls.[42]

3     <u>Mattel Offered to Produce 1998 through 2001 Zeus Backup Tapes, But</u>

4  <u>Defendants Did Not Accept.</u>  Defendants accuse Mattel of defrauding the Court by

5  representing that it possesses "Zeus" backup tapes.  Mattel does possess such tapes,

6  and offered them to MGA and Bryant in 2005.[43]  They did not accept.[44]  As part of

7  the investigation that led to the claims asserted in this case, Mattel searched for

8  backup tapes of servers containing files from 1999 and 2000, including Zeus, a

9  network data server.[45]  Mattel has located and preserved older Zeus backup tapes for

10  April, May, August, September and December, 1998; January and February, 1999;

11  February, March, April, May, June, July, August and December, 2000; and January

12  and July, 2001.[46]  That is what Mattel previously offered to defendants, and they can

13  have them now if they want them.  In any case, as the Court noted when MGA last

14  raised this issue, that Bryant claims he never used Zeus, and that his access to other

15  Mattel projects was non-electronic, diminishes the relevance of this entire issue.[47]

16     <u>Mattel Discovered In 2003 That It Had No Records of October or December</u>

17  <u>2000 Phone Calls.</u>  Defendants assert that Mattel intentionally destroyed telephone

18  logs from October 2000.[48]  However, those logs ceased to exist within months of

---

[42] Moore Dec. ¶¶ 12-13.

[43] Zeller Dec. in support of Reply Re FAC, ¶ 14, lodged concurrently.

[44] Id.

[45] Moore Dec. ¶ 11; Depo. Tr. of Julia Marine (Vol. 1) at 42:23-44:8, Proctor Dec., Exh. 20.

[46] Moore Dec. ¶ 11. Ms. Marine, on whose testimony defendants rely for their fraud on the Court argument, was not responsible for tapes searched and preserved for this litigation, and she expressly testified she did not know the dates of the tapes given to the Law Department for preservation. Marine Tr. (Vol. 3) at 240:7-20, 244:10-245:1, Proctor Dec., Exh. 22.

[47] Order re FAC at 12:4-8 ("MGA's point that access to what was on the Zeus computer system is vital in demonstrating that Bryant was not exposed to or otherwise did not hack the system to steal other designers work is diminished to some extent by the fact that Bryant himself testified that he did not use the Zeus computer system and was 'pretty much computer illiterate' while employed at Mattel."); Bryant Tr. at 237:17-239:25, Zeller Dec., Exh. 1.

[48] Mot., §II(H)(c) at 14.

Exhibit __3__, P. __43__

MATTEL INC.'S OPPOSITION TO MOTION FOR TERMINATING SANCTIONS

1   Bryant's departure, again long before Mattel allegedly had a duty to preserve.   In

2   2000, Mattel logged phone calls on a PC hardwired to its main phone switch using

3   "Micro Call" software.[49]   The logs do not show the substance of conversations -- just

4   originating number from Mattel, telephone number dialed, date, time and duration.[50]

5   The PC itself had capacity for only two and a half months of calls, at most.[51]   As of

6   January 2001, October 2000 phone log information was no longer on the Micro Call

7   PC.[52]   Mattel archived Micro Call logs from the PC on archive tapes and discovered

8   some archive tapes from the relevant time period while searching for phone logs, but

9   could not locate any tapes for October and December 2000.[53]

10        Even if they existed, these logs could not possibly help defendants' cause.

11   Logs from even earlier -- including September 2000 -- have been produced, and

12   reveal calls between Bryant (at Mattel) and MGA.[54]   Other evidence, including other

13   phone records, reveals contacts between them in October.[55]   The absence of still

14   further contacts in October (which is all the logs could show) would prove nothing.

15        Mattel Has Preserved "Diva Starz" Evidence.   Defendants assert that Mattel

16   failed to preserve evidence about the "Diva Starz" doll line.[56]   Mattel did not know

17   the "Diva Starz" line was potentially relevant to its claims against Bryant and MGA

18

19   [49]   Tr. of Depo. of Rodney Palmer at 43:23-45:2, Proctor Dec., Exh. 23.  The PC
     used was changed in 2003. Id. at 47:19-25.
20   [50]   Id. at 55:20-56:4, 57:13-58:9 (incoming phone numbers not recorded).
     [51]   Id. at 90:17-92:1.
21   [52]   Id. at 86:19-87:10 (phone log information put on tapes monthly).
     [53]   Id. at 51:7-25, 56:24-57:8, 86:19-87:17; Moore Dec. ¶ 10.  The archive tapes
22   were on a three-year rotation policy, which stopped in early 2003 when Mattel
     began archiving log information to a network drive. Id.
23   [54]   MicroCall Log for Bryant, at M 0001820-1823, Proctor Dec., Exh. 24; Palmer
     Tr. at 109:1-24.
24   [55]   Bryant admits he discussed Bratz with MGA by telephone while he was
     working at Mattel. Bryant Tr. at 170:16-172:5, Zeller Dec., Exh. 1.  Phone logs that
25   Bryant has produced also reveal twenty-eight calls with MGA, Margaret Hatch-
     Leahy and Veronica Marlow between October 3 and 19, 2000. Bryant's Tel. Bills at
26   BRYANT 1288 (Oct. 2000), Proctor Dec., Exh. 25; Marlow Tel. Bills at SABW-M
     00072-77, 148 (Oct. 2000), Proctor Dec., Exh. 26.  Ms. Hatch-Leahy worked for
27   MGA at the time, and before that worked for Mattel.  Bryant identified Ms. Marlow
     as the first person who suggested that he take the Bratz idea to MGA -- she was
28   doing design work for MGA at the time.  Bryant Depo. at 5:10-9:6.
     [56]   Mot. at 23:22-24:13.

1  until it discovered, beginning in 2005 (in the context of an unrelated litigation),

2  documents and designs for the "Diva Starz" project that were never publicly

3  released, that pre-date the release of Bratz, and that show that "Diva Starz" dolls

4  share certain common elements with Bratz dolls.[57]   Mattel also discovered during

5  that time that MGA's project manager for Bratz, Paula Garcia, had worked on the

6  Diva Starz project while she and Bryant were Mattel employees.[58]   Hence, the

7  relevance of "Diva Starz" to this suit was not known to Mattel until 2005.   Since

8  then (and, because of separate litigation, even before then), Mattel has preserved

9  more than 70 boxes worth of documents, electronic files, e-mail and tangible items

10  related to "Diva Starz," including those of Diva Starz designers Maureen Mullen,

11  Rene Pasko, Kislap Ongchangco and Joni Pratte, and Rob Hudnut.[59]

12  <u>Argument</u>

13  **I.   MGA AND BRYANT HAVE NO CLEAR AND CONVINCING**

14  **EVIDENCE THAT MATTEL KNOWINGLY DESTROYED**

15  **RELEVANT EVIDENCE, AS REQUIRED**

16  MGA and Bryant rely exclusively on the Court's inherent power to levy

17  sanctions.[60]   This inherent power "is not a broad reservoir of power, ready at an

18  imperial hand, but a limited source; an implied power squeezed from the need to

19  make the court function," <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 42 (1991), which

20  "must be exercised with restraint and discretion." <u>Roadway Express, Inc. v. Piper</u>,

21  447 U.S. 752, 764 (1980).   Defendants must prove that Mattel willfully spoliated

22  relevant evidence by clear and convincing evidence. <u>Ritchie v. U.S.</u>, 451 F.3d 1019,

23  1026 (9th Cir. 2006) ("bad faith must be proven by clear and convincing evidence")

24  (citing <u>Phoceene Sous-Marine v. U.S. Phosmarine, Inc.</u>, 682 F.2d 802, 806 n.13 (9th

25  Cir. 1982) (noting that "fraud on the court" must be proved by clear and convincing

26

27  [57] Moore Dec. ¶ 16, Exh. 4.
   [58] See Pasko Tr. at 42:13-20, 95:15-96:11, Proctor Dec., Exh. 37.
28  [59] Moore Dec., ¶¶ 14-15.
   [60] Their Notice cites no legal basis for their motion, but <u>see</u> Mot. at 15:10-13.

1   evidence)); Fink v. Gomez, 239 F.3d 989, 994 (9th Cir. 1991) (even "recklessness"

2   is insufficient to justify terminating sanctions under the court's inherent power).[61]

3   They have not done so, and cannot do so.

4        A.    **Mattel's Litigation Hold Obligations Attached In Late 2003, At The**

5              **Earliest**

6        For a litigation hold obligation to attach, the potential claims must be

7   *"probable,"* which means *"more than a possibility."* In re Napster, Inc. Copyright

8   Litigation, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006) (citing Hynix

9   Semiconductor Inc. v. Rambus, Inc., 2006 WL 565893 at *21 (N.D. Cal. 2006))

10  (emphases added). In Napster, the court found that (i) a Napster investor's receipt

11  of documents in litigation against Napster, and (ii) the investor's entering into a joint

12  defense agreement with Napster, were *not* sufficient to trigger litigation hold

13  obligations; rather, the obligation attached only after one of the plaintiffs suing

14  Napster expressly told the investor he would also sue the investor if copyright

15  infringement continued, making litigation "probable." Id. at 1068-1069. Even the

16  initiation of a litigation strategy does not require a litigation hold. See Hynix, 2006

17  WL 565893 at *22-24 (preservation obligation attached when defendant determined

18  that litigation was "necessary or wise" to protect its intellectual property rights, not

19  with initiation of a litigation strategy); In re Kmart Corp., 2007 WL 2198309, at

---

[61]   See also Pennar Software Corp. v. Fortune 500 Systems Ltd., 2001 WL
1319162 at *5 (N.D. Cal. 2001) ("There must be clear and convincing evidence of
misconduct before a punitive sanction such as a dismissal or default judgment is
entered.") (citing Shepherd v. American Broadcasting Cos., Inc., 62 F.3d 1469,
1476-1477 (D.C. Cir. 1995)); Rohn v. U.S., 2002 WL 32123927 at *1 n.2 (E.D. Cal.
2002) (citing Shepherd to apply clear and convincing standard to dismissal sanctions
request); Maynard v. Nygren, 332 F.3d 462, 468 (7th Cir. 2003) (applying clear and
convincing standard to dismissal request based on willfulness, bad faith, or fault);
FMC Technologies, Inc. v. Edwards, 2007 WL 1725098 at *10 (W.D. Wash. 2007)
(no evidentiary sanctions awarded where "allegations regarding the destruction of
computer files are anything but clear" and the Court "cannot find [spoliation]
assertions any more or less credible than [the other side's] explanations for the
'missing' data.").

1   *17-18 (N.D. Ill. 2007) (filing bankruptcy proof of claim insufficient to start

2   litigation hold obligation; it did not mean litigation was "pending" or "impending").

3        Defendants argue that Mattel should have been preserving documents as of

4   March 2002, when Mattel investigated possible copyright infringement of Toon

5   Teens. That argument ignores that Mattel is not suing and never has sued MGA or

6   Bryant for infringement of any Toon Teens copyright. Defendants do not cite any

7   authority for the proposition that an investigation which does *not* lead to a lawsuit

8   on the investigated matter can nevertheless give rise to a duty to preserve. To the

9   contrary, the law is clear that an investigation, in and of itself, does not trigger a

10  company's obligation to preserve evidence –– even where the investigation is of

11  allegations that *are* eventually brought in court. <u>U.S. v. Kitsap Physicians Service</u>,

12  314 F.3d 995, 1001 (9th Cir. 2002) (defendant did not have a duty to preserve when

13  it initiated an internal investigation into allegations of fraudulent billings that

14  plaintiff eventually sued upon); <u>see also</u> <u>Heller v. Plave et al.</u>, 1993 U.S. Dist.

