1    THOMAS J. NOLAN (Bar No. 66992)
     (tnolan@skadden.com)
2    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
     300 South Grand Avenue
3    Los Angeles, CA  90071-3144
     Tel.: (213) 687-5000/Fax: (213) 687-5600
4
     RAOUL D. KENNEDY (Bar No. 40892)
5    (rkennedy@skadden.com)
     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6    4 Embarcadero Center, 38th Floor
     San Francisco, CA  94111-5974
7    Tel.: (415) 984-6400 / Fax: (415) 984-2698

8    Attorneys for MGA Entertainment, Inc.

9

10            UNITED STATED DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12    CARTER BRYANT, an individual,     )  CASE NO. CV 04-9049 SGL (RNBx)
                                       )  Consolidated with Case No. 04-9059
13                Plaintiff,     )  and Case No. 05-2727
                                       )
14              v.                )  **DISCOVERY MATTER**
                                       )  **[PUBLIC REDACTED]**
15    MATTEL, INC., a Delaware         )  SUPPLEMENTAL DECLARATION
     corporation,                     )  OF ROBERT  J. HERRINGTON IN
16                                     )  SUPPORT OF MGA'S MOTION TO
              Defendant.     )  COMPEL MATTEL TO PRODUCE
17                                        )  EMAIL
                                       )
18                                        )  [To be heard by Discovery Master
                                       )  Hon. Edward Infante (Ret.) Pursuant
19                                        )  to Court Order of December 6, 2006]
20    AND CONSOLIDATED ACTIONS   )
                                       )  Hearing Date: January 11, 2008
21                                      )  Time: TBD

22

23

24

25

26

27

28

I, Robert J. Herrington, declare and state as follows:

I am an attorney with Skadden, Arps, Slate, Meagher & Flom, LLP, counsel of record for MGA Entertainment, Inc. ("MGA").

1.      Attached as **Exhibit 13** hereto is a true and correct copy of pages 501-506 of the deposition of Fred Kawshima, Mattel's Rule 30(b)(6) designee on email issues.

2.      I have worked with colleagues to compare the list of witnesses identified in Mattel's Opposition brief for whom Mattel asserts that email files have been searched with the list of witnesses Mattel identified in its Initial Disclosures and in response to MGA's Interrogatories.  Attached as **Exhibit 14** hereto is a list of current or former Mattel employees identified in Mattel's Initial Disclosures or in Mattel's interrogatory responses as having knowledge relating to this case, but whose names are not identified in Mattel's Opposition or the supporting papers as people for whom email was searched.  Attached as **Exhibit 15** hereto is list of additional current or former Mattel employees who have been identified during discovery in this case as having knowledge relating to this case and who also are not identified in Mattel's Opposition or the supporting papers as people for whom email was searched.

3.      Attached as **Exhibit 16** hereto is a true and correct copy of pages 17-20, 283, and 288-289 of the rough deposition transcript of Maureen Tafoya.

4.      Attached as **Exhibit 17** hereto is a true and correct copy of the "Anonymous Letter" sent to Mattel CEO, Robert Eckert, in August 2002, as well as a follow-up email sent from Mattel's head of Global Security, Richard De Anda, to Mattel's head of HR, Alan Kaye. These documents were marked as Exhibits 1193 and 1194 respectively at the deposition of Richard De Anda.

5.       Attached as **Exhibit 18** hereto is a true and correct copy of pages 238-251 from the rough deposition transcript of Tim Kilpin.

6.       Attached as **Exhibit 19** hereto is a true and correct copy of an April 15, 2004 Mattel presentation that was marked as Exhibit 1807 at the deposition of Tim Kilpin.

7.       Attached as **Exhibit 20** hereto is a true and correct copy of the minutes from a March 12, 2004 Mattel Board of Directors Meeting (M037414-439).

8.       Attached as **Exhibit 21** hereto is a true and correct copy of pages 30-32 of the deposition transcript of Cassidy Park.

9.       Attached as **Exhibit 22** hereto is a true and correct copy of a January 27, 2008 letter from Heidi Frahm to Thomas J. Nolan producing documents and emails relating to Dan Cooney.  **Exhibit 23** is a true and correct copy of a January 25, 2008 letter from Heidi Frahm to Thomas J. Nolan producing documents and emails relating to Dan Cooney.  **Exhibit 24** is a true and correct copy of a January 25, 2008 email from Heidi Frahm to Thomas J. Nolan.  **Exhibit 25** is a true and correct copy of a January 26, 2008 letter from Heidi Frahm to Thomas J. Nolan producing documents and emails relating to Dan Cooney.  I understand that the documents Mattel produced relating to Mr. Cooney included email and other electronic documents supposedly downloaded by Mr. Cooney from Mattel about which he was questioned during his deposition on January 28, 2008.

10.       **Exhibit 23** is a true and correct copy of a January 25, 2008 letter from Heidi Frahm to Thomas J. Nolan producing documents and emails relating to Nic Contreras.  I understand that the documents Mattel produced relating to Mr. Contreras included electronic documents supposedly downloaded by Mr. Contreras from Mattel about which he was questioned during his deposition on January 28, 2008.

11.    Attached as **Exhibit 26** hereto is a true and correct copy of December 24, 2007 letter from Robert Herrington and Jon Corey.

12.    Attached as **Exhibit 27** hereto is a true and correct copy of a January 17, 2008 letter from Robert Herrington and Christopher Grohman.

13.    Attached as **Exhibit 28** hereto is a true and correct copy of an email Mattel CEO Robert Eckert sent to himself with the subject "NHB Timeline." (M0257834).

14.    Attached as **Exhibit 29** hereto is a true and correct copy of a February 4, 2008 letter from Marcus Mumford to Tim Alger.

15.    Attached as **Exhibit 30** hereto is a true and correct copy of pages 1 and 6-7 of Mattel's Opposition to MGA's Motion for Terminating Sanctions.

16.    Attached as **Exhibit 31** hereto is a true and correct copy of an email Mattel produced in this lawsuit. (M079797)

17.    Attached as **Exhibit 32** hereto is a true and correct copy of an email Mattel recently produced in this lawsuit.  (M0273629-634).


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on February 5, 2008, at Los Angeles, California.


By: _____
Robert J. Herrington

# EXHIBIT 13

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT

 2            CENTRAL DISTRICT OF CALIFORNIA

 3                  EASTERN DIVISION                Certified Copy

 4

 5     --------------------------------

 6     MATTEL, INC., a Delaware        )

 7     Corporation,                    )

 8                    Plaintiff,       )

 9             vs.                     ) No. CV 04-9059

10     CARTER BRYANT, an individual;   )    NM (RNBx)

11     and DOES 1 through 10,          ) VOLUME II

12     Inclusive,                      )

13                    Defendants.      )

14     -------------------------------- )

15     (COMPLETE CAPTION ON NEXT PAGE.)

16

17        CONFIDENTIAL - ATTORNEYS' EYES ONLY

18

19     Continued Videotaped 30(b)(6) Deposition

20     of FRED T. KAWASHIMA, taken at 400 South

21     Hope Street, Los Angeles, California,

22     commencing at 9:57 A.M., Tuesday,

23     June 19, 2007, before Wendy S. Schreiber,

24     CSR No. 3558, RPR, CLR.

25     PAGES 281 - 517
```

Exhibit 13 , P. 5

281

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES OF COUNSEL:

 2

 3

 4         FOR THE PLAINTIFF:

 5

 6              QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

 7              BY:   JON COREY, ESQ.

 8              865 South Figueroa Street, Tenth Floor

 9              Los Angeles, California 90017

10              (213) 443-3000

11              joncorey@quinnemanuel.com

12

13                        -AND-

14

15         MATTEL, INC.

16         BY:  MICHAEL MOORE, ESQ.

17         333 Continental Boulevard

18         El Segundo, California 90245-5012

19         (310) 252-2000

20         michael.moore@mattel.com

21

22

23

24

25
```

Exhibit 13, P. 6

282

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES OF COUNSEL (CONTINUED):

 2

 3        FOR THE DEFENDANT AND COUNTERCLAIMANT

 4        CARTER BRYANT:

 5

 6            KEKER & VAN NEST LLP

 7            710 Sansome Street

 8            San Francisco, California 94111-1704

 9            (415) 391-5400

10            (NOT PRESENT)

11

12

13    FOR DEFENDANT MGA ENTERTAINMENT, INC.:

14

15            O'MELVENY & MYERS LLP

16            BY:  JAMES PAUL JENAL, ESQ.

17            400 South Hope Street

18            Los Angeles, California 90071-2899

19            (213) 430-6000

20            jjenal@omm.com

21

22    ALSO PRESENT:

23

24            RYAN GULINO, VIDEO OPERATOR

25
```

Exhibit 13 , P. 7

283

```
 1      A.   Correct.
 2      Q.   And in particular I think you had said that
 3  they had come in to collect data that was on the
 4  SYMM frame that was in place --
 5      A.   Yes.                                    04:50PM
 6      Q.   -- in the 2005 time period, correct?
 7      A.   Yes.
 8      Q.   And those were user files as opposed to
 9  E-mail, correct?
10      A.   Well, actually the SYMM was a repository for  04:50PM
11  all files -- E-mail -- E-mail files and regular
12  office documents.
13      Q.   When you say it was a repository for all
14  files, what exactly do you mean?
15      A.   I'm sorry, that was our storage device.   04:51PM
16  That's where all the databases and folders were
17  stored.  That's our --
18      Q.   Are you saying that that was the device
19  where the Exchange mailbox -- mailboxes were stored?
20      A.   That's correct.                         04:51PM
21      Q.   Okay.  I'm not sure I had understood you to
22  say that previously.  Okay.
23           So as of June, July 2005, whenever that time
24  was that Evident Data acquired that, they
25  essentially acquired whatever E-mail was present on  04:51PM
                                                        501
```

```
 1    that server at that time -- on that file system at

 2    that time?

 3        A.   That is -- that is correct, E-mails and

 4    other files.

 5        Q.   So that mailbox -- the mailboxes -- the        04:52PM

 6    databases from the Exchange mailboxes, that would be

 7    searchable, correct?

 8        A.   On the SYMM?

 9        Q.   Yes.

10        A.   Potentially, yes.                              04:52PM

11        Q.   Do you know whether Evident Data has been

12    tasked with doing searches of E-mail from that copy

13    that they took in June or July of 2005?

14             MR. COREY:  Objection:  scope.

15             THE WITNESS:  I'm not aware of that request,   04:52PM

16    if it was made.

17    BY MR. JENAL

18        Q.   Has Evident Data received additional E-mail

19    data since acquiring the information that was on the

20    SYMM frame in June, July 2005?                          04:52PM

21             MR. COREY:  Objection:  scope.

22             THE WITNESS:  Have they received additional

23    E-mails?  I am not -- I'm trying to think.  I can't

24    corroborate that.  I'm not sure.

25    /  /  /                                                 04:53PM
```

Exhibit 13 , P. 9

502

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   BY MR. JENAL

 2        Q.   So what they -- in getting the data that was

 3   on the SYMM frame in June, July 2005, in addition to

 4   user files, office files, whatever, they would have

 5   essentially had a snapshot of whatever E-mail was      04:53PM

 6   available on those mailbox servers as of that time,

 7   correct?

 8        A.   That's correct.

 9        Q.   And to your understanding to the extent that

10   the 90-day E-mail retention policy would have been     04:53PM

11   in place and enforced on that server, the oldest

12   E-mail would be 90 days, correct?

13        A.   Ninety days prior?

14        Q.   Correct.

15        A.   That is my understanding, yes.              04:54PM

16             MR. COREY:  And that -- that's within --

17   you're talking about within the Exchange mailbox

18   database?

19             MR. JENAL:  Yes.

20        Q.   That's as far back as it would have gone    04:54PM

21   subject to the Mailbox Manager policy that was in

22   place in June, July of 2005?

23        A.   Of the E-mail that was on the Exchange

24   server, that's correct.

25        Q.   Is the SYMM frame also, is that where the M 04:54PM
```

503

Exhibit 13, P. 10

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    drive mapping took place?

2        A.    That's correct.

3        Q.    So if a user saved a PST file up to their M

4    drive, that would have been captured in the data

5    that was handed over to Evident Data in June or July    04:54PM

6    of 2005 as well, correct?

7        A.    That is my understanding, yes.

8        Q.    But if there were PST files that were saved

9    on the user's local hard drive, that information

10   would not have been handed over to Evident Data in    04:55PM

11   June, July 2005; is that correct?

12       A.    Yes, that's my understanding.

13       Q.    Do you know whether individual user PST

14   files off of their local hard drives have been

15   provided to Evident Data?                              04:55PM

16           MR. COREY:  Objection:  scope.

17           THE WITNESS:   Individual PSTs?

18   BY MR. JENAL

19       Q.    Right.  PSTs off an individual user's local

20   hard drive, do you know if those have been provided    04:55PM

21   to Evident Data?

22           MR. COREY:  Same objection.

23           THE WITNESS:  I can't confirm that.  I don't

24   know.

25   BY MR. JENAL:                                          04:55PM

                                                            504

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      Q.    Who would know that?

