

Plays Bass

Studies:
Classical Violin
Child Psycology

ATTORNEY'S EYES
ONLY

BRYANT 00181
EXHIBIT ___40___
PAGE ___640___



Phys Bass

Studies.
Classical Violin
Child Psycology

ATTORNEY'S EYES
ONLY

BRYANT 00181

641

EXHIBIT __40__

PAGE ___642___

40
643



ATTORNEY'S EYES ONLY

BRYANT 00182 40
EXHIBIT

PAGE 644



ATTORNEY'S EYES ONLY

BRYANT 00182

40
645

**EXHIBIT 41**



8/1996

ATTORNEY'S EYES ONLY

BRYANT 00222

DEPOSITION EXHIBIT
3

EXHIBIT 41        11-5-04      5

PAGE 646



To give Zoe a whole new look for night, change her short dark brown hairstyle to her long blonde hairdo (included), change her pants to a skirt (also included) and change her sneakers to platform sandals (you get those too!)

8/1998

ATTORNEY'S EYES ONLY

BRYANT 00223

EXHIBIT   41

PAGE   647



8/1998

ATTORNEY'S EYES
ONLY

BRYANT 00224

EXHIBIT 41

PAGE 648



ATTORNEY'S EYES
ONLY

BRYANT 00225

EXHIBIT ___41___

PAGE ___649___



8/1998

ATTORNEY'S EYES ONLY

BRYANT 00226

EXHIBIT ___41___

PAGE ___650___



8/1998

ATTORNEY'S EYES
ONLY

BRYANT 00227

EXHIBIT __41__
PAGE ___651___



ATTORNEY'S EYES
ONLY

BRYANT 00228

EXHIBIT 41
PAGE 652



8/1998

ATTORNEY'S EYES
ONLY

BRYANT 00229

EXHIBIT __41__

PAGE __653__



?/1998

ATTORNEY'S EYES
ONLY

BRYANT 00230

EXHIBIT 41
PAGE 654



ATTORNEY'S EYES
ONLY

BRYANT 00231

EXHIBIT __41__

PAGE __655__



ATTORNEY'S EYES
ONLY                    BRYANT 00232

EXHIBIT ___41___

PAGE ___656___



8/1998

ATTORNEY'S EYES
ONLY

BRYANT 00233

EXHIBIT ___41___

PAGE ___657___



8/1998

ATTORNEY'S EYES
ONLY

BRYANT 00234

EXHIBIT 41
PAGE 658

**EXHIBIT 42**

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL,   )
                                )
              PLAINTIFF,        )
                                )
        V.                      )          NO.  CV 04-9040  SGL (RNBX)
                                )
MATTEL, INC., A DELAWARE        )
CORPORATION,                    )
                                )
              DEFENDANTS.       )
_____)
                                )
AND CONSOLIDATED ACTION (S).    )
_____)

# C O N F I D E N T I A L

### ATTORNEYS' EYES ONLY

## DEPOSITION OF EDMOND LEE

## VOLUME I

## OCTOBER 4, 2007



COURT REPORTERS

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

REPORTED BY:
ANGELA DUPRE
CSR NO. 7804
JOB NO. 07AD089

EXHIBIT _____ 42

PAGE _____ 659

DEPOSITION OF EDMOND LEE - VOLUME I

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                   EASTERN DIVISION

4

5     CARTER BRYANT, AN INDIVIDUAL,   )
                                      )
6              PLAINTIFF,             )
                                      )CASE NO.
7          V.                         )CV 04-9049 SGL (RNBX)
                                      )
8     MATTEL, INC., A DELAWARE        )
      CORPORATION,                    )
9                                     )
               DEFENDANT.             )
10    _____)
                                      )
11    AND CONSOLIDATED ACTIONS.       )
      _____)

12

13              C O N F I D E N T I A L

14    (PURSUANT TO PROTECTIVE ORDER, THIS TRANSCRIPT
             HAS BEEN DESIGNATED CONFIDENTIAL
15              FOR ATTORNEYS' EYES ONLY)

16

17                   VOLUME I

18         RULE 30(B)(6) DEPOSITION OF EDMOND

19         LEE, TAKEN ON BEHALF OF THE

20         DEFENDANT MATTEL, INC., AT 865

21         SOUTH FIGUEROA STREET, LOS

22         ANGELES, CALIFORNIA, COMMENCING AT

23         9:44 A.M., THURSDAY, OCTOBER 4,

24         2007, BEFORE ANGELA DUPRE, CSR

25         7804.

                                                  2

EXHIBIT ___42___

PAGE ___660___

DEPOSITION OF EDMOND LEE - VOLUME I

1   APPEARANCES OF COUNSEL:

2

3   FOR CARTER BRYANT:

4       KEKER & VAN NEST
        BY:  MICHAEL PAGE, ESQ.
5       710 SANSOME STREET
        SAN FRANCISCO, CALIFORNIA 94111
6       (415) 391-5400
        (NOT PRESENT)
7

8

9   FOR MATTEL, INC.:

10      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
        BY:  MICHAEL T. ZELLER, ESQ.
             BRIDGET HAULER, ESQ.
11      865 SOUTH FIGUEROA STREET
        10TH FLOOR
12      LOS ANGELES, CALIFORNIA 90017
        (213) 443-3000
13

14

15  FOR THE MGA ENTERTAINMENT ENTITIES:

        O'MELVENY & MYERS
16      BY:  MARC F. FEINSTEIN, ESQ.
        400 SOUTH HOPE STREET
17      LOS ANGELES, CALIFORNIA 90071
        (213) 430-6000
18

19

20  ALSO PRESENT:

21      SAMUEL C. CHAN - CANTONESE INTERPRETER

22      PETER ACHESON - VIDEOGRAPHER
                        JTV LITIGATION SERVICES, INC.
23
        CRAIG HOLDEN - MGA ENTERTAINMENT, INC.
24

25

                                                    3

EXHIBIT   42
PAGE      661

DEPOSITION OF EDMOND LEE - VOLUME I

1  WAY:  YOU TALKED EARLIER ABOUT THE REGISTRATION

2  ADDRESS FOR THE COMPANY.

3      A.    (IN ENGLISH):  YES.

4      Q.    AND YOU SAID THAT WAS THE ONE AT EMPIRE

11:24:13AM 5  CENTER; RIGHT?

6      A.    (IN ENGLISH):  YES.

7      Q.    WHAT WERE THE FUNCTIONS THAT WERE CARRIED

8  OUT IN THE EMPIRE CENTER OFFICES?

9      A.    (IN ENGLISH):  IN YEAR 2000 -- THE FIRST

11:24:36AM 10  DAY THAT I JOINED THE COMPANY, ALL THE ACTIVITIES

11  WERE DONE IN EMPIRE CENTER, MAIN OFFICE, JUST ONLY

12  ONE OFFICE THERE.  SO WE HAVE GOOD SALES AND GOOD

13  GROWTH, AND THEN WE HAVE THE FIFTH FLOOR ON THE

14  EMPIRE CENTER, AND THEN WE HAVE ANOTHER NINTH FLOOR

11:24:56AM 15  IN ENERGY PLAZA.

16      SO IT DEPENDS ON THE TIMING, IN -- AT THE

17  FIRST DAY WE HAVE EVERYTHING, IN EMPIRE CENTER,

18  10TH FLOOR.

19      Q.    AND WHEN YOU SAY THE BEGINNING, THAT WAS

11:25:09AM 20  WHEN YOU STARTED THERE IN OCTOBER OF 2000?

21      A.    (IN ENGLISH):  YES.

22      CAN I GET SOME WATER?

23  MR. ZELLER:  WANT TO TAKE A COUPLE MINUTES?

24  MR. FEINSTEIN:  TAKE A SHORT BREAK.

11:25:27AM 25  VIDEOGRAPHER:  THIS CONCLUDES VIDEOTAPE NUMBER

64

EXHIBIT _____ 42

PAGE _____ 662

DEPOSITION OF EDMOND LEE - VOLUME I

1    1.   THE TIME IS 11:25 A.M., AND WE ARE OFF THE

2    RECORD.

3              (A RECESS WAS HELD.)

4         VIDEOGRAPHER:   THIS BEGINS VIDEOTAPE NUMBER 2.

11:39:08AM 5    THE TIME IS 11:39 A.M., AND WE ARE ON THE RECORD.

6    BY MR. ZELLER:

7         Q.    HAVE YOU EVER SPOKEN WITH MR. STEPHEN LEE

8    REGARDING THIS LAWSUIT WITH MATTEL?

9         A.    NO.

11:39:24AM 10        Q.    HAS ANYONE AT MGA HONG KONG?

