CONFIDENTIAL

TO: M.G.A. ENTERTAINMENT

| NAME ANNA RHEE | SHIP TO |
| ADDRESS 1613 FORD AVE. | ADDRESS |
| CITY, STATE, ZIP REDONDO BCH CA. 90278 | CITY, STATE, ZIP |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|---|---|---|---|---|---|---|
| | | | | 30 DAYS | | 9 / 22 /01 |

| QUANTITY | DESCRIPTION | | PRICE | AMOUNT |
|---|---|---|---|---|
| 1 | Pair of large rotocast shoes | price → | $ | 100. 00 |
| | | tax → | $ | 8. 00 |
| | | TOTAL PRICE | $ | 108. 00 |
| | INCLUDING TAX | | | |

Request by Maureen Midler

BUYER:

Adams 8100

KEEP THIS SLIP FOR REFERENCE

EXHIBIT 72

PAGE 1175

AR 0048

CONFIDENTIAL

TO MGA ENTERTAINMENT

| NAME ANNA RHEE | SHIP TO | | | | |
|---|---|---|---|---|---|
| ADDRESS 1613 FORD AVE. | ADDRESS | | | | |
| CITY, STATE, ZIP REDONDO BCH, CA. 90278 | CITY, STATE, ZIP | | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS 30 DAYS | HOW SHIP | DATE 9/24/01 |
|---|---|---|---|---|---|---|

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 3 | Angel Faces | | 600. 00 |
| 1 | Baby Check-up face chart | | 200. 00 |
| | price → | | $ 800. 00 |
| | tax → | | $ 64. 00 |
| | TOTAL PRICE → | | $ 864. 00 |
| | INCLUDING TAX | | |
| | | | |
| | Request by Ninette Pendleton | | |
| | | | |
| | 1 (818) 894-2525 | | |
| | X 141 | | |

BUYER:

KEEP THIS SLIP FOR REFERENCE

EXHIBIT 72

PAGE 1176

201-44

AR 0049

CONFIDENTIAL

TO : MG.A . ENTERTAINMENT

| NAME ANNA RHEE | SHIP TO |
|---|---|
| ADDRESS 1613 FORD AVE. | ADDRESS |
| CITY, STATE, ZIP  R . B .  CA . 90278 | CITY, STATE, ZIP |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS 30 DAYS | HOW SHIP | DATE 9 / 26 / 01 |
|---|---|---|---|---|---|---|

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 1 | Set of Sugar Plum Toy (including pet) | | |
| | price → | $ | 325.00 |
| | tax → | $ | 26.00 |
| | TOTAL PRICE → | $ | 351.00 |
| | INCLUDING TAX | | |
| | | | |
| | | | |
| | Request by Carter Bryant | | |

BUYER:

Adams 8100

KEEP THIS SLIP FOR REFERENCE

EXHIBIT 72

PAGE 1177

201-5

AR 0050

CONFIDENTIAL

TO: M.GA. ENTERTAINMENT

| NAME | SHIP TO |
| --- | --- |
| ANNA RHEE | |
| ADDRESS | ADDRESS |
| 1613 FORD AVE. | |
| CITY, STATE, ZIP | CITY, STATE, ZIP |
| REDONDO BCH, CA. 90278 | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | 30 DAYS | | 9 / 30 / 01 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
| --- | --- | --- | --- |
| 1 | Make-up Bratz Hispanic Head (Ex. Large) price → | $ | 250.00 |
| | tax → | $ | 20.00 |
| | TOTAL PRICE → | $ | 270.00 |
| | INCLUDING TAX | | |

Request by Paula Treantafelles

BUYER:

⊑Adams
8100

KEEP THIS SLIP FOR REFERENCE

EXHIBIT    72

PAGE    1178

501-51
AR 0051

CONFIDENTIAL

TO: M.G.A. ENTERTAINMENT

| NAME ANNA RHEE | SHIP TO | | | | | |
|---|---|---|---|---|---|---|
| ADDRESS 1613 FORD AVE. | ADDRESS | | | | | |
| CITY, STATE, ZIP REDONDO BCH, CA. 90278 | CITY, STATE, ZIP | | | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|---|---|---|---|---|---|---|
| | | | | 30 DAYS | | 10/9/01 |

| QUANTITY | DESCRIPTION | | PRICE | AMOUNT |
|---|---|---|---|---|
| 4 | Bratz Heads (photo shoot) | price → | 800 | 00 |
| | | tax → | 64 | 00 |
| | TOTAL PRICE → | | 864 | 00 |
| | INCLUDING TAX | | | |
| | | | | |
| | | | | |
| | | | | |
| | Request by Paula Treantafeller | | | |

BUYER:

Adams 8100

KEEP THIS SLIP FOR REFERENCE

201-52

EXHIBIT 72

PAGE 1179

AR 0052

CONFIDENTIAL

TO: M.G.A. ENTERTAINMENT

| NAME ANNA RHEE | SHIP TO | | | | | |
|---|---|---|---|---|---|---|
| ADDRESS 1613 FORD AVE. | ADDRESS | | | | | |
| CITY, STATE, ZIP REDONDO BCH CA. 90278 | CITY, STATE, ZIP | | | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS 30 DAYS | HOW SHIP | DATE 11/14/01 |
|---|---|---|---|---|---|---|

| QUANTITY | DESCRIPTION | | PRICE | AMOUNT |
|---|---|---|---|---|
| 1 | Sugar Plum Set (accessories & background) price→ | | $ | 500 00 |
| | tax→ | | $ | 40 00 |
| | TOTAL PRICE → INCLUDING TAX | | $ | 540 00 |
| | | | | |
| | | | | |
| | | | | |
| | Requested by Carter Bryant | | | |

JYER:

EAdams 100

EXHIBIT 22

PAGE 1180

2-01-5.

AR 0053

CONFIDENTIAL

TO: MGA ENTERTAINMENT

| NAME | ANNA RHEE | SHIP TO | |
|---|---|---|---|
| ADDRESS | 1613 FORD AVE. | ADDRESS | |
| CITY, STATE, ZIP | REDONDO BCH, CA. 91278 | CITY, STATE, ZIP | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|---|---|---|---|---|---|---|
| | | | | 30 DAYS | | 10/15/01 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 1 | Extra Large Bratz Head (Make-up)   price→ | | $250.00 |
| | tax→ | | $20.00 |
| | TOTAL PRICE → | | $270.00 |
| | INCLUDING TAX | | |

Requested by Paula Treantafelles

BUYER:

Adams
8100

KEEP THIS SLIP FOR REFERENCE

261-54

EXHIBIT 72
PAGE 1181

AR 0054

CONFIDENTIAL

TO: MGA. ENTERTAINMENT

| NAME | | | | SHIP TO | | |
|------|--|--|--|---------|--|--|
| ANNA RHEE | | | | | | |

| ADDRESS | | | | ADDRESS | | |
|---------|--|--|--|---------|--|--|
| 1613 FORD AVE. | | | | | | |

| CITY, STATE, ZIP | | | | CITY, STATE, ZIP | | |
|------------------|--|--|--|------------------|--|--|
| REDONDO BCH CA. 90278 | | | | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|--------------|-----------|-------------|-----------|-------|----------|------|
| | | | | 30 DAYS | | 11/2/01 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|----------|-------------|-------|--------|
| 1 | Dress up Amy          price → | # | 200.00 |
| | tax → | # | 16.00 |
| | TOTAL PRICE → | # | 216.00 |
| | INCLUDING TAX | | |

Request by Nanette Pendleton

BUYER:

Adams
00

KEEP THIS SLIP FOR REFERENCE

EXHIBIT 72

PAGE 1182

AR 0055

CONFIDENTIAL

TO: MGA ENTERTAINMENT

| NAME ANNA RHEE | SHIP TO | | | | | |
|---|---|---|---|---|---|---|
| ADDRESS 1613 FORD AVE. | ADDRESS | | | | | |
| CITY, STATE, ZIP REDONDO BCH, CA. 90278 | CITY, STATE, ZIP | | | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|---|---|---|---|---|---|---|
| | | | | 30 DAYS | | 12/10/01 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 1 | Sugar Plum Planet Play set — "Frozen Candy" | | 700 00 |
| 1 | Sugar Plum — (Hawaiin Girl | | 200 00 |
| | price → | $ | 900 00 |
| | tax → | $ | 72 00 |
| | TOTAL PRICE → | | $972 00 |
| | INCLUDING TAX | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | Designed by   Carter Bryant | | |
| | | | |

BUYER:

Adams
100

KEEP THIS SLIP FOR REFERENCE

201-56
AR 0050

EXHIBIT  72

PAGE  1183

CONFIDENTIAL

TO MGA. ENTERTAINMENT

| NAME | | | | | | | |
|------|---|---|---|---|---|---|---|
| ANNA RHEE | | | | | SHIP TO | | |

ADDRESS
1613 FORD AVE.

CITY, STATE, ZIP
REDONDO BCH, CA. 90278

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|---|---|---|---|---|---|---|
| | | | | 30 DAY | | 12/21/01 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|
| 1 | Sugar Plum Alaska "Frozen Candy" Girl & Pet | | 325. 00 |
| 1 | Sugar Plum Plant Plug Set (Hawaii) Full Touch-Up | | 200. 00 |
| | price → | 3 525. 00 | |
| | tax → | 42.00 | |
| | TOTAL PRICE → | $ 567. 00 | |
| | INCLUDING TAX | | |
| | Request by Carter Bryant | | |

BUYER:

Adams
8100

KEEP THIS SLIP FOR REFERENCE

201-57

AR 0057

EXHIBIT __72__

PAGE __1184__

CONFIDENTIAL

| NAME | | | | | SHIP TO | | |
|------|--|--|--|--|---------|--|--|
| ANNA RHEE | | | | | | | |
| ADDRESS | | | | | ADDRESS | | |
| 1613 FORD AVE. | | | | | | | |
| CITY, STATE, ZIP | | | | | CITY, STATE, ZIP | | |
| REDONDO. BCH, cA. 90278. | | | | | | | |

| ORDER NUMBER | DEPARTMENT | SALESPERSON | WHEN SHIP | TERMS | HOW SHIP | DATE |
|--------------|------------|-------------|-----------|-------|----------|------|
| | | | | 30 DAYS | | 12/28/01 |

| QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|----------|-------------|-------|--------|
| 1 | Sugar Plum Planet Play Set - "Mermaid" | | 700.00 |
| | " " Mermaid Girl & Pet | | 325.00 |
| | | | |
| | price → | | ᵇ 1,025.00 |
| | tax → | | ᵇ 82.00 |
| | TOTAL PRICE → | | ᵃ 1,107.00 |
| | INCLUDING TAX | | |

Carter Bryant

Request by ~~Paula Treantafelles~~

EXHIBIT   72

PAGE   1185

201-55

AR 0058

**EXHIBIT 73**

Req 0-019

# Carter H. Bryant

REDACTED

INVOICE

INVOICE NO.: _001_

DATE: 8/31/00

Sold To:

Paula Treantafeles
MGA Entertainment
16730 Schoenborn St.
North Hills, CA 91343

Ship To:

Same

V 2514
fm 0413
Rc 70509

| SALESPERSON | P.O. NUMBER | DATE SHIPPED | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
| | 3367 | | | | net |

| QUANTITY | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|
| 3 HRS | ANGEL FACE/HAIR DESIGNS + SKETCHES | 50.00 | 150.00 |

Thanks Paula! :)

| | | |
|---|---|---|
| SUBTOTAL | 150.00 |
| SALES TAX @ 8.25% | 12.38 |
| SHIPPING & HANDLING | -0- |
| TOTAL DUE | 162.38 |

Customer Signature

**THANK YOU FOR YOUR BUSINESS!**

Exhibit 593
Brode
8/15/07  Pgs. 3
J'ana Siegers, CSR 10845

CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA001294

EXHIBIT _73_

PAGE _1186_

PURCHASE ORDER

ABC International Traders, Inc
dba MGA Entertainment
16730 Schoenborn St.
North Hills
CA            91343-6122

PO Number:   PO03367
Date:        9/26/00
Page:        1

Order From:  CARTER H. BRYANT

REDACTED

Deliver to:  L.A. MAIN WAREHOUSE
             16730 SCHOENBORN ST

             NORTH HILLS
             CA            91343

| Your Item Number Item Description | Our Reference | Qty Ordered Date Requested | Units | Unit Cost Date Promised | Extension |
|---|---|---|---|---|---|
| | PRAYER ANGELS | 3.00 | Each | 50.00 | $150.00 |
| ANGEL FACE/ HAIR DESIGNS AND SKETCH | | 9/22/00 | | | |
| 1 | PRAYER ANGELS | 1.00 | Each | 12.38 | $12.38 |
| SALES TAX @ 8.25% | | 9/22/00 | | | |

Please Quote Purchase Order Number on all correspondence.

| | |
|---|---|
| Subtotal: | $162.38 |
| Freight: | $0.00 |
| Tax amount: | $0.00 |
| Total Value: | $162.38 |

CONFIDENTIAL
ATTORNEY'S EYES ONLY

EXHIBIT _____ 73 _____

PAGE _____ 1187

MGA001295

Requisition # REQ026:8                           * * REQUISITION * *
Requestor   KLEGG                                                                        Page: 1
Date

| Item Number | Quantity | Units | Cost | Due Date | Total |
|---|---|---|---|---|---|
| **PRAYER ANGELS** | 3.00 | Each | $50.00 | 9/22/00 | $150.00 |
| ANGEL FACE/ HAIR DESIGNS AND SKETCHES | | Site: 01 | | Creditor: BRYANT | |
| 8322-400 - | | | | | |
| **PRAYER ANGELS** | 1.00 | Each | $12.38 | 9/22/00 | $12.38 |
| SALES TAX @ 8.25% | | Site: 01 | | Creditor: BRYANT | |
| 8322-400 - | | | | | |

*PO 3367*

*P - 6400*

*— 6400 ?*

*advance Ref. ?*

Requisition Total          $162.38

CONFIDENTIAL
ATTORNEY'S EYES ONLY

EXHIBIT   73

1188

MGA001296

**EXHIBIT 74**

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL,   )
                                )
                PLAINTIFF,      )
                                )          CASE NO.
        V.                      )          CV 04-9040 SGL (RNBX)
                                )
MATTEL, INC., A DELAWARE        )          CONSOLIDATED WITH
CORPORATION,                    )          CASE NO. 04-9059
                                )
                DEFENDANTS.     )          CASE NO.  05-2727
_____  )
                                )
AND CONSOLIDATED ACTION (S).    )
_____  )


# C O N F I D E N T I A L

(PURSUANT TO PROTECTIVE ORDER, THIS TRANSCRIPT HAS BEEN
DESIGNATED CONFIDENTIAL FOR ATTORNEYS' EYES ONLY)

## DEPOSITION OF ANNE WANG

## JANUARY 28, 2008

REPORTED BY:
APRIL CRUZ CACULITAN
CSR NO. 12437
JOB NO. 08AE104-AC

EXHIBIT __7 4__

PAGE __1189__

A C E
C O U R T   R E P O R T E R S
515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA EASTERN DIVISION


CARTER BRYANT, AN INDIVIDUAL, )

                              )

    PLAINTIFF,                )

                              )

VS.                           )CASE NO. CV 04-9049

                              )

MATTEL, INC., A DELAWARE      )

CORPORATION,                  )

                              )

    DEFENDANT                 )

                              )

                              )

AND CONSOLIDATED ACTIONS.     )


TRANSCRIPT IS DESIGNATED CONFIDENTIAL ATTORNEYS' EYES

                    ONLY

    DEPOSITION OF ANNE WANG, TAKEN AT 865 SOUTH FIGUEROA STREET, TENTH FLOOR, LOS ANGELES, CALIFORNIA, COMMENCING AT 9:39 A.M., MONDAY, JANUARY 28, 2008, BEFORE APRIL CRUZ CACULITAN, CERTIFIED SHORTHAND REPORTER NO. 12437.


EXHIBIT ____74____

PAGE ____1190____

```
 1   APPEARANCES OF COUNSEL:
 2   FOR THE PLAINTIFF CARTER BRYANT:
 3        KEKER & VAN NEST
          BY:  MATTHEW M. WERDEGAR, ESQ.
 4        710 SANSOME STREET
          TENTH FLOOR
 5        SAN FRANCISCO, CALIFORNIA 94111-1704
          (415) 391-5400
 6
 7   FOR THE DEFENDANT MATTEL, INC.:
 8        QUINN, EMANUEL, URQUHART, OLIVER & HEDGES, LLP
          BY:  SHON MORGAN, ESQ.
 9             TAMAR BUCHAKJIAN
          865 SOUTH FIGUEROA STREET
10        TENTH FLOOR
          LOS ANGELES, CALIFORNIA 90017-2543
11        (213) 443-3000
12   FOR THE DEFENDANT MGA ENTERTAINMENT:
13        SKADDEN, ARPS, SLATE, MEACHER & FLOM, LLP
          BY:  JASON D. RUSSELL, ESQ.
14        300 SOUTH GRAND AVENUE
          LOS ANGELES, CALIFORNIA 90071-3144
15        (213) 687-5000
16   FOR THE WITNESS:
17        CALDWELL, LESLIE & PROCTOR, PC
          BY:  LINDA M. BURROW, ESQ.
18        1000 WILSHIRE BOULEVARD
          SUITE 600
19        LOS ANGLES, CALIFORNIA 90017-2463
          (213) 629-9040
20
21   ALSO PRESENT:
22        RICHARD DANIELS, MGA ENTERTAINMENT
23        PHILIP CRUZ, J.T.V. LITIGATION SERVICES
24
25
```

EXHIBIT __24__

PAGE __1191__

```
 1    MEET IN PERSON WITH ANY REPRESENTATIVE OF MGA?          10:08:22

 2         A    NO.                                           10:08:26

 3         Q    AGAIN, GOING TO THAT PERIOD BEFORE THE        10:08:27

 4    AGREEMENT WAS FINALIZED, DID YOU SPEAK ON THE TELEPHONE 10:08:31

 5    WITH ANYBODY FROM MGA?                                  10:08:37

 6         A    YES.                                          10:08:37

 7         Q    WHO WAS THAT?                                 10:08:37

 8         A    ATTORNEY ROSENBAUM.                           10:08:38

 9         Q    OKAY.  ANYBODY WHO WORKED DIRECTLY AT MGA?    10:08:39

10              MR. WERDEGAR:  OBJECTION.  LACKS FOUNDATION.  10:08:46

11              MR. RUSSELL:  JOIN.                           10:08:51

12              THE WITNESS:  NO.                             10:08:51

13    BY MR. MORGAN:                                          10:08:52

14         Q    DID YOU EVER -- DO YOU KNOW THE NAME          10:08:52

15    VICTORIA O'CONNOR?                                      10:08:55

16         A    NO.                                           10:08:56

17         Q    DO YOU KNOW THE NAME ISAAC LARIAN?            10:08:56

18         A    NO.                                           10:09:00

19         Q    OKAY.  WITH RESPECT TO MR. ROSENBAUM, DID YOU 10:09:00

20    SPEAK TO HIM ON THE TELEPHONE?                          10:09:15

21              MR. WERDEGAR:  ASKED AND ANSWERED.            10:09:17

22              MR. RUSSELL:  JOIN.                           10:09:19

23              THE WITNESS:  YES EXHIBIT ____74____          10:09:21

24    BY MR. MORGAN:              PAGE ____1192____           10:09:22

25         Q    OKAY.  ON HOW MANY OCCASIONS?                 10:09:22
```

27

| | | |
|---|---|---|
| 1 | A    ONCE, YEAH. | 10:09:26 |
| 2 | Q    DID YOU HAVE ANY E-MAIL COMMUNICATIONS WITH | 10:09:29 |
| 3 | MR. ROSENBAUM? | 10:09:32 |
| 4 | A    YES. | 10:09:34 |
| 5 | Q    HOW MANY, IF YOU RECALL? | 10:09:34 |
| 6 | A    TWO OR THREE. | 10:09:37 |
| 7 | Q    OKAY.  APART FROM THE ONE TELEPHONE CALL AND | 10:09:39 |
| 8 | THE TWO OR THREE E-MAILS, CAN YOU THINK OF ANY OTHER | 10:09:47 |
| 9 | COMMUNICATIONS YOU HAD WITH MR. ROSENBAUM DURING THAT | 10:09:51 |
| 10 | TIME?  LETTERS OR ... | 10:09:54 |
| 11 | A    PERHAPS FAXES. | 10:09:59 |
| 12 | Q    BEFORE THAT INITIAL MEETING WITH MR. PRETTY, | 10:10:01 |
| 13 | MR. BRYANT AND THIS OTHER GENTLEMAN, HAD YOU REVIEWED | 10:10:27 |
| 14 | ANY WRITTEN MATERIALS THAT RELATED TO THIS MATTER? | 10:10:31 |
| 15 | MR. WERDEGAR:  THAT'S A YES/NO QUESTION. | 10:10:33 |
| 16 | THE WITNESS:  NO. | 10:10:40 |
| 17 | BY MR. MORGAN: | 10:10:41 |
| 18 | Q    DID YOU REVIEW ANY WRITTEN MATERIALS AT THAT | 10:10:41 |
| 19 | INITIAL MEETING? | 10:10:46 |
| 20 | MR. WERDEGAR:  AGAIN, YES/NO QUESTION. | 10:10:48 |
| 21 | THE WITNESS:  YES. | 10:10:50 |
| 22 | BY MR. MORGAN: | 10:10:51 |
| 23 | Q    OKAY.  AND WERE THOSE MATERIALS PROVIDED BY | 10:10:51 |
| 24 | MR. BRYANT? | 10:11:02 |
| 25 | MS. BURROW:  "YES" OR "NO." | 10:11:03 |

