DATE  227001243996 TIME
10/06/00   689300   15:21

HOT TOPIC #243
2140 GLENDALE GALLERIA
GLENDALE, CA 912100000

CREDIT SALE

TRANS #                    AUTH #
012                        153233

VISA
ACCOUNT #            EXP. DATE

**Redacted**

SALE AMOUNT    $    330.05

Signature
BRYANT/ CARTER

Thank You

TOP COPY-MERCHANT
BOTTOM COPY-CUSTOMER

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT E
PAGE 38

MGA 3786757

CHARLOTTE ROSSE
GLENDALE GALERIA
2229 GLENDALE GALLERIA,GLENDALE,CA 91210
(818) 545-0486

SALE.                12965 1 00001 08068
0035 10/06/00  05:38 PM

```
ASSOCIATE NUMBER    16394
 1 401602826119 THONGS            4.00
 2 401190898017 STRG BIK          4.00
 3 401190898017 STRG BIK          4.00
 4 401190898017 STRG BIK          4.00
ITEM CORRECT      Line # 4
    1 @ 4.00                     -4.00
 5 401602826119 THONGS            4.00
 6 401190898017 STRG BIK          4.00
 7 401456006118 THONGS            2.99
 8 401420817016 BODY GLTTR
    1 @ 2/7.00                    3.50
 9 401420816118 BODY GLTTR
    1 @ 2/7.00                    3.50
10 401606536113 WATCHES          18.00
11 401606535215 WATCHES          18.00
12 401890169318 STUFANIMAL        6.00
13 401630619011 STUFANIMAL        6.00
ASSOCIATE NUMBER    12965
14 401610719014 STUFANIMAL        6.00
ASSOCIATE NUMBER    12965
15 401620639012 STUFANIMAL        6.00
ASSOCIATE NUMBER    12965
16 401916062715 HEADBAND
    1 @ 2/7.00                    3.50
ASSOCIATE NUMBER    12965
17 401916065815 HEADBAND
    1 @ 2/7.00                    3.50
ASSOCIATE NUMBER    12965
18 401923040911 MINICLAWCP
    1 @ 2/7.00                    3.50
ASSOCIATE NUMBER    12965
19 401571039213 MINICLAWCP
    1 @ 2/7.00                    3.50
ASSOCIATE NUMBER    12965
20 401454090812 MINICLAWCP
    1 @ 2/7.00                    3.50
ASSOCIATE NUMBER    12965
21 401454095817 MINICLAWCP
    1 @ 2/7.00                    3.50
ASSOCIATE NUMBER    12965
22 401708460316 METAL BELT       14.00
ASSOCIATE NUMBER    12965
23 401370626119 HOUSEWARES       16.00
ASSOCIATE NUMBER    12965
24 401620462818 HOUSEWARES       16.00
25 401398026717 HEADBAND          5.00
26 401396024418 SLIPPERS          8.00
27 401652086044 NVTYKNITOP       19.99
28 401610506836 NVTYKNITOP       16.99
    SUB TOTAL                   206.97
8.25%                           17.08
    TOTAL                     $224.05
                               224.05
ACCOUNT NUMBER
```

**Redacted**

EXPIRATION DATE
AUTHORIZATION NUMBER   175924
REFERENCE #        3258802 -0

www.charlotte-russe.com

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT _E_
PAGE 39

MGA 3786758

REFUNDS/EXCHANGES in 30 days with receipt and tags attached.

**SALE MERCHANDISE** is exchangeable only.

**SPECIAL OCCASION** merchandise is **NOT RETURNABLE.**

**GIFT CERTIFICATES/CREDIT SLIPS** are redeemable for merchandise only. They are not replaceable if lost or stolen and are not valid without manager's signature.

**LAYAWAYS** will be held for 30 days. Layaway refunds in 30 days from original deposit date minus $2.00 service fee.

**REFUNDS/EXCHANGES** in 30 days with receipt and tags attached.

**SALE MERCHANDISE** is exchangeable only.

**SPECIAL OCCASION** merchandise is **NOT RETURNABLE.**

**GIFT CERTIFICATES/CREDIT SLIPS** are redeemable for merchandise only. They are not replaceable if lost or stolen and are not valid without manager's signature.

**LAYAWAYS** will be held for 30 days. Layaway refunds in 30 days from original deposit date minus $2.00 service fee.

**REFUNDS/EXCHANGES** in 30 days with receipt and tags attached.

**SALE MERCHANDISE** is exchangeable only.

**SPECIAL OCCASION** merchandise is **NOT RETURNABLE.**

**GIFT CERTIFICATES/CREDIT SLIPS** are redeemable for merchandise only. They are not replaceable if lost or stolen and are not valid without manager's signature.

**LAYAWAYS** will be held for 30 days. Layaway refunds in 30 days from original deposit date minus $2.00 service fee.

**REFUNDS/EXCHANGES** in 30 days with receipt and tags attached.

**SALE MERCHANDISE** is exchangeable only.

**SPECIAL OCCASION** merchandise is **NOT RETURNABLE.**

**GIFT CERTIFICATES/CREDIT SLIPS** are redeemable for merchandise only. They are not replaceable if lost or stolen and are not valid without manager's signature.

**LAYAWAYS** will be held for 30 days. Layaway refunds in 30 days from original deposit date minus $2.00 service fee.

**REFUNDS/EXCHANGES** in 30 days with receipt and tags attached.

**SALE MERCHANDISE** is exchangeable only.

**SPECIAL OCCASION** merchandise is **NOT RETURNABLE.**

**GIFT CERTIFICATES/CREDIT SLIPS** are redeemable for merchandise only. They are not replaceable if lost or stolen and are not valid without manager's signature.

**LAYAWAYS** will be held for 30 days. Layaway refunds in 30 days from original deposit date minus $2.00 service fee.

**REFUNDS/EXCHANGES** in 30 days with receipt and tags attached.

**SALE MERCHANDISE** is exchangeable only.

**SPECIAL OCCASION** merchandise is **NOT RETURNABLE.**

**GIFT CERTIFICATES/CREDIT SLIPS** are redeemable for merchandise only. They are not replaceable if lost or stolen and are not valid without manager's signature.

**LAYAWAYS** will be held for 30 days. Layaway refunds in 30 days from original deposit date minus $2.00 service fee.

**REFUNDS/EXCHANGES** in 30 days with receipt and tags attached.

**SALE MERCHANDISE** is exchangeable only.

10-10-2000 2:11PM FROM ABC INTL TRADERS MGA 818 894 1666 P. 1



MGA EXPENSE REPORT FORM

OCT 10 '00 14:23                                    818 894 1666          PAGE.01

Hi MARIE—
THESE IMAGES ARE
FOR THE "BRATZ"
PROJECT ON WHICH I
AM THE DESIGNER.
IF THIS COULD BE
SUPER EXPEDITED AS
PER OUR DISCUSSION,
IT WOULD BE GREATLY
APPRECIATED.
Thank You.

CARTER BRYANT
1319 W. 160th ST.
GARDENA, CA
90247
310-538-3615

EXHIBIT E
PAGE 41

CONFIDENTIAL – ATTORNEYS' EYES ONLY

MGA 3786760

**EXHIBIT 81**

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| BRYANT, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | NO. CV 04-9040 SGL |
| | ) | (RNBX) |
| MATTEL, INC., | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

## ATTORNEYS' EYES ONLY
### (THIS TRANSCRIPT HAS BEEN DESIGNATED ATTORNEYS' EYES ONLY.)

## DEPOSITION OF ISAAC LARIAN

## JULY 18, 2006

EXHIBIT ___81___

PAGE ___1261___

**REPORTED BY:**
APRIL PRAXMARER
CSR NO. 12437
JOB NO. 06AE315-AP

**A&E**
C O U R T   R E P O R T E R S
700 S. Flower Street
Suite 1100
Los Angeles, California 90017
Office: (213) 955-0070
Fax: (213) 955-0077

1                    UNITED STATES DISTRICT COURT

2                  CENTRAL DISTRICT OF CALIFORNIA

3                          EASTERN DIVISION

4

5        BRYANT,                        )
                                        )
6            PLAINTIFF,                  )
                                        )
7        VS.                            ) CASE NO. CV 04-9040 SGL
                                        )           (RNBX)
8        MATTEL, INC.,                   )
                                        )
9            DEFENDANTS.                 )
                                        )

10

11

12                     ATTORNEYS' EYES ONLY

13             (THIS TRANSCRIPT HAS BEEN DESIGNATED

14                   ATTORNEYS' EYES ONLY.)

15

16

17           DEPOSITION OF ISAAC LARIAN, TAKEN ON BEHALF OF THE

18     PLAINTIFF, AT 1999 AVENUE OF THE STARS, SUITE 700, LOS

19     ANGELES, CALIFORNIA, COMMENCING AT 9:26 A.M., TUESDAY,

20     JULY 18, 2006, BEFORE APRIL PRAXMARER, CERTIFIED

21     SHORTHAND REPORTER NO. 12437.

22

23

24           EXHIBIT ___81___

25           PAGE ___1262___

```
 1    APPEARANCES OF COUNSEL:
 2
 3    FOR THE PLAINTIFF:
 4         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
           BY:  JOHN B. QUINN, ESQ.
 5         BY:  MICHAEL T. ZELLER, ESQ.
           865 SOUTH FIGUEROA STREET
 6         TENTH FLOOR
           LOS ANGELES, CALIFORNIA 90017-2543
 7         (213) 443-3000
 8
 9    FOR THE DEFENDANT, MGA & THE WITNESS:
10         O'MELVENY & MYERS LLP
           BY:  DALE M. CENDALI, ESQ.
11         7 TIMES SQUARE
           TIMES SQUARE TOWER
12         NEW YORK, NEW YORK, 10036
           (212) 326-2000
13
           O'MELVENY & MYERS LLP
14         BY:  JENNIFER GLAD, ESQ.
           400 SOUTH HOPE STREET
15         LOS ANGELES, CALIFORNIA 90071-2899
           (213) 430-7633
16
17    FOR THE DEFENDANT, CARTER BRYANT:
18         LITTLER MENDELSON
           BY:  DOUGLAS A. WICKHAM, ESQ.
19         2049 CENTURY PARK EAST
           5TH FLOOR
20         LOS ANGELES, CALIFORNIA 90067
           (310) 712-7314
21
22    ALSO PRESENT:
23         DAPHNE GRONICH, SENIOR COUNSEL FOR MATTEL
           MICHAEL MOORE, ASSISTANT GENERAL COUNSEL FOR MATTEL
24
25
```

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT 81

PAGE 12u3

| | | |
|---|---|---|
| 1 | 10:07:37 | OTHERWISE, YOU CAN ANSWER. |
| 2 | 10:07:37 | MR. QUINN:  WELL, I WANT WHAT HE SAID TO |
| 3 | 10:07:37 | VICTORIA O'CONNER, SO I'M ENTITLED TO THAT. |
| 4 | 10:07:38 | Q    YOU GET TO ANSWER THAT QUESTION. |
| 5 | 10:07:39 | WHAT DID YOU SAY TO VICTORIA -- |
| 6 | 10:07:39 | MS. CENDALI:  I'LL LET HIM ANSWER THAT |
| 7 | 10:07:44 | QUESTION ASSUMING WE AGREE THAT THAT'S NOT A WAIVER |
| 8 | 10:07:44 | IF -- |
| 9 | 10:07:45 | MR. QUINN:  I AGREE. |
| 10 | 10:07:46 | MS. CENDALI:  -- I LET HIM ANSWER THAT |
| 11 | 10:07:46 | QUESTION. |
| 12 | 10:07:46 | MR. QUINN:  I AGREE. |
| 13 | 10:07:46 | MS. CENDALI:  ALL RIGHT. |
| 14 | 10:07:46 | THE WITNESS:  I TOLD HER TO MAKE SURE THAT |
| 15 | 10:07:47 | WHAT HE WAS TELLING US, EVERYTHING WAS TRUE AND DO |
| 16 | 10:07:51 | ITS -- HER DUE DILIGENCE. |
| 17 | 10:07:54 | BY MR. QUINN: |
| 18 | 10:07:54 | Q    ALL RIGHT.  WE GOT INTO THIS BECAUSE I ASKED |
| 19 | 10:07:57 | YOU WHETHER YOU INSTRUCTED SOMEBODY ELSE TO FIND OUT |
| 20 | 10:08:01 | WHETHER HE HAD A CONTRACT WITH MATTEL, AND YOU STARTED |
| 21 | 10:08:03 | TO TELL ME SOMETHING ABOUT VICTORIA O'CONNER. |
| 22 | 10:08:06 | DID YOU INSTRUCT VICTORIA O'CONNER TO CONFIRM |
| 23 | 10:08:09 | WHETHER OR NOT HE HAD A CONTRACT WITH MATTEL? |
| 24 | 10:08:13 | A    I'M NOT SURE.  I DON'T REMEMBER IF I ASKED |
| 25 | 10:08:14 | ABOUT A CONTRACT OR NOT.  I REMEMBER ASKING HER TO MAKE |

EXHIBIT ___81___  48

PAGE ___1263.ω1___

| | | |
|---|---|---|
| 1 | 10:08:16 | SURE -- TO VERIFY WHAT HE WAS TELLING US IS TRUE. |
| 2 | 10:08:21 | Q    ALL RIGHT.  SO WOULD IT BE TRUE TO SAY THAT |
| 3 | 10:08:23 | YOU HAVE NO RECOLLECTION OF INSTRUCTING ANYONE TO FIND |
| 4 | 10:08:29 | OUT WHETHER OR NOT MR. BRYANT HAD A CONTRACT; IS THAT |
| 5 | 10:08:31 | TRUE? |
| 6 | 10:08:31 | MS. CENDALI:  OBJECTION.  MISCHARACTERIZES |
| 7 | 10:08:34 | HIS TESTIMONY. |
| 8 | 10:08:34 | THE WITNESS:  I DON'T HAVE A RECOLLECTION ONE |
| 9 | 10:08:36 | WAY OR ANOTHER.  I COULD HAVE.  I COULD NOT HAVE.  I |
| 10 | 10:08:40 | DON'T HAVE A RECOLLECTION. |
| 11 | 10:08:48 | MS. CENDALI:  DID YOU WANT TO TAKE A BREAK? |
| 12 | 10:08:50 | MR. WICKHAM:  I NEED TO GO TO THE RESTROOM. |
| 13 | 10:08:51 | WHY DON'T WE TAKE A BREAK.  SORRY. |
| 14 | 10:08:55 | MS. CENDALI:  MR. LARIAN NEEDS TO TAKE A LOT |
| 15 | 10:08:58 | OF BATHROOM BREAKS. |
| 16 | 10:08:59 | MR. QUINN:  OKAY.  ALL RIGHT.  WE'RE OFF THE |
| 17 | 10:09:02 | RECORD. |
| 18 | 10:09:02 | THE VIDEOGRAPHER:  WE'RE OFF THE RECORD AT |
| 19 | 10:09:04 | 10:09 A.M. |
| 20 | 10:09:21 | (BRIEF PAUSE IN THE PROCEEDINGS.) |
| 21 | 10:18:21 | THE VIDEOGRAPHER:  WE'RE BACK ON RECORD AT |
| 22 | 10:18:23 | 10:18 A.M. |
| 23 | 10:18:25 | BY MR. QUINN: |
| 24 | 10:18:25 | Q    MR. LARIAN, WHEN I ASKED YOU WHETHER YOU HAD |
| 25 | 10:18:29 | ASKED ANYONE ELSE TO VERIFY WHETHER OR NOT MR. BRYANT |

