**EXHIBIT 98**

# O

## O'MELVENY & MYERS LLP

BEIJING
BRUSSELS
CENTURY CITY
HONG KONG
LONDON
NEWPORT BEACH

400 South Hope Street
Los Angeles, California 90071-2899

TELEPHONE (213) 430-6000
FACSIMILE (213) 430-6407
www.omm.com

NEW YORK
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TOKYO
WASHINGTON, D.C.

July 25, 2007

OUR FILE NUMBER
527436-4

WRITER'S DIRECT DIAL
(213) 430-6556

WRITER'S E-MAIL ADDRESS
dtorres@omm.com

**VIA FACSIMILE**

Dylan Proctor, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street - 10th Floor
Los Angeles, California 90017

        Re:    *Mattel, Inc. v. Carter Bryant*

Dear Dylan:

        We are in receipt of your letters concerning certain testimony of Mr. Larian,
Mr. Ackerman and Mr. Kennedy at the *Art Attacks v. MGA* trial. With respect to the letter you
reference, we know of no written communication from Mr. Bryant's attorney to MGA and
therefore are unable to produce any such letter. With respect to the referenced transcripts and
exhibits, the deadline for their production is, at the earliest, not until July 31, 2007, and therefore
no conference of counsel in anticipation of a motion is appropriate at this time. If you have any
questions or concerns, please do not hesitate to contact me.

                                Very truly yours,

                                Diana M. Torres
                                of O'MELVENY & MYERS LLP

DMT/mds
LA2:837780.1

cc: Michael Page, Esq.

EXHIBIT ___98___

PAGE ___15b3___

Received:   7/25/07   4:59PM                    -> QUINN EMANUEL;   Page 1
07/25/2007 16:42 FAX                                                    ☑ 001/002

# O

## O'MELVENY & MYERS LLP

400 South Hope Street
Los Angeles, California 90071-2899

TELEPHONE (213) 430-6000
FACSIMILE (213) 430-6407

## FAX TRANSMITTAL

| DATE: | | TOTAL NUMBER OF PAGES: |
|---|---|---|
| July 25, 2007 | | 2 |

| TO: | FAX NUMBER: | TELEPHONE NUMBER: |
|---|---|---|
| Dylan Proctor, Esq.<br>Quinn Emanuel Urquhart Oliver & Hedges, LLP | (213) 443-3100 | (213) 443-3000 |
| Michael Page, Esq.<br>Keker & Van Nest LLP | (415) 397-7188 | (415) 391-5400 |

| FROM: | RETURN FAX NUMBER: | TELEPHONE NUMBER: |
|---|---|---|
| Diana Torres | (213) 430-6407 | (213) 430-6556 |

## MESSAGE

JUL 25 '07 PM4:39

EXHIBIT ___98___

PAGE ___1504___

**IF YOU DID NOT RECEIVE ALL PAGES, PLEASE CALL OUR FAX DEPARTMENT AT (213) 430-6357.**

| FILE NO.: | 527,436-04 | RETURN ORIGINAL TO: | Mila Sucgang |
|---|---|---|---|
| USER NO.: | 08350 | EXTENSION: | 6556 |
| RESPONSIBLE ATT'Y NAME: | Diana Torres | LOCATION: | 15th Floor |
| SPECIAL INSTRUCTIONS: | | | |

This document is intended for the exclusive use of the addressee. It may contain privileged, confidential, or non-disclosable information. If you are not the addressee, or someone responsible for delivering this document to the addressee, you may not read, copy, or distribute it. If you have received this document by mistake, please call us promptly and securely dispose of it. Thank you.

**EXHIBIT 99**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3112

WRITER'S INTERNET ADDRESS
dylanproctor@quinnemanuel.com

August 1, 2007

**VIA FACSIMILE AND U.S. MAIL**

William J. Charron, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067

Re:   <u>Mattel, Inc. v. Bryant</u>

Dear Bill:

I write further to our conversation yesterday regarding the sealed portions of the <u>Art Attacks v.
MGA Entertainment, Inc.</u> trial testimony given on May 1, 2007 and May 2, 2007 by Isaac
Larian, Patrick Kennedy and William Ackerman, and sealed exhibits from that case.

You stated that MGA is amenable to producing the sealed transcripts and exhibits at issue
subject to the Protective Order in this case, assuming they are responsive to Mattel's requests,
which we are supposed to discuss tomorrow.  These documents clearly are responsive.
You agreed that the transcripts of Isaac Larian's testimony are responsive to Request No. 38 from
Mattel's First Set of Requests for Production of Documents and Tangible Things to MGA dated
March 14, 2005, which seeks "All transcripts . . . of statements made by YOU under oath,
including without limitation all . . . trial transcripts . . . that REFER OR RELATE TO BRATZ."
Moreover, as MGA's expert, the testimony of Mr. Ackerman also falls within the scope of the
foregoing request, to which MGA has been compelled to produce responsive documents. The
term "YOU" in the Request includes not only MGA and its officers, such as Mr. Larian, but also
"any of its current or former . . . agents, representatives, . . . and any other PERSON acting on its
behalf, pursuant to its authority or subject to its control."

Moreover, the transcripts of testimony of both Messrs. Kennedy and Ackerman are also
responsive to a number of other Mattel requests regarding MGA's finances, revenues, costs and
profits.  Many such requests are set forth in my prior letter.  For each reference, however, I

99

EXHIBIT
PAGE 1505

**quinn emanuel urquhart oliver & hedges, llp**

07209/2182162.2

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

suggest you look specifically at Mattel's First Set of Requests for Documents and Things Re Claims of Unfair Competition to MGA, dated December 18, 2006, Nos. 28, 29 & 30, and Mattel's Second Set of Requests for Documents and Things to MGA, dated June 6, 2007, Nos. 5-7, 20, 22-24, 37-39, 44 and 45. Request No. 44, for example, seeks "All DOCUMENTS that REFER OR RELATE TO the value of the Bratz brand." Request No. 37 seeks "DOCUMENTS sufficient to show the revenue and profits derived by YOU from the sale by YOU or YOUR licensees of BRATZ PRODUCTS including, without limitation, DOCUMENTS sufficient to show sales revenue, cost of goods sold, variable costs, gross margins, royalties paid and received, gross profits and net profits."  Request No. 28 seeks "All DOCUMENTS RELATING TO revenues received by YOU in connection with each of the CONTESTED MGA PRODUCTS [which includes Bratz and all other MGA products at issue]."  The testimony of Messrs. Kennedy and Ackerman is responsive to all of these requests, and others.

Accordingly, assuming MGA will not dispute that the transcripts are responsive, the only outstanding question is whether MGA will simply produce them or whether the parties will need to seek relief from Judge Brewster.  On that point, I have enclosed herewith the Art Attacks sealing orders of which we are aware for your reference.  As we discussed, if based on these orders MGA believes it needs to seek relief from Judge Brewster before it produces the sealed transcripts or documents in this case, we can prepare a stipulation for relief from the sealing orders for the parties to submit to Judge Brewster, which you confirmed MGA would be willing to sign.

On a separate issue, we also discussed the letter from Carter Bryant's lawyer to MGA confirming that Bryant created Bratz drawings in 1998 that Isaac Larian testified about at the Art Attacks v. MGA trial.  You confirmed that, after double-checking, MGA does not possess any such document, and that is why it has not been produced.  Thank you for providing that confirmation.

I look forward to speaking with you tomorrow.

Very truly yours,

B. Dylan Proctor

Enclosures
07209/2182162.2

EXHIBIT _____ 99

PAGE __1566



1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

11 | ART ATTACKS INK, LLC a
California limited liability company,

12

Plaintiff,

13

v.

14

MGA ENTERTAINMENT, INC., a
15 | California corporation, Isaac Larian,
an individual, and DOES 1 through
16 | 200, inclusive,

17

18

Defendants.

Case No. 04 CV 1035 B (BLM)

**ORDER RE: UNSEALING OF TRIAL
TRANSCRIPT AND TRIAL EXHIBITS
FOR LIMITED PURPOSE**

Trial Dates: April 23, 2007-May 4, 2007

[Hon. Rudi M. Brewster]

19

20

21

22

23

24

25

26

27

28

LA2:830564.1

- 1 -

ORDER RE: UNSEALING OF TRIAL
TRANSCRIPTS AND TRIAL EXHIBITS

EXHIBIT _____ 99

PAGE _____ 1507

1    By this Order, the Court hereby permits the unsealing and disclosure of the sealed

2    transcripts of the trial testimony and sealed exhibits for the limited purpose of disclosure

3    to the parties in this action and counsel of record for such parties.  There shall be no

4    disclosure of the sealed trial transcripts or sealed trial exhibits to any other person other

5    than a party to this action or such party's counsel of record.

6

7    The parties and their counsel of record are prohibited from disclosing portions of

8    the trial transcript and trial exhibits which have been sealed to any other person other than

9    a party to this action or such party's counsel of record.

10

11    The parties and their counsel of record are as follows:

12    For Plaintiff Art Attacks Ink LLC:  Richard Clegg of Seltzer Caplan McMahon

13    Vitek; Douglas Grinnell of Epsten, Grinnell & Howell  and Amy Allemann and Michael

14    W. Quade of Quade and Associates.

15    For Defendants MGA Entertainment Inc. and Isaac Larian:  Patricia L Glaser of

16    Christiansen Miller Fink Jacobs Glasser Weil and Shapiro, Dale M Cendali of

17    O'Melveny and Myers and Edward P Swan, JR of Luce Forward Hamilton and Scripps.

18

19

20    **IT IS SO ORDERED.**

21

22    Dated: May 4, 2007          By: _____

23                                          Honorable Rudi M. Brewster,
                                             U.S. Senior District Court Judge

24

25

26

27

28

LA2:830564.1                          - 2 -                    ORDER RE: SEALING OF
                                                                TRIAL TRANSCRIPT

EXHIBIT _____ 99

PAGE _____ 1568

1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

11

12 ART ATTACKS INK, LLC a
California limited liability company,

Case No. 04 CV 1035 B (BLM)

13                       Plaintiff,

**ORDER RE: SEALING OF TRIAL TRANSCRIPT AND TRIAL EXHIBITS**

14             v.

15 MGA ENTERTAINMENT, INC., a
California corporation, Isaac Larian,

Trial Dates:  April 23, 2007-May 4, 2007

16 an individual, and DOES 1 through
200, inclusive,

[Hon. Rudi M. Brewster]

17

18              Defendants.

19

20

21

22

23

24

25

26

27

28

LA2:830564.1

- 1 -

ORDER RE: SEALING OF TRIAL
TRANSCRIPT AND TRIAL EXHIBITS

EXHIBIT _____ 99

PAGE _____ 1569

1    The Court hereby seals the transcripts of the trial testimony given on May 1, 2007,

2    including the testimony of Isaac Larian, Patrick Kennedy and William Ackerman which

3    relates to the confidential financial condition of Defendants Isaac Larian and/or MGA

4    Entertainment, Inc.

5

6    The Court hereby seals the following trial exhibits which relate to the confidential

7    financial condition of Defendants Isaac Larian and/or MGA Entertainment, Inc.:  Exhibit

8    nos. 3052-3057, 3070, 2311-2313, 5087, 5253 and 5255.  The information contained in

9    these exhibits is subject to the Protective Order in this litigation and has been designated

10   as attorney's eyes only.

11

12

13   **IT IS SO ORDERED.**

14

15   Dated: May 4, 2007              By:  _____

16                                          Honorable Rudi M. Brewster,
                                           U.S. Senior District Court Judge

17

18

19

20

21

22

23

24

25

26

27

28

LA2:830564.1                          - 2 -                    ORDER RE: SEALING OF
                                                               TRIAL TRANSCRIPT

EXHIBIT _____ 99

PAGE _____ 1570

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART ATTACKS INK, LLC a California limited liability company, | Case No. 04 CV 1035 B (BLM) |
| Plaintiff, | **ORDER RE: SEALING OF TRIAL TRANSCRIPT AND TRIAL EXHIBITS** |
| v. | |
| MGA ENTERTAINMENT, INC., a California corporation, Isaac Larian, an individual, and DOES 1 through 200, inclusive, | Trial Dates: April 23, 2007-May 4, 2007 |
| Defendants. | [Hon. Rudi M. Brewster] |

ORDER RE: SEALING OF TRIAL TRANSCRIPT AND
TRIAL EXHIBITS

495816.1

EXHIBIT _____ 9a

PAGE _____ 1571

1    The Court hereby seals the transcripts of the trial testimony given on May 2,

2    2007, including the testimony of Patrick Kennedy and William Ackerman which

3    relates to the confidential financial condition of Defendants Isaac Larian and/or

4    MGA Entertainment, Inc.

5

6    The Court hereby seals the following trial exhibits which related to the

7    confidential financial condition of Defendants Isaac Larian and/or MGA

8    Entertainment, Inc.:  Exhibit nos. 3052-3057, 3070, 2311-2313, 5087, 5253 and

9    5255.  The information contained in these exhibits is subject to the Protective Order

10   in this litigation and has been designated as attorney's eyes only.

11

12

13   **IT IS SO ORDERED.**

14

15

16   Dated: May 7, 2007                    By: _____

17                                         Honorable Rudi M. Brewster,
                                           U.S. Senior District Court Judge

18

19

20

21

22

23

24

25

26

27

28

- 1 -

04 CV 1035 B (BLM)

495816.1

EXHIBIT _____ 99

PAGE _____ 1572

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   August 1, 2007

**NUMBER OF PAGES, INCLUDING COVER:** 9

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| William J. Charron, Esq. **O'Melveny & Myers LLP** | 310-246-8462 | 310-246-6779 |

**FROM:**   B. Dylan Proctor, Esq.

**RE:**   *Mattel, Inc. v. Bryant*

**MESSAGE:** PLEASE SEE ATTACHED

07209/2166768.1

| CLIENT # | 7209 | ROUTE/ RETURN TO: | Charlene Ho/4th Floor | ☒ CONFIRM FAX ☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED?  ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

EXHIBIT _____ 29

PAGE _____ 1573

TRANSMISSION VERIFICATION REPORT

```
                                    TIME  : 08/01/2007 19:56
                                    NAME  : JOHN B QUINN
                                    FAX   : 2134890080
                                    TEL   : 2134433201
                                    SER.# : BROE5J272067
```

```
        DATE,TIME              08/01  19:54
        FAX NO./NAME           13102466779
        DURATION               00:01:47
        PAGE(S)                09
        RESULT                 OK
        MODE                   STANDARD
                               ECM
```

EXHIBIT _____ 99

PAGE _____ 1574

**EXHIBIT 100**

De Anda, Richard

To:                    Kaye, Alan
Subject:               MGA "Bratz"

Alan,

I've received your anonymous letter originally sent to Bob Eckert regarding Carter Bryant and "Bratz". I'm aware of this situation and have been working on it for several months. My frustration in this matter was the genesis of and that is now in the hands of Robert Normile. The truth of the matter is that Carter Bryant did work for Mattel, however,                                    according to outside attorneys.

REDACTED

McShane has been
We only found out during our last trip to Mexico that Mattel has a relationship with MGA. We have MGA's product in our Mexico warehouse. Evidently, Mattel Latin America has an agreement with MGA to sell there product. This is a good example that the right hand doesn't know what the left is doing.

Let me know if and how you would like me to respond to Mr. Bob.

