158.  In addition, Counter-defendants wrongfully converted Mattel's property by removing the Trade Secret Materials in electronic and paper form from Mattel's offices.  Counter-defendants did so without Mattel's permission and continue to possess them.

159.  As a direct and proximate result of Counter-defendants' wrongful conversion of Mattel property, including those relating to Bratz and Mattel's Trade Secret Materials, Mattel has incurred damages.  Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

160.   As a result of Counter-defendants' acts of conversion, Mattel is entitled to damages in an amount sufficient to indemnify Mattel for the loss suffered, which is not measured by the value of the property misappropriated, but includes the lost profits that Mattel suffered as a result of the conversion or, alternatively, the profits generated by the Counter-defendants that would not have been generated but for the conversion.  Only such a measure of damages would fully and fairly compensate Mattel for the injury it suffered due to Counter-defendants' acts of conversion.

161.  Counter-defendants performed the aforementioned conduct with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

162.  Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel is entitled to an order restraining Counter-defendants from further conversion of Mattel property and resources and/or restraining Counter-defendants from continuing to benefit from such conversion.

EXHIBIT ___ 108

PAGE ___ 1699                    -73-

2154363.2

1                                **Twelfth Counterclaim**

2                                **Unfair Competition**

3           **(Common Law and *Cal. Bus. & Prof. Code* § 17200)**

4               **(Against All Counter-defendants)**

5       163. Mattel repeats and realleges each and every allegation set forth in

6 paragraphs 1 through 162, above, as though fully set forth at length.

7       164. Section 17200 of the California Business and Professions Code

8 prohibits unfair competition, including "any unlawful, unfair or fraudulent business

9 act or practice . . . ."

10       165. By engaging in the foregoing conduct, Counter-defendants have,

11 individually and in combination, engaged in unlawful, unfair and/or fraudulent acts

12 of unfair competition in violation of both the common law of the state of California

13 and *Cal. Bus. & Prof. Code* § 17200 *et seq.* Such conduct included, without

14 limitation, MGA's commercial bribery of Bryant in violation of *Cal. Penal Code*

15 § 641.3 and misappropriation of trade secrets in violation of 18 U.S.C. § 1832(a).

16 Such conduct also included, without limitation, MGA's and Larian's disparagement

17 of Mattel's products and misrepresentations as alleged above.

18       166. As a result of the aforementioned conduct, Mattel has suffered

19 damages and will imminently suffer further damages, including but not limited to

20 lost profits in an amount to be proven at trial. No adequate remedy at law exists for

21 the wrongs and injuries Mattel has suffered and will continue to suffer, and Mattel

22 is entitled to an injunction enjoining Counter-defendants' continued wrongful acts.

23 Mattel is also entitled to recover compensatory and exemplary damages pursuant to

24 the doctrine of common law unfair competition and *Cal. Civ. Code* § 3294.

25

26 EXHIBIT ___10*f*___

27

28 PAGE ___1700___

-74-

141.  In taking the aforesaid actions, MGA, Larian and Does 4 through 10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

<u>**Ninth Counterclaim**</u>

**Breach of Duty of Loyalty**

**(Against Bryant and Machado)**

142.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 141, above, as though fully set forth at length.

143.  As employees of Mattel, Bryant and Machado owed a duty of undivided loyalty to Mattel.  Pursuant to this duty, Bryant and Machado could not compete with Mattel or assist a competitor of Mattel during their employment with Mattel.  Pursuant to this duty, Bryant and Machado were required to always give preference to Mattel's business over their own, similar interests during the course of their employment with Mattel.

144.  Bryant and Machado breached their duty of loyalty to Mattel in that, while employed by Mattel, they secretly aided, assisted and worked for a competitor of Mattel, including without limitation by entering into agreements with a Mattel competitor.  As alleged above, they also breached the aforementioned duty by using Mattel property and resources for the benefit of, and to aid and assist, themselves personally and the competitor of Mattel.

145.  As a direct and proximate result of Counter-defendants' wrongful conduct, Mattel has incurred damages in an amount to be determined at trial.

146.  Counter-defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to an award of punitive damages against Counter-defendants in an amount to be determined at trial.

2154363.2

EXHIBIT _108_

PAGE _1696_

-70-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1    147. Furthermore, Counter-defendants' conduct has caused, and unless

2    enjoined will continue to cause, irreparable injury to Mattel that cannot be

3    adequately compensated by money damages and for which Mattel has no adequate

4    remedy at law.  Accordingly, Mattel is entitled to an order restraining further

5    breach of Counter-defendants' duty of loyalty to Mattel and/or restraining Counter-

6    defendants from continuing to benefit from such breach.

7    148. In breaching their duty of loyalty to Mattel, Bryant and Machado

8    acted with malice, fraud and oppression, and in conscious disregard of Mattel's

9    rights.  Accordingly, Mattel is entitled to recover exemplary damages from

10   Counter-defendants in an amount to be determined at trial.

11   **Tenth Counterclaim**

12   **Aiding and Abetting Breach of Duty of Loyalty**

13   **(Against MGA, Larian and Does 4 through 10)**

14   149. Mattel repeats and realleges each and every allegation set forth in

15   paragraphs 1 through 148, above, as though fully set forth at length.

16   150. MGA, Larian and Does 4 through 10 knew that Bryant, as an

17   employee of Mattel, owed a duty of loyalty to his employer.  MGA, Làrian and

18   Does 4 through 10 knew that this duty included an obligation on the part of Bryant

19   not to compete with Mattel or assist a competitor of Mattel during the term of his

20   employment with Mattel.  MGA, Larian and Does 4 through 10 also knew that

21   Bryant was required to give preference to Mattel's business over his own, similar

22   interests or those of Mattel's competitors. or those of Mattel's competitors during

23   the course of his employment with Mattel.

24   151. MGA, Larian and Does 4 through 10 knew that the Mattel

25   Employees (excluding Bryant) were employed by Mattel, and, as employees of

26   Mattel, that they owed duties of loyalty to Mattel.  MGA, Larian and Does 4

27   through 10 knew that these duties included an obligation on the part of the Mattel

28

2154363.2

EXHIBIT _/U 8_     -71-

PAGE _/U97_

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  Employees (excluding Bryant) not to compete with Mattel or assist a competitor of

2  Mattel during their Mattel employment.

3       152.  Despite such knowledge, Counter-defendants MGA, Larian and

4  Does 4 through 10 intentionally and without justification solicited, encouraged,

5  aided and abetted and gave substantial assistance to the Mattel Employees to

6  breach their duties of loyalty to Mattel, knowing that their conduct would constitute

7  breaches of their duties of loyalty to Mattel.

8       153.  As a further consequence of Counter-defendants' efforts, Mattel

9  has suffered injury and is entitled to compensatory damages in an amount to be

10  proven at trial.

11       154.  In taking the aforesaid actions, MGA, Larian and Does 4 through

12  10 acted with malice, fraud and oppression, and in conscious disregard of Mattel's

13  rights.  Accordingly, Mattel is entitled to recover exemplary damages from

14  Counter-defendants in an amount to be determined at trial.

15  **Eleventh Counterclaim**

16  **Conversion**

17  **(Against All Counter-defendants)**

18       155.  Mattel repeats and realleges each and every allegation set forth in

19  paragraphs 1 through 154, above, as though fully set forth at length.

20       156.  Counter-defendants wrongfully converted Mattel property and

21  resources by appropriating and using them for their own benefit and gain and for

22  the benefit and gain of others, without the permission of Mattel.

23       157.  Mattel was entitled to, among other things, the exclusive right

24  and enjoyment in property and tangible materials owned by Mattel, including

25  without limitation such proper and materials that were created by Bryant while he

26  was a Mattel product designer.  Such property was taken by Bryant from Mattel to

27  further his own interests and, in at least some instances, provided by Bryant to

28  Larian and MGA in furtherance of the interests of Bryant, Larian and MGA.

2154363.2

EXHIBIT   108

PAGE   1698

-72-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

158.  In addition, Counter-defendants wrongfully converted Mattel's property by removing the Trade Secret Materials in electronic and paper form from Mattel's offices.  Counter-defendants did so without Mattel's permission and continue to possess them.

159.  As a direct and proximate result of Counter-defendants' wrongful conversion of Mattel property, including those relating to Bratz and Mattel's Trade Secret Materials, Mattel has incurred damages.  Mattel, therefore, is entitled to recover compensatory damages in an amount to be determined at trial.

160.   As a result of Counter-defendants' acts of conversion, Mattel is entitled to damages in an amount sufficient to indemnify Mattel for the loss suffered, which is not measured by the value of the property misappropriated, but includes the lost profits that Mattel suffered as a result of the conversion or, alternatively, the profits generated by the Counter-defendants that would not have been generated but for the conversion.  Only such a measure of damages would fully and fairly compensate Mattel for the injury it suffered due to Counter-defendants' acts of conversion.

161.  Counter-defendants performed the aforementioned conduct with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to recover exemplary damages from Counter-defendants in an amount to be determined at trial.

162.  Furthermore, Counter-defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel is entitled to an order restraining Counter-defendants from further conversion of Mattel property and resources and/or restraining Counter-defendants from continuing to benefit from such conversion.

EXHIBIT  _10 8_

2154363.2

PAGE  _1099_        -73-

**Twelfth Counterclaim**

**Unfair Competition**

**(Common Law and *Cal. Bus. & Prof. Code* § 17200)**

**(Against All Counter-defendants)**

163.  Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 162, above, as though fully set forth at length.

164.  Section 17200 of the California Business and Professions Code prohibits unfair competition, including "any unlawful, unfair or fraudulent business act or practice . . . ."

165.  By engaging in the foregoing conduct, Counter-defendants have, individually and in combination, engaged in unlawful, unfair and/or fraudulent acts of unfair competition in violation of both the common law of the state of California and *Cal. Bus. & Prof. Code* § 17200 *et seq.*  Such conduct included, without limitation, MGA's commercial bribery of Bryant in violation of *Cal. Penal Code* § 641.3 and misappropriation of trade secrets in violation of 18 U.S.C. § 1832(a).  Such conduct also included, without limitation, MGA's and Larian's disparagement of Mattel's products and misrepresentations as alleged above.

166.  As a result of the aforementioned conduct, Mattel has suffered damages and will imminently suffer further damages, including but not limited to lost profits in an amount to be proven at trial.  No adequate remedy at law exists for the wrongs and injuries Mattel has suffered and will continue to suffer, and Mattel is entitled to an injunction enjoining Counter-defendants' continued wrongful acts.  Mattel is also entitled to recover compensatory and exemplary damages pursuant to the doctrine of common law unfair competition and *Cal. Civ. Code* § 3294.

EXHIBIT _10f_

PAGE _1700_

SECOND AMENDED ANSWER AND COUNTERCLAIMS

**Thirteenth Counterclaim**

**Declaratory Relief**

**(Against All Counter-defendants)**

167.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 166, above, as though fully set forth at length.

168.   As shown in the foregoing paragraphs above, an actual controversy exists between Mattel and Counter-defendants regarding Counter-defendants' lack of ownership interests in Bratz and Mattel's rights in the same.

169.   Accordingly, Mattel seeks a declaration of the Court that Counter-defendants have no valid or protectable ownership rights or interests in Bratz, and that Mattel is the true owner of the same, and further seeks an accounting and imposition of a constructive trust over Bratz, including without limitation registrations and applications for registrations relating thereto made or filed by Counter-defendants and third parties, and over all revenues and other monies or benefits derived or obtained from MGA's and Bryant's purported ownership, use, sale, distribution and licensing of Bratz.

170.   Mattel seeks a declaration of the Court that any and all agreements between Bryant, on the one hand, and MGA, on the other hand, in which Bryant purports to assign to MGA any right, title or interests in any work that he conceived, created or reduced to practice while a Mattel employee, including but not limited to the Bratz designs, is void and of no effect, including without limitation because Bryant had previously assigned said right, title or interest to Mattel and because Mattel was otherwise the owner of said right, title or interest.

**Prayer for Relief**

WHEREFORE, Mattel respectfully requests judgment:

1.   For a declaration that Counter-defendants have no valid or protectable ownership interests or rights in Bratz designs and works conceived,

2154363.2

EXHIBIT _10 8_

PAGE _1701_

-75-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  created or reduced to practice by Bryant during the term of his Mattel employment

2  and/or by any others then-employed by Mattel, as well as in all derivatives

3  prepared therefrom, and that Mattel is the true owner of the foregoing;

4       2.    For a declaration that any agreement between Bryant, on the one

5  hand, and MGA or any person or entity, on the other hand, in which Bryant

6  purported to assign any right, title or interests in any work that he conceived,

7  created or reduced to practice while a Mattel employee, including but not limited to

8  the Bratz designs, is void and of no effect;

9       3.    For an Order enjoining and restraining Counter-defendants, their

10  agents, servants and employees, and all persons in active concert or participation

11  with them, from further wrongful conduct, including without limitation from

12  imitating, copying, distributing, importing, displaying, preparing derivatives from

13  and otherwise infringing Mattel's copyright-protected works;

14       4.    For an Order, pursuant to 17 U.S.C. § 503(a) and other

15  applicable law, impounding all of Counter-defendants' products and materials that

16  infringe Mattel's copyrights, as well as all plates, molds, matrices and other articles

17  by which copies of the works embodied in Mattel's copyrights may be reproduced

18  or otherwise infringed;

19       5.    For an Order mandating that Counter-defendants return to Mattel

20  all tangible items, documents, designs, diagrams, sketches or any other

21  memorialization of inventions created or reduced to practice during Bryant's

22  employment with Mattel as well as all Mattel property converted by Counter-

23  defendants;

24       6.    For an Order mandating specific performance by Bryant to

25  comply with and satisfy Bryant's contractual obligations to Mattel;

26       7.    That Mattel be awarded, and Counter-defendants be ordered to

27  disgorge, all payments, revenues, profits, monies and royalties and any other

28  benefits derived or obtained as a result of the conduct alleged herein, including

2154363.2

EXHIBIT _108_    -76-

PAGE _1702_    SECOND AMENDED ANSWER AND COUNTERCLAIMS

1  without limitation of all revenues and profits attributable to Counter-defendants'
2  infringement of Mattel's copyrights under 17 U.S.C. § 504;

3       8.  For an accounting of all profits, monies and/or royalties from the
4  exercise of ownership, use, distribution, sales and licensing of Bratz;

5       9.  For the imposition of a constructive trust over Bratz, including
6  without limitation registrations and applications for registrations relating thereto
7  made or filed by Counter-defendants and third parties, and all profits, monies,
8  royalties and any other benefits derived or obtained from Counter-defendant's
9  exercise of ownership, use, sale, distribution and licensing of Bratz;

10      10.  That Mattel recover its actual damages and lost profits;

11      11.  That Counter-defendants be ordered to pay exemplary damages
12  in a sum sufficient to punish and to make an example of them, and deter them and
13  others from similar wrongdoing;

14      12.  That Counter-defendants be ordered to pay treble its general and
15  special damages, plus interest, costs and attorney's fees incurred by reason of
16  Counter-defendants' violations of 18 U.S.C. §§ 1962(c)-(d).

17      13.  That Counter-defendants be ordered to pay double damages due
18  to their willful and malicious misappropriation of Mattel's trade secrets with
19  deliberate intent to injure Mattel's business and improve its own;

20      14.  That Counter-defendants pay to Mattel the full cost of this action
21  and Mattel's attorneys' and investigators' fees; and

26  EXHIBIT _/08_

27  PAGE _1703_

2154363.2

-77-

SECOND AMENDED ANSWER AND COUNTERCLAIMS

1        15.   That Mattel have such other and further relief as the Court may

2    deem just and proper.

3

4    DATED:  July 12, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

5

6                 By _____

7                 John B. Quinn
                  Attorneys for Defendant and Counter-
8                 claimant Mattel, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    EXHIBIT _108_

27    PAGE _1704_

28

154363.2

-78-
SECOND AMENDED ANSWER AND COUNTERCLAIMS

# DEMAND FOR JURY TRIAL

Mattel, Inc. respectfully requests a jury trial on all issues triable thereby.

DATED:  July 12, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _John Quinn /BP_

John B. Quinn
Attorneys for Defendant and Counter-claimant Mattel, Inc.

EXHIBIT _108_

PAGE _1705_

2154363.2

**Exhibit A**

EXHIBIT _108_

PAGE _1706_

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

1. **Provisions Related to Trade Secrets**
   (a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment by the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

   (b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

   (c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of of Proprietary Information.

   (d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

2. **Ownership of Inventions**
   (a) I agree to communicate to the Company as promptly and fully as practicable all inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

   (b) As used in this Agreement, the term "inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

   (c) Any provision in this agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

   (d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

3. **Conflicts with Other Activities**
   (a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

4. **Miscellaneous**
   (a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

   (b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

   (c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the Company.

   (d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company or to my employment for any particular term.

   (e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

   (f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

   (g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature: *Carter J. Bryant*

Employee Name (print): CARTER A. BRYANT

Date: 01/04/99

MATTEL, INC.
by: *Teresa Newcomb*
Signature

Name of Witness (print): TERESA NEWCOMB

EXHIBIT **108**

PAGE **1707**

EXHIBIT **A** PAGE **80**

M 0001622

**Exhibit  B**

EXHIBIT  108

PAGE  1708

# CONFLICT OF INTEREST QUESTIONNAIRE

_BRYANT, CARTER H._     _PROJECT DESIGNER_
Name (Last, First, M.I.)        Job Title                    Department

**Instructions:** The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**Mattel Supplier** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**Mattel Competitor** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**Interest** means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

**Recipient of any commission, etc.,** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

- YES  ☑NO  1. Have you owned, directly or indirectly, any interest in a Mattel supplier?
- YES  ☑NO  2. Have you owned, directly or indirectly, and interest in a Mattel competitor?
- YES  ☑NO  3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?
- ☑YES  NO  4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?
- ☑YES  NO  5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?
- YES  ☑NO  6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?
- YES  ☑NO  7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor?
- YES  ☑NO  8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?
- YES  ☑NO  9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

_4, 5, Freelance design + artwork in 1998,_
_from appx. 5/98 - 11/98 for the Ashton Drake galleries._

I certify that I have read Mattel's policies concerning Conflict of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged in any capacity which creates a Conflict of Interest.

