# EXHIBIT 117

| | |
|---|---|
| **From:** | Judy Rich |
| **To:** | Mercedeh Ward |
| **CC:** | Cecilia Kwok; Samuel Wong |
| **BCC:** | |
| **Sent Date:** | 2000-10-16 15:35:51:828 |
| **Received Date:** | 2000-10-16 15:36:47:031 |
| **Subject:** | FW: Bratz |
| **Attachments:** | Clay.jpg |

Mercedeh,

I don't know if or how much Isaac has asked you to oversee the production of the Bratz
line, but I expect that your expertise will be needed, so I'm forwarding this to you.

Judy

Judy Rich
Project Planner
Product Development
MGA Entertainment
jrich@mgae.com
818/894-2525 x173
www.mgae.com

-----Original Message-----
From: Cecilia Kwok
Sent: Sunday, October 15, 2000 9:52 PM
To: Paula Treantafelles
Cc: Franki TSANG; Judy Rich; Samuel WONG
Subject: Bratz

Paula,

Have received the rough clay body for the captioned item today. Found that the height of the body is more
than 11". The doll height was 9.5 - 10" as per your package sent to HK before. Please clarify.
Enclosed is the photo for your reference.

Moreover, HK is still awaiting the following:
- PDF
- Fabric information

Please advise.

Regards,
Cecilia

EXHIBIT ___117___
PAGE ___1840___

Confidential - Attorney's Eyes Only                    MGA HK 0011155



Confidential - Attorney's Eyes Only

MGA HK 0011156

EXHIBIT ___117___

PAGE ___1841___

# EXHIBIT 118

7/18/03 WSJ A1
7/18/03 Wall St. J. A1
2003 WL-WSJ 3974434
(Publication page references are not available for this document.)

The Wall Street Journal
(Copyright (c) 2003, Dow Jones & Company, Inc.)

Friday, July 18, 2003

Dolled Up: To Lure Older Girls, Mattel Brings In Hip-Hop Crowd

---

It Sees Stalwart Barbie Lose Market Share, So 'Flavas' Will Take on the 'Bratz'

---

Battle of the Big Heads
By Maureen Tkacik

LOS ANGELES -- Tika, 10 inches tall with two-toned hair, is of ambiguous ethnic origin -- maybe she's Asian, maybe Latina -- but her "platinum" medallion, airbrushed jean jacket, shell-toe sneakers and graffiti-streaked packaging make one thing clear.

"She's like . . . hip-hop," said Crystal Audigier, 10 years old, as she rifled through the first crate of "Flavas" dolls to arrive at a Los Angeles FAO Schwarz late last week.

Mattel Inc. hopes the dolls are hip enough to take on the "Bratz." The Flavas (pronounced "Flay-vuhs," like "flavors"), a set of six dolls brought from design to production in just three months, represent a striking gamble for the giant toy company. In the 44 years since it introduced its bombshell Barbie, Mattel has rarely brought out a doll line to compete with her.

But Mattel, which had become accustomed to its buxom blonde dominating the market, has watched in alarm as Barbie has been challenged by a smaller toy maker's Bratz -- a line of big-headed, pouty-lipped characters. While Barbie, which posted about $1.7 billion in sales for Mattel last year, is still queen, her share of the so-called fashion-doll market has fallen, almost entirely due to the Bratz.

After trying -- and failing -- to defeat the Bratz with a trendier Barbie last year, Mattel has come up with a radical battle plan. Among other things, that means curtailing its reliance on, and near-reverence toward, its cash cow. While Barbie is still a plaything of choice for girls 3 to 7 years old, it's been years since she managed to hold the attention of the tweens, or 8- to 12- year-olds. With the Flavas, Mattel is trying to get back into that market -- even if it risks cannibalizing its biggest product.

Mattel has tweaked Barbie many times since she was introduced in 1959: bronzing her skin during the 1970s, introducing black and Hispanic counterparts and giving her a band (the fuchsia-clad "Rockers") during the 1980s. Mattel even shrunk her chest and widened her hips in 1998.

But Mattel now concedes Barbie has gradually lost touch with some young girls' lives. "Barbie began as a great girl who was simply a reflection of popular culture, but in the past few years we had sort of put her on a pedestal," says Matt Bousquette, president of the newly created Mattel Brands unit, which consolidated the boys' and girls' toys divisions. "We're taking her off that pedestal."

While Mr. Bousquette and his team overhaul Barbie, he is also enlisting the Flavas, who wear sweats and heavy chains and have names like "Tre" and "P. Bo," as a second force with which to fight the Bratz. Mattel says hip-hop -- which it defines as "a cultural phenomenon . . . dimensionalized through freestyle dance, street sports, music and fashion" -- has gained sufficient ground in the mainstream to have its own toy line.

"Mattel is recognizing that there are other trends besides Barbie that girls want to play with," says Manny Francione, divisional merchandise manager for Toys "R" Us Inc., Paramus, N.J. "Hip-hop is one of those trends."

The Bratz, developed by a toy maker called MGA Entertainment Inc., North Hills, Calif., were introduced in the summer of 2001. They became a hit with tweens, an age group of girls that the toy industry had almost written off.

For the past decade, toy makers have been grappling with a phenomenon analysts call "age compression," in which media-saturated youngsters are outgrowing dolls and other toys at an earlier age. NPD Group Inc., a market-research firm, says toy spending on children peaks at age 3 and steadily declines after

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

DEPOSITION EXHIBIT

M 0012536

EXHIBIT 118
PAGE 1842

7/18/03 WSJ A1
7/18/03 Wall St. J. A1
2003 WL-WSJ 3974434
(Publication page references are not available for this document.)

that, with spending on 12-year-olds at about a quarter of the peak level. By attracting tweens, the Bratz bucked that trend.

Bratz "appealed to an older girl . . . who is not necessarily still a Barbie customer," says Sean McGowan, a longtime industry analyst with Gerard Klauer Mattison. "Nothing's ever challenged Barbie like the Bratz." At Barbie's 1997 peak, a year in which Mattel posted $1.9 billion in sales of the doll, her clothing and accessories, she boasted more than a 90% share of the fashion-doll market, Mr. McGowan says. Barbie held at least 85% of the market right before the Bratz were introduced, he says, but her share has now dropped to about 70%.

The history of the Bratz is intertwined with Mattel. MGA says the Bratz were designed by Carter Bryant, a former member of the Barbie team. Inside Mattel, some are convinced the Bratz borrow liberally from a Mattel project that was scrapped at the testing stage in 1998, Mattel declined to comment.

Mr. Bryant didn't work on the line that Mattel scrapped, according to former and current Mattel designers. But most Barbie designers had seen the prototypes, his former colleagues say. Mr. Bryant, through MGA, declined to be interviewed.

The Mattel doll line that was scrapped wasn't exactly like the Bratz, says a longtime Mattel designer who worked on the project. But the Bratz's oversized heads -- with their pursed lips and cartoonish eyes -- are "virtually identical" to the heads of the dolls her team created, says the designer, who left Mattel in 2001.

Lily Martinez, a designer who still works at Mattel, came up with the idea for the big doll heads for Mattel, colleagues say. Mattel declined to comment. She even posted her sketch on her cubicle, colleagues say. "Anyone who passed by her cubicle would see the picture up on the wall," says another designer who also left Mattel in 2001. "The big heads, the big eyes, the big feet -- they were all the same" as the Bratz. Ms. Martinez declined to comment.

The Mattel dolls were scrapped in testing, current and

former designers say, because Mattel had strict quotas that allowed only one "flanker brand" -- that is, a brand that would compete with Barbie for shelf space -- on the market at a time. At the time, Mattel chose a product called "What's Her Face" -- a doll with a blank face on which kids could draw expressions. That doll remains on the market; Mattel declined to discuss its sales.

Designers say they often faced a higher bar for non-Barbie projects. And Barbie's image was carefully protected. Bruce Stein, who was president of Mattel until 1998, says that former Chief Executive Jill Barad nixed an idea for "Barbie as Xena" dolls in 1998.

Ms. Barad was replaced in 2000, after Mattel's disastrous $3.5 billion acquisition of a software maker called The Learning Company. Under her successor, Robert Eckert, a former Kraft Foods president, the company has returned to profitability by cutting its work force 10%, streamlining its supply chain and developing international sales, among other things. Mattel, which reported a net loss of $431 million in 2000, reported net income of $230 million last year. Its stock has risen about 76% since Mr. Eckert arrived.

Isaac Larian, chief executive of MGA, says he had never heard of a project similar to the Bratz at Mattel. He says he chose Mr. Bryant's idea for the Bratz over several others after holding a sort of fashion-doll design contest in late 1999.

Mr. Larian, who emigrated to the U.S. from Iran, founded his company in the late 1970s, making a name by picking up the license for hand-held Pac-Man games. Though his company had made baby dolls before, it had never made fashion dolls. He says he was motivated by a challenge from a Wal-Mart Stores Inc. buyer to "give me something that can compete with Barbie."

