THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, CA 90071-3144
Tel.: (213) 687-5000/Fax: (213) 687-5600

RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, 38th Floor
San Francisco, CA 94111-5974
Tel.: (415) 984-6400 / Fax: (415) 984-2698

Attorneys for MGA Entertainment, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>               Plaintiff,<br><br>        v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>               Defendant.<br><br>_____<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with Case No. 04-9059<br>and Case No. 05-2727<br><br>**DISCOVERY MATTER**<br>**[PUBLIC REDACTED]**<br>DECLARATION OF LANCE A. ETCHEVERRY IN SUPPORT OF MGA'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM THIRD PARTY RIGHT MANAGEMENT CONSULTANTS, INC.<br><br>[To be heard by Discovery Master Hon. Edward Infante (Ret.) Pursuant to Court Order of December 6, 2006]<br><br>Hearing Date: TBD<br>Time: TBD |

DECLARATION OF LANCE ETCHEVERRY

I, Lance A. Etcheverry, declare and state as follows:

    I am an attorney with Skadden, Arps, Slate, Meagher & Flom, LLP ("Skadden"), counsel of record for MGA Entertainment, Inc. ("MGA").

1.     Attached as Exhibit 1 hereto is a true and correct copy of the subpoena dated December 18, 2007 (the "Subpoena") served on Right Management Consultants, Inc. ("Right").

2.     Attached as Exhibit 2 hereto is a true and correct copy of e-mail correspondence between Lance A. Etcheverry, Esq. and Cara Braslow, Esq. dated January 17, 2008.

3.     Attached as Exhibit 3 hereto is a true and correct copy of an e-mail message dated January 18, 2008, from Cara Braslow, Esq. to Lance A. Etcheverry, Esq., attaching Right's objections to the Subpoena.

4.     Attached as Exhibit 4 hereto is a true and correct copy of a letter dated January 21, 2008, from Lance A. Etcheverry, Esq. to Cara Braslow, Esq., enclosing the Order for Appointment of Discovery Master and Protective Order.

5.     Attached as Exhibit 5 hereto is a true and correct copy of e-mail correspondence from Cara Braslow, Esq. to Lance A. Etcheverry, Esq. dated February 1 and February 5, 2008.

6.     On February 14, 2008, during a meet and confer teleconference, counsel for Right raised the issue of whether the documents requested pursuant to the Subpoena related to Phase I or Phase II of the instant litigation. Right's counsel said that Mattel believed all of MGA's requests related only to Phase II and thus should not be produced, if at all, until that phase of the case. In addition, Right's counsel said that Mattel objected to production of documents that related to Mattel termination policies. I proposed a three-way meet and confer, including Mattel's counsel, to discuss these issues.

7.      On February 25, 2008, I met and conferred with counsel for MGA, Right and Mattel via telephone.  Counsel for Right indicated that the hard copy documents responsive to the Subpoena amounted to a stack about an inch-and-a-half thick – consisting primarily of computer printouts of all Mattel employees, by name and title, who used Right's services after having been laid off.  To ease Right's concern about turning over this employee information, I agreed to having the names of such employees redacted, so long as Right's non-descript control number remained so that the individuals could later be differentiated.

8.      Despite all of MGA's concessions, Right and Mattel objected to production of the computer printouts on grounds that they bear no relevance to Phase I issues.  I explained the relevance of the lay-off information contained in the computer printouts, but to no avail.  Right and Mattel were simply dead-set against producing any information in response to the Subpoena – even where, as in this case, there would be *no* burden to Right in doing so.

9.      Attached as Exhibit 6 hereto is a true and correct copy of a Mattel Marketing Plan Update dated March 16, 2004, Bates Nos. M0079848 through M0079855.

10.     Attached as Exhibit 7 hereto is a true and correct copy of excerpts of the January 21, 2008 deposition of Hoi Hoffman-Briggs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 3, 2008, at Los Angeles, California.


By:  _____
     Lance A. Etcheverry

DECLARATION OF LANCE ETCHEVERRY
-2-

496604-Los Angeles Server 1A - MSW

Exhibit 1

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

CENTRAL      DISTRICT OF      CALIFORNIA

CARTER BRYANT, an individual, Plaintiff,

V.

MATTEL, INC., a Delaware corporation, Defendant

AND CONSOLIDATED ACTIONS

TO:

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] CV 04-09049 SGL (RNBx)
Consolidated with Case Nos. CV 04-9059 and CV 05-2727

RIGHT MANAGEMENT CONSULTANTS INC., 222 North Sepulveda Blvd., Suite 1450, El Segundo, CA 90245

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP, 300 S. Grand Ave., Los Angeles, CA 90071 | January 18, 2008 - 9:00 AM |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _[signature]_      Atty for Counter Defendant MGA Ent. et al. | December 19, 2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Lance A. Etcheverry, Skadden, Arps, Slate, Meagher & Flom LLP, 300 S. Grand Ave., Los Angeles, CA 90071-3144 (213) 687-5000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.FormsWorkflow.com

Exhibit ___1___, P. _3_

| Attorney or Party without Attorney: | | | | For Court Use Only |
|---|---|---|---|---|
| LANCE A. ETCHEVERRY, Bar #199916 SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP 300 SOUTH GRAND AVENUE SUITE 3400 LOS ANGELES, CA 90071 | | | | |
| Telephone No: 213-687-5000   FAX No: 213-687-5600 | | | | |
| | | Ref. No. or File No.: | | |
| Attorney for: Defendant | | | | |
| Insert name of Court, and Judicial District and Branch Court: | | | | |
| United States District Court, Central District Of California | | | | |
| Plaintiff: CARTER BRYANT, ETC. | | | | |
| Defendant: MATTEL, INC., ETC. | | | | |
| PROOF OF SERVICE SUBPOENA IN A CIVIL | Hearing Date: Fri, Jan. 18, 2008 | Time: 9:00AM | Dept/Div: | Case Number: CV04-09049 SGL (RNBX) |

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of the SUBPOENA IN A CIVIL CASE

3. a. Party served:           RIGHT MANAGEMENT CONSULTANTS INC.
   b. Person served:        CHRISTINA VASQUEZ, AUTHORIZED TO ACCEPT SERVICE.

4. Address where the party was served:    222 NORTH SEPULVEDA BLVD.
                                      SUITE 1450
                                      EL SEGUNDO, CA 90245

5. I served the party:
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: Thu., Dec. 20, 2007 (2) at: 9:45AM.
   b. I received this subpena for service on: Thursday, December 20, 2007

6. Witness fees were not demanded or paid.

7. Person Who Served Papers:                       Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. MEHRAN KHARAZI               d. The Fee for Service was:

                                         e. I am: Not a Registered California Process Server

**First Legal Support Services**
ATTORNEY SERVICES
1511 BEVERLY BOULEVARD
Los Angeles, CA 90026
(213) 250-1111, FAX (213) 250-1197

8. I declare under penalty of perjury under the laws of the State of California and under the laws of the United States Of America that the foregoing is true and correct.
   Date:Fri, Dec. 21, 2007

Judicial Council Form
Rule 982.9.(a)&(b) Rev January 1, 2007          PROOF OF SERVICE
                              SUBPOENA IN A CIVIL    (MEHRAN KHARAZI)    3979383.lanet.104067

Exhibit __1__, P. __4__

## ATTACHMENT A
## DEFINITIONS

As used in these Requests:

1. "BRYANT" means and refers to Carter Bryant individually.

2. "COMMUNICATION[S]" means and refers to any transmission of information from one person or entity to another, including, without limitation, by personal meeting, conversation, letter, telephone, facsimile or electronic mail. Each request that encompasses information relating in any way to communications to, from or within a business or corporate entity is hereby designated to mean, and should be construed to include, all communications by and between representatives, employees, agents or servants of the business or corporate entity.

3. "CONFIDENTIALITY, TRANSFER AND NO-CONFLICT OBLIGATIONS" means and refers to the obligations of MATTEL EMPLOYEES under the EMPLOYEE INVENTIONS AGREEMENT to, *inter alia*, (i) maintain the confidentiality of MATTEL's trade secrets, (ii) assign to MATTEL all rights, title and interest to inventions conceived or reduced to practice by MATTEL EMPLOYEES during their employment with MATTEL and (iii) only engage in employment or business with or for MATTEL.

4. "CONFLICT OF INTEREST QUESTIONNAIRE" means and refers to any form of employment agreement concerning, *inter alia*, relations, if any, between Mattel's employees, suppliers, and/or competition, whether known by the title "Conflict of Interest Questionnaire" or any other title, including without limitation the form of Conflict of Interest Questionnaire entitled "Conflict of Interest Questionnaire" executed by BRYANT on or about January 4, 1999.

5. "DISCLOSURE OBLIGATIONS" means and refers to the obligations of MATTEL EMPLOYEES under the CONFLICT OF INTEREST QUESTIONNAIRE and PROPRIETARY INFORMATION CHECK-OUT FORM

Exhibit __1__, P. __5__          1

to disclose, *inter alia*, any (i) conflicts of interests with MATTEL arising from their relations with MATTEL suppliers and competitors and (ii) inventions, improvements, ideas, suggestions, designs, trademarks, copyright subject matter, literary or artistic works made or conceived by MATTEL EMPLOYEES during their employment with MATTEL.

