THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
MARINA V. BOGORAD (Bar No. 217524)
(mbogorad@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Ste. 3400, Los Angeles, CA 90071-3144
Tel.: (213) 687-5000 / Fax: (213) 687-5600

RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, Suite 3800
San Francisco, CA 94111-5974
Tel.: (415) 984-2698 / Fax: (415) 984-2626

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited, MGAE de Mexico, S.R.L. de C.V., and Isaac Larian

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>Defendant.<br><br>AND CONSOLIDATED ACTIONS. | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with Case No. 04-9059 and Case No. 05-2727<br><br>Honorable Stephen G. Larson<br><br>**[PUBLIC REDACTED]**<br>(1) MGA PARTIES' REPLY MEMORADUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION *IN LIMINE* NO. 1 TO EXCLUDE ALL EVIDENCE RELATING TO LITIGATION OR OTHER PROCEEDINGS BETWEEN ISAAC AND FARHAD LARIAN;<br><br>**FILED UNDER SEPARATE COVER**:<br><br>(2) DECLARATION OF MARINA V. BOGORAD IN SUPPORT THEREOF; and<br><br>(3) PROOF OF SERVICE.<br><br>Hearing Date/Time: TBD |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT .............................................................................. 1

ARGUMENT ............................................................................................................ 1

    I.    THE EVIDENCE MATTEL SEEKS TO INTRODUCE FROM THE LARIAN LITIGATION IS IRRELEVANT AND INADMISSIBLE ............ 1

        A.    Mattel's "Concealment" Evidence Has Been Recanted Or Is Duplicative And Is Thus Not Sufficiently Probative To Merit Its Inclusion Here ............................................................................ 3

        B.    Isaac Larian's Testimony in the Larian Litigation Is Identical to That Given in This Action, and is Thus Not Probative Even for Impeachment ................................................................................ 5

        C.    The Prior Testimony Of Jennifer Maurus is Irrelevant And Inadmissible ................................................................................. 6

        D.    Evidence of Farhad's Alleged Spoliation is Irrelevant, Prejudicial and Cumulative ..................................................... 10

    II.    MATTEL'S INTENDED USES OF EVIDENCE FROM THE LARIAN LITIGATION WILL BE UNDULY PREJUDICIAL AND CONFUSING .................................................................................................. 11

CONCLUSION ...................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**                      **PAGE(S)**

Burns v. Clusen,
   798 F.2d 931 (7th Cir. 1986) .................................................................... 7

Carmody v. ProNav Ship Management, Inc.,
   224 F.R.D. 111 (S.D.N.Y. 2004) ............................................................. 9

Christians v. C.I.R. T.C. Memo.,
   No. 9814-01,
   2003 WL 21000920 (U.S. Tax Ct. May 5, 2003) ................................... 4

Edelson v. C.I.R.,
   829 F.2d 828 (9th Cir. 1987) .................................................................. 4

Galvan v. Yates,
   No. CVF050986LJO GSA,
   2008 WL 650282 (E.D. Cal. Mar. 5, 2008) ............................................ 2

Gonsalves v. Kaiser Sand & Gravel Co.,
   No. C 92-3561 BAC,
   1994 WL 125211 (N.D. Cal. Mar. 24, 1994) ......................................... 4

Gonzalez v. City of Garden Grove,
   No. CV 05-1506 CAS JTLX,
   2006 WL 5112757 (C.D. Cal. Nov. 13, 2006) ....................................... 2

Grant Thornton, LLP v. Federal Deposit Insurance Corp.,
   Nos. CIV A 100-655, CIV A 103-2129, CIV A 104-0043,
   2007 WL 518421 (S.D. W. Va. Feb. 13, 2007) ..................................... 3

Hub v. Sun Valley Co.,
   682 F.2d 776 (9th Cir. 1982) .................................................................. 7

Hynix Semiconductor Inc. v. Rambus Inc.,
   No. CV-00-20905RMW,
   2007 WL 3284060 (N.D. Cal. Nov. 2, 2007) ......................................... 4

Janky v. Lake County Convention & Visitors Bureau,
   No. 3:05-CV-217-PRC,
   2007 WL 733902 (N.D. Ind. Mar. 7, 2007) ........................................... 3

Kitzmiller v. Dover Area School District,
   No. 04CV2688,
   2005 WL 4147867 (M.D. Pa. Sept. 22, 2005) ....................................... 7

Lego v. Stratos International, Inc.,
   No. C 02-03743 JW,
   2004 WL 5518162 (N.D. Cal. Nov. 4, 2004) ......................................... 2

Procter & Gamble Co. v. Haugen,
  No. 195-CV-94 TS,
  2007 WL 701812 (D. Utah Mar. 2, 2007) ............................................................. 3

Rutledge v. Electric Hose & Rubber Co.,
  511 F.2d 668 (9th Cir. 1975) ................................................................................. 8

