CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT, AN INDIVIDUAL, )
)
PLAINTIFF, )
)
V. ) NO. CV 04-9040 SGL (RNBX)
)
MATTEL, INC., A DELAWARE )
CORPORATION, )
)
DEFENDANTS. )
_____)
)
AND CONSOLIDATED ACTION (S). )
_____)

# C O N F I D E N T I A L

(PURSUANT TO PROTECTIVE ORDER, THIS TRANSCRIPT HAS BEEN
DESIGNATED CONFIDENTIAL, ATTORNEYS' EYES ONLY)

# DEPOSITION OF ELISE CLOONAN

# DECEMBER 14, 2007



REPORTED BY:
RENEE PACHECO
CSR NO. 11564
JOB NO. 07AE756-RP

EXHIBIT 5

PAGE 50

COURT REPORTERS
515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

```
 1    Q.    YOU CAME UP AND CREATED DRAWINGS FOR
 2    DOLLS AND TOYS?
 3    A.    YES.
 4    Q.    WAS IT YOUR UNDERSTANDING BACK WHEN YOU           01:29:16
 5    WERE EMPLOYED BY MATTEL THAT DRAWINGS OF DOLLS AND
 6    TOYS THAT YOU MADE WERE OWNED BY MATTEL OR BELONGED
 7    TO MATTEL?
 8    MR. MCFARLAND:   OBJECTION; CALLS FOR A LEGAL
 9    CONCLUSION.
10    THE DEPONENT:    EVERYTHING I DID FOR MATTEL            01:29:28
11    BELONGED TO MATTEL.  ACTUALLY, EVERYTHING I DID
12    WHILE I WAS WORKING FOR MATTEL BELONGED TO MATTEL.
13    BY MR. ZELLER:
14    Q.    YOU UNDERSTOOD THAT DRAWINGS THAT YOU
15    MADE OF DOLLS --                                        01:29:38
16    A.    YES.
17    Q.    -- BELONGED TO MATTEL?
18    MR. MCFARLAND:   OBJECTION; CALLS FOR A LEGAL
19    CONCLUSION.
20    THE DEPONENT:    YES.                                   01:29:43
21    BY MR. ZELLER:
22    Q.    YOU UNDERSTOOD THAT DOLL OR TOY CONCEPTS
23    THAT YOU CAME UP WITH, WHEN YOU WERE A MATTEL
24    EMPLOYEE, BELONGED TO MATTEL; CORRECT?
25    MR. MCFARLAND:   OBJECTION; CALLS FOR A LEGAL           01:29:52
```

99

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

EXHIBIT 5

PAGE 51

```
 1   CONCLUSION.
 2       THE DEPONENT:  YES.
 3   BY MR. ZELLER:
 4       Q.   AND YOU UNDERSTOOD THAT THE WHOLE TIME
 5   THAT YOU WERE EMPLOYED BY MATTEL --                      01:29:56
 6       MR. MCFARLAND:  OBJECTION --
 7   BY MR. ZELLER:
 8       Q.   -- IS THAT TRUE?
 9       MR. MCFARLAND:  SAME OBJECTION.
10       THE DEPONENT:  YES.                                  01:30:00
11   BY MR. ZELLER:
12       Q.   ARE YOU AWARE OF ANYONE WHO WAS AT THE
13   TIME A MATTEL EMPLOYEE WHO WAS ALSO DOING WORK FOR
14   A MATTEL COMPETITOR?
15       A.   NO.                                             01:30:15
16       Q.   IS THAT SOMETHING YOU'D EVER HEARD WAS
17   GOING ON?
18       A.   NOT FOR COMPETITORS.
19       Q.   YOU HEARD SOMETHING WAS GOING ON FOR
20   PEOPLE OR COMPANIES THAT WERE NOT COMPETITORS?          01:30:28
21       A.   PEOPLE THAT WORKED AT MATTEL VERY OFTEN
22   WOULD JUST TAKE EXTRA WORK ON THE SIDE.  WHAT THEY
23   DID, I DID NOT WANT TO KNOW -- HAVE ANYTHING TO DO
24   WITH.  BUT IT WAS -- IT WAS FAIRLY COMMON KNOWLEDGE
25   THAT PEOPLE WOULD -- THE GUYS OVER IN HOT WHEELS         01:30:44
```

```
 1  CALLED THEM G JOBS.
 2      Q.   AND WHEN YOU SAY JOBS ON THE SIDE, ARE
 3  YOU TALKING ABOUT JOBS THAT WERE FOR COMPANIES
 4  OTHER THAN MATTEL?
 5      A.   I GUESS SO.  I -- I DON'T KNOW WHAT                01:31:03
 6  PEOPLE DID SPECIFICALLY.  I MEAN, I KNOW PEOPLE DID
 7  WORK FOR -- YEAH, FOR COMPANIES OTHER THAN MATTEL.
 8  WHAT THEY DID, WHO THEY DID IT FOR, I NEVER WANTED
 9  TO KNOW.
10      Q.   WHERE DID YOU HEAR THIS?                            01:31:19
11      A.   IT WAS COMMON KNOWLEDGE IN THE DESIGN
12  CENTER.
13      Q.   WELL, PLEASE TELL ME EVERY SOURCE OF
14  INFORMATION THAT YOU HAVE, WHERE YOU --
15      A.   EVERY DESIGNER I EVER TALKED TO.                    01:31:31
16      Q.   EVERYONE?
17      A.   YEAH.  I MEAN, EVERYBODY KNEW, YEAH.
18      Q.   SO --
19      A.   ALMOST.  I MEAN, I SHOULDN'T SAY
20  EVERYONE.  I'M SURE THERE WERE A FEW PEOPLE THAT             01:31:39
21  WERE IGNORANT OF THE FACT, BUT --
22      Q.   BUT YOU DIDN'T DO THAT?
23      A.   NO.  MY MOTHER WORKED THERE FOR 20 YEARS
24  AND MADE ME PARANOID ABOUT IT.  SHE TOLD ME THAT I
25  WOULD END UP IN A ROOM LIKE THIS, DOING SOMETHING            01:31:51
```

