| | | |
|---|---|---|
| 1 | 10:19:26 | CONTRACT, AND SHE HAD TO GO TO A LAWYER TO DO THAT. |
| 2 | 10:19:30 | Q    SO THAT WOULD HAVE BEEN -- YOU'RE REFERRING |
| 3 | 10:19:31 | TO A LAWYER FOR MGA? |
| 4 | 10:19:32 | A    THAT'S CORRECT. |
| 5 | 10:19:35 | Q    AND WHO WOULD THAT HAVE BEEN AT THAT TIME? |
| 6 | 10:19:36 | A    DAVID ROSENBAUM. |
| 7 | 10:19:38 | Q    I MEAN, DID YOU EVER HAVE -- WITHOUT GETTING |
| 8 | 10:19:42 | INTO DETAILS, I DON'T WANT TO RAISE MS. CENDALI'S |
| 9 | 10:19:46 | LEGITIMATE CONCERNS ABOUT INVASION OF ATTORNEY-CLIENT |
| 10 | 10:19:51 | PRIVILEGE.  LET ME ASK YOU GENERALLY. |
| 11 | 10:19:52 | DID YOU EVER HAVE ANY CONVERSATIONS WITH |
| 12 | 10:19:55 | MR. ROSENBAUM ON THE SUBJECT OF MR. BRYANT'S CONTRACT? |
| 13 | 10:19:59 | A    WHAT CONTRACT?  OUR CONTRACT WITH HIM? |
| 14 | 10:20:02 | Q    YES, SIR. |
| 15 | 10:20:02 | A    I COULD HAVE.  I DON'T RECALL. |
| 16 | 10:20:03 | Q    YOU JUST DON'T RECALL. |
| 17 | 10:20:05 | A    I DON'T. |
| 18 | 10:20:06 | Q    WOULD YOU BASICALLY HAVE DELEGATED THAT TO |
| 19 | 10:20:09 | SOMEBODY ELSE? |
| 20 | 10:20:09 | A    VICTORIA O'CONNER. |
| 21 | 10:20:12 | Q    THE ANSWER IS "YES," I WOULD HAVE DELEGATED |
| 22 | 10:20:14 | IT TO VICTORIA O'CONNER? |
| 23 | 10:20:17 | A    THANK YOU FOR THAT. |
| 24 | 10:20:21 | Q    OKAY.  ALL RIGHT.  THANK YOU.  AND AS LONG AS |
| 25 | 10:20:22 | MY ANSWERS ARE ACCURATE.  I DON'T WANT YOU TO ADOPT |

A&E COURT REPORTERS  (213) 955-0070  FAX: (213) 955-0077

EXHIBIT ____6____

PAGE ____69____

| | | |
|---|---|---|
| 1 | 10:20:22 | THEM UNLESS YOU -- YOU AGREE WITH WHAT I SAID. |
| 2 | 10:20:22 | A   OKAY. |
| 3 | 10:20:22 | Q   AND I'M SURE YOUR COUNSEL WILL AGREE WITH |
| 4 | 10:20:22 | THAT. |
| 5 | 10:20:24 | MS. CENDALI:  AND -- |
| 6 | 10:20:24 | THE WITNESS:  ENGLISH IS NOT MY FIRST |
| 7 | 10:20:28 | LANGUAGE, SO SOMETIMES I DIDN'T SPEAK IT PROPERLY. |
| 8 | 10:20:31 | BY MR. QUINN: |
| 9 | 10:20:31 | Q   YOU DO -- YOU DO PRETTY WELL. |
| 10 | 10:20:33 | IS YOUR FIRST LANGUAGE FARSI, THEN? |
| 11 | 10:20:36 | A   IT IS. |
| 12 | 10:20:37 | Q   ALL RIGHT.  YOU CAME TO THIS COUNTRY AT THE |
| 13 | 10:20:42 | AGE OF, LIKE, 17 WITH $700 IN YOUR POCKET, I READ? |
| 14 | 10:20:46 | A   $750. |
| 15 | 10:20:49 | Q   AMAZING. |
| 16 | 10:20:49 | A   YEAH.  I HAD THE OPPORTUNITY TO SEE. |
| 17 | 10:20:51 | Q   WELL, AND YOU WERE CONCERNED -- YOU WANTED TO |
| 18 | 10:20:52 | GO TO ISRAEL OR -- AND DECIDED TO COME HERE? |
| 19 | 10:20:54 | A   YES. |
| 20 | 10:20:54 | Q   AND HOW WAS YOUR TRIP TO -- THIS IS |
| 21 | 10:20:54 | COMPLETELY IRRELEVANT, BUT YOU'VE JUST COME BACK FROM |
| 22 | 10:20:54 | ISRAEL, AND YOU GOT BACK AT THE RIGHT TIME. |
| 23 | 10:20:57 | A   YES, I DID. |
| 24 | 10:20:59 | Q   JUST GOING BACK FOR A MOMENT TO THIS SORT-OF |
| 25 | 10:21:05 | CONTEST THAT YOU -- |

