| | | |
|---|---|---|
| 1 | SPENT IN THE VIDEO GAME INDUSTRY? | 09:39:41 |
| 2 | A    I'D SAY ABOUT 60 PERCENT OF MY TIME, YES. | 09:39:44 |
| 3 | Q    AND HOW WAS THE REST OF YOUR TIME SPENT?  I | 09:39:46 |
| 4 | GUESS SOME OF IT IN THE TOY INDUSTRY, APPARENTLY? | 09:39:48 |
| 5 | A    SOME OF IT IN THE TOY INDUSTRY.  SOME OF IT | 09:39:52 |
| 6 | REPRESENTING COMIC BOOK ARTISTS, AUTHORS, OTHER | 09:39:55 |
| 7 | COMPANIES IN THE LICENSING AND MERCHANDISING BUSINESS. | 09:39:59 |
| 8 | Q    SO DIFFERENT INDUSTRIES, BUT SIMILAR ISSUES, | 09:40:03 |
| 9 | WHETHER THEY WERE ALL TRYING TO LICENSE OR SELL OFF | 09:40:05 |
| 10 | SOME OF THE MATERIAL THEY'VE DEVELOPED? | 09:40:09 |
| 11 | A    YES. | 09:40:14 |
| 12 | Q    OKAY.  AND I TAKE IT YOU WORKED BOTH ON THE | 09:40:14 |
| 13 | DEVELOPER SIDE AND THE COMPANY SIDE? | 09:40:23 |
| 14 | A    YES. | 09:40:24 |
| 15 | Q    OKAY.  AND THEN YOU LEFT FISCHBACH IN MAY OF | 09:40:24 |
| 16 | '03, YOU SAID? | 09:40:34 |
| 17 | A    CORRECT. | 09:40:35 |
| 18 | Q    AND WHY WAS THAT? | 09:40:35 |
| 19 | A    THE FIRM HAD LOST SEVERAL CLIENTS AND | 09:40:36 |
| 20 | DOWNSIZED. | 09:40:39 |
| 21 | Q    OKAY.  WHAT DID YOU DO AFTER THAT? | 09:40:40 |
| 22 | A    I OPENED MY OWN OFFICE. | 09:40:43 |
| 23 | Q    WAS MGA ONE OF THE CLIENTS THEY LOST? | 09:40:45 |
| 24 | A    NO. | 09:40:49 |
| 25 | Q    DID YOU CONTINUE TO REPRESENT MGA AFTER YOU | 09:40:50 |

EXHIBIT 7

PAGE 89

| | | |
|---|---|---|
| 1 | LEFT FISCHBACH? | 09:40:57 |
| 2 | A    I CONTINUED TO DO SOME WORK FROM TIME TO TIME | 09:40:59 |
| 3 | AFTER I LEFT FISCHBACH.  BUT BY THE TIME I LEFT THAT | 09:41:08 |
| 4 | FIRM, MGA HAD ALREADY SET UP AN IN-HOUSE LEGAL | 09:41:11 |
| 5 | DEPARTMENT, AND MOST OF THEIR TRANSACTIONS WERE BEING | 09:41:15 |
| 6 | HANDLED INSIDE -- IN-HOUSE. | 09:41:18 |
| 7 | Q    SO THE TYPE OF WORK YOU HAD BEEN DOING WITH | 09:41:19 |
| 8 | THEM, SOME OF THESE LICENSING AGREEMENTS, WERE NOW | 09:41:22 |
| 9 | GENERALLY BEING HANDLED IN-HOUSE IS YOUR UNDERSTANDING? | 09:41:25 |
| 10 | A    YES. | 09:41:28 |
| 11 | Q    DO YOU KNOW IF ANY OF YOUR FORMER FISCHBACH | 09:41:28 |
| 12 | PARTNERS CONTINUED TO DO WORK FOR MGA? | 09:41:32 |
| 13 | A    I DON'T BELIEVE THEY DO. | 09:41:34 |
| 14 | Q    DO YOU KNOW IF -- IF, AFTER MAY OF 2003, MGA, | 09:41:36 |
| 15 | EXCLUDING THIS LITIGATION, STARTED TO USE ANOTHER | 09:41:49 |
| 16 | OUTSIDE FIRM FOR ANY OF THEIR TRANSACTIONAL WORK? | 09:41:53 |
| 17 | A    I DON'T KNOW. | 09:41:55 |
| 18 | Q    OKAY.  AND WHO ARE SOME OF THE CLIENTS THAT | 09:41:56 |
| 19 | YOU DO THAT SORT OF WORK FOR NOW OR ANYTIME DURING THIS | 09:42:13 |
| 20 | POST-2003 PERIOD? | 09:42:16 |
| 21 | A    SOME OF THE OTHER NAMES THAT I PREVIOUSLY | 09:42:17 |
| 22 | MENTIONED I CONTINUE TO REPRESENT.  AND I REPRESENT | 09:42:21 |
| 23 | ABOUT TWO DOZEN OTHER DEVELOPERS AND COMPANIES IN THE | 09:42:24 |
| 24 | VIDEO GAME INDUSTRY, AS WELL AS COMPANIES IN THE | 09:42:29 |
| 25 | LICENSING AND MERCHANDISING INDUSTRY AS WELL. | 09:42:33 |

