1    SINGLE PERSON THAT YOU HIRED, BUT IF YOU COULD DESCRIBE

2    FOR ME THE -- THE GROWTH OF THE DEPARTMENT.

3            DID IT -- YOU KNOW, WAS IT ALL AT ONCE, THERE

4    WAS A FEW AND THEN -- HOW DID IT GO?

5        A    IT WAS GRADUAL.  I HIRED ROUGHLY THREE PEOPLE

6    IN THE FIRST FOUR TO SIX MONTHS AND CONTINUED TO HIRE

7    OVER THE NEXT COUPLE OF YEARS.

8        Q    AND DO YOU KNOW HOW MANY PEOPLE ARE IN THE

9    DEPARTMENT NOW?

10       A    I BELIEVE THERE'S 16.

11       Q    AND YOU'VE MOVED INTO A DIFFERENT ROLE NOW;

12   RIGHT?

13       A    YES.

14       Q    OKAY.  AND WHEN DID YOU MOVE INTO YOUR

15   CURRENT ROLE?

16       A    LAST SUMMER.  EXCUSE ME.

17       Q    AND WHAT'S YOUR TITLE NOW?

18       A    DIRECTOR OF CREATIVE DEVELOPMENT.

19       Q    AND THEY -- THE ART DEPARTMENT, THE CHARACTER

20   ART FOLKS, THEY WORK FOR SOMEBODY ELSE DIFFERENT --

21   SOMEBODY DIFFERENT NOW?

22       A    THE WAY WE ARE SET UP IS THERE'S A V.P. OVER

23   ME, AND THEN THERE ARE THREE DIRECTORS, AND THEN THE

24   ART TEAM UNDER THE DIRECTORS.

25       Q    OKAY.        BY        EXHIBIT  17

                                      PAGE  353

                                                      41

```
1        A     AND NONE OF THE ARTISTS REPORT DIRECTLY IN TO

2    ME RIGHT NOW.

3        Q     WHO'S THE V.P. THAT'S -- WHO'S OVER YOU?

4        A     ED RODRIGUEZ.

5        Q     DO YOU KNOW WHAT HIS TITLE IS?

6        A     NOT EXACTLY.

7        Q     DO YOU KNOW -- CAN YOU DESCRIBE FOR ME WHAT

8    DIVISION HE'S IN CHARGE OF?

9        A     I'D SAY --

10       Q     BUSINESS UNIT OR --

11       A     -- CREATIVE DEVELOPMENT.

12       Q     AND THEN THERE'S THREE DIRECTORS UNDER HIM;

13   RIGHT?

14       A     YES.

15       Q     AND ONE OF THEM'S YOU?

16       A     YES.

17       Q     OKAY.  AND WHO ARE THE OTHERS?

18       A     MIKE CUKAR.

19       Q     SPELL HIS LAST NAME?

20       A     C-U-K-A-R.

21       Q     OKAY.

22       A     AND JOEL.

23       Q     JOEL?

24       A     ANDREWS.

25       Q     ANDREWS.
```

EXHIBIT ___17___

PAGE ___354___

42

```
1    DIFFERENT PIECES OF ART?

2            MR. HANSEN:  OBJECT TO THE FORM.  HER

3    OPINIONS ARE SET FORTH IN HER REPORT.

4    BY MR. ALGER:

5        Q    CAN YOU ANSWER THAT QUESTION?

6        A    I DON'T QUITE UNDERSTAND HOW TO -- WHAT YOU

7    MEAN BY --

8        Q    OKAY.  WELL, LET ME BACK UP.

9            IN YOUR REPORT YOU SAID THAT YOU MADE

10   OBSERVATIONS -- I'LL READ IT TO YOU FROM YOUR REPORT,

11   ON PAGE 7.

12           MR. HANSEN:  CAN YOU TELL ME WHAT PAGE?

13           MR. ALGER:  PAGE 7.  THAT'S PART OF IT.

14           MR. HANSEN:  GO AHEAD.

15   BY MR. ALGER:

16       Q    BEGINNING OF THE FIRST FULL PARAGRAPH, I'LL

17   READ TO YOU:

18               "IN CONDUCTING THE ANALYSIS REQUESTED

19            BY MGA'S LAWYERS, I FIRST MADE

20            OBSERVATIONS REGARDING CARTER'S PRE-MGA

21            DRAWING REFERENCED ABOVE."

22           DO YOU HEAR THAT?

23       A    YES.

24       Q    OKAY.  SO YOU -- YOU'VE -- YOU'VE MADE SOME

25   OBSERVATIONS OF SOME PRE-MGA DRAWINGS; RIGHT?
```

