1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue
3  Los Angeles, CA 90071-3144
   Tel.: (213) 687-5000/Fax: (213) 687-5600
4
   RAOUL D. KENNEDY (Bar No. 40892)
5  (rkennedy@skadden.com)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  4 Embarcadero Center, 38th Floor
   San Francisco, CA 94111-5974
7  Tel.: (415) 984-6400 / Fax: (415) 984-2698

8  Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
   MGAE de Mexico, S.R.L. de C.V., and Isaac Larian
9

10

11

12

13

14

15                    UNITED STATES DISTRICT COURT

16                   CENTRAL DISTRICT OF CALIFORNIA

17  CARTER BRYANT, an individual,        )  CASE NO. CV 04-9049 SGL (RNBx)
                                         )
18                     Plaintiff,        )  Consolidated with Case No. CV 04-
                                         )  09039 and Case No. CV 05-02727
19          v.                           )  [PUBLIC REDACTED]
                                         )  DECLARATION OF MARCUS R.
20  MATTEL, INC., a Delaware             )  MUMFORD IN SUPPORT OF
    corporation,                         )  MGA'S MOTION OBJECTING TO
21                                       )  DISCOVERY MASTER'S MARCH
                       Defendant.        )  17, 2008 ORDER RE MOTION TO
22                                       )  COMPEL PRODUCTION OF
                                         )  DOCUMENT NOS. M0199767-68
23                                       )  AND M0199769-70
                                         )
24  AND CONSOLIDATED ACTIONS             )
                                         )  Date:  April 28, 2008
25                                       )  Time:  10:00 a.m.
                                         )  Judge: Honorable Stephen G. Larson
26                                       )  Place: Courtroom 1
                                         )
27

28  Declaration of Marcus R. Mumford in Support of MGA's and Bryant's Motion Objection to Discovery Master's March
    17, 2008 Order
    Case No. CV 04-9049 SGL (RNBx)
    -1-

1    I, Marcus R. Mumford, declare and state as follows:

2         1.    I am an attorney licensed to practice law in the State of California and

3    am an associate at the law firm of Skadden, Arps, Slate, Meagher & Flom LLP,

4    attorneys of record for MGA Entertainment, Inc., Isaac Larian, MGA Entertainment

5    (HK) Limited, and MGAE de Mexico S.R.L. de C.V. , in the above-captioned matter.

6    I submit this Declaration in Support of MGA's and Carter Bryant's Motion Objecting

7    To Discovery Master's March 17, 2008 Order Re Motion To Compel Production of

8    Documents Nos. M0199767-68 and M0199769-70.  Unless otherwise stated, I have

9    personal knowledge of the facts set forth below and, if called as a witness, I could

10   and would testify competently thereto.

11        2.    Attached as **Exhibit 1** hereto is a true and correct copy of Mattel, Inc.'s

12   Opposition To Motion of MGA Entertainment, Inc. and Carter Bryant For

13   Terminating Sanctions, dated August 13, 2007.

14        3.    Attached as **Exhibit 2** hereto is a true and correct copy of Michael

15   Moore's Affidavit In Support of Mattel Inc.'s Opposition To MGA Entertainment

16   Inc.'s Motion For Terminating Sanctions Due To Spoliation Of Evidence, dated

17   September 10, 2007.

18        4.    On January 17, 2008, Timothy Alger sent a letter to Michael Page,

19   Thomas Nolan, and Mark Overland.  A true and correct copy of the letter is attached

20   hereto as **Exhibit 3**.

21        5.    On January 18, 2008, I sent a letter to Timothy Alger.  A true and

22   correct copy of the letter is attached hereto as **Exhibit 4**

23        6.    Attached as **Exhibit 5** hereto is a true and correct copy of MGA's and

24   Carter Bryant's Joint Motion To Compel Production of Improperly Withheld Mattel

25   Documents Showing Mattel's Investigation of MGA and Carter Bryant Prior To

26

27

November 2003 and To Compel Production of all "NHB" Documents, dated January 28, 2008.

7.    Attached as **Exhibit 6** hereto is a true and correct copy of MGA's Reply Memorandum In Support of MGA's and Carter Bryant's Motion To Compel Production of Improperly Withheld "NHB" Mattel Documents, dated February 15, 2008.

8.    On February 4, 2008, I sent a letter to Timothy Alger. A true and correct copy of the letter is attached hereto as **Exhibit 7**.

9.    Attached as **Exhibit 8** hereto is a true and correct copy of Mattel's Inc.'s Opposition to MGA's and Carter Bryant's Joint Motion To Compel Production of Purportedly Improperly Withheld Mattel Documents, dated February 7, 2008.

10.    Attached as **Exhibit 9** hereto is a true and correct copy of the Declaration of Michael Moore In Support Of Mattel, Inc.'s Opposition To MGA's And Carter Bryant's Joint Motion To Compel Production of Purportedly Improperly Withheld Mattel Documents, dated February 7, 2008.

11.    Attached as **Exhibit 10** hereto is a true and correct copy of excerpts from the March 10, 2008 hearing before the Discovery Master.

12.    Attached as **Exhibit 11** is a true and correct copy of the Discovery Master's Order Directing Mattel To Submit Document Nos. M0199767-68 and M0199769-70 For In Camera Review; Granting Motion To Compel Production of "NHB" Documents, dated March 10, 2008.

13.    Attached as **Exhibit 12** is a true and correct copy of the Discovery Master's Order Denying MGA and Bryant's Joint Motion To Compel Production of Document Nos. M0199767-68 and M0199769-70, dated March 17, 2008.

14.    Attached as **Exhibit 13** is a true and correct copy the Stipulation For Appointment Of A Discovery Master and Order, dated December 6, 2006.

---

1    I declare under penalty of perjury under the laws of the United States of

2  America that the foregoing is true and correct.

3    Executed on March 31, 2008, at Los Angeles, California.

Marcus R. Mumford

Exhibit 1

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2   John B. Quinn (Bar No. 090378)
    johnquinn@quinnemanuel.com
3   Michael T. Zeller (Bar No. 196417)
    (michaelzeller@quinnemanuel.com)
    Jon D. Corey (Bar No. 185066)
4   (joncorey@quinnemanuel.com)
    Timothy L. Alger (Bar No. 160303)
5   (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
7   Facsimile:  (213) 443-3100

8   Attorneys for Plaintiff Mattel, Inc.

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                    EASTERN DIVISION

13   CARTER BRYANT, an individual,      CASE NO. CV 04-9049 SGL (RNBx)

14              Plaintiff,              Consolidated with Case Nos. CV 04-
                                        09059 and CV 05-02727
15        vs.
                                        MEMORANDUM OF POINTS AND
16   MATTEL, INC., a Delaware corporation,   AUTHORITIES OF MATTEL, INC. IN
                                        OPPOSITION TO MOTION OF MGA
17              Defendant.              ENTERTAINMENT, INC. AND
                                        CARTER BRYANT FOR
18                                      TERMINATING SANCTIONS
     AND CONSOLIDATED ACTIONS
19                                      [Declarations of Fred T. Kawashima,
                                        Michael Moore, Richard De Anda, Jon
20                                      D. Corey, Timothy L. Alger, Michael T.
                                        Zeller and B. Dylan Proctor, filed
21                                      concurrently]

22                                      [Notice of Lodging lodged concurrently]

23                                      Date:     August 27, 2007
                                        Time:     10:00 a.m.
24                                      Place:    Courtroom 1

25                                      Discovery Cut-off:  January 14, 2008
                                        Pre-trial Conference: April 7, 2008
26                                      Trial Date: April 29, 2008

27

28        Exhibit  1  ,
          P.   5

07209/2191979.7
                                        Case No. CV 04-9049 SGL (RNBx)
     MATTEL INC.'S OPPOSITION TO MOTION FOR TERMINATING SANCTIONS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ..................................................................... 2

ARGUMENT ................................................................................. 10

I.   MGA AND BRYANT HAVE NO CLEAR AND CONVINCING
     EVIDENCE THAT MATTEL KNOWINGLY DESTROYED
     RELEVANT EVIDENCE, AS REQUIRED ........................................... 10

     A.   Mattel's Litigation Hold Obligations Attached In Late 2003, At
          The Earliest ................................................................. 11

     B.   Mattel Preserved All Relevant Documents, And Certainly Did
          Not Knowingly Fail To Do So ............................................. 13

II.  MGA AND BRYANT HAVE NOT SHOWN EXTRAORDINARY
     CIRCUMSTANCES TO WARRANT DISMISSAL ................................... 16

     A.   There Are No Extraordinary Circumstances ............................. 16

     B.   Mattel Did Not Act With Bad Faith, Willfulness Or Fault ............. 17

     C.   There Is No Nexus Between The Alleged Misconduct And The
          Merits Of The Case ......................................................... 19

          1.   Mattel Has Overwhelming Evidence That Bryant Created
               Bratz While Employed By Mattel, And Aided By MGA .......... 19

          2.   The Allegedly Lost Evidence Does Not Even Bear On The
               Issues To Be Tried ................................................... 20

     D.   MGA and Bryant Were Not Prejudiced .................................. 22

     E.   Lesser Sanctions Are Available, Although they Are Not
          Appropriate Either ......................................................... 23

III. DEFENDANTS' HANDS ARE UNCLEAN ........................................ 23

CONCLUSION ............................................................................. 25

Exhibit  1 ,
P.  6

07209/2191979.6

## TABLE OF AUTHORITIES

**Page**

### Cases

Adriana Int'l Corp. v. Thoeren,
  913 F.2d 1406 (9th Cir. 1990) ......................................................... 23

Advantacare Health Partners v. Access IV,
  2004 WL 1837997 (N.D. Cal. 2004) ............................................... 16

Agency Holding Corp. v. Malley-Duff & Associates, Inc.,
  483 U.S. 143 (1987) ......................................................................... 22

Akiona v. U.S.,
  938 F.2d 158 (9th Cir. 1991) ..................................................... 17, 18

Anheuser-Busch, Inc. v. Natural Beverage Distribs.,
  69 F.3d 337 (9th Cir. 1995) ................................................ 16, 17, 18

Bowmar Instrument Corp. v. Texas Instruments Inc.,
  1977 U.S. Dist. LEXIS 16078 (N.D. Ind. 1977) ............................ 13

Broccoli v. Echostar Communications Corp.,
  229 F.R.D. 506 (D. Md. 2005) ................................................... 14, 18

Cache La Poudre Feeds, LLC v. Land O Lakes, Inc.,
  2007 WL 684001 (D. Colo. 2007) ................................................. 17

Chambers v. NASCO, Inc.,
  501 U.S. 32 (1991) ......................................................................... 10

Columbia Pictures Industries v. Bunnell,
  2007 WL 2080419 (C.D. Cal. 2007) .............................................. 18

Communications Center, Inc. v. Hewitt,
  2005 WL 3277983 (E.D. Cal. 2005) ............................................... 25

Convolve, Inc. v. Compaq Computer Corp.,
  223 F.R.D. 162 (S.D.N.Y. 2004) .................................................... 23

Daimler Chrysler Motors v. Bill Davis Racing, Inc.,
  2005 U.S. Dist. LEXIS 38162 (D. Mich. 2005) ............................ 17

Estrada v. Speno & Cohen,
  244 F.3d 1050 (9th Cir. 2001) ....................................................... 16

In re Everett,
  364 B.R. 711 (D. Ariz. 2007) ........................................................ 24

Fayemi v. Hambrecht & Quist, Inc.,
  174 F.R.D. 319 (S.D.N.Y. 1997) ................................................... 24

Exhibit 1
p 1

FMC Technologies, Inc. v. Edwards,
    2007 WL 1725098 (W.D. Wash. 2007) ................................................. 11

Fink v. Gomez,
    239 F.3d 989 (9th Cir. 1991) ............................................................. 11

Google, Inc. v. Am. Blind Wallpaper Factory, Inc.,
    2007 U.S. Dist. LEXIS 48309 (N.D. Cal. 2007) ................................. 23

Halaco Engineering Co. v. Costle,
    843 F.2d 376 (9th Cir. 1988) ................................... 16, 19, 23, 24

Hall v. Wright,
    240 F.2d 787 (9th Cir. 1957) ............................................................. 24

Heller v. Plave et al.,
    1993 U.S. Dist. LEXIS 20936 (S.D. Fla. 1993) ................................. 12

Henry v. Gill Industries, Inc.,
    983 F.2d 943 (9th Cir. 1993) ..................................................... 18, 23

Hobson v. Wilson,
    737 F.2d 1 (D.C. Cir. 1984) ............................................................... 21

Housing Rights Center v. Sterling,
    2004 U.S. Dist. LEXIS 28877 (C.D. Cal. 2004) ............................... 17

Hynix Semiconductor Inc. v. Rambus, Inc.,
    2006 WL 565893 (N.D. Cal. 2006) .............................................. 11, 13

In re Kmart Corp.,
    2007 WL 2198309 (N.D. Ill. 2007) .................................................... 11

Lamont v. Wolfe,
    142 Cal. App. 3d 375, 379 (1983) ..................................................... 21

Leon v. IDM Systems Corp.,
    464 F.3d 951 (9th Cir. 2006) ..................................................... 17, 18

Linnen v. A.H. Robins Co., Inc.,
    1999 WL 462015 (Mass. Sup. 1999) ................................................. 14

Maynard v. Nygren,
    332 F.3d 462 (7th Cir. 2003) ............................................................. 11

Mosaid Technologies Incorporated v. Samsung Electronic Co., Ltd.,
    348 F.Supp. 2d 332 (D.N.J. 2004) .................................................... 18

In re Napster, Inc. Copyright Litigation,
    462 F. Supp. 2d 1060 (N.D. Cal. 2006) ....................... 11, 12, 13, 16, 18

Nostalgia Network, Inc. v. Rayle,
    56 Fed. Appx. 344 (9th Cir. 2003) .................................................... 16

Padgett v. City of Monte Sereno,
    2007 U.S. Dist. LEXIS 23409 ........................................................... 18

07209/2191979.6

Exhibit 1
Page

Pennar Software Corp. v. Fortune 500 Systems Ltd.,
     2001 WL 1319162 (N.D. Cal. 2001).................................................11

Phoceene Sous-Marine v. U.S. Phosmarine, Inc.,
     682 F.2d 802 (9th Cir. 1982).......................................................10

Polar Bear Prod. v. Timex Corp.,
     384 F.3d 700 (9th Cir. 2004).......................................................22

Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,
     324 U.S. 806 (1945).................................................................24

Residential Funding Corp. v. DeGeorge Financial Corp.,
     306 F.3d 99 (2d Cir. 2002).........................................................23

Ritchie v. U.S.,
     451 F.3d 1019 (9th Cir. 2006).....................................................10

Roadway Express, Inc. v. Piper,
     447 U.S. 752 (1980).................................................................10

Rohn v. U.S.,
     2002 WL 32123927 (E.D. Cal. 2002)...........................................11

Roley v. New World Pictures,
     19 F.3d 479 (9th Cir. 1994)...................................................21, 22

Shepherd v. American Broadcasting Cos., Inc.,
     62 F.3d 1469 (D.C. Cir. 1995).....................................................11

U.S. v. Kitsap Physicians Service,
     314 F.3d 995 (9th Cir. 2002)..................................................12, 15

U.S. v. Lynch,
     437 F.3d 902 (9th Cir. 2006).......................................................16

U.S. v. National Medical Enterprises, Inc.,
     792 F.2d 906 (9th Cir. 1986).......................................................23

United States ex rel. Lujan v. Hughes Aircraft Co.,
     67 F.3d 242 (9th Cir. 1995)...................................................16, 24

Wanderer v. Johnston,
     910 F.2d 652 (9th Cir. 1990).......................................................23

Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc.,
     106 F.3d 894 (9th Cir. 1997).......................................................21

Wm. T. Thompson Co. v. General Nutrition Corp., Inc.,
     593 F. Supp. 1443 (C.D. Cal. 1984).........................................14, 17

Zubulake v. UBS Warburg LLC,
     220 F.R.D. 212 (SD NY 2003)................................................14, 23

**Statutes**

Local Rule 7-3 ..................................................................... 2

Fed. R. Civ. P. 15(c) ........................................................... 21

Cal. Civ. Code § 3426.6 ...................................................... 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Exhibit 1

## Preliminary Statement

From the beginning, defendants' strategy in this case was to conceal the true facts, including by obstructing discovery.  Mattel has now obtained numerous Orders compelling discovery from them, and the evidence mounts with each.  Evidence that Mattel has recently obtained powerfully shows that, on the merits, Mattel will prevail -- Bryant was disloyal and worked with MGA on Bratz while he was employed and paid by Mattel.  This motion is a desperate attempt to avoid confronting that evidence with a get-out-of-jail-free card.

