QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
  Tania Krebs (Bar No. 227281)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff
Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>            Plaintiff,<br><br>    v.<br><br>CARTER BRYANT, an individual; and DOES 1 through 10, inclusive,<br><br>            Defendants. | Case No. CV 04-3431 NM (RNBx)<br><br>DISCOVERY MATTER<br><br>[PUBLIC REDACTED] DECLARATION OF MICHAEL T. ZELLER IN SUPPORT OF MATTEL, INC.'S EX PARTE APPLICATION RE: MOTION TO COMPEL DEPOSITION OF DEFENDANT CARTER BRYANT<br><br>Hon. Robert N. Block |

# DECLARATION OF MICHAEL T. ZELLER

I, Michael T. Zeller, declare as follows:

1. I am a member of the bars of the States of California, New York and Illinois and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for plaintiff, Mattel, Inc. I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2. On June 17, 2004, Mattel served a Notice of Deposition for defendant. Attached hereto as Exhibit 1 is a true and correct copy of the Notice of Deposition to Defendant Carter Bryant.

3. On June 17, Mattel also sent defendant a proposed Protective Order for review and comment. Attached hereto as Exhibit 2 is a true and correct copy of my letter dated June 17, 2004 to Douglas Wickham and the attached proposed Protective Order.

4. The next day, defendant filed with the Court an ex parte application that sought a complete stay of discovery by Mattel and of all disclosure obligations by defendant, among other things. Defendant specifically cited Mattel's deposition notice of defendant in its papers. Mattel opposed the application, and Judge Manella denied the entirety of defendant's application, including his stay requests, by an Order dated June 22, 2004. Attached hereto as Exhibit 3 is a true and correct copy of Judge Manella's Order dated June 22, 2004.

5. In his ex parte application, defendant raised his first (and only) alleged complaint about his deposition, asserting that Mattel's Notice of Deposition was purportedly "procedurally defective" because it noticed his deposition for Los Angeles. Attached hereto as Exhibit 4 is a true and correct excerpt from Defendant's Ex Parte Application for an Order Postponing Rule 26 Obligations, Staying Discovery Pending Resolution of Plaintiff's Motion for Remand, and Advancing the Hearing Date on Plaintiff's Motion for Remand to

July 19, 2004. Mattel wrote to defendant's counsel on June 22 in an effort to resolve this single objection which defendant had raised about the deposition, offering to take defendant's deposition in any location he proposed. Attached hereto as Exhibit 5 is a true and correct copy of my letter dated June 22, 2004, to Douglas Wickham.

6. Defendant wrote back, but without providing any response to Mattel's invitation to take the deposition in a city he selected. Attached hereto as Exhibit 6 is a true and correct copy of a letter I received from Douglas Wickham dated June 22, 2004.

7. It was only after yet another request by Mattel on June 23, 2004 that defendant finally identified St. Louis as the location preferred for his deposition in a letter dated June 24, 2004. Defendant also claimed, for a variety of reasons, that he was unavailable for deposition for almost two months, until the week of August 16 at the earliest. Attached hereto as Exhibit 7 is a true and correct copy of my letter to Douglas Wickham dated June 23, 2004. Attached hereto as Exhibit 8 is a true and correct copy of a letter I received from Douglas Wickham dated June 24, 2004.

8. In its response on the following day, June 25, Mattel noted that defendant had no right, through such a lengthy delay, to arrogate to himself the very discovery stay that Judge Manella had rejected and did not consider defendant's evolving excuses for his refusal to appear for deposition to be legitimate. To resolve the dispute, however, Mattel proposed that defendant enter into a Stipulation ensuring that he would appear for deposition at the time and place he stated that he was available. Attached hereto as Exhibit 9 is a true and correct copy of my letter to Douglas Wickham dated June 25, 2004, including the attached draft Stipulation and [Proposed] Order.

