# Exhibit 7

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone: (415) 774-2611
Facsimile: (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

v.

MATTEL, INC., a Delaware corporation,

Defendant.

CONSOLIDATED WITH
MATTEL, INC. v. BRYANT and
MGA ENTERTAINMENT, INC. v. MATTEL, INC.

CASE NO. C 04-09049 SGL (RNBx)
JAMS Reference No. 1100049530

Consolidated with
Case No. CV 04-09059
Case No. CV 05-2727

**ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION TO COMPEL MATTEL TO SUPPLEMENT RESPONSES AND PRODUCE DOCUMENTS RESPONSIVE TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS; DENYING REQUEST FOR SANCTIONS**

## I. INTRODUCTION

On July 3, 2007, MGA Entertainment, Inc. ("MGA") submitted its "Motion to Compel Mattel, Inc. ("Mattel") to Supplement its Responses and Produce Documents Responsive to MGA's First Set of Requests for the Production of Documents and Things dated January 31, 2005" (the "Requests") in the Mattel v. Bryant case. On July 16, 2007, Mattel submitted an opposition brief and served its Second Supplemental Responses to MGA's Requests. On July 26, 2007, MGA submitted a reply brief.[1] The matter was heard on September 11, 2007. Having considered the motion papers and the comments of counsel at the hearing, MGA's motion to compel is granted in part and denied in part, and the request for sanctions is denied.

## II. BACKGROUND

On January 31, 2005, MGA propounded its Requests, which consisted of 332 separate requests for, *inter alia*, (a) documents relating to Bryant, his employment, the property MGA allegedly misappropriated, and Mattel's decision to sue; (b) documents generally concerning the agreements Mattel alleges Bryant breached and the fiduciary duties of similarly situated Mattel employees; (c) MGA's Bratz dolls, including comparisons to Mattel products and evidence that Bryant created, developed, or reduced the Bratz idea to practice during his employment with Mattel; and (d) documents relating to allegations in Mattel's complaint, including damages. Burr Decl., Ex. 1. Mattel served its responses on March 3, 2005, which consisted entirely of objections. Burr Decl., Ex. 2. Most notably, Mattel objected to many of the Requests as duplicative of requests that Bryant had previously propounded and to which Mattel had already responded to by stating it would produce documents.

---

[1] After MGA filed its reply brief, Mattel filed several "supplemental declarations" in support of its Opposition to MGA's motion to compel, which it contends addressed several arguments raised for the first time in MGA's reply brief. On August 22, 2007, MGA submitted a letter brief requesting that the supplemental declarations be stricken and not considered. The next day, Mattel submitted a letter brief asserting that the request to strike should be denied on procedural and substantive grounds, and in the alternative, requesting leave to file the "supplemental declarations." MGA's request to strike the "supplemental declarations" is denied, and Mattel's request for leave to file the "supplemental declarations" is granted.

Thereafter, the case was stayed while one of the parties pursued an interlocutory appeal. When the stay was lifted, the parties met and conferred regarding the Requests. Although they were not able to resolve all of their disputes, Mattel apparently confirmed to MGA that it "had already produced documents and would continue to produce documents on the subjects that duplicated Bryant's requests in a manner that was consistent with Mattel's earlier responses." Mattel's Opposition at p.9. In January of 2007, Mattel served supplemental responses to 48 Requests ("Supplemental Responses"). Burr Decl., Ex. 3.

MGA and Mattel met and conferred again on March 27, 2007. Mattel reiterated that MGA's Requests were duplicative of Bryant's requests. Mattel also contended that MGA's Requests were duplicative of other MGA requests served on November 22, 2006. A few days later, MGA sent a follow-up letter to Mattel identifying the Requests it contended were not duplicative of other requests. Burr Decl., Ex. 5. MGA also sent another letter asking Mattel to confirm whether it would supplement its responses and proposing that Mattel provide such responses by April 10, 2007. When no response was received, on July 3, 2007, MGA filed the instant motion to compel Mattel to supplement its responses to the Requests.

MGA contends that Mattel's boilerplate objections, including objections based upon relevance, overbreadth and burden, "vague and ambiguous," and/or "duplicative" are all improper because Mattel has failed to provide any explanation for its objections, much less any evidentiary support for its objections. In addition, MGA contends that Mattel has failed to substantiate its objection that certain Requests are purportedly "duplicative" of other requests. Lastly, MGA contends that Mattel has failed to fulfill its obligation to supplement its responses to the Requests with sufficient information for MGA to determine exactly which documents exist, do not exist, have been produced, or otherwise will not be produced. MGA contends that without the required supplementation, it lacks any means to ascertain the state of Mattel's discovery compliance. Therefore, MGA seeks a court order overruling each of Mattel's objections and compelling Mattel to supplement its responses and produce any remaining documents responsive to MGA's Requests.

On July 16, 2007, Mattel submitted its opposition to the instant motion, its Second Supplemental Responses to MGA's Requests, and its Corrected Second Supplemental Responses to MGA's Requests (hereinafter collectively referred to as "Second Supplemental Responses"). Mattel contends that MGA filed the instant motion without completing the meet and confer process and without identifying which responses are purportedly deficient. Mattel contends that in any event, there is no genuine dispute as to many of the Requests that are the subject of MGA's motion to compel. Mattel contends that during the meet and confer process, Mattel told MGA that it had already produced documents and would continue to produce documents on the subjects that duplicated Bryant's requests in a manner that was consistent with Mattel's earlier responses. Mattel represents that it has been producing documents it can locate after a reasonable search, and that its Second Supplemental Responses confirm which documents it has been producing in response to 45 out of the 72 Requests at issue. Mattel also represents that it has produced in excess of 100,000 pages of documents and has offered to make vast quantities of electronic data available for review, inspection, and copying, including electronic data from Mattel's Zeus computer system tapes. As to the remaining Requests at issue, Mattel stands by its objections that they are overbroad and unduly burdensome.

In its reply brief, MGA acknowledges Mattel's Second Supplemental Responses, but contends that they remain inadequate for several reasons. First, MGA contends that Mattel persists in its objections even for those Requests to which Mattel has agreed to produce responsive documents. In particular, MGA takes issue with Mattel's continuing objection that the Requests are "duplicative" of other requests propounded by Bryant or MGA. Therefore, MGA seeks a court order overruling each of Mattel's purportedly baseless objections. Second, MGA contends that Mattel continues to refuse to collect and produce documents in response to 28 Requests that are clearly relevant to the claims and defenses in the case. Third, MGA contends that Mattel improperly refuses to conduct a "reasonable search for documents," including a search of its Zeus file server and backup tapes of the Zeus server. MGA's Reply at p.2. Therefore, MGA seeks an order compelling Mattel to search the Zeus file server and backup tapes for

responsive documents at Mattel's expense. Finally, MGA anticipates that Mattel will withhold responsive documents as long as possible to prejudice MGA's ability to prepare for depositions and trial, and therefore should be ordered to complete its production forthwith.

## III. STANDARDS

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Fishing expeditions to discover new claims, however, are not permitted. See Fed.R.Civ.P. 26(b)(1); Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expeditions.'"); Bernstein v. Travelers Ins. Co., 447 F.Supp.2d 1100, 1102 (N.D. Cal. 2006) (citing Rule 26(b), Advisory Committee's Note to Amendments Effective December 1, 2000) (Congress's changes in the language of Rule 26(c), substituting the words "claim or defense" for the phrase "subject matter involved in the pending action," were intended to prevent discovery that swept far beyond the claims and defenses of the parties and that seemed designed not to fairly litigate the issues presented by the pleadings but to develop new claims or defenses.).

Further, pursuant to Rule 26(b)(2), Fed.R.Civ.P., the court shall limit the frequency or extent of use of the discovery methods if the court determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2).

//

## IV. DISCUSSION

1. Requests Concerning Bryant, Bryant's Employment, and Mattel's Decision to Sue Bryant

**a. Requests seeking documents relating to Mattel's decision to sue Bryant and the timing thereof, any Mattel decision not to sue Bryant, and any Mattel decision as to the litigation against MGA or involving Bratz (Nos. 172-174, 188 and 190)**

In Request Nos. 172-174, MGA seeks documents related to Mattel's Board of Directors' resolution to litigate regarding Bryant, MGA or Bratz. In Request Nos. 188 and 190, MGA seeks all documents related to "any decision [to sue or not to sue] Bryant."

MGA contends that documents responsive to Request Nos. 172-174, 188, and 190 are relevant to Bryant's and MGA's defenses based upon the statute of limitations, laches, waiver, and mitigation of damages. MGA contends that during the meet and confer process, Mattel agreed to produce documents responsive to Request Nos. 172-174 and 188, however, the documents have not been produced.

Mattel represents that it has already produced the Board of Directors meeting minutes that are responsive to Request Nos. 172-174, and that other meeting minutes that have been withheld or redacted for privilege have been placed on a privilege log. Mattel's Opposition at p.32. Mattel objects to Request Nos. 188 and 190 on the grounds that they seek information protected by the attorney-client privilege and/or the work product doctrine. Moreover, Mattel contends that the documents are irrelevant, asserting that Mattel's reasons for suing Bryant have no bearing on the merits of Mattel's claims or MGA's defenses thereto. Nevertheless, Mattel acknowledges that documents responsive to Request Nos. 188 and 190 might be relevant to MGA's statute of limitations and laches defenses. Mattel contends, however, that it has "already agreed to produce documents related to the first time Mattel became aware that Bryant was involved with the creation of Bratz" (Mattel's Opposition at p.33), and that these documents are far more relevant than documents responsive to Request Nos. 188 and 190.

In its reply, MGA contends that contrary to Mattel's representations, it has not produced non-privileged documents responsive to Request Nos. 172-174. To ensure production, MGA's

motion is granted as to Request Nos. 172-174. Any responsive documents withheld on the basis of a privilege must be identified on a privilege log.

Like Request Nos. 172-174, Request Nos. 188 and 190 seek documents that are relevant to MGA's defenses, including the statute of limitations and laches because the documents might establish when Mattel first considered taking legal action against Bryant. That Mattel believes it has produced documents that are more relevant to MGA's and Bryant's defenses (regarding when Mattel became of aware of Bryant's involvement with the creation of Bratz) does not excuse Mattel from complying with Request Nos. 188 and 190. If responsive documents are protected by the attorney-client privilege or work product doctrine, Mattel must identify such documents on a privilege log. MGA's motion is granted as to Request Nos. 188 and 190.

**b. Requests seeking documents pertaining to Bryant's work at Mattel, *e.g.*, the terms of his employment, job duties and responsibilities; his work at Mattel, including the projects he worked on, days and hours worked, with time and data entries; phone records; and vacation absence records (Nos. 180-183 and 258)**

In Request No. 180, MGA seeks all documents mentioning, referring or relating to Bryant, including but not limited to Bryant's personnel file and all documents on Mattel's Zeus computer system that mention Bryant. In Request No. 181, MGA seeks all documents constituting, evidencing, referring to, or reflecting Bryant's work at Mattel, including the projects he worked on. In Request No. 182, MGA seeks all documents "evidencing the days and hours Bryant worked for Mattel, including all time entries and data on Mattel's 'P2' computer system, and all records reflecting the days and hours Bryant was on vacation or leave of absence." In Request No. 183, MGA seeks all documents "reflecting records of all phone calls Bryant placed and received and all facsimiles Bryant sent and received during his employment at Mattel." In Request No. 258, MGA seeks all documents relating to Bryant's employment including, without limitation, documents reflecting the period and conditions of the employment, the terms of the employment, and his job duties and responsibilities.

MGA contends that Request Nos. 180-183 and 258 seek information that is clearly relevant to support or refute Mattel's claims, and that Mattel has improperly refused to produce

responsive documents based upon an array of objections. MGA acknowledges, however, that Mattel has produced Bryant's personnel file, telephone records through September 2000 and some additional responsive documents. Despite this production, MGA continues to seek phone records from October 2000, when Bryant was still working at Mattel.

Mattel's Second Supplemental Responses confirm that it will produce documents responsive to all of the Requests in this category except Request No. 180. MGA's motion is granted as to Request Nos. 181-183 and 258 to establish a deadline for completing production.

With respect to Request No. 180, Mattel represents that it has "repeatedly offered to make Zeus backup tapes, and other electronic data, available to MGA on mutually agreeable terms." Mattel's Opposition at p.23. Further, Mattel contends that pursuant to Rule 26(b)(2)(B), Fed.R.Civ.P., it is not required to search its Zeus file server data and backup tapes because such an endeavor would be unduly burdensome and costly. Mattel explains that its Zeus system is an immense computer system consisting of 50 terabytes of electronic files that is largely used by Mattel designers and engineers and overwhelmingly consists of graphical files whose content cannot be searched by keywords. Mattel's Opposition at p.20. Further, Mattel represents that it does not have the necessary hardware to restore or search the Zeus backup tapes. Mattel's Opposition at p.25, n. 98.

In its reply brief, MGA counters that Mattel has mischaracterized its Zeus system. According to MGA, Mattel's 30(b)(6) witness, Julia Marine, testified that Zeus' directory structure is organized with top-level folders and various levels of subfolders; that individual Mattel employees are each given a home folder and can create subfolders; and that when an employee leaves the company, the folders set up by that employee are not deleted by Mattel's IT department. MGA's Reply at p.9. Therefore, MGA believes it is possible to search the Zeus server for responsive documents by simply locating the folders of relevant departments and employees. Furthermore, MGA suspects that Mattel should be able to conduct a keyword search of file names, even if the contents of the files consist of graphical images.

MGA also contends that Mattel has failed to satisfy its burden of showing that a search of

its backup tapes for the Zeus server would be unduly burdensome. Although MGA acknowledges Mattel's representation that it does not have the hardware for searching the backup tapes, MGA contends that Mattel "does not identify any unreasonable cost associated with such a review." MGA's Reply at p.10.

Mattel has failed to make the requisite showing that the information on the Zeus system and backup tapes "is not reasonably accessible because of undue burden or cost." Fed.R.Civ.P. 26(b)(2)(B). MGA has suggested a few reasonable methods for searching the Zeus system based upon the deposition testimony of Julia Marine. For example, Mattel could search its system for folders of relevant departments and employees. Mattel could apply a keyword search to locate file names for potentially responsive documents.[2] Further, Mattel has not attempted to quantify the burden and expense of obtaining the necessary hardware to restore or search the backup tapes, whether in terms of time, financial costs, labor, or otherwise.[3] Therefore, MGA's motion is granted as to Request No. 180.[4]

**c. Documents relating to Bryant's involvement with work on Bratz or for MGA, and relating to any activities of Bryant other than his work for Mattel (Nos. 186-187, 260)**

MGA contends that Request Nos. 186-187 and 260 seek documents relevant to Mattel's claims against Bryant and Bryant's defenses thereto. MGA contends that Mattel has improperly

---

[2] Indeed, in its supplemental submissions, Mattel clarifies that it has conducted searches for Zeus file names by keyword. Supp. Zeller Decl. at ¶3.

