EXHIBIT 28

01/17/2008 15:59 FAX  12134433100          QEUOH-LAO-2                          ☒002/003

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3223**

WRITER'S INTERNET ADDRESS
timalger@quinnemanuel.com

January 17, 2008

VIA FACSIMILE AND MAIL

Michael H. Page, Esq.                 Thomas J. Nolan, Esq.
Keker & Van Nest, LLP                 Skadden, Arps, Slate, Meagher & Flom LLP
710 Sansome Street                    300 South Grand Ave., Suite 3400
San Francisco, CA 94111               Los Angeles, CA 90071

Mark E. Overland, Esq.
Overland Borenstein Scheper
 & Kim, LLP
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071-3144

Re: MGA Entertainment, Inc. v. Mattel, Inc.

Dear Counsel:

Mattel has inadvertently produced in discovery two documents protected by the attorney-client privilege and attorney work-product doctrine. The documents bear Bates Nos. M 0199767-78 and M 0199769-70.

Pursuant to Section 13 of the Stipulated Protective Order in this litigation, please promptly destroy any and all electronic copies and return to me any and all paper copies of the above documents. Further, when you return the documents, please certify that you have included all paper copies and that you have destroyed all electronic copies of the documents in your possession.

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100

07975/2345633.1

Exhibit _26_, P. _312_

01/17/2008 16:59 FAX 12134433100       QUINN-LAO-2

Michael H. Page, Esq.
Thomas J. Nolan, Esq.
Mark E. Overland, Esq.
January 17, 2008
Page 2

Please feel free to contact me or Harvinder Anand of my office, at (213) 443-3915, if you have any questions.

Very truly yours,

Timothy L. Alger

07975/2345633.1

Exhibit _28_, P. _313_

01/17/2008 15:58 FAX  12134433100          QEUOE-LAO-2                    @001/003

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**NEW YORK**
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
Facsimile: (212) 849-7100

**LOS ANGELES**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE
## FACSIMILE TRANSMISSION

DATE:      January 17, 2008                NUMBER OF PAGES, INCLUDING COVER: 3

| NAME/COMPANY | PHONE NO. | FAX NO. |
|---|---|---|
| John W. Keker, Esq.; Michael H. Page, Esq. Christa M. Anderson, Esq. Keker & Van Nest, LLP | 415.391.5400 | 415.397.7188 |
| Thomas Nolan, Esq.; Carl Roth, Esq. Skadden, Arps, Slate, Meagher & Flom LLP | 213.687.5000 | 213.687.5600 |
| Mark Overland, Esq.; Alexander Cote, Esq. Overland Borenstein Scheper & Kim LLP | 213.613.4655 | 213.613.4656 |

FROM:      Timothy L. Alger

RE:        <u>Re: MGA Entertainment, Inc. v. Mattel, Inc.</u>

MESSAGE:

FOR QUESTIONS OR ERROR IN TRANSMISSION, PLEASE DO NOT HESITATE TO CALL.

07975/2357515.1

| CLIENT # | 7209 | ROUTE/ RETURN TO: | Tiffany Garcia/3rd Floor | ☒ CONFIRM FAX ☒ INCLUDE CONF. REPORT |
| OPERATOR: | | | CONFIRMED?  ☐ NO  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3000 AS SOON AS POSSIBLE.

Exhibit 28, P. 3/4

# EXHIBIT 29

HEARING                                                          01/03/08

**Page 1**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

CARTER BRYANT, an
individual,

        Plaintiff,

        vs.                    No. CV 04-9049 SGL
                               (RNBx)
MATTEL, INC., a Delaware
corporation,

        Defendants.

Consolidated with MATTEL, INC. v.
BRYANT and MGA ENTERTAINMENT, INC.
v. MATTEL, INC.

HEARING BEFORE THE HONORABLE EDWARD A. INFANTE
San Francisco, California
Thursday, January 3, 2008

Reported by:
DANA M. FREED
CSR No. 10602
JOB No. 79867

**Page 3**

1   APPEARANCES:
2
3   For the Plaintiff CARTER BRYANT, an individual:
4     KEKER & VAN NEST LLP
      BY: MATTHEW M. WERDEGAR
5         JOHN TRINIDAD
      Attorneys at Law
6     710 Sansome Street
      San Francisco, California 94111-1704
7     415.391.5400
8   For the Defendant MATTEL, INC., a Delaware
    corporation:
9
      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
10    BY: JON COREY
          TIMOTHY L. ALGER
11        B. DYLAN PROCTOR
      Attorneys at Law
12    865 Figueroa Street, 10th Floor
      Los Angeles, California 90017
13    213.443.3000
14  For the Defendants MGA Entertainment, Inc., MGA
    Entertainment (HK) Limited, and Isaac Larian:
15
      SKADDEN ARPS SLATE MEAGHER & FLOM LLP
16    BY: RAOUL D. KENNEDY
          AMY S. PARK
17    Attorneys at Law
      Four Embarcadero Center, 38th Floor
18    San Francisco, California 94111-5974
      415.984.6400
19
20  Also Present:

      MAUREEN McCUAIG
21
22
23
24
25.

**Page 2**

1       UNITED STATES DISTRICT COURT
        CENTRAL DISTRICT OF CALIFORNIA
2              EASTERN DIVISION
3   CARTER BRYANT, an
    individual,
4
        Plaintiff,
5
        vs.          No. CV 04-9049 SGL
6                    (RNBx)
    MATTEL, INC., a Delaware
7   corporation,
8       Defendants.
9
10
    Consolidated with MATTEL, INC. v.
11  BRYANT and MGA ENTERTAINMENT, INC.
    v. MATTEL, INC.
12
13
14      Hearing before the Honorable EDWARD A. INFANTE,
15  at JAMS, Two Embarcadero Center, Suite 1500, San Francisco,
16  California, beginning at 1:30 p.m. and ending at 4:05 p.m.
17  on Thursday, January 3, 2008, before DANA M. FREED,
18  Certified Shorthand Reporter No. 10602.
19
20
21
22
23
24
25

**Page 4**

1   San Francisco, California, Thursday, January 3, 2008
2        1:30 p.m. - 4:05 p.m.
3
4        JUDGE INFANTE:  This is a hearing on various
5   motions to compel discovery.  I'd like counsel to
6   enter their appearances, please, first from Mattel.
7        MR. COREY:  Jon Corey on behalf of Mattel.
8        MR. ALGER:  Timothy Alger on behalf of
9   Mattel.
10       MR. PROCTOR:  B. Dylan Proctor for Mattel.
11       MR. TRINIDAD:  John Trinidad for Carter Bryant.
12       MR. WERDEGAR:  Mathew Werdegar for Carter Bryant.
13       MS. PARK:  Amy Park for MGM Industries and
14   Isaac Larian.
15       MR. KENNEDY:  Raoul Kennedy also for the MGA
16   entities and Mr. Larian.
17       JUDGE INFANTE:  There are several motions
18   that have been filed since our last hearing date.
19   There was one motion that was not heard at our last
20   hearing date, which was MGA's motion with respect to
21   30(b)(6) bandying of witnesses.  I indicated I was not
22   prepared to hear that motion, because the day before
23   the hearing there was a letter indicating the parties
24   were still attempting to meet and confer regarding
25   that motion.  I would like to begin by finding out

1 (Pages 1 to 4)

Exhibit 29, P. 3/5

HEARING                                                          01/03/08

**Page 5**

1  whether that motion still needs resolution.
2      MR. KENNEDY: It does, Your Honor.
3      JUDGE INFANTE: I'm prepared to hear it and
4  decide it today.
5      With respect to other motions, I believe that
6  was the only motion from that hearing date that is
7  undecided. I do recall that one motion you were
8  directed to rebrief --
9      MR. COREY: That's correct, Your Honor --
10     JUDGE INFANTE: -- which I have received.
11     I don't believe there are any other open
12 motions from that hearing date. Am I correct on that?
13     MR. COREY: I believe that's correct,
14 Your Honor.
15     JUDGE INFANTE: So that motion, MGA, you have
16 a right to bring it, to argue it, if you wish, today
17 or you can submit it on the papers. I'm prepared to
18 rule on it.
19     With respect to all the other motions, there
20 have been many motions filed since, or that were in
21 the process of being filed at the time of our last
22 hearing. And I have a list of them. I'd like to give
23 you a hearing on all the motions on which the briefing
24 is completed. And I would give you the opportunity to
25 argue them in whatever order you wish to. MGA has

**Page 6**

1  a number of motions and so does Mattel.
2      I do have a list that Ms. Chan prepared. If
3  we wanted to go chronologically in that list, we could
4  do that. For example, on her list we have Motion No.
5  12, Mattel's Motion to Compel Production of Metadata.
6  We could begin with that one, if you would like.
7      MR. COREY: That's fine with Mattel,
8  Your Honor.
9      JUDGE INFANTE: You are free to argue these
10 motions or submit them, as you wish. It's your
11 opportunity to be heard.
12     MR. PROCTOR: Thank you, Your Honor. Dylan
13 Proctor for Mattel again.
14     This motion presents what we think are very
15 straightforward issues. Mattel has requested the
16 metadata for 163 e-mails, all of which are alleged
17 RICO predicate acts of wire fraud and are a part of
18 Mattel's pleading, these e-mails are attached to
19 Mattel's counterclaims in this case.
20     The metadata that Mattel is seeking, has been
21 seeking from MGA for a long time now, is information
22 or should have information that's not reflected on the
23 face of the documents. And that could in and of
24 itself prove an element to Mattel's claim's effect on
25 interstate commerce.

**Page 7**

1      And for that reason, after we provided this
2  explanation, MGA repeatedly promised to provide this
3  information, to provide the metadata. But it never
4  came. And instead, we kept getting strung along with
5  promises which were not satisfied. And so
6  three months after we requested a meet and confer and
7  requested metadata, and after MGA had effectively gone
8  full circle and was taking the position that they had
9  taken months earlier, which was they need to
10 investigate what's involved in gathering the metadata,
11 we filed a motion.
12     And then in its opposition for the first
13 time, MGA said, Mattel's not entitled to the
14 information. That was the first time I ever heard
15 anyone from MGA say that. And that assertion is
16 simply inconsistent with the conduct of the parties
17 and all the other facts surrounding the situation.
18 The parties have an agreement about metadata. MGA has
19 requested metadata from Mattel and Mattel has provided
20 it. And the case they cite, the Kentucky Speedway
21 case, which MGA heavily relies on, in fact says
22 metadata can be relevant and produceable when
23 specifically requested by Bates number, which is what
24 Mattel did. And that's MGA's authority saying that.
25 And so I think that information is clearly critical.

**Page 8**

1      There is no other way of adequately getting it and MGA
2  doesn't deny that it possesses it, so I believe MGA
3  should be ordered to produce all of the e-mails in
4  native format with full e-mail header information.
5      JUDGE INFANTE: There were about 163 e-mails
6  that you had specified; is that correct?
7      MR. PROCTOR: Correct.
8      JUDGE INFANTE: The relevance that you stated
9  in your papers is that the information pertaining to
10 where the e-mail was sent from, how it traveled, who
11 the recipients were, where they were located is
12 relevant to your interstate or foreign commerce burden
13 of proof under your RICO claim; is that correct?
14     MR. PROCTOR: Correct.
15     JUDGE INFANTE: Any other relevance?
16     MR. PROCTOR: No. The relevance of the
17 metadata, the asserted relevance is strictly
18 establishing the elements of effect on interstate
19 commerce.
20     JUDGE INFANTE: That's right as to these
21 particular e-mails.
22     MR. PROCTOR: Correct.
23     JUDGE INFANTE: So my question to you is
24 this, yes, you have that burden of proof which you
25 didn't have at the pleading stage, why do you need all

2  (Pages 5 to 8)

Exhibit 29, P. 316

1  163? Won't 30 or 40 or 50 do to prove interstate
2  commerce?
3      MR. PROCTOR:  Well, MGA has challenged, MGA
4  has challenged at the motion to dismiss phase the
5  culpability to prove a pattern of racketeering
6  activity.  We believe the law is clear that a pattern
7  exists if there are only two or more predicate acts.
8  But MGA challenged, as to a number of these e-mails
9  specifically, whether these e-mails could in fact
10 constitute predicate acts for other reasons.
11 For example, because some post-date the close of
12 Carter Bryant's employment.  And so we have -- we have
13 alleged about, you know, 200, roughly, predicate acts.
14 We're entitled, I believe, to try to obtain proof as
15 to all of these predicate acts.  MGA is undoubtedly on
16 summary judgment --
17     JUDGE INFANTE:  But on the question of
18 interstate commerce, doesn't seem to me you need to
19 prove each and every communication crossed commerce
20 lines.
21     MR. PROCTOR:  I would agree that we do not
22 bear the burden of proving all of them crossed
23 commerce lines, for the simple reason that I don't
24 think we have to prove 200 predicate acts.
25     JUDGE INFANTE:  That's right.

*Page 9*

1      MR. PROCTOR:  But we have alleged 200
2  predicate acts.  And I believe we're entitled to
3  discovery to attempt to prove that, because MGA is
4  undoubtedly going to attack all of those.
5      JUDGE INFANTE:  Burden is an issue here.  Are
6  you taking the position that you must have all?
7      MR. PROCTOR:  I'm taking the position that
8  I believe that we are entitled to all, since it is
9  critical information that goes directly to the --
10     JUDGE INFANTE:  You're never entitled to all
11 under the Federal Rules of Civil Procedure, because
12 that would read out of the rules, Rules 26(b)(2).
13     MR. PROCTOR:  I do understand that.  However,
14 this is not -- this is not, I would submit, a
15 situation where we are seeking all metadata for an
16 overbroad set of categories.  For example, each of the
17 cases cited by MGA involve a request for metadata for
18 all documents produced in the case.  Here MGA has
19 produced 3.4 million documents or approximately.
20 We're not seeking metadata for those documents, we're
21 seeking metadata for 163 alleged predicate acts.
22     JUDGE INFANTE:  Only for the purpose of
23 proving interstate commerce or foreign commerce.
24     MR. PROCTOR:  Correct.  However, I believe
25 MGA's position will be that that has to be proven for

*Page 10*

1  each and every predicate act.  That is the position
2  which they have taken previously.
3      JUDGE INFANTE:  That's not correct.
4      Okay.  Anything further?
5      MR. PROCTOR:  No, Your Honor.
6      JUDGE INFANTE:  Okay.  You may proceed.
7      MR. KENNEDY:  Thank you, Your Honor.  And let
8  me not try to reconstruct what's happened at all of
9  the meet and confers.  I don't think we need to get
10 into that.  I'd like to offer a very pragmatic
11 suggestion or proposal.
12     We asserted the particularized need because
13 of this demand for all 163.  The 163 fall into
14 three buckets, Your Honor.  One consists of about
15 20 documents that our vendor EED was able to retrieve
16 fairly readily.  And as we explained in the papers, we
17 offered those up before.
18     I would offer those up again now.  We've been
19 through them and there may be, and I'm sure there are,
20 people who are smarter about this than I am.  But of
21 those 20, there's only one that has anything that
22 would help show interstate commerce.  The metadata
23 there shows that it was once on a Japanese server.
24     On the other hand, the e-mail itself says,
25 I'm transmitting a document from a guy in Tokyo.  So

*Page 11*

1  it wasn't really too revolutionary.  But we would be
2  willing to offer those up.
3      In addition, we've gone -- there's a second
4  bucket, I would call them the Stroh's, like the beer,
5  for another vendor.  And we've paid $12,000 and
6  they've retrieved 60 other metadatas or metadatum,
7  whenever the plural is.  And we would also be willing
8  to offer those up, and we can argue about whether we
9  ought to get half our cost back for having done that
10 or not.
11     We have not been through those completely to
12 know how beneficial they are going to be.  But in any
13 event, there are approximately 80, about half of them
14 that are available could be turned over, as I
15 understand it, by Monday or Tuesday of next week.
16     As to the third bucket, at least at this
17 point, we have not been able to come up with any
18 readily available, quickly affordable, even in the
19 sense of $12,000 for 60 of them, method of doing it.
20 And I would propose that the Court defer any ruling on
21 the other 100 until Mattel has had a chance to go
22 through the 80 and come back and show just what kind
23 of a cost benefit analysis is coming out and how much
24 more they're going to need with regard to this issue.
25     JUDGE INFANTE:  Well, there's also a motion

*Page 12*

3  (Pages  9 to 12)

Exhibit _2l_, P. _57_

1  for costs of this motion, namely monetary sanctions,
2  in which they point out that MGA's prior counsel
3  agreed to produce this information on multiple
4  occasions and never produced it.
5      MR. KENNEDY: I'm not in a position to refute
6  their side of that story. As a mitigating factor,
7  at least since we've been in the case, we've said
8  we've got the 20 that we've retrieved. Why don't you
9  go take a look at those before you go file a motion to
10  compel?
11      And as so often happens in this case, they
12  decide to punt on second down and go ahead and file a
13  motion without even looking at the 20. But beyond
14  that, I'm prepared to submit, Your Honor.
15      JUDGE INFANTE: Thank you.
16      Mr. Proctor.
17      MR. PROCTOR: Thank you, Judge. As to that
18  last point, we couldn't look at the 20, because they
19  never came. To this day, they still haven't come.
20  All the e-mails, which MGA has said in fact are
21  readily available and they could just send over to us,
22  have never been delivered.
23      The only other point I would add is, under
24  Rule 26B2B, there are new provisions, limitations on
25  electronically stored information.
                                                Page 13

1      I have considered the motion. The
2  opposition, the reply, and your comments here this
3  morning. I've applied the -- the rules, specifically
4  Rule 26, as well as Rule 26B and the balancing
5  required under that rule, as well as Rule 34.
6      And after balancing all considerations,
7  I grant your motion in part. MGA shall produce 80 of
8  the specified e-mails that have been requested, that's
9  8-0, in their native electronic format sufficient to
10  show from where the e-mail was sent and to where the
11  e-mail was sent.
12      The order shall be complied with by
13  January 10th. The Court has discretion to shift some
14  of the costs to the discovering party. I've
15  considered that. Many decisions the courts shift cost
16  at least partially or in whole.
17      I have decided, in lieu of awarding monetary
18  sanctions in your favor, I am leaving the costs to the
19  producing party and not shifting any costs,
20  whatsoever.
21      The motion is denied as to the full 163
22  specified e-mails without prejudice. And those
23  80 e-mails are e-mails selected by the responding
24  party. You've identified 20 and 60, that totals 80.
25      Any questions regarding the ruling?
                                                Page 15

1      JUDGE INFANTE: That's really what I was
2  referring to. This multifactor test which the Court
3  should balance, and that's why I challenged your
4  absolute statement.
5      MR. PROCTOR: And I appreciate that, Judge.
6      The rule in my view makes clear that even if
7  MGA establishes undue burden -- and I'm not sure they
8  have, I don't believe they have -- but even if MGA
9  does establish undue burden, Mattel only need show
10  good cause, good cause for the production of
11  discovery. And in this case what I would suggest is
12  when it comes time for summary judgment or it comes
13  time for post-trial motions, or whatever the case may
14  be, MGA is clearly going to attack Mattel's burden of
15  proof in any way it can. And it has previously
16  attempted to assert that. I believe well more than
17  half of these e-mails are simply irrelevant, because
18  they post-date Carter Bryant's employment.
19      I don't know which are the 80 e-mails which
20  I'm now hearing we can have. I don't know what the
21  time frame is of these e-mails. But given these are
22  all claimed, they're all alleged predicate acts, I do
23  believe that we should be granted an order compelling
24  metadata as to all of them.
25      JUDGE INFANTE: Okay. Thank you very much.
                                                Page 14

1  All right. Mr. Proctor, prepare the order.
2      MR. KENNEDY: Your Honor, just one point.
3  The 20 and the 80 are approximations. I think one may
4  be 22, one may be 76.
5      JUDGE INFANTE: That's fine.
6      MR. KENNEDY: It is approximately. But we
7  will produce all them. And if there happen to be more
8  than 80, they will get more than 80. But it's in that
9  range.
10      JUDGE INFANTE: Very good.
11      As you can see, I'm not going to give you the
12  luxury of a written lengthy opinion on each discovery
13  dispute, because your discovery cutoff date is looming
14  and there are many, many motions to be resolved. So
15  I'm going to try to resolve them correctly and fairly
16  but without a lot of writing.
17      Prepare the order, Mr. Proctor.
18      MR. PROCTOR: I will.
19      JUDGE INFANTE: The next motion is Mattel's
20  motion to enforce the Court's August 20th, 2007 Order
21  Requiring Carter Bryant to Answer Requests For
22  Admissions. This motion was filed November 27th. The
23  opposition was received December 4th. The reply was
24  received December 7th.
25      You may argue your motion.
                                                Page 16

4 (Pages 13 to 16)

Exhibit 29, P. 318

HEARING                                                                           01/03/08

1    MR. PROCTOR:  Thank you, Judge.
2        There -- from my perspective, there is an
3    extraordinary degree of gamesmanship involved in
4    Mr. Bryant's responses to these requests for
5    admission.  When -- after we propounded these requests
6    for admission in March of 2007, when Mr. Bryant first
7    responded, he objected that each of the derivative
8    works requests, quote, "seeks information that is not
9    in the possession, custody, or control of defendant."
10       And then he responded, quote, "That the
11   information known or readily obtainable by defendant
12   is insufficient to enable defendant to admit or deny
13   the request and on that basis defendant denies the
14   same."
15       You saw the meet and confer.  Mr. Bryant
16   agreed to supplement his responses.  When his
17   supplemental responses came two months later, as to
18   these requests, the derivative works request, he
19   effectively stiffed us and gave us no response at all.
20       And importantly, he also withdrew his
21   objection that the information was beyond his
22   possession, custody or control.  That's not listed in
23   the supplemental responses.  And since we got no
24   response, we filed a motion, as Your Honor is aware.
25   And in that motion, we sought relief that his
                                                    Page 17

1    objections -- we argue that his objections lack merit,
2    and he should be compelled to provide answers,
3    complete answers.  And we also devoted an entire
4    section of the brief to the point that he should not
5    be allowed to revert back to his prior initial
6    response which was itself defective.
7        And in his opposition to that motion,
8    Mr. Bryant did not even attempt to defend his prior
9    position in any way.  As the Court is aware, the Court
10   ordered Mr. Bryant to admit or deny the request.  And
11   then after that, Mr. Bryant purported to comply with
12   that order by reverting as predicted to his original
13   response from March, which he had withdrawn after the
14   meet and confer along with the objection that the
15   information was beyond his possession, custody or
16   control.
17       Mr. Bryant waived this objection both when he
18   withdrew it in his supplemental responses and when he
19   failed to oppose Mattel's motion.  And in any case,
20   I think the objection clearly lacks merit.  Because
21   it's just the same point that Mr. Bryant argued the
22   last time, repackaged with a different label.
23       The point is -- Mr. Bryant's point is, as I
24   understand it, that he doesn't personally know the
25   answers.  He doesn't have a truthful response.  He
                                                    Page 18

1    would need to consult with counsel.  Right now he even
2    says he might need to consult with MGA, because MGA
3    personnel were involved in the dolls that are the
4    subject of these requests along with the drawings that
5    Mr. Bryant produced.
6        JUDGE INFANTE:  As I understand it, MGA has
7    denied the request for admissions, similar ones.
8        MR. PROCTOR:  Correct.  After Your Honor
9    compelled responses, MGA answered them.
10       But whether he has to consult with his
11   counsel or not, the information is clearly within
12   Mr. Bryant's possession, custody or control.  His
13   counsel is obviously an agent which is part of his
14   possession, custody, or control.
15       And this is not, this is not respectfully
16   about whether Mr. Bryant can truthfully answer, this
17   is about Mr. Bryant not wanting to take a position on
18   the issue of whether the Bratz dolls are derivative of
19   his Bratz drawings or not.  MGA didn't have a problem
20   taking a position on that.  So if MGA answered it,
21   Mr. Bryant can answer it as well.  He simply does not
22   want to.
23       The second set of requests, I think, is more
24   straightforward or even more straightforward.
25   The Court ordered Mr. Bryant to admit or deny that he
                                                    Page 19

1    does not contest the validity and enforceability or
2    enforceability of his MGA contract.  And rather than
3    comply, he responded that he has not yet done so but
4    preserves the right to do so.  I think that's facially
5    an improper response.
6        And I do think there's a question, what to me
7    would be a serious question, about what relief is
8    appropriate.  The last time we were before the Court
9    on these RFAs, we asked the Court to order them deemed
10   admitted.  The Court declined and opted to give
11   Mr. Bryant an opportunity to provide the responses
12   that he wants to provide.
13       And Mr. Bryant has willfully declined that
14   opportunity.  He has willfully, you know, seen the
15   Court's order saying admit or deny and refused to do
16   so.  I think at this stage an order deeming the
17   responses admitted or deeming the requests admitted
18   would be appropriate.
19       JUDGE INFANTE:  Would it be appropriate to
20   deem them denied?
21       MR. PROCTOR:  I can't say that I've ever seen
22   a court do that.  I believe the relief specified in
23   Rule 36 is to deem them admitted.
24       JUDGE INFANTE:  Thank you.
25       MR. WERDEGAR:  Your Honor, Matt Werdegar on
                                                    Page 20

                                          5  (Pages 17 to 20)

