# EXHIBIT 31

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 90378)
(johnquinn@quinnemanuel.com)
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)
Consolidated with
Case Nos. CV 04-09059 & CV 05-2727

**DISCOVERY MATTER**

**[To Be Heard By Hon. Edward Infante (Ret.) Pursuant To Order Of December 6, 2006]**

MATTEL, INC.'S OPPOSITION TO MGA'S AND CARTER BRYANT'S MOTION TO OVERRULE MATTEL'S RELEVANCE OBJECTION AND COMPEL DISCOVERY RELEVANT TO STATUTE OF LIMITATIONS AND LACHES DEFENSES

[Declarations of Jon D. Corey and Michael Moore Filed Concurrently]

Date: January 3, 2008
Time: 1:30 p.m.
Place: JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California

**Phase 1**
Discovery Cut-Off: January 28, 2008
Pre-Trial Conference: May 5, 2008
Trial Date: May 27, 2008

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

PRELIMINARY STATEMENT ........ 1

BACKGROUND FACTS ........ 2

ARGUMENT ........ 7

I. TOPIC NOS. 15, 16 AND 20 ARE IMPROPER AND OBJECTIONABLE ........ 7

A. The Topics Are Overbroad Because They Seek Information Regarding Any Wrongful Conduct by Bryant ........ 7

B. The Topics are Vague and Ambiguous And Call For A Legal Conclusion ........ 8

C. The Topics Seek The Date Mattel Obtained Actual Knowledge of Bryant's Wrongful Conduct; That Date is November 24, 2003 ........ 9

II. TOPIC NOS. 17-19 ARE OVERBROAD BECAUSE THEY SEEK INFORMATION THAT IS NOT A BASIS FOR MATTEL'S CLAIMS OR MGA'S DEFENSES TO THOSE CLAIMS ........ 10

A. Topic Nos. 17-19 Seek Information That Cannot Put Mattel on Actual or Inquiry Notice of Any Claim, So It Is Irrelevant ........ 10

B. Mattel Cannot Educate A Witness to All Facts Regarding Bryant's Creation of Bratz While At Mattel Because the Protective Order Prohibits Counsel from Showing Mattel Much of That Evidence ........ 12

C. Topic No. 19 Is Separately Overbroad ........ 14

III. BRYANT WITHDREW TOPIC NO. 21 ........ 14

IV. TOPIC NO. 26 IS NOT ONLY OVERBROAD, BUT SEEKS EXCLUSIVELY ONLY PRIVILEGED INFORMATION ........ 15

V. MATTEL SHOULD NOT BE COMPELLED TO SUPPLEMENT ALL ITS DISCOVERY RESPONSES AND DOCUMENT PRODUCTION BASED ON OBJECTIONS TO EIGHT RULE 30(B)(6) DEPOSITION TOPICS ........ 16

CONCLUSION ........ 18

# TABLE OF AUTHORITIES

Page

## Cases

3M Co. v. Kanbar, 2007 WL 1794936 (N.D. Cal. 2007) .......... 9

Am. Banana Co., Inc. v. Republic Nat'l Bank of New York, N.A., 2000 WL 521341 (S.D.N.Y. 2000) .......... 15

Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc., 175 F.R.D. 646 (C.D. Cal. 1997) .......... 17

Fresenius Med. Care Holdings Inc. v. Baxter Int'l, Inc., 224 F.R.D. 644 (N.D. Cal. 2004) .......... 11

Hobson v. Wilson, 737 F.2d 1 (D.C. Cir. 1984), cert. denied, 470 U.S. 1084, 105 S. Ct. 1843, 85 L. Ed. 2d 142 (1985) .......... 11

Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103 (1988) .......... 10, 11

Kolani v. Gluska, 64 Cal. App. 4th 402 (1998) .......... 12

Mahach-Watkins v. Depee, 2007 WL 1394651 (N.D. Cal. 2007) .......... 17

Rambus Inc. v. Samsung Elecs. Co., 2007 WL 3444376 (N.D. Cal. 2007) .......... 11

Robinson v. Jardine Ins. Brokers Intern. Ltd., 856 F. Supp. 554 (N.D. Cal. 1994) .......... 12

Soliman v. Philip Morris Inc., 311 F.3d 966 (9th Cir. 2002) .......... 10, 11

Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, Inc., 106 F.3d 894 (9th Cir. 1997) .......... 11

## Statutes

Cal. Bus. & Prof. Code § 16600 .......... 12

Fed. R. Civ. P. .......... 14

26 .......... 8, 13

26(b)(1) .......... 8, 9, 14

30(b)(6)

**Other Authorities**

Central District Local Rules ........ 17
Rule 37-1 ........ 17
Rule 37-2.1 ........

-iii-
07209/2326705.2
MATTEL'S OPPOSITION TO MGA AND CARTER BRYANT'S MOTION TO COMPEL
Exhibit 31, P. 368

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

MGA and Bryant start with false statements. First, Mattel does *not* refuse to provide any discovery as to when it first knew or should have known the facts underlying its claims against MGA or Bryant. To the contrary, Mattel and Bryant and MGA agreed to narrow the overbroad topics at issue in this Motion to "the claims and defenses" in this case, and Mattel agreed to produce a witness on those narrowed topics. Bryant and MGA reneged on that agreement and rejected Mattel's offer.

Second, Mattel's sole objection to the scope of specific topics is not that Judge Larson has already determined the date of when Mattel first learned that Bryant worked for MGA while a Mattel employee—November 23, 2003—when it received a copy of Bryant's contract with MGA. Indeed, Bryant and MGA's motion studiously avoids the language of the Topics at issue, which are not reasonably particularized and are independently objectionable.

While disguised as a motion about statutes of limitations and laches, Bryant and MGA seek an order compelling Mattel to educate a witness to testify regarding information that far exceeds the scope of the claims or defenses at issue. They seek to compel Mattel to educate and to produce a witness to testify regarding "*all* acts, omissions, circumstances and/or evidence showing, or tending to show, when Mattel first became aware of *any alleged wrongful conduct of Bryant*" – regardless of whether the allegedly wrongful conduct is at issue in this case. And MGA and Bryant seek to compel a witness on "*all* acts, omissions, circumstances and/or evidence showing, or tending to show, all actions taken by [Mattel] . . . relating to Bratz after [Mattel] learned that Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz." As written, that topic includes every action ever taken by Mattel related to Bratz. As a key product manufactured and marketed by a Mattel competitor, Mattel has taken innumerable

actions related to Bratz that have no relevance to the claims or defenses in this case (e.g., decisions on how to compete with Bratz), let alone MGA's and Bryant's laches and statute of limitations defenses. Indeed, this request parallels MGA's requests that Mattel produce all documents it has that reference "Bratz," which the Discovery Master has rejected.

MGA and Bryant tack on to their motion a request for an order compelling Mattel to "supplement all of its discovery responses and document productions" based on Mattel's objections to the eight Rule 30(b)(6) topics at issue in the motion. Such a request flouts both the requirement of the Local Rules, and the practice of the Discovery Master, that discovery disputes be resolved in the context of specific requests and specific questions, not based on unsupported generalities. MGA and Bryant provide no authority warranting such broad relief, and the motion should be denied.

**Background Facts**

Bryant' Notice of Deposition. On December 21, 2004, Carter Bryant served a Rule 30(b)(6) notice on Mattel that included 56 topics for examination.[1] MGA's and Bryant's motion seeks to compel Mattel to prepare and produce a witness on eight of those topics. The eight topics at issue essentially fall into two broad categories. First, topics that seek information regarding *any* wrongful conduct by Carter Bryant, whether a basis for a claim or defense in this case or not:

> Topic 15: All acts, omissions, circumstances and/or evidence showing, or tending to show, when Mattel first became aware of *any alleged wrongful conduct of Bryant*.

[1] Notice of Deposition of Plaintiff and Counter-Defendant Mattel, Inc., dated December 21, 2004, attached as Exhibit 3 to the Declaration of Marcus R. Mumford ("Mumford Dec.").

Topic 16: All acts, omissions, circumstances and/or evidence showing, or tending to show, the manner and mode by which Mattel first became aware of *any alleged wrongful conduct of Bryant.*

Topic 20: All acts, omissions, circumstances and/or evidence showing, or tending to show, all actions taken by [Mattel], including but not limited to all circumstances surrounding any investigations [Mattel has] undertaken, relating to Bryant and *any act or omission of Bryant that breached any contractual or non-contractual duty or obligation Bryant owed to Mattel.*

Second, topics that seek information regarding Mattel's actions and knowledge regarding Bryant's involvement in Bratz:

Topic 17: All acts, omissions, circumstances and/or evidence showing, or tending to show, when [Mattel] first became aware that *Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz.*

Topic 18: All acts, omissions, circumstances and/or evidence showing, or tending to show, how [Mattel] first became aware that *Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz.*

Topic 19: All acts, omissions, circumstances and/or evidence showing, or tending to show, all actions taken by [Mattel], including but not limited to all circumstances surrounding any investigations you have undertaken, relating to Bratz *after [Mattel] learned that Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz.*

Topic 21: All Communications regarding *Bryant's involvement in the conception, creation, design and/or reduction to practice of Bratz* from 1998 until the date of the filing of the Complaint.

Topic 26: Communications, discussion, meetings, analyses and the decision-making process regarding measures taken or contemplated by

Mattel including, without limitation, any legal action brought or threatened to be brought (including demand letters or other notices) against Bryant including, without limitation, the filing of the Complaint.

Mattel served objections to the Topics set forth in Bryant's Notice on December 29, 2004.

March 15, 2005 Meeting of Counsel. On March 14 and 15, 2005, the parties met and conferred regarding a number of pending discovery issues, including several of the topics in Bryant's Rule 30(b)(6) notice to Mattel. Mattel identified its objection to Topic Nos. 15 and 16 on the grounds that "any alleged wrongful conduct of Bryant is too broad," but offered to produce a witness if the scope of the topics were limited to the wrongful conduct at issue in Mattel's claims.[2] Mattel also outlined its overbreadth objections to Topic Nos. 17-20, but offered to produce a witness on the topics subject to a similar limitation of their scope.[3] Magistrate Judge Block adopted the narrowing of the topics, as agreed to by the parties, at the March 14 and 15, 2005 meet and confer in a stipulation that was ordered on May 4, 2005.[4] The Court imposed a stay of proceedings on May 20, 2005, sixteen days later.[5]

November Meetings of Counsel. At a meeting of counsel on November 21, 2007, the parties again discussed certain topics in Bryant's Rule 30(b)(6) notice of Mattel. Mattel repeated its overbreadth and relevancy objections to a number of the Rule 30(b)(6) topics, including the eight topics at issue in MGA's and Bryant's motion and Topic Nos. 2-7 which generally seek information regarding

2 Transcript of Meet and Confer, dated March 15, 2005, at 256:18-257:24, attached as Exhibit 5 to the concurrently filed Declaration of Jon D. Corey ("Corey Dec.").

