QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
  Jon D. Corey (Bar No. 185066)
  Tania M. Krebs (Bar No. 227281)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Tel.: (213) 443-3000
Fax: (213) 443-3100

Attorneys for Plaintiff and Counter-Defendant
Mattel, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>CARTER BRYANT, an individual<br><br>    Defendant.<br><br>CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public,<br><br>    Counter-claimant,<br><br>    v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>    Counter-defendant. | Case No. CV 04-09059 NM (RNBx)<br><br>**DISCOVERY MATTER**<br><br>[PUBLIC REDACTED] DECLARATION OF MICHAEL T. ZELLER IN SUPPORT OF JOINT STIPULATION RE: MATTEL, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS<br><br>Hearing Date: January 25, 2005<br>Time: 9:30 a.m.<br>Courtroom: 540<br><br>Hon. Robert N. Block |

## DECLARATION OF MICHAEL T. ZELLER

I, Michael T. Zeller, declare as follows:

1. I am a member of the bars of the States of California, New York and Illinois and a partner at Quinn Emanuel Urquhart Oliver & Hedges, LLP, attorneys for plaintiff and counter-defendant, Mattel, Inc. ("Mattel"). I make this declaration of personal, firsthand knowledge and, if called and sworn as a witness, I could and would testify competently thereto.

2. Attached as Exhibit 1 is a true and correct copy of Mattel's Complaint in this action, which was filed on April 27, 2004 in Los Angeles County Superior Court and was personally served on Carter Bryant on April 30, 2004. Attached as Exhibit A to the Complaint is a true and correct copy of the Mattel Employee Confidential Information and Inventions Agreement signed by Carter Bryant on January 4, 1999.

3. Attached as Exhibit 2 is a true and correct copy of the Proprietary Information Checkout signed by Bryant on October 19, 2000 upon his termination of employment at Mattel.

4. Attached as Exhibit 3 is a true and correct copy of Bryant's first Notice of Removal, dated May 14, 2004 (the "First Notice of Removal"). Attached as Exhibit 4 is a true and correct copy of the Declaration of Carter Bryant filed separately on May 14, 2004.

5. Attached as Exhibit 5 is a true and correct copy of the Court's Order, dated August 20, 2004, rejecting Bryant's first removal of this case and remanding the action to Los Angeles County Superior Court.

6. Bryant filed a Cross-Complaint against Mattel on September 8, 2004. Attached as Exhibit 6 is a true and correct copy of Carter Bryant's Cross-Complaint in this matter.

7.  Attached as Exhibit 7 is a true and correct copy of this Court's Standing Order in this case, dated November 23, 2004.

8.  Attached as Exhibit 8 is a true and correct copy of the Stipulation Permitting MGA to Intervene as a Party to This Action entered by the Court on December 7, 2004.

9.  Attached as Exhibit 9 is a true and correct copy of the Protective Order between Mattel and Bryant entered on September 16, 2004 in the Los Angeles County Superior Court. MGA was specifically involved in the negotiation of this Protective Order, and has assented to its terms. Attached as Exhibit 10 is a true and correct copy of the August 11, 2004 letter from Diana Torres, counsel of record for MGA, assenting to the terms of the Protective Order. Attached as Exhibit 11 is a true and correct copy of a Stipulated Protective Order in this case, submitted to this Court for its consideration and approval on December 22, 2004, which is pending.

**Mattel's First Set of Requests for Production and**

**Bryant's Responses, Objections and Production**

10. Attached as Exhibit 12 is a true and correct copy of Mattel's First Set of Requests for Production of Documents and Tangible Things dated June 14, 2004.

11. Attached as Exhibit 13 is a true and correct copy of Bryant's Objections and Responses to Mattel's First Set of Requests for Production of Documents and Tangible Things dated July 16, 2004.

12. Bryant did not produce any documents in this action until August 12, 2004. Attached as Exhibit 14 is a true and correct copy of the August 12, 2004 letter from Keith Jacoby, Bryant's counsel of record in this case to me and my colleague Tania Krebs that accompanied Bryant's first production. After the Court remanded this case to state court, I met with Keith Jacoby, counsel of record for Bryant on August 25, 2004 to resolve any outstanding discovery disputes. Discovery negotiations have been ongoing, in an effort to resolve these disputes without

07209/626129.3                                    -3-
                                           ZELLER DECLARATION

expending the Court's time and resources. Bryant made two subsequent productions of documents on October 14, 2004 and November 1, 2004 respectively. Bryant allowed Mattel to inspect some (but not all) original documents and prototypes on November 1, 2004 and again on December 23, 2004. MGA Entertainment Inc. ("MGA"), Intervenor in this action, produced certain documents to Mattel on August 12, 2004.

