**1**

1  things, that Bryant would receive royalties and other consideration for sales of products on

2  which Bryant provided aid or assistance; that all work and services furnished by Bryant to

3  the competitor under the agreement purportedly would be considered "works for hire"; and

4  that all intellectual property rights to preexisting work by Bryant purportedly would be

5  assigned to the competitor. In addition, while Bryant was employed by Mattel, Bryant and

6  the other defendants converted, misappropriated and misused Mattel property and resources

7  for the benefit of, and to aid and assist, Bryant personally and Mattel's competitor.

8        13.   During the time that he was employed by Mattel and thereafter, Bryant

9  concealed these actions from Mattel, including without limitation by failing to notify his

10  supervisor of his conflict of interest regarding the competitor and by making affirmative

11  misrepresentations to Mattel management upon his departure from Mattel.  Because of

12  Bryant's acts of concealment and his misrepresentations to Mattel, Mattel had no reason to

13  suspect that Bryant had worked for the competitor while still employed by Mattel until late

14  November 2003, when Mattel received, through an unrelated legal action, a copy of Bryant's

15  agreement with the competitor and saw that the date of the agreement predated Bryant's

16  departure from Mattel.

17        14.   As a consequence, Bryant breached his contracts with Mattel and

18  violated his duty of loyalty and his fiduciary duties to Mattel; the other defendants have

19  unlawfully aided and abetted his violation of such duties; and each of the defendants has

20  been unjustly enriched and engaged in acts of conversion.

21

22                        FIRST CLAIM FOR RELIEF

23                           (Breach of Contract)

24

25        15.   Mattel repeats and realleges each and every allegation set forth in

26  paragraphs 1 through 14, above, as though fully set forth at length.

27        16.   Pursuant to his Mattel Employment Agreement, and for good and

28  valuable consideration, Bryant agreed that he would not, without Mattel's express written

                              00022
                    -5-

consent, engage in any employment or business other than for Mattel or assist in any manner any business competitive with the business or future business plans of Mattel during his employment with Mattel.  Pursuant to his Mattel Employment Agreement, Bryant further assigned to Mattel all right, title and interest in "inventions," including without limitation "designs," that he conceived or reduced to practice during his employment by Mattel.  In addition, pursuant to the Conflict Questionnaire, Bryant certified that, other than as disclosed, he had not worked for any competitor of Mattel and had not engaged in any business venture or transaction involving a Mattel competitor that could be construed as a conflict of interest.  Bryant further promised that he would notify his superior immediately of any change in his situation that would cause him to change any of the foregoing certifications or representations.

17.     The Employment Agreement and the Conflict Questionnaire are valid, enforceable contracts, and Mattel has performed each and every term and condition of the Employment Agreement and Conflict Questionnaire required to be performed by Mattel.

18.     Bryant materially breached the foregoing contracts with Mattel, in that, among other things, he secretly aided, assisted and worked for a Mattel competitor during his employment with Mattel, without the express written consent of Mattel.

19.     As a consequence of Bryant's breach, Mattel has suffered and will in the future continue to suffer damages in an amount to be proven at trial.  Such damages include, without limitation, the amounts paid by the competitor to Bryant during his Mattel employment; the amounts paid by the competitor to Bryant as a result of the work he performed for the competitor during his Mattel employment; the amount that Mattel paid Bryant during the time he wrongfully worked for the competitor; the value of information and intellectual property owned by Mattel which Bryant provided to the competitor; the value of the benefits the competitor obtained from Bryant during the time he was employed by Mattel; and the value of the benefits the competitor obtained from Bryant as a result of the work he performed for the competitor during his Mattel employment.

20.   Furthermore, Bryant's conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Bryant specifically acknowledged in his Employment Agreement that his breach of the Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies." Accordingly, Mattel is entitled to orders mandating Bryant's specific performance of his contracts with Mattel and restraining Bryant from further breach.

## SECOND CLAIM FOR RELIEF

(Breach of Fiduciary Duty)

21.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 20, above, as though fully set forth at length.

22.   Bryant held a position of trust and confidence with Mattel.  In his position, Bryant had access to and was entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently in many of his job assignments and duties.  In his position, Bryant also represented Mattel in its dealings with third parties and, in his actions in the course and scope of his employment with Mattel, was an agent of Mattel.  Bryant confirmed his relationship of trust with Mattel in the Employee Agreement.  Bryant thus owed Mattel a fiduciary duty that included, but was not limited to, an obligation not to take any action that would be contrary to Mattel's best interests or that would deprive Mattel of any opportunities, profit or advantage which Bryant might bring to Mattel.

23.   Bryant breached his fiduciary duty to Mattel in that, while employed by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including without limitation by entering into an agreement with a Mattel competitor.  As alleged

-7-   00024

1   above. Bryant also breached the aforementioned duty by using Mattel property and resources

2   for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3          24.   The other defendants, acting with full knowledge of Bryant's obligations

4   to Mattel, aided and abetted Bryant in such conduct.

