1  above, Bryant also breached the aforementioned duty by using Mattel property and resources

2  for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3        31.    The other defendants, acting with full knowledge of Bryant's obligations

4  to Mattel, aided and abetted Bryant in such wrongful conduct.

5        32.    As a direct and proximate result of defendants' wrongful conduct,

6  Mattel has incurred damages in an amount to be determined at trial.

7        33.    Defendants acted with malice, fraud and oppression, and in conscious

8  disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages

9  against defendants in an amount to be determined at trial.

10       34.    Furthermore, defendants' conduct has caused, and unless enjoined will

11  continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

12  money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel

13  is entitled to an order restraining further breach of Bryant's duty of loyalty to Mattel and/or

14  restraining defendants from continuing to benefit from such breach.

15

16                    FOURTH CLAIM FOR RELIEF

17                         (Unjust Enrichment)

18

19       35.    Mattel repeats and realleges each and every allegation set forth in

20  paragraphs 1 through 34, above, as though fully set forth at length.

21       36.    Defendants, by the aforementioned conduct, unfairly used and diverted

22  Mattel property, resources and opportunities for the benefit of, and to aid and assist,

23  themselves, all without authorization by or payment to Mattel for the same. Defendants have

24  been unjustly enriched as a result.

25       37.    Mattel is entitled to an award of all such amounts by which defendants

26  have been unjustly enriched in an amount to be determined at trial.

27

28

07209/5793.12.1

-9-

COMPLAINT

APR 28 2004 14:24

EXHIBIT 3   PAGE PAGE.18

09040

38.   Defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages against defendants in an amount to be determined at trial.

39.   Furthermore, defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining defendants from any further unjust enrichment.

## FIFTH CLAIM FOR RELIEF

### (Conversion)

40.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 39, above, as though fully set forth at length.

41.   Mattel was entitled to, inter alia, Bryant's exclusive services and the exclusive ownership of his inventions as a Mattel product designer.   However, Bryant provided such services, and purported to grant rights to such inventions, to a competitor during the time of his exclusive Mattel employment.   All such services and the inventions and work product resulting from such services, including without limitation ideas, concepts, rights, designs, proprietary information, and other intellectual property and intangible property created by Bryant during the term of the aforesaid agreements, were the property of Mattel.   Such services and property were provided by Bryant to others, including defendants, and used by them.

42.   Defendants wrongfully converted Mattel property and resources by asserting ownership thereto and by appropriating and using Mattel's property and resources for their own benefit and gain and for the benefit and gain of others, without the permission of Mattel.

00040

APR 28 2004 14:23                                      PAGE.11

43.     As a direct and proximate result of defendants' wrongful conversion of Mattel's property and resources, Mattel has incurred damages. Mattel is entitled to recover compensatory damages against defendants in an amount to be determined at trial.

44.     Defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages against defendants in an amount to be determined at trial.

45.     Furthermore, defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining defendants from further conversion of Mattel property and resources and/or restraining defendants from continuing to benefit from such conversion.

## PRAYER FOR RELIEF

WHEREFORE, Mattel hereby respectfully requests that this Court:

A.     Award Mattel its damages;

B.     Order defendants to disgorge to Mattel all payments, revenue, profits, monies, royalties and any other benefits derived or obtained by defendants as a result of the conduct described herein;

C.     Order specific performance by Bryant to comply with and satisfy Bryant's contractual obligations to Mattel;

D.     Enter an injunction restraining defendants, and all those acting in concert or participation with them, from engaging in further wrongful conduct and/or from continuing to benefit from their wrongful conduct;

E.     Order defendants to pay Mattel the full cost of this action and Mattel's reasonable attorneys' fees;

F.     Award Mattel punitive damages in an amount sufficient to punish defendants and deter such misconduct in the future; and

-11-

COMPLAINT

APR 28 2004 14:25                                PAGE.12



G.    Award such other and further relief as this Court deems just and proper.

DATED: April 27, 2004                    QUINN EMANUEL URQUHART OLIVER &
                                         HEDGES, LLP


                                         By _____
                                            Michael T. Zeller
                                            Attorneys for Plaintiff
                                            Mattel, Inc.

-12-

COMPLAINT

00051

PAGE.13

APR 28 2004 14:26

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

*[body text illegible due to document degradation]*

**1. Proprietary Information of the Company**

*[illegible]*

**2. Ownership of Inventions**

*[illegible]*

**3. Conflict with Other Activities**

*[illegible]*

**4. Miscellaneous**

*[illegible]*

CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS
THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.

Employee Signature _____

CARTER N. BRYANT

Date: 01/04/99

Witness Signature _____

*[witness name]*

EXHIBIT A PAGE 13

CONFLICT OF INTEREST QUESTIONNAIRE

BRYANT CARTER H          PROJECT DESIGNER

*[Body of questionnaire illegible due to scan quality]*

1. Have you owned, directly or indirectly, any interest in a Mattel supplier?
2. Have you owned, directly or indirectly, any interest in a Mattel competitor?
3. Have you been the recipient of any commission, fee, loan, trip, gift, honoraria or anything else of value that is owned in any way from a Mattel supplier?
4. Have you been the recipient of any commission, fee, loan, trip, gift, honoraria or anything else of value from or owed in any way from a Mattel competitor?
5. Have you or any member of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?
6. Have you or any member of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?
7. Have you engaged in any activity including the acquisition of ownership of any interest, for personal profit, first indirectly within the scope of the foregoing with respect to any supplier or competitor?
8. 
9. Are you aware of any activity of any employee which you believe would be considered as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes" please explain in the space below:

_9, 5,   freelance design & artwork in 1995_
_from appx. 5/98 - 11/98   for the Sebastin Sroka_
_galleries._

Carter H Bryant          01/04/98

EXHIBIT **B** PAGE 14

APR 28 2004 14:28

00053

EXHIBIT **3** PAGE____

May 14 04 12:44p                 er                    57936           p.27
Sent by: quinn,emanuel           12196240643;      04/27/    5:50PM;JetFax_#517;Page 27/35

# NOTICE TO LITIGANTS

Effective July 1, 2002, California Rules of Court were amended:

**RULE 201.**                 **APPLICABILITY.**

Except as otherwise provided in these rules, the rules in this chapter apply to all general civil cases filed in the trial courts after June 30, 2002.

**RULE 201.9**               **INFORMATION ABOUT ADR**

The plaintiff shall serve a copy of the ADR information package on each defendant along with the complaint. Cross-complainants shall serve a copy of the ADR information package on any new parties to the action along with the cross-complaint.

ADR 008 New (6/02)



EXHIBIT

May 14 04 12:44p        ther                        '57936              p.28
Sent by: quinn,emanuel          12136240643;        04/27     6:61PM;JetFax_#517;Page 28/35

| NAME, ADDRESS, AND TELEPHONE OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER: | *Reserved for Clerk's File Stamp* |
|---|---|---|
| | | |

ATTORNEY FOR (NAME)_____ ☐ Plaintiff ☐ Defendant ☐ Cross-defendant

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURT ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION | CASE NUMBER: |
|---|---|

The undersigned parties stipulate to participate in Alternative Dispute Resolution (ADR) in the above-entitled action, as follows:

**1.  ALTERNATIVE DISPUTE RESOLUTION PROCESS:**
☐  Mediation
☐  Non-Binding Arbitration
☐  Binding Arbitration
☐  Settlement Conference
☐  Other ADR Process (describe): _____

**2.  NEUTRAL:**
☐  **Court Pro Bono Panel:** The parties request the appointment of the following neutrals from the Court's *Pro Bono* Panel. If neither choice is available, or if the parties otherwise request, the Court's ADR Office will select the neutral. (There will be no charge to the parties for the first 3 hours of a neutral selected from the Court's ADR panel.)

First choice. _____   *Alternate:* _____

☐ The parties request that the ADR Clerk select the neutral.

☐  **Private Provider:** The parties stipulate that the following provider shall be appointed as arbitrator or mediator. (All of the neutral's fees shall be paid by the parties, and divided between them in a manner to which they have agreed.)

*Name, address and telephone of Private Neutral:*

_____

Dated: _____

| Name of Party Stipulating to Mediation | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | | |

| Name of Party Stipulating to Mediation | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | | |

☐ **Additional signature(s) on reverse**

| ADR 001 09-01 | **STIPULATION TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION** | California Rules of Court, Rule 1590.1 and 1590.3 |
|---|---|---|
| | | Page 1 of 2 |



00055

EXHIBIT 3

May 14 04 12:44p                                                     p.29
Sent by: quinn, emanuel                12136240643;        04/27/0    51PM;JetFax_#517;Page 29/35

CASE NAME:                                                    CASE NUMBER:

| Name of Party Stipulating to Mediation | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | | |
| Name of Party Stipulating to Mediation ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Party Stipulating to Mediation ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Party Stipulating to Mediation ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Party Stipulating to Mediation ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Party Stipulating to Mediation ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Party Stipulating to Mediation ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Party Stipulating to Mediation ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Party Stipulating to Mediation ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |

ADR 09108-01

**STIPULATION TO PARTICIPATE
IN ALTERNATIVE DISPUTE RESOLUTION**

California Rules of Court, Rule 1590.1 and 1590.3

Page 2 of 2

00086

EXHIBIT 3

# Los Angeles County Dispute Resolution Program

*for more information call (213) 758-2621, or contact one of the 18 agencies below.*

## P is FAIR

al mediators help disputants look at all sides of a conflict work together to find an effective, fair and reasonable out

## P is FIRM

results in a specific, detailed solution that covers all the issues. Since both parties agreed to the mediation, there is a al commitment to abide by its outcome.

## P is FAST

serve time. Disputes are resolved much more quickly than they are taken to court. can begin almost as soon as both parties agree to diate.

## P is FRIENDLY

lcation of all parties must be voluntary for DRP to work. mediation are satisfied at getting both sides of a dispute to to participate.

