entitled to equitable relief in the nature of injunction and to all other available relief, at law and/or in equity.

8.    **Notices:**  All notices, statements and/or payments to be given to the parties hereunder shall be addressed to the parties at the addresses set forth on the first page hereof or at such other address as the parties shall designate in writing from time to time.  All notices shall be in writing and shall either be served by personal delivery, mail, or facsimile (if confirmed by mail or personal delivery of the hard copy), all charges prepaid.  Except as otherwise provided herein, such notices shall be deemed given when personally delivered, all charges prepaid, or on the date five (5) days following the date of mailing, except that notices of change of address shall be effective only after the actual receipt thereof. Copies of all notices to MGA shall be sent to Fischbach, Perlstein & Lieberman LLP, 1875 Century Park East, Suite 850, Los Angeles, California 90067, Attention: David S. Rosenbaum, Esq. Copies of all notices to Bryant shall be sent to Carter Bryant 1319 West 160th Street, Gardena, California 90247.

9.    **Independent Contractor/No Partnership/Third Party Beneficiary:** Bryant's relationship with MGA is that of an independent contractor.  Bryant does not have, and will not represent that he has, any power, right or authority to bind MGA, or to assume or create any obligation or responsibility, express or implied, on behalf of MGA in MGA's name.  Nothing stated in the Agreement shall be construed as constituting a partnership or as creating the relationships of employer/employee or principal/agent between the parties.  In all matters relating to the Agreement, Bryant shall not act as MGA's employee within the meaning or application of any federal or state unemployment insurance laws, or any other laws or regulations which may impute any obligations or liabilities to MGA by reason of an employment relationship.  Bryant will be solely responsible for all taxes, including without limitation, employee and employer, and that he carries all of his own insurance.  Neither of the parties hereto shall hold itself out contrary to the terms of this provision by advertising or otherwise.  This Agreement shall not be construed to be for the benefit of any third party.

10.   **Services Rendered Deemed Special, etc.:**  Bryant acknowledges that the services to be rendered by him hereunder are of a special, unique, extraordinary and intellectual character which gives them peculiar value, the loss of which cannot be adequately compensated for in an action at law and that a breach of any term, condition or covenant hereof will cause irreparable harm and injury to MGA and in addition to any other available relief MGA will be entitled to seek injunctive relief.

11.   **General Provisions:**

      (a)    This Agreement may not be assigned by either Party hereto either voluntarily or by operation of law.  Any such assignment shall not relieve such Party of its obligations hereunder.

      (b)    The titles of the paragraphs of this Agreement are for convenience only and shall not in any way affect the interpretation of any paragraph of this Agreement or the Agreement itself.

      (c)    A waiver by either Party of the terms or conditions of this Agreement in any instance shall not be deemed or construed to be a waiver of such terms or conditions for the future or of any subsequent breach thereof.  All remedies, rights, undertakings, obligations and agreements contained herein shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either Party.

      (d)    Neither Party hereto shall be liable to the other for any incidental, consequential, special or punitive damages of any nature or kind, arising out of in connection with a breach by such Party of this Agreement, whether such liability is asserted on the basis of contract, tort (including negligence or strict liability), or otherwise, even if such Party has been warned of the possibility of any such loss or damage.

{00005662.DOC/2 / 10/04/2000  03:05 PM}

5

43

Exhibit 4

(e)     This Agreement shall be construed and interpreted pursuant to the laws of the State of California, applicable to agreements made and to be performed entirely therein, and the parties hereto submit and consent to the jurisdiction of the courts of the State of California, including Federal Courts located therein, should Federal jurisdiction requirements exist, in any action brought to enforce (or otherwise relating to) this contract.

(f)     This Agreement constitutes the entire Agreement between the parties hereto and supersedes all prior agreements, whether written or oral, with respect to the subject matter herein contained.  No provision of this Agreement shall be deemed waived, amended or modified by either Party unless such waiver, amendment or modification shall be in writing and signed by a duly authorized officer of the Party against whom the waiver, amendment or modification is to be enforced.

(g)     Nothing contained in this Agreement shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provision of this Agreement and any material statute, law, ordinance, order or regulation contrary to which the parties hereto have no legal right to contract, the latter shall prevail, but in such event any provision of this Agreement so affected shall be curtailed and limited only to the extent necessary to bring it within the legal requirements.

Kindly indicate your agreement with the foregoing by signing in the space provided below.

Very truly yours,

MGA ENTERTAINMENT

By: _____

Its: _____

AGREED TO AND ACCEPTED:

CARTER BRYANT

_____
Social Security Number

REDACTED

[00008662.DOC/2 / 10/04/2000  03:05 PM]

6

44

Exhibit 4

**EXHIBIT 3**

1  ROBERT F. MILLMAN, Bar No. CA 062152
2  DOUGLAS A. WICKHAM, Bar No. CA 127268
   KEITH A. JACOBY, Bar No. CA 150233
3  LITTLER MENDELSON
   A Professional Corporation
4  2049 Century Park East, 5th Floor
   Los Angeles, CA 90067.3107
5  Telephone:   310.553.0308
   Facsimile:   310.553.5583
6
   Attorneys for Defendant/Cross-Complainant
7  CARTER BRYANT

**ORIGINAL FILED**

SEP 0 8 2004

LOS ANGELES
SUPERIOR COURT

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF LOS ANGELES

10

| 11 | MATTEL, INC., a Delaware Corporation, | Case No.  BC314398 |
|----|----|----|
| 12 | Plaintiff, | ASSIGNED FOR ALL PURPOSES TO THE HONORABLE GREGORY W. ALARCON – DEPARTMENT 36 |
| 13 | v. | |
| 14 | CARTER BRYANT, an individual; and DOES 1 through 10, inclusive, | DATE ACTION FILED:  April 27, 2004 |
| 15 | Defendant. | DEFENDANT/CROSS-COMPLAINANT CARTER BRYANT'S CROSS-COMPLAINT FOR: |
| 16 | | |
| 17 | | (1) UNFAIR COMPETITION (Business & Professions Code §§ 16600, et seq. and 17200 et seq.); |
| 18 | | (2) RESCISSION; |
| 19 | | (3) DECLARATORY RELIEF; AND (4) FRAUD. |
| 20 | | |
| 21 | | DEMAND FOR JURY TRIAL |
| 22 | | [Code Of Civil Procedure § 428.10] |
| 23 | CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public, | |
| 24 | | |
| 25 | Cross-Complainant, | |
| 26 | v. | |
| 27 | MATTEL, INC., a Delaware Corporation, | |
| 28 | Cross-Defendant. | |

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

35

EXHIBIT 3

1.     Defendant and Cross-Complainant Carter Bryant ("Bryant"), for his Cross-Complaint alleges, upon personal knowledge with respect to himself and his own acts, and upon information and belief as to all other matters, as follows:

### OVERVIEW

2.     In this Action, Bryant's former employer, Mattel, Inc. ("Mattel"), has sued Bryant for, among other things, breach of a purported Employee Confidential Information and Inventions Agreement ("Agreement"). The Agreement is a classic contract of adhesion, drafted solely by Mattel, forced upon Bryant on a take-it-or-leave-it basis with no negotiations invited or allowed. Although signing the Agreement was a condition of Bryant's employment, Mattel never explained the terms and conditions of the Agreement to Bryant and Bryant never was given a meaningful opportunity to secure legal advice concerning its meaning or terms. Bryant, who is a high school graduate, did not and could not understand the terms of the Agreement; indeed, no reasonable layperson could understand the legal significance, meaning and terms of the Agreement, which appeared to be written for lawyers with several years of experience as corporate attorneys.

3.     Furthermore, the Agreement contains terms and conditions that violate established California law on their face and/or in connection with Mattel's interpretation and threats to enforce this Agreement. For example, the confidentiality provision in the first section of the Agreement (as interpreted by Mattel) purports to require Bryant (and similarly situated present and former Mattel employees) to maintain a cone of silence – on pains of a breach of contract lawsuit by Mattel's lawyers – over such innocuous *and public* information as the identities of Mattel employees and the general skills and knowledge of such employees. Such a provision clearly is unlawful and violates public policy because it *de facto* inhibits the free flow of information regarding employee talents and thereby restricts employee mobility in this State, thus undermining one of California's fundamental public policies.

4.     The Agreement also purports to prevent current employees from accepting any other employment or engagement of any nature whatsoever, regardless of whether such work or services could lead to the disclosure of Mattel's proprietary information or trade secrets or otherwise constitute a breach of the employee's duty of loyalty. Thus, if a Mattel employee went to work at a

1

EXHIBIT 3

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

1   gas station or a grocery store to earn extra money for his or her family, the Agreement flatly – and

2   unlawfully – prohibits such employment and renders such an employee liable to Mattel for breach of

3   contract.   Such a broad restriction concerning an employee's lawful off-duty conduct violates

4   California Business and Professions Code sections 16600 and 17200 and California Labor Code

5   sections 96(k) and 98.6 and California's broad public policies prohibiting unlawful covenants not to

6   compete.

7           5.      Finally, the Agreement also purports to require each and every Mattel

8   employee, including Bryant, to assign all inventions or creations conceived or reduced to practice

9   during the time period of his or her Mattel employment in direct violation of California Labor Code

10  section 2870.   While the Agreement purports to limit this broad assignment to the extent required

11  under Section 2870, this limitation is shrouded in so much legalese that no employee in Bryant's

12  shoes would know or understand either the inventions assignment or the limit on that assignment.

13  On information and belief, Bryant alleges that Mattel intentionally and purposefully implemented

14  this overly broad and unconscionable Agreement to lure employees to adhere to its unlawful terms

15  and to assign to Mattel inventions and creations that, by law, do not belong to Mattel.

16          6.      With this Cross-Compliant, Bryant alone and on behalf of all present and

17  former Mattel employees within the applicable limitations period and the general public, seeks to put

18  an end to Mattel's unlawful and unconscionable practices, with an injunction barring Mattel from

19  requiring employees to sign such agreements and threatening to enforce them, with a declaration that

20  all such agreements (including the Agreement signed by Bryant and any later, similar agreements)

21  are void and unenforceable because they are unconscionable, and with an order disgorging Mattel of

22  all profits unlawfully obtained by its misconduct.

23                                  **THE PARTIES**

24          7.      Bryant is an individual residing in the State of Missouri who was employed by

25  Mattel from 1995 through April 1998 and again from January 1999 to approximately October 20,

26  2000.

