### FIFTEENTH AFFIRMATIVE DEFENSE

15.    Plaintiff's Complaint and each purported claim for relief therein, or some of them, are barred because any breaches of an alleged contract or duty, which Defendant denies, are excused by Plaintiff's acts or omissions.

### SIXTEENTH AFFIRMATIVE DEFENSE

16.    To the extent that Plaintiff's Complaint and any purported claim for relief therein, or some of them, seek the remedy of injunctive relief, that remedy is barred because Plaintiff's remedies at law are adequate and will not cause irreparable harm to Plaintiff.

### SEVENTEENTH AFFIRMATIVE DEFENSE

17.    Plaintiff's Complaint and each purported claim for relief therein cannot be maintained because any duties or obligations, contractual or otherwise, which Plaintiff claims are owed by Defendant, are contrary to applicable law.

### EIGHTEENTH AFFIRMATIVE DEFENSE

18.    Plaintiff is barred from recovering punitive and/or exemplary damages from Defendant because: (1) the provisions of California law allowing for the award of punitive and/or exemplary damages and the substantive rules, procedures and/or standards for determining whether or not to award them, and if so, in what amount, violates Defendant's rights to protection under Article 1, Section 17 of the California Constitution and violate Defendant's rights to due process as provided in the Fifth and Fourteenth Amendments of the United States Constitution; (2) punitive and/or exemplary damages are so punitive in purpose and effect as to constitute a criminal penalty, entitling Defendant to rights afforded to defendants in criminal proceedings under the United States Constitution and the California Constitution; (3) punitive and/or exemplary damages places an unreasonable burden upon interstate commerce; and (4) California's system of punitive damages is unconstitutional under State Farm Mut. Auto. Ins. Co. v. Campbell, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003), and the federal and state constitutions.

### NINETEENTH AFFIRMATIVE DEFENSE

19.    Defendant does not presently know all facts concerning the conduct of Plaintiff sufficient to state all affirmative defenses at this time.  Defendant will seek leave of this

4.

ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

LITTLER MENDELSON

EXHIBIT 4

83

1   Court to amend this Answer should he later discover facts demonstrating the existence of additional

2   affirmative defenses.

3         **WHEREFORE,** Defendant prays for judgment as follows:

4       1.    Plaintiff's Complaint shall be dismissed in its entirety with prejudice;

5       2.    Plaintiff shall take nothing by its action against Defendant;

6       3.    Defendant shall be awarded his costs of suit and attorneys' fees incurred in

7   this matter (to the extent permitted by applicable law); and

8       4.    Defendant shall be awarded such other, further relief as may be deemed just

9   and proper.

10  Dated: May 14, 2004

                           Respectfully submitted,

                           LITTLER MENDELSON
                           A Professional Corporation

                           By:    _____

                             DOUGLAS A. WICKHAM
                             Attorneys for Defendant
                             CARTER BRYANT

Los_Angeles:357256.2 028307.1010

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

5.

ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

EXHIBIT 4

**PROOF OF SERVICE BY MAIL**

I am employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 2049 Century Park East, 5th Floor, Los Angeles, California 90067.3107. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. On May 14, 2004, I placed with this firm at the above address for deposit with the United States Postal Service a true and correct copy of the within document(s):

**ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT**

in a sealed envelope, postage fully paid, addressed as follows:

Michael T. Zeller
Quinn Emanuel Urquhart Oliver &
Hedges LLP
865 S. Figueroa Street
10th Floor
Los Angeles, CA 90017

Following ordinary business practices, the envelope was sealed and placed for collection and mailing on this date, and would, in the ordinary course of business, be deposited with the United States Postal Service on this date.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 14, 2004, at Los Angeles, California.

_____
Julie Contreras

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553.0308

PROOF OF SERVICE

**EXHIBIT 4**

85

**EXHIBIT  5**

1   ROBERT F. MILLMAN, Bar No. CA 062152
    DOUGLAS A. WICKHAM, Bar No. CA 127268
2   LITTLER MENDELSON
    A Professional Corporation
3   2049 Century Park East, 5th Floor
    Los Angeles, CA  90067.3107
4   Telephone:  310.553.0308
    Facsimile:  310.553.5583
5
    Attorneys for Defendant
6   CARTER BRYANT

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10  MATTEL, INC., a Delaware          Case No.  CV04-3431 NM (RNBx)
    Corporation,
11                                    ASSIGNED FOR ALL PURPOSES TO
                                      JUDGE HON. NORA M. MANELLA
12              Plaintiff,
                                      SECOND DECLARATION OF
13  v.                                CARTER BRYANT IN SUPPORT OF
                                      OPPOSITION TO PLAINTIFF'S
14  CARTER BRYANT, an individual; and MOTION TO REMAND AND FOR
    DOES 1 through 10, inclusive,     COSTS
15
                Defendant.            Date:  August 23, 2004
16                                    Time:  10:00 A.M.
                                      Dept:  11
17

18

19

20

21

22

23

24

25

26

27

28

BRYANT DECLARATION II

1    I, Carter Bryant, declare as follows:

2        1.      I am the defendant in the above-entitled action.  All of the information

3    contained herein is based upon my personal and first hand knowledge and if called and

4    sworn as a witness, I could and would competently testify thereto.

5        2.      At the time of the removal, I was a citizen of the county of Springfield-

6    Greene, Missouri. My citizenship has not changed.

7        3.      I am a party to an agreement with MGA Entertainment, Inc.("MGA"),

8    referenced in Plaintiff Mattel, Inc.'s motion for remand.  In the first twenty months of the

9    Agreement alone -- i.e., by the end of May 2002, I had received over one million dollars.

10   My revenues to date are in the millions of dollars and I continue to provide services under

11   the Agreement and earn money pursuant to its terms.  In this lawsuit, Mattel seeks to

12   obtain all the money I have earned or will ever earn as a result of my work on Bratz™.

13   Mattel is seeking to deprive me of my livelihood.

14       4.      October 20, 2000, was my final day of employment with Mattel.  I gave

15   notice of my resignation prior to that time.

16       I declare under penalty of perjury under the laws of the United States of America

17   that the foregoing is true and correct.

18       Executed this 1st day of July in New York, New York.

19

20                                                    CARTER BRYANT

21   Los_Angeles:365704.4 021307.1010

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles CA 90067 3107
310 553 0308

BRYANT DECLARATION II                 2.

EXHIBIT 5

1

**PROOF OF SERVICE BY MAIL**

2          I am employed in Los Angeles County, California. I am over the age of

3 eighteen years and not a party to the within-entitled action. My business address is

4 2049 Century Park East, 5th Floor, Los Angeles, California 90067.3107. I am readily

5 familiar with this firm's practice for collection and processing of correspondence for

6 mailing with the United States Postal Service. On July 2, 2004, I placed with this firm

7 at the above address for deposit with the United States Postal Service a true and

8 correct copy of the within document(s):

9          **SECOND DECLARATION OF CARTER BRYANT IN**
           **SUPPORT OF OPPOSITION TO PLAINTIFF'S**
10         **MOTION TO REMAND AND FOR COSTS**

11
           in a sealed envelope, postage fully paid, addressed as follows:
12

13         Michael T. Zeller
           Quinn Emauel Urquhart Oliver
14         & Hedges LLP
           865 S. Figueroa Street
15         10th Floor
           Los Angeles, CA 90017
16

17         Following ordinary business practices, the envelope was sealed and

18 placed for collection and mailing on this date, and would, in the ordinary course of

19 business, be deposited with the United States Postal Service on this date.

20          I declare that I am employed in the office of a member of the bar of this

21 court at whose direction the service was made.

22          Executed on July 2, 2004, at Los Angeles, California.

23

24

25                                                  Julie Contreras

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

88                                            **EXHIBIT 5**

**EXHIBIT  6**

1    ROBERT F. MILLMAN, Bar No. CA 062152
     DOUGLAS A. WICKHAM, Bar No. CA 127268

2    LITTLER MENDELSON
     A Professional Corporation

3    2049 Century Park East, 5th Floor
     Los Angeles, CA  90067.3107

4    Telephone:  310.553.0308
     Facsimile:  310.553.5583

5

6    Attorneys for Defendant
     CARTER BRYANT

7

8                 UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10   MATTEL, INC., a Delaware       Case No.  CV04-3431 NM (RNBx)
    Corporation,

11                         ASSIGNED FOR ALL PURPOSES TO
                            JUDGE HON. NORA M. MANELLA

12            Plaintiff,

13    v.                           **DEFENDANT CARTER BRYANT'S**
                            **OPPOSITION TO PLAINTIFF'S**

14    CARTER BRYANT, an individual;     **MOTION TO REMAND AND FOR**
    and DOES 1 through 10, inclusive,     **COSTS**

15                           Date:  August 23, 2004
             Defendant.           Time:  10:00 A.M.

16                           Dept:  11

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067-3107
310.553.0308

                                             **EXHIBIT 6**

# TABLE OF CONTENTS

                                                                          PAGE

I.     INTRODUCTION ...................................................................................1

II.    ARGUMENT...........................................................................................2

       A.    Mattel  Failed to Meet and Confer In Accordance With  Local Rule
             7-3 ..............................................................................................2

       B.    Mr. Bryant Has Established Diversity Jurisdiction................................3

             1.     Complete Diversity of Citizenship Exists..................................3

             2.     Mr. Bryant Has Sufficiently Demonstrated That $75,000 Is
                    In Controversy...........................................................................4

                    a.    Mr. Bryant Demonstrated In His Removal Petition
                          That The Factual and Damages Allegations in the
                          Complaint Place Well More Than $75,000 At Stake...........5

                    b.    The Value of the Injunctive Relief Alone Exceeds
                          $75,000 ...............................................................................6

                    c.    The Punitive Damages Claim Alone Places In
                          Controversy More Than $75,000...........................................8

                    d.    Plaintiff's Choice of Counsel Underscores That It
                          Seeks More Than $75,000 .................................................10

             3.     Mattel Needs No Discovery Concerning The Amount In
                    Controversy ...........................................................................10

       C.    Federal Jurisdiction Also Exists Because Mattel's Claims Require
             Construction of the Copyright and Patent Acts .....................................11

       D.    Plaintiff Is Not Entitled to Its Costs In Bringing This Motion and
             Mr. Bryant Should Be Awarded Its Costs.............................................14

III.   CONCLUSION.......................................................................................15

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

**EXHIBIT 6**

## TABLE OF AUTHORITIES

PAGE

### CASES

Aguilar v. The Boeing Co.,
11 F.3d 55 (5th Cir. 1993) .................................................................. 6

Bell v. Hood,
327 U.S. 678 (1946) ........................................................................... 5

Christopher v. Cavallo,
662 F.2d 1082 (4th Cir. 1981) ........................................................... 11

City of Chicago v. International College of Surgeons,
522 U.S. 156 (1997) ........................................................................... 3

