1  transfer to Parsons, however, again he could not raise enough money to go. He
2  stayed one more semester at Otis, but with only a small scholarship and mounting
3  debt, Bryant left the school in December, 1994. He went home to Missouri for
4  Christmas and ended up staying.

5      23.    Realizing that going to Paris and working as a fashion designer was
6  simply not economically feasible, Bryant got the idea that he might be able to
7  combine his love of dolls and fashion by becoming a fashion designer for dolls in
8  the toy industry. Naturally thinking of "Barbie," the fashion doll that had
9  dominated the market for decades, he put together a portfolio of ten or so drawings
10 to send to Mattel, but lacked the confidence to actually send it to such a huge,
11 intimidating company.

12     24.    By 1995, however, he decided he had nothing to lose. Broke and with
13 no real career opportunities in sight, Bryant sent the package to Mattel.

14                  **Bryant's Employment by Mattel**

15     25.    Much to his surprise, Mattel called him for an interview. After
16 completing a "trial project" for the company at its request prior to his being
17 considered for formal employment, he was hired as a temporary employee in
18 September, 1995. He was promoted to a full-time position in November, 1995.

19     26.    During his time at Mattel, Bryant worked exclusively on "Barbie"-
20 related projects for the "Barbie" family of dolls, as directed by Mattel's marketers.
21 Mattel told him what they wanted him to design, and he did what he was directed to
22 do.

23     27.    On occasion, Bryant would offer new, original and creative ideas to
24 Mattel, but Mattel discouraged anything non-traditional. No matter what the idea
25 was, Mattel would try to figure out a way to use it for "Barbie," or not at all.

26     28.    Bryant felt that his creativity and originality were being stifled and
27 suppressed at Mattel.

28

EXHIBIT 12

29.     Within two years at Mattel, Bryant was feeling frustrated.  He simply did not fit Mattel's mold.  He also missed his family, and so decided to return home to Missouri.  With some significant design and work experience under his belt, he thought he might be able to build a career as a freelance design artist.

30.     He left California in approximately January 1998, but continued to work for Mattel from Missouri, on a part-time basis, until April, 1998.

### Bryant's Inspiration: "Bratz"

31.     Bryant continued to live with his parents in Missouri for the rest of the 1998, working exclusively on his own ideas and drawings, with the hopes of building a career as a freelance artist.

32.     Among other things, Bryant created greeting cards, and considered going into the greeting card business.  He even applied for a job at Hallmark. Bryant also did a bit of freelance design and artwork for Ashton Drake Galleries of Chicago.  On information and belief, Ashton Drake is the world's largest direct marketer of limited edition, collectible porcelain dolls, and its dolls have sold at auction for as much as $1200.  It is widely renowned among doll collectors for its top-quality, handcrafted collectible dolls.  Ashton Drake employs artists and freelancers to work on its doll programs and new doll concepts.  Bryant worked on "Angel" and "Wedding" theme projects for the company in 1998.  He supplemented his income by working at a clothing store, Old Navy.  But Bryant also worked on his own ideas for dolls – his lifelong obsession.  One day, while returning home from Old Navy, Bryant drove past a high school and had a "eureka" moment.  Inspired by the "bratty" attitude he had observed, as well as advertisements that he had seen relating to hip-hop fashions and other trends of the time, Bryant started sketching multi-ethnic, urban youth, dressed in trendy fashions.  Bryant tried to capture in his sketches the "bratty" attitude he had observed.  Little did he know then that his concept, "Bratz," would become a national, indeed, international, sensation.

6

EXHIBIT 12

135

33.     Bryant was simply trying to figure out a way to make a living doing what he enjoyed.  Unable to support himself as a freelance artist, however, and turning thirty and not wanting to live at home forever, Bryant realized he needed a steady job.  Based on Mattel's comments to him before he left its employ in 1998 indicating an interest in having him remain with the company, he reapplied and secured a position with Mattel starting in January 1999.

34.     Mattel hired Bryant back to work exclusively on Mattel's "collectibles" line, a high-end, expensive line of "Barbie" dolls designed for adult doll collectors, not children.  He began working for the company again on January 4, 1999.  Again, Mattel's marketing department directed Bryant to create the designs it wanted to market.

35.     Bryant never showed Mattel the ideas, drawings, designs and concepts that he had worked on on his own while he had been gone from the company, including the concept for what later became the "Bratz" dolls.  He already knew that Mattel was not receptive to new, creative, innovative ideas.  Besides that, they were his, and he was afraid that Mattel would not give him credit or compensation.

36.     One day he happened to show his concept for "Bratz" dolls to a friend who did freelance work for MGA Entertainment, Inc.  ("MGA").

37.     Bryant's friend thought that MGA might be interested in talking to Bryant, and arranged a meeting.

38.     MGA ultimately offered Bryant a consulting arrangement.  His agreement with MGA was signed on or about October 4, 2000.  Bryant resigned from Mattel immediately, giving two weeks notice, but stayed at the company until October 20 to finish up and transition the projects on which he had been working.

39.     On information and belief, MGA was founded in 1979 as a small consumer electronics business and made its first foray into the toy business in 1987 marketing handheld LCD games featuring licensed "Nintendo" characters, where its initial success allowed it the opportunity to obtain additional licenses for such

7

EXHIBIT 12

1    popular properties as the "Power Rangers" and others.  By the time Bryant started

2    working for MGA in late 2000, the company was selling other kinds of toys and

3    dolls.

4        40.    After leaving Mattel, Bryant began working with a team of MGA

5    employees and freelancers to develop and physically embody Bryant's concept.

6    The development took substantial time, effort, creativity, money, and know-how,

7    but with this effort, Bryant's concept for "Bratz" dolls was reduced to practice and

8    became a reality.

9                    **"Bratz" Dolls Revolutionize The Fashion Doll Market**

10       41.    MGA first unveiled the "Bratz" doll concept at the Hong Kong Toy

11   Fair in January 2001.  In June 2001, MGA introduced the line to the market.

12       42.    Unlike Barbie Dolls, the "Bratz" line of dolls and branded products

13   (collectively "Bratz Dolls") sport a hip, multi-ethnic urban look that appeals to

14   contemporary teenage and pre-teen girls.  At approximately 9.5 to 10 inches tall,

15   the Bratz Dolls are intentionally shorter than Barbie Dolls and look notably

16   different, with large heads, big dramatic eyes and lips, small, thin bodies, oversized

17   feet (to emphasize shoe fashion and to stand on their own, unlike "Barbie," which

18   requires a stand), and up-to-date fashions.

19       43.    Featuring and embodying the slogan "The Girls With a Passion for

20   Fashion!", Bratz Dolls, invigorated, transformed and expanded the fashion doll

21   market, in particular proving popular among "tween" age girls – *i.e.,* those between

22   childhood and adolescence – who Mattel had all but abandoned as a market.

23       44.    On information and belief, the "Bratz" line has been praised by

24   consumers, retailers and toy industry analysts alike.  In 2001, the "Bratz" line won

25   the Toy Industry Association ("TIA") People's Choice Toy of the Year Award, the

26   Family Fun Toy of the Year Award and Toy Wishes Hot Pick Award.  In 2002, the

27   "Bratz" line again won the TIA People's Choice Toy of the Year Award, the

28   Family Fun Toy of the Year Award.  LIMA, the licensing industries official arm,

8

EXHIBIT 12

1   awarded MGA's "Bratz" the best character license of the year as well as the overall

2   best licensed property of the year for 2003. MGA's "Bratz" also earned the coveted

3   TIA "Property of the Year" and "Girl Toy of the Year," in 2003, as well as the

4   Family Fun Toy of the Year Award. MSNBC named "Bratz" the "Hottest Toy of

5   the Year," and both MGA and "Bratz" received several other accolades.

6       45.     According to media reports and business analysts, this success caught

7   Mattel by surprise, with many Mattel insiders reportedly assuming that Bratz would

8   be a short-lived fad.

9       46.     As it turned out, "Bratz" was not a fleeting fancy among young girls.

10      47.     Beginning in 2002, "Bratz" really gave "Barbie" a run for its money

11  as the top selling fashion doll.

12      48.     Bryant continues to contribute to, and provide ideas, concepts and

13  designs for "Bratz" on an ongoing basis as a designer and consultant for MGA. For

14  example, Bryant designed a wholly original male character for MGA, which was

15  turned into the "Bratz Boyz" line of dolls by MGA.

16                  **Mattel's Market Response to "Bratz"**

17      49.     In response to "Bratz", Mattel, in 2002, rushed to release "My Scene

18  Barbie," a line of fashion dolls under the "Barbie" name that looked much more

19  like "Bratz" than the traditional main line "Barbie" Doll. Like "Bratz," "My Scene

20  Barbie" dolls have oversized heads, artfully made-up almond-shaped eyes, large,

21  overly-lined and lipsticked lips, trendy clothes and hair styles, over-sized feet and a

22  more ethnic look. Like the "Bratz" Dolls, "My Scene" Dolls are packaged with two

23  outfits and an accessory. And, since fall 2003, like the "Bratz, which are

24  introduced with themes, "My Scene" Dolls are introduced with a theme as well.

25      50.     After the success of MGA's "Bratz Boyz" dolls, Mattel also

26  introduced male doll characters to the "My Scene" line, even though for 45 years

27  the "Barbie" line had only included a single male doll – Barbie's boyfriend "Ken"

28

9

**EXHIBIT 12**

1  (whom, after 45 years as her boyfriend, Barbie "dumped" in a 2004 Mattel publicity

2  stunt to revive "Barbie" in the face of the "Bratz" success).

3       51.    On information and belief, the "My Scene" Dolls, however, have not

4  come close to achieving the popularity and acclaim of "Bratz."

5       52.    A year after the debut of "My Scene," Mattel launched "Flavas," a line

6  of urban fashion dolls also intended to appeal to the "tween" market.  "Flavas,"

7  were poorly received by children, parents and the toy industry, and Mattel

8  discontinued the line less than a year after its launch.

9             **Mattel's Accusations of Copyright Infringement Against Bryant**

10      53.    Unable to supplant "Bratz" – the more popular, better quality product

11  – with the inferior and less popular "Flavas" or even "My Scene," Mattel changed

12  tactics.  It turned to disparaging Bryant, and accusing him of copying from Mattel.

13      54.    In or about July 2003, Mattel "sources" told a *Wall Street Journal*

14  reporter that "[I]nside Mattel, some are convinced the BRATZ borrow liberally

15  from a Mattel project that was scrapped at the testing stage in 1998."  Attached

16  hereto as Exhibit A is a true and correct copy of this article.

17      55.    Mattel's thinly veiled accusation of copyright infringement against

18  Bryant took more substantive form when, in April, 2004, Mattel sued Bryant in

19  California state court for, among other things, allegedly "converting" Mattel's

20  intellectual property (the "Bryant Litigation").  Bryant sought discovery from

21  Mattel, accordingly, regarding any Mattel idea, concept, project or product

22  allegedly stolen or copied by Bryant, including "Toon Teens," "Diva Stars," and

23  "My Scene."  Faced with objections from Mattel, Bryant offered to take no further

24  discovery on such issues if Mattel would enter into a fact stipulation that it would

25  not claim that Bryant copied "Bratz" from Mattel's "Toon Teens."  Mattel refused

26  to enter into such a stipulation.  For reasons unknown, Mattel has not yet sued

27  Bryant for copyright infringement.  It has, however, enlisted a surrogate to take a

28

10

**EXHIBIT 12**

1    first-run at attempting to establish infringement, perhaps intending to see what the
2    outcome might be before launching a direct attack itself.

