# Exhibit 18

CONFIDENTIAL - ATTORNEYS' EYES ONLY

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3               EASTERN DIVISION                Certified Copy

4

5     ------------------------------

6     MATTEL, INC., a Delaware          )

7     Corporation,                      )

8                  Plaintiff,           )

9                  vs.                  )  No. CV 04-9059

10    CARTER BRYANT, an individual;     )  NM  (RNBx)

11    and DOES 1 through 10,               VOLUME I

12    Inclusive,                        )

13                  Defendants.         )

14    ------------------------------    )

15    (COMPLETE CAPTION ON NEXT PAGE.)

16

17       CONFIDENTIAL - ATTORNEYS' EYES ONLY

18

19    Videotaped Deposition of KEVIN FARR,

20    taken at 300 South Grand Street,

21    Los Angeles, California, commencing

22    at 9:01 A.M., Monday, January 28, 2008,

23    before Ricki Q. Melton, CSR No. 9400,

24    RPR No. 45429.

25    PAGES 1 - 324        Exhibit 18 , P. 353              i

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3                   EASTERN DIVISION

4

5     ------------------------------

6     MATTEL, INC., a Delaware        )

7     Corporation,                    )

8               Plaintiff,            )

9               vs.                   ) No. CV 04-9059

10    CARTER BRYANT, an individual;   )    NM (RNBx)

11    and DOES 1 through 10,          )

12    Inclusive,                      )

13               Defendants.          )

14    ------------------------------  )

15    CARTER BRYANT, on behalf of     )

16    himself, all present and        )

17    former employees of Mattel,     )

18    Inc., and the general public,   )

19               Counter-Claimants,   )

20               vs.                  )

21    MATTEL, INC., a Delaware        )

22    Corporation,                    )

23               Counter-Defendant.   )

24    ------------------------------
```

Exhibit 18 , P. 354

2

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES OF COUNSEL:

 2

 3        For the Plaintiff:

 4            QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

 5            BY:  ROBERT P. FELDMAN, ESQ.

 6            865 South Figueroa Street, Tenth Floor

 7            Los Angeles, California 90017

 8            (213) 443-3000

 9

10                        -and-

11

12            MATTEL, INC.

13            BY:  MICHAEL MOORE, ESQ.

14            333 Continental Boulevard

15            El Segundo, California 90245-5012

16            (310) 252-2000

17            michael.moore@mattel.com

18

19        For the Defendant and Counterclaimant

20        Carter Bryant:

21            KEKER & VAN NEST LLP

22            (NO APPEARANCE MADE)

23            710 Sansome Street

24            San Francisco, California 94111-1704

25            (415) 391-5400
```

3

Exhibit 16 , P. 355

CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES OF COUNSEL (Continued):

 2

 3       For Defendant MGA Entertainment, Inc.:

 4

 5           SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

 6           BY:  CARL A. ROTH, ESQ.

 7                RYAN WEINSTEIN, ESQ.

 8           300 South Grand Avenue

 9           32nd Floor

10           Los Angeles, California 90071

11           (213) 687-5000

12           carl.roth@skadden.com

13

14       Also Present:

15

16           Video Operator - Dudley Fetzer

17

18

19

20

21

22

23

24

25              Exhibit 18 , P. 356
```

4

CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | Q.   Okay. | 02:17:09 |
| 2 | A.   I'm sure that wasn't very technically | 02:17:09 |
| 3 | correct, but... | 02:17:12 |
| 4 | Q.   So at some point, you began selling DVD's | 02:17:13 |
| 5 | that generated -- or had a story associated with a | 02:17:19 |
| 6 | doll; is that right? | 02:17:22 |
| 7 | A.   Correct. | 02:17:23 |
| 8 | Q.   And then you expanded this concept into | 02:17:23 |
| 9 | other dolls because you found it to be successful? | 02:17:26 |
| 10 | A.   We thought it would be successful. | 02:17:29 |
| 11 | Q.   Was it successful? | 02:17:31 |
| 12 | A.   Some was successful, and some was not | 02:17:33 |
| 13 | successful. | 02:17:36 |
| 14 | Q.   How -- do you know how the company | 02:17:36 |
| 15 | develops a theme?  Does it have story writers, or | 02:17:38 |
| 16 | how does it -- | 02:17:41 |
| 17 | A.   You know, again you're getting out of my | 02:17:45 |
| 18 | area of responsibility.  So I'm not sure all of the | 02:17:48 |
| 19 | ways we were creating stores during this time | 02:17:50 |
| 20 | frame. | 02:17:53 |
| 21 | Q.   Okay.  And how -- how was the story | 02:17:53 |
| 22 | associated with a doll integrated into the | 02:17:57 |
| 23 | advertising for the doll?  Do you know? | 02:17:59 |
| 24 | A.   Again out of my area of expertise.  So it | 02:18:03 |
| 25 | depends upon, you know, what the content was and | 02:18:06 |

219

Exhibit 18 , P. 357

CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | then what was the appropriate way to advertise | 02:18:09 |
| 2 | that.  So you are getting beyond my area of | 02:18:12 |
| 3 | expertise. | 02:18:15 |
| 4 | Q.   Okay.  Do you know what the Fairytopia | 02:18:15 |
| 5 | world was or is? | 02:18:20 |
| 6 | A.   Yes.  I believe it's about fairies and a | 02:18:22 |
| 7 | story about fairies. | 02:18:27 |
| 8 | Q.   Okay.  And what about the Happy Family | 02:18:28 |
| 9 | world? | 02:18:32 |
| 10 | A.   Again, I think that was about a family and | 02:18:33 |
| 11 | nurturing. | 02:18:36 |
| 12 | Q.   Okay.  And what about Cali Girl?  What is | 02:18:38 |
| 13 | that? | 02:18:41 |
| 14 | A.   Cali Girl was about beach story. | 02:18:41 |
| 15 | Q.   Okay.  Does Mattel continue to have | 02:18:46 |
| 16 | "worlds of" strategy within Barbie? | 02:18:59 |
| 17 | A.   Yes. | 02:19:00 |
| 18 | Q.   Okay.  What about with respect to My | 02:19:03 |
| 19 | Scene? | 02:19:09 |
| 20 | A.   I don't know the answer to that question. | 02:19:09 |
| 21 | It is not as broad as it was in this particular | 02:19:14 |
| 22 | year today.  So it's not as -- as across the line | 02:19:16 |
| 23 | as it was -- today it is not as across the line as | 02:19:21 |
| 24 | it was back in this particular year. | 02:19:24 |
| 25 | Q.   So do you recall that, in the 2003, 2004, | 02:19:26 |

220

CONFIDENTIAL - ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | time frame, this concept of using stories with | 02:19:30 |
| 2 | dolls was something that was particularly focused | 02:19:36 |
| 3 | on? | 02:19:36 |
| 4 | A.   Yes. | 02:19:36 |
| 5 | Q.   Okay.  Is that something that Matt | 02:19:39 |
| 6 | Bousquette was the primary driver behind? | 02:19:41 |
| 7 | A.   Yes. | 02:19:44 |
| 8 | Q.   Do you recall ever discussing it with | 02:19:45 |
| 9 | Mr. Bousquette? | 02:19:47 |
| 10 | A.   You know, I probably had some discussions | 02:19:51 |
| 11 | about it, but it was more with regard to just the | 02:19:53 |
| 12 | concept. | 02:19:56 |
| 13 | Q.   Okay. | 02:19:56 |
| 14 | A.   Okay. | 02:19:57 |
| 15 | MR. FELDMAN:  Could we take a two-second | 02:20:12 |
| 16 | break? | 02:20:15 |
| 17 | MR. ROTH:  Sure. | 02:20:15 |
| 18 | MR. FELDMAN:  Are you done with that | 02:20:16 |
| 19 | topic? | 02:20:18 |
| 20 | MR. ROTH:  Yeah. | 02:20:20 |
| 21 | VIDEO OPERATOR:  The time is 2:20.  We are | 02:20:21 |
| 22 | off the record. | 02:22:27 |
| 23 | (Off the record.) | 02:22:27 |
| 24 | VIDEO OPERATOR:  The time is 2:27.  We are | 02:22:27 |
| 25 | on the record. | 02:27:48 |

221

CONFIDENTIAL – ATTORNEYS' EYES ONLY

| | | |
|---|---|---|
| 1 | MR. FELDMAN:  Thank you for the break. | 02:27:48 |
| 2 | MR. ROTH:  Sure. | 02:27:51 |
| 3 | I would like to mark as Exhibit 2515 a | 02:27:51 |
| 4 | multipage document Bates numbered M 0737414 through | 02:27:55 |
| 5 | 7439. | 02:27:59 |
| 6 | (Document referred to above was | 02:28:18 |
| 7 | marked as Defendants' Exhibit 2515 | 02:28:18 |
| 8 | for identification by the reporter | 02:28:18 |
| 9 | and is attached hereto.) | 02:28:19 |
| 10 | BY MR. ROTH: | 02:28:19 |
| 11 | Q.  Do you recognize this document, sir? | 02:28:19 |
| 12 | A.  I recognize it as minutes of the board of | 02:28:20 |
| 13 | directors meeting of March 12th, 2004. | 02:28:24 |
| 14 | Q.  Okay.  And you are not a member of the | 02:28:26 |
| 15 | Mattel board of directors, are you? | 02:28:30 |
| 16 | A.  No. | 02:28:31 |
| 17 | Q.  Okay.  I notice underneath the list of | 02:28:32 |
| 18 | directors there's a paragraph there which lists | 02:28:35 |
| 19 | certain executives who attended the meeting. | 02:28:38 |
| 20 | A.  Yes. | 02:28:40 |
| 21 | Q.  And you are among those? | 02:28:41 |
| 22 | A.  Yes. | 02:28:42 |
| 23 | Q.  Do you normally attend boards of director | 02:28:42 |
| 24 | meetings? | 02:28:45 |
| 25 | A.  I routinely do that, of Mattel. | 02:28:45 |

222

Exhibit 18 , P. 360

# Exhibit 19

```
 1   DALE M. CENDALI (admitted pro hac vice)
     DIANA M. TORRES (S.B. #162284)
 2   JAMES P. JENAL (S.B. #180190)
     O'MELVENY & MYERS LLP
 3   400 South Hope Street
     Los Angeles, CA 90071-2899
 4   Telephone:   (213) 430-6000
     Facsimile:   (213) 430-6407
 5   Email:       dtorres@omm.com

 6   PATRICIA GLASER (S.B. #55668)
     CHRISTENSEN, GLASER, FINK, JACOBS,
 7   WEIL & SHAPIRO, LLP
     10250 Constellation Boulevard, 19th Floor
 8   Los Angeles, CA 90067
     Telephone:   (310) 553-3000
 9   Facsimile:   (310) 557-9815

10   Attorneys for MGA Entertainment, Inc.

11                 UNITED STATES DISTRICT COURT

12                CENTRAL DISTRICT OF CALIFORNIA

13                                    Case No.  CV 04-09049 SGL (RNBx)
                                      (consolidated with CV 04-9059 & 05-2727)
14   CARTER BRYANT, an individual,
                                      MGA ENTERTAINMENT, INC.'S
15               Plaintiff,           SECOND SUPPLEMENTAL
                                      RESPONSES TO MATTEL, INC.'S
16        v.                          FIRST SET OF INTERROGATORIES
     MATTEL, INC., a Delaware         RE CLAIMS OF UNFAIR
17   Corporation,                     COMPETITION
                 Defendant.
18

19

20   CONSOLIDATED WITH              ·Judge:  Hon. Stephen G. Larson
     MATTEL, INC. v. BRYANT and
21   MGA ENTERTAINMENT, INC. v.     Discovery Cut-Off:  March 3, 2008
     MATTEL, INC.
22

