**Exhibit 1**

COPY

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  |   John B. Quinn (Bar No. 90378)
2 |   Michael T. Zeller (Bar No. 196417)
  | 865 South Figueroa Street, 10th Floor
3 | Los Angeles, California 90017
  | Telephone:   (213) 443-3000
4 | Facsimile:   (213) 443-3100

5 | Attorneys for Plaintiff
  | Mattel, Inc.

6

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | FOR THE COUNTY OF LOS ANGELES

10

11 | MATTEL, INC., a Delaware corporation,

12 |                     Plaintiff,

13 |              v.

14 |

15 | CARTER BRYANT, an individual; and
16 | DOES 1 through 10, inclusive,

17 |                     Defendants.

18

19

20

21

22

23

24

25

26

27

28

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

APR 27 2004

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
SUE CARR

CASE NO. _____ BC314398 _____

COMPLAINT FOR:

(1) BREACH OF CONTRACT;
(2) BREACH OF FIDUCIARY DUTY;
(3) BREACH OF DUTY OF LOYALTY;
(4) UNJUST ENRICHMENT; AND
(5) CONVERSION

07209/579342.1

COMPLAINT

EXHIBIT 1 ⋅ ⸱5

Plaintiff Mattel, Inc. ("Mattel") brings this action against defendants Carter
Bryant ("Bryant") and Does 1 through 10 (all defendants being collectively referred to as
"defendants") and alleges as follows:

<u>Parties</u>

1.      Mattel is a corporation organized and existing under the laws of the
State of Delaware and has its principal place of business in El Segundo, California.

2.      Mattel is informed and believes, and on that basis alleges, that defendant
Bryant is an individual currently residing in Springfield, Missouri.

3.      The true names and capacities of defendants sued herein as Does 1
through 10, inclusive, are unknown to Mattel, which therefore sues said defendants by such
fictitious names. Mattel will amend this Complaint to allege their true names and capacities
when the same are ascertained.

4.      Mattel is informed and believes, and on that basis alleges, that at all
times relevant herein, defendants, and each of them, were acting in concert and active
participation with each other in committing the wrongful acts alleged herein, and were the
agents of each other, and in doing the things alleged herein, each defendant was acting
within the course and scope of his, her or its agency and was subject to and under the
supervision of, and was acting with the knowledge of, his, her or its co-defendants.

<u>Jurisdiction and Venue</u>

5.      During the time of the acts complained of herein, Bryant was employed
by Mattel in, and was a resident of, Los Angeles County. Bryant's contracts with Mattel that
are at issue in this action were executed, performed and breached by Bryant in Los Angeles
County.  In addition, defendants committed the tortious conduct alleged herein while
physically located in Los Angeles County, and Mattel felt the effects of Bryant's breach and

6

EXHIBIT 1

1 | defendants' other wrongful acts in Los Angeles County.  Accordingly, this Court has

2 | personal jurisdiction over defendants.

3 |        6.    Venue is proper pursuant to <u>Code of Civil Procedure</u> §§ 393 and 395(a),

4 | as the causes of action arose in Los Angeles County, the contractual obligations at issue were

5 | incurred, were to be performed and were breached by Bryant in Los Angeles County, and

6 | Bryant does not currently reside in California.

7 |

8 | <p align="center">Factual Background</p>

9 |

10 |        7.    Mattel is a long standing and successful independent manufacturer and

11 | marketer of toys, dolls, games and stuffed toys and animals.  Mattel was founded in 1945 by

12 | Elliot and Ruth Handler and Harold "Matt" Mattson.  The name of the company was created

13 | by incorporating the names of two of its founders, "MATT-son" and "EL-liot."  Originating

14 | from the Handlers' garage in Southern California, the company greatly expanded its

15 | operations following World War II and soon began to thrive as its reputation for producing

16 | high-quality toys spread.  During the next several decades, Mattel became world famous for

17 | producing high-quality products at reasonable prices.  Today, some of Mattel's most famous

18 | brands include BARBIE, HOT WHEELS, MATCHBOX and FISHER-PRICE.

19 |        8.    Critical to Mattel's success, and to the livelihood of its employees, is

20 | Mattel's ability to design and develop new products. Mattel invests many millions of dollars

21 | in product design and development annually, and it introduces hundreds of new products

22 | each year.  In El Segundo, California alone, Mattel maintains a 180,000 square-foot design

23 | center that houses more than 850 designers, sculptors, painters and other artists, whom

24 | Mattel pays to work exclusively and full-time to create the products that Mattel sells and on

25 | which Mattel's business depends.

26 |        9.    Defendant Bryant was employed by Mattel from September 1995

27 | through April 1998, and then again from January 1999 through October 2000, as a product

28 | designer at Mattel's design center in El Segundo, California.

07209/579342.1

-3-

**COMPLAINT**

7

EXHIBIT 1

10.   On January 4, 1999, upon starting his second term of employment by Mattel, and as a condition of and in consideration for his employment, Bryant executed an Employee Confidential Information and Inventions Agreement (the "Employee Agreement").  Among other things, Bryant agreed that he would not, without Mattel's express written consent, "engage in any employment or business other than for [Mattel], or invest in or assist (in any manner) any business competitive with the business or future business plans of [Mattel]."  Bryant further acknowledged that he held a position of trust with Mattel.  In addition, Bryant assigned to Mattel all rights, title and interest in "inventions," including without limitation "designs," that he conceived or reduced to practice during his employment by Mattel.  A true and correct copy of Bryant's Employee Agreement with Mattel is attached as Exhibit A.

11.   Also on January 4, 1999, Bryant executed Mattel's Conflict of Interest Questionnaire (the "Conflict Questionnaire").  Among other things, Bryant certified in the Conflict Questionnaire that, other than as disclosed, he had not worked for any competitor of Mattel in the prior twelve months and had not engaged in any business venture or transaction involving a Mattel competitor that could be construed as a conflict of interest. Bryant specifically agreed that he would immediately notify his supervisor of any change in his situation that would cause him to change any of the foregoing certifications.  The only conflict disclosure that Bryant made on the Conflict Questionnaire (or at any time subsequently) concerned freelance work that is unrelated to the conduct alleged herein.  A true and correct copy of the Conflict Questionnaire executed by Bryant is attached as Exhibit B.

12.   In late November 2003, Mattel learned that Bryant had secretly aided, assisted and worked for a Mattel competitor, including without limitation by entering into an agreement with the competitor, during the time Bryant was employed by Mattel pursuant to the above-referenced agreements and was being paid by Mattel as a product designer. Bryant's agreement with the competitor obligated Bryant to provide product design services to the competitor on a "top priority" basis.  Bryant's agreement also provided, among other

COMPLAINT

8

EXHIBIT 1

1 | things, that Bryant would receive royalties and other consideration for sales of products on
2 | which Bryant provided aid or assistance; that all work and services furnished by Bryant to
3 | the competitor under the agreement purportedly would be considered "works for hire"; and
4 | that all intellectual property rights to preexisting work by Bryant purportedly would be
5 | assigned to the competitor. In addition, while Bryant was employed by Mattel, Bryant and
6 | the other defendants converted, misappropriated and misused Mattel property and resources
7 | for the benefit of, and to aid and assist, Bryant personally and Mattel's competitor.

8 |         13.     During the time that he was employed by Mattel and thereafter, Bryant
9 | concealed these actions from Mattel, including without limitation by failing to notify his
10 | supervisor of his conflict of interest regarding the competitor and by making affirmative
11 | misrepresentations to Mattel management upon his departure from Mattel. Because of
12 | Bryant's acts of concealment and his misrepresentations to Mattel, Mattel had no reason to
13 | suspect that Bryant had worked for the competitor while still employed by Mattel until late
14 | November 2003, when Mattel received, through an unrelated legal action, a copy of Bryant's
15 | agreement with the competitor and saw that the date of the agreement predated Bryant's
16 | departure from Mattel.

17 |         14.     As a consequence, Bryant breached his contracts with Mattel and
18 | violated his duty of loyalty and his fiduciary duties to Mattel; the other defendants have
19 | unlawfully aided and abetted his violation of such duties; and each of the defendants has
20 | been unjustly enriched and engaged in acts of conversion.

21 |
22 |                         FIRST CLAIM FOR RELIEF
23 |                            (Breach of Contract)
24 |
25 |         15.     Mattel repeats and realleges each and every allegation set forth in
26 | paragraphs 1 through 14, above, as though fully set forth at length.
27 |         16.     Pursuant to his Mattel Employment Agreement, and for good and
28 | valuable consideration, Bryant agreed that he would not, without Mattel's express written

07209/579342.1                          -5-

                                                        COMPLAINT

9

EXHIBIT 1

1  consent, engage in any employment or business other than for Mattel or assist in any manner

2  any business competitive with the business or future business plans of Mattel during his

3  employment with Mattel.  Pursuant to his Mattel Employment Agreement, Bryant further

4  assigned to Mattel all right, title and interest in "inventions," including without limitation

5  "designs," that he conceived or reduced to practice during his employment by Mattel.  In

6  addition, pursuant to the Conflict Questionnaire, Bryant certified that, other than as

7  disclosed, he had not worked for any competitor of Mattel and had not engaged in any

8  business venture or transaction involving a Mattel competitor that could be construed as a

9  conflict of interest.  Bryant further promised that he would notify his superior immediately

10 of any change in his situation that would cause him to change any of the foregoing

11 certifications or representations.

12         17.    The Employment Agreement and the Conflict Questionnaire are valid,

13 enforceable contracts, and Mattel has performed each and every term and condition of the

14 Employment Agreement and Conflict Questionnaire required to be performed by Mattel.

15         18.    Bryant materially breached the foregoing contracts with Mattel, in that,

16 among other things, he secretly aided, assisted and worked for a Mattel competitor during

17 his employment with Mattel, without the express written consent of Mattel.

18         19.    As a consequence of Bryant's breach, Mattel has suffered and will in

19 the future continue to suffer damages in an amount to be proven at trial.  Such damages

20 include, without limitation, the amounts paid by the competitor to Bryant during his Mattel

21 employment; the amounts paid by the competitor to Bryant as a result of the work he

22 performed for the competitor during his Mattel employment; the amount that Mattel paid

23 Bryant during the time he wrongfully worked for the competitor; the value of information

24 and intellectual property owned by Mattel which Bryant provided to the competitor; the

25 value of the benefits the competitor obtained from Bryant during the time he was employed

26 by Mattel; and the value of the benefits the competitor obtained from Bryant as a result of

27 the work he performed for the competitor during his Mattel employment.

