1  receives MGA's papers and after MGA's opportunity to address the issue in the Joint

2  Stipulation has passed.

3          Mattel's gamesmanship should not be tolerated. *Marchand v. Mercy*

4  *Med. Ctr.*, 22 F.3d 933, 936 (9th Cir. 1994) (stating that parties "should focus on the

5  goal of the Rules, full and efficient discovery, not evasion and word play"). This

6  motion is but one more example of Mattel's scorched earth and patently unreasonable

7  discovery practices in this case to date. Perhaps Mattel is trying to create issues

8  where there are none, in the hope that the Court will simply get tired of its tactics and

9  ignore the discovery disputes, thereby giving Mattel free reign to engage in even

10  more unreasonable and unacceptable tactics with impunity. The Court should not

11  reward Mattel for its behavior by permitting this to occur. MGA respectfully requests

12  that the Court deny Mattel's request for sanctions[83] and, instead, impose sanctions on

13  Mattel's counsel for bringing a frivolous motion and unreasonably multiplying the

14  proceedings in this case. 28 U.S.C. § 1927 ("Any attorney . . . who so multiplies the

15  proceedings in any case unreasonably and vexatiously may be required by the court

16  to satisfy personally the excess costs, expenses, and attorneys' fees reasonably

17  incurred because of such conduct.").

18          MGA also requests that Mattel be ordered to pay the fees and expenses

19  that MGA reasonably incurred in responding to Mattel's frivolous motion, in the

20  amount of $5,000. (Ambrosini Decl. ¶ 13.)

21

22

23

24          [83] Mattel has come nowhere near showing that MGA acted "recklessly or in bad

25  faith" to justify its requests for sanction against MGA under 28 U.S.C. § 1927. *See In re*

26  *Integrated Circuit Sys., Inc. v. Realtek Semiconductor Co.*, No. C00-4035 MMC(BZ), 2002

  WL 532122, at *1 (N.D. Cal. Apr. 5, 2002) (sanctions under § 1927 "requires a finding that

27  a party acted recklessly or in bad faith") (citing *Pacific Harbor Capital, Inc. v. Carnival*

  *Airlines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000). Mattel's request for sanctions under

28  Rule 37(a)(4) is similarly unauthorized because Mattel failed to make "a good faith effort

  to obtain the disclosure or discovery without court action." Fed. R. Civ. P. 37(a)(4)(A).

EXHIBIT *12* PAGE *213*

37

1 | DATED: February *17*, 2005

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP

2

3 | By *Jon D. Corey Iara*
Jon D. Corey

4 | Attorneys for Plaintiff/Counter-Defendant
Mattel, Inc.

5

6 | DATED: February __, 2005

LITTLER MENDELSON, P.C.

7

8 | By
Keith A. Jacoby
Attorneys for Defendant and Counter-

9 | Claimant Carter Bryant

10 | DATED: February __, 2005

O'MELVENY & MYERS, LLP

11

12 | By
Paula Ambrosini
Attorneys for Defendant

13 | MGA Entertainment Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT *12* PAGE *214*

38

JOINT STIPULATION

Received:    2/17/05  2:30P!          310 553 5583 -> JetFax    20;  Page 2

FEB-17-2005 14:26 FROM:LITTLER MENDELSON    310 553 5583          TO:12136240643    P.2/2

1    DATED: February __, 2005          QUINN EMANUEL URQUHART
                                       OLIVER & HEDGES, LLP
2

3                                      By_____
                                       Jon D. Corey
4                                      Attorneys for Plaintiff/Counter-Defendant
                                       Mattel, Inc.
5

6    DATED: February 17, 2005          LITTLER MENDELSON, P.C.

7
                                       By_____
8                                      Keith A. Jacoby  Douglas A. Wickham
                                       Attorneys for Defendant and Counter-
9                                      Claimant Carter Bryant

10   DATED: February __, 2005          O'MELVENY & MYERS, LLP

11

12                                     By_____
                                       Paula Ambrosini
13                                     Attorneys for Defendant
                                       MGA Entertainment Inc.
14

15

16

17

18

19

20

21

22

23

24

25                                            Joint stipulation Re
26                                            Mattel's motion to
27                                            Compel Production of
28                                            Originals

                                       38
                                       EXHIBIT 12 PAGE 215    JOINT STIPULATION

1

DATED: February ___, 2005    QUINN EMANUEL URQUHART
                             OLIVER & HEDGES, LLP

2

3

4                                    By:_____
                                        Jon D. Corey

5                                       Attorneys for Plaintiff/Counter-Defendant
                                        Mattel, Inc.

6

7    DATED: February ___, 2005    LITTLER MENDELSON, P.C.

8

9                                    By:_____
                                        Keith A. Jacoby

10                                      Attorneys for Defendant and Counter-
                                        Claimant Carter Bryant

11

12   DATED: February /7ᵀᴴ, 2005    O'MELVENY & MYERS, LLP

13

14                                   By: _Paula E. Cross_____

15                                      Paula Ambrosini
                                        Attorneys for Defendant

16                                      MGA Entertainment Inc.*

17

18   *Signed with the caveat that because Mattel has refused to provide MGA with the
     declarations and exhibits referenced in Mattel's portion of this Joint Stipulation,

19   MGA's portion of the Joint Stipulation cannot and does not take into consideration
     or respond to any such material. MGA signs this Joint Stipulation, therefore,

20   reserving the right to respond to any material it has not yet been able to review or
     consider, and to move to strike such material as appropriate.

21

22

23

24

25

26

27

28

-38-

JOINT STIPULATION

EXHIBIT _12_ PAGE _2/6_

**EXHIBIT 13**

COPY

1  ROBERT F. MILLMAN, Bar No. CA 062152
   DOUGLAS A. WICKHAM, Bar No. CA 127268
2  KEITH A. JACOBY, Bar No. 150233
   LITTLER MENDELSON
3  A Professional Corporation
   2049 Century Park East, 5th Floor
4  Los Angeles, CA 90067.3107
   Telephone:   310.553.0308
5  Facsimile:   310.553.5583

6  Attorneys for Defendant and Counter-Claimant
   CARTER BRYANT
7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11 MATTEL, INC., a Delaware              Case No. CV 04-9059 NM (RNBx)
   Corporation,
12                                       **DECLARATION OF KEITH A.
                Plaintiff,               JACOBY IN SUPPORT OF
13                                       BRYANT'S PORTION OF JOINT
        v.                               STIPULATION RE MATTEL'S
14                                       INSPECTION OF BRYANT'S
   CARTER BRYANT, an individual;         ORIGINAL DOCUMENTS**
15 and DOES 1 through 10, inclusive,
16              Defendant.

17 ─────────────────────────────         Magistrate Judge: Hon. Robert N. Block
   CARTER BRYANT, on behalf of
18 himself, all present and former       Judge:          Hon. Nora M. Manella
   employees of Mattel, Inc., and the
19 general public,                       Hearing Date:       March 15, 2005
                                         Time:               9:30 a.m.
20              Counter-Claimant,        Place:              Room 450
21      v.
22 MATTEL, INC., a Delaware              Discovery Cut-Off:          TBD
   Corporation,                          Pre-Trial Conference:       TBD
23                                       Trial Date:                 TBD
                Cross-Defendant.
24

25

26

27

28                                       EXHIBIT _13_ PAGE _217_

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553 0308

2-18

## DECLARATION OF KEITH A. JACOBY

I, KEITH A. JACOBY, declare as follows:

1.	I am an attorney admitted to practice before all courts in the State of California, including this Court. I am a shareholder of the law firm of Littler Mendelson, a Professional Corporation, counsel of record for Defendant and Counter-Claimant Carter Bryant ("Bryant") in this matter. I have personal knowledge of the matters set forth herein and, if called as a witness, I could and would testify competently thereto.

2.	Bryant has never refused to produce the documents and things requested for inspection by Mattel. Rather, Bryant has been more than accommodating of Mattel's requests in all respects.

3.	Bryant made all three-dimensional tangible things he produced in this litigation available for inspection shortly after Mattel's request. On November 1, 2004, Mattel carried out this inspection. There are no tangible things remaining which Mattel has not inspected.

4.	Bryant also made the majority of originals of the documents he has produced available for inspection over the course of two full days, on December 22 and 23, 2004. Mattel conducted inspections of those documents on those days.

5.	Bryant has gone to extreme measures to accommodate Mattel's inspection requests. On November 3, 2004, after counsel defending Bryant's deposition, my partner Douglas Wickham, had already left Los Angeles for Missouri, Mattel made an eleventh-hour request, for the first time, that original documents be produced there. Bryant was forced to incur the significant expense of hand-delivering the irreplaceable documents to Missouri, on literally a few hours notice, and simply at Mattel's whim. Remarkably, although the parties had engaged in several months of negotiation and motion practice before the deposition took place – notably because of Mattel's own failure to produce documents – Mattel had never requested that original documents be available until the day of the start of the deposition. Original

1.

EXHIBIT _13_ PAGE _218_

1   documents be available until the day before of the start of the deposition.  Original

2   documents were made available for inspection at Bryant's deposition over the course

3   of two full days, and were used during the deposition.

4   6.          Much of Bryant's 1588-page document production consisted of royalty

5   statements and telephone records, which comprised about one-fifth of his total

6   production.  A large number of those records are redacted to protect confidential,

7   and/or proprietary information.    Permitting Mattel to inspect the originals of

8   documents that were produced in redacted form would obviously render futile

9   Bryant's right to safeguard this protected information.  Such an inspection would

10  compromise Bryant's rights to safeguard his own confidential information, as well as

11  his obligation to safeguard the confidential information of others, found within those

12  documents.

13  7.          In the spirit of cooperation, Bryant invited Mattel to meet and confer to

14  determine a way for such an inspection to be conducted without impinging on

15  Bryant's rights and those of third parties, but Mattel failed to respond.

16  8.          Mattel has misused its right to inspect documents to gain an improper

17  advantage in the litigation, by forcing Bryant to expend undue time and expense in

18  accommodating unnecessarily lengthy document inspections.    On the three days

19  during which its attorneys inspected original documents at the offices of Bryant's

20  counsel, Mattel "inspected" an average of just over one hundred pages per day, for a

21  total of about three hundred and fifty (350) pages.  Each of the inspections was

22  concluded by Mattel's counsel at or near the close of business, and not due to a lack of

23  documents to inspect.  This delay was due to the fact that Mattel brought at least one

24  attorney, a videographer and a still photographer to each inspection.

25  9.          Mattel's approach to carrying out its inspections is a deliberate part of its

26  broader scorched-earth strategy to outspend Bryant, and to bury him under so much

27  paper that he can no longer effectively defend himself against Mattel's allegations.

28  10.          To date, Bryant has spent in excess of 50 hours in paralegal and attorney

2.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles CA  90067 3107
310.553.0308

EXHIBIT 13 PAGE 219

1    hours attempting to accommodate Mattel's request for inspections of originals.

2    11.        There is no evidence that Bryant has conducted or intends to conduct any

3    destructive testing of the original documents at issue, because no such testing has

4    occurred or will take place.   Bryant has every interest in preserving all the

5    documentary evidence in his possession, given that it refutes Mattel's claims *and*

6    supports his counter-claims.

7    12.        Bryant has also requested that Mattel produce its original documents for

8    his inspection, but predictably, Mattel has completely stonewalled in response to

9    Bryant's request.   Bryant sought such inspection by written correspondence on

10   January 13, 2005.   Attached hereto as Exhibit "A" is a true and correct copy of an

11   email from me to Jon Corey, dated January 13, 2005 requesting an inspection of

12   Mattel's documents.   The parties then met and conferred regarding this issue on

13   January 14, 2005, at which point Mr. Corey stated he was "unable to commit with

14   respect to the inspection on behalf of Mattel."   A true and correct copy of the

15   transcript of that meet and confer is attached hereto as Exhibit "B."

16   13.        Despite Bryant's requests, Mattel has not yet agreed, even in principle,

17   to permit him to inspect a single original document Mattel has produced.

18       I declare under penalty of perjury under the laws of the United States of

19   America and the State of California that the foregoing is true and correct.

20       Executed this 18h day of February 2005, at Los Angeles, California.

21

22

23   Los_Angeles:393602.2 028307.1010                      KEITH A. JACOBY

24

25

26

27

28

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

3.

