EXHIBIT 1



# FORM 10-K405

## MATTEL INC /DE/ - mat

**Filed: March 28, 2001 (period: December 31, 2000)**

Annual report. The Regulation S-K Item 405 box on the cover page is checked

EXHIBIT
2501
1-28-08

EXHIBIT _____1_____

PAGE _____14_____

## PART I

Item 1.  Business
Item 2.  Properties
Item 3.  Legal Proceedings
Item 4.  Submission of Matters to a Vote of Security Holders

## PART II

Item 5.  Market for the Registrant's Common Equity and Related Stockholder
Item 6.  Selected Financial Data
Item 7.  Management's Discussion and Analysis of Financial Condition and Results
Item 7a.  Quantitative and Qualitative Disclosures About Market Risk
Item 8.  Financial Statements and Supplementary Data
Item 9.  Changes in and Disagreements with Accountants on Accounting and

## PART III

Item 10.  Directors and Executive Officers of the Registrant
Item 11.  Executive Compensation
Item 12.  Security Ownership of Certain Beneficial Owners and Management
Item 13.  Certain Relationships and Related Transactions

## PART IV

Item 14.  Exhibits, Financial Statement Schedules and Reports on Form 8-K
SIGNATURES
Item 14(a)(2)  of this Form 10-K. In our opinion, this Financial Statement

EX-2.2 (SALE AND PURCHASE AGREEMENTAMENDMENT NO. 1)

EX-2.3 (AMENDMENT NO. 2 TO THE SALE AND PURCHASE AGRE)

EX-3.0

EX-3.3 (BY-LAWS OF MATTEL)

EX-4.13 ((INCLUDING ANY FUTURE HOLDER) IS BOUND BY THEAGREEMENT BETWEEN THE ORIGINAL PURCHASER AND OBTAINED FROM THE COMPANY).)
EX-10.9 (INDEMNITY AGREEMENT)

EXHIBIT _____ 1

PAGE _____ 15

EX-10.10 (EXECUTIVE EMPLOYMENT AGREEMENT)

EX-10.13 (Material contracts)

EX-10.19 (Re: Amendment to Your Employment Agreement--------------------------------)

EX-10.24 (Re: Amendment to Your Employment Agreement--------------------------------)

EX-10.29 (Re: Amendment to Your Employment Agreement--------------------------------)

EX-10.33 (AMENDED AND RESTATED EXECUTIVE EMPLOYMENT AGR)

EX-10.34 (Re: Amendment to Your Employment Agreement an--------------------------------)

EX-10.35 (LOAN AGREEMENT)

EX-10.36 (LOAN AGREEMENT)

EX-10.37 (MATTEL)

EX-10.39 (MATTEL)

EX-10.43 (AMND #1 TO MATTEL)

EX-10.49 (Material contracts)

EX-10.57 (AMENDMENT TO MATTEL 1990 STOCK OPTION PLAN)

EX-10.60 (FIRST AMENDMENT TO AWARD AGREEMENT)

EX-10.61 (MATTEL, INC. NOTICE OF GRANT OF STOCK OPTIONS AND GRANT AGREEMENT)

EX-10.62 (GRANT AGREEMENT FOR A NON-QUALIFIED STOCK OPTION)

EX-10.63 (AWARD CANCELLATION AGREEMENT)

EX-10.68 (Material contracts)

EX-10.75 (Material contracts)

EX-10.80 (AMENDMENT NO. 2 TO MATTEL 1999 STOCK OPTION PLAN)

EX-11.0 (Statement regarding computation of per-share earnings)

EX-12.0 (Statement regarding computation of ratios)

EX-13.0 (PAGES 17-48 OF THE MATTEL)

EX-21.0 (Subsidiaries of the registrant)

EX-23.0 (Consents of experts and counsel)

EXHIBIT _____1_____

PAGE _____16_____

--------------------------------------------------------------------------------
--------------------------------------------------------------------------------

SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

------------------

FORM 10-K

[Mark One]

[X] ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE
ACT OF 1934

For the fiscal year ended December 31, 2000

[_] TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES
EXCHANGE ACT OF 1934

For the transition period from         to

Commission File Number 001-05647

------------------

MATTEL, INC.
(Exact name of registrant as specified in its charter)

Delaware                                              95-1567322
(State or other jurisdiction of incorporation
or organization)                          (I.R.S. Employer Identification No.)

333 Continental Boulevard
El Segundo, California 90245-5012
(Address of principal executive offices)

(310) 252-2000
(Registrant's telephone number)

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of each exchange on which registered |
| --- | --- |
| Common Stock, $1.00 par value (and the associated Preference Share Purchase Rights) | New York Stock Exchange Pacific Exchange, Inc. |

------------------

Securities registered pursuant to Section 12(g) of the Act:

(NONE)

------------------

Indicate by check mark whether the registrant (1) has filed all reports
required to be filed by Section 13 or 15(d) of the Securities Exchange Act of
1934 during the preceding 12 months (or for such shorter period that the
registrant was required to file such reports), and (2) has been subject to such
filing requirements for the past 90 days. Yes [X] No [_]

Indicate by check mark if disclosure of delinquent filers pursuant to Item
405 of Regulation S-K is not contained herein, and will not be contained, to
the best of registrant's knowledge, in definitive proxy or information
statement incorporated by reference in Part III of this Form 10-K or any
amendment of this Form 10-K. [X]

The aggregate market value of the voting stock held by non-affiliates of the
registrant as of the close of business on March 16, 2001 was $7,591,444,190.

Number of shares outstanding of registrant's common stock, $1.00 par value,
(including 1,682,138 common shares issuable upon exchange of outstanding
exchangeable shares of Softkey Software Products Inc.) as of March 16, 2001:

430,577,290 shares

Source: MATTEL INC /DE/, 10-K405, March 28, 2001

EXHIBIT _____ 1

PAGE _____ 17

DOCUMENTS INCORPORATED BY REFERENCE

1. Portions of the Mattel, Inc. Annual Report to Stockholders for the year ended December 31, 2000 (Incorporated into Parts I, II and IV)

2. Portions of the Mattel, Inc. 2001 Notice of Annual Meeting of Stockholders and Proxy Statement, to be filed with the Securities and Exchange Commission within 120 days after the close of the registrant's fiscal year (Incorporated into Part III).

