**Barbara Malcolm**                                    Carter H. Bryant

**From:**        Kerri Legg
**Sent:**        Friday, September 15, 2000 12:52 PM
**To:**          Barbara Malcolm
**Subject:**     New Vendor

Barbara,

Please set up the following as a new vendor. I do not have the SS# yet, but I will forward it to you as soon as I receive it.

Carter H. Bryant

phone:      REDACTED

Regards,
Kerri

"BRYANT"

EX. NO. 306
PAGES 7,18,06
A. PRAXMARER, CSR • WIT: LARIAN

306

MGA001291

EXHIBIT ___89___

PAGE ___720___

CONFIDENTIAL
ATTORNEY'S EYES ONLY

1

**EXHIBIT 90**

**EXIT INTERVIEW REPORT**

MAT-3728

| NAME | BADGE NUMBER | EMPLOYMENT DATE | SEPARATION DATE |
|---|---|---|---|
| CARTER BRYANT | 90202 | | 10/19/00 |

DEPARTMENT

SUPERVISOR NAME: Heather Fonseca / Ann Driskill

POSITION TITLE

☐ EXEMPT    ☐ NON-EXEMPT

**DOES EMPLOYEE HAVE NEW JOB?** ☑ YES ☐ NO
IF YES, GIVE JOB TITLE AND NEW EMPLOYER: Business owner - illustration / product design ☐ NO INFORMATION

WHO INITIATED THE CONTACT LEADING TO THE NEW JOB? ☐ EMPLOYEE ☐ NEW COMPANY OR ITS AGENTS ☐ NO INFORMATION
WHAT KIND OF A MOVE IS IT IN RESPONSIBILITY? ☐ UP ☐ LATERAL ☐ DOWN ☐ NO INFORMATION

WHAT KIND OF A MOVE IS IT IN SALARY? ☐ LESS ☐ SAME ☐ MORE BY $ _____ PER WEEK ☐ NO INFORMATION

**WORK ITSELF**
PRINCIPAL DUTIES IN MATTEL. UTILIZED YOUR TRAINING, SKILLS, EXPERIENCE? CHALLENGING? DID YOU FEEL YOU WERE A CONTRIBUTING MEMBER OF THE TEAM? STIMULATING WORK CLIMATE? FIT WITH CAREER PLANS?

Felt challenged; exciting.
loved job

**SALARY**
FAIR FOR WORK DONE? INCREASES KEYED TO PERFORMANCE?

Yes.

**ADVANCEMENT**
HOW DID YOU FEEL ABOUT YOUR PERSONAL CHANCES FOR PROMOTION AT MATTEL? HOW DID YOU FEEL ABOUT ADVANCEMENT AT MATTEL IN GENERAL? DID YOU EVER FEEL OVERLOOKED?

Really good.

**SUPERVISION**
HOW DID YOU FEEL ABOUT YOUR SUPERVISOR'S PERSONAL RELATIONSHIP TO YOU? ABOUT SUPERVISOR'S TECHNICAL KNOWLEDGE? LEADERSHIP ABILITY? DID SUPERVISOR REVIEW YOUR PERFORMANCE? HELP AND ENCOURAGE YOU? OVER OR UNDERSUPERVISE YOU? DELEGATE ENOUGH?

Ann - capable in her position. Not greatest job skills. design direction-very good.

COMMENTS AND ATTITUD! (Questions to be used as guidelines only and do not reflect any particular order of asking) From the Exit Interview, briefly report the terminating employee's comments, attitudes and suggestions regarding each of the areas listed.

Newcomb
EXHIBIT NO. 1506
1/23/08
Wendy S. Schreiber

DISTRIBUTION/RETENTION: ORIGINAL-Human Resources Management (Official Copy-3 Years)

CONFIDENTIAL-
ATTORNEYS' EYES ONLY

M 0001654

EXHIBIT ____90____
PAGE ____721____

**COMMENTS AND ATTITUDES (Cont'd)**

**TRAINING AND DEVELOPMENT**

DID YOU HAVE ANY OPPORTUNITY TO ATTEND TRAINING COURSES OR SEMINARS? COMPANY, OUTSIDE, OR BOTH? JOB COACHING OR SPECIAL ASSIGNMENTS TO ENHANCE SKILLS? WERE DEVELOPMENT EFFORTS SUFFICIENT?

N/A

**GENERAL**

MATTEL IN GENERAL AS A PLACE TO WORK? MATTEL'S MAJOR STRENGTHS AND WEAKNESSES? HOW DID YOU FEEL ABOUT YOUR MATTEL ASSOCIATES? WHAT CHANGES OR IMPROVEMENTS WOULD YOU RECOMMEND TO MAKE MATTEL A MORE SATISFYING AND REWARDING PLACE IN WHICH TO WORK? OTHER COMMENTS?

Really good. Has its problems like everywhere.
One of the best experiences he's had.

**SUMMARY**

WAS SEPARATION ☑ EMPLOYEE INITIATED OR ☐ COMPANY INITIATED? (SUMMARIZE THE MAJOR REASONS FOR THE SEPARATION)

WHAT ACTIONS OF THE COMPANY MIGHT HAVE PREVENTED THE SEPARATION?

Not real sure at this point. Opportunity
arose — had to take it.

INTERVIEW COMMENTS AND SUGGESTIONS FOR FOLLOW-UP:

INTERVIEWER'S NAME

INTERVIEW DATE  10/19/00

DATE FORM COMPLETED

CONFIDENTIAL-
ATTORNEYS' EYES ONLY

M 0001655

EXHIBIT _____ 90

PAGE _____ 122

**EXHIBIT 91**

COPY

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 90378)
2    Michael T. Zeller (Bar No. 196417)
   865 South Figueroa Street, 10th Floor
3  Los Angeles, California 90017
   Telephone:   (213) 443-3000
4  Facsimile:   (213) 443-3100

5  Attorneys for Plaintiff
   Mattel, Inc.

6

7

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

APR 27 2004

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
          SUE GABB

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       FOR THE COUNTY OF LOS ANGELES

10

11  MATTEL, INC., a Delaware corporation,        )   CASE NO.    BC314398
                                                 )
12                      Plaintiff,               )
                                                 )
13                                               )   COMPLAINT FOR:
                                                 )
14              v.                               )   (1)  BREACH OF CONTRACT;
                                                 )   (2)  BREACH OF FIDUCIARY
15                                               )        DUTY;
    CARTER BRYANT, an individual; and            )   (3)  BREACH OF DUTY OF
16  DOES 1 through 10, inclusive,                )        LOYALTY;
                                                 )   (4)  UNJUST ENRICHMENT; AND
17                      Defendants.              )   (5)  CONVERSION
                                                 )
18                                               )
                                                 )
19  _____ )

20

21

22

23

24

25

26

27

28

EXHIBIT ____91____

PAGE ____723____

'209/579342.1

COMPLAINT

Plaintiff Mattel, Inc. ("Mattel") brings this action against defendants Carter
Bryant ("Bryant") and Does 1 through 10 (all defendants being collectively referred to as
"defendants") and alleges as follows:

Parties

1.      Mattel is a corporation organized and existing under the laws of the
State of Delaware and has its principal place of business in El Segundo, California.

2.      Mattel is informed and believes, and on that basis alleges, that defendant
Bryant is an individual currently residing in Springfield, Missouri.

3.      The true names and capacities of defendants sued herein as Does 1
through 10, inclusive, are unknown to Mattel, which therefore sues said defendants by such
fictitious names. Mattel will amend this Complaint to allege their true names and capacities
when the same are ascertained.

4.      Mattel is informed and believes, and on that basis alleges, that at all
times relevant herein, defendants, and each of them, were acting in concert and active
participation with each other in committing the wrongful acts alleged herein, and were the
agents of each other, and in doing the things alleged herein, each defendant was acting
within the course and scope of his, her or its agency and was subject to and under the
supervision of, and was acting with the knowledge of, his, her or its co-defendants.

Jurisdiction and Venue

5.      During the time of the acts complained of herein, Bryant was employed
by Mattel in, and was a resident of, Los Angeles County. Bryant's contracts with Mattel that
are at issue in this action were executed, performed and breached by Bryant in Los Angeles
County. In addition, defendants committed the tortious conduct alleged herein while
physically located in Los Angeles County, and Mattel felt the effects of Bryant's breach and

7209/579342.1

-2-

COMPLAINT

EXHIBIT __91__

PAGE __724__

1  defendants' other wrongful acts in Los Angeles County. Accordingly, this Court has
2  personal jurisdiction over defendants.

3       6.    Venue is proper pursuant to <u>Code of Civil Procedure</u> §§ 393 and 395(a),
4  as the causes of action arose in Los Angeles County, the contractual obligations at issue were
5  incurred, were to be performed and were breached by Bryant in Los Angeles County, and
6  Bryant does not currently reside in California.

