Sixth Affirmative Defense

Plaintiff's claims are barred in whole or in part by its lack of standing.

Seventh Affirmative Defense

Plaintiff's claims are barred in whole or in part by the applicable statutes of limitation and the doctrine of laches.

Eighth Affirmative Defense

Plaintiff's claims are barred in whole or in part by the doctrines of waiver, estoppel and acquiescence.

Ninth Affirmative Defense

Plaintiff's claims are barred in whole or in part by Mattel's constitutional rights of free speech, petitioning and association, including without limitation by the litigation privilege as protected by and/or codified in *inter alia* Section 47(b) of the California Civil Code, the *Noerr-Pennington* doctrine, the common interest privilege and by other privileges.

Tenth Affirmative Defense

Plaintiff's claims are barred in whole or in part by Mattel's federal and state constitutional rights of free speech, including without limitation under the First Amendment of the United States Constitution.

Eleventh Affirmative Defense

Plaintiff's claims are barred in whole or in part by the competitor privilege.



EXHIBIT 92

PAGE 762

Twelfth Affirmative Defense

Plaintiff's claims are in whole or in part preempted by the Copyright Act and barred by the *Sears-Compco* doctrine.

Thirteenth Affirmative Defense

Plaintiff's requested relief, including plaintiff's requests for punitive and/or enhanced damages, are barred in whole or in part because all of Mattel's actions were in good faith.

Fourteenth Affirmative Defense

Plaintiff's damages, if any, were not caused by Mattel and are not attributable to the acts or omissions of Mattel.

Fifteenth Affirmative Defense

Plaintiff has failed to mitigate its damages, if any.

Additional Defenses

Mattel has insufficient knowledge or information upon which to form a belief as to whether additional defenses are available. Mattel reserves the right to amend this Answer to add, delete, or modify additional defenses based on legal theories which may or will be divulged through clarification of the Complaint, through discovery, through change or clarification of the governing law or through further legal analysis of plaintiff's positions in this litigation.

Prayer for Relief

WHEREFORE, Mattel prays for relief as follows:



EXHIBIT 92

PAGE 763

WHEREFORE, Mattel prays for relief as follows:

1. That the Complaint be dismissed with prejudice;

2. That plaintiff take nothing by reason of the Complaint against Mattel and that judgment be entered in Mattel's favor;

3. That Mattel recover its costs and attorneys' fees; and

4. That this Court award such other and further relief as it deems just and proper.

DATED: May 13, 2005

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

MUNGER, TOLLES & OLSON LLP

By [signature]
John B. Quinn
Attorneys for Defendant
Mattel, Inc.

DEMAND FOR A JURY TRIAL

Mattel hereby demands a trial by jury on all claims so triable.

DATED: May 13, 2005

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

MUNGER, TOLLES & OLSON LLP

By [signature]
John B. Quinn
Attorneys for Defendant
Mattel, Inc.

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is NOW Legal Service, 1301 West Second Street, Suite 206, Los Angeles, Ca 90026.

On May 13, 2005, I served the foregoing document:

**DEFENDANT MATTEL, INC.'S ANSWER TO COMPLAINT; AND DEMAND FOR JURY TRIAL**

on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as stated:

Dale M. Cendali
Diana M. Torres
Paula E. Ambrosini
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, California 90071-2899
O 213.430.6000; F 213.430.6407

[√] [PERSONAL] by personally delivering the document listed above to the persons at the address set forth above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 13, 2005, at Los Angeles, California.

[signature]
RUDY FLORES



EXHIBIT 92
PAGE 766

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is Quinn Emanuel Urquhart Oliver & Hedges, LLP, 865 S. Figueroa Street, 10th Floor, Los Angeles, California 90017-2543.

On May 13, 2005, I served the within document:

**DEFENDANT MATTEL, INC.'S ANSWER TO COMPLAINT; AND DEMAND FOR JURY TRIAL**

on the interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope, addressed as stated:

Patricia Glaser
Christensen, Miller, Fink, Jacobs,
Glaser, Weil & Shapiro LLP
10250 Constellation Boulevard
19th Floor
Los Angeles, California 90067
O 310.553.3000; F 310.556.2920

[X ] [MAIL] As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business, addressed as set forth above. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 13, 2005, at Los Angeles, California.

[signature]

**ALBERT V. VILLAMIL**

**EXHIBIT 93**

COPY

FILED

2006 NOV 20 AM 10: 09

CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. RIVERSIDE

BY ____________

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John B. Quinn (Bar No. 090378)
johnquinn@quinnemanuel.com
Michael T. Zeller (Bar No. 196417)
(michaelzeller@quinnemanuel.com)
Jon D. Corey (Bar No. 185066)
(joncorey@quinnemanuel.com)
Duane R. Lyons (Bar No. 125091)
(duanelyons@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff and Counter-Defendant Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CARTER BRYANT, an individual,

Plaintiff,

vs.

MATTEL, INC., a Delaware corporation,

Defendant.

CASE NO. CV 04-9049 SGL (RNBx)

Consolidated With Case No. 04-9059 and Case No. 05-2727

Hon. Stephen G. Larson

MATTEL, INC.'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT; AND

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

[Proposed Amended Complaint lodged concurrently herewith]

[Declaration of Jon D. Corey filed concurrently herewith]

Hearing Date: January 8, 2007
Time: 10:00 a.m.
Place: Courtroom 1

Discovery Cut-off: None Set
Pre-trial Conference: None Set
Trial Date: None Set

EXHIBIT 93

PAGE 768 11-20

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 8, 2006 at 10:00 a.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Stephen G. Larson located at 3470 Twelfth Street, Riverside, California, 92501, Mattel, Inc. ("Mattel") will, and hereby does, move this Court pursuant to Rule 15 of the Federal Rules of Civil Procedure for an order granting Mattel leave to file an Amended Complaint lodged concurrently herewith, including to substitute Defendant MGA Entertainment, Inc. for Defendant Doe 1, defendant MGA Entertainment (HK) Limited for Defendant Doe 2, and defendant Isaac Larian for Defendant Doe 3.

This motion is made on the grounds that discovery in this case has revealed facts showing that Mattel has a right to additional and further relief against the named and additional defendants; defendants also have engaged in further conduct since Mattel's original Complaint was filed for which Mattel seeks relief; defendants will not be unduly prejudiced by amendment; Mattel has not unduly delayed seeking its requested relief; and Mattel's proposed amendment is made in good faith.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently-filed Declaration of Jon D. Corey, the concurrently-lodged proposed Amended Complaint, the pleadings and other papers on file in this action, any matters of which this Court may take judicial notice, and such further evidence and argument as may be presented at or before the hearing on this matter.

EXHIBIT 93

PAGE 769

**Local Rule 7-3 Certification**

This motion is made following the conference of counsel in compliance with Local Rule 7-3, which took place on October 31, 2006 and thereafter.

DATED: November 19, 2006

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By John B Quinn /DOC
John B. Quinn
Attorneys for Plaintiff and Counter-Defendant Mattel, Inc.

EXHIBIT 93

PAGE 110

that Bryant was still employed by Mattel and in breach of his contractual, statutory and common law duties to Mattel.

Mattel also seeks to add new causes of action against MGA, Larian, Bryant, MGA Entertainment (HK) Limited, MGA de Mexico and Gustavo Machado arising out of defendants' pattern of unfair competition and related illegal conduct. This pattern of illegal conduct — most of which occurred after Mattel had filed its original Complaint — consists of aiding and abetting Mattel employees in stealing Mattel's confidential information and delivering it to MGA to further MGA's business interests. Among other things, Mattel has discovered since the filing of its original Complaint that: (1) MGA stole Mattel's trade secrets by enticing three employees of Mattel's Mexican subsidiary, including defendant Machado, to steal sensitive business planning materials, and then hired them to join MGA; (2) MGA stole Mattel trade secrets by enticing an employee of Mattel's Canadian subsidiary to steal proprietary advertising, project, sales, customer and strategy information for Canada, the United States and the rest of the world, and then hired her to join MGA; and (3) in May 2006, Isaac Larian made misrepresentations to retailers, including Target and TRU, about Mattel's products, particularly the MY SCENE MY BLING BLING product with real gems, which caused at least one retailer to cancel its order for 75,000 units of the product.

