1   **RESPONSE TO REQUEST FOR ADMISSION NO. 139:**

2          MGA incorporates by reference the above-stated general objections as

3   if fully set forth herein.  MGA specifically objects to this request on the grounds

4   that the request is vague and ambiguous, particularly in its use of the word

5   "represented," in that such phrase implies a representation of fact and the apparent

6   authority to make such representation of fact.

7          Subject to and without waiving the foregoing general and specific

8   objections, MGA responds as follows to the request: MGA denies the request.

9

10   **REQUEST FOR ADMISSION NO. 140:**

11          Admit that, prior to October 20, 2000, MGA knew that BRYANT was

12   employed by MATTEL.

13

14   **RESPONSE TO REQUEST FOR ADMISSION NO. 140:**

15          MGA incorporates by reference the above-stated general objections as

16   if fully set forth herein.  MGA specifically objects to this request on the grounds

17   that it is vague and ambiguous, particularly as to time and in its use of the term

18   "MGA" and the phrase "was employed by MATTEL."  MGA also specifically

19   objects to this request on the grounds that no time frame given for BRYANT's

20   employment with Mattel.

21          Subject to and without waiving the foregoing general and specific

22   objections, MGA responds as follows to the request: MGA admits that prior to

23   October 20, 2000, a limited number of people at MGA knew that BRYANT was

24   employed by Mattel at times preceding October 4, 2004.  Except as so admitted

25   MGA denies the request.

26

27

28

EXHIBIT ___106___

PAGE ___902___

MGA'S RESPONSES TO MATTEL'S THIRD SET
OF REQUESTS FOR ADMISSION TO MGA

1  **RESPONSE TO REQUEST FOR ADMISSION NO. 239:**

2    MGA incorporates by reference the above-stated general objections as

3  if fully set forth herein. MGA further objects to this request on the grounds that it

4  seeks information about a statement that is incomplete and/or out of context.

5    Subject to and without waiving the foregoing general objections, MGA

6  responds as follows to this request: MGA has made a reasonable inquiry and the

7  information known or readily obtainable by MGA is insufficient to enable MGA to

8  admit or deny this request. On that basis, MGA denies the request.

9

10  **REQUEST FOR ADMISSION NO. 240:**

11    Admit that the work registered as VA 1-233-104 is a derivative of the

12  works registered as VA 1-218-487, VA 1-218-488, VA 1-218-489, VA 1-218-490,

13  VA 1-218-491, VA 1-090-287, VA 1-090-288, VA 1-090-289 and VA 1-090-290.

14

15  **RESPONSE TO REQUEST FOR ADMISSION NO. 240:**

16    MGA incorporates by reference the above-stated general objections as

17  if fully set forth herein. MGA specifically objects to this request on the grounds

18  that it calls for a legal conclusion. MGA also specifically objects to this request on

19  the grounds that it calls for the disclosure of attorney-client privileged information

20  or information protected from disclosure by the work-product doctrine, joint

21  defense or common interest privilege or other privilege.

22

23  **REQUEST FOR ADMISSION NO. 241:**

24    Admit that, as of the date of these Requests, MGA has not recorded the

25  agreement produced by BRYANT as BRYANT 00794-BRYANT 0000799, or any

26  version thereof, with the U.S. Copyright Office.

27

28

- 145 -

MGA'S RESPONSES TO MATTEL'S THIRD SET
OF REQUESTS FOR ADMISSION TO MGA

EXHIBIT    106

PAGE    903

**RESPONSE TO REQUEST FOR ADMISSION NO. 241:**

MGA incorporates by reference the above-stated general objections as if fully set forth herein.  MGA specifically objects to this request on the grounds that the request seeks information not relevant to any claim or defense of any party in this action.

Subject to and without waiving the foregoing general and specific objections, MGA responds as follows to this request:  MGA admits the request.

**REQUEST FOR ADMISSION NO. 242:**

Admit that, as of the date of these Requests, MGA has not recorded the agreement produced by Bryant as BRYANT 00794-BRYANT 0000799, or any version thereof, with any state or federal agency, department or entity.

**RESPONSE TO REQUEST FOR ADMISSION NO. 242:**

MGA incorporates by reference the above-stated general objections as if fully set forth herein.  MGA specifically objects to this request on the grounds that the request seeks information not relevant to any claim or defense of any party in this action.

