1 | THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
2 | JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
3 | MARINA V. BOGORAD (Bar No. 217524)
(mbogorad@skadden.com)
4 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
5 | Los Angeles, California 90071-3144
Telephone: (213) 687-5000
6 | Facsimile: (213) 687-5600

7 | RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
8 | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, Suite 3800
9 | San Francisco, CA 94111-5974
Tel.: (415) 984-2698 / Fax: (415) 984-2626

10 | Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
11 | MGAE de Mexico, S.R.L. de C.V., and Isaac Larian

12

UNITED STATES DISTRICT COURT

13

CENTRAL DISTRICT OF CALIFORNIA

14

EASTERN DIVISION

15

| | |
|---|---|
| 16 CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 17                 Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| 18      v. | Honorable Stephen G. Larson |
| 19 MATTEL, INC., a Delaware corporation, | **[PUBLIC REDACTED]** DECLARATION OF JASON D. RUSSELL IN SUPPORT OF MGA |
| 20                 Defendant. | PARTIES' MOTIONS *IN LIMINE* NOS. 1-12 |
| 21 | |
| 22 | VOLUME 2 OF 5 |
| 23 | Hearing Date: May 21, 2008 |
| 24 | Time: 1:00 p.m. |
| 25 AND CONSOLIDATED ACTIONS. | |

26

27

28

I, Jason D. Russell, hereby declare as follows:

1.      I am an attorney licensed to practice law in the State of California and am a partner at the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, counsel of record for MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively, the "MGA Parties") in the above-captioned matter.  I submit this Declaration in Support of MGA Parties' Motions *in limine* Nos. 1-12.  Unless otherwise stated, I have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently thereto.

2.      More than three months ago, on January 15, 2008, MGA produced to Mattel excerpts of a rough transcript of the proceedings in the arbitration styled <u>Larian v. Larian,</u> Case No. 05-2096-ABH, arbitrated November 16 and 17, 2005 before ADR Services in Los Angeles (the "Larian Arbitration").   Only two witnesses testified in that arbitration: Isaac Larian and Jennifer Maurus.   Maurus was disclosed as a former sales manager at MGA in MGA Entertainment Inc.'s Responses to Mattel Inc.'s First Set of Interrogatories re Claims of Unfair Competition at Response No. 1 dated January 19, 2008.   Mattel began relying on Maurus's testimony in the Larian Arbitration last month in its Joint Opposition to the Motion for Summary Judgment, and its corresponding responses to MGA's Separate Statement of Uncontroverted Fact filed March 24, 2008.  Maurus has not been deposed in this case, and, to my knowledge, Mattel has issued no deposition subpoena or scheduled any deposition for her.   However, Maurus is listed as number 17 on Mattel's Phase 1 Witness List dated April 1, 2008 as a witness it intends at this time to call at trial as part of its case-in-chief.  (A true and correct copy of Mattel's Phase 1 Witness List dated April 1, 2008 is attached hereto as Exhibit 1.)  While Mattel "reserves the right to use these witnesses' testimony through prior deposition or other testimony to the extent the witness is unavailable to provide live testimony at trial," Mattel does <u>not</u> represent in its Witness List that it has made any effort to establish that Maurus will be unavailable to testify at trial.

3.      A true and correct copy of the Verified Complaint in <u>Larian v. Larian</u> dated August 25, 3003 and bearing Bates numbers FL 6465-6489 is attached hereto as **Exhibit 2**.

4.      A true and correct copy of a letter from Kaye Scholer to Cotkin Collins and Ginsburg dated November 15, 2005 and bearing Bates numbers CC 00567-00568 is attached hereto as **Exhibit 3**.

5.      A true and correct copy of the Complaint in <u>Larian v. Larian and Zorabi</u> dated February 28, 2005 and bearing Bates numbers FL 6526-6553 is attached hereto as **Exhibit 4**.

6.      A true and correct copy of the Opening Arbitration Brief in <u>Larian v. Larian</u> dated November 14, 2005 and bearing Bates numbers MGA 3809056-3809120 is attached hereto as **Exhibit 5**.

7.      A true and correct copy of excerpts of Volumes I and II of the Confidential-AEO transcripts of the arbitration proceeding in <u>Larian v. Larian</u> dated November 16 and 17, 2005 is attached hereto as **Exhibit 6**.

8.      A true and correct copy of the Final Arbitration Award in <u>Larian v. Larian</u> dated November 28, 2005 is attached hereto as **Exhibit 7**.

9.      A true and correct copy of the Final Arbitration Award in <u>Larian v. Larian</u> dated February 3, 2006 and bearing Bates numbers CC 00517-00522 is attached hereto as **Exhibit 8**.

10.     A true and correct copy of Third Party MGA Entertainment Inc's Motion for a Protective Order dated November 14, 2005 and bearing Bates numbers CC 00342-00360 is attached hereto as **Exhibit 9**.

11.     A true and correct copy of a communication from Farhad Larian bearing Bates numbers KS05926-05948 is attached hereto as **Exhibit 10**.

12.     A true and correct copy of an e-mail chain dated August 14, 2000 bearing Bates numbers KBK 01300-01301 is attached hereto as **Exhibit 11**.

13.    A true and correct copy of excerpts of the transcript of the deposition of Farhad Larian taken February 4, 2008 is attached hereto as **Exhibit 12**.

14.    A true and correct copy of an email chain between Isaac Larian and Haim Saban beginning on January 30, 2003 bearing Bates numbers MGA 1008775-1008778 is attached hereto as **Exhibit 13**.

15.    A true and correct copy of an email from Mel Woods to Isaac Larian dated June 26, 2003 bearing Bates numbers MGA 4008769-4008771 is attached hereto as **Exhibit 14**.

16.    A true and correct copy of the Affirmation of Peter Leung in MGA Entm't, Inc. v. Double Grand Corp. Ltd., HCA 1883/2003 dated June 26, 2003 and bearing Bates numbers MGA 0885074-0885088 is attached hereto as **Exhibit 15**.

17.    A true and correct copy of the Affidavit of Isaac Larian, MGA Entm't, Inc. v. Toys & Trends, HCA 2152/2002, bearing Bates numbers MGA 0883395-0883408 is attached hereto as **Exhibit 16**.

18.    A true and correct copy of the Affirmation of Lam Yuen Chak, MGA Entm't, Inc. v. Hunglam Toys Co., HCA 2687/2003, dated August 11, 2003 and bearing Bates numbers MGA 0884533-0884542 is attached hereto as **Exhibit 17**.

19.    A true and correct copy of an Order Denying a Motion for Summary Judgment, Art Attacks Ink v. MGA Entm't, Inc., Civ. No. 04 CV 1035-B (BLM) (S.D. Cal. Nov. 1, 2006), bearing Bates numbers MGA 1499772-1499791 is attached hereto as **Exhibit 18**.

20.    A true and correct copy of the Summons and Complaint in Integrity Toys, Inc. v. MGA Entm't, Inc., Case No. 05 CV 2142, dated August 17, 2005 and bearing Bates numbers MGA 0806552-0806573 is attached hereto as **Exhibit 19**.

21.    A true and correct copy of a notice of opposition and opposition to an MGA trademark application (No. 78/382,405) in Quicksilver, Inc. v. MGA Entm't, Inc.,

Declaration of Jason D. Russell in Support of MGA Parties' Motions *in limine* Nos. 1-12
Case No. CV 04-9049 SGL (RNBx)

Opposition No. 91160679, dated May 26, 2004 and bearing Bates numbers MGA 0806427-0806445 is attached hereto as **Exhibit 20**.

22. A true and correct copy of Declaration of Daphne Gronich in Support of Ex Parte Application for Temporary Restraining Order in <u>MGA Entm't, Inc. v. Multitoy, Inc.,</u> 04-CV-02524 (C.D. Cal. Apr. 12, 2004), bearing Bates numbers MGA 0871500-0871508 is attached hereto as **Exhibit 21**.

23. A true and correct copy of the Witness Statement of Paula Treantafelles Garcia in <u>MGA Entm't, Inc. v. UBI Soft Entm't</u>, Arb. No. AAA Claim No. 50 T 133 00467, dated March 13, 2006 and bearing Bates numbers MGA 0873672-0873685 is attached hereto as **Exhibit 22**.

24. A true and correct copy of the Declaration of David Oakes in <u>Dudnikov v. MGA Entm't, Inc.</u>, Civ. Action No. 03-D-2512 (PAC) (D. Col. Apr. 6, 2004), bearing Bates numbers MGA 0871307-0871313 is attached hereto as **Exhibit 23**.

25. A true and correct copy of an excerpt of the Transcript of Arbitration in <u>Fun 4 All Corp. v. MGA Entm't, Inc.</u>, dated May 29, 2002 and bearing Bates numbers MGA 0871766-871775 is attached hereto as **Exhibit 24**.

26. A true and correct copy of a settlement agreement between MGA Entertainment, Inc. and Bandai America Incorporated bearing Bates number MGA 1480173 is attached hereto as **Exhibit 25**.

27. A true and correct copy of an order resolving proceedings in Mexico (in the original Spanish) dated September 12, 2006 and bearing Bates numbers MGA 0876944-0876959 is attached hereto as **Exhibit 26**.

28. A true and correct copy a chart identifying the Bates numbers of examples of the types of Agreements to be excluded pursuant to the MGA Parties' Motion *in limine* No. 4 is attached hereto as **Exhibit 27**.