15  LEXIS 20936, at * 37-38 (S.D. Fla. 1993) (defendants' interview of plaintiff's

16  accountant held to be insufficient notice of plaintiff's claims where interview was

17  "the first of several events upon which [the] lawsuit [was] based").

18       Moreover, even if (contrary to fact) Mattel had sued upon the claim it

19  investigated in 2002, there still was no duty to preserve because the speculative

20  information available to Mattel at that time did not render litigation "probable" or

21  "wise," as required. In fact, MGA and Bryant concede in their opposition that the

22  claims Mattel investigated in 2002 and 2003 were speculative, asserting that "Mattel

23  deliberately delayed bringing this lawsuit for years because *it knew its claims were*

24  *speculative* . . . ."[62] Precisely because the claims now at bar were "speculative" in

25  2002 (and indeed totally unknown to Mattel), they were not "probable," and Mattel

26  had no duty to preserve. <u>See</u> <u>Napster</u>, 462 F. Supp. 2d at 1068.

27

28

---

[62]   Mot. at 22:9-12.

Nor did the August 5, 2002 "anonymous letter"[63] give rise to a duty to preserve. The letter's author (whoever it was) offered no evidence for his or her allegations. That letter is clearly insufficient -- it did not provide notice of a claim that was "probable," Napster, 462 F. Supp. at 1068-1069, or "wise," Hynix, 2006 WL 565893, at *22-24. See also Bowmar Instrument Corp. v. Texas Instruments Inc., 1977 U.S. Dist. LEXIS 16078, at *12-13 (N.D. Ind. 1977) ("rumors" and "innuendo" about possible litigation insufficient to attach preservation obligation). Indeed, the Court has recognized this before: "I certainly know that O'Melveny & Myers would not file a complaint based on an anonymous letter from somebody suggesting that there is a copyright infringement."[64]

Contrary to defendants' speculations, Mattel first learned of a probable claim in late 2003, at the earliest. It was then that Mattel first obtained evidence that Bryant worked for MGA while employed by Mattel, when it obtained a copy of the MGA/Bryant agreement revealing that. Before that, no claims were probable, and the investigated claims were never brought.

**B.    Mattel Preserved All Relevant Documents, And Certainly Did Not Knowingly Fail To Do So**

Mattel gathered and preserved evidence as soon as it was obligated to do so. Once it learned of the facts giving rise to the claims at bar, Mattel searched for and preserved all relevant documents from every individual likely to have relevant or discoverable information.[65] This included computer hard drives, emails and paper documents, among other things.[66] Once MGA filed its lawsuit, Mattel greatly expanded its preservation efforts in light of the expanded scope of the issues, at

---

[63]  Proctor Dec., Exh. 27.
[64]  Jan. 8, 2007 Hearing Tr. at 16:14-17:7, Proctor Dec., Exh. 12
[65]  Moore Dec. ¶¶ 6-11.
[66]  Id.

Exhibit 3, P. 48

-13-

MATTEL INC.'S OPPOSITION TO MOTION FOR TERMINATING SANCTIONS

1  substantial expense.[67]  Mattel did not destroy any relevant information, let alone do

2  so willfully to prejudice defendants.

3          Defendants fault Mattel for failing to "suspend its routine document retention

4  and destruction policies."[68]  However, no case they cite supports the breathtaking

5  proposition that Mattel had to retain every e-mail on its live exchange servers or

6  reconfigure its servers to create a different retention rule on a mailbox-by-mailbox

7  basis.  A litigant has no duty to preserve every document in its possession.  Wm. T.

8  Thompson Co. v. General Nutrition Corp., Inc., 593 F. Supp. 1443, 1455 (C.D. Cal.

9  1984).  A party has to preserve only what it knows, or reasonably should know, is

10  relevant in the action, is reasonably calculated to lead to the discovery of admissible

11  evidence, is reasonably likely to be requested during discovery and/or is the subject

12  of a pending discovery request.  Zubulake v. UBS Warburg LLC, 220 F.R.D. 212,

13  217-218 (SD NY 2003).  There is nothing improper about Mattel's e-mail retention

14  policy; it is standard for large corporations.[69]   Courts have found that 90-day

15  retention period policies and thirty-day recycling of back-up tapes are reasonable

16  retention policies.  Broccoli v. Echostar Communications Corp., 229 F.R.D. 506,

17  510 (D. Md. 2005) (under normal circumstances, a retention policy that deletes e-

18  mails even after only thirty days with no backups is acceptable); Linnen v. A.H.

19  Robins Co., Inc., 1999 WL 462015, at *1 (Mass. Sup. 1999) (three month retention

20  of internal communications and recycling of backup tapes for such information is "a

21  widely accepted business practice").

22          As soon as it had a probable claim, Mattel preserved the evidence it could

23  locate relevant to the claims it anticipated bringing.  The suggestion that Mattel

24  should have stopped its 90-day retention policy in November 2003 (or even 2002),

25  and crashed its servers, is unfounded.  Any Bryant-related e-mails (beyond those

26

27

28

---

[67]  Mattel Letter to MGA dated May 3, 2005, Proctor Dec., Exh. 18.
[68]  Mot., §III(A)(3) at 17-18.
[69]  Kawashima Tr. (Vol. 1) at 215:3-217:13.

1   that Mattel had on paper form or stored in locations other than its servers) had long

2   since left Mattel's e-mail servers when Mattel learned, notwithstanding defendants'

3   concealment, of Bryant's disloyalty.  Suspending the 90-day retention policy years

4   after Bryant worked at Mattel would have preserved nothing relevant.  Defendants

5   suggest at one point that Mattel had a duty to preserve e-mails dating back to the

6   1998-2001 time frame -- before Bratz was introduced, and long before defendants

7   contend Mattel had notice of its claims.[70]  But Mattel obviously had no duty to

8   preserve documents before it learned of Bryant's misconduct.  <u>U.S. v. Kitsap</u>

9   <u>Physicians Service</u>, 314 F.3d 995, 1001 (9th Cir. 2002) (no spoliation where

10   documents were destroyed in normal course of business before party had notice).

11        Defendants accuse Mattel of failing to preserve Zeus backup tapes.  As

12   discussed, Mattel has the tapes it said it had.[71]  Perhaps recognizing that, MGA and

13   Bryant argue that Mattel "destroyed" Zeus backup tapes when it disposed of tape

14   drives for those tapes after it stopped using DLT tapes.[72]  The Court has already

15   rejected that argument, holding that the fact that Mattel's IT Department no longer

16   has the hardware to read those tapes "certainly does not demonstrate that the

17   information on those backup tapes has been 'eliminated' or forever lost . . . . [T]o

18   argue, as MGA does, that the information is 'unavailable' or 'lost' . . . exaggerates its

19   plight."[73]  A CD owner does not "destroy" the music on the CD when he or she loses

20   or sells a CD player, yet that is essentially all defendants can argue here.[74]

21

22

23

24

---

25   [70] Mot. at 9:23-25; 12:17-18.

    [71] Mot., §II(G) at 10-11.

26   [72] Mot. at 8:23-9:1; Marine Tr. (Vol. 2) at 119:10-13, Proctor Dec., Exh. 21.

    [73] Order re FAC at 11:19-25, Proctor Dec., Exh. 7.

27   [74] Notably, these tapes are not unique to Mattel.  Indeed, vendors tout their

ability to read and restore DLT backup tapes.  Zeller Dec. Re FAC ¶ 14, lodged

28   concurrently; <u>see also</u> <u>e.g.</u>, http://www.bluestarcs.com/backup_tape.html, Proctor

Dec., Exh. 28 (vendor's website stating it can restore and read on DLT tapes).

1  **II.   MGA AND BRYANT HAVE NOT SHOWN EXTRAORDINARY**

2  **CIRCUMSTANCES TO WARRANT DISMISSAL**

3       Even if defendants had clear and convincing evidence of Mattel's willful

4  destruction of relevant evidence, which they do not, the analysis would not end

5  there.  Before imposing dismissal sanctions, the Court would also have to find (i)

6  extraordinary circumstances, (ii) willfulness or fault, (iii) that there is a nexus

7  between the misconduct and the merits of the case, (iv) lesser sanctions are not

8  viable, and (v) prejudice.  Halaco Engineering Co. v. Costle, 843 F.2d 376, 381-382

9  (9th Cir. 1988).

10      MGA and Bryant argue that the balancing test in Anheuser-Busch, Inc. v.

11  Natural Beverage Distribs., 69 F.3d 337, 348 (9th Cir. 1995), is controlling.  It is

12  not.  The *en banc* Halaco decision controls.  See U.S. v. Lynch, 437 F.3d 902, 912

13  (9th Cir. 2006) (holding that a three-judge panel of Court of Appeals may not

14  overrule previous decision of court sitting en banc); see, e.g., Nostalgia Network,

15  Inc. v. Rayle, 56 Fed. Appx. 344 (9th Cir. 2003) (applying Halaco standards);

16  Estrada v. Speno & Cohen, 244 F.3d 1050, 1055-1056 (9th Cir. 2001) (same);

17  United States ex rel. Lujan v. Hughes Aircraft Co., 67 F.3d 242, 247 (9th Cir. 1995)

18  (same); In re Napster, 462 F. Supp. 2d at 1070-77 (same).  Defendants meet none of

19  the Halaco standards, or even the Anheuser-Busch standards.

20      **A.    There Are No Extraordinary Circumstances**

21      "[E]xtraordinary circumstances exist where there is a pattern of disregard for

22  Court orders and deceptive litigation tactics that threaten to interfere with the

23  rightful decision of a case."  Advantacare Health Partners v. Access IV, 2004 WL

24  1837997 at *5 (N.D. Cal. 2004) (citing Halaco, 843 F.2d at 31) (no extraordinary

25  circumstances even though defendants admitted to intentionally destroying relevant

26  evidence); see Anheuser-Busch, 69 F.3d at 348 (terminating sanctions are warranted

27  when "a party has engaged in deliberately deceptive practices that undermine the

28  integrity of judicial proceedings").  Defendants cannot show any "deceptive

1   litigation tactics that threaten to interfere with the rightful decision of the case" or
2   that "undermine the integrity of judicial proceedings." Adhering to well-accepted,
3   routine document retention policies and then, after notice of a probable claim,
4   collecting and preserving evidence is not "deceptive."