2      A.    You know, I don't know.  I wouldn't know.

3      Q.    I think you testified that the Customer

4   Service people had the ability to essentially

5   remotely connect to a user's computer and they could    04:55PM

6   have copied PST files from the local hard drives of

7   that computer, correct?

8      A.    They have the administrative rights to do so

9   when -- in El Segundo.

10     Q.    Do you know whether they have done that in     04:56PM

11  support of this litigation?

12     A.    I'm not aware of that.

13     Q.    All right.  Then do you know whether or not

14  any actions have been taken by Mattel to determine

15  whether the E-mail that it has preserved contains     04:57PM

16  any E-mails to or from a woman by the name of Paula

17  Treantafelles?

18          MR. COREY:  Objection:  scope.

19          THE WITNESS:  I'm not aware of that name or

20  any requests or actions performed.               04:57PM

21  BY MR. JENAL

22     Q.    How about the name Paula Garcia?  Is that

23  name familiar?

24     A.    That name is not familiar either.

25     Q.    Is the name Ron Brower familiar?          04:57PM

                                                          505

Exhibit 13 , P. 12

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1     A.   No, it isn't.

 2     Q.   Do you know whether or not Mattel has taken

 3   any actions to search whatever E-mail it's retained

 4   for E-mail to or from Ron Brower?

 5          MR. COREY:  Objection:  scope.           04:57PM

 6          THE WITNESS:  I'm not familiar with that

 7   name or know of anything about that.

 8   BY MR. JENAL

 9     Q.   Do you know whether or not Mattel has taken

10   any actions to determine whether it's retained      04:57PM

11   E-mail -- contains E-mails to or from Jenene

12   Brisbois?

13          MR. COREY:  Same objections.

14          THE WITNESS:  Same answer.  I've never heard

15   of her name or know anything about that.       04:58PM

16   BY MR. JENAL

17     Q.   Have you ever heard of an E-mail account

18   that is known as Plot04@aol.com?

19     A.   That's the first time I've heard of it.  I'm

20   not aware of anything like that.               04:58PM

21     Q.   Do you know whether Mattel has taken any

22   steps to determine whether it has retained E-mail

23   from a Plot04@aol.com account?

24          MR. COREY:  Same objections.

25          THE WITNESS:  No, I'm not aware of that    04:58PM
```
                                                           506

Exhibit 13, P. 13

EXHIBIT 14

# EXHIBIT 14

Aguilar, Lourdes
Andres, Jules
Arons, Russell
Bennett, Nancy
Benz, Molly
Bousquette, Matt
Buzby, Sarah
Casey, Kathy
Choi, Ok Soo
Clayton, Larry
Cloonan, Elise
Cota, Stephanie
Dennis, Alan
Dyer, Ian
Eckert, Robert
Elias, Jaime
Fierro, Yeira
Fontenella, Adrianne
Freed, Lissa
Friedman, Neil
Gillmour-Bryant, Kami
Gomez, Jean
Green, Joanne
Halpern, Sarah
Haverly, Kiyomi
Hitch, Martin
Honda Hatadi, Ricardo
Hudnut, Robert
Huntley, James Brian
Ibarra, Ricardo
Isaias, Roberto
Kaye, Alan
Kilpin, Timothy
Koch, Andreas
Kuchem, Kara
Kyaw, Sheila
Leahy, Margaret
Linker, Steve

Exhibit 14, P. 14

Mann, Joy
McBride, Susan
Miller, Barbara
Mills, Frank
Mullen, Maureen
Nussbaum, Conrad
Ongchongo, Kislap
Papayanopulos, Karla
Pratte, Joni
Ragsdale, Wendy
Ragsdale, William
Reyes, Scot Anthony
Richter, Ian
Ross, Ivy
Scothon, Chuck
Su, Jier
Tafoya, Maureen
Tamae, Gail
Waisman, Vivianne
Waldron, Simon
Ward, Mercedeh
Wilbur, Therese
Wong, Tricia
Yonemoto, Sandy

2

# EXHIBIT 15

# EXHIBIT 15

De Anda, Richard
Moore, Michael
Newcomb, Theresa
Simoneau, Robert
Varu (Patel), Tina
Zablow, Milton

1

Exhibit 15 , P. 16

EXHIBIT 16

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

1           UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3                EASTERN DIVISION

4    - - - - - - - - - - - - - - - - - - - - - - - -

5    MATTEL, INC., a Delaware          )

6    Corporation,                      )

7               Plaintiff,             )

8               vs.                    ) No. CV 04-9059

9    CARTER BRYANT, an individual;     )    NM  (RNBx)

10   and DOES 1 through 10,            ) VOLUME I

11   Inclusive,                        )

12               Defendants.           )

13   - - - - - - - - - - - - - - - - - - - - - - - - )

14   (COMPLETE CAPTION ON NEXT PAGE.)

15

16        CONFIDENTIAL - ATTORNEYS' EYES ONLY

17

18        Videotaped Deposition of MAUREEN TAFOYA,

19        taken at 300 South Grand Street, Los

20        Angeles, California, commencing at

21        9:28 A.M., Monday, January 28, 2008,

22        before Wendy S. Schreiber, CSR No. 3558,

23        RPR, CLR.

24

25   PAGES 1 - 321

Exhibit 16 , P. 17

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 2

1                UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                     EASTERN DIVISION

4

5     - - - - - - - - - - - - - - - - - - - - - - - - -

6     MATTEL, INC., a Delaware          )

7     Corporation,                      )

8                    Plaintiff,         )

9              vs.                      )  No. CV 04-9059

10    CARTER BRYANT, an individual;     )     NM (RNBx)

11    and DOES 1 through 10,            )

12    Inclusive,                        )

13                    Defendants.       )

14    - - - - - - - - - - - - - - - - - - - - - - - - )

15    CARTER BRYANT, on behalf of       )

16    himself, all present and          )

17    former employees of Mattel,       )

18    Inc., and the general public,     )

19                    Counter-Claimants, )

20              vs.                      )

21    MATTEL, INC., a Delaware          )

22    Corporation,                      )

23                    Counter-Defendant. )

24    - - - - - - - - - - - - - - - - - - - - - - - - -

25

Exhibit 16 , P. 18

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 3

1    APPEARANCES OF COUNSEL:

2

3        For the Plaintiff:

4

5            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

6            BY:  B. DYLAN PROCTOR, ESQ.

7            865 South Figueroa Street, Tenth Floor

8            Los Angeles, California 90017

9            (213) 443-3000

10           dylanproctor@quinnemanuel.com

11

12                        -and-

13

14           MATTEL, INC.

15           333 Continental Boulevard

16           El Segundo, California 90245-5012

17           (310) 252-2000

18           (NOT PRESENT)

19

20

21

22

23

24

25

Exhibit 16 , P. 19

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 4

```
 1    APPEARANCES (Continued):

 2

 3         For the Defendant and Counterclaimant

 4         Carter Bryant:

 5             KEKER & VAN NEST LLP

 6             BY:  REBEKAH L. PUNAK, ESQ.

 7             710 Sansome Street

 8             San Francisco, California 94111-1704

 9             (415) 391-5400

10             rpunak@kvn.com

11

12    For Defendant MGA Entertainment, Inc.:

13             SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

14             BY:  LANCE A. ETCHEVERRY, ESQ.

15                  JONATHAN D. USLANER, ESQ.

16             300 South Grand Avenue

17             Suite 3200

18             Los Angeles, California 90017

19             (213) 687-5000

20             letcheverry@skadden.com

21             Juslaner@skadden.com

22

23    Also Present:

24             Video Operator - David West

25
```

Exhibit 16 , P. 20

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 17

1    BY MR. ETCHEVERRY:

2        Q.    Sure.  Do you have any knowledge of facts

3    regarding MGA's access or alleged access to Mattel's

4    intellectual property and trade secrets?

5              MR. PROCTOR:  Same objection.              09:42AM

6              THE WITNESS:  Not to my knowledge.

7    BY MR. ETCHEVERRY:

8        Q.    Are you aware one way or another of whether

9    MGA had access to any intellectual property or trade

10   secrets of Mattel?                                   09:42AM

11       A.    I'm not aware one way or the other.

12             (Deposition Exhibit 2650 was marked

13       for identification and is bound separately.)

14   BY MR. ETCHEVERRY:

15       Q.    I would ask that the court reporter mark as  09:43AM

16   Exhibit -- I think we're starting at 2650 -- as

17   Exhibit 2650 a multi-page document entitled "MGA's

18   Third Set of Requests for the Production of

19   Documents and Things" in case No. 05-2727.

20             Ms. Tafoya, you have Exhibit 2650 in front  09:43AM

21   of you?

22       A.    Yes.

23       Q.    Have you seen this document before?

24       A.    No.

25       Q.    Will you turn to page 35 of the document,  09:44AM

Exhibit 16 , P. 21

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 18

1  please, and I'll direct your attention to where it

2  says request No. 358.  Do you see that?  It's the

3  second one from the top.  Do you see that?

4       A.   Uh-huh.

5       Q.   It reads "All documents referring or        09:44AM

6  relating to Maureen Tafoya's alleged knowledge of

7  'MGA's access to Mattel's intellectual property and

8  trade secrets,' as alleged in Mattel's Initial

9  Disclosures."

10          Do you see that?                             09:44AM

11      A.   I do.

12      Q.   Are you aware that MGA had sought documents

13 from you related to this subject matter?

14      A.   I don't recall that.

15      Q.   Have you ever conducted a search for        09:44AM

16 documents in connection with this litigation?

17          MR. PROCTOR:  Except as testified to

18 already?

19          MR. NOLAN:  Yes.

20          THE WITNESS:  Could you repeat the question? 09:45AM

21 BY MR. ETCHEVERRY:

22      Q.   Sure.  Have you conducted any searches for

23 documents in connection with this litigation other

24 than the few documents that you identified at the

25 outset?                                               09:45AM

Exhibit _16_, P._22_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 19

1    A.    I don't recall having -- ever having done

2    that.

3    Q.    Have you ever gathered together files for

4    any purpose and given them to counsel with respect

5    to this litigation?                                    09:45AM

6    A.    I don't recall ever having done that.

7         MR. PROCTOR:   Again, except as testified to

8    already you're talking about?

9         MR. ETCHEVERRY:   Yes, Counsel.

10   Q.    Referring your attention to request No. 359   09:45AM

11   immediately below --

12   A.    Yes.

13   Q.    -- this request seeks all documents in

14   Maureen Tafoya's possession or control referring or

15   relating to her alleged knowledge of MGA's access to   09:45AM

16   Mattel's intellectual property and trade secrets as

17   alleged in Mattel's initial disclosures.   Do you see

18   that?

19   A.    I do.

20   Q.    I assume the answer is the same; that you   09:45AM

21   didn't conduct any searches for documents related to

22   this subject matter?

23   A.    I don't recall having done that.

24   Q.    Are you aware sitting here today of any

25   documents that you may have that would be responsive   09:46AM

Exhibit 16 , P. 23

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 20

```
 1    to these specific requests?

 2              MR. PROCTOR:  Vague and ambiguous.

 3              THE WITNESS:  Could you repeat the question?

 4    BY MR. ETCHEVERRY:

 5       Q.   Sure.  Sitting here today, are you aware of    09:46AM

 6    any documents that you may have in your possession,

 7    custody or control that relate to these subject

 8    matters?

 9              MR. PROCTOR:  Same objection:  vague and

10    ambiguous.                                             09:46AM

11              THE WITNESS:  I am not aware of any.  I

12    cannot think of any.

13    BY MR. ETCHEVERRY:

14       Q.   Ms. Tafoya, are you aware that in connection

15    with MGA's request to take your deposition today       09:46AM

16    that the company sought certain documents from you?

17       A.   I'm not aware of that.  I don't recall that.

18       Q.   Have you seen a copy of the subpoena issued

19    for your presence today at the deposition?

20       A.   Actually, I don't recall having seen that.    09:47AM

21       Q.   And I assume other than the few documents

22    that you testified earlier that you looked for you

23    haven't undertaken any steps to locate any documents

24    in connection with this deposition today, correct?