11        MR. FEINSTEIN:   OBJECTION; LACK OF FOUNDATION.

12        THE DEPONENT:   BASED ON MY KNOWLEDGE, NO.

13    BY MR. ZELLER:

14        Q.    DO YOU HAVE A WRITTEN EMPLOYMENT

11:39:48AM 15    AGREEMENT WITH MGA HONG KONG?

16        A.    (IN ENGLISH):   YES.

17        Q.    AND HAVE YOU HAD JUST ONE SO FAR, OR MORE

18    THAN ONE?

19        A.    I HAVE AN EMPLOYMENT CONTRACT WHICH WAS

11:40:19AM 20    SIGNED ON DAY ONE, WHEN I JOINED THE COMPANY AS A

21    MANAGE -- QUALITY DIRECTOR.

22              IT WAS A SUPPLEMENT ADDED TO THE

23    EMPLOYMENT CONTRACT, BUT IT WASN'T ABOUT A

24    PROMOTION, THOUGH.   IT WAS ABOUT A TERMINATION

11:40:50AM 25    NOTICE FROM ONE MONTH TO FOUR MONTHS.

65

EXHIBIT 42

PAGE 663

DEPOSITION OF EDMOND LEE - VOLUME I

1    Q.    LET ME MAKE SURE I UNDERSTAND.

2          SO WHEN YOU -- WHEN YOU JOINED MGA HONG

3    KONG, WHEN YOU WERE THE -- WITH QUALITY ASSURANCE,

4    YOU SIGNED A WRITTEN CONTRACT?

11:41:11AM  5    A.    (IN ENGLISH):  YES.

6    Q.    AND THEN AT SOME POINT DID YOU SIGN

7    ANOTHER EMPLOYMENT AGREEMENT, AFTER YOU WERE

8    PROMOTED?

9    A.    BASED ON MY RECOLLECTION, NO.

11:41:28AM  10    Q.    SO IT'S THE SAME CONTRACT ALL ALONG;

11    THERE HAVE BEEN SUPPLEMENTS TO IT, BUT IT'S THE

12    SAME BASIC CONTRACT SINCE THEN?

13    A.    YES.

14    Q.    NOW, WHEN YOU -- PRIOR TO THE TIME YOU

11:41:48AM  15    SIGNED THAT AGREEMENT, DID YOU NEGOTIATE THE TERMS

16    WITH MGA, OR DID MGA JUST PRESENT THE CONTRACT TO

17    YOU AND EXPECT YOU TO SIGN IT WITH THOSE TERMS?

18    MR. FEINSTEIN:  OBJECTION; CALLS FOR

19    SPECULATION ABOUT MGA'S EXPECTATIONS.

11:42:20AM  20    THE DEPONENT:  ME, PERSONALLY, DID NOT

21    NEGOTIATE ALL REVISED IN THE CONTENTS OF THAT

22    AGREEMENT.

23    BY MR. ZELLER:

24    Q.    PRIOR TO THE TIME YOU SIGNED THAT

11:42:46AM  25    AGREEMENT, DID MGA HONG KONG TELL YOU THAT YOU

66

EXHIBIT ___42___

PAGE ___664___

DEPOSITION OF EDMOND LEE - VOLUME I

1    COULD NEGOTIATE IT?

2        A.    DID NOT MENTION THAT.

3        Q.    DID MGA HONG KONG TELL YOU THAT YOU

4    SHOULD GET A LAWYER BEFORE YOU SIGNED THAT

5    AGREEMENT?

6        A.    I'M NOT SURE ABOUT THE QUESTION.   COULD

7    YOU REPEAT THE QUESTION ONE MORE TIME?

8            COULD YOU TRANSLATE THE QUESTION ONE MORE

9    TIME, PLEASE.

10       Q.    PRIOR TO THE TIME THAT YOU SIGNED THAT

11   AGREEMENT WITH MGA HONG KONG, YOUR EMPLOYMENT

12   AGREEMENT, DID MGA HONG KONG TELL YOU YOU SHOULD

13   GET A LAWYER TO REVIEW THE CONTRACT AND GIVE YOU

14   ADVICE ABOUT THE CONTRACT?

15       A.    DID -- THEY DIDN'T MENTION THAT, BUT

16   USUALLY IN HONG KONG, NORMALLY, FOR A VERY NORMAL

17   AGREEMENT LIKE THAT IN HONG KONG, USUALLY THAT

18   WOULD NOT BE DONE, NORMALLY.

19       Q.    I TAKE IT THAT TODAY, WHEN MGA HONG KONG

20   HIRES SOMEBODY FOR A POSITION, THEY HAVE THEM SIGN

21   AN EMPLOYMENT AGREEMENT?

22       A.    (IN ENGLISH):  YES.

23       Q.    DOES MGA HONG KONG TELL THOSE PROSPECTIVE

24   EMPLOYEES THAT THEY SHOULD HIRE A LAWYER IN

25   CONNECTION WITH THE AGREEMENT?

67

EXHIBIT 42

PAGE 665

DEPOSITION OF EDMOND LEE - VOLUME I

1    A.    BASED ON WHAT I KNOW, NO.

2    Q.    DOES MGA HONG KONG TELL THOSE PROSPECTIVE

3    EMPLOYEES, PRIOR TO THE TIME THAT THEY SIGN THE

4    AGREEMENT, THAT THEY CAN NEGOTIATE THE TERMS OF IT?

5    A.    OTHER THAN SALARY, USUALLY UNDER NORMAL

6    PRACTICE, IT WOULD NOT BE DONE TO -- OR NOT BE DONE

7    TO TELL THE EMPLOYEE ABOUT THAT.

8    Q.    SO THE NORMAL PRACTICE IS NOT TO TELL

9    THEM; CORRECT?

10    MR. FEINSTEIN:  OBJECTION; ASKED AND ANSWERED.

11    THE DEPONENT:  I WOULD NOT ASK THEM TO DO THAT.

12    BY MR. ZELLER:

13    Q.    OR TELL THEM THAT THEY CAN?

14    A.    WE WILL NOT MENTION THAT IN PARTICULAR.

15    Q.    ARE YOU AWARE OF INSTANCES IN WHICH MGA

16    HONG KONG EMPLOYEES, PRIOR TO THE TIME THAT THEY'VE

17    SIGNED THEIR EMPLOYMENT AGREEMENTS, HAVE NEGOTIATED

18    THE TERMS OF THEIR AGREEMENTS, OTHER THAN THE

19    SALARY AMOUNT?

20    A.    BASED ON MY KNOWLEDGE, I DON'T THINK SO.

21    Q.    UNDER YOUR AGREEMENT WITH MGA HONG KONG,

22    IS IT YOUR UNDERSTANDING THAT WORKS THAT YOU HAVE

23    MADE DURING THE TERM OF YOUR EMPLOYMENT BELONG TO

24    MGA HONG KONG?

25    MR. FEINSTEIN:  OBJECTION; CALLS FOR A LEGAL

68

EXHIBIT _____42_____

PAGE _____666_____

DEPOSITION OF EDMOND LEE - VOLUME I

1    CONCLUSION.

2        THE DEPONENT:  SHOULD I --

3        MR. FEINSTEIN:  YOU CAN ANSWER.

4        THE DEPONENT:  OKAY.  YES, I KNOW THAT.

11:47:48AM 5    BY MR. ZELLER:

6        Q.    AND IS THAT -- IS IT TRUE THAT FOR THE

7    OTHER EMPLOYMENT AGREEMENTS THAT MGA HONG KONG HAS

8    WITH ITS EMPLOYEES, THAT DESIGNS THAT THEY CREATE

9    WHILE THEY'RE EMPLOYED BY MGA HONG KONG ARE OWNED

11:48:04AM 10   BY MGA HONG KONG?

11       MR. FEINSTEIN:  OBJECTION; VAGUE, LACK OF

12   FOUNDATION, CALLS FOR A LEGAL CONCLUSION.

13       THE DEPONENT:  YES, THEY KNOW THAT.

14   BY MR. ZELLER:

11:48:37AM 15   Q.    DOES MGA HONG KONG ALLOW ITS EMPLOYEES TO

16   WORK FOR COMPETITORS WHILE THEY'RE EMPLOYED BY MGA

17   HONG KONG?

18       MR. FEINSTEIN:  OBJECTION; VAGUE AS TO TIME.

19       THE DEPONENT:  WE DO NOT ALLOW OUR WORKERS TO

11:49:16AM 20   HAVE ANOTHER JOB OTHER THAN MGA'S HONG KONG.