EXHIBIT ___74___

PAGE ___1193___

28

| | | |
|---|---|---|
| 1 | THE WITNESS:  YES. | 10:11:05 |
| 2 | BY MR. MORGAN: | 10:11:06 |
| 3 | Q    APART FROM WRITTEN MATERIALS, WERE THERE ANY | 10:11:06 |
| 4 | OTHER PHYSICAL MATERIALS, MODELS, PROTOTYPES, | 10:11:25 |
| 5 | ET CETERA, THAT YOU REVIEWED AT THAT MEETING? | 10:11:29 |
| 6 | MR. WERDEGAR:  THAT'S A YES/NO. | 10:11:32 |
| 7 | THE WITNESS:  I BELIEVE SO. | 10:11:35 |
| 8 | BY MR. MORGAN: | 10:11:36 |
| 9 | Q    I TAKE IT THOSE WERE ALSO PROVIDED BY | 10:11:36 |
| 10 | MR. BRYANT? | 10:11:48 |
| 11 | A    YES. | 10:11:49 |
| 12 | Q    PUTTING ASIDE ANY CORRESPONDENCE YOU MIGHT | 10:11:49 |
| 13 | HAVE SEEN OR THE DRAFT CONTRACTS, IN BETWEEN THE | 10:12:25 |
| 14 | INITIAL MEETING AND THE TIME THE CONTRACT WITH | 10:12:28 |
| 15 | MR. BRYANT AND MGA WAS FINALIZED, DID YOU SEE ANY | 10:12:31 |
| 16 | ADDITIONAL CREATIVE MATERIALS THAT RELATED TO THIS LINE | 10:12:34 |
| 17 | OF DOLLS? | 10:12:38 |
| 18 | MR. WERDEGAR:  I'M GOING TO OBJECT.  IT'S | 10:12:38 |
| 19 | VAGUE AND AMBIGUOUS.  ASSUMES FACTS.  CALLS FOR | 10:12:40 |
| 20 | SPECULATION.  AND IS VAGUE AS TO, QUOTE/UNQUOTE, | 10:12:43 |
| 21 | CREATIVE MATERIALS. | 10:12:45 |
| 22 | AND THAT'S A YES/NO QUESTION. | 10:12:48 |
| 23 | THE WITNESS:  NO. | 10:12:51 |
| 24 | BY MR. MORGAN: | 10:12:52 |
| 25 | Q    WAS YOUR FIRM PROVIDED WITH ANY COPIES OF | 10:12:52 |

EXHIBIT ___74___

PAGE ___1194___

29

| | | |
|---|---|---|
| 1 | THESE MATERIALS THAT YOU SAW AT THIS INITIAL MEETING, | 10:13:15 |
| 2 | OR WAS THAT THE ONLY TIME YOU EVER SAW THEM? | 10:13:18 |
| 3 | MS. BURROW: VAGUE AND AMBIGUOUS. | 10:13:22 |
| 4 | THE WITNESS: NO, TO YOUR FIRST QUESTION. | 10:13:24 |
| 5 | BY MR. MORGAN: | 10:13:27 |
| 6 | Q YOUR FIRM WAS NOT GIVEN -- DID NOT MAKE OR | 10:13:27 |
| 7 | RECEIVE ANY COPIES OF THESE MATERIALS? | 10:13:31 |
| 8 | A CORRECT. | 10:13:33 |
| 9 | Q OKAY. SO THE ONLY CREATIVE MATERIALS | 10:13:34 |
| 10 | RELATING TO THE LINE OF DOLLS WERE WHAT YOU SAW AT THE | 10:13:37 |
| 11 | INITIAL MEETING, AND YOU NEVER SAW THEM AGAIN? | 10:13:40 |
| 12 | MR. WERDEGAR: I'M GOING TO OBJECT AGAIN. | 10:13:43 |
| 13 | VAGUE AND AMBIGUOUS AS TO "CREATIVE MATERIALS." | 10:13:45 |
| 14 | THE WITNESS: CORRECT. | 10:13:50 |
| 15 | BY MR. MORGAN: | 10:13:51 |
| 16 | Q DID YOU EVER COME TO LEARN THAT AFTER YOUR | 10:13:51 |
| 17 | INITIAL MEETING WITH MR. BRYANT AND THE TIME THAT | 10:14:09 |
| 18 | CONTRACT WAS FINALIZED, THAT MR. BRYANT HAD AN | 10:14:14 |
| 19 | IN-PERSON MEETING WITH SOME REPRESENTATIVES OF MGA? | 10:14:16 |
| 20 | MS. BURROW: YEAH. CALLS FOR -- | 10:14:22 |
| 21 | BY MR. MORGAN: | 10:14:24 |
| 22 | Q IT'S A "YES" OR "NO." | 10:14:24 |
| 23 | MS. BURROW: YOU CAN ANSWER THAT "YES" OR | 10:14:30 |
| 24 | "NO" IF YOU UNDERSTAND IT. | 10:14:31 |
| 25 | THE WITNESS: PLEASE REPEAT THE QUESTION. | 10:14:34 |

EXHIBIT _____ 74

PAGE _____ 1195

30

| | | |
|---|---|---|
| 1 | A    SOMETHING TO THE EFFECT THAT WE NEEDED TO | 10:42:38 |
| 2 | RESOLVE THIS AS SOON AS POSSIBLE. | 10:42:44 |
| 3 | Q    DID HE EXPLAIN WHY HE FELT THIS NEEDED TO BE | 10:42:46 |
| 4 | RESOLVED AS SOON AS POSSIBLE? | 10:42:51 |
| 5 | A    NO. | 10:42:52 |
| 6 | Q    DID YOU ASK WHY? | 10:42:53 |
| 7 | A    NO. | 10:42:54 |
| 8 | Q    OKAY.  DID YOU HAVE ANY INDEPENDENT | 10:42:55 |
| 9 | UNDERSTANDING THAT THE PARTIES FELT THIS WAS AN | 10:43:04 |
| 10 | AGREEMENT THAT NEEDED TO BE CONCLUDED? | 10:43:07 |
| 11 | MS. BURROW:  I THINK THAT CALLS FOR | 10:43:12 |
| 12 | PRIVILEGED INFORMATION. | 10:43:14 |
| 13 | THE WITNESS:  I AGREE. | 10:43:17 |
| 14 | BY MR. MORGAN: | 10:43:18 |
| 15 | Q    OKAY.  SO YOU WON'T ANSWER THAT QUESTION? | 10:43:18 |
| 16 | A    CORRECT. | 10:43:22 |
| 17 | Q    OKAY.  YOU MENTIONED SORT OF TWO ASPECTS TO | 10:43:32 |
| 18 | THIS CONVERSATION WITH MR. ROSENBAUM; ONE ABOUT THE | 10:43:35 |
| 19 | TERMS OF THE AGREEMENT. | 10:43:38 |
| 20 | CAN YOU THINK OF ANYTHING ELSE ABOUT THAT | 10:43:39 |
| 21 | ISSUE THAT WAS DISCUSSED DURING THIS PHONE CALL? | 10:43:42 |
| 22 | MS. BURROW:  CAN YOU REPEAT THE QUESTION, | 10:43:45 |
| 23 | I'M SORRY. | 10:43:46 |
| 24 | BY MR. MORGAN: | 10:43:47 |
| 25 | Q    SURE.  YOU HAD MENTIONED TWO ASPECTS TO THIS | 10:43:47 |

EXHIBIT ____ 44  74

PAGE ____ 1195.001

| | | |
|---|---|---|
| 1 | CONVERSATION WITH MR. ROSENBAUM; ONE BEING ABOUT THE | 10:43:50 |
| 2 | DRAFT AGREEMENT.  WE'VE BEEN DISCUSSING THAT. | 10:43:54 |
| 3 | CAN YOU THINK OF ANYTHING ON THAT ISSUE THAT | 10:43:57 |
| 4 | WAS DISCUSSED DURING THIS TELEPHONE CALL? | 10:44:00 |
| 5 | A    NOT AT THE PRESENT TIME. | 10:44:02 |
| 6 | Q    OF THE FIVE MINUTES THAT THE PHONE CALL | 10:44:04 |
| 7 | LASTED, APPROXIMATELY HOW MUCH WAS DEVOTED TO THIS | 10:44:08 |
| 8 | ISSUE IN TERMS OF THE AGREEMENT? | 10:44:11 |
| 9 | A    HALF, THREE MINUTES. | 10:44:12 |
| 10 | Q    OKAY.  AND THE OTHER TOPIC YOUR MENTIONED WAS | 10:44:13 |
| 11 | OWNERSHIP OF THE DOLLS? | 10:44:28 |
| 12 | A    YES. | 10:44:29 |
| 13 | Q    WAS THAT AN ISSUE THAT MR. ROSENBAUM RAISED | 10:44:30 |
| 14 | WITH YOU? | 10:44:33 |
| 15 | A    YES. | 10:44:33 |
| 16 | Q    AND WHAT DO YOU RECALL HIM ASKING? | 10:44:34 |
| 17 | A    DOES CARTER OWN THESE DOLLS, OR SOMETHING TO | 10:44:36 |
| 18 | THAT EFFECT. | 10:44:49 |
| 19 | Q    IS THAT THE FIRST TIME IN ANY OF YOUR | 10:44:50 |
| 20 | COMMUNICATIONS WITH MR. ROSENBAUM THAT HE HAD ASKED | 10:44:55 |
| 21 | QUESTIONS TO THAT EFFECT? | 10:44:59 |
| 22 | A    I BELIEVE SO. | 10:45:00 |
| 23 | Q    OKAY.  DID HE EXPLAIN WHY HE WANTED TO KNOW | 10:45:01 |
| 24 | THAT? | 10:45:15 |
| 25 | A    I DON'T RECALL. | 10:45:18 |

**EXHIBIT** _____ 45  74

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

**PAGE** _____ 1195.002

| | | |
|---|---|---|
| 1 | Q    OKAY.  AND HOW DID YOU RESPOND? | 10:45:19 |
| 2 | A    SOMETHING TO THE EFFECT THAT I WILL SPEAK TO | 10:45:23 |
| 3 | CARTER. | 10:45:28 |
| 4 | Q    THAT YOU WOULD SPEAK TO CARTER ABOUT THE | 10:45:28 |
| 5 | OWNERSHIP OF THE DOLLS? | 10:45:41 |
| 6 | A    CORRECT. | 10:45:41 |
| 7 | Q    SO YOU DON'T RECALL GIVING MR. ROSENBAUM ANY | 10:45:42 |
| 8 | SUBSTANTIVE RESPONSE AT THAT POINT ABOUT THE OWNERSHIP? | 10:45:46 |
| 9 | A    CORRECT. | 10:45:48 |
| 10 | Q    OKAY.  BUT THAT YOU WOULD SPEAK TO CARTER AND | 10:45:55 |
| 11 | THEN PRESUMABLY GET BACK TO MR. ROSENBAUM? | 10:45:58 |
| 12 | A    YES. | 10:46:01 |
| 13 | Q    OKAY.  ON THIS ISSUE OF OWNERSHIP OF THE | 10:46:01 |
| 14 | DOLLS, WAS THERE ANY MORE TO THAT PART OF THE | 10:46:11 |
| 15 | CONVERSATIONS?  DO YOU RECALL MR. ROSENBAUM ASKING YOU | 10:46:13 |
| 16 | ANYTHING ELSE? | 10:46:17 |
| 17 | A    I DON'T RECALL ANYTHING ELSE. | 10:46:18 |
| 18 | Q    OKAY.  AND DO YOU RECALL SAYING ANYTHING BACK | 10:46:19 |
| 19 | TO MR. ROSENBAUM IN ADDITION TO THE FACT THAT YOU WOULD | 10:46:23 |
| 20 | SPEAK TO MR. BRYANT? | 10:46:27 |
| 21 | A    NO. | 10:46:28 |
| 22 | Q    OKAY.  ON THAT ISSUE, DID YOU PROPOSE ANY | 10:46:28 |
| 23 | SORT OF TIME FRAME WHEN YOU WOULD GET BACK TO | 10:46:32 |
| 24 | MR. ROSENBAUM ABOUT THE OWNERSHIP OF THE DOLLS? | 10:46:34 |
| 25 | A    I BELIEVE IT WAS GOING TO BE VERY SOON. | 10:46:37 |

74

EXHIBIT _____

PAGE  1195.00B

| | | |
|---|---|---|
| 1 | Q    WHAT LEADS YOU TO BELIEVE THAT? | 10:46:44 |
| 2 | A    BECAUSE I -- IT WAS AN ISSUE THAT I HAD NOT | 10:46:50 |
| 3 | BEEN AWARE OF BEFORE, AND IT WAS SOMETHING THAT I KNEW | 10:46:58 |
| 4 | I NEEDED TO EXPLORE.  AND, ALSO, I BELIEVE AT | 10:47:03 |
| 5 | MR. ROSENBAUM'S REQUEST. | 10:47:11 |
| 6 | Q    WHEN YOU SAY THIS IS AN ISSUE THAT YOU HADN'T | 10:47:12 |
| 7 | BEEN AWARE OF BEFORE, WHAT DO YOU MEAN BY THAT? | 10:47:17 |
| 8 | MR. WERDEGAR:  OBJECTION.  VAGUE. | 10:47:23 |
| 9 | THE WITNESS:  IT HADN'T BEEN RAISED BEFORE. | 10:47:24 |
| 10 | BY MR. MORGAN: | 10:47:26 |
| 11 | Q    THE ISSUE OF WHETHER MR. BRYANT HAD OWNERSHIP | 10:47:26 |
| 12 | OF THE DOLLS? | 10:47:29 |
| 13 | A    CORRECT. | 10:47:30 |
| 14 | Q    NOBODY FROM MGA'S SIDE HAD RAISED THAT? | 10:47:31 |
| 15 | MR. WERDEGAR:  OBJECTION.  MISSTATES PRIOR | 10:47:36 |
| 16 | TESTIMONY. | 10:47:39 |
| 17 | MR. RUSSELL:  JOIN. | 10:47:39 |
| 18 | BY MR. MORGAN: | 10:47:39 |
| 19 | Q    BEFORE THIS CONVERSATION WITH MR. ROSENBAUM? | 10:47:39 |
| 20 | MS. BURROW:  ASKED AND ANSWERED. | 10:47:45 |
| 21 | THE WITNESS:  CORRECT. | 10:47:45 |
| 22 | BY MR. MORGAN: | 10:47:46 |
| 23 | Q    OKAY.  AND DID YOU, IN FACT, RESPOND TO | 10:47:46 |
| 24 | MR. ROSENBAUM ABOUT THAT ISSUE? | 10:47:52 |
| 25 | A    YES. | 10:47:54 |

EXHIBIT ﹁Ꮞ 47

| | | |
|---|---|---|
| 1 | Q    WHEN DID YOU RESPOND? | 10:47:54 |
| 2 | A    IT MAY HAVE HAPPENED THE NEXT DAY OR THE DAY | 10:47:57 |
| 3 | AFTER. | 10:48:06 |
| 4 | Q    AND WHAT WAS THE FORM OF THAT RESPONSE? | 10:48:06 |
| 5 | A    I BELIEVE BY TELEPHONE. | 10:48:09 |
| 6 | Q    WAS THAT A PHONE CALL THAT YOU INITIATED? | 10:48:17 |
| 7 | A    I BELIEVE SO. | 10:48:20 |
| 8 | Q    AND WHAT DID YOU TELL MR. ROSENBAUM IN THAT | 10:48:21 |
| 9 | CONVERSATION? | 10:48:34 |
| 10 | A    THAT MR. CARTER WAS THE CREATOR AND THE | 10:48:34 |
| 11 | OWNER. | 10:48:41 |
| 12 | Q    DO YOU RECALL PROVIDING ANY MORE DETAIL TO | 10:48:41 |
| 13 | MR. ROSENBAUM THAN WHAT YOU JUST STATED? | 10:48:50 |
| 14 | A    YES. | 10:48:52 |
| 15 | Q    WHAT WAS THAT ADDITIONAL DETAIL? | 10:48:52 |
| 16 | A    THAT HE HAD CREATED THE DOLL AT A TIME PERIOD | 10:48:55 |
| 17 | SEPARATE FROM HIS EMPLOYMENT AND THAT IT WAS HIS OWN | 10:49:03 |
| 18 | SEPARATE CREATION. | 10:49:25 |
| 19 | Q    IN THAT CONVERSATION WITH MR. ROSENBAUM, DID | 10:49:26 |
| 20 | YOU ACTUALLY USE THE PHRASE "THE DOLL," OR WERE YOU | 10:49:39 |
| 21 | TALKING ABOUT SOME MORE SPECIFIC TANGIBLE EXPRESSION OF | 10:49:46 |
| 22 | THE DOLL CONCEPT? | 10:49:47 |
| 23 | MR. WERDEGAR:  OBJECTION.  VAGUE AND | 10:49:49 |
| 24 | AMBIGUOUS. | 10:49:51 |
| 25 | MR. RUSSELL:  JOIN. | 10:49:53 |

| | | |
|---|---|---|
| 1 | ACQUAINTANCE AT THIS ORIGINAL MEETING, DO YOU RECALL | 12:50:22 |
| 2 | THAT PERSON MAKING ANY REPRESENTATIONS ABOUT THE DATE | 12:50:25 |
| 3 | OR MANNER IN WHICH MR. BRYANT HAD ALLEGEDLY CREATED THE | 12:50:28 |
| 4 | BRATZ CONCEPT? | 12:50:33 |
| 5 | MS. BURROW:  YOU KNOW, THAT, AS PHRASED, MAY | 12:50:34 |
| 6 | CALL FOR PRIVILEGED INFORMATION. | 12:50:39 |
| 7 | MR. MORGAN:  WELL, I BELIEVE IT'S PHRASED AS | 12:50:43 |
| 8 | A "YES" OR "NO." | 12:50:46 |
| 9 | MS. BURROW:  WELL, EVEN STILL, NOT ALL "YES" | 12:50:47 |
| 10 | OR "NO" QUESTIONS ARE NOT CALLING FOR PRIVILEGED | 12:50:51 |
| 11 | INFORMATION. | 12:50:55 |
| 12 | MR. WERDEGAR:  I AGREE WITH THAT | 12:50:55 |
| 13 | COMMENT/OBJECTION. | 12:50:57 |
| 14 | MR. MORGAN:  OKAY.  SO ARE YOU INSTRUCTING | 12:50:58 |
| 15 | HER NOT TO ANSWER? | 12:51:00 |
| 16 | MS. BURROW:  I'M INSTRUCTING HER NOT TO | 12:51:01 |
| 17 | REVEAL ANY PRIVILEGED INFORMATION. | 12:51:04 |
| 18 | THE WITNESS:  NO. | 12:51:13 |
| 19 | BY MR. MORGAN: | 12:51:13 |
| 20 | Q    OKAY.  I HAD ASKED YOU BEFORE IF YOU HAD | 12:51:13 |
| 21 | INTERVIEWED ANYONE ELSE. | 12:51:24 |
| 22 | DID YOU -- APART FROM AN INTERVIEW, DID YOU | 12:51:25 |
| 23 | REVIEW ANY STATEMENTS BY WITNESSES WHO SAID THAT THEY | 12:51:28 |
| 24 | SAW OR KNEW SOMETHING ABOUT THE CIRCUMSTANCES UNDER | 12:51:30 |
| 25 | WHICH MR. BRYANT ALLEGEDLY CREATED THE BRATZ CONCEPT? | 12:51:32 |

EXHIBIT _____ 24 _____

PAGE _____ 1196 _____

109

| | | |
|---|---|---|
| 1 | MS. BURROW:  ASSUMES FACTS.  ASKED AND | 12:51:36 |
| 2 | ANSWERED. | 12:51:38 |
| 3 | THE WITNESS:  NO. | 12:51:39 |
| 4 | BY MR. MORGAN: | 12:51:40 |
| 5 | Q   DID YOU INTERVIEW OR SPEAK WITH ANYONE OTHER | 12:51:40 |
| 6 | THAN MR. BRYANT ABOUT THE NATURE OF HIS WORK AT MATTEL | 12:51:45 |
| 7 | IN FORMING YOUR CONCLUSION ABOUT THE OWNERSHIP OF THE | 12:51:49 |
| 8 | BRATZ CONCEPT? | 12:51:53 |
| 9 | MS. BURROW:  SAME OBJECTIONS. | 12:51:55 |
| 10 | MR. WERDEGAR:  JOIN. | 12:51:56 |
| 11 | THE WITNESS:  NO. | 12:51:57 |
| 12 | BY MR. MORGAN: | 12:51:58 |
| 13 | Q   FROM ANY SOURCE OTHER THAN MR. BRYANT, DID | 12:51:58 |
| 14 | YOU EVER HEAR THAT MR. BRYANT HAD BEGUN DOING WORK FOR | 12:52:17 |
| 15 | MGA ON THE BRATZ CONCEPT BEFORE HE LEFT MATTEL? | 12:52:21 |
| 16 | MS. BURROW:  ASSUMES FACTS. | 12:52:24 |
| 17 | THE WITNESS:  NO. | 12:52:29 |
| 18 | BY MR. MORGAN: | 12:52:30 |
| 19 | Q   APART FROM MR. BRYANT, HAD ANYONE INFORMED | 12:52:30 |
| 20 | YOU THAT HE WAS STILL WORKING AT MATTEL AT THE TIME HE | 12:52:51 |
| 21 | EXECUTED THE FINAL AGREEMENT WITH MGA? | 12:52:55 |
| 22 | MS. BURROW:  ASSUMES FACTS. | 12:52:57 |
| 23 | THE WITNESS:  NO.  EXHIBIT ____ 74 | 12:53:00 |
| 24 | BY MR. MORGAN:  PAGE ____ 1197 | 12:53:01 |
| 25 | Q   I HAD ASKED YOU BEFORE IF YOU MADE | 12:53:16 |