EXHIBIT ___81___    49

| | | |
|---|---|---|
| 1 | 11:01:18 | MS. CENDALI: -- AND REFERRED TO THE WITNESS |
| 2 | 11:01:20 | AS MS. O'CONNER, SO -- |
| 3 | 11:01:23 | MR. QUINN: I'M SORRY. THANK YOU. |
| 4 | 11:01:23 | MS. CENDALI: OKAY. |
| 5 | 11:01:23 | BY MR. QUINN: |
| 6 | 11:01:24 | Q MR. LARIAN -- |
| 7 | 11:01:25 | A YES. |
| 8 | 11:01:25 | Q -- YOU ASKED VICTORIA O'CONNER TO CONFIRM THE |
| 9 | 11:01:31 | TRUTH OF WHAT MR. BRYANT HAD TOLD YOU REGARDING WHEN |
| 10 | 11:01:33 | THE DRAWINGS WERE CREATED? |
| 11 | 11:01:35 | A YES, I DID. |
| 12 | 11:01:36 | Q AND WHEN DID YOU ASK HER TO DO THAT? |
| 13 | 11:01:37 | A PROBABLY RIGHT BEFORE WE DECIDED TO GO |
| 14 | 11:01:41 | FORWARD WITH THIS PROJECT. |
| 15 | 11:01:42 | Q ALL RIGHT. CAN YOU TELL ME ABOUT HOW LONG |
| 16 | 11:01:45 | AFTER THIS -- THIS MEETING IT WAS THAT YOU GAVE HER |
| 17 | 11:01:47 | THAT INSTRUCTION? |
| 18 | 11:01:48 | A PROBABLY ABOUT TWO WEEKS AFTER. |
| 19 | 11:01:50 | Q ALL RIGHT. AND DID SHE GET -- DID SHE CHECK |
| 20 | 11:01:55 | ON THAT AND GET BACK TO YOU? |
| 21 | 11:01:56 | A I KNOW SHE CHECKED ON THAT FOR SURE, BUT I |
| 22 | 11:01:59 | DON'T REMEMBER IF SHE GOT BACK TO ME OR NOT. |
| 23 | 11:02:01 | Q HOW DO YOU KNOW SHE CHECKED ON THAT? |
| 24 | 11:02:04 | A BECAUSE I HAVE SOME CORRESPONDENCE TO THAT |
| 25 | 11:02:09 | EFFECT. |

| | | |
|---|---|---|
| 1 | 11:02:09 | Q   COULD YOU DESCRIBE THAT CORRESPONDENCE FOR |
| 2 | 11:02:11 | ME? |
| 3 | 11:02:11 | A   YES. |
| 4 | 11:02:13 | THE WITNESS:  CAN I? |
| 5 | 11:02:15 | MS. CENDALI:  YOU CAN DESCRIBE IT GENERALLY, |
| 6 | 11:02:18 | WITHOUT -- WELL, WITHOUT REVEALING ANYTHING ABOUT HER, |
| 7 | 11:02:26 | MS. O'CONNER'S, COMMUNICATIONS WITH YOUR LAWYER UNTIL |
| 8 | 11:02:33 | WE GET SOME SORT OF A DEAL IN PLACE WITH REGARD TO |
| 9 | 11:02:37 | WAIVER OF THE ATTORNEY-CLIENT PRIVILEGE. |
| 10 | 11:02:40 | MR. QUINN:  I WON'T REGARD IT AS A WAIVER, IF |
| 11 | 11:02:42 | THAT'S THE ISSUE.  YOU CAN TELL ME ABOUT THIS.  IF |
| 12 | 11:02:45 | THERE'S SOMETHING THAT YOU ARE CONCERNED ABOUT THERE, |
| 13 | 11:02:47 | HE CAN TELL ME ABOUT.  I AGREE IT'S NOT A WAIVER. |
| 14 | 11:02:52 | MS. CENDALI:  WELL -- |
| 15 | 11:02:52 | MR. QUINN:  DO YOU KNOW WHAT ISSUE IS HERE? |
| 16 | 11:02:55 | MR. ZELLER:  (INAUDIBLE.) |
| 17 | 11:02:56 | MS. CENDALI:  I JUST WANT TO MAKE SURE THAT |
| 18 | 11:02:58 | IF HE -- HE -- HE TALKS ABOUT THE -- YOU KNOW, |
| 19 | 11:03:00 | COMMUNICATIONS WITH HIS ATTORNEYS AND/OR CARTER'S |
| 20 | 11:03:07 | ATTORNEYS REGARDING THE -- THE NEGOTIATIONS OF THE |
| 21 | 11:03:09 | AGREEMENT THAT'S NOT GOING TO BE DEEMED AS A GENERAL |
| 22 | 11:03:13 | WAIVER BEYOND THE NEGOTIATION OF THE AGREEMENT. |
| 23 | 11:03:16 | MR. QUINN:  I MEAN COMMUNICATIONS WITH |
| 24 | 11:03:18 | CARTER'S LAWYERS WOULDN'T BE PRIVILEGED, I WOULDN'T |
| 25 | 11:03:22 | THINK. |

EXHIBIT ___ 81

90

| | | |
|---|---|---|
| 1 | 11:03:22 | MS. CENDALI:  THE QUESTION IS, SUPPOSE THERE |
| 2 | 11:03:25 | WERE COMMUNICATIONS WITH CARTER'S LAWYERS THAT WENT |
| 3 | 11:03:28 | THROUGH OTHER LAWYERS, THROUGH MGA'S LAWYERS. |
| 4 | 11:03:34 | MR. QUINN:  I DON'T KNOW.  A COMMUNICATION |
| 5 | 11:03:36 | THAT GOES -- THAT -- YOU KNOW, I TELL YOU TO TELL HIM |
| 6 | 11:03:39 | "X," THAT'S NOT A PRIVILEGED COMMUNICATION. |
| 7 | 11:03:42 | MS. CENDALI:  WELL -- |
| 8 | 11:03:42 | MR. QUINN:  I MEAN, IF I CONVEY IT TO YOU FOR |
| 9 | 11:03:44 | THE EXPRESS PURPOSE OF YOUR DISCLOSING IT TO SOMEONE -- |
| 10 | 11:03:49 | MS. CENDALI:  WELL, IT MAY NOT HAVE BEEN |
| 11 | 11:03:51 | CONVEYED FOR THE EXPRESS PURPOSE. |
| 12 | 11:03:53 | BY MR. QUINN: |
| 13 | 11:03:53 | Q    CAN YOU JUST DESCRIBE -- YOU KNOW, THE |
| 14 | 11:03:54 | DOCUMENT, WHO IT'S FROM, WHAT YOU'RE REFERRING TO? |
| 15 | 11:03:57 | JUST DESCRIBE IT TO ME.  DON'T GET INTO THE SUBSTANCE |
| 16 | 11:04:07 | BECAUSE I'M NOT EVEN SURE I'M INTERESTED IN THE |
| 17 | 11:04:07 | SUBSTANCE, BUT CAN YOU DESCRIBE THE -- WHAT IT IS YOU |
| 18 | 11:04:07 | SAW? |
| 19 | 11:04:07 | A    I HAVE SEEN AN E-MAIL THAT CAME BACK AND |
| 20 | 11:04:09 | SAID, "WE HAVE CONFIRMED WHAT HE'S SAYING IS BASICALLY |
| 21 | 11:04:13 | RIGHT, THAT HE DID THIS IN 1998, IN MISSOURI." |
| 22 | 11:04:16 | AND I SAW THAT RIGHT BEFORE -- I THINK THAT |
| 23 | 11:04:19 | E-MAIL, PARTICULAR E-MAIL IS DATED BEFORE WE SIGNED AN |
| 24 | 11:04:22 | AGREEMENT WITH HIM. |
| 25 | 11:04:22 | Q    AND WHO'S THE AUTHOR OF THIS E-MAIL THAT YOU |

| | | |
|---|---|---|
| 1 | 11:04:25 | SAW? |
| 2 | 11:04:25 | A    MY ATTORNEY. |
| 3 | 11:04:28 | Q    MR. ROSENBAUM? |
| 4 | 11:04:30 | A    YES. |
| 5 | 11:04:31 | Q    AND IS IT ADDRESSED TO VICTORIA O'CONNER? |
| 6 | 11:04:34 | A    IT IS. |
| 7 | 11:04:36 | Q    AND -- |
| 8 | 11:04:36 | MS. CENDALI:  AND I JUST WANT TO MAKE CLEAR |
| 9 | 11:04:40 | THAT, AS YOU SAID, I LET HIM TESTIFY ON YOUR |
| 10 | 11:04:43 | REPRESENTATION THAT THAT WOULD NOT BE ANY WAIVER OF THE |
| 11 | 11:04:47 | ATTORNEY-CLIENT PRIVILEGE. |
| 12 | 11:04:48 | AND I INDICATE, AGAIN, AND WE ARE -- REMAIN |
| 13 | 11:04:51 | WILLING TO STIPULATE TO DISCUSS WAIVER OF THE PRIVILEGE |
| 14 | 11:04:55 | WITH REGARD TO THE NEGOTIATIONS OF THE CARTER BRYANT |
| 15 | 11:04:58 | AGREEMENT. |
| 16 | 11:04:58 | MR. QUINN:  WAIT A SECOND.  I DIDN'T ACCEPT |
| 17 | 11:05:03 | YOUR DEAL.  THE QUESTION I ASKED HIM WAS JUST TELL |
| 18 | 11:05:05 | ME -- DESCRIBE THE DOCUMENT FOR ME. |
| 19 | 11:05:07 | HE WENT INTO DESCRIBE THE CONTENT.  THAT'S |
| 20 | 11:05:09 | WHAT HAPPENED THERE. |
| 21 | 11:05:10 | MS. CENDALI:  OKAY.  THAT'S -- YOU SAID |
| 22 | 11:05:11 | YOU'RE NOT GOING TO CONSIDER THIS A WAIVER, AND YOU |
| 23 | 11:05:14 | THEN WENT INTO THE QUESTION.  I DON'T THINK THAT'S |
| 24 | 11:05:17 | PROPER. |
| 25 | 11:05:17 | MR. QUINN:  THE RECORD IS WHAT IT IS. |

| | | |
|---|---|---|
| 1 | 11:13:36 | PEOPLE REALLY LIKE THAT. |
| 2 | 11:13:37 | Q    MM-HM.  HOW WERE YOU GOING TO MAKE SURE THAT, |
| 3 | 11:13:40 | AS YOU PUT IT, THAT PEOPLE REALLY WOULD LIKE IT? |
| 4 | 11:13:42 | A    I THINK IF WE ASKED PEOPLE AT THE COMPANY, |
| 5 | 11:13:46 | AND I ASKED MY DAUGHTER IF THAT WOULD BE GOOD.  PEOPLE |
| 6 | 11:13:51 | AT THE COMPANY WHO HAD DAUGHTERS, TO ASK THEIR |
| 7 | 11:13:53 | DAUGHTERS. |
| 8 | 11:13:53 | Q    BASICALLY, THEY WERE JUST SHOWN THE DRAW -- |
| 9 | 11:14:04 | WERE THE DRAWINGS LEFT WITH YOU? |
| 10 | 11:14:04 | A    I DON'T REMEMBER IF THEY WERE LEFT OR NOT, |
| 11 | 11:14:04 | BUT I THINK WE SHOWED THE DRAWINGS TO -- FOR SURE, I |
| 12 | 11:14:04 | REMEMBER ONE PERSON. |
| 13 | 11:14:05 | Q    WHO WAS THAT? |
| 14 | 11:14:06 | A    BECKY HARRIS. |
| 15 | 11:14:07 | Q    AFTER THE MEETING? |
| 16 | 11:14:09 | A    I DON'T REMEMBER IF IT WAS BEFORE OR AFTER. |
| 17 | 11:14:11 | Q    ALL RIGHT.  WELL, YOU SHOWED HER THE |
| 18 | 11:14:13 | DRAWINGS. |
| 19 | 11:14:13 | DID -- DID YOU HAVE DRAWINGS BEFORE THE |
| 20 | 11:14:15 | MEETING? |
| 21 | 11:14:15 | A    NO, WE DIDN'T.  I DIDN'T SEE ANY DRAWINGS |
| 22 | 11:14:18 | BEFORE THE MEETING.  THIS IS THE FIRST TIME I'D SEEN |
| 23 | 11:14:20 | THEM. |
| 24 | 11:14:20 | Q    OKAY.  WELL, WHAT WAS YOUR UNDERSTANDING -- |
| 25 | 11:14:22 | HOW -- WHAT WAS IT THAT BECKY HARRIS WAS SHOWN, THEN? |

102

EXHIBIT _____ BI

PAGE _____ 1264

| | | | |
|---|---|---|---|
| 1 | 11:14:26 | A | DRAWINGS, PERHAPS. |
| 2 | 11:14:27 | Q | AND -- AND DO YOU KNOW WHAT DRAWINGS SHE WAS |
| 3 | 11:14:29 | SHOWN? | |
| 4 | 11:14:30 | A | I DON'T.  CARTER BRYANT'S DRAWING. |
| 5 | 11:14:33 | Q | OKAY.  BUT YOU DON'T KNOW WHEN THAT -- |
| 6 | 11:14:36 | WHETHER IT WAS BEFORE OR AFTER THE MEETING; IS THAT | |
| 7 | 11:14:39 | TRUE? | |
| 8 | 11:14:40 | | MS. CENDALI:  OBJECTION.  MISCHARACTERIZES |
| 9 | 11:14:41 | HIS TESTIMONY. | |
| 10 | 11:14:42 | | THE WITNESS:  I DON'T RECALL IF IT WAS BEFORE |
| 11 | 11:14:44 | OR AFTER.  I THINK IT WAS AFTER, BUT AGAIN, I'M JUST | |
| 12 | 11:14:46 | GOING BACK.  SIX-YEAR MEMORY. | |
| 13 | 11:14:48 | BY MR. QUINN: | |
| 14 | 11:14:48 | Q | WERE YOU THERE WHEN SHE WAS SHOWN THE |
| 15 | 11:14:52 | DRAWINGS? | |
| 16 | 11:14:52 | A | I DON'T RECALL THAT. |
| 17 | 11:14:53 | Q | WHAT WAS BECKY HARRIS' POSITION? |
| 18 | 11:14:56 | A | SALES ADMINISTRATOR. |
| 19 | 11:14:58 | Q | DID YOU DO ANY FOCUS GROUPS? |
| 20 | 11:15:00 | A | THAT'S THE FOCUS GROUP WE DID. |
| 21 | 11:15:03 | Q | HM? |
| 22 | 11:15:04 | A | THAT'S THE FOCUS GROUP WE DID. |
| 23 | 11:15:06 | Q | OKAY.  SHOWING IT TO EMPLOYEES? |
| 24 | 11:15:07 | A | RIGHT. |
| 25 | 11:15:08 | Q | I UNDERSTAND THAT THIS DOLL WAS SHOWN AT A |