Rich

EXHIBIT NO. 1194
12/19/07
Wendy S. Schreiber

CONFIDENTIAL - ATTORNEYS EYES ONLY

1

M 0074400

EXHIBIT _____ 100
PAGE _____ 1575

**EXHIBIT 101**

**ATTACHMENT 5**
**CONFLICT OF INTEREST QUESTIONNAIRE**

MAT-3068-0

| NAME (PLEASE TYPE OR PRINT) *CARTER H. BRYANT* | BUSINESS TELEPHONE AND EXTENSION (310) 252-4942 | DATE 11/6/95 |
|---|---|---|
| JOB TITLE *ASSOSIATE DESIGNER* | DEPARTMENT/MAIL STOP *BARBIE PRELIM* | COMPANY *MATTEL TOYS* |

**INSTRUCTIONS:** The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of Interest (Attachment 4). Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**MATTEL SUPPLIER** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**MATTEL COMPETITOR** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**INTEREST** means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. YOU MAY DISREGARD MUTUAL INVESTMENT TRUSTS AND PUBLICLY-OWNED CORPORATIONS WHOSE SECURITIES ARE TRADED PUBLICLY, IN WHICH YOU OWN NOT MORE THAN $25,000 IN MARKET VALUE, BUT NOT TO EXCEED 10% OF AN INDIVIDUAL'S NET WORTH.

**RECIPIENT OF ANY COMMISSION, etc.,** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

| | |
|---|---|
| 1. Have you owned, directly or indirectly, any interest in a Mattel supplier? (See definition above.) | ☐ YES ☒ NO |
| 2. Have you owned, directly or indirectly, any interest in a Mattel competitor? (See definition above.) | ☐ YES ☒ NO |
| 3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier? | ☐ YES ☒ NO |
| 4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor? | ☐ YES ☒ NO |
| 5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity? | ☐ YES ☒ NO |

CONTINUED ON REVERSE SIDE

EXHIBIT 101
PAGE 1576

M 0001636

**DEPOSITION EXHIBIT**
24
11-5-04   SH

| | | |
|---|---|---|
| 6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee or representative of or acted for any Mattel supplier in any capacity? | ☐ YES | ☒ NO |
| 7. Have you engaged in any activity including the acquisition or ownership of any interest for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor? | ☐ YES | ☒ NO |
| 8. Excepting normal everyday transactions (purchase or toys, etc.,) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance? | ☐ YES | ☒ NO |
| 9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel? | ☐ YES | ☒ NO |

I certify that I have read Mattel's policies concerning Conflict of Interest (Attachment 4) and the answers to the above questions are true. I understand that failure to answer this Questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged since the date of the last Questionnaire in any capacity which creates a Conflict of Interest.

SIGNATURE REQUIRED BELOW

SIGNATURE _Carter H Bryant_          DATE 11/6/95

IF YOUR ANSWER TO ANY OF THE ABOVE IS "YES" PLEASE EXPLAIN IN THE SPACE BELOW

EXHIBIT ___101___

PAGE ___1577___

M 0001637

**EXHIBIT 102**

1  KEKER & VAN NEST, LLP
   JOHN W. KEKER - #49092
2  jkeker@kvn.com
   MICHAEL H. PAGE - #154913
3  mpage@kvn.com
   CHRISTA M. ANDERSON - #184325
4  canderson@kvn.com
   710 Sansome Street
5  San Francisco, CA  94111-1704
   Telephone:  (415) 391-5400
6  Facsimile:  (415) 397-7188

7  Attorneys for Plaintiff
   CARTER BRYANT
8

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                  EASTERN DIVISION

13

14  CARTER BRYANT, an individual,        Case No. CV 04-09049 SGL (RNBx)
                                         (consolidated with CV 04-9059 & 05-
                    Plaintiff,           2727
15
16       v.                              **CARTER BRYANT'S RESPONSES
                                         TO MATTEL, INC'S FIFTH SET
17  MATTEL, INC. a Delaware              OF REQUESTS FOR ADMISSION
    Corporation,                         TO CARTER BRYANT**
18
                    Defendant.
19  ┌─────────────────────────────┐
    │CONSOLIDATED WITH MATTEL,    │
20  │INC., v. BRYANT and MGA      │
    │ENTERTAINMENT, INC. v.       │
21  │MATTEL, INC.                 │
    └─────────────────────────────┘
22

23

24  PROPOUNDING PARTY:      Defendant MATTEL, INC. ("Defendant")

25  RESPONDING PARTY:       Plaintiff CARTER BRYANT ("Plaintiff")

26  SET NUMBER:             FIFTH (5)

27                          EXHIBIT ____102____

28                          PAGE ____1578____

─────────────────────────────────────────────────────────
        CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S
   FIFTH SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT
          CASE NO. CV 04-09049 SGL (RNBx)

398501.01

1      Carter Bryant ("Defendant" or "Bryant") hereby objects and responds to

2  Mattel, Inc.'s ("Plaintiff" or "Mattel") Fifth Set of Requests for Admission.

3      Bryant's responses and objections are made solely for the purpose of this

4  action.

5      Bryant points out that discovery is still pending, that he has not concluded

6  his investigation of the facts relating to this case, has not completed his own

7  discovery in this case, and has not completed preparation for trial. In light of the

8  foregoing, the following Responses are given without prejudice to Bryant's right to

9  stand on his objections, to continue his investigation and discovery, to rely on

10  subsequently discovered facts, and to utilize subsequently discovered or

11  subsequently identified evidence or documents.

12      The following Responses reflect the current status of Bryant's knowledge

13  and belief respecting the matters about which inquiry is made. Discovery will

14  continue as long as permitted by statute or stipulation of the parties, and

15  investigation by Bryant, his attorneys and agents will continue up to and

16  throughout the trial of this action. Bryant specifically reserves the right to

17  introduce at the time of trial any evidence from any source, including documents

18  and testimony from any witnesses which may hereafter be discovered.

19      If any information has been unintentionally omitted from these Responses,

20  Bryant hereby reserves the right to amend these Responses to include the omitted

21  information. Bryant also reserves the right to change, amend or supplement any or

22  all of the matters contained in these responses as additional facts are ascertained,

23  analyses are made, and research is completed. These introductory paragraphs

24  apply to each and every Response herein and shall be incorporated as though fully

25  set forth in each and every Response.

26      All of Bryant's responses are based upon information and documentation

27  that is currently available and specifically known to Bryant. The responses are

28  made in a good-faith effort to provide information now known to Bryant which is

1
CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S
FIFTH SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT
CASE NO. CV 04-09049 SGL (RNBx)
398501.01
EXHIBIT 102
PAGE 1579

1    responsive, but Bryant specifically reserves the right both to supplement any of the

2    responses set forth below and to utilize at trial any further information or

3    documents.

4                              **GENERAL OBJECTIONS**

5         The following general objections apply to the entirety of Mattel's Fourth Set

6    of Requests for Admission (the "Requests").  The assertion of the same, similar, or

7    additional objections to the individual requests does not waive any of Bryant's

8    general objections as set forth below.

9         1.    To the extent these Requests request Bryant to provide information

10   concerning the legal basis of his defense of this matter, Bryant objects on the

11   grounds that the Requests impermissibly call for mental impressions, conclusions,

12   opinions and/or legal theories of Bryant's attorneys.

13        2.    Bryant also objects to the extent these Requests call for the disclosure

14   of information protected by the attorney-client privilege, the work-product

15   doctrine, the joint defense or common interest privilege or any other applicable

16   privilege.

17        3.    Bryant objects to the Requests to the extent that they call for legal

18   conclusions.

19        4.    Bryant objects to the extent that these Requests seek information

20   comprising the trade secrets of MGA and/or third parties, and/or otherwise

21   comprising confidential information, protected from disclosure by California

22   and/or federal law.

23        5.    Bryant objects to the Requests on the grounds that they attempt to

24   unfairly restrict the facts on which Bryant may rely at trial.  Discovery has not

25   been completed and Bryant is not yet necessarily in possession of all the facts and

26   documents upon which Bryant intends to rely.  All of the responses submitted

27   herewith are tendered to Mattel with the reservation that discovery is ongoing and

28   thus the responses are submitted without limiting the evidence on which Bryant

---

2

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S
FIFTH SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT ___102___

PAGE ___1580___

1  may rely to support the contentions that Bryant may assert at the trial of this action.

2  Further, Bryant reserves the right to supplement or amend these responses in the

3  future if it deems that to be appropriate.

4       6.    Bryant objects to the Requests to the extent that they are compound.

5       7.    Bryant objects to the Requests on the grounds that they are vague and

6  overbroad, unduly burdensome and oppressive, seek information that is not

7  reasonably within Bryant's knowledge, and/or seek information that is neither

8  relevant to this litigation nor reasonably calculated to lead to the discovery of

9  admissible evidence. In particular, Bryant also objects to these Requests on the

10  grounds that they are oppressively repetitive.  Bryant also objects to these Requests

11  as burdensome in their sheer number (Mattel has now propounded nearly 500

12  Requests to Bryant alone, many of which consists of multiple interlocking

13  Requests apparently designed to take the place of a single interrogatory).

14       8.    Bryant objects to the Requests to the extent they are vague and

15  ambiguous or call for a legal conclusion as to the scope of Bryant's employment at

16  Mattel.  To the extent that Bryant responds to any request regarding what Bryant

17  did or did not do "while employed" at Mattel, Bryant does so without waiving or

18  intending to waive but rather, on the contrary, preserving and intending to

19  preserve, his contention that anything Bryant did on weekends, evenings ,vacation

20  and any other time outside ordinary business hours was not done while he was

21  working for Mattel.  Bryant's response to any such request may not be taken as an

22  admission that the information provided in his response in any way reflects or

23  evidences work performed by Bryant while he was working for Mattel or that

24  Bryant adopts or agrees with any fact or legal conclusion assumed, presumed or

25  contained in Mattel's request.

26       9.    Bryant objects to the defined terms YOU, BRYANT, MGA,

27  AFFILIATES, BRATZ, BRATZ WORK and BRATZ WORKS, THE BRATZ

28  PITCH MATERIALS, BRYANT/MGA AGREEMENT, CONTEND, CREATE

EXHIBIT _____ 102

PAGE _____ 1581

1  the BRYANT/MGA AGREEMENT that entering into the BRYANT/MGA

2  AGREEMENT could or might subject YOU to legal liability.

3  **RESPONSE TO REQUEST FOR ADMISSION NO. 26:**

4      Bryant incorporates by reference the above-stated general objections as if

5  fully set forth herein.  Bryant also specifically objects to this request on the

6  grounds that it is compound.  Bryant also specifically objects to this request on the

7  ground that it calls for information that is beyond the scope of this litigation.

8  Bryant also specifically objects to this request on the grounds that it calls for

9  disclosure of information protected by the attorney-client privilege, the work

10  product doctrine, the joint defense privilege, and any other applicable privileges.

11  Bryant also specifically objects to this request on the grounds that it is oppressively

12  repetitive and unnecessary in combination with Mattel's other requests.

13      Subject to and without waiving the foregoing general and specific

14  objections, Bryant responds to this request as follows: Bryant denies that anyone

15  told him the BRYANT/MGA AGREEMENT could or might subject him to legal

16  liability to Mattel.

17  **REQUEST FOR ADMISSION NO. 27:**

18      Admit that YOU CREATED OR IMPROVED at least one of THE BRATZ

19  PITCH MATERIALS while employed by MATTEL.

20  **RESPONSE TO REQUEST FOR ADMISSION NO. 27:**

21      Bryant incorporates by reference the above-stated general objections as if

22  fully set forth herein.  Bryant also specifically objects to this request on the

23  grounds that it is compound.  Bryant also specifically objects to this request on the

24  grounds that it calls for legal conclusions as to what constitutes "CREATED OR

25  IMPROVED" and "employed."  Bryant also specifically objects to this request

26  because "while employed at Mattel" is vague and ambiguous; without waiving or

27  intending to waive, but rather preserving and intending to preserve, his contention

28  that anything Bryant did on weekends, evenings ,vacation and any other time

24

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S
FIFTH SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT ___ / 02

PAGE ___ 1582

1    outside ordinary business hours was not done while he was working for Mattel,

2    Bryant responds to this request based on his interpretation that "while employed"

3    refers only to the dates of Bryant's employment, and not to whether Bryant's

4    specific acts at specific times were part of his employment at Mattel. Bryant's

5    response, based on that interpretation, is not an admission that the information

6    provided in his response in any way reflects or evidences work performed by

7    Bryant while he was working for Mattel or that Bryant adopts or agrees with any

8    fact or legal conclusion assumed, presumed or contained in Mattel's request. To

9    the extent this request asks Bryant to provide information concerning the legal

10   basis of his defense of this matter, Bryant also specifically objects on the grounds

11   that the request impermissibly calls for mental impressions, conclusions, opinions

12   and/or legal theories of Bryant's attorneys. Bryant also specifically objects to this

13   request on the grounds that it calls for disclosure of information protected by the

14   attorney-client privilege, the work product doctrine, the joint defense privilege, and

15   any other applicable privileges. Bryant also specifically objects to this request on

16   the grounds that it is oppressively repetitive and unnecessary in combination with

17   Mattel's other requests.

18       Subject to and without waiving the foregoing general and specific

19   objections, Bryant responds to this request as follows: Bryant admits that he traced

20   his 1998 drawings and colored such tracings in the spring or summer of 1999, a

21   period in which he was employed by Mattel, and that he traced his 1998 drawings,

22   colored such tracings, and drew a few outfits of formal wear between January 1,

23   2000 and October 20, 2000, a period in which he was employed by Mattel. Bryant

24   accordingly admits this request to the extent that this tracing, coloring such

25   tracings, and drawing formal wear outfits constitutes CREAT[ING] OR

26   IMPROV[ING] BRATZ PITCH MATERIALS while employed at Mattel, as

27   Bryant interprets those terms.

28

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S
FIFTH SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT _____102_____

PAGE _____1583_____

**REQUEST FOR ADMISSION NO. 28:**

Admit that YOU CREATED OR IMPROVED more than one of THE BRATZ PITCH MATERIALS while employed by MATTEL.