_Carter H. Bryant_     _01/04/98_
Signature                                          Date

EXHIBIT _108_
PAGE _1709_

EXHIBIT _B_  PAGE _81_    M 0001621

EXHIBIT 109

1  THOMAS J. NOLAN (Bar No. 66992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California 90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:  (213) 687-5600
4  E-mail:     tnolan@skadden.com

5  RAOUL D. KENNEDY (Bar No. 40892)
   TIMOTHY A. MILLER (Bar No. 154744)
6  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   Four Embarcadero Center, 38th Floor
7  San Francisco, California 94111-5974
   Telephone:  (415) 984-6400
8  Facsimile:  (415) 984-2698
   E-mail:     rkennedy@skadden.com

9
10 Attorneys for Cross-Defendants
   MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
11 MGAE De Mexico, S.R.L. De C.V., and ISAAC LARIAN

12              UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14                    EASTERN DIVISION

15 CARTER BRYANT, an individual        )  CASE NO. CV 04-9049 SGL (RNBx)
                                       )
16              Plaintiff,             )  Consolidated with Case No. 04-9059
                                       )  and Case No. 05-2727
17      v.                             )
                                       )
18 MATTEL, INC., a Delaware            )  **DISCOVERY MATTER**
   corporation                         )
19                                     )  **MGA ENTERTAINMENT, INC.'S**
                Defendant.             )  **THIRD SUPPLEMENTAL**
20                                     )  **RESPONSES TO MATTEL, INC.'S**
   ────────────────────────────────   )  **AMENDED FOURTH SET OF**
21 Consolidated with MATTEL, INC. v.   )  **INTERROGATORIES**
   BRYANT and MGA                      )
22 ENTERTAINMENT, INC. v.              )
   MATTEL, INC.                        )
23                                     )
                                       )  **Phase 1:**
24 **CONFIDENTIAL – ATTORNEYS'**       )  Discovery Cut-Off:  January 28, 2008
   **EYES ONLY**                       )  Pre-Trial Conference: May 5, 2008
25                                     )  Trial Date:         May 27, 2008

26 PROPOUNDING PARTY:    MATTEL, INC. ("MATTEL")

27 RESPONDING PARTY:     MGA ENTERTAINMENT, INC.

28 SET NUMBER:           AMENDED FOURTH

---

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT _____ 109

PAGE _____ 1710

## PRELIMINARY STATEMENT

1
2          The General Response set forth herein applies to all responses that
3  MGA Entertainment, Inc. ("MGA") is providing in response to these interrogatories
4  (the "Interrogatories") or may in the future provide in response to any discovery
5  request in this action. The Response is made without waiving, or intending to waive
6  but, on the contrary, expressly reserving: (a) the right to object, on the grounds of
7  competency, privilege, relevancy or materiality, or any other proper grounds, to the
8  use of the Response, for any purpose in whole or in part, in any subsequent step or
9  proceeding in this action or any other action; (b) the right to object on any and all
10 grounds, at any time, to other interrogatories or other discovery procedures; and (c)
11 the right at any time to revise, correct, add to, or clarify any of the responses
12 propounded herein.

13          The Response reflects only the present state of MGA's discovery
14 regarding the information that Mattel seeks. Discovery for Phase Two and other
15 investigation or research concerning this litigation are continuing. It is anticipated
16 that further discovery, independent investigation, and legal research and analysis will
17 supply additional facts and meaning to the known facts, as well as establish entirely
18 new factual conclusions, all of which may lead MGA to discover other information
19 responsive to these Interrogatories. MGA therefore reserves the right to amend or
20 supplement this Response at any time in light of future investigation, research or
21 analysis, and also expressly reserves the right to rely on, at any time, including trial,
22 subsequently discovered information omitted from this Response as a result of
23 mistake, error, oversight or inadvertence. MGA does not hereby admit, adopt or
24 acquiesce in any factual or legal contention, assertion or characterization contained
25 in the Interrogatories or any particular request therein, even where MGA has not
26 otherwise objected to a particular interrogatory, or has agreed to provide information
27 responsive to a particular interrogatory.

28          No incidental or implied admissions are intended by this Response.

1

EXHIBIT _____ 109

PAGE _____ 1711

1  objectionable where they seek to require more of MGA than any obligation imposed
2  by the Federal Rules of Civil Procedure; subject MGA to unreasonable and undue
3  annoyance, oppression, burden, and expense; and/or seek to impose upon MGA an
4  obligation to investigate or discover information or materials from sources equally
5  accessible to Mattel.

6      5.      MGA objects to these Interrogatories to the extent they are
7  overbroad and unduly burdensome.

8      6.      MGA objects to the definitions and instructions to the extent such
9  definitions and instructions purport to enlarge, expand, or alter in any way the plain
10  meaning and scope of any specific term or specific interrogatories on the ground that
11  such enlargement, expansion, or alteration renders such a term or request vague,
12  ambiguous, unintelligible, overly broad, unduly burdensome, and/or uncertain.

13      7.      MGA objects to the terms YOU, YOUR, BRYANT, LARIAN,
14  MGA, MATTEL, AFFILIATES, PERSON, PERSONS, DESIGN, DESIGNS,
15  BRATZ, SOLD, SELL, SALE, BRATZ DOLL, BRATZ PRODUCT, BRATZ
16  MOVIE, BRATZ TELEVISION SHOW, BASED ON, and REFER OR RELATE
17  TO on the grounds that these terms render the interrogatories overbroad, unduly
18  burdensome, vague and ambiguous and to the extent that they could be read to call
19  for legal conclusions in responding to the interrogatories, including, by way of
20  example and without limitation, as follows:

21      (a)      MGA objects to the definition of the term "BRATZ"
22  (Definitions ¶ 9) as vague, ambiguous, overly broad and unduly burdensome, and
23  designed to mislead and confuse the trier of fact. The definition includes "any
24  project, product, doll or DESIGN ever known by [the Bratz] name (whether in whole
25  or in part and regardless of what such project, product or doll is or has been also,
26  previously or subsequently called) and any product, doll or DESIGN or any portion
27  thereof that is now or has ever been known as, or sold or marketed under, the name
28  or term 'Bratz' (whether in whole or in part and regardless of what such product, doll

3
MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

1 or DESIGN or portion thereof is or has been also, previously or subsequently called)

2 or that is now or has ever been sold or marketed as part of the 'Bratz' line, and each

3 version or iteration of such product, doll or DESIGN or any portion thereof," and it

4 goes on.  By incorporating the definition of DESIGN, the overly broad definition of

5 BRATZ includes two-dimensional and three-dimensional representations, including

6 "works, designs, artwork, sketches, drawings, illustrations, representations,

7 depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models,

8 samples, rotocasts, reductions to practice, developments, inventions and/or

9 improvements . . . ." (Definitions ¶ 8.)  These convoluted and multi-part definitions

10 combine to render the interrogatories vague, ambiguous and overly broad, and to

11 include within the term BRATZ things that do not fairly represent the Bratz line of

12 dolls, accessories and related products that are the subject of this case.  In responding

13 to these interrogatories, MGA will interpret the term BRATZ to mean the line of

14 dolls introduced by MGA to the market for sale in May or June of 2001 and

15 subsequent dolls, accessories and other products known as Bratz or associated by

16 MGA with the Bratz line of dolls;

17              (b)   MGA objects to the definition of the term "BRATZ

18 DOLL" (Definitions ¶ 12) as vague, ambiguous, overly broad and unduly

19 burdensome, and designed to mislead and confuse the trier of fact.  The definition

20 includes any doll that "REFERS OR RELATES TO BRATZ."  Mattel's definition of

21 the terms "BRATZ" and "REFERS OR RELATES" renders the definition of

22 "BRATZ DOLL" unintelligible because MGA cannot know, by way of example,

23 what dolls may "deal with, comment on, respond to, . . . or pertain" (Definitions ¶

24 17) to "BRATZ."  In responding to these interrogatories, MGA will interpret the

25 term "BRATZ DOLL" to mean the line of dolls introduced by MGA to the market

26 for sale in May or June of 2001 and subsequent dolls known as Bratz;

27              (c)    MGA objects to the definition of the term "BASED ON" as

28 vague, ambiguous, overly broad and unduly burdensome, and designed to mislead

4

1  and confuse the trier of fact.  The definition strays far from the English meaning of

2  "based on" by including terms loaded with legal significance in intellectual property

3  law, such as "substantially similar to," or "a derivative of."  In responding to these

4  interrogatories, MGA will not interpret the term "BASED ON," but rather will

5  respond using "based on" in its normal accepted meaning.

6         (d)    MGA objects to the terms "IDENTIFY" or "IDENTITY"

7  as overbroad, unduly burdensome, vague, ambiguous, and oppressive.  Mattel's

8  definition of these terms inherently call for answers to multiple discrete questions or

9  subparts to questions.  For example, when those terms are used to reference any

10  BRATZ PRODUCT, the use of those terms requests at least 6 different and distinct

11  facts: (a) the full name of the product; (b) the number of the product; (c) the SKU of

12  the number; (d) any other applicable designation of the product useful for

13  identification; (e) the period of time during which the product was, has been, or will

14  be sold; and (f) the identity of each person who has licensed from YOU the right to

15  sell such BRATZ PRODUCT.  Therefore, any interrogatory that includes or

16  incorporates the terms IDENTIFY or IDENTITY are necessarily compound and

17  should be posed as separate interrogatories.

18         (e)    MGA objects to the term "any" and "REFER OR RELATE

19  TO" on the grounds and to the extent that they are overbroad, unduly burdensome,

20  and/or are vague and ambiguous in the context of the interrogatories as written and

21  as those interrogatories would be plainly understood absent Mattel's definitions.

22         8.    MGA objects to these interrogatories to the extent that they may

23  unfairly seek to restrict the facts on which MGA may rely at trial.  Discovery has not

24  been completed and MGA is not yet necessarily in possession of all the facts and

25  documents upon which MGA intends to rely.  All of the responses submitted

26  herewith are tendered to Mattel with the reservation that the responses are submitted

27  without limiting the evidence on which MGA may rely to support the contentions

28  and defenses that MGA may assert at the trial of this action and to rebut or impeach

EXHIBIT _____ 109

PAGE _____ 1714

1 the contentions, assertions and evidence that Mattel may present. MGA reserves the
2 right to supplement or amend these responses at a future date.

3        9.    MGA objects to each interrogatory to the extent that it seeks
4 information that will be the subject of expert witness testimony and that is therefore
5 premature.

6       10.   In responding to these interrogatories, MGA has not and will not
7 comply with any instructions or definitions that seek to impose requirements in
8 addition to those imposed by the Federal Rules of Civil Procedure and any applicable
9 local rule, any orders entered by the Court in this Action, or other applicable law.

10      11.   Consistent with Rule 33(d) of the Federal Rules of Civil
11 Procedure, MGA objects to providing responses to interrogatories that can be
12 derived from documents that have or will be produced (when requested in
13 compliance with Rule 26) and where the burden to derive such information is
14 substantially the same for Mattel as it is for MGA.

15      12.   MGA objects to each interrogatory to the extent that it seeks the
16 disclosure of confidential, proprietary, or trade-secret information.

17      13.   MGA objects to each interrogatory to the extent that it calls for a
18 legal conclusion.

19      14.   MGA objects to several of those interrogatories that appear to be
20 directed at other parties to the litigation and not to MGA, given the nature of the
21 claims asserted against MGA in this case.

22      15.   MGA reserves the right to object on any ground at any time to
23 such other or supplemental discovery requests as Mattel may propound involving or
24 relating to the same subject matter of these interrogatories.

25      16.   To the extent MGA responds to an interrogatory, it does so
26 without waiving or intending to waive but rather, on the contrary, preserving and
27 intending to preserve, its contention that anything Mr. Bryant did on weekends,
28 evenings, vacation and any other time outside ordinary business hours was not done

1  while he was working for Mattel.  MGA's response may not be taken as an admission
2  that the information it provides in its response in any way reflects or evidences work
3  performed by Mr. Bryant while he was working for Mattel or that MGA adopts or
4  agrees with any fact or legal conclusion assumed, presumed or contained in Mattel's
5  interrogatory.
6          17.     MGA objects to each of Mattel's interrogatories because Mattel
7  has propounded more than 50 interrogatories, including discrete subparts.  Under
8  Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each
9  side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."
10          18.     MGA's responses are made based on its understanding and
11 interpretation of each interrogatory.  MGA reserves the right to supplement its
12 objections and responses should Mattel subsequently put forth an interpretation of
13 any interrogatory that differs from those of MGA.
14 **OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES**
15          Without waiving or departing from its General Response and General
16 Objections, and specifically incorporating them in its response to each Interrogatory
17 below, MGA makes the following additional objections and responses to specific
18 Interrogatories:
19 **INTERROGATORY NO. 42:**
20          State all facts that support YOUR contention, if YOU so contend, that
21 any BRATZ DOLLS are not BASED ON BRATZ DESIGNS created by BRYANT
22 on or before October 19, 2000, and IDENTIFY all PERSONS with knowledge of
23 such facts and all DOCUMENTS that REFER OR RELATE TO such facts.
24 **RESPONSE TO INTERROGATORY NO. 42:**
25          MGA incorporates by reference its General Response and General
26 Objections above, as though fully set forth herein and specifically incorporates
27 General Objection No. 7 (regarding Definitions), including without limitation
28 MGA's objection to the definition of the terms BASED ON, BRATZ DOLLS,

EXHIBIT _____ 109

PAGE _____ 1716

1   BRATZ, DESIGN, IDENTIFY and REFER OR RELATE TO, and further objects to

2   this interrogatory on the ground that it is overbroad, unduly burdensome, vague and

3   ambiguous.

4            MGA also objects to this interrogatory to the extent it seeks information

5   that is not subject to disclosure under any applicable privilege, doctrine or immunity,

6   including without limitation the attorney-client privilege, the work product doctrine,

7   the right of privacy, and all other privileges recognized under the constitutional,

8   statutory or decisional law of the United States of America, the State of California or

9   any other applicable jurisdiction. MGA objects to this interrogatory to the extent it

10  calls for a legal conclusion.

11           MGA further objects to this interrogatory on the ground that it is

12  premature because the invention, creation, conception, or reduction to practice of

13  Bratz (and other legal concepts that may be relevant) will be the subject of expert

14  testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the

15  expert testimony that MGA may seek to introduce at trial. MGA will identify its

16  experts and make related disclosures in accordance with the Court's orders and

17  applicable rules.

18           MGA further objects to this interrogatory on the grounds that it seeks

19  information that is not relevant to the claims or defenses of any party to the action

20  and is not reasonably calculated to lead to the discovery of admissible evidence

21  because the INVENTIONS AGREEMENT executed by Carter Bryant in or around

22  January 1999, purports to state that any inventions conceived or reduced to practice

23  by him during his employment with Mattel would be owned by Mattel. The

24  references to the conception and reduction to practice of an invention are terms of art

25  in patent law. Accordingly, copyright law principles of substantial similarity,

26  copying, and derivative works are not relevant to the INVENTIONS AGREEMENT

27  which, by its terms, involves only principles of patent law.

28           MGA further objects on the ground that this interrogatory is an

                                              8
MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT _____ 109

PAGE _____ 1717

1  overbroad and unduly burdensome contention interrogatory to the extent it asks for
2  "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*
3  *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery
4  requests seeking "all facts, documents, and witnesses that support the denial of a
5  statement or allegation of fact" because the "universe of potentially responsive
6  information is almost endless").

7         MGA further objects to the extent that this interrogatory seeks
8  information that is outside MGA's knowledge and is not in MGA's possession,
9  custody, or control.  In particular, MGA objects to this interrogatory to the extent
10  that it requests that MGA "state *all* facts … and IDENTIFY *all* PERSONS…and *all*
11  DOCUMENTS" (emphasis added).

12         MGA further objects to this interrogatory because Mattel has
13  propounded more than 50 interrogatories.  Under Judge Larson's order of February
14  22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-
15  04049-SGL and CV 05-02727].

16  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 42:**

17         MGA incorporates by reference its General Response and General
18  Objections above, as though fully set forth herein and specifically incorporates
19  General Objection No. 7 (regarding Definitions), including without limitation
20  MGA's objection to the definition of the terms BASED ON, BRATZ DOLLS,
21  BRATZ, DESIGN, IDENTIFY and REFER OR RELATE TO, and further objects to
22  this interrogatory on the ground that it is overbroad, unduly burdensome, vague and
23  ambiguous.

24         MGA also objects to this interrogatory to the extent it seeks information
25  that is not subject to disclosure under any applicable privilege, doctrine or immunity,
26  including without limitation the attorney-client privilege, the work product doctrine,
27  the right of privacy, and all other privileges recognized under the constitutional,
28  statutory or decisional law of the United States of America, the State of California or

9

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT ___109___

PAGE ___1710___

1   any other applicable jurisdiction. MGA objects to this interrogatory to the extent it
2   calls for a legal conclusion.

3          MGA further objects to this interrogatory on the ground that it is
4   premature because the invention, creation, conception, or reduction to practice of
5   Bratz (and other legal concepts that may be relevant) will be the subject of expert
6   testimony at trial. MGA objects to this interrogatory to the extent it seeks to limit the
7   expert testimony that MGA may seek to introduce at trial. MGA will identify its
8   experts and make related disclosures in accordance with the Court's orders and
9   applicable rules.

10          MGA further objects to this interrogatory on the grounds that it seeks
11   information that is not relevant to the claims or defenses of any party to the action
12   and is not reasonably calculated to lead to the discovery of admissible evidence
13   because the INVENTIONS AGREEMENT executed by Carter Bryant in or around
14   January 1999, purports to state that any inventions conceived or reduced to practice
15   by him during his employment with Mattel would be owned by Mattel. The
16   references to the conception and reduction to practice of an invention are terms of art
17   in patent law. Accordingly, copyright law principles of substantial similarity,
18   copying, and derivative works are not relevant to the INVENTIONS AGREEMENT
19   which, by its terms, involves only principles of patent law.