This year, closely held MGA expects revenue of about $800 million -- with 65% of that coming from the Bratz. The company says it's profitable, but won't discuss specifics. Mr. Bryant still does design work for MGA, Mr. Larian says, and collects royalties on the Bratz line.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

M 0012537

EXHIBIT 118
PAGE 1843

7/18/03 WSJ A1
7/18/03 Wall St. J. A1
2003 WL-WSJ 3974434
(Publication page references are not available for this document.)

Page 4

Mattel began worrying about the Bratz's momentum during the 2001 holiday season. Barbie sales fell 12% in the U.S. that year, despite a marketing campaign featuring an animated video, "Barbie in the Nutcracker."

By spring of 2002, Adrienne Fontanella, then president of the girls' division, decided to launch what the company termed a more "reality based" Barbie line. Like the Bratz, the "My Scene" Barbies boasted bigger heads and feet and fuller lips, as well as trendier clothes.

Mr. Larian, the head of MGA, calls the My Scene dolls a "cheap imitation" of the Bratz. Mattel declined to comment. Introduced in October 2002, the My Scene Barbies helped Mattel's sales, but still ranked behind the Bratz during the 2002 holiday season, according to NPD. "My Scene has been just OK for us," says Fred Hurley, a longtime girls'-toys buyer for KB Toys Inc., Pittsfield, Mass.

In February, Ms. Fontanella's job, along with others, was eliminated in what Mr. Eckert called a "restructuring" of Mattel's executive ranks aimed at "increasing efficiency."

Mr. Bousquette, the then-head of Mattel's boys' toy division, became the first man to take control of Barbie in more than a decade. "It used to be that whoever ran Barbie ran the company, not the other way around," says Mr. Stein, the former president. "For Matt to be in charge is a major shift."

Mattel no longer has quotas on how many products can compete with Barbie. After sitting through a girls'-design-team presentation in March, Mr. Bousquette seized upon the Flavas as the ideal dolls to compete for the dollars of Bratz buyers. Ivy Ross, head of girls' design, suggested bringing them to market for the spring 2004 season. Mr. Bousquette said the company should aim for this July instead.

"We were stunned," says a designer who worked on the Flavas and left the company in May. Another surprise: Mr. Bousquette asked the team to make the dolls look more hip-hop than the prototypes. "No one had really believed in the concept before that meeting, and it was stuck in this back-and-forth where first they were too edgy, then they weren't edgy enough," says the designer. "Matt came through and cut all of that out." Mr. Bousquette says he told designers to make the dolls "as authentic as possible, as quickly as possible."

Flavas are more complicated to manufacture than most fashion dolls. They are all different heights -- meaning separate molds -- and they have 10 points at which they can move, allowing them to strike a variety of poses. The Flavas design team often slept in their cubicles to get the dolls ready in time for summer shipment. Two designers each clocked 53 hours during Memorial Day weekend to prepare the line for the company's annual toy fair held in the first week of June.

Some buyers have been impressed. Mattel's girls' division "has never been a particularly forward-thinking group, but the Flavas are right on trend," says KB's Mr. Hurley. The six dolls in the Flavas line are certainly edgier than anyone in Barbie's clique. The Flavas girls have highlighted hair, flashier jewelry and wear midriff-baring tops with low-slung pants. Unlike Barbie, they have flat feet and wear sneakers. The two boy Flavas dolls sport earrings and serious expressions. Boxer underwear appears to show from the top of their cargo pants.

The Flavas come in boxes splashed with black-and-white photos of urban scenes shot around Venice Beach. When arranged together, the boxes create a "graffiti" mural that reads: "FA' SIZZLE." It is a play on the hip-hop expression "Fa' shizzle," which means "For sure." Marketing director Lisa Tauber explains that it is also an acronym that stands for "Fashion, Attitude and Sizzlin' Style." The dolls, aimed at 9- to 11-year-olds, are "all about fearless self- expression," she says.

MGA's Mr. Larian says he isn't scared by the Flavas. "The only thing that's missing is a cocaine vial," he says. "You think of Mattel, you think of Barbie and you think of sweetness. . . . This is like 'gangster' Barbie, and I think it's going to backfire."

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

M 0012538

EXHIBIT     118

E     1844

7/18/03 WSJ A1
7/18/03 Wall St. J. A1                                                                    Page 5
2003 WL-WSJ 3974434
(Publication page references are not available for this document.)

Telejah Dean, a nine-year-old from West Los Angeles noticed the Flavas last week, as she was admiring Mattel's Mary-Kate and Ashley dolls. The Flavas are "not as pretty as Barbie," she said. But her older sister, Tiffany, 22, seemed impressed by the blond Happy D. doll. "Look, she's got black [hair] extensions like Christina," she exclaimed, referring to pop singer Christina Aguilera.

In fact, Mattel has hired people to give out Flavas hats, wristbands and decals during Ms. Aguilera's concert tour this summer. Ms. Aguilera, who got her start on the Disney Channel, is now probably as well known for her 11 body piercings and her mud wrestling-themed MTV video called "Dirrty."It's a sign of the changing times, says Mattel spokeswoman Julia Jensen. "The old Mattel probably wouldn't try to tie up with someone like Christina Aguilera."

        ---- INDEX REFERENCES ----

COMPANY:          KB Holdings LLC (KBTY);
Mattel Inc (MATL)

NEWS SUBJECT:        (Marketing (C31); Market Share (C313); Corporate/Industrial News (CCAT); Content Types (NCAT); Page-One Story (NPAG); Editor's Choice - Consumer Products (REQRCP); Editor's Choice - Industry Trends/Analysis (REQR))

INDUSTRY:           (Dolls/Toys/Games (I4941); Retail (I64); Specialty Stores (I654); Hobby/Toy/Game Stores (I6540030); Consumer Products (ICNP); Media (IMED))

REGION:           (North American Countries (NAMZ); United States (USA); United States - California (USCA); Northeast U.S. (USE); United States - Massachusetts (USMA); Western U.S. (USW))

OTHER INDEXING:      Marketing; Market Share; Page-One Story; Content Types; Corporate/Industrial News; United States - California; United States - Massachusetts; United States; Northeast U.S.; Western U.S.; North American Countries; Dolls/Toys/Games; Retail; Specialty Stores; Hobby/Toy/Game Stores; Consumer Products;

Media; Consumer Cyclical; Newswire More Code; Newswire End Code; All Entertainment & Leisure; Limited Product Specialty Retailers; Recreational Products & Services; All Specialty Retailers; Toys; Islamic Index; S&P 500 Index component; Newspapers' Section Fronts; Marketing; Market

Word Count: 2217

7/18/03 WSJ A1

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

M 0012539

EXHIBIT _____ 118
PG _____ 1845

# EXHIBIT 119

R    S, AUGUST, KABAT & KEN'
A PROFESSIONAL CORPORATION
12424 WILSHIRE BOULEVARD, SUITE 1200
LOS ANGELES, CALIFORNIA 90025
TELEPHONE   (310) 826-7474
IM FACSIMILE:   (310) 826-4416

## FACSIMILE TRANSMITTAL SHEET

| Date: | | | Total No. Of Pages Including Cover: |
|---|---|---|---|
| December 7, 2000 | | | 10 |
| To: | Company: | Telephone: | Facsimile: |
| Ms. Paula Treantafelles | ABC Intl. Traders, Inc. dba MGA Entertainment | | 818: 894-8094 |
| From: | | Re: | |
| Lucy B. Arant, Esq. By Sharon Lippman Legal Assistant  S. L. | | Four New Intent to Use U.S. Trademark Applications: In International Class 28 For: JADE Our Ref: 005833:2067-64:LBA:sl For: YASMIN Our Ref: 005834:2067-55:LBA:sl For: SASHA Our Ref: 005835:2067-56:LBA:sl For: BRATZ Our Ref:005836:2067-57:LBA:sl | |

Original will follow:   Yes  ☐    No  ✕

### CONFIDENTIALITY NOTICE
THE DOCUMENTS ACCOMPANYING THIS FACSIMILE TRANSMISSION MAY CONTAIN CONFIDENTIAL INFORMATION WHICH IS LEGALLY PRIVILEGED. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. If the reader of this message is not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in this transmission is strictly PROHIBITED.

IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL FACSIMILE TO US ADDRESSED TO: Russ, August, Kabat & Kent, 12424 Wilshire Boulevard, Suite 1200, Los Angeles, California 90025.