6.   "DOCUMENT[S]" incorporates the full meaning of Federal Rule of Civil Procedure 34, and shall be construed in the broadest sense to mean any and all writings, tangible things and property, of any kind, that are now or that have been in YOUR actual or constructive possession, custody or control, including, but not limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed, punched, copied, recorded, transcribed, graphic or photographic matter of any kind or nature, in, through, or from which information may be embodied, translated, conveyed or stored, whether an original, a draft or copy, however produced or reproduced, whether sent or received or neither, including, but not limited to, notes, memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports, inter- and intra-office COMMUNICATIONS, work papers, work sheets, work records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets, estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders, telephone records, telegrams, telexes, literature, invoices, contracts, purchase orders, estimates, recordings, transcriptions of recordings, records, books, pamphlets, periodicals, publications, papers, tapes, DVDs, video CDs, video, audio and digital recordings, television commercials, story boards, website or other spot advertisements, movies, movie trailers, prototypes, products, diaries, calendars, charts, drawings, sketches, messages, photographs and data contained in or accessible through any electronic data processing system, including, but not limited to, computer databases, data sheets, data processing cards, computer files and tapes, computer disks, CD-ROMs, computer metadata, microfilm, microfiche, electronic mail, website and web pages and transcriptions thereof and all other

Exhibit __1__ , P. _6_

memorializations of any conversations, meetings and conference, by telephone or otherwise.  The term DOCUMENT also means every copy of a DOCUMENT, where such copy is not an identical duplicate of the original, whether because of deletions, underlinings, showing of blind copies, initialing, signatures, receipt stamps, comments, notations, differences in stationery or any other difference or modification of any kind.

7.    "EMPLOYEE INVENTIONS AGREEMENT" means and refers to any form of Mattel employment agreement concerning, *inter alia*, (i) ownership of inventions, (ii) trade secrets and/or (iii) conflicts, whether known by the title "Employee Confidential Information and Inventions Agreement" or any other title, including without limitation the form of Employee Inventions Agreement entitled "Employee Confidential Information and Inventions Agreement" executed by BRYANT on or about January 4, 1999.

8.    "MATTEL" means and refers to the party Mattel, Inc. and any of its past or present officers, directors, agents, employees, representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, entities and persons acting in joint venture or partnership relationships with MATTEL and any others acting on MATTEL's behalf, pursuant to its authority or subject to its control.

9.    "MATTEL EMPLOYEES" means and refers to at least one or more than one of MATTEL's current or former employees, except BRYANT.

10.    "MATTEL LAYOFF[S]" means and refers to the termination of employment of at least one or more than one of MATTEL EMPLOYEES.

11.    "MGA" means and refers to MGA Entertainment, Inc. and any of its past or present officers, directors, agents, employees, representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, entities and persons acting in joint venture or partnership relationships with MGA and any others acting on MGA's behalf, pursuant to its authority or subject to its control.

3

Exhibit _1_, P. _7_

12.   "PROPRIETARY INFORMATION CHECK-OUT FORM" means and refers to any agreement concerning, *inter alia*, the transfer and ownership of inventions upon termination of the employment of MATTEL employees, whether known by the title "Proprietary Information Check-Out Form" or any other title, including without limitation the Proprietary Information Check-Out Form entitled "Proprietary Information Check-Out Form" executed by BRYANT on or about October 19, 2000.

13.   "REFERRING OR RELATING TO" should be construed in the broadest possible sense to mean concerning, consisting of, referring to, relating to, describing, discussing, constituting, evidencing, containing, reflecting, mentioning, pertaining to, citing, summarizing, analyzing or bearing any logical or factual connection with the matter discussed.

14.   "RIGHT MANAGEMENT," "YOU," or "YOUR" means and refers to Right Management Consultants, Inc. and any of its past or present officers, directors, agents, employees, representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, entities and persons acting in joint venture or partnership relationships with YOU and any others acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

## INSTRUCTIONS

1.   YOU are instructed to produce all non-privileged DOCUMENTS in YOUR possession, custody or control. A DOCUMENT is in YOUR "possession, custody, or control" if it is in YOUR physical possession, or if, as a practical matter, YOU have the ability, upon request, to obtain possession of the DOCUMENT or a copy thereof from another person or entity who has physical possession of the DOCUMENT.

4   Exhibit _1_, P. _8_

2.     YOU are instructed to produce all non-privileged DOCUMENTS responsive to these REQUESTS to the extent YOU have not previously produced them to MGA.

3.     Each DOCUMENT is to be produced as it is kept in the usual course of business, including all file folders, binders, notebooks, and other devices by which such DOCUMENTS may be organized, separated, or identified.

4.     Each DOCUMENT maintained or stored electronically in native, electronic format is to be produced with all relevant metadata intact and in an appropriate and useable electronic manner.

5.     If YOU withhold any DOCUMENT, or portion of a DOCUMENT, on grounds that it is protected from discovery by the attorney-client privilege, work product doctrine, or other privilege, please set forth for each DOCUMENT or portion of a DOCUMENT withheld:

(a)     The date the DOCUMENT was created;

(b)     The names and organization position, if any, of each author, sender, and recipient of the DOCUMENT;

(c)     A general description of the subject-matter of the DOCUMENT;

(d)     The basis of any claim of privilege; and

(e)     If work-product is asserted, the proceeding for which the DOCUMENT was created.

6.     Unless otherwise noted, these Requests seek DOCUMENTS from January 1, 1998, to the present.

7.     These Requests shall be deemed continuing so as to require prompt, supplemental production if YOU obtain or create additional DOCUMENTS subsequent to the date hereof.

Exhibit __1__, P. _9___

5

# **REQUESTS FOR PRODUCTION**

REQUEST NO. 1:

ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO
YOUR participation or involvement in MATTEL LAYOFFS and all DOCUMENTS
REFERRING OR RELATING TO such COMMUNICATIONS.

REQUEST NO. 2:

ALL DOCUMENTS REFERRING OR RELATING TO any decision or
contemplation by YOU or MATTEL to place or refer any MATTEL EMPLOYEES
to MATTEL competitors, including, without limitation, MGA.

REQUEST NO. 3:

ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO
MATTEL EMPLOYEES taking or contemplating positions of employment with
MATTEL competitors, including, without limitation, MGA.

REQUEST NO. 4:

ALL COMMUNICATIONS with MATTEL EMPLOYEES REFERRING OR
RELATING TO their taking or contemplating positions of employment with
MATTEL competitors, including, without limitation, MGA.

REQUEST NO. 5:

ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO the
preservation of MATTEL confidential information, proprietary information and trade
secrets during MATTEL LAYOFFS.

REQUEST NO. 6:

ALL COMMUNICATIONS with MATTEL EMPLOYEES REFERRING OR
RELATING TO the preservation of MATTEL confidential information, proprietary
information and trade secrets during MATTEL LAYOFFS.

6

Exhibit 1 , P. 10

REQUEST NO. 7:

ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO the preservation of MATTEL confidential information, proprietary information and trade secrets during or after the acceptance by MATTEL EMPLOYEES of employment with MATTEL competitors, including, without limitation, MGA.

REQUEST NO. 8:

ALL COMMUNICATIONS with MATTEL EMPLOYEES REFERRING OR RELATING TO the preservation of MATTEL confidential information, proprietary information and trade secrets during or after their acceptance of employment with MATTEL competitors, including, without limitation, MGA.

REQUEST NO. 9:

ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO the compliance of MATTEL EMPLOYEES with the DISCLOSURE OBLIGATIONS under the CONFLICT OF INTEREST QUESTIONNAIRE.

REQUEST NO. 10:

ALL COMMUNICATIONS with MATTEL EMPLOYEES REFERRING OR RELATING TO the compliance with the DISCLOSURE OBLIGATIONS under the CONFLICT OF INTEREST QUESTIONNAIRE.

REQUEST NO. 11:

ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO MATTEL's enforcement of the DISCLOSURE OBLIGATIONS of MATTEL EMPLOYEES under the CONFLICT OF INTEREST QUESTIONNAIRE.

Exhibit _1_, P. _11_

REQUEST NO. 12:

ALL COMMUNICATIONS with MATTEL EMPLOYEES REFERRING OR RELATING TO MATTEL's enforcement of the DISCLOSURE OBLIGATIONS under the CONFLICT OF INTEREST QUESTIONNAIRE.

REQUEST NO. 13:

ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO the compliance of MATTEL EMPLOYEES with the CONFIDENTIALITY, TRANSFER AND NO-CONFLICT OBLIGATIONS under the EMPLOYEE INVENTIONS AGREEMENT.

REQUEST NO. 14:

ALL COMMUNICATIONS with MATTEL EMPLOYEES REFERRING OR RELATING TO the compliance with the CONFIDENTIALITY, TRANSFER AND NO-CONFLICT OBLIGATIONS under the EMPLOYEE INVENTIONS AGREEMENT.

REQUEST NO. 15:

ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO MATTEL's enforcement of the CONFIDENTIALITY, TRANSFER AND NO-CONFLICT OBLIGATIONS of MATTEL EMPLOYEES under the EMPLOYEE INVENTIONS AGREEMENT.