In re Safety-Kleen Bondholders Litigation,
  No. C/A 3:00-1145-17,
  2005 WL 6075368 (D. S.C. Feb. 4, 2005) ............................................................ 3

Saucier v. Coldwell Banker JME Realty,
  No. CIVA 1:04CV686 HSORH,
  2007 WL 2898525 (S.D. Miss. Sept. 27, 2007) .................................................... 2

Snapp & Associates Insurance Services, Inc. v. Malcolm Bruce Burlingame
  Robertson,
  96 Cal. App. 4th 884 (2002) .................................................................................. 4

United States v. Hooton,
  662 F.2d 628 (9th Cir. 1981) ................................................................................. 5

United States v. Reyes,
  18 F.3d 65 (2d Cir. 1994) ...................................................................................... 9

United States v. Swarek,
  656 F.2d 331 (8th Cir. 1981) ................................................................................. 4

United States v. Ellis,
  147 F.3d 1131 (9th Cir. 1998) ............................................................................. 11

Ward v. Estaleiro Itajai S/A,
  No. 05-61821 CIV,
  2008 WL 1749475 (S.D. Fla. Apr. 10, 2008) ....................................................... 2

White v. Ford Motor Company,
  No. CV-N-95-0279-DWH,
  2003 WL 23353600 (D. Nev. Dec 30, 2003) ....................................................... 2

**STATUTES**

Fed. R. Evid. 403 ........................................................................................... passim

Fed. R. Evid. 801 .................................................................................................. 10

Fed. R. Evid. 803(3) ............................................................................................... 9

Fed. R. Evid. 804 (b)(1) ......................................................................................... 9

**OTHER**

11 J. Moore & H. Bendix, Moore's Federal Practice § 804.04 [3] (2d ed. 1989) ............... 7

## PRELIMINARY STATEMENT

It could easily be an episode of *Dynasty* or *Dallas* – one wealthy brother suing another as part of a long-standing, bitter feud over control of their family business, dramatically concluding with the plaintiff brother dropping the suit in open court, announcing that his claims were meritless and apologizing to his wrongly accused brother. This is not a fictional primetime battle between the Carringtons or the Ewings, however, but the 2005 litigation between the Larian brothers that Mattel wants to put before the jury. In its Opposition, Mattel does not show that the evidence it seeks to introduce is anything but minimally relevant to the issues here, *especially as the allegations Mattel deems most significant were recanted before the suit even got to arbitration.* Mattel's tortured rationales for the inclusion of other evidence from the Larian Litigation sidestep that such evidence is readily available from other sources and thus is needlessly cumulative and insufficiently probative to warrant introducing the Larians' family strife here. Mattel also offers <u>no</u> plausible reason why arbitration testimony from former MGA employee Jennifer Maurus will be admissible against the MGA Parties or Bryant whether or not Maurus appears at trial. Mattel plainly wants to put this evidence before the jury solely to cast Isaac Larian as a soap opera villain. But Mattel does not explain how introduction of even "cold facts" from a suit entitled <u>Larian v. Larian</u> could provoke anything but an emotional and unfairly prejudicial reaction from the jury toward Isaac Larian. Thus, this is one melodrama that should not be re-run, and this evidence should be excluded.

## ARGUMENT

### I. THE EVIDENCE MATTEL SEEKS TO INTRODUCE FROM THE LARIAN LITIGATION IS IRRELEVANT AND INADMISSIBLE

As a preliminary matter, Mattel claims that MGA's motion *in limine* is too "broad and conclusory" because it only points to a "miniscule and unrepresentative" amount of actual evidence sought to be excluded by MGA. (Mattel MIL Opp'n No. 1 at 10, 22.) The flaw in Mattel's argument lies in its own malfeasance – as the MGA Parties noted in their Motion, at the time of filing they were by necessity sifting through <u>more than 400 exhibits</u> relating to

the Larian Litigation on Mattel's improper exhibit list. (MGA MIL No. 1 at 4.)[1] In slashing its list per this Court's order, Mattel eliminated most of the duplicative pleadings and correspondence, but clearly intends to rely on highly prejudicial and irrelevant documents highlighting the brothers' conflict that the MGA Parties have shown should be excluded.

Mattel urges the Court to reject the MGA Parties' Motion out of hand because "[f]ederal courts routinely reject such overbroad requests regarding prior litigation with common issues." (Mattel MIL Opp'n No. 1 at 10.) But Mattel's authority is distinguishable. In Gonzalez v. City of Garden Grove, 2006 WL 5112757 (C.D.Cal. Nov. 13, 2006), for example, the court found that the evidence in question did not come in to establish liability, but was relevant character evidence, thus rejecting by implication Mattel's expressed intention here to use the Larian Litigation evidence to establish certain "common issues" concerning Isaac's liability. Similarly, in Ward v. Estaleiro Itajai S/A, 2008 WL 1749475 (S.D.Fla. Apr. 10, 2008), the court actually granted the plaintiff's motion in limine to exclude evidence of prior litigation, damages awarded, and attorney's fees incurred and only permitted the evidence of prior testimony to the extent it was used to impeach or refresh the recollection of testifying witnesses. Because Isaac's testimony at the arbitration does not deviate from his testimony in these proceedings, and Maurus is likely unavailable, the "impeachment/refreshing recollection" value of testimony from the Larian Litigation is nil.