101

1  THAT I DON'T WANT TO DO, SOMETHING I HAD NOTHING TO
2  DO WITH. AND, YOU KNOW, I'M GOING THROUGH THIS --
3  THROUGH THIS FOR SOME RED HERRING THAT YOU GUYS
4  HAVE.
5      AND I'VE BEEN PARANOID MY WHOLE LIFE
6  ABOUT WORKING OUTSIDE OF MATTEL. THEY'VE GIVEN ME
7  ENOUGH MONEY TO GET BY. I'VE -- I'VE -- I'VE NEVER
8  WANTED TO DO ANYTHING OR HEAR ABOUT ANYTHING
9  OUTSIDE OF MATTEL, WHILE I WAS WORKING THERE. EVEN
10 TO THIS DAY, ACTUALLY, I STILL DON'T WANT TO HEAR
11 ABOUT STUFF.
12     Q.   SO MY QUESTION IS A VERY SPECIFIC ONE.
13 PLEASE TELL US EVERYONE WHO YOU SPOKE WITH ABOUT
14 THE FACT THAT THERE WAS EXTRA WORK BEING DONE ON
15 THE SIDE BY MATTEL EMPLOYEES FOR COMPANIES OTHER
16 THAN MATTEL WHILE THEY WERE MATTEL EMPLOYEES.
17     A.   OKAY. DIANA TROUP, CYNTHIA YOUNG, MARGO
18 MICHELLE, KITTY BLACK-PERKINS, JANET UNALP, DEBBIE
19 MEYER, OH, CAROL SPENCER, JENNIFER KIERNAN, BILL
20 KELLY, STEVE MCADAM, HOWIE JESSER, KEN SMITH, BOB
21 TOMAMORA, TOM HODGES, JULIE ASHE NOBLES, MY MOTHER,
22 MORRIS BATAY.
23     I HAVE TO GO THROUGH 20 YEARS HERE. SO
24 THIS IS GOING TO TAKE A WHILE.
25     MR. MCFARLAND: JUST TAKE YOUR TIME TO ANSWER