EXHIBIT 6

PAGE 70

| | | |
|---|---|---|
| 1 | 11:02:09 | Q    COULD YOU DESCRIBE THAT CORRESPONDENCE FOR |
| 2 | 11:02:11 | ME? |
| 3 | 11:02:11 | A    YES. |
| 4 | 11:02:13 | THE WITNESS:  CAN I? |
| 5 | 11:02:15 | MS. CENDALI:  YOU CAN DESCRIBE IT GENERALLY, |
| 6 | 11:02:18 | WITHOUT -- WELL, WITHOUT REVEALING ANYTHING ABOUT HER, |
| 7 | 11:02:26 | MS. O'CONNER'S, COMMUNICATIONS WITH YOUR LAWYER UNTIL |
| 8 | 11:02:33 | WE GET SOME SORT OF A DEAL IN PLACE WITH REGARD TO |
| 9 | 11:02:37 | WAIVER OF THE ATTORNEY-CLIENT PRIVILEGE. |
| 10 | 11:02:40 | MR. QUINN:  I WON'T REGARD IT AS A WAIVER, IF |
| 11 | 11:02:42 | THAT'S THE ISSUE.  YOU CAN TELL ME ABOUT THIS.  IF |
| 12 | 11:02:45 | THERE'S SOMETHING THAT YOU ARE CONCERNED ABOUT THERE, |
| 13 | 11:02:47 | HE CAN TELL ME ABOUT.  I AGREE IT'S NOT A WAIVER. |
| 14 | 11:02:52 | MS. CENDALI:  WELL -- |
| 15 | 11:02:52 | MR. QUINN:  DO YOU KNOW WHAT ISSUE IS HERE? |
| 16 | 11:02:55 | MR. ZELLER:  (INAUDIBLE.) |
| 17 | 11:02:56 | MS. CENDALI:  I JUST WANT TO MAKE SURE THAT |
| 18 | 11:02:58 | IF HE -- HE -- HE TALKS ABOUT THE -- YOU KNOW, |
| 19 | 11:03:00 | COMMUNICATIONS WITH HIS ATTORNEYS AND/OR CARTER'S |
| 20 | 11:03:07 | ATTORNEYS REGARDING THE -- THE NEGOTIATIONS OF THE |
| 21 | 11:03:09 | AGREEMENT THAT'S NOT GOING TO BE DEEMED AS A GENERAL |
| 22 | 11:03:13 | WAIVER BEYOND THE NEGOTIATION OF THE AGREEMENT. |
| 23 | 11:03:16 | MR. QUINN:  I MEAN COMMUNICATIONS WITH |
| 24 | 11:03:18 | CARTER'S LAWYERS WOULDN'T BE PRIVILEGED, I WOULDN'T |
| 25 | 11:03:22 | THINK. |

90

EXHIBIT 6
PAGE 71

| 1 | 11:03:22 | MS. CENDALI:  THE QUESTION IS, SUPPOSE THERE |
| 2 | 11:03:25 | WERE COMMUNICATIONS WITH CARTER'S LAWYERS THAT WENT |
| 3 | 11:03:28 | THROUGH OTHER LAWYERS, THROUGH MGA'S LAWYERS. |
| 4 | 11:03:34 | MR. QUINN:  I DON'T KNOW.  A COMMUNICATION |
| 5 | 11:03:36 | THAT GOES -- THAT -- YOU KNOW, I TELL YOU TO TELL HIM |
| 6 | 11:03:39 | "X," THAT'S NOT A PRIVILEGED COMMUNICATION. |
| 7 | 11:03:42 | MS. CENDALI:  WELL -- |
| 8 | 11:03:42 | MR. QUINN:  I MEAN, IF I CONVEY IT TO YOU FOR |
| 9 | 11:03:44 | THE EXPRESS PURPOSE OF YOUR DISCLOSING IT TO SOMEONE -- |
| 10 | 11:03:49 | MS. CENDALI:  WELL, IT MAY NOT HAVE BEEN |
| 11 | 11:03:51 | CONVEYED FOR THE EXPRESS PURPOSE. |
| 12 | 11:03:53 | BY MR. QUINN: |
| 13 | 11:03:53 | Q    CAN YOU JUST DESCRIBE -- YOU KNOW, THE |
| 14 | 11:03:54 | DOCUMENT, WHO IT'S FROM, WHAT YOU'RE REFERRING TO? |
| 15 | 11:03:57 | JUST DESCRIBE IT TO ME.  DON'T GET INTO THE SUBSTANCE |
| 16 | 11:04:07 | BECAUSE I'M NOT EVEN SURE I'M INTERESTED IN THE |
| 17 | 11:04:07 | SUBSTANCE, BUT CAN YOU DESCRIBE THE -- WHAT IT IS YOU |
| 18 | 11:04:07 | SAW? |
| 19 | 11:04:07 | A    I HAVE SEEN AN E-MAIL THAT CAME BACK AND |
| 20 | 11:04:09 | SAID, "WE HAVE CONFIRMED WHAT HE'S SAYING IS BASICALLY |
| 21 | 11:04:13 | RIGHT, THAT HE DID THIS IN 1998, IN MISSOURI." |
| 22 | 11:04:16 | AND I SAW THAT RIGHT BEFORE -- I THINK THAT |
| 23 | 11:04:19 | E-MAIL, PARTICULAR E-MAIL IS DATED BEFORE WE SIGNED AN |
| 24 | 11:04:22 | AGREEMENT WITH HIM. |
| 25 | 11:04:22 | Q    AND WHO'S THE AUTHOR OF THIS E-MAIL THAT YOU |

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT _____ 6

PAGE _____ 72

| | | |
|---|---|---|
| 1 | 11:04:25 | SAW? |
| 2 | 11:04:25 | A    MY ATTORNEY. |
| 3 | 11:04:28 | Q    MR. ROSENBAUM? |
| 4 | 11:04:30 | A    YES. |
| 5 | 11:04:31 | Q    AND IS IT ADDRESSED TO VICTORIA O'CONNER? |
| 6 | 11:04:34 | A    IT IS. |
| 7 | 11:04:36 | Q    AND -- |
| 8 | 11:04:36 | MS. CENDALI:  AND I JUST WANT TO MAKE CLEAR |
| 9 | 11:04:40 | THAT, AS YOU SAID, I LET HIM TESTIFY ON YOUR |
| 10 | 11:04:43 | REPRESENTATION THAT THAT WOULD NOT BE ANY WAIVER OF THE |
| 11 | 11:04:47 | ATTORNEY-CLIENT PRIVILEGE. |
| 12 | 11:04:48 | AND I INDICATE, AGAIN, AND WE ARE -- REMAIN |
| 13 | 11:04:51 | WILLING TO STIPULATE TO DISCUSS WAIVER OF THE PRIVILEGE |
| 14 | 11:04:55 | WITH REGARD TO THE NEGOTIATIONS OF THE CARTER BRYANT |
| 15 | 11:04:58 | AGREEMENT. |
| 16 | 11:04:58 | MR. QUINN:  WAIT A SECOND.  I DIDN'T ACCEPT |
| 17 | 11:05:03 | YOUR DEAL.  THE QUESTION I ASKED HIM WAS JUST TELL |
| 18 | 11:05:05 | ME -- DESCRIBE THE DOCUMENT FOR ME. |
| 19 | 11:05:07 | HE WENT INTO DESCRIBE THE CONTENT.  THAT'S |
| 20 | 11:05:09 | WHAT HAPPENED THERE. |
| 21 | 11:05:10 | MS. CENDALI:  OKAY.  THAT'S -- YOU SAID |
| 22 | 11:05:11 | YOU'RE NOT GOING TO CONSIDER THIS A WAIVER, AND YOU |
| 23 | 11:05:14 | THEN WENT INTO THE QUESTION.  I DON'T THINK THAT'S |
| 24 | 11:05:17 | PROPER. |
| 25 | 11:05:17 | MR. QUINN:  THE RECORD IS WHAT IT IS. |