18

EXHIBIT 7
PAGE 90

| | | |
|---|---|---|
| 1 | Q   CAN YOU GIVE ME JUST A FEW EXAMPLES FROM | 09:42:36 |
| 2 | EACH, THE DEVELOPER'S SIDE AND THE DISTRIBUTOR SIDE? | 09:42:43 |
| 3 | A   I DON'T REPRESENT ANY DISTRIBUTORS IN VIDEO | 09:42:50 |
| 4 | GAME PRODUCTS.  BUT IN ADDITION TO THE NAMES THAT I | 09:42:52 |
| 5 | MENTIONED, I HAVE CLIENTS IN THE PACIFIC NORTHWEST, IN | 09:42:56 |
| 6 | EUROPE AND IN JAPAN AND IN AUSTRALASIA. | 09:43:03 |
| 7 | Q   I NOTICED -- I TOOK A LOOK AT YOUR WEB SITE | 09:43:22 |
| 8 | AND NOTICED THAT YOU'VE DONE A LOT OF SEMINARS AND | 09:43:25 |
| 9 | SPEAKING ENGAGEMENTS. | 09:43:28 |
| 10 | HAVE YOU PUBLISHED ANYTHING ON ANY OF THESE | 09:43:29 |
| 11 | TOPICS, THIS SORT OF LICENSING AND DEVELOPMENT PROCESS? | 09:43:33 |
| 12 | A   I WROTE SOME ARTICLES FOR THE LICENSING BOOK | 09:43:37 |
| 13 | AND ALSO A LICENSING MONTHLY NEWSLETTER PUBLISHED OUT | 09:43:40 |
| 14 | OF CONNECTICUT. | 09:43:46 |
| 15 | Q   WHAT'S -- THE LICENSING BOOK, WHAT WAS THE | 09:43:49 |
| 16 | SPECIFIC TITLE? | 09:43:52 |
| 17 | A   THAT'S A -- | 09:43:52 |
| 18 | Q   IS THAT THE SPECIFIC TITLE? | 09:43:53 |
| 19 | A   THE TITLE OF THE MAGAZINE. | 09:43:53 |
| 20 | Q   OKAY.  AND WHEN WERE THOSE ARTICLES | 09:43:55 |
| 21 | PUBLISHED, DO YOU REMEMBER? | 09:43:59 |
| 22 | A   SOME OF THOSE WERE PUBLISHED IN 1993 AND SOME | 09:44:00 |
| 23 | OF THEM WERE PUBLISHED IN THE LATE '90'S. | 09:44:04 |
| 24 | Q   WHAT WERE THE TOPICS? | 09:44:08 |
| 25 | A   VARIOUS ASPECTS OF ENTERTAINMENT LICENSING, | 09:44:10 |

19

EXHIBIT  7
PAGE  91

| | | | |
|---|---|---|---|
| 1 | Q | DO YOU KNOW IF THOSE WERE DONE IN-HOUSE? | 03:46:22 |
| 2 | A | I DO NOT KNOW. | 03:46:27 |
| 3 | Q | OKAY.   I THINK WE'VE COME TO THE RECORD. | 03:46:28 |
| 4 | | MR. RUSSELL:   GIVEN TO US SO WE CAN FILL OUT | 03:46:45 |
| 5 | A (INDECIPHERABLE) SHEET FOR YOU? | | 03:46:45 |
| 6 | BY MR. MORGAN: | | 03:46:45 |
| 7 | Q | ARE YOU FAMILIAR WITH A PRODUCT LINE NAMES, | 03:46:51 |
| 8 | "PRAYER ANGEL"? | | 03:46:53 |
| 9 | A | FOR WHOM? | 03:46:59 |
| 10 | Q | FOR CONTEMPLATED PRODUCTS FOR MGA. | 03:47:00 |
| 11 | A | NO. | 03:47:03 |
| 12 | Q | AS NAMES FOR BRATZ GIRLZ? | 03:47:04 |
| 13 | | MR. WERDEGAR:   OBJECTION.   VAGUE AND | 03:47:15 |
| 14 | AMBIGUOUS. | | 03:47:17 |
| 15 | | MR. RUSSELL:   LACKS FOUNDATION.   CALLS FOR | 03:47:18 |
| 16 | SPECULATION. | | 03:47:20 |
| 17 | BY MR. MORGAN: | | 03:47:22 |
| 18 | Q | A PRODUCT CALLED "GIRLZ."   A PRODUCT LINE | 03:47:22 |
| 19 | CALLED GIRLZ FOR MGA. | | 03:47:24 |
| 20 | | MR. WERDEGAR:   OBJECTION.   VAGUE. | 03:47:25 |
| 21 | | THE WITNESS:   TRY THAT AGAIN, PLEASE. | 03:47:26 |
| 22 | BY MR. MORGAN: | | 03:47:29 |
| 23 | Q | ARE YOU FAMILIAR WITH A PRODUCT LINE FROM MGA | 03:47:29 |
| 24 | CALLED "GIRLZ"? | | 03:47:33 |
| 25 | A | NO. | 03:47:33 |