95

EXHIBIT 17

PAGE 355

1    A    YES.

2    Q    OKAY.  AND IT WAS YOUR UNDERSTANDING THAT THE

3  DRAWINGS THAT YOU WERE SHOWN WERE PREPARED BY

4  CARTER BRYANT BEFORE HE JOINED MGA; RIGHT?

5    A    YES.

6    Q    AND THEY INCLUDED MATERIALS THAT YOU SAY IN

7  YOUR REPORT YOU UNDERSTOOD WERE PITCH MATERIALS; RIGHT?

8    A    YES.

9    Q    OKAY.  AND YOU FORMED -- YOU FORMED AN

10  OPINION REGARDING THOSE DRAWINGS; RIGHT?

11    A    YES.

12    Q    OKAY.  AND YOU ALSO EXPRESSED OPINIONS IN

13  YOUR REPORT REGARDING THE DIFFERENCES BETWEEN THOSE

14  DRAWINGS AND THE DRAWINGS THAT ARE NOW APPEARING ON

15  BRATZ DOLL PACKAGING FROM MGA; RIGHT?

16    A    YES.

17    Q    OKAY.  AND YOU ALSO EXPRESSED AN OPINION

18  REGARDING CHANGES OVER THE COURSE OF TIME IN BRATZ'S

19  PACKAGING ARTWORK; RIGHT?

20    A    YES.

21    Q    OKAY.  AND SO MY QUESTION TO YOU IS:  ALL

22  THAT BEING TAKEN INTO CONSIDERATION, DID YOU EVER

23  CONSIDER WHETHER YOU SHOULD LOOK AT BRATZ ARTWORK THAT

24  WAS IN YOUR ARCHIVES?

25    A    NO.

EXHIBIT ___17___

PAGE ___356___

1      Q    OKAY.  AND WHY -- WHY DID YOU FEEL THAT YOU

2  DID NOT NEED TO LOOK AT ANY OF THOSE MATERIALS THAT

3  WERE IN YOUR ARCHIVES?

4      A    WHAT I HAD TO COMPARE SEEMED TO BE ALL THAT I

5  NEEDED TO -- TO LOOK AT.

6      Q    AND THE MATERIAL THAT YOU WERE GIVEN TO LOOK

7  AT WAS MATERIAL THAT THE LAWYERS HAD GIVEN YOU; RIGHT?

8      A    YES.  AND SOME OF THE -- THE CHARACTER ART

9  WAS ALREADY IN MY POSSESSION.

10     Q    AND WE'LL GET INTO THOSE EXHIBITS TO YOUR

11 REPORT SHORTLY.

12          DID YOU -- DID YOU INFORM THE LAWYERS THAT

13 YOU HAD -- MAY HAVE HAD -- MAY HAVE SOME OTHER

14 MATERIALS THAT WERE IN ARCHIVE THAT COULD BEAR ON YOUR

15 OPINIONS?

16          MR. HANSEN:  OBJECT TO THE FORM.  AND, ALSO,

17 THIS IS A STIPULATION ISSUE OF DID YOU INFORM THE

18 LAWYERS.  THIS IS SPECIFICALLY IN THE STIPULATION ABOUT

19 DISCUSSIONS WITH COUNSEL, SO I'M GOING TO OBJECT BASED

20 ON THE STIPULATION.

21 BY MR. ALGER:

22     Q    DID YOU -- DID YOU CONCLUDE, IN WORKING ON

23 YOUR REPORT, FORMING YOUR OPINIONS AND PREPARING FOR

24 YOUR DEPOSITION, THAT YOU HAD SUFFICIENT MATERIALS,

25 RESOURCE MATERIALS AND EVIDENCE TO PROVIDE A BASIS FOR

1  THE OPINION EXPRESSED IN YOUR REPORT?

2      A    I LOST TRACK OF THE VERY BEGINNING, WHICH IS

3  WHAT I NEED TO ANSWER.  SO I'M SORRY, CAN YOU PLEASE

4  REPEAT.

5          MR. ALGER:  OKAY.  CAN YOU READ IT.  THANKS.

6              (RECORD READ.)