Indeed, defendants have already made many of the arguments they make here in opposing Mattel's Motion for Leave to Amend, and the Court rejected them.  To justify their improper request for reconsideration, they accuse Mattel of "defrauding" the Court when Mattel said it had Zeus backup tapes for 1999 and 2000.  Mattel has the tapes and long ago offered to produce them.  They are still available whenever MGA and Bryant want them.  Defendants also argue that emails have been lost since Bryant left Mattel, but they gloss over that Bryant left Mattel *in 2000*.  Not even defendants contend Mattel had an obligation to preserve evidence before 2002.  Emails relating to Bryant's work at Mattel were automatically deleted from the live servers, and the backup tapes reused, more than a year and a half before the date on which even defendants contend Mattel had to start keeping them.

The fact is that Mattel did not have any duty to preserve until late 2003.  MGA and Bryant argue the duty was triggered in 2002 because of a Mattel security investigation, but that investigation concerned potential claims that are *not* at issue here.  It did not relate to Bryant's creation of Bratz while he was a Mattel employee or his work for MGA while he was a Mattel employee.  An obligation to preserve occurs when a claim is "probable."  No claim was probable until late 2003, when Mattel first learned that Bryant worked for MGA while still employed by Mattel.

Exhibit  l  ,
P.  11

MATTEL INC.'S OPPOSITION TO MOTION FOR TERMINATING SANCTIONS

1   Unwittingly, even MGA acknowledges in its motion that, prior to then, Mattel's

2   claims were not "probable" -- they were "speculative."[1]

3          As discussed below, Mattel also has preserved hundreds of terabytes of data

4   and expended many thousands of hours of legal personnel time alone in preserving

5   and collecting documents -- far more than defendants could claim.  There was no

6   spoliation.  Nor do defendants show that any documents essential to their claims or

7   defenses have been lost.  For example, MGA asserts (as it did on Mattel's Motion

8   for Leave to Amend) that a phone log from October 2000 would somehow counter

9   Mattel's claims.  The October 2000 phone logs were no longer accessible long

10  before the claims asserted here were "probable."  Moreover, a phone log only lists

11  phone numbers and dates of calls, not substance -- a log from October 2000 would

12  add nothing new, particularly since it is undisputed that Bryant was actively

13  working with MGA in October 2000 (and before) while employed by Mattel.  MGA

14  asserts that missing evidence could prove its statute of limitations defense, but it

15  could not possibly do so.  Among other reasons, that defense was ruled out six

16  months ago in accordance with well-settled law.

17         This motion has the sound and fury typical of hotly contested litigation, but

18  the evidence does not support it.  There was no willful destruction of pertinent

19  documents.  Defendants' motion should be denied.[2]

20                          **Statement of Facts**

21         Mattel Learned of the Misconduct At Issue In This Case In 2003.  Mattel did

22  not know of the present claims until 2003, precisely because, from the beginning,

23  defendants concealed their joint activities and misconduct.  When Bryant left

24  Mattel's employ in October 2000, he lied about where he was going, telling Mattel

25

26  _____          Exhibit  1
                                              P.  12

27  [1]  Mot. at 22:9-12.

28  [2]  MGA and Bryant did not meet and confer before filing this motion, nor do they
     represent that they complied with Local Rule 7-3.  See Declaration of Jon D. Corey,
     ¶ 2; Declaration of Timothy L. Alger, ¶ 6.

1  that he was going to do "non-competitive" freelance work.[3]   After that, MGA

2  repeatedly made public statements about the origins of Bratz in the press that

3  claimed persons other than Bryant created Bratz -- sometimes Larian took credit for

4  inventing Bratz (either his kid's clothes inspired him or boredom with Barbie did),

5  sometimes he gave credit to his son for the idea.[4]   Similarly, Larian represented to

6  the U.S. Patent and Trademark Office that Bratz originated from him.[5]   MGA admits

7  that no public statement even recognizing Bryant as Bratz's creator was issued until

8  July 18, 2003, when the Wall Street Journal published an article saying that.[6]

9       In late November 2003, Mattel first learned that Bryant had worked for MGA

10 while employed by Mattel when it obtained a copy of the agreement MGA and

11 Bryant signed while he worked for Mattel.[7]   As this Court has noted, MGA has

12 acknowledged that Mattel was only on notice of its breach of contract-related claims

13 on November 24, 2003.[8]   Mattel sued Bryant on April 27, 2004, accusing him of

14 working for MGA, using Mattel resources, while employed by Mattel.[9]

15       <u>When Mattel Learned of Bryant's Disloyalty, It Took Steps To Preserve</u>

16 <u>Relevant Evidence.</u>   When it learned of Bryant's disloyalty, Mattel investigated and

17 took steps to preserve relevant evidence. For every percipient Mattel witness Mattel

18

19

20 [3]  Tr. of Jill Nordquist Depo. dated July 31, 2007 at 124:18-125:8, attached as Exh. 1 to the Declaration of B. Dylan Proctor, filed concurrently.

21 [4]  July 8, 2003 Business Week, March 5, 2004 Chicago Sun-Times and March 29, 2004 San Fernando Valley Business Journal articles, Proctor Dec., Exhs. 2-4.

22 [5]  U.S. Patent Application, U.S. PTO Dec'n, Proctor Dec., Exhs. 35, 36.
   [6]  MGA's Responses to Mattel's Requests for Admission (Third Set) at 120

23 (Resp, to RFA No. 185), Proctor Dec., Exh. 5 (MGA searched for and was unable to find a prior public statement).

24 [7]  Declaration of Michael Moore, ¶ 4; Bryant's Contract With MGA "as of September 18, 2000," attached as Exhibit 1 to Moore Dec.; Mattel's April 27, 2004 Complaint at 4, ¶ 12, Proctor Dec. Ex. 6.

25 [8]  Order Re Mattel's Motion For Leave To Amend, entered January 12, 2007 ("Order re FAC") at 14:6-11, Proctor Dec., Exh. 7 ("According to MGA, . . .

26 [Mattel] was aware of the facts alerting it to this claim (insofar as Bryant's contract is concerned) on November 24, 2003, when it learned 'that Bryant worked with

27 MGA to develop the 'Bratz' dolls prior to his last day of employment by Mattel and hence, prior to the expiration of his contractual relationship with Mattel.'") (quoting

28 MGA's Opp. re. FAC at 18, Proctor Dec., Exh. 8).
   [9]  Mattel's Complaint, ¶¶ 12, 18, 23, 30, 41, Proctor Dec., Exh. 6.

Exhibit 1
P. 13

1    could identify and find, Mattel collected emails and other documents that were

2    stored on Mattel's data servers or personal hard drives, or that could be found in

3    hard copy, and advised them to preserve evidence.[10] Mattel imaged employee hard

4    drives and preserved over one hundred of them.[11] Mattel preserved e-mails and any

5    hard drives it could locate in its possession for the percipient witnesses defendants'

6    motion identifies -- Ward, Park, Martinez, Driskill and Treantafelles -- and many

7    more.[12] Bryant was obviously included in the e-mail and hard drive searches.[13]

8        <u>Mattel's 2002 "Investigation" Did Not Lead To Mattel's Claims in This Case.</u>

9    Defendants argue that Mattel had a duty to preserve evidence as of March 2002

10   based on a Spring 2002 investigation conducted by Mattel and an August 2002

11   anonymous letter sent to Mattel.    They claim that Mattel's 2004 "complaint

12   contained, *almost verbatim*, the allegations that Mattel investigated in 2002."[14] The

13   claims investigated in 2002 have *not* been asserted in this case.  In March 2002,

14   Mattel investigated allegations of possible copyright infringement of "Toon Teens"

15   designs, not whether Mr. Bryant created Bratz or worked with MGA during his

16   Mattel employment.[15] The same allegations relating to copyright infringement of

17   "Toon Teens" were reported in the <u>Wall Street Journal</u> in 2003.[16] Mattel has not

18   asserted Toon Teens copyright claims in this case; in fact, it has been explicit that it

19   is not pursuing any such copyright infringement claim.[17] In its 2004 Complaint,

20   Mattel asserted tort and breach of contract claims because it learned that Bryant

21

22   _____

23   [10]  Moore Dec. ¶¶ 5-11.
      [11]  Id. ¶ 9.
24   [12]  Id. ¶¶ 8, 9.  See also Mot. at 12:17-20.
      [13]  Moore Dec., ¶¶ 6, 8.
25   [14]  Mot. at 6:27-28.
      [15]  Declaration of Richard De Anda, ¶ 2.  As Mr. De Anda has confirmed,
26   Cassidy Park's March 28, 2002 statement about "the design of Lily Martinez" (Burr
      Dec., Exh. 4) refers to Toon Teens.  De Anda Dec. Re Defendants' Joint Motion to
27   Compel, lodged concurrently.
      [16]  Wall Street Journal Article, Proctor Dec., Exh. 11.
28   [17]  Tr. of Jan. 8, 2007 Proceedings re. FAC at 6:7-7:1, Proctor Dec., Exh. 12;
      Order re FAC at 15:13-16:11, Proctor Dec., Exh. 7.

Exhibit 1
P. 14

1  worked for MGA while Mattel paid him.[18]  Mattel learned in discovery that Bryant

2  created Bratz and worked with MGA to develop it while Mattel paid him, and filed

3  amended claims to clarify that it contends it owns Bratz based on Bryant's

4  Inventions Agreement with Mattel.[19]  None of Mattel's claims asserts infringement

5  of any Toon Teens copyright.[20]

6        Even With An Earlier Notice Date, No Bryant Emails Could Possibly Have

7  Been Spoliated.  Mattel has for many years had a policy of retaining e-mails on its

8  live servers for only 90 days.[21]  MGA asserts that Bryant e-mails were lost because

9  Mattel did not suspend that policy, but that ignores that Bryant left Mattel in

10  October 2000.[22]  Any e-mails Mr. Bryant sent or received, including e-mails

11  pertaining to his work on Bratz while at Mattel, were deleted from the e-mail servers

12  and backup tapes were overwritten by early 2001 at the latest — long before the

13  March 15, 2002 date on which MGA claims Mattel should have started preserving

14  documents, and even before Bratz was first sold in stores.[23]

15        Mattel Preserved Documents Pertaining To MGA's Complaint.  On April 13,

16  2005, MGA served Mattel with a complaint alleging that Mattel engaged in "serial

17  copycatting" of the Bratz dolls and other MGA products, and that certain alleged

18  conduct by Mattel with buyers, licensees, industry associations, vendors and other

19

20        [18]  Mattel's Complaint at 5-11, Proctor Dec. Exh. 6.

21        [19]  Mattel's Second Amended Answer and Counterclaims dated July 12, 2007 at 53-54, ¶¶ 82-87, Proctor Dec. Exh. 13.

22        [20]  MGA's counsel has submitted a false declaration in this regard.  Counsel declares that Mattel has "not explained" its redactions to an e-mail about the 2002

23  investigation.  Burr Dec., ¶ 6.  However, Mattel produced the document together with a privilege log stating the redactions reflect opinions of legal counsel.  Mattel's

24  Supp. Priv. Log Dated February 23, 2007 at 7 (Item No. 29), Proctor Dec., Exh. 9. When MGA challenged the propriety of the redaction, Judge Infante reviewed the

25  un-redacted document *in camera* and *sustained* Mattel's redactions to the document on the basis of privilege.  Jul. 10, 2007 Order at 1-2, Proctor Dec., Exh. 10.

26        [21]  Mattel preserved e-mail messages on its e-mail servers for 90 days and recycled backup tapes every 30 days.  Depo. Tr. of Fred T. Kawashima (Vol. 1)

27  dated Jan. 17, 2007 ("Kawashima Tr.") at 157:3-158:10, Proctor Dec. Exh. 14.

       [22]  Depo. Tr. of Carter Bryant ("Bryant Tr."), dated November 4, 2007, at 55:15-

28  55:21, Declaration of Michael T. Zeller filed concurrently ("Zeller Dec."), Exh. 1.

       [23]  Moore Dec. ¶ 6.

Exhibit 1
P. 15

1   third parties harmed MGA.[24]  Mattel did not have prior notice that these claims were

2   probable, and MGA does not argue otherwise.  Three days after service of the

3   complaint -- on April 16, 2005 -- MGA sent Mattel a document preservation letter.[25]

4   Two days later, Mattel instructed all Mattel employees to preserve evidence relevant

5   to MGA's newly asserted claims.[26]

6          Mattel responded to MGA shortly thereafter, advising by letter that it would

7   preserve several broad categories of documents which tracked MGA's allegations,

8   including the "My Scene," "Acceleracers," "Wee 3 Friends" and other product lines,

9   communications with MGA and other categories of documents.[27]  Mattel then

10  explained that its e-mail retention period is 90 days, that the allegations in MGA's

11  complaint related to past conduct and that preserving the millions of future,

12  irrelevant e-mails that traverse Mattel's servers each month would cost hundreds of

13  thousands of dollars a year.  *Mattel told MGA, inviting a response, that it did not*

14  *plan to suspend its 90 day retention policy.*[28]  MGA never responded.[29]

15         Instead, MGA chose to remain silent, wait two years and then move for

16  sanctions based on Mattel's disclosed preservation practices, now arguing that

17  Mattel should have suspended its 90-day retention policy.[30]  Within three days of

18  MGA's preservation letter, Mattel took steps to ensure that e-mails *were* preserved.

19  Every day Mattel does a backup of e-mails on its exchange servers.[31]  On April 19,

20  2005, five days after MGA filed suit, Mattel stopped recycling backup tapes of the

21  e-mails on its El Segundo exchange servers.[32]  Mattel has preserved about 4200

22

23

24  [24]  MGA's Complaint filed on April 13, 2005 at 2, Proctor Dec., Exh. 16.
25  [25]  MGA Letter to Mattel dated April 16, Proctor Dec., Exh. 17.
    [26]  Kawashima Tr. (Vol. 2) at 366:1-14. Proctor Dec., Exh. 15.
26  [27]  Mattel Letter to MGA dated May 3, 2005, Proctor Dec., Exh. 18.
    [28]  Id.
27  [29]  Mattel Letter to MGA dated June 11, 2007, Proctor Dec., Exh. 19.
    [30]  Mot., §II(A) at 3-4.
28  [31]  Kawashima Tr. (Vol. 2) at 475:20-476:4, Proctor Dec., Exh. 15.
    [32]  Id. at 300:4-21, MGA admits Mattel implemented this process. Mot. at 4:4-6.