9. Counsel for Mattel and defendant held the early discovery planning meeting of counsel pursuant to Rule 26(f) on May 21, 2004. At the

07177/600466.1

-3-

DECLARATION OF MICHAEL T. ZELLER

meeting, the parties agreed that discovery should not be conducted in phases, and that discovery should be taken on all issues. On June 28, 2004, Mattel filed a Unilateral Report of Parties' Planning Meeting Pursuant to Rule 26(f). Mattel ultimately was forced to file the Report unliaterally due to defendant's lack of cooperation in preparing a Joint Report. The Report confirms that at the parties' early meeting of counsel, the parties agreed that discovery would not be conducted in phases. Attached hereto as Exhibit 10 is a true and correct copy of the Unilateral Report of Parties' Planning Meeting. Defendant never disputed this statement of what the parties had agreed to at the early meeting.

10. Five days passed without response by defendant. Accordingly, on June 30, Mattel contacted him again and asked for a reply to its June 25 proposal seeking defendant's binding assurance that he would appear for deposition. Attached hereto as Exhibit 11 is a true and correct copy of my letter to Douglas Wickham dated June 30, 2004.

11. Then another five days passed, with still no response from defendant. Mattel again followed up on July 5. Attached hereto as Exhibit 12 is a true and correct copy of my letter to Douglas Wickham dated July 5, 2004.

12. Defendant still did not respond, so Mattel followed up yet again on July 8 and reminded defendant that his time to meet and confer on the deposition dispute as required by the Rules was expiring. Attached hereto as Exhibit 13 is a true and correct copy of my letter to Douglas Wickham dated July 8, 2004.

13. Defendant finally replied on July 8, but he declined to meet and confer within the time mandated by Local Rule 37-1. Nor did he respond to Mattel's straight-forward proposal of June 25 that he stipulate to his deposition taking place on a date certain or provide any reason why he would not respond to the proposal. Attached hereto as Exhibit 14 is a true and correct copy of a letter I received from Douglas Wickham dated July 8, 2004.

07177/600466.1

-4-

DECLARATION OF MICHAEL T. ZELLER

14. On July 11, due to defendant's failure to meet and confer within the time mandated by Local Rule 37-1, Mattel sent defendant its portions of a Joint Stipulation for plaintiff's motion to compel the defendant's deposition. Attached hereto as Exhibit 15 is a true and correct copy of my letter to Douglas Wickham dated July 11, 2004 and attaching a draft of a Joint Stipulation for plaintiff's motion to compel the defendant's deposition.

15. On July 12, in its continuing efforts to resolve defendant's failure to appear for deposition, Mattel sent a letter to defendant offering to continue to try and resolve defendant's dispute over his deposition so as to avoid burdening the Court, and suggesting July 13 as a date to meet. Attached hereto as Exhibit 16 is a true and correct copy of my letter to Douglas Wickham dated July 12, 2004.

16. On July 12, defendant responded with a letter agreeing to meet to discuss the issue. Attached hereto as Exhibit 17 is a true and correct copy of a letter I received from Douglas Wickham dated July 12, 2004.

17. I responded to defendant later on July 12 and agreed to meet on July 13 to discuss resolving issues regarding defendant's deposition. Attached hereto as Exhibit 18 is a true and correct copy of my letter to Douglas Wickham dated July 12, 2004.

18. At the meeting on July 13, 2004, defendant's counsel, Keith Jacoby and Douglas Wickham, stated that a motion to compel the deposition was "unnecessary" because defendant's counsel were giving their "word as attorneys" that defendant would appear for deposition in St. Louis during the week of August 16, 2004. This representation was confirmed in writing by defendant's counsel the following day. Attached hereto as Exhibit 19 is a true and correct copy of a letter I received from Keith Jacoby dated July 14, 2004. Defendant's counsel also stated at the meeting that requiring a signed Stipulation to ensure defendant's appearance at the agreed-upon time and place was "unnecessary" and "insulting" because their

07177/600466.1

-5-

DECLARATION OF MICHAEL T. ZELLER

"word as attorneys" was "good enough" to ensure that defendant would appear for deposition at the agreed-upon time and place.

19. Rather than burden the Court with a motion at that point, Mattel relied on the representations of defendant's counsel and made arrangements to take defendant's deposition. Attached hereto as Exhibit 20 is a true and correct copy of my letter to Keith Jacoby dated July 14, 2004, which further confirmed defendant's counsel's representations as attorneys that defendant would appear for deposition at the agreed-upon time and place. Plaintiff's counsel purchased plane tickets, arranged for video and a court reporter at the deposition, obtained space in St. Louis for the deposition, made hotel arrangements, and rearranged other client matters in order to be free to travel to St. Louis.