[3] Rather, the information Mattel has provided suggests that searching the backup tapes is not unduly burdensome. In a declaration filed after the reply brief, counsel for Mattel, Mr. Zeller, represents that "vendors retained by Mattel's counsel, as well as other electronic discovery vendors I am familiar with, have the hardware and other data needed to read the Zeus backup tapes and in fact can read them." Mattel's Notice of Lodging Regarding Mattel's Opposition to MGA's Motion to Compel, Ex. 2, ¶14. Further, Mr. Zeller states, "[a]s Mattel's 30(b)(6) designee Julia Marine also confirmed, one simply needs to buy the tape drives to read these tapes [citation omitted], which Mattel's vendors have done." Id.

[4] The parties have a general disagreement over whether Mattel has an obligation to search the Zeus system and backup tapes for documents responsive to all of MGA's Requests, not just Request No. 180. See MGA's Reply at pp. 18-20. As explained above, Mattel has failed to carry its burden of proving that searching the Zeus system and backup tapes is unduly burdensome or costly. Therefore, to the extent MGA's motion to compel is granted as to other Requests herein, Mattel shall conduct a reasonable search of the Zeus system and backup tapes to locate responsive documents.

refused to produce any responsive documents based upon an array of boilerplate objections. Nevertheless, MGA acknowledges that Mattel "has produced several documents that appear to be responsive." MGA's Motion at p.13. MGA seeks an order overruling Mattel's objections and compelling Mattel to supplement its responses and produce any remaining responsive documents.

Mattel's Second Supplemental Responses confirm that it will produce responsive documents. More specifically, in response to Request Nos. 186-187 and 260, Mattel stated, in pertinent part that "[s]ubject to and without waiving the foregoing general and specific objections, Mattel will produce such responsive, non-privileged documents that are in Mattel's possession, custody or control, if any, that Mattel has been able to locate after a diligent search and reasonable inquiry, to the extent not previously produced." Supp. Zeller Dec., Ex. 4. MGA is entitled to a court order to establish a deadline for production. MGA's motion is granted as to Request Nos. 186-187 and 260.

**d. Documents in Mattel's possession that were exchanged between Bryant and Anne Wang, and between Bryant and MGA (Nos. 270-271)**

In Request Nos. 270-271, MGA seeks production of documents in Mattel's possession that were exchanged between Bryant and Anne Wang, and between Bryant and MGA. Mattel's Second Supplemental Responses confirm that it will produce responsive documents. MGA is entitled to a court order to establish a deadline for completing production. MGA's motion is granted as to Request Nos. 270-271.

**e. Communications and documents referring to communications with various specified individuals concerning Bratz, Bryant's work for MGA, or relating to this litigation, the facts and circumstances giving rise to it, or Bryant's alleged misconduct (Request Nos. 224-249)**

In Request Nos. 224-249, MGA seeks communications with a host of individuals that refer or relate to the Bratz Concept, the First Bratz Dolls or Bryant's work for MGA, or that refer or relate to this litigation, the facts and circumstances giving rise to this litigation, or Bryant's alleged misconduct, and all documents that refer or relate to such communications. For example, Request No. 224 requires production of "[a]ll communications and all documents constituting,

mentioning, describing, discussing, referring or relating to all communications with Anna Rhee that refer or relate to the Bratz concept, the First Bratz dolls or Bryant's work for MGA." Zeller Decl., Ex. 8.

MGA contends that the requested documents are relevant to Mattel's claims that Bryant converted, used, sold, assigned or transferred property that Mattel supposedly owns. Further, MGA contends that the requested documents are relevant to Bryant's defenses based on the statute of limitations, laches, and waiver because the documents could show when Mattel first became aware of Bryant's relationship with MGA. MGA also contends that these Requests are "self-limiting to subject matters of direct relevance to this litigation." MGA's Reply at p.8.

Mattel's Second Supplemental Responses confirm that it will produce responsive documents, with two qualifications. First, Mattel agrees to search for and produce only documents that pertain to matters at issue, and not just because they reference MGA. Mattel's Opposition at p.34. Second, Mattel agrees to produce the communications with the various individuals identified in the Requests, but not all documents referring or relating to all communications. Id.

Request Nos. 224-249 seek information relevant to the claims and defenses in the case. They are limited to communications with certain key individuals (Anna Rhee, Margaret Leahy, Margaret Leahy's husband, Victoria O'Connor, Ramona Prince, Lilly Martinez, Ron Longsdorff, Matt Bosquette, Adrienne Fontanella, Tim Kilpin, Sujata Luther, Alan Kaye, and Veronica Marlowe), as well as limited in subject matter. Documents relating to the communications are also relevant to the claims and defenses in the case, and Mattel has failed to establish that the burden of producing responsive documents outweighs their likely benefit under Rule 26(b)(2), Fed.R.Civ.P. MGA's motion is granted as to Request Nos. 224-249.

**f. Hard drives and backup data for all computers used by Bryant while employed by Mattel (Request No. 268)**

In Request No. 268, MGA seeks "[a]ll hard drives and back-up data, no matter how stored, for all computers used by Bryant while employed by Mattel, to the extent such drives and

back-up data contain data made or accessed by, sent to or received by Bryant." Supp. Zeller Decl., Ex. 4.

Mattel contends that issues regarding Bryant's Mattel computer "have long been settled." Mattel's Opposition at p.16. Mattel explains that Bryant claimed at his deposition that he was "computer illiterate," that he had never created any files on any Mattel computers, and that he did not use them for his design work. Id. Further, Mattel represents that when Bryant requested such hard drives, Mattel told him that it would produce any hard drives for computers used by Bryant while at Mattel that could be located. Id. Mattel asserts that it has yet to identify a computer Bryant has used, and that Bryant and MGA have not offered any meaningful information that would assist Mattel in locating one. Mattel represents that Bryant's computer will be produced if and when it is located.

Mattel's Second Supplemental Responses confirm that Mattel will produce Bryant's computer if and when it is located. MGA's motion is granted as to Request No. 268 to ensure Mattel's compliance if and when Bryant's computer is located.

2. Documents concerning the agreements that Mattel alleges were breached by Bryant and the fiduciary duties of persons employed by Mattel in the same or similar capacity as Bryant

**a. Documents from 1997 to the present relating to Mattel's form "Employee Confidential Information and Inventions Agreement" and "Conflict of Interest Questionnaire," and negotiations with any employee or prospective employee concerning those agreements (Nos. 281-282 and 284-285)**

In Request Nos. 281 and 284, MGA seeks all versions of Mattel's form "Employee Confidential Information and Inventions Agreement" and Mattel's form "Conflict of Interest Questionnaire," and all documents referring or relating to these agreements, including documents related to any negotiations regarding these agreements and Mattel's enforcement of such agreements. In Request Nos. 282 and 285, MGA seeks all documents referring or relating to negotiations regarding these agreements.

MGA contends that the documents it seeks are central to Mattel's claim that Bryant breached the two agreements and Bryant's defenses thereto, including Bryant's contention that

the agreements are unenforceable as contracts of adhesion, unconscionable and violate California law. MGA contends that the manner in which Mattel negotiates, interprets, enforces and applies the terms of the two contracts is highly relevant.

Mattel represents that it has produced all iterations of the two agreements, including examples of each version of the agreements that Mattel has used since 1995. Mattel, however, objects to Request Nos. 281-282 and 284-285 as overbroad to the extent MGA seeks all documents "mentioning, discussing, describing, referring or relating to" such agreements and any and all documents involving negotiations concerning these agreements. Mattel contends that any benefits of producing these additional documents are far outweighed by the cost of production. Mattel further contends that the production is unjustified because Mattel has already produced a Rule 30(b)(6) witness to testify regarding the two agreements. According to Mattel, MGA and Bryant asked Mattel's designee how often the agreements changed, the process, if any, by which an employee negotiated the terms of an agreement, and whether signing the agreement was a condition of employment. In addition, Mattel represents that both MGA and Bryant have questioned several designers and other employees about the circumstances under which each signed his or her agreements and whether or not each understood his or her agreements.

In its reply brief, MGA represents that it offered to narrow Request Nos. 281-282 and 284-285 during the meet and confer to the following categories of documents:

*All documents relating to any form "Employee Confidential Information and Inventions Agreement" or "Conflict of Interest Questionnaire" that Mattel alleges to exist between Mattel and Bryant;

*All documents relating to any discussions or negotiations between Mattel and anyone regarding the terms and conditions of any version of either of those agreements; and

*All documents relating to any instance in which Mattel has taken any action whatsoever to enforce against anyone the same terms of any such agreement that Mattel alleges Bryant violated.

MGA's Reply at p. 16. Apparently, MGA's motion to compel is directed to only the three subsets of responsive documents described above, and not the Requests as originally written. As narrowed, Request Nos. 281-282 and 284-285 seek documents relevant to the claims and defenses

in the case, which Mattel implicitly conceded by producing various iterations of the two agreements. As narrowed, the Requests are not overbroad or unduly burdensome because they no longer call for production of documents "mentioning, discussing, describing, referring or relating to" the two agreements and any and all documents involving negotiations concerning these agreements. That MGA has already deposed a few witnesses regarding the two agreements does not preclude MGA from obtaining documentary evidence on the same subject. Therefore, MGA's motion is granted as to Request Nos. 281-282 and 284-285, as narrowed by MGA.

**b. Documents created after January 4, 1999, concerning the activities of any Mattel employee in connection with the creation of any property, doll or toy for anyone other than Mattel; Mattel's employment policies/contracts governing the extent to which a part-time or temporary employee may work for himself or other companies while also employed by Mattel (Nos. 262-267)**

In Request Nos. 262-263, MGA seeks all documents created after January 4, 1999 that evidence, relate or refer to any activities of any current or former Mattel employee performed, while such person was employed by Mattel, in connection with the conception, creation, design or development of any intellectual property, doll, or toy done for or at the request of any company, entity, or person other than Mattel. In Request Nos. 264-265, MGA seeks all documents that constitute, describe, mention, refer or relate to Mattel's policy regarding part-time or temporary employment at Mattel. In Request Nos. 266-267, MGA seeks all documents that constitute, describe, mention, refer, or relate to Mattel's policy regarding part-time or temporary employment at Mattel including, without limitation, all documents, agreements, and contracts that describe, discuss, govern, control, regulate, or limit how and to what extent a person employed part-time at Mattel is allowed, or not allowed, to work for himself or herself or other companies or entities, including MGA, while employed by Mattel.

MGA contends that Bryant worked for Mattel on a part-time basis in 1998, and that Request Nos. 262-267 seek relevant documents concerning Mattel's employment policies for part-time and temporary employees, including any restrictions on their abilities to work elsewhere while employed by Mattel. MGA contends that the requested documents are directly relevant to Mattel's breach of contract claims against Bryant and Bryant's defenses thereto, and therefore all

responsive documents should be produced.

Mattel represents that it has produced various iterations of agreements and policies applied to part-time and temporary Mattel employees. Mattel contends, however, that each of the Requests in this category is overbroad to the extent they seek any additional documents. For example, Mattel contends that the Requests are broad enough to encompass documents concerning subjects such as health benefits and vacation leave that have no conceivable bearing on the case. Further, Mattel contends that the burden of searching for all responsive documents is outweighed by the marginal benefits of the responsive documents. In fact, Mattel contends that the requested documents are not relevant at all because Bryant claims to have conceived Bratz after he was a part-time employee. Mattel's Opposition at p.30.

Request Nos. 262 and 263 are overbroad. As written, these requests would potentially require Mattel to review documents relating to all of its many thousands of current and former employees in order to find evidence that an employee conceived, created, designed or developed any intellectual property or doll or toy for at the request of any company or person other than Mattel. Even if Mattel succeeded in finding such documents, the burden and expense of conducting such a search outweigh the likely benefit of the documents. Therefore, MGA's motion is denied as to Request Nos. 262 and 263.

In its reply brief, MGA agrees to narrow the remaining Requests in this category as follows:

> Request No. 264: DOCUMENTS sufficient to identify all iterations of MATTEL'S policy regarding part-time employment at MATTEL.
>
> Request No. 265: DOCUMENTS sufficient to identify all iterations of MATTEL'S policy regarding temporary employment at MATTEL.
>
> Request No. 266: All DOCUMENTS, including agreements and contracts, that describe, discuss, govern, control, regulate or limit how and to what extent a person employed part-time at MATTEL is allowed, or not allowed, to work for him or herself or other companies or entities, including MGA, while employed by MATTEL.
>
> Request No. 267: All DOCUMENTS, including agreements and contracts, that describe, discuss, govern, control, regulate or limit how and to what extent a person employed part-time at MATTEL is allowed, or not allowed, to work for him or herself or other companies or entities, including MGA, while employed by MATTEL.

MGA's Reply brief at p. 15. As rewritten, these requests target documents that are relevant to Mattel's breach of contract claims against Bryant and Bryant's defenses thereto. MGA anticipates that Mattel could argue at trial that Bryant conceived of Bratz while he was a part-time employee. The documents MGA now seeks through its narrowed requests are relevant to establish Mattel's policies and contracts for part-time and temporary employment. Nor are the Requests unduly burdensome, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the requested documents in resolving the issues. MGA's motion is granted as to Request Nos. 264-267 as rewritten in MGA's reply brief.

3. Documents concerning Bratz and the purported Mattel property that forms the basis of its claims

**a. Documents concerning Bratz including any documents relating to the similarities or differences between Bratz and any Mattel property or any property created by a Mattel employee that it contends served as a source or origin for any Bratz concept or product (Nos. 259, 261, and 269)**

In Request No. 259, MGA seeks production of all documents that evidence, describe, mention, refer, or relate to the similarity of any artwork created by any Mattel employee, including but not limited to Bryant, prior to October 20, 2000, to Bratz. In Request No. 261, MGA seeks all documents created after January 4, 1999 that evidence, relate or refer to any activities of any current or former Mattel employee performed in connection with the conception, creation, design, or development of Bratz or Bratz intellectual property. In Request No. 269, MGA seeks all documents that constitute, evidence, describe, depict, refer or relate to any artwork or other work product by Mattel that it contends Bryant used in connection with his creation of anything for MGA, including without limitation, Bratz or Bratz intellectual property.

MGA contends that Request Nos. 259, 261, and 269 seek documents that are directly relevant to Mattel's claims that Bryant converted, used, sold, assigned, or transferred property that Mattel claims it owns; damages and causation; and Bryant's defenses, including those based on

statute of limitations, laches, waiver, and unclean hands.

Mattel's Second Supplemental Responses confirm that it will produce responsive documents. More specifically, Mattel represents that it will produce the "prior art that lead to Bratz." Mattel's Opposition at p.36. Mattel objects, however, to producing documents that do not constitute "prior art," such as marketing, sales planning, engineering, electronics, and programming of the voices of Mattel's Diva Starz line.

In its reply brief, MGA confirms that it is only seeking documents relating to the original artwork or work product that Mattel claims Bryant copied, and is not seeking all documents relating to the Diva Starz line. With this clarification, MGA's motion is granted as to Request Nos. 259, 261, and 269.