Exhibit _29_, P. _319_

| | |
|---|---|
| 1 behalf of Carter Bryant. | 1 you meant we had to either admit or deny, and that the |
| 2     What's the heart of this motion is a dispute | 2 other option available under Rule 36A was not |
| 3 over what Your Honor ordered back on August 20th, | 3 available to us, we'll obviously promptly, and within |
| 4 2007. And Your Honor didn't simply order Carter Bryant | 4 whichever time frame you specify, amend our responses |
| 5 to admit or deny the request. Your Honor's order | 5 to comply with your order. But we believe we've |
| 6 says, quote, "admit or deny the request in accordance | 6 complied with the order with respect to those RFA's, |
| 7 with Rule 36A," end quote. And we believe that | 7 and we believe our responses are truthful and |
| 8 Bryant, Carter Bryant has done so. | 8 appropriate. |
| 9     Rule 36A expressly permits three kinds of | 9     Now, as was mentioned, MGA has denied similar |
| 10 substantive responses to an RFA. You can admit them, | 10 or actually identical RFA's directed to it. So Mattel |
| 11 you can deny them, or after a reasonable inquiry, you | 11 is fully aware that these, this issue is going to be |
| 12 can say that you've conducted a reasonable inquiry and | 12 at the trial. We're not prejudiced by this in any |
| 13 you lack sufficient information to admit or deny the | 13 way. It's not as if we're going to surprise them down |
| 14 responses. ̄ | 14 the road. They know that they need to develop their |
| 15     And it's that third choice with respect to | 15 case on these points. And so there has been no |
| 16 the derivative works RFA's that were being discussed | 16 prejudice with respect to those RFAs. |
| 17 that Mr. Bryant elected to do. And he did so because | 17     And obviously, when we -- you know, if and |
| 18 it's a truthful answer. It's an answer that's | 18 when we obtain the expert testimony and opinion and |
| 19 expressly permitted under Rule 36A, in response to an | 19 analysis on these issues, we can supplement once we're |
| 20 RFA, and it's truthful also. | 20 in a position to answer them. But we're not in that |
| 21     Whether these works are -- whether the -- | 21 position at this time. |
| 22 each of these RFA's ask Mr. Bryant to look at one | 22     JUDGE INFANTE: When would you be in that |
| 23 copyrighted work, and then to say whether or not that | 23 position? |
| 24 copyrighted work is a derivative work with respect to | 24     MR. WERDEGAR: I think at the close, you |
| 25 another one that's then cited. | 25 know, at the time when expert reports are due, |
| Page 21 | Page 23 |

| | |
|---|---|
| 1     Now, these are not -- they're very disparate | 1 I believe that would be the time when we would be in |
| 2 items that are being asked about. One is a | 2 a position to answer these. |
| 3 two-dimensional. In several examples, one is a | 3     With respect to the two interrogatories that |
| 4 two-dimensional sketch. The other is a photograph of | 4 relate to Mr. Bryant's contract with MGA, and again |
| 5 a three-dimensional doll with accessories and | 5 this is not the contract with Mattel that's at issue, |
| 6 packaging. | 6 it's with MGA. You know, again, I believe we've |
| 7     Mr. Bryant was not involved in creating many | 7 answered the interrogatory. We have admitted that we |
| 8 of these works. He wasn't involved in the copyright | 8 do not contest, have not in this case contested the |
| 9 registration process. And as numerous courts have | 9 validity or enforcement of that contract. |
| 10 recognized, whether or not a work is derivative of | 10     Now, this is not a contract that I'm aware |
| 11 another work is a very complicated question. And it's | 11 that the validity or enforcement of it is at issue by |
| 12 a question that is routinely the subject of expert | 12 any party. So obviously, if Mattel or MGA were |
| 13 testimony in a case. And I fully suspect that Mattel | 13 suddenly to, you know, put forth, put into issue in |
| 14 is going to be offering expert opinion testimony on | 14 this case that the contract is enforceable, or |
| 15 these very issues when we get to trial. | 15 unenforceable, obviously as with contention |
| 16     Mr. Bryant has not developed his expert | 16 interrogatories which Your Honor indicated this type |
| 17 opinion or analysis on that issue at this point, and | 17 of RFA tracks, we would then, you know, obviously have |
| 18 he is not obliged to disclose that opinion or analysis | 18 to adjust our legal position to reflect changes to |
| 19 until February 11th. In the meantime, he just simply | 19 other parties. |
| 20 doesn't have the information to truthfully admit or | 20     And that's the only thing that our |
| 21 deny these requests. That's what he -- so he | 21 qualification is meant to indicate. It's not that |
| 22 therefore said exactly that which is an appropriate | 22 we're planning on sandbagging or changing positions. |
| 23 response under Rule 36A. | 23 But if Mattel suddenly introduces this issue into |
| 24     Now, if Your Honor today says that we've | 24 trial in the case, we obviously need to be in a |
| 25 misinterpreted your August 20th rule. That in fact | 25 position to change our contentions with respect to |
| Page 22 | Page 24 |

**SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES**
877.955.3855

Exhibit 29, P. 326

1  this document. But right now, we are not contesting
2  its validity, which is what they've asked us to admit
3  and we've said so.
4      So I don't know what further they expect us
5  to do. I don't think it's appropriate for them to be
6  able to close the door on Mr. Bryant's ability to
7  change his contentions in response to changes in other
8  parties in the litigation's legal positions and
9  conditions. And that's our concern with what they're
10 trying to do with these RFAs, Your Honor.
11     JUDGE INFANTE: Well, the fact that MGA gave
12 clear answers, and indeed denied essentially the same
13 requests for admissions, makes it clear that Mattel
14 knows what its burdens are at trial, what it must
15 prove on these issues.
16     I do believe Bryant must answer these
17 questions admit or deny. It's less problematic for
18 Mattel, in view of MGA's answers, than it otherwise
19 would be if Carter Bryant were the only party.
20     I would grant the motion to admit or deny,
21 but require your compliance with it within three days
22 after the expert disclosures are made. I don't know
23 what that date is. Can you tell me what it is?
24     MR. WERDEGAR: February 11, Your Honor.
25     MR. COREY: February.

Page 25

1      JUDGE INFANTE: So it would be February 14.
2  So the motion is granted. You must comply no later
3  than February 14th.
4      With respect to the two, the two requests for
5  admissions regarding this contract, I forget the
6  numbers of those, I find your answers are adequate.
7      MR. WERDEGAR: Those are numbers 30
8  something. I don't want to misspeak.
9      JUDGE INFANTE: 33 and 34, I think.
10     Yeah, I wouldn't order you to do anything
11 more with respect to Request No. 33 or 34. But
12 I am requiring you to respond clearly to 100, 106,
13 112, 118, 126, 127, 129, 131, 133, 135, 137, 139, 141,
14 and 143. February 14th.
15     Mr. Proctor, you may prepare the order. I'm
16 denying any motions for monetary sanctions.
17     MR. WERDEGAR: Thank you, Judge.
18     JUDGE INFANTE: I'd like to skip to the next
19 motion which is -- I'm going to skip over Motion No.
20 15 and go to number 18. This is the Joint Motion of
21 MGA and Carter Bryant to Overrule Mattel's Relevance
22 Objection and Compel Discovery Regarding Statute of
23 Limitations and Laches Defenses.
24     You could proceed to that.
25     MR. KENNEDY: Excuse me, Your Honor. I've

Page 26

1      got to do a quick shift here.
2      JUDGE INFANTE: Okay. Take your time.
3      MR. KENNEDY: I'll try to be brief. I think
4  the key here is that in the order denying terminating
5  sanctions, which is Exhibit 9 to Mr. Corey's
6  declaration, page 191. Judge Larson applying the test
7  that Judge Patel had formulated in Napster said that,
8  for purposes of determining whether there was a duty
9  to preserve evidence, claims have to, or litigation
10 has to become probable.
11     I think it's interesting that at page 191 of
12 the exhibit Judge Larson actually said, although prior
13 to the November 24, 2003 date, an internal
14 investigation may have raised a suspicion, as I read
15 it. He had actually underlined the word "suspicion"
16 on Mattel's part that litigation might arise. There
17 was no knowledge that they had probable litigation,
18 and that Mattel should have known it had a viable
19 claim.
20     And that's obviously the test under Napster
21 for determining whether there's a duty to preserve
22 evidence. In contrast, going to the leading
23 California Supreme Court case on the subject Jolly
24 versus Eli Lilly in 44 Cal 3rd, at page 1111,
25 the Court said, and I again quote, "Once the plaintiff

Page 27

1      has a suspicion of wrongdoing and therefore an
2  incentive to sue, she must decide whether to file suit
3  or sit on her rights. So long as a suspicion exists,
4  it is clear that the plaintiff must go find the facts.
5  She cannot wait for the facts to find her." End
6  quote.
7      So we simply have two different tests being
8  applied in two different situations. And motion
9  number 5, more specifically topics 15 through 21 and
10 26, go to the Jolly issue when Mattel first had
11 suspicions that would have prompted an investigation
12 or further inquiry regarding any aspect of
13 Mr. Bryant's conduct.
14     And the fact that those initial suspicions
15 might have been with regard to, whatever it was,
16 Toons. And they didn't initially sue on Toons. As we
17 point out in their most recent discovery request, they
18 now say, "Hmm, the fact that he was involved in that
19 now corroborates our feelings about when Bratz was
20 designed."
21     And we're talking here not about
22 admissibility, we're talking purely about
23 discoverability of something that's really at the
24 heart of the case.
25     Very briefly. The burden objection is the

Page 28

7  (Pages 25 to 28)

Exhibit _29_, P. _321_

**HEARING**                                                          01/03/08

1   idea that, well, we'd have to serve somebody up for
2   every misdeed that Mr. Bryant ever did including
3   stealing a pen.
4           First, we're obviously willing to accept
5   a commonsensical interpretation. Plus, they didn't
6   put in a declaration saying, you know, Bryant's really
7   a bad guy, he stole pens, he did this, he did that.
8   Boy, it would really be trouble to go into all of his
9   misdeeds in addition to this one.
10          Finally, this motion involves Request 26 to
11  which we're told that there is no none-privileged
12  witness who could be served up. We have a separate
13  motion which has been filed. There is no hearing date
14  on it yet, raising the whole question of whether the
15  assertion of the tolling agreement carries with it
16  a partial waiver of the privilege.
17          So we're not asking for a privilege ruling
18  today. We think it would be premature to do that. We
19  would submit only that if the -- depending on how the
20  privilege motion comes out, if it's found that this --
21  strike that.
22          Assuming the Court finds as we're arguing,
23  that this is at least relevant, then if there are
24  privileged materials, there ought to be a privileged
25  list for them and we can argue later whether they

Page 29

1   would be willing to modify the request accordingly.
2           JUDGE INFANTE: Okay. The second question
3   I had for you would be that the topics that refer to
4   any alleged wrongful conduct of Bryant, it would seem
5   to me should be read to mean any alleged wrongful
6   conduct by Bryant that's been alleged in the claims
7   asserted by Mattel.
8           MR. KENNEDY: That was part of our problem in
9   the meet and confer, and I believe Mattel has even
10  proposed that limitation. Our concern is that -- and
11  we can get back to the Toons issue again. I think
12  it's admitted, that there was an investigation of
13  Mr. Bryant back in 2001.
14          Mattel says, but that investigation, even
15  though it involved copying, didn't involve the exact
16  kind of copying that we're talking about in this case.
17  And that, I submit, is cutting it too finely.
18          That once there's been an investigation or
19  suspicions concerning Bryant's misusing or
20  misappropriating any of the intellectual property,
21  that should all be fair game. Obviously, stealing
22  pens is an entirely different situation.
23          But clearly, Mattel has figured out an answer
24  where they will be able to avoid revealing their
25  internal investigations, assuming Your Honor imposed

Page 31

1   remain privileged or not. But we would seek a ruling
2   today as to whether Topic 26, like 15 and 21, is
3   at least relevant for purposes of discovery under the
4   Jolly standard.
5           And unless the Court has questions, I think
6   it's in the papers.
7           JUDGE INFANTE: I have a couple of questions.
8           MR. KENNEDY: Sure.
9           JUDGE INFANTE: Just by way of example,
10  Topic 19.
11          MR. KENNEDY: Yes, Your Honor.
12          JUDGE INFANTE: Reads, "All acts, omissions,
13  circumstances and evidence, showing or tending to show
14  all actions taken by Mattel, including but not limited
15  to all circumstances surrounding any investigations
16  you have undertaken relating to Bratz after Mattel
17  learned that Bryant was involved in the conception,
18  creation, design, and/or reduction to practice of
19  Bratz."
20          The "after" defines a starting point, but
21  there's nothing here that defines a date limitation on
22  the other end. For example, it seems to me you only
23  need the information up to and including November
24  24th, 2003, and you don't need it beyond.
25          MR. KENNEDY: I agree, Your Honor. And we

Page 30

1   that kind of a limitation.
2           JUDGE INFANTE: I see. I just wanted to hear
3   your response to that specific point.
4           MR. KENNEDY: As we pointed out in the reply
5   brief, now they're even coming full circle in their
6   most recent amended discovery responses, suggesting
7   that that initial investigation actually is now
8   material.
9           JUDGE INFANTE: Is there a date limitation on
10  Topic 26 that should be imposed?
11          MR. KENNEDY: It's certainly agreed to the
12  November date that Your Honor proposed earlier and
13  that we agreed to for the other topics.
14          JUDGE INFANTE: Right. Topic 18 doesn't
15  require a date limitation, because it says how Mattel
16  first became aware. Topics 17 and 18 are directed to
17  first became aware.
18          MR. KENNEDY: Correct, Your Honor. We'd also
19  agree to meet and confer. And I think we reiterated
20  in the motion, we're not seeking anything that they
21  learned as a result of discovery in this case. There
22  are no protective order issues.
23          JUDGE INFANTE: I just had those questions.
24  That's all. Your arguments are clear from your papers.
25          Mattel may oppose.

Page 32

8  (Pages 29 to 32)

Exhibit 29, P. 522

HEARING                                                                01/03/08

MR. COREY: Thank you, Your Honor. Jon Corey.

I'm not sure exactly where to start. But let me start with the Jolly and the Solomon cases that, that Mr. Kennedy brought up. And I want to talk about the quantum required before -- before Mattel is on notice.

And this goes to relevancy, because a number of these requests, at least the way they're framed, seek information that is uniquely unhelpful or not -- I guess not unhelpful, it just is not relevant one way or the other.

And let's start by looking at 17, 18, and 19. And what they say is they seek information about how and when Mattel first became aware that Bryant was involved in the conception, creation, design and/or reduction of practice of Bratz. Okay.

Now, even under the Jolly and the Solomon cases, before the statute of limitations can start to run, there has to be notice of a wrong. The company has to know that it's been wronged.

And in the Jolly case, the woman had had a hysterectomy to remove the malignant tumor. In the Solomon case, there was some impaired lung function and some other nervous anxiety and sleeplessness.

And I would submit to the Court that simply

Page 33

knowing that Bryant was involved in the conception, creation, design and reduction of practice of Bratz is not a noticeable wrong. And therefore out of bounds for purposes of discovery.

And when I was preparing for the motion, I found that MGA had made the same argument to Judge Larson in connection with the opposition of the motion for leave to amend. And the argument was that simply by having someone either go to a competitor or work for a competitor is sufficient to trigger the statute of limitations. And they had made that argument with respect to the claims being asserted against Mr. Brower.

And this is at page 14, footnote 3 of the Order For Motion For Leave to Amend which is attached as Exhibit 4 to the Mumford declaration. And I'll read, if I may: MGA claims that Mattel was put on notice of the claim on September 17th, 2004 when Brower informed Mattel that he was leaving to go to work for MGA. The problem with this argument is that nothing from that simple event, Brower's declaration of his intent to leave, in any way would apprise Mattel that MGA encouraged Brower to engage in nefarious conduct (the stealing of proprietary information) causing Bryant to breach his contract

Page 34

with Mattel. That he would not do anything to help the competitor while he was working for them. MGA's contention that Mattel must have known from those misdeeds in mid-September is nothing more than speculation.

However, I would submit that the information being sought, with respect to when Mattel first learned that Bryant had gone to MGA or was involved in the creation of Bratz, that falls in the same category. It's simply irrelevant because it's not sufficient from any perspective to put Mattel on notice of a wrong.

And I think the appropriate standards comes from the Westinghouse case. And Mr. Kennedy is absolutely right. There was an investigation to determine whether Mr. Bryant had, after he had left Mattel, gone to MGA and copied the Toon Teens drawings. That's a very discreet claim for copyright infringement.

And that is not the claim that Mattel is suing on here. The claim that Mattel is suing on here is that he claimed that while Bryant was at Mattel, he created Bratz in violation of his agreements and in violation of his legal obligations, and transferred the Bratz/Mattel property to MGA. And it wasn't until

Page 35

Mattel first learned of the facts that he had done that, that the notice period is triggered.

And that's the Westinghouse case that we've cited, which for these kind of intellectual property matters requires that for laches to accrue, there has to be notice of -- or for laches claim to be viable, there has to be notice of specific facts relating to this claim.

With respect to number 26, which relates to the waiver issue, I'm more than happy to put that over and have that resolved in connection with the waiver motion that MGA has filed. I think that makes sense.

Let me talk a little bit about Topics 15, 16, and 20. And Mr. Kennedy is correct that we did run into an issue here defining what the alleged or narrowing what the alleged wrongful conduct of Bryant would be. And I believe I've articulated it here. He was acting improperly while he was a Mattel employee.

So the quantum is what did he do? When did Mattel find out that he was acting improperly when he was a Mattel employee? And Judge Larson identified that date.

Now, what I'm hearing Mr. Kennedy say is that he is going back, but we want to know when you first had a suspicion that Bryant had done something wrong.

Page 36

9 (Pages 33 to 36)

Exhibit _29_, P. _323_

1 But interestingly, none of the topics that are at
2 issue here talk about suspicion, they talk about
3 actual knowledge. And that knowledge is November
4 24th, 2003. So if you would like us to produce a
5 witness to testify about that, we're more than happy
6 to do that.
7       I do appreciate that the Court is considering
8 putting a date limitation on some of these. But with
9 respect to Topic 19, I don't believe that the date
10 limitation is sufficient to put that in, to make that
11 sufficiently reasonably particularized that Mattel
12 really can prepare a witness to address that. Because
13 that really is anything Mattel did with respect to
14 Bratz in any regard, prior to November 23rd, 2003.
15      And I mean, that could be things from
16 creating -- Bratz had been on the market for two years
17 by November 24th, 2003. And so that really could be
18 anything. It could be advertising campaigns, anything
19 like that. And I don't think that at least with
20 respect to these particular types of topics, that's
21 the type of information that's being sought.
22      And then the last point that I would make is
23 that I do believe that Topic No. 21 has been
24 withdrawn. That was part of the meet and confer in
25 2005, which was confirmed in Judge Block's order,

Page 37

1 these topics is overruled. All their objections are
2 overruled. Your motion is granted as to Topics 15,
3 16, 17, 18, 19 and 21. The motion is not granted as
4 to 26 at this time. It's simply deferred.
5       I am imposing a date limitation on topics,
6 I guess it would be 18 -- I'm sorry, 19, 19 and 21.
7 And the date limitation is prior to November 24, 2003.
8 No other limitations.
9       You may prepare the order. The order shall
10 be complied with prior to January 28, 2008.
11      MR. KENNEDY: Yes, Your Honor.
12      MR. COREY: Thank you, Your Honor.
13      JUDGE INFANTE: To the extent there are any
14 motions for sanctions brought by either party, all
15 motions for sanctions are denied.
16      The next motion I'd like to consider is the
17 Joint Motion of MGA and Carter Bryant to Compel the
18 Deposition of Robert Eckert who is the CEO and
19 chairman of Mattel. The motion was filed
20 December 11th, the opposition was received
21 December 18th. Their reply was received
22 December 21st. I've read all the papers.
23      MR. KENNEDY: Unless Your Honor has
24 questions, I don't have anything to add to the showing
25 that was made there.

Page 39

1 whose -- the date has escaped me.
2       JUDGE INFANTE: Do you want to respond?
3       MR. KENNEDY: Briefly. First, Topic 21 was
4 tabled, not withdrawn. And I am realizing some
5 political forums, those may be one and the same, but
6 I don't think that was the intent here. Beyond that,
7 and I don't mean to sound flippant, but I think
8 Mr. Corey has given a very good argument in support of
9 the summary judgment motion --
10      JUDGE INFANTE: Exactly.
11      MR. KENNEDY: -- that at some point Mattel
12 might well bring on these claims, but we're not at the
13 summary judgment stage, this is about discovery.
14 Unless Your Honor has questions, I'm prepared to
15 submit.
16      JUDGE INFANTE: You're right. It's a
17 discovery motion, not a motion for summary judgment.
18 The question is whether or not the topics are
19 relevant, whether or not they give reasonable and
20 particular notice to the corporate deponents as to the
21 topics upon which witnesses should be adequately
22 prepared. Whether or not they're reasonable or
23 present undue burden, et cetera, et cetera. The
24 standard here is Rule 26.
25      Mattel's objections to producing a witness on

Page 38

1       JUDGE INFANTE: Okay. It's submitted.
2 Mattel may make any remarks it wishes.
3       MR. ALGER: Your Honor, Tim Alger for Mattel.
4       The question here is what's a reasonable time
5 for MGA and Mr. Bryant to obtain testimony from
6 Mr. Eckert.
7       JUDGE INFANTE: Precisely.
8       MR. ALGER: And although MGA and Bryant's
9 papers talk about a deprivation of the deposition, so
10 forth, that's not the case at all. It's just a matter
11 of, you know, what's a reasonable amount of time. We
12 clearly have an apex rule situation here.
13      And the only unique noncumulative testimony
14 that they -- that MGA and Bryant identified that
15 Mr. Eckert can provide deals with an anonymous letter
16 investigation, receipt of anonymous letter and
17 follow-up investigation in August of '02. And we
18 think that one hour is sufficient for that.
19      There is some generalized claims that
20 MGA/Bryant raised about 120 documents out of 200,
21 almost 300,000 documents. Mr. Eckert's mentioned in
22 120 of them, half of them are press clippings.
23 Mr. Eckert clearly is quoted in the press, and there's
24 press releases about generalized statements about
25 Mattel's performance in the marketplace. Those

Page 40

10 (Pages 37 to 40)

Exhibit #25, P. 324

certainly don't justify an all-day deposition as MGA
has -- has demanded here.
    So we look at, you know, what have they
identified that is unique, that requires his time as
chairman and CEO of a company with 30,000 employees in
43 countries. And it's Mattel's view that an hour is
sufficient.
    JUDGE INFANTE: I appreciate your position.
Anything further?
    MR. KENNEDY: We're prepared to submit, Your Honor.
    JUDGE INFANTE: All right. I've considered
all of your arguments and all of the points you've
made. And on balance, I find the deposition is
appropriate. I would issue an order compelling Mattel
to produce Robert Eckert for deposition.
    I limit the deposition to three and a half
hours, in view of Mr. Eckert's duties as CEO and
Chairman of the Board of Mattel. And with due respect
to his position and his responsibilities, I've weighed
what questions might be asked -- asked of him. I want
to make it clear that I'm not limiting the deposition
by any subject matter.
    The deposition shall -- shall be on anything
that is relevant to the subject matters of the
litigation. But the limit is three and a half hours.

Page 41

Obviously, this is without prejudice to come back and
show good cause for more time.
    You may prepare the order, Mr. Kennedy.
    MR. KENNEDY: Yes, Your Honor.
    JUDGE INFANTE: And the order shall be
complied with on or before January 28th.
    MR. ALGER: Thank you, Your Honor.
    JUDGE INFANTE: Okay. The next motion I'd
like to consider is Mattel's Motion to Compel
Production of an Improperly Withheld MGA Document
Showing MGA and/or Bryant's Presentations to the
Patent Office in Connection with Bratz. And also to
compel 30(b)(6) testimony.
    By the way, could I call a time out for a
moment? There's one thing I forgot to say regarding
the prior motion.
    Going back to Motion No. 18. I want to make
it clear that I'm not granting part of that motion.
I want to make it clear that I granted the motion to
produce a deponent competent to testify to Topics 15
through 21.
    But I want to make it also clear that I'm
denying the part of the motion that compels Mattel to
supplement all of its prior discovery responses and
document productions. And I didn't speak to that.