3 Id. at 259:17-260:2, 262:16-20, 264:4-265:23.

4 Stipulation and Order Re Certain Discovery Issues, Corey Dec., Exh. 6.

5 Court's Minute Order Re Discovery Stay, dated May 20, 2005, Corey Dec., Exh. 7.

all acts and omission of Bryant related to the contractual duties he owed Mattel and to proprietary Mattel information.[6] MGA proposed narrowing the scope of Topic Nos. 2-7 to the extent that Mattel is using the information as a basis for its claims or defenses in this litigation.[7] Mattel agreed to produce a witness on those topics based on that proposed limitation. MGA also agreed to similarly limit the scope of Topic Nos. 15 and 16 regarding Bryant's wrongful conduct "to the extent Mattel asserts it as a basis for any of its claims or defenses in this matter."[8] Mattel proposed that the same limitation be applied to Topic Nos. 17-20.[9] Mattel also reiterated its objection to Topic No. 26 on the grounds that to the extent it seeks relevant information, "its subject matter is privileged."[10]

On November 29, 2007, counsel for MGA responded to Mattel's letter memorializing the parties' November 21, 2007 meeting of counsel.[11] MGA withdrew its agreement to limit the scope of Topic Nos. 15 and 16 and refused Mattel's proposal to limit the scope of the other topics at issue in MGA's and Bryant's motion.[12] Mattel's counsel responded to MGA's letter, reiterating its overbreadth and related relevance objection to the topics at issue.[13] Specifically, Mattel noted that "[a]s phrased, Topics Nos. 15-16 and 20 are overbroad" because they "seek information regarding when Mattel first learned of 'any alleged wrongful conduct of Bryant' and 'any act or omission of Bryant that breached any contractual

---

6 Letter from Jon D. Corey to Raoul Kennedy, dated November 26, 2007, Mumford Dec., Exh. 1.

7 Id. at p. 2.

8 Id. at p. 4.

9 Id.

10 Id.

11 Letter from Marcus R. Mumford to Jon D. Corey, dated November 29, 2007, Mumford Dec., Exh. 14.

12 Id.

13 Letter from Jon D. Corey to Marcus Mumford, dated December 6, 2007, Mumford Dec., Exh. 15.

or non-contractual duty or obligation Bryant owed to Mattel.'"[14] Mattel explained that "[a]s phrased . . . the scope of the topics contemplate every single bad act Bryant may have engage in at any time in his life, including . . . the theft of a pencil."[15] Mattel reiterated its understanding that the parties' had agreed to limit the scope of those requests to "any alleged wrongful conduct to the extent Mattel asserts it in claims or defenses of Bryant at issue in this matter."[16] Mattel also restated its position that Topic Nos. 17-19 were overbroad in that, as drafted, they sought information not relevant to the claims or defenses at issue in the litigation. Mattel explained that "[i]t is not a defense to Mattel's claims that Mattel knew that Bryant worked for MGA prior to November 2003," and that "when Mattel learned that Bryant may have been involved in creating, designing or reducing to practice Bratz while he was an MGA employee (or contractor), provides no notice of the predicate facts of Bryant's wrongdoing in this suit."[17] Mattel offered to produce a witness to the extent MGA and Bryant agreed to limit the scope of the topics to "how Mattel discovered that Bryant was involved in the conception, creation, design or reduction to practice of Bratz *while he was a Mattel employee* and Mattel's response thereto."[18] That proposed limitation did not exclude Mattel's knowledge, if any, prior to November 2003. Last, Mattel reiterated its objections to Topic Nos. 21 and 26.

December 6, 2007 Meeting of Counsel. The parties subsequently met and conferred on December 6, 2007, at which each of these issues were discussed and Mattel reiterated its positions, objections, and made clear that it was willing to prepare a witness to testify regarding when Mattel first learned that Bryant was performing work for MGA while a Mattel employee. Bryant and MGA rejected that

---

[14] Id. at p. 1.
[15] Id.
[16] Id. at pp. 1-2.
[17] Id. at p. 2.
[18] Id.

offer. Mattel explained, once again, that these requests should be tailored by the claims and defenses at issue in this case. Namely, Mattel's claim is that Bryant breached obligations to Mattel when he worked for MGA while a Mattel employee. MGA's statute of limitations and laches defenses are to those claims only; any statute of limitations or laches defense to claims that Mattel has not brought, such as a claim that Bratz infringes the Toon Teen copyrights, are irrelevant.[19]

Neither counsel for Bryant nor counsel for MGA were familiar with the discussions that occurred on March 15, 2005.[20] Bryant's counsel requested a copy of the transcript of that meeting of counsel, which counsel for Mattel provided.[21] MGA and Bryant did not respond to the transcript that Mattel provided, but filed this motion.

**Argument**

**I. TOPIC NOS. 15, 16 AND 20 ARE IMPROPER AND OBJECTIONABLE**

**A. The Topics Are Overbroad Because They Seek Information Regarding Any Wrongful Conduct by Bryant**

Topic Nos. 15, 16 and 20 in Bryant's Rule 30(b)(6) notice seek information regarding when Mattel learned of *any* wrongful conduct by Bryant. As drafted, Topic Nos. 15, 16 and 20 would require Mattel to prepare a witness on a whole range of potentially wrongful conduct by Bryant that is plainly unrelated to the claims and defenses in this litigation. For example, those Topics would require Mattel to prepare a witness on matters as far afield as the theft of a pen or complaints that Bryant harassed other employees or Bryant's failure to comply with Mattel's vacation policy. Mattel should not be required to prepare a witness on such irrelevant information.

---

19 Corey Dec., ¶ 4.
20 Corey Dec., ¶ 5.
21 Corey Dec., ¶ 6.

Mattel has asserted claims arising from very specific wrongful conduct, such as Bryant's creation of Bratz while a Mattel employee and wrongful assignment of Bratz to MGA and working with MGA while he was an employee at Mattel, for example.[22] Because the claims are limited to specific conduct, discovery must be limited to information relevant to that specific conduct. Fed. R. Civ. P. 26(b)(1). Mattel, as it has previously offered and as all parties have previously agreed, will produce a witness to testify regarding when Mattel first learned of Bryant's wrongful conduct as alleged in the Complaint and the Counterclaims—namely that Bryant worked for MGA while a Mattel employee and assigned MGA rights that rightfully belonged to Mattel. MGA and Bryant are, of course, entitled to inquire of Mattel witnesses about *any* misconduct by Bryant, but Mattel has no obligation to educate and produce a corporate designee to testify in that regard.

**B. The Topics are Vague and Ambiguous And Call For A Legal Conclusion**

Rule 30(b)(6) topics must be "reasonably particularized." See Fed. R. Civ. P. 30(b)(6) (notice "must describe with reasonable particularity the matters for examination"). Topics 15, 16 and 20 are not. They seek witnesses to testify regarding "any wrongful conduct" or "any act or omission of Bryant that breached any contractual or non-contractual duty or obligation Bryant owed to Mattel." Such requests are not "reasonably particularized." See Fed. R. Civ. P. 30(b)(6). Indeed, they require Mattel to speculate as to what Bryant meant by "wrongful conduct" or "any contractual or non-contractual duty or obligation."

Further, none of those requests are factual, as they must be. Rather, to frame each request, Mattel must make a legal conclusion—beyond its claims—as to whether Bryant's unrelated conduct was "wrongful" or breached duties or obligations owed to Mattel. See 3M Co. v. Kanbar, 2007 WL 1794936, at *2 (N.D.

[22] See Mattel, Inc.'s Second Amended Answer In Case No. 05-2727 and Counter-Claims, dated July 12, 2007, Corey Dec., Exh. 8.

Cal. 2007) (granting protective order because Rule 30(b)(6) topics sought "legal conclusions that should not form the basis for 30(b)(6) deposition topics"). Indeed, at the meeting of counsel on March 15, 2005, the parties specifically agreed that the scope of each Topic would be limited to factual information, not legal contentions.[23]

**C. The Topics Seek The Date Mattel Obtained Actual Knowledge of Bryant's Wrongful Conduct; That Date is November 24, 2003**

Only when the Topics are narrowed to the claims that Mattel has asserted do they become reasonable. Mattel obtained knowledge of Bryant's wrongful conduct on November 24, 2003. That was the date that a Mattel representative, Michael Moore, received a copy of Bryant's contract with MGA in which he agreed to provide services to MGA "as of September 18, 2000," which coincided with his Mattel employment.[24]

Judge Larson saw this—and far more evidence than MGA or Bryant have presented here supporting their position. His ruling is unequivocal. "[T]he Court determines that November 24, 2003, marks the date when litigation between Mattel and Bryant became more than merely speculative and in fact became probable."[25] To the extent that the Topics seek Mattel's actual knowledge of Bryant's wrongful conduct at issue in this case, that date is November 24, 2003.

In light of the Court's ruling that Mattel gained actual knowledge of Bryant's misconduct that formed the basis for the claims on November 23, 2003—whether binding or not—and given that the Topics seek only Mattel's actual knowledge, no witness is necessary on these Topics. MGA and Bryant may seek discovery of other facts to support a defense based upon inquiry notice, but those facts do not fall within the scope of Topic Nos. 15, 16 or 20, which are limited to

---

23 March 15, 2005 Tr. at 169:17-24, 175:23-176:16, Corey Dec., Exh. 5.

24 Moore Dec., ¶ 4.

25 Order Denying Motion for Terminating Sanctions at 3, Corey Dec. Exh. 9.

when and how "Mattel first became *aware*."[26] If necessary, Mattel will educate and produce a witness to testify that Mattel received Bryant's contract with MGA on November 24, 2003.

## II. TOPIC NOS. 17-19 ARE OVERBROAD BECAUSE THEY SEEK INFORMATION THAT IS NOT A BASIS FOR MATTEL'S CLAIMS OR MGA'S DEFENSES TO THOSE CLAIMS

### A. Topic Nos. 17-19 Seek Information That Cannot Put Mattel on Actual or Inquiry Notice of Any Claim, So It Is Irrelevant

Topic Nos. 17-19 are overbroad, seek information that imposes an undue burden upon Mattel and seek irrelevant information. Each Topic is predicated upon Mattel knowing when "Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz." When Mattel learned that, however, is irrelevant. That Bryant created Bratz provides no notice of any wrongful conduct. Employees regularly leave Mattel to work for competitors. No claim accrues each time Mattel learns that a former employee works for a competitor on a competing product.

In contrast, when Mattel learned that Bryant created Bratz *while he was a Mattel employee*, is crucial. If the Topics are so narrowed, Mattel could possibly educate and produce a witness. See Part II.B. But, Bryant and MGA do not seek that information with Topic Nos. 17-19, nor have they agreed to Mattel's offer to produce a witness on such narrowed Topics.

MGA's and Bryant's own authorities compel the conclusion that Bryant's work on Bratz while at MGA, as opposed to Mattel, is irrelevant. In both Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103 (1988) and Soliman v. Philip Morris Inc., 311 F.3d 966 (9th Cir. 2002), both the California Supreme Court and the Ninth

---

26 Webster's Encyclopedic Unabridged Dictionary defines "aware" as "having knowledge, conscious, cognizant." Corey Dec., Exh. 10. In Topic No. 20, Mattel's knowledge is implicit in the Topic.

Circuit required facts sufficient to put a party on notice *of a wrong* before a limitations period began to run. Jolly, 44 Cal. 3d at 1110, 1113 ("The statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused *by wrongdoing, that someone has done something wrong to her*. . . . At this point it is necessary only to point out the oft-stated rule that it is the discovery of facts, not their legal significance, that starts the statute.") (emphasis added); Soliman, 311 F.3d at 972 (holding that the limitations period commenced when "he should have known of any significant injury *from defendants' wrongful conduct*") (emphasis added).[27]

Similarly, in Fresenius Med. Care Holdings Inc. v. Baxter Int'l, Inc., 224 F.R.D. 644, 655 (N.D. Cal. 2004), the court compelled the plaintiff in a patent infringement action to produce documents related to when it first received notice of the allegedly infringing product–the specific *wrongful* conduct at issue in plaintiff's claims. In Rambus Inc. v. Samsung Elecs. Co., 2007 WL 3444376, at *4 (N.D. Cal. 2007), the court compelled the production of documents related to when Samsung first had notice that its former employee took confidential information to a competitor—the allegedly *wrongful* conduct at issue in the case.