**Incomplete Production of Agreements Between MGA and Bryant**

13. As set forth in the Complaint, in late November 2003, Mattel obtained a copy of a contract between Bryant and a Mattel competitor, MGA. That contract--which Bryant and MGA had entered into while Bryant was employed by Mattel--required Bryant to provide design services to MGA on a "top priority" basis. It also purported to grant MGA ownership of works produced by Bryant, both before and after the agreement's effective date. Attached as Exhibit 15 is a true and correct copy of the contract between Bryant and MGA (as obtained by Mattel). Both MGA and Bryant produced partial copies of this agreement on August 12, 2004.

14. Attached as Exhibit 16 is a true and correct copy of a "Confidentiality Agreement" signed by Bryant and Victoria O'Connor purportedly dated April 11, 2001, which was produced by Bryant on November 1, 2004, Bates Nos. BRYANT 01232-1233, as received by Mattel.

15. Attached as Exhibit 17 is a true and correct copy of the "Modification and Clarification of the 2000 Agreement," between Bryant and MGA, and bearing various dates in May 2004, produced by MGA on August 12, 2004, Bates Nos. MGA 000429-434, as received by Mattel. Bryant has never produced a copy of this agreement in any form.

16. Attached as Exhibit 18 is a true and correct copy of an October 25, 2000 e-mail message with attached pictures of a doll sculpture from Mercedeh Ward to a variety of recipients, including Bryant, produced by MGA on August 12, 2004, as received by Mattel.

17. As noted below in ¶ 37, Exh. 49, counsel for Bryant has acknowledged the existence of communications exchanged between MGA and Bryant during their negotiations, including one or more drafts of the agreement attached as Exh. 15. Bryant has refused to produce these documents.

**Bryant's Incomplete Production of Documents**

18. Bryant has produced approximately 1,000 pages of documents over the past four months. He has produced a variety of materials that are largely undated, and they appear to be a hodge-podge of correspondence, notes, drawings and photocopies from magazines. The documents were not accompanied by any indication about their source or the manner in which they were kept. Bryant has produced documents that demonstrate that he affirmatively omitted information about their sources and the manner in which they were kept. See Exhs. 20 & 23. Additionally, the overwhelming majority of the drawings produced by Bryant are undated. Attached as Exhibit 19 are true and correct copies of a random sample of the documents produced by Bryant on August 12, 2004, Bates Nos. BRYANT 00188, 00193, 00189-91, 00196, and 00198-200, as received by Mattel.

19. Attached as Exhibit 20 is a true and correct copy of a faxed document dated April 10, 2000 as produced by Bryant on August 12, 2004, Bates No. BRYANT 00167. The document appears to be Bratz designs. Although the header on the fax indicates that it is the third page of a fax transmission, neither the first nor the second page of the transmission were produced, nor were any subsequent pages produced. Moreover, neither the name of the sender nor the sender's telephone number appears in the header, and no cover sheet for the fax was produced.

20. Attached as Exhibit 21 is a true and correct copy of a computer-generated letter dated January 20, 2001 from Bryant to "Cecelia," as produced by Bryant on August 12, 2004, Bates No. BRYANT 00376. The attachments referenced in the letter were not produced.

21. Attached as Exhibit 22 is a true and correct copy of a fax cover sheet for a fax from Bryant to Cecilia Kwok on October 26, 2000, Bates No. BRYANT 00219, as produced by Bryant. The cover sheet indicates that, including the cover sheet, the fax transmission was 6 pages long. The "COMMENTS" section of the cover sheet indicate that a "'BRATZ' BACKPACK/DOLLCASE DESIGN" and fabrication information were attached to the original fax. The attachment to this fax cover sheet was never produced by Bryant.

22. Attached as Exhibit 23 is a true and correct copy of a faxed document as produced by Bryant, Bates No. BRYANT 1220. The fax number is obliterated from the header of the document, and no fax cover sheet was produced identifying the sender and recipient of the fax.