5          25.   As a direct and proximate result of defendants' wrongful conduct,

6   Mattel has incurred damages in an amount to be determined at trial.

7          26.   Defendants acted with malice, fraud and oppression, and in conscious

8   disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages

9   against defendants in an amount to be determined at trial.

10          27.   Furthermore, defendants' conduct has caused, and unless enjoined will

11   continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

12   money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel

13   is entitled to an order restraining further breach of Bryant's fiduciary duty to Mattel and/or

14   restraining defendants from continuing to benefit from such breach.

15

16                       THIRD CLAIM FOR RELIEF

17                       (Breach of Duty of Loyalty)

18

19          28.   Mattel repeats and realleges each and every allegation set forth in

20   paragraphs 1 through 27, above, as though fully set forth at length.

21          29.   As an employee of Mattel, Bryant owed a duty of undivided loyalty to

22   Mattel, his employer. Pursuant to this duty, Bryant could not compete with Mattel or assist

23   a competitor of Mattel during his employment with Mattel. Pursuant to this duty, Bryant

24   was required to always give preference to Mattel's business over his own, similar interests

25   during the course of his employment with Mattel.

26          30.   Bryant breached his duty of loyalty to Mattel in that, while employed

27   by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including

28   without limitation by entering into an agreement with a Mattel competitor. As alleged

-8-   00025

COMPLAINT

1   above, Bryant also breached the aforementioned duty by using Mattel property and resources

2   for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3       31.   The other defendants, acting with full knowledge of Bryant's obligations

4   to Mattel, aided and abetted Bryant in such wrongful conduct.

5       32.   As a direct and proximate result of defendants' wrongful conduct,

6   Mattel has incurred damages in an amount to be determined at trial.

7       33.   Defendants acted with malice, fraud and oppression, and in conscious

8   disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages

9   against defendants in an amount to be determined at trial.

10      34.   Furthermore, defendants' conduct has caused, and unless enjoined will

11  continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

12  money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel

13  is entitled to an order restraining further breach of Bryant's duty of loyalty to Mattel and/or

14  restraining defendants from continuing to benefit from such breach.

15

16                    FOURTH CLAIM FOR RELIEF

17                      (Unjust Enrichment)

18

19      35.   Mattel repeats and realleges each and every allegation set forth in

20  paragraphs 1 through 34, above, as though fully set forth at length.

21      36.   Defendants, by the aforementioned conduct, unfairly used and diverted

22  Mattel property, resources and opportunities for the benefit of, and to aid and assist,

23  themselves, all without authorization by or payment to Mattel for the same. Defendants have

24  been unjustly enriched as a result.

25      37.   Mattel is entitled to an award of all such amounts by which defendants

26  have been unjustly enriched in an amount to be determined at trial.

27

28

38.     Defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to an award of punitive damages against defendants in an amount to be determined at trial.

39.     Furthermore, defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel is entitled to an order restraining defendants from any further unjust enrichment.

## FIFTH CLAIM FOR RELIEF

### (Conversion)

40.     Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 39, above, as though fully set forth at length.

41.     Mattel was entitled to, inter alia, Bryant's exclusive services and the exclusive ownership of his inventions as a Mattel product designer.  However, Bryant provided such services, and purported to grant rights to such inventions, to a competitor during the time of his exclusive Mattel employment.  All such services and the inventions and work product resulting from such services, including without limitation ideas, concepts, rights, designs, proprietary information, and other intellectual property and intangible property created by Bryant during the term of the aforesaid agreements, were the property of Mattel.  Such services and property were provided by Bryant to others, including defendants, and used by them.

42.     Defendants wrongfully converted Mattel property and resources by asserting ownership thereto and by appropriating and using Mattel's property and resources for their own benefit and gain and for the benefit and gain of others, without the permission of Mattel.

09427

43.   As a direct and proximate result of defendants' wrongful conversion of Mattel's property and resources, Mattel has incurred damages.  Mattel is entitled to recover compensatory damages against defendants in an amount to be determined at trial.

44.   Defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights.  Accordingly, Mattel is entitled to an award of punitive damages against defendants in an amount to be determined at trial.

45.   Furthermore, defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Accordingly, Mattel is entitled to an order restraining defendants from further conversion of Mattel property and resources and/or restraining defendants from continuing to benefit from such conversion.