DRP is successful

**A. Milton Miller Memorial Foundation Disability Mediation Center**
819 So. Almay Street, Los Angeles, CA 90015 (213) 785-8164

**Asian Pacific American Dispute Resolution Center**
1145 Wilshire Blvd., Suite 103, Los Angeles, CA 90017 (213) 250-8190

**California Academy of Mediation Professionals**
16501 Ventura Blvd., Suite 606, Encino, CA 91436 (818) 347-1250

**California Lawyers for the Arts, Arts Arbitration and Mediation Services**
1641 18th Street, Santa Monica, CA 90404 (310) 998-5590

**Center for Conflict Resolution**
Senual Calunas Court Mediation Program
3150 East Foothill Blvd., Suite C, Pasadena, CA 91107 (626) 585-5729

**Centinela Valley Juvenile Detention Program -**
Youth Mediation Programs
11633 Hawthorne Blvd., Hawthorne CA 90350 (310) 675-8700

**Claremont Dispute Resolution Center**
114 North Indian Hill Blvd., Suite F, Claremont, CA 91711
(909) 625-6032

**Inland Valley Justice Center, Inc.**
600 South Park Avenue, Suite 760, Pomona, CA 91766 (909) 629-0301

**Korean American Coalition**
3727 West 6th Street, #515, Los Angeles, CA 90020

**L.A. City Attorney Dispute Resolution Program**
200 N. Main St., 1800 City Hall East, Los Angeles, CA 90012
(213) 485-8324

**L.A. County Bar Association, Dispute Resolution Services, Inc.**
261 S. Figueroa St., Suite 300, Los Angeles, CA 90012 (213) 473-7656
Youth Program (213) 896-6533

**L.A. County CSS, Volunteers Mediation Services**
St.Carmel (323) 584-8200; East LA (323) 260-2855; Santa Clarita (661)
S.E Valley (818) 548-5418; San Gabriel (626) 575-5418; San Pedro (310)

**L.A. County Department of Consumer Affairs,**
Dispute Settlement Services
500 West Temple St., Room B-96, Los Angeles, CA 90012
(213) 974-0825

**L.A. Superior Court Alternative Dispute Resolution Office**
111 North Hill St., Room 113, Los Angeles, CA 90012 (213) 974-5175

**Loyola Law School, Center for Conflict Resolution**
919 South Albany Street, Los Angeles CA 90015  (213) 736-1145

**Martin Luther King Legacy Association Dispute Resolution Center**
4182 S. Western Avenue, Los Angeles, CA 90062 (323) 290-4132

**Norwalk, City of, Consumer Rental Mediation Board**
11929 Alondra Blvd., Norwalk, CA 90650 (562) 925-5603

00057

EXHIBIT

May 14 04 12:44p        )-ter                                    ⌐257836                    p.31

Apr 28 04 08:08a        Chiste                          (2.      -43-3077                    p.3



# Dispute Resolution Program
## of Los Angeles County

Involved in a Dispute?

Need a Solution that's...

Fair?

Firm?

Fast?

Friendly?

We Can Help!

**DRP HELP YOU TO A RESOLUTION**

*DP stands for Los Angeles County's Dispute solution Program. It helps people involved in putes resolve them without going to court.*

*P provides highly skilled, well-trained neutral mediators who it disputants towards reaching a resolution.*

*P is available for all types of disputes, including:*

- dlord-Tenant
- ighbor-Neighbor
- usiness-Business
- onsmer-Business
- urance-Student
- utranas
- ployer-Employee
- up-Group
- mber-Group
- ployee-Employee
- vidual
- estic Relations

COMMUNITY AND SENIOR SERVICES
Robert Byrnes, Acting Director
315 S West 6th Street
Los Angeles, CA 90020

Henry M. Kondo
Chief, Community Services Division

Ester C. Sorcines,
Program Coordinator
Dispute Resolution Program
213 738 2621

LOS ANGELES COUNTY
BOARD OF SUPERVISORS
Gloria Molina, First District
Yvonne Brathwaite Burke, Second District
Zev Yaroslavsky, Third District
Don Knabe, Fourth District
Michael D. Antonovich, Fifth District

May 14 04 12:10p    arter    7257956    p.32
Apr 28 04 08:08a    Chiate    (2    43-3077    p.4

## HOW MUCH WILL IT COST?

Neutrals, who serve as mediators and arbitrators on the Court Panels, provide three hours of service to the parties on a voluntary basis. There are no administrative fees for the court ADR service.

If the parties wish to continue with the mediation or arbitration after the first three hours, the neutral is permitted to charge for their time. Fees range from approximately $150 to $500 per hour, depending upon the experience and expertise of the particular neutral. The fees are typically split between the parties in the case.

## HOW LONG DOES IT TAKE?

The length of an ADR procedure varies depending on the complexity of the case. Most cases require only one meeting to come to a resolution, but some cases may require additional sessions. All of these ADR processes must be completed by a date set by the Judge.

ADR processes work. They can save time and money, reduce emotional stress and prevent the loss of valued relationships. Isn't it worth at least inquiring about them?



Partially funded by the
Los Angeles County Dispute Resolution Program

ADR 84 (New 6/98)



00050

EXHIBIT 3



May 14 04 12:45p       Peter                  4  723/336            P.03
Apr 28 04 08:09a           Chiate             (2   443-3077         p.5

## THERE ARE ALTERNATIVES TO LITIGATION

The function of the Court is to provide a fair and impartial forum to resolve disputes. The traditional method provided by the court is called "litigation", more commonly known as a lawsuit. The court also offers innovative alternative dispute resolution, or "ADR", programs that provide mediation, settlement conferences and arbitration.

ADR has been increasingly used in recent years to resolve lawsuits and participants are usually very satisfied with the process and results. Mediation, settlement conferences and arbitration resolve disputes sooner with less expense, difficulty, and emotional stress than traditional litigation. Mediation and settlement conferences help the parties to decide the outcome of the dispute and to achieve solutions that are not available through litigation or arbitration.

Some of the possible benefits for parties using an ADR process instead of litigation include the following:

- ADR is more cost-effective;
- ADR is less time-consuming;
- ADR is often more highly satisfactory;
- ADR provides parties more control over the outcome.

Benefits for attorneys, in addition to those mentioned above, include:

- shorter time for disposition;
- quicker results for clients;
- ability to represent or advise more clients;
- fewer fee disputes;
- greater client satisfaction.

## THE LITIGATION PROCESS

Litigation is a formal and structured process in which a Judge or jury may ultimately decide the outcome of the parties' disputes after a trial.

The litigation process is often very lengthy, time consuming, expensive and emotionally draining for the parties. The outcome of litigation is also difficult to predict, and parties who expect to 'win' are often disappointed with the result at trial.

More than 95% of civil cases are resolved before trial, so it's worth considering ADR options early in the litigation process.

## WHAT ARE MY OPTIONS?

The Court sponsors three highly effective ADR programs for disputes in litigation: mediation, settlement conferences and arbitration.

## MEDIATION

Mediation is a flexible, informal and confidential process. In mediation, a neutral (the mediator) facilitates communication and negotiations to assist the parties in reaching a mutually acceptable resolution. Unlike a Judge, a jury, or an arbitrator, the mediator does not decide the outcome of the dispute, but helps the parties to do so.

Mediators use a variety of techniques to help the parties examine their underlying interests, needs and priorities and explore more creative resolutions, including options not available through trial or arbitration. Some of the common approaches include:

- helping the parties effectively express their perspective;
- clarifying the parties' issues, interests and needs;
- helping the parties identify options for resolution;
- acting as an intermediary in negotiations between the parties.

Mediators have a variety of backgrounds, and are not necessarily attorneys. All mediators on the Court's panel, including attorneys, have met training or experience requirements established by

00060

EXHIBIT 3

California law and the Court.

The parties actually involved in the dispute attend and participate more actively than in the other dispute resolution processes. There are many different mediation styles, and most involve a joint meeting of all participants. Many mediators also meet with the individual parties and their attorneys in private sessions. In these meetings, the participants discuss the problems, issues and potential solutions, rather than presenting evidence and arguments to a third-party decision maker. With limited exceptions, the discussions and any documents prepared in the mediation are confidential and cannot be admitted as evidence in non-criminal proceedings.

If the parties reach an agreement in mediation, they may specify that it will be enforceable by the Court. Because the resolution is decided by the parties rather than forced upon them, settlements achieved in mediation are more likely to be carried out and often improve relationships between the parties.

If mediation does not result in an agreement, the parties may resume the litigation process as though the mediation had not occurred. Mediation has significant benefits even if the dispute is not completely resolved. The participants gain a better understanding of each others' perspective and the issues in dispute are often narrowed or clarified. Often times the parties' resolve the dispute after the hearing as a result of participating mediation process.

## SETTLEMENT CONFERENCES

A settlement conference is an ADR process typically conducted by a "settlement officer" who is an active judge, retired judge, or an experienced attorney. If the Judge refers the case to a settlement conference through the Court's ADR Commercial Provider Program, retired judges and experienced private ADR providers serve as the settlement officer.

A settlement conference, like mediation, seeks to resolve the dispute by promoting an agreement between the parties. The settlement officer does not render a decision or make findings of fact, but assists the parties in negotiating a settlement of the litigation.

Settlement conferences and mediations are both flexible processes, however there are some general differences. Typically, settlement conferences focus more on the evidence and legal issues in the pending litigation and do not examine the parties' underlying interests or concerns. It is more common for a settlement officer to provide an evaluation of the legal merits and possible results of the litigation.

The parties to the dispute or representatives with settlement authority are required to attend, along with their attorneys. The settlement officer, however, often communicates exclusively or primarily with the attorneys.

An agreement reached in a settlement conference may be entered into the Court records. If a settlement is not reached, the dispute remains in the litigation process.

## ARBITRATION

Arbitration, like litigation, is a process in which the parties' dispute is decided by an impartial third person, called an "arbitrator." The parties present testimony under oath and the rules of evidence that apply. After considering the parties' evidence and argument, the arbitrator issues a written decision or "award" which is filed with the Court. The parties must agree in advance whether the arbitration will be "binding" or "non-binding." In "binding arbitration" the arbitrator's award can only be challenged by the parties on very limited grounds. In "non-binding arbitration" the parties are not required to accept the arbitrator's award, but have a limited time to request a "trial de novo" which returns the case to the Court's calendar for

00061

EXHIBIT 3

trial. Significant monetary penalties may be imposed if the party requesting a trial de novo does not obtain a more favorable result than the arbitration award.