27          8.      On information and belief, Bryant alleges that Mattel is a multi-billion dollar,

28  international toy company that, at its El Segundo facility alone, maintains a 180,000 square-foot

LITTLER MENDELSON

**EXHIBIT 3**

1    design center with more than eight hundred fifty (850) employees.  On information and belief,

2    Bryant alleges that Mattel also maintains facilities in New York state, Wisconsin, New Jersey and

3    Illinois.

4         9.    Mattel markets numerous lines of toys, but one of its most well-known

5    products is the "Barbie" doll line, which, according to Mattel's website, accounts for more than $3.6

6    billion in annual retail sales.  On information and belief, Bryant alleges that Mattel, either directly or

7    indirectly through subsidiaries or affiliates, markets and sells Hot Wheels toy cars, "ViewMasters"

8    (three-dimensional viewer toys), the Fisher-Price line of toys and a line of dolls named "American

9    Girl."

10         10.    Bryant brings this Cross-Complaint on his own behalf, on behalf of all

11    current and former Mattel employees (identified below) and on behalf of the general public

12    pursuant to California Business and Professions Code sections 16600, 17200, 17203 and 17204 and

13    the California Labor Code sections 98(k), 98.6, and 2699 (the California Labor Code Private

14    Attorneys' General Act of 2004).

15                   **NATURE OF THE ACTION**

16         11.    Cross-Complainant Bryant brings this Cross-Complaint to remedy the unfair

17    business practices of his former employer, Mattel.

18         12.    During Bryant's initial employment by Mattel, he was assigned to the "Main

19    Line" Barbie Department, where he designed fashions and hairstyles for Barbie and her toy

20    companions, including "Teen Skipper."

21         13.    Between approximately late April 1998 and January 4, 1999, Bryant was not

22    employed by Mattel.  However, commencing on or about January 4, 1999, Bryant returned to work

23    at Mattel and was employed in Mattel's Barbie "Collector" Department, designing clothing fashions

24    and accessories for high-end Barbie dolls for the adult "collector" market.

25         14.    Upon beginning this second term of employment with Mattel, Bryant was

26    required to execute a boilerplate document entitled "Employee Confidential Information And

27    Inventions Agreement" (defined above as the "Agreement").

28         15.    The Agreement was a preprinted, non-negotiable form contract prepared by

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553.0308

3

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

EXHIBIT 3

1  Mattel, printed on Mattel stationery.  The Agreement purports to completely prohibit or, at a
2  minimum, creates a substantial chilling effect on, Bryant's or any other employee's preparations to
3  compete and purports to prevent Bryant and other employees from taking meaningful steps to obtain
4  any other competitive employment while still in the employ of Mattel.  Such an agreement
5  unlawfully restrains Bryant (and similarly situated employees) in his/their business, trade and
6  professions and thus violates well-established rights of employee mobility under California law.

7          16.      The Agreement also purports to effect an assignment of all inventions created
8  or even simply touched by Bryant during the time period of his employment with Mattel, regardless
9  of whether or not they relate to any aspect of Mattel's business and regardless of when or where this
10 occurred.  On its face, Mattel's Agreement theoretically purports to assign to Mattel any "invention"
11 of any kind conceived or reduced to practice by Bryant during the time period of his employment
12 with Mattel.  As Mattel has construed the Agreement, any time Bryant placed pen and pencil to
13 paper during the time period of his Mattel employment, such "works" are owned by Mattel even if
14 such works or inventions were created on his own time with his own materials.

15         17.      As applied here, the Agreement unlawfully infringes on Bryant's right to
16 prepare to compete and to seek other employment and it unlawfully appropriates to Mattel
17 inventions that were created or reduced to practice on Bryant's own time and using his own
18 equipment that are unrelated to his work for Mattel.  Such an invention assignment is overbroad,
19 unconscionable, violates Labor Code section 2870, constitutes an unfair business practice and is
20 therefore unlawful.

21         18.      The Agreement primarily contains a sweeping provision that purports to
22 assign to Mattel each and every invention by Bryant that he created or reduced to practice during the
23 time period of his employment with Mattel.  The Agreement's only attempt to limit the scope of the
24 assignment is a perfunctory reference to California Labor Code section 2870.  That quotation is
25 found in a separate part of the Agreement from the overbroad, illegal clause defining what is
26 covered, appears in fine print, and is stated in language so confusing that no lay person could
27 reasonably understand it.

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

4

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

EXHIBIT 3

19.     Even considering the language of Mattel's reference to Labor Code section 2870 in the Agreement, the Agreement remains impermissibly overbroad and unenforceable. According to that provision of the Agreement, any invention conceived or reduced to practice by Bryant during his employment with Mattel would belong to Mattel by virtue of the unlawful Agreement, regardless of whether the invention related to the work performed by Bryant for Mattel.

20.     In addition to the unlawful inventions assignment, the Agreement contains several other provisions that are equally unlawful, either on the face of the Agreement or as applied by Mattel, as it seeks to enforce the Agreement. As discussed above, the confidentiality provision in the Agreement is grossly overbroad and purports to prohibit employees from disclosing and using publicly available information and it purports to prohibit employees from engaging in lawful off duty conduct in violation of Business and Professions Code 16600 and 17200, the California Labor Code and this State's public policy.

21.     Furthermore, Mattel's overly broad agreement cannot be saved from illegality by narrow construction. Otherwise, if these sorts of agreements could simply be reformed during litigation, employers would have no disincentive to draft and attempt to enforce such overbroad, illegal agreements that chill employees from exercising their rights.

22.     Due to Mattel's fraudulent and/or negligent misrepresentation of the terms contained within the Agreement (and Mattel's failure to affirmatively disclose its material terms to Bryant when Bryant was instructed to sign the Agreement by Mattel), Bryant did not discover, and would not reasonably be expected to discover, that the Agreement was misleading, unconscionable and unlawful until Mattel instituted the underlying lawsuit on April 27, 2004, attempting to enforce the Agreement. At the time it required Bryant to execute the adhesive Agreement as a condition of his employment, Mattel did not explain the terms of the Agreement to Bryant, give him sufficient time to review it, or permit or encourage him to seek independent counsel regarding its legal effect. Had Bryant been made aware of the full meaning and intent of the Agreement, he would not have signed it.

23.     Furthermore, Bryant is informed and believes that Plaintiff Mattel has been aware that Bryant was involved in designing the "Bratz" line of toys since at least sometime in 2001.

5

LITTLER MENDELSON
a Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

EXHIBIT 3

1  Rather than bringing suit at that time, Mattel elected instead to wait until three years later to attempt

2  to enforce the unlawful Agreement in the underlying lawsuit.

3       24.    Even though Bryant conceived the "Bratz" idea when he was not employed by

4  Mattel in 1998 and he, with others, did not reduce that idea to practice until after Bryant left Mattel,

5  Mattel nevertheless is using the Agreement to frivolously sue Bryant, in an attempt to hijack

6  "Bratz."

7       25.    Bryant is informed and believes that all employees of Mattel who were hired

8  between 1999 (and before) and the present were required to execute the same or substantially

9  similar agreements, as a pre-condition of their employment with Mattel.  Bryant is informed and

10  believes that his case is representative of a larger pattern and practice of wrongful conduct engaged

11  in by Mattel.  Mattel, as a standard business practice, has forced its employees to enter into and has

12  wrongfully enforced similar quasi-non-competition and assignment of inventions contracts with its

13  present and former employees.  Bryant is informed and believes that Mattel uses these agreements

14  to prevent or stifle competition in the toy industry and/or to unlawfully inhibit employee mobility.

15  Indeed, Bryant is informed and believes, and based thereon alleges, that Mattel continues to force

16  new and current employees to enter into the same or similarly overbroad and unlawful agreements.

17       26.    Bryant was presented with the form Agreement by Mattel on or about January

18  4, 1999, at the outset of his second term of employment.  At that time, he was told that his execution

19  of the Agreement was a condition of his employment with Mattel.  The terms of the Agreement were

20  not explained to him, nor was he told that the Agreement would preclude him from maintaining any

21  employment other than with Mattel, despite statutory guarantees to the contrary.  Bryant was not

22  informed that by executing the Agreement, he was assigning to Mattel all the inventions and

23  creations he created or simply even touched during the time period of his employment with Mattel

24  regardless of how unrelated they might be to his work at Mattel.  Bryant was not advised that Mattel

25  would attempt to claim ownership of any invention he may have conceived prior to employment by

26  Mattel and perfected after he left Mattel.  Bryant neither was given a meaningful opportunity to

27  review the Agreement at the time he executed it, nor was he given the opportunity to consult with an

28  attorney before executing it.  Mattel did not give Bryant the opportunity to negotiate the

6

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

EXHIBIT 3

1  Agreement's terms, allow him to review it overnight, or suggest that he consult an attorney before

2  executing it. In essence, the Agreement was a pre-printed form and was presented to Bryant's on a

3  "take it or leave it" basis and Bryant and all present and former Mattel employees in effect were

4  bludgeoned into accepting its terms or not being allowed to work there.

5        27.    At the time Bryant executed the Agreement, he did not understand the scope,

6  breadth or meaning of its terms. Bryant is informed and believes, and on that basis alleges that at the

7  time all other current and former employees of Mattel executed identical or similar agreements with

8  Mattel, they, too, did not understand the scope, breadth or meaning of their terms. As discussed

9  below, the Agreement is both procedurally and substantively unconscionable and thus wholly

10  unenforceable.

11        28.    In this action, Bryant seeks on behalf of himself and the general public the

12  intervention of the Court to obtain remedies to preclude Mattel's unlawful acts. Among other

13  things, Bryant seeks a declaration from this Court that Mattel's Agreements are not enforceable

14  against Bryant and all other present and former similarly situated Mattel employees. Bryant also

15  seeks permanent injunctive relief barring Mattel from forcing present and future employees to sign

16  such agreements, stopping Mattel from threatening to enforce and attempting to enforce illegal non-

17  compete/invention assignment contracts against Bryant and any other current or former Mattel

18  employees, and requiring Mattel to disgorge and/or make restitution for all unlawful profits

19  received and/or costs incurred by virtue of its unlawful and unfair business practices and other legal

20  and/or equitable relief to which Bryant and/or the general public may be justly entitled.

21        29.    Bryant also seeks, through this Cross-Complaint, rescission of the

22  unconscionable and unlawful Agreement signed by Bryant.