Corbelle v. Sanyo Electric Trading Co., Ltd.,
No. C-03-1509, at 10, 2003
U.S. Dist. LEXIS 20339 (N.D. Cal. Nov. 4, 2003) ........................... 4

Gibson v. Chrysler Corp.,
261 F.3d 927 (9th Cir. 2001) ............................................................. 8

Gonzales v. Guerrero,
1997 WL 875077 (T.D. Cal. Jury 1997) ........................................... 9

Green v. Party City Corp.,
No. CV-01-09681, 2002 WL 553219, at *3
(Feb. 4, 2002 C.D. Cal. 2002) ........................................................... 8, 9

In re Ford Motor Co./Citibank (So. Dakota), N.A.,
264 F.3d 952 (9th Cir. 2001) ............................................................. 7

Johnson v. America Online, Inc.,
No. C-01-21083, at *6, 2002
U.S. DIST. LEXIS 26937 (N.D. Cal. March 21, 2002) ..................... 6

Leatherman Tool Group, Inc. v. Cooper Industries, Inc.,
289 F.3d 1146 (9th Cir. 2002) ........................................................... 8

Mark & Harley Investments v. Ferrari of Los Gatos,
1998 WL 301260 (T.D. Cal. Jury 1998) ........................................... 9

Matheson v. Progressive Specialty Ins. Co.,
319 F.3d 1089 (9th Cir. 2003) ........................................................... 4

Momin v. Maggiemoo's International, LLC,
205 F. Supp.2d 506 (D.C. Md. 2002) ................................................ 10

Professional Seminar Consultants, Inc. v. Sino American Technology
Exchange Council, Inc.,
727 F.2d 1470 (9th Cir. 1984) ........................................................... 8

Richmond v. Allstate Ins. Co.,
897 F. Supp. 447 (S.D. Cal. 1995) .................................................... 8

Sanchez v. Monumental Life Ins. Co.,
102 F.3d 398 (9th Cir. 1996) ............................................................. 4

Sheldon v. Metro-Goldwyn Pictures Corp.,
309 U.S. 390 (1940) ........................................................................... 14

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

**EXHIBIT 6**

## TABLE OF AUTHORITIES
(CONTINUED)

PAGE

Sierminski v. Transouth Financial Corp.,
    216 F.3d 945 (11th Cir. 2000) ..................................................................4

Singer v. State Farm Mutual Auto Insurance,
    116 F.3d 373 (9th Cir. 1997) ...................................................................4

Strawbridge v. Curtiss,
    7 U.S. (3 Branch) 267 (1806) .................................................................3

Strotek Corp. v. Air Transport Assoc. of America,
    300 F.3d 1129 (9th Cir. 2002) ...............................................................3

T.B. Harms Co. v. Eliscu,
    339 F.2d 823, 828 (2d Cir. 1964),
    cert. denied, 381 U.S. 915 (1965) .........................................................11

U.S. Valves, Inc. v. Dray,
    212 F.3d 1368 (Fed. Cir. 2000) ............................................................12

Valdez v. Allstate Ins. Co.,
    ___ F.3d ___, No. 03-16253, 2004
    U.S. App. LEXIS 12251, at *7 (9th Cir. June 22, 2004) ..................4, 14

Veerkamp v. Peterson,
    1996 WL 268576 (T.D. Cal. Jury 1996) .................................................9

Vestron, Inc. v. Home Box Office,
    839 F.2d 1380 (9th Cir. 1988) ..........................................................11, 14

West America Corp. v. Vaughan-Bassett Furniture Company, Inc.,
    765 F.2d 932 (9th cir. 1985) ...................................................................5

STATUTES

17 U.S.C.,
    § 101 ................................................................................................12, 14

28 U.S.C.
    § 1331 ....................................................................................................11

28 U.S.C.
    § 1338(a) ................................................................................................11

28 U.S.C.,
    § 1441(a) ..................................................................................................3

28 U.S.C.,
    § 1447(c) .............................................................................................3, 14

29 U.S.C.,
    § 1332 ......................................................................................................3

35 U.S.C.,
    § 102(g) ..................................................................................................12

California Labor Code,
    § 2870 ....................................................................................................12

Federal Rules of Civil Procedure,
    Rule 11 ...................................................................................................13

iii.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

EXHIBIT 6

1   eliminate that income stream. Mattel's injunction request alone therefore satisfies the

2   jurisdictional requirement, by placing at issue these future earnings and Mr. Bryant's

3   ability to render services for Mattel's competitor.

      c.   **The Punitive Damages Claim Alone Places In Controversy More Than $75,000**

4
5   The Complaint's allegations of willful and malicious conduct and

6   accompanying demand for punitive damages also place more than $75,000 in

7   controversy. Punitive damages are properly included in the jurisdictional amount.

8   Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001); Richmond v. Allstate Ins.

9   Co., 897 F. Supp. 447, 450 (S.D. Cal. 1995).

10   California Court decisions and jury verdicts from similar cases provide further

11   evidence that the amount in controversy is more than $75,000. See Green v. Party

12   City Corp., No. CV-01-09681, 2002 WL 553219, at *3 (Feb. 4, 2002 C.D. Cal. 2002)

13   (Snyder, J.) (citing previous jury awards of punitive damages in determining that jury

14   could return a similar award). In its complaint, Mattel asserts a claim for conversion

15   and intentional misconduct in connection with the alleged breach of an Employee

16   Confidential Information and Inventions Agreement. Numerous California court

17   decisions and jury verdicts demonstrate that punitive damages in excess of $75,000

18   have been awarded to individual plaintiffs where the plaintiff has alleged and

19   prevailed on a claim of conversion of money or personal property. See Mr. Bryant's

20   Notice to Federal Court of Removal, ¶¶8(e)-(f) (listing cases).[3] These decisions may

---

21   and development by MGA of a line of dolls presently known as "Bratz™" (the 'MGA

22   Products'). Id. As set forth above, Mr. Bryant earned more than one million dollars

23   under the terms of this Agreement by May 2002, less than two years after Bryant left Mattel and only one year after "Bratz™" was introduced to the market. Bryant Decl.

24   at ¶ 3.

25   [3] Leatherman Tool Group, Inc. v. Cooper Industries, Inc., 289 F.3d 1146 (9th Cir. 2002) (approving $500,000 punitive damages award for improper use of a photograph

26   of competitor's product in connection with $50,000 compensatory damages award); and Professional Seminar Consultants, Inc. v. Sino American Technology Exchange

27   Council, Inc., 727 F.2d 1470 (9th Cir. 1984) (awarding plaintiff $200,000 in punitive

28   damages on the claim that defendant had converted funds received under an agreement to arrange study tour). Additionally, in Gonzales v. Guerrero, 1997 WL

8.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles CA 90067 3107
310 553 0308

EXHIBIT 6

1    controversy.  In re Ford Motor Co./Citibank (So. Dakota), N.A., 264 F.3d 952, 958

2    (9th Cir. 2001).

3          As Mattel well knows, Mr. Bryant provides design consulting services for

4    MGA's "Bratz™" line of dolls.  There is no question that Mattel will seek to tie its

5    claims – and its attempted recovery – to Mr. Bryant's work on the "Bratz"™ doll line.

6    In fact, while MGA is not a party, Mattel has already placed the "Bratz"™ properties

7    in controversy by its third party subpoena issued to MGA.  In fact, of the twenty

8    categories of documents demanded of MGA in Mattel's first document request

9    expressly refer to "Bratz"™ while many more indirectly seek documents concerning

10   the "Bratz"™ product line.  Wickham Decl. II at ¶ 4 and Exh. "C".  Any claim that

11   implicates the Bratz™ line of dolls is obviously of great value.  "Bratz™" has been an

12   undisputed commercial success in the three and one-half years since the Agreement

13   was executed.

14         On-line trade magazines and mainstream news sources have lauded its success:

15   •   In April 2004, the BBC News UK Edition reported that "Barbie is feeling
         the heat from rival brands such as feisty "Bratz™" dolls" and that
16       "figures suggest rising sales are eating directly into sales of Barbie."  It
         further reported that Bratz™ was "the number 1 lifestyle brand for girls
17       age seven to 14."  Id., ¶ 7 and Exh. "F".

18   •   In April 2004, CBNC posted a Reuters report on MSN.com on this very
         lawsuit.  The report noted that Barbie's sales "have suffered recently" and
19       that "Bratz™" has been credited with upsetting the fashion doll niche and
         stealing market share from Barbie."  Id., ¶ 7 and Exh."E".
20
     The "Bratz™" product line's continued success is almost a certainty, given its
21
     commercial success thus far.  Absent an injunction in this suit, Mr. Bryant will receive
22
     future earnings far in excess of $75,000 in connection with his ongoing consulting
23
     under the Agreement. [2]  The  injunction Mattel seeks could limit or conceivably
24

25   [2] Mr. Bryant's agreement with MGA provides Mr. Bryant with, inter alia, an initial
26   base pay of $48,000 plus "a royalty of three percent (3%) of the Net Sales Receipts
     from the sales by MGA of any of the MGA Products developed by MGA on which
27   Mr. Bryant provided his consulting services."  Declaration of Michel Zeller filed in
     support of Motion for Remand, dated June 14, 2004 at  Exh. 2.  In return, Mr. Bryant
28   agreed "to provide his services to consult with MGA and advise MGA on the design

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles  CA  90067 3107
310 553 0308

7.

1    when arguments in the Hastey litigation are the same as those that Mr. Bryant is

2    making now.  This removal should, therefore, also survive challenge.

3           **d.**    **Plaintiff's Choice of Counsel Underscores That It Seeks More Than $75,000.**

4

5      Finally, Mattel's choice of counsel demonstrates that the amount in controversy

6    exceeds the $75,000 jurisdictional minimum.  Mattel hired John Quinn and Michael

7    Zeller of Quinn Emanuel to litigate its claims against Mr. Bryant.  Each of those

8    gentlemen likely charges several hundred dollars per hour for their time.  In fact, *four*

9    *years ago, Mr. Zeller charged an hourly rate of $355,* and no doubt charges

10    substantially more now.  Counsel estimates that this case will, if brought to trial,

11    require well over 1000 hours of work.  Defendant's Request for Judicial Notice at ¶3

12    and Exh. "B".  At that rate, Mattel's attorneys' fees would alone exceed the

13    jurisdictional threshold in short order.  Id.  In fact, given the lengthy motion practice

14    and written correspondence that has already taken place, no doubt Mattel has already

15    spent more than $75,000 on its attorneys in this case.  (Id.)  Should Mattel dispute that

16    it will incur more than $75,000 in attorneys' fees before resolution of this litigation,

17    Mr. Bryant proposes that each side present to the Court for *in camera* review its

18    billing records for the case thus far, or that the Court allow Mr. Bryant limited

19    discovery on the question of attorneys' fees.  See Momin v. Maggiemoo's

20    International, LLC, 205 F. Supp.2d 506, 510 (D.C. Md. 2002) (suggesting same

21    method of proving probably attorneys' fees).  Mr. Bryant is confident that such a

22    review would demonstrate unequivocally that Mattel's legal fees in this matter

23    undoubtedly will – and likely already have – far exceeded $75,000.  Given this, Mattel

24    cannot state credibly that it is seeking less than that sum from Mr. Bryant.