3         56.    Specifically, in 2002, MGA filed suit in Hong Kong against the
4    manufacturers of "Funky Tweenz" (known infringers of intellectual property in the
5    toy industry) (the "Hong Kong defendants").  "Funky Tweenz" is a line of "Bratz"
6    knock-off products.  In connection with this lawsuit (the "Hong Kong Lawsuit"),
7    Bryant has been informed that MGA filed various documents substantiating its
8    ownership of "Bratz," including with regard to Bryant's involvement in MGA's
9    development of "Bratz" and in its reduction to practice of Bryant's original
10   inspirational sketches.  Bryant has also been informed that in August 2004 the
11   Hong Kong defendants produced to MGA's counsel *unreleased photographs* of,
12   and documents relating to, Mattel's "Toon Teens" project – the same project Mattel
13   had mentioned in the *Wall Street Journal* article as the supposed origin of "Bratz."
14   The Hong Kong defendants initially refused, however, to authenticate these
15   documents, or to divulge the source of these photographs.  The defendants also
16   refused to explain the purported relevance of the documents to the Hong Kong
17   Lawsuit.

18        57.    Finally, however, Bryant has been informed that on October 7, 2004,
19   the Hong Kong defendants revealed that Mattel was the source of the "Toon Teens"
20   documents and information.  Indeed, the Hong Kong defendants have revealed that
21   they – accused copyright infringers – have a document-sharing agreement with
22   Mattel.  Apparently, Mattel prefers to assist known infringers in Hong Kong in
23   trying to prove that Bryant copied Mattel in coming up with "Bratz", instead of
24   trying to prove it themselves in a United States federal court of law – or at least for
25   the time being, that seems to be Mattel's strategy.

26        58.    On information and belief, Mattel, and the same counsel representing
27   it in the Bryant Litigation, have told the Hong Kong defendants that "Bratz" is not
28   an original design and have provided documents and other information to those

11

**EXHIBIT 12**

1   defendants in an effort to assist such infringers to evade liability for copyright

2   infringement of "Bratz" in the Hong Kong action.  On information and belief,

3   Matter has told the Hong Kong defendants that the "Toon Teens" documents

4   provided to such defendants prove that Bryant copied and infringed Mattel's "Toon

5   Teens" or other Mattel property.

6        59.    Mattel even rushed to register the copyright for its long-shelved "Toon

7   Teens" during the very same month that it claims to have first learned of Bryant's

8   contract with MGA, November, 2003, and using the same counsel that Mattel is

9   using in the Bryant Litigation.  A true and correct copy of this registration is

10  attached hereto as Exhibit B.  Notably, Bryant is informed that the dates on Mattel's

11  "Toon Teens" drawings and pictures reflect that they were created in 1999, *after*

12  Bryant conceived of "Bratz" in 1998.

13       60.    On information and belief, Mattel's copyright registration of "Toon

14  Teens" is no coincidence; it is a preliminary step necessary for Mattel to sue Bryant

15  for copyright infringement.

16       61.    There is no doubt that Mattel intends to get back at Bryant via false

17  allegations and to try to obtain control of Bryant's brainchild any way it can,

18  including falsely alleging that "Bratz" is nothing more than derivative of Mattel's

19  own work(s).  This is wholly untrue.  "Bratz," is an original idea and concept,

20  independently conceived and created during a time when Bryant was not working

21  for Mattel.  The fact that MGA reduced the original designs to practice and further

22  developed "Bratz" into a highly successful product that now competes directly with

23  and has taken market share from Mattel's "Barbie" line of fashion dolls, including

24  as a result of the "Bratz"-inspired and imitating dolls distributed by others, is not to

25  be under-estimated.

26

27

28

12

**EXHIBIT 12**

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment of Non-infringement)

62.    Bryant repeats and realleges the allegations contained in paragraphs 1 through 61 of this Complaint and incorporates them by reference, as though fully and completely set forth herein.

63.    Bryant has a reasonable apprehension that Mattel will bring an action against him under 17 U.S.C.A. §§ 101, *et seq.* alleging that "Bratz" is not an independent or original work but, rather, is copied, derived from or infringes Mattel's copyrights in "Toon Teens," or some other Mattel work; that Mattel is the rightful owner of his "Bratz" idea, concept or original drawings or works and any copyrights and other intellectual property rights therein; and that Mattel alone possesses the exclusive rights to exploit such rights.

64.    Bryant contends that "Bratz" is his own independent and original idea, concept and work, that "Bratz" dolls were derived from Bryant's original idea, concept and work, and that Mattel has no right in "Bratz" whatsoever.  Bryant denies that he copied any of Mattel's property or work in conceiving and developing "Bratz," and denies that "Bratz" infringes or was derived from any Mattel property or work.

65.    Indeed, "Bratz" and "Toon Teens" are not substantially similar.  "Bratz" are sexy, hip, modern fashion dolls with up-to-date fashions, and are designed to look like real teenagers, and the "Bratz" themes and playsets are based on places and activities that real teenagers would go to and do.  Bryant is informed that "Toon Teens," in contrast, appear to be childlike, soft-bodied dolls with "baby-fat" and bright, fantasy-colored hair and are, by Mattel's own statements to the *Wall Street Journal*, "cartoonish."

66.    An actual and justiciable controversy exists between Bryant and Mattel regarding whether Bryant's  ideas, concepts, or designs for, or contributions to,

13

EXHIBIT 12

1    "Bratz" were and are original works, or copied from, derivative of or infringing on

2    Mattel's works, be it "Toon Teens," or any other unidentified Mattel work.

3        67.    This actual and justiciable controversy arises under federal copyright

4    law.

5        68.    Bryant seeks Declaratory Judgment of non-infringement; specifically

6    that his ideas, concepts, and designs for, and contributions to, "Bratz" were and are

7    original works, and were and are not copied from, derivative of or infringing on any

8    Mattel work.

9        69.    A judicial declaration of non-infringement is necessary and

10    appropriate at this time pursuant to 28 U.S.C. § 2201, so that Bryant may ascertain

11    his rights and duties with respect to "Bratz," including but not limited to dispelling

12    any potential cloud over his ability to have assigned or otherwise transferred rights

13    to his original works to MGA. It is also necessary to clear Bryant's name and

14    mitigate the continuing damage to his reputation resulting from Mattel's unfounded

15    representations about Bryant made in the press and to the defendants in the Hong

16    Kong Litigation.

17        WHEREFORE, Bryant hereby prays for relief against Mattel as

18    follows:

19        1.      For a Declaratory Judgment of non-infringement.

20        2.      For a Declaratory Judgment that Bryant's ideas, concepts,

21    drawings and designs for, and contributions to, "Bratz" were and are independent

22    and original works, and were and are not copied from, derivative of or infringing

23    any Mattel work, including, without limitation, Mattel's copyrighted "Toon Teens."

24        3.      For a Declaratory Judgment that Bryant was the sole and true

25    owner of all rights relating to "Bratz" that Bryant heretofore assigned to MGA and

26    that such rights were owned by Bryant free and clear of any ownership claim by

27    Mattel at the time he assigned rights to MGA. .

28        4.      For a Declaratory Judgment that none of Bryant's contributions

14

EXHIBIT 12

1  to and work on "Bratz" infringes Mattel's copyrighted "Toon Teens" or any other

2  property allegedly owned by Mattel and that all such contributions to and work on

3  "Bratz" by Bryant were independent and original to Bryant.

4          5.      For costs of suit herein, including reasonable attorneys' fees,

5  and such other and further relief as the court may deem just and proper.

6

7      Dated: November 2, 2004          ROBERT F. MILLMAN
                                        DOUGLAS A. WICKHAM
8                                       KEITH A. JACOBY
                                        LITTLER MENDELSON
9

10

11

12                                      By:
                                            KEITH A. JACOBY
13                                          Attorneys for Plaintiff
                                            CARTER BRYANT
14

15

16  Los_Angeles:381846.1 028307.1010

17

18

19

20

21

22

23

24

25

26

27

28

15

EXHIBIT 12

Westlaw.    factiva

7/18/03 WSJ A1    Page 1

7/18/03 Wall St. J. A1
2003 WL-WSJ 3974434

The Wall Street Journal
(Copyright (c) 2003, Dow Jones & Company, Inc.)

Friday, July 18, 2003

Dolled Up: To Lure Older Girls, Mattel Brings In Hip-Hop Crowd

---

It Sees Stalwart Barbie Lose Market Share, So 'Flavas' Will Take on the 'Bratz'

---

Battle of the Big Heads

By Maureen Tkacik

LOS ANGELES -- Tika, 10 inches tall with two-toned hair, is of ambiguous ethnic origin -- maybe she's Asian, maybe Latina -- but her "platinum" medallion, airbrushed jean jacket, shell-toe sneakers and graffiti-streaked packaging make one thing clear.

"She's like . . . hip-hop," said Crystal Audigier, 10 years old, as she rifled through the first crate of "Flavas" dolls to arrive at a Los Angeles FAO Schwarz store last week.

Mattel Inc. hopes the dolls are hip enough to take on the "Bratz." The Flavas (pronounced "Flay-vuhs," like "flavors"), a set of six dolls brought from design to production in just three months, represent a striking gamble for the giant toy company. In the 44 years since it introduced its bombshell Barbie, Mattel has rarely brought out a doll line to compete with her.

But Mattel, which had become accustomed to its buxom blonde dominating the market, has watched in alarm as Barbie has been challenged by a smaller toy maker's Bratz -- a line of big-headed, pouty-lipped characters. While Barbie, which posted about $1.7 billion in sales for Mattel last year, is still queen, her share of the so-called fashion-doll market has fallen, almost entirely due to the Bratz.

After trying -- and failing -- to defeat the Bratz with a trendier Barbie last year, Mattel has come up with a radical battle plan. Among other things, that means curtailing its reliance on, and near-reverence toward, its cash cow. While Barbie is still a plaything of choice for girls 3 to 7 years old, it's been years since she managed to hold the attention of the tweens, or 8- to 12-year-olds. With the Flavas, Mattel is trying to get back into that market -- even if it risks cannibalizing its biggest product.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT 12

145

Mattel has tweaked Barbie many times since she was introduced in 1959: bronzing
her skin during the 1970s, introducing black and Hispanic counterparts and giving
her a band (the fuchsia-clad "Rockers") during the 1980s. Mattel even shrunk her
chest and widened her hips in 1998.

But Mattel now concedes Barbie has gradually lost touch with some young girls'
lives. "Barbie began as a great girl who was simply a reflection of popular
culture, but in the past few years we had sort of put her on a pedestal," says
Matt Bousquette, president of the newly created Mattel Brands unit, which
consolidated the boys' and girls' toys divisions. "We're taking her off that
pedestal."