23   PROPOUNDING PARTY:      MATTEL, INC.

24   RESPONDING PARTY:       MGA ENTERTAINMENT, INC.

25   SET NO.:                ONE

26

27

28
     CONFIDENTIAL                    MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                     MATTEL'S FIRST SET OF INTERROGATORIES
```

Exhibit 19, P. 361

## PRELIMINARY STATEMENT

MGA Entertainment, Inc. ("MGA") has not yet completed its investigation relating to the facts of this action and has not completed preparation for trial. MGA responds to these interrogatories based upon the information presently available to it and without prejudice to its right to amend or supplement its responses and to present evidence which may hereafter be discovered or become available.

MGA will respond to each interrogatory as it understands and interprets each interrogatory. If Mattel, Inc. ("Mattel") subsequently asserts any interpretation of any interrogatory that differs from that of MGA, MGA reserves the right to supplement its objections and responses.

By providing these responses, MGA does not concede that any of the information sought by these interrogatories is relevant or discoverable. MGA provides these responses and objections without waiving or intending to waive, but rather, on the contrary, preserving and intending to preserve: (a) the right to object on any grounds to the use or introduction into evidence of the information provided in response to these interrogatories; (b) the right to object to the use of the information provided in response to the interrogatories in any subsequent proceeding in, or the arbitration of this or any other action; and (c) the right to object on any ground at any time to other interrogatories or further discovery into any of the subject matters addressed in these interrogatories or the responses thereto.

MGA's response to these interrogatories is conditioned on the terms of the Stipulated Protective Order that is in place in this action.

MGA shall not provide any privileged or protected information, including without limitation, information protected by the attorney-client privilege or the attorney work product doctrine, and nothing herein may be construed as a waiver of any applicable privilege or protection. Any inadvertent production of privileged or protected information shall not be construed as a waiver of any privilege or protection attaching thereto and MGA reserves the right, as set forth in the Stipulated Protective Order, to

CONFIDENTIAL                    - 2 -        MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                             MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 362

1  correct the record with regard to any such information and to supplement or amend these

2  responses, which supplemental or amended response shall become the operative

3  response.

4  

### GENERAL OBJECTIONS

6        1.    MGA objects to each interrogatory to the extent that it seeks

7  information protected from discovery by the attorney-client privilege, work-product

8  doctrine, right to privacy, or any other applicable legal, statutory or constitutional

9  privilege.

10        2.    MGA objects to each interrogatory to the extent that it seeks the

11  disclosure of confidential, proprietary or trade secret information.  MGA may provide

12  some such information subject to the terms and conditions of the protective order

13  governing this case.

14        3.    MGA objects to each interrogatory to the extent that it seeks

15  information that Mattel equally may otherwise obtain from public sources or with less

16  burden and expense by using other means of discovery.

17        4.    MGA objects to each interrogatory to the extent that it is premature,

18  since it asks or requires MGA to analyze or formulate contentions on matters for which

19  MGA's investigation and discovery  have not yet been completed.

20        5.    MGA objects to these interrogatories to the extent that they may

21  unfairly seek to restrict the facts on which MGA may rely at trial.  Discovery has not been

22  completed and MGA is not yet necessarily in possession of all the facts and documents

23  upon which MGA intends to rely.  All of the responses submitted herewith are tendered to

24  Mattel with the reservation that the responses are submitted without limiting the evidence

25  on which MGA may rely to support the contentions that MGA may assert at the trial of

26  this action and to rebut or impeach the contentions, assertions and evidence that Mattel

27  may present.  MGA reserves the right to supplement or amend these responses at a future

28  date.

CONFIDENTIAL                  - 3 -        MGA'S SECOND SUPPLEMENTAL RESPONSES TO
MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit  19 , P. 363

6.    MGA objects to each interrogatory to the extent that it seeks information that will be the subject of expert witness testimony and that is therefore premature.

7.    MGA objects to Mattel's definitions of "MGA," "YOU," and "YOUR" as overbroad and unduly burdensome, vague and ambiguous, and on the grounds that the definitions call for legal conclusions.

8.    MGA objects to Mattel's definition of "IDENTIFY" in each instance used on the grounds that Mattel's instructions in this regard are overbroad, compound and unduly burdensome.

9.    MGA objects to Mattel's definition of "CONTESTED MGA PRODUCTS" as overbroad, compound and unduly burdensome.

10.    MGA objects to Mattel's definition of "EMBODIMENT" as overbroad, compound and unduly burdensome.

11.    MGA objects to each interrogatory that instructs MGA to "State all facts" on the grounds that Mattel's instructions in this regard are overbroad, compound and unduly burdensome.

12.    MGA objects to these interrogatories to the extent that their subparts, including those arising from the "definitions" and "instructions," actually constitute separate interrogatories, thereby bringing the number of Mattel's interrogatories to well over the 25 interrogatories allowed under the Federal Rules of Civil Procedure.

## INTERROGATORIES

## INTERROGATORY NO. 1:

IDENTIFY, fully and separately, each and every PERSON who was involved in the marketing, advertising, promotion, licensing, offering for sale, conception, origin, creation, design, development, sculpting, engineering, reduction to practice, tooling or painting of, or who otherwise produced or contributed to any EMBODIMENT of the

CONFIDENTIAL                    - 4 -            MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                                MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 364

1  CONTESTED MGA PRODUCTS, including without limitation by fully and separately

2  describing each such PERSON's role and the start and end dates of such PERSON's

3  involvement.

4
5  **RESPONSE TO INTERROGATORY NO. 1:**

6       MGA incorporates by reference the above-stated general objections as if fully set

7  forth herein.  MGA also specifically objects to this interrogatory on the ground that it is

8  unduly burdensome and oppressive and to the extent it seeks information not relevant or

9  reasonably calculated to lead to the discovery of admissible evidence and is, thus,

10  overbroad, including, without limitation, seeking the identity of "each and every" person

11  involved in any way with the "marketing, advertising, promotion, licensing, offering for

12  sale, conception, origin, creation, design, development, sculpting, engineering, reduction

13  to practice, tooling or painting of, or who otherwise produced or contributed to any

14  EMBODIMENT of the CONTESTED MGA PRODUCTS."  MGA also objects to this

15  interrogatory on the grounds that it is compound in seeking the identities of "each and

16  every" person involved in any way with the "marketing, advertising, promotion, licensing,

17  offering for sale, conception, origin, creation, design, development, sculpting,

18  engineering, reduction to practice, tooling or painting of, or who otherwise produced or

19  contributed to any EMBODIMENT" of many different products (*e.g.*, "Bratz" dolls,

20  "Bratz Petz," the "Bratz Funky Fashion Makeover Head," "4-Ever Best Friends" products,

21  "Mommy's Little" doll products, and Alien Racers products), product packaging,

22  advertisements, etc., and is, in reality, not one but many interrogatories.  MGA also

23  objects to this interrogatory on the grounds that it seeks confidential, proprietary or

24  commercially sensitive information, the disclosure of which would be inimical to the

25  business interests of MGA.  MGA also objects to this interrogatory on the grounds that it

26  seeks information that is not in the possession, custody or control of MGA.

27       Subject to and without waiving the foregoing, MGA responds as follows:  Vast

28  numbers of persons have been involved in the "marketing, advertising, promotion,

CONFIDENTIAL                         - 5 -        MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                                  MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 365

1   licensing, offering for sale, conception, origin, creation, design, development, sculpting,

2   engineering, reduction to practice, tooling or painting of, or who otherwise produced or

3   contributed to any EMBODIMENT of the CONTESTED MGA PRODUCTS," including

4   hundreds of MGA employees, contractors, distributors, retailers, advertisers, licensees and

5   others. Identifying each such person is impracticable. Nonetheless, various persons

6   responsive to this interrogatory are identified in documents produced or to be produced by

7   MGA in discovery. In addition, persons responsive to this interrogatory include, but are

8   not limited to: Lara Alacontra (MGA's former Product Manager, employed by MGA from

9   1/01 to 6/01); Dave Appleby (MGA sales representative); Maggie Bermudez (MGA

10  Manager of Product Design, at MGA from 4/02 to 5/05); Karen Bonde (MGA's Director

11  of Product Development, Consumer Electronics, at MGA since 11/03); Carter Bryant;

12  Ron Brawer (MGA's President of Global Sales and Planning since 10/04); Shawn Brower

13  (MGA product development employee from 1/02 to 4/04); C.P. Bui (MGA product

14  development from 3/98 to 11/99); Helene Bartels (Account Manager at MGA from 1/95

15  to 3/01); Jessica Caiafa (former MGA Sales Manager from 8/01 to 11/02 and 7/03 to

16  7/05); Yuval Caspi (MGA's Vice President, Boys Toys, at MGA since 8/99); Fabienne

17  Chonavel (former Marketing Director at MGA; employed by MGA from 4/92 to 8/02);

18  Nick Contreras (MGA's Vice President of Customer Marketing since 11/04); Dan Cooney

19  (MGA's Vice President of Sales, National Accounts since 5/06); David Dees (freelance

20  illustrator on "Bratz" projects); Moira Delaney (MGA's Director of Web Development, at

21  MGA from 7/03 to 12/06); Leon Djiguerian (product development at MGA, employed by

22  MGA since 11/00); Diana Eisenberg (Creative Director at MGA since 10/01); Margo

23  Eldridge (MGA freelancer until November 2005); Monica Fitzhugh (former MGA

24  product development employee; employed by MGA from 5/98 to 8/99); Martha Garcia,

25  (MGA's Art Project Manager, at MGA since 8/02); Paula (Treantafalles) Garcia (MGA's

26  Vice President of Product Design and Development; employed by MGA since 4/00);

27  Talar Gedikian (packaging planner; employed by MGA since 6/01); Marcy George

28  (MGA's Domestic Director of Licensing, employed by MGA since 3/03); Cami Gillmore

CONFIDENTIAL                    - 6 -       MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                            MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 366

1  (MGA product development from 5/99 to 7/00); Dana Goldstein (former MGA licensing

2  employee from 7/02 to 7/03); Leslie Gross (MGA product development from 6/98 to

3  5/99); Chistopher Hardouin (Project Manager at MGA from 6/01 to 7/04); Becky Harris

4  (sales administrator at MGA since 7/94); Rachel Harris (former Manager of Creative

5  Services and Product Design at MGA; employed by MGA from 10/00 to 10/01); Jill

6  Hatch (MGA's Senior Director, National Sales since 9/06); Martin Hitch (former MGA

7  employee from 1/01 to 6/02); Jim Huntley (MGA's Vice President of Marketing from

8  5/03 to 8/06); Randi Kagan (former Marketing Director at MGA from 9/02 to 7/03); Ken

9  Kaufman (MGA's head of Advertising and Visual Services since 1/05); Andreas Koch

10 (former product manager at MGA from 10/99 to 1/01); Ellen Komatsu (Senior Designer,

11 at MGA since 8/03); Cecilia Kwok (former MGA Hong Kong employee in product

12 development); Isaac Larian (the President and CEO of MGA); Kerri (Brode) Legg (MGA

13 employee since 3/00); Lydia Lopez (MGA's VP of International Sales from 06/99 to

14 10/00); Diana Luna (licensing manager at MGA since 7/01); Dave Malacrida (MGA's VP

15 of Public Relations since 8/99); Barbara Malcolm (MGA's Accounting Manager, at MGA

16 since 8/91); Jennifer Maurus (former sales manager at MGA; employed from 6/99 to

17 12/01); Dennis Medici (former CFO at MGA from 8/98 to 2/02); Gary O'Brien (MGA

18 account executive, at MGA from 5/04 to 7/04); Victoria O'Connor (MGA's Vice

19 President of Licensing at MGA from 4/99 to 2/03); Charles O'Connor (former Senior

20 Copywriter at MGA from 11/00 to 5/05); Colleen O'Higgins (former Product Manager at

21 MGA from 7/00 to 2/01); Tina Patel (former "Bratz" brand manager from 8/02 to 5/03);

22 Ninette Pembleton (MGA's Vice President of Operations at MGA since 6/01); Karen

23 Quadrio (MGA's Senior Vice President, Licensing and Business Development, at MGA

24 since 10/01); Wendy Reed (former Soft Goods Specialist at MGA from 11/00 to 1/01);

25 Scott Reyes (former employee at MGA from 2/04 to 3/05); Judy Rich (former Project

26 Planner for MGA from 4/00 to 4/01); Lon Ross (former marketing director at MGA from

27 11/00 to 8/01); Shirin Salemnia (head of market research at MGA; employed by MGA

28 since 2/03); J.P. Schiffliano (former Packaging Designer at MGA from 10/99 to 10/00);

CONFIDENTIAL                           - 7 -          MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                                      MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 367

1 Brian Schmidt (former MGA Game Designer/Multimedia Programmer from 04/99 to
2 3/01); Shelly Shibata (licensing manager at MGA since 10/02); Aileen Storer (Creative
3 Director of Bratz & Dolls; started as a freelancer designer at MGA in Fall 2000); Stephen
4 Tarmichael (freelance hair rooter); Lisa Tawil (former MGA licensing employee from
5 4/02 to 7/03); Gary Thomson (former VP of Sales at MGA from 9/99 to 8/04); Paul
6 Warner (former VP of Sales at MGA from  8/98 to 9/01); Summer Wells (former MGA
7 employee in product development, at MGA from 1/03 to 8/05); Dawn Whitaker (MGA
8 Product Designer from 12/04); Kevin Bloomfield (Senior Designer at MGA since 11/02);
9 Samuel Wong (former MGA Hong Kong product manager); and Cherisse Wright (former
10 MGA employee from 5/04 to 8/05).

11 **INTERROGATORY NO. 2:**

12
13    IDENTIFY, fully and separately, each and every concept, design, product, or
14 product packaging that YOU contend MATTEL copied or infringed (including without
15 limitation by internal job or product number, SKU, and bar code number) and, for each
16 such concept, design, product, or product packaging, describe, with specificity and in
17 detail, those attributes of the concept, design, product, or product packaging that were
18 copied or infringed by MATTEL and the alleged source(s) of those attributes.

19 **RESPONSE TO INTERROGATORY NO. 2:**

20    MGA incorporates by reference the above-stated general objections as if fully set
21 forth herein.  MGA also specifically objects to this interrogatory to the extent it seeks
22 information not relevant or reasonably calculated to lead to the discovery of admissible
23 evidence and is, thus, overbroad, including, without limitation, seeking the "internal job or
24 product number, SKU, and bar code number" of each "concept, design, product, or
25 product packaging" identified in this response.  MGA also objects to this interrogatory on
26 the grounds that it seeks information that may be the subject of expert witness analysis
27 and testimony and is premature.

28

CONFIDENTIAL                    - 8 -        MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                             MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 368