28

COMPLAINT

19

EXHIBIT 1

20.     Furthermore, Bryant's conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Bryant specifically acknowledged in his Employment Agreement that his breach of the Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies."  Accordingly, Mattel is entitled to orders mandating Bryant's specific performance of his contracts with Mattel and restraining Bryant from further breach.

## SECOND CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

21.     Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 20, above, as though fully set forth at length.

22.     Bryant held a position of trust and confidence with Mattel.  In his position, Bryant had access to and was entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently in many of his job assignments and duties.  In his position, Bryant also represented Mattel in its dealings with third parties and, in his actions in the course and scope of his employment with Mattel, was an agent of Mattel.  Bryant confirmed his relationship of trust with Mattel in the Employee Agreement.  Bryant thus owed Mattel a fiduciary duty that included, but was not limited to, an obligation not to take any action that would be contrary to Mattel's best interests or that would deprive Mattel of any opportunities, profit or advantage which Bryant might bring to Mattel.

23.     Bryant breached his fiduciary duty to Mattel in that, while employed by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including without limitation by entering into an agreement with a Mattel competitor.  As alleged

07209/579342.1

-7-

11

EXHIBIT 1

1    above, Bryant also breached the aforementioned duty by using Mattel property and resources

2    for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3          24.    The other defendants, acting with full knowledge of Bryant's obligations

4    to Mattel, aided and abetted Bryant in such conduct.

5          25.    As a direct and proximate result of defendants' wrongful conduct,

6    Mattel has incurred damages in an amount to be determined at trial.

7          26.    Defendants acted with malice, fraud and oppression, and in conscious

8    disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages

9    against defendants in an amount to be determined at trial.

10          27.    Furthermore, defendants' conduct has caused, and unless enjoined will

11    continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

12    money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel

13    is entitled to an order restraining further breach of Bryant's fiduciary duty to Mattel and/or

14    restraining defendants from continuing to benefit from such breach.

15

16                      **THIRD CLAIM FOR RELIEF**

17                      (Breach of Duty of Loyalty)

18

19          28.    Mattel repeats and realleges each and every allegation set forth in

20    paragraphs 1 through 27, above, as though fully set forth at length.

21          29.    As an employee of Mattel, Bryant owed a duty of undivided loyalty to

22    Mattel, his employer. Pursuant to this duty, Bryant could not compete with Mattel or assist

23    a competitor of Mattel during his employment with Mattel. Pursuant to this duty, Bryant

24    was required to always give preference to Mattel's business over his own, similar interests

25    during the course of his employment with Mattel.

26          30.    Bryant breached his duty of loyalty to Mattel in that, while employed

27    by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including

28    without limitation by entering into an agreement with a Mattel competitor. As alleged

13

EXHIBIT 1

1   above, Bryant also breached the aforementioned duty by using Mattel property and resources

2   for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3       31.   The other defendants, acting with full knowledge of Bryant's obligations

4   to Mattel, aided and abetted Bryant in such wrongful conduct.

5       32.   As a direct and proximate result of defendants' wrongful conduct,

6   Mattel has incurred damages in an amount to be determined at trial.

7       33.   Defendants acted with malice, fraud and oppression, and in conscious

8   disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages

9   against defendants in an amount to be determined at trial.

10       34.   Furthermore, defendants' conduct has caused, and unless enjoined will

11   continue to cause, irreparable injury to Mattel that cannot be adequately compensated by

12   money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel

13   is entitled to an order restraining further breach of Bryant's duty of loyalty to Mattel and/or

14   restraining defendants from continuing to benefit from such breach.

15

16                     **FOURTH CLAIM FOR RELIEF**

17                       (Unjust Enrichment)

18

19       35.   Mattel repeats and realleges each and every allegation set forth in

20   paragraphs 1 through 34, above, as though fully set forth at length.

21       36.   Defendants, by the aforementioned conduct, unfairly used and diverted

22   Mattel property, resources and opportunities for the benefit of, and to aid and assist,

23   themselves, all without authorization by or payment to Mattel for the same. Defendants have

24   been unjustly enriched as a result.

25       37.   Mattel is entitled to an award of all such amounts by which defendants

26   have been unjustly enriched in an amount to be determined at trial.

27

28

07209/579342.1

-9-

COMPLAINT

13

EXHIBIT 1

38.     Defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages against defendants in an amount to be determined at trial.

39.     Furthermore, defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining defendants from any further unjust enrichment.

## FIFTH CLAIM FOR RELIEF

### (Conversion)

40.     Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 39, above, as though fully set forth at length.

41.     Mattel was entitled to, _inter alia_, Bryant's exclusive services and the exclusive ownership of his inventions as a Mattel product designer. However, Bryant provided such services, and purported to grant rights to such inventions, to a competitor during the time of his exclusive Mattel employment. All such services and the inventions and work product resulting from such services, including without limitation ideas, concepts, rights, designs, proprietary information, and other intellectual property and intangible property created by Bryant during the term of the aforesaid agreements, were the property of Mattel. Such services and property were provided by Bryant to others, including defendants, and used by them.

42.     Defendants wrongfully converted Mattel property and resources by asserting ownership thereto and by appropriating and using Mattel's property and resources for their own benefit and gain and for the benefit and gain of others, without the permission of Mattel.

07209/579342.1

-10-

COMPL

EXHIBIT 1

43.    As a direct and proximate result of defendants' wrongful conversion of Mattel's property and resources, Mattel has incurred damages. Mattel is entitled to recover compensatory damages against defendants in an amount to be determined at trial.

44.    Defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages against defendants in an amount to be determined at trial.

45.    Furthermore, defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining defendants from further conversion of Mattel property and resources and/or restraining defendants from continuing to benefit from such conversion.

## PRAYER FOR RELIEF

WHEREFORE, Mattel hereby respectfully requests that this Court:

A.    Award Mattel its damages;

B.    Order defendants to disgorge to Mattel all payments, revenue, profits, monies, royalties and any other benefits derived or obtained by defendants as a result of the conduct described herein;

C.    Order specific performance by Bryant to comply with and satisfy Bryant's contractual obligations to Mattel;

D.    Enter an injunction restraining defendants, and all those acting in concert or participation with them, from engaging in further wrongful conduct and/or from continuing to benefit from their wrongful conduct;

E.    Order defendants to pay Mattel the full cost of this action and Mattel's reasonable attorneys' fees;

F.    Award Mattel punitive damages in an amount sufficient to punish defendants and deter such misconduct in the future; and

07209/579342.1

-11-

COMPLAINT

EXHIBIT 1

15

G.    Award such other and further relief as this Court deems just and proper.

DATED:  April 27, 2004          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP



By _____
Michael T. Zeller
Attorneys for Plaintiff
Mattel, Inc.

07209/579342.1

-12-

**COMPLAINT**

16

EXHIBIT 1

**Exhibit A**

EXHIBIT 1        17

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment [illegible] the Company [illegible] In consideration of my employment with the Company and other good and valuable consideration, I agree that:

**1. Provisions Related to Trade Secrets**

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information [illegible] The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information [illegible] Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company [illegible] all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

**2. Ownership of Inventions**

(a) [illegible]

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) [illegible] California Labor Code. [illegible]

(d) [illegible]

**3. Conflicts with Other Activities**

(a) [illegible] Company's Conflict of Interest Policy [illegible]

**4. Miscellaneous**

(a) [illegible]

(b) [illegible]

(c) [illegible]

(d) [illegible]

(e) [illegible]

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) [illegible]

CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.

[signature]
Employee Signature

CARTER H. BRYANT
Employee Name (print)

01/04/99
Date

MATTEL, INC.
By: [signature]
Signature

TERESA NEWCOMB
Name of Witness (print)

13

EXHIBIT 1

**Exhibit B**

EXHIBIT 1

13

## CONFLICT OF INTEREST QUESTIONNAIRE

BRYANT, CARTER H.        PROJECT DESIGNER

**Instructions:** The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflict of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**Mattel Supplier** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**Mattel Competitor** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**Interest** means direct or indirect ownership of any stock, bond, option or right to purchase any security, share thereof; investment, partnership interest or other party; participation or employment, interest, whereof; interest title grant; any agreement to perform service for or deal with or to deliver materials or to provide compensation of any kind from any supplier or competitor. You may disregard Mattel securities held and publicly-owned companies whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

**Exclusion of any consideration, etc.** means receipt of anything of value, in cash or in kind, over $40 on any one occasion or over $300 total during the past twelve months.

- [ ] YES [ ] NO  1. Have you owned, directly or indirectly, any interest in a Mattel supplier?
- [ ] YES [ ] NO  2. Have you owned, directly or indirectly, any interest in a Mattel competitor?
- [ ] YES [ ] NO  3. Have you been the recipient of any consideration, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?
- [x] YES [ ] NO  4. Have you been the recipient of any consideration, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?
- [ ] YES [ ] NO  5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?
- [ ] YES [ ] NO  6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?
- [ ] YES [ ] NO  7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not primarily within the scope of your holding any relation to any supplier or competitor?
- [ ] YES [ ] NO  8. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

4, 5, freelance design & artwork in 1998.
from appx. 5/98 - 11/98 for the Ashton Drake galleries.

I certify that I have read Mattel policies concerning Conflict of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized outsiders. I also agree to notify my superior immediately of any changes in my business that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged in any capacity which creates a Conflict of Interest.