EXHIBIT *13* PAGE *2 20*

EXHIBIT A

EXHIBIT _13_ PAGE _221_

**Jacoby, Keith**

| | |
|---|---|
| **From:** | Jacoby, Keith |
| **Sent:** | Thursday, January 13, 2005 4:29 PM |
| **To:** | 'Jon Corey' |
| **Cc:** | 'Ambrosini, Paula' |
| **Subject:** | Mattel v. Bryant |

Jon:

As I indicated in our phone call, there are several discovery issues that have been the subject of multiple conversations and letters, but which have not been brought to a resolution.  They include:

1. Mr. Bryant's desire to depose Matt Bousquette and Sergio Hernandez (I believe my previous correspondence on this issue erroneously referenced Sandeep Reddy, whose deposition notice Mr. Bryant has withdrawn, without prejudice to re-noticing it at a later time);

2. Mr. Bryant's desire to conduct the deposition of Mattel, Inc., as set out in the December 21, 2004 Rule 30(b)(6) Notice of Deposition, and Mattel's failure to appear at that deposition or otherwise object;

3. Mr. Bryant's desire to file a joint stipulation moving to compel documents sought in his first request for production of documents (federal court);

4. Mr. Bryant's alternative proposal to treat state court discovery as federal discovery for purposes of moving to compel further responses;

5. Mattel's desire to physically inspect further original Bryant documents produced in this matter;

6. Mr. Bryant's desire to physically inspect Mattel documents and things produced in this matter;

7. Mr. Bryant's request for a meet and confer regarding the objections asserted at the depositions of Anne Driskill and Allan Kaye;

8. The date Cassidy Park is available to be deposed, which has been requested but not revealed; and

9. The need/appropriateness for enlarging the number of depositions that all parties are allowed to take (beyond the ten deposition limit provided for in the Federal Rules).

I propose we discuss all of these issues on Friday at 10:00 a.m.  I am willing to come to your office.

I would also like to meet and confer pursuant to Local Rule 37 on the appointment of a discovery special master in this case in advance of Mr. Bryant filing a motion requesting such an appointment.  In Mr. Bryant's view, Mattel's witnesses are not being permitted to respond to legitimate deposition questions, through the imposition of improper objections and instructions not to answer, and through extended, and sometimes abusive colloquy. Mr. Bryant proposes that the parties stipulate to the appointment of a discovery special master by Magistrate Judge Block.  That special master would attend depositions at the request of any party, rule on the propriety of instructions not to answer questions, police of inappropriate coaching of witnesses and interruption of the flow of questions with lawyer colloquy, and would hear and decide motions relating to written discovery in this case.

Defendants would be willing to split the cost of the discovery special master with Plaintiff, so long as the special master has the authority to award costs and attorneys' fees in event he or she finds one party's conduct is

1

EXHIBIT *13* PAGE *222*

sanctionable.  If we cannot agree o.. an appointment, Mr. Bryant will move u.e Court for an appointment.

I will call you shortly to discuss this proposed agenda. I would welcome  Mr. Zeller's participation.  I anticipate Paula Ambrosini from O'Melveny and Myers will attend to represent MGA's interest in these discussions.

*Keith A. Jacoby, Esq.*
*Littler Mendelson, P.C.*
*2049 Century Park East*
*Fifth Floor*
*Los Angeles, California 90067*
*ph. (310) 553-0308*
*direct (310) 772-7284*
*fax (310) 553-5583*
*kjacoby@littler.com*

2

EXHIBIT _13_ PAGE _223_

**EXHIBIT B**

EXHIBIT *13* PAGE *224*

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., A DELAWARE
CORPORATION,

             PLAINTIFF,

            VS.

CARTER BRYANT, AN INDIVIDUAL; AND
AND COES 1 THROUGH 10, INCLUSIVE,

            DEFENDANTS.

_____

CARTER BRYANT, ON BEHALF OF
HIMSELF, ALL PRESENT AND FORMER
EMPLOYEES OF MATTEL, INC., AND THE
GENERAL PUBLIC,

            COUNTER-COMPLAINANT,

            VS.

MATTEL, INC., A DELAWARE
CORPORATION,

            COUNTER-DEFENDANT.

_____

NO. CV-04 9059 (NM)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

FRIDAY, JANUARY 14, 2005

LOS ANGELES, CALIFORNIA

REPORTED BY:

JOHN M. TAXTER
C.S.R. NO. 3579, R.P.R.

JOB NUMBER:
40372LMF

**LUDWIG KLEIN**
REPORTERS & VIDEO, LLC
10868 KLING STREET
TOLUCA LAKE, CALIFORNIA 91602
800.540.0681    Fax 818.508.6326
e-mail: lois@ludwigklein.com

EXHIBIT *13* PAGE *225*

*6*

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1                  UNITED STATES DISTRICT COURT

2                CENTRAL DISTRICT OF CALIFORNIA

3

4   MATTEL, INC., A DELAWARE              )
    CORPORATION,                          )
5                                         )
                   PLAINTIFF,             )
6                                         )
          VS.                             )   NO. CV-04 9059 (NM)
7                                         )
    CARTER BRYANT, AN INDIVIDUAL; AND     )
8   AND COES 1 THROUGH 10, INCLUSIVE,     )
                                          )
9                  DEFENDANTS.            )
    _____)
10                                        )
    CARTER BRYANT, ON BEHALF OF           )
11  HIMSELF, ALL PRESENT AND FORMER       )
    EMPLOYEES OF MATTEL, INC., AND THE    )
12  GENERAL PUBLIC,                       )
                                          )
13                 COUNTER-COMPLAINANT,   )
                                          )
14        VS.                             )
                                          )
15  MATTEL, INC., A DELAWARE              )
    CORPORATION,                          )
16                                        )
                   COUNTER-DEFENDANT.     )
17  _____)

18

19

20          REPORTER'S TRANSCRIPT OF PROCEEDINGS, TAKEN AT

21      10:23 A.M., FRIDAY, JANUARY 14, 2005, AT 865 SOUTH

22      FIGUEROA STREET, TENTH FLOOR, LOS ANGELES,

23      CALIFORNIA, BEFORE JOHN M. TAXTER, C.S.R. NO. 3579,

24      R.P.R., A CERTIFIED SHORTHAND REPORTER IN AND FOR

25      THE STATE OF CALIFORNIA.

2

EXHIBIT 13 PAGE 226   7

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   APPEARANCES:

2       FOR PLAINTIFF AND COUNTER-DEFENDANT MATTEL, INC.:

3           QUINN EMANUEL URQUHART OLIVER & HEDGES,
            L.L.P.
4           BY:  JON D. COREY
                 ATTORNEY AT LAW
5           865 SOUTH FIGUEROA STREET
            TENTH FLOOR
6           LOS ANGELES, CALIFORNIA  90017
            213.443.3180

7

8       FOR DEFENDANT CARTER BRYANT:

9
            LITTLER MENDELSON
10          BY:  KEITH JACOBY
                 ATTORNEY AT LAW
11          2049 CENTURY PARK EAST
            FIFTH FLOOR
12          LOS ANGELES, CALIFORNIA  90067-2709
            310.553.0308

13

14      FOR INTERVENOR M.G.A. ENTERTAINMENT, INC.:

15
            O'MELVENY & MYERS, L.L.P.
16          BY:  PAULA AMBROSINI
                 ATTORNEY AT LAW
17          400 SOUTH HOPE STREET
            LOS ANGELES, CALIFORNIA  90071-2899
18          213.430.6000

19

20

21

22

23

24

25

3

EXHIBIT 13 PAGE 227

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1              LOS ANGELES, CALIFORNIA

2              FRIDAY, JANUARY 14, 2005

3                   10:23 A.M.

4

5              MR. JACOBY:  THIS IS IN THE CASE OF MATTEL,

6    INC., V. CARTER BRYANT, U.S. DISTRICT COURT, CENTRAL

7    DISTRICT OF CALIFORNIA, CV-04 9059 (NM)(RNBX).  THIS

8    IS -- TODAY IS JANUARY 14TH.  THIS IS A MEET AND CONFER

9    THAT WAS INITIATED AT THE BEHEST OF CARTER BRYANT'S

10   COUNSEL.  MY NAME IS KEITH JACOBY.  I REPRESENT CARTER

11   BRYANT.

12             MR. COREY:  I'M JON COREY.  I'M HERE

13   REPRESENTING MATTEL.

14             MS. AMBROSINI:  I'M PAULA AMBROSINI

15   REPRESENTING M.G.A. ENTERTAINMENT, INC.

16             MR. JACOBY:  MY UNDERSTANDING OF THE PURPOSE

17   OF RECORDING THIS IS SO THAT EACH SIDE WILL HAVE THE

18   OPPORTUNITY AT THE CONCLUSION OF THE DISCUSSION OF THE

19   SUBJECT MATTER TO STATE THEIR POSITION AS A MATTER OF

20   RECORD SO THAT THERE'S NO CONFUSION ABOUT THE RESPECTIVE

21   POSITIONS IN THE EVENT A DISCOVERY MOTION IS BROUGHT.

22             THE FIRST SUBJECT THAT I'VE RAISED IS WHY

23   MR. BRYANT BELIEVES THAT MATT BOUSQUETTE -- THAT IT IS

24   ENTITLED TO DEPOSE MATT BOUSQUETTE.  HE'S BEEN NOTICED

25   FOR DEPOSITION.  MATTEL HAS OBJECTED.

4

EXHIBIT _13_ PAGE _228_

9

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1          WHY DON'T -- MR. COREY, YOU CAN ARTICULATE