---

Source: MATTEL INC /DE/, 10-K405, March 28, 2001

EXHIBIT _____ 1 _____

PAGE _____ 18 _____

PART I

Item 1. Business

Mattel, Inc. ("Mattel") designs, manufactures, and markets a broad variety of toy products on a worldwide basis through both sales to retailers and direct to consumers.

Mattel believes its products are among the most widely recognized toy products in the world. Mattel's portfolio of brands and products are grouped in the following categories:

Girls--Barbie(R) fashion dolls and accessories, collector dolls, Cabbage Patch Kids(R), Polly Pocket(R), and Diva Starz(TM)

Boys-Entertainment--including Hot Wheels(R), Matchbox(R), Tyco(R) Electric Racing and Tyco(R) Radio Control (collectively "Wheels"), and Disney, Nickelodeon(R), Harry Potter(TM), Max Steel(TM), games and puzzles (collectively "Entertainment")

Infant & Preschool--including Fisher-Price(R), Power Wheels(R), Sesame Street(R), Disney preschool and plush, Winnie the Pooh(R), Blues Clues(R), See 'N Say(R), Magna Doodle(R), and View-Master(R)

Direct Marketing--American Girl(R), Barbie(R), Wheels and Fisher-Price(R)

Mattel plans to continue to focus on its portfolio of traditional brands that have historically had worldwide sustainable appeal, to create new brands utilizing its knowledge of children's play patterns and to target customer and consumer preferences around the world. Mattel also intends to expand its core brands through the Internet, and licensing and entertainment partnerships.

On May 16, 2000, Robert A. Eckert was unanimously elected Chairman of the Board of Directors and Chief Executive Officer of Mattel. Previously, he had been president and chief executive officer of Kraft Foods, Inc., the largest packaged food company in North America. Mr. Eckert has outlined a new strategy for Mattel that includes building core brands, cutting costs and attracting and developing people. Mattel also added two new outside directors during 2000 and one new outside director during 2001 to its Board of Directors.

In 2000, Mattel implemented a new two phase interactive media strategy, consisting of the disposition of the Learning Company division as phase one and licensing agreements with leading interactive companies for Mattel's core brands as phase two. The disposition of the Learning Company division was completed in October 2000. Licensing agreements with Vivendi Universal Publishing for Barbie(R) and Fisher-Price(R) brands, and THQ, Inc. for Hot Wheels(R) and Matchbox(R) brands, were announced in January 2001.

During the third quarter of 2000, Mattel initiated a financial realignment plan designed to improve gross margin; selling, general and administrative expenses; operating profit, and cash flow. The plan will require a total pre-tax charge estimated at approximately $250 million, or $170 million on an after-tax basis. These costs will be recorded over the next two years. Under the plan, Mattel expects to generate approximately $200 million of cost savings over the next three years. See "Management's Discussion and Analysis of Financial Condition and Results of Operations--2000 Financial Realignment Plan", Note 9 to the Consolidated Financial Statements in the Annual Report to Stockholders, incorporated herein by reference, and "Risk Factors."

Mattel also announced a change in its dividend policy, from the past policy of paying $0.09 per share quarterly when and as declared by the Board of Directors to $0.05 per share annually when and as declared by the Board of Directors. See Part II, Item 5., "Market for the Registrant's Common Equity and Related Stockholder Matters."

Mattel was incorporated in California in 1948 and reincorporated in Delaware in 1968. Its executive offices are located at 333 Continental Boulevard, El Segundo, California 90245-5012, telephone (310) 252-2000.

2

Source: MATTEL INC /DE/, 10-K405, March 28, 2001

EXHIBIT _____ l

PAGE _____ 19

EXHIBIT 2

Received:    7/18/06   4:40PM           RightFAX -> JetFax  ?20;   Page 2
RightFAX                7/_8/2006 4:37   PAGE 002/019   Fax Server

FILED

2006 JUL 18 AM 10: 16

ENTERED

JUL 18 2006

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION
DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

            Plaintiff,

    v.

MATTEL, INC.,

            Defendant,

and related actions.

CASE NO. CV 04-09049 SGL (RNBx)

(Consolidated with cases CV 04-09059 and CV 05-02727)

ORDER GRANTING MOTIONS TO DISMISS

## I. Introduction

This consolidated action involves the individual cases of Bryant v. Mattel, Inc., CV 04-09049; Mattel, Inc. v. Bryant, CV 04-09059; and MGA Entertainment, Inc. v. Mattel, Inc., CV 05-02727.  This Order rules on Motions to Dismiss previously docketed in cases 04-09049 and 04-9059.

The factual background underlying this consolidated action is complex.  The Court sets forth the factual background only to the extent that it is necessary to discuss its ruling on two pending motions to dismiss.  A hearing regarding these motions was held on June 26, 2006.  For the reasons and in the manner set forth below, the Court grants both motions.