7
8  Factual Background
9

10       7.    Mattel is a long standing and successful independent manufacturer and
11  marketer of toys, dolls, games and stuffed toys and animals. Mattel was founded in 1945 by
12  Elliot and Ruth Handler and Harold "Matt" Mattson. The name of the company was created
13  by incorporating the names of two of its founders, "MATT-son" and "EL-liot." Originating
14  from the Handlers' garage in Southern California, the company greatly expanded its
15  operations following World War II and soon began to thrive as its reputation for producing
16  high-quality toys spread. During the next several decades, Mattel became world famous for
17  producing high-quality products at reasonable prices. Today, some of Mattel's most famous
18  brands include BARBIE, HOT WHEELS, MATCHBOX and FISHER-PRICE.

19       8.    Critical to Mattel's success, and to the livelihood of its employees, is
20  Mattel's ability to design and develop new products. Mattel invests many millions of dollars
21  in product design and development annually, and it introduces hundreds of new products
22  each year. In El Segundo, California alone, Mattel maintains a 180,000 square-foot design
23  center that houses more than 850 designers, sculptors, painters and other artists, whom
24  Mattel pays to work exclusively and full-time to create the products that Mattel sells and on
25  which Mattel's business depends.

26       9.    Defendant Bryant was employed by Mattel from September 1995
27  through April 1998, and then again from January 1999 through October 2000, as a product
28  designer at Mattel's design center in El Segundo, California.

7209/579342.1

-3-

COMPLAINT

EXHIBIT ___ 91

PAGE ___ 725

1    10.    On January 4, 1999, upon starting his second term of employment by
2  Mattel, and as a condition of and in consideration for his employment, Bryant executed an
3  Employee Confidential Information and Inventions Agreement (the "Employee
4  Agreement").  Among other things, Bryant agreed that he would not, without Mattel's
5  express written consent, "engage in any employment or business other than for [Mattel], or
6  invest in or assist (in any manner) any business competitive with the business or future
7  business plans of [Mattel]."  Bryant further acknowledged that he held a position of trust
8  with Mattel.   In addition, Bryant assigned to Mattel all rights, title and interest in
9  "inventions," including without limitation "designs," that he conceived or reduced to practice
10  during his employment by Mattel. A true and correct copy of Bryant's Employee Agreement
11  with Mattel is attached as Exhibit A.

12    11.    Also on January 4, 1999, Bryant executed Mattel's Conflict of Interest
13  Questionnaire (the "Conflict Questionnaire").  Among other things, Bryant certified in the
14  Conflict Questionnaire that, other than as disclosed, he had not worked for any competitor
15  of Mattel in the prior twelve months and had not engaged in any business venture or
16  transaction involving a Mattel competitor that could be construed as a conflict of interest.
17  Bryant specifically agreed that he would immediately notify his supervisor of any change
18  in his situation that would cause him to change any of the foregoing certifications.  The only
19  conflict disclosure that Bryant made on the Conflict Questionnaire (or at any time
20  subsequently) concerned freelance work that is unrelated to the conduct alleged herein.  A
21  true and correct copy of the Conflict Questionnaire executed by Bryant is attached as
22  Exhibit B.

23    12.    In late November 2003, Mattel learned that Bryant had secretly aided,
24  assisted and worked for a Mattel competitor, including without limitation by entering into
25  an agreement with the competitor, during the time Bryant was employed by Mattel pursuant
26  to the above-referenced agreements and was being paid by Mattel as a product designer.
27  Bryant's agreement with the competitor obligated Bryant to provide product design services
28  to the competitor on a "top priority" basis.  Bryant's agreement also provided, among other

07209/579342.1

-4-

COMPLAINT

EXHIBIT ___91___

PAGE ___726___

1  things, that Bryant would receive royalties and other consideration for sales of products on

2  which Bryant provided aid or assistance; that all work and services furnished by Bryant to

3  the competitor under the agreement purportedly would be considered "works for hire"; and

4  that all intellectual property rights to preexisting work by Bryant purportedly would be

5  assigned to the competitor.  In addition, while Bryant was employed by Mattel, Bryant and

6  the other defendants converted, misappropriated and misused Mattel property and resources

7  for the benefit of, and to aid and assist, Bryant personally and Mattel's competitor.

8      13.   During the time that he was employed by Mattel and thereafter, Bryant

9  concealed these actions from Mattel, including without limitation by failing to notify his

10  supervisor of his conflict of interest regarding the competitor and by making affirmative

11  misrepresentations to Mattel management upon his departure from Mattel.  Because of

12  Bryant's acts of concealment and his misrepresentations to Mattel, Mattel had no reason to

13  suspect that Bryant had worked for the competitor while still employed by Mattel until late

14  November 2003, when Mattel received, through an unrelated legal action, a copy of Bryant's

15  agreement with the competitor and saw that the date of the agreement predated Bryant's

16  departure from Mattel.

17      14.   As a consequence, Bryant breached his contracts with Mattel and

18  violated his duty of loyalty and his fiduciary duties to Mattel; the other defendants have

19  unlawfully aided and abetted his violation of such duties; and each of the defendants has

20  been unjustly enriched and engaged in acts of conversion.

21

22                    FIRST CLAIM FOR RELIEF

23                       (Breach of Contract)

24

25      15.   Mattel repeats and realleges each and every allegation set forth in

26  paragraphs 1 through 14, above, as though fully set forth at length.

27      16.   Pursuant to his Mattel Employment Agreement, and for good and

28  valuable consideration, Bryant agreed that he would not, without Mattel's express written

                                    -5-
                                                        COMPLAINT

EXHIBIT    91

PAGE    727

1    consent, engage in any employment or business other than for Mattel or assist in any manner

2    any business competitive with the business or future business plans of Mattel during his

3    employment with Mattel. Pursuant to his Mattel Employment Agreement, Bryant further

4    assigned to Mattel all right, title and interest in "inventions," including without limitation

5    "designs," that he conceived or reduced to practice during his employment by Mattel. In

6    addition, pursuant to the Conflict Questionnaire, Bryant certified that, other than as

7    disclosed, he had not worked for any competitor of Mattel and had not engaged in any

8    business venture or transaction involving a Mattel competitor that could be construed as a

9    conflict of interest. Bryant further promised that he would notify his superior immediately

10   of any change in his situation that would cause him to change any of the foregoing

11   certifications or representations.

12        17.   The Employment Agreement and the Conflict Questionnaire are valid,

13   enforceable contracts, and Mattel has performed each and every term and condition of the

14   Employment Agreement and Conflict Questionnaire required to be performed by Mattel.

15        18.   Bryant materially breached the foregoing contracts with Mattel, in that,

16   among other things, he secretly aided, assisted and worked for a Mattel competitor during

17   his employment with Mattel, without the express written consent of Mattel.

18        19.   As a consequence of Bryant's breach, Mattel has suffered and will in

19   the future continue to suffer damages in an amount to be proven at trial. Such damages

20   include, without limitation, the amounts paid by the competitor to Bryant during his Mattel

21   employment; the amounts paid by the competitor to Bryant as a result of the work he

22   performed for the competitor during his Mattel employment; the amount that Mattel paid

23   Bryant during the time he wrongfully worked for the competitor; the value of information

24   and intellectual property owned by Mattel which Bryant provided to the competitor; the

25   value of the benefits the competitor obtained from Bryant during the time he was employed

26   by Mattel; and the value of the benefits the competitor obtained from Bryant as a result of

27   the work he performed for the competitor during his Mattel employment.

28

7209/579342.1

-6-

EXHIBIT _____ 91

PAGE _____ 928

20.     Furthermore, Bryant's conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law.  Bryant specifically acknowledged in his Employment Agreement that his breach of the Agreement "likely will cause irreparable harm" to Mattel and that Mattel "will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies."  Accordingly, Mattel is entitled to orders mandating Bryant's specific performance of his contracts with Mattel and restraining Bryant from further breach.

## SECOND CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

21.     Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 20, above, as though fully set forth at length.

22.     Bryant held a position of trust and confidence with Mattel.  In his position, Bryant had access to and was entrusted with Mattel's proprietary and confidential information, supervised the work of others, exercised discretion and worked independently in many of his job assignments and duties.  In his position, Bryant also represented Mattel in its dealings with third parties and, in his actions in the course and scope of his employment with Mattel, was an agent of Mattel.  Bryant confirmed his relationship of trust with Mattel in the Employee Agreement.  Bryant thus owed Mattel a fiduciary duty that included, but was not limited to, an obligation not to take any action that would be contrary to Mattel's best interests or that would deprive Mattel of any opportunities, profit or advantage which Bryant might bring to Mattel.