After the discovery of these facts, Mattel can now allege, and is alleging, claims for misappropriation of trade secrets against MGA, MGA de Mexico, Larian and Machado; claims for breach of fiduciary duty and breach of duty of loyalty against Machado; claims for intentional interference with contract, aiding and abetting breach of fiduciary duty, and aiding and abetting breach of duty of loyalty against MGA and Larian; and a claim for copyright infringement against MGA, MGA Entertainment (HK) Limited, Larian and Bryant. Mattel is also moving to add claims for violation of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1962(c) and 1964(c)), conspiracy to violate the

EXHIBIT 94

RightFAX 8/30/2007 2:34 PAGE 002/006 Fax Server

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
Priority ✓ Send ✓
Entered ✓ Closed
JS-5/JS-6 JS-2/JS-3
Scan Only Docketed on CM ✓
THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP 77(d)
8/29/07
EASTERN DIVISION
BY [signature] DEPUTY

**PRIORITY SEND**
& ENTERED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
3470 Twelfth Street, Riverside, CA 92501
CIVIL MINUTES -- GENERAL

Case No. CV 04-09049 SGL (RNBx) Date: August 27, 2007

Title: CARTER BRYANT -v- MATTEL, INC.
AND CONSOLIDATED ACTIONS

===========================================================

PRESENT: HONORABLE STEPHEN G. LARSON, UNITED STATES DISTRICT JUDGE

Gina L. Guzman
Courtroom Deputy Clerk

Theresa Lanza
Court Reporter

ATTORNEYS PRESENT FOR CARTER BRYANT:

John W. Keker, Esq.
(morning session only)

ATTORNEYS PRESENT FOR MATTEL:

John B. Quinn, Esq.
Michael T. Zeller, Esq.
Jon D. Corey, Esq.

ATTORNEYS PRESENT FOR MGA:

Patricia Glaser, Esq.
Diana M. Torres, Esq.

PROCEEDINGS: **ORDER DENYING MOTION FOR TERMINATING SANCTIONS; ORDER DENYING REQUEST FOR INTERLOCUTORY APPEAL; ORDER REQUIRING FILING OF AFFIDAVITS RE EVIDENCE PRESERVATION**

This matter is before the Court on MGA's and Carter Bryant's Motion for Terminating Sanctions, filed on July 24, 2007 (docket #689). This matter was heard on August 27, 2007, at which time it was taken under submission. The Court has considered the moving, opposition, and reply briefs, as well as the many declarations and other evidence presented by the parties. The

Court has also considered the arguments presented at the August 27 hearing and the sworn testimony given by Michael C. Moore, in-house counsel for Mattel. Although at the hearing the Court indicated it would defer ruling on the present motion pending further filings by all parties regarding their efforts to preserve evidence, upon further reflection the Court sees no reason to delay ruling on the current motion.[1] As set forth below, the Court **DENIES** the motion.

Based on their inherent power to sanction for "abusive litigation practices," district courts may impose sanctions against a party who destroys evidence, including the ultimate sanction of dismissal. Leon v. IDX Systems Corp., 464 F.3d 951, 958 (9th Cir. 2006). Dismissal is a harsh sanction, which may nonetheless be imposed upon those parties who have "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995). However, before imposing the ultimate sanction of dismissal, district courts should consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Id. Nevertheless, district courts need not make explicit findings regarding each of these factors and, in any event, "a finding of willfulness, fault, or bad faith is required for dismissal to be proper." Leon, 464 F.3d 951, 958 (9th Cir. 2006) (internal quotation marks and citation omitted).

"A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" Id. at 959 (quoting United States v. Kitsap Physicians Serv., 314 F.3d 995, 1001 (9th Cir. 2002) (finding no willful spoliation where documents were destroyed in the routine course of business)). Neither Leon nor Kitsap elaborate on when a party has the "notice" necessary to trigger the duty to preserve evidence. However, in In re Napster, Inc. Copyright Litigation, 462 F.Supp.2d 1060, 1068 (N.D. Cal. 2006), the district court presented a persuasive discussion of the standard, first rejecting an argument that the duty to preserve evidence arises only when litigation is "imminent," and then setting forth a lesser standard. Specifically, the Napster court noted that the duty arose "when a party should have known that the evidence may be relevant to future litigation," and that any such "future litigation" must be "probable," and not merely "possibl[e]." (internal quotation marks and citation omitted).

Keeping in mind these standards, the Court turns to the categories of evidence MGA and Bryant allege that Mattel has despoiled. As articulated by the Court at the hearing on this matter, those categories are (1) Mattel employees' emails, (2) documents maintained on the Zeus document storage system, (3) the delay in producing certain Rule 30(b)(6) witnesses, (4) Carter

---

[1] By the same token, upon further reflection, the Court sees no reason to delay ruling on MGA's request for interlocutory appeal of the present order. See 28 U.S.C. § 1292(b) (stating that certifications for interlocutory appeal should be set forth in the order to be appealed). The Court's ruling on that matter appears infra.

MINUTES FORM 90
CIVIL -- GEN

Initials of Deputy Clerk glg
Time: 02/52



Docket No. 895

EXHIBIT 94

PAGE 772

Bryant's missing phone records, and (5) Carter Bryant's missing time records.

In considering the arguments of the parties regarding when Mattel's duty to begin to preserve evidence arose, the Court determines that November 24, 2003, marks the date when litigation between Mattel and Bryant became more than merely speculative and in fact became probable. On this date, in-house counsel for Mattel received in discovery in an unrelated action a copy of a contract between MGA and Bryant that pre-dated Bryant's resignation from Mattel. This contract appeared to Mattel to violate certain employment agreements executed by Bryant and Mattel, thus giving rise to one of the current consolidated actions. Although prior to this date an internal investigation may have raised a <u>suspicion</u> on Mattel's part that litigation might arise, there was no evidence presented to the Court that Mattel should have known it had a viable claim against Bryant before November 2003. Cf. Fed. R. Civ. P. 11(b)(3) ("By presenting to the court . . . a pleading . . . , an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .").

The Court heard testimony from Michael C. Moore, in-house counsel for Mattel, regarding the efforts to preserve email communications and other evidence. Counsel for MGA and Bryant cross-examined Mr. Moore at the hearing on this matter. The Court credits his testimony. The efforts Mr. Moore described regarding the preservation of emails is reasonable, and certainly does not amount to spoliation. Moore described communications with specific individuals identified by Mattel as those most likely to have information relevant to the litigation and efforts made to preserve any evidence those individuals had in their custody or control. Emails not otherwise archived from the relevant time period – mostly September and October, 2000 – had already been deleted from Mattel's email servers in accordance with its email retention policies. Mattel cannot be faulted for deleting these emails in the regular course of business before it had notice of its claims against Bryant.

In April, 2005, the current litigation took a dramatic turn, when MGA filed suit against Mattel. At that time, <u>all</u> Mattel employees were instructed to maintain any evidence potentially relevant to the litigation. When that suit was filed, Mattel took action to preserve all of its emails, capturing emails that date back to December, 2004. They retain these backup tapes to this day. MGA and Bryant make much of Mattel's failure to suspend its 90-day auto-delete policy regarding emails, but fail to address two key points: First, Mattel altered only the storage mechanism for its emails, it did not actually delete any emails; and second, Mattel, a number of years ago, informed MGA that it was not planning on suspending its 90-day auto-delete policy, and MGA did not at that time object.

As for the Zeus tapes, there is simply no evidence of spoliation. First and foremost, as the system has been described to the Court, the system is a cumulative file system that continues to accumulate. The system is still in operation, does not have an auto-delete function, and

information dating back to all relevant time period in this case may be accessed from it. Additionally, Mattel's in-house counsel testified as to the existence of several backup tapes that it can make available to MGA and Bryant. Finally, outside of pure speculation, there is no evidence that anyone has deleted anything from the Zeus system. Although production issues may still remain with respect to these data, preservation of this data, in the Court's view, is simply not an issue based on the record before the Court.

The delay in producing certain Rule 30(b)(6) witnesses is not a proper basis for terminating sanctions in this case. No motions to compel were brought to compel these witnesses's depositions at earlier times, and MGA and Bryant's accusations that the delay in producing them for deposition is part of a cover-up of the destruction of evidence is mere unfounded speculation. Moreover, the Court is mindful that MGA has been found by the discovery master to be guilty of the very same unexcused delay of which it accuses Mattel. See August 14, 2007, J. Infante Order, at 8 and 9 (attached to the Supplemental Proctor Decl. as Ex. 1).

Although Mattel is at a loss to explain the missing phone records from the critical month of October, 2000, there is no evidence that the records were destroyed. Moreover, other evidence presented by Mattel, especially phone records produced by Bryant that show he was in contact with MGA during that time period, suggest that the missing records would not assist Bryant.

The "missing" time records were either never created or were deleted. There is no evidence that the latter occurred. In fact, the only evidence on this point, from Mattel's Rule 30(b)(6) witness, is that although deletion of time records is possible, he was unaware of any instances of that occurring. Artavia Depo. 116, 170-71.