Subject to and without waiving the foregoing general and specific objections, MGA responds as follows to this request:  MGA admits the request.

**REQUEST FOR ADMISSION NO. 243:**

Admit that, as of the date of these Requests, MGA has not recorded the agreement produced by MGA as MGA000001-MGA000006, or any version thereof, with the U.S. Copyright Office.

MGA'S RESPONSES TO MATTEL'S THIRD SET OF REQUESTS FOR ADMISSION TO MGA

EXHIBIT _____ 106

PAGE _____ 904

1  **RESPONSE TO REQUEST FOR ADMISSION NO. 243:**

2  MGA incorporates by reference the above-stated general objections as

3  if fully set forth herein. MGA specifically objects to this request on the grounds

4  that the request seeks information not relevant to any claim or defense of any party

5  in this action.

6  Subject to and without waiving the foregoing general and specific

7  objections, MGA responds as follows to this request: MGA admits the request.

8

9  **REQUEST FOR ADMISSION NO. 244:**

10  Admit that, as of the date of these Requests, MGA have not recorded

11  the agreement produced by MGA as MGA000001-MGA000006, or any version

12  thereof, with any state or federal agency, department or entity.

13

14  **RESPONSE TO REQUEST FOR ADMISSION NO. 244:**

15  MGA incorporates by reference the above-stated general objections as

16  if fully set forth herein. MGA specifically objects to this request on the grounds

17  that the request seeks information not relevant to any claim or defense of any party

18  in this action.

19  Subject to and without waiving the foregoing general and specific

20  objections, MGA responds as follows to this request: MGA admits the request.

21

22  **REQUEST FOR ADMISSION NO. 245:**

23  Admit that, as of the date of these Requests, BRYANT has not

24  recorded the agreement produced by MGA as MGA000001-MGA000006, or any

25  version thereof, with the U.S. Copyright Office.

26

27

28

- 147 -

MGA'S RESPONSES TO MATTEL'S THIRD SET
OF REQUESTS FOR ADMISSION TO MGA

EXHIBIT ___106___

PAGE ___905___

1

2   **REQUEST FOR ADMISSION NO. 249:**

3         Admit that, as of November 7, 2006, MGA had not recorded the

4   agreement produced by BRYANT as BRYANT 00794-BRYANT 0000799, or any

5   version thereof, with the U.S. Copyright Office.

6

7   **RESPONSE TO REQUEST FOR ADMISSION NO. 249:**

8         MGA incorporates by reference the above-stated general objections as

9   if fully set forth herein.  MGA specifically objects to this request on the grounds

10  that the request seeks information not relevant to any claim or defense of any party

11  in this action.

12        Subject to and without waiving the foregoing general and specific

13  objections, MGA responds as follows to this request:  MGA admits the request.

14

15  **REQUEST FOR ADMISSION NO. 250:**

16        Admit that, as of November 7, 2006, MGA had not recorded the

17  agreement produced by Bryant as BRYANT 00794-BRYANT 0000799, or any

18  version thereof, with any state or federal agency, department or entity.

19

20  **RESPONSE TO REQUEST FOR ADMISSION NO. 250:**

21        MGA incorporates by reference the above-stated general objections as

22  if fully set forth herein.  MGA specifically objects to this request on the grounds

23  that the request seeks information not relevant to any claim or defense of any party

24  in this action.

25        Subject to and without waiving the foregoing general and specific

26  objections, MGA responds as follows to this request:  MGA admits the request.

27

28

MGA'S RESPONSES TO MATTEL'S THIRD SET
OF REQUESTS FOR ADMISSION TO MGA

EXHIBIT ___106___

PAGE ___906___

1    REQUEST FOR ADMISSION NO. 251:

2           Admit that, as of November 7, 2006, MGA had not recorded the

3    agreement produced by MGA as MGA000001-MGA000006, or any version

4    thereof, with the U.S. Copyright Office.

5

6    RESPONSE TO REQUEST FOR ADMISSION NO. 251:

7           MGA incorporates by reference the above-stated general objections as

8    if fully set forth herein. MGA specifically objects to this request on the grounds

9    that the request seeks information not relevant to any claim or defense of any party

10   in this action.

11          Subject to and without waiving the foregoing general and specific

12   objections, MGA responds as follows to this request: MGA admits the request.