29. True and correct copies of examples of MGA Employment Agreements Bates numbered MGA 0875741-50, MGA 0875719-28, MGA 3814785-89, MGA 0875570-79,

1  MGA 0875548-54, MGA 0875683-5703, MGA 0875451-78, and MGA 0875555-69 are
2  attached hereto as **Exhibit 28**.

3       30.    A true and correct copy of Mattel Inventions Agreement with Bryant dated
4  January 4, 1999, introduced as C. Bryant Depo. Ex. 25, is attached hereto **Exhibit 29.**

5       31.    A true and correct copy of an email from Craig Holden to Michael Page, Isaac
6  Larian and John Keker dated June 20, 2007 and bearing Bates numbers MGA 3765585-
7  3765589 is attached hereto as **Exhibit 30**.

8       32.    A true and correct copy of MGA Entertainment's billing policy bearing Bates
9  numbers MGA 3709766-3709771 is attached hereto as **Exhibit 31**.

10      33.    A true and correct copy of an email from Dale Cendali to Craig Holden and
11  Isaac Larian dated June 23, 2007 and bearing Bates numbers MGA 3709794-3709798 is
12  attached hereto as **Exhibit 32**.

13      34.    A true and correct copy of an excerpt from Mattel's Fifth Set of
14  Interrogatories dated October 19, 2007 is attached hereto as **Exhibit 33**.

15      35.    A true and correct copy of Mattel's Opposition to MGA Parties' Motion for
16  Clarification Regarding Portions of February 15, 2008 Order Granting In Part and Denying
17  In Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by
18  the MGA Parties is attached hereto as **Exhibit 34**.

19      36.    A chart identifying the Bates numbers of samples of Phase Two documents to
20  be excluded pursuant to the MGA Parties' Motion *in limine* No. 6 is attached hereto as
21  **Exhibit 35**.

22      37.    A true and correct copy of an email exchange between Isaac Larian and
23  Carter Bryant dated February 15, 2002 and bearing Bates numbers MGA 0069280-
24  0069282 is attached hereto as **Exhibit 36**.

25      38.    A true and correct copy of excerpts of Mattel's Proposed Jury Instructions
26  and Special Verdict Forms dated April 1, 2008 is attached hereto as **Exhibit 37**.

27

28

v

39.     A true and correct copy of an email chain from Isaac Larian to Nancy Koppang dated April 11, 2004 and bearing Bates numbers MGA 3473852-3473854 is attached hereto as **Exhibit 38**.

40.     A true and correct copy of an email form Ron Brawer to Linda Whaley dated February 28, 2006 and bearing Bates numbers MGA 0869679-0869683 is attached hereto as **Exhibit 39**.

41.     A true and correct copy of an email from Nancy Koppang to Isaac Larian bearing Bates numbers MGA 0861322-0861325 is attached hereto as **Exhibit 40**.

42.     A true and correct copy of an email from Isaac Larian to Ron Brawer dated October 26, 2004 and bearing Bates numbers MGA 0200954-0200958 is attached hereto as **Exhibit 41**.

43.     A true and correct copy of the Expert Report of Michael J. Wagner dated February 11, 2008 and Exhibits thereto is attached hereto as **Exhibit 42**.

44.     A true and correct copy of the Expert Rebuttal Report of Michael J. Wagner dated March 17, 2008 is attached hereto as **Exhibit 43**.

45.     A true and correct copy of excerpts of the transcript of the deposition of Michael J. Wagner taken March 21, 2008 is attached hereto as **Exhibit 44**.

46.     A true and correct copy of excerpts of the transcript of the deposition of Lisa Tonnu taken January 17, 2008 is attached hereto as **Exhibit 45**.

47.     A true and correct copy of excerpts of Supplemental Responses to MGA's First Set of Interrogatories to Mattel, Inc. dated December 7, 2007 is attached hereto as **Exhibit 46**.

48.     A true and correct copy of the Mattel, Inc.'s Form 10-K filed February 27, 2006 is attached hereto as **Exhibit 47**.

49.     A true and correct copy of IBISWorld Industry Report, "Doll, Toy, and Game Manufacturing in the U.S." dated February 18, 2008 is attached hereto as **Exhibit 48**.

50.   A true and correct copy of the Expert Rebuttal Report of Kenneth Hollander dated March 17, 2008 is attached hereto as **Exhibit 49**.

51.   A true and correct copy of the Expert Rebuttal Report of Heather McComb dated March 17, 2008 is attached hereto as **Exhibit 50**.

52.   A true and correct copy of the Expert Rebuttal Report of Denise Van Patten dated March 17, 2008 is attached hereto as **Exhibit 51**.

53.   A true and correct copy of the Expert Rebuttal Report and Supplement of Nicholas Mirzoeff dated March 17-18, 2008 is attached hereto as **Exhibit 52**.

54.   A true and correct copy of the webpage available at http://www.kharesearch.com/legal.htm (last visited April 11, 2008) is attached hereto as **Exhibit 53**.

55.   A true and correct copy of an excerpt of the transcript of the deposition of Ralph Oman dated March 31, 2008 is attached hereto as **Exhibit 54**.

56.   A true and correct copy of the Expert Report of Ralph Oman dated February 11, 2008 is attached hereto as **Exhibit 55**.

57.   A true and correct copy of an excerpt of the transcript of the deposition of Sam Khare dated September 20, 2007 is attached hereto as **Exhibit 56**.

58.   A true and correct copy of the Expert Report of John L. Alex dated February 11, 2008 is attached hereto as **Exhibit 57**.

59.   A true and correct copy of excerpts of the transcript of the deposition of John L. Alex dated April 9, 2008 is attached hereto as **Exhibit 58**.

60.   A true and correct copy of the Expert Report of Carol A. Scott dated February 11, 2008, as well as curriculum vitae and Exhibit 4C attached thereto, is attached hereto as **Exhibit 59**.

61.   A true and correct copy of the Rebuttal Expert Report of Carol A. Scott dated March 17, 2008 is attached hereto as **Exhibit 60**.

62.     A true and correct copy of excerpts of the transcript of the deposition of Carol A. Scott taken April 3, 2008 is attached hereto as **Exhibit 61**.

63.     A true and correct copy of a spread sheet introduced as Lisa Tonnu deposition exhibit 660 bearing Bates numbers MGA 00868723-00868865 is attached hereto as **Exhibit 62**.

64.     A true and correct copy of excerpts of the Rough Transcript of the transcript of the deposition of Tina Patel (Varu) taken April 8, 2008 is attached hereto as **Exhibit 63**.

65.     A true and correct copy of excerpts of the Expert Rebuttal Report of Erich Joachimsthaler dated March 17, 2008 is attached hereto as **Exhibit 64**.

66.     A true and correct copy of the Expert Rebuttal Report of Robert C. Lind dated March 17, 2008 is attached hereto as **Exhibit 65**.

67.     A true and correct copy of the Expert Report of Lee Loetz dated February 11, 2008 and excerpts of exhibits attached thereto is attached hereto as **Exhibit 66**.

68.     A true and correct copy of the Expert Rebuttal Report of Lee Loetz dated March 17, 2008 is attached hereto as **Exhibit 67**.

69.     A true and correct copy of excerpts of the transcript of the deposition of Lee Loetz taken March 26, 2008 and Loetz deposition exhibit 4615 are attached hereto as **Exhibit 68**.

70.     A true and correct copy of a Copyright Office Letter dated April 8, 2005 bearing Bates numbers MGA 0868141-0868144 is attached hereto as **Exhibit 69**.

71.     A true and correct copy of excerpts of the transcript of the deposition of Margaret Leahy taken December 12, 2007 is attached hereto as **Exhibit 70**.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on April 14, 2008, at Los Angeles, California.

Jason D. Russell

viii

# Exhibit 23

CONFORM WITH FILED COPIES—FILED
AND RETURN VIA ATTORNEY SERVICE/HAND
DELIVE

10306-19

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2004 APR -6 PM 1:20

GREGORY C. LANGHAM
CLERK

BY_____DEP. CLK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 03-D-2512 (PAC)

KAREN DUDNIKOV,
MICHAEL MEADORS,

    *Pro Se* Plaintiffs,

v.

MGA ENTERTAINMENT, INC., a California corporation,

    Defendant.

---

**Declaration of David Oakes in Support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment or in the Alternative Declaratory Judgment**

---

Larry W. McFarland
David Caplan
KEATS McFARLAND & WILSON LLP
9720 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90212
Tel: (310) 248-3830
Fax: (310) 860-0363
Attorneys for Defendant
MGA ENTERTAINMENT, INC.

Exhibit _23_,
P. _304_

Confidential - Attorney's Eyes Only

MGA 0871307

I, David Oakes, hereby declare and state:

1.      I am Senior Counsel for Plaintiff MGA Entertainment, Inc. ("Plaintiff"). I have been employed by Plaintiff since July 2003. I am submitting this declaration in support of Defendant MGA Entertainment, Inc.'s Opposition to Plaintiffs' Motion for Summary Judgment or in the Alternative Declaratory Judgment. Unless otherwise stated herein, I have personal knowledge of the facts stated in this declaration and if called upon by a court of law to do so, I could and would testify competently to them.

2.      Plaintiff is the exclusive owner of all rights in and to the internationally famous BRATZ characters, which include but are not limited to "Cloe", "Jade", "Sasha", "Yasmin", "Meygan", "Dana", "Fianna", "Nevra", "Cameron", "Dylan", "Eitan", "Koby," "Cade", "Ailani", "Nazalia", "Talia", "Zada", "Mikko", "Colin", "Deavon", and "Lakin" (including all of the different authorized versions of these characters). These characters are hereinafter referred to as the "BRATZ Characters." True and correct copies of exemplars of depictions of the BRATZ Characters are attached hereto as **Exhibit A-1**

3.      The BRATZ Characters, the associated images, designs, and expression, and all other forms of intellectual property associated with the BRATZ Characters are extremely valuable to Plaintiff.