5        Defendants' own cases confirm that Mattel's conduct warrants no sanctions,
6   much less terminating ones. In <u>Housing Rights Center v. Sterling</u>, 2004 U.S. Dist.
7   LEXIS 28877, at *21-29 (C.D. Cal. 2004), this Court held that terminating sanctions
8   were not appropriate even after a defendant *admitted to destroying* categories of
9   *indisputably relevant* documents. In <u>Wm. T. Thompson Co.</u>, 593 F. Supp. at 1446-
10  50, the court found terminating sanctions appropriate only after expressly finding
11  that defendant destroyed unquestionably relevant documents and made *no effort* to
12  preserve relevant documents, in violation of two Court Orders. In <u>Cache La Poudre</u>
13  <u>Feeds, LLC v. Land O Lakes, Inc.</u>, 2007 WL 684001 at *17 (D. Colo. 2007), the
14  court found no bad faith even though the defendant allowed the destruction of
15  documents that "might have contained relevant" information. And in <u>Daimler</u>
16  <u>Chrysler Motors v. Bill Davis Racing, Inc.</u>, 2005 U.S. Dist. LEXIS 38162 (D. Mich.
17  2005), the court found terminating sanctions were *not* appropriate even where the
18  party made *no effort* to retain documents after suit filed. Mattel did not violate any
19  Order here, and it took substantial measures to preserve relevant documents.
20  Mattel's conduct simply does not compare to any case in which terminating
21  sanctions have been imposed.

22      **B.     Mattel Did Not Act With Bad Faith, Willfulness Or Fault**
23      MGA and Bryant attempt to show bad faith, willfulness or fault by proving
24  "only" that Mattel had "some notice" that automatically deleted e-mails were
25  potentially relevant to the litigation.[75] They rely on <u>Anheuser Busch</u>, <u>Leon v. IDM</u>
26  <u>Systems Corp.</u>, 464 F.3d 951, <u>Akiona v. U.S.</u>, 938 F.2d 158 (9th Cir. 1991), and

---

[75]   Mot. at 16:6-8, 18:27-19:2.

Exhibit  3 , P. 52                     -17-            Case No. CV 04-9049 SGL (RNBx)
                                              MATTEL INC.'S OPPOSITION TO MOTION FOR TERMINATING SANCTIONS

1   Henry v. Gill Industries, Inc., 983 F.2d 943 (9th Cir. 1993), to support this purported

2   low threshold for finding bad faith.[76]  However, as discussed, defendants must prove

3   Mattel's willful spoliation by clear and convincing evidence.[77]   Moreover, even

4   these cases show that Mattel's conduct does not reveal bad faith, willfulness or fault.

5   In Akiona, for example, the Ninth Circuit found no bad faith when the records were

6   deleted "pursuant to a policy of destroying documents two years after their

7   disposition" and "consistent with the party's document retention policies."  938 F.2d

8   at 160-161.  Even by defendants' factually erroneous account of what has and has

9   not been preserved, that is the most that happened here.[78]

10          Even if it were possible to fault Mattel for not suspending its 90-day retention

11   policy earlier -- and Mattel submits that it is not -- that simply is not sufficient to

12   support terminating sanctions.   See Napster, 462 F. Supp. at 1072-1074, 1077

13   (rejecting terminating sanctions because there were some efforts to preserve relevant

14   documents, even though party instructed its employees to delete relevant e-mails);

15   Broccoli, 229 F.R.D. at 511-512 (denying terminating sanctions although zero effort

16   to preserve documents); Mosaid Technologies Incorporated v. Samsung Electronic

17   Co., Ltd., 348 F.Supp. 2d 332, 339 (D.N.J. 2004) (same); Columbia Pictures

18   Industries v. Bunnell, 2007 WL 2080419, at *14 (C.D. Cal. 2007) (no evidentiary

19

20

21

22   [76]  Mot. at 16:5-17.
      [77]  Supra § I.
23   [78]  Contrast Leon v. IDX Systems Corp., 464 F.3d 951, 959 (9th Cir.
      2006)(plaintiff admitted to intentionally deleting every "personal" file on work
24   laptop, and Court found personal files there "highly relevant" to employment
      discrimination claim); Anheuser-Busch, 69 F.3d at 349-351 (plaintiff "repeatedly
25   lied" to defendant and court that relevant documents had burned in a fire); Henry,
      983 F.2d at 947-949 ("disobedient conduct" justifying bad faith included failure to
26   appear for deposition twice, failure to respond to interrogatories, and disobeying
      Court order awarding monetary sanctions); Padgett v. City of Monte Sereno, 2007
27   U.S. Dist. LEXIS 23409 *9 (though party failed to preserve hard drive despite
      specific discovery request asking to inspect it and court order to "preserve
28   everything" and "delete nothing" in the hard drive, terminating sanctions *not*
      awarded in absence of finding of prejudice).

1  sanctions in the absence of any violation of a preservation order, even though

2  "extremely relevant" data was lost).[79]

3  **C.   There Is No Nexus Between The Alleged Misconduct And The**

4  **Merits Of The Case**

5  To prove the required nexus, defendants must show by clear and convincing

6  evidence that the allegedly destroyed evidence bears on the matters in controversy in

7  such a way as to interfere with the rightful decision of the case.  Halaco, 843 F.2d at

8  381-382.  That *clearly* is not the case here.

9  **1.   Mattel Has Overwhelming Evidence That Bryant Created**

10  **Bratz While Employed By Mattel, And Aided By MGA**

11  The evidence that bears on the actual merits of this case is one-sided and

12  overwhelming.   Notwithstanding defendants' pattern of obstructionism that has

13  required Judge Infante to issue multiple orders to compel against them, Mattel has

14  obtained powerful evidence showing that Bryant created Bratz and worked on it

15  with MGA while employed by Mattel.  Among much else, this includes:

- After being compelled to produce documents in January 2007, Bryant for the first time produced Bratz drawings dated September 1999 -- squarely during Bryant's Mattel employment.[80]

- After being compelled to testify, MGA's Bratz project manager, Paula Garcia, admitted that Bryant created a key Bratz design during the time of his Mattel employment.[81]

- After being compelled to produce documents in May 2007, MGA produced an internal MGA e-mail message stating that the first Bratz dolls were created in September 2000.[82]  MGA's initial copyright

---

[79]   Revealing how thin the reed defendants hope to grasp is, they argue Mattel engaged in "bad faith" by delaying the deposition of its designee on email preservation.  Mot., §II(F) at 8-10.  Defendants' assertions are misleading and irrelevant.  Corey Dec. ¶¶ 3-5.  They are also a virtual rehash of an argument the Court previously rejected. Proctor Dec., Exh. 7 at 12:16-13:1.

[80]   See Jan. 25, 2007 Order, Zeller Dec., Exh. 2;  Drawings, Zeller Dec., Exhs. 3 & 4.

[81]   See Discovery Master's May 15, 2007 Order, Zeller Dec., Exh. 5; Depo. Tr. of Paula Garcia (Vol. 2), dated May 25, 2007, at 590:10-592:4.

[82]   See Discovery Master's May 15, 2007 Order, Zeller Dec., Exh. 5;  E-mail dated September 6, 2001, Bates-numbered MGA 0069426-7, Zeller Dec., Exh 6.

1    registrations for those dolls and the Bratz sculpt also list their dates of
2    creation as 2000.[83]   After this lawsuit was filed, MGA then "corrected"
     those registrations to state that the dolls were created in 2001.[84]

3    • Fahrad Larian, a former MGA executive and Isaac Larian's brother, has
4    stated in court pleadings that Bryant brought Bratz to MGA by
     February 2000 -- and that they attempted to conceal it.[85]

5    • Anna Rhee, the face painter of Bratz, testified that invoices dated as
6    early as June 12, 2000 were for work she performed on Bratz for MGA
     under the "code name" of "Angel."[86]

7    The list of damning evidence literally goes on and on.[87]

8        2.    **The Allegedly Lost Evidence Does Not Even Bear On The**
9               **Issues To Be Tried**

10   There is little defendants can say about this evidence, or about how the

11   allegedly spoliated evidence could change it.  Defendants' primary argument is that

12   emails from 2002-2005 could support their statute of limitations defense.   That

13   argument is fundamentally misguided.   Mattel had no duty to preserve evidence

14   until late 2003 at the earliest.[88]   At the same time, there is no dispute that Mattel was

15   on notice of its claims at issue here by late 2003.   There is simply no reason to think,

16   as defendants suggest, that keeping additional, irrelevant emails in late 2003 or 2004

17   (through a suspension of the auto-delete policy) would somehow push the notice

18   date back *earlier* than late 2003 -- and emails from 2002 and early 2003 were

19   already long gone from the live servers and the back-up tapes.[89]   In any case, the law

20   is clear that an investigation into a claim that is not sued upon, such as the 2002

21   "Toon Teens" investigation defendants rely on, does not constitute notice for statute

22   of limitations purposes.   Westinghouse Elec. Corp. v. General Circuit Breaker &

23

24   ───────────────
25   [83] See Copyright Registrations, Zeller Dec., Exhs. 7-11.
     [84] See Copyright Correction Forms, Zeller Dec., Exh. 12.
     [85] See Farhad Larian's Complaint in Larian v. Larian, Case No. BC301371,
26   dated August 25, 2003, at ¶¶ 13-16, Zeller Dec., Exh. 14.
     [86] See Depo. Tr. of Anna Rhee, dated February 3, 2005, at 197:6-197:25 and
27   199:8-199:16, Zeller Dec., Exh. 13.
     [87] See, e.g., Zeller Dec., ¶¶ 15-21, Exhs. 14-20.
28   [88] See supra, § I(A).
     [89] Moore Dec. ¶ 6.

Exhibit _3_, P. _55_           MATTEL INC.'S OPPOSITION TO MOTION FOR TERMINATING SANCTIONS

1   <u>Elec. Supply Inc.</u>, 106 F.3d 894, 899 (9th Cir. 1997) (defendants making a statute of

2   limitations argument must prove that the plaintiff knew of facts giving it notice of its

3   trademark counterfeiting cause of action, not just any cause of action); <u>Hobson v.</u>

4   <u>Wilson</u>, 737 F.2d 1, 35 (D.C. Cir. 1984) (for constructive discovery of a cause of

5   action to trigger the statute of limitations, the plaintiff must know facts giving notice

6   of the *particular* cause of action at issue; notice of a particular claim does not mean

7   a simple suspicion of wrongdoing, but rather "awareness of sufficient facts to

8   identify a particular cause of action . . . not . . . the kind of notice -- based on hints,

9   suspicions, hunches or rumors -- that requires a plaintiff to make inquiries in the

10  exercise of due diligence, but not to file suit"). ·

11      Moreover, the Court has already rejected defendants' statute of limitations

12  defense, which was "pressed emphatically at oral argument" on Mattel's Motion   for

13  Leave, ruling that Mattel's claims are timely because they relate back to Mattel's

14  April 2004 Complaint.[90]   Indeed, many of Mattel's claims would be timely even if

15  there was no relation back.    For example, Mattel's copyright infringement

16  counterclaim has a rolling statute of limitations -- it could not possibly be

17  completely time barred.  <u>Roley v. New World Pictures,</u> 19 F.3d 479, 481 (9th Cir.

18  1994) (section 507(b) "does not provide for a waiver of infringing acts within

19  limitation period if earlier infringements were discovered and not sued upon"); <u>Polar</u>

20  <u>Bear Prod. v. Timex Corp.</u>, 384 F.3d 700, 706 (9th Cir. 2004) (accord).  Many of

21  Mattel's other claims would also be timely even if Mattel were on notice of its

22  claims in 2002, as defendant allege.  <u>See, e.g.</u>, <u>Agency Holding Corp. v. Malley-</u>

23  <u>Duff & Associates, Inc.</u>, 483 U.S. 143, 156 (1987) (limitations period for civil RICO

24  actions is four years); <u>Cal. Civ. Code</u> § 3426.6 (limitations period for

25  misappropriation of trade secrets claims is three years).