25       A.   That's correct.                                09:47AM
```

Exhibit 16 , P. 24

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 283

1    meeting?

2        A.    Yes, I believe I did.

3        Q.    Is it standard protocol to have multiple

4    people at these exit interviews besides the exiting

5    employee?                                              05:41PM

6              MR. PROCTOR:  Vague and ambiguous.

7              THE WITNESS:  We frequently prefer to have a

8    supervisor there but because Mr. Murtha could not be

9    there we do like to have a third person there but I

10   wouldn't say we always do.                             05:41PM

11   BY MR. ETCHEVERRY:

12       Q.    Do you have an understanding as to why the

13   company would like to have a third person at these

14   exit interviews?

15       A.    Just my impression it's good practice.       05:42PM

16       Q.    You indicated that it's not always the case

17   that there's a third person present.

18       A.    Correct, it's not always the case.

19       Q.    Did you undertake any special efforts to

20   ensure that a third person was present at this exit     05:42PM

21   interview?

22       A.    No, I asked Kathy.  She said she could.

23       Q.    Is there any policy with respect to when an

24   employee is leaving for a competitor that there be a

25   need for a third person to be present?                  05:42PM

Exhibit 16 , P. 35

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 288

1    Q.   You're not aware of any circumstance in

2  which that's happened?

3    A.   No -- correct, I'm not aware.

4         MR. PROCTOR:  Is now a good time for a

5  break?                                           05:48PM

6         MR. ETCHEVERRY:  We haven't been going very

7  long.  Do you need a break?  I certainly don't want

8  to deprive you of one.

9         THE WITNESS:  I could use a short one.

10        VIDEO OPERATOR:  Off the record 5:48.      05:48PM

11              (Brief recess.)

12        VIDEO OPERATOR:  We are back on the record.

13  The time is 5:58.

14  BY MR. ETCHEVERRY:

15    Q.   Ms. Tafoya, you testified during this last  05:58PM

16  segment, I believe, that your understanding of

17  Mattel policy is that the inventions agreement and

18  the Conflict of Interest Questionnaire are

19  themselves confidential documents.  Is that correct?

20    A.   Yes.                                       05:58PM

21    Q.   Is it also your understanding that the

22  substance of those documents is confidential as

23  well?

24        Yes.  I think of it as the form so, yes.

25    Q.   So, in other words, your understanding of   05:58PM

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 289

1   Mattel policy is that a departing employee would not

2   only be precluded from sharing with a third party

3   the actual documents which are the Confidential

4   Information and Inventions Agreement and Conflict of

5   Interest Questionnaire but also precluded from          05:58PM

6   sharing the substance of either of those documents;

7   is that correct?

8           MR. PROCTOR:  Misstates the testimony.

9           THE WITNESS:  I'm not really sure.  I

10  believe the form is confidential.  I'm not really     05:59PM

11  sure about the substance.  I believe it to be but

12  not really sure.

13          (Deposition Exhibit 2668 was marked

14      for identification and is bound separately.)

15  BY MR. ETCHEVERRY:                                     05:59PM

16      Q.   I would ask that the next exhibit be marked

17  which does not bear any Bates numbers.  It's a

18  string of E-mails dated April 28, 2006 and May 1st

19  of 2006.  Ms. Tafoya, do you recognize the document

20  that's been marked as Exhibit 2668?                    06:00PM

21      A.   Yes.

22      Q.   Tell me what it is.

23      A.   It's a string of E-mails between Mattel

24  management.

25      Q.   When is the last time you saw this document? 06:00PM

Exhibit 16, P. 27

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 290

1       A.   When I pulled it the other day.

2       Q.   Where did you pull it from?

3       A.   My E-mails.

4       Q.   At any time prior to the other day had you

5   searched your E-mails for any documents related to          06:00PM

6   any issues that could potentially be relevant in

7   this litigation?

8       A.   No.

9       Q.   Why did you have occasion to search your

10  E-mails several days ago?                                    06:00PM

11          MR. PROCTOR:  Asked and answered.

12          THE WITNESS:  I wanted to familiarize myself

13  with the -- with Dan Cooney's exit interview.

14  BY MR. ETCHEVERRY:

15      Q.   Is it your understanding that on your           06:01PM

16  computer system you have all E-mails going back to

17  the April or May 2006 time period?

18      A.   I have no idea.

19      Q.   How was it that you knew to look on your

20  computer system for these E-mails?                          06:01PM

21      A.   Well, again I wanted to refresh my memory of

22  Dan's exit interview process and I knew that I had

23  certain documents on my computer.

24      Q.   And how was it that you knew or had reason

25  to believe that you had these documents on your            06:01PM

Exhibit 16, P. 28

EXHIBIT 17

CEO
Mattel, Inc.
333 Continental Blvd.
El Segundo, CA 90245

*Alan K —
worth having
Richard explore ?*

*(PA)*

RECEIVED
AUG 05 2002
ROBERT A. ECKERT

Dear CEO:

I have information that I think Mattel should investigate. In 2000 a Mattel employee by the name of Carter Bryant was working with Mattel to design dolls. One of the dolls that he was working on creating was the Bratz dolls. MGA Entertainment found out about his creation and approached him to plan a way that he could sell the dolls to MGA and never tell Mattel. While he was working with Mattel and working to create these dolls he worked out a deal with MGA that let him collect a large sum of money each year from MGA in exchange for his secrecy about the dolls and the fact that they are rightly Mattel dolls. Carter left Mattel to live off of the money that MGA has been paying him since then. MGA tells everyone in the business that Bratz was created by MGA which is not true. MGA knew that Carter was an employee with Mattel and that it was wrong to pay him to steal this product from Mattel.

Cc: Toy Book
    Playthings

*Richard —
I would start
w/ Ivy to see
if this makes
any sense.*



EXHIBIT NO. 143
12/19/07 A
Wendy S. Schreiber

Exhibit 17 , P. 34

De Anda, Richard

To:                    Kaye, Alan
Subject:               MGA "Bratz"

Alan,

I've received your anonymous letter originally sent to Bob Eckert regarding Carter Bryant and "Bratz". I'm aware of this situation and have been working on it for several months. My frustration in this matter was the genesis of _____ and that is now in the hands of Robert Normile. The truth of the matter is that Carter Bryant did work for Mattel. however. _____

_____ according to outside attorneys.

**REDACTED**

McShane has been ____

~~We only found out during our last trip to Mexico that Mattel has a relationship with MGA.  We have MGA's product~~ in our Mexico warehouse.  Evidently, Mattel Latin America has an agreement with MGA to sell there product.  This is a good example that the right hand doesn't know what the left is doing.

Let me know if and how you would like me to respond to Mr. Bob.

Rich

EXHIBIT NO. 1194
12/19/07
Wendy S. Schreiber

CONFIDENTIAL - ATTORNEYS EYES ONLY

1

M 0074400

Exhibit 17 , P. 30

# EXHIBIT 18

R O U G H   D R A F T -  ATTORNEYS' EYES  ONLY

1   UNITED STATES DISTRICT COURT

2   CENTRAL DISTRICT OF CALIFORNIA

3    EASTERN DIVISION

4

5 MATTEL, INC., a Delaware  )
  Corporation,     )
6         )
    Plaintiff,   )
7         )
    vs.    ) No. CV 04-9059 NM
8        ) (RNBx)
  CARTER BRYANT, an individual; )
9 and DOES 1 through 10,  )  VOLUME I
  Inclusive,     )
10        )
    Defendants.  )
11 ----------------------------- )
  (COMPLETE CAPTION ON NEXT PAGE.)
12

13   CONFIDENTIAL - ATTORNEYS' EYES ONLY

14

15

16   Confidential Videotaped

17  Deposition of TIMOTHY J. KILPIN, taken

18  on behalf of Defendants, at 300 South

19  Grand Street, Los Angeles, California,

20  beginning at 9: A.M. and ending at

21  P.M., on Friday, January 25, 2008,

22  before Wendy S. Schreiber, CSR No. 3558,

23  RPR, CLR.

24

25 PAGES 1 -

        1

Exhibit __18__ , P. __31__

1

R O U G H   D R A F T -   ATTORNEYS' EYES ONLY

1       UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA

3       EASTERN DIVISION

4

5  MATTEL, INC., a Delaware    )
    Corporation,         )
6               )
      Plaintiff,     )
7              )
      vs.      ) No. CV 04-9059 NM
8            ) (RNBx)
   CARTER BRYANT, an individual; )
9  and DOES 1 through 10,    )
   Inclusive,       )
10            )
      Defendants.   )
11  ------------------------------ )
   CARTER BRYANT, on behalf of  )
12  himself, all present and   )
   former employees of Mattel,  )
13  Inc., and the general public, )
            )
14    Counter-Claimants, )
           )
15    vs.     )
           )
16  MATTEL, INC., a Delaware    )
   Corporation,       )
17         )
      Counter-Defendant. )

18

19

20

21

22

23

24

25

2

Exhibit 18 , P. 32

R O U G H   D R A F T -  ATTORNEYS' EYES ONLY

1    APPEARANCES:

2

3        For the Plaintiff:

4

5        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
         BY:  TIMOTHY L. ALGER, ESQ.
6          865 South Figueroa Street, Tenth Floor
         Los Angeles, California 90017
7          (213) 443-3000
         timalger@quinnemanuel.com
8
                 -and-
9
         MATTEL, INC.
10         BY:  MICHAEL MOORE, ESQ.
         333 Continental Boulevard
11         El Segundo, California 90245-5012
         (310) 252-2000
12         michael.moore@mattel.com

13

14      For the Defendant and Counterclaimant Carter
        Bryant:
15

16
         KEKER & VAN NEST LLP
17         710 Sansome Street
         San Francisco, California 94111-1704
18         (415) 391-5400
         (NOT PRESENT)
19

20

21

22

23

24

25

                          3

Exhibit 18 , P. 33

ROUGH DRAFT - ATTORNEYS' EYES ONLY

1    APPEARANCES (Continued):

2

3    For Defendant MGA Entertainment, Inc.:

4

5        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
         BY: THOMAS NOLAN, ESQ.
6            CLAUDE KESSELER, ESQ.
         300 South Grand Avenue
7        Los Angeles, California 90071-3144
         (213) 687-5000
8        tnolan@skadden.com

9

10

11
         Video Operator - David West
12

13

14

15

16

17

18

19

20

21

22

23

24

25

                              4

Exhibit 18 , P. 34

ROUGH DRAFT - ATTORNEYS' EYES ONLY

1    Q.  Did you see it within the last week?

2    A.  No.

3        (Deposition Exhibit 1807 was marked

4    for identification and is bound separately.)

5    BY MR. NOLAN:

6    Q.  Let's turn now to the next document I'll

7    mark as 1807, sir.  This has the Bates Nos. Of M

8    0079731 through 9758.  Take a moment if you want.

9    This is entitled the 2005 Barbie spring line review.

10   Do you see that?

11   A.  Yes.

12   Q.  Do you recognize this document?

13   A.  Yes.

14   Q.  It's dated April 15, 2004.  How is it that

15   you recognize this document?

16   A.  I recall being part of a meeting where we

17   reviewed this.

18   Q.  Now, in looking at the Barbie update -- I'm

19   sorry, the Barbie 2004 marketing plan as well as its

20   update, there was a figure of Barbie on the front of

21   both of them.  What is this -- what is this design

22   that's on the face of 2005 Barbie spring line

23   review?

24   A.  You mean the burning house?

25   Q.  Yes.

238

Exhibit  18 , P. 35

ROUGH DRAFT - ATTORNEYS' EYES ONLY

1    A.  It's a burning house.

2    Q.  That's the same burning house that you used

3  in the earlier presentation to say house on fire?

4    A.  Yes.

5    Q.  Just bigger?

6    A.  Yes.

7    Q.  Was it your decision to put a burning house

8  on the 2005 Barbie spring line review?

9    A.  No.

10   Q.  But in any event it was distributed to

11  people within -- within Mattel with the burning

12  house logo or artwork on the front sheet, correct?

13   A.  I can't speak to the specific distribution

14  of this.

15   Q.  Okay.  In any event, this is now April 15th,

16  2004.  We're progressing along.  And this is now a

17  few months after the update and you say sales at

18  retail are terrible, correct?

19   A.  Yes.

20   Q.  And then you go on to say market share has

21  dropped at a chilling rate, correct?

22   A.  Can I clarify something?

23   Q.  Please.

24   A.  I didn't write this.

25   Q.  Who did?

239

Exhibit 18 , P. 36

R O U G H   D R A F T -  ATTORNEYS' EYES ONLY

1    A.  I don't know.

2    Q.  Somebody within your department?

3    A.  Most likely.

4    Q.  Would a 2005 spring line review for

5    Barbie -- strike that.  But you remember -- you

6    remember seeing this at the time?

7    A.  Yes.

8    Q.  And you didn't ask anybody to recall this

9    marketing spring line review, did you?

10   A.  What do you mean recall?

11   Q.  Well, say, hey, you know take this back.

12   It's not accurate.