21   BY MR. ZELLER:

22       Q.    AND THAT'S TRUE WHETHER THE JOB IS WITH A

23   COMPETITOR OR EVEN IF IT'S NOT A COMPETITOR; RIGHT?

24       A.    HAS NOTHING TO DO WITH COMPETITORS OR

11:49:39AM 25   NOT COMPETITORS AT ALL.

69

EXHIBIT ____42____

PAGE ____667____

DEPOSITION OF EDMOND LEE - VOLUME I

1    Q.    THEY CAN'T HAVE ANOTHER JOB, PERIOD?

2    A.    THAT'S CORRECT, THEY COULD -- THAT'S

3  RIGHT, THEY COULD NOT.

4    Q.    AND THAT HAS BEEN TRUE THE ENTIRE TIME

11:50:03AM  5  THAT YOU'VE BEEN EMPLOYED BY MGA HONG KONG; IS THAT

6  TRUE?

7    MR. FEINSTEIN:  OBJECTION; LACK OF FOUNDATION.

8    THE DEPONENT:  BASED ON MY KNOWLEDGE, YES.

9  BY MR. ZELLER:

11:50:33AM 10    Q.    IF YOU COULD PLEASE TELL ME BRIEFLY WHAT

11  YOUR EMPLOYMENT BACKGROUND WAS PRIOR TO THE TIME

12  THAT YOU JOINED MGA HONG KONG.

13    A.    (IN ENGLISH):  I USED TO WORK IN HASBRO

14  HONG KONG.  THEY NAME IT HASBRO FAR EAST, NOT

11:51:01AM 15  HASBRO HONG KONG.  THEY ARE DIFFERENT COMPANIES IN

16  HONG KONG.  THEY NAME IT HASBRO FAR EAST.  YEAH.

17    SINCE -- LET ME SEE -- 1990 TO YEAR 2000,

18  JUST BEFORE I JOINED MGA.  BUT I WAS NOT IN HASBRO

19  IN THE YEAR -- YEAR 1990, BECAUSE I WAS EMPLOYED BY

11:51:21AM 20  KENNER, PARKER -- TONKA KENNER PARKER TOYS LIMITED.

21  IN YEAR 1991, TONKA KENNER PARKERS WERE ACQUIRED BY

22  HASBRO, SO THEN I WAS A EMPLOYEE IN HASBRO FAR

23  EAST.

24    Q.    I SEE.  SO IN THE 1990'S, YOU STARTED OFF

11:51:50AM 25  WITH TONKA KENNER PARKA -- PARKER, RATHER, AND THEN

70

EXHIBIT _____ 42
PAGE _____ 668

DEPOSITION OF EDMOND LEE - VOLUME I

1    IN 1991 THAT COMPANY WAS ACQUIRED BY HASBRO.  AND

2    SO YOU STARTED WORKING FOR HASBRO AT THAT TIME?

3        A.    (IN ENGLISH):  YEAH.  SO WE ALWAYS KID --

4    WE ALWAYS SAY BASED ON THE SENIORITY, KEEP OUR

11:52:08AM 5    SENIORITY.  WHEN I WORKED THE DAYS IN TONKA KENNER

6    PARKERS, SO TO MAKE IT SIMPLE, I ALWAYS TELL

7    EVERYBODY I STARTED WORKING HASBRO IN 1990.

8        Q.    AND WAS THAT YOUR FIRST JOB IN THE TOY

9    INDUSTRY?

11:52:22AM 10        A.    (IN ENGLISH):  NO.

11        Q.    YOU -- WHAT WERE THE OTHER JOBS THAT YOU

12    HAD IN THE TOY INDUSTRY?

13        A.    (IN ENGLISH):  IN 1988, I STARTED A JOB

14    IN A TOY COMPANY NAMED UNIMAX TOYS, UNIMAX,

11:52:42AM 15    U-N-I-M-A-X, TOYS, LIMITED, AS A ASSISTANT PROJECT

16    ENGINEER.  THEN I LEFT FROM UNIMAX TOYS AND JOINED

17    KENNER -- TONKA KENNER PARKER IN JUNE 1990.

18        Q.    ARE THERE ANY OTHER JOBS IN THE TOY

19    INDUSTRY THAT YOU'VE HELD?

11:53:12AM 20        A.    (IN ENGLISH):  THERE ARE SOME SUMMER

21    TRAINING OR SUMMER JOBS THAT I WAS HIRED BY UNIMAX,

22    IN 1987.

23        Q.    ANY OTHER TOY INDUSTRY JOBS?

24        A.    (IN ENGLISH):  I CANNOT RECALL, BUT I WAS

11:53:33AM 25    IN -- IN A WORKER -- POSITION LINE WORKER FOR A

71

EXHIBIT _____42_____

PAGE _____669_____

DEPOSITION OF EDMOND LEE - VOLUME I

```
1              (WHEREUPON, AT THE HOUR OF

2           7:02 P.M., THE PROCEEDINGS

3              WERE ADJOURNED.)

4                  -oOo-

5

6

7          DECLARATION OF DEPONENT

8

9      I CERTIFY UNDER PENALTY OF PERJURY UNDER THE

10  LAWS OF THE STATE OF CALIFORNIA THAT THE FOREGOING

11  IS TRUE AND CORRECT.

12

13

14  EXECUTED AT_____, ON_____
                  (PLACE)                   (DATE)
15

16

17          _____
                  (SIGNATURE OF DEPONENT)
18

19

20

21

22

23

24

25
```

272

EXHIBIT ____42____

PAGE ____670____

DEPOSITION OF EDMOND LEE - VOLUME I

1          DEPOSITION OFFICER'S CERTIFICATE

2    STATE OF CALIFORNIA      )
                              )    SS.
3    COUNTY OF ORANGE         )

4

5       I, ANGELA DUPRE, HEREBY CERTIFY:

6       I AM A DULY QUALIFIED CERTIFIED SHORTHAND

7    REPORTER IN THE STATE OF CALIFORNIA, HOLDER OF

8    CERTIFICATE NUMBER CSR 7804 ISSUED BY THE COURT

9    REPORTERS BOARD OF CALIFORNIA AND WHICH IS IN FULL

10   FORCE AND EFFECT.  [FED. R. DIV. P. 28(A)].

11      I AM AUTHORIZED TO ADMINISTER OATHS OR

12   AFFIRMATIONS PURSUANT TO CALIFORNIA CODE OF CIVIL

13   PROCEDURE, SECTION 2093(B) AND PRIOR TO BEING

14   EXAMINED, THE DEPONENT WAS FIRST DULY SWORN BY ME.

15   [FED. R. CIV. P. 28(A), 30(F)(1)].

16      I AM NOT A RELATIVE OR EMPLOYEE OR ATTORNEY OR

17   COUNSEL OF ANY OF THE PARTIES, NOR AM I A RELATIVE

18   OR EMPLOYEE OF SUCH ATTORNEY OR COUNSEL, NOR AM I

19   FINANCIALLY INTERESTED IN THIS ACTION.

20   [FED. R. CIV. P. 28].

21      I AM THE DEPOSITION OFFICER THAT

22   STENOGRAPHICALLY RECORDED THE TESTIMONY IN THE

23   FOREGOING DEPOSITION AND THE FOREGOING TRANSCRIPT

24   IS A TRUE RECORD OF THE TESTIMONY GIVEN BY THE

25

                                                273

EXHIBIT ___42___

PAGE ___671___

DEPOSITION OF EDMOND LEE - VOLUME I

1    DEPONENT.   [FED. R. CIV. P. 30(F)(1)].

2         BEFORE COMPLETION OF THE DEPOSITION, REVIEW OF

3    THE TRANSCRIPT [ ] WAS [ ] WAS NOT REQUESTED.  IF

4    REQUESTED, ANY CHANGES MADE BY THE DEPONENT (AND

5    PROVIDED TO THE REPORTER) DURING THE PERIOD ALLOWED

6    ARE APPENDED HERETO.  [FED. R. CIV. P. 30(E)].

7

8

9    DATED: _____*October*_____ , _____*15*_____ , 2007.

10

11

12

13

14    _____

15

16

17

18

19

20

21

22

23

24

25

274

EXHIBIT   42

PAGE   672

DEPOSITION OF EDMOND LEE - VOLUME I

```
 1    STATE OF CALIFORNIA      )
                               )
 2    COUNTY OF LOS ANGELES    )

 3        I,_____, DECLARE:

 4        MY ADDRESS IS_____

 5    _____;

 6        I AM A PERSON WHO SPEAKS THE LANGUAGE OF THE

 7    DEPONENT, NAMELY; _____

 8        ON THE _____ DAY OF _____ 20____, I DID

 9    TRANSLATE THE WITHIN DEPOSITION FROM ENGLISH INTO

10    THE _____ LANGUAGE, READING SAME TO

11    THE DEPONENT IN HIS/HER NATIVE TONGUE TO THE BEST

12    OF MY ABILITY;

13        ALL CORRECTIONS AND CHANGES REQUESTED BY THE

14    DEPONENT WERE MADE BY ME ON THE TRANSCRIPT AND

15    INITIALED BY THE DEPONENT;

16        THAT UPON COMPLETION OF SAID READING, THE

17    DEPONENT DID CONFIRM TO ME THAT HE/SHE UNDERSTOOD

18    THE READING.

19            I DECLARE UNDER PENALTY OF PERJURY THAT

20    THE FOREGOING IS TRUE AND CORRECT.

21
      DATED _____,_____, CALIFORNIA.
22           (DATE)              (CITY)

23
             _____
24           SIGNATURE OF READER-INTERPRETER

25
```