110

| | | |
|---|---|---|
| 1 | ASSUMPTIONS ABOUT WHAT MIGHT BE INCLUDED IN ANY | 12:53:20 |
| 2 | AGREEMENTS THAT MR. BRYANT HAD WITH MATTEL. | 12:53:22 |
| 3 | MORE SPECIFICALLY, DID YOU MAKE ANY | 12:53:25 |
| 4 | ASSUMPTION THAT THE AGREEMENTS WOULD HAVE INCLUDED A | 12:53:27 |
| 5 | PROVISION RESTRICTING MR. BRYANT'S ABILITY TO WORK FOR | 12:53:29 |
| 6 | COMPETITORS WHILE HE WORKED AT MATTEL? | 12:53:32 |
| 7 | MS. BURROW:  VAGUE AND AMBIGUOUS.  CALLS FOR | 12:53:34 |
| 8 | A LEGAL CONCLUSION.  CALLS FOR SPECULATION. | 12:53:35 |
| 9 | MR. WERDEGAR:  ALSO ASKED AND ANSWERED. | 12:53:40 |
| 10 | MR. RUSSELL:  JOIN. | 12:53:42 |
| 11 | THE WITNESS:  I MADE NO ASSUMPTION. | 12:53:44 |
| 12 | BY MR. MORGAN: | 12:53:47 |
| 13 | Q    THE ANSWER IS "NO." | 12:53:47 |
| 14 | BASED ON YOUR EXPERIENCE WITH THESE TYPES OF | 12:53:48 |
| 15 | CONSULTING AND EMPLOYMENT AGREEMENTS, HAVE YOU SEEN | 12:53:51 |
| 16 | CLAUSES SUCH AS THAT IN OTHER AGREEMENTS? | 12:53:53 |
| 17 | MS. BURROW:  VAGUE AND AMBIGUOUS. | 12:53:56 |
| 18 | THE WITNESS:  PLEASE REPEAT THE QUESTION | 12:53:58 |
| 19 | AGAIN. | 12:54:00 |
| 20 | BY MR. MORGAN: | 12:54:00 |
| 21 | Q    BASED ON YOUR EXPERIENCE BEING INVOLVED WITH | 12:54:00 |
| 22 | THESE TYPES OF AGREEMENTS, HAVE YOU SEEN CONSULTING OR | 12:54:05 |
| 23 | EMPLOYMENT AGREEMENTS FOR CREATIVE PERSONNEL THAT HAD | 12:54:08 |
| 24 | RESTRICTIONS ON THEIR ABILITY TO WORK FOR A COMPETITOR | 12:54:12 |
| 25 | DURING THE TERM OF THEIR EMPLOYMENT? | 12:54:16 |

EXHIBIT _____ 74

PAGE _____ 1198

111

```
1    STATE OF CALIFORNIA      )
                              )  SS.
2    COUNTY OF LOS ANGELES    )

3

4

5        I, ANNE WANG, HEREBY CERTIFY UNDER PENALTY OF PERJURY

6    UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT THE

7    FOREGOING IS TRUE AND CORRECT.

8        EXECUTED THIS _____ DAY OF

9    _____, 2008, AT

10   _____, CALIFORNIA.

11

12

13

14

15

16                    _____

17                         ANNE WANG

18

19

20

21

22

23

24

25                    EXHIBIT ___74___

                      PAGE ___1199___
```

124

1    STATE OF CALIFORNIA      )

                              )  SS.

2    COUNTY OF LOS ANGELES    )

3

4

5        I, APRIL CRUZ CACULITAN, CSR 12437, IN AND FOR THE

6    STATE OF CALIFORNIA, DO HEREBY CERTIFY:

7        THAT, PRIOR TO BEING EXAMINED, THE DEPONENT NAMED IN

8    THE FOREGOING DEPOSITION WAS BY ME DULY SWORN TO TESTIFY

9    THE TRUTH, THE WHOLE TRUTH AND NOTHING BUT THE TRUTH;

10       THAT SAID DEPOSITION WAS TAKEN DOWN BY ME IN SHORTHAND

11   AT THE TIME AND PLACE THEREIN NAMED, AND THEREAFTER REDUCED

12   TO TYPEWRITING UNDER MY DIRECTION, AND THE SAME IS A TRUE,

13   CORRECT AND COMPLETE TRANSCRIPT OF SAID PROCEEDINGS.

14       I FURTHER CERTIFY THAT I AM NOT INTERESTED IN THE

15   EVENT OF THE ACTION.

16       WITNESS MY HAND THIS _____14th_____ DAY OF

17   _FEBRUARY_____, 2008.

18

19

20                    APRIL CRUZ CACULITAN

21                    CERTIFIED SHORTHAND

22                    REPORTER FOR THE

23                    STATE OF CALIFORNIA

24                    EXHIBIT ___74___

25                    PAGE ___1200___

125

**EXHIBIT 75**

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL, )
)
PLAINTIFF, )
)                    CASE NO.
V. )                    CV 04-9040 SGL (RNBX)
)
MATTEL, INC., A DELAWARE )              CONSOLIDATED WITH
CORPORATION, )                        CASE NO. 04-9059
)
DEFENDANTS. )              CASE NO.  05-2727
―――――――――――――――――――)
)
AND CONSOLIDATED ACTION (S). )
―――――――――――――――――――)

# C O N F I D E N T I A L

**(PURSUANT TO PROTECTIVE ORDER, THIS TRANSCRIPT HAS BEEN
DESIGNATED CONFIDENTIAL FOR ATTORNEYS' EYES ONLY)**

# DEPOSITION OF DAVID ROSENBAUM

# JANUARY 25, 2008



REPORTED BY:
APRIL CRUZ CACULITAN
CSR NO. 12437
JOB NO. 08AE094-RP

EXHIBIT ___75___

PAGE ___1201___

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA EASTERN DIVISION


CARTER BRYANT, AN INDIVIDUAL, )

                                  )

    PLAINTIFF,           )

                                    )

VS.                     ) CASE NO. CV 04-9049

                                    )

MATTEL, INC., A DELAWARE     )

CORPORATION,           )

                                    )

    DEFENDANT            )

                                    )

                                    )

AND CONSOLIDATED ACTIONS.    )


TRANSCRIPT IS DESIGNATED CONFIDENTIAL ATTORNEYS' EYES

                         ONLY

    DEPOSITION OF DAVID ROSENBAUM, TAKEN AT 865 SOUTH

FIGUEROA STREET, 10TH FLOOR, LOS ANGELES, CALIFORNIA,

COMMENCING AT 9:26 A.M., FRIDAY, JANUARY 25, 2008, BEFORE

APRIL CRUZ CACULITAN, CERTIFIED SHORTHAND REPORTER NO.

12437.


EXHIBIT ___75___

PAGE ___1202___

2

| | | |
|---|---|---|
| 1 | DOCUMENTS WERE PRODUCED. | 10:55:41 |
| 2 | Q    OKAY.  AND YOU DON'T RECALL, AS YOU SIT HERE | 10:55:43 |
| 3 | TODAY, WHETHER SHE CALLED YOU OR YOU CALLED HER? | 10:55:49 |
| 4 | A    I DON'T RECALL WHO INITIATED THE PHONE CALL. | 10:55:53 |
| 5 | Q    TO THE EXTENT YOU CAN RECOLLECT SPECIFICALLY, | 10:55:56 |
| 6 | WHAT -- HOW DID THAT CONVERSATION GO? | 10:56:00 |
| 7 | A    I INQUIRED AS TO MR. BRYANT'S DEVELOPMENT OF | 10:56:02 |
| 8 | THE BRATZ CONCEPT AND WHETHER -- AND WHETHER THAT WAS | 10:56:09 |
| 9 | UNDERTAKEN OUTSIDE THE SCOPE OF HIS EMPLOYMENT WITH | 10:56:15 |
| 10 | MATTEL. | 10:56:19 |
| 11 | Q    WHAT DO YOU RECALL ASKING HER SPECIFICALLY? | 10:56:19 |
| 12 | A    I ASKED HER TO TELL ME WAS THIS -- WHETHER OR | 10:56:22 |
| 13 | NOT THE MATERIAL THAT HE WAS PURPORTING TO DELIVER TO | 10:56:25 |
| 14 | MGA HAD BEEN DEVELOPED OUTSIDE THE SCOPE OF HIS | 10:56:29 |
| 15 | EMPLOYMENT WITH MG -- WITH MATTEL. | 10:56:33 |
| 16 | Q    WHAT WAS YOUR UNDERSTANDING AT THAT TIME OF | 10:56:35 |
| 17 | THE MATERIAL THAT HAD BEEN DELIVERED TO MGA? | 10:56:38 |
| 18 | MR. RUSSELL:  AGAIN, IF YOU HAVE AN | 10:56:41 |
| 19 | UNDERSTANDING INDEPENDENT OF WHAT YOUR CLIENT TOLD YOU, | 10:56:43 |
| 20 | YOU CAN ANSWER.  BUT, OTHERWISE, I'D INSTRUCT YOU NOT | 10:56:47 |
| 21 | TO ANSWER. | 10:56:47 |
| 22 | THE WITNESS:  I DON'T HAVE AN UNDERSTANDING | 10:56:47 |
| 23 | INDEPENDENT OF -- | 10:56:48 |
| 24 | (SIMULTANEOUS COLLOQUY.) | 10:56:49 |
| 25 | ///. | |

EXHIBIT __75__

PAGE __1203__

| | | |
|---|---|---|
| 1 | BY MR. MORGAN: | 10:56:49 |
| 2 | Q    WELL, DID YOU HAVE ANY -- | 10:56:49 |
| 3 | A    -- MATERIAL THAT WAS DELIVERED. | 10:56:50 |
| 4 | Q    DID YOU HAVE ANY CONVERSATIONS WITH MS. WANG | 10:56:50 |
| 5 | ABOUT WHAT THAT MATERIAL WAS? | 10:56:52 |
| 6 | A    I HAD CONVERSATIONS ABOUT THE ORIGINS OF THE | 10:56:56 |
| 7 | BRATZ CONCEPT. | 10:57:00 |
| 8 | Q    IS THAT HOW YOU PUT IT TO MS. WANG, "THE | 10:57:00 |
| 9 | ORIGIN OF THE BRATZ CONCEPT," OR WAS THERE SOMETHING | 10:57:04 |
| 10 | MORE SPECIFIC? | 10:57:07 |
| 11 | A    I'M NOT SURE I USED THOSE WORDS PRECISELY. | 10:57:07 |
| 12 | Q    DID YOU REFER TO MS. WANG -- WITH MS. WANG TO | 10:57:10 |
| 13 | ANY DRAWING OR DESIGNS OR PROTOTYPE OR ANYTHING OF THAT | 10:57:12 |
| 14 | NATURE? | 10:57:17 |
| 15 | A    I DON'T RECALL IF I DID. | 10:57:17 |
| 16 | Q    DO YOU RECALL IF YOU REFERRED TO ANYTHING | 10:57:18 |
| 17 | TANGIBLE WHEN YOU SPOKE TO HER? | 10:57:21 |
| 18 | A    I DON'T BELIEVE I REFERRED TO ANYTHING | 10:57:23 |
| 19 | SPECIFIC. | 10:57:28 |
| 20 | Q    TO THE BEST YOU RECALL, DO YOU THINK YOU USED | 10:57:28 |
| 21 | THE WORD "CONCEPT"? | 10:57:33 |
| 22 | MR. WERDEGAR:  OBJECTION.  ASKED AND | 10:57:34 |
| 23 | ANSWERED. | 10:57:36 |
| 24 | MR. RUSSELL:  JOIN. | 10:57:38 |
| 25 | THE WITNESS:  I CAN'T RECALL THE SPECIFIC | 10:57:38 |

EXHIBIT _____

PAGE _1204_

77

| | | |
|---|---|---|
| 1 | WORDS THAT I USED IN THE CONVERSATION. | 10:57:40 |
| 2 | BY MR. MORGAN: | 10:57:41 |
| 3 | Q    YOU DID REFER TO "BRATZ"; CORRECT? | 10:57:41 |
| 4 | A    I DID.  I REFERRED TO THE WORK THAT HE WAS | 10:57:45 |
| 5 | DOING. | 10:57:47 |
| 6 | Q    AND YOUR TESTIMONY IS, WITH RESPECT TO THE | 10:57:47 |
| 7 | WORK THAT HE WAS DOING, IS THAT YOU DON'T HAVE ANY | 10:57:53 |
| 8 | INDEPENDENT UNDERSTANDING OF THAT APART FROM WHAT YOU | 10:57:55 |
| 9 | WERE TOLD BY MGA AT THAT TIME? | 10:57:57 |
| 10 | A    I SAID I HAD NO INDEPENDENT UNDERSTANDING OF | 10:58:00 |
| 11 | MATERIALS THAT MAY OR MAY NOT HAVE BEEN DELIVERED TO | 10:58:03 |
| 12 | MGA AT THE TIME. | 10:58:06 |
| 13 | Q    DID YOU HAVE ANY INDEPENDENT UNDERSTANDING OF | 10:58:08 |
| 14 | WHAT WORK MR. BRYANT HAD DONE ON THE BRATZ CONCEPT TO | 10:58:09 |
| 15 | THAT POINT? | 10:58:12 |
| 16 | MR. WERDEGAR:  OBJECTION.  VAGUE AND | 10:58:14 |
| 17 | AMBIGUOUS. | 10:58:14 |
| 18 | MR. RUSSELL:  JOIN. | 10:58:15 |
| 19 | THE WITNESS:  ASK THE QUESTION AGAIN, PLEASE. | 10:58:16 |
| 20 | BY MR. MORGAN: | 10:58:19 |
| 21 | Q    YEAH.  AT THAT TIME, DURING THIS CONVERSATION | 10:58:19 |
| 22 | WITH MS. WANG, HAD YOU HAD ANY INDEPENDENT | 10:58:22 |
| 23 | UNDERSTANDING OF WHAT WORK MR. BRYANT HAD DONE TO DATE | 10:58:24 |
| 24 | IN DEVELOPING THE BRATZ CONCEPT? | 10:58:26 |
| 25 | MR. WERDEGAR:  OBJECTION.  VAGUE.  VAGUE AND | 10:58:28 |

EXHIBIT 79

PAGE 1207

78

| | | |
|---|---|---|
| 1 | AMBIGUOUS. | 10:58:31 |
| 2 | MR. RUSSELL:  JOIN. | 10:58:32 |
| 3 | THE WITNESS:  I DID NOT HAVE AN UNDERSTANDING | 10:58:33 |
| 4 | AS TO SPECIFIC COMPONENTS OR ITEMS OF HIS WORK PRODUCT, | 10:58:39 |
| 5 | JUST -- JUST THAT THERE WAS WORK PRODUCT THAT HAD BEEN | 10:58:43 |
| 6 | DONE. | 10:58:47 |
| 7 | BY MR. MORGAN: | 10:58:47 |
| 8 | Q   AT ANY TIME DURING THIS CONVERSATION WITH | 10:58:47 |
| 9 | MS. WANG, DID SHE MENTION WITH ANY MORE SPECIFICITY | 10:58:55 |
| 10 | WHAT SORT OF WORK PRODUCT HE HAD BEEN DEVELOPING? | 10:58:59 |
| 11 | A   I CAN'T RECALL. | 10:59:04 |
| 12 | Q   SO DURING THAT ENTIRE CONVERSATION, YOU DON'T | 10:59:05 |
| 13 | RECALL WHETHER ANYBODY MENTIONED DRAWINGS OR PROTOTYPES | 10:59:08 |
| 14 | OR ANYTHING TANGIBLE? | 10:59:12 |
| 15 | A   I SAID I CAN'T RECALL AS -- IN TERMS OF MY | 10:59:14 |
| 16 | PRESENT RECOLLECTION OF THAT CONVERSATION. | 10:59:17 |
| 17 | Q   OKAY.  SO I THINK YOU SAID -- AND I'M | 10:59:19 |
| 18 | PARAPHRASING, CORRECT ME IF I'M WRONG -- THAT YOU | 10:59:23 |
| 19 | INQUIRED TO MS. WANG ABOUT MR. BRYANT'S DEVELOPMENT OF | 10:59:26 |
| 20 | THE BRATZ CONCEPT; CORRECT? | 10:59:30 |
| 21 | MR. WERDEGAR:  CAN I GET THE -- THE QUESTION | 10:59:32 |
| 22 | READ BACK.  SORRY. | 10:59:33 |
| 23 | THE REPORTER:  YES. | 10:59:47 |
| 24 | (RECORD READ.) | 10:59:48 |
| 25 | THE WITNESS:  IN A GENERAL WAY, YES. | 10:59:50 |

EXHIBIT __75__

PAGE __1206__

79

| | | |
|---|---|---|
| 1 | BY MR. MORGAN: | 10:59:52 |
| 2 | Q    OKAY.  AND WHAT WAS HER RESPONSE? | 10:59:52 |
| 3 | A    SHE ADVISED ME THAT THE WORK THAT -- THAT | 10:59:53 |
| 4 | MR. BRYANT HAD DONE IN DEVELOPING THE -- WHAT I | 10:59:56 |
| 5 | REFERRED TO AS "THE CONCEPT" WAS DONE OUTSIDE THE SCOPE | 10:59:59 |
| 6 | OF HIS EMPLOYMENT WITH MATTEL AND HAD BEEN DONE PRIOR | 11:00:06 |
| 7 | TO HIS EMPLOYMENT WITH MATTEL. | 11:00:06 |
| 8 | Q    AND DID SHE EXPLAIN THAT WITH ANY GREATER | 11:00:07 |
| 9 | LEVEL OF SPECIFICITY THAN THAT? | 11:00:15 |
| 10 | A    I DON'T REMEMBER.  I REMEMBER HER TELLING ME | 11:00:18 |
| 11 | THAT IT WAS DONE PRIOR TO COMMENCING HIS EMPLOYMENT | 11:00:22 |
| 12 | WITH MATTEL. | 11:00:28 |
| 13 | Q    DID SHE TELL YOU IN THAT CONVERSATION WHEN HE | 11:00:28 |
| 14 | HAD STARTED HIS WORK AT MATTEL? | 11:00:31 |
| 15 | A    WELL, I HAD -- AS YOU'VE SEEN FROM THE | 11:00:33 |
| 16 | DOCUMENTS I PRODUCED, MR. BRYANT DID FAX ME SOME COPIES | 11:00:37 |
| 17 | OF RECORDS THAT RELATED TO HIS EMPLOYMENT WITH MATTEL. | 11:00:41 |
| 18 | AND IT INDICATED THAT HE'D STARTED EMPLOYMENT IN | 11:00:43 |
| 19 | DECEMBER OF -- I BELIEVE IT WAS 1998. | 11:00:46 |
| 20 | Q    SO THAT FAX YOU RECEIVED FROM MR. BRYANT, | 11:00:48 |
| 21 | THIS WAS BEFORE THE CALL WITH MS. WANG? | 11:00:52 |
| 22 | A    YES. | 11:00:55 |
| 23 | Q    SO IT WAS YOUR UNDERSTANDING AT THE TIME OF | 11:00:56 |
| 24 | THAT CALL THAT MR. BRYANT HAD STARTED AT MATTEL AT -- | 11:01:13 |
| 25 | WHAT -- WHAT TIME DID YOU SAY? | 11:01:14 |

EXHIBIT ___25___

PAGE ___1207___

80

```
 1        A    WHATEVER -- WHATEVER THE DATE THE -- OF THE        11:01:17

 2   OFFER LETTER THAT HE FAXED TO ME.                           11:01:19

 3        Q    YOU DON'T RECALL, AS YOU SIT HERE TODAY, WHEN     11:01:21

 4   THAT WAS?                                                   11:01:24

 5        A    I BELIEVE IT WAS DECEMBER OF 1998.  BUT IF        11:01:24

 6   YOU WANT TO SHOW ME THE DOCUMENT, I KNOW IT SAYS THAT       11:01:26

 7   FOR SURE.                                                   11:01:29

 8        Q    AND DID YOU HAVE ANY UNDERSTANDING AT THAT        11:01:29

 9   TIME WHETHER MR. BRYANT HAD WORKED AT MATTEL               11:01:31

10   PREVIOUSLY?                                                 11:01:33

11        A    I DON'T KNOW.  I CAN'T RECALL.                    11:01:33

12        Q    DID YOU LATER LEARN THAT HE HAD WORKED AT         11:01:39

13   MATTEL PREVIOUSLY?                                          11:01:43

14             MR. RUSSELL:  AGAIN, IT CALLS FOR A "YES" OR      11:01:44

15   "NO" ANSWER.                                                11:01:47

16             THE WITNESS:  YES.                                11:01:48

17   BY MR. MORGAN:                                              11:01:49

18        Q    APPROXIMATELY WHEN DID YOU LEARN THAT?            11:01:49

19        A    2003, 2004.                                       11:01:51

20        Q    OKAY.  SO UP TO THE TIME OF THE FINALIZATION      11:01:54

21   OF MR. BRYANT'S FIRST AGREEMENT AND UNTIL QUITE A BIT       11:02:01

22   LATER, YOU WERE UNAWARE THAT HE HAD PREVIOUSLY WORKED       11:02:04

23   AT MATTEL?                                                  11:02:08

24        A    YES.                                              11:02:08

25        Q    AND I TAKE IT MS. WANG DIDN'T MENTION THAT        11:02:08
```