103

EXHIBIT _____ 81

PAGE _____ 1265

| | | |
|---|---|---|
| 1 | 11:15:12 | TOY FAIR IN ASIA IN -- IN JANUARY OR FEBRUARY? |
| 2 | 11:15:16 | A    WHICH DOLLS? |
| 3 | 11:15:18 | Q    THE BRATZ DOLLS. |
| 4 | 11:15:20 | A    THE BRATZ THAT MGA CREATED? |
| 5 | 11:15:25 | Q    YES, SIR. |
| 6 | 11:15:26 | A    A SAMPLE OF THAT WAS SHOWN, AND THAT SAMPLE |
| 7 | 11:15:30 | WAS NOT THE SAME AS THE DOLL THAT CAME UP AT THE END. |
| 8 | 11:15:33 | Q    WHAT DO YOU MEAN? |
| 9 | 11:15:34 | A    IT WAS DIFFERENT.  IT WENT THROUGH A FLUX TO |
| 10 | 11:15:36 | MAKE -- |
| 11 | 11:15:36 | Q    I'M SORRY? |
| 12 | 11:15:36 | A    IT WENT THROUGH A FLUX.  IT WAS DIFFERENT. |
| 13 | 11:15:37 | WHAT WE SHOWED IN THE HONG KONG TOY FAIR WAS JUST PUT |
| 14 | 11:15:44 | TOGETHER, A DEMO, PREFABS, WITH THE -- I MEAN MOST OF |
| 15 | 11:15:45 | THE CLOTHING BEING PAINT ON AND WE EXHIBIT A TAPE, ET |
| 16 | 11:15:52 | CETERA.  AT THE END, WHEN THE PRODUCT CAME TO THE |
| 17 | 11:15:55 | MARKET, IT WAS DIFFERENT. |
| 18 | 11:15:55 | Q    LOOKED DIFFERENT? |
| 19 | 11:15:56 | A    IT WAS DIFFERENT, YES. |
| 20 | 11:15:58 | Q    ALL RIGHT.  IN WHAT WAY WAS IT DIFFERENT? |
| 21 | 11:16:00 | A    A LOT OF WAYS.  FOR EXAMPLE, I THINK JUST |
| 22 | 11:16:02 | SOME OF THE THINGS, I REMEMBER THE ORIGINAL IDEA WAS |
| 23 | 11:16:06 | THAT YOU COULD REMOVE THE HAIR AND PUT A NEW HAIR IN |
| 24 | 11:16:11 | THERE.  THAT DIDN'T COME TO HAPPEN. |
| 25 | 11:16:15 | A LOT OF THINGS, I DON'T REMEMBER ALL OF |

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT _____ 81

PAGE _____ 1266

| | | |
|---|---|---|
| 1 | 11:16:17 | THEM. DISGUST LOOK, BAD LOOKING. |
| 2 | 11:16:20 | Q    ALL RIGHT.  CAN YOU RECALL ANYTHING ELSE THAT |
| 3 | 11:16:22 | WAS DIFFERENT? |
| 4 | 11:16:22 | A    BESIDES WHAT I JUST TOLD YOU, I DON'T. |
| 5 | 11:16:28 | Q    ALL RIGHT.  YOU'VE TOLD ME EVERYTHING THAT |
| 6 | 11:16:28 | YOU CAN RECALL -- |
| 7 | 11:16:30 | A    I RECALL AS I SIT HERE RIGHT NOW. |
| 8 | 11:16:33 | Q    YOU'VE GOT TO LET ME FINISH THE QUESTION, |
| 9 | 11:16:37 | EVEN THOUGH YOU KNOW WHAT I'M GOING TO SAY. |
| 10 | 11:16:37 | A    OKAY. |
| 11 | 11:16:37 | Q    YOU'VE TOLD ME EVERYTHING THAT YOU CAN RECALL |
| 12 | 11:16:39 | THAT WAS DIFFERENT BETWEEN THE DOLLS THAT WERE SHOWN AT |
| 13 | 11:16:42 | THE HONG KONG TOY FAIR AND THE BRATZ DOLLS THAT WERE |
| 14 | 11:16:45 | ULTIMATELY INTRODUCED AT THE MARKET; TRUE? |
| 15 | 11:16:47 | A    YES, THEY WERE DIFFERENT.  FOR SURE. |
| 16 | 11:16:52 | Q    AND YOU'VE TOLD ME ALL THOSE DIFFERENCES THAT |
| 17 | 11:16:54 | YOU CAN RECALL; TRUE? |
| 18 | 11:16:55 | A    FASHIONS WERE DIFFERENT.  THEY WERE -- THEY |
| 19 | 11:16:55 | WEREN'T, I REMEMBER. |
| 20 | 11:16:56 | Q    RIGHT.  SO YOU'VE TOLD ME ALL THE DIFFERENCES |
| 21 | 11:16:56 | YOU CAN REMEMBER; TRUE? |
| 22 | 11:17:01 | MS. CENDALI:  OBJECTION.  MISCHARACTERIZES |
| 23 | 11:17:03 | HIS TESTIMONY. |
| 24 | 11:17:04 | THE WITNESS:  WHAT I REMEMBER AS I SIT HERE |
| 25 | 11:17:04 | TODAY. |

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT _____ 81

PAGE _____ 1207

| | | |
|---|---|---|
| 1 | 11:17:04 | BY MR. QUINN: |
| 2 | 11:17:04 | Q   ALL RIGHT.  BEFORE THESE DOLLS WERE -- BEFORE |
| 3 | 11:17:06 | THE HONG KONG TOY FAIR, MR. LARIAN, WERE ANY FOCUS |
| 4 | 11:17:12 | GROUP STUDIES DONE ON THE BRATZ IDEA? |
| 5 | 11:17:16 | MS. CENDALI:  OTHER THAN WHAT HE'S ALREADY |
| 6 | 11:17:18 | TESTIFIED TO? |
| 7 | 11:17:20 | BY MR. QUINN: |
| 8 | 11:17:20 | Q   YEAH.  OTHER THAN WHAT YOU'VE ALREADY TOLD US |
| 9 | 11:17:21 | ABOUT, SHOWING EMPLOYEES. |
| 10 | 11:17:23 | MS. CENDALI:  WELL, WAIT A MINUTE, WAIT A |
| 11 | 11:17:22 | MINUTE.  I'M NOW MARKING THIS ATTORNEY'S EYES ONLY. |
| 12 | 11:17:24 | THIS IS THE SAME THING THAT WE'VE DONE IN THE |
| 13 | 11:17:24 | VICTORIA O'CONNER DEPOSITION. |
| 14 | 11:17:24 | THE MEETING WAS ONE THING, BUT THE |
| 15 | 11:17:26 | DEVELOPMENT OF BRATZ IS ATTORNEY'S EYES ONLY.  AND I'M |
| 16 | 11:17:30 | AFRAID WE'RE GOING TO HAVE TO ASK IN-HOUSE COUNSEL TO |
| 17 | 11:17:35 | LEAVE. |
| 18 | 11:17:35 | MR. QUINN:  OKAY.  WE'LL JUST ADD THAT TO OUR |
| 19 | 11:17:39 | LIST.  THOSE FOLKS CAN GO OUT AND GET SOME SUN AT SOME |
| 20 | 11:17:42 | POINT OR SOMETHING. |
| 21 | 11:17:43 | MS. CENDALI:  WELL, THIS IS THE POINT IF |
| 22 | 11:17:45 | YOU'RE GOING TO CONTINUE TO ASK ABOUT THE -- THE |
| 23 | 11:17:47 | DEVELOPMENT OF BRATZ. |
| 24 | 11:17:49 | MR. QUINN:  I'M GOING TO STRUCTURE MY |
| 25 | 11:17:52 | EXAMINATION THE WAY I WANT TO, AND I MAY GO INTO A |

106

EXHIBIT ___81___

PAGE ___1268___

| | | |
|---|---|---|
| 1 | 01:17:42 | BY MR. QUINN: |
| 2 | 01:17:42 | Q   HOW MANY BRATZ DRAWINGS DID YOU SEE IN THE |
| 3 | 01:17:44 | LAST TWO DAYS? |
| 4 | 01:17:45 | MS. CENDALI:  INSTRUCT YOU NOT TO ANSWER. |
| 5 | 01:17:46 | BY MR. QUINN: |
| 6 | 01:17:46 | Q   HOW DID YOU KNOW THE PARTICULAR BRATZ |
| 7 | 01:17:51 | DRAWINGS THAT YOU SAW IN THE LAST TWO DAYS WERE THE |
| 8 | 01:17:54 | ONES THAT YOU WERE SHOWN IN THE SEPTEMBER 1 MEETING? |
| 9 | 01:17:57 | MS. CENDALI:  OBJECTION.  FOUNDATION. |
| 10 | 01:17:58 | OBJECTION.  MISCHARACTERIZES HIS TESTIMONY.  AND |
| 11 | 01:18:02 | OBJECTION TO THE EXTENT THAT IT CALLS FOR ANY |
| 12 | 01:18:04 | ATTORNEY-CLIENT PRIVILEGED INFORMATION. |
| 13 | 01:18:08 | I INSTRUCT YOU NOT TO ANSWER. |
| 14 | 01:18:10 | BY MR. QUINN: |
| 15 | 01:18:10 | Q   DID YOU REMEMBER THOSE BRATZ DRAWINGS AS |
| 16 | 01:18:18 | BEING THE ONES YOU SAW ON SEPTEMBER 1 WITHOUT ANY INPUT |
| 17 | 01:18:18 | FROM YOUR ATTORNEYS? |
| 18 | 01:18:19 | A   NO. |
| 19 | 01:18:20 | Q   SO YOUR -- IN TELLING ME THAT YOU SAW THOSE |
| 20 | 01:18:33 | DRAWINGS WITHIN THE LAST TWO DAYS, YOU'RE RELYING ON |
| 21 | 01:18:35 | WHAT YOUR ATTORNEYS TOLD YOU? |
| 22 | 01:18:35 | MS. CENDALI:  OKAY.  I OBJECT. |
| 23 | 01:18:36 | I INSTRUCT YOU NOT TO ANSWER. |
| 24 | 01:18:37 | AND WE'RE GOING TO LEAVE THE ROOM NOW IF YOU |
| 25 | 01:18:40 | CONTINUE TO ASK QUESTIONS ABOUT WHAT HAPPENED DURING |

167

EXHIBIT ___81___

PAGE ___1268.001___

| | | |
|---|---|---|
| 1 | 01:18:40 | HIS PREP.  YOU KNOW IT'S IMPROPER. |
| 2 | 01:18:43 | ASK HIM QUESTIONS.  SHOW HIM SOME DOCUMENTS. |
| 3 | 01:18:45 | WE'VE BEEN HERE.  IT'S 1:15, AND I HAVEN'T SEEN YOU |
| 4 | 01:18:50 | SHOW, OTHER THAN ONE NEWS ARTICLE, A SINGLE EXHIBIT. |
| 5 | 01:18:54 | WHY DON'T YOU START ASKING HIM SOME QUESTIONS |
| 6 | 01:18:56 | ABOUT OTHER THAN WHAT HAPPENED OR DIDN'T HAPPEN DURING |
| 7 | 01:19:02 | HIS PREP SESSIONS. |
| 8 | 01:19:03 | MR. QUINN:  THANK YOU. |
| 9 | 01:19:04 | MS. CENDALI:  THANK YOU. |
| 10 | 01:19:05 | BY MR. QUINN: |
| 11 | 01:19:05 | Q    AT ANY TIME, DID YOU TELL ANYBODY AT MGA NOT |
| 12 | 01:19:10 | TO TALK ABOUT OR TO DISCLOSE WHERE BRATZ CAME FROM? |
| 13 | 01:19:14 | A    ABSOLUTELY NOT. |
| 14 | 01:19:18 | Q    AT ANY TIME DID YOU TELL ANYBODY AT MGA TO |
| 15 | 01:19:22 | KEEP QUIET ABOUT THE FACT THAT CARTER BRYANT USED TO |
| 16 | 01:19:24 | WORK FOR MATTEL? |
| 17 | 01:19:25 | A    NO. |
| 18 | 01:19:26 | Q    WHEN YOU LEARNED THAT MR. BRYANT HAD NOT QUIT |
| 19 | 01:19:36 | AND LEFT MATTEL'S PREMISES ON THE DATE THAT HE SIGNED |
| 20 | 01:19:40 | HIS CONTRACT, WERE YOU DISAPPOINTED? |
| 21 | 01:19:44 | A    YES. |
| 22 | 01:19:44 | Q    WHY? |
| 23 | 01:19:45 | A    BECAUSE HE -- HE TOLD ME THAT HE WAS -- MY |
| 24 | 01:19:51 | UNDERSTANDING WAS THAT HE WOULD LEAVE, RESIGN AND LEAVE |
| 25 | 01:19:55 | MATTEL THAT DAY. |

168

EXHIBIT ___81___

PAGE  1268.002

| 1 | 01:19:57 | AND WHEN I SAW THE LAWSUIT, I ASKED HIM IF HE |
| 2 | 01:20:01 | HAD, AND HE SAID NO, HE GAVE THEM TWO WEEKS' NOTICE TO |
| 3 | 01:20:05 | BE NICE, TO FINISH HIS WORK. |
| 4 | 01:20:06 | Q   HAD -- HAD HE TOLD YOU THAT HE WOULD LEAVE |
| 5 | 01:20:09 | THE PREMISES THAT DAY? |
| 6 | 01:20:10 | A   I DON'T RECALL EXACTLY. |
| 7 | 01:20:11 | Q   I'M SORRY? |
| 8 | 01:20:12 | A   I DON'T RECALL EXACTLY.  THIS WAS MY |
| 9 | 01:20:15 | UNDERSTANDING, THAT HE WOULD RESIGN AND LEAVE. |
| 10 | 01:20:18 | I GUESS TO ME "RESIGN" MEANS HE'D LEAVE THE |
| 11 | 01:20:21 | COMPANY.  I THINK TO HIM IT MAYBE MEANT, "I'LL BE NICE |
| 12 | 01:20:24 | AND GIVE THEM TWO WEEKS' NOTICE SO I CAN FINISH." |
| 13 | 01:20:27 | Q   UH-HUH.  SO WHAT WAS THE BASIS FOR YOUR |
| 14 | 01:20:29 | UNDERSTANDING THAT HE WOULD LEAVE THE PREMISES THAT |
| 15 | 01:20:30 | DAY? |
| 16 | 01:20:30 | A   AGAIN, MY UNDERSTANDING WAS THAT HE WOULD |
| 17 | 01:20:34 | RESIGN, BECAUSE HE WAS SUPPOSED TO START WORKING ON -- |
| 18 | 01:20:36 | WE WERE STARTING TO PAY HIM.  HE WAS SUPPOSED TO WORK |
| 19 | 01:20:40 | ON OUR DEAL FULL TIME. |
| 20 | 01:20:50 | MR. QUINN:  YOU KNOW, I THINK I BETTER GO |
| 21 | 01:20:51 | INTO SOME OF THESE OTHER ISSUES, IF YOU WILL EXCUSE US. |
| 22 | 01:20:56 | MS. CENDALI:  SORRY.  NOTHING PERSONAL. |
| 23 | 01:21:18 | BY MR. QUINN: |
| 24 | 01:21:18 | Q   YOUR AUDITED FINANCIAL STATEMENTS SHOW THAT |
| 25 | 01:21:21 | IN 2000 AND 2001, MGA WAS OPERATING AT A LOSS; IS THAT |