**RESPONSE TO REQUEST FOR ADMISSION NO. 28:**

Bryant incorporates by reference the above-stated general objections as if fully set forth herein. Bryant also specifically objects to this request on the grounds that it is compound. Bryant also specifically objects to this request on the grounds that it calls for legal conclusions as to what constitutes "CREATED OR IMPROVED" and "employed." Bryant also specifically objects to this request because "while employed at Mattel" is vague and ambiguous; without waiving or intending to waive, but rather preserving and intending to preserve, his contention that anything Bryant did on weekends, evenings ,vacation and any other time outside ordinary business hours was not done while he was working for Mattel, Bryant responds to this request based on his interpretation that "while employed" refers only to the dates of Bryant's employment, and not to whether Bryant's specific acts at specific times were part of his employment at Mattel. Bryant's response, based on that interpretation, is not an admission that the information provided in his response in any way reflects or evidences work performed by Bryant while he was working for Mattel or that Bryant adopts or agrees with any fact or legal conclusion assumed, presumed or contained in Mattel's request. To the extent this request asks Bryant to provide information concerning the legal basis of his defense of this matter, Bryant also specifically objects on the grounds that the request impermissibly calls for mental impressions, conclusions, opinions and/or legal theories of Bryant's attorneys. Bryant also specifically objects to this request on the grounds that it calls for disclosure of information protected by the attorney-client privilege, the work product doctrine, the joint defense privilege, and any other applicable privileges. Bryant also specifically objects to this request on the grounds that it is oppressively repetitive and unnecessary in combination with

26

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S
FIFTH SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT
CASE NO. CV 04-09049 SGL (RNBx)

398501.01

EXHIBIT /0²

PAGE 1584

1    Mattel's other requests.

2         Subject to and without waiving the foregoing general and specific

3    objections, Bryant responds to this request as follows: Bryant admits that he traced

4    his 1998 drawings and colored such tracings in the spring or summer of 1999, a

5    period in which he was employed by Mattel, and that he traced his 1998 drawings,

6    colored such tracings, and drew a few outfits of formal wear between January 1,

7    2000 and October 20, 2000, a period in which he was employed by Mattel.  Bryant

8    accordingly admits this request to the extent that this tracing, coloring such

9    tracings, and drawing formal wear outfits constitutes CREAT[ING] OR

10   IMPROV[ING] BRATZ PITCH MATERIALS while employed at Mattel, as

11   Bryant interprets those terms.

12   **REQUEST FOR ADMISSION NO. 29:**

13        Admit that YOU CREATED OR IMPROVED all of THE BRATZ PITCH

14   MATERIALS while employed by MATTEL.

15   **RESPONSE TO REQUEST FOR ADMISSION NO. 29:**

16        Bryant incorporates by reference the above-stated general objections as if

17   fully set forth herein.  Bryant also specifically objects to this request on the

18   grounds that it is compound.  Bryant also specifically objects to this request on the

19   grounds that it calls for legal conclusions as to what constitutes "CREATED OR

20   IMPROVED" and "employed."  Bryant also specifically objects to this request

21   because "while employed at Mattel" is vague and ambiguous; without waiving or

22   intending to waive, but rather preserving and intending to preserve, his contention

23   that anything Bryant did on weekends, evenings ,vacation and any other time

24   outside ordinary business hours was not done while he was working for Mattel,

25   Bryant responds to this request based on his interpretation that "while employed"

26   refers only to the dates of Bryant's employment, and not to whether Bryant's

27   specific acts at specific times were part of his employment at Mattel.  Bryant's

28   response, based on that interpretation, is not an admission that the information

27
CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S
FIFTH SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT
CASE NO. CV 04-09049 SGL (RNBx)
398501.01

EXHIBIT  102
PAGE  1585

1    provided in his response in any way reflects or evidences work performed by

2    Bryant while he was working for Mattel or that Bryant adopts or agrees with any

3    fact or legal conclusion assumed, presumed or contained in Mattel's request.  To

4    the extent this request asks Bryant to provide information concerning the legal

5    basis of his defense of this matter, Bryant also specifically objects on the grounds

6    that the request impermissibly calls for mental impressions, conclusions, opinions

7    and/or legal theories of Bryant's attorneys.  Bryant also specifically objects to this

8    request on the grounds that it calls for disclosure of information protected by the

9    attorney-client privilege, the work product doctrine, the joint defense privilege, and

10    any other applicable privileges.  Bryant also specifically objects to this request on

11    the grounds that it is oppressively repetitive and unnecessary in combination with

12    Mattel's other requests.

13        Subject to and without waiving the foregoing general and specific

14    objections, Bryant responds to this request as follows: Bryant admits that he traced

15    his 1998 drawings and colored such tracings in the spring or summer of 1999, a

16    period in which he was employed by Mattel, and that he traced his 1998 drawings,

17    colored such tracings, and drew a few outfits of formal wear between January 1,

18    2000 and October 20, 2000, a period in which he was employed by Mattel.  Bryant

19    accordingly admits this request to the extent that this tracing, coloring such

20    tracings, and drawing formal wear outfits constitutes CREAT[ING] OR

21    IMPROV[ING] BRATZ PITCH MATERIALS while employed at Mattel, as

22    Bryant interprets those terms.

23    **REQUEST FOR ADMISSION NO. 30:**

24        Admit that YOU deny YOU willfully infringed any copyrights in BRATZ

25    WORKS.

26    **RESPONSE TO REQUEST FOR ADMISSION NO. 30:**

27        Bryant incorporates by reference the above-stated general objections as if

28    fully set forth herein.  Bryant also specifically objects to this request on the

28

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S
FIFTH SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT
CASE NO. CV 04-09049 SGL (RNBx)

398501.01

EXHIBIT _102_

PAGE _1586_

1    Dated: July 9, 2007                        KEKER & VAN NEST, LLP

2

3                                        By: _____

4                                            MICHAEL H. PAGE
                                             Attorneys for Plaintiff
5                                            CARTER BRYANT

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S
FIFTH SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT
CASE NO. CV 04-09049 SGL (RNBx)

398501.01

EXHIBIT _____ 102

PAGE _____ 1587

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On July 9, 2007, I served the following document(s):

**CARTER BRYANT'S RESPONSES TO MATTEL, INC'S FIFTH SET OF REQUESTS FOR ADMISSION TO CARTER BRYANT**

by **FEDERAL EXPRESS**, by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for correspondence for delivery by FedEx Corporation. According to that practice, items are retrieved daily by a FedEx Corporation employee for overnight delivery; AND

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

John B. Quinn
Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Tel:   213/443-3000
Fax:   213/443-3100
Email: johnquinn@quinnemanuel.com
Email: michaelzeller@quinnemanuel.com

Diana M. Torres
O'Melveny & Myers, LLP
400 S. Hope Street
Los Angeles, CA 90071
Tel:   213/430-6000
Fax:   213/430-6407
Email: dtorres@omm.com

Patricia L. Glaser
Christensen Glaser Fink Jacobs Weil & Shapiro
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Tel:   310/553-3000
Fax:   310/556-2920
Email: pglaser@chrisglase.com

Executed on July 9, 2007, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_Julie Selby_
JULIE A. SELBY

PROOF OF SERVICE
CASE NO. CV 04-09049 SGL (RNBx)

EXHIBIT __102__

PAGE __1588__

**EXHIBIT 103**

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, AN INDIVIDUAL, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| V | ) CASE NO   CV 04-9040 SGL (RNBX) |
| | ) |
| MATTEL, INC , A DELAWARE CORPORATION, | ) |
| | ) |
| DEFENDANTS | ) |
| _____ | ) |
| | ) |
| AND CONSOLIDATED ACTION (S) | ) |
| _____ | ) |

# TRANSCRIPTION OF

# AUDIOTAPED INTERVIEW OF

# ISABEL ANA CABRERA

# JANUARY 2, 2008



A&E COURT REPORTERS
515 S Flower Street
Suite 3600
Los Angeles, California 90071
Office (213) 955-0070
Fax (213) 955-0077

REPORTED BY.
EMILY MCCARY
CSR NO   7584
JOB NO  08EM001

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___103___

PAGE ___1589___

M 0261971

TRANSCRIPTION OF RECORDING

VOLUME I

JANUARY 2, 2008

1

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

EXHIBIT ___103___

PAGE ___1590___

M 0261972

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1        TRANSCRIPTION OF AUDIOTAPED INTERVIEW OF
 2                  ISABEL ANA CABRERA
 3                  JANUARY 2, 2008
 4
 5               INTERVIEWERS·
 6                  MR  DE ANDA
 7                  MS. FRIED
 8
 9        THE WITNESS:  I THINK MY ENGLISH IS NOT
10   GOOD.
11               EXAMINATION
12   BY MR. DE ANDA
13        Q    OH, YOUR ENGLISH IS FINE.
14        A    NO, NO, NO.
15        Q    YEAH, YEAH, YEAH.  YOUR ENGLISH IS
16   VERY FINE.
17             SO LET ME TELL YOU WHAT WE WANT TO
18   TALK ABOUT.  LIKE I SAID, WE'RE GOING·TO RECORD
19   THIS, BECAUSE I THINK IT'S REALLY IMPORTANT THAT
20   I DON'T MISSTATE ANYTHING AND THAT EVERYTHING IS
21   ACCURATE.
22             WE KNOW -- FIRST OF ALL, YOU KNOW
23   MARLOW?
24        A    YES, I KNOW HER
25        Q    OKAY.  ALL RIGHT.  THERE WAS
```

2

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT __103__

PAGE __1591__

M 0261973

```
 1    TESTIMONY GIVEN HERE RECENTLY WITH REGARDS TO A

 2    CASE THAT SHE IS INVOLVED IN WITH BRATZ.  OKAY

 3    AND SHE -- YOUR NAME CAME UP IN THAT

 4    INVESTIGATION   OKAY.

 5             HOW LONG HAVE YOU BEEN WITH MATTEL

 6    NOW?  13 YEARS?

 7        A    TWELVE

 8        Q    TWELVE YEARS.  OKAY.  LONGER THAN I

 9    HAVE, THEN.

10             SO YOUR NAME CAME UP IN THIS, AND SHE

11    MADE SOME STATEMENTS -- AND, PLEASE, IF THERE'S

12    ANY TIME THAT YOU DON'T KNOW WHAT I'M SAYING, LET

13    ME KNOW.  OKAY   AND -- AND I WILL TRY TO CLARIFY

14    IT OR TRY TO SPEAK IT IN SPANISH.

15        A    YEAH

16        Q    IS SPANISH A GOOD TONGUE FOR YOU?

17        A    "SI."

18        Q    MINE'S "POQUITO "

19             SO WHAT WE'RE TRYING TO DO IS TRYING

20    TO UNDERSTAND WHAT SHE IS SAYING AND TRYING TO

21    SEE -- HAVE A BETTER, CLEARER UNDERSTANDING OF

22    IT   OKAY?

23             NOW, HER -- WHAT SHE INDICATED IS

24    THAT YOU HELPED MAKE PART OF THE BRATZ FASHIONS

25    FOR HER BACK -- WAY BACK WHEN.
```

3

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___103___

PAGE ___1592___

M 0261974

```
 1              DO YOU REMEMBER THIS NOW?
 2         A    I HELP HER WITH SEWING SOMETHING, BUT
 3  I DIDN'T KNOW IT'S FOR BRATZ.
 4         Q    I UNDERSTAND.
 5         A    SHE JUST GIVE ME SOMETHING.  I HELP
 6  HER TO SEW IT, BUT I DON'T KNOW WHAT IS IT.  SHE
 7  NEVER SAY NOTHING ABOUT THAT.  SHE -- SHE HAVE
 8  LIKE A -- HER OWN COMPANY.
 9         Q    RIGHT
10         A    THEY CALL BAG DOLLS, INC.  THAT'S IT
11  I KNOW IT.
12         Q    WAS IT CALLED --
13         MS. FRIED:  DOLL BAGS.
14  BY MR  DE ANDA:
15         Q    DOLL BAGS
16         A    DOLL BAGS, YEAH.
17         MS. FRIED:  SHE DID WORK FOR MATTEL?
18         THE WITNESS:  NO
19         MS. FRIED   NO?
20         THE WITNESS:  NO, NOT IN THE TIME I HELPED
21  HER.
22  BY MR  DE ANDA.
23         Q    WHEN DID YOU START HELPING HER?  DO
24  YOU REMEMBER HOW LONG AGO IT WAS?
25         A    LIKE IN 2000 OR 2001.  I DON'T
```

4

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT _103_

PAGE _1393_

M 0261975

1   KNOW.

2        Q    OKAY.  DO YOU REMEMBER IF IT WAS

3   SUMMER, WINTER, FALL?  DO YOU REMEMBER IN 2000

4   WHEN YOU STARTED?

5        A    MAYBE IN THE LAST..

6        Q    GO AHEAD.  I'M SORRY

7        A    MAYBE THE LAST DAYS OF THE YEAR

8        Q    IN THE LAST DAYS OF THE YEAR?

9        A    THE LAST MONTHS, BUT I DON'T

10  REMEMBER

11       Q    OKAY.  WELL, LET ME HELP YOU.  LET ME

12  SEE IF WE CAN -- BECAUSE IT'S IMPORTANT THAT WE

13  START AT A TIME WHEN -- WHEN YOU BEST UNDERSTAND

14            DO YOU REMEMBER -- AND I KNOW IT'S

15  HARD BECAUSE WE'RE GOING BACK MANY YEARS

16       A    YEAH, I KNOW

17       Q    AND I CAN APPRECIATE THAT   BUT DO

18  YOU REMEMBER IF IT WAS BEFORE THANKSGIVING WHEN

19  YOU STARTED?

20       A    NO, I DON'T REMEMBER.

21       Q    LET ME ASK YOU THIS   DO YOU REMEMBER

22  THE FIRST MEETING YOU HAD?

23       A    THE MEETING WITH

24       Q    WITH HER WITH REGARDS TO MAKING

25  THIS -- THESE FASHIONS.  DO YOU REMEMBER HOW IT

5

EXHIBIT __103__

PAGE ____1094____

M 0261976

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    STATE OF CALIFORNIA    )
 2                           ) SS.
 3    COUNTY OF LOS ANGELES  )
 4
 5        I, EMILY MCCARY, CERTIFIED SHORTHAND
 6    REPORTER, CERTIFICATE NO. 7584, FOR THE STATE OF
 7    CALIFORNIA, HEREBY CERTIFY:
 8        THE TESTIMONY GIVEN AND ALL COMMENTARY MADE
 9    DURING THE FOREGOING PROCEEDINGS WERE RECORDED ON
10    AUDIOTAPES AT THE TIME OF THE PROCEEDINGS AND
11    THEREAFTER PROVIDED TO ME   A STENOGRAPHIC
12    REPORTING WAS MADE BY ME AND THEREAFTER
13    TRANSCRIBED.  THE FOREGOING TRANSCRIPT IS A TRUE
14    AND CORRECT TRANSCRIPT OF MY SHORTHAND NOTES SO
15    TAKEN;
16        I FURTHER CERTIFY THAT I AM NEITHER COUNSEL
17    FOR NOR RELATED TO ANY PARTY TO SAID ACTION NOR
18    IN ANY WAY INTERESTED IN THE OUTCOME THEREOF,
19        IN WITNESS WHEREOF, I HAVE HEREUNTO
20    SUBSCRIBED MY NAME THIS 4TH OF JANUARY, 2008.
21
22                         _____
                            EMILY MCCARY
23
24
25
```

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT 103
PAGE 1595

M 0262157

**EXHIBIT 104**

CERTIFIED COPY

BRYANT vs. MATTEL

CASE NO.  CV 04-9040 SGL (RNBX)

AUDIOTAPED INTERVIEW OF

BEATRIZ MORALES

JANUARY 14, 2008

REPORTED BY:
NEALY KENDRICK
CSR NO 11265
JOB NO 08AE028-NK



515 S Flower Street
Suite 3600
Los Angeles, California 90071
Office (213) 955-0070
Fax (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ____104____

PAGE ____1596____

M 0262230

TRANSCRIPTION OF AUDIORECORDED INTERVIEW OF

BEATRIZ MORALES

MONDAY, JANUARY 14, 2008

1

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT _164_

PAGE _1597_

M 0262231

```
 1          TRANSCRIPTION OF AUDIORECORDED INTERVIEW OF

 2                        BEATRIZ MORALES

 3                    MONDAY, JANUARY 14, 2008

 4

 5                         INTERVIEWERS:

 6                         MR. DE ANDA

 7                          MS. FRIED

 8

 9      MR. DE ANDA·  -- TAPE-RECORD THE CONVERSATION

10   SO I DON'T MISSTATE ANYTHING.  OKAY?  IF I DO, THEN

11   THIS PROTECTS YOU, TOO, AS IT PROTECTS ME AS TO THE

12   (UNINTELLIGIBLE) THE RIGHT THINGS.  "LISSA"

13   (PHONETIC) MAY TAKE SOME NOTES, TOO.

14          HOWEVER, LET'S GO THROUGH THIS.  LET ME

15   SEE IF I CAN DO THIS.  IF I CAN'T DO IT, WE'LL ASK

16   "JAIME" (PHONETIC) TO COME OVER.  OKAY?

17      MALE VOICE:  OKAY.

18      MR. DE ANDA:  OKAY.  SO LET'S TRY -- LET'S TRY

19   SPANISH.

20      MALE VOICE:  OKAY.

21      MR. DE ANDA:  LET'S TRY -- LET'S TRY ENGLISH,

22   FIRST.  THEN WE'LL TRY SPANISH IF ENGLISH DOESN'T

23   WORK OUT.

24                         EXAMINATION

25   BY MR. DE ANDA:
```