20          MGA further objects on the ground that this interrogatory is an
21   overbroad and unduly burdensome contention interrogatory to the extent it asks for
22   "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of
23   Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery
24   requests seeking "all facts, documents, and witnesses that support the denial of a
25   statement or allegation of fact" because the "universe of potentially responsive
26   information is almost endless").

27          MGA further objects to the extent that this interrogatory seeks
28   information that is outside MGA's knowledge and is not in MGA's possession,

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT _____ 109

PAGE _____ 1719

1  custody, or control.  In particular, MGA objects to this interrogatory to the extent
2  that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*
3  DOCUMENTS" (emphasis added).

4          Subject to and without waiving the foregoing objections, MGA
5  responds as follows:

6          Should there be a finding that any intellectual property rights associated
7  with the drawings completed by Carter Bryant in August or September, 1998, and/or
8  subsequent drawings, sketches, and/or representations that Bryant created prior to
9  October 4, 2000, are owned by Mattel, it is MGA's position that the first generation
10 of Bratz dolls, first "reduced to practice," and first expressed in a tangible medium,
11 after October 20, 2000, and all subsequent Bratz dolls, are not substantially similar
12 to, are not a copy of, and are not derivative of Carter Bryant's aforementioned works.

13         MGA further responds that said first generation of Bratz dolls differ
14 markedly and significantly from the drawings or designs completed by Carter Bryant
15 prior to October 19, 2000.  First, with respect to the three-dimensional "dummy" to
16 which Bryant referred at his deposition, it had no material resemblance to the first
17 generation of Bratz dolls.  Second, with respect to Carter Bryant's drawings, MGA
18 points out that two-dimensional drawings do not translate into three-dimensional
19 dolls without original, creative effort.  Third, there are recognizable and material
20 differences in the total overall look and feel of the first generation Bratz dolls
21 compared to Carter Bryant's drawings completed prior to October 21, 2000.  Fourth,
22 there are recognizable and material differences in individual elements of the first
23 generation Bratz dolls compared to Carter Bryant's drawings completed prior to
24 October 21, 2000, including, but not limited to, with respect to the following: hair
25 styles; hair colors; facial expression; depiction of noses; eye art; extent of detail of
26 eye art; lip art; eyebrow art; proportions of the bodies; posture; spatial arrangement
27 of hands; wrists and arms; and proportions and spatial arrangements of the eyes,
28 noses, and mouths.  Additional details regarding such differences will be the subject

EXHIBIT ___109___

PAGE ___1720___

1  of expert disclosures and will be provided at a later time.

2       With respect to any design relating to the Bratz concept that Carter
3  Bryant may have contributed after October 4, 2000 and before October 21, 2000, i.e.,
4  during a period that he was performing such services for MGA pursuant to a
5  freelance contract, MGA notes that any such design would have incorporated the
6  original and/or creative input of other artists working for or on behalf of MGA on the
7  Bratz concept, which was owned by MGA as a consequence of the October 4, 2000
8  transfer of rights from Bryant to MGA.  In addition, the first generation of Bratz
9  dolls, and all subsequent Bratz dolls, are not substantially similar to, derivative of,
10  and/or a copy of any work performed or created by Carter Bryant from October 4-
11  October 20, 2000.

12       The following persons have knowledge of said facts: Isaac Larian;
13  Carter Bryant; Margaret Leahy; Veronica Marlow; Anna Rhee; Mercedeh Ward;
14  Sarah Halpern; Paula Treantafelles (Garcia); Steve Tarmichael; Rebecca Harris;
15  Cecilia Kwok; David Dees; Jesse Ramirez; and Samuel Wong.

16       The following documents may be relevant to these facts:  all
17  DOCUMENTS that refer to or evidence the work performed by MGA employees
18  and freelancers toward the reduction to practice of the first generation of Bratz dolls
19  during the period after October 20, 2000 through June 1, 2001, including but not
20  limited to: Carter Bryant's drawings; the Bratz dolls; My Scene dolls;
21  DOCUMENTS evidencing the development of the first generation of Bratz dolls by
22  employees and freelance artists working for MGA; and invoices submitted by
23  freelancers for work performed on the Bratz Project.  The documents evidencing this
24  work are too numerous to identify individually.

25  **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 42:**

26       MGA incorporates by reference its General Response and General
27  Objections above, as though fully set forth herein and specifically incorporates
28  General Objection No. 7 (regarding Definitions), including without limitation

EXHIBIT _109_

PAGE _1721_

1   MGA's objection to the definition of the terms BASED ON, BRATZ DOLLS,
2   BRATZ, DESIGN, IDENTIFY and REFER OR RELATE TO, and further objects to
3   this interrogatory on the ground that it is overbroad, unduly burdensome, vague and
4   ambiguous.
5          MGA also objects to this interrogatory to the extent it seeks information
6   that is not subject to disclosure under any applicable privilege, doctrine or immunity,
7   including without limitation the attorney-client privilege, the work product doctrine,
8   the right of privacy, and all other privileges recognized under the constitutional,
9   statutory or decisional law of the United States of America, the State of California or
10  any other applicable jurisdiction.  MGA objects to this interrogatory to the extent it
11  calls for a legal conclusion.
12         MGA further objects to this interrogatory on the ground that it is
13  premature because the invention, creation, conception, or reduction to practice of
14  Bratz (and other legal concepts that may be relevant) will be the subject of expert
15  testimony at trial.  MGA objects to this interrogatory to the extent it seeks to limit the
16  expert testimony that MGA may seek to introduce at trial.  MGA will identify its
17  experts and make related disclosures in accordance with the Court's orders and
18  applicable rules.
19         MGA further objects to this interrogatory on the grounds that it seeks
20  information that is not relevant to the claims or defenses of any party to the action
21  and is not reasonably calculated to lead to the discovery of admissible evidence
22  because the INVENTIONS AGREEMENT executed by Carter Bryant in or around
23  January 1999, purports to state that any inventions conceived or reduced to practice
24  by him during his employment with Mattel would be owned by Mattel.  The
25  references to the conception and reduction to practice of an invention are terms of art
26  in patent law.  Accordingly, copyright law principles of substantial similarity,
27  copying, and derivative works are not relevant to the INVENTIONS AGREEMENT
28  which, by its terms, involves only principles of patent law.

13

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT ___109___

PAGE ___1722___

1    MGA further objects on the ground that this interrogatory is an

2 overbroad and unduly burdensome contention interrogatory to the extent it asks for

3 "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*

4 *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery

5 requests seeking "all facts, documents, and witnesses that support the denial of a

6 statement or allegation of fact" because the "universe of potentially responsive

7 information is almost endless").

8    MGA further objects to the extent that this interrogatory seeks

9 information that is outside MGA's knowledge and is not in MGA's possession,

10 custody, or control. In particular, MGA objects to this interrogatory to the extent

11 that it requests that MGA "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*

12 DOCUMENTS" (emphasis added).

13    MGA objects to the interrogatory on the ground that it is compound and

14 therefore Mattel has propounded more than 50 interrogatories, including discrete

15 subparts, in violation of Judge Larson's order of February 22, 2007, that

16 "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-

17 SGL and CV 05-02727]." In its supplemental response to this interrogatory, MGA

18 did not refuse to answer the interrogatory based on the 50-interrogatory limit, but

19 rather refused to use the compound and misleading defined terms that permeate

20 Mattel's interrogatories. The interrogatories attempt to use misleading and unfair

21 definitions to create jury confusion or to circumvent 50-interrogatory limit. For

22 example, Mattel's definition of "BRATZ INVENTION" contains ten separate

23 component parts ("representation, idea, concept, work, process, procedure, plan,

24 improvement, DESIGN or other development"). The incorporation of the defined

25 term "DESIGN" adds at least another 21 elements ("all works, designs, artwork,

26 sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

27 diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

28 practice, developments, inventions and/or improvements"). The inclusion of these

14

EXHIBIT _____109_____

PAGE____1723____

1  disparate concepts in the term "invention" improperly conflates distinct issues of

2  patent law, copyright protection, trade secret law and the common law protecting

3  original ideas, many of which have no place in the ordinary usage of the term

4  "invention."  In its previous supplemental responses, MGA used the word

5  "invention" in its ordinary usage, and does so again in these second supplemental

6  responses.  During the meet and confer process regarding MGA's supplemental

7  responses, Mattel's counsel objected to MGA's responses, and argued that MGA

8  must either use Mattel's distorted definitions or respond to each of the many

9  component parts of Mattel's defined terms.  As was made clear during the meet and

10  confer process and as more fully set forth in MGA's Opposition to Mattel, Inc.'s

11  Motion To Compel Responses To Interrogatories (Nos. 27, 28, 29, 30, 31, 32, 33, 34,

12  35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 46, 47, 48, 49 and 50) By The MGA Parties,

13  MGA objects to this interrogatory as compound and a violation of the 50-

14  interrogatory limit to the extent that Mattel continues to assert that MGA is required

15  to respond to each component part of Mattel's defined terms.

16         Subject to and without waiving the foregoing objections, MGA provides

17  its Second Supplemental Response as follows:

18         MGA contends that, applying the generally-accepted definitions of the

19  words "based on" and "design", neither the first generation of Bratz dolls nor any

20  subsequent Bratz products were based on any Carter Bryant designs created on or

21  before October 19, 2000.  MGA further contends that even if MGA applies Mattel's

22  misleading definitions of "BASED ON" and "DESIGN," neither the first generation

23  of Bratz dolls nor any of subsequent Bratz products were "BASED ON" any Carter

24  Bryant "DESIGNS" created on or before October 19, 2000.  MGA further contends

25  that the first generation of Bratz dolls (and subsequent Bratz products) were

26  "conceived of" and "reduced to practice" for purposes of design patent law, and first

27  expressed in a tangible medium for purposes of copyright law, after October 20,

28  2000, as a result of original, creative efforts of artists employed by, or working on

15

EXHIBIT _____ 109

PAGE _____ 1724

1 behalf of, MGA.  All first-generation Bratz dolls and subsequent Bratz products are
2 not substantially similar to, are not a copy of, and are not derivative of, any Carter
3 Bryant designs completed on or before October 19, 2000.

4       To the extent that Mattel argues that the shapes of characters in Carter
5 Bryant's drawings that he called "Bratz" (including, but not limited to, those
6 drawings identified by Carter Bryant in Exhibit 5 of his deposition as being sketched
7 in August 1998) represented a conception of what could have later become a three-
8 dimensional object that could have been the subject of a design patent, MGA
9 contends as follows:

10       Carter Bryant was not a sculptor, and any effort to translate his pre-1999
11 two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt
12 would have produced shapes that were different from the actual shape of the final
13 three-dimensional Bratz sculpt used in manufacturing the first generation of Bratz
14 dolls released on the market by MGA in or about June 2001.  Also, different sculpt
15 artists would have created different sculpts – Bryant's two-dimensional drawings did
16 not dictate a specific three-dimensional object.  The shapes of the characters in
17 Bryant's drawings bear little resemblance to the final shape of the actual Bratz dolls.
18 Differences between the drawings and the final shape of the actual Bratz dolls
19 include, but are not limited to, the following:  posture; hip-to-waist ratio; feet size
20 (dolls' feet are not as exaggerated as characters' feet in the drawings); head size
21 (dolls' heads are proportionally smaller than characters' heads in the drawings); eyes
22 (dolls' eyes are more open than characters' eyes in the drawings); other facial features
23 including lips, cheek bones, chin and forehead.

24       Moreover, the final physical shape of the first generation of Bratz dolls,
25 released on the market by MGA in or about June 2001, was conceived of by
26 Margaret Leahy, working on behalf of MGA, along with other MGA agents and
27 employees such as employees in Hong Kong and Mercedeh Ward.  The conception
28 of this physical shape was completed on or after October 20, 2000, and reduced to

16

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT ____109____

PAGE ____1725____

1   practice no earlier than December 19, 2000.

2        Copyright infringement analysis under Ninth Circuit law requires that
3   "objective" or "extrinsic" elements that are "scènes-à-faire" in the public domain, or
4   public domain materials that Bryant was aware of and that directly or indirectly
5   influenced him in developing his concept for a new line of fashion dolls, be filtered
6   out of the subject works, and, thereafter, that the remaining "subjective" or
7   "intrinsic" elements be evaluated for substantial similarity.  Carter Bryant's 1998
8   drawings contain many elements that must be filtered out, including but not limited
9   to the oversized head, eyes, lips, and feet of the figures in Bryant's drawings and the
10  stock model and/or doll poses.  A non-exhaustive list of examples of prior existing
11  works that incorporate such elements includes the following:  sources of inspiration
12  specifically identified by Carter Bryant, including Steve Madden advertisements and
13  Paris Blues advertisements, which were highly visible in 1998 (various Steve
14  Madden advertisements also served as a key inspiration for Mattel's own "Toon
15  Teens" dolls); Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and Barbie
16  dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little Miss No
17  Name; Hello Kitty; Coca-Cola advertisements; anime, including, e.g., Sailor Moon;
18  and manga.

19       Once all of the materials that directly or indirectly influenced Bryant
20  and all "scène-à-faire" features are eliminated from the analysis, the first generation
21  Bratz dolls (and all subsequent Bratz products) are readily seen as not substantially
22  similar to Carter Bryant's 1998 drawings.  The differences between the drawings and
23  the first generation Bratz dolls include, but are not limited to, the following:

24      • Posture

25      • Hip-to-waist ratio

26      • Feet size (dolls' feet are not as exaggerated as characters' feet in
27        the drawings)

28      • Head size (dolls' heads are proportionally smaller than characters'

17

EXHIBIT _____ 109

PAGE _____ 1726

heads in the drawings)

- Eyes (dolls' eyes are more open than characters' eyes in the
  drawings)
- Eye to lips ratio (lips of characters in drawings are proportionally
  larger relative to eyes than are lips of dolls)
- Hair (characters in drawings have much edgier hairstyles than the
  dolls do)
- Shapes of eyes and eye design
- Shapes of lips
- Overall look and feel (dolls are overall softer, less extreme than
  drawings)

That the dolls and the drawings are not substantially similar also is
consistent with the fact that Carter Bryant was not a sculptor, and, as discussed
above, any effort to translate his pre-1999 two-dimensional flat art into a three-
dimensional form for use as a fashion doll sculpt would have produced shapes that
were different from the actual shape of the final three-dimensional Bratz sculpt used
in manufacturing the first generation of Bratz dolls released on the market by MGA
in or about June 2001. Indeed, a team of highly-skilled artists (including several that
had been used by Mattel) spent months developing the Bratz first-generation dolls—
valuable time and original creative effort that would not have been necessary if said
first-generation Bratz dolls were simply a copy of Bryant's designs.

The absence of substantial similarity is further shown in the close
correlation between Bryant's drawings and the inspiration he points to, including but
not limited to the Steve Madden and Paris Blues advertisements in the August 1998
issue of *Seventeen Magazine*, as well as other advertisements in that issue, such as
the Coca Cola advertisement.

Mattel's own My Scene Barbie line of dolls provides further proof that
the first generation of Bratz dolls was not substantially similar to the Bryant

18

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT _____ 109

PAGE _____ 1727

1  drawings, in that (i) Mattel asserts that the My Scene Barbie dolls are independent
2  works of art, not copied from Bratz, yet (ii) said dolls are far closer in appearance to
3  Bratz dolls than are Bryant's two-dimensional drawings.

4          Additional details regarding such differences will be the subject of
5  expert disclosures and will be provided in accordance with the Court's schedule for
6  expert discovery.

7          With respect to any Carter Bryant contribution to the first generation
8  Bratz product after October 4, 2000 and before October 21, 2000, i.e., during a
9  period that he was performing such services for MGA pursuant to a freelance
10 contract while completing a two-week end-of-employment notice period at Mattel,
11 MGA notes that any such contribution was far outweighed by the original and/or
12 creative input of other artists working for or on behalf of MGA on the Bratz concept,
13 which was owned by MGA as a consequence of the October 4, 2000 transfer of
14 rights from Bryant to MGA.

15         With respect to Bratz two-dimensional character art utilized on, for
16 example, Bratz product packaging and licensed products, while the initial Bratz
17 character art was derivative of Bryant's initial sketches from 1998, by no later than
18 August, 2003, the Bratz character art had changed sufficiently such that it was no
19 longer derivative of Bryant's sketches.

20         The following persons have knowledge of facts and circumstances
21 surrounding the foregoing: Isaac Larian; Carter Bryant; Margaret Leahy; Veronica
22 Marlow; Mercedeh Ward; Sarah Halpern; Paula Garcia; Steve Tarmichael; Rebecca
23 Harris; Tina Tomiyama; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel Wong;
24 Lily Martinez; Ei Akiko Fong; John Steven Baulch; Aileen Storer; Debora
25 Middleton; Ronan Spelman; Charlotte Broussard.

26         The following documents may be relevant to the foregoing: all
27 DOCUMENTS that refer to or evidence the work performed by MGA employees
28 and freelancers toward the reduction to practice of the first generation of Bratz dolls

19

EXHIBIT ____109____

PAGE ____1728____

1 during the period after October 20, 2000 through June 1, 2001, including but not
2 limited to:  Carter Bryant's drawings; documents and tangible things produced by
3 Margaret Leahy; tangible things produced by Veronica Marlow; invoices submitted
4 by employees and/or freelance artists working for MGA for work performed on the
5 Bratz project; all DOCUMENTS that constitute samples of the following items in the
6 public domain in 1998: Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and
7 Barbie dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little
8 Miss No Name; Hello Kitty; anime, including, e.g., Sailor Moon; manga; Coca-Cola
9 advertisements; Steve Madden advertisements; and Paris Blues advertisements;
10 Bratz prototypes, samples, sculpts, and rotocasts found in Hong Kong and produced
11 to Mattel.  The documents evidencing this work are too numerous to identify
12 individually.

13 **THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 42:**

14          MGA incorporates by reference its General Response and General
15 Objections above, as though fully set forth herein and specifically incorporates
16 General Objection No. 7 (regarding Definitions), including without limitation
17 MGA's objection to the definition of the terms BASED ON, BRATZ DOLLS,
18 BRATZ, DESIGN, IDENTIFY and REFER OR RELATE TO, and further objects to
19 this interrogatory on the ground that it is overbroad, unduly burdensome, vague and
20 ambiguous.