If there are any transmission problems please call (310) 826-7474     C/M  2067 54-57 FAX Paula 001207

---

## TRANSMISSION REPORT

## THIS DOCUMENT WAS CONFIRMED
## (REDUCED SAMPLE ABOVE  -  SEE DETAILS BELOW)

### ** COUNT **
## TOTAL PAGES SCANNED    :  10
## TOTAL PAGES CONFIRMED  :  10

*** SEND ***

| No. | REMOTE STATION | START TIME | DURATION | #PAGES | MODE | RESULTS |
|---|---|---|---|---|---|---|
| 1 | 8188948094 | 12- 7- 0  1:37PM | 2'36" | 10/ 10 | EC | COMPLETED 14400 |
| | | TOTAL | 0:02 36" | 10 | | |

NOTE :
No. : OPERATION NUMBER    48 : 4800BPS SELECTED    EC : ERROR CORRECT    G2 : G2 COMMUNICATION
PB : POLLED BY REMOTE    SF : STORE & FORWARD    RI : RELAY INITIATE    RS : RELAY STATION
MB : SEND TO MAILBOX    PG : POLLING A REMOTE    MP : MULTI-POLLING    RM : RECEIVE TO MEMORY

EXHIBIT  119

PAGE  1846

Confidential - Attorney's Eyes Only                                        MGA 0829296

# RUSS, AUGUST, KABAT & KENT

A PROFESSIONAL CORPORATION
12424 WILSHIRE BOULEVARD, SUITE 1200
LOS ANGELES, CALIFORNIA 90025
TELEPHONE: (310) 826-7474
TM FACSIMILE: (310) 826-4415

**Dear Paula:** Per your telephone conference with Sharon, my legal assistant, enclosed please find the four above-identified intent to use trademark applications for Mr. Larian's review and signature. We can file the applications today if the signed applications are faxed to our trademark fax number which is: 310:826-4415. You indicated that all four of the applications have a date of first use of June 15, 2000. Please confirm that this is correct. As soon as you have four specimens for each mark, please provide us with the specimens. If you have any questions, please contact Sharon at 310: 826-7474, ext. 235. I will have the results of the search you requested late this afternoon. Very truly yours, Lucy B. Arant

---

### CONFIDENTIALITY NOTICE

THE DOCUMENTS ACCOMPANYING THIS FACSIMILE TRANSMISSION
MAY CONTAIN CONFIDENTIAL INFORMATION WHICH IS LEGALLY PRIVILEGED.
THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE.
If the reader of this message is not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in this transmission is strictly PROHIBITED.

IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY
US BY TELEPHONE AND RETURN THE ORIGINAL FACSIMILE TO US ADDRESSED TO:
Russ, August, Kabat & Kent, 12424 Wilshire Boulevard, Suite 1200, Los Angeles, California 90025.

---

If there are any transmission problems please call (310) 826-7474    C/M: 2067 54-57 FAX Paula 001207

EXHIBIT ___119___

PAGE ___1847___

Confidential - Attorney's Eyes Only

MGA 0829297

UNITED STATES
APPLICATION FOR REGISTRATION

Mark: <u>IADE</u>

Class(es): <u>28</u>

To the Assistant Secretary and Commissioner of Patents and Trademarks:

<u>ABC INTERNATIONAL TRADERS, INC. d/b/a/ MGA ENTERTAINMENT</u>
(Name of Applicant)

<u>A California Corporation</u>
(Citizenship of applicant-or-members of firm-or-jurisdiction in which corporation formed)

<u>16730 Schoenborn Street, North Hills, California 91343</u>
(Complete business address)

The Applicant requests registration of the above-identified trademark/service mark shown in the accompanying drawing in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. 1051 et. seq., as amended) for the following goods/services: <u>DOLLS in International Class 28.</u>

The applicant has a bona fide intention to use the mark in commerce on or in connection with the above identified goods/services. (15U.S.C.1051(b), as amended.)

The intended manner or mode of use of mark on or in connection with the goods is: <u>By applying the mark directly to the goods, on packaging for the goods, and in other customary means of the trade.</u>

**The undersigned <u>Isaac E. Larian,</u> declares that he/she**

(for corporation) is a (title of officer) <u>President and Chief Executive Officer</u> of applicant **corporation and is authorized to execute this declaration on behalf of said corporation; that he/she believes said corporation to be entitled to use such mark in commerce; that to the best of his/her knowledge and belief no other person, firm, corporation or association has the right to use said mark in commerce, either in the identical form or in such near resemblance thereto as may be likely, when applied to the goods of such other person, to cause confusion, or to cause mistake, or to deceive; that all statements made herein of his/her own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or document or any registration resulting therefrom.**

2067 54 1TU 001207

1

EXHIBIT ___119___

PAGE ___1848___

Confidential - Attorney's Eyes Only

MGA 0829298

## POWER OF ATTORNEY

Applicant hereby appoints jointly and severally, with full power of substitution, the power of appointment of an associate attorney and the power of revocation:

Evan M. Kent                     Lucy B. Arant                France D. Lemoine

all members of the Bar of the State of California.

### c/o RUSS, AUGUST, KABAT & KENT
**12424 Wilshire Boulevard, 12th Floor,**
**Los Angeles, CA 90025 U.S.A.**

12424 Wilshire Boulevard, 12th Floor, Los Angeles, CA 90025 U.S.A., to prosecute this application to register, to transact all business in the Patent and Trademark Office in connection therewith, and to receive the Certificate of Registration.

Date _____

Signature _____

Isaac E. Larian _____
Name

President and Chief Executive Officer _____
Title

2061 S4 ITU 001207

2

EXHIBIT ___119___
PAGE ___1849___

Confidential - Attorney's Eyes Only

MGA 0829299

**UNITED STATES**
**APPLICATION FOR REGISTRATION**

Mark: <u>YASMIN</u>

Class(es): <u>28</u>

To the Assistant Secretary and Commissioner of Patents and Trademarks:

<u>ABC INTERNATIONAL TRADERS, INC. d/b/a/ MGA ENTERTAINMENT</u>
(Name of Applicant)

<u>A California Corporation</u>
(Citizenship of applicant-or-members of firm-or-jurisdiction in which corporation formed)

<u>16730 Schoenborn Street, North Hills, California 91343</u>
(Complete business address)

The Applicant requests registration of the above-identified trademark/service mark shown in the accompanying drawing in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. 1051 et. seq., as amended) for the following goods/services: <u>DOLLS in International Class 28.</u>

The applicant has a bona fide intention to use the mark in commerce on or in connection with the above identified goods/services. (15U.S.C.1051(b), as amended.)

The intended manner or mode of use of mark on or in connection with the goods is: <u>By applying the mark directly to the goods, on packaging for the goods, and in other customary means of the trade.</u>

The undersigned <u>Isaac E. Larian</u>, declares that he/she

(for corporation) is a (title of officer) <u>President and Chief Executive Officer</u> of applicant corporation and is authorized to execute this declaration on behalf of said corporation; that he/she believes said corporation to be entitled to use such mark in commerce; that to the best of his/her knowledge and belief no other person, firm, corporation or association has the right to use said mark in commerce, either in the identical form or in such near resemblance thereto as may be likely, when applied to the goods of such other person, to cause confusion, or to cause mistake, or to deceive; that all statements made herein of his/her own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or document or any registration resulting therefrom.

206755 ITU 001207

1

EXHIBIT ___119___

PAGE ___1850___

Confidential - Attorney's Eyes Only

MGA 0829300

## POWER OF ATTORNEY

Applicant hereby appoints jointly and severally, with full power of substitution, the power of appointment of an associate attorney and the power of revocation:

Evan M. Kent                    Lucy B. Arant                    France D. Lemoine

all members of the Bar of the State of California.

**c/o RUSS, AUGUST, KABAT & KENT**
**12424 Wilshire Boulevard, 12th Floor,**
**Los Angeles, CA 90025 U.S.A.**

12424 Wilshire Boulevard, 12th Floor, Los Angeles, CA 90025 U.S.A., to prosecute this application to register, to transact all business in the Patent and Trademark Office in connection therewith, and to receive the Certificate of Registration.

_____
Date

_____
Signature

Isaac E. Larian_____
Name

President and Chief Executive Officer_____
Title

2

EXHIBIT _____ 119

PAGE _____ 1851

Confidential - Attorney's Eyes Only                              MGA 0829301

## UNITED STATES
## APPLICATION FOR REGISTRATION

Mark: <u>SASHA</u>

Class(es): <u>28</u>

To the Assistant Secretary and Commissioner of Patents and Trademarks:

<u>ABC INTERNATIONAL TRADERS, INC. d/b/a/ MGA ENTERTAINMENT</u>
(Name of Applicant)

<u>A California Corporation</u>
(Citizenship of applicant-or-members of firm-or-jurisdiction in which corporation formed)

<u>16730 Schoenborn Street, North Hills, California 91343</u>
(Complete business address)

The Applicant requests registration of the above-identified trademark/service mark shown in the accompanying drawing in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. 1051 et. seq., as amended) for the following goods/services: <u>DOLLS in International Class 28.</u>

The applicant has a bona fide intention to use the mark in commerce on or in connection with the above identified goods/services. (15U.S.C.1051(b), as amended.)

The intended manner or mode of use of mark on or in connection with the goods is: <u>By applying the mark directly to the goods, on packaging for the goods, and in other customary means of the trade.</u>

**The undersigned <u>Isaac E. Larian</u>, declares that he/she**

(for corporation) is a (title of officer) <u>President and Chief Executive Officer</u> of applicant corporation and is authorized to execute this declaration on behalf of said corporation; that he/she believes said corporation to be entitled to use such mark in commerce; that to the best of his/her knowledge and belief no other person, firm, corporation or association has the right to use said mark in commerce, either in the identical form or in such near resemblance thereto as may be likely, when applied to the goods of such other person, to cause confusion, or to cause mistake, or to deceive; that all statements made herein of his/her own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or document or any registration resulting therefrom.