REQUEST NO. 16:

ALL COMMUNICATIONS with MATTEL EMPLOYEES REFERRING OR RELATING TO MATTEL's enforcement of the CONFIDENTIALITY, TRANSFER AND NO-CONFLICT OBLIGATIONS under the EMPLOYEE INVENTIONS AGREEMENT.

8        Exhibit _1_, P._12_

REQUEST NO. 17:

ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO the compliance of MATTEL EMPLOYEES with the DISCLOSURE OBLIGATIONS under the PROPRIETARY INFORMATION CHECK-OUT FORM.

REQUEST NO. 18:

ALL COMMUNICATIONS with MATTEL EMPLOYEES REFERRING OR RELATING TO the compliance with the DISCLOSURE OBLIGATIONS under the PROPRIETARY INFORMATION CHECK-OUT FORM.

REQUEST NO. 19:

ALL COMMUNICATIONS with MATTEL REFERRING OR RELATING TO MATTEL's enforcement of the DISCLOSURE OBLIGATIONS of MATTEL EMPLOYEES under the PROPRIETARY INFORMATION CHECK-OUT FORM.

REQUEST NO. 20:

ALL COMMUNICATIONS with MATTEL EMPLOYEES REFERRING OR RELATING TO MATTEL's enforcement of the DISCLOSURE OBLIGATIONS under the PROPRIETARY INFORMATION CHECK-OUT FORM.

DATED: December 18, 2007

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____

       Lance A. Etcheverry
Attorneys for Counter-Defendants MGA
ENTERTAINMENT, INC., ISAAC LARIAN,
MGA ENTERTAINMENT (HK) LTD., and MGAE
de MEXICO S.R.L. de C.V.

Exhibit 2

## Etcheverry, Lance A (LAC)

| | |
|---|---|
| **From:** | Braslow, Cara (Corporate) [Cara.Braslow@right.com] |
| **Sent:** | Thursday, January 17, 2008 7:56 AM |
| **To:** | Etcheverry, Lance A (LAC) |
| **Subject:** | RE: Subpoena Response |

Thanks, Lance.

Cara

---

**From:** Etcheverry, Lance A [mailto:Lance.Etcheverry@skadden.com]
**Sent:** Thursday, January 17, 2008 10:52 AM
**To:** Braslow, Cara (Corporate)
**Subject:** Subpoena Response

Cara -

I am writing to confirm the substance of our conversation this morning.  In response to your request for an extension of time to respond to the subpoena served on Right Management Consultants, Inc. by our client, MGA Entertainment, Inc., we agreed that Right will provide written responses and objections, if any, to the subpoena on the originally-scheduled return date, January 18, 2008.  Please send those responses and objections to us by e-mail or facsimile to ensure that we receive them no later than January 18.  As for the production of responsive information, we agreed that Right will have until January 22, 2008 to do so in accordance with the procedures set forth in the subpoena.

Please contact me with any questions you may have or if this e-mail does not comport with your understanding of our agreement.  Thank you for your cooperation.

- Lance

LANCE A. ETCHEVERRY
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California  90071
213/687-5432

--------------------------------------------------------------------
************************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein. ************************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided

Exhibit 2 , P. 14

Exhibit 3

**Etcheverry, Lance A (LAC)**

| | |
|---|---|
| **From:** | Braslow, Cara (Corporate) [Cara.Braslow@right.com] |
| **Sent:** | Friday, January 18, 2008 11:03 AM |
| **To:** | Etcheverry, Lance A (LAC) |
| **Cc:** | Young, Ted (Corporate) |
| **Subject:** | Right Management Responses |
| **Attachments:** | EAS |

Attached please find Right Management's responses to the subpoena dated December 19, 2007.  Please contact me with any questions.


Regards,

Cara Braslow


Cara Levy Braslow

Assistant General Counsel

Right Management Inc.

1818 Market Street, 33rd Floor

Philadelphia, PA  19103

Tel.: 215.640.7103

Email:  cara.braslow@right.com <mailto:cara.braslow@right.com>



This e-mail and its attachments may contain Right Management Inc. proprietary information, which is PRIVILEGED, CONFIDENTIAL, or subject to COPYRIGHT belonging to Right Management Inc. This e-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering this e-mail to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this e-mail is STRICTLY PROHIBITED and may be UNLAWFUL. If you have received this e-mail in error, please notify the sender immediately and permanently delete the original and any copy of this e-mail and any printout. Right Management is a registered trademark of Right Management Inc. Thank Yo

Attachments:
   3040_001.pdf (251520 Bytes)


Exhibit __3__ , P. _15_



January 18, 2008

Lance A. Etcheverry, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
300 S. Grand Avenue
Los Angeles, CA 90071

Dear Lance:

     Attached are Right Management's responses to your requests for information set forth in the subpoena dated December 19, 2007.

     Please call me with any questions or comments.

Very truly yours,

Cara Levy Braslow
Assistant General Counsel

MANAGING THE HUMAN SIDE OF CHANGE®

Right Management • 1818 Market Street, Thirty-Third Floor • Philadelphia, Pennsylvania 19103
Phone 215 988-1588 Fax 215 988-0147 • www.right.com

Exhibit __3__, P. __16__

Right Management Responses
January 18, 2008

<u>RESPONSES TO SUBPOENA FROM MGA ENTERTAINMENT</u>

**1. All communications with Mattel referring or relating to your participation or involvement in Mattel layoffs and all documents referring or relating to such communications.**

<u>RESPONSE</u>: Right Management does not maintain communication files in hard copy with regard to Mattel layoffs. Right Management has located a small amount of documentation concerning Right Management's career transition programs, including client/candidate reports and career transition manuals, relating to Mattel reductions in force, but none of those documents concern MGA, any other competitor of Mattel, or Carter Bryant, or any litigation or dispute between MGA or any other competitor of Mattel or Bryant and Mattel. Additionally, the documents are proprietary information of Right Management and/or Mattel or constitute confidential employment records of participants in career transition services who are not parties to the litigation. Based on the objections described above, Right Management objects to producing the hard copy records it has located that respond to the first category of documents requested in MGA's subpoena. The document request is impermissibly overbroad.

Right Management does maintain archived correspondence files as part of its e-mail system. With respect to Right Management employees in the field (i.e., those who have had contact with Mattel and/or candidates in Mattel's career transition programs), e-mail is retained for a period of one (1) year. Archived e-mail correspondence is not retained for Right Management employees who have left the firm or for consultants (i.e., non-employees) of Right Management who may have provided services to Mattel and/or candidates in Mattel's career transition program.

In order to determine what e-mail files exist, Right Management first needs to assess the list of approximately 25 persons associated with Right Management who worked with Mattel and/or candidates in Mattel's career transition programs. To this end, Right Management will need to contact its Human Resources Department and determine the employment status of each such individual. Employees will have e-mail accounts; independent consultants typically do not. Furthermore, only current field employees will have e-mail accounts archived for a one-year period; any field employee who has left Right Management no longer has an archived e-mail account.

Once Right Management is able to determine who from its end currently has an archived e-mail account, it will be able to begin a search of such accounts. Because Right Management does not have the personnel to conduct this search internally, it will need to hire a consultant for this purpose. Right Management's estimate is that a consultant will charge at least $100 per hour per archived account needing to be searched. Right Management also estimates that it will take approximately 30 hours of searching time per archived account, for a total of $3,000 per archived e-mail account. Right Management cannot guarantee the retrieval of any particular item account or item.

Exhibit _3_, P. _17_

Right Management Responses
January 18, 2008

It is also possible that Right Management would need to purchase an additional server and software to create a location in order to recover the e-mail. The cost of doing so is not known at this time.

For Right Management to proceed with these searches is unduly burdensome and would require significant interruption of its business, and Right Management therefore objects to the request as being overbroad. Right Management has already invested significant time and expense in responding to this third party subpoena. There is no guarantee that Right Management could retrieve the items being requested or that the information retrieved would be relevant to the current MGA/Mattel/Carter Bryant dispute. If MGA agrees to bear the cost of conducting the search for possibly responsive e-mails, then Right Management will arrange for a search of e-mails to be done to determine whether it possesses any responsive e-mails.

**2. All documents referring or relating to any decision or contemplation by you or Mattel to place or refer any Mattel employees to Mattel competitors, including without limitation, MGA.**

RESPONSE:  Right Management possesses notes of internal discussions with candidates in Mattel's career transition programs that were never shared with Mattel and which are deemed confidential and proprietary to Right Management, or are confidential employment records of non-parties having nothing to do with MGA's litigation with Mattel, and, in Right Management's view, are not relevant to the dispute between Mattel, MGA and Carter Bryant. Right Management objects to their production.

**3. All communications with Mattel referring or relating to Mattel employees taking or contemplating positions of employment with Mattel competitors, including without limitation, MGA.**

RESPONSE:  Please see Response #1.

**4. All communications with Mattel employees referring or relating to their taking or contemplating positions of employment with Mattel competitors, including without limitation, MGA.**

RESPONSE:  Please see Response #2.

**5. All communications with Mattel referring or relating to the preservation of Mattel confidential information, proprietary information and trade secrets during Mattel layoffs.**

RESPONSE:  Right Management possesses no responsive documents.

**6. All communications with Mattel employees referring or relating to the preservation of Mattel confidential information, proprietary information and trade secrets during Mattel layoffs.**

2

Exhibit _3_, P. _18_

Right Management Responses
January 18, 2008

RESPONSE: Right Management possesses no responsive documents.