On the other hand, federal courts do routinely grant motions in limine excluding broad categories of evidence arising from prior litigation for the precise reasons urged by the MGA Parties here. See Saucier v. Coldwell Banker JME Realty, 2007 WL 2898525, at *2 (S.D. Miss. Sept. 27, 2007) (granting motion in limine to exclude evidence of other proceedings; finding that introduction of a complaint and agreed orders "presents a significant danger of confusing or misleading the jury regarding the issues remaining in this

---

[1] Thus, Mattel's reliance on Galvan v. Yates, 2008 WL 650282 (E.D. Cal. Mar. 5, 2008), Lego v. Stratos Int'l, Inc., 2004 WL 5518162 (N.D. Cal. Nov. 14, 2004), and White v. Ford Motor Company, 2003 WL 23353600 (D. Nev. Dec 30, 2003), which stand for the proposition that motions in limine should be particularized, is misplaced. Given Mattel's bloated exhibit list, the MGA Parties could only guess what documents Mattel intends to rely upon.

case" and that the plaintiff could use "less prejudicial and inflammatory means" to establish her claims "since all of the relevant individuals ... involved in any purportedly unlawful acts will be available to testify at trial"); Grant Thornton, LLP v. F.D.I.C., 2007 WL 518421, at *1 (S.D. W. Va. Feb. 13, 2007) ("allowing evidence of other litigation would not only cause the issues of the current case to be delayed in discussion, but would confuse the issues by introducing twelve additional fact situations which would have to be dealt with individually before a decision on the merits of the current case could be reached").[2]

### A. Mattel's "Concealment" Evidence Has Been Recanted Or Is Duplicative And Is Thus Not Sufficiently Probative To Merit Its Inclusion Here

Mattel maintains that the Larian Litigation has "substantial factual issues in common" with this case – the "origins of Bratz and the stages of the dolls' development in 2000." (See Mattel MIL Opp'n No. 1 at 5, 11.) But Mattel makes no effort to link its claims of "fraudulent concealment of Bryant's involvement with Bratz" such as allegations of "filing fraudulent registrations ... with the United States Copyright Office" and that "MGA concealed from the public that Bryant was the creator of BRATZ" to the alleged evidence of the "origins" and "stages of the dolls' development" in 2000 and thus cannot show the relevance of such evidence to prove its "concealment" theory. (Id. at 12.) Undaunted by the tangential and prejudicial nature of the evidence it seeks to include, Mattel paints a picture of devious dealing on the part of Isaac Larian in concealing BRATZ from Farhad to undervalue MGA's stock (id. at 2-3) – to no avail. The events of "concealment" crowed over by Mattel as occurring "well before MGA and Bryant now claim they were even introduced to one another in late August" – that is, that Isaac found and began covertly developing BRATZ in "late 1999 or early 2000," or that Isaac had secret meetings about BRATZ in "early" 2000 (id. at 4-5), <u>were all abandoned by Farhad himself</u> in his 2005

---

[2] See also Janky v. Lake County Conv. & Visitors Bureau, 2007 WL 733902, at *2 (N.D. Ind. Mar. 7, 2007) (granting defendant's motion *in limine* excluding other proceedings involving the defendant because the other litigation "is irrelevant to the issues in the instant case" and "would present the risk of unfair prejudice to" the defendant); Procter & Gamble Co. v. Haugen, 2007 WL 701812, at *1 (D. Utah Mar. 2, 2007) (granting motion in limine to exclude evidence of other proceedings); In re Safety-Kleen Bondholders Litig., 2005 WL 6075368, at **5-6 (D. S.C. Feb. 4, 2005) (same).

arbitration briefing, where he stated that *"in the summer of 2000, the marketing and production departments of MGA began … evaluat[ing] a possible new doll line"* based on "sketches of the dolls that were prepared by Carter Bryant[.]"[3] In Mattel's words, in the "years" between filing his 2003 complaint (cited by Mattel) and his arbitration briefing in 2005, "Farhad Larian investigated, gathered and offered facts in support of his claims" (Mattel MIL Opp'n No. 1 at 1) – but that investigation and fact-gathering *yielded no support whatsoever* for the very allegations Mattel wants to offer as "evidence" here.[4]

Regardless, Mattel could not rely on evidence Isaac concealed BRATZ <u>from Farhad</u> to "undermine" the MGA Parties' defenses, as Mattel argues. (Mattel MIL Opp'n No. 1 at 12.) Concealment from Farhad is <u>not</u> evidence of concealment from Mattel, because it is <u>Mattel</u>'s knowledge, not another's, that is relevant for statute of limitations.[5] Unsurprisingly, none of Mattel's cases allege concealment from someone other than the propounding party.[6]

---

[3] Russell Decl. Ex. 5 at 3-4. Predictably, this damning document is one of the thousands Mattel dropped from its exhibit list in response to this Court's order. While the MGA Parties maintain that the <u>Larian v. Larian</u> documents should be excluded, should their motion *in limine* be denied, the MGA Parties reserve the right to include this exhibit on their own list to counter Mattel's baseless accusations.