01:32:03
01:32:16
01:32:28
01:33:19
01:34:16

```
 1   HIS QUESTION.
 2        THE DEPONENT:  BRUCE RYNIKER, LARRY WOOD, ERIC
 3   OSTENDORF, STEVE RYNIKER, MELODY HANSEN, ANNA RHEE,
 4   CARTER BRYANT, JOE FELDMAN, JANET BLASER, BILL                01:34:41
 5   GREENING, ROXANNA POWELL, KEN O'LEARY, LILY
 6   MARTINEZ, CASSIDY PARK, IVY ROSS, JOE FRANKE, ANN
 7   DRISCOLL, ROBERT BEST, ANNE OLSON, DENNIS SOAI,
 8   KISLAP ONGCHANGCO, NICK PATEAN, JERRY RICHARDSON,
 9   SPENCER DAVIS, BILL MARTINEZ, BARB MEYER, LARRY
10   CLAYTON, DANCER -- ELON DANCER, MAURY KESSEL, CHRIS           01:36:17
11   MCADAM.  LARUE, I DON'T REMEMBER IF THAT WAS HER
12   FIRST OR LAST NAME.  MIKE NORGREN, CHRIS SESTO,
13   PAUL SESTO, MICHAEL HASTEY, SULLIVAN HASTEY, MARK
14   RIGGER, JEFF FULLER, TIM LEWIS, TIM CORREA, DOC
15   O'CONNOR.  LARRY -- I DON'T REMEMBER LARRY'S LAST             01:39:21
16   NAME, MODEL MAKER.
17   BY MR. ZELLER:
18        Q.   I'M SORRY.  WHO?
19        A.   I CAN'T REMEMBER HIS LAST NAME.  HE WAS A
20   MODEL MAKER.  LARRY -- HE WORKED FOR JANET UNALP.             01:39:40
21        MYZIUE HAMILTON, JOAN GAYNOR, PATTY
22   GAYNOR, MINO MARCOZAMY, MERCEDEH WARD, TONY YAO,
23   ALDO FAZILLI.
24        I'M SURE THERE'S SOME I'VE LEFT OFF, BUT
25   OFF THE TOP OF MY HEAD THAT'S ALL -- THE BEST I CAN           01:40:48
```

```
 1    DO.
 2        Q.    ARE THERE ANY OTHERS YOU RECALL?
 3        A.    NO.
 4        Q.    AND THESE ARE ALL PEOPLE YOU HAD
 5    CONVERSATIONS WITH CONCERNING THE -- WHAT YOU'RE              01:40:56
 6    CALLING THE SIDE JOBS?
 7        A.    UH-HUH.
 8        Q.    THAT'S A "YES"?
 9        A.    YES.
10        Q.    ARE ALL THESE PEOPLE WHO, IN FACT, WERE             01:41:00
11    ENGAGING IN SIDE JOBS WHEN THEY WERE AT MATTEL?
12        A.    I DON'T KNOW.  POSSIBLY.  I DON'T KNOW.
13        Q.    WHICH ONES?
14        A.    I DON'T KNOW.
15        Q.    DO YOU HAVE ANY KNOWLEDGE OR INFORMATION            01:41:08
16    OR FACTS ABOUT ANYONE YOU CAN TELL US BY NAME AT
17    MATTEL WORKING ON WHAT YOU CALL THESE SIDE JOBS?
18        A.    NO, BECAUSE I'VE ASKED PEOPLE NOT TO TELL
19    ME.
20        Q.    SO YOU THINK THAT IT'S TRUE, BUT YOU                01:41:21
21    DON'T HAVE ANY FACTS TO ESTABLISH THAT IT HAS, IN
22    FACT, OCCURRED; IS THAT TRUE?
23        MR. MCFARLAND:  OBJECTION; MISSTATES HER
24    TESTIMONY.  SHE'S ALREADY TESTIFIED ON THAT
25    QUESTION.                                                     01:41:35
```

```
 1   BY MR. ZELLER:
 2       Q.   YOU CAN GO AHEAD AND ANSWER.
 3       A.   I DON'T KNOW.
 4       Q.   I'M SORRY. YOU DON'T KNOW WHAT?
 5       A.   WHETHER THESE PEOPLE ENGAGED IN WORK        01:41:42
 6   OUTSIDE OF MATTEL OR NOT.
 7       Q.   TELL ME EVERY PERSON YOU KNOW FOR A
 8   FACT --
 9       A.   I DON'T KNOW.
10       Q.   -- IS ENGAGED -- I'M SORRY. I'M NOT        01:41:50
11   FINISHED WITH MY QUESTION.
12            WHAT I'M ASKING YOU IS THE CONVERSE OF