92

EXHIBIT _____ 6

PAGE _____ 73

| | | |
|---|---|---|
| 1 | 11:05:20 | MS. CENDALI:  THE RECORD IS WHAT IT IS, AND |
| 2 | 11:05:21 | I'M GOING TO INSTRUCT HIM NOT TO ANSWER, AND I -- WE'RE |
| 3 | 11:05:26 | PLAYING GAMES. |
| 4 | 11:05:26 | I HAVE ON THE RECORD REPEATEDLY THAT WE'RE |
| 5 | 11:05:29 | OFFERING TO ENTER INTO A STIPULATION TO WAIVE THE |
| 6 | 11:05:33 | PRIVILEGE WITH REGARD TO THE NEGOTIATIONS. |
| 7 | 11:05:36 | IF YOU DON'T WANT TO DO THAT, YOU DON'T HAVE |
| 8 | 11:05:37 | TO DO THAT.  BUT YOU HAVE REPRESENTED TO THIS WITNESS |
| 9 | 11:05:39 | AND TO ME THAT YOU'RE NOT GOING TO DEEM THESE -- THOSE |
| 10 | 11:05:42 | QUESTIONS AS A WAIVER, AND THAT'S HOW THE QUESTION -- |
| 11 | 11:05:45 | THE WAY WE TOOK IT. |
| 12 | 11:05:46 | BY MR. QUINN: |
| 13 | 11:05:46 | Q    WHEN DID YOU SEE THIS E-MAIL? |
| 14 | 11:05:49 | MS. CENDALI:  OBJECTION.  INSTRUCTION NOT TO |
| 15 | 11:05:51 | ANSWER ABOUT ANY COMMUNICATION WITH YOUR ATTORNEY. |
| 16 | 11:05:56 | BY MR. QUINN: |
| 17 | 11:05:56 | Q    OKAY.  CAN YOU ANSWER THAT QUESTION? |
| 18 | 11:05:58 | MS. CENDALI:  INSTRUCT YOU NOT TO ANSWER. |
| 19 | 11:06:00 | BY MR. QUINN: |
| 20 | 11:06:00 | Q    DID YOU SEE THIS E-MAIL THAT YOU'VE DESCRIBED |
| 21 | 11:06:04 | FOR ME BEFORE YOU SIGNED THE CONTRACT -- MGA SIGNED THE |
| 22 | 11:06:09 | CONTRACT WITH MR. BRYANT? |
| 23 | 11:06:11 | MS. CENDALI:  ASKED AND ANSWERED. |
| 24 | 11:06:12 | AND I INSTRUCT YOU NOT TO ANSWER. |
| 25 | 11:06:14 | IN LIGHT OF THE FACT THAT YOU ARE NOT WILLING |

EXHIBIT _____6_____

PAGE _____74_____

| | | |
|---|---|---|
| 1 | 11:06:16 | TO STATE THAT ANY OF THESE QUESTIONS WILL NOT RESULT IN |
| 2 | 11:06:19 | A WAIVER OF THE PRIVILEGE. |
| 3 | 11:06:22 | MR. WICKHAM:  CAN I -- I MEAN, I HAVE AN |
| 4 | 11:06:24 | INTEREST IN THIS AS WELL.  AND IT WAS MY UNDERSTANDING |
| 5 | 11:06:26 | THAT DURING THE DAY-LONG SESSION THAT WE SPENT DOWN AT |
| 6 | 11:06:31 | MAGISTRATE -- JUDGE BLOCK'S COURTROOM, THAT WE HAD |
| 7 | 11:06:36 | ADDRESSED THESE ISSUES AND THAT ALL OF THESE ISSUES |
| 8 | 11:06:39 | ULTIMATELY ARE -- ARE BEING IRONED OUT THROUGH THE |
| 9 | 11:06:42 | STIPULATION PROCESS AND ALL THAT. |
| 10 | 11:06:44 | SO I'M NOT QUITE SURE WHY THE RESISTANCE ON |
| 11 | 11:06:46 | YOUR SIDE TO SAY, YEAH, THAT -- WE'VE ALREADY AGREED TO |
| 12 | 11:06:48 | THAT.  NO PROBLEM.  TELL ME ALL THIS INFORMATION. |
| 13 | 11:06:50 | I MEAN, I'M NOT -- I THINK THAT WE'VE ALREADY |
| 14 | 11:06:51 | RESOLVED THIS, AND SO I'M NOT SURE WHY YOU'RE BACKING |
| 15 | 11:06:54 | OFF OF WHAT YOU PREVIOUSLY HAD AGREED TO. |
| 16 | 11:06:57 | BY MR. QUINN: |
| 17 | 11:06:57 | Q    WHEN WAS THE LAST TIME YOU SAW THAT E-MAIL? |
| 18 | 11:07:01 | MR. WICKHAM:  ALL RIGHT.  LET THE RECORD |
| 19 | 11:07:03 | REFLECT THAT MR. QUINN -- |
| 20 | 11:07:04 | MS. CENDALI:  I OBJECT TO -- |
| 21 | 11:07:04 | MR. WICKHAM:  -- IS REFUSING TO RESPOND TO MY |
| 22 | 11:07:07 | QUESTION, AND I'LL BRING THIS TO MR. BLOCK'S ATTENTION |
| 23 | 11:07:11 | THE NEXT TIME THAT WE NEED TO, THAT MR. QUINN IS NOT |
| 24 | 11:07:14 | ACKNOWLEDGING AGREEMENTS THAT HE MADE DURING THE COURSE |
| 25 | 11:07:14 | OF OUR DAY-LONG SESSION IN JUDGE BLOCK'S COURTROOM. |