241

EXHIBIT _____7_____

PAGE _92_

| | | |
|---|---|---|
| 1 | Q     OKAY.  I'M GOING TO ASK YOU A SERIES OF | 03:47:34 |
| 2 | QUESTIONS ABOUT THE SCOPE OF INSTRUCTIONS THAT YOU MAY | 03:47:39 |
| 3 | HAVE BEEN GIVEN, IF ANY, FOR MGA RELATING TO THE BRYANT | 03:47:42 |
| 4 | AGREEMENT. | 03:47:47 |
| 5 | BASED ON WHAT'S TRANSPIRED TODAY, I ASSUME | 03:47:48 |
| 6 | THAT COUNSEL FOR YOU AND MGA WILL BELIEVE THAT THIS | 03:47:54 |
| 7 | INFORMATION IS PRIVILEGED AND INSTRUCT YOU NOT TO | 03:47:56 |
| 8 | ANSWER, BUT I JUST WANT TO GO AHEAD AND CONFIRM THAT. | 03:47:58 |
| 9 | AT ANY POINT WHEN YOU WERE WORKING ON THE | 03:48:02 |
| 10 | BRYANT AGREEMENT THAT WE'VE BEEN DISCUSSING, DID ANY | 03:48:04 |
| 11 | REPRESENTATIVE OF MGA ASK YOU TO CONFIRM THAT BRYANT | 03:48:07 |
| 12 | CREATED HIS BRATZ DESIGNS IN 1998 BEFORE WORKING FOR | 03:48:12 |
| 13 | MATTEL? | 03:48:17 |
| 14 | MR. RUSSELL:  YES, I WOULD INSTRUCT YOU THAT | 03:48:18 |
| 15 | THAT INVADES THE ATTORNEY-CLIENT PRIVILEGE. | 03:48:19 |
| 16 | BY MR. MORGAN: | 03:48:21 |
| 17 | Q     YOU'LL ACCEPT THAT INSTRUCTION? | 03:48:21 |
| 18 | A     I'LL ACCEPT THAT INSTRUCTION. | 03:48:23 |
| 19 | Q     DID MGA ASK YOU TO CONFIRM WHEN BRYANT WORKED | 03:48:26 |
| 20 | AT MATTEL? | 03:48:27 |
| 21 | MR. RUSSELL:  SAME OBJECTION.  SAME | 03:48:28 |
| 22 | INSTRUCTION. | 03:48:29 |
| 23 | THE WITNESS:  SAME ACCEPTANCE. | 03:48:30 |
| 24 | BY MR. MORGAN: | 03:48:32 |
| 25 | Q     DID MGA ASK YOU TO DO ANY DUE DILIGENCE OR | 03:48:32 |

242

EXHIBIT 1

PAGE 93

| | | |
|---|---|---|
| 1 | INVESTIGATION CONCERNING THE TIME THAT -- TIMING OF | 03:48:36 |
| 2 | BRYANT'S CREATION OF BRATZ? | 03:48:36 |
| 3 | MR. RUSSELL: SAME OBJECTION. SAME | 03:48:38 |
| 4 | INSTRUCTION. | 03:48:40 |
| 5 | THE WITNESS: SAME ANSWER. | 03:48:40 |
| 6 | BY MR. MORGAN: | 03:48:41 |
| 7 | Q DID MGA ASK YOU TO PROVIDE ADVICE AS TO THE | 03:48:41 |
| 8 | LEGAL PROPRIETY OF ITS ACQUISITION OF THE BRATZ PRODUCT | 03:48:45 |
| 9 | LINE? | 03:48:49 |
| 10 | MR. RUSSELL: SAME OBJECTION. SAME | 03:48:50 |
| 11 | INSTRUCTION. | 03:48:51 |
| 12 | THE WITNESS: SAME ANSWER. | 03:48:51 |
| 13 | MR. WERDEGAR: ALSO OBJECT. IT'S VAGUE AS TO | 03:48:52 |
| 14 | "LEGAL PROPRIETY." | 03:48:55 |
| 15 | MR. RUSSELL: JOIN. | 03:48:56 |
| 16 | MR. MORGAN: YEAH. WHOEVER WROTE THAT ONE. | 03:48:57 |
| 17 | MS. BUCHAKJIAN: IT WASN'T ME. | 03:48:59 |
| 18 | MR. MORGAN: IT WAS NOT. FOR THE RECORD, IT | 03:49:03 |
| 19 | WAS NOT TAMAR. | 03:49:04 |
| 20 | Q DID MGA ASK YOU TO PROVIDE LEGAL ADVICE AS TO | 03:49:11 |
| 21 | MATTEL'S POTENTIAL OWNERSHIP INTEREST OF BRATZ? | 03:49:15 |
| 22 | MR. RUSSELL: SAME OBJECTION. SAME | 03:49:19 |
| 23 | INSTRUCTION. | 03:49:21 |
| 24 | THE WITNESS: SAME ANSWER. | 03:49:21 |
| 25 | BY MR. MORGAN: | 03:49:22 |