7          THE WITNESS:  YES.

8  BY MR. ALGER:

9      Q    DID YOU EVER CONSIDER THAT YOU MIGHT -- THAT

10 OTHER MATERIALS MIGHT BE PERTINENT TO THE OPINION THAT

11 YOU FORMED?

12     A    I'M NOT SURE I UNDERSTAND EXACTLY.  IF YOU

13 COMPARE DIFFERENT THINGS, YOU KNOW, THERE'S -- THERE

14 ALWAYS CAN BE MORE THINGS TO COMPARE.  I'M SORRY.  I

15 DON'T QUITE UNDERSTAND.

16     Q    YOU -- IN YOUR REPORT, THE VERY BEGINNING OF

17 YOUR REPORT, YOU -- YOU WROTE THE FOLLOWING, OR SOMEONE

18 WROTE FOR YOU, QUOTE --

19         MR. ALGER:  THIS IS ON PAGE 1, COUNSEL.

20         MR. HANSEN:  OBJECT TO THE FORM, BUT YOU CAN

21 GO AHEAD.

22 BY MR. ALGER:

23     Q    OKAY.  BOTTOM OF PAGE 1.

24             "BECAUSE I DO NOT WRITE" --

25         MR. HANSEN:  DO YOU WANT HER TO NOT LOOK AT

98

EXHIBIT  17

PAGE  358

1    CARTER.

2         Q    OKAY.  THAT'S AN UNDERSTANDING YOU GOT FROM

3    COUNSEL; RIGHT?

4         A    I MEAN, I KNOW HE CREATED THEM.  SO I GUESS

5    WHOM THEY BELONGED TO IS NOT SOMETHING I THOUGHT ABOUT.

6         Q    OKAY.  AND YOU DON'T KNOW ONE WAY OR ANOTHER

7    WHO THEY BELONG TO?  DO YOU HAVE -- WELL, STRIKE THAT.

8              DO YOU HAVE AN OPINION AS TO WHO THEY BELONG

9    TO?

10        A    I KNOW WHO CREATED THEM, SO I ASSUME THEY

11   BELONG TO THE PERSON WHO RECREATED THEM.

12        Q    AND HOW DO YOU KNOW THAT -- WHO CREATED THEM?

13        A    I WAS TOLD WHO CREATED THEM.

14        Q    OKAY.  SO YOU WERE TOLD BY COUNSEL THAT

15   CARTER BRYANT CREATED THEM; RIGHT?

16        A    YES.

17        Q    OKAY.  AND BECAUSE OF THAT, YOU'VE CONCLUDED

18   THAT THEY BELONG TO CARTER BRYANT; RIGHT?

19        A    YES.

20        Q    OKAY.  AND IF YOU WERE -- IF YOU LEARNED THAT

21   THOSE DRAWINGS ACTUALLY BELONGED TO MATTEL, WOULD IT

22   CHANGE YOUR OPINIONS IN THIS CASE?

23        A    NO.  MY OPINION IS NOT BASED ON WHO THEY

24   BELONG TO.

25        Q    OKAY.  YOUR OPINION -- YOU'RE EXPRESSING NO

103

EXHIBIT _17_

PAGE _359_

1    OPINION AS TO THE OWNERSHIP OF THOSE DRAWINGS; RIGHT?

2         A    NO.

3         Q    OKAY.  DO YOU HAVE ANY OPINION AS TO THE

4    SOURCE OF THE CONCEPTS THAT ARE REPRESENTED IN THESE

5    DRAWINGS?