1  tapes.[33] This process has cost Mattel $500,000 to date for tapes alone.[34] The Court

2  previously ruled that the existence of e-mail backups defeats any spoliation claim.[35]

3      Mattel's 90-day retention policy ensures effective and stable server

4  performance, i.e., delivery of e-mail.[36] The accumulation of e-mails on Mattel's live

5  servers that MGA now demands would crash these servers.[37] Mattel's retention

6  period policy and rotation of backup tapes is typical of the policies of other

7  reputable companies such as, for example, Microsoft, TRW, DreamWorks and

8  TCW.[38] While MGA suggests that Mattel should have suspended the auto-delete

9  policy for individual mailboxes, that is not currently possible, and the only possible

10  workaround would require dramatic configuration changes to the servers.[39] Given

11  Mattel's preservation of *complete* backup tapes, such dramatic changes were not

12  called for. That MGA did not respond when Mattel advised it was not discontinuing

13  its preexisting policy for its live servers is telling.[40]

14      MGA asserts that Mattel did not preserve evidence relevant to the "early"

15  development of Mattel's "My Scene" line, but Mattel preserved "My Scene"

16  evidence as soon as MGA filed its lawsuit making claims regarding "My Scene."[41]

17  Mattel's claims against Bryant in April 2004 were unrelated to the "My Scene" dolls,

18  and there was no reason to preserve such evidence at that time. In any case,

19

20      [33] Id. at 475:13-19. See also Alger Dec., ¶¶ 3-5 (Mattel has collected, reviewed
      and produced hundreds of thousands of pages of pages of documents, including
21  electornic files).
      [34] Declaration of Fred T. Kawashima Dec. ¶ 3.
22      [35] Order re FAC at 13:2-5, Proctor Dec., Exh. 7 ("Noticeably absent from
   MGA's [spoliation] argument is any evidence that the e-mails so deleted from a
23  Mattel employee's inbox are forever lost or, as is far more likely, whether such
   information remains or is otherwise archived on some backup file . . .").
24      [36] Kawashima Tr. (Vol. 1) at 256:11-21, Proctor Dec., Exh. 14.
      [37] Id. at 256:24-257:3 ("If you rely on the user population to perform their own
25  housekeeping, they won't. They'll just let e-mail grow and grow consuming
   valuable disk space which will eventually impede performance and shut the server
26  down.").
      [38] Id. at 215:3-217:13.
27      [39] Kawashima Tr. (Vol. 2) at 381:4-11, 389:10-390:22, 394:25-396:1, 397:2-
   403:2, Proctor Dec., Exh. 15.
28      [40] Mattel Letter to MGA dated June 11, 2007, Proctor Dec., Exh. 19.
      [41] Mot. at 23:20; Proctor Dec., Exh. 18.

Exhibit 1
P. 17

1   fortuitously Mattel *has* preserved documents relevant to the "My Scene" doll line
2   since 2003 because of a separate litigation that involved those dolls.[42]

3       <u>Mattel Offered to Produce 1998 through 2001 Zeus Backup Tapes, But</u>
4   <u>Defendants Did Not Accept.</u>  Defendants accuse Mattel of defrauding the Court by
5   representing that it possesses "Zeus" backup tapes.  Mattel does possess such tapes,
6   and offered them to MGA and Bryant in 2005.[43]  They did not accept.[44]  As part of
7   the investigation that led to the claims asserted in this case, Mattel searched for
8   backup tapes of servers containing files from 1999 and 2000, including Zeus, a
9   network data server.[45]  Mattel has located and preserved older Zeus backup tapes for
10  April, May, August, September and December, 1998; January and February, 1999;
11  February, March, April, May, June, July, August and December, 2000; and January
12  and July, 2001.[46]  That is what Mattel previously offered to defendants, and they can
13  have them now if they want them.  In any case, as the Court noted when MGA last
14  raised this issue, that Bryant claims he never used Zeus, and that his access to other
15  Mattel projects was non-electronic, diminishes the relevance of this entire issue.[47]

16      <u>Mattel Discovered In 2003 That It Had No Records of October or December</u>
17  <u>2000 Phone Calls.</u>  Defendants assert that Mattel intentionally destroyed telephone
18  logs from October 2000.[48]  However, those logs ceased to exist within months of

19

20  [42]  Moore Dec. ¶¶ 12–13.
21  [43]  Zeller Dec. in support of Reply Re FAC, ¶ 14, lodged concurrently.
     [44]  Id.
22  [45]  Moore Dec. ¶ 11; Depo. Tr. of Julia Marine (Vol. 1) at 42:23–44:8, Proctor
     Dec., Exh. 20.
23  [46]  Moore Dec. ¶ 11.  Ms. Marine, on whose testimony defendants rely for their
     fraud on the Court argument, was not responsible for tapes searched and preserved
24  for this litigation, and she expressly testified she did not know the dates of the tapes
     given to the Law Department for preservation.  Marine Tr. (Vol. 3) at 240:7–20,
25  244:10–245:1, Proctor Dec., Exh. 22.
     [47]  Order re FAC at 12:4–8 ("MGA's point that access to what was on the Zeus
26  computer system is vital in demonstrating that Bryant was not exposed to or
     otherwise did not hack the system to steal other designers work is diminished to
27  some extent by the fact that Bryant himself testified that he did not use the Zeus
     computer system and was 'pretty much computer illiterate' while employed at
28  Mattel."); Bryant Tr. at 237:17–239:25, Zeller Dec., Exh. 1.
     [48]  Mot., §II(H)(c) at 14.

Exhibit 1
P. 18

1  Bryant's departure, again long before Mattel allegedly had a duty to preserve.  In

2  2000, Mattel logged phone calls on a PC hardwired to its main phone switch using

3  "Micro Call" software.[49]  The logs do not show the substance of conversations -- just

4  originating number from Mattel, telephone number dialed, date, time and duration.[50]

5  The PC itself had capacity for only two and a half months of calls, at most.[51]  As of

6  January 2001, October 2000 phone log information was no longer on the Micro Call

7  PC.[52]  Mattel archived Micro Call logs from the PC on archive tapes and discovered

8  some archive tapes from the relevant time period while searching for phone logs, but

9  could not locate any tapes for October and December 2000.[53]

10      Even if they existed, these logs could not possibly help defendants' cause.

11  Logs from even earlier -- including September 2000 -- have been produced, and

12  reveal calls between Bryant (at Mattel) and MGA.[54]  Other evidence, including other

13  phone records, reveals contacts between them in October.[55]  The absence of still

14  further contacts in October (which is all the logs could show) would prove nothing.

15      Mattel Has Preserved "Diva Starz" Evidence.  Defendants assert that Mattel

16  failed to preserve evidence about the "Diva Starz" doll line.[56]  Mattel did not know

17  the "Diva Starz" line was potentially relevant to its claims against Bryant and MGA

18

19  [49]  Tr. of Depo. of Rodney Palmer at 43:23-45:2, Proctor Dec., Exh. 23.  The PC
    used was changed in 2003. Id. at 47:19-25.
20  [50]  Id. at 55:20-56:4, 57:13-58:9 (incoming phone numbers not recorded).
    [51]  Id. at 90:17-92:1.
21  [52]  Id. at 86:19-87:10 (phone log information put on tapes monthly).
    [53]  Id. at 51:7-25, 56:24-57:8, 86:19-87:17; Moore Dec. ¶ 10.  The archive tapes
22  were on a three-year rotation policy, which stopped in early 2003 when Mattel
    began archiving log information to a network drive. Id.
23  [54]  MicroCall Log for Bryant, at M 0001820-1823, Proctor Dec., Exh. 24; Palmer
    Tr. at 109:1-24.
24  [55]  Bryant admits he discussed Bratz with MGA by telephone while he was
    working at Mattel.  Bryant Tr. at 170:16-172:5, Zeller Dec., Exh. 1.  Phone logs that
25  Bryant has produced also reveal twenty-eight calls with MGA, Margaret Hatch-
    Leahy and Veronica Marlow between October 3 and 19, 2000.  Bryant's Tel. Bills at
26  BRYANT 1288 (Oct. 2000), Proctor Dec., Exh. 25; Marlow Tel. Bills at SABW-M
    00072-77, 148 (Oct. 2000), Proctor Dec., Exh. 26.  Ms. Hatch-Leahy worked for
27  MGA at the time, and before that worked for Mattel.  Bryant identified Ms. Marlow
    as the first person who suggested that he take the Bratz idea to MGA -- she was
28  doing design work for MGA at the time.  Bryant Depo. at 5:10-9:6.
    [56]  Mot. at 23:22-24:13.

Exhibit 1
P. 19

1  until it discovered, beginning in 2005 (in the context of an unrelated litigation),

2  documents and designs for the "Diva Starz" project that were never publicly

3  released, that pre-date the release of Bratz, and that show that "Diva Starz" dolls

4  share certain common elements with Bratz dolls.[57]   Mattel also discovered during

5  that time that MGA's project manager for Bratz, Paula Garcia, had worked on the

6  Diva Starz project while she and Bryant were Mattel employees.[58]   Hence, the

7  relevance of "Diva Starz" to this suit was not known to Mattel until 2005.  Since

8  then (and, because of separate litigation, even before then), Mattel has preserved

9  more than 70 boxes worth of documents, electronic files, e-mail and tangible items

10  related to "Diva Starz," including those of Diva Starz designers Maureen Mullen,

11  Rene Pasko, Kislap Ongchangco and Joni Pratte, and Rob Hudnut.[59]

12  <u>Argument</u>

13  I.  <u>MGA AND BRYANT HAVE NO CLEAR AND CONVINCING</u>

14  <u>EVIDENCE THAT MATTEL KNOWINGLY DESTROYED</u>

15  <u>RELEVANT EVIDENCE, AS REQUIRED</u>

16  MGA and Bryant rely exclusively on the Court's inherent power to levy

17  sanctions.[60]  This inherent power "is not a broad reservoir of power, ready at an

18  imperial hand, but a limited source; an implied power squeezed from the need to

19  make the court function," <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 42 (1991), which

20  "must be exercised with restraint and discretion." <u>Roadway Express, Inc. v. Piper</u>,

21  447 U.S. 752, 764 (1980).  Defendants must prove that Mattel willfully spoliated

22  relevant evidence by clear and convincing evidence. <u>Ritchie v. U.S.</u>, 451 F.3d 1019,

23  1026 (9th Cir. 2006) ("bad faith must be proven by clear and convincing evidence")

24  (citing <u>Phoceene Sous-Marine v. U.S. Phosmarine, Inc.</u>, 682 F.2d 802, 806 n.13 (9th

25  Cir. 1982) (noting that "fraud on the court" must be proved by clear and convincing

26  Exhibit __1__

P. __20__

27  [57]  Moore Dec. ¶ 16, Exh. 4.
    [58]  <u>See</u> Pasko Tr. at 42:13-20, 95:15-96:11, Proctor Dec., Exh. 37.

28  [59]  Moore Dec., ¶¶ 14-15.
    [60]  Their Notice cites no legal basis for their motion, but <u>see</u> Mot. at 15:10-13.

1   evidence)); <u>Fink v. Gomez</u>, 239 F.3d 989, 994 (9th Cir. 1991) (even "recklessness"

2   is insufficient to justify terminating sanctions under the court's inherent power).[61]

3   They have not done so, and cannot do so.

4   **A.   Mattel's Litigation Hold Obligations Attached In Late 2003, At The**

5   **Earliest**

6       For a litigation hold obligation to attach, the potential claims must be

7   *"probable,"* which means *"more than a possibility."*  <u>In re Napster, Inc. Copyright</u>

8   <u>Litigation</u>, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006) (citing <u>Hynix</u>

9   <u>Semiconductor Inc. v. Rambus, Inc.</u>, 2006 WL 565893 at *21 (N.D. Cal. 2006))

10  (emphases added).  In <u>Napster</u>, the court found that (i) a Napster investor's receipt

11  of documents in litigation against Napster, and (ii) the investor's entering into a joint

12  defense agreement with Napster, were *not* sufficient to trigger litigation hold

13  obligations; rather, the obligation attached only after one of the plaintiffs suing

14  Napster expressly told the investor he would also sue the investor if copyright

15  infringement continued, making litigation "probable."  <u>Id.</u> at 1068-1069.  Even the

16  initiation of a litigation strategy does not require a litigation hold.  <u>See Hynix</u>, 2006

17  WL 565893 at *22-24 (preservation obligation attached when defendant determined

18  that litigation was "necessary or wise" to protect its intellectual property rights, not

19  with initiation of a litigation strategy); <u>In re Kmart Corp.</u>, 2007 WL 2198309, at

20

21

22      [61]   <u>See also Pennar Software Corp. v. Fortune 500 Systems Ltd.</u>, 2001 WL

23  1319162 at *5 (N.D. Cal. 2001) ("There must be clear and convincing evidence of
    misconduct before a punitive sanction such as a dismissal or default judgment is

24  entered.") (citing <u>Shepherd v. American Broadcasting Cos., Inc.</u>, 62 F.3d 1469,
    1476-1477 (D.C. Cir. 1995)); <u>Rohn v. U.S.</u>, 2002 WL 32123927 at *1 n.2 (E.D. Cal.

25  2002) (citing <u>Shepherd</u> to apply clear and convincing standard to dismissal sanctions
    request); <u>Maynard v. Nygren</u>, 332 F.3d 462, 468 (7th Cir. 2003) (applying clear and

26  convincing standard to dismissal request based on willfulness, bad faith, or fault);
    <u>FMC Technologies, Inc. v. Edwards</u>, 2007 WL 1725098 at *10 (W.D. Wash. 2007)

27  (no evidentiary sanctions awarded where "allegations regarding the destruction of
    computer files are anything but clear" and the Court "cannot find [spoliation]

28  assertions any more or less credible than [the other side's] explanations for the
    'missing' data.").


Exhibit 1
P. 21

1    *17-18 (N.D. Ill. 2007) (filing bankruptcy proof of claim insufficient to start

2    litigation hold obligation; it did not mean litigation was "pending" or "impending").

3         Defendants argue that Mattel should have been preserving documents as of

4    March 2002, when Mattel investigated possible copyright infringement of Toon

5    Teens.  That argument ignores that Mattel is not suing and never has sued MGA or

6    Bryant for infringement of any Toon Teens copyright.  Defendants do not cite any

7    authority for the proposition that an investigation which does *not* lead to a lawsuit

8    on the investigated matter can nevertheless give rise to a duty to preserve.  To the

9    contrary, the law is clear that an investigation, in and of itself, does not trigger a

10   company's obligation to preserve evidence -- even where the investigation is of

11   allegations that *are* eventually brought in court.  U.S. v. Kitsap Physicians Service,

12   314 F.3d 995, 1001 (9th Cir. 2002) (defendant did not have a duty to preserve when

13   it initiated an internal investigation into allegations of fraudulent billings that

14   plaintiff eventually sued upon); see also Heller v. Plave et al., 1993 U.S. Dist.