20. Also delaying the discovery process, defendant did not provide any comments on a proposed Protective Order for almost a month, despite repeated requests by plaintiffs. The first comments I received from defendant on the draft protective order -- which I sent to defendant on June 17 -- were at the meeting on July 13. Defendant then delayed signing the protective order as revised. Finally, on Monday, August 9, defendants signed and returned the protective order.

21. With the Protective Order in place, plaintiff agreed to produce documents to defendant (including any documents that might be asked about at defendant's deposition). On Thursday, August 12, 2004, Mattel produced five boxes of documents (12,563 pages) to defendant.

22. Also on August 9, I met and conferred with defendant's counsel regarding Mattel's responses to defendant's document requests. During that discussion, I explained that many of defendant's document requests were unreasonably and unworkably overbroad as propounded. Defendant agreed that many of the document requests discussed were worded too broadly. Defendant further agreed to attempt to create more limited requests and provide proposed

language narrowing the requests in a letter, which plaintiff in turn agreed to consider. Defendant has never sent such a letter, however.

23. I sent an e-mail to defendant on Monday, August 9 inquiring about the start time of the deposition. Attached hereto as Exhibit 21 is a true and correct copy of my e-mail to Keith Jacoby dated August 9, 2004. Receiving no response from defendant, plaintiff sent an e-mail to defendant on Wednesday, August 11, requesting that the deposition begin at 9 a.m. Attached hereto as Exhibit 22 is a true and correct copy of an email from John Quinn to Douglas Wickham dated August 11, 2004. Plaintiff received no response to the e-mail.

24. On August 11, plaintiff sent defendant and MGA an Amended Notice of Deposition of Carter Bryant, setting out a start time of 9 a.m. in St. Louis, Missouri. Attached hereto as Exhibit 23 is a true and correct copy of the Amended Notice of Deposition of Carter Bryant.

25. On the afternoon of Friday, August 13, defendant faxed to plaintiff, without notice and without any discussion with Mattel beforehand, a letter unconditionally canceling defendant's scheduled deposition. Attached hereto as Exhibit 24 is a true and correct copy of an August 13, 2004 letter from Robert Millman to John Quinn.

26. Along with the letter from Mr. Millman, defendant sent to plaintiff a 58-page Joint Stipulation with regard to Mattel's document discovery that Mr. Millman's August 13 letter also cited as an alleged justification for refusing to produce defendant for deposition. Attached hereto as Exhibit 25 is a true and correct copy of defendant's proposed Joint Stipulation dated August 13, 2004.

27. Late that same afternoon, August 13, I spoke with Keith Jacoby regarding defendant's sudden cancellation of his deposition, in an attempt to avoid Court intervention over the issue. I also sent a letter on August 15, 2004, responding to defendant's cancellation letter, addressing defendant's assertions in

detail, and again seeking to resolve this dispute without burdening the Court with a motion. Attached hereto as Exhibit 26 is a true and correct copy of my letter to Robert Millman dated August 15, 2004. I then spoke with Keith Jacoby on August 16 and August 17 in a further effort to obtain defendant's agreement to appear for deposition without having to burden the Court, but to no avail.

28. During my conversations with defendant's counsel after defendant's cancellation of the deposition, counsel reiterated the complaints in Mr. Millman's letter with regard to Mattel's production as the alleged justification for breaking defendant's counsel's " word as attorneys" to appear for deposition. As I have stated to defendant's counsel, Mattel is not withholding non-privileged, responsive documents, but has produced its responsive, non-privileged documents that it has located to date after a good faith, diligent search, including the documents that it is relying upon in this suit and the documents it plans to use at defendant's deposition. In particular, as I have explained to defendant's counsel (repeatedly), Mattel has extensively and repeatedly searched for its October 2000 phone record tapes reflecting calls from defendant's Mattel extension and to date has not located those records. I also pointed out that defendant's reliance on a lack of phone records is particularly odd since defendant and MGA have not produced any phone records, despite Mattel's requests for them. Likewise, I have explained that, both before and after bringing this suit, Mattel has undertaken extensive, repeated searches of its computer systems and of numerous hard drives and tapes. In fact, Mattel's production includes printouts of computer data. As defendant's counsel has also been informed, Mattel's email servers do not have emails going back to the 1995 through 2000 time period when defendant was employed by Mattel. There are current emails about defendant on Mattel's servers, but they are privileged communications relating to this suit.