**b. Documents discussing or mentioning Isaac Larian, Paula Treantafelles, or Mercedeh Ward, authored between June 2000 and October 2001 that concern, support, or refute Mattel's contentions in this litigation (Nos. 44-46)**

In Request Nos. 44-46, MGA seeks all documents discussing or mentioning Isaac Larian, Paula Treantafelles, or Mercedeh Ward authored between June 2000 and October 2001. Mr. Larian is the President and CEO of MGA, and Ms. Treantafelles and Ms. Ward are former Mattel employees who went to work for MGA and later helped develop the Bratz line. During the meet and confer process, MGA agreed to limit Request Nos. 44-46 to documents that "concern, support or refute Mattel's contentions in this litigation."

MGA contends that the requested documents are, at the very least, relevant to MGA's statute of limitations and laches defenses. Further, MGA contends that Request Nos. 44-46 are limited in scope to only documents authored between June 2000 and October 2001 and concerning Mattel's contentions in this litigation. MGA therefore seeks an order compelling Mattel to supplement its responses and produce responsive documents.

Mattel acknowledges that MGA offered to limit Request Nos. 44-46 to only documents related to the current litigation, but construes MGA's current motion to compel as seeking compliance with the Requests as originally written. Mattel contends that Request Nos. 44-46, as originally written, are overbroad because there are no limitations on subject matter.

MGA's motion papers make clear that it is not seeking compliance with Request Nos. 44-46 as originally written. Instead, MGA stands by its offer during the meet and confer process to limit the Requests to documents that "concern, support or refute Mattel's contentions in this litigation." MGA's Motion at p. 19. As narrowed by MGA, Request Nos. 44-46 seek documents relevant to the claims and defenses in the case and are limited in subject matter as well as in temporal scope. MGA's motion is granted as to Request Nos. 44-46.

4. Documents concerning specific allegations set forth in Mattel's complaint and demands for related documents

**a. Documents supporting, refuting or evidencing specific allegations set forth in Mattel's complaint (Nos. 296, 302-303, 306-307, and 329-330)**

In these Requests, MGA seeks documents supporting, refuting, or evidencing specific allegations in Mattel's complaint, including, among other things, documents related to (a) Mattel's claims that the Employment Agreement and Conflict Questionnaire are valid, enforceable contracts; (b) Mattel's allegations of damages and harm; and (c) Mattel's allegation that Bryant "used and diverted" Mattel resources and opportunities. MGA also seeks documents depicting the intellectual property allegedly owned by Mattel and relating to ownership of that property.

Mattel's Second Supplemental Responses confirm that it agrees to produce responsive, non-privileged documents. MGA's motion is granted as to Request Nos. 296, 302-303, 306-307, 329-330.

**b. Documents evidencing whether persons who are or were employed by Mattel in the same or similar capacity as Bryant are or were subject to the same duties and responsibilities that Bryant was allegedly subject to, as alleged in Mattel's complaint (Nos. 309, 311, 313, 315, 317, 320, 323)**

In these Requests, MGA seeks all documents evidencing that persons who are or were employed by Mattel in the same or similar capacity as Bryant: hold or held positions of trust and confidence with Mattel (No. 309); had or have access to Mattel's proprietary and confidential

Exhibit 7, P. 231

information (No. 311); were or are entrusted with Mattel's proprietary and confidential information (No. 313); supervised or supervise the work of others (No. 315); exercised or exercise discretion in their job assignments and duties (No. 317); worked or work independently in their job assignments and duties (No. 320); and represented or represent Mattel in its dealings with third parties (No. 323).

MGA contends that these Requests are directly relevant to Mattel's allegations in the complaint that Bryant held a position of trust, had access to and was entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently for many of his job assignments and duties, and represented Mattel in its dealings with third parties. Further, MGA contends that documents pertaining to Mattel's employees other than Bryant are likely to lead to admissible evidence relating to whether Mattel ordinarily views employees in Bryant's position as fiduciaries.

Mattel represents that it has already agreed to produce responsive documents insofar as Bryant is concerned. Mattel, however, objects to the Requests as overbroad and unduly burdensome to the extent they require production of documents pertaining to other persons who are or were employed "in the same or similar capacity as Bryant," which Mattel interprets to mean all of its "designers." Mattel represents that in El Segundo, it currently employs over 320 individuals for the Barbie line alone, not including former employees or designers on other dolls or toys. Given the size of Mattel's work force, Mattel contends that the burden of production far outweighs any marginal relevance of the responsive documents.

In its reply brief, MGA contends that Mattel's objections are based upon a strained interpretation of the phrase "same or similar capacity as Bryant." In MGA's view, Bryant was a "low-level, salaried employee" at Mattel. MGA's Reply at p.17. MGA, however, does not offer an alternative definition for persons employed in the "same or similar capacity as Bryant," arguing instead that only Mattel is capable of identifying a narrower group of employees.

MGA's motion is denied as to this last category of Requests. The Requests are overbroad and MGA has not offered to narrow the scope of the Requests to a reasonable number of Mattel

employees.

## V. CONCLUSION

For the reasons set forth above, it is hereby ordered as follows:

1. Mattel's objections, except as to privilege, are overruled.

2. Mattel shall produce all non-privileged responsive documents, to the extent they have not already been produced, for the following Requests: Nos. 44-46 (as narrowed by MGA), 172-174, 180-183, 186-188, 190, 224-249, 258-261, 264-267 (as narrowed by MGA), 268-271, 281-282 (as narrowed by MGA), 284-285 (as narrowed by MGA), 296, 302-303, 306-307, and 329-330. If no additional non-privileged responsive documents exist, Mattel shall provide such confirmation in writing as to each request.

3. Mattel shall conduct a reasonable search for documents responsive to the Requests identified above, including a search for responsive documents in the Zeus server and back-up tapes.[5]

4. Mattel shall complete its production of all non-privileged responsive documents in accordance with this Order no later than September 28, 2007.

5. MGA's motion to compel is denied as to Requests Nos. 262-263, 309, 311, 313, 315, 317, 320 and 323.

6. MGA's request for sanctions is denied.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, MGA shall file this Order with the Clerk of Court forthwith.

Dated: September 12, 2007

[signature]
HON. EDWARD A. INFANTE (Ret.)
Discovery Master

---

[5] The parties shall further meet and confer to establish parameters for conducting a reasonable search of the Zeus system and backup tapes.

PROOF OF SERVICE BY E-MAIL

I, Sandra Chan, not a party to the within action, hereby declare that on September 12, 2007, I served the attached ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION TO COMPEL MATTEL TO SUPPLEMENT RESPONSES AND PRODUCE DOCUMENTS RESPONSIVE TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS; DENYING REQUEST FOR SANCTIONS in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Marc Feinstein, Esq. | O'Melveny & Myers LLP | mfeinstein@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on September 12, 2007, at San Francisco, California.

Sandra Chan

# Exhibit 8

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone: (415) 774-2611
Facsimile: (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br>Plaintiff,<br>v.<br>MATTEL, INC., a Delaware corporation,<br>Defendant. | CASE NO. C 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049450<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER DENYING MATTEL'S MOTION FOR RECONSIDERATION OF A PORTION OF THE MAY 22, 2007 ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS; GRANTING IN PART MATTEL'S REQUEST FOR AN EXTENSION OF TIME** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

## I. INTRODUCTION

On June 13, 2007, Mattel, Inc. ("Mattel") submitted its "Motion for Reconsideration of a Portion of the May 22, 2007 Order Granting in Part and Denying in part MGA's Motion to Compel Production of Documents." Specifically, Mattel seeks reconsideration of the portion of

the May 22, 2007 Order that requires Mattel to produce documents responsive to Request Nos. 59, 60, 62, and 63. On June 21, MGA Entertainment, Inc. ("MGA") submitted its opposition brief, and on June 26, 2007, Mattel submitted a reply brief. Having considered the motion papers, Mattel's motion for reconsideration is denied and Mattel's request for an extension of time is granted in part.[1]

II. BACKGROUND

In April of 2007, MGA submitted a motion to compel Mattel to produce documents responsive to its First Set of Request for Production of Documents dated November 22, 2006, which generally sought documents that MGA contended were relevant to its Lanham Act and unfair competition claims. Included among the thirty-two requests at issue were Requests Nos. 59, 60, 62, and 63 (collectively the "Licensing Requests"), which are set forth below.

REQUEST FOR PRODUCTION NO. 59:

All DOCUMENTS REFERRING OR RELATING TO any interference with or inhibition of the licensing or potential licensing of MGA's products (including but not limited to "BRATZ") worldwide or REFERRING OR RELATING TO any limitations or restrictions on any licensee's ability to purchase, promote, advertise, develop, design or sell "BRATZ" or other MGA products worldwide.

REQUEST FOR PRODUCTION NO. 60

All DOCUMENTS REFERRING OR RELATING TO any third party's licensing or potential licensing of MGA PRODUCTS world wide, or REFERRING OR RELATING TO any licensee's ability to purchase, promote, advertise, develop, design or sell MGA PRODUCTS worldwide.

REQUEST FOR PRODUCTION NO. 62

All DOCUMENTS, including but not limited to COMMUNICATIONS,

[1] The Discovery Master has determined that further oral argument on this motion is not warranted.

REFERRING OR RELATING TO any interference with or inhibition of the sales or potential sales of MGA's products (including but not limited to "BRATZ") or REFERRING OR RELATING TO any limitations or restrictions on any retailer's ability to purchase, promote, advertise, develop, design or sell "BRATZ" or other MGA products worldwide.

REQUEST FOR PRODUCTION NO. 63

All DOCUMENTS, including but not limited to COMMUNICATIONS, REFERRING OR RELATING TO any contracts, licenses or agreements between MATTEL and any third party worldwide that place any limitations, prohibitions or restriction on that third party's ability to license, manufacture, promote, distribute or sell any MGA products or to supply materials or services to MGA worldwide.

Alger Decl., Ex. D.

After reviewing extensive briefing on the motion, which addressed in detail Mattel's overbreadth and burden objections, and after considering the comments of counsel at the hearing, the Discovery Master issued an order on May 22, 2007, granting in part and denying in part MGA's motion to compel (the "Order"). The Discovery Master found that the Licensing Requests sought information relevant to MGA's allegations, including among others, that Mattel "warned a number of companies, including the biggest publishing entity in the United Kingdom, not to license MGA products or risk retribution," and that Mattel "terminated one of its licensees, apparently in retribution for licensing Bratz." MGA's Complaint at ¶76. Order at p.20.[2] The Discovery Master also found that the Licensing Requests were reasonably tailored, and that Mattel had not established that searching for responsive documents was unduly burdensome. Order at p.20.

[2] Although not mentioned in the Order, MGA's complaint also contains an allegation that "Mattel has used similar intimidation to pressure distributors and retailers, particularly in foreign countries, not to distribute 'BRATZ,' to reduce shelf space and display space for 'BRATZ' and to place 'BRATZ' in unfavorable locations at retail outlets." Complaint at ¶77.

On June 6, 2007 – the same day as the deadline for a motion for reconsideration – Mattel requested that MGA narrow the scope of the Order with respect to the Licensing Requests. Alger Decl., Ex. B. Mattel's concern, which was apparently raised for the first time on June 6, 2007, was that the Licensing Requests "could be interpreted to encompass documents that make no mention of MGA and deal with Mattel product lines that are not at issue in the litigation or do not compete with MGA (such as 'Scrabble' and 'UNO')." Id. Mattel contended that the Licensing Requests could be interpreted "to implicate licenses with boilerplate exclusivity provisions (with no express reference to MGA) that pertain to products in areas where Mattel and MGA did not even compete." MGA's Opposition at pp. 4-5. MGA agreed to an extension of the deadline for filing a motion for reconsideration while the parties attempted to resolve the issue. A few days later MGA proposed limiting the Licensing Requests as follows:

> MGA seeks all documents responsive to the [Licensing] Requests that either: (1) expressly mention "Bratz" or "MGA" or any other MGA products (including without limitation, "4-Ever Best Friends," "Mommy's Little Patient" and "Alien Racers") regardless of the product category or Mattel brand involved; (2) refer or relate to the following Mattel brands: "My Scene," "Barbie," "Wee 3 Friends," "AcceleRacers," or "Little Mommy"; or (3) refer or relate to the following competitive product categories: fashion dolls, fashion doll accessories and play sets, styling heads, and plush toys.

Alger Decl. Ex. B. Mattel rejected MGA's proposal. In Mattel's view, MGA's proposal would not alleviate any of the burden of searching for and producing responsive documents because 80 percent of Mattel's licensing involves fashion dolls, including the BARBIE brand. Mattel proposed instead that MGA limit the Licensing Requests to only the companies and licensees specified in MGA's complaint and responses to Mattel's contention interrogatories, particularly interrogatory number 5.[3] MGA apparently refused.

---

[3] In response to Mattel's contention interrogatory No. 5, MGA identified the following companies which allegedly had been "threatened and warned" by Mattel: Kidz Entertainment, Euromic, Character Licensing, Smith & Brooks, Zeon, Gemma International, Egmont, MV Sports, Hart Concepts, JNH Israel, Rose Art Industries, Inc., and Candide.

Mattel now seeks reconsideration of the Order insofar as it requires Mattel to produce documents responsive to the Licensing Requests. Mattel contends that reconsideration is appropriate because there exists a material difference in fact from that presented during the hearing on MGA's motion to compel and/or there has been an emergence of new material facts occurring after the time of the hearing. See C.D. Local Rule 7-18(a) and (b). Mattel requests that upon reconsideration, the Discovery Master either (a) deny in full MGA's motion to compel documents responsive to the Licensing Requests; or (b) order that Mattel need only produce documents that "bear on alleged interference identified by MGA in its Complaint or in response to Interrogatory No. 5 served by Mattel on December 20, 2006"[4]; or (c) grant Mattel a thirty day extension of time to produce responsive documents if the Discovery Master orders Mattel to comply with any portion of the Licensing Requests.

III. DISCUSSION

A. Reconsideration is Unwarranted

Mattel contends reconsideration is warranted because "MGA represented and obtained a decision from the Discovery Master based on a restricted interpretation of the Licensing Requests that MGA has since disavowed." Mattel's Motion at p.6. According to Mattel, MGA essentially conceded that the Licensing Requests were overbroad and unduly burdensome during the hearing on MGA's motion to compel. More specifically, Mattel contends that MGA represented to the Discovery Master that MGA's requests "were restricted" to the matters placed at issue by MGA's complaint and in response to Mattel's contention interrogatory No. 5. Mattel's Motion at p.4. Mattel also contends that "MGA made it clear to the Discovery Master that MGA was merely seeking documents bearing on the licensees and events identified by MGA." Id. at p.13. In view of MGA's purported representations, Mattel believes the Discovery Master intended to limit the scope of the Licensing Requests to the allegations in the Complaint and MGA's response to Interrogatory No. 5."

[4] Mattel's Motion at p.5.