Page 42

I deny that motion.
    MR. KENNEDY: We'll withdraw that part.
    JUDGE INFANTE: That's withdrawn?
    MR. KENNEDY: Yeah, it's withdrawn, to make
it easier.
    JUDGE INFANTE: Okay. Thank you so much.
Then don't have to put that in the order.
    MR. COREY: But I appreciate you remembering.
I did not.
    MR. KENNEDY: And I forgot to mention that as
well.
    JUDGE INFANTE: Okay. Anyway, back to this
motion. This is the motion with respect to
submissions to the patent office. And this involves
two Bates, Bates-identified documents Bates MGA
0825680 to 0825682. These are documents that were
produced in discovery, but pursuant to the protective
order were recalled by MGA as being privileged and
inadvertently produced. Mattel asserts that it
destroyed the documents it received in accordance with
the protective order and the request made by MGA.
    So the issue here is whether or not the fax
cover sheet is privileged or protected by work-product
immunity and whether the drawings that were attached
to the fax are privileged and/or protected by

Page 43

work-product immunity.
    My impression is that the fax is no longer an
issue and the only document that needs resolution are
the documents containing the drawings. And
specifically, we are speaking about documents that
were sent to patent attorney Allen Rose from a vendor
by the name of Mr. Nequist, N-e-q-u-i-s-t, I believe.
    So I have the motion in mind. I read the
papers, and I'll be glad to hear your motion.
    MR. PROCTOR: Thank you, Judge.
    For starters, you are correct that the issue
as to the fax cover page has been resolved. So the
only issue is the drawings.
    The attorney/client privilege, the
attorney/client privilege protects confidential
communications made for the purpose of seeking legal
advice. And quite simply, these drawings are not
that. They do not contain or reflect any confidential
communications. They do not contain or reflect any
legal advice. They don't even consist of
communications. They're drawings and they're drawings
of a doll that was publicly available at the time.
    We have not found any courts, a single court
that has held such technical drawings that don't
contain or reveal any confidential communications in

Page 44

11 (Pages 41 to 44)

1  this fashion that has held them to be privileged.  And
2  I'm not aware of any that MGA has cited withstanding
3  that proposition.
4        The only two courts we've discovered that
5  address this point hold the opposite.  One is the
6  McCook Metals Court, which is, as the Court may recall
7  from the last time I was here talking about privilege
8  issues, MGA has relied on and that's a case that has
9  adopted MGA's cited authorities, the Knogo case and
10  other authorities in which MGA relies.  That case very
11  clearly says the documents at issue here are not
12  privileged.  The cite, for the Court's convenience is
13  192 FRD 242, holds:  Technical drawings and sketches
14  contain no request for legal advice nor is any given
15  unless fall outside the ambient of the privilege.  And
16  that remains true even when they are attachments to
17  letters sent to patent attorneys.  Specific holding
18  which is exactly on point.  Amsted Industries also has
19  the same holding.
20        JUDGE INFANTE:  In my view, there's a split
21  of authority on that question.
22        MR. PROCTOR:  Okay.  So the first point is
23  the drawings do not reflect or reveal, and I would
24  submit cannot reflect or reveal legal advice.  The
25  second point is related and that is even if they

Page 45

1  could, there is no evidence of it.  Mr. Nequist in his
2  declaration does not say that he prepared or submitted
3  these drawings for the purpose of providing or seeking
4  legal advice in any fashion.  Mr. Khare comes closer
5  to saying, but he doesn't really say it, and I think
6  his declaration quite clearly lacks foundation.  He
7  has not established any personal knowledge for
8  anything in his declaration.
9        And the documents themselves do not show it.
10  To my knowledge, they have not been submitted to
11  the Court in camera.  I'm not aware of it if they
12  have, at least.  But the documents themselves clearly
13  do not -- there's no request for legal advice implicit
14  in these drawings.  They're simply drawings of a doll.
15  And MGA has never disputed our characterization of the
16  drawings.  Of course, we don't have the drawings right
17  now, him or I.  But we have haven't seen them since
18  they were inadvertently introduced.
19        Those are the first two points.  One, it's a
20  drawing, it's not a communication, it didn't reflect
21  legal advice.  Two, they haven't established that it
22  is a communication made for the purpose of seeking
23  legal advice with any evidence, with any admissible
24  evidence.
25        And the third point is, is that Mr. Nequist

Page 46

1  certainly does declare that he had an actual
2  expectation these drawings would remain confidential.
3  He says that quite clearly in his declaration.  He
4  expected them not to be passed on to the PTO.  What
5  I would submit to the Court is that there is no
6  reasonable expectation that these drawings would
7  remain confidential.  And there's really two reasons
8  for that, in my view.
9        The first is, Mr. Nequist had to know, he
10  must have known, that they could have been passed
11  on to the PTO.  He must have known that.  His own
12  declaration tends to show that.  In the first
13  paragraph of Mr. Nequist's declaration, he states,
14  "I have been a patent and trademark illustrator for
15  the last 18 years.  In that time, I have worked on
16  hundreds of thousands," I don't know if that's a typo
17  or if he meant to say hundreds or thousands, but he
18  says "I've worked on hundreds of thousands of
19  illustrations for patent and trademark applications to
20  be submitted to the United States Patent and Trademark
21  Office."  That's what he does for a living.  That's
22  why he works on these things.  They are drawings to be
23  submitted.  And so he must have known at the least
24  that they might be submitted to the PTO.
25        And in the Court's order of -- under the

Page 47

1  Court's order of two weeks ago, the December 17th
2  order, that's sufficient.  This is -- I'm quoting a
3  that order on page 11.  This is Your Honor quoting a
4  Seventh Circuit case.  "If the client transmitted the
5  information so that it might be used on the tax
6  return, such a transmission destroys any expectation
7  of confidentiality."  If it might be disclosed.  And
8  Mr. Nequist must have known that it might be disclosed
9  to the PTO.
10        The second reason why I don't think there can
11  be a reasonable expectation of confidentiality here is
12  it's really unique to this fact pattern and that is
13  this, it's a function of three things.
14        First, this is a drawing of a publicly
15  available doll.  Second, Mr. Nequist and MGA had a
16  duty of candor which required them to disclose, and
17  Mr. Nequist specifically to disclose all material
18  information.  Under the On-Sale Bar Rule, the fact
19  that this is a drawing of a publicly available doll is
20  material information.  Material to patentability.  It
21  is precisely for that reason that the PTO ultimately
22  rejected this application because of the On-Sale Bar
23  Rule.  Because the patented subject matter had in fact
24  been on sale, because this was in fact a patent based
25  on a publicly available doll.

Page 48

12  (Pages 45 to 48)

Exhibit 29, P. 326

HEARING                                                          01/03/08

1    And so Mr. Nequist could not have reasonably
2    expected that after he submitted drawings of this
3    patented subject matter, patentable subject matter,
4    with a Bratz head based on the doll that was on the
5    shelves, MGA would instruct him to change that head in
6    order to obscure the fact that this was in fact a
7    product on sale in order to try to avoid the On-Sale
8    Bar Rule.
9        That is a very unique circumstance. But in
10   this unique fact partner, in this unique circumstance,
11   I do think that destroys any reasonable expectation of
12   confidentiality as to these drawings.
13       MGA also argues work product. Very briefly,
14   no authority has suggested that work product adheres
15   to the straightforward ex parte process of filling out
16   a patent application. It applies only under
17   Ninth Circuit law in anticipation of litigation.
18       There's got to be some form of litigation.
19   It could be a lawsuit, it could be another form of
20   litigation, but there is no evidence to suggest that
21   these were prepared for any form of litigation.
22       JUDGE INFANTE: Okay. Thank you very much.
23   You may proceed.
24       MR. KENNEDY: Thank you, Your Honor. First,
25   I'm not going to get into a debate with Mr. Proctor
                                          Page 49

1    figure 4. And then I'd ask the Court to give an
2    in camera consideration to the paper that's being
3    sought here on the clawback production 025682 and to
4    look at figure 4 there (indicating). And submit in
5    both cases figure 4 represents an incarnation of the
6    would-be patentee's, the client's description of what
7    they think they've invented that's been communicated
8    to their lawyer. And because their lawyer doesn't
9    have the professional skill to draw it, has enlisted
10   a third party to assist in that regard. As I say, the
11   closest analogy I can think of is the translator.
12       JUDGE INFANTE: Well, that goes back to
13   basics which I think we need to do on this motion.
14       MR. KENNEDY: Okay.
15       JUDGE INFANTE: The impression is that the
16   lawyer hired the illustrator to provide these
17   drawings. And the illustrator was hired much like an
18   accountant is hired or a translator or someone else
19   who's assisting in rendering legal advice to the
20   client. In this case as to whether or not to file
21   a patent application and what the extended scope of it
22   should be.
23       If the illustrator is an agent of the lawyer,
24   in assisting the lawyer in rendering legal advice to
25   the client, that's how this matter should be viewed,
                                          Page 51

1    over what the Court's prior ruling said or was based
2    upon. I don't think that's our provinces.
3        I realize it's not fashionable in this case
4    to concede anything, but this motion is unlike a lot
5    of the others where I think I can really point to
6    a case directly in point. This isn't that motion.
7    I've also got the problem that our lawyer went and
8    died on us, which made a real difference here.
9        However, I think the attorney/client
10   privilege should not be affected by whether somebody
11   hires a lawyer in good health or poor health or at my
12   age worrying about the age of the lawyer that you
13   hire.
14       Going more from reasoning and analogy, we
15   know from the better decided cases such as Connor
16   Peripherals that the attorney/client privilege can
17   apply in the patent prosecution process. What I don't
18   think any case has dealt with is what happens when the
19   equivalent of a translator in a personal injury case
20   gets involved so that becomes a tripartite situation.
21   Here, and if I might, Your Honor, I would ask
22   the Court to take a look at the as-filed drawing,
23   particularly MGA production number 0825495. This is
24   appended to the moving papers in the case. And direct
25   Your Honor's attention in particular to the shoe in
                                          Page 50

1    in my opinion. This is distinguished from the last
2    situation we had before on this table where the
3    communication came from the client to the lawyer.
4    This is a communication coming from someone to the
5    lawyer who's assisting the lawyer in the rendering of
6    legal advice. And in this case prosecuting a patent.
7        The intention of the illustrator is not the
8    important intention. The intention of the lawyer is
9    more important, as to whether this is a confidential
10   communication. Unlike in the last situation we had
11   the intention of the client, namely the holder of the
12   privilege, was before me. So I want to distinguish
13   that right off -- right off the bat.
14       Can there be a communication, which is a very
15   first element of an attorney/client privilege
16   question, is there a communication between a client
17   and a lawyer? Here we're looking at a communication
18   from a lawyer back to a client, for the purpose of
19   rendering legal advice for which he is hired, who uses
20   a third-party vendor to assist him in developing that
21   legal advice. That's really the way this matter
22   should be looked at, in my view.
23       You may continue.
24       MR. KENNEDY: You said it better than I did.
25   I'm prepared to submit, Your Honor.
                                          Page 52

                                    13  (Pages 49 to 52)

Exhibit _29_, P. _327_

HEARING                                                  01/03/08

**Page 53**

1    JUDGE INFANTE: I give you one last word,
2  Mr. Proctor.
3    MR. PROCTOR: One last word is all I have.
4    Even -- even the best of MGA's authorities
5  for MGA, every case they've cited that I have seen
6  makes very clear that the technical information itself
7  is discoverable. The McCook Metals case is one such
8  case that they rely on. It makes clear that technical
9  drawings such as this are discoverable.
10   Even the Advanced Cardiovascular case, which
11 is a case MGA relies on very heavily, makes clear
12 repeatedly that technical information is discoverable.
13 And what we're looking at here is simply drawings,
14 simple technical information. The mere fact that it
15 was attached to a fax, I do not think renders it
16 privileged. That's my last word.
17   JUDGE INFANTE: I appreciate your arguments.
18   Any time there's a privilege question for
19 decision, we should always go back to fundamentals and
20 examine each and every element of the attorney/client
21 privilege and I've attempted to do that. I must also
22 indicate to you that I think the more persuasive line
23 of authority, with respect to technical information as
24 to whether or not it is legal in nature or not, is the
25 Knogo, K-n-o-g-o, out of the Court of Claims line of

**Page 55**

1  directions, so I won't burden the Court with a lot of
2  time on this. But the fact of the matter is that we
3  have a situation here where there's been conflicting
4  statements made by counsel for Bryant over the last
5  three to four years regarding the location and
6  existence of hard drives and images for hard drives
7  of Mr. Bryant.
8    And the bottom line of this is that data from
9  the key 2000 to 2002 period is missing. And Mattel
10 has no explanation as to why it is missing.
11   And Mattel here is seeking percipient witness
12 testimony about the handling of the computer hard drives.
13 The contention by defendants raising a hobgoblin that
14 we're trying to get into attorney/client privilege and
15 work doctrine is a red herring.
16   Essentially, what we're looking for is a
17 custodian of records-type deposition to find out the
18 facts related to when the -- when the and how the
19 counsel for Bryant collected Bryant's computer hard
20 drives, what they did with them, whether they remained
21 in Bryant's counsel's possession over the last three
22 or four years or whether they were returned to
23 Mr. Bryant, or whether they ever were in the hands of
24 Littler Mendelson prior to this, earlier this year.
25   Whether they went back to Mr. Bryant, whether

**Page 54**

1  authority, which many other decisions have cited
2  including my own prior decisions.
3    In view of all of that, and if you will
4  forgive me for not writing a scholarly opinion, your
5  motion is denied. I find the drawings, namely the
6  Bates numbers I guess it's 0825681 and 82, to be
7  privileged by the attorney/client privilege. I do
8  reject work-product immunity here, because I find that
9  there was no anticipation of litigation. You win half
10 the argument, Mr. Proctor, but it does you no good.
11   Mr. Kennedy, you can prepare the order. The
12 order does not need to contain all the recitals.
13   MR. KENNEDY: Yes, Your Honor.
14   JUDGE INFANTE: The record is available,
15 should anyone wish to seek review.
16   Motion to Compel Deposition of Littler
17 Mendelson and the Cross Motion to Quash Mattel's
18 Deposition Subpoena to Littler Mendelson. These
19 motions were each filed on December 13th. The
20 opposition to each of these cross motions came in on
21 December 19th. And the replies to each of these
22 motions was filed on Christmas Eve.
23   I'll let Mattel go first.
24   MR. ALGER: Thank you, Your Honor. Tim Alger
25 for Mattel. The issue has been briefed in both

**Page 56**

1  they went to Mr. Bryant's niece, what happened with
2  the laptop. We don't -- the laptop was missing and
3  now it's been recovered, or at least a hard drive.
4    Just I think the Court, as I read through the
5  papers, I was amazed at the conflicting statements
6  that have been made over the years.
7    And then in response to the anticipated
8  arguments about the Shelton case, Your Honor, I think
9  Shelton doesn't even apply here. We're dealing with
10 former counsel. The policy arguments that are raised
11 in Shelton don't apply here.
12   It's not going to distract Littler Mendelson
13 from preparing for trial because they're not involved
14 in preparing for trial. It's not going to chill
15 future communications. And it's not going to lead to
16 the disqualification of counsel. So all those
17 arguments are off the board.
18   Plus, I think we've established in our papers
19 that the information is relevant and nonprivileged.
20 These are matters that are routinely inquired into in
21 litigation as to what happened with evidence, the
22 preservation of evidence, the production of evidence.
23   The information is undoubtedly critical to
24 this case, what documents Mr. Bryant created or had on
25 his computer dating back to the time when he was at

14  (Pages 53 to 56)

Exhibit _29_, P. _528_

1  Mattel and then shortly after he left Mattel. What
2  documents he may have loaded onto that computer.
3       He may have taken Mattel documents with him
4  and loaded them onto the computer shortly after he
5  left, even assuming that the computer was purchased
6  after he left.
7       So the purpose of the deposition is to
8  determine if spoliations occurred and to avoid
9  surprise at trial. And we're entitled to, I think
10  Mattel is undoubtedly entitled to get to the bottom of
11  the question of what happened to these computers and
12  their hard drives.
13       JUDGE INFANTE: If you look at your moving
14  papers, your motion, page 10, bottom, last line. And
15  the top of page 11, down to line 12.
16       MR. ALGER: Yes, Your Honor.
17       JUDGE INFANTE: You attempt to assure the
18  reader, which is me, that you're not seeking
19  privileged information. And you say the nonprivileged
20  information we seek is as follows and you lay out four
21  bullet points. Do you solely promise?
22       MR. COREY: You better.
23       JUDGE INFANTE: That that's all you're
24  seeking?
25       MR. ALGER: Well, that these are the areas at

Page 57

1  information. And I believe both of them, or at least
2  one of them, said Mr. Bryant wasn't even in town when
3  the imaging occurred. We have confusion about the
4  dates. And then if Mr. Bryant wasn't there and if
5  Mr. Irwin and Ms. — and the niece don't have the
6  information, we're certainly stuck with having to get
7  the information from Littler Mendelson.
8       They asserted, as early as '04, that they had
9  the computers and that they engaged in this extensive,
10  many hours examination of the computers, and we should
11  be assured that there were no responsive documents on
12  the computers. And these are statements, affirmative
13  statements that were made to the Court and they were
14  made to Mattel as well. And it is proper for us to
15  find out what the true facts are.
16       I just don't see — I suppose the argument
17  can be made, well, you can get this little piece from
18  this witness and possibly this little piece from this
19  witness, and so forth, but I don't think that's
20  what — what the law requires. We've got a law firm
21  that claimed to have possession and control of the
22  computers over this period of time, and we can get all
23  those answers in one deposition from inquiring into
24  matters that are not privileged.
25       JUDGE INFANTE: Okay. I've read your motion,

Page 59

1  which we wanted to inquire, Your Honor.
2       JUDGE INFANTE: All right.
3       MR. ALGER: I think it's a legitimate scope.
4       JUDGE INFANTE: I just wanted to clarify
5  that.
6       You obviously have other available sources to
7  acquire this information, which is one of the factors
8  the courts take into consideration in determining
9  whether attorneys or former attorneys should be
10  subjected to the discovery process. Namely, Bryant
11  himself. And I believe you haven't yet reexamined
12  Bryant. You've been given several additional hours to
13  reexamine Bryant on these topics and that hasn't
14  occurred yet. Should we wait to see what that yields
15  before we haul an attorney into the process by a
16  subpoena?
17       MR. ALGER: Your Honor, let me respond to
18  that. I don't — with all respect, I don't believe
19  that there are alternative sources in this situation.
20  We've taken the deposition of Mr. Irwin, we've taken
21  the deposition of Mr. Bryant's niece. Mr. Irwin
22  confessed to being computer illiterate. He had no
23  real recollection of the imaging of the computers,
24  what was involved. Mr. Bryant's niece is the same,
25  the same with the answers. She had very little

Page 58

1  as well as your reply papers. And I also read your
2  opposition on the countermotion to quash.
3       You may proceed.
4       MR. WERDEGAR: Your Honor, Matt Werdegar
5  again on behalf of Carter Bryant.
6       I do understand this has been briefed even
7  more intensely than most issues because of the cross
8  motions. I'd just like to briefly address some of the
9  points that were raised, though.
10       Just with respect to the standard that
11  applies, we believe that Shelton testifies, it has
12  been widely used within the Ninth Circuit by many,
13  many district courts. They don't cite any authority
14  from within the Ninth Circuit indicating that it does
15  not apply.
16       The fact that Littler Mendelson is longer
17  current trial counsel, I don't think makes a
18  difference. They were lead trial counsel coordinating
19  this litigation on behalf of Carter Bryant until May
20  of 2007. And all the concerns expressed in Shelton
21  with respect to expense, distraction, delay, the
22  chilling effects on communications, not just the
23  communication maybe going forward but the
24  communications generally in the attorney/client
25  relationship all apply equally here.

Page 60

15  (Pages 57 to 60)

Exhibit 29, P. 329

HEARING                                                          01/03/08

1  And -- but even if the Shelton test is not
2  what applies, if you go with MGA's argument, no case
3  anywhere treats the deposition of counsel as a routine
4  event. It's always something that requires a
5  heightened showing of really a particularized need and
6  relevance that I just don't think MGA has done here.
7       Now, the oral argument is focused on the two
8  computer hard drives. What they neglect to mention,
9  though, is at the end of the day MGA had received bit
10 by bit forensic images of both the computers they're
11 talking about that were prepared in the July 2004 time
12 frame, shortly after this litigation began.
13      There is no evidence that has been presented
14 that, showing that those forensic images are in some
15 way, you know, defective or suspicious. They may have
16 forensic consultants who can look at them, and there
17 has been no suggestion that there is anything wrong
18 with those images.
19      They've also inspected both of the actual
20 computers themselves. Whatever confusion may have
21 existed in terms of counsel for Littler, then counsel
22 for Carter Bryant, Littler Mendelson's declarations at
23 the end of the day is both computers were produced and
24 inspected and forensic images from July 2004 were
25 produced to MGA.

                                              Page 61

1       So I think you raised a very good point,
2  Your Honor, with respect to exhausting other sources
3  of information. They make much of the fact that there
4  is this evidence eliminator program.
5       They have examined Mr. Irmen about that. It
6  was his testimony, as well as other evidence, that
7  that has been submitted to show that that program was
8  installed in 2002 and that it was used for mundane
9  purposes such as clearing Internet cookies, keeping
10 your viruses, you know, and other things like that.
11 And that's, you know, one of the many reasons people
12 buy that product.
13      They haven't yet examined Mr. Bryant about
14 that. I don't believe they did at his first round of
15 deposition, but they have an additional nine hours and
16 perhaps more if they prevail on their effort to have
17 Judge Larson reconsider your prior order on that
18 issue. So they can examine him about what he did with
19 his computers, what he used them for, what documents
20 might have been on there. All of those kinds of
21 questions can be explored with Mr. Bryant if they
22 wish.
23      Now, just a couple of other points. What was
24 not raised in oral argument is they do have a topic,
25 and it's in this list that you pointed out,

                                              Page 62

1       Your Honor, the last bullet point. The facts
2  regarding any other destruction of evidence such as
3  destructive testing conducted on the original Bratz
4  dolls.
5       First of all, I don't know the facts
6  regarding any other destructive evidence. It's pretty
7  open-ended. I would be concerned if the Court were
8  inclined to adopt this list in any way, shape, or
9  form. And with respect to the destructive testing
10 conducted on the Bratz drawings, they didn't raise it
11 in oral argument.
12      But the fact of the matter is, Your Honor,
13 that Judge Larson looked extensively at this issue and
14 concluded that there was no spoliation of evidence.
15 Maybe the fact that testing occurred without informing
16 Mattel in advance, it probably shouldn't have happened
17 that way.
18      But Judge Larson examined the issue,
19 concluded there was no spoliation of evidence. And
20 they have not -- and Mattel has not articulated any
21 reason why we need to now reopen this whole -- this
22 whole issue. They've not shown that there is any
23 particular missing facts or information with respect
24 to that testing that is crucial to the preparation of
25 their -- of their case.

                                              Page 63

1       I also want to add that Mattel has now
2  inspected all of those documents ad nauseam. And
3  they've shipped them around the country for 35 days,
4  subjected them to a battery of tests, we're about to
5  reproduce them to them so they can now perform their
6  own battery of destructive tests on those documents.
7  So they have had every opportunity to examine and test
8  those documents themselves.
9       And then just a couple of other points,
10 Your Honor. What was not raised anywhere in Mattel's
11 briefing, and therefore either in opposition to our
12 motion to quash or in support of their motion to
13 compel, and as a result I believe that they've either
14 withdrawn it or they've waived any argument, is there
15 Topic No. 6 of their subpoena to Littler which was a
16 topic seeking deposition testimony with regard to fee
17 agreements between Littler and Carter Bryant. And
18 there's -- no argument was raised, either orally or in
19 their papers, and so I'm assuming it's either
20 withdrawn or waived.
21      JUDGE INFANTE: There is no motion to enforce
22 that part of the subpoena.
23      MR. ALGER: Okay. I just want to make that
24 clear.
25      And then just one last point, Your Honor.

                                              Page 64

HEARING                                                                    01/03/08

1  It's strongly our position that there is no need under
2  any circumstances for them to depose Littler Mendelson.
3  That it's really a fishing expedition. But if there
4  is going to be a deposition, I would agree with you,
5  Your Honor, that it should be postponed until after
6  Carter Bryant has been deposed again. I think that
7  makes sense.
8       And that also any order that Your Honor would
9  issue, granting them any right to depose the Littler
10  Mendelson firm, needs to be subject to Judge Larson
11  granting Mattel leave to take additional depositions
12  in this matter. Mattel has butted up against their
13  limit of depositions in this case and there's
14  presently a motion before Judge Larson to actually be
15  heard on Monday where they're seeking leave to take
16  additional depositions. And one of the ones they're
17  seeking leave to take is specifically this one.
18       And so if there's to be a deposition of
19  Littler Mendelson, and again, I don't think there
20  should be, it needs to be subject to leave of
21  Judge Larson for them to exceed their -- their limit
22  of 24 depositions in this matter and that leave has
23  not been granted.
24       JUDGE INFANTE:  I didn't read that in the
25  papers.