Unlike all of those cases, merely working for a competitor is not notice of a wrong. The only facts sought to be elicited in Topic Nos. 17-19, as phrased, are when Mattel learned what Bryant was doing at a competitor. Unlike Rambus, Mattel had no idea that Bryant "took confidential information to a competitor."

---

[27] Mattel does not, by citing these cases, concede that they have any application here whatsoever, given that they deal with statute of limitations governing personal injury claims arising out of defective products. Indeed, in a far more relevant context, the Ninth Circuit has ruled that to establish equitable defenses of estoppel, laches, and acquiescence, the defendants had to prove that Mattel knew of facts giving it notice of its trademark counterfeiting cause of action, *not just any cause of action*. Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, Inc., 106 F.3d 894, 899 (9th Cir. 1997) (citing Hobson v. Wilson, 737 F.2d 1, 35 (D.C. Cir. 1984), cert. denied, 470 U.S. 1084, 105 S. Ct. 1843, 85 L. Ed. 2d 142 (1985)).

There is nothing inherently "wrong" or to suggest that Mattel was being "wronged" when it learned that Bryant had left Mattel to work for a competitor, or even to work on a competing product. The California Legislature has specifically determined that employees in California can leave employers to work for competitors. See Cal. Bus. & Prof. Code § 16600 ("Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."); Kolani v. Gluska, 64 Cal. App. 4th 402, 407 (1998) (finding covenant not to compete in employment agreement to be "an outright prohibition on competition" and therefore void); Robinson v. Jardine Ins. Brokers Intern. Ltd., 856 F. Supp. 554, 558 (N.D. Cal. 1994) (under California law, "[a]s a general proposition, an individual has a right to freely pursue the livelihood of his or her choice").

Because, by definition, working for a competitor cannot constitute notice for statute of limitations purposes, the Topics are irrelevant and overbroad and Mattel's objections should be sustained or the Topics tailored to relevant evidence—Mattel's knowledge that Bryant created Bratz while at Mattel.

**B. Mattel Cannot Educate A Witness to All Facts Regarding Bryant's Creation of Bratz While At Mattel Because the Protective Order Prohibits Counsel from Showing Mattel Much of That Evidence**

When Mattel and Bryant first broached these Topics, it was agreed that Mattel (and MGA on the other hand) would only be required to educate a witness about information in the possession of the client. Neither party adopted a burden of educating a witness to testify about evidence gathered from the opposing party or parties or from third parties in discovery.[28] Nor could they. Significant portions of the evidence produced in discovery, particularly as it relates to the early development of Bratz, is identified as Attorney's Eyes Only under the Protective

[28] March 15, 2005 Tr. at 204:7-213:6, Corey Dec., Exh. 5.

Order. So designated, evidence relating to the timing of the early creation of Bratz, including, for example, payments to Bryant by MGA, invoices submitted by Anna Rhee to MGA, and payments to Veronica Marlow all before Bryant left Mattel, cannot be shown to Mattel.[29] Because of these limitation, Mattel cannot "connect the dots" for MGA or Bryant in this regard.

As MGA and Bryant acknowledge, Mattel proposed limiting the scope of the topics "to the extent Mattel asserts [the matter at issue] as a basis for any of its claims or defenses in this matter."[30] On November 21, 2007, Mattel agreed to produce a witness to testify when Mattel learned that Bryant worked for MGA while a Mattel employee. After initially agreeing to that limitation, MGA and Bryant now claim that the proposed limitation somehow omits from testimony matters that might form the basis of *their* defenses.[31] That argument misses the point. MGA and Bryant claim that the Topics are relevant only to their statute of limitations and laches defenses. Those defenses depend on when Mattel first learned of wrongful conduct at issue in *Mattel's* claims, not when Mattel learned of some other claims that are strangers to this litigation. MGA and Bryant have not, and cannot, identify any other wrongful conduct by Bryant for which Mattel's knowledge would have any relevance to the statute of limitations and laches defenses pleaded. For example, Mattel has disclaimed any claim that Bryant's work on Bratz infringed Mattel's "Toon Teens" copyrights.[32] Because that is not a claim in this case—and neither Bryant nor MGA have a defense to that claim—any inquiry into whether Mattel had notice of a claim for infringement of the Toon Teens copyrights is irrelevant. Fed. R. Civ. P. 26(b)(1).

---

29 Corey Dec., ¶ 9.
30 MGA/Bryant Motion, at p. 4.
31 Id.
32 Report to Judge Larson; June 26, 2006 Hearing Tr. at 61:10-62:17, Corey Dec. Exh. 13.

**C. Topic No. 19 Is Separately Overbroad**

Topic No. 19 is overbroad and not reasonably particularized for an additional reason. Topic No. 19 seeks "[a]ll acts, omissions, circumstances and/or evidence showing, or tending to show, *all actions taken by [Mattel] . . . relating to Bratz* after [Mattel] learned that Bryant was involved in the conception, creation, design and/or reduction to practice of Bratz." Mattel and MGA are competitors and, as with any competitor, Mattel takes innumerable actions relating to products of MGA, including decisions on how to compete with those products. As drafted, Topic No. 19 would require Mattel to prepare a witness on all such actions taken by Mattel that relate to Bratz. The scope of the topic is thus well beyond the bounds of discoverable information pursuant to Rule 26. Indeed, the Discovery Master has regularly rejected requests for all documents related to Bratz.[33] This Topic is the same request in a different context and Mattel's objection should be sustained for the same reason.

**III. BRYANT WITHDREW TOPIC NO. 21**

Topic No. 21 seeks "[a]ll communications regarding *Bryant's involvement in the conception, creation, design and/or reduction to practice of Bratz* from 1998 until the date of the filing of the Complaint." Bryant made no effort to tailor this request, in that it seeks all communications occurring over more than six years. For example, no communications within two years of filing the complaint would remotely impact any statute of limitations or laches defense. Nor is this a "reasonably particularized" topic that Rule 30(b)(6) requires. Indeed, the Discovery Master has repeatedly rejected such overbroad requests.[34]

---

[33] See Order Granting in Part and Denying in Part MGA's Motion to Compel Documents Responsive to First Set of Requests for Production of Documents Dated November 22, 2006, dated May 22, 2007, at 17-19, 21, Corey Dec., Exh. 14.

[34] Id.

Recognizing these deficiencies, at the meeting of counsel on March 15, 2005, Bryant withdrew and "tabled" Topic No. 21.[35] Magistrate Judge Block "so ordered" that tabling on May 4, 2004, when he adopted the parties' agreements as reflected in the March 15, 2005 transcript.[36] The Motion to compel Mattel to produce a witness on this, at best, unwieldy topic, should be denied.

## IV. TOPIC NO. 26 IS NOT ONLY OVERBROAD, BUT SEEKS EXCLUSIVELY ONLY PRIVILEGED INFORMATION

Topic 26 seeks "[c]ommunications, discussion, meetings, analyses and the decision-making process regarding measures taken or contemplated by Mattel including, without limitation, any legal action brought or threatened to be brought (including demand letters or other notices) against Bryant including, without limitation, the filing of the Complaint." Mattel possesses only privileged information in response to this Topic, and requests for discovery on such topics is routinely denied on that ground. See Am. Banana Co., Inc. v. Republic Nat'l Bank of New York, N.A., 2000 WL 521341, at *4 (S.D.N.Y. 2000) (finding that requests for documents regarding plaintiff's decision to commence action were not relevant to laches defense because such documents "would likely be protected by privilege").

At the March 15, 2005 meeting of counsel, Bryant's counsel specifically agreed to "exclude from this [Topic No. 26] and all of these matters that are subject to the protection under the attorney-client privilege or the work product privilege."[37] Later, during the December 6, 2007 meeting of counsel, Bryant's counsel asked Mattel whether meetings occurred between and among business people at Mattel—as opposed to lawyers—about whether or not to sue Bryant for solely business reasons.[38] Because, if such meetings occurred, then they would not

35 March 15, 2005 Tr. at 266:16-19, Corey Dec., Exh. 5.

36 Stipulation Regarding Discovery Matters at 1:12-16, Corey Dec. Exh. 6.

37 March 15, 2005 Tr. at 278:8-10, Corey Dec. Exh. 5.

38 Corey Dec. ¶ 7.

be privileged and could, theoretically, fall within the scope of this Topic. Mattel is aware of no such meeting or meetings occurring. All "communications, discussions, meetings, analysis and the decision-making process" regarding any legal action against Bryant occurred with the advice of and in consultation with counsel, both inside and outside.[39]

In addition to being denied on grounds that the scope of the Topic exceeds the scope of the claims or defenses at issue, the Motion should be denied on the grounds that the information responsive to this Topic is privileged.

## V. MATTEL SHOULD NOT BE COMPELLED TO SUPPLEMENT ALL ITS DISCOVERY RESPONSES AND DOCUMENT PRODUCTION BASED ON OBJECTIONS TO EIGHT RULE 30(B)(6) DEPOSITION TOPICS

Although MGA's and Bryant's motion is focused on eight specific topics in Bryant's Rule 30(b)(6) notice and Mattel's objections to those topics, MGA and Bryant ask the Discovery Master to enter an order requiring Mattel to overrule any relevancy objection and to supplement *all* of its discovery responses and document productions to date.[40] MGA's and Bryant's request is improper and should be denied.

MGA and Bryant claim that Mattel has made allegedly improper relevance objections throughout its discovery responses. But Mattel's responses to all discovery propounded on it throughout this litigation is not properly before the Discovery Master on this Motion. As cast, the Motion is an affront to the Local Rules and the practice of the Discovery Master.

---

[39] Moore Dec. ¶ 6. Mattel's Supplemental Privilege Log, dated October 29, 2007, p. 1, Corey Dec., Exh. 15.

[40] MGA/Bryant Notice of Motion (seeking an order "compelling Mattel to supplement *all* of its discovery responses and document productions" (emphasis added)).

MGA and Bryant provide no basis upon which to seek an order compelling further responses to discovery in general, rather than as to specific discovery requests. The Discovery Master has consistently rejected the parties' efforts to address discovery issues not properly before the Discovery Master.[41] MGA's and Bryant's request for an order compelling further responses to general discovery requests not before the Discovery Master should also be rejected here. Indeed, the Local Rules require that such motions be supported by a document setting forth either the specific requests or the specific question, and any specific objections, so that the Discovery Master will have both precision and context for such rulings. Central District Local Rule 37-2.1.

Although MGA and Bryant do identify a small number of specific discovery requests as examples of discovery that they believe Mattel should be ordered to supplement, MGA and Bryant do not seek an order compelling a response as to those requests, nor have they met and conferred on those requests.[42] Those requests are therefore not properly before the Discovery Master on the instant motion. Further, to the extent MGA's and Bryant's motion does seek to compel Mattel to provide a further response to those few specific requests identified, it should be denied because MGA and Bryant failed to meet and confer as required by Local Rule 37-1 and the Stipulation for Appointment of the Discovery Master as to those requests. See Cable & Computer Tech., Inc. v. Lockheed Saunders, Inc., 175 F.R.D. 646, 649-50 (C.D. Cal. 1997) (recognizing that failure to meet and confer is proper basis not to hear motion); Mahach-Watkins v. Depee, 2007 WL 1394651, at *1 (N.D. Cal. 2007) ("failure to meet and confer is reason alone to deny [] motion").