23. Attached as Exhibit 24 is a true and correct copy of an e-mail exchange between Isaac Larian and Carter Bryant dated October 5, 2000, as produced by defendant MGA on August 12, 2004, Bates No. MGA000423. Bryant has never produced this document, nor has he produced any other documents regarding his work on marketing and advertising ideas that he provided to MGA.

24. Attached as Exhibit 25 is a true and correct copy of an e-mail exchange between Carter Bryant and Paula Treantafelles, dated October 24, 2000, as produced by defendant MGA, Bates No. MGA000427-428. This document suggests that there had been facsimile communications between Bryant and Kinuyo Shichijyo, a Mattel vendor, in the Fall of 2000. Bryant has never produced this document.

25. Attached as Exhibit 26 is a true and correct copy of an e-mail message and the attached fax document, as produced by Bryant to Mattel on November 1, 2004, between "K. Shichijyo" and Bryant, dated September 18, 2000 and bearing Bates Nos. BRYANT 01202-1203. On November 1, 2004, Bryant also produced a computer-generated letter addressed to "Kinuyo" from Bryant, dated September 18, 2000. Attached as Exhibit 27 is a true and correct copy of this letter, Bates No. BRYANT 01200, as produced by Bryant. Bryant also produced a fax

confirmation sheet for this second letter on November 1, 2004, Bates No. BRYANT 01201, a true and correct copy of which is attached as Exhibit 28. This exchange between Mr. Shichijyo and Bryant refers to other, earlier exchanges between them that have never been produced by Bryant.

26. Attached as Exhibit 29 is a true and correct copy of two pages from the index of a Notary Public, Bates Nos. BRYANT 00928-929, as produced by Bryant. The first entry indicates that Bryant had "sketches of doll idea" notarized on August 26, 1999, including "2 males." Attached as Exhibits 30 and 31 are true and correct copies of black and white drawings of male figures that were notarized by Jacqueline Ramona Prince on August 26, 1999, Bates Nos. BRYANT 00207 and 00210, as produced by Bryant on August 12, 2004. Although August 1999 was during a time that Bryant was employed by Mattel, he has produced virtually no information, including development information, about these male doll designs.

27. Bryant has also failed to produce a number of royalty statements. Bryant failed to produce any documents showing payments for his services on an MGA project known as "Angel," which Bryant acknowledged in deposition he worked on during his Mattel employment. See Exh. 72 (at 178:3-18, 195:21-25, and 196:1-20). Of the royalty statements and other financial information that Bryant has produced, a significant portion of those documents have been redacted to the point where they are indecipherable. Attached as Exhibit 32 are true and correct copies of a representative selection of the royalty statements and financial documents produced by Bryant on November 1, 2004, Bates Nos. BRYANT 00728-781. Attached as Exhibit 33 are true and correct copies of check receipts showing payment to Bryant for work on an MGA project called "Sugar Planet," produced by Bryant on November 1, 2004, Bates Nos. BRYANT 01194 & 01196, as received by Mattel. On November 1, 2004, Mr. Jacoby promised to determine why various royalty statements had not been produced. See Exh. 49. Bryant's counsel has not provided any explanation why various royalty statements have not been produced.

28. On November 1, 2004, Bryant produced some telephone records. Attached as Exhibit 34 are true and correct copies of a representative sample of the telephone records produced by Bryant on November 1, 2004, Bates Nos. BRYANT 01260-1285, as received by Mattel. Bryant has also produced no telephone bills for a carrier known as "tti National, Inc." for any date prior to October 23, 2000 for one phone number or any date prior to October 26, 2000 for another phone number.

29. Attached as Exhibit 35 are true and correct copies of Brazilian copyright registrations for the Bratz characters Jade, Yamin, and Sasha. Bryant has not produced these documents or any other documents relating to copyright, patent and similar registrations.

**Incomplete Production of Computer Hard Drives**

30. Bryant's deposition testimony indicates that he used at least three different computers during the periods that he worked on the Bratz project. See Exh. 72 (at 245:8-25-246:1-5). Attached as Exhibit 36 are true and correct copies of the receipts for a computer purchased at Circuit City, Bates Nos. BRYANT 00786-788, produced by Bryant on August 12, 2004, as received by Mattel.