## PRAYER FOR RELIEF

WHEREFORE, Mattel hereby respectfully requests that this Court:

A.   Award Mattel its damages;

B.   Order defendants to disgorge to Mattel all payments, revenue, profits, monies, royalties and any other benefits derived or obtained by defendants as a result of the conduct described herein;

C.   Order specific performance by Bryant to comply with and satisfy Bryant's contractual obligations to Mattel;

D.   Enter an injunction restraining defendants, and all those acting in concert or participation with them, from engaging in further wrongful conduct and/or from continuing to benefit from their wrongful conduct;

E.   Order defendants to pay Mattel the full cost of this action and Mattel's reasonable attorneys' fees;

F.   Award Mattel punitive damages in an amount sufficient to punish defendants and deter such misconduct in the future; and

1          G.      Award such other and further relief as this Court deems just and proper.

2

3    DATED:  April 27, 2004                QUINN EMANUEL URQUHART OLIVER &
                                           HEDGES, LLP
4

5
                                           By
6                                             Michael T. Zeller
                                              Attorneys for Plaintiff
7                                             Mattel, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    00020

**Exhibit A**

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and (v) when and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

## 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in the Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other material (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

## 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees at my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead, to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

## 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company

## 4. Miscellaneous

(a) My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will insure to the benefit of and be binding upon the successors and assigns of the the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement. In addition to damages and other available remedies

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

_____
Employee Signature

CARTER H. BRYANT
Employee Name (print)

01/04/99
Date

MATTEL INC.
By _____
Signature

TERESA NEWCOMB
Name of Witness (print)

00060

**Exhibit  B**

# CONFLICT OF INTEREST QUESTIONNAIRE

_BRYANT, CARTER H.      PROJECT DESIGNER_

Name (Last, First, M.I.)                                         Job Title                                         Department

**Instructions:** The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**Mattel Supplier** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**Mattel Competitor** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**Interest** means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

**Recipient of any commission, etc.,** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

- ○ YES  ● NO    1. Have you owned, directly or indirectly, any interest in a Mattel supplier?
- ○ YES  ● NO    2. Have you owned, directly or indirectly, any interest in a Mattel competitor?
- ○ YES  ● NO    3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?
- ● YES  ○ NO    4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?
- ● YES  ○ NO    5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?
- ○ YES  ● NO    6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?
- ○ YES  ● NO    7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor?
- ○ YES  ● NO    8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?
- ○ YES  ● NO    9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

_4, 5, freelance design + artwork in 1998._
_from appx. 5/98 - 11/98 for the Ashton Drake_
_galleries_

I certify that I have read Mattel's policies concerning Conflict of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged in any capacity which creates a Conflict of Interest.

_Carter H. Bryant_                                         _01/04/98_

Signature                                         Date

00021

2

 **Mattel**

## PROPRIETARY INFORMATION CHECKOUT     MAT-4125-8

Each terminating employee should be aware that, in his Employee's Agreement, he has agreed to transfer all inventions made or conceived during the period of his employment to Mattel and to do all acts necessary to secure patent protection for such inventions for Mattel.

Each employee should also be aware that he has agreed to protect the proprietary information of Mattel. More particularly, he has agreed essentially as follows:

"In consideration of my employment by MATTEL, INC., or any of its subsidiaries or affiliated companies now or hereafter existing (hereinafter referred to individually and collectively as 'MATTEL'), I hereby covenant and agree that:

My interest in (a) any and all inventions, improvements and ideas (whether or not patentable) which I have made or conceived, or may make or conceive at any time during the period of my employment with the Company, either solely or jointly with others and in (b) any suggestions, designs, trademarks, copyright subject matter, literary or artistic works which I have made or conceived, or may make or conceive at any time during the period of my employment which relate or are applicable directly or indirectly to any phase of the Company's business shall be the exclusive property of the Company, its successors, assignees or nominees. (The items defined in (a) and (b) above will hereinafter be referred to collectively as 'Proprietary Subject Matter'.)

I shall make full and prompt disclosure in writing to an officer or official of the Company, or to anyone designated for that purpose by the Company, of all Proprietary Subject Matter made or conceived during the term of my employment. I agree, at the request of Mattel's Patent counsel, to provide additional information to more fully define the specific structure of the disclosed subject matter and to present support documents evidencing my conception and development of the subject matter.

Since the work for which I am employed upon which I shall be engaged will include Company knowledge and information of a private, confidential, or secret nature, I shall not, except as required in the conduct of the Company's business or as authorized in writing by the Company, during the course of my employment or thereafter, publish, disclose, or make use of, or authorize anyone else to publish, disclose or otherwise make use of any such knowledge or information, of a confidential nature to and the secret property of the Company or the design, construction, manufacture or sale of the Company's products or services. This obligation shall apply even to Company information created by me.

All documents, written information and other items including, but not limited to, notes, sketches, manuals, blueprints, notebooks, products, tools, fixtures, records and information relating to the business of the Company, made or obtained by me while employed by the Company shall be the exclusive property of the Company and shall be delivered by me to the Company on termination of my employment or at any time as requested by the Company".