*It is very important for the parties to understand that, in agreeing to binding arbitration, or by not requesting a trial de novo on a timely basis, they are waiving their right to a trial and are accepting the arbitrator's award as a final decision.*

### HOW ARE CASES REFERRED TO THESE PROGRAMS?

Mandatory referrals to an ADR program are ordered by the Judge, usually at a status conference or other scheduled proceeding. In considering a case for mandatory referral to mediation, settlement conference or arbitration, the Judge discusses the case with the attorneys or parties representing themselves to determine what dispute resolution process is most appropriate. After consultation, cases are referred to mandatory mediation or arbitration under the following circumstances:

* the plaintiff requests mediation or arbitration in writing and agrees that the award per plaintiff will not exceed $50,000;
* if, in the opinion of the Judge, the amount in controversy does not exceed $50,000 per plaintiff;
* if the Judge determines that the case is otherwise eligible and appropriate for mediation, settlement conference or arbitration and orders the parties to one of these ADR processes.

A voluntary referral to an ADR program may be

initiated by the parties at any time during the litigation, and regardless of the amount in controversy. Cases involving more than $50,000 are frequently resolved through alternative dispute resolution. The parties may initiate a voluntary ADR process by completing and filing the Stipulation to Participate in Alternative Dispute Resolution form, or they may request voluntary ADR at a status conference or other scheduled hearing in the case.

### HOW ARE NEUTRALS SELECTED?

The Court ADR Office maintains a panel of neutrals who have met qualifications established by California Law or the Court to serve as mediators, arbitrators and/or settlement officers. Ordinarily, the attorneys or parties agree on the selection of a neutral. If the parties are unable to agree, the ADR Office will randomly select a neutral. Background information on the Court Panel neutrals is available on the Internet at http://www.lasuperiorcourt.org/ADR, and at the Central ADR Office located in Room 115 of the Los Angeles Superior Court at 111 North Hill Street, Los Angeles, CA 90012 (telephone: 213.974.5425).

Parties also have the option of selecting a private neutral at their own cost. There are various organizations throughout Los Angeles County providing private ADR services. To obtain more information about these organizations contact the California Department of Consumer Affairs, toll free 1-800-952-5210 or look in the yellow pages under mediation or arbitration.

1   ROBERT F. MILLMAN, Bar No. CA 062152
    DOUGLAS A. WICKHAM, Bar No. CA 127268
2   LITTLER MENDELSON
    A Professional Corporation
3   2049 Century Park East, 5th Floor
    Los Angeles, CA  90067.3107
4   Telephone:    310.553.0308

5   Attorneys for Defendant
    CARTER BRYANT
6

7                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                            COUNTY OF LOS ANGELES

9

10  MATTEL, INC., a Delaware corporation,      Case No.  BC314398

11              Plaintiff,                      ASSIGNED FOR ALL PURPOSES TO
                                                JUDGE HON. ALAN BUCKNER
12         v.
                                                **ANSWER TO PLAINTIFF'S
13  CARTER BRYANT, an individual; and          UNVERIFIED COMPLAINT**
    DOES 1 through 10, inclusive,
14                                              Complaint Filed:  April 27, 2004
                Defendant.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles CA 90067 3107
310 553 0308

ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

00163

EXHIBIT ___ PAGE ___

1    COMES NOW Defendant CARTER BRYANT ("Defendant") by and through his

2    attorneys, and for his Answer to the unverified Complaint ("Complaint") of Plaintiff MATTEL,

3    INC. ("Plaintiff") hereby generally and specifically denies each and every allegation in Plaintiff's

4    Complaint, pursuant to Sections 431.30(b) and (d) of the California Code of Civil Procedure.

5    <u>**AFFIRMATIVE DEFENSES**</u>

6    Without waiving or excusing the burden of proof of the named Plaintiff or admitting

7    that Defendant has any burden of proof, Defendant asserts the following affirmative defenses:

8    <u>**FIRST AFFIRMATIVE DEFENSE**</u>

9    1.    Plaintiff's Complaint and each purported claim for relief therein fail to state

10    facts sufficient to constitute a claim for relief against Defendant.

11    <u>**SECOND AFFIRMATIVE DEFENSE**</u>

12    2.    Plaintiff's Complaint and each purported claim for relief therein are barred by

13    the equitable doctrine of unclean hands.

14    <u>**THIRD AFFIRMATIVE DEFENSE**</u>

15    3.    Plaintiff's Complaint and each purported claim for relief therein are barred by

16    the equitable doctrine of waiver.

17    <u>**FOURTH AFFIRMATIVE DEFENSE**</u>

18    4.    Plaintiff's Complaint and each purported claim for relief therein are barred by

19    the equitable doctrines of estoppel.

20    <u>**FIFTH AFFIRMATIVE DEFENSE**</u>

21    5.    Plaintiff's Complaint and each purported claim for relief therein are barred by

22    the equitable doctrine of laches.

23    <u>**SIXTH AFFIRMATIVE DEFENSE**</u>

24    6.    Plaintiff's Complaint and each purported claim for relief therein are barred by

25    the equitable doctrine of consent.

26    <u>**SEVENTH AFFIRMATIVE DEFENSE**</u>

27    7.    Plaintiff's Complaint and each purported claim for relief therein, or some of

28    them, are barred by the applicable statutes of limitations, including Code of Civil Procedure sections

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

2.

ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT _____

337, 339, 343 and 358(c).

## EIGHTH AFFIRMATIVE DEFENSE

8.     Plaintiff's Complaint and each purported claim for relief therein, or some of them, are barred because Defendant did not owe a legal duty to Plaintiff or, if any legal duty arose, it was not breached by Defendant.

## NINTH AFFIRMATIVE DEFENSE

9.     Without admitting, and specifically denying, that Defendant owed any duty to Plaintiff, any duty or obligation, contractual or otherwise, which Plaintiff claims was owed by Defendant has been fully performed, satisfied and/or discharged.

## TENTH AFFIRMATIVE DEFENSE

10.     Plaintiff's Complaint and each purported claim for relief therein are barred because Defendant has complied fully with his obligations under all applicable laws.

## ELEVENTH AFFIRMATIVE DEFENSE

11.     Defendant alleges that Plaintiff has failed to exercise reasonable diligence in properly mitigating its damages, if any in fact were suffered.

## TWELFTH AFFIRMATIVE DEFENSE

12.     Plaintiff's Complaint and each purported claim for relief therein are barred because the alleged losses or harms sustained by Plaintiff, if any, resulted from causes other than any act or omission of Defendant.

## THIRTEENTH AFFIRMATIVE DEFENSE

13.     Plaintiff's Complaint and each purported claim for relief therein, or some of them, are barred because to the extent Plaintiff has suffered any harm, and Defendant denies that Plaintiff has suffered any harm, it is due to Plaintiff's own acts and omissions.

## FOURTEENTH AFFIRMATIVE DEFENSE

14.     Plaintiff's Complaint and each purported claim for relief therein, or some of them, are barred because any alleged contract fails for lack of consideration, is vague and uncertain, and therefore is void, voidable and/or unenforceable.

//

3.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

09265

EXHIBIT

## FIFTEENTH AFFIRMATIVE DEFENSE

15.    Plaintiff's Complaint and each purported claim for relief therein, or some of them, are barred because any breaches of an alleged contract or duty, which Defendant denies, are excused by Plaintiff's acts or omissions.

## SIXTEENTH AFFIRMATIVE DEFENSE

16.    To the extent that Plaintiff's Complaint and any purported claim for relief therein, or some of them, seek the remedy of injunctive relief, that remedy is barred because Plaintiff's remedies at law are adequate and will not cause irreparable harm to Plaintiff.

## SEVENTEENTH AFFIRMATIVE DEFENSE

17.    Plaintiff's Complaint and each purported claim for relief therein cannot be maintained because any duties or obligations, contractual or otherwise, which Plaintiff claims are owed by Defendant, are contrary to applicable law.

## EIGHTEENTH AFFIRMATIVE DEFENSE

18.    Plaintiff is barred from recovering punitive and/or exemplary damages from Defendant because: (1) the provisions of California law allowing for the award of punitive and/or exemplary damages and the substantive rules, procedures and/or standards for determining whether or not to award them, and if so, in what amount, violates Defendant's rights to protection under Article 1, Section 17 of the California Constitution and violate Defendant's rights to due process as provided in the Fifth and Fourteenth Amendments of the United States Constitution; (2) punitive and/or exemplary damages are so punitive in purpose and effect as to constitute a criminal penalty, entitling Defendant to rights afforded to defendants in criminal proceedings under the United States Constitution and the California Constitution; (3) punitive and/or exemplary damages places an unreasonable burden upon interstate commerce; and (4) California's system of punitive damages is unconstitutional under State Farm Mut. Auto. Ins. Co. v. Campbell, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003), and the federal and state constitutions.

## NINETEENTH AFFIRMATIVE DEFENSE

19.    Defendant does not presently know all facts concerning the conduct of Plaintiff sufficient to state all affirmative defenses at this time.  Defendant will seek leave of this

4.



LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308




1  Court to amend this Answer should he later discover facts demonstrating the existence of additional

2  affirmative defenses.

3           **WHEREFORE**, Defendant prays for judgment as follows:

4           1.    Plaintiff's Complaint shall be dismissed in its entirety with prejudice;

5           2.    Plaintiff shall take nothing by its action against Defendant;

6           3.    Defendant shall be awarded his costs of suit and attorneys' fees incurred in

7  this matter (to the extent permitted by applicable law); and

8           4.    Defendant shall be awarded such other, further relief as may be deemed just

9  and proper.

10 Dated: May 14, 2004

11                                         Respectfully submitted,

12                                         LITTLER MENDELSON
                                           A Professional Corporation
13

14                                         By: _____

15                                             DOUGLAS A. WICKHAM
                                               Attorneys for Defendant
16                                             CARTER BRYANT

17 Los_Angeles:357256.2 028307.1010

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

5.

ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

00067

EXHIBIT

**PROOF OF SERVICE BY MAIL**

     I am employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 2049 Century Park East, 5th Floor, Los Angeles, California 90067.3107. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. On May 14, 2004, I placed with this firm at the above address for deposit with the United States Postal Service a true and correct copy of the within document(s):

**ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT**

     in a sealed envelope, postage fully paid, addressed as follows:

Michael T. Zeller
Quinn Emauel Urquhart Oliver &
Hedges LLP
865 S. Figueroa Street
10th Floor
Los Angeles, CA 90017

     Following ordinary business practices, the envelope was sealed and placed for collection and mailing on this date, and would, in the ordinary course of business, be deposited with the United States Postal Service on this date.

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

     Executed on May 14, 2004, at Los Angeles, California.