23  **FIRST CAUSE OF ACTION**

24  **(UNFAIR COMPETITION AGAINST DEFENDANT MATTEL)**

25  **(Business & Professions Code § 17200 et seq.)**

26        30.    Bryant realleges and incorporates by reference each of the allegations in

27  Paragraphs 1 through 29 of this Cross-Complaint as if fully set forth herein.

28        31.    Bryant brings his claim for unfair competition and unfair business practices

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553.0308

7

DEFENDANT/CROSS-COMPLAINANT'S CROSS

EXHIBIT 3

1   on behalf of himself, the current and former employees of Mattel and the general public, pursuant

2   to California Business and Professions Code sections 16600, 17200, 17203 and 17204.

3        32.   The non-competition and invention assignment provisions contained in the

4   Agreement, which Mattel forced Bryant to execute as a condition of employment, and which it is

5   now trying to enforce in the underlying action, are illegal pursuant to California Business and

6   Professions Code sections 16600 and 17200.  Said provisions constitute an unfair restraint of trade

7   for the following, non-exclusive reasons:  they illegally restrict the job mobility of current and even

8   former Mattel employees, they illegally restrict current Mattel employees from seeking other

9   gainful employment, they illegally restrict the use of public information, such as the identity or job

10   functions of current Mattel employees, they specifically prevent or deter Mattel's present and

11   former employees, such as Bryant, from accepting or holding any lawful employment within the

12   State of California or elsewhere other than with Mattel, and they purport to assign for Mattel's

13   unlawful benefit all the inventions of Mattel's current and former employees, with a narrow

14   exception which is the employee's burden to prove.

15        33.   The Agreement is also unlawful in that it violates the provisions of California

16   Labor Code section 96(k), which guarantees the rights of employees to be free in the lawful

17   activities they pursue outside working hours, section 98.6 to the extent Mattel has taken adverse

18   employment actions against employees who have refused to sign the Agreement, and Labor Code

19   section 2699.

20        34.   The Agreement also violates the provisions of California Labor Code section

21   2870 inasmuch as it provides for a far broader assignment of employee inventions than is permitted

22   by applicable law.

23        35.   The Agreement was a contract of adhesion and was procedurally

24   unconscionable because, among other things, Bryant was required to sign it as a condition of his

25   employment with no negotiations allowed, it was presented to him on a preprinted form and on a

26   take-it-or-leave-it basis, he was not allowed to thoroughly review or consider its terms, he was not

27   permitted to review it overnight, he was not provided with the opportunity to consult counsel prior

28   to executing it, and it was never thoroughly and completely explained to him.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COM.

EXHIBIT 3

36. Because of its onerous, unfair, unlawful and one-sided provisions, which are surprising, grossly unfair and shock the conscience, the Agreement is substantively unconscionable.

37. Because it is both procedurally and substantively unconscionable, the Agreement is unenforceable. Moreover, the Agreement is so permeated by unconscionability that the unlawful provisions cannot be severed.

38. Due to Mattel's fraudulent and/or negligent misrepresentation of the terms contained within the Agreement, Bryant did not discover, and would not reasonably have discovered, that the Agreement, as Mattel attempted to enforce it, was unconscionable and unlawful until Mattel instituted the underlying lawsuit against him to attempt to enforce the Agreement, in approximately April 2004.

39. Even though the quasi-non-competition and invention assignment provisions of the Agreement are not enforceable, Bryant is informed and believes and based thereon alleges that Mattel utilizes these provisions as part of a scheme and device to restrain the business opportunities, both within and outside the State of California, otherwise available to Bryant and other current and former Mattel employees.

40. Bryant is informed and believes and based thereon alleges that, in effect, through its wrongful acts, Mattel is able to create for itself an unfair competitive advantage along with other benefits at the expense of its present and former employees (including Bryant), other competing companies or employers, and members of the public.

41. Mattel's unlawful conduct in requiring Bryant, and its other current and former employees, to sign the Agreement, or other similar Agreements with equally unlawful provisions as a term and condition of employment or continued employment, and then threatening to enforce such unlawful provisions, constitutes unfair competition and an unfair business practice in violation of the California Business and Professions Code sections 16600 and 17200 et seq. and under the common law.

42. As a proximate result of such unlawful acts and/or unfair business acts and practices, Bryant has suffered actual damages, and Mattel has enjoyed unlawful profits, in a sum not yet fully ascertained but in excess of the jurisdictional limits of this Court. Furthermore, on

9

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553.0308

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

EXHIBIT 3

1    behalf of Bryant and all present and former California employees of Mattel and the general public,

2    Bryant seeks injunctive relief pursuant to Business and Professions Code section 17203, barring

3    Mattel from continuing to engage in such unlawful and unfair business practices, and the remedies

4    of disgorgement and restitution for illicit profits obtained by Mattel from its unlawful and/or unfair

5    business acts and practices pursuant to Business and Professions Code section 17204.

6             43.    In addition, as a result of the illegal and wrongful conduct alleged above, in

7    the absence of injunctive relief prohibiting Mattel from continuing to engage in unfair competition,

8    Cross-Complainant Bryant, the current and former employees of Mattel and the general public have

9    been and will be irreparably harmed.

10           44.    For these reasons, Bryant requests permanent injunctive relief prohibiting

11   Cross-Defendant Mattel from continuing to engage in unfair competition by threatening and

12   attempting to enforce illegal non-compete/invention assignment contracts against Bryant or any

13   other current or former Mattel employees.

14                              SECOND CAUSE OF ACTION

15                    (RESCISSION AGAINST DEFENDANT MATTEL)

16           45.    Bryant realleges and incorporates by reference each of the allegations in

17   Paragraphs 1 through 44 of this Cross-Complaint as if fully set forth herein.

18           46.    Bryant's consent to the Agreement was given due to mistake, or obtained

19   through duress, menace and/or fraud.

20           47.    The Agreement is unlawful and unconscionable, due to the fault not of

21   Bryant but of Mattel, which exclusively drafted the Agreement's unlawful and unconscionable

22   terms.

23           48.    Due to Mattel's fraudulent misrepresentation and/or concealment of the terms

24   contained within the Agreement, Bryant did not discover, and would not reasonably be expected to

25   discover, that the Agreement was unconscionable and unlawful until Mattel instituted the underlying

26   lawsuit against him to attempt to enforce the agreement, in approximately April 2004.

27           49.    The public interest will be prejudiced by permitting the Agreement or other

28   similar agreements to stand.



                                          10.
                    DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPL

                                                                    EXHIBIT 3

50.     By the filing of this Cross-Complaint, Bryant hereby gives notice to Mattel that he seeks rescission of the Agreement, and further offers to restore to Mattel all consideration and everything of value which he received from Mattel under the Agreement, upon condition that Mattel do likewise.

51.     Bryant therefore requests that the Court rescind the Agreement in its entirety.

### THIRD CAUSE OF ACTION

### (FRAUD AGAINST DEFENDANT MATTEL)

52.     Bryant realleges and incorporates by reference each of the allegations in Paragraphs 1 through 51 of this Cross-Complaint as if fully set forth herein.

53.     Mattel required Bryant to execute the Agreement without disclosing to him its true import and terms.

54.     Having drafted the Agreement and all the oppressive, unfair and onerous terms contained therein, Mattel was of course aware of the contents of the Agreement and its import.

55.     Due to Mattel's concealment of its interpretation of the force and effect of the Agreement from Bryant, he did not discover that the Agreement was unconscionable and unlawful until Mattel instituted the underlying lawsuit against him to attempt to enforce the agreement, in late April 2004.

56.     In so failing to disclose to Bryant the true meaning of the terms and the purported legal effect of the Agreement, and Mattel's intent to attempt to enforce it with regard to work he conceived and/or reduced to practice while not employed at Mattel, Mattel misrepresented and suppressed the nature of the Agreement, and in doing so, committed actual fraud against Bryant.

57.     Because of its malicious, oppressive and/or fraudulent conduct, Mattel is subject to punitive damages in an amount necessary and appropriate to punish and deter it and others from engaging in similar conduct in the future.

//

//

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

11

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

**EXHIBIT 3**

## FOURTH CAUSE OF ACTION

### (DECLARATORY RELIEF AGAINST DEFENDANT MATTEL)

58.    Bryant realleges and incorporates by reference each of the allegations in Paragraphs 1 through 60 of this Cross-Complaint as if fully set forth herein.

59.    Mattel's unlawful conduct in requiring Bryant, and its other current and former employees, to sign the Agreement with its unlawful provisions as a term and condition of their employment or continued employment and then threatening to enforce such unlawful provisions and eventually filing a lawsuit to enforce such provisions against Bryant constitutes unfair competition and unfair business practices in violation of the California Business and Professions Code sections 16600 and 17200 et seq. and under the common law.

60.    Moreover, the Agreement is both procedurally and substantively unconscionable.

61.    Through its suit against Bryant, Mattel has demonstrated that a controversy exists concerning the enforceability of the Agreement and its terms.

62.    Bryant therefore requests declaratory relief stating that the Agreement, as well as all similar agreements executed by current and former employees of Mattel, are unlawful and unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Cross-Complainant Bryant prays for judgment and relief as follows:

1.    For restitution, disgorgement and interest in an amount to be determined at trial;

2.    For an order permanently enjoining and barring Mattel from forcing present and future employees to sign agreements containing quasi-non-compete or invention assignment provisions identical or substantially similar to those in the Agreement, and prohibiting Mattel from threatening and attempting to enforce such agreements or restrictions against Bryant or any other current or former employees;

3.    For an order declaring that the Agreement between Mattel and Bryant (and the agreements between Mattel and all similarly situated present and former employees) are void,

12

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553.0308

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

EXHIBIT 3

1    unenforceable and unconscionable;

2         4.    For rescission of the Agreement;

3         5.    For declaratory relief stating that the Agreement is unlawful and

4    unenforceable;

5         6.    For compensatory damages according to proof;

6         7.    For statutory penalties pursuant to Labor Code section 2699;

7         8.    For punitive damages according to proof;

8         9.    For reasonable attorneys' fees incurred in bringing and litigating this action

9              pursuant to the private attorneys general statutes;

10        10.   For costs of suit herein; and

11        11.   For such further or other relief as the Court deems just and proper.

12   Dated: August 24, 2004

13

14

15              DOUGLAS A. WICKHAM
                LITTLER MENDELSON
16              A Professional Corporation
                Attorneys for Defendant/Cross-Complainant
17              CARTER BRYANT

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

                            13
        DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

                                            EXHIBIT 3

<u>**DEMAND FOR A TRIAL BY JURY**</u>

Pursuant to Section 592 of the California Code of Civil Procedure, Cross-Complainant Carter Bryant hereby demands that the causes in this matter be tried by a jury to the extent provided for by law.