25        **3.**    **Mattel Needs No Discovery Concerning The Amount In Controversy**

26      Tellingly, Mattel actually does not disavow that the jurisdictional minimum is

27    met.  Mattel's explanation for its failure to do so is that it "cannot put a dollar figure

28    on these claims and remedies absent discovery from defendant and third parties" and

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

10.

95                      **EXHIBIT 6**

1   that the facts needed here are "uniquely in [Defendant's] possession."  Motion to

2   Remand  at 2, 3.  Using this as its excuse, Mattel seeks damages discovery that

3   includes, inter alia, the "amounts of compensation defendant received" from MGA,

4   "the nature of the works" Mr. Bryant produced for MGA, and "the value of the

5   works" Mr. Bryant produced for MGA.  Motion for Remand at 2.  As set forth above,

6   Mattel well knows – without discovery – that the amount in controversy exceeds

7   $75,000.  Should Mattel honestly wish to refute this facially evident fact, it can and

8   should disavow any attempt to seek relief that exceeds $75,000 in value.

9        The Court should not permit Mattel to parlay its disingenuous and knowingly

10  futile motion for remand into a discovery motion.  Mattel's motion should be denied

11  because Mr. Bryant has presented conclusive and unrebutted evidence that the

12  Complaint places more than $75,000 in controversy.

13  C.   **Federal Jurisdiction Also Exists Because Mattel's Claims Require**
         **Construction of the Copyright and Patent Acts**

14

15       In addition to diversity jurisdiction, this Court has independent federal question

16  jurisdiction because Mattel's claims require construction of federal intellectual

17  property laws over which the federal courts have exclusive jurisdiction.  Under

18  binding precedent in this Circuit, this Court maintains jurisdiction over this case if

19  Mattel "asserts a claim requiring construction of the [Copyright] Act" or "presents a

20  case where a distinctive policy of the Act requires that federal principles control the

21  disposition of the claim." Vestron, Inc. v. Home Box Office, 839 F.2d 1380, 1381 (9th

22  Cir. 1988); T.B. Harms Co. v. Eliscu, 339 F.2d 823, 828 (2d Cir. 1964), cert. denied,

23  381 U.S. 915 (1965).  Matters of patent and copyright come under the exclusive

24  federal jurisdiction of the federal courts.  U.S. CONST. art. I § 8, cl. 8.; 28 U.S.C. §

25  1331; 28 U.S.C. § 1338(a).  Mattel "state law claims" then come under this Court's

26  original jurisdiction. See Christopher v. Cavallo, 662 F.2d 1082 (4th Cir. 1981)

27  (Virginia state claim for breach of warranty raises federal question because claim

28  requires construction of the Copyright Act); U.S. Valves, Inc. v. Dray, 212 F.3d 1368

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553 0308

11.

EXHIBIT 6

1   (Fed. Cir. 2000) (state law contract claim presents federal question where claim

2   requires construction of the patent laws).

3          While Bryant removed this case in good faith on diversity grounds, Mattel's

4   recent discovery requests specifically seeking documents related to Bryant's "works-

5   made-for-hire" and to the "reduc[tion] to practice" of Bryant's designs demonstrate

6   that Mattel's claims necessarily implicate federal Copyright and Patent law. "Work

7   made for hire" is a term of art in copyright law that deals with the circumstances under

8   which an employer owns the rights to its employee's copyrightable material. *See* 17

9   U.S.C. § 101. "Reduction to practice" is a term of art under patent law that governs

10  the point at which an idea has attained certainty, has been fully realized and is

11  embodied physically in its intended form.[4]  *See* 35 U.S.C. § 102(g).  Resolution of this

12  case will require interpretation of these federal law principles.  Mattel admitted this

13  fact in its requests for the production of all documents related to Bryant's "work-

14  made-for-hire" for MGA:

15

16     17.   All DOCUMENTS that REFER OR RELATE TO DESIGNS that YOU
              created, authored, produced, conceived of or reduced to practice during
17            the time period(s) of YOUR employment by Mattel, Inc. as purported
18            "works-made-for-hire" (whether in whole or in part) for on or behalf of
              MGA.
19

20     18.   All DOCUMENTS that REFER OR RELATE TO DESIGNS that YOU
              created, authored, produced, conceived of or reduced to practice prior to
21            October 21, 2000 as purported "works-made-for-hire" (whether in whole
22            or in part) for or on behalf of MGA.

23     19.   All DOCUMENTS that REFER OR RELATE TO DESIGNS that YOU
              created, authored, produced, conceived of or reduced to practice after
24            October 20, 2000 as purported "works-made-for-hire" (whether in whole
25            or in part) for or on behalf of MGA.

26   ─────────────────
     [4] California Labor Code § 2870 also uses the term "reduction to practice" in
27   describing the temporal scope of inventions that come within its protection.  The
     correct interpretation of this term, however, flows from the extensive body of relevant
28   case law in the patent context.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles CA 90067 3107
310 553 0308

                                          12.

                                                              **EXHIBIT 6**

Equally at issue is the "work made for hire" Bryant did for Mattel.

Further, Mattel repeatedly requests all documents related to designs Bryant "reduced to practice" during various time periods. For example:

> 1.   All DOCUMENTS that REFER OR RELATE TO DESIGNS for any doll, doll accessory or toy that YOU produced, created, authored, conceived of or reduced to practice, whether alone of [sic] jointly with others, prior to October 21, 2000.
>
> 16.   All DOCUMENTS that REFER OR RELATE TO DESIGNS produced, created, authored, conceived of or reduced to practice after October 20, 2000 by YOU, whether alone or jointly with others, that YOU have purported to license, offer for license, sell, offer for sale, convey, assign or transfer any right, title or interest in (whether in whole or in part) to MGA.
>
> 34.   All DOCUMENTS that REFER OR RELATE TO any payment of money or consideration made to YOU or for YOUR benefit by MGA for any DESIGNS, or for any rights, title or interest in any DESIGNS, that YOU produced, created, authored, conceived of or reduced to practice, whether alone or jointly with others, after October 20, 2000.

See Wickham Decl. II at ¶ 4 and Exh. "C".

Thus, Mattel's own discovery demands demonstrate that it believes the issues in this case require interpretation of federal law concepts that fall under exclusive federal jurisdiction. Indeed, Mattel could not serve these document requests in good faith, consistent with Federal Rule of Civil Procedure 11, unless it believed these requests called for information relevant to a claim or defense in this action. F.R.C.P. 11, 26(b)(1).

Furthermore, the relief Mattel seeks also requires interpretation of federal law. Mattel seeks a disgorgement of profits and an injunction enjoining Bryant "from further breach" of his contract with Mattel. Mr. Bryant provided design services in connection with the original "Bratz™" products. The "Bratz™" line has expanded

13.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

EXHIBIT 6

1    and changed significantly since the initial introduction of the first line of "Bratz™"

2    dolls, however, and now includes several dolls and other non-doll and licensed

3    products, many of which were released years after the initial "Bratz™" launch.  By

4    seeking an injunction and disgorgement, Mattel effectively seeks relief that – if Mattel

5    is successful – may require this Court to assess whether the subsequent "Bratz™"

6    dolls are derivative works and possibly also to engage in an apportionment analysis

7    under the Copyright Act.  *See* 17 U.S.C. § 101; Sheldon v. Metro-Goldwyn Pictures

8    Corp. 309 U.S. 390 (1940) (disgorgement of profits for copyrighted work requires an

9    apportionment of profits where some part of such profits derives from factors other

10    than original work).

11          In short, because Mattel's purported state law claims require construction of

12    federal laws over which this Court has exclusive jurisdiction, remand is not

13    appropriate.  *See* Vestron, *supra,* at 1381; T.B. Harms, *supra,* at 828.  The Court,

14    having original jurisdiction over Mattel's state law claims, should retain and

15    adjudicate the case.

16    **D.    Plaintiff Is Not Entitled to Its Costs In Bringing This Motion and Mr.**

17    **Bryant Should Be Awarded Its Costs.**

          Even if Mattel's motion were granted – which it should not be – Mr. Bryant

18    should not be ordered to reimburse Mattel for its costs in this motion.[5]  "There is no

19    automatic entitlement to an award of attorneys' fees.  Indeed the clear language of the

20    statute [28 U.S.C. sec. 1447(c)] makes such an award discretionary."  Valdez v. Wal-

21    Mart Stores, Inc., 199 F.3d 290, 292 (5th Cir. 2000).  In order for fees to be awarded,

22    the Court must conclude that Mr. Bryant did not have objectively reasonable grounds

23    upon which to remove the case to district court.  Id. at 294.  As demonstrated above,

24

25

26

27    [5] Equity would dictate that *Mr. Bryant*, not Mattel, should be awarded his costs in connection with this motion, as it is *his* right to litigate before this Court that has been

28    subject to an unwarranted attack.

14.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

EXHIBIT 6

1  such grounds indeed exist, and thus, an award of costs against Mr. Bryant would be

2  improper.

3  ### III.
### CONCLUSION

4      For all the foregoing reasons, Defendant Carter Bryant respectfully requests that

5  Plaintiff Mattel, Inc.'s motion for remand be denied.

6

7  Dated:   July 2, 2004                 Respectfully submitted,

8

9                                    By C. Wickh

10                      ROBERT F. MILLMAN
                    DOUGLAS A. WICKHAM

11                      LITTLER MENDELSON
                    A Professional Corporation

12                      Attorneys for Defendant
                    CARTER BRYANT

13

14  Los_Angeles:365790.1 028307.1010

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

15.

EXHIBIT 6

**PROOF OF SERVICE BY MAIL**

I am employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 2049 Century Park East, 5th Floor, Los Angeles, California 90067.3107. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. On July 2, 2004, I placed with this firm at the above address for deposit with the United States Postal Service a true and correct copy of the within document(s):

**DEFENDANT CARTER BRYANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND AND FOR COSTS**

in a sealed envelope, postage fully paid, addressed as follows:

Michael T. Zeller
Quinn Emauel Urquhart Oliver
& Hedges LLP
865 S. Figueroa Street
10th Floor
Los Angeles, CA 90017

Following ordinary business practices, the envelope was sealed and placed for collection and mailing on this date, and would, in the ordinary course of business, be deposited with the United States Postal Service on this date.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on July 2, 2004, at Los Angeles, California.