While Mr. Bousquette and his team overhaul Barbie, he is also enlisting the
Flavas, who wear sweats and heavy chains and have names like "Tre" and "P. Bo," as
a second force with which to fight the Bratz. Mattel says hip-hop -- which it
defines as "a cultural phenomenon . . . dimensionalized through freestyle dance,
street sports, music and fashion" -- has gained sufficient ground in the
mainstream to have its own toy line.

"Mattel is recognizing that there are other trends besides Barbie that girls want
to play with," says Manny Francione, divisional merchandise manager for Toys "R"
Us Inc., Paramus, N.J. "Hip-hop is one of those trends."

The Bratz, developed by a toy maker called MGA Entertainment Inc., North Hills,
Calif., were introduced in the summer of 2001. They became a hit with tweens, an
age group of girls that the toy industry had almost written off.

For the past decade, toy makers have been grappling with a phenomenon analysts
call "age compression," in which media-saturated youngsters are outgrowing dolls
and other toys at an earlier age. NPD Group Inc., a market-research firm, says toy
spending on children peaks at age 3 and steadily declines after that, with
spending on 12-year-olds at about a quarter of the peak level. By attracting
tweens, the Bratz bucked that trend.

Bratz "appealed to an older girl . . . who is not necessarily still a Barbie
customer," says Sean McGowan, a longtime industry analyst with Gerard Klauer
Mattison. "Nothing's ever challenged Barbie like the Bratz." At Barbie's 1997
peak, a year in which Mattel posted $1.9 billion in sales of the doll, her
clothing and accessories, she boasted more than a 90% share of the fashion-doll
market, Mr. McGowan says. Barbie held at least 85% of the market right before the
Bratz were introduced, he says, but her share has now dropped to about 70%.

The history of the Bratz is intertwined with Mattel. MGA says the Bratz were
designed by Carter Bryant, a former member of the Barbie team. Inside Mattel, some
are convinced the Bratz borrow liberally from a Mattel project that was scrapped
at the testing stage in 1998. Mattel declined to comment.

Mr. Bryant didn't work on the line that Mattel scrapped, according to former and
current Mattel designers. But most Barbie designers had seen the prototypes, his
former colleagues say. Mr. Bryant, through MGA, declined to be interviewed.

The Mattel doll line that was scrapped wasn't exactly like the Bratz, says a
longtime Mattel designer who worked on the project. But the Bratz's oversized

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT 12

heads -- with their pursed lips and cartoonish eyes -- are "virtually identical" to the heads of the dolls her team created, says the designer, who left Mattel in 2001.

Lily Martinez, a designer who still works at Mattel, came up with the idea for the big doll heads for Mattel, colleagues say. Mattel declined to comment. She even posted her sketch on her cubicle, colleagues say. "Anyone who passed by her cubicle would see the picture up on the wall," says another designer who also left Mattel in 2001. "The big heads, the big eyes, the big feet -- they were all the same" as the Bratz. Ms. Martinez declined to comment.

The Mattel dolls were scrapped in testing, current and former designers say, because Mattel had strict quotas that allowed only one "flanker brand" -- that is, a brand that would compete with Barbie for shelf space -- on the market at a time. At the time, Mattel chose a product called "What's Her Face" -- a doll with a blank face on which kids could draw expressions. That doll remains on the market; Mattel declined to discuss its sales.

Designers say they often faced a higher bar for non-Barbie projects. And Barbie's image was carefully protected. Bruce Stein, who was president of Mattel until 1998, says that former Chief Executive Jill Barad nixed an idea for "Barbie as Xena" dolls in 1998.

Ms. Barad was replaced in 2000, after Mattel's disastrous $3.5 billion acquisition of a software maker called The Learning Company. Under her successor, Robert Eckert, a former Kraft Foods president, the company has returned to profitability by cutting its work force 10%, streamlining its supply chain and developing international sales, among other things. Mattel, which reported a net loss of $431 million in 2000, reported net income of $230 million last year. Its stock has risen about 76% since Mr. Eckert arrived.

Isaac Larian, chief executive of MGA, says he had never heard of a project similar to the Bratz at Mattel. He says he chose Mr. Bryant's idea for the Bratz over several others after holding a sort of fashion-doll design contest in late 1999.

Mr. Larian, who emigrated to the U.S. from Iran, founded his company in the late 1970s, making a name by picking up the license for hand-held Pac-Man games. Though his company had made baby dolls before, it had never made fashion dolls. He says he was motivated by a challenge from a Wal-Mart Stores Inc. buyer to "give me something that can compete with Barbie."

This year, closely held MGA expects revenue of about $800 million -- with 65% of that coming from the Bratz. The company says it's profitable, but won't discuss specifics. Mr. Bryant still does design work for MGA, Mr. Larian says, and collects royalties on the Bratz line.

Mattel began worrying about the Bratz's momentum during the 2001 holiday season. Barbie sales fell 12% in the U.S. that year, despite a marketing campaign featuring an animated video, "Barbie in the Nutcracker."

By spring of 2002, Adrienne Fontanella, then president of the girls' division, decided to launch what the company termed a more "reality based" Barbie line. Like the Bratz, the "My Scene" Barbies boasted bigger heads and feet and fuller lips,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT 12

as well as trendier clothes.

Mr. Larian, the head of MGA, calls the My Scene dolls a "cheap imitation" of the Bratz. Mattel declined to comment. Introduced in October 2002, the My Scene Barbies helped Mattel's sales, but still ranked behind the Bratz during the 2002 holiday season, according to NPD. "My Scene has been just OK for us," says Fred Hurley, a longtime girls'-toys buyer for KB Toys Inc., Pittsfield, Mass.

In February, Ms. Fontanella's job, along with others, was eliminated in what Mr. Eckert called a "restructuring" of Mattel's executive ranks aimed at "increasing efficiency."

Mr. Bousquette, the then-head of Mattel's boys' toy division, became the first man to take control of Barbie in more than a decade. "It used to be that whoever ran Barbie ran the company, not the other way around," says Mr. Stein, the former president. "For Matt to be in charge is a major shift."

Mattel no longer has quotas on how many products can compete with Barbie. After sitting through a girls'-design-team presentation in March, Mr. Bousquette seized upon the Flavas as the ideal dolls to compete for the dollars of Bratz buyers. Ivy Ross, head of girls' design, suggested bringing them to market for the spring 2004 season. Mr. Bousquette said the company should aim for this July instead.

"We were stunned," says a designer who worked on the Flavas and left the company in May. Another surprise: Mr. Bousquette asked the team to make the dolls look more hip-hop than the prototypes. "No one had really believed in the concept before that meeting, and it was stuck in this back-and-forth where first they were too edgy, then they weren't edgy enough," says the designer. "Matt came through and cut all of that out." Mr. Bousquette says he told designers to make the dolls "as authentic as possible, as quickly as possible."

Flavas are more complicated to manufacture than most fashion dolls. They are all different heights -- meaning separate molds -- and they have 10 points at which they can move, allowing them to strike a variety of poses. The Flavas design team often slept in their cubicles to get the dolls ready in time for summer shipment. Two designers each clocked 53 hours during Memorial Day weekend to prepare the line for the company's annual toy fair held in the first week of June.

Some buyers have been impressed. Mattel's girls' division "has never been a particularly forward-thinking group, but the Flavas are right on trend," says KB's Mr. Hurley. The six dolls in the Flavas line are certainly edgier than anyone in Barbie's clique. The Flavas girls have highlighted hair, flashier jewelry and wear midriff-baring tops with low-slung pants. Unlike Barbie, they have flat feet and wear sneakers. The two boy Flavas dolls sport earrings and serious expressions. Boxer underwear appears to show from the top of their cargo pants.

The Flavas come in boxes splashed with black-and-white photos of urban scenes shot around Venice Beach. When arranged together, the boxes create a "graffiti" mural that reads: FA SIZZLE." It is a play on the hip-hop expression "Fa' shizzle," which means "For sure." Marketing director Lisa Tauber explains that it is also an acronym that stands for "Fashion, Attitude and Sizzlin' Style." The dolls, aimed at 9- to 11-year-olds, are "all about fearless self-expression," she says.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

**EXHIBIT 12**

MGA's Mr. Larian says he isn't scared by the Flavas. "The only thing that's missing is a cocaine vial," he says. "You think of Mattel, you think of Barbie and you think of sweetness. . . . . This is like 'gangster' Barbie, and I think it's going to backfire."

Telejah Dean, a nine-year-old from West Los Angeles noticed the Flavas last week, as she was admiring Mattel's Mary-Kate and Ashley dolls. The Flavas are "not as pretty as Barbie," she said. But her older sister, Tiffany, 22, seemed impressed by the blond Happy D. doll. "Look, she's got black [hair] extensions like Christina," she exclaimed, referring to pop singer Christina Aguilera.

In fact, Mattel has hired people to give out Flavas hats, wristbands and decals during Ms. Aguilera's concert tour this summer. Ms. Aguilera, is now probably as well known for her 11 body piercings and her mud wrestling-themed MTV video called "Dirrty."It's a sign of the changing times, says Mattel spokeswoman Julia Jensen. "The old Mattel probably wouldn't try to tie up with someone like Christina Aguilera."


                              ---- INDEX REFERENCES ----


COMPANY:          KB Holdings LLC (KBTY); Mattel Inc (MATL)


NEWS SUBJECT:    (Marketing (C31); Market Share (CJ313); Corporate/Industrial News (CCAT); Content Types (NCAT); Page-One Story (NPAG); Editor's Choice - Consumer Products (REQRCP); Editor's Choice - Industry Trends/Analysis (REQR))


INDUSTRY:        (Dolls/Toys/Games (I4941); Retail (I64); Specialty Stores (I654); Hobby/Toy/Game Stores (I6540030); Consumer Products (ICNP); Media (IMED))

REGION:          (North American Countries (NAMZ); United States (USA); United States - California (USCA); Northeast U.S. (USE); United States - Massachusetts (USMA); Western U.S. (USW))

Language: EN

OTHER INDEXING:   Marketing; Market Share; Page-One Story; Content Types; Corporate/Industrial News; United States - California; United States - Massachusetts; United States; Northeast U.S.; Western U.S.; North American Countries; Dolls/Toys/Games; Retail; Specialty Stores; Hobby/Toy/Game Stores; Consumer Products; Media; Consumer Cyclical; Newswire More Code; Newswire End Code; All Entertainment & Leisure; Limited Product Specialty Retailers; Recreational Products & Services; All Specialty Retailers; Toys; Islamic Index; S&P 500 Index component; Newspapers' Section Fronts; Marketing; Market

Word Count: 2217

7/18/03 WSJ A1
END OF DOCUMENT

                    Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

**EXHIBIT 12**

## Certificate of Registratic



This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**FORM VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE

**VAu 612 – 625**

EFFECTIVE DATE OF REGISTRATION

11 - 28 - 03
Month    Day    Year

---

**DO NOT WRITE ABOVE THIS LINE  IF YOU NEED MORE SPACE  USE A SEPARATE CONTINUATION SHEET**

**1**

Title of This Work ▼
**TOON TEENS**

NATURE OF THIS WORK ▼ See Instructions
Doll designs

Previous or Alternative Titles ▼

Publication as a Contribution If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared  Title of Collective Work ▼