1    Subject to and without waiving the foregoing, MGA responds as follows:  Mattel

2  has copied and infringed MGA's concepts, designs, products, and product packaging

3  listed below:

4       • "First-generation" "Bratz" female fashion dolls.  The common attributes of

5         the "Bratz" female fashion dolls that Mattel has copied or infringed include

6         their disproportionately large heads; distinctive faces with artfully made-up,

7         heavy-lidded, sultry, almond-shaped large eyes and large, overly-lined and

8         lipsticked lips; trendy, hip clothes and hair styles; and oversized feet.  The

9         SKU numbers for the "Bratz" female fashion dolls that Mattel has copied or

10        infringed are as follows: "Sasha" (SKU 248552); "Cloe" (SKU 248538);

11        "Jade" (SKU 248545); "Yasmin" (SKU 248569).

12      • The packaging of the "Bratz" female fashion dolls. The attributes of the

13        packaging of the "Bratz" fashion dolls that Mattel has copied or infringed

14        include the transparent and open style of the packaging, the *tout ensemble*-

15        style packaging, and the "flying banner" ribbon-style slogan running across

16        the middle of the box.  The SKU numbers for the "Bratz" female fashion

17        dolls that were sold in packaging copied or infringed by Mattel are as

18        follows: "Bratz Play Sportz Teamz Soccer" Cloe (SKU 334262 & 337911);

19        "Bratz Play Sportz Teamz Softball" Cloe (SKU 337850 & 337867); "Sasha"

20        (SKU 248552); "Cloe" (SKU 248538); "Jade" (SKU 248545); "Yasmin"

21        (SKU 248569).

22      • The "Wintertime Wonderland" theme and concept for "Bratz" fashion dolls.

23        The attributes of the "Wintertime Wonderland" theme and concept that

24        Mattel has copied or infringed include a line of fashion dolls that are dressed

25        in trendy winter clothes and are packaged with winter sport accessories.  The

26        SKU numbers for the "Wintertime Wonderland"-themed "Bratz" fashion

27        dolls and accessories that Mattel has infringed or copied are as follows:

28        "Bratz Wintertime Wonderland Collection" "Cloe" (SKU 260356); "Bratz

CONFIDENTIAL                    - 9 -        MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                             MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 365

1  Wintertime Wonderland Collection" "Yasmin" (SKU 260363); "Bratz

2  Wintertime Wonderland Collection" "Jade" (SKU 260387); "Bratz

3  Wintertime Wonderland Collection" "Dana" (SKU 260370); "Bratz

4  Wintertime Wonderland Collection" "Sasha" (SKU 260394); "Bratz

5  Wintertime Wonderland Collection" (SKU 263333); "Bratz Wintertime

6  Collection" "Cameron" (SKU 277606); "Bratz Wintertime Collection"

7  "Dylan" (SKU 277613); "Bratz Wintertime Collection" "Eitan" (SKU

8  277620); "Bratz Wintertime Collection" "Koby" (SKU 277637); "Bratz

9  Wintertime Collection" "Cade" (SKU 277644); "Boyz Wintertime

10  Collection" 6 Piece Assortment (SKU 277590).

11  • The "Formal Funk" theme and concept for "Bratz" fashion dolls. The

12  attributes of the "Formal Funk" theme and concept that Mattel has copied or

13  infringed include a line of fashion dolls that are dressed in trendy formal

14  wear or evening gowns. The SKU numbers for the "Formal Funk"-themed

15  "Bratz" fashion dolls and accessories that Mattel has infringed or copied are

16  as follows: "Bratz Formal Funk Collection" "Cloe" (SKU 260400); "Bratz

17  Formal Funk Collection" "Jade" (SKU 260431); "Bratz Formal Funk

18  Collection" "Yasmin" (SKU 260417); "Bratz Formal Funk Collection"

19  "Dana" (SKU 260424); "Bratz Formal Funk Collection" "Sasha" (SKU

20  260448); "Bratz Formal Funk Collection" Assortment (SKU 262008); "Bratz

21  Boyz Formal Funk Collection" "Cameron" (SKU 261209); "Bratz Boyz

22  Formal Funk Collection" "Dylan" (SKU 261216); "Bratz Boyz Formal Funk

23  Collection" "Eitan" (SKU 261223); "Bratz Boyz Formal Funk Collection"

24  "Koby" (SKU 261230); "Bratz Boyz Formal Funk Collection" Assortment

25  (SKU 261193); "Bratz Formal Funk Date Pak" "Cloe" + Boy (SKU

26  272793); "Bratz Formal Funk Date Pak" "Jade" + Boy (SKU 272809);

27  "Bratz Formal Funk Date Pak" "Yasmin" + Boy (SKU272816); "Bratz

28

CONFIDENTIAL        - 10 -      MGA'S SECOND SUPPLEMENTAL RESPONSES TO
MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 370

Formal Funk Date Pak" "Dana" + Boy (SKU 272823); "Bratz Formal Funk
Date Pak" "Sasha" + Dude (SKU 272830).

- The "Sun-Kissed Summer" theme and concept for "Bratz" fashion dolls.
The attributes of the "Sun-Kissed Summer" theme and concept that Mattel
has copied or infringed include a line of fashion dolls that are dressed in
trendy bathing suits and are packaged with beach gear and water sport
accessories.  The SKU numbers for the "Sun-Kissed Summer"-themed
"Bratz" fashion dolls and accessories that Mattel has infringed or copied are
as follows: "Bratz Sun-Kissed Summer" "Cloe" (SKU 269526); "Bratz Sun-
Kissed Summer" "Yasmin" (SKU 269533); "Bratz Sun-Kissed Summer"
"Jade" (SKU 269540); "Bratz Sun-Kissed Summer" "Jade" (SKU 269557);
"Bratz Sun-Kissed Summer" "Sasha" (SKU 269564); "Bratz Sun-Kissed
Summer" Assortment (SKU 269519); "Boyz Sun-Kissed Summer"
"Cameron" (SKU 269588); "Boyz Sun-Kissed Summer" "Dylan" (SKU
269595); "Boyz Sun-Kissed Summer" "Koby" (SKU 269601); "Boyz Sun-
Kissed Summer" "Eitan" (SKU 269618); "Boyz Sun-Kissed Summer"
"Cade" (SKU 269625); "Boyz Sun-Kissed Summer" Assortment (SKU
269571).

- The "Forever Diamondz" theme and concept for "Bratz" fashion dolls.  The
attributes of the "Forever Diamondz" theme and concept that Mattel has
infringed or copied include a line of fashion dolls that are packaged with real
diamond jewelry that can be worn by girls.  The SKU numbers for the
"Forever Diamondz"-themed "Bratz" fashion dolls and accessories  that
Mattel has infringed or copied are: "Bratz Forever Diamondz" 6 piece
assortment (SKU 334071); "Bratz Forever Diamondz" "Cloe" (SKU
334088); "Bratz Forever Diamondz" "Yasmin" (SKU 334095); "Bratz
Forever Diamondz" "Jade" (SKU 334101); "Bratz Forever Diamondz"

CONFIDENTIAL                          - 11 -          MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                                     MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 371

1   "Sharidan" (SKU 334118); "Bratz Forever Diamondz" "Sasha" (SKU
2   333944).
3   • The distinctive trapezoidal-shaped packaging for the "Bratz Formal Funk
4   Super Stylin' Runway Disco" play set.  The SKU number for the "Bratz
5   Formal Funk Super Stylin' Runway Disco" is: 257790.
6   • The "Bratz Funky Fashion Makeover" heads.  The common attributes of all
7   "Bratz Funky Fashion Makeover" heads that Mattel has copied or infringed
8   include the distinctive faces with artfully made-up, heavy-lidded, almond-
9   shaped large eyes, and large, overly-lined and lipsticked lips.  The SKU
10  numbers for the "Bratz Funky Fashion Makeover" products that Mattel has
11  copied or infringed are as follows: "Bratz Funky Fashion Makeover" "Cloe"
12  (SKU 255406, 325598); "Bratz Funky Fashion Makeover" "Yasmin" (SKU
13  255413, 325628); "Bratz Funky Fashion Makeover" "Jade" (SKU 255420,
14  325611); "Bratz Funky Fashion Makeover" "Sasha" (SKU 255451, 327486);
15  "Bratz Funky Fashion Makeover" "Dana" (SKU 263562, 271413); "Bratz
16  Funky Fashion Makeover" "Meygan" (SKU 263555, 271420); "Bratz Funky
17  Fashion Makeover" (SKU 254324); "Bratz Funky Fashion Makeover"
18  "Nevra" (SKU 269694); "Bratz Funky Fashion Makeover" "Fianna" (SKU
19  269700); "Bratz Funky Fashion Makeover" Assortment (SKU 264644M3,
20  271437, 303367S6).
21  • The "Bratz Petz" plush toys.  The common attributes of the "Bratz Petz"
22  plush toys that Mattel has copied or infringed include animals with large,
23  human-like, made-up eyes with long eye lashes and wearing trendy human
24  clothing.  The SKU numbers for the "Bratz Petz" plush toys that Mattel has
25  copied or infringed are as follows: "Bratz Petz Catz" "Brigitte" (SKU
26  268796, 304739); "Bratz Petz Catz" "Jolie" (SKU 268802, 304715); "Bratz
27  Petz Catz" "Kendall" (SKU 268819, 304708); "Bratz Petz Catz" "Daphne"
28  (SKU 268826, 304722); "Bratz Petz Foxz" "Carly" (SKU 274131); "Bratz

CONFIDENTIAL                    - 12 -         MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                              MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 372

Petz Foxz" "Reilly" (SKU 274148); "Bratz Petz Foxz" "Shayna" (SKU 274155); "Bratz Petz Foxz" "Bree" (SKU 274162); "Bratz Petz Foxz" Assortment (SKU 274124); "Bratz Petz Dogz" "Shae" (SKU 274087); "Bratz Petz Dogz" "Kali" (SKU 274094); "Bratz Petz Dogz" "Pilar" (SKU 274100); "Bratz Petz Dogz" "Abby" (SKU 274117); "Bratz Petz Dogz" Assortment (SKU 274070).

• The packaging for "Bratz Petz" plush toys. The attributes of the packaging for the "Bratz Petz" plush toys that Mattel has copied or infringed include an open box with no top and with partial side panels that slope from a narrow front panel to a higher back panel. The SKU numbers for the "Bratz Petz" that were sold in the packaging copied or infringed by Mattel are listed above.

• The "4-Ever Best Friends" fashion dolls. The attributes of the "4-Ever Best Friends" fashion dolls that Mattel has copied or infringed include the concept of a line of "little girl" fashion dolls with a number in the name of the doll line, packaged together as "friends" with themed accessories and mix-and-match outfits. The SKU numbers for the "4-Ever Best Friends" fashion dolls that were infringed or copied by Mattel are as follows: "4-Ever Best Friends Just Chillin'" "Dianthe & Akire" (SKU 277200); "4-Ever Best Friends Just Chillin'" "Brianee & Dianthe" (SKU 277217); "4-Ever Best Friends Just Chillin'" "Calista & Noelle" (SKU 277224); "4-Ever Best Friends Just Chillin'" "Akire & Calista" (SKU 277262); "4-Ever Best Friends Just Chillin'" "Noelle & Brianee" (SKU 277279); "4-Ever Best Friends Just Chillin'" "Calista & Dianthe" (SKU 277286); "4-Ever Best Friends Girl Party" "Dianthe & Akire" (SKU 277231); "4-Ever Best Friends Girl Party" "Brianee & Calista" (SKU 277248); "4-Ever Best Friends Girl Party" "Noelle & Calista" (SKU 277255); "4-Ever Best Friends Girl Party" "Akire & Brianee" (SKU 277293); "4-Ever Best Friends Girl Party" "Calista &

Dianthe" (SKU 277309); "4-Ever Best Friends Girl Party" "Calista & Noelle" (SKU 277316); "4-Ever Best Friends" 12 Piece Assortment (SKU 277194).

- The distinctive packaging for "4-Ever Best Friends" fashion dolls. The attributes of the packaging that Mattel has copied or infringed include the color schemes (both the pink and the light blue versions of the packaging), the rounded heart-like shape and packaging that serves as a display/carrying case. The SKU numbers for the "4-Ever Best Friends" fashion dolls that were sold in packaging that was infringed or copied by Mattel are listed above.

- "Mommy's Little..." line of dolls, which includes "Mommy's Little Patient" (the only doll in the line that was released by MGA). The attributes of the "Mommy's Little..." line of dolls that Mattel copied or infringed include the concept of a line or series of baby or toddler-like dolls with the words "Little" and "Mommy" in the title and that are sold with themed-accessories. Mattel also copied the headband with bow from MGA's "Mommy's Little Patient" and included a similar headband with bow on its "Little Mommy Potty Training Doll". The SKU numbers for the "Mommy's Little Patient" dolls Mattel infringed or copied are as follows: "Mommy's Little Patient" (SKU 265450, 265481, 253969, 258100); "Mommy's Little Bathtime Baby" (SKU 285328, 284314); "Mommy's Little..." 3 Piece Assortment (SKU 286608, 286615).

- "Alien Racers" toy racing vehicles. The attributes of the "Alien Racers" toy racing vehicles that Mattel copied and infringed include the strong, extreme, battle-like theme of the racing vehicles and the "Alien Racers" logo, which accentuates the "A," "R," and "S" in compressed block lettering. The SKU numbers for the "Alien Racers" toy racing vehicles that Mattel has copied or infringed are as follows: "Alien Racers RC Ultrox" (SKU 273721, 288442);

CONFIDENTIAL                         - 14 -          MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                                     MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 374

"Alien Racers RC GNARL" (SKU 273738, 288459); "Alien Racers

G'ROG" (SKU 273714, 288473); "Alien Racers SKRASH" (SKU 273745,

288480); "Alien Racers RC" 2 Piece Assortment (SKU 273707).

MGA is the source of the concepts, designs, products, and product packaging listed above.

**INTERROGATORY NO. 3:**

For each concept, design, product, or product packaging identified in YOUR response to Interrogatory No. 2, state the following facts and IDENTIFY all PERSONS with knowledge of those facts: (1) the first date that each such concept, design, product, or product packaging was shown or otherwise disclosed to any PERSON not employed by MGA; (2) the circumstances and location of that disclosure and the name(s) of PERSONS to whom the disclosure was made; and (3) the first date that each product was made available for retail sale.

**RESPONSE TO INTERROGATORY NO. 3:**

MGA incorporates by reference the above-stated general objections as if fully set forth herein. MGA also specifically objects to this interrogatory on the ground that it is unduly burdensome and oppressive and to the extent it seeks information not relevant or reasonably calculated to lead to the discovery of admissible evidence and is, thus, overbroad, including, without limitation, seeking the identity of "all" persons with knowledge of "(1) the first date that each such concept, design, product, or product packaging was shown or otherwise disclosed to any PERSON not employed by MGA; (2) the circumstances and location of that disclosure and the name(s) of PERSONS to whom the disclosure was made; and (3) the first date that each product was made available for retail sale." MGA also objects to this interrogatory on the grounds that it is compound in seeking the identities of "all" persons who have knowledge of several different facts, including "(1) the first date that each such concept, design, product, or product packaging was shown or otherwise disclosed to any PERSON not employed by

CONFIDENTIAL                              - 15 -          MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                                          MATTEL'S FIRST SET OF INTERROGATORIES

1    MGA; (2) the circumstances and location of that disclosure and the name(s) of PERSONS
2    to whom the disclosure was made; and (3) the first date that each product was made
3    available for retail sale" and is, in reality, not one but many interrogatories. MGA also
4    objects to this interrogatory to the extent it seeks information protected from disclosure by
5    the work product doctrine.
6        Subject to and without waiving the foregoing, MGA responds as follows:
7        • After a diligent investigation, MGA cannot presently recall when its "Bratz"
8          female fashion dolls and packaging were first shown to a non-MGA
9          employee, but states that MGA unveiled a preliminary sample of the "Bratz"
10         female fashion doll at the Hong Kong Toy Fair in January 2001. The first
11         date of invoice for "Bratz" female fashion dolls was May 2001.
12        • After a diligent investigation, MGA cannot presently recall when its
13         "Wintertime Wonderland"-themed "Bratz" fashion dolls were first shown to
14         a non-MGA employee. The investigation remains ongoing. MGA does not
15         know when retailers first made "Winter Wonderland"-themed "Bratz" dolls
16         available for retail sale, but states that MGA received the first order from a
17         retailer for its "Wintertime Wonderland"-themed "Bratz" dolls in May 2003.
18        • After a diligent investigation, MGA cannot presently recall when its "Formal
19         Funk"-themed "Bratz" fashion dolls were first shown to a non-MGA
20         employee. The investigation remains ongoing. MGA does not know when
21         retailers first made "Formal Funk"-themed "Bratz" dolls available for retail
22         sale, but states that MGA first shipped its "Formal Funk"-themed "Bratz"