Carter H. Bryant        01/04/98

EXHIBIT 1        29

**Exhibit 2**

**MGA ENTERTAINMENT**
16730 Schoenborn Street
North Hills, California 91343

Dated as of September 18, 2000

Mr. Carter Bryant
1319 West 160th Street
Gardena, California 90247

Dear Mr. Bryant:

Set forth below are the terms and conditions upon which we (hereinafter "MGA") are retaining you ("Bryant") to consult and advise MGA in the design and development of certain products which MGA wishes to manufacture and distribute (hereinafter our agreement is sometimes referred to as the "MGA Consulting Agreement"). The parties' agreement is as follows:

1.    Retention as Consultant/Services: MGA retains Bryant to provide his services to consult with MGA and advise MGA on the design and development by MGA of a line of dolls presently known as "Bratz" (the "MGA Products"). Bryant will render his services at such locations and times as may be reasonably be designated by MGA. It is understood and agreed that Bryant shall provide his services on a "top priority" basis as his services pertain to other clients of Bryant. In addition, Bryant and all other Bryant staff will take direction from and be under the supervision of such person(s) as may be reasonably designated by MGA from time to time upon notice to Bryant. It is understood and agreed that, subject to MGA's prior written consent, Bryant may retain third party contractors ("Contractors") to assist at his direction in the services to be rendered hereunder. Such third parties shall be compensated in a manner ("Contractor Fees") to be determined between Bryant and such third parties and shall be subject to the terms of this Agreement, including without limitation, paragraphs 3, 4, and 7, below. Bryant shall enter into agreements with all Contractors on a form approved by MGA as conforming to the terms of this Agreement and confirming MGA's ownership of all results and proceeds of the services provided by any such Contractors; such form is attached a Exhibit "A" to this Agreement, and is incorporated herein by reference.

2.    Term/Exclusivity: The Term shall commence on the date of this Agreement. MGA shall have the right to terminate this Agreement on not less than forty-five (45) days prior written notice to Bryant. During the Term of this Agreement, Bryant will not provide consulting services to any person, firm or corporation engaged in the design, development and manufacture and sale of dolls or similar products.

3.    Ownership:

(a)    All results and proceeds of the services provided by Bryant hereunder and any Contractor, including without limitation, any inventions, and any documentation related thereto, and any other material, whether written or oral (collectively, the "Bryant Work Product") shall be considered "work made for hire" and shall be owned exclusively, throughout the world, and in perpetuity by MGA (including all copyrights and patents therein and thereto, and all renewals and extensions thereof). MGA shall have the sole and exclusive right to use the Bryant Work Product, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify the Bryant Work Product and the results of Bryant's services hereunder and the Contractors' services, and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised. MGA shall have the sole and exclusive right to copyright or patent the Bryant Work Product in MGA's name, as the owner and author thereof, and to secure any and all registrations, renewals and extensions of such copyrights and

{00006662.DOC/2 / 18/04/2000  03:05 PM}

1

ATTORNEY'S EYES ONLY

MGA000001

EXHIBIT 2

patents in MGA's name or Bryant's name or the Contractors' names, as permitted pursuant to applicable statute. Bryant expressly waives, and shall cause all Contractors to waive, any "moral rights" (as such term is commonly understood around the world) in and to the Bryant Work Product prepared by Bryant and/or the Contractors pursuant to the Agreement. Bryant shall, upon request, execute, acknowledge and deliver, and shall cause each Contractor to execute, acknowledge and deliver, to MGA such additional documents as MGA may deem necessary to evidence and effectuate MGA's rights hereunder, and Bryant hereby grants to MGA the right as Bryant's attorney-in-fact to execute, acknowledge, deliver and record in the U.S. Copyright Office, the U.S. Patent Office or elsewhere any and all such documents. If, whether by statutory amendment to the U.S. Copyright and/or Patent Laws, or a decision by a court of competent jurisdiction interpreting such laws, MGA shall not be deemed to be the author or owner of the Bryant Work Product, this Agreement and each agreement with a Contractor shall, nevertheless, constitute an irrevocable assignment by Bryant and each Contractor, as applicable, to MGA of any and all of Bryant's and each Contractors' right, title and interest, including copyright and patent (and all renewals and extensions thereof), in and to the Bryant Work Product. Bryant acknowledges and agrees, and shall cause each Contractor to acknowledge and agree, that he and they have no interest in and shall not, by virtue of this Agreement or any services rendered by Bryant and/or each Contractor to MGA acquire any interest in the MGA Products and that MGA may exploit the MGA Products and any derivative works thereto, without obligation to Bryant and/or the Contractors, except as provided in Paragraph 4, below.

(b) Without limiting the generality of the provisions of Paragraph 3(a), above, with respect only to any inventions, and any documentation related thereto, and any other material, whether written or oral, created by or for Bryant relating to the MGA Products prior to the commencement of the term of this Agreement, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by Bryant, Bryant hereby irrevocably grants, conveys, transfers, sets over and assigns to MGA in perpetuity all of Bryant's right, title and interest, in an to the such material, including, without limiting the generality of the foregoing, all rights under copyright and patent (and all renewals and extensions thereof) including the right to produce and authorize the production of any and all derivative works, and all proprietary rights of any kind therein, now known or hereafter created throughout the world. MGA shall have the sole and exclusive right to use such material, in whole or in part, in whatever manner MGA may desire, including without limitation, the right to cut, edit, revise, alter and/or otherwise modify such materials and to freely use, perform, distribute, exhibit and exploit such materials and license others to do so in any and all media now known or hereafter devised or refrain from doing so as MGA may determine. Bryant expressly waives any "moral rights" (as such term is commonly understood around the world) in and to such materials.

4. **Compensation/Costs**:                                    REDACTED

(a) For the first six (6) months of the Term of this Agreement, MGA shall pay Bryant for his services at the rate of [REDACTED] per month; for the next three (3) months of the Term, MGA shall pay Bryant for his services at the rate of [REDACTED] per month. All sums paid to Bryant as monthly fees shall be deemed to be non-refundable, fully-recoupable advances against any royalties that may be payable to Bryant pursuant to paragraph 4(b), below.

(b) MGA shall pay to Bryant a royalty of [REDACTED] percent ( %) of the Net Sales Receipts from the sales by MGA of any of the MGA Products developed by MGA on which Bryant provided his consulting services. As used herein, the term "Net Sales Receipts" means all monies actually received by MGA from its customers on sales of MGA Products less (i) any and all excise, sales, value added or comparable or similar taxes; (ii) freight and similar third party handling charges paid or payable by MGA; and (iii) returns, discounts, allowances or credits (inclusive of co-op and trade discounts and allowances). MGA shall account to Bryant on a calendar quarterly basis within thirty (30) days after the end of each quarter. All statements of royalties rendered by MGA hereunder shall be conclusive, final,

{00006662.DOC/2 / 10/04/2000 03:05 PM}

2

ATTORNEY'S EYES ONLY

MGA000002

EXHIBIT 2

and binding on Bryant, shall constitute an account stated, and shall not be subject to any question for any reason whatsoever unless specific written objection, stating the basis thereof, is given by Bryant to MGA within two (2) years after the date rendered.  No action, suit, or proceeding of any nature in respect of any royalty statement or other accounting rendered by MGA hereunder may be maintained against MGA unless such action, suit, or proceeding is commenced against MGA in a court of competent jurisdiction within one (1) year after the date of MGA's notice rejecting such objection. Bryant or his representatives shall have the right, not more than once per year and not more than once per statement of royalties, to examine MGA's books and records relating to the sales of such MGA Products, such examination to be conducted during MGA's normal business hours and upon reasonable prior written notice.

(c)     All costs and expenses incurred by Bryant in connection with the performance of his obligations hereunder shall be borne solely by Bryant, except as otherwise agreed and incurred with MGA's prior written consent.  In the event MGA requests Bryant to travel to the Orient on MGA's behalf in connection with his services hereunder, MGA will reimburse Bryant for all travel expenses incurred in connection therewith, such as parking, airfare (economy class), auto rental, meals and hotel accommodations. Reimbursement shall be at the actual cost of such item without any mark-up.

(d)     Bryant shall submit invoices to MGA for his monthly fees (and reimbursable expenses, if and as agreed) on a monthly basis.  Each invoice shall provide sufficient detail to support the monthly fee charges and hours rendered (and shall include satisfactory copies of bills and/or payments for reimbursable expenses, as applicable).  MGA shall pay each such invoice within fifteen (15) days after receipt of such invoice, provided, however, MGA reserves the right to request further explanation or documentation before paying any invoice submitted by Bryant.

(e)     MGA shall use its reasonable business efforts, consistent with its business judgment, to market, promote, distribute, sell and/or exploit the MGA Products and to collect on all monies due from sales.  MGA has not made and does not hereby make any representation or warranty with respect to the quantity of sales (if any) of MGA Products embodying the Property which MGA may sell.  Bryant recognizes and acknowledges that the sale of MGA Products is speculative and agrees that MGA's judgment and the judgment of its subsidiaries and affiliated companies with regard to the sales of any of its MGA Products and with regard to the marketing, promotion, advertising and exploitation of the MGA Products shall be binding and conclusive upon Bryant.  Bryant warrants and agrees that Bryant will not make any claim, nor shall any liability be imposed upon MGA based upon any claim, that more sales could have been made or that better business could have been done than what was actually made or done by MGA or any of MGA's subsidiaries or its affiliated companies, or that better prices or terms could have been obtained.

5.     <u>Warranties and Indemnity</u>:  Bryant represents, warrants and agrees that:

(a)     he has the right and is free to execute this Agreement, to grant the rights granted by him to MGA hereunder, and to perform each and every term and provision hereof;

(b)     neither the execution and delivery of this Agreement nor the performance by Bryant of any of his obligations hereunder will constitute a violation, breach or default under any agreement, arrangement or understanding, or any other restriction of any kind, to which Bryant is a party or by which Bryant is bound;

(c)     the Bryant Work Product shall be free of all liens and encumbrances and there will be no claims, demands or actions pending or threatened with respect thereto; and that the Bryant Work Product is original and no part thereof infringes or shall infringe upon any common law or statutory rights or intellectual property rights of any third party including, without limitation, contractual rights,

{00006662.DOC/2 / 10/04/2000  03:05 PM}

3

ATTORNEY'S EYES ONLY

MGA000003

EXHIBIT 2                    23

patents, copyrights, mask-work rights, trade secrets, rights of privacy and other intellectual property rights;

(d)    he shall comply with all applicable laws and regulations in force during the Term of this Agreement with respect to the services to be rendered hereunder; and

(e)    he shall indemnify and hold MGA harmless from and against any and all claims, losses, costs, judgments, settlements, damages and expenses (including reasonable counsel fees) arising from any breach by him of any of the warranties, representations and agreements made by him hereunder.