2     YOUR POSITION ON THIS.  MY UNDERSTANDING IS THAT MR. --

3          MR. COREY:  I'LL ARTICULATE MY OWN POSITION.

4          MR. JACOBY:  OKAY.

5          MR. COREY:  MATTEL HAS OBJECTED ON THE GROUNDS

6     THAT MR. BOUSQUETTE IS A VERY SENIOR EXECUTIVE AT

7     MATTEL, AND IT IS MATTEL'S BELIEF THAT THE LAW REQUIRES

8     A SHOWING BEFORE MR. BOUSQUETTE BE DEPOSED THAT HE HAS

9     INFORMATION SUFFICIENTLY UNIQUE THAT JUSTIFIES

10    INTERFERENCE WITH THE REGULAR OPERATION OF THE COMPANY.

11         MR. JACOBY HAS ARTICULATED THREE POTENTIAL

12    GROUNDS ON WHICH HE BELIEVES THAT -- WHICH HE BELIEVES

13    SHOW MR. BOUSQUETTE'S UNIQUE INFORMATION.  THE FIRST

14    RELATES TO DAMAGES, THE SECOND RELATES TO AN

15    INVESTIGATION THAT MAY HAVE BEEN CONDUCTED REGARDING

16    CARTER BRYANT, AND THE THIRD RELATES TO A REFERENCE TO

17    MR. BOUSQUETTE IN THE WALL STREET JOURNAL ARTICLE THAT

18    HAS BEEN SUBJECT TO PRIOR DEPOSITION TESTIMONY BY OTHERS

19    IN THIS CASE.

20         IT IS MATTEL'S POSITION THAT AN INSUFFICIENT

21    SHOWING HAS BEEN MADE THAT ANY OF THESE PARTICULAR

22    TOPICS ARE SUFFICIENTLY UNIQUE TO MR. BOUSQUETTE THAT

23    INTERFERING WITH HIS SCHEDULE IS JUSTIFIED AND HIS

24    DEPOSITION MAY BE NECESSARY.

25         MR. JACOBY, IF YOU WOULD LIKE TO, ARTICULATE

5

EXHIBIT 13 PAGE 229 10

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    YOUR POSITION --

2            MR. JACOBY:  YES.

3            MR. COREY:  -- AND THEN I'LL FOLLOW THROUGH

4    WITH THE COMMITMENTS I HAVE MADE WITH RESPECT TO THE

5    THINGS THAT YOU HAVE RAISED.

6            MR. JACOBY:  OKAY.  MR. BRYANT'S POSITION IS

7    THAT INITIALLY, WHEN THIS CASE WAS REMOVED TO FEDERAL

8    COURT, MATTEL HAS AN AFFIRMATIVE OBLIGATION TO IDENTIFY

9    WITNESSES WHO SUPPORT THEIR CLAIMS, INCLUDING CLAIMS FOR

10   DAMAGES.  IT'S MR. BRYANT'S UNDERSTANDING THROUGH

11   CORRESPONDENCE, JOINT STIPULATIONS, AND THE COMPLAINT

12   ITSELF THAT MATTEL IS POTENTIALLY SEEKING, IN ADDITION

13   TO MONEYS EARNED BY MR. BRYANT OR M.G.A., LOST PROFITS

14   AS A RESULT OF MR. BRYANT'S ACTS AND OMISSIONS.

15           MATTEL HAS BEEN ABLE TO AS -- STRIKE THAT.

16   MR. BRYANT HAS BEEN ABLE TO ASCERTAIN THROUGH PUBLICLY

17   AVAILABLE SOURCES THAT, AS THE PRESIDENT OF MATTEL

18   BRANDS, MR. BOUSQUETTE WOULD HAVE INFORMATION ABOUT THAT

19   SUBJECT.  HE WAS NOT DISCLOSED ON -- IN MATTEL'S INITIAL

20   DISCLOSURES, AND MR. BRYANT HASN'T BEEN ABLE TO

21   ASCERTAIN FROM MATTEL'S INITIAL DISCLOSURES ANY WITNESS

22   WHO WOULD, IN LIEU OF MR. BOUSQUETTE, BE ABLE TO TESTIFY

23   ON MATTEL'S LOST PROFITS.

24           MR. BRYANT THEN PROPOUNDED AN INTERROGATORY

25   REQUESTING -- THAT'S INTERROGATORY NO. 6 IN ITS FIRST

6

EXHIBIT 13 PAGE 230

11

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   SET OF INTERROGATORIES, ASKING MATTEL TO DISCLOSE ALL

2   FACTS THAT SUPPORT ITS CLAIM OF DAMAGES.  NO WITNESSES

3   WERE DISCLOSED WITH RESPECT TO THAT INTERROGATORY.

4   MR. BRYANT HAS THEN PROPOUNDED MULTIPLE DEPOSITIONS OF

5   MATTEL, INC.  THE MOST RECENT ONE PROPOUNDED ON DECEMBER

6   21ST INCLUDES A CATEGORY 14 WHICH ASKS FOR A WITNESS TO

7   TESTIFY ABOUT ALL ACTS, OMISSIONS, CIRCUMSTANCES, OR

8   EVIDENCE SHOWING OR TENDING TO SHOW THAT MATTEL HAS BEEN

9   DAMAGED OR SUFFERED ANY FINANCIAL LOSS -- ANY FINANCIAL

10   OR OTHER LOSS BY ANY ACT OR OMISSION OF MR. BRYANT.

11        MATTEL NEITHER OBJECTED NOR PRODUCED A WITNESS

12   ON THE DATE NOTICED.  THERE HAVE BEEN EXTENSIVE

13   DISCUSSIONS BETWEEN MR. BRYANT AND "MR." MATTEL -- AND

14   MATTEL ABOUT PREVIOUS DEPOSITION NOTICES OF MATTEL, AND

15   MATTEL HAS NEVER DISCLOSED THE IDENTITY OF A DAMAGES'

16   WITNESS.  RATHER, THEY ARE SIMPLY -- IN MR. BRYANT'S

17   VIEW, THEY HAVE DECLINED TO IDENTIFY SUCH A WITNESS

18   UNTIL MR. BRYANT MAKES A FULL DISCLOSURE OF HIS

19   ROYALTIES WHICH MR. BRYANT THINKS IS IRRELEVANT TO THE

20   ISSUE OF WHETHER THERE ARE ANY LOST PROFITS ON THE

21   MATTEL SIDE AS A RESULT OF ANY ACT OR OMISSION OF

22   MR. BRYANT.

23        SO, IN MR. BRYANT'S VIEW, MR. BRYANT IS UNABLE

24   TO IDENTIFY A WITNESS BELOW MR. BOUSQUETTE ON THE

25   ORGANIZATIONAL PURVIEW WHO COULD TESTIFY ABOUT SUBJECTS

7

EXHIBIT 13 PAGE 231

12

LUDWIG KLEIN REPORTERS & VIDEO, INC.    800.540.0681

1    THAT PUBLICLY AVAILABLE DOCUMENTS SUGGEST HE COULD

2    TESTIFY ON WITH RESPECT TO THE LOSS.   IN OTHER WORDS,

3    MATTEL IS USING ITS OWN REFUSAL TO PRODUCE DISCOVERY AS

4    A MEANS OF WITHHOLDING MR. BOUSQUETTE, AND, GIVEN THAT,

5    WE DON'T THINK THAT THE -- GIVEN THAT, WE HAVE NO CHOICE

6    BUT TO NOTICE THE DEPOSITION OF THE ONLY PERSON WE'RE

7    AWARE OF WHO HAS KNOWLEDGE OF THE SUBJECT.

8            WITH RESPECT TO THE WALL STREET JOURNAL,

9    MR. BOUSQUETTE IS REFERENCED IN IT.   IT WAS PRODUCED BY

10   MATTEL, AND IT'S BEEN THE SUBJECT OF EACH DEPOSITION

11   THAT'S BEEN TAKEN IN THIS CASE.   AND MR. BOUSQUETTE MAY

12   HAVE KNOWLEDGE OF THE UNNAMED MATTEL SOURCES WHO ARE

13   QUOTED IN THE ARTICLE.   THE ONLY WAY TO ASCERTAIN THAT

14   IS TO DEPOSE MR. BOUSQUETTE.   HE'S NEVER SUBMITTED --

15   HE'S NEVER SUBMITTED A DECLARATION, OR MATTEL HAS NEVER

16   PRODUCED ANY INFORMATION THAT WOULD SUGGEST HE DIDN'T

17   KNOW IT.

18            FURTHER, THERE'S BEEN EXTENSIVE DISCOVERY ON

19   THE 2002 INVESTIGATION OF MR. BRYANT, AND IT MAY BE THAT

20   MR. BOUSQUETTE WAS INTERVIEWED AS A RESULT OF THAT

21   INVESTIGATION OR IN THE COURSE OF THAT INVESTIGATION.

22   THE PEOPLE WHO HAVE BEEN DEPOSED TO DATE WERE UNAWARE OF

23   THE IDENTITY OF ALL THE PEOPLE WHO HAVE BEEN DISCLOSED,

24   AND, CLEARLY, IF MR. BOUSQUETTE WAS INTERVIEWED IN THE

25   COURSE OF THAT INVESTIGATION, MR. BRYANT WOULD BE

8

EXHIBIT 13 PAGE 232

13

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    ENTITLED TO THAT INFORMATION IN THE ABSENCE OF A

2    PRIVILEGE OBJECTION.

3            AND SO THESE ARE THE REASONS THAT WE BELIEVE

4    MR. BOUSQUETTE CAN BE DEPOSED.  WE WOULD BE WILLING TO

5    ENTERTAIN ANY SUGGESTIONS BY MATTEL ABOUT HOW TO LIMIT

6    THE BURDENSOMENESS OF THIS DEPOSITION.  NO SUGGESTIONS

7    HAVE BEEN MADE TO DATE.

8            MR. COREY:  WELL, OKAY.  THAT'S A FALSE

9    STATEMENT.  ALL OF THE INFORMATION THAT BRYANT SEEKS

10   WITH RESPECT TO MR. BOUSQUETTE, PARTICULARLY

11   INVOLVEMENT, IF ANY, WITH THE INVESTIGATION OR HIS

12   KNOWLEDGE ABOUT PEOPLE IDENTIFIED IN THE WALL STREET

13   JOURNAL ARTICLE CAN EASILY BE OBTAINED BY PROPOUNDING AN

14   INTERROGATORY WHICH WILL IMPOSE AT MOST A NOMINAL BURDEN

15   ON MR. BOUSQUETTE AND WILL ALLOW -- WILL ALLOW BRYANT TO

16   GET THE INFORMATION HE APPARENTLY SEEKS.

17           WITH RESPECT TO THE DAMAGES -- WITH RESPECT TO

18   THE DAMAGES ISSUE, THERE'S BEEN NO SHOWING THAT MATT

19   BOUSQUETTE HAS SUFFICIENTLY UNIQUE KNOWLEDGE THAT

20   JUSTIFIES HIS DEPOSITION AT THIS TIME.  MATTEL HAS, IN

21   FACT, MOVED TO COMPEL WITH RESPECT TO THE INCOME WITH

22   RESPECT -- THE INCOME THAT BRYANT HAS EARNED FROM

23   M.G.A., AND THOSE DOCUMENTS HAVE BEEN EITHER WITHHELD OR

24   COMPLETELY REDACTED, RENDERING ANY INQUIRY INTO MATTEL'S

25   DAMAGES THEORY AT THIS POINT PREMATURE.

9

EXHIBIT _13_ PAGE _253_

_14_

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1          MS. AMBROSINI:   COULD YOU PLEASE ARTICULATE

2   FOR ME WHY YOU BELIEVE MR. BRYANT'S ROYALTIES ARE AT ALL

3   RELEVANT TO THE DAMAGE ISSUES THAT MR. JACOBY HAS RAISED

4   REGARDING MATTEL'S OWN LOST PROFITS?

5          MR. JACOBY:   IN OTHER WORDS, I DON'T THINK WE

6   UNDERSTAND --

7          MS. AMBROSINI:   WHERE IS THE NEXUS?   WE'RE

8   TRYING TO FIGURE OUT --

9          MR. JACOBY:   OTHER THAN TIT FOR TAT, I DON'T

10  THINK I UNDERSTAND WHAT THE LINK IS BETWEEN BRYANT

11  REDACTING HIS ROYALTIES STATEMENTS AND MATTEL NOT

12  PRODUCING A WITNESS ON LOST PROFITS.   I MEAN

13  MR. BRYANT -- NO MATTER HOW MUCH IN ROYALTIES MR. BRYANT

14  EARNED, THAT HAS NOTHING TO DO WITH MATTEL'S LOST

15  PROFITS.   IT'S A COMPLETELY SEPARATE COMPONENT OF

16  DAMAGES.

17          MR. COREY:   I DID NOT COME HERE TODAY PREPARED

18  TO TALK ABOUT WHAT DAMAGES THEORY MATTEL IS AND IS NOT

19  GOING TO ASSERT.   THAT WAS NOT PART OF THE E-MAIL THAT I

20  RECEIVED AT 4:37 LAST NIGHT LISTING EIGHT MORE TOPICS

21  THAT WE ANTICIPATED DISCUSSING THAT HADN'T PREVIOUSLY

22  BEEN DISCUSSED AT ALL.

23          MR. JACOBY:   IF YOU WANT TO DISCUSS IT, THAT'S

24  FINE.   I'M JUST TRYING TO GET THE RECORD CLEAR.   I THINK

25  IT IS PART OF WHAT WE HAVE BEEN DISCUSSING, BUT, IF YOU

10

EXHIBIT 13 PAGE 234

15

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   HAVE NOTHING FURTHER TO SAY ON IT, THAT'S OKAY.

2        MR. COREY:  NOT WHEN YOU ARTICULATE FOR THE

3   FIRST TIME TODAY THAT YOU WANT DAMAGES INFORMATION FROM

4   MATT BOUSQUETTE.  I MEAN THIS IS THE WHOLE PURPOSE OF --

5   AS I SAID BEFORE, THIS IS THE WHOLE PURPOSE OF RULE 37.

6   YOU'RE SUPPOSED TO TELL ME WHY, ARTICULATING WHAT YOU

7   WANT AND THE AUTHORITY FOR IT.  THEN WE HAVE THIS

8   DISCUSSION, AND THINGS CAN MOVE ALONG FAR MORE QUICKLY

9   THAN THEY HAVE TO DATE.

10        MR. JACOBY:  I DON'T THINK UNDER RULE 37, JUST

11   FOR THE RECORD -- AND I KNOW YOU DIDN'T WANT TO RECORD

12   THE COLLOQUY, SO I'M WILLING TO GO OFF, IF YOU LIKE.

13   BUT, WHEN I NOTICE A PERSON'S DEPOSITION BY NAME AND YOU

14   OBJECT TO IT, I'M NOT OBLIGATED TO GIVE YOU MY

15   DEPOSITION OUTLINE IN ORDER TO JUSTIFY THE DEPOSITION.

16        MR. COREY:  THAT'S NOT WHAT I SAID.  WHEN YOU

17   NOTICE THE PRESIDENT OF THE COMPANY AND I OBJECT BECAUSE

18   HE'S THE PRESIDENT OF THE COMPANY, THEN DO YOU HAVE AN

19   OBLIGATION TO COME BACK AND SAY, THIS IS WHAT KNOWLEDGE

20   HE HAS THAT'S UNIQUE THAT JUSTIFIES OUR INTERFERING WITH

21   HIS SCHEDULE.  THAT'S WHAT RULE 37 REQUIRES.

22        MR. JACOBY:  AND, JUST SO YOU KNOW, IT'S NOT

23   LIKE -- I MEAN YOU NOTICED THE PRESIDENT OF M.G.A., TOO,

24   SO IT'S NOT LIKE WE'RE THE ONLY ONE WHO HAS NOTICED THE

25   DEPOSITION OF A COMPANY.

11

EXHIBIT _13_ PAGE _235_

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1          MR. COREY:  NO.  AND THE INVOLVEMENT OF THE