DOCKETED ON CM
JUL 18 2003

EXHIBIT ___2___   7-18
PAGE ___20___

Received:   7/18/06  4:41P!              RightFAX -> JetFax  !20;  Page 3
RightFAX                7/_3/2006 4:37   PAGE 003/019   Fax Server

## II. Motion to Dismiss (04-09049)

A.    **Factual Background**

1. 
2. 
3.         Carter Bryant is a designer to whom creation of MGA's "Bratz" line of dolls has
4. been attributed.  Compl. ¶ 6.  Mattel has sued him under a variety of state-law theories
5. relating to certain agreements Bryant signed while an employee with Mattel.  <u>See</u>
6. <u>generally</u> Compl. filed in 04-09059.  Although Mattel has not sued him for copyright
7. infringement of any Mattel product, Bryant nevertheless claims that he is reasonably
8. apprehensive regarding being sued for copyright infringement.  Specifically, Bryant
9. makes the following allegations in his complaint seeking declaratory relief:
10.         First, Bryant claims that an article published in the <u>Wall Street Journal</u> in July,
11. 2003, attributed to Mattel sources a belief that "the Bratz borrow liberally from a Mattel
12. project that was scrapped at the testing stage in 1998." Compl. Ex. A; Compl. ¶ 54.
13. The scrapped Mattel project is alleged to be the project referred to by Mattel as "Toon
14. Teens." Compl. ¶ 56.
15.         Second, Bryant alleges that he suggested, as a way to resolve a discovery
16. dispute, that Mattel stipulate that it would not sue based on "Toon Teens." Compl.
17. ¶ 55.  Mattel refused to do so.  <u>Id.</u>  However, since that initial refusal, Mattel has
18. represented to the Court that it "will not maintain that Bratz infringes the copyright in
19. Toon Teens." June 26, 2006, Tr. at 64 (statement of Mattel counsel John B. Quinn).
20. Mattel has reiterated this position in a post-hearing brief, filed on July 5, 2006.
21.         Third, Mattel cooperated with a Hong Kong toy company that MGA sued for
22. copyright infringement.  Compl. ¶ 56.  MGA's claims involved the Bratz dolls.  <u>Id.</u>
23. Mattel's cooperation consisted of providing the Hong Kong toy company with
24. documents and photographs of the Toon Teens products, ostensibly to help prove that
25. Bratz was not an original design and that Bryant had copied and infringed Toon
26. Teens.  Compl. ¶ 57.
27.         Finally, Bryant notes that Mattel did not seek copyright registration until
28. November, 2003, which is the same time Mattel claims it first learned of Bryant's

EXHIBIT _____ 2

PAGE _____ 21

1  contract with MGA. Compl. ¶¶ 59-60. Bryant alleges that registration of a copyright is

2  a necessary step to be taken prior to filing a copyright infringement action. Compl.

3  ¶ 60.

4  **B.**   **Standing to Seek Declaratory Relief**

5       The purpose of the Declaratory Judgment Act is "to relieve potential defendants

6  from the Damoclean threat of impending litigation which a harassing adversary might

7  brandish, while initiating suit at his leisure — or never." Societe de Conditionnement

8  v. Hunter Engineering Co., 655 F.2d 938, 943 (9th Cir.1981).  However, a party

9  seeking declaratory relief must still satisfy the "case or controversy" requirement found

10  in 28 U.S.C. § 2201(a).  Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896

11  F.2d 1542,1555 (9th Cir. 1990).  This requirement must be satisfied at the time the

12  suit is filed and must continue throughout the term of the suit.  Id. at 1556 (citing

13  International Harvester Co. v. Deere & Co., 623 F.2d 1207, 1210 (7th Cir.1980)).

14       To meet this requirement, a party seeking declaratory relief must show that,

15  based on his reasonable perceptions, under all the circumstances of the case, there is

16  a substantial controversy between parties having adverse legal interests that causes

17  in the plaintiff a real and reasonable apprehension that he will be subject to liability,

18  and the controversy is of sufficient immediacy and reality to warrant declaratory relief.

19  Hal Roach, 896 F.2d at 1555.  The apprehension must have been caused by the

20  defendant's actions.  Id. (citing International Harvester, 623 F.2d at 1211).

21       Viewing Bryant's allegations in light of this standard, and in light of recent

22  developments, the Court must conclude that Bryant, although having a reasonable

23  apprehension of suit prior to counsel's representations regarding the intent to sue

24  based on Toon Teens, no longer has a reasonable apprehension that he will be

25  subject to liability.  Bryant's Complaint, of course, makes reference to "other Mattel

26  products;" however, the substance of his allegations all address the product "Toon

27  Teens."  The Wall Street Journal article is alleged to have involved Toon Teens.

28  Mattel's cooperation with the Hong Kong toy company allegedly involved Toon Teens.

3

EXHIBIT _____ 2

PAGE _____ 22

1   The copyright registration referenced in the Complaint relates to Toon Teens. No

2   other allegations are made that might tend to raise a real and reasonable

3   apprehension that Bryant could be subject to liability for copyright infringement based

4   on any other Mattel product. Accordingly, Bryant has not met the standard for

5   asserting a claim for declaratory relief.

6   **C.**    **Ruling on Motion to Dismiss**

7        Accordingly, the Court **GRANTS** the Motion to Dismiss and dismisses without

8   prejudice Bryant's claim for declaratory relief. Should Bryant, through discovery or

9   otherwise, acquire a real and reasonable apprehension of being subject to liability on

10  the basis of another identifiable Mattel product, Bryant may file a declaratory relief

11  claim. A claim by Mattel of copyright infringement based on the Toon Teens product

12  is barred by counsel's representation; therefore, Bryant may not seek declaratory relief

13  regarding this issue.

14                    **III. Motion to Dismiss (04-9059)**

15  **A.**    **Factual Background**

16        The parties make the following factual allegations and assert the following

17  claims and counterclaims.

18        Bryant was employed by Mattel from September, 1995, to April, 1998, and

19  again beginning in January, 1999, and ending in October, 2000. Compl. ¶ 9. In

20  January, 1999, Bryant signed documents entitled "Employee Confidential Information

21  and Inventions Agreement" ("Employee Agreement") and "Conflict of Interest

22  Questionnaire" ("COI Questionnaire"). The Employee Agreement provides:

23        This Agreement is designed to make clear that: (I) I will maintain the

24        confidentiality of the Company's trade secrets; (ii) I will use those trade

25        secrets for the exclusive benefit of the Company; (iii) inventions that I

26        create will be owned by the Company; (iv) my prior and continuing

27        activities separate from the Company will not conflict with the Company's

28        development of its proprietary rights; and (v) when and if my employment

EXHIBIT _____ 2

PAGE _____ 23

with the Company terminates I will not use my prior position with the

Company to the detriment of the Company.