23.     Bryant breached his fiduciary duty to Mattel in that, while employed by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including without limitation by entering into an agreement with a Mattel competitor.  As alleged

7209/579342.1

-7-

COMPLAINT

EXHIBIT ___91___

PAGE ___729___

1  above, Bryant also breached the aforementioned duty by using Mattel property and resources
2  for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3           24.     The other defendants, acting with full knowledge of Bryant's obligations
4  to Mattel, aided and abetted Bryant in such conduct.

5           25.     As a direct and proximate result of defendants' wrongful conduct,
6  Mattel has incurred damages in an amount to be determined at trial.

7           26.     Defendants acted with malice, fraud and oppression, and in conscious
8  disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages
9  against defendants in an amount to be determined at trial.

10          27.     Furthermore, defendants' conduct has caused, and unless enjoined will
11  continue to cause, irreparable injury to Mattel that cannot be adequately compensated by
12  money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel
13  is entitled to an order restraining further breach of Bryant's fiduciary duty to Mattel and/or
14  restraining defendants from continuing to benefit from such breach.

15

16                         THIRD CLAIM FOR RELIEF

17                          (Breach of Duty of Loyalty)

18

19          28.     Mattel repeats and realleges each and every allegation set forth in
20  paragraphs 1 through 27, above, as though fully set forth at length.

21          29.     As an employee of Mattel, Bryant owed a duty of undivided loyalty to
22  Mattel, his employer. Pursuant to this duty, Bryant could not compete with Mattel or assist
23  a competitor of Mattel during his employment with Mattel. Pursuant to this duty, Bryant
24  was required to always give preference to Mattel's business over his own, similar interests
25  during the course of his employment with Mattel.

26          30.     Bryant breached his duty of loyalty to Mattel in that, while employed
27  by Mattel, he secretly aided, assisted and worked for a competitor of Mattel, including
28  without limitation by entering into an agreement with a Mattel competitor. As alleged

07209/579342.1

-8-

EXHIBIT _ 91

PAGE _ 130

COMPLAINT

1    above, Bryant also breached the aforementioned duty by using Mattel property and resources
2    for the benefit of, and to aid and assist, himself personally and the competitor of Mattel.

3         31.    The other defendants, acting with full knowledge of Bryant's obligations
4    to Mattel, aided and abetted Bryant in such wrongful conduct.

5         32.    As a direct and proximate result of defendants' wrongful conduct,
6    Mattel has incurred damages in an amount to be determined at trial.

7         33.    Defendants acted with malice, fraud and oppression, and in conscious
8    disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages
9    against defendants in an amount to be determined at trial.

10        34.    Furthermore, defendants' conduct has caused, and unless enjoined will
11   continue to cause, irreparable injury to Mattel that cannot be adequately compensated by
12   money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel
13   is entitled to an order restraining further breach of Bryant's duty of loyalty to Mattel and/or
14   restraining defendants from continuing to benefit from such breach.

15

16                           FOURTH CLAIM FOR RELIEF

17                               (Unjust Enrichment)

18

19        35.    Mattel repeats and realleges each and every allegation set forth in
20   paragraphs 1 through 34, above, as though fully set forth at length.

21        36.    Defendants, by the aforementioned conduct, unfairly used and diverted
22   Mattel property, resources and opportunities for the benefit of, and to aid and assist,
23   themselves, all without authorization by or payment to Mattel for the same. Defendants have
24   been unjustly enriched as a result.

25        37.    Mattel is entitled to an award of all such amounts by which defendants
26   have been unjustly enriched in an amount to be determined at trial.

27

28

7209/579342.1

COMPLAINT

EXHIBIT _____ 91

PAGE _____ 731

38.     Defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages against defendants in an amount to be determined at trial.

39.     Furthermore, defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining defendants from any further unjust enrichment.

## FIFTH CLAIM FOR RELIEF

### (Conversion)

40.     Mattel repeats and realleges each and every allegation set forth in paragraphs 1 through 39, above, as though fully set forth at length.

41.     Mattel was entitled to, inter alia, Bryant's exclusive services and the exclusive ownership of his inventions as a Mattel product designer. However, Bryant provided such services, and purported to grant rights to such inventions, to a competitor during the time of his exclusive Mattel employment. All such services and the inventions and work product resulting from such services, including without limitation ideas, concepts, rights, designs, proprietary information, and other intellectual property and intangible property created by Bryant during the term of the aforesaid agreements, were the property of Mattel. Such services and property were provided by Bryant to others, including defendants, and used by them.

42.     Defendants wrongfully converted Mattel property and resources by asserting ownership thereto and by appropriating and using Mattel's property and resources for their own benefit and gain and for the benefit and gain of others, without the permission of Mattel.

7209/579342.1

-10-

COMPLAINT

EXHIBIT ___91___

PAGE ___132___

43.   As a direct and proximate result of defendants' wrongful conversion of Mattel's property and resources, Mattel has incurred damages. Mattel is entitled to recover compensatory damages against defendants in an amount to be determined at trial.

44.   Defendants acted with malice, fraud and oppression, and in conscious disregard of Mattel's rights. Accordingly, Mattel is entitled to an award of punitive damages against defendants in an amount to be determined at trial.

45.   Furthermore, defendants' conduct has caused, and unless enjoined will continue to cause, irreparable injury to Mattel that cannot be adequately compensated by money damages and for which Mattel has no adequate remedy at law. Accordingly, Mattel is entitled to an order restraining defendants from further conversion of Mattel property and resources and/or restraining defendants from continuing to benefit from such conversion.

## PRAYER FOR RELIEF

WHEREFORE, Mattel hereby respectfully requests that this Court:

A.   Award Mattel its damages;

B.   Order defendants to disgorge to Mattel all payments, revenue, profits, monies, royalties and any other benefits derived or obtained by defendants as a result of the conduct described herein;

C.   Order specific performance by Bryant to comply with and satisfy Bryant's contractual obligations to Mattel;

D.   Enter an injunction restraining defendants, and all those acting in concert or participation with them, from engaging in further wrongful conduct and/or from continuing to benefit from their wrongful conduct;

E.   Order defendants to pay Mattel the full cost of this action and Mattel's reasonable attorneys' fees;

F.   Award Mattel punitive damages in an amount sufficient to punish defendants and deter such misconduct in the future; and

-11-

COMPLAINT

EXHIBIT ___9|___

PAGE ___733___

G.    Award such other and further relief as this Court deems just and proper.

DATED:  April 27, 2004          QUINN EMANUEL URQUHART OLIVER &
                                HEDGES, LLP


                          By _~Michael~T.~Zeller~_
                                Michael T. Zeller
                                Attorneys for Plaintiff
                                Mattel, Inc.

07209/579342.1

COMPLAINT

EXHIBIT ___ 91 ___

PAGE ___ 134 ___

**Exhibit A**

EXHIBIT _____ 91

PAGE _____ 135

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: (i) I will maintain the confidentiality of the Company's trade secrets; (ii) I will use those trade secrets for the exclusive benefit of the Company; (iii) inventions that I create will be owned by the Company; (iv) my prior and continuing activities separate from the Company will not conflict with the Company's development or its proprietary rights; and (v) when I and if my employment with the Company terminates I will not use my prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

## 1. Provisions Related to Trade Secrets

(a) I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information (as defined below), including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

(b) As used in this Agreement, "Proprietary Information" means any information (including formula, pattern, compilation, device, method, technique or process) that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

(c) I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

(d) Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable and other materials (including all copies) in my possession or under my control containing or disclosing Proprietary Information.

## 2. Ownership of Inventions

(a) I agree to communicate to the Company as promptly and fully as practicable all Inventions (as defined below) conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such Inventions, and all my right, title and interest in any patent, copyright, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

(b) As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

(c) Any provision in this agreement requiring me to assign my rights in any Invention does not apply to an Invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an Invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those Inventions that either (1) relate at the time of conception or reduction to practice of the Invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an Invention qualifies under Section 2870.

(d) I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

## 3. Conflicts with Other Activities

(a) My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist (in any manner) any business competitive with the business or future business plans of the Company.

## 4. Miscellaneous

(a) My obligation under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

(b) Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision is held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

(c) My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the the Company.

(d) I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

(e) Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

(f) This agreement will be governed by and interpreted in accordance with the laws of the State of California.