In sum, MGA and Bryant have failed to present any evidence regarding the "willfulness, fault, or bad faith" required to justify the imposition of terminating sanctions. Leon, 464 F.3d at 958. Many of MGA and Bryant's allegations, especially those raised in connection with Mattel's failure to suspend its auto-delete policy (portrayed as a wholesale failure to preserve emails less than 90-days old) and the availability of data from the Zeus system, are nothing more than rhetoric laced with hyperbole. Other allegations, such as Mattel's motive for delaying certain Rule 30(b)(6) depositions, and the destruction of Bryant's October, 2000, phone records and time records, are nothing more than sheer speculation, unsupported by evidence. Although counsel impressed upon the Court MGA's conviction of the righteousness of its cause, such overzealous conviction as witnessed by the Court at the hearing is no substitute for proof.

Accordingly, the Court **DENIES** MGA's and Bryant's Motion for Terminating Sanctions.

At the hearing, counsel for MGA and Bryant requested the Court certify the present order for interlocutory appeal. That request is **DENIED.** Permissive interlocutory appeals are governed by 28 U.S.C. § 1292(b):

> When a district judge, in making in a civil action an order not otherwise

appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Id. Here, there is no "controlling question of law" in controversy. The law is quite settled. Accordingly, certification for interlocutory appeal of the present order is unwarranted.

As stated at the hearing, the Court **ORDERS** all parties to set forth, in affidavit form, their preservation efforts and policies with respect to the present litigation on or before September 10, 2007.

**IT IS SO ORDERED.**



EXHIBIT 94

PAGE 775

**From:** Name: United States District Court
312 North Spring Street
Los Angeles, CA 90012
Voice Phone: (213) 894-5474

**To:** Name: Michael Zeller
Company:
865 S Figueroa St, 10th Fl,
City/State: Los Angeles,CA 90017-2543
Fax Number: 213-624-0643

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**



## Automated Document Delivery Service

*Notice pursuant to Rule 77(d) FRCiv.P*
*The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

**Fax Notes:**

Case 2:04-CV-09049 : CARTER BRYANT V. MATTEL INC

*Pursuant to General Order 06-07, Section F, the following documents shall be submitted in the traditional manner: Pen Registers, Search Warrants, Seizure Warrants, Wire Taps, Bond Related Documents, Under Seal and In-Camera Documents, and All Charging Documents (Complaints, Informations, Indictments, and Superseding Charging Documents). All other documents filed in cases unassigned to a judge shall be filed electronically with a copy e-mailed to the criminal intake mailbox for the appropriate division. The proper e-mail address for each division is as follows:*

*Western Division: CrimIntakeCourtDocs-LA@cacd.uscourts.gov*
*Southern Division: CrimIntakeCourtDocs-SA@cacd.uscouts.gov*
*Eastern Division: CrimIntakeCourtDocs-RS@cacd.uscourts.gov*

*For additional information and assistance, please refer to the CM/ECF page on the Court website at www.cacd.uscourts.gov.*

**Switch to e-mail delivery and get these documents sooner!**
**To switch, complete and submit**
**Optical Scanning Enrollment / Update form G-76.**
**Call 213-894-5474 for help and free technical support.**

*If you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case, a Notice of Change of Attorney Information, form G-6, must be filed. If there are other cases which you've received documents for which you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.*

Date and time of transmission: Thursday, August 30, 2007 2:34:04 PM
Number of pages including this cover sheet: 06

8/29

EXHIBIT 94

PAGE 770

BLUEBIRD OFFICE SUPPLIES (888) 4 www.bluebi

EXHIBIT 95

P-Send

ENTERED
CLERK, U.S. DISTRICT COURT
JAN 12 2006
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION BY DEPUTY

FILED
2006 JAN 11 PM 1:39

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(D).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARTER BRYANT,

Plaintiff,

v.

MATTEL, INC.,

Defendant.

and related actions.

CASE NO. CV-04-9049-SGL

(Consolidated with cases CV-04-9059 and CV-05-2727)

ORDER REGARDING MATTEL'S MOTION FOR LEAVE TO AMEND

This case has, increasingly, become one of the proverbial tail wagging the proverbial dog.

Back in April, 2004, Mattel, Inc., ("Mattel") filed a complaint in Los Angeles County Superior Court against its former employee and the reputed creator of the BRATZ dolls, Carter Bryant. The complaint pressed five separate state-law theories relating to certain agreements Bryant signed while an employee with Mattel, namely, an Employee Confidential Information and Inventions Agreement ("Inventions Agreement") and a Conflict of Interest Questionnaire ("COI Questionnaire"). Although couched in state law terms and ostensibly pled as a simple employment action, lurking beneath the allegations in the complaint was whether Bryant had either misappropriated Mattel's intellectual property or

EXHIBIT 95
PAGE 777

resources in creating and/or developing the BRATZ dolls or whether he continued to develop his BRATZ design while still working in Mattel's employ. In either event, the rights to the BRATZ dolls could become the property of Mattel, either through infringement or through operation of the agreements noted above. The case was later removed to this Court and was assigned the case number CV-04-9059. MGA Entertainment, Inc. ("MGA"), the maker of the BRATZ doll line, then intervened "to protect its rights to Bratz dolls" that were at stake in the action. Mattel, Inc. v. Bryant, 446 F.3d 1011, 1012 (9th Cir. 2006); see also id. at 1013 ("Mattel argues, 'a significant risk of prejudice' to MGA [exists] if the ownership of rights to intellectual property, i.e., the Bratz creations, were decided in the absence of MGA").

In the interim, Bryant filed a declaratory judgment action in this Court, seeking for the Court to declare that his BRATZ doll creations did not infringe Mattel's copyright in its Toon Teens products. See Court's July 18, 2006, Order at 3 (noting that, although "Bryant's complaint . . . makes reference to 'other Mattel products,' . . . the substance of his allegations all address the product 'Toon Teens'"). The declaratory judgment action was assigned the case number CV-04-9049.

MGA then filed an action against Mattel in this Court broadening the scope of the controversy beyond that concerned with the ownership rights to the BRATZ doll line. MGA's complaint asserted various Lanham Act claims and their California state law equivalent arising out of Mattel's alleged "habitual and unfair tactics of competition-by-intimidation and serial copycatting of MGA's products." (Compl. ¶ 7). In essence, although the prior actions were concerned with ownership in the rights to the BRATZ doll line, the allegations in 05-2727 concerned whether there had been unlawful efforts to block the marketing of those rights in the BRATZ dolls. MGA's complaint did make mention of other products that were affected by Mattel's alleged predatory business practices, but by far the largest portion of its complaint concerned Mattel's conduct in undermining (or seeking to undermine) MGA's rival



EXHIBIT 95

PAGE 778

line of BRATZ dolls.[1]

By Order dated June 19, 2006, the Court consolidated all three cases "for all purposes" as they "involve[d] a number of common issues of law and fact." As the Court later noted in its August 10, 2006, Order: "At its heart, this case asks the question: Who owns the rights to the Bratz dolls?" Resolution of this question lies at the heart of or, at the very least, affects many of the other claims set forth in each of the three respective cases. For instance, even though the allegations in 05-2727 concern Mattel's alleged efforts at defeating the marketing of the BRATZ dolls, resolution of who owned the rights to the BRATZ dolls could serve to moot many of those allegations. It is hard to imagine how it is unlawful for a company to thwart or otherwise undermine the marketing of a product it owns. Thus, if Mattel owned the rights to the BRATZ dolls, many of the allegations in the 05-2727 complaint would become moot. That said, such consolidation did not do away with the distinctions that do exist between the three cases. As the Court highlighted in its consolidation order, when either party files a pleading in the case, "the first paragraph of [that] document . . . shall inform the Court to which case(s) the document relates."

On July 18, 2006, the Court dismissed Bryant's declaratory judgment action, 04-9049, finding there existed no reasonable apprehension of an imminent copyright infringement claim being filed against him by Mattel based on Mattel's Toon Teen intellectual property. <u>See</u> Court's July 18, 2006, Order at 4. The Court's Order was predicated entirely upon counsel for Mattel's representation during oral argument that it "will not maintain that Bratz infringes the copyright in Toon Teens." Owing to this representation, the Court, in dismissing the declaratory judgment action, made clear that any future "claim by Mattel of copyright

---

[1] That the marketing of the BRATZ dolls lies at the heart of the issues between the rival doll makers in the 05-2727 case is best illustrated by the Court's discussion of those allegations in its August 26, 2005, Order, Granting in Part and Denying Part Mattel's Motion to Strike portions of MGA's complaint.



EXHIBIT 95

PAGE 771

infringement based on the Toon Teens product is barred by counsel's representation." July 18, 2006, Order at 4.