13

14   REQUEST FOR ADMISSION NO. 252:

15          Admit that, as of November 7, 2006, MGA had not recorded the

16   agreement produced by MGA as MGA000001-MGA000006, or any version

17   thereof, with any state or federal agency, department or entity.

18

19   RESPONSE TO REQUEST FOR ADMISSION NO. 252:

20          MGA incorporates by reference the above-stated general objections as

21   if fully set forth herein. MGA specifically objects to this request on the grounds

22   that the request seeks information not relevant to any claim or defense of any party

23   in this action.

24          Subject to and without waiving the foregoing general and specific

25   objections, MGA responds as follows to this request: MGA admits the request.

26

27

28

- 151 -

MGA'S RESPONSES TO MATTEL'S THIRD SET
OF REQUESTS FOR ADMISSION TO MGA

EXHIBIT    106

PAGE    907

1  **RESPONSE TO REQUEST FOR ADMISSION NO. 256:**

2          MGA incorporates by reference the above-stated general objections as

3  if fully set forth herein.  MGA specifically objects to this request on the grounds

4  that the request seeks information not relevant to any claim or defense of any party

5  in this action.  MGA specifically objects to this request on the grounds that it seeks

6  information not reasonably expected to be in MGA's possession.

7          Subject to and without waiving the foregoing general and specific

8  objections, MGA responds as follows to this request:  MGA has made a reasonable

9  inquiry and the information known or readily obtainable by MGA is insufficient to

10 enable MGA to admit or deny this request.  On that basis, MGA denies the request.

11

12

13      Dated:  March 30, 2007                  O'MELVENY & MYERS LLP

14

15                                              By: Diana M. Torres

16                                              Attorneys for MGA Entertainment, Inc.

17

18

19

20

21

22

23

24

25

26

27

28

- 154 -

MGA'S RESPONSES TO MATTEL'S THIRD SET
OF REQUESTS FOR ADMISSION TO MGA

EXHIBIT _____ 106

PAGE _____ 908



## PROOF OF SERVICE

I, C. Kelley Canning, declare:

I am a resident of the State of California and over the age of eighteen years, and not a party to the within action; my business address is 400 South Hope Street, Los Angeles, California 90071-2899. On March 30, 2007, I served the within document(s):

**MGA ENTERTAINMENT, INC.'S RESPONSES TO MATTEL, INC.'S THIRD SET OF REQUESTS FOR ADMISSION TO MGA ENTERTAINMENT, INC.**

☒   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Michael T. Zeller, Esq.
Timothy Alger, Esq.
QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

Keith A. Jacoby, Esq.
LITTLER MENDELSON, P.C.
2049 Century Park East,
Fifth Floor
Los Angeles, CA 90067

Patricia Glaser, Esq.
CHRISTENSEN, GLASER, FINK, JACOBS,
WEIL & SHAPIRO, LLP
10250 Constellation Blvd.,
19th Floor
Los Angeles, CA 90067

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on March 30, 2007, at Los Angeles, California.

_____
C. Kelley Canning

LA2:827618

MGA'S RESPONSES TO MATTEL'S THIRD SET OF
REQUESTS FOR ADMISSION TO MGA;
PROOF OF SERVICE

EXHIBIT  106

PAGE  909

**EXHIBIT 107**

FILED

1   DALE M. CENDALI
    (of counsel, not admitted in California)
2   DIANA M. TORRES (S.B. #162284)
    PAULA E. AMBROSINI (S.B. #193126)
3   O'MELVENY & MYERS LLP
    400 South Hope Street
4   Los Angeles, CA 90071-2899
    Telephone:  (213) 430-6000
5   Facsimile:  (213) 430-6407
    email:       dtorres@omm.com
6
7   PATRICIA GLASER (S.B. # 55668)
    CHRISTENSEN, MILLER, FINK,
    JACOBS, GLASER, WEIL &
8   SHAPIRO LLP
    10250 Constellation Boulevard, 19th Floor
9   Los Angeles, CA 90067
    Telephone:  (310) 553-3000
10  Facsimile:  (310) 556-2920