4.      In June 2001, Plaintiff introduced a new line of fashion dolls known as the "BRATZ" or, alternatively, the "BRATZPACK" which are three-dimensional depictions of the BRATZ Characters (hereinafter the "BRATZ Dolls").

5.      Plaintiff's rights in and to the internationally famous BRATZ Characters and the BRATZ Dolls include all intellectual and industrial property rights associated therewith,

Exhibit _23_ ,
P. _305_

Confidential - Attorney's Eyes Only

MGA 0871308

including, without limitation, all copyrights, patents, trademarks, industrial designs, trade secrets, contract and licensing rights, design rights, moral rights and trade dress rights in any country of the world (collectively referred to as the "BRATZ Property").

6.      Plaintiff has obtained numerous federal copyright registrations for the BRATZ Characters and the BRATZ Dolls (the "BRATZ Copyrights"). Plaintiff has complied with all applicable copyright laws. The BRATZ Copyrights are valid, subsisting and in full force and effect. True and correct photocopies of representative copyright registrations are attached hereto as **Exhibit A-2.**

7.      Upon their introduction, the BRATZ Dolls took the toy world by storm, outselling Mattel's popular Barbie® doll in December 2001. More than 45 million BRATZ Dolls have been sold to date.

8.      For two consecutive years in 2001 and 2002, Plaintiff won the toy industry's most prestigious award, the People's Choice Toy of the Year Award, for BRATZ-related toys. Plaintiff has also won two consecutive Family Fun Toy of the Year awards for BRATZ-related toys in 2001 and 2002. Moreover, in 2001 and 2002, BRATZ- related toys won NBC Today Show Toy Tests.  Since then, the toys have continued to win awards and receive acclaim.

9.      Plaintiff has spent millions of dollars to develop, build and promote the BRATZ Property, including without limitation, placement of advertisements in all media.

10.     A significant portion of Plaintiff's business has been the creation and commercial exploitation of the BRATZ Property. Plaintiff licenses the right to use the BRATZ Characters in a wide range of products such as dolls, apparel, toys, back-to-school products, jewelry, beauty products and collectibles, as well as for an upcoming direct-to-video feature and theatrical

Exhibit 23 ,
P. 366

Confidential - Attorney's Eyes Only

MGA 0871309

motion picture currently in production (these licensed products are hereinafter referred to as the "BRATZ Products"). Plaintiff has numerous active merchandise and promotional licenses with the number of licenses continuing to grow. In order to maintain its reputation as well as the value of its licenses, Plaintiff carefully selects each licensee to ensure the quality of licensed products and have subjected each licensee to a strict quality review and approval program.

11.     In keeping with the importance of the BRATZ Property, Plaintiff and/or its licensees have expended millions of dollars in advertising the BRATZ Products and promoting the use of the BRATZ Characters on original licensed products, which  include dolls, toys, apparel and other items. Items bearing the BRATZ Characters have proven to be in great demand.

12.     The BRATZ Dolls and BRATZ Characters have also received enormous amounts of unsolicited publicity, through various magazine and newspaper articles discussing the BRATZ Dolls and Characters.  Attached hereto as **Exhibit A-3** are true and correct copies of some such articles.

13.     The BRATZ Characters are extremely valuable and successful. The licensing of rights to the BRATZ Characters, and sale of BRATZ Products has generated hundreds of millions of dollars in revenue.

14.     As a result of the foregoing, the BRATZ Characters are extremely popular with the public and have generated continuing publicity.

15.     Through Plaintiff's extensive sales and promotional efforts, as well as its strict adherence to the highest standards of quality, Plaintiff and its BRATZ Property are associated in

Exhibit _23_
P._307_

Confidential - Attorney's Eyes Only

MGA 0871310

the public mind with high-quality toys and accessories, and the BRATZ Property has considerable value to Plaintiff.

16.     As a result of the foregoing, Plaintiff has developed strong trademark rights in various elements associated with the sale and marketing of the BRATZ Property (hereinafter the "BRATZ Trademarks"). These trademarks include, but are not limited to the following:  the names and designs of the BRATZ Characters, including the name and design of the SASHA character, and various taglines and other word marks associated with sale and marketing of the BRATZ Products. Plaintiff has used the BRATZ Trademarks continuously on and in connection with the BRATZ Products since the inception of each of the various BRATZ Products, and these BRATZ Trademarks have never been abandoned. The BRATZ Trademarks are valid, subsisting and in full force and effect.

17.     Based on the extensive sales and promotion of the BRATZ Products and the wide popularity of such BRATZ Products, the BRATZ Trademarks, including the BRATZ mark, the SASHA mark, the SASHA character design, have developed secondary meaning and significance in the minds of the public, and the services and products utilizing and/or bearing such mark are immediately identified by the purchasing public with Plaintiff.

18.     Plaintiff has also obtained numerous federal trademark registrations for the BRATZ Trademarks.  Among these registrations are registrations for the BRATZ mark and the SASHA mark. True and correct photocopies of representative trademark registrations are attached hereto as **Exhibit A-4**.

Exhibit _23_,
P. _308_

Confidential - Attorney's Eyes Only

MGA 0871311

19.     Unfortunately, due to the popularity of the BRATZ Characters and the BRATZ Products, products bearing infringements and counterfeits of the BRATZ Property are being sold throughout the United States. Plaintiff has undertaken substantial efforts to prohibit such counterfeiting activity through investigations, recordation of Plaintiff's rights with U.S. Customs and international enforcement actions.

20.     Products licensed by Plaintiff and/or its licensees bearing the BRATZ Property are of the highest quality.  Defendant MGA Entertainment supervises the quality of all products bearing the BRATZ Property.

21.     The BRATZ Products are hugely popular with consumers, and especially young children, so that child safety is an important issue in the design and manufacture of licensed products, including clothing.  As Defendant has no ability to supervise the quality of the product sold by Plaintiffs, Defendant cannot ensure that the products are not defective or inadequately designed, labeled or marked with respect to flammability. Not only does this create a risk of substantial peril for the consuming public, but it also creates an unavoidable risk of damage to the reputation and good will of Defendant and/or its licensees as well as the popularity and success of the licensed products because the consuming public may be deceived as to the origin of the harmful product.

22.     I submitted the notice of infringement to eBay which is at issue in this case.  At the time I submitted the notice, MGA Entertainment had a good faith belief that the items listed in that notice, including the item offered for sale by Plaintiffs, infringed the copyright, trademark, manufacturing, distribution, licensing, and merchandising rights of Defendant.

Exhibit _23_
P. _309_

Confidential - Attorney's Eyes Only

MGA 0871312

Defendant continues to maintain its good faith belief that the item offered for sale by Plaintiffs infringes Defendant's rights.

23.     MGA Entertainment has not licensed Plaintiffs to make, distribute, or sell any hats bearing any of the BRATZ Trademarks, Bratz Characters, or Bratz Copyrights.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that all of the foregoing is true and correct.

Executed this __ day of April, 2004, at North Hills, California.

David Oakes

Exhibit _23_
P. _310_

Confidential - Attorney's Eyes Only                                          MGA 0871313

**Exhibit 24**

1     IN THE ARBITRATION OF

2

3 FUN 4 ALL CORPORATION, a   ) Case No. (Unnumbered)

4 Delaware corporation, and   ) Volume II

5 SCOTT BACHRACH, an individual, )

6    Claimant/Counterclaim )

7    Respondent,    )

8    v.    )

9 ABC INTERNATIONAL TRADERS ,INC.)

10 d/b/a/ MGA ENTERTAINMENT, a  )

11 California corporation,   )

12    Respondent/   ) Pages 346 - 652

13    Counter-Claimant.  )

14 -------------------------------)

15

16    TRANSCRIPT OF PROCEEDINGS

17    WEDNESDAY, MAY 29, 2002

18    10:39 A.M.

19

20 REPORTED BY:   SYLVIA P. SHEAR

21    CSR NO. 3010, RPR
22

23

24

25

346

Exhibit _24_,
P. _311_

Confidential - Attorney's Eyes Only    MGA 0871766

1        Continued Transcript of Proceedings, held

2   before HONORABLE LAYN R. PHILLIPS, at 1800 Avenue of

3   the Stars, Conference Room 6A, Los Angeles,

4   California, on WEDNESDAY, MAY 29, 2002, at 10:39

5   A.M., before SYLVIA P. SHEAR, CSR No. 3010, RPR.

6

7   APPEARANCES:

8

9   ARBITRATOR:

10        HONORABLE LAYN R. PHILLIPS

11        United States District Judge (Retired)

12

13   FOR CLAIMANT/COUNTERCLAIM RESPONDENTS FUN 4 ALL

14   CORPORATION AND SCOTT BACHRACH:

15        GREENBERG GLUSKER FIELDS CLAMAN

16        MACHTINGER & KINSELLA LLP

17        BY:  DALE F. KINSELLA, ESQ.

18             STEPHEN S. SMITH, ESQ.

19        1900 Avenue of the Stars

20        Suite 2100

21        Los Angeles, California  90067-4590
22        (310) 553-3610

23

24

25

347

Exhibit  24 ,
P. 3/2

Confidential - Attorney's Eyes Only

MGA 0871767

1  APPEARANCES (Continued):

2

3  FOR RESPONDENT/COUNTER-CLAIMANT ABC INTERNATIONAL

4  TRADERS, INC. D/B/A MGA ENTERTAINMENT:

5      CHRISTENSEN, MILLER, FINK, JACOBS,

6      GLASER, WEIL & SHAPIRO, LLP

7      BY:  PATRICIA L. GLASER, ESQ.

8         (Pages 355-652)