26

27      [90]   Order Re FAC at 13-15, Proctor Dec., Exh. 7; <u>see also</u> <u>Fed. R. Civ. P.</u> 15(c); <u>Lamont v. Wolfe</u>, 142 Cal. App. 3d 375, 379 (1983) (amended claims relate back to

28  the original complaint where same transaction or occurrence is involved in both pleadings).

1    Defendants' other arguments fare no better.

2    • Defendants' assertion that lost emails could bear on "Carter Bryant's employment and work at Mattel, including emails and data that would refute Mattel's claims that he did not meet his employment obligations," ignores that such emails disappeared from Mattel's live servers and backup tapes by early 2001, long before even defendants could contend Mattel was on notice.[91]

5    • Hypothetical 2004, post-litigation e-mails among random Mattel employees sympathizing with Bryant will neither prove nor disprove any issue to be tried.[92]

7    • Defendants argue that Mattel should have preserved "communications with suppliers, retailers, and others to impair MGA's ability to compete" and other documents relating to MGA's claims.[93] However, Mattel first had notice of these allegations when MGA filed its complaint in April 2005, and immediately took proper steps to preserve such evidence.

11   • Defendants complain that "lost" October 2000 "time" records (when Bryant admits he was negotiating his deal with MGA) would exonerate Bryant, presumably by proving that he was working on Mattel projects. Actually, Bryant's October 2000 "time" records are not lost -- and they show that he recorded *no* time to any Mattel project, only to vacation time, that month.[94]

15   ## D.  MGA and Bryant Were Not Prejudiced

16   Virtually all courts consider prejudice to the party seeking terminating sanctions. See, e.g., Halaco, 843 F.2d at 383; U.S. v. National Medical Enter., Inc., 792 F.2d 906, 913 (9th Cir. 1986) (prejudice "is an important factor that the district court should weigh before granting the extreme sanction of dismissal"); Henry, 983 F.2d at 948 (referring to prejudice as a "key factor"); Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990) (the element of prejudice is "essential"); Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990) (when an order is violated, prejudice and availability of lesser sanctions are decisive factors).

---

[91]  More Dec. ¶ 6.
[92]  Mot. at 23:1-10.
[93]  Mot. at 23.20-21.
[94]  Depo. Tr. of Arnold Artavia dated Sep. 21, 2006, at 105:14-106:9, Exh. 350 thereto, Proctor Dec., Exhs. 29, 30 (only admin. time recorded in Oct. 2000, which was used to record vacation and other non-project time).

1    There can be no presumption of prejudice absent a showing of "gross

2 negligence." Convolve, Inc. v. Compaq Computer Corp., 223 F.R.D. 162, 176

3 (S.D.N.Y. 2004) (citing Residential Funding Corp. v. DeGeorge Financial Corp.,

4 306 F.3d 99, 109 (2d Cir. 2002)).  No case defendants cite holds that efforts to

5 preserve relevant evidence like Mattel's even approach gross negligence.[95]  Hence,

6 defendants must *prove* that the allegedly lost information contains relevant

7 information -- they must present evidence that the alleged missing evidence would

8 have been of the nature they assert and would favor them.  Convolve, 223 F.R.D. at

9 176; Zubulake, 220 F.R.D. at 221.  MGA and Bryant have not identified a single

10 relevant e-mail that was permanently destroyed (i.e., no backup available) pursuant

11 to Mattel's 90-day retention policy.

12       **E.    Lesser Sanctions Are Available, Although they Are Not**

13             **Appropriate Either**

14       Before imposing terminating sanctions, the Court must consider lesser

15 sanctions and explain the reasons for rejecting them.  U.S. ex rel. Lujan v. Hughes

16 Aircraft Co., 67 F.3d 242, 247-248 (9th Cir. 1995) (citing Halaco Engineering Co. v.

17 Costle, 843 F.2d 376, 381 (9th Cir. 1988)).  MGA and Bryant do not seek lesser

18 sanctions, and neither the relief they do seek nor such lesser sanctions are justified.

19 **III.   DEFENDANTS' HANDS ARE UNCLEAN**

20       Given their own demonstrable -- and quite intentional -- spoliation of

21 evidence, defendants' accusations against Mattel are reprehensible.   They

22 independently disentitle defendants to any relief.  To obtain sanctions from the

23 Court, MGA and Bryant must have clean hands.  See, e.g., In re Everett, 364 B.R.

24 711, 723 (D. Ariz. 2007) (doctrine of unclean hands demands party seeking

25

26 _____

27 [95]   The two cases MGA cites here, Residential Funding Corp. v. Degeorge
Financial Corp., 306 F.3d 99, 112 (2d Cir. 2002), and Google, Inc. v. Am. Blind

28 Wallpaper Factory, Inc., 2007 U.S. Dist. LEXIS 48309, at *15-16 (N.D. Cal. 2007),
dealt with, respectively, gross failure to produce documents in time for trial and
refusal to even search for responsive documents.

1   equitable relief to "act fairly in the matter for which he seeks a remedy. He must

2   come into court with clean hands or he will be denied relief, regardless of the merits

3   of his claim.") (citing Precision Instrument Mfg. Co. v. Automotive Maintenance

4   Machinery Co., 324 U.S. 806, 814-815 (1945); Hall v. Wright, 240 F.2d 787, 794-

5   795 (9th Cir. 1957); Fayemi v. Hambrecht & Quist, Inc., 174 F.R.D. 319, 226

6   (S.D.N.Y. 1997) (party who obtained copies of confidential files improperly was

7   allowed to use such evidence because opposing party had subsequently destroyed

8   the files, knowing they were relevant)). Defendants' hands are unclean.

9        First, both MGA and Bryant engaged in a conspiracy to conceal when and by

10   whom Bratz was created. Bryant lied to his co-workers when he left Mattel, saying

11   that he was going to a non-competitive position.[96] MGA filled the press with false

12   stories about the creation of Bratz.[97]

13        Moreover, defendants have tampered with and destroyed unquestionably

14   relevant evidence:

15   •  Bryant long refused to produce the hard drive of a computer he testified he
16      used during the relevant time period, finally producing the drive after no less
        than three motions by Mattel and a Court Order.[98] In opposing Mattel's
17      motions to compel Bryant's hard drive, Bryant's counsel represented that
        defendants had "tirelessly searched for and inspected [Bryant's] hard drives
18      for relevant information," but located no "relevant" or "responsive"
19      documents.[99] It turns out, Bryant had installed the program "Evidence
        Eliminator" on the hard drive.[100] The only purpose of this program, as both
20      Courts and the program's creators acknowledge, is to permanently destroy
21      data to prevent its use in legal proceedings. See, e.g., Communications
        Center, Inc. v. Hewitt, 2005 WL 3277983, at * 2 (E.D. Cal. 2005) (finding use
22      of Evidence Eliminator on hard drives was willful and in bad faith, and
23      intended to destroy discoverable evidence).

24

25

26

27

28

---

96  Nordquist Tr. at 124:18-125:8, Proctor Dec., Exh. 1.
97  Proctor Dec., Exhs. 2-4.
98  Zeller Dec., ¶¶ 22-23, Exhs. 21-22.
99  Zeller Dec., ¶ 24; Exhs. 23-24.
100  Zeller Dec., ¶ 25, Exh. 25.

1 • Bryant and MGA engaged in destructive testing of Bryant's original Bratz drawings without notice to the Court or Mattel.[101] The Court recognized that

2 defendants' handling of these "critical documents" raises "serious questions . . . [which cause] the Court much concern about whether the truth seeking

3 functions of the adversarial system have been fundamentally compromised in

4 this case."[102]

5 • MGA's CEO, Isaac Larian, ordered another MGA executive to redact "Barbie Collectibles" from the faxed version of Bryant's Bratz agreement with MGA

6 to conceal that Bryant had sent the contract from Mattel's Design Center.[103]

7 • Since MGA intervened in Mattel's lawsuit against Bryant in December 2004, Isaac Larian has destroyed his computers and the information contained on

8 them.[104] MGA also "wiped" the information from the hard drives of Mr.

9 Larian's computers every six months to a year, preserving only a portion of the information they contained.[105]

10 • MGA does not preserve backup tapes for any e-mail server, but overwrites

11 them every eight weeks.[106]

12 That defendants can bring themselves to request gratuitous sanctions against

13 Mattel for non-preservation is remarkable, to say the least.

14 **Conclusion**

15 Mattel respectfully requests that the Court deny this motion in its entirety.

16 DATED: August 13, 2007                    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

17

18 By _____

19 John B. Quinn
   Attorneys for Plaintiff

20 Mattel, Inc.

21

22

23 [101] Court's Order Denying Appointment of Expert Witnesses ("Expert Witnesses Order"), dated August 11, 2006, at 4:19-7:3, Zeller Dec., Exh. 26; see also Declaration of Erich J. Specking Re Expert Witness Order, ¶ 8, lodged concurrently

24 (performed ink testing for on MGA on various Bratz documents).
   [102] Expert Witnesses Order at 11:10-13, Zeller Dec., Exh. 26.

25 [103] O'Connor Tr. at 18:13-18, Zeller Dec., Exh. 27; See Expert Witness Order at 7:4-21, 8:10-9:9, 18:8-10, Zeller Dec., Exh. 26; Consulting Agreement, Zeller Dec.,

26 Exh. 28.
   [104] See Depo. Tr. of Ken Lockhart (Vol. 2), dated May 15, 2007 at 255:2-256:18,

27 Zeller Dec. Exh. 30.
   [105] See Lockhart Tr. (Vol. 2) at 255:2-258:9, Zeller Dec., Exh. 30.

28 [106] See Deposition Transcript of Ken Lockhart (Vol. 1), dated May 14, 2007 at 114:2-8, 116:15-117:11, 118:8-18, 123:17-22; Zeller Dec., Exh. 29.