13   A.  No, I don't recall doing that.

14   Q.  Do you remember when you were reading it

15   whether or not you thought anything was inaccurate

16   about what it was saying here?

17   A.  I don't recall the contents.

18   Q.  Let's go through the contents.  First of all

19   the house -- sales at retail are terrible.  First of

20   all, the house is still on fire apparently, right?

21   A.  Yes.

22   Q.  Sales at retail are terrible.  Yes?

23   A.  That's what it says.

24   Q.  Market share has dropped at a chilling rate

25   and then -- correct?

240

Exhibit 18 , P. 37

ROUGH DRAFT - ATTORNEYS' EYES ONLY

1    A.   Yes.

2    Q.   And we're talking about the Barbie brand

3   here, right?

4    A.   Yes.

5    Q.   And rules are working but nothing else is,

6   correct?

7    A.   Yes.

8    Q.   Then you go Kelly Girl, Fairytopia ma'am and

9   My Scene POS up over '03.  Do you see that?

10    A.   Uh-huh.

11    Q.   But essential dolls are down 45 percent.  Do

12   you see that?

13    A.   Yes.

14    Q.   What are essential dolls?

15    A.   I'm actually not recalling what we were

16   using that term to specifically denote in the line.

17   I just -- I don't recall.

18    Q.   It says accessories down 39 percent, right?

19    A.   Yes.

20    Q.   Then you go to the next page -- now I'm on

21   production 0079733 -- and can you read for me what

22   it says there.

23    A.   The first bullet point?

24    Q.   Yes, please.

25    A.   Barbie is losing key attribute ratings with

241

Exhibit _18_ , P. _38_

ROUGH DRAFT- ATTORNEYS' EYES ONLY

1   girls.

2   Q.  What's underneath there?

3   A.  Cool, fun to play with, I want to be

4   her/aspiration, pretty, fashionable.

5   Q.  Now, put that into context for us.  Explain

6   to me what is being said here.

7   A.  I mentioned earlier that we track attributes

8   with girls on a regular basis.  These are some of

9   the attributes that we track.

10   Q.  So Barbie is scoring or losing rather --

11   losing ratings with girls on the definition of

12   whether or not it's cool, right?

13   A.  A better way to describe this is Barbies

14   attributes ratings were weakening on these measures.

15   Q.  So Barbie was weakening as to whether or not

16   it was cool.  Yes?

17   A.  Yes.

18   Q.  Fun to play with?  Yes?

19   A.  Yes.

20   Q.  I want to be her/aspiration, yes?

21   A.  Yes.

22   Q.  Pretty?

23   A.  Yes.

24   Q.  Fashionable?

25   A.  Yes.

242

Exhibit 18 , P. 39

ROUGH DRAFT - ATTORNEYS' EYES ONLY

1    Q.  Those are some pretty key attribute ratings

2   for a fashion doll, right?

3    A.  Yes.

4    Q.  So you would agree that wasn't -- this isn't

5   a good development?

6    A.  I would agree.

7    Q.  In fact, I think the way it was

8   characterized on the front page sales at retail are

9   terrible.  Do you think the sales at retail was

10  influenced by the lower or the weakening key

11  attribute rating?

12   A.  I couldn't recall specifically what was

13  happening on that.

14   Q.  But in your experience as generally some

15  correlation if you would between lost sales and

16  weakening attribute ratings with girls, correct?

17   A.  I wouldn't be able to speak to that as it

18  relates to this period of time.

19   Q.  Let me ask you just generally.  Generally

20  have you found when your attribute ratings are

21  higher on a product that your sales improve?

22   A.  Generally, yes.

23   Q.  Now, it also says Bratz is gaining share

24  with core five to eight year olds.

25   A.  What page are you on?

243

Exhibit 18 , P. 40

ROUGH DRAFT - ATTORNEYS' EYES ONLY

1    Q.  Same page.  That despite your aspirations of

2   taking market share away from Bratz that here you're

3   saying Bratz is gaining share with core five to

4   eight year olds.  Do you see that?

5    A.  Yes.

6    Q.  And you say since November Bratz penetration

7   has grown from a 66 to 80 percent with a five to six

8   years olds.  Do you see that?

9    A.  Yes.

10   Q.  And 80 to 84 percent with seven to eight

11  year olds.

12   A.  Yes.

13   Q.  Now, the next page says fight fire with

14  fire.  Do you see that?

15   A.  Yes.

16   Q.  Did you write this page?

17   A.  No.

18   Q.  Now, the date of this document is April

19  15th, 2004, correct?

20   A.  Yes.

21   Q.  Now, it says we must do some things

22  differently around here.  Correct?

23   A.  Yes.

24   Q.  Did you agree with that?

25   A.  I'm trying to remember what this was in

244

Exhibit 18 , P. 41

ROUGH DRAFT - ATTORNEYS' EYES ONLY

1   specifically about and who was in the meeting.

2      Q.  Did you agree in April of 2004, sir, that

3   things had to change -- we must do some things

4   differently around here?

5      A.  Yes.

6      Q.  And the next page says fight fire with fire.

7   Do you see that?

8      A.  Yes.

9      Q.  It says no other brand in history is as

10  emotionally meaningful to girls and women as Barbie.

11  Do you see that?

12     A.  Yes.

13     Q.  Did you agree with that?

14     A.  Yes.

15     Q.  In spite of this a rival-lead genocide

16  rapidly grows.  What was the rival-lead Barbie

17  genocide, sir, that you were referring to here?

18     A.  I didn't write it.

19        MR. ALGER:  Yeah.  Objection:

20  mischaracterizes his testimony.  He already

21  testified he didn't write it.

22  BY MR. NOLAN:

23     Q.  What was the Barbie genocide that's referred

24  to?

25     A.  I don't know.  I'm sorry.

245

Exhibit __18__ , P. __42__

ROUGH DRAFT- ATTORNEYS' EYES ONLY

1    MR. ALGER:  Let him finish his question

2  first.

3    THE WITNESS:  I'm sorry.

4    MR. ALGER:  And don't speculate.

5    THE WITNESS:  I'm sorry, can you do the

6  question request.

7  BY MR. NOLAN:

8    Q.  No.  I mean, this is a document, sir, that

9  you received as the Senior Vice President of Mattel.

10  And there's a reference here to a rival-lead Barbie

11  genocide and I was just curious as to whether or not

12  you picked up the phone and said to anybody hey what

13  do you mean by rival-lead Barbie genocide?

14    A.  No, I don't recall that.

15    Q.  Do you remember believing that there was a

16  Barbie genocide going on in April of 2004?

17    A.  I wouldn't have characterized it that way.

18    Q.  But someone in your department did?

19    A.  Yes.

20    Q.  Then it says all the talent, power and

21  history behind the Barbie brand should be focused to

22  fight back.  You agreed to that, right do you see

23  that?

24    A.  Yes.

25    Q.  Now read for me the next bullet point if you

246

Exhibit 18 , P. 43

ROUGH DRAFT- ATTORNEYS' EYES ONLY

1   would starting with product.

2      A.  Product packaging marketing and sales must

3   be launched that is brilliant, tactical, aggressive,

4   revolutionary and ruthless.

5      Q.  Did you agree with that?

6      A.  I wouldn't agree with all these terms but --

7      Q.  You wouldn't?

8      A.  No.

9      Q.  Tell me which ones you wouldn't agree with.

10     A.  I don't -- I don't understand the context of

11   revolutionary and ruthless here but.

12     Q.  Do you recall being at a meeting where this

13   document was presented, sir?

14     A.  Yes.  I said I did.

15     Q.  Do you remember anybody asking what is meant

16   by ruthless?

17     A.  I don't recall that.

18     Q.  And then can you read for me the next words

19   on this document?

20     A.  This is war and sides must be taken.

21     Q.  What did you mean by this is war and sides

22   must be taken?

23        MR. ALGER:  He already testified that he

24   didn't write it.

25   BY MR. NOLAN:

247

Exhibit 18 , P. 44

ROUGH DRAFT - ATTORNEYS' EYES ONLY

1    Q.  What did your department mean, sir, when it

2  says this is war and sides must be taken?

3        MR. ALGER:  Don't speculate.

4        THE WITNESS:  I don't know.

5  BY MR. NOLAN:

6    Q.  You didn't ask?

7    A.  I don't recall asking.

8    Q.  Who is war?  Who are you in war with?  I'm

9  sorry, that's poor.  Who were you at war with?

10  Bratz?

11    A.  No, I didn't view it that way.  I viewed it

12  that we were losing market share and we were losing

13  girls and we needed to do a better job on our

14  product line and our brand.

15    Q.  I'm sorry, were you finished.  You cut him

16  off, Mr. Nolan?

17        MR. NOLAN:  I didn't mean to.

18    A.  I'm finished.

19    Q.  Who were you losing market share to, sir?

20    A.  We were losing market share to a number of

21  competitors and a in a number of other ways for

22  girls to play.

23    Q.  Name any other competitor mentioned in this

24  spring line review other than Bratz.

25        MR. ALGER:  Take your time to review the

248

Exhibit 18 , P. 45

ROUGH DRAFT - ATTORNEYS' EYES ONLY

1   document.

2       THE WITNESS:  Okay.  I'm sorry, ask me the

3   question again.

4       Q.  Was there any other competitor mentioned in

5   this spring line other than Bratz?

6       A.  No.

7       Q.  So does that refresh your recollection that

8   the import of this document was that you were at war

9   with Bratz?

10      MR. ALGER:  Objection:  argumentative,

11  mischaracterizes testimony.

12  BY MR. NOLAN:

13      Q.  Do you have an answer?

14      A.  Ask me again, I'm sorry.

15      Q.  Sure.  Does this now reviewing this document

16  and realizing that there's no other competitor other

17  than Bratz mentioned here does that refresh your

18  recollection that the import of this document was

19  that or someone within your department had presented

20  a marketing plan saying that you were at wore with

21  Bratz?

22      A.  In my view the import of this document was

23  to ensure that everybody understood the urgency that

24  the brand was facing.

25      Q.  In competition with Bratz, correct?

249

Exhibit 18 , P. 46

ROUGH DRAFT- ATTORNEYS' EYES ONLY

1    A.  We mentioned Bratz.

2    Q.  You only mentioned Bratz, correct?

3    A.  That's correct.

4    Q.  Bratz was the most significant competitor

5  facing Barbie in 2004, correct?

6    A.  It was one of the most significant

7  competitors facing Barbie.

8    Q.  I mean, Barbie was -- Bratz was basically

9  having Barbie's lunch, right?

10      MR. ALGER:  Objection: argumentative.  You

11  don't have to answer that.

12  BY MR. NOLAN:

13    Q.  Your goal --

14      MR. ALGER:  How could he possibly answer

15  that question?

16      MR. NOLAN:  I'm rephrasing the question.

17    Q.  Your goal was to recapture market share from

18  Bratz when you took over as Senior Vice President,

19  correct?

20      MR. ALGER:  Objection: asked and answered

21  like four times now.

22      MR. NOLAN:  It's just a prelude to the next

23  one.

24    Q.  Yes?

25    A.  Yes.

250

Exhibit 18 , P. 47

ROUGH DRAFT- ATTORNEYS' EYES ONLY

1    Q.  And so by April of 2004 not only are you not

2    recapturing market share to Bratz -- from Bratz but

3    you're losing market share to Bratz, yes?

4    A.  Yes.

5    Q.  So go to 744 in this document for just a

6    moment.  This is the document that has the mission

7    is on the left-hand side and the plan is on the

8    right-hand side.  Do you see that?

9    A.  Yes.  Which page again?

10   Q.  Last three digits of the production is 744.

11   A.  Okay.

12   Q.  Do you see where the mission is?

13   A.  Yes.

14   Q.  Regain retailer confidence.  Do you see

15   that?

16   A.  Yes.

17   Q.  Now, it's true that at this time retail

18   confidence was low with respect to Barbie, correct?

19   A.  Yeah, I think I characterized for you

20   earlier that we had had retailers express concerns.

21   Q.  And then the plan to deal with that was

22   don't sell weak product, correct?

23   A.  Yes.

24   Q.  What do you mean by that?

25   A.  I don't know.  I don't recall -- I mean, I

251

Exhibit 18 , P. 48

R O U G H   D R A F T -   ATTORNEYS' EYES ONLY

1   don't recall even talking about this bullet point.

2      Q.  Do you recall when you read it that you

3   didn't have an understanding of what they were

4   getting at?

5      A.  I don't recall.

6      Q.  But, I mean, you're the Senior Vice

7   President of the Girls division.  You're in charge

8   of re energizing the Barbie line.  You're faced with

9   a document you've read in your capacity -- in that

10  capacity and it says don't sell a weak product.

11  What does that mean?

12     A.  It means what it says.  Don't sell a weak

13  product.

14     Q.  Had you been selling a weak product in your

15  view?

16     A.  Well, sales weren't responding.

17     Q.  So is the answer, yes, it was a weak

18  product?

19     A.  Some products were weak.

20     Q.  Was the Barbie line weak?

21     A.  No.

22     Q.  So what products were you talking about?

23     A.  Do you want to go back to one of these

24  documents?

25     Q.  Just tell me what product you were referring

252

Exhibit 18 , P. 49

# EXHIBIT 19

# 2005 Barbie
# Spring Line Review

## April 15, 2004

Exhibit 19 , P. 50

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079731



# The House is on Fire!

## Sales at retail are terrible

YTD POS down -17%

Shipping is down -21%

Retailer support is weak and has lost confidence

## Market share has dropped at a chilling rate

From 58.6% in Janaury to 50.3% in April