275

EXHIBIT ____42____

PAGE ____673____

**EXHIBIT 43**



Corporate Office:
16730 Schoenborn Street
North Hills, CA 91343-6122 USA
Tel 818.394.2525
Fax 818.394.8094

November 10, 2000

**Certified Mail &**
**Return Receipt Requested**
Ms. Kami Gillmore
4341 Oceanview Drive
Malibu, CA 90265

Dear Kami:

It has come to my attention through industry sources that you may have been disclosing MGA confidential information regarding the Company's 2001 product line. As you know, if true, any such disclosure would violate the Company's Confidentiality and Inventions Assignment Agreement ("Agreement") which you signed and agreed to. The Agreement states in pertinent part that you agree "to never discuss or disclose [any] trade secrets, confidential information or property, either directly or indirectly, with or in the presence of persons outside the Company, either during employment, or at any time thereafter...."

I was also told by Matt Hedrick that you suggested that he attempt to recruit Colleen O'Higgins to work for Playhut. Any such attempt to solicit the Company's personnel represents serious interference with the Company's business and financial interests and, if true, would violate that part of the Agreement in which you agreed to "maintain the same level of confidentiality regarding co-workers, employee relations matters, and Company operations" as regarding trade secrets and confidential information.

If I am incorrect, I would appreciate hearing from you and receiving your assurances that Mr. Hedrick and the industry sources are incorrect. However, please be aware that I will take any appropriate action with regard to safeguarding the Company's confidential information and improper attempts to solicit current employees.

Sincerely,

Isaac Larian
CEO

cc: Ruth Benson, ESQ.

MGA Entertainment, Inc., Ltd.

| U.S. Postal Service | | | |
|---|---|---|---|
| **CERTIFIED MAIL RECEIPT** | | | |
| (Domestic Mail Only; No Insurance Coverage Provided) | | | |
| Article Sent To: | | | |
| 90265 | | | |
| Postage | $ | $0.33 | 0253 |
| Certified Fee | | $1.40 | 02 |
| Return Receipt Fee (Endorsement Required) | | $1.25 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $2.98 | 11/10/2000 |
| Name (Please Print Clearly) (To be completed by mailer) | | | |
| MS. KAMI GILMORE | | | |
| 4341 OCEANVIEW DRIVE | | | |

EXHIBIT 43

PAGE 674

MGA 0886848

Confidential - Attorney's Eyes Only

**Michele Thompson**

| | |
|---|---|
| From: | Isaac Larian |
| Sent: | Tuesday, July 11, 2000 8:25 PM |
| To: | Kami Gillmour |
| Cc: | Michele Thompson |
| Subject: | RE: URGENT- CONFIDENTIAL |

We wish you all the best.

Please keep in mind the confidentiality agreement you have at MGA.

I would also ask that you turn over all materials and information in your possession ( including those given to you by Amanda) before you leave.

-----Original Message-----
| From: | Kami Gillmour |
|---|---|
| Sent: | Tuesday, July 11, 2000 7:24 PM |
| To: | Isaac Larian |
| Cc: | Michele Thompson |
| Subject: | URGENT- CONFIDENTIAL |

<< File: DOCUMENT.doc >>

1

EXHIBIT ___43___

PAGE ___675___

MGA 0886849

Confidential - Attorney's Eyes Only

**Eve Johnson**
To:          d
Subject:    FW: Kami Gilmore-For the file, also forward to the attorney who was handling this.

Importance: High

Good Morning Doug,

I am forwarding you the attached document/memo per the request of Isaac Larian, CEO of MGA. If you re-call Kami Gilmore was one of the previous employees you sent a letter to.  He would like for you to review the memo and hang on to it because he believes there will be further developments.

Thanks so much and enjoy the 3 day weekend, stay safe.

*Eve Johnson-Ford*
Human Resource Manager
MGA Entertainment
(818) 894- 2525 ext. 130
(818) 894- 1815 fax

-----Original Message-----
**From:**      **Isaac Larian**
**Sent:**      Friday, May 25, 2001 2:51 AM
**To:**        Eve Johnson
**Subject:**   Kami Gilmore-For the file, also forward to the attorney who was handling this.
**Importance:**   High


Kamie Gilmore.doc

Confidential - Attorney's Eyes Only

EXHIBIT ___43___

PAGE ___676___

MGA 0886850

**Didi Brown**

---

**From:**        Isaac Larian
**Sent:**        Monday, November 06, 2000 5:06 PM
**To:**          Didi Brown
**Subject:**      Memo to file regarding Kamei Gilmore- Breach of confidentiality agreement. Put this in Kamei's file

11-6-2000
About 4 pm.

I called Matt Hedrick, first at Playhut and then on his cell phone.

I complained to Matt about calling and recruiting MGA employees, in particular Colleen O'Higins.

Matt advised me that he did not know Colleen initially. He was given her name, qualification and current salary by Kamei Gilmore and was told by Kamei to call Colleen.

Isaac Larian

EXHIBIT ___43___

PAGE ___677___

Confidential - Attorney's Eyes Only

MGA 0886851

**EXHIBIT 44**



**Corporate Office:**
16730 Schoenborn Street
North Hills, CA 91343-6122 USA
Tel 818.894.2525
Fax 818.894.8094

April 4, 2000

Ms. Paula Treantafelles

Redacted

Dear Paula:

We are pleased to extend to you an offer of employment for the position of **Associate Product Manager** at MGA Entertainment.

Your compensation package will be as follows:

1. **Base Salary:**        **$50,000** per year, paid biweekly

2. **Bonus:**        Management Bonus Program: Up to **a maximum of 15%** of your base of $50,000. Your 2000 bonus is described in the attachment.

3. **Annual Review:**        You will be reviewed in January 2001.

4. **401(k) Plan:**        Will be eligible for enrollment in 401(k) Plan in January 2001. Company match to your contribution is 25% up to 5%.

5. **Business Travel:**        The Company will pay for coach class tickets for both international and domestic travel.

6. **Health Benefits:**        <u>Health Insurance:</u> There is no charge for you under HMO and a monthly fee for you and your dependents under the indemnity plan (see attachment).

**Hong Kong Office:**
Unit 707-8 Multifield Plaza
3-7A Prat Ave., TST,
Kowloon, Hong Kong
**Hong Kong Showroom:**
11 Canton Road, Suite 1015
TST, Kowloon
Tel 852.2926.8008




**EXHIBIT** _B_
**PAGE 8**

Confidential - Attorney's Eyes Only        MGA 0876578

Dental Plan:  There is no charge for you under DMO and a monthly fee for you and your dependents under the indemnity plan (see attachment).

Life Insurance:  1 x annual income, premium paid by Company.

Accidental Death & Dismemberment:  Up to 1x annual income, premium paid by Company.

7. **Vacation:**            Two weeks paid vacation per year

8. **Employee Handbook:**   MGA requires all employees to sign an Employee Handbook, which includes a Confidentiality Agreement, an "At Will Clause/Statement", and a Mutual Agreement to Arbitrate and Mediate.  These will be presented to you for your signature upon the commencement of your employment.

This agreement is binding upon Paula Treantafelles and ABC International Traders, Inc. and their respective heirs, successors, assignees, fiduciaries or other legal representatives.

I trust this offer letter addresses all open issues and look forward to an ongoing, productive relationship.

Sincerely,

*Mary Claire Tiffany*

Mary Claire Tiffany
Human Resources Manager

Enclosures

EXHIBIT B
PAGE 9

Confidential - Attorney's Eyes Only

MGA 0876579

## CONFIDE... IALITY AND INVENTIONS AS... GNMENT AGREEMENT

This Confidentiality and Inventions Agreement is executed by and between ABC Int' Traders, Inc. ("Company") and _PAMIA TReANA TCIICS-_____ ("Employee").