EXHIBIT 25

PAGE 1208

81

| | | |
|---|---|---|
| 1 | DURING THIS CONVERSATION? | 11:02:20 |
| 2 | A    NO. | 11:02:21 |
| 3 | Q    OR ANY SUBSEQUENT CONVERSATION WITH HER? | 11:02:22 |
| 4 | A    NO. | 11:02:24 |
| 5 | Q    AND YOU DIDN'T ASK DURING THAT CONVERSATION | 11:02:24 |
| 6 | IF HE HAD WORKED THERE BEFORE? | 11:02:30 |
| 7 | A    I DID NOT. | 11:02:31 |
| 8 | Q    OKAY.  RETURNING TO HER RESPONSE THAT | 11:02:34 |
| 9 | MR. BRYANT HAD DEVELOPED THIS BEFORE WORKING AT MATTEL, | 11:02:42 |
| 10 | DO YOU RECALL ANY MORE SPECIFICITY WHAT SHE SAID ABOUT | 11:02:45 |
| 11 | THAT? | 11:02:50 |
| 12 | MR. WERDEGAR:  OBJECTION.  ASKED AND | 11:02:50 |
| 13 | ANSWERED. | 11:02:51 |
| 14 | MR. RUSSELL:  JOIN. | 11:02:52 |
| 15 | THE WITNESS:  SHE TOLD ME THAT SHE HAD | 11:02:54 |
| 16 | REVIEWED THE CHRONOLOGY OF HIS DEVELOPMENT OF THE WORK | 11:02:56 |
| 17 | PRODUCT AND WAS SATISFIED THAT IT FELL OUTSIDE THE | 11:02:59 |
| 18 | SCOPE OF ANY EMPLOYMENT OBLIGATIONS TO MATTEL. | 11:03:03 |
| 19 | BY MR. MORGAN: | 11:03:20 |
| 20 | Q    WERE YOU UNDER THE IMPRESSION AT THAT TIME | 11:03:20 |
| 21 | THAT SHE HAD SOME SORT OF WRITTEN CHRONOLOGY RELATED TO | 11:03:23 |
| 22 | HIS DEVELOPMENT OF BRATZ? | 11:03:27 |
| 23 | MR. WERDEGAR:  OBJECTION.  LACKS FOUNDATION. | 11:03:29 |
| 24 | CALLS FOR SPECULATION. | 11:03:29 |
| 25 | MR. RUSSELL:  JOIN. | 11:03:30 |

EXHIBIT 75

PAGE 1209

82

| | | |
|---|---|---|
| 1 | BY MR. MORGAN: | 11:03:31 |
| 2 | Q   I'M JUST ASKING FOR YOUR UNDERSTANDING. | 11:03:31 |
| 3 | MR. WERDEGAR:  SAME OBJECTION. | 11:03:35 |
| 4 | MR. RUSSELL:  JOIN. | 11:03:37 |
| 5 | THE WITNESS:  ASK THE QUESTION AGAIN. | 11:03:37 |
| 6 | BY MR. MORGAN: | 11:03:39 |
| 7 | Q   AT THAT TIME, DID YOU FORM ANY UNDERSTANDING | 11:03:39 |
| 8 | AS TO WHETHER SHE HAD A WRITTEN CHRONOLOGY ABOUT THE | 11:03:43 |
| 9 | DEVELOPMENT?  I MEAN, IT DID SOUND LIKE SHE WAS READING | 11:03:46 |
| 10 | OFF A WRITTEN DOCUMENT. | 11:03:49 |
| 11 | A   I CAN'T -- | 11:03:50 |
| 12 | MR. WERDEGAR:  SORRY.  OBJECTION.  IT'S VAGUE | 11:03:50 |
| 13 | AND AMBIGUOUS.  LACKS FOUNDATION.  CALLS FOR | 11:03:50 |
| 14 | SPECULATION. | 11:03:54 |
| 15 | MR. RUSSELL:  JOIN. | 11:03:54 |
| 16 | THE WITNESS:  I WOULD BE ONLY SPECULATING AS | 11:03:54 |
| 17 | TO HER CONVERSATIONS WITH HER CLIENT. | 11:03:58 |
| 18 | BY MR. MORGAN: | 11:04:00 |
| 19 | Q   I'M NOT ASKING ABOUT THAT.  I'M JUST | 11:04:00 |
| 20 | WANTED -- ASKING IF YOU FORMED ANY IMPRESSION BASED ON | 11:04:02 |
| 21 | YOUR CONVERSATION THAT MAYBE SHE WAS READING FROM A | 11:04:05 |
| 22 | DOCUMENT. | 11:04:09 |
| 23 | MR. WERDEGAR:  SAME OBJECTIONS. | 11:04:09 |
| 24 | MR. RUSSELL:  JOIN. | 11:04:10 |
| 25 | THE WITNESS:  I CAN'T SAY THAT I FORMED THAT | 11:04:11 |

EXHIBIT __75__

PAGE __1210__

| | | |
|---|---|---|
| 1 | IMPRESSION OR NOT. | 11:04:11 |
| 2 | BY MR. MORGAN: | 11:04:11 |
| 3 | Q    DID SHE OFFER YOU ANY MORE SPECIFIC | 11:04:11 |
| 4 | INFORMATION ABOUT THIS CHRONOLOGY, THE SPECIFIC DATES, | 11:04:14 |
| 5 | FOR INSTANCE? | 11:04:16 |
| 6 | A    NO. | 11:04:17 |
| 7 | Q    DID YOU ASK? | 11:04:18 |
| 8 | A    I INQUIRED AS TO THE TIMING OF HIS | 11:04:22 |
| 9 | THEN-EMPLOYMENT RELATIONSHIP WITH MATTEL AND HOW IT | 11:04:26 |
| 10 | RELATED TO WHAT I WAS -- WHAT MY UNDERSTANDING OF HIS | 11:04:29 |
| 11 | EMPLOYMENT RELATIONSHIP WITH MATTEL WAS. | 11:04:33 |
| 12 | Q    AND YOUR UNDERSTANDING OF THAT RELATIONSHIP | 11:04:36 |
| 13 | WAS BASED ON SEEING THE DOCUMENT THAT MR. BRYANT HAD | 11:04:39 |
| 14 | FAXED TO YOU? | 11:04:42 |
| 15 | A    CORRECT. | 11:04:43 |
| 16 | Q    SO IS IT FAIR TO SAY THAT SHE, MS. WANG, MADE | 11:04:44 |
| 17 | A REPRESENTATION THAT THE DEVELOPMENT WAS DONE BEFORE | 11:04:49 |
| 18 | WHAT YOU UNDERSTOOD THAT START DATE TO BE AND THAT YOU | 11:04:53 |
| 19 | DIDN'T ASK HER ANY FOLLOW-UP QUESTIONS ABOUT THE | 11:04:57 |
| 20 | SPECIFIC DATES OF DEVELOPMENT? | 11:05:00 |
| 21 | MR. WERDEGAR:  OBJECTION.  MISSTATES PRIOR | 11:05:02 |
| 22 | TESTIMONY.  LEADING. | 11:05:04 |
| 23 | MR. RUSSELL:  JOIN. | 11:05:04 |
| 24 | THE WITNESS:  I BELIEVE THAT I TESTIFIED THAT | 11:05:05 |
| 25 | BASED ON THAT CONVERSATION, I WAS ASSURED THAT HE HAD | 11:05:06 |

EXHIBIT _____ 28 _____

PAGE _____ 1211 _____          84

| | | |
|---|---|---|
| 1 | DONE THE WORK OUTSIDE THE SCOPE OF HIS EMPLOYMENT WITH | 11:05:09 |
| 2 | MATTEL. | 11:05:12 |
| 3 | BY MR. MORGAN: | 11:05:14 |
| 4 | Q    AND DO YOU RECALL WHETHER ANY SPECIFIC DATES | 11:05:14 |
| 5 | WERE MENTIONED CONCERNING THE DEVELOPMENT? | 11:05:16 |
| 6 | A    OTHER THAN PRIOR TO DECEMBER OF 1998? | 11:05:19 |
| 7 | Q    RIGHT.  IT WAS PHRASED IN TERMS RELATIVE TO | 11:05:21 |
| 8 | HIS MATTEL EMPLOYMENT? | 11:05:27 |
| 9 | A    CORRECT. | 11:05:29 |
| 10 | Q    OKAY.  NOT IN TERMS OF HIS SPECIFIC DATES? | 11:05:30 |
| 11 | A    CORRECT. | 11:05:33 |
| 12 | Q    I THINK YOU MENTIONED THAT SHE REFERRED TO -- | 11:05:34 |
| 13 | SHE HAD LOOKED AT THE CHRONOLOGY AND WORK PRODUCT AND | 11:05:36 |
| 14 | WAS SATISFIED IT FELL OUTSIDE THE SCOPE OF ANY | 11:05:44 |
| 15 | OBLIGATIONS TO MATTEL. | 11:05:44 |
| 16 | DID SHE DESCRIBE IN ANY GREATER DETAIL WHAT | 11:05:45 |
| 17 | THE WORK PRODUCT SHE WAS REFERRING TO WAS? | 11:05:47 |
| 18 | A    I DON'T RECALL. | 11:05:51 |
| 19 | Q    DO YOU RECALL WHETHER SHE ACTUALLY USED THAT | 11:05:52 |
| 20 | PHRASE, "WORK PRODUCT"? | 11:05:54 |
| 21 | A    I DON'T. | 11:05:55 |
| 22 | Q    OKAY.  SO YOU DON'T RECALL HER REFERRING TO | 11:05:55 |
| 23 | ANY DESIGN DRAWINGS OR PROTOTYPES? | 11:05:58 |
| 24 | A    NO. | 11:06:00 |
| 25 | Q    SO AS A RESULT OF YOUR CONVERSATION WITH | 11:06:01 |

EXHIBIT __75__

PAGE __1212__

85

| | | |
|---|---|---|
| 1 | MS. WANG, YOU HAD NO GREATER UNDERSTANDING OF WHAT WORK | 11:06:06 |
| 2 | PRODUCT WAS AT ISSUE? | 11:06:10 |
| 3 | MR. WERDEGAR:  OBJECTION.  LEADING. | 11:06:12 |
| 4 | MR. RUSSELL:  AND VAGUE AND AMBIGUOUS. | 11:06:14 |
| 5 | THE WITNESS:  YOU'LL HAVE TO BE MORE SPECIFIC | 11:06:15 |
| 6 | ABOUT "WORK PRODUCT." | 11:06:18 |
| 7 | BY MR. MORGAN: | 11:06:20 |
| 8 | Q    WELL, DID YOU HAVE ANY MORE SPECIFIC | 11:06:20 |
| 9 | UNDERSTANDING FOLLOWING THAT CONVERSATION WITH MS. WANG | 11:06:22 |
| 10 | ABOUT WHAT WORK PRODUCT WAS AT ISSUE IN THE CONTRACT? | 11:06:25 |
| 11 | MR. WERDEGAR:  OBJECTION.  VAGUE AND | 11:06:28 |
| 12 | AMBIGUOUS.  VAGUE AS TO "AT ISSUE."  VAGUE AS TO "WORK | 11:06:29 |
| 13 | PRODUCT." | 11:06:33 |
| 14 | MR. RUSSELL:  JOIN. | 11:06:33 |
| 15 | MR. WERDEGAR:  AND ASKED AND ANSWERED. | 11:06:34 |
| 16 | MR. RUSSELL:  JOIN THAT, TOO. | 11:06:35 |
| 17 | THE WITNESS:  I CAN'T ANSWER IT ANY MORE THAN | 11:06:36 |
| 18 | IN A GENERAL CONTEXT. | 11:06:43 |
| 19 | BY MR. MORGAN: | 11:06:45 |
| 20 | Q    I'M NOT SURE I FOLLOW.  WHAT DO YOU MEAN BY | 11:06:45 |
| 21 | "GENERAL CONTEXT"? | 11:06:55 |
| 22 | A    YOU'VE ASKED ME TO DESCRIBE HIS WORK PRODUCT, | 11:06:56 |
| 23 | AND I SAID I CAN'T ANSWER THAT IN A MORE THAN | 11:06:59 |
| 24 | GENERAL -- | 11:07:01 |
| 25 | Q    WELL, MY QUESTION IS SLIGHTLY DIFFERENT.  MY | 11:07:01 |

EXHIBIT _____ 75 _____

PAGE _____ 1213 _____

86

| | | |
|---|---|---|
| 1 | QUESTION IS MUCH MORE SPECIFIC. | 11:07:02 |
| 2 | FOLLOWING THE CONVERSATION WITH MS. WANG, DID | 11:07:03 |
| 3 | YOU COME AWAY WITH ANY MORE CONCRETE UNDERSTANDING OF | 11:07:06 |
| 4 | WHAT WORK PRODUCT MR. BRYANT WAS CONTRIBUTING? | 11:07:09 |
| 5 | MR. WERDEGAR:  OBJECTION.  VAGUE AND | 11:07:12 |
| 6 | AMBIGUOUS. | 11:07:13 |
| 7 | MR. RUSSELL:  JOIN. | 11:07:14 |
| 8 | THE WITNESS:  I DON'T THINK MY -- I WOULD | 11:07:14 |
| 9 | SAY, NO. | 11:07:18 |
| 10 | BY MR. MORGAN: | 11:07:19 |
| 11 | Q    OKAY.  AND YOU DIDN'T ASK HER AT THAT TIME OR | 11:07:19 |
| 12 | DURING THAT CONVERSATION WHAT EXACTLY ARE WE TALKING | 11:07:23 |
| 13 | ABOUT HERE?  IS IT DESIGN DRAWINGS, PROTOTYPES, ET | 11:07:26 |
| 14 | CETERA?  NO QUESTIONS OF THAT VARIETY? | 11:07:29 |
| 15 | A    I DON'T RECALL. | 11:07:31 |
| 16 | Q    DID YOU ASK HER IF HE OWNED ANY COPYRIGHTS ON | 11:07:32 |
| 17 | ANY OF THESE MATERIALS? | 11:07:45 |
| 18 | A    I DID NOT. | 11:07:47 |
| 19 | Q    DID YOU ASK HER ANY FURTHER QUESTIONS ABOUT | 11:07:53 |
| 20 | HIS DEVELOPMENT OF THIS CONCEPT, EITHER THE FORM IN | 11:08:08 |
| 21 | WHICH IT WAS DEVELOPED OR THE TIMING? | 11:08:11 |
| 22 | MR. RUSSELL:  OBJECTION.  VAGUE AND | 11:08:15 |
| 23 | AMBIGUOUS. | 11:08:17 |
| 24 | THE WITNESS:  I WOULD GO BACK TO MY PREVIOUS | 11:08:17 |
| 25 | ANSWERS, THAT I WAS CONCERNED THAT THE WORK THAT HE HAD | 11:08:21 |

EXHIBIT __75__

PAGE __1214__

87

| | | |
|---|---|---|
| 1 | DONE WHICH WAS THE BASIS FOR HIS WORK FOR MGA WAS DONE | 11:08:24 |
| 2 | PRIOR TO HIS EMPLOYMENT WITH MATTEL. | 11:08:29 |
| 3 | BY MR. MORGAN: | 11:08:30 |
| 4 | Q    AND SHE, IN SUM, RESPONDED THAT THAT WAS THE | 11:08:31 |
| 5 | CASE? | 11:08:34 |
| 6 | A    YES. | 11:08:34 |
| 7 | Q    AND YOU DIDN'T ASK ANY FOLLOW-UP QUESTIONS? | 11:08:34 |
| 8 | A    I DID NOT. | 11:08:36 |
| 9 | Q    OKAY.  YOU HAD MENTIONED THAT SHE SAID THAT | 11:08:37 |
| 10 | THE CHRONOLOGY OF HIS WORK PRODUCT FELL OUTSIDE HIS | 11:08:43 |
| 11 | OBLIGATIONS TO MATTEL. | 11:08:48 |
| 12 | DID SHE TELL YOU WITH ANY MORE SPECIFICITY | 11:08:49 |
| 13 | WHAT SHE UNDERSTOOD HIS OBLIGATIONS TO MATTEL TO BE | 11:08:53 |
| 14 | DURING THAT CONVERSATION? | 11:08:58 |
| 15 | A    I DON'T RECALL. | 11:08:59 |
| 16 | Q    DID YOU ASK ANY QUESTION ABOUT WHAT THOSE | 11:09:00 |
| 17 | OBLIGATIONS WERE? | 11:09:04 |
| 18 | A    NO. | 11:09:04 |
| 19 | Q    BASED ON YOUR EXPERIENCE IN THIS INDUSTRY | 11:09:06 |
| 20 | AND -- WITH THESE TYPES OF CONTRACTS, WAS IT YOUR | 11:09:14 |
| 21 | ASSUMPTION AT THAT TIME THAT MR. BRYANT HAD SOME SORT | 11:09:18 |
| 22 | OF INVENTIONS AGREEMENT WITH MATTEL? | 11:09:21 |
| 23 | MR. RUSSELL:  OBJECT TO THE FORM OF THE | 11:09:25 |
| 24 | QUESTION.  VAGUE AND AMBIGUOUS.  LACKS FOUNDATION. | 11:09:27 |
| 25 | CALLS FOR SPECULATION.  INCOMPLETE HYPOTHETICAL. | 11:09:29 |

EXHIBIT 25

PAGE 1213

88

| | | |
|---|---|---|
| 1 | MR. WERDEGAR:  JOIN. | 11:09:32 |
| 2 | THE WITNESS:  I WAS AWARE, BASED ON THE | 11:09:33 |
| 3 | DOCUMENT HE FAXED ME, THAT HE HAD A CONFIDENTIALITY AND | 11:09:35 |
| 4 | INVENTION'S AGREEMENT WITH MATTEL COVERING HIS | 11:09:39 |
| 5 | EMPLOYMENT. | 11:09:41 |
| 6 | BY MR. MORGAN: | 11:09:42 |
| 7 | Q    AND BASED ON YOUR LONG EXPERIENCE IN THE | 11:09:42 |
| 8 | INDUSTRY, DID YOU MAKE ANY ASSUMPTIONS ABOUT WHAT THE | 11:09:44 |
| 9 | CONTENT GENERALLY OF THAT INVENTIONS AGREEMENT WOULD | 11:09:46 |
| 10 | HAVE SAID? | 11:09:50 |
| 11 | MR. RUSSELL:  OBJECT TO THE FORM OF THE | 11:09:50 |
| 12 | QUESTION.  SAME OBJECTIONS. | 11:09:53 |
| 13 | MR. WERDEGAR:  JOIN. | 11:09:55 |
| 14 | THE WITNESS:  YES. | 11:09:56 |
| 15 | BY MR. MORGAN: | 11:09:57 |
| 16 | Q    AND WHAT WAS YOUR ASSUMPTION ABOUT WHAT THAT | 11:09:57 |
| 17 | CONTENT OF THAT AGREEMENT WOULD HAVE BEEN? | 11:10:01 |
| 18 | MR. RUSSELL:  SAME OBJECTIONS. | 11:10:03 |
| 19 | THE WITNESS:  MY ASSUMPTION WAS THAT THE | 11:10:04 |
| 20 | CONFIDENTIALITY AND INVENTIONS AGREEMENT COVERED THE | 11:10:08 |
| 21 | WORK THAT HE WAS TO DO AND UNDERTAKE WHILE AN EMPLOYEE | 11:10:11 |
| 22 | OF MATTEL. | 11:10:16 |
| 23 | BY MR. MORGAN: | 11:10:18 |
| 24 | Q    OKAY.  SO IT COVERED THE WORK THAT HE WAS | 11:10:18 |
| 25 | DOING WHILE HE WAS AT MATTEL. | 11:10:21 |