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT ___B1___

PAGE __1710B.003__

| | | |
|---|---|---|
| 1 | 01:21:25 | CORRECT? |
| 2 | 01:21:26 | A    2000 -- |
| 3 | 01:21:27 | Q    AND 2001. |
| 4 | 01:21:28 | A    YES. |
| 5 | 01:21:28 | Q    CAN YOU EXPLAIN -- IS THAT, IN YOUR MIND, |
| 6 | 01:21:31 | CONSISTENT WITH WHAT YOU'RE TELLING ME, THAT MGA WAS |
| 7 | 01:21:36 | DOING WELL FINANCIALLY? |
| 8 | 01:21:38 | A    WELL, AT THE TIME -- YES.  AT THE TIME |
| 9 | 01:21:39 | THAT -- I BELIEVE YOU ASKED AT THE TIME THAT I MEANT |
| 10 | 01:21:42 | WITH CARTER BRYANT AND WE SIGNED THIS AGREEMENT, IF MGA |
| 11 | 01:21:47 | WAS DOING GOOD -- |
| 12 | 01:21:50 | Q    OKAY. |
| 13 | 01:21:50 | A    -- AND I SAID YES. |
| 14 | 01:21:51 | I SAID, YES, AT THE TIME, IN OCTOBER OF 2000, |
| 15 | 01:21:53 | WHEN I MET WITH HIM, WE WERE DOING GOOD. |
| 16 | 01:21:55 | Q    YOU MEAN THE YEAR -- |
| 17 | 01:21:56 | A    MGA. |
| 18 | 01:21:57 | Q    WHAT IS YOUR FISCAL YEAR? |
| 19 | 01:21:58 | A    END OF THE -- END OF THE CALENDAR YEAR, |
| 20 | 01:22:01 | DECEMBER 31ST. |
| 21 | 01:22:02 | Q    OKAY.  SO UP UNTIL SEPTEMBER, MGA HAD BEEN |
| 22 | 01:22:07 | PROFITABLE THAT YEAR? |
| 23 | 01:22:07 | A    YES. |
| 24 | 01:22:08 | Q    ALL RIGHT.  AND THEN THE LAST QUARTER WAS |
| 25 | 01:22:10 | A -- NOT A GOOD QUARTER? |

170

EXHIBIT ___ 81

```
 1          STATE OF CALIFORNIA      )
                                     )  SS.
 2          COUNTY OF LOS ANGELES    )

 3

 4

 5              I, ISAAC LARIAN, HEREBY CERTIFY UNDER PENALTY OF

 6          PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT

 7          THE FOREGOING IS TRUE AND CORRECT.

 8              EXECUTED THIS _____ DAY OF

 9          _____, 2006, AT

10          _____, CALIFORNIA.

11

12

13

14

15

16                          _____

17                          ISAAC LARIAN

18

19

20

21

22

23

24

25
```

256

EXHIBIT _____ 8

PAGE _____ 1269

```
 1              DEPOSITION OFFICER'S CERTIFICATE

 2

    STATE OF CALIFORNIA  )
 3                       )   SS.
    COUNTY OF LOS ANGELES)

 4

 5         I, APRIL PRAXMARER, HEREBY CERTIFY:

 6    I AM A DULY QUALIFIED CERTIFIED SHORTHAND REPORTER IN

 7    THE STATE OF CALIFORNIA, HOLDER OF CERTIFICATE NUMBER

 8    CSR 12437 ISSUED BY THE COURT REPORTERS BOARD OF

 9    CALIFORNIA AND WHICH IS IN FULL FORCE AND EFFECT.  [FED.

10    R. DIV. P. 28(A)].

11         I AM AUTHORIZED TO ADMINISTER OATHS OR

12    AFFIRMATIONS PURSUANT TO CALIFORNIA CODE OF CIVIL

13    PROCEDURE, SECTION 2093(B) AND PRIOR TO BEING

14    EXAMINED, THE DEPONENT WAS FIRST DULY SWORN BY ME.

15    [FED. R. CIV. P. 28(A), 30(F)(1)].

16         I AM NOT A RELATIVE OR EMPLOYEE OR ATTORNEY

17    OR COUNSEL OF ANY OF THE PARTIES, NOR AM I A RELATIVE

18    OR EMPLOYEE OF SUCH ATTORNEY OR COUNSEL, NOR AM I

19    FINANCIALLY INTERESTED IN THIS ACTION.  [FED. R CIV. P.

20    28].

21         I AM THE DEPOSITION OFFICER THAT

22    STENOGRAPHICALLY RECORDED THE TESTIMONY IN THE

23    FOREGOING DEPOSITION AND THE FOREGOING TRANSCRIPT IS A

24    TRUE RECORD OF THE TESTIMONY GIVEN BY THE DEPONENT.

25    [FED. R. CIV. P. 30(F)(1)].
```

257

EXHIBIT ___81___

PAGE ___1270___

1    BEFORE COMPLETION OF THE DEPOSITION, REVIEW

2  OF THE TRANSCRIPT [X] WAS [ ] WAS NOT REQUESTED.  IF

3  REQUESTED, ANY CHANGES MADE BY THE DEPONENT (AND

4  PROVIDED TO THE REPORTER) DURING THE PERIOD ALLOWED ARE

5  APPENDED HERETO.  [FED. R. CIV. P. 30(E)].

6          DATED _August 9_____, 2006

7

8

9          APRIL PRAXMARER, CSR 12437

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

258

EXHIBIT _81_

PAGE _1271_

**EXHIBIT 82**

RECEIVED

MAY 3 0 2007

1   KEKER & VAN NEST, LLP
    JOHN W. KEKER - #49092
2   MICHAEL H. PAGE - #154913
    CHRISTA M. ANDERSON - #184325
3   710 Sansome Street
    San Francisco, CA  94111-1704
4   Telephone: (415) 391-5400
    Facsimile: (415) 397-7188
5

6   Attorneys for Plaintiff
    CARTER BRYANT
7   .

8

9                    UNITED STATES DISTRICT COURT

10                   CENTRAL DISTRICT OF CALIFORNIA

11

12  CARTER BRYANT, an individual,          Case No. CV 04-09049 SGL (RNBx)
                                           (consolidated with CV 04-9059 & 05-2727)
13                      Plaintiff,
                                           **CARTER BRYANT'S SUPPLEMENTAL**
14        v.                               **AND AMENDED RESPONSES TO**
                                           **MATTEL, INC.'S THIRD SET OF**
15  MATTEL, INC., a Delaware Corporation,  **REQUESTS FOR ADMISSION TO**
                                           **CARTER BRYANT**
16                      Defendant.

17  CONSOLIDATED WITH MATTEL, INC. v.
    BRYANT and MGA ENTERTAINMENT,
18  INC. v. MATTEL, INC.

19

20

21  PROPOUNDING PARTY:    Defendant MATTEL, INC. ("Defendant")

22  RESPONDING PARTY:     Plaintiff CARTER BRYANT ("Plaintiff")

23  SET NUMBER:           THREE (3)

24

25

26

27

28

EXHIBIT 82

PAGE 1272

1   Carter Bryant ("Defendant" or "Bryant") hereby provides supplemental and amended

2   responses to certain requests included in Mattel, Inc.'s ("Plaintiff" or "Mattel") Third Set of

3   Requests for Admission.  Bryant, in good faith, provides these supplemental and amended

4   responses in an effort to address concerns raised by Mattel in its letter dated April 25, 2007, and

5   as outlined in Bryant's letter to Mattel dated May 15, 2007.

6   Bryant's responses and objections are made solely for the purpose of this action.

7   Bryant points out that discovery is still pending, that it has not concluded its investigation

8   of the facts relating to this case, has not completed its own discovery in this case, and has not

9   completed preparation for trial.  In light of the foregoing, the following Responses are given

10  without prejudice to Bryant's right to stand on its objections, to continue its investigation and

11  discovery, to rely on subsequently discovered facts, and to utilize subsequently discovered or

12  subsequently identified evidence or documents.

13  The following Responses reflect the current status of Bryant's knowledge and belief

14  respecting the matters about which inquiry is made.  Discovery will continue as long as

15  permitted by statute or stipulation of the parties, and investigation by Bryant, its attorneys and

16  agents will continue up to and throughout the trial of this action.  Bryant specifically reserves the

17  right to introduce at the time of trial any evidence from any source, including documents and

18  testimony from any witnesses which may hereafter be discovered.

19  If any information has been unintentionally omitted from these Responses, Bryant hereby

20  reserves the right to amend these Responses to include the omitted information.  Bryant also

21  reserves the right to change, amend or supplement any or all of the matters contained in these

22  responses as additional facts are ascertained, analyses are made, and research is completed.

23  These introductory paragraphs apply to each and every Response herein and shall be

24  incorporated as though fully set forth in each and every Response.

25  All of Bryant's responses are based upon information and documentation that is currently

26  available and specifically known to Bryant.  The responses are made in a good-faith effort to

27  provide information now known to Bryant which are responsive, but Bryant specifically reserves

28                                                          1

---

PLAINTIFF'S SUPPLEMENTAL AND AMENDED RESPONSES TO
DEFENDANT'S THIRD SET OF REQUESTS FOR ADMISSION
CASE NO. CV 04-09049

EXHIBIT __82__

PAGE __1273__

1  the right both to supplement any of the responses set forth below and to utilize at trial any further

2  information or documents.

3

4  **GENERAL OBJECTIONS**

5  Bryant incorporates the General Objections originally set forth in his response to Mattel's

6  Third Set of Requests for Admissions.

7

8  **RESPONSES TO REQUESTS FOR ADMISSION**

9  **REQUEST FOR ADMISSION NO. 1:**

10  Admit that the document attached hereto as Exhibit 1 is a true and correct copy of a

11  registration MGA obtained from the U.S. Copyright Office as of June 18, 2001.

12  **RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

13  Bryant incorporates by reference the above-stated general objections as if fully set forth

14  herein.  Bryant specifically objects to this request on the grounds that the request seeks to have

15  Bryant characterize the document.  Bryant also asserts that the document speaks for itself.

16  Bryant specifically objects to this request on the grounds that it calls for Bryant to speculate

17  about matters to which Bryant lacks personal knowledge.

18  Subject to and without waiving the foregoing general and specific objections, Bryant

19  responds to this request by incorporating MGA's response to Request Number 1 in Mattel's

20  Fourth Set of Requests for Admissions, served on MGA by Mattel, as follows:  MGA responds

21  that the document appears to be a copy of the original, and Bryant is presently unaware of any

22  facts which refute that response.

23

24  **REQUEST FOR ADMISSION NO. 2:**

25  Admit that the document attached hereto as Exhibit 2 is a true and correct copy of a

26  supplementary registration MGA obtained from the U.S. Copyright Office as of March 28, 2005.

27

28  2

1  on or about October 4, 2000, copies of which have been produced in this litigation.  One of the

2  clauses of that contract includes the following language: "Without limiting the generality of the

3  provisions of Paragraph 3(a), above, with respect only to any inventions, and any documentation

4  related thereto, and any other material, whether written or oral, created by or for Bryant relating

5  to the MGA Products prior to the commencement of the term of this Agreement, for good and

6  valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Bryant,

7  Bryant hereby irrevocably grants, conveys, transfers, sets over and assigns to MGA in perpetuity

8  all of Bryant's right, title and interest, in an[sic] to the such material, including without limiting

9  the generality of the foregoing, all rights under copyright and patent (and all renewals and

10  extensions thereof) including the right to produce and authorize the production of any and all

11  derivative work, and all proprietary rights of any kind therein, now known or hereafter created

12  through out the world."

13

14  **REQUEST FOR ADMISSION NO. 80:**

15      Admit that, prior to July 1, 2003, MGA had not issued any press release that identified

16  YOU as the creator of BRATZ.

17  **RESPONSE TO REQUEST FOR ADMISSION NO. 80:**

18      Bryant incorporates by reference the above-stated general objections as if fully set forth

19  herein. Bryant specifically objects to this request on the grounds that it is vague and ambiguous,

20  particularly in its use of the phrase "identified BRYANT as the creator of BRATZ."  Bryant

21  specifically objects to this request on the grounds that it calls for Bryant to speculate about

22  matters to which Bryant lacks personal knowledge.

23      Subject to and without waiving the foregoing general and specific objections, Bryant

24  responds to this request by incorporating MGA's supplemental response to Request Number 183

25  in Mattel's Third Set of Requests for Admissions, served on MGA by Mattel, as follows:  MGA

26  admits the request, and Bryant is presently unaware of any facts which refute that response.

27

28                                               29

EXHIBIT  82

PAGE  1275

1   **REQUEST FOR ADMISSION NO. 81:**

2        Admit that YOU are not aware of any press report or publication that identified YOU as

3   the creator of BRATZ prior to July 15, 2003.

4   **RESPONSE TO REQUEST FOR ADMISSION NO. 81:**

5        Bryant incorporates by reference the above-stated general objections as if fully set forth

6   herein. Bryant specifically objects to this request on the grounds that it is vague and ambiguous,

7   particularly in its use of the phrases "press report," "publication," and "identified Bryant as the

8   creator of BRATZ."

9        Subject to and without waiving the foregoing general and specific objections, Bryant

10  responds to this request as follows:  Bryant admits the request.

11

12  **REQUEST FOR ADMISSION NO. 82:**

13       Admit that the first press report or publication that identified YOU as the creator of

14  BRATZ was the *Wall Street Journal* articled entitled "Dolled Up:  To Lure Older Girls, Mattel

15  Brings in Hip-Hop Crowd" and published on July 18, 2003.

16  **RESPONSE TO REQUEST FOR ADMISSION NO. 82:**

17       Bryant incorporates by reference the above-stated general objections as if fully set forth

18  herein. Bryant specifically objects to this request on the grounds that it is vague and ambiguous,

19  particularly in its use of the phrases "press report," "publication," and "identified Bryant as the

20  creator of BRATZ."

21       Subject to and without waiving the foregoing general and specific objections, Bryant

22  responds to this request by incorporating MGA's supplemental response to Request Number 185

23  in Mattel's Third Set of Requests for Admissions, served on MGA by Mattel, as follows:  Bryant

24  has made reasonable inquiry and that the information known or readily obtainable by Bryant is

25  insufficient to enable Bryant to admit or deny this Request, and, on that basis, Defendant denies

26  the same.  Bryant, however, admits that he is not aware of any press report or publication that

27  identified Bryant as the creator of the Bratz dolls prior to the July 18, 2003 publication of the

28                                              30

EXHIBIT   82

PAGE   1276

1 | *Wall Street Journal* articled entitled "Dolled Up: To Lure Older Girls, Mattel Brings in Hip-Hop

2 | Crowd."