2

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___164___

PAGE ___1598___

M 0262232

```
1          Q    DO YOU -- YOU KNOW ANA; RIGHT?  ANA --

2          MS. FRIED:  ISABEL.  YEAH.

3    BY MR. DE ANDA:

4          Q    -- ISABEL?  I'M SORRY   YEAH.  ISABEL.

5    OKAY.

6          A    I KNOW ISABEL IN A WAY.  YES.

7          Q    YEAH.

8          A    UH-HUH.

9          Q    YOU STARTED WORKING HERE IN JUNE OF 2000.

10         A    YES, I DID.

11         Q    OKAY.  VERONICA MARLOW WAS -- WAS -- HER

12   STATEMENT WAS TAKEN BY THE ATTORNEYS, I WANT TO SAY,

13   ABOUT TWO WEEKS AGO ON A FRIDAY.  AND SHE HAD

14   MENTIONED ISABEL'S NAME AND YOUR NAME WITH REGARDS

15   TO HELPING HER MAKE -- TO SEW AND CUT AND CREATE

16   ITEMS FOR THE BRATZ DOLLS

17              DO -- DO YOU -- DO YOU -- DO YOU KNOW WHAT

18   I'M REFERRING TO?  IN -- OVER IN ISABEL'S GARAGE

19   WHEN YOU WORKED THERE?  YOU AND ISABEL ARE VERY GOOD

20   FRIENDS; RIGHT?

21         A    (NO AUDIBLE RESPONSE.)

22         Q    RIGHT?  AND SHE HELPS YOU -- SHE --

23              TELL ME HOW -- HOW LONG YOU'VE BEEN

24   FRIENDS.

25         A    WHO?  ISABEL AND ME?
```

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT _____ 104

PAGE _____ 1599

M 0262233

```
1      Q    YES.
2      A    OH, WE KNOWS -- WE GROW UP TOGETHER.
3      MS. FRIED:  OKAY.  FOR A LONG TIME --
4  BY MR. DE ANDA:
5      Q    OH, AS (SPEAKING SPANISH)?
6      A    YES.
7      Q    AS --
8      A    WE COME FROM THE SAME COUNTRY.  WE GROW UP
9  TOGETHER.
10     Q    YOU COME FROM JALISCO?
11     A    YES.
12     Q    OKAY.  MY -- MY ANCESTOR COMES FROM -- MY
13 ANCESTRY COMES FROM JALISCO, TOO.
14     MS. FRIED:  UH-HUH.
15     THE WITNESS:  OH --
16     MR. DE ANDA:  YEAH.
17     THE WITNESS:  -- YOU HAVE RELATIVES IN MEXICO?
18     MS. FRIED:  UH-HUH.
19     THE WITNESS:  WHICH THEY (UNINTELLIGIBLE) --
20 OH, WOW.
21 BY MR. DE ANDA:
22     Q    YEAH.  YEAH.  YEAH.  OKAY?  BUT FROM
23 JALISCO -- THE SAME AREA.
24     A    OH, OKAY.
25     Q    OKAY?
```

4

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___104___
PAGE ___1600___

M 0262234

```
 1        A    YEAH.  WE ARE FROM JALISCO, TOO.
 2        Q    JALISCO, TOO.
 3        A    OKAY.
 4        Q    YEAH.
 5        A    YEAH.  OH, THAT'S WHY YOU SPEAK SPANISH.
 6        Q    "POQUITO," THOUGH.  BUT IT'S -- SEE --
 7   I --
 8        A    "MUY POQUITO."
 9        Q    -- I HAVEN'T -- BUT I'VE BEEN HERE -- IT
10   WAS MY -- MY GRANDPARENTS THAT CAME FROM --
11        A    OH.
12        Q    -- JALISCO.
13        A    OKAY.
14        Q    SO MY SPANISH WAS -- WHEN I WAS MUCH
15   YOUNGER, I COULD SPEAK A LOT BETTER.
16        A    UH-HUH.
17        Q    BUT AS TIME -- IF YOU DON'T SPEAK IT, YOU
18   LOSE IT, YOU KNOW.
19        A    UH-HUH.
20        Q    AND I HAVEN'T SPOKEN IN A LONG, LONG TIME;
21   SO I --
22        A    HUH.
23        Q    -- I SPEAK IT NOW AND THEN.
24        A    SUPPOSING YOU HAD TO PRACTICE.
25        Q    YES.
```

5

A&E COURT REPORTERS (213) 955-0070 FAX (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ___104___

PAGE ___1601___

M 0262235

```
 1   STATE OF CALIFORNIA    )
                            ) SS
 2   COUNTY OF LOS ANGELES )

 3

 4            I, NEALY KENDRICK, CERTIFIED SHORTHAND REPORTER,

 5   CERTIFICATE NO. 11265, FOR THE STATE OF CALIFORNIA, HEREBY

 6   CERTIFY:

 7            THAT THE FOREGOING TRANSCRIPT WAS PREPARED BY ME

 8   FROM A TAPE RECORDING OF THE PROCEEDINGS,

 9            I CERTIFY THAT THE TRANSCRIPT WAS PREPARED TO THE

10   BEST OF MY ABILITY;

11            I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR

12   NOR RELATED TO ANY PARTY TO SAID ACTION NOR IN ANY WAY

13   INTERESTED IN THE EVENT OF THE ACTION

14            WITNESS MY HAND THIS 17TH DAY OF JANUARY,  2008.

15

16

17            _Nealy Kendrick_

18            NEALY KENDRICK

19

20

21

22

23

24

25
```

                                                              148

A&E COURT REPORTERS (213) 955-0070 FAX  (213) 955-0077

CONFIDENTIAL - ATTORNEYS' EYES ONLY

EXHIBIT ____109____

PAGE ____1602____

M 0262378

EXHIBIT 105

Received:   7/18/06  4:40PM              RightFAX -> JetFax   '20;  Page 2
RightFAX              7/_3/2006 4:37   PAGE 002/019   Fax Server

FILED

2006 JUL 18 AM 10: 16

ENTERED

JUL 1 8 2006

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION
                    DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP RULE 77(D).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, | ) |
|         Plaintiff, | ) CASE NO. CV 04-09049 SGL (RNBx) |
| v. | ) (Consolidated with cases CV 04-09059 and CV 05-02727) |
| MATTEL, INC., | ) |
|         Defendant, | ) ORDER GRANTING MOTIONS TO DISMISS |
| and related actions. | ) |

## I. Introduction

This consolidated action involves the individual cases of <u>Bryant v. Mattel, Inc.</u>, CV 04-09049; <u>Mattel, Inc. v. Bryant</u>, CV 04-09059; and <u>MGA Entertainment, Inc. v. Mattel, Inc.</u>, CV 05-02727. This Order rules on Motions to Dismiss previously docketed in cases 04-09049 and 04-9059.

The factual background underlying this consolidated action is complex. The Court sets forth the factual background only to the extent that it is necessary to discuss its ruling on two pending motions to dismiss. A hearing regarding these motions was held on June 26, 2006. For the reasons and in the manner set forth below, the Court grants both motions.

DOCKETED ON CM

JUL 1 8 2003

EXHIBIT ___ 1 05 ___
PAGE ___ 1603 ___              7-18

## II. Motion to Dismiss (04-09049)

**A.   Factual Background**

Carter Bryant is a designer to whom creation of MGA's "Bratz" line of dolls has been attributed. Compl. ¶ 6. Mattel has sued him under a variety of state-law theories relating to certain agreements Bryant signed while an employee with Mattel. See generally Compl. filed in 04-09059. Although Mattel has not sued him for copyright infringement of any Mattel product, Bryant nevertheless claims that he is reasonably apprehensive regarding being sued for copyright infringement. Specifically, Bryant makes the following allegations in his complaint seeking declaratory relief:

First, Bryant claims that an article published in the Wall Street Journal in July, 2003, attributed to Mattel sources a belief that "the Bratz borrow liberally from a Mattel project that was scrapped at the testing stage in 1998." Compl. Ex. A; Compl. ¶ 54. The scrapped Mattel project is alleged to be the project referred to by Mattel as "Toon Teens." Compl. ¶ 56.

Second, Bryant alleges that he suggested, as a way to resolve a discovery dispute, that Mattel stipulate that it would not sue based on "Toon Teens." Compl. ¶ 55. Mattel refused to do so. Id. However, since that initial refusal, Mattel has represented to the Court that it "will not maintain that Bratz infringes the copyright in Toon Teens." June 26, 2006, Tr. at 64 (statement of Mattel counsel John B. Quinn). Mattel has reiterated this position in a post-hearing brief, filed on July 5, 2006.

Third, Mattel cooperated with a Hong Kong toy company that MGA sued for copyright infringement. Compl. ¶ 56. MGA's claims involved the Bratz dolls. Id. Mattel's cooperation consisted of providing the Hong Kong toy company with documents and photographs of the Toon Teens products, ostensibly to help prove that Bratz was not an original design and that Bryant had copied and infringed Toon Teens. Compl. ¶ 57.

Finally, Bryant notes that Mattel did not seek copyright registration until November, 2003, which is the same time Mattel claims it first learned of Bryant's

EXHIBIT    105
PAGE    1604

2

Received:   7/18/06  4:41PM          RightFAX -> JetFax   20;  Page 4
RightFAX                 7/-.3/2006 4:37   PAGE 004/019   Fax Server

1   contract with MGA.  Compl. ¶¶ 59-60.  Bryant alleges that registration of a copyright is

2   a necessary step to be taken prior to filing a copyright infringement action.  Compl.

3   ¶ 60.

4   **B.**   **Standing to Seek Declaratory Relief**

5          The purpose of the Declaratory Judgment Act is "to relieve potential defendants

6   from the Damoclean threat of impending litigation which a harassing adversary might

7   brandish, while initiating suit at his leisure — or never."  Societe de Conditionnement

8   v. Hunter Engineering Co., 655 F.2d 938, 943 (9th Cir.1981).  However, a party

9   seeking declaratory relief must still satisfy the "case or controversy" requirement found

10   in 28 U.S.C. § 2201(a).  Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896

11   F.2d 1542,1555 (9th Cir. 1990).  This requirement must be satisfied at the time the

12   suit is filed and must continue throughout the term of the suit.  Id. at 1556 (citing

13   International Harvester Co. v. Deere & Co., 623 F.2d 1207, 1210 (7th Cir.1980)).

14          To meet this requirement, a party seeking declaratory relief must show that,

15   based on his reasonable perceptions, under all the circumstances of the case, there is

16   a substantial controversy between parties having adverse legal interests that causes

17   in the plaintiff a real and reasonable apprehension that he will be subject to liability,

18   and the controversy is of sufficient immediacy and reality to warrant declaratory relief.

19   Hal Roach, 896 F.2d at 1555.  The apprehension must have been caused by the

20   defendant's actions.  Id. (citing International Harvester, 623 F.2d at 1211).

21          Viewing Bryant's allegations in light of this standard, and in light of recent

22   developments, the Court must conclude that Bryant, although having a reasonable

23   apprehension of suit prior to counsel's representations regarding the intent to sue

24   based on Toon Teens, no longer has a reasonable apprehension that he will be

25   subject to liability.  Bryant's Complaint, of course, makes reference to "other Mattel

26   products;" however, the substance of his allegations all address the product "Toon

27   Teens."  The Wall Street Journal article is alleged to have involved Toon Teens.

28   Mattel's cooperation with the Hong Kong toy company allegedly involved Toon Teens.

EXHIBIT   105

3

PAGE   1605

Received:   7/18/08   4:42PM              RightFAX -> JotFax   20;   Page 5
RightFAX                    7/13/2006 4:37     PAGE 005/019   Fax Server

1   The copyright registration referenced in the Complaint relates to Toon Teens.  No

2   other allegations are made that might tend to raise a real and reasonable

3   apprehension that Bryant could be subject to liability for copyright infringement based

4   on any other Mattel product.  Accordingly, Bryant has not met the standard for

5   asserting a claim for declaratory relief.

6   **C.**   **Ruling on Motion to Dismiss**

7        Accordingly, the Court **GRANTS** the Motion to Dismiss and dismisses without

8   prejudice Bryant's claim for declaratory relief.  Should Bryant, through discovery or

9   otherwise, acquire a real and reasonable apprehension of being subject to liability on

10  the basis of another identifiable Mattel product, Bryant may file a declaratory relief

11  claim.  A claim by Mattel of copyright infringement based on the Toon Teens product

12  is barred by counsel's representation; therefore, Bryant may not seek declaratory relief

13  regarding this issue.

14                     **III. Motion to Dismiss (04-9059)**

15  **A.**   **Factual Background**

16       The parties make the following factual allegations and assert the following

17  claims and counterclaims.

18       Bryant was employed by Mattel from September, 1995, to April, 1998, and

19  again beginning in January, 1999, and ending in October, 2000.  Compl. ¶ 9.  In

20  January, 1999, Bryant signed documents entitled "Employee Confidential Information

21  and Inventions Agreement" ("Employee Agreement") and "Conflict of Interest

22  Questionnaire" ("COI Questionnaire").  The Employee Agreement provides:

23       This Agreement is designed to make clear that: (I) I will maintain the

24       confidentiality of the Company's trade secrets; (ii) I will use those trade

25       secrets for the exclusive benefit of the Company; (iii) inventions that I

26       create will be owned by the Company; (iv) my prior and continuing

27       activities separate from the Company will not conflict with the Company's

28       development of its proprietary rights; and (v) when and if my employment

4

EXHIBIT   105

PAGE   1006

Received:   7/18/06  4:42PM          RightFAX -> JetFax    20;   Page 6
RightFAX              7/18/2006 4:37     PAGE 006/019    Fax Server

with the Company terminates I will not use my prior position with the Company to the detriment of the Company.

    1.      Provisions Related to Trade Secrets

            . . . .

    (b) As used in the Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does Business.

    (c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing, I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

            . . . .

    2.      Ownership of Inventions

    (a) I agree to communicate to the Company as promptly and fully as practicable all inventions [as defined below] conceived or reduced to practice to me (alone or jointly by others) at any time during my employment by the Company, I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. . . .

EXHIBIT __105__

PAGE __1607__

Received:  7/18/06  4:42PM          RightFAX -> JetFax   ?0;  Page 7
RightFAX                 7/18/2006 4:37    PAGE 007/019   Fax Server

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this Agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code.  That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer."  I understand that I bear the burden of proving that an invention qualifies under Section 2870.

. . . .

3.    Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort.  Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time.  I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

4.    Miscellaneous

. . . .  EXHIBIT ___105___

6    PAGE ___1608___

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

. . . .

CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.

Employment Agreement, attached to the Compl. as Ex. A.[1]

B.   **The Parties' Claims**

Mattel brings a number of claims based on these documents, including breach of contract, breach of fiduciary duty, breach of the duty of loyalty, unjust enrichment, and conversion.