21          MGA also objects to this interrogatory to the extent it seeks information
22 that is not subject to disclosure under any applicable privilege, doctrine or immunity,
23 including without limitation the attorney-client privilege, the work product doctrine,
24 the right of privacy, and all other privileges recognized under the constitutional,
25 statutory or decisional law of the United States of America, the State of California or
26 any other applicable jurisdiction.  MGA objects to this interrogatory to the extent it
27 calls for a legal conclusion.

28          MGA further objects to this interrogatory on the ground that it is

20

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT ___109___

PAGE ___1729___

1  premature because the invention, creation, conception, or reduction to practice of
2  Bratz (and other legal concepts that may be relevant) will be the subject of expert
3  testimony at trial.  MGA objects to this interrogatory to the extent it seeks to limit the
4  expert testimony that MGA may seek to introduce at trial.  MGA will identify its
5  experts and make related disclosures in accordance with the Court's orders and
6  applicable rules.

7      MGA further objects to this interrogatory on the grounds that it seeks
8  information that is not relevant to the claims or defenses of any party to the action
9  and is not reasonably calculated to lead to the discovery of admissible evidence
10 because the INVENTIONS AGREEMENT executed by Carter Bryant in or around
11 January 1999, purports to state that any inventions conceived or reduced to practice
12 by him during his employment with Mattel would be owned by Mattel.  The
13 references to the conception and reduction to practice of an invention are terms of art
14 in patent law.  Accordingly, copyright law principles of substantial similarity,
15 copying, and derivative works are not relevant to the INVENTIONS AGREEMENT
16 which, by its terms, involves only principles of patent law.

17     MGA further objects on the ground that this interrogatory is an
18 overbroad and unduly burdensome contention interrogatory to the extent it asks for
19 "all facts" which supports the denial of a statement or allegation.  *See e.g., Safeco of*
20 *Am. v. Rawstron,* 181 F.R.D. 441, 447-48 (C.D. Cal. 1998) (rejecting discovery
21 requests seeking "all facts, documents, and witnesses that support the denial of a
22 statement or allegation of fact" because the "universe of potentially responsive
23 information is almost endless").

24     MGA further objects to the extent that this interrogatory seeks
25 information that is outside MGA's knowledge and is not in MGA's possession,
26 custody, or control.  In particular, MGA objects to this interrogatory to the extent
27 that it requests that MGA "state *all* facts … and IDENTIFY *all* PERSONS … and *all*
28 DOCUMENTS" (emphasis added).

EXHIBIT _____ 109

PAGE _____ 1730

1          MGA objects to the interrogatory on the ground that it is compound and

2  therefore Mattel has propounded more than 50 interrogatories, including discrete

3  subparts, in violation of Judge Larson's order of February 22, 2007, that

4  "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-

5  SGL and CV 05-02727]."  In its supplemental response to this interrogatory, MGA

6  did not refuse to answer the interrogatory based on the 50-interrogatory limit, but

7  rather refused to use the compound and misleading defined terms that permeate

8  Mattel's interrogatories.  The interrogatories attempt to use misleading and unfair

9  definitions to create jury confusion or to circumvent the 50-interrogatory limit.  For

10  example, Mattel's definition of "BRATZ INVENTION" contains ten separate

11  component parts ("representation, idea, concept, work, process, procedure, plan,

12  improvement, DESIGN or other development").  The incorporation of the defined

13  term "DESIGN" adds at least another 21 elements ("all works, designs, artwork,

14  sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

15  diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

16  practice, developments, inventions and/or improvements").  The inclusion of these

17  disparate concepts in the term "invention" improperly conflates distinct issues of

18  patent law, copyright protection, trade secret law and the common law protecting

19  original ideas, many of which have no place in the ordinary usage of the term

20  "invention."  In its previous supplemental responses, MGA used the word

21  "invention" in its ordinary usage, and does so again in these third supplemental

22  responses.  During the meet and confer process regarding MGA's supplemental

23  responses, Mattel's counsel objected to MGA's responses, and argued that MGA

24  must either use Mattel's distorted definitions or respond to each of the many

25  component parts of Mattel's defined terms.  As was made clear during the meet and

26  confer process and as more fully set forth in MGA's Opposition to Mattel, Inc.'s

27  Motion To Compel Responses To Interrogatories (Nos. 27, 28, 29, 30, 31, 32, 33, 34,

28  35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 46, 47, 48, 49 and 50) By The MGA Parties,

EXHIBIT _____ 109

PAGE _____ 1731

1  MGA objects to this interrogatory as compound and a violation of the 50-

2  interrogatory limit to the extent that Mattel continues to assert that MGA is required

3  to respond to each component part of Mattel's defined terms.

4          Subject to and without waiving the foregoing objections, MGA provides

5  its Third Supplemental Response as follows:

6          MGA contends that, applying the generally-accepted definitions of the

7  words "based on" and "design", neither the first generation of Bratz dolls nor any

8  subsequent Bratz products were based on any Carter Bryant designs created on or

9  before October 19, 2000.  MGA further contends that even if MGA applies Mattel's

10  misleading definitions of "BASED ON" and "DESIGN," neither the first generation

11  of Bratz dolls nor any of the subsequent Bratz products were "BASED ON" any

12  Carter Bryant "DESIGNS" created on or before October 19, 2000.  MGA further

13  contends that the first generation of Bratz dolls (and subsequent Bratz products) were

14  "conceived of" and "reduced to practice" for purposes of design patent law, and first

15  expressed in a tangible medium for purposes of copyright law, after October 20,

16  2000, as a result of original, creative efforts of artists employed by, or working on

17  behalf of, MGA.  All first-generation Bratz dolls and subsequent Bratz products are

18  not substantially similar to, are not a copy of, and are not derivative of, any Carter

19  Bryant designs completed on or before October 19, 2000.

20          To the extent that Mattel argues that the shapes of characters in Carter

21  Bryant's drawings that he called "Bratz" (including, but not limited to, those

22  drawings identified by Carter Bryant in Exhibit 5 of his deposition as being sketched

23  in August 1998) represented a conception of what could have later become a three-

24  dimensional object that could have been the subject of a design patent, MGA

25  contends as follows:

26          Carter Bryant was not a sculptor, and any effort to translate his pre-1999

27  two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt

28  would have produced shapes that were different from the actual shape of the final

23

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT _____109_____

PAGE _____1732_____

1   three-dimensional Bratz sculpt used in manufacturing the first generation of Bratz

2   dolls released on the market by MGA in or about June 2001.  Also, different sculpt

3   artists would have created different sculpts – Bryant's two-dimensional drawings did

4   not dictate a specific three-dimensional object.  The shapes of the characters in

5   Bryant's drawings bear little resemblance to the final shape of the actual Bratz dolls.

6   Differences between the drawings and the final shape of the actual Bratz dolls

7   include, but are not limited to, the following:  posture; hip-to-waist ratio; feet size

8   (dolls' feet are not as exaggerated as characters' feet in the drawings); head size

9   (dolls' heads are proportionally smaller than characters' heads in the drawings); eyes

10  (dolls' eyes are more open than characters' eyes in the drawings); removable hair (a

11  feature present only in the drawings); other facial features including lips, cheek

12  bones, chin and forehead.

13         Moreover, the final physical shape of the first generation of Bratz dolls,

14  released on the market by MGA in or about June 2001, was conceived of by

15  Margaret Leahy, working on behalf of MGA, along with other MGA agents and

16  employees such as employees in Hong Kong and Mercedeh Ward.  The conception

17  of this physical shape was completed on or after October 20, 2000, and reduced to

18  practice no earlier than December 19, 2000.

19         Copyright infringement analysis under Ninth Circuit law requires that

20  "objective" or "extrinsic" elements that are "scènes-à-faire" in the public domain, or

21  public domain materials that Bryant was aware of and that directly or indirectly

22  influenced him in developing his concept for a new line of fashion dolls, be filtered

23  out of the subject works, and, thereafter, that the remaining "subjective" or

24  "intrinsic" elements be evaluated for substantial similarity.  Carter Bryant's 1998

25  drawings contain many elements that must be filtered out, including but not limited

26  to the oversized head, eyes, lips, and feet of the figures in Bryant's drawings and the

27  stock model and/or doll poses.  A non-exhaustive list of examples of prior existing

28  works that incorporate such elements includes the following:  sources of inspiration

24

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT _____ 109

PAGE _____ 1733

1   specifically identified by Carter Bryant, including Steve Madden advertisements and

2   Paris Blues advertisements, which were highly visible in 1998 (various Steve

3   Madden advertisements also served as a key inspiration for Mattel's own "Toon

4   Teens" dolls); Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and Barbie

5   dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little Miss No

6   Name; Hello Kitty; Coca-Cola advertisements; anime, including, e.g., Sailor Moon;

7   and manga.

8          Once all of the materials that directly or indirectly influenced Bryant

9   and all "scène-à-faire" features are eliminated from the analysis, the first generation

10  Bratz dolls (and all subsequent Bratz products) are readily seen as not substantially

11  similar to Carter Bryant's 1998 drawings.  The differences between the drawings and

12  the first generation Bratz dolls include, but are not limited to, the following:

13          • Posture

14          • Hip-to-waist ratio

15          • Feet size (dolls' feet are not as exaggerated as characters' feet in

16            the drawings)

17          • Head size (dolls' heads are proportionally smaller than characters'

18            heads in the drawings)

19          • Eyes (dolls' eyes are more open than characters' eyes in the

20            drawings)

21          • Eye to lips ratio (lips of characters in drawings are proportionally

22            larger relative to eyes than are lips of dolls)

23          • Hair (characters in drawings have much edgier hairstyles than the

24            dolls do; unlike the drawings, the dolls' hair is not removable)

25          • Shapes of eyes and eye design

26          • Shapes of lips

27          • Overall look and feel (dolls are overall softer, less extreme than

28            drawings)

25

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT _____109

PAGE ____1734

1    That the dolls and the drawings are not substantially similar also is
2  consistent with the fact that Carter Bryant was not a sculptor, and, as discussed
3  above, any effort to translate his pre-1999 two-dimensional flat art into a three-
4  dimensional form for use as a fashion doll sculpt would have produced shapes that
5  were different from the actual shape of the final three-dimensional Bratz sculpt used
6  in manufacturing the first generation of Bratz dolls released on the market by MGA
7  in or about June 2001. Indeed, a team of highly-skilled artists (including several that
8  had been used by Mattel and other toy companies in the past) spent months
9  developing the Bratz first-generation dolls—valuable time and original creative
10 effort that would not have been necessary if said first-generation Bratz dolls were
11 simply a copy of Bryant's designs.

12    The absence of substantial similarity is further shown in the close
13 correlation between Bryant's drawings and the inspiration he points to, including but
14 not limited to the Steve Madden and Paris Blues advertisements in the August 1998
15 issue of *Seventeen Magazine*, as well as other advertisements in that issue, such as
16 the Coca Cola advertisement.

17    Mattel's own My Scene Barbie line of dolls provides further proof that
18 the first generation of Bratz dolls was not substantially similar to the Bryant
19 drawings, in that (i) Mattel asserts that the My Scene Barbie dolls are independent
20 works of art, not copied from Bratz, yet (ii) said dolls are far closer in appearance to
21 Bratz dolls than are Bryant's two-dimensional drawings.

22    Additional details regarding such differences will be the subject of
23 expert disclosures and will be provided in accordance with the Court's schedule for
24 expert discovery.

25    With respect to any Carter Bryant contribution to the first generation
26 Bratz product after October 4, 2000 and before October 21, 2000, *i.e.*, during a
27 period that he was performing such services for MGA pursuant to a freelance
28 contract while completing a two-week end-of-employment notice period at Mattel,

EXHIBIT ____ *109*

PAGE ____ *1735*

1 MGA notes that any such contribution was far outweighed by the original and/or
2 creative input of other artists working for or on behalf of MGA on the Bratz concept,
3 which was owned by MGA as a consequence of the October 4, 2000 transfer of
4 rights from Bryant to MGA.

5        With respect to Bratz two-dimensional character art utilized on, for
6 example, Bratz product packaging and licensed products, while the initial Bratz
7 character art was derivative of Bryant's initial sketches from 1998, by no later than
8 August 2003, the Bratz character art had changed sufficiently such that it was no
9 longer derivative of Bryant's sketches.

10        The following persons have knowledge of facts and circumstances
11 surrounding the foregoing: Isaac Larian; Carter Bryant; Margaret Leahy; Veronica
12 Marlow; Mercedeh Ward; Sarah Halpern; Paula Garcia; Steve Tarmichael; Rebecca
13 Harris; Tina Tomiyama; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel Wong;
14 Lily Martinez; Ei Akiko Fong; John Steven Baulch; Aileen Storer; Debora
15 Middleton; Ronan Spelman; Charlotte Broussard; Cassidy Park; Katherine Dumas;
16 Michelle McShane; Ivy Ross.

17        The following documents may be relevant to the foregoing:  all
18 DOCUMENTS that refer to or evidence the work performed by MGA employees
19 and freelancers toward the reduction to practice of the first generation of Bratz dolls
20 during the period after October 20, 2000 through June 1, 2001, including but not
21 limited to:  Carter Bryant's drawings; documents and tangible things produced by
22 Margaret Leahy; tangible things produced by Veronica Marlow; invoices submitted
23 by employees and/or freelance artists working for MGA for work performed on the
24 Bratz project; all DOCUMENTS that constitute samples of the following items in the
25 public domain in 1998: Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and
26 Barbie dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little
27 Miss No Name; Hello Kitty; anime, including, e.g., Sailor Moon; manga; Coca-Cola
28 advertisements; Steve Madden advertisements; and Paris Blues advertisements;

1  Bratz prototypes, samples, sculpts, and rotocasts found in Hong Kong and produced
2  to Mattel. The documents evidencing this work are too numerous to identify
3  individually.

4  **INTERROGATORY NO. 43:**

5        For each concept, design, product, product packaging or other matter
6  that YOU contend MATTEL copied or infringed, including but not limited to those
7  identified in MGA's Responses To Mattel, Inc.'s First Set Of Interrogatories Re
8  Claims Of Unfair Competition, Response To Interrogatory No. 2 (and any
9  Supplemental Responses to such Interrogatory), state the date that each such concept,
10 design, product, product packaging or other matter was conceived, and IDENTIFY
11 all PERSONS with knowledge of, and all DOCUMENTS that REFER OR RELATE
12 TO, the foregoing.

13 **RESPONSE TO INTERROGATORY NO. 43:**

14        MGA incorporates by reference its General Response and General
15 Objections above, as though fully set forth herein and specifically incorporates
16 General Objection No. 7 (regarding Definitions), including without limitation its
17 objections to the terms IDENTIFY and REFER OR RELATE.

18        MGA also objects to this interrogatory to the extent it seeks information
19 that is not subject to disclosure under any applicable privilege, doctrine or immunity,
20 including without limitation the attorney-client privilege, the work product doctrine,
21 the right of privacy, and all other privileges recognized under the constitutional,
22 statutory or decisional law of the United States of America, the State of California or
23 any other applicable jurisdiction. MGA further objects to the interrogatory to the
24 extent it calls for a legal conclusion.

25        MGA also objects to this interrogatory on the ground that it is premature
26 because the invention, creation, conception, or reduction to practice of Bratz (and
27 related issues) will be the subject of expert testimony at trial. MGA objects to this
28 interrogatory to the extent it seeks to limit the expert testimony that MGA may seek

EXHIBIT _____ *109*

PAGE _____ *1737*

1  to introduce at trial.  MGA will identify its experts and make related disclosures in

2  accordance with the Court's orders and applicable rules.

3     MGA further objects to this interrogatory to the extent that it seeks

4  information that is not relevant to the claims or defenses of any party to this action

5  and is not reasonably calculated to lead to the discovery of admissible evidence; the

6  term "conceived" is not a legal term of art that is relevant to MGA's affirmative

7  claims for false designation of origin, affiliation, association or sponsorship, unfair

8  competition, dilution, and unjust enrichment.

9     MGA further objects to the extent that this interrogatory seeks

10  information that is outside MGA's knowledge and is not in MGA's possession,

11  custody, or control.  In particular, MGA objects to this interrogatory to the extent

12  that it requests that MGA "IDENTIFY *all* PERSONS…and *all* DOCUMENTS"

13  (emphasis added).

14     MGA further objects to this interrogatory because Mattel has

15  propounded more than 50 interrogatories.  Under Judge Larson's order of February

16  22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

17  04049-SGL and CV 05-02727]."

18     Subject to and without waiving the foregoing objections, MGA

19  responds as follows:  MGA is willing to meet and confer with Mattel regarding this

20  interrogatory and the obligation of Mattel to supplement its responses to MGA's First

21  Set of Interrogatories.

22  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 43:**

23     MGA incorporates by reference its General Response and General

24  Objections above, as though fully set forth herein and specifically incorporates

25  General Objection No. 7 (regarding Definitions), including without limitation its

26  objections to the terms IDENTIFY and REFER OR RELATE.

27     MGA also objects to this interrogatory to the extent it seeks information

28  that is not subject to disclosure under any applicable privilege, doctrine or immunity,

EXHIBIT _____ 109

PAGE 1738

1  including without limitation the attorney-client privilege, the work product doctrine,

2  the right of privacy, and all other privileges recognized under the constitutional,

3  statutory or decisional law of the United States of America, the State of California or

4  any other applicable jurisdiction. MGA further objects to the interrogatory to the

5  extent it calls for a legal conclusion.

6          MGA also objects to this interrogatory on the ground that it is premature

7  because the invention, creation, conception, or reduction to practice of Bratz (and

8  related issues) will be the subject of expert testimony at trial. MGA objects to this

9  interrogatory to the extent it seeks to limit the expert testimony that MGA may seek

10  to introduce at trial. MGA will identify its experts and make related disclosures in

11  accordance with the Court's orders and applicable rules.

12          MGA further objects to this interrogatory to the extent that it seeks

13  information that is not relevant to the claims or defenses of any party to this action

14  and is not reasonably calculated to lead to the discovery of admissible evidence; the

15  term "conceived" is not a legal term of art that is relevant to MGA's affirmative

16  claims for false designation of origin, affiliation, association or sponsorship, unfair

17  competition, dilution, and unjust enrichment.