2067 S6-ITU 061207

1

EXHIBIT ____119

PAGE ____1852

Confidential - Attorney's Eyes Only

MGA 0829302

## POWER OF ATTORNEY

Applicant hereby appoints jointly and severally, with full power of substitution, the power of appointment of an associate attorney and the power of revocation:

Evan M. Kent                    Lucy B. Arant                    France D. Lemoine

all members of the Bar of the State of California.

c/o **RUSS, AUGUST, KABAT & KENT**
**12424 Wilshire Boulevard, 12th Floor,**
**Los Angeles, CA 90025 U.S.A.**

12424 Wilshire Boulevard, 12th Floor, Los Angeles, CA 90025 U.S.A., to prosecute this application to register, to transact all business in the Patent and Trademark Office in connection therewith, and to receive the Certificate of Registration.

_____
Date

_____
Signature

Isaac E. Larian_____
Name

President and Chief Executive Officer____
Title

2067 Sn ITU 001207                                    2

EXHIBIT ____119____

PAGE ____1853____

Confidential - Attorney's Eyes Only                                    MGA 0829303

## UNITED STATES
## APPLICATION FOR REGISTRATION

Mark: <u>BRATZ</u>

Class(es): <u>28</u>

. To the Assistant Secretary and Commissioner of Patents and Trademarks:

<u>ABC INTERNATIONAL TRADERS, INC. d/b/a/ MGA ENTERTAINMENT</u>
(Name of Applicant)

<u>A California Corporation</u>
(Citizenship of applicant-or-members of firm-or-jurisdiction in which corporation formed)

<u>16730 Schoenborn Street, North Hills, California 91343</u>
(Complete business address)

The Applicant requests registration of the above-identified trademark/service mark shown in the accompanying drawing in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. 1051 et. seq., as amended) for the following goods/services: <u>DOLLS in International Class 28.</u>

The applicant has a bona fide intention to use the mark in commerce on or in connection with the above identified goods/services. (15U.S.C.1051(b), as amended.)

The intended manner or mode of use of mark on or in connection with the goods is: <u>By applying the mark directly to the goods, on packaging for the goods, and in other customary means of the trade.</u>

**The undersigned** <u>Isaac E. Larian</u>, declares that he/she

(for corporation) **is a** (title of officer) <u>President and Chief Executive Officer</u> of applicant corporation and is authorized to execute this declaration on behalf of said corporation; that he/she believes said corporation to be entitled to use such mark in commerce; that to the best of his/her knowledge and belief no other person, firm, corporation or association has the right to use said mark in commerce, either in the identical form or in such near resemblance thereto as may be likely, when applied to the goods of such other person, to cause confusion, or to cause mistake, or to deceive; that all statements made herein of his/her own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or document or any registration resulting therefrom.

2067 57 ITU 001207

1

EXHIBIT _____ 119

PAGE _____ 1854

Confidential - Attorney's Eyes Only                                          MGA 0829304

## POWER OF ATTORNEY

Applicant hereby appoints jointly and severally, with full power of substitution, the power of appointment of an associate attorney and the power of revocation:

Evan M. Kent                     Lucy B. Arant                     France D. Lemoine

all members of the Bar of the State of California.

**c/o RUSS, AUGUST, KABAT & KENT**
**12424 Wilshire Boulevard, 12th Floor,**
**Los Angeles, CA 90025 U.S.A.**

12424 Wilshire Boulevard, 12th Floor, Los Angeles, CA 90025 U.S.A., to prosecute this application to register, to transact all business in the Patent and Trademark Office in connection therewith, and to receive the Certificate of Registration.

Date _____          Signature _____

                                       Isaac E. Larian_____
                                       Name

                                       President and Chief Executive Officer_____
                                       Title

2067 57 JTU 001207

2

EXHIBIT ___119

PAGE ___1855

Confidential - Attorney's Eyes Only

MGA 0829305

# EXHIBIT 120

6 - 13 - 3

JOHN NEWTON & SONS

SCRIVENER NOTARIES
TRANSLATORS OF LANGUAGES

ALBERT BUILDINGS
49 QUEEN VICTORIA STREET
LONDON    EC4N 4SA

Telephone
(020) - 7329 2002/7329 0022

International
(+44) - 20 - 7329 2002/7329/2022

Facsimile
(020) - 7329 0025

International
(+44) - 20 - 7329 0025

E-Mail: Johnnewtonsons@BTinternet.com

BARRINGTON W. HOOKE, LL.B.
Scrivener Notary
Translator of Languages

Mobile
(07802) - 47 56 49

THIS IS THE EXHIBIT MARKED "RDB13" MENTIONED AND
REFERRED TO IN THE AFFIDAVIT OF   RAYMOND DAVID
BLACK MADE BEFORE ME THIS 13th DAY OF JUNE 2003

BARRINGTON WILLIAM HOOKE.
NOTARY PUBLIC, LONDON.

EXHIBIT _____ 120
PAGE _____ 1856



Confidential - Attorney's Eyes Only                                    MGA 0885348

HCA No. 1883/2003

IN THE HIGH COURT OF THE

HONG KONG SPECIAL ADMINISTRATIVE REGION

COURT OF FIRST INSTANCE

CIVIL ACTION NO. 1883 OF 2003

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BETWEEN

MGA ENTERTAINMENT INC.                    1st Plaintiff

MGA ENTERTAINMENT (HK) LIMITED            2nd Plaintiff

And

DOUBLE GRAND CORPORATION LIMITED    Defendant

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This is the marked exhibit referred to in the Affidavit of Raymond David Black dated the 13 day of June 2003.

| Exhibit Ref | Date | Description | Page No. |
|---|---|---|---|
| RDB13 | 21 May 2003 & 3 June 2003 | Copies of claim form and particulars of claim | 11 |

Before me.

EXHIBIT ____120____

PAGE ____1857____

Confidential - Attorney's Eyes Only                                      MGA 0885349



**Claim Form**

| In the | High Court of Justice |
| | Chancery Division |
| Claim No. | HC03C01893 |

Claimant

MGA ENTERTAINMENT, INC.
16730 Schoenborn Street
North Hills
California
CA 913453
United States of America



Defendant(s)

JAMES THOMAS CONNOLLY
19 Whitehouses
Mytholmroyd
Hebden Bridge
Halifax
West Yorkshire
HX7 5AB

Does your claim include any issues under the Human Rights Act 1998? ☐ Yes ☒ No

Brief details of claim

The claim is for copyright and registered design right infringement. Please refer to the attached document entitled "Brief details of claim".

Value

The Claimant cannot say how much it expects to recover, but should exceed £15,000 and not more than £50,000.

Defendants name and address

JAMES THOMAS CONNOLLY
19 Whitehouses
Mytholmroyd
Hebden Bridge
Halifax
West Yorkshire
HX7 5AB

| Amount Claimed | Unspecified Amount |
| Court Fee | |
| Solicitor's costs | To Be Assessed |
| Total amount | |
| Issue date | 21 May 2003 |

The Court office at
Chancery Chambers, Thomas Moore Building, Royal Courts of Justice, Strand, London, WC2A 2LL.
is open from 10am to 4.30pm Monday to Friday. When corresponding with the court please address forms or letters to the ___ and quote the claim number.

N7 Claim Form (CPR Part 7) (10.00) #289401

EXHIBIT 120

PAGE 1858

Confidential - Attorney's Eyes Only MGA 0885350

| Claim Number | |
|---|---|

Particulars of Claim ~~(attached)~~ (to follow)

Statement of Truth
* ~~(I believe)~~ ( The Claimant believes) that the facts stated in these particulars of claim are true.
* I am duly authorised by the claimant to sign this statement

Full Name                                          Raymond David Black
Name of claimant's solicitor's firm            SJ Berwin & Co

signed                                                 position or office held  Partner
(Claimant's solicitor)
*delete as appropriate

SJ Berwin
222 Gray's Inn Road
London        WC1X 8XF
Ref: M17447.49
DX no:  DX 255 LONDON   CHANCERY LANE
Tel no:   0207 533 2222
Fax no:   020 7533 2000

Claimant's or claimant's solicitor's address to
which documents or payments should be sent if
different from overleaf including (if appropriate)
details of DX, fax or e-mail

EXHIBIT 120
PAGE 1857

Confidential - Attorney's Eyes Only

MGA 0885351

Brief details of claim:

THE CLAIMANT CLAIM IS FOR:

1.  An injunction to restrain the Defendant whether acting by himself, his servants or agents or any of them or otherwise howsoever from doing the following acts or any of them that is to say:

    1.1.  infringing registered design nos. 2103577, 2103578, 2103579 and 2103580; and

    1.2.  infringing copyright in the drawings annexed at Schedule 1.