7.   All communications with Mattel referring to the preservation of Mattel confidential information, proprietary information and trade secrets during or after the acceptance by Mattel employees of employment with Mattel competitors, including without limitation MGA.

RESPONSE: Right Management possesses no responsive documents.

8.   All communications with Mattel employees referring or relating to the preservation of Mattel confidential information, proprietary information and trade secrets during or after their acceptance of employment with Mattel competitors, including without limitation MGA.

RESPONSE: Right Management possesses no responsive documents.

9.   All communications with Mattel referring or relating to the compliance of Mattel employees with the disclosure obligations under the Conflict of Interest questionnaire.

RESPONSE: Right Management possesses no responsive documents.

10.   All communications with Mattel employees referring or relating to the compliance with the disclosure obligations under the Conflict of Interest questionnaire.

RESPONSE: Right Management possesses no responsive documents.

11.   All communications with Mattel referring or relating to Mattel's enforcement of the disclosure obligations of Mattel employees under the Conflict of Interest questionnaire.

RESPONSE: Right Management possesses no responsive documents.

12.   All communications with Mattel employees referring or relating to Mattel's enforcement of the disclosure obligations under the Conflict of Interest questionnaire.

RESPONSE: Right Management possesses no responsive documents.

13.   All communications with Mattel referring or relating to the compliance of Mattel employees with the confidentiality, transfer and no-conflict obligations under the Employee Inventions Agreement.

RESPONSE: Right Management possesses no responsive documents.

Exhibit  3 , P. 19

Exhibit 4

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

DIRECT DIAL
(213) 687-5432
DIRECT FAX
(213) 621-5432
EMAIL ADDRESS
LETCHEVE@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
NEWARK
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 21, 2008

**VIA E-MAIL**

Ms. Cara Levy Braslow, Esq.
Right Management
1818 Market Street, 33rd Floor
Philadelphia, Pennsylvania 19103

        RE:   *Bryant v. Mattel, Inc.*

Dear Ms. Braslow:

        I am in receipt of Right Management's ("Right") responses and objections to the December 18, 2007 subpoena served on it by our client, MGA Entertainment, Inc. (the "Responses and Objections"). In reviewing the Responses and Objections, I was surprised by the sweeping objections and Right's wholesale refusal to produce responsive information. When you contacted me on January 14, 2008 (27 days after service of the subpoena) in search of an extension of time to respond to the subpoena, you assured me that Right had been working diligently and "as quickly as possible" to assemble all responsive information (both in paper and electronic formats). Nevertheless, you indicated that Right would need a few additional days to comply with the subpoena because, among other things, Right believed that certain personal information concerning individual Mattel employees would need to be redacted from the production set. In reliance on your representations, I agreed to give Right an extension until January 22, 2008 to produce the responsive information. Having received the extension, Right now appears to take the position that the subpoena is defective and, thus, it is under no obligation to comply with its terms.

        Right's objections to the subpoena are without merit. Thus, I write to request a meet and confer pursuant to Section 5 of the Stipulation for Appointment of a

Exhibit _4_, P. _21_

Right Management Responses
January 18, 2008

14.   All communications with Mattel employees referring or relating to the
compliance with the confidentiality, transfer and no-conflict obligations under the
Employee Inventions Agreement.

RESPONSE:  Right Management possesses no responsive documents.

15.  All communications with Mattel referring or relating to Mattel's enforcement of
the confidentiality, transfer and no-conflict obligations of Mattel employees under
the Employee Inventions Agreement.

RESPONSE:  Right Management possesses no responsive documents.

16.  All communications with Mattel employees referring or relating to Mattel's
enforcement of the confidentiality, transfer and no-conflict obligations under the
Employee Inventions Agreement.

RESPONSE:  Right Management possesses no responsive documents.

17.  All communications with Mattel referring or relating to the compliance of
Mattel employees with the disclosure obligations under the Proprietary Information
Check-Out Form.

RESPONSE:  Right Management possesses no responsive documents.

18.   All communications with Mattel employees referring or relating to the
compliance with the disclosure obligations under the Proprietary Information
Check-Out form.

RESPONSE:  Right Management possesses no responsive documents.

19.  All communications with Mattel referring or relating to Mattel's enforcement of
the disclosure obligations of Mattel employees under the Proprietary Information
Check-Out form.

RESPONSE:  Right Management possesses no responsive documents.

20.  All communications with Mattel employees referring or relating to Mattel's
enforcement of the disclosure obligations under the Proprietary Information Check-
Out form.

RESPONSE:  Right Management possesses no responsive documents.

4

Exhibit _3_, P. _20_

Cara Levy Braslow, Esq.
January 21, 2008
Page 2

Discovery Master (a copy of which is attached) to discuss Right's objections. Please let me know on which day this week you are available for a meet and confer.

In advance of the meet and confer, I respond briefly to Right's objections:

<u>Overbroad And Burdensome</u>

Right objects to Request Nos. 1 and 3 on grounds that they are impermissibly overbroad and unduly burdensome. Neither objection is appropriate, as both Requests are narrowly tailored to seek *only* communications between Right and Mattel with respect to several discrete topics. Indeed, Request No. 1 focuses on communications regarding Right's "participation or involvement in Mattel layoffs" and Request No. 2 specifically targets communications relating to Mattel employees "taking or contemplating position[s] of employment with Mattel competitors."

Right further claims that a search for electronic documents responsive to Request Nos. 1 and 3 would require significant business interruption and hence be unduly burdensome. As such, Right requests that MGA cover the cost of an outside consultant to review the e-mail archives of 25 Right employees who worked with Mattel (to the extent that the employees are still employed by Right). This request is unnecessary. Right is a large multi-national company employing thousands of employees in over 54 countries and, therefore, cannot credibly be heard to argue that it does "not have the personnel to conduct this search internally" – particularly since the review would be confined to the e-mail accounts of only a small number of already-identified Right employees.

<u>Proprietary/Confidential Information</u>

Right objects to Requests Nos. 1-4 on the basis that they seek proprietary information. As I informed you during our January 14 call, there is a Protective Order in the above-referenced litigation that permits third parties to designate documents they produce as confidential. I have attached a copy of the Protective Order for your convenience. The Protective Order should allay any concerns that Right may have regarding production of proprietary information.

<u>Relevance</u>

Finally, Right objects to Requests Nos. 2 and 4 on relevance grounds. This objection is likewise unfounded, as Mattel has alleged that MGA, a purported competitor of Mattel, acted inappropriately by employing certain of Mattel's former employees. Communications between Right and Mattel concerning the referral or placement of Mattel employees with Mattel competitors is therefore directly relevant to Mattel's claims in the litigation.

Exhibit _4_, P._22_

Cara Levy Braslow, Esq.
January 21, 2008
Page 3


        Should you have any questions prior to the meet and confer, please do not hesitate to contact me.  I look forward to hearing from you.


                              Sincerely,


                              Lance A. Etcheverry


Enclosures

cc:    B. Dylan Proctor


Exhibit __4__, P. __23__

12-08-2006   02:58pm   From-QUINN EMANUEL                    2136240643              T-707   P.003/010   F-346

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemnauel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

[Additional counsel listed on following page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |
| Plaintiff, | Consolidated with |
| v. | Case No. CV 04-09059<br>Case No. CV 05-02727 |
| MATTEL, INC., a Delaware corporation, | STIPULATION FOR APPOINTMENT OF A DISCOVERY MASTER; AND |
| Defendant. | [~~PROPOSED~~] ORDER |
| | Discovery Cutoff Date:  Not Set<br>Trial Date:  Not Set |

Exhibit  4 , P.  24

12-08-2006   02:58pm   From-QUINN EMANUEL                    2136240643           T-707   P.004/010   F-346

1   LITTLER MENDELSON
        Robert F. Millman (Bar No. 062152)
2        Douglas A. Wickham (Bar No. 127268)
        Keith A. Jacoby (Bar No. 150233)
3   2049 Century Park East, 5th Floor
    Los Angeles, California  90067-3107
4   Telephone:  (310) 553-0308
    Facsimile:   (310) 553-5583
5
6   Attorneys for Carter Bryant

7   O'MELVENY & MYERS LLP
        Diana M. Torres (Bar No. 162284)
8   400 S. Hope Street
    Los Angeles, California  90017
9   Telephone:  (213) 430-6000
    Facsimile:   (213) 430-6407

10  O'MELVENY & MYERS LLP
        Dale Cendali
11  Times Square Tower
    7 Times Square
12  New York, NY 10036

13  CHRISTENSEN, GLASER, FINK, JACOBS WEIL & SHAPIRO, LLP
        Patricia Glaser (Bar No. 55668)
14  10250 Constellation Boulevard - 19th Floor
    Los Angeles, CA 90067
15  Telephone:  (310) 553-3000
    Facsimile:  (310) 556-2920
16
17  Attorneys for MGA Entertainment, Inc.