[4] Mattel brazenly states that Farhad's subsequent suit against his uncle Morad Zarabi in February 2005 "alleg[es] the same facts regarding the origins of BRATZ" (Mattel MIL Opp'n No. 1 at 5 n.20) but that statement is entirely false – the complaint alleges that Zarabi and Isaac began conspiring to offer Farhad less than his MGA stock was worth *"in and around the summer of 2000"* and the only allusion to the "origin" of BRATZ describes a *post-September 28, 2000* appraisal which failed to take into account *"a license and plans for a product line called 'Bratz.'"* Buchakjian Decl., Ex. 15 at ¶¶ 16, 26 (emphasis added).) Mattel simply ignores the evidence proving that by 2005, after discovery, Farhad *no longer believed or maintained* that the BRATZ appeared, let alone were under development, at MGA before Bryant met with MGA in August 2000.

[5] Compare <u>Hynix Semiconductor Inc. v. Rambus Inc.</u>, 2007 WL 3284060, at *3 (N.D. Cal. Nov. 2, 2007) ("fraudulent concealment doctrine does not toll the statute of limitations, no matter what the defendant has done to conceal his wrongs, if a plaintiff has a suspicion of wrongdoing and knowledge of the harm and its cause"), <u>and</u> <u>Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson</u>, 96 Cal. App. 4th 884, 890-91 (2002) ("a suspicion of wrongdoing, coupled with a knowledge of the harm and its cause" is sufficient to end tolling based on fraudulent concealment), <u>with</u> <u>Gonsalves v. Kaiser Sand & Gravel Co.</u>, 1994 WL 125211, at **3-4 (N.D. Cal. Mar. 24, 1994) ("It is *plaintiff's* belief or suspicion of a connection between his injury and another's wrongdoing - not the confirmation of the belief or suspicion - that is the crucial date for the commencement of the limitations period under the delayed discovery rule.") (emphasis added).

[6] See <u>Edelson v. C.I.R.</u>, 829 F.2d 828 (9th Cir. 1987) (involving pattern of prior concealment from the IRS, as relevant to concealment from the IRS at issue in the case); <u>Christians v. C.I.R.</u>, 2003 WL 21000920 (U.S. Tax Ct. May 5, 2003) (same); see also <u>U.S. v. Swarek</u>, 656 F.2d 331 (8th Cir. 1981) (pattern of deceit evidence involved deceit of the defrauded party, not another).

Mattel also claims the <u>Larian v. Larian</u> documents show MGA's "unique expansionary plans" and the financial success BRATZ brought to MGA, based on appraisals generated as part of the dispute over the value of Farhad's shares. (Mattel MIL Opp'n No. 1 at 3-4.)[7] Unfortunately for Mattel, showing MGA's financial success due to BRATZ, or even a purported change in its business plan in 2000 based on projections of the likelihood of that success, does not require the introduction of evidence from a three-year old suit brought by Isaac's brother. Such evidence is easily gleaned from the abundant MGA financial information and testimony already available in this litigation (<u>see, e.g</u>, Ex. 123 (I. Larian) at 169:24-172:2),[8] and thus the evidence Mattel seeks to rely on here is "needless presentation of cumulative evidence" and should be excluded under Fed. R. Evid. 403. <u>See U.S. v. Hooton,</u> 662 F.2d 628, 636 (9th Cir. 1981) (upholding exclusion of duplicative evidence under Rule 403 where other "extensive testimony" on the same point was admitted.)[9] Thus, the "concealment" evidence Mattel emphasizes here is irrelevant.

### B. Isaac Larian's Testimony in the Larian Litigation Is Identical to That Given in This Action, and is Thus Not Probative Even for Impeachment

Mattel describes at length the testimony of Isaac Larian in the Larian Litigation, as to: (1) a Wal-Mart representative's interest in a fashion doll from MGA in 1999; (2) Isaac's

---

[7] Mattel claims this evidence goes to concealment, relying on the same rejected allegations by Farhad described above, and the fact that Ernest Dutcher submitted a declaration in support of Farhad's suit against his uncle Morad Zarabi, claiming that he based a second 2003 appraisal of MGA on information he gathered in 2000 and the 2000-2001 MGA financial statement, because he was "not provided with any information or documentation about revenues and profits generated from the Bratz line" or the anticipated growth potential for Bratz. (<u>See</u> Mattel MIL Opp'n No. 1 at 13, n.6 (citing Buchakjian Decl., Exs. 1, 3, and 6 ¶ 8).) Since Dutcher was supposed to be evaluating the worth of the company in December 2000 (at the time Farhad sold Isaac his shares), <u>and</u> had the benefit of hindsight in 2003, his statements about the alleged "concealment" of BRATZ' success are neither credible nor probative of Mattel's "concealment" claims here.