13   IT. OKAY. CAN YOU TELL ME, BY NAME, ANYONE THAT
14   YOU KNOW FOR A FACT WAS DOING WORK OUTSIDE OF
15   MATTEL, WHILE THEY WERE A MATTEL EMPLOYEE?          01:42:02
16       A.   I DON'T KNOW FOR A FACT.
17       Q.   YOU MENTIONED THAT CARTER BRYANT WAS
18   AMONG THE PEOPLE THAT YOU'D LISTED HERE.
19       A.   RIGHT.
20       Q.   WHAT IS IT THAT YOU AND MR. BRYANT HAVE    01:42:21
21   DISCUSSED ABOUT DOING WORK ON THE SIDE WHILE MATTEL
22   EMPLOYEES?
23       A.   WE JUST KNEW THAT PEOPLE DID WORK ON THE
24   SIDE AS MATTEL EMPLOYEES TO MAKE EXTRA MONEY. IN
25   FACT, I KNOW OF AN INSTANCE WHERE IVY ROSS CAUGHT   01:42:35
```

```
1    SOMEBODY WORKING OUTSIDE OF MATTEL.  AMY MEYER.
2        Q.    IF I UNDERSTAND THE LAST PART OF YOUR
3    TESTIMONY CORRECTLY --
4        A.    I KNOW -- I'M SORRY.  I KNOW THAT AMY
5    MEYER FOR A FACT WAS WORKING OUTSIDE OF MATTEL.       01:42:50
6        Q.    AND THEN IVY ROSS CAUGHT HER?
7        A.    RIGHT.
8        Q.    AND HOW IS IT YOU KNOW ABOUT THAT?
9        A.    JUST THROUGH THE RUMOR MILL AT MATTEL.  I
10   DON'T REMEMBER WHO SPECIFICALLY TOLD ME.              01:43:04
11       Q.    SO IT WAS ONLY SOMETHING YOU HEARD ABOUT
12   IT?
13       A.    RIGHT.
14       Q.    YOU DON'T --
15       A.    IT WAS A RUMOR.                             01:43:08
16       Q.    WITH RESPECT TO THE RUMOR THAT YOU HEARD,
17   DID YOU HAVE AN UNDERSTANDING AS TO WHO OUTSIDE OF
18   MATTEL THIS WAS?
19       A.    WHAT DO YOU MEAN?  I'M SORRY.
20       Q.    WHO AMY MEYER WAS DOING WORK FOR OUTSIDE    01:43:21
21   MATTEL.
22       A.    SHE WAS WORKING IN A DEPARTMENT STORE.
23       Q.    DO YOU KNOW FOR A FACT AS TO WHETHER OR
24   NOT ANY MATTEL DESIGNER, WHO WAS AT THE TIME
25   EMPLOYED BY MATTEL, WAS DOING DESIGN WORK OF ANY      01:43:45
```

```
 1    KIND FOR A MATTEL COMPETITOR?
 2        A.    NOT FOR A FACT.
 3        Q.    IS THIS A SUBJECT THAT YOU'VE DISCUSSED
 4    WITH YOUR HUSBAND RICHARD SANDHAM?
 5        THE DEPONENT:  ISN'T THAT PRIVILEGED                01:44:09
 6    INFORMATION?
 7        MR. MCFARLAND:  YOU DON'T NEED TO TESTIFY ABOUT
 8    THE DISCUSSIONS WITH YOUR HUSBAND.
 9        MR. ZELLER:  ARE YOU INSTRUCTING HER?
10        MR. MCFARLAND:  I'M INSTRUCTING HER NOT TO          01:44:16
11    TESTIFY ABOUT HER DISCUSSIONS WITH HER HUSBAND,
12    YES.
13        MR. ZELLER:  IN RESPONSE TO THAT PARTICULAR
14    QUESTION?
15        MR. MCFARLAND:  YOU CAN ANSWER THE QUESTION         01:44:21
16    WHETHER A DISCUSSION EVER OCCURRED.
17        THE DEPONENT:  NO.
18              THE INFORMATION BETWEEN MY HUSBAND AND I
19    IS PRIVILEGED; RIGHT?
20        MR. MCFARLAND:  OKAY.  IT'S PRIVILEGED.  BUT        01:44:29
21    DID -- DID A DISCUSSION EVER OCCUR, NOT THE
22    CONTENT?  DO YOU EVER RECALL TALKING TO YOUR
23    HUSBAND ABOUT THE SUBJECT?
24        THE DEPONENT:  MAYBE.
25    ///                                                     01:44:37
```