EXHIBIT  6

PAGE  75

| | | |
|---|---|---|
| 1 | 11:07:15 | MS. CENDALI:  WE HAD A SPECIFIC AGREEMENT AT |
| 2 | 11:07:18 | THAT SESSION WITH REGARD TO THE WAIVER OF -- LIMITED |
| 3 | 11:07:22 | WAIVER OF CARTER BRYANT'S ATTORNEY-CLIENT PRIVILEGE |
| 4 | 11:07:27 | WITH REGARD TO THE NEGOTIATION OF THE CONTRACT WITH |
| 5 | 11:07:30 | MGA. |
| 6 | 11:07:30 | BY MR. QUINN: |
| 7 | 11:07:30 | Q    WHEN WAS THE LAST TIME YOU SAW THAT E-MAIL? |
| 8 | 11:07:33 | MS. CENDALI:  OBJECTION. |
| 9 | 11:07:34 | INSTRUCT YOU NOT TO ANSWER TO THE EXTENT IT |
| 10 | 11:07:37 | REVEALS ANY ATTORNEY-CLIENT PRIVILEGED COMMUNICATION OR |
| 11 | 11:07:39 | ANYTHING THAT ABOUT YOUR PREP. |
| 12 | 11:07:44 | MR. QUINN:  SO "TO THE EXTENT THAT," DOES |
| 13 | 11:07:46 | THAT MEAN YOU'RE INSTRUCTING HIM NOT TO ANSWER? |
| 14 | 11:07:49 | MS. CENDALI:  I'M INSTRUCTING HIM NOT TO |
| 15 | 11:07:51 | ANSWER TO THE EXTENT IT MIGHT REVEAL ANYTHING ABOUT HIS |
| 16 | 11:07:54 | PREP FOR HIS DEPOSITION IN THIS CASE. |
| 17 | 11:07:56 | I'M MORE THAN HAPPY TO LET HIM TESTIFY ABOUT |
| 18 | 11:07:59 | THIS, MR. QUINN, BUT I'M NOT GOING TO DO IT, YOU KNOW, |
| 19 | 11:08:02 | WITHOUT A STIPULATION WITH REGARD TO, YOU KNOW, THE |
| 20 | 11:08:05 | SCOPE OF THE WAIVER. |
| 21 | 11:08:06 | BY MR. QUINN: |
| 22 | 11:08:06 | Q    ARE YOU GOING TO TELL ME WHEN THE LAST TIME |
| 23 | 11:08:09 | YOU SAW THAT E-MAIL WAS? |
| 24 | 11:08:12 | A    I'M GOING TO FOLLOW MY ATTORNEY'S |
| 25 | 11:08:14 | INSTRUCTION. |

95

EXHIBIT _____ 6

PAGE _____ 76

| | | |
|---|---|---|
| 1 | 11:08:15 | Q   DO YOU KNOW WHAT WAS DONE TO CONFIRM THAT |
| 2 | 11:08:22 | WHAT MR. BRYANT HAD REPRESENTED TO YOU WAS ACCURATE? |
| 3 | 11:08:24 | THIS JUST CALLS FOR A "YES" OR "NO" ANSWER. |
| 4 | 11:08:29 | A   TO ALL EXTENT OF IT, NO.  BUT I DO, IN |
| 5 | 11:08:34 | GENERAL. |
| 6 | 11:08:35 | Q   ALL RIGHT.  AND WHAT DO YOU KNOW IN THAT |
| 7 | 11:08:36 | REGARD? |
| 8 | 11:08:36 | MS. CENDALI:  I'LL LET YOU -- I'LL LET YOU |
| 9 | 11:08:38 | RESPOND TO THE EXTENT THAT YOUR RESPONSE DOES NOT |
| 10 | 11:08:42 | REVEAL ANY COMMUNICATIONS WITH AN ATTORNEY. |
| 11 | 11:08:44 | THE WITNESS:  I CAN'T. |
| 12 | 11:08:45 | BY MR. QUINN: |
| 13 | 11:08:45 | Q   WAS THAT IMPORTANT TO YOU TO CONFIRM THAT |
| 14 | 11:08:49 | WHAT MR. BRYANT TOLD YOU WAS ACCURATE? |
| 15 | 11:08:51 | A   IT WAS. |
| 16 | 11:08:51 | Q   AND DID YOU TAKE ANY STEPS TO CONFIRM THE |
| 17 | 11:08:55 | ACCURACY OF THAT INFORMATION OTHER THAN WHAT YOU'VE |
| 18 | 11:09:05 | TOLD US, THAT IS TO SAY, TO INSTRUCT VICTORIA O'CONNER? |
| 19 | 11:09:05 | A   AND WHAT SHE DID. |
| 20 | 11:09:05 | Q   DID YOU DO ANYTHING ELSE BESIDES THAT? |
| 21 | 11:09:07 | A   NO. |
| 22 | 11:09:07 | Q   IN THIS MEETING, DID YOU ASK MR. BRYANT |
| 23 | 11:09:23 | WHETHER HE HAD SHOWN THESE DRAWINGS TO ANYONE AT |
| 24 | 11:09:26 | MATTEL? |
| 25 | 11:09:26 | A   IN WHICH MEETING? |