243

EXHIBIT _7_

PAGE _74_

| | | |
|---|---|---|
| 1 | Q    DID YOU OFFER ANY LEGAL ADVICE TO MGA | 03:49:22 |
| 2 | CONCERNING ITS AGREEMENT -- THIS IS A TERRIBLE ONE, | 03:49:25 |
| 3 | TOO.  LET ME START OVER. | 03:49:28 |
| 4 | DID YOU OFFER ANY LEGAL ADVICE TO MGA | 03:49:31 |
| 5 | CONCERNING BRYANT'S OBLIGATIONS OR POTENTIAL | 03:49:34 |
| 6 | OBLIGATIONS TO MATTEL RELATING TO HIS EMPLOYMENT THERE? | 03:49:36 |
| 7 | MR. RUSSELL:  SAME OBJECTION.  SAME | 03:49:41 |
| 8 | INSTRUCTION. | 03:49:43 |
| 9 | BY MR. MORGAN: | 03:49:43 |
| 10 | Q    YOU'LL ACCEPT? | 03:49:43 |
| 11 | A    YES. | 03:49:47 |
| 12 | Q    DID YOU PROVIDE ANY LEGAL ADVICE TO MGA | 03:49:48 |
| 13 | CONCERNING MGA'S OBLIGATIONS OR POTENTIAL OBLIGATIONS | 03:49:51 |
| 14 | TO MATTEL ARISING FROM MR. BRYANT'S WORK AT MGA? | 03:49:51 |
| 15 | MR. RUSSELL:  SAME OBJECTION.  SAME | 03:49:56 |
| 16 | INSTRUCTION. | 03:49:58 |
| 17 | THE WITNESS:  SAME ANSWER. | 03:49:58 |
| 18 | BY MR. MORGAN: | 03:49:59 |
| 19 | Q    DID YOU ADVISE MGA THAT IF BRYANT CREATED THE | 03:49:59 |
| 20 | BRATZ DRAWINGS WHILE EMPLOYED AT MATTEL, MATTEL MIGHT | 03:50:03 |
| 21 | HAVE AN OWNERSHIP INTEREST IN THEM? | 03:50:06 |
| 22 | MR. RUSSELL:  SAME OBJECTION.  SAME | 03:50:08 |
| 23 | INSTRUCTION. | 03:50:09 |
| 24 | THE WITNESS:  SAME ANSWER. | 03:50:10 |
| 25 | BY MR. MORGAN: | 03:50:12 |

244

EXHIBIT 7

PAGE 95

| | | |
|---|---|---|
| 1 | Q    AND THE SAME QUESTION AS TO ANY DESIGNS, | 03:50:12 |
| 2 | IDEAS, CONCEPTS THAT BRYANT MIGHT HAVE CREATED AT | 03:50:14 |
| 3 | MATTEL? | 03:50:18 |
| 4 | MR. RUSSELL:  SAME OBJECTION.  SAME | 03:50:18 |
| 5 | INSTRUCTION. | 03:50:20 |
| 6 | THE WITNESS:  SAME ANSWER. | 03:50:20 |
| 7 | MR. WERDEGAR:  ALSO WOULD OBJECT THAT IT'S | 03:50:21 |
| 8 | VAGUE AND AMBIGUOUS. | 03:50:23 |
| 9 | MR. RUSSELL:  JOIN. | 03:50:25 |
| 10 | BY MR. MORGAN: | 03:50:31 |
| 11 | Q    HAVE YOU GIVEN ANY LEGAL ADVICE TO MGA AS TO | 03:50:31 |
| 12 | WHAT AN INVENTION IS UNDER ANY AGREEMENT THAT BRYANT | 03:50:35 |
| 13 | MAY HAVE HAD WITH MATTEL? | 03:50:39 |
| 14 | MR. RUSSELL:  SAME OBJECTION.  SAME | 03:50:40 |
| 15 | INSTRUCTION. | 03:50:42 |
| 16 | THE WITNESS:  SAME ANSWER. | 03:50:43 |
| 17 | BY MR. MORGAN: | 03:50:44 |
| 18 | Q    AND DID YOU ADVISE MGA THAT YOU BELIEVED, | 03:50:44 |
| 19 | BASED ON MR. BRYANT'S COMMUNICATIONS TO YOU, THAT HE, | 03:50:50 |
| 20 | INDEED, HAD A CONFIDENTIAL INFORMATION AND INVENTIONS | 03:50:53 |
| 21 | AGREEMENT WITH MATTEL? | 03:50:57 |
| 22 | MR. RUSSELL:  SAME OBJECTION.  SAME | 03:51:00 |
| 23 | INSTRUCTION. | 03:51:02 |
| 24 | THE WITNESS:  SAME ANSWER. | 03:51:02 |
| 25 | MR. MORGAN:  NOTHING FURTHER. | 03:51:04 |