6         A    I'M SORRY.  I'M NOT QUITE UNDERSTANDING

7    THE --

8         Q    DO YOU HAVE ANY OPINION REGARDING WHERE THE

9    IDEAS OR CONCEPTS THAT ARE EMBODIED IN THOSE SKETCHES

10   CAME FROM?

11        A    THEY CAME FROM CARTER.  THAT'S MY

12   UNDERSTANDING.

13        Q    AND THAT'S FROM COUNSEL; RIGHT?

14        A    YES.

15        Q    OKAY.  AND YOU DON'T HAVE ANY OPINION ON

16   WHETHER -- ON WHAT THE INFLUENCES THAT -- WHAT CARTER'S

17   INFLUENCES WERE WHEN HE PREPARED THOSE SKETCHES; RIGHT?

18        A    NO.

19        Q    OKAY.  YOU JUST DON'T KNOW ONE WAY OR

20   ANOTHER; RIGHT?

21        A    I DON'T KNOW.

22        Q    YOU -- YOU WERE JUST PRESENTED WITH THE PITCH

23   MATERIALS; RIGHT?

24        A    YES.

25        Q    OKAY.  AND THEN YOU WERE ASKED TO DO WHAT?

1       A    I WAS ASKED TO COMPARE THE PITCH MATERIALS TO

2    ARTWORK THAT WAS CREATED BY MGA EMPLOYEES.

3       Q    OKAY.  AND -- AND WHAT -- WHAT ARTWORK DID

4    YOU COMPARE IT TO?

5       A    THE DIFFERENT EXHIBITS THAT ARE IN MY REPORT.

6       Q    WE'LL TALK ABOUT THE EXHIBITS IN THE MINUTE.

7            BUT THE EXHIBITS THAT INCLUDED IMAGES, A

8    COMPARISON OF IMAGES -- EXCUSE ME -- WERE THEY PREPARED

9    BY YOU OR PREPARED BY COUNSEL?

10      A    THEY WERE PREPARED -- IF I'M UNDERSTANDING

11   THE ONES YOU'RE REFERRING TO EXACTLY, THEY WERE

12   PREPARED BY ME.

13      Q    OKAY.  DO YOU HAVE ANY UNDERSTANDING AS TO

14   WHAT MATTEL'S ALLEGATIONS ARE AGAINST MGA IN THIS CASE?

15      A    NO.

16      Q    DO YOU HAVE ANY UNDERSTANDING AS TO WHAT

17   MATTEL'S ALLEGATIONS AGAINST CARTER BRYANT ARE IN THIS

18   CASE?

19      A    NOT CLEAR.  I HAVE SOME IDEA BASED ON WHAT I

20   WAS ASKED TO DO.

21      Q    OKAY.  WHAT IS YOUR UNDERSTANDING?

22      A    I ASSUME THAT -- I'M TRYING TO FIGURE OUT HOW

23   TO FORMULATE IT -- THAT SOMEHOW MATTEL FEELS LIKE THEY

24   HAVE SOME CLAIM OVER THE ARTWORK THAT CARTER CREATED.

25      Q    OKAY.  ANYTHING ELSE?

1    A    NO.

2    Q    DO YOU KNOW WHETHER MATTEL HAS MADE ANY

3  ALLEGATIONS REGARDING THE ARTWORK ON BRATZ PACKAGING?

4    A    I DON'T KNOW.

5    Q    BY THE WAY, I ASKED YOU SOME QUESTIONS ABOUT