15   LEXIS 20936, at * 37-38 (S.D. Fla. 1993) (defendants' interview of plaintiff's

16   accountant held to be insufficient notice of plaintiff's claims where interview was

17   "the first of several events upon which [the] lawsuit [was] based").

18        Moreover, even if (contrary to fact) Mattel had sued upon the claim it

19   investigated in 2002, there still was no duty to preserve because the speculative

20   information available to Mattel at that time did not render litigation "probable" or

21   "wise," as required.  In fact, MGA and Bryant concede in their opposition that the

22   claims Mattel investigated in 2002 and 2003 were speculative, asserting that "Mattel

23   deliberately delayed bringing this lawsuit for years because *it knew its claims were*

24   *speculative* . . . ."[62]  Precisely because the claims now at bar were "speculative" in

25   2002 (and indeed totally unknown to Mattel), they were not "probable," and Mattel

26   had no duty to preserve.  See Napster, 462 F. Supp. 2d at 1068.

27

28   _____

[62] Mot. at 22:9-12.

Exhibit  1

P. 30

1    Nor did the August 5, 2002 "anonymous letter"[63] give rise to a duty to
2    preserve.  The letter's author (whoever it was) offered no evidence for his or her
3    allegations.  That letter is clearly insufficient -- it did not provide notice of a claim
4    that was "probable," Napster, 462 F. Supp. at 1068-1069, or "wise," Hynix, 2006
5    WL 565893, at *22-24.  See also Bowmar Instrument Corp. v. Texas Instruments
6    Inc., 1977 U.S. Dist. LEXIS 16078, at *12-13 (N.D. Ind. 1977) ("rumors" and
7    "innuendo" about possible litigation insufficient to attach preservation obligation).
8    Indeed, the Court has recognized this before:  "I certainly know that O'Melveny &
9    Myers would not file a complaint based on an anonymous letter from somebody
10   suggesting that there is a copyright infringement."[64]

11       Contrary to defendants' speculations, Mattel first learned of a probable claim
12   in late 2003, at the earliest.  It was then that Mattel first obtained evidence that
13   Bryant worked for MGA while employed by Mattel, when it obtained a copy of the
14   MGA/Bryant agreement revealing that.  Before that, no claims were probable, and
15   the investigated claims were never brought.

16   **B.    Mattel Preserved All Relevant Documents, And Certainly Did Not**
17   **Knowingly Fail To Do So**

18       Mattel gathered and preserved evidence as soon as it was obligated to do so.
19   Once it learned of the facts giving rise to the claims at bar, Mattel searched for and
20   preserved all relevant documents from every individual likely to have relevant or
21   discoverable information.[65]  This included computer hard drives, emails and paper
22   documents, among other things.[66]  Once MGA filed its lawsuit, Mattel greatly
23   expanded its preservation efforts in light of the expanded scope of the issues, at
24
25
26   ────────────────────        Exhibit _1_,
                                 P. _23_
27   [63] Proctor Dec., Exh. 27.
     [64] Jan. 8, 2007 Hearing Tr. at 16:14-17:7, Proctor Dec., Exh. 12
28   [65] Moore Dec. ¶¶ 6-11.
     [66] Id.

1  substantial expense.[67]  Mattel did not destroy any relevant information, let alone do

2  so willfully to prejudice defendants.

3      Defendants fault Mattel for failing to "suspend its routine document retention

4  and destruction policies."[68]  However, no case they cite supports the breathtaking

5  proposition that Mattel had to retain every e-mail on its live exchange servers or

6  reconfigure its servers to create a different retention rule on a mailbox-by-mailbox

7  basis.  A litigant has no duty to preserve every document in its possession.  Wm. T.

8  Thompson Co. v. General Nutrition Corp., Inc., 593 F. Supp. 1443, 1455 (C.D. Cal.

9  1984).  A party has to preserve only what it knows, or reasonably should know, is

10 relevant in the action, is reasonably calculated to lead to the discovery of admissible

11 evidence, is reasonably likely to be requested during discovery and/or is the subject

12 of a pending discovery request.  Zubulake v. UBS Warburg LLC, 220 F.R.D. 212,

13 217-218 (SD NY 2003).  There is nothing improper about Mattel's e-mail retention

14 policy; it is standard for large corporations.[69]  Courts have found that 90-day

15 retention period policies and thirty-day recycling of back-up tapes are reasonable

16 retention policies.  Broccoli v. Echostar Communications Corp., 229 F.R.D. 506,

17 510 (D. Md. 2005) (under normal circumstances, a retention policy that deletes e-

18 mails even after only thirty days with no backups is acceptable); Linnen v. A.H.

19 Robins Co., Inc., 1999 WL 462015, at *1 (Mass. Sup. 1999) (three month retention

20 of internal communications and recycling of backup tapes for such information is "a

21 widely accepted business practice").

22      As soon as it had a probable claim, Mattel preserved the evidence it could

23 locate relevant to the claims it anticipated bringing.  The suggestion that Mattel

24 should have stopped its 90-day retention policy in November 2003 (or even 2002),

25 and crashed its servers, is unfounded.  Any Bryant-related e-mails (beyond those

26

27

28

---

67  Mattel Letter to MGA dated May 3, 2005, Proctor Dec., Exh. 18.
68  Mot., §III(A)(3) at 17-18.
69  Kawashima Tr. (Vol. 1) at 215:3-217:13.

Exhibit 1
P. 24

1    that Mattel had on paper form or stored in locations other than its servers) had long

2    since left Mattel's e-mail servers when Mattel learned, notwithstanding defendants'

3    concealment, of Bryant's disloyalty.  Suspending the 90-day retention policy years

4    after Bryant worked at Mattel would have preserved nothing relevant.  Defendants

5    suggest at one point that Mattel had a duty to preserve e-mails dating back to the

6    1998-2001 time frame — before Bratz was introduced, and long before defendants

7    contend Mattel had notice of its claims.[70]  But Mattel obviously had no duty to

8    preserve documents before it learned of Bryant's misconduct.  <u>U.S. v. Kitsap</u>

9    <u>Physicians Service</u>, 314 F.3d 995, 1001 (9th Cir. 2002) (no spoliation where

10    documents were destroyed in normal course of business before party had notice).

11       Defendants accuse Mattel of failing to preserve Zeus backup tapes.  As

12    discussed, Mattel has the tapes it said it had.[71]  Perhaps recognizing that, MGA and

13    Bryant argue that Mattel "destroyed" Zeus backup tapes when it disposed of tape

14    drives for those tapes after it stopped using DLT tapes.[72]  The Court has already

15    rejected that argument, holding that the fact that Mattel's IT Department no longer

16    has the hardware to read those tapes "certainly does not demonstrate that the

17    information on those backup tapes has been 'eliminated' or forever lost . . . .  [T]o

18    argue, as MGA does, that the information is 'unavailable' or 'lost' . . . exaggerates its

19    plight."[73]  A CD owner does not "destroy" the music on the CD when he or she loses

20    or sells a CD player, yet that is essentially all defendants can argue here.[74]

21

22

23

24

Exhibit __1__,
P. __25__

25    [70]  Mot. at 9:23-25; 12:17-18.

26    [71]  Mot., §II(G) at 10-11.
      [72]  Mot. at 8:23-9:1; Marine Tr. (Vol. 2) at 119:10-13, Proctor Dec., Exh. 21.

27    [73]  Order re FAC at 11:19-25, Proctor Dec., Exh. 7.
      [74]  Notably, these tapes are not unique to Mattel.  Indeed, vendors tout their

28    ability to read and restore DLT backup tapes.  Zeller Dec. Re FAC ¶ 14, lodged concurrently; <u>see also e.g.</u>, http://www.bluestarcs.com/backup_tape.html, Proctor Dec., Exh. 28 (vendor's website stating it can restore and read on DLT tapes).

II.   **MGA AND BRYANT HAVE NOT SHOWN EXTRAORDINARY CIRCUMSTANCES TO WARRANT DISMISSAL**

Even if defendants had clear and convincing evidence of Mattel's willful destruction of relevant evidence, which they do not, the analysis would not end there. Before imposing dismissal sanctions, the Court would also have to find (i) extraordinary circumstances, (ii) willfulness or fault, (iii) that there is a nexus between the misconduct and the merits of the case, (iv) lesser sanctions are not viable, and (v) prejudice. Halaco Engineering Co. v. Costle, 843 F.2d 376, 381-382 (9th Cir. 1988).

MGA and Bryant argue that the balancing test in Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 348 (9th Cir. 1995), is controlling. It is not. The *en banc* Halaco decision controls. See U.S. v. Lynch, 437 F.3d 902, 912 (9th Cir. 2006) (holding that a three-judge panel of Court of Appeals may not overrule previous decision of court sitting en banc); see, e.g., Nostalgia Network, Inc. v. Rayle, 56 Fed. Appx. 344 (9th Cir. 2003) (applying Halaco standards); Estrada v. Speno & Cohen, 244 F.3d 1050, 1055-1056 (9th Cir. 2001) (same); United States ex rel. Lujan v. Hughes Aircraft Co., 67 F.3d 242, 247 (9th Cir. 1995) (same); In re Napster, 462 F. Supp. 2d at 1070-77 (same). Defendants meet none of the Halaco standards, or even the Anheuser-Busch standards.

**A.    There Are No Extraordinary Circumstances**

"[E]xtraordinary circumstances exist where there is a pattern of disregard for Court orders and deceptive litigation tactics that threaten to interfere with the rightful decision of a case." Advantacare Health Partners v. Access IV, 2004 WL 1837997 at *5 (N.D. Cal. 2004) (citing Halaco, 843 F.2d at 31) (no extraordinary circumstances even though defendants admitted to intentionally destroying relevant evidence); see Anheuser-Busch, 69 F.3d at 348 (terminating sanctions are warranted when "a party has engaged in deliberately deceptive practices that undermine the integrity of judicial proceedings"). Defendants cannot show any "deceptive

Exhibit  1 ,
P. 26.

1   litigation tactics that threaten to interfere with the rightful decision of the case" or
2   that "undermine the integrity of judicial proceedings."  Adhering to well-accepted,
3   routine document retention policies and then, after notice of a probable claim,
4   collecting and preserving evidence is not "deceptive."

5       Defendants' own cases confirm that Mattel's conduct warrants no sanctions,
6   much less terminating ones.  In Housing Rights Center v. Sterling, 2004 U.S. Dist.
7   LEXIS 28877, at *21-29 (C.D. Cal. 2004), this Court held that terminating sanctions
8   were not appropriate even after a defendant *admitted to destroying* categories of
9   *indisputably relevant* documents.  In Wm. T. Thompson Co., 593 F. Supp. at 1446-
10  50, the court found terminating sanctions appropriate only after expressly finding
11  that defendant destroyed unquestionably relevant documents and made *no effort* to
12  preserve relevant documents, in violation of two Court Orders.  In Cache La Poudre
13  Feeds, LLC v. Land O Lakes, Inc., 2007 WL 684001 at *17 (D. Colo. 2007), the
14  court found no bad faith even though the defendant allowed the destruction of
15  documents that "might have contained relevant" information.  And in Daimler
16  Chrysler Motors v. Bill Davis Racing, Inc., 2005 U.S. Dist. LEXIS 38162 (D. Mich.
17  2005), the court found terminating sanctions were *not* appropriate even where the
18  party made *no effort* to retain documents after suit filed.  Mattel did not violate any
19  Order here, and it took substantial measures to preserve relevant documents.
20  Mattel's conduct simply does not compare to any case in which terminating
21  sanctions have been imposed.

22      **B.    Mattel Did Not Act With Bad Faith, Willfulness Or Fault**
23      MGA and Bryant attempt to show bad faith, willfulness or fault by proving
24  "only" that Mattel had "some notice" that automatically deleted e-mails were
25  potentially relevant to the litigation.[75]  They rely on Anheuser Busch, Leon v. IDM
26  Systems Corp., 464 F.3d 951, Akiona v. U.S., 938 F.2d 158 (9th Cir. 1991), and

27

28  _____
    [75]   Mot. at 16:6-8, 18:27-19:2.

    Exhibit 1 ,
    P. 27

07209/2191979.7

1    Henry v. Gill Industries, Inc., 983 F.2d 943 (9th Cir. 1993), to support this purported

2    low threshold for finding bad faith.[76]  However, as discussed, defendants must prove

3    Mattel's willful spoliation by clear and convincing evidence.[77]   Moreover, even

4    these cases show that Mattel's conduct does not reveal bad faith, willfulness or fault.

5    In Akiona, for example, the Ninth Circuit found no bad faith when the records were

6    deleted "pursuant to a policy of destroying documents two years after their

7    disposition" and "consistent with the party's document retention policies." 938 F.2d

8    at 160-161.  Even by defendants' factually erroneous account of what has and has

9    not been preserved, that is the most that happened here.[78]

10           Even if it were possible to fault Mattel for not suspending its 90-day retention

11   policy earlier -- and Mattel submits that it is not — that simply is not sufficient to

12   support terminating sanctions.   See Napster, 462 F. Supp. at 1072-1074, 1077

13   (rejecting terminating sanctions because there were some efforts to preserve relevant

14   documents, even though party instructed its employees to delete relevant e-mails);

15   Broccoli, 229 F.R.D. at 511-512 (denying terminating sanctions although zero effort

16   to preserve documents); Mosaid Technologies Incorporated v. Samsung Electronic

17   Co., Ltd., 348 F.Supp. 2d 332, 339 (D.N.J. 2004) (same); Columbia Pictures

18   Industries v. Bunnell, 2007 WL 2080419, at *14 (C.D. Cal. 2007) (no evidentiary

19

20

21   ─────────────────────                                                Exhibit __ ,
                                                                          P. 28
22   [76]  Mot. at 16:5-17.
     [77]  Supra § I.
23   [78]      Contrast Leon v. IDX Systems Corp., 464 F.3d 951, 959 (9th Cir.
     2006)(plaintiff admitted to intentionally deleting every "personal" file on work
24   laptop, and Court found personal files there "highly relevant" to employment
     discrimination claim); Anheuser-Busch, 69 F.3d at 349-351 (plaintiff "repeatedly
25   lied" to defendant and court that relevant documents had burned in a fire); Henry,
     983 F.2d at 947-949 ("disobedient conduct" justifying bad faith included failure to
26   appear for deposition twice, failure to respond to interrogatories, and disobeying
     Court order awarding monetary sanctions); Padgett v. City of Monte Sereno, 2007
27   U.S. Dist. LEXIS 23409 *9 (though party failed to preserve hard drive despite
     specific discovery request asking to inspect it and court order to "preserve
28   everything" and "delete nothing" in the hard drive, terminating sanctions not
     awarded in absence of finding of prejudice).

1    sanctions in the absence of any violation of a preservation order, even though
2    "extremely relevant" data was lost).[79]

3        **C.    There Is No Nexus Between The Alleged Misconduct And The**
4                **Merits Of The Case**

5        To prove the required nexus, defendants must show by clear and convincing
6    evidence that the allegedly destroyed evidence bears on the matters in controversy in
7    such a way as to interfere with the rightful decision of the case.  Halaco, 843 F.2d at
8    381-382.  That *clearly* is not the case here.