29. On the subject of "Toon Teens," defendant's document requests do not seek documents on this subject. When Mr. Jacoby raised the

07177/600466.1

-8-

DECLARATION OF MICHAEL T. ZELLER

subject of "Toon Teens" at the August 9 meeting, I specifically stated, that although Mattel did not consider them to be responsive to defendant's request, we would produce them if defendant wanted. I repeated this offer more than once on August 9, but Mr. Jacoby declined my offer. It was not until the late afternoon of August 13--*after* defendant had cancelled the deposition, including based on Mattel's supposed failure to produce "Toon Teens" documents--that defendant's counsel first decided to take me up on my offer. Mattel produced those materials the following business day.

30. On August 15, I also sent a letter to Keith Jacoby regarding the Joint Stipulation, noting that it failed to conform to Local Rule 37-2.1 and requesting the letter that defendant had agreed on August 9 to provide narrowing defendant's overbroad discovery requests. Attached hereto as Exhibit 27 is a true and correct copy of my letter to Keith Jacoby dated August 15, 2004.

31. Mr. Jacoby has stated unequivocally that he would not produce defendant for a deposition on a date certain and confirmed that defendant would not appear for deposition absent a Court Order until he is subjectively "satisfied" that Mattel has completed its document production. Mr. Jacoby also has stated that defendant expects phased discovery and that all document discovery must be completed before any witness may be deposed. At no time prior to defendant's unilateral cancellation of the deposition on August 13 has defendant suggested that discovery in this action should be phased in such a manner. To the contrary, the parties agreed at the early meeting of counsel that discovery would not be conducted in phases.

32. Due to defendant's ongoing delays, Mattel has incurred costs and fees in excess of $3500 in connection with defendant's deposition, including at least some $750 costs related to defendant's last-minute cancellation of his scheduled deposition in St. Louis.

07177/600466.1

-9-

DECLARATION OF MICHAEL T. ZELLER

33. Attached hereto as Exhibit 28 is a true and correct copy of the Second Declaration of Carter Bryant submitted in support of his Opposition to Plaintiff's Motion to Remand and for Costs in this action. In the declaration, defendant states that he has earned revenues to date "in the millions of dollars" pursuant to his Agreement with MGA.

34. Defendant Carter Bryant worked as a designer at Mattel's design center in El Segundo, California from September 1995 to April 1998, and then again from January 1999 to October 2000.

35. Attached hereto as Exhibit 29 is a true and correct copy of the Mattel Employee Confidential Information and Inventions Agreement signed by Carter Bryant on January 4, 1999. In the Employee Agreement, Bryant agreed that he would not, without Mattel's express written consent, "engage in any employment or business other than for [Mattel], or invest in or assist (in any manner) any business competitive with the business or future business plans of [Mattel]." In addition, Bryant assigned to Mattel all right, title and interest in "inventions," including without limitation "designs," that he conceived, created or reduced to practice during his employment by Mattel.

36. Attached hereto as Exhibit 30 is a true and correct copy of a contract between defendant and a Mattel competitor, MGA Entertainment Inc. That contract--which defendant and MGA had entered into while defendant was employed by Mattel--required defendant to provide design services to MGA on a "top priority" basis, in conflict with his then-existing obligations to Mattel. It also purported to grant MGA ownership of works produced by defendant, both before and after the agreement's effective date, in further contravention of his obligations to Mattel

37. Attached hereto as Exhibit 31 is a true and correct copy of a *Wall Street Journal* article published July 18, 2003.

1       I declare under penalty of perjury under the laws of the United States
2 of America that the foregoing is true and correct.
3       Executed this 17th day of August, 2004, at Los Angeles, California.

                                                  _____
                                                     Michael T. Zeller