Mattel contends that after obtaining the favorable Order, MGA reversed its position and now seeks "every document that bears on a competitor restriction on a Mattel licensee, without reference to any particular license, licensee, or any relationship with a potential licensee." Mattel's Motion at p.13. Mattel argues that MGA should be judicially estopped from taking a position inconsistent with that taken during the hearing.

MGA contends that Mattel has not set forth any new facts or law to warrant reconsideration, and instead has premised its motion entirely upon "a specious mischaracterization of arguments made by MGA's counsel at the hearing on the original motion to compel." MGA's Opposition at p.1. Furthermore, MGA contends that most of Mattel's arguments in support of its motion for reconsideration were, in fact, already raised in opposition to MGA's original motion to compel.

Having reviewed the entirety of the transcript from the hearing conducted on MGA's motion to compel, it is abundantly clear that MGA did not agree to limit the Licensing Requests to just the companies identified in its complaint and interrogatory responses. Instead, in response to Mattel's refusal to produce any documents responsive to the thirty-two requests at issue in MGA's motion to compel, MGA's counsel stated during the hearing that MGA's complaint and responses to Mattel's contention interrogatories were a "first place" to look and a proposed "starting point" for responding to the document requests. Alger Decl., Ex. G at 24:11-26:2, 31:10-18). MGA made it clear that, in its view, Mattel's discovery obligations were not limited to just those specific companies or instances identified in the complaint and interrogatory responses. Id. at 24-33. In short, MGA has not reversed its position.

As for Mattel's "belief" that the Discovery Master intended to limit the scope of the Licensing Requests to the allegations in MGA's complaint and MGA's response to interrogatory No. 5, that "belief" is also unfounded. As discussed above, MGA did not agree to such a limitation, and furthermore, the Order contains no reference to any such limitation. Rather, the Order provides, in pertinent part, the following:

> Request nos. 59, 60, 62 and 63 seek information relevant to MGA's allegations, including among others, that Mattel "warned a number of companies, including the biggest publishing entity in the United Kingdom, not to license

> MGA products or risk retribution," and that Mattel "terminated one of its licensees, apparently in retribution for licensing Bratz." MGA's Complaint at ¶76. They are also reasonably tailored to require production of only those documents and communications that refer or relate to interference with or inhibition of the licensing or potential licensing of MGA's products, that refer or relate to any limitations or restrictions on any MGA licensee, and that refer or relate to any third party's licensing or potential licensing of MGA's products. Mattel has not established that searching for these types of responsive documents is unduly burdensome. Therefore, MGA's motion is granted as to request nos. 59, 60, 62 and 63.

Order at p.20. There is no "material difference in fact" or "new material fact" to warrant reconsideration.

In addition to the arguments discussed above, Mattel's motion for reconsideration includes the identical overbreadth and burden arguments it previously raised in opposition to MGA's motion to compel. These repeated arguments are improper under Local Rule 7-18. In any event, Mattel's overbreadth and burden arguments were considered and rejected and therefore, are not addressed again herein. Accordingly, Mattel's motion for reconsideration is denied.

In ruling on Mattel's motion, it bears noting that Mattel repeatedly overstates its obligations under the Licensing Requests. In Mattel's view, the Licensing Requests "could require Mattel to produce "all licensing contracts and all related documents that limit any licensee from doing work for a competitor." Mattel's Motion at p.9. Mattel reiterates that the Licensing Requests require production of "all documents that relate to any restriction on Mattel's licensees doing business with MGA." Mattel's Motion at p.4. Mattel believes that the Licensing Requests "would require the review and possible production of licensing agreements and related documents dealing with all of Mattel's products and intellectual property," (Mattel's Motion at p.9), including "highly sensitive contracts and related documents that make no mention of MGA or its products" (Mattel's Motion at p.4).

The Licensing Requests cannot reasonably be interpreted as broadly as Mattel suggests. Each of the Licensing Requests is narrowly tailored to require only production of those

//

documents that refer or relate to MGA and/or its products. They do not require production of license agreements with boilerplate exclusivity provisions (with no express reference to MGA or MGA's products). Nor do the Licensing Requests require production of "all licensing contracts and all related documents that limit any licensee from doing work for a competitor."

During the meet and confer process following the Order, MGA expressed a willingness to narrow the Licensing Requests as follows:

> For example, responsive documents (if they exist) would include *inter alia*:
>
> (1) documents regarding interference with or inhibition of MGA's sales and licensing efforts that expressly mention "Bratz" or "MGA" or any other MGA products (including without limitation, "4-Ever Best Friends," "Mommy's Little Patient" and "Alien Racers") regardless of the product category or Mattel brand involved;
>
> (2) documents regarding interference with or inhibition of MGA's sales and licensing efforts that refer or relate to Mattel brands which directly compete with MGA brands, such as "Barbie," "My Scene," "Wee 3 Friends," "AcceleRacerS," or "Little Mommy"; and
>
> (3) documents regarding interference with or inhibition of MGA's sales and licensing efforts that refer or relate to product categories in which MGA and Mattel directly compete, such as fashion dolls, fashion doll accessories and play sets, styling heads, and plush toys.

MGA's Opposition at p.11. This is a reasonable accommodation to Mattel's concerns and Mattel shall produce these three categories of documents.

C. Mattel's Request for an Extension of Time to Produce Documents

Mattel requests a thirty day extension of time to produce documents responsive to the Licensing Requests. The request for an extension is based upon many of the factors Mattel

//

previously raised in the context of MGA's motion to compel. In brief, Mattel contends that it has hundreds of licensing relationships, and that it will take hundreds of hours of lawyer and paralegal time to search for and produce responsive documents.

MGA opposes Mattel's request for a thirty day extension because Mattel has known about the Order for weeks and could have been searching for and collecting responsive documents. Further, MGA contends that an extension of time will prejudice its ability to prepare for upcoming depositions and to conduct follow-up discovery.

Mattel's request is granted in part. A brief extension is warranted in light of Mattel's representation that there are approximately 1,400 licensing agreements that could be responsive to the Licensing Requests. A brief extension of time will not unduly prejudice MGA because the discovery cut-off for the unfair competition portion of this litigation is not until March 3, 2008. Any further extension is unwarranted because (1) the Licensing Requests have been outstanding since November 22, 2006, (2) the Order, which issued on May 22, 2007, required Mattel to produce responsive documents by June 15, 2007; and (3) Mattel unreasonably delayed seeking an extension of time until two days before the June 15, 2007 deadline.

## IV. CONCLUSION

For the reasons set forth above, Mattel's motion for reconsideration is denied. Mattel's request for an extension of time is granted in part. Accordingly, Mattel shall produce all documents responsive to the Licensing Requests (as narrowed by MGA during the meet and confer process) no later than August 6, 2007.

Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery Master, Mattel shall file this Order with the Clerk of Court forthwith.

Dated: July 19, 2007

HON. EDWARD A. INFANTE (Ret.)
Discovery Master

**PROOF OF SERVICE BY E-MAIL**

I, Sandra Chan, not a party to the within action, hereby declare that on July 19, 2007, I served the attached ORDER DENYING MATTEL'S MOTION FOR RECONSIDERATION OF A PORTION OF THE MAY 22, 2007 ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS; GRANTING IN PART MATTEL'S REQUEST FOR AN EXTENSION OF TIME in the within action by e-mail addressed as follows:

| | | |
|---|---|---|
| John W. Keker, Esq. | Keker & Van Nest | jkeker@kvn.com |
| Michael H. Page, Esq. | Keker & Van Nest | mhp@kvn.com |
| Christa Anderson, Esq. | Keker & Van Nest | cma@kvn.com |
| John E. Trinidad, Esq. | Keker & Van Nest | jtrinidad@kvn.com |
| John Quinn Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | johnquinn@quinnemanuel.com |
| Michael Zeller Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | michaelzeller@quinnemanuel.com |
| Jon Corey Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | joncorey@quinnemanuel.com |
| Duane Lyons Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | duanelyons@quinnemanuel.com |
| Timothy Alger Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | timalger@quinnemanuel.com |
| Dominic Surprenant Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | DominicSurprenant@QuinnEmanuel.com |
| B. Dylan Proctor Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | dylanproctor@quinnemanuel.com |
| Shane McKenzie Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | shanemckenzie@quinnemanuel.com |
| Bridget Hauler Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | bridgethauler@quinnemanuel.com |
| Tamar Buchakjian Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | tamarbuchakjian@quinnemanuel.com |
| Juan Pablo Alban, Esq. | Quinn, Emanuel, Urquhart, Oliver & Hedges | juanpabloalban@quinnemanuel.com |
| Dale Cendali Esq. | O'Melveny & Myers LLP | dcendali@omm.com |
| Diana Torres Esq. | O'Melveny & Myers LLP | dtorres@omm.com |
| James Jenal Esq. | O'Melveny & Myers LLP | jjenal@omm.com |
| Alicia Meyer Esq. | O'Melveny & Myers LLP | ameyer@omm.com |
| Jennifer Glad Esq. | O'Melveny & Myers LLP | jglad@omm.com |
| David Hurwitz, Esq. | O'Melveny & Myers LLP | dhurwitz@omm.com |
| Johanna Schmitt Esq. | O'Melveny & Myers LLP | jschmitt@omm.com |
| Michael C. Keats, Esq. | O'Melveny & Myers LLP | mkeats@omm.com |
| Kendall Burr, Esq. | O'Melveny & Myers LLP | kburr@omm.com |
| Melanie Bradley, Esq. | O'Melveny & Myers LLP | mbradley@omm.com |
| Marvin Putnam, Jr., Esq. | O'Melveny & Myers LLP | mputnam@omm.com |
| William Charron, Esq. | O'Melveny & Myers LLP | wcharron@omm.com |
| Patricia Glaser Esq. | Christensen, Glaser, Fink, Jacobs, Weil & Shapiro, LLP | pglaser@chrisglase.com |

I declare under penalty of perjury under the laws of the Untied States of America that the above is true and correct.

Executed on July 19, 2007, at San Francisco, California.

[signature]
Sandra Chan

# Exhibit 9

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

DIRECT DIAL
(213) 687-5358
DIRECT FAX
(213) 621-5368
EMAIL ADDRESS
RHERRING@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

December 17, 2007

**VIA FACSIMILE & U.S. MAIL**

Mr. Jon D. Corey
Mr. B. Dylan Proctor
Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP
865 South Figueroa St., 10th Floor
Los Angeles, CA 90017

RE: *Mattel v. Bryant*

Gentlemen:

We are writing to request an expedited meet and confer session under paragraph 5 of the Discovery Master stipulation to discuss Mattel's production of email and other electronically stored documents in response to MGA and Carter Bryant's requests for production of documents and the Court's Orders requiring Mattel to produce documents.

The Affidavit of Michael Moore, executed on September 10, 2007, states that, as part of its document preservation efforts in this case, Mattel has preserved emails, email mailboxes, computer hard drives, work station computers, data contained in the TRACS database, data contained on the Zeus server, images of the Mattel badging computer, optical platters of accounting records, focus group media and related documents, phone bills and phone call logs, Barbie Collector planning files, and other electronically stored information.

As you are aware, MGA and Mr. Bryant have served several requests for production of documents in this case on Mattel. Although Mattel has asserted objections to many of these requests, it has represented in its responses or during various meet and confer sessions that it would search for and produce responsive documents for many of the requests. In addition, the Court has ordered Mattel to produce several categories of documents, including Orders dated January 30, 2007, April 19, 2007, May 22, 2007, July 19, 2007, and September 12, 2007. In making these Orders, the Court overruled Mattel's objections, with the exception of privilege.

Based on Mattel's representations that it would search for and produce responsive documents, and based on the Court's Orders compelling Mattel to produce several categories of documents, we have been operating under the assumption that Mattel is searching all files where responsive documents could be located, including emails and other electronic sources identified specifically or generally in Mr. Moore's Affidavit.

Since entering our appearance in this case, we have been working diligently to review Mattel's prior document production and understand whether Mattel has complied with its discovery obligations. Based on our review, we are becoming very concerned that, despite its representations and despite the Court Order compelling production, Mattel has not been searching emails and the other sources of electronic information in its possession, custody or control for responsive documents.

In particular, we have discovered that Mattel has produced very few emails or other electronic documents in this case. Most of the emails that Mattel has produced appear to have been printed and kept in hard copy form. This is evident from that fact that many emails have writing or other extraneous markings. In addition, Mattel appears to have produced email only from select witnesses – namely witnesses that Mattel believes support its claims (*e.g.*, Brawer, Machado, Trueba and others). There is a paucity of emails sent to or by other central witnesses in this case, including Richard de Anda, Robert Eckert, Alan Kaye, Cassidy Park, Matt Bousquette, Adrienne Fontanella, Ivy Ross, and many of the other witnesses MGA has noticed for deposition.

On December 14, 2007, I participated in a meet and confer session with Mr. Tayback and Mr. Alger regarding Mattel's Zeus system and other electronic discovery issues. During that conference, I requested clarification as to whether Mattel has been searching emails in responding to our document requests and the Court's discovery Orders. Mr. Alger indicated that he was not prepared to provide a definitive representation on this issue and directed me to the papers previously filed in this case discussing email and electronic discovery, including Mr. Moore's document preservation affidavit and references to Mattel having to incur more than $900,000 to conduct searches of its email backup tapes.

I spent the weekend searching for and reviewing these materials and do not believe they answer our inquiry regarding Mattel's efforts to search email and other electronic discovery sources. In addition to Mr. Moore's declaration, which addresses electronic discovery preservation efforts (and not electronic discovery search efforts), I also located the declaration of Sergio Hernandez submitted on April 24, 2007 in connection with Mattel's Opposition to MGA's motion to compel. Mr. Hernandez states that "Mattel's Exchange servers for its email system are not currently searchable by keywords. It would cost in the neighborhood of $900,000 to acquire the appropriate software tools to perform such search functions on the

Exchange servers." Mattel appears to have used Mr. Hernandez's declaration to oppose MGA's motion to compel by arguing that it would be too burdensome to search for responsive documents. As you aware, the Discovery Master granted MGA's motion to compel in part, and in doing so, overruled Mattel's objections. The Discovery Master also rejected Mattel's Motion for Reconsideration, which he denied on July 19, 2007. In a September 12, 2007 Order granting MGA's Motion to Compel, the Discovery Master rejected similar arguments. Thus, the Discovery Master already has rejected Mattel's burden arguments and, to the extent Mattel is still relying on those arguments in refusing to search email and other electronic data sources, those objections are not well taken and violate the Court's discovery Orders.

Based on the foregoing, we again ask that Mattel immediately explain whether, in responding to MGA and Mr. Bryant's document requests and in producing documents that are the subject of the Court's discovery Orders, Mattel has been searching through all of the email and other electronic databases and materials in its possession, custody or control, including each of the electronic data sources identified specifically or generally in Mr. Moore's Affidavit.

We look forward to hearing from you.

Sincerely,

Robert J. Herrington

# Exhibit 10

---

---

**From:** Christopher Tayback [mailto:christayback@quinnemanuel.com]
**Sent:** Friday, January 04, 2008 9:20 AM
**To:** Herrington, Robert J (LAC)
**Cc:** Timothy Alger; Eckles, Paul M (NYC); Christopher Tayback
**Subject:** RE: Follow-up to today's telephone call

Robert--

You seem to have changed what started out as a meet and confer on several issues to a series of interrogatories by email.