Page 65

1       MR. ALGER:  Your Honor, it's not in the
2  papers. But it is -- they've reached their limit and
3  that limit has been reached since this motion was
4  brought.
5       JUDGE INFANTE:  Well, that's important.
6       Okay. Any comments?
7       MR. ALGER:  Yes, briefly, your Honor. The
8  issue of the testing, the destructive testing on the
9  documents, goes to Littler Mendelson's overall
10  handling of key evidence in this case. And it's
11  clear, from the evidentiary record and particularly
12  related to the hard drives, that Littler Mendelson has
13  done a pretty, pretty shoddy -- engaged in pretty
14  shoddy practices as to preserving evidence.
15       And we think it's fair for us to inquire as
16  to what went on with those documents, those drawings
17  during the period of time that Littler Mendelson had
18  possession of the documents.
19       Regarding the hard drives. I just do not
20  agree that the answer is going to lie with Mr. Bryant.
21  It comes out of the mouth of Mr. Jacoby, Mr. Bryant's
22  former counsel. In 2007 he wrote in a brief:  Bryant
23  confirmed in a stipulation that he made a diligent and
24  reasonable effort to locate all three computers
25  referenced in his deposition. And that after a

Page 66

1  search, he was only able to locate one of the old
2  computers that he used and/or owned. Well, that
3  turned out to be false.
4       And then the declaration by Mr. Jacoby,
5  Mattel's baseless representations ignore the fact
6  that, quote, "Bryant's counsel has examined his hard
7  drive extensively for any responsive documents and it
8  has not found any." Unquote. These are
9  representations by Bryant's counsel that he reviewed
10  the hard drive for the desktop, looked for documents.
11       The information that is sought here is
12  exclusively in the possession of Mr. Bryant's counsel
13  at Littler Mendelson. It is not something where a
14  forensic consultant was brought in. We're talking
15  about representations to the Court and to Mattel, but
16  most importantly to the Court, as to what was done
17  with these documents. These hard drives. And it's
18  appropriate for us to inquire as to the integrity of
19  this key evidence.
20       I think the question of the number of
21  depositions obviously, if that's in front of the Court
22  and I'm not familiar with that, with the situation.
23  Of course, any order that the Court gives us today
24  regarding the deposition, if it falls within the scope
25  of any subsequent order by Judge Larson as to the

Page 67

1  number of depositions, that would, it would have to be
2  subject to that order by Judge Larson. With that,
3  we'll submit.
4       JUDGE INFANTE:  Okay. I appreciate your
5  arguments on both sides.
6       The first comment I want to make is that
7  I agree with the reasoning in the well-cited case of
8  Shelton versus American Motors from the Eighth
9  Circuit. Courts should be very careful and very
10  cautious in allowing parties to depose opposing
11  parties lawyers, even former lawyers, for all the
12  reasons stated in that well-drafted opinion.
13       And of course, many other courts,
14  particularly courts that deal with discovery issues,
15  namely district courts, have agreed and applied the
16  concerns in Shelton versus American Motors. And I
17  have cited it in my prior decisions as well when I was
18  on the bench. And have been very, very conservative
19  about allowing attorneys, even former attorneys, to be
20  deposed or subpoenaed.
21       So I start with a great degree of caution.
22  And I agree with the principles of Shelton that there
23  should be essentially no other means to obtain the
24  information from elsewhere. Secondly, that the
25  information must be clearly relevant and not

Page 68

17  (Pages 65 to 68)

Exhibit 29, P. 341

1  privileged. And thirdly, that the information should
2  be crucial to the preparation of the case.
3       I think crucial may be too strong a word.
4  It's not necessarily consistent with Rule 26. I would
5  use words like essential or necessary. But in any
6  event, I embrace those teachings.
7       And so my initial reaction is to put a very
8  heavy burden on the party who seeks to discover
9  information from a deponent's prior attorney. The
10 problem in this case is the various statements made by
11 Littler's, by the firm's counsel with respect to the
12 condition and whereabouts of Mr. Bryant's former
13 computers, hard drives, laptops, et cetera. The
14 statements are all part of the record here and the
15 inconsistency in those statements is alarming. There
16 is in Mattel's claims, claims of spoliation. I have
17 no idea whether they have any merit. But they're
18 specifically pled.
19      I find the material you're seeking is
20 relevant. I'm not clear as to whether it's available
21 from any other source. I also find the information
22 you're seeking is essential and necessary to the
23 preparation of your entire case. I do believe that
24 you should take the deposition of Mr. Bryant on this
25 question first. And so I'm not prepared to grant your

Page 69

1       Specifically, I'm granting the motion to
2  quash the subpoena with respect to Topic No. 6,
3  Topic No. 7, Topic No. 8. Otherwise, I'm denying your
4  motion at this time without prejudice. And with
5  respect to the competing motion brought by Mattel,
6  I am not granting your motion at this time but simply
7  holding it in abeyance until after Carter Bryant
8  has been thoroughly deposed on these topics.
9       For the record, I would be denying your
10 motion with respect to topics 6, 7 and 8 of the
11 subpoena.
12      MR. ALGER: Your Honor, then I would request
13 that we -- that the Court order some mechanism by
14 which we can bring the matter again to the Court's
15 attention perhaps without full notice of briefing.
16      JUDGE INFANTE: Yeah, I don't think further
17 briefing would be needed. You can simply submit more
18 evidence in the form of a declaration and any exhibits
19 with respect to deposition transcript testimony. And
20 I would allow you to do that.
21      MR. ALGER: Thank you, Your Honor.
22      JUDGE INFANTE: Now, could you prepare the
23 order?
24      MR. WERDEGAR: Certainly, Your Honor.
25      And just also to clarify. I believe this was

Page 71

1  motion at this time. Nor am I prepared to quash the
2  subpoena at this time. I do believe the subpoena is
3  overbroad. And the most discovery that would be
4  allowed would be discovery with respect to the hard
5  drives, which you set forth on page 11 of your brief
6  in the first three bullet points.
7       With respect to questioning Littler regarding
8  facts, regarding destructive testing conducted on the
9  original Bratz drawings, I find that you already have
10 sufficient information with respect to that subject.
11 And the information is not crucial, essential, or even
12 necessary, to the preparation of your case. And
13 therefore, I would quash the subpoena with respect to
14 those items.
15      Does someone have a copy of the subpoena?
16 I misplaced mine.
17      Thank you, Mr. Werdegar.
18      MR. WERDEGAR: There's a little highlighting
19 on two of the topics, but I wouldn't consider it work
20 product.
21      JUDGE INFANTE: I just want to refer to it.
22 It was Exhibit No. 29. If you take the designated
23 topics of testimony that are requested, and there are
24 8, I'd like to specifically relate my ruling to the
25 8 topics in the subpoena.

Page 70

1  conceded by Mattel, but obviously this is all subject
2  to any motion, that the outcome of the motion for
3  leave for Mattel to take additional depositions which
4  is pending?
5       JUDGE INFANTE: Yeah, I'm not going to make
6  any reference to that in my order.
7       MR. WERDEGAR: Okay.
8       JUDGE INFANTE: Because I believe they
9  should -- they have an election as to which
10 depositions they want to handle, so I'm just, I'm just
11 going to not -- I think that's interesting and
12 important. But I believe I should make no reference
13 to it in the order.
14      MR. WERDEGAR: Understood, Your Honor.
15      JUDGE INFANTE: So let me hand back the
16 Exhibit 29 to you. Thank you for lending it to me.
17 And would you please prepare my order on both motions?
18      MR. WERDEGAR: I certainly will, Your Honor.
19 Thank you.
20      JUDGE INFANTE: Thank you. I don't recall
21 whether there were any requests for monetary
22 sanctions. If they were, they're denied. Cross
23 motions for monetary sanctions are denied.
24      MR. WERDEGAR: I don't think there were. But
25 thank you, Your Honor.

Page 72

18 (Pages 69 to 72)

Exhibit 25, P. 342

HEARING                                                               01/03/08

1   JUDGE INFANTE: Okay. They become so common
2   in these motions that I feel like I have to cover
3   that.
4       We're going to take a short break. Why don't
5   we take a 10-minute break? And off the record I'm
6   going to confer with counsel as to the remaining
7   motions that we haven't heard yet and tell you which
8   ones I'm prepared on and which ones I'm not. So we'll
9   go off the record at this time.
10      (Recess taken.)
11      JUDGE INFANTE: I'm prepared to hear the
12  joint motion brought by MGA and Bryant to Compel
13  Further 30(b)(6) Testimony. This is the motion
14  regarding bandying, b-a-n-d-y-i-n-g, of 30(b)(6)
15  witnesses.
16      You may proceed.
17      MR. TRINIDAD: Thank you, Your Honor. Again,
18  this is John Trinidad on behalf of Carter Bryant and
19  with the joint motion with MGA entertainment. Again,
20  I'll keep my comments brief since the issue has been
21  fully briefed.
22      It's a fairly straightforward motion,
23  Your Honor. Bryant and MGA have a right to discovery
24  of the facts that underlie the claims that Mattel has
25  lodged against them. And the topics for the 30(b)(6)
                                                        Page 73

1   only his own knowledge as to Diva Stars, a Mattel
2   product, by own employment agreement and that was it.
3   He had no information as to Topics 2 through 7 that
4   were relevant to this matter.
5       As you know, Your Honor, the parties have
6   been involved in substantial negotiations trying to --
7   trying to see if we could come to an agreement
8   regarding this motion. MGA and Bryant proposed
9   a stipulation whereby the parties would agree that
10  either Mattel had testified to its full knowledge as
11  to the noticed topics or that they should present
12  witnesses that were knowledgeable or properly educated
13  to testify fully.
14      That stipulation was denied by Mattel.
15  Instead, they wanted to propose language that would
16  allow them, excuse me, whereby the parties would be
17  prevented from trying to preclude testimony that
18  a witness was prepared to offer but as to which
19  counsel for Bryant and/or counsel for MGA neglected to
20  inquire.
21      Your Honor, we submit that this type of
22  language just leaves the door open for MGA and Bryant
23  to be sandbagged at trial with either a new witness
24  that was fully educated as to the information or the
25  prior witness now fully educated as to the knowledge
                                                        Page 75

1   notice are directly on point here. They include
2   topics regarding Bryant's duties and obligations to
3   Mattel as a Mattel employee. His duties and
4   obligations under certain agreements with Mattel. Any
5   acts or omissions that would have breached these
6   duties or agreements.
7       Now, the Rule 30(b)(6) obligations are clear
8   that designated witnesses shall testify as to matters
9   known or reasonably available to the organization, but
10  to date Mattel has failed to meet this obligation.
11      Instead, they've produced a litany of
12  witnesses, one after another, saying that they only
13  are testifying as to their personal knowledge, stating
14  that they have not been educated as to the topics that
15  they've been designated for. And then when asked,
16  simply say they have no information on these topics.
17      There is probably no clearer example for this
18  than the testimony of Robert Hudnut, who was
19  designated as to Topics 2 through 7, and who stated
20  multiple times that he had no knowledge about these
21  facts.
22      In fact, he went on to say that he is only
23  a screenwriter, a songwriter, and a producer and those
24  are the things he was prepared to testify about. And
25  later on he went to say that he was here to talk about
                                                        Page 74

1   Mattel currently has.
2       At the end of the day, Your Honor, we believe
3   that the 30(b)(6) obligations are clear here. That
4   witnesses should be either prepared to testify about
5   the topics or be educated as to the topics and testify
6   to them. And that to date has not occurred.
7       We submit that Mattel should be obligated to
8   provide us with witnesses that are knowledgeable as to
9   these topics and present them to us prior to the close
10  of discovery.
11      JUDGE INFANTE: I'm not inclined to grant
12  your motion on the Zeus topic. I'm not inclined to
13  grant your motion with respect to the Zeus, Z-e-u-s,
14  topic. Is there anything else more you wish to say on
15  that?
16      THE WITNESS: Your Honor, I will submit that,
17  you know, we presented this motion with the full range
18  of topics including Zeus, and respectfully believe
19  that there are some additional areas that have not
20  been explored on that front. But we accept that and
21  we'll move forward, submit it.
22      JUDGE INFANTE: Okay. I just want to make
23  sure you had an opportunity to be heard. You may
24  proceed.
25      MR. COREY: Thank you, Your Honor. I don't
                                                        Page 76

                                        19  (Pages 73 to 76)

Exhibit 29, P. 793

HEARING                                                    01/03/08

1  think that the Court can properly consider this motion
2  without starting at the beginning.  And the beginning
3  was there was a meet and confer, the scope of these
4  topics were limited, because they are facially
5  defective in many instances.
6          And probably the most significant agreement
7  that was reached was that Mattel didn't have to
8  produce a witness, and was in fact incapable of
9  producing a witness, to testify or really to connect
10 the dots.  Because the fundamental thing that's going
11 on here is that Bryant's misconduct was concealed.
12         And the information that Mattel has regarding
13 his misconduct comes not from Mattel itself, but comes
14 from Bryant, comes from MGA, and comes from third
15 parties.
16         And with very few exceptions, all of that
17 information has been designated as either confidential
18 or confidential attorney's eyes only under the
19 protective order.
20         So practically speaking, Mattel can't take
21 the information that it has in response to these
22 specific topics and feed it to a witness, because the
23 protective order prevents Mattel from giving it to a
24 witness.  I mean, the way the topics are drafted, what
25 Mattel would have to do would fundamentally violate
                                              Page 77

1  the protective order.  And that's what happens when
2  you have competitors suing each other in a dispute.
3          Now, does MGA -- excuse me, does Bryant have
4  a right to get facts that Mattel is going to rely on
5  at trial?  Absolutely.  Is this the mechanism to do
6  that?  No.  That's a contention interrogatory.
7          Mattel reasonably supplemented its contention
8  interrogatories where it did connect the dots.  So
9  that's where they're entitled to have, to have the
10 dots connected.
11         Now, I know that there was a lot of paper on
12 this motion.  And I have the luxury of saying both
13 with respect to defending this motion to compel and
14 my -- and Mattel's own motion to compel, that I would
15 hope that the Court has had an opportunity to look at
16 the transcripts, because what Mattel has done is it
17 has provided the witnesses who will provide the
18 information that Mattel were relying on at trial to
19 prove the facts as they exist within -- within
20 Mattel's knowledge.
21         And there are additional witnesses who Mattel
22 has designated on these topics, specifically 2 through
23 7 and 22, who will provide additional facts.  But
24 again, these facts, because of limitations, these
25 facts can't be presented in a form where a witness can
                                              Page 78

1  provide, essentially lay out Mattel's trial strategy.
2  Nor is that something that's within the ambit of
3  Section 30(b)(6).
4          And none of this should come as a surprise to
5  Bryant.  I mean, this is part of the conversation that
6  occurred on March 15th.  And particularly, with
7  respect to Diva Stars, I don't know how well it came
8  out in the papers, but Diva Stars is a huge project,
9  hundreds of people worked on it.
10         It was an electronic and motorized doll.  And
11 there are very, very limited aspects of that entire
12 project that relate to -- that relate to this case.
13 And those have to do with the Steve Linker drawings
14 and the use of some names that actually ended up in
15 the Bratz project.
16         And Mattel has put forth witnesses with that
17 information, and counsel came up with the example of
18 Mr. Hudnut not knowing about the creation of
19 Diva Stars.  He wasn't there to talk about the
20 creation of Diva Stars, he was there to talk about
21 other names that were used.  And in connection with
22 some scripts.  And he was never asked those questions.
23         So my understanding, what the relief is being
24 sought is that because they neglected to ask questions
25 of Mr. Hudnut that would elicit that information, that
                                              Page 79

1  Mattel should somehow be precluded from introducing
2  that at trial.  That's just improper.
3          And it happens all the time in depositions.
4  You don't -- you're not able to ask, no one is smart
5  enough to ask every single question to elicit every
6  single fact, but you should be smart enough to prepare
7  cross-examination if there's any funny business going
8  on.
9          Now, specifically with respect to Topics 2
10 through 7 relating to Carter Bryant's obligations to
11 Mattel and his breach of those obligations to Mattel.
12 Mattel's identified the contracts.  There's been a
13 separate witness to testify about those contracts.
14         We've presented a witness to talk about the
15 fact that Bryant lied when he left Mattel.  He did not
16 say that he was going to MGA, he said he was going to
17 do other things.
18         And to the extent that we have circumstantial
19 evidence of what he -- what he did wrong, that has
20 been the subject of testimony.
21         Now, with respect to Topic No. 41 very
22 briefly --
23         JUDGE INFANTE:  I'm inclined to rule in your
24 favor on that one.
25         MR. COREY:  I'll pass that.  Then Topics 54,
                                              Page 80

20  (Pages 77 to 80)

HEARING                                                    01/03/08

1  55 and 56.
2       JUDGE INFANTE: I'm not sure those are part
3  of the motion.
4       MR. COREY: Those are the topics relating to
5  Bryant's exit interview. If they're not part of the
6  motion, I'll be quiet.
7       JUDGE INFANTE: Well, I thought the motion
8  was Topics 2 through 8, 11 through 13, 24, 41 and
9  Zeus.
10      MR. TRINIDAD: Your Honor, I believe
11  that's -- that there was an additional mention of the
12  topics that Mr. Corey was about to address in the
13  briefs. I don't believe they were --
14      JUDGE INFANTE: It wasn't clear.
15      MR. COREY: I don't have the notice.
16      JUDGE INFANTE: It wasn't clear you were
17  seeking an order as to those topics.
18      MR. COREY: With that, I will submit unless
19  the Court has any questions.
20      JUDGE INFANTE: No. You've covered the
21  ground very comprehensively in your papers.
22      MR. TRINIDAD: Your Honor, briefly --
23      JUDGE INFANTE: I'm inclined not to grant 41,
24  because it's like proving a negative. Julie Jensen
25  I believe testified. Is that her name?

Page 81

1  knowledge on topics 2 through 8, 11 through 13, and
2  24.
3       Mattel shall produce no more than one
4  competent witness on any one topic. Normally, you
5  have discretion on that point to produce one or more
6  witnesses. But I believe there's been an abuse here,
7  de-facto not necessarily intentional. And therefore,
8  my order says you shall produce no more than one
9  competent witness on any one topic.
10      You shall comply with this order by
11  January 28th of '08. Failure to comply with this
12  order may result in preclusion of evidence orders at
13  trial pursuant to Rule 37.
14      MGA's motion for $32,000 in attorney time,
15  plus fees for bringing this motion, is denied.
16  Because it would be unjust, under the circumstances of
17  all the history leading up to this deposition, to
18  grant such motions. I mean, such sanctions. The only
19  penalty I'm putting you under is the deposition shall
20  be at your expense. Meaning court reporter fees,
21  et cetera.
22      MR. COREY: Correct. That's what I understood.
23  If I may ask one question.
24      JUDGE INFANTE: Sure.
25      MR. COREY: The --

Page 83

1       MR. COREY: Yes, that's correct, Your Honor
2       MR. TRINIDAD: Right.
3       JUDGE INFANTE: And you know, I read that.
4  And she's the one who first contacted the reporter.
5  You know, I'm inclined not to grant your 41 or Zeus.
6  I am inclined to grant you -- now that I've heard
7  Mr. Corey's arguments, I am inclined to grant the rest
8  of the motion.
9       So here's what I'll do. I find, reading all
10  of the testimony of Mr. Hudnut, Ms. Newquist,
11  Mr. Ong Changco, O-n-g C-h-a-n-g-c-o, Ms. Pasko,
12  Ms. Pratte, P-r-a-t-t-e, and Ms. Yamamoto, Ms. Jensen
13  and Ms. Marine. I've taken the time to read all of
14  that, and I do not feel that you adequately prepared
15  these witnesses in the spirit of Rule 30(b)(6) on
16  behalf of the corporation.
17      For the most part, these witnesses' testimony
18  was limited to their open percipient knowledge. You
19  were operating on the notion that that was okay,
20  because of prior agreements of the parties which they
21  deny they ever made. I've read that entire record.
22      And my judgment is to grant the motion and
23  compel Mattel to produce, at your own expense,
24  properly educated and adequately prepared 30(b)(6)
25  witnesses to testify competently as to Mattel's

Page 82

1       JUDGE INFANTE: You may prepare the order.
2  I'm denying the motion as to 41. I find the testimony
3  is adequate.
4       MR. COREY: But by this order, the Court is
5  not compelling Mattel to provide information subject
6  to the protective order to its witnesses to prepare
7  them?
8       JUDGE INFANTE: I'm not speaking to that.
9  You have my order.
10      MR. COREY: Thank you, Your Honor.
11      JUDGE INFANTE: You may prepare the order.
12  Any questions regarding what my order was? You want
13  me to repeat it? I'll repeat it again.
14      MR. TRINIDAD: Certainly, Your Honor.
15      JUDGE INFANTE: Mattel shall produce, at its
16  own expense, properly educated and adequately prepared
17  Rule 30(b)(6) witnesses to testify competently as to
18  Mattel's knowledge on topics 2 through 8, 11 through
19  13, and 24, period. Mattel shall produce no more than
20  one competent witness on any one topic.
21      The motion is denied as to Topics 20 -- I'm
22  sorry, 41 and Zeus, that's Z-e-u-s. Failure to comply
23  with this order may result in preclusion of evidence
24  offered by Mattel at trial pursuant to Rule 37.
25      All motions for monetary sanctions are

Page 84

21  (Pages 81 to 84)

Exhibit 29, P. 345

HEARING

01/03/08

1   denied, because the Court would find it is unjust
2   under the circumstances of this case to award such
3   monetary sanctions.
4       Compliance by January 28th of '08.
5       MR. TRINIDAD: Thank you, Your Honor.
6       JUDGE INFANTE: Okay.
7       MR. ALGER: And again, Your Honor, for
8   clarity, when you say "at Mattel's expense," we're
9   talking about costs, not attorneys' fees?
10      JUDGE INFANTE: Correct.
11      MR. ALGER: Thank you.
12      JUDGE INFANTE: Okay. One more motion to be
13  heard. This is Motion No. 15, Mattel's Motion to
14  Enforce the Court's Discovery Orders and to Overrule
15  Improper Instructions and For Sanctions. This
16  pertains to 30(b)(6) witnesses produced by MGA,
17  Lisa Tonnu, T-o-n-n-u, Kenneth Lockhart, Rebecca Harris,
18  Spencer Woodman on 16 noticed topics.
19      You may proceed.
20      MR. COREY: Thank you, Your Honor. Jon Corey.
21  There is a lot of paper associated with this motion.
22  Is there anything in particular that you would like me
23  to address?
24      JUDGE INFANTE: No.
25      MR. COREY: I will make this very brief,
Page 85

1   Woodman, I'm inclined to -- to grant your motion.
2   Because, for three reasons: He was given improper
3   instructions not to answer. Secondly, he did not
4   provide any testimony as to Exhibits 500, 502, 548,
5   580 to 584 and 590. And thirdly, as to Topic 34, a
6   blanket privilege claim is inappropriate. It would
7   have to be dealt with on a question-by-question basis.
8   For those reasons, Mattel would be entitled to an
9   order compelling MGA to produce witnesses, adequately
10  prepared witnesses on Topic 34.
11      On Topic 39, I'm inclined to grant the motion
12  in part regarding document collection of hard copy and
13  electronic documents. Otherwise, I believe MGA has
14  substantially complied with Topic 39. And the burden
15  and the expense of reopening 39, beyond what I just
16  indicated, is outweighed by the likely benefit of the
17  time spent.
18      With respect to Topic 40, I believe
19  Ms. Tonnu's preparation for the deposition was
20  reasonable under the circumstances and her testimony
21  was adequate. But there may be more Mattel employees
22  at MGA who may have relevant information on this
23  subject.
24      So I'm inclined to grant your -- I mean,
25  I think she did a good job, but I think you're
Page 87

1   then.
2       JUDGE INFANTE: My intent is to grant your
3   motion in part, substantially in part.
4       MR. COREY: With that, I'll submit then.
5       JUDGE INFANTE: Let me just give you the
6   tentative to save you some trouble.
7       MR. COREY: Thank you.
8       JUDGE INFANTE: Tentatively, as to Topic No.
9   11, Rebecca Harris didn't do the job. Topic 13, same.
10  Topic 14, same. Topic 19, the same. Topic 21, the
11  same. Topic 23, hold off on that. And on Topic 25,
12  Ms. Tonnu, T-o-n-n-u, was inadequate.
13      I'm inclined to deny your motion as to
14  Topic 27. I believe Ms. Harris' preparation and
15  testimony regarding Topic 27 was adequate enough. And
16  I don't think burdening the expense of conducting a
17  further deposition on this topic substantially
18  outweighs the potential relevance of additional
19  testimony you're seeking. So I would be inclined to
20  deny as to Topic 27.
21      With respect to Topic 28, I'm inclined to
22  deny. The same reason, same language.
23      With respect to Topic 31, I'm inclined to
24  grant your motion.
25      And with respect to Topic 34 and Mr. Spencer
Page 86

1   entitled to more. I think there's more knowledge
2   within the corporation that you should be entitled to
3   pursue. So I would grant No. 40 as well.
4       As to No. 41, I haven't decided that.
5       When we get into specific instructions not to
6   answer questions on a question-by-question basis,
7   which was attached in the separate statement number 2,
8   I have not made a specific ruling as to each and every
9   question. And finally, I think there should be some
10  time limitations for a redeposition time. I mean,
11  hours. That's kind of my overall impression, if that
12  gives you any focus.
13      MR. COREY: It does. It does give a
14  significant amount of focus. But Your Honor had put
15  off 23, is that --
16      JUDGE INFANTE: Oh, yeah. Let me go back to
17  that.
18      Yeah, I would include number 23 in the order.
19  But I would cap my order with a time limitation for
20  all topics that I'm granting you a revisit on.
21      MR. COREY: And would that be -- I mean, with
22  respect to a couple of things I want to say about
23  Topic 41, I'm prepared to submit on this. But I would
24  like to -- I do think we're -- Mattel has spent a lot
25  of time asking questions of these people, but has not
Page 88

22  (Pages 85 to 88)

Exhibit 29, P. 346

HEARING                                                                01/03/08

1    gotten very far. And so I would request, with respect
2    to Ms. Tonnu's deposition, or whoever the designee
3    would be on that, that Mattel be given a day with
4    respect to the topics that are the issue in this
5    motion. And she's also been designated on, I believe,
6    four additional topics.
7        JUDGE INFANTE: Yes.
8        MR. COREY: And so I think between those, if
9    my math is right, I think that's eight topics, I think
10   Mattel should get two days of deposition for those
11   eight topics.
12       And I think with respect to the topics that
13   Ms. Harris was designated on, MGA had initially --
14       JUDGE INFANTE: Yeah. That one, I'm inclined
15   to give you like four hours.
16       MR. COREY: On Ms. Harris?
17       JUDGE INFANTE: Yeah, for everything. Clean
18   it up.
19       MR. COREY: That should be fine. I don't --
20   I don't believe she's been designated on anything
21   else, so I think that should be fine.
22       And I think that would leave Mr. Woodman on
23   Topic No. 34. I think we're entitled to at least -- I
24   would request six hours with respect to Mr. Woodman.
25       JUDGE INFANTE: Okay. Thank you.
                                   Page 89

1       MR. COREY: And then I'll await your decision
2   with respect to Topic No. 41. And I understand
3   the Court is going to do that on a
4   question-by-question basis.
5       JUDGE INFANTE: Yeah, I just haven't finished
6   it.
7       MR. COREY: I know. I just reiterate that
8   with respect -- Mattel's position is that it's not
9   seeking the results of Mr. Speckin's tests, whatever
10   they were. But it is important. And frankly, I think
11   there's been a waiver because there's been a
12   disclosure of the documents that he tested and the
13   tests that he ran. And those facts, the facts related
14   to both of those, I think are now fair game. And
15   they're important for Mattel to know before it
16   conducts its testing.
17       Those were the topics. There were some other
18   issues that we put at play including the documents
19   that Mr. Lockhart reviewed to prepare for his
20   deposition. I don't know if the Court wants to hear
21   argument on that, but --
22       JUDGE INFANTE: I think you should submit on
23   that. I don't know what else you can say.
24       MR. COREY: I'm just trying to make sure
25   I don't forget anything like I did before. So with
                                   Page 90