---

[41] See, e.g., Transcript of June 19, 2007 Hearing, at pp. 17-18 (refusing to hear matters regarding depositions not before the Discovery Master), Corey Dec., Exh. 11; Transcript of May 4, 2007 Hearing, at pp. 12-13 (same), Corey Dec., Exh. 12.

[42] Corey Dec. ¶ 8.

**Conclusion**

For the foregoing reasons, Mattel respectfully requests that the Court deny MGA's and Carter Bryant's motion to compel.

DATED: December 18, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By Jon D. Corey /SN
Jon D. Corey
Attorneys for Mattel, Inc.

# EXHIBIT 32

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Timothy L. Alger (Bar No. 160303)
(timalger@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff Mattel, Inc.

AUG 13 2007

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

AND CONSOLIDATED ACTIONS

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated with Case Nos. CV 04-09059 and CV 05-02727

MEMORANDUM OF POINTS AND AUTHORITIES OF MATTEL, INC. IN OPPOSITION TO MOTION OF MGA ENTERTAINMENT, INC. AND CARTER BRYANT FOR TERMINATING SANCTIONS

[Declarations of Fred T. Kawashima, Michael Moore, Richard De Anda, Jon D. Corey, Timothy L. Alger, Michael T. Zeller and B. Dylan Proctor, filed concurrently]

[Notice of Lodging lodged concurrently]

Date: August 27, 2007
Time: 10:00 a.m.
Place: Courtroom 1

Discovery Cut-off: January 14, 2008
Pre-trial Conference: April 7, 2008
Trial Date: April 29, 2008

PERSONALLY SERVED 5:10pm

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 2

ARGUMENT ..... 10

I. MGA AND BRYANT HAVE NO CLEAR AND CONVINCING EVIDENCE THAT MATTEL KNOWINGLY DESTROYED RELEVANT EVIDENCE, AS REQUIRED ..... 10

A. Mattel's Litigation Hold Obligations Attached In Late 2003, At The Earliest ..... 11

B. Mattel Preserved All Relevant Documents, And Certainly Did Not Knowingly Fail To Do So ..... 13

II. MGA AND BRYANT HAVE NOT SHOWN EXTRAORDINARY CIRCUMSTANCES TO WARRANT DISMISSAL ..... 16

A. There Are No Extraordinary Circumstances ..... 16

B. Mattel Did Not Act With Bad Faith, Willfulness Or Fault ..... 17

C. There Is No Nexus Between The Alleged Misconduct And The Merits Of The Case ..... 19

1. Mattel Has Overwhelming Evidence That Bryant Created Bratz While Employed By Mattel, And Aided By MGA ..... 19

2. The Allegedly Lost Evidence Does Not Even Bear On The Issues To Be Tried ..... 20

D. MGA and Bryant Were Not Prejudiced ..... 22

E. Lesser Sanctions Are Available, Although they Are Not Appropriate Either ..... 23

III. DEFENDANTS' HANDS ARE UNCLEAN ..... 23

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

Page

## Cases

Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406 (9th Cir. 1990) .......... 23

Advantacare Health Partners v. Access IV, 2004 WL 1837997 (N.D. Cal. 2004) .......... 16

Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143 (1987) .......... 22

Akiona v. U.S., 938 F.2d 158 (9th Cir. 1991) .......... 17, 18

Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337 (9th Cir. 1995) .......... 16, 17, 18

Bowmar Instrument Corp. v. Texas Instruments Inc., 1977 U.S. Dist. LEXIS 16078 (N.D. Ind. 1977) .......... 13

Broccoli v. Echostar Communications Corp., 229 F.R.D. 506 (D. Md. 2005) .......... 14, 18

Cache La Poudre Feeds, LLC v. Land O Lakes, Inc., 2007 WL 684001 (D. Colo. 2007) .......... 17

Chambers v. NASCO, Inc., 501 U.S. 32 (1991) .......... 10

Columbia Pictures Industries v. Bunnell, 2007 WL 2080419 (C.D. Cal. 2007) .......... 18

Communications Center, Inc. v. Hewitt, 2005 WL 3277983 (E.D. Cal. 2005) .......... 25

Convolve, Inc. v. Compaq Computer Corp., 223 F.R.D. 162 (S.D.N.Y. 2004) .......... 23

Daimler Chrysler Motors v. Bill Davis Racing, Inc., 2005 U.S. Dist. LEXIS 38162 (D. Mich. 2005) .......... 17

Estrada v. Speno & Cohen, 244 F.3d 1050 (9th Cir. 2001) .......... 16

In re Everett, 364 B.R. 711 (D. Ariz. 2007) .......... 24

Fayemi v. Hambrecht & Quist, Inc., 174 F.R.D. 319 (S.D.N.Y. 1997) .......... 24

FMC Technologies, Inc. v. Edwards, 2007 WL 1725098 (W.D. Wash. 2007) ........ 11

Fink v. Gomez, 239 F.3d 989 (9th Cir. 1991) ........ 11

Google, Inc. v. Am. Blind Wallpaper Factory, Inc., 2007 U.S. Dist. LEXIS 48309 (N.D. Cal. 2007) ........ 23

Halaco Engineering Co. v. Costle, 843 F.2d 376 (9th Cir. 1988) ........ 16, 19, 23, 24

Hall v. Wright, 240 F.2d 787 (9th Cir. 1957) ........ 24

Heller v. Plave et al., 1993 U.S. Dist. LEXIS 20936 (S.D. Fla. 1993) ........ 12

Henry v. Gill Industries, Inc., 983 F.2d 943 (9th Cir. 1993) ........ 18, 23

Hobson v. Wilson, 737 F.2d 1 (D.C. Cir. 1984) ........ 21

Housing Rights Center v. Sterling, 2004 U.S. Dist. LEXIS 28877 (C.D. Cal. 2004) ........ 17

Hynix Semiconductor Inc. v. Rambus, Inc., 2006 WL 565893 (N.D. Cal. 2006) ........ 11, 13

In re Kmart Corp., 2007 WL 2198309 (N.D. Ill. 2007) ........ 11

Lamont v. Wolfe, 142 Cal. App. 3d 375, 379 (1983) ........ 21

Leon v. IDM Systems Corp., 464 F.3d 951 (9th Cir. 2006) ........ 17, 18

Linnen v. A.H. Robins Co., Inc., 1999 WL 462015 (Mass. Sup. 1999) ........ 14

Maynard v. Nygren, 332 F.3d 462 (7th Cir. 2003) ........ 11

Mosaid Technologies Incorporated v. Samsung Electronic Co., Ltd., 348 F.Supp. 2d 332 (D.N.J. 2004) ........ 18

In re Napster, Inc. Copyright Litigation, 462 F. Supp. 2d 1060 (N.D. Cal. 2006) ........ 11, 12, 13, 16, 18

Nostalgia Network, Inc. v. Rayle, 56 Fed. Appx. 344 (9th Cir. 2003) ........ 16

Padgett v. City of Monte Sereno, 2007 U.S. Dist. LEXIS 23409 ........ 18

Pennar Software Corp. v. Fortune 500 Systems Ltd., 2001 WL 1319162 (N.D. Cal. 2001) .......... 11

Phoceene Sous-Marine v. U.S. Phosmarine, Inc., 682 F.2d 802 (9th Cir. 1982) .......... 10

Polar Bear Prod. v. Timex Corp., 384 F.3d 700 (9th Cir. 2004) .......... 22

Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806 (1945) .......... 24

Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99 (2d Cir. 2002) .......... 23

Ritchie v. U.S., 451 F.3d 1019 (9th Cir. 2006) .......... 10

Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980) .......... 10

Rohn v. U.S., 2002 WL 32123927 (E.D. Cal. 2002) .......... 11

Roley v. New World Pictures, 19 F.3d 479 (9th Cir. 1994) .......... 21, 22

Shepherd v. American Broadcasting Cos., Inc., 62 F.3d 1469 (D.C. Cir. 1995) .......... 11

U.S. v. Kitsap Physicians Service, 314 F.3d 995 (9th Cir. 2002) .......... 12, 15

U.S. v. Lynch, 437 F.3d 902 (9th Cir. 2006) .......... 16

U.S. v. National Medical Enterprises, Inc., 792 F.2d 906 (9th Cir. 1986) .......... 23

United States ex rel. Lujan v. Hughes Aircraft Co., 67 F.3d 242 (9th Cir. 1995) .......... 16, 24

Wanderer v. Johnston, 910 F.2d 652 (9th Cir. 1990) .......... 23

Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc., 106 F.3d 894 (9th Cir. 1997) .......... 21

Wm. T. Thompson Co. v. General Nutrition Corp., Inc., 593 F. Supp. 1443 (C.D. Cal. 1984) .......... 14, 17

Zubulake v. UBS Warburg LLC, 220 F.R.D. 212 (SD NY 2003) .......... 14, 23

**Statutes**

Local Rule 7-3 .......... 2
Fed. R. Civ. P. 15(c) .......... 21
Cal. Civ. Code § 3426.6 .......... 22

07209/2191979.6
-v-
Case No. CV 04-9049 SGL (RNBx)
MATTEL INC.'S OPPOSITION TO MOTION FOR TERMINATING SANCTIONS

Exhibit 32, P. 391

**Preliminary Statement**

From the beginning, defendants' strategy in this case was to conceal the true facts, including by obstructing discovery. Mattel has now obtained numerous Orders compelling discovery from them, and the evidence mounts with each. Evidence that Mattel has recently obtained powerfully shows that, on the merits, Mattel will prevail -- Bryant was disloyal and worked with MGA on Bratz while he was employed and paid by Mattel. This motion is a desperate attempt to avoid confronting that evidence with a get-out-of-jail-free card.

Indeed, defendants have already made many of the arguments they make here in opposing Mattel's Motion for Leave to Amend, and the Court rejected them. To justify their improper request for reconsideration, they accuse Mattel of "defrauding" the Court when Mattel said it had Zeus backup tapes for 1999 and 2000. Mattel has the tapes and long ago offered to produce them. They are still available whenever MGA and Bryant want them. Defendants also argue that emails have been lost since Bryant left Mattel, but they gloss over that Bryant left Mattel *in 2000*. Not even defendants contend Mattel had an obligation to preserve evidence before 2002. Emails relating to Bryant's work at Mattel were automatically deleted from the live servers, and the backup tapes reused, more than a year and a half before the date on which even defendants contend Mattel had to start keeping them.

The fact is that Mattel did not have any duty to preserve until late 2003. MGA and Bryant argue the duty was triggered in 2002 because of a Mattel security investigation, but that investigation concerned potential claims that are *not* at issue here. It did not relate to Bryant's creation of Bratz while he was a Mattel employee or his work for MGA while he was a Mattel employee. An obligation to preserve occurs when a claim is "probable." No claim was probable until late 2003, when Mattel first learned that Bryant worked for MGA while still employed by Mattel.

Unwittingly, even MGA acknowledges in its motion that, prior to then, Mattel's claims were not "probable" – they were "speculative."[1]

As discussed below, Mattel also has preserved hundreds of terabytes of data and expended many thousands of hours of legal personnel time alone in preserving and collecting documents -- far more than defendants could claim. There was no spoliation. Nor do defendants show that any documents essential to their claims or defenses have been lost. For example, MGA asserts (as it did on Mattel's Motion for Leave to Amend) that a phone log from October 2000 would somehow counter Mattel's claims. The October 2000 phone logs were no longer accessible long before the claims asserted here were "probable." Moreover, a phone log only lists phone numbers and dates of calls, not substance -- a log from October 2000 would add nothing new, particularly since it is undisputed that Bryant was actively working with MGA in October 2000 (and before) while employed by Mattel. MGA asserts that missing evidence could prove its statute of limitations defense, but it could not possibly do so. Among other reasons, that defense was ruled out six months ago in accordance with well-settled law.