31. In addition to the e-mail documents produced by MGA and Bryant, Mattel has received other documents that indicate Bryant's computer use. Attached as Exhibit 37 is a true and correct copy of a computer-generated letter dated July 14, 1998 and addressed to Human Resources at Hasbro Toy Group which was produced by Bryant on August 12, 2004, Bates No. BRYANT 00377, as received by Mattel. Attached as Exhibit 38 is a true and correct copy of a computer-generated letter addressed to Mattel as produced by Bryant on August 12, 2004, Bates No. BRYANT 00870. Attached as Exhibit 39 is a true and correct copy of Bryant's computer-generated résumé, as produced by Bryant on August 12, 2004, Bates Nos. BRYANT 00871-872. Bryant also testified and has produced documents that indicate that he regularly used e-mail as a means of communication about the development of Bratz. See Exh. 73 (at 400:11-21). Attached as Exhibit 40 is a true and correct copy

of a list of e-mail addresses as produced by Bryant on August 12, 2004, Bates No. BRYANT 00346.

**Mattel's Attempts to Resolve the Discovery Disputes**

32. Attached as Exhibit 41 is a true and correct copy of my colleague Jon Corey's October 18, 2004 letter to Mr. Jacoby outlining the deficiencies in Bryant's objections and responses, as well as his production.

33. Attached as Exhibit 42 is a true and correct copy of the October 20, 2004 letter to me from Mr. Jacoby. Attached to Mr. Jacoby's letter is Bryant's privilege log containing only four documents. None of these documents has been produced by Bryant. Two of the documents listed on the privilege log pertain to communications regarding Bryant's agreement with MGA.

34. My colleague, Jon Corey, wrote to Mr. Jacoby on October 22, 2004 identifying the deficiencies of the privilege log. Attached as Exhibit 43 is a true and correct copy of Mr. Corey's October 22, 2004 letter to Mr. Jacoby. Bryant still has not produced these purportedly privileged documents, nor has he supplemented his responses or his privilege log to make up for the deficiencies identified by Mattel.

35. Attached as Exhibit 44 is a true and correct copy of Mr. Corey's October 22, 2004 letter to Mr. Jacoby inviting Bryant's counsel to meet and confer to resolve these outstanding discovery disputes.

36. During a telephone conversation on October 25, 2004 between counsel for Mattel and counsel for Bryant, counsel for Bryant acknowledged the existence of documents relating to Bryant's agreements with MGA, such as communications exchanged by MGA and Bryant during their negotiations, correspondence, drafts or notes. Attached as Exhibit 45 is a true and correct copy of my colleague Kirkland Garey's October 27, 2004 letter to Mr. Jacoby confirming some aspects of that conversation, including that Mr. Jacoby had in his possession non-privileged documents that were responsive to Mattel's discovery requests. Attached as Exhibit 46 is a true and correct copy of Mr. Garey's October 28, 2004

letter confirming other aspects of the October 25, 2004 telephone conversation and again detailing the deficiencies in Bryant's objection, responses, and production. This letter confirms Bryant's withdrawal of his objections to the wording of Mattel's requests based upon alleged vagueness and ambiguity. Mr. Garey's October 28, 2004 letter to Mr. Jacoby asked Mr. Jacoby to confirm that this production would include all of the non-privileged, responsive documents in Bryant's possession or control.

37. Mr. Jacoby responded that Bryant would produce documents and prototypes for inspection on November 1, 2004. Attached as Exhibit 47 is a true and correct copy of Mr. Garey's October 28, 2004 follow-up letter to Mr. Jacoby accepting documents and inspection of prototypes on November 1, 2004. Attached as Exhibit 48 is Mr. Corey's October 30, 2004 letter to Mr. Jacoby requesting that all non-privileged, responsive documents be produced no later than November 1, 2004. In a letter dated November 1, 2004, Mr. Jacoby stated that inspection would not be permitted until November 1, 2004. Mr. Jacoby never confirmed that the document production included all of the non-privileged responsive documents in Bryant's possession or control. Additionally, although Mr. Jacoby responded by letter on November 1, 2004, he did not resolve the deficiencies identified by Mattel. Attached as Exhibit 49 is a true and correct copy of the November 1, 2004 letter from Keith Jacoby to counsel for Mattel, referring to the draft agreement between Bryant and MGA. In this letter, Mr. Jacoby agreed to investigate the gaps in Bryant's production. In this letter Mr. Jacoby also represented that he (or someone on his behalf) had looked on the hard drive of Bryant's computer that had been given away, but located no responsive documents. Mr. Jacoby did not indicate whether any effort was made to conduct a forensic analysis of that hard drive or to determine whether any deleted documents could be retrieved. Mr. Jacoby has refused to produce the hard drive of the computer that Bryant had given away.