Please acknowledge the above by signing and dating in the spaces provided below.

| | DATE | |
|---|---|---|
| SIGNATURE | | 10/19/00 |
| WITNESS | DATE | 10/19/00 |

EXHIBIT ___ PAGE___

3

COPY

1  ROBERT F. MILLMAN, Bar No. CA 062152
   DOUGLAS A. WICKHAM, Bar No. CA 127268
2  LITTLER MENDELSON
   A Professional Corporation
3  2049 Century Park East, 5th Floor
   Los Angeles, CA 90067.3107
4  Telephone: 310.553.0308
   Facsimile:   310.553.5583
5
   Attorneys for Defendant
6  CARTER BRYANT

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                  CV04-3431 NM (RNBx)

11  MATTEL, INC., a Delaware         Case No.
    Corporation,
12                                   NOTICE TO FEDERAL COURT OF
              Plaintiff,             REMOVAL OF CIVIL ACTION
13                                   FROM STATE COURT PURSUANT
        v.                           TO 28 U.S.C. SECTION 1332(a)(1)
14
    CARTER BRYANT, an individual;    [28 U.S.C. § 1332(a)(1), § 1441, § 1446]
15  and DOES 1 through 10, inclusive,
                                     Action Filed: April 27, 2004
16            Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

EXHIBIT 3 PAGE 00003

1  TO THE CLERK OF THE ABOVE ENTITLED COURT AND TO PLAINTIFF

2  MATTEL, INC. AND ITS ATTORNEY OF RECORD:

3      PLEASE TAKE NOTICE that Defendant Carter Bryant ("Bryant") hereby

4  removes the above-entitled action from the Superior Court of the State of California

5  for the County of Los Angeles to the United States District Court for the Central

6  District of California.

7                          **JURISDICTION [LOCAL RULE 3.7.1]**

8      1.      This Court has original jurisdiction under 28 U.S.C. Section

9  1332(a)(1), and this case may be removed pursuant to the provisions of 28 U.S.C.

10  Section 1441(a), in that it is a civil action wherein the matter in controversy exceeds

11  the sum of seventy-five thousand dollars ($75,000.00) exclusive of interest and costs,

12  and it is between "citizens of different States."

13                          **NOTICE OF REMOVAL**

14      2.      On or about April 27, 2004, Plaintiff Mattel, Inc. ("Plaintiff") filed

15  an original complaint in the Superior Court of the State of California in and for the

16  County of Los Angeles, <u>Mattel, Inc., a Delaware corporation v. Carter Bryant, an</u>

17  <u>individual, and Does 1-10,</u> Case Number BC314398 (the "Complaint").

18      3.      The Complaint and Summons were personally served on

19  Defendant Carter Bryant, on or about April 30, 2004. True and correct copies of the

20  Complaint and Summons are attached hereto, collectively, as Exhibit "A". These

21  documents constitute all of the documents served in this case on Defendant Carter

22  Bryant.

23      4.      On May 14, 2004, Carter Bryant filed an Answer to Plaintiff's

24  Complaint in the Superior Court for the County of Los Angeles. A true and correct

25  copy of the Answer is attached hereto as Exhibit "B".

26      5.      No further proceedings have been heard herein at the Superior

27  Court for the County of Los Angeles.

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles CA 90067 3107
310 553 0308

2.

NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT



EXHIBIT 3 PAGE

6.    The Notice of Removal is hereby filed and served with the Court within 30 days of having first received a copy of the Summons and Complaint, and no more than one year after commencement of this action, as is required under 29 U.S.C. Section 1446(b).

7.    Plaintiff allegedly employed Bryant at Plaintiff's business in El Segundo, California. See Complaint at ¶ 9, a true and correct copy of which is attached as Exhibit A to the Declaration of Douglas A. Wickham ("Wickham Decl."). Plaintiff has commenced this action asserting four (4) claims for relief for alleged (1) breach of contract; (2) breach of fiduciary duty; (3) breach of duty of loyalty; and (4) conversion.

8.    This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. Section 1332(a)(1) and one that may be removed to this Court by Bryant pursuant to the provisions of 28 U.S.C. Sections 1441(b) and 1446.

a)    Plaintiff was, at the time of filing this action, and still is, a corporation incorporated under the laws of Delaware, having a principal place of business in El Segundo, California;

b)    Bryant is a citizen of the county of Springfield-Greene in the State of Missouri;

c)    Although the Complaint names as defendants "Does 1 through 10, inclusive," pursuant to 28 U.S.C. Section 1441(a), the citizenship of defendants sued under such fictitious names must be disregarded for the purpose of determining diversity jurisdiction;

d)    The amount in controversy in this case exceeds the sum of seventy-five thousand dollars ($75,000.00) exclusive of interest and costs. Although the Complaint does not state a specific dollar amount of damages that Plaintiff seeks, Plaintiff asserts claims for disgorgement of all payments, revenue, profits, monies, royalties and any other benefits derived or obtained by Bryant since the time of his employment by Plaintiff. See Bryant Decl., *passim*; Wickham Decl. ¶ 4 and Exhibit

3.