Julie Contreras

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles CA 90067 3107
310 553 0308

4

FILED

1   ROBERT F. MILLMAN, Bar No. CA 062152
    DOUGLAS A. WICKHAM, Bar No. CA 127268
2   LITTLER MENDELSON
    A Professional Corporation
3   2049 Century Park East, 5th Floor
    Los Angeles, CA 90067.3107
4   Telephone: 310.553.0308
    Facsimile:   310.553.5583
5
    Attorneys for Defendant
6   CARTER BRYANT

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                      CV04-3431  NM  (RNBx)

11  MATTEL, INC., a Delaware          Case No.
    Corporation,
12                                    DECLARATION OF CARTER
                   Plaintiff,         BRYANT IN SUPPORT OF
13                                    REMOVAL OF CIVIL ACTION
          v.                          FROM STATE COURT PURSUANT
14                                    TO 28 U.S.C. SECTION 1332(A)(2)
    CARTER BRYANT, an individual;
15  and DOES 1 through 10, inclusive, [28 U.S.C. § 1332(a)(1), § 1441, § 1446]

16                 Defendant.         Action Filed: April 27, 2004

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT  4  PAGE

00063

DEC. OF CARTER BRYANT ISO REMOVAL OF CIVIL ACTION

ROBERT F. MILLMAN, Bar No. CA 062152
DOUGLAS A. WICKHAM, Bar No. CA 127268
LITTLER MENDELSON
A Professional Corporation
2049 Century Park East, 5th Floor
Los Angeles, CA 90067.3107
Telephone: 310.553.0308
Facsimile: 310.553.5583

Attorneys for Defendant
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> CARTER BRYANT, an individual; and DOES 1 through 10, inclusive, <br><br> Defendant. | Case No. <br><br> **DECLARATION OF CARTER BRYANT IN SUPPORT OF REMOVAL OF CIVIL ACTION FROM STATE COURT PURSUANT TO 28 U.S.C. SECTION 1332(A)(2)** <br><br> [28 U.S.C. § 1332(a)(1), § 1441, § 1446] <br><br> Action Filed: April 27, 2004 |

0007.

EXHIBIT _____

## DECLARATION OF CARTER BRYANT

I, Carter Bryant, declare as follows:

1.     I am the defendant in this action and make this Declaration in support of Removal of Action to Federal Court Pursuant to 28 U.S.C. section 1332(a)(1). All of the information set forth herein is based on my personal and first hand knowledge and if called and sworn as a witness, I could and would competently testify thereto.

2.     The Complaint filed against me by Mattel does not specifically allege what conduct by me is wrongful, and I do not believe that I have done anything wrongful. Since I began performing services for compensation subsequent to my resignation at Mattel, the compensation that I have received exceeds $75,000. Accordingly, if I was enjoined from performing services as described in the Complaint, which I do not believe are wrongful, the earnings I would be precluded from receiving would be in excess of $75,000. Similarly, if I were ordered to pay over to Plaintiff earnings that were earned subsequent to my resignation from Mattel, that amount would also be in excess of $75,000.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13 th day of May, 2004 at Springfield, Missouri.

CARTER BRYANT

5

Received:   8/23/ 4   2:27PM;                    RightFAX -> QUINN EMANUEL;   Page 2
RightFAX                      ↑ 3/2004 2:03    PAGE 002/010    Fax Server





Priority
Send
Clsd
Enter
JS-5/JS-6
JS-2/JS-3



# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>CARTER BRYANT, an individual; and DOES 1 through 10, inclusive,<br><br>    Defendants. | CASE NO. CV 04-3431 NM (RNBx)<br><br>ORDER GRANTING PLAINTIFF MATTEL, INC.'S MOTION TO REMAND |

## I. INTRODUCTION

On April 27, 2004, Mattel, Inc. ("Plaintiff" or "Mattel") filed a complaint in the Superior Court for the County of Los Angeles against Carter Bryant ("Defendant"), asserting claims for: (1) breach of contract; (2) breach of fiduciary duty; (3) breach of duty of loyalty; (4) unjust enrichment; and (5) conversion. On May 14, 2004, Defendant filed a notice of removal to federal court based on diversity, pursuant to 28 U.S.C. § 1441(a).[1] Now pending is Plaintiff's motion to

---

[1] In his Opposition, Defendant raises for the first time federal question jurisdiction as an additional basis of subject matter jurisdiction. Plaintiff also seeks attorneys' fees pursuant to 28 U.S.C. § 1447(c).

Received: 8/23/ 4 2:28PM; RightFAX -> QUINN EMANUEL; Page 3
RightFAX          F  /2004 2:03    PAGE 003/010    Fax Server

remand.[2]

## II. RELEVANT FACTUAL BACKGROUND[3]

Plaintiff is a manufacturer and marketer of toys, dolls, games, and stuffed toys and animals. Compl. ¶ 7. Plaintiff employed Defendant from September 1995 through April 1998, and from January 1999 through October 2000, as a product designer at Plaintiff's design center in El Segundo, California. Id. ¶ 9.

Upon starting his second term at Mattel, Defendant signed an Employee Confidential Information and Inventions Agreement ("Employee Agreement"), in which Defendant agreed not to "engage in any employment or business other than for [Plaintiff], or invest or assist (in any manner) any business competitive with the business or future business plans of [Plaintiff]." Id. Plaintiff also alleges that Defendant acknowledged that he held a position of trust with Plaintiff, and that Defendant assigned to Plaintiff all rights, title, and interest in inventions, including designs, that he conceived or reduced to practice during his employment with Plaintiff. Id.

In addition to the Employee Agreement, Defendant executed Plaintiff's Conflict of Interest Questionnaire ("Conflict Questionnaire"). Id. ¶ 11. Defendant certified he had not worked for any competitor of Plaintiff in the prior 12 months and had not engaged in any business dealing that would be considered a conflict of interest. Id. Defendant allegedly agreed to immediately notify his supervisor of

---

[2] The court will consider the merits of this motion, despite the fact Plaintiff filed its motion 17 days after initiating the meet and confer with Defendant. See Local Rule 7-3 (counsel contemplating filing a motion must first contact opposing counsel "at least twenty (20) days prior to the filing of the motion").

[3] The following facts, taken from the Complaint, are assumed true for purposes of this motion only.

2

Received:    8/23/ 4   2:28PM;                    RightFAX -> QUINN EMANUEL;   Page 4
RightFAX                        7/2004 2:03    PAGE 004/010   Fax Server

1  any event that would change any of Defendant's certifications in the Conflict

2  Questionnaire. Id.

3          In late November 2003, Plaintiff learned that Defendant had secretly worked

4  for MGA Entertainment ("MGA"), one of Plaintiff's competitors, while Defendant

5  worked for Plaintiff. Id. ¶ 12; see Zeller Decl., Ex. 2 (MGA Agreement) at 19.  On

6  September 18, 2000, Defendant had signed an agreement with MGA ("MGA

7  Agreement") to provide product design services for MGA's line of "Bratz" dolls

8  on a top priority basis. Zeller Decl., Ex. 2 (MGA Agreement) at 19.  Pursuant to

9  the agreement, all work and services furnished by Defendant to MGA under the

10 MGA Agreement were to be considered "works for hire," and all intellectual

11 property rights to preexisting work by Defendant were to be assigned to MGA.  Id.

12         For the first six months of the MGA Agreement, MGA was to pay

13 Defendant $5,500 per month, and for the next three months, $5,000 per month. Id.

14 at 20. In addition to this base salary of $48,000, Defendant was to receive a

15 royalty of 3% of the net sales receipts from the sales of the "Bratz" dolls on which

16 Defendant provided his design services.  Id.  Defendant's last day of employment

17 for Plaintiff was October 20, 2000.  Second Bryant Decl. ¶ 4.

18

19                              **III. DISCUSSION**

20                        A. Removal Based on Diversity

21         An action is removable to a federal court only if it could have been brought

22 there originally.  28 U.S.C. § 1441(a).  A district court shall have original

23 jurisdiction of all civil actions where the amount in controversy exceeds the sum

24 or value of $75,000 and is between citizens of different states.  28 U.S.C. § 1332.

25 If at any time before final judgment it appears that the district court lacks subject

26 matter jurisdiction, the case shall be remanded to state court.  28 U.S.C. § 1447(c).

27

28

3

Received:   8/23/ 4   2:29PM;                RightFAX -> QUINN EMANUEL;   Page 5

RightFAX              F  '/2004 2:03     PAGE 005/010.  Fax Server

1   The Ninth Circuit "strictly construe[s] the removal statute against removal

2   jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992); see also

3   Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996) ("Because of the

4   'Congressional purpose to restrict the jurisdiction of the federal courts on

5   removal,' the statute is strictly construed.") (quoting Shamrock Oil & Gas Corp. v.

6   Sheets, 313 U.S. 100, 109 (1941)). "Federal jurisdiction must be rejected if there

7   is any doubt as to the right of removal in the first instance." Gaus, 980 F.2d at 566

8   (citation omitted). The removing party bears the burden of establishing that

9   removal is proper. Id. (citations omitted).

10   Where the complaint does not demand a dollar amount, the removing

11   defendant bears the burden of proving by a preponderance of the evidence that the

12   amount-in-controversy requirement is satisfied. Singer v. State Farm Mut. Auto.

13   Ins. Co., 116 F.3d 373, 376 (9th Cir. 1997); Sanchez v. Monumental Life Ins. Co.,

14   102 F.3d 398, 403 (9th Cir. 1996). Under this burden, the defendant must provide

15   evidence establishing that the amount in controversy "more likely than not"

16   exceeds $75,000. Sanchez, 102 F.3d at 404 (citation omitted).

17   The district court first may consider whether it is "facially apparent" from

18   the complaint that the jurisdictional amount is in controversy. Singer, 116 F.3d at

19   377. If not, the court may consider facts in the removal petition and any

20   "summary-judgment-type evidence," such as affidavits or declarations, relevant to

21   the amount in controversy at the time of removal. Id. (citation omitted);

22   Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial

23   § 2:664.12 (1999). Removal cannot be based on conclusory allegations alone, but

24   must be supported by underlying facts. Singer, 116 F.3d at 377; Gaus, 980 F.2d at

25   567.