Dated: August 24, 2004

C. Wickba

DOUGLAS A. WICKHAM
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant/Cross-Complainant
CARTER BRYANT

Los_Angeles:371607.1 028307.1010

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553.0308

**EXHIBIT 3**

**EXHIBIT 4**

COPY

1   ROBERT F. MILLMAN, Bar No. CA 062152
2   DOUGLAS A. WICKHAM, Bar No. CA 127268
    LITTLER MENDELSON
3   A Professional Corporation
    2049 Century Park East, 5th Floor
4   Los Angeles, CA 90067.3107
    Telephone:  310.553.0308
    Facsimile:    310.553.5583
5
6   Attorneys for Defendant
    CARTER BRYANT
7

FILED

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                      CV04-3431   NM   (RNBx)

11  MATTEL, INC., a Delaware           Case No.
    Corporation,
12                                     NOTICE TO FEDERAL COURT OF
                  Plaintiff,           REMOVAL OF CIVIL ACTION
13                                     FROM STATE COURT PURSUANT
         v.                            TO 28 U.S.C. SECTION 1332(a)(1)
14
    CARTER BRYANT, an individual;      [28 U.S.C. § 1332(a)(1), § 1441, § 1446]
15  and DOES 1 through 10, inclusive,
                                       Action Filed: April 27, 2004
16                Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

EXHIBIT 4

1   TO THE CLERK OF THE ABOVE ENTITLED COURT AND TO PLAINTIFF

2   MATTEL, INC. AND ITS ATTORNEY OF RECORD:

3        PLEASE TAKE NOTICE that Defendant Carter Bryant ("Bryant") hereby

4   removes the above-entitled action from the Superior Court of the State of California

5   for the County of Los Angeles to the United States District Court for the Central

6   District of California.

7   **JURISDICTION [LOCAL RULE 3.7.1]**

8        1.    This Court has original jurisdiction under 28 U.S.C. Section

9   1332(a)(1), and this case may be removed pursuant to the provisions of 28 U.S.C.

10   Section 1441(a), in that it is a civil action wherein the matter in controversy exceeds

11   the sum of seventy-five thousand dollars ($75,000.00) exclusive of interest and costs,

12   and it is between "citizens of different States."

13   **NOTICE OF REMOVAL**

14        2.    On or about April 27, 2004, Plaintiff Mattel, Inc. ("Plaintiff") filed

15   an original complaint in the Superior Court of the State of California in and for the

16   County of Los Angeles, <u>Mattel, Inc., a Delaware corporation v. Carter Bryant, an</u>

17   <u>individual, and Does 1-10,</u> Case Number BC314398 (the "Complaint").

18        3.    The Complaint and Summons were personally served on

19   Defendant Carter Bryant, on or about April 30, 2004. True and correct copies of the

20   Complaint and Summons are attached hereto, collectively, as Exhibit "A". These

21   documents constitute all of the documents served in this case on Defendant Carter

22   Bryant.

23        4.    On May 14, 2004, Carter Bryant filed an Answer to Plaintiff's

24   Complaint in the Superior Court for the County of Los Angeles. A true and correct

25   copy of the Answer is attached hereto as Exhibit "B".

26        5.    No further proceedings have been heard herein at the Superior

27   Court for the County of Los Angeles.

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

2.

NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

51                                    EXHIBIT 4

6.    The Notice of Removal is hereby filed and served with the Court within 30 days of having first received a copy of the Summons and Complaint, and no more than one year after commencement of this action, as is required under 29 U.S.C. Section 1446(b).

7.    Plaintiff allegedly employed Bryant at Plaintiff's business in El Segundo, California. See Complaint at ¶ 9, a true and correct copy of which is attached as Exhibit A to the Declaration of Douglas A. Wickham ("Wickham Decl."). Plaintiff has commenced this action asserting four (4) claims for relief for alleged (1) breach of contract; (2) breach of fiduciary duty; (3) breach of duty of loyalty; and (4) conversion.

8.    This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. Section 1332(a)(1) and one that may be removed to this Court by Bryant pursuant to the provisions of 28 U.S.C. Sections 1441(b) and 1446.

a)    Plaintiff was, at the time of filing this action, and still is, a corporation incorporated under the laws of Delaware, having a principal place of business in El Segundo, California;

b)    Bryant is a citizen of the county of Springfield-Greene in the State of Missouri;

c)    Although the Complaint names as defendants "Does 1 through 10, inclusive," pursuant to 28 U.S.C. Section 1441(a), the citizenship of defendants sued under such fictitious names must be disregarded for the purpose of determining diversity jurisdiction;

d)    The amount in controversy in this case exceeds the sum of seventy-five thousand dollars ($75,000.00) exclusive of interest and costs. Although the Complaint does not state a specific dollar amount of damages that Plaintiff seeks, Plaintiff asserts claims for disgorgement of all payments, revenue, profits, monies, royalties and any other benefits derived or obtained by Bryant since the time of his employment by Plaintiff. See Bryant Decl., *passim*; Wickham Decl. ¶ 4 and Exhibit

3.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT



EXHIBIT 4

1   "A" thereto (i.e., Plaintiff's Complaint) at ¶ 11.  Plaintiff seeks in connection with its

2   first claim for relief for breach of contract the amounts allegedly paid to Bryant by an

3   alleged competitor of Plaintiff while Bryant was employed by Plaintiff; the amounts

4   allegedly paid to Bryant by an alleged competitor of Plaintiff as a result of work

5   Bryant performed for the alleged competitor while he was employed by Plaintiff; the

6   amount paid to Bryant by Plaintiff while Bryant rendered services to the alleged

7   competitor; the value of the information and intellectual property allegedly owned by

8   Plaintiff which Bryant allegedly provided to the alleged competitor; the value of the

9   benefits obtained by the alleged competitor from Bryant during the time Bryant was

10  employed by Plaintiff; and the valued of the benefits the alleged competitor obtained

11  from Bryant as a result of work Bryant performed for the alleged competitor during

12  his employment with Plaintiff.   Id.; Exhibit "A" ¶ 19.   Plaintiff also seeks

13  compensatory damages in connection with its second, third and fourth claims for relief

14  for breach of fiduciary duty, breach of the duty of loyalty and unjust enrichment.  Id.;

15  Exhibit "A" ¶¶ 25, 32, 37.

16          e)      Plaintiff also seeks to recover an unspecified amount of punitive

17  damages against Bryant.  Id. ¶ 4; Exhibit "A" ¶¶ 22, 29, 30, 36, 41.  A recent review

18  of verdicts and settlements in Southern California indicates that, depending on the

19  nature of the claim and its severity, punitive damages awarded by Southern California

20  juries have exceeded $75,000 in single plaintiff claims.  Although Bryant denies that

21  he can or should be liable for punitive damages in this case, for purposes of assessing

22  whether the amount in controversy element has been satisfied in order to invoke

23  diversity jurisdiction, the Ninth Circuit has specifically held that punitive damages

24  claimed by the named plaintiff are properly included in computing the jurisdictional

25  amount.  Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001).

26          f)      In effect, Plaintiff is asserting a claim for conversion and

27  intentional misconduct in connection with the alleged breach of an Employee

28  Confidential Information and Inventions Agreement.  Bryant may present evidence of

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

4.

NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

EXHIBIT 4

1  California court decisions and jury verdicts from similar cases to satisfy his burden of
2  demonstrating by a preponderance of the evidence that the amount in controversy is
3  more than $75,000. See Green v. Party City Corp., No. CV-01-09681, 2002 WL
4  553219, at *3 (Feb. 4, 2002 C.D. Cal. 2002) (Snyder, J.) (copy lodged herewith).
5  Numerous California court decisions and jury verdicts demonstrate that punitive
6  damages in excess of $75,000 have been awarded to individual plaintiffs where the
7  plaintiff has alleged and prevailed on a claim of conversion of money or personal
8  property. Id., citing Leatherman Tool Group, Inc. v. Cooper Industries, Inc., 289 f.3d
9  1146 (9th Cir. 2002) (approving $500,000 punitive damages award for improper use of
10  a photograph of competitor's product in connection with $50,000 compensatory
11  damages award); and Professional Seminar Consultants, Inc. v. Sino American
12  Technology Exchange Council, Inc., 727 F.2d 1470 (9th Cir. 1984) (awarding plaintiff
13  $200,000 in punitive damages on the claim that defendant had converted funds
14  received under an agreement to arrange study tour). Additionally, in Gonzales v.
15  Guerrero, 1997 WL 875077 (T.D. Cal. Jury 1997) (copy lodged herewith), the jury
16  awarded $80,000 in punitive damages upon a finding that the defendant bail
17  bondsman had failed to give an attorney the cash collateral that had been assigned to
18  him by his client. In Veerkamp v. Peterson, 1996 WL 268576 (T.D. Cal. Jury 1996)
19  (copy lodged herewith), the jury awarded the plaintiff $122,500 in punitive damages
20  on a claim alleging conversion of personal property that had been stored in a storage
21  locker. In Mark & Harley Investments v. Ferrari of Los Gatos, 1998 WL 301260
22  (T.D. Cal. Jury 1998) (copy lodged herewith), the jury awarded $300,000 in punitive
23  damages, finding that defendant was liable for conversion of a car.
24     g)    In view of the foregoing, the preponderance of the evidence
25  indicates that Plaintiff is seeking to recover an amount in excess of seventy five
26  thousand dollars ($75,000) in damages, and therefore removal is proper. See
27  DeAguillar v. Boeing Co., 47 F.3d 1404, 1412 (5th Cir. 1995) (removal proper where
28  "the defendant can show by a preponderance of the evidence that the amount in

5.

LITTLER MENDELSON

1   controversy is greater than the jurisdictional amount"); <u>accord</u> <u>Gaus v. Miles, Inc.</u>, 980

2   F.2d 564, 566-67 (9th Cir. 1992).   Nevertheless, Bryant denies that Plaintiff has

3   suffered damages in any sum or at all and will zealously defend this lawsuit and his

4   position that Plaintiff's claims are wholly without merit.

5       h)   This action is, therefore, a civil action of which this Court has

6   original jurisdiction under 28 U.S.C. Section 1332(a)(1) and may be removed by

7   Bryant to this Court pursuant to 28 U.S.C. Sections 1441(b) and 1446 because of the

8   existence of diversity jurisdiction.

9       9.   Venue is proper in this Court pursuant to 28 U.S.C. sections 1391

10  and 1446.