_____
Julie Contreras

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 5308

**EXHIBIT 6**

**EXHIBIT 7**

Received:   8/23/ 4  2:27PM;                  RightFAX -> QUINN EMANUEL;  Page 2
RightFAX                    8/23/2004 2:03    PAGE 002/010 / Fax Server



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>CARTER BRYANT, an individual; and DOES 1 through 10, inclusive,<br><br>        Defendants. | CASE NO. CV 04-3431 NM (RNBx)<br><br>ORDER GRANTING PLAINTIFF MATTEL, INC.'S MOTION TO REMAND |

## I. INTRODUCTION

On April 27, 2004, Mattel, Inc. ("Plaintiff" or "Mattel") filed a complaint in the Superior Court for the County of Los Angeles against Carter Bryant ("Defendant"), asserting claims for: (1) breach of contract; (2) breach of fiduciary duty; (3) breach of duty of loyalty; (4) unjust enrichment; and (5) conversion.  On May 14, 2004, Defendant filed a notice of removal to federal court based on diversity, pursuant to 28 U.S.C. § 1441(a).[1]  Now pending is Plaintiff's motion to

---

[1] In his Opposition, Defendant raises for the first time federal question jurisdiction as an additional basis of subject matter jurisdiction.  Plaintiff also seeks attorneys' fees pursuant to 28 U.S.C. § 1447(c).

EXHIBIT ____ PAGE ____

EXHIBIT 7

Received:   8/23/ 4   2:28PM;                RightFAX -> QUINN EMANUEL;   Page 3
RightFAX                     8/ /2004 2:03   PAGE 003/010  Fax Server

1  remand.[2]

2

3            II. RELEVANT FACTUAL BACKGROUND[3]

4        Plaintiff is a manufacturer and marketer of toys, dolls, games, and stuffed

5  toys and animals. Compl. ¶ 7. Plaintiff employed Defendant from September

6  1995 through April 1998, and from January 1999 through October 2000, as a

7  product designer at Plaintiff's design center in El Segundo, California. Id. ¶ 9.

8        Upon starting his second term at Mattel, Defendant signed an Employee

9  Confidential Information and Inventions Agreement ("Employee Agreement"), in

10  which Defendant agreed not to "engage in any employment or business other than

11  for [Plaintiff], or invest or assist (in any manner) any business competitive with

12  the business or future business plans of [Plaintiff]." Id. Plaintiff also alleges that

13  Defendant acknowledged that he held a position of trust with Plaintiff, and that

14  Defendant assigned to Plaintiff all rights, title, and interest in inventions, including

15  designs, that he conceived or reduced to practice during his employment with

16  Plaintiff. Id.

17        In addition to the Employee Agreement, Defendant executed Plaintiff's

18  Conflict of Interest Questionnaire ("Conflict Questionnaire"). Id. ¶ 11. Defendant

19  certified he had not worked for any competitor of Plaintiff in the prior 12 months

20  and had not engaged in any business dealing that would be considered a conflict of

21  interest. Id. Defendant allegedly agreed to immediately notify his supervisor of

22

23  _____

24        [2] The court will consider the merits of this motion, despite the fact Plaintiff filed its
   motion 17 days after initiating the meet and confer with Defendant. See Local Rule 7-3
25  (counsel contemplating filing a motion must first contact opposing counsel "at least
26  twenty (20) days prior to the filing of the motion").

27        [3] The following facts, taken from the Complaint, are assumed true for purposes of
   this motion only.
28

2

EXHIBIT ____ PAGE ____

EXHIBIT 7

Received:   8/23/ 4  2:28PM;                    RightFAX -> QUINN EMANUEL;  Page 4
RightFAX                    8/ 1/2004 2:03   PAGE 004/010  Fax Server

1    any event that would change any of Defendant's certifications in the Conflict

2    Questionnaire. Id.

3          In late November 2003, Plaintiff learned that Defendant had secretly worked

4    for MGA Entertainment ("MGA"), one of Plaintiff's competitors, while Defendant

5    worked for Plaintiff. Id. ¶ 12; see Zeller Decl., Ex. 2 (MGA Agreement) at 19. On

6    September 18, 2000, Defendant had signed an agreement with MGA ("MGA

7    Agreement") to provide product design services for MGA's line of "Bratz" dolls

8    on a top priority basis. Zeller Decl., Ex. 2 (MGA Agreement) at 19. Pursuant to

9    the agreement, all work and services furnished by Defendant to MGA under the

10   MGA Agreement were to be considered "works for hire," and all intellectual

11   property rights to preexisting work by Defendant were to be assigned to MGA. Id.

12         For the first six months of the MGA Agreement, MGA was to pay

13   Defendant $5,500 per month, and for the next three months, $5,000 per month. Id.

14   at 20. In addition to this base salary of $48,000, Defendant was to receive a

15   royalty of 3% of the net sales receipts from the sales of the "Bratz" dolls on which

16   Defendant provided his design services. Id. Defendant's last day of employment

17   for Plaintiff was October 20, 2000. Second Bryant Decl. ¶ 4.

18

19                                **III. DISCUSSION**

20                         A. Removal Based on Diversity

21         An action is removable to a federal court only if it could have been brought

22   there originally. 28 U.S.C. § 1441(a). A district court shall have original

23   jurisdiction of all civil actions where the amount in controversy exceeds the sum

24   or value of $75,000 and is between citizens of different states. 28 U.S.C. § 1332.

25   If at any time before final judgment it appears that the district court lacks subject

26   matter jurisdiction, the case shall be remanded to state court. 28 U.S.C. § 1447(c).

27

28
                                            3
                                    EXHIBIT ____ PAGE ____

                                    **EXHIBIT 7**

Received:   8/23/ 4  2:29PM;                RightFAX -> QUINN EMANUEL;   Page 5
RightFAX                  8/  /2004 2:03    PAGE 005/010;   Fax Server

1    The Ninth Circuit "strictly construe[s] the removal statute against removal

2  jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992); see also

3  Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996) ("Because of the

4  'Congressional purpose to restrict the jurisdiction of the federal courts on

5  removal,' the statute is strictly construed.") (quoting Shamrock Oil & Gas Corp. v.

6  Sheets, 313 U.S. 100, 109 (1941)). "Federal jurisdiction must be rejected if there

7  is any doubt as to the right of removal in the first instance." Gaus, 980 F.2d at 566

8  (citation omitted).  The removing party bears the burden of establishing that

9  removal is proper. Id. (citations omitted).

10    Where the complaint does not demand a dollar amount, the removing

11  defendant bears the burden of proving by a preponderance of the evidence that the

12  amount-in-controversy requirement is satisfied. Singer v. State Farm Mut. Auto.

13  Ins. Co., 116 F.3d 373, 376 (9th Cir. 1997); Sanchez v. Monumental Life Ins. Co.,

14  102 F.3d 398, 403 (9th Cir. 1996).  Under this burden, the defendant must provide

15  evidence establishing that the amount in controversy "more likely than not"

16  exceeds $75,000. Sanchez, 102 F.3d at 404 (citation omitted).

17    The district court first may consider whether it is "facially apparent" from

18  the complaint that the jurisdictional amount is in controversy. Singer, 116 F.3d at

19  377.  If not, the court may consider facts in the removal petition and any

20  "summary-judgment-type evidence," such as affidavits or declarations, relevant to

21  the amount in controversy at the time of removal. Id. (citation omitted);

22  Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial

23  § 2:664.12 (1999).  Removal cannot be based on conclusory allegations alone, but

24  must be supported by underlying facts. Singer, 116 F.3d at 377; Gaus, 980 F.2d at

25  567.

26    In his notice of removal, Defendant submitted declarations that damages

27  exceeded $75,000, but failed to provide facts to support these claims.  Bryant

28  Decl. ¶ 2; Wickham Decl. ¶¶ 2-4.  Conclusory statements in declarations

4

EXHIBIT ____ PAGE ____

EXHIBIT 7

1   unsupported by facts are insufficient to satisfy removal. See Dir. RLA v. Cape

2   Cod Biolab Corp., 2001 WL 1563710, at *5 (N.D. Cal. 2001) (defendant's

3   declaration that amount in controversy exceeded $75,000 was conclusory because

4   it failed to provide facts to support jurisdiction).

5       Plaintiff seeks injunctive relief, compensatory damages, punitive damages,

6   and attorneys' fees for its five state-law claims. Compl. at 11. Thus, the issue is

7   whether Defendant can establish that the aggregate of these "more likely than not"

8   exceeds $75,000. See Sanchez, 102 F.3d at 404; Bell v. Preferred Life Assurance

9   Soc. of Montgomery, Ala., 320 U.S. 238, 240 (1943) (actual and punitive damages

10  aggregated to calculate amount in controversy); Cohn v. Petsmart, Inc., 281 F.3d

11  837, 840 (9th Cir. 2002) (in actions seeking injunctive relief, amount in

12  controversy measured by value of object of litigation); Galt G/S v. JSS

13  Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998) (attorneys' fees included to

14  aggregate amount in controversy if authorized by statute).

15          **1. Value of Injunctive and Compensatory Relief**

16      In non-class actions, the potential cost to a defendant to comply with an

17  injunction may be considered when calculating the amount in controversy. See

18  Kanter v. Warner-Lambert Co., 265 F.3d 853, 859 (9th Cir. 2001) (citation

19  omitted); In re Ford Motor Co./Citibank (S.D.), N.A., 264 F.3d 952, 958 (9th Cir.

20  2001). However, speculation that the amount in controversy exceeds $75,000

21  does not satisfy the defendant's burden. See Open Text, Inc. v. Ackerman, 2002

22  WL 31748839, at *2 (N.D. Ill. 2002) (defendants failed to satisfy burden by

23  merely asserting that injunction would cost over $75,000). Plaintiff seeks an

24  injunction "restraining defendants, and all those acting in concert or participation

25  with them, from engaging in further wrongful conduct and/or from continuing to

26  benefit from their wrongful conduct." Compl. at 11.