If published in a periodical or serial give  Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

---

**2**
**NOTE**
Under the law the author of a "work made for hire" is generally the employer not the employee (see instructions) For any part of this work that was made for hire check "Yes" in the space provided give the employer (or other person for whom the work was prepared) as "Author" of that part and leave the space for dates of birth and death blank

**a**
NAME OF AUTHOR ▼
Mattel Inc

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR ☐ Citizen of _____
☐ Domiciled in  **United States**

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was This Author's Contribution to the Work
Anonymous?  ☐ Yes  ☒ No
Pseudonymous?  ☐ Yes  ☒ No
If the answer to either of these questions is "Yes" see detailed instructions

Nature of Authorship Check appropriate box(es) See Instructions
☐ 3 Dimensional sculpture
☒ 2 Dimensional artwork
☐ Reproduction of work of art
☐ Map
☐ Photograph
☐ Jewelry design
☐ Technical drawing
☐ Text
☐ Architectural work

**b**
Name of Author ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

Author's Nationality or Domicile
Name of Country
OR ☐ Citizen of _____
☐ Domiciled in _____

Dates of Birth and Death
Year Born ▼    Year Died ▼

Was This Author's Contribution to the Work
Anonymous?  ☐ Yes  ☐ No
Pseudonymous?  ☐ Yes  ☐ No
If the answer to either of these questions is "Yes" see detailed instructions

Nature of Authorship Check appropriate box(es) See Instructions
☐ 3 Dimensional sculpture
☐ 2 Dimensional artwork
☐ Reproduction of work of art
☐ Map
☐ Photograph
☐ Jewelry design
☐ Technical drawing
☐ Text
☐ Architectural work

---

**3**
**a** Year in Which Creation of This Work Was Completed  **1999**  Year  This information must be given in all cases

**b** Date and Nation of First Publication of This Particular Work  Complete this information  Month _____  Day _____  Year _____  Nation

---

**4**
COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2 ▼
Mattel Inc
333 Continental Blvd
El Segundo CA 90245

Transfer If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2 give a brief statement of how the claimant(s) obtained ownership of the copyright ▼

APPLICATION RECEIVED
NOV 21 2003
ONE DEPOSIT RECEIVED
NOV 2 8 2003
TWO DEPOSITS RECEIVED

FUNDS RECEIVED

---

MORE ON BACK ▶

150

**EXHIBIT 12**



151

EXHIBIT 12

**EXHIBIT 13**

Received:   6/23/04  2:09PM·   ·> quinn,samuel;  Page 2
RightFAX                 6    /2004 1:56    PAGE 002/002    1x Server

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES-GENERAL

_____ Priority
✓    Send
_____ Clsd
_____ Enter
_____ JS-5/JS-6
_____ JS-2/JS-3

CASE NO.  CV 04-03431-NM(RNBx)                    DATE: 6/22/04

TITLE: Mattel, Inc. -v- Carter Bryant

PRESENT:        HON. NORA M. MANELLA, JUDGE

Judith Hurley            N/A
Deputy Clerk             Court Reporter

ATTORNEY FOR PLAINTIFF        ATTORNEY FOR DEFENDANT
        N/A                          N/A

PROCEEDINGS:  IN CHAMBERS

        On June 18, 2004, Defendant Carter Bryant filed an Ex Parte Application for an Order Postponing Rule 26 Obligations, Staying Discovery Pending Resolution of Plaintiff's Motion for Remand, and Advancing the Hearing Date on Plaintiff's Motion for Remand to July 19, 2004. Motions before the court are scheduled for the first available hearing date. Accordingly, Defendant's request to advance the hearing date is denied. Having removed this action, Defendant cannot now complain about having to comply with the federal rules.  Defendant's ex parte application is DENIED.

DOCKETED ON CM

JUN 23 2004

BY _____ 013

cc: Counsel
CIVIL MINUTES 11

Initials of Deputy Clerk

152                                          EXHIBIT 13

**EXHIBIT 14**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street. 10th Floor. Los Angeles. California 90017 | TEL 213-624-7707 FAX 213-624-0643

July 11, 2004

BY FACSIMILE

Douglas Wickham, Esq.
Littler Mendelson
2049 Century Park East, 5th Floor
Los Angeles, California 90067

Mattel v. Bryant

Dear Mr. Wickham:

Because defendant declined to meet and confer within the time mandated by Local Rule 37-1, I am enclosing Mattel's draft portions of a Joint Stipulation for Mattel's motion to compel the defendant's deposition. Pursuant to the Local Rules, defendant's portions are due no later than Friday, July 16, 2004.

Please let me know if you have any questions or concerns.

Very truly yours,

*Michael T. Zeller*
Michael T. Zeller

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94104 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-620-4500 FAX 650-620-4555
PALM SPRINGS | 45-025 Manitou Drive, Suite 3, Indian Wells, California 92210 | TEL 760-345-2747 FAX 760-345-2414
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

**EXHIBIT 14**

**EXHIBIT 15**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-624-7707 FAX 213-624-0643

July 12, 2004

BY FACSIMILE

Douglas Wickham, Esq.
Littler Mendelson
2049 Century Park East, 5th Floor
Los Angeles, California 90067

Mattel v. Bryant

Dear Mr. Wickham:

Thank you for your letter of Thursday afternoon, July 8, 2004.

Almost a month ago, on June 17, 2004, Mattel served a Notice of Deposition for Carter Bryant. He immediately refused to appear, sought an unsuccessful discovery stay from Judge Manella, offered numerous (and evolving) excuses for why he was supposedly immune from a deposition for some indefinite period of time and also claimed that he was not available as a scheduling matter for some two months to be deposed. My letters of June 25 and June 30 offered defendant a specific proposal to resolve these issues (including by accommodating his alleged scheduling difficulties) and requested that defendant meet and confer. When you did not respond, I followed up with a letter on July 5. When you still did not respond, I wrote again on July 8. Even before all of this, on June 22 and June 23, I had contacted you to work out issues regarding Mr. Bryant's deposition with you, but to no avail.

Thus, I had been actively attempting for well over three weeks to obtain resolution of defendant's disputes regarding his deposition. Your letter of July 8, which offered to belatedly meet "next week" about the deposition, failed to comply with defendant's obligations to meet and confer within the time required by Local Rule 37-1. Even now, your letter continues to ignore the simple proposal that I first made to you over two weeks ago that would completely resolve any dispute about Mr. Bryant's deposition. In my June 25 letter, I stated that we will agree to take Mr. Bryant's deposition in St. Louis, Missouri (where he stated he preferred to be deposed) on a

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 51 Madison Avenue, 17th Floor, New York, New York 10010   TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94104 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 49005 Manitou Drive, Suite 8, Indian Wells, California 92210 | TEL 760-836-4747 FAX 760-836-2414
SAN DIEGO | 444

154

**EXHIBIT 15**

date that he said he was available in August, provided that defendant enters into a binding Stipulation that will ensure there are no further delays. I enclosed a draft Stipulation for your review and comments. Defendant has never responded to this proposal.

Accordingly, we have sent you Mattel's draft portions of a Joint Stipulation for a motion to compel Mr. Bryant's deposition. Nevertheless, I am willing to continue to try and resolve defendant's dispute over his deposition so as to avoid burdening the Court.[1] I am available to meet with you on July 13, which is one the days you mention that you are available. I suggest 3 p.m. at the Courthouse. Unless and until a binding resolution of the issues surrounding Mr. Bryant's deposition is reached, however, we will continue to move forward with our motion under Local Rule 37.

We also can discuss defendant's anticipated counterclaim, defendant's motion for protective order and the draft Stipulated Protective Order at that time. Two comments on this are warranted. First, although I appreciate your clarification of the bases for defendant's proposed counterclaim, we still will eventually need to see the actual pleading to finally decide whether to stipulate to its filing. We obviously cannot stipulate to a pleading sight unseen, as I have stated. Second, contrary to your suggestion, I have never claimed that I "cannot participate" in a pre-filing conference on the counterclaim without knowing what claims will be included. I certainly did say that it is necessary for us to see the pleading for a conference about whether we will stipulate to its filing to be productive, but I also clearly stated that I would meet and nevertheless proposed specific dates on which to have a conference on this subject and on defendant's anticipated motion for protective order. See, e.g., my letters of June 25, 2004 and June 30, 2004. You did not respond to those suggested dates for either of these conferences.

Finally, I am willing to discuss at our meeting the issues that you allude to about defendant's anticipated depositions of Mattel's employees. However, your letter does not make clear what those issues are, and I have not received a Rule 30(b)(6) notice from defendant, so please be forewarned that whatever discussions we have will necessarily be preliminary. If what you are contemplating is an actual meet and confer on these subjects, you will need to send me a letter

---

[1] Some of the most recent inquiries in your letter are easily resolved. For example, if Mr. Bryant would prefer his deposition to take place on August 17 (instead of August 16 as he had earlier suggested), we are agreeable to change the date on the draft Stipulation that I had sent you on June 25. Also, as you request in your letter, a 10 a.m. start time for the deposition is not a problem. Other issues that you raise, such as defendant's further suggestion that Mattel must complete Mr. Bryant's deposition in one consecutive session, will not be so easily resolved. As you know, we do not consider such a constraint to be reasonable or fair, particularly given that MGA is refusing to produce discovery until defendant completes his. The net effect of those positions would be to forever deprive Mattel of the ability to depose Mr. Bryant about information that is received from MGA.

2

**EXHIBIT 15**

that complies with Local Rule 37-1 so that I can have sufficient advanced notice and can consult with others before being able to confer with you on those matters in detail.  As I say, however, I am happy to talk with you on July 13 about your contemplated depositions of Mattel personnel, with the understanding that the conversation does not constitute a Rule 37-1 conference and will be tentative and preliminary.

I look forward to hearing from you.

Very truly yours,

Michael T. Zeller

3

156

**EXHIBIT 15**

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**LOS ANGELES**
865 So. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**PALM SPRINGS**
45-025 Manitou Drive, Suite 8
Indian Wells, CA 92210
(760) 345-4757
Facsimile: (760) 345-2414

**NEW YORK**
335 Madison Avenue, 17th Floor
New York, NY 10017-4611
(212) 702-8100
Facsimile: (212) 702-8200

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

DATE:   July 12, 2004

NUMBER OF PAGES, INCLUDING COVER:

TO/COMPANY:

| NAME | PHONE NO. | FAX NO. |
|------|-----------|---------|
| Robert Millman<br>Douglas Wickham | 310-553-0308 | 310-553-5583 |

FROM:   Michael T. Zeller

RE:   Mattel v. Bryant

MESSAGE:



| CLIENT #:  7209 | ROUTE/<br>RETURN TO:  Maria Albert | ☐ CONFIRM FAX<br>☐ INCLUDE CONF. REPORT |
|---|---|---|
| OPERATOR: | CONFIRMED? ☐ No ☐ Yes: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3178 AS SOON AS POSSIBLE.