23         dolls in May 2003.
24        • After a diligent investigation, MGA cannot presently recall when its "Sun-
25         Kissed Summer"-themed "Bratz" fashion dolls were first shown to a non-
26         MGA employee. The investigation remains ongoing. MGA does not know
27         when retailers first made "Sun-Kissed Summer"-themed "Bratz" fashion
28         dolls available for retail sale, but states that MGA received the first order

CONFIDENTIAL

- 16 -

MGA'S SECOND SUPPLEMENTAL RESPONSES TO
MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 376

1  from a retailer for its "Sun-Kissed Summer" themed "Bratz" products in

2  October 2003.

3  • After a diligent investigation, MGA cannot presently recall when its

4  "Forever Diamondz"-themed "Bratz" fashion dolls were first shown to a

5  non-MGA employee. The investigation remains ongoing. MGA does not

6  know when retailers first made "Forever Diamondz"-themed "Bratz" fashion

7  dolls available for retail sale, but states that MGA received its first order

8  from a retailer for its "Forever Diamondz"-themed "Bratz" fashion dolls in

9  May 2006.

10  • After a diligent investigation, MGA cannot presently recall when its "Bratz

11  Formal Funk Super Stylin' Runway Disco" play set was first shown to a

12  non-MGA employee. The investigation remains ongoing. MGA does not

13  know when retailers first made the "Bratz Formal Funk Super Stylin'

14  Runway Disco" play set available for retail sale, but states that MGA

15  received its first order from a retailer for its "Bratz Formal Funk Super

16  Stylin' Runway Disco" play set in June 2003.

17  • After a diligent investigation, MGA cannot presently recall when its "Bratz

18  Funky Fashion Makeover" head was first shown to a non-MGA employee,

19  the investigation remains ongoing. MGA does not know when retailers first

20  made the "Bratz Funky Fashion Makeover" head available for retail sale, but

21  states that it received its first order from a retailer for its "Bratz Funky

22  Fashion Makeover" head in May 2002.

23  • After a diligent investigation, MGA cannot presently recall when its "Bratz

24  Petz" plush toys and packaging were first shown to a non-MGA employee,

25  the investigation remains ongoing. MGA does not know when retailers first

26  made its "Bratz Petz" and packaging available for retail sale, but states that

27  MGA received its first order for its "Bratz Petz" plush toys in December

28  2003.

CONFIDENTIAL                     - 17 -          MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                                 MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 15 , P. 377

- After a diligent investigation, MGA cannot presently recall when its "4-Ever Best Friends" dolls and packaging were first shown to a non-MGA employee, but states that it introduced the "4-Ever Best Friends" dolls at the 2004 American International Toy Fair in New York City in February 2004. MGA does not know when retailers first made its "4-Ever Best Friends" dolls and packaging available for retail sale, but states that MGA received its first order from a retailer for its "4 Ever Best Friends" dolls and packaging in June 2004.

- After a diligent investigation, MGA cannot presently recall when its "Mommy's Little . . ." line of dolls were first shown to a non-MGA employee. The investigation remains ongoing. MGA does not know when retailers first made its "Mommy's Little Patient" doll available for retail sale, but states that MGA received its first order from a retailer for its "Mommy's Little Patient" doll in June 2002.

- After a diligent investigation, MGA cannot presently recall when its "Alien Racers" toy racing vehicles were first shown to a non-MGA employee, but states that it introduced "Alien Racers" toy vehicles at the 2004 American International Toy Fair in New York City in February 2004. MGA does not know when retailers first made its "Alien Racers" toy racing vehicles available for retail sale, but states that it received its first order from a retailer for its "Alien Racers" toy racing vehicles in August 2004.

## INTERROGATORY NO. 4:

State all facts RELATING TO any claim that YOU have sustained damage, loss, or injury, or there has been unjust enrichment, by reason of any act or omission by MATTEL. YOUR response should explain in detail any calculation of damage, loss, injury, or unjust enrichment that YOU have made or which has been made on YOUR behalf or at YOUR request, and should IDENTIFY all DOCUMENTS that support or

CONFIDENTIAL                                 - 18 -

—

—

otherwise bear on YOUR response and all PERSONS who have knowledge of the facts stated in YOUR RESPONSE.

**RESPONSE TO INTERROGATORY NO. 4:**

MGA incorporates by reference the above-stated general objections as if fully set forth herein. MGA also objects to this interrogatory on the grounds that it seeks information that may be the subject of expert witness analysis and testimony and is premature. MGA also objects to this interrogatory on the grounds that it is unduly burdensome and oppressive to the extent that it purports to require MGA to complete its investigation and discovery of the facts supporting its claims within the thirty day timeframe allotted to respond to this interrogatory. This case is in the early stages of discovery, and MGA has not yet completed its investigation and discovery of the facts relating to this action and has not completed preparation for trial. MGA responds to this interrogatory based upon the investigation that it has been reasonably able to conduct to date, the information presently available to it based upon that investigation, and without prejudice to its right to amend or supplement its responses and to present evidence which may hereafter be discovered or become available. MGA also objects to this interrogatory on the grounds that it is unduly burdensome and oppressive in requiring MGA to state "all facts" that collectively or individually support any or each of MGA's claims and would, in effect, unreasonably require MGA to state, in writing, a potentially immense multitude of facts covering virtually every topic that has anything to do with this litigation, unlimited in scope, time or subject matter. MGA also objects to this interrogatory to the extent it requests MGA to identify "all documents that support or otherwise bear on" MGA's response and "all persons who have knowledge of the facts" in this response as overbroad and premature as discovery is still ongoing and thus MGA cannot identify all documents that will support its claims or persons who have knowledge of the facts at this time. MGA also objects to this interrogatory on the grounds that it is compound in seeking MGA to (1) state "all facts," (2) "identify all documents that support or otherwise bear" on MGA's

CONFIDENTIAL                    - 19 -        MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                              MATTEL'S FIRST SET OF INTERROGATORIES

1  response, and (3) identify "all persons who have knowledge of the facts," and is, in
2  reality, not one but many interrogatories.  MGA also objects to this interrogatory on the
3  grounds that it seeks information that Mattel can obtain with more convenience, less
4  burden and less expense using other methods of discovery.  MGA also objects to this
5  interrogatory to the extent that it calls for legal conclusions.  MGA also objects to this
6  interrogatory on the grounds that it seeks information that is uniquely or better known to
7  Mattel.  MGA also objects to this interrogatory on the grounds that it seeks information
8  that is not in the possession, custody or control of MGA.  MGA also objects to this
9  interrogatory to the extent it calls for the disclosure of attorney-client privileged
10  information or information protected from disclosure by the work-product doctrine, the
11  joint defense privilege, or the common interest privilege.
12     Subject to and without waiving the foregoing, MGA responds as follows:
13     MGA has been damaged by Mattel's infringement and dilution of MGA's
14  distinctive and famous trade dress associated with MGA's "Bratz" fashion dolls, "Funky
15  Fashion Makeover Heads," and "Bratz Petz" and thus is entitled to Mattel's profits from
16  the sale of its "My Scene" fashion dolls, "Stylin' Heads" and plush pets.  MGA is also
17  entitled to damages suffered as a result of Mattel's trade dress infringement and dilution.
18  In addition, MGA has suffered lost sales due to Mattel's unfair competition and unfair
19  business practices.  Mattel's unfair business practices and unfair competition have also
20  caused damage to MGA's goodwill and reputation.  MGA reserves the right to
21  supplement this response as most of the information is subject to expert testimony.  MGA
22  also states that it currently has no damages calculations that are not protected under the
23  attorney work product doctrine.
24  **INTERROGATORY NO. 5:**
25     State all facts RELATING TO the allegations in Paragraphs 9 and 113 of YOUR
26  COMPLAINT that MATTEL "intimidated, coerced and threatened retailers, licensees,
27  suppliers and others in the industry" and "willfully and maliciously used its power,
28

CONFIDENTIAL                - 20 -         MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                           MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit _19_, P. 380

influence and intimidation to threaten certain retailers, suppliers, licensees, distributors and manufacturers so as to limit, if not prevent, MGA from doing business with these retailers, suppliers, licensees, distributors and manufacturers, using its power and influence to intimidate and manipulate industry bodies." YOUR response should IDENTIFY all DOCUMENTS that support or otherwise bear on YOUR response and all PERSONS who have knowledge of the facts stated in YOUR RESPONSE.

## RESPONSE TO INTERROGATORY NO. 5:

MGA incorporates by reference the above-stated general objections as if fully set forth herein. MGA also objects to this interrogatory on the grounds that it is unduly burdensome and oppressive to the extent that it purports to require MGA to complete its investigation and discovery within the thirty day timeframe allotted to respond to this interrogatory. This case is in the early stages of discovery, and MGA has not yet completed its investigation and discovery of the facts relating to this action and has not completed preparation for trial. MGA responds to this interrogatory based upon the investigation that it has been reasonably able to conduct to date, the information presently available to it based upon that investigation, and without prejudice to its right to amend or supplement its responses and to present evidence which may hereafter be discovered or become available. MGA also objects to this interrogatory on the grounds that it is unduly burdensome and oppressive in requiring MGA to state "all facts" that collectively or individually support any or each of MGA's claims and would, in effect, unreasonably require MGA to state, in writing, a potentially immense multitude of facts regarding MGA's claims that Mattel "intimidated, coerced and threatened retailers, licensees, suppliers and others in the industry" and "willfully and maliciously used its power, influence and intimidation to threaten certain retailers, suppliers, licensees, distributors and manufacturers so as to limit, if not prevent, MGA from doing business with these retailers, suppliers, licensees, distributors and manufacturers, using its power and influence to intimidate and manipulate industry bodies." MGA also objects to this

CONFIDENTIAL                    - 21 -        MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                              MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 17 , P. 381

interrogatory to the extent it requests MGA to identify "all documents that support or otherwise bear on" MGA's response and "all persons who have knowledge of the facts" in this response as overbroad and premature as discovery is still ongoing and thus MGA cannot identify all documents that will support its claims or persons who have knowledge of the facts at this time. MGA also objects to this interrogatory on the grounds that it is compound in seeking MGA to (1) state "all facts," (2) "identify all documents that support or otherwise bear" on MGA's response, and (3) identify "all persons who have knowledge of the facts," and is, in reality, not one but many interrogatories. MGA also objects to this interrogatory on the grounds that it seeks information that is uniquely or better known to Mattel. MGA also objects to this interrogatory to the extent it calls for the disclosure of attorney-client privileged information or information protected from disclosure by the work-product doctrine, the joint defense privilege, or the common interest privilege. MGA also objects to this interrogatory on the grounds that it seeks information that is not in the possession, custody or control of MGA.

Subject to and without waiving the foregoing objections, MGA responds as follows:

In an attempt to harm MGA's business, Mattel has threatened, manipulated, improperly influenced, and intimidated many people and companies (including, but not limited to, freelancers, employees, licensees, retailers, distributors, manufacturers, raw good suppliers, and industry bodies) to prevent them from working with MGA.

- Mattel's efforts to manipulate the retail market, including Mattel's efforts to tamper with retail displays and disseminate false information about the retail market, are listed below (see response to Interrogatory No. 8).

- Mattel's unfair practices relating to NPD are listed below (see response to Interrogatory No. 9).

- Mattel's unfair practices relating to toy industry and consumer organizations, including TIA and CARU, are listed below (see response to Interrogatory No. 10).

CONFIDENTIAL                    - 22 -            MGA'S SECOND SUPPLEMENTAL RESPONSES TO MATTEL'S FIRST SET OF INTERROGATORIES

- Mattel has intimidated former Mattel employees who have gone to work for MGA by sending threatening letters to them warning them not to disclose publicly-available information about Mattel.

   o On December 20, 2004, Mattel sent a letter to MGA regarding Dawn Whitaker, warning MGA that Ms. Whitaker had signed an Employee Confidential Information and Inventions ("ECII") Agreement with Mattel requiring that Ms. Whitaker maintain the secrecy of personnel information, forecasts, financial data, business strategies, product plans, marketing plans, and inventions, among other information. Mattel further warned MGA that Mattel "vigorously enforces" such agreements, including by seeking all available remedies, and that Ms. Whitaker had been so informed.

   o On February 18, 2005, Mattel sent a letter to MGA regarding Alice Kao, warning MGA that Ms. Kao had signed an ECII Agreement with Mattel requiring that Ms. Kao maintain the secrecy of personnel information, forecasts, financial data, business strategies, product plans, marketing plans, and inventions, among other information. Mattel further warned MGA that Mattel "vigorously enforces" such agreements, including by seeking all available remedies, and that Ms. Kao had been so informed.

   o On March 7, 2005, Mattel sent a letter to MGA regarding Joyce Kim, warning MGA that Ms. Kim had signed an ECII Agreement with Mattel requiring that Ms. Kim maintain the secrecy of personnel information, forecasts, financial data, business strategies, product plans, marketing plans, and inventions, among other information. Mattel further warned MGA that Mattel "vigorously enforces" such agreements, including by seeking all available remedies, and that Ms. Kim had been so informed.

CONFIDENTIAL                    - 23 -         MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                               MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 383

o   On March 10, 2005, Mattel sent a letter to MGA regarding Janet Han, warning MGA that Ms. Han had signed an ECII Agreement with Mattel requiring that Ms. Han maintain the secrecy of personnel information, forecasts, financial data, business strategies, product plans, marketing plans, and inventions, among other information. Mattel further warned MGA that Mattel "vigorously enforces" such agreements, including by seeking all available remedies, and that Ms. Han had been so informed.