6.    **Default/Termination:**

(a)    In the event either Party fails to perform any of its material obligations hereunder, or breaches any representation, warranty or agreement contained herein, the other Party may terminate this Agreement on thirty (30) days prior written notice, provided the breaching Party shall not have remedied such failure within such thirty (30) day period.

(b)    Upon the termination of this Agreement Bryant shall turn over to MGA all materials relating to the MGA Products furnished by MGA to Bryant or shall give MGA satisfactory evidence of their destruction.

7.    **Confidentiality:**

(a)    Bryant shall keep in confidence and not disclose to any third party, without the written permission of MGA, the Confidential Information made known to him under this Agreement.  As used herein, the term "Confidential Information" means information relating to MGA's products (whether current or projected), product titles, customers, employees, tools and techniques, designs, drawings, schematics and other documentation relating thereto and other confidential and proprietary business information of MGA and which is expressly labeled or identified to Bryant in writing as "confidential" or which, under the circumstances of such disclosure, Bryant knows, or reasonably should know, are treated by MGA as confidential.  This requirement of confidentiality shall not apply to any information that is (i) in the public domain through no wrongful act of Bryant; (ii) rightfully received by the Bryant from a third party who is not bound by a restriction of nondisclosure; (iii) already in the Bryant's possession without restriction as to disclosure; or (iv) required to be disclosed by operation of law or by order of a court or administrative body of competent jurisdiction, (provided that prior to such disclosure, MGA shall first receive notice thereof from Bryant and have the opportunity to contest such order or requirement of disclosure or seek appropriate protective order).

(b)    Bryant agrees and acknowledges that all Confidential Information disclosed to him shall be and remain the sole property of MGA. Nothing contained in this Agreement shall be construed as granting to Bryant any right, title or interest of any kind, by license or otherwise, to the Confidential Information disclosed by MGA, the intellectual property therein or any part or copy thereof. Bryant further acknowledges and agrees that nothing contained herein shall be construed as granting Bryant any right to develop, manufacture, produce and/or distribute any product(s) derived from or which otherwise uses any of the Confidential Information disclosed by MGA, or authorize or in any way assist others to do so.  Bryant may not make, sell, license or distribute copies of the Confidential Information disclosed by MGA and may not sublicense, transfer or assign in any manner whatsoever this Agreement or any of Bryant's rights or obligations under this Agreement.

(c)    Bryant acknowledges that his failure to perform any of the terms or conditions of this Agreement shall result in immediate and irreparable damage to MGA.  Bryant also acknowledges that there may be no adequate remedy at law for such failures and that in the event thereof MGA shall be

{00006662.DOC/2 / 10/04/2000  03:05 PM}

4

ATTORNEY'S EYES ONLY

MGA000004

21

EXHIBIT 2

entitled to equitable relief in the nature of injunction and to all other available relief, at law and/or in equity.

8. **Notices:** All notices, statements and/or payments to be given to the parties hereunder shall be addressed to the parties at the addresses set forth on the first page hereof or at such other address as the parties shall designate in writing from time to time. All notices shall be in writing and shall either be served by personal delivery, mail, or facsimile (if confirmed by mail or personal delivery of the hard copy), all charges prepaid. Except as otherwise provided herein, such notices shall be deemed given when personally delivered, all charges prepaid, or on the date five (5) days following the date of mailing, except that notices of change of address shall be effective only after the actual receipt thereof. Copies of all notices to MGA shall be sent to Fischbach, Perlstein & Lieberman LLP, 1875 Century Park East, Suite 650, Los Angeles, California 90067, Attention: David S. Rosenbaum, Esq. Copies of all notices to Bryant shall be sent to Carter Bryant 1319 West 160th Street, Gardena, California 90247.

9. **Independent Contractor/No Partnership/Third Party Beneficiary:** Bryant's relationship with MGA is that of an independent contractor. Bryant does not have, and will not represent that he has, any power, right or authority to bind MGA, or to assume or create any obligation or responsibility, express or implied, on behalf of MGA in MGA's name. Nothing stated in the Agreement shall be construed as constituting a partnership or as creating the relationships of employer/employee or principal/agent between the parties. In all matters relating to the Agreement, Bryant shall not act as MGA's employee within the meaning or application of any federal or state unemployment insurance laws, or any other laws or regulations which may impute any obligations or liabilities to MGA by reason of an employment relationship. Bryant will be solely responsible for all taxes, including without limitation, employee and employer, and that he carries all of his own insurance. Neither of the parties hereto shall hold itself out contrary to the terms of this provision by advertising or otherwise. This Agreement shall not be construed to be for the benefit of any third party.

10. **Services Rendered Deemed Special, etc.:** Bryant acknowledges that the services to be rendered by him hereunder are of a special, unique, extraordinary and intellectual character which gives them peculiar value, the loss of which cannot be adequately compensated for in an action at law and that a breach of any term, condition or covenant hereof will cause irreparable harm and injury to MGA and in addition to any other available relief MGA will be entitled to seek injunctive relief.

11. **General Provisions:**

(a)     This Agreement may not be assigned by either Party hereto either voluntarily or by operation of law. Any such assignment shall not relieve such Party of its obligations hereunder.

(b)     The titles of the paragraphs of this Agreement are for convenience only and shall not in any way affect the interpretation of any paragraph of this Agreement or the Agreement itself.

(c)     A waiver by either Party of the terms or conditions of this Agreement in any instance shall not be deemed or construed to be a waiver of such terms or conditions for the future or of any subsequent breach thereof. All remedies, rights, undertakings, obligations and agreements contained herein shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either Party.

(d)     Neither Party hereto shall be liable to the other for any incidental, consequential, special or punitive damages of any nature or kind, arising out of in connection with a breach by such Party of this Agreement, whether such liability is asserted on the basis of contract, tort (including negligence or strict liability), or otherwise, even if such Party has been warned of the possibility of any such loss or damage.

{00006662.DOC/2 / 10/04/2000  03:05 PM}

5

ATTORNEY'S EYES ONLY

MGA000005

EXHIBIT 2

(e)    This Agreement shall be construed and interpreted pursuant to the laws of the State of California, applicable to agreements made and to be performed entirely therein, and the parties hereto submit and consent to the jurisdiction of the courts of the State of California, including Federal Courts located therein, should Federal jurisdiction requirements exist, in any action brought to enforce (or otherwise relating to) this contract.

(f)    This Agreement constitutes the entire Agreement between the parties hereto and supersedes all prior agreements, whether written or oral, with respect to the subject matter herein contained. No provision of this Agreement shall be deemed waived, amended or modified by either Party unless such waiver, amendment or modification shall be in writing and signed by a duly authorized officer of the Party against whom the waiver, amendment or modification is to be enforced.

(g)    Nothing contained in this Agreement shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provision of this Agreement and any material statute, law, ordinance, order or regulation contrary to which the parties hereto have no legal right to contract, the latter shall prevail, but in such event any provision of this Agreement so affected shall be curtailed and limited only to the extent necessary to bring it within the legal requirements.

Kindly indicate your agreement with the foregoing by signing in the space provided below.

Very truly yours,

MGA ENTERTAINMENT

By: _____

Its: _____

AGREED TO AND ACCEPTED:

_____
CARTER BRYANT

REDACTED

_____
Social Security Number

[00006662.DOC/2 / 10/04/2000  03:25 PM]

6

ATTORNEY'S EYES
ONLY

MGA000006

EXHIBIT 2                26

**Exhibit 3**

1  ROBERT F. MILLMAN, Bar No. CA 062152
   DOUGLAS A. WICKHAM, Bar No. CA 127268
2  KEITH A. JACOBY, Bar No. CA 150233
   LITTLER MENDELSON
3  A Professional Corporation
   2049 Century Park East, 5th Floor
4  Los Angeles, CA 90067.3107
   Telephone:   310.553.0308
5  Facsimile:   310.553.5583

6  Attorneys for Defendant/Cross-Complainant
   CARTER BRYANT

7

**ORIGINAL FILED**

**SEP 0 8 2004**

**LOS ANGELES**
**SUPERIOR COURT**

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 FOR THE COUNTY OF LOS ANGELES

10

11  MATTEL, INC., a Delaware Corporation,      Case No. BC314398

12            Plaintiff,                       ASSIGNED FOR ALL PURPOSES TO THE
                                               HONORABLE GREGORY W. ALARCON –
13       v.                                    DEPARTMENT 36

14  CARTER BRYANT, an individual; and          DATE ACTION FILED:  April 27, 2004
    DOES 1 through 10, inclusive,
15                                             DEFENDANT/CROSS-COMPLAINANT
              Defendant.                       CARTER BRYANT'S CROSS-
16                                             COMPLAINT FOR:

17                                             (1) UNFAIR COMPETITION (Business &
                                               Professions Code §§ 16600, et seq. and 17200
18                                             et seq.);
                                               (2) RESCISSION;
19                                             (3) DECLARATORY RELIEF; AND
                                               (4) FRAUD.
20
                                               DEMAND FOR JURY TRIAL
21
                                               [Code Of Civil Procedure § 428.10]
22

23  CARTER BRYANT, on behalf of himself,
    all present and former employees of Mattel,
24  Inc., and the general public,

25            Cross-Complainant,

26       v.

27  MATTEL, INC., a Delaware Corporation,

28            Cross-Defendant.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

EXHIBIT 3                    27

1      1.   Defendant and Cross-Complainant Carter Bryant ("Bryant"), for his Cross-

2 Complaint alleges, upon personal knowledge with respect to himself and his own acts, and upon

3 information and belief as to all other matters, as follows:

4 <div align="center">**OVERVIEW**</div>

5      2.   In this Action, Bryant's former employer, Mattel, Inc. ("Mattel"), has sued

6 Bryant for, among other things, breach of a purported Employee Confidential Information and

7 Inventions Agreement ("Agreement"). The Agreement is a classic contract of adhesion, drafted

8 solely by Mattel, forced upon Bryant on a take-it-or-leave-it basis with no negotiations invited or

9 allowed. Although signing the Agreement was a condition of Bryant's employment, Mattel never

10 explained the terms and conditions of the Agreement to Bryant and Bryant never was given a

11 meaningful opportunity to secure legal advice concerning its meaning or terms. Bryant, who is a

12 high school graduate, did not and could not understand the terms of the Agreement; indeed, no

13 reasonable layperson could understand the legal significance, meaning and terms of the Agreement,

14 which appeared to be written for lawyers with several years of experience as corporate attorneys.