2     RESPECTIVE PRESIDENTS OF THESE COMPANIES IN THIS

3     PARTICULAR CASE ARE VERY UNIQUE.  YOU KNOW THAT AS WELL

4     AS I DO.

5          MR. JACOBY:  I WOULD LIKE TO.  IF THAT WERE

6     TRUE, THEN IT WOULD BE A VERY SHORT BOUSQUETTE

7     DEPOSITION.  BUT, IN ANY EVENT, JUST FOR THE RECORD, I

8     CONCEDE I HAVEN'T RAISED THIS BEFORE, BUT I'M WILLING TO

9     ENTERTAIN ANY REASONABLE LIMITATION ON MR. BOUSQUETTE'S

10    DEPOSITION THAT YOU WOULD -- THAT WOULD ACCOMMODATE YOUR

11    CONCERNS ABOUT BURDEN.  I DID THAT FOR MR. KAYE.

12          MR. COREY:  ARE YOU TALKING ABOUT TOPICALLY?

13          MR. JACOBY:  WELL, I'M WILLING TO CONSIDER

14    ANYTHING YOU PROPOSE.  IF YOU WANTED TO PROPOSE TOPICS

15    LIMITATION, I WOULD CONSIDER THAT.  IF YOU WANTED TO

16    PROPOSE DOING THE DEPOSITION NEAR MATTEL WHICH I DID FOR

17    MR. KAYE, I WOULD CONSIDER THAT.  IF YOU WANTED TO

18    PROPOSE -- IF YOU WANTED TO PROPOSE A TIME LIMITATION, I

19    WOULD CONSIDER THAT.  IF YOU WANTED TO SUBMIT

20    A DECLARATION TO LIMIT THE TOPICS -- IN OTHER WORDS, "I

21    HAVE NO IDEA WHO THE WALL STREET JOURNAL ARTICLE'S

22    UNNAMED SOURCES ARE" -- I WOULD CONSIDER THAT AS A BASIS

23    TO LIMIT THE TOPICS.  I'M WILLING TO CONSIDER IN GOOD

24    FAITH ANY LIMITATION YOU WOULD PROPOSE.  YOU DON'T HAVE

25    TO PROPOSE IT NOW.  I KNOW YOU MAY NOT HAVE THOUGHT

12

EXHIBIT _13_ PAGE _236_

17

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    ABOUT IT.  BUT I THINK AS PART OF THE PROCESS THAT

2    WOULD -- I WOULD REQUEST THAT.

3           MR. COREY:  SURE.  AND I'M MORE THAN HAPPY TO

4    TALK TO MR. BOUSQUETTE ABOUT THAT.

5           MR. JACOBY:  OKAY.  DO YOU HAVE ANYTHING

6    FURTHER ON THIS?

7           MS. AMBROSINI:  SO I WANT TO UNDERSTAND

8    EXACTLY WHERE WE'RE LEAVING OFF.

9           ARE WE TABLING THE DISCUSSION UNTIL JON COREY

10   GOES BACK AND DOES AS HE SUGGESTED WHICH WAS TO LOOK AT

11   THE RULE 26 DISCLOSURES, LOOK AT MATTEL'S RESPONSES TO

12   INTERROGATORIES, LOOK AT MATTEL'S POSITION ON THE

13   P.M.K. NO. 14, AND THEN GET BACK TO US, OR ARE WE AT

14   A STANDOFF AND WE'RE GOING TO TAKE WHATEVER ACTION WE

15   NEED TO TAKE FROM HERE?

16          MR. COREY:  NO.  THIS IS WHERE I AM, AND YOU

17   TELL ME IF YOU DISAGREE WITH THIS.

18          I WILL GO BACK, AND I'LL LOOK AT THE RESPONSE

19   TO INTERROGATORY NO. 6, AND I WILL LOOK AT -- I WILL GO

20   BACK AND LOOK AT THE INITIAL DISCLOSURES.  WITH RESPECT

21   TO THE DEPOSITIONS OF THE PERSON MOST KNOWLEDGEABLE

22   30(B)(6) WITNESSES, THOSE HAVE BEEN A TOPIC OF

23   DISCUSSION FOR FAR LONGER THAN I HAVE BEEN INVOLVED IN

24   THIS CASE.  AND I'M MORE THAN HAPPY TO GO BACK AND TALK

25   TO MS. KREBS AND MR. ZELLER ABOUT THAT, BUT THAT ISSUE,

13

EXHIBIT _13_ PAGE __237__

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    I BELIEVE, HAS BEEN SUFFICIENTLY TALKED ABOUT THAT I

2    DON'T NEED -- I DON'T BELIEVE WE NEED TO TALK ABOUT IT

3    ANYMORE.  IF I RECALL CORRECTLY, THERE'S ACTUALLY

4    A MOTION PENDING OR WAS A MOTION PENDING IN THE STATE

5    COURT ON AT LEAST ONE OF THOSE BEFORE THE CASE WAS

6    REMOVED.

7              MR. JACOBY:  NOT THE BIG P.M.K.

8              MR. COREY:  I CAN'T RECALL WHICH ONE.

9              MR. JACOBY:  IT WAS ON THE LITTLE P.M.K.

10             MS. AMBROSINI:  OKAY.  SO --

11             MR. JACOBY:  OKAY.  SO --

12             MR. COREY:  BUT I'M MORE THAN HAPPY -- I'M

13   MORE THAN HAPPY TO TALK TO THEM ABOUT WHAT PRIOR

14   POSITIONS HAVE BEEN TAKEN WITH RESPECT TO PERSON MOST

15   KNOWLEDGEABLE WITH RESPECT TO TOPIC NO. 14.

16             WHAT DO YOU CALL IT?  THE BIG --

17             MR. JACOBY:  THE BIG P.M.K., THE MORE GENERAL

18   P.M.K.

19             MS. AMBROSINI:  OKAY.  SO YOU'RE NOT --

20             MR. COREY:  OKAY.

21             MR. JACOBY:  I MEAN RIGHT NOW THE ONLY

22   OPERATIVE P.M.K. IS THE DECEMBER 21ST P.M.K. NOTICE THAT

23   WAS PERSONALLY SERVED ON THIS OFFICE WHICH WAS NEITHER

24   OBJECTED TO NOR COMPLIED WITH.  I UNDERSTAND IT'S

25   BASICALLY DUPLICATIVE OF PRIOR ONES. BUT THAT'S THE ONLY

14

EXHIBIT 13 PAGE 238

19

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    P.M.K. THAT'S ON THE TABLE RIGHT NOW.

2           MR. COREY:  IT'S IDENTICAL.

3           MS. AMBROSINI:  FOR THIS DISCUSSION, ALTHOUGH

4    THERE IS ANOTHER P.M.K. NOTICED, I BELIEVE.

5           MR. JACOBY:  THERE IS ONE NOTICED ON THE 20TH.

6           MS. AMBROSINI:  OKAY.  SO YOU ARE NOT SAYING

7    THAT WE'RE AT A STANDOFF ON THE P.M.K. ISSUE ON NO. 14.

8           YOU'RE GOING TO GO BACK AND HAVE FURTHER

9    DISCUSSIONS WITH MR. ZELLER; IS THAT CORRECT?

10          MR. COREY:  YES.  I'LL GO BACK TO HIM AND FIND

11   OUT WHAT HAS HAPPENED IN THE PRIOR MEETINGS AND PRIOR

12   TELEPHONE DISCUSSIONS ABOUT THAT.

13          MR. JACOBY:  YOU'LL ALSO TALK TO

14   MR. BOUSQUETTE ABOUT POSSIBLE LIMITATIONS ON HIS

15   TESTIMONY AND WHETHER THAT WOULD CHANGE HIS VIEW.

16          SO COULD WE AGREE BY NEXT WEDNESDAY YOU COULD

17   GET BACK TO US ON THESE SUBJECTS?

18          MR. COREY:  HOW ABOUT FRIDAY?  WE HAVE A SHORT

19   WEEK NEXT WEEK, AND IT'S NOT --

20          MR. JACOBY:  FAIR ENOUGH.  NEXT FRIDAY.  OKAY.

21          DO YOU HAVE ANYTHING TO ADD ABOUT MATT

22   BOUSQUETTE?

23          MS. AMBROSINI:  NO.

24          MR. JACOBY:  WHY DON'T WE GO TO --

25          MS. AMBROSINI:  WE CAN PROBABLY GO OFF THE

                                                    15

EXHIBIT 13 PAGE 239

20

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    RECORD.

2              MR. JACOBY:  GO OFF THE RECORD.

3              (RECESS.)

4              MR. JACOBY:  WITH RESPECT TO THE DEPOSITION OF

5    CASSIDY PARK, MR. ZELLER -- I HAVE HAD PREVIOUSLY

6    DISCUSSIONS WITH MR. ZELLER THAT MS. PARK WOULD BE

7    PRODUCED ON A DATE WHERE SHE WAS AVAILABLE.  MY

8    UNDERSTANDING OF OUR AGREEMENT IS THAT MR. COREY HAS

9    AGREED BY NEXT FRIDAY WHICH IS JANUARY 24TH --

10             MS. AMBROSINI:  NO.

11             MR. COREY:  NO, IT'S NOT THE 24TH.  I THINK

12   IT'S THE 21ST.

13             MS. AMBROSINI:  I THINK IT'S THE 21ST.

14             MR. JACOBY:  -- 21ST MR. COREY WILL GIVE ME

15   A DATE CERTAIN FOR MS. PARK'S DEPOSITION.

16             CAN WE AGREE IT WILL BE IN FEBRUARY SO THAT IT

17   WILL BE NO LATER THAN FEBRUARY 1 -- NO EARLIER THAN

18   FEBRUARY 1?

19             MR. COREY:  I MEAN I'LL AGREE THAT THAT'S

20   A GOAL.  BUT WITHOUT KNOWING WHAT HER SCHEDULE IS, I

21   CAN'T --

22             MR. JACOBY:  OKAY.  I UNDERSTAND.  I JUST

23   DON'T WANT YOU TO SAY ON FRIDAY, "SHE'LL BE AVAILABLE ON

24   MONDAY."

25             MR. COREY:  NO.  NO.  IT WON'T BE THAT.  I

16

EXHIBIT 13 PAGE 240

21

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   KNOW THAT THERE'S -- I KNOW THAT EITHER THE NEW YORK TOY

2   FAIR OR HONG KONG TOY FAIR IS GOING ON, AND I DON'T KNOW

3   ABOUT WHAT HER INVOLVEMENT IS WITH THAT.  SO THAT'S MY

4   ONLY RESERVATION.  BUT I HAVEN'T SPOKEN TO HER.

5           MR. JACOBY:  SO YOU'VE AGREED TO GIVE US AN

6   AVAILABLE DATE --

7           MR. COREY:  SURE.

8           MR. JACOBY:  -- THAT SHE'S AVAILABLE FOR

9   DEPOSITION.  I HAVE A PRIOR AGREEMENT WITH MR. ZELLER

10  THAT WE WILL ALWAYS FIRST CONSIDER THE CONVENIENCE OF

11  THE WITNESS IN TERMS OF THE LOCATION OF THE DEPOSITION.

12  THAT WILL ALWAYS BE THE FIRST PRIORITY.  I DON'T KNOW

13  WHERE MS. PARK LIVES.  IN OTHER WORDS, I WON'T MAKE HER

14  COME TO CENTURY CITY, IF SHE LIVES IN PASADENA.  WE CAN

15  DO THE DEPOSITION AT O'MELVENY OR HERE.

16          MR. COREY:  SURE.

17          MR. JACOBY:  I'M SAYING O'MELVENY, SINCE IT'S

18  OUR DEPOSITION; AND, IN THE EVENT THE CASE IS REMANDED

19  TO STATE COURT, THAT THE DEPOSITION DATE WILL HOLD, BUT

20  THE RULES OF THE DEPOSITION WILL BE GOVERNED BY THE

21  APPROPRIATE JURISDICTION.

22          IS THAT AGREED?

23          MR. COREY:  YEAH.  THAT'S FINE.

24          MR. JACOBY:  IS THAT AGREED, PAULA?

25          MS. AMBROSINI:  FINE.  SURE.

17

EXHIBIT _13_ PAGE _241_

22

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1           MR. COREY:  WE'RE OFF NOW.

2           (RECESS.)

3           MR. JACOBY:  WITH RESPECT TO THE NUMBER OF

4    DEPOSITIONS EACH SIDE IS PERMITTED TO TAKE IN THIS CASE,

5    WE'VE AGREED -- THAT WAS THE SUBJECT OF A PRIOR

6    DISCUSSION BETWEEN MYSELF, DOUG WICKHAM, DIANA TORRES,

7    AND MIKE ZELLER.  CARTER BRYANT HAS AGREED THAT HE WILL

8    MAKE A PROPOSAL, A FIRM PROPOSAL, ON THIS BY NEXT

9    FRIDAY.

10          MS. AMBROSINI:  OFF THE RECORD.

11          (RECESS.)

12          MR. JACOBY:  MS. AMBROSINI HAS INDICATED THAT

13   WE SHOULD DISCUSS ENLARGING THE NUMBER OF

14   INTERROGATORIES THAT ARE PERMITTED BY EITHER SIDE, WERE

15   THE CASE TO REMAIN IN FEDERAL COURT, AND M.G.A. WILL

16   MAKE A PROPOSAL ON THAT BY NEXT FRIDAY.  OKAY.

17          WHY DON'T WE DISCUSS -- OFF THE RECORD.

18          (RECESS.)