      1.      Provisions Related to Trade Secrets

. . . .

(b) As used in the Agreement, "Proprietary Information" means

any information (including formula, pattern, compilation, device, method,

technique or process) that derives independent economic value, actual

or potential, from not being generally known to the public or to other

persons who can obtain economic value from its disclosure or use, and

includes information on the Company, its customers, suppliers, joint

ventures, licensors, licensees, distributors and other persons and entities

with whom the Company does Business.

(c) I will not disclose or use at any time either during or after my

employment with the Company, any Proprietary Information except for

the exclusive benefit of the Company as required by my duties for the

Company, or as the Company expressly may consent to in writing, I will

cooperate with the Company and use my best efforts to prevent the

unauthorized disclosure, use or reproduction of all Proprietary

Information.

. . . .

      2.      Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully

as practicable all inventions [as defined below] conceived or reduced to

practice to me (alone or jointly by others) at any time during my

employment by the Company, I hereby assign to the Company and/or its

nominees all my right, title and interest in such inventions, and all my

right, title and interest in any patents, copyrights, patent applications or

copyright applications based thereon. . . .

EXHIBIT _____ 2

PAGE _____ 24

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this Agreement requiring me to assign my rights in any invention does not apply to an invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either (1) relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an invention qualifies under Section 2870.

. . . .

3.    Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

4.    Miscellaneous

. . . .

EXHIBIT   2

PAGE   25

Received:   7/18/08  4:43PM              RightFAX -> JetFax    20;  Page 8
RightFAX                 7/18/2006 4:37    PAGE 008/019   Fax Server

1    (f) This agreement will be governed by and interpreted in

2    accordance with the laws of the State of California.

3                . . . .

4        CAUTION: THIS AGREEMENT CREATES IMPORTANT

5    OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS

6    TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER

7    EMPLOYMENT.

8  Employment Agreement, attached to the Compl. as Ex. A.[1]

9  B.    **The Parties' Claims**

10       Mattel brings a number of claims based on these documents, including breach

11  of contract, breach of fiduciary duty, breach of the duty of loyalty, unjust enrichment,

12  and conversion.

13       Bryant brings a number of counterclaims based on these documents.

14  Specifically, Bryant makes the following challenges to the Employment Agreement:

15       In his first counterclaim, Bryant claims that the Employment Agreement violates

16  Cal. Bus. & Prof. Code §§ 17200 (unfair competition law) because (a) it is an unfair

17  restraint of trade (restricting job mobility and use of publicly available information) in

18  violation of Cal. Bus. & Prof. Code § 16600; (b) it violates Cal. Labor Code §§ 96(k),

19  98.6, and 2699; (c) it violates Cal. Labor Code § 2870; and (d) it is procedurally and

20  substantively unconscionable.  See Bryant's Counterclaims ¶¶ 33-47.

21       In his second counterclaim, Bryant claims that the Employment Agreement

22  should be rescinded because it was procured due to mistake, duress, menace and/or

23

24  _____

25       [1] Bryant objects to the Court's consideration of the Agreement and the COI
    Questionnaire.  Bryant purports to dispute the authenticity of these documents.
26  However, examining the substance of Bryant's objections, it becomes clear that Bryant
    objects not to the content of these documents, but to the validity and legal effect of
27  these documents.  Accordingly, the Court's consideration of these documents in
    connection with the present Motion to Dismiss is proper.  **See** Parrino v. FHP, Inc., 146
28  F.3d 699, 706 (9th Cir. 1998) (the Court may consider documents whose authenticity is
    not questioned and upon which the complaint necessarily relies).

EXHIBIT _____ 2

PAGE _____ 26

1    fraud. See Bryant's Counterclaims ¶¶ 48-54.

2         In his third counterclaim, Bryant alleges that the Employment Agreement was

3    procured by fraud in that Mattel "fail[ed] to disclose to Bryant the true meaning of the

4    terms and the purported legal effect of the [Employment] Agreement." See Bryant's

5    Counterclaims ¶¶ 55-60.

6         Finally, in his fourth counterclaim, Bryant seeks declaratory judgment that

7    Mattel's conduct in requiring Bryant and other employees to execute the Employment

8    Agreement constitutes unfair competition and unfair business practices in violation of

9    Cal. Bus. & Prof. Code §§ 17200 and 16600.  Bryant also seeks a declaration that the

10   Employment Agreement is unlawful and unenforceable as to him and as to other

11   current and former employees of Mattel.  See Bryant's Counterclaims ¶¶ 61-65.

12   C.   **Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

13        The present Motion to Dismiss requires the Court to determine whether the

14   counterclaims state any claim upon which relief may be granted.  See Fed R. Civ. P.

15   12(b)(6).  The Court will not dismiss the claims for relief unless Bryant cannot prove

16   any set of facts in support of the claims that would entitle him to relief.  See Steckman

17   v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir. 1998).  In limiting its inquiry to the

18   content of the counterclaims, the Court must take the allegations of material fact as

19   true and construe them in the light most favorable to Bryant.  See Western Reserve

20   Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir. 1985).  Additionally, the Court "is

21   not required to accept legal conclusions cast in the form of factual allegations if those

22   conclusions cannot be reasonably drawn from the facts alleged."  Clegg v. Cuit

23   Awareness Network, 18 F.3d 752, 755 (9th Cir. 1994).

24   D.   **§ 17200 Claim**

25        1.   **Generally**

26        "California's unfair competition law (UCL) (17200 et seq.) defines 'unfair

27   competition' to mean and include any unlawful, unfair or fraudulent business act or

28   practice. . . ." Kasky v. Nike, Inc., 27 Cal.4th 939, 949, 119 Cal.Rptr.2d 296 (2002)

EXHIBIT _____ 2

PAGE _____ 27

Received:   7/18/08   4:44PM          RightFAX -> JetFax     20;  Page 10
RightFAX              7/18/2006 4:37    PAGE 010/019   Fax Server

1   (internal quotation marks and citation omitted).  Because "section 17200 is written in

2   the disjunctive, it establishes three varieties of unfair competition--acts or practices

3   which are unlawful, unfair, or fraudulent."  Cel-Tech Communications v. Los Angeles

4   Cellular Telephone Co., 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548 (1999) (emphasis

5   added).  "Unlawful" practices are those practices that are prohibited by law, whether

6   "civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made."