(g) This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature _____

Employee Name (print)   CARTER H. BRYANT

Date   01/04/99

MATTEL, INC.
By _____
Signature

Name of Witness (print)   TERESA NEWCOMB

EXHIBIT A PAGE 13

EXHIBIT _____ 91

PAGE _____ 736

**Exhibit B**

EXHIBIT ___41___

PAGE ___137___

# CONFLICT OF INTEREST QUESTIONNAIRE

Name (Last, First, M.I.) *BRYANT, CARTER H.*     Job Title *PROJECT DESIGNER*     Department

Instructions: The purpose of this questionnaire is to confirm the propriety of relations between our key employees and our suppliers and competitors. Please read the definitions below and Mattel's policies concerning Conflicts of Interest. Then answer the questions by checking the correct answer. Base your answers on personal knowledge. There is no need to make inquiries or seek additional information since lack of knowledge of a situation indicates that there is no conflict of interest. Your answers to questions 1 through 8 should cover the past twelve months and the term "you" should include members of your immediate family.

**Mattel Supplier** is interpreted broadly for purposes of this questionnaire. A Mattel supplier is any person, partnership, trust, corporation, or other enterprise which during the past twelve months has done business or currently contemplates doing business with Mattel or any Mattel subsidiary.

**Mattel Competitor** is interpreted broadly for purposes of this questionnaire. A Mattel competitor is any person, partnership, trust, corporation, or other enterprise which has done business or contemplates doing business in any field that is in competition with Mattel or any Mattel subsidiary.

**Interest** means direct or indirect ownership of any stock, bond, option or right to purchase any security, share in profits, investment, partnership interest or other profit participation or equity interest whatsoever. Interest also means any agreement to perform services for or consult with or to deliver materials to or to receive compensation of any kind from any supplier or competitor. You may disregard mutual investment trusts and publicly-owned corporations whose securities are traded publicly, in which you own not more than $25,000 in market value, but not to exceed 10% of an individual's net worth.

**Recipient of any commission, etc.,** means receipt of anything of value, in cash or in kind, over $60 on any one occasion or over $300 total during the past twelve months.

○ YES  ● NO  1. Have you owned, directly or indirectly, any interest in a Mattel supplier?

○ YES  ● NO  2. Have you owned, directly or indirectly, any interest in a Mattel competitor?

○ YES  ● NO  3. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel supplier?

● YES  ○ NO  4. Have you been the recipient of any commission, fee, loan, trip, gift, benefit or anything else of value that is derived in any way from a Mattel competitor?

● YES  ○ NO  5. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel competitor in any capacity?

○ YES  ● NO  6. Have you or any relative of yours by blood or marriage been a director, officer, consultant, agent, employee, or representative of or acted for any Mattel supplier in any capacity?

○ YES  ● NO  7. Have you engaged in any activity including the acquisition or ownership of any interest, for personal profit, not expressly within the scope of the foregoing with respect to any supplier or competitor?

○ YES  ● NO  8. Excepting normal everyday transactions (purchase of toys, etc.) have you engaged in any business venture or transaction involving a Mattel supplier or competitor or engaged in any activity which could be objectively construed as being a conflict of interest or allegiance?

○ YES  ● NO  9. Are you aware of any activity of any employee which you believe could be construed as a potential conflict of interest with Mattel?

If your answer to any of the above questions is "yes," please explain in the space below:

*4, 5, freelance design & artwork in 1998.*
*from approx. 5/98 - 11/98 for the Ashton Drake*
*galleries*

I certify that I have read Mattel's policies concerning Conflict of Interest and the answers to the above questions are true. I understand that failure to answer this questionnaire fully and truthfully constitutes grounds for immediate termination of my employment. I agree not to divulge any company information to unauthorized recipients. I also agree to notify my superior immediately of any changes in my situation that would cause me to answer any of the above questions differently. I further certify that, to the best of my knowledge, neither I nor any member of my immediate family is or has been engaged in any capacity which creates a Conflict of Interest.

Signature *Carter J Bryant*          Date *01/04/98*

## EXHIBIT B PAGE 14

EXHIBIT _____ 91

PAGE _____ 138

**EXHIBIT 92**

CONFORMED COPY

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
2 | Michael T. Zeller (Bar No. 196417)
Duane R. Lyons (Bar No. 125091)
3 | Timothy L. Alger (Bar No. 160303)
865 South Figueroa Street, 10th Floor
4 | Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
5 | Facsimile:   (213) 443-3100

6 | MUNGER, TOLLES & OLSON LLP
Daniel P. Collins (Bar No. 139164)
7 | 355 South Grand Avenue, 35th Floor
Los Angeles, California 90071-1560
8 | Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702
9
Attorneys for Defendants
10 | Mattel, Inc.

11

12 |                UNITED STATES DISTRICT COURT

13 |               CENTRAL DISTRICT OF CALIFORNIA

14

15 | MGA ENTERTAINMENT, INC., a          )   Case No. CV 05-02727 NM (RNBx)
California corporation,               )
16 |                                     )
              Plaintiff,              )   DEFENDANT MATTEL, INC.'S
17 |                                     )   ANSWER TO COMPLAINT; AND
       v.                            )   DEMAND FOR JURY TRIAL
18 | MATTEL, INC., a Delaware            )
corporation, and DOES 1-10,          )
19 |                                     )
              Defendants.            )
20 |                                     )

21

22

23

24

25

26

27

28

/655008.1

FILED

EXHIBIT __92__  ANSWER

PAGE __739__

Defendant Mattel, Inc. ("Mattel") answers the Complaint as follows:

### Preliminary Statement

The Complaint in this case contravenes Rule 8(a) of the Federal Rules of Civil Procedure in multiple respects. For example, in many places, the Complaint improperly mixes factual averments with argumentative rhetoric. The Complaint also includes a selective recitation of alleged historical facts and "rumor," much of which is both irrelevant and inflammatory in tone and content. In addition, many of the allegations of the Complaint are overly broad, vague or conclusory and include terms which are undefined and which are susceptible to different meanings. Accordingly, by way of a general response, all allegations are denied unless specifically admitted, and any factual averment admitted is admitted only as to the specific facts and not as to any conclusions, characterizations, implications or speculations which are contained in the averment or in the Complaint as a whole. These comments and objections are incorporated, to the extent appropriate, into each numbered paragraph of this Answer.

Mattel further submits that the use of the headings throughout the Complaint is improper, and therefore no response to them is required. In the event that a response is required, Mattel denies those allegations.

The Complaint also contains many purported photographs of various items, and it uses one or more headings purporting to describe, either individually or in groups, these various photographs. The images of these photographs contained in the Complaint are all relatively small and some are of less than optimal quality, making it difficult to evaluate the adequacy of the photographs or their fairness and accuracy in depicting what they purport to represent. The Complaint also does not describe the circumstances or time frame in which these photographs were taken, and in many cases does not identify, or does not sufficiently or properly identify, the item depicted in the photographs. All of these

/655008.1

-2-

EXHIBIT 92    ANSWER

PAGE 140

1  factors, as well as the use of these photographs and headings out of context, or
2  with an insufficient context, impair the ability of Mattel to fully respond to these
3  photographs and headings, or to any purported allegations involving, or relying
4  upon, the use of such photographs and accompanying headings. By way of a
5  general response, Mattel therefore does not admit the authenticity of any
6  photograph, or the accuracy or adequacy of any heading, nor does it admit any
7  allegation or inference that is based on, or purports to be based on, any photograph
8  or accompanying heading in the Complaint. Mattel reserves the right to challenge
9  the authenticity of any photograph and the accuracy or adequacy of any heading
10  (either as included in the Complaint or in the context of additional material not
11  included). Further, with reference to all photographs and accompanying headings,
12  or any averments based on the Complaint's use of such photographs and headings,
13  which might be offered into evidence, Mattel specifically reserves its right to
14  object to any use of such photographs, headings, and averments, or the Complaint
15  as a whole or in part, in evidence for any purpose whatsoever.

16       To the extent that Mattel has endeavored to answer any particular allegation
17  containing any such photographs and headings, any admission concerning the item
18  purported to be depicted in such photograph, or described in such headings, shall
19  not constitute an admission that the photograph is authentic, adequate, or
20  admissible, nor that any heading is accurate, adequate, or admissible. All such
21  items purportedly depicted in such photographs, and described in such headings,
22  "speak for themselves". Accordingly, to the extent that any such referenced
23  materials are deemed allegations against Mattel, they are denied.
24
25  <u>Responses</u>
26       1.    Answering paragraph 1 of the Complaint, Mattel admits that
27  plaintiff MGA Entertainment, Inc. ("plaintiff" or "MGA") is a California
28  corporation with a principal place of business in Van Nuys, California.

-3-

EXHIBIT 92 ANSWER

PAGE 141

1          2.      Answering paragraph 2 of the Complaint, Mattel admits that

2    Mattel is a Delaware corporation with a principal place of business in El Segundo,

3    California.

4          3.      Answering paragraph 3 of the Complaint, Mattel denies that

5    there has been wrongful conduct on its part and states that it is without knowledge

6    or information sufficient to form a belief as to the truth or falsity of the remaining

7    allegations set forth therein and, on that basis, denies them.