Presently before the Court is Mattel's request for leave to file an amended complaint in the 04-9059 action. The complaint broadens considerably the nature of the action from its genesis in state court. Whereas before the complaint simply sought to litigate alleged contractual and fiduciary breaches by Bryant while in the employ of Mattel (no doubt geared toward procuring a legal basis for Mattel to lay claim to the BRATZ doll line), the amended complaint adds five more defendants and nine new legal claims, alleging a wide range of commercial disputes between the rival doll makers that spans three countries. For instance, the amended complaint now contains RICO claims, a misappropriation of trade secrets claim, and various aiding and abetting claims all stemming from allegations that MGA cherry-picked certain high-ranking Mattel executives in foreign markets (many also named as defendants in the amended complaint) or designers (namely, Bryant), and then enticed or encouraged those same individuals to steal various trade and proprietary secrets (be it sales plans, sales projections, customer profiles, or intellectual property) from Mattel and hand them over to MGA before going to work at MGA.

Moreover, the amended complaint expands upon the existing breaches of contract and fiduciary duty claims in the original complaint by expanding the universe of former employees (namely, the cherry-picked executives) to whom those claims now apply.

Finally, Mattel now makes plain what was always lurking in its original complaint — a copyright claim, but one directed not only to Bryant but also to MGA, MGA's Hong Kong subsidiary, and MGA's President and CEO Isaac Larian. Moreover, Mattel characterizes its copyright claim somewhat differently from that at issue in Bryant's declaratory relief action: "The Amended Complaint does not include a claim for infringement of copyrights in Toon Teens, but rather



EXHIBIT 95
PAGE 780

infringement of copyrights in Bratz." (Reply to MGA Opp. at 11). Toward that end, Mattel has recently filed copyright registrations with the U.S. Copyright Office claiming ownership in various BRATZ doll design drawings penned by Bryant.

A. ANALYSIS

Federal Rule of Civil Procedure 15(a) provides that, once a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." With no consent to Mattel's proposed filing proffered by MGA and Bryant, determining whether to grant Mattel leave to file an amended complaint is gauged by looking to the familiar formulation of factors set forth by the Supreme Court in Forman v. Davis:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

371 U.S. 178, 182 (1962).

MGA and Bryant offer the following reasons for denying Mattel leave to amend: (1) Mattel has long known of the factual predicates underlying its copyright and intentional interference claims but delayed in asserting them; (2) the proposed amendment to add the copyright claim and the intentional interference claims (against the new defendants) are futile because they are barred by the applicable statute of limitations; (3) the copyright claim had been brought in bad faith by Mattel because of its prior public disavowal of an intent to assert such a claim; and (4) MGA and Bryant would incur undue prejudice were the copyright claim added to the

suit because of alleged spoilation of evidence issues involving Mattel's ZEUS computer system used by doll designers at Mattel and its e-mail system. None of these arguments are persuasive.

1. Awareness of Factual Predicate for Copyright and Intentional Interference Claims

MGA argues that Mattel has long known about the factual predicate for its recently added copyright claim, observing that, "[o]ver four years ago, in August 2002, Mattel CEO Bob Eckert received an anonymous letter stating that Bryant created the project that became the 'Bratz' dolls — and worked with MGA to 'steal' that project — while still employed at Mattel." (MGA Opp. at 9). Similarly, MGA argues that Mattel has long known of the factual predicate for its intentional interference claim with respect to Bryant's contract given that, "[b]y Mattel's own admission, it learned in November 2003 — more than three years ago — that Bryant had signed a contract with MGA 'dated as of' a month prior to his final day at Mattel." (MGA Opp. at 11-12).

At the outset it must be observed that "[m]ere delay in proffering an amendment does not justify denying leave to amend." Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir. 1987), vacated on other grounds by, 485 U.S. 931 (1988), and reinstated by, 853 F.2d 667 (9th Cir. 1988). Seizing upon this point of law, Mattel argues that "only in . . . cases" when "granting leave would require discovery to be reopened after summary judgment motions have been filed" has the Ninth Circuit found the denial of leave "justified" based on the passage of time alone. (Reply to MGA Opp. at 3). That is incorrect. There is a line of cases from the Ninth Circuit finding that, if a "party seeking amendment knows or should know of the facts underlying the amendment when the original complaint is filed, the motion to amend may be denied." Sierra Club, 813 F.2d at 1493 (citing Jordan v. County of Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982)). And, recently, the Ninth Circuit upheld the denial of leave to amend based on the passage of time



EXHIBIT 95

PAGE 782

even though the requested leave to amend was tendered before the time, as set forth in a Rule 16(b) pre-trial scheduling order, for amending pleadings had expired. See AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946 (9th Cir. 2006). The Ninth Circuit observed that, even when a request for leave to amend is timely under a Rule 16(b) schedule for pretrial motions, the district court may nonetheless still deny the request based on any of the Forman factors. Id. at 951-52. The Ninth Circuit then noted that the issue of untimeliness (regardless of whether the amendment is tendered "within the period of time allotted by the district court in a Rule 16 scheduling order") in seeking to amend can constitute a justification for denying leave to amend if "the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." Id. at 953. Toward that end, the Ninth Circuit observed that "an eight month delay between the time of obtaining a relevant fact and seeking a leave to amend is unreasonable." Id. In this regard, the Ninth Circuit in Dialysist was unpersuaded by the fact that, even though the moving party had known of the facts prompting the amendment for a long period of time, there still remained eight more months of discovery for the parties to marshal facts against the allegations raised by the amended pleading: "Even though eight months of discovery remained, requiring the parties to scramble and attempt to ascertain whether the Procrit purchased by AmerisourceBergen was tainted, would have unfairly imposed potentially high, additional litigation costs on Dialysist West that could have easily been avoided had AmerisourceBergen pursued its 'tainted product' theory in its original complaint or reply." Id. Thus, absent "a satisfactory explanation" for the delay in amending the complaint, the Court is well within its rights to deny leave to amend. Id.

Mattel proffers the following reasons for taking the time that it did before presenting its amended complaint: (1) Acting out of an abundance of caution to its obligations under Rule 11 to present "factual contentions [that] have evidentiary support," Mattel waited until its claims were better supported by evidence



EXHIBIT 95

PAGE 783

uncovered in discovery; and (2) the delay in the proceedings caused by "the year-long stay and the parties' prior jurisdictional disputes" have left the case still in its "nascent stage." (Reply to MGA Opp. at 2, 4).

The first reason is not well-founded. Rule 11 specifically allows parties to aver factual allegations that "are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery" so long as the party makes clear in its pleading that its factual contentions on those points are with the caveat that they are based on a good faith belief that further discovery would unearth evidence to support them. See FED. R. CIV. P. 11(b)(3). Simply put, Rule 11 did not stand in the way of Mattel averring the factual contentions it now claims it "merely suspected" as being the case based on the limited information before it. Mattel could have gone ahead and made such suspected factual allegations so long as it caveated those claims with the declaration that it reasonably believed that those allegations would be borne out by further discovery. Perhaps the time by which Mattel could have reasonably believed such allegations would be borne out by further discovery occurred after the dates noted by MGA, but it is hard to fathom that such materialization took three or four years to occur.

The second reason would have some merit to it but for the fact that the information that alerted (or should have alerted) Mattel to the existence of its now asserted copyright and intentional interference claims was brought to Mattel's attention well before the case was stayed on May 20, 2005. The stay, therefore, did not operate as an obstacle to Mattel asserting its claims; nor even if it did, the stay does not explain why Mattel waited nearly six months after the stay was lifted on May 16, 2006, to present those claims now.

All of that being said, the one thing that gives the Court pause in denying leave based on the tardiness in Mattel's presentation is the lack of any evidence that MGA or Bryant have been prejudiced by the delay. Delay unconnected to some showing of prejudice, be it prejudice to the parties or disruption in judicial

management of the case, does not suffice to deny granting leave to amend. The Ninth Circuit has noted that, "where a defendant is on notice of the facts contained in an amendment to a complaint, there is no serious prejudice to defendant in allowing the amendment" even if it is made tardily. Sierra Club, 813 F.2d at 1493. Indeed, the denial of leave was proper in the Dialysist case not simply because of the length of the delay, but because the delay itself was "detrimental" in that it would entail the opposing party to have "unfairly" incurred "potentially high, additional litigation costs" that could have been avoided if the moving party had made clear its intentions earlier. 465 F.3d at 953.

Here, as well demonstrated in Mattel's papers, it is readily apparent from the pleadings filed by MGA and Bryant in this case that both have been aware for some time of the factual predicates now underlying Mattel's copyright claim and intentional interference claim. (See MGA Opp. at 5 ("As Bryant and MGA suspected at the time of filing — and Mattel now concedes by conduct — those deceptively-pled state-law claims [in 04-9059] were copyright infringement claims all along")(emphasis added)). The parties have engaged in meaningful discovery regarding many of the facts touched upon by these new claims, be it tracking down experts in various forensic fields or taking depositions of various of the key players to those claims. In point of fact, in their papers filed with this Court before this present motion, both Bryant and MGA have made it abundantly clear that they have long suspected that a copyright infringement claim was in the offing as evidenced by Bryant's filing of the declaratory judgment action and MGA's intervention in the 05-9059 matter to protect its rights to the BRATZ dolls. Similarly, MGA and Bryant have been on notice to the facts comprising the interference claim concerning Bryant's contract as evidenced by the identity of the individuals who have been deposed by Mattel, as well as the nature of the questions posed and the testimony proffered at those depositions. MGA's argument that, with the amendments, it faces the prospect of defending "against stale claims" owing to faded memories and



EXHIBIT 95

PAGE 785

loss of documents caused by the great passage of time, (see MGA Opp. at 3, 13), is diminished by the fact that (no doubt owing to the sophistication of all counsel involved) discovery on these very issues have been proceeding apace by both sides long before Mattel filed its proposed amendments. This is simply not a case where "additional litigation costs" will be "unfairly" visited upon Bryant and MGA by allowing the proposed amendments; much of those costs have already been borne by the parties for some time.