11  Attorneys for Plaintiff
    MGA Entertainment, Inc.
12

13

14                  UNITED STATES DISTRICT COURT

15                CENTRAL DISTRICT OF CALIFORNIA

                      CV 05 - 02727   CBM (RZx)
16

    MGA ENTERTAINMENT, INC.,        Case No.
17
                    Plaintiff,      **COMPLAINT FOR FALSE**
18                                  **DESIGNATION OF ORIGIN,**
              v.                    **AFFILIATION, ASSOCIATION OR**
19                                  **SPONSORSHIP (15 U.S.C. § 1125**
    MATTEL, INC., a Delaware        **(a)); UNFAIR COMPETITION (15**
20  Corporation, and DOES 1-10,     **U.S.C. § 1125 (a), Cal. Bus. & Prof.**
                                    **Code § 17200 et seq. and California**
21                  Defendants.     **Common Law); DILUTION (15**
                                    **U.S.C. § 1125 (c), Cal. Bus. & Prof**
22                                  **Code § 14330 and California Common**
                                    **Law); AND UNJUST ENRICHMENT**
23
                                    **DEMAND FOR JURY TRIAL**
24

25

26

27

28

EXHIBIT ___107___

PAGE ___910___

1   with reviving its ailing cheese business. Investors looked for him to do the same
2   for Mattel.

3       19.     Upon his arrival at Mattel, Mr. Eckert's promise, according to *Wall*
4   *Street Journal* reports, was to deliver a "leaner and meaner" Mattel.

5       20.     The "leaner" Mattel came quickly. Mr. Eckert laid off hundreds,
6   closed factories in the United States, shipped production to Mexico, and sold off the
7   Learning Company at a fraction of what Mattel had paid for it. It helped Mattel's
8   bottom-line, but did nothing to spur sales growth. Even under Mr. Eckert's "leaner
9   meaner" leadership, domestic "Barbie" sales remained in a slump into 2001. In an
10  industry that had become increasingly driven by consumer whims and fads, and the
11  hot, must-have toys of the moment, Mattel remained disinterested in devoting its
12  resources to searching for or developing a new blockbuster toy. Mr. Eckert's
13  business plan was not to diversify, but to build upon and expand sales of its existing
14  brands. Mattel was, after all, still generating billions in revenue despite the decline
15  of "Barbie." And so, Mattel remained committed to its age-worn icon and its two
16  other core brands, Fisher-Price and Hot Wheels, with each of the three accounting
17  for approximately a third of the company's sales.

18      21.     Then came the competition – MGA's "BRATZ".

19

20  **"BRATZ" Dolls Revolutionize The Fashion Doll Market**

21      22.     "BRATZ" challenged "Barbie's" half-century domination of the
22  fashion-doll market like nothing ever before had been able to do.

23      23.     MGA unveiled a preliminary sample of the "BRATZ" doll at the Hong
24  Kong Toy Fair in January 2001, while continuing to finalize the product throughout
25  that spring. Finished products were first shipped in May 2001. MGA introduced
26  the line to consumers in June 2001.

27

28

6

EXHIBIT ___107___

PAGE ___911___

24.    Unlike "Barbie" dolls, the "BRATZ" line of dolls and branded products sported a hip, multi-ethnic urban look that appealed to contemporary teenage and pre-teen girls.

### MGA's "BRATZ"



 

 

25.    At approximately 9.5 to 10 inches tall, the "BRATZ" dolls were intentionally shorter than "Barbie" dolls and looked like no other, with disproportionately large heads, big, dramatic eyes and lips, small, thin bodies, oversized feet (to emphasize shoe fashion and to stand on their own, unlike "Barbie," which requires a stand), and up-to-date fashions.

7

EXHIBIT ___107___

PAGE ___912___

26.   Indeed, the classic "Barbie" look was nowhere to be seen in these dolls; they would never be confused with "Barbie".

**MGA's "BRATZ"**                    **Mattel's "Barbie"**

          

27.   Featuring and embodying the slogan "The Girls With a Passion for Fashion!", "BRATZ" dolls revitalized, transformed and expanded the fashion doll market, in particular proving popular among "tween" age girls -- those between childhood and adolescence   who had been all but abandoned as a market by Mattel.