9      LARRY S. GREENFIELD, ESQ.

10      CAROLINE H. MANKEY, ESQ.

11         (Pages 345-355)

12      2121 Avenue of the Stars

13      Eighteenth Floor

14      Los Angeles, California  90067

15      (310) 553-3000

16

17

18

19

20

21
22

23

24

25

348

LegaLink - Los Angeles
800-826-0277 818-986-5270 Fax 818-783-7310 www.legalink.com

Exhibit 24,
P. 313

Confidential - Attorney's Eyes Only

MGA 0871768

1  APPEARANCES (Continued):

2

3  FOR THE WITNESS LON ROSS:

4      WHITE O'CONNOR CURRY GATTI & AVANZADO

5      BY:  EDWARD E. WEIMAN, ESQ.

6          (Pages - 361-393)

7      10100 Santa Monica Boulevard

8      Suite 2300

9      Los Angeles, California 90067

10     (310) 712-6100

11

12

13

14 ALSO PRESENT:

15     ISAAC LARIAN

16     SCOTT ALLEN BACHRACH

17

18

19

20

21
22

23

24

25

349

Exhibit 24,
P. 314

Confidential - Attorney's Eyes Only                    MGA 0871769

```
1              I N D E X

2

3   CLAIMANT        DIRECT  CROSS  REDIRECT  RECROSS

4   WITNESSES:

5   LON ROSS

6   Mr. Smith      362        391

7   Ms. Glaser         382

8                              393

9

10

11  RESPONDENT      DIRECT  CROSS  REDIRECT  RECROSS

12  WITNESSES:

13  VICTORIA

14  O'CONNOR

15  Mr. Greenfield  404        618

16                     633

17                     639

18

19  Mr. Kinsella       540         629

20                          634

21                          644
22

23

24

25

                   350
```

Exhibit _24_,
P. _315_

Confidential - Attorney's Eyes Only

MGA 0871770

1       LOS ANGELES, CALIFORNIA

2       WEDNESDAY, MAY 29, 2002

3          10:39 A.M.

4

5       ARBITRATOR PHILLIPS: Let's go on the

6   record. Let me have counsel enter their appearances

7   in the Fun 4 All/MGA Arbitration. First on behalf

8   of the petitioner.

9       MR. KINSELLA: Good morning, Your Honor.

10   Dale Kinsella and Stephen Smith on behalf of

11   petitioner Fun 4 All Corporation.

12       MR. GREENFIELD: Good morning, Your Honor,

13   Larry Greenfield and my colleague Caroline Mankey on

14   behalf of respondent MGA Entertainment.

15       Ms. Glaser has called in. Her hearing is

16   over and she expects to be here in the next five

17   minutes.

18       ARBITRATOR PHILLIPS: Excellent. We are

19   going to make a record now with respect to exhibits.

20   I have been meeting with counsel off the record.

21       For the record, Mr. Kinsella, at this time
22   will you make a formal offer of exhibits, both

23   documentary and physical?

24       MR. KINSELLA: Yes, Your Honor. At this

25   point in time petitioner would move into evidence

351

Exhibit _24_,
P. _316_

Confidential - Attorney's Eyes Only

MGA 0871771

1   Exhibits 1 through 68 in petitioner's book of

2   exhibits, and in addition, 100 through 168 which are

3   the demonstrative pieces of evidence which are the

4   dolls.

5        ARBITRATOR PHILLIPS:  As I understand it,

6   there is no objection to those exhibits with the

7   exception of Exhibit 58 and portions of Exhibit 55;

8   is that correct, Mr. Greenfield?

9        MR. GREENFIELD:  That's correct, Your

10  Honor.

11       ARBITRATOR PHILLIPS:  So those exhibits as

12  announced will be received for purposes of this

13  record and we will come back and take up Exhibit 58

14  and the portions of 55 in a moment.

15       Mr. Greenfield, we have also been

16  discussing off the record the progress made with

17  respect to MGA's exhibits.  Would you make a formal

18  offer of all of your exhibits at this time.

19       MR. GREENFIELD:  Yes, Your Honor.  We are

20  offering to move into evidence at this time MGA's

21  Exhibits 101 through 168.  We also will be showing
22  as demonstrative exhibits our versions of the MGA

23  dolls that were available for purchase in 2001, and

24  they will be numbered Exhibits 201, 202, 203 and

25  204.  We have not yet had a list.

352

Exhibit 24,
P. 317

Confidential - Attorney's Eyes Only

MGA 0871772

1    ARBITRATOR PHILLIPS:  All right./ and as I

2  understand it, Mr. Kinsella, there is no objection

3  to any of the exhibits Mr. Greenfield announced thus

4  far?

5    MR. KINSELLA:  That's correct.

6    ARBITRATOR PHILLIPS:  All those exhibits

7  will be received.

8    MR. GREENFIELD:  I also want to point out

9  we have numbered doll exhibits which are the sample

10  which MGA received a month after the February 10

11  dolls were looked at at the New York Toy Fair.

12  These were the dolls that were shipped from

13  Hong Kong and were received somewhere between

14  March 11 and March 13.  And those dolls bear numbers

15  1 through 22.  There is a 12-A, a 17-A and a 21-A as

16  well in that list

17    ARBITRATOR PHILLIPS:  Have they already

18  been marked in that fashion?

19    MR. GREENFIELD:  They have already been

20  marked in that fashion.

21    ARBITRATOR PHILLIPS:  Have you been able to
22  review those?

23    MR. KINSELLA:  We have not, but they are

24  totally acceptable.

25    ARBITRATOR PHILLIPS:  So there is no

353

Exhibit 24 ,
P. 318

Confidential - Attorney's Eyes Only

MGA 0871773

1 objection to those as well and they are received.

2     All right. Now let's turn our attention to

3 Exhibit 58, and if you would, please, indicate,

4 Mr. Greenfield, the objections that you have to

5 Exhibit 58.

6     MR. GREENFIELD: With respect to Exhibit

7 58, Your Honor, we have objections both on

8 foundation and hearsay basis. I understand that

9 goes to weight. However, it's impossible for us to

10 tell what this was based on, what information it was

11 taken from, and how it was compiled, what was used

12 to compile it.

13     My objection would be that until we have an

14 opportunity to cross-examine the witness on it, that

15 it be withheld from being admitted as an exhibit.

16     ARBITRATOR PHILLIPS: Refresh my memory,

17 Mr. Kinsella. What was the testimony about this

18 exhibit and what further testimony will you make?

19     If this were in Federal Court, I would have

20 you make a proffer under Federal Rule 103(a)(2). I

21 am not going to hold you to that standard, but I
22 want to know what the basis of this exhibit is and

23 who else other than Mr. Bachrach is going to testify

24 to it.

25     MR. KINSELLA: Actually I think Mr. Smith

354

Exhibit 24,
P. 319

Confidential - Attorney's Eyes Only

MGA 0871774

1  is capable of sustaining that burden.  Thank you,

2  Your Honor.

3      ARBITRATOR PHILLIPS:  Thank you.

4      (Ms. Glaser entered the arbitration room.)

5      MR. SMITH:  Your Honor, the testimony on

6  Exhibit 58 yesterday by Mr. Bachrach was this was an

7  internal document created by Fun 4 All for the

8  purpose of confirming internally that he had a

9  discussion with K-Mart's buyer Jill Farino at K-Mart

10  with respect to their commitment to buy 50,000

11  pieces of the giant-size doll, which is reflected as

12  Girlfriends 25-inch I think at the bottom of that

13  chart.

14      I think that did lay foundation, but as an

15  additional offer of proof, Your Honor, Mr. Bachrach

16  would testify further that that document was

17  actually taken by him to a meeting with Jill Farino,

18  shown to her at that meeting.

19      She communicated to Mr. Bachrach that was

20  an accurate reflection of their commitment to.buy

21  with respect to that doll at that time and that's
22  the additional offer of proof.

23      ARBITRATOR PHILLIPS:  All right.  Let me

24  give you this choice, Mr. Greenfield.  Clearly part

25  of the document would be admissible based on what he

355

Exhibit _24_,
P. _320_

Confidential - Attorney's Eyes Only                                        MGA 0871775

# Exhibit 25

## SETTLEMENT AGREEMENT

WHEREAS, MGA Entertainment, Inc. ("MGA") and Bandai America Incorporated ("Bandai") are involved in a dispute whereby MGA asserts that Bandai's dolls entitled "Glamma Jammaz" infringes MGA's copyrights in its dolls entitled "Bratz" and Bandai disputes such claims;

WHEREAS, the parties hereto wish to resolve such claims but without an admission of any fault or wrongdoing and with an intention that this agreement shall not constitute or be construed as an admission of any facts or claims;

WHEREAS, all provisions of this Settlement Agreement are contractual in nature, and not mere recitals only; and

WHEREAS, the purpose of this Settlement Agreement is to set forth and embody a negotiated compromise, settlement and release, as set forth herein.

NOW THEREFORE, in consideration of the mutual covenants and conditions herein contained, and the incorporation of the above Recitals, the parties hereto agree as follows:

1. Bandai agrees that it will immediately stop production of its Glamma Jammaz line of dolls.  Bandai will have until May 15, 2003 to sell its remaining inventory of Glamma Jammaz dolls -- which Bandai represents to be approximately 40,000 pieces.