# EXHIBIT 4

Page 2

```
 1              UNITED STATES DISTRICT COURT
 2             CENTRAL DISTRICT OF CALIFORNIA
 3                    EASTERN DIVISION
 4
 5   CARTER BRYANT, AN            )
     INDIVIDUAL,                  )
 6                                )  CASE NO.
            PLAINTIFF,            )  CV 04-9049 SGL(RNBX)
 7                                )
      V.                          )  CONSOLIDATED WITH
 8                                )  CASE NO. 04-9059
     MATTEL, INC., A DELAWARE     )            AND
 9   CORPORATION,                 )  CASE NO. 05-2727
                                  )
10          DEFENDANT.            )
     _____)
11                                )
     AND CONSOLIDATED ACTION(S)   )
12   _____)
13
14
15         CONFIDENTIAL ATTORNEYS' EYES ONLY
16         VIDEOTAPED DEPOSITION OF VERONICA
17         MARLOW, TAKEN ON BEHALF OF MATTEL,
18         INC., AT 865 SOUTH FIGUEROA STREET,
19         10TH FLOOR, LOS ANGELES, CALIFORNIA,
20         COMMENCING AT 10:14 A.M., FRIDAY,
21         DECEMBER 28, 2007, BEFORE PAULA A.
22         PYBURN, C.S.R. 7304, R.P.R., C.L.R.
23
24
25
```

Exhibit 4, P. 61

Page 3

```
 1    APPEARANCES OF COUNSEL:
 2    FOR M.G.A. ENTERTAINMENT, INC.:
 3     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
       BY:  KENNETH PLEVAN, ESQ.
 4     FOUR TIMES SQUARE
       NEW YORK, NEW YORK 10036-6522
 5     (212) 735-3000
       KPLEVAN@SKADDEN.COM
 6
 7    FOR MATTEL, INC.:
 8     QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
       BY:  MICHAEL T. ZELLER, ESQ.
 9     BY:  BRIDGET A. HAULER, ESQ.
       865 SOUTH FIGUEROA STREET
10     10TH FLOOR
       LOS ANGELES, CALIFORNIA 90017-2543
11     (213) 443-3000
       MICHAELZELLER@QUINNEMANUEL.COM
12     BRIDGETHAULER@QUINNEMANUEL.COM
13
      FOR CARTER BRYANT:
14
       KEKER & VAN NEST LLP
15     BY:  CHRISTA MARTINE ANDERSON, ESQ.
       710 SANSOME STREET
16     SAN FRANCISCO, CALIFORNIA 94111
       (415) 391-5400
17     CANDERSON@KVN.COM
18
      FOR THE WITNESS:
19
       KEATS, MCFARLAND & WILSON LLP
20     BY:  LARRY W. MCFARLAND, ESQ.
       BY:  CHRISTIAN C. DOWELL, ESQ.
21     9720 WILSHIRE BOULEVARD
       PENTHOUSE SUITE
22     BEVERLY HILLS, CALIFORNIA 90212
       (310) 777-3749
23     LMCFARLAND@KMWLAW.COM
       CDOWELL@KMWLAW.COM
24
25
```

Exhibit 4, P. 62

Page 4

```
 1    ALSO PRESENT:

 2     PETER MARLOW

       MICHAEL MOORE, SENIOR COUNSEL, MATTEL, INC.

 3     STEVEN TOGAMI, J.T.V. LITIGATION SERVICES, INC.

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Exhibit  4 , P. 63

Page 108

1    BY MR. ZELLER:

2       Q.    AND WHY DO YOU NO LONGER DO WORK FOR

3    M.G.A.?

4       A.    I QUIT ABOUT ALMOST THREE YEARS.

5       Q.    WHY?

6       A.    BECAUSE -- WELL, IT'S A LONG STORY.  YOU

7    READY TO HEAR?

8             OKAY.  M.G.A. HIRED MEL WOODS AS THE CEO OF

9    THE COMPANY.

10            HAVING WORKED FOR M.G.A. FREELANCE FOR

11   ABOUT FIVE YEARS, AND I ALWAYS WORKED WITH PAULA AND

12   HAD NO PROBLEMS.

13            AND I RECEIVE AN EMAIL INVITING ME TO COME

14   OVER AND MEET AND GREET WITH MEL WOODS, AND THERE

15   WAS A NEW CEO OF THE COMPANY.

16            AND I GOT ALL EXCITED ABOUT IT, AND I

17   THOUGHT, YOU KNOW, I'M GOING TO MEET THE CEO OF THE

18   COMPANY, AND -- SO -- YOU KNOW, EXPECT THAT HE WAS

19   GOING TO GO, WOW, WHAT A GREAT JOB YOU DID WITH

20   BRATZ, BLAH, BLAH, BLAH.

21            AND WHEN I GOT THERE, HE JUST WANT TO

22   KNOW -- HE WAS SAYING THAT I CHARGE A LOT OF MONEY,

23   THE COMPANY; THAT THEY'RE LOOKING FOR WAYS TO --

24            MR. MCFARLAND:  I'M SORRY, CAN YOU STOP A

25   SECOND?

Exhibit 4 , P. 64

Page 109

1              DO WE HAVE AN ISSUE WITH MICHAEL MOORE

2      BEING HERE ABOUT HER CONVERSATIONS --

3              MR. PLEVAN:  I DON'T -- I DON'T YET.

4              MR. MCFARLAND:  -- WITH THE CEO?

5              MR. PLEVAN:  I DON'T YET.

6              MR. MCFARLAND:  OKAY.

7              GO AHEAD.

8              THE WITNESS:  YEAH.

9              MR. MCFARLAND:  CONTINUE.

10             MR. PLEVAN:  I DON'T THINK WE'RE YET INTO

11     THE CONFIDENTIAL BUSINESS STUFF.

12             MR. MCFARLAND:  OKAY.

13             MR. PLEVAN:  SO I'M -- I'M MINDFUL OF THE

14     ISSUES AT HAND.

15             MR. MCFARLAND:  OKAY.

16             MR. PLEVAN:  THANK YOU, COUNSEL.

17             MR. MCFARLAND:  OKAY.

18             THE WITNESS:  SO MY HUSBAND HAD COME WITH

19     ME TO THE MEETING BECAUSE HE WAS THE ONE WHO WORKED

20     WITH THE PAPERWORK, WITH QUOTES TO M.G.A.  I HATE

21     PAPERWORK.  I GUESS THAT'S WHY I'M SO DISORGANIZED,

22     DON'T TAKE NOTES AND STUFF.  I TAKE NOTES IN MY

23     MIND.

24             AND SO MY HUSBAND ATTEND THE MEETING WITH

25     ME, AND WHEN WE GOT THERE MR. WOODS WAS VERY

Exhibit __4__, P. __65__

1    AGGRESSIVE, AGGRESSIVE, AND HE START ASKING ME WHO

2    WORKED FOR ME, HOW MANY EMPLOYEES I HAD, AND WHY I

3    WAS CHARGING SO MUCH MONEY.

4         AND I START GETTING, YOU KNOW, DEFENSIVE

5    ABOUT IT, BECAUSE I DIDN'T THINK IT WAS HIS BUSINESS

6    TO SELECT.  I WAS A -- A VENDOR, AND IF THEY GAVE ME

7    WORK, I WAS TAKING CARE OF.  I ALWAYS DELIVERED

8    EVERYTHING ON TIME.  MY WORK WAS ALWAYS WELL DONE,

9    PAULA ALWAYS LIKED EVERYTHING, CARTER ALWAYS LIKED

10   EVERYTHING, IT WAS ALWAYS APPROVED.

11        AND I THOUGHT THAT WAS NONE OF HIS BUSINESS

12   TO BE ASKING ME HOW MUCH I PAID MY PEOPLE AND HOW

13   MANY PEOPLE WORKED FOR ME, AND I START GETTING

14   ANNOYED ABOUT IT.

15        AND WHEN MY HUSBAND TOLD HIM THAT WE DON'T

16   REVEAL THAT INFORMATION, HE SAID THAT THINGS WERE

17   GOING TO GET VERY UGLY.

18        SO I STOOD UP (INDICATING) AND MY HUSBAND

19   IS SITTING NEXT TO ME, AND I TOUCH MY HUSBAND KNEES

20   WITH MY KNEES, GIVE HIM A SIGNAL TO GET UP, AND MY

21   HUSBAND, BEING A DIPLOMAT AND A PEACEMAKER, AND ME

22   BEING THE HOT BRAZILIAN BLOOD, I WAS READY TO PULL

23   HIM UP FROM HIS CHAIR BY HIS EAR, BUT I CONTROLLED

24   MYSELF AND I KICKED HIS LEG AGAIN WITH MY KNEES, AND

25   HE KNEW THAT I MEANT BUSINESS.

1          SO HE STOOD UP, AND I SHOOK MR. WOODS'S

2     HAND, I DIDN'T WANT TO COME DOWN TO HIS LEVEL OR

3     ANYTHING ELSE, SO I WAS CONTROLLING MYSELF, AND I

4     SHOOK HIS HAND.  I SAID, IT WAS A PLEASURE MEETING

5     YOU, AND WE WALKED AWAY FROM THE COMPANY -- YOU

6     KNOW, FROM THE -- THE ROOM.

7          ABOUT AN HOUR LATER PAULA CALLS ME AND --

8     AND TELLS ME THAT IT HAD COME DOWN TO A POINT THAT I

9     HAD TO MAKE A DECISION, THAT I WOULD EITHER WORK

10    FULL-TIME FOR M.G.A. OR NOTHING AT ALL.

11         AND MANY TIMES PRIOR THAT PAULA HAD INVITED

12    ME TO COME AND WORK FULL-TIME FOR M.G.A., AND I

13    ALWAYS TOLD HER, NO, THANK YOU, PAULA, THAT'S REALLY

14    NICE OF YOU, BUT THANK YOU, I -- I ENJOY WORKING OUT

15    OF MY HOME BECAUSE I LIKE WORKING, YOU KNOW, OUT OF

16    MY HOME, BEING WITH MY CHILDREN, WORKING OUT MY OWN

17    HOURS.

18         AND -- BUT THIS TIME SHE SAID -- WELL, IT

19    WAS LIKE AN ULTIMATUM.  SHE SAID THAT EITHER I WOULD

20    WORK IN-HOUSE OR NOTHING AT ALL.

21         SO RIGHT THERE AND THEN I TOLD HER, IT'S

22    NOTH- -- NOTHING AT ALL.  AND I STOPPED WORKING FOR

23    THEM.

24         MR. MCFARLAND:  THIS IS A -- YOU ARE

25    FINISHED WITH YOUR ANSWER?

Exhibit  4 , P. 67

Page 295

1          MR. MCFARLAND:  ASKED AND ANSWERED.

2          THE WITNESS:  NO, I DIDN'T.

3   BY MR. ZELLER:

4      Q.   YOU ONLY TALKED TO HER AT HOME?

5      A.   YES.

6      Q.   DID YOU EVER CALL HER ON HER CELL PHONE?

7      A.   COUPLE TIMES, BUT NOT DURING THE DAY.

8      Q.   AND IS THERE A REASON YOU DIDN'T CALL HER

9   DURING THE DAY?

10     A.   BECAUSE SHE WOULD BE BUSY WORKING, I DIDN'T

11  WANT TO BOTHER HER.  AND I WOULD BE SEEING HER AT

12  NIGHT, WHY WOULD I CALL HER.

13     Q.   ANY OTHER REASON?

14     A.   NO.

15     Q.   DID YOU EVER TELL ANYONE AT M.G.A. THAT YOU

16  HAD MS. CABRERA WORKING ON BRATZ FASHIONS?

17     A.   NO.

18     Q.   WAS THERE A REASON FOR THAT?

19     A.   WAS NONE OF THEIR BUSINESS.  THEY CONTRACT

20  ME, AND I WOULD PUT WHATEVER -- WHOEVER I WANTED TO

21  WORK ON THE PROJECT.  I DIDN'T HAVE TO TELL THEM WHO

22  WAS -- WAS WORKING FOR ME.

23     Q.   DID ANYONE AT M.G.A. EVER ASK YOU?

24     A.   UH-HUH, MEL WOODS.

25     Q.   OTHER -- OTHER THAN MEL WOODS, WE'VE TALKED

Exhibit __4__, P. _68_

# EXHIBIT 5

|   | | |
|---|---|---|
| 1 | UNITED STATES DISTRICT COURT | 16:00:00 |
| 2 | CENTRAL DISTRICT OF CALIFORNIA | 16:00:00 |
| 3 | EASTERN DIVISION | 16:00:00 |
| 4 | | 16:00:00 |
| 5 | CARTER BRYANT, AN INDIVIDUAL, ) | 16:00:00 |
|   | ) | |
| 6 | PLAINTIFF, ) | 16:00:00 |
|   | ) | |
| 7 | V. ) NO. CV04-9049SGL | 16:00:00 |
|   | ) | |
| 8 | MATTEL, INC., A DELWARE ) | 16:00:00 |
|   | CORPORATION, AND CONSOLIDATED ) | |
| 9 | ACCTIONS, ) | 16:00:00 |
|   | ) | |
| 10 | DEFENDANTS. ) | 16:00:00 |
| 11 | | 16:00:00 |
| 12 | C O N F I D E N T I A L | 16:00:00 |
| 13 | (PURSUANT TO PROTECTIVE ORDER, THIS | 16:00:00 |
| 14 | TRANSCRIPT HAS BEEN DESIGNATED CONFIDENTIAL, | 16:00:00 |
| 15 | ATTORNEYS' EYES ONLY.) | 16:00:00 |
| 16 | PAGES 1 THROUGH 314 | 16:00:00 |
| 17 | | 16:00:00 |
| 18 | DEPOSITION OF MARGARENT LEAHY, | 16:00:00 |
| 19 | TAKEN ON BEHALF OF THE DEFENDANTS, AT 865 SOUTH | 16:00:00 |
| 20 | FIGUEROA STREET, 10TH FLOOR, LOS ANGELES, | 16:00:00 |
| 21 | CALIFORNIA, COMMENCING AT 10:11 A.M., WEDNESDAY, | 16:00:00 |
| 22 | DECEMBER 12, 2007, BEFORE BETH FELIX, CSR NO. | 16:00:00 |
| 23 | 12766. | 16:00:00 |
| 24 | | |
| 25 | | |

2