## Worlds are working but nothing else is

Cali Girl, Fairytopia , and My Scene POS up over '03

Essential dolls down -45%

Accessories down -39%

\* 4/10 Barbie Score Card

Exhibit 19 , P. 51

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079732



# The House is on Fire!

## Barbie is losing key attribute ratings with girls

Cool

Fun to play with

"I want to be her"/Aspiration

Pretty

Fashionable

## Bratz is gaining share with core 5-8 year olds

Since November, Bratz penetration has grown from

66% to 80% with 5-6 year olds

80 to 84% with 7-8 year olds

Exhibit 19 , P. 52

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079733



# Fight Fire With Fire!

## We MUST do some things differently around here!

Exhibit 19, P. 53

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079734

# Fight Fire With Fire!

No other brand in history is as emotionally meaningful to girls & women as Barbie.

In spite of this, a rival-led Barbie genocide rapidly grows. All the talent, power, and history behind the Barbie brand should be focused to fight back.

Product, packaging, marketing, and sales must be launched that is brilliant, tactical, aggressive, revolutionary, and ruthless.

This is war and sides must be taken:

_Barbie stands for good: All others stand for evil_

Exhibit 19, P. 54

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079735



Exhibit 19, P. 55

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079736



Exhibit 19 , P. 56

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079737



Exhibit 19, P. 57

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079738

# *Fight Fire With Fire!*



## The Mission

# Regain market share

# Regain relevance with girls

# Regain retailer confidence

Exhibit 19 , P. 58

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079739



# *Fight Fire With Fire!*

## The Mission

**Regain market share**

## The Plan

o **Launch new "wow" Worlds**

o **Create exciting, innovative packaging**

o **Reinvent key segments of Fashions, Accys, Kelly, and Essentials**

Exhibit 19, P. 59

CONFIDENTIAL - ATTORNEYS' EYES ONLY



# Barbie 2005 First Half
## News & Marketing Priorities

**Content Priorities**
1. Fairytopia
2. Music
3. My Scene

**Licensing Priorities**
1. Music World
2. Fairytopia
3. Cali Girl

**BIG NEWS!**
1. American Idol
2. Fairytopia Movie
3. Fashion 4

**PR Priorities**
1. Music
2. Fairytopia
3. Mother's Day

**Web Priorities**
1. Fashion 4
2. Fairytopia
3. Kelly

Exhibit 19 , P. 60

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079741

# *Fight Fire With Fire!*



## The Mission

Regain relevance with girls

## The Plan

- Leverage the hottest TV shows and celebrities

- Be on top of the latest fashion styles and trends

- Develop content that engages girls in the characters & stories

- Expand older girl Worlds

Exhibit 19, P. 61

CONFIDENTIAL - ATTORNEYS' EYES ONLY

# The Lost Generation

*If you're a girl 5-8 years old you have never seen a cool, aspirational Barbie <u>in your life</u>*



CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079743

# Fight Fire With Fire!



## The Mission

Regain retailer confidence

## The Plan

o Don't sell weak product

o Improve retailer margin mix to achieve 30% PMU across total Barbie

o Involve and engage our customers in the process

Exhibit 19 , P. 63

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079744

# Improving Barbie Retailer Margin
## Target Account Example

| | 2004 Plan | 2005 "As Is" | 2005 "Kelly Goes 100% DI" | 2005 "Kelly Goes DI, Forever Barbie DI & Trade" |
|---|---|---|---|---|
| Ingoing Margin | 24.9% | 29.7% | 32.9% | 33.2% |
| Discounts/ TPC's | -3.8% | -3.8% | -3.8% | -3.8% |
| PMU | 21.1% | 25.9% | 29.1% | 29.4% |

Ingoing Margin = (Cost vs. Full Suggested Retail)

PMU = (Cost vs. Actual Projected Retail)

Exhibit __19__ , P. __64__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079745

# 2005 Barbie Worlds

## Expansion Worlds

Cali Girl

My Scene

Wee 3 Friends

Kelly

Fairytopia

Forever Barbie

Princess

## New Worlds

Music

Fashion 4

Exhibit 19 , P. 65

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079746

# The "Misses" of Spring 2004 are the Opportunities of 2005

| 2004 MISSES | IN 2005? | WHERE? |
|---|---|---|
| Pets | ✓ | Forever Barbie |
| Horses | ✓ | Cali Girl |
| Fashions | ✓ | Fashion 4 |
| Kelly | ✓ | Kelly Relaunch |
| Key Driver Accessories | ✓ | Fairytopia<br>Music<br>Fashion 4 |

Exhibit 19 , P. 66

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079747



Exhibit 19 , P. 67

CONFIDENTIAL - ATTORNEYS' EYES ONLY



Exhibit 19 , P. 68

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079749



Exhibit 19, P. 69

CONFIDENTIAL - ATTORNEYS' EYES ONLY



# 2005 Barbie Worlds

**ASPIRATIONAL REALITY**

- Music
- Fashion 4
- Cali Girl
- ?

**FANTASY**

- ?
- ?
- ?
- ?
- ?

Exhibit 19, P. 70

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079751



Exhibit 19 , P. 71

CONFIDENTIAL - ATTORNEYS' EYES ONLY



Exhibit 19, P. 72

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079753



2005 Barbie Worlds

ASPIRATIONAL REALITY

Music

Fashion 4

Cali Girl

My Scene

FANTASY

?

?

Wee 3

Forever Barbie/Pets

?

Exhibit 19, P. 73

CONFIDENTIAL - ATTORNEYS' EYES ONLY



Exhibit 19, P. 74

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079755



Exhibit 19, P. 75

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079756



Exhibit 19 , P. 76

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079757

# '05 v. '04  Spring World Volume Comparison

| WORLD | Spring '05 % Volume | Spring '04 % Volume |
|---|---|---|
| Music | 8% | N/A |
| Cali Girl | 16% | 13% |
| Fashion 4 (Fashions) | 7% | 3% |
| My Scene | 21% | 16% |
| Starring Barbie (Barbie Now) | 3% | 3% |
| Wee 3 Friends | 5% | 2% |
| Forever Barbie/Pets (HF) | 13% | 33% |
| Kelly | 5% | 2% |
| Fairytopia | 19% | 10% |
| Princess (TRU only) | 3% | 18% |

Exhibit 19 , P. 77

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079758

EXHIBIT 20

# THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# EXHIBIT 21

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1                   UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3

4    MATTEL, INC., A DELAWARE            )
     CORPORATION,                        )
5                                        )
                    PLAINTIFF,           )
6                                        )
          VS.                            )     NO. CV 04-9059 NM(RNBX)
7                                        )
     CARTER BRYANT, AN INDIVIDUAL;       )
8    AND DOES 1 THROUGH 10,              )
     INCLUSIVE,                          )
9                                        )
                    DEFENDANTS.          )
10                                       )
                                         )
11   AND RELATED CROSS-ACTIONS.          )
     ──────────────────────────────────)

12

13              DEPOSITION OF CASSIDY PARK, VOLUME I,

14              TAKEN ON BEHALF OF THE DEFENDANT AND

15              COUNTER-CLAIMANT CARTER BRYANT, AND

16              DEFENDANT M.G.A. ENTERTAINMENT, INC., AT

17              2049 CENTURY PARK EAST, 5TH FLOOR,

18              LOS ANGELES, CALIFORNIA, COMMENCING AT

19              10:07 A.M. ON WEDNESDAY, MARCH 2, 2005,

20              BEFORE REAGAN EVANS, R.M.R., C.R.R.,

21              C.S.R. NO. 8176, A CERTIFIED SHORTHAND

22              REPORTER IN AND FOR THE COUNTY OF

23              LOS ANGELES, STATE OF CALIFORNIA.

24

25                   Exhibit 21 , P. 104

                                                              2
        CONFIDENTIAL TRANSCRIPT - ATTORNEY'S EYES ONLY - VOLUME I

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   <u>APPEARANCES</u>:

2   FOR THE PLAINTIFF AND COUNTER-DEFENDANT:

3         QUINN EMANUEL
          BY:  MICHAEL T. ZELLER
4             ATTORNEY AT LAW
          865 SOUTH FIGUEROA STREET
5         TENTH FLOOR
          LOS ANGELES, CALIFORNIA 90017
6         213.624.7707  FAX 213.624.0643

7             -AND-

8         MATTEL, INC.
          BY:  MICHAEL MOORE
9             SENIOR COUNSEL
          333 CONTINENTAL BOULEVARD
10        EL SEGUNDO, CALIFORNIA 90245.5012
          310.252.6733  FAX 310.252.4991

11
    FOR THE DEFENDANT AND COUNTER-CLAIMANT CARTER BRYANT:
12
          LITTLER MENDELSON, P.C.
13        BY:  KEITH JACOBY
              ATTORNEY AT LAW
14                -AND-
          DOUGLAS A. WICKHAM
15        ATTORNEY AT LAW
          2049 CENTURY PARK EAST
16        FIFTH FLOOR
          LOS ANGELES, CALIFORNIA 90067.3107
17        310.553.0308  FAX 310.553.5583

18  FOR THE DEFENDANT M.G.A. ENTERTAINMENT, INC.:

19        O'MELVENY & MYERS, L.L.P.
          BY:  DIANA M. TORRES
20            ATTORNEY AT LAW
          400 SOUTH HOPE STREET
21        FIFTEENTH FLOOR
          LOS ANGELES, CALIFORNIA 90071.2899
22        213.430.6000  FAX 213.430.6407

23  ALSO PRESENT:

24        CARTER BRYANT

25        CRAIG SCHUMACHER, VIDEOGRAPHER

Exhibit 21, P. 105

3

CONFIDENTIAL TRANSCRIPT - ATTORNEY'S EYES ONLY - VOLUME I

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1                              I N D E X

2    EXAMINATION BY:                                    PAGE

3              MS.  TORRES                                 7

4              MS.  TORRES                                98

5              MR.  JACOBY                               238

6              MS.  TORRES                               317

7

8

9                          E X H I B I T S

10   NUMBER                                             PAGE

11   250      HANDWRITTEN DOCUMENTS DATED 9/15/95        124
              AND 9/27/95, BATES NOS. M0012700 AND
12            M0012702, 2 PAGES

13   251      DRAWINGS AND PHOTOGRAPHS, BATES            128
              NOS. M0012566 THROUGH M0012586, 21 PAGES
14
     252      HANDWRITTEN DRAWING, 1 PAGE
15                                                       189

16                       A T T A C H M E N T S

17   NUMBER                                             PAGE

18   11       ARTICLE FROM "THE WALL STREET             168
              JOURNAL," DATED 7/18/03, BATES
19            NOS. M0012536 THROUGH M0012539

20   23       EMPLOYEE CONFIDENTIAL INFORMATION AND     249
              INVENTIONS AGREEMENT, BATES
21            NOS. M0001638 AND M0001639

22   40       MEMO TO C.E.O., MATTEL, INC., BATES       105
              NO. M0013841
23
     41       ORG CHART, BATES NO. M0012588             216
24
     42       MEDIA STATEMENT DATED 4/27/04              34
25

Exhibit 21 , P. 106

4

CONFIDENTIAL TRANSCRIPT - ATTORNEY'S EYES ONLY - VOLUME I

LUDWIG KLEIN REPORTERS & VIDEO, INC.    800.540.0681

1              THE REPORTER:  I'M SORRY.  THE LAST NAME?        10:38:02

2              THE WITNESS:  KILPIN, K-I-L-P-I-N.              10:38:04

3              THE REPORTER:  THANK YOU.                        10:38:08

4   BY MS. TORRES:                                             10:38:10

5        Q    WHAT IS MR. KILPIN'S TITLE?                      10:38:10

6        A    SENIOR VICE PRESIDENT OF MARKETING AND           10:38:12

7   DESIGN.                                                    10:38:14

8        Q    WHO DOES MR. KILPIN REPORT TO?                   10:38:16

9        A    MATT BOUSQUETTE.                                 10:38:18

10       Q    AND MR. BOUSQUETTE'S TITLE IS?                   10:38:21

11       A    PRESIDENT OF MATTEL BRANDS.                      10:38:24

12       Q    DO YOU RECALL ATTENDING ANY MEETING WITH         10:38:41

13  MR. KILPIN IN WHICH THIS LAWSUIT WAS DISCUSSED?            10:38:43

14       A    NOT -- NO.                                       10:38:49

15       Q    NO?                                              10:38:54

16       A    NO.                                              10:38:55

17       Q    DO YOU REMEMBER WHEN YOU FIRST HEARD ABOUT       10:38:56

18  THIS LAWSUIT?                                              10:38:58

19       A    YES.                                             10:38:59

20       Q    WHO DID YOU HEAR IT FROM?                        10:39:00

21       A    I DID HEAR IT FROM TIM.                          10:39:01

22       Q    WAS IT A -- I TAKE IT, THEN, IT WAS NOT IN A     10:39:07

23  MEETING?                                                   10:39:11

24       A    IT WAS A MEETING, BUT WE DID NOT DISCUSS THE     10:39:11

25  LAWSUIT.                                                   10:39:15

Exhibit 21 , P. 107

CONFIDENTIAL TRANSCRIPT - ATTORNEY'S EYES ONLY - VOLUME I

LUDWIG KLEIN REPORTERS & VIDEO, INC.    800.540.0681

1       Q    OKAY.  HOW DID YOU FIND OUT ABOUT THE        10:39:15

2  LAWSUIT IF YOU DIDN'T DISCUSS IT?                      10:39:17

3       A    HE READ A PRESS RELEASE TO MYSELF AND HIS    10:39:18

4  DIRECT REPORTS.                                        10:39:22

5       Q    SO DID HE SAY ANYTHING OTHER THAN WHAT HE    10:39:23

6  READ FROM THE PRESS RELEASE?                           10:39:26

7       A    NO.                                          10:39:28

8       Q    NO?                                          10:39:28

9       A    WELL, YES, HE DID.                           10:39:29

10      Q    WHAT DID HE SAY?                             10:39:30