During the course of his/her employment at the Company, Employee will have access to, will acquire, and will become acquainted with trade secrets, confidential information and property related to the Company and its customers' and vendors' businesses. The Company's trade secrets include, but are not limited to, such information as customer names, addresses phone numbers, names, specific characteristics of suppliers and customers and thei respective employees with whom the Company has dealings (whether or not such informatior is contained on a Rolodex, computer printout, customer list, or is orally communicated to any Company employee in the course of their duties) and the history of purchases, along witt terms and conditions of credit offered to each customer; names, addresses, telephone numbers and specific characteristics of prospective customers and contacts; informatior regarding particular customer product peculiarities, manners of doing business, needs anc requirements; product specifications and performance needs for each customer; ana tne prices charged to each customer; customer information reports, pricing information (such as price lists, quotation guides, previous or outstanding quotations, equipment prices or billinç information), mailing labels, mailing plans and programs, sales report forms, pending project: or proposals, techniques used in approaches or results of any market research, advertisinç sources, employee salaries, contracts and wage information, names and addresses of the vendors, manufacturers, and other suppliers of Company products, the products they supply the applicable prices and discounts, and the applicable product specifications; new product: or inventions developed or under development by the Company; formulas, patterns compilations, programs, devises, methods, techniques, processes, pictures, contracts, files methods or production (including quality control and packaging), proposals, business plan: and projections, budgets, financial information, software, hardware, any patent application o the contents thereof; and all other material relating in any manner whatsoever to the customers products, vendors, and suppliers of Company, including matters which shoulc reasonably be considered trade secrets even if not expressly described herein.

All information obtained in the course of Employee's employment is to be used only fo the purpose of conducting the Company's business. Employee agrees to never discuss o disclose such trade secrets, confidential information or property, either directly or indirectly with or in the presence of persons outside the Company, either during employment, or at any time thereafter, except as required by Employee's supervisor. Employee further agrees tha information in any form, including but not limited to documents, tapes, lists, computei printouts, studies, reports, drafts, pictures, charts, maps, drawings, programs, equipment scrap, blueprints, vendor lists, customer lists, client billing information, all financial reports payroll information, records, files and other materials pertaining to the Company, its customers and vendors, may not be removed from the facilities without the advance writter permission of Employee's supervisor.

Employee acknowledges that all such trade secrets or confidential information, or any copies of summaries thereof, whether prepared by Employee, by the Company, or provided tc Employee by the Company, is the exclusive property of the Company. On demand or termination of employment for any reason, Employee agrees to return to the Company al

Confidential - Attorney's Eyes Only

MGA 0876580

papers, records, electronic copies, and documents in employee's possession or obtained during the course of Employee's employment with the Company and Employee further agrees that he/she will not retain any copies, nor permit anyone to retain any copies thereof, except that those who have successfully completed their 90 day introductory period may keep their Franklin Planner.

Employee acknowledges and agrees that the trade secrets described herein have independent economic value in that they are not generally known within the trade they represent many years of research and development and give the Company substantial competitive advantages.

As a condition of employment, Employee agrees that he/she (1) will regard and preserve the confidential information as highly confidential and as the trade secrets of the Company; (2) will not, at any time during or within twelve months after the termination of his/her employment with the Company, reveal, disclose, permit to be disclosed, or make known to any person, firm or corporation, any confidential information which was disclosed to Employee or of which he/she became aware during his/her employment, regardless of whether developed, prepared or created in whole or in part by Employee's efforts, except to the extent that such disclosure is necessary and is authorized in writing by the Company to carry out Employee's duties of employment; (3) will retain all confidential information in trust for the sole benefit of the Company and will not disclose to or use any confidential information in an independent business related to the scope of the Company's business (designer manufacturer and distributor of toy); (4) will not photocopy or duplicate, and will not permit any person to photocopy or duplicate, any of the confidential information without the Company's written consent and approval; (5) will not make any use of confidential information for his/her own benefit or the benefit of any person or entity other than the Company; (6) will return all confidential information (including but not limited to customer lists, books maintained by Employee, and source lists) to the Company immediately upon request for same. Employee agrees that if he/she has any questions about whether a matter is a trade secret, to seek a determination by the Company before he/she uses any such information.

Employee agrees to maintain the same level of confidentiality regarding co workers, employee relation matters, and Company operations. Employee agrees, by accepting employment or continued employment with the Company, to comply with these rules and to maintain confidentiality of the Company's trade secrets.

Employee understands and acknowledges that the trade secrets and confidential information of the Company are not known to the general public and are the subject of reasonable efforts to maintain its secrecy. They are of a special, unique and extraordinary character, which gives them a particular value, the loss of which cannot be reasonably compensated in damages in an action at law. Employee further understands and agrees that in addition to any other rights or remedies which the Company may have, the Company shall be entitled to immediate injunctive and other equitable relief to prevent a breach of this Confidentiality and Inventions Agreement. If any legal proceeding arises under this Confidentiality and Inventions Agreement, the prevailing party shall be entitled to recover all costs and expenses, including reasonable attorney's fees and costs. California law shall apply to this agreement as to contracts wholly performed within the state.

EXHIBIT B
PAGE 11

Employee and the Company agree that this Confidentiality and Inventions Agreement shall not apply to information that Employee was aware of prior to his/her employment with the Company, or that is otherwise publicly known.

Employee further agrees that during his/her employment and for a period of twelve months after termination, Employee will not solicit the purchase of any products or service from any supplier or vendor who supplies products or services to the Company.

INVENTIONS ASSIGNMENT:

1. ASSIGNMENT OF INTEREST: Employee agrees to assign, and does hereby assign, to Company all interest which employee may have in all patentable and/or not-patentable ideas and/or inventions made or conceived by Employee solely or jointly with others during Employee's employment with Company. This assignment shall not apply to any idea or invention developed by Employee entirely on Employee's own time without equipment supplies, facilities, or trade secret information of Company, unless such invention or idea: (1) relates to the business of company or to Company's actual or anticipated research or development, or (2) results from any work performed by Employee for Company. THIS AGREEMENT DOES NOT APPLY TO ANY INVENTION WHICH QUALIFIES FULLY UNDER THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 2870.

2. DISCLOSURE OF IDEAS OR INVENTIONS: Employee agrees to promptly disclose in writing to Fred Larian all inventions developed solely or jointly with others during Employee's employment with Employer, whether such inventions are patentable, not-patentable or assignable under this Agreement. Employer agrees to maintain such disclosure in confidence.

3. WRITTEN DISCLOSURE OF PRIOR INVENTIONS: Employee agrees to provide a complete list of all patented or not-patented ideas and inventions conceived by Employee or anyone else jointly with Employee, prior to the date Employee has signed this Agreement. The failure of Employee to provide Company with a written disclosure of ideas or inventions shall be deemed to constitute an affirmative acknowledgment by Employee that no such ideas or inventions exist.

If any provision of this Confidentiality and Inventions Agreement is held to be invalid or unenforceable, in whole or in part, the remaining portions of this Agreement shall continue to be valid and will be performed, construed and enforced to the fullest extent permitted by law. The invalid or unenforceable provision shall be deemed amended and limited in accordance with the intent of the parties, as determined from the face of this Agreement, to the extent necessary to permit the maximum enforceability or validation of the provision.

| 04·17·00 | _Pawatuunatang_ | _Paula Treavatatchs_ |
|---|---|---|
| Date | Employee Signature | Employee Name (printed) |

|  |  | _Eve Johnson-Fach_ |
|---|---|---|
| Date | Employer Signature | Name (printed) |

Confidential - Attorney's Eyes Only

EXHIBIT *B*
PAGE 12

MGA 0876582

## MUTUAL AGREEMENT TO MEDIATE AND/OR ARBITRATE

We recognize that differences may arise between us. Through this mutual agreement to mediate and/or arbitrate("Agreement"), _____ PAULA YCANTOICZ _____ ("Employee"), and ABC Int'l Traders Inc. ("Company") expect to gain the benefits of a speedy, economical, impartial dispute resolution procedure. This Agreement provides as follows:

This Agreement shall apply to all disputes or controversies, whether or not arising out of Employee's employment (or termination of that employment), that the Company may have against Employee, or that employee may have against the Company or against its officers, directors, employees, or agents("Claims"). The Claims include, but are not limited to, controversies relating to: compensation or benefits, breach of any contract, torts, discrimination under state, federal or local law, and violation of any federal, state or other governmental law, statute, regulation or ordinance. However, this Agreement shall not apply to any claim: (a) by the employee for workers' compensation or unemployment benefits; or (b) by the Company for injunctive and/or other equitable relief; including, but not limited to, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information. With respect to matters referred to in sub-paragraph (b) above, the company may seek and obtain injunctive relief in court, and then proceed with arbitration under the Agreement.