EXHIBIT ___75___

PAGE ___1216___

89

| | | |
|---|---|---|
| 1 | WHAT WAS YOUR ASSUMPTION ABOUT HOW IT | 11:10:23 |
| 2 | AFFECTED THE RIGHTS TO THE WORK? | 11:10:25 |
| 3 | MR. WERDEGAR:  I'M GOING TO OBJECT.  IT | 11:10:27 |
| 4 | MISSTATES HIS PRIOR TESTIMONY.  ASSUMES FACTS.  LACKS | 11:10:28 |
| 5 | FOUNDATION.  CALLS FOR SPECULATION. | 11:10:33 |
| 6 | MR. RUSSELL:  JOIN. | 11:10:35 |
| 7 | THE WITNESS:  WOULD YOU TRY AGAIN. | 11:10:36 |
| 8 | BY MR. MORGAN: | 11:10:37 |
| 9 | Q    SURE.  I THINK YOU SAID THAT YOU ASSUMED THAT | 11:10:37 |
| 10 | AGREEMENT COVERED HIS WORK WHILE HE WAS AT MATTEL. | 11:10:39 |
| 11 | DID YOU HAVE ANY FURTHER ASSUMPTION ABOUT HOW | 11:10:42 |
| 12 | THAT AGREEMENT AFFECTED THE RIGHTS TO THAT WORK? | 11:10:44 |
| 13 | MR. WERDEGAR:  SAME OBJECTIONS. | 11:10:49 |
| 14 | MR. RUSSELL:  JOIN. | 11:10:50 |
| 15 | THE WITNESS:  MY ASSUMPTION WAS THAT AS AN | 11:10:51 |
| 16 | EMPLOYEE OF MATTEL, THE WORK THAT HE DID FOR MATTEL AS | 11:10:54 |
| 17 | AN EMPLOYEE OF MATTEL WOULD BE OWNED BY MATTEL. | 11:10:57 |
| 18 | BY MR. MORGAN: | 11:11:00 |
| 19 | Q    BECAUSE THAT'S THE WAY IT TYPICALLY WORKS IN | 11:11:00 |
| 20 | THIS INDUSTRY? | 11:11:03 |
| 21 | MR. RUSSELL:  OBJECT TO THE FORM OF THE | 11:11:04 |
| 22 | QUESTION.  INCOMPLETE HYPOTHETICAL.  LACKS FOUNDATION. | 11:11:06 |
| 23 | MR. WERDEGAR:  JOIN. | 11:11:08 |
| 24 | THE WITNESS:  THAT IS CUSTOMARY PRACTICE. | 11:11:10 |
| 25 | /// | |

EXHIBIT ___75___

PAGE ___1217___

90

| | | |
|---|---|---|
| 1 | BY MR. MORGAN: | 11:11:15 |
| 2 | Q    OKAY.  BASED ON YOUR EXPERIENCE AND THE -- | 11:11:15 |
| 3 | AND THE CUSTOMS YOU OBSERVED, DID YOU FORM ANY | 11:11:24 |
| 4 | ASSUMPTIONS ABOUT WHAT THE CONFIDENTIALITY PROVISIONS | 11:11:26 |
| 5 | WOULD HAVE ADDRESSED? | 11:11:29 |
| 6 | MR. RUSSELL:  SAME OBJECTIONS. | 11:11:31 |
| 7 | MR. WERDEGAR:  JOIN. | 11:11:32 |
| 8 | THE WITNESS:  MY ASSUMPTION IS THAT HE WAS | 11:11:35 |
| 9 | NOT PERMITTED TO DISCLOSE CONFIDENTIAL INFORMATION THAT | 11:11:37 |
| 10 | HE LEARNED IN THE COURSE OF HIS EMPLOYMENT. | 11:11:40 |
| 11 | BY MR. MORGAN: | 11:11:42 |
| 12 | Q    AND THAT'S ALSO A TERM THAT WOULD BE VERY | 11:11:42 |
| 13 | CUSTOMARY IN THESE TYPES OF AGREEMENTS; CORRECT? | 11:11:48 |
| 14 | MR. WERDEGAR:  OBJECTION.  LACKS FOUNDATION. | 11:11:51 |
| 15 | CALLS FOR SPECULATION. | 11:11:53 |
| 16 | BY MR. MORGAN: | 11:11:54 |
| 17 | Q    BASED ON YOUR EXPERIENCE. | 11:11:54 |
| 18 | A    BASED ON MY EXPERIENCE, THAT'S A CUSTOMARY | 11:11:57 |
| 19 | TERM. | 11:12:01 |
| 20 | Q    CAN YOU RECALL ANYTHING ELSE FROM THIS | 11:12:01 |
| 21 | CONVERSATION, THIS FIRST CONVERSATION WITH MS. WANG, | 11:12:04 |
| 22 | THAT WE HAVEN'T ALREADY DISCUSSED? | 11:12:06 |
| 23 | A    NO. | 11:12:08 |
| 24 | Q    ABOUT HOW LONG DID THIS CONVERSATION LAST? | 11:12:09 |
| 25 | A    I DON'T RECALL.  IT WAS NOT A LENGTHY | 11:12:12 |

EXHIBIT _____ 75

PAGE _____ 1218

91

| | | |
|---|---|---|
| 1 | A    THE FAX. | 01:56:14 |
| 2 | Q    -- THE OFFER LETTER, YOU SAID? | 01:56:14 |
| 3 | A    CORRECT. | 01:56:14 |
| 4 | Q    OKAY.  AND IN WHAT WAY DID THAT ASSURE YOU | 01:56:15 |
| 5 | THAT IT'S BEEN DEVELOPED OUTSIDE OF HIS EMPLOYMENT? | 01:56:17 |
| 6 | MR. WERDEGAR:  OBJECTION.  MISSTATES PRIOR | 01:56:20 |
| 7 | TESTIMONY. | 01:56:22 |
| 8 | MR. RUSSELL:  JOIN. | 01:56:23 |
| 9 | THE WITNESS:  I BELIEVE WHAT I TESTIFIED TO | 01:56:25 |
| 10 | IS THAT I RECEIVED HIS -- THE INFORMATION THAT HE | 01:56:27 |
| 11 | FAXED, ALONG WITH HIS COVER STATEMENT, REPRESENTING | 01:56:30 |
| 12 | THAT THAT WAS THE SUM AND SUBSTANCE OF HIS CONTRACTUAL | 01:56:34 |
| 13 | RELATIONSHIP WITH MATTEL, AND A CONVERSATION WITH | 01:56:38 |
| 14 | MS. WANG. | 01:56:42 |
| 15 | I RELIED ON THOSE ASSURANCES THAT THIS WAS | 01:56:45 |
| 16 | OUTSIDE THE SCOPE OF HIS EMPLOYMENT. | 01:56:49 |
| 17 | BY MR. MORGAN: | 01:56:51 |
| 18 | Q    OKAY.  APART FROM THOSE TWO PIECES OF | 01:56:51 |
| 19 | INFORMATION, WERE THERE ANY OTHER PIECES OF INFORMATION | 01:56:54 |
| 20 | ON WHICH YOU RELIED TO DETERMINE THAT THIS WAS OUTSIDE | 01:56:56 |
| 21 | THE SCOPE OF HIS EMPLOYMENT AT MATTEL? | 01:57:00 |
| 22 | MR. RUSSELL:  AGAIN, SAME ADMONITION. | 01:57:02 |
| 23 | THE WITNESS:  NO. | 01:57:03 |
| 24 | BY MR. MORGAN: | 01:57:04 |
| 25 | Q    OKAY.  I NOTICE THAT THIS AGREEMENT CONTAINS | 01:57:04 |

EXHIBIT ____ 35 _____

PAGE ____ 1219 _____

168

| | | |
|---|---|---|
| 1 | AN INTEGRATION CLAUSE THAT SAYS: | 01:57:24 |
| 2 | "SUPERSEDES ALL PREVIOUS AGREEMENTS, | 01:57:26 |
| 3 | WHETHER ORAL OR WRITTEN, WITH RESPECT TO | 01:57:29 |
| 4 | THE SUBJECT MATTER THEREIN." | 01:57:32 |
| 5 | AND THAT'S IN PARAGRAPH 11-F. | 01:57:34 |
| 6 | SO I'LL GO BACK TO MY PREVIOUS QUESTION, | 01:57:40 |
| 7 | WHICH WAS:  THE LANGUAGE WE WERE DISCUSSING IN | 01:57:42 |
| 8 | PARAGRAPH 5 ABOUT THE WARRANT THAT THE BRYANT WORK | 01:57:45 |
| 9 | PRODUCT IS ORIGINAL, WAS THAT THE CONTRACTUAL | 01:57:48 |
| 10 | EMBODIMENT OF THOSE ASSURANCES WE WERE JUST DISCUSSING? | 01:57:52 |
| 11 | MR. RUSSELL:  OBJECTION.  ASKED AND ANSWERED. | 01:57:57 |
| 12 | MR. WERDEGAR:  OBJECTION.  ALSO CALLS FOR A | 01:57:58 |
| 13 | LEGAL CONCLUSION. | 01:58:00 |
| 14 | THE WITNESS:  IT WAS -- THE NONINFRINGEMENT | 01:58:01 |
| 15 | WARRANTY IS A NORM, AS I TESTIFIED, THAT I START WITH. | 01:58:08 |
| 16 | AND IT INCLUDES THE ASSURANCES REGARDING THE SCOPE OF | 01:58:11 |
| 17 | HIS EMPLOYMENT WITH MATTEL. | 01:58:16 |
| 18 | BY MR. MORGAN: | 01:58:20 |
| 19 | Q   OKAY.  DID IT CONCERN YOU AT ALL THAT | 01:58:20 |
| 20 | MS. WANG WANTED TO STRIKE OUT THIS LANGUAGE? | 01:58:33 |
| 21 | A   I -- DID IT CONCERN ME?  I'M NOT SURE.  I | 01:58:36 |
| 22 | MEAN, I'M NOT SURE HOW YOU'RE ASKING THAT. | 01:58:50 |
| 23 | Q   WAS THIS SOME SORT OF RED FLAG TO YOU? | 01:58:58 |
| 24 | MR. WERDEGAR:  OBJECTION.  VAGUE AND | 01:58:58 |
| 25 | AMBIGUOUS. | 01:58:58 |

EXHIBIT ___75___

PAGE ___1220___

169

| | | |
|---|---|---|
| 1 | MR. RUSSELL:  JOIN. | 01:58:58 |
| 2 | THE WITNESS:  I DIDN'T TAKE IT AS A RED FLAG. | 01:58:58 |
| 3 | BY MR. MORGAN: | 01:59:00 |
| 4 | Q    WHAT WAS YOUR INTERPRETATION OF THEIR ATTEMPT | 01:59:00 |
| 5 | TO STRIKE THAT LANGUAGE? | 01:59:03 |
| 6 | MR. WERDEGAR:  OBJECTION.  ASSUMES FACTS. | 01:59:04 |
| 7 | THE WITNESS:  MY IMPRESSION IS THAT | 01:59:07 |
| 8 | MR. BRYANT'S ATTORNEY WAS ATTEMPTING TO LIMIT HIS | 01:59:11 |
| 9 | EXPOSURE ON A NONINFRINGEMENT WARRANTY. | 01:59:16 |
| 10 | BY MR. MORGAN: | 01:59:20 |
| 11 | Q    DID YOU HAVE REASON AT THAT TIME TO THINK | 01:59:20 |
| 12 | THAT HE HAD EXPOSURE ON MAKING THAT WARRANTY? | 01:59:24 |
| 13 | A    I HAD NO KNOWLEDGE OF ANYTHING THAT WOULD | 01:59:30 |
| 14 | LEAD ME TO BELIEVE THAT TO BE THE CASE. | 01:59:35 |
| 15 | Q    SO THEIR ATTEMPT TO STRIKE THAT LANGUAGE | 01:59:39 |
| 16 | DIDN'T, FOR YOU, TRIGGER ANY FEELING ON YOUR PART THAT, | 01:59:52 |
| 17 | I SHOULD DO SOME MORE INVESTIGATION ABOUT THIS ISSUE? | 01:59:57 |
| 18 | MR. RUSSELL:  OBJECTION.  ASKED AND ANSWERED. | 02:00:00 |
| 19 | BY MR. MORGAN: | 02:00:01 |
| 20 | Q    "THE ISSUE" BEING MR. BRYANT'S OWNERSHIP | 02:00:01 |
| 21 | RIGHTS. | 02:00:04 |
| 22 | A    NO. | 02:00:05 |
| 23 | Q    THE -- FOLLOWING RECEIPT OF THIS DRAFT FROM | 02:00:05 |
| 24 | MS. WANG, DID YOU HAVE A CONFERENCE CALL OR A PHONE | 02:00:42 |
| 25 | CALL WITH MS. O'CONNOR AND/OR MR. LARIAN ABOUT HER | 02:00:44 |

EXHIBIT  75

PAGE  1221

170

| | | |
|---|---|---|
| 1 | PROPOSAL? | 02:00:49 |
| 2 | MR. RUSSELL:  AGAIN, THIS CALLS FOR A "YES" | 02:00:50 |
| 3 | OR "NO" ANSWER. | 02:00:52 |
| 4 | THE WITNESS:  YES. | 02:00:52 |
| 5 | BY MR. MORGAN: | 02:00:53 |
| 6 | Q    MORE THAN ONE? | 02:00:53 |
| 7 | A    I DON'T KNOW FOR -- I CAN'T SAY FOR SURE. | 02:00:55 |
| 8 | Q    AND WHO WAS ON THAT CALL? | 02:00:58 |
| 9 | MR. RUSSELL:  OBJECTION.  ASSUMES FACTS. | 02:01:01 |
| 10 | THE WITNESS:  MY RECOLLECTION IS THAT I | 02:01:03 |
| 11 | DISCUSSED THIS WITH VICTORIA O'CONNOR. | 02:01:06 |
| 12 | BY MR. MORGAN: | 02:01:08 |
| 13 | Q    OKAY.  IS THAT AROUND THE DAY THAT YOU | 02:01:08 |
| 14 | RECEIVED IT? | 02:01:12 |
| 15 | A    YES. | 02:01:12 |
| 16 | Q    AND YOU DIDN'T HAVE ANY DIRECT DISCUSSIONS | 02:01:15 |
| 17 | WITH MR. LARIAN ABOUT IT? | 02:01:20 |
| 18 | A    NOT THAT I RECALL. | 02:01:21 |
| 19 | Q    OR ANYONE ELSE AT MGA? | 02:01:22 |
| 20 | A    NO. | 02:01:24 |
| 21 | Q    DO YOU KNOW, THAT CONVERSATION, WAS THAT | 02:01:24 |
| 22 | BEFORE OR AFTER SHE SPOKE WITH MR. BRYANT? | 02:0L:38 |
| 23 | MR. WERDEGAR:  LACKS FOUNDATION. | 02:0L:39 |
| 24 | THE WITNESS:  SHE WHO?  WHOM ARE YOU | 02:0L:41 |
| 25 | REFERRING TO AS "SHE"? | 02:0L:43 |

EXHIBIT _____ 7S

PAGE _____ 1222

171

| | | |
|---|---|---|
| 1 | MR. WERDEGAR:  I'M GOING TO OBJECT AS VAGUE. | 03:08:13 |
| 2 | THE WITNESS:  NOT A PROBLEM. | 03:08:14 |
| 3 | THE ANSWER TO YOUR QUESTION IS, NO. | 03:08:16 |
| 4 | MR. MORGAN:  NOW, SEE, IF YOU'LL LET HIM | 03:08:19 |
| 5 | ANSWER THAT ONE, THEN WE CAN JUST STOP. | 03:08:21 |
| 6 | MR. WERDEGAR:  YEAH, BUT THAT TAKES THE FUN | 03:08:23 |
| 7 | OUT OF IT. | 03:08:25 |
| 8 | MR. RUSSELL:  I ALWAYS LIKE TO KEEP THE COW | 03:08:26 |
| 9 | IN THE BARN. | 03:08:28 |
| 10 | THE WITNESS:  IT'S AN INTERESTING NAME, BUT | 03:08:29 |
| 11 | I'VE NEVER HEARD IT. | 03:08:32 |
| 12 | MR. MORGAN:  WE NEED THE BIG FOLDERS NEXT | 03:08:34 |
| 13 | TIME. | 03:08:38 |
| 14 | MS. BUCHAKJIAN:  WE'RE RUNNING LOW. | 03:08:38 |
| 15 | BY MR. MORGAN: | 03:08:48 |
| 16 | Q    I THINK YOU TESTIFIED EARLIER THAT YOU HAD | 03:08:48 |
| 17 | STOPPED DOING ANY SUBSTANTIAL WORK FOR MGA SOMETIME IN | 03:08:50 |
| 18 | 2003, MAYBE EARLIER. | 03:08:55 |
| 19 | A    I BELIEVE I TESTIFIED 2002. | 03:08:58 |
| 20 | Q    OKAY.  THAT'S FINE. | 03:09:00 |
| 21 | ARE YOU AWARE OF ANY AGREEMENT BETWEEN MGA | 03:09:01 |
| 22 | AND MR. BRYANT THAT WAS EXECUTED IN FEBRUARY OF 2004? | 03:09:04 |
| 23 | MR. RUSSELL:  AGAIN, I'LL ADMONISH YOU NOT TO | 03:09:08 |
| 24 | DISCLOSE ANY ATTORNEY-CLIENT COMMUNICATIONS.  BUT, | 03:09:11 |
| 25 | OTHERWISE, YOU CAN ANSWER. | 03:09:13 |

EXHIBIT __75__

PAGE __1223__

| | | |
|---|---|---|
| 1 | THE WITNESS:  I AM NOT AWARE. | 03:09:15 |
| 2 | BY MR. MORGAN: | 03:09:17 |
| 3 | Q    OKAY.  THIS DOCUMENT PURPORTS TO BE A | 03:09:17 |
| 4 | MODIFICATION OF THE ORIGINAL DOCUMENT THAT YOU WERE | 03:09:21 |
| 5 | INVOLVED IN DRAFTING. | 03:09:23 |
| 6 | DOES THAT REFRESH YOUR RECOLLECTION THAT | 03:09:25 |
| 7 | MAYBE YOU NEVER HEARD OF THIS MODIFICATION? | 03:09:27 |
| 8 | MR. WERDEGAR:  OBJECT TO THE EXTENT YOU'RE | 03:09:29 |
| 9 | PURPORTING TO SUMMARIZE OR DESCRIBE A DOCUMENT.  THE | 03:09:32 |
| 10 | DOCUMENT SPEAKS FOR ITSELF. | 03:09:34 |
| 11 | MR. RUSSELL:  AND SAME ADMONITION. | 03:09:35 |
| 12 | BY MR. MORGAN: | 03:09:36 |
| 13 | Q    THE DOCUMENT IS ENTITLED "MODIFICATION AND | 03:09:36 |
| 14 | CLARIFICATION OF THE AGREEMENT DATED SEPTEMBER 18TH, | 03:09:39 |
| 15 | 2000." | 03:09:39 |
| 16 | STILL UNAWARE? | 03:09:39 |
| 17 | A    STILL UNAWARE. | 03:09:41 |
| 18 | Q    APART FROM YOURSELF, WERE YOU AWARE OF ANYONE | 03:09:43 |
| 19 | ELSE WHO WAS ACTING ON MGA'S BEHALF, EITHER INTERNALLY | 03:10:27 |
| 20 | AT MGA OR IN YOUR OFFICE, WHO WAS UNDERTAKING ANY | 03:10:32 |
| 21 | INVESTIGATION IN CONNECTION WITH THE NEGOTIATION OF | 03:10:36 |
| 22 | MR. BRYANT'S AGREEMENT ABOUT HIS OWNERSHIP'S RIGHTS, | 03:10:39 |
| 23 | ANY PREEXISTING INTELLECTUAL PROPERTY AGREEMENTS? | 03:10:43 |
| 24 | MR. RUSSELL:  I'LL OBJECT.  THE QUESTION IS | 03:10:48 |
| 25 | VAGUE AND AMBIGUOUS, LACKS FOUNDATION, ASSUMES FACTS | 03:10:50 |

EXHIBIT ___ X̄

PAGE ___ 1224          218

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

| | |
|---|---|
| 1 | NOT IN EVIDENCE AND IT CALLS FOR SPECULATION. | 03:10:52 |
| 2 | MR. WERDEGAR: I'M ALSO GOING TO OBJECT AS | 03:10:53 |
| 3 | VAGUE AS TO THE AGREEMENT. WE'VE ACTUALLY TALKED ABOUT | 03:10:55 |
| 4 | A SERIES OF AGREEMENTS NOW, AND I DON'T KNOW WHICH ONE | 03:10:57 |
| 5 | YOU'RE REFERRING TO. | 03:10:59 |
| 6 | MR. MORGAN: SURE. | 03:11:01 |
| 7 | Q  I AM REFERRING TO THE FINALIZED EXECUTED | 03:11:01 |
| 8 | SEPTEMBER 18TH, 2000, AGREEMENT. AND I REALIZE THAT | 03:11:08 |
| 9 | WAS A LONG QUESTION. | 03:11:08 |
| 10 | WHAT I'M TRYING TO GET AT IS: YOU TALKED | 03:11:08 |
| 11 | ABOUT, YOU KNOW, YOUR CONVERSATION WITH MS. WANG AND | 03:11:09 |
| 12 | YOUR -- THE FAX THAT YOU RECEIVED FROM MR. BRYANT. | 03:11:11 |
| 13 | AND I'M WONDERING IF YOU'RE AWARE WHETHER | 03:11:14 |
| 14 | ANYBODY ELSE AT MGA -- LET'S START WITH THAT -- WAS | 03:11:17 |
| 15 | DOING ANY INVESTIGATION ON THEIR OWN INTO MR. BRYANT'S | 03:11:25 |
| 16 | OWNERSHIP AND INVENTION OF THE -- THE BRATZ WORK | 03:11:25 |
| 17 | PRODUCT? | 03:11:27 |
| 18 | MR. RUSSELL: AGAIN, I'M GOING TO ADMONISH | 03:11:27 |
| 19 | YOU NOT TO DISCLOSE ANY ATTORNEY-CLIENT COMMUNICATIONS; | 03:11:29 |
| 20 | OTHERWISE, YOU CAN ANSWER. | 03:11:32 |
| 21 | THE WITNESS: I HAVE NO KNOWLEDGE. | 03:11:40 |
| 22 | BY MR. MORGAN: | 03:11:43 |
| 23 | Q  OKAY. AND NOBODY ELSE FROM YOUR OFFICE WAS | 03:11:43 |
| 24 | DOING ANYTHING OF THAT NATURE? | 03:11:46 |
| 25 | A  WHICH OFFICE ARE YOU REFERRING TO? | 03:11:48 |