3 |

4 | **REQUEST FOR ADMISSION NO. 83:**

5 |     Admit that, as of the date of these Requests, MGA has not recorded the agreement

6 | produced by YOU as BRYANT 00794-BRYANT 0000799, or any version thereof, with the U.S.

7 | Copyright Office.

8 | **RESPONSE TO REQUEST FOR ADMISSION NO. 83:**

9 |     Bryant incorporates by reference the above-stated general objections as if fully set forth

10 | herein. Bryant specifically objects to this request on the grounds that the request seeks

11 | information not relevant to any claim or defense of any party in this action. Bryant specifically

12 | objects to this request on the grounds that it calls for Bryant to speculate about matters to which

13 | Bryant lacks personal knowledge.

14 |     Subject to and without waiving the foregoing general and specific objections, Bryant

15 | responds to this request by incorporating MGA's response to Request Number 241 in Mattel's

16 | Third Set of Requests for Admissions, served on MGA by Mattel, as follows: MGA admits the

17 | request, and Bryant is presently unaware of any facts which refute that response.

18 |

19 | **REQUEST FOR ADMISSION NO. 84:**

20 |     Admit that, as of the date of these Requests, MGA has not recorded the agreement

21 | produced by YOU as BRYANT 00794-BRYANT 0000799, or any version thereof, with any

22 | state or federal agency, department or entity.

23 | **RESPONSE TO REQUEST FOR ADMISSION NO. 84:**

24 |     Bryant incorporates by reference the above-stated general objections as if fully set forth

25 | herein. Bryant specifically objects to this request on the grounds that the request seeks

26 | information not relevant to any claim or defense of any party in this action. Bryant specifically

27 | objects to this request on the grounds that it calls for Bryant to speculate about matters to which

28 |

31

EXHIBIT __82__

PAGE __1277__

**RESPONSE TO REQUEST FOR ADMISSION NO. 141:**

Bryant incorporates by reference the above-stated general objections as if fully set forth herein.  Bryant specifically objects to this request on the grounds it calls for a legal conclusion.  Bryant also specifically objects to this request on the grounds that it calls for the disclosure of information subject to the attorney-client privilege, the work product doctrine, and other applicable privileges.

**REQUEST FOR ADMISSION NO. 143:**

Admit that the work registered as V A 1-233-273 is a derivative of the works registered as V A 1-218-487, V A 1-218-488, V A 1-218-489, V A 1-218-490, V A 1-218-491, V A 1-090-287, V A 1-090-288, V A 1-090-289, and V A 1-090-290.

**RESPONSE TO REQUEST FOR ADMISSION NO. 143:**

Bryant incorporates by reference the above-stated general objections as if fully set forth herein.  Bryant specifically objects to this request on the grounds it calls for a legal conclusion.  Bryant also specifically objects to this request on the grounds that it calls for the disclosure of information subject to the attorney-client privilege, the work product doctrine, and other applicable privileges.

Dated: May 29, 2007                         KEKER & VAN NEST

By: _____
CHRISTA M. ANDERSON
Attorneys for Plaintiff
CARTER BRYANT

61

PLAINTIFF'S SUPPLEMENTAL AND AMENDED RESPONSES TO
DEFENDANT'S THIRD SET OF REQUESTS FOR ADMISSION
CASE NO. CV 04-09049

EXHIBIT 82

PAGE 1278

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On May 29, 2007, I served the following document(s):

**CARTER BRYANT'S SUPPLEMENTAL AND AMENDED RESPONSES TO MATTEL, INC.'S THIRD SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT**

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery; AND

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

| | |
|---|---|
| John B. Quinn | Diana M. Torres |
| Michael T. Zeller | O'Melveny & Myers, LLP |
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | 400 S. Hope Street |
| 865 South Figueroa Street, 10th Floor | Los Angeles, CA 90071 |
| Los Angeles, CA 90017-2543 | Tel: 213/430-6000 |
| Tel: 213/443-3000 | Fax: 213/430-6407 |
| Fax: 213/443-3100 | Email: dtorres@omm.com |
| Email: johnquinn@quinnemanuel.com | |
| Email: michaelzeller@quinnemanuel.com | |

Patricia L. Glaser
Christensen Glaser Fink Jacobs Weil & Shapiro
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Tel:   310/553-3000
Fax:   310/556-2920
Email: pglaser@chrisglase.com

Executed on May 29, 2007, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

*Julie A. Selby*

JULIE A. SELBY

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT __82__

PAGE __1279__

EXHIBIT 83

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1            UNITED STATES DISTRICT COURT

 2           CENTRAL DISTRICT OF CALIFORNIA

 3                  EASTERN DIVISION

 4

 5      ----------------------------

 6      MATTEL, INC., a Delaware         )

 7      Corporation,                     )

 8                  Plaintiff,           )

 9                  vs.                  )  No. CV 04-9059

10      CARTER BRYANT, an individual;   )    NM (RNBx)

11      and DOES 1 through 10,           )

12      Inclusive,                       )

13                  Defendants.          )

14      ----------------------------  )

15      (COMPLETE CAPTION ON NEXT PAGE.)

16

17         CONFIDENTIAL - ATTORNEYS' EYES ONLY

18

19         Videotaped 30(b)(6) Deposition of

20      JOHN PRATTE, taken at 400 South Hope

21      Street, Los Angeles, California,

22      commencing at 10:06 A.M., Friday,

23      June 1, 2007, before Wendy S.

24      Schreiber, CSR No. 3558, RPR, CLR.

25      PAGES 1 - 230
```

*Certified Copy*

Confidential - Attorneys' Eyes Only

EXHIBIT _____ 83

PAGE _____ 1280

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1            UNITED STATES DISTRICT COURT

 2           CENTRAL DISTRICT OF CALIFORNIA

 3                EASTERN DIVISION

 4

 5   ------------------------------

 6   MATTEL, INC., a Delaware      )

 7   Corporation,                  )

 8            Plaintiff,           )

 9            vs.                  ) No. CV 04-9059

10   CARTER BRYANT, an individual; )    NM (RNBx)

11   and DOES 1 through 10,        )

12   Inclusive,                    )

13            Defendants.          )

14   ------------------------------ )

15   CARTER BRYANT, on behalf of   )

16   himself, all present and      )

17   former employees of Mattel,   )

18   Inc., and the general public, )

19            Counter-Claimants,   )

20            vs.                  )

21   MATTEL, INC., a Delaware      )

22   Corporation,                  )

23            Counter-Defendant.   )

24   ------------------------------

25                                 EXHIBIT ___ 03 ___

                                    PAGE ___ 1201 ___      2
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES OF COUNSEL:

 2

 3        FOR THE PLAINTIFF:

 4

 5        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

 6        BY:  MICHAEL ZELLER, ESQ.

 7        865 South Figueroa Street, Tenth Floor

 8        Los Angeles, California 90017

 9        (213) 443-3000

10        mzeller@quinnemanuel.com

11

12                    -AND-

13

14        MATTEL, INC.

15        BY:  MICHAEL MOORE, ESQ.

16        333 Continental Boulevard

17        El Segundo, California 90245-5012

18        (310) 252-2000

19        michael.moore@mattel.com

20

21

22

23

24

25
```

EXHIBIT ___83___

PAGE ___1282___        3

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES (CONTINUED):

 2

 3      FOR THE DEFENDANT AND COUNTERCLAIMANT

 4      CARTER BRYANT:

 5

 6          KEKER & VAN NEST LLP

 7          BY:  MICHAEL PAGE, ESQ.

 8          710 Sansome Street

 9          San Francisco, California 94111-1704

10          (415) 391-5400

11          mpage@kvn.com

12

13      FOR DEFENDANT MGA ENTERTAINMENT, INC.:

14

15          O'MELVENY & MYERS LLP

16          BY:  JAMES JENAL, ESQ.

17          400 South Hope Street

18          Los Angeles, California 90071-2899

19          (213) 430-6000

20          jjenal@omm.com

21

22    ALSO PRESENT:

23

24          RYAN GULINO, VIDEO OPERATOR

25
```

EXHIBIT _____83_____

PAGE ____1283____    4

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   by drawing up a logo for it?

 2       A.   I would have to assume that.  I'm not the

 3   one that did it so I don't know.

 4       Q.   Other than that instance in which you saw it

 5   drawn up as a logo, have you ever seen Chat Brats      11:49AM

 6   used in print to refer to what became the Diva Starz

 7   project?

 8       A.   I've seen many lists similar to this and

 9   could not recollect if it was on a list, but I would

10   assume that it is and it was on the E-mail from Liz.   11:49AM

11       Q.   Other than in the context of a suggested

12   name that was not adopted, have you ever seen the

13   term "Chat Brats" spelled however used to refer to

14   the Diva Starz project at any time?

15            MR. ZELLER:  The question is vague, assumes   11:49AM

16   facts not in evidence.

17            THE WITNESS:  Will you repeat that one more

18   time, please?

19   BY MR. PAGE:

20       Q.   Other than in the context of a suggested     11:49AM

21   name where you have discussed the list that shows up

22   as a suggestion and the suggested logo, other than

23   in that context, have you ever seen the words "Chat

24   Brats" spelled however used to refer to the Diva

25   Starz project?
```

EXHIBIT ___8̲3̲___  11:50AM

PAGE ___1284̲___

69

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1      A.   I have seen Chat Brats worked as a logo.  I

 2   can't conclusively say that I've seen it on other

 3   documentation.

 4      Q.   So other than seeing it as a proposed logo

 5   or a proposed name do you have any recollection of    11:50AM

 6   ever seeing the term "Chat Brats" used to refer to

 7   Diva Starz?

 8      A.   I think I just said I don't believe I've

 9   ever seen it in any other documentation other than

10   those forms.                                          11:50AM

11      Q.   Thanks.  Do you know Carter Bryant?

12      A.   No.

13      Q.   Have you ever met him?

14      A.   Not to my knowledge.

15      Q.   Did you have any interaction with him of any  11:50AM

16   sort while he was at Mattel?

17      A.   I have no idea what he looks like or who he

18   is.

19      Q.   I just want to also make sure that you

20   didn't have E-mail communications with him or         11:50AM

21   non-face-to-face communications.

22      A.   I never heard the name until counsel had

23   given me the name.

24      Q.   So did Carter Bryant to your knowledge have

25   any involvement at all in the Diva Starz project at   11:51AM
```

                                                              70

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   any time?

2       A.   I never had any interaction or knowledge of

3   Carter Bryant during my time at Mattel.

4       Q.   That cuts out a lot of questions.

5       A.   Good.                                      11:51AM

6       Q.   When did you first see a Bratz doll?  By

7   that let me -- in the broadest sense whether it's

8   actually seeing the doll in the store or seeing a

9   picture or an ad, when did you first become aware of

10  the Bratz product?                                 11:52AM

11      A.   The first time I believe that I ever saw a

12  Bratz product was when somebody purchased one from

13  the store and brought it into the office.

14      Q.   And who was that?

15      A.   I have no idea.                           11:52AM

16      Q.   Tell me everything you can recall about that

17  incident or that instance.

18      A.   When the product was brought in, I looked at

19  the package and went, "Oh, my God, they totally

20  knocked us off."                                   11:52AM

21      Q.   When you said, "Oh, my God, they totally

22  knocked us off," who did you say that to?

23      A.   I'm sure there was more than one person

24  standing there in that possible group because the

25  group of people that I hung out with in the        11:53AM

                                                        71

EXHIBIT __83__

PAGE __1286__

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        I declare under penalty of perjury

 2   under the laws of the State of California

 3   that the foregoing is true and correct.

 4        Executed on _____,

 5   2007, at _____,

 6   California.

 7

 8

 9        _____

10               JONI PRATTE

11

12

13

14

15

16

17

18

19

20

21

22

23

24                        EXHIBIT _____83____

25                        PAGE ____1287____
```

224

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    STATE OF CALIFORNIA    ) ss:

 2    COUNTY OF LOS ANGELES )

 3

 4         I, WENDY S. SCHREIBER, CSR No. 3558, do

 5    hereby certify:

 6

 7         That the foregoing deposition of JONI

 8    PRATTE was taken before me at the time and place

 9    therein set forth, at which time the witness was

10    placed under oath and was sworn by me to tell the

11    truth, the whole truth, and nothing but the truth;

12         That the testimony of the witness and all

13    objections made by counsel at the time of the

14    examination were recorded stenographically by me,

15    and were thereafter transcribed under my direction

16    and supervision, and that the foregoing pages

17    contain a full, true and accurate record of all

18    proceedings and testimony to the best of my skill

19    and ability.

20         I further certify that I am neither

21    counsel for any party in said action, nor am I

22    related to any party to said action, nor am I in any

23    way interested in the outcome thereof.

24

25
```

EXHIBIT ___83___

PAGE ___1288___

225

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1            IN WITNESS WHEREOF, I have subscribed my

 2    name this 7th day of June, 2007

 3

 4

 5

 6    _____

 7    WENDY S. SCHREIBER, CSR No. 3558, RPR

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT __83__

PAGE __1289__

226

EXHIBIT 84

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA

3           EASTERN DIVISION

4                      **CORRECTED COPY**

5  -------------------------------

6  MATTEL, INC., a Delaware    )

7  Corporation,              )

8         Plaintiff,      )

9         vs.          ) No. CV 04-9059

10 CARTER BRYANT, an individual; ) NM (RNBx)

11 and DOES 1 through 10,    )

12 Inclusive,             )

13        Defendants.    )

14 ---------------------------- )

15 (COMPLETE CAPTION ON NEXT PAGE.)

16

17    CONFIDENTIAL - ATTORNEYS' EYES ONLY

18

19    Videotaped 30(b)(6) Deposition of KISLAP

20    ONGCHANGCO, taken at 400 South Hope Street,

21    Los Angeles, California, commencing at

22    9:45 A.M., Tuesday, April 24, 2007, before

23    Wendy S. Schreiber, CSR No. 3558, RPR, CLR.

24                EXHIBIT _____ 84

25 PAGES 1 - 282        PAGE _____ 1290

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2            CENTRAL DISTRICT OF CALIFORNIA
 3                   EASTERN DIVISION
 4
 5    ------------------------------
 6    MATTEL, INC., a Delaware        )
 7    Corporation,                    )
 8              Plaintiff,            )
 9              vs.                   ) No. CV 04-9059
10    CARTER BRYANT, an individual;  )    NM (RNBx)
11    And DOES 1 through 10,          )
12    Inclusive,                      )
13              Defendants.           )
14    ------------------------------ )
15    CARTER BRYANT, on behalf of    )
16    himself, all present and       )
17    former employees of Mattel,    )
18    Inc., and the general public,  )
19              Counter-Claimant,    )
20              vs.                   )
21    MATTEL, INC., a Delaware        )
22    Corporation,                    )
23              Counter-Defendant. )
24    ------------------------------
25
```

EXHIBIT ___84___

PAGE ___1291___

2

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   APPEARANCES OF COUNSEL:

 2

 3      FOR THE PLAINTIFF:

 4

 5         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

 6         BY:  MICHAEL T. ZELLER, ESQ.

 7         865 South Figueroa Street, Tenth Floor

 8         Los Angeles, California 90017

 9         (213) 443-3000

10         michaelzeller@quinnemanuel.com

11

12

13      FOR THE DEFENDANT AND COUNTER-CLAIMANT

14   CARTER BRYANT:

15

16         LITTLER MENDELSON

17         BY:  KEITH JACOBY, ESQ.

18         2049 Century Park East

19         Fifth Floor

20         Los Angeles, California 90067-3107

21         (310) 553-0308

22

23                - AND -

24

25
```

EXHIBIT 84

PAGE 1292

3

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES OF COUNSEL (CONTINUED):

 2

 3

 4         KEKER & VAN NEST LLP

 5         BY:  MICHAEL H. PAGE, ESQ.

 6         710 Sansome Street

 7         San Francisco, California 94111-1704

 8         (415) 391-5400

 9         Mhp@kvn.com

10

11

12    FOR DEFENDANT MGA ENTERTAINMENT, INC.:

13

14         O'MELVENY & MYERS LLP

15         BY:  DIANA M. TORRES, ESQ.

16         400 South Hope Street

17         Los Angeles, California 90071-2899

18         (213) 430-6000

19         dtorres@omm.com

20         jjenal@omm.com

21

22    ALSO PRESENT:

23

24         DAVID WEST, VIDEO OPERATOR

25
```

EXHIBIT __84__

PAGE __1293__

4

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   BY MS. TORRES:

 2       Q.    No.  Let me ask you this.  Do you have

 3   information on that subject?