Bryant brings a number of counterclaims based on these documents. Specifically, Bryant makes the following challenges to the Employment Agreement:

In his first counterclaim, Bryant claims that the Employment Agreement violates Cal. Bus. & Prof. Code §§ 17200 (unfair competition law) because (a) it is an unfair restraint of trade (restricting job mobility and use of publicly available information) in violation of Cal. Bus. & Prof. Code § 16600; (b) it violates Cal. Labor Code §§ 96(k), 98.6, and 2699; (c) it violates Cal. Labor Code § 2870; and (d) it is procedurally and substantively unconscionable. See Bryant's Counterclaims ¶¶ 33-47.

In his second counterclaim, Bryant claims that the Employment Agreement should be rescinded because it was procured due to mistake, duress, menace and/or

---

[1] Bryant objects to the Court's consideration of the Agreement and the COI Questionnaire. Bryant purports to dispute the authenticity of these documents. However, examining the substance of Bryant's objections, it becomes clear that Bryant objects not to the content of these documents, but to the validity and legal effect of these documents. Accordingly, the Court's consideration of these documents in connection with the present Motion to Dismiss is proper. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998) (the Court may consider documents whose authenticity is not questioned and upon which the complaint necessarily relies).

EXHIBIT /05

PAGE 1609

1    fraud. See Bryant's Counterclaims ¶¶ 48-54.

2         In his third counterclaim, Bryant alleges that the Employment Agreement was

3    procured by fraud in that Mattel "fail[ed] to disclose to Bryant the true meaning of the

4    terms and the purported legal effect of the [Employment] Agreement." See Bryant's

5    Counterclaims ¶¶ 55-60.

6         Finally, in his fourth counterclaim, Bryant seeks declaratory judgment that

7    Mattel's conduct in requiring Bryant and other employees to execute the Employment

8    Agreement constitutes unfair competition and unfair business practices in violation of

9    Cal. Bus. & Prof. Code §§ 17200 and 16600.  Bryant also seeks a declaration that the

10   Employment Agreement is unlawful and unenforceable as to him and as to other

11   current and former employees of Mattel.  See Bryant's Counterclaims ¶¶ 61-65.

12   C.    **Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

13        The present Motion to Dismiss requires the Court to determine whether the

14   counterclaims state any claim upon which relief may be granted.  See Fed R. Civ. P.

15   12(b)(6).  The Court will not dismiss the claims for relief unless Bryant cannot prove

16   any set of facts in support of the claims that would entitle him to relief.  See Steckman

17   v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir. 1998).  In limiting its inquiry to the

18   content of the counterclaims, the Court must take the allegations of material fact as

19   true and construe them in the light most favorable to Bryant.  See Western Reserve

20   Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir. 1985).  Additionally, the Court "is

21   not required to accept legal conclusions cast in the form of factual allegations if those

22   conclusions cannot be reasonably drawn from the facts alleged." Clegg v. Cult

23   Awareness Network, 18 F.3d 752, 755 (9th Cir. 1994).

24   D.    **§ 17200 Claim**

25        1.    **Generally**

26        "California's unfair competition law (UCL) (17200 et seq.) defines 'unfair

27   competition' to mean and include any unlawful, unfair or fraudulent business act or

28   practice. . . ." Kasky v. Nike, Inc., 27 Cal.4th 939, 949, 119 Cal.Rptr.2d 296 (2002)

EXHIBIT _105_

PAGE _1010_

8

1   (internal quotation marks and citation omitted).  Because "section 17200 is written in

2   the disjunctive, it establishes three varieties of unfair competition--acts or practices

3   which are unlawful, unfair, or fraudulent."  Cel-Tech Communications v. Los Angeles

4   Cellular Telephone Co., 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548 (1999) (emphasis

5   added).  "Unlawful" practices are those practices that are prohibited by law, whether

6   "civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made."

7   Saunders v. Superior Court, 27 Cal.App.4th 832, 839 (citing People v. McKale, 25

8   Cal.3d 626, 632 (1979)).  The prohibition against "unfair" conduct is not as broad as it

9   would seem.  In Cel-Tech, the California Supreme Court announced that the test of

10   "unfairness" for commercial cases:  "Unfair" means "conduct that threatens an

11   incipient violation of an antitrust law, or violates the policy or spirit of one of those laws

12   because its effects are comparable to or the same as a violation of the law, or

13   otherwise significantly threatens or harms competition." Cel-Tech, 20 Cal.4th at 187.

14       2.   **Standing**

15       Bryant claims to be bringing the § 17200 "on his own behalf, on behalf of all

16   current and former employees of Mattel employees . . . and on behalf of the general

17   public."  See Counterclaims ¶ 10.  The parties disagree as to whether he may bring

18   such a claim on behalf of anyone other than himself and argue this point on state-law

19   grounds.  However, it is clear under established Ninth Circuit authority that Bryant's

20   purported claims on behalf of others suffer from a federal constitutional deficiency:

21   Bryant must satisfy the case-or-controversy requirement of Article III for any claim that

22   he brings under § 17200.  Bryant has not alleged facts that establish that he has

23   standing to bring his claims on behalf of anyone other than himself.[2]  See Lee v.

24   American Nat. Ins. Co., 260 F.3d 997, 1001 (9th Cir. 2001) (rejecting, on

25   constitutional grounds, a plaintiff's attempt to assert a § 17200 claim on behalf of

26   others noting that "Article III of the Constitution . . . limits the jurisdiction of the federal

27

28

[2] As stated below, Bryant has failed to state a claim on his own behalf as well.

9

EXHIBIT _105_

PAGE _1611_

1   courts to 'cases and controversies,' a restriction that has been held to require a

2   plaintiff to show, *inter alia*, that he has actually been injured by the defendant's

3   challenged conduct.") (citing Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs., Inc.,

4   528 U.S. 167, 180, 120 S.Ct. 693 (2000)).

5        Absent class-action type allegations (and a successful motion to certify a class

6   pursuant to Fed. R. Civ. P. 23), it appears to the Court that Bryant cannot assert

7   claims challenging the Employee Agreement or the COI Questionnaire on behalf of

8   anyone other than himself.  Therefore, the Court considers only whether Bryant has

9   stated a claim pursuant to § 17200 on his own behalf.

10       **3.    Cal. Bus. & Prof. Code § 16600**

11       Bryant argues that the Agreement is "unlawful" because it violates Cal. Bus. &

12   Prof. Code § 16600, which provides: "Except as provided in this chapter, every

13   contract by which anyone is restrained from engaging in a lawful profession, trade, or

14   business of any kind is to that extent void."  Id.  Specifically, Bryant argues (without

15   further elaboration) that "the [Employment] Agreement unlawfully impair[s] Bryant's

16   right to prepare to compete with Mattel."  Opp. at 7.

17       California law permits an employee to seek other employment and even to

18   make some "preparations to compete" before resigning.  See Bancroft-Whitney Co. v.

19   Glen, 64 Cal.2d 327, 346 (1966) ("The mere fact that the officer makes preparations

20   to compete before he resigns his office is not sufficient to constitute a breach of duty.

21   It is the nature of his preparations which is significant.")  However, "an employee may

22   not transfer his loyalty to a competitor."  Stokes v. Dole Nut Co., 41 Cal.App.4th 285,

23   295 (1995).  "During the term of employment, an employer is entitled to its employees'

24   undivided loyalty."  Id.  (internal citations and quotation marks omitted).

25       Mattel alleges in the Complaint that Bryant entered into an agreement with

26   MGA to provide MGA design services on a "top priority" basis while he was still

27   employed with by Mattel.  Compl. ¶ 13.  Bryant also makes similar allegations in the

28   related case, Bryant v. Mattel, Inc., 04-09049: "MGA ultimately offered Bryant a

EXHIBIT   105
PAGE   1612

Received:   7/18/08   4:45PM       RightFAX -> JetFax   20;   Page 12
RightFAX                 7/18/2006 4:37    PAGE 012/019    Fax Server

1  consulting arrangement.  His agreement with MGA was signed on or about October 4,

2  2000.  Bryant resigned from Mattel immediately, giving two weeks notice, but stayed at

3  the company until October 20 to finish up and transition the projects on which he had

4  been working."  Compl. ¶ 38.

5      The parties' arguments assume that the Employment Agreement would prohibit

6  such conduct;[3] therefore, the Court considers whether an agreement prohibiting an

7  employee from entering into a contract with a competitor *during the course of his*

8  *employment* constitutes an unfair restraint of trade in violation of § 16600.  The Court

9  concludes that it does not.  Such an agreement is more akin to ensuring the employer

10  has the "employee's undivided loyalty" than it is to an agreement that restricts an

11  employee from "prepar[ing] to compete."  For this reason, Plaintiff cannot state a

12  § 17200 claim on this basis.

13      **4.   Cal. Labor Code §§ 96(k), 98.6 and 2699**

14      Bryant also argues that the Agreement is "unlawful" because it violates a

15  number of provisions of the California Labor Code.  Specifically, Bryant alleges that

16  the Agreement is "unlawful" because it violates § 96(k), which provides:

17      The Labor Commissioner and his or her deputies and

18      representatives authorized by him or her in writing shall, upon the filing

19      of a claim therefor by an employee, or an employee representative

20      authorized in writing by an employee, with the Labor Commissioner, take

21      assignments of: . . . (k) Claims for loss of wages as the result of

22      demotion, suspension, or discharge from employment for lawful conduct

23      occurring during nonworking hours away from the employer's premises.

24  Cal. Labor Code § 96(k).

25      Section 98.6 prohibits discrimination or retaliation against an employee who

26  engages in conduct described in §96(k).  Section 2699 authorizes a private right of

27

28

_____

[3] The Court does not mean to imply that Bryant has conceded this point.

EXHIBIT /05
PAGE 1013

1   action for certain violations of the Labor Code.

2       Assuming that § 96(k) would otherwise support a § 17200 claim, Bryant has still

3   failed to allege any "loss of wages" or "demotion, suspension or discharge" based on

4   lawful off-duty conduct.  Therefore, Bryant has not alleged facts sufficient to support a

5   violation of § 96(k) that would, in turn, support his § 17200 claim.

6       Despite Mattel's arguments against § 98.6 and § 2699 as a proper basis for

7   Bryant's § 17200 claim, Bryant did not defend such claims in his opposition; therefore,

8   the Court treats these claims as abandoned.

9       5.    Cal. Labor Code § 2870

10      Bryant also argues that the Agreement is "unlawful" because it violates Cal.

11  Labor Code § 2870.  That provision states:

12          (a) Any provision in an employment agreement which provides

13      that an employee shall assign, or offer to assign, any of his or her rights

14      in an invention to his or her employer shall not apply to an invention that

15      the employee developed entirely on his or her own time without using the

16      employer's equipment, supplies, facilities, or trade secret information

17      except for those inventions that either:

18          (1) Relate at the time of conception or reduction to practice of the

19      invention to the employer's business, or actual or demonstrably

20      anticipated research or development of the employer; or

21          (2) Result from any work performed by the employee for the

22      employer.

23          (b) To the extent a provision in an employment agreement

24      purports to require an employee to assign an invention otherwise

25      excluded from being required to be assigned under subdivision (a), the

26      provision is against the public policy of this state and is unenforceable.

27  Cal. Labor Code § 2870.

28      The Employment Agreement assigns the rights to certain inventions by the

12

EXHIBIT  105
PAGE  1614

Received:   7/18/06   4:45PM          RightFAX -> JetFax   20;  Page 14
RightFAX                    7/18/2006 4:37    PAGE 014/019   Fax Server

1  employee to the Company.  The Agreement limits the scope of this assignment to the

2  extent required by § 2870 by specifically incorporating and quoting § 2870.  The

3  Agreement also informs the employee that he bears the burden of proving that the

4  invention falls within the scope of § 2870.  This is consistent with California law.  See

5  Cal. Labor Code § 2872 ("In any suit or action arising thereunder, the burden of proof

6  shall be on the employee claiming the benefits of its provisions.").

7      Therefore, Bryant cannot maintain a § 17200 claim based on § 2870.

8      **6.    Unconscionability**

9      Unconscionability has both procedural and substantive elements.  Armendariz

10  v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 99 (2000).  Both must

11  be present for a court to invalidate a contract or one of the contract's provisions.  Id. at

12  114.  However, "[t]he more substantively oppressive the contract term, the less

13  evidence of procedural unconscionability is required to come to the conclusion that the

14  term is unenforceable, and vice versa."  Id.

15      Procedural unconscionability focuses on the elements of oppression and

16  surprise.  Discover Bank v. Superior Court, 36 Cal.4th 148, 160 (2005).  "Oppression

17  arises from an inequality of bargaining power which results in no real negotiation and

18  an absence of meaningful choice . . . . Surprise involves the extent to which the terms

19  of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior

20  bargaining position."  Crippen v. Central Valley RV Outlet, 124 Cal.App.4th 1159, 1165

21  (2004).

22      Substantive unconscionability focuses on the actual terms of the agreement

23  and evaluates whether they create "overly harsh" or "one-sided results."  Armendariz,

24  24 Cal.4th at 114.  To be substantively unconscionable, a contractual provision must

25  shock the conscience.  California Grocers Assn. v. Bank of America, 22 Cal.App.4th

26  205, 214 (1994).

27      Here, Bryant alleges that the Employee Agreement is a contract of adhesion.

28  Counterclaims ¶ 26.  For purposes of the present analysis, the Court assumes that the

EXHIBIT _105_

13

PAGE _1615_

Received:   7/18/06   4:46PM          RightFAX -> JetFax ' ?0;   Page 15
RightFAX              7/1_/2006 4:37    PAGE 015/019    Fax Server

1   Employment Agreement is procedurally unconscionable.  See Discover Bank v.

2   Superior Court, 36 Cal.4th 148, 160 (2005) ("The procedural element of an

3   unconscionable contract generally takes the form of a contract of adhesion, which,

4   imposed and drafted by the party of superior bargaining strength, relegates to the

5   subscribing party only the opportunity to adhere to the contract or reject it.") (internal

6   quotation marks and citation omitted).  However, upon examination of the terms of the

7   Employment Agreement, the Court is unable to conclude that the element of

8   substantive unconscionability has been met.  It is not surprising or overly harsh that

9   Mattel would expect its trade secrets and proprietary information to be kept

10  confidential; the same is true regarding Mattel's expectation that the works of its

11  design staff — created by Mattel's employees, using Mattel's resources, during time

12  for which Mattel paid the employee — be considered its property.  Therefore, Bryant

13  cannot state a claim based on unconscionability.

14          7.      Cal. Labor Code §§ 232 and 232.5

15          Although not pleaded in the Counterclaims, Bryant argues that his § 17200

16  claim is supported by an alleged violation of §§ 232 and 232.5.  These provisions

17  prohibit limitations on an employee's ability to disclose the amount of his or her wages

18  or information about his or her working conditions.  Bryant's arguments fail to address

19  how the Employment Agreement (which prohibits the disclosure of "trade secrets" and

20  "proprietary information") prevented him from disclosing the amount of his wages or

21  information about his working conditions.  Bryant has failed to state a § 17200 claim

22  based on §§ 232 and 232.5.