18          MGA further objects to the extent that this interrogatory seeks

19  information that is outside MGA's knowledge and is not in MGA's possession,

20  custody, or control. In particular, MGA objects to this interrogatory to the extent

21  that it requests that MGA "IDENTIFY *all* PERSONS...and *all* DOCUMENTS"

22  (emphasis added).

23          Subject to and without waiving the foregoing objections, MGA

24  responds as follows:

25          MGA incorporates by reference its response to Interrogatory No. 3 of

26  Mattel's First Set of Interrogatories re Claims of Unfair Competition (including

27  supplemental responses thereto) as though fully set forth herein. MGA notes that, in

28  general, at MGA, product development is completed 7-8 months before the first

30

EXHIBIT _____ 109

PAGE _____ 1139

1 invoice date, although that time period could be reduced in certain situations to 5-6
2 months.

3 **INTERROGATORY NO. 44:**

4         For each concept, design, product, product packaging or other matter
5 that YOU contend MATTEL copied or infringed, including but not limited to those
6 identified in MGA's Responses To Mattel, Inc.'s First Set Of Interrogatories Re
7 Claims Of Unfair Competition, Response To Interrogatory No. 2 (and any
8 Supplemental Responses to such Interrogatory), state the date that each such concept,
9 design, product, product packaging or other matter was first fixed in any tangible
10 medium of expression (if ever), and IDENTIFY all PERSONS with knowledge of,
11 and all DOCUMENTS that REFER OR RELATE TO, the foregoing.

12 **RESPONSE TO INTERROGATORY NO. 44:**

13         MGA incorporates by reference its General Response and General
14 Objections above, as though fully set forth herein and specifically incorporates
15 General Objection No. 7 (regarding Definitions), including without limitation its
16 objections to the terms IDENTIFY and REFER OR RELATE.  MGA also objects to
17 this interrogatory to the extent it seeks information that is not subject to disclosure
18 under any applicable privilege, doctrine or immunity, including without limitation
19 the attorney-client privilege, the work product doctrine, the right of privacy, and all
20 other privileges recognized under the constitutional, statutory or decisional law of
21 the United States of America, the State of California or any other applicable
22 jurisdiction.  MGA also objects to this interrogatory to the extent that it calls for a
23 legal conclusion.

24         MGA also objects to this interrogatory on the ground that it is premature
25 because the invention, creation, conception, or reduction to practice of Bratz (and
26 related issues) will be the subject of expert testimony at trial.  MGA objects to this
27 interrogatory to the extent it seeks to limit the expert testimony that MGA may seek
28 to introduce at trial.  MGA will identify its experts and make related disclosures in

EXHIBIT _____ 109

PAGE _____ 1740

1    accordance with the Court's orders and applicable rules.

2           MGA further objects to this interrogatory to the extent that it seeks
3    information that is not relevant to the claims or defenses of any party to this action
4    and not reasonably calculated to lead to the discovery of admissible evidence
5    because the phrase "fixed in a tangible medium of expression" is a legal term of art
6    that does not have relevance to MGA's affirmative claims, which are for false
7    designation of origin, affiliation, association or sponsorship, unfair competition,
8    dilution, and unjust enrichment.

9           MGA further objects to the extent that this interrogatory seeks
10   information that is outside MGA's knowledge and is not in MGA's possession,
11   custody, or control.  In particular, MGA objects to this interrogatory to the extent
12   that it requests that MGA "IDENTIFY all PERSONS...and all DOCUMENTS"
13   (emphasis added).

14          MGA further objects to this interrogatory because Mattel has
15   propounded more than 50 interrogatories.  Under Judge Larson's order of February
16   22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-
17   04049-SGL and CV 05-02727]."

18          Subject to and without waiving the foregoing objections, MGA
19   responds as follows:  MGA is willing to meet and confer with Mattel regarding this
20   interrogatory and the obligation of Mattel to supplement its responses to MGA's First
21   Set of Interrogatories.

22   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 44:**

23          MGA incorporates by reference its General Response and General
24   Objections above, as though fully set forth herein and specifically incorporates
25   General Objection No. 7 (regarding Definitions), including without limitation its
26   objections to the terms IDENTIFY and REFER OR RELATE.  MGA also objects to
27   this interrogatory to the extent it seeks information that is not subject to disclosure
28   under any applicable privilege, doctrine or immunity, including without limitation

32

EXHIBIT _____ 109

PAGE _____ 1741

1  the attorney-client privilege, the work product doctrine, the right of privacy, and all
2  other privileges recognized under the constitutional, statutory or decisional law of
3  the United States of America, the State of California or any other applicable
4  jurisdiction. MGA also objects to this interrogatory to the extent that it calls for a
5  legal conclusion.

6         MGA also objects to this interrogatory on the ground that it is premature
7  because the invention, creation, conception, or reduction to practice of Bratz (and
8  related issues) will be the subject of expert testimony at trial. MGA objects to this
9  interrogatory to the extent it seeks to limit the expert testimony that MGA may seek
10 to introduce at trial. MGA will identify its experts and make related disclosures in
11 accordance with the Court's orders and applicable rules.

12        MGA further objects to this interrogatory to the extent that it seeks
13 information that is not relevant to the claims or defenses of any party to this action
14 and not reasonably calculated to lead to the discovery of admissible evidence
15 because the phrase "fixed in a tangible medium of expression" is a legal term of art
16 that does not have relevance to MGA's affirmative claims, which are for false
17 designation of origin, affiliation, association or sponsorship, unfair competition,
18 dilution, and unjust enrichment.

19        MGA further objects to the extent that this interrogatory seeks
20 information that is outside MGA's knowledge and is not in MGA's possession,
21 custody, or control. In particular, MGA objects to this interrogatory to the extent
22 that it requests that MGA "IDENTIFY all PERSONS...and all DOCUMENTS"
23 (emphasis added).
   ///
24 ///
25 ///
26 ///
27 ///
28 ///

EXHIBIT _____ 109
PAGE _____ 1742

1            Subject to and without waiving the foregoing objections, MGA

2    responds as follows:

3            MGA incorporates by reference its responses to Interrogatory No. 3 of

4    Mattel's First Set of Interrogatories re Claims of Unfair Competition (including

5    supplemental responses thereto) and Interrogatory No. 43 (including supplemental

6    responses thereto) as though fully set forth herein.

7

8    DATED:  January 28, 2008

9

10                           SKADDEN, ARPS, SLATE, MEAGHER &
                             FLOM LLP

11

12             By: _____

13                           Timothy A. Miller
                    Attorneys for Counter-Defendants, MGA

14                  ENTERTAINMENT, INC., ISAAC LARIAN,
                    MGA ENTERTAINMENT (HK) LTD., and
                    MGAE de MEXICO S.R.L.de C.V.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT _____ 109

PAGE _____ 1743

# EXHIBIT 110

1  THOMAS J. NOLAN (Bar No. 66992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California 90071-3144
3  Telephone: (213) 687-5000
   Facsimile: (213) 687-5600
4  E-mail:    tnolan@skadden.com

5  RAOUL D. KENNEDY (Bar No. 40892)
   TIMOTHY A. MILLER (Bar No. 154744)
6  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   Four Embarcadero Center, 38th Floor
7  San Francisco, California 94111-5974
   Telephone: (415) 984-6400
8  Facsimile: (415) 984-2698
   E-mail:    rkennedy@skadden.com
9
   Attorneys for Cross-Defendants
10 MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
   MGAE De Mexico, S.R.L. De C.V., and ISAAC LARIAN
11
                   UNITED STATES DISTRICT COURT
12
                  CENTRAL DISTRICT OF CALIFORNIA
13
                        EASTERN DIVISION
14

15 | CARTER BRYANT, an individual | ) | CASE NO. CV 04-9049 SGL (RNBx) |
16 | Plaintiff, | ) | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
17 | v. | ) | **DISCOVERY MATTER** |
18 | MATTEL, INC., a Delaware corporation | ) | **ISAAC LARIAN'S THIRD SUPPLEMENTAL RESPONSES TO** |
19 | Defendant. | ) | **MATTEL, INC.'S AMENDED FOURTH SET OF** |
20 | | ) | **INTERROGATORIES** |

20
   Consolidated with MATTEL, INC. v.
21 BRYANT and MGA
   ENTERTAINMENT, INC. v.
22 MATTEL, INC.

23                                        Phase 1:
   **CONFIDENTIAL – ATTORNEYS'**          Discovery Cut-Off:     January 28, 2008
24 **EYES ONLY**                          Pre-Trial Conference: May 5, 2008
                                          Trial Date:            May 27, 2008
25

26 **PROPOUNDING PARTY:**    MATTEL, INC. ("MATTEL")

27 **RESPONDING PARTY:**     ISAAC LARIAN

28 **SET NUMBER:**           AMENDED FOURTH

                        1-28-08

LARIAN'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT ___10___

PAGE ___1744___

## PRELIMINARY STATEMENT

1  
2    The General Response set forth herein applies to all responses that
3  Isaac Larian ("Larian") is providing in response to these interrogatories (the
4  "Interrogatories") or may in the future provide in response to any discovery request
5  in this action. The Response is made without waiving, or intending to waive but, on
6  the contrary, expressly reserving: (a) the right to object, on the grounds of
7  competency, privilege, relevancy or materiality, or any other proper grounds, to the
8  use of the Response, for any purpose in whole or in part, in any subsequent step or
9  proceeding in this action or any other action; (b) the right to object on any and all
10  grounds, at any time, to other interrogatories or other discovery procedures; and (c)
11  the right at any time to revise, correct, add to, or clarify any of the responses
12  propounded herein.

13    The Response reflects only the present state of Larian's discovery
14  regarding the information that Mattel seeks.  Discovery for Phase Two and other
15  investigation or research concerning this litigation are continuing. It is anticipated
16  that further discovery, independent investigation, and legal research and analysis will
17  supply additional facts and meaning to the known facts, as well as establish entirely
18  new factual conclusions, all of which may lead Larian to discover other information
19  responsive to these Interrogatories. Larian therefore reserves the right to amend or
20  supplement this Response at any time in light of future investigation, research or
21  analysis, and also expressly reserves the right to rely on, at any time, including trial,
22  subsequently discovered information omitted from this Response as a result of
23  mistake, error, oversight or inadvertence. Larian does not hereby admit, adopt or
24  acquiesce in any factual or legal contention, assertion or characterization contained
25  in the Interrogatories or any particular request therein, even where Larian has not
26  otherwise objected to a particular interrogatory, or has agreed to provide information
27  responsive to a particular interrogatory.

28    No incidental or implied admissions are intended by this Response.

1

LARIAN'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT __ll O__

PAGE ___1745___

1   These responses should not be taken as an admission that Larian accepts or admits
2   the existence of any facts set forth or assumed by any instruction, definition or
3   interrogatory.

4   **GENERAL OBJECTIONS**

5          Larian responds to these Interrogatories subject to the following general
6   objections and limitations, each of which is incorporated into each and every
7   response as though fully set forth therein:

8          1.      Larian objects to these Interrogatories to the extent they seek
9   information that is not subject to disclosure under any applicable privilege, doctrine
10  or immunity, including without limitation the attorney-client privilege, the work
11  product doctrine, the right of privacy, and all other privileges recognized under the
12  constitutional, statutory or decisional law of the United States of America, the State
13  of California or any other applicable jurisdiction. Larian shall not produce such
14  information in response to Mattel's interrogatories. Any disclosure of such protected
15  or privileged information is inadvertent and shall not be construed as a waiver of
16  those privileges or protections. Larian reserves the right to correct the record with
17  regard to any such inadvertent disclosure, as provided for in the Protective Order
18  governing this case.

19         2.      Larian objects to these Interrogatories to the extent they seek
20  information not relevant to the claims or defenses of any party to this action and not
21  reasonably calculated to lead to the discovery of admissible evidence.

22         3.      Larian objects to these Interrogatories to the extent they seek
23  information which by reason of public filing or otherwise is already in Mattel's
24  possession or is readily accessible to Mattel.

25         4.      Larian objects to these Interrogatories to the extent they seek the
26  disclosure of information (1) not within his possession, custody or control; (2) that
27  Larian cannot locate after a reasonably diligent search; or (3) that refer to persons,
28  entities, or events not known to Larian. Such instructions, definitions, or requests are

2

1 objectionable where they seek to require more of Larian than any obligation imposed

2 by the Federal Rules of Civil Procedure; subject Larian to unreasonable and undue

3 annoyance, oppression, burden, and expense; and/or seek to impose upon Larian an

4 obligation to investigate or discover information or materials from sources equally

5 accessible to Mattel.

6       5.   Larian objects to these Interrogatories to the extent they are

7 overbroad and unduly burdensome.

8       6.   Larian objects to the definitions and instructions to the extent

9 such definitions and instructions purport to enlarge, expand, or alter in any way the

10 plain meaning and scope of any specific term or specific interrogatories on the

11 ground that such enlargement, expansion, or alteration renders such a term or request

12 vague, ambiguous, unintelligible, overly broad, unduly burdensome, and/or

13 uncertain.

14       7.   Larian objects to the terms YOU, YOUR, BRYANT, LARIAN,

15 MGA, MATTEL, AFFILIATES, PERSON, PERSONS, DESIGN, DESIGNS,

16 BRATZ, SOLD, SELL, SALE, BRATZ DOLL, BRATZ PRODUCT, BRATZ

17 MOVIE, BRATZ TELEVISION SHOW, BASED ON, and REFER OR RELATE

18 TO on the grounds that these terms render the interrogatories overbroad, unduly

19 burdensome, vague and ambiguous and to the extent that they could be read to call

20 for legal conclusions in responding to the interrogatories, including, by way of

21 example and without limitation, as follows:

22       (a)   Larian objects to the definition of the term "BRATZ"

23 (Definitions ¶ 9) as vague, ambiguous, overly broad and unduly burdensome, and

24 designed to mislead and confuse the trier of fact. The definition includes "any

25 project, product, doll or DESIGN ever known by [the Bratz] name (whether in whole

26 or in part and regardless of what such project, product or doll is or has been also,

27 previously or subsequently called) and any product, doll or DESIGN or any portion

28 thereof that is now or has ever been known as, or sold or marketed under, the name

3

LARIAN'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT ___||O___

PAGE ___|74|___

1   or term 'Bratz' (whether in whole or in part and regardless of what such product, doll

2   or DESIGN or portion thereof is or has been also, previously or subsequently called)

3   or that is now or has ever been sold or marketed as part of the 'Bratz' line, and each

4   version or iteration of such product, doll or DESIGN or any portion thereof," and it

5   goes on. By incorporating the definition of DESIGN, the overly broad definition of

6   BRATZ includes two-dimensional and three-dimensional representations, including

7   "works, designs, artwork, sketches, drawings, illustrations, representations,

8   depictions, blueprints, schematics, diagrams, images, sculptures, prototypes, models,

9   samples, rotocasts, reductions to practice, developments, inventions and/or

10  improvements ...." (Definitions ¶ 8.) These convoluted and multi-part definitions

11  combine to render the interrogatories vague, ambiguous and overly broad, and to

12  include within the term BRATZ things that do not fairly represent the Bratz line of

13  dolls, accessories and related products that are the subject of this case. In responding

14  to these interrogatories, Larian will interpret the term BRATZ to mean the line of

15  dolls introduced by MGA to the market for sale in May or June of 2001 and

16  subsequent dolls, accessories and other products known as Bratz or associated by

17  Larian with the Bratz line of dolls;

18          (b)     Larian objects to the definition of the term "BRATZ

19  DOLL" (Definitions ¶ 12) as vague, ambiguous, overly broad and unduly

20  burdensome, and designed to mislead and confuse the trier of fact. The definition

21  includes any doll that "REFERS OR RELATES TO BRATZ." Mattel's definition of

22  the terms "BRATZ" and "REFERS OR RELATES" renders the definition of

23  "BRATZ DOLL" unintelligible because Larian cannot know, by way of example,

24  what dolls may "deal with, comment on, respond to,... or pertain" (Definitions ¶ 17)

25  to "BRATZ." In responding to these interrogatories, Larian will interpret the term

26  "BRATZ DOLL" to mean the line of dolls introduced by MGA to the market for sale

27  in May or June of 2001 and subsequent dolls known as Bratz;

28          (c)     Larian objects to the definition of the term "BASED ON,"

4

EXHIBIT ___11 0___

PAGE ___1748___

1  as vague, ambiguous, overly broad and unduly burdensome, and designed to mislead
2  and confuse the trier of fact. The definition strays far from the English meaning of
3  "based on" by including terms loaded with legal significance in intellectual property
4  law, such as "substantially similar to," or "a derivative of." In responding to these
5  interrogatories, Larian will not interpret the term "BASED ON," but rather will
6  respond using "based on" in its normal accepted meaning.
7          (d)     Larian objects to the terms "IDENTIFY" or "IDENTITY"
8  as overbroad, unduly burdensome, vague, ambiguous, and oppressive. Mattel's
9  definition of these terms inherently call for answers to multiple discrete questions or
10  subparts to questions. For example, when those terms are used to reference any
11  BRATZ PRODUCT, the use of those terms requests at least 6 different and distinct
12  facts: (a) the full name of the product; (b) the number of the product; (c) the SKU of
13  the number; (d) any other applicable designation of the product useful for
14  identification; (e) the period of time during which the product was, has been, or will
15  be sold; and (f) the identity of each person who has licensed from YOU the right to
16  sell such BRATZ PRODUCT. Therefore, any interrogatory that includes or
17  incorporates the terms IDENTIFY or IDENTITY are necessarily compound and
18  should be posed as separate interrogatories.
19          (e)     Larian objects to the term "any" and "REFER OR
20  RELATE TO" on the grounds and to the extent that they are overbroad, unduly
21  burdensome, and/or are vague and ambiguous in the context of the interrogatories as
22  written and as those interrogatories would be plainly understood absent Mattel's
23  definitions.
24          8.      Larian objects to these interrogatories to the extent that they may
25  unfairly seek to restrict the facts on which Larian may rely at trial. Discovery has not
26  been completed and Larian is not yet necessarily in possession of all the facts and
27  documents upon which Larian intends to rely. All of the responses submitted
28  herewith are tendered to Mattel with the reservation that the responses are submitted

5

EXHIBIT _____ ⑴ ⓾

PAGE _____ 1749

1   without limiting the evidence on which Larian may rely to support the contentions

2   and defenses that Larian may assert at the trial of this action and to rebut or impeach

3   the contentions, assertions and evidence that Mattel may present. Larian reserves the

4   right to supplement or amend these responses at a future date.