2.  An injunction to restrain the Defendant whether acting by himself, his servants, or agents or any of them or otherwise howsoever from manufacturing, selling, offering for sale, importing, exporting, distributing, ordering, purchasing, advertising, supplying, disposing of or otherwise howsoever dealing in or with the MINI TRENDY TEENZ and TRENDY TEENZ dolls, ROCKERHEADZ BOBBLE PENS and ROCKERHEADZ BOBBLEHEAD FASHION DOLLS representations of which are annexed at Schedule 2.

3.  An Order for delivery up to the Claimant or the Claimant's legal representative, SJ Berwin, or alternatively, destruction upon oath, of all infringing goods, articles and materials in the power, possession, custody or control of the Defendant together with confirmation on Affidavit sworn by the Defendant that such delivery up (or destruction) has been completed.

4.  An Order that the Defendant serve, within 7 (seven) days of the date of this Order, a statutory declaration upon SJ Berwin setting out in full:

    4.1  the names and addresses of all persons from whom the Defendant has obtained supplies of MINI TRENDY TEENZ and TRENDY TEENZ dolls, ROCKERHEADZ BOBBLE Pen's and ROCKERHEADZ

EXHIBIT ___120___

PAGE ___1860___

#289376.1

1

Confidential - Attorney's Eyes Only

MGA 0885352

BOBBLEHEAD FASHION dolls (or any of them) ("the Infringing Articles");

4.2    the names and addresses of all persons from whom the Defendant has received orders or to whom the Defendant has supplied and/or distributed the Infringing Articles (or any of them); and

4.3    the particulars of quantities of the Infringing Articles (or any of them) which the Defendant has manufactured, purchased, sold, supplied and/or distributed together with copies of purchase orders, sales orders, invoices and other documents evidencing such transactions.

5.    An inquiry as to damages for copyright and registered design infringement or, at the option of the Claimant, an account of profits.

6.    An Order for payment of all sums found to be due to the Claimant on the taking of the inquiry or account, such sums to be paid together with interest pursuant to section 35A of the Supreme Court Act 1981 or under the equitable jurisdiction of the Court.

7.    Further or other relief.

8.    Costs.

EXHIBIT _____ 120

PAGE _____ 1861

Confidential - Attorney's Eyes Only

# SCHEDULE 1

EXHIBIT ___ 120

PAGE ___ 1861.001

Confidential - Attorney's Eyes Only

MGA 0885354

6.4.23



face design, Fall 2001

EXHIBIT 120

PAGE 1861.002

Confidential - Attorney's Eyes Only

MGA 0885355

6.4.04



Yasmin
original face design,
Fall 2001

EXHIBIT ___170___

PAGE ___1861.003___

Confidential - Attorney's Eyes Only                    MGA 0885356

6.4.25



*Cloe original
face design
Fall 2001*

EXHIBIT ___120___

PAGE ___1 861.004___

Confidential – Attorney's Eyes Only

MGA 0885357

6.4.26



face design

EXHIBIT 120

PAGE 1861.005

Confidential - Attorney's Eyes Only

MGA 0885358



8/1998

EXHIBIT ____ 120

PAGE ____ 1861.026

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Confidential - Attorney's Eyes Only

MGA 0885359



EXHIBIT 120

PAGE 1861.007

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date 9/15/00

Confidential – Attorney's Eyes Only



8/1998

EXHIBIT ___ 120
PAGE ___ 1861.008

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Current date 9/15/00

Confidential – Attorney's Eyes Only

MGA 0885361



1998

EXHIBIT 120

PAGE 1861.009

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date 9/18/00

Confidential – Attorney's Eyes Only

MGA 0885362



EXHIBIT _____ 120 _____

PAGE _____ 1861. 010 _____

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date   a/18/00

MGA 0885363



© 8/1998

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

EXHIBIT _____ 120

PAGE _____ 1861.011

Confidential – Attorney's Eyes Only

MGA 0885364



8/1998

EXHIBIT ___ 120

PAGE ___ 1861.012

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Confidential – Attorney's Eyes Only

MGA 0885365



8/1998

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date 9/18/00

EXHIBIT ___ 120

PAGE ___ 1861.013

Confidential – Attorney's Eyes Only

MGA 0885366



EXHIBIT ___120___

PAGE ___1861.014___

Ⓒ

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Confidential - Attorney's Eyes Only

MGA 0885367



EXHIBIT __120__

PAGE __1861.015__

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date 9/18/00

Confidential - Attorney's Eyes Only

MGA 0885368

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

EXHIBIT 120

PAGE 1861.016

Confidential - Attorney's Eyes Only

MGA 0885369



All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date 9/18/00

EXHIBIT ___ 120

PAGE ___ 1861.017

Confidential – Attorney's Eyes Only

MGA 0885370



EXHIBIT _120_

PAGE _1861.018_

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

JUNE 2000

Confidential - Attorney's Eyes Only

MGA 0885371

# SCHEDULE 2

1111/M17447.49/LT:289394.1/lacs

EXHIBIT ___120___

PAGE ___1861.019___

Confidential - Attorney's Eyes Only

MGA 0885372



EXHIBIT 120

PAGE 1861.020

Confidential - Attorney's Eyes Only

EXHIBIT ___120___

PAGE ___1961.021___

Confidential – Attorney's Eyes Only

ROCKERHEADZ BOBBLE PENS



EXHIBIT ___120___

PAGE ___1861.022___

Confidential - Attorney's Eyes Only



EXHIBIT ___120___

PAGE ___1861.023___

Confidential - Attorney's Eyes Only

IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

Claim form issued 21 May 2003

B E T W E E N:

MGA ENTERTAINMENT, INC.

Claimant

- and -

JAMES THOMAS CONNOLLY

Defendant

## PARTICULARS OF CLAIM

A       Background to the Claimant

1       The Claimant, formerly known as ABC International Traders, Inc., is a United States corporation, organised and existing under the laws of California.

2       Since 1987 the Claimant has built up a substantial reputation throughout the world (including the UK) in the toy business and has held certain rights to well known and successful products such as the NINTENDO GAMEBOY and POWER RANGERS products.

3       The Claimant now has 8 product categories; smart toys, interactive dolls, handheld games, fashion dolls, youth electronics, music, license products and small dolls.

B       BRATZ range of dolls

4       Since 2001, the Claimant has marketed a doll under the trade mark, "BRATZ". There are five female dolls in the BRATZ range: Chloe, Sacha, Yasmin, Dana and Jade.

5       The Claimant has sold over 45 million units of BRATZ dolls worldwide and the BRATZ range of dolls has won numerous awards in the US including the Familiy Fun Toy of the Year for 2001 and 2002 and the Toy Industry Association's People's Choice Toy of the Year for 2001 and 2002.

EXHIBIT ___120___

PAGE ___1861.024___

Confidential - Attorney's Eyes Only

6      The "BRATZ dolls" and various accessories are marketed and sold in the European
Union, the Americas, Australia, New Zealand, Philippines, Indonesia, Israel, Japan and
Switzerland. Details of these dolls are found on the website www.bratzpack.com.

C      **Copyright**

7      The designs of the BRATZ dolls were originally created by Mr Carter Bryant in 1999 and
subsequently amended.  Copies of the drawings of the designs are at Schedule 1
("Drawings").

8      Copyright subsists in the Drawings and the Claimant owns such copyright.

**PARTICULARS**

8.1      The Drawings are original artistic works within the meaning of section 1 of the
Copyright Designs and Patents Act 1988 ("the Act").

8.2      Mr Byrant is and has been at all relevant times a qualifying person within the
meaning of sections 154 and 155 of the Act. Mr Bryant is a citizen of the United
States of America, and the dolls were first published in the United States on or
about November 2001.  Mr Bryant is still alive and when he prepared the
Drawings he was a resident of and domiciled in the United States, which is a
signatory to the Berne Convention.

8.3      Mr Bryant is the author and first owner of the Drawings by virtue of sections 9(1)
and 11(1) of the Act.

8.4      On 18 September 2000, the Claimant entered into an agreement with Mr Bryant
in relation to the design and development of the BRATZ dolls ("the Design
Agreement").  A copy of the Design Agreement is produced at Schedule 2.
Clause 3 (a) of the Design Agreement provides that the Claimant will be the
worldwide owner of the copyright in any works produced pursuant to the Design
Agreement. Clause 3 (b) provides that Mr Bryant assigns to the Claimant the
worldwide copyright in any works prepared relating to the "BRATZ dolls" prior to
the commencement of the Design Agreement.

8.5      Pursuant to Sections 12(2), 12(6), 15A and 52 of the Act, copyright in the
Drawings still subsists.

EXHIBIT ___120___

D      Registered Designs                              PAGE ___1561.025___

Confidential - Attorney's Eyes Only                                   MGA 0885378

The Claimant is also the registered proprietor of the following registered design rights (hereinafter "Registered Designs");

8.1     UK registered design number 2103577;

8.2     UK registered design number 2103578;

8.3     UK registered design number 2103579;

8.4     UK registered design number 2103580;

Each of these Registered Designs is and at all material times, have been valid and subsisting.