18

19

20

21

22

23

24

25

26

27

28
                            Exhibit _4_ , P. _25_

1    WHEREAS, the parties are in agreement that a discovery master should be

2  appointed in this matter to resolve any discovery disputes and to minimize the

3  burden on the Court; and

4    WHEREAS, the parties have agreed upon a nominee, Hon. Edward A. Infante

5  (Ret.), and he has agreed to serve as a discovery master in this matter;

6    NOW, THEREFORE, to facilitate the fair and efficient completion of pre-

7  trial discovery, the parties Mattel, Inc. and Carter Bryant and MGA Entertainment,

8  Inc., by and through their respective counsel of record, hereby stipulate and agree as

9  follows:

10    1.    The Discovery Master shall be appointed to assure and provide cost-

11  effective discovery and to minimize the burden of discovery disputes upon the

12  Court.  Any and all discovery motions and other discovery disputes in the above

13  captioned action shall be decided by a master ("Discovery Master") pursuant to

14  Federal Rule of Civil Procedure 53.  Any motions currently pending before

15  Magistrate Judge Block shall be transferred to the Discovery Master.  The moving

16  party shall provide to the Discovery Master all papers associated with each pending

17  motion.

18    2.    The Discovery Master shall be Hon. Edward A. Infante (Ret.).  His

19  business address is: Two Embarcadero Center, Suite 1500, San Francisco, CA

20  94111.

21   ·   3.    Judge Infante shall serve as the Discovery Master until all issues herein

22  have been finally disposed of or determined, or until he shall withdraw in

23  accordance with applicable law.  If at any time he becomes unable to serve as the

24  Discovery Master, the parties shall confer to present an alternative agreed-upon

25  designee to the Court.  In the event that the parties cannot agree to an alternate

26  designee, then the Court shall appoint a Discovery Master.

27    4.    The Discovery Master shall have the authority to set the date, time, and

28  place for all hearings determined by the Discovery Master to be necessary; to

Exhibit __4__, P. __26__          -3-                STIPULATION FOR APPOINTMENT OF A DISCOVERY
                                                     MASTER AND [PROPOSED] ORDER

1   preside over hearings (whether telephonic or in-person); to take evidence in

2   connection with discovery disputes; to issue orders resolving discovery motions

3   submitted to the Discovery Master; to conduct telephonic conferences to resolve

4   discovery disputes arising during depositions; to issue orders awarding non-

5   contempt sanctions, including, without limitation, the award of attorney's fees, as

6   provided by Rules 37 and 45; and to prepare, file and serve other orders, reports and

7   recommendations, as appropriate.

8        5.      All discovery disputes shall be resolved by motion (except those arising

9   during a deposition which the Discovery Master determines can be resolved by

10  telephonic conference during the deposition).  The moving party shall first identify

11  each dispute, state the relief sought, and identify the authority supporting the

12  requested relief in a meet and confer letter that shall be served on all parties by

13  facsimile or electronic mail.  The parties shall have five court days from the date of

14  service of that letter to conduct an in-person conference to attempt to resolve the

15  dispute.  If the dispute has not been resolved within five court days after such

16  service, the moving party may seek relief from the Discovery Master by formal

17  motion or letter brief, at the moving party's option.  The opposing party shall have

18  five court days from the date of service of the motion or letter brief to submit a

19  formal opposition or response.  Any reply brief or letter brief shall be served within

20  three court days from the date of service of a formal opposition or response.  The

21  hearing on the motion shall take place within five court days of the service of any

22  reply brief or letter unless (a) the parties agree to another hearing date or agree that

23  no hearing is necessary; (b) the Discovery Master determines that no hearing is

24  necessary; or (c) the Discovery Master is not available, in which case the hearing

25  shall take place on the Discovery Master's first available date.  The foregoing shall

26  not prohibit (i) the parties from agreeing to alternate procedures, or (ii) a party from

27  seeking the Discovery Master's immediate resolution of a dispute or resolution of a

28  dispute upon shortened time upon a showing of good cause why a party would be

Exhibit  4 , P.  27               -4-

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

1   prejudiced absent prompt resolution.  Service of any document by fax or electronic

2   mail prior to 6:00 p.m. shall constitute service on that day.

3       6.      The Discovery Master's orders resolving discovery disputes, reports, or

4   recommendations pursuant to Rule 53(e) or (f) shall be treated as rulings made by a

5   Magistrate Judge of the United States District Court.  The Discovery Master shall

6   file each order, report, or recommendation pursuant to Rule 53(e) or (f) and serve

7   the parties within five court days of his/her decision on a matter.

8       7.      A court reporter shall transcribe any hearing or other proceeding before

9   the Discovery Master.

10      8.      The cost of any proceeding before the Discovery Master, including the

11  fees of the Discovery Master, the fees of court reporters who transcribe hearings or

12  other proceedings before the Discovery Master, and the fees of any other person

13  necessary to the efficient administration of the proceeding before the Discovery

14  Master, shall be paid one-half by Mattel, Inc., and one-half by MGA Entertainment,

15  Inc. and Carter Bryant unless, consistent with the Federal Rules of Civil Procedure,

16  the Discovery Master Orders otherwise.  By agreeing to share costs among the

17  parties, no party waives its right to seek recovery or reimbursement for such costs

18  from any other party.

19      9.      The Discovery Master shall be compensated according to his regular

20  hourly rate of $750.

21      10.     Pursuant to Federal Rule of Civil Procedure 53(b)(2), the Discovery

22  Master shall proceed with all reasonable diligence.

23      11.     Based on an affidavit filed by Hon. Edward A. Infante pursuant to

24  28 U.S.C. § 455 and Federal Rule of Civil Procedure 53(b)(3), the parties are not

25  aware that he has a relationship to the parties, to counsel, to the action, or to the

26  Court that would require disqualification of a judge under 28 U.S.C. § 455, and

27  based thereon the parties expressly waive any ground for disqualification disclosed

28  therein of Hon. Edward A. Infante to serve as master in these proceedings.

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

Exhibit  4 , P. 28           - 5 -

12.   The Discovery Master shall not have ex parte communications with ~~the Court~~, a party or counsel.

13.   The Discovery Master shall preserve and maintain all documents and materials submitted by the parties as well as all orders, reports, and recommendations issued by the Discovery Master.  These documents, materials, orders, reports and recommendations shall be the record of the Discovery Master's activities, and shall be maintained in chronological order until the Discovery Master is informed by the parties that all issues herein have been finally disposed of and determined.

14.   The Discovery Master is hereby authorized to receive and consider information and documents designated "CONFIDENTIAL" and "CONFIDENTIAL-ATTORNEYS EYES ONLY" pursuant to the January 4, 2005 Stipulated Protective Order.  The Discovery Master agrees to be bound by the January 4, 2005 Order.

15.   All third parties subject to discovery requests or deposition in this litigation shall be bound by the terms of this Stipulation and Order.

Dated: November 22, 2006                    O'MELVENY & MYERS LLP

                                            By: _____
                                                Diana Torres
                                                Attorneys for MGA Entertainment, Inc.

Dated: November 29, 2006                    LITTLER MENDELSON

                                            By: _____
                                                Douglas A. Wickham
                                                Attorneys for Carter Bryant

STIPULATION FOR APPOINTMENT OF A DISCOVERY
MASTER AND [PROPOSED] ORDER

-6-

Exhibit 4 , P. 29

December 9,
1  Dated: November __, 2006          QUINN EMANUEL URQUHART
                                     OLIVER & HEDGES, LLP
2

3                                    By: _Jon D. Corey_____
                                         Jon D. Corey
4                                        Attorneys for Mattel, Inc.

5

6                                    **ORDER**

7          The foregoing Stipulation for Appointment of a Discovery Master is SO

8  ORDERED *as modified.*

9

10  Dated: ___12-6-06.___          _S.G.Larson_____
                                     Hon. Stephen G. Larson
11                                   United States District Court Judge

12

13

14                        **CONSENT OF DISCOVERY MASTER**

15         If appointed by the Court, I, the undersigned, consent to serve as Discovery

16  Master in the above referenced proceeding consistent with this Order.

17

18  Dated: ___12-5-06___           _Edward A. Infante_____
                                     Hon. Edward A. Infante (Ret.)
19

20

21

22

23

24

25

26

27

28

                                           STIPULATION FOR APPOINTMENT OF A DISCOVERY
                                           MASTER AND [PROPOSED] ORDER
                              -7-

                    Exhibit  4 , P. 30



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
  Jon D. Corey (Bar No. 185066)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Counter-Defendant
Mattel, Inc.

FILED
CLERK, U.S. DISTRICT COURT

JAN - 4 2005

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware
Corporation,

                    Plaintiff,

        v.

CARTER BRYANT, an individual; and
DOES 1 through 10, inclusive,

                    Defendants.

CARTER BRYANT, on behalf of
himself, all present and former
employees of Mattel, Inc., and the
general public,

                    Counter-Claimant,

        v.

MATTEL, INC., a Delaware
Corporation,

                    Counter-Defendant.

CASE NO. CV 04-9059 NM (RNBx)

STIPULATED PROTECTIVE
ORDER; AND

[PROPOSED] ORDER

[Discovery Matter]

DOCKETED ON CM

JAN - 5 2005

BY _____ 006

07272/625581.2

F 1/4/05

Exhibit __4__, P. 31

PROTECTIVE ORF

54

# GOOD CAUSE STATEMENT

Plaintiff Mattel, Inc. ("Mattel"), defendant Carter Bryant, and intervenor-defendant MGA Entertainment, Inc. ("MGA") are parties to the above-captioned litigation (hereinafter, the "Action"). (Mattel, Carter Bryant and MGA Entertainment, Inc. are each referred to herein as a "Party" and collectively are the "Parties.")