[8] All "Ex." references herein are to documents submitted with Declaration of Marina V. Bogorad, dated May 8, 2008 unless otherwise noted.

[9] Moreover, Mattel's representation that it "potential[ly]" will rely on "sworn statements and observations" made by the as-yet-undeposed Zarabi and Dutcher at trial (Mattel MIL Opp'n No. 1 at 13) raises the same hearsay concerns already addressed in MGA's Motion and below as to the Maurus testimony. (MGA MIL No. 1 at 4-6 (collecting authority).) Since Mattel makes no representations about Zorabi's or Dutcher's availability, and has not established that Bryant or any of the MGA Parties, <u>including</u> Larian, had any opportunity to challenge their testimony in the Larian Litigation, this potential evidence is inadmissible and should also be excluded. (<u>See</u> <u>id</u>.)

first meeting with Carter Bryant between September 1 and 18, 2000; (3) the October 4, 2000 agreement between MGA and Bryant; (4) the "importance and potential promise BRATZ offered MGA in 2000" based on an October 5, 2000 email Larian wrote to Bryant; and (5) MGA's presentations to retailers in November 2000. (Mattel MIL Opp'n No. 1 at 6.) But Mattel does not – and cannot – argue that Isaac's testimony in that litigation *contradicts the testimony he gave here.*[10] Thus, the Isaac Larian testimony that Mattel recaps is merely duplicative of existing testimony, and is not probative, even for impeachment purposes.

### C. The Prior Testimony Of Jennifer Maurus is Irrelevant And Inadmissible

Mattel's recounting of the Jennifer Maurus testimony fares no better. For example, Mattel makes much of the fact that Maurus testified that she talked to Paula Garcia about Carter Bryant and BRATZ             and that ⸺                            rly
⸺     ]" (Hauss Decl., Ex. 25 at 227:10-228:5.) Since MGA has consistently argued that Bryant first met with MGA employees in mid to late August of 2000, the fact that Maurus thought Paula Garcia and Carter Bryant met that summer is hardly probative, especially given that Maurus was far from certain that it was "early" in the summer. (Id.) Nor is Maurus's testimony that Isaac Larian                       about BRATZ in September 2000 (id. at 233:12-234:2) particularly compelling, given that Larian had indisputably just met with Bryant on September 1, 2000, and he and MGA were in the process of negotiating a deal with Bryant to license BRATZ. (See Ex. 123 (I. Larian) at 33:16-24, 117:5-120:13, 123:25-124:22, 168:13-16.) Regardless of any alleged relevance of the prior Maurus testimony, however, Mattel has not established her unavailability,[11] and thus such testimony

---

[10] Compare, e.g., Hauss Decl., Ex. 25 (Larian v. Larian Tr.) at 161:15-162:25, with Ex. 123 (I. Larian) at 57:1-12 (1999 statement of Wal-Mart representative); Hauss Decl., Ex. 25 at 163:13-164:20, 186:6-16, with Ex. 123 (I. Larian) at 66:13-67:3 (meeting with Carter Bryant in September 2000); Hauss Decl., Ex. 25 at 165:13-166:16, 168:21-171:4, 186:3-5, 190:15-17, with Ex. 123 (I. Larian) at 33:16-24, 117:5-120:13, 123:25-124:22, 168:13-16 (October 4 agreement and negotiations thereof); Hauss Decl., Ex. 25 at 190:15-22, with Ex. 123 (I. Larian) at 126:11-127:4 (discussing MGA's push to have BRATZ ready for the Hong Kong Toy Fair); Hauss Decl. Ex. 25 at 195:13-16, 196:8-14, with Ex. 123 (I. Larian) at 180:5-21, 420:18-421:2 (MGA only showed preliminary drawing boards to retailers in November 2000).

[11] Farhad testified Tuesday that Maurus contacted him through popular networking site LinkedIn last week, so her availability should not be hard to establish. (Ex. 126 (F. Larian) at 14:6-14 (May 6 Rough Tr.).)

**REDACTED**

is inadmissible as hearsay and should be excluded.

It is Mattel's burden to show that Maurus is unavailable.[12] But Mattel offers no details of its efforts to depose Maurus and indeed, *admits* that it "has no indication that Maurus will be able and available to appear" (Mattel MIL Opp'n No. 1 at 15); thus, the motion should be granted on this basis alone.[13] Moreover, in addition to Maurus's unavailability, Mattel must also show "the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an ***opportunity and similar motive*** to develop the testimony by direct, cross, or redirect examination." Fed. R. Evid. 804 (b)(1) (emphasis added). Mattel claims that Isaac Larian "had the exact same interest that he, MGA, MGA Hong Kong and Bryant have here to develop Maurus's testimony" and thus Maurus's testimony is admissible "as to all Defendants, and not just Larian." (Mattel MIL Opp'n No. 1 at 18.) Without trying to justify its absurd inclusion of Bryant, Mattel insists that the MGA Parties are "predecessors in interest" with Larian, though Mattel admittedly "ha[s] not found any Ninth Circuit decision" even addressing this issue to counter MGA's authority to the contrary, let alone supporting that claim. (Id. at 17.)