107

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT 5

PAGE 59

```
 1  BY MR. ZELLER:
 2      Q.   WHAT DID YOU AND HE DISCUSS ON THAT
 3  SUBJECT?
 4      MR. MCFARLAND: OBJECTION; THAT'S --
 5      THE DEPONENT: I DON'T RECALL.                           01:44:40
 6      MR. MCFARLAND: OKAY.
 7      MR. ZELLER: ARE YOU INSTRUCTING HER?
 8      MR. MCFARLAND: I'M INSTRUCTING HER NOT TO
 9  ANSWER DISCUSSIONS WITH HER HUSBAND, YES.
10  BY MR. ZELLER:                                              01:44:50
11      Q.   HAVE YOU DISCUSSED THIS LAWSUIT WITH YOUR
12  HUSBAND?
13      A.   I'M NOT GOING TO ANSWER THAT.
14      Q.   YOU CAN'T TELL ME ONE WAY OR ANOTHER?
15      A.   DO I HAVE TO? IF I HAVE TO, I WILL.                01:45:00
16      MR. MCFARLAND: WELL, FIRST OF ALL, IT'S ASKED
17  AND ANSWERED. SHE'S ALREADY TOLD YOU SHE MENTIONED
18  TO HER HUSBAND AND OTHER PEOPLE.
19      THE DEPONENT: MICHAEL MOORE KNOWS FOR A FACT.
20  YOU CALLED HIM -- YOU CALLED -- I KNOW YOU CALLED           01:45:16
21  RICHARD IN THE OFFICE TO FIND ME FOR THIS TO TRACK
22  ME DOWN. SO YES.
23      MR. MCFARLAND: SO WE'RE NOT GOING TO REVEAL
24  THE CONTENT OF CONVERSATIONS.
25  ///                                                         01:45:29
```

108

```
1   STATE OF CALIFORNIA     )
                            )  SS.
2   COUNTY OF LOS ANGELES   )
3           I,   RENEE A. PACHECO   , CERTIFIED
4   SHORTHAND REPORTER, CERTIFICATE NUMBER 11564, FOR
5   THE STATE OF CALIFORNIA, HEREBY CERTIFY:
6           THE FOREGOING PROCEEDINGS WERE TAKEN
7   BEFORE ME AT THE TIME AND PLACE THEREIN SET FORTH,
8   AT WHICH TIME THE DEPONENT WAS PLACED UNDER OATH BY
9   ME;
10          THE TESTIMONY OF THE DEPONENT AND ALL
11  OBJECTIONS MADE AT THE TIME OF THE EXAMINATION WERE
12  RECORDED STENOGRAPHICALLY BY ME AND WERE THEREAFTER
13  TRANSCRIBED;
14          THE FOREGOING TRANSCRIPT IS A TRUE AND
15  CORRECT TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN;
16          I FURTHER CERTIFY THAT I AM NEITHER
17  COUNSEL FOR NOR RELATED TO ANY PARTY TO SAID ACTION
18  NOR IN ANY WAY INTERESTED IN THE OUTCOME THEREOF.
19          IN WITNESS WHEREOF, I HAVE HEREUNTO
20  SUBSCRIBED MY NAME THAT  28th  DAY OF
21  DECEMBER         , 2007.
22
23                      Renee Pacheco
24
25
```

340

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT 5

PAGE 6

EXHIBIT 6

**CERTIFIED COPY**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

BRYANT,  )
  )
  PLAINTIFF,  )
  )
  V.  )  NO. CV 04-9040 SGL
  )  (RNBX)
MATTEL, INC.,  )
  )
  DEFENDANTS.  )

# ATTORNEYS' EYES ONLY
(THIS TRANSCRIPT HAS BEEN DESIGNATED ATTORNEYS' EYES ONLY.)

# DEPOSITION OF ISAAC LARIAN

# JULY 18, 2006



REPORTED BY:
APRIL PRAXMARER
CSR NO. 12437
JOB NO. 06AE315-AP

COURT REPORTERS
700 S. Flower Street
Suite 1100
Los Angeles, California 90017
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT _6_