96

A&E COURT REPORTERS  (213) 955-0070  FAX: (213) 955-0077

EXHIBIT ___6___

PAGE ___79___

```
 1   11:09:27        Q    THE MEETING THAT -- THE ONLY ONE WE'VE TALKED

 2   11:09:30   ABOUT SO FAR, THE SEPTEMBER 1ST MEETING.

 3   11:09:32        A    I DON'T RECALL.

 4   11:09:33        Q    YOU MIGHT HAVE?  YOU MIGHT NOT HAVE?  YOU'RE

 5   11:09:36   JUST NOT SURE?

 6   11:09:37             MR. WICKHAM:  OBJECTION.  COMPOUND.

 7   11:09:38             MS. CENDALI:  OBJECTION TO THE FORM.

 8   11:09:39             THE WITNESS:  I DON'T THINK I HAVE.  I DID.

 9   11:09:43   BY MR. QUINN:

10   11:09:43        Q    HOW WAS IT THAT YOUR -- HOW OLD WAS YOUR

11   11:09:46   DAUGHTER AT THE TIME?

12   11:09:48        A    I THINK SHE WAS 11 OR 12.

13   11:09:51        Q    AND HOW DID SHE HAPPEN -- WAS IT JUST

14   11:09:56   HAPPENSTANCE THAT SHE WAS IN THE OFFICE THAT DAY?

15   11:09:58        A    DURING THE SUMMER, I USUALLY TAKE MY KIDS TO

16   11:10:02   THE OFFICE WHEN THEY WERE YOUNGER.  BUT NOW --

17   11:10:05        Q    THEY HAVE BETTER THINGS TO DO?

18   11:10:07        A    EXACTLY.

19   11:10:08        Q    I HAVE FIVE DAUGHTERS, SO I --

20   11:10:10        A    REALLY?

21   11:10:10        Q    -- I'M FAMILIAR WITH THE PHENOMENA.

22   11:10:14             SO WAS THIS -- THIS HAPPENED TO BE ONE OF THE

23   11:10:16   DAYS DURING THE SUMMER WHEN SHE JUST HAPPENED TO BE AT

24   11:10:18   THE OFFICE?

25   11:10:19        A    WELL, I BROUGHT HER IN THE OFFICE.  SHE
```

A&E COURT REPORTERS  (213) 955-0070  FAX: (213) 955-0077

EXHIBIT  6
PAGE  78

| | | |
|---|---|---|
| 1 | 11:57:48 | MR. WICKHAM:  OBJECTION.  FOUNDATION. |
| 2 | 11:57:49 | THE WITNESS:  I ASSUME SO. |
| 3 | 11:57:50 | BY MR. QUINN: |
| 4 | 11:57:50 | Q    DO YOU RECALL SEEING HIM THERE FROM TIME TO |
| 5 | 11:57:53 | TIME FROM 2000/2001? |
| 6 | 11:57:56 | A    I DON'T RECALL.  PROBABLY I HAVE. |
| 7 | 11:57:59 | Q    ALL RIGHT.  DOES THE NAME RICHARD IRMAN MEAN |
| 8 | 11:58:04 | ANYTHING TO YOU? |
| 9 | 11:58:05 | A    NO. |
| 10 | 11:58:05 | Q    DID YOU EVER MEET CARTER BRYANT'S PARTNER? |
| 11 | 11:58:08 | A    YES. |
| 12 | 11:58:08 | Q    DOES THE -- DOES THE NAME RICHARD IRMAN RING |
| 13 | 11:58:13 | A BELL? |
| 14 | 11:58:13 | A    IT'S RICHARD.  I DON'T KNOW HIS LAST NAME. |
| 15 | 11:58:16 | Q    ALL RIGHT.  BUT YOU -- |
| 16 | 11:58:16 | A    I KNOW HIM AS RICHARD. |
| 17 | 11:58:20 | Q    OKAY.  WHEN DID YOU FIRST MEET RICHARD? |
| 18 | 11:58:22 | A    I DON'T REMEMBER EXACTLY. |
| 19 | 11:58:24 | Q    WOULD IT HAVE BEEN BACK EARLY ON IN YOUR |
| 20 | 11:58:27 | RELATIONSHIP WITH MR. BRYANT, IN 2000/2001? |
| 21 | 11:58:30 | A    I DON'T RECALL. |
| 22 | 11:58:31 | Q    ALL RIGHT.  DID MR. ROSENBAUM PREPARE THE |
| 23 | 11:58:40 | FIRST DRAFT OF THE AGREEMENT WITH MR. BRYANT? |
| 24 | 11:58:44 | A    YOU MEAN DAVID -- |
| 25 | 11:58:46 | MS. CENDALI:  I INSTRUCT YOU -- |

139

EXHIBIT 6

PAGE 79

```
  1    11:58:48    BY MR. QUINN:

  2    11:58:49        Q    I SAID MR. ROSENBAUM.

  3    11:58:51            MS. CENDALI:  I INSTRUCT TO -- AGAIN, I'M

  4    11:58:53    HAPPY TO ENTER INTO A STIPULATION, BUT BARRING THAT, I

  5    11:58:56    INSTRUCT YOU NOT TO ANSWER ABOUT ANYTHING THAT YOU

  6    11:58:58    LEARNED OR DISCUSSED OR THAT YOUR LAWYERS DID.

  7    11:59:02            MR. QUINN:  IT'S PRIVILEGED WHETHER HE

  8    11:59:05    PREPARED A DRAFT AGREEMENT.

  9    11:59:06            MS. CENDALI:  YES.  BECAUSE -- WELL, YOU

 10    11:59:09    THINK THAT WAS -- YOU AGREE THAT THAT'S NOT PRIVILEGED?

 11    11:59:11            MR. QUINN:  I DON'T THINK THAT'S PRIVILEGED.

 12    11:59:14            MS. CENDALI:  ALL RIGHT.  IF YOU AGREE THAT'S

 13    11:59:15    NOT PRIVILEGED, I'LL LET HIM ANSWER THAT QUESTION.

 14    11:59:19            MR. QUINN:  OKAY.

 15    11:59:19            THE WITNESS:  WHAT'S THE QUESTION?  DID HE

 16    11:59:20    PREPARE --

 17    11:59:21    BY MR. QUINN:

 18    11:59:21        Q    YEAH.  DID -- MR. ROSENBAUM, I UNDERSTAND,

 19    11:59:24    WAS MGA'S COUNSEL.  DID HE PREPARE THE FIRST DRAFT OF

 20    11:59:31    THE AGREEMENT?

 21    11:59:31        A    I BELIEVE HE DID.

 22    11:59:33        Q    AND -- OKAY.  THE -- WERE THERE FOUR ORIGINAL

 23    11:59:44    BRATZ CHARACTERS?  IS THAT RIGHT?

 24    11:59:46        A    WHEN WE CAME UP WITH THEM?

 25    11:59:48        Q    YES, SIR.
```