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT 7

PAGE 96

| | | |
|---|---|---|
| 1 | MR. WERDEGAR:  NO QUESTIONS. | 03:51:07 |
| 2 | MR. RUSSELL:  NO QUESTIONS. | 03:51:08 |
| 3 | MR. MORGAN:  I WAS AFRAID WE WERE GOING TO DO | 03:51:09 |
| 4 | THAT. | 03:51:09 |
| 5 | ALL RIGHT.  I ASSUME THERE'S BEEN SOME | 03:51:09 |
| 6 | STANDARD STIPULATIONS FOR HANDLING OF THE TRANSCRIPTS | 03:51:12 |
| 7 | AND -- | 03:51:14 |
| 8 | MS. BUCHAKJIAN:  YES. | 03:51:15 |
| 9 | MR. WERDEGAR:  YES.  "YES" IS THE ANSWER. | 03:51:17 |
| 10 | MR. MORGAN:  ALL RIGHT.  WELL, WE WILL GO | 03:51:19 |
| 11 | WITH WHATEVER THE STANDARD IS. | 03:51:21 |
| 12 | I THINK I ASKED IF THERE WAS ANY RUSH IN THE | 03:51:22 |
| 13 | REVIEW, AND APPARENTLY 30 DAYS IS WHAT WE'VE BEEN DOING | 03:51:25 |
| 14 | AND STILL FINE. | 03:51:27 |
| 15 | MR. RUSSELL:  OKAY. | 03:51:29 |
| 16 | MR. MORGAN:  SO IF THAT WORKS. | 03:51:29 |
| 17 | MR. RUSSELL:  YEAH, THAT WORKS. | 03:51:30 |
| 18 | MR. MORGAN:  WE'LL TRACK DOWN WHATEVER THE | 03:51:30 |
| 19 | SITUATION IS. | 03:51:32 |
| 20 | MR. RUSSELL:  YEAH.  I ASSUME YOU'LL TRANSMIT | 03:51:33 |
| 21 | IT TO ME.  I'LL TRANSMIT IT TO MR. ROSENBAUM -- | 03:51:36 |
| 22 | MR. MORGAN:  YES. | 03:51:36 |
| 23 | MR. RUSSELL:  -- FOR HIS REVIEW AND COMMENT | 03:51:36 |
| 24 | [SIC] AND THEN TRANSMIT IT BACK TO YOU. | 03:51:36 |
| 25 | MR. MORGAN:  SOUNDS RIGHT. | 03:51:36 |

246

EXHIBIT 7

PAGE 97

1   STATE OF CALIFORNIA        )

                              )  SS.

2   COUNTY OF LOS ANGELES     )

3

4

5       I, APRIL CRUZ CACULITAN, CSR 12437, IN AND FOR THE

6   STATE OF CALIFORNIA, DO HEREBY CERTIFY:

7       THAT, PRIOR TO BEING EXAMINED, THE DEPONENT NAMED IN

8   THE FOREGOING DEPOSITION WAS BY ME DULY SWORN TO TESTIFY

9   THE TRUTH, THE WHOLE TRUTH AND NOTHING BUT THE TRUTH;

10      THAT SAID DEPOSITION WAS TAKEN DOWN BY ME IN SHORTHAND

11  AT THE TIME AND PLACE THEREIN NAMED, AND THEREAFTER REDUCED

12  TO TYPEWRITING UNDER MY DIRECTION, AND THE SAME IS A TRUE,

13  CORRECT AND COMPLETE TRANSCRIPT OF SAID PROCEEDINGS.

14      I FURTHER CERTIFY THAT I AM NOT INTERESTED IN THE

15  EVENT OF THE ACTION.

16      WITNESS MY HAND THIS _____13th_____ DAY OF

17  _____FEBRUARY_____, 2008.

18

19

20                          APRIL CRUZ CACULITAN

21                          CERTIFIED SHORTHAND

22                          REPORTER FOR THE

23                          STATE OF CALIFORNIA

24

25

249

EXHIBIT 7

PAGE 98

**EXHIBIT  8**

CEI   FILED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., A DELAWARE )
CORPORATION, )
 )
            PLAINTIFF, )
 )
     V. )     NO. CV 04-9059 DDP (AJWX)
 )
CARTER BRYANT, AN )
INDIVIDUAL, AND DOES 1 )
THROUGH 10, INCLUSIVE, )
 )
            DEFENDANTS. )
_____ )

# C O N F I D E N T I A L

## ATTORNEYS' EYES ONLY

### (PAGES 84 - 124, 160 - 165, 169 - 172, 181 – 202, 217 - 252)

# DEPOSITION OF VICTORIA O'CONNOR

# DECEMBER 6, 2004



REPORTED BY:
PAULA A. PYBURN
CSR. NO. 7304
JOB NO. 04AE373-PP

COURT REPORTERS
700 S. Flower Street
Suite 1100
Los Angeles, California 90017
Office: (213) 955-0070
Fax: (213) 955-0077