6  BRATZ EARLIER BEFORE THE BREAK.  AND WHEN I REFER TO

7  "BRATZ," ARE YOU VIEWING IT AS THE DOLLS OR THE OTHER

8  ITEMS THAT BEAR THE BRATZ NAMES, SUCH AS PETZ AND BOYZ

9  AND LIL' BRATZ AND SO FORTH?

10    A    I ASSUME THAT WE'RE MOSTLY TALKING ABOUT

11  CHARACTER ART, THE ARTWORK THAT IS CREATED.  THAT'S

12  WHAT I DEAL WITH MOSTLY, SO --

13    Q    SO -- REMEMBER WHEN I ASKED YOU SOME

14  QUESTIONS ABOUT DAVID DEES, AND I ASKED YOU WHETHER HE

15  HAD WORKED ON ANY BRATZ PROJECTS?  DO YOU RECALL THAT

16  TESTIMONY?

17    A    YES.

18    Q    OKAY.  AND I THINK I ASKED YOU WHETHER HE HAD

19  WORKED ON BRATZ SINCE YOU CAME TO MGA.

20        DO YOU REMEMBER THAT QUESTION?

21    A    I DON'T REMEMBER YOU ASKING ME THAT WAY.

22    Q    OKAY.  I MIGHT NOT HAVE, SO -- BECAUSE I

23  DIDN'T HAVE THE LUXURY OF THE COMPUTER AT THAT POINT.

24    A    OKAY.

25    Q    SO WHY DON'T I ASK IT AGAIN SO WE CAN JUST

106

EXHIBIT  17

PAGE  362

1   ACROSS ANY HARD COPY OR NONELECTRONIC RENDERINGS BY

2   DAVID DEES?

3          MR. HANSEN:  THIS IS -- FIRST OF ALL, IT'S

4   BEEN ASKED AND ANSWERED.  SECOND OF ALL, I'VE GIVEN

5   MORE THAN ENOUGH LEEWAY ON THIS.  IT HAS NOTHING TO DO

6   WITH THE REASON THAT SHE'S HERE TODAY.

7          SO I'LL INSTRUCT YOU NOT TO ANSWER.

8          I'VE BEEN MORE THAN GENEROUS ON THIS.  AND

9   THAT'S ALREADY BEEN ASKED AND ANSWERED.

10         MR. ALGER:  WELL, WE DISAGREE WITH YOU,

11  COUNSEL.

12         MR. HANSEN:  THAT'S FINE.

13         MR. ALGER:  LET'S MARK THE NEXT IN ORDER.

14  WHAT'S THE NUMBER?

15         MS. FRAHN:  OH, 4931.

16         MR. ALGER:  WOW.  4931.  AND THAT WILL BE THE

17  MIDDLETON REPORT.

18                (DEFENDANT'S EXHIBIT 4931 WAS MARKED FOR

19                IDENTIFICATION.)

20  BY MR. ALGER:

21     Q    AND WE'RE HANDING YOU THE 4931, WHICH IS THE

22  EXPERT REPORT OF DEBORA MIDDLETON.  AND THE EXHIBITS

23  ARE NOT ATTACHED TO THIS DOCUMENT.  WE'LL BE BRINGING

24  THOSE OUT IN A MINUTE.

25                AND IF YOU NEED -- IF, IN ANSWERING ANY OF MY

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

EXHIBIT ___17___

PAGE ___363___

```
 1    QUESTIONS, YOU FEEL A NEED TO REFER TO ANY EXHIBITS,

 2    LET ME KNOW, AND WE'LL -- WE'LL BRING THEM OUT AND