9          **1.    Mattel Has Overwhelming Evidence That Bryant Created**
10              **Bratz While Employed By Mattel, And Aided By MGA**

11       The evidence that bears on the actual merits of this case is one-sided and
12   overwhelming.   Notwithstanding defendants' pattern of obstructionism that has
13   required Judge Infante to issue multiple orders to compel against them, Mattel has
14   obtained powerful evidence showing that Bryant created Bratz and worked on it
15   with MGA while employed by Mattel.  Among much else, this includes:

16       • After being compelled to produce documents in January 2007, Bryant
17         for the first time produced Bratz drawings dated September 1999 —
             squarely during Bryant's Mattel employment.[80]
18       • After being compelled to testify, MGA's Bratz project manager, Paula
19         Garcia, admitted that Bryant created a key Bratz design during the time
             of his Mattel employment.[81]
20       • After being compelled to produce documents in May 2007, MGA
21         produced an internal MGA e-mail message stating that the first Bratz
             dolls were created in September 2000.[82]  MGA's initial copyright

22

23

24     [79]   Revealing how thin the reed defendants hope to grasp is, they argue Mattel
     engaged in "bad faith" by delaying the deposition of its designee on email
25   preservation.  Mot., §II(F) at 8-10.  Defendants' assertions are misleading and
     irrelevant.  Corey Dec. ¶¶ 3-5.  They are also a virtual rehash of an argument the
26   Court previously rejected. Proctor Dec., Exh. 7 at 12:16-13:1.
       [80]   See Jan. 25, 2007 Order, Zeller Dec., Exh. 2;  Drawings, Zeller Dec., Exhs. 3
27   & 4.
       [81]   See Discovery Master's May 15, 2007 Order, Zeller Dec., Exh. 5; Depo. Tr. of
28   Paula Garcia (Vol. 2), dated May 25, 2007, at 590:10-592:4.
       [82]   See Discovery Master's May 15, 2007 Order, Zeller Dec., Exh. 5; E-mail
     dated September 6, 2001, Bates-numbered MGA 0069426-7, Zeller Dec., Exh 6.

07209/2191919.7

Case No. CV 04-9049 SGL (RNBx)
MATTEL INC.'S OPPOSITION TO MOTION FOR TERMINATING SANCTIONS

Exhibit 1
P. 24

registrations for those dolls and the Bratz sculpt also list their dates of creation as 2000.[83]  After this lawsuit was filed, MGA then "corrected" those registrations to state that the dolls were created in 2001.[84]

- Fahrad Larian, a former MGA executive and Isaac Larian's brother, has stated in court pleadings that Bryant brought Bratz to MGA by February 2000 -- and that they attempted to conceal it.[85]

- Anna Rhee, the face painter of Bratz, testified that invoices dated as early as June 12, 2000 were for work she performed on Bratz for MGA under the "code name" of "Angel."[86]

The list of damning evidence literally goes on and on.[87]

### 2.    The Allegedly Lost Evidence Does Not Even Bear On The Issues To Be Tried

There is little defendants can say about this evidence, or about how the allegedly spoliated evidence could change it.  Defendants' primary argument is that emails from 2002-2005 could support their statute of limitations defense.  That argument is fundamentally misguided.  Mattel had no duty to preserve evidence until late 2003 at the earliest.[88]  At the same time, there is no dispute that Mattel was on notice of its claims at issue here by late 2003.  There is simply no reason to think, as defendants suggest, that keeping additional, irrelevant emails in late 2003 or 2004 (through a suspension of the auto-delete policy) would somehow push the notice date back *earlier* than late 2003 -- and emails from 2002 and early 2003 were already long gone from the live servers and the back-up tapes.[89]  In any case, the law is clear that an investigation into a claim that is not sued upon, such as the 2002 "Toon Teens" investigation defendants rely on, does not constitute notice for statute of limitations purposes.  Westinghouse Elec. Corp. v. General Circuit Breaker &

---

[83]  See Copyright Registrations, Zeller Dec., Exhs. 7-11.
[84]  See Copyright Correction Forms, Zeller Dec., Exh. 12.
[85]  See Farhad Larian's Complaint in Larian v. Larian, Case No. BC301371, dated August 25, 2003, at ¶¶ 13-16, Zeller Dec., Exh. 14.
[86]  See Depo. Tr. of Anna Rhee, dated February 3, 2005, at 197:6-197:25 and 199:8-199:16, Zeller Dec., Exh. 13.
[87]  See, e.g., Zeller Dec., ¶¶ 15-21, Exhs. 14-20.
[88]  See supra, § I(A).
[89]  Moore Dec. ¶ 6.

Exhibit  1 ,
P. 30

1   Elec. Supply Inc., 106 F.3d 894, 899 (9th Cir. 1997) (defendants making a statute of

2   limitations argument must prove that the plaintiff knew of facts giving it notice of its

3   trademark counterfeiting cause of action, not just any cause of action); Hobson v.

4   Wilson, 737 F.2d 1, 35 (D.C. Cir. 1984) (for constructive discovery of a cause of

5   action to trigger the statute of limitations, the plaintiff must know facts giving notice

6   of the *particular* cause of action at issue; notice of a particular claim does not mean

7   a simple suspicion of wrongdoing, but rather "awareness of sufficient facts to

8   identify a particular cause of action . . . not . . . the kind of notice -- based on hints,

9   suspicions, hunches or rumors -- that requires a plaintiff to make inquiries in the

10  exercise of due diligence, but not to file suit").

11      Moreover, the Court has already rejected defendants' statute of limitations

12  defense, which was "pressed emphatically at oral argument" on Mattel's Motion  for

13  Leave, ruling that Mattel's claims are timely because they relate back to Mattel's

14  April 2004 Complaint.[90]  Indeed, many of Mattel's claims would be timely even if

15  there was no relation back.   For example, Mattel's copyright infringement

16  counterclaim has a rolling statute of limitations -- it could not possibly be

17  completely time barred.  Roley v. New World Pictures, 19 F.3d 479, 481 (9th Cir.

18  1994) (section 507(b) "does not provide for a waiver of infringing acts within

19  limitation period if earlier infringements were discovered and not sued upon"); Polar

20  Bear Prod. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) (accord).  Many of

21  Mattel's other claims would also be timely even if Mattel were on notice of its

22  claims in 2002, as defendant allege.  See, e.g., Agency Holding Corp. v. Malley-

23  Duff & Associates, Inc., 483 U.S. 143, 156 (1987) (limitations period for civil RICO

24  actions is four years);  Cal. Civ. Code § 3426.6 (limitations period for

25  misappropriation of trade secrets claims is three years).

Exhibit __1__,
P. __31__

26  ─────────────────

27  [90]   Order Re FAC at 13-15, Proctor Dec., Exh. 7; see also Fed. R. Civ. P. 15(c);
Lamont v. Wolfe, 142 Cal. App. 3d 375, 379 (1983) (amended claims relate back to

28  the original complaint where same transaction or occurrence is involved in both
pleadings).

Defendants' other arguments fare no better.

- Defendants' assertion that lost emails could bear on "Carter Bryant's employment and work at Mattel, including emails and data that would refute Mattel's claims that he did not meet his employment obligations," ignores that such emails disappeared from Mattel's live servers and backup tapes by early 2001, long before even defendants could contend Mattel was on notice.[91]

- Hypothetical 2004, post-litigation e-mails among random Mattel employees sympathizing with Bryant will neither prove nor disprove any issue to be tried.[92]

- Defendants argue that Mattel should have preserved "communications with suppliers, retailers, and others to impair MGA's ability to compete" and other documents relating to MGA's claims.[93]  However, Mattel first had notice of these allegations when MGA filed its complaint in April 2005, and immediately took proper steps to preserve such evidence.

- Defendants complain that "lost" October 2000 "time" records (when Bryant admits he was negotiating his deal with MGA) would exonerate Bryant, presumably by proving he was working on Mattel projects.  Actually, Bryant's October 2000 "time" records are not lost — and they show that he recorded *no* time to any Mattel project, only to vacation time, that month.[94]

### D.   MGA and Bryant Were Not Prejudiced

Virtually all courts consider prejudice to the party seeking terminating sanctions.  See, e.g., Halaco, 843 F.2d at 383; U.S. v. National Medical Enter., Inc., 792 F.2d 906, 913 (9th Cir. 1986) (prejudice "is an important factor that the district court should weigh before granting the extreme sanction of dismissal"); Henry, 983 F.2d at 948 (referring to prejudice as a "key factor"); Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990) (the element of prejudice is "essential"); Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990) (when an order is violated, prejudice and availability of lesser sanctions are decisive factors).

---

91  More Dec. ¶ 6.
92  Mot. at 23:1-10.
93  Mot. at 23.20-21.
94  Depo. Tr. of Arnold Artavia dated Sep. 21, 2006, at 105:14-106:9, Exh. 350 thereto, Proctor Dec., Exhs. 29, 30 (only admin. time recorded in Oct. 2000, which was used to record vacation and other non-project time).

Exhibit __l__
P. __32__

1    There can be no presumption of prejudice absent a showing of "gross
2  negligence." Convolve, Inc. v. Compaq Computer Corp., 223 F.R.D. 162, 176
3  (S.D.N.Y. 2004) (citing Residential Funding Corp. v. DeGeorge Financial Corp.,
4  306 F.3d 99, 109 (2d Cir. 2002)).   No case defendants cite holds that efforts to
5  preserve relevant evidence like Mattel's even approach gross negligence.[95]   Hence,
6  defendants must *prove* that the allegedly lost information contains relevant
7  information -- they must present evidence that the alleged missing evidence would
8  have been of the nature they assert and would favor them. Convolve, 223 F.R.D. at
9  176; Zubulake, 220 F.R.D. at 221.   MGA and Bryant have not identified a single
10  relevant e-mail that was permanently destroyed (i.e., no backup available) pursuant
11  to Mattel's 90-day retention policy.

12  **E.    Lesser Sanctions Are Available, Although they Are Not**
13  **Appropriate Either**

14    Before imposing terminating sanctions, the Court must consider lesser
15  sanctions and explain the reasons for rejecting them. U.S. ex rel. Lujan v. Hughes
16  Aircraft Co., 67 F.3d 242, 247-248 (9th Cir. 1995) (citing Halaco Engineering Co. v.
17  Costle, 843 F.2d 376, 381 (9th Cir. 1988)).   MGA and Bryant do not seek lesser
18  sanctions, and neither the relief they do seek nor such lesser sanctions are justified.

19  **III.   DEFENDANTS' HANDS ARE UNCLEAN**
20    Given their own demonstrable -- and quite intentional -- spoliation of
21  evidence, defendants' accusations against Mattel are reprehensible.   They
22  independently disentitle defendants to any relief.   To obtain sanctions from the
23  Court, MGA and Bryant must have clean hands. See, e.g., In re Everett, 364 B.R.
24  711, 723 (D. Ariz. 2007) (doctrine of unclean hands demands party seeking

25  _____                                Exhibit 1 ,
26                                                          P. 33

27  [95]   The two cases MGA cites here, Residential Funding Corp. v. Degeorge
   Financial Corp., 306 F.3d 99, 112 (2d Cir. 2002), and Google, Inc. v. Am. Blind
   Wallpaper Factory, Inc., 2007 U.S. Dist. LEXIS 48309, at *15-16 (N.D. Cal. 2007),
28  dealt with, respectively, gross failure to produce documents in time for trial and
   refusal to even search for responsive documents.

1    equitable relief to "act fairly in the matter for which he seeks a remedy. He must
2    come into court with clean hands or he will be denied relief, regardless of the merits
3    of his claim.") (citing Precision Instrument Mfg. Co. v. Automotive Maintenance
4    Machinery Co., 324 U.S. 806, 814-815 (1945); Hall v. Wright, 240 F.2d 787, 794-
5    795 (9th Cir. 1957); Fayemi v. Hambrecht & Quist, Inc., 174 F.R.D. 319, 226
6    (S.D.N.Y. 1997) (party who obtained copies of confidential files improperly was
7    allowed to use such evidence because opposing party had subsequently destroyed
8    the files, knowing they were relevant)). Defendants' hands are unclean.

9        First, both MGA and Bryant engaged in a conspiracy to conceal when and by
10    whom Bratz was created. Bryant lied to his co-workers when he left Mattel, saying
11    that he was going to a non-competitive position.[96] MGA filled the press with false
12    stories about the creation of Bratz.[97]

13        Moreover, defendants have tampered with and destroyed unquestionably
14    relevant evidence:

15    •    Bryant long refused to produce the hard drive of a computer he testified he
         used during the relevant time period, finally producing the drive after no less
16       than three motions by Mattel and a Court Order.[98] In opposing Mattel's
         motions to compel Bryant's hard drive, Bryant's counsel represented that
17       defendants had "tirelessly searched for and inspected [Bryant's] hard drives
         for relevant information," but located no "relevant" or "responsive"
18       documents.[99] It turns out, Bryant had installed the program "Evidence
         Eliminator" on the hard drive.[100] The only purpose of this program, as both
19       Courts and the program's creators acknowledge, is to permanently destroy
20       data to prevent its use in legal proceedings. See, e.g., Communications
         Center, Inc. v. Hewitt, 2005 WL 3277983, at * 2 (E.D. Cal. 2005) (finding use
21       of Evidence Eliminator on hard drives was willful and in bad faith, and
22       intended to destroy discoverable evidence).
23
24
25
26   _____
     96   Nordquist Tr. at 124:18-125:8, Proctor Dec., Exh. 1.
27   97   Proctor Dec., Exhs. 2-4.
     98   Zeller Dec., ¶¶ 22-23, Exhs. 21-22.
28   99   Zeller Dec., ¶ 24; Exhs. 23-24.                Exhibit __,
     100  Zeller Dec., ¶ 25, Exh. 25.                    P. 34

07209/2191979.7

1   •    Bryant and MGA engaged in destructive testing of Bryant's original Bratz
2        drawings without notice to the Court or Mattel.[101] The Court recognized that
3        defendants' handling of these "critical documents" raises "serious questions . . . . [which cause] the Court much concern about whether the truth seeking
4        functions of the adversarial system have been fundamentally compromised in this case."[102]

5   •    MGA's CEO, Isaac Larian, ordered another MGA executive to redact "Barbie
6        Collectibles" from the faxed version of Bryant's Bratz agreement with MGA to conceal that Bryant had sent the contract from Mattel's Design Center.[103]

7   •    Since MGA intervened in Mattel's lawsuit against Bryant in December 2004,
8        Isaac Larian has destroyed his computers and the information contained on them.[104] MGA also "wiped" the information from the hard drives of Mr.
9        Larian's computers every six months to a year, preserving only a portion of the information they contained.[105]

10   •    MGA does not preserve backup tapes for any e-mail server, but overwrites
11        them every eight weeks.[106]

12        That defendants can bring themselves to request gratuitous sanctions against

13 Mattel for non-preservation is remarkable, to say the least.

14                      **Conclusion**

15        Mattel respectfully requests that the Court deny this motion in its entirety.

16 DATED: August 13, 2007        QUINN EMANUEL URQUHART OLIVER &
17                              HEDGES, LLP

18
19                  By _____
                             John B. Quinn
20                              Attorneys for Plaintiff
                             Mattel, Inc.