I believe I have answered several times now, on the telephone and by email, the "simple" question you claim to be asking. As I said to you by email on December 26: ". . . Mattel has searched the various electronic media in its possession which were likely to have responsive documents. That includes searches of some data retrieved from back-up tapes and some data retrieved from Zeus. What we have not done is incur the substantial time and expense associated with searching locations where we have no reason to believe responsive documents are located. If you have reason to believe some specific relevant document (or documents) is in Mattel's possession, please let us know. If you have information as to where such a document is located within the various data compilations maintained by Mattel, please say so and we will focus our efforts there."

You have not done so. Instead, you are asking whether Mattel has "searched" virtually every data compilation in existence for potentially responsive documents. As I have said to you, Mattel has not searched every document, or every data compilation, in the off-chance of finding something relevant. As you know, we are talking about lots of different systems, tapes, devices, storage mechanisms, etc., that span over a decade of data. You clearly want a short "sound bite" describing what Mattel did or did not do to search for documents. In fact, the way you described it to me on the telephone was that you were looking for some "categorical exclusion" of what, if anything, Mattel did not search. As I told you then, and reiterate now, the scope of what Mattel has done to search for documents involves a huge amount and a wide variety of data, and is not susceptible to a "categorical" statement or a sound bite. Mattel has properly looked where it has reason to believe it will find non-privileged, relevant documents, but not in places where it has no reasonable belief that it will find such documents. So, when you ask whether Mattel has searched the "backup tapes identified in Mr. Moore's [September 10, 2007] affidavit," you are expressly referring to his testimony that stated that Mattel preserved "in excess of 4,000 backup tapes containing hundreds of terabytes of data." (Paragraph 27). I told you myself, several times, that Mattel has not, and will not, restore every backup tape. However, I told you, if there was some specific document, or custodian, or location where some specific relevant document would likely be located, we could discuss how to obtain such a document (and at whose cost).

Indeed, I was not the first person to advise MGA of this fact. It has been discussed between counsel several times in the life of this case, and Mattel's counsel told the Court precisely this. And, we have offered to MGA on several occasions (in writing, on the record and orally) the Zeus backup tapes if MGA would prefer to search them itself.

In any event, you are asking now sweeping questions about whether Mattel searched any of dozens of different data sources, including over 4,000 backup tapes. Those are questions properly asked as

interrogatories (or depositions) in my opinion. In fact both parties have asked similar questions in discovery.

Mattel propounded an interrogatory (No. 47) asking MGA to identify the sources of information from which it collected documents. MGA objected and refused to respond (MGA's Response to Mattel's Interrogatory No. 47). That is the subject of a pending motion to compel. Why should Mattel answer "simple" questions--which you ask about dozens of different custodians and topics in sweeping, cursory fashion--when MGA refused to answer a similar interrogatory. I have to say, I think I showed more direct responsiveness in our few telephone conversations than it appears MGA has shown throughout the discovery process in this case. When you did ask me a discrete, answerable question--such as whether we had searched Lily Martinez's hard drive--I obtained the answer for you and gave it to you (the answer was "yes", though I don't think you liked that answer).

MGA has itself asked virtually the same question in the form of an interrogatory (No. 31)--signed by you, and propounded on December 4. I further cannot understand why you are asking me--in the guise of a "meet and confer"--to answer something that you know you just asked in the form of a discovery request.

You also say that you have received "conflicting" messages from Mattel. That is incorrect. As the support for your conclusion, you cite to your characterizations of conversations you had with me and Tim Alger--yet you will recall that as soon as you tried to summarize our conversation in an email, I promptly corrected you. Disingenuously, when you cite to your understanding of what I said, you refer only to your understanding of our oral conversations, and not the several emails that I have sent you explicitly stating our position. What I have said is consistent with what I wrote, not in conflict with it. I sincerely hope that we do not have to resort to communicating only in writing going forward.

You further compare your request to "similar" ones made by our firm to yours regarding whether it intended to stand on certain objections. I am perplexed by that comparison. To which "objections" to which RFP or Interrogatory are you referring? To my knowledge, you have not identified any.

Lastly, you mention the offer of a "source log"--which MGA offered to exchange in lieu of answering Mattel's Interrogatory No. 47. That offer was rejected because, among other things, the source log proposed by MGA would only identify the source of documents actually produced, not the places where searches were conducted (or not conducted) for documents not produced. As such, the source log would not be a satisfactory substitute for a response to Interrogatory No. 47. That is undoubtedly why MGA has refused to answer Mattel's Interrogatory -- because it calls for specific information about where MGA has searched and not searched for key early Bratz documents, which MGA does not want to disclose. Based on what you are seeking from me in your email, the source log proposed to be exchanged by MGA would not appear to provide MGA what it is looking for either to the extent any source searched did not ultimately result in the production of a responsive document. And, I note also that Mattel did not reject MGA's proposal to exchange a source log. In fact, Mattel asked MGA if that was a freestanding proposal MGA was making. MGA said it was not. The only "proposal" Mattel rejected was MGA's demand that Mattel waive its right to the information sought in Interrogatory 47 -- which MGA refuses to provide even in discovery and yet you now effectively demand we provide via email.

Regards,

Christopher Tayback

---

**From:** Herrington, Robert J [mailto:Robert.Herrington@skadden.com]
**Sent:** Thursday, December 27, 2007 8:12 PM
**To:** Christopher Tayback
**Cc:** Timothy Alger; Eckles, Paul M (NYC)
**Subject:** RE: Follow-up to today's telephone call

Chris:

We are finding it very hard to understand why Mattel is refusing to provide a straightforward response to what is a very simple question - *has Mattel searched the archived email files and email backup tapes identified in Mr. Moore's affidavit (paragraphs 8, 10, 11, 12, 13, 22, 23, 27, 28) for documents responsive to MGA and Bryant's document requests and the categories of documents Mattel was ordered to produce by Judge Infante?*

As explained in my prior correspondence and during our telephone conversations, we are very concerned that Mattel has not been searching email because Mattel has produced about 2000 emails in this case (as compared to almost 20,000 emails produced by MGA) and because Mattel previously objected to searching or producing email. In connection with Judge Infante's May 22, 2007 Order compelling Mattel to produce documents, Mattel objected to searching and producing email based on a burden objection. Judge Infante overruled this and other objections and ordered Mattel to produce certain categories of documents. Mattel moved for reconsideration and asked for an extension of time. On July 19, 2007, Judge Infante denied the motion for reconsideration and ordered Mattel to produce all responsive documents called for in his Order by August 6, 2007. On September 12, 2007, Judge Infante granted another motion to compel filed by MGA, again overruling Mattel's objections and ordering Mattel to produce all responsive documents by September 28, 2007.

After the Court entered these Orders, Mattel produced some 1164 emails (broken down as follows: May 30, 2007: 67 emails produced; June 15, 2007: 292 emails produced; July 6, 2007: 6 emails produced; July 20, 2007: 98 emails produced; August 6, 2007: 45 emails produced; October 29, 2007: 656 emails produced). We have reviewed these documents and a majority have handwriting or other markings, indicating that they were stored and produced from hardcopy files, rather than from electronically stored data sources. This further supports our view that Mattel has not been searching archived email and email backup tapes for responsive documents.

We also are concerned because we are receiving conflicting messages from Mattel on this issue. During our meet and confer conference on December 14, 2007, Mr. Alger indicated that Mattel had not been searching archived or backed up email because of costs concerns and that these issues already had been addressed in prior briefing, including references to it costing more than $900,000 to search backed up email. Mr. Alger, however, declined to provide any further information until I put a further request in writing. I did so on

December 17, 2007, and we met and conferred on December 26, 2007. During our call at 9:00am on December 26, I understood both you and Mr. Alger to say that archived and backed up email had not been searched because of cost concerns. When we spoke again later that afternoon, I understood you to be saying basically the same thing. But Mattel now appears to be retreating from that position. After multiple meetings and discussions, we still don't have a clear answer as to whether Mattel has been searching archived and backed up email. Mattel's refusal to answer the simple question of whether it has been searching email heightens our concern that Mattel is standing on its prior objections and has not been searching or producing email in response to our document requests and the Court's Orders.

Our inquiry regarding whether Mattel has been searching and producing email is no different from inquiries your firm has made of us regarding whether our client is standing on certain objections. I participated in a conference call with your partner, Scott Kidman, on Monday December 24, 2007 during which Mr. Kidman repeatedly asked whether MGA was standing on certain objections and we agreed to provide him with responses. Our current inquiry regarding Mattel email is no different. Mattel previously objected to searching for and producing email because of cost concerns. We are entitled to know whether Mattel is standing on that objection or not.

Finally, you reference the outstanding dispute regarding the interrogatory Mattel served on MGA regarding its search for documents. As noted in your papers, MGA agreed to provide a source log for documents it has produced in this case, provided that Mattel provides a similar log. As I understand it, Mattel refused this offer and filed a motion to compel. Are you suggesting that Mattel has reconsidered its position and wishes to exchange source logs as previously offered?

Thank you,
--rob

THIS E-MAIL MESSAGE IS CONFIDENTIAL AND INTENDED FOR THE PERSON(S) NAMED ABOVE ONLY. ALL OTHER USE, COPYING, OR DISTRIBUTION IS STRICTLY PROHIBITED.

**Robert J. Herrington**
**Skadden, Arps, Slate, Meagher & Flom LLP**
300 South Grand Ave. | Suite 3400 | Los Angeles, CA | 90071
☎ Direct: (213) 687-5368 | Fax: (213) 621-5368 | Email: rherring@skadden.com

**Joanne Otero, Assistant to Robert Herrington**
☎ Direct: (213) 687-5252 | Email: jootero@skadden.com

---

**From:** Christopher Tayback [mailto:christayback@quinnemanuel.com]
**Sent:** Wednesday, December 26, 2007 9:27 PM
**To:** Herrington, Robert J (LAC)
**Cc:** Timothy Alger
**Subject:** Re: Follow-up to today's telephone call

Robert--

You clearly have concluded that whatever Mattel did to search for documents it was insufficient based on the fact that what was produced was not what MGA expected to receive. I can't respond to MGA's expectations (or yours) regarding the type or quantity of documents that you expected to receive.

I do ask, however, that you at least identify for me precisely which Mattel witnesses you believe have responsive documents that were not produced and which electronic data base you believe contains responsive documents that were not searched. To say that you believe some of the dozens of witnesses identified by Mattel in its initial disclosures and "interrogatory" responses is hardly helpful. As I said, if you want me to respond to any particular concern, I will try--but you have to state it with particularity. Indeed, you asked whether we searched Lily Martinez's computer, and I confirmed for you that we had.

I also note here that Tim Alger told you earlier that the next couple document productions will include emails. Of course, I cannot assure you that what we produce will meet MGA's expectations as to quantity of type of documents.

Having said that, you did not answer my question back to you: is MGA prepared to disclose to Mattel the manner and method by which it has searched for documents, including responding to the interrogatories previously propounded and which I referenced in my last email?

----- Original Message -----
From: Herrington, Robert J <Robert.Herrington@skadden.com>
To: Christopher Tayback
Cc: Timothy Alger
Sent: Wed Dec 26 18:31:43 2007
Subject: RE: Follow-up to today's telephone call

Chris:

We have reason to believe that the email Mattel preserved for several witnesses described as likely to have information regarding MGA, Bratz, and Carter Bryant, as set forth in Mr. Moore's affidavit, contain responsive information. Each of these witnesses has been listed in Mattel's initial disclosures and interrogatory responses as someone with relevant knowledge. It stands to reason that these individuals' emails would contain documents responsive to the topics identified in MGA and Bryant's document requests and the Court's Orders. We also believe the email files Mattel began to preserve in 2004 and 2005 in a more wholesale fashion are likely to have relevant information, as described in Mr. Moore's affidavit. As I explained, we have reason to believe that these email files have not been searched based on the very small number of emails produced by Mattel (less than 2000 at this point) and the objections previously raised by Mattel regarding searching email files. I also understood that Mattel had not searched these email records based on my prior conversation with you and Mr. Alger. Please confirm one way or the other whether these email files were searched for responsive information.

Thank you,
--rob

THIS E-MAIL MESSAGE IS CONFIDENTIAL AND INTENDED FOR THE PERSON(S) NAMED ABOVE ONLY. ALL OTHER USE, COPYING, OR DISTRIBUTION IS STRICTLY PROHIBITED.

Robert J. Herrington
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Ave. | Suite 3400 | Los Angeles, CA | 90071
' Direct: (213) 687-5368 | 7 Fax: (213) 621-5368 | , Email: rherring@skadden.com

Joanne Otero, Assistant to Robert Herrington
' Direct: (213) 687-5252 | , Email: jootero@skadden.com <mailto:jootero@skadden.com>

---

From: Christopher Tayback [mailto:christayback@quinnemanuel.com]

Sent: Wednesday, December 26, 2007 6:07 PM
To: Herrington, Robert J (LAC)
Cc: Timothy Alger
Subject: Re: Follow-up to today's telephone call

Robert--

That's incorrect. I said that Mattel has searched the various electronic media in its possession which were likely to have responsive documents. That includes searches of some data retrieved from back-up tapes and some data retrieved from Zeus. What we have not done is incur the substantial time and expense associated with searching locations where we have no reason to believe responsive documents are located. If you have reason to believe some specific relevant document (or documents) is in Mattel's possession, please let us know. If you have information as to where such a document is located within the various data compilations maintained by Mattel, please say so and we will focus our efforts there. When we spoke, you did not identify any specific relevant document or location that you believed contained a relevant document.

As I said before, we have previously sought from MGA specific information about whether it had searched specific boxes for particular documents. MGA refused to say whether it would or would not (or did or did not) search those specifically requested boxes, but said only that they searched boxes where they thought responsive documents would be located. MGA also has objected and refused to provide a proper answer to our interrogatory asking which databases it searched for responsive documents regarding the early timeframe for Bratz. Why is MGA entitled to a response from Mattel about how it has searched for responsive documentsd that MGA has been unwilling to provide to Mattel?

I am available tomorrow if you wish to discuss this further.

Chris Tayback

----- Original Message -----
From: Herrington, Robert J <Robert.Herrington@skadden.com>
To: Christopher Tayback
Cc: Timothy Alger
Sent: Wed Dec 26 17:24:13 2007
Subject: RE: Follow-up to today's telephone call

Chris:

I want to reconfirm my understanding based on our second conversation this afternoon. As I understand it, Mattel has been searching the sources of electronic information identified in Mr. Moore's affidavit to the extent Mattel believes they might contain responsive documents. The only exception is that Mattel has not been searching archived email / email backup tapes because of concerns regarding cost and whether the archives or backup tapes contain responsive information. Please let me know if that is not correct.

Our view is that archived email and backup tapes are sources that are reasonably likely to contain responsive documents and should be (should have been) searched. We also believe the burden/cost issue was addressed and overruled in connection with Judge Infante's May and September 2007 Orders. I will call you tomorrow morning to discuss.