1    that, I'm prepared to submit, Your Honor.
2       JUDGE INFANTE: Okay. Thank you.
3       MR. KENNEDY: Obviously, Your Honor, I have
4    to agree with a lot of what you said since we had
5    already agreed to produce people with regard to a
6    number --
7       JUDGE INFANTE: Sure.
8       MR. KENNEDY: -- of the topics. There's
9    always the devil in the details. And what I'm
10   concerned about is when we get in there, we're going
11   to hear Judge Infante granted our motion in its
12   entirety.
13       And for example, in Mattel's reply memo at
14   pages 4 and 5, they set forth what presumably are
15   their examples of the most egregious offenses here.
16   For example, on Topic No. 11 their complaint is that
17   Ms. Harris could not identify any of the boards shown
18   to retailers. We're talking about going back to 2000,
19   making house calls, and that she wasn't there.
20       As far as I know, there is nobody at MGA who
21   was part of the personal team that did it. But even
22   if they were, to say which PowerPoint slides or boards
23   did you show.
24       JUDGE INFANTE: The way you make your record
25   at any such deposition, particularly when you're
                                   Page 91

1    dealing with things that are a few years old, is you
2    put on the record everything that the witness did to
3    prepare for the deposition and what was available and
4    not available. And then the Court has a record to
5    determine reasonableness. But on the record I have
6    examined so far, I don't think there was adequate
7    preparation. If I had another record in front of me,
8    I might decide otherwise.
9       MR. KENNEDY: And I'm not quarreling with the
10   ruling, I just know how creative our opponents are and
11   particularly anything that was cited specifically.
12   And I'm just worried about hearing a ruling that
13   Judge Infante specifically said Ms. Harris should know
14   which boards were shown to each retailer. I'm just
15   trying to make sure that nobody is under that
16   misimpression.
17       For Topics 13 and 14 and 27 and 28. Their
18   complaint that they cite about 13 and 14 is that
19   Ms. Harris knew nothing about distribution agreements
20   that had been negotiated in 2000. And of course
21   that's what Mattel contends in this case. Her
22   testimony was she searched thoroughly and the first
23   agreement was with the Spanish distributor --
24       JUDGE INFANTE: Right.
25       MR. KENNEDY: -- et cetera. This sounds
                                   Page 92

23  (Pages 89 to 92)

Exhibit 29, P. 547

HEARING                                                                    01/03/08

1   almost as though they're seeking an order to compel
2   preparation of a witness who will subscribe to your
3   opponent's theory of the case.
4         Because in 27 and 28, the same thing happens
5   with regard to Elise Cloonan, that we didn't have any
6   record of payments that we had made to her for the
7   reason that we deny there were any payments and she
8   denies receiving any payments.
9         So again, my concern is just that where these
10  were highlighted, as to what was really wrong with the
11  witnesses. And just trying to figure out how we craft
12  an order that doesn't have Your Honor saying yes, you
13  have to do all of this?
14        JUDGE INFANTE: I think I will issue my order
15  on this one. It probably won't be ready for a few days.
16        MR. KENNEDY: And if I might, on that same
17  vein, on Topic 34, that asks for all documents or all
18  sworn statements that relate to Bratz. At page 27 and
19  28 of the reply memo, they complain that we weren't
20  prepared to talk about Exhibit 501, which was an
21  office action of the government because it relates to
22  sworn statements.
23        Now, it's only shifting one word, but the P
24  is under a very different shell. It was sworn
25  statements that relate to Bratz and the motion wants

Page 93

1   JUDGE INFANTE: Right. You've got additional
2   topics.
3         MR. COREY: That's the basis for the request.
4         JUDGE INFANTE: I think two days is
5   excessive. That's my impression. And I can't judge
6   whether a day is enough time or not, because I don't
7   know what she knows and what you're going to ask her
8   on the new topics. But I think you're entitled to a
9   half day on what has been covered here.
10        MR. COREY: Before she had been designated on
11  the additional topics, MGA agreed to produce her for
12  two days. And the Court has seen those transcripts.
13        JUDGE INFANTE: I don't know that I read that
14  the same way you do.
15        MR. COREY: This is -- in MGA's own
16  estimation, they thought it would take two days to
17  cover just the topics in the motion.
18        JUDGE INFANTE: I'd rather not speak to that,
19  because I can't judge how much time it will take.
20        MR. COREY: I don't think four hours is
21  sufficient for the specific topics that she's covered.
22  And I'd ask for a day for that.
23        JUDGE INFANTE: Well, I'm not going to put
24  any time limit on her. I'm putting a four-hour time
25  limit on Harris.

Page 95

1   an order that we have to have somebody knowledgeable
2   on all documents that relate to a sworn statement, a
3   careful reordering.
4         So obviously, we're not quarreling, we
5   already agreed that there needed to be
6   supplementation. We can't defend the objections that
7   were made, but I am concerned about the Bratz. So
8   with that in mind, I'm prepared to submit.
9         JUDGE INFANTE: Okay. I appreciate that.
10  I think there should be some time
11  limitations. And I've indicated on Harris, I think it
12  should be capped at four hours. On Tonnu, I don't
13  have any time limitation at all. I should just let
14  nature take its course, I guess. Because you've
15  agreed to bring her back.
16        MR. KENNEDY: Agreed to bring her back for a
17  day.
18        JUDGE INFANTE: For a day.
19        MR. KENNEDY: Yes.
20        MR. COREY: And they've agreed to bring her
21  back for a day for not only the topics that are at
22  issue in this motion --
23        JUDGE INFANTE: Right.
24        MR. COREY: -- but the additional topics on
25  which she's designated.

Page 94

1         MR. COREY: Thank you, Your Honor.
2         And then respectfully, what I request is that
3   the same order be entered for this motion as was
4   entered on the prior motion. I think that's
5   completely appropriate.
6         JUDGE INFANTE: With respect?
7         MR. COREY: With respect to the objections on
8   the topics and the preparation.
9         JUDGE INFANTE: Okay. I'll take this under
10  submission. I gave you some tentative rulings. I'll
11  take it under submission. It might be a week before
12  I get a ruling out.
13        MR. KENNEDY: And if at all possible, we
14  would urge the Court to impose time limits. Whatever
15  you do, it's going to be less than what they're going
16  to need. I mean, we've had cases here where they're
17  averaging four topics a day or whatever. So we would --
18        JUDGE INFANTE: I'll consider it.
19        MR. KENNEDY: -- invite time limits.
20        JUDGE INFANTE: It's under submission.
21        MR. COREY: Thank you, Your Honor.
22        JUDGE INFANTE: Okay. I think that concludes
23  our hearing today. So we're off the record.
24
25

Page 96

24  (Pages 93 to 96)

HEARING                                                          01/03/08

```
 1        I, the undersigned, a Certified Shorthand
 2  Reporter of the State of California, do hereby
 3  certify:
 4        That the foregoing proceedings were taken
 5  before me at the time and place herein set forth; that
 6  any witnesses in the foregoing proceedings, prior to
 7  testifying, were duly sworn; that a record of the
 8  proceedings was made by me using machine shorthand
 9  which was thereafter transcribed under my direction;
10  that the foregoing transcript is a true record of the
11  testimony given.
12        Further, that if the foregoing pertains to
13  the original transcript of a deposition in a Federal
14  Case, before completion of the proceedings, review of
15  the transcript [ ] was [ ] was not requested.
16        I further certify that I am neither
17  financially interested in the action nor a relative or
18  employee of any attorney or party to this action.
19        IN WITNESS WHEREOF, I have this date
20  subscribed my name.
21
22  Dated:
23
24        _____
          DANA FREED
          CSR No. 10602
25                              Page  97
```

25  (Page  97)

Exhibit 29, P. 349

HEARING                                                                01/03/08

**A**

abeyance 71:7
ability 25:6
able 11:15 12:17
  25:6 31:24 67:1
  80:4
absolute 14:4
absolutely 35:15
  78:5
abuse 83:6
accept 29:4 76:20
accessories 22:5
accountant 51:18
accrue 36:5
acquire 58:7
act 11:1
acting 36:18,20
action 93:21 97:17
  97:18
actions 30:14
activity 9:6
acts 6:17 9:7,10,13
  9:15,24 10:2,21
  14:22 30:12 74:5
actual 37:3 47:1
  61:19
ad 64:2
add 13:23 39:24 64:1
addition 12:3 29:9
additional 58:12
  62:15 65:11,16
  72:3 76:19 78:21
  78:23 81:11 86:18
  89:6 94:24 95:1,11
address 37:12 45:5
  60:8 81:12 85:23
adequate 26:6 84:3
  86:15 87:21 92:6
adequately 8:1
  38:21 82:14,24
  84:16 87:9
adheres 49:14
adjust 24:18
admissibility 28:22
admissible 46:23
admission 17:5,6
admissions 16:22
  19:7 25:13 26:5
admit 17:12 18:10
  19:25 20:15 21:5,6
  21:10,13 22:20
  23:1 25:2,17,20
  admitted 20:10,17
  20:17,23 24:7

31:12
adopt 63:8
adopted 45:9
advance 63:16
Advanced 53:10
advertising 37:18
advice 44:17,20
  45:14,24 46:4,13
  46:21,23 51:19,24
  52:6,19,21
affirmative 59:12
affordable 12:18
age 50:12,12
agent 19:13 51:23
ago 48:1
agree 9:21 30:25
  32:19 65:4 66:20
  68:7,22 75:9 91:4
agreed 13:3 17:16
  32:11,13 68:15
  91:5 94:5,15,16,20
  95:11
agreement 7:18
  29:15 75:2,7 77:6
  92:23
agreements 35:23
  64:17 74:4,6 82:20
  92:19
ahead 13:12
alarming 69:15
Alger 3:10 4:8,8 40:3
  40:3,8 42:7 54:24
  54:24 57:16,25
  58:3,17 64:23 66:1
  66:7 71:12,21 85:7
  85:11
alleged 6:16 9:13
  10:1,21 14:22 31:4
  31:5,6 36:15,16
Allen 44:6
allow 71:20 75:16
allowed 18:5 70:4
allowing 68:10,19
all-day 41:1
alternative 58:19
amazed 56:5
ambient 45:15
ambit 79:2
amend 23:4 34:8,15
amended 32:6
American 68:8,16
amount 40:11 88:14
Amsted 45:18
Amy 3:16 4:13
analogy 50:14 51:11

analysis 12:23 22:17
  22:18 23:19
and/or 30:18 33:15
  42:11 43:25 67:2
  75:19
Angeles 3:12
anonymous 40:15
  40:16
answer 16:21 19:16
  19:21 21:18,18
  23:20 24:2 25:16
  31:23 66:20 87:3
  88:6
answered 19:9,20
  24:7
answers 18:2,3,25
  25:12,18 26:6
  58:25 59:23
anticipated 56:7
anticipation 49:17
  54:9
anxiety 33:24
Anyway 43:12
apex 40:12
appearances 3:1 4:6
appended 50:24
application 48:22
  49:16 51:21
applications 47:19
applied 15:3 28:8
  68:15
applies 49:16 60:11
  61:2
apply 50:17 56:9,11
  60:15,25
applying 27:6
appreciate 14:5 37:7
  41:8 43:8 53:17
  68:4 94:9
apprise 34:22
appropriate 20:8,18
  20:19 22:22 23:8
  25:5 35:13 41:14
  67:18 96:5
approximately
  10:19 12:13 16:6
approximations
  16:3
areas 57:25 76:19
argue 5:16,25 6:9
  12:8 16:25 18:1
  29:25
argued 18:21
argues 49:13
arguing 29:22

argument 34:6,8,12
  34:20 38:8 54:10
  59:16 61:2,7 62:24
  63:11 64:14,18
  90:21
arguments 32:24
  41:12 53:17 56:8
  56:10,17 68:5 82:7
ARPS 3:15
articulated 36:17
  63:20
asked 20:9 22:2 25:2
  41:20,20 74:15
  79:22
asking 29:17 88:25
asks 93:17
aspect 28:12
aspects 79:11
assert 14:16
asserted 8:17 11:12
  31:7 34:12 59:8
assertion 7:15 29:15
asserts 43:19
assist 51:10 52:20
assisting 51:19,24
  52:5
associated 85:21
assuming 59:22
  31:25 57:5 64:19
assure 57:17
assured 59:11
as-filed 50:22
attached 6:18 34:15
  43:24 53:15 88:7
attachments 45:16
attack 10:4 14:14
attempt 10:3 18:8
  57:17
attempted 14:16
  53:21
attempting 4:24
attention 50:25
  71:15
attorney 44:6 58:15
  69:9 83:14 97:18
attorneys 3:5,11,17
  45:17 58:9,9 68:19
  68:19 85:9
attorney's 77:18
attorney/client
  44:14,15 50:9,16
  52:15 53:20 54:7
  55:14 60:24
August 16:20 21:3
  22:25 40:17

authorities 45:9,10
  53:4
authority 7:24 45:21
  49:14 53:23 54:1
  60:13
available 12:14,18
  13:21 23:2,3 44:22
  48:15,19,25 54:14
  58:6 69:20 74:9
  92:3,4
averaging 96:17
avoid 31:24 49:7
  57:8
await 90:1
award 85:2
awarding 15:17
aware 17:24 18:9
  23:11 24:10 32:16
  32:17 33:14 45:2
  46:11

**B**

B 3:11 4:10
back 12:9,22 18:5
  21:3 31:11,13
  36:24 42:1,17
  43:12 51:12 52:18
  53:19 55:25 56:25
  72:15 88:16 91:18
  94:15,16,21
bad 29:7
balance 14:3 41:13
balancing 15:4,6
bandying 4:21 73:14
Bar 48:18,22 49:8
  50:1
baseless 67:5
basics 51:13
basis 17:13 87:7
  88:6 90:4 95:3
bat 52:13
Bates 7:23 43:15,15
  54:6
Bates-identified
  43:15
battery 64:4,6
bear 9:22
beer 12:4
began 61:12
beginning 2:16 77:2
  77:2
behalf 4:7,8 21:1
  60:5,19 73:18
  82:16

Exhibit 25, P. 350

believe 5:5,11,13 8:2
9:6,14 10:2,8,24
14:8,16,23 20:22
21:7 23:5,7 24:1,6
25:16 31:9 36:17
37:9,23 44:7 58:11
58:18 59:1 60:11
62:14 64:13 69:23
70:2 71:25 72:8,12
76:2,18 81:10,13
81:25 83:6 86:14
87:13,18 89:5,20
bench 68:18
beneficial 12:12
benefit 12:23 87:16
best 53:4
better 50:15 52:24
57:22
beyond 13:13 17:21
18:15 30:24 38:6
87:15
bit 36:13 61:9,10
blanket 87:6
Block's 37:25
board 41:18 56:17
boards 91:17,22
92:14
bottom 55:8 57:10
57:14
bounds 34:3
Boy 29:8
Bratz 19:18,19 28:19
30:16,19 33:16
34:2 35:9,23 37:14
37:16 42:12 49:4
63:3,10 70:9 79:15
93:18,25 94:7
Bratz/Mattel 35:25
breach 34:25 80:11
breached 74:5
break 73:4,5
brief 18:4 27:3 32:5
66:22 70:5 73:20
85:25
briefed 54:25 60:6
73:21
briefing 5:23 64:11
71:15,17
briefly 28:25 38:3
49:13 60:8 66:7
80:22 81:22
briefs 81:13
bring 5:16 38:12
71:14 94:15,16,20
bringing 83:15

brought 33:4 39:14
66:4 67:14 71:5
73:12
Brower 34:13,19,23
Brower's 34:21
Bryant 1:3,11 2:3,11
3:3 4:11,12 16:21
17:6,15 18:8,10,11
18:17,21 19:5,16
19:17,21,25 20:11
20:13 21:1,4,8,8,17
21:22 22:7,16
25:16,19 26:21
29:2 30:17 31:4,6
31:13 33:14 34:1
34:25 35:8,16,22
36:16,25 39:17
40:5,14 55:4,7,19
55:23,25 56:24
58:10,12,13 59:2,4
60:5,19 61:22
62:13,21 64:17
65:6 66:20,22
69:24 71:7 73:12
73:18,23 75:8,19
75:22 77:14 78:3
79:5 80:15
Bryant's 9:12 14:18
17:4 18:23 19:12
24:4 25:6 28:13
29:6 31:19 40:8
42:11 55:19,21
56:1 58:21,24
66:21 67:6,9,12
69:12 74:2 77:11
80:10 81:5
bucket 12:4,16
buckets 11:14
bullet 57:21 63:1
70:6
burden 8:12,24 9:22
10:5 14:7,9,14
28:25 38:23 55:1
69:8 87:14
burdening 86:16
burdens 25:14
business 80:7
butted 65:12
buy 62:12
b-a-n-d-y-i-n-g
73:14

——— C ———
Cal 27:24
California 1:1,15 2:1

2:16 3:6,12,18 4:1
27:23 97:2
call 12:4 42:14
calls 91:19
camera 46:11 51:2
campaigns 37:18
candor 48:16
cap 88:19
capped 94:12
Cardiovascular
53:10
careful 68:9 94:3
carries 29:15
Carter 1:3 2:3 3:3
4:11,12 9:12 14:18
16:21 21:1,4,8
25:19 26:21 39:17
60:5,19 61:22
64:17 65:6 71:7
73:18 80:10
case 6:19 7:20,21
10:18 13:7,11
14:11,13 18:19
22:13 23:15 24:8
24:14,24 27:23
28:24 31:16 32:21
33:21,23 35:14
36:3 40:10 45:8,9
45:10 48:4 50:3,6
50:18,19,24 51:20
52:6 53:5,7,8,10,11
56:8,24 61:2 63:25
65:13 66:10 68:7
69:2,10,23 70:12
79:12 85:2 92:21
93:3 97:14
cases 10:17 33:3,18
50:15 51:5 96:16
categories 10:16
category 35:10
cause 14:10,10 42:2
causing 34:25
caution 68:21
cautious 68:10
Center 2:15 3:17
CENTRAL 1:1 2:1
CEO 39:18 41:5,17
certain 74:4
certainly 32:11 41:1
47:1 59:6 71:24
72:18 84:14
Certified 2:18 97:1
certify 97:3,16
cetera 38:23,23
69:13 83:21 92:25

chairman 39:19 41:5
41:18
challenged 9:3,4,8
14:3
Chan 6:2
chance 12:21
Changco 82:11
change 24:25 25:7
49:5
changes 24:18 25:7
changing 24:22
characterization
46:15
chill 56:14
chilling 60:22
choice 21:15
Christmas 54:22
chronologically 6:3
circle 7:8 32:5
Circuit 48:4 49:17
60:12,14 68:9
circumstance 49:9
49:10
circumstances
30:13,15 65:2
83:16 85:2 87:20
circumstantial
80:18
cite 7:20 45:12 60:13
92:18
cited 10:17 21:25
36:4 45:2,9 53:5
54:1 68:17 92:11
Civil 10:11
claim 8:13 27:19
34:18 35:18,20,21
36:6,8 87:6
claimed 14:22 35:22
59:21
claims 27:9 31:6
34:12,17 38:12
40:19 53:25 69:16
69:16 73:24
claim's 6:24
clarify 58:4 71:25
clarity 85:8
clawback 51:3
Clean 89:17
clear 9:6 14:6 25:12
25:13 28:4 32:24
41:21 42:18,19,22
53:6,8,11 64:24
66:11 69:20 74:7
76:3 81:14,16
clearer 74:17

clearing 62:9
clearly 7:25 14:14
18:20 19:11 26:12
31:23 40:12,23
45:11 46:6,12 47:3
68:25
client 48:4 51:20,25
52:3,11,16,18
client's 51:6
clippings 40:22
Cloonan 93:5
close 9:11 23:24
25:6 76:9
closer 46:4
closest 51:11
collected 55:19
collection 87:12
come 12:17,22 13:19
42:1 75:7 79:4
comes 14:12,12
29:20 35:13 46:4
66:21 77:13,13,14
77:14
coming 12:23 32:5
52:4
comment 68:6
comments 15:2 66:6
73:20
commerce 6:25 8:12
8:19 9:2,18,19,23
10:23,23 11:22
common 73:1
commonsensical
29:5
communicated 51:7
communication
9:19 46:20,22 52:3
52:4,10,14,16,17
60:23
communications
44:16,19,21,25
56:15 60:22,24
company 33:19 41:5
compel 4:5 6:5
13:10 26:22 39:17
42:9,13 54:16
64:13 73:12 78:13
78:14 82:23 87:4
compelled 18:2 19:9
compelling 14:23
41:14 84:5 87:9
compels 42:23
competent 42:20
83:4,9 84:20
competently 82:25

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

Exhibit 29, P. 351

84:17
competing 71:5
competitor 34:9,10
  35:2
competitors 78:2
complain 93:19
complaint 91:16
  92:18
complete 18:3
completed 5:24
completely 12:11
  96:5
completion 97:14
compliance 25:21
  85:4
complicated 22:11
complied 15:12 23:6
  39:10 42:6 87:14
comply 18:11 20:3
  23:5 26:2 83:10,11
  84:22
comprehensively
  81:21
computer 55:12,19
  56:25 57:2,4,5
  58:22 61:8
computers 57:11
  58:23 59:9,10,12
  59:22 61:10,20,23
  62:19 66:24 67:2
  69:13
concealed 77:11
concede 50:4
conceded 72:1
conception 30:17
  33:15 34:1
concern 25:9 31:10
  93:9
concerned 63:7
  91:10 94:7
concerning 31:19
concerns 60:20
  68:16
concluded 63:14,19
concludes 96:22
condition 69:12
conditions 25:9
conduct 7:16 28:13
  31:4,6 34:24 36:16
conducted 21:12
  63:3,10 70:8
conducting 86:16
conducts 90:16
confer 4:24 7:6
  17:15 18:14 31:9

32:19 37:24 73:6
  77:3
confers 11:9
confessed 58:22
confidential 44:15
  44:18,25 47:2,7
  52:9 77:17,18
confidentiality 48:7
  48:11 49:12
confirmed 37:25
  66:23
conflicting 55:3 56:5
confusion 59:3
  61:20
connect 77:9 78:8
connected 78:10
connection 34:7
  36:11 42:12 79:21
Connor 50:15
conservative 68:18
consider 39:16 42:9
  70:19 77:1 96:18
consideration 51:2
  58:8
considerations 15:6
considered 15:1,15
  41:11
considering 37:7
consist 44:20
consistent 69:4
consists 11:14
Consolidated 1:10
  2:10
constitute 9:10
consult 19:1,2,10
consultant 67:14
consultants 61:16
contacted 82:4
contain 44:18,19,25
  45:14 54:12
containing 44:4
contends 92:1
contention 24:15
  35:3 55:13 78:6,7
contentions 24:25
  25:7
contest 20:1 24:8
contested 24:8
contesting 25:1
continue 52:23
contract 20:2 24:4,5
  24:9,10,14 26:5
  34:25
contracts 80:12,13
contrast 27:22

control 17:9,22
  18:16 19:12,14
  59:21
convenience 45:12
conversation 79:5
cookies 62:9
coordinating 60:18
copied 35:17
copy 70:15 87:12
copying 31:15,16
copyright 22:8 35:18
copyrighted 21:23
  21:24
Corey 3:10 4:7,7 5:9
  5:13 6:7 25:25 33:1
  33:1 38:8 39:12
  43:8 57:22 76:25
  80:25 81:4,12,15
  81:18 82:1 83:22
  83:25 84:4,10
  85:20,20,25 86:4,7
  88:13,21 89:8,16
  89:19 90:1,7,24
  94:20,24 95:3,10
  95:15,20 96:1,7,21
Corey's 27:5 82:7
corporate 38:20
corporation 1:7 2:7
  3:8 82:16 88:2
correct 5:9,12,13 8:6
  8:7,13,14,22 10:24
  11:3 19:8 32:18
  36:14 44:11 82:1
  83:22 85:10
correctly 16:15
corroborates 28:19
cost 12:9,23 15:15
costs 13:1 15:14,18
  15:19 85:9
counsel 4:5 13:2
  19:1,11,13 55:4,19
  56:10,16 60:17,18
  61:3,21,21 66:22
  67:6,9,12 69:11
  73:6 75:19,19,
  79:17
counsel's 55:21
counterclaims 6:19
countermotion 60:2
countries 41:6
country 64:3
couple 30:7 62:23
  64:9 88:22
course 46:16 67:23
  68:13 92:20 94:14

court 1:1 2:1 12:20
  14:2 15:13 18:9,9
  19:25 20:8,9,10,22
  27:23,25 29:22
  30:5 33:25 37:7
  44:23 45:6,6 46:11
  47:5 50:22 51:1
  53:25 55:1 56:4
  59:13 63:7 67:15
  67:16,21,23 71:13
  77:1 78:15 81:19
  83:20 84:4 85:1
  90:3,20 92:4 95:12
  96:14
courts 15:15 22:9
  44:23 45:4 58:8
  60:13 68:9,13,14
  68:15
Court's 16:20 20:15
  45:12 47:25 48:1
  50:1 71:14 85:14
cover 43:23 44:12
  73:2 95:17
covered 81:20 95:9
  95:21
craft 93:11
created 35:23 56:24
creating 22:7 37:16
creation 30:18 33:15
  34:2 35:9 79:18,20
creative 92:10
critical 7:25 10:9
  56:23
cross 54:17,20 60:7
  72:22
crossed 9:19,22
cross-examination
  80:7
crucial 63:24 69:2,3
  70:11
CSR 1:22 97:25
culpability 9:5
current 60:17
currently 76:1
custodian 55:17
custody 17:9,22
  18:15 19:12,14
cutoff 16:13
cutting 31:17
CV 1:5 2:5
C-h-a-n-g-c-o 82:11