This motion has the sound and fury typical of hotly contested litigation, but the evidence does not support it. There was no willful destruction of pertinent documents. Defendants' motion should be denied.[2]

**Statement of Facts**

Mattel Learned of the Misconduct At Issue In This Case In 2003. Mattel did not know of the present claims until 2003, precisely because, from the beginning, defendants concealed their joint activities and misconduct. When Bryant left Mattel's employ in October 2000, he lied about where he was going, telling Mattel

---

[1] Mot. at 22:9-12.
[2] MGA and Bryant did not meet and confer before filing this motion, nor do they represent that they complied with Local Rule 7-3. See Declaration of Jon D. Corey, ¶ 2; Declaration of Timothy L. Alger, ¶ 6.

that he was going to do "non-competitive" freelance work.[3] After that, MGA repeatedly made public statements about the origins of Bratz in the press that claimed persons other than Bryant created Bratz -- sometimes Larian took credit for inventing Bratz (either his kid's clothes inspired him or boredom with Barbie did), sometimes he gave credit to his son for the idea.[4] Similarly, Larian represented to the U.S. Patent and Trademark Office that Bratz originated from him.[5] MGA admits that no public statement even recognizing Bryant as Bratz's creator was issued until July 18, 2003, when the Wall Street Journal published an article saying that.[6]

In late November 2003, Mattel first learned that Bryant had worked for MGA while employed by Mattel when it obtained a copy of the agreement MGA and Bryant signed while he worked for Mattel.[7] As this Court has noted, MGA has acknowledged that Mattel was only on notice of its breach of contract-related claims on November 24, 2003.[8] Mattel sued Bryant on April 27, 2004, accusing him of working for MGA, using Mattel resources, while employed by Mattel.[9]

When Mattel Learned of Bryant's Disloyalty, It Took Steps To Preserve Relevant Evidence. When it learned of Bryant's disloyalty, Mattel investigated and took steps to preserve relevant evidence. For every percipient Mattel witness Mattel

---

[3] Tr. of Jill Nordquist Depo. dated July 31, 2007 at 124:18-125:8, attached as Exh. 1 to the Declaration of B. Dylan Proctor, filed concurrently.

[4] July 8, 2003 Business Week, March 5, 2004 Chicago Sun-Times and March 29, 2004 San Fernando Valley Business Journal articles, Proctor Dec., Exhs. 2-4.

[5] U.S. Patent Application, U.S. PTO Dec'n, Proctor Dec., Exhs. 35, 36.

[6] MGA's Responses to Mattel's Requests for Admission (Third Set) at 120 (Resp. to RFA No. 185), Proctor Dec., Exh. 5 (MGA searched for and was unable to find a prior public statement).

[7] Declaration of Michael Moore, ¶ 4; Bryant's Contract With MGA "as of September 18, 2000," attached as Exhibit 1 to Moore Dec.; Mattel's April 27, 2004 Complaint at 4, ¶ 12, Proctor Dec. Ex. 6.

[8] Order Re Mattel's Motion For Leave To Amend, entered January 12, 2007 ("Order re FAC") at 14:6-11, Proctor Dec., Exh. 7 ("According to MGA, . . . [Mattel] was aware of the facts alerting it to this claim (insofar as Bryant's contract is concerned) on November 24, 2003, when it learned 'that Bryant worked with MGA to develop the 'Bratz' dolls prior to his last day of employment by Mattel and hence, prior to the expiration of his contractual relationship with Mattel.") (quoting MGA's Opp. re. FAC at 18, Proctor Dec., Exh. 8).

[9] Mattel's Complaint, ¶¶ 12, 18, 23, 30, 41, Proctor Dec., Exh. 6.

could identify and find, Mattel collected emails and other documents that were stored on Mattel's data servers or personal hard drives, or that could be found in hard copy, and advised them to preserve evidence.[10] Mattel imaged employee hard drives and preserved over one hundred of them.[11] Mattel preserved e-mails and any hard drives it could locate in its possession for the percipient witnesses defendants' motion identifies -- Ward, Park, Martinez, Driskill and Treantafelles -- and many more.[12] Bryant was obviously included in the e-mail and hard drive searches.[13]

Mattel's 2002 "Investigation" Did Not Lead To Mattel's Claims in This Case. Defendants argue that Mattel had a duty to preserve evidence as of March 2002 based on a Spring 2002 investigation conducted by Mattel and an August 2002 anonymous letter sent to Mattel. They claim that Mattel's 2004 "complaint contained, ***almost verbatim***, the allegations that Mattel investigated in 2002."[14] The claims investigated in 2002 have *not* been asserted in this case. In March 2002, Mattel investigated allegations of possible copyright infringement of "Toon Teens" designs, not whether Mr. Bryant created Bratz or worked with MGA during his Mattel employment.[15] The same allegations relating to copyright infringement of "Toon Teens" were reported in the Wall Street Journal in 2003.[16] Mattel has not asserted Toon Teens copyright claims in this case; in fact, it has been explicit that it is not pursuing any such copyright infringement claim.[17] In its 2004 Complaint, Mattel asserted tort and breach of contract claims because it learned that Bryant

---

10 Moore Dec. ¶¶ 5-11.
11 Id. ¶ 9.
12 Id. ¶¶ 8, 9. See also Mot. at 12:17-20.
13 Moore Dec., ¶¶ 6, 8.
14 Mot. at 6:27-28.
15 Declaration of Richard De Anda, ¶ 2. As Mr. De Anda has confirmed, Cassidy Park's March 28, 2002 statement about "the design of Lily Martinez" (Burr Dec., Exh. 4) refers to Toon Teens. De Anda Dec. Re Defendants' Joint Motion to Compel, lodged concurrently.
16 Wall Street Journal Article, Proctor Dec., Exh. 11.
17 Tr. of Jan. 8, 2007 Proceedings re. FAC at 6:7-7:1, Proctor Dec., Exh. 12; Order re FAC at 15:13-16:11, Proctor Dec., Exh. 7.

worked for MGA while Mattel paid him.[18] Mattel learned in discovery that Bryant created Bratz and worked with MGA to develop it while Mattel paid him, and filed amended claims to clarify that it contends it owns Bratz based on Bryant's Inventions Agreement with Mattel.[19] None of Mattel's claims asserts infringement of any Toon Teens copyright.[20]

Even With An Earlier Notice Date, No Bryant Emails Could Possibly Have Been Spoliated. Mattel has for many years had a policy of retaining e-mails on its live servers for only 90 days.[21] MGA asserts that Bryant e-mails were lost because Mattel did not suspend that policy, but that ignores that Bryant left Mattel in October 2000.[22] Any e-mails Mr. Bryant sent or received, including e-mails pertaining to his work on Bratz while at Mattel, were deleted from the e-mail servers and backup tapes were overwritten by early 2001 at the latest -- long before the March 15, 2002 date on which MGA claims Mattel should have started preserving documents, and even before Bratz was first sold in stores.[23]

Mattel Preserved Documents Pertaining To MGA's Complaint. On April 13, 2005, MGA served Mattel with a complaint alleging that Mattel engaged in "serial copycatting" of the Bratz dolls and other MGA products, and that certain alleged conduct by Mattel with buyers, licensees, industry associations, vendors and other

---

18 Mattel's Complaint at 5-11, Proctor Dec. Exh. 6.

19 Mattel's Second Amended Answer and Counterclaims dated July 12, 2007 at 53-54, ¶¶ 82-87, Proctor Dec. Exh. 13.

20 MGA's counsel has submitted a false declaration in this regard. Counsel declares that Mattel has "not explained" its redactions to an e-mail about the 2002 investigation. Burr Dec., ¶ 6. However, Mattel produced the document together with a privilege log stating the redactions reflect opinions of legal counsel. Mattel's Supp. Priv. Log Dated February 23, 2007 at 7 (Item No. 29), Proctor Dec., Exh. 9. When MGA challenged the propriety of the redaction, Judge Infante reviewed the un-redacted document *in camera* and ***sustained*** Mattel's redactions to the document on the basis of privilege. Jul. 10, 2007 Order at 1-2, Proctor Dec., Exh. 10.

21 Mattel preserved e-mail messages on its e-mail servers for 90 days and recycled backup tapes every 30 days. Depo. Tr. of Fred T. Kawashima (Vol. 1) dated Jan. 17, 2007 ("Kawashima Tr.") at 157:3-158:10, Proctor Dec. Exh. 14.

22 Depo. Tr. of Carter Bryant ("Bryant Tr."), dated November 4, 2007, at 55:15-55:21, Declaration of Michael T. Zeller filed concurrently ("Zeller Dec."), Exh. 1.

23 Moore Dec. ¶ 6.

third parties harmed MGA.[24] Mattel did not have prior notice that these claims were probable, and MGA does not argue otherwise. Three days after service of the complaint -- on April 16, 2005 -- MGA sent Mattel a document preservation letter.[25] Two days later, Mattel instructed all Mattel employees to preserve evidence relevant to MGA's newly asserted claims.[26]

Mattel responded to MGA shortly thereafter, advising by letter that it would preserve several broad categories of documents which tracked MGA's allegations, including the "My Scene," "Acceleracers," "Wee 3 Friends" and other product lines, communications with MGA and other categories of documents.[27] Mattel then explained that its e-mail retention period is 90 days, that the allegations in MGA's complaint related to past conduct and that preserving the millions of future, irrelevant e-mails that traverse Mattel's servers each month would cost hundreds of thousands of dollars a year. *Mattel told MGA, inviting a response, that it did not plan to suspend its 90 day retention policy.*[28] MGA never responded.[29]

Instead, MGA chose to remain silent, wait two years and then move for sanctions based on Mattel's disclosed preservation practices, now arguing that Mattel should have suspended its 90-day retention policy.[30] Within three days of MGA's preservation letter, Mattel took steps to ensure that e-mails *were* preserved. Every day Mattel does a backup of e-mails on its exchange servers.[31] On April 19, 2005, five days after MGA filed suit, Mattel stopped recycling backup tapes of the e-mails on its El Segundo exchange servers.[32] Mattel has preserved about 4200

---

24 MGA's Complaint filed on April 13, 2005 at 2, Proctor Dec., Exh. 16.
25 MGA Letter to Mattel dated April 16, Proctor Dec., Exh. 17.
26 Kawashima Tr. (Vol. 2) at 366:1-14. Proctor Dec., Exh. 15.
27 Mattel Letter to MGA dated May 3, 2005, Proctor Dec., Exh. 18.
28 Id.
29 Mattel Letter to MGA dated June 11, 2007, Proctor Dec., Exh. 19.
30 Mot., §II(A) at 3-4.
31 Kawashima Tr. (Vol. 2) at 475:20-476:4, Proctor Dec., Exh. 15.
32 Id. at 300:4-21, MGA admits Mattel implemented this process. Mot. at 4:4-6.

tapes.[33] This process has cost Mattel $500,000 to date for tapes alone.[34] The Court previously ruled that the existence of e-mail backups defeats any spoliation claim.[35]

Mattel's 90-day retention policy ensures effective and stable server performance, *i.e.*, delivery of e-mail.[36] The accumulation of e-mails on Mattel's live servers that MGA now demands would crash these servers.[37] Mattel's retention period policy and rotation of backup tapes is typical of the policies of other reputable companies such as, for example, Microsoft, TRW, DreamWorks and TCW.[38] While MGA suggests that Mattel should have suspended the auto-delete policy for individual mailboxes, that is not currently possible, and the only possible workaround would require dramatic configuration changes to the servers.[39] Given Mattel's preservation of *complete* backup tapes, such dramatic changes were not called for. That MGA did not respond when Mattel advised it was not discontinuing its preexisting policy for its live servers is telling.[40]

MGA asserts that Mattel did not preserve evidence relevant to the "early" development of Mattel's "My Scene" line, but Mattel preserved "My Scene" evidence as soon as MGA filed its lawsuit making claims regarding "My Scene."[41] Mattel's claims against Bryant in April 2004 were unrelated to the "My Scene" dolls, and there was no reason to preserve such evidence at that time. In any case,

---

33 Id. at 475:13-19. See also Alger Dec., ¶¶ 3-5 (Mattel has collected, reviewed and produced hundreds of thousands of pages of pages of documents, including electornic files).