38. Mattel has followed-up on its requests for Bryant to account for the deficiencies in his production, but Bryant has not offered any explanations for his

07209/626129.3

-10-

ZELLER DECLARATION

omissions. Attached as Exhibit 50 is a true and correct copy of Mr. Garey's November 17, 2004 letter to Mr. Jacoby again requesting that Mr. Jacoby advise Mattel about the results of any inquiry into the omissions in Bryant's production. In this letter, Mr. Garey urges Mr. Jacoby to secure possession of the computer hard-drives at issue to prevent the destruction of evidence. Bryant's counsel never responded to these requests.

**Bryant's Discovery Delay Tactics**

39. On June 17, 2004, Mattel served its first Notice of Deposition for Bryant. Attached as Exhibit 51 is a true and correct copy of the Notice of Deposition to Defendant Carter Bryant.

40. On June 18, 2004, immediately after Mattel noticed Bryant's deposition, Bryant filed with this Court an ex parte application that sought a complete stay of discovery by Mattel, including Bryant's deposition, and of all disclosure obligations by Bryant, among other things. Mattel opposed the application, and this Court denied the entirety of Bryant's application, including his stay requests. Attached as Exhibit 52 is a true and correct copy of the Court's Order dated June 22, 2004.

41. On July 11, 2004, due to Bryant's failure to meet and confer within the time mandated by the Local Rules, Mattel sent Bryant its portions of a Joint Stipulation on Mattel's motion to compel Bryant's deposition. Attached as Exhibit 53 is a true and correct copy of my letter to Douglas Wickham dated July 11, 2004 and attaching Mattel's portions of a Joint Stipulation for Mattel's motion to compel Bryant's deposition.

42. On July 12, 2004, in its continuing efforts to resolve Bryant's failure to appear for deposition, Mattel sent a letter offering to continue to try and resolve Bryant's refusal to be deposed so as to avoid burdening the Court, and suggesting July 13 as a date to meet. Attached as Exhibit 54 is a true and correct

copy of my letter to Douglas Wickham dated July 12, 2004. On July 12, Bryant agreed to meet to discuss the issue.

43. At the meeting on July 13, 2004, Bryant's counsel, Keith Jacoby and Douglas Wickham, stated that a motion to compel the deposition was "unnecessary" because Bryant's counsel were giving their "word as attorneys" that Bryant would appear for deposition in St. Louis during the week of August 16, 2004. This representation was confirmed in writing by Bryant's counsel the following day. Attached as Exhibit 55 is a true and correct copy of a letter I received from Keith Jacoby dated July 14, 2004. Mr. Jacoby's letter acknowledged the parties' "agreement" that Bryant would appear for deposition on August 17, 2004 and reiterated that "Mr. Wickham and I have given *our representations as counsel*" that Bryant would appear, absent "an unforeseen medical emergency or other exigent circumstances." (Emphasis added.) Mr. Jacoby further stated in that letter: "In my entire career, I have never had a witness I was representing spontaneously refuse to appear, nor has Mr. Wickham. I do not believe this will appear here, and *ask that you accept* the good faith representation of Mr. Wickham and I, rather than waste the Court's time and resources with a preemptive discovery motion." (Emphasis added.) Bryant's counsel also stated at the July 13 meeting that requiring a signed Stipulation to ensure Bryant's appearance at the agreed-upon time and place was "unnecessary" and "insulting" because their "word as attorneys" was "good enough" to ensure that Bryant would appear for deposition as agreed.

44. Rather than burden the Court with a motion at that point, Mattel relied on the representations of Bryant's counsel and made arrangements to take Bryant's deposition. Attached as Exhibit 56 is a true and correct copy of my letter to Keith Jacoby dated July 14, 2004, which further confirmed Bryant's counsel's representations as attorneys that Bryant would appear for deposition at the agreed-upon time and place. Mattel's July 14 confirming letter, which Bryant never disputed, stated:

While Mattel did not agree with the delay of Mr. Bryant's previously noticed deposition until August for reasons that I have already stated and does not believe that the statements in your letter of earlier today accurately reflect Mattel's position in all respects, we will accept *your representations as an attorney that Mr. Bryant will appear for deposition at the agreed-upon location and time.* Thus, as I mentioned over the phone today, *based upon those representations*, we will not be going forward at this juncture with a motion to compel his deposition, without prejudice of course to our rights to seek Court relief if circumstances change.