LITTLER MENDELSON
A Professional Corporation
2040 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553.0308

NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

EXHIBIT ___ PAGE ___

1  "A" thereto (i.e., Plaintiff's Complaint) at ¶ 11.  Plaintiff seeks in connection with its

2  first claim for relief for breach of contract the amounts allegedly paid to Bryant by an

3  alleged competitor of Plaintiff while Bryant was employed by Plaintiff; the amounts

4  allegedly paid to Bryant by an alleged competitor of Plaintiff as a result of work

5  Bryant performed for the alleged competitor while he was employed by Plaintiff; the

6  amount paid to Bryant by Plaintiff while Bryant rendered services to the alleged

7  competitor; the value of the information and intellectual property allegedly owned by

8  Plaintiff which Bryant allegedly provided to the alleged competitor; the value of the

9  benefits obtained by the alleged competitor from Bryant during the time Bryant was

10  employed by Plaintiff; and the valued of the benefits the alleged competitor obtained

11  from Bryant as a result of work Bryant performed for the alleged competitor during

12  his employment with Plaintiff.  Id.; Exhibit "A" ¶ 19.   Plaintiff also seeks

13  compensatory damages in connection with its second, third and fourth claims for relief

14  for breach of fiduciary duty, breach of the duty of loyalty and unjust enrichment.  Id.;

15  Exhibit "A" ¶¶ 25, 32, 37.

16       e)    Plaintiff also seeks to recover an unspecified amount of punitive

17  damages against Bryant.  Id. ¶ 4; Exhibit "A" ¶¶ 22, 29, 30, 36, 41.  A recent review

18  of verdicts and settlements in Southern California indicates that, depending on the

19  nature of the claim and its severity, punitive damages awarded by Southern California

20  juries have exceeded $75,000 in single plaintiff claims.  Although Bryant denies that

21  he can or should be liable for punitive damages in this case, for purposes of assessing

22  whether the amount in controversy element has been satisfied in order to invoke

23  diversity jurisdiction, the Ninth Circuit has specifically held that punitive damages

24  claimed by the named plaintiff are properly included in computing the jurisdictional

25  amount.  Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001).

26       f)    In effect, Plaintiff is asserting a claim for conversion and

27  intentional misconduct in connection with the alleged breach of an Employee

28  Confidential Information and Inventions Agreement.  Bryant may present evidence of

4.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

EXHIBIT 3 PAGE 00006

1   California court decisions and jury verdicts from similar cases to satisfy his burden of
2   demonstrating by a preponderance of the evidence that the amount in controversy is
3   more than $75,000.  See Green v. Party City Corp., No. CV-01-09681, 2002 WL
4   553219, at *3 (Feb. 4, 2002 C.D. Cal. 2002) (Snyder, J.) (copy lodged herewith).
5   Numerous California court decisions and jury verdicts demonstrate that punitive
6   damages in excess of $75,000 have been awarded to individual plaintiffs where the
7   plaintiff has alleged and prevailed on a claim of conversion of money or personal
8   property.  Id., citing Leatherman Tool Group, Inc. v. Cooper Industries, Inc., 289 f.3d
9   1146 (9th Cir. 2002) (approving $500,000 punitive damages award for improper use of
10  a photograph of competitor's product in connection with $50,000 compensatory
11  damages award); and Professional Seminar Consultants, Inc. v. Sino American
12  Technology Exchange Council, Inc., 727 F.2d 1470 (9th Cir. 1984) (awarding plaintiff
13  $200,000 in punitive damages on the claim that defendant had converted funds
14  received under an agreement to arrange study tour).  Additionally, in Gonzales v.
15  Guerrero, 1997 WL 875077 (T.D. Cal. Jury 1997) (copy lodged herewith), the jury
16  awarded $80,000 in punitive damages upon a finding that the defendant bail
17  bondsman had failed to give an attorney the cash collateral that had been assigned to
18  him by his client.  In Veerkamp v. Peterson, 1996 WL 268576 (T.D. Cal. Jury 1996)
19  (copy lodged herewith), the jury awarded the plaintiff $122,500 in punitive damages
20  on a claim alleging conversion of personal property that had been stored in a storage
21  locker.  In Mark & Harley Investments v. Ferrari of Los Gatos, 1998 WL 301260
22  (T.D. Cal. Jury 1998) (copy lodged herewith), the jury awarded $300,000 in punitive
23  damages, finding that defendant was liable for conversion of a car.

24          g)      In view of the foregoing, the preponderance of the evidence
25  indicates that Plaintiff is seeking to recover an amount in excess of seventy five
26  thousand dollars ($75,000) in damages, and therefore removal is proper.  See
27  DeAguillar v. Boeing Co., 47 F.3d 1404, 1412 (5th Cir. 1995) (removal proper where
28  "the defendant can show by a preponderance of the evidence that the amount in

5.

LITTLER MENDELSON

1   controversy is greater than the jurisdictional amount"); accord Gaus v. Miles, Inc., 980

2   F.2d 564, 566-67 (9th Cir. 1992).   Nevertheless, Bryant denies that Plaintiff has

3   suffered damages in any sum or at all and will zealously defend this lawsuit and his

4   position that Plaintiff's claims are wholly without merit.