26   In his notice of removal, Defendant submitted declarations that damages

27   exceeded $75,000, but failed to provide facts to support these claims. Bryant

28   Decl. ¶ 2; Wickham Decl. ¶¶ 2-4. Conclusory statements in declarations

EXHIBIT 5 PAGE

Received:   8/23/ 4   2:29PM;                  RightFAX -> QUINN EMANUEL;   Page 6
RightFAX              P  3/2004 2:03    PAGE 006/010   Fax Server

1   unsupported by facts are insufficient to satisfy removal. See Dir. RLA v. Cape

2   Cod Biolab Corp., 2001 WL 1563710, at *5 (N.D. Cal. 2001) (defendant's

3   declaration that amount in controversy exceeded $75,000 was conclusory because

4   it failed to provide facts to support jurisdiction).

5        Plaintiff seeks injunctive relief, compensatory damages, punitive damages,

6   and attorneys' fees for its five state-law claims. Compl. at 11. Thus, the issue is

7   whether Defendant can establish that the aggregate of these "more likely than not"

8   exceeds $75,000. See Sanchez, 102 F.3d at 404; Bell v. Preferred Life Assurance

9   Soc. of Montgomery, Ala., 320 U.S. 238, 240 (1943) (actual and punitive damages

10  aggregated to calculate amount in controversy); Cohn v. Petsmart, Inc., 281 F.3d

11  837, 840 (9th Cir. 2002) (in actions seeking injunctive relief, amount in

12  controversy measured by value of object of litigation); Galt G/S v. JSS

13  Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998) (attorneys' fees included to

14  aggregate amount in controversy if authorized by statute).

15              **1. Value of Injunctive and Compensatory Relief**

16       In non-class actions, the potential cost to a defendant to comply with an

17  injunction may be considered when calculating the amount in controversy. See

18  Kanter v. Warner-Lambert Co., 265 F.3d 853, 859 (9th Cir. 2001) (citation

19  omitted); In re Ford Motor Co./Citibank (S.D.), N.A., 264 F.3d 952, 958 (9th Cir.

20  2001). However, speculation that the amount in controversy exceeds $75,000

21  does not satisfy the defendant's burden. See Open Text, Inc. v. Ackerman, 2002

22  WL 31748839, at *2 (N.D. Ill. 2002) (defendants failed to satisfy burden by

23  merely asserting that injunction would cost over $75,000). Plaintiff seeks an

24  injunction "restraining defendants, and all those acting in concert or participation

25  with them, from engaging in further wrongful conduct and/or from continuing to

26  benefit from their wrongful conduct." Compl. at 11.

27       MGA has employed Defendant for over three-and-a-half years to provide

28  design services for its "Bratz" dolls and Defendant has earned "millions" as a

EXHIBIT 5  PAGE
00070

Received:   8/23/ 4  2:30PM;                RightFAX  > QUINN EMANUEL;  Page 7

RightFAX         ⌐ 3/2004 2:03   PAGE 007/010   Fax Server

1   result.  Second Bryant Decl. ¶ 3.  Defendant signed the MGA Agreement on

2   September 18, 2000, and resigned from Mattel on October 20, 2000, representing

3   only a one-month overlap of employment for both employers.  See Zeller Decl.,

4   Ex. 2 (MGA Agreement) at 19; Second Bryant Decl. ¶ 4.  The MGA Agreement

5   specified Defendant's base salary of $48,000 for the first nine months and a 3%

6   royalty of the net sales receipts of the "Bratz" dolls.  See Zeller Decl., Ex. 2 (MGA

7   Agreement) at 20.  However, Defendant nowhere states the earnings he received

8   from MGA while employed by Mattel or the nature or value of the services or

9   works he provided to MGA while employed by Mattel.  Plaintiff seeks only to

10   enjoin Defendant from profiting from the services rendered during the

11   approximately one-month time period Defendant worked for both Plaintiff and

12   MGA.  Compl. ¶ 23.

13        Defendant's assertion that the "Bratz" dolls' rising commercial success and

14   his millions in earnings satisfy the amount-in-controversy requirement for

15   injunctive relief is merely speculative.  It cannot be automatically inferred that

16   every dollar he has earned from the "Bratz" dolls is a result of work performed

17   during the one-month period he worked for both Plaintiff and MGA.  Nor can it be

18   inferred that all the work he performed during that month directly resulted in the

19   creation of the "Bratz" dolls.  It is unclear how much, if any, of the work

20   Defendant performed while working for both Plaintiff and MGA was eventually

21   used in the final product.  Without more evidence demonstrating that Defendant's

22   work during that month directly resulted in the creation of the "Bratz" dolls, the

23   court cannot determine whether the value of injunctive relief would exceed

24   $75,000.

25        Because it is unclear how much work Defendant performed during the one-

26   month period resulted in the "Bratz" dolls, the court also cannot determine

27   whether the value of compensatory relief for all of Plaintiff's five claims would

28   exceed $75,000.

00 77

EXHIBIT 5 PAGE ___

RightFAX                    8/ 3/2004 2:03    PAGE 008/010    Fax Server

## 2. Punitive Damages

Punitive damages are part of the amount in controversy in a civil action. Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001). To establish probable punitive damages, a defendant may introduce evidence of jury verdicts in cases involving analogous facts. Simmons v. PCR Tech., 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002).

Plaintiff requests punitive damages "in an amount sufficient to punish defendants and deter [their] misconduct in the future." Compl. at 11. Defendant cites California court cases to demonstrate that punitive damages exceeding $75,000 were awarded for conversion claims. See, e.g., Leatherman Tool Group, Inc. v. Cooper Indus., Inc., 285 F.3d 1146 (9th Cir. 2002) ($500,000 punitive damage award for false advertising); Prof. Seminar Consultants, Inc. v. Sino Am. Tech. Exchange Council, Inc., 727 F.2d 1470 (9th Cir. 1984) ($200,000 punitive damage award for tour operator's conversion of deposit check and failure to secure visas for traveling group); Mark & Harley Investments v. Ferrari of Los Gatos, 1998 WL 301260 (T.D. Cal. Jury 1998) ($300,000 punitive damage award for car dealership's conversion of an automobile); Gonzalez v. Guerrero, 1997 WL 875077 (T.D. Cal. Jury 1997) ($80,000 punitive damage award for bail bondsman's failure to give attorney money assigned to attorney by client); Veerkamp v. Peterson, 1996 WL 268576 (T.D. Cal. Jury 1996) ($122,500 punitive damage award for selling storage facility renter's property after rent was late). Although the cited cases involve claims of conversion, the fact patterns are not sufficiently analogous to those in this case. Thus, while punitive damages could potentially be awarded here, Plaintiff has provided no basis to quantify such an amount.

## 3. Attorneys' Fees

Where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in

EXHIBIT 5     00073

RightFAX                8·  3/2004 2:03      PAGE 009/010    Fax Server

1  calculating the amount in controversy. <u>Galt G/S</u>, 142 F.3d at 1156.  Defendant,

2  however, fails to cite any applicable state statute entitling Plaintiff to attorneys'

3  fees. <u>See</u> Opp. at 10; Compl. at 11; <u>see also</u> <u>Dix v. ICT Group, Inc.</u>, 2003 WL

4  22852135, at *5-6 (E.D. Wash. 2003) (before court considers probable amount of

5  attorneys' fees, defendant must cite statute authorizing attorneys' fees).  Thus,

6  attorneys' fees are not included in the calculation of the amount in controversy.

7      In sum, Defendant has failed to satisfy his burden that the value of

8  injunctive and compensatory relief, punitive damages, and attorneys' fees exceeds

9  $75,000.

10                    B. <u>Removal Based on Federal Question</u>

11      A claim arises under federal law if a "federal question is presented on the

12  face of the plaintiff's properly pleaded complaint." <u>Balcorta v. Twentieth Century</u>

13  <u>Fox Film Corp.</u>, 208 F.3d 1102, 1106 (9th Cir. 2000).  Where a claim is based only

14  on state law and seeks state law remedies, no federal question jurisdiction exists

15  even if its subject matter involves a copyright or patent. <u>Effects Assocs. Inc. v.</u>

16  <u>Cohen</u>, 817 F.2d 72, 73 (9th Cir. 1987); <u>see</u> <u>Consol. Housewares, Inc. v. Finkle</u>,

17  831 F.2d 261, 265 (Fed. Cir. 1987) (mere presence of patent issue cannot create

18  cause of action arising under patent laws).  As the master of his complaint, a

19  plaintiff may avoid federal question jurisdiction by relying exclusively on state

20  law. <u>Chesler/Perlmutter Prods., Inc. v. Fireworks Entm't, Inc.</u>, 177 F. Supp. 2d

21  1050, 1055 (C.D. Cal. 2001).

22      Here, Defendant argues that Plaintiff's discovery requests implicate federal

23  copyright and patent law.  Opp. at 12.  However, Plaintiff has alleged only state

24  law claims.  That these claims may involve copyrights and patents does not confer

25  federal question jurisdiction. <u>See</u> <u>Effects Assocs.</u>, 817 F.2d at 265; <u>Consol.</u>

26  <u>Housewares</u>, 831 F.2d at 265.

27

28

EXHIBIT 5 PAGE

Received:   8/23   2:03 P.M.;
RightFAX               8/23/2004  2:03    PAGE 010/010    Fax Server

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS** Plaintiff's motion to remand to Los Angeles County Superior Court.  Exercising its discretion pursuant to 28 U.S.C. § 1447(c), the court **DENIES** Plaintiff's request for attorneys' fees.

IT IS SO ORDERED.

DATED: August 20, 2004

Nora M. Manella
United States District Judge

9

EXHIBIT 5 PAGE

6

1   ROBERT F. MILLMAN, Bar No. CA 062152
    DOUGLAS A. WICKHAM, Bar No. CA 127268
2   KEITH A. JACOBY, Bar No. CA 150233
    LITTLER MENDELSON
3   A Professional Corporation
    2049 Century Park East, 5th Floor
4   Los Angeles, CA  90067.3107
    Telephone:    310.553.0308
5   Facsimile:    310.553.5583

6   Attorneys for Defendant/Cross-Complainant
    CARTER BRYANT

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      FOR THE COUNTY OF LOS ANGELES

10

11  MATTEL, INC., a Delaware Corporation,        Case No.  BC314398

12                     Plaintiff,                ASSIGNED FOR ALL PURPOSES TO THE
                                                 HONORABLE GREGORY W. ALARCON –
13        v.                                     DEPARTMENT 36

14  CARTER BRYANT, an individual; and            DATE ACTION FILED:  April 27, 2004
    DOES 1 through 10, inclusive,
15                                               DEFENDANT/CROSS-COMPLAINANT
                       Defendant.                CARTER BRYANT'S CROSS-
16                                               COMPLAINT FOR:

17                                               (1)  UNFAIR COMPETITION (Business &
                                                 Professions Code  §§ 16600, et seq. and 17200
18                                               et seq.);
                                                 (2)  RESCISSION;
19                                               (3)  DECLARATORY RELIEF; AND
                                                 (4) FRAUD.
20
                                                 DEMAND FOR JURY TRIAL
21
                                                 [Code Of Civil Procedure § 428.10]
22

23  CARTER BRYANT, on behalf of himself,
    all present and former employees of Mattel,
24  Inc., and the general public,

25                     Cross-Complainant,

26        v.