11      10.   Contemporaneously with the filing of this Notice of Removal in

12  the United States District Court for the Central District of California, written notice of

13  such filing will be given by the undersigned to Plaintiff's counsel of record, Quinn

14  Emanuel Urquhart Oliver & Hedges, LLP, and a copy of the Notice of Removal will

15  be filed with the Clerk of the Court for the Superior Court of the County of Los

16  Angeles, California.

17  Dated: May 14, 2004

18                              ROBERT F. MILLMAN
                                DOUGLAS A. WICKHAM
19

20

21                              DOUGLAS A. WICKHAM
                                LITTLER MENDELSON
22                              A Professional Corporation
                                Attorneys for Defendant
23                              CARTER BRYANT

24

25  Los_Angeles:357259.1 028307.1010

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

6.

NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

May 14 04 12:37p

**SUMMONS**
**(CITACION JUDICIAL)**

SUM-100

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
CARTER BRYANT, an individual *and Does 1 through 10 inclusive*
1303 South Farm Road #115
Springfield, MO 65802

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTA DEMANDANDO EL DEMANDANTE):**
MATTEL, INC. *a Delaware Corporation*
333 Continental Blvd.
El Segundo, CA 90245

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DÍAS DE CALENDARIO despues de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.

| | CASE NUMBER: (Número del Caso): |
|---|---|
| The name and address of the court is:<br>(El nombre y dirección de la corte es):<br>Los Angeles Superior Court<br>Central Branch<br>111 N. Hill Street<br>Los Angeles, CA 90012-3011 | BC314398 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Michael T. Zeller (Bar No. 196417)      213-443-3000
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 S. Figueroa Street
Los Angeles, CA 90017

DATE: April 27, 2004          John A. Clarke      Clerk, by _____ , Deputy
(Fecha)                       (Secretario)        G. Chable   (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).
**NOTICE TO THE PERSON SERVED:** You are served
1. [X] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):

3. [ ] on behalf of (specify):

   under: [ ] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation) [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other (specify):
4. [X] by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

*Special Process Server*

**EXHIBIT 4**

56

APR 28 2004 14:5X   KEATSMCFARLANDWILSON 310 860 036   3554#10306#00001 P.02/15
Pelicxer                                              2                    P. 1



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 90378)
   Michael T. Zeller (Bar No. 196417)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Plaintiff
Mattel, Inc.

Case assigned to,
Judge
   Alan Buckner

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

MATTEL, INC., a Delaware corporation,

                              Plaintiff,

          v.

CARTER BRYANT, an individual; and
DOES 1 through 10, inclusive,

                              Defendants.

CASE NO.   BC314398

COMPLAINT FOR:

(1) BREACH OF CONTRACT;
(2) BREACH OF FIDUCIARY DUTY;
(3) BREACH OF DUTY OF LOYALTY;
(4) UNJUST ENRICHMENT; AND
(5) CONVERSION

ORIGINAL FILED

APR 27 2004

JOHN A. CLARKE, CLERK
S. Hall
BY        DEPUTY

07209/5793421

COMPLAINT

APR 28 2004 14:18                                                          32

EXHIBIT 4

APR 28 2004 14:57 FR  FATSMCFARLANDWILSON 310 660         P.2

Plaintiff Mattel, Inc. ("Mattel") brings this action against defendants Carter

Bryant ("Bryant") and Does 1 through 10 (all defendants being collectively referred to as

"defendants") and alleges as follows:

### Parties

1.   Mattel is a corporation organized and existing under the laws of the
State of Delaware and has its principal place of business in El Segundo, California.

2.   Mattel is informed and believes, and on that basis alleges, that defendant
Bryant is an individual currently residing in Springfield, Missouri.

3.   The true names and capacities of defendants sued herein as Does 1
through 10, inclusive, are unknown to Mattel, which therefore sues said defendants by such
fictitious names.  Mattel will amend this Complaint to allege their true names and capacities
when the same are ascertained.

4.   Mattel is informed and believes, and on that basis alleges, that at all
times relevant herein, defendants, and each of them, were acting in concert and active
participation with each other in committing the wrongful acts alleged herein, and were the
agents of each other, and in doing the things alleged herein, each defendant was acting
within the course and scope of his, her or its agency and was subject to and under the
supervision of, and was acting with the knowledge of, his, her or its co-defendants.

### Jurisdiction and Venue

5.   During the time of the acts complained of herein, Bryant was employed
by Mattel in, and was a resident of, Los Angeles County.  Bryant's contracts with Mattel that
are at issue in this action were executed, performed and breached by Bryant in Los Angeles
County.  In addition, defendants committed the tortious conduct alleged herein while
physically located in Los Angeles County, and Mattel felt the effects of Bryant's breach and

07209/5793421                                -2-
                                                          COMPLAINT

APR 28 2004 14:19

EXHIBIT 4

1 | defendants' other wrongful acts in Los Angeles County.  Accordingly, this Court has

2 | personal jurisdiction over defendants.

3 |       6.    Venue is proper pursuant to Code of Civil Procedure §§ 393 and 395(a),

4 | as the causes of action arose in Los Angeles County, the contractual obligations at issue were

5 | incurred, were to be performed and were breached by Bryant in Los Angeles County, and

6 | Bryant does not currently reside in California.

7 |

8 |                    Factual Background

9 |

10 |       7.    Mattel is a long standing and successful independent manufacturer and

11 | marketer of toys, dolls, games and stuffed toys and animals.  Mattel was founded in 1945 by

12 | Elliot and Ruth Handler and Harold "Matt" Matson.  The name of the company was created

13 | by incorporating the names of two of its founders, "MATT-son" and "EL-liot." Originating

14 | from the Handlers' garage in Southern California, the company greatly expanded its

15 | operations following World War II and soon began to thrive as its reputation for producing

16 | high-quality toys spread.  During the next several decades, Mattel became world famous for

17 | producing high-quality products at reasonable prices.  Today, some of Mattel's most famous

18 | brands include BARBIE, HOT WHEELS, MATCHBOX and FISHER-PRICE.

19 |       8.    Critical to Mattel's success, and to the livelihood of its employees, is

20 | Mattel's ability to design and develop new products. Mattel invests many millions of dollars

21 | in product design and development annually, and it introduces hundreds of new products

22 | each year.  In El Segundo, California alone, Mattel maintains a 180,000 square-foot design

23 | center that houses more than 850 designers, sculptors, painters and other artists, whom

24 | Mattel pays to work exclusively and full-time to create the products that Mattel sells and on

25 | which Mattel's business depends.

26 |       9.    Defendant Bryant was employed by Mattel from September 1995

27 | through April 1998, and then again from January 1999 through October 2000, as a product

28 | designer at Mattel's design center in El Segundo, California.

07209/579342.1

-3-

COMPLAINT

EXHIBIT 4

10.     On January 4, 1999, upon starting his second term of employment by Mattel, and as a condition of and in consideration for his employment, Bryant executed an Employee Confidential Information and Inventions Agreement (the "Employee Agreement"). Among other things, Bryant agreed that he would not, without Mattel's express written consent, "engage in any employment or business other than for [Mattel], or invest in or assist (in any manner) any business competitive with the business or future business plans of [Mattel]." Bryant further acknowledged that he held a position of trust with Mattel. In addition, Bryant assigned to Mattel all rights, title and interest in "inventions," including without limitation "designs," that he conceived or reduced to practice during his employment by Mattel. A true and correct copy of Bryant's Employee Agreement with Mattel is attached as Exhibit A.

11.     Also on January 4, 1999, Bryant executed Mattel's Conflict of Interest Questionnaire (the "Conflict Questionnaire"). Among other things, Bryant certified in the Conflict Questionnaire that, other than as disclosed, he had not worked for any competitor of Mattel in the prior twelve months and had not engaged in any business venture or transaction involving a Mattel competitor that could be construed as a conflict of interest. Bryant specifically agreed that he would immediately notify his supervisor of any change in his situation that would cause him to change any of the foregoing certifications. The only conflict disclosure that Bryant made on the Conflict Questionnaire (or at any time subsequently) concerned freelance work that is unrelated to the conduct alleged herein. A true and correct copy of the Conflict Questionnaire executed by Bryant is attached as Exhibit B.

12.     In late November 2003, Mattel learned that Bryant had secretly aided, assisted and worked for a Mattel competitor, including without limitation by entering into an agreement with the competitor, during the time Bryant was employed by Mattel pursuant to the above-referenced agreements and was being paid by Mattel as a product designer. Bryant's agreement with the competitor obligated Bryant to provide product design services to the competitor on a "top priority" basis. Bryant's agreement also provided, among other

-4-

07209/579342.1

APR 29 2004 14:28

EXHIBIT 4

1  things, that Bryant would receive royalties and other consideration for sales of products on
2  which Bryant provided aid or assistance; that all work and services furnished by Bryant to
3  the competitor under the agreement purportedly would be considered "works for hire"; and
4  that all intellectual property rights to preexisting work by Bryant purportedly would be
5  assigned to the competitor. In addition, while Bryant was employed by Mattel, Bryant and
6  the other defendants converted, misappropriated and misused Mattel property and resources
7  for the benefit of, and to aid and assist, Bryant personally and Mattel's competitor.

8           13.    During the time that he was employed by Mattel and thereafter, Bryant
9  concealed these actions from Mattel, including without limitation by failing to notify his
10  supervisor of his conflict of interest regarding the competitor and by making affirmative
11  misrepresentations to Mattel management upon his departure from Mattel.  Because of
12  Bryant's acts of concealment and his misrepresentations to Mattel, Mattel had no reason to
13  suspect that Bryant had worked for the competitor while still employed by Mattel until late
14  November 2003, when Mattel received, through an unrelated legal action, a copy of Bryant's
15  agreement with the competitor and saw that the date of the agreement predated Bryant's
16  departure from Mattel.

17          14.    As a consequence, Bryant breached his contracts with Mattel and
18  violated his duty of loyalty and his fiduciary duties to Mattel; the other defendants have
19  unlawfully aided and abetted his violation of such duties; and each of the defendants has
20  been unjustly enriched and engaged in acts of conversion.