27      MGA has employed Defendant for over three-and-a-half years to provide

28  design services for its "Bratz" dolls and Defendant has earned "millions" as a

5

EXHIBIT ____ PAGE ____

Received:   8/23/ 4   2:30PM;              RightFAX -> QUINN EMANUEL;  Page 7
RightFAX                8/ 3/2004 2:03   PAGE 007/010   Fax Server

1   result.  Second Bryant Decl. ¶ 3.  Defendant signed the MGA Agreement on

2   September 18, 2000, and resigned from Mattel on October 20, 2000, representing

3   only a one-month overlap of employment for both employers.  See Zeller Decl.,

4   Ex. 2 (MGA Agreement) at 19; Second Bryant Decl. ¶ 4.  The MGA Agreement

5   specified Defendant's base salary of $48,000 for the first nine months and a 3%

6   royalty of the net sales receipts of the "Bratz" dolls.  See Zeller Decl., Ex. 2 (MGA

7   Agreement) at 20.  However, Defendant nowhere states the earnings he received

8   from MGA while employed by Mattel or the nature or value of the services or

9   works he provided to MGA while employed by Mattel.  Plaintiff seeks only to

10  enjoin Defendant from profiting from the services rendered during the

11  approximately one-month time period Defendant worked for both Plaintiff and

12  MGA. Compl. ¶ 23.

13      Defendant's assertion that the "Bratz" dolls' rising commercial success and

14  his millions in earnings satisfy the amount-in-controversy requirement for

15  injunctive relief is merely speculative.  It cannot be automatically inferred that

16  every dollar he has earned from the "Bratz" dolls is a result of work performed

17  during the one-month period he worked for both Plaintiff and MGA.  Nor can it be

18  inferred that all the work he performed during that month directly resulted in the

19  creation of the "Bratz" dolls.  It is unclear how much, if any, of the work

20  Defendant performed while working for both Plaintiff and MGA was eventually

21  used in the final product.  Without more evidence demonstrating that Defendant's

22  work during that month directly resulted in the creation of the "Bratz" dolls, the

23  court cannot determine whether the value of injunctive relief would exceed

24  $75,000.

25      Because it is unclear how much work Defendant performed during the one-

26  month period resulted in the "Bratz" dolls, the court also cannot determine

27  whether the value of compensatory relief for all of Plaintiff's five claims would

28  exceed $75,000.

6

EXHIBIT ____ PAGE ____

107

EXHIBIT 7

Received:   8/23/ 4   2:30PM;                RightFAX -> QUINN EMANUEL;   Page 8
RightFAX                    8/^3/2004 2:03    PAGE 008/010·   Fax Server

**2. Punitive Damages**

Punitive damages are part of the amount in controversy in a civil action. Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001).  To establish probable punitive damages, a defendant may introduce evidence of jury verdicts in cases involving analogous facts.  Simmons v. PCR Tech., 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002).

Plaintiff requests punitive damages "in an amount sufficient to punish defendants and deter [their] misconduct in the future."  Compl. at 11.  Defendant cites California court cases to demonstrate that punitive damages exceeding $75,000 were awarded for conversion claims.  See, e.g., Leatherman Tool Group, Inc. v. Cooper Indus., Inc., 285 F.3d 1146 (9th Cir. 2002) ($500,000 punitive damage award for false advertising); Prof. Seminar Consultants, Inc. v. Sino Am. Tech. Exchange Council, Inc., 727 F.2d 1470 (9th Cir. 1984) ($200,000 punitive damage award for tour operator's conversion of deposit check and failure to secure visas for traveling group); Mark & Harley Investments v. Ferrari of Los Gatos, 1998 WL 301260 (T.D. Cal. Jury 1998) ($300,000 punitive damage award for car dealership's conversion of an automobile); Gonzalez v. Guerrero, 1997 WL 875077 (T.D. Cal. Jury 1997) ($80,000 punitive damage award for bail bondsman's failure to give attorney money assigned to attorney by client); Veerkamp v. Peterson, 1996 WL 268576 (T.D. Cal. Jury 1996) ($122,500 punitive damage award for selling storage facility renter's property after rent was late). Although the cited cases involve claims of conversion, the fact patterns are not sufficiently analogous to those in this case.  Thus, while punitive damages could potentially be awarded here, Plaintiff has provided no basis to quantify such an amount.

**3. Attorneys' Fees**

Where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in

7

EXHIBIT ___ PAGE ___

**EXHIBIT 7**

Received:   8/23/ 4   2:30PM;                    RightFAX -> QUINN EMANUEL;   Page 9
RightFAX                        8· 3/2004 2:03    PAGE 009/010    Fax Server

1   calculating the amount in controversy. Galt G/S, 142 F.3d at 1156.  Defendant,

2   however, fails to cite any applicable state statute entitling Plaintiff to attorneys'

3   fees.  See Opp. at 10; Compl. at 11; see also Dix v. ICT Group, Inc., 2003 WL

4   22852135, at *5-6 (E.D. Wash. 2003) (before court considers probable amount of

5   attorneys' fees, defendant must cite statute authorizing attorneys' fees).  Thus,

6   attorneys' fees are not included in the calculation of the amount in controversy.

7        In sum, Defendant has failed to satisfy his burden that the value of

8   injunctive and compensatory relief, punitive damages, and attorneys' fees exceeds

9   $75,000.

10               B. Removal Based on Federal Question

11        A claim arises under federal law if a "federal question is presented on the

12   face of the plaintiff's properly pleaded complaint."  Balcorta v. Twentieth Century

13   Fox Film Corp., 208 F.3d 1102, 1106 (9th Cir. 2000).  Where a claim is based only

14   on state law and seeks state law remedies, no federal question jurisdiction exists

15   even if its subject matter involves a copyright or patent. Effects Assocs. Inc. v.

16   Cohen, 817 F.2d 72, 73 (9th Cir. 1987); see Consol. Housewares, Inc. v. Finkle,

17   831 F.2d 261, 265 (Fed. Cir. 1987) (mere presence of patent issue cannot create

18   cause of action arising under patent laws).  As the master of his complaint, a

19   plaintiff may avoid federal question jurisdiction by relying exclusively on state

20   law. Chesler/Perlmutter Prods., Inc. v. Fireworks Entm't, Inc., 177 F. Supp. 2d

21   1050, 1055 (C.D. Cal. 2001).

22        Here, Defendant argues that Plaintiff's discovery requests implicate federal

23   copyright and patent law.  Opp. at 12.  However, Plaintiff has alleged only state

24   law claims.  That these claims may involve copyrights and patents does not confer

25   federal question jurisdiction.  See Effects Assocs., 817 F.2d at 265; Consol.

26   Housewares, 831 F.2d at 265.

27

28

                                    8        EXHIBIT ___ PAGE ___

EXHIBIT 7

Received:   8/23/ 4  2:31PM;                    RightFAX -> QUINN EMANUEL;  Page 10
RightFAX            8/~3/2004 2:03    PAGE 010/010   Fax Server

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS** Plaintiff's motion to remand to Los Angeles County Superior Court. Exercising its discretion pursuant to 28 U.S.C. § 1447(c), the court **DENIES** Plaintiff's request for attorneys' fees.

IT IS SO ORDERED.

DATED: August 20, 2004

Nora M. Manella
United States District Judge

EXHIBIT ____ PAGE ____

9

110                                        **EXHIBIT 7**

**EXHIBIT  8**



1   ROBERT F. MILLMAN, Bar No. CA 062152
    DOUGLAS A. WICKHAM, Bar No. CA 127268
2   KEITH A. JACOBY, Bar No. 150233
    LITTLER MENDELSON
3   A Professional Corporation
    2049 Century Park East, 5th Floor
4   Los Angeles, CA 90067.3107
    Telephone: 310.553.0308
5   Facsimile: 310.553.5583

6   Attorneys for Defendant and Cross-Claimant
    CARTER BRYANT
7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11  MATTEL, INC., a Delaware          Case No.   CV04-9059 DDP AJWx
    Corporation,
12                                    NOTICE TO FEDERAL COURT OF
                   Plaintiff,         REMOVAL OF CIVIL ACTION
13                                    FROM STATE COURT PURSUANT
         v.                           TO 28 U.S.C. SECTIONS 1332(a)(1)
14                                    AND 1331
    CARTER BRYANT, an individual;
15  and DOES 1 through 10, inclusive, [28 U.S.C. § 1331, § 1332(a)(1), § 1441
                                      (a) & (b), § 1446]
16                 Defendant.

17  CARTER BRYANT, on behalf of
18  himself, all present and former
    employees of Mattel, Inc., and the
19  general public,

20                 Cross-Plaintiff,

21       v.

22  MATTEL, INC., a Delaware
    Corporation,
23
                   Cross-Defendant.
24

25

26

27

28

LITTLER MENDELSON

                              111                        EXHIBIT 8

1  TO THE CLERK OF THE ABOVE ENTITLED COURT AND TO

2  PLAINTIFF MATTEL, INC. AND ITS ATTORNEYS OF RECORD:

3  　　　PLEASE TAKE NOTICE that Defendant and Cross-Plaintiff Carter Bryant

4  ("Mr. Bryant") hereby removes the above-entitled action filed by Plaintiff and Cross-

5  Defendant Mattel, Inc. ("Mattel") from the Superior Court of the State of California

6  for the County of Los Angeles to the United States District Court for the Central

7  District of California.

8  　　　　**JURISDICTION AND VENUE [LOCAL RULE 3.7.1]**

9  　　　1.　　As discussed herein, this Court has original jurisdiction under 28

10  U.S.C. Section 1332(a)(1), and this case may be removed pursuant to the provisions of

11  28 U.S.C. Section 1441(a) and 1446, because this is a civil action wherein the matter

12  in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00)

13  exclusive of interest and costs, and is between "citizens of different States." 28

14  U.S.C. § 1441 (a).

15  　　　2.　　As further discussed herein, this Court also has original jurisdiction

16  under 28 U.S. C. Section 1331, and this case may be removed pursuant to the

17  provisions of 28 U.S.C. Section 1441 (b) and 1446 without regard to the citizenship or

18  residence of the parties or the amount in controversy, because Mattel's claim for

19  conversion is completely preempted by the federal Copyright Act. 17 U.S.C. §

20  301(a). This preemption creates federal removal jurisdiction because the state law

21  claim, no matter how cast, must be recharacterized as a claim arising under federal

22  law and is, thus, removable to federal court. Dielsi v. Falk, 916 F. Supp. 985, 992

23  (C.D. Cal. 1996).

24  　　　3.　　Removal is timely because this Notice of Removal has been filed

25  with the Court and served within 30 days of Mr. Bryant receiving "through service or

26  otherwise, of a copy of an amended pleading, motion, order or other paper from which

27  it may first be ascertained that the case is one which is or has become removable," and

28  within "1 year after the commencement of the action." 28 U.S.C. § 1446(b). As set

1.

LITTLER MENDELSON

112                                        **EXHIBIT 8**

1  forth herein, the discovery produced in the last thirty days by Mattel and the pending

2  settlement offer made by Mr. Bryant establish unequivocally that this action is

3  removable.

4      4.    Venue is proper in this Court pursuant to 28 U.S.C. Sections 1391

5  and 1446.

6                    **PROCEEDINGS TO DATE**

7      5.    Mr. Bryant was a Mattel employee from September 1995 to April

8  1998, and from January 1999 to October 2000. Three and one-half years after his

9  employment ended on October 20, 2000, Mattel filed this action against Mr. Bryant

10 on or about April 27, 2004 in the Superior Court of the State of California in and for

11 the County of Los Angeles, Case Number BC 314398 (the "Compl."), asserting four

12 claims allegedly related to his employment: (1) breach of contract; (2) breach of

13 fiduciary duty; (3) breach of duty of loyalty; and (4) conversion.