EXHIBIT 15

```
┌─────────────────────────────────────────────────────────────────────┐
│                        Send Confirmation Report                       │
├─────────────────────────────────────────────────────────────────────┤
│ Line 1: JetFax M920              ID: 213 6240643     12 Jul'04  1:50AM Page  1
│ Line 2: JetFax M920              ID: 1
```

| Job | Start time | Usage | Phone Number or ID | Type | Pages | Mode | Status |
|-----|-----------|-------|-------------------|------|-------|------|--------|
| 134 | 7/12 1:43AM | 0'00" | 9776#7209#1310553558 3# | Send............. | 0 | .......... | No dial tone, Line 2....... 971 |
| 134 | 7/12 1:46AM | 0'00" | 9776#7209#1310553558 3# | Send............. | 0/ 4 | .......... | No dial tone, Line 2....... 971 |
| 134 | 7/12 1:49AM | 1'05" | 9776#7209#1310553558 3# | Send............. | 4/ 4 | EC144 | Completed........................... |

           Total:    1'05"    Pages sent: 4    Pages printed: 0

**QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP**

LOS ANGELES OFFICE

**FACSIMILE TRANSMISSION**

DATE: July 12, 2004

TO/COMPANY:                                    NUMBER OF PAGES, INCLUDING COVER:

| Name | Phone No. | Fax No. |
|------|-----------|---------|
| Robert Millman | 310-553-0308 | 310-553-5583 |
| Douglas Wickham | | |

FROM: Michael T. Zeller

RE: Mattel v. Bryant

MESSAGE:

158                                          **EXHIBIT 15**

```
                              ┌─────────────────────────────┐
                              │   Send Confirmation Report   │
┌──────────────────────────────────────────────────────────────────────────────┐
│ Line 1: JetFax M920                    ID: 12138240643                          │
│ Line 2: JetFax M920                    ID: 12138240643      12 Jul'04  1:46AM Page  1 │
└──────────────────────────────────────────────────────────────────────────────┘
```

| Job | Start time | Usage | Phone Number or ID | Type | Pages | Mode | Status |
|-----|-----------|-------|--------------------|------|-------|------|--------|
| 575 | 7/12  1:45AM | 1'09" | 9776#7209#1310553558 3# | Send........... | 4/ 4 | EC144 | Completed.................................. |

Total:   1'09"    Pages sent: 4    Pages printed: 0

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

LOS ANGELES OFFICE

**FACSIMILE TRANSMISSION**

DATE: July 12, 2004

TO/COMPANY:                    NUMBER OF PAGES, INCLUDING COVER:

Robert Millman          PHONE NO.              FAX NO.
Douglas Wickham          310-553-0308          310-553-5583

FROM: Michael T. Zeller

RE: Mattel v. Bryant

MESSAGE:

CLIENT #:   7209        Return for  Marie Albert        CONFIRM FAX
                                                         INCLUDE CONF. REPORT

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3170 AS SOON AS POSSIBLE.

159

**EXHIBIT 15**

**EXHIBIT 16**



**LITTLER MENDELSON®**

July 14, 2004

Keith A. Jacoby
Direct: 310.772.7284
Direct Fax: 310.553.5583
kjacoby@littler.com

**VIA FACSIMILE (213.443-3100) AND U.S. MAIL**

Michael T. Zeller, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:    **Mattel, Inc. v. Carter Bryant**

Dear Mr. Zeller:

This letter will memorialize the position of Defendant Carter Bryant with respect to the taking of his deposition, and my understanding of Plaintiff Mattel Inc.'s ("Mattel") position, as set forth in our meeting yesterday.

My understanding is that Mattel has agreed to take Mr. Bryant's deposition in St. Louis, Missouri. Mattel may select an appropriate location, and Littler Mendelson is happy to suggest a location if your firm has no suggestion.

My understanding is that an agreement has been reached to commence the deposition on August 17, 2004 at 10:00 a.m.

Two issues remain outstanding, which you suggest require Court intervention. We believe nothing that has occurred to date warrants Court intervention or prophylactic orders, and you have stated no good reason why such Court intervention is necessary. Your suggestion that pre-deposition orders are required appear to be little more than an attempt to gratuitously disparage Mr. Bryant, when he has done absolutely nothing wrong.

First, Mr. Bryant has offered to extend the seven hour limit on testimony by a single witness provided by F.R.C.P. 30(d)(2) to 14 hours, in order to give Mattel an opportunity to complete the deposition. Mr. Bryant has agreed to make himself available over August 17, 18, and 19 to accomplish that task. My understanding is that while specifics have not been agreed to at this time, both Mattel and Mr. Bryant are willing in principle to extend the seven hour limit with respect to Rule 30(b)(6) depositions as well.

Mr. Bryant is not willing to permit, as you proposed yesterday, that Mattel be allowed to initially proceed with his deposition for seven hours, or anything less that 14 hours, and then resume his deposition at a later time, after further discovery is completed. That type of

2049 Century Park East, 5th Floor, Los Angeles    Fax: 310.553.5583  www.littler.com

**EXHIBIT 16**

Michael T. Zeller, Esq.
July 14, 2004
Page 2

procedure does not conform to F.R.C.P. 30(d)(2). Moreover, depositions are customarily noticed and taken from day to day, until completed. *In fact, Mattel's deposition notice expressly states that Mr. Bryant's deposition will continue from day to day until completed.* We agree that is precisely what should happen.

It is your client's decision to take Mr. Bryant's deposition at the beginning of this case. Mattel originally noticed Mr. Bryant's deposition before *any* formal discovery whatsoever was completed. In such circumstances, it will always be true that the parties will learn more about the case as discovery progresses, but the law does not require witnesses to appear and reappear again as discovery unfolds. Mattel is free to wait until a later date to take Mr. Bryant's deposition, if it so chooses. However, if his deposition goes forward now, it will go forward in consecutive sessions, and will be deemed completed at the conclusion of 14 hours, or earlier if you elect to end the deposition in less than 14 hours. I understand Mattel is not waiving its right to make a motion pursuant to F.R.C.P. 30(d)(2) to reopen Mr. Bryant's deposition, and Mr. Bryant is not waiving his right to oppose such a motion.

Finally, we have made it clear that there is no need for a Court order directing Mr. Bryant to appear, and Mr. Bryant will not stipulate to such an order. Mr. Wickham and I articulated the various reasons why this is unnecessary, and I will not rehash them here. In short, it is in Mr. Bryant's litigation interests to appear for deposition as agreed, and Mr. Wickham and I have given our representation as counsel that we will do everything in our power to ensure that Mr. Bryant will, in fact, appear. At this time, we have absolutely no reason to believe that he will not appear as agreed. While we, of course, cannot prevent an unforeseen medical emergency or other exigent circumstance that would warrant the canceling of any deposition, no such facts exist at this time. In my entire career, I have never had a witness I was representing spontaneously refuse to appear, nor has Mr. Wickham. I do not believe this will occur here, and ask that you accept the good faith representation of Mr. Wickham and I, rather than waste the Court's time and resources with a preemptive discovery motion.

Please contact me today before the close of business to confirm we have reached a final agreement on Mr. Bryant's deposition, on the terms I have proposed, and that a discovery motion is unnecessary.

Sincerely,

Keith A. Jacoby

cc:    Robert F. Millman, Esq.
       Douglas A. Wickham, Esq.

Los_Angeles:366808.2 028307.1010

161

**EXHIBIT 16**

**EXHIBIT 17**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-624-7707 FAX 213-624-0643

July 14, 2004

BY FACSIMILE

Keith A. Jacoby, Esq.
Littler Mendelson
2049 Century Park East, 5th Floor
Los Angeles, California 90067

Mattel v. Bryant

Dear Mr. Jacoby:

This will confirm our conversation of this afternoon regarding two of the issues that we discussed yesterday and that are the subject of your letters earlier today.

First, the parties have agreement that Mr. Bryant's deposition will commence on August 17, 2004 at 10:00 a.m. in St. Louis for a seven-hour session. We will arrange for a specific location as well as a court reporter and videographer. Mattel and Mr. Bryant are reserving their respective positions as to the appropriateness of subsequent deposition time with Mr. Bryant, and the parties will discuss the matter if and when it arises.

While Mattel did not agree with the delay of Mr. Bryant's previously noticed deposition until August for reasons that I have already stated and does not believe that the statements in your letter of earlier today accurately reflect Mattel's position in all respects, we will accept your representations as an attorney that Mr. Bryant will appear for deposition at the agreed-upon location and time. Thus, as I mentioned over the phone today, based upon those representations, we will not be going forward at this juncture with a motion to compel his deposition, without prejudice of course to our rights to seek Court relief if circumstances change.

Second, as we agreed yesterday and over the phone today, the extension of time until Friday is for both parties' responses to all outstanding written discovery requests, which includes the interrogatories that Mr. Bryant propounded upon Mattel.

quinn emanuel urquhart oliver & hedges, llp

NEW YORK | 335 Madison Avenue, 17th Floor, New York, New York 10017 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALM SPRINGS | 45-025 Manitou Drive, Indian Wells, California 92210 | TEL 760-345-8000 FAX 760-345-8100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3000

EXHIBIT 17

Please give me a call if you would like to discuss these matters further.  Otherwise, I will let you know about the specific location in St. Louis as soon as practicable.

Very truly yours,

Michael T. Zeller

2

**EXHIBIT 17**

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

SAN DIEGO
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

LOS ANGELES
865 So. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

SAN FRANCISCO
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

PALM SPRINGS
45-025 Manitou Drive, Suite 8
Indian Wells, CA 92210
(760) 345-4757
Facsimile: (760) 345-2414

NEW YORK
335 Madison Avenue, 17th Floor
New York, NY 10017-4611
(212) 702-8100
Facsimile: (212) 702-8200

SILICON VALLEY
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

## LOS ANGELES OFFICE

## FACSIMILE TRANSMISSION

**DATE:** July 14, 2004

**NUMBER OF PAGES, INCLUDING COVER:**

**TO/COMPANY:**

| NAME | PHONE NO. | FAX NO. |
|------|-----------|---------|
| Keith A. Jacoby, Esq. | 310-772-7284 | 310-553-5583 |

**FROM:** Michael T. Zeller

**RE:** Mattel v. Bryant

**MESSAGE:**



| CLIENT #: 7209 | ROUTE/ RETURN TO: **Maria Albert** | ☐ CONFIRM FAX ☐ INCLUDE CONF. REPORT |
|---|---|---|
| OPERATOR: | CONFIRMED? ☐ NO ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF TH---- ---- PLEASE PHONE (213) 443-3178 AS SOON AS POSSIBLE.

**EXHIBIT 17**

164

---

**Send Confirmation Report**

Line 1: quinn,emanuel      ID: 12136240643      14 Jul'04  5:15PM Page  1
Line 2: JetFax M920e      ID: 13102014746

| Job | Start time | Usage | Phone Number/Email | Type | Pages | Mode | Status |
|-----|-----------|-------|--------------------|------|-------|------|--------|
| 205 | 7/14  5:14PM | 0'47" | 9414#07209#131055355 83# | Send............ | 3/ 3 | EC144 | Completed................................. |

Total:   0'47"     Pages sent: 3     Pages printed: 0

---

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

LOS ANGELES OFFICE

**FACSIMILE TRANSMISSION**

DATE:   July 14, 2004

TO/COMPANY:                 NUMBER OF PAGES, INCLUDING COVER:

| Name | Phone No. | Fax No. |
|------|-----------|---------|
| Keith A. Jacoby, Esq. | 310-772-7284 | 310-553-5583 |

FROM:   Michael T. Zeller

RE:   Mattel v. Bryant

MESSAGE:



| | | | |
|--|--|--|--|
| Client #: 7209 | ROUTE: RETURN TO: Maria Albert | | ☐ COMPANY FAX ☐ INCLUDE CONF. REPORT |
| OPERATOR: | | CONFIRMED? ☐ No ☐ Yes | |

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3170 AS SOON AS POSSIBLE.