o   On May 20, 2005, Mattel sent a letter to MGA regarding Jim Huntley, warning MGA that Mr. Huntley had signed an ECII Agreement with Mattel requiring that Mr. Huntley maintain the secrecy of personnel information, forecasts, financial data, business strategies, product plans, marketing plans, and inventions, among other information. Mattel further warned MGA that Mattel "vigorously enforces" such agreements, including by seeking all available remedies, and that Mr. Huntley had been so informed.

o   On June 13 and July 5, 2005, Mattel sent a letter to MGA regarding Michael Hinh, warning MGA that Mattel had advised Mr. Hinh that he had ongoing confidentiality and fiduciary duties to Mattel and that Mattel would pursue all available remedies against Mr. Hinh and MGA if those duties were violated. Mattel further warned MGA that Mr. Hinh had signed an ECII Agreement with Mattel, requiring that Mr. Hinh maintain the secrecy of personnel information, forecasts, financial data, business strategies, product plans, marketing plans, and inventions, among other information, and that Mattel "vigorously enforces" such agreements, including by seeking all available remedies.

o   On August 1, 2005, Mattel sent a letter to MGA regarding Harvey

Exhibit 19 , P. 384

Scott, warning MGA that Mr. Scott had signed an ECII Agreement with Mattel requiring that Mr. Scott maintain the secrecy of personnel information, forecasts, financial data, business strategies, product plans, marketing plans, and inventions, among other information. Mattel further warned MGA that Mattel "vigorously enforces" such agreements, including by seeking all available remedies, and that Mr. Scott had been so informed.

o    On August 16, 2005, Mattel sent a letter to MGA regarding Jier Su, warning MGA that Mr. Su had signed an ECII Agreement with Mattel requiring that Mr. Su maintain the secrecy of personnel information, forecasts, financial data, business strategies, product plans, marketing plans, and inventions, among other information. Mattel further warned MGA that Mattel "vigorously enforces" such agreements, including by seeking all available remedies, and that Mr. Su had been so informed.

o    On March 27, 2006, Mattel sent a letter to MGA regarding Jorge Castilla, warning MGA that Mr. Castilla had signed an ECII Agreement with Mattel requiring that Mr. Castilla maintain the secrecy of personnel information, forecasts, financial data, business strategies, product plans, marketing plans, and inventions, among other information. Mattel further warned MGA that Mattel "vigorously enforces" such agreements, including by seeking all available remedies, and that Mr. Castilla had been so informed.

o    On May 15, 2006, Mattel sent a letter to MGA regarding Daniel Cooney, warning MGA that Mr. Cooney had signed an ECII Agreement with Mattel requiring that Mr. Cooney maintain the secrecy of personnel information, forecasts, financial data, business strategies, product plans, marketing plans, and inventions, among

CONFIDENTIAL                    - 25 -    MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                          MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 385

1  other information. Mattel further warned MGA that Mattel
2  "vigorously enforces" such agreements, including by seeking all
3  available remedies, and that Mr. Cooney had been so informed.
4      o  On August 21, 2006, Mattel sent a letter to MGA regarding John
5  Bloodworth, warning MGA that Mr. Bloodworth had signed a
6  Confidentiality and No Conflict Agreement and a Confidentiality and
7  Non-Disclosure Agreement with Mattel requiring that Mr.
8  Bloodworth maintain the secrecy of personnel information, forecasts,
9  financial data, business strategies, product plans, marketing plans,
10  and inventions, among other information. Mattel further warned
11  MGA that Mattel "vigorously enforces" such agreements, including
12  by seeking all available remedies, and that Mr. Bloodworth had been
13  so informed.
14      o  On September 5, 2006, Mattel sent a letter to MGA regarding Jill
15  Hatch, warning MGA that Ms. Hatch had signed an ECII Agreement
16  with Mattel requiring that Ms. Hatch maintain the secrecy of
17  personnel information, forecasts, financial data, business strategies,
18  product plans, marketing plans, and inventions, among other
19  information. Mattel further warned MGA that Mattel "vigorously
20  enforces" such agreements, including by seeking all available
21  remedies, and that Ms. Hatch had been so informed.
22      o  On September 29, 2005, Mattel sent a letter to MGA regarding Janine
23  Brisbois, warning MGA that Ms. Brisbois had signed a proprietary
24  rights agreement with Mattel requiring that Ms. Brisbois maintain the
25  secrecy of personnel information, forecasts, financial data, business
26  strategies, product plans, marketing plans, and inventions, among
27  other information. Mattel further warned MGA that Mattel
28  "vigorously enforces" such agreements, including by seeking all

CONFIDENTIAL          - 26 -     MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                 MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit __19__, P. 386

1   available remedies, and that Ms. Brisbois had been so informed.

2   o On November 27, 2006, Mattel sent a letter to MGA and Leland

3   Ratleff, warning that Mr. Ratleff had signed an Employee Patent and

4   Confidence Agreement with Mattel requiring that Mr. Ratleff

5   maintain the secrecy of personnel information, forecasts, financial

6   data, business strategies, product plans, marketing plans, and

7   inventions, among other information.  Mattel further warned MGA

8   that Mattel "vigorously enforces" such agreements, including by

9   seeking all available remedies, and that Mr. Ratleff had been so

10  informed.

11  o On December 21, 2006, Mattel sent a letter to MGA regarding Jill

12  Larson, warning MGA that Ms. Larson had signed a Employee

13  Patent and Confidence Agreement with Mattel requiring that Ms.

14  Larson maintain the secrecy of personnel information, forecasts,

15  financial data, business strategies, product plans, marketing plans,

16  and inventions, among other information.  Mattel further warned

17  MGA that Mattel "vigorously enforces" such agreements, including

18  by seeking all available remedies, and that Ms. Larson had been so

19  informed.

20  • Mattel has threatened and warned a number of companies not to license

21  MGA properties or risk retribution in that Mattel would cease relations with

22  the company or decline to renew its licensing agreements.

23  o In September 2002, Morten Geschwendtner of Kidz Entertainment

24  informed Sandrine de Raspide that Euromic was under tremendous

25  pressure from Mattel not to sign an agreement for "Bratz."

26  o Neils Bucholst of Euromic sent a letter, dated December 4, 2002, to

27  Mitchell Kamarck, then-General Counsel of MGA.  The letter stated

28  that, on or around May 28, 2002, a regional manager of Mattel told

CONFIDENTIAL                    - 27 -        MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                              MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit _19_, P. 387

Mr. Bucholst that she was upset about rumors indicating that
Euromic had signed up with MGA/Kidz Entertainment on Bratz and
told him "point blank" that Mattel would discontinue relations with
Euromic if Euromic did not stop dealing with MGA/Kidz
Entertainment. Mr. Bucholst told her that Euromic had no intention
of stopping its co-operation with MGA/Kidz Entertainment. Mattel
continued to urge Euromic to stop its dealings with MGA/Kidz
Entertainment, but Euromic "stood firm." In the fall of 2002, the
regional manager of Mattel informed Euromic, without explanation,
that its contract with Mattel would not be prolonged.

o  In September 2003, Stephen Graham of Character Licensing and
   Marketing informed Sandrine de Raspide that Mattel was "absolutely
   adamant that [CLM was] not to take on Bratz." Mr. Graham stated
   that Mattel is "obviously extremely threatened by Bratz and they said
   that if any Barbie licensees sign on for Bratz they will take away
   Barbie."

o  In June 2002, Hayley Sussman of Endemol U.K. plc informed
   Sandrine de Raspide that a number of companies, including Smith &
   Brooks (apparel manufacturer), Zeon (watch manufacturer) and
   Gemma International (greeting card licensee), were uncomfortable
   about proceeding with a "Bratz" license because they are concerned
   about losing their "Barbie" licenses.

o  In or around September 2002, Hayley Sussman informed MGA that
   Smith & Brooks (an apparel manufacturer) would love to
   manufacture "Bratz" apparel but were "too scared to take the risk" of
   losing its license from Mattel, which constitutes 50% of its business.

o  In September 2002, Morten Geschwendtner informed MGA that
   Mattel threatened or tried to pressure Egmont, Euromic, MV Sports,

CONFIDENTIAL                      - 28 -        MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                                MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 388

and Hart Concepts not to license "Bratz."

   o  In October, 2002, Muki Agami, the managing director of JNH Israel (a licensee of "Barbie"), visited MGA's showroom in Hong Kong and advised MGA that he had received a call from the President of Sea Port (the licensing agent for "Barbie" in Europe), warning Mr. Agami that he will lose the "Barbie" license if he takes the "Bratz" license.

   o  In November 2002, Kate Kilmo of Random House told MGA that Egmont told her that Mattel threatened to terminate its license if it licensed "Bratz."

   o  In January 2006, Melvin Thomas of The Licensing Company informed MGA that Egmont had told him that it did not want to move forward with publishing rights to "Bratz" because it would affect Egmont's relationship with Mattel.

   o  In May 2006, Morten Geschwendtner informed MGA that Egmont did not want to move forward with "Bratz" publishing rights in the United Kingdom and Germany, because Egmont does huge business with Mattel in over 15 countries.

   o  In January 2007, Frank Knau of Egmont in Germany denied a request by MGA to start a "Bratz" magazine in Germany on the grounds that, "we have a long term business relation with Mattel re Barbie. Mattel considers Bratz as a direct competitor to Barbie and hence we would not like to irritate our good relation with Mattel by publishing a Bratz magazine in competition to our Barbie magazine."

   o  In May 2005, Larry Rosen, CEO of Rose Art Industries, Inc., informed MGA that Mattel had cancelled all foreign and "Fun-Dough" agreements due to "Bratz."

   o  In February 2005, Peter Carrero (an employee of ITC in Brazil)

CONFIDENTIAL        - 29 -      MGA'S SECOND SUPPLEMENTAL RESPONSES TO MATTEL'S FIRST SET OF INTERROGATORIES

informed MGA about Candide, an electronics company that was interested in developing its own line of "Bratz" toys as well as importing "Bratz" products from MGA. Candide also had a "Barbie" licensing program. Susana Kuemmerle indicated that Candide wanted to do electronics only, that MGA's pricing did not work for Candide, and that Candide was not interested in MGA's toy line. In the same email Ms. Kuemmerle also mentioned that she was informed that the order from Mattel was "do whatever is necessary, no matter the cost, but do not let Bratz penetrate the market."

- On information and belief, Mattel has threatened and warned raw good suppliers and toy manufacturers not to supply goods to MGA or to make MGA products or they would lose business from Mattel.
  - o On information and belief, in 2001, Mattel pressured Saran, a Japanese doll hair supplier, not to supply doll hair to MGA.
  - o In June or July 2003, Mattel informed Francis Choi of Early Light of its new policy, namely that Mattel will not assign products for Early Light to manufacture if Early Light makes "Bratz" products or products from other customers that compete directly with similar Mattel products.
- In February 2004, MGA was informed by Cory Schwartz of ConsumerQuest, a market research firm, that Mattel asked him not to work with MGA.
- In March 2005, Nick Austin of Vivid Entertainment, Inc., a U.K. "Bratz" distributor, informed MGA of aggressive pricing by Mattel in Europe, stating that "Our spies tell us that El Segundo has authorized Mattel UK to 'burry us' and that this blitz of heavy TV coupled with 25% off is just the start!" In addition, Mr. Austin informed MGA that Vivid was taking out a full page advertisement in the trade press to "shout about our 56.6% share

CONFIDENTIAL                          - 30 -      MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                                  MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 390

1  because the trade mags will not cover in editorial because Mattel has

2  frightened the[m] off with threats of cutting their ad spend in the

3  magazines."

4  Documents that may support or bear on MGA's response have been or will be

5  produced by MGA and Mattel in discovery, including, but not limited to, letters and

6  emails to MGA from Euromic, Character Licensing and Marketing, Egmont,

7  ConsumerQuest, Endemol, Kidz-Entertainment, Endemol U.K. plc, The Licensing

8  Company, Rose Art Industries, ITC, Early Light, and Vivid Imagination; and documents

9  identified in MGA's responses to Interrogatory Nos. 8, 9, and 10 below.

10  The persons who have knowledge of these facts, in whole or in part, include

11  various current or former employees of MGA or its affiliates, including, without

12  limitation, Isaac Larian, Susana Kuemmerle, Sandrine de Raspide, Stephen Lee, and

13  Bruno Carlson; various current or former employees of Mattel (whose identifies are better

14  known to Mattel); current or former employees of Kidz Entertainment, including, without

15  limitation, Morten Geschwendtner, Steffen Kragh, and Anna-Lisa McBride; current or

16  former employees of The Licensing Company, including, without limitation, Melvin

17  Thomas; current or former employees of Euromic, including, without limitation, Niels

18  Buchholst; current or former employees of Character Licensing and Marketing, including,

19  without limitation, Graham Stephen; current or former employees of Egmont, including,

20  without limitation, Frank Knau; current or former employees of Saran; current or former

21  employees of Endemol U.K. plc, including, without limitation, Hayley Sussman; current

22  and former employees of ConsumerQuest, including, without limitation, Cory Schwartz;

23  current or former employees of Smith & Brooks; current or former employees of Zeon;

24  current or former employees of Gemma International; current or former employees of

25  Hart Concepts; current or former employees of MV Sports; current or former employees

26  of JNH Israel, including, without limitation, Muki Agami; current or former employees of

27  Sea Port; current or former employees of Random House, including, without limitation,

28  Kate Kilmo; current or former employees of Vivid Entertainment, Inc., including, without

CONFIDENTIAL                          - 31 -            MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                                       MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit _19_, P._391_

1   limitation, Nick Austin; current or former employees of Early Light, including, without

2   limitation, Francis Choi; current or former employees of ITC, including, without

3   limitation, Peter Carrero; current or former employees of Candide; current or former

4   employees of Rose Art Industries, Inc., including, without limitation, Larry Rosen; and

5   individuals identified in MGA's responses to Interrogatory Nos. 8, 9, and 10 below.

6
7   **INTERROGATORY NO. 6:**

8       State all facts RELATING TO the allegation in Paragraph 9 of YOUR

9   COMPLAINT that "Mattel has . . . serially imitated and copy-catted [*sic*] the look of

10  MGA products, trade dress, trademarks, themes, ideas, advertising and packaging," or any

11  other contention by YOU that MATTEL created, designed, derived, or developed

12  products, packaging, and advertising using concepts, products, or intellectual property

13  owned by YOU.  YOUR response should IDENTIFY all DOCUMENTS that support or