15      3.   Furthermore, the Agreement contains terms and conditions that violate

16 established California law on their face and/or in connection with Mattel's interpretation and threats

17 to enforce this Agreement. For example, the confidentiality provision in the first section of the

18 Agreement (as interpreted by Mattel) purports to require Bryant (and similarly situated present and

19 former Mattel employees) to maintain a cone of silence – on pains of a breach of contract lawsuit by

20 Mattel's lawyers – over such innocuous *and public* information as the identities of Mattel employees

21 and the general skills and knowledge of such employees. Such a provision clearly is unlawful and

22 violates public policy because it *de facto* inhibits the free flow of information regarding employee

23 talents and thereby restricts employee mobility in this State, thus undermining one of California's

24 fundamental public policies.

25      4.   The Agreement also purports to prevent current employees from accepting

26 any other employment or engagement of any nature whatsoever, regardless of whether such work or

27 services could lead to the disclosure of Mattel's proprietary information or trade secrets or otherwise

28 constitute a breach of the employee's duty of loyalty. Thus, if a Mattel employee went to work at a

<div align="center">1</div>
<div align="center">DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT</div>

<div align="center">EXHIBIT 3    25</div>

1   gas station or a grocery store to earn extra money for his or her family, the Agreement flatly – and

2   unlawfully – prohibits such employment and renders such an employee liable to Mattel for breach of

3   contract.   Such a broad restriction concerning an employee's lawful off-duty conduct violates

4   California Business and Professions Code sections 16600 and 17200 and California Labor Code

5   sections 96(k) and 98.6 and California's broad public policies prohibiting unlawful covenants not to

6   compete.

7          5.      Finally, the Agreement also purports to require each and every Mattel

8   employee, including Bryant, to assign all inventions or creations conceived or reduced to practice

9   during the time period of his or her Mattel employment in direct violation of California Labor Code

10   section 2870.  While the Agreement purports to limit this broad assignment to the extent required

11   under Section 2870, this limitation is shrouded in so much legalese that no employee in Bryant's

12   shoes would know or understand either the inventions assignment or the limit on that assignment.

13   On information and belief, Bryant alleges that Mattel intentionally and purposefully implemented

14   this overly broad and unconscionable Agreement to lure employees to adhere to its unlawful terms

15   and to assign to Mattel inventions and creations that, by law, do not belong to Mattel.

16          6.      With this Cross-Complaint, Bryant alone and on behalf of all present and

17   former Mattel employees within the applicable limitations period and the general public, seeks to put

18   an end to Mattel's unlawful and unconscionable practices, with an injunction barring Mattel from

19   requiring employees to sign such agreements and threatening to enforce them, with a declaration that

20   all such agreements (including the Agreement signed by Bryant and any later, similar agreements)

21   are void and unenforceable because they are unconscionable, and with an order disgorging Mattel of

22   all profits unlawfully obtained by its misconduct.

23                                    THE PARTIES

24          7.      Bryant is an individual residing in the State of Missouri who was employed by

25   Mattel from 1995 through April 1998 and again from January 1999 to approximately October 20,

26   2000.

27          8.      On information and belief, Bryant alleges that Mattel is a multi-billion dollar,

28   international toy company that, at its El Segundo facility alone, maintains a 180,000 square-foot

DEFENDANT/CROSS-COMPLAINANT

EXHIBIT 3

1  design center with more than eight hundred fifty (850) employees. On information and belief,

2  Bryant alleges that Mattel also maintains facilities in New York state, Wisconsin, New Jersey and

3  Illinois.

4          9.    Mattel markets numerous lines of toys, but one of its most well-known

5  products is the "Barbie" doll line, which, according to Mattel's website, accounts for more than $3.6

6  billion in annual retail sales. On information and belief, Bryant alleges that Mattel, either directly or

7  indirectly through subsidiaries or affiliates, markets and sells Hot Wheels toy cars, "ViewMasters"

8  (three-dimensional viewer toys), the Fisher-Price line of toys and a line of dolls named "American

9  Girl."

10         10.   Bryant brings this Cross-Complaint on his own behalf, on behalf of all

11  current and former Mattel employees (identified below) and on behalf of the general public

12  pursuant to California Business and Professions Code sections 16600, 17200, 17203 and 17204 and

13  the California Labor Code sections 98(k), 98.6, and 2699 (the California Labor Code Private

14  Attorneys' General Act of 2004).

15                    **NATURE OF THE ACTION**

16         11.   Cross-Complainant Bryant brings this Cross-Complaint to remedy the unfair

17  business practices of his former employer, Mattel.

18         12.   During Bryant's initial employment by Mattel, he was assigned to the "Main

19  Line" Barbie Department, where he designed fashions and hairstyles for Barbie and her toy

20  companions, including "Teen Skipper."

21         13.   Between approximately late April 1998 and January 4, 1999, Bryant was not

22  employed by Mattel. However, commencing on or about January 4, 1999, Bryant returned to work

23  at Mattel and was employed in Mattel's Barbie "Collector" Department, designing clothing fashions

24  and accessories for high-end Barbie dolls for the adult "collector" market.

25         14.   Upon beginning this second term of employment with Mattel, Bryant was

26  required to execute a boilerplate document entitled "Employee Confidential Information And

27  Inventions Agreement" (defined above as the "Agreement").

28         15.   The Agreement was a preprinted, non-negotiable form contract prepared by

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553.0308

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

EXHIBIT 3

1   Mattel, printed on Mattel stationery.  The Agreement purports to completely prohibit or, at a

2   minimum, creates a substantial chilling effect on, Bryant's or any other employee's preparations to

3   compete and purports to prevent Bryant and other employees from taking meaningful steps to obtain

4   any other competitive employment while still in the employ of Mattel.  Such an agreement

5   unlawfully restrains Bryant (and similarly situated employees) in his/their business, trade and

6   professions and thus violates well-established rights of employee mobility under California law.

7          16.    The Agreement also purports to effect an assignment of all inventions created

8   or even simply touched by Bryant during the time period of his employment with Mattel, regardless

9   of whether or not they relate to any aspect of Mattel's business and regardless of when or where this

10  occurred.  On its face, Mattel's Agreement theoretically purports to assign to Mattel any "invention"

11  of any kind conceived or reduced to practice by Bryant during the time period of his employment

12  with Mattel.  As Mattel has construed the Agreement, any time Bryant placed pen and pencil to

13  paper during the time period of his Mattel employment, such "works" are owned by Mattel even if

14  such works or inventions were created on his own time with his own materials.

15         17.    As applied here, the Agreement unlawfully infringes on Bryant's right to

16  prepare to compete and to seek other employment and it unlawfully appropriates to Mattel

17  inventions that were created or reduced to practice on Bryant's own time and using his own

18  equipment that are unrelated to his work for Mattel.  Such an invention assignment is overbroad,

19  unconscionable, violates Labor Code section 2870, constitutes an unfair business practice and is

20  therefore unlawful.

21         18.    The Agreement primarily contains a sweeping provision that purports to

22  assign to Mattel each and every invention by Bryant that he created or reduced to practice during the

23  time period of his employment with Mattel.  The Agreement's only attempt to limit the scope of the

24  assignment is a perfunctory reference to California Labor Code section 2870.  That quotation is

25  found in a separate part of the Agreement from the overbroad, illegal clause defining what is

26  covered, appears in fine print, and is stated in language so confusing that no lay person could

27  reasonably understand it.

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310.553.0308

4

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

EXHIBIT 3                    31

19.     Even considering the language of Mattel's reference to Labor Code section 2870 in the Agreement, the Agreement remains impermissibly overbroad and unenforceable. According to that provision of the Agreement, any invention conceived or reduced to practice by Bryant during his employment with Mattel would belong to Mattel by virtue of the unlawful Agreement, regardless of whether the invention related to the work performed by Bryant for Mattel.

20.     In addition to the unlawful inventions assignment, the Agreement contains several other provisions that are equally unlawful, either on the face of the Agreement or as applied by Mattel, as it seeks to enforce the Agreement. As discussed above, the confidentiality provision in the Agreement is grossly overbroad and purports to prohibit employees from disclosing and using publicly available information and it purports to prohibit employees from engaging in lawful off duty conduct in violation of Business and Professions Code 16600 and 17200, the California Labor Code and this State's public policy.

21.     Furthermore, Mattel's overly broad agreement cannot be saved from illegality by narrow construction. Otherwise, if these sorts of agreements could simply be reformed during litigation, employers would have no disincentive to draft and attempt to enforce such overbroad, illegal agreements that chill employees from exercising their rights.

22.     Due to Mattel's fraudulent and/or negligent misrepresentation of the terms contained within the Agreement (and Mattel's failure to affirmatively disclose its material terms to Bryant when Bryant was instructed to sign the Agreement by Mattel), Bryant did not discover, and would not reasonably be expected to discover, that the Agreement was misleading, unconscionable and unlawful until Mattel instituted the underlying lawsuit on April 27, 2004, attempting to enforce the Agreement. At the time it required Bryant to execute the adhesive Agreement as a condition of his employment, Mattel did not explain the terms of the Agreement to Bryant, give him sufficient time to review it, or permit or encourage him to seek independent counsel regarding its legal effect. Had Bryant been made aware of the full meaning and intent of the Agreement, he would not have signed it.

23.     Furthermore, Bryant is informed and believes that Plaintiff Mattel has been aware that Bryant was involved in designing the "Bratz" line of toys since at least sometime in 2001.

5

EXHIBIT 3

1  Rather than bringing suit at that time, Mattel elected instead to wait until three years later to attempt

2  to enforce the unlawful Agreement in the underlying lawsuit.

3          24.    Even though Bryant conceived the "Bratz" idea when he was not employed by

4  Mattel in 1998 and he, with others, did not reduce that idea to practice until after Bryant left Mattel,

5  Mattel nevertheless is using the Agreement to frivolously sue Bryant, in an attempt to hijack

6  "Bratz."