19          MR. JACOBY:  CARTER BRYANT'S POSITION WITH

20   RESPECT TO ANN DRISCOLL'S DEPOSITION AND THE APPOINTMENT

21   OF A DISCOVERY MASTER IS BRIEFLY AS FOLLOWS:

22          THAT MR. ZELLER INTERPOSED INSTRUCTIONS NOT TO

23   ANSWER ON BASES THAT ARE NOT PERMITTED UNDER CALIFORNIA

24   LAW, SPECIFICALLY, ON LACK OF FOUNDATION.  WHILE NEITHER

25   ASSERTING PRIVILEGE NOR PRIVACY, HE INSTRUCTED

18

EXHIBIT 13 PAGE 242

23

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    MS. DRISCOLL ON SEVERAL OCCASIONS NOT TO ANSWER, AND WE

2    FEEL THAT EVEN A FOUNDATION OBJECTION IS FRIVOLOUS

3    BECAUSE WE HAVE -- I FEEL THAT WE DID LAY THE FOUNDATION

4    THAT MS. DRISCOLL SIGNED MULTIPLE INVENTION AND

5    ASSIGNMENT AGREEMENTS.  SHE INDICATED THAT SHE DID NOT

6    SIGN THE MOST RECENT ITERATION OF IT.

7              MY UNDERSTANDING OF MR. ZELLER'S OBJECTION, AT

8    LEAST IN PART, IS THAT BECAUSE SHE HAD NO AFFIRMATIVE

9    RECOLLECTION OF CARTER BRYANT'S FORM AGREEMENT, HE WOULD

10   NOT ALLOW MS. DRISCOLL TO TESTIFY ABOUT THE MEANING OF

11   THE CONTRACT OR HOW THE CONTRACT RELATED TO POLICY SHE

12   WAS FAMILIAR WITH.  I THINK THIS IS ANOTHER EXAMPLE OF

13   BOOTSTRAPPING AND UNWILLINGNESS TO PRODUCE DOCUMENTS AND

14   TO AN INABILITY TO PRESENT A WITNESS WHO WILL TESTIFY

15   ABOUT WHAT ARE CLEARLY RELEVANT DOCUMENTS.

16             FURTHER, MR. ZELLER ARTICULATED IN THE

17   DEPOSITION THAT WE WEREN'T ENTITLED TO TAKE DISCOVERY ON

18   THIS BECAUSE MATTEL WAS SEEKING TO DISMISS BRYANT'S

19   CROSS-CLAIM.  I FEEL THAT'S CONTRARY TO THE RULING OF

20   JUDGE MANELLA WITH RESPECT TO MR. BRYANT'S EX PARTE

21   APPLICATION TO STAY RULE 26 DISCLOSURES OR UNTIL MATTEL

22   WAS HEARD.

23             IN OTHER WORDS, MATTEL HAS OBTAINED AN

24   AFFIRMATIVE RULING FROM JUDGE MANELLA THAT THE

25   CHALLENGING OF JURISDICTION OR THE PROPRIETY OF A CLAIM

19

EXHIBIT _13_ PAGE _243_

24

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    IS NOT A BASIS FOR STOPPING DISCOVERY, AND I'M AWARE OF

2    NO FEDERAL RULE OR CASE THAT SAYS THAT, WHILE A MOTION

3    TO DISMISS IS PENDING, DISCOVERY IS STAYED, NOR HAS

4    MATTEL EVER SOUGHT A STAY OF DISCOVERY ON THE

5    CROSS-CLAIM.

6         AND, WHILE MATTEL'S ENFORCEMENT OF

7    MR. BRYANT'S CONTRACT ARGUABLY OR AT LEAST TO MY

8    UNDERSTANDING RELATES SOLELY TO MR. BRYANT'S CONTRACT,

9    MR. BRYANT'S CHALLENGE TO THE MATTEL CONTRACT IS ON

10   BEHALF OF HIMSELF AND ALL MATTEL EMPLOYEES AND THE

11   GENERAL PUBLIC, AND SO MS. DRISCOLL'S UNDERSTANDING OF

12   THESE CONTRACTS IS FOURSQUARE RELEVANT TO THE CASE.

13        IN ADDITION, MR. KAYE, AS THE HEAD OF

14   H.R., ADMINISTERS THE CONTRACT, AND THERE WERE ALSO

15   LIMITS PLACED ON HIS ABILITY TO TESTIFY ABOUT IT BECAUSE

16   HE DIDN'T RECALL SEEING MR. BRYANT'S CONTRACT.  AND I

17   THINK THAT'S IMPROPER, AS WELL, BECAUSE HE'S PROBABLY

18   THE MOST SENIOR EXECUTIVE IN CHARGE OF ADMINISTERING THE

19   CONTRACT.

20        SECONDLY, I THINK MR. ZELLER INTERPOSED

21   PRIVILEGE OBJECTIONS TO PREVENT MR. BRYANT FROM GETTING

22   INFORMATION THAT GOES WELL BEYOND WHAT WOULD BE

23   PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE.

24   SPECIFICALLY, I BELIEVE HE INSTRUCTED WITNESSES NOT TO

25   ANSWER, IF THEY TOLD SOMETHING TO A LAWYER, AND THE MERE

20

EXHIBIT _13_ PAGE _244_

25

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   TELLING OF SOMETHING TO A LAWYER DOES NOT CREATE THE

2   PRIVILEGE.  IT MIGHT PROTECT THE COMMUNICATION, BUT IT

3   DOES NOT CREATE A PRIVILEGE IN THE UNDERLYING FACTS THAT

4   ARE PART OF THE COMMUNICATION.

5        I THINK, WITH RESPECT TO MR. KAYE'S

6   DEPOSITION, MR. ZELLER INSTRUCTED MR. KAYE NOT TO ANSWER

7   WITH RESPECT TO THE 2002 INVESTIGATION OF MR. BRYANT ON

8   PRIVILEGE, ONE, WITHOUT ESTABLISHING THAT A LAWYER WAS

9   INVOLVED IN ALL PHASES OF IT; AND, TWO, I BELIEVE THAT

10  HIS OBJECTIONS WENT WELL BEYOND THE SCOPE OF

11  COMMUNICATIONS WITH AN ATTORNEY; THIRDLY, I BELIEVE

12  MR. ZELLER THROUGH HIS OBJECTIONS AND CALLING MY

13  QUESTIONS "STUPID" AND CHALLENGING THE PROPRIETY OF THE

14  DISCOVERY ON THE CROSS-CLAIM AND ASKING ME TO MOVE ON

15  AND REPEATEDLY SUGGESTING THAT I WAS WASTING THE

16  EXECUTIVES' TIME INTERRUPTED WITH THE FLOW OF TESTIMONY,

17  REPEATEDLY CAUSED WITNESSES TO FORGET THE QUESTION, AND

18  BASICALLY INHIBITED MR. BRYANT'S FACT-FINDING WHICH HE'S

19  CLEARLY ENTITLED TO HAVE IN DEPOSITION DISCOVERY.

20       I DIDN'T SAY THIS BEFORE, BUT I'LL SAY IT NOW.

21  I DON'T THINK I WAS EVER RUDE TO MR. KAYE OR

22  MS. DRISCOLL.  I THINK DESPITE THE FACT THAT MY

23  QUESTIONS WERE CALLED "STUPID," EVEN THOUGH I'VE

24  PRACTICED LAW IN CALIFORNIA ABOUT 13 YEARS MORE THAN

25  MR. ZELLER, I KEPT MY COOL, I NEVER RAISED MY VOICE, AND

21

EXHIBIT 13 PAGE 245

26

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    I THINK HIS COMMENTS INAPPROPRIATE.  AND THAT'S WHY I

2    BELIEVE, IN ADDITION TO HAVING MS. DRISCOLL AND MR. KAYE

3    REAPPEAR TO ADDRESS THE FACT-FINDING ISSUES, THAT

4    MR. BRYANT BELIEVES THAT A DISCOVERY MASTER IS NECESSARY

5    AT LEAST IN SOME DEPOSITIONS.

6          I INDICATED THAT I DIDN'T HAVE ANY PROBLEMS

7    WITH MR. QUINN OR MR. ZELLER'S CONDUCT AT MS. O'CONNOR'S

8    DEPOSITION.  I BELIEVE THAT'S BECAUSE THEY DIDN'T HAVE

9    THE ABILITY TO INSTRUCT HER NOT TO ANSWER.  I THINK THAT

10   ONLY A DISCOVERY MASTER ATTENDING THESE DEPOSITIONS WILL

11   PREVENT THAT CONDUCT FROM REOCCURRING.

12         AND I WOULD JUST NOTE THAT, WHILE WE DON'T

13   AGREE THAT MR. WICKHAM OR MS. "INDOLI" DID ANYTHING AT

14   THE BRYANT DEPOSITION THAT WAS INAPPROPRIATE, MR. QUINN

15   REPEATEDLY ON THE RECORD THREATENED TO GO TO COURT TO

16   MOVE TO COMPEL, ACCUSED THEM OF OBSTRUCTING

17   FACT-FINDING.  AND I WOULD SUGGEST THAT, IF -- WHILE

18   THERE'S NO MEET AND CONFER MR. BRYANT'S DEPOSITION, NO

19   MOTION TO COMPEL FURTHER RESPONSES, AND, FRANKLY, NO

20   DISCUSSION OF IT AT ALL, I WOULD SUGGEST THAT, IF

21   MR. QUINN STANDS BY THE THINGS HE SAID IN THE

22   TRANSCRIPT, THEN THERE WOULD BE A MUTUAL BENEFIT TO

23   MATTEL HAVING A DISCOVERY MASTER.  AND MR. BRYANT HAS

24   AGREED TO MEET AND CONFER ON AN APPROPRIATE WAY TO

25   SELECT A MASTER, AND WE'VE AGREED TO SPLIT THE COSTS

22

EXHIBIT 13 PAGE 246

27

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    EVENLY.  I UNDERSTAND THIS WAS RAISED FOR THE FIRST TIME

2    LAST NIGHT, AND I UNDERSTAND MR. COREY DOESN'T HAVE A

3    RESPONSE TO ME NOW.

4            YOU CAN JUST ARTICULATE THAT.

5            MR. COREY:  AND I APPRECIATE YOU POINTING THAT

6    OUT.

7            AS MR. JACOBY SAID, THE POSSIBILITY OF

8    A SPECIAL MASTER RAISED WITH RESPECT TO FURTHER

9    DEPOSITIONS WAS RAISED FOR THE FIRST TIME IN AN E-MAIL

10   THAT HE SENT ME YESTERDAY EVENING.  AND I HAVE NOT HAD

11   AN OPPORTUNITY TO DISCUSS THE POSSIBILITY OF COMING TO

12   AN AGREEMENT WITH RESPECT TO A SPECIAL MASTER WITH MY

13   CLIENT, BUT I WILL BE MORE THAN HAPPY TO DO SO.  AND, AS

14   WE PREVIOUSLY AGREED, I WILL HAVE A RESPONSE ON FRIDAY.

15           I WOULD -- LET ME JUST ASK YOU IF YOU -- ARE

16   YOU -- ARE YOU -- DO YOU ANTICIPATE MOVING TO REOPEN THE

17   DEPOSITIONS OF KAYE AND DRISCOLL --

18           MR. JACOBY:  YES.

19           MR. COREY:  -- OR DO YOU WANT A SPECIAL

20   MASTER?

21           MR. JACOBY:  I ANTICIPATE BRINGING TWO MOTIONS

22   CONCURRENTLY.

23           MR. COREY:  YOU ANTICIPATE BRINGING BOTH

24   MOTIONS?

25           MR. JACOBY:  YES.

23

EXHIBIT _13_ PAGE __247

28

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    MR. COREY:  OKAY.  THEN I WANT YOU TO -- THEN

2    I WANT YOU TO DO AT A COUPLE THINGS, AT LEAST, WITH

3    RESPECT TO -- LET ME TAKE A STEP BACK.

4         ARE YOU GOING TO -- DO YOU WANT TO DO IT ON OR

5    OFF THE RECORD?

6         MR. JACOBY:  WE CAN DO IT OFF.

7         MR. COREY:  LET'S GO OFF.

8         (RECESS.)