7   Saunders v. Superior Court, 27 Cal.App.4th 832, 839 (citing People v. McKale, 25

8   Cal.3d 626, 632 (1979)).  The prohibition against "unfair" conduct is not as broad as it

9   would seem.  In Cel-Tech, the California Supreme Court announced that the test of

10  "unfairness" for commercial cases:  "Unfair" means "conduct that threatens an

11  incipient violation of an antitrust law, or violates the policy or spirit of one of those laws

12  because its effects are comparable to or the same as a violation of the law, or

13  otherwise significantly threatens or harms competition." Cel-Tech, 20 Cal.4th at 187.

14      2.    **Standing**

15      Bryant claims to be bringing the § 17200 "on his own behalf, on behalf of all

16  current and former employees of Mattel employees . . . and on behalf of the general

17  public."  See Counterclaims ¶ 10.  The parties disagree as to whether he may bring

18  such a claim on behalf of anyone other than himself and argue this point on state-law

19  grounds.  However, it is clear under established Ninth Circuit authority that Bryant's

20  purported claims on behalf of others suffer from a federal constitutional deficiency:

21  Bryant must satisfy the case-or-controversy requirement of Article III for any claim that

22  he brings under § 17200.  Bryant has not alleged facts that establish that he has

23  standing to bring his claims on behalf of anyone other than himself.[2]  See Lee v.

24  American Nat. Ins. Co., 260 F.3d 997, 1001 (9th Cir. 2001) (rejecting, on

25  constitutional grounds, a plaintiff's attempt to assert a § 17200 claim on behalf of

26  others noting that "Article III of the Constitution . . . limits the jurisdiction of the federal

27

28

---

[2] As stated below, Bryant has failed to state a claim on his own behalf as well.

9

EXHIBIT _____ 2

PAGE _____ 28

1  courts to 'cases and controversies,' a restriction that has been held to require a

2  plaintiff to show, *inter alia*, that he has actually been injured by the defendant's

3  challenged conduct.") (citing <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.</u>,

4  528 U.S. 167, 180, 120 S.Ct. 693 (2000)).

5        Absent class-action type allegations (and a successful motion to certify a class

6  pursuant to Fed. R. Civ. P. 23), it appears to the Court that Bryant cannot assert

7  claims challenging the Employee Agreement or the COI Questionnaire on behalf of

8  anyone other than himself.  Therefore, the Court considers only whether Bryant has

9  stated a claim pursuant to § 17200 on his own behalf.

10        **3.    Cal. Bus. & Prof. Code § 16600**

11        Bryant argues that the Agreement is "unlawful" because it violates Cal. Bus. &

12  Prof. Code § 16600, which provides: "Except as provided in this chapter, every

13  contract by which anyone is restrained from engaging in a lawful profession, trade, or

14  business of any kind is to that extent void." <u>Id.</u>  Specifically, Bryant argues (without

15  further elaboration) that "the [Employment] Agreement unlawfully impair[s] Bryant's

16  right to prepare to compete with Mattel."  Opp. at 7.

17        California law permits an employee to seek other employment and even to

18  make some "preparations to compete" before resigning.  <u>See</u> <u>Bancroft-Whitney Co. v.</u>

19  <u>Glen</u>, 64 Cal.2d 327, 346 (1966) ("The mere fact that the officer makes preparations

20  to compete before he resigns his office is not sufficient to constitute a breach of duty.

21  It is the nature of his preparations which is significant.")  However, "an employee may

22  not transfer his loyalty to a competitor."  <u>Stokes v. Dole Nut Co.</u>, 41 Cal.App.4th 285,

23  295 (1995).  "During the term of employment, an employer is entitled to its employees'

24  undivided loyalty."  <u>Id.</u>  (internal citations and quotation marks omitted).

25        Mattel alleges in the Complaint that Bryant entered into an agreement with

26  MGA to provide MGA design services on a "top priority" basis while he was still

27  employed with by Mattel.  Compl. ¶ 13.  Bryant also makes similar allegations in the

28  related case, <u>Bryant v. Mattel, Inc.</u>, 04-09049: "MGA ultimately offered Bryant a

EXHIBIT       2

PAGE _____ 89

1   consulting arrangement.  His agreement with MGA was signed on or about October 4,

2   2000.  Bryant resigned from Mattel immediately, giving two weeks notice, but stayed at

3   the company until October 20 to finish up and transition the projects on which he had

4   been working."  Compl. ¶ 38.

5       The parties' arguments assume that the Employment Agreement would prohibit

6   such conduct;[3] therefore, the Court considers whether an agreement prohibiting an

7   employee from entering into a contract with a competitor *during the course of his*

8   *employment* constitutes an unfair restraint of trade in violation of § 16600.  The Court

9   concludes that it does not.  Such an agreement is more akin to ensuring the employer

10  has the "employee's undivided loyalty" than it is to an agreement that restricts an

11  employee from "prepar[ing] to compete."  For this reason, Plaintiff cannot state a

12  § 17200 claim on this basis.

13      4.    **Cal. Labor Code §§ 96(k), 98.6 and 2699**

14      Bryant also argues that the Agreement is "unlawful" because it violates a

15  number of provisions of the California Labor Code.  Specifically, Bryant alleges that

16  the Agreement is "unlawful" because it violates § 96(k), which provides:

17          The Labor Commissioner and his or her deputies and

18      representatives authorized by him or her in writing shall, upon the filing

19      of a claim therefor by an employee, or an employee representative

20      authorized in writing by an employee, with the Labor Commissioner, take

21      assignments of: . . . (k) Claims for loss of wages as the result of

22      demotion, suspension, or discharge from employment for lawful conduct

23      occurring during nonworking hours away from the employer's premises.