8          4.      Answering paragraph 4 of the Complaint, Mattel admits that

9    plaintiff purports to assert claims under the Lanham Act, 15 U.S.C. §§ 1125(a) and

10   (c), California Business and Professions Code §§ 17200 et seq., California

11   Business and Professions Code § 14330 and California common law, denies that

12   plaintiff is entitled to any relief thereunder and denies the truth of the remaining

13   allegations set forth in paragraph 4.

14         5.      Answering paragraph 5 of the Complaint, Mattel admits that it

15   is subject to personal jurisdiction in this District and denies the truth of the

16   remaining allegations set forth in paragraph 5.

17         6.      Answering paragraph 6 of the Complaint, Mattel admits that

18   venue is proper in this District and denies the truth of the remaining allegations set

19   forth in paragraph 6.

20         7.      Answering paragraph 7 of the Complaint, Mattel admits that

21   MGA has filed the instant lawsuit and denies the truth of the remaining allegations

22   set forth in paragraph 7.

23         8.      Answering paragraph 8 of the Complaint, Mattel states that it is

24   without knowledge or information sufficient to form a belief as to the truth or

25   falsity of the allegations regarding MGA's history set forth therein and, on that

26   basis, denies them, states that MGA has made conflicting representations,

27   including in sworn statements, that are at odds with the allegations of the

28

/655008.1

-4-

EXHIBIT ___92___                                      ANSWER

PAGE ___142___

1  Complaint and denies the truth of the remaining allegations set forth in paragraph
2  8.

3      9.      Answering paragraph 9 of the Complaint, Mattel admits that
4  MGA filed this action, states that Mattel's web site and corporate governance
5  policies speak for themselves and denies the truth of the remaining allegations set
6  forth in paragraph 9.

7      10.     Answering paragraphs 10 through 20 of the Complaint,
8  inclusive, Mattel admits that it is the world's most successful toy company, states
9  that the first doll in its BARBIE line was publicly introduced in 1959 and that
10  BARBIE-branded dolls have been the world's best-selling toys, states that Mattel's
11  sales speak for themselves and states that the remaining allegations set forth
12  therein are the subject of a pending motion to strike pursuant to Federal Rule of
13  Civil Procedure 12(f) and that no further answer is therefore required at this time.

14      11.     Answering paragraph 21 of the Complaint, Mattel admits that
15  products in plaintiff's "Bratz" line compete with products in Mattel's BARBIE and
16  other product lines and states that the remainder of the allegation contained
17  therein—consisting of a sentence fragment—is unintelligible and on that basis
18  denies the truth of any such remaining allegation set forth therein.

19      12.     Answering paragraph 22 of the Complaint, Mattel admits that
20  products in plaintiff's "Bratz" line compete with Mattel products, states that the
21  remainder of the allegations contained therein are characterizations, not factual
22  assertions, and that therefore no response is necessary under Fed. R. Civ. P. 8(b)
23  and, to the extent any further response is required, denies the truth of any
24  remaining allegations set forth therein.

25      13.     Answering paragraph 23 of the Complaint, Mattel states that
26  MGA has made conflicting statements, including in sworn statements, that are
27  inconsistent with the allegations set forth in paragraph 23 of the Complaint and
28  states that it is therefore without knowledge or information sufficient to form a

EXHIBIT 92                              ANSWER

PAGE 143

1   belief as to the truth or falsity of the allegations set forth therein and, on that basis,

2   denies them.

3       14.   Answering paragraph 24 of the Complaint, Mattel states that

4   the "look" of the referenced dolls speak for themselves and denies the truth of the

5   remaining allegations set forth therein.  By way of further answer, Mattel states

6   that the photographs and their accompanying caption on page 7 of the Complaint

7   are false and misleading to the extent they are intended to suggest that MGA has

8   produced or used a consistent packaging shape or look or that it has protectible

9   rights in the matters depicted in the photographs.

10      15.   Answering paragraph 25 of the Complaint, Mattel admits that

11  Bratz dolls are between approximately 9.5 to 10 inches in height, states that the

12  appearances of the dolls speak for themselves, denies that "Bratz" dolls are or

13  "were intentionally shorter" than dolls in Mattel's BARBIE line, denies that the

14  "Bratz" dolls "looked like no other" and denies the truth of the remaining

15  allegations set forth in paragraph 25.

16      16.   Answering paragraph 26 of the Complaint, Mattel states that

17  the use of the term "classic" is unintelligible, since Mattel has designed and sold

18  different dolls using different heads and with different fashions and themes over

19  the years, and denies the truth of any remaining allegations.  By way of further

20  answer, Mattel states that the image encaptioned "Mattel's 'Barbie'" on page 8 of

21  the Complaint is misleading in that it depicts one of the doll heads that have been

22  used as part of the BARBIE line for many years, and therefore ignores that Mattel

23  has long designed and sold an array of different BARBIE line dolls that use

24  different doll heads, including doll heads which depict different ethnicities, and

25  that are dressed in different clothing and fashion styles.

26      17.   Answering paragraph 27 of the Complaint, Mattel admits that

27  MGA has used the line "The Girls With a Passion for Fashion" in some contexts,

28  denies that MGA originated or otherwise has rights to that phrase, admits that one

EXHIBIT ___92___   ANSWER

PAGE ___144___

1 | audience for products in the "Bratz" line has been "tweens" and denies the truth of
2 | the remaining allegations set forth in paragraph 27.

3 |       18.   Answering paragraph 28 of the Complaint, Mattel admits that
4 | certain "Bratz" dolls have won certain awards, the terms of which speak for
5 | themselves, states that it is without knowledge or information sufficient to form a
6 | belief as to the truth or falsity of the allegations regarding the "awards" MGA
7 | claims and, on that basis, denies them, denies that plaintiff has protectible rights
8 | and denies the truth of any remaining allegations set forth in paragraph 28.

9 |       19.   Answering paragraph 29 of the Complaint, Mattel admits that
10 | dolls in the "Bratz" line compete with dolls in Mattel product lines, denies that
11 | Mattel has or has ever had a "stranglehold" on any market, states that the market
12 | allegations contained in paragraph 29 are vague and ambiguous, including without
13 | limitation in that the allegations fail to specify what products among the parties'
14 | respective lines are being referred to and what time period is being referred to, and
15 | denies the truth of any remaining allegations set forth in paragraph 29.

16 |       20.   Answering paragraph 30 of the Complaint, Mattel admits MGA
17 | has been a licensee of Mattel and states that the remaining allegations set forth
18 | therein are the subject of a motion to strike and that no further response is
19 | therefore required at this time.

20 |       21.   Answering paragraph 31 of the Complaint, Mattel states that
21 | the allegations set forth therein are the subject of a motion to strike and that no
22 | further response is therefore required at this time.

23 |       22.   Answering paragraph 32 of the Complaint, Mattel denies the
24 | truth of the allegations set forth therein.

25 |       23.   Answering paragraph 33 of the Complaint, Mattel denies the
26 | truth of the allegations set forth therein.

27 |       24.   Answering paragraph 34 of the Complaint, Mattel states that it
28 | has released various MY SCENE dolls, including MY SCENE dolls named

EXHIBIT __92__   ANSWER

PAGE __145__

1  "Madison", "Chelsea" and "Barbie," states that the appearance of the Bratz and
2  MY SCENE dolls speak for themselves, denies that Mattel designed its MY
3  SCENE dolls to "evoke" or resemble the alleged "look" of "Bratz" dolls, denies
4  that plaintiff has protectible rights, states that MGA has made conflicting
5  representations that are at odds with the allegations of the Complaint and that it is
6  therefore without knowledge or information sufficient to form a belief as to the
7  truth or falsity of the allegations regarding the "launch" of Bratz dolls set forth
8  therein and, on that basis, denies them, and denies the truth of the remaining
9  allegations set forth therein.  By way of further answer, Mattel states that the
10 photographs and their accompanying captions on page 10 of the Complaint are
11 misleading and false to the extent they are intended to suggest that a particular
12 Mattel doll has been changed over time as purportedly depicted.  Among other
13 things, Mattel has long designed and sold an array of different BARBIE line dolls
14 using different doll heads, and the photographs encaptioned "Mattel's Traditional
15 'Barbie'" is one of the doll heads that has been used, and continues to be used, as
16 part of the BARBIE line.  In addition, the photographs encaptioned MY SCENE
17 doll "circa 2002" is, in fact, a Mattel doll character called BARBIE that continues
18 to be sold and/or marketed with that head, and the photographs encaptioned MY
19 SCENE doll "circa 2004" depict a MY SCENE doll character separate and apart
20 from the one depicted in the "circa 2002" image (and is not a revised character as
21 plaintiff apparently attempts to imply).
22         25.   Answering paragraph 35 of the Complaint, Mattel admits that
23 Mattel released a product line called FLAVAS, states that the appearance of the
24 FLAVAS dolls speaks for themselves, states that it is without knowledge or
25 information sufficient to form a belief as to the truth or falsity of the allegations
26 regarding the "rumor" relied upon by plaintiff and the undefined "media"
27 purportedly quoting Isaac Larian and, on that basis, denies them, denies that
28

/655008.1

-8-

EXHIBIT    92                                    ANSWER

PAGE    146

1  Mattel has abandoned the FLAVAS line, and denies the truth of the remaining
2  allegations set forth in paragraph 35.

3        26.    Answering paragraph 36 of the Complaint, Mattel denies the
4  truth of the allegations set forth therein.