2. Spoilation of Evidence

MGA next argues that Mattel's delay in bringing the amended complaint has caused it prejudice as, in the interim, critical pieces of evidence have been or are suspected of having become lost. For instance, MGA asserts that Mattel's Rule 30(b)(6) witness concerning its Zeus computer system, Julia Marine, testified that, "although Mattel identified and segregated its most relevant backup tapes available for Zeus, Mattel allowed its tape backup system to expire the database for those backup tapes, thereby eliminating all information about what was actually stored on those backup tapes." (MGA Opp. at 9-10). Information on the Zeus computer system is critical because of Mattel's assertion that part of its copyright claim rests on Bryant's exposure to Mattel development programs. (First Am. Compl. ¶ 26(a)). As explained by MGA: "[C]oncept data and drawings created by [Mattel] design center personnel are stored on Zeus. Thus, the electronic documents stored on Zeus – which should include the metadata showing who created, edited and accessed Mattel's concept drawings and designs – during the time Bryant worked in the design center at Mattel is vitally important to defending against Mattel's claims." (MGA Opp. at 14). MGA's argument is neither an accurate characterization of Ms. Marine's testimony nor of the nature of Mattel's exposure claim.

Ms. Marine did not testify that the information on the backup tapes (some fifty in total) was lost, but rather that Mattel no longer carried the type of hardware



EXHIBIT 95

PAGE 786

that could restore the information still found on those tapes:

Q. So if you wanted to restore that 2002 backup tape[s] then, how would you go about doing that?

. . . .

A. You need the hardware so if we don't have the hardware — if [the technology used by the tape is] DLT we don't have the hardware and you've got to buy it and – well, first you have to find a place to put it with adequate power which we don't have in the design center. You need to have a tape library. You need to have the tape drives that carried those tapes. You need a server that has the capability to – that's big enough to handle all of the hardware. You need the software – the license for the backup software[, Net Backup]. You need the disk space to restore it to and then you have to start reading in all those tapes.

Q. You said that you don't have that in the design center. Do you have that hardware anywhere else in the company?

A. DLT? No, no.

Q. At what point did you get rid of the hardware?

A. Once the last backups — DLT backups expired so it would have been a couple years ago probably.

(Decl. Diana Torres, Ex. K at 118-119).

The above testimony clearly denotes the difficulty in restoring what was on Mattel's Zeus computer system during the relevant time frame, but it certainly does not demonstrate that the information on those backup tapes has been "eliminated" or forever lost. Undoubtedly it will be a costly endeavor to recover that information (not to mention to later search and sort through it); but to argue, as MGA does, that the information is "unavailable" or "lost", (MGA Opp. at 9, 14), exaggerates its plight. Indeed, Ms. Marine's testimony indicates that the difficulty in retrieving the information on the Zeus backup tapes has been present for some time (maybe since 2004 or perhaps even earlier). This is important because it undermines MGA's claim that Mattel's undue delay in bringing its amended complaint will cause



EXHIBIT 95

PAGE 787

it to suffer prejudice it otherwise would not have faced if the amendments were brought sooner. Such prejudice has been present for years, and Mattel's failure to bring its amended complaint sooner would not have changed this situation.

Similarly, MGA's point that access to what was on the Zeus computer system is vital in demonstrating that Bryant was not exposed to or otherwise did not hack the system to steal other designers work is diminshed to some extent by the fact that Bryant himself testified that he did not use the Zeus computer system and was "pretty much computer illiterate" while employed at Mattel. Admittedly, the ability to point to information on the Zeus system backup tapes to prove that Bryant did not access other designers drawings or to prove the date those drawings were created by those other designers would be useful evidence to negate Mattel's factual claims. Nonetheless, such evidence still would not discount other avenues outside of the Zeus computer system by which Mattel could seek to prove that Bryant was exposed to its copyrighted works, e.g., witness testimony that Bryant saw drawings of the same posted on other designers' cubicles.

MGA next surmises that Mattel's e-mail records have disappeared, not because it has any proof on that point, but simply because Mattel has postponed the deposition of the individual most knowledgeable of Mattel's e-mail records until after the hearing on Mattel's motion for leave to amend. (MGA Opp. at 10). Speculation of spoilation does not suffice. That MGA's argumentation on this point is nothing more than speculation is best exhibited by the evidence it has proffered in support of its argument: "[I]f the sole retained backup for Zeus is no longer available, it is not hard to imagine that Mattel's electronic mail archives are similarly out of reach." (MGA Opp. at 15 (emphasis added)). MGA then makes much of a deposition from a Mattel executive, Alan Kaye, who testified that e-mails in his inbox would be automatically deleted if they had remained there for more than a certain time period. (Decl. Diana Torres, Ex. H at 292-93). MGA takes from this acknowledgment that Mattel has an "automatic email deletion system" that has



EXHIBIT 95

PAGE 788

compromised Mattel's "duty to preserve documents." (MGA's Opp. at 14). Noticeably absent from MGA's argument is any evidence that the e-mails so deleted from a Mattel employee's inbox are forever lost or, as is far more likely, whether such information remains or is otherwise archived on some backup file on Mattel's computer system. Absent concrete proof that spoilation has occurred, nothing in MGA's argument forms a basis for denying Mattel its requested leave to amend.

3. Statute of Limitations

MGA next argues that Mattel's copyright and intentional interference claims are futile as both are barred by the applicable statute of limitations. This argument was pressed emphatically at oral argument. With respect to the copyright claim, MGA argues that the applicable statute of limitations is three years, with the limitations period accruing from when a party has knowledge of a violation or when a reasonably diligent person would have been put on inquiry of the infringement. (MGA Opp. at 16 (citing Roley v. New World Pictures, 19 F.3d 479, 481 (9th Cir. 1994)). MGA argues that Mattel was put on notice about its copyright claim in August, 2002, upon the receipt of the anonymous letter to Mattel's CEO that Bryant had stolen the idea for BRATZ while working at Mattel. Thus, according to MGA, the limitations period on Mattel's claim expired in August, 2005, rendering Mattel's current copyright claim stale.

The problem with MGA's analysis is it fails to take into account the relations-back principles found in Rule 15(c), which provides that "[a]n amendment of a pleading relates back to the date of the original pleading when "the claim . . . in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading," or if such relation back is otherwise permissible by the state "law that provides the statute of limitations applicable to the action." By MGA's own admission Mattel's copyright claim arises out of the same conduct or transaction contained in the original complaint filed in April, 2004, well within the



EXHIBIT 95

PAGE 789

applicable limitations period.[2] (MGA Opp. at 12 ("These very same allegations [contained in the original complaint] underlie the copyright infringement and intentional interference contract claims Mattel now seeks to allege against MGA, Mr. Larian and Bryant")).

MGA's statute of limitations argument with respect to the intentional interference claims fares no better. According to MGA, the applicable statute of limitations is two years for an intentional interference with contract claim and Mattel was aware of the facts alerting it to this claim (insofar as Bryant's contract is concerned) on November 24, 2003, when it learned "that Bryant worked with MGA to develop the 'Bratz' dolls prior to his last day of employment by Mattel and, hence, prior to the expiration of his contractual relationship with Mattel."[3] (MGA Opp. at 18 (citing Knoell v. Petrovich, 76 Cal. App.4th 164, 168 (1999)). Such a time line would, according to MGA, mean that the applicable limitations period expired on Mattel's interference with Bryant's contract claim on November 24, 2005, well before Mattel sought leave to file its amended complaint. (Id). The problem again with MGA's argument is that it ignores that through Rule 15(c) Mattel's intentional interference claim would relate back to when it filed its original complaint in April,

---

[2] The same would appear to be true — that the amendments would be timely — if the amendments related back to Mattel's answer (filed on May 13, 2005) to MGA's complaint in the 05-2727 case.