28.   The "BRATZ" line – with its unique and distinctive look – is well recognized and has been critically acclaimed and praised by consumers, retailers and toy industry analysts alike.  In 2001, the "BRATZ" line won the Toy Industry Association ("TIA") People's Choice Toy of the Year Award, the Family Fun Toy of the Year Award and Toy Wishes Hot Pick Award.  In 2002, the "BRATZ" line again won the TIA People's Choice Toy of the Year Award and the Family Fun Toy of the Year Award.  LIMA, the licensing industry's official arm, awarded MGA's "BRATZ" the best character license of the year as well as the overall best licensed property of the year for 2003.  MGA's "BRATZ" also earned the coveted TIA "Property of the Year" and "Girl Toy of the Year" for 2003, as well as the Family Fun Toy of the Year Award.  MSNBC named "BRATZ" the "Hottest Toy of the Year," and both MGA and "BRATZ" received several other accolades in

8

EXHIBIT ___107___

PAGE ___913___

1          b.    unfair competition and unfair business practices; and

2          c.    dilution;

3      4.    For costs of suit and reasonable attorneys' fees;

4      5.    For punitive and/or exemplary damages as a result of Mattel's willful

5  and malicious conduct to the extent allowable by law; and

6      6.    For such other and further relief as the Court deems just and proper.

7

8  Dated:      April 13, 2005          PATRICIA GLASER
                                       CHRISTENSEN, MILLER, FINK,
9                                      JACOBS, GLASER, WEIL &
                                       SHAPIRO LLP
10
                                       DALE M. CENDALI
11                                     DIANA M. TORRES
                                       PAULA E. AMBROSINI
12                                     O'MELVENY & MYERS LLP

13

14

15                                     By: _____
                                            Diana M. Torres
16                                     Attorneys for Plaintiff
                                       MGA ENTERTAINMENT, INC.
17

18

19

20

21

22

23

24

25

26

27

28

                                 37

EXHIBIT    107

914

1

## DEMAND FOR JURY TRIAL

2

3        MGA hereby demands a jury trial on all triable issues.

4

5    Dated:      April 13, 2005            PATRICIA GLASER
                                          CHRISTENSEN, MILLER, FINK,
6                                         JACOBS, GLASER, WEIL &
                                          SHAPIRO LLP
7
                                          DALE M. CENDALI
8                                         DIANA M. TORRES
                                          PAULA E. AMBROSINI
9                                         O'MELVENY & MYERS LLP

10

11                                        By:
                                             Diana M. Torres
12                                        Attorneys for Plaintiff
                                          MGA ENTERTAINMENT, INC.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    38

EXHIBIT   107

PAGE   915

**EXHIBIT 108**

# MGA Entertainment, Inc. v. Mattel, Inc., et al.

Case No. CV 05-02727

Expert Report of Peter S. Menell

February 11, 2008

CONFIDENTIAL – ATTORNEYS EYES ONLY

EXHIBIT ___108___

PAGE ___916___

inchoate and stylized. Tina Tomiyama notes that the sketches were not "instructional," but rather conceptual. She sees them more as carrying forward the idea of sassy, multi-racial girls, not a detailed expression. Furthermore, she does not consider the sketches to have been realistic in terms of the constraints of fashion doll manufacturing and functionality. Robert Tonner noted that the sketches did not provide much guidance to a sculptor. They were not schematic in nature, but rather high concept. He did not feel that they would provide much constraint on a sculptor. Rather, the sculptor would need to bring a lot of their own creativity to the job of building a doll.

44. *Filtration*. With the abstraction stage complete, Slide [C5] begins the analysis of filtration. The abstraction pyramid has been lowered into the filtration colander. In this stage of the analysis, I explore the various limiting doctrines aimed at determining the copyright-protected elements of Carter Bryant's illustration. As a preliminary observation, I will note that the illustrations are near the top of the pyramid. Copyright protection is quite thin at that altitude. Nonetheless, there may be enough expression for copyright to subsist, at least against slavish copying. Slides [C6]-[C19] provide a basis for assessing the principal limiting doctrines that come into play in the filtration stage of the analysis: originality, merger, scènes à faire, unprotectability of functional features (including inseparable expressive features of useful articles).

45. As developed in his deposition testimony, Carter Bryant has spent much of his life studying fashion illustration, fashion design, and fashion dolls. From a young age, he competed with his mother to read the latest fashion magazines. Growing up in the 1970s and 1980s, he was exposed to the various waves of popular culture from television, magazines, and formal study of fashion design. He studied fashion illustration following high school. He worked in the fashion doll industry through the 1990s. Thus, he was exposed to a wide range of influences. From a copyright standpoint, he was not operating in a "clean room" when he made the Bratz sketches. Rather, he acknowledges his interest in reflecting cultural trends as well as the profound influence of those who came before him. He was not interested in creating extra terrestrial beings. Rather, he sought to create a fashion doll that would appeal to girls and provide a substrate for him to pursue his interest in fashion design.