2. Bandai agrees that it will not and did not display the Glamma Jammaz dolls during New York Toy Fair.

3. MGA agrees that it will not initiate any copyright infringement litigation against Bandai relating to its sale of the Glamma Jammaz dolls except for sales in violation of this agreement.

AGREED AND ACKNOWLEDGED:

MGA ENTERTAINMENT, INC.        BANDAI AMERICA INCORPORATED

By:_____        By:_____
Its:_____        Its:_____

Exhibit 25,
P. 321

Confidential - For Attorney's Eyes Only

MGA 1480173

**Exhibit 26**

MÉXICO, DISTRITO FEDERAL, A DOCE DE SEPTIEMBRE DE DOS MIL SEIS.

Vistos los autos de la **causa penal 117/2006-II**, a fin de resolver lo que en derecho proceda respecto de la orden de aprehensión solicitada contra **CARLOS GUSTAVO MACHADO GÓMEZ, MARIANA TRUEBA ALMADA** y **PABLO VARGAS SAN JOSÉ**, como probables responsables de la comisión del delito previsto en el artículos 223, fracción IV, de la Ley de la Propiedad Industrial; contra **ISSAC LARIAN** y **JAHANGIR MAKABI**, por los ilícitos contemplados en los artículos 223, fracción VI, de la citada ley y 424 BIS del Código Penal Federal (hipótesis de almacenar); y además contra **CARLOS GUSTAVO MACHADO GÓMEZ** por el previsto en el 211 BIS 1., primer párrafo, del citado código, **en su modalidad de provocar pérdida de información contenida en sistemas o equipos de informática y protegidos por algún mecanismo**; y,

R E S U L T A N D O:

ÚNICO.- Por **oficio 1169/DPI"A"/2006**, recibido el once de septiembre de dos mil seis en la Oficina de Correspondencia Común a los Juzgados de Distrito de Procesos Penales Federales en el Distrito Federal, turnado a este órgano jurisdiccional, el Ministerio Público de la Federación consignó la **averiguación previa 123/UEIDDAPI/2005**, ejerciendo acción penal contra las personas y por los ilícitos mencionados en el exordio de la presente resolución, solicitando se libre a los acusados orden de aprehensión (**tomos 1 a 7 y fojas 1 a 567 del tomo VIII**)

Mediante auto de la misma fecha de recepción se radicó la causa penal respectiva, registrándose en el libro de gobierno correspondiente con el número **117/2006-II** (**foja 569**).

C O N S I D E R A N D O:

PRIMERO.- Este Juzgado de Distrito es legalmente competente para resolver acerca del presente asunto, en razón de que dos de los delitos a que se refiere se encuentran

Exhibit 26,
P. 322

Confidential - Attorney's Eyes Only

MGA 0876944

previsto una ley especial de aplicación federal no lo es la Ley de la Propiedad Industrial y, los otros dos, en el Código Penal Federal, además de que los hechos a que se contrae se suscitaron dentro del ámbito territorial que tiene asignado como jurisdicción; sirviendo de apoyo los artículos 104, fracción I, de la Carta Magna, 6° del Código Penal Federal, 6° del Código Federal de Procedimientos Penales y 50, fracción I, inciso a), de la Ley Orgánica del Poder Judicial de la Federación.

SEGUNDO.- Las órdenes de aprehensión deben reunir los requisitos exigidos al efecto en el artículo 16 constitucional y, además, ser solicitadas por el Ministerio Público, conforme con lo dispuesto en el artículo 195 del Código Federal de Procedimientos Penales.

Tales requisitos consisten en lo siguiente: **Que exista** denuncia o **querella** de un hecho señalado por la ley como delito, sancionado cuando menos con pena privativa de libertad, así como datos que acrediten el cuerpo del delito y hagan probable la responsabilidad del indiciado.

Por su parte, el artículo 195 del Código Federal de Procedimientos Penales, señala: "*Cuando estén reunidos los requisitos del artículo 16 Constitucional, el tribunal librará* **orden de aprehensión,** *reaprehensión o comparecencia, según el caso, contra el inculpado, a pedimento del Ministerio Público...*".

Así, previamente se impone analizar si respecto de los ilícitos previstos en los artículos 223, fracciones IV y VI, de la Ley de la Propiedad Industrial y 424 BIS del Código Penal Federal, perseguibles mediante querella, se satisfizo el requisito de procedibilidad a que se refiere el último párrafo del artículo 223 de la citada ley y el 429 del referido código, que en lo conducente establecen:

"223.-...*Los delitos previstos en este artículo se perseguirán por querella de parte ofendida.*"

2

*"429. Los delitos previstos en este Título se perseguirán por querella de parte ofendida..."*

Al efecto conviene resaltar que la querella constituye un derecho del gobernado como expresión de su voluntad, que permite al Ministerio Público iniciar conforme a derecho la investigación legal de hechos probablemente constitutivos de uno o varios delitos, así como lo relativo a la responsabilidad del o los sujetos activos en su comisión, con la siguiente doble proyección: **estrictamente procesal**, como mero requisito de procedibilidad y, **sustantiva**, como condición objetiva de punibilidad; estribando su justificación o razón de ser de la primera, en que respecto de ciertos ilícitos, por su leve trascendencia al ámbito social, se permite al sujeto pasivo u ofendido una determinación volitiva en cuanto a la persecución criminal de los hechos, esto es, se trata de delitos cuyos efectos son considerados lesivos únicamente en lo particular por el que los resiente, sin que repercutan en relación con la comunidad en general. Otra razón por la que se explica la existencia de esa institución jurídica, radica en que inclusive ante la comisión de delitos de mayor trascendencia, el ejercicio oficioso de la acción penal provocaría al ofendido un perjuicio de mayor magnitud, en proporción con el beneficio de una eventual reparación del daño o satisfacción de que se haga justicia; **motivo por el cual a la querella le asiste el estudio preferencial respecto del fondo del asunto**. Por tanto, la inexistencia o **deficiencia** de la misma en un proceso penal, desde luego cuando es exigida por la norma, implica una irregularidad formal que inexorablemente habrá de trascender al resultado del fallo, vulnerando la garantía de seguridad jurídica del acusado consagrada en el artículo 14 constitucional.

De cuya tesitura deriva la trascendental relevancia de lo dispuesto en el artículo 119 del Código Federal de Procedimientos Penales, que constriñe al servidor público que conozca de una indagatoria a asegurarse: a) De la identidad

3

Confidential - Attorney's Eyes Only

MGA 0876946

del querellante; b) De su legitimación y c) De la autenticidad de los documentos en que aparezca formulada la querella, así como de los en que se apoye ésta. **De suerte que si el querellante no acredita satisfactoriamente la personalidad con que se ostenta, es decir su legitimación para presentarla,** legalmente no debe tenerse por formulada, lo que ocasionaría que jurídicamente no fuera dable ejercer la correspondiente acción penal.

Ahora bien, **en la especie** obra en autos la querella de fecha seis de abril del dos mil cinco formulada por **FRANCISCO JAVIER TIBURCIO CELORIO,** quien se ostentó con el carácter de apoderado de las empresas MATELL, INC., MATTEL DE MÉXICO , S.A. de C.V. y MATTEL SERVICIOS, S.A. DE C.V., personalidad que aseveró acreditar respectivamente con los testimonios de las escrituras públicas 8,145, 8,055 y 8,266, pasadas ante la fe del Notario Público número 194 del Distrito Federal.

Empero, con el primero de tales instrumentos públicos, esto es, con el 8,145, el querellante no satisfizo el requisito previsto en el artículo 120 del Código Federal de Procedimientos Penales, en tratándose como en la especie de una persona moral, es decir que mediante dicho documento no demuestra contar con el carácter de apoderado de MATELL, INC., y, por ende, no es factible que la querella surta sus efectos jurídicos por lo que respecta a dicha empresa, por los motivos y fundamentos legales que a continuación se señalan:

En efecto, en principio se impone resaltar que en dicho instrumento, conforme a la transcripción que en el mismo efectuó la fedataria, hizo constar que MATTEL INC., representada por el licenciado Daniel A. del Río Loaiza, otorgaba poder para pleitos y cobranzas y sustitución a favor de diversas personas, entre ellas del Licenciado FRANCISCO JAVIER TIBURCIO CELORIO (querellante), certificando que el otorgante acreditaba la personalidad con que se ostentó con la

4

Exhibit 26 ,
P. 325

Confidential - Attorney's Eyes Only

MGA 0876947

que realizó con fecha veinticinco de junio de mil novecientos noventa y seis, en lo conducente se señala "...

5. Que del libro de Actas de la Sociedad se desprende que los siguientes consejeros asistieron a la junta de consejo celebrada el 16 de julio de 1996, constituyendo quórum..." (fojas 110 a 114 del tomo I). De lo cual se evidencia una incongruencia anacrónica, puesto que resulta materialmente imposible que la fedataria de mérito pudiera protocolizar el 25 de junio de 1996, lo relativo a un evento que supuestamente tuvo lugar el 16 de julio de 1996, por cuya irregularidad la protocolización en comento no debió surtir ningún efecto legal, puesto que se efectuó respecto de actos futuros y, por ende, obviamente inexistentes.