```
 1    APPEARANCES OF COUNSEL:                                    16:00:00
 2                                                               16:00:00
 3    FOR THE WITNESS:                                           16:00:00
 4         KEATS, MC FARLAND & WILSON                            16:00:00
           BY:  LARRY W. MC FARLAND
 5         BY:  CHRISTIAN C. DOWELL                              16:00:00
           ATTORNEYS AT LAW
 6         9720 WILSHIRE BOULEVARD, PENTHOUSE SUITE              16:00:00
           BEVERLY HILLS, CALIFORNIA  90212
 7         (310) 777-3750                                        16:00:00
 8    FOR THE PLAINTIFF:                                         16:00:00
 9         KEKER & VAN NEST                                      16:00:00
           BY:  CHRISTA MARTINE ANDERSON
10         ATTORNEY AT LAW                                       16:00:00
           710 SANSOME STREET
11         SAN FRANCISCO, CALIFORNIA  94111                      16:00:00
           (415) 397-7188
12                                                               16:00:00
      FOR DEFENDANT MATTEL:
13                                                               16:00:00
           QUINN, EMANUEL, URQUHART, OLIVER & HODGES
14         BY:  MICHAEL T. ZELLER                                16:00:00
           BY:  TAMAR BUCHAKJIAN
15         BY:  BRIDGET HAULER                                   16:00:00
           ATTORNEYS AT LAW
16         865 SOUTH FIGUEROA STREET, 10TH FLOOR                 16:00:00
           LOS ANGELES, CALIFORNIA  90017
17         (213) 624-7707                                        16:00:00
18    FOR DEFENDANT M.G.A.:                                      16:00:00
19         SKADDEN, ARPS, SLATE, MEAGHER & FLOM                  16:00:00
           BY:  MARCUS R. MUMFORD
20         BY:  KENNETH PLEVAN                                   16:00:00
           ATTORNEYS AT LAW
21         300 SOUTH GRAND AVENUE                                16:00:00
           LOS ANGELES, CALIFORNIA 90071
22         (213) 687-5000                                        16:00:00
23                                                               16:00:00
24                                                               16:00:00
25                                                               16:00:00
```

3

Exhibit 5, P. 70



| | | |
|---|---|---|
| 1 | APPEARANCES (CONTINUED) | 16:00:00 |
| 2 | ALSO PRESENT: | 16:00:00 |
| 3 |     MICHAEL MOORE | 16:00:00 |
| |     JILL THOMAS | |
| 4 |     STEVEN TOGAMI, VIDEOGRAPHER | 16:00:00 |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

4

Exhibit __8__, P.71

| | | |
|---|---|---|
| 1 | MR. MC FARLAND:   HERE'S WHAT I THINK WE SHOULD | 11:24:55 |
| 2 | DO:   OUR OBJECTION IS THAT THIS RELATES TO A PROJECT | 11:24:57 |
| 3 | FOR A THIRD-PARTY COMPANY.   IT IS IRRELEVANT TO THIS | 11:25:00 |
| 4 | LITIGATION, AND IT DOES NOT RELATE TO A PROJECT FOR | 11:25:05 |
| 5 | M.G.A. OR A PROJECT FOR MATTEL. | 11:25:09 |
| 6 | BUT IN THE INTEREST OF MOVING THIS ALONG, | 11:25:11 |
| 7 | WE'LL ALLOW HER TO ANSWER ATTORNEYS' EYES ONLY, BUT THE | 11:25:13 |
| 8 | MATTEL PEOPLE NEED TO BE EXCLUDED BECAUSE IT'S IN | 11:25:19 |
| 9 | RELATION TO A PROJECT FOR ANOTHER COMPANY.   MARK THIS | 11:25:23 |
| 10 | SECTION AS ATTORNEYS' EYES ONLY.   THIS IS WITHOUT | 11:25:31 |
| 11 | WAIVER OF OUR POSITION THAT ALL OF THIS IS IRRELEVANT | 11:25:41 |
| 12 | AND CONFIDENTIAL. | 11:25:44 |
| 13 | THE WITNESS:   CAN YOU ASK THE QUESTION AGAIN? | 11:25:48 |
| 14 | BY MR. ZELLER: | 11:25:51 |
| 15 | Q   SURE. | 11:25:51 |
| 16 | WHY DON'T WE READ IT BACK? | 11:25:53 |
| 17 | (RECORD READ AS FOLLOWS: | 11:14:20 |
| 18 | "Q   AT ANY POINT, DID YOU BECOME | 11:14:20 |
| 19 | AWARE THAT MR. LINKER WAS WORKING AS | 11:14:21 |
| 20 | AN INDEPENDENT CONTRACTOR OR VENDOR? | 11:14:24 |
| 21 | "A   YES. | 11:14:27 |
| 22 | "Q   AND WHEN DID YOU BECOME | 11:14:28 |
| 23 | AWARE OF THAT? | 11:14:29 |
| 24 | "A   I CAN'T GIVE YOU THE DATE, | 11:14:30 |
| 25 | BUT I DID A JOB FOR HIM. | 11:14:32 |

56

Exhibit ____, P. 72