11      A    IF YOU HAVE ANY QUESTIONS, CONTACT LEGAL     10:39:31

12  DEPARTMENT.                                           10:39:34

13      Q    OKAY.  DID ANYBODY ASK HIM ANY QUESTIONS?    10:39:35

14      A    I DON'T RECALL.                              10:39:38

15      Q    DO YOU RECALL WHO WAS THERE?                 10:39:41

16      A    I DO.                                        10:39:42

17      Q    WHO?                                         10:39:43

18      A    MYSELF, EVELYN VIOHL.  I BELIEVE MY DIRECT   10:39:43

19  REPORTS WERE THERE AS WELL.                           10:39:59

20      Q    THE SEVEN --                                 10:40:02

21      A    I BELIEVE SO, YEAH.  I DON'T REMEMBER        10:40:03

22  EXACTLY IF THEY WERE ALL IN ATTENDANCE, BUT THE       10:40:05

23  MAJORITY OF THEM WOULD HAVE BEEN.                      10:40:07

24      Q    WHO WERE YOUR DIRECT REPORTS?                10:40:09

25      A    WHO ARE THEY?                                10:40:10

Exhibit 21 , P. 108

31

CONFIDENTIAL TRANSCRIPT - ATTORNEY'S EYES ONLY - VOLUME I

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

| | | | |
|---|---|---|---|
| 1 | Q | YES. | 10:40:12 |
| 2 | A | LAURA MURCEK, CATHERINE DEMAS, ANN DRISKALL, | 10:40:12 |
| 3 | | ANGIE NORTHROP, LARRY CLAYTON, GREGORIA HILL, | 10:40:25 |
| 4 | | CHRISTINE MOSS. | 10:40:38 |
| 5 | Q | I THINK THAT'S EIGHT. | 10:40:55 |
| 6 | A | I ADDED MY ASSISTANT IN THERE. | 10:40:57 |
| 7 | Q | OH, OKAY. | 10:41:00 |
| 8 | A | I DIDN'T ADD HER IN THE FIRST TIME. | 10:41:01 |
| 9 | Q | WHO IS YOUR ASSISTANT? | 10:41:02 |
| 10 | A | CHRISTINE MOSS. | 10:41:04 |
| 11 | Q | OKAY.  AND WERE THESE PEOPLE ALL YOUR DIRECT | 10:41:05 |
| 12 | | REPORTS IN APRIL OF 2004? | 10:41:07 |
| 13 | A | YES. | 10:41:09 |
| 14 | Q | DO YOU HAVE ANY ADDITIONAL DIRECT REPORTS | 10:41:10 |
| 15 | | NOW? | 10:41:16 |
| 16 | A | NO.  NO. | 10:41:17 |
| 17 | Q | HOW LONG DID THAT MEETING LAST? | 10:41:25 |
| 18 | A | TEN, FIFTEEN MINUTES. | 10:41:27 |
| 19 | Q | DID YOU TALK TO ANYONE IMMEDIATELY AFTER | 10:41:50 |
| 20 | | THE -- THE MEETING?  DID YOU TALK TO ANY OF YOUR | 10:41:53 |
| 21 | | DIRECT REPORTS? | 10:41:56 |
| 22 | | MR. ZELLER:  DO YOU MEAN ABOUT THIS OR -- OR | 10:42:00 |
| 23 | | ANYTHING? | 10:42:02 |
| 24 | | MS. TORRES:  ABOUT ANYTHING RIGHT NOW. | 10:42:02 |
| 25 | | THE WITNESS:  I'M SORRY.  WHAT? | 10:42:04 |

Exhibit 21, P. 109

32

EXHIBIT 22

**quinnemanuel** triallawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3917

WRITER'S INTERNET ADDRESS
heidifrahm@quinnemanuel.com

January 27, 2008

Thomas J. Nolan, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
VIA EMAIL AND MESSENGER

Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
VIA EMAIL AND FEDERAL EXPRESS

Mark E. Overland, Esq.
Overland Borenstein Scheper & Kim
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071
VIA EMAIL AND U.S. MAIL

Re:   Bryant v. Mattel CV 04-9049

Dear Counsel:

Enclosed please find Mattel document production bearing Bates numbers M 0897079 through M 0897111.

Should you have any questions regarding the enclosed, please do not hesitate to call.

Very truly yours,

*Heidi Frahm*

Heidi Frahm

Enclosures

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

07975/2369018.1

Exhibit 22, P. 110

EXHIBIT 23

# quinnemanuel  triallawyers | losangeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3917

WRITER'S INTERNET ADDRESS
heidifrahm@quinnemanuel.com

January 25, 2008

Thomas J. Nolan, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
VIA MESSENGER

Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
VIA FEDERAL EXPRESS

Mark E. Overland, Esq.
Overland Borenstein Scheper & Kim
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071
VIA U.S. MAIL

Re:    Bryant v. Mattel CV 04-9049

Dear Counsel:

Enclosed please find two CDs with image and load files of Mattel document production bearing Bates numbers M 0896872 - M 0897068.

Should you have any questions regarding the enclosed, please do not hesitate to call.

Very truly yours,

*Heidi Frahm*

Heidi Frahm

Enclosures

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

07209/2368265.1

Exhibit 23, P. 111

EXHIBIT 24

**From:** Heidi Frahm [mailto:heidifrahm@quinnemanuel.com]
**Sent:** Friday, January 25, 2008 8:07 PM
**To:** John Quinn; Michael T Zeller; Jon Corey; Duane Lyons; Timothy Alger; Dominic Surprenant; Dylan Proctor; Shane McKenzie; Bridget Hauler; Tamar Buchakjian; Juan Pablo Alban; jkeker@KVN.com; mhp@kvn.com; cma@kvn.com; jtrinidad@kvn.com; Nolan, Thomas J (LAC); Kennedy, Raoul D (SFC); Park, Amy S (PAL); Posner, Harriet S (LAC); Roth, Carl A (LAC); cholden@mgae.com; Miller, Timothy A (SFC); mwerdegar@kvn.com; awalton-hadlock@kvn.com; agoldberg@sgattys.com; acote@obsklaw.com; moverland@obsklaw.com; bdelgadi@kayescholer.com; pglaser@chrisglase.com; sgizer@chrisglase.com; amorgenthaler@chrismill.com; Mumford, Marcus R (LAC)
**Subject:** Document Production

Dear counsel:

It has come to my attention that a document production made by Mattel today was inadvertently missing four pages. These pages are now attached. They have bates numbers 0897069 to 0897071 and 0897073.

Please let me know if you have any questions. Thank you.

Heidi Frahm
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3917
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: heidifrahm@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

Exhibit 24, P. 112

2/5/2008

# EXHIBIT 25

**quinnemanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3917**

WRITER'S INTERNET ADDRESS
**heidifrahm@quinnemanuel.com**

January 26, 2008

Thomas J. Nolan, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
**VIA EMAIL AND MESSENGER**

Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
**VIA EMAIL AND FEDERAL EXPRESS**

Mark E. Overland, Esq.
Overland Borenstein Scheper & Kim
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071
**VIA EMAIL AND U.S. MAIL**

Re:   <u>Bryant v. Mattel CV 04-9049</u>

Dear Counsel:

Enclosed please find Mattel document production bearing Bates numbers M 0897074 through M 0897088.

Should you have any questions regarding the enclosed, please do not hesitate to call.

Very truly yours,

*Heidi Frahm*

Heidi Frahm

Enclosures

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

07975/2368593.1

Exhibit 25 , P. 113

EXHIBIT 26

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

———

TEL: (213) 687-5000

FAX: (213) 687-5600

www.skadden.com

DIRECT DIAL
213.687.5368
DIRECT FAX
213.621.5368
EMAIL ADDRESS
RHERRING@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

December 24, 2007

**VIA FACSIMILE & U.S. MAIL**

Jon Corey
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

B. Dylan Proctor
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

RE:    <u>Mattel v. Carter Bryant</u>

Dear Jon and Dylan:

In accordance with the June 20, 2006 stipulation on record before Magistrate Judge Block, MGA requests that the *original* Mattel documents on the attached list, as identified by bates number and date, be produced for inspection, photographing, and scanning. We would like to start inspecting the documents on the attached list within 15 days, beginning with bates number 0135577-0135598 through the document bates numbered 0256112, as well as the range of documents beginning with bates number 0147411-0147412 through 0256212-0256214. We would like to inspect the remaining documents 15 days thereafter.

Please inform us of the location and time at which you prefer the inspection and photographing to take place.

To the extent Mattel is unwilling to produce these original documents within 15 days, please also consider this letter a request to meet and confer under paragraph 5 of the Discovery Master Stipulation, in advance of a motion to compel.

Exhibit 26 , P. 114

Jon Corey
B. Dylan Proctor
December 24, 2007

Please feel free to contact me if you have any comments or questions.

Kind Regards,

Robert J. Herrington

Enclosure

cc:    Amy S. Park (w/o enclosure)
       Thomas E. Haroldson (w/o enclosure)

Exhibit __26__, P. __115__

EXHIBIT 27

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144
—
TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

FIRM/AFFILIATE OFFICES
—
BOSTON
CHICAGO
HOUSTON
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 17, 2008

**VIA FACSIMILE & U.S. MAIL**

Christopher T. Grohman
Quinn Emanuel, etc.
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

RE:    Mattel v. Carter Bryant

Dear Mr. Grohman:

Thank you for overseeing our scanning of documents related to *Mattel v. Carter Bryant* yesterday at Quinn Emanuel's Los Angeles office.

I have spoken to Chris Ledford, who informed me that when he arrived, in response to his question whether the documents you presented were all of the documents we requested to be produced in our December 24, 2007 letter, you stated that you did not know. He asked whether you knew how many documents were in the box you presented. You stated that you did not know. When he stated that it appeared that all of the documents were not there, you stated that your firm's legal assistants were trying to identify the documents in an ongoing fashion. You also stated that you did not know when all of the documents would be available for inspection and scanning.

Our document collector proceeded to scan the documents available. When he was finished, he informed Chris that there were 144 documents. Chris told you that it was problematic that we requested that you make several thousand documents available to us and were given only 144. You stated that he should take up any issues with Ms. Hutnyan, though you were unable to locate her during his visit. You also declined his suggestion that you find out the answers to his questions from another senior attorney.

Exhibit 27 , P. 116

Christopher T. Grohman
January 17, 2008
Page 2

        In response to Chris's repeated question of when the remainder of the documents would be ready for inspection and scanning, you stated that you did not know.

        Please let us know when Mattel will be making additional documents available.  MGA reserves all rights on these issues.

                                Sincerely,

                                Robert J. Herrington

cc:     Diane C. Hutnyan

Exhibit 27, P. 117

# EXHIBIT 28

NHB Timeline

## Eckert, Robert A.

**From:** Eckert, Robert A.

**Sent:** Wednesday, April 28, 2004 8:20

**To:** Eckert, Robert A.

Mattel Files Breach of Contract Suit

By QUEENA SOOK KIM
Staff Reporter of THE WALL STREET JOURNAL
April 27, 2004 10:37 p.m.

Mattel Inc., the maker of Barbie, has filed a breach of contract lawsuit against a toy designer and former employee who is credited with creating the Bratz fashion doll for Mattel rival MGA Entertainment.

The upstart Bratz fashion dolls have been a fierce competitor of Barbie since their introduction in 2001. The Mattel lawsuit, however, doesn't make mention of the Bratz doll and doesn't list MGA Entertainment as a defendant in the lawsuit.

The lawsuit, filed in Los Angeles County Superior Court, alleges that doll designer Carter Bryant, who was a member of the company's Barbie design team from 1999 to 2000, "secretly aided, assisted and worked for a Mattel competitor during his employment with Mattel." Such actions breached his employment contract, fiduciary duty to Mattel and his duty of loyalty, which is mandated by California state law, the lawsuit states.

Mr. Bryant couldn't be reached for comment. Mattel had no comment.

In the lawsuit, Mattel states that it was entitled to "exclusive ownership of [Mr. Bryant's] inventions as a Mattel product designer" and that all such services he provided the competitor "were the property of Mattel."

Mattel didn't specify the amount of money it is seeking in damages. The lawsuit states that "Mattel has suffered and will in the future continue to suffer damages" from Mr. Bryant's actions. It asked the court to Mr. Bryant "to disgorge... all payments, revenue, profits, monies royalties and any other benefits" derived from his conduct.

The lawsuit comes at a time when Barbie sales have been declining, in large part because of competition from the racier Bratz doll. The Bratz were introduced in 2001 by MGA Entertainment, which is based in North Hills, Ca. The closely-held company has said it posted revenues of $1.3 billion last year. Much of that revenue was fueled by the Bratz.

Isaac Larian, chief executive of MGA, has previously said that Mr. Bryant entered the Bratz doll in a sort of fashion-doll design contest it held in 1999. But inside Mattel, others believe that the Bratz borrow liberally from a Mattel project that was nixed at the testing stage in 1998. Isaac Larian, chief executive of MGA, has previously said he never heard of a project similar to the Bratz at Mattel. Mr. Larian couldn't be reached for comment.

Write to Queena Sook Kim at queena.kim@wsj.com

CONFIDENTIAL

M 0257834

Exhibit 28, P. 118

# EXHIBIT 29

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144
———
TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
(213) 687-5514
DIRECT FAX
(213) 621-5514
EMAIL ADDRESS
MMUMFORD@SKADDEN.COM

February 4, 2008

**VIA FACSIMILE**

Timothy L. Alger, Esq.
Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543

RE:   *Mattel, Inc. v. Bryant*

Dear Timothy:

This letter summarizes our meet and confer last Thursday concerning the "NHB" issues raised in our recent motion to compel: 1) documents M0199767-68 and M0199769-70, which you recently clawed back based on an assertion of attorney-client privilege and work product and 2) the production of all "NHB" documents.

As I stated, Mattel bears the burden of establishing the existence of the attorney-client privilege or work product immunity with respects to these documents. *See Clarke v. American Commerce Nat'l. Bank*, 974 F.2d 127, 129 (9th Cir. 1992); *Green v. Baca*, 226 F.R.D. 624, 652 (C.D. Cal. 2005).

**Documents M0199767-68 and M0199769-70**

You explained that document M0199767-68, the Mercedeh Ward summary, was prepared by a paralegal in the Mattel legal department, who works under the supervision of Michal Moore, Mattel's in-house counsel. You indicated that the document was created on August 22, 2003, last modified on September 4, 2003, contained information from outside counsel and Mattel employees, and that it was "prepared in anticipation of litigation."

With respects to document M0199769-70, which was titled "NHB – To Do," you stated that Michael Moore prepared the document on August 10, 2003 – the date on the document – and that it reflected his "thought processes," and information

Exhibit ~~28~~ , P. 119

Timothy L. Alger, Esq.
February 4, 2008
Page 2

obtained from Mattel employees and outside counsel. You were not sure whether this document had been updated since its creation.

With respect to these documents, you informed me that Mattel would be placing them on its privilege log but would not be producing them in redacted form since, according to you, there is nothing to produce after the privileged information is redacted. When I asked how work product is applicable in light of Mattel's assertions in its counterclaims and in opposition to MGA and Bryant's joint motion for terminating sanctions, you stated that the documents were prepared in anticipation of the Tune Teens litigation. When I asked what about the documents reflects communications for the purpose of obtaining legal advice, you refused to parse the documents line by line.

As I stated, in light of our meet and confer, it would be inappropriate to withdraw MGA's and Bryant's joint motion to compel. Mattel confirmed that the documents were prepared prior to November 24, 2003. It is therefore improperly asserting work product notwithstanding its counterclaims filed in July 2007 stating that it "had no reason to suspect that Bryant had worked with MGA, or assisted MGA, while he still [sic] employed by Mattel," prior to that date, and notwithstanding its opposition to the motion for terminating sanctions taking a similar position. We no longer have the documents, but we do not recall anything about them that would suggest they were prepared in anticipation of another litigation. Indeed, they appeared to have been prepared in anticipation of this litigation: they referred to MGA by codename, summarized certain alleged facts concerning the creation of Bratz, and there was no mention of any limits with respect to the breadth of its investigation. Moreover, according to the testimony of Richard De Anda, we understand that Mattel had concluded as of late 2002 or early 2003, well before the dates of these documents, that Bratz did not violate a Tune Teens copyright. (*See* De Anda Tr. at 223:14-17.)

## The "NHB" Documents

You confirmed that "NHB" is a codename for MGA, used by Mattel since 2002 or 2003. You stated that it was used primarily in Mattel's legal department but acknowledged there could have been "reflexive use" of the codename beyond that department.

You stated that Mattel has not purposely withheld any documents responsive to MGA's document requests for MGA-related material based on a distinction between "NHB" and MGA. But you could not answer whether "NHB" documents may have been inadvertently deemed non-responsive in Mattel's document production on account of Mattel's use of the codename.

You indicated that you did not see anything further to the matter because Mattel has previously informed MGA that it is not placing any documents on the

Exhibit 9 , P. 120

Timothy L. Alger, Esq.
February 4, 2008
Page 3


privilege log that post-date November 2003.  I indicated that I was not aware of any such agreement.  If you have any further information concerning it, please advise.  And your position did not address the status of "NHB" documents that pre-date November 2003.  You stated that Mattel's privilege log would not necessarily indicate if an entry referred to a "NHB" document.

    With respect to the production of these "NHB" documents, we reaffirm our position that any "NHB" document is relevant and responsive to MGA's requests for MGA-related documents in Mattel's possession.  And, in light of the issues raised above, we request an *in camera* inspection of all "NHB" documents.

- To the extent Mattel asserts attorney-client with respect to "NHB" documents, it should be required to establish the document reflects communications between Mattel and its counsel for purposes of obtaining legal advice.

- To the extent Mattel asserts work product with respect to an "NHB" document and the document pre-dates November 2003, we request an explanation concerning what litigation it was prepared in anticipation of and how that position can be reconciled (a) with paragraphs 35-36 of its counterclaims filed July 2007 and (b) with its opposition to the joint motion for terminating sanctions stating that "Mattel first learned of a probable claim in late 2003, at the earliest ... when it obtained a copy of the MGA/Bryant agreement.  Before that, no claims were probable, and the investigated claims were never brought."

- To the extent "NHB" documents are not on the privilege log, Mattel has waived privilege and should be compelled to produce them.

    Please let me know if I can be of any further assistance in this matter.

                            Sincerely,

                            Marcus R. Mumford


cc: Michael H. Page, Esq.
     Mark E. Overland, Esq.


Exhibit 29, P. 121

EXHIBIT 30

1 QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
    John B. Quinn (Bar No. 090378)
2   johnquinn@quinnemanuel.com
    Michael T. Zeller (Bar No. 196417)
3   (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
    Timothy L. Alger (Bar No. 160303)
5   (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
7   Facsimile: (213) 443-3100

8 Attorneys for Plaintiff Mattel, Inc.

9

10                UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                       EASTERN DIVISION

13 CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

14              Plaintiff,                 Consolidated with Case Nos. CV 04-
                                           09059 and CV 05-02727
15      vs.
                                           MEMORANDUM OF POINTS AND
16 MATTEL, INC., a Delaware corporation,  AUTHORITIES OF MATTEL, INC. IN
                                           OPPOSITION TO MOTION OF MGA
17              Defendant.                 ENTERTAINMENT, INC. AND
                                           CARTER BRYANT FOR
18 _____      TERMINATING SANCTIONS

   AND CONSOLIDATED ACTIONS              [Declarations of Fred T. Kawashima,
19                                        Michael Moore, Richard De Anda, Jon
                                          D. Corey, Timothy L. Alger, Michael T.
20                                        Zeller and B. Dylan Proctor, filed
                                          concurrently]
21
                                          [Notice of Lodging lodged concurrently]
22
                                          Date:  August 27, 2007
23                                        Time:  10:00 a.m.
                                          Place: Courtroom 1
24
                                          Discovery Cut-off: January 14, 2008
25                                        Pre-trial Conference: April 7, 2008
                                          Trial Date: April 29, 2008
26

27

28
   Exhibit 30 , P. 122

   07209/2191979.7
                                          Case No. CV 04-9049 SGL (RNBx)
   MATTEL INC.'S OPPOSITION TO MOTION FOR TERMINATING SANCTIONS

## Preliminary Statement

From the beginning, defendants' strategy in this case was to conceal the true facts, including by obstructing discovery.   Mattel has now obtained numerous Orders compelling discovery from them, and the evidence mounts with each. Evidence that Mattel has recently obtained powerfully shows that, on the merits, Mattel will prevail -- Bryant was disloyal and worked with MGA on Bratz while he was employed and paid by Mattel.   This motion is a desperate attempt to avoid confronting that evidence with a get-out-of-jail-free card.

Indeed, defendants have already made many of the arguments they make here in opposing Mattel's Motion for Leave to Amend, and the Court rejected them.   To justify their improper request for reconsideration, they accuse Mattel of "defrauding" the Court when Mattel said it had Zeus backup tapes for 1999 and 2000.   Mattel has the tapes and long ago offered to produce them.   They are still available whenever MGA and Bryant want them.   Defendants also argue that emails have been lost since Bryant left Mattel, but they gloss over that Bryant left Mattel *in 2000*.   Not even defendants contend Mattel had an obligation to preserve evidence before 2002.   Emails relating to Bryant's work at Mattel were automatically deleted from the live servers, and the backup tapes reused, more than a year and a half before the date on which even defendants contend Mattel had to start keeping them.

The fact is that Mattel did not have any duty to preserve until late 2003. MGA and Bryant argue the duty was triggered in 2002 because of a Mattel security investigation, but that investigation concerned potential claims that are *not* at issue here.   It did not relate to Bryant's creation of Bratz while he was a Mattel employee or his work for MGA while he was a Mattel employee.   An obligation to preserve occurs when a claim is "probable."   No claim was probable until late 2003, when Mattel first learned that Bryant worked for MGA while still employed by Mattel.

Exhibit _30_, P. _123_

third parties harmed MGA.[24]   Mattel did not have prior notice that these claims were probable, and MGA does not argue otherwise.   Three days after service of the complaint -- on April 16, 2005 -- MGA sent Mattel a document preservation letter.[25] Two days later, Mattel instructed all Mattel employees to preserve evidence relevant to MGA's newly asserted claims.[26]

Mattel responded to MGA shortly thereafter, advising by letter that it would preserve several broad categories of documents which tracked MGA's allegations, including the "My Scene," "Acceleracers," "Wee 3 Friends" and other product lines, communications with MGA and other categories of documents.[27]   Mattel then explained that its e-mail retention period is 90 days, that the allegations in MGA's complaint related to past conduct and that preserving the millions of future, irrelevant e-mails that traverse Mattel's servers each month would cost hundreds of thousands of dollars a year.   *Mattel told MGA, inviting a response, that it did not plan to suspend its 90 day retention policy.*[28]   MGA never responded.[29]

Instead, MGA chose to remain silent, wait two years and then move for sanctions based on Mattel's disclosed preservation practices, now arguing that Mattel should have suspended its 90-day retention policy.[30]   Within three days of MGA's preservation letter, Mattel took steps to ensure that e-mails *were* preserved. Every day Mattel does a backup of e-mails on its exchange servers.[31]   On April 19, 2005, five days after MGA filed suit, Mattel stopped recycling backup tapes of the e-mails on its El Segundo exchange servers.[32]   Mattel has preserved about 4200

---

[24]   MGA's Complaint filed on April 13, 2005 at 2, Proctor Dec., Exh. 16.
[25]   MGA Letter to Mattel dated April 16, Proctor Dec., Exh. 17.
[26]   Kawashima Tr. (Vol. 2) at 366:1-14. Proctor Dec., Exh. 15.
[27]   Mattel Letter to MGA dated May 3, 2005, Proctor Dec., Exh. 18.
[28]   Id.
[29]   Mattel Letter to MGA dated June 11, 2007, Proctor Dec., Exh. 19.
[30]   Mot., §II(A) at 3-4.
[31]   Kawashima Tr. (Vol. 2) at 475:20-476:4, Proctor Dec., Exh. 15.
[32]   Id. at 300:4-21, MGA admits Mattel implemented this process. Mot. at 4:4-6.

1    tapes.[33]  This process has cost Mattel $500,000 to date for tapes alone.[34]  The Court

2    previously ruled that the existence of e-mail backups defeats any spoliation claim.[35]

3        Mattel's 90-day retention policy ensures effective and stable server

4    performance, *i.e.*, delivery of e-mail.[36]  The accumulation of e-mails on Mattel's live

5    servers that MGA now demands would crash these servers.[37]  Mattel's retention

6    period policy and rotation of backup tapes is typical of the policies of other

7    reputable companies such as, for example, Microsoft, TRW, DreamWorks and

8    TCW.[38]  While MGA suggests that Mattel should have suspended the auto-delete

9    policy for individual mailboxes, that is not currently possible, and the only possible

10   workaround would require dramatic configuration changes to the servers.[39]  Given