**EACH PARTY WAIVES THE RIGHT TO A JURY TRIAL OR COURT TRIAL. THE SOLE AND EXCLUSIVE METHOD TO RESOLVE ANY CLAIM IS MEDIATION AND/OR ARBITRATION AS PROVIDED IN THIS AGREEMENT.** The parties each waive their right to commence an action in any court to resolve a Claim. Neither party shall initiate or prosecute any lawsuit in any way related to any claim covered by this Agreement.

Any Claim by employee or the company must be processed in the manner set forth below. Otherwise, the Claim shall be void and deemed waived even if there is a  federal or state statute of limitations which would allow more time to pursue the Claim.

An Employee Claim must initially be raised verbally by Employee to the person(s) involved. If the issue cannot be resolved, the matter must be presented to the Employee's immediate supervisor within one year after you initially knew or should have known of the facts that gave rise to the Claim. The supervisor will answer the Claim within fifteen (15) days from the date the Claim was presented. If the supervisor fails to respond, then it will be considered a denial of your Claim.

If Employee is not satisfied with the supervisor's answer, or the nature of the Claim is such that Employee does not wish to present it to his supervisor, the Employee may obtain the assistance of the President, who will discuss the Claim with Employee and assist, if Employee desires assistance, in presenting the Claim in written form to the Company. Employee must present the Claim in writing to the President within fifteen (15) working days after Employee receives the supervisor's answer. However, if Employee decides not to present the Claim to his or her supervisor, Employee must present the Claim to the President, in writing, within one year after Employee initially knew or should have known of the facts that gave rise to the Claim. If Employee does not present the Claim in writing to the President within 15 days or one year, whichever is applicable, then Employee will be deemed to have accepted the Company's last stated position on the Claim and waived the right to further contest the Claim.

The President will consider Employee's written presentation, and any other information that Employee deems relevant. The President will render a written decision within fifteen (15) working

EXHIBIT _B_
PAGE 13

MGA 0876583

days. This decision will be mailed to Employee's address, as it appears in the Company's records. If the Company fails to respond, it will be deemed a denial of your Claim.

If Employee is not satisfied with the President's decision, Employee may request a voluntary, non-binding mediation. If mediation is selected, Employee and the Company agree to utilize mediation in good faith with the goal of resolving the Claim. If the parties cannot mutually agree on the mediator, they will utilize the American Arbitration Association ("AAA") mediation dispute resolution procedures. The mediation shall take place in or near the city in which Employee resided when last employed by the Company. If mediation does not result in a settlement of the Claim, either party may serve written notice to the other party of its intention to proceed to arbitrate within fifteen (15) days from the termination of the mediation.

If Employee does not desire to mediate the Claim, then he or she may present the Claim for resolution by final and binding arbitration. Employee must serve written notice on the Company of his or her intention to arbitrate within ninety (90) days from the mailing of the President's final decision.

If the Company desires to initiate arbitration to resolve a Claim against Employee, it must serve written notice on Employee within one year after it initially knew or should have know of the facts that gave rise to its Claim.

The written notice of desire to arbitrate shall describe the factual basis of all Claims asserted, and shall be served on the other party by certified mail, return receipt requested. Written notice to Employee will be mailed to his or her address as it appears in the Company's records. Written notice to the Company, or its officers, directors, employees or agents, shall be sent to the President at the Company's principal place of business. If written notice of desire to arbitrate is not served within the applicable time period, the party who failed to timely serve notice will be deemed to have waived the right to further contest the Claim and will be deemed to have accepted the other party's last stated position on the Claim.

The arbitration shall be conducted in accordance with the then-current Model Employment Arbitration Procedures of the AAA before a single arbitrator. The Arbitrator shall be selected in the following manner. The AAA shall give each party a list of 11 arbitrators drawn from its panel of labor of employment arbitrators. Each side may strike all names on the list it deems unacceptable. If only one common name remains on the list of all parties, that individual shall be the Arbitrator. If more than one common name remains on the list of all parties, the parties shall strike names alternately, in a telephone conference no more than five days after the parties receive notice that more than one acceptable arbitrator remains, until only one remains. If no common name remains on the list of all parties, the AAA shall furnish one additional list, and the above procedures will be utilized. If no arbitrator is designated from the second list, the procedures of the AAA rules will be used to select the Arbitrator.

Either party may be represented by an attorney or other representative selected by the party. The parties waive the provision of California Code of Civil Procedure Section 1283.05. Each party shall have the right to take the deposition of one individual from, any expert witness designated by, and the other party. Each party also shall have the right to make requests for production of documents to any party. Additional discovery may be had only where the arbitrator so orders, upon a showing of substantial need. All issues related to discovery will be resolved by the Arbitrator.

Confidential - Attorney's Eyes Only

EXHIBIT $\beta$
PAGE 14

MGA 0876584

The Arbitrator will have no authority to: (i) adopt new Company policies or procedures, (ii) modify the Agreement or existing Company policies, procedures, wages or benefits, or (iii) hear or decide any matter that was not processed in accordance with this Agreement. The Arbitrator shall have exclusive authority to resolve any Claim, including, but not limited to, a dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, or any contention that all or any part of this Agreement is void or voidable. The Arbitrator will have the authority to award any form or remedy or damages that would be available in a court.

Employee and the Company each agree to pay one half of the reasonable and necessary fees of the AAA and the mediator and/or Arbitrator. The parties will pay their own attorneys' fees and expenses associated with the mediation and/or arbitration. Either party, in its sole discretion, may, in writing, waive, in whole or in part, the other's failure to follow any time limit or other requirement set forth in the Agreement.

To the extent permitted by law, Employee agrees not to initiate or prosecute against the Company any administrative action (including an administrative charge of discrimination to the extent permitted by law) in any way related to any Claim covered by this Agreement.

The mediation and/or arbitration will be conducted in private, and will not be open to the public or the media. The testimony and other evidence presented, and the results of the mediation and/or arbitration, unless otherwise agreed to by both parties, is confidential and may not be disclosed, made public or reported to any person or entity, including, but not limited to, any legal or news agency, publisher or service, except pursuant to a court order, provided that the Company or Employee gives sufficient prior written notice of any judicial proceeding at which a court order is being sought, to enable the other to seek a protective order before disclosure occurs.

The Arbitrator shall render a written decision and the award (the "Award" ) shall set forth the facts and reasons that support the Award. The Award shall be final and binding on both you and the Company. This Agreement shall survive the termination of your employment, and can only be revoked or modified by a writing signed by the parties which specifically states an intent to revoke or modify the Agreement. This is the complete agreement of the parties on the subject of dispute resolution, mediation or arbitration of disputes.

**NOTICE: BY SIGNING THE AGREEMENT, YOU ARE AGREEING THAT ALL CLAIMS WILL BE DECIDED BY NEUTRAL MEDIATION AND/OR ARBITRATION, AND YOU ARE GIVING UP YOUR RIGHT TO A JURY TRIAL OR COURT TRIAL.**

04·17·00 _____  *Paula Treantafelles*  Paula Treantafelles
Date                Employee Signature        Employee Name (printed)

_____            _____                Eric Johnson-Frd
Date                Employer Signature        Name (printed)

Confidential - Attorney's Eyes Only    EXHIBIT 6 PAGE 15    MGA 0876585

**EXHIBIT 45**

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL,      )
                                   )
                   PLAINTIFF,      )
                                   )
        V.                         )        NO.  CV 04-9040 SGL (RNBX)
                                   )
MATTEL, INC., A DELAWARE           )
CORPORATION,                       )
                                   )
                   DEFENDANTS.     )
_____   )
                                   )
AND CONSOLIDATED ACTION (S).       )
_____   )

# C O N F I D E N T I A L

## (ATTORNEYS' EYES ONLY)

# DEPOSITION OF PAULA GARCIA

# VOLUME IV

# OCTOBER 10, 2007

REPORTED BY:
J'ANA SIEGERS
CSR NO.  10845
JOB NO. 07AE634-JS

EXHIBIT ___45___

PAGE ___686___

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF

3              EASTERN DIVIS

4

5    CARTER BRYANT, AN INDIVIDUAL,)
                                 ) (
6                  PLAINTIFF,    ) CV 04-9049 SGL (RNBX)
                                 )
7        VS.                     )
                                 )
8    MATTEL, INC., A DELAWARE    )
     CORPORATION,                )
9                                )
                   DEFENDANT.    )
10                               )
     _____)
11                               )
     AND CONSOLIDATED ACTIONS.   )
12   _____)