EXHIBIT _____ 75

PAGE _____ 1225          219

| | | |
|---|---|---|
| 1 | Q    WELL, AT THAT TIME I GUESS YOU WOULD HAVE | 03:11:49 |
| 2 | BEEN AT THE FISCHBACH OFFICE; CORRECT? | 03:11:52 |
| 3 | A    NO ONE ELSE WAS HANDLING MGA MATTERS. | 03:11:54 |
| 4 | Q·   AT THE TIME YOU WERE NEGOTIATING MR. BRYANT'S | 03:11:57 |
| 5 | AGREEMENT, DID YOU KNOW ANYTHING -- DID YOU LEARN | 03:12:14 |
| 6 | ANYTHING ABOUT THE NATURE OF THE WORK THAT HE WAS DOING | 03:12:16 |
| 7 | AT MATTEL? | 03:12:19 |
| 8 | MR. RUSSELL:  AGAIN, I'LL ADMONISH YOU NOT TO | 03:12:21 |
| 9 | DISCLOSE ANYTHING YOU LEARNED FROM THE CLIENT WITH | 03:12:24 |
| 10 | RESPECT TO THAT. | 03:12:26 |
| 11 | THE WITNESS:  WHAT I KNEW I LEARNED FROM MGA. | 03:12:26 |
| 12 | BY MR. MORGAN: | 03:12:28 |
| 13 | Q    OKAY.  SO WITHOUT GETTING THE SUBSTANCE, YOU | 03:12:28 |
| 14 | DID HAVE SOME UNDERSTANDING BASED ON COMMUNICATION WITH | 03:12:34 |
| 15 | SOMEBODY AT MGA ABOUT THE NATURE OF WHAT MR. BRYANT WAS | 03:12:38 |
| 16 | CURRENTLY DOING AT MATTEL? | 03:12:41 |
| 17 | MR. WERDEGAR:  OBJECTION.  MISSTATES PRIOR | 03:12:43 |
| 18 | TESTIMONY. | 03:12:45 |
| 19 | MR. RUSSELL:  AGREE.  AND CALLS FOR A "YES" | 03:12:46 |
| 20 | OR "NO" ANSWER. | 03:12:47 |
| 21 | THE WITNESS:  OKAY.  WANT TO TRY THAT AGAIN, | 03:12:48 |
| 22 | PLEASE. | 03:12:51 |
| 23 | BY MR. MORGAN: | 03:12:51 |
| 24 | Q    SURE.  AT THE TIME YOU WERE NEGOTIATING | 03:12:51 |
| 25 | MR. BRYANT'S AGREEMENT, IS IT CORRECT THAT BASED ON | 03:12:53 |

EXHIBIT ____ 75

PAGE ____ 1226

220

| | | |
|---|---|---|
| 1 | COMMUNICATIONS WITH SOMEONE AT MGA, YOU HAD SOME | 03:12:57 |
| 2 | UNDERSTANDING OF THE NATURE OF THE WORK HE WAS | 03:12:59 |
| 3 | CURRENTLY DOING AT MATTEL? | 03:13:01 |
| 4 | A    YES. | 03:13:02 |
| 5 | Q    OKAY.  AND WHO WERE THOSE CONVERSATIONS -- | 03:13:03 |
| 6 | COMMUNICATIONS WITH? | 03:13:03 |
| 7 | A    VICTORIA O'CONNOR. | 03:13:05 |
| 8 | Q    APART FROM THE FAX THAT MR. BRYANT SENT YOU, | 03:13:10 |
| 9 | DID YOU SEE ANY DOCUMENTS RELATING TO THE NATURE OF THE | 03:13:15 |
| 10 | WORK HE WAS DOING AT THAT TIME? | 03:13:20 |
| 11 | MR. RUSSELL:  CALLS FOR A "YES" OR "NO" | 03:13:21 |
| 12 | ANSWER. | 03:13:23 |
| 13 | THE WITNESS:  NO. | 03:13:23 |
| 14 | BY MR. MORGAN: | 03:13:23 |
| 15 | Q    THE CONVERSATION OR THE COMMUNICATION WITH | 03:13:23 |
| 16 | MS. O'CONNOR YOU JUST REFERRED TO, DID SHE INDICATE | 03:13:30 |
| 17 | THAT HER INFORMATION HAD COME FROM MR. BRYANT? | 03:13:36 |
| 18 | MR. RUSSELL:  I'M SORRY.  CAN WE HAVE THAT | 03:13:39 |
| 19 | QUESTION AGAIN. | 03:13:40 |
| 20 | MR. MORGAN:  I'LL JUST ASK IT AGAIN. | 03:13:41 |
| 21 | Q    THE CONVERSATION -- THE COMMUNICATION YOU | 03:13:42 |
| 22 | REFERRED TO WITH MS. O'CONNOR ABOUT THE NATURE OF THE | 03:13:43 |
| 23 | WORK THAT MR. BRYANT WAS DOING AT MATTEL, DID SHE SAY | 03:13:46 |
| 24 | THAT HER INFORMATION CAME FROM MR. BRYANT? | 03:13:48 |
| 25 | A .   I CAN'T RECALL. | 03:13:53 |

EXHIBIT ___ 75

PAGE ___ 1227

221

| | | |
|---|---|---|
| 1 | YOU SHOULD END THIS THING. | 03:24:00 |
| 2 | BY MR. MORGAN: | 03:24:03 |
| 3 | Q   WE TALKED A LITTLE BIT ABOUT THINGS THAT YOU | 03:24:03 |
| 4 | ASSUMED WOULD OR WOULD NOT HAVE BEEN IN MR. BRYANT'S | 03:24:28 |
| 5 | AGREEMENT WITH MATTEL. | 03:24:32 |
| 6 | DID YOU MAKE AN ASSUMPTION THAT THERE WOULD | 03:24:35 |
| 7 | BE A CLAUSE IN THERE ADDRESSING THE TAKING OF | 03:24:37 |
| 8 | CONFIDENTIAL INFORMATION FROM MATTEL WHEN HE LEFT HIS | 03:24:44 |
| 9 | EMPLOYMENT THERE? | 03:24:46 |
| 10 | MR. RUSSELL:  OBJECTION.  VAGUE AND AMBIGUOUS | 03:24:47 |
| 11 | AND LACKS FOUNDATION. | 03:24:50 |
| 12 | THE WITNESS:  I MADE NO SPECIFIC ASSUMPTIONS | 03:24:57 |
| 13 | OTHER THAN THAT IT WOULD HAVE BEEN A STANDARD | 03:25:03 |
| 14 | NONCONFIDENTIALITY AGREEMENT PROTECTING THE | 03:25:09 |
| 15 | CONFIDENTIALITY OF INFORMATION AN EMPLOYEE LEARNS | 03:25:13 |
| 16 | DURING THE COURSE OF THEIR EMPLOYMENT. | 03:25:15 |
| 17 | BY MR. MORGAN: | 03:25:17 |
| 18 | Q   AND THERE WAS A PROVISION OF THAT EFFECT IN | 03:25:17 |
| 19 | THE AGREEMENT THAT YOU DRAFTED BETWEEN MR. BRYANT AND | 03:25:23 |
| 20 | MGA; CORRECT? | 03:25:30 |
| 21 | MR. RUSSELL:  OBJECTION.  THE DOCUMENT SPEAKS | 03:25:31 |
| 22 | FOR ITSELF. | 03:25:33 |
| 23 | THE WITNESS:  AS TO HIS EMPLOYMENT WITH | 03:25:34 |
| 24 | MATTEL? | 03:25:34 |
| 25 | BY MR. MORGAN: | 03:25:36 |

EXHIBIT ___75___

PAGE ___1227.101___

231

```
1    STATE OF CALIFORNIA      )
                              )  SS.
2    COUNTY OF LOS ANGELES    )

3

4

5         I, DAVID ROSENBAUM, HEREBY CERTIFY UNDER PENALTY OF

6    PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT THE

7    FOREGOING IS TRUE AND CORRECT.

8         EXECUTED THIS _____ DAY OF

9    _____, 2008, AT

10   _____, CALIFORNIA.

11

12

13

14

15

16                        _____

17                            DAVID ROSENBAUM

18

19

20

21

22

23

24              EXHIBIT ____75____

25              PAGE ____122B____
```

248

1    STATE OF CALIFORNIA      )

                             )  SS.

2    COUNTY OF LOS ANGELES    )

3

4

5         I, APRIL CRUZ CACULITAN, CSR 12437, IN AND FOR THE

6    STATE OF CALIFORNIA, DO HEREBY CERTIFY:

7         THAT, PRIOR TO BEING EXAMINED, THE DEPONENT NAMED IN

8    THE FOREGOING DEPOSITION WAS BY ME DULY SWORN TO TESTIFY

9    THE TRUTH, THE WHOLE TRUTH AND NOTHING BUT THE TRUTH;

10        THAT SAID DEPOSITION WAS TAKEN DOWN BY ME IN SHORTHAND

11   AT THE TIME AND PLACE THEREIN NAMED, AND THEREAFTER REDUCED

12   TO TYPEWRITING UNDER MY DIRECTION, AND THE SAME IS A TRUE,

13   CORRECT AND COMPLETE TRANSCRIPT OF SAID PROCEEDINGS.

14        I FURTHER CERTIFY THAT I AM NOT INTERESTED IN THE

15   EVENT OF THE ACTION.

16        WITNESS MY HAND THIS ____13th____ DAY OF

17   _FEBRUARY_____, 2008.

18

19

20                         APRIL CRUZ CACULITAN

21                         CERTIFIED SHORTHAND

22                         REPORTER FOR THE

23                         STATE OF CALIFORNIA

24

25                    EXHIBIT ___75___

                      PAGE ___1229___

                                                          249

**EXHIBIT 76**



**GENTLE GIANT STUDIOS,INC**

1115 CHESTNUT ST.
BURBANK, CA 91506
(818) 557-8681
Federal ID#95-4590567

# Invoice

| DATE | INVOICE NO. |
|------|-------------|
| 10/11/00 | 2362 |

| BILL TO | SHIP TO |
|---------|---------|
| Margaret Leahy | |

| TERMS | DUE DATE | SHIP DATE | SHIP VIA |
|-------|----------|-----------|----------|
| | 10/11/00 | 10/11/00 | |

| ITEM | DESCRIPTION | QTY | RATE | AMOUNT |
|------|-------------|-----|------|--------|
| Molding | Molding of 4 pc Doll (Head, Body, 2 arms) | 1 | 300.00 | 300.00T |
| Casting | casting of above | 3 | 180.00 | 540.00T |
| Casting | discount of above | 1 | -180.00 | -180.00T |
| | Resale | 1 | 0.00% | 0.00 |

We look forward to working with you on this project!!

| | **Total** | $660.00 |

CONFIDENTIAL ATTORNEYS' EYES ONLY

KMW-L 00425

EXHIBIT _____ 76 _____

PAGE _____ 1230 _____

1134 - 1

**EXHIBIT 77**

| | |
|---|---|
| **From:** | Isaac Larian |
| **Sent:** | Tuesday, October 10, 2000 6:38 PM |
| **To:** | Victoria O'Connor |
| **Cc:** | Dennis Medici |
| **Subject:** | RE: CARTER COMPENSATION |

from the date he signed the contract.

-----Original Message-----

| | |
|---|---|
| **From:** | Victoria O'Connor |
| **Sent:** | Tuesday, October 10, 2000 10:56 AM |
| **To:** | Isaac Larian |
| **Cc:** | Dennis Medici |
| **Subject:** | FW: CARTER COMPENSATION |

Do you want to start his salary for the month of Octoebr since he began in September? Please advise.

-----Original Message-----

| | |
|---|---|
| **From:** | Paula Treantafelles |
| **Sent:** | Tuesday, October 10, 2000 9:02 AM |
| **To:** | Victoria O'Connor |
| **Subject:** | RE: CARTER COMPENSATION |

I would say that Carter has worked on average about 4 hours a day and we began working on this line the first part of September.

-----Original Message-----

| | |
|---|---|
| **From:** | Victoria O'Connor |
| **Sent:** | Tuesday, October 10, 2000 8:11 AM |
| **To:** | Paula Treantafelles |
| **Subject:** | FW: CARTER COMPENSATION |

Please let me know how many hours Carter has worked and the day he started meetings with you.  Thanks.

-----Original Message-----

| | |
|---|---|
| **From:** | Dennis Medici |
| **Sent:** | Tuesday, October 10, 2000 6:46 AM |
| **To:** | Victoria O'Connor |
| **Subject:** | CARTER COMPENSATION |

Victoria,
Please reply what amount we should pay Carter and have Isaac approve.  Thanks.

Dennis Medici
MGA Entertainment
(818) 894-2525
(818) 830-7176 fax

EX. NO. 305
PAGES 7, 18, 06
A. PRAXMARER, CSR • WIT: LARIAN

CONFIDENTIAL
ATTORNEY'S EYES ONLY

MGA004717

305

EXHIBIT 77

PAGE 1231

EXHIBIT 78

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL, )
)
PLAINTIFF, )
)
V. )   NO.  CV 04-9040 SGL (RNBX)
)
MATTEL, INC., A DELAWARE )
CORPORATION, )
)
DEFENDANTS. )
————————————————)
)
AND CONSOLIDATED ACTION (S). )
————————————————)

# C O N F I D E N T I A L

(ATTORNEYS' EYES ONLY)

## DEPOSITION OF PAULA GARCIA

## OCTOBER 9, 2007

REPORTED BY:
J'ANA SIEGERS
CSR NO.  10845
JOB NO. 07AE633-JS

EXHIBIT _____ 78 _____

PAGE _____ 1252 _____

**A∂E**
COURT REPORTERS
515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                   EASTERN DIVISION

4

5    CARTER BRYANT, AN INDIVIDUAL,)
                                  )  CASE NO.
6              PLAINTIFF,         )  CV 04-9049 SGL (RNBX)
                                  )
7        VS.                      )
                                  )
8    MATTEL, INC., A DELAWARE     )
     CORPORATION,                 )
9                                 )
               DEFENDANT.         )
10                                )
     ─────────────────────────────)
11                                )
     AND CONSOLIDATED ACTIONS.    )
12   ─────────────────────────────)

13

14

15

16          CONFIDENTIAL - ATTORNEYS' EYES ONLY

17

18                   VOLUME III

19

20        VIDEOTAPED DEPOSITION OF **PAULA GARCIA**,

21     TAKEN ON BEHALF OF THE DEFENDANT, AT

22     865 SOUTH FIGUEROA STREET, TENTH FLOOR,

23     LOS ANGELES, CALIFORNIA, COMMENCING AT

24     9:49 A.M., TUESDAY, OCTOBER 9, 2007,

25     BEFORE J'ANA SIEGERS, CSR NUMBER 10845.

EXHIBIT ___78___

PAGE ___1233___

652

```
 1   APPEARANCES OF COUNSEL:

 2

 3   FOR PLAINTIFF CARTER BRYANT:

 4        KEKER & VAN NEST, LLP
          BY:  MICHAEL H. PAGE, ESQ.
 5        710 SANSOME STREET
          SAN FRANCISCO, CALIFORNIA 94111
 6        (415) 391-5400
          MPAGE@KVN.COM
 7

 8

 9   FOR DEFENDANT MATTEL, INC.:

          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
10        BY:  MICHAEL T. ZELLER, ESQ.
               BRIDGET HAULER, ESQ.
11        865 SOUTH FIGUEROA STREET
          TENTH FLOOR
12        LOS ANGELES, CALIFORNIA 90017-2543
          (213) 443-3000
13        MICHAELZELLER@QUINNEMANUEL.COM
          BRIDGETHAULER@QUINNEMANUEL.COM
14

15

16   FOR MGA ENTERTAINMENT, INC.:

17        O'MELVENY & MYERS, LLP
          BY:  DIANA M. TORRES, ESQ.
18        400 SOUTH HOPE STREET
          LOS ANGELES, CALIFORNIA 90071-2899
19        (213) 430-6000
          DTORRES@OMM.COM

20

21

22   ALSO PRESENT:

23        PETER ACHESON, JTV LITIGATION SERVICES, INC.

24        MICHAEL MOORE, MATTEL, INC.

25        DAPHNE GRONICH, MGA ENTERTAINMENT, INC.
          (BEGINNING AT PAGE 663)
```

EXHIBIT _____ 78

PAGE _____ 1234

653

| | | |
|---|---|---|
| 04:09:35 | 1 | A.   HE -- HE HAD SUGGESTED IT. |
| 04:09:42 | 2 | Q.   HE WAS THE FIRST ONE THAT SUGGESTED IT |
| 04:09:46 | 3 | AMONG THE PEOPLE WORKING ON IT AT THE TIME IN 2000, |
| 04:09:51 | 4 | RIGHT? |
| 04:09:55 | 5 | A.   AT THE TIME OF HIS SUGGESTION?   SORRY. |
| 04:09:59 | 6 | Q.   WELL, ALL I'M TRYING -- I GUESS WHAT I'M |
| 04:10:02 | 7 | DRIVING AT IS -- IS AMONG ALL THE PEOPLE WHO WORKED |
| 04:10:05 | 8 | ON BRATZ, HE WAS THE PERSON WHO FIRST SUGGESTED IT, |
| 04:10:08 | 9 | RIGHT? |
| 04:10:13 | 10 | A.   YES. |
| 04:10:16 | 11 | Q.   PRIOR TO THE TIME THAT YOU HAD PREPARED |
| 04:10:18 | 12 | EXHIBIT 923, WERE YOU AWARE THAT CARTER BRYANT HAD |
| 04:10:22 | 13 | BEEN IN CONTACT WITH ONE OR MORE VENDORS TO SOURCE |
| 04:10:29 | 14 | SARAN HAIR FOR THE BRATZ DOLLS? |
| 04:10:34 | 15 | A.   MAY I HAVE THE QUESTION REPEATED, PLEASE? |
| 04:10:48 | 16 | MR. ZELLER:   SURE. |
| 04:10:48 | 17 | GO AHEAD AND READ IT BACK. |
| | 18 | (THE DEPOSITION OFFICER READ THE |
| | 19 | RECORD AS FOLLOWS: |
| | 20 | "QUESTION:   PRIOR TO THE TIME THAT |
| | 21 | YOU HAD PREPARED EXHIBIT 923, WERE |
| | 22 | YOU AWARE THAT CARTER BRYANT HAD BEEN |
| | 23 | IN CONTACT WITH ONE OR MORE VENDORS |
| | 24 | TO SOURCE SARAN HAIR FOR THE BRATZ |
| | 25 | DOLLS?")   EXHIBIT   78 |

PAGE   1234.001

839

| | | |
|---|---|---|
| 04:10:53 | 1 | THE DEPONENT: YES. PER MY -- YES. |
| 04:10:59 | 2 | BY MR. ZELLER: |
| 04:11:00 | 3 | Q. WERE YOU THE ONE WHO ASKED HIM TO CONTACT |
| 04:11:02 | 4 | THEM? |
| 04:11:06 | 5 | A. I DON'T BELIEVE SO. |
| 04:11:09 | 6 | Q. DO YOU HAVE ANY UNDERSTANDING OR |
| 04:11:10 | 7 | INFORMATION ABOUT WHAT, IF ANYTHING, PROMPTED CARTER |
| 04:11:15 | 8 | BRYANT TO CONTACT THE SARAN HAIR VENDOR OR VENDORS |
| 04:11:21 | 9 | HIMSELF? |
| 04:11:24 | 10 | MS. TORRES: OBJECTION. CALLS FOR |
| 04:11:24 | 11 | SPECULATION. |
| 04:11:29 | 12 | THE DEPONENT: I -- IN MY EXPLORATORY |
| 04:11:34 | 13 | PHASE OF DEVELOPMENT, I ASKED CARTER -- ASSUMING IN |
| 04:11:42 | 14 | THE EVENT THAT BRATZ WOULD GO FORWARD, I WAS |
| 04:11:47 | 15 | INTERESTED IN HIS OPINION ABOUT HAIR MATERIAL TYPE. |
| 04:12:15 | 16 | MR. ZELLER: CAN I HAVE THAT ANSWER READ |
| 04:12:15 | 17 | BACK, PLEASE? |
| | 18 | (THE DEPOSITION OFFICER READ THE |
| | 19 | RECORD AS FOLLOWS: |
| | 20 | "ANSWER: I -- IN MY EXPLORATORY |
| | 21 | PHASE OF DEVELOPMENT, I ASKED |
| | 22 | CARTER -- ASSUMING IN THE EVENT THAT |
| | 23 | BRATZ WOULD GO FORWARD, I WAS |
| | 24 | INTERESTED IN HIS OPINION ABOUT HAIR |
| | 25 | MATERIAL TYPE.") EXHIBIT 78 |

PAGE 1234.002

840

A & E Court Reporters          (213) 955-0070          Fax: (213) 955-0077

04:12:19  1    BY MR. ZELLER:

04:12:19  2        Q.   IS IT YOUR UNDERSTANDING THAT'S WHAT

04:12:21  3    PROMPTED CARTER BRYANT TO CONTACT ONE OR MORE HAIR

04:12:25  4    VENDORS?