 4            MR. ZELLER:  Asked and answered.

 5            THE WITNESS:  I do not aside from what we    02:15PM

 6   have here.

 7   BY MS. TORRES:

 8       Q.    What do you mean "aside from what we have

 9   here"?

10       A.    Well, the documents that we went over.  I    02:15PM

11   mean, personally I do not have any.

12       Q.    Are any of the documents that we have here

13   acts, omissions, circumstances or evidence showing

14   that any products of MGA originated from or were

15   derived from or are based in any way upon products    02:15PM

16   of Mattel?

17            MR. ZELLER:  If you're going to phrase these

18   things like they're contention interrogatories, it's

19   completely improper.  If you want to ask him

20   questions about facts, you can do that.               02:16PM

21   BY MS. TORRES:

22       Q.    Do you have any --

23            MR. ZELLER:  Asking him to interpret a legal

24   document is not appropriate.  EXHIBIT ____ 84

25   /  /  /                        PAGE ____ 1294          02:16PM
                                                            146
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   BY MS. TORRES:

 2       Q.   Do you have any knowledge of any acts by MGA

 3   that you think show that any product of MGA is based

 4   in any way on any product of Mattel?

 5            MR. ZELLER:  First of all, Counsel, as you    02:16PM

 6   know, he is here to talk about the aspects of that

 7   from Diva Starz, not any and all products.

 8            MS. TORRES:  No, that's what I'm asking.

 9   Does he have any --

10            MR. ZELLER:  If you're asking about Diva      02:16PM

11   Starz, that's --

12            MS. TORRES:  It's a yes-or-no question.

13            MR. ZELLER:  Well, you're phrasing it again

14   in this overbroad, legal contention way and I have a

15   problem with that.                                    02:16PM

16   BY MS. TORRES:

17       Q.   Do you have any knowledge that's relevant in

18   any way to this topic other than on Diva Starz or

19   Mini Diva Starz?

20       A.   I don't think so.  I didn't work with Bryant 02:17PM

21   so I don't know.

22       Q.   Did you know Carter Bryant at all?

23       A.   I might have met him before but I don't know

24   him at all -- I don't know him well at all.

25       Q.   Do you recall ever having a conversation     02:17PM
                                                                 147
```

EXHIBIT 84

PAGE 1295

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    with him?

2         A.    No.

3         Q.    In your capacity as a representative of

4    Mattel, do you have any belief that any product from

5    MGA originated from Diva Starz?                    02:17PM

6              MR. ZELLER:  First of all, he's not here to

7    give his beliefs as a representative.  As we've

8    already said, in terms of the designations the

9    people aren't here to connect the dots.  If you want

10   to ask him about the use of Brats in Diva Starz,    02:17PM

11   that's why he's here as you've been now told

12   repeatedly.  So you're trying to phrase it in this

13   legal contention way that's completely improper and

14   you're wasting everybody's time.  You know why he's

15   here and, you know, you should ask some questions    02:18PM

16   about it.

17             MR. PAGE:  Can I make a suggestion that

18   might help?

19             MR. ZELLER:  Yes.

20             MR. PAGE:  Will you make a representation    02:18PM

21   that he has testimony only of his own knowledge;

22   that he hasn't collected testimony from other people

23   at Mattel?  That would shorten it a whole lot.

24             MR. ZELLER:  What he said is that he's read

25   Steve Linker's testimony, he's looked at documents,   02:18PM

                                                           148

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   he's here to testify including based on what it is

 2   that he knows based on his work as a development

 3   designer on the use of the name Brats internally.

 4   That's why he's here.  That's what I told you the

 5   other day over the phone and that's what I've been      02:18PM

 6   trying to tell, you know, Diana.

 7          But I don't think it's appropriate to argue

 8   with the witness about these sort of designations.

 9   I don't intend to do that to your witnesses and I

10   don't think that's appropriate.  I mean, he's not --    02:18PM

11   he doesn't know how these things fit into the case.

12   If you want to ask him, you know, facts that he

13   knows on that subject, that's what you can do.

14          MR. PAGE:  Counsel, but my suggestion was

15   does she have to exhaust the universe of everything     02:19PM

16   Mattel might know that you might have told him that

17   he's going to testify to?

18       ·  MR. ZELLER:  No, absolutely not.

19          MR. PAGE:  Of if she exhausts his personal

20   knowledge, is he done as a designee?                    02:19PM

21       ·     MR. ZELLER:  Right.  Once -- right, exactly.

22   Because he -- and also maybe the other piece to be

23   clear about this is that we have designated a number

24   of other people -- Rene Pasko, Joanie Pratt -- and

25   those other people perhaps as well to talk about the    02:19PM

                                                             149
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   question is vague.

2          THE WITNESS:  Are you asking if their

3   vicinity is near ours?

4   BY MS. TORRES:

5      Q.   Correct.                                    03:24PM

6      A.   It's in the vicinity.  I can't say how far

7   it would be but it's within the vicinity.  It's in

8   the same -- it's in the same level of the building,

9   yes.

10     Q.   Other than within the same level of the    03:24PM

11  building, was it close to you would you say?

12         MR. ZELLER:  The question is vague.

13         THE WITNESS:  Close as in?  Like how many

14  feet?  Like as far as Rene's cube, you mean?  It was

15  further than that.                                 03:24PM

16  BY MS. TORRES:

17     Q.   It was further than Rene's cube?

18     A.   Yes.

19     Q.   For the record I think you said Rene's cube

20  was somewhere within ten cubes of yours.            03:24PM

21     A.   Yes.

22     Q.   So this was more than ten cubes away?

23     A.   Yes.

24     Q.   Barbie Collectibles?     EXHIBIT ___84___

25     A.   Yes.                                        03:24PM
                                     PAGE ___1298___
                                                        192

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1      Q.   Was Mr. Bryant -- do you know where

 2   Mr. Bryant sat at that time?

 3      A.   No, I didn't.

 4      Q.   You do not?

 5      A.   No.                                      03:25PM

 6      Q.   You don't know whether he was sitting with

 7   Barbie Collectibles or not?

 8      A.   I don't know.

 9      Q.   When did you first learn that Carter Bryant

10   was involved in the creation of the Bratz dolls?   03:25PM

11         MR. ZELLER:  I'm going to object.

12         THE WITNESS:  I don't know.  I never worked

13   with him or knew anyone that worked with him with

14   the Bratz so I don't know when he conceived it at

15   all.                                             03:25PM

16   BY MS. TORRES:

17      Q.   That wasn't my question.

18      A.   What was the question?  Sorry.

19      Q.   At some point in time did you come to learn

20   that Carter Bryant had any involvement in the Bratz  03:25PM

21   dolls?

22      A.   Yeah, I heard it later on when there was an

23   allegation, but before that I did not know.

24      Q.   When you say "when there was an allegation,"

25   what do you mean?                                03:25PM
```

EXHIBIT ___84___

PAGE ___1299___

193

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1      A.    When he was involved in -- in the allegation
 2   that he copied Diva Starz.
 3      Q.    When did you first hear that there was an
 4   allegation that he copied Diva Starz?
 5      A.    God, I don't remember.  Maybe two to three    03:25PM
 6   years ago maybe.  I don't remember.
 7      Q.    Was there a lawsuit already pending to the
 8   best of your knowledge?
 9      A.    Yes, that's how I heard it.
10      Q.    How did you hear about the lawsuit?           03:26PM
11      A.    Gosh, I don't remember.  It might have been
12   some friends talking but I don't remember how --
13   exactly how I heard it.
14      Q.    Prior to that time did you have any
15   knowledge that Carter Bryant was involved in any way   03:26PM
16   with the Bratz dolls?
17      A.    No.
18      Q.    Had you ever heard that Carter Bryant was
19   involved in any way with the Bratz dolls?
20      A.    Not until I heard the allegations.            03:26PM
21      Q.    When you heard the allegations about the --
22   in connection with your hearing about the lawsuit,
23   did you hear that the allegation -- what did you
24   hear about the allegation?
25      A.    That he had submitted some drawings to I      03:27PM
                                                              194
```

EXHIBIT 84

PAGE 1500

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   believe MGA that he did while he was at Mattel.

 2       Q.   Who did you hear that from?

 3       A.   Gosh, I don't remember who I heard that from

 4   but, you know, of course, those were around the time

 5   when, you know, you're not sure what's going on        03:27PM

 6   until I was called by my counsel to talk to me about

 7   it.

 8       Q.   Okay.  But it was before you were called by

 9   counsel?

10       A.   Yes.                                           03:27PM

11       Q.   And you don't recall when that was?

12       A.   I don't recall it.

13       Q.   Do you recall hearing the allegation that

14   Carter Bryant did anything in any way that copied

15   any aspect of Diva Starz?                               03:27PM

16       A.   Can you repeat that question?

17            MS. TORRES:  Can you read it back?

18            (The pending question was read as follows:

19                "Q.   Do you recall hearing the

20            allegation that Carter Bryant did anything     03:27PM

21            in any way that copied any aspect of Diva

22            Starz?")

23            MR. ZELLER:  First of all, I think this has

24   been asked and answered but also I would just

25   caution the witness you shouldn't be talking about      03:28PM
```

                                                                195

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1          I declare under penalty of perjury
 2     under the laws of the State of California
 3     that the foregoing is true and correct.
 4          Executed on _____,
 5     2007, at _____,
 6     California.
 7
 8
 9               _____
10               KISLAP ONGCHANGCO
11
12
13
14
15
16
17
18
19
20
21
22
23
24               EXHIBIT ____ 84 _____
25               PAGE ____ 1302 _____
                                              278
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   STATE OF CALIFORNIA     ) ss:

2   COUNTY OF LOS ANGELES )

3

4           I, WENDY S. SCHREIBER, CSR No. 3558, do

5   hereby certify:

6

7           That the foregoing deposition of KISLAP

8   ONGCHANGCO was taken before me at the time and place

9   therein set forth, at which time the witness was

10  placed under oath and was sworn by me to tell the

11  truth, the whole truth, and nothing but the truth;

12          That the testimony of the witness and all

13  objections made by counsel at the time of the

14  examination were recorded stenographically by me,

15  and were thereafter transcribed under my direction

16  and supervision, and that the foregoing pages

17  contain a full, true and accurate record of all

18  proceedings and testimony to the best of my skill

19  and ability.

20          I further certify that I am neither

21  counsel for any party in said action, nor am I

22  related to any party to said action, nor am I in any

23  way interested in the outcome thereof.

24

25

EXHIBIT _____ 84

PAGE _____ 1303                          279

· CONFIDENTIAL - ATTORNEYS' EYES ONLY

1            IN WITNESS WHEREOF, I have subscribed my

2    name this 8th day of May, 2007.

3

4

5

6    _____

7    WENDY S. SCHREIBER, CSR No. 3558, RPR

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    EXHIBIT ____84____

25    PAGE ____1304____

280

EXHIBIT 85

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1            UNITED STATES DISTRICT COURT
 2          CEDNTRAL DISTRICT OF CALIFORNIA
 3                  EASTERN DIVISION
 4
 5   ------------------------------)
 6   CARTER BRYANT,                )
 7                  Plaintiff,     )
 8            vs.                  )  No. CV 04-9049SGL
 9   MATTEL, INC., a Delaware      )     (RNBx)
10   corporation,                  )
11                  Defendant.     )
12   ------------------------------)
13   Consolidated with MATTEL, INC.)
14   v. BRYANT and MGA             )
15   ENTERTAINMENT, INC. V. MATTEL,)
16   INC.                          )
17   ------------------------------)
18        CONFIDENTIAL - ATTORNEYS EYES ONLY
19
20      Videotaped Deposition of ROBERT SIMONEAU,
21      at 300 South Grand Avenue, Suite 3200,
22      Los Angeles, California, commencing at
23      9:25 A.M., Monday, January 28, 2008,
24      before Judith Schlussel, CSR No. 4307.
25   PAGES 1 - 261
```

EXHIBIT _____ 85

PAGE _____ 1305

Certified Copy

1

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES OF COUNSEL:

 2

 3        FOR THE PLAINTIFF:

 4

 5            KEKER & VAN NEST

 6            BY: MICHAEL H. PAGE, ESQ.

 7            710 Sansome Street

 8            San Francisco, California 94111-1704

 9            415 391-5400

10

11        FOR THE WITNESS:

12

13            QUINN EMANUEL URQUHART OLIVER &

14            HEDGES, LLP

15            BY:  JOHN S. GORDON, ESQ.

16            865 S. Figueroa Street

17            10th Floor

18            Los Angeles, California 90017

19            213 443-3000

20

21

22

23

24                              EXHIBIT    8 5

25                                         1306
                                                        2
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES OF COUNSEL (CONTINUED):

 2

 3        FOR THE COUNTER-DEFENDANTS MGA

 4        ENTERTAINMENT, INC., ISAAC LARIAN, MGA

 5        ENTERTAINMENT (HK) LIMITED, AND MGAE de

 6        MEXICO S.R.L. de C.V:

 7

 8            SKADDEN ARPS SLATE MEAGHER & FLOM, LLP

 9            BY:  MARCUS R. MUMFORD, ESQ.

10            300 South Grand Avenue

11            Los Angeles, California 90071-3144

12            213 687-5000

13

14    ALSO PRESENT:

15

16            MICHAEL MOORE, ESQ., MATTEL IN-HOUSE

17            COUNSEL

18            SOSEH KEVORKIAN, VIDEOGRAPHER

19

20

21

22

23                          EXHIBIT  85

24

25                          PAGE  1307
```

                                                    3

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    accurate depiction of the file that was opened and

2    kept and titled 02-115?

3        MR. GORDON:  Objection; misstates the

4    witness' testimony.