23          8.      Unfairness

24          As noted above, there is only a limited basis on which a plaintiff may challenge

25  conduct as an "unfair" business practice.  See Cel-Tech Communications, 20 Cal.4th

26  at 187 ("unfair" conduct that may be challenged pursuant to § 17200 is conduct that is,

27  or is similar to, conduct that constitutes a violation of antitrust laws).  Bryant's

28  allegations do not state a claim for an "unfair" business practice in violation of

EXHIBIT  105

14

PAGE  1616

Received:   7/18/06  4:46PM       RightFAX -> JetFax  ~20;   Page 16
RightFAX               7/__/2006 4:37    PAGE 016/019    Fax Server

1  § 17200.

2      9.   "Fraudulent" Conduct

3          Bryant also argues that the same conduct complained of in connection with his

4  fraud claim also supports a § 17200 claim based on the prohibition against

5  "fraudulent" conduct.  This claim is not cognizable.  Bryant's fraud claim, explored

6  more fully in the following section, is based upon Mattel's alleged failure to explain to

7  him the terms of the Employment Agreement.  However, to allege a "fraudulent

8  business practice" under § 17200, a plaintiff must allege that "members of the public

9  are likely to be deceived." Comm. on Children's Television, Inc. v. Gen. Foods Corp.,

10  35 Cal.3d 197, 211 (1983).  Bryant has not alleged facts that would tend to establish

11  that the public might be deceived by Mattel's conduct regarding its employment

12  practices.

13  E.    Fraud Claim

14          The parties agree that Bryant's fraud claim is one for fraudulent concealment,

15  and that Bryant must allege all the elements set forth in Marketing West, Inc. v. Sanyo

16  Fisher Corp., 6 Cal.App.4th 603, 612-13 (1992):  (1) Mattel must have concealed or

17  suppressed a material fact; (2) Mattel must have been under a duty to disclose the

18  fact to Bryant; (3) Mattel must have intentionally concealed or suppressed the fact with

19  the intent to defraud Bryant; (4) Bryant must have been unaware of the fact and would

20  not have acted as he did if he had known of the concealed or suppressed fact; and (5)

21  as a result of the concealment or suppression of the fact, Bryant must have sustained

22  damage.  Bryant alleges that "Mattel required [him] to execute the [Employment]

23  Agreement without disclosing to him its true import and terms."  Counterclaims ¶ 56.

24  Bryant's claim is, in essence, that Mattel failed to inform him of the potential legal

25  effect the Agreement might have; in other words, Bryant claims that Mattel failed to

26  fully explain the Agreement to him.  This does not support a fraudulent concealment

27  claim.

28          Bryant argues, based on Marketing West, that because Mattel chose to

15

EXHIBIT 105
1617

1  respond to his inquiries, Mattel was under a duty to disclose material facts.  Under

2  Marketing West, where a party is "under no duty to speak" but nevertheless

3  "undertakes to do so, either voluntarily or in response to inquiries, he is bound not only

4  to state truly what he tells but also not to suppress or conceal any facts within his

5  knowledge which materially qualify those stated."  Marketing West, 6 Cal.App.4th at

6  613 (citing Rogers v. Warden, 20 Cal.2d 286, 289 (1942)) (internal quotation marks

7  omitted).  In other words, one who speaks "must make a full and fair disclosure."  Id.

8        Bryant makes no allegations that suggest that anyone at Mattel falls into this

9  category.  He alleges that he was "presented with the form Agreement by Mattel," and

10  that "he was told that his execution of the Agreement was a condition of his

11  employment."  Counterclaims ¶ 26.  He then alleges that "[t]he terms of the Agreement

12  were not explained to him."  Id.  This is not the situation discussed in Marketing West

13  which, not surprisingly, prohibits a party from disclosing only that part of the truth that

14  favors it.  Here, Bryant's allegations complain that Mattel did not disclose anything

15  regarding the Employment Agreement.

16  F.    Rescission

17        Bryant asserts that rescission is proper because (1) the Agreement was

18  obtained through fraud; (2) Mattel required Bryant to execute the document as a

19  condition of employment, which resulted in duress; and (3) Mattel did not explain the

20  terms of the Agreement to Bryant, did not give him sufficient time to review it, and did

21  not permit or encourage him to seek legal counsel regarding the Agreement.

22        Bryant failed to state a fraud claim; therefore, rescission based on his fraud

23  claim would be improper.

24        Bryant's allegations do not meet the standard for duress, and Mattel's failure to

25  encourage him to seek legal counsel also does not require rescission of the

26  Employment Agreement.  See Robison v. City of Manteca, 78 Cal.App.4th 452, 457

27  (2000).  Additionally, although Bryant argues that he was not "given a meaningful

28  opportunity to review the Agreement at the time he executed it," he does not allege

EXHIBIT  /0ſ
PAGE  ₁₆₁₆

Received:   7/18/06  4:47PM·                RightFAX -> JetFax M°°0;   Page 18
RightFAX                    7/. /2006 4:37    PAGE 018/019   Fax Server

1   that he asked for, and was refused, sufficient time to actually read the Agreement with
2   which he was presented.
3   G.     **Declaratory Relief**
4          Finally, in his fourth counterclaim, Bryant seeks declaratory judgment that
5   Mattel's conduct in requiring Bryant and other employees to execute the Employment
6   Agreement constitutes unfair competition and unfair business practices in violation of
7   Cal. Bus. & Prof. Code §§ 17200 and 16600.  This claim for declaratory relief fails
8   because the underlying § 17200 fails.
9          Bryant also seeks a declaration that the Employment Agreement is unlawful
10  and unenforceable as to him and as to other current and former employees of Mattel.
11  See Bryant's Counterclaims ¶¶ 61-65.  As discussed previously, Bryant has no
12  standing to assert claims on behalf of anyone other than himself.  As discussed
13  throughout this Order, Bryant has not sufficiently alleged that the Employment
14  Agreement is unlawful or unenforceable as to him.
15  H.     **Ruling on Motion to Dismiss (04-09059)**
16         The Motion to Dismiss is **GRANTED** in its entirety.  Bryant requested in his
17  Opposition for an opportunity to amend his counterclaims.  Therefore, the Court
18  dismisses Bryant's counterclaims without prejudice.  Bryant may file Amended
19  Counterclaims that conform with this Order within ten days of the entry of this Order.
20                          **IV. Conclusion**
21         For the reasons set forth above, the Court **GRANTS** the Motion to Dismiss in
22  04-09049 and **DISMISSES WITHOUT PREJUDICE** Bryant's action for declaratory
23  relief.  The Court also **GRANTS** the Motion to Dismiss in 04-09059, and **DISMISSES**
24  **WITHOUT PREJUDICE** Bryant's counterclaims.  Bryant is granted ten days' leave to
25  amend the counterclaims in conformity with this Order.
26
27
28

105
169

1       Although this Order dismisses the Complaint in 04-09049, any future filings in

2   the consolidated action shall continue to be filed under 04-09049 in conformity with

3   the Court's consolidation order.

4       IT IS SO ORDERED.

5   DATE:   7 - 17 - 06

6                                                    _____
                                                     STEPHEN G. LARSON
7                                                    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 105
PAGE 1620

EXHIBIT 106

JUN 2 0 2006

# PRIORITY SEND & ENTER JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES – GENERAL

Case No.   CV 05-02727 SGL(RNBx)                    Date:  June 19, 2006

Title:   MGA ENTERTAINMENT, INC. -v- MATTEL, INC.

========================================================================

PRESENT:   HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Jim Holmes                                    None Present
Courtroom Deputy                              Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:       ATTORNEYS PRESENT FOR DEFENDANTS:

None present                            None present

PROCEEDINGS:    MINUTE ORDER (IN CHAMBERS) RE CONSOLIDATION

On May 16, 2006, this Court issued orders to show cause why the following three cases should not be consolidated: Bryant v. Mattel, Inc.; CV 04-09049; Mattel, Inc. v. Bryant, CV 04-09059; MGA Entertainment, Inc. v. Mattel, Inc., CV 05-02727. All parties have responded, and the Court has reviewed those responses. Because the Court has determined that these actions involve a number of common issues of law and fact, the Court orders that these three cases be consolidated for all purposes.

Mattel's request that the Court stay MGA Entertainment, Inc. v. Mattel, Inc., CV 05-02727, pending the outcome of the other two cases. The Court denies this request.

For ease of record keeping, the Court ORDERS that all further documents and proceedings occur under Bryant v. Mattel, 04-09049 SGL, and that Case Number CV 04-09059 and 05-02727 be CLOSED by the Clerk. Counsel are directed to file all further documents under Case Number CV 04-09049. The first paragraph of any document filed with the Court shall inform the Court to which case(s) the document relates.

IT IS SO ORDERED.

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority ____ Send ____
Entered ____ Closed ____
JS-5/JS-6 ____ JS-2/JS-3 ____          /Initials of Deputy Clerk __jh__
Scan Only ____ Docketed on CM ____
THIS CONSTITUTES NOTICE OF
ENTRY AS REQUIRED BY FRCP 77(d)
JUN 20 2006
EASTERN DIVISION

MINUTES FORM 90
CIVIL – GEN

EXHIBIT ___106___

PAGE ___1021___

#47

**EXHIBIT 107**

1

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3              EASTERN DIVISION

4                  - - -

5      HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

6                  - - -

7    CARTER BRYANT, INDIV,          )
                                    )
8                   PLAINTIFF,      )
                                    )
9            VS.                    )   NO. ED CV 04-09049
                                    )   (LEAD LOW NUMBER)
10   MATTEL, INC.,                  )
                                    )
11                  DEFENDANTS.     )
                                    )
12   AND RELATED ACTIONS,          )
     _____   )

**CERTIFIED COPY**

13

14

15         REPORTER'S TRANSCRIPT OF PROCEEDINGS

16             RIVERSIDE, CALIFORNIA

17          MONDAY, JANUARY 8, 2007

18               10:26 A.M.

19

20

21

22

23         THERESA A. LANZA, RPR, CSR
         FEDERAL OFFICIAL COURT REPORTER
24          3470 12TH STREET, RM. 134
         RIVERSIDE, CALIFORNIA  92501
25             (951) 274-0844
         CSR11457@SBCGLOBAL **EXHIBIT** _167_
                            **PAGE** _1622_

15

1   AND THEY ARE IN THE 'OR.'  THEY'RE NOT ALL OF THEM; ANY ONE OF

2   THEM COULD SURVIVE.

3           IN THIS SITUATION, EVERY SINGLE FACTOR IS IN PLACE

4   WITH REGARD TO THEIR COPYRIGHT INFRINGEMENT AND THEIR TORTIOUS

5   INTERFERENCE CLAIMS, AT LEAST WITH REGARD TO MGA AND LARIAN.          10:42

6           LET'S TALK ABOUT UNDUE DELAY, BECAUSE AS JACKSON SAID

7   IN THE NINTH CIRCUIT, IN DETERMINING WHETHER THERE'S DELAY,

8   COURTS LOOK TO WHETHER THE MOVING PARTY KNEW OR SHOULD HAVE

9   KNOWN THE FACTS AND THEORIES RAISED BY THE AMENDMENT IN THE

10  ORIGINAL PLEADING.                                                   10:43

11          SO YOU'VE GOT TO LOOK BACK AT THE ORIGINAL PLEADING.

12          AND THE AMENDMENT IS NOT VIEWED FAVORABLY WHEN THE

13  PLAINTIFF KNEW THE FACTS AND THEORIES SINCE THE INCEPTION.  AND

14  THE NINTH CIRCUIT, EVEN IN THE ACURA CASE, WENT ON TO

15  SPECIFICALLY SAY, IF SOMEBODY IS PLAYING A TACTICAL GAME IN         10:43

16  CHOOSING NOT TO DO SOMETHING, THAT'S REALLY NOT GOING TO BE

17  FAVORED.

18          NOW, LET'S LOOK AT TORRES EXHIBIT G.

19          TORRES EXHIBIT G IS THE ANONYMOUS LETTER THAT WAS

20  SENT IN AUGUST OF 2002 TO MATTEL'S CEO, BOB ECKERT.  AND THINK      10:43

21  HOW MUCH IT EXACTLY TRACKS BOTH THEIR ORIGINAL COMPLAINT AND

22  THE AMENDED COMPLAINT.

23          "I HAVE INFORMATION MATTEL SHOULD INVESTIGATE.  IN

24  2000, A MATTEL EMPLOYEE BY THE NAME OF CARTER BRYANT WAS

25  WORKING WITH MATTEL TO DESIGN DOLLS.  ONE OF THE DOLLS HE WAS       10:44

EXHIBIT  107

16

1  WORKING ON CREATING WAS THE BRATZ DOLLS."  IT GOES ON TO SAY,

2  "WHILE HE WAS WORKING WITH MATTEL AND WORKING TO CREATE THESE

3  DOLLS, HE WORKED OUT A DEAL WITH MGA THAT LET HIM COLLECT MONEY

4  IN EXCHANGE FOR THESE DOLLS BEING HIS."

5      MGA KNEW THAT CARTER WAS AN EMPLOYEE WITH MATTEL AND     10:44

6  THAT IT WAS WRONG TO PAY HIM TO STEAL THIS PRODUCT FROM MATTEL.

7      THE COURT:  COUNSEL, I WOULD HATE TO HAVE SOMEONE

8  BRING A COMPLAINT BASED ON AN ANONYMOUS LETTER.  I MEAN, THE

9  LANGUAGE IN THE LETTER ITSELF STATES THAT THIS IS SOMETHING

10 MATTEL SHOULD INVESTIGATE.  MR. QUINN'S POSITION IS TO SATISFY  10:44

11 THE RULE 11 REQUIREMENT.  THAT'S EXACTLY WHAT THEY DID, AND

12 THAT'S WHAT THEY HAVE BEEN DOING, AND NOW THEY'RE SATISFIED,

13 FROM THEIR PERSPECTIVE, THAT THE INFORMATION IS TRUE.

14      MS. CENDALI:  WELL, FIRST OFF, YOUR HONOR, THIS

15 LETTER IS NOT TRUE.  BUT TO BE CLEAR -- JUST TO BE CLEAR THAT  10:44

16 MR. ECKERT DIDN'T JUST PUT IT IN A BOX, HE ASKED HIS HEAD OF HR

17 TO HAVE HIS HEAD OF SECURITY INVESTIGATE IT.  WHAT THEY DID

18 BEYOND THAT WE DON'T KNOW BECAUSE THEY REFUSE TO ANSWER

19 QUESTIONS AND TO PRODUCE A PRIVILEGE LOG ABOUT IT.

20      BUT WHAT WE DO KNOW IS, ON APRIL 27, 2004, THEY WERE  10:45

21 ABLE TO FILE THE ORIGINAL COMPLAINT IN THIS ACTION AGAINST

22 MR. BRYANT; SO CLEARLY, THEY HAD SATISFIED THEIR DUE DILIGENCE

23 OBLIGATIONS --

24      THE COURT:  WITH RESPECT TO THAT ASPECT, RIGHT.  BUT

25 I CERTAINLY KNOW THAT O'MELVENY & MYERS WOULD NOT FILE A     10:45

EXHIBIT _107_
PAGE _1624_

1  COMPLAINT BASED ON AN ANONYMOUS LETTER FROM SOMEBODY SUGGESTING

2  THAT THERE IS A COPYRIGHT INFRINGEMENT.

3           MS. CENDALI:  WELL, IF THEY INVESTIGATE IT AS THEY

4  SHOULD, BECAUSE THERE IS A DUTY OF INQUIRY WITH REGARD TO

5  ALLEGATIONS.  THEY WERE ON INQUIRY NOTICE AT THIS TIME.  AND          10:45

6  THEN LET'S TAKE A LOOK AT WHAT THEIR ACTUAL COMPLAINT ENDED UP

7  SAYING THAT THEY FILED AGAINST --

8           THE COURT:  COUNSEL, I UNDERSTAND.  IT SAID THE

9  SAME -- I UNDERSTAND YOUR ARGUMENT.  THERE'S NOTHING WHICH

10  REFUTES THE POSITION OF MR. QUINN THAT IT TOOK HIM THAT LONG,          10:46

11  THIS MUCH TIME, TO REASONABLY AND DILIGENTLY INVESTIGATE THIS.

12           MS. CENDALI:  BUT THIS IS THE POINT I WANT TO MAKE,

13  YOUR HONOR, AND IT'S IN PARAGRAPHS 12, 19, 23, 30, 36, AND 41

14  OF THE ORIGINAL COMPLAINT.  WHAT I'M TRYING TO SAY IS THAT THE

15  ORIGINAL COMPLAINT ALLEGED AT ITS TIME -- THOUGH IT DIDN'T NAME          10:46

16  MGA AND LARIAN BY NAME, THEY ADMITTED THAT THEY HAD A COPY OF

17  HIS CONTRACT WITH MGA.  IT SAID MGA ON IT.  IT WAS SIGNED BY

18  MR. LARIAN.  AND WHAT DID THEY SAY?

19           THEY DIDN'T JUST SAY THINGS ABOUT BRYANT.  THEY SAID

20  THAT, IN PARAGRAPH 12, "MATTEL LEARNED THAT BRYANT HAD SECRETLY          10:46

21  AIDED, ASSISTED AND WORKED FOR A MATTEL COMPETITOR, INCLUDING

22  WITH THAT LIMITATION BY ENTERING INTO AN AGREEMENT.  IN

23  ADDITION, WHILE BRYANT WAS EMPLOYED, BRYANT AND THE OTHER

24  DEFENDANTS CONVERTED MISAPPROPRIATE AND MISUSED MATTEL

25  PROPERTY."  IT GOES ON TO SAY THAT IT --          10:47

EXHIBIT  107

1-8-07        ED CV 04-09049

PAGE  1625

30

1

2

3                          CERTIFICATE

4

5   I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED
    STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
6   THE STENOGRAPHICALLY RECORDED PROCEEDINGS HELD IN THE
    ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN
7   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF
    THE UNITED STATES.