5          9.    Larian objects to each interrogatory to the extent that it seeks

6   information that will be the subject of expert witness testimony and that is therefore

7   premature.

8         10.    In responding to these interrogatories, Larian has not and will not

9   comply with any instructions or definitions that seek to impose requirements in

10  addition to those imposed by the Federal Rules of Civil Procedure and any applicable

11  local rule, any orders entered by the Court in this Action, or other applicable law.

12        11.    Consistent with Rule 33(d) of the Federal Rules of Civil

13  Procedure, Larian objects to providing responses to interrogatories that can be

14  derived from documents that have or will be produced (when requested in

15  compliance with Rule 26) and where the burden to derive such information is

16  substantially the same for Mattel as it is for Larian.

17        12.    Larian objects to each interrogatory to the extent that it seeks the

18  disclosure of confidential, proprietary, or trade-secret information.

19        13.    Larian objects to each interrogatory to the extent that it calls for a

20  legal conclusion.

21        14.    Larian objects to several of those interrogatories that appear to be

22  directed at other parties to the litigation and not to Larian, given the nature of the

23  claims asserted against Larian in this case.

24        15.    Larian reserves the right to object on any ground at any time to

25  such other or supplemental discovery requests as Mattel may propound involving or

26  relating to the same subject matter of these interrogatories.

27        16.    To the extent Larian responds to an interrogatory, he does so

28  without waiving or intending to waive but rather, on the contrary, preserving and

6

EXHIBIT _____ 160

1760

1   intending to preserve, his contention that anything Mr. Bryant did on weekends,

2   evenings, vacation and any other time outside ordinary business hours was not done

3   while he was working for Mattel. Larian's response may not be taken as an admission

4   that the information he provides in his response in any way reflects or evidences

5   work performed by Mr. Bryant while he was working for Mattel or that Larian

6   adopts or agrees with any fact or legal conclusion assumed, presumed or contained in

7   Mattel's interrogatory.

8          17.   Larian objects to each of Mattel's interrogatories because Mattel

9   has propounded more than 50 interrogatories, including discrete subparts. Under

10  Judge Larson's order of February 22, 2007, "Interrogatories are limited to 50 for each

11  side for both [Case Nos. CV 04-04049-SGL and CV 05-02727]."

12         18.   Larian's responses are made based on his understanding and

13  interpretation of each interrogatory. Larian reserves the right to supplement its

14  objections and responses should Mattel subsequently put forth an interpretation of

15  any interrogatory that differs from those of Larian.

16  **OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES**

17         Without waiving or departing from his General Response and General

18  Objections, and specifically incorporating them in his response to each Interrogatory

19  below, Larian makes the following additional objections and responses to specific

20  Interrogatories:

21  **INTERROGATORY NO. 42:**

22         State all facts that support YOUR contention, if YOU so contend, that

23  any BRATZ DOLLS are not BASED ON BRATZ DESIGNS created by BRYANT

24  on or before October 19, 2000, and IDENTIFY all PERSONS with knowledge of

25  such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

26  **RESPONSE TO INTERROGATORY NO. 42:**

27         Larian incorporates by reference his General Response and General

28  Objections above, as though fully set forth herein and specifically incorporates

7

LARIAN'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT ___110___

PAGE ___1751___

1  General Objection No. 7 (regarding Definitions), including without limitation
2  Larian's objection to the definition of the terms BASED ON, BRATZ DOLLS,
3  BRATZ, DESIGN, IDENTIFY and REFER OR RELATE TO, and further objects to
4  this interrogatory on the ground that it is overbroad, unduly burdensome, vague and
5  ambiguous.

6  Larian also objects to this interrogatory to the extent it seeks
7  information that is not subject to disclosure under any applicable privilege, doctrine
8  or immunity, including without limitation the attorney-client privilege, the work
9  product doctrine, the right of privacy, and all other privileges recognized under the
10  constitutional, statutory or decisional law of the United States of America, the State
11  of California or any other applicable jurisdiction. Larian objects to this interrogatory
12  to the extent it calls for a legal conclusion.

13  Larian further objects to this interrogatory on the ground that it is
14  premature because the invention, creation, conception, or reduction to practice of
15  Bratz (and other legal concepts that may be relevant) will be the subject of expert
16  testimony at trial. Larian objects to this interrogatory to the extent it seeks to limit
17  the expert testimony that Larian may seek to introduce at trial. Larian will identify
18  his experts and make related disclosures in accordance with the Court's orders and
19  applicable rules.

20  Larian further objects to this interrogatory on the grounds that it seeks
21  information that is not relevant to the claims or defenses of any party to the action
22  and is not reasonably calculated to lead to the discovery of admissible evidence
23  because the INVENTIONS AGREEMENT executed by Carter Bryant in or around
24  January 1999, purports to state that any inventions conceived or reduced to practice
25  by him during his employment with Mattel would be owned by Mattel. The
26  references to the conception and reduction to practice of an invention are terms of art
27  in patent law. Accordingly, copyright law principles of substantial similarity,
28  copying, and derivative works are not relevant to the INVENTIONS AGREEMENT

8

LARIAN'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

1  which, by its terms, involves only principles of patent law.

2       Larian further objects on the ground that this interrogatory is an
3  overbroad and unduly burdensome contention interrogatory to the extent it asks for
4  "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*
5  *Am. v. Rawstron*, 181 F.R.D. 441,447-48 (CD. Cal. 1998) (rejecting discovery
6  requests seeking "all facts, documents, and witnesses that support the denial of a
7  statement or allegation of fact" because the "universe of potentially responsive
8  information is almost endless").

9       Larian further objects to the extent that this interrogatory seeks
10 information that is outside Larian's knowledge and is not in Larian's possession,
11 custody, or control. In particular, Larian objects to this interrogatory to the extent
12 that it requests that Larian "state *all* facts ... and IDENTIFY *all* PERSONS... and *all*
13 DOCUMENTS" (emphasis added).

14      Larian further objects to this interrogatory because Mattel has
15 propounded more than 50 interrogatories. Under Judge Larson's order of February
16 22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-
17 04049-SGL and CV 05-02727]."

18 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 42:**

19      Larian incorporates by reference his General Response and General
20 Objections above, as though fully set forth herein and specifically incorporates
21 General Objection No. 7 (regarding Definitions), including without limitation
22 Larian's objection to the definition of the terms BASED ON, BRATZ DOLLS,
23 BRATZ, DESIGN, IDENTIFY and REFER OR RELATE TO, and further objects to
24 this interrogatory on the ground that it is overbroad, unduly burdensome, vague and
25 ambiguous.

26      Larian also objects to this interrogatory to the extent it seeks
27 information that is not subject to disclosure under any applicable privilege, doctrine
28 or immunity, including without limitation the attorney-client privilege, the work

9

LARIAN'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT  110
PAGE  1753

1 | product doctrine, the right of privacy, and all other privileges recognized under the
2 | constitutional, statutory or decisional law of the United States of America, the State
3 | of California or any other applicable jurisdiction. Larian objects to this interrogatory
4 | to the extent it calls for a legal conclusion.

5 |      Larian further objects to this interrogatory on the ground that it is
6 | premature because the invention, creation, conception, or reduction to practice of
7 | Bratz (and other legal concepts that may be relevant) will be the subject of expert
8 | testimony at trial. Larian objects to this interrogatory to the extent it seeks to limit
9 | the expert testimony that Larian may seek to introduce at trial. Larian will identify
10 | his experts and make related disclosures in accordance with the Court's orders and
11 | applicable rules.

12 |      Larian further objects to this interrogatory on the grounds that it seeks
13 | information that is not relevant to the claims or defenses of any party to the action
14 | and is not reasonably calculated to lead to the discovery of admissible evidence
15 | because the INVENTIONS AGREEMENT executed by Carter Bryant in or around
16 | January 1999, purports to state that any inventions conceived or reduced to practice
17 | by him during his employment with Mattel would be owned by Mattel. The
18 | references to the conception and reduction to practice of an invention are terms of art
19 | in patent law. Accordingly, copyright law principles of substantial similarity,
20 | copying, and derivative works are not relevant to the INVENTIONS AGREEMENT
21 | which, by its terms, involves only principles of patent law.

22 |      Larian further objects on the ground that this interrogatory is an
23 | overbroad and unduly burdensome contention interrogatory to the extent it asks for
24 | "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*
25 | *Am. v. Rawstron*, 181 F.R.D. 441,447-48 (CD. Cal. 1998) (rejecting discovery
26 | requests seeking "all facts, documents, and witnesses that support the denial of a
27 | statement or allegation of fact" because the "universe of potentially responsive
28 | information is almost endless").

EXHIBIT __10__

PAGE __1754__

1           Larian further objects to the extent that this interrogatory seeks

2   information that is outside Larian's knowledge and is not in Larian's possession,

3   custody, or control. In particular, Larian objects to this interrogatory to the extent

4   that it requests that Larian "state *all* facts ... and IDENTIFY *all* PERSONS... and *all*

5   DOCUMENTS" (emphasis added).

6           Subject to and without waiving the foregoing objections, Larian

7   responds as follows:

8           Should there be a finding that any intellectual property rights associated

9   with the drawings completed by Carter Bryant in August or September, 1998, and/or

10   subsequent drawings, sketches, and/or representations that Bryant created prior to

11   October 4, 2000, are owned by Mattel, it is Larian's position that the first generation

12   of Bratz dolls, first "reduced to practice," and first expressed in a tangible medium,

13   after October 20, 2000, and all subsequent Bratz dolls, are not substantially similar

14   to, are not a copy of, and are not derivative of Carter Bryant's aforementioned works.

15           Larian further responds that said first generation of Bratz dolls differ

16   markedly and significantly from the drawings or designs completed by Carter Bryant

17   prior to October 19, 2000. First, with respect to the three-dimensional "dummy" to

18   which Bryant referred at his deposition, it had no material resemblance to the first

19   generation of Bratz dolls. Second, with respect to Carter Bryant's drawings, Larian

20   points out that two-dimensional drawings do not translate into three-dimensional

21   dolls without original, creative effort. Third, there are recognizable and material

22   differences in the total overall look and feel of the first generation Bratz dolls

23   compared to Carter Bryant's drawings completed prior to October 21, 2000. Fourth,

24   there are recognizable and material differences in individual elements of the first

25   generation Bratz dolls compared to Carter Bryant's drawings completed prior to

26   October 21, 2000, including, but not limited to, with respect to the following: hair

27   styles; hair colors; facial expression; depiction of noses; eye art; extent of detail of

28   eye art; lip art; eyebrow art; proportions of the bodies; posture; spatial arrangement

EXHIBIT _____ 110

PAGE _____ 1755

1 of hands; wrists and arms; and proportions and spatial arrangements of the eyes,

2 noses, and mouths. Additional details regarding such differences will be the subject

3 of expert disclosures and will be provided at a later time.

4     With respect to any design relating to the Bratz concept that Carter

5 Bryant may have contributed after October 4, 2000 and before October 21, 2000, i.e.,

6 during a period that he was performing such services for MGA pursuant to a

7 freelance contract, Larian notes that any such design would have incorporated the

8 original and/or creative input of other artists working for or on behalf of MGA on the

9 Bratz concept, which was owned by MGA as a consequence of the October 4, 2000

10 transfer of rights from Bryant to MGA. In addition, the first generation of Bratz

11 dolls, and all subsequent Bratz dolls, are not substantially similar to, derivative of,

12 and/or a copy of any work performed or created by Carter Bryant from October 4-

13 October 20, 2000.

14     The following persons have knowledge of said facts: Isaac Larian;

15 Carter Bryant; Margaret Leahy; Veronica Marlow; Anna Rhee; Mercedeh Ward;

16 Sarah Halpern; Paula Treantafelles (Garcia); Steve Tarmichael; Rebecca Harris;

17 Cecilia Kwok; David Dees; Jesse Ramirez; and Samuel Wong.

18     The following documents may be relevant to these facts: all

19 DOCUMENTS that refer to or evidence the work performed by MGA employees

20 and freelancers toward the reduction to practice of the first generation of Bratz dolls

21 during the period after October 20, 2000 through June 1, 2001, including but not

22 limited to: Carter Bryant's drawings; the Bratz dolls; My Scene dolls;

23 DOCUMENTS evidencing the development of the first generation of Bratz dolls by

24 employees and freelance artists working for MGA; and invoices submitted by

25 freelancers for work performed on the Bratz Project. The documents evidencing this

26 work are too numerous to identify individually.

27 **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 42:**

28     Larian incorporates by reference his General Response and General

EXHIBIT ___10

PAGE ___ 1756

1 | Objections above, as though fully set forth herein and specifically incorporates General

2 | Objection No. 7 (regarding Definitions), including without limitation Larian's objection to

3 | the definition of the terms BASED ON, BRATZ DOLLS, BRATZ, DESIGN, IDENTIFY

4 | and REFER OR RELATE TO, and further objects to this interrogatory on the ground that it

5 | is overbroad, unduly burdensome, vague and ambiguous.

6 |      Larian also objects to this interrogatory to the extent it seeks information that

7 | is not subject to disclosure under any applicable privilege, doctrine or immunity, including

8 | without limitation the attorney-client privilege, the work product doctrine, the right of

9 | privacy, and all other privileges recognized under the constitutional, statutory or decisional

10 | law of the United States of America, the State of California or any other applicable

11 | jurisdiction. Larian objects to this interrogatory to the extent it calls for a legal conclusion.

12 |      Larian further objects to this interrogatory on the ground that it is

13 | premature because the invention, creation, conception, or reduction to practice of

14 | Bratz (and other legal concepts that may be relevant) will be the subject of expert

15 | testimony at trial. Larian objects to this interrogatory to the extent it seeks to limit

16 | the expert testimony that Larian may seek to introduce at trial. Larian will identify

17 | his experts and make related disclosures in accordance with the Court's orders and

18 | applicable rules.

19 |      Larian further objects to this interrogatory on the grounds that it seeks

20 | information that is not relevant to the claims or defenses of any party to the action

21 | and is not reasonably calculated to lead to the discovery of admissible evidence

22 | because the INVENTIONS AGREEMENT executed by Carter Bryant in or around

23 | January 1999, purports to state that any inventions conceived or reduced to practice

24 | by him during his employment with Mattel would be owned by Mattel. The

25 | references to the conception and reduction to practice of an invention are terms of art

26 | in patent law. Accordingly, copyright law principles of substantial similarity,

27 | copying, and derivative works are not relevant to the INVENTIONS AGREEMENT

28 | which, by its terms, involves only principles of patent law.

EXHIBIT    10

PAGE    1757

1        Larian further objects on the ground that this interrogatory is an

2  overbroad and unduly burdensome contention interrogatory to the extent it asks for

3  "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*

4  *Am. v. Rawstron*, 181 F.R.D. 441,447-48 (CD. Cal. 1998) (rejecting discovery

5  requests seeking "all facts, documents, and witnesses that support the denial of a

6  statement or allegation of fact" because the "universe of potentially responsive

7  information is almost endless").

8        Larian further objects to the extent that this interrogatory seeks

9  information that is outside Larian's knowledge and is not in Larian's possession,

10  custody, or control. In particular, Larian objects to this interrogatory to the extent

11  that it requests that Larian "state *all* facts ... and IDENTIFY *all* PERSONS...and *all*

12  DOCUMENTS" (emphasis added).

13        Larian objects to the interrogatory on the ground that it is compound

14  and therefore Mattel has propounded more than 50 interrogatories, including discrete

15  subparts, in violation of Judge Larson's order of February 22, 2007, that

16  "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-

17  SGL and CV 05-02727]." In its supplemental response to this interrogatory, Larian

18  did not refuse to answer the interrogatory based on the 50-interrogatory limit, but

19  rather refused to use the compound and misleading defined terms that permeate

20  Mattel's interrogatories. The interrogatories attempt to use misleading and unfair

21  definitions to create jury confusion or to circumvent 50-interrogatory limit. For

22  example, Mattel's definition of "BRATZ INVENTION" contains ten separate

23  component parts ("representation, idea, concept, work, process, procedure, plan,

24  improvement, DESIGN or other development"). The incorporation of the defined

25  term "DESIGN" adds at least another 21 elements ("all works, designs, artwork,

26  sketches, drawings, representations, depictions, blueprints, schematics,

27  diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to

28  practice, developments, inventions and/or improvements"). The inclusion of these

LARIAN'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT 1/1

PAGE 1758

1   disparate concepts in the term "invention" improperly conflates distinct issues of

2   patent law, copyright protection, trade secret law and the common law protecting

3   original ideas, many of which have no place in the ordinary usage of the term

4   "invention." In its previous supplemental responses, Larian used the word

5   "invention" in its ordinary usage, and does so again in these second supplemental

6   responses. During the meet and confer process regarding Larian's supplemental

7   responses, Mattel's counsel objected to Larian's responses, and argued that Larian

8   must either use Mattel's distorted definitions or respond to each of the many

9   component parts of Mattel's defined terms. As was made clear during the meet and

10  confer process and as more fully set forth in MGA's Opposition to Mattel, Inc.'s

11  Motion To Compel Responses To Interrogatories (Nos. 27, 28, 29, 30, 31, 32, 33, 34,

12  35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 46, 47, 48, 49 and 50) By The MGA Parties,

13  Larian objects to this interrogatory as compound and a violation of the 50-

14  interrogatory limit to the extent that Mattel continues to assert that Larian is required

15  to respond to each component part of Mattel's defined terms.