E       **Defendant's Activities**

10      The Defendant is a distributor and seller of toys and other goods in the UK. The Defendant sources his goods from the Far East. Until 31 January 2003, the Defendant was a director of Toy Depot Limited in the UK. Until a time unknown to the Claimant, the Defendant was a partner in Toy Depot (Far East) Company based in Hong Kong. As from 1 April 2002, the Defendant has been and as far as the Claimant is aware remains a partner of Toy Depot (Far East) Company, a partnership registered in Hong Kong.

(i)     **MINI TRENDY TEENZ and TRENDY TEENZ Dolls**

11      The Claimant learnt that Toy Depot Limited had been trading in a doll called the MINI TRENDY TEENZ (a photograph is at Schedule 3) and the Claimant's solicitors, SJ Berwin sent a cease and desist letter to Toy Depot Limited on 7 March 2003.

12      Mr Alan Brown, an officer of Toy Depot Limited, disclosed to SJ Berwin that Toy Depot Limited had imported and sold 4,800 sets of MINI TRENDY TEENZ dolls and 5,484 TRENDY TEENZ dolls, a larger version of the MINI TRENDY TEENZ doll (a photograph is at Schedule 4) (together "the Dolls").

13      Mr Brown also disclosed that the Defendant had arranged and organised the purchase of the Dolls from Trade Express (H.K) Export Company and Double Grand Corporation Ltd ("Double Grand"). Mr Brown supported this by disclosing the following information:

PARTICULARS

-3-

EXHIBIT ___120___

PAGE ___1861.026___

Confidential - Attorney's Eyes Only

MGA 0885379

13.1    an email that the Defendant sent to Trade Express (HK) Export Company on 1
        July 2002, on page three is a section relating to the MINI TRENDY TEENZ dolls.
        In this section the Defendant confirms that the "artwork is fine" but the price
        needs to be improved.

13.2    a fax from the Defendant to Mr Brown of Toy Depot Limited dated 18 February
        2002, where the Defendant provided the contact details of Trade Express to Mr
        Brown.

14    SJ Berwin sent a cease and desist letter to the Defendant on 2 April 2003.

15    On 14 April 2003, the Defendant indicated that he was willing to enter into a letter of
      undertakings. Between 14 April – 21 May 2003, SJ Berwin and the Defendant had
      numerous conversations relating to settlement and the Defendant disclosed various
      documents relating to the sale of the Dolls. On 29 April 2003, the Defendant attended a
      meeting at SJ Berwin's premises with Mr Ray Black, where he agreed to provide a
      statutory declaration relating to his dealings in the Dolls. During this meeting, the
      Defendant admitted to the following:

                                **PARTICULARS**

15.1    that he asked Double Grand to make a doll about five/six inches in size, dressed
        in fashionable clothing. Double Grand provided a design of the doll to the
        Defendant. This doll was later named the MINI TRENDY TEENZ.

15.2    that he drafted all the Purchase Orders sent to Trade Express including the
        Order particularised in paragraph 12 above and paragraph 15.3 below.

15.3    that Toy Depot (Far East) Company was used to fulfil an order set up by Toy
        Depot Limited, whereby Trade Express sold 43,056 MINI TRENDY TEENZ to
        United Overseas in or around 3 October 2002.   The Defendant drafted the
        Purchase Order and sent it to Mr Brown for signing.

15.4    that the MINI TRENDY TEENZ doll was very similar in overall design to the
        Claimant's baby BRATZ range of dolls

16    The Claimant therefore claims that: (a) the Defendant procured and enticed the
      manufacture, importation, purchase and sale of the Dolls in the UK; and (b) (i) was
      directly involved in the purchase of the Dolls in the UK through Toy Depot Limited and
      Toy Depot (Far East) Company; and/or (ii) directed or arranged the purchase and sale of
      the Dolls.

EXHIBIT ___120___

-4-

PAGE ___1861. 027___

Confidential - Attorney's Eyes Only

(ii)   **The ROCKERHEADZ BOBBLE PENS and ROCKERHEADZ BOBBLEHEAD Fashion Dolls ("Products")**

17   The Defendant informed Mr Cox in an e-mail dated 6 May 2003 that he intended to market a ROCKERHEADZ BOBBLE Pen ("Pen") (a photograph is at Schedule 5) in the UK and requested him to seek the Claimant's consent to him marketing the Pen in the UK.

18   The Claimant also learnt from an independent source that Double Grand were marketing a product called ROCKERHEADZ BOBBLEHEAD Fashion Dolls, a photograph of which is at Schedule 6.

19   On 8 May 2003, the Claimant requested a further letter of undertaking from the Defendant which covered the Products. The Defendant did not provide the letter of undertaking.

**Copyright Infringement**

20   The Dolls and the Products copy a substantial part of the Drawings.

21   The Defendant acted beyond his duties as a director of Toy Depot Limited, as he enticed and procured Toy Depot Limited to carry out the infringing acts and was directly involved in purchasing the Dolls through Toy Depot Limited.  Therefore, the Defendant is a joint tortfeasor with Toy Depot Limited in respect to the Dolls.

22   From a date presently unknown to the Claimant, but prior to the issue of the Claim Form, the Defendant has infringed the copyright in the Drawings by issuing copies and threatening to issue copies of the Dolls and Products to the public.

23   From a date presently unknown to the Claimant, but prior to the issue of the Claim Form, the Defendant has infringed the Copyright in the Drawings by importing, distributing, selling, offering to sell or possessing in the course of business in the UK the Dolls and Products which copy a substantial part of the Drawings and where the Defendant knows or has reason to believe that they are infringing copies of the Drawings.

**PARTICULARS OF KNOWLEDGE AND/OR REASON FOR BELIEF**

Pending information and/or disclosure from the Defendant, the Claimant relies on the following:

23.1   The common knowledge in the Toy industry that the BRATZ dolls are protected by copyright or a right in the nature of copyright, and that such copyright is infringed by copying a substantial part of the design of the BRATZ dolls.

120

-5-

PAGE 1561.028

Confidential - Attorney's Eyes Only

MGA 0885381

23.2    The letter dated 2 April 2003 from SJ Berwin to the Defendant by which the Defendant was expressly notified of the Claimant's claim to copyright.

**Registered Design Right Infringement**

24    From a date presently unknown to the Claimant, but prior to the issue of the Claim Form, the Defendant has infringed the Registered Design rights by offering, putting on the market, using, importing and stocking the Dolls and Products which have the same overall impression on the informed user as the Registered Designs.

**G     General**

25    By reason of the sale and distribution of the Dolls and Products in the UK by the Defendant, the Claimant has suffered loss and damage.

26    Unless restrained by this honourable Court, the Defendant threatens and intends to continue selling, dealing in, and distributing these products in the United Kingdom whereby the Claimant will suffer further loss and damage.

27    The Claimant is entitled to and claims interest on all sums which may be found to be due to it on enquiry or account claimed below, such interest being pursuant to Section 35(a) of the Supreme Act 1981 or under the equitable jurisdiction of the Court.

AND THE CLAIMANT CLAIMS:

1    An injunction to restrain the Defendant whether acting by himself, his servants or agents or any of them or otherwise howsoever from doing the following acts or any of them that is to say:

1.1.    infringing registered design nos. 2103577, 2103578, 2103579 and 2103580; and

1.2.    infringing copyright in the Drawings annexed at Schedule 1.

2    An injunction to restrain the Defendant whether acting by himself, his servants, or agents or any of them or otherwise howsoever from manufacturing, selling, offering for sale, importing, exporting, distributing, ordering, purchasing, advertising, supplying, disposing of or otherwise howsoever dealing in or with the MINI TRENDY TEENZ and TRENDY TEENZ dolls, ROCKERHEADZ BOBBLE PENS and ROCKERHEADZ BOBBLEHEAD FASHION DOLLS representations of which are annexed at Schedule 3, 4, 5 and 6 respectively.

3    An Order for delivery up to the Claimant or the Claimant's legal representative, SJ Berwin, or alternatively, destruction upon oath, of all infringing goods, articles and materials in the

-6-

EXHIBIT 120
PAGE 1861.029
Confidential - Attorney's Eyes Only
MGA 0885382

power, possession, custody or control of the Defendant together with confirmation on Affidavit sworn by the Defendant that such delivery up (or destruction) has been completed.

4    An Order that the Defendant serve, within 7 (seven) days of the date of this Order, a statutory declaration upon SJ Berwin setting out in full:

4.1    the names and addresses of all persons from whom the Defendant has obtained supplies of MINI TRENDY TEENZ and TRENDY TEENZ dolls, ROCKERHEADZ BOBBLE Pen's and ROCKERHEADZ BOBBLEHEAD FASHION dolls (or any of them) ("the Infringing Articles");

4.2    the names and addresses of all persons from whom the Defendant has received orders or to whom the Defendant has supplied and/or distributed the Infringing Articles (or any of them); and

4.3    the particulars of quantities of the Infringing Articles (or any of them) which the Defendant has manufactured, purchased, sold, supplied and/or distributed together with copies of purchase orders, sales orders, invoices and other documents evidencing such transactions.