In this Action, Mattel has alleged, and defendants dispute, that Bryant worked for and otherwise aided and assisted MGA while defendant was employed by Mattel as a designer, in violation of his contractual and other legal duties to Mattel.

All parties believe that they will or may be required to produce or disclose in this Action, and that nonparties may produce or disclose, information that is trade secret, proprietary, confidential and/or is of a private or personal nature and that, if disclosed in this Action without restriction on its use or further disclosure, may cause disadvantage, harm, damage and loss to the disclosing Party or to the disclosing nonparty.

In addition, the Parties are currently in a competitive relationship in the toy industry, with Mattel and MGA operating as a manufacturers and marketers of dolls, toys and other products and Bryant working at this time as a contractor for a Mattel competitor, MGA, and further anticipate that nonparty competitor information may be produced or disclosed in this Action.

In particular, without prejudice to any Party's right to object to or resist disclosure of such categories of information on relevance or any other grounds, the Parties currently anticipate that categories of such trade secret, proprietary, confidential and/or private documents and other information that may be disclosed in discovery by the Parties and by nonparties will or may include:

(1)    Personnel files and other private or confidential employment, contractor or vendor information;

07272/625581.2

-2-

1        (2)    The specific terms of agreements with, and information received

2   from, third parties that a Party is required to disclose only under conditions of

3   confidentiality;

4        (3)    Personal or private financial information, and confidential

5   financial data that is not known generally to the trade or to competitors, including

6   financial data relating to specific sales, cost and profit information for specific

7   products and product lines; and

8        (4)  · Business plans and product information that are not known

9   generally to the trade or to competitors, including non-public information relating to

10  product development and design.

11

12        WHEREFORE, believing that good cause exists, the Parties HEREBY

13  STIPULATE that, subject to the Court's approval, the following procedures shall be

14  followed in this Action to facilitate the orderly and efficient discovery of relevant

15  information while minimizing the potential for unauthorized disclosure or use of

16  confidential or proprietary information:

17

18                          <u>SCOPE OF THIS ORDER</u>

19

20        1.    This Protective Order shall apply to trade secret, confidential and

21  proprietary information, documents and things that are produced or disclosed in any

22  form during the course of the Action by any Party or any nonparty:

23             (a)    through discovery;

24             (b)    in any pleading, document or other writing; or

25             (c)    in testimony given at a deposition.

26  (The foregoing information, documents and things shall be referred to hereinafter

27  collectively as "Litigation Materials.")

28

07272/625581.2
                                   -3-
                                                           PROTECTIVE ORDER

Exhibit _4_, P. _33_

### CONFIDENTIAL AND ATTORNEYS' EYES ONLY INFORMATION

2.  Any Party or nonparty producing or disclosing Litigation Materials in this Action may designate such information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by designating it in the manner set forth in paragraph 3 below.  The designation of Litigation Materials as "CONFIDENTIAL" shall be limited to information which the disclosing Party or nonparty believes in good faith contains, constitutes or reveals confidential design, engineering or development information, confidential commercial information, non-public financial information, confidential or private information about current or former employees, contractors or vendors (including employee, contractor and vendor personnel records), or other information of a confidential, proprietary, private or personal nature.  The designation of information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be limited to trade secrets or other confidential commercial information, including without limitation non-public designs and drawings, which the disclosing Party or nonparty in good faith believes will result in competitive disadvantage or harm if disclosed to another Party to this Action without restriction upon use or further disclosure.   Information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may only be used and disclosed as provided in this Protective Order.

### MANNER OF DESIGNATION OF MATERIALS

3.  A Party or nonparty may designate Litigation Materials as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in the following manner:

(a)  <u>Documents or Things</u>.   "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment may be

-4-

PROTECTIVE ORDER

— Exhibit 4 , P. 34

1   obtained by typing or stamping "CONFIDENTIAL" or "CONFIDENTIAL --

2   ATTORNEYS' EYES ONLY" on the particular document or thing.

3        (b)   <u>Interrogatory Answers and Responses to Requests for</u>

4   <u>Admissions</u>.  In answering any interrogatory or request for admission, or any

5   part thereof, a Party may designate its or his answer as "CONFIDENTIAL" or

6   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by affixing thereto the

7   legend "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

8   ONLY."  Such "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'

9   EYES ONLY" answers shall be made on separate pages from any other

10  answers or portions thereof that are not designated as "CONFIDENTIAL" or

11  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

12       (c)   <u>Deposition Testimony</u>.  Any Party or nonparty giving

13  deposition testimony in this Action may obtain "CONFIDENTIAL" or

14  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment therefor by

15  designating, during the course of that testimony, for which "CONFIDENTIAL"

16  or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" treatment is desired,

17  the testimony that is claimed to be "CONFIDENTIAL" or "CONFIDENTIAL

18  -- ATTORNEYS' EYES ONLY,"  or alternatively by designating the entire

19  testimony to be "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS'

20  EYES ONLY," subject to a good faith obligation to identify any non-

21  confidential portions of the testimony (and/or any lesser "CONFIDENTIAL"

22  portions in the event that the entire testimony is designated "CONFIDENTIAL

23  -- ATTORNEYS' EYES ONLY") within fourteen (14) calendar days after

24  receipt of the transcript of the testimony.  The reporter shall separately

25  transcribe and bind the testimony so designated as "CONFIDENTIAL" and

26  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" and shall mark the face

27  of the separate bound transcript containing such testimony with the term

28  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY."

07272/625581.2

-5-

PROTECTIVE ORDER

A Party or nonparty also may make the above-referenced designation of confidentiality in writing and within fourteen (14) calendar days of the receipt by said Party or nonparty of the transcript of said testimony.  In that event, said portion of the transcript will be treated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" under the provisions of this Protective Order, except that it will not be separately bound.  If, during the course of deposition testimony, any Party or nonparty reasonably believes that the answer to a question will result in the disclosure of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information, all persons other than those persons entitled to receive such information pursuant to paragraphs 5 and 6 hereof shall be excluded from the room in which the deposition testimony is given.    Unless previously designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," all transcripts of deposition testimony and any related exhibits, and all information adduced in deposition, shall, in their entirety, be treated as "CONFIDENTIAL" for a period of fourteen (14) calendar days after receipt of the transcript by counsel for the designating Party or nonparty. The Party or nonparty designating the testimony or information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" may, within that fourteen (14) calendar day period described above, specifically designate information contained in the transcript(s) and/or exhibit(s) as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," whether or not previously designated as such, by notifying all Parties in writing of the portions of the transcript or exhibit which contains such information. Each Party shall attach a copy of such written statement to the face page of the transcript or exhibit and to each copy in its or his possession, custody or control.  Thereafter, these portions of the transcript or exhibits designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall be treated in

PROTECTIVE ORDER

Exhibit 4 , P. 36

1    accordance with the terms of this Protective Order. In addition, the provisions

2    of Paragraph 3(e) for later designating transcripts or exhibits shall apply after

3    the expiration of the fourteen (14) calendar day period described in this

4    Paragraph 3(c).

5              (d)    Typing or stamping the legend "CONFIDENTIAL" or

6    "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" upon the first page of a

7    collection of Litigation Materials which are bound together shall have the

8    effect of designating such collection in its entirety as "CONFIDENTIAL" or

9    "CONFIDENTIAL -- ATTORNEYS' EYES ONLY." In the case of disks,

10   tapes, CD-ROMs, DVDs and other tangible storage media or devices, labeling,

11   stamping or marking the outside of such disk, tape, CD-ROM, DVD or other

12   medium or device with the legend "CONFIDENTIAL" or "CONFIDENTIAL

13   -- ATTORNEYS' EYES ONLY" shall have the effect of designating the entire

14   contents of such disk, tape, CD-ROM, DVD or other medium or device, and

15   all data stored thereupon, as "CONFIDENTIAL" or "CONFIDENTIAL --

16   ATTORNEYS' EYES ONLY," as the case may be.

17             (e)    Except as otherwise provided in Paragraph 3(c) of this

18   Protective Order, the receiving Party shall not reveal any information produced

19   for a period of seven (7) calendar days following receipt. Failure to designate

20   a document, thing or other information as CONFIDENTIAL" or

21   "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" in accordance with this

22   Protective Order shall not preclude any Party or nonparty desiring to so

23   designate the document, thing or information from so designating thereafter;

24   provided that the Party or nonparty proceeds promptly after discovery of any

25   omission of marking, in good faith marks the document, thing or other

26   information and requests, in writing, that each receiving Party so mark and

27   treat the document, thing or other information in accordance with this

28   Protective Order. Thereafter, the document, thing or other information shall

07272/625581.2

-7-

PROTECTIVE ORDER

Exhibit  4 , P. 37

be fully subject to this Protective Order.  No Party shall incur liability for any disclosures made prior to notice of such designation, except to the extent that any such disclosures occurred prior to the seven (7) day period described above or prior to such other time periods as are provided by this Protective Order, including without limitation such time periods as are provided in Paragraph 3(c) above.