"In determining whether a similar motive to develop the testimony existed at the time of the elicitation of the former testimony the courts will search for some ***substantial identity of issues***." 11 J. Moore & H. Bendix, Moore's Federal Practice § 804.04 [3] (2d ed. 1989) (em. added).[14] Mattel argues that "Isaac Larian's motive in Larian vs. Larian was to

---

[12] See Burns v. Clusen, 798 F.2d 931, 937 (7th Cir. 1986) ("burden of proving the unavailability of the witness rests upon the party offering the prior testimony"); Kitzmiller v. Dover Area Sch. Dist., 2005 WL 4147867, at **6-7 (M.D. Pa. Sept. 22, 2005) (granting motion *in limine* to exclude prior deposition testimony of witnesses where party failed to carry its burden as to the witnesses' unavailability). Yet Mattel claims that its ignorance of Maurus's status should not be counted against it, distinguishing the MGA Parties' cases showing Maurus's testimony as inadmissible under Fed. R. Evid. 804(b) as the witnesses' unavailability in those cases was "established." (Mattel MIL Opp'n No. 1 at 15-16.)

[13] Mattel argues that if Maurus shows up at trial, it is entitled to use her prior testimony for impeachment purposes. (Mattel MIL Opp'n No. 1 at 18.) The MGA Parties respectfully submit that this Court grant the motion *in limine* based on the overwhelming unfair prejudice and confusion of issues here, and then if Maurus is available at trial, and if her testimony gives Mattel a justifiable reason to use her prior testimony, that this Court then address such a contingency with a limiting instruction to ensure no mention of the litigation giving rise to her testimony.

[14] Accord Hub v. Sun Valley Co., 682 F.2d 776, 778 (9th Cir. 1982) (deposition in prior action brought by employer's predecessor in interest against complainant was inadmissible, as that case

discredit Maurus on her observations of how far advanced BRATZ were by late 2000 and that she first saw Bryant and BRATZ at MGA in the 'early' summer of 2000" because challenging her testimony meant Farhad "would have no basis to argue that Bratz should have been included in a year 2000 appraisal of MGA." (Mattel MIL Opp'n at 18.) But, as described above, by the time of the arbitration, Farhad had conceded that BRATZ first appeared in the summer of 2000, and Isaac testified (as he does now) that he had shown markups of BRATZ to retailers in November of 2000. What Isaac Larian needed to prove in the arbitration was that <u>Farhad knew about BRATZ</u> when he sold Isaac his shares. Isaac had no motive to challenge Maurus's hazy placement of the first time she saw BRATZ in what she "believe[d]" was the "early" summer of 2000, and the remainder of her testimony, regardless of its (in)accuracy, showed that Farhad <u>knew or should have known</u> that BRATZ was in development at MGA in the fall of 2000. (Mattel MIL Opp'n No. 1 at 6 (summarizing Maurus's testimony).) Thus, there is no "substantial identity of issues" here.

      Moreover, as the MGA Parties showed in their Motion, MGA and Bryant indisputably did not have the "opportunity" to challenge Maurus's testimony as required by Rule 804(b); indeed, MGA specifically complained about its inability to object to testimony or cross-examine witnesses in the arbitration, and Mattel does not – and cannot – claim that Bryant was even aware of the Larian Litigation, let alone participated in it. (MGA MIL No. 1 at 6.) Thus, if Maurus fails to appear at trial, her prior testimony is inadmissible hearsay.

      Mattel attempts an end run around the hearsay rule when it argues that regardless of her availability, Maurus's testimony is "relevant to establish Isaac Larian's, MGA's and Farhad Larian's state of mind" based on their "listen[ing] to Maurus's testimony about the first time she met Bryant and saw Bratz drawings" and, since Farhad destroyed his records

---

and the case at bar lacked the required commonality of issues; "we agree with the district court that Hub has not shown that the deposition relates to issues which are sufficiently similar in the two lawsuits to satisfy Rule 32(a)"); Rutledge v. Elec. Hose & Rubber Co., 511 F.2d 668, 676 (9th Cir. 1975) (rejecting proffered former testimony because "*the substantial disparity between the issues at the [prior] trial and the issues as they emerged at trial in this action*" meant that the defendants "did not have an opportunity at the [prior] trial to cross-examine any witnesses called by the government with a motive and interest similar to that which they had in this proceeding") (emphasis added).