PAGE _62_

| | | |
|---|---|---|
| 1 | 10:04:41 | CIRCUMSTANCES THAT INVENTION WILL BE OWNED BY THE |
| 2 | 10:04:44 | EMPLOYER. THAT'S WHAT I'M REFERRING TO. |
| 3 | 10:04:47 | A   THAT'S THE CONTRACT? |
| 4 | 10:04:48 | Q   THAT -- THAT'S WHAT I'M REFERRING TO WHEN I |
| 5 | 10:04:49 | SAY "INVENTIONS AGREEMENT." |
| 6 | 10:04:49 | A   I DON'T HAVE RECOLLECTION OF THAT ONE WAY OR |
| 7 | 10:04:52 | THE OTHER. |
| 8 | 10:04:52 | Q   ALL RIGHT. JUST SO I MAKE SURE THAT WE HAVE |
| 9 | 10:04:54 | A CLEAR RECORD, LET ME ASK THE QUESTION AGAIN. |
| 10 | 10:04:57 | A   OKAY. |
| 11 | 10:04:58 | Q   WAS IT YOUR EXPERIENCE, AS OF SEPTEMBER OF |
| 12 | 10:05:00 | 2000, THAT COMPANIES IN THE TOY INDUSTRY ENTERED INTO |
| 13 | 10:05:03 | INVENTIONS AGREEMENTS WITH THEIR EMPLOYEES? |
| 14 | 10:05:05 | A   WAS IT MY -- CAN YOU REPEAT THE -- CAN YOU |
| 15 | 10:05:08 | READ BACK THAT QUESTION. |
| 16 | 10:05:09 | Q   WAS IT YOUR EXPERIENCE AS OF SEPTEMBER OF |
| 17 | 10:05:12 | 2000 -- |
| 18 | 10:05:13 | MR. WICKHAM: OBJECTION. FOUNDATION. |
| 19 | 10:05:15 | MR. QUINN: WHY DOESN'T EVERYBODY LET ME JUST |
| 20 | 10:05:16 | FINISH, GET THE QUESTION OUT, AND EVERYBODY CAN THEN |
| 21 | 10:05:19 | SAY WHATEVER THEY WANT. OKAY? |
| 22 | 10:05:21 | Q   WAS IT YOUR EXPERIENCE, SIR, AS OF |
| 23 | 10:05:24 | SEPTEMBER OF 2000, THAT COMPANIES IN THE TOY INDUSTRY |
| 24 | 10:05:28 | ENTERED INTO INVENTIONS AGREEMENTS WITH THEIR |
| 25 | 10:05:32 | EMPLOYEES? |

45

A&E COURT REPORTERS (213) 955-0070   FAX: (213) 955-0077

EXHIBIT 6

PAGE 63

| | | |
|---|---|---|
| 1 | 10:05:33 | MS. CENDALI: OBJECTION. VAGUE AND |
| 2 | 10:05:34 | OVERBROAD. |
| 3 | 10:05:35 | YOU CAN ANSWER. |
| 4 | 10:05:36 | THE WITNESS: I DON'T REMEMBER. I DON'T |
| 5 | 10:05:36 | KNOW. I DON'T KNOW. |
| 6 | 10:05:37 | BY MR. QUINN: |
| 7 | 10:05:37 | Q  YOU DON'T KNOW ONE WAY OR THE OTHER? |
| 8 | 10:05:39 | A  I DON'T. |
| 9 | 10:05:39 | Q  AT THE TIME THAT YOU WERE TALKING TO |
| 10 | 10:05:43 | CARTER BRYANT ABOUT THE POSSIBILITY OF HIS DOING SOME |
| 11 | 10:05:47 | WORK FOR MGA IN THE FALL OF 2000, DID IT OCCUR TO YOU |
| 12 | 10:05:52 | THAT HE MIGHT HAVE A CONTRACT WITH MATTEL? |
| 13 | 10:05:56 | A  I DON'T RECALL MY STATE OF MIND BUT PROBABLY. |
| 14 | 10:06:00 | BUT I DON'T RECALL. |
| 15 | 10:06:01 | Q  SO WHEN YOU SAY "PROBABLY," WHAT DO YOU MEAN? |
| 16 | 10:06:07 | A  I WANTED TO MAKE SURE WHEN WE WAS THERE THAT |
| 17 | 10:06:11 | THIS IDEA THAT HE WAS SHOWING US WAS NOTHING THAT WAS |
| 18 | 10:06:17 | AT MATTEL OR MATTEL HAD DONE. SO I PROBABLY ASKED HIM |
| 19 | 10:06:21 | SOME QUESTIONS, AND THIS COULD HAVE BEEN ONE OF THEM. |
| 20 | 10:06:23 | Q  IS IT YOUR RECOLLECTION THAT YOU DID ASK HIM |
| 21 | 10:06:25 | QUESTIONS ON THAT SUBJECT? |
| 22 | 10:06:26 | A  ON WHAT SUBJECT? |
| 23 | 10:06:28 | MR. WICKHAM: OBJECTION. FOUNDATION. |
| 24 | 10:06:30 | BY MR. QUINN: |
| 25 | 10:06:30 | Q  ON WHAT YOU JUST SAID. |