EXHIBIT ___6___

PAGE ___80___

| | | | |
|---|---|---|---|
| 1 | 11:59:48 | A | IN 2001? |
| 2 | 11:59:50 | Q | YES. |
| 3 | 11:59:50 | A | YES, THERE WERE. |
| 4 | 11:59:52 | Q | AND THEY EACH HAD NAMES?  THE FOUR OF THEM |
| 5 | 11:59:56 | | HAD NAMES? |
| 6 | 11:59:56 | A | YES. |
| 7 | 11:59:57 | Q | DID MR. BRYANT, WHEN HE FIRST INTRODUCED -- |
| 8 | 12:00:00 | | SHOWED THESE DRAWINGS BACK IN SEPTEMBER 1, 2000, DID HE |
| 9 | 12:00:04 | | HAVE FOUR CHARACTERS? |
| 10 | 12:00:06 | A | I DON'T RECALL IF HE HAD FOUR OR MORE. |
| 11 | 12:00:08 | Q | ALL RIGHT.  HE MIGHT HAVE HAD FOUR?  HE MIGHT |
| 12 | 12:00:11 | | HAVE HAD MORE?  YOU JUST DON'T RECALL? |
| 13 | 12:00:14 | A | I DON'T. |
| 14 | 12:00:15 | | MR. WICKHAM:  OBJECTION.  COMPOUND. |
| 15 | 12:00:16 | | BY MR. QUINN: |
| 16 | 12:00:16 | Q | DID HE HAVE NAMES FOR THEM? |
| 17 | 12:00:18 | A | I BELIEVE HE DID. |
| 18 | 12:00:19 | Q | ALL RIGHT.  DID THOSE END UP BEING THE NAMES |
| 19 | 12:00:22 | | THAT THE FOUR BRATZ CHARACTERS GOT? |
| 20 | 12:00:26 | A | I DON'T THINK SO.  AGAIN, I COULD BE WRONG. |
| 21 | 12:00:29 | | I DON'T THINK SO.  I KNOW WE NAMED ONE AFTER MY |
| 22 | 12:00:32 | | DAUGHTER. |
| 23 | 12:00:32 | Q | OKAY.  BUT THE BEST OF YOUR RECOLLECTION -- |
| 24 | 12:00:34 | | WHO CAME UP WITH THE NAMES FOR THE CHARACTERS, AS BEST |
| 25 | 12:00:37 | | YOU CAN RECALL? |

A&E COURT REPORTERS  (213) 955-0070  FAX: (213) 955-0077

EXHIBIT 6
PAGE 81

1             BEFORE COMPLETION OF THE DEPOSITION, REVIEW

2   OF THE TRANSCRIPT [X] WAS [ ] WAS NOT REQUESTED.  IF

3   REQUESTED, ANY CHANGES MADE BY THE DEPONENT (AND

4   PROVIDED TO THE REPORTER) DURING THE PERIOD ALLOWED ARE

5   APPENDED HERETO.  [FED. R. CIV. P. 30(E)].

6         DATED _August 9_____ , 2006

7

8   _____

9         APRIL PRAXMARER, CSR 12437

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

258

EXHIBIT 6

PAGE 82

**EXHIBIT 7**

**CERTIFIED COPY**

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

CARTER BRYANT,  AN INDIVIDUAL,  )
                           )
           PLAINTIFF,       )
                           )    CASE NO.
     V.                   )    CV 04-9040 SGL (RNBX)
                           )
MATTEL, INC., A DELAWARE     )    CONSOLIDATED WITH
CORPORATION,              )    CASE NO. 04-9059
                           )
         DEFENDANTS.   )    CASE NO.   05-2727
————————————————)
                           )
AND CONSOLIDATED ACTION (S).  )
————————————————)

# C O N F I D E N T I A L

**(PURSUANT TO PROTECTIVE ORDER, THIS TRANSCRIPT HAS BEEN DESIGNATED CONFIDENTIAL FOR ATTORNEYS' EYES ONLY)**

# DEPOSITION OF DAVID ROSENBAUM

# JANUARY 25, 2008



COURT REPORTERS

**REPORTED BY:**
APRIL CRUZ CACULITAN
CSR NO.  12437
JOB NO. 08AE094-RP

515 S. Flower Street
Suite 3600
Los Angeles, California 90071
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT ____7____