EXHIBIT ___8___

PAGE ___99___

1    Q.    YES.  YOU STILL --

2    A.    OKAY.

3    Q.    -- HAVE TO ANSWER THE QUESTION.

4    A.    CAN YOU BE MORE SPECIFIC?

5    Q.    NO, NOT REALLY.  WAS THERE EVER ANYTHING        09:59AM

6    THAT YOU WERE ASKED TO DO THAT YOU -- MADE YOU FEEL

7    KIND OF UNCOMFORTABLE?

8    A.    YES.

9          MS. TORRES:  OBJECTION.  VAGUE.

10         MR. JACOBY:  SAME OBJECTION.                    09:59AM

11   BY MR. QUINN:

12   Q.    AND WHAT WAS THAT?

13   A.    WHEN THE ORIGINAL CONTRACT WAS EXECUTED BY

14   CARTER BRYANT, IT WAS SENT TO ME VIA FAX, AND ON THE

15   TOP OF THE FAX LISTED THE PHONE NUMBER FROM WHERE IT   10:00AM

16   WAS FAXED, WHICH SAID "BARBIE COLLECTIBLES," AND AT

17   ONE POINT MY BOSS, ISAAC LARIAN, ASKED ME TO WHITE

18   THAT OUT AND SEND IT TO A LAWYER, PATTY GLASER.

19         MS. TORRES:  NOW I'M GOING TO INSTRUCT THE

20   WITNESS NOT TO ANSWER WITH RESPECT TO ANY            10:00AM

21   COMMUNICATIONS SHE MAY HAVE HAD WITH COUNSEL FOR

22   MGA.

23         MR. QUINN:  WELL, WE'LL GET TO THAT AS TO

24   WHETHER YOU CAN ACTUALLY MAKE THAT INSTRUCTION, BUT,

25   I MEAN, AT THIS POINT --                             10:00AM

18

EXHIBIT _____ 8

PAGE ___ ( 0 )

1      Q.   DID YOU DO WHAT HE ASKED, DID YOU -- DID

2   YOU WHITE OUT THE LINE THAT SAID "BARBIE

3   COLLECTIBLES"?

4      A.   YES.

5      Q.   DID YOU HAVE ANY DISCUSSION WITH MR. LARIAN          10:01AM

6   AS TO WHY HE WANTED YOU TO WHITE THAT LINE OUT?

7      A.   I DON'T RECALL.

8      Q.   ARE YOU SAYING THAT YOU DON'T RECALL THE

9   SUBSTANCE OF THE DISCUSSION, OR THAT YOU DON'T

10  RECALL WHETHER YOU DISCUSSED THAT SUBJECT AT ALL?          10:01AM

11     A.   I -- I DON'T RECALL THE SUBSTANCE.

12     Q.   SO YOU DO KNOW YOU DISCUSSED THAT

13  INSTRUCTION WITH MR. LARIAN; YOU JUST DON'T RECALL

14  THE SUBSTANCE; IS THAT TRUE?

15     A.   YES.                                               10:01AM

16     Q.   DID YOU DISCUSS THAT WITH MR. LARIAN ONCE

17  OR MORE THAN ONCE, THAT INSTRUCTION TO WHITE OUT THE

18  "BARBIE COLLECTIBLES" HEADING ON THE DOCUMENT?

19     A.   I DON'T RECALL.

20     Q.   DID YOU EVER DISCUSS THAT SUBJECT WITH           10:01AM

21  ANYBODY ELSE AT MGA?

22         MS. TORRES:   I'M GOING TO INSTRUCT THE

23  WITNESS NOT TO ANSWER TO THE EXTENT IT INVOLVES

24  CONVERSATIONS WITH COUNSEL.

25         THE WITNESS:   I DON'T RECALL.                    10:01AM

19

EXHIBIT _____8_____

PAGE ___102___

BY MR. QUINN:

    Q.   DID YOU EVER DISCUSS THAT SUBJECT -- I'M JUST ASKING -- ASKING ABOUT THE SUBJECT NOW, NOT ANY OF THE CONTENT -- WITH ANY ATTORNEY FOR MGA?

    MS. TORRES:  THAT SAME -- SAME INSTRUCTION.   10:02AM

    THE WITNESS:  I ACTUALLY DON'T RECALL.

BY MR. QUINN:

    Q.   WHY -- WHY WAS IT A CONCERN TO YOU THAT THIS CONTRACT SIGNED BY CARTER BRYANT AND WHEN IT CAME OVER THE FAX IT HAD THE HEADING AT THE TOP OF   10:02AM "BARBIE COLLECTIBLES," WHY WAS THAT OF CONCERN TO YOU?

    A.   BECAUSE --

    MS. TORRES:  OBJECTION.  MISSTATES THE WITNESS'S TESTIMONY.   10:02AM

BY MR. QUINN:

    Q.   GO AHEAD.

    A.   I WAS CONCERNED BECAUSE HE WAS STILL EMPLOYED AT MATTEL AT THE TIME THE CONTRACT WAS   10:02AM EXECUTED.

    Q.   DID YOU EXPRESS THAT CONCERN TO ANYBODY AT MGA?

    A.   I'M SURE I DID, BUT I DON'T RECALL SPECIFIC CONVERSATIONS.

    Q.   OKAY.  EVEN THOUGH YOU DON'T RECALL   10:02AM

20

EXHIBIT ___8___

PAGE __103__

1    SPECIFIC CONVERSATIONS, CAN YOU IDENTIFY FOR ME A

2    CLASS OF PEOPLE WHO YOU BELIEVE YOU DISCUSSED THAT

3    WITH?

4         A.   WHAT DO YOU MEAN BY "CLASS"?

5         Q.   WELL, A GROUP, THE PEOPLE WHO YOU -- YOU        10:03AM

6    BELIEVE YOU DISCUSSED IT WITH, EVEN IF YOU CAN'T

7    RECALL THE SPECIFICS OF THE DISCUSSION.

8              MR. JACOBY:   OBJECTION.  ASSUMES FACTS NOT

9    IN EVIDENCE.

10             THE WITNESS:   IT WAS PROBABLY ONE OR TWO       10:03AM

11   INDIVIDUALS; I DON'T REMEMBER IT BEING MORE THAN

12   THAT.

13   BY MR. QUINN:

14        Q.   ALL RIGHT.  AND WHO -- WHO ARE THE ONE OR

15   TWO INDIVIDUALS THAT YOU'RE THINKING OF THAT YOU      10:03AM

16   PROBABLY DISCUSSED IT WITH?

17        A.   ISAAC LARIAN AND PAULA TREANTAFELLES,

18   SPELLED T-R-E-A-N-T-A-F-E-L-L-E-S.

19        Q.   AND THAT'S THE BEST OF YOUR RECOLLECTION?

20        A.   YES.                                         10:03AM

21        Q.   DO YOU BELIEVE THAT YOU DISCUSSED THE FACT

22   THAT MR. BRYANT WAS STILL EMPLOYED BY MATTEL WITH

23   MR. LARIAN ONCE OR MORE THAN ONCE?

24        A.   I'M SORRY, REPEAT THE QUESTION.

25        Q.   DO YOU BELIEVE THAT YOU DISCUSSED THE FACT    10:04AM

21

1  THAT MR. BRYANT WAS STILL EMPLOYED BY MATTEL WHEN HE

2  SIGNED THIS CONTRACT WITH MR. LARIAN ONCE OR MORE

3  THAN ONCE?

4      A.   MORE THAN ONCE.

5      Q.   AND DO YOU RECALL THE SUBSTANCE OF ANY OF          10:04AM

6  THOSE CONVERSATIONS?

7      A.   NO.

8      Q.   CAN YOU GIVE ME APPROXIMATION OF HOW MANY

9  TIMES YOU DISCUSSED WITH MR. LARIAN THE FACT THAT IT

10 WAS TROUBLESOME TO YOU THAT MR. BRYANT WAS SIGNING       10:04AM

11 THIS CONTRACT WHILE HE WAS STILL EMPLOYED BY MATTEL?

12      MS. TORRES:  OBJECTION.  MISSTATES THE

13 WITNESS'S TESTIMONY.

14      THE WITNESS:  I DON'T THINK I SAID IT WAS

15 TROUBLESOME.                                             10:04AM

16 BY MR. QUINN:

17      Q.   ALL RIGHT.  HOW WOULD -- HOW WOULD YOU

18 DESCRIBE IT?  IT WAS OF CONCERN TO YOU?

19      MR. JACOBY:  OBJECTION.  ASKED AND

20 ANSWERED.                                                10:04AM

21      MS. TORRES:  SAME OBJECTION.

22      THE WITNESS:  I DON'T RECALL WHAT -- WHAT

23 THE SUBSTANCE OF OUR CONVERSATION WAS.  I DON'T

24 THINK I SAID TO MR. LARIAN, "I'M CONCERNED THAT"...

25 ///                                                      10:05AM

22

EXHIBIT ___8___

PAGE ___105___

1   WARRANTY THAT HE WAS THE SOLE OWNER OF THE DRAWINGS

2   HE WAS LICENSING TO MGA?

3        MR. QUINN:  VAGUE AND AMBIGUOUS, DOCUMENT

4   SPEAKS FOR ITSELF.

5        THE WITNESS:  YES.                          03:48PM

6   BY MR. JACOBY:

7        Q.   OKAY, AND HE WAS MAKING THE AGREEMENT TO

8   INDEMNIFY MGA IF ANY LAWSUIT AROSE REGARDING THE

9   OWNERSHIP OF THAT PROPERTY?

10       MR. QUINN:  SAME OBJECTION.                  03:48PM

11       THE WITNESS:  YES.

12  BY MR. JACOBY:

13       Q.   OKAY.  IF YOU LOOK AT THE LAST PAGE OF THE

14  DOCUMENT, PAGE 6, YOU LOOK AT THE FAX LINE,

15  OCTOBER 4, '00, 4:38 P.M., DOES THAT REFRESH YOUR   03:48PM

16  RECOLLECTION IN ANY WAY ABOUT WHEN MR. BRYANT

17  ACTUALLY SIGNED THIS AGREEMENT?

18       A.   NO.

19       Q.   OKAY.  SO YOU CAN'T SAY ONE WAY OR THE

20  OTHER IF THE AGREEMENT WAS SIGNED ON OCTOBER 4TH,   03:49PM

21  2000?

22       A.   CORRECT.

23       Q.   OKAY.  WHO SIGNED THIS IT BEHALF OF MGA,

24  CAN YOU TELL WHOSE SIGNATURE THAT IS?

25       A.   YES.                                    03:49PM

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

EXHIBIT ___8___

PAGE ___106___

1     Q.    WHO IS -- WHOSE SIGNATURE IS IT?

2     A.    ISAAC LARIAN.

3     Q.    DO YOU KNOW IF IT WAS SIGNED BEFORE OR

4  AFTER MR. BRYANT SIGNED IT?

5     A.    I --                                            03:49PM

6     Q.    IN OTHER WORDS, WAS MR. BRYANT PRESENTED

7  WITH A SIGNED AGREEMENT, OR DID MR. BRYANT SIGN IT

8  AND THEN MR. LARIAN SIGNED IT?

9     A.    CARTER SIGNED IT FIRST.

10     Q.    OKAY.  YOU KNOW THAT BECAUSE IT WENT TO      03:49PM

11  YOU?

12     A.    I KNOW THAT -- I KNOW THAT BECAUSE IT WENT

13  TO ME, AND ALSO BECAUSE THAT WAS THE PROCEDURE.

14     Q.    PROCEDURE THAT OTHER PEOPLE SIGN FIRST --

15     A.    YES.                                          03:49PM

16     Q.    -- AND THEN MGA SIGNS?

17     A.    YES.

18     Q.    YOU HAVEN'T SPOKEN TO MR. BRYANT AT ANY

19  TIME PRIOR TO HIS -- AFTER RECEIVING THE SUBPOENA

20  FROM MATTEL, HAVE YOU?                                03:50PM

21     A.    NO.

22     Q.    OKAY.

23           ANYTHING ELSE?

24           ARE YOU AWARE THAT MGA HIRED A LAWYER TO

25  ASSIST IT IN THE ACQUIRING OF THE RIGHTS TO THE      03:50PM

226

EXHIBIT  8

PAGE  107

1    BRYANT MATERIALS?

2        A.    I -- I -- I'M CONFUSED.  WHAT DO YOU MEAN?

3        Q.    MGA HIRED AN OUTSIDE LAWYER TO ASSIST IN

4    THE BRYANT NEGOTIATION; CORRECT?

5        A.    YES.                                          03:50PM

6        Q.    OKAY.  THAT'S DAVID ROSENBAUM; CORRECT?

7        A.    YES.

8        Q.    OKAY.  AND DO YOU KNOW FROM -- FROM ANY

9    SOURCE WHETHER MGA EXPRESSLY RAISED THE ISSUE WITH

10   CARTER BRYANT'S LAWYER OF WHETHER MR. BRYANT          03:51PM

11   ACTUALLY OWNED THE RIGHTS TO THE BRATZ DRAWINGS?

12       A.    I DON'T KNOW.

13       Q.    OKAY.

14             I DON'T HAVE ANY FURTHER QUESTIONS.

15             MS. TORRES:  I HAVE JUST A COUPLE.           03:51PM

16

17                      EXAMINATION

18   BY MS. TORRES:

19       Q.    MS. O'CONNOR, ARE YOUR JOB RESPONSIBILITIES

20   AT WARNER BROTHERS SIMILAR TO THE ONES THAT YOU HAD   03:52PM

21   AT MGA BEFORE YOU LEFT?

22       A.    DURING WHICH TIME?

23       Q.    DURING ANY TIME.

24       A.    YES.

25       Q.    OKAY.  WHAT -- TELL ME WHAT YOUR JOB         03:52PM

227

EXHIBIT ___8___

PAGE _108_

1    RESPONSIBILITIES ARE AT WARNER BROTHERS NOW.

2          MR. QUINN:  I'M SORRY, I WAS JUST GOING TO

3    SAY, COULD WE INVITE THE MATTEL COUNSEL BACK IN?

4          MS. TORRES:  WELL, ACTUALLY AFTER THIS

5    QUESTION, NO.                                        03:52PM

6          MR. QUINN:  OKAY, KEEP THEM OUT THEN.

7          THE WITNESS:  I SEEK OUT POTENTIAL

8    LICENSEES TO MANUFACTURE PRODUCTS BASED ON OUR

9    BRANDS.

10   BY MS. TORRES:                                       03:52PM

11      Q.   AND AT SOME POINT IN TIME WHILE YOU WERE

12   EMPLOYED BY MGA, YOU DID SIMILAR WORK?

13      A.   YES.

14      Q.   PRIOR TO CARTER BRYANT SIGNING THE -- THE

15   CONTRACT THAT YOU JUST LOOKED AT WITH MR. JACOBY, DO  03:53PM

16   YOU RECALL ISAAC LARIAN TELLING YOU TO MAKE SURE

17   THAT CARTER BRYANT HAD IN FACT CREATED THE BRATZ

18   DOLLS OUTSIDE OF HIS EMPLOYMENT WITH MATTEL?

19      A.   NO, I DON'T RECALL THAT.

20      Q.   YOU DON'T RECALL ONE WAY OR THE OTHER?       03:53PM

21      A.   CORRECT.

22      Q.   DO YOU RECALL EVER ACTUALLY VERIFYING THAT

23   HE HAD CREATED THE BRATZ DOLLS OUTSIDE OF HIS

24   EMPLOYMENT WITH MATTEL?

25      A.   NO.                                          03:53PM

A&E COURT REPORTERS  (213) 955-0070  FAX: (213) 955-0077

EXHIBIT ___8___

PAGE ___109___