 3    WE'LL MARK THEM.

 4        A    OKAY.

 5        Q    IF YOU DON'T MIND, LET'S GO TO PAGE 1 OF THE

 6    REPORT.  THIS IS THE FIRST PAGE AFTER THE COVER.

 7             GOING TO THE SECOND PARAGRAPH, IT READS:

 8                 "IN CONNECTION WITH THE LEGAL CLAIMS

 9             ASSERTED BY MATTEL AGAINST MGA RELATING TO

10             BRATZ, OUTSIDE COUNSEL FOR MGA HAS

11             REQUESTED THAT I REVIEW BRATZ

12             TWO-DIMENSIONAL CHARACTER ART USED SINCE

13             THE INTRODUCTION OF THE BRAND AND

14             DETERMINE WHETHER THE SAID ART WAS COPIED

15             OR APPROPRIATED FROM DRAWINGS MADE BY

16             CARTER BRYANT PRIOR TO HIS LEAVING HIS

17             EMPLOYMENT AT MATTEL," PAREN, "WHICH I

18             UNDERSTAND WAS ON OR ABOUT OCTOBER 19TH

19             2000," CLOSE PAREN, PERIOD.

20             OKAY.  FOCUSING ON THAT SENTENCE, WHAT'S YOUR

21    UNDERSTANDING OF THE -- OF THE WORD "COPIED" AS YOU USE

22    IT HERE IN THIS SENTENCE?

23        A    WELL, IN THE ART WORLD THAT I WORK IN, WE --

24    YOU REPRODUCE ARTWORK.  SO CLOE, ONE OF THE BRATZ

25    CHARACTERS, SHE LOOKS A CERTAIN WAY AND SHE'S BEEN
```

110

EXHIBIT  17

PAGE  364

1   REPRODUCED IN DIFFERENT FASHIONS AND DIFFERENT ART

2   STYLES OVER THE YEARS.  SO -- SO YOU'RE ASKING ME HOW

3   I'M USING THE WORD "COPIED"?

4        Q    YES.

5        A    SO WHETHER -- SO WHETHER IT WAS SOMETHING WAS

6   TAKEN DIRECTLY FROM OR ...

7        Q    IS THAT YOUR ANSWER?

8        A    YES.

9        Q    OKAY.  AND THEN THE NEXT -- AFTER IT SAYS --

10  OR IT HAS THE WORD "APPROPRIATED," WHAT'S YOUR

11  UNDERSTANDING OF THE WORD "APPROPRIATED" AS YOU USE IT

12  IN THIS SENTENCE?

13       A    AGAIN, IT'S VERY SIMILAR.  IT WOULD BE, YOU

14  KNOW, TAKEN FROM THE -- THE ARTWORK THAT CARTER HAD

15  DONE.

16       Q    OKAY.  YOU -- AND WHEN YOU TALKED ABOUT

17  COPIES, YOU MENTIONED TAKEN DIRECTLY.  AND NOW, WHEN I

18  ASKED YOU ABOUT "APPROPRIATED," YOU JUST SAID TAKEN

19  FROM THE ARTWORK THAT CARTER HAD DONE.

20            IS THERE A DIFFERENCE BETWEEN THE TWO IN YOUR

21  VIEW AS TO YOUR USE OF THE TWO WORDS, "COPIED" AND

22  "APPROPRIATED"?