21

22

---

23    [101]   Court's Order Denying Appointment of Expert Witnesses ("Expert Witnesses Order"), dated August 11, 2006, at 4:19-7:3, Zeller Dec., Exh. 26; see also
24 Declaration of Erich J. Specking Re Expert Witness Order, ¶ 8, lodged concurrently (performed ink testing for on MGA on various Bratz documents).
   [103]   Expert Witnesses Order at 11:10-13, Zeller Dec., Exh. 26.
25    [103]   O'Connor Tr. at 18:13-18, Zeller Dec., Exh. 27; See Expert Witness Order at 7:4-21, 8:10-9:9, 18:8-10, Zeller Dec., Exh. 26; Consulting Agreement, Zeller Dec.,
26 Exh. 28.
   [104]   See Depo. Tr. of Ken Lockhart (Vol. 2), dated May 15, 2007 at 255:2-256:18, Zeller Dec. Exh. 30.
27    [105]
   [106]   See Lockhart Tr. (Vol. 2) at 255:2-258:9, Zeller Dec., Exh. 30.
28       See Deposition Transcript of Ken Lockhart (Vol. 1), dated May 14, 2007 at 114:2-8, 116:15-117:11, 118:8-18, 123:17-22; Zeller Dec., Exh. 29.

Exhibit 1
P. 35

Exhibit 2

# THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Exhibit 3

01/17/2008 15:59 FAX 12134433100        QEUOH-LAO-2                              ☒002/003

## quinn emanuel trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3223

WRITER'S INTERNET ADDRESS
timalger@quinnemanuel.com

January 17, 2008

**VIA FACSIMILE AND MAIL**

Michael H. Page, Esq.                    Thomas J. Nolan, Esq.
Keker & Van Nest, LLP                    Skadden, Arps, Slate, Meagher & Flom LLP
710 Sansome Street                       300 South Grand Ave., Suite 3400
San Francisco, CA 94111                  Los Angeles, CA 90071

Mark E. Overland, Esq.
Overland Borenstein Scheper
  & Kim, LLP
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071-3144

Re:  MGA Entertainment, Inc. v. Mattel, Inc.

Dear Counsel:

Mattel has inadvertently produced in discovery two documents protected by the attorney-client privilege and attorney work-product doctrine.  The documents bear Bates Nos. M 0199767-78 and M 0199769-70.

Pursuant to Section 13 of the Stipulated Protective Order in this litigation, please promptly destroy any and all electronic copies and return to me any and all paper copies of the above documents.  Further, when you return the documents, please certify that you have included all paper copies and that you have destroyed all electronic copies of the documents in your possession.

quinn emanuel urquhart oliver & hedges, llp

07975/2345633.1        NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

Exhibit  3
P.  70

01/17/2008 15:59 FAX 12134433100      QECUA-LRU-2

Michael H. Page, Esq.
Thomas J. Nolan, Esq.
Mark E. Overland, Esq.
January 17, 2008
Page 2

Please feel free to contact me or Harvinder Anand of my office, at (213) 443-3915, if you have any questions.

Very truly yours,

Timothy L. Alger

Exhibit 3
P. 71

01/17/2008 15:58 FAX 121344331⟋　　　　QEUOH-LAO-2　　　　⟍　　　　☒001/003

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

<table>
<tr><td><b>NEW YORK:</b><br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>(212) 849-7000<br>Facsimile: (212) 849-7100</td><td><b>LOS ANGELES</b><br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>(213) 443-3000<br>Facsimile: (213) 443-3100</td><td><b>SAN FRANCISCO</b><br>50 California Street, 22nd Floor<br>San Francisco, CA 94111<br>(415) 875-6600<br>Facsimile: (415) 875-6700</td></tr>
</table>

<b>SILICON VALLEY</b><br>555 Twin Dolphin Drive, Suite 560<br>Redwood Shores, CA 94065<br>(650) 801-5000<br>Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

**DATE:**   January 17, 2008                    **NUMBER OF PAGES, INCLUDING COVER:** 3

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| John W. Keker, Esq.; Michael H. Page, Esq. Christa M. Anderson, Esq. Keker & Van Nest, LLP | 415.391.5400 | 415.397.7188 |
| Thomas Nolan, Esq.; Carl Roth, Esq. Skadden, Arps, Slate, Meagher & Flom LLP | 213.687.5000 | 213.687.5600 |
| Mark Overland, Esq.; Alexander Cote, Esq. Overland Borenstein Scheper & Kim LLP | 213.613.4655 | 213.613.4656 |

**FROM:**      Timothy L. Alger

**RE:**        <u>Re: MGA Entertainment, Inc. v. Mattel, Inc.</u>

**MESSAGE:**

**FOR QUESTIONS OR ERROR IN TRANSMISSION, PLEASE DO NOT HESITATE TO CALL.**

*(vertical stamp: COPY CENTER 34TH FLOOR   08 JAN 17 PM 4: 12   SASH&F L.A.)*

07975/2357515.1

| CLIENT # | 7209 | ROUTE/ RETURN TO: | Tiffany Garcia/3rd Floor | ☒ CONFIRM FAX ☒ INCLUDE CONF. REPORT |
|---|---|---|---|---|
| OPERATOR: | | | CONFIRMED?  ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

**IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.**

Exhibit   3
P. 72

Exhibit 4

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

### 300 SOUTH GRAND AVENUE
### LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

DIRECT DIAL
(213) 687-5514
DIRECT FAX
(213) 621-5514
EMAIL ADDRESS
MMUMFORD@SKADDEN.COM

FIRM/AFFILIATE OFFICES
—
BOSTON
CHICAGO
HOUSTON
NEWARK
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

January 18, 2008

**VIA FACSIMILE**

Timothy L. Alger, Esq.
Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543

RE:     *Mattel, Inc. v. Bryant*

Dear Timothy:

I write in response to your letter of January 17, 2008, concerning documents M 0199767-68 and M 0199769-70. Pursuant to the Stipulated Protective Order, we are in the process of destroying all hard copies of these documents and deleting all available electronic copies.

We believe, however, the assertion of attorney-client privilege and work product immunity is inappropriate with respect to these documents. There was no indication that these documents reflected communications with counsel for the purpose of obtaining legal advice. Moreover, as you are aware, documents can have work product protection only if they were prepared in anticipation of litigation or trial. *FTC v. Grolier, Inc.*, 462 U.S. 19, 26 (1983). We understand that Mattel has taken the position in this litigation that Mattel "first learned of a probable claim" on November 24, 2003, "at the earliest," and prior to that time it had "no reason to suspect" its claims. It appeared these documents were prepared prior to that date, and therefore work product would not apply.

Based on the foregoing, we ask that Mattel immediately withdraw the improper privilege designations and re-produce the documents in question. Further, the fact that we understand Mattel refers to MGA as "NHB" leads us to believe there may be similar documents or files that have not been produced and that are not listed on Mattel's privilege log. We ask that Mattel immediately search for and produce all documents relating to NHB. If Mattel does not agree to do so, MGA anticipates

Exhibit  4 ,
P.  73

Timothy L. Alger, Esq.
January 18, 2008
Page 2


filing a motion to compel.  Please consider this letter our request for a meet and confer conference pursuant to the Discovery Master Stipulation, and please get back to me as soon as possible to discuss these issues.

Sincerely,

Marcus R. Mumford

cc: Michael H. Page, Esq.
    Mark E. Overland, Esq.

Exhibit 4
P. 74

# Confirmation Report — Memory Send

Time     : Jan-18-2008  07:08pm
Tel line : 2136875500
Name     : SASMF

| | | |
|---|---|---|
| Job number | : | 035 |
| Date | : | Jan-18 07:07pm |
| To | : | 914153977188 |
| Document pages | : | 003 |
| Start time | : | Jan-18 07:07pm |
| End time | : | Jan-18 07:08pm |
| Pages sent | : | 003 |
| Status | : | OK |

Job number   : 035          *** SEND SUCCESSFUL ***

---

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
### 300 SOUTH GRAND AVENUE
### LOS ANGELES, CALIFORNIA 90071-3144
TELEPHONE No.: (213) 687-5000
FACSIMILE No.: (213) 687-5600

EMAIL: mmumford@skadden.com

### FACSIMILE TRANSMITTAL SHEET

FROM: Marcus Mumford
DIRECT DIAL: (213) 687-5514
DIRECT FACSIMILE: (213) 621-5514

DATE: January 18, 2008
FLOOR/OFFICE No.: 36

THIS FACSIMILE IS INTENDED ONLY FOR USE OF THE ADDRESSEE(S) NAMED HEREIN AND MAY CONTAIN LEGALLY PRIVILEGED AND/OR CONFIDENTIAL INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS FACSIMILE, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS FACSIMILE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL FACSIMILE TO US AT THE ADDRESS ABOVE VIA THE LOCAL POSTAL SERVICE. WE WILL REIMBURSE ANY COSTS YOU INCUR IN MAILING US AND RETURNING THIS FACSIMILE TO US.

IF THIS TRANSMISSION IS UNCLEAR OR INCOMPLETE, PLEASE CONTACT THE FACSIMILE DEPARTMENT AT (213) 687-5443.
WHEN TRANSMITTING TO OUR MACHINES, PLEASE INCLUDE YOUR COVER SHEET AND NUMBER ALL PAGES CONSECUTIVELY.

TOTAL NUMBER OF PAGES INCLUDING COVER(S):    3

PLEASE DELIVER THE FOLLOWING PAGE(S) TO:

| | | |
|---|---|---|
| 1. | NAME: Timothy L. Alger, Esq. | FIRM: Quinn Emanuel Urquhart, etc. |
| | CITY: Los Angeles | TELEPHONE No.: (213) 443-3000 |
| | FACSIMILE No.: (213) 443-3100 | |
| 2. | NAME: Michael H. Page, Esq. | FIRM: Keker & Van Nest |
| | CITY: (415) 397-7188 | TELEPHONE No.: (415) 391-5400 |
| | FACSIMILE No.: | |
| 3. | NAME: Mark Overland, Esq. | FIRM: Overland Borenstein Scheper & Kim |
| | CITY: Los Angeles | TELEPHONE No.: (213) 613-4660 |
| | FACSIMILE No.: (213) 613-4656 | |

MESSAGE: Please see attached letter.

Exhibit 4
P. 75

**Confirmation Report — Memory Send**

|  |  |  |
|---|---|---|
| Time | : | Jan-18-2008  07:05pm |
| Tel line | : | 2136875600 |
| Name | : | SASMF |

| | | |
|---|---|---|
| Job number | : | 034 |
| Date | : | Jan-18 07:04pm |
| To | : | 912134433100 |
| Document pages | : | 003 |
| Start time | : | Jan-18 07:04pm |
| End time | : | Jan-18 07:05pm |
| Pages sent | : | 003 |
| Status | : | OK |

| Job number | : 034 | **\*\*\* SEND SUCCESSFUL \*\*\*** |
|---|---|---|

---

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3144

TELEPHONE No.: (213) 687-5000
FACSIMILE No.: (213) 687-5600

EMAIL: MMUMFORD@skadden.com

**FACSIMILE TRANSMITTAL SHEET**

FROM: Marcus Mumford                                    DATE: January 18, 2008
DIRECT DIAL: (213) 687-5514                             FLOOR/OFFICE No.: 36
DIRECT FACSIMILE: (213) 621-5514

THIS FACSIMILE IS INTENDED ONLY FOR USE OF THE ADDRESSEE(S) NAMED HEREIN AND MAY CONTAIN LEGALLY PRIVILEGED AND/OR CONFIDENTIAL INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT OF THIS FACSIMILE, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS FACSIMILE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL FACSIMILE TO US AT THE ADDRESS ABOVE VIA THE LOCAL POSTAL SERVICE. WE WILL REIMBURSE ANY COSTS YOU INCUR IN NOTIFYING US AND RETURNING THE FACSIMILE TO US.

IF THIS TRANSMISSION IS UNCLEAR OR INCOMPLETE, PLEASE CONTACT THE FACSIMILE DEPARTMENT AT (213) 687-5443.
WHEN TRANSMITTING TO OUR MACHINES, PLEASE INCLUDE YOUR COVER SHEET AND NUMBER ALL PAGES CONSECUTIVELY.

TOTAL NUMBER OF PAGES INCLUDING COVER(S):    3

PLEASE DELIVER THE FOLLOWING PAGE(S) TO:

| | | | | |
|---|---|---|---|---|
| 1. | NAME: Timothy L. Alger, Esq. | | FIRM: Quinn Emanuel Urquhart, etc. | |
| | CITY: Los Angeles | | TELEPHONE No.: (213) 443-3000 | |
| | FACSIMILE No.: (213) 443-3100 | | | |
| 2. | NAME: Michael H. Page, Esq. | | FIRM: Keker & Van Nest | |
| | CITY: | | (415) 391-5400 | |
| | FACSIMILE No.: (415) 397-7188 | | | |
| 3. | NAME: Mark Overland, Esq. | | FIRM: Overland Borenstein Scheper & Kim | |
| | CITY: Los Angeles | | (213) 613-4660 | |
| | FACSIMILE No.: (213) 613-4656 | | | |

MESSAGE: Please see attached letter.

Exhibit 4
P. 76

## Confirmation Report — Memory Send

Time    : Jan-18-2008  07:14pm
Tel line : 2136875600
Name    : SASMF

| | | |
|---|---|---|
| Job number | : | 037 |
| Date | : | Jan-18 07:13pm |
| To | : | 912136134656 |
| Document pages | : | 003 |
| Start time | : | Jan-18 07:13pm |
| End time | : | Jan-18 07:14pm |
| Pages sent | : | 003 |
| Status | : | OK |

Job number    : 037          *** SEND SUCCESSFUL ***

---

### SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3144
TELEPHONE No.: (213) 687-5000
FACSIMILE No.: (213) 687-5600
EMAIL: MMUMFORD@skadden.com

#### FACSIMILE TRANSMITTAL SHEET

FROM: Marcus Mumford                          DATE: January 18, 2008
DIRECT DIAL: (213) 687-5514                    FLOOR/OFFICE No.: 36
DIRECT FACSIMILE: (213) 621-5514

THIS FACSIMILE IS INTENDED ONLY FOR USE OF THE ADDRESSEE(S) NAMED HEREIN AND MAY CONTAIN LEGALLY PRIVILEGED AND/OR CONFIDENTIAL INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT OF THE FACSIMILE, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS FACSIMILE IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL FACSIMILE TO US AT THE ADDRESS ABOVE VIA THE LOCAL POSTAL SERVICE. WE WILL REIMBURSE ANY COSTS YOU INCUR IN NOTIFYING US AND RETURNING THE FACSIMILE TO US.

IF THIS TRANSMISSION IS UNCLEAR OR INCOMPLETE, PLEASE CONTACT THE FACSIMILE DEPARTMENT AT (213) 687-5443.
WHEN TRANSMITTING TO OUR MACHINES, PLEASE INCLUDE YOUR COVER SHEET AND NUMBER ALL PAGES CONSECUTIVELY.

TOTAL NUMBER OF PAGES INCLUDING COVER(S):    3

PLEASE DELIVER THE FOLLOWING PAGE(S) TO:

1. NAME: Timothy L. Alger, Esq.          FIRM: Quinn Emanuel Urquhart, etc.
   CITY: Los Angeles                     TELEPHONE No.: (213) 443-3000
   FACSIMILE No.: (213) 443-3100

2. NAME: Michael H. Page, Esq.           FIRM: Keker & Van Nest
   CITY: (415) 597-7188                  TELEPHONE No.: (415) 391-5400
   FACSIMILE No.:

3. NAME: Mark Overland, Esq.             FIRM: Overland Borenstein Scheper & Kim
   CITY: Los Angeles                     TELEPHONE No.: (213) 613-4660
   FACSIMILE No.: (213) 613-4656

MESSAGE: Please see attached letter.