Thank you,
--rob

THIS E-MAIL MESSAGE IS CONFIDENTIAL AND INTENDED FOR THE PERSON(S) NAMED ABOVE ONLY. ALL OTHER USE, COPYING, OR DISTRIBUTION IS STRICTLY PROHIBITED.

Robert J. Herrington
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Ave. | Suite 3400 | Los Angeles, CA | 90071
' Direct: (213) 687-5368 | 7 Fax: (213) 621-5368 | , Email: rherring@skadden.com

Joanne Otero, Assistant to Robert Herrington
' Direct: (213) 687-5252 | , Email: jootero@skadden.com <mailto:jootero@skadden.com>

---

From: Christopher Tayback [mailto:christayback@quinnemanuel.com]
Sent: Wednesday, December 26, 2007 2:36 PM
To: Herrington, Robert J (LAC)
Cc: Timothy Alger
Subject: RE: Follow-up to today's telephone call

I don't think you understood me. Call me when you have 5 minutes. 213-443-3170.

---

From: Herrington, Robert J [mailto:Robert.Herrington@skadden.com]
Sent: Wednesday, December 26, 2007 2:30 PM
To: Christopher Tayback
Cc: Timothy Alger
Subject: RE: Follow-up to today's telephone call

My letter sought confirmation that Mattel had searched all of the electronic sources identified in Mr. Moore's affidavit (dated 9/10/07) for responsive documents. From our conversation earlier today, I had understand that the answer was "yes" - except for email backup tapes. My email below was referring to the computers identified in Mr. Moore's affidavit, paragraphs 14, 17, and 23.

Thank you,
--rob

THIS E-MAIL MESSAGE IS CONFIDENTIAL AND INTENDED FOR THE PERSON(S) NAMED ABOVE ONLY. ALL OTHER USE, COPYING, OR DISTRIBUTION IS STRICTLY PROHIBITED.

Robert J. Herrington
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Ave. | Suite 3400 | Los Angeles, CA | 90071
' Direct: (213) 687-5368 | 7 Fax: (213) 621-5368 | , Email: rherring@skadden.com

Joanne Otero, Assistant to Robert Herrington
' Direct: (213) 687-5252 | , Email: jootero@skadden.com <mailto:jootero@skadden.com>

---

From: Christopher Tayback [mailto:christayback@quinnemanuel.com]
Sent: Wednesday, December 26, 2007 2:18 PM
To: Herrington, Robert J (LAC)
Cc: Timothy Alger
Subject: RE: Follow-up to today's telephone call

Robert--

What "other computers" are you referring to below? Are you referring to the three people listed in paragraph 9 of Michael Moore's declaration?

Chris

---

From: Herrington, Robert J [mailto:Robert.Herrington@skadden.com]
Sent: Wednesday, December 26, 2007 11:39 AM
To: Christopher Tayback
Cc: Timothy Alger
Subject: RE: Follow-up to today's telephone call

Thank you Chris.

One point of clarification: Based on our conversation this morning, my understanding is that Mattel has searched all the other sources of electronically stored information identified in Mr. Moore's affidavit for responsive documents, aside from email backup tapes (and Zeus, which we are discussing separately). Is that correct? For example, has Lily Martinez's imaged hard drive been searched? What about the other computers identified in Mr. Moore's affidavit? I just want to make sure my understanding is correct on this point.

Thanks,
--rob

THIS E-MAIL MESSAGE IS CONFIDENTIAL AND INTENDED FOR THE PERSON(S) NAMED ABOVE ONLY. ALL OTHER USE, COPYING, OR DISTRIBUTION IS STRICTLY PROHIBITED.

Robert J. Herrington
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Ave. | Suite 3400 | Los Angeles, CA | 90071
' Direct: (213) 687-5368 | 7 Fax: (213) 621-5368 | , Email: rherring@skadden.com

Joanne Otero, Assistant to Robert Herrington
' Direct: (213) 687-5252 | , Email: jootero@skadden.com <mailto:jootero@skadden.com>

---

From: Christopher Tayback [mailto:christayback@quinnemanuel.com]
Sent: Wednesday, December 26, 2007 10:44 AM
To: Herrington, Robert J (LAC)
Cc: Timothy Alger
Subject: Follow-up to today's telephone call

Robert--

One of the two issues I said I would follow up on after the call today is whether there are any Fontanella documents that are non-privileged and responsive to the third-party subpoena MGA served on her. The answer is no. Neither she nor Patel have any documents responsive to the third-party subpoenas.

Chris

--------------------------------------------------------------------------------
To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

****************************************************
This e-mail and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any e-mail, and any printout thereof.

Re: Follow-up to today's telephone call Page 9 of 9

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
***************************************************

---

Exhibit 16, P. 256

1/15/2008

# Exhibit 11

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br>Plaintiff,<br>vs.<br>MATTEL, INC., a Delaware corporation,<br>Defendant. | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| AND CONSOLIDATED ACTIONS | **DISCOVERY MATTER**<br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order Of December 6, 2006]**<br>MATTEL, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF METADATA; AND<br>MEMORANDUM OF POINTS AND AUTHORITIES<br>[Declaration of B. Dylan Proctor filed concurrently herewith]<br>Hearing Date: TBD<br>Time: TBD<br>Place: TBD<br>Discovery Cut-off: January 28, 2007<br>Pre-trial Conference: May 5, 2008<br>Trial Date: May 27, 2008 |

Exhibit 11, P. 257

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at a telephonic conference before Discovery Master Hon. Edward Infante (Ret.) that will occur on a date and at a time to be determined by Judge Infante, plaintiff Mattel, Inc. ("Mattel") will, and hereby does, move the Court to compel MGA Entertainment, Inc. ("MGA") to produce specified e-mails in their native, electronic format, and for sanctions.

This Motion is made pursuant to Federal Rules of Civil Procedure 34 and 37 on the grounds that Mattel's Requests for Production seek discoverable information, including electronic information, and MGA has failed to produce documents in response thereto without justification.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of B. Dylan Proctor filed concurrently herewith, the records and files of this Court, and all other matters of which the Court may take judicial notice.

**Statement of Rule 37-1 Compliance**

The parties met and conferred regarding this motion on August 29, 2007 and times thereafter, including with MGA's substituted counsel after the expiration of the stay on November 16, 2007 and November 21, 2007.

DATED: November 21, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By B. Dylan Proctor /HH
B. Dylan Proctor
Attorneys for Mattel, Inc.

Exhibit 11, P. 258

# TABLE OF CONTENTS

Page

Preliminary Statement ..... 1

Statement of Facts ..... 2

Argument ..... 5

I. THE COURT SHOULD COMPEL MGA TO PRODUCE THE REQUESTED DOCUMENTS IN THEIR NATIVE FORMAT, INCLUDING ALL METADATA ..... 5

A. The Information Contained in the Metadata of these Documents Is Relevant to Mattel's RICO Claims ..... 5

B. MGA Is Obligated to Produce These Electronic Documents ..... 6

C. Any Burden This Production Places on MGA Is Minimal ..... 7

II. MGA SHOULD BE SANCTIONED ..... 8

Conclusion ..... 9

Exhibit 11, P. 259

# TABLE OF AUTHORITIES

Page

## Cases

Braley v. Campbell, 832 F.2d 1504 (10th Cir. 1987) ..... 9

Hyde & Drath v. Baker, 24 F.3d 1162 (9th Cir. 1994) ..... 8

Musick v. Burke, 913 F.2d 1390 (9th Cir. 1990) ..... 5

Playboy Enterprises, Inc. v. Welles, 60 F. Supp. 2d 1050 (S.D. Cal. 1999) ..... 7

RTC v. Dabney, 73 F.3d 262 (10th Cir. 1995) ..... 9

Simon Property Group v. Simon, Inc., 194 F.R.D. 639 (S.D. Ind. 2000) ..... 7

United States v. Daniel, 329 F.3d 480 (6th Cir. 2003) ..... 6

Williams v. Sprint/United Management Company, 230 F.R.D. 640 (D. Kan. 2005) ..... 6, 7

Zubulake v. UBS Warburg LLC, 217 F.R.D. 309 (S.D.N.Y. 2003) ..... 6

## Statutes

28 U.S.C. § 1927 ..... 8

18 U.S.C. § 1962(c) ..... 5

Fed. R. Civ. P. 26(b)(1) ..... 6

Fed. R. Civ. P. 34 ..... 2, 6, 7

Fed. R. Civ. P. 37(a)(4) ..... 8

Exhibit 11, P. 260

## MEMORANDUM OF POINTS AND AUTHORITIES

### Preliminary Statement

Once again, Mattel requests the Court's assistance in compelling MGA to produce obviously relevant and discoverable information. Indeed, MGA agreed to produce it on numerous occasions but has not done so.

Mattel has been seeking "metadata" from certain electronic mail communications that shows from where an e-mail was sent from and was sent to -- information that is not contained in the produced, printed versions of these e-mails. As is undisputed, this metadata is relevant to Mattel's allegation that certain counter-defendants sent various e-mails in furtherance of their criminal conspiracy *across state or international borders* -- activities that constitute predicate acts of wire fraud underlying Mattel's RICO claims. Nor has MGA disputed that the requested information is discoverable. In fact, after numerous requests by Mattel and several meet and confers, MGA long ago agreed to produce the native, i.e. electronic, versions of each of these e-mails that contain the requested metadata by October 1, 2007. Nevertheless, despite the fact that it was first requested by Mattel on August 21, 2007, MGA has not done so and now declines to even provide Mattel with a date on which it will commit (again) to finally produce these electronic files.

MGA has repeatedly represented to the Court and Mattel that it has preserved all of the electronic documents that are potentially relevant to this dispute. If true, MGA accordingly possesses the metadata for these electronic files that Mattel seeks to prove its claims. Each and every e-mail Mattel requests was either sent or received by at least one MGA employee. MGA should be compelled to produce without further delay these documents in their native or electronic format, with full "e-mail header" information to show the "IP addresses" to which e-mails have traveled.

Exhibit 11, P. 261

**Statement of Facts**

MGA Agrees to Produce Relevant Documents in Their Native, Electronic Format. On August 21, 2007, Mattel requested copies of specified e-mails "in their native format, including all metadata and the full e-mail header information," as well as a meet and confer on the subject of MGA's production.[1] Mattel specifically identified by Bates number each of the e-mails for which it was requesting metadata.[2]

The following day, MGA responded by e-mail that they were "researching the documents" and would respond to Mattel at a later date.[3] On August 28, 2007, because MGA had not responded further, Mattel sent a second letter requesting a meet and confer.[4] The parties met and conferred on August 29, 2007. At that time, Mattel informed MGA that all of the e-mails it sought were included in Exhibit C of Mattel's Second Amended Answer and Counterclaims and that it would accept, at least as an initial matter, the production of each e-mail in its native format from *any* source where the e-mail can be located, i.e. from the electronic file of any recipient or sender of a given e-mail, in order to minimize any

---

[1] Letter from Dylan Proctor to Jim Jenal, dated August 21, 2007, at 1-2, attached as Exh. 1 to the Declaration of B. Dylan Proctor in Support of Mattel's Motion to Compel Documents, dated November 21, 2007 ("Proctor Dec."), Exh. 1.

[2] Id. The next day, Mattel clarified that it was not seeking certain of the documents, which were inadvertently included in Mattel's request. E-mail from Proctor to Jenal, dated August 22, 2007, Proctor Dec., Exh. 2.

[3] E-mail from Jenal to Proctor, dated August 22, 2007, Proctor Dec., Exh. 2. MGA also inquired as to why some of the requested documents were identified with an "M" bates number, rather than an "MGA" one. Id. Mattel sent a reply e-mail that although some of these "M" documents were included inadvertently, others were e-mails between MGA and Gustavo Machado Gomez, Pablo Vargas San Jose, and Mariana Trueba, that Mattel had produced. E-mail from Proctor to Jenal, dated August 22, 2007, Proctor Dec., Exh. 2.

[4] Letter from Proctor to Jenal, dated August 28, 2007, at 1, Proctor Dec., Exh. 3.

arguable burden this production would place on MGA.[5] MGA promised to investigate.[6] On September 10, 2007, Mattel received a letter from MGA requesting that Mattel provide twenty documents that Mattel had already produced in printed form "in their native format, including all metadata and the full e-mail header information"[7] – information Mattel has since produced.[8]

Then, during a follow-up meet and confer on September 14, 2007, MGA agreed to produce all of the e-mails requested by Mattel in their electronic format, *with full e-mail header information*, on or before October 1, 2007.[9]

MGA Fails to Produce as Promised. On October 3, 2007, when these electronic documents were already past due, MGA produced a chart containing what it claimed to be "the metadata MGA was able to retrieve," rather than the files themselves.[10] This chart did not contain the e-mail header information that was promised by MGA and requested by Mattel.[11] As a result, the chart produced by MGA was of little use for proving from where, or to where, these e-mails were sent.[12] In addition, the chart contained no information whatsoever for some of the requested e-mails which had been sent to or from MGA employees in 2004.[13] MGA

---

5 Letter from Proctor to Jenal, dated August 30, 2007, at 2, Proctor Dec., Exh. 4.
6 Proctor Dec., ¶ 6.
7 Letter from Chris Nguyen to Proctor, dated September 10, 2007, Proctor Dec., Exh. 5.
8 Proctor Dec., ¶ 7.
9 Letter from Proctor to William J. Charron, dated September 14, 2007, at 1, Proctor Dec., Exh. 6.
10 See Letter from Nguyen to Proctor, dated October 3, 2007, Proctor Dec., Exh. 7.
11 See id.
12 Proctor Dec., ¶ 9.
13 See Letter from Chris D. Nguyen to Proctor, dated October 3, 2007, Proctor Dec., Exh. 7.

offered no explanation why it had produced this chart in lieu of the electronic files it had promised.[14]

After Mattel explained to MGA that the chart was inadequate,[15] MGA again assured Mattel that it would provide the electronic version of each of the requested e-mails MGA possessed, and represented that it would investigate how long this would take.[16] On October 12, 2007, prior counsel for MGA withdrew.[17] On October 14, 2007, Mattel sent an e-mail to MGA's new counsel that catalogued some of the discovery MGA owed Mattel, including the overdue electronic documents.[18] Mr. Nolan informed Mattel that he would "look into" these matters.[19] Since nothing further was heard from MGA on this subject, Mattel sent an additional letter on October 29, 2007, identifying categories of discovery that MGA still owed Mattel, including the electronic files MGA agreed to produce.[20]

On November 16, 2007, counsel for Mattel again met and conferred, this time with MGA's new counsel. MGA stated it was inclined to produce the electronic version of these documents, including all metadata, was investigating what would be involved in such a production, and would follow up with Mattel

---

14 See id.

15 E-mail from Proctor to Charron, dated October 4, 2007, Proctor Dec., Exh. 8.

16 E-mail from Proctor to Charron, dated October 8, 2007, Proctor Dec., Exh. 9.

17 Request for Approval of Substitution of Attorney and Order, dated October 12, 2007, Proctor Dec., Exh. 10.

18 E-mail from Jon D. Corey to Thomas J. Nolan, dated October 14, 2007, Proctor Dec., Exh. 11.

19 E-mail form Nolan to Proctor and Corey, dated October 14, 2007, Proctor Dec., Exh. 12.

20 Letter from Zeller to Nolan, dated October 29, 2007, at 6, Proctor Dec., Exh. 13.

during a scheduled teleconference on November 21, 2007.[21] However, Mattel has still not received these documents, let alone a date by which they will be produced.[22]

**Argument**

## I. THE COURT SHOULD COMPEL MGA TO PRODUCE THE REQUESTED DOCUMENTS IN THEIR NATIVE FORMAT, INCLUDING ALL METADATA

### A. The Information Contained in the Metadata of these Documents Is Relevant to Mattel's RICO Claims

Mattel has asserted claims for violations of RICO and conspiracy to violate RICO against all the counter-defendants to this action.[23] To that end, Mattel alleges that defendants engaged in a "pattern of racketeering activity," including wire fraud.[24] To prove wire fraud allegations, Mattel may show that counter-defendants' conduct affected "interstate or foreign commerce." See 18 U.S.C. § 1962(c) ("It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of *which affect, interstate or foreign commerce*, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."); see also Musick v. Burke, 913 F. 2d 1390, 1399 (9th Cir. 1990) (demonstration of effect on interstate commerce is appropriate in context of RICO claim). This can be established by proof that certain of counter-defendants' e-mails, made in furtherance of their criminal conspiracy, were communicated over state or

---

21 Proctor Dec., ¶ 19.
22 Proctor Dec., ¶ 20.
23 Mattel's Second Amended Answer and Counterclaims, dated July 12, 2007, at ¶¶ 88-105, Proctor Dec., Exh 14.
24 See id.

international borders. See, e.g., United States v. Daniel, 329 F.3d 480, 485 (6th Cir. 2003).