        D

D 3:16
DANA 1:21 2:17

97:24
data 55:8
date 4:18,20 5:6,12
  16:13 25:23 27:13
  29:13 30:21 32:9
  32:12,15 36:22
  37:8,9 38:1 39:5,7
  74:10 76:6 97:19
Dated 97:22
dates 59:4
dating 56:25
day 4:22 13:19 61:9
  61:23 76:2 89:3
  94:17,18,21 95:6,9
  95:22 96:17
days 25:21 64:3
  89:10 93:15 95:4
  95:12,16
deal 68:14
dealing 56:9 92:1
deals 40:15
dealt 50:18 87:7
debate 49:25
December 16:23,24
  39:20,21,22 48:1
  54:19,21
decide 5:4 13:12
  28:2 92:8
decided 15:17 50:15
  88:4
decision 53:19 90:1
decisions 15:15 54:1
  54:2 68:17
declaration 27:6
  29:6 34:16,21 46:2
  46:6,8 47:3,12,13
  67:4 71:18
declarations 61:22
declare 47:1
declined 20:10,13
deem 20:20,23
deemed 20:9
deeming 20:16,17
defective 18:6 61:15
  77:5
defend 18:8 94:6
defendant 3:8 17:9
  17:11,12,13
defendants 1:8 2:8
  3:14 55:13
defending 78:13
Defenses 26:23
defer 12:20
deferred 39:4
defines 30:20,21

HEARING

defining 36:15
degree 17:3 68:21
Delaware 1:6 2:6 3:8
delay 60:21
delivered 13:22
demand 11:13
demanded 41:2
denied 15:21 19:7 20:20 23:9 25:12 39:15 54:5 72:22 72:23 75:14 83:15 84:21 85:1
denies 17:13 93:8
deny 8:2 17:12 18:10 19:25 20:15 21:5,6 21:11,13 22:21 23:1 25:17,20 43:1 82:21 86:13,20,22 93:7
denying 26:16 27:4 42:23 71:3,9 84:2
depending 29:19
deponent 42:20
deponents 38:20
deponent's 69:9
depose 65:2,9 68:10
deposed 65:6 68:20 71:8
deposition 39:18 40:9 41:1,13,15,16 41:21,23 54:15,18 55:17 57:7 58:20 58:21 59:23 61:3 62:15 64:16 65:4 65:18 66:25 67:24 69:24 71:19 83:17 83:19 86:17 87:19 89:2,10 90:20 91:25 92:3 97:13
depositions 65:11 65:13,16,22 67:21 68:1 72:3,10 80:3
deprivation 40:9
derivative 17:7,18 19:18 21:16,24 22:10
description 51:6
design 30:18 33:15 34:2
designated 70:22 74:8,15,19 77:17 78:22 89:5,13,20 94:25 95:10
designed 28:20

designee 89:2
desktop 67:10
destroyed 43:20
destroys 48:6 49:11
destruction 63:2
destructive 63:3,6,9 64:6 66:8 70:8
details 91:9
determine 35:16 57:8 92:5
determining 27:8,21 58:8
develop 23:14
developed 22:16
developing 52:20
devil 91:9
devoted 18:3
de-facto 83:7
died 50:8
difference 50:8 60:18
different 18:22 28:7 28:8 31:22 93:24
diligent 66:23
direct 50:24
directed 5:8 23:10 32:16
direction 97:9
directions 55:1
directly 10:9 50:6 74:1
disclose 22:18 48:16 48:17
disclosed 48:7,8
disclosure 90:12
disclosures 25:22
discover 69:8
discoverability 28:23
discoverable 53:7,9 53:12
discovered 45:4
discovering 15:14
discovery 4:5 10:3 14:11 16:12,13 26:22 28:17 30:3 32:6,21 34:4 38:13 38:17 42:24 43:17 58:10 68:14 70:3,4 73:23 76:10 85:14
discreet 35:18
discretion 15:13 83:5
discussed 21:16
dismiss 9:4

disparate 22:1
dispute 16:13 21:2 78:2
disputed 46:15
disqualification 56:16
distinguish 52:12
distinguished 52:1
distract 56:12
distraction 60:21
distribution 92:19
distributor 92:23
district 1:1,1 2:1,1 60:13 68:15
Diva 75:1 79:7,8,19 79:20
DIVISION 1:2 2:2
doctrine 55:15
document 11:25 25:1 42:10,25 44:3 87:12
documents 6:23 10:18,19,20 11:15 40:20,21 43:15,16 43:20 44:4,5 45:11 46:9,12 56:24 57:2 57:3 59:11 62:19 64:2,6,8 66:9,16,18 67:7,10,17 87:13 90:12,18 93:17 94:2
doing 12:19
doll 22:5 44:22 46:14 48:15,19,25 49:4 79:10
dolls 19:3,18 63:4
door 25:6 75:22
dots 77:10 78:8,10
drafted 77:24
draw 51:9
drawing 46:20 48:14 48:19 50:22
drawings 19:4,19 35:18 43:24 44:4 44:13,17,21,21,24 45:13,23 46:3,14 46:14,16,16 47:2,6 47:22 49:2,12 51:17 53:9,13 54:5 63:10 66:16 70:9 79:13
drive 56:3 67:7,10
drives 55:6,6,12,20 57:12 61:8 66:12 66:19 67:17 69:13

70:5
due 23:25 41:18
duly 97:7
duties 41:17 74:2,3,6
duty 27:8,21 48:16
Dylan 3:11 4:10 6:12

E

earlier 7:9 32:12 55:24
early 59:8
easier 43:5
EASTERN 1:2 2:2
Eckert 39:18 40:6,15 40:23 41:15
Eckert's 40:21 41:17
educated 74:14 75:12,24,25 76:5 82:24 84:16
EDWARD 1:14 2:14
EED 11:15
effect 6:24 8:18
effectively 7:7 17:19
effects 60:22
effort 62:16 66:24
egregious 91:15
eight 89:9,11
Eighth 68:8
either 23:1 34:9 39:14 64:11,13,18 64:19 75:10,23 76:4 77:17
elected 21:17
election 72:9
electronic 15:9 79:10 87:13
electronically 13:25
element 6:24 52:15 53:20
elements 8:18
Eli 27:24
elicit 79:25 80:5
eliminator 62:4
Elise 93:5
EMANUEL 3:9
Embarcadero 2:15 3:17
embrace 69:6
employee 36:18,21 74:3 97:18
employees 41:5 87:21
employment 9:12 14:18 75:2
enable 17:12

encouraged 34:23
ended 79:14
enforce 16:20 64:21 85:14
enforceability 20:1 20:2
enforceable 24:14
enforcement 24:9 24:11
engage 34:23
engaged 59:9 66:13
enlisted 51:9
enter 4:6
entered 96:3,4
entertainment 1:11 2:11 3:14,14 73:19
entire 18:3 69:23 79:11 82:21
entirely 31:22
entirety 91:12
entities 4:16
entitled 7:13 9:14 10:2,8,10 57:9,10 78:9 87:8 88:1,2 89:23 95:8
equally 60:25
equivalent 50:19
escaped 38:1
essential 69:5,22 70:11
essentially 25:12 55:16 68:23 79:1
establish 14:9
established 46:7,21 56:18
establishes 14:7
establishing 8:18
estimation 95:16
et 38:23,23 69:13 83:21 92:25
Eve 54:22
event 12:13 34:21 61:4 69:6
evidence 27:9,22 30:13 46:1,23,24 49:20 56:21,22,22 61:13 62:4,6 63:2,6 63:14,19 66:10,14 67:19 71:18 80:19 83:12 84:23
evidentiary 66:11
ex 49:15
exact 31:15
exactly 22:22 33:2 38:10 45:18

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877-955-3855

Exhibit _29_, P._353_

HEARING

01/03/08

examination 59:10
examine 53:20
  62:18 64:7
examined 62:5,13
  63:18 67:6 92:6
example 6:4 9:11
  10:16 30:9,22
  74:17 79:17 91:13
  91:16
examples 22:3 91:15
exceed 65:21
exceptions 77:16
excessive 95:5
exclusively 67:12
excuse 26:25 75:16
  78:3
exhausting 62:2
exhibit 27:5,12
  34:16 70:22 72:16
  93:20
exhibits 71:18 87:4
exist 78:19
existed 61:21
existence 55:6
exists 9:7 28:3
exit 81:5
expect 25:4
expectation 47:2,6
  48:6,11 49:11
expected 47:4 49:2
expedition 65:3
expense 60:21 82:23
  83:20 84:16 85:8
  86:16 87:15
expert 22:12,14,16
  23:18,25 25:22
explained 11:16
explanation 7:2
  55:10
explored 62:21
  76:20
expressed 60:20
expressly 21:9,19
extended 51:21
extensive 59:9
extensively 63:13
  67:7
extent 39:13 80:18
extraordinary 17:3
eyes 77:18
e-mail 8:4,10 11:24
  15:10,11
e-mails 6:16,18 8:3
  8:5,21 9:8,9 13:20
  14:17,19,21 15:8

15:22,23,23

**F**

face 6:23
facially 20:4 77:4
fact 7:21 9:9 13:20
  22:25 25:11 28:14
  28:18 48:12,18,23
  48:24 49:6,6,10
  53:14 55:2 60:16
  62:3 63:12,15 67:5
  74:22 77:8 80:6,15
factor 13:6
factors 58:7
facts 7:17 28:4,5
  36:1,7 55:18 59:15
  63:1,5,23 70:8
  73:24 74:21 78:4
  78:19,23,24,25
  90:13,13
failed 18:19 74:10
Failure 83:11 84:22
fair 31:21 66:15
  90:14
fairly 11:16 16:15
  73:22
fall 11:13 45:15
falls 35:9 67:24
false 67:3
familiar 67:22
far 89:1 91:20 92:6
fashion 45:1 46:4
fashionable 50:3
favor 15:18 80:24
fax 43:22,25 44:2,12
  53:15
February 22:19
  25:24,25 26:1,3,14
Federal 10:11 97:13
fee 64:16
feed 77:22
feel 73:2 82:14
feelings 28:19
fees 83:15,20 85:9
Figueroa 3:12
figure 51:1,4,5 93:11
figured 31:23
file 13:9,12 28:2
  51:20
filed 4:18 5:20,21
  7:11 16:22 17:24
  29:13 36:12 39:19
  54:19,22
filling 49:15
finally 29:10 88:9

financially 97:17
find 26:6 28:4,5
  36:20 41:13 54:5,8
  55:17 59:15 69:19
  69:21 70:9 82:9
  84:2 85:1
finding 4:25
finds 29:22
fine 6:7 16:5 89:19
  89:21
finely 31:17
finished 90:5
firm 59:20 65:10
firm's 69:11
first 4:6 7:12,14 17:6
  28:10 29:4 32:16
  32:17 33:14 35:7
  36:1,24 38:3 45:22
  46:19 47:9,12
  48:14 49:24 52:15
  54:23 62:14 63:5
  68:6 69:25 70:6
  82:4 92:22
fishing 65:3
flippant 38:7
FLOM 3:15
Floor 3:12,17
focus 88:12,14
focused 61:7
follows 57:20
follow-up 40:17
footnote 34:14
foregoing 97:4,6,10
  97:12
foreign 8:12 10:23
forensic 61:10,14,16
  61:24 67:14
forget 26:5 90:25
forgive 54:4
forgot 42:15 43:10
form 49:18,19,21
  63:9 71:18 78:25
format 8:4 15:9
former 56:10 58:9
  66:22 68:11,19
  69:12
formulated 27:7
forth 24:13 40:10
  59:19 70:5 79:16
  91:14 97:5
forums 38:5
forward 60:23 76:21
found 29:20 34:6
  44:23 67:8
foundation 46:6

four 3:17 55:5,22
  57:20 89:6,15
  94:12 95:20 96:17
four-hour 95:24
frame 14:21 23:4
  61:12
framed 33:8
Francisco 1:15 2:15
  3:6,18 4:1
frankly 90:10
fraud 6:17
FRD 45:13
free 6:9
FREED 1:21 2:17
  97:24
front 67:21 76:20
  76:7
full 7:8 8:4 15:21
  32:5 71:15 75:10
  76:17
fully 22:13 23:11
  73:21 75:13,24,25
function 33:23 48:13
fundamental 77:10
fundamentally
  77:25
fundamentals 53:19
funny 80:7
further 11:4 25:4
  28:12 41:9 71:16
  73:13 86:17 97:12
  97:16
future 56:15

**G**

game 31:21 90:14
gamesmanship 17:3
gathering 7:10
generalized 40:19
  40:24
generally 60:24
getting 7:4 8:1
give 5:22,24 16:11
  20:10 38:19 51:1
  53:1 86:5 88:13
  89:15
given 14:21 38:8
  45:14 58:12 87:2
  89:3 97:11
gives 67:23 88:12
giving 77:23
glad 44:9
go 6:3 12:21 13:9,9
  13:12 26:20 28:4
  28:10 29:8 34:9,19

53:19 54:23 61:2
  73:9 88:16
goes 10:9 33:7 51:12
  66:9
going 10:4 12:12,24
  14:14 16:11,15
  22:14 23:11,13
  26:19 27:22 36:24
  42:17 49:25 50:14
  56:12,14,15 60:23
  65:4 66:20 72:5,11
  73:4,6 77:10 78:4
  80:7,16,16 90:3
  91:10,18 95:7,23
  96:15,15
good 14:10,10 16:10
  38:8 42:2 50:11
  54:10 62:1 87:25
gotten 89:1
government 93:21
grant 15:7 25:20
  69:25 76:11,13
  81:23 82:5,6,7,22
  83:18 86:2,24 87:1
  87:11,24 88:3
granted 14:23 26:2
  39:2,3 42:19 65:23
  91:11
granting 42:18 65:9
  65:11 71:1,6 88:20
great 68:21
ground 81:21
guess 33:10 39:6
  54:6 94:14
guy 11:25 29:7

**H**

half 12:9,13 14:17
  40:22 41:16,25
  54:9 95:9
hand 11:24 72:15
handle 72:10
handling 55:12
  66:10
hands 55:23
happen 16:7
happened 11:8 56:1
  56:21 57:11 63:16
happens 13:11 50:18
  78:1 80:3 93:4
happy 36:10 37:5
hard 55:6,6,12,19
  56:3 57:12 61:8
  66:12,19 67:6,10
  67:17 69:13 70:4

HEARING

01/03/08

87:12
Harris 85:17 86:9,14
  89:13,16 91:17
  92:13,19 94:11
  95:25
haul 58:15
head 49:4,5
header 8:4
health 50:11,11
hear 4:22 5:3 32:2
  44:9 73:11 90:20
  91:11
heard 4:19 6:11 7:14
  65:15 73:7 76:23
  82:6 85:13
hearing 1:14 2:14
  4:4,18,20,23 5:6,12
  5:22,23 14:20
  29:13 36:23 92:12
  96:23
heart 21:2 28:24
heavily 7:21 53:11
heavy 69:8
HEDGES 3:9
heightened 61:5
held 44:24 45:1
help 11:22 35:1
herring 55:15
highlighted 93:10
highlighting 70:18
hire 50:13
hired 51:16,17,18
  52:19
hires 50:11
history 83:17
HK 3:14
Hmm 28:18
hobgoblin 55:13
hold 45:5 86:11
holder 52:11
holding 45:17,19
  71:7
holds 45:13
Honor 5:2,9,14 6:8
  6:12 11:5,7,14
  13:14 16:2 17:24
  19:8 20:25 21:3,4
  22:24 24:16 25:10
  25:24 26:25 30:11
  30:25 31:25 32:12
  32:18 33:1 38:14
  39:11,12,23 40:3
  41:10 42:4,7 48:3
  49:24 50:21 52:25
  54:13,24 56:8

57:16 58:1,17 60:4
  62:2 63:1,12 64:10
  64:25 65:5,8 66:1,7
  71:12,21,24 72:14
  72:18,25 73:17,23
  75:5,21 76:2,16,25
  81:10,22 82:1
  84:10,14 85:5,7,20
  88:14 91:1,3 93:12
  96:1,21
Honorable 1:14 2:14
Honor's 21:5 50:25
hope 78:15
hour 40:18 41:6
hours 41:17,25 58:12
  59:10 62:15 88:11
  89:15,24 94:12
  95:20
house 91:19
Hudnut 74:18 79:18
  79:25 82:10
huge 79:8
hundreds 47:16,17
  47:18 79:9
hysterectomy 33:22

I

idea 29:1 69:17
identical 23:10
identified 15:24
  36:21 40:14 41:4
  80:12
identify 91:17
ignore 67:5
illiterate 58:22
illustrations 47:19
illustrator 47:14
  51:16,17,23 52:7
images 55:6 61:10
  61:14,18,24
imaging 58:23 59:3
immunity 43:24 44:1
  54:8
impaired 33:23
implicit 46:13
important 52:8,9
  66:5 72:12 90:10
  90:15
importantly 17:20
  67:16
impose 96:14
imposed 31:25 32:10
imposing 39:5
impression 44:2
  51:15 88:11 95:5

improper 20:5 80:2
  85:15 87:2
improperly 36:18,20
  42:10
inadequate 86:12
inadvertently 43:19
  46:18
inappropriate 87:6
incapable 77:8
incarnation 51:5
incentive 28:2
inclined 63:8 76:11
  76:12 80:23 81:23
  82:5,6,7 86:13,19
  86:21,23 87:1,11
  87:24 89:14
include 74:1 88:18
including 29:2 30:14
  30:23 54:2 76:18
  90:18
inconsistency 69:15
inconsistent 7:16
indicate 24:21 53:22
indicated 4:21 24:16
  87:16 94:11
indicating 4:23 51:4
  60:14
individual 1:3 2:3
  3:3
Industries 4:13
  45:18
Infante 1:14 2:14
  4:4,17 5:3,10,15
  6:9 8:5,8,15,20,23
  9:17,25 10:5,10,22
  11:3,6 12:25 13:15
  14:1,25 16:5,10,19
  19:6 20:19,24
  23:22 25:11 26:1,9
  26:18 27:2 30:7,9
  30:12 31:2 32:2,9
  32:14,23 38:2,10
  38:16 39:13 40:1,7
  41:8,11 42:5,8 43:3
  43:6,12,45 45:20
  49:22 51:12,15
  53:1,17 54:14
  57:13,17,23 58:2,4
  59:25 64:21 65:24
  66:5 68:4 70:21
  71:16,22 72:5,8,15
  72:20 73:1,11
  76:11,22 80:23
  81:2,7,14,16,20,23
  82:3 83:24 84:1,8

84:11,15 85:6,10
  85:12,24 86:2,5,8
  88:16 89:7,14,17
  89:25 90:5,22 91:2
  91:7,11,24 92:13
  92:24 93:14 94:9
  94:18,23 95:1,4,13
  95:18,23 96:6,9,18
  96:20,22
information 6:21,22
  7:3,14,25 8:4,9
  10:9 13:3,25 17:8
  17:11,21 18:15
  19:11 21:13 22:20
  30:23 33:9,13
  34:25 35:6 37:21
  48:5,18,20 53:6,12
  53:14,23 56:19,23
  57:19,20 58:7 59:1
  59:6,7 62:3 63:23
  67:11 68:24,25
  69:1,9,21 70:10,11
  74:16 75:3,24
  77:12,17,21 78:18
  79:17,25 84:5
  87:22
informed 34:19
informing 63:15
infringement 35:19
initial 18:5 28:14
  32:7 69:7
initially 28:16 89:13
injury 50:19
inquire 58:1 66:15
  67:18 75:20
inquired 56:20
inquiring 59:23
inquiry 21:11,12
  28:12
inspected 61:19,24
  64:2
installed 62:8
instances 77:5
instruct 49:5
instructions 85:15
  87:3 88:5
insufficient 17:12
integrity 67:18
intellectual 31:20
  36:4
intensely 60:7
intent 34:22 38:6
  86:2
intention 52:7,8,8,11
intentional 83:7

interested 97:17
interesting 27:11
  72:11
interestingly 37:1
internal 27:13 31:25
Internet 62:9
interpretation 29:5
interrogatories 24:3
  24:16 78:8
interrogatory 24:7
  78:6
interstate 6:25 8:12
  8:18 9:1,18 10:23
  11:22
interview 81:5
introduced 46:18
introduces 24:23
introducing 80:1
invented 51:7
investigate 7:10
investigation 27:14
  28:11 31:12,14,18
  32:7 35:15 40:16
  40:17
investigations 30:15
  31:25
invite 96:19
involve 10:17 31:15
involved 7:10 17:3
  19:3 22:7,8 28:18
  30:17 31:15 33:15
  34:1 35:8 50:20
  56:13 58:24 75:6
involves 29:10 43:14
Irmen 62:5
irrelevant 14:17
  35:10
Irwin 58:20,21 59:5
Isaac 3:14 4:14
issue 10:5 12:24
  19:18 22:17 23:11
  24:5,11,13,23
  28:10 31:11 36:10
  36:15 37:2 41:14
  43:22 44:3,11,13
  45:11 54:25 62:18
  63:13,18,22 65:9
  66:8 73:20 89:4
  93:14 94:22
issues 6:15 22:15
  23:19 25:15 32:22
  45:8 60:7 68:14
  90:18
items 22:2 70:14

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877 955 3855

Exhibit 29, P. 355

HEARING

01/03/08

**J**

Jacoby 66:21 67:4
JAMS 2:15
January 1:16 2:17
4:1 15:13 39:10
42:6 83:11 85:4
Japanese 11:23
Jensen 81:24 82:12
job 1:23 86:9 87:25
John 3:5 4:11 73:18
73:12,19
Jolly 27:23 28:10
30:4 33:3,17,21
Jon 3:10 4:7 33:1
85:20
judge 4:4,17 5:3,10
5:15 6:9 8:5,8,15
8:20,23 9:17,25
10:5,10,22 11:3,6
12:25 13:15,17
14:1,5,25 16:5,10
16:19 17:1 19:6
20:19,24 23:22
25:11 26:1,9,17,18
27:2,6,7,12 30:7,9
30:12 31:2 32:2,9
32:14,23 34:7
36:21 37:25 38:2
38:10,16 39:13
40:1,7 41:8,11 42:5
42:8 43:3,6,12
44:10 45:20 49:22
51:12,15 53:1,17
54:14 57:13,17,23
58:2,4 59:25 62:17
63:13,18 64:21
65:10,14,21,24
66:5 67:25 68:2,4
70:21 71:16,22
72:5,8,15,20 73:1
73:11 76:11,22
80:23 81:2,7,14,16
81:20,23 82:3
83:24 84:1,8,11,15
85:6,10,12,24 86:2
86:5,8 88:16 89:7
89:14,17,25 90:5
90:22 91:2,7,11,24
92:13,24 93:14
94:9,18,23 95:1,4,5
95:13,18,19,23
96:6,9,18,20,22
judgment 9:16

14:12 38:9,13,17
82:22
Julie 81:24
July 61:11,24
justify 41:1

**K**

keep 73:20
keeping 62:9
KEKER 3:4
Kennedy 3:16 4:15
4:15 5:2 11:7 13:5
16:2,6 26:25 27:3
30:8,11,25 31:8
32:4,11,18 33:4
35:14 36:14,23
38:3,11 39:11,23
41:10 42:3,4 43:2,4
43:10 49:24 51:14
52:24 54:11,13
91:3,8 92:9,25
93:16 94:16,19
96:13,19
Kenneth 85:17
Kentucky 7:20
kept 7:4
key 27:4 55:9 66:10
67:19
Khare 46:4
kind 12:22 31:16
32:1 36:4 88:11
kinds 21:9 62:20
knew 92:19
Knogo 45:9 53:25
know 9:13 12:12
14:19,20 18:24
20:14 23:14,17,25
24:6,13,17 25:4,22
29:6 33:20 36:24
40:11 41:3 47:9,16
50:15 61:15 62:10
62:11 63:5 75:5
76:17 78:11 79:7
82:3,5 90:7,15,20
90:23 91:20 92:10
92:13 95:7,13
knowing 34:1 79:18
knowledge 27:17
37:3,3 46:7,10
74:13,20 75:1,10
75:25 78:20 82:18
83:1 84:18 88:1
knowledgeable
75:12 76:8 94:1
known 17:11 27:18

35:3 47:10,11,23
48:8 74:9
knows 25:14 95:7
K-n-o-g-o 53:25

**L**

L 3:10
label 18:22
laches 26:23 36:5,6
lack 18:1 21:13
lacks 18:20 46:6
language 75:15,22
86:22
laptop 56:2,2
laptops 69:13
Larian 3:14 4:14,16
Larson 27:6,12 34:7
36:21 62:17 63:13
63:18 65:10,14,21
67:25 68:2
law 3:5,11,17 9:6
49:17 59:20,20
lawsuit 49:19
lawyer 50:7,11,12
51:8,8,16,23,24
52:3,5,5,8,17,18
lawyers 68:11,11
lay 57:20 79:1
lead 56:15 60:18
leading 27:22 83:17
learned 30:17 32:21
35:8 36:1
leave 34:8,15,22
65:11,15,17,20,22
72:3 89:22
leaves 75:22
leaving 15:18 34:19
left 35:16 57:1,5,6
80:15
legal 24:18 25:8
35:24 44:16,20
45:14,24 46:4,13
46:21,23 51:19,24
52:6,19,21 53:24
legitimate 58:3
lending 72:16
lengthy 16:12
letter 4:23 40:15,16
letters 45:17
let's 33:12
lie 66:20
lied 80:15
lieu 15:17
Lilly 27:24
limit 41:16,25 65:13

65:21 66:2,3 95:24
95:25
limitation 30:21
31:10 32:1,9,15
37:8,10 39:5,7
88:19 94:13
limitations 13:24
26:23 33:18 34:11
39:8 78:24 88:10
94:11
limited 3:14 30:14
77:4 79:11 82:18
limiting 41:21
limits 96:14,19
line 53:22,25 55:8
57:14,15
lines 9:20,23
Linker 79:13
Lisa 85:17
list 5:22 6:2,3,4
29:25 62:25 63:8
listed 17:22
litany 74:11
litigation 27:9,16,17
41:25 49:17,18,20
49:21 54:9 56:21
60:19 61:12
litigation's 25:8
little 36:13 58:25
59:17,18 70:18
Littler 54:16,18
55:24 56:12 59:7
60:16 61:21,22
64:15,17 65:2,9,19
66:9,12,17 67:13
70:7
Littler's 69:11
living 47:21
LLP 3:4,9,15
loaded 57:2,4
locate 66:24 67:1
located 8:11
location 55:5
Lockhart 85:17
90:19
lodged 73:25
long 6:21 28:3
longer 44:2 60:16
look 13:9,18 21:22
41:3 50:22 51:4
57:13 61:16 78:15
looked 52:22 63:13
67:10
looking 13:13 33:12
52:17 53:13 55:16

looming 16:13
Los 3:12
lot 16:16 50:4 55:1
78:11 85:21 88:24
91:4
lung 33:23
luxury 16:12 78:12