34 Declaration of Fred T. Kawashima Dec. ¶ 3.

35 Order re FAC at 13:2-5, Proctor Dec., Exh. 7 ("Noticeably absent from MGA's [spoliation] argument is any evidence that the e-mails so deleted from a Mattel employee's inbox are forever lost or, as is far more likely, whether such information remains or is otherwise archived on some backup file . . .").

36 Kawashima Tr. (Vol. 1) at 256:11-21, Proctor Dec., Exh. 14.

37 Id. at 256:24-257:3 ("If you rely on the user population to perform their own housekeeping, they won't. They'll just let e-mail grow and grow consuming valuable disk space which will eventually impede performance and shut the server down.").

38 Id. at 215:3-217:13.

39 Kawashima Tr. (Vol. 2) at 381:4-11, 389:10-390:22, 394:25-396:1, 397:2-403:2, Proctor Dec., Exh. 15.

40 Mattel Letter to MGA dated June 11, 2007, Proctor Dec., Exh. 19.

41 Mot. at 23:20; Proctor Dec., Exh. 18.

fortuitously Mattel *has* preserved documents relevant to the "My Scene" doll line since 2003 because of a separate litigation that involved those dolls.[42]

Mattel Offered to Produce 1998 through 2001 Zeus Backup Tapes, But Defendants Did Not Accept. Defendants accuse Mattel of defrauding the Court by representing that it possesses "Zeus" backup tapes. Mattel does possess such tapes, and offered them to MGA and Bryant in 2005.[43] They did not accept.[44] As part of the investigation that led to the claims asserted in this case, Mattel searched for backup tapes of servers containing files from 1999 and 2000, including Zeus, a network data server.[45] Mattel has located and preserved older Zeus backup tapes for April, May, August, September and December, 1998; January and February, 1999; February, March, April, May, June, July, August and December, 2000; and January and July, 2001.[46] That is what Mattel previously offered to defendants, and they can have them now if they want them. In any case, as the Court noted when MGA last raised this issue, that Bryant claims he never used Zeus, and that his access to other Mattel projects was non-electronic, diminishes the relevance of this entire issue.[47]

Mattel Discovered In 2003 That It Had No Records of October or December 2000 Phone Calls. Defendants assert that Mattel intentionally destroyed telephone logs from October 2000.[48] However, those logs ceased to exist within months of

---

42 Moore Dec. ¶¶ 12-13.

43 Zeller Dec. in support of Reply Re FAC, ¶ 14, lodged concurrently.

44 Id.

45 Moore Dec. ¶ 11; Depo. Tr. of Julia Marine (Vol. 1) at 42:23-44:8, Proctor Dec., Exh. 20.

46 Moore Dec. ¶ 11. Ms. Marine, on whose testimony defendants rely for their fraud on the Court argument, was not responsible for tapes searched and preserved for this litigation, and she expressly testified she did not know the dates of the tapes given to the Law Department for preservation. Marine Tr. (Vol. 3) at 240:7-20, 244:10-245:1, Proctor Dec., Exh. 22.

47 Order re FAC at 12:4-8 ("MGA's point that access to what was on the Zeus computer system is vital in demonstrating that Bryant was not exposed to or otherwise did not hack the system to steal other designers work is diminished to some extent by the fact that Bryant himself testified that he did not use the Zeus computer system and was 'pretty much computer illiterate' while employed at Mattel."); Bryant Tr. at 237:17-239:25, Zeller Dec., Exh. 1.

48 Mot., §II(H)(c) at 14.

Bryant's departure, again long before Mattel allegedly had a duty to preserve. In 2000, Mattel logged phone calls on a PC hardwired to its main phone switch using "Micro Call" software.[49] The logs do not show the substance of conversations -- just originating number from Mattel, telephone number dialed, date, time and duration.[50] The PC itself had capacity for only two and a half months of calls, at most.[51] As of January 2001, October 2000 phone log information was no longer on the Micro Call PC.[52] Mattel archived Micro Call logs from the PC on archive tapes and discovered some archive tapes from the relevant time period while searching for phone logs, but could not locate any tapes for October and December 2000.[53]

Even if they existed, these logs could not possibly help defendants' cause. Logs from even earlier -- including September 2000 -- have been produced, and reveal calls between Bryant (at Mattel) and MGA.[54] Other evidence, including other phone records, reveals contacts between them in October.[55] The absence of still further contacts in October (which is all the logs could show) would prove nothing.

Mattel Has Preserved "Diva Starz" Evidence. Defendants assert that Mattel failed to preserve evidence about the "Diva Starz" doll line.[56] Mattel did not know the "Diva Starz" line was potentially relevant to its claims against Bryant and MGA

---

49 Tr. of Depo. of Rodney Palmer at 43:23-45:2, Proctor Dec., Exh. 23. The PC used was changed in 2003. Id. at 47:19-25.

50 Id. at 55:20-56:4, 57:13-58:9 (incoming phone numbers not recorded).

51 Id. at 90:17-92:1.

52 Id. at 86:19-87:10 (phone log information put on tapes monthly).

53 Id. at 51:7-25, 56:24-57:8, 86:19-87:17; Moore Dec. ¶ 10. The archive tapes were on a three-year rotation policy, which stopped in early 2003 when Mattel began archiving log information to a network drive. Id.

54 MicroCall Log for Bryant, at M 0001820-1823, Proctor Dec., Exh. 24; Palmer Tr. at 109:1-24.

55 Bryant admits he discussed Bratz with MGA by telephone while he was working at Mattel. Bryant Tr. at 170:16-172:5, Zeller Dec., Exh. 1. Phone logs that Bryant has produced also reveal twenty-eight calls with MGA, Margaret Hatch-Leahy and Veronica Marlow between October 3 and 19, 2000. Bryant's Tel. Bills at BRYANT 1288 (Oct. 2000), Proctor Dec., Exh. 25; Marlow Tel. Bills at SABW-M 00072-77, 148 (Oct. 2000), Proctor Dec., Exh. 26. Ms. Hatch-Leahy worked for MGA at the time, and before that worked for Mattel. Bryant identified Ms. Marlow as the first person who suggested that he take the Bratz idea to MGA -- she was doing design work for MGA at the time. Bryant Depo. at 5:10-9:6.

56 Mot. at 23:22-24:13.

until it discovered, beginning in 2005 (in the context of an unrelated litigation), documents and designs for the "Diva Starz" project that were never publicly released, that pre-date the release of Bratz, and that show that "Diva Starz" dolls share certain common elements with Bratz dolls.[57] Mattel also discovered during that time that MGA's project manager for Bratz, Paula Garcia, had worked on the Diva Starz project while she and Bryant were Mattel employees.[58] Hence, the relevance of "Diva Starz" to this suit was not known to Mattel until 2005. Since then (and, because of separate litigation, even before then), Mattel has preserved more than 70 boxes worth of documents, electronic files, e-mail and tangible items related to "Diva Starz," including those of Diva Starz designers Maureen Mullen, Rene Pasko, Kislap Ongchangco and Joni Pratte, and Rob Hudnut.[59]

## Argument

### I. MGA AND BRYANT HAVE NO CLEAR AND CONVINCING EVIDENCE THAT MATTEL KNOWINGLY DESTROYED RELEVANT EVIDENCE, AS REQUIRED

MGA and Bryant rely exclusively on the Court's inherent power to levy sanctions.[60] This inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function," Chambers v. NASCO, Inc., 501 U.S. 32, 42 (1991), which "must be exercised with restraint and discretion." Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980). Defendants must prove that Mattel willfully spoliated relevant evidence by clear and convincing evidence. Ritchie v. U.S., 451 F.3d 1019, 1026 (9th Cir. 2006) ("bad faith must be proven by clear and convincing evidence") (citing Phoceene Sous-Marine v. U.S. Phosmarine, Inc., 682 F.2d 802, 806 n.13 (9th Cir. 1982) (noting that "fraud on the court" must be proved by clear and convincing

---

57 Moore Dec. ¶ 16, Exh. 4.
58 See Pasko Tr. at 42:13-20, 95:15-96:11, Proctor Dec., Exh. 37.
59 Moore Dec., ¶¶ 14-15.
60 Their Notice cites no legal basis for their motion, but see Mot. at 15:10-13.

evidence)); Fink v. Gomez, 239 F.3d 989, 994 (9th Cir. 1991) (even "recklessness" is insufficient to justify terminating sanctions under the court's inherent power).[61] They have not done so, and cannot do so.

**A. Mattel's Litigation Hold Obligations Attached In Late 2003, At The Earliest**

For a litigation hold obligation to attach, the potential claims must be ***"probable,"*** which means ***"more than a possibility."*** In re Napster, Inc. Copyright Litigation, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006) (citing Hynix Semiconductor Inc. v. Rambus, Inc., 2006 WL 565893 at *21 (N.D. Cal. 2006)) (emphases added). In Napster, the court found that (i) a Napster investor's receipt of documents in litigation against Napster, and (ii) the investor's entering into a joint defense agreement with Napster, were ***not*** sufficient to trigger litigation hold obligations; rather, the obligation attached only after one of the plaintiffs suing Napster expressly told the investor he would also sue the investor if copyright infringement continued, making litigation "probable." Id. at 1068-1069. Even the initiation of a litigation strategy does not require a litigation hold. See Hynix, 2006 WL 565893 at *22-24 (preservation obligation attached when defendant determined that litigation was "necessary or wise" to protect its intellectual property rights, not with initiation of a litigation strategy); In re Kmart Corp., 2007 WL 2198309, at

---

61 See also Pennar Software Corp. v. Fortune 500 Systems Ltd., 2001 WL 1319162 at *5 (N.D. Cal. 2001) ("There must be clear and convincing evidence of misconduct before a punitive sanction such as a dismissal or default judgment is entered.") (citing Shepherd v. American Broadcasting Cos., Inc., 62 F.3d 1469, 1476-1477 (D.C. Cir. 1995)); Rohn v. U.S., 2002 WL 32123927 at *1 n.2 (E.D. Cal. 2002) (citing Shepherd to apply clear and convincing standard to dismissal sanctions request); Maynard v. Nygren, 332 F.3d 462, 468 (7th Cir. 2003) (applying clear and convincing standard to dismissal request based on willfulness, bad faith, or fault); FMC Technologies, Inc. v. Edwards, 2007 WL 1725098 at *10 (W.D. Wash. 2007) (no evidentiary sanctions awarded where "allegations regarding the destruction of computer files are anything but clear" and the Court "cannot find [spoliation] assertions any more or less credible than [the other side's] explanations for the 'missing' data.").