(Emphasis added.) Mattel's counsel then purchased plane tickets, arranged for video and a court reporter at the deposition, obtained space in St. Louis for the deposition, made hotel arrangements, and rearranged other client matters in order to be free to travel to St. Louis for the deposition.

45. On the afternoon of Friday, August 13, Bryant faxed to plaintiff, without notice and without any discussion with Mattel beforehand, a letter unconditionally canceling Bryant's scheduled deposition. Along with the letter from Mr. Millman, Bryant sent to plaintiff a 58-page Joint Stipulation with regard to Mattel's document discovery that Mr. Millman's August 13 letter also cited as an alleged justification for refusing to produce Bryant for deposition.

### Mattel's August 2004 Production Of Materials
### Relied Upon By Bryant In His Second Removal Petition

46. Meanwhile, Bryant also was delaying in commenting on and finalizing a Protective Order and thus in the production of documents in this case. I sent Bryant a first draft of the Protective Order on June 17, 2004. Attached as Exhibit 57 is a true and correct copy of my June 17, 2004 letter (without attachment). After a week of receiving no response, I sent a follow-up letter on June 24, 2004 requesting Bryant's comments. Attached as Exhibit 58 is a true and correct copy of my June 24, 2004 letter. Some ten days after Mattel had circulated the draft, on June

07209/626129.3

-13-

ZELLER DECLARATION

28, 2004, I received an email from Bryant's counsel promising comments "by the end of this week (if not sooner)." Attached as Exhibit 59 is a true and correct hard copy printout of Bryant's June 28, 2004 email.

47.  Despite Bryant's counsel's promise of comments within a few additional days, and despite my follow up voicemails (which went unreturned), no comments were forthcoming from Bryant for another two weeks, and until almost a month after Mattel had sent the draft. At the meeting on July 13, Bryant's counsel finally gave their comments. On the following day, Mattel provided a revised draft. Attached as Exhibit 60 is a true and correct hard copy printout of my July 14, 2004 cover email for the revised draft (without attachments).

48.  Another week passed before any response from Bryant. Attached as Exhibit 61 is a true and correct hard copy printout of Bryant's counsel's email of July 21, 2004, which Mattel responded to on the same day. Mattel then provided another draft on July 25, 2004. Attached as Exhibit 62 is a true and correct copy printout of my email of July 25, 2004 (without attachments). Bryant provided more comments on July 28, 2004. Although Mattel then sent the completed final draft to Bryant on July 29, 2004, it still took Bryant another twelve days, until August 9, 2004, just to sign it and return it to Mattel. Attached as Exhibit 63 is a true and correct hard copy of my email exchanges with Bryant's counsel on July 28, 2004, July 29, 2004 (without attachments) and July 30, 2004.

49.  With the Protective Order signed, and at the time when Bryant finally stated his production was ready, Mattel produced documents to Bryant on August 12, 2004. After a discussion with Bryant's counsel on August 13, 2004 in which he asked for documents relating to "Toon Teens," Mattel provided further documents to Bryant on the following business day, August 16, 2004. Attached as Exhibit 64 is a true and correct copy of Mattel's August 16, 2004 cover letter accompanying these documents.

07209/626129.3

-14-

ZELLER DECLARATION

50. On August 26, 2004, Mattel noticed Bryant's deposition for Springfield, Missouri, where Bryant resides, for September 9, 2004, a date on which Bryant had said that he was available. Attached as Exhibit 65 is a true and correct copy of Plaintiff's Notice of Videotaped Deposition of Carter Bryant.

51. Bryant again refused to appear for deposition. On September 1, 2004, in response to Bryant's counsel's oral statements that Bryant was refusing to appear, my colleague, Gloria Donovan, met and conferred with Bryant's counsel in a further effort to avoid motion practice regarding Bryant's deposition. Mattel's efforts were unavailing, however. Attached as Exhibit 66 is Ms. Donovan's letter of September 3, 2004 on the subject of Bryant's deposition. Attached as Exhibit 67 is a true and correct copy of a letter from Bryant's counsel, Dominic Messiha, dated September 7, 2004, in which Mr. Messiha confirmed that "Mr. Bryant will not be appearing for deposition in Missouri on September 9."