5            h)      This action is, therefore, a civil action of which this Court has

6   original jurisdiction under 28 U.S.C. Section 1332(a)(1) and may be removed by

7   Bryant to this Court pursuant to 28 U.S.C. Sections 1441(b) and 1446 because of the

8   existence of diversity jurisdiction.

9            9.     Venue is proper in this Court pursuant to 28 U.S.C. sections 1391

10  and 1446.

11           10.    Contemporaneously with the filing of this Notice of Removal in

12  the United States District Court for the Central District of California, written notice of

13  such filing will be given by the undersigned to Plaintiff's counsel of record, Quinn

14  Emanuel Urquhart Oliver & Hedges, LLP, and a copy of the Notice of Removal will

15  be filed with the Clerk of the Court for the Superior Court of the County of Los

16  Angeles, California.

17

18  Dated: May 14, 2004

                                        ROBERT F. MILLMAN
19                                      DOUGLAS A. WICKHAM

20

21                                      _____
                                        DOUGLAS A. WICKHAM
22                                      LITTLER MENDELSON
                                        A Professional Corporation
23                                      Attorneys for Defendant
                                        CARTER BRYANT
24

25  Los_Angeles:357259.1 028307.1010

26

27

28

NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

**SUMMONS**
*(CITACION JUDICIAL)*

SUM-100

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CARTER BRYANT, an individual and Does 1 through 10 ~~~~
1303 South Farm Road #115
Springfield, MO 65802

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE):*
MATTEL, INC. a Delaware Corporation
333 Continental Blvd.
El Segundo, CA 90245

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no le protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):*<br>Los Angeles Superior Court<br>Central Branch<br>111 N. Hill Street<br>Los Angeles, CA 90012-3011 | CASE NUMBER *(Número del Caso):* **BC314398** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael T. Zeller (Bar No. 196417)     213-443-3000
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa Street
Los Angeles, CA 90017

DATE: April 27, 2004     John A. Clarke     Clerk, by _____ , Deputy
*(Fecha)*     *(Secretario)*     G. Gholash     *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL: SUPERIOR COURT LOS ANGELES COUNTY CALIFORNIA]

**NOTICE TO THE PERSON SERVED:** You are served
1. [X] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):

3. [ ] on behalf of (specify):

under: [ ] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
       [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
       [ ] CCP 416.40 (association or partnership)     [ ] CCP 416.90 (authorized person)
       [ ] other (specify):
4. [X] by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]     **SUMMONS**     Legal Solutions Plus     Code of Civil Procedure §§ 412.20, 465

David J. _____     Special Process Server

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Plaintiff
Mattel, Inc.

Case assigned to,
Judge _____
       Alan Buckner

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, | CASE NO. BC314398 |
| Plaintiff, | COMPLAINT FOR: |
| v. | (1) BREACH OF CONTRACT; |
| | (2) BREACH OF FIDUCIARY DUTY; |
| CARTER BRYANT, an individual; and DOES 1 through 10, inclusive, | (3) BREACH OF DUTY OF LOYALTY; |
| | (4) UNJUST ENRICHMENT; AND |
| Defendants. | (5) CONVERSION |

COMPLAINT

07209/579342.1

Plaintiff Mattel, Inc. ("Mattel") brings this action against defendants Carter Bryant ("Bryant") and Does 1 through 10 (all defendants being collectively referred to as "defendants") and alleges as follows:

### Parties

1.    Mattel is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business in El Segundo, California.

2.    Mattel is informed and believes, and on that basis alleges, that defendant Bryant is an individual currently residing in Springfield, Missouri.

3.    The true names and capacities of defendants sued herein as Does 1 through 10, inclusive, are unknown to Mattel, which therefore sues said defendants by such fictitious names. Mattel will amend this Complaint to allege their true names and capacities when the same are ascertained.

4.    Mattel is informed and believes, and on that basis alleges, that at all times relevant herein, defendants, and each of them, were acting in concert and active participation with each other in committing the wrongful acts alleged herein, and were the agents of each other, and in doing the things alleged herein, each defendant was acting within the course and scope of his, her or its agency and was subject to and under the supervision of, and was acting with the knowledge of, his, her or its co-defendants.

### Jurisdiction and Venue

5.    During the time of the acts complained of herein, Bryant was employed by Mattel in, and was a resident of, Los Angeles County. Bryant's contracts with Mattel that are at issue in this action were executed, performed and breached by Bryant in Los Angeles County. In addition, defendants committed the tortious conduct alleged herein while physically located in Los Angeles County, and Mattel felt the effects of Bryant's breach and

-2-

COMPLAINT

APR 28 2004 14:19

1  defendants' other wrongful acts in Los Angeles County.  Accordingly, this Court has

2  personal jurisdiction over defendants.