27  MATTEL, INC., a Delaware Corporation,

28                     Cross-Defendant.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

00081

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

EXHIBIT ⟨7  PAGE

1       1.     Defendant and Cross-Complainant Carter Bryant ("Bryant"), for his Cross-

2   Complaint alleges, upon personal knowledge with respect to himself and his own acts, and upon

3   information and belief as to all other matters, as follows:

4   **OVERVIEW**

5       2.     In this Action, Bryant's former employer, Mattel, Inc. ("Mattel"), has sued

6   Bryant for, among other things, breach of a purported Employee Confidential Information and

7   Inventions Agreement ("Agreement"). The Agreement is a classic contract of adhesion, drafted

8   solely by Mattel, forced upon Bryant on a take-it-or-leave-it basis with no negotiations invited or

9   allowed. Although signing the Agreement was a condition of Bryant's employment, Mattel never

10  explained the terms and conditions of the Agreement to Bryant and Bryant never was given a

11  meaningful opportunity to secure legal advice concerning its meaning or terms. Bryant, who is a

12  high school graduate, did not and could not understand the terms of the Agreement; indeed, no

13  reasonable layperson could understand the legal significance, meaning and terms of the Agreement,

14  which appeared to be written for lawyers with several years of experience as corporate attorneys.

15      3.     Furthermore, the Agreement contains terms and conditions that violate

16  established California law on their face and/or in connection with Mattel's interpretation and threats

17  to enforce this Agreement. For example, the confidentiality provision in the first section of the

18  Agreement (as interpreted by Mattel) purports to require Bryant (and similarly situated present and

19  former Mattel employees) to maintain a cone of silence – on pains of a breach of contract lawsuit by

20  Mattel's lawyers – over such innocuous *and public* information as the identities of Mattel employees

21  and the general skills and knowledge of such employees. Such a provision clearly is unlawful and

22  violates public policy because it *de facto* inhibits the free flow of information regarding employee

23  talents and thereby restricts employee mobility in this State, thus undermining one of California's

24  fundamental public policies.

25      4.     The Agreement also purports to prevent current employees from accepting

26  any other employment or engagement of any nature whatsoever, regardless of whether such work or

27  services could lead to the disclosure of Mattel's proprietary information or trade secrets or otherwise

28  constitute a breach of the employee's duty of loyalty. Thus, if a Mattel employee went to work at a

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 853 0308

1

EXHIBIT _____

1   gas station or a grocery store to earn extra money for his or her family, the Agreement flatly – and

2   unlawfully – prohibits such employment and renders such an employee liable to Mattel for breach of

3   contract.   Such a broad restriction concerning an employee's lawful off-duty conduct violates

4   California Business and Professions Code sections 16600 and 17200 and California Labor Code

5   sections 96(k) and 98.6 and California's broad public policies prohibiting unlawful covenants not to

6   compete.

7          5.      Finally, the Agreement also purports to require each and every Mattel

8   employee, including Bryant, to assign all inventions or creations conceived or reduced to practice

9   during the time period of his or her Mattel employment in direct violation of California Labor Code

10  section 2870.  While the Agreement purports to limit this broad assignment to the extent required

11  under Section 2870, this limitation is shrouded in so much legalese that no employee in Bryant's

12  shoes would know or understand either the inventions assignment or the limit on that assignment.

13  On information and belief, Bryant alleges that Mattel intentionally and purposefully implemented

14  this overly broad and unconscionable Agreement to lure employees to adhere to its unlawful terms

15  and to assign to Mattel inventions and creations that, by law, do not belong to Mattel.

16         6.      With this Cross-Compliant, Bryant alone and on behalf of all present and

17  former Mattel employees within the applicable limitations period and the general public, seeks to put

18  an end to Mattel's unlawful and unconscionable practices, with an injunction barring Mattel from

19  requiring employees to sign such agreements and threatening to enforce them, with a declaration that

20  all such agreements (including the Agreement signed by Bryant and any later, similar agreements)

21  are void and unenforceable because they are unconscionable, and with an order disgorging Mattel of

22  all profits unlawfully obtained by its misconduct.

23                                    **THE PARTIES**

24         7.      Bryant is an individual residing in the State of Missouri who was employed by

25  Mattel from 1995 through April 1998 and again from January 1999 to approximately October 20,

26  2000.

27         8.      On information and belief, Bryant alleges that Mattel is a multi-billion dollar,

28  international toy company that, at its El Segundo facility alone, maintains a 180,000 square-foot

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

2

00083

EXHIBIT ___

1  design center with more than eight hundred fifty (850) employees.  On information and belief,

2  Bryant alleges that Mattel also maintains facilities in New York state, Wisconsin, New Jersey and

3  Illinois.

4          9.      Mattel markets numerous lines of toys, but one of its most well-known

5  products is the "Barbie" doll line, which, according to Mattel's website, accounts for more than $3.6

6  billion in annual retail sales.  On information and belief, Bryant alleges that Mattel, either directly or

7  indirectly through subsidiaries or affiliates, markets and sells Hot Wheels toy cars, "ViewMasters"

8  (three-dimensional viewer toys), the Fisher-Price line of toys and a line of dolls named "American

9  Girl."

10          10.     Bryant brings this Cross-Complaint on his own behalf, on behalf of all

11 current and former Mattel employees (identified below) and on behalf of the general public

12 pursuant to California Business and Professions Code sections 16600, 17200, 17203 and 17204 and

13 the California Labor Code sections 98(k), 98.6, and 2699 (the California Labor Code Private

14 Attorneys' General Act of 2004).

15                          **NATURE OF THE ACTION**

16          11.     Cross-Complainant Bryant brings this Cross-Complaint to remedy the unfair

17 business practices of his former employer, Mattel.

18          12.     During Bryant's initial employment by Mattel, he was assigned to the "Main

19 Line" Barbie Department, where he designed fashions and hairstyles for Barbie and her toy

20 companions, including "Teen Skipper."

21          13.     Between approximately late April 1998 and January 4, 1999, Bryant was not

22 employed by Mattel.  However, commencing on or about January 4, 1999, Bryant returned to work

23 at Mattel and was employed in Mattel's Barbie "Collector" Department, designing clothing fashions

24 and accessories for high-end Barbie dolls for the adult "collector" market.

25          14.     Upon beginning this second term of employment with Mattel, Bryant was

26 required to execute a boilerplate document entitled "Employee Confidential Information And

27 Inventions Agreement" (defined above as the "Agreement").

28          15.     The Agreement was a preprinted, non-negotiable form contract prepared by

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

3

00084

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT
EXHIBIT ____ PAGE ____

1    Mattel, printed on Mattel stationery.  The Agreement purports to completely prohibit or, at a

2    minimum, creates a substantial chilling effect on, Bryant's or any other employee's preparations to

3    compete and purports to prevent Bryant and other employees from taking meaningful steps to obtain

4    any other competitive employment while still in the employ of Mattel.  Such an agreement

5    unlawfully restrains Bryant (and similarly situated employees) in his/their business, trade and

6    professions and thus violates well-established rights of employee mobility under California law.

7           16.    The Agreement also purports to effect an assignment of all inventions created

8    or even simply touched by Bryant during the time period of his employment with Mattel, regardless

9    of whether or not they relate to any aspect of Mattel's business and regardless of when or where this

10   occurred.  On its face, Mattel's Agreement theoretically purports to assign to Mattel any "invention"

11   of any kind conceived or reduced to practice by Bryant during the time period of his employment

12   with Mattel.  As Mattel has construed the Agreement, any time Bryant placed pen and pencil to

13   paper during the time period of his Mattel employment, such "works" are owned by Mattel even if

14   such works or inventions were created on his own time with his own materials.

15          17.    As applied here, the Agreement unlawfully infringes on Bryant's right to

16   prepare to compete and to seek other employment and it unlawfully appropriates to Mattel

17   inventions that were created or reduced to practice on Bryant's own time and using his own

18   equipment that are unrelated to his work for Mattel.  Such an invention assignment is overbroad,

19   unconscionable, violates Labor Code section 2870, constitutes an unfair business practice and is

20   therefore unlawful.

21          18.    The Agreement primarily contains a sweeping provision that purports to

22   assign to Mattel each and every invention by Bryant that he created or reduced to practice during the

23   time period of his employment with Mattel.  The Agreement's only attempt to limit the scope of the

24   assignment is a perfunctory reference to California Labor Code section 2870.  That quotation is

25   found in a separate part of the Agreement from the overbroad, illegal clause defining what is

26   covered, appears in fine print, and is stated in language so confusing that no lay person could

27   reasonably understand it.

28

ITTLER MENDELSON
· Professional Corporation
2049 Century Park East
5th Floor
es Angeles, CA 90067 3107
310 553 0308

EXHIBIT ___ PAGE ___

4

19.    Even considering the language of Mattel's reference to Labor Code section 2870 in the Agreement, the Agreement remains impermissibly overbroad and unenforceable. According to that provision of the Agreement, any invention conceived or reduced to practice by Bryant during his employment with Mattel would belong to Mattel by virtue of the unlawful Agreement, regardless of whether the invention related to the work performed by Bryant for Mattel.

20.    In addition to the unlawful inventions assignment, the Agreement contains several other provisions that are equally unlawful, either on the face of the Agreement or as applied by Mattel, as it seeks to enforce the Agreement.  As discussed above, the confidentiality provision in the Agreement is grossly overbroad and purports to prohibit employees from disclosing and using publicly available information and it purports to prohibit employees from engaging in lawful off duty conduct in violation of Business and Professions Code 16600 and 17200, the California Labor Code and this State's public policy.

21.    Furthermore, Mattel's overly broad agreement cannot be saved from illegality by narrow construction.  Otherwise, if these sorts of agreements could simply be reformed during litigation, employers would have no disincentive to draft and attempt to enforce such overbroad, illegal agreements that chill employees from exercising their rights.