21

22                           **FIRST CLAIM FOR RELIEF**
23                              (Breach of Contract)

24

25          15.    Mattel repeats and realleges each and every allegation set forth in
26  paragraphs 1 through 14, above, as though fully set forth at length.
27          16.    Pursuant to his Mattel Employment Agreement, and for good and
28  valuable consideration, Bryant agreed that he would not, without Mattel's express written

07269/579342.1                          -5-
                                                                    COMPLAINT

EXHIBIT 4

1  consent, engage in any employment or business other than for Mattel or assist in any manner

2  any business competitive with the business or future business plans of Mattel during his

3  employment with Mattel. Pursuant to his Mattel Employment Agreement, Bryant further

4  assigned to Mattel all right, title and interest in "inventions," including without limitation

5  "designs," that he conceived or reduced to practice during his employment by Mattel. In

6  addition, pursuant to the Conflict Questionnaire, Bryant certified that, other than as

7  disclosed, he had not worked for any competitor of Mattel and had not engaged in any

8  business venture or transaction involving a Mattel competitor that could be construed as a

9  conflict of interest. Bryant further promised that he would notify his superior immediately

10 of any change in his situation that would cause him to change any of the foregoing

11 certifications or representations.

12        17.    The Employment Agreement and the Conflict Questionnaire are valid,

13 enforceable contracts, and Mattel has performed each and every term and condition of the

14 Employment Agreement and Conflict Questionnaire required to be performed by Mattel.

15        18.    Bryant materially breached the foregoing contracts with Mattel, in that,

16 among other things, he secretly aided, assisted and worked for a Mattel competitor during

17 his employment with Mattel, without the express written consent of Mattel.

18        19.    As a consequence of Bryant's breach, Mattel has suffered and will in

19 the future continue to suffer damages in an amount to be proven at trial. Such damages

20 include, without limitation, the amounts paid by the competitor to Bryant during his Mattel

21 employment; the amounts paid by the competitor to Bryant as a result of the work he

22 performed for the competitor during his Mattel employment; the amount that Mattel paid

23 Bryant during the time he wrongfully worked for the competitor; the value of information

24 and intellectual property owned by Mattel which Bryant provided to the competitor; the

25 value of the benefits the competitor obtained from Bryant during the time he was employed

26 by Mattel; and the value of the benefits the competitor obtained from Bryant as a result of

27 the work he performed for the competitor during his Mattel employment.

28

EXHIBIT 4

20.   Furthermore, Bryant's conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Bryant specifically acknowledged in his Employment Agreement that his breach of the Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies." Accordingly, Mattel is entitled to orders mandating Bryant's specific performance of his contracts with Mattel and restraining Bryant from further breach.

## SECOND CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

21.   Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 20, above, as though fully set forth at length.

22.   Bryant held a position of trust and confidence with Mattel.  In his position, Bryant had access to and was entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently in many of his job assignments and duties.  In his position, Bryant also represented Mattel in its dealings with third parties and, in his actions in the course and scope of his employment with Mattel, was an agent of Mattel.  Bryant confirmed his relationship of trust with Mattel in the Employee Agreement.  Bryant thus owed Mattel a fiduciary duty that included, but was not limited to, an obligation not to take any action that would be contrary to Mattel's best interests or that would deprive Mattel of any opportunities, profit or advantage which Bryant might bring to Mattel.

23.   Bryant breached his fiduciary duty to Mattel in that, while employed by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including without limitation by entering into an agreement with a Mattel competitor.  As alleged

COMPLAINT

APR 28 2024  14:23                                    PAGE.08

EXHIBIT 4

1   above, Bryant also breached the aforementioned duty by using Mattel property and resources

2   for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3       24.   The other defendants, acting with full knowledge of Bryant's obligations

4   to Mattel, aided and abetted Bryant in such conduct.

5       25.   As a direct and proximate result of defendants' wrongful conduct,

6   Mattel has incurred damages in an amount to be determined at trial.

7       26.   Defendants acted with malice, fraud and oppression, and in conscious

8   disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages

9   against defendants in an amount to be determined at trial.

10      27.   Furthermore, defendants' conduct has caused, and unless enjoined will

11  continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

12  money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel

13  is entitled to an order restraining further breach of Bryant's fiduciary duty to Mattel and/or

14  restraining defendants from continuing to benefit from such breach.

15

16                      THIRD CLAIM FOR RELIEF

17                      (Breach of Duty of Loyalty)

18

19      28.   Mattel repeats and realleges each and every allegation set forth in

20  paragraphs 1 through 27, above, as though fully set forth at length.

21      29.   As an employee of Mattel, Bryant owed a duty of undivided loyalty to

22  Mattel, his employer. Pursuant to this duty, Bryant could not compete with Mattel or assist

23  a competitor of Mattel during his employment with Mattel. Pursuant to this duty, Bryant

24  was required to always give preference to Mattel's business over his own, similar interests

25  during the course of his employment with Mattel.

26      30.   Bryant breached his duty of loyalty to Mattel in that, while employed

27  by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including

28  without limitation by entering into an agreement with a Mattel competitor. As alleged

07209/5793-42.1                         -8-

                                                              COMPLAINT

                                                              EXHIBIT 4

APR 28 2004 14:58   KERTSTCPHREHNDWILSON 316 660 ...
Policzer                        E.      74-0000                   P. 8

1   above, Bryant also breached the aforementioned duty by using Mattel property and resources

2   for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3          31.    The other defendants, acting with full knowledge of Bryant's obligations

4   to Mattel, aided and abetted Bryant in such wrongful conduct.

5          32.    As a direct and proximate result of defendants' wrongful conduct,

6   Mattel has incurred damages in an amount to be determined at trial.

7          33.    Defendants acted with malice, fraud and oppression, and in conscious

8   disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages

9   against defendants in an amount to be determined at trial.

10         34.    Furthermore, defendants' conduct has caused, and unless enjoined will

11   continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

12   money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel

13   is entitled to an order restraining further breach of Bryant's duty of loyalty to Mattel and/or

14   restraining defendants from continuing to benefit from such breach.

15

16                          **FOURTH CLAIM FOR RELIEF**

17                               (Unjust Enrichment)

18

19         35.    Mattel repeats and realleges each and every allegation set forth in

20   paragraphs 1 through 34, above, as though fully set forth at length.

21         36.    Defendants, by the aforementioned conduct, unfairly used and diverted

22   Mattel property, resources and opportunities for the benefit of, and to aid and assist,

23   themselves, all without authorization by or payment to Mattel for the same. Defendants have

24   been unjustly enriched as a result.

25         37.    Mattel is entitled to an award of all such amounts by which defendants

26   have been unjustly enriched in an amount to be determined at trial.

27

28

07209/5793422.1                          -9-

                                                          COMPLAINT

APR 28 2004 14:24                                    PAGE.18

38. Defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages against defendants in an amount to be determined at trial.

39. Furthermore, defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining defendants from any further unjust enrichment.

## FIFTH CLAIM FOR RELIEF

### (Conversion)

40. Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 39, above, as though fully set forth at length.

41. Mattel was entitled to, inter alia, Bryant's exclusive services and the exclusive ownership of his inventions as a Mattel product designer. However, Bryant provided such services, and purported to grant rights to such inventions, to a competitor during the time of his exclusive Mattel employment. All such services and the inventions and work product resulting from such services, including without limitation ideas, concepts, rights, designs, proprietary information, and other intellectual property and intangible property created by Bryant during the term of the aforesaid agreements, were the property of Mattel. Such services and property were provided by Bryant to others, including defendants, and used by them.

42. Defendants wrongfully converted Mattel property and resources by asserting ownership thereto and by appropriating and using Mattel's property and resources for their own benefit and gain and for the benefit and gain of others, without the permission of Mattel.

07209/3793421

-10-

COMPLAINT

43.   As a direct and proximate result of defendants' wrongful conversion of Mattel's property and resources, Mattel has incurred damages. Mattel is entitled to recover compensatory damages against defendants in an amount to be determined at trial.

44.   Defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages against defendants in an amount to be determined at trial.

45.   Furthermore, defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining defendants from further conversion of Mattel property and resources and/or restraining defendants from continuing to benefit from such conversion.

## PRAYER FOR RELIEF

WHEREFORE, Mattel hereby respectfully requests that this Court:

A.   Award Mattel its damages;

B.   Order defendants to disgorge to Mattel all payments, revenue, profits, monies, royalties and any other benefits derived or obtained by defendants as a result of the conduct described herein;

C.   Order specific performance by Bryant to comply with and satisfy Bryant's contractual obligations to Mattel;

D.   Enter an injunction restraining defendants, and all those acting in concert or participation with them, from engaging in further wrongful conduct and/or from continuing to benefit from their wrongful conduct;

E.   Order defendants to pay Mattel the full cost of this action and Mattel's reasonable attorneys' fees;

F.   Award Mattel punitive damages in an amount sufficient to punish defendants and deter such misconduct in the future; and

07209/579342.1

-11-



G.     Award such other and further relief as this Court deems just and proper.

DATED: April 27, 2004          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _Mike T. 3_
   Michael T. Zeller
   Attorneys for Plaintiff
   Mattel, Inc.

77209/579342.1                    -12-

                                                    COMPLAINT

EXHIBIT 4

**EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT**

**1. Proprietary Interest in Trade Secrets**

**2. Ownership of Inventions**

**3. Conflict with Other Activities**

**4. Miscellaneous**

CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS
THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.

Employee Signature: _Carter Bryant_
Employee Name (print): CARTER A. BRYANT
Date: 01/04/99

_Teresa Newcomb_
Teresa Newcomb

EXHIBIT A PAGE 13

## CONFLICT OF INTEREST QUESTIONNAIRE

BRYANT, CARTER H.   PROJECT DESIGNER

*Introduction:* The purpose of this questionnaire is to enable the [illegible]...

*Mattel Employee* is incorporated broadly for purposes of this questionnaire...

*Mattel Competitor* is incorporated broadly for purposes of this questionnaire...

*Interest* means [illegible]...

*Purchase of any investment, etc.* means [illegible]...

- ☐ yes  ☐ no   1. Have you owned, directly or indirectly, any interest in a Mattel supplier?
- ☐ yes  ☐ no   2. Have you owned, directly or indirectly, and interest in a Mattel competitor?
- ☐ yes  ☐ no   3. Have you been the recipient of any commission, fee, loan, trip, gift, bonus or anything else of value that is owned in any way from a Mattel supplier?
- ☐ yes  ☐ no   4. Have you been the recipient of any commission, fee, loan, trip, gift, bonus or anything else of value that is owned in any way from a Mattel competitor?
- ☐ yes  ☐ no   5. Have you or any member of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?
- ☐ yes  ☐ no   6. Have you or any member of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?
- ☐ yes  ☐ no   7. Have you engaged in any activity including the acquisition of ownership of any interest, for personal profit, that primarily enjoys the scope of the foregoing with Mattel or is its property or interests?
- ☐ yes  ☐ no   8. [illegible]... Mattel supplier or competitor or engaged in any activity which could be reasonably anticipated as being a conflict of interest or interest with Mattel?
- ☐ yes  ☐ no   9. Are you aware of any activity of any employee within your below that could be construed to a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes" please explain in the space below:

*4,5. Freelance design & artwork in 1998. from appx 5/98 - 11/98 for the Sculptoris Snake galleries.*

I certify that I have read Mattel's policies regarding Conflict of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully becomes grounds for immediate termination of my employment. I agree that as changes in my company information or circumstances explore, I also agree to notify my superior immediately of any changes in any matters that would cause me to answer any of the above questions otherwise. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is in any way engaged in any activity which creates a Conflict of Interest.