14     6.    Mr. Bryant filed a cross-complaint against Mattel on or about

15 September 8, 2004 on behalf of himself and all present and former employees of

16 Mattel, Inc. and the general public, alleging claims for unfair competition, rescission,

17 declaratory relief, and fraud.

18     7.    On May 14, 2004 Bryant removed the case to Federal Court on the

19 basis of diversity jurisdiction. Mattel moved to remand, arguing that it was unclear

20 whether more than $75,000 was in controversy. Mattel feigned ignorance about the

21 amount in controversy, alleging that it was unaware of the scope of Bryant's activities,

22 so it could not say with clarity to what extent it was harmed.

23     8.    On August 24, 2004, the Honorable Nora Manella remanded the

24 case, finding that Mr. Bryant had not met his burden of proving, by a preponderance

25 of the evidence, that the Complaint put more than $75,000 in controversy. Judge

26 Manella's order, did not foreclose the possibility that the case could at a later date be

27 removed to Federal Court if Mr. Bryant could resolve the uncertainty over the amount

28 in controversy.

2.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

**EXHIBIT 8**

9.     Any uncertainty in that regard, has now been dispelled.  Based on documents and information produced by Mattel within the last month, it is absolutely certain that from its inception, the amount in controversy in this action far exceeded $75,000.  Mattel can no longer legitimately deny that fact.

10.     It is also now certain that Mattel's claim against Bryant for conversion is completely preempted by federal Copyright Law.  This serves as an independent ground for removal, regardless of whether diversity exists.  Either way, this action can, and should, proceed in Federal Court.

11.     Attached as Exhibit "A" to the Declaration of Keith A. Jacoby, dated November 1, 2004 ("Jacoby Decl.") is an index of all of the pleadings and papers filed in this case to date. Jacoby Decl. at ¶ 2.  The actual documents are filed concurrently herewith at Appendices A-M.  No other proceedings in this action have taken place in either the Superior Court for the County of Los Angeles or the United States District Court for the Central District of California, with the exception of a Complaint for Declaratory Relief, which has been separately filed by Mr. Bryant against Mattel in the United States District Court for the Central District of California. See Jacoby Decl. at  Exhibit "B" ¶ 3.

## DIVERSITY JURISDICTION - CITIZENSHIP

12.     Mattel is, and at all times relevant was, a corporation incorporated under the laws of Delaware, having a principal place of business in El Segundo, California.

13.     Mr. Bryant is, and at all times relevant was, a citizen of Springfield-Greene County, Missouri.

14.     Although the Complaint also names "Does 1 through 10, inclusive" as defendants, the citizenship of defendants sued under such fictitious names is disregarded for the purpose of determining diversity jurisdiction.  28 U.S.C. § 1441(a).

15.     Thus, complete diversity of citizenship exits.

3.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

EXHIBIT 8

## DIVERSITY JURISDICTION – AMOUNT IN CONTROVERSY

16. In a transparent effort to avoid removal of this action, however, Mattel did not allege a specific dollar amount of damages in its Complaint.

17. According to Mattel's Complaint, Mr. Bryant "wrongfully converted Mattel property" for his own benefit and the "benefit and gain of others" causing Mattel monetary damages "in an amount to be determined at trial." (Compl., ¶¶ 42, 43.)

18. Under such vaguely and broadly-worded boiler-plate language, Mattel could conceivably be trying to recover the value of anything from a pen or pad of paper to truckload of collectible "Barbie" dolls or more. In an effort to discover what specific property Mattel actually contends that Mr. Bryant "converted," and what that property might be worth, Mr. Bryant propounded several document demands requesting that Mattel produce, amongst other things: (1) documents supporting Mattel's contention that Mr. Bryant converted, used, sold, assigned or transferred Mattel property; and (2) documents evidencing or relating to any damages Mattel claims it has suffered as a result of any act or omission of Mr. Bryant See, Carter Bryant's First Request for the Production of Documents and Things (Federal Court), dated June 14, 2004, Jacoby Decl. at Exh. "C" and ¶ 4, and Carter Bryant's First Request for the Production of Documents and Things (State Court), dated August 25, 2004, Jacoby Decl. at Exh. "D" and ¶ 5.

19. To date, Mattel has mightily resisted Mr. Bryant's efforts to pin Mattel down on the value of the property it alleges Mr. Bryant stole, and has refused to meaningfully respond to Mr. Bryant's requests seeking damage-related documents. Nonetheless, from Mattel's responses to Mr. Bryant's efforts to determine *the nature* of the allegedly stolen property, and other recent events, Mattel can no longer hide the basis for its conversion claim.

20. A series of documents produced by Mattel in support of its purported conversion claim, and other recent events, lead inexorably to the conclusion

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

4.

EXHIBIT 8

115

1  that Mattel's conversion claim is based on the contention that Mr. Bryant stole

2  *intellectual property* from Mattel and not simply that Mattel is seeking to recover the

3  value of Mr. Bryant's services to Mattel in September and October of 2000.  This

4  allegedly "converted" intellectual property is purportedly the source of origin for the

5  widely acclaimed and immensely successful line of fashion dolls called "Bratz," worth

6  millions.  Mr. Bryant allegedly copied the idea, concept, or work from Mattel, sold it

7  to one of Mattel's competitors, MGA Entertainment, Inc. ("MGA"), and is now

8  reaping the rewards of this alleged theft, together with MGA.

9         21.    For example,[1]

10     •   On August 12, 2004, Mattel produced a July 16, 2003 Wall Street Journal

11         article in which unnamed Mattel employees imply that Mr. Bryant copied

12         "Bratz" from a project done by Mattel employee Lily Martinez:

13
14                 Inside Mattel, some are convinced the "Bratz" borrow liberally
                   from a Mattel project that was scrapped at the testing stage in
15                 1998.  Mattel declined to comment.  Mr. Bryant didn't work on
                   the line that Mattel scrapped, according to former and current
16                 Mattel designers.  But most Barbie designers had seen the
                   prototypes, his former colleagues say. . . . the "Bratz"' oversized
17                 heads – with their pursed lips and cartoonist eyes – are 'virtually
                   identical' to the heads of the dolls her team created, says the
18                 designer, who left Mattel in 2001. . . . 'Anyone who passed by
                   her cubicle would see the picture up on the wall,' says another
19                 designer who also left Mattel in 2001.  'The big heads, the big
                   eyes, the big feet – they were all the same' as the "Bratz".
20
21
22     •   On August 16, 2004 and October 8, 2004, Mattel produced what Mattel

23         has represented to be drawings and pictures of the scrapped Mattel toy

24         concept referred to in this article, called "Toon Teens."  Jacoby Decl., ¶ 5.

25         The dates on these drawings and pictures reflect that they were created in

26         1999.

27     •   Mattel also produced a Certificate of Registration of the Copyright for the

28  _____

[1] Each of the listed documents is available to the Court for *in camera* inspection.



5.

EXHIBIT 8

116

1    "Toon Teens" drawings, filed by Mattel's counsel in this case, Quinn

2    Emanuel Urquhart Oliver & Hedges LLP.  Notably, the registration was

3    filed on November 28, 2003, four years after the drawings were allegedly

4    created, but contemporaneous with the "late November 2003" date on

5    which Mattel says it first discovered Mr. Bryant's alleged wrongdoing.

6    (Compl. ¶ 12.)  This timing was not coincidental -- copyright registration is

7    a prerequisite for bringing a copyright infringement action.  17 U.S.C. §

8    411 (a); Loree Rodkin Management Corp. v. Ross-Simons, Inc., 2004 WL

9    943454 **1 (C.D. Cal. 2004); Jefferson Airplane v. Berkeley Sys., Inc.,

10   886 F. Supp. 713, 714 (N.D. Cal. 1994).

11   •   On October 11, 2004, Mattel produced evidence that it has a document

12       swapping agreement with the defendants in a lawsuit in Hong Kong. In

13       that lawsuit, MGA alleges that certain third party entities are infringing the

14       "Bratz" copyrights.  Pursuant to this agreement, Mattel is assisting the

15       defendants in advancing the arguments that "Bratz" originated with Mattel,

16       not Bryant, and that Mattel owns the rights to "Bratz."  The Hong Kong

17       defendants seek to use this argument to undermine MGA's assertion that

18       their product "Funky Teens" is a knockoff of "Bratz."

19   •   On October 13, 2004, Mattel produced evidence that an anonymous letter

20       to Mattel's CEO, Robert Eckert, triggered a 2002 investigation into Mr.

21       Bryant's conduct.  This anonymous letter alleges that Mr. Bryant stole the

22       "Bratz" idea from Mattel.

23   •   In addition, Mattel has been aggressively pursuing discovery on all fronts

24       to obtain information about "Bratz."  Over a dozen document requests have

25       been directed at obtaining Bryant documents relating to "Bratz," and on

26       October 28, 2004 and again on October 30, 2004, Mattel's counsel

27       informed counsel for Mr. Bryant it would no longer honor a previously

28       agreed upon discovery limitation, that Mattel would seek only documents

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

6.

**EXHIBIT 8**

1    related to the "first generation of "Bratz" designs."

2         22.    Perhaps most telling of all, during an October 26, meet and confer

3    regarding discovery directed at Mattel, Mr. Bryant's counsel was asked if Mattel

4    would stipulate that Mattel was *not* contending that Mr. Bryant copied "Bratz" from

5    "Toon Teens" and that the existence of "Toon Teens" does not provide any basis for

6    Mattel to claim a right to "Bratz." *Mattel refused.*

7         23.    Putting two and two together, there is no doubt whatsoever that

8    Mattel has brought this action to, in effect, re-possess what it contends was stolen

9    from it, "Bratz," and to claim all benefits derived from "Bratz" as its own. (See, e.g.,

10   Compl. at 11 (Prayer for Relief).)

11        24.    Mr. Bryant's interest in "Bratz" is, without question, worth *far*

12   more than $75,000, and at a minimum that interest is what Mattel seeks. Mattel can

13   no longer credibly assert that it does not know with certainty that more than $75,000

14   is in controversy. As stated in the Declaration of Carter Bryant submitted with his

15   original removal petition, Mr. Bryant has earned well in excess of $75,000 in

16   connection with his work on "Bratz."

17        25.    Indeed, on November 1, 2004, Mr. Bryant formally extended an

18   offer to Mattel to settle this case for $375,000. If Mattel truly believed that less than

19   $75,000 were in controversy here, it would make no logical sense to reject an offer

20   five times larger than that amount, for any reason. Mattel's failure to accept an offer

21   far in excess of $75,000 is simply further proof that much more than $75,000 is in

22   controversy.

23        26.    Numerous cases that hold that settlement offers are probative of

24   the amount in controversy. See, e.g., Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th

25   Cir., 2002); Arellano v. Home Depot U.S.A., Inc., 245 F. Supp. 2d 1102, 1108 (D.

26   Cal., 2003) ("Settlement letters are 'relevant evidence of the amount in controversy.")

27   (quoting Id. (internal quotes omitted)); see also Del Real v. HealthSouth Corp., 171 F.