**EXHIBIT 17**

**EXHIBIT 18**

Received:    8/13/ 4 12:____   310 553 5583 -> QUINN L __WEL;   Page 2

AUG-13-2004  11:57 FROM:LITTLER  'ELSON    310 553 5583    ' 13 624 0643    P.2/4

## LITTLER MENDELSON®
### A PROFESSIONAL CORPORATION

Robert F. Milliman
Direct: 310.772.7206
Direct Fax: 310.553.5583
rfmilliman@littler.com

August 13, 2004

<u>VIA FACSIMILE AND U.S. MAIL</u>

John B. Quinn, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:    <u>Mattel, Inc. v. Carter Bryant</u>

Dear Mr. Quinn:

Upon returning to Los Angeles last night, I was orally briefed by my partners about their initial review of the documents produced by Mattel on August 12, 2004 in response to Defendant Carter Bryant's document requests. This morning, I looked over those documents myself, and I am extremely disappointed with Mattel's production.

The deficiencies in Mattel's document production are far greater than those foreshadowed by your partner, Michael Zeller, during his meeting with my partner Keith Jacoby earlier this week. Mattel's four and a half boxes of documents contain little more than useless phone records and copies of Carter Bryant's own artwork. It is clear that Mattel has no intention of meaningfully responding to Mr. Bryant's document requests without Court intervention, and every intention of abusing the Protective Order in this case, including its Attorneys' Eyes Only provision, to interfere with our ability to advise our client and prepare Mr. Bryant for deposition.

The following are just a few examples of the deficiencies in Mattel's document production and its abuse of the Protective Order:

- The entirety of Carter Bryant's works for Mattel, his personnel file and all manner of other Bryant records are designated "Attorney's Eyes Only" under the Protective Order. Many magazine clippings are designated "Attorney's Eyes Only" as well. We therefore cannot show Mr. Bryant his own works, or documents that he himself signed. The ink on the Protective Order has barely dried, and yet Mattel has already seen fit to abuse it.

- Not a single electronic mail message was produced, nor have Mr. Bryant's time records on "Barbie" projects been produced. Mr. Zeller's comments to Mr. Jacoby

THE NATIONAL EMPLOYMENT & LABOR LAW FIRM™
2049 Century Park East, 5th Floor, Los Angeles, California 90067-3107  Tel: 310.553.0308  Fax: 310.553.5583

**EXHIBIT 18**

Received:   8/13/ 4 1:                    310 553 5583 -> QUINN        JL;  Page 3
AUG-13-2004 11:57 FROM:LITTLER    JELSON    310 553 5583        •     13 624 0643        P.3/4

John B. Quinn, Esq.
August 13, 2004
Page 2

indicated that electronic searches have not even been attempted to date, or that in the case of the time records, searches have just begun despite the fact that the document request was personally served on June 14, 2004. In contrast to Mattel's action, it is my understanding that MGA diligently searched for and produced hundreds of electronic mail messages in response to Mattel's third party subpoena. Mattel clearly was obligated to similarly fulfill its electronic discovery obligations, but it has not.

- Phone records from Mr. Bryant's personal extension from the spring and summer of 2000 were produced, but the October 2000 phone records are curiously missing.

- As far as we can tell, no art work from anyone other than Mr. Bryant has been produced. In the press and at the Zeller/Jacoby meet and confer, Mattel and/or its employees have alleged that Mr. Bryant copied a Mattel doll idea that was in development, which Mr. Zeller called "Teen Toons." At least one present or former Mattel employee (whose identity was not disclosed) claimed in the press that Mr. Bryant had copied a specific drawing created by Lily Martinez pertaining to this doll project. Such a drawing (or drawings) clearly were requested by Mr. Bryant's document request and yet Mattel failed to produce them — a document that goes to the heart of Mattel's claims in this case. Mattel continues to assert, both in the press and in this lawsuit, that Mr. Bryant copied materials from a Mattel project, but the works from that project, let alone the identity of it, remain undisclosed.

As you will see, the Bryant production was done in the utmost good faith. In addition to responding to Mattel's other requests, a diligent, time consuming, good faith search was undertaken to find *every* drawing in Mr. Bryant's possession made in connection with the creation of the first generation "Bratz" dolls. We agreed to produce those documents and Mr. Bryant has done so, from the very first original "Bratz" sketches to the pictures of the first dolls shown at the 2001 Toy Fair. Mattel contends the "Bratz" concept was stolen, but has produced nothing in that regard, despite an unambiguous obligation to do so. At the same time, Mattel refuses to concede that no such documents exist. If they do exist, Mr. Bryant has a right to be informed of and to see any such documents, as he has requested in his document requests to Mattel.

These tactics, taken together, evidence a concerted effort to undermine our ability to adequately prepare Mr. Bryant for his deposition. I know that my partners, Douglas Wickham and Keith Jacoby, have repeatedly represented in correspondence and at meetings with Mr. Zeller, that Mr. Bryant intends to proceed with discovery in good faith, and we have lived up to that obligation. Mattel has not. I will not allow my client to be ambushed at deposition. Mattel's conduct is preventing Mr. Bryant and his counsel from meaningfully addressing and being prepared to respond to the contentions made in this suit. This is unacceptable.

167

**EXHIBIT 18**

Received:    8/13/ 4 12:                310 553 5583 -> QUINN      .L; Page 4
AUG-13-2004 11:58 FROM:LITTLER    ELSON    310 553 5583        T  13 624 0643        P.4/4

John B. Quinn, Esq.
August 13, 2004
Page 3


Mr. Bryant will not appear for deposition under these conditions.  I will direct to Mr. Zeller's attention under a separate cover Mr. Bryant's portion of the joint stipulation seeking to compel the production of documents responsive to Mr. Bryant's requests.

Sincerely,

Robert F. Millman

cc:    Michael Zeller, Esq.
       Douglas A. Wickham, Esq.
       Keith A. Jacoby, Esq.


Los_Angeles:370306.1 028307.1010

**EXHIBIT 18**

Received:   8/13/ 4   ... M:        310 553 5583 -> QUIN   _NUEL;  Page 1
AUG-13-2004 11:57 FROM:LITTLER  DELSON   310 553 5583         13 624 0643         P.1/4

## LITTLER MENDELSON

### A PROFESSIONAL CORPORATION

### FACSIMILE COVER SHEET

### August 13, 2004

☐ Call addressee or addressee's authorized personal representative before transmitting

☒ Attorney/client privileged

To:  John B. Quinn, Esq.          Fax:   (213) 443-3100   Phone:   (213) 443-3000
     Quinn Emauel Urquhart Oliver &
     Hedges LLP

Fax #(s) verified before sending (initial):

From:   Robert F. Millman          Fax:   310.553.8720   Phone:   310.772.7206

Length, including this cover letter:   4     Pages

If you do not receive all pages, please call Sender's Phone Number.

Message:

CONFIDENTIALITY — The information contained in this fax message is intended only for the personal and confidential use of the designated recipient(s) named above. This message is a communication from attorneys or their agents relating to pending legal matters and, as such, is intended to be privileged and/or confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us by mail. Thank you.

Transmittal Completed: _____ am / pm   Client Code:   028307.1010   User Number:   1118

THE NATIONAL EMPLOYMENT & LABOR LAW FIRM
2049 Century Park East, 5th Floor, Los Angeles, CA 90067.3107  Tel: 310.553.0308  Fax: 310.553.5583

**EXHIBIT 18**

**EXHIBIT 19**

BY FAX DELIVERY ON PLAINTIFF/DEFEN. .IT (OR PARTIES)
AT THEIR RESPECTIVE MOST RECENT FAX NUMBER OF RECORD
IN THIS ACTION ON THIS DATE.

DATE: 8-19-04

_M. Ciroye Domingo_
DEPUTY CLERK

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION
CIVIL MINUTES--GENERAL

Case No. CV 04-3431-NM (RBx)          Date August 19, 2004

Title __Mattel Inc., v. Carter Bryant, et al.__

Priority  ———
Send      ———
Enter     ———
Closed    ———
JS-5/JS-6 ———
JS-2/JS-3 ———
Scan Only ———

DOCKET ENTRY

PRESENT: Hon. STEPHEN J. HILLMAN, MAGISTRATE JUDGE
FOR:    Hon. ROBERT N. BLOCK MAGISTRATE JUDGE

Sandra Butler
Deputy Clerk              Tape No.

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

N/A                                      N/A

PROCEEDINGS: (IN CHAMBERS)

Mattel's Ex Parte Application to Compel Deposition of Defendant

Court has carefully considered the moving and opposition papers. Although the litigation concerns claims of breach of fiduciary duty and loyalty, and Mattel conceivably might have been able to set forth grounds for granting ex parte relief, Mattel has alleged no irreparable injury whatsoever. There is not even a pending Motion for a Preliminary Injunction. For these reasons, the court declines to order defendant's deposition on an ex parte basis. Local Rule 37-3.

The Ex Parte Application is DENIED.

cc: Judge Manella
    Judge Block
    Judge Hillman
    Parties of Record



DOCKETED ON CM

AUG 1 9 2004

BY _ME_ 051

(#55)

EXHIBIT 19

170

**EXHIBIT 20**

36

FILED
LOS ANGELES SUPERIOR COURT
OCT 0 5 2004
JOHN A. CLARKE, CLERK
By_____, Deputy

| | | |
|---|---|---|
| MATTEL, INC., a Delaware Corporation, | ) | CASE NO. BC 314398 |
| Plaintiff, | ) | |
| | ) | TENTATIVE RULING ON (1) |
| v. | ) | MOTION TO COMPEL DEPOSITION |
| | ) | AND (2) MOTION FOR A PROTECTIVE |
| CARTER BRYANT, an individual; and DOES | ) | ORDER AND ESTABLISH THE |
| 1 through 10, inclusive, | ) | SEQUENCE AND TIMING OF |
| | ) | DISCOVERY |
| Defendants. | ) | |
| | ) | Hearing Date:  October 5, 2004 |
| | ) | Moving Party:  Plaintiff (motion to compel) |
| | ) | and Defendant (motion for protective order) |

Defendant Carter Bryant was hired by Plaintiff Mattel as a fashion designer for the "Barbie" line of toys from 1995 to April 1998, and in the Barbie Collections division from January 4, 1999 to October 2000.  After leaving Mattel, Bryant started his own line of fashion doll, called "Bratz," which received much success.  Mattel brings this lawsuit against Bryant for (1) Breach of Contract; (2) Breach of Fiduciary Duty; (3) Breach of Duty of Loyalty; (4) Unjust Enrichment; and (5) Conversion.  Bryant filed his cross-complaint for (1) Unfair Competition; (2) Rescission; (3) Declaratory Relief; and (4) Fraud.