14  otherwise bear on YOUR response and all PERSONS who have knowledge of the facts

15  stated in YOUR RESPONSE.

16  **RESPONSE TO INTERROGATORY NO. 6:**

17      MGA incorporates by reference the above-stated general objections as if fully set

18  forth herein.  MGA also objects to this interrogatory on the grounds that it is unduly

19  burdensome and oppressive to the extent that it purports to require MGA to complete its

20  investigation and discovery within the thirty day timeframe allotted to respond to this

21  interrogatory.  This case is in the early stages of discovery, and MGA has not yet

22  completed its investigation and discovery of the facts relating to this action and has not

23  completed preparation for trial.  Nor has Mattel provided meaningful discovery to MGA

24  on this issue.   MGA responds to this interrogatory based upon the investigation that it has

25  been reasonably able to conduct to date, the information presently available to it based

26  upon that investigation, and without prejudice to its right to amend or supplement its

27  responses and to present evidence which may hereafter be discovered or become

28

CONFIDENTIAL                    - 32 -          MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                                MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 15 , P. 392

1  available. MGA also objects to this interrogatory on the grounds that it is unduly

2  burdensome and oppressive in requiring MGA to state "all facts" that collectively or

3  individually support any or each of MGA's claims that Mattel "serially imitated and copy-

4  catted the look of MGA products, trade dress, trademarks, themes, ideas, advertising and

5  packaging," and would, in effect, unreasonably require MGA to state, in writing, a

6  potentially immense multitude of facts. MGA also objects to this interrogatory to the

7  extent it requests MGA to identify "all documents that support or otherwise bear on"

8  MGA's response and "all persons who have knowledge of the facts" in this response as

9  overbroad and premature as discovery is still ongoing and thus MGA cannot identify all

10  documents that will support its claims or persons who have knowledge of the facts at this

11  time. MGA also objects to this interrogatory on the grounds that it is compound in

12  seeking MGA to (1) state "all facts," (2) "identify all documents that support or otherwise

13  bear" on MGA's response, and (3) identify "all persons who have knowledge of the

14  facts," and is, in reality, not one but many interrogatories. MGA also objects to this

15  interrogatory on the grounds that it seeks information that is uniquely or better known to

16  Mattel. MGA also objects to this interrogatory as premature as discovery is still on going

17  and thus MGA cannot identify all documents that will support its claims at this time.

18  MGA also objects to this interrogatory to the extent it calls for the disclosure of attorney-

19  client privileged information or information protected from disclosure by the work-

20  product doctrine, the joint defense privilege, or the common interest privilege.

21         Subject to and without waiving the foregoing objections, MGA responds as

22  follows:

23         Since the "Bratz" dolls were launched in 2001, Mattel has serially imitated and

24  copied many of MGA's products, trade dress, trademarks, themes, ideas, advertising and

25  product packaging, including, but not limited, to:

26      •  Mattel imitated and copied the disproportionately large heads, distinctive

27         faces with artfully made-up, heavy-lidded, sultry, almond-shaped large eyes

28         and large, overly-lined and lipsticked lips, trendy, hip clothes and hair styles,

CONFIDENTIAL                    - 33 -        MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                             MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 393

1   and oversized feet of MGA's "Bratz" female fashion dolls with Mattel's
2   "My Scene" fashion dolls.  Further, Mattel has systematically proceeded to
3   modify the faces of the "My Scene" fashion dolls since their original release
4   to copy and imitate the distinctive faces of the "Bratz" fashion dolls more
5   and more over time as detailed and illustrated with photographs in pages 10-
6   17 of MGA's Complaint.

7   &bull; Mattel imitated and copied the distinctive packaging and overall look and
8     total image of "Bratz" fashion dolls, including the transparent and open style
9     of the "Bratz" fashion doll packaging, the *tout ensemble*-style of the "Bratz"
10   fashion doll packaging, and the "flying banner" ribbon-style slogan running
11   across the middle of the box of the "Bratz" fashion dolls.  Further, as detailed
12   in pages 17-19 of MGA's complaint, Mattel has systematically proceeded to
13   change its "My Scene" packaging to copy and imitate the "Bratz" doll
14   packaging more and more over time.

15   &bull; In September 2004, MGA was informed by a Wal-Mart Mexico buyer that
16     Mattel is packing its closed out "Flava" dolls in a trapezoid-shaped
17   packaging that is confusingly-similar to "Bratz" fashion doll packaging.

18   &bull; Mattel copied and imitated the "Wintertime Wonderland" theme and concept
19     for "Bratz" fashion dolls with the "Chillin' Out!" theme for "My Scene"
20   fashion dolls, which are dressed in trendy winter clothes and are packaged
21   with winter sport accessories.

22   &bull; Mattel copied and imitated the "Formal Funk" theme and concept for
23     "Bratz" fashion dolls with the "Night on the Town" theme for "My Scene"
24   fashion dolls, which are dressed in trendy formal wear or evening gowns.

25   &bull; Mattel copied and imitated the "Sun-Kissed Summer" theme, concept and
26     packaging for "Bratz" fashion dolls with the "Jammin' in Jamaica" theme for
27   "My Scene" fashion dolls, which are dressed in trendy bathing suits and are
28   packaged with beach gear and water sport accessories.

CONFIDENTIAL        - 34 -      MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                MATTEL'S FIRST SET OF INTERROGATORIES

1     •  Mattel copied and imitated the "Forever Diamondz" theme and concept for

2      "Bratz" fashion dolls with the "My Bling Bling" theme for "My Scene"

3      fashion dolls, which are packaged real diamond jewelry that can be worn by

4      girls.

5     •  Mattel copied and imitated "Bratz" television commercials for its "My

6      Scene" commercials. The elements of these "Bratz" commercials copied and

7      imitated by Mattel include the combination of live-action footage with

8      cartoon or animated figures of the dolls featured in the commercial, the use

9      of multi-ethnic, "tween"-aged female actresses to portray each of the dolls in

10     the multi-ethnic line, "hip"- sounding theme songs or jingles repeating the

11     name of the doll line being advertised and similar camera angles and

12     techniques, including sweeping in to a close-up of the doll as the doll turns

13     or twists and its hair flips in a dramatic fashion. Mattel copied and imitated

14     these features in several "My Scene" advertisements, including those

15     featuring the "My Scene" "Stylin' Head", the "My Scene" "My Bling Bling"

16     theme and the "My Scene" "RollerGirls" theme.

17    •  In April 2002, Margo Eldridge informed Isaac Larian that Mattel was

18     intentionally trying to book the same actresses who portrayed the "Bratz"

19     girls in MGA's commercials in order to interfere with MGA's ability to

20     shoot its own commercials. Further, in June 2003, Margo Eldridge informed

21     Isaac Larian that Mattel was contacting and attempting to hire the same

22     essential crew members used by MGA for Mattel's commercials.

23    •  Mattel hired at least one of the actresses who has appeared in several "Bratz"

24     commercials. This actress now appears in "My Scene" commercials,

25     including being featured prominently in the commercial for "My Scene"

26     "My Bling Bling".

27    •  Mattel filmed a "Polly Pocket" commercial in the same mall and featuring

28     the same escalator as appeared in a previous "Bratz" commercial.

CONFIDENTIAL              - 35 -     MGA'S SECOND SUPPLEMENTAL RESPONSES TO MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 395

1  • Mattel copied and imitated the distinctive trapezoidal-shaped packaging for
2     MGA's "Bratz Formal Funk Super Stylin' Runway Disco" play set with its
3     trapezoidal-shaped packaging for its "My Scene Sound Lounge" play set.
4  • Mattel copied and imitated MGA's "Bratz Funky Fashion Makeover" heads
5     with its "My Scene Stylin' Heads," which have distinctive faces with artfully
6     made-up, heavy-lidded, almond-shaped large eyes, and large, overly-lined
7     and lipsticked lips.
8  • Mattel copied and imitated a portion of the "Bratz" dolls famous
9     trademarked tag line "The Girls with a Passion for Fashion" on its website
10    for its "Diva Starz" dolls by asking users: "Do you have a passion for
11    fashion?"
12 • Mattel copied and imitated MGA's "Bratz Petz" plush toys (including, but
13    not limited to, "Bratz Dogz") with its "My Scene" plush pets, which have
14    large, human-like, made-up eyes with long eye lashes and wearing trendy
15    human clothing.
16 • Mattel copied and imitated MGA's packaging for "Bratz Petz" with its
17    packaging for "My Scene" plush pets, which consists of an open box with no
18    top and with partial side panels that slope from a narrow front panel to a
19    higher back panel.
20 • Mattel copied and imitated MGA's "4-Ever Best Friends" doll line with its
21    "Wee 3 Friends" doll line, which is a line of "little girl" fashion dolls with a
22    number in the name of the doll line, packaged together as "friends" with
23    themed accessories and mix-and-match outfits.
24 • Mattel copied and imitated MGA's packaging for the "4-Ever Best Friends"
25    doll line with its packaging for the "Wee 3 Friends" doll line, which has the
26    same pink and teal color schemes, rounded heart-like shape and serves as a
27    display/carrying case.
28

CONFIDENTIAL                    - 36 -     MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                           MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19, P. 396

1    •   Mattel copied and imitated MGA's "Mommy's Little…" doll line with its

2      "Little Mommy…" doll line, which is a line of baby or toddler-like dolls

3      with the words "Little" and "Mommy" in the title and which are sold with

4      themed-accessories.

5    •   Mattel copied and imitated the strong, extreme, battle-like theme of "Alien

6      Racers" toy racing vehicles with its revamped and renamed "AcceleRacerS"

7      toy racing vehicles.

8    •   Mattel copied and imitated the "Alien Racers" logo with its "AcceleRacerS"

9      logo, which accentuates the "A," "R," and "S" in compressed block lettering.

10    •   Mattel copied and imitated MGA's "other-worldly" themed television

11      commercials for "Alien Racers" with television commercials for

12      "AcceleRacerS." In these "AcceleRacerS" commercials, the product

13      competes against alien-like Cyborgs in a "race to save the world," which

14      copies and imitates MGA's alien theme and commercials in which "Alien

15      Racers" are in engaged in a "race to save the universe."

16     Documents that may support or bear on MGA's response will be or have been

17 produced by MGA and Mattel in discovery, including, but not limited to, the products,

18 trade dress, trademarks, themes, ideas, advertising and product packaging identified

19 above.

20     The persons who have knowledge of these facts, in whole or in part, include,

21 without limitation, current and former employees and contractors of MGA and its

22 affiliates, including, without limitation, Isaac Larian, Paula Garcia, Shirin Salemnia,

23 Margo Eldridge, Gustavo Machado Gomez; various current or former employees and

24 contractors of Mattel, including, without limitation, Matt Bousquette, Erica Ashbrook, and

25 Lily Martinez; and anyone who is familiar with MGA's and Mattel's products, including,

26 without limitation, consumers, retailers, licensees, distributors, and the trade press.

27

28

CONFIDENTIAL           - 37 -      MGA'S SECOND SUPPLEMENTAL RESPONSES TO MATTEL'S FIRST SET OP INTERROGATORIES

Exhibit 19 , P. 397

**INTERROGATORY NO. 7:**

State all facts RELATING TO the allegations in YOUR COMPLAINT that consumers, the press, and retailers have confused YOUR products, packaging, and commercials with those of MATTEL, or vice versa. YOUR response should IDENTIFY all DOCUMENTS that support or otherwise bear on YOUR response and all PERSONS who have knowledge of the facts stated in YOUR RESPONSE.

**RESPONSE TO INTERROGATORY NO. 7:**

MGA incorporates by reference the above-stated general objections as if fully set forth herein. MGA also objects to this interrogatory on the grounds that it is unduly burdensome and oppressive to the extent that it purports to require MGA to complete its investigation and discovery within the thirty day timeframe allotted to respond to this interrogatory. This case is in the early stages of discovery, and MGA has not yet completed its investigation and discovery of the facts relating to this action and has not completed preparation for trial. MGA responds to this interrogatory based upon the investigation that it has been reasonably able to conduct to date, the information presently available to it based upon that investigation, and without prejudice to its right to amend or supplement its responses and to present evidence which may hereafter be discovered or become available. MGA also objects to this interrogatory on the grounds that it is unduly burdensome and oppressive in requiring MGA to state "all facts" that collectively or individually support any or each of MGA's claims that consumers, the press and retailers confuse MGA's products, packaging and commercials with those of Mattel or vice versa and would, in effect, unreasonably require MGA to state, in writing, a potentially immense multitude of facts. MGA also objects to this interrogatory to the extent it requests MGA to identify "all documents that support or otherwise bear on" MGA's response and "all persons who have knowledge of the facts" in this response as overbroad and premature as discovery is still ongoing and thus MGA cannot identify all documents that will support its claims or persons who have knowledge of the facts at this time. MGA

MGA'S SECOND SUPPLEMENTAL RESPONSES TO MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit _19_, P. _378_

1   also objects to this interrogatory on the grounds that it is compound in seeking MGA to

2   (1) state "all facts," (2) "identify all documents that support or otherwise bear" on MGA's

3   response, and (3) identify "all persons who have knowledge of the facts," and is, in

4   reality, not one but many interrogatories.  MGA also objects to this interrogatory on the

5   grounds that it seeks information that is uniquely or better known to Mattel.  MGA also

6   objects to this interrogatory on the grounds that it seeks information that is not in the

7   possession, custody or control of MGA.  MGA also objects to this interrogatory to the

8   extent it calls for the disclosure of attorney-client privileged information or information

9   protected from disclosure by the work-product doctrine, the joint defense privilege, or the

10  common interest privilege.  MGA also objects to this interrogatory on the grounds that it

11  seeks information that may be the subject of expert witness analysis and testimony and is

12  premature.

13      Subject to and without waiving the foregoing objections, MGA responds as

14  follows:

15      As discussed above in MGA's response to Interrogatory No. 6, Mattel has serially

16  imitated and copied MGA's products, packaging and commercials and has released

17  confusingly-similar products, packaging and commercials.  Mattel's confusingly-similar

18  products, packaging and commercials have confused consumers, retailers, and members

19  of the press:

20      •  In November 2002, confused consumers emailed MGA's customer service

21         department, seeking information about where to buy a "Madison Bratz doll."