7          25.    Bryant is informed and believes that all employees of Mattel who were hired

8  between 1999 (and before) and the present were required to execute the same or substantially

9  similar agreements, as a pre-condition of their employment with Mattel.  Bryant is informed and

10  believes that his case is representative of a larger pattern and practice of wrongful conduct engaged

11  in by Mattel.  Mattel, as a standard business practice, has forced its employees to enter into and has

12  wrongfully enforced similar quasi-non-competition and assignment of inventions contracts with its

13  present and former employees.  Bryant is informed and believes that Mattel uses these agreements

14  to prevent or stifle competition in the toy industry and/or to unlawfully inhibit employee mobility.

15  Indeed, Bryant is informed and believes, and based thereon alleges, that Mattel continues to force

16  new and current employees to enter into the same or similarly overbroad and unlawful agreements.

17          26.    Bryant was presented with the form Agreement by Mattel on or about January

18  4, 1999, at the outset of his second term of employment.  At that time, he was told that his execution

19  of the Agreement was a condition of his employment with Mattel.  The terms of the Agreement were

20  not explained to him, nor was he told that the Agreement would preclude him from maintaining any

21  employment other than with Mattel, despite statutory guarantees to the contrary.  Bryant was not

22  informed that by executing the Agreement, he was assigning to Mattel all the inventions and

23  creations he created or simply even touched during the time period of his employment with Mattel

24  regardless of how unrelated they might be to his work at Mattel.  Bryant was not advised that Mattel

25  would attempt to claim ownership of any invention he may have conceived prior to employment by

26  Mattel and perfected after he left Mattel.  Bryant neither was given a meaningful opportunity to

27  review the Agreement at the time he executed it, nor was he given the opportunity to consult with an

28  attorney before executing it.  Mattel did not give Bryant the opportunity to negotiate the

LITTLER MENDELSON

6

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

EXHIBIT 3

33

1   Agreement's terms, allow him to review it overnight, or suggest that he consult an attorney before

2   executing it.  In essence, the Agreement was a pre-printed form and was presented to Bryant's on a

3   "take it or leave it" basis and Bryant and all present and former Mattel employees in effect were

4   bludgeoned into accepting its terms or not being allowed to work there.

5       27.     At the time Bryant executed the Agreement, he did not understand the scope,

6   breadth or meaning of its terms.  Bryant is informed and believes, and on that basis alleges that at the

7   time all other current and former employees of Mattel executed identical or similar agreements with

8   Mattel, they, too, did not understand the scope, breadth or meaning of their terms.  As discussed

9   below, the Agreement is both procedurally and substantively unconscionable and thus wholly

10  unenforceable.

11      28.     In this action, Bryant seeks on behalf of himself and the general public the

12  intervention of the Court to obtain remedies to preclude Mattel's unlawful acts.  Among other

13  things, Bryant seeks a declaration from this Court that Mattel's Agreements are not enforceable

14  against Bryant and all other present and former similarly situated Mattel employees.  Bryant also

15  seeks permanent injunctive relief barring Mattel from forcing present and future employees to sign

16  such agreements, stopping Mattel from threatening to enforce and attempting to enforce illegal non-

17  compete/invention assignment contracts against Bryant and any other current or former Mattel

18  employees, and requiring Mattel to disgorge and/or make restitution for all unlawful profits

19  received and/or costs incurred by virtue of its unlawful and unfair business practices and other legal

20  and/or equitable relief to which Bryant and/or the general public may be justly entitled.

21      29.     Bryant also seeks, through this Cross-Complaint, rescission of the

22  unconscionable and unlawful Agreement signed by Bryant.

23              **FIRST CAUSE OF ACTION**

24          (UNFAIR COMPETITION AGAINST DEFENDANT MATTEL)

25              (Business & Professions Code § 17200 et seq.)

26      30.     Bryant realleges and incorporates by reference each of the allegations in

27  Paragraphs 1 through 29 of this Cross-Complaint as if fully set forth herein.

28      31.     Bryant brings his claim for unfair competition and unfair business practices

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

1   on behalf of himself, the current and former employees of Mattel and the general public, pursuant

2   to California Business and Professions Code sections 16600, 17200, 17203 and 17204.

3          32.    The non-competition and invention assignment provisions contained in the

4   Agreement, which Mattel forced Bryant to execute as a condition of employment, and which it is

5   now trying to enforce in the underlying action, are illegal pursuant to California Business and

6   Professions Code sections 16600 and 17200.  Said provisions constitute an unfair restraint of trade

7   for the following, non-exclusive reasons:  they illegally restrict the job mobility of current and even

8   former Mattel employees, they illegally restrict current Mattel employees from seeking other

9   gainful employment, they illegally restrict the use of public information, such as the identity or job

10  functions of current Mattel employees, they specifically prevent or deter Mattel's present and

11  former employees, such as Bryant, from accepting or holding any lawful employment within the

12  State of California or elsewhere other than with Mattel, and they purport to assign for Mattel's

13  unlawful benefit all the inventions of Mattel's current and former employees, with a narrow

14  exception which is the employee's burden to prove.

15         33.    The Agreement is also unlawful in that it violates the provisions of California

16  Labor Code section 96(k), which guarantees the rights of employees to be free in the lawful

17  activities they pursue outside working hours, section 98.6 to the extent Mattel has taken adverse

18  employment actions against employees who have refused to sign the Agreement, and Labor Code

19  section 2699.

20         34.    The Agreement also violates the provisions of California Labor Code section

21  2870 inasmuch as it provides for a far broader assignment of employee inventions than is permitted

22  by applicable law.

23         35.    The Agreement was a contract of adhesion and was procedurally

24  unconscionable because, among other things, Bryant was required to sign it as a condition of his

25  employment with no negotiations allowed, it was presented to him on a preprinted form and on a

26  take-it-or-leave-it basis, he was not allowed to thoroughly review or consider its terms, he was not

27  permitted to review it overnight, he was not provided with the opportunity to consult counsel prior

28  to executing it, and it was never thoroughly and completely explained to him.

8

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COM:

EXHIBIT 3          35

36. Because of its onerous, unfair, unlawful and one-sided provisions, which are surprising, grossly unfair and shock the conscience, the Agreement is substantively unconscionable.

37. Because it is both procedurally and substantively unconscionable, the Agreement is unenforceable. Moreover, the Agreement is so permeated by unconscionability that the unlawful provisions cannot be severed.

38. Due to Mattel's fraudulent and/or negligent misrepresentation of the terms contained within the Agreement, Bryant did not discover, and would not reasonably have discovered, that the Agreement, as Mattel attempted to enforce it, was unconscionable and unlawful until Mattel instituted the underlying lawsuit against him to attempt to enforce the Agreement, in approximately April 2004.

39. Even though the quasi-non-competition and invention assignment provisions of the Agreement are not enforceable, Bryant is informed and believes and based thereon alleges that Mattel utilizes these provisions as part of a scheme and device to restrain the business opportunities, both within and outside the State of California, otherwise available to Bryant and other current and former Mattel employees.

40. Bryant is informed and believes and based thereon alleges that, in effect, through its wrongful acts, Mattel is able to create for itself an unfair competitive advantage along with other benefits at the expense of its present and former employees (including Bryant), other competing companies or employers, and members of the public.

41. Mattel's unlawful conduct in requiring Bryant, and its other current and former employees, to sign the Agreement, or other similar Agreements with equally unlawful provisions as a term and condition of employment or continued employment, and then threatening to enforce such unlawful provisions, constitutes unfair competition and an unfair business practice in violation of the California Business and Professions Code sections 16600 and 17200 et seq. and under the common law.

42. As a proximate result of such unlawful acts and/or unfair business acts and practices, Bryant has suffered actual damages, and Mattel has enjoyed unlawful profits, in a sum not yet fully ascertained but in excess of the jurisdictional limits of this Court. Furthermore, on

9

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

EXHIBIT 3                    36

1  behalf of Bryant and all present and former California employees of Mattel and the general public,

2  Bryant seeks injunctive relief pursuant to Business and Professions Code section 17203, barring

3  Mattel from continuing to engage in such unlawful and unfair business practices, and the remedies

4  of disgorgement and restitution for illicit profits obtained by Mattel from its unlawful and/or unfair

5  business acts and practices pursuant to Business and Professions Code section 17204.

6       43.   In addition, as a result of the illegal and wrongful conduct alleged above, in

7  the absence of injunctive relief prohibiting Mattel from continuing to engage in unfair competition,

8  Cross-Complainant Bryant, the current and former employees of Mattel and the general public have

9  been and will be irreparably harmed.

10       44.   For these reasons, Bryant requests permanent injunctive relief prohibiting

11  Cross-Defendant Mattel from continuing to engage in unfair competition by threatening and

12  attempting to enforce illegal non-compete/invention assignment contracts against Bryant or any

13  other current or former Mattel employees.

14  <u>**SECOND CAUSE OF ACTION**</u>

15  **(RESCISSION AGAINST DEFENDANT MATTEL)**

16       45.   Bryant realleges and incorporates by reference each of the allegations in

17  Paragraphs 1 through 44 of this Cross-Complaint as if fully set forth herein.

18       46.   Bryant's consent to the Agreement was given due to mistake, or obtained

19  through duress, menace and/or fraud.

20       47.   The Agreement is unlawful and unconscionable, due to the fault not of

21  Bryant but of Mattel, which exclusively drafted the Agreement's unlawful and unconscionable

22  terms.

23       48.   Due to Mattel's fraudulent misrepresentation and/or concealment of the terms

24  contained within the Agreement, Bryant did not discover, and would not reasonably be expected to

25  discover, that the Agreement was unconscionable and unlawful until Mattel instituted the underlying

26  lawsuit against him to attempt to enforce the agreement, in approximately April 2004.

27       49.   The public interest will be prejudiced by permitting the Agreement or other

28  similar agreements to stand.

10.

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPL

EXHIBIT 3

37

50. By the filing of this Cross-Complaint, Bryant hereby gives notice to Mattel that he seeks rescission of the Agreement, and further offers to restore to Mattel all consideration and everything of value which he received from Mattel under the Agreement, upon condition that Mattel do likewise.