9         MR. COREY:  AFTER FURTHER DISCUSSION WITH

10   RESPECT TO THE DEPOSITION OF -- THE SPECIAL MASTER AND

11   THE DEPOSITIONS OF ANN DRISCOLL AND ALAN KAYE,

12   MR. JACOBY HAS ARTICULATED THAT HE ANTICIPATES BRINGING

13   A MOTION FOR THE APPOINTMENT OF A SPECIAL MASTER AND TO

14   REOPEN THE DEPOSITIONS OF MS. DRISCOLL AND MR. KAYE IN

15   THE PRESENCE OF THAT SPECIAL MASTER.  MATTEL HAS

16   PREVIOUSLY ARTICULATED ITS POSITION WITH RESPECT TO THE

17   SPECIAL MASTER, I.E., THAT IT WILL RESPOND TO THE RECENT

18   REQUEST BY FRIDAY.

19        IN LIGHT OF THE EXPRESSION OF MR. BRYANT THAT

20   HE ANTICIPATES BRINGING A MOTION TO REOPEN THE

21   DEPOSITIONS, MATTEL HAS REQUESTED THAT INSTANCES OF THE

22   TYPE OF CONDUCT AND INSTRUCTIONS THAT WILL FORM THE

23   BASIS OF A MOTION TO REOPEN THE DEPOSITIONS BE PROVIDED

24   AND THAT AUTHORITY FOR THE IMPROPRIETY OF THOSE

25   INSTRUCTIONS AND CONDUCT BE PROVIDED BY NEXT FRIDAY.

24

EXHIBIT 13 PAGE 248

29

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1          MR. JACOBY:  I DON'T KNOW IF I CAN PROVIDE THE

2     AUTHORITY.  I'LL PROVIDE YOU --

3          MR. COREY:  YOU CAN'T PROVIDE --

4          MR. JACOBY:  -- EXEMPLAR AUTHORITY.

5          MR. COREY:  ARE YOU SAYING YOU WON'T PROVIDE

6     THE AUTHORITY?

7          MR. JACOBY:  I'LL GIVE YOU SOME SHORT -- I

8     MEAN I'VE ALREADY GIVEN YOU AUTHORITY.  IT'S ON THE

9     FOUNDATION IN MY LETTER.

10         MR. COREY:  THAT'S RIGHT.  AND SPECIFICALLY --

11    LET BE ME CLEAR:  SPECIFICALLY, THE AUTHORITY THAT I'M

12    INTERESTED IN IS AUTHORITY FOR THE PROPOSITION THAT IT'S

13    PROPER TO CONTINUE TO TESTIFY -- EXCUSE ME -- TO

14    CONTINUE TO QUESTION A WITNESS ABOUT A DOCUMENT THAT THE

15    WITNESS DOES NOT RECALL SEEING AND DOES NOT REFRESH HER

16    RECOLLECTION.

17         MR. JACOBY:  OKAY.  AGAIN, WHILE I DON'T AGREE

18    WITH -- I DON'T AGREE THAT I'M REQUIRED TO DO THAT, I'LL

19    AGREE TO -- I'LL AGREE TO SHOW YOU THE AUTHORITIES I

20    WILL RELY ON TO COMPEL MS. DRISCOLL TO TESTIFY ABOUT

21    BRYANT'S AGREEMENT.  I'LL AGREE TO DO THAT.  I MEAN I'LL

22    GIVE YOU WHAT I AM GOING TO RELY ON.

23         MR. COREY:  I CAN'T FORCE YOU TO --

24         MR. JACOBY:  YOU HAVEN'T SHOWED ME THE

25    AUTHORITY THAT I CAN'T DO WHAT I'M PROPOSING, AND I --

25

EXHIBIT _13_ PAGE ___ 249

20

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1          MR. COREY:  BUT, SEE, I'M NOT THE MOVING

2    PARTY.

3          MR. JACOBY:  THAT'S FINE.

4          MR. COREY:  RULE 37 SAYS THAT YOU HAVE TO

5    PROVIDE THE --

6          MR. JACOBY:  I WILL GIVE YOU THE AUTHORITY I'M

7    RELYING ON FOR IT.  THAT'S FINE.

8          MR. COREY:  OKAY.  THAT'S FINE.

9          MR. JACOBY:  OKAY.

10          MS. AMBROSINI:  AND I JUST WANT TO SAY ON THE

11    RECORD THAT MR. COREY HAS BEEN USING THE WORDS "REOPEN

12    THE DEPOSITION."  I DON'T KNOW THAT THAT'S TECHNICALLY

13    CORRECT.  I THINK WHAT MR. JACOBY HAS PROPOSED DOING IS

14    JUST MOVING TO COMPEL ANSWERS TO QUESTIONS WHERE

15    QUESTIONS WERE INTERRUPTED, ALTERED BY COLLOQUY,

16    INTERRUPTED BY COLLOQUY, OR WHERE IMPROPER INSTRUCTIONS

17    NOT TO ANSWER WERE INTERPOSED, TO REOPEN THE DEPOSITION

18    REGARDING THOSE PARTICULAR QUESTIONS AND SUBJECT MATTERS

19    AND FOLLOW-UP QUESTIONS ON THOSE PARTICULAR TOPICS --

20          MR. JACOBY:  THAT'S CORRECT.

21          MS. AMBROSINI:  -- RATHER THAN JUST REOPENING

22    THE DEPOSITION FOR ALL PURPOSES.

23          MR. JACOBY:  WE DO NOT DESIRE NOR INTEND TO

24    MOVE TO REOPEN THE DEPOSITION FOR ALL PURPOSES.

25          MR. COREY:  I APPRECIATE THAT.  SO,

26

EXHIBIT *13* PAGE *250*

*31*

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    ESSENTIALLY, THE MOTION TO BE A MOTION TO OVERRULE

2    OBJECTIONS ASSERTED AT THE DEPOSITION.

3         MS. AMBROSINI:  EXACTLY.

4         MR. JACOBY:  EXACTLY.

5         MR. COREY:  OKAY.  AND I ASSUME THAT THE SAME

6    IS TRUE WITH RESPECT TO MR. BRYANT'S INTENTIONS WITH

7    RESPECT TO THE KAYE DEPOSITION, AS WELL.

8         MR. JACOBY:  RIGHT.  IN THE KAYE -- IT'S EVEN

9    MORE LIMITED IN THE KAYE DEPOSITION.  REALLY -- WELL, I

10   WILL GIVE YOU -- I WILL GIVE YOU DEPO CITES FOR THAT, AS

11   WELL.  IT'S A MORE LIMITED --

12        MR. COREY:  OKAY.  AND, AS I SAID, I DON'T

13   EXPECT EVERY SINGLE ONE THAT YOU MOVE ON, BUT I DO

14   EXPECT SOME EXAMPLES.

15        MR. JACOBY:  ILLUSTRATIVE EXAMPLES.

16        MR. COREY:  WE'RE OFF THE RECORD.

17        (RECESS.)

18        MR. JACOBY:  MR. COREY, WE'RE TALKING ABOUT

19   TREATING -- A STIPULATION TO TREAT STATE COURT DISCOVERY

20   AS FEDERAL COURT DISCOVERY.  MR. COREY HAS AGREED THAT

21   HE WOULD DO THAT, IF WE WOULD STRIKE FROM THE

22   STIPULATION THAT WE MET AND CONFERRED ON THE DOCUMENT

23   REQUEST.  AND, WHILE MR. BRYANT'S POSITION IS THAT THERE

24   WAS AN EXTENSIVE MEET AND CONFER ON THE DOCUMENT REQUEST

25   BETWEEN HIM AND MR. ZELLER AND POSSIBLY MS. KREBS ON THE

27

EXHIBIT 13 PAGE 251

22

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    TELEPHONE AFTER THE COURT HEARING WHERE MR. BRYANT WAS

2    GIVEN A PROTECTIVE ORDER BY JUDGE ALARCON, WE NEVER --

3    WE WILL AGREE TO ONE MORE TIME MEET AND CONFER ON THE

4    STATE COURT REQUEST IN ORDER TO ALLOW A FEDERAL

5    DISCOVERY MOTION TO MOVE FORWARD.

6           SO MR. COREY BY THE CLOSE OF BUSINESS MONDAY

7    WOULD GIVE ME A DATE NEXT WEEK -- OR TUESDAY WOULD GIVE

8    ME A DATE AND TIME TO HAVE ONE FURTHER MEET AND CONFER

9    ON THIS DOCUMENT REQUEST, WE WILL DO THAT, DISCHARGE OUR

10   OBLIGATION TO MEET AND CONFER, WE'LL GET THE STIPULATION

11   SIGNED, AND MR. BRYANT WILL PRESENT HIS JOINT

12   STIPULATION.

13          MR. COREY:  AND THAT'S AGREEABLE.  I'M MORE

14   THAN WILLING TO SIGN THE STIPULATION WITHOUT THE

15   PROVISION INDICATING THAT WE HAVE MET AND CONFERRED WITH

16   RESPECT TO THE STATE COURT REQUESTS PROPOUNDED BY

17   MR. BRYANT, AS I INDICATED TO MR. JACOBY, I BELIEVE,

18   OVER A MONTH AGO WHEN THE STIPULATION WAS SENT.

19          MR. JACOBY:  OKAY.  AND, FOR MR. COREY'S

20   EDIFICATION AND MY OWN, I WILL REVISIT THE BILLING

21   RECORDS FOR THE DAY I BELIEVE THAT CONVERSATION OCCURRED

22   AND GIVE MY BEST ESTIMATE OF HOW LONG THE CONVERSATION

23   WAS.

24          MS. AMBROSINI:  CAN WE HAVE A DATE NEXT WEEK

25   SOMETIME FOR THE MEET AND CONFER ON THE STATE COURT

2C

EXHIBIT _13_ PAGE _252_

33

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    REQUEST?

2            MR. JACOBY:  IF YOU CAN GET US THAT BY THE END

3    OF THE DAY, THAT WOULD BE GREAT.

4            MR. COREY:  I CAN DO THAT.  I WILL TELL YOU

5    THAT I DO NOT BELIEVE I AM AVAILABLE TO DO IT AT ALL

6    NEXT WEEK.  IT LIKELY WILL BE SOMEONE OTHER THAN ME.

7            MR. JACOBY:  OKAY.  IF YOU CAN, JUST GIVE US A

8    DATE.

9            MR. COREY:  THE EARLIEST -- I KNOW I'M

10   OCCUPIED TUESDAY THROUGH THURSDAY WITH RESPECT TO

11   ANOTHER MATTER, BUT I'LL TRY TO GET IT TO YOU BY THE END

12   OF THE WEEK.

13           MR. JACOBY:  OKAY.

14           MR. COREY:  OFF THE RECORD.

15           (RECESS.)

16           MR. JACOBY:  MR. BRYANT HAS AGREED TO -- IF

17   MR. COREY AND MS. MC KENZIE CAN DISCUSS MR. MC KENZIE'S

18   MOST RECENT LETTER AND INDICATE TO ME WHETHER THE BATES

19   STAMP NUMBERED DOCUMENTS IN THAT LETTER IS THE UNIVERSE

20   OF ORIGINALS THAT AT THIS TIME THEY WOULD LIKE TO

21   INSPECT, I WILL PROVIDE A DATE CERTAIN FOR THAT

22   INSPECTION BY NEXT FRIDAY.  IF THEY WOULD LIKE TO

23   INSPECT MORE OR ALL OF THE REMAINING DOCUMENTS THAT

24   HAVEN'T BEEN INSPECTED, I WILL ALSO GIVE A DATE CERTAIN

25   BY NEXT FRIDAY, BUT IT MAY BE LATER BECAUSE IT WILL TAKE

29

EXHIBIT _13_ PAGE _253_

34

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    MORE TIME TO COLLATE THOSE DOCUMENTS.

2            AT THIS TIME WE'RE NOT AGREEING TO ALLOW

3    MATTEL TO INSPECT THE REDACTED DOCUMENTS UNTIL BOTH

4    PARTIES CAN AGREE ON A MUTUALLY ACCEPTABLE PROTOCOL FOR

5    DOING SO WHICH I DON'T HAVE A PROPOSAL AT THIS POINT,

6    BUT I'M WILLING TO ENTERTAIN ANY REASONABLE PROPOSAL.

7            MATTEL WOULD ALSO -- MR. BRYANT WOULD ALSO

8    LIKE TO INSPECT MATTEL ORIGINALS, AND WE'LL AGREE BY

9    MAYBE NOT NEXT FRIDAY.  LET'S SAY BY TWO WEEKS FROM

10   FRIDAY.  IN TWO FRIDAYS WE WILL GIVE YOU THE LIST OF

11   ORIGINALS THAT WE WOULD LIKE TO INSPECT AND WOULD INVITE

12   M.G.A. TO SUPPLEMENT THE LIST AS THEY SEE FIT.

13           MR. COREY:  AND, AS I INDICATED, I'M UNABLE TO

14   COMMIT WITH RESPECT TO THE INSPECTION ON BEHALF OF

15   MATTEL AT THIS POINT BECAUSE IT'S AN ISSUE THAT WAS

16   RAISED YESTERDAY AND I DID NOT HAVE A CHANCE TO CONFER

17   WITH MY CLIENT IN THAT REGARD.

18           YOU WILL GIVE ME A LIST OF ORIGINALS YOU WANT

19   TO LOOK AT TWO WEEKS FROM FRIDAY?

20           MR. JACOBY:  TWO WEEKS FROM TODAY.

21           MR. COREY:  DO YOU HAVE -- DO YOU ACTUALLY

22   HAVE A TIME FRAME FOR -- IF THE ONLY THING WE WANT ARE

23   IN SHANE'S LETTER, WHEN DO YOU THINK THAT WOULD OCCUR?

24           MR. JACOBY:  WELL, TO THE EXTENT THEY'RE NOT

25   IN MISSOURI -- I MEAN I WILL -- I'LL TELL YOU BY NEXT

30

EXHIBIT _13_ PAGE _254_

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1    FRIDAY, BUT IT'S NOT GOING TO BE TWO MONTHS FROM NOW.