24  Cal. Labor Code § 96(k).

25      Section 98.6 prohibits discrimination or retaliation against an employee who

26  engages in conduct described in §96(k).  Section 2699 authorizes a private right of

27

28

---

[3]  The Court does not mean to imply that Bryant has conceded this point.

11

EXHIBIT _____ 2

PAGE _____ 30

1  action for certain violations of the Labor Code.

2       Assuming that § 96(k) would otherwise support a § 17200 claim, Bryant has still

3  failed to allege any "loss of wages" or "demotion, suspension or discharge" based on

4  lawful off-duty conduct.  Therefore, Bryant has not alleged facts sufficient to support a

5  violation of § 96(k) that would, in turn, support his § 17200 claim.

6       Despite Mattel's arguments against § 98.6 and § 2699 as a proper basis for

7  Bryant's § 17200 claim, Bryant did not defend such claims in his opposition; therefore,

8  the Court treats these claims as abandoned.

9      5.  <u>Cal. Labor Code § 2870</u>

10       Bryant also argues that the Agreement is "unlawful" because it violates Cal.

11  Labor Code § 2870.  That provision states:

12       (a) Any provision in an employment agreement which provides

13      that an employee shall assign, or offer to assign, any of his or her rights

14      in an invention to his or her employer shall not apply to an invention that

15      the employee developed entirely on his or her own time without using the

16      employer's equipment, supplies, facilities, or trade secret information

17      except for those inventions that either:

18       (1) Relate at the time of conception or reduction to practice of the

19      invention to the employer's business, or actual or demonstrably

20      anticipated research or development of the employer; or

21       (2) Result from any work performed by the employee for the

22      employer.

23       (b) To the extent a provision in an employment agreement

24      purports to require an employee to assign an invention otherwise

25      excluded from being required to be assigned under subdivision (a), the

26      provision is against the public policy of this state and is unenforceable.

27  Cal. Labor Code § 2870.

28      The Employment Agreement assigns the rights to certain inventions by the

EXHIBIT    2

PAGE    31

1   employee to the Company.  The Agreement limits the scope of this assignment to the

2   extent required by § 2870 by specifically incorporating and quoting § 2870.  The

3   Agreement also informs the employee that he bears the burden of proving that the

4   invention falls within the scope of § 2870.  This is consistent with California law.  See

5   Cal. Labor Code § 2872 ("In any suit or action arising thereunder, the burden of proof

6   shall be on the employee claiming the benefits of its provisions.").

7        Therefore, Bryant cannot maintain a § 17200 claim based on § 2870.

8        **6.    Unconscionability**

9        Unconscionability has both procedural and substantive elements.  Armendariz

10   v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 99 (2000).  Both must

11   be present for a court to invalidate a contract or one of the contract's provisions.  Id. at

12   114.  However, "[t]he more substantively oppressive the contract term, the less

13   evidence of procedural unconscionability is required to come to the conclusion that the

14   term is unenforceable, and vice versa."  Id.

15        Procedural unconscionability focuses on the elements of oppression and

16   surprise.  Discover Bank v. Superior Court, 36 Cal.4th 148, 160 (2005).  "Oppression

17   arises from an inequality of bargaining power which results in no real negotiation and

18   an absence of meaningful choice . . . .  Surprise involves the extent to which the terms

19   of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior

20   bargaining position."  Crippen v. Central Valley RV Outlet, 124 Cal.App.4th 1159, 1165

21   (2004).

22        Substantive unconscionability focuses on the actual terms of the agreement

23   and evaluates whether they create "overly harsh" or "one-sided results."  Armendariz,

24   24 Cal.4th at 114.  To be substantively unconscionable, a contractual provision must

25   shock the conscience.  California Grocers Assn. v. Bank of America, 22 Cal.App.4th

26   205, 214 (1994).

27        Here, Bryant alleges that the Employee Agreement is a contract of adhesion.

28   Counterclaims ¶ 26.  For purposes of the present analysis, the Court assumes that the

13

EXHIBIT _____ 2

PAGE _____ 32

1   Employment Agreement is procedurally unconscionable.  See Discover Bank v.

2   Superior Court, 36 Cal.4th 148, 160 (2005) ("The procedural element of an

3   unconscionable contract generally takes the form of a contract of adhesion, which,

4   imposed and drafted by the party of superior bargaining strength, relegates to the

5   subscribing party only the opportunity to adhere to the contract or reject it.") (internal

6   quotation marks and citation omitted).  However, upon examination of the terms of the

7   Employment Agreement, the Court is unable to conclude that the element of

8   substantive unconscionability has been met.  It is not surprising or overly harsh that

9   Mattel would expect its trade secrets and proprietary information to be kept

10  confidential; the same is true regarding Mattel's expectation that the works of its

11  design staff — created by Mattel's employees, using Mattel's resources, during time

12  for which Mattel paid the employee — be considered its property.  Therefore, Bryant

13  cannot state a claim based on unconscionability.

14      7.    Cal. Labor Code §§ 232 and 232.5

15      Although not pleaded in the Counterclaims, Bryant argues that his § 17200

16  claim is supported by an alleged violation of §§ 232 and 232.5.  These provisions

17  prohibit limitations on an employee's ability to disclose the amount of his or her wages

18  or information about his or her working conditions.  Bryant's arguments fail to address

19  how the Employment Agreement (which prohibits the disclosure of "trade secrets" and

20  "proprietary information") prevented him from disclosing the amount of his wages or

21  information about his working conditions.  Bryant has failed to state a § 17200 claim

22  based on §§ 232 and 232.5.