5        27.    Answering paragraph 37 of the Complaint, Mattel denies the
6  truth of the allegations set forth therein. By way of further answer, Mattel states
7  that the unnumbered photographs and their accompanying captions on pages 11
8  through 16 of the Complaint -- which apparently were included to purportedly
9  support the allegation that MY SCENE dolls "became 'Bratz,'" which allegation
10  Mattel specifically denies -- are false and misleading. Among other things, the
11  heads depicted are among an array of different doll heads that Mattel has used, and
12  continues to use, over the course of many years. Moreover, the images purport to
13  compare different Mattel doll lines to show alleged changes in appearance even
14  though, in fact, each of the heads are currently sold and/or marketed to the public.
15  The "Blonde" series of photographs encaptioned "original" and "recent" MY
16  SCENE is further and specifically misleading in that it purports to compare two
17  differently named and outfitted dolls in the MY SCENE doll line, both of which
18  continue to be sold and/or marketed.

19        28.    Answering paragraph 38 of the Complaint, Mattel states that
20  the phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights
21  therein, denies that MGA was the originator of or the first to use the eye shape or
22  makeup depicted as purportedly constituting "the 'BRATZ' eye," denies that
23  Mattel has copied the "the 'BRATZ' eye" and denies the truth of the remaining
24  allegations contained in paragraph 38. By way of further answer, Mattel states
25  that the unnumbered photographs and accompanying caption on page 13 of the
26  Complaint are false and misleading. Among other things, the purported "Original
27  Mattel 'My Scene' Eye" is one of the eye and makeup designs that Mattel has used
28

/655008.1

-9-

EXHIBIT    92          ANSWER

PAGE    147

1  over the course of many years, and Mattel continues to sell and/or market dolls

2  using the eye and makeup design depicted therein.

3          29.     Answering paragraph 39 of the Complaint, Mattel states that

4  the phrase "the 'BRATZ' eye" is unintelligible, denies that MGA has rights

5  therein, denies that MGA was the originator of or the first to use the eye shape or

6  makeup purportedly described as constituting "the 'BRATZ' eye," denies that

7  Mattel has copied the "the 'BRATZ' eye," states that the relevant dolls speak for

8  themselves and denies the truth of the remaining allegations contained in

9  paragraph 38. By way of further answer, Mattel states that the unnumbered

10 photographs and accompanying captions on page 14 of the Complaint are false

11 and misleading. Among other things, the purported "New Mattel 'My Scene' Eye"

12 is one of the eye and makeup designs that Mattel has used over the course of many

13 years, and Mattel continues to sell and/or market dolls using the eye and makeup

14 design depicted on page 14 of the Complaint.

15         30.     Answering paragraph 40 of the Complaint, Mattel denies the

16 truth of the allegations therein. By way of further answer, Mattel states that the

17 unnumbered photographs and their accompanying captions on pages 15 to 16 are

18 false and misleading. Among other things, the heads depicted are among an array

19 of different doll heads that Mattel has used, and continues to use, over the course

20 of many years. Moreover, the photographs purport to compare different Mattel

21 doll lines to show alleged changes in appearance even though, in fact, each of the

22 heads are currently sold and/or marketed to the public. The "Blonde" series of

23 photographs encaptioned "original" and "recent" MY SCENE is further and

24 specifically misleading in that it purports to compare two differently named and

25 outfitted dolls in the MY SCENE doll line, both of which continue to be sold

26 and/or marketed.

27         31.     Answering paragraph 41 of the Complaint, Mattel denies the

28 truth of the allegations set forth therein.

/655008.1

-10-

EXHIBIT    9 2                    ANSWER

PAGE    148

1     .32.    Answering paragraph 42 of the Complaint, Mattel admits that

2 the photographs purport to depict two packages that were, among others, part of

3 the MY SCENE line, state that the packages speak for themselves and denies the

4 truth of any remaining allegations set forth therein.

5         33.    Answering paragraph 43 of the Complaint, Mattel admits that

6 the photograph purports to depict one of the packages that were, among others,

7 part of the MY SCENE line, states that the parties' packages speak for themselves,

8 states that MGA has failed to establish that it originated, or has protectible rights

9 in, an "open and transparent style" for packaging and denies the truth of the

10 remaining allegations set forth therein.

11         34.    Answering paragraph 44 of the Complaint, Mattel admits that

12 one photograph purports to depict one of the packages that were, among others,

13 part of the MY SCENE line, admits that the other photograph purports to depict

14 one of the packages that were, among others, used as part of the Bratz line, states

15 that the parties' packages speak for themselves, denies that MGA originated, or

16 has protectible rights in, "the 'BRATZ' packaging" or in the packaging depicted in

17 the Complaint and denies the truth of any remaining allegations set forth therein.

18         35.    Answering paragraph 45 of the Complaint, Mattel admits that

19 one photograph purports to depict one of the packages that were, among others,

20 part of the MY SCENE line, admits that the other photograph purports to depict·

21 one of the packages that were, among others, used as part of the Bratz line, states

22 that the parties' packages speak for themselves, denies that MGA originated, or

23 has protectible rights in, the packaging depicted in the Complaint and denies the

24 truth of any remaining allegations set forth therein.

25         36.    Answering paragraph 46 of the Complaint, Mattel states that it

26 has utilized a wide variety of packaging styles and shapes over the years, states

27 that the relevant packaging speaks for itself, states that MGA lacks protectible

28 rights in "non-rectangular shaped box" packaging or in the other elements MGA

/655008.1

-11-

EXHIBIT    9 2

PAGE    149

ANSWER

1    claims in paragraph 46, and denies the truth of the remaining allegations set forth
2    therein.

3           37.    Answering paragraph 47 of the Complaint, Mattel denies that
4    any alleged "theme" is "MGA's theme," denies that MGA originated or has rights
5    to any theme and denies the truth of the remaining allegations set forth therein.

6           38.    Answering paragraph 48 of the Complaint, Mattel admits that it
7    released a doll called "Chillin Out!", states that it has released such themed dolls
8    over the course of many years, admits MGA released a "Wintertime Wonderland"
9    themed doll, denies that MGA originated or has rights to such theme, states that
10   the relevant products speak for themselves and denies the truth of the remaining
11   allegations set forth therein.

12          39.    Answering paragraph 49 of the Complaint, Mattel admits that it
13   released a doll called "Night on the Town", states that it has released such themed
14   dolls over the course of many years, admits MGA released a "Formal Funk"
15   themed doll, denies that MGA originated or has rights to such theme, states that
16   the relevant products speak for themselves and denies the truth of the remaining
17   allegations set forth therein.

18          40.    Answering paragraph 50 of the Complaint, Mattel admits that it
19   released a doll called "Jammin' in Jamaica" and a playset called "Guava Gulch
20   Tiki Lounge", states that it has released such themed dolls and products over the
21   course of many years, admits that MGA released a "Sun-Kissed Summer" themed
22   doll and playset, denies that MGA originated or has rights to such theme, states
23   that the relevant products speak for themselves and denies the truth of the
24   remaining allegations set forth therein.

25          41.    Answering paragraph 51 of the Complaint, Mattel admits that it
26   has aired television commercials for its MY SCENE line, states that such
27   commercials speak for themselves, denies the truth of the remaining allegations set
28   forth therein and specifically denies that MGA was the originator of or has rights

/655008.1

-12-

EXHIBIT     9 2

PAGE     150

ANSWER

1 to commercials "combining live action with animated sequences" set to "pop
2 music and lyrics".

3         42.    Answering paragraph 52 of the Complaint, Mattel denies the
4 truth of the allegations set forth therein.

5         43.    Answering paragraph 53 of the Complaint, Mattel admits that it
6 released a MY SCENE "Sound Lounge", admits that MGA released a product
7 called "Runway Disco", states that the relevant products speak for themselves,
8 denies that it "imitated MGA's trapezoidal box," denies that MGA has rights
9 thereto, and denies the truth of the remaining allegations set forth therein.