[3] With respect to Mattel's interference with contract claim as to one of its former executives, Ron Brawer, MGA claims Mattel was put on notice of that claim on September 17, 2004, when Brawer informed Mattel that he leaving to go to work for MGA. (MGA Opp. at 19-20). The problem with this argument is that nothing from that simple event — Brawer's declaration of his intent to leave — in any way would apprise Mattel that MGA had encouraged Brawer to engage in nefarious conduct (the stealing of proprietary information) causing Brawer to breach his contract with Mattel that he would not do anything to help a competitor while working for them. MGA's contention that Mattel must have known of those misdeeds in mid-September is nothing more than speculation. Futility cannot be founded on what might or might not be the case; either a claim is futile to bring or it is not.



EXHIBIT 95

PAGE 710

2004, well before the limitations period expired.[4]

Accordingly, MGA's futility argument is not well-founded.

4. Prior Disavowals of Asserting a Copyright Claim

Finally, MGA takes umbrage with the cageyness to which Mattel has taken in this case as to whether or not it is asserting a copyright infringement claim against it. To MGA, such ducking and weaving on Mattel's part renders its effort to now bring such a copyright claim as one done in bad faith. No doubt the Court itself has been subjected to Mattel's overly vague statements on this point, but in the end nothing in those statements has ever foreclosed the possibility that such a claim may be in the offing. Indeed, during the oral argument on Mattel's motion to dismiss Bryant's declaratory judgment action, the Court pressed Mattel's counsel as to whether it would assert such a copyright claim against Bryant as it is currently seeking to do. The most that Mattel's counsel would proffer was that Mattel would not assert a copyright claim against Bryant based on Mattel's copyright rights in TOON TEENS. At that point, the Court directed the parties to engage in a meet and confer based on counsel for Mattel's representation and to provide a report to the Court based on those discussions. The report submitted to the Court made clear that, although Mattel was willing to accede that it would not bring a copyright claim based on TOON TEENS, it refused to accede to Bryant's broader request that "Bryant 'never copied anything' and that no Mattel product has any 'relevance' to any claim that Mattel has or ever will assert against Bryant." This by itself should have dispelled any illusion either Bryant or MGA was operating under that Mattel's prior statements had foreclosed any potential copyright claim against them.[5]

---

[4] Again the relations-back principle would also seem to render its claim timely if it were filed as an amended answer (the original having been filed in May, 2005) in the 05-2727 case.

[5] MGA also argues that Mattel's effort to substitute MGA and its CEO, Isaac Larian, for the "Doe" defendants listed in its original complaint is improper because Mattel knew of their identity when it filed the original complaint. The argument is



EXHIBIT 95

PAGE 791

That said, Mattel's allegation in the amended complaint as to how it is seeking to lay claim to the copyright in BRATZ is disconcerting. Paragraph 26, subsection a, in the amended complaint alleges that Bryant "misappropriated and misused Mattel property" by "using his exposure to Mattel development programs to create the concept, design and name of Bratz." (First Am. Compl. ¶ 26(a)). Such "exposure" could include Bryant misappropriating the Mattel design concept in TOON TEENS in drawing his inspiration for the BRATZ doll. Were Mattel's copyright claim so predicated it would be barred by this Court's July, 2006, Order, dismissing Bryant's declaratory judgment action. Mattel was pressed on this point during oral argument and conceded that such "exposure" to Mattel "development programs" did not include TOON TEENS. With this representation, nothing in Mattel's proposed copyright claim is barred under the rubric of bad faith.

5. Judicial Economy Considerations

In his opposition, Bryant adds an additional reason for denying leave beyond those contained in MGA's papers — the amendment would muddy the waters in the 04-9059 by adding "tangential" issues that would only serve to delay resolution of the key issue lying at the heart of the complaint: Who owns the rights to the BRATZ line of dolls. (Bryant Opp. at 2 ). Bryant notes that the case has proceeded apace in moving toward resolving that issue, and the amendment would "transform

misplaced. As made clear by Mattel, California law allows a plaintiff to substitute in a defendant for a "Doe" if the plaintiff was ignorant of that defendant's identity or ignorant of the basis for liability at the time the complaint was filed. See Miller v. Thomas, 121 Cal.App.3d 440 (1981). MGA does not dispute this legal contention but at oral argument disputed that Mattel did not know the basis for liability against itself or Mr. Larian due to the "uncanny" similarity between the allegations averred in the original complaint and those now proffered against the two in the amended complaint. Specifically, MGA notes that the original complaint spoke of Bryant working for one of Mattel's competitiors and of that employee's theft of Mattel's intellectual property before leaving to work for that competitior. At most, all this shows is that Mattel knew that Bryant went to work for MGA, not that MGA or Mr. Larian encouraged Bryant's alleged unlawful behavior recited in the original complaint.



EXHIBIT 95
PAGE 792

what Mattel has always claimed was a straightforward employment action against an individual defendant into a global commercial dispute against Mattel's primary competitor, MGA," that "will last years" thereby "delay[ing]" resolution of who owns BRATZ.[6] (Bryant Opp. at 2). Mattel argues that "the law does not deny leave to amend because claims are 'tangential'" and then reiterates its point that some showing of prejudice, namely, seeking leave after expiration of discovery, is necessary. (Reply to Bryant Opp. at 3). That is not entirely correct.

As noted previously, the Ninth Circuit recently upheld a denial for leave to amend because the amendment would have "drastically changed" the litigation, even though the leave request was tendered before the time, as set forth in a Rule 16(b) pre-trial scheduling order, for filing a motion to amend had expired and well before the discovery cut-off. See AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 953 (9th Cir. 2006). In justifying its reasoning the Ninth Circuit cited approvingly to the following statement from a well-respected treatise: "If an amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudical." Id. at 953 n.2 (quoting 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2nd ed. 1990)). Thus, Dialysist recognized that the introduction of "different legal theories" and/or proof of materially different facts well into the litigation can itself be a basis for finding prejudice regardless of whether the period for discovery has expired (or is even close to expiring) or the parties have already filed summary judgment motions. Id. at 953-54.

Although the parties can safely be said to be at this point well into the

[6] Bryant also brings intricate legal arguments about the sufficiency of the allegations Mattel has averred in building its RICO claims against him. Such considerations are best left to be resolved on a properly filed motion to dismiss.



EXHIBIT 95

PAGE 793

litigation in this consolidated action (as evidenced by the protracted discovery disputes contained in the docket sheet that the parties have had before the magistrate judge and now the special master, and the litigation of motions to dismiss in both the 04-9049 and 04-9059 cases), the fact remains that, as Mattel has made painfully clear in its papers, no scheduling order has been entered in this case.[7] This takes away somewhat from the prejudice Dialysist found to exist when a "drastic change [in a party's] litigation theory" takes place mid-stream in the litigation process. Id. at 953. Simply put, without a schedule for the filing of pre-trial motions and other matters (e.g., discovery cutoff), the parties have been given free reign in how to conduct the litigation in this case.

That the delay in bringing the proposed amendments and the relative length of time into the litigation when those amendments were brought may not neatly fold into Dialysist's reasoning does not mean that leave must nonetheless be granted. The 04-9059 action, as it is presently constituted, is not a complex one. It asks a rather narrow and straightforward question — Did anything from Bryant's employment at Mattel during the 1999-2000 period give Mattel ownership rights to the BRATZ doll line? The proposed amendments would radically alter the litigation in that case to include far ranging disputes involving multiple parties and concerning events not connected with the BRATZ ownership issue. That the original action was a relatively simple and straight-forward matter raises another point beyond the change in the action's litigation posture — whether entangling the rival doll makers' other commercial disputes into this particular case would serve to muddy the waters and make the matter that much more difficult to manage from the Court's perspective.

---

[7] Mattel's repeated refrain that the matter is in its nascent stage as evidenced by the fact that the parties only just recently exchanged in initial disclosures is misleading. The exchange of initial disclosures referred to by Mattel is in the 05-2727 case. With respect to the 04-9059 case it appears that such initial disclosures were completed long ago as evidenced by the fact that discovery disputes appeared in that case as far back as January, 2005.

EXHIBIT 95



PAGE 794

As has long been recognized, equally important in determining whether to grant such leave is what impact such amendments would have on the court's ability to manage the case. See 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 15.15[1] at 15-42.1 to 15-43 (3rd ed. 2006)("A court should also consider judicial economy and its ability to manage the case. . . . The court should also temper the policy favoring freely granting leave to amend with consideration of the ability of the district court to manage the case adequately if amendment is allowed"). As Judge Clark for the Fifth Circuit once observed: "In keeping with the purposes of the rule, the court should consider judicial economy and whether the amendments would lead to expeditious disposition of the merits of the litigation. Finally, the court should consider whether the amendment adds substance to the original allegations, and whether it is germane to the original case of action." Chitimacha Tribe of Louisiana v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982); see also Sierra Club v. Union Oil Co. of California, 813 F.2d 1480, 1493 (9th Cir. 1987)("General considerations of judicial economy also justify allowing the amendments. The violations included in the proposed amendment relate to the same subject matter as the original complaint. Allowing the amendment will further the federal policy of 'wrapping in one bundle all matters concerning the same subject matter.'").