46. *Prior Widely-Known Character Illustration*. Drawing upon Robert Tonner's historical look at character art, Slides [C6]-[C7] contain several of the more influential sources for cartoon illustrators of Carter Bryant's generation. Marvin Fleischer created the Betty Boop character in a series of films released by Paramount Pictures in the early 1930s. At the time, her overt sexual appeal created quite a stir and attracted large audiences. The character was modeled after Helen Kane, a popular singer in the 1920s and actress for Paramount Pictures. As illustrated in Slide [C6], Betty Boop's features were exaggerated – disproportionately large head, large round eyes with distinct eye lashes, hour-glass figure, long legs. Slide [C7] contains examples of break-through Japanese anime art that became popular in the United States. The "Speed Racer" cartoon series derives from Tatsu Yoshida's "Mach GoGoGo" series developed in Japan in the 1960s. Yoshida based the character on the U.S. films "Viva Las Vegas" and the James Bond film, "Goldfinger." Trans-Lux acquired the U.S. rights, recorded voice-overs, and licensed the

EXHIBIT _____ 108

PAGE _____ 917

CONFIDENTIAL – ATTORNEYS EYES ONLY

cartoon series for broadcast in the United States. Its mix of fiendish conspiracies, action, fast cars, and sparkling eyes captivated American youth. I have emphasized the eye illustration, as it provided inspiration for many later animators and illustrators. The other half of Slide [C7] reflects another anime series that successfully crossed the Pacific Ocean, this time in the mid 1990s. Sailor Moon featured a collection of characters. It builds around an imaginative story of a middle school girl who, led by a talking cat, takes on a plot by the Dark Kingdom to destroy the Earth. Sailor Moon is joined by several friends in her adventures.

47. *Prior Fashion Dolls.* Carter Bryant was deeply influenced by prior fashion dolls. Slides [C8] and [C9] illustrate several fashion dolls that enjoyed commercial success in the 1980s and 1990s. Bryant was free to use the unprotected elements of such dolls, and he did so liberally in his drawings. Doll shapes and facial elements are entitled to rather thin protection due to the anatomical basis for their design (all artists are free to represent the human form), social views of attractiveness (aesthetic functionality), and some basic doll designs being in the public domain. As reflected in Mattel's litigation against Radio City Music Hall and the Goldberger Doll Manufacturing Company, copyright protection in a crowded field like fashion dolls is quite limited. "[I]f the facial features of two dolls were similar not only to each other, but also to those of numerous other dolls available on the market, the similarity would be relatively unlikely to support the inference that the defendant copied from the plaintiff. The defendant might equally have copied from any of the other similar dolls. Alternatively, an observation that features of a work are ubiquitous within an industry might lead a court to doubt that those features are original to the plaintiff." See *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135 (2d Cir. 2004). Bryant's sketches of the torso, arms, legs, and some facial elements undoubtedly draw from this prior work.

48. *Doll Illustration Art.* Robert Tonner and Mary Bergstein both point to the great influence that Margaret Keane had upon doll illustrators. Her 1981 work, "Ladies in Waiting" (Slide [C10]) brought new sensibilities to face illustration: the bulbous, mesmerizing eyes, disproportionate head. Some of her earlier drawings were the inspiration for Allison Katzman's "Blythe" line of dolls, featuring eyes that changed color with the pull of a string attached to the back of the head. See Slide [C11]. These dolls, manufactured by Kenner, were quite popular in the 1970s and continue to attract collector attention. See Slide [C12].

49. *Fashion Illustration.* As Robert Tonner and Tina Tomiyama explained at our January 3, 2008 meeting, Carter Bryant used fairly standard poses in his sketches of the Bratz dolls. Given his training, love of fashion model runway poses, and experience, Bryant did not innovate the poses reflected in his illustrations. Rather, he used well-worn poses. Slide [C13] captures the highly constrained aspects of fashion illustration and some of that prior art. The left side of the slide shows that fashion drawing is largely about human anatomy and common body, leg, foot, and hand positions, all constrained by the human form. I have included on the right side of the slide fashion illustrations from magazines from the 1930s. One can see aspects of these images (and their stock nature) in Carter Bryant's sketches. As Tina Tomiyama emphasized, Carter Bryant innovated in the fashions, not the poses or the body details.