Sin que en términos de ley sea factible convalidar tal actuación notarial con la posterior declaración de quien la efectuó, misma que hasta el nueve de junio de dos mil seis por una parte aclaró que según el acta respectiva se había percatado que la Junta de Consejo se había celebrado el 19 de julio de 1996 (ya no el 16); lo cual, contrario a justificar la incongruencia cronológica entre la fecha de esa Junta y la de la protocolización (25 de junio 1996), la maximiza en tres días; sin que esto último se subsane con su simple manifestación de que: "Debido a un error humano, atribuible a mí, cuyas causas no me son posibles explicar al día de hoy, pero que reconozco totalmente, feché la comparecencia ante mí del Sr. Fermín Cuza el día 25 de junio de 1996 en vez de hacerlo el 19 de julio de 1996" (fojas 182 a 184 del tomo VIII); empero, tales manifestaciones se tornan por demás extemporáneas para convalidar la incongruencia cronológica contenida en el poder que en su momento presentó FRANCISCO JAVIER TIBURCIO CELORIO para acreditar el carácter con el que formuló querella en representación de MATTEL INC.; a más de que, aún sin tomar en cuenta la destacada extemporaneidad, los errores que conforme con lo previsto en

6

Exhibit 26
P. 326

Confidential - Attorney's Eyes Only

MGA 0876949

117/2005-11

el artículo 153 de la Ley del Notariado para el Distrito Federal son susceptibles de enmendar, son los de "...*copia o transcripción del instrumento original asentado en el protocolo*...", más no así lo concerniente a la fecha de la actuación del notario al protocolizar un evento, máxime que las causas del supuesto error, como la propia fedataria lo reconoció "...*no le es posible explicar*...", considerando que en el caso concreto el referido equivoco se hace consistir en fechas cuyos días y meses son diferentes, sobre todo los primeros consistentes en 25 y 19.

A mayor abundamiento, no pasa desapercibido que la perito que tradujo la multicitada protocolización, mediante escrito de catorce de junio de dos mil seis, señaló: "<u>**Que por un error de carácter tipográfico**</u>, en la referida traducción mencioné, en el punto número 5, que la Junta de Consejo se había celebrado el <u>16 de julio de 1996</u>, cuando en realidad en el documento en idioma ingles se señala que ocurrió el <u>19 de julio de ese mismo año</u>..." **(fojas 185 a 189 del tomo VIII)**; lo que lejos de aclarar el cuestionamiento de fechas de que se trata, lo complica, puesto que la Notaria Bárbara G. Corboy afirmó que dicho error lo cometió ella; así las cosas, deviene increíble que la perito hubiese cometido el mismo error que así misma se atribuye, puesto que su función era traducir lo asentado por la aludida notaria; por lo cual, por elemental lógica necesariamente alguna de las dos se habría apartado de la realidad.

Sin que sea óbice a lo establecido con antelación la circunstancia de que JOYCE RUEDA RENTERÍA, con el carácter de apoderada de MATTEL INC., **el veintitrés de julio del año en curso** presentara ante el Agente del Ministerio Público investigador el ocurso mediante el cual refirió que hacía suya la querella con anterioridad formulada, escrito que por cierto ratificó ante la mencionada autoridad en esa misma fecha **(fojas 196 a 225 del tomo VIII)**; toda vez que dicha pretensión resulta notoriamente extemporánea, conforme con

7

Exhibit 26,
P. 327

Confidential - Attorney's Eyes Only

MGA 0876950

lo previsto el artículo 107 del Código Penal, de acuerdo con el cual *"Cuando la ley no prevenga otra cosa, **la acción penal que nazca de un delito que sólo pueda perseguirse por querella del ofendido o algún otro acto equivalente, prescribirá en un año, contado desde el día en que quienes puedan formular la querella o el acto equivalente, tengan conocimiento del delito y del delincuente, y en tres, fuera de esta circunstancia..."*;* siendo que en el caso específico se está ante la primera de las hipótesis transcritas, habida cuenta que la parte ofendida MATTEL INC. tuvo conocimiento de los hechos y de quienes los efectuaron cuando menos, a saber, desde **el siete de abril de dos mil cinco** en que el licenciado FRANCISCO JAVIER TIBURCIO CELORIO presentó su escrito fechado el seis del citado mes y año, en el que se ostentó como apoderado legal de dicha ofendida **(foja 10 a 100 del tomo I);** en cuya tesitura, el plazo de un año para formular la querella respectiva concluyó **el seis de abril de dos mil seis.** Lo anterior, por supuesto tomando en consideración la ineficacia de la querella presentada por el profesionista de marras, conforme a las reseñadas razones pormenorizadas en párrafos que preceden.

En tales condiciones, con apoyo en los artículos 101 y 107, párrafo primero (primera hipótesis), del Código Penal Federal, **se declara prescrita la acción penal respecto de la ofendida MATTEL INC., en relación con los delitos perseguibles por querella de parte ofendida, previstos en los artículos 223, fracciones IV y VI de la Ley de la Propiedad Industrial y 424 BIS del Código Penal Federal;** y, por ende, **extinguida,** conforme con lo dispuesto en el numeral 100 del mismo ordenamiento legal, de acuerdo con el cual la prescripción extingue la acción penal; en consecuencia, con fundamento en los artículos 298, fracción III, 300, parte inicial y 301, primera hipótesis, del Código Federal de Procedimientos Penales, **por lo que concierne a dicha**

8

Confidential - Attorney's Eyes Only

Exhibit 26,
P. 328

MGA 0876951

117/2006-II

empresa, de oficio **SE DECRETA EL SOBRESEIMIENTO DE LA CAUSA PENAL en que se actúa**; ordenándose hacer las anotaciones respectivas en el libro de gobierno correspondiente.

Por otra parte, en cuanto a la querella formulada el siete de abril del dos mil cinco por FRANCISCO JAVIER TIBURCIO CELORIO, en su carácter de apoderado de las empresas MATTEL DE MÉXICO y MATTEL SERVICIOS, ambas S.A. DE C.V., tal personalidad la acreditó con los testimonios de las escrituras 8,055 y 8,266, pasados ante la fe de la Notaría Pública número 194 del Distrito Federal, **relativos al poder general para pleitos y cobranzas que le fue otorgado por el autorizado de dichas sociedades**; misma que ratificó ante el representante social de la Federación en diligencia de quince del citado mes y año. Sin embargo, en el caso específico ello no es suficiente para legitimar al querellante, de acuerdo con los razonamientos y sustento legal que enseguida se precisan:

En la especie adquiere trascendental importancia lo narrado en el escrito de querella, acerca de que los hechos relatados son respecto de ilícitos relacionados con sistemas informáticos que tienen como origen una red mundial, **cuya titularidad corresponde a MATTEL INC.**, destacando como los más importantes: ISIS, CUBO DE VENTAS, PAS, DRAF, PLAN 2004 VS SALES 2003, REVISIÓN DE DESPLAZAMIENTOS A LA FECHA Y PROYECTADOS (REVISIÓN POS), TYCO R/C DEMOSTRACIÓN TEMPORADA 2002, SALES BY PRAND FORRESCAST 2, en los que se concentran bases de datos y programas relativos a las estrategias comerciales de productos que ostentan las marcas protegidas a favor de MATTEL INC., siendo entre otros aspectos lo concerniente a costos, desplazamiento, publicidad, producción, presupuestos, sugerencias de asesores y necesidades de departamentos de mercadotecnia; lo que conforme con el dictamen emitido por la perito en

9

Confidential - Attorney's Eyes Only

MGA 0876952

materia de propiedad intelectual e industrial MARÍA TERESA ROMERO GONZÁLEZ, propuesta por MATTEL INC. y MATTEL MÉXICO, S.A DE C.V., los elementos de informática antes aludidos y los señalados en la conclusión 19, visible en la página 100 de dicho dictamen, se concluyó que dicha información constituía secreto industrial y una obra autoral de la rama de compilación de datos.

Así, resulta **preponderante destacar que en la especie no obra en la indagatoria** _el respectivo acto_, _convenio o contrato_, mediante el cual el autor o autores de las correspondientes obras, en el caso MATTEL INC., hubiese transmitido a las empresas MATTEL DE MÉXICO S.A DE C.V. y MATTEL SERVICIOS S.A. DE C.V. que representó el querellante, los derechos conexos patrimoniales que contienen los sistemas informáticos a que se ha hecho alusión.

Ciertamente, conforme con lo establecido en el artículo 30 de la Ley Federal de Derechos de Autor, el titular de los derechos patrimoniales puede libremente transferirlos u otorgar licencias de uso exclusivo o no, **a través de actos, convenios o contratos celebrados invariablemente por escrito**; y de acuerdo con el numeral 32 de la misma ley, **dichos actos deben inscribirse en el Registro Público de Derechos de Autor, para poder surtir efectos contra terceros**; por tanto, a fin de tener por legalmente satisfecha la querella a que se refieren los artículos 429 del Código Punitivo Federal y 223, último párrafo, de la Ley de la Propiedad Industrial, se insiste, es menester que ello se acredite precisamente a través de la exhibición del respectivo acto, convenio o contrato, mediante el cual, el o los autores de las correspondientes obras le hayan transmitido esos derechos conexos patrimoniales, mismos que dicho sea deben estar inscrito en el Registro Público del Derecho de Autor. Por lo que al no demostrase tales circunstancias, pone de manifiesto que no se satisfizo cabalmente el derecho a querellarse a

10

Confidential - Attorney's Eyes Only

Exhibit 26 ,
P. 330

MGA 0876953

117/2006-II

favor de las empresas ofendidas MATTEL DE MÉXICO S.A DE C.V. y MATTEL SERVICIOS S.A. DE C.V. y, en consecuencia, no se acredita que se haya cumplido con el requisito de procedibilidad que nos ocupa, en términos del artículo 119 del Código Federal de Procedimientos Penales. En cuya tesitura y, por idénticos motivos y fundamentos expuestos en párrafos que anteceden, lo cual se tiene por reproducido en este apartado en obvio de repeticiones inútiles conforme con lo previsto en la fracción IV del artículo 95 del Código Federal de Procedimientos Penales, **se declara prescrita la acción penal y, en consecuencia extinguida, únicamente por lo que concierne a los delitos perseguibles sólo por querella de parte ofendida, que en el caso resultan ser los previstos en los artículos 223, fracciones IV y VI de la Ley de la Propiedad Industrial y 424 BIS del Código Penal Federal.**