```
1          "Q   WHAT WAS THAT JOB?                    11:14:36

2          "A   I DON'T THINK I CAN TELL YOU          11:14:38

3     BECAUSE IT DIDN'T EVER GET PRODUCED             11:14:40

4     IN THE MARKET, AND IT'S                         11:14:42

5     CONFIDENTIAL.")                                 11:14:44

6          MR. MC FARLAND:  YOU CAN GO AHEAD AND ANSWER   11:26:26

7     THAT.                                           11:26:28

8          THE WITNESS:  OKAY.  THIS WAS A JOB I DID FOR   11:26:28

9     HIM WHEN I WAS A VENDOR AS WELL, AND IT WAS A FASHION   11:26:31

10    DOLL CALLED VAMPS.                              11:26:36

11    BY MR. ZELLER:                                  11:26:38

12         Q   CAN YOU SPELL THAT, PLEASE?            11:26:38

13         A   V-A-M-P-S.                             11:26:41

14         Q   AND IF I UNDERSTAND IT CORRECTLY, THIS WAS --   11:26:47

15    THIS WAS A THIRD-PARTY FASHION DOLL?            11:26:51

16         A   YES.  RIGHT?  YEAH.                    11:26:54

17         Q   WHO WAS THE COMPANY WHO WAS CONTEMPLATING   11:26:57

18    PRODUCING THIS DOLL?                            11:27:01

19         A   I THINK IT WAS A COMPANY IN SANTA MONICA, BUT   11:27:03

20    I CAN'T TELL YOU FOR SURE.  I ONLY WORKED FOR STEVE,   11:27:07

21    BUT I KNOW HE WAS WORKING THROUGH SOMEBODY ELSE.   11:27:11

22         Q   SO IT WAS YOUR UNDERSTANDING THAT MR. LINKER   11:27:14

23    HAD BEEN HIRED BY THIS COMPANY, AND THEN HE HAD   11:27:17

24    CONTACTED YOU TO WORK ON IT?                    11:27:20

25         A   YES, NOT HIRED FULL TIME BUT MAYBE A WORK FOR   11:27:21
```

57

Exhibit 5 , P. 73

| | | |
|---|---|---|
| 1 | HIRE. | 11:27:25 |
| 2 | Q    IF I UNDERSTOOD YOUR PRIOR TESTIMONY | 11:27:32 |
| 3 | CORRECTLY, THIS PROJECT DIDN'T GO ANYWHERE? | 11:27:34 |
| 4 | A    NO. | 11:27:37 |
| 5 | Q    DID YOU WORK ON IT AT ALL? | 11:27:38 |
| 6 | A    YES, I DID. | 11:27:41 |
| 7 | Q    DID YOU, ACTUALLY, DO SOME SCULPTING ON IT? | 11:27:42 |
| 8 | A    YES. | 11:27:46 |
| 9 | Q    AND WAS THE ONLY PERSON YOU WORKED WITH ON | 11:27:46 |
| 10 | THAT PROJECT MR. LINKER? | 11:27:49 |
| 11 | A    YES. | 11:27:52 |
| 12 | Q    DID YOU SUBMIT YOUR INVOICES TO MR. LINKER, OR | 11:27:52 |
| 13 | DID YOU SUBMIT THEM TO THE COMPANY? | 11:27:56 |
| 14 | A    I CAN'T REMEMBER. | 11:27:58 |
| 15 | Q    DO YOU RECALL IF YOU HAD ANY CONTACT WITH THE | 11:28:00 |
| 16 | COMPANY, OR WAS IT ALL MR. LINKER? | 11:28:02 |
| 17 | A    IT WAS ALL STEVE. | 11:28:04 |
| 18 | Q    DURING THAT TIME PERIOD WHEN YOU WERE WORKING | 11:28:12 |
| 19 | WITH MR. LINKER WHEN HE WAS A VENDOR AND YOU WERE A | 11:28:15 |
| 20 | VENDOR, WAS HE WORKING UNDER THE NAME PENNY ARCADE? | 11:28:19 |
| 21 | A    IT RINGS A BELL, BUT I CAN'T TELL YOU FOR | 11:28:25 |
| 22 | SURE. | 11:28:28 |
| 23 | Q    DO YOU KNOW A PERSON NAMED LIZ HOGAN? | 11:28:29 |
| 24 | A    NO, I DON'T, NOT BY NAME. | 11:28:32 |
| 25 | Q    WERE YOU AWARE THAT STEVE LINKER HAD A | 11:28:41 |

58

Exhibit 5, P. 74

| | | |
|---|---|---|
| 1 | RACK MY BRAIN. | 16:27:39 |
| 2 | Q    DID YOU TELL OTHER PEOPLE AT MATTEL THAT YOU | 16:27:41 |
| 3 | WERE DOING THIS? | 16:27:44 |
| 4 | A    YES. | 16:27:46 |
| 5 | Q    WHO DID YOU TELL? | 16:27:47 |
| 6 | A    WE ALL TALKED ABOUT IT.  WE ALL DID IT. | 16:27:48 |
| 7 | Q    WHEN YOU SAY "WE ALL DID IT," YOU'RE TALKING | 16:27:53 |
| 8 | ABOUT THE PEOPLE IN THE SCULPTING DEPARTMENT? | 16:27:56 |
| 9 | A    YES. | 16:27:58 |
| 10 | Q    WHO ELSE DO YOU KNOW THERE AT MATTEL WHO WAS | 16:27:58 |
| 11 | DOING WORK FOR COMPETITORS AT THE TIME THAT THEY WERE | 16:28:03 |
| 12 | EMPLOYED BY MATTEL? | 16:28:07 |
| 13 | A    I CAN'T SAY ANYBODY SPECIFICALLY BECAUSE | 16:28:09 |
| 14 | NOBODY OFFICIALLY CAME OUT AND SAID ANYTHING.  WE JUST | 16:28:11 |
| 15 | ALL KNEW WE WERE ALL DOING IT. | 16:28:17 |
| 16 | Q    PLEASE, TELL ME WHO YOU SPOKE WITH ON THAT | 16:28:19 |
| 17 | SUBJECT. | 16:28:22 |
| 18 | A    EVERYBODY. | 16:28:23 |
| 19 | Q    YOU CAN'T TELL ME THE NAME OF ANYONE? | 16:28:24 |
| 20 | A    MICHAEL HEBDEN, FREDERICK JACKSON, RAY MOORE, | 16:28:28 |
| 21 | JOE BENET TO NAME A FEW. | 16:28:36 |
| 22 | Q    WERE THERE OTHER NAMES THAT YOU KNOW? | 16:28:41 |
| 23 | A    THAT'S ALL I CAN THINK OF RIGHT NOW | 16:28:43 |
| 24 | OFFICIALLY. | 16:28:46 |
| 25 | Q    WHEN YOU SAY "OFFICIALLY," DO I HAVE YOUR | 16:28:47 |

183

Exhibit __5__, P. __75__

| | | |
|---|---|---|
| 1 | COMPLETE TESTIMONY ON THAT, OR ARE THERE OTHER PEOPLE | 16:28:49 |
| 2 | YOU REMEMBER BY NAME? | 16:28:52 |
| 3 | MR. MC FARLAND:  GIVE YOURSELF TIME. | 16:28:54 |
| 4 | THE WITNESS:  OKAY. | 16:28:56 |
| 5 | THE WITNESS:  CAROLYN OROS.  GOSH, EVEN HUNG | 16:28:59 |
| 6 | LEE DID IT. | 16:29:08 |
| 7 | MR. PLEVAN:  I'M SORRY. | 16:29:11 |
| 8 | THE WITNESS:  HUNG LEE.  HUNG LEE. | 16:29:12 |
| 9 | BY MR. ZELLER: | 16:29:17 |
| 10 | Q    ANYONE ELSE? | 16:29:17 |
| 11 | A    I WAS TRYING TO GO THROUGH EVERYBODY IN THE | 16:29:18 |
| 12 | DEPARTMENT.  THAT'S EVERYBODY I CAN REMEMBER. | 16:29:21 |
| 13 | Q    SINCE WE'RE BACK TO MATTEL, I'M GOING TO ASK | 16:29:37 |
| 14 | THAT M.G.A.'S IN-HOUSE COUNSEL BE EXCLUDED. | 16:29:41 |
| 15 | NOW, OF THESE PEOPLE WHO YOU MENTIONED, DID | 16:29:58 |
| 16 | YOU TELL ANY OF THEM SPECIFICALLY THAT YOU WERE DOING | 16:30:02 |
| 17 | WORK FOR HANNA-BARBERA OR THROUGH ILANA RAYNES? | 16:30:06 |
| 18 | A    I TALKED TO FREDERICK ABOUT THE WORK THROUGH | 16:30:11 |
| 19 | HANNA-BARBERA. | 16:30:14 |
| 20 | Q    WHAT'S FREDERICK'S NAME? | 16:30:19 |
| 21 | A    FREDERICK JACKSON. | 16:30:22 |
| 22 | Q    DID YOU DISCUSS EITHER THE HANNA-BARBERA WORK | 16:30:29 |
| 23 | OR THE WORK THROUGH ILANA RAYNES WITH ANYONE ELSE AT | 16:30:33 |
| 24 | MATTEL? | 16:30:38 |
| 25 | A    I THINK MICHAEL KNEW ABOUT THE WORK FOR ILANA. | 16:30:39 |

184

| | | |
|---|---|---|
| 1 | Q   AND WHY DO YOU SAY THAT? | 16:30:47 |
| 2 | A   I THINK I REMEMBER TALKING TO HIM ABOUT IT. | 16:30:50 |
| 3 | Q   DID YOU TELL HIM BEFORE YOU WERE DOING IT OR | 16:30:55 |
| 4 | AFTER? | 16:30:59 |
| 5 | A   HE TOLD ME HOW TO DO IT. | 16:31:00 |
| 6 | Q   SO IT MICHAEL HEBDEN WHO INTRODUCED YOU TO | 16:31:04 |
| 7 | ILANA RAYNES SO THAT YOU COULD DO WORK FOR A MATTEL | 16:31:10 |
| 8 | COMPETITOR WHEN YOU WERE THERE AT MATTEL? | 16:31:15 |
| 9 | A   THAT'S NOT WHY HE INTRODUCED ME TO ILANA | 16:31:18 |
| 10 | RAYNES. | 16:31:21 |
| 11 | Q   WELL, WE'RE TALKING ABOUT SPECIFICALLY | 16:31:22 |
| 12 | INSTANCES IN WHICH YOU TOLD OR YOU DISCUSSED THIS WORK | 16:31:26 |
| 13 | FOR COMPETITORS WHILE YOU WERE STILL EMPLOYED BY | 16:31:31 |
| 14 | MATTEL.  YOUR ANSWER ABOUT MICHAEL HEBDEN SEEMED TO | 16:31:35 |
| 15 | SUGGEST THAT HE WAS THE ONE WHO ENABLED OR FACILITATED | 16:31:40 |
| 16 | OR SOMEHOW SET UP YOUR WORK WITH ILANA RAYNES? | 16:31:43 |
| 17 | A   HE DIDN'T SET IT UP.  I DIDN'T MAKE A LOT OF | 16:31:47 |
| 18 | MONEY BACK THEN, AND I NEEDED TO PAY THE BILLS, AND HE | 16:31:51 |
| 19 | SUGGESTED A WAY OF GETTING FREE-LANCE WORK. | 16:31:57 |
| 20 | Q   SO MICHAEL HEBDEN WAS THE ONE WHO SAID TO YOU | 16:32:02 |
| 21 | WHY DON'T YOU TRY GETTING FREE-LANCE WORK THROUGH ILANA | 16:32:06 |
| 22 | RAYNES? | 16:32:10 |
| 23 | A   NO.  HE NEVER SAID ILANA.  HE NEVER SAID | 16:32:10 |
| 24 | ANYBODY SPECIFICALLY. | 16:32:14 |
| 25 | Q   HE JUST TOLD YOU TO GO OFF AND GET FREE-LANCE | 16:32:14 |

185

Exhibit 5 , P. 77

| | | |
|---|---|---|
| 1 | WORK? | 16:32:18 |
| 2 | A    WELL, HE SUGGESTED A WAY OF DOING IT. | 16:32:18 |
| 3 | Q    AND HOW DID HE DO THAT? | 16:32:21 |
| 4 | A    WELL, JUST LIKE I TOLD YOU, TALK TO THE | 16:32:23 |
| 5 | VENDORS WHO ARE DOING WORK AND SEE IF THEY HAVE EXTRA | 16:32:26 |
| 6 | WORK THAT THEY CAN'T DO. | 16:32:31 |
| 7 | Q    DID YOU HAVE ONE CONVERSATION WITH MR. HEBDEN | 16:32:36 |
| 8 | ABOUT THIS OR MORE THAN ONE? | 16:32:40 |
| 9 | A    PROBABLY, MORE THAN ONE, BUT I CAN'T TELL YOU | 16:32:42 |
| 10 | HOW MANY. | 16:32:44 |
| 11 | Q    WHEN DID THOSE CONVERSATIONS OCCUR? | 16:32:45 |
| 12 | A    I DON'T REMEMBER. | 16:32:47 |
| 13 | Q    YOU CAN'T TELL ME A YEAR? | 16:32:48 |