11   Mattel's preservation of *complete* backup tapes, such dramatic changes were not

12   called for.  That MGA did not respond when Mattel advised it was not discontinuing

13   its preexisting policy for its live servers is telling.[40]

14       MGA asserts that Mattel did not preserve evidence relevant to the "early"

15   development of Mattel's "My Scene" line, but Mattel preserved "My Scene"

16   evidence as soon as MGA filed its lawsuit making claims regarding "My Scene."[41]

17   Mattel's claims against Bryant in April 2004 were unrelated to the "My Scene" dolls,

18   and there was no reason to preserve such evidence at that time.  In any case,

---

20   [33] Id. at 475:13-19.  See also Alger Dec., ¶¶ 3-5 (Mattel has collected, reviewed and produced hundreds of thousands of pages of pages of documents, including electronic files).

21   [34] Declaration of Fred T. Kawashima Dec. ¶ 3.

22   [35] Order re FAC at 13:2-5, Proctor Dec., Exh. 7 ("Noticeably absent from MGA's [spoliation] argument is any evidence that the e-mails so deleted from a Mattel employee's inbox are forever lost or, as is far more likely, whether such information remains or is otherwise archived on some backup file . . .").

24   [36] Kawashima Tr. (Vol. 1) at 256:11-21, Proctor Dec., Exh. 14.

25   [37] Id. at 256:24-257:3 ("If you rely on the user population to perform their own housekeeping, they won't.  They'll just let e-mail grow and grow consuming valuable disk space which will eventually impede performance and shut the server down.").

26   [38] Id. at 215:3-217:13.

27   [39] Kawashima Tr. (Vol. 2) at 381:4-11, 389:10-390:22, 394:25-396:1, 397:2-403:2, Proctor Dec., Exh. 15.

     [40] Mattel Letter to MGA dated June 11, 2007, Proctor Dec., Exh. 19.

28   [41] Mot. at 23:20; Proctor Dec., Exh. 18.

EXHIBIT 31

**Nakatsukasa, Gail**

From:      Clayton, Larry
Sent:      Friday, April 05, 2002 2:06 PM
To:        Cheung, Paul
Cc:        Kroskrity, Cassandra; Beldokhti, Nader; Nakatsukasa, Gail
Subject:   Glamermaids

Hi Paul. Cassandra sent out to you today three of the doll's softgoods packages, one fast cast body for fitting, appearance definitions for all four dolls, and one Bratz doll for your reference. We will be sending the last softgoods package on Monday the 8th.

We are still working on the plastic and body samples and hope to have them out to you on the 12th. Attached are a few images to show the range of motion we want to achieve on the tail and fin/shoes.

1. The key feature of the dolls will be the tail articulation and interchangeable fin & shoe components. The dolls with come with two fins and one pair of molded shoes (the shoes will be molded together as one unit).

2. Images below are schematic to show fin & shoe locations when assembled.



Doll w-Tail copy.jpg    Doll w-Shoes copy.jpg

3. Body articulation. We are open to suggestions on the best way to achieve a wide range of motion. Attached are a few images to give you an idea of what we are looking for. We do know that we want to use arms similar to the Bratz dolls. This would be a soft PVC material non possible at the elbow articulating at the shoulder. We would like the doll to be able to bind at the waist (front to back and side to side) so she can sit in a vehicle or chair. It should also bend at the knee and fin. It would be great to get a full range of motion with a ball joint and have it covered with a skin. The torso and tail could be one piece or be similar to the Mermaid Barbie or the B2K flex waist body.

          

GM position 1.JPG   GM position 2.JPG   GM position 3.JPG

Note: These images are our preliminary model and we do not want to use the accordion bellows joint shown.

Hope you had a great holiday and I'll talk with you on Monday.

Larry

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0079797

Exhibit _31_, P. _126_

EXHIBIT 32

RE: My Scene - Fall 2005 Product Requests - MEXICO

**Tamae, Gail**          2005 Masquerade Dolls - Cost Reduced  5/27

To:        Fan, MW (MAPS Project Engg - Girls); Kwok, Martina; Woloszyk, Sharon
Subject: INQUIRY RE: My Scene - Fall 2005 Product Requests - MEXICO -- Restart Masquerade madness
          Girls

5/19/05

*Slot Approved - 5/27*

Hi Ming and Martina,

Can you please review and advise if we are to get approval to proceed forward to re-start the Masquerade
Madness Dolls (only 3 - Barbie, Chelsea n Nolee) which would be a cost reduce version (less the DVD and some
plastic or softgoods and possibly a smaller package), if we could meet a PS of 7/15/05 in order to meet int'l MR of
9/15/05.  Of course once, it gets approved, the team we'll need a time to define segment which I'm targeting
by 6/1/05.  If you cannot meet 7/15 PS, please advise what the best PS would be.

Quota: Barbie 100m, Chelsea 45m and Nolee 25M           *Can do schedule after Martin advise.*

Hi Sharon,

If we were to reduced the size of the Masquerade Girls package to meet an $11.00 "A" package size, how quickly
can you art release a 4L version to Asia.  The MR is 9/15 in which I'll need to have AR by 6/24/05, if you cannot
meet this please advise best possible AR.  Thank you.

Thank you and Regards,

Gail
New Toy Planning - My Scene Brand
Ex. 2356

-----Original Message-----
From: Bartlett, Alison
Sent: Thursday, May 19, 2005 10:53 AM
To: Tamae, Gail; Gonzales, Steven
Cc: Gomez, Jean
Subject: RE: My Scene - Fall 2005 Product Requests - MEXICO

Hi,
So far, we are only relaunching this in LAAM - so we need 4L version only for Masquerade Madness.

I am still working to get individual quotas/doll, but Mexico and Venezuela both want them, so it will likely be
around 100 Barbie, 45 Chelsea, 25 Nolee or so.  Will get you more detail when final quotas come from the
markets.

M/R is 9/15.

Standard Pack - Steve, does six make sense??

Thanks!

Alison

-----Original Message-----
From: Tamae, Gail
Sent: Thursday, May 19, 2005 10:45 AM
To: Bartlett, Alison; Gonzales, Steven

5/19/05                          Exhibit 32, P. 127

CONFIDENTIAL - ATTORNEYS' EYES ONLY                     M 0273629

**Subject:** RE: My Scene - Fall 2005 Product Requests - MEXICO

Hi Alison,

Please clarify, what the package languages are Dom only?

What is the individual quotas for each doll.

What is the Market Requirement?

What is the standard pack?

Hi Steve,

Just by taking out the DVD and reducing package to $11"A" size will bring us to Target Margin?


Thank you and Regards,

Gail
New Toy Planning - My Scene Brand
Ex. 2356

-----Original Message-----
**From:** Bartlett, Alison
**Sent:** Thursday, May 19, 2005 8:53 AM
**To:** Tamae, Gail
**Subject:** RE: My Scene - Fall 2005 Product Requests - MEXICO

No, that is for Masquerade.  We haven't done that one yet:)

I need to get a slot approval for the three toy numbers for Masquerade, price reduced to take out DVD. Steve has already done the ex-factory.  They will be $11A, 150M pieces total, MA same as for Chillin.

Alison

        -----Original Message-----
        **From:** Tamae, Gail
        **Sent:** Thursday, May 19, 2005 8:51 AM
        **To:** Bartlett, Alison
        **Subject:** RE: My Scene - Fall 2005 Product Requests - MEXICO

        Hi Alison,

        Please relay to Renata, it's Madison not Nolee for Chelsea.


        Thank you and Regards,

        Gail
        New Toy Planning - My Scene Brand
        Ex. 2356

        -----Original Message-----

5/19/05

Exhibit 33, P. 128

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0273630

**From:** Bartlett, Alison
**Sent:** Wednesday, May 18, 2005 5:42 PM
**To:** Tamae, Gail
**Subject:** FW: My Scene - Fall 2005 Product Requests - MEXICO

-----Original Message-----
**From:** Del Sordo, Renata
**Sent:** Wednesday, May 18, 2005 5:28 PM
**To:** Bartlett, Alison; Haag, Debbie; Wicklin, Matte; Gomez, Jean; Kuchem, Kara
**Cc:** Odon, Maria Antonieta; Lobato, Lourdes; Ibarra, Ricardo; Gonzales, Steven
**Subject:** RE: My Scene - Fall 2005 Product Requests - MEXICO

Alison,

Our wish date will be September 1st for both products. Please let me know viability of this and your estimate date.

Thanks & Regards

**De:** Bartlett, Alison
**Enviado el:** Mié 18/05/2005 03:24 p.m.
**Para:** Del Sordo, Renata; Haag, Debbie; Wicklin, Matte; Gomez, Jean; Kuchem, Kara
**CC:** Odon, Maria Antonieta; Lobato, Lourdes; Ibarra, Ricardo; Gonzales, Steven
**Asunto:** RE: My Scene - Fall 2005 Product Requests - MEXICO

Hi Renata,

1) We need demands in the system asap.
2) Toy numbers for MM will take a bit. Ex-Factory is:
Barbie - $3.823
Nolee - $3.653
Chelsea - $3.831

Can you please confirm your avail date for Chillin Out?

Alison

-----Original Message-----
**From:** Del Sordo, Renata
**Sent:** Wednesday, May 18, 2005 8:17 AM
**To:** Del Sordo, Renata; Haag, Debbie; Wicklin, Matte; Gomez, Jean; Kuchem, Kara; Bartlett, Alison
**Cc:** Odon, Maria Antonieta; Lobato, Lourdes; Ibarra, Ricardo
**Subject:** RE: My Scene - Fall 2005 Product Requests - MEXICO

Hi MS team,,

This are the numbers we get after the sales/demands meeting we had this morning:

| C1586 | My Scene Chilli Out Barbie | 80,000 |
| C1587 | My Scene Chilli Out Madison | 20,000 |
| C1588 | My Scene Chilli Out Chelsea | 25,000 |

5/19/05

CONFIDENTIAL - ATTORNEYS' EYES ONLY          Exhibit 32, P. 129          M 0273631

The Final Quota for Masquearde madness was 150,000 pz. we need to have 3 different versions (Barbie, Nolee< & Chelsea)
Please confirm us as soon as you can Toy Numbers, EX-factor. Our availavility date must be the same as Chilin Out.

Thanks for your help

reagrds


**From:** Del Sordo, Renata
**Sent:** Tue 5/17/2005 10:30 PM
**To:** Haag, Debbie; Wicklin, Matte; Gomez, Jean; Kuchem, Kara; Bartlett, Alison
**Cc:** Odon, Maria Antonieta
**Subject:** RE: My Scene - Fall 2005 Product Requests - MEXICO

Hi to all:

Tomorrow 7:00 am we are going to have a sales meeting and will have final numbers for both My Scene versions, I will let you know our final numbers as sson as I get them

Thanks in advanced for your help

Renata


**De:** Haag, Debbie
**Enviado el:** Mar 17/05/2005 11:50 a.m.
**Para:** Wicklin, Matte; Gomez, Jean; Kuchem, Kara; Bartlett, Alison
**CC:** Del Sordo, Renata
**Asunto:** RE: My Scene - Fall 2005 Product Requests - MEXICO

We can reinstate Masq Madness if they take 50m.  We have to do a slot approval.  We'll get you the x factory.

Chillin shouldn't be a problem.  We need to get the demands in and get a package goin

> -----Original Message-----
> **From:** Wicklin, Matte
> **Sent:** Tuesday, May 17, 2005 9:44 AM
> **To:** Gomez, Jean; Kuchem, Kara; Bartlett, Alison
> **Cc:** Haag, Debbie; Del Sordo, Renata
> **Subject:** My Scene - Fall 2005 Product Requests - MEXICO
>
> Hello, My Scene team:
>
> Mexico just gave me the competitive informationin the e-mail below.  They want to ensure they have the strongest possible low-priced My Scene line for Fall 2005
>
> 1) If they get their demands for Chillin Out in the system this week, can they get that

5/19/05

product this fall?  (I believe the deadline was May 9, but hopefully you can still tag them onto production?)

- o C1586
- o C1587
- o C1588

2) They would very much like to get the cost-reduced Masquerade Madness dolls that were briefly discussed and then dropped due to "lack of interest"

- o What's MOQ?  Mexico can probably take at least whatever MOQ would be, assuming it's in the neighborhood of 50M.
- o What's target Ex-Factory?  They need to run financials before making firm commitment.
- o Toy #s of the not-yet-cost-reduced versions: C1240 Barbie, C1304 Chelsea, C1305 Nolee, C1241 Madison
- o If due to MOQ they are able to take only 2, they'd take Barbie & Nolee.

Thanks so much; if possible, could we get at least a preliminary response today?

    --Matte, ext 5590

    -----Original Message-----
    **From:**  Wicklin, Matte
    **Sent:**  Tuesday, May 17, 2005 9:36 AM
    **To:**   Wilbur, Therese; Arons, Russell; Haag, Debbie
    **Cc:**   Ledermann, Cindy
    **Subject:**      Competitive Update Fall 2005 - MEXICO

My contact in the Mattel Mexico office just passed along this information learned regarding Bratz.

They will launch 5 new low-priced **fashion doll** segments in the fall, retailing 139-149 pesos (same retail price range as Eye Candy, and up to $1 more):

- o Candy - TV
- o Sports - TV
- o Dynamite - TV
- o Party - TV
- o **Hollywood - NO TV**

It raises the question whether Mattel people who were familiar with our My Scene Goes Hollywood plans for Fall 2005 have a specific strategy to free-ride off our big fall marketing program and undercut us on price, an especially interesting question as MGA has served Mattel with an unfair competition lawsuit.

I am following up separately with the brand group to ensure Mattel Mexico has a strong low-priced fashion doll line for Fall targeting older girls.

And in the **Large Doll** category, it's reported that Bratz will be launching Baby Bratz
- o About $25 retail price point
- o Asst of 3

5/19/05

Exhibit 32, P. 131

CONFIDENTIAL - ATTORNEYS' EYES ONLY

M 0273633

- o TV
- o Don't know if it's got features; expect it to be fashion-oriented and go against key competition of Famosa Jagetes.


Matte Wicklin
Marketing Manager, Girls International Group, Barbie Brands, M1-1027

PH 310.252.5590
FX 310.252.4557

5/19/05

Exhibit 3ə, P.13ə

CONFIDENTIAL - ATTORNEYS' EYES ONLY                    M 0273634