13

14

15

16        CONFIDENTIAL - ATTORNEYS' EYES ONLY

17

18              VOLUME IV

19

20       VIDEOTAPED DEPOSITION OF **PAULA GARCIA**,

21    TAKEN ON BEHALF OF THE DEFENDANT, AT

22    865 SOUTH FIGUEROA STREET, TENTH FLOOR,

23    LOS ANGELES, CALIFORNIA, COMMENCING AT

24    10:22 A.M., WEDNESDAY, OCTOBER 10, 2007,

25    BEFORE J'ANA SIEGERS, CSR NUMBER 10845.    45

EXHIBIT _____

PAGE _____ 687

963

```
 1    APPEARANCES OF COUNSEL:

 2

 3    FOR PLAINTIFF CARTER BRYANT:

 4         KEKER & VAN NEST, LLP
           BY:  MICHAEL H. PAGE, ESQ.
 5         710 SANSOME STREET
           SAN FRANCISCO, CALIFORNIA 94111
 6         (415) 391-5400
           MPAGE@KVN.COM
 7

 8
      FOR DEFENDANT MATTEL, INC.:
 9
           QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
10         BY:  MICHAEL T. ZELLER, ESQ.
                BRIDGET HAULER, ESQ.
11         865 SOUTH FIGUEROA STREET
           TENTH FLOOR
12         LOS ANGELES, CALIFORNIA 90017-2543
           (213) 443-3000
13         MICHAELZELLER@QUINNEMANUEL.COM
           BRIDGETHAULER@QUINNEMANUEL.COM
14

15
      FOR MGA ENTERTAINMENT, INC.:
16
           O'MELVENY & MYERS, LLP
17         BY:  DIANA M. TORRES, ESQ.
           400 SOUTH HOPE STREET
18         LOS ANGELES, CALIFORNIA 90071-2899
           (213) 430-6000
19         DTORRES@OMM.COM

20

21

22    ALSO PRESENT:

23         PETER ACHESON, JTV LITIGATION SERVICES, INC.

24         MICHAEL MOORE, MATTEL, INC.

25         RICH DANIELS, MGA ENTERTAINMENT, INC.
```

EXHIBIT _____ 45

PAGE _____ 688                    964

| | | |
|---|---|---|
| 05:36:57 | 1 | ASSIGN AND DOES HEREBY ASSIGN TO THE COMPANY ALL |
| 05:37:02 | 2 | INTERESTS WHICH THE EMPLOYEE MAY HAVE IN ALL |
| 05:37:05 | 3 | PATENTABLE AND/OR NONPATENTABLE IDEAS AND/OR |
| 05:37:08 | 4 | INVENTIONS MADE OR CONCEIVED BY THE EMPLOYEE SOLELY |
| 05:37:11 | 5 | OR JOINTLY WITH OTHERS DURING EMPLOYEE'S EMPLOYMENT |
| 05:37:16 | 6 | WITH THE COMPANY" -- IS THAT LANGUAGE UNCLEAR TO |
| 05:37:18 | 7 | YOU? |
| 05:37:18 | 8 | MS. TORRES:  OBJECTION.  COMPOUND. |
| 05:37:29 | 9 | THE DEPONENT:  YES, A BIT. |
| 05:37:31 | 10 | BY MR. ZELLER: |
| 05:37:35 | 11 | Q.   BY THE WAY, WHEN YOU SIGNED YOUR MGA |
| 05:37:37 | 12 | EMPLOYMENT CONTRACT, DID YOU NEGOTIATE IT WITH MGA? |
| 05:37:42 | 13 | MS. TORRES:  OBJECTION.  ASSUMES FACTS NOT |
| 05:37:44 | 14 | IN EVIDENCE AND VAGUE. |
| 05:37:52 | 15 | THE DEPONENT:  NO, I DON'T BELIEVE I DID. |
| 05:37:53 | 16 | BY MR. ZELLER: |
| 05:37:54 | 17 | Q.   DID ANYONE AT MGA TELL YOU YOU SHOULD GET |
| 05:37:56 | 18 | A LAWYER BEFORE YOU SIGNED YOUR CONTRACT? |
| 05:37:58 | 19 | MS. TORRES:  OBJECTION.  ASSUMES FACTS NOT |
| 05:38:00 | 20 | IN EVIDENCE. |
| 05:38:01 | 21 | THE DEPONENT:  NO. |
| 05:38:01 | 22 | BY MR. ZELLER: |
| 05:38:02 | 23 | Q.   DID ANYONE AT MGA OFFER TO PAY FOR A |
| 05:38:04 | 24 | LAWYER TO NEGOTIATE FOR YOU ON YOUR BEHALF BEFORE |
| 05:38:09 | 25 | SIGNING THE AGREEMENT -- THE EMPLOYMENT AGREEMENT |

EXHIBIT ___45___

PAGE ___689___

1218

| | | |
|---|---|---|
| 05:38:11 | 1 | WITH MGA? |
| 05:38:12 | 2 | MS. TORRES:  SAME OBJECTION. |
| 05:38:13 | 3 | THE DEPONENT:  NOT THAT I WAS AWARE OF. |
| 05:38:14 | 4 | BY MR. ZELLER: |
| 05:38:16 | 5 | Q.  ARE YOU AWARE OF ANY TIME MGA SUGGESTING |
| 05:38:19 | 6 | TO ANY EMPLOYEE THAT THAT EMPLOYEE HIRE A LAWYER TO |
| 05:38:23 | 7 | NEGOTIATE THE EMPLOYMENT AGREEMENT THAT MGA HAS ITS |
| 05:38:26 | 8 | EMPLOYEES SIGN? |
| 05:38:29 | 9 | MS. TORRES:  CAN YOU READ BACK THE |
| 05:38:29 | 10 | QUESTION? |
| | 11 | (THE DEPOSITION OFFICER READ THE |
| | 12 | RECORD AS FOLLOWS: |
| | 13 | "QUESTION:  ARE YOU AWARE OF ANY |
| | 14 | TIME MGA SUGGESTING TO ANY EMPLOYEE |
| | 15 | THAT THAT EMPLOYEE HIRE A LAWYER TO |
| | 16 | NEGOTIATE THE EMPLOYMENT AGREEMENT |
| | 17 | THAT MGA HAS ITS EMPLOYEES SIGN?") |
| 05:38:43 | 18 | MS. TORRES:  OBJECTION.  LACK OF |
| 05:38:44 | 19 | FOUNDATION AND ASSUMES FACTS NOT IN EVIDENCE. |
| 05:38:49 | 20 | THE DEPONENT:  NOT THAT I'M AWARE OF. |
| 05:38:53 | 21 | MR. ZELLER:  LET'S PLEASE MARK AS |
| 05:38:54 | 22 | EXHIBIT 1117 A MULTIPAGE DOCUMENT BEARING BATES |
| 05:38:57 | 23 | NUMBER MGA 0876578 THROUGH 85. |
| | 24 | /// |
| | 25 | /// |

EXHIBIT _____45_____

PAGE _____690_____

1219

1          *(DEFENDANT'S EXHIBIT 1117 WAS*

2          *MARKED FOR IDENTIFICATION BY THE*

3          *DEPOSITION OFFICER AND IS BOUND*

4          *SEPARATELY.)*

05:40:23  5  BY MR. ZELLER:

05:40:24  6          Q.    DO YOU RECOGNIZE THE FIRST TWO PAGES OF

05:40:26  7  EXHIBIT 1117 AS A LETTER THAT YOU RECEIVED FROM MGA

05:40:30  8  ON OR ABOUT APRIL 4, 2000?

05:40:34  9          A.    YES.

05:40:36 10          Q.    AND YOU RECOGNIZE THIS AS A LETTER

05:40:41 11  REFLECTING AN OFFER OF EMPLOYMENT TO YOU BY MGA; IS

05:40:44 12  THAT CORRECT?

05:40:46 13          A.    YES.

05:40:47 14          Q.    DIRECTING YOUR ATTENTION TO THE PAGES THAT

05:40:51 15  END IN 80 THROUGH 82 --

05:40:57 16          A.    YES.

05:40:58 17          Q.    -- YOU SEE THESE PAGES ARE THE

05:41:00 18  CONFIDENTIALITY AND INVENTIONS ASSIGNMENT AGREEMENT

05:41:02 19  THAT YOU SIGNED?

05:41:05 20          A.    YES.

05:41:05 21          Q.    THAT'S YOUR SIGNATURE ON THE PAGE ENDING

05:41:08 22  IN 82?

05:41:10 23          A.    YES.