04:12:26  5            MS. TORRES:   OBJECTION.   LACK OF

04:12:27  6    FOUNDATION.   CALLS FOR SPECULATION.

04:12:33  7            THE DEPONENT:   I'M NOT -- I CAN'T BE SURE

04:12:34  8    EXACTLY WHY CARTER MADE THAT DECISION, BUT IT'S

04:12:36  9    POSSIBLE THAT THAT WAS WHAT PROMPTED HIM.

04:12:40  10   BY MR. ZELLER:

04:12:41  11       Q.   AT SOME POINT DID CARTER TELL YOU DIRECTLY

04:12:44  12   THAT HE HAD CONTACTED ONE OR MORE VENDORS FOR SARAN

04:12:49  13   HAIR FOR THE BRATZ DOLLS?

04:12:53  14       A.   YES.

04:12:53  15       Q.   AND WHAT DID HE TELL YOU?

04:12:59  16       A.   I DON'T REMEMBER EXACTLY.

04:13:03  17       Q.   PLEASE TELL ME WHAT YOU DO RECALL

04:13:04  18   GENERALLY.

04:13:05  19       A.   I BELIEVE HE WAS SEEKING INFORMATION

04:13:15  20   ABOUT -- WELL, INTERESTED IN GETTING SAMPLES,

04:13:20  21   GETTING -- I THINK -- TO BE HONEST WITH YOU, I THINK

04:13:28  22   THAT'S WHAT WAS PROBABLY HIS OBJECTIVE, WAS TO GET

04:13:31  23   SWATCH CARDS AND SAMPLES OF SOME OF THEIR MATERIAL,

04:13:37  24   TO MY MEMORY.

04:13:41  25       Q.   DID YOU HAVE AN UNDERSTANDING BACK AT THAT

841

EXHIBIT _____78_____

PAGE _1234.003_

| | | |
|---|---|---|
| 05:11:17 | 1 | A.   CORRECT. |
| 05:11:20 | 2 | Q.   SO THEN IF I ASKED YOU THE QUESTIONS ABOUT |
| 05:11:22 | 3 | "HAIR PLAY" AS USED IN THIS SENTENCE AND ASKED YOU |
| 05:11:28 | 4 | ABOUT THE CHANGEABLE HAIR, YOU'D GIVE ME THE SAME |
| 05:11:31 | 5 | ANSWERS? |
| 05:11:32 | 6 | A.   YES. |
| 05:11:36 | 7 | Q.   CONTINUING ON WITH THE "CONCEPT OVERVIEW" |
| 05:11:38 | 8 | SECTION IN EXHIBIT 923, SEE WHERE IT SAYS: |
| 05:11:43 | 9 | "THESE DOLLS WILL BE SOLD WITH |
| 05:11:44 | 10 | TWO OUTFITS AND HAIRSTYLES FOR BOTH |
| 05:11:47 | 11 | DAYTIME AND NIGHTTIME LOOKS"? |
| 05:11:53 | 12 | DO YOU SEE THAT? |
| 05:11:54 | 13 | A.   YES. |
| 05:11:55 | 14 | Q.   WAS IT YOUR DECISION THAT THIS IS HOW THE |
| 05:11:56 | 15 | DOLLS WOULD BE SOLD? |
| 05:11:57 | 16 | MS. TORRES:   OBJECTION.   VAGUE. |
| 05:12:04 | 17 | THE DEPONENT:   YES. |
| 05:12:05 | 18 | BY MR. ZELLER: |
| 05:12:06 | 19 | Q.   AND WAS THIS A CONCEPT THAT CARTER BRYANT |
| 05:12:08 | 20 | HAD COME UP WITH? |
| 05:12:13 | 21 | MS. TORRES:   OBJECTION.   VAGUE. |
| 05:12:17 | 22 | THE DEPONENT:   TRULY, I CAN'T REMEMBER. |
| 05:12:20 | 23 | BY MR. ZELLER: |
| 05:12:21 | 24 | Q.   DO YOU THINK YOU CAME UP WITH IT? |
| 05:12:24 | 25 | A.   I'M NOT SURE. |

EXHIBIT _____ 78

PAGE _____ 1235

872

| | | |
|---|---|---|
| 05:12:31 | 1 | Q.   CONTINUING ON WITH THE SECOND PAGE OF |
| 05:12:34 | 2 | EXHIBIT 923, THIS "CONCEPT OVERVIEW" SECTION, WHERE |
| 05:12:37 | 3 | IT SAYS: |
| 05:12:38 | 4 | "CONSUMER CAN CHANGE THE |
| 05:12:39 | 5 | HAIRSTYLES, FASHION AND FEET (SCULPTED |
| 05:12:44 | 6 | SHOES THAT SNAP INTO LEG AT ANKLE) TO |
| 05:12:48 | 7 | MODIFY THE 'LOOK' OF HER DOLL." |
| 05:12:49 | 8 | DO YOU SEE THAT? |
| 05:12:50 | 9 | A.   YES. |
| 05:12:52 | 10 | Q.   IS IT CORRECT THAT YOU WERE THE ONE WHO |
| 05:12:54 | 11 | MADE THE DECISION THAT THE BRATZ DOLLS WOULD HAVE |
| 05:12:58 | 12 | THIS CONCEPT? |
| 05:13:00 | 13 | A.   YES. |
| 05:13:00 | 14 | Q.   AND IS THIS A CONCEPT THAT CARTER BRYANT |
| 05:13:03 | 15 | CAME UP WITH? |
| 05:13:07 | 16 | MS. TORRES:  OBJECTION.  VAGUE. |
| 05:13:13 | 17 | THE DEPONENT:  YES. |
| 05:13:15 | 18 | BY MR. ZELLER: |
| 05:13:29 | 19 | Q.   I'M GOING TO SHOW YOU WHAT WAS PREVIOUSLY |
| 05:13:30 | 20 | MARKED AS EXHIBIT 305, WHICH IS AN E-MAIL FROM -- |
| 05:13:34 | 21 | WELL, THE TOP E-MAIL IS FROM ISAAC LARIAN TO |
| 05:13:39 | 22 | VICTORIA O'CONNOR AND DENNIS MEDICI DATED |
| 05:13:43 | 23 | OCTOBER 10, 2000.  IT BEARS BATES NUMBER MGA 004717. |
| 05:14:11 | 24 | HAVE YOU LOOKED AT EXHIBIT 305? |
| 05:14:14 | 25 | A.   YES. |

EXHIBIT   78

PAGE   1236

873

| 05:14:14 | 1 | Q. DIRECTING YOUR ATTENTION TO THE THIRD |
| 05:14:20 | 2 | E-MAIL DOWN, IT'S THE ONE FROM PAULA TREANTAFELLES |
| 05:14:24 | 3 | TO VICTORIA O'CONNOR, THE SUBJECT "CARTER |
| 05:14:28 | 4 | COMPENSATION." DO YOU SEE THAT? |
| 05:14:30 | 5 | A. YES. |
| 05:14:30 | 6 | Q. IS THAT AN E-MAIL THAT YOU SENT TO |
| 05:14:31 | 7 | VICTORIA O'CONNOR ON OR ABOUT OCTOBER 10, 2000? |
| 05:14:36 | 8 | A. YES. |
| 05:14:38 | 9 | Q. UNDERNEATH THAT, IS THAT AN E-MAIL THAT |
| 05:14:43 | 10 | VICTORIA O'CONNOR SENT TO YOU ON OR ABOUT |
| 05:14:46 | 11 | OCTOBER 10, 2000? |
| 05:14:48 | 12 | A. YES. |
| 05:14:49 | 13 | Q. AND FOCUSING ON THAT E-MAIL FIRST, IN THAT |
| 05:14:52 | 14 | E-MAIL VICTORIA O'CONNOR ASKED YOU: |
| 05:14:55 | 15 | "PLEASE LET ME KNOW HOW MANY |
| 05:14:57 | 16 | HOURS CARTER HAS WORKED AND THE DAY HE |
| 05:14:59 | 17 | STARTED MEETINGS WITH YOU." |
| 05:15:01 | 18 | DO YOU SEE THAT? |
| 05:15:02 | 19 | A. YES. |
| 05:15:02 | 20 | Q. THIS IS REFERRING TO CARTER BRYANT, RIGHT? |
| 05:15:04 | 21 | A. YES. |
| 05:15:06 | 22 | Q. AND IN RESPONSE TO THAT E-MAIL, YOU SAID |
| 05:15:10 | 23 | TO VICTORIA O'CONNOR: |
| 05:15:12 | 24 | "I WOULD SAY THAT CARTER HAS |
| 05:15:13 | 25 | WORKED ON AVERAGE ABOUT 4 HOURS A DAY, |

EXHIBIT ___78___

PAGE ___1237___

874

| | | |
|---|---|---|
| 05:15:15 | 1 | AND WE BEGAN WORKING ON THIS LINE THE |
| 05:15:18 | 2 | FIRST PART OF SEPTEMBER." |
| 05:15:19 | 3 | DO YOU SEE THAT? |
| 05:15:19 | 4 | A.   YES. |
| 05:15:21 | 5 | Q.   FOCUSING ON THIS PART WHERE IT SAYS, |
| 05:15:23 | 6 | "CARTER HAS WORKED ON AVERAGE ABOUT 4 HOURS A |
| 05:15:25 | 7 | DAY" -- |
| 05:15:26 | 8 | A.   YES. |
| 05:15:26 | 9 | Q.   -- WAS THAT A TRUE STATEMENT AS OF |
| 05:15:30 | 10 | OCTOBER 10, 2000? |
| 05:15:33 | 11 | A.   SITTING HERE TODAY, NO. |
| 05:15:37 | 12 | Q.   WELL, YOU BELIEVED IT TO BE TRUE WHEN YOU |
| 05:15:39 | 13 | SENT IT, RIGHT? |
| 05:15:39 | 14 | MS. TORRES:  OBJECTION.  MISSTATES THE |
| 05:15:41 | 15 | WITNESS'S TESTIMONY AND ARGUMENTATIVE. |
| 05:15:49 | 16 | THE DEPONENT:  I BELIEVE THAT I MISWROTE |
| 05:15:49 | 17 | OR MISTYPED THIS E-MAIL. |
| 05:15:49 | 18 | BY MR. ZELLER: |
| 05:15:50 | 19 | Q.   AND HOW DID YOU MISTYPE IT? |
| 05:15:54 | 20 | A.   MY INCORRECTION IS AS IT RELATES TO |
| 05:16:00 | 21 | 4 HOURS A DAY. |
| 05:16:04 | 22 | Q.   WELL, HOW IS THAT INACCURATE? |
| 05:16:06 | 23 | A.   IT'S IMPOSSIBLE FOR CARTER TO HAVE WORKED |
| 05:16:09 | 24 | 4 HOURS A DAY AT THIS TIME ON THE BRATZ CONCEPT. |
| 05:16:12 | 25 | Q.   AND WHY IS THAT? |

EXHIBIT ____78____

PAGE ____1238____

875

| | | |
|---|---|---|
| 05:16:14 | 1 | A.    BECAUSE WE WERE NOT DOING ANYTHING -- WE |
| 05:16:22 | 2 | WERE NOT DESIGNING, WE WERE NOT DEVELOPING, WE WERE |
| 05:16:24 | 3 | NOT DOING ANYTHING AT THIS TIME AS IT RELATED TO THE |
| 05:16:27 | 4 | DESIGN AND DEVELOPMENT OF THE BRATZ DOLLS. |
| 05:16:31 | 5 | Q.    AND THAT'S YOUR BASIS FOR BELIEVING THAT, |
| 05:16:34 | 6 | THE STATEMENT THAT YOU MADE AS OF OCTOBER 10, 2000, |
| 05:16:37 | 7 | THAT "CARTER HAS WORKED ON AVERAGE ABOUT 4 HOURS A |
| 05:16:40 | 8 | DAY"? |
| 05:16:43 | 9 | A.    YES. |
| 05:16:44 | 10 | Q.    AND THIS REFERENCE HERE TO THAT "CARTER |
| 05:16:48 | 11 | HAS WORKED ON AVERAGE ABOUT 4 HOURS A DAY" BACK WHEN |
| 05:16:51 | 12 | YOU WROTE IT AS OF OCTOBER 10, 2000, YOU WERE |
| 05:16:54 | 13 | REFERRING TO THE AMOUNT OF WORK THAT HE DID ON THE |
| 05:16:56 | 14 | BRATZ LINE; IS THAT CORRECT? |
| 05:17:00 | 15 | MS. TORRES:   OBJECTION.   MISSTATES THE |
| 05:17:01 | 16 | WITNESS'S TESTIMONY. |
| 05:17:08 | 17 | THE DEPONENT:   YES. |
| 05:17:08 | 18 | BY MR. ZELLER: |
| 05:17:10 | 19 | Q.    THEN THE PART WHERE IT SAYS, "WE BEGAN |
| 05:17:12 | 20 | WORKING ON THIS LINE THE FIRST PART OF SEPTEMBER," |
| 05:17:14 | 21 | "THIS LINE" IS REFERRING TO BRATZ; IS THAT CORRECT? |
| 05:17:21 | 22 | A.    YES. |
| 05:17:32 | 23 | Q.    DID YOU EVER SEND A FOLLOW-UP E-MAIL TO |
| 05:17:35 | 24 | VICTORIA O'CONNOR, ISAAC LARIAN, OR ANYONE ELSE |
| 05:17:39 | 25 | RETRACTING THIS STATEMENT THAT YOU'D MADE ON |

EXHIBIT ___78___

PAGE ___1289___

876

| | | |
|---|---|---|
| 05:20:46 | 1 | A.   I DON'T REMEMBER. |
| 05:20:49 | 2 | Q.   WAS HE SOMEONE WHO YOU UNDERSTOOD WAS AT |
| 05:20:52 | 3 | AN EXECUTIVE LEVEL THERE AT MGA? |
| 05:20:55 | 4 | MS. TORRES:  OBJECTION.  VAGUE -- |
| 05:20:57 | 5 | THE DEPONENT:  I REMEMBER -- |
| 05:20:58 | 6 | MS. TORRES:  -- CALLS FOR SPECULATION. |
| 05:20:59 | 7 | THE DEPONENT:  I REMEMBER HIM TO BE A |
| 05:21:00 | 8 | SENIOR LEVEL.  I DON'T KNOW IF EXECUTIVE. |
| 05:21:03 | 9 | BY MR. ZELLER: |
| 05:21:14 | 10 | Q.   I'M GOING TO SHOW YOU WHAT WAS PREVIOUSLY |
| 05:21:15 | 11 | MARKED AS EXHIBIT 539, WHICH IS A ONE-PAGE E-MAIL |
| 05:21:19 | 12 | FROM PAULA TREANTAFELLES TO FRANKI TSANG AND JUDY |
| 05:21:22 | 13 | RICH DATED AS OF SEPTEMBER 27, 2000.  IT BEARS BATES |
| 05:21:26 | 14 | NUMBER MGA 000422. |
| 05:21:32 | 15 | A.   THANK YOU. |
| 05:22:43 | 16 | OKAY. |
| 05:22:44 | 17 | Q.   DO YOU RECOGNIZE EXHIBIT 539 AS AN E-MAIL |
| 05:22:46 | 18 | THAT YOU SENT TO FRANKI TSANG OF MGA HONG KONG AND |
| 05:22:50 | 19 | JUDY RICH OF MGA ON OR ABOUT SEPTEMBER 27, 2000? |
| 05:22:54 | 20 | A.   YES. |
| 05:22:55 | 21 | Q.   AND THIS E-MAIL IS ABOUT BRATZ, CORRECT? |
| 05:22:58 | 22 | MS. TORRES:  OBJECTION.  VAGUE. |
| 05:23:00 | 23 | THE DEPONENT:  YES. |
| 05:23:00 | 24 | BY MR. ZELLER: |
| 05:23:06 | 25 | Q.   YOU SEE HERE IT SAYS, |

EXHIBIT ___78___

PAGE ___1239.001___          879

| | | |
|---|---|---|
| 05:23:08 | 1 | "FRANKI, PLEASE NOTE THAT I |
| 05:23:10 | 2 | SENT TO YOU TODAY A BINDER DESCRIBING |
| 05:23:13 | 3 | THE NEW SMALL DOLL LINE CALLED BRATZ." |
| 05:23:15 | 4 | DO YOU SEE THAT? |
| 05:23:16 | 5 | A.   YES. |
| 05:23:19 | 6 | Q.   AND BY THIS -- THIS -- WELL, I'M SORRY. |
| 05:23:23 | 7 | I'LL REPHRASE IT. |
| 05:23:24 | 8 | IS IT TRUE THAT YOU SENT TO FRANKI TSANG |
| 05:23:27 | 9 | OF MGA HONG KONG A BINDER RELATING TO BRATZ ON OR |
| 05:23:33 | 10 | ABOUT SEPTEMBER 27, 2000? |
| 05:23:36 | 11 | A.   YES, I BELIEVE SO. |
| 05:23:38 | 12 | Q.   AND WHAT DID THE BINDER LOOK LIKE? |
| 05:23:42 | 13 | A.   I BELIEVE IT WAS A -- YOU KNOW, I CAN'T |
| 05:23:46 | 14 | REMEMBER EXACTLY. |
| 05:23:47 | 15 | Q.   WAS IT A THREE-RING BINDER? |
| 05:23:49 | 16 | A.   IT'S POSSIBLE. |
| 05:23:50 | 17 | Q.   IS THAT YOUR BEST RECOLLECTION? |
| 05:23:52 | 18 | A.   YES. |
| 05:23:55 | 19 | Q.   DO YOU RECALL HOW LARGE THAT BINDER WAS, |
| 05:23:58 | 20 | HOW MANY PAGES IT HAD IN IT? |
| 05:24:02 | 21 | A.   NO. |
| 05:24:02 | 22 | Q.   CAN YOU TELL ME IF IT HAD MORE THAN |
| 05:24:03 | 23 | 20 PAGES OR LESS THAN 20 PAGES? |
| 05:24:08 | 24 | A.   I WOULD -- I BELIEVE THAT IT WAS LESS THAN |
| 05:24:10 | 25 | 20 PAGES. |

EXHIBIT __78__

PAGE __1239.002__      880

1              DEPOSITION OFFICER'S CERTIFICATE

2

3    STATE OF CALIFORNIA        )
                                )   SS.
4    COUNTY OF ORANGE           )

5

6        I, J'ANA SIEGERS, HEREBY CERTIFY:

7        I AM A DULY QUALIFIED CERTIFIED SHORTHAND

8    REPORTER IN THE STATE OF CALIFORNIA, HOLDER OF

9    CERTIFICATE NUMBER CSR 10845 ISSUED BY THE COURT

10   REPORTERS BOARD OF CALIFORNIA AND WHICH IS IN FULL

11   FORCE AND EFFECT.  [FED. R. DIV. P. 28(A)].

12       I AM AUTHORIZED TO ADMINISTER OATHS OR

13   AFFIRMATIONS PURSUANT TO CALIFORNIA CODE OF CIVIL

14   PROCEDURE, SECTION 2093(B) AND PRIOR TO BEING

15   EXAMINED, THE DEPONENT WAS FIRST DULY SWORN BY ME.

16   [FED. R. CIV. P. 28(A), 30(F)(1)].

17       I AM NOT A RELATIVE OR EMPLOYEE OR ATTORNEY OR

18   COUNSEL OF ANY OF THE PARTIES, NOR AM I A RELATIVE

19   OR EMPLOYEE OF SUCH ATTORNEY OR COUNSEL, NOR AM I

20   FINANCIALLY INTERESTED IN THIS ACTION.

21   [FED. R. CIV. P. 28].

22       I AM THE DEPOSITION OFFICER THAT

23   STENOGRAPHICALLY RECORDED THE TESTIMONY IN THE

24   FOREGOING DEPOSITION AND THE FOREGOING TRANSCRIPT IS

25   A TRUE RECORD OF THE TESTIMONY GIVEN BY THE

EXHIBIT _____ 78

PAGE _____ 1240

960

1  DEPONENT.  [FED. R. CIV. P. 30(F)(1)].

2      BEFORE COMPLETION OF THE DEPOSITION, REVIEW OF

3  THE TRANSCRIPT [X] WAS [ ] WAS NOT REQUESTED.  IF

4  REQUESTED, ANY CHANGES MADE BY THE DEPONENT (AND

5  PROVIDED TO THE REPORTER) DURING THE PERIOD ALLOWED

6  ARE APPENDED HERETO.  [FED. R. CIV. P. 30(E)].

7

8

9  DATED:  OCTOBER 21, 2007.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 78

PAGE 1241

961

A & E Court Reporters       (213) 955-0070       Fax: (213) 955-0077

**EXHIBIT 79**

**11086**

ABC INTERNATIONAL TRADERS, INC.