5        THE WITNESS:  All I'm saying, Counsel, is          01:22:35

6    there are certain documents in here that I don't

7    recognize, and I have no idea how they got to be

8    part of this packet.

9    Q.  BY MR. MUMFORD:  Are you disputing this is

10   the file named 02-115?                                01:22:46

11   A.  No, sir, I'm not.  What I'm saying is that

12   the last time I had custody of the file, it did not

13   contain some of the pages that are in this packet of

14   information.

15   Q.  Let's go through those pages that you            01:23:04

16   recognize from the last time that you had custody of

17   this file, please.  Can you point them out to me.

18   A.  Well, any of the pages that say redacted, I

19   can't speak to because I don't know what they are.

20   Q.  You didn't make those redactions?               01:23:21

21   A.  No.  I did not.

22   Q.  Do you know what is contained on those

23   pages?                          EXHIBIT _____85_____

24   A.  No, sir, I don't.           PAGE _____1308_____

25   Q.  Did you keep -- did you keep files in your       01:23:31

                                                              111

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   department that had redacted pages?

2       A.   No, sir.  While I was there, I had no files

3   that had pages that had redacted -- that were just a

4   blank page with the word redacted on it.

5       Q.   Okay.                                          01:23:52

6       A.   The one marked 74310 is what I had referred

7   to as a face sheet for an incident report.

8       Q.   And are you saying this was in the file the

9   last time you saw it?

10      A.   Yes, sir.  This appears to be the document    01:24:15

11   that was generated by myself.  And there is a black

12   square on it.  And I recognize the handwriting at

13   the top.  It appears to be my writing.

14      Q.   Just to clarify, you're at page M 0074310?

15      A.   Yes, sir, that's correct.                      01:24:49

16      Q.   You're referring to the black, sort of dark

17   box --

18      A.   Yes.

19      Q.   -- in the upper right-hand corner?

20           MR. GORDON:  Just two matters.  One, we're     01:24:59

21   designating this as Attorneys' Eyes Only deposition.

22   So are you one of the --

23           MR. NOLAN:  I'm an attorney.

24           MR. GORDON:  Are you counsel of --

25           MR. NOLAN:  -- with Skadden Arps.  Tom         01:25:16
                                                            112

85

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   Nolan.

 2       Q.   BY MR. MUMFORD:  You said there were two

 3   matters?

 4           MR. GORDON:  It was just the only other.  I

 5   didn't recognize Mr. Nolan from the last picture I      01:25:28

 6   saw of him years ago.  I'm not saying you've gotten

 7   older.  I guess we all have.

 8           MR. NOLAN:  I'm not offended at all.  I'm

 9   sure I look younger.

10       Q.   BY MR. MUMFORD:  And this dark box, that's      01:25:41

11   your handwriting?

12       A.   The writing at the top that says related

13   cases, related case actually it says, the way I read

14   it appears to be my handwriting.  And then below

15   that are three numbers, the top of which, which         01:26:02

16   looks like 02-299 appears to be my handwriting.  The

17   others are not my writing.

18       Q.   The others being 03-034?

19       A.   That's one of them, yeah.

20       Q.   And 03-664?                                     01:26:20

21       A.   It's either 664 or 064.

22       Q.   Related case, what does that refer to?

23       A.   I would have written.  And I use the term

24   related case if the case tied by either common

25   people, common type of crime, common MO or something    01:26:41
                                                                   113
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    discussed IP protection program."

2        Q.   Does this refresh your recollection as to

3    how you received the information from Ms. Evelyn

4    Viohl and Ivy Ross that's set forth in the incident

5    narrative?                                          01:59:25

6        A.   No, sir, it sure doesn't.  Again, it tells

7    me that I met with them.

8        Q.   Does this log say anything about you

9    meeting with Evelyn Viohl?

10       A.   No.                                        01:59:35

11       Q.   Can you explain why the incident narrative

12   mentions her name and she's listed on the second

13   page as incident person informant but she's not on

14   your chronological log?

15       A.   No, I can't.                               01:59:50

16       Q.   Do you have any reason to doubt the

17   information that's contained in the incident report?

18       A.   No, I don't.

19       Q.   Had you met with Evelyn Viohl on any prior

20   occasion?                                           02:00:03

EXHIBIT 85

21       A.   I have no idea.  I don't know.

PAGE 1311

22       Q.   How did you know who she was?

23       A.   Actually, I could not tell you who she is

24   right now.  I don't know.  The only way I would know

25   is on that date I met with her according to what I   02:00:17

                                                         137

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    put in the narrative of that report.

 2         Q.   How about Ivy Ross, do you remember meeting

 3    with her?

 4         A.   No, I don't.

 5         Q.   Do you know her?                          02:00:27

 6         A.   No.  I mean I know that she was an employee

 7    of Mattel at that time.  I don't know her

 8    personally.

 9         Q.   How do you know she was an employee of

10    Mattel?                                             02:00:39

11         A.   At the time I did this report, it would

12    tell me I talked to two employees.  It says

13    employer, Mattel for both of them; tells me that

14    they're employees in the Girls Product and Design

15    and that Ivy Ross is a senior vice-president of     02:01:01

16    Girls Product and Design.

17         Q.   Okay.  Let's keep going through this

18    document.  Does this log refresh your recollection

19    as to what happened next in the course of your

20    investigation?                                      02:01:24

21         A.   No.  It tells me about activities that

22    occurred.  I don't recall any of these activities

23    independently of this log.

24         Q.   After you met with Ivy Ross, what did you

25    do next as part of this investigation?              02:01:43
                                                          138
```

EXHIBIT 85

PAGE 1312

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      A.    The chronological log says on 3-28, that I

2    met with Cassidy Park to get more information on MGA

3    issue.

4      Q.    What else does it say?

5      A.    Log says that she suggested Carter Bryant      02:02:07

6    as an illustrator former employee who may have

7    plagiarized design of Lily Martinez and created

8    Bratz dolls for MGA.

9      Q.    Do you remember what you were referring to

10   by MGA issue?                                          02:02:28

11     A.    I don't remember.  But by reading this, it

12   indicates that the face sheet, or the incident

13   report alleged that MGA was manufacturing products

14   that appeared to be Mattel designs.

15     Q.    And also hiring Mattel employees to           02:02:52

16   manufacture those products.  Isn't that right?

17     A.    That's correct.

18     Q.    So when you met with Cassidy Park, it was

19   to get more information on the allegation that MGA

20   was hiring Mattel employees to manufacture products,  02:03:07

21   correct?

22     A.    I don't know that.  That doesn't -- it's

23   not clear to me by this remark that that's what that

24   purpose was.

25     Q.    Do you have any reason to dispute it?         02:03:20

EXHIBIT 85

PAGE 1313

139

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      A.   It could be to discuss ways that they

2   needed to improve their intellectual property

3   protection.

4      Q.   You mean the MGA issue was to -- you were

5   meeting on how MGA could improve their intellectual      02:03:40

6.  property protection?

7      A.   No, sir, I didn't say that.  First, I said

8   I don't know why I met with her.  I don't have any

9   independent recollection of why I met with her.  But

10  the MGA issue to me right now means that I kind of       02:03:54

11  had been meeting with her to get more details that

12  Ross and Viohl had not given me since they all

13  worked in the same general department or I could

14  have been meeting with her to discuss how they could

15  prevent like circumstances from occurring.  And I       02:04:14

16  don't know.  That's all speculation.  But from the

17  note, it doesn't tell me clearly which of those or

18  anything else that I did in a discussion.

19     Q.   But the note does refer to the MGA issue?

20     A.   Yes, it does.                                    02:04:35

21     Q.   Do you remember how long you spoke with Ivy

22  Ross and Evelyn Viohl about this issue?

23     A.   No, sir, I don't have any independent

24  recollection of the meeting.

25     Q.   Do you have any reason to -- withdraw that.      02:04:47
                                                             140

EXHIBIT  85

PAGE  1314

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        I declare under penalty of perjury

2    under the laws of the State of California

3    that the foregoing is true and correct.

4        Executed on _____, 2008,

5    at _____, _____.

6

7

8

9        _____

10           SIGNATURE OF THE WITNESS

11

12

13

14

15

16

17

18

19

20

21

22

23                          EXHIBIT __85__

24

25                          PAGE __1315__

259

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   STATE OF CALIFORNIA      ) ss:

 2   COUNTY OF LOS ANGELES     )

 3

 4       I, JUDITH SCHLUSSEL, C.S.R. No. 4307, do hereby

 5   certify:

 6

 7       That the foregoing deposition testimony of

 8   ROBERT SIMONEAU was taken before me at the time and

 9   place therein set forth, at which time the witness

10   was placed under oath and was sworn by me to tell

11   the truth, the whole truth and nothing but the

12   truth;

13       That the testimony of the witness and all

14   objections made by counsel at the time of the

15   examination were recorded stenographically by me,

16   and were thereafter transcribed under my direction

17   and supervision, and that the foregoing pages

18   contain a full, true and accurate record of all

19   proceedings and testimony to the best of my skill

20   and ability.

21       I further certify that I am neither counsel for

22   any party to said action, nor am I related to any

23   party to said action, nor am I in any way interested

24   in the outcome thereof.    EXHIBIT  85

25                              PAGE  1316

                                                        260
```

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    IN WITNESS WHEREOF, I have subscribed my name

2    this 8th day of February, 2008.

3

4

5    *Judith Schlussel*

6    JUDITH SCHLUSSEL, CSR No. 4307

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    EXHIBIT __85__

25    PAGE __1317__

261

**EXHIBIT 86**



02-115

De Ande

EXHIBIT NO. 1195
12/19/07
Wendy S. Schreiber

CONFIDENTIAL - ATTORNEYS EYES ONLY

EXHIBIT   816

1318

M 0074307

REDACTED

CONFIDENTIAL - ATTORNEYS EYES ONLY

M 0074308

EXHIBIT  86

PAGE  1319

MGA Entertainment - Contact                                        Page 1 of 1





The preferred method of contact for Customer Service is using our email contact form

Please refer customer service and help line calls to our customer service call center.

**1-800-222-4685**

**Visit our Customer Service Page for:**

- Product FAQ's
- Product Instruction Manuals
- Product Registration
- Product Part Ordering

**Concept Submissions**

MGA welcomes the opportunity to review your product concept ideas. To learn more about submitting your ideas, please read and download our submission form.

**Los Angeles Corporate Office:**

MGA Entertainment
16380 Roscoe Blvd., Suite 200
Van Nuys, CA 91406
(818) 894-2525

Privacy Policy

Site Map | Contact Info | Press Releases | Awards | Cool Jobs | Registration | Warranty Information
Privacy Policy | Terms of Use

TM & © MGA Entertainment, Inc. All Rights Reserved

http://www.mgae.com/contact.asp                           5/26/2006

CONFIDENTIAL - ATTORNEYS EYES ONLY

EXHIBIT 86
PAGE 1320

M 0074309

## Incident Report

**Page: 1**

| File #: 02-115 | Incident #: 0000002207 0000 |
| --- | --- |

Category:        01 - Theft
Subcategory:     13 - Proprietary Information

Occurrence Date: 3/15/2002
Occurrence Time: 15:00
Reported Date:   3/20/2002

Building/Site:   El Segundo Design Center
                 2031 Mariposa Ave
                 El Segundo, California
                 United States 90245

Status:          Open

Report Taken By: Simoneau, Bob
Employment Details:
Occupation: Security Investigations
(310) 252-2339

### Incident Narrative

Information received from Design Center staff, Evelyn Viohl and Ivy Ross that MGA Entertainment, headed by a person known as Isaac *LARIAN* has recently hired a number of former Mattel employees and is manufacturing products that appear to be Mattel designs.

Invest. opened.

### Incident Person

**Incident Person Details 1 of 3**
Larian, Isaac

Person Type: Suspect
Comments:        Owner of MGA Entertainment

Personal Details:
Age:        49                    Sex:      Male

Home Address:
237 N. Carolewood Dr.
Los Angeles, California
United States 90077
(310) 271-7575

Employment Details:
SSN        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
Employer: MGA Entertainment
           16730 Schoenborn St.
           North Hills, California
           United States 91343

02- 115

| Mattel, Inc. | 3/20/2002 | (c)PPM 2000 Inc 1990-98. All Rights Reserved. |

CONFIDENTIAL - ATTORNEYS EYES ONLY

EXHIBIT 86   M 0074310

PAGE 1321

# Incident Report

**Page: 2**

(818) 894-2525

### Incident Person Details 2 of 3

Viohl, Evelyn

Person Type: Informant
Employment Details:
Occupation: Employee
Employer:   Mattel

### Incident Person Details 3 of 3

Ross, Ivy

Person Type: Informant
Personal Details:
Sex:         Male

Employment Details:
Occupation: Employee
Employer:   Mattel, Inc.
            333 Continental Blvd.
            D1-0126 SVP Girls Product & Design
            El Segundo, California
            United States 90245
            (310) 252-2680

CONFIDENTIAL - ATTORNEYS EYES ONLY

EXHIBIT 86

PAGE 1322

M 0074311

California Civil Index Search Results

| Details | | | |
|---|---|---|---|
| Name: | LARIAN ISAAC | Party: | DEFENDANT |
| Case Num: | SC 1184 | Date: | 07/X2/1999 |
| District: | | County: | LOS ANGELES |

| Details | | | |
|---|---|---|---|
| Name: | LARIAN ISAAC | Party: | PLAINTIFF |
| Case Num: | NWC 15133 | Date: | 12/30/1988 |
| District: | | County: | LOS ANGELES |

| Details | | | |
|---|---|---|---|
| Name: | LARIAN ISAAC | Party: | DEFENDANT |
| Case Name: | LC 1210 | Date: | 06/18/1999 |
| District: | | County: | LOS ANGELES |

| Details | | | |
|---|---|---|---|
| Name: | LARIAN ISAAC | Party: | DEFENDANT |
| Case Num: | BC 95862 | Date: | 12/28/1993 |
| District: | | County: | LOS ANGELES |

| Details | | | |
|---|---|---|---|
| Name: | LARIAN ISAAC | Party: | DEFENDANT |
| Case Num: | BC 70814 | Date: | 12/16/1992 |
| District: | | County: | LOS ANGELES |

| Details | | | |
|---|---|---|---|
| Name: | LARIAN ISAAC | Party: | PLAINTIFF |
| Case Num: | BC 122117 | Date: | 02/16/1995 |
| District: | | County: | LOS ANGELES |

| Details | | | |
|---|---|---|---|
| Name: | LARIAN ISAAC | Party: | PLAINTIFF |
| Case Num: | BC 120082 | Date: | 01/17/1995 |
| District: | | County: | LOS ANGELES |

| Details | | | |
|---|---|---|---|
| Name: | LARIAN ISAAC | Party: | DEFENDANT |
| Case Num: | BC 102330 | Date: | 04/06/1994 |
| District: | | County: | LOS ANGELES |

| Details | | | |
|---|---|---|---|
| Name: | LARIAN ISAAC | Party: | DEFENDANT |
| Case Num: | BC 301371 | Date: | 05/28/2003 |
| District: | | County: | LOS ANGELES |

| Details | | | |
|---|---|---|---|
| Name: | LARIAN ISAAC | Party: | DEFENDANT |

http://www.loc8fast.com/XMLPrintResults.aspx?FileName=6878294                11/21/2005