8

9                                                    7-9-07
10  THERESA A. LANZA, RPR, CSR                         DATE
    OFFICIAL COURT REPORTER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 107
PAGE 1626

1-8-07              ED CV 04-09049

**EXHIBIT 108**



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
  Duane R. Lyons (Bar No. 125091)
  (duanelyons@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT, an individual,

                    Plaintiff,

          v.

MATTEL, INC., a Delaware
corporation,

                    Defendant.

_____

MGA ENTERTAINMENT, INC. a
California corporation,

                    Plaintiff,

          v.

MATTEL, INC., a Delaware
corporation, and DOES 1-10,

                    Defendants.

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated With Case No. 04-9059 and
Case No. 05-2727

MATTEL, INC.'S SECOND AMENDED
ANSWER IN CASE NO. 05-2727 AND
COUNTERCLAIMS FOR:

1.  COPYRIGHT INFRINGEMENT;
2.  VIOLATION OF THE
    RACKETEER INFLUENCED AND
    CORRUPT ORGANIZATIONS
    ACT;
3.  CONSPIRACY TO VIOLATE THE
    RACKETEER INFLUENCED AND
    CORRUPT ORGANIZATIONS
    ACT;
4.  MISAPPROPRIATION OF TRADE
    SECRETS;
5.  BREACH OF CONTRACT;
6.  INTENTIONAL INTERFERENCE
    WITH CONTRACT;
7.  BREACH OF FIDUCIARY DUTY;
8.  AIDING AND ABETTING
    BREACH OF FIDUCIARY DUTY;
9.  BREACH OF DUTY OF
    LOYALTY;

**CONFIDENTIAL FILED UNDER
SEAL, PURSUANT TO
PROTECTIVE ORDER**

**Volume I**

CONFORMED COPY

COURT, U.S. DISTRICT COURT
CLERK, U.S. DISTRICT COURT

JUL 1 2 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

EXHIBIT 105

PAGE 1027

07209/2154363.3

C7·12·C7

SECOND AMENDED ANSWER AND COUNTERCLAIMS

| | | |
|---|---|---|
| 1 | MATTEL, INC., a Delaware corporation, | 10. AIDING AND ABETTING BREACH OF DUTY OF LOYALTY; |
| 2 | | 11. CONVERSION; |
| 3 | Counter-claimant, | 12. UNFAIR COMPETITION; AND |
| | v. | 13. DECLARATORY RELIEF. |
| 4 | MGA ENTERTAINMENT, INC., a | DEMAND FOR JURY TRIAL |
| 5 | California corporation; ISAAC LARIAN, an individual; CARTER | |
| 6 | BRYANT, an individual; MGA ENTERTAINMENT (HK) LIMITED, | |
| 7 | a Hong Kong Special Administrative Region business entity; MGAE DE | |
| 8 | MEXICO, S.R.L. DE C.V., a Mexico business entity; CARLOS | |
| 9 | GUSTAVO MACHADO GOMEZ, an individual; and DOES 4 through 10, | |
| 10 | | |
| | Counter-defendants. | |
| 11 | | |
| 12 | AND CONSOLIDATED CASES | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | EXHIBIT 108 |
| 27 | | PAGE 1628 |
| 28 | | |

07209/2154363.3

-2-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

## SECOND AMENDED ANSWER

Pursuant to the Court's Orders of January 12, 2007 and June 27, 2007, Defendant Mattel, Inc. ("Mattel") answers the Complaint of MGA Entertainment, Inc. ("Complaint") as follows:

### Preliminary Statement

The Complaint in this case contravenes Rule 8(a) of the Federal Rules of Civil Procedure in multiple respects. For example, in many places, the Complaint improperly mixes factual averments with argumentative rhetoric. The Complaint also includes a selective recitation of alleged historical facts and "rumor," much of which is both irrelevant and inflammatory in tone and content. In addition, many of the allegations of the Complaint are overly broad, vague or conclusory and include terms which are undefined and which are susceptible to different meanings. Accordingly, by way of a general response, all allegations are denied unless specifically admitted, and any factual averment admitted is admitted only as to the specific facts and not as to any conclusions, characterizations, implications or speculations which are contained in the averment or in the Complaint as a whole. These comments and objections are incorporated, to the extent appropriate, into each numbered paragraph of this Second Amended Answer.

Mattel further submits that the use of the headings throughout the Complaint is improper, and therefore no response to them is required. In the event that a response is required, Mattel denies those allegations.

The Complaint also contains many purported photographs of various items, and it uses one or more headings purporting to describe, either individually or in groups, these various photographs. The images of these photographs contained in the Complaint are all relatively small and some are of less than optimal quality, making it difficult to evaluate the adequacy of the photographs or their fairness and accuracy in depicting what they purport to represent. The Complaint also does not describe the circumstances or time frame in which these photographs were taken,

EXHIBIT 10 ?

1    and in many cases does not identify, or does not sufficiently or properly identify, the

2    item depicted in the photographs.  All of these factors, as well as the use of these

3    photographs and headings out of context, or with an insufficient context, impair the

4    ability of Mattel to fully respond to these photographs and headings, or to any

5    purported allegations involving, or relying upon, the use of such photographs and

6    accompanying headings.  By way of a general response, Mattel therefore does not

7    admit the authenticity of any photograph, or the accuracy or adequacy of any

8    heading, nor does it admit any allegation or inference that is based on, or purports to

9    be based on, any photograph or accompanying heading in the Complaint.  Mattel

10   reserves the right to challenge the authenticity of any photograph and the accuracy

11   or adequacy of any heading (either as included in the Complaint or in the context of

12   additional material not included).  Further, with reference to all photographs and

13   accompanying headings, or any averments based on the Complaint's use of such

14   photographs and headings, which might be offered into evidence, Mattel specifically

15   reserves its right to object to any use of such photographs, headings, and averments,

16   or the Complaint as a whole or in part, in evidence for any purpose whatsoever.

17          To the extent that Mattel has endeavored to answer any particular

18   allegation containing any such photographs and headings, any admission concerning

19   the item purported to be depicted in such photograph, or described in such headings,

20   shall not constitute an admission that the photograph is authentic, adequate, or

21   admissible, nor that any heading is accurate, adequate, or admissible.  All such items

22   purportedly depicted in such photographs, and described in such headings, "speak

23   for themselves".  Accordingly, to the extent that any such referenced materials are

24   deemed allegations against Mattel, they are denied.

25                                    <u>Responses</u>

26          1.     Answering paragraph 1 of the Complaint, Mattel admits that

27   plaintiff MGA Entertainment, Inc. ("plaintiff" or "MGA") is a California

28   corporation with a principal place of business in Van Nuys, California.

EXHIBIT _108_

154363.2

-4-

1    2. Answering paragraph 2 of the Complaint, Mattel admits that

2 Mattel is a Delaware corporation with a principal place of business in El Segundo,

3 California.

4    3. Answering paragraph 3 of the Complaint, Mattel denies that

5 there has been wrongful conduct on its part and states that it is without knowledge

6 or information sufficient to form a belief as to the truth or falsity of the remaining

7 allegations set forth therein and, on that basis, denies them.

8    4. Answering paragraph 4 of the Complaint, Mattel admits that

9 plaintiff purports to assert claims under the Lanham Act, 15 U.S.C. §§ 1125(a) and

10 (c), California Business and Professions Code §§ 17200 et seq., California Business

11 and Professions Code § 14330 and California common law, denies that plaintiff is

12 entitled to any relief thereunder and denies the truth of the remaining allegations set

13 forth in paragraph 4.

14    5. Answering paragraph 5 of the Complaint, Mattel admits that it is

15 subject to personal jurisdiction in this District and denies the truth of the remaining

16 allegations set forth in paragraph 5.

17    6. Answering paragraph 6 of the Complaint, Mattel admits that

18 venue is proper in this District and denies the truth of the remaining allegations set

19 forth in paragraph 6.

20    7. Answering paragraph 7 of the Complaint, Mattel admits that

21 MGA has filed the instant lawsuit and denies the truth of the remaining allegations

22 set forth in paragraph 7.

23    8. Answering paragraph 8 of the Complaint, Mattel states that it is

24 without knowledge or information sufficient to form a belief as to the truth or falsity

25 of the allegations regarding MGA's history set forth therein and, on that basis,

26 denies them, states that MGA has made conflicting representations, including in

27 sworn statements, that are at odds with the allegations of the Complaint and denies

28 the truth of the remaining allegations set forth in paragraph 8.

EXHIBIT 108

1    9.    Answering paragraph 9 of the Complaint, Mattel admits that
2  MGA filed this action, states that Mattel's web site and corporate governance
3  policies speak for themselves and denies the truth of the remaining allegations set
4  forth in paragraph 9.

5    10.    Answering paragraph 10 of the Complaint, Mattel admits that it
6  is the world's most successful toy company, states that the first doll in its BARBIE
7  line was publicly introduced in 1959 and that BARBIE-branded dolls have been the
8  world's best-selling toys, states that Mattel's sales and stock price speak for
9  themselves, and denies the truth of the remaining allegations set forth in paragraph
10  10.

11    11.    Answering paragraph 11 of the Complaint, Mattel admits that
12  Adrienne Fontanella is the former president for girls' toys at Mattel, states that it is
13  without knowledge or information sufficient to form a belief as to the truth or falsity
14  of the allegations regarding an alleged statement by Ms. Fontanella, and denies the
15  truth of the remaining allegations set forth in paragraph 11.

16    12.    Answering paragraph 12 of the Complaint, Mattel is without
17  knowledge or information sufficient to form a belief as to the truth or falsity of the
18  allegations regarding alleged statements by unidentified "analysts," states that
19  Mattel's sales and stock price speak for themselves, and denies the truth of the
20  remaining allegations set forth in paragraph 12.

21    13.    Answering paragraph 13 of the Complaint, Mattel admits that Jill
22  Barad became President and Chief Executive Officer of Mattel in January 1997, that
23  Mattel acquired Tyco Industries, Inc. ("Tyco") in March 1997, that Mattel acquired
24  Pleasant Company in 1998, Mattel acquired the Learning Company in May 1999,
25  that Mattel acquired Purple Moon in 1999, that the MATCHBOX brand was owned
26  by Tyco, that the AMERICAN GIRL line of dolls was made by Pleasant Company
27  at the time of that entity's acquisition, and denies the truth of the remaining
28  allegations set forth in paragraph 13.

EXHIBIT _108_
_1632_
PAGE

14.   Answering paragraph 14 of the Complaint, Mattel states that its public announcements speak for themselves, and denies the truth of the remaining allegations set forth therein.

15.   Answering paragraph 15 of the Complaint, Mattel states that its stock price and its public announcements speak for themselves, and denies the truth of the remaining allegations set forth therein.

16.   Answering paragraph 16 of the Complaint, Mattel states that its stock price speaks for itself, states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the alleged views of unnamed "analysts" and "[i]nvestors," and denies the truth of the remaining allegations set forth therein.

17.   Answering paragraph 17 of the Complaint, Mattel admits that Ms. Barad resigned in February 2000.

18.   Answering paragraph 18 of the Complaint, Mattel admits that Robert Eckert became Chairman and Chief Executive Officer of Mattel in May 2000 and that Mr. Eckert previously was employed at Kraft Foods, Inc. for 23 years, is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the views of unnamed "[i]nvestors" and others, and denies the truth of the remaining allegations set forth in paragraph 18.

19.   Answering paragraph 19 of the Complaint, Mattel admits that the *Wall Street Journal* published an article on August 10, 2000 the content of which speaks for itself, and denies the truth of the remaining allegations set forth therein.

20.   Answering paragraph 20 of the Complaint, Mattel admits that it disposed of the Learning Company in October 2000, states that its sales and revenues speak for themselves, states that the remainder of the allegations contained therein are characterizations, not factual assertions, and therefore no response is necessary under Fed. R. Civ. P. 8(b) and, to the extent any further response is required, denies the truth of any remaining allegations set forth in paragraph 20.

2154363.2

-7-

EXHIBIT 108

SECOND AMENDED ANSWER AND COUNTERCLAIMS

PAGE 1033

1    21.    Answering paragraph 21 of the Complaint, Mattel admits that
2  products in plaintiff's "Bratz" line compete with products in Mattel's BARBIE and
3  other product lines and states that the remainder of the allegation contained
4  therein—consisting of a sentence fragment—is unintelligible and on that basis
5  denies the truth of any such remaining allegation set forth therein.
6    22.    Answering paragraph 22 of the Complaint, Mattel admits that
7  products in plaintiff's "Bratz" line compete with Mattel products, states that the
8  remainder of the allegations contained therein are characterizations, not factual
9  assertions, and that therefore no response is necessary under Fed. R. Civ. P. 8(b)
10  and, to the extent any further response is required, denies the truth of any remaining
11  allegations set forth therein.
12    23.    Answering paragraph 23 of the Complaint, Mattel states that
13  MGA has made conflicting statements, including in sworn statements, that are
14  inconsistent with the allegations set forth in paragraph 23 of the Complaint and
15  states that it is therefore without knowledge or information sufficient to form a
16  belief as to the truth or falsity of the allegations set forth therein and, on that basis,
17  denies them.
18    24.    Answering paragraph 24 of the Complaint, Mattel states that the
19  "look" of the referenced dolls speak for themselves and denies the truth of the
20  remaining allegations set forth therein.  By way of further answer, Mattel states that
21  the photographs and their accompanying caption on page 7 of the Complaint are
22  false and misleading to the extent they are intended to suggest that MGA has
23  produced or used a consistent packaging shape or look or that it has protectible
24  rights in the matters depicted in the photographs.
25    25.    Answering paragraph 25 of the Complaint, Mattel admits that
26  Bratz dolls are between approximately 9.5 to 10 inches in height, states that the
27  appearances of the dolls speak for themselves, denies that "Bratz" dolls are or "were
28  intentionally shorter" than dolls in Mattel's BARBIE line, denies that the "Bratz"

154363.2

-8-

EXHIBIT 168

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1634

1   dolls "looked like no other" and denies the truth of the remaining allegations set

2   forth in paragraph 25.