16          Subject to and without waiving the foregoing objections, Larian

17  provides its Second Supplemental Response as follows:

18          Larian contends that, applying the generally-accepted definitions of the

19  words "based on" and "design", neither the first generation of Bratz dolls nor any

20  subsequent Bratz products were based on any Carter Bryant designs created on or

21  before October 19, 2000. Larian further contends that even if Larian applies Mattel's

22  misleading definitions of "BASED ON" and "DESIGN," neither the first generation

23  of Bratz dolls nor any of subsequent Bratz products were "BASED ON" any Carter

24  Bryant "DESIGNS" created on or before October 19, 2000. Larian further contends

25  that the first generation of Bratz dolls (and subsequent Bratz products) were

26  "conceived of" and "reduced to practice" for purposes of design patent law, and first

27  expressed in a tangible medium for purposes of copyright law, after October 20,

28  2000, as a result of original, creative efforts of artists employed by, or working on

15

LARIAN'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT ___ 110

PAGE ___ 1759

1   behalf of, MGA.  All first-generation Bratz dolls and subsequent Bratz products are
2   not substantially similar to, are not a copy of, and are not derivative of, any Carter
3   Bryant designs completed on or before October 19, 2000.

4           To the extent that Mattel argues that the shapes of characters in Carter
5   Bryant's drawings that he called "Bratz" (including, but not limited to, those
6   drawings identified by Carter Bryant in Exhibit 5 of his deposition as being sketched
7   in August 1998) represented a conception of what could have later become a three-
8   dimensional object that could have been the subject of a design patent, Larian
9   contends as follows:

10          Carter Bryant was not a sculptor, and any effort to translate his pre-1999
11  two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt
12  would have produced shapes that were different from the actual shape of the final
13  three-dimensional Bratz sculpt used in manufacturing the first generation of Bratz
14  dolls released on the market by MGA in or about June 2001.  Also, different sculpt
15  artists would have created different sculpts – Bryant's two-dimensional drawings did
16  not dictate a specific three-dimensional object.  The shapes of the characters in
17  Bryant's drawings bear little resemblance to the final shape of the actual Bratz dolls.
18  Differences between the drawings and the final shape of the actual Bratz dolls
19  include, but are not limited to, the following:  posture; hip-to-waist ratio; feet size
20  (dolls' feet are not as exaggerated as characters' feet in the drawings); head size
21  (dolls' heads are proportionally smaller than characters' heads in the drawings); eyes
22  (dolls' eyes are more open than characters' eyes in the drawings); other facial
23  features including lips, cheek bones, chin and forehead.

24          Moreover, the final physical shape of the first generation of Bratz dolls,
25  released on the market by MGA in or about June 2001, was conceived of by
26  Margaret Leahy, working on behalf of MGA, along with other MGA agents and
27  employees such as employees in Hong Kong and Mercedeh Ward.  The conception
28  of this physical shape was completed on or after October 20, 2000, and reduced to

EXHIBIT _____ 1 \0
PAGE _____ 1760

1  practice no earlier than December 19, 2000.

2         Copyright infringement analysis under Ninth Circuit law requires that
3  "objective" or "extrinsic" elements that are "scènes-à-faire" in the public domain, or
4  public domain materials that Bryant was aware of and that directly or indirectly
5  influenced him in developing his concept for a new line of fashion dolls, be filtered
6  out of the subject works, and, thereafter, that the remaining "subjective" or
7  "intrinsic" elements be evaluated for substantial similarity. Carter Bryant's 1998
8  drawings contain many elements that must be filtered out, including but not limited
9  to the oversized head, eyes, lips, and feet of the figures in Bryant's drawings and the
10 stock model and/or doll poses. A non-exhaustive list of examples of prior existing
11 works that incorporate such elements includes the following: sources of inspiration
12 specifically identified by Carter Bryant, including Steve Madden advertisements and
13 Paris Blues advertisements, which were highly visible in 1998 (various Steve
14 Madden advertisements also served as a key inspiration for Mattel's own "Toon
15 Teens" dolls); Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and Barbie
16 dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little Miss No
17 Name; Hello Kitty; Coca-Cola advertisements; anime, including, e.g., Sailor Moon;
18 and manga.

19        Once all of the materials that directly or indirectly influenced Bryant
20 and all "scène-à-faire" features are eliminated from the analysis, the first generation
21 Bratz dolls (and all subsequent Bratz products) are readily seen as not substantially
22 similar to Carter Bryant's 1998 drawings. The differences between the drawings and
23 the first generation Bratz dolls include, but are not limited to, the following:

24           • Posture

25           • Hip-to-waist ratio

26           • Feet size (dolls' feet are not as exaggerated as characters' feet in
27              the drawings)

28           • Head size (dolls' heads are proportionally smaller than

EXHIBIT _112_

PAGE _1701_

1    characters' heads in the drawings)

2    &bull; Eyes (dolls' eyes are more open than characters' eyes in the

3    drawings)

4    &bull; Eye to lips ratio (lips of characters in drawings are proportionally

5    larger relative to eyes than are lips of dolls)

6    &bull; Hair (characters in drawings have much edgier hairstyles than the

7    dolls do)

8    &bull; Shapes of eyes and eye design

9    &bull; Shapes of lips

10    &bull; Overall look and feel (dolls are overall softer, less extreme than

11    drawings)

12        That the dolls and the drawings are not substantially similar also is

13 consistent with the fact that Carter Bryant was not a sculptor, and, as discussed

14 above, any effort to translate his pre-1999 two-dimensional flat art into a three-

15 dimensional form for use as a fashion doll sculpt would have produced shapes that

16 were different from the actual shape of the final three-dimensional Bratz sculpt used

17 in manufacturing the first generation of Bratz dolls released on the market by MGA

18 in or about June 2001. Indeed, a team of highly-skilled artists (including several that

19 had been used by Mattel) spent months developing the Bratz first-generation dolls—

20 valuable time and original creative effort that would not have been necessary if said

21 first-generation Bratz dolls were simply a copy of Bryant's designs.

22        The absence of substantial similarity is further shown in the close

23 correlation between Bryant's drawings and the inspiration he points to, including but

24 not limited to the Steve Madden and Paris Blues advertisements in the August 1998

25 issue of *Seventeen Magazine,* as well as other advertisements in that issue, such as

26 the Coca Cola advertisement.

27        Mattel's own My Scene Barbie line of dolls provides further proof that

28 the first generation of Bratz dolls was not substantially similar to the Bryant

18

EXHIBIT ___11 U___

PAGE ___1762___

1  drawings, in that (i) Mattel asserts that the My Scene Barbie dolls are independent
2  works of art, not copied from Bratz, yet (ii) said dolls are far closer in appearance to
3  Bratz dolls than are Bryant's two-dimensional drawings.

4      Additional details regarding such differences will be the subject of
5  expert disclosures and will be provided in accordance with the Court's schedule for
6  expert discovery.

7      With respect to any Carter Bryant contribution to the first generation
8  Bratz product after October 4, 2000 and before October 21, 2000, i.e., during a
9  period that he was performing such services for MGA pursuant to a freelance
10 contract while completing a two-week end-of-employment notice period at Mattel,
11 Larian notes that any such contribution was far outweighed by the original and/or
12 creative input of other artists working for or on behalf of MGA on the Bratz concept,
13 which was owned by MGA as a consequence of the October 4, 2000 transfer of
14 rights from Bryant to MGA.

15     With respect to Bratz two-dimensional character art utilized on, for
16 example, Bratz product packaging and licensed products, while the initial Bratz
17 character art was derivative of Bryant's initial sketches from 1998, by no later than
18 August, 2003, the Bratz character art had changed sufficiently such that it was no
19 longer derivative of Bryant's sketches.

20     The following persons have knowledge of facts and circumstances
21 surrounding the foregoing: Isaac Larian; Carter Bryant; Margaret Leahy; Veronica
22 Marlow; Mercedeh Ward; Sarah Halpern; Paula Garcia; Steve Tarmichael; Rebecca
23 Harris; Tina Tomiyama; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel Wong;
24 Lily Martinez; Ei Akiko Fong; John Steven Baulch; Aileen Storer; Debora
25 Middleton; Ronan Spelman; Charlotte Broussard.

26     The following documents may be relevant to the foregoing: all
27 DOCUMENTS that refer to or evidence the work performed by MGA employees
28 and freelancers toward the reduction to practice of the first generation of Bratz dolls

19

EXHIBIT _____ / / U

PAGE _____ \ 7U3

1  during the period after October 20, 2000 through June 1, 2001, including but not
2  limited to:  Carter Bryant's drawings; documents and tangible things produced by
3  Margaret Leahy; tangible things produced by Veronica Marlow; invoices submitted
4  by employees and/or freelance artists working for MGA for work performed on the
5  Bratz project; all DOCUMENTS that constitute samples of the following items in the
6  public domain in 1998: Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and
7  Barbie dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little
8  Miss No Name; Hello Kitty; anime, including, e.g., Sailor Moon; manga; Coca-Cola
9  advertisements; Steve Madden advertisements; and Paris Blues advertisements;
10  Bratz prototypes, samples, sculpts, and rotocasts found in Hong Kong and produced
11  to Mattel.  The documents evidencing this work are too numerous to identify
12  individually.

13  **THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 42:**

14          Larian incorporates by reference his General Response and General
15  Objections above, as though fully set forth herein and specifically incorporates General
16  Objection No. 7 (regarding Definitions), including without limitation Larian's objection to
17  the definition of the terms BASED ON, BRATZ DOLLS, BRATZ, DESIGN, IDENTIFY
18  and REFER OR RELATE TO, and further objects to this interrogatory on the ground that it
19  is overbroad, unduly burdensome, vague and ambiguous.

20          Larian also objects to this interrogatory to the extent it seeks information that
21  is not subject to disclosure under any applicable privilege, doctrine or immunity, including
22  without limitation the attorney-client privilege, the work product doctrine, the right of
23  privacy, and all other privileges recognized under the constitutional, statutory or decisional
24  law of the United States of America, the State of California or any other applicable
25  jurisdiction. Larian objects to this interrogatory to the extent it calls for a legal conclusion.

26          Larian further objects to this interrogatory on the ground that it is
27  premature because the invention, creation, conception, or reduction to practice of
28  Bratz (and other legal concepts that may be relevant) will be the subject of expert

20

EXHIBIT ___11 U___

PAGE ___1764___

1  testimony at trial. Larian objects to this interrogatory to the extent it seeks to limit

2  the expert testimony that Larian may seek to introduce at trial. Larian will identify

3  his experts and make related disclosures in accordance with the Court's orders and

4  applicable rules.

5          Larian further objects to this interrogatory on the grounds that it seeks

6  information that is not relevant to the claims or defenses of any party to the action

7  and is not reasonably calculated to lead to the discovery of admissible evidence

8  because the INVENTIONS AGREEMENT executed by Carter Bryant in or around

9  January 1999, purports to state that any inventions conceived or reduced to practice

10  by him during his employment with Mattel would be owned by Mattel. The

11  references to the conception and reduction to practice of an invention are terms of art

12  in patent law. Accordingly, copyright law principles of substantial similarity,

13  copying, and derivative works are not relevant to the INVENTIONS AGREEMENT

14  which, by its terms, involves only principles of patent law.

15          Larian further objects on the ground that this interrogatory is an

16  overbroad and unduly burdensome contention interrogatory to the extent it asks for

17  "all facts" which supports the denial of a statement or allegation. *See e.g., Safeco of*

18  *Am. v. Rawstron*, 181 F.R.D. 441, 447-48 (CD. Cal. 1998) (rejecting discovery

19  requests seeking "all facts, documents, and witnesses that support the denial of a

20  statement or allegation of fact" because the "universe of potentially responsive

21  information is almost endless").

22          Larian further objects to the extent that this interrogatory seeks

23  information that is outside Larian's knowledge and is not in Larian's possession,

24  custody, or control. In particular, Larian objects to this interrogatory to the extent

25  that it requests that Larian "state *all* facts ... and IDENTIFY *all* PERSONS ... and *all*

26  DOCUMENTS" (emphasis added).

27          Larian objects to the interrogatory on the ground that it is compound

28  and therefore Mattel has propounded more than 50 interrogatories, including discrete

21

LARIAN'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT ___11 U

PAGE ___1705

1 | subparts, in violation of Judge Larson's order of February 22, 2007, that
2 | "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-04049-
3 | SGL and CV 05-02727]." In its supplemental response to this interrogatory, Larian
4 | did not refuse to answer the interrogatory based on the 50-interrogatory limit, but
5 | rather refused to use the compound and misleading defined terms that permeate
6 | Mattel's interrogatories. The interrogatories attempt to use misleading and unfair
7 | definitions to create jury confusion or to circumvent the 50-interrogatory limit. For
8 | example, Mattel's definition of "BRATZ INVENTION" contains ten separate
9 | component parts ("representation, idea, concept, work, process, procedure, plan,
10 | improvement, DESIGN or other development"). The incorporation of the defined
11 | term "DESIGN" adds at least another 21 elements ("all works, designs, artwork,
12 | sketches, drawings, illustrations, representations, depictions, blueprints, schematics,
13 | diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to
14 | practice, developments, inventions and/or improvements"). The inclusion of these
15 | disparate concepts in the term "invention" improperly conflates distinct issues of
16 | patent law, copyright protection, trade secret law and the common law protecting
17 | original ideas, many of which have no place in the ordinary usage of the term
18 | "invention." In its previous supplemental responses, Larian used the word
19 | "invention" in its ordinary usage, and does so again in these third supplemental
20 | responses. During the meet and confer process regarding Larian's supplemental
21 | responses, Mattel's counsel objected to Larian's responses, and argued that Larian
22 | must either use Mattel's distorted definitions or respond to each of the many
23 | component parts of Mattel's defined terms. As was made clear during the meet and
24 | confer process and as more fully set forth in MGA's Opposition to Mattel, Inc.'s
25 | Motion To Compel Responses To Interrogatories (Nos. 27, 28, 29, 30, 31, 32, 33, 34,
26 | 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 46, 47, 48, 49 and 50) By The MGA Parties,
27 | Larian objects to this interrogatory as compound and a violation of the 50-
28 | interrogatory limit to the extent that Mattel continues to assert that Larian is required

EXHIBIT ___110___

PAGE ___1766___

1  to respond to each component part of Mattel's defined terms.

2  Subject to and without waiving the foregoing objections, Larian

3  provides his Third Supplemental Response as follows:

4  Larian contends that, applying the generally-accepted definitions of the

5  words "based on" and "design", neither the first generation of Bratz dolls nor any

6  subsequent Bratz products were based on any Carter Bryant designs created on or

7  before October 19, 2000. Larian further contends that even if Larian applies Mattel's

8  misleading definitions of "BASED ON" and "DESIGN," neither the first generation

9  of Bratz dolls nor any of the subsequent Bratz products were "BASED ON" any

10  Carter Bryant "DESIGNS" created on or before October 19, 2000. Larian further

11  contends that the first generation of Bratz dolls (and subsequent Bratz products) were

12  "conceived of" and "reduced to practice" for purposes of design patent law, and first

13  expressed in a tangible medium for purposes of copyright law, after October 20,

14  2000, as a result of original, creative efforts of artists employed by, or working on

15  behalf of, MGA. All first-generation Bratz dolls and subsequent Bratz products are

16  not substantially similar to, are not a copy of, and are not derivative of, any Carter

17  Bryant designs completed on or before October 19, 2000.

18  To the extent that Mattel argues that the shapes of characters in Carter

19  Bryant's drawings that he called "Bratz" (including, but not limited to, those

20  drawings identified by Carter Bryant in Exhibit 5 of his deposition as being sketched

21  in August 1998) represented a conception of what could have later become a three-

22  dimensional object that could have been the subject of a design patent, Larian

23  contends as follows:

24  Carter Bryant was not a sculptor, and any effort to translate his pre-1999

25  two-dimensional flat art into a three-dimensional form for use as a fashion doll sculpt

26  would have produced shapes that were different from the actual shape of the final

27  three-dimensional Bratz sculpt used in manufacturing the first generation of Bratz

28  dolls released on the market by MGA in or about June 2001. Also, different sculpt

23

EXHIBIT ___44 42___

PAGE ___1767___

1   artists would have created different sculpts – Bryant's two-dimensional drawings did
2   not dictate a specific three-dimensional object.  The shapes of the characters in
3   Bryant's drawings bear little resemblance to the final shape of the actual Bratz dolls.
4   Differences between the drawings and the final shape of the actual Bratz dolls
5   include, but are not limited to, the following:  posture; hip-to-waist ratio; feet size
6   (dolls' feet are not as exaggerated as characters' feet in the drawings); head size
7   (dolls' heads are proportionally smaller than characters' heads in the drawings); eyes
8   (dolls' eyes are more open than characters' eyes in the drawings); removable hair (a
9   feature present only in the drawings); other facial features including lips, cheek
10  bones, chin and forehead.

11          Moreover, the final physical shape of the first generation of Bratz dolls,
12  released on the market by MGA in or about June 2001, was conceived of by
13  Margaret Leahy, working on behalf of MGA, along with other MGA agents and
14  employees such as employees in Hong Kong and Mercedeh Ward.  The conception
15  of this physical shape was completed on or after October 20, 2000, and reduced to
16  practice no earlier than December 19, 2000.

17          Copyright infringement analysis under Ninth Circuit law requires that
18  "objective" or "extrinsic" elements that are "scènes-à-faire" in the public domain, or
19  public domain materials that Bryant was aware of and that directly or indirectly
20  influenced him in developing his concept for a new line of fashion dolls, be filtered
21  out of the subject works, and, thereafter, that the remaining "subjective" or
22  "intrinsic" elements be evaluated for substantial similarity.  Carter Bryant's 1998
23  drawings contain many elements that must be filtered out, including but not limited
24  to the oversized head, eyes, lips, and feet of the figures in Bryant's drawings and the
25  stock model and/or doll poses.  A non-exhaustive list of examples of prior existing
26  works that incorporate such elements includes the following:  sources of inspiration
27  specifically identified by Carter Bryant, including Steve Madden advertisements and
28  Paris Blues advertisements, which were highly visible in 1998 (various Steve

EXHIBIT _____ 11 U
PAGE _____ 1708

1   Madden advertisements also served as a key inspiration for Mattel's own "Toon
2   Teens" dolls); Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and Barbie
3   dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little Miss No
4   Name; Hello Kitty; Coca-Cola advertisements; anime, including, e.g., Sailor Moon;
5   and manga.