5    An inquiry as to damages for copyright and registered design infringement or, at the option of the Claimant, an account of profits.

6    An Order for payment of all sums found to be due to the Claimant on the taking of the inquiry or account, such sums to be paid together with interest pursuant to section 35A of the Supreme Court Act 1981 or under the equitable jurisdiction of the Court.

EXHIBIT    120
PAGE    1861.030

-7-

Confidential - Attorney's Eyes Only

MGA 0885383

Further or other relief.

8    Costs.

The Claimant believes that the facts stated in this Particulars of Claim are true. I am duly authorised by the Claimant to sign this statement.

Signed .......................................             Dated 3 June 2003

Full name:        Raymond David Black
Solicitor at SJ Berwin, 222 Grays Inn Road, London, WC1X 8XF

Served this 3 June 2003 by SJ Berwin, 222 Grays Inn Road, London, WC1X 8XF   Ref: RDB/M17447.49   Solicitors for the Claimant.

EXHIBIT      120

PAGE   1861.031

-8-

Confidential - Attorney's Eyes Only

MGA 0885384

IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

Claim form issued

B E T W E E N:

MGA ENTERTAINMENT INC.

Claimant

- and -

JAMES THOMAS CONNOLLY

Defendants

PARTICULARS OF CLAIM

EXHIBIT _____ 120

PAGE _____ 1861.032

SJ Berwin
222 Gray's Inn Road
London   WC1X 8XF

Tel:  020 7533 2222

Ref:  245/M17447.49/LT:289550.1/sacs

Confidential - Attorney's Eyes Only

MGA 0885385

# SCHEDULE 1

EXHIBIT ___120___

PAGE ___1961.033___

1111/M17447.49/LF:299994.1/Mails

Confidential - Attorney's Eyes Only

MGA 0885386

6.4.23



original face design, Fall ~~2001~~
2001

EXHIBIT ___120___

PAGE ___1861. 034___

Confidential - Attorney's Eyes Only

MGA 0885387



Yasmin
original face design,
Fall 2001

EXHIBIT ___120___

PAGE ___1861.035___

Confidential - Attorney's Eyes Only

MGA 0885388

6.4.25



*Cloe original
face design
Fall 2001*

EXHIBIT ___ 120

PAGE ___ 1861.036

Confidential – Attorney's Eyes Only

MGA 0885389

6.4.26



*nd face design*
*(00)*

EXHIBIT _____ 120
PAGE _____ 1861 037

Confidential – Attorney's Eyes Only

MGA 0885390

8/1998.

EXHIBIT __120__

PAGE __1861.038__

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Confidential – Attorney's Eyes Only

MGA 0885391



All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

EXHIBIT __120__

PAGE __1861.039__  Contract date 9/15/00

Confidential - Attorney's Eyes Only

MGA 0885392



8/1998

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date  9/18/00

EXHIBIT _____ 12w

PAGE _____ 1861.040



© /1998

EXHIBIT ___120___

PAGE ___1861. 091___

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date 9/18/00



**EXHIBIT** 120

**PAGE** 1861.042   Contract date · 9/18/00

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Confidential – Attorney's Eyes Only                                    MGA 0885395



ⓒ
8/1998

EXHIBIT ___120___

PAGE ___1861.043___

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Confidential - Attorney's Eyes Only                                        MGA 0885396



8/1998

EXHIBIT _120_

PAGE _1861.044_

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Cunland date  9/18/00

Confidential - Attorney's Eyes Only

MGA 0885397



8/1998

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO
Contract date  9/18/00

EXHIBIT ___120___

PAGE ___1861.095___

Confidential - Attorney's Eyes Only

EXHIBIT ___120___

PAGE ___1861.04L___

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Confidential – Attorney's Eyes Only

MGA 0885399

All Rights Assigned to ABC International Traders
d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date: 9/18/00

EXHIBIT ___120___

PAGE ___1861.047___



All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO
Contract date 9/11/00

EXHIBIT 120

PAGE 1861 048

Confidential - Attorney's Eyes Only

MGA 0885401



EXHIBIT _____ 120

PAGE _____ 1861.099

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

Contract date   9/18/00

Confidential - Attorney's Eyes Only

MGA 0885402



EXHIBIT ___120___

PAGE ___1861.050___

All Rights Assigned to ABC International Traders d/b/a MGA Entertainment.

Isaac Larian, CEO

JUNE 2000

Confidential - Attorney's Eyes Only

MGA 0885403

# SCHEDULE 2

1111/M17447.49/LT:269394.1/ladu

EXHIBIT ___120___

PAGE ___1861 a 1___

Confidential - Attorney's Eyes Only

MGA 0885404

MGA ENTERTAINMENT
16730 Schoenborn Street
North Hills, California 91343

Dated as of September 18, 2000

Mr. Carter Bryant
1319 West 160th Street
Gardena, California 90247

Dear Mr. Bryant:

Set forth below are the terms and conditions upon which we (hereinafter "MGA") are retaining you ("Bryant") to consult and advise MGA in the design and development of certain products which MGA wishes to manufacture and distribute (hereinafter our agreement is sometimes referred to as the "MGA Consulting Agreement"). The parties' agreement is as follows:

1.    Retention as Consultant/Services: MGA retains Bryant to provide his services to consult with MGA and advise MGA on the design and development by MGA of a line of dolls presently known as "Bratz" (the "MGA Products"). Bryant will render his services at such locations and times as may be reasonably be designated by MGA. It is understood and agreed that Bryant shall provide his services on a "top priority" basis as his services pertain to other clients of Bryant. In addition, Bryant and all other Bryant staff will take direction from and be under the supervision of such person(s) as may be reasonably designated by MGA from time to time upon notice to Bryant. It is understood and agreed that, subject to MGA's prior written consent, Bryant may retain third party contractors ("Contractors") to assist at his direction in the services to be rendered hereunder. Such third parties shall be compensated in a manner ("Contractor Fees") to be determined between Bryant and such third parties and shall be subject to the terms of this Agreement, including without limitation, paragraphs 3, 4, and 7, below. Bryant shall enter into agreements with all Contractors on a form approved by MGA as conforming to the terms of this Agreement and confirming MGA's ownership of all results and proceeds of the services provided by any such Contractors; such form is attached a Exhibit "A" to this Agreement, and is incorporated herein by reference.

2.    Term/Exclusivity: The Term shall commence on the date of this Agreement. MGA shall have the right to terminate this Agreement on not less than forty-five (45) days prior written notice to Bryant. During the Term of this Agreement, Bryant will not provide consulting services to any person, firm or corporation engaged in the design, development and manufacture and sale of dolls or similar products.

3.    Ownership:

(a)    All results and proceeds of the services provided by Bryant hereunder and any Contractor, including without limitation, any inventions, and any documentation related thereto, and any other material, whether written or oral (collectively, the "Bryant Work Product") shall be considered "work made for hire" and shall be owned exclusively, throughout the world, and in perpetuity by MGA (including all copyrights and patents therein and thereto, and all renewals and extensions thereof). MGA shall have the sole and exclusive right to use the Bryant Work Product, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify the Bryant Work Product and the results of Bryant's services hereunder and the Contractors' services, and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised. MGA shall have the sole and exclusive right to copyright or patent the Bryant Work Product in MGA's name, as the owner and author thereof, and to secure any and all registrations, renewals and extensions of such copyrights and

{00006662.DOC/2 / 10/04/2000  03:05 PM}

1

EXHIBIT  120

PAGE  1461  052

Confidential - Attorney's Eyes Only                                    MGA 0885405

patents in MGA's name or Bryant's name or the Contractors' names, as permitted pursuant to applicable statute. Bryant expressly waives, and shall cause all Contractors to waive, any "moral rights" (as such term is commonly understood around the world) in and to the Bryant Work Product prepared by Bryant and/or the Contractors pursuant to the Agreement. Bryant shall, upon request, execute, acknowledge and deliver, and shall cause each Contractor to execute, acknowledge and deliver, to MGA such additional documents as MGA may deem necessary to evidence and effectuate MGA's rights hereunder, and Bryant hereby grants to MGA the right as Bryant's attorney-in-fact to execute, acknowledge, deliver and record in the U.S. Copyright Office, the U.S. Patent Office or elsewhere any and all such documents. If, whether by statutory amendment to the U.S. Copyright and/or Patent Laws, or a decision by a court of competent jurisdiction interpreting such laws, MGA shall not be deemed to be the author or owner of the Bryant Work Product, this Agreement and each agreement with a Contractor shall, nevertheless, constitute an irrevocable assignment by Bryant and each Contractor, as applicable, to MGA of any and all of Bryant's and each Contractors' right, title and interest, including copyright and patent (and all renewals and extensions thereof), in and to the Bryant Work Product. Bryant acknowledges and agrees, and shall cause each Contractor to acknowledge and agree, that he and they have no interest in and shall not, by virtue of this Agreement or any services rendered by Bryant and/or each Contractor to MGA acquire any interest in the MGA Products and that MGA may exploit the MGA Products and any derivative works thereto, without obligation to Bryant and/or the Contractors, except as provided in Paragraph 4, below.