## RESTRICTIONS ON DISCLOSURE OF DESIGNATED MATERIALS

4.    Any Litigation Materials produced or disclosed in this Action, whether or not designated "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," may only be used by the receiving Party of such information for purposes of litigation and not for any other purpose, including without limitation for any business or trade purpose.  As used herein, the term "litigation" shall mean preparation for, participation in and prosecution and defense of any suit, motion, trial, appeal, hearing, review or other judicial proceeding or in connection with any mediation or other alternative dispute resolution procedure that this or any other court may order or that the Parties may agree to.

5.    Subject to Paragraph 7 herein, and unless as otherwise ordered by the Court, Litigation Materials designated as "CONFIDENTIAL" shall not be disclosed to any person other than:

(a)    the attorneys for the Parties and their partners, shareholders, associates, document clerks and paralegals who are necessary to assist such attorneys;

(b)    secretaries, stenographers and other office or clerical personnel employed by said attorneys and who are necessary to assist such attorneys;

07272/625581.2

-8-

PROTECTIVE ORDER

Exhibit _4_, P. _38_

(c)     a named Party or officers or employees of a named Party, to the extent deemed necessary by their respective attorneys for purposes assisting in litigation;

(d)     the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL" information;

(e)     such other persons as may be consented to by the Party or nonparty designating such information as "CONFIDENTIAL" information;

(f)     outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(g)     professional court reporters engaged to transcribe deposition testimony, professional videographers engaged to videotape deposition testimony and translators;

(h)     independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for purposes of litigation; and

(i)     non-party fact witnesses in a deposition, provided, however, that such persons may not retain such "CONFIDENTIAL" information unless otherwise authorized to receive it. If the attendance of a non-party fact witness at a deposition can only be obtained through compulsory process, the witness need not execute an Assurance of Compliance in the form attached as Exhibit A, provided that: (1) the witness acknowledges his obligation to maintain the confidentiality of "CONFIDENTIAL" information under oath; and (2) such "CONFIDENTIAL" information may only be shown to the witness during the deposition.

07272/625581.2

-9-

PROTECTIVE ORDER

Exhibit __4__, P. _39_

6.      Subject to paragraph 7 herein, and unless as otherwise ordered by the Court, Litigation Materials designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be disclosed to any person other than:

(a)     the attorneys for the Parties (but not including in-house counsel for the Parties or any attorney who is an officer, director, shareholder or employee of any Party or its corporate affiliates) and their partners, shareholders, associates, document clerks and paralegals who are assigned to and necessary to assist such attorneys.  For the purposes of this subparagraph, "affiliate" shall mean any corporate parent or subsidiary of any Party, or any other entity that is under common control with any Party or corporate parent or subsidiary of any Party, or any of their successors or predecessors in interest;

(b)     secretaries, stenographers and other office or clerical personnel employed by said attorneys and who assist them with respect to litigation;

(c)     the authors, senders, addressees and designated copy recipients of any document or thing which has been designated as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(d)     such other persons as may be consented to by the Party designating such information as "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information;

(e)     outside litigation support vendors, including commercial photocopying vendors, scanning services vendors, coders and keyboard operators;

(f)     independent outside consultants or experts retained by the attorneys to the extent deemed necessary by said attorneys for the purposes of litigation; and

07272/625581.2

-10-

PROTECTIVE ORDER

Exhibit 4 , P. 40

1         (g)   professional court reporters engaged to transcribe

2    deposition testimony, professional videographers engaged to videotape

3    deposition testimony and translators.

4         7.   None of the following is bound by or obligated under this Order

5    in any respect and specifically are not bound or obligated to treat information

6    designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

7    ONLY" in any particular manner: The Court hearing this Action (including the Court

8    having jurisdiction of any appeal), Court personnel, court reporters working for the

9    Court, translators working for the Court, or any jury impaneled in this Action.

10        8.   Other than those identified in Paragraph 7 above, each person to

11   whom information designated as "CONFIDENTIAL" or "CONFIDENTIAL --

12   ATTORNEYS' EYES ONLY" is disclosed shall be informed of the terms of this

13   Protective Order and agree to be bound by it before disclosure to such persons of any

14   such information. The persons described in Paragraphs 5(f), 5(h), 6(e) and 6(f) shall

15   not have access to either "CONFIDENTIAL" or "CONFIDENTIAL --

16   ATTORNEYS' EYES ONLY" information, as the case may be, until they have

17   certified that they have read this Protective Order and have manifested their assent

18   to be bound thereby by signing a copy of the Assurance of Compliance attached

19   hereto as Exhibit A. Once a person has executed such an Assurance of Compliance,

20   it shall not be necessary for that person to sign a separate Assurance of Compliance

21   each time that person is subsequently given access to confidential material. Any

22   person who signed an Assurance of Compliance in connection with the Stipulation

23   for Protection of Confidential Information and Protective Order filed September 16,

24   2004 in Mattel Inc. v. Bryant, Case No. BC 314398, pending in Los Angeles County

25   Superior Court, need not re-sign the Assurance of Compliance attached hereto but

26   shall, by virtue of his or her prior signature, be deemed to have signed the attached

27   Assurance of Compliance.

28

07272/625581.2

-11-

PROTECTIVE ORDER

Exhibit _4_ , P. _41_

9.    The failure of any Party to object to the designation of information as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" shall not be deemed an admission that such information qualifies for such designation.

10.    If any Party wishes to have any information, document or testimony marked "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by another Party or nonparty reclassified as non-confidential, or from "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" to "CONFIDENTIAL," the Parties and/or relevant nonparty or nonparties will confer and try to reach agreement. If the Parties and/or relevant nonparty or nonparties cannot reach agreement, either Party and/or the relevant nonparty or nonparties may apply to the Court to resolve the matter in accordance with the Local Rules.  Unless and until this Court enters an Order changing the designation of the information, it shall be afforded the treatment prescribed in this Protective Order for its designation.

11.    Nothing contained in this Protective Order shall restrict or prevent any Party or nonparty from disclosing or otherwise using its or his own Litigation Materials which that Party or nonparty produces or discloses in this action.

12.    The inadvertent or unintentional disclosure by a producing Party or nonparty of "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" Litigation Materials during the course of this litigation, regardless of whether the information was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a Party's or nonparty's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto or on the same or related subject matter.  Counsel for the Parties and/or nonparties shall in any event, to the extent possible, upon discovery of inadvertent error, cooperate to restore the confidentiality of the "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material that was inadvertently or unintentionally disclosed.

13.     If a Party or nonparty through inadvertence produces or provides discovery that it, he or she believes is subject to a claim of attorney-client privilege or work product immunity, the producing Party or nonparty may give written notice to the receiving Party that the document is subject to a claim of attorney-client privilege or work product immunity and request that the document be returned to the producing Party or nonparty.  The receiving Party shall promptly return to the producing Party or nonparty the inadvertently disclosed document and all copies of such document.  Return of the document by the receiving Party shall not constitute an admission or concession, or permit any inference, that the returned document is, in fact, properly subject to a claim of attorney-client privilege or work product immunity, nor shall it foreclose any Party from moving the Court for an Order that such document has been improperly designated or should be producible for reasons other than a waiver caused by the inadvertent production.

14.     Nothing contained in this Protective Order shall affect the right of any Party or nonparty to make any objection, claim any privilege, or otherwise contest any request for production of documents, interrogatory, request for admission, or question at a deposition or to seek further relief or protective orders from the Court in accordance with the <u>Federal Rules of Civil Procedure</u> and the <u>Local Rules</u>. Nothing in this Protective Order shall constitute an admission or waiver of any claim or defense by any Party.

## <u>FILING AND USE IN COURT OF DESIGNATED MATERIALS</u>

15.     Except when the filing under seal is otherwise authorized by statute or federal rule, the Parties shall seek the Court's prior approval for the filing under seal of pleadings and other documents containing properly designated "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information in accordance with the procedures set forth in <u>Local Rule</u> 79-5.1, as such

07272/625581.2

-13-

Exhibit  4 , P.  43

1  Rule may be amended from time to time.  Prior to the time that a Party receiving the
2  "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY"
3  information from any other Party files with the Court an application and the other
4  materials required by Local Rule 79-5.1, as such Rule may be amended from time to
5  time, to seal the producing Party's confidential information, the receiving Party shall
6  consult with the producing Party's attorney to determine whether the producing Party
7  will re-designate the previously designated confidential information so as to avoid the
8  need for the request to file such information under the seal.  Upon the default of a
9  Party to seek the Court's approval to file a document containing "CONFIDENTIAL"
10 or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information under seal, any
11 Party may subsequently seek the approval of the Court to file that document under
12 seal, in accordance with the procedures set forth in Local Rule 79-5.1, as such Rule
13 may be amended from time to time.