after the arbitration was over, Maurus's testimony is "relevant to show [the MGA Parties'] non-compliance with their preservation obligations" in not interfering with Farhad's recordkeeping. (Mattel MIL Opp'n No. 1 at 18-19, citing Fed. R. Evid. 801 and 803(3).)[15] Mattel relies on two elderly cases for the unremarkable proposition that circumstantial evidence is not hearsay when inferences are drawn from the fact words are spoken, not the truth of those words (see Mattel MIL Opp'n No. 1 at 19-20), but ignores the federal courts' established approach to the "effect on the listener" non-hearsay justification. The court must answer two questions: "whether the non-hearsay purpose by which the evidence is sought to be justified is relevant" and "whether the probative value of this evidence for its non-hearsay purpose is outweighed by the danger of unfair prejudice resulting from the impermissible hearsay use of the declarant's statement." U.S. v. Reyes, 18 F.3d 65, 70 (2d Cir. 1994). Significantly, "the mere identification of a relevant non-hearsay use of such evidence is insufficient to justify its admission *if the jury is likely to consider the statement for the truth of what was stated with significant resultant prejudice.* The greater the likelihood of prejudice resulting from the jury's misuse of the statement, the greater the justification needed[.]" Id.; see also Carmody v. ProNav Ship Mgmt., Inc., 224 F.R.D. 111, 116-117 (S.D.N.Y. 2004) (noting that highly prejudicial statement likely to be interpreted by the jury as truth was inadmissible where court found offering party's argument "that it was not interested in offering the statement for the truth of its contents was insincere" as the statement went to one of party's "principal arguments at trial"). Here, Mattel does not explain how the jury will separate the alleged "truth" of Maurus's testimony about when she first saw the BRATZ (the evidence Mattel wants before this jury), from the attenuated accusations of spoliation allegedly resulting from hearing Maurus's testimony. It is of particular concern that Maurus's testimony is not an "out-of-court statement" at all, but

---

[15] Mattel's reliance on Rule 803(3) is misplaced, for as the advisory comment to Rule 803(3) makes clear, Mattel simply cannot use Maurus's statement to demonstrate the MGA Parties or Farhad's conduct as a result of what she said. See Advisory comment to Fed. R. Evid. 803(3) (Rule 803(3) "render[s] statements of intent by a declarant admissible only to prove his future conduct, *not the future conduct of another person.*") (emphasis added).

testimony given under oath, and is therefore more likely to be interpreted as "truth" by the jury. Maurus's prior testimony should therefore be excluded, regardless of her availability.

### D. Evidence of Farhad's Alleged Spoliation is Irrelevant, Prejudicial and Cumulative

Because Isaac's arbitration testimony accused his brother of falsifying documents to serve his own ends, Mattel argues, Isaac "knew of Farhad Larian's capacity to tamper with evidence", and thus MGA did not take appropriate steps to preserve any relevant evidence Farhad might have had. (Mattel MIL Opp'n No. 1 at 9.) But this argument fails on any number of levels. First, Farhad Larian was no longer an employee of MGA as of January 1, 2001, when he entered into a consulting agreement with MGA to consult as an *independent contractor*. (Ex. 124 (Consulting Agreement) at FL 6515.) Thus, it is questionable what duty, if any, MGA had with respect to preservation efforts by Farhad with respect to the present litigation.[16] Second, Judge Infante recently ordered Farhad's attorneys to produce the documents Farhad destroyed after the arbitration. (Ex. 125 (Judge Infante Order dated May 1, 2008) at 8-9.) Third, Mattel already deposed Farhad on this exact issue *twice*, most recently this week, and he denied Isaac's and MGA's involvement both times. (Ex. 126 (F. Larian) at 57:8-14, 103:19-21, 177:22-178:22; id. (May 6 Rough Tr.) at 38:25-39:4.) Thus, evidence from Larian v. Larian on these topics is not relevant under Rule 402 and needlessly cumulative under Rule 403.

Mattel tries to cast Farhad's destruction of his records post-arbitration as furthering MGA's alleged concealment of BRATZ, repeatedly accusing Isaac of dispatching his brother on a search-and-destroy mission after the arbitration concluded. (Mattel MIL Opp'n No. 1 at 8, 19, 22.) Mattel points to a conciliatory email from Farhad to Isaac in May 2004

---

[16] Mattel supports its dubious theory regarding Farhad and MGA's duties as to him by arguing that MGA and its General Counsel, Daphne Gronich, had requested that Farhad return documents that he had been gathering regarding the development of BRATZ. (Mattel MIL Opp'n No. 1 at 9.) In fact, the Gronich letter suggests that the only document MGA believed that Fahad had was a "list of home telephone numbers," not any information about the development of BRATZ. (Buchakjian Decl., Ex. 23 at 1-2.) To be safe, Gronich requested that Farhad return any documents that he took from MGA without consent, but nothing in the record shows that Farhad had anything that should have been preserved in connection with this action. (Id.) Even if he did, any such documents would have been preserved by MGA to the extent MGA was obligated to do so.

offering to help Isaac with the Mattel suit (id. at 8, citing Buchakjian Decl. Ex. 22), but Mattel's implied conspiracy between brothers falls flat, because (1) Farhad's destruction of his records from the arbitration occurred more than a year *after he sent that email* (Hauss Decl., Ex. 24 at 56:9-58:11, 65:21-67:2, 172:16-173:5), (2) Isaac never even acknowledged the email, let alone accepted the offer of help (Ex. 126 (F. Larian) at 301:8-17), and (3) the brothers weren't even <u>speaking</u> until well after the arbitration, and they remain distant even now. (Ex. 123 (I. Larian) at 492:5-6; Ex. 126 (F. Larian) at 230:3-7, 22:6-20 (May 6 Rough Tr.)). Moreover, Mattel's logic is flawed – Isaac's comments in <u>Larian v. Larian</u> go to Farhad's alleged propensity for falsifying, <u>not destroying</u>, documents that might negatively affect him. If Farhad had appeared with previously unproduced documents *helpful* to MGA, that would be a different matter, but he didn't. As the arbitration testimony does not show Farhad's motivations for allegedly destroying documents (or that it even matters), <u>and</u> Mattel is getting the allegedly "spoiled" documents from Farhad's attorneys, there is no need to mention the <u>Larian v. Larian</u> suit at all.

## II. MATTEL'S INTENDED USES OF EVIDENCE FROM THE LARIAN LITIGATION WILL BE UNDULY PREJUDICIAL AND CONFUSING

As the MGA Parties established in their motion, and Mattel *concedes*, Fed. R. Evid. 403 excludes evidence "likely to elicit a response from jurors that causes them to reach a conclusion based on emotion rather than the evidence presented." United States v. Ellis, 147 F.3d 1131, 1136 (9th Cir. 1998). (<u>Compare</u> MGA MIL No. 1 at 6-7 (collecting cases), <u>with</u> Mattel MIL Opp'n No. 1 at 20-21.) Incredibly, Mattel takes the position that "there is no … danger of an emotional reaction" should evidence from the Larian Litigation be introduced here, primarily based on Mattel's conclusion that "the brothers are no longer disputing" because the arbitration is over. (Mattel MIL Opp'n No. 1 at 21.) Mattel magnanimously suggests that evidence that "Farhad Larian may have been emotional or greedy when he sued his brother could help MGA's cause" and "any drama between the Larians is far removed from this important evidence that surfaced in <u>Larian v. Larian</u>." (Id.) Naturally, Mattel does not point to any case suggesting that evidence of a lawsuit involving

family discord would not provoke just such an emotional reaction from jury. Nor can it; indeed, even the **arbitrator** in Larian v. Larian expressed his own sadness at the brothers' conflict. (MGA MIL No. 1 at 8; Hauss Decl., Ex. 25 at 321:16-19.)

Furthermore, Mattel's insistence that it only intends to introduce "cold facts" (Mattel MIL Opp'n No. 1 at 21) from the Larian Litigation is belied by its Opposition. The evidence shows that Farhad announced at the arbitration that he was dismissing his claims with prejudice because *"it doesn't look like [Isaac] kept Bratz from me"* and that he owed Isaac an apology "as far as Bratz is concerned." (Hauss Decl., Ex. 25 at 317:10-17, 318:15-19 (emphasis added).) Mattel speculates, without support or logic, that Isaac induced Farhad "under mysterious circumstances" to "abruptly drop[] the arbitration" so that the estranged brothers could suddenly set aside their years of conflict and work together to bring down Mattel in this litigation. (Mattel MIL Opp'n No. 1 at 7, 14.)[17] Mattel also claims that *"Isaac Larian* requested that none of the arbitration be transcribed in certified form" (id.) – citing the transcript where the parties' attorneys stipulated that *"both parties are agreeing that only the transcript starting with Fred Larian's statement up until this point needs to be transcribed by the reporter."* (Hauss Decl., Ex. 25 at 323:9-12.) Because the actual evidence Mattel seeks to introduce plays little if any role in Mattel's "spin" on the Larian Litigation, Mattel's professed intent to just use the "cold facts" therein is doubtful.

## CONCLUSION

For the foregoing reasons, the MGA Parties respectfully request that the Court grant their Motion *in limine* and exclude any and all evidence relating to the Larian Litigation.

DATED: May 8, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____
Jason D. Russell
Attorneys for the MGA Parties

---

[17] This is belied by the record. (Ex. 123 (I. Larian) at 491:10-20 (Isaac had "no idea" that Farhad would drop his claims: "I was surprised. I cried ... [b]ecause he was my brother, my younger brother, and he had made false allegation[s] because of greed, that he knew it was false, and he had taken all the way up to here, for him to drop it."); Ex. 126 (F. Larian) at 112:4-11, 116:15-20 (Isaac did not offer to settle or even speak to Farhad before he ended the arbitration).)