| | | |
|---|---|---|
| 1 | 10:06:32 | A    I DON'T RECALL ALL OF THE THINGS, NO. |
| 2 | 10:06:33 | Q    DID YOU ASK HIM QUESTIONS ON THAT SUBJECT |
| 3 | 10:06:36 | THAT YOU JUST REFERRED TO? |
| 4 | 10:06:37 | A    I COULD -- |
| 5 | 10:06:38 | MS. CENDALI:  OBJECTION.  OVERBROAD.  VAGUE. |
| 6 | 10:06:40 | THE WITNESS:  I COULD HAVE.  I DON'T RECALL |
| 7 | 10:06:41 | IT.  I DON'T REMEMBER EVERY PORTION OF THE |
| 8 | 10:06:46 | CONVERSATION.  THIS ONE I DON'T RECALL. |
| 9 | 10:06:49 | MS. CENDALI:  JUST WAIT FOR HIM TO ASK A |
| 10 | 10:06:50 | QUESTION AND GO AHEAD AND ANSWER. |
| 11 | 10:06:51 | BY MR. QUINN: |
| 12 | 10:06:51 | Q    I'M SORRY.  I DIDN'T HEAR YOU.  YOU REMEMBER |
| 13 | 10:06:55 | WHAT? |
| 14 | 10:06:55 | A    OTHER -- OTHER PORTIONS OF THE MEETING, BUT |
| 15 | 10:06:58 | THIS ONE I DON'T REMEMBER IF I DID OR NOT. |
| 16 | 10:07:00 | Q    OKAY.  DO YOU RECALL ASKING MR. BRYANT |
| 17 | 10:07:01 | WHETHER HE HAD ANY TYPE OF CONTRACT WITH MATTEL? |
| 18 | 10:07:03 | A    I DON'T RECALL THAT ONE WAY OR ANOTHER. |
| 19 | 10:07:06 | Q    DID YOU -- MR. LARIAN, DID ASK -- DID YOU |
| 20 | 10:07:10 | INSTRUCT ANYONE ELSE TO ASK MR. BRYANT WHETHER HE HAD A |
| 21 | 10:07:14 | CONTRACT WITH MATTEL? |
| 22 | 10:07:16 | A    I ASKED VICTORIA O'CONNER TO MAKE SURE TO |
| 23 | 10:07:22 | CHECK WITH OUR ATTORNEY AND HIS ATTORNEY TO MAKE -- |
| 24 | 10:07:26 | MS. CENDALI:  I OBJECTION TO ANYTHING |
| 25 | 10:07:29 | RELATING TO COMMUNICATIONS WITH YOUR ATTORNEYS; |

```
 1   10:07:37   OTHERWISE, YOU CAN ANSWER.
 2   10:07:37           MR. QUINN:  WELL, I WANT WHAT HE SAID TO
 3   10:07:37   VICTORIA O'CONNER, SO I'M ENTITLED TO THAT.
 4   10:07:38        Q   YOU GET TO ANSWER THAT QUESTION.
 5   10:07:39           WHAT DID YOU SAY TO VICTORIA --
 6   10:07:39           MS. CENDALI:  I'LL LET HIM ANSWER THAT
 7   10:07:44   QUESTION ASSUMING WE AGREE THAT THAT'S NOT A WAIVER
 8   10:07:44   IF --
 9   10:07:45           MR. QUINN:  I AGREE.
10   10:07:46           MS. CENDALI:  -- I LET HIM ANSWER THAT
11   10:07:46   QUESTION.
12   10:07:46           MR. QUINN:  I AGREE.
13   10:07:46           MS. CENDALI:  ALL RIGHT.
14   10:07:46           THE WITNESS:  I TOLD HER TO MAKE SURE THAT
15   10:07:47   WHAT HE WAS TELLING US, EVERYTHING WAS TRUE AND DO
16   10:07:51   ITS -- HER DUE DILIGENCE.
17   10:07:54   BY MR. QUINN:
18   10:07:54        Q   ALL RIGHT.  WE GOT INTO THIS BECAUSE I ASKED
19   10:07:57   YOU WHETHER YOU INSTRUCTED SOMEBODY ELSE TO FIND OUT
20   10:08:01   WHETHER HE HAD A CONTRACT WITH MATTEL, AND YOU STARTED
21   10:08:03   TO TELL ME SOMETHING ABOUT VICTORIA O'CONNER.
22   10:08:06           DID YOU INSTRUCT VICTORIA O'CONNER TO CONFIRM
23   10:08:09   WHETHER OR NOT HE HAD A CONTRACT WITH MATTEL?
24   10:08:13        A   I'M NOT SURE.  I DON'T REMEMBER IF I ASKED
25   10:08:14   ABOUT A CONTRACT OR NOT.  I REMEMBER ASKING HER TO MAKE
```

| | | |
|---|---|---|
| 1 | 10:08:16 | SURE -- TO VERIFY WHAT HE WAS TELLING US IS TRUE. |
| 2 | 10:08:21 | Q   ALL RIGHT.  SO WOULD IT BE TRUE TO SAY THAT |
| 3 | 10:08:23 | YOU HAVE NO RECOLLECTION OF INSTRUCTING ANYONE TO FIND |
| 4 | 10:08:29 | OUT WHETHER OR NOT MR. BRYANT HAD A CONTRACT; IS THAT |
| 5 | 10:08:31 | TRUE? |
| 6 | 10:08:31 | MS. CENDALI:  OBJECTION.  MISCHARACTERIZES |
| 7 | 10:08:34 | HIS TESTIMONY. |
| 8 | 10:08:34 | THE WITNESS:  I DON'T HAVE A RECOLLECTION ONE |
| 9 | 10:08:36 | WAY OR ANOTHER.  I COULD HAVE.  I COULD NOT HAVE.  I |
| 10 | 10:08:40 | DON'T HAVE A RECOLLECTION. |
| 11 | 10:08:48 | MS. CENDALI:  DID YOU WANT TO TAKE A BREAK? |
| 12 | 10:08:50 | MR. WICKHAM:  I NEED TO GO TO THE RESTROOM. |
| 13 | 10:08:51 | WHY DON'T WE TAKE A BREAK.  SORRY. |
| 14 | 10:08:55 | MS. CENDALI:  MR. LARIAN NEEDS TO TAKE A LOT |
| 15 | 10:08:58 | OF BATHROOM BREAKS. |
| 16 | 10:08:59 | MR. QUINN:  OKAY.  ALL RIGHT.  WE'RE OFF THE |
| 17 | 10:09:02 | RECORD. |
| 18 | 10:09:02 | THE VIDEOGRAPHER:  WE'RE OFF THE RECORD AT |
| 19 | 10:09:04 | 10:09 A.M. |
| 20 | 10:09:21 | (BRIEF PAUSE IN THE PROCEEDINGS.) |
| 21 | 10:18:21 | THE VIDEOGRAPHER:  WE'RE BACK ON RECORD AT |
| 22 | 10:18:23 | 10:18 A.M. |
| 23 | 10:18:25 | BY MR. QUINN: |
| 24 | 10:18:25 | Q   MR. LARIAN, WHEN I ASKED YOU WHETHER YOU HAD |
| 25 | 10:18:29 | ASKED ANYONE ELSE TO VERIFY WHETHER OR NOT MR. BRYANT |

49

A&E COURT REPORTERS  (213) 955-0070  FAX: (213) 955-0077

EXHIBIT _____4_____

PAGE _____67_____

```
 1   10:18:33   HAD A CONTRACT AT MATTEL, YOU STARTED TO TELL ME ABOUT
 2   10:18:37   VICTORIA O'CONNER.  YOU HAD ASKED HER TO TALK TO A
 3   10:18:40   LAWYER.
 4   10:18:40              WHO WAS THE LAWYER THAT YOU ASKED HER TO TALK
 5   10:18:43   TO?
 6   10:18:43        A    WHAT WAS THAT?  I DON'T REMEMBER IF I SAID
 7   10:18:45   TALKED TO MY LAWYER.  MAYBE THAT'S YOUR TESTIMONY.
 8   10:18:48              I REMEMBER SAYING THAT MAKE SURE -- CHECK
 9   10:18:50   THIS OUT.  MAKE SURE IT'S RIGHT, WHAT HE IS TELLING US
10   10:18:55   IS TRUE.
11   10:18:56        Q    UH-HUH.  IN AN ANSWER THAT YOU GAVE THIS
12   10:18:59   MORNING, YOU SAID SOMETHING TO HER IN THAT CONVERSATION
13   10:19:02   ABOUT SPEAKING TO A LAWYER.
14   10:19:04              DO YOU RECALL THAT?
15   10:19:05        A    I DON'T RECALL THAT.
16   10:19:06        Q    IT WAS ABOUT 15 MINUTES AGO.
17   10:19:09        A    I COULD HAVE.  I DON'T RECALL DOING THAT.
18   10:19:10        Q    ALL RIGHT.  WELL, DID YOU ASK
19   10:19:13   VICTORIA O'CONNER TO SPEAK WITH A LAWYER?
20   10:19:16        A    I ASSUME SHE DID.
21   10:19:16        Q    DID YOU ASK HER TO?
22   10:19:16        A    I DON'T RECALL DOING THAT DIRECTLY, I SAID
23   10:19:18   TALK TO A LAWYER, BUT I ASSUME SHE DID.
24   10:19:21        Q    WHY DO YOU ASSUME SHE DID?
25   10:19:23        A    BECAUSE SHE WAS SUPPOSED TO DRAW UP THE
```

50