PAGE ___83___

| | | |
|---|---|---|
| 1 | Q    FROM THE MANUFACTURER SIDE OR THE DEVELOPER | 09:32:44 |
| 2 | SIDE? | 09:32:47 |
| 3 | A    FROM THE DEVELOPER SIDE. | 09:32:48 |
| 4 | Q    OKAY.  AND THESE WOULD BE PEOPLE WHO HAD | 09:32:49 |
| 5 | DEVELOPED AN IDEA OR AN ACTUAL VIDEO GAME AND THEN | 09:32:52 |
| 6 | WANTED TO GET ONE OF THE MAJOR VIDEO GAME COMPANIES TO | 09:32:56 |
| 7 | LICENSE IT? | 09:32:59 |
| 8 | A    THEY WERE COMPANIES THAT WERE DEVELOPING | 09:33:02 |
| 9 | GAMES FOR PUBLISHERS. | 09:33:05 |
| 10 | Q    OKAY.  ALL RIGHT.  AND IN '94 YOU JOINED THE | 09:33:07 |
| 11 | FISCHBACH FIRM? | 09:33:24 |
| 12 | A    FISCHBACH, PERLSTEIN & LIEBERMAN, YES. | 09:33:26 |
| 13 | Q    AND DID YOU CONTINUE THE SAME SORT OF | 09:33:30 |
| 14 | PRACTICE THERE? | 09:33:32 |
| 15 | A    YES.  I ALSO REPRESENTED PUBLISHERS OF VIDEO | 09:33:32 |
| 16 | GAMES, AND I CONTINUED TO REPRESENT DEVELOPERS.  AND I | 09:33:36 |
| 17 | REPRESENTED TOY COMPANIES AND OTHER TALENT. | 09:33:38 |
| 18 | Q    WHAT WERE SOME OF THE TOY COMPANIES YOU | 09:33:41 |
| 19 | REPRESENTED? | 09:33:44 |
| 20 | A    MGA ENTERTAINMENT. | 09:33:45 |
| 21 | Q    ANYONE ELSE? | 09:33:47 |
| 22 | A    THERE WAS A SMALL TOY COMPANY, THE NAME OF | 09:33:54 |
| 23 | WHICH ESCAPES ME. | 09:33:57 |
| 24 | Q    I KNOW THERE'S BEEN SOME CHANGE IN MGA'S NAME | 09:33:59 |
| 25 | OVER THE -- IN THE PAST.  BUT AT THAT PERIOD, WAS IT | 09:34:05 |

12

EXHIBIT 7

PAGE 84

| | | |
|---|---|---|
| 1 | ALREADY MGA, OR WAS IT ONE OTHER PREDECESSOR? | 09:34:08 |
| 2 | A    THE COMPANY'S NAME, I BELIEVE, AT THE TIME | 09:34:14 |
| 3 | WAS MICRO GAMES OF AMERICA. | 09:34:17 |
| 4 | Q    AND AT THAT TIME, WERE THEY INVOLVED TOYS OR | 09:34:25 |
| 5 | WITH GAMES -- OR WITH VIDEO GAMES? | 09:34:28 |
| 6 | A    MGA WAS PRODUCING A VARIETY OF PRODUCTS, AND | 09:34:29 |
| 7 | I WAS RETAINED BY THEM TO ASSIST THEM IN THEIR | 09:34:34 |
| 8 | ENTERTAINMENT LICENSING. | 09:34:38 |
| 9 | Q    DO YOU REMEMBER ANY OF THOSE PRODUCTS? | 09:34:41 |
| 10 | A    NO. | 09:34:43 |
| 11 | Q    WAS THIS A PREEXISTING CLIENT OF THE FIRM OR | 09:34:48 |
| 12 | WAS IT SOMEBODY THAT YOU BROUGHT IN? | 09:34:52 |
| 13 | A    IT WAS SOMEBODY THAT I BOUGHT IN AS A CLIENT. | 09:34:54 |
| 14 | Q    AND HOW DID THAT RELATIONSHIP START? | 09:34:56 |
| 15 | A    I WAS RECOMMENDED TO MGA BY A LICENSING | 09:35:01 |
| 16 | CONSULTANT THAT WAS WORKING WITH MGA AT THE TIME. | 09:35:07 |
| 17 | Q    WHO WAS THAT? | 09:35:09 |
| 18 | A    HER NAME WAS MARGARET YOUNG. | 09:35:10 |
| 19 | Q    AND ROUGHLY WHEN WAS THIS? | 09:35:12 |
| 20 | A    1996. | 09:35:20 |
| 21 | Q    AND WAS SHE YOUR INITIAL CONTACT AT THE | 09:35:21 |
| 22 | COMPANY -- SHE WAS WITH MGA? | 09:35:36 |
| 23 | A    SHE'S A -- SHE WAS A CONSULTANT.  SHE'S NOT | 09:35:39 |
| 24 | AN MGA EMPLOYEE. | 09:35:45 |
| 25 | Q    DID SHE INTRODUCE YOU TO SOMEONE THERE? | 09:35:47 |

EXHIBIT   7

PAGE   85

| | | |
|---|---|---|
| 1 | A    SHE INTRODUCED ME TO ISAAC LARIAN. | 09:35:49 |
| 2 | Q    AND WAS HE THE ONE THAT YOU UNDERSTOOD WHO | 09:35:51 |
| 3 | MADE THE DECISION TO RETAIN YOU FOR SOMETHING? | 09:35:55 |
| 4 | A    YES. | 09:35:56 |
| 5 | Q    OKAY.  AND WHAT WAS THAT INITIAL ENGAGEMENT? | 09:35:57 |
| 6 | A    I'M NOT SURE I UNDERSTAND THAT QUESTION. | 09:36:00 |
| 7 | Q    WHAT WAS THE FIRST THING THEY HIRED YOU TO | 09:36:02 |
| 8 | DO? | 09:36:05 |
| 9 | A    I DON'T REMEMBER THE FIRST MATTER I HANDLED, | 09:36:05 |
| 10 | BUT IT PROBABLY INVOLVED A REVIEW OF A LICENSE | 09:36:09 |
| 11 | AGREEMENT THAT THEY WERE SEEKING TO ENTER INTO WITH A | 09:36:12 |
| 12 | LICENSOR, MOVIE COMPANY OR A TELEVISION COMPANY. | 09:36:17 |
| 13 | Q    AND WAS THIS FIRST ENGAGEMENT IN THAT '96 | 09:36:20 |
| 14 | TIME FRAME? | 09:36:23 |
| 15 | A    '96, '97, YES. | 09:36:23 |
| 16 | Q    ALL RIGHT.  WELL, WE'LL CIRCLE BACK TO THAT | 09:36:31 |
| 17 | IN A MINUTE.  LET'S JUST SORT OF FINISH OUT THE | 09:36:37 |
| 18 | CHRONOLOGY OF YOUR WORK HISTORY. | 09:36:40 |
| 19 | APART FROM WORKING FOR MGA, WHEN YOU WERE AT | 09:36:43 |
| 20 | THE FISCHBACH FIRM, WHAT WERE SOME OF YOUR OTHER | 09:36:47 |
| 21 | CLIENTS THERE? | 09:36:50 |
| 22 | A    I REPRESENTED ACCLAIM ENTERTAINMENT, A VIDEO | 09:36:51 |
| 23 | GAME PUBLISHER, AND I REPRESENTED ONE OF THE FIRM -- | 09:36:56 |
| 24 | ANOTHER OF THE FIRM'S CLIENTS, VIRGIN RECORDS.  AND -- | 09:37:01 |
| 25 | AND I BEGAN TO DEVELOP A PRACTICE. | 09:37:06 |

14

EXHIBIT ___7___

PAGE ___86___

| | | |
|---|---|---|
| 1 | Q    WHO WERE SOME OF THE DEVELOPERS YOU | 09:37:11 |
| 2 | REPRESENTED AT THAT TIME? | 09:37:16 |
| 3 | A    THEY'RE COMPANIES SCATTERED AROUND THE WORLD, | 09:37:17 |
| 4 | IN AUSTRALIA, AND IN CANADA AND THE UNITED STATES. | 09:37:22 |
| 5 | Q    DO YOU REMEMBER ANY OF THE NAMES OF THEM? | 09:37:26 |
| 6 | A    CHROME STUDIOS.  PSEUDO INTERACTIVE.  PLAYER | 09:37:27 |
| 7 | ONE, INCORPORATED. | 09:37:35 |
| 8 | Q    AND THESE WERE COMPANIES THAT WERE DEVELOPING | 09:37:35 |
| 9 | VIDEO GAMES? | 09:37:40 |
| 10 | A    FOR PUBLISHERS, YES. | 09:37:41 |
| 11 | Q    OKAY.  I'M NOT INVOLVED AT ALL IN THE | 09:37:43 |
| 12 | ENTERTAINMENT INDUSTRY, SO SOME OF THIS -- WHEN YOU SAY | 09:37:55 |
| 13 | "PUBLISHERS," IS THAT LIKE NINTENDO, OR IS THAT -- IS | 09:37:57 |
| 14 | THERE ANOTHER STEP? | 09:38:00 |
| 15 | A    COMPANIES LIKE NINTENDO AND COMPANIES LIKE | 09:38:02 |
| 16 | ACCLAIM ENTERTAINMENT, ELECTRONIC ARTS, MIDWAY GAMES. | 09:38:04 |
| 17 | Q    AND WHAT IS THE FORM IN WHICH THOSE | 09:38:13 |
| 18 | COMPANIES, LIKE ELECTRONIC ARTS, ACQUIRE THESE GAMES? | 09:38:21 |
| 19 | IS IT A LICENSING AGREEMENT? | 09:38:24 |
| 20 | A    IT DEPENDS ON THE NATURE OF THE GAME. | 09:38:25 |
| 21 | SOMETIMES THE PUBLISHERS HAVE COMMISSIONED DEVELOPERS | 09:38:28 |
| 22 | TO DEVELOP GAMES AS WORK-FOR-HIRE.  SOMETIMES A | 09:38:32 |
| 23 | DEVELOPER PRESENTS AN ORIGINAL CONCEPT TO A PUBLISHER, | 09:38:35 |
| 24 | AND THEY ACQUIRE THE I.P. FROM THE DEVELOPER. | 09:38:35 |
| 25 | SOMETIMES IT'S A LICENSE. | 09:38:37 |

15

EXHIBIT  7

PAGE  87

| | | |
|---|---|---|
| 1 | Q    SO WHEN YOU SAY "ACQUIRE THE I.P.," THAT | 09:38:40 |
| 2 | WOULD BE LIKE AN ASSIGNMENT OF ALL OF THE RIGHTS -- | 09:38:43 |
| 3 | A    CORRECT. | 09:38:45 |
| 4 | Q    -- AS OPPOSED TO A LICENSE IN WHICH THE | 09:38:45 |
| 5 | DEVELOPER RETAINS SOME RIGHTS? | 09:38:48 |
| 6 | A    CORRECT. | 09:38:49 |
| 7 | Q    OKAY.  AND IN THE FIRST -- I MEAN, IS THAT | 09:38:50 |
| 8 | COMMONLY REFERRED TO, THE FIRST, AS AN "ASSIGNMENT | 09:38:54 |
| 9 | AGREEMENT"? | 09:38:57 |
| 10 | A    NO.  IT'S REFERRED TO AS A "DEVELOPMENT | 09:38:57 |
| 11 | AGREEMENT." | 09:39:00 |
| 12 | Q    DEVELOPMENT AGREEMENT. | 09:39:00 |
| 13 | AND THE OTHER WOULD BE A LICENSE AGREEMENT? | 09:39:05 |
| 14 | A    LICENSE OR -- VARIOUS NAMES, ALL MEANING THE | 09:39:07 |
| 15 | SAME THING. | 09:39:12 |
| 16 | Q    I'M JUST TRYING TO SEE IF THERE'S SOME | 09:39:13 |
| 17 | NOMENCLATURE THAT DISTINGUISHES AN OUTRIGHT ASSIGNMENT | 09:39:16 |
| 18 | OF ALL I.D. RIGHTS VERSUS SOME TYPE OF A LICENSE. | 09:39:20 |
| 19 | A    ONLY THE CONTENT OF THE SUBSTANTIVE | 09:39:22 |
| 20 | PROVISIONS. | 09:39:25 |
| 21 | Q    AND THROUGHOUT THE ENTIRE PERIOD YOU WERE AT | 09:39:28 |
| 22 | THE FISCHBACH FIRM, WAS THAT GENERALLY THE PRACTICE YOU | 09:39:31 |
| 23 | HAD? | 09:39:35 |
| 24 | A    A TRANSACTIONAL ENTERTAINMENT PRACTICE, YES. | 09:39:36 |
| 25 | Q    AND WAS THE MAIN -- THE BULK OF YOUR TIME | 09:39:39 |

16



EXHIBIT _____

PAGE _____