23       A    NO.

24       Q    SO IS IT -- DO YOU MEAN TAKEN DIRECTLY OR DO

25  YOU MEAN JUST TAKEN?

111

EXHIBIT  17

PAGE  365

```
 1        A    WELL, ELEMENTS THAT WOULD HAVE BEEN, YOU

 2   KNOW, TAKEN FROM.

 3        Q    TAKEN FROM WHAT?

 4        A    FROM CARTER'S ARTWORK.

 5        Q    THEN LET'S GO ON TO THE NEXT SENTENCE.   IT

 6   READS:

 7             "IN THIS CONNECTION, ALTHOUGH I AM

 8             NOT A LAWYER AND DO NOT INTERFACE WITH

 9             LAWYERS ON A ROUTINE BASIS, I UNDERSTAND

10             THE CONCEPT OF ARTWORK BEING COPIED OR

11             APPROPRIATED FROM AN EARLIER WORK, ON ONE

12             HAND, OR BEING AN INDEPENDENT CREATION, ON

13             THE OTHER."

14             SO MY QUESTION TO YOU, THEN, IS:  WHAT DO YOU

15   MEAN HERE, WHEN YOU TALK IN TERMS OF "AN INDEPENDENT

16   CREATION"?

17        A    SOMETHING THAT IS CREATED WITHOUT RELYING ON

18   ANOTHER PIECE OF ARTWORK.

19        Q    WE SPOKE EARLIER IN TERMS OF -- WE SPOKE

20   EARLIER, WHEN YOU WERE EDUCATING ME ABOUT CHARACTER

21   ART, ON THE -- ABOUT THE USE OF REFERENCES AND

22   PREEXISTING ART.

23             DO YOU RECALL THAT TESTIMONY?

24        A    I BELIEVE I RECALL THE PARTS THAT YOU'RE

25   TALKING ABOUT.
```

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

EXHIBIT _____ 17

PAGE _____ 366

1    STATE OF CALIFORNIA        )
                                )  SS.
2    COUNTY OF LOS ANGELES      )

3

4

5        I, APRIL CRUZ CACULITAN, CSR 12437, IN AND FOR THE

6    STATE OF CALIFORNIA, DO HEREBY CERTIFY:

7        THAT, PRIOR TO BEING EXAMINED, THE DEPONENT NAMED IN

8    THE FOREGOING DEPOSITION WAS BY ME DULY SWORN TO TESTIFY THE

9    TRUTH, THE WHOLE TRUTH AND NOTHING BUT THE TRUTH;

10       THAT SAID DEPOSITION WAS TAKEN DOWN BY ME IN SHORTHAND

11   AT THE TIME AND PLACE THEREIN NAMED, AND THEREAFTER REDUCED

12   TO TYPEWRITING UNDER MY DIRECTION, AND THE SAME IS A TRUE,

13   CORRECT AND COMPLETE TRANSCRIPT OF SAID PROCEEDINGS.

14       I FURTHER CERTIFY THAT I AM NOT INTERESTED IN THE EVENT

15   OF THE ACTION.

16   WITNESS MY HAND THIS _____21 st_____ DAY OF

17   _March_____, 2008.

18

19

20                     APRIL CRUZ CACULITAN

21                     CERTIFIED SHORTHAND

22                     REPORTER FOR THE

23                     STATE OF CALIFORNIA

24

25

314

**EXHIBIT 18**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1            UNITED STATES DISTRICT COURT
 2          CENTRAL DISTRICT OF CALIFORNIA
 3              EASTERN DIVISION          Certified Copy
 4
 5     -------------------------------
 6     MATTEL, INC., a Delaware        )
 7     Corporation,                    )
 8              Plaintiff,             )
 9          vs.                       ) No. CV 04-9059
10     CARTER BRYANT, an individual;   )   NM (RNBx)
11     and DOES 1 through 10,          )  VOLUME I
12     Inclusive,                      )
13              Defendants.            )
14     -------------------------------)
15     (COMPLETE CAPTION ON NEXT PAGE.)
16
17         CONFIDENTIAL - ATTORNEYS' EYES ONLY
18
19       Videotaped Deposition of HOI HOFFMAN-BRIGGS,
20       at 300 South Grand Street, Los Angeles,
21       California, commencing at 9:22 A.M.,
22       Monday, January 21, 2008, before Ricki Q.
23       Melton, CSR No. 9400, RPR No. 45429.
24
25     PAGES 1 - 265
                                                    1
```

EXHIBIT ____18____

PAGE ____368____

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA

 3                 EASTERN DIVISION

 4

 5     -------------------------------

 6     MATTEL, INC., a Delaware        )

 7     Corporation,                    )

 8                 Plaintiff,          )

 9                 vs.                 ) No. CV 04-9059

10     CARTER BRYANT, an individual;   )   NM (RNBx)

11     and DOES 1 through 10,          )

12     Inclusive,                      )

13                 Defendants.         )

14     ------------------------------- )

15     CARTER BRYANT, on behalf of     )

16     himself, all present and        )

17     former employees of Mattel,     )

18     Inc., and the general public,   )

19                 Counter-Claimants,  )

20                 vs.                 )

21     MATTEL, INC., a Delaware        )

22     Corporation,                    )

23                 Counter-Defendant.  )

24     -------------------------------

25
```

                                                          2

Veritext National Deposition & Litigation Services
866 299-5127

EXHIBIT  18

PAGE  369

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES OF COUNSEL:

 2

 3        FOR THE PLAINTIFF:

 4

 5            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

 6            BY:  MICHAEL T. ZELLER, ESQ.

 7            865 South Figueroa Street, Tenth Floor

 8            Los Angeles, California 90017

 9            (213) 443-3000

10            michaelzeller@quinnemanuel.com

11

12                    -and-

13

14            MATTEL, INC.

15            BY:  MICHAEL MOORE, ESQ.

16            333 Continental Boulevard

17            El Segundo, California 90245-5012

18            (310) 252-2000

19            michael.moore@mattel.com

20

21

22

23

24

25
                                                    3
```

EXHIBIT _____ 18

PAGE _____ 370

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES (Continued):

 2

 3        FOR THE DEFENDANT AND COUNTERCLAIMANT

 4        CARTER BRYANT:

 5

 6            KEKER & VAN NEST LLP

 7            BY:  JOHN TRINIDAD, ESQ.

 8            710 Sansome Street

 9            San Francisco, California 94111-1704

10            (415) 391-5400

11            jtrinidad@kvn.com

12

13        FOR DEFENDANT MGA ENTERTAINMENT, INC.:

14

15            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

16            BY:  ROBERT J. HERRINGTON, ESQ.

17            Four Times Square

18            New York, New York 10036-6522

19            (212) 735-3000

20            kplevan@skadden.com

21            micampan@skadden.com

22

23    ALSO PRESENT:

24            VIDEO OPERATOR - DAVID WEST

25
                                                        4
```

EXHIBIT _18_

PAGE _371_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | A.   Yes. | 11:33:03 |
| 2 | Q.   Have you ever been worried about being | 11:33:04 |
| 3 | laid off at Mattel? | 11:33:08 |
| 4 | A.   For 20-some years I work there, I see a | 11:33:12 |
| 5 | lot of layoffs.  I do worry about it. | 11:33:16 |
| 6 | Q.   But you don't worry about it? | 11:33:22 |
| 7 | A.   I do worry about it. | 11:33:23 |
| 8 | Q.   You do worry about it. | 11:33:25 |
| 9 |      Have you ever been told by anyone at | 11:33:25 |
| 10 | Mattel that you were at risk of losing your job? | 11:33:32 |
| 11 | A.   No. | 11:33:35 |
| 12 | Q.   No. | 11:33:37 |
| 13 |      Have you ever been -- has anybody ever | 11:33:37 |
| 14 | threatened to fire you at Mattel? | 11:33:53 |
| 15 | A.   No. | 11:33:56 |
| 16 |      MR. HERRINGTON:   Let's go ahead and take a | 11:34:01 |
| 17 | break and change the tape, then. | 11:34:02 |
| 18 |      VIDEO OPERATOR:   Off the record.  11:34. | 11:34:04 |
| 19 |      (Off the record.) | 11:34:07 |
| 20 |      VIDEO OPERATOR:   The time is 11:56 A.M. | 11:55:57 |
| 21 | We are back on the record.  This is tape No. 2 in | 11:55:59 |
| 22 | the deposition of Hoi Hoffman-Briggs. | 11:56:02 |
| 23 |      All parties may continue. | 11:56:04 |
| 24 | BY MR. HERRINGTON: | 11:56:06 |
| 25 | Q.   Ms. Briggs, before the break, we were | 11:56:07 |

102

EXHIBIT __18__

PAGE __372__