Exhibit 4
P. 77

Exhibit 5

1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue
3  Los Angeles, CA  90071-3144
   Tel.: (213) 687-5000/Fax: (213) 687-5600
4
   RAOUL D. KENNEDY (Bar No. 40892)
5  (rkennedy@skadden.com)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  4 Embarcadero Center, 38th Floor
   San Francisco, CA  94111-5974
7  Tel.: (415) 984-6400 / Fax: (415) 984-2698

8  Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
   MGAE de Mexico, S.R.L. de C.V., and Isaac Larian
9
   JOHN W. KEKER (Bar No. 49092)
10 (jkeker@kvn.com)
   CHRISTA M. ANDERSON (Bar No. 184325)
11 (canderson@kvn.com)
   KEKER & VAN NEST LLP
12 710 Sansome St.
   San Francisco, CA  94111-1704
13 Tel.: (415) 391-5400 / Fax: (415) 397-7188

14 Attorneys for Carter Bryant

15                 UNITED STATED DISTRICT COURT

16              CENTRAL DISTRICT OF CALIFORNIA

17 CARTER BRYANT, an          )  CASE NO. CV 04-9049 SGL (RNBx)
   individual,                )
18                            )  **DISCOVERY MATTER**
          Plaintiff,          )
19                            )  MGA'S AND CARTER BRYANT'S JOINT
          v.                  )  NOTICE OF MOTION AND MOTION TO
20                            )  COMPEL PRODUCTION OF IMPROPERLY
   MATTEL, INC., a Delaware   )  WITHHELD MATTEL DOCUMENTS
21 corporation,               )  SHOWING MATTEL'S INVESTIGATION OF
                              )  MGA AND CARTER BRYANT PRIOR TO
22                            )  NOVEMBER 2003 AND TO COMPEL
          Defendant.          )  PRODUCTION OF ALL "NHB"
23 _____)  DOCUMENTS
                              )  [To be heard by Discovery Master Hon. Edward
24 AND CONSOLIDATED           )  Infante (Ret.) Pursuant to Court Order of
   ACTIONS                    )  December 6, 2006]
25 _____)
                              )
26 **CONFIDENTIAL –**            Hearing Date: TBD
   **ATTORNEY'S EYES ONLY**      Time: TBD
27 **– FILED UNDER SEAL**
   **PURSUANT TO**
28 **PROTECTIVE ORDER**

                    Exhibit _5_,
                    P. _78_

─────────────────────────────────────────────
Motion To Compel Production of Improperly Withheld Documents and All NHB Documents

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that, pursuant to Rule 26(b) of the Federal Rules of

3   Civil Prodcedure, MGA Entertainment, Inc. ("MGA") and Carter Bryant jointly

4   move the Court for an order compelling Mattel, Inc. ("Mattel") to (1) re-produce the

5   documents previously produced by Mattel bearing Bates Nos. M0199767-68 and

6   M0199769-70, which were improperly recalled by Mattel as allegedly privileged and

7   inadvertently produced; and (2) to compel production of all "NHB" documents that

8   are responsive to MGA's First Set of Requests for Production of Documents and

9   Things dated January 31, 2004.  Discovery Master Hon. Edward Infante (Ret.) will

10   preside over the hearing on this Motion at a date, time and manner to be determined.

11        MGA and Bryant attempted on several occasions over a seven-day period to

12   meet and confer regarding the subject matter of this motion.  Mattel refused to

13   respond in any substantive manner, refused to explain the basis of its assertions of

14   privilege or whether its collection, review and production of documents in this case

15   contemplated the fact that Mattel's internal codename for MGA was "NHB," and

16   only attempted to delay a meet and confer until the close of discovery.  This motion

17   is timely pursuant to paragraph 5 of the Discovery Master's Stipulation because

18   MGA and Bryant have shown good cause why they would be prejudiced absent a

19   prompt resolution of this issue prior to the discovery cut-off.

20

21

22

23

24

25

26

27

28

Exhibit 5
P. 77

1    This motion is based upon this notice of motion and motion, the

2  accompanying memorandum of points and authorities, the declaration of Marcus R.

3  Mumford filed concurrently herewith, the records and files of this court, and any

4  other matter of which the court may take judicial notice.

5  DATED:  January 28, 2008

                                    SKADDEN, ARPS, SLATE, MEAGHER &
6                                   FLOM, LLP
7
8                                   By: _____
                                        Raoul D. Kennedy
9                                       Attorney for MGA Entertainment, Inc.

10                                  KEKER & VAN NEST LLP
11
12                                  By: _____
                                        Christa M. Anderson
13                                      Attorney for Carter Bryant

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                            Exhibit 5 ,
                            P. 80

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

I.  FACTUAL BACKGROUND ........................................................ 3

    A.  Mattel Improperly Claws Back Documents M0199767-68 and M0199769-70 Claiming Attorney-Client Privilege and Work Product Immunity. .................................................... 3

    B.  Both Documents Are Responsive to Several of MGA's Document Requests. .......................................................... 4

    C.  Mattel's Delayed Response To MGA's Request For a Meet and Confer Has Prejudiced MGA, and Prevented the Parties From Complying With Local Rule 37-1. .......................... 6

II.  ARGUMENT .................................................................................... 7

    A.  Mattel's Assertion of Attorney-Client Privilege With Respect To M 0199767-68 and M 0199769-70 Is Improper. ..... 7

    B.  M 0199767-68 and M 0199769-70 Are Not Entitled To Work Product Immunity. ........................................................ 9

    C.  Mattel Must Produce All "NHB" Documents ........................... 11

III.  CONCLUSION ............................................................................ 12

Exhibit 5,
P. 81

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Clarke v. American Commerce National Bank,*
   974 F.2d 127 (9th Cir. 1992) ........................................................ 7

*Dombrowski v. Bell Atlantic Corp.,*
   128 F.Supp.2d 216 (E.D. Pa. 2000) ............................................. 9

*Fisher v. United States,*
   425 U.S. 391 (1976) ..................................................................... 8

*FTC v. Grolier, Inc.,*
   462 U.S. 19 (1983) ....................................................................... 9

*Green v. Baca,*
   226 F.R.D. 624 (9th Cir. 2005) .................................................... 9

*Griffith v. Davis,*
   161 F.R.D. 687 (C.D. Cal. 1995) ................................................. 8

*Hickman v. Taylor,*
   329 U.S. 495 (1947) ..................................................................... 9

*In re Syncor Erisa Litig.,*
   229 F.R.D. 636 (C.D. Cal. 2005) ................................................. 8

*United States v. Martin,*
   278 F.3d 988 (9th Cir. 2002) ........................................................ 8

*United States v. Munoz,*
   233 F.3d 1117 (9th Cir. 2000) ...................................................... 7

*United States v. Nobles,*
   422 U.S. 225 (1975) ..................................................................... 9

*Upjohn Co. v. United States,*
   449 U.S. 383 (1981) ..................................................................... 8

Exhibit 5
P. 82

## MEMORANDUM OF POINTS AND AUTHORITIES

This motion concerns two issues arising from Mattel's recent effort to clawback documents reflecting its codename "NHB" for MGA on unsubstantiated claims of attorney-client privilege and work product. The first issue concerns the documents themselves, bearing Bates No. M0199767-68 and M0199769-70.[1]

- M0199767-68 reflects a summary of former MGA employee Mercedah Ward's contact with Mattel, including the fact that Mattel employees were reaching out to her in 2001 for information concerning the development and creation of Bratz, and the suggestion that Mattel had concluded that Ward was the source of the anonymous letter Mattel CEO Robert Eckert received in August 2002 – extremely relevant information going, *inter alia*, to the parties' statute of limitations and laches defenses.

- M0199769-70 reflects a task list, dated August 10, 2003, including the efforts of Mattel employees to contact MGA employees; a "suspected mole"; the obtaining of human resources files of Mattel employees; the pulling of Carter Bryant's PeopleSoft information and employment file; a reference to Mattel's current trial counsel; and inquiries into MGA and Carter Bryant. The assertion of work product with respect to this document, dated August 2003, is particularly problematic in that it directly contravenes the position Mattel has taken with this Court concerning when it first suspected and began collecting evidence concerning the alleged wrongdoing.

---

[1] On January 18, 2007, and pursuant to the Stipulated Protective Order, MGA sent a letter to Mattel indicating that it was in the process of destroying hard copies and deleting all electronic copies of the documents. *See* Declaration Of Marcus R. Mumford In Support Of MGA's And Carter Bryant's Joint Motion To Compel Production Of Improperly Withheld Mattel Documents Showing Mattel's Investigation Of MGA And Carter Bryant Prior To November 2003 And To Compel Production Of All "NHB" Documents ("Mumford Decl."), Ex. 2: Letter from Marcus R. Mumford to Timothy L. Alger, dated January 18, 2008.

Exhibit 5 ,
p 47

1   Unsurprisingly, Mattel has refused two requests to substantiate its assertions

2 of privilege and work product immunity with respect to these documents. As can be

3 clearly ascertained from their face, these documents refute Mattel's allegation that it

4 had *no reason to suspect* the claims asserted in this lawsuit prior to November 2003.

5 (*See* Mattel's Second Amended Answer & Counterclaims ¶¶ 35-36.) Further, in

6 opposition to MGA's and Bryant's Joint Motion for Terminating Sanctions filed

7 before this Court last summer, Mattel asserted that it had no duty to preserve

8 evidence prior to November 2003 because

9     [c]ontrary to defendants' speculations, Mattel first learned
10    of a probable claim in late 2003, at the earliest. It was then
     that Mattel first obtained evidence that Bryant worked for
11    MGA while employed by Mattel, when it obtained a copy
     of the MGA/Bryant agreement revealing that. Before that,
12    no claims were probable, and the investigated claims were
     never brought.[2]

13 Based on Mattel's representation, this Court denied the motion for terminating

14 sanctions, holding that Mattel had no duty to preserve evidence until November 24,

15 2003, "when litigation between Mattel and Bryant became more than merely

16 speculative and in fact became probable."[3] Thus, the documents that Mattel clawed

17 back, and the assertion of privilege and work product with respect to those

18 documents, shows that Mattel has been much less than forthcoming to this Court on

19 prior occasions.

20   The attorney-client privilege and the immunity bestowed by the work-product

21 doctrine should not be applied to these documents. There is no indication anywhere

22 that they reflect or contain any confidential communications with counsel for the

23 purpose of obtaining legal advice. Moreover, the fact that they were prepared or

24 were dated pre-November 2003 negates all claims by Mattel that they were prepared

25 in anticipation of this litigation.

26 ————————————

27 [2] Mumford Decl., Ex. 7: Mattel's Opposition to Motion of MGA Entertainment, Inc. and Carter Bryant for Terminating Sanctions at 13 (filed Aug. 13, 2007).

28 [3] 8/27/07 Order at 3.

Exhibit 5
P. 22

1  The second issue concerns Mattel's use of the codename "NHB" for MGA.

2 Other than the two clawed back documents, it appears there is only one instance of

3 "NHB" in the Mattel production – the use of "NHB Timeline" across the top of an

4 email that Mattel CEO Robert Eckert forwarded to himself related to this lawsuit.[4]

5 There are no other "NHB" documents in the production or Mattel's privilege logs.

6 Obviously, Mattel should not be able to hide behind its own codename for MGA to

7 avoid its discovery obligations.  And Mattel has not taken the opportunity from the

8 time MGA and Bryant raised the issue to explain the lack of NHB documents in the

9 document production.  Thus, MGA and Bryant request that Mattel should be

10 compelled to collect and produce all documents referring to "NHB" that are

11 otherwise responsive to MGA's and Bryant's document requests.

12 **I.    FACTUAL BACKGROUND**

13     **A.    Mattel Improperly Claws Back Documents M0199767-68 and**
        **M0199769-70 Claiming Attorney-Client Privilege and Work**

14         **Product Immunity.**

15  On January 17, 2008, Mattel sent a letter to MGA via facsimile, asserting that

16 it had inadvertently produced in discovery two documents protected by the attorney-

17 client privilege and the attorney work-product doctrine.[5]  The documents were

18 referenced in the letter as bearing Bates Nos. M 0199767-68 and M 0199769-70.[6]

19 On January 18, 2008, MGA responded that it was in the process of destroying all

20 hard and electronic copies of the documents.[7]  MGA also challenged the assertion of

21 attorney-client privilege and work product immunity with respect to these documents,

22

23

---

24 [4] Mumford Decl., Ex. 6: M0257834.

25 [5] Mumford Decl., Ex. 1: Letter from Timothy L. Alger to Michael H. Page, Mark E. Overland, and Thomas J. Nolan, dated January 17, 2008.

26 [6] Mattel's letter actually stated M0199767-78, which appears to have been a typo in that 11-page range would subsume the subsequent M0199769-70 range.

27 [7] Mumford Decl., Ex. 2: Letter from Marcus R. Mumford to Timothy L. Alger, dated

28 January 18, 2008.

1  and requesting a meet and confer and further information concerning these

2  documents.

3      The document bearing Bates No. M0199767-68 consists of a bullet-point

4  summary of Ms. Ward's employment background.  The document includes

5  references to MGA as "NHB," and lists information about her employment with

6  MGA such as the date of her application to MGA, date of MGA's offer, and her first

7  day at MGA.  This document also reflects the contents of a handwritten note by Ms.

8  Ward addressed to what would be apparently Mattel employee Joe Franke, to whom

9  she explains her role in the development of Bratz in response to a discussion with

10  Rene Pasko, a Mattel employee.  This document, therefore, clearly indicates that

11  Mattel was having its employees reach out to MGA employee Mercedah Ward in

12  December 2001 for information concerning the development of Bratz.  The

13  document further makes references to Ms Ward as the possible "source" of the

14  anonymous August 2002 letter regarding Carter Bryant.

15      The document bearing Bates No. M 0199769-70 is titled "NHB – TO DO."  It

16  is a chart with a list of several tasks, which are dated August 10, 2003, that include

17  discovering the identity of several individuals; pulling human resources files of

18  Mattel employees; obtaining information on Carter Bryant from People Soft, his

19  employment file, and his October time log; interviewing Mattel employees; and

20  investigating MGA.  References to MGA as "NHB" are also made in this document.

21  **B.   Both Documents Are Responsive to Several of MGA's Document

22  Requests.**

23      The documents that Mattel is now attempting to claw back are not only devoid

24  of any privilege or immunity, but are valuable to MGA's defenses as they are

25  responsive to several of MGA's document production requests geared towards

26  Mattel's internal investigations and knowledge as to its claims in this lawsuit.

27      In this action, MGA has propounded document production requests aimed at

28  discovering when Mattel first suspected, or had reason to suspect, that it had claims

1  against MGA and/or Carter Bryant.  Documents M0199767-68 and M0199769-70

2  are responsive to these requests.  Here, document M0199767-68 clearly is relevant to

3  MGA's requests with respects to Mattel's contact with former employees for

4  information concerning the development of Bratz and Bryant's involvement with

5  MGA.  MGA has made requests for documents "constituting, mentioning, describing,

6  discussing, referring, or relating to all COMMUNICATIONS with any current or

7  former MATTEL employee or contractor that refer or relate to the BRATZ

8  CONCEPT, the FIRST BRATZ DOLLS, or BRYANT'S work for MGA."[8]

9  Moreover, document M0199767-78 is responsive to MGA's requests for documents

10  "constituting, discussing, mentioning, describing, referring or relating to the August

11  5, 2002 anonymous letter sent to Robert Eckert produced in this litigation by

12  MATTEL," and "to any investigation of or follow-up regarding the August 5, 2002

13  anonymous letter."[9]

14        Document M0199769-70 is responsive to several document requests sought by

15  MGA with regards to Mattel's investigations and when Mattel first learned of the

16  claims it is now pursuing.  MGA has requested, for example, all documents

17  "evidencing, mentioning, referring to, or relating to the date and manner in which

18  [Mattel] *first learned* of Bryant's involvement with, work on, and connection to the

19  conception, design, creation or development of Bratz or Bratz Intellectual Property"

20  and "BRYANT's involvement with, contract with, and work with or for MGA."[10]

21  MGA has also sought documents "mentioning, describing, discussing, referring, or

22  relating to *any investigation* performed by [Mattel] in response to any

23  COMMUNICATION [Mattel] may have received from any source expressing,

24  suggesting or implying that MGA copied or used any idea, design or intellectual

25

26  [8] Mumford Decl., Ex. 3: MGA's First Set of Requests For the Production of
   Documents and Things at 68 (Request 250).

27  [9] *See id.* at 68-9 (Requests 252-53).

28  [10] *See id.* at 56 (Requests 191-92).

Exhibit 5,
P. 27

1   property owned by MATTEL, in connection with the conception, design or

2   development of BRATZ, or BRATZ INTELLECTUAL PROPERTY."[11]   In addition,

3   MGA has demanded documents "evidencing or reflecting [Mattel's] efforts to

4   investigate Bryant's involvement with, contract with, and work with or for MGA," as

5   well as "BRYANT's involvement with, work on, or connection to the conception,

6   design, creation or development of Bratz."[12]

7            However, both documents are most responsive to MGA's requests for

8   documents "refuting" Mattel's allegation that "[i]n late November 2003, Mattel

9   learned that Bryant had secretly aided, assisted and worked for a Mattel competitor,"

10  and Mattel's allegation that "Mattel had no reason to suspect that Bryant had worked

11  for the competitor while still employed by Mattel until late November 2003."[13]   Thus,

12  it is only fair and just for MGA to have access to these pre-November 2003

13  documents to rebut Mattel's fraudulent concealment claims and establish its defenses

14  of laches and the appropriate statute of limitations accrual date.

15       **C.    Mattel's Delayed Response To MGA's Request For a Meet and**
              **Confer Has Prejudiced MGA, and Prevented the Parties From**
16            **Complying With Local Rule 37-1.**

17           On January 18, 2008, MGA informed Mattel that, contrary to its assertion,

18  both M0199767-68 and M0199769-70 are not privileged or entitled to work-product

19  immunity and should be reproduced.[14]   Mattel's counsel, however, did not respond to

20  this request until seven days later through a letter, dated January 25, 2008, in which

21  Mattel's counsel delayed further resolution of the issue by requesting a meet and

22  confer until January 28, 2008, the discovery cut–off date designated by this Court,

23  and ten days after having received MGA's letter requesting a meet and confer.[15]   That

24  ――――――――――――――――

25  [11] *See id.* at 62-3 (Request 223).

    [12] *See id.* at 56-7 (Requests 193-94).

26  [13] *See id.* at 76-7 (Requests 286, 290).

27  [14] *See* Mumford Decl., Ex. 2.

    [15] Mumford Decl., Ex. 4: Letter from Timothy Alger to Marcus Mumford, dated

28  January 25, 2008.

――――――――――――――――

Exhibit 5,
P. 88

1  same day, MGA's counsel responded to Mattel's letter via email, informing Mattel

2  that further delay of this issue until the discovery cut-off was unacceptable and

3  prejudiced MGA.[16]  Pursuant to paragraph 5 of the Discovery Master's Stipulation, a

4  party is entitled to an expedited schedule where a party is prejudiced by the other

5  party's failure to provide a prompt response.

6        Here, MGA has definitely been prejudiced by Mattel's reluctance to address

7  the issue regarding documents M0199767-68 and M0199769-70.  Mattel did not

8  respond timely to MGA's request, but instead waited a week to finally notify MGA

9  of its availability to meet and confer.  Mattel's offer to meet and confer was not

10  aimed at resolving the issue, but rather only prolonged any discussion between the

11  parties as to Mattel's assertion of privilege and as to Mattel's referencing of MGA as

12  "NHB."  Nowhere did Mattel explain what authority or argument they based their

13  clawback of these documents.   Further, the response ignored MGA's request to

14  determine whether Mattel's document collection, review, and production in this

15  matter involved documents in which Mattel refers to MGA under the codename

16  "NHB" that were created prior to the date Mattel represented to the Court it learned

17  of a "probable claim."  MGA has good cause to seek from this Court an expedited

18  schedule as to this matter based on Mattel's failure to promptly respond to MGA's

19  request for a meet and confer.

20  **II.**    **ARGUMENT**

21        **A.**    **Mattel's Assertion of Attorney-Client Privilege With Respect To M 0199767-68 and M 0199769-70 Is Improper.**

22

23        The burden of showing the existence of the attorney-client privilege rests upon

24  the party asserting the privilege. *See United States v. Munoz*, 233 F.3d 1117, 1128

25  (9th Cir. 2000); *see also Clarke v. American Commerce Nat'l. Bank*, 974 F.2d 127,

26  129 (9th Cir. 1992) ("The burden of establishing that the attorney-client privilege

27  [16] Mumford Decl., Ex. 5: Email from Marcus Mumford to Timothy Alger, dated

28  January 25, 2008.

1  applies to the documents in question rests with the party asserting the privilege.")

2  (citations omitted); *In re Syncor Erisa Litig.*, 229 F.R.D. 636, 644 (C.D. Cal. 2005)

3  ("The burden is on the party asserting the privilege to establish all the elements of

4  the privilege."). Thus, here, Mattel bears the burden. To establish that the attorney-

5  client privilege applies, Mattel must prove the following elements: (1) legal advice is

6  sought (2) from a professional legal adviser in his or her capacity as such, (3) the

7  communication relates to that purpose, (4) is made in confidence (5) by the client, (6)

8  are, at the client's instance, permanently protected (7) from disclosure by the client or

9  by the legal adviser (8) unless the protection be waived. *United States v. Martin*, 278

10  F.3d 988, 999-1000 (9th Cir. 2002). The attorney-client privilege, therefore, only

11  protects disclosures or communications "'necessary to obtain *informed legal advice-*

12  which might not have been made absent the privilege.'" *Griffith v. Davis*, 161 F.R.D.

13  687, 694 (C.D. Cal. 1995) (quoting *Fisher v. United States*, 425 U.S. 391, 403, 96

14  S.Ct. 1569, 1577, 48 L.Ed 2d 39 (1976)) (emphasis added).

15      Because documents bearing Bates Nos. M 0199767-68 and M 0199769-70 fail

16  to reflect communications with Mattel's counsel for the purpose of obtaining legal

17  advice, Mattel cannot establish that either is privileged. Both documents contain no

18  indicia of a request for legal advice. For example, M 0199767-78 merely recites

19  facts regarding Ms. Ward's employment background, such as her employment

20  history, personal information, as well as some information Ms. Ward has provided

21  Mattel that are relevant to the claims in this case that include her involvement and

22  knowledge regarding the development of Bratz. Thus, none of the information

23  contained in the document appear to be disclosures to legal counsel for the purpose

24  of seeking legal advice, but rather a summary of underlying facts, which unlike

25  communications fall outside the protection of the attorney-client privilege. *See*

26  *Upjohn Co. v. United States*, 449 U.S. 383, 395-96, 101 S.Ct. 677, 685-86, 66 L.Ed.

27  2d 584 (1981) ("The privilege only protects disclosure of communications; it does

28  not protect disclosure of the underlying facts by those who communicated with the

Exhibit 5
p. 46

1   attorney."); *Pastrana v. Local 9509, Commc'ns Workers of Am., AFL-CIO*, Civil No.

2   06cv1779 W(AJB), 2007 WL 2900477, at *3 (S.D. Cal. Sept. 28, 2007) (noting that

3   the "privilege does not protect facts communicated to an attorney.  Clients cannot

4   refuse to disclose facts which their attorneys convey to them and which the attorneys

5   obtain from independent sources"); *Dombrowski v. Bell Atl. Corp.*, 128 F. Supp. 2d

6   216, 219 (E.D. Pa. 2000) ("[The privilege] does not insulate underlying facts from

7   the light of day.").  Likewise, document M0199769-70, on its face, lacks any

8   evidence that it reflects any type of communications with counsel.  The document is

9   merely a "to do" list with respects to investigations into Mr. Bryant and MGA.

10  Although some references are made to Mattel's legal counsel, the document does not

11  appear to contain any confidential communications or disclosures between Mattel

12  and its legal counsel.  Thus, because the documents do not by themselves reflect the

13  fact of a confidential communication or that they were prepared for the transmission

14  to legal counsel for the primary purpose of seeking legal advice, these documents are

15  not privileged.

16      **B.   M 0199767-68 and M 0199769-70 Are Not Entitled To Work
            Product Immunity.**

17

18      The work-product immunity, codified in Federal Rule of Civil Procedure

19  26(b)(3), protects from disclosure documents and tangible things prepared by a party

20  or his representative in anticipation of litigation.  *See* Fed. R. Civ. Proc. 26(b)(3);

21  *Green v. Baca*, 226 F.R.D. 624, 652 (C.D. Cal. 2005); *see also United States v.*

22  *Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed. 2d 141 (1975); *Hickman v. Taylor*,

23  329 U.S. 495, 67 S.Ct. 135, 91 L.Ed. 451 (1947).  Thus, documents can have work

24  product protection only if they were prepared in anticipation of litigaton or trial.  *See*

25  *FTC v. Grolier, Inc.*, 462 U.S. 19, 26, 103 S.Ct. 2209, 2214, 76 L. Ed. 2d 337 (1983).

26  In order to qualify for protection against discovery under the work-product immunity,

27  documents must have two characteristics: "(1) it must be prepared in anticipation of

28  litigation or for trial; and (2) it must be prepared by or for another party or by or for

---

Exhibit 5,
p 91

1  that other party's representative." *Green*, 226 F.R.D. at 652. A document is prepared

2  in anticipation of litigation when "in light of the nature of the document and the

3  factual situation in the particular case, the document can fairly be said to have been

4  prepared or obtained *because of* the prospect of litigation." 8 Charles A. Wright, et

5  al., Federal Practice and Procedure § 2024 at p. 343( 2d ed. 1994) (emphasis added).

6      Here, Mattel is precluded from asserting the immunity afforded by the work

7  product doctrine because the documents were not prepared in anticipation of

8  litigation. Mattel has alleged in its responses to MGA's interrogatories that

9  November 24, 2003 was the date in which Mattel first learned of a probable claim

10  against Mr. Bryant and MGA.[17] Before that time, Mattel has taken the position that

11  it had no knowledge or reason to know the facts that make up its lawsuit. Therefore,

12  any documents prepared before that date cannot be categorized as work-product.

13  Both documents, which Mattel now argues are protected by the attorney work-

14  product doctrine appear to have been created or prepared prior to November 2003.

15  For instance, M0199769-70 notes the date in which the tasks were listed as August

16  10, 2003, which negates Mattel's claim that this document was prepared in

17  anticipation of litigation or trial. Moreover, M0199767-68 lists under the caption

18  "Notes" that Mercedah Ward is "[p]resently interested in employment with Mattel."

19  This notation indicates that this document must have been prepared or created during

20  the time in which Ms. Ward applied for a position at Mattel. Based on an email

21  produced by Mattel that was written by Ms. Ward to Ms. Cassidy Park, Ms. Ward

22  applied for a position at Mattel in June of 2003, and her resume was subsequently

23  forwarded by Ms. Park to Michael Moore.[18] This leads MGA to deduce that the

24  document must have been created around June or July of 2003, several months prior

25  _____

26  [17] *See* Mattel, Inc.'s Second Supplemental Responses To Defendant's First Set of
Interrogatories at 301; Supplemental Responses To MGA's First Set of
27  Interrogatories To Mattel, Inc. at 113-114.

28  [18] Mumford Decl., Ex. 8: M007415B.

Exhibit *5*,
P. *92*

1  to the date Mattel argues was the first time they believe they had a probable claim

2  against Mr. Bryant and MGA.  There is no question, therefore, that both documents

3  were not prepared in "anticipation of litigation or trial," which prevents Mattel from

4  asserting the work-product doctrine.

5        **C.**    **Mattel Must Produce All "NHB" Documents**

6        Pursuant to Federal Rule of Civil Procedure 26(b), a party can obtain

7  discovery "regarding any matter, not privileged, that is *relevant to the claim or*

8  *defense of any party*."  Fed. R. Civ. Proc. 26(b)(1) (emphasis added).  As has been

9  made very clear by both documents M0199767-68 and M0199769-70, Mattel has for

10  some time been deliberately referencing MGA not only with the initials "MGA," but

11  also through the codename "NHB."  M0199767-68 and M0199769-70 alerted MGA

12  to the likelihood that Mattel has in its possession similar documents and files that

13  may be relevant and responsive to MGA's discovery requests.

14        All documents referencing MGA as "NHB" are without a doubt responsive to

15  any document request propounded by MGA that call for MGA documents regardless

16  of the manner in which MGA is referenced.  Some obvious requests for document

17  production sought by MGA in which "NHB" documents are clearly responsive

18  include requests for documents "expressing, mentioning, discussing, referring or

19  relating to any actual, alleged or perceived connection between BRYANT, BRATZ,

20  BRATZ INTELLECTUAL PROPERTY or MGA on the one hand, and 'Toon Teens'

21  on the other hand;"[19] "sent to or received from the NPD Group discussing,

22  mentioning, relating to, or referring to . . . MGA;"[20] "mentioning, referring to, or

23  relating to any consideration given by Mattel to acquiring MGA;"[21] "received by

24  [Mattel] from any source expressing, suggesting or implying that MGA copied or

25  

26  [19] Mumford Decl., Ex. 3: MGA's First Set of Requests For Production of Documents and Things at 34-5 (Request 98).

27  [20] *See id.* at 53 (Request 176).

28  [21] *See id.* at 55 (Request 189).

Exhibit 5
p. 85

1  used any idea, design or intellectual property owned by MATTEL in connection with

2  the conception, design, or development of BRATZ or BRATZ INTELLECTUAL

3  PROPERTY."[22]  Thus, all documents in which MGA is described as "NHB" and are

4  responsive to any of MGA's document requests must be produced by Mattel as soon

5  as possible.

6  **III.  CONCLUSION**

7       For the foregoing reasons, MGA and Bryant respectfully request this Court to

8  issue an order (1) to re-produce the documents previously produced by Mattel

9  bearing Bates Nos. M0199767-68 and M0199769-70, and which were improperly

10  recalled by Mattel as allegedly privileged and inadvertently produced; and (2) to

11  compel production of all "NHB" documents that are responsive to MGA's First Set

12  of Requests for Production of Document and Things dated January 31, 2004.

13  DATED:  January 28, 2008

14                          SKADDEN, ARPS, SLATE, MEAGHER &

15                          FLOM, LLP

16                          By:

16                          Raoul D. Kennedy

17                          Attorney for MGA Entertainment, Inc.

18

19                          KEKER & VAN NEST LLP

20                          By:

20                          Christa M. Anderson

21                          Attorney for Carter Bryant

22

23

24

25

26

27

---

28  [22] *See id.* at 62 (Request 221).

Exhibit 5,
P. 94