Mattel has alleged that each of the e-mails for which it seeks metadata was communicated in furtherance of a defendants' conspiracy in violation of RICO. Therefore, the information requested by Mattel -- metadata that shows from where and to where an e-mail was sent, and where the e-mail traveled -- may provide evidence showing that some, or all, of these communications were made across state lines. The paper copies of the e-mails do not contain this information. As a result, the metadata sought by Mattel, and promised by MGA, is highly relevant. In fact, all of these documents relate to MGA's alleged theft of Mattel's trade secrets and other confidential information -- allegations for which the Court has already had to order MGA to produce responsive documents.[25]

**B. MGA Is Obligated to Produce These Electronic Documents**

Mattel is entitled to Fed. R. Civ. P. 26(b)(1) "discovery regarding any matter, not privileged, which is relevant to the subject matter in the pending litigation." Electronic versions of relevant documents, including their metadata, are no exception to this standard and are clearly discoverable under Rule 34. Williams v. Sprint/United Management Company, 230 F.R.D. 640, 656 (D. Kan. 2005) (holding that producing party should produce electronic version of documents, including metadata); Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 317 (S.D.N.Y. 2003) ("[E]lectronic documents are no less subject to discovery than paper records. This is true not only of electronic documents that are currently in use, but also of documents that may have been deleted and now reside only on

[25] Order Granting in Part and Denying in Part Mattel's Motion to Compel the Production of Documents by MGA, dated August 13, 2007, at 14, Proctor Dec. Exh. 16.

backup disks."); Playboy Enterprises, Inc. v. Welles, 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999) ("The Advisory Committee Notes to Fed. R. Civ. P. 34 make clear that information stored in computer format is discoverable."); Simon Property Group v. Simon, Inc., 194 F. R. D. 639, 640 (S.D. Ind. 2000) ("[C]omputer records, including records that have been 'deleted,' are documents discoverable under Fed. R. Civ. P. 34."). Mattel is accordingly entitled to any electronic documents, and corresponding metadata, that are relevant to its claims. See Williams, 230 F. R. D. at 651 ("Of course, if the producing party knows or should reasonably know that particular metadata is relevant to the dispute, it should be produced) (citations omitted).

**C. Any Burden This Production Places on MGA Is Minimal**

MGA cannot genuinely claim, and indeed has not claimed to date, that the production requested by Mattel is unduly burdensome. To the contrary, after "researching" them, MGA agreed to produce these electronic documents.[26]

In addition, first, MGA should be able to produce the requested information with little effort. Mattel has done everything in its power to minimize whatever arguable burden this production could place on MGA. Mattel has specifically identified each of the e-mails for which it seeks an electronic counterpart, all of which have already been produced. In Mattel's initial letter requesting this information on August 21, 2007, Mattel provided a bates number for each of the documents it seeks in order to assist MGA in locating these documents.[27] So as to reduce any burden further, Mattel also informed MGA that it would accept the production of each e-mail in its electronic form from *any* source where the e-

---

[26] E-mail from Jenal to Proctor, dated August 22, 2007, Proctor Dec., Exh. 2.
[27] Letter from Dylan Proctor to Jim Jenal, dated August 21, 2007, at 1-2, Proctor Dec., Exh. 1.

mail can be located, i.e. from the electronic file of any recipient or sender of a given e-mail.[28]

Second, every e-mail for which Mattel seeks an electronic version was sent or received by at least one of MGA's own employees, and thus should be readily accessible.[29] Moreover, since MGA claims it "does not have, and never has had, a policy to auto-delete e-mails," the electronic versions of the e-mails sought by Mattel should still be in MGA's possession, and easily accessible.[30]

Mattel is not asking MGA to do anything more than locate and produce electronic versions of its employees' e-mails that are relevant to this dispute, which it has already promised to produce. It should be ordered to do so immediately.

## II. MGA SHOULD BE SANCTIONED

Under the Federal Rules, a party bringing a motion to compel is entitled to the "reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response or objection was substantially justified, or that other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(4). The burden of establishing substantial justification is on the party being sanctioned. Hyde & Drath v. Baker, 24 F.3d 1162, 1171 (9th Cir. 1994). Independently, sanctions may be imposed under 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably

---

[28] Letter from Proctor to Jenal, dated August 30, 2007, at 2, Proctor Dec., Exh. 4.

[29] Email from Proctor to Jenal, dated August 22, 2007, Proctor Dec., Exh. 2.

[30] Declaration of Daphne Gronich in Response to Court's Request for Information Regarding Document Preservation, dated September 10, 2007, at ¶ 11, Proctor Dec., Exh. 15.

and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions under this section are appropriate "for conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." RTC v. Dabney, 73 F.3d 262, 265 (10th Cir. 1995), citing Braley v. Campbell, 832 F.2d 1504, 1512 (10th Cir. 1987).

MGA has failed to produce documents that relate to MGA's alleged theft of Mattel's trade secrets and other confidential information -- allegations for which the Court has already ordered MGA to produce responsive documents.[31] This is despite the fact that MGA long ago agreed to produce this information, and has no justification for failing to live up to its obligation.

MGA's actions are part of a pattern of unreasonable and vexatious conduct by the MGA parties, and MGA, and it should be sanctioned for the fees Mattel has been forced to incur in connection with this motion. Mattel therefore requests that MGA and its counsel be ordered to pay $2,500 as partial reimbursement for the fees Mattel has incurred on this Motion.

**Conclusion**

For the foregoing reasons, MGA should be compelled to produce the electronic version of each of the e-mails requested by Mattel with their accompanying metadata.

DATED: November 21, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By [signature]
B. Dylan Proctor
Attorneys for Mattel, Inc.

---

[31] Order Granting Mattel's Motion to Compel Production of Documents, dated August 13, 2007, at 14, Proctor Dec. Exh. 16.

07209/2298724.2

Exhibit 11, P. 269

# Exhibit 12

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
(timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

SEP - 4

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br>Plaintiff,<br>v.<br>MATTEL, INC., a Delaware Corporation,<br>Defendant,<br><br>AND CONSOLIDATED CASES | CASE NO. CV 04-09049 SGL (RNBx)<br><br>Consolidated with Case Nos. CV 04-9059 and CV 05-2727<br><br>NOTICE OF SUBPOENA ISSUED TO FARHAD LARIAN<br><br>Discovery Cut-Off: January 14, 2008<br>Pre-Trial Conference: April 7, 2008<br>Trial Date: April 29, 2008<br><br>Hon. Stephen G. Larson |

Exhibit 12, P. 270

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Rules 30 and 45 of the Federal Rules of Civil Procedure, Mattel, Inc., has issued a subpoena, attached as Exhibit 1, for the deposition and production of specified documents to the following witness:

1) Farhad Larian, 160 Delfern Drive, Los Angeles, CA 90077.

DATED: September 4, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By [signature]
Michael T. Zeller
Attorneys for Mattel, Inc.

Exhibit 12, P. 271

**EXHIBIT 1**

AO88 (Rev. 12/06) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware Corporation

v.

CARTER BRYANT, an Individual; and DOES 1 through 10, inclusive

## SUBPOENA IN A CIVIL CASE

Case Number:[1] CV 04-9049-SGL
Consolidated with cases CV 04-9059 and CV 05-2727

TO: Farhad Larian
160 Delfern Drive
Los Angeles, CA 90077

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case. Testimony will be recorded stenographically and by videographer.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP<br>865 S. Figueroa St., 10th Floor, Los Angeles, CA 90017 | October 1, 2007<br>9:00 a.m. |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, CA 90017 (213) 443-3000 | September 18, 2007<br>9:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature]<br>Attorney for Plaintiff, Mattel, Inc. | August 31, 2007 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER

Michael T. Zeller, Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017 (213) 443-3000

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO-88

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

DATE PLACE

SERVED

SERVED ON (PRINT NAME) MANNER OF SERVICE

SERVED BY (PRINT NAME) TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ______________________
DATE SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

ATTACHMENT A

Documents To Be Produced

1. DEFINITIONS.

a. "YOU" or "YOUR" means Farhad Larian, and all of YOUR current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on YOUR behalf, pursuant to YOUR authority or subject to YOUR control.

b. "MORAD ZARABI" means Morad Zarabi, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to YOUR authority or subject to his control.

c. "ISAAC LARIAN" means Isaac Larian, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

d. "BRYANT" means Carter Bryant, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

e. "ERNEST DUTCHER" means Ernest Dutcher, and all of his current or former employees, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, predecessors-in-interest and successors-in-interest, and any other PERSON acting on his behalf, pursuant to his authority or subject to his control.

f. "BRATZ" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold

or marketed under, the name or term "Bratz" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Bratz" line, and each version or iteration of such product, doll or DESIGN or any portion thereof. Without limiting the generality of the foregoing, the term "BRATZ" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Requests herein.

g. "ANGEL" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Angel" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Angel" line, and each version or iteration of such product, doll or DESIGN or any portion thereof. Without limiting the generality of the foregoing, the term "ANGEL" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Requests herein.

h. "PRAYER ANGELS" means any project, product, doll or DESIGN ever known by that name (whether in whole or in part and regardless of what such project, product or doll is or has been also, previously or subsequently called) and any product, doll or DESIGN or any portion thereof that is now or has ever been known as, or sold or marketed under, the name or term "Prayer Angels" (whether in whole or in part and regardless of what such product, doll or DESIGN or portion thereof is or has been also, previously or subsequently called) or that is now or has ever been sold or marketed as part of the "Prayer Angels" line, and each version or iteration of such product, doll or DESIGN or any portion thereof. Without limiting the generality of the foregoing, the term "PRAYER ANGELS" does not and shall not require that there be a doll existing at the time of the event, incident or occurrence that is the subject of, or otherwise relevant or responsive to, the Requests herein.

i. "DESIGN" or "DESIGNS" means any and all representations, whether two-dimensional or three-dimensional, and whether in tangible, digital, electronic or other form, including but not limited to all works, designs, artwork, sketches, drawings, illustrations, representations, depictions, blueprints, schematics,

diagrams, images, sculptures, prototypes, models, samples, rotocasts, reductions to practice, developments, concepts, ideas, inventions and/or improvements, as well as all other items, things and DOCUMENTS in which any of the foregoing are or have been expressed, embodied, contained, fixed or reflected in any manner, whether in whole or in part. the phrase "product, doll or DESIGN or any portion thereof" also includes without limitation any names, fashions, accessories, artwork, packaging or any other works, materials, matters or items included or associated therewith.

j. "MGA" means MGA Entertainment Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

k. "MATTEL" means Mattel, Inc., any of its current or former employees, officers, directors, agents, representatives, attorneys, accountants, vendors, consultants, independent contractors, parents, subsidiaries, divisions, affiliates, predecessors-in-interest and successors-in-interest, and any other PERSON acting on its behalf, pursuant to its authority or subject to its control.

l. "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

m. "DOCUMENT" or "DOCUMENTS" means all "writings" and "recordings" as those terms are defined in Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence, including, but not limited to, all writings and records of every type and description including, but not limited to, contracts, agreements, correspondence, memoranda, letters, COMMUNICATIONS, facsimiles, electronic mail, records of telephone conversations, handwritten and typewritten notes of any kind, statements, reports, minutes, recordings, transcripts and summaries of meetings, voice recordings, pictures, photographs, drawings, computer cards, tapes, discs, printouts and records of all types, studies, instruction manuals, policy manuals and statements, books, pamphlets, invoices, canceled checks and every other device or medium by which or through which information of any type is transmitted, recorded or preserved. Without any limitation on the foregoing, the term "DOCUMENT" shall include all copies that differ in any respect from the original or

other versions of the DOCUMENT, including without limitation all drafts and all copies of such drafts or originals containing initials, comments, notations, insertions, corrections, marginal notes, amendments or any other variation of any kind.

n. "COMMUNICATION" or "COMMUNICATIONS" means and includes any disclosure, transfer or exchange of information between two or more PERSONS, whether orally or in writing, including, without limitation, any conversation or discussion by means of meeting, letter, telephone, note, memorandum, telegraph, telex, telecopier, electronic mail, or any other electronic or other medium, including without limitation in written, audio or video form.

o. "RELATING TO" means referencing, referring to, constituting, evidencing, pertaining to, mentioning, supporting, contradicting, negating, bearing on, touching on, containing, embodying, reflecting, identifying, stating, dealing with, concerning, commenting on, summarizing, responding to, relating to, describing or discussing in any way.

p. "FAMILY MEMBER" means any PERSON who at any time is, was or has been a spouse or child of another PERSON.

r. "IDENTIFY" or "IDENTITY" means the following: (i) With reference to an account with a bank or financial institution, means the name and address of the bank or financial institution, the account number(s) for or otherwise associated with such account, the date on which such account was opened and, if applicable, closed, and the name of each holder, including without limitation each beneficial holder, of each such account. (ii) With reference to a telephone subscription account, means the name and address of the carrier, the telephone number(s) for or otherwise associated with such account, the date on which such account was opened and, if applicable, closed, and the name of each holder of each such account. (iii) With reference to an email account, means the name and address of the service provider of such account, the email address(es) for or otherwise associated with such account, the date on which such account was opened and, if applicable, closed, and the name of each holder of each such account.

s. "ACTION" means this action now consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly Mattel, Inc. v. Bryant, first filed in Los Angeles County Superior Court; Bryant v. Mattel, Inc.; and MGA Entertainment, Inc. v. Mattel, Inc.; and all counterclaims, cross-claims and defenses therein.

t. The singular form of a noun or pronoun includes within its meaning the plural form of the noun or pronoun so used, and vice versa; the use of the masculine form of a pronoun also includes within its meaning the feminine form of the pronoun so used, and vice versa; the use of any tense of any verb includes also within its meaning all other tenses of the verb so used, whenever such construction results in a broader request for information; and "and" includes "or" and vice versa, whenever such construction results in a broader disclosure of DOCUMENTS or information.

2. INSTRUCTIONS.

a. YOU are to produce all DOCUMENTS requested hereby that are in YOUR possession, custody and control.

b. If YOU contend that YOU are not required to produce certain DOCUMENTS called for by these requests on the grounds of a privilege or protection that YOU are not prepared to waive, in lieu of producing such DOCUMENTS identify each DOCUMENT and provide the following information:

(1) The privilege or protection that you claim precludes disclosure;

(2) The subject matter of the DOCUMENT (without revealing the content as to which the privilege or protection is claimed);

(3) The date, author(s), addressee(s); and

(4) Any additional facts on which YOU would base YOUR claim of privilege or protection.

c. YOU are required to identify any and all DOCUMENTS sought by this document request that have been destroyed.

d. YOU are required to identify the source of all DOCUMENTS produced, and the person for whom, or department, division or office for which, such DOCUMENTS are maintained.

e. Each DOCUMENT shall be produced in its original file folder, or in lieu thereof, any writing on the file folder from which each such DOCUMENT is taken shall be copied and appended to such DOCUMENT.

3. DOCUMENTS TO BE PRODUCED.

(1) All DOCUMENTS, including all COMMUNICATIONS, RELATING TO any and all lawsuits and arbitration proceedings between YOU and ISAAC LARIAN, including without limitation all video and/or sound recordings, transcripts, exhibits, memoranda, witness statements, declarations, affidavits and sworn testimony given by any PERSON in connection with such arbitration proceedings.

(2) All DOCUMENTS, including without limitation any and all pleadings, briefs, decisions, orders, correspondence and other COMMUNICATIONS, created, reviewed, transmitted or received by YOU in connection with any lawsuit or arbitration proceedings, including without limitation any pre-arbitration and post-arbitration proceedings, or any other dispute between YOU and ISAAC LARIAN.

(3) All DOCUMENTS, including all COMMUNICATIONS, RELATING TO any contract or agreement, or any proposed, offered or requested contract or agreement, between YOU and/or any of YOUR FAMILY MEMBER, on the one hand, and ISAAC LARIAN, any FAMILY MEMBER of ISAAC LARIAN and/or MGA, on the other hand, at any time since January 1, 1999, including without limitation any and all actual, proposed, offered or requested amendments or modifications thereto, and including without limitation: (a) the Agreement for Sale of Stock, entered into on or around December 4, 2000, between YOU and ISAAC LARIAN, (b) the Agreement to Arbitrate and Selection of Arbitrator, entered into on or about September 28, 2000, between YOU and ISAAC LARIAN, (c) any and all employment and consulting agreements, (d) any and all settlements, resolutions or compromises of any kind, and (e) any and all fee or indemnification agreements.

(4) All DOCUMENTS, including all COMMUNICATIONS, RELATING TO Los Angeles Superior Court Case No. BC301371 brought by YOU against ISAAC LARIAN and/or any related proceedings, including any appeal thereof, and including without limitation all video and/or sound recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness statements, declarations, affidavits and sworn testimony given by any PERSON in connection with such suit and/or related proceedings and/or any appeal related to such lawsuit.

(5) All DOCUMENTS RELATING TO BRYANT, including without limitation his agreement with MGA dated "as of" September 18, 2000, his work on BRATZ and his employment by MATTEL.

(6) All DOCUMENTS RELATING TO BRATZ that discuss, concern or reference the time period prior to January 1, 2002, regardless of when such DOCUMENT was generated, created or transmitted.

(7) All DOCUMENTS RELATING TO the creation, conception, development, design or origins of BRATZ, including without limitation all statements by ISAAC LARIAN, BRYANT or any other PERSON relating thereto at any time.

(8) All COMMUNICATIONS to or from YOU RELATING TO BRATZ, including without limitation to or from ISAAC LARIAN, MORAD ZARABI, MGA, BRYANT, Veronica Marlow, Mercedeh Ward, Margaret Hatch (also known as Margaret Leahy and/or Margaret Hatch-Leahy) and/or Anna Rhee, and including without limitation all diaries, notes, calendars, logs, phone records, letters and other DOCUMENTS relating thereto.

(9) All planners, including without limitation any Franklin planner, used by YOU, ISAAC LARIAN or any other PERSON at MGA RELATING TO the time period between January 1, 1998 and December 31, 2002, inclusive.

(10) All DOCUMENTS RELATING TO the timing of any meetings between YOU and anyone at MGA regarding BRATZ, including but not limited to any planners, calendars, or other meeting records.

(11) All DOCUMENTS that REFER OR RELATE to any ownership rights or interest in BRATZ.

(12) All DOCUMENTS, including all COMMUNICATIONS, RELATING TO any actual, proposed, contemplated, considered or potential copyright, patent or any other application or registration RELATING TO BRATZ.

(13) All DOCUMENTS RELATING TO ANGEL.

(14) All DOCUMENTS RELATING TO PRAYER ANGELS.

(15) All DOCUMENTS RELATING TO Elise Cloonan or any of her FAMILY MEMBERS, including without all COMMUNICATIONS to or from her RELATING TO BRYANT, MATTEL, BRATZ, ISAAC LARIAN and/or MGA, and

including without limitation all diaries, notes, calendars, logs, phone records, letters and other DOCUMENTS RELATING TO such COMMUNICATIONS.

(16) All DOCUMENTS RELATING TO Los Angeles Superior Court Case No. BC329501 filed by YOU against ISAAC LARIAN, MORAD ZARABI and Kambiz Zarabi, and/or any related proceedings and/or any appeal of such lawsuit, including without limitation all video and/or sound recordings, transcripts, exhibits, pleadings, briefs, memoranda, witness statements, declarations, affidavits and sworn testimony given by any PERSON in connection with such suit and/or related proceedings and/or any appeal related to such lawsuit.

(17) ALL DOCUMENTS, including all COMMUNICATIONS, RELATING TO any financial appraisal of MGA and/or BRATZ, including without limitation any appraisal or appraisals performed by ERNEST DUTCHER and any instructions given to ERNEST DUTCHER regarding such appraisal or appraisals.

(18) All DOCUMENTS RELATING TO any financial or other information considered, relied upon or used in any manner to conduct any valuation or appraisal of MGA and/or BRATZ, including without limitation for the time period from 1999 to 2001.

(19) All DOCUMENTS RELATING TO the value of MGA and/or BRATZ at any time since January 1, 1999.

(20) All DOCUMENTS, including all COMMUNICATIONS, RELATING TO allegations that ISAAC LARIAN concealed from YOU and/or MORAD ZARABI facts relating to BRATZ and/or BRYANT.

(21) All DOCUMENTS, including all COMMUNICATIONS, RELATING TO the meeting on or around January 26, 2003 between YOU, MORAD ZARABI, ISAAC LARIAN, and Mike Shenasafar, including without limitation all video and/or sound recordings and notes relating thereto.

(22) DOCUMENTS sufficient to identify any and all appraisers, accountants and consultants who participated or were involved in any lawsuit or arbitration, including pre-arbitration proceedings, or any other dispute between YOU and ISAAC LARIAN RELATING TO MGA or BRATZ.

(23) All DOCUMENTS RELATING TO any and all payments of money or transfers of anything of value that ISAAC LARIAN, his FAMILY MEMBERS and/or MGA have made, have offered or have proposed, promised or agreed to make, to or for the benefit of YOU or YOUR FAMILY MEMBERS at any time from January 1, 1999 through the present.

(24) All DOCUMENTS RELATING TO any and all payments of money or transfers of anything of value that any PERSON has made, has offered or has proposed, promised or agreed to make, to or for the benefit of YOU or YOUR FAMILY MEMBERS and that was related in any way to BRATZ, BRYANT, MGA or this ACTION at any time from January 1, 1999 through the present.

(25) All DOCUMENTS RELATING TO this ACTION, including all COMMUNICATIONS relating thereto.

(26) All COMMUNICATIONS between YOU and MATTEL since January 1, 1999, and all DOCUMENTS relating thereto.

(27) All DOCUMENTS that YOU showed MATTEL at any time since January 1, 1999, including all such DOCUMENTS that YOU showed MATTEL in connection with this ACTION, including without limitation each of the following:

(a) The MGA email dated November 16, 2000 that summarizes "last week's meeting" with K-Mart and references BRATZ.

(b) YOUR email to ISAAC LARIAN dated November 22, 2000 mentioning prices for a "Bratz Fashion Pack."

(c) The November 22, 2000 chart describing changes to the Bratz Doll Assortment and Bratz Holiday doll.

(d) YOUR August 19, 2005 email to Scott Bachrach (at scottbac@aol.com) inquiring about the first contact between Mr. Bachrach and MGA concerning BRATZ, as well associated COMMUNICATIONS.

(e) YOUR August 22, 2005 email to Colleen O'Higgins asking about BRYANT and BRATZ, as well as associated COMMUNICATIONS.

(f) The COMMUNICATIONS with Bin Ton, Michael Lingg and Jennifer Maurus regarding BRATZ, including without limitation those relating to actual and/or draft declaration(s) by the foregoing regarding BRATZ.

(g) The December 21, 2000 email from ISAAC LARIAN to Paul Warner, with copies to Dennis Medici and YOU, that mentions TRU purchases for products including BRATZ.

(h) YOUR August 1, 2005 email to Victoria O'Connor regarding BRATZ licensees, as well as associated COMMUNICATIONS.

(i) YOUR August 1, 2005 email chain with employees at dng.com asking about BRATZ, as well as associated COMMUNICATIONS.

(j) The August 7, 2005 email from Mark Fragel responding to questions regarding BRATZ materials shown to Paulette Prim in November 2000.

(k) YOUR May 24, 2000 email to ISAAC LARIAN that states ISAAC LARIAN had instructed YOU to withhold original documents that had been located in connection with the Fireman's Fund case and "to tell him [an MGA attorney] we could not find the originals."

(l) The document entitled "Analysis of Design, Packaging & Mock-Up Expense for 6 Months Ending 6/30/99 and 6/30/00" attached to the August 11, 2000 email from Dennis Medici to ISAAC LARIAN and YOU.

(m) The August 14, 2000 ISAAC LARIAN email to Medici, Warner and YOU that references cost tracking software used by MATTEL that ISAAC LARIAN says he learned about from interviewing MATTEL employees.

(n) The emails between ISAAC LARIAN and Jahangir Makabi requesting that Mr. Makabi sign an affidavit that he lost his original stock certificates despite Mr. Makabi's protestation that he never had any such certificates, as well as associated COMMUNICATIONS.

(o) The January 31, 2001 email from ISAAC LARIAN to All in Marketing and Product Development, Medici and Didi Brown asserting that he (ISAAC LARIAN) had been purportedly diagnosed with "Alzheimer's" and denying

in substance that he ever said anything that cannot be confirmed by a writing.

(p) The November 15, 2000 Paula Treantafelles email to YOU that says MGA will be selling a BRATZ backpack and states that a design for it is attached.

(28) All DOCUMENTS that MATTEL provided to YOU or for YOUR review since January 1, 1999.

(29) All DOCUMENTS RELATING TO the payment, offering or promising of money or anything of value by ISAAC LARIAN, MGA and/or YOU to any PERSON who was at the time employed by or worked for MATTEL.

(30) DOCUMENTS sufficient to show each title and position that YOU have or have ever held with MGA and the nature and extent of any ownership interest of any kind that YOU have or have ever had in MGA, including without limitation DOCUMENTS showing the start and, if applicable, end dates with respect to each such title, position or ownership interest.

(31) All DOCUMENTS, since January 1, 1999, RELATING TO YOUR, ISAAC LARIAN's and/or MGA's receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any MATTEL line list or other DOCUMENT prepared by MATTEL identifying MATTEL products in the planning, design or development phase.

(32) All DOCUMENTS, since January 1, 1999, RELATING TO YOUR, ISAAC LARIAN's and/or MGA's receipt, reproduction, copying, storage, transmission, transfer, retention, destruction, deletion or use of any DOCUMENTS, including but not limited to any compilation of information, that was prepared, made, created, generated, assembled or compiled by or for MATTEL and that was not publicly available at the time of YOUR, ISAAC LARIAN's and/or MGA's receipt of such DOCUMENT.

(33) All DOCUMENTS RELATING TO the hiring, engagement, or retention by YOU, ISAAC LARIAN and/or MGA of any current or former MATTEL employee or contractor since January 1, 1999, including but not limited to all employment agreements and agreements RELATING TO confidentiality or the invention, authorship, or ownership of any concept or product.

(34) All DOCUMENTS RELATING TO any effort by YOU, ISAAC LARIAN and/or MGA to recruit employees or contractors who have been or are employed by or who have worked for MATTEL since January 1, 1999.

(35) All DOCUMENTS, since January 1, 1999, RELATING TO YOUR, ISAAC LARIAN's and/or MGA's knowledge of any MATTEL product prior to the time that such product had been announced or disclosed by MATTEL to retailers or the public.

(36) All DOCUMENTS, since January 1, 1999, RELATING TO YOUR, ISAAC LARIAN's and/or MGA's knowledge of any DESIGN created by, on behalf of, or at the behest of MATTEL, or created by any PERSON employed by or under contract with MATTEL at the time of the DESIGN's creation, that was not manufactured for sale or placed into the retail market.

(37) All DOCUMENTS, since January 1, 1999, RELATING TO YOUR, ISAAC LARIAN's and/or MGA's knowledge of MATTEL's employment or inventions agreements.

(38) YOUR computer hard drives RELATING TO the time period from January 1, 1999 through December 31, 2002, inclusive.

(39) All DOCUMENTS RELATING TO any instruction by YOU, ISAAC LARIAN or MGA to destroy or withhold any DOCUMENT since January 1, 1998, including without limitation in connection with any lawsuit.

(40) All DOCUMENTS, including all COMMUNICATIONS, RELATING TO the preservation, retention or destruction of any DOCUMENT or DOCUMENTS that are sought by or the subject of Request Nos. 1 through 39, inclusive.

(41) DOCUMENTS sufficient to IDENTIFY since January 1, 1999 through the present (a) each account with any bank or financial institution that YOU have or have had, or that YOU have or have had any legal or beneficial interest in; (b) each telephone subscription service account that YOU have or have had, or that YOU use or have used; and (c) each email account that YOU have or have had, or that YOU use or have used.