**M**

M 1:21 2:17 3:4
machine 97:8
making 91:19
malignant 33:22
March 17:6 18:13
79:6
Marine 82:13
market 37:16
marketplace 40:25
material 32:8 48:17
48:20,20 69:19
materials 29:24
math 89:9
Mathew 4:12
Matt 20:25 60:4
Mattel 1:6,10,11 2:6
2:10,11 3:8 4:6,7,9
4:10 6:1,7,13,15,20
7:19,19,24 12:21
14:9 22:13 23:10
24:5,12,23 25:13
25:18 27:18 28:10
30:14,16 31:7,9,14
31:23 32:15,25
33:5,14 34:17,19
34:23 35:1,3,7,11
35:17,20,21,22
36:1,18,20,21
37:11,13 38:11
39:19 40:2,3 41:14
41:18 42:23 43:19
54:23,25 55:9,11
57:1,1,3,10 59:14
63:16,20 64:1
65:11,12 67:15
71:5 72:1,3 73:24
74:3,3,4,10 75:1,10
75:14 76:1,7 77:7
77:12,13,20,23,25
78:4,7,16,18,21
79:16 80:1,11,11
80:15 82:23 83:3
84:5,15,19,24 87:8
87:21 88:24 89:3
89:10 90:15 92:21
Mattel's 6:5,18,19,24

Exhibit 29, P. 356

| | | | | |
|---|---|---|---|---|
| 7:13 14:14 16:19 18:19 26:21 27:16 38:25 40:25 41:6 42:9 54:17 64:10 67:5 69:16 78:14 78:20 79:1 80:12 82:25 84:18 85:8 85:13 90:8 91:13 **matter** 40:10 41:22 48:23 49:3,3 51:25 52:21 55:2 63:12 65:12,22 71:14 75:4 **matters** 36:5 41:24 56:20 59:24 74:8 **MATTHEW** 3:4 **MAUREEN** 3:20 McCook 45:6 53:7 **McCUAIG** 3:20 **MEAGHER** 3:15 **mean** 31:5 37:15 38:7 77:24 79:5 83:18 87:24 88:10 88:21 96:16 **Meaning** 83:20 **means** 68:23 **meant** 23:1 24:21 47:17 **mechanism** 71:13 78:5 **meet** 4:24 7:6 11:9 17:15 18:14 31:9 32:19 37:24 74:10 77:3 memo 91:13 93:19 Mendelson 54:17,18 55:24 56:12 59:7 60:16 65:2,10,19 66:12,17 67:13 **Mendelson's** 61:22 66:9 **mention** 43:10 61:8 81:11 **mentioned** 23:9 40:21 **mere** 53:14 **merit** 18:1,20 69:17 **metadata** 6:5,16,20 7:3,7,10,18,19,22 8:17 10:15,17,20 10:21 11:22 14:24 **metadatas** 12:6 **metadatum** 12:6 **Metals** 45:6 53:7 **method** 12:19 | **MGA** 1:11 2:11 3:14 3:14 4:15 5:15,25 6:21 7:2,7,13,15,18 7:21 8:1,2 9:3,3,8 9:15 10:3,17,18 13:20 14:7,8,14 15:7 19:2,2,6,9,19 19:20 20:2 23:9 24:4,6,12 25:11 26:21 34:6,17,20 34:23 35:8,17,25 36:12 39:17 40:5,8 40:14 41:1 42:10 42:11 43:15,18,21 45:2,8,10 46:15 48:15 49:5,13 50:23 53:5,11 61:6 61:9,25 73:12,19 73:23 75:8,19,22 77:14 78:3 80:16 85:16 87:9,13,22 89:13 91:20 95:11 **MGA's** 4:20 7:24 10:25 13:2 25:18 35:2 45:9 53:4 61:2 83:14 95:15 **MGA/Bryant** 40:20 **MGM** 4:13 **mid-September** 35:4 **million** 10:19 **mind** 44:8 94:8 **mine** 70:16 **misappropriating** 31:20 **misconduct** 77:11 77:13 **misdeed** 29:2 **misdeeds** 29:9 35:4 **misimpression** 92:16 **misinterpreted** 22:25 **misplaced** 70:16 **missing** 55:9,10 56:2 63:23 **misspeak** 26:8 **misusing** 31:19 **mitigating** 13:6 **modify** 31:1 **moment** 42:15 **Monday** 12:15 65:15 **monetary** 13:1 15:17 26:16 72:21 72:23 84:25 85:3 | months 7:6,9 17:17 **morning** 15:3 **motion** 4:19,20,22 4:25 5:1,6,7,15 6:4 6:5,14 7:11 9:4 12:25 13:1,9,13 15:1,7,21 16:19,20 16:22,25 17:24,25 18:7,19 21:2 25:20 26:2,19,19,20 26:8 29:10,13,20 32:20 34:5,8,15 36:12 38:9,17,17 39:2,3 39:16,17,19 42:8,9 42:16,17,18,19,23 43:1,13,13 44:8,9 50:4,6 51:13 54:5 54:16,17 57:14 59:25 64:12,12,21 65:14 66:3 70:1 71:1,4,5,6,10 72:2 72:2 73:12,13,19 73:22 75:8 76:12 76:13,17 77:1 78:12,13,14 81:3,6 81:7 82:8,22 83:14 83:15 84:2,21 85:12,13,13,21 86:3,13,24 87:1,11 89:5 91:11 93:25 94:22 95:17 96:3,4 **motions** 4:5,17 5:5 5:12,19,20,23 6:1 6:10 14:13 16:14 26:16 39:14,15 54:19,20,22 60:8 72:17,23 73:2,7 83:18 84:25 **motorized** 79:10 **Motors** 68:8,16 **mouth** 66:21 **move** 76:21 **moving** 50:24 57:13 **multifactor** 14:2 **multiple** 13:3 74:20 **Mumford** 34:16 **mundane** 62:8 ──────── **N** ──────── name 44:7 81:25 97:20 **names** 79:14,21 **Napster** 27:7,20 **narrowing** 36:16 **native** 8:4 15:9 | nature 53:24 94:14 **nauseam** 64:2 **necessarily** 69:4 83:7 **necessary** 69:5,22 70:12 **need** 7:9 8:25 9:18 11:9,12 12:24 14:9 19:1,2 23:14 24:24 30:23,24 51:13 54:12 61:5 63:21 65:1 96:16 **needed** 71:17 94:5 **needs** 5:1 44:3 65:10 65:20 **nefarious** 34:24 **negative** 81:24 **neglect** 61:8 **neglected** 75:19 79:24 **negotiated** 92:20 **negotiations** 75:6 **neither** 97:16 **Nequist** 44:7 46:1,25 47:9 48:8,15,17 49:1 **Nequist's** 47:13 **nervous** 33:24 **NEST** 3:4 **never** 7:3 10:10 13:4 13:19,22 46:15 79:22 **new** 13:24 75:23 95:8 **Newquist** 82:10 **niece** 56:1 58:21,24 59:5 **nine** 62:15 **Ninth** 49:17 60:12,14 **noncumulative** 40:13 **none-privileged** 29:11 **nonprivileged** 56:19 57:19 **Normally** 83:4 **notice** 33:6,19 34:18 35:12 36:2,6,7 38:20 71:15 74:1 81:15 **noticeable** 34:3 **noticed** 75:11 85:18 **notion** 82:19 **November** 16:22 27:13 30:23 32:12 | 37:3,14,17 39:7 **number** 6:1 7:23 9:8 26:20 28:9 33:7 36:9 50:23 67:20 68:1 88:7,18 91:16 **numbers** 26:6,7 54:6 **numerous** 22:9 **N-e-q-u-i-s-t** 44:7 ──────── **O** ──────── **objected** 17:7 **objection** 17:21 18:14,17,20 26:22 28:25 **objections** 18:1,1 38:25 39:1 94:6 96:7 **obligated** 76:7 **obligation** 74:10 **obligations** 35:24 74:2,4,7 76:3 80:10 80:11 **obliged** 22:18 **obscure** 49:6 **obtain** 9:14 23:18 40:5 68:23 **obtainable** 17:11 **obviously** 19:13 23:3 23:17 24:12,15,17 24:24 27:20 29:4 31:21 42:1 58:6 67:21 72:1 91:3 94:4 **occasions** 13:4 **occurred** 57:8 58:14 59:3 63:15 76:6 79:6 **offenses** 91:15 **offer** 11:10,18 12:2,8 75:18 **offered** 11:17 84:24 **offering** 22:14 **office** 42:12 43:14 47:21 93:21 **Oh** 88:16 **okay** 11:4,6 14:25 27:2 31:2 33:16 40:1 42:8 43:6,12 45:22 49:22 51:14 59:25 64:23 66:6 68:4 72:7 73:1 76:22 82:19 85:6 85:12 89:25 91:2 94:9 96:9,22 **old** 67:1 92:1 |

Exhibit 29, P357

OLIVER 3:9
omissions 30:12
  74:5
once 11:23 23:19
  27:25 31:18
ones 19:7 65:16 73:8
  73:8
Ong 82:11
On-Sale 48:18,22
  49:7
open 5:11 75:22
  82:18
open-ended 63:7
operating 82:19
opinion 16:12 22:14
  22:17,18 23:18
  52:1 54:4 68:12
opponents 92:10
opponent's 93:3
opportunity 5:24
  6:11 20:11,14 64:7
  76:23 78:15
oppose 18:19 32:25
opposing 68:10
opposite 45:5
opposition 7:12 15:2
  16:23 18:7 34:7
  39:20 54:20 60:2
  64:11
opted 20:10
option 23:2
oral 61:7 62:24 63:11
orally 64:18
order 5:25 14:23
  15:12 16:1,17,20
  18:12 20:9,15,16
  21:4,5 23:5,6 26:10
  26:15 27:4 32:22
  34:15 37:25 39:9,9
  41:14 42:3,5 43:7
  43:18,21 47:25
  48:1,2,3 49:6,7
  54:11,12 62:17
  65:8 67:23,25 68:2
  71:13,23 72:6,13
  72:17 77:19,23
  78:1 81:17 83:8,10
  83:12 84:1,4,6,9,11
  84:12,23 87:9
  88:18,19 93:1,12
  93:14 94:1 96:3
ordered 8:3 18:10
  19:25 21:3
orders 83:12 85:14
organization 74:9

original 18:12 63:3
  70:9 97:13
ought 12:9 29:24
outcome 72:2
outside 45:15
outweighed 87:16
outweighs 86:18
overall 66:9 88:11
overbroad 10:16
  70:3
Overrule 26:21
  85:14
overruled 39:1,2
owned 67:2
O-n-g 82:11

P

P 93:23
packaging 22:6
page 27:6,11,24
  34:14 44:12 48:3
  57:14,15 70:5
  93:18
pages 91:14
paid 12:5
paper 51:2 78:11
  85:21
papers 5:17 8:9
  11:16 30:6 32:24
  39:22 40:9 44:9
  50:24 56:5,18
  57:14 60:1 64:19
  65:25 66:2 79:8
  81:21
paragraph 47:13
Park 3:16 4:13,13
part 6:17 15:7 19:13
  27:16 31:8 37:24
  42:18,23 43:2
  64:22 69:14 79:5
  81:2,5 82:17 86:3,3
  87:12 91:21
parte 49:15
partial 29:16
partially 15:16
particular 8:21
  37:20 38:20 50:25
  63:23 85:22
particularized 11:12
  37:11 61:5
particularly 50:23
  66:11 68:14 79:6
  91:25 92:11
parties 4:23 7:16,18
  24:19 25:8 68:10

68:11 75:5,9,16
  77:15 82:20
partner 49:10
party 15:14,19,24
  24:12 25:19 39:14
  51:10 69:8 97:18
Pasko 82:11
pass 80:25
passed 47:4,10
Patel 27:7
patent 42:12 43:14
  44:6 45:17 47:14
  47:19,20 48:24
  49:16 50:17 51:21
  52:6
patentability 48:20
patentable 49:3
patented 48:23 49:3
patentee's 51:6
pattern 9:5,6 48:12
payments 93:6,7,8
pen 29:3
penalty 83:19
pending 72:4
pens 29:7 31:22
people 11:20 62:11
  79:9 88:25 91:5
percipient 55:11
  82:18
perform 64:5
performance 40:25
period 36:2 55:9
  59:22 66:17 84:19
  Peripherals 50:16
permits 21:9
permitted 21:19
personal 46:7 50:19
  74:13 91:21
personally 18:24
personnel 19:3
perspective 17:2
  35:11
persuasive 53:22
pertaining 8:9
pertains 85:16 97:12
phase 9:4
photograph 22:4
piece 59:17,18
place 97:5
plaintiff 1:4 2:4 3:3
  27:25 28:4
planning 24:22
play 90:18
pleading 6:18 8:25
please 4:6 72:17

pled 69:18
plural 12:7
plus 29:5 56:18
  83:15
point 12:17 13:2,18
  13:23 16:2 18:4,21
  18:23,23 22:17
  28:17 30:20 32:3
  37:22 38:11 45:5
  45:18,22,25 46:25
  50:5,6 62:1 63:1
  64:25 74:1 83:5
pointed 32:4 62:25
points 23:15 41:12
  46:19 57:21 60:9
  62:23 64:9 70:6
policy 56:10
political 38:5
poor 50:11
position 7:8 10:6,7
  10:25 11:1 13:5
  18:9 19:17,20
  23:20,21,23 24:2
  24:18,25 41:8,19
  65:1 90:8
positions 24:22 25:8
possesses 8:2
possession 17:9,22
  18:15 19:12,14
  55:21 59:21 66:18
  67:12
possible 96:13
possibly 59:18
postponed 65:5
post-date 9:11
  14:18
post-trial 14:13
potential 66:18
PowerPoint 91:22
practically 77:20
practice 30:18 33:16
  34:2
practices 66:14
pragmatic 11:10
Pratte 82:12
precisely 40:7 48:21
preclude 75:17
precluded 80:1
preclusion 83:12
  84:23
predicate 6:17 9:7
  9:10,13,15,24 10:2
  10:21 11:1 14:22
predicted 18:12
prejudice 15:22

23:16 42:1 71:4
prejudiced 23:12
premature 29:18
preparation 63:24
  69:2,23 70:12
  86:14 87:19 92:7
  93:2 96:8
prepare 16:1,17
  26:15 37:12 39:9
  42:3 54:11 71:22
  72:17 80:6 84:1,6
  84:11 90:19 92:3
prepared 4:22 5:3
  5:17 6:2 13:14
  38:14,22 41:10
  46:2 49:21 52:25
  61:11 69:25 70:1
  73:8,11 74:24
  75:18 76:4 82:14
  82:24 84:16 87:10
  88:23 91:1 93:20
  94:8
preparing 34:5
  56:13,14
present 3:19 38:23
  75:11 76:9
Presentations 42:11
presented 61:13
  76:17 78:25 80:14
presently 65:14
presents 6:14
preservation 56:22
preserve 27:9,21
preserves 20:4
preserving 66:14
press 40:22,23,24
presumably 91:14
pretty 63:6 66:13,13
  66:13
prevail 62:16
prevented 75:17
prevents 77:23
previously 11:2
  14:15
principles 68:22
prior 13:2 18:5,8
  27:12 37:14 39:7
  39:10 42:16,24
  50:1 54:2 55:24
  62:17 68:17 69:9
  75:25 76:9 82:20
  96:4 97:6
privilege 29:16,17
  29:20 44:14,15
  45:7,15 50:10,16

Exhibit 25, P. 358

| | | | | |
|---|---|---|---|---|
| 52:12,15 53:18,21 54:7 55:14 87:6 | promises 7:5 prompted 28:11 promptly 23:3 | put 24:13,13 29:6 34:17 35:11 36:10 37:10 43:7 69:7 | read 10:12 27:14 31:5 34:17 39:22 44:8 56:4 59:25 | 97:7,10 records-type 55:17 recovered 56:3 |
| privileged 29:24,24 30:1 43:18,23,25 45:1,12 53:16 54:7 57:19 59:24 69:1 | proof 8:13,24 9:14 14:15 proper 59:14 | 79:16 88:14 90:18 92:2 95:23 putting 37:8 83:19 95:24 | 60:1 65:24 82:3,13 82:21 95:13 reader 57:18 readily 11:16 12:18 | red 55:15 redeposition 88:10 reduction 30:18 33:16 34:2 |
| probable 27:10,17 probably 63:16 74:17 77:6 93:15 | properly 75:12 77:1 82:24 84:16 property 31:20 | P-r-a-t-t-e 82:12 p.m 2:16,16 4:2,2 | 13:21 17:11 reading 82:9 Reads 30:12 | reexamine 58:13 reexamined 58:11 refer 31:3 70:21 |
| problem 19:19 31:8 34:20 50:7 69:10 problematic 25:17 Procedure 10:11 | 35:25 36:4 proposal 11:11 propose 12:20 75:15 proposed 31:10 | Q qualification 24:21 quantum 33:5 36:19 | ready 93:15 real 50:8 58:23 realize 50:3 | reference 72:6,12 referenced 66:25 referring 14:2 reflect 24:18 44:18 |
| proceed 11:6 26:24 49:23 60:3 73:16 76:24 85:19 | 32:12 75:8 proposition 45:3 propounded 17:5 | quarreling 92:9 94:4 quash 54:17 60:2 64:12 70:1,13 71:2 | realizing 38:4 really 12:1 14:1 28:23 29:6,8 37:12 | 44:19 45:23,24 46:20 reflected 6:22 |
| proceedings 97:4,6 97:8,14 process 5:21 22:9 | proprietary 34:24 prosecuting 52:6 prosecution 50:17 | question 8:23 9:17 20:6,7 22:11,12 29:14 31:2 38:18 | 37:13,17 46:5 47:7 48:12 50:5 52:21 61:5 65:3 77:9 | refused 20:15 refute 13:5 regard 12:24 28:15 |
| 49:15 50:17 58:10 58:15 Proctor 3:11 4:10,10 | protected 43:23,25 protective 32:22 43:17,21 77:19,23 | 40:4 45:21 52:16 53:18 57:11 67:20 69:25 80:5 83:23 | 93:10 reason 7:1 9:23 48:10,21 63:21 | 37:14 51:10 64:16 91:5 93:5 regarding 4:24 |
| 6:12,13 8:7,14,16 8:22 9:3,21 10:1,7 10:13,24 11:5 | 78:1 84:6 protects 44:15 prove 6:24 9:1,5,19 | 88:9 questioning 70:7 questions 15:25 | 86:22 93:7 reasonable 21:11,12 38:19,22 40:4,11 | 15:25 26:5,22 28:12 42:15 55:5 63:2,6 66:19 67:24 |
| 13:16,17 14:5 16:1 16:17,18 17:1 19:8 20:21 26:15 44:10 | 9:24 10:3 25:15 78:19 proven 10:25 | 25:17 30:5,7 32:23 38:14 39:24 41:20 62:21 79:22,24 | 47:6 48:11 49:11 66:24 87:20 reasonableness | 70:7,8 73:14 74:2 75:8 77:12 84:12 86:15 87:12 |
| 45:22 49:25 53:2,3 54:10 produce 8:3 13:3 | provide 7:2,3 18:2 20:11,12 40:15 51:16 76:8 78:17 | 81:19 84:12 88:6 88:25 question-by-ques... | 92:5 reasonably 37:11 49:1 74:9 78:7 | registration 22:9 reiterate 90:7 reiterated 32:19 |
| 15:7 16:7 37:4 41:15 42:20 77:8 82:23 83:3,5,8 | 78:23 79:1 84:5 87:4 provided 7:1,19 | 87:7 88:6 90:4 quick 27:1 quickly 12:18 | reasoning 50:14 68:7 reasons 9:10 47:7 | reject 54:8 rejected 48:22 relate 24:7 70:24 |
| 84:15,19 87:9 91:5 95:11 produceable 7:22 | 78:17 providing 46:3 provinces 50:2 | quiet 81:6 QUINN 3:9 quite 44:17 46:6 | 62:11 68:12 87:2,8 Rebecca 85:17 86:9 rebrief 5:8 | 79:12,12 93:18,25 94:2 related 45:25 55:18 |
| produced 10:18,19 13:4 19:5 43:17,19 61:23,25 74:11 | proving 9:22 10:23 81:24 provisions 13:24 | 47:3 quote 17:8,10 21:6,7 27:25 28:6 67:6 | recall 5:7 45:6 72:20 recalled 43:18 receipt 40:16 | 66:12 90:13 relates 36:9 93:21 relating 30:16 36:7 |
| 85:16 producer 74:23 producing 15:19 | PTO 47:4,11,24 48:9 48:21 publicly 44:22 48:14 | quoted 40:23 quoting 48:2,3 | received 5:10 16:23 16:24 39:20,21 43:20 61:9 | 80:10 81:4 relationship 60:25 relative 97:17 |
| 38:25 77:9 product 49:7,13,14 62:12 70:20 75:2 | 48:19,25 punt 13:12 purchased 57:5 | R racketeering 9:5 raise 63:10 | receiving 93:8 Recess 73:10 recipients 8:11 | releases 40:24 relevance 8:8,15,16 8:17 26:21 61:6 |
| production 6:5 14:10 42:10 50:23 51:3 56:22 | purely 28:22 purported 18:11 purpose 10:22 44:16 | raised 27:14 40:20 56:10 60:9 62:1,24 64:10,18 | recitals 54:12 recognized 22:10 recollection 58:23 | 86:18 relevancy 33:7 relevant 7:22 8:12 |
| productions 42:25 professional 51:9 program 62:4,7 | 46:3,22 52:18 57:7 purposes 27:8 30:3 34:4 62:9 | raising 29:14 55:13 ran 90:13 range 16:9 76:17 | reconsider 62:17 reconstruct 11:8 record 54:14 66:11 | 29:23 30:3 33:10 38:19 41:24 56:19 68:25 69:20 75:4 |
| project 79:8,12,15 promise 57:21 promised 7:2 | pursuant 43:17 83:13 84:24 pursue 88:3 | Raoul 3:16 4:15 reached 66:2,3 77:7 reaction 69:7 | 69:14 71:9 73:5,9 82:21 91:24 92:2,4 92:5,7 93:6 96:23 | 87:22 relied 45:8 |

Exhibit 24, P. 359

relief 17:25 20:7,22 79:23
relies 7:21 45:10 53:11
rely 53:8 78:4
relying 78:18
remain 30:1 47:2,7
remained 55:20
remaining 73:6
remains 45:16
remarks 40:2
remembering 43:8
remove 33:22
rendering 51:19,24 52:5,19
renders 53:15
reopen 63:21
reopening 87:15
reordering 94:3
repackaged 18:22
repeat 84:13,13
repeatedly 7:2 53:12
replies 54:21
reply 15:2 16:23 32:4 39:21 60:1 91:13 93:19
Reported 1:21
reporter 2:18 82:4 83:20 97:2
reports 23:25
representations 67:5,9,15
represents 51:5
reproduce 64:5
request 10:17 17:13 17:18 18:10 19:7 21:5,6 26:11 28:17 29:10 31:1 43:21 45:14 46:13 71:12 89:1,24 95:3 96:2
requested 6:15 7:6,7 7:19,23 15:8 70:23 97:15
requests 16:21 17:4 17:5,8,18 19:4,23 20:17 22:21 25:13 26:4 33:8 72:21
require 25:21 32:15
required 15:5 33:5 48:16
requires 36:5 41:4 59:20 61:4
requiring 16:21 26:12
resolution 5:1 44:3

resolve 16:15
resolved 16:14 36:11 44:12
respect 4:20 5:5,19 21:15,24 23:6,16 24:3,25 26:4,11 34:12 35:7 36:9 37:9,13,20 41:18 43:13 53:23 58:18 60:10,21 62:2 63:9 63:23 69:11 70:4,7 70:10,13 71:2,5,10 71:19 76:13 78:13 79:7 80:9,21 86:21 86:23,25 87:18 88:22 89:1,4,12,24 90:2,8 96:6,7
respectfully 19:15 76:18 96:2
respond 26:12 38:2 58:17
responded 17:7,10 20:3
responding 15:23
response 17:19,24 18:6,13,25 20:5 21:19 22:23 25:7 32:3 56:7 77:21
responses 17:4,16 17:17,23 18:18 19:9 20:11,17 21:10,14 23:4,7 32:6 42:24
responsibilities 41:19
responsive 59:11 67:7
rest 82:7
result 32:21 64:13 83:12 84:23
results 90:9
retailer 92:14
retailers 91:18
retrieve 11:15
retrieved 12:6 13:8
return 48:6
returned 55:22
reveal 44:25 45:23 45:24
revealing 31:24
revert 18:5
reverting 18:12
review 54:15 97:14
reviewed 67:9 90:19
revisit 88:20

revolutionary 12:1
RFA 21:10,20 24:17
RFAs 20:9 23:16 25:10
RFA's 21:16,22 23:6 23:10
RICO 6:17 8:13
right 5:16 8:20 9:25 16:1 19:1 20:4 25:1 32:14 35:15 38:16 41:11 46:16 52:13 52:13 58:2 65:9 73:23 78:4 82:2 89:9 92:24 94:23 95:1
rights 28:3
RNBx 1:6 2:6
road 23:14
Robert 39:18 41:15 74:18
Rose 44:6
roughly 9:13
round 52:14
routine 61:3
routinely 22:12 56:20
rule 5:18 13:24 14:6 15:4,4,5,5 20:23 21:7,9,19 22:23,25 23:2 38:24 40:12 48:18,23 49:8 69:4 74:7 80:23 82:15 83:13 84:17,24
rules 10:11,12,12 15:3
ruling 12:20 15:25 29:17 30:1 50:1 70:24 88:8 92:10 92:12 96:12
rulings 96:10
run 33:19 36:14

_____
                S
_____

S 3:16
sale 48:24 49:7
San 1:15 2:15 3:6,18 4:1
sanctions 13:1 15:18 26:16 27:5 39:14 39:15 72:22,23 83:18 84:25 85:3 85:15
sandbagged 75:23
sandbagging 24:22
Sansome 3:6

satisfied 7:5
save 86:6
saw 17:15
saying 7:24 20:15 29:6 46:5 74:12 78:12 93:12
says 7:21 11:24 19:2 21:6 22:24 31:14 32:15 45:11 47:3 47:18 83:8
scholarly 54:4
scope 51:21 58:3 67:24 77:3
screenwriter 74:23
scripts 79:22
search 67:1
searched 92:22
second 12:3 13:12 19:23 31:2 45:25 48:10,15
Secondly 68:24 87:3
section 18:4 79:3
see 16:11 32:2 58:14 59:16 75:7
seek 30:1 33:9,13 54:15 57:20
seeking 6:20,21 10:15,20,21 32:20 44:16 46:3,22 55:11 57:18,24 64:16 65:15,17 69:19,22 81:17 86:19 90:9 93:1
seeks 17:8 69:8
seen 20:14,21 46:17 53:5 95:12
selected 15:23
send 13:21
sense 12:19 36:12 65:7
sent 8:10 15:10,11 44:6 45:17
separate 29:12 80:13 88:7
September 34:18
serious 20:7
serve 29:1
served 29:12
server 11:23
set 10:16 19:23 70:5 91:14 97:5
Seventh 48:4
SGL 1:5 2:5
shape 63:8
sheet 43:23

shell 93:24
Shelton 56:8,9,11 60:11,20 61:1 68:8 68:16,22
shelves 49:5
shift 15:13,15 27:1
shifting 15:19 93:23
shipped 64:3
shoddy 66:13,14
shoe 50:25
short 73:4
shorthand 2:18 97:1 97:8
shortly 57:1,4 61:12
show 11:22 12:22 14:9 15:10 30:13 42:2 46:9 47:12 62:7 91:23
showing 30:13 39:24 42:11 61:5,14
shown 63:22 91:17 92:14
shows 11:23
side 13:6
sides 68:5
significant 77:6 88:14
similar 19:7 23:9
simple 9:23 34:21 53:14
simply 7:16 14:17 19:21 21:4 22:19 28:7 33:25 34:9 35:10 39:4 44:17 46:14 53:13 71:6 71:17 74:16
single 44:23 80:5,6
sit 28:3
situation 7:17 10:15 31:22 40:12 50:20 52:2,10 55:3 58:19 67:22
situations 28:8
six 89:24
SKADDEN 3:15
sketch 22:4
sketches 45:13
skill 51:9
skip 26:18,19
SLATE 3:15
sleeplessness 33:24
slides 91:22
smart 80:4,6
smarter 11:20
solely 57:21

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES

Exhibit 29, P. 360

Solomon 33:3,17,23
somebody 29:1
 50:10 94:1
songwriter 74:23
sorry 39:6 84:22
sought 17:25 35:7
 37:21 51:3 67:11
 79:24
sound 38:7
sounds 92:25
source 69:21
sources 58:6,19 62:2
Spanish 92:23
speak 42:25 95:18
speaking 44:5 77:20
 84:8
specific 32:3 36:7
 45:17 77:22 88:5,8
 95:21
specifically 7:23 9:9
 15:3 28:9 44:5
 48:17 65:17 69:18
 70:24 71:1 78:22
 80:9 92:11,13
specified 8:6 15:8,22
 20:22
specify 23:4
Speckin's 90:9
speculation 35:5
Speedway 7:20
Spencer 85:18 86:25
spent 87:17 88:24
spirit 82:15
split 45:20
spoliation 63:14,19
 69:16
spoliations 57:8
stage 8:25 20:16
 38:13
standard 30:4 38:24
 60:10
standards 35:13
Stars 75:1 79:7,8,19
 79:20
start 33:2,3,12,18
 68:21
starters 44:11
starting 30:20 77:2
State 97:2
stated 8:8 68:12
 74:19
statement 14:4 88:7
 94:2
statements 40:24
 55:4 56:5 59:12,13

69:10,14,15 93:18
 93:22,25
states 1:1 2:1 47:13
 47:20
stating 74:13
statute 26:22 33:18
 34:11
stealing 29:3 31:21
 34:24
Steve 79:13
stiffed 17:19
stipulation 66:23
 75:9,14
stole 29:7
stored 13:25
story 13:6
straightforward
 6:15 19:24,24
 49:15 73:22
strategy 79:1
Street 3:6,12
strictly 8:17
strike 29:21
Stroh's 12:4
strong 69:3
strongly 65:1
strung 7:4
stuck 59:6
subject 19:4 22:12
 27:23 41:22,24
 48:23 49:3,3 65:10
 65:20 68:2 70:10
 72:1 80:20 84:5
 87:23
subjected 58:10
 64:4
submission 96:10,11
 96:20
submissions 43:14
submit 5:17 6:10
 10:14 13:14 29:19
 31:17 33:25 35:6
 38:15 41:10 45:24
 47:5 51:4 52:25
 68:3 71:17 75:21
 76:7,16,21 81:18
 86:4 88:23 90:22
 91:1 94:8
submitted 40:1 46:2
 46:10 47:20,23,24
 49:2 62:7
subpoena 54:18
 58:16 64:15,22
 70:2,2,13,15,25
 71:2,11

subpoenaed 68:20
subscribe 93:2
subscribed 97:20
subsequent 67:25
substantial 75:6
substantially 86:3
 86:17 87:14
substantive 21:10
suddenly 24:13,23
sue 28:2,16
sufficient 15:9 21:13
 34:10 35:11 37:10
 40:18 41:7 48:2
 70:10 95:21
sufficiently 37:11
suggest 14:11 49:20
suggested 49:14
suggesting 32:6
suggestion 11:11
 61:17
suing 35:21,21 78:2
suit 28:2
Suite 2:15
summary 9:16 14:12
 38:9,13,17
supplement 17:16
 23:19 42:24
supplemental 17:17
 17:23 18:18
supplementation
 94:6
supplemented 78:7
support 38:8 64:12
suppose 59:16
Supreme 27:23
sure 11:19 14:7 30:8
 33:2 76:23 81:2
 83:24 90:24 91:7
 92:15
surprise 23:13 57:9
 79:4
surrounding 7:17
 30:15
suspect 22:13
suspicion 27:14,15
 28:1,3 36:25 37:2
suspicions 28:11,14
 31:19
suspicious 61:15
sworn 93:18,22,24
 94:2 97:7

_____
             T
_____
table 52:2
tabled 38:4

take 13:9 19:17 27:2
 50:22 58:8 65:11
 65:15,17 69:24
 70:22 72:3 73:4,5
 77:20 94:14 95:16
 95:19 96:9,11
taken 7:9 11:2 30:14
 57:3 58:20,20
 73:10 82:13 97:4
talk 33:4 36:13 37:2
 37:2 40:9 74:25
 79:19,20 80:14
 93:20
talking 28:21,22
 31:16 45:7 61:11
 67:14 85:9 91:18
tax 48:5
teachings 69:6
team 91:21
technical 44:24
 45:13 53:6,8,12,14
 53:23
Teens 35:17
tell 25:23 73:7
tending 30:13
tends 47:12
tentative 86:6 96:10
Tentatively 86:8
terminating 27:4
terms 61:21
test 14:2 27:6,20
 61:1 64:7
tested 90:12
testified 75:10 81:25
testifies 60:11
testify 37:5 42:20
 74:8,24 75:13 76:4
 76:5 77:9 80:13
 82:25 84:17
testifying 74:13 97:7
testimony 22:13,14
 23:18 40:5,13
 42:13 55:12 62:6
 64:16 70:23 71:19
 73:13 74:18 75:17
 80:20 82:10,17
 84:2 86:15,19 87:4
 87:20 92:22 97:11
testing 63:3,9,15,24
 66:8,8 70:8 90:16
tests 28:7 64:4,6
 90:9,13
thank 6:12 11:7
 13:15,17 14:25
 17:1 20:24 26:17

33:1 39:12 42:7
 43:6 44:10 49:22
 49:24 54:24 70:17
 71:21 72:16,19,20
 72:23 73:17 76:25
 84:10 85:5,11,20
 86:7 89:25 91:2
 96:1,21
theory 93:3
thing 24:20 42:15
 77:10 93:4
things 37:15 47:22
 48:13 62:10 74:24
 80:17 88:22 92:1
think 6:14 7:25 9:24
 11:9 16:3 18:20
 19:23 20:4,6,16
 23:24 25:5 26:9
 27:3,11 29:18 30:5
 31:11 32:19 35:13
 36:12 37:19 38:6,7
 40:18 46:5 48:10
 49:11 50:2,5,9,18
 51:7,11,13 53:15
 53:22 56:4,8,18
 57:9 58:3 59:19
 60:17 61:6 62:1
 65:6,19 66:15
 67:20 69:3 71:16
 72:11,24 77:1
 86:16 87:25,25
 88:1,9,24 89:8,9,9
 89:12,21,22,23
 90:10,14,22 92:6
 93:14 94:10,11
 95:4,8,20 96:4,22
third 12:16 21:15
 46:25 51:10 77:14
thirdly 69:1 87:5
third-party 52:20
thoroughly 71:8
 92:22
thought 81:7 95:16
thousands 47:16,17
 47:18
three 7:6 11:14 21:9
 25:21 41:16,25
 48:13 55:5,21
 66:24 70:6 87:2
three-dimensional
 22:5
Thursday 1:16 2:17
 4:1
Tim 40:3 54:24
time 5:21 6:21 7:13

Exhibit 29, P. 361

7:14 14:12,13,21
18:22 20:8 23:4,21
23:25 24:1 27:2
39:4 40:4,11 41:4
42:2,14 44:22 45:7
47:15 53:18 55:2
56:25 59:22 61:11
66:17 70:1,2 71:4,6
73:9 80:3 82:13
83:14 87:17 88:10
88:10,19,25 94:10
94:13 95:6,19,24
95:24 96:14,19
97:5
**times** 74:20
**Timothy** 3:10 4:8
**today** 5:4,16 22:24
29:18 30:2 67:23
96:23
**Tokyo** 11:25
**told** 29:11
**tolling** 29:15
**Tonnu** 85:17 86:12
94:12
**Tonnu's** 87:19 89:2
**Toon** 35:17
**Toons** 28:16,16
31:11
**top** 57:15
**topic** 30:2,10 32:10
32:14 37:9,23 38:3
62:24 64:15,16
71:2,3,3 76:12,14
80:21 83:4,9 84:20
86:8,9,10,10,10,11
86:11,14,15,17,20
86:21,23,25 87:5
87:10,11,14,18
88:23 89:23 90:2
91:16 93:17
**topics** 28:9 31:3
32:13,16 36:13
37:1,20 38:18,21
39:1,2,5 42:20
58:13 70:19,23,25
71:8,10 73:25 74:2
74:14,16,19 75:3
75:11 76:5,5,9,18
77:4,22,24 78:22
80:9,25 81:4,8,12
81:17 83:1 84:18
84:21 85:18 88:20
89:4,6,9,11,12
90:17 91:8 92:17
94:21,24 95:2,8,11

95:17,21 96:8,17
**totals** 15:24
**town** 59:2
**tracks** 24:17
**trademark** 47:14,19
47:20
**transcribed** 97:9
**transcript** 71:19
97:10,13,15
**transcripts** 78:16
95:12
**transferred** 35:24
**translator** 50:19
51:11,18
**transmission** 48:6
**transmitted** 48:4
**transmitting** 11:25
**traveled** 8:10
**treats** 61:3
**trial** 22:15 23:12
24:24 25:14 56:13
56:14 57:9 60:17
60:18 75:23 78:5
78:18 79:1 80:2
83:13 84:24
**trigger** 34:10
**triggered** 36:2
**Trinidad** 3:5 4:11,11
73:17,18 81:10,22
82:2 84:14 85:5
**tripartite** 50:20
**trouble** 29:8 86:6
**true** 45:16 59:15
97:10
**truthful** 18:25 21:18
21:20 23:7
**truthfully** 19:16
22:20
**try** 9:14 11:8 16:15
27:3 49:7
**trying** 25:10 55:14
75:6,7,17 90:24
92:15 93:11
**Tuesday** 12:15
**tumor** 33:22
**turned** 12:14 67:3
**two** 2:15 9:7 17:17
24:3 26:4,4 28:7,8
37:16 43:15 45:4
46:19,21 47:7 48:1
61:7 70:19 89:10
95:4,12,16
**two-dimensional**
22:3,4
**type** 24:16 37:21

75:21
**types** 37:20
**typo** 47:16
**T-o-n-n-u** 85:17
86:12

**U**

**ultimately** 48:21
**undecided** 5:7
**underlie** 73:24
**underlined** 27:15
**undersigned** 97:1
**understand** 10:13
12:15 18:24 19:6
60:6 90:2
**understanding**
79:23
**understood** 72:14
83:22
**undertaken** 30:16
**undoubtedly** 9:15
10:4 56:23 57:10
**undue** 14:7,9 38:23
**unenforceable**
24:15
**unhelpful** 33:9,10
**unique** 40:13 41:4
48:12 49:9,10,10
**uniquely** 33:9
**United** 1:1 2:1 47:20
**unjust** 83:16 85:1
**Unquote** 67:8
**urge** 96:14
**URQUHART** 3:9
**use** 69:5 79:14
**uses** 52:19

**V**

**v** 1:10,11 2:10,11
**validity** 20:1 24:9,11
25:2
**VAN** 3:4
**various** 4:4 69:10
**vein** 93:17
**vendor** 11:15 12:5
44:6 52:20
**versus** 27:24 68:8,16
**viable** 27:18 36:6
**view** 14:6 25:18 41:6
41:17 45:20 47:8
52:22 54:3
**viewed** 51:25
**violate** 77:25
**violation** 35:23,24
**viruses** 62:10

**vs** 1:5 2:5

**W**

**wait** 28:5 58:14
**waived** 18:17 64:14
64:20
**waiver** 29:16 36:10
36:11 90:11
**want** 19:22 26:8
33:4 36:24 38:2
41:20 42:17,19,22
52:12 64:1,23 68:6
70:21 72:10 76:22
84:12 88:22
**wanted** 6:3 32:2
58:1,4 75:15
**wanting** 19:17
**wants** 20:12 90:20
93:25
**wasn't** 12:1 22:8
35:25 59:2,4 79:19
81:14,16 91:19
**way** 8:1 14:15 18:9
23:13 30:9 33:8,10
34:22 42:14 52:21
61:15 63:8,17
77:24 91:24 95:14
**week** 12:15 96:11
**weeks** 48:1
**weighed** 41:11
**well-cited** 68:7
**well-drafted** 68:12
**went** 50:7 55:25
56:1 66:16 74:22
74:25
**Werdegar** 3:4 4:12
4:12 20:25,25
23:24 25:24 26:7
26:17 60:4,4 70:17
70:18 71:24 72:7
72:14,18,24
**weren't** 93:19
**Westinghouse**
35:14 36:3
**we'll** 23:3 43:2 68:3
73:8 76:21
**we're** 9:14 10:2,20
10:20 23:12,13,19
23:20 24:22 28:21
28:22 29:4,11,17
29:22 31:16 32:20
37:5 38:12 41:10
52:17 53:13 55:14
55:16 56:9 57:9
59:6 64:4 67:14

73:4 85:8 88:24
89:23 91:10,18
94:4 96:23
**we've** 11:18 12:3,5
13:7,7,8,8 22:24
23:5 24:6 25:3 36:3
45:4 56:18 58:20
58:20 59:20 80:14
96:16
**whatsoever** 15:20
**whereabouts** 69:12
**WHEREOF** 97:19
**whichever** 23:4
**widely** 60:12
**willfully** 20:13,14
**willing** 12:7,7 29:4
31:1
**win** 54:9
**wire** 6:17
**wish** 5:16,25 6:10
54:15 62:22 76:14
**wishes** 40:2
**withdraw** 43:2
**withdrawn** 18:13
37:24 38:4 43:3,4
64:14,20
**withdrew** 17:20
18:18
**Withheld** 42:10
**withstanding** 45:2
**witness** 29:12 37:5
37:12 38:25 55:11
59:18,19 75:18,23
75:25 76:16 77:8,9
77:22,24 78:25
80:13,14 83:4,9
84:20 92:2 93:2
97:19
**witnesses** 4:21
38:21 73:15 74:8
74:12 75:12 76:4,8
78:17,21 79:16
82:15,17,25 83:6
84:6,17 85:16 87:9
87:10 93:11 97:6
**woman** 33:21
**Woodman** 85:18
87:1 89:22,24
**word** 27:15 53:1,3,16
69:3 93:23
**words** 69:5
**work** 21:23,24,24
22:10,11 34:10,20
49:13,14 55:15
70:19

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.____

Exhibit 262, P. 362

worked 47:15,18 79:9
working 35:2
works 17:8,18 21:16 21:21 22:8 47:22
work-product 43:23 44:1 54:8
worried 92:12
worrying 50:12
wouldn't 26:10 70:19
would-be 51:6
writing 16:16 54:4
written 16:12
wrong 33:19 34:3 35:12 36:25 61:17 80:19 93:10
wrongdoing 28:1
wronged 33:20
wrongful 31:4,5 36:16
wrote 66:22

**Y**
Yamamoto 82:12
yeah 26:10 43:4 71:16 72:5 88:16 88:18 89:14,17 90:5
year 55:24
years 37:16 47:15 55:5,22 56:6 92:1
yields 58:14

**Z**
Zeus 76:12,13,18 81:9 82:5 84:22
Z-e-u-s 76:13 84:22

**$**
$12,000 12:5,19
$32,000 83:14

**0**
02 40:17
025682 51:3
04 59:8
04-9049 1:5 2:5
08 83:11 85:4
0825495 50:23
0825680 43:16
0825681 54:6
0825682 43:16

**1**

1:30 2:16 4:2
10 57:14
10th 3:12 15:13
10-minute 73:5
100 12:21 26:12
106 26:12
10602 1:22 2:18 97:25
11 25:24 48:3 57:15 70:5 81:8 83:1 84:18 86:9 91:16
11th 22:19 39:20
1111 27:24
112 26:13
118 26:13
12 6:5 57:15
120 40:20,22
126 26:13
127 26:13
129 26:13
13 81:8 83:1 84:19 86:9 92:17,18
13th 54:19
131 26:13
133 26:13
135 26:13
137 26:13
139 26:13
14 26:1 34:14 86:10 92:17,18
14th 26:3,14
141 26:13
143 26:14
15 26:20 28:9 30:2 36:13 39:2 42:20 85:13
15th 79:6
1500 2:15
16 36:13 39:3 85:18
163 6:16 8:5 9:1 10:21 11:13,13 15:21
17 32:16 33:12 39:3
17th 34:18 48:1
18 26:20 32:14,16 33:12 39:3,6 42:17 47:15
18th 39:21
19 30:10 33:12 37:9 39:3,6,6 86:10
19th 54:21
191 27:6,11
192 45:13

**2**

2 74:19 75:3 78:22 80:9 81:8 83:1 84:18 88:7
20 11:15,21 13:8,13 13:18 15:24 16:3 36:14 84:21
20th 16:20 21:3 22:25
200 9:13,24 10:1 40:20
2000 55:9 91:18 92:20
2001 31:13
2002 55:9 62:8
2003 27:13 30:24 37:4,14,17 39:7
2004 34:18 61:11,24
2005 37:25
2007 16:20 17:6 21:4 60:20 66:22
2008 1:16 2:17 4:1 39:10
21 28:9 30:2 37:23 38:3 39:3,6 42:21 86:10
21st 39:22
213.443.3000 3:13
22 16:4 78:23
23 86:11 88:15,18
23rd 37:14
24 27:13 39:7 65:22 81:8 83:2 84:19
24th 30:24 37:4,17
242 45:13
25 86:11
26 15:4 28:10 29:10 30:2 32:10 36:9 38:24 39:4 69:4
26B 15:4
26B2B 13:24
26(b)(2) 10:12
27 86:14,15,20 92:17 93:4,18
27th 16:22
28 39:10 86:21 92:17 93:4,19
28th 42:6 83:11 85:4
29 70:22 72:16

**3**
3 1:16 2:17 4:1 34:14
3rd 27:24
3.4 10:19
30 9:1 26:7
30(b)(6) 4:21 42:13

73:13,14,25 74:7 76:3 79:3 82:15,24 84:17 85:16
30,000 41:5
300,000 40:21
31 86:23
33 26:9,11
34 15:5 26:9,11 86:25 87:5,10 89:23 93:17
35 64:3
36 20:23
36A 21:7,9,19 22:23 23:2
37 83:13 84:24
38th 3:17
39 87:11,14,15

**4**
4 34:16 51:1,4,5 91:14
4th 16:23
4:05 2:16 4:2
40 9:1 87:18 88:3
41 80:21 81:8,23 82:5 84:2,22 88:4 88:23 90:2
415.391.5400 3:7
415.984.6400 3:18
43 41:6
44 27:24

**5**
5 28:9 91:14
50 9:1
500 87:4
501 93:20
502 87:4
54 80:25
548 87:4
55 81:1
56 81:1
580 87:5
584 87:5
590 87:5

**6**
6 64:15 71:2,10
60 12:6,19 15:24

**7**
7 71:3,10 74:19 75:3 78:23 80:10
7th 16:24
710 3:6

76 16:4
79867 1:23

**8**
8 70:24,25 71:3,10 81:8 83:1 84:18
8-0 15:9
80 12:13,22 14:19 15:7,23,24 16:3,8,8
82 54:6
865 3:12

**9**
9 27:5
90017 3:12
94111-1704 3:6
94111-5974 3:18

EXHIBIT 30

1   THOMAS J. NOLAN (Bar No. 66992)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2   300 South Grand Avenue
    Los Angeles, CA  90071-3144
3   Telephone:  (213) 687-5000
    Facsimile:  (213) 687-5600
4   E-mail:  tnolan@skadden.com

5   RAOUL D. KENNEDY (Bar No. 40892)
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6   4 Embarcadero Center, 38th Floor
    San Francisco, California 94111-5974
7   Telephone:  (415) 984-6400
    Facsimile:  (415) 984-2698
8   Email:  rkennedy@skadden.com

9   Attorneys for Counter-Defendants,
    MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA
10  ENTERTAINMENT (HK) LIMITED, and MGAE de MEXICO S.R.L. de C.V.

11

12                    UNITED STATES DISTRICT COURT

13                    CENTRAL DISTRICT OF CALIFORNIA

14  CARTER BRYANT, an individual        )   CASE NO. CV 04-9049 SGL (RNBx)
                                        )
15                  Plaintiff,          )   Consolidated with Case No. 04-9059
                                        )   and Case No. 05-2727
16          v.                          )
                                        )   DISCOVERY MATTER
17  MATTEL, INC., a Delaware            )
    corporation                         )   Discovery Master Hon. Edward A.
18                                      )   Infante (Ret.)
                    Defendant.          )
19                                      )   [PROPOSED] ORDER REGARDING
                                        )   MGA AND CARTER BRYANT'S
20                                      )   JOINT MOTION TO OVERRULE
                                        )   MATTEL'S RELEVANCE
21                                      )   OBJECTIONS AND COMPEL
                                        )   DISCOVERY RELEVANT TO
22                                      )   STATUE OF LIMITATIONS AND
                                        )   LACHES DEFENSES
23                                      )
24  _____|
    Consolidated with MATTEL, INC. v.
25  BRYANT and MGA                          Phase I:
    ENTERTAINMENT, INC. v.                  Discovery Cut-Off:  January 28, 2008
26  MATTEL, INC.                            Pre-Trial Conference: May 5, 2008
                                            Trial Date:          May 27, 2008
27

28
    _____
    07209/2345649.1                [PROPOSED] ORDER

                    Exhibit 30, P. 364

1  MGA and Carter Bryant's Joint Motion to Overrule Mattel's Relevance

2  Objections and Compel Discovery Relevant to Statue of Limitations and Laches

3  Defenses came on for hearing before me on January 3, 2008.  MGA and Bryant

4  having withdrawn their request that Mattel supplement its discovery responses, and

5  the matter having otherwise been fully briefed and argued, and good cause

6  appearing, IT IS HEREBY ORDERED THAT:

7      1.   The motion is GRANTED as to Topics 15, 16, 17, 18, 19, 20 and 21 in

8           Carter Bryant's Rule 30(b)(6) Deposition Notice.   All of Mattel's

9           objections as to those topics are overruled, as the information sought is

10          relevant, *inter alia*, to MGA's and Bryant's statute of limitations and

11          laches defenses.   Topics 19 and 21 are narrowed to the time period prior

12          to November 24, 2003;

13     2.   Mattel shall produce a competent and adequately prepared Rule 30(b)(6)

14          witness or witnesses for deposition on Topics 15, 16, 17, 18 and 20 and

15          Topics 19 and 21 as temporally narrowed by the Discovery Master.

16          Mattel shall have complied with this Order by January 28, 2008.

17     3.   A ruling on the Motion with respect to Topic 26 is deferred for

18          consideration in connection with MGA's Motion To Compel Regarding

19          Mattel's Privilege Waiver By Claim Assertion.

20  IT IS SO ORDERED.

21  DATED: _Jan 9_, 2008

22

23                                              Hon. Edward A. Infante (Ret.)
                                                Discovery Master

24

25

26

27

28

07209/2345649.1

1

[PROPOSED] ORDER

Exhibit 36, P. 364