*17-18 (N.D. Ill. 2007) (filing bankruptcy proof of claim insufficient to start litigation hold obligation; it did not mean litigation was "pending" or "impending").

Defendants argue that Mattel should have been preserving documents as of March 2002, when Mattel investigated possible copyright infringement of Toon Teens. That argument ignores that Mattel is not suing and never has sued MGA or Bryant for infringement of any Toon Teens copyright. Defendants do not cite any authority for the proposition that an investigation which does ***not*** lead to a lawsuit on the investigated matter can nevertheless give rise to a duty to preserve. To the contrary, the law is clear that an investigation, in and of itself, does not trigger a company's obligation to preserve evidence -- even where the investigation is of allegations that ***are*** eventually brought in court. U.S. v. Kitsap Physicians Service, 314 F.3d 995, 1001 (9th Cir. 2002) (defendant did not have a duty to preserve when it initiated an internal investigation into allegations of fraudulent billings that plaintiff eventually sued upon); see also Heller v. Plave et al., 1993 U.S. Dist. LEXIS 20936, at * 37-38 (S.D. Fla. 1993) (defendants' interview of plaintiffs accountant held to be insufficient notice of plaintiff's claims where interview was "the first of several events upon which [the] lawsuit [was] based").

Moreover, even if (contrary to fact) Mattel had sued upon the claim it investigated in 2002, there still was no duty to preserve because the speculative information available to Mattel at that time did not render litigation "probable" or "wise," as required. In fact, MGA and Bryant concede in their opposition that the claims Mattel investigated in 2002 and 2003 were speculative, asserting that "Mattel deliberately delayed bringing this lawsuit for years because *it knew its claims were speculative* . . . ."[62] Precisely because the claims now at bar were "speculative" in 2002 (and indeed totally unknown to Mattel), they were not "probable," and Mattel had no duty to preserve. See Napster, 462 F. Supp. 2d at 1068.

---

[62] Mot. at 22:9-12.

Nor did the August 5, 2002 "anonymous letter"[63] give rise to a duty to preserve. The letter's author (whoever it was) offered no evidence for his or her allegations. That letter is clearly insufficient -- it did not provide notice of a claim that was "probable," Napster, 462 F. Supp. at 1068-1069, or "wise," Hynix, 2006 WL 565893, at *22-24. See also Bowmar Instrument Corp. v. Texas Instruments Inc., 1977 U.S. Dist. LEXIS 16078, at *12-13 (N.D. Ind. 1977) ("rumors" and "innuendo" about possible litigation insufficient to attach preservation obligation). Indeed, the Court has recognized this before: "I certainly know that O'Melveny & Myers would not file a complaint based on an anonymous letter from somebody suggesting that there is a copyright infringement."[64]

Contrary to defendants' speculations, Mattel first learned of a probable claim in late 2003, at the earliest. It was then that Mattel first obtained evidence that Bryant worked for MGA while employed by Mattel, when it obtained a copy of the MGA/Bryant agreement revealing that. Before that, no claims were probable, and the investigated claims were never brought.

**B. Mattel Preserved All Relevant Documents, And Certainly Did Not Knowingly Fail To Do So**

Mattel gathered and preserved evidence as soon as it was obligated to do so. Once it learned of the facts giving rise to the claims at bar, Mattel searched for and preserved all relevant documents from every individual likely to have relevant or discoverable information.[65] This included computer hard drives, emails and paper documents, among other things.[66] Once MGA filed its lawsuit, Mattel greatly expanded its preservation efforts in light of the expanded scope of the issues, at

63 Proctor Dec., Exh. 27.
64 Jan. 8, 2007 Hearing Tr. at 16:14-17:7, Proctor Dec., Exh. 12
65 Moore Dec. ¶¶ 6-11.
66 Id.

substantial expense.[67] Mattel did not destroy any relevant information, let alone do so willfully to prejudice defendants.

Defendants fault Mattel for failing to "suspend its routine document retention and destruction policies."[68] However, no case they cite supports the breathtaking proposition that Mattel had to retain every e-mail on its live exchange servers or reconfigure its servers to create a different retention rule on a mailbox-by-mailbox basis. A litigant has no duty to preserve every document in its possession. Wm. T. Thompson Co. v. General Nutrition Corp., Inc., 593 F. Supp. 1443, 1455 (C.D. Cal. 1984). A party has to preserve only what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request. Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217-218 (SD NY 2003). There is nothing improper about Mattel's e-mail retention policy; it is standard for large corporations.[69] Courts have found that 90-day retention period policies and thirty-day recycling of back-up tapes are reasonable retention policies. Broccoli v. Echostar Communications Corp., 229 F.R.D. 506, 510 (D. Md. 2005) (under normal circumstances, a retention policy that deletes e-mails even after only thirty days with no backups is acceptable); Linnen v. A.H. Robins Co., Inc., 1999 WL 462015, at *1 (Mass. Sup. 1999) (three month retention of internal communications and recycling of backup tapes for such information is "a widely accepted business practice").

As soon as it had a probable claim, Mattel preserved the evidence it could locate relevant to the claims it anticipated bringing. The suggestion that Mattel should have stopped its 90-day retention policy in November 2003 (or even 2002), and crashed its servers, is unfounded. Any Bryant-related e-mails (beyond those

67 Mattel Letter to MGA dated May 3, 2005, Proctor Dec., Exh. 18.
68 Mot., §III(A)(3) at 17-18.
69 Kawashima Tr. (Vol. 1) at 215:3-217:13.

that Mattel had on paper form or stored in locations other than its servers) had long since left Mattel's e-mail servers when Mattel learned, notwithstanding defendants' concealment, of Bryant's disloyalty. Suspending the 90-day retention policy years after Bryant worked at Mattel would have preserved nothing relevant. Defendants suggest at one point that Mattel had a duty to preserve e-mails dating back to the 1998-2001 time frame -- before Bratz was introduced, and long before defendants contend Mattel had notice of its claims.[70] But Mattel obviously had no duty to preserve documents before it learned of Bryant's misconduct. U.S. v. Kitsap Physicians Service, 314 F.3d 995, 1001 (9th Cir. 2002) (no spoliation where documents were destroyed in normal course of business before party had notice).

Defendants accuse Mattel of failing to preserve Zeus backup tapes. As discussed, Mattel has the tapes it said it had.[71] Perhaps recognizing that, MGA and Bryant argue that Mattel "destroyed" Zeus backup tapes when it disposed of tape drives for those tapes after it stopped using DLT tapes.[72] The Court has already rejected that argument, holding that the fact that Mattel's IT Department no longer has the hardware to read those tapes "certainly does not demonstrate that the information on those backup tapes has been 'eliminated' or forever lost . . . . [T]o argue, as MGA does, that the information is 'unavailable' or 'lost' . . . exaggerates its plight."[73] A CD owner does not "destroy" the music on the CD when he or she loses or sells a CD player, yet that is essentially all defendants can argue here.[74]

---

[70] Mot. at 9:23-25; 12:17-18.
[71] Mot., §II(G) at 10-11.
[72] Mot. at 8:23-9:1; Marine Tr. (Vol. 2) at 119:10-13, Proctor Dec., Exh. 21.
[73] Order re FAC at 11:19-25, Proctor Dec., Exh. 7.
[74] Notably, these tapes are not unique to Mattel. Indeed, vendors tout their ability to read and restore DLT backup tapes. Zeller Dec. Re FAC ¶ 14, lodged concurrently; see also e.g., http://www.bluestarcs.com/backup_tape.html, Proctor Dec., Exh. 28 (vendor's website stating it can restore and read on DLT tapes).

## II. MGA AND BRYANT HAVE NOT SHOWN EXTRAORDINARY CIRCUMSTANCES TO WARRANT DISMISSAL

Even if defendants had clear and convincing evidence of Mattel's willful destruction of relevant evidence, which they do not, the analysis would not end there. Before imposing dismissal sanctions, the Court would also have to find (i) extraordinary circumstances, (ii) willfulness or fault, (iii) that there is a nexus between the misconduct and the merits of the case, (iv) lesser sanctions are not viable, and (v) prejudice. Halaco Engineering Co. v. Costle, 843 F.2d 376, 381-382 (9th Cir. 1988).

MGA and Bryant argue that the balancing test in Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 348 (9th Cir. 1995), is controlling. It is not. The *en banc* Halaco decision controls. See U.S. v. Lynch, 437 F.3d 902, 912 (9th Cir. 2006) (holding that a three-judge panel of Court of Appeals may not overrule previous decision of court sitting en banc); see, e.g., Nostalgia Network, Inc. v. Rayle, 56 Fed. Appx. 344 (9th Cir. 2003) (applying Halaco standards); Estrada v. Speno & Cohen, 244 F.3d 1050, 1055-1056 (9th Cir. 2001) (same); United States ex rel. Lujan v. Hughes Aircraft Co., 67 F.3d 242, 247 (9th Cir. 1995) (same); In re Napster, 462 F. Supp. 2d at 1070-77 (same). Defendants meet none of the Halaco standards, or even the Anheuser-Busch standards.

### A. There Are No Extraordinary Circumstances

"[E]xtraordinary circumstances exist where there is a pattern of disregard for Court orders and deceptive litigation tactics that threaten to interfere with the rightful decision of a case." Advantacare Health Partners v. Access IV, 2004 WL 1837997 at *5 (N.D. Cal. 2004) (citing Halaco, 843 F.2d at 31) (no extraordinary circumstances even though defendants admitted to intentionally destroying relevant evidence); see Anheuser-Busch, 69 F.3d at 348 (terminating sanctions are warranted when "a party has engaged in deliberately deceptive practices that undermine the integrity of judicial proceedings"). Defendants cannot show any "deceptive

litigation tactics that threaten to interfere with the rightful decision of the case" or that "undermine the integrity of judicial proceedings." Adhering to well-accepted, routine document retention policies and then, after notice of a probable claim, collecting and preserving evidence is not "deceptive."

Defendants' own cases confirm that Mattel's conduct warrants no sanctions, much less terminating ones. In Housing Rights Center v. Sterling, 2004 U.S. Dist. LEXIS 28877, at *21-29 (C.D. Cal. 2004), this Court held that terminating sanctions were not appropriate even after a defendant ***admitted to destroying*** categories of ***indisputably relevant*** documents. In Wm. T. Thompson Co., 593 F. Supp. at 1446-50, the court found terminating sanctions appropriate only after expressly finding that defendant destroyed unquestionably relevant documents and made ***no effort*** to preserve relevant documents, in violation of two Court Orders. In Cache La Poudre Feeds, LLC v. Land O Lakes, Inc., 2007 WL 684001 at *17 (D. Colo. 2007), the court found no bad faith even though the defendant allowed the destruction of documents that "might have contained relevant" information. And in Daimler Chrysler Motors v. Bill Davis Racing, Inc., 2005 U.S. Dist. LEXIS 38162 (D. Mich. 2005), the court found terminating sanctions were ***not*** appropriate even where the party made ***no effort*** to retain documents after suit filed. Mattel did not violate any Order here, and it took substantial measures to preserve relevant documents. Mattel's conduct simply does not compare to any case in which terminating sanctions have been imposed.

**B. Mattel Did Not Act With Bad Faith, Willfulness Or Fault**

MGA and Bryant attempt to show bad faith, willfulness or fault by proving "only" that Mattel had "some notice" that automatically deleted e-mails were potentially relevant to the litigation.[75] They rely on Anheuser Busch, Leon v. IDM Systems Corp., 464 F.3d 951, Akiona v. U.S., 938 F.2d 158 (9th Cir. 1991), and

[75] Mot. at 16:6-8, 18:27-19:2.

Henry v. Gill Industries, Inc., 983 F.2d 943 (9th Cir. 1993), to support this purported low threshold for finding bad faith.[76] However, as discussed, defendants must prove Mattel's willful spoliation by clear and convincing evidence.[77] Moreover, even these cases show that Mattel's conduct does not reveal bad faith, willfulness or fault. In Akiona, for example, the Ninth Circuit found no bad faith when the records were deleted "pursuant to a policy of destroying documents two years after their disposition" and "consistent with the party's document retention policies." 938 F.2d at 160-161. Even by defendants' factually erroneous account of what has and has not been preserved, that is the most that happened here.[78]

Even if it were possible to fault Mattel for not suspending its 90-day retention policy earlier -- and Mattel submits that it is not -- that simply is not sufficient to support terminating sanctions. See Napster, 462 F. Supp. at 1072-1074, 1077 (rejecting terminating sanctions because there were some efforts to preserve relevant documents, even though party instructed its employees to delete relevant e-mails); Broccoli, 229 F.R.D. at 511-512 (denying terminating sanctions although zero effort to preserve documents); Mosaid Technologies Incorporated v. Samsung Electronic Co., Ltd., 348 F.Supp. 2d 332, 339 (D.N.J. 2004) (same); Columbia Pictures Industries v. Bunnell, 2007 WL 2080419, at *14 (C.D. Cal. 2007) (no evidentiary

---

76 Mot. at 16:5-17.

77 Supra § I.

78 Contrast Leon v. IDX Systems Corp., 464 F.3d 951, 959 (9th Cir. 2006)(plaintiff admitted to intentionally deleting every "personal" file on work laptop, and Court found personal files there "highly relevant" to employment discrimination claim); Anheuser-Busch, 69 F.3d at 349-351 (plaintiff "repeatedly lied" to defendant and court that relevant documents had burned in a fire); Henry, 983 F.2d at 947-949 ("disobedient conduct" justifying bad faith included failure to appear for deposition twice, failure to respond to interrogatories, and disobeying Court order awarding monetary sanctions); Padgett v. City of Monte Sereno, 2007 U.S. Dist. LEXIS 23409 *9 (though party failed to preserve hard drive despite specific discovery request asking to inspect it and court order to "preserve everything" and "delete nothing" in the hard drive, terminating sanctions *not* awarded in absence of finding of prejudice).

sanctions in the absence of any violation of a preservation order, even though "extremely relevant" data was lost).[79]

### C. There Is No Nexus Between The Alleged Misconduct And The Merits Of The Case

To prove the required nexus, defendants must show by clear and convincing evidence that the allegedly destroyed evidence bears on the matters in controversy in such a way as to interfere with the rightful decision of the case. Halaco, 843 F.2d at 381-382. That *clearly* is not the case here.

#### 1. Mattel Has Overwhelming Evidence That Bryant Created Bratz While Employed By Mattel, And Aided By MGA

The evidence that bears on the actual merits of this case is one-sided and overwhelming. Notwithstanding defendants' pattern of obstructionism that has required Judge Infante to issue multiple orders to compel against them, Mattel has obtained powerful evidence showing that Bryant created Bratz and worked on it with MGA while employed by Mattel. Among much else, this includes:

- After being compelled to produce documents in January 2007, Bryant for the first time produced Bratz drawings dated September 1999 -- squarely during Bryant's Mattel employment.[80]
- After being compelled to testify, MGA's Bratz project manager, Paula Garcia, admitted that Bryant created a key Bratz design during the time of his Mattel employment.[81]
- After being compelled to produce documents in May 2007, MGA produced an internal MGA e-mail message stating that the first Bratz dolls were created in September 2000.[82] MGA's initial copyright

[79] Revealing how thin the reed defendants hope to grasp is, they argue Mattel engaged in "bad faith" by delaying the deposition of its designee on email preservation. Mot., §II(F) at 8-10. Defendants' assertions are misleading and irrelevant. Corey Dec. ¶¶ 3-5. They are also a virtual rehash of an argument the Court previously rejected. Proctor Dec., Exh. 7 at 12:16-13:1.

[80] See Jan. 25, 2007 Order, Zeller Dec., Exh. 2; Drawings, Zeller Dec., Exhs. 3 & 4.

[81] See Discovery Master's May 15, 2007 Order, Zeller Dec., Exh. 5; Depo. Tr. of Paula Garcia (Vol. 2), dated May 25, 2007, at 590:10-592:4.

[82] See Discovery Master's May 15, 2007 Order, Zeller Dec., Exh. 5; E-mail dated September 6, 2001, Bates-numbered MGA 0069426-7, Zeller Dec., Exh 6.

registrations for those dolls and the Bratz sculpt also list their dates of creation as 2000.[83] After this lawsuit was filed, MGA then "corrected" those registrations to state that the dolls were created in 2001.[84]

- Fahrad Larian, a former MGA executive and Isaac Larian's brother, has stated in court pleadings that Bryant brought Bratz to MGA by February 2000 -- and that they attempted to conceal it.[85]
- Anna Rhee, the face painter of Bratz, testified that invoices dated as early as June 12, 2000 were for work she performed on Bratz for MGA under the "code name" of "Angel."[86]

The list of damning evidence literally goes on and on.[87]

**2. The Allegedly Lost Evidence Does Not Even Bear On The Issues To Be Tried**

There is little defendants can say about this evidence, or about how the allegedly spoliated evidence could change it. Defendants' primary argument is that emails from 2002-2005 could support their statute of limitations defense. That argument is fundamentally misguided. Mattel had no duty to preserve evidence until late 2003 at the earliest.[88] At the same time, there is no dispute that Mattel was on notice of its claims at issue here by late 2003. There is simply no reason to think, as defendants suggest, that keeping additional, irrelevant emails in late 2003 or 2004 (through a suspension of the auto-delete policy) would somehow push the notice date back *earlier* than late 2003 -- and emails from 2002 and early 2003 were already long gone from the live servers and the back-up tapes.[89] In any case, the law is clear that an investigation into a claim that is not sued upon, such as the 2002 "Toon Teens" investigation defendants rely on, does not constitute notice for statute of limitations purposes. Westinghouse Elec. Corp. v. General Circuit Breaker &

---

83 See Copyright Registrations, Zeller Dec., Exhs. 7-11.
84 See Copyright Correction Forms, Zeller Dec., Exh. 12.
85 See Farhad Larian's Complaint in Larian v. Larian, Case No. BC301371, dated August 25, 2003, at ¶¶ 13-16, Zeller Dec., Exh. 14.
86 See Depo. Tr. of Anna Rhee, dated February 3, 2005, at 197:6-197:25 and 199:8-199:16, Zeller Dec., Exh. 13.
87 See, e.g., Zeller Dec., ¶¶ 15-21, Exhs. 14-20.
88 See supra, § I(A).
89 Moore Dec. ¶ 6.

Elec. Supply Inc., 106 F.3d 894, 899 (9th Cir. 1997) (defendants making a statute of limitations argument must prove that the plaintiff knew of facts giving it notice of its trademark counterfeiting cause of action, not just any cause of action); Hobson v. Wilson, 737 F.2d 1, 35 (D.C. Cir. 1984) (for constructive discovery of a cause of action to trigger the statute of limitations, the plaintiff must know facts giving notice of the *particular* cause of action at issue; notice of a particular claim does not mean a simple suspicion of wrongdoing, but rather "awareness of sufficient facts to identify a particular cause of action . . . not . . . the kind of notice -- based on hints, suspicions, hunches or rumors -- that requires a plaintiff to make inquiries in the exercise of due diligence, but not to file suit").

Moreover, the Court has already rejected defendants' statute of limitations defense, which was "pressed emphatically at oral argument" on Mattel's Motion for Leave, ruling that Mattel's claims are timely because they relate back to Mattel's April 2004 Complaint.[90] Indeed, many of Mattel's claims would be timely even if there was no relation back. For example, Mattel's copyright infringement counterclaim has a rolling statute of limitations -- it could not possibly be completely time barred. Roley v. New World Pictures, 19 F.3d 479, 481 (9th Cir. 1994) (section 507(b) "does not provide for a waiver of infringing acts within limitation period if earlier infringements were discovered and not sued upon"); Polar Bear Prod. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) (accord). Many of Mattel's other claims would also be timely even if Mattel were on notice of its claims in 2002, as defendant allege. See, e.g., Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, 156 (1987) (limitations period for civil RICO actions is four years); Cal. Civ. Code § 3426.6 (limitations period for misappropriation of trade secrets claims is three years).

---

[90] Order Re FAC at 13-15, Proctor Dec., Exh. 7; see also Fed. R. Civ. P. 15(c); Lamont v. Wolfe, 142 Cal. App. 3d 375, 379 (1983) (amended claims relate back to the original complaint where same transaction or occurrence is involved in both pleadings).

Defendants' other arguments fare no better.

- Defendants' assertion that lost emails could bear on "Carter Bryant's employment and work at Mattel, including emails and data that would refute Mattel's claims that he did not meet his employment obligations," ignores that such emails disappeared from Mattel's live servers and backup tapes by early 2001, long before even defendants could contend Mattel was on notice.[91]
- Hypothetical 2004, post-litigation e-mails among random Mattel employees sympathizing with Bryant will neither prove nor disprove any issue to be tried.[92]
- Defendants argue that Mattel should have preserved "communications with suppliers, retailers, and others to impair MGA's ability to compete" and other documents relating to MGA's claims.[93] However, Mattel first had notice of these allegations when MGA filed its complaint in April 2005, and immediately took proper steps to preserve such evidence.
- Defendants complain that "lost" October 2000 "time" records (when Bryant admits he was negotiating his deal with MGA) would exonerate Bryant, presumably by proving that he was working on Mattel projects. Actually, Bryant's October 2000 "time" records are not lost -- and they show that he recorded ***no*** time to any Mattel project, only to vacation time, that month.[94]

**D. <u>MGA and Bryant Were Not Prejudiced</u>**

Virtually all courts consider prejudice to the party seeking terminating sanctions. <u>See, e.g.</u>, <u>Halaco</u>, 843 F.2d at 383; <u>U.S. v. National Medical Enter., Inc.</u>, 792 F.2d 906, 913 (9th Cir. 1986) (prejudice "is an important factor that the district court should weigh before granting the extreme sanction of dismissal"); <u>Henry</u>, 983 F.2d at 948 (referring to prejudice as a "key factor"); <u>Wanderer v. Johnston</u>, 910 F.2d 652, 656 (9th Cir. 1990) (the element of prejudice is "essential"); <u>Adriana Int'l Corp. v. Thoeren</u>, 913 F.2d 1406, 1412 (9th Cir. 1990) (when an order is violated, prejudice and availability of lesser sanctions are decisive factors).

---

[91] More Dec. ¶ 6.
[92] Mot. at 23:1-10.
[93] Mot. at 23.20-21.
[94] Depo. Tr. of Arnold Artavia dated Sep. 21, 2006, at 105:14-106:9, Exh. 350 thereto, Proctor Dec., Exhs. 29, 30 (only admin. time recorded in Oct. 2000, which was used to record vacation and other non-project time).