52. Mattel then filed a motion with the Los Angeles County Superior Court to compel Bryant's deposition. On September 3, 2004, Bryant also moved in the Superior Court for a protective order, claiming (among other arguments) that he "needed" certain documents so as to prepare for his deposition, and also moving for "phased" discovery in which document production would be completed before depositions commenced. Attached as Exhibit 68 is a true and correct copy of Bryant's Motion for a Protective Order and to Establish the Sequence and Timing of Discovery.

53. On October 5, 2004, the Superior Court granted Mattel's motion to compel Bryant's deposition and ordered Bryant to appear for deposition twenty days after Mattel furnished a verification as to the "certain documents" that Bryant claimed he needed before his deposition. Attached as Exhibits 69 and 70 are true and correct copies of the Court's Orders. As the Court's ruling stated: "[I]t appears that Defendant wants Plaintiff to produce certain documents before the deposition, which will assist Defendant in preparation of his deposition . . . . Plaintiff is ordered to

produce these documents or state in verified responses that none exists, and after a diligent search and reasonable inquiry, there are no such documents in Plaintiff's possession, custody, or control." Twenty days after that was done, the Court ruled, ***"Defendant is ordered to be deposed"***. (Emphasis added.)

54. Even after Mattel provided the verification (twice), however, Bryant announced on October 14, 2004 that he still refused to be deposed as ordered by the Superior Court. Accordingly, on October 19, 2004, Mattel filed a second motion (by ex parte) to compel Bryant's deposition. The Superior Court rejected Bryant's grounds for refusing to abide by the October 5 Order and compelled Bryant, for the second time, to appear for deposition. The Superior Court specifically ordered Bryant's deposition to commence on November 4, 2004. Attached as Exhibit 71 is true and correct copy of the Court's Order. On the afternoon of November 2, 2004, less than forty-eight hours before that Court-ordered deposition was set to start, Bryant removed this action for the second time. Mattel began Bryant's deposition on November 4, 2004. Bryant obstructed the deposition with numerous instructions not to answer on such matters as the details of the compensation that Bryant received from MGA. On November 8, 2004, although Mattel had not completed Bryant's deposition, Bryant and his counsel refused to allow it to be completed and unilaterally adjourned it.

55. Attached as Exhibit 72 is a true and correct copy of pages 4 through 10, 73 through 76, 79 through 82, 131 through 137, 163 through 172, 177 through 179, 189 through 192, 194 through 197, 205 through 207, 223 through 225, and 244 through 248 of the transcript of the deposition of Carter Bryant which took place in Springfield, Missouri on November 4, 2004.

56. Attached as Exhibit 73 is a true and correct copy of pages 267 through 269 and 399 through 401 of the transcript of the deposition of Carter Bryant which took place in Springfield, Missouri on November 5, 2004.

57. Attached as Exhibit 74 is a true and correct copy of pages 661 through 663 of the transcript of the deposition of Carter Bryant which took place in Springfield, Missouri on November 8, 2004.

58. Consistent with Bryant's own position, Mattel requested that Bryant verify his responses to Mattel's requests in the same fashion as he demanded of Mattel. See Exhs. 41 & 45. During the October 25, 2004 telephone conversation referenced in ¶ 36, Mr. Jacoby agreed to provide a signed verification that, as to each specific request, all non-privileged documents have been produced or that a thorough search was undertaken and located no non-privileged documents. See Exh. 49. Bryant never disputed this confirmation of the agreement between the parties. Yet Bryant has not produced the verification he promised almost two months ago.

59. Mattel has incurred attorneys' fees and costs in excess of $6,750.00 in bringing this motion. I spent more than 8 hours of time preparing the motion, for a total of more than $3,670 at my billing rate of $470 per hour. Jon Corey, a Quinn Emanuel partner, and Melissa Dalziel, a Quinn Emanuel associate, were also involved in preparing this motion. Mr. Corey spent more than 10 hours of his time on this motion, for a total of more than $4,550 at his billing rate of $455 per hour. Ms. Dalziel spent more than 20 hours of her time in researching and preparing this motion, for a total of more than $5,500 at her billing rate of $275 per hour.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed this 4th day of January, 2005, at Los Angeles, California.

*Michael T. Zeller*
Michael T. Zeller