3         6.    Venue is proper pursuant to Code of Civil Procedure §§ 393 and 395(a),

4  as the causes of action arose in Los Angeles County, the contractual obligations at issue were

5  incurred, were to be performed and were breached by Bryant in Los Angeles County, and

6  Bryant does not currently reside in California.

7

8                               Factual Background

9

10         7.    Mattel is a long standing and successful independent manufacturer and

11  marketer of toys, dolls, games and stuffed toys and animals.  Mattel was founded in 1945 by

12  Elliot and Ruth Handler and Harold "Matt" Mattson.  The name of the company was created

13  by incorporating the names of two of its founders, "MATT-son" and "EL-liot." Originating

14  from the Handlers' garage in Southern California, the company greatly expanded its

15  operations following World War II and soon began to thrive as its reputation for producing

16  high-quality toys spread.  During the next several decades, Mattel became world famous for

17  producing high-quality products at reasonable prices.  Today, some of Mattel's most famous

18  brands include BARBIE, HOT WHEELS, MATCHBOX and FISHER-PRICE.

19         8.    Critical to Mattel's success, and to the livelihood of its employees, is

20  Mattel's ability to design and develop new products.  Mattel invests many millions of dollars

21  in product design and development annually, and it introduces hundreds of new products

22  each year.  In El Segundo, California alone, Mattel maintains a 180,000 square-foot design

23  center that houses more than 850 designers, sculptors, painters and other artists, whom

24  Mattel pays to work exclusively and full-time to create the products that Mattel sells and on

25  which Mattel's business depends.

26         9.    Defendant Bryant was employed by Mattel from September 1995

27  through April 1998, and then again from January 1999 through October 2000, as a product

28  designer at Mattel's design center in El Segundo, California.

07209/579343.1

-3-

COMPLAINT



EXHIBIT 3 PAGE

10.    On January 4, 1999, upon starting his second term of employment by Mattel, and as a condition of and in consideration for his employment, Bryant executed an Employee Confidential Information and Inventions Agreement (the "Employee Agreement"). Among other things, Bryant agreed that he would not, without Mattel's express written consent, "engage in any employment or business other than for [Mattel], or invest in or assist (in any manner) any business competitive with the business or future business plans of [Mattel]." Bryant further acknowledged that he held a position of trust with Mattel. In addition, Bryant assigned to Mattel all rights, title and interest in "inventions," including without limitation "designs," that he conceived or reduced to practice during his employment by Mattel. A true and correct copy of Bryant's Employee Agreement with Mattel is attached as Exhibit A.

11.    Also on January 4, 1999, Bryant executed Mattel's Conflict of Interest Questionnaire (the "Conflict Questionnaire"). Among other things, Bryant certified in the Conflict Questionnaire that, other than as disclosed, he had not worked for any competitor of Mattel in the prior twelve months and had not engaged in any business venture or transaction involving a Mattel competitor that could be construed as a conflict of interest. Bryant specifically agreed that he would immediately notify his supervisor of any change in his situation that would cause him to change any of the foregoing certifications. The only conflict disclosure that Bryant made on the Conflict Questionnaire (or at any time subsequently) concerned freelance work that is unrelated to the conduct alleged herein. A true and correct copy of the Conflict Questionnaire executed by Bryant is attached as Exhibit B.

12.    In late November 2003, Mattel learned that Bryant had secretly aided, assisted and worked for a Mattel competitor, including without limitation by entering into an agreement with the competitor, during the time Bryant was employed by Mattel pursuant to the above-referenced agreements and was being paid by Mattel as a product designer. Bryant's agreement with the competitor obligated Bryant to provide product design services to the competitor on a "top priority" basis. Bryant's agreement also provided, among other

-4-

COMPLAINT

things, that Bryant would receive royalties and other consideration for sales of products on which Bryant provided aid or assistance; that all work and services furnished by Bryant to the competitor under the agreement purportedly would be considered "works for hire"; and that all intellectual property rights to preexisting work by Bryant purportedly would be assigned to the competitor. In addition, while Bryant was employed by Mattel, Bryant and the other defendants converted, misappropriated and misused Mattel property and resources for the benefit of, and to aid and assist, Bryant personally and Mattel's competitor.

13.    During the time that he was employed by Mattel and thereafter, Bryant concealed these actions from Mattel, including without limitation by failing to notify his supervisor of his conflict of interest regarding the competitor and by making affirmative misrepresentations to Mattel management upon his departure from Mattel. Because of Bryant's acts of concealment and his misrepresentations to Mattel, Mattel had no reason to suspect that Bryant had worked for the competitor while still employed by Mattel until late November 2003, when Mattel received, through an unrelated legal action, a copy of Bryant's agreement with the competitor and saw that the date of the agreement predated Bryant's departure from Mattel.

14.    As a consequence, Bryant breached his contracts with Mattel and violated his duty of loyalty and his fiduciary duties to Mattel; the other defendants have unlawfully aided and abetted his violation of such duties; and each of the defendants has been unjustly enriched and engaged in acts of conversion.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

15.    Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 14, above, as though fully set forth at length.

16.    Pursuant to his Mattel Employment Agreement, and for good and valuable consideration, Bryant agreed that he would not, without Mattel's express written

-5-

COMPLAINT

APR 28 2004 14:21

EXHIBIT 3 PAGE

1   consent, engage in any employment or business other than for Mattel or assist in any manner

2   any business competitive with the business or future business plans of Mattel during his

3   employment with Mattel. Pursuant to his Mattel Employment Agreement, Bryant further

4   assigned to Mattel all right, title and interest in "inventions," including without limitation

5   "designs," that he conceived or reduced to practice during his employment by Mattel. In

6   addition, pursuant to the Conflict Questionnaire, Bryant certified that, other than as

7   disclosed, he had not worked for any competitor of Mattel and had not engaged in any

8   business venture or transaction involving a Mattel competitor that could be construed as a

9   conflict of interest. Bryant further promised that he would notify his superior immediately

10  of any change in his situation that would cause him to change any of the foregoing

11  certifications or representations.

12          17.    The Employment Agreement and the Conflict Questionnaire are valid,

13  enforceable contracts, and Mattel has performed each and every term and condition of the

14  Employment Agreement and Conflict Questionnaire required to be performed by Mattel.

15          18.    Bryant materially breached the foregoing contracts with Mattel, in that,

16  among other things, he secretly aided, assisted and worked for a Mattel competitor during

17  his employment with Mattel, without the express written consent of Mattel.

18          19.    As a consequence of Bryant's breach, Mattel has suffered and will in

19  the future continue to suffer damages in an amount to be proven at trial. Such damages

20  include, without limitation, the amounts paid by the competitor to Bryant during his Mattel

21  employment; the amounts paid by the competitor to Bryant as a result of the work he

22  performed for the competitor during his Mattel employment; the amount that Mattel paid

23  Bryant during the time he wrongfully worked for the competitor; the value of information

24  and intellectual property owned by Mattel which Bryant provided to the competitor; the

25  value of the benefits the competitor obtained from Bryant during the time he was employed

26  by Mattel; and the value of the benefits the competitor obtained from Bryant as a result of

27  the work he performed for the competitor during his Mattel employment.

28

20.   Furthermore, Bryant's conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Bryant specifically acknowledged in his Employment Agreement that his breach of the Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies." Accordingly, Mattel is entitled to orders mandating Bryant's specific performance of his contracts with Mattel and restraining Bryant from further breach.

## SECOND CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

21.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 20, above, as though fully set forth at length.

22.   Bryant held a position of trust and confidence with Mattel. In his position, Bryant had access to and was entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently in many of his job assignments and duties. In his position, Bryant also represented Mattel in its dealings with third parties and, in his actions in the course and scope of his employment with Mattel, was an agent of Mattel. Bryant confirmed his relationship of trust with Mattel in the Employee Agreement. Bryant thus owed Mattel a fiduciary duty that included, but was not limited to, an obligation not to take any action that would be contrary to Mattel's best interests or that would deprive Mattel of any opportunities, profit or advantage which Bryant might bring to Mattel.

23.   Bryant breached his fiduciary duty to Mattel in that, while employed by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including without limitation by entering into an agreement with a Mattel competitor. As alleged

-7-

COMPLAINT

APR 28 2024 14:23

EXHIBIT 3 PAGE.08 00046

PAGE

Palmzer

1   above, Bryant also breached the aforementioned duty by using Mattel property and resources

2   for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3           24.     The other defendants, acting with full knowledge of Bryant's obligations

4   to Mattel, aided and abetted Bryant in such conduct.

5           25.     As a direct and proximate result of defendants' wrongful conduct,

6   Mattel has incurred damages in an amount to be determined at trial.

7           26.     Defendants acted with malice, fraud and oppression, and in conscious

8   disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages

9   against defendants in an amount to be determined at trial.

10          27.     Furthermore, defendants' conduct has caused, and unless enjoined will

11  continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

12  money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel

13  is entitled to an order restraining further breach of Bryant's fiduciary duty to Mattel and/or

14  restraining defendants from continuing to benefit from such breach.

15

16                          THIRD CLAIM FOR RELIEF

17                          (Breach of Duty of Loyalty)

18

19          28.     Mattel repeats and realleges each and every allegation set forth in

20  paragraphs 1 through 27, above, as though fully set forth at length.

21          29.     As an employee of Mattel, Bryant owed a duty of undivided loyalty to

22  Mattel, his employer. Pursuant to this duty, Bryant could not compete with Mattel or assist

23  a competitor of Mattel during his employment with Mattel. Pursuant to this duty, Bryant

24  was required to always give preference to Mattel's business over his own, similar interests

25  during the course of his employment with Mattel.

26          30.     Bryant breached his duty of loyalty to Mattel in that, while employed

27  by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including

28  without limitation by entering into an agreement with a Mattel competitor. As alleged

07209/579342.1                              -8-

                                                        COMPLAINT