22.    Due to Mattel's fraudulent and/or negligent misrepresentation of the terms contained within the Agreement (and Mattel's failure to affirmatively disclose its material terms to Bryant when Bryant was instructed to sign the Agreement by Mattel), Bryant did not discover, and would not reasonably be expected to discover, that the Agreement was misleading, unconscionable and unlawful until Mattel instituted the underlying lawsuit on April 27, 2004, attempting to enforce the Agreement.  At the time it required Bryant to execute the adhesive Agreement as a condition of his employment, Mattel did not explain the terms of the Agreement to Bryant, give him sufficient time to review it, or permit or encourage him to seek independent counsel regarding its legal effect. Had Bryant been made aware of the full meaning and intent of the Agreement, he would not have signed it.

23.    Furthermore, Bryant is informed and believes that Plaintiff Mattel has been aware that Bryant was involved in designing the "Bratz" line of toys since at least sometime in 2001.

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

EXHIBIT ____ PAGE ____

ITTLER MENDELSON
· Professional Corporation
2049 Century Park East
5th Floor
os Angeles, CA 90067 3107
310 553 0308

1    Rather than bringing suit at that time, Mattel elected instead to wait until three years later to attempt

2    to enforce the unlawful Agreement in the underlying lawsuit.

3         24.    Even though Bryant conceived the "Bratz" idea when he was not employed by

4    Mattel in 1998 and he, with others, did not reduce that idea to practice until after Bryant left Mattel,

5    Mattel nevertheless is using the Agreement to frivolously sue Bryant, in an attempt to hijack

6    "Bratz."

7         25.    Bryant is informed and believes that all employees of Mattel who were hired

8    between 1999 (and before) and the present were required to execute the same or substantially

9    similar agreements, as a pre-condition of their employment with Mattel.  Bryant is informed and

10    believes that his case is representative of a larger pattern and practice of wrongful conduct engaged

11    in by Mattel.  Mattel, as a standard business practice, has forced its employees to enter into and has

12    wrongfully enforced similar quasi-non-competition and assignment of inventions contracts with its

13    present and former employees.  Bryant is informed and believes that Mattel uses these agreements

14    to prevent or stifle competition in the toy industry and/or to unlawfully inhibit employee mobility.

15    Indeed, Bryant is informed and believes, and based thereon alleges, that Mattel continues to force

16    new and current employees to enter into the same or similarly overbroad and unlawful agreements.

17         26.    Bryant was presented with the form Agreement by Mattel on or about January

18    4, 1999, at the outset of his second term of employment.  At that time, he was told that his execution

19    of the Agreement was a condition of his employment with Mattel.  The terms of the Agreement were

20    not explained to him, nor was he told that the Agreement would preclude him from maintaining any

21    employment other than with Mattel, despite statutory guarantees to the contrary.  Bryant was not

22    informed that by executing the Agreement, he was assigning to Mattel all the inventions and

23    creations he created or simply even touched during the time period of his employment with Mattel

24    regardless of how unrelated they might be to his work at Mattel.  Bryant was not advised that Mattel

25    would attempt to claim ownership of any invention he may have conceived prior to employment by

26    Mattel and perfected after he left Mattel.  Bryant neither was given a meaningful opportunity to

27    review the Agreement at the time he executed it, nor was he given the opportunity to consult with an

28    attorney before executing it.  Mattel did not give Bryant the opportunity to negotiate the

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

1   Agreement's terms, allow him to review it overnight, or suggest that he consult an attorney before

2   executing it.  In essence, the Agreement was a pre-printed form and was presented to Bryant's on a

3   "take it or leave it" basis and Bryant and all present and former Mattel employees in effect were

4   bludgeoned into accepting its terms or not being allowed to work there.

5        27.   At the time Bryant executed the Agreement, he did not understand the scope,

6   breadth or meaning of its terms.  Bryant is informed and believes, and on that basis alleges that at the

7   time all other current and former employees of Mattel executed identical or similar agreements with

8   Mattel, they, too, did not understand the scope, breadth or meaning of their terms.  As discussed

9   below, the Agreement is both procedurally and substantively unconscionable and thus wholly

10  unenforceable.

11       28.   In this action, Bryant seeks on behalf of himself and the general public the

12  intervention of the Court to obtain remedies to preclude Mattel's unlawful acts.  Among other

13  things, Bryant seeks a declaration from this Court that Mattel's Agreements are not enforceable

14  against Bryant and all other present and former similarly situated Mattel employees.  Bryant also

15  seeks permanent injunctive relief barring Mattel from forcing present and future employees to sign

16  such agreements, stopping Mattel from threatening to enforce and attempting to enforce illegal non-

17  compete/invention assignment contracts against Bryant and any other current or former Mattel

18  employees, and requiring Mattel to disgorge and/or make restitution for all unlawful profits

19  received and/or costs incurred by virtue of its unlawful and unfair business practices and other legal

20  and/or equitable relief to which Bryant and/or the general public may be justly entitled.

21       29.   Bryant also seeks, through this Cross-Complaint, rescission of the

22  unconscionable and unlawful Agreement signed by Bryant.

23                    **FIRST CAUSE OF ACTION**

24            **(UNFAIR COMPETITION AGAINST DEFENDANT MATTEL)**

25              **(Business & Professions Code § 17200 et seq.)**

26       30.   Bryant realleges and incorporates by reference each of the allegations in

27  Paragraphs 1 through 29 of this Cross-Complaint as if fully set forth herein.

28       31.   Bryant brings his claim for unfair competition and unfair business practices

LITTLER MENDELSON

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

1   on behalf of himself, the current and former employees of Mattel and the general public, pursuant

2   to California Business and Professions Code sections 16600, 17200, 17203 and 17204.

3           32.     The non-competition and invention assignment provisions contained in the

4   Agreement, which Mattel forced Bryant to execute as a condition of employment, and which it is

5   now trying to enforce in the underlying action, are illegal pursuant to California Business and

6   Professions Code sections 16600 and 17200.  Said provisions constitute an unfair restraint of trade

7   for the following, non-exclusive reasons:  they illegally restrict the job mobility of current and even

8   former Mattel employees, they illegally restrict current Mattel employees from seeking other

9   gainful employment, they illegally restrict the use of public information, such as the identity or job

10  functions of current Mattel employees, they specifically prevent or deter Mattel's present and

11  former employees, such as Bryant, from accepting or holding any lawful employment within the

12  State of California or elsewhere other than with Mattel, and they purport to assign for Mattel's

13  unlawful benefit all the inventions of Mattel's current and former employees, with a narrow

14  exception which is the employee's burden to prove.

15          33.     The Agreement is also unlawful in that it violates the provisions of California

16  Labor Code section 96(k), which guarantees the rights of employees to be free in the lawful

17  activities they pursue outside working hours, section 98.6 to the extent Mattel has taken adverse

18  employment actions against employees who have refused to sign the Agreement, and Labor Code

19  section 2699.

20          34.     The Agreement also violates the provisions of California Labor Code section

21  2870 inasmuch as it provides for a far broader assignment of employee inventions than is permitted

22  by applicable law.

23          35.     The Agreement was a contract of adhesion and was procedurally

24  unconscionable because, among other things, Bryant was required to sign it as a condition of his

25  employment with no negotiations allowed, it was presented to him on a preprinted form and on a

26  take-it-or-leave-it basis, he was not allowed to thoroughly review or consider its terms, he was not

27  permitted to review it overnight, he was not provided with the opportunity to consult counsel prior

28  to executing it, and it was never thoroughly and completely explained to him.

8

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

36.    Because of its onerous, unfair, unlawful and one-sided provisions, which are surprising, grossly unfair and shock the conscience, the Agreement is substantively unconscionable.

37.    Because it is both procedurally and substantively unconscionable, the Agreement is unenforceable.  Moreover, the Agreement is so permeated by unconscionability that the unlawful provisions cannot be severed.

38.    Due to Mattel's fraudulent and/or negligent misrepresentation of the terms contained within the Agreement, Bryant did not discover, and would not reasonably have discovered, that the Agreement, as Mattel attempted to enforce it, was unconscionable and unlawful until Mattel instituted the underlying lawsuit against him to attempt to enforce the Agreement, in approximately April 2004.

39.    Even though the quasi-non-competition and invention assignment provisions of the Agreement are not enforceable, Bryant is informed and believes and based thereon alleges that Mattel utilizes these provisions as part of a scheme and device to restrain the business opportunities, both within and outside the State of California, otherwise available to Bryant and other current and former Mattel employees.

40.    Bryant is informed and believes and based thereon alleges that, in effect, through its wrongful acts, Mattel is able to create for itself an unfair competitive advantage along with other benefits at the expense of its present and former employees (including Bryant), other competing companies or employers, and members of the public.

41.    Mattel's unlawful conduct in requiring Bryant, and its other current and former employees, to sign the Agreement, or other similar Agreements with equally unlawful provisions as a term and condition of employment or continued employment, and then threatening to enforce such unlawful provisions, constitutes unfair competition and an unfair business practice in violation of the California Business and Professions Code sections 16600 and 17200 et seq. and under the common law.

42.    As a proximate result of such unlawful acts and/or unfair business acts and practices, Bryant has suffered actual damages, and Mattel has enjoyed unlawful profits, in a sum not yet fully ascertained but in excess of the jurisdictional limits of this Court.  Furthermore, on

9

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles  CA  90067 3107
310 553 0308

1    behalf of Bryant and all present and former California employees of Mattel and the general public,

2    Bryant seeks injunctive relief pursuant to Business and Professions Code section 17203, barring

3    Mattel from continuing to engage in such unlawful and unfair business practices, and the remedies

4    of disgorgement and restitution for illicit profits obtained by Mattel from its unlawful and/or unfair

5    business acts and practices pursuant to Business and Professions Code section 17204.

6           43.   In addition, as a result of the illegal and wrongful conduct alleged above, in

7    the absence of injunctive relief prohibiting Mattel from continuing to engage in unfair competition,

8    Cross-Complainant Bryant, the current and former employees of Mattel and the general public have

9    been and will be irreparably harmed.

10          44.   For these reasons, Bryant requests permanent injunctive relief prohibiting

11   Cross-Defendant Mattel from continuing to engage in unfair competition by threatening and

12   attempting to enforce illegal non-compete/invention assignment contracts against Bryant or any

13   other current or former Mattel employees.

14                        **SECOND CAUSE OF ACTION**

15                   **(RESCISSION AGAINST DEFENDANT MATTEL)**

16          45.   Bryant realleges and incorporates by reference each of the allegations in

17   Paragraphs 1 through 44 of this Cross-Complaint as if fully set forth herein.

18          46.   Bryant's consent to the Agreement was given due to mistake, or obtained

19   through duress, menace and/or fraud.

20          47.   The Agreement is unlawful and unconscionable, due to the fault not of

21   Bryant but of Mattel, which exclusively drafted the Agreement's unlawful and unconscionable

22   terms.

23          48.   Due to Mattel's fraudulent misrepresentation and/or concealment of the terms

24   contained within the Agreement, Bryant did not discover, and would not reasonably be expected to

25   discover, that the Agreement was unconscionable and unlawful until Mattel instituted the underlying

26   lawsuit against him to attempt to enforce the agreement, in approximately April 2004.

27          49.   The public interest will be prejudiced by permitting the Agreement or other

28   similar agreements to stand.

.ITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
os Angeles, CA  90067 3107
310 553 0308

                                        10

00991

50. By the filing of this Cross-Complaint, Bryant hereby gives notice to Mattel that he seeks rescission of the Agreement, and further offers to restore to Mattel all consideration and everything of value which he received from Mattel under the Agreement, upon condition that Mattel do likewise.

51. Bryant therefore requests that the Court rescind the Agreement in its entirety.

## THIRD CAUSE OF ACTION

### (FRAUD AGAINST DEFENDANT MATTEL)

52. Bryant realleges and incorporates by reference each of the allegations in Paragraphs 1 through 51 of this Cross-Complaint as if fully set forth herein.

53. Mattel required Bryant to execute the Agreement without disclosing to him its true import and terms.

54. Having drafted the Agreement and all the oppressive, unfair and onerous terms contained therein, Mattel was of course aware of the contents of the Agreement and its import.

55. Due to Mattel's concealment of its interpretation of the force and effect of the Agreement from Bryant, he did not discover that the Agreement was unconscionable and unlawful until Mattel instituted the underlying lawsuit against him to attempt to enforce the agreement, in late April 2004.

56. In so failing to disclose to Bryant the true meaning of the terms and the purported legal effect of the Agreement, and Mattel's intent to attempt to enforce it with regard to work he conceived and/or reduced to practice while not employed at Mattel, Mattel misrepresented and suppressed the nature of the Agreement, and in doing so, committed actual fraud against Bryant.

57. Because of its malicious, oppressive and/or fraudulent conduct, Mattel is subject to punitive damages in an amount necessary and appropriate to punish and deter it and others from engaging in similar conduct in the future.

//

//

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

11

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

## FOURTH CAUSE OF ACTION

## (DECLARATORY RELIEF AGAINST DEFENDANT MATTEL)

58.     Bryant realleges and incorporates by reference each of the allegations in Paragraphs 1 through 60 of this Cross-Complaint as if fully set forth herein.

59.     Mattel's unlawful conduct in requiring Bryant, and its other current and former employees, to sign the Agreement with its unlawful provisions as a term and condition of their employment or continued employment and then threatening to enforce such unlawful provisions and eventually filing a lawsuit to enforce such provisions against Bryant constitutes unfair competition and unfair business practices in violation of the California Business and Professions Code sections 16600 and 17200 et seq. and under the common law.

60.     Moreover, the Agreement is both procedurally and substantively unconscionable.

61.     Through its suit against Bryant, Mattel has demonstrated that a controversy exists concerning the enforceability of the Agreement and its terms.

62.     Bryant therefore requests declaratory relief stating that the Agreement, as well as all similar agreements executed by current and former employees of Mattel, are unlawful and unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Cross-Complainant Bryant prays for judgment and relief as follows:

1.     For restitution, disgorgement and interest in an amount to be determined at trial;

2.     For an order permanently enjoining and barring Mattel from forcing present and future employees to sign agreements containing quasi-non-compete or invention assignment provisions identical or substantively similar to those in the Agreement, and prohibiting Mattel from threatening and attempting to enforce such agreements or restrictions against Bryant or any other current or former employees;

3.     For an order declaring that the Agreement between Mattel and Bryant (and the agreements between Mattel and all similarly situated present and former employees) are void

12

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

1    unenforceable and unconscionable;

2        4.    For rescission of the Agreement;

3        5.    For declaratory relief stating that the Agreement is unlawful and

4    unenforceable;

5        6.    For compensatory damages according to proof;

6        7.    For statutory penalties pursuant to Labor Code section 2699;

7        8.    For punitive damages according to proof;

8        9.    For reasonable attorneys' fees incurred in bringing and litigating this action

9            pursuant to the private attorneys general statutes;

10       10.    For costs of suit herein; and

11       11.    For such further or other relief as the Court deems just and proper.

12

13   Dated: August 24, 2004

14

15   DOUGLAS A. WICKHAM
     LITTLER MENDELSON

16   A Professional Corporation
     Attorneys for Defendant/Cross-Complainant

17   CARTER BRYANT

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

00094

## DEMAND FOR A TRIAL BY JURY

Pursuant to Section 592 of the California Code of Civil Procedure, Cross-Complainant Carter Bryant hereby demands that the causes in this matter be tried by a jury to the extent provided for by law.

Dated: August 24, 2004

_____
DOUGLAS A. WICKHAM
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant/Cross-Complainant
CARTER BRYANT

Los_Angeles:371607.1 028307.1010

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

14

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

00995

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 2049 Century Park East, 5th Floor, Los Angeles, California 90067.3107. On August 27, 2004, I served the within document(s):

**STIPULATION AND [PROPOSED] ORDER GRANTING DEFENDANT CARTER BRYANT LEAVE TO FILE COUNTER-CLAIM**

☒     by facsimile transmission at or about August 27, 2004 on that date. This document was transmitted by using a facsimile machine that complies with California Rules of Court Rule 2003(3), telephone number 310.553.5583. The transmission was reported as complete and without error. A copy of the transmission report, properly issued by the transmitting machine, is attached. The names and facsimile numbers of the person(s) served are as set forth below.

☐     by placing a true copy of the document(s) listed above for collection and mailing following the firm's ordinary business practice in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at Los Angeles, California addressed as set forth below.

☐     by depositing a true copy of the same enclosed in a sealed envelope, with delivery fees provided for, in an overnight delivery service pick up box or office designated for overnight delivery, and addressed as set forth below.

☐     by personally delivering a copy of the document(s) listed above to the person(s) at the address(es) set forth below.

Michael T. Zeller, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

I am readily familiar with the firm's practice of collection and processing correspondence for mailing and for shipping via overnight delivery service. Under that practice it would be deposited with the U.S. Postal Service or if an overnight delivery service shipment, deposited in an overnight delivery service pick-up box or office on the same day with postage or fees thereon fully prepaid in the ordinary course of business.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on August 27, 2004, at Los Angeles, California.

*J. Monique McDonald*
J. Monique McDonald

Los_Angeles:372099.1 028307.1010

00096

## PROOF OF SERVICE BY MESSENGER

I am employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is Allstar Messenger Service, 345 South Figueroa Street, Suite 305, Los Angeles, California 90071.  On August 27, 2004, I personally served:

**STIPULATION AND [PROPOSED] ORDER GRANTING DEFENDANT CARTER BRYANT LEAVE TO FILE CROSS-COMPLAINT**

by delivering copies thereof to:

Michael T. Zeller, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 27, 2004, at Los Angeles, California.

_MARCUS ROBINSON_

Los_Angeles:372101.1 028307.1010

00097

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067-3107
310.553.0308

**7**

_____ Priority
_____ Send
_____ Clsd
_____ Enter
_____ JS-5/JS-6
_____ JS-2/JS-3

FILED
CLERK, U.S. DISTRICT COURT

NOV 23 2004

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

Carter Bryant,

              Plaintiffs,

              v.

Mattel, Inc.,

              Defendants.

Case No. CV 04-09049-NM(RNBx)

STANDING ORDER

DOCKETED ON CM

NOV 2 4 2004          006

BY _____

## READ THIS ORDER CAREFULLY. IT CONTROLS THIS CASE AND DIFFERS IN SOME RESPECTS FROM THE LOCAL RULES.

This action has been assigned to the calendar of Judge Nora M. Manella.
Both the Court and the attorneys bear responsibility for the progress of
litigation in the Federal Courts. This order applies to all parties including those

revised 4/19/04

00006

EXHIBIT 1 PAGE ____

appearing pro se.  To secure the just, speedy, and inexpensive determination of every action, Fed. R. Civ. P. 1, all counsel are ordered to familiarize themselves with the Federal Rules of Civil Procedure and the Local Rules of the Central District of California.[1]

IT IS FURTHER ORDERED:

1. **Service of the Complaint:** The Plaintiff shall promptly serve the Complaint in accordance with Fed. R. Civ. P. 4 and file the proofs of service pursuant to Local Rule 5-3.1.

2. **Removed Actions:** Any answers filed in state court must be attached to the Notice of Removal.  Any pending motions must be re-noticed as required by Local Rule 7.

3. **Presence of Lead Counsel:** Lead trial counsel shall attend any proceeding before this Court, including all status conferences, as well as settlement conferences with the Magistrate Judge, an attorney settlement officer or a  private mediator.

4. **Rule 26(f)Meeting of Counsel:**  Counsel for the parties shall meet personally pursuant to FRCP 26(f) and applicable Local Rules in anticipation of the court-ordered scheduling conference. FRCP 16(b).

5. **Joint Report of Rule 26(f) Meeting:**  No later than fifteen (15) court days before the Scheduling Conference, counsel shall file a Joint Report of Rule 26(f) Meeting.  **A conformed courtesy copy** of the Joint Report shall be delivered to the courtesy box on the wall outside the entrance to Judge Manella's chambers on the

---

1. Copies of the Local Rules are available on our website at "http://www.cacd.uscourts.gov" or they may be purchased from one of the following:

Los Angeles Daily Journal
915 East 1ˢᵗ Street
Los Angeles, California 90012

West Group
610 Opperman Drive
Post Office Box 64526
St. Paul, Minnesota 55164-0526

Metropolitan News
210 South Spring Street
Los Angeles, California 90012

revised 4/19/04                                      2

EXHIBIT 1 PAGE