*[signature]*   *01/04/98*

EXHIBIT **B** PAGE **14**

APR 23 2004 14:28

PAGE.15
*** TOTAL PAGE.15 ***

EXHIBIT 4

May 14 04 12:44p       er          *       57936         27
Sent by: quinn,emanuel        12196240643;      04/2.      3:50PM;JetFax_#517;Page 27/35

# NOTICE TO LITIGANTS

Effective July 1, 2002, California Rules of Court were amended:

**RULE 201.                    APPLICABILITY.**

Except as otherwise provided in these rules, the rules in this chapter apply to all general civil cases filed in the trial courts after June 30, 2002.

**RULE 201.9              INFORMATION ABOUT ADR**

The plaintiff shall serve a copy of the ADR information package on each defendant along with the complaint.  Cross-complainants shall serve a copy of the ADR information package on any new parties to the action along with the cross-complaint.

ADR 008 New (6/02)

**EXHIBIT 4**

May 14 04 12:44p          'er                    '57936          p.28
Sent by: quinn, emanuel          12136240643;          04/27/04  6:51PM; Jetfax_#517; Page 28/35

| NAME, ADDRESS, AND TELEPHONE OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER: | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |
| ATTORNEY FOR (NAME):_____ C Plaintiff  ☐ Defendant  ☐ Cross-defendant | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURT ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION | CASE NUMBER: |
|---|---|

The undersigned parties stipulate to participate in Alternative Dispute Resolution (ADR) in the above-entitled action, as follows:

**1. ALTERNATIVE DISPUTE RESOLUTION PROCESS:**
☐  Mediation
☐  Non-Binding Arbitration
☐  Binding Arbitration
☐  Settlement Conference
☐  Other ADR Process (describe): _____

**2. NEUTRAL:**
☐  **Court Pro Bono Panel:** The parties request the appointment of the following neutrals from the Court's Pro Bono Panel. If neither choice is available, or if the parties otherwise request, the Court's ADR Office will select the neutral. (There will be no charge to the parties for the first 3 hours of a neutral selected from the Court's ADR panel.)

*First choice:* _____   *Alternate:* _____

☐ The parties request that the ADR Clerk select the neutral.

☐  **Private Provider:** The parties stipulate that the following provider shall be appointed as arbitrator or mediator. (All of the neutral's fees shall be paid by the parties, and divided between them in a manner to which they have agreed.)

*Name, address and telephone of Private Neutral:*

_____

Dated: _____

| Name of Party Stipulating to Mediation ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| Name of Party Stipulating to Mediation ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |

☐ Additional signature(s) on reverse

| ADR 001 09-01 | STIPULATION TO PARTICIPATE IN ALTERNATIVE DISPUTE RESOLUTION | California Rules of Court, Rule 1590.1 and 1590.3   Page 1 of 2 |
|---|---|---|

r

**EXHIBIT 4**

May 14 04 12:44p    )nter    7257836    p.29
Sent by: quinn,emanuel    12156240543;    04/27    51PM; Jetfax_#5   age 29/35

| CASE NAME: | | CASE NUMBER: |
|---|---|---|

| Name of Party Stipulating to Mediation<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| Name of Party Stipulating to Mediation<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Party Stipulating to Mediation<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Party Stipulating to Mediation<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Party Stipulating to Mediation<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Party Stipulating to Mediation<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Party Stipulating to Mediation<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Party Stipulating to Mediation<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
| Name of Party Stipulating to Mediation<br>☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |

ADR 99106-01

**STIPULATION TO PARTICIPATE
IN ALTERNATIVE DISPUTE RESOLUTION**

California Rules of Court, Rule 1590.1 and 1590.3
Page 2 of 2

73

**EXHIBIT 4**

May 14 04 12:44p          rter

Apr 28 04 08:08a          Chiste          3077          p.2

# S. Angeles County Dispute Resolution Program

*For more information call (213) 738-????
or contact one of the 18 agencies below.*

**P is FAIR**

al mediators help disputants look at all sides of a conflict together to find an effective, fair and reasonable on

**P is FIRM**

results in a specific, detailed solution that covers all the issues. Since both parties agreed to the resolution, there is a commitment to abide by its outcome.

**P is FAST**

resolution. Disputes are resolved much more quickly than they are taken to court. Dispute resolution can begin almost as soon as both parties agree to ipate.

**P is FRIENDLY**

cause all parties must be voluntary for DRP to work. mediators are skilled at getting both sides of a dispute to to participate.

*visit us how there can   DRP in a successful*

A.L. City Attorney Dispute Resolution Program
200 N. Main St., 1800 City Hall East, Los Angeles, CA 90012
(213) 485-8324

L.A. County Bar Association, Dispute Resolution Services, Inc.
281 S. Figueroa St., Ste 300, Los Angeles, CA 90012 (213) 473-????
Youth Program (213) 365-6530

L.A. County CSS, Voluntary Mediation Services
S.Coastal (323) 568-8292; East L.A. (323) 260-2385; Santa Clarita (661)
S.E.Valley (818) 648-3118; San Gabriel (626) 575-3118; San Pedro (310)

L.A. County Department of Consumer Affairs,
Dispute Settlement Services
500 West Temple St., Room B-96, Los Angeles, CA 90012
(213) 974-0825

L.A. Superior Court Alternative Dispute Resolution Office
111 North Hill St., Room 113, Los Angeles, CA 90012 (213) 974-5191

Loyola Law School, Center for Conflict Resolution
919 South Albany Street, Los Angeles CA 90015  (213) 736-1145

Martin Luther King Legacy Association Dispute Resolution Ct.
4182 S. Western Avenue, Los Angeles, CA 90062  (323) 294-1132

Norwalk, City of, Consumer Human Relations Board
11929 Alondra Blvd., Norwalk, CA 90650  (562) 929-5603

A Mejores Edice Memorial Dispute Resolution Center
819 So. Albany Street, Los Angeles, CA 90015  (213) 785-1104

Asian Pacific American Dispute Resolution Center
1145 Wilshire Blvd., Suite 101, Los Angeles, CA 90017  (213) 250-8194

California Academy of Mediation Professionals
16601 Ventura Blvd., Suite 308, Encino, CA 91436  (818) 377-1750

California Lawyers for the Arts, Arts Arbitration
and Mediation Services
1641 18th Street, Santa Monica, CA 90404  (310) 998-5590

Center for Conflict Resolution,
Small Claims Court Mediation Program
3750 East Foothill Blvd., Suite C, Pasadena, CA 91100  (626) 585-5729

Coalinda Valley Juvenile Diversion Project -
Youth Mediation Program
11433 Hawthorne Blvd., Hawthorne CA 90250  (310) 973-3400

Claremont Dispute Resolution Center
111 Harvard Avenue, Unit B, Claremont, CA 91711
(909) 625-6622

Inland Valley Justice Center, Inc.
460 South Park Avenue, Suite 100, Pomona, CA 91766  (909) 629-6201

Korean American Coalition
3727 West 6th Street, #515, Los Angeles, CA 90020

74                                        EXHIBIT 4



**EXHIBIT 4**

Apr 29 04 08:08a    Chiate

43-2077    p.4

## HOW MUCH WILL IT COST?

Neutrals, who serve as mediators and arbitrators on the Court Panels, provide three hours of service to the parties on a voluntary basis. There are no administrative fees for the court ADR service.

If the parties wish to continue with the mediation or arbitration after the first three hours, the neutral is permitted to charge for their time. Fees range from approximately $150 to $500 per hour, depending upon the experience and expertise of the particular neutral. The fees are typically split between the parties in the case.

## HOW LONG DOES IT TAKE?

The length of an ADR procedure varies depending on the complexity of the case. Most cases require only one meeting to come to a resolution, but some cases may require additional sessions. All of these ADR processes must be completed by a date set by the Judge.

ADR processes work. They can save time and money, reduce emotional stress and prevent the loss of valued relationships. Isn't it worth at least inquiring about them?



Partially Funded by the
Los Angeles County Dispute Resolution Program

ADR 8N. Color 6/93



76

**EXHIBIT 4**

## THERE ARE ALTERNATIVES TO LITIGATION

The function of the Court is to provide a fair and impartial forum to resolve disputes. The traditional method provided by the court is called "litigation", more commonly known as a lawsuit. The court also offers innovative alternative dispute resolution, or "ADR", programs that provide mediation, settlement conferences and arbitration.

ADR has been increasingly used in recent years to resolve lawsuits and participants are usually very satisfied with the process and results. Mediation, settlement conferences and arbitration resolve disputes sooner with less expense, difficulty, and emotional stress than traditional litigation. Mediation and settlement conferences help the parties to decide the outcome of the dispute and to achieve solutions that are not available through litigation or arbitration.

Some of the possible benefits for parties using an ADR process instead of litigation include the following:

- ADR is more cost-effective;
- ADR is less time-consuming;
- ADR is often extremely highly satisfactory;
- ADR provides parties more control over the outcome.

Benefits for attorneys, in addition to those mentioned above, include:

- shorter time for disposition;
- quicker results for clients;
- ability to represent or advise more clients;
- fewer fee disputes;
- greater client satisfaction.

## LITIGATION

Litigation is a formal and structured process in which a Judge or jury may ultimately decide the outcome of the parties' disputes after a trial.

The litigation process is often very lengthy, time consuming, expensive and emotionally draining for the parties. The outcome of litigation is also difficult to predict, and parties who expect to win are often disappointed with the result at trial.

More than 95% of civil cases are resolved before trial, so it's worth considering ADR options early in the litigation process.

## WHAT ARE MY OPTIONS?

The Court sponsors three highly effective ADR programs for disputes in litigation: mediation, settlement conferences and arbitration.

## MEDIATION

Mediation is a flexible, informal and confidential process. In mediation, a neutral (the mediator) facilitates communication and negotiations to assist the parties in reaching a mutually acceptable resolution. Unlike a judge, a jury, or an arbitrator, the mediator does not decide the outcome of the dispute, but helps the parties to do so.

Mediators use a variety of techniques to help the parties examine their underlying interests, needs and priorities and explore more creative resolutions, including options not available through trial or arbitration. Some of the common approaches include:

- helping the parties effectively express their perspectives;
- clarifying the parties' issues, interests and needs;
- helping the parties identify options for resolution;
- acting as an intermediary in negotiations between the parties.

Mediators have a variety of backgrounds, and are not necessarily attorneys. All mediators on the Court's panel, including attorneys, have met training or experience requirements established by

**EXHIBIT 4**

77

May 19 04 12:45p
Apr 28 04 08:10a          Chista                          443-3077        p.6

California law and the Court.

The parties actually involved in the dispute attend and participate more actively than in the other dispute resolution processes. There are many different mediation styles, and most involve a joint meeting of all participants. Many mediators also meet with the individual parties and their attorneys in private sessions. In these meetings, the participants discuss the problems, issues and potential solutions, rather than presenting evidence and arguments to a third-party decision maker. With limited exceptions, the discussions and any documents prepared in the mediation are confidential and cannot be admitted as evidence in non-criminal proceedings.

If the parties reach an agreement in mediation, they may specify that it will be enforceable by the Court. Because the mediation is decided by the parties rather than forced upon them, settlements achieved in mediation are more likely to be carried out and often improve relationships between the parties.

If mediation does not result in an agreement, the parties may resume the litigation process as though the mediation had not occurred. Mediation has significant benefits even if the dispute is not completely resolved. The participants gain a better understanding of each others' perspective and the issues in dispute are often narrowed or clarified. Often times the parties' resolve the dispute after the hearing as a result of participating mediation process.

### SETTLEMENT CONFERENCES

A settlement conference is an ADR process typically conducted by a "settlement officer" who is an active judge, retired judge, or an experienced attorney. If the Judge refers the case to a settlement conference through the Court's ADR Commercial Provider Program, retired judges and experienced private ADR providers serve as the settlement officer.

A settlement conference, like mediation, seeks to resolve the dispute by promoting an agreement between the parties. The settlement officer does not render a decision or make findings of fact, but assists the parties in negotiating a settlement of the litigation.

Settlement conferences and mediations are both flexible processes, however there are some general differences. Typically, settlement conferences focus more on the evidence and legal issues in the pending litigation and do not examine the parties' underlying interests or concerns. It is more common for a settlement officer to provide an evaluation of the legal merits and possible results of the litigation.

The parties to the dispute or representatives with settlement authority are required to attend, along with their attorneys. The settlement officer, however, often communicates exclusively or primarily with the attorneys.

An agreement reached in a settlement conference may be entered into the Court records. If a settlement is not reached, the dispute remains in the litigation process.

### ARBITRATION

Arbitration, like litigation, is a process in which the parties' dispute is decided by an impartial third person, called an "arbitrator." The parties present testimony under oath and the rules of evidence that apply. After considering the parties' evidence and argument, the arbitrator issues a written decision or "award" which is filed with the Court. The parties must agree in advance whether the arbitration will be "binding" or "non-binding." In "binding arbitration" the arbitrator's award can only be challenged by the parties on very limited grounds. In "non-binding arbitration" the parties are not required to accept the arbitrator's award, but have a limited time to request a "trial de novo" which returns the case to the Court's calendar for

EXHIBIT 4

May 14 04 12:45P         pi oer                                         442-3077        p.7
    Apr 28 04 08:11a          , Chiate

trial. Significant monetary penalties may be imposed if the party requesting a trial de novo does not obtain a more favorable result than the arbitration award.

*It is very important for the parties to understand that, in agreeing to binding arbitration, or by not requesting a trial de novo on a timely basis, they are waiving their right to a trial and are accepting the arbitrator's award as a final decision.*

### HOW ARE CASES REFERRED TO THESE PROGRAMS?

Mandatory referral to an ADR program are ordered by the Judge, usually at a status conference or other scheduled proceeding. In considering a case for mandatory referral to mediation, settlement conference or arbitration, the Judge discusses the case with the attorneys or parties representing themselves to determine what dispute resolution process is most appropriate. After consultation, cases are referred to mandatory mediation or arbitration under the following circumstances:

* the plaintiff requests mediation or arbitration in writing and agrees that the award per plaintiff will not exceed $50,000;
* if, in the opinion of the Judge, the amount in controversy does not exceed $50,000 per plaintiff;
* if the Judge determines that the case is otherwise eligible and appropriate for mediation, settlement conference or arbitration and orders the parties to one of these ADR processes.

A voluntary referral to an ADR program may be initiated by the parties at any time during the litigation, and regardless of the amount in controversy. Cases involving more than $50,000 are frequently resolved through alternative dispute resolution. The parties may initiate a voluntary ADR process by completing and filing the Stipulation to Participate in Alternative Dispute Resolution form, or they may request voluntary ADR at a status conference or other scheduled hearing in the case.

### HOW ARE NEUTRALS SELECTED?

The Court ADR Office maintains a panel of neutrals who have met qualifications established by California Law or the Court to serve as mediators, arbitrators and/or settlement officers. Ordinarily, the attorneys or parties agree on the selection of a neutral. If the parties are unable to agree, the ADR Office will randomly select a neutral. Background information on the Court Panel neutrals is available on the Internet at: http://www.lasuperiorcourt.org/ADR, and at the Central ADR Office located in Room 113 of the Los Angeles Superior Court at 111 North Hill Street, Los Angeles, CA 90012 (telephone: 213.974.5425).

Parties also have the option of selecting a private neutral at their own cost. There are various organizations throughout Los Angeles County providing private ADR services. To obtain more information about these organizations contact the California Department of Consumer Affairs, toll free 1-800-952-5210 or look in the yellow pages under mediation or arbitration.

1

79

EXHIBIT 4



ROBERT F. MILLMAN, Bar No. CA 062152
DOUGLAS A. WICKHAM, Bar No. CA 127268
LITTLER MENDELSON
A Professional Corporation
2049 Century Park East, 5th Floor
Los Angeles, CA 90067.3107
Telephone: 310.553.0308

Attorneys for Defendant
CARTER BRYANT

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| MATTEL, INC., a Delaware corporation, | Case No. BC314398 |
| Plaintiff, | ASSIGNED FOR ALL PURPOSES TO JUDGE HON. ALAN BUCKNER |
| v. | ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT |
| CARTER BRYANT, an individual; and DOES 1 through 10, inclusive, | Complaint Filed: April 27, 2004 |
| Defendant. | |

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

80

**EXHIBIT 4**

1    COMES NOW Defendant CARTER BRYANT ("Defendant") by and through his

2  attorneys, and for his Answer to the unverified Complaint ("Complaint") of Plaintiff MATTEL,

3  INC. ("Plaintiff") hereby generally and specifically denies each and every allegation in Plaintiff's

4  Complaint, pursuant to Sections 431.30(b) and (d) of the California Code of Civil Procedure.

5  ### AFFIRMATIVE DEFENSES

6    Without waiving or excusing the burden of proof of the named Plaintiff or admitting

7  that Defendant has any burden of proof, Defendant asserts the following affirmative defenses:

8  ### FIRST AFFIRMATIVE DEFENSE

9    1.    Plaintiff's Complaint and each purported claim for relief therein fail to state

10  facts sufficient to constitute a claim for relief against Defendant.

11  ### SECOND AFFIRMATIVE DEFENSE

12    2.    Plaintiff's Complaint and each purported claim for relief therein are barred by

13  the equitable doctrine of unclean hands.

14  ### THIRD AFFIRMATIVE DEFENSE

15    3.    Plaintiff's Complaint and each purported claim for relief therein are barred by

16  the equitable doctrine of waiver.

17  ### FOURTH AFFIRMATIVE DEFENSE

18    4.    Plaintiff's Complaint and each purported claim for relief therein are barred by

19  the equitable doctrines of estoppel.

20  ### FIFTH AFFIRMATIVE DEFENSE

21    5.    Plaintiff's Complaint and each purported claim for relief therein are barred by

22  the equitable doctrine of laches.

23  ### SIXTH AFFIRMATIVE DEFENSE

24    6.    Plaintiff's Complaint and each purported claim for relief therein are barred by

25  the equitable doctrine of consent.

26  ### SEVENTH AFFIRMATIVE DEFENSE

27    7.    Plaintiff's Complaint and each purported claim for relief therein, or some of

28  them, are barred by the applicable statutes of limitations, including Code of Civil Procedure sections

2.

ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

EXHIBIT 4

1    337, 339, 343 and 338(c).

2    ### EIGHTH AFFIRMATIVE DEFENSE

3           8.    Plaintiff's Complaint and each purported claim for relief therein, or some of

4    them, are barred because Defendant did not owe a legal duty to Plaintiff or, if any legal duty arose, it

5    was not breached by Defendant.

6    ### NINTH AFFIRMATIVE DEFENSE

7           9.    Without admitting, and specifically denying, that Defendant owed any duty to

8    Plaintiff, any duty or obligation, contractual or otherwise, which Plaintiff claims was owed by

9    Defendant has been fully performed, satisfied and/or discharged.

10   ### TENTH AFFIRMATIVE DEFENSE

11         10.    Plaintiff's Complaint and each purported claim for relief therein are barred

12   because Defendant has complied fully with his obligations under all applicable laws.

13   ### ELEVENTH AFFIRMATIVE DEFENSE

14         11.    Defendant alleges that Plaintiff has failed to exercise reasonable diligence in

15   properly mitigating its damages, if any in fact were suffered.

16   ### TWELFTH AFFIRMATIVE DEFENSE

17         12.    Plaintiff's Complaint and each purported claim for relief therein are barred

18   because the alleged losses or harms sustained by Plaintiff, if any, resulted from causes other than any

19   act or omission of Defendant.

20   ### THIRTEENTH AFFIRMATIVE DEFENSE

21         13.    Plaintiff's Complaint and each purported claim for relief therein, or some of

22   them, are barred because to the extent Plaintiff has suffered any harm, and Defendant denies that

23   Plaintiff has suffered any harm, it is due to Plaintiff's own acts and omissions.

24   ### FOURTEENTH AFFIRMATIVE DEFENSE

25         14.    Plaintiff's Complaint and each purported claim for relief therein, or some of

26   them, are barred because any alleged contract fails for lack of consideration, is vague and uncertain,

27   and therefore is void, voidable and/or unenforceable.

28   //

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

3.

ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

**EXHIBIT 4**