28   Supp. 2d 1041 (D. Ariz., 2001) (settlement letter, taken together with Plaintiff's

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
(310) 553 0308

7.

EXHIBIT 8

1   allegations, demonstrate amount in controversy); Jackson v. American Bankers

2   Insurance Co., 976 F. Supp. 1450, 1997 WL 592377 at 5 (S.D. Ala. 1997) ("If

3   plaintiffs are willing to settle the case for the sum of $ 70,000, then it follows a fortiori

4   that plaintiffs would expect to receive considerably more than $ 70,000 at trial. This is

5   so, because the settlement offer is only economically rational on plaintiff's behalf if

6   the true expected litigation value of the case is at least $ 70,000 plus the considerable

7   costs of the discovery process and actually conducting the trial of the matter.")

8          27.    In addition, Mattel also seeks to recover an unspecified amount of

9   punitive damages against Mr. Bryant. (Compl. ¶ 11.) Although Mr. Bryant denies

10  that he is liable for any form of damage whatsoever, including punitive damages, "it is

11  well established that punitive damages are part of the amount in controversy in a civil

12  action." Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001). Further, Mr.

13  Bryant may present evidence of California court decisions and jury verdicts from

14  similar cases to satisfy his burden of demonstrating, by a preponderance of the

15  evidence, that the amount in controversy is more than $75,000. California court

16  decisions and jury verdicts demonstrate that punitive damages in excess of $75,000

17  have been awarded to individual plaintiffs where the plaintiff has alleged and

18  prevailed on a conversion claim.  See e.g. Leatherman Tool Group, Inc. v. Cooper

19  Industries, Inc., 289 F.3d 1146 (9th Cir. 2002) (approving $500,000 punitive damages

20  award for improper use of a photograph of competitor's product in connection with

21  $50,000 compensatory damages award).

22         28.    In sum, the preponderance of the evidence now clearly establishes

23  that Mattel has placed far more that $75,000 in controversy, and removal is, therefore,

24  proper based on diversity. See DeAguillar v. Boeing Co., 47 F.3d 1404, 1412 (5th

25  Cir. 1995) (removal proper where "the defendant can show by a preponderance of the

26  evidence that the amount in controversy is greater than the jurisdictional amount");

27  accord Gaus v. Miles, Inc., 980 F.2d 564, 566-67 (9th Cir. 1992).

28

LITTLER MENDELSON
& Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

8.

EXHIBIT 8

FEDERAL QUESTION

29.   It is also more than apparent now that removal is necessary and proper for the separate and independent reason that Mattel's Complaint includes a claim that is completely preempted by federal copyright law. See Dielsi v. Falk, 916 F. Supp. 985, 992 (C.D. Cal. 1996).

30.   Generally, preemption does not provide grounds for removal to federal court because it is most typically a defense that does not appear on the face of the complaint. Id. However, in certain circumstances, "the preemptive force of the federal law is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for the purposes of the well-pleaded complaint rule." Id. (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987))(internal quotes and cite omitted).

31.   Under this principle, preempted copyright claims can be removed to federal court because "Congress has clearly indicated that state-law claims which come within the subject matter of copyright law and which protect rights equivalent to any of the exclusive rights within the scope of federal copyright law. . . should be litigated *only as federal copyright claims."* Id. (quoting Rosciszewski v. Arete Assocs., 1 F.3d 225, 232 (4th Cir. 1993)); see also Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1189 (C.D. Cal. 2001) (preemption occurs when: (1) the work at issue comes within the subject matter of copyright; and (2) the rights granted under state law are equivalent to those protected by the Copyright Act).

32.   Applying this test to an alleged conversion of intellectual property, the California District Court for the Central District has unequivocally held that such a claim is properly removed because it is "part and parcel" of a copyright claim and, hence, completely preempted by federal copyright law. Dielsi, 916 F. Supp. at 992; see also Del Madera Properties v. Rhodes & Gardenr, Inc., 820 F.2d 973, 977 (9th Cir. 1987); Ehat v. Tanner, 780 F.2d 876, 878 (10th Cir. 1985). Regardless of how the claim is cast, complete preemption creates federal removal jurisdiction because the

9.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

EXHIBIT 8

1  state law claim must be recharacterized as a claim arising under federal law and, thus,

2  removable to federal court.  See Dielsi, 916 F. Supp. at 992; see also, e.g.,

3  Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987).

4        33.    This principle applies here.  Mattel has sued Bryant for the alleged

5  "conversion" of Mattel's *"ideas, concepts, rights, designs, proprietary information,*

6  *and other intellectual property and intangible property."* (Compl. ¶ 41 (emphasis

7  added).)

8        34.    Though up until now, Mattel has hidden behind the ambiguity of

9  its pleading to resist removal, and create uncertainty as to the exact nature of its

10  conversion claim, it can do so no longer.  The right to remove based on preemption

11  has been triggered by what is now, as discussed above, the unequivocal revelation that

12  the Mattel's claim is based on the alleged copying and "conversion" of *intellectual*

13  property.  See Akin v. Big Three Indus., Inc., 851 F. Supp. 819, 825 (E.D. Texas

14  1994).  Mattel's alleged "conversion," including the copying or "conversion" of

15  intangible, intellectual property, "ideas" and "concepts," is the equivalent of a

16  copyright claim.  Dielsi, 916 F. Supp. at 992.  Even though "ideas" or "concepts" are

17  not protectable under copyright, courts have nonetheless consistently held that they

18  fall within the "subject matter of copyright" for the purposes of a preemption analysis.

19  Entous v. Viacom Int'l, Inc., 151 F. Supp. 2d 1150, 1159 (C.D. Cal. 2001) (citing

20  Selby v. New Line Cinema Corp., 96 F. Supp. 2d 1053, 1058 (C.D.Cal. 2000) (ideas

21  embodied in a work covered by the Copyright Act are nevertheless within the subject

22  matter of copyright for purposes of preemption because scope and protection are not

23  synonymous)); Idema, 162 F. Supp. 2d at 1189 ("The work(s) upon which a state law

24  claim is based need only be within the 'subject matter' of copyright; their actual

25  protection thereunder is irrelevant to a preemption analysis.").

26        35.    Removal jurisdiction exists, accordingly, under 28 U.S.C. § 1441.

27  Dielsi, 916 F. Supp. at 993, independent of diversity.

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

10.

**EXHIBIT 8**

36.     Indeed, having now determined with certainty that Mattel is attempting to at a minimum cloud his interest in "Bratz," and at most obtain complete control over "Bratz" by taking the position that Mr. Bryant either copied Mattel's works or created "Bratz" while employed by Mattel and recognizing that copyright issues cannot be resolved in state court – Mr. Bryant has filed his own Complaint against Mattel in the United States District Court for the Central District of California requesting a Declaratory Judgment of Non-Infringement.  Because Bryant's Declaratory Judgment action and Mattel's action are intimately related, and each seek to establish whether Mr. Bryant stole, copied or converted Mattel's works, Mr. Bryant respectfully suggests that these actions should be consolidated in the interests of judicial economy.

37.     Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of such filing will be given by the undersigned to Mattel's counsel of record, Quinn Emanuel Urquhart Oliver & Hedges, LLP, and a copy of the Notice of Removal will be filed with the Clerk of the Court for the Superior Court of the County of Los Angeles, California.

Dated:  November 2, 2004

ROBERT F. MILLMAN
DOUGLAS A. WICKHAM
KEITH A. JACOBY

KEITH A. JACOBY
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant and Cross-Plaintiff CARTER BRYANT

Los_Angeles:381575.3 028307.1010

11.

EXHIBIT 8

122

**EXHIBIT 9**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

November 4, 2004

<u>VIA FACSIMILE</u>
<u>AND U.S. MAIL</u>

Robert Millman, Esq.
Douglas Wickham, Esq.
Littler Mendelson
2049 Century Park East, 5th Floor
Los Angeles, California 90067

<u>Mattel v. Bryant</u>

Dear Counsel:

I write pursuant to Local Rule 7-3. Mattel intends to file a motion to remand the *Mattel, Inc. v. Bryant* action to Los Angeles County Superior Court. The grounds for Mattel's motion will be as follows:

- defendant has failed to meet his burden of proving, by a preponderance of the evidence and with specific facts, that the amount in controversy in the suit exceeds $75,000, exclusive of costs and interest. Because defendant has not established the existence of this jurisdictional prerequisite, removal was improper and remand is required. *E.g., Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997);

- defendant waived any right to remove the case by failing to file notice of removal within 30-day time limit of 28 U.S.C. 1446(b) or within 30 days of getting "new information" that case was removable;

- defendant waived any right to removal by taking actions in state court that manifest his intent to have the matter adjudicated there; and

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Suite 3, Indian Wells, California 92210 | TEL 760-837-5150 FAX 760-837-5151
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-813-3800 FAX 858-813-3801

**EXHIBIT 9**

- defendant's conduct violates the ban on a second removal on the same grounds as a prior removal.

Mattel also intends to seek an award of its attorney's fees because of the "wholly unnecessary litigation costs" that defendant is forcing Mattel to incur as a result of the removal and remand. 28 U.S.C. § 1447(c). If you would like to discuss this matter further, please contact me at your convenience.

Very truly yours,

Jon D. Corey

07209/617151.1

124                                                    **EXHIBIT 9**

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

SAN DIEGO
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

PALM SPRINGS
45-025 Manitou Drive, Suite 8
Indian Wells, CA 92210
(760) 345-4757
Facsimile: (760) 345-2414

LOS ANGELES
865 So. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

NEW YORK
335 Madison Avenue, 17th Floor
New York, NY 10017-4611
(212) 702-8100
Facsimile: (212) 702-8200

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

DATE:   November 2, 2004

NUMBER OF PAGES, INCLUDING COVER: 3

TO/COMPANY:

| NAME | PHONE NO. | FAX NO. |
|---|---|---|
| **Robert Millman, Esq.**<br>**Douglas Wickham, Esq.**<br>Littler Mendelson, P.C. | 310-553-0308 | 310-553-5583 |

FROM:   Jon D. Corey

RE:   Mattel v. Bryant

MESSAGE:

Please see attached correspondence.



| CLIENT #:   7209 | ROUTE/<br>RETURN TO:   **Ivana Maiorano** | ☐ CONFIRM FAX<br>☐ INCLUDE CONF. REPORT |
|---|---|---|
| OPERATOR: | CONFIRMED? ☐ No ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

EXHIBIT 9

Confirmation Report — Memory Send

```
                                    Page         : 001
                                    Date & Time: Nov-05-04  10:33am
                                    Line 1       : 2136240643
                                    Line 2       :
                                    Machine ID : QUINN EMANUEL
```

| | | |
|---|---|---|
| Job number | : | 730 |
| Date | : | Nov-05 10:32am |
| To | : | ☎9350♯7209♯13105535583♯ |
| Number of pages | : | 003 |
| Start time | : | Nov-05 10:32am |
| End time | : | Nov-05 10:33am |
| Pages sent | : | 003 |
| Status | : | OK |

Job number   : 730                  *** SEND SUCCESSFUL ***

## QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

SAN DIEGO
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

PALM SPRINGS
46-024 Monterey Drive, Suite 3
Indian Wells, CA 92210
(760) 345-4787
Facsimile: (760) 345-9414

LOS ANGELES
865 So. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

NEW YORK
335 Madison Avenue, 17th Floor
New York, NY 10017-4611
(212) 702-8100
Facsimile: (212) 702-8200

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

### LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

DATE:   November 2, 2004

NUMBER OF PAGES, INCLUDING COVER: 3

TO/COMPANY:

| NAME | PHONE NO. | FAX NO. |
|---|---|---|
| Robert Millman, Esq.<br>Douglas Wickham, Esq.<br>Littler Mendelson, P.C. | 310-553-0308 | 310-553-5583 |

FROM:   Jon D. Corey

RE:     Mattel v. Bryant

MESSAGE:

Please see attached correspondence.

| | | |
|---|---|---|
| CLIENT #:   7209 | ROUTE/<br>RETURN TO:  Ivana Maiorano | ☐ CONFIRM FAX<br>☐ INCLUDE CONF. REPORT |
| OPERATOR: | CONFIRMED? ☐ No ☐ Yes | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

EXHIBIT 9

**EXHIBIT 10**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES-GENERAL

_____ Priority
__✓__ Send
_____ Clsd
_____ Enter
_____ JS-5/JS-6
_____ JS-2/JS-3

CASE NO.  CV 04-09059-NM(RNBx)                    DATE: December 2, 2004

TITLE:   MATTEL, INC., etc. -v- CARTER BRYANT, etc.,

PRESENT:

HON. NORA M. MANELLA JUDGE

K. Leigh Ray                          N/A
Deputy Clerk                          Court Reporter

ATTORNEY FOR PLAINTIFF              ATTORNEY FOR DEFENDANT
N/A                                    N/A

PROCEEDINGS (IN CHAMBERS):  BRIEFING SCHEDULING ON PLAINTIFF
AND  COUNTER-DEFENDANT'S
MOTION FOR ORDER REMANDING
ACTION (filed 12/1/04)

The Court sets the following briefing schedule for Plaintiff and Counter-Defendant's
Motion for Order Remanding Action.  Opposition to be filed no later than December
22, 2004, reply if any to be filed no later than January 5, 2005.  The motion remains
set for hearing on **January 31, 2005, at 10 am.**

DOCKETED ON CM
DEC 3 2004
BY _____ 006

35

cc: Counsel

MINUTES FORM 11

CIVIL-GEN

's of Deputy Clerk

127                                                           **EXHIBIT 10**

**EXHIBIT 11**

RECEIVED

~~ 2 8 ~~

WORKING COPY

✓ Priority
____ Send
____ Clsd
____ Enter
____ JS-5/JS-6
____ JS-2/JS-3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES-GENERAL

CASE NO.  CV 04-09059-NM(RNBx)                    DATE:  1/25/05

TITLE: Mattel, Inc., -v- Carter Bryant

PRESENT:            HON. NORA M. MANELLA, JUDGE

Judith Hurley                    N/A
Deputy Clerk                     Court Reporter

ATTORNEY FOR PLAINTIFF        ATTORNEY FOR DEFENDANT

N/A                               N/A

PROCEEDINGS:  IN CHAMBERS
      On December 1, 2004, Mattel, Inc. ("Mattel") filed a Motion to Remand.  The court orders supplemental briefing on the following issues:

      1.      Was the intervention of MGA Entertainment ("MGA") proper under Rule 24?

      2.      Is MGA an "indispensable party" under Rule 19(b)?

      MGA and Carter Bryant ("Bryant") shall file a brief, not to exceed ten (10) pages, addressing these issues no later than February 7, 2005.  Mattel shall also file a brief, not to exceed ten (10) pages, addressing these two issues no later than February 7, 2005.  Each side shall file a reply, not to exceed five (5) pages, no later than February 18, 2005.

cc: Counsel
CIVIL MINUTES 11

DOCKETED ON CM

JAN 2 5 2005

BY _____ 006

Initials of Deputy Clerk

EXHIBIT 11

CV004-09059-NM(RNBx)
Mattel, Inc. -v- Carter Bryant
Minute Order, 1/15/05
Page 2



The hearing date for Mattel's Motion to Remand is reset for March 7, 2005.  The hearing dates for Mattel's Motion to Dismiss Bryant's Counter-claim (2/14/05) and for Mattel's Motion to Dismiss Bryant's Complaint for Declaratory Relief (1/31/05) are vacated pending disposition of Mattel's Motion to Remand.

cc: Counsel                                    Initials of Deputy Clerk __
CIVIL MINUTES 11

**EXHIBIT 11**

**EXHIBIT 12**

1  ROBERT F. MILLMAN, Bar No. 062152
   DOUGLAS A. WICKHAM, Bar No. 127268
2  KEITH A. JACOBY, Bar No. 150233
   LITTLER MENDELSON
3  A Professional Corporation
   2049 Century Park East, 5th Floor
4  Los Angeles, CA 90067.3107
   Telephone: 310.553.0308
5  Facsimile: 310.553.5583
   Attorneys for Plaintiff
6  CARTER BRYANT

7

8

9                        UNITED STATES DISTRICT COURT

10                      CENTRAL DISTRICT OF CALIFORNIA

11

12  CARTER BRYANT, an individual        Case No.

13                  Plaintiff,          COMPLAINT FOR:

14       v.                             DECLARATORY RELIEF OF
                                        COPYRIGHT NON-
15  MATTEL, INC., a Delaware            INFRINGEMENT
    corporation
16
                    Defendant.
17

18

19

20

21

22

23

24

25

26

27

28

                                130                    **EXHIBIT 12**

1        Plaintiff Carter Bryant ("Bryant") for his complaint against Defendant

2  Mattel, Inc. ("Mattel") alleges as follows:

3  **PARTIES**

4      1.    Bryant is an individual residing in Springfield-Greene County,

5  Missouri.

6      2.    Bryant is informed and believes, and based thereon alleges, that Mattel

7  is a Delaware corporation with a principal place of business at 333 Continental

8  Boulevard, El Segundo, California.

9  **JURISDICTION AND VENUE**

10      3.    This is an action under 28 U.S.C. §§ 2201 and 2202 for declaratory

11  relief and further relief based upon a declaratory judgment or decree and the

12  Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* This Court has original subject

13  matter jurisdiction over Bryant's claim pursuant to 28 U.S.C. §§ 1331 and 1338(a)

14  & (b).

15      4.    This Court has personal jurisdiction over Mattel, as it conducts

16  continuous, systematic and routine business within the State of California and the

17  County of Los Angeles.

18      5.    Venue is proper in the United States District Court for the Central

19  District of California pursuant to 28 U.S.C. §§ 1391(b) & (c).

20  **BACKGROUND FACTS**

21      6.    Bryant is the creative genius and inspiration behind an immensely

22  successful line of fashion dolls called "Bratz."

23      7.    Since its debut on the market in June, 2001, the "Bratz" line has

24  revitalized and invigorated the fashion-doll industry, long dominated by Mattel's

25  "Barbie" dolls.

26      8.    Mattel, however, does not like the competition.

27

28

131

**EXHIBIT 12**

9.     First, Mattel, the world's largest toy company, tried, and failed, to drive "Bratz" out of the market by, *inter alia,* introducing competing products that copy the fresh, new and trendy look of "Bratz."

10.     When this failed, Mattel resorted to other tactics – suing Bryant, three and one half years after the launch of "Bratz," in California state court accusing him, among other things, of the alleged "conversion" of Mattel's "ideas, concepts, rights, designs, proprietary information, and other intellectual property and intangible property."

11.     Recent events discussed herein reveal what Mattel intends by this vague and overly-broad pleading.  Mattel intends to try to obtain control over the rights to "Bratz," apparently based, in whole or in part, on grounds that "Bratz" was allegedly copied from and infringes upon a scrapped Mattel project called "Toon Teens," or some other as yet undisclosed Mattel property, which Bryant was supposedly exposed to during a period of time when he was employed by Mattel.

12.     Bryant did not copy or infringe anything in coming up with "Bratz." Since these copyright issues cannot be resolved in state court, due to federal preemption, Bryant has a reasonable fear that Mattel will bring another lawsuit against him for copyright infringement.

13.     Bryant brings this action, accordingly, for a Declaratory Judgment that his past, present, and continuing contributions to and work on the conception and development of "Bratz" did not and do not violate or infringe any copyrights or intellectual or other property owned by Mattel.

### Carter Bryant's Background

14.     Bryant is a creative, innovative, artistic person who since an early age has had a special interest in dolls and fashion design.

15.     As a young boy, when his family could not afford to buy him toys, Bryant would draw them.  Dolls and puppets were particular favorites.  While still very young, Bryant began constructing marionettes from papier-mache.

EXHIBIT 12

16.     By age nine, Bryant had begun to draw fashions.  Fashion soon became a passion.  He bought books on Hollywood costume design and studied them intensely.  He made designs for his puppets and drew characters and outfits for them.  He even won a contest drawing "Archie" comic book characters and considered becoming a comic book artist.

17.     Bryant took art classes throughout junior high and high school.  He also began reading, and studying, fashion magazines such as "Vogue" and "Harper's Bazaar," thinking he might one day have a career in fashion design.  He began creating his own fashions based on what he saw in such magazines.

18.     After high school, Bryant considered going to design school, but gave up the dream when he realized that his family could not afford to send him.

19.     Instead, he tried songwriting for a while, and even formed a band in 1988.  For several years, he took dead-end jobs to make ends meet, such as stocking shelves at Toys 'R' Us.  But Bryant never let go of his dream, or gave up his interest in drawing and design.

20.     In 1993 he applied and was accepted to Parsons School of Design in Paris.  Based on the information contained in Parsons' website, since its founding in 1896, Parsons has been a forerunner in the field of art and design and was the first art and design school in America to found a campus abroad in 1920.

21.     Unfortunately, despite loans and work programs, attendance was cost-prohibitive.  Bryant went, instead, to Otis College of Art and Design in Los Angeles.  According to its website, Otis began in 1918, when Los Angeles Times founder Harrison Gray Otis bequeathed his MacArthur Park property for a public art college.  Otis is a four-year college offering bachelor's degrees in a variety of art and design-related areas including architecture, fine arts, fashion design and toy design.

22.     On an accelerated track, Bryant finished his entire first year in just 5 months, from January to June of 1994.  He then applied and was accepted to

4

EXHIBIT 12