Plaintiff moves to compel the deposition of Plaintiff.  The law is clear that Plaintiff is entitled to depose Defendant who is a party in this action.  Although the federal magistrate judge denied Plaintiff its ex parte application to file a motion to compel deposition of Defendant, this Court is not bound by the federal court's local rules.  California law is clear that "[a]ny party may obtain discovery...by taking in California the oral deposition of any person, including any party to the action...."  CCP § 2025(a).  The Court is inclined to grant Plaintiff's motion to compel.

However, Defendant has filed his motion for a protective order.  Defendant is not contending that Plaintiff is not entitled to depose him.  Rather, it appears that Defendant wants

1

EXHIBIT 20

Plaintiff to produce certain documents before the deposition, which will assist Defendant in preparation of his deposition. As such, Defendant seeks an order to establish the timing and sequence of the discovery requests. The Court is also inclined to grant Defendant's motion for a protective order.

Plaintiff is ordered to produce these documents or state in verified responses that none exists, and after a diligent search and reasonable inquiry, there are no such documents in Plaintiff's possession, custody, or control. Defendant is ordered to be deposed 20 days after Plaintiff produces these documents.

DATED:      October 5, 2004

GREGORY W. ALARCON
SUPERIOR COURT JUDGE

2

**EXHIBIT 20**

172

**EXHIBIT 21**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 10/05/04 | | DEPT. 36 |
|---|---|---|
| HONORABLE GREGORY W. ALARCON | JUDGE | C. WILSON | DEPUTY CLERK |
| HONORABLE #10 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| P. MAPSTEAD, C.A. | Deputy Sheriff | M. DOLZ, CSR #8424 | Reporter |

| 8:30 am | BC314398 | | | |
|---|---|---|---|---|
| | MATTEL INC | | Plaintiff Counsel | JOHN B. QUINN (X) |
| | | VS | | |
| | CARTER BRYANT | | Defendant Counsel | KEITH A. JACOBY (X) |

NATURE OF PROCEEDINGS:

MOTION FOR PLAINTIFF MATTEL, INC., TO COMPEL
DEPOSITION OF DEFENDANT AND CROSS CLAIMANT CARTER
BRYANT AND FOR SANCTION IN THE AMOUNT AMOUNT OF
$4,500.00;

MOTION FOR PROTECTIVE ORDER DEFENDANT CARTER BRYANT

CASE MANAGEMENT CONFERENCE

The matter is called for hearing.

Counsel submit on the Court's tentative ruling.  The
Court adopts the tentative and rules as follows:

Plaintiff's motion to compel is granted.

Defendant's motion for a protective order is granted.

Plaintiff is ordered to produce the documents or state
in verified responses that none exists, and after a
diligent search and reasonable inquiry, there are no
such documents in Plaintiff's possession, custody or
control.  Defendant is ordered to be deposed 20 days
after Plaintiff produces the documents.

The Court's ruling is more fully reflected in the
Ruling on 1) Motion to Compel Deposition and 2)
Motion for a Protective Order and Establish the
Sequence and Timing of Discovery, signed and filed

Page    1 of 2    DEPT. 36

MINUTES ENTERED
10/05/04
COUNTY CLERK

EXHIBIT 21

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 10/05/04 | | DEPT. 36 |
|---|---|---|
| HONORABLE GREGORY W. ALARCON | JUDGE | C. WILSON | DEPUTY CLERK |
| HONORABLE #10 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| P. MAPSTEAD, C.A. | Deputy Sheriff | M. DOLZ, CSR #8424 | Reporter |

| 8:30 am | BC314398 | | | |
|---|---|---|---|---|
| | MATTEL INC | | Plaintiff Counsel | JOHN B. QUINN (X) |
| | | VS | Defendant Counsel | KEITH A. JACOBY (X) |
| | CARTER BRYANT | | | |

**NATURE OF PROCEEDINGS:**

this date, and incorporated by reference herein.

The Case Management Conference is continued to 10/28/04 at 8:30 a.m. in this Department.

Counsel are ordered to complete and submit a long cause packet to the court.

Notice is deemed waived.

Page   2 of   2     DEPT. 36

MINUTES ENTERED
10/05/04
COUNTY CLERK

174

**EXHIBIT 21**

**EXHIBIT 22**



QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 90378)
  Michael T. Zeller (Bar No. 196417)
  Tania Krebs (Bar No. 227281)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000 (telephone)
(213) 443-3100 (facsimile)

Attorneys for Plaintiff
Mattel, Inc.

**FILED**
LOS ANGELES SUPERIOR COURT

OCT 2 0 2004

JOHN A. CLARKE, CLERK
*L Walker*
BY L. WALKER, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

MATTEL, INC., a Delaware corporation,

        Plaintiff,

      v.

CARTER BRYANT, an individual, and DOES 1 through 10, inclusive,

        Defendants.

CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public,

        Cross-Complainant,

      v.

MATTEL, INC., a Delaware corporation,

        Cross-Defendant.

CASE NO. BC 314398

[███████] ORDER GRANTING MATTEL'S EX PARTE APPLICATION TO SET COMPELLED DEPOSITION OF DEFENDANT AND CROSS-CLAIMANT CARTER BRYANT FOR A DATE CERTAIN PURSUANT TO THE COURT'S ORDER OF OCTOBER 5, 2004

Judge: Hon. Gregory Alarcon
Dept: 36
Date Action Filed: April 27, 2004
Trial Date: None Set

07209/613084.1

ORDER RE: DEPOSITION OF BRYANT

175

**EXHIBIT 22**

1          This matter came before the Court on October 19, 2004 for an <u>ex parte</u>

2   order to set for a date certain the previously compelled deposition of Defendant and Cross-

3   Claimant Carter Bryant.  Eric J. Emanuel and Michael T. Zeller of Quinn Emanuel Urquhart

4   Oliver & Hedges, LLP appeared on behalf of Plaintiff Mattel, Inc.  The appearance for

5   Defendant is noted on the record.

6          Having considering the papers and after considering the arguments of

7   counsel regarding Mattel's application, the Court hereby FINDS that good cause exists for

8   the issuance of <u>ex parte</u> relief, and hereby GRANTS Mattel's <u>ex parte</u> application.

9          Accordingly, the Court ORDERS and compels Defendant and Cross-

10  Claimant Carter Bryant to appear for deposition commencing on November 4, 2004, at 9:00

11  a.m. at University Plaza Hotel and Convention Center, 333 S. John Q. Hammons Parkway,

12  Springfield, Missouri 65806.

13

14  IT IS SO ORDERED

15  Date: 10/20/04

16                                      Honorable Judge Gregory Alarcon
                                         Judge of the Superior Court
17

18

19

20  Submitted by:   QUINN EMANUEL URQUHART OLIVER & HEDGES

21  Attorneys for:   Plaintiff Mattel, Inc.

22

23

24

25

26

27

28

07209/613084.1

                                        2

                                              ORDER RE: DEPOSITION OF BRYANT

176

**EXHIBIT 22**

**EXHIBIT 23**

Received:   1/10/05   8:08PM;        310 553 5583 -> JetFax M920;   Page 2

JAN-10-2005 17:57 FROM:LITTLER MENDELSON     310 553 5583      TO:12136240643      P.2/2

## LITTLER MENDELSON

A PROFESSIONAL CORPORATION

January 10, 2005

Douglas A. Wickham
Direct: 310.712.7314
Direct Fax: 310.553.5583
dwickham@littler.com

**VIA FACSIMILE (213.443-3100) AND U.S. MAIL**

Michael T. Zeller, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:    **Mattel, Inc. v. Carter Bryant**

Dear Mr. Zeller:

This is to confirm that the deposition of Lilly Martinez will be going forward on January 26, 2005, as previously noticed.

Please contact me immediately should you have any questions or concerns regarding the above.

Sincerely,

Douglas A. Wickham

cc:    Diana Torres, Esq.
       Robert F. Millman, Esq.
       Keith A. Jacoby, Esq.

Los_Angeles:390078.1 028307.1010

177                                                    **EXHIBIT 23**

THE NATIONAL EMPLOYMENT & LABOR LAW FIRM
2049 Century Park East, 5th Floor, Los Angeles, California 90067-3107 Tel: 310.553.0308 Fax: 310.553.5583 www.littler.com



### LITTLER MENDELSON®

A PROFESSIONAL CORPORATION

**FACSIMILE COVER SHEET**

January 10, 2005

To:   Michael T. Zeller, Esq.              Fax:   (213) 624.0643    Phone:
      Quinn Emmanuel Urquhart Oliver
      & Hedges, LLP

Fax #(s) verified before sending (initial):

From:   Douglas A. Wickham          Fax:   310.553.5583     Phone:   310.712.7314

Length, including this cover letter:   2      Pages

If you do not receive all pages, please call Sender's Phone Number.

Message:

Los_Angeles:379845.1 028307.1010

**EXHIBIT 23**

**CONFIDENTIALITY** – The information contained in this fax message is intended only for the personal and confidential use of the designated recipient(s) named above. This message is a communication from attorneys or their agents relating to pending legal matters and, as such, is intended to be privileged and/or confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us by mail. Thank you.

Transmittal Completed: _____ am / pm    Client Code: _028307.1010_    User Number: _1498_

THE NATIONAL EMPLOYMENT & LABOR LAW FIRM™
2049 Century Park East, 5th Floor, Los Angeles, CA 90067.3107 Tel: 310.553.0308 Fax:310.553.5583, www.littler.com

**EXHIBIT 24**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100

January 17, 2005

**BY FACSIMILE**

Keith A. Jacoby, Esq.
Littler Mendelson, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California 90067

<u>Mattel, Inc. v. Bryant</u>

Dear Keith:

I am in receipt of your letter dated January 11, 2005, and Douglas Wickham's letter dated January 10, 2005.

Contrary to the claim in your January 11 letter, Mattel hand served Bryant's counsel with its written objections to both of Bryant's <u>Rule</u> 30(b)(6) Notices on December 29, 2004.

Indeed, even apart from Mattel's objections to the Notices, your assertion that Mattel "ignored" the Notices is unfounded, since you have well known Mattel's position about the Topics set forth in the improper Notices for many weeks.  This includes, without limitation, from:

(1)  Mattel's motion to quash Bryant's PMK Notice that contained Topics identical to the ones contained in the <u>Rule</u> 30(b)(6) Notices (which motion was pending in state court at the time of Bryant's improper, second removal), along with the written objections, meet and confers and correspondence preceding that motion;

quinn emanuel urquhart oliver & hedges, llp

**EXHIBIT 24**

(2) the multiple discussions, beginning in October, that Mattel had with Bryant's counsel on his other PMK Notice, which also contained Topics identical to those contained in the Rule 30(b)(6) Notices; and

(3) the discussion over the phone that you and I had on January 10, 2005.

Mr. Wickham's January 10 letter is equally inaccurate.  It purports "to confirm that the deposition of Lilly [sic] Martinez will be going forward on January 26, 2005".  As Bryant's counsel knows, no such confirmation was given by us, and Ms. Martinez will not be appearing.

Very truly yours,

*Michael T. Zeller*
Michael T. Zeller

07209-630524.1

2

**EXHIBIT 24**

# QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-3107
Facsimile: (858) 812-3336

**PALM SPRINGS**
45-025 Manitou Drive, Suite 8
Indian Wells, CA 92210
(760) 345-4757
Facsimile: (760) 345-2414

**LOS ANGELES**
865 So. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**NEW YORK**
335 Madison Avenue, 17th Floor
New York, NY 10017-4611
(212) 702-8100
Facsimile: (212) 702-8200

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
(650) 801-5000
Facsimile  (650) 801-5100

## LOS ANGELES OFFICE

# FACSIMILE TRANSMISSION

DATE:   January 17, 2005

NUMBER OF PAGES, INCLUDING COVER:

TO/COMPANY:

| NAME | PHONE NO. | FAX NO. |
|---|---|---|
| Keith Jacoby | 310-553-0308 | 310-553-5583 |

FROM:   Michael T. Zeller

RE:   Mattel v. Bryant

MESSAGE:



| CLIENT #:  7209 | ROUTE/ RETURN TO:  **Maria Albert** | ☐ CONFIRM FAX ☐ INCLUDE CONF. REPORT |
|---|---|---|
| OPERATOR: | CONFIRMED?  ☐ No  ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3178 AS SOON AS POSSIBLE.

181                                                          EXHIBIT 24

Confirmation Report — Memory Send

Page         : 001
Date & Time: Jan-17-05  05:16pm
Line 1      : 2136240643
Line 2      :
Machine ID : QUINN EMANUEL

| | | |
|---|---|---|
| Job number | : | 677 |
| Date | : | Jan-17 05:15pm |
| To | : | ☎9776#7209#13105535583# |
| Number of pages | : | 003 |
| Start time | : | Jan-17 05:15pm |
| End time | : | Jan-17 05:16pm |
| Pages sent | : | 003 |
| Status | : | OK |
| Job number | : 677 | *** SEND SUCCESSFUL *** |

## QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

**SAN DIEGO**
4445 Eastgate Mall, Suite 200
San Diego, CA 92121
(858) 812-8107
Facsimile: (858) 812-8538

**PALM SPRINGS**
45-025 Manitou Drive, Suite 5
Indian Wells, CA 92210
(760) 345-4727
Facsimile: (760) 345-2414

**LOS ANGELES**
865 So. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
Facsimile: (213) 443-3100

**NEW YORK**
335 Madison Avenue, 17th Floor
New York, NY 10017-4611
(212) 702-8100
Facsimile: (212) 702-8200

**SAN FRANCISCO**
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
Facsimile: (415) 875-6700

**SILICON VALLEY**
555 Twin Dolphin Drive, Suite 5-0
Redwood Shores, CA 94065
(650) 801-5000
Facsimile: (650) 801-5100

### LOS ANGELES OFFICE

### FACSIMILE TRANSMISSION

DATE:   January 17, 2005

NUMBER OF PAGES, INCLUDING COVER:

TO/COMPANY:

| NAME | PHONE NO. | FAX NO. |
|---|---|---|
| Keith Jacoby | 310-553-0308 | 310-553-5583 |

FROM:   Michael T. Zeller

RE:   Mattel v. Bryant

MESSAGE:

| CLIENT #: 7209 | ROUTE/ RETURN TO: Maria Albert | ☐ CONFIRM FAX ☐ INCLUDE CONF. REPORT |
|---|---|---|
| OPERATOR: | CONFIRMED? ☐ NO ☐ YES: | |

The information contained in this facsimile is confidential and may also contain privileged attorney-client information or work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received the facsimile in error, please immediately notify us by telephone, and return the original message to us at the address above via the U.S. Postal Service. Thank you.

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE PHONE (213) 443-3178 AS SOON AS POSSIBLE.

**EXHIBIT 24**

**EXHIBIT 25**

Received: 1/20/06 12:36PM;   310 663 5583 -- ....

JAN-20-2005 12:23 FROM:LITTL   JNDELSON   310 553 5583         :213 6240643         P.2/3



LITTLER MENDELSON®

January 20, 2005

Keith A. Jacoby
Direct: 310.772.7284
Direct Fax: 310.553.5583
kjacoby@littler.com

**VIA FACSIMILE (213.624.0643) AND U.S. MAIL**

Michael T. Zeller
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:   <u>Mattel, Inc. v. Carter Bryant</u>
      *Ex Parte* Motion to Compel Deposition of Lily Martinez

Dear Mr. Zeller:

This letter is to inform you that pursuant to Federal Rules of Civil Procedure 6(b), 30, 37, and Local Rules 7.19 and 37-1 of the United States District Court for the Central District, Defendant and Cross-Claimant Carter Bryant ("Bryant") will move *Ex Parte* for an order compelling Plaintiff and Counter-Defendant Mattel, Inc. ("Mattel") to produce Lily Martinez for her deposition on January 26, 2005, as previously noticed. Per Local Rule 37-1, Bryant has made good faith efforts for over two months to secure Ms. Martinez' deposition attendance prior to resorting to this application, and this letter will serve as a further such effort.

In November, 2004, counsel met and conferred on available dates for Mattel witnesses to attend depositions. We were told Ms. Martinez was unavailable in December, and we therefore set her deposition in late January, as requested. Unlike Mattel's immediate protestation to the deposition notices of Matt Bousquette and Sergio Hernandez, no objection of any kind was raised to the Martinez deposition notice. On January 10, 2005, my partner Doug Wickham sent you a letter confirming that the deposition of Ms. Martinez would go forward on January 26. On January 18, I sent you a letter asking you to bring the original "Toon Teens" to the Martinez deposition.

I cannot imagine the basis upon which Mattel could withhold Ms. Martinez from her deposition. Previously, Mattel has produced documents reflecting the "Toon Teens" artwork she purportedly created, and John Quinn questioned Bryant at length about both Ms. Martinez and the "Toon Teens", and their purported relation to "Bratz."

I was quite surprised when your January 18 letter informed me, for the first time, that Mattel would *not* produce Ms. Martinez for her deposition. No explanation of any kind was given, or even attempted. As you know, Ms. Martinez' testimony is critical to this case, and

**EXHIBIT 25**

Received:    1/20/06 12:37PM;                  310 ~~~ ~~~~ -- ----- .
JAN-20-2005 12:23 FROM:LITTL    .DELSON   310 553 5583        213 6240643        P.3/3

Michael T. Zeller
January 20, 2005
Page 2


relevant to, among other things, the amount in controversy and the existence of federal question jurisdiction, both in dispute in Mattel's pending motion to remand, which is scheduled to be heard on January 31, 2005.  Your inexplicable, unilateral refusal to produce Ms. Martinez improperly denies Bryant of testimony relevant to the upcoming motion for remand, as well as the defense of this case and prosecution of his cross-claims.

Please be advised that if you do not confirm in writing to me today by 2:00 p.m. that you will produce Ms. Martinez for her deposition noticed for January 26, 2005, we will be forced to file an *Ex Parte* application seeking a Court order compelling her to appear for her deposition.

I look forward to hearing from you

Very truly yours,


Keith A. Jacoby

cc:    Robert F. Millman, Esq.

Los_Angeles:391550.1 028307.1010

EXHIBIT 25

Received.   ......   ....
JAN-20-2005 12:22 FROM:LITTLE'   DELSON   310 553 5583      713 6240643      P.1/3



## LITTLER MENDELSON*
### A PROFESSIONAL CORPORATION

### FACSIMILE COVER SHEET

#### January 20, 2005

To:   Michael T. Zeller, Esq.        Fax:   (213) 443-3100   Phone:   (213) 624-0643
      Quinn Emanuel Urquhart Oliver &
      Hedges, LLP

Fax #(s) verified before sending (initial):

From:   Keith A. Jacoby            Fax:   310.553.5583   Phone:   310.772.7284

Length, including this cover letter:   3      Pages

If you do not receive all pages, please call Sender's Phone Number.

This is the only copy sent to you unless one of the following is checked.
☒ Original sent by regular mail.      ☐ Original sent by overnight service.
☐ Original will be hand-delivered.

Message:

CONFIDENTIALITY — The information contained in this fax message is intended only for the personal and confidential use of the designated recipient(s) named above. This message is a communication from attorneys or their agents relating to pending legal matters and, as such, is intended to be privileged and/or confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us by mail. Thank you.

Transmittal Completed: _____ am / pm   Client Code: __028307.1010__   User Number: __1498__

THE NATIONAL EMPLOYMENT & LABOR LAW FIRM*
2049 Century Park East, 5th Floor, Los Angeles, CA 90067.3107 Tel: 310.553.0308 Fax: 310.553.5583, www.littler.com

**EXHIBIT 25**

**EXHIBIT 26**

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-624-7707 FAX 213-624-0643

January 20, 2005

<u>By Facsimile</u>

Keith A. Jacoby, Esq.
Littler Mendelson, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California 90067

<u>Mattel, Inc. v. Bryant</u>

Dear Keith:

Thank you for your letter of this afternoon, sent in response to my January 17 letter, regarding Lily Martinez.

First, your letter is not accurate in claiming that defendants noticed Ms. Martinez's deposition on a date that was at our request. We never discussed producing Ms. Martinez for deposition at a particular time or, for that matter, at all. To the contrary, defendants' notice here was sent out in accordance with their usual practice of serving deposition notices (often multiple ones for the same witness) for dates unilaterally selected by defendants.

Second, your letter confirms that defendants have no basis for taking Ms. Martinez's deposition, let alone to compel it through an <u>ex parte</u> that dispenses with any meet and confer, with the Joint Stipulation process and with the requirements for noticed motions. The lack of justification for defendants' threatened <u>ex parte</u> is all the more evident given that defendants are simply seeking to leap-frog over the discovery motions that we have had to file and have in process just to get the basic discovery on which defendants have been stonewalling for weeks and months.

Defendants' belated insistence that they need Ms. Martinez's deposition to oppose Mattel's motion for remand--which was filed over seven weeks ago and has been fully briefed--certainly

**quinn emanuel urquhart oliver & hedges, llp**

NEW YORK | 51 Madison Avenue, 22nd Floor | New York, New York 10010 | TEL 212-702-8100 FAX 212-702-8200
SAN FRANCISCO | 50 California Street, 22nd Floor | San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560 | Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
PALO ALTO | 650 Page Mill Road | Palo Alto, California 94304 | TEL 650-801-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200 | San Diego, California 92121 | TEL 858-812-3100 FAX 858-812-3336

186                                                    **EXHIBIT 26**

speaks to defendants' recognition that Bryant's second removal was frivolous.  But no post-removal testimony, whether by Ms. Martinez or anyone else, could possibly salvage Bryant's improper removal.  Not only is Ninth Circuit law clear on the point, but Judge Manella indeed ruled that such matters are irrelevant in her August 20, 2004 Order rejecting Bryant's first removal.

Since it is now past 5 p.m., and we have not seen any ex parte, I presume that defendants have decided not to bring it today.  If defendants do proceed with an ex parte, please be sure to timely serve it as required by the Rules.

Very truly yours,

Michael T. Zeller

07209/631315.1

2

187                                        **EXHIBIT 26**