22         These emails were produced to Mattel.

23      •  On March 17, 2004, a reporter for an Oregon newspaper mistakenly

24         identified a "My Scene Stylin' Head" as a "Bratz hair and makeup doll

25         head."

26      •  On October 6, 2004, a BBC News Online Business Reporter listed "Bratz"

27         fashion dolls as the first of the "10 top-selling toys this Christmas," but

28

CONFIDENTIAL                    - 39 -         MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                               MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit _19_, P. _399_

1   mistakenly included "My Scene Masquerade" fashion dolls (instead of

2   "Bratz" fashion dolls) in the photograph illustrating the top-selling toys.

3   • In or around April 2005, retailers in a Target store in Atlanta, Georgia

4   mistakenly merchandized "My Scene" pets in the middle of the "Bratz Petz"

5   product display.

6   • In or around November 2006, the main AOL shopping website (shop.aol.ca)

7   reported one of the "Top Picks by Toys 'R Us" is "Barbie Diamondz by

8   MGA".

9   • In December 2006, a Kansas second-grade student asked for a "My Scene

10   Bling Bling Bratz Head" in a letter to Santa posted on the Northeast USD

11   246 website.

12   • In an eBay posting, dated February 2, 2006, a parent asked for a "Bratz

13   'Madison'" doll – "preferably in mint condition. It's for my daughter of the

14   same name. I think the company stopped making them. Or changed the

15   name."

16   • In or around January 2007, on the website "La Papa," a seller advertises a

17   "Bratz Chelsea" doll (when the pictured item is a "My Scene Chelsea" doll).

18   • In or around January 2007, an eBay seller repeatedly refers to the pictured

19   "Bratz Play Sportz Yasmin" doll as the "Barbie Bratz Doll Yasmin".

20   • In or around January 2007, an eBay seller describes the "My Scene

21   Convertible" that it is attempting to sell as a "Bratz My Scene Black

22   Convertible."

23   • A "Customer Review" for the "My Scene Hudson" doll, dated May 26,

24   2003, on Amazon.com provides: "I got a Hudson for my 11[th] birthday and he

25   was so nice. I thought it was a Bratz...."

26   • During a visit to a Toys 'R Us store in Livingston, New Jersey in or around

27   May 2006, Dan Cooney witnessed a woman buy a "My Scene Madison" doll

28   that she mistakenly believed was a "Bratz Sasha" doll.

CONFIDENTIAL                    - 40 -        MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                              MATTEL'S FIRST SET OF INTERROGATORIES

Documents that may support or bear on MGA's response will be or have been produced by MGA and Mattel in discovery, including, but not limited to, emails from consumers to MGA or Internet postings by consumers evidencing confusion between "Bratz" and "My Scene," articles in the press evidencing confusion between "Bratz" and "My Scene"; copies of web pages from eBay, La Papa, and Amazon; and a photograph of display of "Bratz" products at Target, which includes "My Scene" plush pet.

Persons with knowledge of these facts are reflected in these documents.  In addition, the persons who have knowledge of these facts, in whole or in part, include, without limitation, various current and former employees of MGA, including, without limitation, Isaac Larian, Dave Malacrida, and Dan Cooney; various current and former employees of Mattel whose identities are better known to Mattel; consumers, retailers, members of the trade press, and other who have viewed "Bratz" and "MyScene" products, packaging, and commercials.

## INTERROGATORY NO. 8:

State all facts RELATING TO the allegation in Paragraph 79 of YOUR COMPLAINT that MATTEL has "manipulated the retail market," including but not limited to all COMMUNICATIONS with any persons RELATING TO YOUR allegation that "Mattel merchandisers have been caught tampering with MGA's retail displays." YOUR response should IDENTIFY all DOCUMENTS that support or otherwise bear on YOUR response and all PERSONS who have knowledge of the facts stated in YOUR RESPONSE.

## RESPONSE TO INTERROGATORY NO. 8:

MGA incorporates by reference the above-stated general objections as if fully set forth herein.  MGA also objects to this interrogatory on the grounds that it is unduly burdensome and oppressive to the extent that it purports to require MGA to complete its investigation and discovery within the thirty day timeframe allotted to respond to this

CONFIDENTIAL                    - 41 -          MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                                MATTEL'S FIRST SET OF INTERROGATORIES

1   interrogatory. This case is in the early stages of discovery, and MGA has not yet
2   completed its investigation and discovery of the facts relating to this action and has not
3   completed preparation for trial. MGA responds to this interrogatory based upon the
4   investigation that it has been reasonably able to conduct to date, the information presently
5   available to it based upon that investigation, and without prejudice to its right to amend or
6   supplement its responses and to present evidence which may hereafter be discovered or
7   become available. MGA also objects to this interrogatory on the grounds that it is unduly
8   burdensome and oppressive in requiring MGA to state "all facts" that collectively or
9   individually support any or each of MGA's claims that Mattel "manipulated the retail
10  market" and would, in effect, unreasonably require MGA to state, in writing, a potentially
11  immense multitude of facts. MGA also objects to this interrogatory to the extent it
12  requests MGA to identify "all documents that support or otherwise bear on" MGA's
13  response and "all persons who have knowledge of the facts" in this response as overbroad
14  and premature as discovery is still ongoing and thus MGA cannot identify all documents
15  that will support its claims or persons who have knowledge of the facts at this time. MGA
16  also objects to this interrogatory on the grounds that it is compound in seeking MGA to
17  (1) state "all facts," (2) "identify all documents that support or otherwise bear" on MGA's
18  response, and (3) identify "all persons who have knowledge of the facts," and is, in
19  reality, not one but many interrogatories. MGA also objects to this interrogatory on the
20  grounds that it seeks information that is uniquely or better known to Mattel. MGA also
21  objects to this interrogatory on the grounds that it seeks information that is not in the
22  possession, custody or control of MGA. MGA also objects to this interrogatory to the
23  extent it calls for the disclosure of attorney-client privileged information or information
24  protected from disclosure by the work-product doctrine, the joint defense privilege, or the
25  common interest privilege.
26      Subject to and without waiving the foregoing objections, MGA responds as
27  follows:
28      Mattel merchandisers have tampered with MGA's retail displays to replace

CONFIDENTIAL                    - 42 -        MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                              MATTEL'S FIRST SET OF INTERROGATORIES

1    favorably-placed MGA merchandise with Mattel merchandise.

2    • In July 2006, Heather Hocut of Wal-Mart informed Isaac Larian that Mattel
3    merchandisers moved "Bratz" modulars from the front of a Wal-Mart store
4    to the back and replaced the modulars in the front of the store with "Barbie"
5    products.  Ms. Hocut warned Erica Ashbrook that if she ever caught them
6    doing this again Mattel merchandisers would not be allowed at Wal-Mart.
7    Ms. Hocut also said that Ms. Ashbrook notified Connie Hibbert (or Hebert)
8    about this issue.

9    • Mattel altered retails displays at Toys 'R Us by moving its products into
10   shelves reserved for MGA products.   In August 2003, Yuval Caspi visited
11   a Toys 'R Us store in Van Nuys, California and saw Mattel's "Flava" dolls
12   set up between the "Bratz" dolls in the section reserved for "Bratz."
13   Mattel's in-store merchandisers tampered with MGA shelf space at Toys 'R
14   Us in Santa Monica, California in or around March or April 2004.

15   • In October 2002, Robin Hogel of Zellers (a Canadian retail chain) informed
16   Mark Robinson of MGA that Mattel was pressuring Zellers to give "Bratz"
17   less desirable aisle and shelf space,

18   Mattel has disseminated false information to retailers and others about MGA in
19   order persuade retailers not to purchase MGA products and manipulate the retail market.

20   • Mattel falsely told Toys 'R Us that MGA was giving another major United
21   States retailer below-market pricing.

22   • In August 2004, Barb Lubestine of Wal-Mart told Isaac Larian that Mattel
23   representatives told her that "Bratz" is "dying" at Target and Toys 'R Us,
24   which was false.

25   • In May 2004, Lin Sherlock of Woolworths U.K. informed Isaac Larian that
26   Mattel falsely informed her that two major U.S. retailers were delisting
27   MGA's "4-Ever Best Friends" and that Mattel's copycat product ("Wee 3
28   Friends") was outselling "4-Ever Best Friends."

CONFIDENTIAL                    - 43 -        MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                              MATTEL'S FIRST SET OF INTERROGATORIES

1  - In February 2005, Margo Eldridge informed Isaac Larian that Bob Moehl
2    (creative head of Fisher Price advertising at FCB) told her that, at Toy Fair
3    in February 2005, Mattel falsely told retailers that "Bratz" sales were off by
4    14% and that "Barbie" sales were up by 3%.
5  - In February 2005, Rosana Ferrer (a distributor and licensee of "Bratz" in
6    Puerto Rico) informed Isaac Larian that Mattel sent an email to one of her
7    customers, falsely stating that MGA had a big decline in sales worldwide
8    and that Mattel was the #1 brand worldwide.
9  - In or around June 2005, Mattel told Dean Gianoukas, an analyst at J.P.
10    Morgan, that Mattel was gaining share and that "Bratz" was slowing, even
11    though "Bratz" had grown by 17%.
12  - In February 2006, Neil Friedman falsely reported to the press that more than
13    51 million people visit the Barbie.com website per month when the number
14    is much lower.
15  Mattel has threatened and pressured distributors and retailers not to distribute
16  "Bratz" products.
17  - In February 2002, "Michael D" of JNH informed Martin Hitch of MGA that
18    Mattel (specifically Adrienne Fontanella and Matt Bousquette) were very
19    upset that MGA used Bandai as distributors and thus would not allow Banda
20    representatives into the "Barbie Gallery."
21  - In June 2003, Jose Antonio of Bandai Spain informed Isaac Larian that
22    Mattel was threatening retailers.
23  - Mattel has a relationship with Jumbo, the largest retailer in Greece. Jumbo
24    refuses to sell MGA products, which MGA believes is due to Mattel's
25    improper influence and pressure. Moreover, in February 2006, Berte Dario,
26    Managing Director of Giochi Preziosi, informed Isaac Larian that Fontini
27    Karageorgi said that Mattel was blacklisting retailers in Greece that sold
28    "Bratz."

CONFIDENTIAL            - 44 -      MGA'S SECOND SUPPLEMENTAL RESPONSES TO MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19, P. 404

1   Documents that may support or bear on MGA's response have been or will be

2   produced by MGA and Mattel in discovery, including, but not limited to, emails to MGA

3   from Toys 'R Us, Zellers, Woolworth UK, Margo Eldridge, JNH, Rosanna Ferrer, and

4   J.P. Morgan; and press releases and articles with false information reported by Mattel.

5       The persons who have knowledge of these facts, in whole or in part, include

6   various current and former employees of MGA, including Isaac Larian, Thomas Pfau,

7   Yuval Caspi, and Jim Huntley; various current or former employees and contractors of

8   Wal-Mart, including, without limitation, Heather Hocut and Barb Lubestine; various

9   current or former employees of Toys 'R Us, including, without limitation, Manny

10  Francione; various current or former employees and contractors of Mattel (whose

11  identities are better known to Mattel), including, without limitation, Adrienne Fontanella,

12  Matt Bousquette, Neil Friedman, Erica Ashbrook and Connie Hibbert (or Hebert); current

13  or former employees of Zellers, including, without limitation, Robin Hogels; current or

14  former employees of Woolworth UK, including, without limitation, Lin Sherlock; current

15  or former employees of J.P. Morgan, including, without limitation, Dean Gianoukis;

16  Margo Eldridge; Michael D of JNH; Rosana Ferrer; Berte Dario; Fontini Karageorgi; Jose

17  Antonio.

18  **INTERROGATORY NO. 9:**

19

20      State all facts RELATING TO any allegation by YOU that MATTEL engaged in

21  any unfair practice RELATING TO NPD, including without limitation the use of NPD

22  data, alleged changes of NPD product classifications, or MGA's NPD subscription.

23  YOUR response should IDENTIFY all DOCUMENTS that support or otherwise bear on

24  YOUR response and all PERSONS who have knowledge of the facts stated in YOUR

25  RESPONSE.

26  **RESPONSE TO INTERROGATORY NO. 9:**

27      MGA incorporates by reference the above-stated general objections as if fully set

28

CONFIDENTIAL                        - 45 -      MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                                MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19, P. 405

1   forth herein. MGA also objects to this interrogatory on the grounds that it is unduly
2   burdensome and oppressive to the extent that it purports to require MGA to complete its
3   investigation and discovery within the thirty day timeframe allotted to respond to this
4   interrogatory. This case is in the early stages of discovery, and MGA has not yet
5   completed its investigation and discovery of the facts relating to this action and has not
6   completed preparation for trial. MGA responds to this interrogatory based upon the
7   investigation that it has been reasonably able to conduct to date, the information presently
8   available to it based upon that investigation, and without prejudice to its right to amend or
9   supplement its responses and to present evidence which may hereafter be discovered or
10  become available. MGA also objects to this interrogatory on the grounds that it is unduly
11  burdensome and oppressive in requiring MGA to state "all facts" that collectively or
12  individually relate to any allegation by MGA that Mattel engaged in any unfair practice
13  relating to NPD and would, in effect, unreasonably require MGA to state, in writing, a
14  multitude of facts. MGA also objects to this interrogatory to the extent it requests MGA
15  to identify "all documents that support or otherwise bear on" MGA's response and "all
16  persons who have knowledge of the facts" in this response as overbroad and premature as
17  discovery is still ongoing and thus MGA cannot identify all documents that will support
18  its claims or persons who have knowledge of the facts at this time. MGA also objects to
19  this interrogatory on the grounds that it is compound in seeking MGA to (1) state "all
20  facts," (2) "identify all documents that support or otherwise bear" on MGA's response,
21  and (3) identify "all persons who have knowledge of the facts," and is, in reality, not one
22  but many interrogatories. MGA also objects to this interrogatory on the grounds that it
23  seeks information that is uniquely or better known to Mattel. MGA also objects to this
24  interrogatory on the grounds that it seeks information that is not in the possession, custody
25  or control of MGA. MGA also objects to this interrogatory to the extent it calls for the
26  disclosure of attorney-client privileged information or information protected from
27  disclosure by the work-product doctrine, the joint defense privilege, or the common
28  interest privilege.

CONFIDENTIAL                          - 46 -

Exhibit 19, P. 406

1        Subject to and without waiving the foregoing objections, MGA responds as

2    follows:

3        NPD is the leading supplier of sales statistics and data in the toy industry, which

4    are vital for efficient product-line management by toy manufacturers. Without these

5    statistics and data, it is difficult for toy companies to assess and measure the relative

6    success of their products in key categories. NPD is a subscription service and places

7    restrictions on the use of its information and statistics by subscribers. Both Mattel and

8    MGA subscribe to NPD's services. Mattel has more influence on NPD than does MGA

9    because it generates substantially more subscription revenue for NPD due to the fact that

10   it sells a broader range of toy products. Mattel has improperly influenced NPD to employ

11   a double standard and not enforce the same rules against Mattel that NPD enforces against

12   MGA. In September 2003, Mattel pressured NPD to terminate MGA's subscription when

13   MGA allegedly violated the terms of its NPD agreement by improperly referring to Mattel

14   when publicly disclosing NPD data in a press release. Mattel publicly disclosed NPD

15   information on Mattel's comparative standing relative to other companies in an earnings

16   conference call and in a press release in September of 2004 , but NPD did not take similar

17   action against Mattel.

18       Mattel also pressured NPD into changing product classifications in order to

19   manipulate the data and artificially preserve Mattel's market share rankings in the fashion

20   doll category, thus lowering MGA's ranking and harming MGA's sales. In February

21   2004, NPD announced proposed changes to doll categories, combining Mini Dolls and

22   Mini Doll Accessories into one category and placing fashion dolls packaged with an

23   accessory in the Accessory category provided that the accessory is of greater or equal

24   value within the set. In early 2005, Mattel lobbied NPD to get "Bratz Babyz" placed out

25   of the fashion doll category. In May 2006, NPD announced category changes, which

26   would place larger dolls such as Mattel's "American Girls" dolls in the fashion doll

27   category.

28       Documents that may support or bear on MGA's response will be produced by

CONFIDENTIAL          - 47 -      MGA'S SECOND SUPPLEMENTAL RESPONSES TO MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 407

1  MGA, Mattel, NPD in discovery, including but not limited to, emails from Kelly Falco of

2  NPD to MGA; emails from Nick Austin of Vivid U.K. to MGA; Mattel's press releases

3  and communications with retailers and financial investors that improperly contain NPD

4  data.

5        The persons who have knowledge of these facts, in whole or in part, include

6  current and former employees of MGA, including, without limitation, Isaac Larian;

7  current and former employees of Vivid U.K., including, but not limited to, Nick Austin

8  and Emma Sherski; current or former employees of NPD, including, but not limited to,

9  Kelly Falco, Esther Han, Karyn Shonbart, and Frederique Tutt; and current or former

10 employees and contractors of Mattel.

11

12 **INTERROGATORY NO. 10:**

13

14       State all facts RELATING TO any allegation by YOU that MATTEL engaged in

15 any unfair practice RELATING TO any toy industry or consumer organization, including

16 without limitation CARU and TIA.  YOUR response should IDENTIFY all

17 DOCUMENTS that support or otherwise bear on YOUR response and all PERSONS who

18 have knowledge of the facts stated in YOUR RESPONSE.

19 **RESPONSE TO INTERROGATORY NO. 10:**

20       MGA incorporates by reference the above-stated general objections as if fully set

21 forth herein.  MGA also objects to this interrogatory on the grounds that it is unduly

22 burdensome and oppressive to the extent that it purports to require MGA to complete its

23 investigation and discovery within the thirty day timeframe allotted to respond to this

24 interrogatory.  This case is in the early stages of discovery, and MGA has not yet

25 completed its investigation and discovery of the facts relating to this action and has not

26 completed preparation for trial.  MGA responds to this interrogatory based upon the

27 investigation that it has been reasonably able to conduct to date, the information presently

28

CONFIDENTIAL                          - 48 -          MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                                      MATTEL'S FIRST SET OF INTERROGATORIES

1  available to it based upon that investigation, and without prejudice to its right to amend or

2  supplement its responses and to present evidence which may hereafter be discovered or

3  become available. MGA also objects to this interrogatory on the grounds that it is unduly

4  burdensome and oppressive in requiring MGA to state "all facts" that collectively or

5  individually relate to any allegation by MGA that Mattel engaged in "any unfair practice

6  RELATING TO any toy industry or consumer organization" and would, in effect,

7  unreasonably require MGA to state, in writing, a multitude of facts. MGA also objects to

8  this interrogatory to the extent it requests MGA to identify "all documents that support or

9  otherwise bear on" MGA's response and "all persons who have knowledge of the facts" in

10  this response as overbroad and premature as discovery is still ongoing and thus MGA

11  cannot identify all documents that will support its claims or persons who have knowledge

12  of the facts at this time. MGA also objects to this interrogatory on the grounds that it is

13  compound in seeking MGA to (1) state "all facts," (2) "identify all documents that support

14  or otherwise bear" on MGA's response, and (3) identify "all persons who have knowledge

15  of the facts," and is, in reality, not one but many interrogatories. MGA also objects to this

16  interrogatory on the grounds that it seeks information that is uniquely or better known to

17  Mattel. MGA also objects to this interrogatory to the extent it calls for the disclosure of

18  attorney-client privileged information or information protected from disclosure by the

19  work-product doctrine, the joint defense privilege, or the common interest privilege.

20  MGA also objects to this interrogatory on the grounds that it seeks information that is not

21  in the possession, custody or control of MGA.

22        Subject to and without waiving the foregoing objections, MGA responds as

23  follows:

24        CARU is the toy industry's independent self-regulatory body in charge of

25  maintaining standards in advertising. CARU's approval is considered critical within the

26  toy industry to avoid regulatory action by the Federal Trade Commission. Mattel is a

27  major contributor to CARU's budget and thus has influence over CARU.

28

CONFIDENTIAL                        - 49 -      MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                                MATTEL'S FIRST SET OF INTERROGATORIES

1   MGA believes that Mattel has improperly used its influence to induce CARU to

2   place onerous restrictions on MGA advertisements and require MGA to amend aspects of

3   its commercials that have gone unchallenged in other parties' commercials. Mattel has

4   influenced CARU to initiate (or has initiated on its own) proceedings against MGA for

5   techniques used in MGA's commercials that have also been employed in Mattel's own

6   commercials for "Barbie" and other products, such as alleged insufficient use of hands to

7   manipulate and move the dolls, use of a human hand and arm to manipulate the doll that

8   was allegedly improperly camouflaged by a person wearing a dark sleeve against a dark

9   background , use of computer graphics in which it was allegedly impossible for a child to

10  discern what was reality and what was computer-generated fantasy, and allegedly showing

11  dolls holding items when in reality dolls could not hold any items without adhesives. To

12  MGA's knowledge, CARU has never initiated proceedings or undertaken an informal

13  inquiry against Mattel for Mattel's use of these same or similar techniques. While MGA

14  was able to defeat many of Mattel's baseless allegations, CARU found against

15  MGA on the following issues : (1) CARU recommended that MGA disclose that the

16  "Bratz" dolls could not actually hold items in its "Rock Angelz" commercial; (2) CARU

17  found that MGA used improper computer graphics in its "Big Bratz Babyz" commercial;

18  and (3) CARU found against MGA on the claims of insufficient hand usage for certain

19  scenes in its "Genie Magic" and "Big Bratz Babyz" commercials. As a result, MGA has

20  been forced to incur unnecessary costs for reshooting, reproducing and reediting its

21  commercials.

22      Further, in the Spring of 2005, CARU issued inquiry about MGA's Bratz.com

23  website to comply with COPPA and instructed MGA to respond to make changes to its

24  website in excess of restrictions imposed on Mattel and others.

25      In March 2002, Margo Eldridge informed Isaac Larian that CARU has questioned

26  MGA's "Mermaid" commercial, and as it was the first time that CARU had every

27  questioned any commercial Ms. Eldridge had done since 1978, she believes the inquiry

28  was due to Mattel's improper influence.

CONFIDENTIAL                        - 50 -        MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                                  MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 410

1    In addition, CARU has drafted press releases regarding the outcome of Mattel's
2    challenges against MGA, which exhibit a negative bias towards MGA and a positive bias
3    toward Mattel. In May 2006, CARU drafted press releases regarding the "Big Bratz
4    Babyz" and "Ponyz" decisions, which created the misimpression that CARU found for
5    Mattel on the majority of Mattel's challenges, when in reality, CARU had rejected most of
6    Mattel's challenges. Further, in June 2006, CARU drafted a press release regarding
7    Mattel's challenges against the packaging for MGA's "Bratz Campfire" dolls, which put a
8    negative slant on the decision.
9    Each year since 2000, the TIA presents the Toy-of-the-Year awards, which
10    generate substantial goodwill with retailers, distributors, licensees, and customers for the
11    winning toys. For the first three years of the awards (2000, 2001, and 2002), the Toy-of-
12    the-Year award was chosen by consumer vote. MGA's "Bratz" dolls won the 2001 and
13    2002 Toy-of-the-Year awards. However, beginning with the 2003 Toy-of-the-Year
14    award, the TIA changed the rules to have the award selected by members of the industry
15    (rather than by consumers). MGA believes that Mattel orchestrated this change, as it is
16    the largest, and accordingly, most influential member of TIA, and the Chairman of TIA at
17    the time was Neil Friedman, who was also the President of Fisher Price (a subsidiary of
18    Mattel). Under the new voting rules, Fisher Price's "Hokey Pokey Elmo" won the 2003
19    Toy-of-the-Year award, beating out MGA's "Bratz Super Stylin' Runway Disco." MGA
20    asked TIA to substantiate the vote count for the 2003 Toy-of-the-Year award in order to
21    ensure that the voting process was impartial, but the TIA refused.
22    Documents that may support or bear on MGA's response will be (or have been)
23    produced by MGA, Mattel, TIA and/or CARU in discovery, including, but not limited to,
24    documents regarding TIA's rules for the Toy-of-the-Year awards; correspondence
25    between MGA's representatives and TIA; and correspondence between CARU and MGA
26    representatives.
27    Persons with knowledge of these facts are reflected in these documents. Further,
28    the persons who have knowledge of these facts, in whole or in part, include current and

CONFIDENTIAL                              - 51 -        MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                                        MATTEL'S FIRST SET OF INTERROGATORIES

1  former employees of MGA, including, without limitation, Isaac Larian; current and

2  former employees or contractors of Mattel, including Neil Friedman; current or former

3  employees of TIA and CARU; and Margo Eldridge.

4

5                    AS TO OBJECTIONS ONLY:

6

7  Dated: March 6, 2007                    O'MELVENY & MYERS LLP

8

9                                          DALE M. CENDALI
                                           Attorneys for MGA Entertainment, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONFIDENTIAL                    - 52 -        MGA'S SECOND SUPPLEMENTAL RESPONSES TO
                                              MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19, P. 412

**VERIFICATION**

I, Eric Villette, declare:

I am an officer of MGA ENTERTAINMENT, INC., a corporation organized and existing under the laws of California, which is a defendant-in-intervention in the above-entitled action, and I have been authorized to make this verification on its behalf.

I have read the foregoing **MGA ENTERTAINMENT, INC.'S SECOND SUPPLEMENTAL RESPONSES TO MATTEL, INC.'S FIRST SET OF INTERROGATORIES RE CLAIMS OF UNFAIR COMPETITION** and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at Van Nuys, California on this 5th day of March, 2007.

CONFIDENTIAL

CONFIDENTIAL
LA2:825198.1

- 53 -

MGA'S SECOND SUPPLEMENTAL RESPONSES TO
MATTEL'S FIRST SET OF INTERROGATORIES

Exhibit 19 , P. 413

**PROOF OF SERVICE**

1
2    I, Mary C. Layman, declare:

3    I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los
4    Angeles, California  90071-2899.  On March 6, 2007, I served the within documents:

5    

MGA ENTERTAINMENT, INC.'S SECOND
SUPPLEMENTAL RESPONSES TO MATTEL, INC.'S
6    FIRST SET OF INTERROGATORIES RE CLAIMS OF
UNFAIR COMPETITION

7

8    ☒    By putting a true and correct copy thereof, together with an unsigned copy of this declaration, in a sealed envelope designated by the carrier, with delivery fees paid
9         or provided for, for delivery the next business day to the person(s) listed above, and placing the envelope for collection today by the overnight courier in
10        accordance with the firm's ordinary business practices.  I am readily familiar with this firm's practice for collection and processing of overnight courier
11        correspondence.  In the ordinary course of business, such correspondence collected from me would be processed on the same day, with fees thereon fully prepaid, and
12        deposited that day in a box or other facility regularly maintained by Airborne Express, which is an express carrier.

13

14   ☒    By transmitting via facsimile machine the document(s) listed above to the fax
15        number(s) set forth below on this date at approximately 10:12 AM.  The outgoing facsimile machine telephone number in this office is (213) 430-6407.  The
16        facsimile machines used in this office create a transmission report for each outgoing facsimile transmitted.  A copy of the transmission report(s) for the service
17        of this document, properly issued by the facsimile machine(s) that transmitted this document and showing that such transmission was (transmissions were) completed
18        without error, is attached hereto

19

20   Michael T. Zeller, Esq.            Douglas A. Wickham, Esq.
     Quinn Emanuel Urquhart Oliver &    Keith A. Jacoby, Esq.
21   Hedges, LLP                        Littler Mendelson, P.C.
     865 South Figueroa Street,         2049 Century Park East
22   10th Floor                         Fifth Floor
     Los Angeles, CA  90017             Los Angeles, CA  90067
23   Phone: (213) 443-3000              Phone: (310) 553-0308
     Fax: (213) 624-0643                Fax: (310) 553-5583
24   Email:                             Email:
     michaelzeller@quinnemanuel.com     dwickham@littler.com
25                                      kjacoby@littler.com
26
27
28

LA2:825044.1                                          PROOF OF SERVICE

Exhibit 19 , P. 414

1 Patricia Glaser, Esq.
2 Christensen, Glaser, Fink,
  Jacobs, Weil & Shapiro, LLP
3 10250 Constellation Blvd.,
19th Floor
4 Los Angeles, CA 90067
Phone: (310) 282-6217
5 Fax: (310) 556-2920
6 Email:
pglaser@chrisglase.com
7

    I declare under penalty of perjury under the laws of the United States that
8 the above is true and correct.

9     Executed on March 6, 2007, at Los Angeles, California.

10
11                             Mary C. Layman
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LA2:825044.1                                     PROOF OF SERVICE

Exhibit 19, P. 415