51. Bryant therefore requests that the Court rescind the Agreement in its entirety.

## THIRD CAUSE OF ACTION

### (FRAUD AGAINST DEFENDANT MATTEL)

52. Bryant realleges and incorporates by reference each of the allegations in Paragraphs 1 through 51 of this Cross-Complaint as if fully set forth herein.

53. Mattel required Bryant to execute the Agreement without disclosing to him its true import and terms.

54. Having drafted the Agreement and all the oppressive, unfair and onerous terms contained therein, Mattel was of course aware of the contents of the Agreement and its import.

55. Due to Mattel's concealment of its interpretation of the force and effect of the Agreement from Bryant, he did not discover that the Agreement was unconscionable and unlawful until Mattel instituted the underlying lawsuit against him to attempt to enforce the agreement, in late April 2004.

56. In so failing to disclose to Bryant the true meaning of the terms and the purported legal effect of the Agreement, and Mattel's intent to attempt to enforce it with regard to work he conceived and/or reduced to practice while not employed at Mattel, Mattel misrepresented and suppressed the nature of the Agreement, and in doing so, committed actual fraud against Bryant.

57. Because of its malicious, oppressive and/or fraudulent conduct, Mattel is subject to punitive damages in an amount necessary and appropriate to punish and deter it and others from engaging in similar conduct in the future.

//

//

11

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

EXHIBIT 3

33

## FOURTH CAUSE OF ACTION

## (DECLARATORY RELIEF AGAINST DEFENDANT MATTEL)

58. Bryant realleges and incorporates by reference each of the allegations in Paragraphs 1 through 60 of this Cross-Complaint as if fully set forth herein.

59. Mattel's unlawful conduct in requiring Bryant, and its other current and former employees, to sign the Agreement with its unlawful provisions as a term and condition of their employment or continued employment and then threatening to enforce such unlawful provisions and eventually filing a lawsuit to enforce such provisions against Bryant constitutes unfair competition and unfair business practices in violation of the California Business and Professions Code sections 16600 and 17200 et seq. and under the common law.

60. Moreover, the Agreement is both procedurally and substantively unconscionable.

61. Through its suit against Bryant, Mattel has demonstrated that a controversy exists concerning the enforceability of the Agreement and its terms.

62. Bryant therefore requests declaratory relief stating that the Agreement, as well as all similar agreements executed by current and former employees of Mattel, are unlawful and unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Cross-Complainant Bryant prays for judgment and relief as follows:

1. For restitution, disgorgement and interest in an amount to be determined at trial;

2. For an order permanently enjoining and barring Mattel from forcing present and future employees to sign agreements containing quasi-non-compete or invention assignment provisions identical or substantively similar to those in the Agreement, and prohibiting Mattel from threatening and attempting to enforce such agreements or restrictions against Bryant or any other current or former employees;

3. For an order declaring that the Agreement between Mattel and Bryant (and the agreements between Mattel and all similarly situated present and former employees) are void,

12

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

EXHIBIT 3

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310.553.0308

1   unenforceable and unconscionable;

2          4.    For rescission of the Agreement;

3          5.    For declaratory relief stating that the Agreement is unlawful and

4   unenforceable;

5          6.    For compensatory damages according to proof;

6          7.    For statutory penalties pursuant to Labor Code section 2699;

7          8.    For punitive damages according to proof;

8          9.    For reasonable attorneys' fees incurred in bringing and litigating this action

9                pursuant to the private attorneys general statutes;

10         10.   For costs of suit herein; and

11         11.   For such further or other relief as the Court deems just and proper.

12

13   Dated: August 24, 2004

14

15                             DOUGLAS A. WICKHAM
                                  LITTLER MENDELSON

16                          A Professional Corporation
                      Attorneys for Defendant/Cross-Complainant

17                             CARTER BRYANT

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 3

## DEMAND FOR A TRIAL BY JURY

Pursuant to Section 592 of the California Code of Civil Procedure, Cross-Complainant Carter Bryant hereby demands that the causes in this matter be tried by a jury to the extent provided for by law.

Dated: August 24, 2004

DOUGLAS A. WICKHAM
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant/Cross-Complainant
CARTER BRYANT

Los_Angeles:371697.1 022307.1010

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

14

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

EXHIBIT 3

**Exhibit 4**

**EXHIBIT 4 FILED SEPARATELY UNDER SEAL**

**Exhibit 5**

**EXHIBIT 5 FILED SEPARATELY UNDER SEAL**

**Exhibit  6**

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  | John B. Quinn (Bar No. 90378)
2 | Michael T. Zeller (Bar No. 196417)
  | Jon D. Corey (Bar No. 185066)
3 | Shane H. McKenzie (Bar No. 228978)
  | 865 South Figueroa Street, 10th Floor
4 | Los Angeles, California 90017-2543
  | Tel.: (213) 443-3000
5 | Fax: (213) 443-3100

6 | Attorneys for Plaintiff and Counter-Defendant
  | Mattel, Inc.

7

8

9 | UNITED STATES DISTRICT COURT

  | CENTRAL DISTRICT OF CALIFORNIA

10

11 | MATTEL, INC., a Delaware corporation,

Case No. CV 04-09059 NM (RNBx)

NOTICE OF DEPOSITION OF ISAAC LARIAN

Plaintiff,

v.

CARTER BRYANT, an individual, and DOES 1 through 10, inclusive,

Defendants.

Date:       January 4, 2005
Time:       9:30 a.m.
Location:   865 S. Figueroa Street
            10th Floor
            Los Angeles, CA 90017

CARTER BRYANT, on behalf of himself, all present and former employees of Mattel, Inc., and the general public,

Cross-Complainant,

v.

MATTEL, INC., a Delaware corporation,

Cross-Defendant.

EXHIBIT 6                143

NOTICE OF DEPOSITION OF ISAAC LARIAN

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2            PLEASE TAKE NOTICE that on January 4, 2005, beginning at 9:30

3    a.m., plaintiff and counter-defendant Mattel, Inc. ("Mattel") will take the

4    deposition upon oral examination of Isaac Larian at the office of Quinn Emanuel

5    Urquhart Oliver & Hedges LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles,

6    CA 90017.

7            PLEASE TAKE FURTHER NOTICE that the deposition will take

8    place before a duly authorized notary public or other officer authorized to

9    administer oaths at depositions, and will continue from day to day, Sundays,

10   Saturdays and legal holidays excepted, until completed.

11           PLEASE TAKE FURTHER NOTICE that, pursuant to Fed. R. Civ.

12   P. 30(b)(2), the deposition will be videotaped.

13

14   DATED: December 15, 2004

15                              QUINN EMANUEL URQUHART OLIVER &
                                HEDGES, LLP
16

17

18                        By
                             Shane H. McKenzie
19                           Attorneys for Plaintiff and Counter-Defendant
                             Mattel, Inc.
20

21

22

23

24

25

26

27

28

07209/616304.1                                       EXHIBIT 6

                                 -2-                                  144

1

<u>PROOF OF SERVICE</u>

1013A(3) CCP Revised 5/1/88

2

STATE OF CALIFORNIA          )
                             ) SS
3      COUNTY OF LOS ANGELES         )

4          I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 865 South Figueroa Street, 10th Floor,
5    Los Angeles, California 90017.

6          On December 15, 2004, I served the foregoing document described as **NOTICE OF DEPOSITION OF ISAAC LARIAN** on all interested parties in this action.

7
                            **Douglas A. Wickham, Esq.**
8                           **Keith A. Jacoby, Esq.**
                            **Dominic Messiha, Esq.**
9                           **Littler Mendelson**
                            **A Professional Corporation**
10                          2049 Century Park East, 5th Floor
                            Los Angeles, California 90067-3107
11                          **FAX: 310-553-5583**

12   [  ]  By placing [ ] the original [ ] true copies thereof enclosed in sealed envelopes addressed as
          follows:

13   [  ]  **BY MAIL:**   I deposited such envelope in the mail at Los Angeles, California. The
          envelope was mailed with postage thereon fully prepaid. As follows: I am "readily familiar"
14        with the firm's practice of collection and processing correspondence for mailing. Under that
          practice it would be deposited with U.S. postal service on that same day with postage thereon
15        fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that
          on motion of the party served, service is presumed invalid if postal cancellation date or
16        postage meter date is more than one day after date of deposit for mailing in affidavit.

17
     [ X ]  **BY TELECOPIER** By transmitting the above listed document(s) to the fax number(s)
18         set forth above on this date.

19   Executed on December 15, 2004, at Los Angeles, California.

20   [  ]   (State) I declare under penalty of perjury under the laws of the State of California that the
           above is true and correct.

21   [ X ]  (Federal) I declare that I am employed in the office of a member of the bar of this court at
22         whose direction the service was made.

23

24   Rebecca A. Ramos
     Print Name                          Signature
25

26

27

28

                                                              145

EXHIBIT 6

## PROOF OF SERVICE
1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA        )
COUNTY OF LOS ANGELES )

I am employed in the county of Los Angeles State of California. I am over the age of 18 and not a party to the within action; my business address is: 1055 West Seventh Street, Los Angeles, CA 90017.

On **December 15, 2004,** I caused to be served by personal service the foregoing document(s) described as **Notice of Deposition of Isaac Larian** on all interested parties in this action.

[ X ]   By placing [  ] the original [ X ] true copies thereof enclosed in sealed envelopes addressed as follows:

**Diana M. Torres, Esq.**
**O'Melveny & Meyers**
400 So. Hope Street
Los Angeles, CA 90071
(213) 430-6407

[ X ]   **BY PERSONAL DELIVERY** I delivered such envelope by hand to the office of the addressee.

Executed on **December 15, 2004,** at Los Angeles, California.

[   ]   (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[ X ]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Leandro Dimonriva

_____        _____
Type or Print Name                                                      Signature

146

EXHIBIT 6

**Exhibit 7**

Received:    1/14/05   5:07PM                  -> QUINN EM      ;  Page 2
JAN-14-2005   17:02                                                              P.02/04

# O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| BEIJING | 400 South Hope Street | NEW YORK |
| CENTURY CITY | Los Angeles, California 90071-2899 | SAN FRANCISCO |
| HONG KONG | TELEPHONE (213) 430-6000 | SHANGHAI |
| IRVINE SPECTRUM | FACSIMILE (213) 430-6407 | SILICON VALLEY |
| LONDON | www.omm.com | TOKYO |
| NEWPORT BEACH | | WASHINGTON, D.C. |

OUR FILE NUMBER
527,436-04

January 14, 2005

WRITER'S DIRECT DIAL
(213) 430-7466

**VIA FACSIMILE (213-624-0643)**

WRITER'S E-MAIL ADDRESS
pambrosini@omm.com

Michael T. Zeller, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Re:    *Mattel, Inc. v. Carter Bryant*

Dear Mr. Zeller:

I write with respect to plaintiff Mattel, Inc.'s ("Mattel") proposed deposition of Isaac Larian, the CEO of MGA Entertainment, Inc. ("MGA"). Mr. Larian has been, and still is, out of the country on business, which has made it very difficult to discuss Mattel's proposed deposition with him.[1] MGA will not provide you with dates for Mr. Larian's deposition unless and until Mattel is able to articulate sufficient justification for such intrusion on Mr. Larian, his schedule, and his unique and undelegable responsibilities as CEO of MGA.

MGA intervened in this case to protect whatever interests it has as, essentially, a third party in Mattel's dispute with Carter Bryant ("Bryant") and to the extent that dispute may potentially impact MGA and MGA's rights in the "Bratz" dolls. Mattel's Complaint does not assert any claims against MGA, and does not seek any affirmative relief from MGA. Despite this, Mattel continues to press for the deposition of MGA's highest-ranking officer, Mr. Larian. At this stage in the litigation, any such deposition can only be viewed by MGA as an unwarranted attempt to harass and intimidate Mr. Larian and MGA – the company that sells the dolls that are the most significant source of competition for Mattel's "Barbie" line. Mattel cannot seriously expect to glean information from Mr. Larian that it could not obtain from other sources – at least in the initial stages of discovery directed to MGA.

As you know, both federal and California law require justification for "apex" depositions, *i.e.*, those in which a party (usually the plaintiff) seeks to "leap-frog" over lower-level officers and employees to the top of the corporate hierarchy, without establishing that such individual has unique knowledge that cannot be obtained by less intrusive means or from lower-level employees who often may be able to adequately answer a plaintiff's relevant questions.[2] Indeed,

---

[1] Mr. Larian also has several long-standing prior business and other commitments in the first part of 2005, many of which will keep him out of Los Angeles (and even the U.S.), that will essentially preclude his availability to meet with his own counsel, let alone to be deposed.

[2] *See generally Liberty Mut. Ins. Co. v. Superior Court*, 10 Cal. App. 4th 1282, 1288-89 (1992) (requiring entry of protective order disallowing deposition of corporate president ) (citing, inter alia, *Baine v. General Motors Corp.*,

EXHIBIT 7                                    147

Received:   1/14/05   5:08PM
JAN-14-2005   17:03                                    -> QUINN EM      .; Page 3

P.03/04

O'MELVENY & MYERS LLP
Michael T. Zeller, Esq., January 14, 2005- Page 2

courts have noted that, where a lower-level employee could likely be a better or more-informed source of the information that the plaintiff seeks, then the likely purpose of trying to jump straight to an apex-level executive's deposition is to harass the defendant and the executive.[3]

   In this case, Mattel has not, to date, suggested why Mr. Larian has unique knowledge of the facts surrounding Mattel's claims against Mr. Bryant, or that lower-level employees of MGA cannot provide information sufficient to meet Mattel's discovery needs. *The mere fact that Mr. Larian may have discoverable information is not enough to compel his deposition.* Instead, *Mattel would have to show that Mr. Larian had information relevant to a claim or defense that could not be obtained in another manner or from another source,* such as lower-level employees who were involved in hiring Mr. Bryant and/or worked with him on the development of "Bratz" at MGA.

   To date, the only depositions taken in this case by Mattel of MGA-related personnel are those of Victoria O'Connor, a former MGA employee, and Mr. Bryant, who has been deposed at length. *Mattel has not noticed the depositions of any other current or former, lower-level MGA employees who might have the information Mattel seeks,* such as personnel actually involved in the creation and development of "Bratz." Absent exploration of the knowledge possessed by employees lower in MGA's corporate structure, particularly those who worked more closely and more regularly with Mr. Bryant on the "Bratz" line, it would be impossible for Mattel to meet its burden of showing that Mr. Larian possesses "unique or superior" personal knowledge of discoverable information. In addition, *thus far Mattel has made no effort to obtain the information it seeks through "less intrusive avenues of discovery,"*[4] such as written interrogatories or requests for admission. Indeed, we note that Mattel has flatly refused to allow Carter Bryant to depose Matt Bousquette (President of Mattel Brands) on similar grounds, even though he is much lower in Mattel's corporate hierarchy than Mr. Larian is at MGA.

   Under the circumstances, MGA respectfully requests that Mattel defer its request for a deposition date for Mr. Larian until these other avenues of discovery have been exhausted and Mattel is able to make the requisite showing. At such point in time, Mattel will also no longer need to seek further time with Mr. Larian, as all information about which it may wish to question him will have been secured from other sources (thereby precluding the need for it to request a "second bite" at his deposition to ask him about such information). By then, such other sources will also have confirmed whether or not Mr. Larian is the only person with knowledge of

---

141 F.R.D. 332, 335-36 (M.D. Ala. 1991) (holding that vice president of GM in charge of Buick division could not be deposed absent showing that discovery could not be obtained from other, less intrusive means or sources)).
[3] *E.g., Liberty Mut. Ins. Co.,* 10 Cal. App. 4th at 1287 ("Furthermore, 'apex' depositions such as the one in this case . . . raise a tremendous potential for discovery abuse and harassment.").
[4] *Liberty Mut. Ins. Co.,* 10 Cal. App. 4th at 1289 (citing *Baine,* 141 F.R.D. at 335-36).

EXHIBIT 7

O'MELVENY & MYERS LLP
Michael T. Zeller, Esq., January 14, 2005- Page 3

the information being sought.  If Mattel will not voluntarily agree to this request to defer the
requested deposition of Mr. Larian at this time, and until such other sources of discoverable
evidence shall have been exhausted (or at least pursued), MGA will have no choice but to seek
protection from the Court.

Very truly yours,

Paula Ambrosini
for O'MELVENY & MYERS LLP

**EXHIBIT 7**                    143

Received:    1/14/05   5:07PM
JAN-14-2005   17:02
→ QUINN E™    .;   Page 1
P.01/04

O

## O'MELVENY & MYERS LLP

400 South Hope Street
Los Angeles, California 90071-2899
TELEPHONE (213) 430-6000
FACSIMILE (213) 430-6407

# FAX TRANSMITTAL

**DATE & TIME:**
01/14/05

**TOTAL NUMBER OF PAGES:**

**TO:**
Michael T. Zeller - Quinn Emanuel

**FAX NUMBER:**
213-624-0643

**TELEPHONE NUMBER:**
213-443-3000

**FROM:**
Paula E. Ambrosini

**RETURN FAX NUMBER:**
(213) 430-6407

**TELEPHONE NUMBER:**
(213) 430-7466

# MESSAGE

**IF YOU DID NOT RECEIVE ALL PAGES, PLEASE CALL OUR FAX DEPARTMENT AT (213) 430-6407.**

| | | | |
|---|---|---|---|
| FILE NO.: | 527,436-04 | RETURN ORIGINAL TO: | Suzanne I. Jimenez |
| USER NO.: | 09901 | EXTENSION: | 7241 |
| RESPONSIBLE ATTY NAME: | Paula E. Ambrosini | LOCATION: | 11s04 |
| SPECIAL INSTRUCTIONS: | | | |

This document is intended for the exclusive use of the addressee. It may contain privileged, confidential, or non-disclosable information. If you are not the addressee, or someone responsible for delivering this document to the addressee, you may not read, copy, or distribute it. If you have received this document by mistake, please call us promptly and securely dispose of it. Thank you.

EXHIBIT 7            150

**Exhibit 8**



1   ROBERT F. MILLMAN, Bar No. CA 062152
    DOUGLAS A. WICKHAM, Bar No. CA 127268
2   LITTLER MENDELSON
    A Professional Corporation
3   2049 Century Park East, 5th Floor
    Los Angeles, CA 90067.3107
4   Telephone:   310.553.0308
    Facsimile:   310.553.5583
5
    Attorneys for Defendant
6   CARTER BRYANT

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10  MATTEL, INC., a Delaware           Case No. CV04-3431 NM (RNBx)
    Corporation,
11                                     ASSIGNED FOR ALL PURPOSES TO
                 Plaintiff,            JUDGE HON. NORA M. MANELLA
12
    v.                                 SECOND DECLARATION OF
13                                     CARTER BRYANT IN SUPPORT OF
    CARTER BRYANT, an individual; and  OPPOSITION TO PLAINTIFF'S
14  DOES 1 through 10, inclusive,      MOTION TO REMAND AND FOR
                                       COSTS
15               Defendant.
                                       Date:  August 23, 2004
16                                     Time:  10:00 A.M.
                                       Dept:  11
17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

    BRYANT DECLARATION II

                    EXHIBIT 8              151

I, Carter Bryant, declare as follows:

1.      I am the defendant in the above-entitled action.  All of the information contained herein is based upon my personal and first hand knowledge and if called and sworn as a witness. I could and would competently testify thereto.

2.      At the time of the removal, I was a citizen of the county of Springfield-Greene, Missouri. My citizenship has not changed.

3.      I am a party to an agreement with MGA Entertainment, Inc.("MGA"), referenced in Plaintiff Mattel, Inc.'s motion for remand.  In the first twenty months of the Agreement alone -- i.e., by the end of May 2002, I had received over one million dollars. My revenues to date are in the millions of dollars and I continue to provide services under the Agreement and earn money pursuant to its terms.  In this lawsuit, Mattel seeks to obtain all the money I have earned or will ever earn as a result of my work on Bratz™. Mattel is seeking to deprive me of my livelihood.

4.      October 20, 2000, was my final day of employment with Mattel.  I gave notice of my resignation prior to that time.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of July in New York, New York.

CARTER BRYANT

Los_Angeles:365704.4 021307.1010

BRYANT DECLARATION II                2.

EXHIBIT 8          15