2              MR. COREY:  OKAY.

3              MR. JACOBY:  WHY DON'T WE TALK ABOUT --

4              MR. COREY:  OFF THE RECORD.

5         (RECESS.)

6              MR. JACOBY:  WE'VE AGREED THAT, IN ADDITION TO

7    DISCUSSING THE STATE COURT DOCUMENT REQUEST AT

8    A SUBSEQUENT MEET AND CONFER AFTER THE STIPULATION IS

9    SIGNED, WE WILL DISCUSS -- BRYANT WILL SEND A LETTER,

10   AND WE WILL FURTHER DISCUSS QUESTIONS THAT BRYANT HAS

11   ABOUT THINGS THAT ARE BOTH ON AND NOT ON THE PRIVILEGE

12   LOG THAT WAS PRODUCED IN OCTOBER OF 2004, SPECIFICALLY

13   WITH RESPECT WITH REQUEST TO WHY NO DOCUMENTS IN

14   CONNECTION WITH THE 2002 INVESTIGATION OF MR. BRYANT

15   HAVING LOGGED OR IDENTIFIED.

16             WE'LL HAVE A FURTHER DISCUSSION ON THE

17   ATTORNEYS' EYES ONLY DESIGNATIONS MADE BY MATTEL -- MADE

18   BY THE PARTIES.  AN EXAMPLE RAISED WAS THE DEDESIGNATION

19   OF THE CITY WORLD DOCUMENTS AS ATTORNEYS' EYES ONLY,

20   GIVEN THAT THEY ARE TO AND FROM THIRD PARTIES.  WE'LL

21   FURTHER DISCUSS A PROTOCOL -- WE'LL REVIEW THE

22   PROTECTIVE ORDER AND THE STIPULATIONS THAT HAVE BEEN

23   MADE AT THE VARIOUS DEPOSITIONS, AND, IF IT IS NOT

24   SELF-EVIDENT FROM THAT REVIEW, WE WILL DISCUSS

25   A PROTOCOL TO REVIEW AND DEDESIGNATE DEPOSITION

31

EXHIBIT _13_ PAGE __255__

26

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   TESTIMONY AS EITHER ATTORNEYS' EYES ONLY OR CONFIDENTIAL

2   TO THE EXTENT APPROPRIATE.  AND, IF THERE IS A PROTOCOL

3   IN PLACE, WE'LL DISCUSS COMPLIANCE WITH THAT PROTOCOL --

4   MOVING THE PARTIES INTO COMPLIANCE WITH THAT PROTOCOL.

5           MR. COREY:  OKAY.  AND I THINK THE PROTOCOL

6   WILL -- WE'LL PROBABLY HAVE TO AMEND -- I WOULD SUGGEST

7   THAT WE AMEND THE PROTECTIVE ORDER TO PUT THAT IN PLACE

8   SO WE DON'T HAVE TO --

9           MS. AMBROSINI:  WELL, WE'LL HAVE TO CONSIDER

10  WHETHER THAT'S NECESSARY OR NOT.

11          MR. JACOBY:  OKAY.  AND, SINCE IT LOOKS LIKE

12  WE'RE GOING TO ROLL THE 30(B)(6) ISSUE INTO THE STIP --

13          MS. AMBROSINI:  WHAT DO YOU MEAN BY THAT?

14  DO YOU WANT TO GO OFF THE RECORD?

15          MR. JACOBY:  OFF THE RECORD.

16          MR. COREY:  PLEASE.

17          (RECESS.)

18          MR. JACOBY:  IT'S MR. BRYANT'S POSITION THAT

19  MATTEL HAS FAILED TO OBJECT AND TO APPEAR FOR THE

20  P.M.K. NOTICE -- THE 30(B)(6) DEPOSITION NOTICE FOR

21  JANUARY 11TH.  OUR UNDERSTANDING IS, NOTWITHSTANDING THE

22  FACT THAT I INQUIRED THE DAY BEFORE WHETHER THEY WOULD

23  ATTEND, MR. ZELLER INDICATED HE WOULDN'T ATTEND.  IT'S

24  OUR POSITION THAT THEY WAIVED THEIR OBJECTIONS.

25          MR. COREY:  WAIT.  THAT MR. ZELLER WOULD NOT

32

EXHIBIT _13_ PAGE _256_

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1   ATTEND?

2              MR. JACOBY:  WOULD NOT ATTEND THE DAY BEFORE

3   UPON MY INQUIRY.   THERE HAD BEEN NO PRIOR COMMUNICATIONS

4   OR OBJECTIONS ABOUT THAT NOTICE -- THAT PARTICULAR

5   NOTICE WHICH WAS SERVED ON DECEMBER 21ST PERSONALLY.

6   MY UNDERSTANDING IS THAT MATTEL IS WILLING TO SIGN THE

7   STIPULATION TREATING THE STATE COURT P.M.K. NOTICE AS

8   A FEDERAL 30(B)(6) NOTICE, AND, GIVEN THE EXTENSIVE

9   DISCUSSIONS ON THE TOPIC BETWEEN MYSELF AND MR. ZELLER

10  AND MS. KREBS AND MR. COREY A LITTLE BIT, WE CAN SIMPLY

11  JUST MOVE -- BRYANT CAN SIMPLY MOVE TO COMPEL THAT

12  DEPOSITION.

13             MR. COREY:  AND THAT'S IN ACCORD WITH MY

14  UNDERSTANDING.   IT'S MY UNDERSTANDING THAT MR. JACOBY

15  HAS SPENT A SIGNIFICANT AMOUNT OF TIME WITH MS. KREBS,

16  AND MR. ZELLER DISCUSSING THE TOPICS IDENTIFIED IN THE

17  TWO STATE COURT PERSON MOST KNOWLEDGEABLE DEPOSITION

18  NOTICES AND THAT, IN FACT, WITH RESPECT TO ONE OF THOSE

19  NOTICES -- I DON'T RECALL WHICH ONE -- A MOTION TO

20  COMPEL WAS, IN FACT, PENDING IN STATE COURT BEFORE IT

21  WAS REMOVED.

22             MR. JACOBY:  IT WAS ACTUALLY A MOTION TO QUASH

23  BY MATTEL.

24             MR. COREY:  WELL, MOTION PRACTICE RELATED TO

25  THE -- WITH RESPECT TO THE --

33

EXHIBIT 13 PAGE 257

28

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

1          MR. JACOBY:  MOTION PRACTICE.

2          MR. COREY:  -- TO ONE OF THE PERSON MOST

3    KNOWLEDGEABLE DEPOSITION NOTICES CONSISTENT WITH THE

4    DISCUSSION WE HAD ABOVE ABOUT MR. BRYANT'S AGREEMENT TO

5    STRIKE A PROVISION FROM THE STIPULATION THAT WOULD ALLOW

6    US TO TREAT STATE COURT DISCOVERY AS FEDERAL DISCOVERY.

7    MATTEL IS MORE THAN WILLING TO SIGN THAT STIPULATION

8    WHICH WOULD ALLOW BRYANT TO TREAT AS A FEDERAL 30(B)(6)

9    NOTICE THEIR STATE COURT PERSON MOST KNOWLEDGEABLE

10   DEPOSITION NOTICES.

11          MR. JACOBY:  OKAY.  I THINK THIS CONCLUDES THE

12   MEET AND CONFER.  MR. COREY HAS A LUNCH MEETING, AND I

13   HAVE LUNCH TELEPHONE CONFERENCE.

14          (RECESS.)

15

16

17

18

19

20

21

22

23

24

25

34

EXHIBIT 13 PAGE 258

79

LUDWIG KLEIN REPORTERS & VIDEO, INC.   800.540.0681

## REPORTER'S CERTIFICATE

1

2

3

4

5          I, JOHN M. TAXTER, C.S.R. NO. 3579,

6    R.P.R., A CERTIFIED SHORTHAND REPORTER IN AND FOR

7    THE STATE OF CALIFORNIA, DO HEREBY CERTIFY:

8            THAT THE FOREGOING PROCEEDINGS WERE TAKEN

9    BY ME IN SHORTHAND AT THE TIME AND PLACE HEREIN NAMED

10   AND WERE THEREAFTER TRANSCRIBED INTO TYPEWRITING UNDER

11   MY DIRECTION, SAID TRANSCRIPT BEING A TRUE AND CORRECT

12   TRANSCRIPTION OF MY SHORTHAND NOTES.

13            I FURTHER CERTIFY THAT I HAVE NO INTEREST

14   IN THE OUTCOME OF THIS ACTION.

                         OCTOBER 1, 2004
15        DATED: _____.

16

17

18

19

20        JOHN M. TAXTER
          C.S.R. NO. 3579, R.P.R.

21

22

23

24

25

                                                 35

EXHIBIT _13_ PAGE _259_

40

# ERRATA SHEET

## CHANGES TO TESTIMONY

| PAGE | LINE | FROM | TO |
|------|------|------|-----|
| ___ | ___ | _____ | _____ |
| ___ | ___ | _____ | _____ |
| ___ | ___ | _____ | _____ |
| ___ | ___ | _____ | _____ |
| ___ | ___ | _____ | _____ |
| ___ | ___ | _____ | _____ |
| ___ | ___ | _____ | _____ |
| ___ | ___ | _____ | _____ |
| ___ | ___ | _____ | _____ |
| ___ | ___ | _____ | _____ |
| ___ | ___ | _____ | _____ |
| ___ | ___ | _____ | _____ |
| ___ | ___ | _____ | _____ |
| ___ | ___ | _____ | _____ |
| ___ | ___ | _____ | _____ |
| ___ | ___ | _____ | _____ |
| ___ | ___ | _____ | _____ |
| ___ | ___ | _____ | _____ |

_____          _____
SIGNATURE OF WITNESS                              DATE

EXHIBIT _13_ PAGE _260_

41

**ERRATA SHEET**

**CHANGES TO TESTIMONY**

| PAGE | LINE | FROM | TO |
|------|------|------|-----|
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |
| ____ | ____ | _____ | _____ |

_____          _____
SIGNATURE OF WITNESS              DATE

EXHIBIT _13_ PAGE __261__

**EXHIBIT 14**

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware Corporation,

        Plaintiff,

       vs.        CASE NO. CV 04-9059 NM
                        (RJBx)

CARTER BRYANT, an individual, and
DOES 1 through 10, Inclusive.

        Defendants.

CARTER BRYANT, on behalf of himself,
all present and former employees of
Mattel, Inc., and the general public.

        Cross-Complaint.

       vs.

MATTEL, INC.,
a Delaware corporation.

        Cross-Defendant.

EXHIBIT 14 PAGE 262

CERTIFIED COPY

HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY

VIDEOTAPED DEPOSITION OF JACQUELINE RAMONA PRINCE

Tuesday, December 21, 2004

Atlanta, Georgia

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    knew of was yourself?

2         A.   That's the only one I knew of.

3         Q.   How is it that Mr. Bryant came to your apartment

4    and had these drawings notarized?  And what I'm

5    asking about is, is what were the circumstances that led

6    to it?  Was it something that he asked in advance you to

7    do and scheduled an appointment or did he drop by?  If

8    you could please just explain for us the circumstances.

9         A.   He asked if he could have my phone number, he

10   wanted to call me at home and talk to me about something

11   and I said, Sure.  Then when I was at home, I don't

12   remember if it was the same day or the next day he called

13   me and asked if he could come by and I said, Sure.  He

14   said are you -- and asked if I was a notary and if I

15   could notarize some documents for him.  And I said, Sure,

16   come on over.

17        Q.   Is there anything else you can recall about that

18   conversation?

19        A.   That was it.

20        Q.   And the -- when he asked for your home phone or

21   excuse me -- I take it when you said that he asked for

22   your phone number, it was your home phone number?

23        A.   Yes.

24        Q.   And did he -- you mentioned that he called a day

25   or so after you gave him the number?

EXHIBIT _14_ PAGE _263_

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    A.   I don't remember if it was the next day.

2    Q.   But it was soon after?

3    A.   Yeah, soon after.

4    Q.   And then was it soon after that that he actually

5    came by and did -- and had the drawings notarized?

6    A.   Yes.

7    Q.   So it's fair to say that when you had this

8    conversation with him first, when he asked for your phone

9    number and then when he called you, that was within a

10   couple of days of August 26th, 1999?

11   A.   I would say yes.

12   Q.   When Mr. Bryant asked for your home phone

13   number, was that there in the Mattel design center that

14   he asked you?

15   A.   Yes.

16   Q.   Did he come by your cubicle to do that?

17   A.   Yes.

18   Q.   And were -- were you sitting in your cubicle

19   when he came by to ask for it?

20   A.   Yes.

21   Q.   What else did you discuss with Mr. Bryant on

22   that occasion when he came up and asked you for your home

23   phone number?

24   A.   Nothing.

25   Q.   At that time, did he ask you if you were a

EXHIBIT _14_ PAGE _264_ . 118

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    notary?

2        A.  No.

3        Q.  So he just asked for your home phone number?

4        A.  Right.

5        Q.  Did you -- did you have an understanding as to

6    why?

7        A.  No.  I recall asking him, Well, what's this

8    about?  He said, Oh, I'll just -- can I talk to you about

9    it later.  I said, Sure.

10       Q.  And so I take it that this conversation you had

11   with him was very brief?

12       A.  Very brief.

13       Q.  And you gave him your phone number and then he

14   went back to the -- some other place in the design

15   center?

16       A.  Right.

17       Q.  Do you remember what time of day this happened?

18       A.  No.

19       Q.  Do you remember if it was during the --

20       A.  It was during the day.

21       Q.  During the day?

22           (Whereupon, the witness nods head

23            affirmatively.)

24       Q.  And then you said that he called you at home?

25       A.  Right.

EXHIBIT _14_ PAGE _265_

119

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    Q.  Was that -- did you hear from Mr. Bryant or did

2  you see him or talk to him at any time between when he

3  asked you for your home phone number and then when he

4  called you at home?

5    A.  No.

6    Q.  Did he call you at home during the course of an

7  evening or was it something that was over a weekend?

8    A.  I don't remember.

9    Q.  You mentioned that during the phone call he

10  asked to come by and he also asked you at that point

11  that -- whether you were a notary?

12    A.  I don't really remember for sure if he asked me

13  then or when he came by.

14    Q.  Okay.  So let just be clear then about this.  Is

15  that the next thing you remember is having the

16  conversation over the phone with Mr. Bryant where he

17  asked to come by?

18    A.  Yeah, that for sure he asked me.

19    Q.  And is there anything else that you can remember

20  for sure Mr. Bryant saying during that conversation?

21    A.  No.

22    Q.  And what is it that you said in that

23  conversation?

24    A.  I just said, Come on by.

25    Q.  Did you wonder why he was coming by?

EXHIBIT 14 PAGE 266    120

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   A.  Yes.  I was very curious.

2   Q.  Did you ask him?

3   A.  No.  I just wanted to wait and see because I

4   figured it can't be anything bad.  He's a good guy.  I

5   don't know.

6   Q.  But I take it from your answer you didn't have

7   any idea what it was about?

8   A.  No, I had no idea.

9   Q.  As far as your recollection, is your best

10  recollection on this, did you know he was, or have an

11  understanding when he came over, that he was going to

12  have something notarized, that he was going to ask you to

13  notarize something?

14  A.  I don't remember.  Because I don't remember if

15  he asked me on the phone or when he got in -- got inside

16  my apartment.

17  Q.  Did you have any kind of contact or

18  communications or conversations with Mr. Bryant between

19  the time that he had called you on the phone and the time

20  that he came by your house?

21  A.  No.

22  Q.  So you didn't see him at work or anything else

23  in between?

24  A.  Not that I recall.

25  Q.  I take it at some point then -- well, actually I

EXHIBIT 14 PAGE 267   121

1   should ask this first:  Did you and Mr. Bryant talk about

2   a particular time when he would come by?

3       A.  I don't think so.  When he called me on the

4   phone you mean?

5       Q.  Yes.  Because as I understand it, over that --

6   the course of that conversation he said at a minimum --

7       A.  Are we talking about the conversation on the

8   phone?

9       Q.  Yes.

10      A.  Oh, okay.

11      Q.  Yeah.  We're talking about the conversation on

12  the phone.

13      A.  Oh, okay.

14      Q.  During the course of the conversation on the

15  phone in which Mr. Bryant asked if he could come by --

16      A.  Uh-huh.

17      Q.  -- and you said that he could, was there a

18  particular time that was set up for him to do that?

19      A.  I don't remember.

20      Q.  You don't remember a specific time being set up?

21      A.  I just remember saying, Come whenever you want

22  to, but I don't remember a specific time or -- I mean, it

23  wasn't that important to me to remember.

24      Q.  At the time when Mr. Bryant showed up, do you

25  have a recollection as to whether, when he first showed

EXHIBIT _14_ PAGE _268_    122

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1   up, you knew by then he wanted some drawings or other

2   things notarized?

3       A.  I didn't know until he got inside and we sat

4   down in my living room and started talking.

5       Q.  And then that's when he -- it became clear to

6   you at least --

7       A.  Right.

8       Q.  -- what he wanted?

9       A.  Right.

10      Q.  What time of the day or was it in the course of

11  the evening did Mr. Bryant stop by?

12      A.  I don't remember.

13      Q.  You don't remember if it was dark out?

14      A.  It wasn't really dark, but I don't remember what

15  time it was.

16      Q.  Did you go to work on that day?

17      A.  I don't remember.  I don't remember if it was

18  that same day or the weekend; I don't remember.

19      Q.  Well, if I told you that August 26th, 1999 was a

20  Thursday, would that help your recollection at all?

21      A.  No.  I mean, I know the date's there, but I

22  don't really remember the time or the date or anything.

23      Q.  In 1999, on Thursdays, were you typically at

24  work --

25      A.  Yes.

EXHIBIT _14_ PAGE _267_   123

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    Q.   -- during the day?

2    A.   Uh-huh.

3    Q.   Did you have typical office hours that you kept?

4    A.   8:00 to 5:00.

5    Q.   Every day, during the week?

6    A.   Oh and on -- yeah, except Friday.  Eight to one.

7    Q.   So the record's clear then, your normal office

8    or business hours on Mondays, Tuesdays, Wednesdays, and

9    Thursdays was 8:00 a.m. to about 5:00 p.m.?

10   A.   Right.

11   Q.   And so having talked about that, do you have any

12   better recollection as to the time of day or the evening

13   when Mr. Bryant showed up with his drawings?

14   A.   No.

15   Q.   Was there anyone else in your apartment when he

16   showed up?

17   A.   My two little boys.

18   Q.   Was anyone else around at anytime when you and

19   Mr. Bryant were there?

20   A.   No.

21   Q.   So Mr. Bryant at some point showed up at your

22   apartment and he came in.  If you could please tell me

23   what it is that happened from there.

24   A.   He just said that he had these drawings that he

25   had worked on while he was back home visiting in --

EXHIBIT _14_ PAGE _270_    124

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    reuniting with his family is what he said.  And that he

2    wanted to somehow have some documentation that he did

3    those before he started working back at Mattel.  And I

4    said, Well, I don't know how to do that.  And he said,

5    Why don't we just notarize it for today.  I could

6    notarize my signature on there, right?  I said, Yeah, we

7    could do that.  So that's what we did.

8         Q.  And so the drawings themselves were actually

9    notarized all on that -- on that same occasion?

10        A.  Right.

11        Q.  In other words he didn't go and get his drawings

12   and come back?

13        A.  No, he had them with him.

14        Q.  Did Mr. Bryant tell you why it is that he wanted

15   to document that he did the drawings before he worked

16   for Mattel?

17        A.  Yes.  Because he said he didn't want anyone to

18   think that he did those while he was at Mattel.

19        Q.  Did he say why he didn't want anyone to think

20   that?

21        A.  No.  He just said that he brainstormed and came

22   up with the ideas while he was back home with his family.

23        Q.  Did you have any understanding as to why

24   Mr. Bryant didn't want anyone to think that he came up

25   with the drawings when he was at Mattel?

EXHIBIT _14_ PAGE _271_   125

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    A.  No.

2    Q.  Do you have any expectation or understanding

3 from any source as to why Mr. Bryant wanted that?

4    A.  No. I would just think that he just wanted to

5 make sure that it was understood that he did those when

6 he wasn't there.

7    Q.  And did you have an understanding of what affect

8 that would have?

9    A.  Not really.

10   Q.  Did Mr. Bryant discuss what affect that might

11 have?

12   A.  No.

13   Q.  But it was clear to that you that that's what he

14 was concerned about?

15   A.  Yeah.  He seemed a little concerned.

16   Q.  Did you have an understanding or did Mr. Bryant

17 say what is it that prompted him to be concerned about

18 this?

19   A.  Not really.  I didn't really ask him.

20   Q.  Did you ever obtain from any source any

21 understanding as to why Mr. Bryant was concerned about

22 that?

23   A.  No.

24      MR. MCFARLAND:  I'm just objecting when you

25    keep asking these questions from any source.  I just

EXHIBIT 14 PAGE 272    126

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      Q.   You'll see here that there's a -- this is a

2   sketch that has four heads on it?

3      A.   Right.

4      Q.   Did you notarize one drawing that was just of

5   heads or more than one?

6      A.   It seems like these were all on one page.  It's

7   hard to remember the details.

8      Q.   Let me try it this way.  Do you have a

9   recollection of notarizing more than one drawing that had

10  just heads on it?

11     A.   I just don't remember.

12     Q.   Directing your attention to the specific names

13  that are on page 192 --

14     A.   Yeah.

15     Q.   -- it has Jay, Lupe, and Zoe and then how were

16  you pronouncing the other one?

17     A.   Hallyday?

18     Q.   Hallyday.  Were those names on the drawings --

19     A.   Yes.

20     Q.   -- that you notarized?

21     A.   Yes.  I remember seeing those.

22     Q.   And do you recall seeing this Hallyday name in

23  particular?

24     A.   Yes, because I asked him how to pronounce it.

25     Q.   And you'll see here that it's spelled

EXHIBIT _14_ PAGE _273_   174

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1    H-a-l-l-y-d-a-y on the drawing?

2        A.   Right.

3        Q.   Turning back to your notary journal, do you see

4    it has an entry that spells Hallyday differently?

5        A.   Yeah.

6        Q.   Do you have any explanation to why it's

7    different?

8        I have no idea.   Maybe he told me and I didn't look

9    at it.   I don't know; I don't know why it's spelled

10   differently.

11       Q.   But beyond what it is that you know for a fact,

12   do you have any explanation for that?

13       A.   No.

14       Q.   Turning to the next page, Bryant 194, you'll see

15   that the word Bratz is on this drawing?

16       A.   Uh-huh.   Yes.

17       Q.   Do you have a specific recollection of that word

18   being on this drawing when you notarized it?

19       A.   No.

20       Q.   During the conversation that you had with

21   Mr. Bryant about the drawings, did he point out any of

22   them in particular and discuss them?

23       A.   No.

24       Q.   So he didn't express anything in particular

25   about any of the specific drawings?

EXHIBIT 14 PAGE 274     175

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      A.   No.  He just asked me what did I think of them.

2      Q.   Did you look at them all at the same time and

3   flip through them or did you go through them one by one

4   as they were being notarized?

5      A.   At first I looked at all of them.  And then I

6   notarized one by one.

7      Q.   Do you recall how long approximately Mr. Bryant

8   was over at your house on that day?

9      A.   It wasn't very long.  I don't really know.

10   Maybe 40 minutes.  I'm not really sure.

11      Q.   Do you have a recollection about how long it

12   took to go through and notarize the drawings that you

13   notarized and then do the entries in the journal?

14      A.   Maybe 30 minutes.  I don't know.

15      Q.   That's your best recollection?

16      A.   Yes.

17      Q.   I've asked a similar question before, but let me

18   ask something even more broadly than this --

19      A.   Uh-huh.

20      Q.   -- than I had asked before.

21           Had you ever notarized anything for Mr. Bryant

22   other than the drawings?

23      A.   No.

24      Q.   I'd like to turn back to your journal for a

25   moment, which we marked as Exhibit 60, and let me ask

EXHIBIT _14_ PAGE _275_   176

Page 199

```
 1

 2     STATE OF GEORGIA:

 3     COUNTY OF FULTON:

 4     I hereby certify that the foregoing

 5     deposition was stenographically recorded by me, as

 6     stated in the caption.  The deponent was duly sworn

 7     to tell the truth, the whole truth, and nothing but

 8     the truth.  The colloquies, statements, questions,

 9     and answers thereto were reduced to typewriting

10     under my direction and supervision; that the

11     deposition is a true and correct record of the

12     testimony/evidence given by the deponent.

13     I further certify that I am not a relative,

14     an employee of attorney or counsel of the parties,

15     nor am I financially interested in the action.

16                    This, the 21st day of December, 2004

17

18         Kendra R. Bridges

19                    KENDRA R. BRIDGES

20                    Certified Court Reporter

21                    (B-2194) and Notary Public

22                    My commission expires on the

23                    5th day of August 2008.

24

25
```

EXHIBIT 14 PAGE 276

KENDRA-1.TIF

**EXHIBIT 15**



8/1998

ATTORNEY'S EYES ONLY

BRYANT 00220

EXHIBIT 15 PAGE 277