23      8.    Unfairness

24      As noted above, there is only a limited basis on which a plaintiff may challenge

25  conduct as an "unfair" business practice.  See Cel-Tech Communications, 20 Cal.4th

26  at 187 ("unfair" conduct that may be challenged pursuant to § 17200 is conduct that is,

27  or is similar to, conduct that constitutes a violation of antitrust laws).  Bryant's

28  allegations do not state a claim for an "unfair" business practice in violation of

14

EXHIBIT _____2_____

PAGE _____33_____

1   § 17200.

2         9.     "Fraudulent" Conduct

3         Bryant also argues that the same conduct complained of in connection with his

4   fraud claim also supports a § 17200 claim based on the prohibition against

5   "fraudulent" conduct.  This claim is not cognizable.  Bryant's fraud claim, explored

6   more fully in the following section, is based upon Mattel's alleged failure to explain to

7   him the terms of the Employment Agreement.  However, to allege a "fraudulent

8   business practice" under § 17200, a plaintiff must allege that "members of the public

9   are likely to be deceived." Comm. on Children's Television, Inc. v. Gen. Foods Corp.,

10   35 Cal.3d 197, 211 (1983).  Bryant has not alleged facts that would tend to establish

11   that the public might be deceived by Mattel's conduct regarding its employment

12   practices.

13   E.    Fraud Claim

14         The parties agree that Bryant's fraud claim is one for fraudulent concealment,

15   and that Bryant must allege all the elements set forth in Marketing West, Inc. v. Sanyo

16   Fisher Corp., 6 Cal.App.4th 603, 612-13 (1992):  (1) Mattel must have concealed or

17   suppressed a material fact; (2) Mattel must have been under a duty to disclose the

18   fact to Bryant; (3) Mattel must have intentionally concealed or suppressed the fact with

19   the intent to defraud Bryant; (4) Bryant must have been unaware of the fact and would

20   not have acted as he did if he had known of the concealed or suppressed fact; and (5)

21   as a result of the concealment or suppression of the fact, Bryant must have sustained

22   damage.  Bryant alleges that "Mattel required [him] to execute the [Employment]

23   Agreement without disclosing to him its true import and terms."  Counterclaims ¶ 56.

24   Bryant's claim is, in essence, that Mattel failed to inform him of the potential legal

25   effect the Agreement might have; in other words, Bryant claims that Mattel failed to

26   fully explain the Agreement to him.  This does not support a fraudulent concealment

27   claim.

28         Bryant argues, based on Marketing West, that because Mattel chose to

15

EXHIBIT _____ 2

PAGE _____ 34

Received:   7/18/06  4:47PM·                    RightFAX -> JetFax M??0;  Page 17
RightFAX              7/1 /2006 4:37    PAGE 017/019   Fax Server

1   respond to his inquiries, Mattel was under a duty to disclose material facts.  Under

2   Marketing West, where a party is "under no duty to speak" but nevertheless

3   "undertakes to do so, either voluntarily or in response to inquiries, he is bound not only

4   to state truly what he tells but also not to suppress or conceal any facts within his

5   knowledge which materially qualify those stated." Marketing West, 6 Cal.App.4th at

6   613 (citing Rogers v. Warden, 20 Cal.2d 286, 289 (1942)) (internal quotation marks

7   omitted).  In other words, one who speaks "must make a full and fair disclosure." Id.

8        Bryant makes no allegations that suggest that anyone at Mattel falls into this

9   category.  He alleges that he was "presented with the form Agreement by Mattel," and

10   that "he was told that his execution of the Agreement was a condition of his

11   employment."  Counterclaims ¶ 26.  He then alleges that "[t]he terms of the Agreement

12   were not explained to him." Id.  This is not the situation discussed in Marketing West

13   which, not surprisingly, prohibits a party from disclosing only that part of the truth that

14   favors it.  Here, Bryant's allegations complain that Mattel did not disclose anything

15   regarding the Employment Agreement.

16   F.    **Rescission**

17        Bryant asserts that rescission is proper because (1) the Agreement was

18   obtained through fraud; (2) Mattel required Bryant to execute the document as a

19   condition of employment, which resulted in duress; and (3) Mattel did not explain the

20   terms of the Agreement to Bryant, did not give him sufficient time to review it, and did

21   not permit or encourage him to seek legal counsel regarding the Agreement.

22        Bryant failed to state a fraud claim; therefore, rescission based on his fraud

23   claim would be improper.

24        Bryant's allegations do not meet the standard for duress, and Mattel's failure to

25   encourage him to seek legal counsel also does not require rescission of the

26   Employment Agreement.  See Robison v. City of Manteca, 78 Cal.App.4th 452, 457

27   (2000).  Additionally, although Bryant argues that he was not "given a meaningful

28   opportunity to review the Agreement at the time he executed it," he does not allege

EXHIBIT ___2___

PAGE ___35___

Received:   7/18/06   4:47PM·                    RightFAX -> JetFax M⁻³0;   Page 18
RightFAX                7/_ /2006 4:37   PAGE 018/019   Fax Server

1    that he asked for, and was refused, sufficient time to actually read the Agreement with

2    which he was presented.

3    G.    **Declaratory Relief**

4          Finally, in his fourth counterclaim, Bryant seeks declaratory judgment that

5    Mattel's conduct in requiring Bryant and other employees to execute the Employment

6    Agreement constitutes unfair competition and unfair business practices in violation of

7    Cal. Bus. & Prof. Code §§ 17200 and 16600.  This claim for declaratory relief fails

8    because the underlying § 17200 fails.

9          Bryant also seeks a declaration that the Employment Agreement is unlawful

10   and unenforceable as to him and as to other current and former employees of Mattel.

11   See Bryant's Counterclaims ¶¶ 61-65.  As discussed previously, Bryant has no

12   standing to assert claims on behalf of anyone other than himself.  As discussed

13   throughout this Order, Bryant has not sufficiently alleged that the Employment

14   Agreement is unlawful or unenforceable as to him.

15   H.    **Ruling on Motion to Dismiss (04-09059)**

16         The Motion to Dismiss is **GRANTED** in its entirety.  Bryant requested in his

17   Opposition for an opportunity to amend his counterclaims.  Therefore, the Court

18   dismisses Bryant's counterclaims without prejudice.  Bryant may file Amended

19   Counterclaims that conform with this Order within ten days of the entry of this Order.

20                                **IV. Conclusion**

21         For the reasons set forth above, the Court **GRANTS** the Motion to Dismiss in

22   04-09049 and **DISMISSES WITHOUT PREJUDICE** Bryant's action for declaratory

23   relief.  The Court also **GRANTS** the Motion to Dismiss in 04-09059, and **DISMISSES**

24   **WITHOUT PREJUDICE** Bryant's counterclaims.  Bryant is granted ten days' leave to

25   amend the counterclaims in conformity with this Order.

26

27

28

EXHIBIT ___ 2

PAGE ___ 36

Received:   7/18/06   4:47PM·                RightFAX -> JetFax ''20;   Pago 19
RightFAX                 7/  /2006 4:37    PAGE 019/019    Fax Server

1        Although this Order dismisses the Complaint in 04-09049, any future filings in

2   the consolidated action shall continue to be filed under 04-09049 in conformity with

3   the Court's consolidation order.

4        IT IS SO ORDERED.

5   DATE:   7 - 17 - 0�7

6

7                              STEPHEN G. LARSON
                               UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT    2

PAGE    37

EXHIBIT 3



COPY
LODGED

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2     John B. Quinn (Bar No. 090378)
      johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
      865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
7   Facsimile: (213) 443-3100

8   Attorneys for Plaintiff Mattel, Inc.

9

FILED
CLERK, U.S. DISTRICT COURT

OCT - 9 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION   BY DEPUTY

10               UNITED STATES DISTRICT COURT

11               CENTRAL DISTRICT OF CALIFORNIA

12                      EASTERN DIVISION

13  CARTER BRYANT, an              CASE NO. CV 04-9049 SGL (RNBx)
    individual,
14                                 Consolidated with Case Nos. CV 04-09059
                                   and CV 05-02727
15          Plaintiff,
                                   Hon. Stephen G. Larson
16      vs.
                                   STIPULATION AND [PROPOSED]
17  MATTEL, INC., a Delaware       ORDER REGARDING CARTER
    corporation,                   BRYANT'S AMENDED REPLY TO
18                                 MATTEL'S COUNTERCLAIMS
            Defendant.
19                                 Phase 1
    AND CONSOLIDATED               Discovery Cut-Off:   January 14, 2008
20  ACTIONS                        Pre-Trial Conference: April 7, 2008
                                   Trial Date:          April 29, 2008
21
                                   Phase 2
22                                 Discovery Cut-Off:    March 3, 2008
                                   Pre-Trial Conference: June 2, 2008
23                                 Trial Date:           July 1, 2008

24

25

26

27

28

404050.01
07209/2211520.1                        10-5

                                        STIPULATION AND [PROPOSED] ORDER

                              EXHIBIT _____3_____

                              PAGE _____38_____

## Stipulation

1

2    WHEREAS, on July 12, 2007, Mattel, Inc. ("Mattel") filed its Second

3    Amended Answer in Case No. 05-2727 and Counterclaims ("Counterclaims"),

4    WHEREAS, on August 13, 2007, Carter Bryant ("Bryant") filed his reply to

5    Mattel's Counterclaims and asserted twenty-two affirmative defenses,

6    WHEREAS, Mattel contended that Bryant's affirmative defenses were

7    inadequately pleaded and that certain of the defenses were insufficient as a matter of

8    law, and the parties met and conferred regarding a motion Mattel contemplated

9    filing to strike the defenses on those grounds,

10   WHEREAS, Bryant agreed to voluntarily amend his reply to eliminate some

11   of the disputes between the parties and, pursuant to a Stipulation and Order dated

12   September 6, 2007, filed an amended reply to Mattel's Counterclaims on September

13   12, 2007, asserting seventeen affirmative defenses,

14   WHEREAS, Mattel believes that certain of Bryant's defenses remain

15   inadequately pleaded and that certain of the defenses remain insufficient as a matter

16   of law, and the parties have again met and conferred regarding Mattel's

17   contemplated motion to strike the defenses on these grounds, and

18   WHEREAS, Bryant is willing to voluntarily amend his amended reply again

19   in an attempt to eliminate further disputes between the parties, including by

20   withdrawing his Ninth, Tenth, and Eleventh affirmative defenses of "failure of

21   contract," "duress/unconscionability" and "alleged duties contrary to law,"

22   respectively,

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

404060.01
07209/2211520.1

-1-

EXHIBIT ___3___

PAGE ___39___

1  ///

2       NOW, THEREFORE, Mattel and Bryant hereby stipulate, by and through

3  their counsel of record and subject to the Court's approval, that Bryant will file a

4  Second Amended Reply to Mattel's Counterclaims on or before October 15, 2007.

5  Mattel may then file a motion to strike Bryant's Second Amended Reply pursuant to

6  the time limits set forth in Fed. R. Civ. P. 12(f) as may be appropriate.

7       IT IS SO STIPULATED.

8

9  DATED:  October 4, 2007          QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
10

11                                   By
12                                      B. Dylan Proctor
13                                      Attorneys for Mattel, Inc.

14

15  DATED:  October 4, 2007          KEKER & VAN NEST, LLP

16

17                                   By
18                                      John Trinidad
                                        Attorneys for Carter Bryant
19

20

21       IT IS SO ORDERED.

22

23  DATED:  October ___, 2007     By     STEPHEN G. LARSON
                                         UNITED STATES DISTRICT JUDGE
24                                      Hon. Stephen G. Larson
                                        United States District Court Judge
25

26

27

28

404050.01
07209/2211520.1                        -2-

                                        STIPULATION AND [PROPOSED] ORDER

                                   EXHIBIT _____ 3

                                   PAGE _____ 40