10         44.    Answering paragraph 54 of the Complaint, Mattel denies the
11 truth of the allegations set forth therein.

12         45.    Answering paragraph 55 of the Complaint, Mattel admits that,
13 among the styling heads it has produced and sold over the course of many years, it
14 released a MY SCENE styling head, admits that MGA released a styling head
15 called "Funky Fashion Makeover Head", states that the relevant products speak for
16 themselves, denies that MGA has protectible rights and denies the truth of the
17 remaining allegations set forth in paragraph 55.

18         46.    Answering paragraph 56 of the Complaint, Mattel is without
19 knowledge or information sufficient to form a belief as to the truth or falsity of the
20 allegations set forth therein because plaintiff fails to identify the alleged instances
21 of confusion, including the source of the unidentified picture titled "Hairstyle
22 practice", and on that basis, denies them, and denies the truth of any remaining
23 allegations set forth in paragraph 56.

24         47.    Answering paragraph 57 of the Complaint, Mattel admits that it
25 has aired television commercials for its MY SCENE line, states that such
26 commercials speak for themselves and denies the truth of the remaining
27 allegations set forth therein.

28

/655008.1

-13-

EXHIBIT   92

PAGE   101

ANSWER

1        .48.     Answering paragraph 58 of the Complaint, Mattel admits that

2  MGA has used the line "The Girls With a Passion for Fashion" in some contexts,

3  denies that MGA originated that phrase or otherwise has rights to it, states that

4  Mattel's web site speaks for itself and denies the truth of the remaining allegations

5  set forth therein.

6        49.     Answering paragraph 59 of the Complaint, Mattel admits that,

7  among the plush products that it has produced and sold over the course of many

8  years, it has released plush dogs as part of its MY SCENE "Miami Getaway"

9  themed product line, states that Mattel has for many years sold plush pets of the

10  type used with its MY SCENE dog, admits that MGA has released various Bratz

11  pets, states that MGA was not the originator of and has no rights to the features

12  and other elements described therein, states that the relevant products speak for

13  themselves and denies the truth of the remaining allegations set forth therein.

14        50.     Answering paragraph 60 of the Complaint, Mattel admits that,

15  among the plush toys that it has release over the course of many years, its MY

16  SCENE dog has been sold in packaging depicted (in part) on page 22 of the

17  Complaint, states that Mattel has for many years sold plush pets and other plush

18  products in packaging of the type used with its MY SCENE dog, admits that MGA

19  has released a "Bratz" dog, states that MGA was not the originator of and has no

20  rights to the packaging described therein, states that the relevant packages speak

21  for themselves and denies the truth of the remaining allegations set forth therein.

22        51.     Answering paragraph 61 of the Complaint, Mattel denies that it

23  has intended to cause any consumer confusion and states that it is without

24  knowledge or information sufficient to form a belief as to the truth or falsity of the

25  allegations set forth therein concerning unnamed retailers, customers and others

26  because plaintiff fails to identify any source for the matters alleged and, on that

27  basis, denies them and denies the truth of any remaining allegations set forth

28  therein.

/655008.1

EXHIBIT 92      ANSWER

PAGE 152

1    52.    Answering paragraph 62 of the Complaint, Mattel denies that it
2  has intended to cause any confusion and states that it is without knowledge or
3  information sufficient to form a belief as to the truth or falsity of the allegations
4  set forth therein concerning alleged comments and conversations because plaintiff
5  fails to identify any source for the alleged comments and conversations and, on
6  that basis, denies them, and denies the truth of any remaining allegations set forth
7  therein.

8    53.    Answering paragraph 63 of the Complaint, Mattel denies that it
9  has intended to cause any confusion and states that it is without knowledge or
10  information sufficient to form a belief as to the truth or falsity of the allegations
11  set forth therein because plaintiff fails to identify any source for the alleged
12  comments and conversations and, on that basis, denies them, and denies the truth
13  of any remaining allegations set forth therein.

14    54.    Answering paragraph 64 of the Complaint, Mattel denies that it
15  has intended to cause any confusion and states that it is without knowledge or
16  information sufficient to form a belief as to the truth or falsity of the allegations
17  set forth therein because plaintiff fails to identify any source for the alleged
18  comments and conversations and, on that basis, denies them, and denies the truth
19  of any remaining allegations set forth therein.

20    55.    Answering paragraph 65 of the Complaint, Mattel denies the
21  truth of the allegations set forth therein.

22    56.    Answering paragraph 66 of the Complaint, Mattel admits that it
23  sued a competitor in the German courts for unfair competition for copying various
24  Mattel BARBIE line products, states that such claims exclusively arose under and
25  were the subject of German law, and denies the truth of the remaining allegations
26  set forth therein.

27    57.    Answering paragraph 67 of the Complaint, Mattel denies the
28  truth of the allegations set forth therein.

/655008.1

-15-

ANSWER

EXHIBIT    9 2

753

1    58.    Answering paragraph 68 of the Complaint, Mattel admits that it

2 has released dolls called "Wee 3 Friends," admits that MGA has released dolls

3 called "4-Ever Best Friends," states that the relevant products speak for

4 themselves, denies that MGA's packaging is distinctive, denies that MGA has

5 protectible rights thereto and denies the truth of the remaining allegations set forth

6 in paragraph 68.

7    59.    Answering paragraph 69 of the Complaint, Mattel admits that

8 its Fisher Price division has released, among other dolls called "Little Mommy,"

9 the "Little Mommy Potty Training Baby Doll," admits that MGA has released a

10 "Mommy's Little Patient" doll and denies the truth of the remaining allegations set

11 forth therein.

12    60.    Answering paragraph 70 of the Complaint, Mattel admits that it

13 has released die-cast cars and other products called "Acceleracers" as part of its

14 HOT WHEELS line,  admits that MGA has released products called

15 "AlienRacers," denies that MGA was the originator of or has rights to the elements

16 and matters described in paragraph 70, states that the relevant products speak for

17 themselves and denies the truth of the remaining allegations set forth therein.

18    61.    Answering paragraph 71 of the Complaint, Mattel admits that it

19 has aired commercials relating to "Acceleracers," states that such commercials

20 speak for themselves, denies the truth of the remaining allegations set forth therein

21 and specifically denies that MGA originated or has rights to commercials and

22 other matters described therein.

23    62.    Answering paragraph 72 of the Complaint, Mattel states that its

24 web site speaks for itself, denies the truth of the remaining allegations contained in

25 paragraph 72 and specifically denies that Mattel intended to create confusion in

26 the marketplace.

27    63.    Answering paragraph 73 of the Complaint, Mattel denies the

28 truth of the allegations set forth therein.

/655008.1

-16-

EXHIBIT   9 2                                    ANSWER

PAGE    159

1    64.    Answering paragraph 74 of the Complaint, Mattel denies the

2  truth of the allegations set forth therein.

3    65.    Answering paragraph 75 of the Complaint, Mattel states that it

4  has brought a motion under <u>Federal Rule of Civil Procedure</u> 12 against the

5  allegations set forth therein and that no further response is therefore required at

6  this time.

7    66.    Answering paragraph 76 of the Complaint, Mattel states that

8  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

9  including such acts that are lawful in foreign nations, and denies the truth of

10  allegations set forth therein.

11    67.    Answering paragraph 77 of the Complaint, Mattel states that

12  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

13  including such acts that are lawful in foreign nations, and denies the truth of the

14  allegations set forth therein.

15    68.    Answering paragraph 78 of the Complaint, Mattel states that it

16  is without knowledge or information sufficient to form a belief as to the truth or

17  falsity of the allegations regarding MGA's claimed "shortage of doll hair" and, on

18  that basis, denies them and denies the truth of the remaining allegations set forth

19  therein.

20    69.    Answering paragraph 79 of the Complaint, Mattel states that

21  MGA cannot establish subject matter jurisdiction regarding extra-territorial acts,

22  including such acts that are lawful in foreign nations, and denies the truth of

23  allegations set forth therein.

24    70.    Answering paragraph 80 of the Complaint, Mattel denies the

25  truth of the allegations set forth therein.

26    71.    Answering paragraph 81 of the Complaint, Mattel admits that

27  NPD Funworld ("NPD") supplies sales statistics in *inter alia* the toy, PC games

28  and video games industries, admits that to Mattel's knowledge NPD restricts the

/655008.1

-17-

EXHIBIT     9 2    ANSWER

PAGE     155

1  use of its subscriber information, states that MGA was sued by NPD and states

2  that it is without it is without knowledge or information sufficient to form a belief

3  as to the truth or falsity of the allegations regarding the need of unspecified "toy

4  companies" for NPD statistics and, on that basis, denies them and denies the truth

5  of any remaining allegations set forth therein.

6         72.   Answering paragraph 82 of the Complaint, Mattel denies the

7  truth of the allegations set forth therein.

8         73.   Answering paragraph 83 of the Complaint, Mattel states that it

9  is without knowledge or information sufficient to form a belief as to the truth or

10  falsity of the allegations set forth therein because MGA fails to quantify its annual

11  subscription fees and, on that basis, denies them.

12         74.   Answering paragraph 84 of the Complaint, Mattel states that it

13  is without it is without knowledge or information sufficient to form a belief as to

14  the truth or falsity of the allegations set forth therein and, on that basis, denies

15  them.

16         75.   Answering paragraph 85 of the Complaint, Mattel states that

17  MGA was sued by NPD, states that it is without knowledge or information

18  sufficient to form a belief as to such nature and grounds for such litigation (to

19  which Mattel was not a party) and, on that basis denies the allegations relating

20  thereto, and denies the truth of the remaining allegations set forth therein.

21         76.   Answering paragraph 86 of the Complaint, Mattel denies the

22  truth of the allegations set forth therein.

23         77.   Answering paragraph 87 of the Complaint, Mattel admits that

24  the Children's Advertising Review Unit ("CARU") is the children's arm of the

25  advertising industry's self-regulation program, states that compliance with CARU's

26  Privacy Program can provide FTC-approved Safe Harbor under the Children's

27  Online Privacy Protection Act ("COPPA"), and denies the truth of the remaining

28  allegations set forth therein.

/655008.1

-18-

78.    Answering paragraph 88 of the Complaint, Mattel admits that it is one of dozens of CARU Supporters and denies the truth of the remaining allegations set forth therein.

79.    Answering paragraph 89 of the Complaint, Mattel denies the truth of the allegations set forth therein.

80.    Answering paragraph 90 of the Complaint, Mattel states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations as to the consequences to MGA of MGA's violations of CARU standards and, on that basis, denies them.

81.    Answering paragraph 91 of the Complaint, Mattel states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations as to the consequences to MGA of MGA violation of CARU standards and, on that basis, denies them.

82.    Answering paragraph 92 of the Complaint, Mattel admits that the Toy Industry Association, Inc. ("TIA") is a toy industry trade association, admits that at certain times TIA has given awards called the People's Choice Toy of The Year or the Toy of The Year Award, denies that Mattel wrongfully influenced TIA and states that it is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth therein and, on that basis, denies them.

83.    Answering paragraph 93 of the Complaint, Mattel states that the allegations set forth therein are vague and ambiguous, including in that they fail to properly identify the years in which the referenced awards were given and/or the particular product which won such awards, and accordingly lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth therein and, on that basis, denies them.

84.    Answering paragraph 94 of the Complaint, Mattel admits that Neil Freidman was the chairman of TIA from approximately May 2002 to May

/655008.1

EXHIBIT ___92___

PAGE ___157___

ANSWER

1  2004, states that Fischer Price is a division of Mattel and denies the truth of the
2  remaining allegations set forth therein.

3        85.    Answering paragraph 95 of the Complaint, Mattel admits that
4  Hokey Pokey Elmo won the Toy of the Year Award and denies the truth of the
5  remaining allegations set forth therein.

6        86.    Answering paragraph 96 of the Complaint, Mattel states that it
7  is without knowledge or information sufficient to form a belief as to the truth or
8  falsity of the allegations set forth therein and, on that basis, denies them.

9        87.    Answering paragraph 97 of the Complaint, Mattel denies the
10  truth of the allegations set forth therein.

11        88.    Answering paragraph 98 of the Complaint, Mattel denies that it
12  has engaged in wrongful, unlawful, unethical or actionable conduct and states that
13  the remaining allegations set forth therein are the subject of a motion to strike and
14  that therefore no further answer is required at this time.

15        89.    Answering paragraph 99 of the Complaint, Mattel denies the
16  truth of the allegations set forth therein.

17        90.    Answering paragraph 100 of the Complaint, Mattel denies the
18  truth of the allegations set forth therein.

19        91.    Answering paragraph 101 of the Complaint, Mattel repeats its
20  responses contained in paragraphs 1 through 90 of this Answer and incorporates
21  them by reference as though fully and completely set forth herein.

22        92.    Answering paragraph 102 of the Complaint, Mattel denies the
23  truth of the allegations set forth therein and specifically denies that MGA's alleged
24  trade dress is distinctive.

25        93.    Answering paragraph 103 of the Complaint, Mattel denies the
26  truth of the allegations set forth therein and specifically denies that MGA's alleged
27  trade dress is distinctive.

28

/655008.1

-20-

ANSWER

EXHIBIT    92

PAGE    768

94.     Answering paragraph 104 of the Complaint, Mattel denies the truth of the allegations set forth therein.

95.     Answering paragraph 105 of the Complaint, Mattel denies the truth of the allegations set forth therein.

96.     Answering paragraph 106 of the Complaint, Mattel denies the truth of the allegations set forth therein.

97.     Answering paragraph 107 of the Complaint, Mattel denies the truth of the allegations set forth therein.

98.     Answering paragraph 108 of the Complaint, Mattel denies the truth of the allegations set forth therein and specifically denies that plaintiff is entitled to injunctive relief.

99.     Answering paragraph 109 of the Complaint, Mattel repeats its responses contained in paragraphs 1 through 98 of this Answer and incorporates them by reference as though fully and completely set forth herein.

100.    Answering paragraph 110 of the Complaint, Mattel denies the truth of the allegations set forth therein.

101.    Answering paragraph 111 of the Complaint, Mattel denies the truth of the allegations set forth therein.

102.    Answering paragraph 112 of the Complaint, Mattel denies the truth of the allegations set forth therein.

103.    Answering paragraph 113 of the Complaint, Mattel denies the truth of the allegations set forth therein.

104.    Answering paragraph 114 of the Complaint, Mattel denies the truth of the allegations set forth therein.

105.    Answering paragraph 115 of the Complaint, Mattel denies the truth of the allegations set forth therein.

106.    Answering paragraph 116 of the Complaint, Mattel denies the truth of the allegations set forth therein.

/655008.1

EXHIBIT     92

PAGE     159

ANSWER

107.   Answering paragraph 117 of the Complaint, Mattel denies the truth of the allegations set forth therein and specifically denies that plaintiff is entitled to injunctive relief.

108.   Answering paragraph 118 of the Complaint, Mattel denies the truth of the allegations set forth therein.

109.   Answering paragraph 119 of the Complaint, Mattel repeats its responses contained in paragraphs 1 through 108 of this Answer and incorporates them by reference as though fully and completely set forth herein.

110.   Answering paragraph 120 of the Complaint, Mattel denies the truth of the allegations set forth therein.

111.   Answering paragraph 121 of the Complaint, Mattel denies the truth of the allegations set forth therein.

112.   Answering paragraph 122 of the Complaint, Mattel denies the truth of the allegations set forth therein.

113.   Answering paragraph 123 of the Complaint, Mattel denies the truth of the allegations set forth therein and specifically denies that plaintiff is entitled to injunctive relief.

114.   Answering paragraph 124 of the Complaint, Mattel repeats its responses contained in paragraphs 1 through 113 of this Answer and incorporates them by reference as though fully and completely set forth herein.

115.   Answering paragraph 125 of the Complaint, Mattel denies the truth of the allegations set forth therein.

### General Denial

Unless specifically admitted herein, Mattel denies the truth of each and every allegation set forth in plaintiff's Complaint and specifically denies that plaintiff is entitled to any relief against Mattel.

/655008.1

-22-

EXHIBIT 92

ANSWER

PAGE 760

### Affirmative Defenses

By alleging the Affirmative Defenses set forth below, Mattel does not agree or concede that it bears the burden of proof or the burden of persuasion on any of these issues, whether in whole or in part.

### First Affirmative Defense

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

Plaintiff has no valid, enforceable or protectible rights or interest in the alleged trade dress or other matters asserted, including without limitation in that plaintiff has failed to establish that its alleged trade dress is distinctive as to plaintiff.

### Third Affirmative Defense

Plaintiff's claims, including without limitation plaintiff's claims based upon alleged extra-territorial acts, are barred in whole or in part by lack of subject matter jurisdiction.

### Fourth Affirmative Defense

Plaintiff's claims are barred in whole or in part by plaintiff's unclean hands.

### Fifth Affirmative Defense

Plaintiff's claims are barred in whole or in part by virtue of Mattel's prior-creation of the elements and other matters asserted in the Complaint.

/655008.1

-23-

EXHIBIT    9 2    ANSWER

PAGE    761