Mattel's amendments do not add substance to the claims contained in its original complaint. Rather, they would expand the universe of claims and defendants stretching well-beyond the questions raised in the original complaint over whether Bryant's conduct while in the employ of Mattel subjected his later attributed creation of the BRATZ dolls to the provisions in Mattel's Inventions Agreement or otherwise rendered his creation subject to an infringement action. Nowhere does Mattel seek to reconcile the breadth of its present amendments with the narrowness of the allegations contained in its original complaint. In fact, the precise opposite is true. Mattel acknowledges that its proposed amendments bear



EXHIBIT 95

PAGE 745

more congruity to the allegations leveled against it in MGA's Lanham Act case than to those in the action to which it seeks to add them:

> [M]any of the matters raised by Mattel's proposed Amended Complaint are and will remain at issue because of MGA's Complaint, whether or not leave to amend is granted. MGA's claims allege that a broad array of purported Mattel conduct across the globe, starting at least as early as 1999, has violated the Lanham Act and unfair competition law. This includes Mattel's alleged infringement of Bratz and other MGA products. As a result, issues in the proposed Amended Complaint are already part and parcel of Mattel's defenses to MGA's unfair competition claims, including because they show that MGA and Bryant, and not Mattel, are ones who stole the products and other properties involved.

(Reply to Bryant Opp. at 7 (emphasis added)). Mattel apparently finds this discongruity unimportant because "all of these matters have been consolidated with the Bryant case." (Id. at 7). As noted earlier, the fact that the cases have been consolidated does not mean that the parties can ignore the distinctions that still exist between them. If, as Mattel acknowledges, the present amendments are nothing more than re-formulated defenses and counterclaims it presently has to MGA's complaint against it in the 05-2727 case, then such amendments should be brought in the form of an amended answer and counterclaim in that case.

Consideration of the distinctions between the two cases is wise as it serves as a useful tool in providing the Court a better means to manage the cases now that they have been consolidated. The proverbial dog (ownership in BRATZ) should be wagging the proverbial tail (the remaining commercial disputes), not the other way around. Admittedly, the dog's tail has grown in size both by MGA's filing of its complaint in the 05-2727 action and Mattel's response thereto through its proposed amendments. Nonetheless, it is readily apparent to the Court that the crown jewel in this action still remains the ownership rights to the BRATZ dolls. The parties have engaged in extensive and undoubtedly expensive discovery on this very issue (from hiring world-renowned experts to test the age of Bryant's design



EXHIBIT 95

PAGE 796

drawings to technically complex discovery of what is on each other's computers).

Indeed the separateness of the two matters is reflected in how the cases are currently structured, namely, the narrowness of the issue involved in 04-9059 and the expansiveness of the facts at issue in 05-2727. In light of this fact, the Court believes a two-track scheduling order wherein the 04-9059 matter's discovery cut off and trial date are set well-ahead of those in 05-2727 makes the most sense. As noted earlier, many of the legal claims being pressed in 05-2727 will be affected by the result of the litigation in 04-9059. If, for instance, Mattel does own the rights to the BRATZ dolls (either owing to Bryant's stealing his idea from one of Mattel's "development programs" or by way of the Inventions Agreement because he continued to work on his designs while at Mattel), then large portions of MGA's Lanham Act infringement claims may become moot. By the same token, if Mattel does not own rights to BRATZ, then some of the defenses and counterclaims set forth as independent claims in the present amended complaint may become moot, including Mattel's copyright infringement claim as well as portions of its remaining RICO, misappropriation, and aiding and abetting claims. If, however, the Court were to allow the amended complaint to be filed in the 04-9059 action, such case management would be difficult, if not impossible as many of the issues being litigated in the 05-2727 case would have been poured into the 04-9059 case by the amendment. Due to this substantial overlap in claims and facts, a two-track scheduling order utilizing the case number distinctions would be impossible to craft. When pressed by the Court at oral argument as to which of its proposed claims it believed would not undermine the BRATZ ownership posture of the 04-9059 case, Mattel cited to its copyright and RICO claims. However, upon further questioning by the Court, counsel for Mattel acknowledged that much of those claims were, like the claims at issue in 05-2727, dependent upon resolution of the ownership issue.

In light of the burden allowing Mattel's amendment to proceed would have on this Court's ability to efficiently manage these consolidated matters denial of

EXHIBIT 95



PAGE 197

Mattel's request to amend its complaint in the 04-9059 matter is justified. See Perrian v. O'Grady, 958 F.2d 192, 195 (7th Cir. 1992)("The burden to the judicial system can justify a denial of a motion to amend 'even if the amendment would cause no hardship at all to the opposing party'"). Buttressing the Court's decision is the fact that, even with such a denial, Mattel may file (and the Court provides leave to Mattel to so file) an amended answer and counterclaim in the 05-2727 case raising all the new claims and defendants presently sought to be achieved through amendment of its complaint in the 04-9059 action. None of the substantive concerns raised by MGA and Bryant to the present amended complaint, e.g., statutes of limitations, would appear to be affected if the new claims and defendants were brought as defenses and counterclaims in the 05-2727 case as opposed to the 04-9059 one.

Accordingly, the Court GRANTS Mattel's motion for leave to file its proposed amendments, but only insofar as they are pled in the form of an amended answer and counterclaim in the 05-2727 case.

Finally, the lack of a scheduling order in this case is problematic; one should have been entered long ago. See Fed. R. Civ. P. 16(b)(noting that a scheduling "order shall issue as soon as practicable but in any event within 90 days after the appearance of a defendant and within 120 days after the complaint has been served on a defendant"). In light of the fact that entry of a scheduling order is woefully overdue in this case, the Court hereby ORDERS that a Rule 16(b) scheduling conference be held in this consolidated matter on February 12, 2007, at 1:30 p.m. in Courtroom One. The parties are directed to file a Joint Rule 26(f) report with the Court by February 5, 2007.

IT IS SO ORDERED.

DATE: 1-11-07

STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE



EXHIBIT 95

PAGE 198

BLUEBIRD OFFICE SUPPLIES

**EXHIBIT 96**

KEKER & VAN NEST, LLP
JOHN W. KEKER - #49092
jkeker@kvn.com
MICHAEL H. PAGE - #154913
mpage@kvn.com
CHRISTA M. ANDERSON - #184325
canderson@kvn.com
MATTHEW M. WERDEGAR - #200470
mwerdegar@kvn.com
JOHN E. TRINIDAD - #250468
jtrinidad@kvn.com
AUDREY WALTON-HADLOCK- #250574
awaltonhadlock@kvn.com
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff
CARTER BRYANT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br>Plaintiff,<br>v.<br>MATTEL, INC. a Delaware Corporation,<br>Defendant. | Case No. CV 04-09049 SGL (RNBx) (consolidated with CV 04-9059 & 05-2727<br>**CARTER BRYANT'S RESPONSES TO MATTEL, INC.'S AMENDED SUPPLEMENTAL INTERROGATORY REGARDING DEFENDANTS' AFFIRMATIVE DEFENSES**<br>**<u>CONFIDENTIAL – ATTORNEYS' EYES ONLY</u>**<br>Judge: Hon. Stephen G. Larson<br>Discovery Cut-Off: Jan. 28, 2008 |
| CONSOLIDATED WITH MATTEL, INC., v. BRYANT and MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

**PROPOUNDING PARTY:** MATTEL, INC.

**RESPONDING PARTY:** CARTER BRYANT

**SET NO.:** SUPPLEMENTAL (AMENDED)

1-7

Pursuant to Federal Rules of Civil Procedure 33, and the Court's December 3, 2007 Order, Carter Bryant responds and answers Mattel Inc.'s Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses as follows:

**Preliminary Statement**

1. This preliminary statement applies to all responses Bryant provides below to Mattel's Amended Supplements Interrogatory Regarding Defendants' Affirmative Defenses. Bryant's responses are made without waiving, or intending to waive but, on the contrary, expressly reserving: (a) the right to object, on the grounds of competency, privilege, relevancy or materiality, or any other proper grounds, to the use of the responses, for any purpose in whole or in part, in any subsequent step or proceeding in this action or any other action; (b) the right to object on any and all grounds, at any time, to other interrogatories or other discovery procedures; and (c) the right at any time to revise, correct, add to, or clarify any of the responses propounded herein. Bryant's responses are made for the purposes of this action only.

2. Bryant's responses herein are to the best of Bryant's present knowledge, information and belief. Bryant's responses are at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Bryant's recollection and knowledge, are subject to such refreshing of recollection, and such additional knowledge of facts, as may result from further discovery or investigation. Bryant also anticipates that further discovery, investigation, and legal research and analysis, as well as expert analysis, will reveal new facts or new significance of known facts, which may lead Bryant to discover other information responsive to this Interrogatory. Also, as detailed more fully in particular responses, Mattel has strenuously resisted and obstructed complete discovery on some of the affirmative defenses at issue in these responses. Although Mattel has now been ordered to

provide full discovery on many of the relevant issues, other issues remain pending before the Discovery Master and the Court. Mattel's stalling of this discovery, as well as other pending discovery, has limited Bryant's ability to respond fully here. Bryant reserves the right to amend or supplement his objections and responses in light of any future discovery, investigation or analysis, and to use any such information at any hearing or at trial. Bryant also expressly reserves the right to make any use of, or to introduce at any hearing or at trial, information that is responsive to Mattel's interrogatories, but discovered subsequent to Bryant's responses herein, or omitted from this response through any mistake or oversight.

3. Bryant's responses are based on his understanding and interpretation of the interrogatory. Bryant reserves the right to supplement his objections and responses should Mattel subsequently put forth an interpretation of any part of the interrogatory that differs from that of Bryant.

4. The responses below shall not be construed as an admission as to the relevance or admissibility of any statement or characterization contained in any interrogatory. Bryant reserves all objections, including without limitation objections as to competency, relevance, materiality, privilege, authenticity, or admissibility. Bryant also reserves all other rights with respect to these responses, including all rights to challenge on appeal the Court's December 3, 2007 Order requiring Bryant to answer this interrogatory "without objection."

5. Bryant reserves the right to object on any ground at any time to such other or supplemental discovery requests as Mattel may propound involving or relating to the same subject matter of these interrogatories.

6. Bryant does not intend to disclose here any information that was prepared in anticipation of litigation, constitutes attorney work product, discloses mental impressions, conclusions, opinions or legal theories of any attorney for or other representative of Bryant, contains privileged attorney-client communications or is otherwise protected from disclosure by any other privileges, laws, or rules.

Any disclosure of such protected or privileged information is inadvertent and shall not be construed as a waiver of those privileges or protections. Bryant reserves the right to correct the record as to any such disclosure, as provided for in the Protective Order governing this case.

7. As previously mentioned, discovery has yet to be completed in this case. By responding and objecting to these interrogatories, Bryant does not intend to, and does not, limit the evidence he may rely to support his contentions and defenses at trial, or to rebut or impeach contentions, assertions, and evidence presented by Mattel.

8. Bryant does not hereby admit, adopt or acquiesce in any factual or legal contention, assertion or characterization contained in the Interrogatory or any particular request therein.

9. No incidental or implied admissions are intended by this Response. These responses should not be taken as an admission that Bryant accepts or admits the existence of any facts set forth or assumed by any instruction, definition or interrogatory.

**Responses**

**Supplemental Interrogatory:**

State the facts upon which YOU intend to rely at trial to support YOUR affirmative defenses, and IDENTIFY all PERSONS with knowledge of those facts and all DOCUMENTS that REFER OR RELATE TO those facts.

**Responses to Supplemental Interrogatory:**

**A. First Affirmative Defense (Unclean Hands)**

Mattel's counterclaims, and each claim for relief, are barred by the equitable doctrine of unclean hands. Mattel's conduct towards Bryant and MGA regarding the matters at issue in this litigation has been unfair, and Mattel is undeserving of any relief against Bryant. In particular, Mattel believed from the time that Bryant left Mattel's employ that he was going to perform work for a Mattel competitor,



EXHIBIT 96

PAGE 802

press releases and communications with retailers and financial investors that improperly contain NPD data; Mattel's focus group studies and consumer research campaigns for MyScene products; documents regarding TIA's rules for the Toy-of-the-Year awards; correspondence between MGA's representatives and TIA; and correspondence between CARU and MGA representatives; documents produced by TIA in response to subpoena (TIA00001-00400); documents produced by CARU in response to subpoena; documents produced by NPD (NPD00001-00496)

**B. Second Affirmative Defense (Waiver)**

Mattel's counterclaims, and each claim for relief, are barred by the equitable doctrine of waiver. In particular, Mattel believed from the time that Bryant left Mattel's employ that he was going to perform work for a Mattel competitor, and Mattel shortly thereafter began investigating what it suspected to be wrongdoing in connection with the Bratz dolls. Yet, Mattel waited and said nothing while the dolls were successfully (and at great cost) developed, manufactured and sold, and only filed suit years later. Mattel was aware of the relevant facts regarding Mr. Bryant's work for MGA, but intentionally waived and chose to forgo asserting any rights over the Bratz dolls until years later. Mattel has also tolerated conduct by other employees similar to the alleged conduct by Bryant on which Mattel now bases its contract and related claims.

Mattel's counterclaims are barred because, among other things, Mattel intentionally delayed taking legal action against MGA or Carter Bryant for several years after the launch of Bratz in the belief that Mattel would be able to drive Bratz (and as a result, drive MGA) out of the market for fashion dolls and/or the belief that Mattel did not have any rights under the "Inventions Agreement" as against Bryant, based on its own interpretations of the "Inventions Agreement," and on the advice that Mattel received from in-house and outside counsel. Mattel also waited to file suit until after it had secured Bryant's assistance in an unrelated legal action against another Mattel competitor, namely the litigation known as *Gunther-Wahl*

*Productions v. Mattel, Inc.*, Case No. BC195819 filed on or about August 12, 1998 in the Superior Court of the State of California, County of Los Angeles, and subsequent appeals. Mattel only took legal action after it no longer needed Bryant's assistance, and well after MGA and Bryant had invested substantial amounts of capital and creative and innovative human effort in the Bratz line of dolls and had experienced enormous success in the market place.

A report from Bryant's exit interview at Mattel shows that Bryant told Mattel's human resources representative he was leaving because an "[o]pportunity arose; had to take it." Mattel has acknowledged that employees leaving under similar circumstances to work for an unnamed competitor have "caused Mattel to begin investigating their activities."

Furthermore, numerous Mattel employees knew and/or believed in the fall of 2001 that Carter Bryant was involved in the development and introduction of the Bratz line. This knowledge and/or these beliefs by Mattel employees went well beyond mere "rumor and innuendo," as has been suggested by Mattel. In its interrogatory responses, Mattel also asserts that Bryant used several "other Mattel employees" to work on the Bratz dolls so that they "had been designed and were far along in development during the time that Bryant was employed by Mattel."

Shortly after Bratz dolls were in retail stores in or about September 2001, Mattel knew or was on notice that Carter Bryant was involved in the development of that line. Mattel now asserts in this lawsuit that the idea for Bratz was a violation of rights that Mattel had in a proposed flanker brand called "Toon Teens," which Mattel was developing in the summer of 1999, but never introduced to market. In this connection, during 2001, Toon Teens samples were taken out of storage by Mattel employees and delivered to Mattel's legal department for analysis of possible copyright infringement and other claims against Bryant and MGA.





Mattel knew Bryant's role in Bratz and was investigating possible claims *at least as early as summer 2001*, when Bratz came out. Margaret Leahy, the third-party sculptor of Bratz, testified that in the summer of 2001 a friend from Mattel was "grilling" her, "like somebody put her up to it," about whether "Carter [was] the designer on the doll or what was [MGA employee and former Mattel employee] Paula [Garcia's] involvement" in Bratz. Leahy testified that she told the Mattel employee that "Carter initially came up with a design and Paula carried it out."

Mattel actively investigated Bryant's role in creating Bratz in 2001 and 2002. Mattel's internal investigative files confirm that Mattel commenced an official investigation into whether Bryant stole the Bratz idea in March 2002. Mattel admitted that in 2002 it investigated "rumor and innuendo that Bryant may be working with MGA on Bratz," including whether "Bryant ... plagiarized [Mattel product] 'Toon Teens' and created Bratz dolls for MGA" and whether Bryant helped MGA create Bratz "[w]hile he was working with Mattel." Mattel's CEO Robert Eckert received an "anonymous letter" on or about August 5, 2002 that alleged that Bryant helped MGA create Bratz while working for Mattel. As part of an official investigation requested by Mattel CEO Robert Eckert in August 2002 as to whether Bryant helped MGA create Bratz "[w]hile he was working with Mattel," Mattel's head of security, Richard De Anda, wrote that he had been "aware of this situation and .... working on it for several months" but it was in the hands of Mattel's attorneys. Testimony from former Mattel employee Elise Cloonan confirms that by at least late 2001, Mattel's lawyers were conducting an investigation involving Bryant's work on Bratz in the design department.

On March 15, 2002, Mattel opened an investigative file on MGA and Isaac Larian after receiving information from Evelyn Viohl and Ivy Ross that MGA had recently hired a number of former Mattel employees and was reportedly manufacturing products that appeared to be Mattel designs.



EXHIBIT 96



PAGE 805

# This Page Intentionally Omitted

EXHIBIT 96

PAGE 806