-18-

EXHIBIT 108
PAGE 918

CONFIDENTIAL – ATTORNEYS EYES ONLY

50. *Popular Culture circa 1998.* Slides [C14]-[C19] provide a sense of the broader cultural influences in the 1998-2001 time frame – when Carter Bryant developed the sketches and MGA designed the first generation of the Bratz line of dolls. Bryant specifically acknowledges drawing on some of these materials. Mary Bergstein, Tina Tomiyama, and Robert Tonner all see fashion and doll designers as being heavily influenced by trends in popular culture. They specifically see these influences in Carter Bryant's work. Slide [C14] shows the coming of age of strong, female friend-based television series in the mid to later 1990s. The three female lead characters in the hit television series Friends emphasized female bonding. As Mary Bergstein explains, Ally McBeal was almost a live fashion doll that could appeal to adults and young girls alike. She was also closely associated with sassy female supporting actresses. Sex and the City brought the female bond to a new level. It also revealed an assertiveness and sexuality never before seen in television history. In the music field, the Spice Girls were a major new influence. See Slide [C15]. They brought the multi-racial element, as well as assertiveness. They were not the first female-driven ensemble group (e.g., the Go-Go's came before), but they specifically appealed to a younger audience and fashion played a big role in their image and marketing. The Spice Girls also arose in the merchandising age – with the role of MTV, movie spinoffs, and, of course, a line of dolls brought out by Galoob Toys (later bought by Hasbro). See Slide [C16]. These dolls were a large hit in the 1997 and 1998 Christmas holiday seasons. Slides [C17]-[C18] show several of the advertisements from the August 1998 issue of Seventeen Magazine, which Carter Bryant specifically recalls as an inspiration for his Bratz sketches. Several of the images in that issue bear a close resemblance to the concepts and even some of the rudimentary details in Bryant's sketches. The Steve Madden advertisement on Slide [C17] captures the attitude, large feet, and out-thrust hips. The Kristi ad also uses an upward camera angle to similar effect. The character in the Paris Blues ad – large, anime-like eyes, body language, body proportions, large feet, sassy fashion sense – could almost join Bryant's sketch of the Bratz ensemble without much change. The Coca Cola ad reflects the attitude and cartoon-like head and body features of Bryant's illustrations. And the Cover Girl ad shows a multi-racial ensemble reminiscent of Carter Bryant's conception. Slide [C18] takes the ensemble concept further: the Dixie Chicks' "Chicks with Attitude" slogan; the cool, self-confident, defiant girls on the left and lower right; and the fashion illustrations on the upper right. These concepts and images were clearly in the public consciousness (and in the places that fashion and doll designers would be looking) in the 1998-2000 period.

51. *Lara Croft and Angelina Jolie.* Another salient female image of this period was the fashion model as action hero, reflected in the Lara Croft computer game series (introduced in 1996), comic books, novels, and films. See Slide [C19]. Lara is an intelligent, athletic, and risk-taking woman who, somewhat like Indiana Jones, travels the world in pursuit of priceless archeological artifacts. She was famously portrayed in the comic book-like 2001 film by Angelina Jolie, who came to represent the new face of beauty. Even before her portrayal in this film, Jolie's large, penetrating eyes, swollen lips, and multi-ethnic features defined a new ideal at this time, which has followed the same trajectory of the Bratz doll line.

52. *Filtration Factors.* Slide [C20] shows metaphorically the filtration process. The colander catches the concepts underlying Carter Bryant's sketches – an ensemble of sassy, multi-cultural

-19-

EXHIBIT ___108___

PAGE ___919___

CONFIDENTIAL – ATTORNEYS EYES ONLY

dolls with disproportionately large heads, eyes, and feet, and voluptuous lips. Thus the top level of the pyramid is filtered out and much of the sketches as well. The sketch art is not particularly detailed in many of the elements – the body pose, many aspects of the body dimensions, an ensemble of multi-racial dolls, and the individual facial features. Furthermore, few of these elements are original to Carter Bryant. The colander collects Steve Madden's large feet, standard fashion poses, the Spice Girls (and their multi-racial fashion doll line), Margaret Keane's influential facial illustration, the Speed Racer and Paris Blues anime eye shape, Betty Boop's large head and big eyes, and Angelina Jolie's piercing eyes and protruding lips. Moreover, functional constraints, scènes à faire, and the merger doctrine exclude protection for many aspects of Bryant's sketches. At best, there is only modest protection for a few details and perhaps the compilation of elements, but these would be protected only against "bodily appropriation" – what the Ninth Circuit call "virtual identity." As reflected in the "bowl" of protectable expression, there is a veneer of protection for the sketch-level body art. To illustrate the effects of the filter, I have air brushed out much of the facial and body features. What protectable expression exists in Carter Bryant's sketches relates significantly to the fashions, which are quite detailed. Thus, unlike many of the doll elements, they significantly survive the filter, as does the spiky hair style for one version of Jade.

53. *Comparison.*  The next series of slides undertakes a detailed comparison of Carter Bryant's sketches to the first generation Bratz doll. (All versions of Bratz dolls are based on the same sculpt. Face painting and body tones enable one doll shape to provide the basis for four distinctive looks.) Slide [C21] illustrates the nature of the comparison. As explained in Section I of the report, the purpose of the filtration step is to prevent an author or artist from being able to assert control over unprotectable aspects of a work. Thus, the appropriate comparison is not between the plaintiff's work (in this case, the Carter Bryant sketches) and the defendant's work (in this case, the Bratz dolls), but rather the protected elements of the plaintiff's work (the air brushed out image) and the defendant's work. As reflected in the pyramid on the right, there is overlap between Carter Bryant's Jade sketch and MGA's Jade doll at some of the higher levels of the pyramid. But much of that similarity is filtered out, leaving rather modest similarity of *protected* expression. The slides that follow illustrate this point. Furthermore, the sketches simply do not provide anywhere near the detailed body and facial features of MGA's Bratz doll.

54. *Body Elements.*  Slide [C22] compares the two principal Carter Bryant body sketches with comparable views of the MGA Bratz blank sculpt. It is important to recognize that the rudimentary detail of Bryant's sketches and the fact that much of what Bryant does reflect in this sketch should be filtered out based on prior art (fashion dolls, fashion illustration, human body), scènes à faire (fashion doll characteristics), and functionality (joint characteristics). Nonetheless, there are significant differences between the sketches and the blank sculpt. Slide [C23] illustrates several of the differences. The two-dimensional width of the waist on the sketch is approximately half of the width of the waist on the sculpt (compare the mid-section red and blue lines). The separation between the thighs (red) is about one-third the separation of the sculpt. The left leg angle of the sketch is set at a significant angle (red line) whereas the angle of the sculpt is nearly vertical (blue line). Slide [C24] compares a partial profile angle. The two look quite different for several reasons. First the sculpt simply does not bend in the way shown

-20-

EXHIBIT ___108___

PAGE ___920___

CONFIDENTIAL –
ATTORNEYS EYES ONLY

within the reasonable expectations of the weaker or 'adhering' party."  See *Cubic Corporation v. Marty*, 185 Cal.App.3d 438, 229 Cal.Rptr. 828, 1 U.S.P.Q.2d 1709 (Cal. Ct. App. 1986).

86. *Ineligibility of Bryant's Bratz Concept or Sketches for Utility Patent Protection circa 2000.* Based on my understanding of patent law, I do not believe that the concept or sketches for the Bratz dolls could have received a utility patent.  It is doubtful that the Patent Office would seriously consider a patent application for fashion dolls apart from any mechanical or other technological features.  Utility patents are not available for purely aesthetic features of articles of manufacture.  There were no technological features in the Bratz concept or sketches.

87. I continue to review materials relating to this matter and reserve the right supplement my report as appropriate.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 10th day of February, 2008, at Berkeley, California.

Peter S. Menell

-31-

EXHIBIT _____108_____

PAGE _____921_____

CONFIDENTIAL – ATTORNEYS EYES ONLY

C

EXHIBIT ___10 8___

PAGE ___922___





EXHIBIT ___108___

PAGE ___923___

CONFIDENTIAL –
ATTORNEYS EYES ONLY

4



Slide C9



Slide C10

EXHIBIT ___108___

PAGE ___924___

CONFIDENTIAL –
ATTORNEYS EYES ONLY

5