Similar criterio fue sustentado por la Magistrada del Cuarto Tribunal Unitario en Materia Penal del Primer Circuito, al resolver el **toca 13/2005-I**, en la que confirmó el auto pronunciado en la **causa penal 143/04-III**, del índice de este juzgado, en ejecutoria de fecha veinticinco de abril de dos mil cinco, mediante la que en lo aquí relevante adujo: *"...Argumentos que resultan legales, porque contrario a lo sostenido en los agravios del representante social de la federación, el valor probatorio que pueda tener el certificado de licencia número 03-2001-110710334900-3, de ocho de noviembre de dos mil uno, relativo a las inscripciones de los derechos de autor, es independiente con la circunstancia de que no es un documento idóneo para acreditar que las supuestas empresas agraviadas son titulares de los derechos conexos, derivados de las obras protegidas que se falsificaron y que se pusieron a la venta...".*

Deviene aplicable, por similitud de razones, la tesis número I.7o.P.14 P, visible en la página 1766 del Semanario Judicial de la Federación y su Gaceta, tomo XVII, enero de

11

---

Confidential - Attorney's Eyes Only

MGA 0876954

2003, bajo el rubro y tenor: "*DERECHOS DE AUTOR. LEGITIMACIÓN PARA PRESENTAR LA QUERELLA POR EL DELITO PREVISTO EN EL ARTÍCULO 424 TER DEL CÓDIGO PENAL FEDERAL. El artículo 5° de la ley de la materia prescribe que el reconocimiento de los derechos de autor y los derechos conexos no requieren registro ni documento de ninguna especie, ni está subordinado al cumplimiento de formalidad alguna; no obstante, en tratándose del requisito de procedibilidad consistente en la querella necesaria de parte ofendida, debe comprobarse que sea presentada por quien esta facultado para ello; por tanto, si el derecho de autor es el reconocimiento que hace el Estado a favor de todo creador de obras originales susceptibles de ser divulgadas en cualquier forma o medio, a fin de que goce de prerrogativas y privilegios exclusivos de carácter personal y patrimonial, por disposición del artículo 30 de la Ley Federal del Derecho de Autor, el titular de los derechos patrimoniales puede libremente transferirlos u otorgar licencias de uso exclusivas o no exclusivas, a través de actos, convenios o contratos celebrados invariablemente por escrito, que conforme al numeral 32 de la misma ley, deben inscribirse en el Registro Público del Derecho de Autor para que puedan surtir efectos contra terceros. Por tanto, es inconcuso que la única forma de acreditar que en la empresa representada por su apoderado legal, es realmente la titular de los derechos transgredidos por la conducta desplegada y que son diferentes al derecho de autor del cual derivan, a fin de tener por satisfecha la querella necesaria a que se refiere el artículo 424 ter del Código Penal Federal, es precisamente mediante la exhibición del respectivo acto, convenio o contrato mediante el cual los autores de las correspondientes obras le hayan transmitido esos derechos conexos patrimoniales, además de su inscripción en el Registro Público del Derecho de Autor*".

12

Exhibit 26
P. 332

Confidential - Attorney's Eyes Only

MGA 0876955

117/2006-II

TERCERO.- En cuanto al delito previsto en el artículo 211 BIS 1., primera parte, del Código Penal Federal, (hipótesis de provocar pérdida de información contenida en sistemas o equipos de informática protegidos por algún mecanismo de seguridad), perseguible de oficio y atribuido a **CARLOS GUSTAVO MACHADO GÓMEZ**, se analizará si se encuentran acreditados los elementos que conforman el cuerpo de dicho ilícito y, en su caso, su probable responsabilidad en la comisión del mismo; o bien, en el supuesto de no ser así, se procederá a realizar la declaratoria respectiva; el numeral antes citado en lo conducente prevé:

*"211 BIS 1. Al que sin autorización modifique, destruya o provoque pérdida de información contenida en sistemas o equipos de informática protegidos por algún mecanismo de seguridad...".*

De la anterior transcripción se desprenden, **para el caso específico que nos ocupa**, los siguientes elementos constitutivos del delito de que se trata, en armonía con lo previsto en el artículo 168, segundo párrafo, del Código Federal de Procedimientos Penales:

Que el activo del delito, sin autorización provoque pérdida de información contenida en sistemas o equipos de informática protegidos por algún mecanismo de seguridad.

Tales elementos no se encuentran acreditados en autos, pues pese a que al tenor de los hechos reseñados en el escrito de querella, específicamente en los puntos I, II, VII, inciso B), XII y XIII, la información perdida se encontraba en la computadora asignada al ahora inculpado **CARLOS GUSTAVO MACHADO GÓMEZ**; sin embargo, también se advierte que dicha máquina fue objeto de un evidente manipuleo por parte de las personas que se precisan en ese escrito, al grado de no estarse materialmente en condiciones de determinar siquiera qué fue lo que ocasionó la falla en esa computadora y, si eso, fue lo que trajo como consecuencia la

13

Exhibit 26 ,
P. 333

Confidential - Attorney's Eyes Only

MGA 0876956

pérdida ( información imputada al indiciado; que se precise por lo menos qué fue lo que efectuaron en ese aparato de informática las personas que trataron de encontrar la falla; pero sobre todo, no existe imputación directa de que el ahora acusado en específico haya ocasionado la referida falla, consistente en problemas técnicos y, que en general, no funcionaba. Así, se tiene que la empleada de MATTEL SERVICIOS, S.A. DE C.V., señora Melly Vannesa Tejada Rojas, **al encender la máquina** visualizó en la pantalla un mensaje de error, lo que reportó el diecinueve de abril de dos mil cuatro al señor a Ricardo Kiyoshi Honda Hatadi, quien en ese entonces fungía como Administrador del Sistema Informático propiedad de MATTEL DE MÉXICO, S.A. DE C.V., mismo que **revisó y removió el disco duro,** <u>el que insertó en</u> <u>otra computadora para probarlo;</u> **<u>disco que el veintiocho del</u>** **<u>citado mes y año fue remitido a MATTEL, INC.,</u>** el cual fue recibido por Jaime Elías y entregado por éste el cuatro de mayo siguiente al señor ROY Schawarz, Gerente del Departamento de Tecnología de la Información de MATTEL, INC., **quien procedió a conectarlo para su revisión;** *al siguiente día siete fue* **analizado** *por Mark Spenser,* experto en computación de la compañía Evidentdata, quien dicho sea inicialmente <u>logró recuperar y analizar la información</u> <u>contenida en el disco duro de la computadora que había</u> <u>tenido asignada CARLOS GUSTAVO MACHADO GÓMEZ.</u> En este orden de ideas, se itera la imposibilidad material para atribuirle al inculpado la pérdida de información que se le adjudica; además de que no debe soslayarse que, el propio denunciante, aseveró que la información fue recuperada; por consiguiente, ante la no comprobación del cuerpo del delito de que se trata, deviene inconducente avocarse al análisis de la probable responsabilidad del acusado en su comisión.

En mérito de lo anteriormente justipreciado, al no quedar satisfechos los requisitos que para el libramiento de una orden de aprehensión se exige en los artículos 16 constitucional y

14

Exhibit 26
P. 334

Confidential - Attorney's Eyes Only

MGA 0876957

195 del Código Federal de Procedimientos Penales, se impone negar la orden de captura solicitada por la representación social de la Federación respecto del delito previsto en el artículo 211 BIS 1., primera parte, del Código Penal Federal, hipótesis de provocar pérdida de información contenida en sistemas o equipos de informática y protegidos por algún mecanismo de seguridad.

Atento a lo previsto en el último párrafo del artículo 142 del Código Federal de Procedimientos Penales y, una vez que cause ejecutoria la presente resolución, devuélvase al Ministerio Público de la Federación consignador, por conducto de su homóloga adscrita a este juzgado, las constancias que integran la correspondiente averiguación previa, así como copia certificada de las subsecuentes actuaciones efectuadas con motivo de la consignación respectiva, incluyendo la presente, para el eventual trámite que proceda.

Por lo antes expuesto y fundado, se resuelve:

**PRIMERO.- SE DECRETA EL SOBRESEIMIENTO DE LA CAUSA PENAL en que se actúa respecto de los delitos** previstos en los artículos 223, fracciones IV y VI, de la Ley de la Propiedad Industrial y 424 BIS del Código Penal Federal, en términos del considerando segundo de esta resolución; ordenándose hacer las anotaciones respectivas en el libro de gobierno correspondiente.

**SEGUNDO.- Se niega la orden de aprehensión solicitada contra CARLOS GUSTAVO MACHADO GÓMEZ,** respecto del delito previsto en el artículo 211 BIS 1., primer párrafo, del Código Penal Federal, en su modalidad de provocar pérdida de información contenida en sistemas o equipos de informática y protegidos por algún mecanismo, conforme a lo expuesto en el considerando tercero.

**TERCERO.-** Una vez que cause ejecutoria la presente resolución, devuélvase al Ministerio Público de la Federación consignador las constancias que integran la correspondiente averiguación previa, así como copia certificada de las

15

Confidential - Attorney's Eyes Only

Exhibit 26,
P. 335

MGA 0876958

117/2006-II

subsecuentes actuaciones efectuadas con motivo de la consignación respectiva, en los términos precisados en la parte final del considerando tercero.

NOTIFÍQUESE EXCLUSIVAMENTE A LA AGENTE DEL MINISTERIO PÚBLICO DE LA FEDERACIÓN ADSCRITA Y CÚMPLASE.

Así, lo resolvió y firma el **LICENCIADO ALEJANDRO CABALLERO VÉRTIZ**, Juez Sexto de Distrito de Procesos Penales Federales en el Distrito Federal, ante el Secretario que autoriza y da fe.

EL JUEZ                                        EL SECRETARIO

16

Exhibit 26
P. 336

Confidential - Attorney's Eyes Only

MGA 0876959

**Exhibit 27**

SAMPLE MC~ ~MPLOYMENT AGREEMENTS (MOTION~ ~mine No. 4)

| Bates Start | Bates Stop | Date |
|---|---|---|
| MGA001470 | MGA001470 | UNDATED |
| MGA001461 | MGA001461 | UNDATED |
| MGA 0875741 | MGA 0875750 | October 22, 1989 |
| MGA 0875580 | MGA 0875593 | May 13, 1996 |
| MGA 0875719 | MGA 0875728 | May 24, 1999 |
| MGA 3814785 | MGA 3814789 | September 27, 1999 |
| MGA 0875627 | MGA 0875644 | February 22, 2000 |
| MGA 0875570 | MGA 0875579 | November 1, 2000 |
| MGA 0875548 | MGA 0875554 | November 13, 2000 |
| MGA 0875683 | MGA 0875703 | January 4, 2001 |
| MGA 0875704 | MGA 0875718 | April 10, 2001 |
| MGA 0875804 | MGA 0875816 | May 7, 2001 |
| MGA 0875537 | MGA 0875547 | May 21, 2001 |
| MGA 0875479 | MGA 0875494 | September 21, 2001 |
| MGA 0876077 | MGA 0876087 | February 3, 2002 |
| MGA 0876143 | MGA 0876154 | February 26, 2002 |
| MGA 0876847 | MGA 0876861 | April 8, 2002 |
| MGA 0875796 | MGA 0875803 | April 12, 2002 |
| MGA 0875495 | MGA 0875507 | April 12, 2002 |
| MGA 3816250 | MGA 3816252 | April 15, 2002 |
| MGA001403 | MGA001405 | April 30, 2002 |
| MGA001400 | MGA001402 | April 30, 2002 |
| MGA 0875414 | MGA 0875431 | May 14, 2002 |
| MGA 0876243 | MGA 0876264 | August 30, 2002 |
| MGA 0875729 | MGA 0875740 | September 29, 2002 |
| MGA 0875998 | MGA 0876010 | November 4, 2002 |
| MGA 0876586 | MGA 0876598 | November 4, 2002 |
| MGA 0876227 | MGA 0876242 | February 3, 2003 |
| MGA 0875820 | MGA 0875833 | March 17, 2003 |
| MGA 0875773 | MGA 0875780 | March 31, 2003 |
| MGA 0876556 | MGA 0876566 | March 31, 2003 |
| MGA 0875781 | MGA 0875795 | May 1, 2003 |
| MGA 0876066 | MGA 0876076 | June 12, 2003 |
| MGA 1629032 | MGA 1629032 | June 17, 2003 |
| MGA 2126147 | MGA 2126148 | July 9, 2003 |
| MGA 0875401 | MGA 0875413 | July 16, 2003 |

Exhibit 27
P. 337

1

SAMPLE MGA EMPLOYMENT AGREEMENTS (MOTION nine No. 4)

| Bates Start | Bates Stop | Date |
|---|---|---|
| MGA 0875508 | MGA 0875520 | July 21, 2003 |
| MGA 0876779 | MGA 0876805 | August 8, 2003 |
| MGA 0875645 | MGA 0875657 | August 11, 2003 |
| MGA 0876547 | MGA 0876555 | August 25, 2003 |
| MGA 0875853 | MGA 0875868 | September 25, 2003 |
| MGA 0875762 | MGA 0875772 | October 13, 2003 |
| MGA 0876311 | MGA 0876327 | December 1, 2003 |
| MGA 0875611 | MGA 0875626 | January 5, 2004 |
| MGA 0876567 | MGA 0876577 | January 19, 2004 |
| MGA 0876295 | MGA 0876310 | February 9, 2004 |
| MGA 0875555 | MGA 0875569 | February 11, 2004 |
| MGA 0876482 | MGA 0876492 | February 17, 2004 |
| MGA001303 | MGA001310 | February 19, 2004 |
| MGA 0876433 | MGA 0876449 | March 8, 2004 |
| MGA 0876346 | MGA 0876362 | March 17, 2004 |
| MGA 0413363 | MGA 0413364 | March 23, 2004 |
| MGA 0875880 | MGA 0875894 | March 25, 2004 |
| MGA 0876380 | MGA 0876396 | April 7, 2004 |
| MGA 0331904 | MGA 0331906 | April 12, 2004 |
| MGA 0876175 | MGA 0876189 | April 22, 2004 |
| MGA 0875594 | MGA 0875610 | April 23, 2004 |
| MGA 0875751 | MGA 0875761 | April 28, 2004 |
| MGA 0875521 | MGA 0875536 | May 3, 2004 |
| MGA 0875252 | MGA 0875275 | May 7, 2004 |
| MGA 0875895 | MGA 0875913 | July 20, 2004 |
| MGA 0253186 | MGA 0253187 | July 23, 2004 |
| MGA 0887208 | MGA 0887215 | September 1, 2004 |
| MGA 0876024 | MGA 0876043 | November 15, 2004 |
| MGA 0876207 | MGA 0876226 | November 15, 2004 |
| MGA 0876616 | MGA 0876626 | December 8, 2004 |
| MGA 0876044 | MGA 0876065 | January 3, 2005 |
| MGA 0876328 | MGA 0876345 | January 7, 2005 |
| MGA 0875869 | MGA 0875879 | February 1, 2005 |
| MGA 0875432 | MGA 0875450 | February 10, 2005 |
| MGA 0876657 | MGA 0876673 | February 14, 2005 |
| MGA 0876506 | MGA 0876518 | February 14, 2005 |

Exhibit 27,
P. 338

2

SAMPLE MC   MPLOYMENT AGREEMENTS (MOTION   nine No. 4)

| Bates Start | Bates Stop | Date |
|---|---|---|
| MGA 0876627 | MGA 0876637 | February 23, 2005 |
| MGA 0876826 | MGA 0876846 | March 1, 2005 |
| MGA 0437314 | MGA 0437314 | March 3, 2005 |
| MGA 0875451 | MGA 0875478 | March 7, 2005 |
| MGA 0876155 | MGA 0876174 | March 14, 2005 |
| MGA 0875658 | MGA 0875682 | May 2, 2005 |
| MGA 0876284 | MGA 0876294 | May 9, 2005 |
| MGA 0876190 | MGA 0876206 | May 18, 2005 |
| MGA 0875834 | MGA 0875852 | July 8, 2005 |
| MGA 0876493 | MGA 0876505 | July 26, 2005 |
| MGA 0876122 | MGA 0876142 | July 27, 2005 |
| MGA 0876363 | MGA 0876379 | February 6, 2006 |
| MGA 0876708 | MGA 0876725 | February 24, 2006 |
| MGA 0887406 | MGA 0887425 | March 7, 2006 |
| MGA 0869669 | MGA 0869670 | March 30, 2006 |
| MGA 1753341 | MGA 1753342 | May 1, 2006 |
| MGA 0876519 | MGA 0876531 | May 2, 2006 |
| MGA 1144522 | MGA 1144523 | May 3, 2006 |
| MGA 0876638 | MGA 0876656 | May 12, 2006 |
| MGA 0875984 | MGA 0875997 | May 15, 2006 |
| MGA 0876599 | MGA 0876615 | July 7, 2006 |
| MGA 0876862 | MGA 0876872 | August 28, 2006 |
| MGA 0876764 | MGA 0876778 | September 25, 2006 |
| MGA 0876674 | MGA 0876707 | September 27, 2006 |
| MGA 0887103 | MGA 0887112 | October 1, 2006 |
| MGA 1623936 | MGA 1623964 | October 4, 2006 |
| MGA 0875967 | MGA 0875983 | November 13, 2006 |
| MGA 0876397 | MGA 0876413 | November 15, 2006 |
| MGA 0876450 | MGA 0876468 | December 8, 2006 |
| MGA 0876532 | MGA 0876546 | December 16, 2006 |
| MGA 0876265 | MGA 0876283 | January 3, 2007 |
| MGA 0876088 | MGA 0876104 | January 17, 2007 |
| MGA 0876105 | MGA 0876121 | February 7, 2007 |
| MGA 0876011 | MGA 0876023 | February 12, 2007 |
| MGA 2014555 | MGA 2014556 | March 7, 2007 |
| MGA 0235828 | MGA 0235831 | March 9, 2007 |

Exhibit 27
P. 339

SAMPLE MG   MPLOYMENT AGREEMENTS (MOTION   *nine* No. 4)

| Bates Start | Bates Stop | Date |
|---|---|---|
| MGA 0876414 | MGA 0876432 | March 12, 2007 |
| MGA 0602391 | MGA 0602403 | March 19, 2007 |
| MGA 1620047 | MGA 1620055 | March 20, 2007 |
| MGA 0215407 | MGA 0215416 | March 21, 2007 |
| MGA 0876806 | MGA 0876825 | June 8, 2007 |

Exhibit 27 ,
P. 3 40