| 14 | A    I CAN'T TELL YOU. | 16:32:50 |
| 15 | Q    WHERE DID THEY TAKE PLACE? | 16:32:53 |
| 16 | A    IN THE DEPARTMENT. | 16:32:56 |
| 17 | Q    THERE IN THE MATTEL DESIGN CENTER? | 16:32:59 |
| 18 | A    YES. | 16:33:01 |
| 19 | Q    SO THEN OTHER THAN THE FREE-LANCE JOB THAT YOU | 16:33:08 |
| 20 | MENTIONED FOR HANNA-BARBERA AND THE WORK THAT YOU DID | 16:33:13 |
| 21 | THROUGH ILANA RAYNES -- WELL, I'M SORRY.  I'LL TRY IT | 16:33:17 |
| 22 | THIS WAY: | 16:33:23 |
| 23 | DURING THE TIME THAT YOU WERE DOING THAT | 16:33:25 |
| 24 | FREE-LANCE WORK THAT YOU DESCRIBED WHILE YOU WERE | 16:33:28 |
| 25 | EMPLOYED BY MATTEL THROUGH HANNA-BARBERA AND THROUGH | 16:33:31 |

186

| | | |
|---|---|---|
| 1 | ILANA RAYNES, YOU WERE AWARE THAT WAS INCONSISTENT WITH | 16:33:34 |
| 2 | YOUR MATTEL EMPLOYMENT AGREEMENT; IS THAT TRUE? | 16:33:38 |
| 3 | A    YES. | 16:33:41 |
| 4 | Q    AND YOU KNEW THAT AT THE TIME? | 16:33:41 |
| 5 | A    YES. | 16:33:43 |
| 6 | Q    PRIOR TO THE TIME THAT YOU TOOK ON ANY OF | 16:33:52 |
| 7 | THOSE JOBS, DID YOU GO AND GET APPROVAL FROM ANY MATTEL | 16:33:54 |
| 8 | EXECUTIVE IN WHICH YOU SAID SPECIFICALLY YOU WERE GOING | 16:33:59 |
| 9 | TO BE WORKING ON THOSE PROJECTS FOR A COMPETITOR? | 16:34:02 |
| 10 | A    NO. | 16:34:06 |
| 11 | Q    DID YOU EVER DISCLOSE TO ANYONE SENIOR VICE | 16:34:10 |
| 12 | PRESIDENT LEVEL OR ABOVE THERE AT MATTEL THAT YOU WERE | 16:34:16 |
| 13 | DOING THIS WORK? | 16:34:20 |
| 14 | MR. MC FARLAND:   OBJECT TO THE | 16:34:21 |
| 15 | CHARACTERIZATION OF THE LEVEL AND THE LACK OF | 16:34:22 |
| 16 | FOUNDATION AS TO WHAT MR. HEBDEN'S TITLE WAS, WHO WAS | 16:34:24 |
| 17 | HER SUPERVISOR. | 16:34:28 |
| 18 | THE WITNESS:   CAN YOU ASK THAT QUESTION AGAIN? | 16:34:30 |
| 19 | MR. ZELLER:   IF WE CAN READ IT BACK. | 16:34:32 |
| 20 | (RECORD READ.) | 16:34:43 |
| 21 | THE WITNESS:   NO. | 16:34:43 |
| 22 | BY MR. ZELLER: | 16:34:57 |
| 23 | Q    WHAT WAS, APPROXIMATELY, THE OVERALL TIME | 16:34:57 |
| 24 | PERIOD WHEN YOU WERE DOING THIS WORK FOR COMPETITORS | 16:35:03 |
| 25 | WHILE EMPLOYED BY MATTEL?   ARE WE TALKING A MATTER OF | 16:35:09 |

187

Exhibit  5 , P.  79

| | | |
|---|---|---|
| 1 | WEEKS?  A MATTER OF MONTHS?   LONGER? | 16:35:14 |
| 2 | A   HERE AND THERE THROUGHOUT THE WHOLE COURSE OF | 16:35:16 |
| 3 | WORKING AT MATTEL. | 16:35:18 |
| 4 | Q   DID YOU DO SOME OF THE WORK THAT 2000 -- WORK | 16:35:19 |
| 5 | FOR COMPETITORS WHILE EMPLOYED BY MATTEL? | 16:35:24 |
| 6 | A   POSSIBLY. | 16:35:28 |
| 7 | Q   DURING THE TIME THAT YOU WERE OUT ON FAMILY | 16:35:29 |
| 8 | LEAVE, DID YOU DO ANY WORK FOR MATTEL COMPETITORS? | 16:35:31 |
| 9 | A   NO, I DID NOT.  I DIDN'T DO ANY WORK AT ALL. | 16:35:35 |
| 10 | Q   OTHER THAN YOURSELF, DO YOU KNOW ANY PERSON | 16:35:53 |
| 11 | THERE AT MATTEL WHO WAS A MATTEL EMPLOYEE BY NAME WHO | 16:35:56 |
| 12 | WAS, ALSO, DOING WORK FOR A COMPETITOR AT THE SAME | 16:36:01 |
| 13 | TIME? | 16:36:05 |
| 14 | A   I DON'T KNOW ANYBODY BY NAME. | 16:36:14 |
| 15 | Q   DURING THE TIME WHEN YOU WERE WORKING ON THIS | 16:36:24 |
| 16 | PROJECT FOR HANNA-BARBERA, DID YOU DO ANY OF THAT WORK | 16:36:27 |
| 17 | AT THE MATTEL DESIGN CENTER? | 16:36:32 |
| 18 | A   NO. | 16:36:34 |
| 19 | Q   YOU DID IT ALL AT HOME? | 16:36:36 |
| 20 | A   YES. | 16:36:39 |
| 21 | Q   DID YOU USE ANY MATTEL SUPPLIES FOR IT? | 16:36:40 |
| 22 | A   NO. | 16:36:43 |
| 23 | Q   AND HOW DO YOU KNOW? | 16:36:44 |
| 24 | A   BECAUSE THE PENELOPE PIT STOP HAD ALREADY BEEN | 16:36:46 |
| 25 | SCULPTED AND THEY JUST WANTED ME TO FIX IT. | 16:36:54 |

188

Exhibit  5 , P. 60

| | | |
|---|---|---|
| 1 | MR. ZELLER:  I'M SORRY. | 16:58:12 |
| 2 | MR. MC FARLAND:  I THINK WE SHOULD LOOK AT THE | 16:58:13 |
| 3 | OBJECTS.  LET'S TAKE A BREAK AND GET THE OBJECTS. | 16:58:13 |
| 4 | THE VIDEOGRAPHER:  GOING OFF THE RECORD AT | 16:58:25 |
| 5 | 4:58 P.M. | 16:58:27 |
| 6 | (RECESS.) | 17:19:17 |
| 7 | THE VIDEOGRAPHER:  GOING BACK ON THE RECORD AT | 17:19:35 |
| 8 | 5:19 P.M. | 17:19:37 |
| 9 | BY MR. ZELLER: | 17:19:39 |
| 10 | Q   I UNDERSTAND THAT YOU RECALLED A COUPLE OF | 17:19:39 |
| 11 | ADDITIONAL THINGS OR WANTED TO AMPLIFY SOME OF YOUR | 17:19:44 |
| 12 | PRIOR TESTIMONY? | 17:19:46 |
| 13 | A   YES.  I REMEMBER WHAT I NEEDED TO CALL CHRIS | 17:19:47 |
| 14 | SESTO ABOUT.  I NEEDED TO START MAKING MY OWN SILICONE | 17:19:52 |
| 15 | RUBBER MOLDS JUST FOR SPEED SAKE, AND TO MAKE THOSE | 17:19:58 |
| 16 | PROPERLY, YOU NEED A VACUUM PUMP TO TAKE THE AIR | 17:20:02 |
| 17 | BUBBLES OUT OF THE SILICONE BECAUSE IT IS VERY THICK. | 17:20:06 |
| 18 | SO I CALLED CHRIS TO FIND OUT WHERE I COULD GET ONE. | 17:20:11 |
| 19 | Q   AND THIS WAS DURING A TIME WHEN CHRIS SESTO | 17:20:15 |
| 20 | WAS AT MATTEL, AND YOU HAD LEFT? | 17:20:19 |
| 21 | A   YES. | 17:20:21 |
| 22 | Q   IS THERE ANYTHING ELSE THAT YOU HAD TO ADD TO | 17:20:23 |
| 23 | YOUR PRIOR TESTIMONY? | 17:20:27 |
| 24 | A   NOT ABOUT CHRIS SESTO BUT ABOUT TALKING ABOUT | 17:20:28 |
| 25 | THE CASE.  I'VE -- I WAS AT A BAR WITH ROXANNA POWELL, | 17:20:32 |

204

Exhibit 5, P. 81

| | | |
|---|---|---|
| 1 | AND THIS IS IN THE SUMMER OF '01 AND, SHE ASKED ME | 17:20:42 |
| 2 | ABOUT CARTER AND PAULA'S INVOLVEMENT IN THE BRATZ. | 17:20:46 |
| 3 | Q    WHO'S ROXANNA POWELL? | 17:20:56 |
| 4 | A    ROXANNA POWELL. | 17:21:00 |
| 5 | Q    POWELL, YES. | 17:21:01 |
| 6 | A    SHE'S A GOOD FRIEND OF MINE.  WE BECAME | 17:21:01 |
| 7 | FRIENDS AT MATTEL RIGHT BEFORE I LEFT, AND WE'VE BEEN | 17:21:04 |
| 8 | FRIENDS EVER SINCE. | 17:21:07 |
| 9 | Q    AND WHAT IS IT THAT -- IS ROXANNA POWELL STILL | 17:21:13 |
| 10 | WITH MATTEL? | 17:21:17 |
| 11 | A    NO.  SHE -- SHE QUIT WHEN SHE HAD HER FIRST | 17:21:18 |
| 12 | SON, AND NOW, SHE WORKS WITH ME AT THE DISNEY STORES. | 17:21:22 |
| 13 | Q    WHAT IS IT THAT SHE ASKED AT THAT TIME? | 17:21:36 |
| 14 | A    AT THE BAR? | 17:21:39 |
| 15 | Q    YES. | 17:21:40 |
| 16 | A    SHE ASKED ME -- IT KIND OF STRUCK ME BECAUSE | 17:21:41 |
| 17 | WE WERE FRIENDS, AND IT SEEMED LIKE A VERY POIGNANT | 17:21:44 |
| 18 | QUESTION LIKE SOMEBODY HAD PUT HER UP TO IT.  SHE ASKED | 17:21:49 |
| 19 | ME, YOU KNOW, "WAS CARTER THE DESIGNER ON THE CASE -- | 17:21:55 |
| 20 | OR ON THE DOLL, OR WHAT WAS PAULA'S INVOLVEMENT?"  SHE | 17:21:58 |
| 21 | WAS KIND OF GRILLING ME A LITTLE BIT. | 17:22:01 |
| 22 | Q    IS THERE ANYTHING ELSE THAT SHE SAID? | 17:22:06 |
| 23 | A    THAT'S ALL I REMEMBER. | 17:22:08 |
| 24 | Q    AND WHAT DID YOU TELL HER? | 17:22:09 |
| 25 | A    I TOLD HER THAT PAULA -- CARTER INITIALLY CAME | 17:22:13 |

205

Exhibit 5, p. 62

| | | |
|---|---|---|
| 1 | UP WITH A DESIGN, AND PAULA CARRIED IT OUT. | 17:22:18 |
| 2 | Q    AND WHEN YOU SAY "INITIALLY CAME UP WITH THE | 17:22:22 |
| 3 | DESIGN," YOU MEAN, FOR THE BRATZ DOLLS? | 17:22:26 |
| 4 | A    FOR THE BRATZ DOLLS AS WE KNOW THEM NOW. | 17:22:28 |
| 5 | Q    AND WHAT DO YOU MEAN BY "PAULA CARRIED THEM | 17:22:34 |
| 6 | OUT"? | 17:22:38 |
| 7 | A    SHE WAS RESPONSIBLE FOR THE FINAL PRODUCT AND | 17:22:40 |
| 8 | THE WAY IT LOOKED ON THE SHELVES. | 17:22:44 |
| 9 | Q    AND WHAT DO YOU MEAN BY THAT? | 17:22:47 |
| 10 | A    MEANING, HONESTLY, YOU CAN HAVE A GOOD SCULPT, | 17:22:50 |
| 11 | BUT IF YOU HAVE A PAINT, BAD HAIR, BAD FASHIONS, BAD | 17:22:55 |
| 12 | PACK OUT AND BAD MARKETING, IT WON'T GO ANYWHERE. | 17:23:00 |
| 13 | PAULA WAS THE MASTERMIND BEHIND MAKING BRATZ WHAT IT IS | 17:23:05 |
| 14 | AND PUTTING IT ALL TOGETHER. | 17:23:10 |
| 15 | Q    DURING THAT CONVERSATION, DID YOU TELL ROXANNA | 17:23:19 |
| 16 | POWELL THAT CARTER BRYANT WAS WORKING ON BRATZ WHEN HE | 17:23:24 |
| 17 | WAS EMPLOYED BY MATTEL? | 17:23:28 |
| 18 | A    NO.   THAT DIDN'T COME UP. | 17:23:29 |
| 19 | Q    DID YOU EVER TELL THAT TO ANYONE AT MATTEL? | 17:23:31 |
| 20 | A    NO. | 17:23:34 |
| 21 | Q    HAVE YOU EVER HAD A CONVERSATION WITH CARTER | 17:23:39 |
| 22 | BRYANT ABOUT THE FACT THAT HE WAS WORKING ON THE BRATZ | 17:23:42 |
| 23 | PROJECT WHEN HE WAS STILL AT MATTEL? | 17:23:46 |
| 24 | MS. ANDERSON:  VAGUE. | 17:23:49 |
| 25 | THE WITNESS:  NO, I HAVEN'T.  NO. | 17:23:50 |

206