05:41:11 24          Q.    AND THIS IS A -- AN EMPLOYMENT AGREEMENT

05:41:14 25  THAT YOU SIGNED WITH MGA IN APRIL OF 2000; IS THAT

EXHIBIT _____ 45

PAGE _____ 691                                    1220

| | | |
|---|---|---|
| 05:41:16 | 1 | CORRECT? |
| 05:41:17 | 2 | MS. TORRES:  OBJECTION.  CALLS FOR A LEGAL |
| 05:41:17 | 3 | CONCLUSION.  MISCHARACTERIZES THE DOCUMENT. |
| 05:41:25 | 4 | THE DEPONENT:  YES. |
| 05:41:25 | 5 | BY MR. ZELLER: |
| 05:41:27 | 6 | Q.  DIRECTING YOUR ATTENTION TO THE LAST THREE |
| 05:41:29 | 7 | PAGES OF EXHIBIT 1117 -- THOSE ARE THE PAGES ENDING |
| 05:41:33 | 8 | IN 83 THROUGH 85 -- DO YOU SEE THAT THIS IS A MUTUAL |
| 05:41:37 | 9 | AGREEMENT TO MEDIATE AND/OR ARBITRATE? |
| 05:41:40 | 10 | A.  YES. |
| 05:41:47 | 11 | Q.  IS THAT AN AGREEMENT THAT YOU SIGNED? |
| 05:41:47 | 12 | A.  YES. |
| 05:41:47 | 13 | Q.  AND THAT'S AN AGREEMENT THAT YOU SIGNED IN |
| 05:41:48 | 14 | APRIL OF 2000; IS THAT CORRECT? |
| 05:41:51 | 15 | A.  YES. |
| 05:41:53 | 16 | Q.  NOW, DID YOU READ ANY OF THESE PAGES BACK |
| 05:41:57 | 17 | IN APRIL OF 2000? |
| 05:42:04 | 18 | A.  I DON'T BELIEVE SO. |
| 05:42:08 | 19 | Q.  DIRECTING YOUR ATTENTION TO THE SECOND |
| 05:42:10 | 20 | PAGE -- |
| 05:42:11 | 21 | A.  YES. |
| 05:42:11 | 22 | Q.  -- OF THIS EXHIBIT, 1117, DO YOU SEE UNDER |
| 05:42:16 | 23 | ITEM 8: |
| 05:42:17 | 24 | "MGA REQUIRES ALL EMPLOYEES TO |
| 05:42:20 | 25 | SIGN AN EMPLOYEE HANDBOOK, WHICH |

EXHIBIT _____ 45

PAGE _____ 692

1221

05:42:22   1          INCLUDES A CONFIDENTIALITY AGREEMENT,
05:42:25   2          AN 'AT-WILL CLAUSE/STATEMENT,' AND A
05:42:27   3          MUTUAL AGREEMENT TO ARBITRATE AND
05:42:29   4          MEDIATE"?
05:42:29   5              DO YOU SEE THAT?
05:42:31   6      A.   YES.
05:42:31   7      Q.   AND IT GOES ON TO SAY:
05:42:33   8              "THESE WILL BE PRESENTED TO YOU
05:42:34   9          FOR YOUR SIGNATURE UPON THE
05:42:36  10          COMMENCEMENT OF YOUR EMPLOYMENT."
05:42:37  11              DO YOU SEE THAT?
05:42:38  12      A.   YES.
05:42:38  13      Q.   DID YOU UNDERSTAND THAT YOU WERE REQUIRED
05:42:41  14   TO SIGN THE CONFIDENTIALITY AND INVENTIONS
05:42:46  15   ASSIGNMENT AGREEMENT AS A TERM OF YOUR EMPLOYMENT AT
05:42:49  16   MGA?
05:42:51  17              MS. TORRES:  CAN YOU READ BACK THE
05:42:52  18   QUESTION?
          19              (THE DEPOSITION OFFICER READ THE
          20          RECORD AS FOLLOWS:
          21              "QUESTION:  DID YOU UNDERSTAND
          22          THAT YOU WERE REQUIRED TO SIGN THE
          23          CONFIDENTIALITY AND INVENTIONS
          24          ASSIGNMENT AGREEMENT AS A TERM OF
          25          YOUR EMPLOYMENT AT MGA?")

EXHIBIT ____ 45

PAGE ____ 693                                1222

| | | |
|---|---|---|
| 05:43:05 | 1 | MS. TORRES:  OBJECTION.  CALLS FOR A LEGAL |
| 05:43:07 | 2 | CONCLUSION.  LACK OF FOUNDATION.  CALLS FOR |
| 05:43:08 | 3 | SPECULATION. |
| 05:43:11 | 4 | THE DEPONENT:  I BELIEVE SO, YES. |
| 05:43:12 | 5 | BY MR. ZELLER: |
| 05:43:13 | 6 | Q.   YOU UNDERSTOOD THAT TO GET THE JOB AT MGA, |
| 05:43:16 | 7 | MGA WAS REQUIRING YOU TO SIGN THAT AGREEMENT; IS |
| 05:43:18 | 8 | THAT TRUE? |
| 05:43:22 | 9 | MS. TORRES:  SAME OBJECTIONS. |
| 05:43:27 | 10 | THE DEPONENT:  I DON'T -- I DO NOT KNOW IF |
| 05:43:28 | 11 | THAT'S TRUE. |
| 05:43:33 | 12 | BY MR. ZELLER: |
| 05:43:33 | 13 | Q.   DID YOU ASK ANYONE WHETHER OR NOT YOU |
| 05:43:34 | 14 | COULD GET A JOB THERE AT MGA IF YOU DIDN'T SIGN THE |
| 05:43:37 | 15 | CONFIDENTIALITY AND INVENTIONS ASSIGNMENT AGREEMENT? |
| 05:43:39 | 16 | A.   NO. |
| 05:43:40 | 17 | Q.   ARE YOU AWARE OF ANY EMPLOYEE AT MGA |
| 05:43:43 | 18 | REFUSING TO SIGN THE CONFIDENTIALITY AND INVENTIONS |
| 05:43:45 | 19 | ASSIGNMENT AGREEMENT AND STILL GETTING A JOB THERE |
| 05:43:48 | 20 | AT MGA? |
| 05:43:49 | 21 | A.   NO. |
| 05:43:51 | 22 | Q.   IT'S FAIR TO SAY THAT IT'S YOUR |
| 05:43:53 | 23 | UNDERSTANDING AND EXPECTATION THAT IF A PROSPECTIVE |
| 05:43:57 | 24 | EMPLOYEE, SOMEONE WHO WANTED TO WORK THERE AT MGA, |
| 05:43:59 | 25 | SAID THAT HE OR SHE WOULD NOT SIGN THIS AGREEMENT, |

EXHIBIT _____ 45

PAGE _____ 694

1223

06:59:13   1   PLEASE TAKE A BREAK?  BECAUSE I'M JUST GETTING

06:59:15   2   REALLY TIRED, AND I THINK THAT'S WHY I'M ASKING TO

06:59:19   3   REPEAT QUESTIONS AND STUFF.

06:59:23   4   BY MR. ZELLER:

06:59:24   5       Q.   YOU SEE ON EXHIBIT 537 SHE SAYS THAT SHE

06:59:30   6   IS SENDING COMPETITOR DOLLS, RIGHT?

06:59:34   7         MS. TORRES:  MIKE, ARE YOU DENYING HER A

06:59:35   8   BREAK?

06:59:36   9         MR. ZELLER:  OH, IF SHE WANTS A BREAK, NO.

06:59:38   10   SHE CAN TAKE A BREAK.

06:59:38   11         MS. TORRES:  OKAY.  THAT'S WHAT SHE JUST

06:59:40   12   SAID.

06:59:40   13         MR. ZELLER:  OH, NO.  I'M SORRY.  I DIDN'T

06:59:41   14   HEAR THAT.  NO, ABSOLUTELY YOU CAN HAVE A BREAK.  I

06:59:43   15   APOLOGIZE.

06:59:44   16         THE VIDEOGRAPHER:  THE TIME IS 6:59 P.M.,

06:59:46   17   AND WE ARE OFF THE RECORD.

        18           (RECESS TAKEN.)

07:14:48   19         THE VIDEOGRAPHER:  THE TIME IS 7:14 P.M.,

07:14:50   20   AND WE ARE ON THE RECORD.

07:14:53   21         MR. PAGE:  MIKE, BEFORE YOU CONTINUE, JUST

07:14:54   22   FOR THE RECORD, I WANT TO RENEW OUR OBJECTION TO NOT

07:14:58   23   BEING PERMITTED TO ASK QUESTIONS OF THIS WITNESS.

07:15:00   24   AS YOU KNOW, WE TRIED TO REACH JUDGE INFANTE, BUT HE

07:15:04   25   WAS UNAVAILABLE TODAY.  IT'S OUR POSITION THAT WE

EXHIBIT   45

PAGE   695

1275