ABC International Traders, Inc.                                                          11086

| VENDOR ID | NAME | | PAYMENT NUMBER | CHECK DATE | | |
|---|---|---|---|---|---|---|
| MARLOW | VERONICA MARLOW | | 012885 | 12/8/00 | | |

| OUR VOUCHER NUMBER | YOUR VOUCHER NUMBER | DATE | AMOUNT | AMOUNT PAID | DISCOUNT | WRITE-OFF | NET |
|---|---|---|---|---|---|---|---|
| 026604 | G000625 | 11/14/00 | $4,400.00 | $4,400.00 | $0.00 | $0.00 | $4,400.00 |
| 026605 | G000626 | 11/14/00 | $2,430.00 | $2,430.00 | $0.00 | $0.00 | $2,430.00 |
| | | | $6,830.00 | $6,830.00 | $0.00 | $0.00 | $6,830.00 |

COMMENT

SFMS01042-1

Safeguard  LITHO USA    STS/LIST   CN/2003110V.xlge

TO REORDER, CALL YOUR LOCAL SAFEGUARD DISTRIBUTOR AT 323-838-9866

N97SF004796

Exhibit 606
Brode
8, 15 /07  Pgs. 7
J'ana Slegers, CSR 10845

Confidential - For Attorney's Eyes Only

EXHIBIT _____ 79 _____

PAGE _____ 1242 _____

MGA 0072161

# Veronica Marlow

12250 Woodley Ave.
Granada Hills CA, 91344
(818) 360-9158

**INVOICE**

INVOICE NO.:  G000625

DATE:    11/14/00

Sold To:

Paula Treantafales
MGA Entertainment
16730 Schoenborn St.
North Hills, CA 91343

Ship To:

Same

| SALESPERSON | P.O. NUMBER | DATE SHIPPED | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
|  | PO03521 | 10/26/00 |  |  | net |

| QUANTITY | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|
|  | "Bratz" dolls research, development and support services from 9/29/00 to 10/20/00. |  |  |
| 18 hrs. | Brainstorm and development meetings. | 50.00 | 900.00 |
| 12 hrs. | Support for body sculpting and packaging. | 50.00 | 600.00 |
| 18 hrs. | Fashion research. | 50.00 | 900.00 |
| 19 hrs. | Fashion development and support. | 50.00 | 950.00 |
| 21 hrs. | Pattern and sample development. | 50.00 | 1,050.00 |

|  |  |
|---|---|
| SUBTOTAL | 4,400.00 |
| SALES TAX @ 8.25% | 363.00 |
| SHIPPING & HANDLING |  |
| TOTAL DUE | 4,763.00 |

*only pay*
*(per P.O.)*

*$4,400.00*

_____
Customer Signature

*THANK YOU FOR YOUR BUSINESS!*

Confidential - For Attorney's Eyes Only

EXHIBIT ___79___

PAGE ___1243___

MGA 0072162

# PURCHASE ORDER

ABC International Traders, Inc
dba MGA Entertainment
16730 Schoenborn St.
North Hills
CA          91343-6122

PO Number:   PO03521
Date:            11/1/00
Page:            1

| Order From: | VERONICA MARLOW<br>12250 WOODLEY AVENUE<br><br>GRANADA HILLS<br>91344                    CA | Deliver to: | L.A. MAIN WAREHOUSE<br>16730 SCHOENBORN ST<br><br>NORTH HILLS<br>CA                         91343 |
|---|---|---|---|

| Your Item Number<br>Item Description | Our Reference | Qty Ordered<br>Date Requested | Units | Unit Cost<br>Date Promised | Extension |
|---|---|---|---|---|---|
| | BRATZ | 18.00 | Each | 50.00 | $900.00 |
| 1   BRAINSTORM AND DEVELOPMENT MEETIN | BRATZ | 10/26/00<br>12.00 | Each | 50.00 | $600.00 |
| 2   SUPPORT FOR BODY SCULPTING AND PA | BRATZ | 10/26/00<br>18.00 | Each | 50.00 | $900.00 |
| 3   FASHION RESEARCH | BRATZ | 10/26/00<br>19.00 | Each | 50.00 | $950.00 |
| 4   FASHION DEVELOPMENT AND SUPPORT | BRATZ | 10/26/00<br>21.00 | Each | 50.00 | $1,050.00 |
| PATTERN AND SAMPLE DEVELOPMENT | | 10/26/00 | | | |

Please Quote Purchase Order Number on all correspondence.

| Subtotal: | $4,400.00 |
|---|---|
| Freight: | $0.00 |
| Tax amount: | $0.00 |
| Total Value: | $4,400.00 |

Confidential - For Attorney's Eyes Only

EXHIBIT ___79___

PAGE ___1244___

MGA 0072163

Requisition # REQ02753

Requestor   KLE(:G

Date

** REQUISITION **

Page: 1

| Item Number | Quantity | Units | Cost | Due Date | Total |
|---|---|---|---|---|---|
| BRATZ<br>BRAINSTORM AND DEVELOPMENT MEETING<br>8322-400 - | 18.00 | Each<br>Site: 01 | $50.00 | 10/26/00<br>Creditor: MARLOW | $900.00 |
| BRATZ<br>SUPPORT FOR BODY SCULPTING AND PACKAGING<br>8322-400 - | 12.00 | Each<br>Site: 01 | $50.00 | 10/26/00<br>Creditor: MARLOW | $600.00 |
| BRATZ<br>FASHION RESEARCH<br>8322-400 - | 18.00 | Each<br>Site: 01 | $50.00 | 10/26/00<br>Creditor: MARLOW | $900.00 |
| BRATZ<br>FASHION DEVELOPMENT AND SUPPORT<br>8322-400 - | 19.00 | Each<br>Site: 01 | $50.00 | 10/26/00<br>Creditor: MARLOW | $950.00 |
| BRATZ<br>PATTERN AND SAMPLE DEVELOPMENT<br>8322-400 - | 21.00 | Each<br>Site: 01 | $50.00 | 10/26/00<br>Creditor: MARLOW | $1,050.00 |

P O 3521

P - 7 347

Requisition Total     $4,400.00

EXHIBIT ___79___

PAGE ___1245___

Confidential - For Attorney's Eyes Only

MGA 0072164

# Veronica Marlow

12250 Woodley Ave.
Granada Hills CA, 91344
(818) 360-9158

**INVOICE**

INVOICE NO.:   G000626

DATE:          11/14/00

Sold To:

Paula Treantafales
MGA Entertainment
16730 Schoenborn St.
North Hills, CA 91343

Ship To:

Same

| SALESPERSON | P.O. NUMBER | DATE SHIPPED | SHIPPED VIA | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
|  | PO03522 | 10/26/00 |  |  | net |

| QUANTITY | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|
|  | "Bratz" dolls third party services from 10/13/00 to 10/20/00. |  |  |
| 49 hrs. | Third party sewing and pattern making support. | 30.00 | 1,470.00 |
| 32 hrs. | Third party sewing and pattern making support. | 30.00 | 960.00 |

|  |  |
|---|---|
| SUBTOTAL | 2,430.00 |
| SALES TAX @ 8.25% | ~~200.48~~ |
| SHIPPING & HANDLING |  |
| TOTAL DUE | 2,630.48 |

*Only pay $2,430.00*
*(per P.O.)*

*ctgss*

_____
Customer Signature

*THANK YOU FOR YOUR BUSINESS!*

EXHIBIT ___79___

PAGE ___1246___

Confidential - For Attorney's Eyes Only

MGA 0072165

## PURCHASE ORDER

ABC International Traders, Inc
dba MGA Entertainment
16730 Schoenborn St.
North Hills
CA          91343-6122

PO Number:   PO03522
Date:        11/1/00
Page:        1

| Order From: | VERONICA MARLOW | Deliver to: | L.A. MAIN WAREHOUSE |
| | 12250 WOODLEY AVENUE | | 16730 SCHOENBORN ST |
| | GRANADA HILLS | | NORTH HILLS |
| | 91344              CA | | CA              91343 |

| Your Item Number Item Description | Our Reference | Qty Ordered Date Requested | Units | Unit Cost Date Promised | Extension |
|---|---|---|---|---|---|
| | BRATZ | 49.00 | Each | 30.00 | $1,470.00 |
| THIRD PARTY SEWING AND PATTERN MAK | | 10/26/00 | | | |
| 1 | BRATZ | 32.00 | Each | 30.00 | $960.00 |
| THIRD PARTY SEWING AND PATTERN MAK | | 10/26/00 | | | |

Please Quote Purchase Order Number on all correspondence.

| | |
|---|---|
| Subtotal: | $2,430.00 |
| Freight: | $0.00 |
| Tax amount: | $0.00 |
| Total Value: | $2,430.00 |

Confidential - For Attorney's Eyes Only

MGA 0072166

EXHIBIT   79

PAGE   1247

Requisition # REQ02754                      * * REQUISITION * *
Requestor    KLEGG                                                            Page: 1
Date

| Item Number | Quantity | Units | Cost | Due Date | Total |
|---|---|---|---|---|---|
| BRATZ | 49.00 | Each | $30.00 | 10/26/00 | $1,470.00 |
| THIRD PARTY SEWING AND PATTERN MAKING SUPI  Site: 01 | | | | Creditor: MARLOW | |
| 8322-400 - | | | | | |
| BRATZ | 32.00 | Each | $30.00 | 10/26/00 | $960.00 |
| THIRD PARTY SEWING AND PATTERN MAKING SUPI  Site: 01 | | | | Creditor: MARLOW | |
| 8322-400 - | | | | | |

PO 3522
P - 7350

Requisition Total          $2,430.00

Confidential - For Attorney's Eyes Only

MGA 0072167

EXHIBIT ___79___
PAGE ___1248___

.

**EXHIBIT 80**

**10575**

ABC INTERNATIONAL TRADERS, INC.
ABC International Traders, Inc

10575

| VENDOR ID | NAME | | PAYMENT NUMBER | CHECK DATE | | | | |
|---|---|---|---|---|---|---|---|---|
| BRYANT | CARTER H. BRYANT | | 012246 | 10/13/00 | | | | |
| OUR VOUCHER NUMBER | YOUR VOUCHER NUMBER | DATE | AMOUNT | | AMOUNT PAID | DISCOUNT | WRITE-OFF | NET |
| 025539 | EXP 09/23-10/11/00 | 10/11/00 | $1,031.23 | | $1,031.23 | $0.00 | $0.00 | $1,031.23 |
| | | | $1,031.23 | | $1,031.23 | $0.00 | $0.00 | $1,031.23 |

COMMENT

SFMS01042-1
Safeguard® LITHO USA   SFEL2U   GK7S0511234 (1/99)

TO REORDER, CALL YOUR LOCAL SAFEGUARD DISTRIBUTOR AT 323-838-6696

M975F004796

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT *E*
PAGE 30

MGA 3786749

```
Kinko's                    (310) 297-6850
5201 W. Rosecrans
Hawthorne,         CA 90250

QTY/LIST      DISC    PRICE    AMOUNT
25     PC SS WRK STATION TIME/MIN
       0.20    0.00    0.20      5.00
13     COMP RENT LTR.LGL. B&W PRNT
       0.49    0.00    0.49      6.37
26     ES B&W S/S WHITE STD
       0.07    0.00    0.07      1.82
2      ES COLOR S/S 11 X 17
       1.98    0.00    1.98      3.96


SUB   17.15  TX   1.00   TOT   18.15
                        Visa   18.15
                        CHG    0.00

              Redacted
I agree to pay the above amount
according to the card issuer agreement.
Sign Here:  X_____

CW 86 TR   327520 RG 5  10/11/00 03:26
     Visit us @ http://www.kinkos.com
```

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT *E*
PAGE 31

MGA 3786750



DATE 227001243996 TIME
10/06/00 689300 15:27

HOT TOPIC #243
2148 GLENDALE GALLERIA
GLENDALE, CA 912100000

CREDIT SALE

TRANS #               AUTH #
013                  154069

VISA
ACCOUNT #            EXP DATE

**Redacted**

SALE AMOUNT    $    412.45

X _____
          Signature
BRYANT/ CARTER

Thank You

CONFIDENTIAL — ATTORNEYS' EYES ONLY

EXHIBIT _E_
PAGE 32

MGA 3786751

```
            HOT TOPIC, INC.
           GLENDALE GALLERIA
10/06/00
SALESPERSON ERICK
   1271154 BLUE GLITTER BELT
                                  13.60
   MARKED DOWN FROM    15.99
119598000 PINK ANGEL BACKPACK
                              16.15
   MARKED DOWN FROM    18.99
1339316 TEASE DENIM PRAYER
                          3.40
   MARKED DOWN FROM    3.99
108576000 FIRE FACEPLATE 5100
                             12.75
   MARKED DOWN FROM    14.99
108565000 FLAME SWIRL FACEPLAT
                             12.75
   MARKED DOWN FROM    14.99
1262898 36PC SPARKL RUBRBNDS
                          1.70
   MARKED DOWN FROM    2.00
1348929 PC-ASSRT METEOR
                          1.07
   MARKED DOWN FROM    1.25
1217397 CPHONE CASE LEOP PNK
                          6.80
   MARKED DOWN FROM    8.00
1184431 PRINCESS HOSPITL BND
                          2.55
   MARKED DOWN FROM    2.99
1338094 WOMENS BOTTOMS
                         35.70
   MARKED DOWN FROM    42.00
1306273 RED PLAID TIE SKIRT
                         25.50
   MARKED DOWN FROM    30.00
1340942 MENS TOP
                         27.20
   MARKED DOWN FROM    32.00
1301043 PNK PLAID PLEAT SKRT
                         25.50
   MARKED DOWN FROM    30.00
1252329 32 SAUCER CARGO PANT
                         45.90
   MARKED DOWN FROM    54.00
1287671 32 KNEE CRGO PNT
                         46.75
   MARKED DOWN FROM    55.00
1287838 50 DROP CARGO DENIM
                         52.70
   MARKED DOWN FROM    62.00
1317346 AST.PK/BU SPARKLE PT
                         59.99
1317346 AST.PK/BU SPARKLE PT
             VOID        59.99
1317346 AST.PK/BU SPARKLE PT
                         51.00
   MARKED DOWN FROM    59.99
      SUBTOTAL         381.02

      SALES TAX         31.43
      TOTAL            412.45
      VISA             412.45

THANKS FOR SHOPPING AT HOT TOPIC
Please fill out a comment card.

  Check us out on the WEB!
     www.hottopic.com
REGISTER#6 R0006 10/06/00 15:32 #15059
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT E
PAGE 33

MGA 3786752



**We want you to be satisfied!**

If you need to exchange or return your purchase, please remember that:

- Merchandise must be returned with the price tickets attached and in it's original packaging. For body jewelry and make-up, the original packaging must be unopened.
- Merchandise must not have any visible signs of wear.
- If merchandise is defective we will gladly exchange it.
- We will need your original receipt to issue a refund.
- If you do not have the original receipt, we will be happy to exchange the merchandise for you or issue you a store credit for the current selling price.



**We want you to be satisfied!**

If you need to exchange or return your purchase, please remember that:

- Merchandise must be returned with the price tickets attached and in it's original packaging. For body jewelry and make-up, the original packaging must be unopened.
- Merchandise must not have any visible signs of wear.
- If merchandise is defective we will gladly exchange it.
- We will need your original receipt to issue a refund.
- If you do not have the original receipt, we will be happy to exchange the merchandise for you or issue you a store credit for the current selling price.



**We want you to be satisfied!**

If you need to exchange or return your purchase, please remember that:

- Merchandise must be returned with the price tickets attached and in it's original packaging. For body jewelry and make-up, the original packaging must be unopened.
- Merchandise must not have any visible signs of wear.
- If merchandise is defective we will gladly exchange it.
- We will need your original receipt to issue a refund.
- If you do not have the original receipt, we will be happy to exchange the merchandise for you or issue you a store credit for the current selling price.

**HOT TOPIC**

**We want you to be satisfied!**

If you need to exchange or return your purchase, please remember that:

- Merchandise must be returned with the price tickets attached and in it's original packaging. For body jewelry and make-up, the original packaging must be unopened.
- Merchandise must not have any visible signs of wear.
- If merchandise is defective we will gladly exchange it.
- We will need your original receipt to issue a refund.
- If you do not have the original receipt, we will be happy to.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT E
PAGE 34

MGA 3786753

```
                    HOT TOPIC, INC.
                  GLENDALE GALLERIA
10/06/00
SALESPERSON ERICK
    1130012 UNISEX COMBAT BOOT
                                      47.99
    1338904 BETTY PAGE PUMP
                                      24.99
    1300667 RED RUBY SLIPPER
                                      39.99
    1241140 LT BLU MJ JOGGER
                                      36.99
    1314103 FUSHCIA/PINK JOGGER
                                      36.99
    1232693 SILVER CLUBKID SHOE
                                      29.99
    1242957 BEAR BLINKY
                                       2.99
    152879000 ST-SHAG KITTY
                                       1.99
    152879000 ST-SHAG KITTY
                                       1.99
    1116177 PC-BLU WINDOW HOLOGR
                                       2.50
    1317015 PC-MINI WINDW/JEWEL
                                       2.50
    1316991 PC-HEALIGHT HOLOGRMS
                                       2.50
    119440000 PC-ASSRT METEOR
                                       1.25
    1317015 PC-MINI WINDW/JEWEL
                                       2.50
    1316991 PC-HEALIGHT HOLOGRMS
                                       2.50
    1316967 PC-BIG WINDW HOL #2
                                       2.50
    119441000 PC-ASSRT SUPER NOVA
                                       1.25
    1286079 PC-AST CATS EYE HOLG
                                       1.25
    1286095 PC-ASRT   CRCLE HOL
                                       1.25
    1286095 PC-ASRT   CRCLE HOL
                                       1.25
    1286087 PC-ASRT  BOX HOLGRM
                                       1.25
    1316934 PC-SIL/RAIN B.FLY HO
                                       3.50
    113456000 PC-AST BOA HOLGRAM
                                       4.50
    113456000 PC-AST BOA HOLGRAM
                                       4.50
    113456000 PC-AST BOA HOLGRAM
                                       4.50
    113456000 PC-AST BOA HOLGRAM
                                       4.50
    303514000 MYSTRY MACH LUGGAGE
                                      36.99
         SUBTOTAL             304.90
         SALES TAX             25.15
         TOTAL               330.05
         VISA                330.05

    THANKS FOR SHOPPING AT HOT TOPIC
    Please fill out a comment card.

        Check us out on the WEB!
            www.hottopic.com

REGISTER#6 R0006 10/06/00 15:26 #15058
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT E
PAGE 35

MGA 3786754

- Merchandise must be returned with the price tickets attached and in it's original packaging. For body jewelry and make-up, the original packaging must be unopened.
- Merchandise must not have any visible signs of wear.
- If merchandise is defective we will gladly exchange 't.
- We will need your original receipt to issue a refund.
- If you do not have the original receipt, we will be happy to exchange the merchandise for you or issue you a store credit for the current selling price.



**We want you to be satisfied!**

If you need to exchange or return your purchase, please remember that:

- Merchandise must be returned with the price tickets attached and in it's original packaging. For body jewelry and make-up, the original packaging must be unopened.
- Merchandise must not have any visible signs of wear.
- If merchandise is defective we will gladly exchange it.
- We will need your original receipt to issue a refund.
- If you do not have the original receipt, we will be happy to exchange the merchandise for you or issue you a store credit for the current selling price.



**We want you to be satisfied!**

If you need to exchange or return your purchase, please remember that:

- Merchandise must be returned with the price tickets attached and in it's original packaging. For body jewelry and make-up, the original packaging must be unopened.
- Merchandise must not have any visible signs of wear.
- If merchandise is defective we will gladly exchange it.
- We will need your original receipt to issue a refund.
- If you do not have the original receipt, we will be happy to exchange the merchandise for you or issue you a store credit for the current selling price.



**We want you to be satisfied!**

If you need to exchange or return your purchase, please remember that:

- Merchandise must be returned with the price tickets attached and in it's original packaging. For body jewelry and make-up, the original packaging must be unopened.
- Merchandise must not have any visible signs of wear.
- If merchandise is defective we will gladly exchange it.
- We will need your original receipt to issue a refund.
- If you do not have the original receipt, we will be happy to exchange the merchandise for you or issue you a store credit for the current selling price.



CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT *E*
PAGE 36

MGA 3786755

IT HAS BEEN A PLEASURE SERVING YOU!
YOUR CASHIER, ALETA

TOYS "Я" US

5622/17  1874:1  14426  1  SALE

FASHIONS MARYKATE &    068228        9.99
SCHOOL SET    MARY-KA  023871       32.99

              SUBTOTAL        42.98
              8.25% TAX        3.55
              TOTAL           46.53
        Redacted              46.53

CHANGE                          .00

09/23/00    16:50

ITEM COUNT  2

THANK YOU FOR SHOPPING AT TOYS 'R' US
QUESTIONS? CALL (310) 540-2727. CHECK OUT
OUR EXCITING NEW WEBSITE, WWW.TOYSRUS.COM



*356221718746663*

CONFIDENTIAL – ATTORNEYS' EYES ONLY

EXHIBIT E
PAGE 37

MGA 3786756