CONFIDENTIAL - ATTORNEYS EYES ONLY

EXHIBIT  86

PAGE  1323

M 0074312

California Civil Index Search Results                                    Page 2 of 2

| Case Num: | BC 280489 | | Date: | 10/28/2001 |
| District: | | | County: | LOS ANGELES |

| | | | Details | |
| Name: | LARIAN ISAAC | Party: | DEFENDANT |
| Case Num: | BC 329001 | Date: | 02/24/2005 |
| District: | | County: | LOS ANGELES |

| | | | Details | |
| Name: | LARIAN ISAAC E | Party: | DEFENDANT |
| Case Num: | NWC 28122 | Date: | 04/28/1987 |
| District: | | County: | LOS ANGELES |

| | | | Details | |
| Name: | LARIAN ISAAC E | Party: | DEFENDANT |
| Case Num: | WEC 103786 | Date: | 06/04/1986 |
| District: | | County: | LOS ANGELES |

| | | | Details | |
| Name: | LARIAN ISAAC E | Party: | DEFENDANT |
| Case Num: | WEC 101082 | Date: | 02/20/1986 |
| District: | | County: | LOS ANGELES |

http://www.loc8fast.com/XMLPrintResults.aspx?FileName=6878294          11/21/2005

CONFIDENTIAL - ATTORNEYS EYES ONLY

EXHIBIT 86

PAGE 1324

M 0074313

www.loc8fast.com

7/22/2003 11:19:02 AM

Search Criteria

SSN:          569316324

| # | Name/SSN | Address/County | Phone # | DOB/Lic# | Reported |
|---|---|---|---|---|---|
| 1. | BRYANT, CARTER H<br>aka: BRYANT, CARTER<br>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 | Apt. Number - 376<br>402 MOUNT VERNON ST<br>NIXA, MO 65714<br>CHRISTIAN County | | 09/01/1959 | 7/22/2003 |
| 2. | BRYANT, CARTER H<br>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 | 610 ELDERBERRY LN<br>NIXA, MO 65714<br>CHRISTIAN County | | 09/01/1959 | 02/01/2003 |
| 3. | BRYANT, CARTER H<br>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 | PO BOX 1317<br>NIXA, MO 65714<br>CHRISTIAN County | (417) 836-6528 | 09/01/1959 | 03/01/1999 |
| 4. | BRYANT, CARTER H<br>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 | 37468 3RD ST<br>PALMDALE, CA 93550<br>LOS ANGELES County | (661) 836-6528 | 09/01/1959 | 12/01/1996 |
| 5. | BRYANT, CARTER H<br>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 | Apt. Number - 29<br>45044 28TH EAST ST<br>LANCASTER, CA 93535<br>LOS ANGELES County | (661) 836-6528 | 09/01/1959 | 09/01/1996 |
| 6. | BRYANT, CARTER H<br>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 | 1834 PALMYR AV<br>ORANGE, CA 92666<br>County | (000) 836-6528 | 1968 | 09/01/1993 |
| 7. | BRYANT, CARTER H<br>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 | 38701 20TH ST<br>PALMDALE, CA 93550<br>LOS ANGELES County | (661) 836-6528 | 1968 | 08/01/1993 |
| 8. | BRYANT, CARTER H<br>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 | Apt. Number - 1200<br>1472 EAST<br>IDAHO FALLS, ID 83402<br>BONNEVILLE County | | 09/01/1959 | 08/01/1988 |
| 9. | BRYANT, CARTER H<br>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 | 1319 160TH ST<br>GARDENA, CA 90247<br>LOS ANGELES County | (310) 836-6528 | 09/01/1959 | // |
| 10. | BRYANT, CARTER H<br>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 | Apt. Number - A<br>1 SYCAMORE<br>KIMBERLING CITY, MO 65686<br>STONE County | (417) 836-6528 | 09/01/1959 | // |
| 11. | BRYANT, CARTER H<br>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 | 2606 VALENCIA ST<br>SANTA ANA, CA 92706<br>ORANGE County | (714) 836-6528 | 1968 | // |

CONFIDENTIAL - ATTORNEYS EYES ONLY

M 0074314

EXHIBIT 816
PAGE 1325

www.loc8fast.com                                                            Page 2 of 2

| 12. | Name/SSN | Address/County | Phone # | DOB/Lic# | Reported |
|-----|----------|----------------|---------|----------|----------|
|  | BRYANT, CARTER H<br>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 | 9644 AVE S 12<br>LITTLEROCK, CA 93543<br>LOS ANGELES County | (661) 836-6528 | 09/01/1959 | // |

http://www.loc8fast.com/CHSearch.asp?page=PRINTABLE&fid=4675228&sid=CH1&Re... 7/22/2003

CONFIDENTIAL - ATTORNEYS EYES ONLY

EXHIBIT   816                                                              M 0074315

PAGE   1326

Emergency Contact

Page 1 of 1

Home > Administer Workforce > Administer Workforce (GBL) > Use > Emergency Contact    New Window

| Contact Address/Phone | Other Phone Numbers |

Bryant,Carter H                                    Employee                    Emp

| Emergency Contact | | View All | First | 1 of 1 | Last |

Contact Name:                          Bryant,Janet

Relationship to Employee:              Mother                    ☑ Primary Contact

☐ Same Address as Employee
☐ Same Phone as Employee

**Contact Address**

Country:        USA    United States

Address 1:      1A Sycamore Drive
Address 2:
Address 3:
City:           Kimberling City
County:                              Postal:    65686
State:          MO    Missouri

**ContactPhone**

Phone:          417/739/5388

Contact Address/Phone | Other Phone Numbers

CONFIDENTIAL - ATTORNEYS EYES ONLY

M 0074316

EXHIBIT 810

PAGE 1327

Employment Verify

Home > MF Employment Verification > MF Employment Verification > Inquire > Employment Verify  New Window

**Verify Employment**

EmplID:   090202          Benefit Program:   ADM          Status:   Terminated

Name:                                      Preferred First Name:
Bryant,Carter H                            Carter

Hire Date:     Rehire Date:  Service Date:  Last Day Worked:   Term Date:

10/29/1995     01/04/1999    07/05/1998    10/19/2000         10/20/2000

Company:      MCO    Mattel HQ, Inc          Location:    01          El Segundo
Pay Group:    HB1    HDQ Bi-Wkly FT          Supervisor:  Fonseca,Heather

Job Code:     03870       Project Designer          Level:          Non-Mgr     Head Count:

Department:   12450       Barbie Collector Prelim Design    Division:    Mattel Brands
Mail Drop:    D1-0163     Work Phone: 310/252-6099          Oracle Account Code:   6005

Home State:   CA          Home Zip:   90247
Last Verification Date:                    ☒  Ineligible for Rehire
Email ID:  BRYANTCA@MATTEL.COM                                      User ID:   BRYANTCA

| HRREP: | 097894 | Torres,Irene M | 310/252-4225 |
| ESREP: | | | |

CONFIDENTIAL - ATTORNEYS EYES ONLY

M 0074317

EXHIBIT   86
PAGE   1328

Personal Data

Home > Administer Workforce > Administer Workforce (GBL) > Use > Personal Data     New Window

Name History | Address History

| Bryant,Carter H | Employee | EmplID: 090202 |

| Address Type | | View All   First ◁ 1 of 1 ▷ Last |

Address Type: HOME

| Address History | | View All   First ◁ 1 of 1 ▷ Last |

Effective Date: 10/30/1995     Status:     Active

Country:      USA     United States
Address 1:    1319 W. 160th Street
Address 2:

Address 3:
City:       Gardena
County:                              Postal:     90247
State:      CA        California

| Phones | | First ◁ 1 of 1 ▷ Last |
| Phone Type | Telephone | |

| Email Addresses | | First ◁ 1 of 1 ▷ Last |
| Email Type | Email Address | |
| Business | BRYANTCA@MATTEL.COM | |

Save    (⚙)   (⚙)   (⚙)   (⚙)   Next tab   (⚙)          Update

Name History | Address History

CONFIDENTIAL - ATTORNEYS EYES ONLY

EXHIBIT   86
PAGE   1329

M 0074318

REDACTED

CONFIDENTIAL - ATTORNEYS EYES ONLY

EXHIBIT **86**   M 0074319

PAGE **1330**

REDACTED

CONFIDENTIAL - ATTORNEYS EYES ONLY

EXHIBIT 810

PAGE 1331

M 0074320

REDACTED

CONFIDENTIAL - ATTORNEYS EYES ONLY

EXHIBIT    86

PAGE    1332

M 0074321

REDACTED

CONFIDENTIAL - ATTORNEYS EYES ONLY

EXHIBIT    86    M 0074322

PAGE    1333

REDACTED

CONFIDENTIAL - ATTORNEYS EYES ONLY

EXHIBIT 86

PAGE 1334

M 0074323

REDACTED

CONFIDENTIAL - ATTORNEYS EYES ONLY

EXHIBIT ___86___    M 0074324

PAGE ___1335___

REDACTED

CONFIDENTIAL - ATTORNEYS EYES ONLY

EXHIBIT   86

PAGE   1330

M 0074325

REDACTED

CONFIDENTIAL - ATTORNEYS EYES ONLY

EXHIBIT __86__    M 0074326

PAGE __1337__



SearchBug

Click on the Heart to Play!

**All Searches**
**Auctions**
**CompanyFinder**
**Entertainment**
**Finance**
**Government**
**Health**
**Internet & IT**
**Jobs**
**Legal**
**Open Directory**
**Packages**
**PeopleFinder**
**Reference**
**Shopping**
**Sports**
**Travel**

**WhitePages**

**Find Person:**

› new search

Try Public Records!

Listings 1-5 of 5

Abc Group The
16730 Schoenborn St
NORTH HILLS, CA 91343
818-894-2525

Abc International Traders
16730 Schoenborn St
NORTH HILLS, CA 91343
818-894-2525

Micro Games Of America
16730 Schoenborn St
NORTH HILLS, CA 91343
818-894-2525

Mxc America
16730 Schoenborn St
NORTH HILLS, CA 91343
818-894-2525

Telequest
16730 Schoenborn St
NORTH HILLS, CA 91343
818-894-2525

Listings 1-5 of 5

› new search

find person
help | terms and conditions | privacy policy

**Related Links**

BACKGROUND CHECKS
PUBLIC RECORDS
Expand Your
Search
Choose a
Category

DMV Records

Social
Security
Military
Records
Criminal
Records
Public
Records
Driving
Records
State Agencies
Background
Check

Background
Checks

Public
Records

http://sea.../find_person_results.pl?fid=a&s_n=16730&s_a=schoenborn&c=north+hills&s=C    3/20/2002

CONFIDENTIAL - ATTORNEYS EYES ONLY

EXHIBIT ____ 816

PAGE ____ 1338

M 0074327

powered by
**WhitePages**

PRIVACY
safeguard

Copyright 1996-2002 WhitePages.com. All rights reserved.

**Related Tools**
« Back to all PeopleFinder searches

- Use **Reverse Phone Search** to lookup people by phone number
- Find people **by Address**
- Locate your **Family & Ancestors**
- Find someone's **E-mail Address** or perform **Reverse E-Mail Lookup**
- Let us suggest a reliable **Public Records Search**
- Here is the list of **International Phone Directories**

**Did not find what you were looking for?**

Search:                      For:
All the Internet

Copyright © 2001, SearchBug.com, LLC

Free E-mail    Customize    Contact Us    Report a Problem    Tell your Friend    Help    About Us

http://sea.../find_person_results.pl?fid=a&s_n=16730&s_a=schoenborn&c=north+hills&s=C.    3/20/2002

CONFIDENTIAL - ATTORNEYS EYES ONLY

M 0074328

EXHIBIT      86
PAGE         1339

*www.loc8fast.com*                                                     Page 1 of 1

3/20/2002 12:33:53 PM
Search Criteria
House No.: 16730
Street:    SCHOENBORN
City:      NORTH HILLS
State:     CA
Zip:       91343

| | Name/SSN | Address/County Phone # DOB/Lic# Reported |
|---|---|---|
| 1. | POULSCH, CAROL D | 16730 SCHOENBORN ST   12/31/1939   07/17/2001  NORTH HILLS, CA 91343  LOS ANGELES County |
| 2. | POULSCH, JONATHAN L  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 | 16730 SCHOENBORN ST   (818) 715-  09/01/1943   06/01/2000  NORTH HILLS, CA 91343  8934  LOS ANGELES County |
| 3. | CARIAN, ANGELA | 16730 SCHOENBORN ST   04/01/2000  NORTH HILLS, CA 91343  LOS ANGELES County |
| 4. | WARNER, PAUL L  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 | 16730 SCHOENBORN ST   (818) 913-  09/01/1939   04/01/1999  NORTH HILLS, CA 91343  8632  LOS ANGELES County |
| 5. | CARIAN, ANDRES | 16730 SCHOENBORN ST   (818) 703-  06/01/1997  NORTH HILLS, CA 91343  8363  LOS ANGELES County |
| 6. | ...   CARIAN, ISAAC  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 | 16730 SCHOENBORN ST   (818) 773-  04/01/1996  NORTH HILLS, CA 91343  LOS ANGELES County |
| 7. | MARIAN...  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 | 16730 SCHOENBORN ST   (818) 794-  06/01/1994  NORTH HILLS, CA 91343  9438  LOS ANGELES County |
| 8. | CARIAN, LISA  aka:  GARBRIELZALEH,  LISA  aka: CARIAN, LISA  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 | 16730 SCHOENBORN ST   (818) 893-  09/01/1974   //  NORTH HILLS, CA 91343  9785  LOS ANGELES County |
| | Name/SSN | Address/County Phone # DOB/Lic# Reported |
| 9. | ...   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 | 16730 SCHOENBORN ST   (818) 893-  09/01/1940  NORTH HILLS, CA 91343  9785  LOS ANGELES County |

.../CHSearch.asp?page=PRINTABLE&fid=2607812&sid=CH6&Reference=02%2D115&city=3/20/2002

CONFIDENTIAL - ATTORNEYS EYES ONLY                    M 0074329

EXHIBIT 846
1340

www.loc8fast.com                                                      Page 1 of 1

        

| Name | SSN | Re-Trace | Address | Phone | Relatives | Neighbors | PROFILES |

## Search

Multiple subjects were found when this SSN was searched, please select from the list below:

| Name (Last, First, Mid) | Current Reported Address | Date Reported |
|---|---|---|
| HEDRICK, MATT | 237 CAROLWOOD HOLMBY HILLS, CA 90077 | 01/01/1999 (current) |
| LARIAN, ISAAC E | 237 CAROLWOOD DR LOS ANGELES, CA 90077 | 05/01/1997 (previous) |

About Us / Searches / Login / Register / Links

© 1998-2002 www.loc8fast.com - This site is for the explicit use www.loc8fast.com customers - Usage is monitored - Privacy Statement - Disclaimer

http://www.loc8fast.com/NPSearch2.asp?function=SUMMARY                    3/20/2002

CONFIDENTIAL - ATTORNEYS EYES ONLY

EXHIBIT __86__

1341

M 0074330