3           26.     Answering paragraph 26 of the Complaint, Mattel states that the

4   use of the term "classic" is unintelligible, since Mattel has designed and sold

5   different dolls using different heads and with different fashions and themes over the

6   years, and denies the truth of any remaining allegations.  By way of further answer,

7   Mattel states that the image encaptioned "Mattel's 'Barbie'" on page 8 of the

8   Complaint is misleading in that it depicts one of the doll heads that have been used

9   as part of the BARBIE line for many years, and therefore ignores that Mattel has

10  long designed and sold an array of different BARBIE line dolls that use different

11  doll heads, including doll heads which depict different ethnicities, and that are

12  dressed in different clothing and fashion styles.

13          27.     Answering paragraph 27 of the Complaint, Mattel admits that

14  MGA has used the line "The Girls With a Passion for Fashion" in some contexts,

15  denies that MGA originated or otherwise has rights to that phrase, admits that one

16  audience for products in the "Bratz" line has been "tweens" and denies the truth of

17  the remaining allegations set forth in paragraph 27.

18          28.     Answering paragraph 28 of the Complaint, Mattel admits that

19  certain "Bratz" dolls have won certain awards, the terms of which speak for

20  themselves, states that it is without knowledge or information sufficient to form a

21  belief as to the truth or falsity of the allegations regarding the "awards" MGA claims

22  and, on that basis, denies them, denies that plaintiff has protectible rights and denies

23  the truth of any remaining allegations set forth in paragraph 28.

24          29.     Answering paragraph 29 of the Complaint, Mattel admits that

25  dolls in the "Bratz" line compete with dolls in Mattel product lines, denies that

26  Mattel has or has ever had a "stranglehold" on any market, states that the market

27  allegations contained in paragraph 29 are vague and ambiguous, including without

28  limitation in that the allegations fail to specify what products among the parties'

1  respective lines are being referred to and what time period is being referred to, and

2  denies the truth of any remaining allegations set forth in paragraph 29.

3       30.    Answering paragraph 30 of the Complaint, Mattel admits that

4  MGA has been a licensee of Mattel, states that the market allegations are vague and

5  ambiguous, including without limitation in that the allegations fail to specify what

6  products are being referred to and what time periods or points in time are being

7  referred to, and states that the remainder of the allegations contained therein are

8  characterizations, not factual assertions, and therefore no response is necessary

9  under Fed. R. Civ. P. 8(b) and, to the extent any further response is required, denies

10  the truth of any remaining allegations set forth in paragraph 30.

11       31.    Answering paragraph 31 of the Complaint, Mattel states that the

12  allegations contained therein are characterizations, not factual assertions, and

13  therefore no response is necessary under Fed. R. Civ. P. 8(b) and, to the extent any

14  further response is required, denies the truth of the allegations set forth in paragraph

15  31.

16       32.    Answering paragraph 32 of the Complaint, Mattel denies the

17  truth of the allegations set forth therein.

18       33.    Answering paragraph 33 of the Complaint, Mattel denies the

19  truth of the allegations set forth therein.

20       34.    Answering paragraph 34 of the Complaint, Mattel states that it

21  has released various MY SCENE dolls, including MY SCENE dolls named

22  "Madison", "Chelsea" and "Barbie," states that the appearance of the Bratz and MY

23  SCENE dolls speak for themselves, denies that Mattel designed its MY SCENE

24  dolls to "evoke" or resemble the alleged "look" of "Bratz" dolls, denies that plaintiff

25  has protectible rights, states that MGA has made conflicting representations that are

26  at odds with the allegations of the Complaint and that it is therefore without

27  knowledge or information sufficient to form a belief as to the truth or falsity of the

28  allegations regarding the "launch" of Bratz dolls set forth therein and, on that basis,

-10-

EXHIBIT ___108___

PAGE ___1036___

1  denies them, and denies the truth of the remaining allegations set forth therein.  By

2  way of further answer, Mattel states that the photographs and their accompanying

3  captions on page 10 of the Complaint are misleading and false to the extent they are

4  intended to suggest that a particular Mattel doll has been changed over time as

5  purportedly depicted.  Among other things, Mattel has long designed and sold an

6  array of different BARBIE line dolls using different doll heads, and the photographs

7  encaptioned "Mattel's Traditional 'Barbie'" is one of the doll heads that has been

8  used, and continues to be used, as part of the BARBIE line.  In addition, the

9  photographs encaptioned MY SCENE doll "circa 2002" is, in fact, a Mattel doll

10  character called BARBIE that continues to be sold and/or marketed with that head,

11  and the photographs encaptioned MY SCENE doll "circa 2004" depict a MY

12  SCENE doll character separate and apart from the one depicted in the "circa 2002"

13  image (and is not a revised character as plaintiff apparently attempts to imply).

14        35.    Answering paragraph 35 of the Complaint, Mattel admits that

15  Mattel released a product line called FLAVAS, states that the appearance of the

16  FLAVAS dolls speaks for themselves, states that it is without knowledge or

17  information sufficient to form a belief as to the truth or falsity of the allegations

18  regarding the "rumor" relied upon by plaintiff and the undefined "media"

19  purportedly quoting Isaac Larian and, on that basis, denies them, denies that Mattel

20  has abandoned the FLAVAS line, and denies the truth of the remaining allegations

21  set forth in paragraph 35.

22        36.    Answering paragraph 36 of the Complaint, Mattel denies the

23  truth of the allegations set forth therein.

24        37.    Answering paragraph 37 of the Complaint, Mattel denies the

25  truth of the allegations set forth therein.  By way of further answer, Mattel states that

26  the unnumbered photographs and their accompanying captions on pages 11 through

27  16 of the Complaint -- which apparently were included to purportedly support the

28  allegation that MY SCENE dolls "became 'Bratz,'" which allegation Mattel

EXHIBIT _108_

2154363.2

-11-

1   specifically denies -- are false and misleading.  Among other things, the heads

2   depicted are among an array of different doll heads that Mattel has used, and

3   continues to use, over the course of many years.  Moreover, the images purport to

4   compare different Mattel doll lines to show alleged changes in appearance even

5   though, in fact, each of the heads are currently sold and/or marketed to the public.

6   The "Blonde" series of photographs encaptioned "original" and "recent" MY

7   SCENE is further and specifically misleading in that it purports to compare two

8   differently named and outfitted dolls in the MY SCENE doll line, both of which

9   continue to be sold and/or marketed.

10         38.    Answering paragraph 38 of the Complaint, Mattel states that the

11   phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,

12   denies that MGA was the originator of or the first to use the eye shape or makeup

13   depicted as purportedly constituting "the 'BRATZ' eye," denies that Mattel has

14   copied the "the 'BRATZ' eye" and denies the truth of the remaining allegations

15   contained in paragraph 38.  By way of further answer, Mattel states that the

16   unnumbered photographs and accompanying caption on page 13 of the Complaint

17   are false and misleading.  Among other things, the purported "Original Mattel 'My

18   Scene' Eye" is one of the eye and makeup designs that Mattel has used over the

19   course of many years, and Mattel continues to sell and/or market dolls using the eye

20   and makeup design depicted therein.

21         39.    Answering paragraph 39 of the Complaint, Mattel states that the

22   phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights therein,

23   denies that MGA was the originator of or the first to use the eye shape or makeup

24   purportedly described as constituting "the 'BRATZ' eye," denies that Mattel has

25   copied "the 'BRATZ' eye," states that the relevant dolls speak for themselves and

26   denies the truth of the remaining allegations contained in paragraph 39.  By way of

27   further answer, Mattel states that the unnumbered photographs and accompanying

28   captions on page 14 of the Complaint are false and misleading.  Among other things,

2154363.2

-12-

EXHIBIT ___168___

1   the purported "New Mattel 'My Scene' Eye" is one of the eye and makeup designs

2   that Mattel has used over the course of many years, and Mattel continues to sell

3   and/or market dolls using the eye and makeup design depicted on page 14 of the

4   Complaint.

5          40.    Answering paragraph 40 of the Complaint, Mattel denies the

6   truth of the allegations therein.  By way of further answer, Mattel states that the

7   unnumbered photographs and their accompanying captions on pages 15 to 16 are

8   false and misleading.  Among other things, the heads depicted are among an array of

9   different doll heads that Mattel has used, and continues to use, over the course of

10  many years.  Moreover, the photographs purport to compare different Mattel doll

11  lines to show alleged changes in appearance even though, in fact, each of the heads

12  are currently sold and/or marketed to the public.  The "Blonde" series of

13  photographs encaptioned "original" and "recent" MY SCENE is further and

14  specifically misleading in that it purports to compare two differently named and

15  outfitted dolls in the MY SCENE doll line, both of which continue to be sold and/or

16  marketed.

17         41.    Answering paragraph 41 of the Complaint, Mattel denies the

18  truth of the allegations set forth therein.

19         42.    Answering paragraph 42 of the Complaint, Mattel admits that the

20  photographs purport to depict two packages that were, among others, part of the MY

21  SCENE line, state that the packages speak for themselves and denies the truth of any

22  remaining allegations set forth therein.

23         43.    Answering paragraph 43 of the Complaint, Mattel admits that the

24  photograph purports to depict one of the packages that were, among others, part of

25  the MY SCENE line, states that the parties' packages speak for themselves, states

26  that MGA has failed to establish that it originated, or has protectible rights in, an

27  "open and transparent style" for packaging and denies the truth of the remaining

28  allegations set forth therein.

EXHIBIT ___ (°8

1        44.    Answering paragraph 44 of the Complaint, Mattel admits that

2 one photograph purports to depict one of the packages that were, among others, part

3 of the MY SCENE line, admits that the other photograph purports to depict one of

4 the packages that were, among others, used as part of the Bratz line, states that the

5 parties' packages speak for themselves, denies that MGA originated, or has

6 protectible rights in, "the 'BRATZ' packaging" or in the packaging depicted in the

7 Complaint and denies the truth of any remaining allegations set forth therein.

8        45.    Answering paragraph 45 of the Complaint, Mattel admits that

9 one photograph purports to depict one of the packages that were, among others, part

10 of the MY SCENE line, admits that the other photograph purports to depict one of

11 the packages that were, among others, used as part of the Bratz line, states that the

12 parties' packages speak for themselves, denies that MGA originated, or has

13 protectible rights in, the packaging depicted in the Complaint and denies the truth of

14 any remaining allegations set forth therein.

15        46.    Answering paragraph 46 of the Complaint, Mattel states that it

16 has utilized a wide variety of packaging styles and shapes over the years, states that

17 the relevant packaging speaks for itself, states that MGA lacks protectible rights in

18 "non-rectangular shaped box" packaging or in the other elements MGA claims in

19 paragraph 46, and denies the truth of the remaining allegations set forth therein.

20        47.    Answering paragraph 47 of the Complaint, Mattel denies that

21 any alleged "theme" is "MGA's theme," denies that MGA originated or has rights to

22 any theme and denies the truth of the remaining allegations set forth therein.

23        48.    Answering paragraph 48 of the Complaint, Mattel admits that it

24 released a doll called "Chillin Out!", states that it has released such themed dolls

25 over the course of many years, admits MGA released a "Wintertime Wonderland"

26 themed doll, denies that MGA originated or has rights to such theme, states that the

27 relevant products speak for themselves and denies the truth of the remaining

28 allegations set forth therein.

EXHIBIT 108

-14-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1040

1    49.    Answering paragraph 49 of the Complaint, Mattel admits that it

2    released a doll called "Night on the Town", states that it has released such themed

3    dolls over the course of many years, admits MGA released a "Formal Funk" themed

4    doll, denies that MGA originated or has rights to such theme, states that the relevant

5    products speak for themselves and denies the truth of the remaining allegations set

6    forth therein.

7    50.    Answering paragraph 50 of the Complaint, Mattel admits that it

8    released a doll called "Jammin' in Jamaica" and a playset called "Guava Gulch Tiki

9    Lounge", states that it has released such themed dolls and products over the course

10    of many years, admits that MGA released a "Sun-Kissed Summer" themed doll and

11    playset, denies that MGA originated or has rights to such theme, states that the

12    relevant products speak for themselves and denies the truth of the remaining

13    allegations set forth therein.

14    51.    Answering paragraph 51 of the Complaint, Mattel admits that it

15    has aired television commercials for its MY SCENE line, states that such

16    commercials speak for themselves, denies the truth of the remaining allegations set

17    forth therein and specifically denies that MGA was the originator of or has rights to

18    commercials "combining live action with animated sequences" set to "pop music

19    and lyrics".

20    52.    Answering paragraph 52 of the Complaint, Mattel denies the

21    truth of the allegations set forth therein.

22    53.    Answering paragraph 53 of the Complaint, Mattel admits that it

23    released a MY SCENE "Sound Lounge", admits that MGA released a product called

24    "Runway Disco", states that the relevant products speak for themselves, denies that

25    it "imitated MGA's trapezoidal box," denies that MGA has rights thereto, and

26    denies the truth of the remaining allegations set forth therein.

27    54.    Answering paragraph 54 of the Complaint, Mattel denies the

28    truth of the allegations set forth therein.

55.   Answering paragraph 55 of the Complaint, Mattel admits that, among the styling heads it has produced and sold over the course of many years, it released a MY SCENE styling head, admits that MGA released a styling head called "Funky Fashion Makeover Head", states that the relevant products speak for themselves, denies that MGA has protectible rights and denies the truth of the remaining allegations set forth in paragraph 55.

56.   Answering paragraph 56 of the Complaint, Mattel is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth therein because plaintiff fails to identify the alleged instances of confusion, including the source of the unidentified picture titled "Hairstyle practice", and on that basis, denies them, and denies the truth of any remaining allegations set forth in paragraph 56.

57.   Answering paragraph 57 of the Complaint, Mattel admits that it has aired television commercials for its MY SCENE line, states that such commercials speak for themselves and denies the truth of the remaining allegations set forth therein.

58.   Answering paragraph 58 of the Complaint, Mattel admits that MGA has used the line "The Girls With a Passion for Fashion" in some contexts, denies that MGA originated that phrase or otherwise has rights to it, states that Mattel's web site speaks for itself and denies the truth of the remaining allegations set forth therein.

59.   Answering paragraph 59 of the Complaint, Mattel admits that, among the plush products that it has produced and sold over the course of many years, it has released plush dogs as part of its MY SCENE "Miami Getaway" themed product line, states that Mattel has for many years sold plush pets of the type used with its MY SCENE dog, admits that MGA has released various Bratz pets, states that MGA was not the originator of and has no rights to the features and other

EXHIBIT 108

SECOND AMENDED ANSWER AND COUNTERCLAIMS
PAGE

1042

2154363.2