6          Once all of the materials that directly or indirectly influenced Bryant
7   and all "scène-à-faire" features are eliminated from the analysis, the first generation
8   Bratz dolls (and all subsequent Bratz products) are readily seen as not substantially
9   similar to Carter Bryant's 1998 drawings.  The differences between the drawings and
10  the first generation Bratz dolls include, but are not limited to, the following:

11          • Posture
12          • Hip-to-waist ratio
13          • Feet size (dolls' feet are not as exaggerated as characters' feet in
14            the drawings)
15          • Head size (dolls' heads are proportionally smaller than
16            characters' heads in the drawings)
17          • Eyes (dolls' eyes are more open than characters' eyes in the
18            drawings)
19          • Eye to lips ratio (lips of characters in drawings are proportionally
20            larger relative to eyes than are lips of dolls)
21          • Hair (characters in drawings have much edgier hairstyles than the
22            dolls do; unlike the drawings, the dolls' hair is not removable)
23          • Shapes of eyes and eye design
24          • Shapes of lips
25          • Overall look and feel (dolls are overall softer, less extreme than
26            drawings)
27          That the dolls and the drawings are not substantially similar also is
28  consistent with the fact that Carter Bryant was not a sculptor, and, as discussed

25

EXHIBIT _____ 1/0
PAGE _____ 1709

1    above, any effort to translate his pre-1999 two-dimensional flat art into a three-
2    dimensional form for use as a fashion doll sculpt would have produced shapes that
3    were different from the actual shape of the final three-dimensional Bratz sculpt used
4    in manufacturing the first generation of Bratz dolls released on the market by MGA
5    in or about June 2001.  Indeed, a team of highly-skilled artists (including several that
6    had been used by Mattel and other toy companies in the past) spent months
7    developing the Bratz first-generation dolls—valuable time and original creative
8    effort that would not have been necessary if said first-generation Bratz dolls were
9    simply a copy of Bryant's designs.
10          The absence of substantial similarity is further shown in the close
11   correlation between Bryant's drawings and the inspiration he points to, including but
12   not limited to the Steve Madden and Paris Blues advertisements in the August 1998
13   issue of *Seventeen Magazine*, as well as other advertisements in that issue, such as
14   the Coca Cola advertisement.
15          Mattel's own My Scene Barbie line of dolls provides further proof that
16   the first generation of Bratz dolls was not substantially similar to the Bryant
17   drawings, in that (i) Mattel asserts that the My Scene Barbie dolls are independent
18   works of art, not copied from Bratz, yet (ii) said dolls are far closer in appearance to
19   Bratz dolls than are Bryant's two-dimensional drawings.
20          Additional details regarding such differences will be the subject of
21   expert disclosures and will be provided in accordance with the Court's schedule for
22   expert discovery.
23          With respect to any Carter Bryant contribution to the first generation
24   Bratz product after October 4, 2000 and before October 21, 2000, i.e., during a
25   period that he was performing such services for MGA pursuant to a freelance
26   contract while completing a two-week end-of-employment notice period at Mattel,
27   Larian notes that any such contribution was far outweighed by the original and/or
28   creative input of other artists working for or on behalf of MGA on the Bratz concept,

EXHIBIT  11 O

PAGE  1770

1  which was owned by MGA as a consequence of the October 4, 2000 transfer of
2  rights from Bryant to MGA.

3          With respect to Bratz two-dimensional character art utilized on, for
4  example, Bratz product packaging and licensed products, while the initial Bratz
5  character art was derivative of Bryant's initial sketches from 1998, by no later than
6  August 2003, the Bratz character art had changed sufficiently such that it was no
7  longer derivative of Bryant's sketches.

8          The following persons have knowledge of facts and circumstances
9  surrounding the foregoing: Isaac Larian; Carter Bryant; Margaret Leahy; Veronica
10  Marlow; Mercedeh Ward; Sarah Halpern; Paula Garcia; Steve Tarmichael; Rebecca
11  Harris; Tina Tomiyama; Cecilia Kwok; David Dees; Jesse Ramirez; Samuel Wong;
12  Lily Martinez; Ei Akiko Fong; John Steven Baulch; Aileen Storer; Debora
13  Middleton; Ronan Spelman; Charlotte Broussard; Cassidy Park; Katherine Dumas;
14  Michelle McShane; Ivy Ross.

15          The following documents may be relevant to the foregoing:  all
16  DOCUMENTS that refer to or evidence the work performed by MGA employees
17  and freelancers toward the reduction to practice of the first generation of Bratz dolls
18  during the period after October 20, 2000 through June 1, 2001, including but not
19  limited to:  Carter Bryant's drawings; documents and tangible things produced by
20  Margaret Leahy; tangible things produced by Veronica Marlow; invoices submitted
21  by employees and/or freelance artists working for MGA for work performed on the
22  Bratz project; all DOCUMENTS that constitute samples of the following items in the
23  public domain in 1998: Blythe dolls; Lisa Frank designs; Takara's Jenny, Licca, and
24  Barbie dolls; Mattel's Liddle Kiddles; Margaret Keane artwork; Betty Boop; Little
25  Miss No Name; Hello Kitty; anime, including, e.g., Sailor Moon; manga; Coca-Cola
26  advertisements; Steve Madden advertisements; and Paris Blues advertisements;
27  Bratz prototypes, samples, sculpts, and rotocasts found in Hong Kong and produced
28  to Mattel.  The documents evidencing this work are too numerous to identify

27

EXHIBIT __10__

PAGE __171__

1 individually.

2 **INTERROGATORY NO. 43:**

3        For each concept, design, product, product packaging or other matter

4 that YOU contend MATTEL copied or infringed, including but not limited to those

5 identified in MGA's Responses To Mattel, Inc.'s First Set Of Interrogatories Re

6 Claims Of Unfair Competition, Response To Interrogatory No. 2 (and any

7 Supplemental Responses to such Interrogatory), state the date that each such concept,

8 design, product, product packaging or other matter was conceived, and IDENTIFY

9 all PERSONS with knowledge of, and all DOCUMENTS that REFER OR RELATE

10 TO, the foregoing.

11 **RESPONSE TO INTERROGATORY NO. 43:**

12        Larian incorporates by reference his General Response and General

13 Objections above, as though fully set forth herein and specifically incorporates

14 General Objection No. 7 (regarding Definitions), including without limitation its

15 objections to the terms IDENTIFY and REFER OR RELATE.

16        Larian also objects to this interrogatory to the extent it seeks

17 information that is not subject to disclosure under any applicable privilege, doctrine

18 or immunity, including without limitation the attorney-client privilege, the work

19 product doctrine, the right of privacy, and all other privileges recognized under the

20 constitutional, statutory or decisional law of the United States of America, the State

21 of California or any other applicable jurisdiction. Larian further objects to the

22 interrogatory to the extent it calls for a legal conclusion.

23        Larian also objects to this interrogatory on the ground that it is

24 premature because the invention, creation, conception, or reduction to practice of

25 Bratz (and related issues) will be the subject of expert testimony at trial. Larian

26 objects to this interrogatory to the extent it seeks to limit the expert testimony that

27 Larian may seek to introduce at trial. Larian will identify his experts and make

28 related disclosures in accordance with the Court's orders and applicable rules.

28

EXHIBIT ___110___

PAGE ___1772___

1    Larian further objects to this interrogatory to the extent that it seeks
2  information that is not relevant to the claims or defenses of any party to this action
3  and is not reasonably calculated to lead to the discovery of admissible evidence; the
4  term "conceived" is not a legal term of art that is relevant to Larian's affirmative
5  claims for false designation of origin, affiliation, association or sponsorship, unfair
6  competition, dilution, and unjust enrichment.

7    Larian further objects to the extent that this interrogatory seeks
8  information that is outside Larian's knowledge and is not in Larian's possession,
9  custody, or control. In particular, Larian objects to this interrogatory to the extent
10  that it requests that Larian "IDENTIFY *all* PERSONS... and *all* DOCUMENTS"
11  (emphasis added).

12    Larian further objects to this interrogatory because Mattel has
13  propounded more than 50 interrogatories. Under Judge Larson's order of February
14  22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-
15  04049-SGL and CV 05-02727]."

16    Subject to and without waiving the foregoing objections, Larian
17  responds as follows: Larian is willing to meet and confer with Mattel regarding this
18  interrogatory and the obligation of Mattel to supplement its responses to MGA's First
19  Set of Interrogatories.

20  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 43:**

21    Larian incorporates by reference his General Response and General
22  Objections above, as though fully set forth herein and specifically incorporates
23  General Objection No. 7 (regarding Definitions), including without limitation its
24  objections to the terms IDENTIFY and REFER OR RELATE.

25    Larian also objects to this interrogatory to the extent it seeks
26  information that is not subject to disclosure under any applicable privilege, doctrine
27  or immunity, including without limitation the attorney-client privilege, the work
28  product doctrine, the right of privacy, and all other privileges recognized under the

29

EXHIBIT

1773

1 constitutional, statutory or decisional law of the United States of America, the State
2 of California or any other applicable jurisdiction. Larian further objects to the
3 interrogatory to the extent it calls for a legal conclusion.

4          Larian also objects to this interrogatory on the ground that it is
5 premature because the invention, creation, conception, or reduction to practice of
6 Bratz (and related issues) will be the subject of expert testimony at trial. Larian
7 objects to this interrogatory to the extent it seeks to limit the expert testimony that
8 Larian may seek to introduce at trial. Larian will identify his experts and make
9 related disclosures in accordance with the Court's orders and applicable rules.

10          Larian further objects to this interrogatory to the extent that it seeks
11 information that is not relevant to the claims or defenses of any party to this action
12 and is not reasonably calculated to lead to the discovery of admissible evidence; the
13 term "conceived" is not a legal term of art that is relevant to Larian's affirmative
14 claims for false designation of origin, affiliation, association or sponsorship, unfair
15 competition, dilution, and unjust enrichment.

16          Larian further objects to the extent that this interrogatory seeks
17 information that is outside Larian's knowledge and is not in Larian's possession,
18 custody, or control. In particular, Larian objects to this interrogatory to the extent
19 that it requests that Larian "IDENTIFY *all* PERSONS...and *all* DOCUMENTS"
20 (emphasis added).

21          Subject to and without waiving the foregoing objections, Larian
22 responds as follows:

23          The interrogatory appears to be directed to other parties. Larian does not
24 assert claims of copying or infringement against Mattel. MGA will respond to this
25 interrogatory.

26 **INTERROGATORY NO. 44:**

27          For each concept, design, product, product packaging or other matter
28 that YOU contend MATTEL copied or infringed, including but not limited to those

EXHIBIT ___ 110 ___

PAGE ___ 1774 ___

1  identified in MGA's Responses To Mattel, Inc.'s First Set Of Interrogatories Re
2  Claims Of Unfair Competition, Response To Interrogatory No. 2 (and any
3  Supplemental Responses to such Interrogatory), state the date that each such concept,
4  design, product, product packaging or other matter was first fixed in any tangible
5  medium of expression (if ever), and IDENTIFY all PERSONS with knowledge of,
6  and all DOCUMENTS that REFER OR RELATE TO, the foregoing.
7  **RESPONSE TO INTERROGATORY NO. 44:**
8      Larian incorporates by reference his General Response and General
9  Objections above, as though fully set forth herein and specifically incorporates
10 General Objection No. 7 (regarding Definitions), including without limitation its
11 objections to the terms IDENTIFY and REFER OR RELATE. Larian also objects to
12 this interrogatory to the extent it seeks information that is not subject to disclosure
13 under any applicable privilege, doctrine or immunity, including without limitation
14 the attorney-client privilege, the work product doctrine, the right of privacy, and all
15 other privileges recognized under the constitutional, statutory or decisional law of
16 the United States of America, the State of California or any other applicable
17 jurisdiction. Larian also objects to this interrogatory to the extent that it calls for a
18 legal conclusion.
19     Larian also objects to this interrogatory on the ground that it is
20 premature because the invention, creation, conception, or reduction to practice of
21 Bratz (and related issues) will be the subject of expert testimony at trial. Larian
22 objects to this interrogatory to the extent it seeks to limit the expert testimony that
23 Larian may seek to introduce at trial. Larian will identify his experts and make
24 related disclosures in accordance with the Court's orders and applicable rules.
25     Larian further objects to this interrogatory to the extent that it seeks
26 information that is not relevant to the claims or defenses of any party to this action
27 and not reasonably calculated to lead to the discovery of admissible evidence
28 because the phrase "fixed in a tangible medium of expression" is a legal term of art

EXHIBIT ___110___

PAGE ___1775___

1  that does not have relevance to Larian's affirmative claims, which are for false

2  designation of origin, affiliation, association or sponsorship, unfair competition,

3  dilution, and unjust enrichment.

4         Larian further objects to the extent that this interrogatory seeks

5  information that is outside Larian's knowledge and is not in Larian's possession,

6  custody, or control. In particular, Larian objects to this interrogatory to the extent

7  that it requests that Larian "IDENTIFY *all* PERSONS... and *all* DOCUMENTS"

8  (emphasis added).

9         Larian further objects to this interrogatory because Mattel has

10  propounded more than 50 interrogatories. Under Judge Larson's order of February

11  22, 2007, "Interrogatories are limited to 50 for each side for both [Case Nos. CV 04-

12  04049-SGL and CV 05-02727]."

13         Subject to and without waiving the foregoing objections, Larian

14  responds as follows: Larian is willing to meet and confer with Mattel regarding this

15  interrogatory and the obligation of Mattel to supplement its responses to MGA's First

16  Set of Interrogatories.

17  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 44:**

18         Larian incorporates by reference his General Response and General

19  Objections above, as though fully set forth herein and specifically incorporates

20  General Objection No. 7 (regarding Definitions), including without limitation its

21  objections to the terms IDENTIFY and REFER OR RELATE. Larian also objects to

22  this interrogatory to the extent it seeks information that is not subject to disclosure

23  under any applicable privilege, doctrine or immunity, including without limitation

24  the attorney-client privilege, the work product doctrine, the right of privacy, and all

25  other privileges recognized under the constitutional, statutory or decisional law of

26  the United States of America, the State of California or any other applicable

27  jurisdiction. Larian also objects to this interrogatory to the extent that it calls for a

28  legal conclusion.

32

EXHIBIT ___110___

PAGE ___1776___

1         Larian also objects to this interrogatory on the ground that it is

2    premature because the invention, creation, conception, or reduction to practice of

3    Bratz (and related issues) will be the subject of expert testimony at trial. Larian

4    objects to this interrogatory to the extent it seeks to limit the expert testimony that

5    Larian may seek to introduce at trial. Larian will identify his experts and make

6    related disclosures in accordance with the Court's orders and applicable rules.

7         Larian further objects to this interrogatory to the extent that it seeks

8    information that is not relevant to the claims or defenses of any party to this action

9    and not reasonably calculated to lead to the discovery of admissible evidence

10   because the phrase "fixed in a tangible medium of expression" is a legal term of art

11   that does not have relevance to Larian's affirmative claims, which are for false

12   designation of origin, affiliation, association or sponsorship, unfair competition,

13   dilution, and unjust enrichment.

14        Larian further objects to the extent that this interrogatory seeks

15   information that is outside Larian's knowledge and is not in Larian's possession,

16   custody, or control. In particular, Larian objects to this interrogatory to the extent

17   that it requests that Larian "IDENTIFY *all* PERSONS...and *all* DOCUMENTS"

18   (emphasis added).

19        Subject to and without waiving the foregoing objections, Larian

20   responds as follows:

21        The interrogatory appears to be directed to other parties. Larian does not

22   assert claims of copying or infringement against Mattel. MGA will respond to this

23   interrogatory.

24

25

26

27

28

33

LARIAN'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES

EXHIBIT _____ 11 0

PAGE _____ 177

1 | DATED: January 28, 2008
2
3 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4
5 | By: _____
   | Timothy A. Miller
6 | Attorneys for Counter-Defendants, MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT (HK) LTD., and MGAE de MEXICO S.R.L.de C.V.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

34

LARIAN'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES
203369-San Francisco Server 1A - MSW

EXHIBIT ___110___

PAGE ___1178___

1

## VERIFICATION

2      I, Isaac Larian, declare:

3          I have read ISAAC LARIAN'S THIRD SUPPLEMENTAL

4  RESPONSES TO MATTEL INC.'S AMENDED FOURTH SET OF

5  INTERROGATORIES (including the supplemental, second supplemental and third

6  supplemental responses) and know the contents thereof. The same is true of my own

7  knowledge, except as to those matters which are therein stated on information and

8  belief, and, as to those matters, I believe them to be true.

9          I declare under penalty of perjury under the laws of the United States

10  that the foregoing is true and correct.

11      Executed in Van Nuys, California on this 28 day of January, 2008.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

1

LARIAN'S 3RD SUPPLEMENTAL RESPONSE TO MATTEL'S AMENDED 4TH SET OF INTERROGATORIES
203369.01-San Francisco Server 1A                    MSW - Draft January 23, 2008 - 10:39 AM

EXHIBIT ____ 1/0

PAGE ____ 1779

# EXHIBIT 111

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES-GENERAL

CV04-09059-NM(RNBx)
CASE NO. CV05-02727-NM(RNBx)          DATE:  5/20/05

TITLE:   Mattel Inc. -v- Carter Bryant, et al
         MGA Entertainment Inc. -v- Mattel, Inc.

PRESENT:           HON. NORA M. MANELLA, JUDGE

Judith Hurley              N/A
Deputy Clerk               Court Reporter

ATTORNEY FOR PLAINTIFF        ATTORNEY  FOR DEFENDANT

    N/A                          N/A

PROCEEDINGS:  IN CHAMBERS

       Now that the Ninth Circuit has granted Mattel's petition for permission to file
an interlocutory appeal, all discovery in these actions is stayed pending the
determination of the appeal.  The stay of discovery also applies to pending &
prospective discovery motions.

cc: Counsel
CIVIL MINUTES 11

Initials of Deputy Clerk

REDACTED

EXHIBIT ___111___

PAGE ___1781___