(b)    Without limiting the generality of the provisions of Paragraph 3(a), above, with respect only to any inventions, and any documentation related thereto, and any other material, whether written or oral, created by or for Bryant relating to the MGA Products prior to the commencement of the term of this Agreement, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Bryant, Bryant hereby irrevocably grants, conveys, transfers, sets over and assigns to MGA in perpetuity all of Bryant's right, title and interest, in an to the such material, including, without limiting the generality of the foregoing, all rights under copyright and patent (and all renewals and extensions thereof) including the right to produce and authorize the production of any and all derivative works, and all proprietary rights of any kind therein, now known or hereafter created throughout the world. MGA shall have the sole and exclusive right to use such material, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify such materials and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised or refrain from doing so as MGA may determine. Bryant expressly waives any "moral rights" (as such term is commonly understood around the world) in and to such materials.

4.    Compensation/Costs:

(a)    For the first six (6) months of the Term of this Agreement, MGA shall pay Bryant for his services at the rate of five thousand five hundred dollars ($5,500.00) per month; for the next three (3) months of the Term, MGA shall pay Bryant for his services at the rate of five thousand dollars ($5,000.00) per month. All sums paid to Bryant as monthly fees shall be deemed to be non-refundable, fully-recoupable advances against any royalties that may be payable to Bryant pursuant to paragraph 4(b), below.

(b)    MGA shall pay to Bryant a royalty of three percent (3%) of the Net Sales Receipts from the sales by MGA of any of the MGA Products developed by MGA on which Bryant provided his consulting services. As used herein, the term "Net Sales Receipts" means all monies actually received by MGA from its customers on sales of MGA Products less (i) any and all excise, sales, value added or comparable or similar taxes; (ii) freight and similar third party handling charges paid or payable by MGA; and (iii) returns, discounts, allowances or credits (inclusive of co-op and trade discounts and allowances). MGA shall account to Bryant on a calendar quarterly basis within thirty (30) days after the end of each quarter. All statements of royalties rendered by MGA hereunder shall be conclusive, final,

{00006662.DOC/2 / 10/04/2000  03:05 PM}

2

EXHIBIT __120__

PAGE __1861.053__

Confidential - Attorney's Eyes Only

MGA 0885406

and binding on Bryant, shall constitute an account stated, and shall not be subject to any question for any reason whatsoever unless specific written objection, stating the basis thereof, is given by Bryant to MGA within two (2) years after the date rendered. No action, suit, or proceeding of any nature in respect of any royalty statement or other accounting rendered by MGA hereunder may be maintained against MGA unless such action, suit, or proceeding is commenced against MGA in a court of competent jurisdiction within one (1) year after the date of MGA's notice rejecting such objection. Bryant or his representatives shall have the right, not more than once per year and not more than once per statement of royalties, to examine MGA's books and records relating to the sales of such MGA Products, such examination to be conducted during MGA's normal business hours and upon reasonable prior written notice.

(c)     All costs and expenses incurred by Bryant in connection with the performance of his obligations hereunder shall be borne solely by Bryant, except as otherwise agreed and incurred with MGA's prior written consent. In the event MGA requests Bryant to travel to the Orient on MGA's behalf in connection with his services hereunder, MGA will reimburse Bryant for all travel expenses incurred in connection therewith, such as parking, airfare (economy class), auto rental, meals and hotel accommodations. Reimbursement shall be at the actual cost of such item without any mark-up.

(d)     Bryant shall submit invoices to MGA for his monthly fees (and reimbursable expenses, if and as agreed) on a monthly basis. Each invoice shall provide sufficient detail to support the monthly fee charges and hours rendered (and shall include satisfactory copies of bills and/or payments for reimbursable expenses, as applicable). MGA shall pay each such invoice within fifteen (15) days after receipt of such invoice, provided, however, MGA reserves the right to request further explanation or documentation before paying any invoice submitted by Bryant.

(e)     MGA shall use its reasonable business efforts, consistent with its business judgment, to market, promote, distribute, sell and/or exploit the MGA Products and to collect on all monies due from sales. MGA has not made and does not hereby make any representation or warranty with respect to the quantity of sales (if any) of MGA Products embodying the Property which MGA may sell. Bryant recognizes and acknowledges that the sale of MGA Products is speculative and agrees that MGA's judgment and the judgment of its subsidiaries and affiliated companies with regard to the sales of any of its MGA Products and with regard to the marketing, promotion, advertising and exploitation of the MGA Products shall be binding and conclusive upon Bryant. Bryant warrants and agrees that Bryant will not make any claim, nor shall any liability be imposed upon MGA based upon any claim, that more sales could have been made or that better business could have been done than what was actually made or done by MGA or any of MGA's subsidiaries or its affiliated companies, or that better prices or terms could have been obtained.

5.     Warranties and Indemnity: Bryant represents, warrants and agrees that:

(a)     he has the right and is free to execute this Agreement, to grant the rights granted by him to MGA hereunder, and to perform each and every term and provision hereof;

(b)     neither the execution and delivery of this Agreement nor the performance by Bryant of any of his obligations hereunder will constitute a violation, breach or default under any agreement, arrangement or understanding, or any other restriction of any kind, to which Bryant is a party or by which Bryant is bound;

(c)     the Bryant Work Product shall be free of all liens and encumbrances and there will be no claims, demands or actions pending or threatened with respect thereto; and that the Bryant Work Product is original and no part thereof infringes or shall infringe upon any common law or statutory rights or intellectual property rights of any third party including, without limitation, contractual rights,

{00006862.DOC/2 / 10/04/2000 03:05 PM}

3

EXHIBIT _____ 120

PAGE _____ 1861.054

Confidential - Attorney's Eyes Only                                                    MGA 0885407

.tents, copyrights, mask-work rights, trade secrets, rights of privacy and other intellectual property rights;

(d)    he shall comply with all applicable laws and regulations in force during the Term of this Agreement with respect to the services to be rendered hereunder; and

(e)    he shall indemnify and hold MGA harmless from and against any and all claims, losses, costs, judgments, settlements, damages and expenses (including reasonable counsel fees) arising from any breach by him of any of the warranties, representations and agreements made by him hereunder.

6.    Default/Termination:

(a)    In the event either Party fails to perform any of its material obligations hereunder, or breaches any representation, warranty or agreement contained herein, the other Party may terminate this Agreement on thirty (30) days prior written notice, provided the breaching Party shall not have remedied such failure within such thirty (30) day period.

(b)    Upon the termination of this Agreement Bryant shall turn over to MGA all materials relating to the MGA Products furnished by MGA to Bryant or shall give MGA satisfactory evidence of their destruction.

7.    Confidentiality:

(a)    Bryant shall keep in confidence and not disclose to any third party, without the written permission of MGA, the Confidential Information made known to him under this Agreement. As used herein, the term "Confidential Information" means information relating to MGA's products (whether current or projected), product titles, customers, employees, tools and techniques, designs, drawings, schematics and other documentation relating thereto and other confidential and proprietary business information of MGA and which is expressly labeled or identified to Bryant in writing as "confidential" or which, under the circumstances of such disclosure, Bryant knows, or reasonably should know, are treated by MGA as confidential. This requirement of confidentiality shall not apply to any information that is (i) in the public domain through no wrongful act of Bryant; (ii) rightfully received by the Bryant from a third party who is not bound by a restriction of nondisclosure; (iii) already in the Bryant's possession without restriction as to disclosure; or (iv) required to be disclosed by operation of law or by order of a court or administrative body of competent jurisdiction, (provided that prior to such disclosure, MGA shall first receive notice thereof from Bryant and have the opportunity to contest such order or requirement of disclosure or seek appropriate protective order).

(b)    Bryant agrees and acknowledges that all Confidential Information disclosed to him shall be and remain the sole property of MGA. Nothing contained in this Agreement shall be construed as granting to Bryant any right, title or interest of any kind, by license or otherwise, to the Confidential Information disclosed by MGA, the intellectual property therein or any part or copy thereof. Bryant further acknowledges and agrees that nothing contained herein shall be construed as granting Bryant any right to develop, manufacture, produce and/or distribute any product(s) derived from or which otherwise uses any of the Confidential Information disclosed by MGA, or authorize or in any way assist others to do so. Bryant may not make, sell, license or distribute copies of the Confidential Information disclosed by MGA and may not sublicense, transfer or assign in any manner whatsoever this Agreement or any of Bryant's rights or obligations under this Agreement.

(c)    Bryant acknowledges that his failure to perform any of the terms or conditions of this Agreement shall result in immediate and irreparable damage to MGA. Bryant also acknowledges that there may be no adequate remedy at law for such failures and that in the event thereof MGA shall be

{00006662.DOC/2 / 10/04/2000  03:05 PM}                    4

EXHIBIT    120
PAGE       1861. 055