15                    THIRD-PARTY REQUEST FOR DESIGNATED MATERIALS

17          16.    If any Party or nonparty receives a subpoena or document request
18 from a third party which purports to require the production of materials in that Party's
19 possession which have previously been designated as "CONFIDENTIAL" or
20 "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by any other Party or nonparty,
21 the Party or nonparty receiving such subpoena or document request (a) shall object
22 and refuse to produce documents absent a Court Order or the consent of the Party or
23 nonparty who designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL
24 -- ATTORNEYS' EYES ONLY", (b) immediately notify the Party or nonparty who
25 designated the materials as "CONFIDENTIAL" or "CONFIDENTIAL --
26 ATTORNEYS' EYES ONLY" of the receipt of said subpoena or document request,
27 and (c) shall not oppose any effort by the Party or nonparty which designated the
28 material as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES

07272/625581.2

-14-

PROTECTIVE ORDER

Exhibit 4, P. 44

1  ONLY" to quash the subpoena or obtain a protective order limiting discovery of such
2  material.

4  <u>DISCOVERY FROM NONPARTIES</u>

6          17.   Discovery of nonparties may involve receipt of information,
7  documents, things or testimony which include or contain "CONFIDENTIAL" or
8  "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" materials or information.  A
9  nonparty producing such material in this case may designate as "CONFIDENTIAL"
10 or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" some or all of the material it
11 produces in the same manner provided for in this Protective Order with respect to
12 material furnished by or on behalf of the Parties.  Any Party may also designate as
13 "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any
14 materials or information produced by a nonparty that constitute "CONFIDENTIAL"
15 or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material of the designating
16 Party under Paragraph 2 of this Protective Order, regardless of whether the producing
17 nonparty has also so designated.  In addition, a nonparty may also designate as
18 "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" any
19 materials or information produced by a Party that constitute "CONFIDENTIAL" or
20 "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" material or information of such
21 nonparty under Paragraph 2 of this Protective Order, regardless of whether the
22 producing Party has also so designated.  In either such an event, the designation
23 providing for the greater level of protection for the material information shall control,
24 subject to Paragraph 10 of this Protective Order.  Nonparty materials designated
25 "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" by a
26 nonparty or Party shall be governed by the terms of this Protective Order.
27
28

07272/625581.2

-15-

PROTECTIVE ORDER

Exhibit  4  , P. 45

## CONCLUSION OF LITIGATION

18.    Within thirty (30) days of the conclusion of this Action, including any post-trial motions or appellate proceedings relating thereto, all documents, transcripts or other things or information designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY," and all copies thereof, shall be returned to the attorneys for the Party or nonparty furnishing the same, or shall be destroyed by the attorneys having such documents in their possession.  In addition, all summaries or other materials containing or disclosing information contained in such documents, answers, transcripts or other things shall be destroyed; provided, however, that outside counsel for each Party may retain one complete and unredacted set of pleadings and papers filed with the Court or served on the other Parties.  Such retained copy of pleadings and papers shall be maintained in a file accessible only to outside counsel bound by this Protective Order.  This Protective Order shall continue to be binding after the conclusion of this Action.

## AMENDMENT OF THIS AGREEMENT

19.    The provisions of this Stipulation and Protective Order may be  modified at any time by stipulation of the Parties as approved by Order of the Court. In addition, a Party may at any time apply to the Court for modification of this

Exhibit __4__, P. _46_

SCANNED

1   Stipulation and Protective Order pursuant to a motion brought in accordance with the

2   rules of the Court.

3

4       **IT IS SO STIPULATED.**

5

6   DATED: December 22, 2004        QUINN EMANUEL URQUHART

7                                   OLIVER & HEDGES, LLP

8                                   By _Jon Corey_____

9                                   Jon Corey

10                                  Attorneys for Plaintiff
                                    Mattel, Inc.

11

12  DATED: December ___, 2004       LITTLER MENDELSON

13                                  By _____

14                                  Douglas A. Wickham
                                    Attorneys for Defendant
15                                  Carter Bryant

16  DATED: December ___, 2004       O'MELVENY & MEYERS, LLP

17

18                                  By _____

19                                  Diana M. Torres
                                    Attorneys for Intervenor-Defendant
                                    MGA Entertainment, Inc.

20

21      **IT IS SO ORDERED.**

22

23  DATED: 1/4/05

24                                  THE HONORABLE ROBERT N. BLOCK
                                    United States Magistrate Judge

25

26

27

28

07272/625581.2                           -17-

                                                        PROTECTIVE ORDER

                        Exhibit   4  , P. 47

1  Stipulation and Protective Order pursuant to a motion brought in accordance with the

2  rules of the Court.

3

4      **IT IS SO STIPULATED.**

5

6  DATED: December ___, 2004          QUINN EMANUEL URQUHART
                                     OLIVER & HEDGES, LLP
7

8                                     By _____
9                                        Jon Corey
                                        Attorneys for Plaintiff
10                                       Mattel, Inc.

11

12  DATED: December 2_, 2004          LITTLER MENDELSON

13                                     By _____
                                        Douglas A. Wickham
14                                       Attorneys for Defendant
                                        Carter Bryant
15

16  DATED: December ___, 2004          O'MELVENY & MEYERS, LLP

17
                                      By _____
18                                       Diana M. Torres
                                        Attorneys for Intervenor-Defendant
19                                       MGA Entertainment, Inc.

20

21      **IT IS SO ORDERED.**

22

23

24  DATED: _____             _____
                                      THE HONORABLE ROBERT N. BLOCK
25                                      United States Magistrate Judge

26

27

28

07272/625581.2                              -17-
                                                          PROTECTIVE ORDER

Exhibit _4_, P. _48_

1   Stipulation and Protective Order pursuant to a motion brought in accordance with the

2   rules of the Court.

3

4       IT IS SO STIPULATED.

5

6   DATED: December ___, 2004          QUINN EMANUEL URQUHART
                                       OLIVER & HEDGES, LLP
7

8                                      By
9                                         Jon Corey
                                          Attorneys for Plaintiff
10                                        Mattel, Inc.

11

12  DATED: December ___, 2004          LITTLER MENDELSON

13                                     By
14                                        Douglas A. Wickham
                                          Attorneys for Defendant
15                                        Carter Bryant

16  DATED: December ___, 2004          O'MELVENY & MEYERS, LLP

17                                     By
18                                        Diana M. Torres
                                          Attorneys for Intervenor-Defendant
19                                        MGA Entertainment, Inc.

20

21

22      IT IS SO ORDERED.

23

24  DATED: _____            THE HONORABLE ROBERT N. BLOCK
                                       United States Magistrate Judge
25

26

27

28

07272/625581.2                              -17-

                                                          PROTECTIVE ORDER

Exhibit  4 , P. 49

RightFAX          1/6/2005 9:22   PAGE 021/023   Fax Server

**EXHIBIT A**

**ASSURANCE OF COMPLIANCE**

I, _____, under penalty of perjury under the laws of the United States of America, declare and state as follows:

I reside at _____, in the City/County of _____ and State/Country of _____;

I have read the annexed Stipulated Protective Order, ("Protective Order") dated _____ in the action entitled *Mattel, Inc. v. Carter Bryant,* Case No. CV 04-9059 NM (RNBx), which currently is pending in the United States District Court for the Central District of California; that I am fully familiar with and agree to comply with and be bound by the provisions of that Protective Order;

I will not divulge to persons other than those specifically authorized by the Protective Order, and will not copy or use any Litigation Materials designated as "CONFIDENTIAL" or "CONFIDENTIAL -- ATTORNEYS' EYES ONLY" except solely as permitted by the Protective Order; and

I consent to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing said Protective Order, enjoining any violation or threatened violation of the Protective Order or seeking damages for the breach of said Protective Order.

_____
(Signature)

07272/625581.2

PROTECTIVE ORDER

Exhibit _4_, P. _50_

Exhibit 5

## Etcheverry, Lance A (LAC)

**From:** Plambeck, Cheryl [CPlambeck@dglaw.com]
**Sent:** Tuesday, February 05, 2008 11:41 AM
**To:** Etcheverry, Lance A (LAC)
**Subject:** RE: Right Management Subpoena - follow up

Lance,

Right Management has identified so far approximately 35 employees who worked on Mattel-related projects who have active e-mail accounts with Right. There may be additional Right employees who worked on Mattel but who left within the past year, and therefore have no active e-mail account with Right, and Right is still working on identifying how many such employees there may be.

I'm out of the office (jury duty) today but hope to be back in the office by tomorrow. I will be in touch with you later this week after we learn more.

Thanks,
Cheryl

**From:** Plambeck, Cheryl
**Sent:** Friday, February 01, 2008 12:33 PM
**To:** 'Etcheverry, Lance A'
**Cc:** 'Michael T Zeller'; John Gordon
**Subject:** Right Management Subpoena - follow up

Lance,

Right Management confirmed that it did work in the past 12 months for Mattel. Right is in the process of identifying all of the people who worked on Mattel-related projects in that period. There are well over 100 and Right's IT department is attempting to ascertain which of them have active e-mail accounts with Right. Then HR will have to pull employment files for the rest of them and determine whether any are/were employees as opposed to independent contractors, and, if employees, whether they left Right within the past year. These tasks are time-consuming and will not likely be completed today.

At my request, Mattel's counsel has agreed to stipulate to a further two-week extension of time for you to make any compulsion motions so that we can continue to meet and confer without being under the threat of an immediate motion from you. Please send a stip to John Gordon.

I'll be in touch with you next week after Right has completed the steps noted above. Assuming that there are e-mail accounts, as we discussed yesterday, the issues to be discussed will include payment by your clients for restoration and searching of the e-mail accounts, and establishment of an appropriately narrow keyword list for same.

Thanks,

Cheryl

Cheryl M. Plambeck, Esq.
Davis & Gilbert LLP
1740 Broadway
New York, New York 10019
Tel. (212) 468-4965

Exhibit _5_, P. _51_

2/26/2008

Exhibit 6

# THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Exhibit 7

# THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER