**Exhibit 28**

## CONFIDENTIALITY AND INVENTIONS ASSIGNMENT AGREEMENT

This Confidentiality and Inventions Agreement is executed by and between ABC Int'l Traders, Inc. ("Company") and DARYOUSH ARYAPOUR ("Employee").

During the course of his/her employment at the Company, Employee will have access to, will acquire, and will become acquainted with trade secrets, confidential information and property related to the Company and its customers' and vendors' businesses. The Company's trade secrets include, but are not limited to, such information as customer names, addresses, phone numbers, names, specific characteristics of suppliers and customers and their respective employees with whom the Company has dealings (whether or not such information is contained on a Rolodex, computer printout, customer list, or is orally communicated to any Company employee in the course of their duties) and the history of purchases, along with terms and conditions of credit offered to each customer; names, addresses, telephone numbers and specific characteristics of prospective customers and contacts; information regarding particular customer product peculiarities, manners of doing business, needs and requirements; product specifications and performance needs for each customer; and the prices charged to each customer; customer information reports, pricing information (such as price lists, quotation guides, previous or outstanding quotations, equipment prices or billing information), mailing labels, mailing plans and programs, sales report forms, pending projects or proposals, techniques used in approaches or results of any market research, advertising sources, employee salaries, contracts and wage information, names and addresses of the vendors, manufacturers, and other suppliers of Company products, the products they supply, the applicable prices and discounts, and the applicable product specifications; new products or inventions developed or under development by the Company; formulas, patterns, compilations, programs, devises, methods, techniques, processes, pictures, contracts, files, methods or production (including quality control and packaging), proposals, business plans and projections, budgets, financial information, software, hardware, any patent application or the contents thereof; and all other material relating in any manner whatsoever to the customers products, vendors, and suppliers of Company, including matters which should reasonably be considered trade secrets even if not expressly described herein.

All information obtained in the course of Employee's employment is to be used only for the purpose of conducting the Company's business. Employee agrees to never discuss or disclose such trade secrets, confidential information or property, either directly or indirectly, with or in the presence of persons outside the Company, either during employment, or at any time thereafter, except as required by Employee's supervisor. Employee further agrees that information in any form, including but not limited to documents, tapes, lists, computer printouts, studies, reports, drafts, pictures, charts, maps, drawings, programs, equipment, scrap, blueprints, vendor lists, customer lists, client billing information, all financial reports, payroll information, records, files and other materials pertaining to the Company, its customers and vendors, may not be removed from the facilities without the advance written permission of Employee's supervisor.

Employee acknowledges that all such trade secrets or confidential information, or any copies of summaries thereof, whether prepared by Employee, by the Company, or provided to Employee by the Company, is the exclusive property of the Company. On demand or termination of employment for any reason, Employee agrees to return to the Company all

papers, records, electron. copies, and documents in En,..oyee's possession or obtained during the course of Employee's employment with the Company and Employee further agrees that he/she will not retain any copies, nor permit anyone to retain any copies thereof, except that those who have successfully completed their 90 day introductory period may keep their Franklin Planner.

Employee acknowledges and agrees that the trade secrets described herein have independent economic value in that they are not generally known within the trade they represent many years of research and development and give the Company substantial competitive advantages.

As a condition of employment, Employee agrees that he/she (1) will regard and preserve the confidential information as highly confidential and as the trade secrets of the Company; (2) will not, at any time during or within twelve months after the termination of his/her employment with the Company, reveal, disclose, permit to be disclosed, or make known to any person, firm or corporation, any confidential information which was disclosed to Employee or of which he/she became aware during his/her employment, regardless of whether developed, prepared or created in whole or in part by Employee's efforts, except to the extent that such disclosure is necessary and is authorized in writing by the Company to carry out Employee's duties of employment; (3) will retain all confidential information in trust for the sole benefit of the Company and will not disclose to or use any confidential information in an independent business related to the scope of the Company's business (designer, manufacturer and distributor of toy); (4) will not photocopy or duplicate, and will not permit any person to photocopy or duplicate, any of the confidential information without the Company's written consent and approval; (5) will not make any use of confidential information for his/her own benefit or the benefit of any person or entity other than the Company; (6) will return all confidential information (including but not limited to customer lists, books maintained by Employee, and source lists) to the Company immediately upon request for same. Employee agrees that if he/she has any questions about whether a matter is a trade secret, to seek a determination by the Company before he/she uses any such information.

Employee agrees to maintain the same level of confidentiality regarding co workers, employee relation matters, and Company operations. Employee agrees, by accepting employment or continued employment with the Company, to comply with these rules and to maintain confidentiality of the Company's trade secrets.

Employee understands and acknowledges that the trade secrets and confidential information of the Company are not known to the general public and are the subject of reasonable efforts to maintain its secrecy. They are of a special, unique and extraordinary character, which gives them a particular value, the loss of which cannot be reasonably compensated in damages in an action at law. Employee further understands and agrees that in addition to any other rights or remedies which the Company may have, the Company shall be entitled to immediate injunctive and other equitable relief to prevent a breach of this Confidentiality and Inventions Agreement. If any legal proceeding arises under this Confidentiality and Inventions Agreement, the prevailing party shall be entitled to recover all costs and expenses, including reasonable attorney's fees and costs. California law shall apply to this agreement as to contracts wholly performed within the state.

Confidential - Attorney's Eyes Only

MGA 0875742

Employee and the Company agree that this Confidentiality and Inventions Agreement shall not apply to information that Employee was aware of prior to his/her employment with the Company, or that is otherwise publicly known.

Employee further agrees that during his/her employment and for a period of twelve months after termination, Employee will not solicit the purchase of any products or services from any supplier or vendor who supplies products or services to the Company.

INVENTIONS ASSIGNMENT:

1. ASSIGNMENT OF INTEREST: Employee agrees to assign, and does hereby assign, to Company all interest which employee may have in all patentable and/or not-patentable ideas and/or inventions made or conceived by Employee solely or jointly with others during Employee's employment with Company. This assignment shall not apply to any idea or invention developed by Employee entirely on Employee's own time without equipment, supplies, facilities, or trade secret information of Company, unless such invention or idea: (1) relates to the business of company or to Company's actual or anticipated research or development, or (2) results from any work performed by Employee for Company. THIS AGREEMENT DOES NOT APPLY TO ANY INVENTION WHICH QUALIFIES FULLY UNDER THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 2870

2. DISCLOSURE OF IDEAS OR INVENTIONS: Employee agrees to promptly disclose in writing to Fred Larian all inventions developed solely or jointly with others during Employee's employment with Employer, whether such inventions are patentable, not-patentable or assignable under this Agreement. Employer agrees to maintain such disclosure in confidence.

3. WRITTEN DISCLOSURE OF PRIOR INVENTIONS: Employee agrees to provide a complete list of all patented or not-patented ideas and inventions conceived by Employee or anyone else jointly with Employee, prior to the date Employee has signed this Agreement. The failure of Employee to provide Company with a written disclosure of ideas or inventions shall be deemed to constitute an affirmative acknowledgment by Employee that no such ideas or inventions exist.

If any provision of this Confidentiality and Inventions Agreement is held to be invalid or unenforceable, in whole or in part, the remaining portions of this Agreement shall continue to be valid and will be performed, construed and enforced to the fullest extent permitted by law. The invalid or unenforceable provision shall be deemed amended and limited in accordance with the intent of the parties, as determined from the face of this Agreement, to the extent necessary to permit the maximum enforceability or validation of the provision.

| 10-22-99 | _ed mujim._ | DARYOUSH ARYAPOUR |
|---|---|---|
| Date | Employee Signature | Employee Name (printed) |

| | | |
|---|---|---|
| Date | Employer Signature | Name (printed) |

Confidential - Attorney's Eyes Only

MGA 0875743

## ACKNOWLEDGEMENT OF RECEIPT OF HANDBOOK

This is to acknowledge that I have received a copy of the Employee Handbook, and that I understand that it contains important information about the Company's personnel policies. *I acknowledge that I am expected to read, understand, and comply with the Company's policies and I will familiarize myself with those policies and practices.* I understand that the Company may from time to time and in its sole discretion, change, rescind or add to any policies, benefits or practices described. The Company will advise employees of material changes. I also know that it is my responsibility to request clarification of any policies I do not understand.

*Furthermore, I understand that employment with the Company is not for a specified term and is at the mutual consent of the employee and the Company. I understand also that either the Company or I may terminate the employment relationship at will, at any time, and with or without cause or advance notice.*

Date: _10 - 25 - 99_

_ed mmpon_
Employee's Signature

_Daryoush Aryapour_
Employee's Printed Name

53                                    January, 1999

Confidential - Attorney's Eyes Only

Exhibit _28_, P. _344_

MGA 0875744

## MUTUAL AGREEMENT TO MEDIATE AND/OR ARBITRATE

We recognize that differences may arise between us. Through this mutual agreement to mediate and/or arbitrate("Agreement"), ~~DARYOUSH ARYAPOUR~~ ("Employee"), and ABC Int'l Traders Inc. ("Company") expect to gain the benefits of a speedy, economical, impartial dispute resolution procedure. This Agreement provides as follows:

This Agreement shall apply to all disputes or controversies, whether or not arising out of Employee's employment (or termination of that employment), that the Company may have against Employee, or that employee may have against the Company or against its officers, directors, employees, or agents("Claims"). The Claims include, but are not limited to, controversies relating to: compensation or benefits, breach of any contract, torts, discrimination under state, federal or local law, and violation of any federal, state or other governmental law, statute, regulation or ordinance. However, this Agreement shall not apply to any claim: (a) by the employee for workers' compensation or unemployment benefits; or (b) by the Company for injunctive and/or other equitable relief, including, but not limited to, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information. With respect to matters referred to in sub-paragraph (b) above, the company may seek and obtain injunctive relief in court, and then proceed with arbitration under the Agreement.

**EACH PARTY WAIVES THE RIGHT TO A JURY TRIAL OR COURT TRIAL. THE SOLE AND EXCLUSIVE METHOD TO RESOLVE ANY CLAIM IS MEDIATION AND/OR ARBITRATION AS PROVIDED IN THIS AGREEMENT.** The parties each waive their right to commence an action in any court to resolve a Claim. Neither party shall initiate or prosecute any lawsuit in any way related to any claim covered by this Agreement.

Any Claim by employee or the company must be processed in the manner set forth below. Otherwise, the Claim shall be void and deemed waived even if there is a federal or state statute of limitations which would allow more time to pursue the Claim.

An Employee Claim must initially be raised verbally by Employee to the person(s) involved. If the issue cannot be resolved, the matter must be presented to the Employee's immediate supervisor within one year after you initially knew or should have known of the facts that gave rise to the Claim. The supervisor will answer the Claim within fifteen (15) days from the date the Claim was presented. If the supervisor fails to respond, then it will be considered a denial of your Claim.

If Employee is not satisfied with the supervisor's answer, or the nature of the Claim is such that Employee does not wish to present it to his supervisor, the Employee may obtain the assistance of the President, who will discuss the Claim with Employee and assist, if Employee desires assistance, in presenting the Claim in written form to the Company. Employee must present the Claim in writing to the President within fifteen (15) working days after Employee receives the supervisor's answer. However, if Employee decides not to present the Claim to his or her supervisor, Employee must present the Claim to the President, in writing, within one year after Employee initially knew or should have known of the facts that gave rise to the Claim. If Employee does not present the Claim in writing to the President within 15 days or one year, whichever is applicable, then Employee will be deemed to have accepted the Company's last stated position on the Claim and waived the right to further contest the Claim.

The President will consider Employee's written presentation, and any other information that Employee deems relevant. The President will render a written decision within fifteen (15) working

days. This decision will be mailed to Employee's address, as it appears in the Company's records. If the Company fails to respond, it will be deemed a denial of your Claim.

If Employee is not satisfied with the President's decision, Employee may request a voluntary, non-binding mediation. If mediation is selected, Employee and the Company agree to utilize mediation in good faith with the goal of resolving the Claim. If the parties cannot mutually agree on the mediator, they will utilize the American Arbitration Association ("AAA") mediation dispute resolution procedures. The mediation shall take place in or near the city in which Employee resided when last employed by the Company. If mediation does not result in a settlement of the Claim, either party may serve written notice to the other party of its intention to proceed to arbitrate within fifteen (15) days from the termination of the mediation.

If Employee does not desire to mediate the Claim, then he or she may present the Claim for resolution by final and binding arbitration. Employee must serve written notice on the Company of his or her intention to arbitrate within ninety (90) days from the mailing of the President's final decision.

If the Company desires to initiate arbitration to resolve a Claim against Employee, it must serve written notice on Employee within one year after it initially knew or should have know of the facts that gave rise to its Claim.

The written notice of desire to arbitrate shall describe the factual basis of all Claims asserted, and shall be served on the other party by certified mail, return receipt requested. Written notice to Employee will be mailed to his or her address as it appears in the Company's records. Written notice to the Company, or its officers, directors, employees or agents, shall be sent to the President at the Company's principal place of business. If written notice of desire to arbitrate is not served within the applicable time period, the party who failed to timely serve notice will be deemed to have waived the right to further contest the Claim and will be deemed to have accepted the other party's last stated position on the Claim.

The arbitration shall be conducted in accordance with the then-current Model Employment Arbitration Procedures of the AAA before a single arbitrator. The Arbitrator shall be selected in the following manner. The AAA shall give each party a list of 11 arbitrators drawn from its panel of labor of employment arbitrators. Each side may strike all names on the list it deems unacceptable. If only one common name remains on the list of all parties, that individual shall be the Arbitrator. If more than one common name remains on the list of all parties, the parties shall strike names alternately, in a telephone conference no more than five days after the parties receive notice that more than one acceptable arbitrator remains, until only one remains. If no common name remains on the list of all parties, the AAA shall furnish one additional list, and the above procedures will be utilized. If no arbitrator is designated from the second list, the procedures of the AAA rules will be used to select the Arbitrator.

Either party may be represented by an attorney or other representative selected by the party. The parties waive the provision of California Code of Civil Procedure Section 1283.05. Each party shall have the right to take the deposition of one individual from, any expert witness designated by, and the other party. Each party also shall have the right to make requests for production of documents to any party. Additional discovery may be had only where the arbitrator so orders, upon a showing of substantial need. All issues related to discovery will be resolved by the Arbitrator.

Confidential - Attorney's Eyes Only

MGA 0875746

The Arbitrator will have no authority to: (i) adopt new Company policies or procedures, (ii) modify the Agreement or existing Company policies, procedures, wages or benefits, or (iii) hear or decide any matter that was not processed in accordance with this Agreement. The Arbitrator shall have exclusive authority to resolve any Claim, including, but not limited to, a dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, or any contention that all or any part of this Agreement is void or voidable. The Arbitrator will have the authority to award any form or remedy or damages that would be available in a court.

Employee and the Company each agree to pay one half of the reasonable and necessary fees of the AAA and the mediator and/or Arbitrator. The parties will pay their own attorneys' fees and expenses associated with the mediation and/or arbitration. Either party, in its sole discretion, may, in writing, waive, in whole or in part, the other's failure to follow any time limit or other requirement set forth in the Agreement.

To the extent permitted by law, Employee agrees not to initiate or prosecute against the Company any administrative action (including an administrative charge of discrimination to the extent permitted by law) in any way related to any Claim covered by this Agreement.

The mediation and/or arbitration will be conducted in private, and will not be open to the public or the media. The testimony and other evidence presented, and the results of the mediation and/or arbitration, unless otherwise agreed to by both parties, is confidential and may not be disclosed, made public or reported to any person or entity, including, but not limited to, any legal or news agency, publisher or service, except pursuant to a court order, provided that the Company or Employee gives sufficient prior written notice of any judicial proceeding at which a court order is being sought, to enable the other to seek a protective order before disclosure occurs.

The Arbitrator shall render a written decision and the award (the "Award") shall set forth the facts and reasons that support the Award. The Award shall be final and binding on both you and the Company. This Agreement shall survive the termination of your employment, and can only be revoked or modified by a writing signed by the parties which specifically states an intent to revoke or modify the Agreement. This is the complete agreement of the parties on the subject of dispute resolution, mediation or arbitration of disputes.

**NOTICE: BY SIGNING THE AGREEMENT, YOU ARE AGREEING THAT ALL CLAIMS WILL BE DECIDED BY NEUTRAL MEDIATION AND/OR ARBITRATION, AND YOU ARE GIVING UP YOUR RIGHT TO A JURY TRIAL OR COURT TRIAL.**

| 10-22-99 | _Ed Wright_ | DARYOUSH ARYAPOUR |
|---|---|---|
| Date | Employee Signature | Employee Name (printed) |

| | | |
|---|---|---|
| Date | Employer Signature | Name (printed) |

Confidential - Attorney's Eyes Only

Exhibit _28_, P. _347_

MGA 0875747

)                                          )

October 13, 1999

Mr. Andy Aryapour

# REDACTED

Dear Andy:

We are pleased to extend to you an offer of employment for the position of **Director, Creative Services** at MGA Entertainment.

Your compensation package will be as follows:

1. **Base Salary:**        $78,000 per year, paid biweekly

2. **Bonus:**              15% of your base salary

3.  **401(k) Plan:**    Will be eligible for enrollment in 401(k) Plan in July 2000 Company match to your contribution is 25% up to 5%.

4. **Health Benefits:**        <u>Health Insurance:</u>  There is no charge for you (under HMO) and a monthly fee for your dependents (see attachment).

   <u>Dental Plan:</u>  There is no charge for you (under DMO) and a monthly fee for your dependents (see attachment).

   <u>Life Insurance:</u>  1 x annual income, premium paid by Company.

   <u>Accidental Death & Dismemberment:</u>  Up to 1x annual income, premium paid by Company.

5.  **Vacation:**              Two weeks paid vacation per year

Confidential - Attorney's Eyes Only

Exhibit 28, P. 348

MGA 0875748

REDACTED

6. **Employee Handbook:**   MGA requires all employees to sign an Employee Handbook, which includes a Confidentiality Agreement, an "At Will Clause/Statement", and a Mutual Agreement to Arbitrate and Mediate.  These will be presented to you for your signature upon the commencement of your employment.

This agreement is binding upon Andy Aryapour and ABC International Traders, Inc. and their respective heirs, successors, assignees, fiduciaries or other legal representatives.

I trust this offer letter addresses all open issues and look forward to an ongoing, productive relationship.

Sincerely,


Mary Claire Tiffany
Human Resources Manager

Confidential - Attorney's Eyes Only

Exhibit 28 , P. 349

MGA 0875749

October 13, 1999
Page three
Acceptance

I accept the above offer.

My start date will be ___10/25/99___.

_es allah_
Andy Aryapour

_10/20/99_
Date

DARYOUSH

Confidential - Attorney's Eyes Only

Exhibit _28_, P. _350_

MGA 0875750

## MUTUAL AGREEMENT TO MEDIATE AND/OR ARBITRATE

We recognize that differences may arise between us. Through this mutual agreement to mediate and/or arbitrate("Agreement"), _Kami Gilmour_ ("Employee"), and ABC Int'l Traders Inc. ("Company") expect to gain the benefits of a speedy, economical, impartial dispute resolution procedure. This Agreement provides as follows:

This Agreement shall apply to all disputes or controversies, whether or not arising out of Employee's employment (or termination of that employment), that the Company may have against Employee, or that employee may have against the Company or against its officers, directors, employees, or agents("Claims"). The Claims include, but are not limited to, controversies relating to: compensation or benefits, breach of any contract, torts, discrimination under state, federal or local law, and violation of any federal, state or other governmental law, statute, regulation or ordinance. However, this Agreement shall not apply to any claim: (a) by the employee for workers' compensation or unemployment benefits; or (b) by the Company for injunctive and/or other equitable relief; including, but not limited to, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information. With respect to matters referred to in sub-paragraph (b) above, the company may seek and obtain injunctive relief in court, and then proceed with arbitration under the Agreement.

EACH PARTY WAIVES THE RIGHT TO A JURY TRIAL OR COURT TRIAL. THE SOLE AND EXCLUSIVE METHOD TO RESOLVE ANY CLAIM IS MEDIATION AND/OR ARBITRATION AS PROVIDED IN THIS AGREEMENT. The parties each waive their right to commence an action in any court to resolve a Claim. Neither party shall initiate or prosecute any lawsuit in any way related to any claim covered by this Agreement.

Any Claim by employee or the company must be processed in the manner set forth below. Otherwise, the Claim shall be void and deemed waived even if there is a federal or state statute of limitations which would allow more time to pursue the Claim.

An Employee Claim must initially be raised verbally by Employee to the person(s) involved. If the issue cannot be resolved, the matter must be presented to the Employee's immediate supervisor within one year after you initially knew or should have known of the facts that gave rise to the Claim. The supervisor will answer the Claim within fifteen (15) days from the date the Claim was presented. If the supervisor fails to respond, then it will be considered a denial of your Claim.

If Employee is not satisfied with the supervisor's answer, or the nature of the Claim is such that Employee does not wish to present it to his supervisor, the Employee may obtain the assistance of the President, who will discuss the Claim with Employee and assist, if Employee desires assistance, in presenting the Claim in written form to the Company. Employee must present the Claim in writing to the President within fifteen (15) working days after Employee receives the supervisor's answer. However, if Employee decides not to present the Claim to his or her supervisor, Employee must present the Claim to the President, in writing, within one year after Employee initially knew or should have known of the facts that gave rise to the Claim. If Employee does not present the Claim in writing to the President within 15 days or one year, whichever is applicable, then Employee will be deemed to have accepted the Company's last stated position on the Claim and waived the right to further contest the Claim.

The President will consider Employee's written presentation, and any other information that Employee deems relevant. The President will render a written decision within fifteen (15) working days. This decision will be mailed to Employee's address, as it appears in the Company's records.

Confidential – Attorney's Eyes Only

Exhibit _28_, P. _351_

MGA 0875719

If the Company fails to respond, it will be deemed a denial of your Claim.

If Employee is not satisfied with the President's decision, Employee may request a voluntary, non-binding mediation. If mediation is selected, Employee and the Company agree to utilize mediation in good faith with the goal of resolving the Claim. If the parties cannot mutually agree on the mediator, they will utilize the American Arbitration Association ("AAA") mediation dispute resolution procedures. The mediation shall take place in or near the city in which Employee resided when last employed by the Company. If mediation does not result in a settlement of the Claim, either party may serve written notice to the other party of its intention to proceed to arbitrate within fifteen (15) days from the termination of the mediation.

If Employee does not desire to mediate the Claim, then he or she may present the Claim for resolution by final and binding arbitration. Employee must serve written notice on the Company of his or her intention to arbitrate within ninety (90) days from the mailing of the President's final decision.

If the Company desires to initiate arbitration to resolve a Claim against Employee, it must serve written notice on Employee within one year after it initially knew or should have know of the facts that gave rise to its Claim.

The written notice of desire to arbitrate shall describe the factual basis of all Claims asserted, and shall be served on the other party by certified mail, return receipt requested. Written notice to Employee will be mailed to his or her address as it appears in the Company's records. Written notice to the Company, or its officers, directors, employees or agents, shall be sent to the President at the Company's principal place of business. If written notice of desire to arbitrate is not served within the applicable time period, the party who failed to timely serve notice will be deemed to have waived the right to further contest the Claim and will be deemed to have accepted the other party's last stated position on the Claim.

The arbitration shall be conducted in accordance with the then-current Model Employment Arbitration Procedures of the AAA before a single arbitrator. The Arbitrator shall be selected in the following manner. The AAA shall give each party a list of 11 arbitrators drawn from its panel of labor of employment arbitrators. Each side may strike all names on the list it deems unacceptable. If only one common name remains on the list of all parties, that individual shall be the Arbitrator. If more than one common name remains on the list of all parties, the parties shall strike names alternately, in a telephone conference no more than five days after the parties receive notice that more than one acceptable arbitrator remains, until only one remains. If no common name remains on the list of all parties, the AAA shall furnish one additional list, and the above procedures will be utilized. If no arbitrator is designated from the second list, the procedures of the AAA rules will be used to select the Arbitrator.

Either party may be represented by an attorney or other representative selected by the party. The parties waive the provision of California Code of Civil Procedure Section 1283.05. Each party shall have the right to take the deposition of one individual from, any expert witness designated by, and the other party. Each party also shall have the right to make requests for production of documents to any party. Additional discovery may be had only where the arbitrator so orders, upon a showing of substantial need. All issues related to discovery will be resolved by the Arbitrator.

The Arbitrator will have no authority to: (i) adopt new Company policies or procedures, (ii) modify the Agreement or existing Company policies, procedures, wages or benefits, or (iii) hear or

decide any matter that was not processed in accordance with this Agreement. The Arbitrator shall have exclusive authority to resolve any Claim, including, but not limited to, a dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, or any contention that all or any part of this Agreement is void or voidable. The Arbitrator will have the authority to award any form or remedy or damages that would be available in a court.

Employee and the Company each agree to pay one half of the reasonable and necessary fees of the AAA and the mediator and/or Arbitrator. The parties will pay their own attorneys' fees and expenses associated with the mediation and/or arbitration. Either party, in its sole discretion, may, in writing, waive, in whole or in part, the other's failure to follow any time limit or other requirement set forth in the Agreement.

To the extent permitted by law, Employee agrees not to initiate or prosecute against the Company any administrative action (including an administrative charge of discrimination to the extent permitted by law) in any way related to any Claim covered by this Agreement.

The mediation and/or arbitration will be conducted in private, and will not be open to the public or the media. The testimony and other evidence presented, and the results of the mediation and/or arbitration, unless otherwise agreed to by both parties, is confidential and may not be disclosed, made public or reported to any person or entity, including, but not limited to, any legal or news agency, publisher or service, except pursuant to a court order, provided that the Company or Employee gives sufficient prior written notice of any judicial proceeding at which a court order is being sought, to enable the other to seek a protective order before disclosure occurs.

The Arbitrator shall render a written decision and the award (the "Award".) shall set forth the facts and reasons that support the Award. The Award shall be final and binding on both you and the Company. This Agreement shall survive the termination of your employment, and can only be revoked or modified by a writing signed by the parties which specifically states an intent to revoke or modify the Agreement. This is the complete agreement of the parties on the subject of dispute resolution, mediation or arbitration of disputes.

<u>**NOTICE: BY SIGNING THE AGREEMENT, YOU ARE AGREEING THAT ALL CLAIMS WILL BE DECIDED BY NEUTRAL MEDIATION AND/OR ARBITRATION, AND YOU ARE GIVING UP YOUR RIGHT TO A JURY TRIAL OR COURT TRIAL.**</u>

_5/24/99_
Date

_Kami Gilmour_
Employee Signature

_Kami Gilmour_
Employee Name (printed)

_5/24/99_
Date

_[signature]_
Employer Signature

_Issie Cook_
Name (printed)

Confidential - Attorney's Eyes Only

Exhibit _28_, P. _353_

MGA 0875721

## CONFIDENTIALITY AND INVENTIONS ASSIGNMENT AGREEMENT

This Confidentiality and Inventions Agreement is executed by and between ABC Int' Traders, Inc. ("Company") and _____ Rami Gilmour _____ ("Employee").

During the course of his/her employment at the Company, Employee will have access to, will acquire, and will become acquainted with trade secrets, confidential information and property related to the Company and its customers' and vendors' businesses. The Company's trade secrets include, but are not limited to, such information as customer names, addresses, phone numbers names, specific characteristics of suppliers and customers and their respective employees with whom the Company has dealings (whether or not such information is contained on a Rolodex computer printout, customer list, or is orally communicated to any Company employee in the course of their duties) and the history of purchases, along with terms and conditions of credit offered to each customer; names, addresses, telephone numbers and specific characteristics of prospective customers and contacts; information regarding particular customer product peculiarities, manners of doing business, needs and requirements; product specifications and performance needs for each customer; and the prices charged to each customer; customer information reports, pricing information (such as price lists, quotation guides, previous or outstanding quotations, equipment prices or billing information), mailing labels, mailing plans and programs, sales report forms, pending projects or proposals, techniques used in approaches or results of any market research, advertising sources, employee salaries, contracts and wage information, names and addresses of the vendors, manufacturers, and other suppliers of Company products, the products they supply, the applicable prices and discounts, and the applicable product specifications; new products or inventions developed or under development by the Company; formulas, patterns, compilations, programs, devises, methods, techniques, processes, pictures, contracts, files, methods or production (including quality control and packaging), proposals, business plans and projections, budgets, financial information, software, hardware, any patent application or the contents thereof; and all other material relating in any manner whatsoever to the customers products, vendors, and suppliers of Company, including matters which should reasonably be considered trade secrets even if not expressly described herein.

All information obtained in the course of Employee's employment is to be used only for the purpose of conducting the Company's business. Employee agrees to never discuss or disclose such trade secrets, confidential information or property, either directly or indirectly, with or in the presence of persons outside the Company, either during employment, or at any time thereafter, except as required by Employee's supervisor. Employee further agrees that information in any form, including but not limited to documents, tapes, lists, computer printouts, studies, reports, drafts, pictures, charts, maps, drawings, programs, equipment, scrap, blueprints, vendor lists, customer lists, client billing information, all financial reports, payroll information, records, files and other materials pertaining to the Company, its customers and vendors, may not be removed from the facilities without the advance written permission of Employee's supervisor.

Employee acknowledges that all such trade secrets or confidential information, or any copies of summaries thereof, whether prepared by Employee, by the Company, or provided to Employee by the Company, is the exclusive property of the Company. On demand or termination of employment for any reason, Employee agrees to return to the Company all papers, records, electronic copies, and documents in Employee's possession or obtained during the course of *Employee's employment* with the Company and Employee further agrees that he/she will not retain

Exhibit 18, P. 354

any copies, nor permit anyone to retain any copies thereof, except that those who have successfully completed their 90 day introductory period may keep their Franklin Planner.

Employee acknowledges and agrees that the trade secrets described herein have independent economic value in that they are not generally known within the trade they represent many years of research and development and give the Company substantial competitive advantages.

As a condition of employment, Employee agrees that he/she (1) will regard and preserve the confidential information as highly confidential and as the trade secrets of the Company; (2) will not, at any time during or within twelve months after the termination of his/her employment with the Company, reveal, disclose, permit to be disclosed, or make known to any person, firm or corporation, any confidential information which was disclosed to Employee or of which he/she became aware during his/her employment, regardless of whether developed, prepared or created in whole or in part by Employee's efforts, except to the extent that such disclosure is necessary and is authorized in writing by the Company to carry out Employee's duties of employment; (3) will retain all confidential information in trust for the sole benefit of the Company and will not disclose to or use any confidential information in an independent business related to the scope of the Company's business (designer, manufacturer and distributor of toy); (4) will not photocopy or duplicate, and will not permit any person to photocopy or duplicate, any of the confidential information without the Company's written consent and approval; (5) will not make any use of confidential information for his/her own benefit or the benefit of any person or entity other than the Company; (6) will return all confidential information (including but not limited to customer lists, books maintained by Employee, and source lists) to the Company immediately upon request for same. Employee agrees that if he/she has any questions about whether a matter is a trade secret, to seek a determination by the Company before he/she uses any such information.

Employee agrees to maintain the same level of confidentiality regarding co workers, employee relations matters," and Company operations. Employee agrees, by accepting employment or continued employment with the Company, to comply with these rules and to maintain confidentiality of the Company's trade secrets.

Employee understands and acknowledges that the trade secrets and confidential information of the Company are not known to the general public and are the subject of reasonable efforts to maintain its secrecy. They are of a special, unique and extraordinary character, which gives them a particular value, the loss of which cannot be reasonably compensated in damages in an action at law. Employee further understands and agrees that in addition to any other rights or remedies which the Company may have, the Company shall be entitled to immediate injunctive and other equitable relief to prevent a breach of this Confidentiality and Inventions Agreement. If any legal proceeding arises under this Confidentiality and Inventions Agreement, the prevailing party shall be entitled to recover all costs and expenses, including reasonable attorney's fees and costs. California law shall apply to this agreement as to contracts wholly performed within the state.

Employee and the Company agree that this Confidentiality and Inventions Agreement shall not apply to information that Employee was aware of prior to his/her employment with the Company, or that is otherwise publicly known.

Confidential - Attorney's Eyes Only

Exhibit 28 , P. 355

MGA 0875723

Employee further agrees that during his/her employment and for a period of twelve months after termination, Employee will not solicit the purchase of any products or services from any supplier or vendor who supplies products or services to the Company.

INVENTIONS ASSIGNMENT:

1. <u>ASSIGNMENT OF INTEREST:</u> Employee agrees to assign, and does hereby assign, to Company all interest which employee may have in all patentable and/or not-patentable ideas and/or inventions made or conceived by Employee solely or jointly with others during Employee's employment with Company. This assignment shall not apply to any idea or invention developed by Employee entirely on Employee's own time without equipment, supplies, facilities, or trade secret information of Company, unless such invention or idea: (1) relates to the business of company or to Company's actual or anticipated research or development, or (2) results from any work performed by Employee for Company. THIS AGREEMENT DOES NOT APPLY TO ANY INVENTION WHICH QUALIFIES FULLY UNDER THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 2870.

2. <u>DISCLOSURE OF IDEAS OR INVENTIONS:</u> Employee agrees to promptly disclose in writing to Fred Larian all inventions developed solely or jointly with others during Employee's employment with Employer, whether such inventions are patentable, not-patentable or assignable under this Agreement. Employer agrees to maintain such disclosure in confidence.

3. <u>WRITTEN DISCLOSURE OF PRIOR INVENTIONS:</u> Employee agrees to provide a complete list of all patented or not-patented ideas and inventions conceived by Employee or anyone else jointly with Employee, prior to the date Employee has signed this Agreement. The failure of Employee to provide Company with a written disclosure of ideas or inventions shall be deemed to constitute an affirmative acknowledgment by Employee that no such ideas or inventions exist.

If any provision of this Confidentiality and Inventions Agreement is held to be invalid or unenforceable, in whole or in part, the remaining portions of this Agreement shall continue to be valid and will be performed, construed and enforced to the fullest extent permitted by law. The invalid or unenforceable provision shall be deemed amended and limited in accordance with the intent of the parties, as determined from the face of this Agreement, to the extent necessary to permit the maximum enforceability or validation of the provision.

| | | |
|---|---|---|
| 5/24/99 | Kami Gillman | Kami Gillman |
| Date | Employee Signature | Employee Name (printed) |
| 5/24/99 | | Fsrc Lrin |
| Date | Employer Signature | Name (printed) |

Confidential - Attorney's Eyes Only

MGA 0875724



**MICRO GAMES OF AMERICA**

Corporate Office:

16730 Schoenborn Street
North Hills, CA 91343-6122 USA
Tel 818.894.2525
Fax 818 894.8094

Canada Office:

155 E. Beaver Creek, Unit 28, Suite 209
Richmond Hill, Ontario, Canada L4B 2N1
Tel 416.449.6336
Fax 416.449.3696

May 4, 1999

Ms. Kami Gillmour

REDACTED

Dear Kami:

We are pleased to extend to you an offer of employment for the position of Vice President, Marketing/Product Development at MGA Entertainment.

Your compensation package will be as follows:

1. **Base Salary:**      **$120,000** per year, paid biweekly

2. **Bonus:**      Management Bonus Program:  Up to a **maximum of 50%** of your base of $120,000.

   The bonus amount (what we call base here) for each executive on a yearly basis is 50% of the employee's salary.  For 1999, your bonus "base" will be $60,000 and will be tied to the EBIT which is explained in the attachment.

3. **Car Allowance:**   $400.00 per month

4. **Stock Option Plan:**
   5 shares in the Stock Option Plan of the Company, at value as of value as of December 31, 1999.  Vesting is per the Company Option Plan and  a Stock Option Plan Agreement is enclosed for your review. The Option Price will be put in the final agreement by the end of February 2000 once we have our final 1999 numbers.

5. **401(k) Plan:**      Will be eligible for enrollment in 401(k) Plan in January 2000 Company match to your contribution is 25% up to 5%.

**Hong Kong Office:**
Unit 707-8 Multifield Plaza
3-7A Prat Ave.,8ST, **Business Travel:**      The Company will pay for
Kowloon, Hong Kong
**Hong Kong Showroom:**
11 Canton Road, Suite 1015
TST, Kowloon
Tel  852.2926.8008
Fax  852.2312.0101

**The ABC Group**



Confidential - Attorney's Eyes Only

Exhibit _2B_, P. _357_

MGA 0875725

REDACTED

tickets for international travel and coach for domestic travel.

7. **Relocation:**      $1,000 moving expense of household goods.

8. **Health Benefits:**

<u>Health Insurance:</u>  There is no charge for you and a monthly fee for your dependents (see attachment).

<u>Dental Plan:</u>  There is no charge for you and a monthly fee for your dependents (see attachment).

<u>Long-Term Disability Insurance:</u>  You will be eligible for LTD, at no charge to you (see attachment).

<u>Life Insurance:</u>  1 x annual income, premium paid by Company.

<u>Accidental Death & Dismemberment:</u>  Up to 1x annual income, premium paid by Company.

9. **Vacation:**      Two weeks paid vacation per year

10. **Employee Handbook:**

MGA requires all employees to sign an Employee Handbook, which includes a Confidentiality Agreement, an "At Will Clause/Statement", and a Mutual Agreement to Arbitrate and Mediate.  These will be presented to you for your signature upon the commencement of your employment.

11. **Severance Pay:**

The Company agrees to pay severance of sixty days salary (paid out in monthly increments) if employment is terminated without cause.   If employment is terminated for cause, no severance will be paid.  The term "cause" shall mean:

- The criminal indictment of a felony;
- A misdemeanor involving fraud;
- Embezzlement or dishonest conduct;
- Substantial neglect of duties which cause material damage to the business or reputation of the Company;
- Repetitive insubordination or refusal to reply to reasonable written work requests.

Confidential - Attorney's Eyes Only

Exhibit 28 , P. 358

This agreement is binding upon Kami Gillmour and ABC International Traders, Inc. and their respective heirs, successors, assignees, fiduciaries or other legal representatives.

I trust this offer letter addresses all open issues and look forward to an ongoing, productive relationship.

Sincerely,

Isaac Larian
President

mct

Confidential - Attorney's Eyes Only

Exhibit _28_, P. _359_

MGA 0875727

May 4, 1999
Page four
Acceptance

I accept the above offer.

My start date will be _____3/24/99_____.


_Kami Gillmour_
Kami Gillmour

_____5/24/99_____
Date

Confidential - Attorney's Eyes Only

Exhibit 28, P. 360

MGA 0875728



**MICRO GAMES OF AMERICA**

Canada Office:

155 E. Beaver Creek, Unit 28, Suite 209
Richmond Hill, Ontario, Canada L4B 2N1
Tel 416.449.6336
Fax 416.449.3696

September 27, 1999

Mr. Stephen S.C. Lee

REDACTED

Dear Stephen:

We are pleased to offer you this revised offer letter for the position of Chief Operating Officer, Managing Director, Hong Kong for MGA. Your compensation package will be as follows:

1. **Base Salary:** $130,000 x 13 = $1,690,000 HK dollars per year.
   The extra month salary, or on a pro-rata basis for less than one year service, will be paid before Christmas each year. Such salary shall be earned and payable monthly.

2. **2000 Executive Bonus Plan:** On sliding scale based on EBIT goals not to exceed 50% of base salary; EBIT goals to be determined no later than 12/31/99.

3. **Stock Option Plan:** 2% Stock Option Plan in the Company. A Stock Option Plan Agreement is enclosed for your review.
   You will receive 52.284 shares at $10,000 option price per share. This is approximately 85% of current value.

4. **Business Travel:** The Company will pay for business class tickets for travel to the U.S. and coach for all other travel.

5. **Vacation:** Three weeks paid vacation per year plus Government gazette public holidays.

**Hong Kong Office:**
Unit 707-8 Multifield Plaza
3-7A Prat Ave., TST,
Kowloon, Hong Kong
**Hong Kong Showroom:**
11 Canton Road, Suite 1015
TST, Kowloon
Tel 852.2926.8008
Fax 852.2312.0101

**The ABC Group**



CONFIDENTIAL - ATTORNEYS' EYES ONLY

Exhibit 28, P. 361

MGA 3814785

REDACTED

**6. Business Expenses:** All approved business expenses will be reimbursed per Company policy. Exceptions must be approved in advance.

**7. Car Park Allowance:** Car park rental shall be paid by the Company upon production of monthly rental receipts by the Employee of not more than $3,000.00 HK dollars per month; Or, a car parking space as agreed between the parties to be provided by the Employee at the Company's expense not to exceed $3,000.00HK dollars per month.

**8. Employment Benefits:** Employee shall be entitled to existing Company health insurance, per the attachment, in accordance with any policies, procedures, or benefit plans adopted by the Company from time to time during the existence of this Agreement. Employee's rights or those of Employee's dependents under any such benefits policies or plans shall be governed solely by the terms of such policies or plans, and may be terminated, modified, or limited at the Company's sole discretion.

**9. Termination:** The Company agrees not to terminate Employee's employment except for cause. If Employee is terminated for cause he shall receive no severance payment. If Employee is terminated without cause, the Company agrees to pay Employee severance pay of four months salary paid in monthly increments and subject to all applicable deductions.

The term "cause" shall include, but not be limited to, the following:

- Employee's criminal indictment for a felony;

- Employee's criminal indictment for a misdemeanor involving fraud or any conduct endangering the business interests of the Company;

- Employee's embezzlement or dishonest conduct;

- Employee's substantial neglect of duties which cause material damage to the business or reputation of the Company, as determined in the sole discretion of the Company;

- Employee's repetitive insubordination or refusal to respond to reasonable written or other work requests as determined in the sole discretion of the Company;

- Physical or mental incapacity of Employee which prevents him from performing the essential functions of his job for a period exceeding any statutory or other applicable rights regarding physical or mental disability;

- Employee's death.

Employee may terminate this Agreement by giving four month's notice in writing to the President of the Company.

2

10. **Confidential, Proprietary and Trade Secret Information:** During the course of employment, Employee will come into possession of or acquire knowledge of confidential, proprietary and trade secret information of the Company. Employee hereby covenants and agrees that he will not either during the term of employment or at any time thereafter, disclose any such confidential, proprietary or trade secret information to any person, firm, corporation, association, partnership or other entity (other than those in the Company's organization qualified and authorized to receive such information) for any purpose or reason whatsoever. Such confidential and proprietary information shall be deemed to include, but not be limited to, manuals, discs, tapes, and summaries or originals of any papers, documents, plans, specifications, customer lists, contracts, licenses or licensing agreements, data bases, or portions thereof, related to the services, products or operations of the Company or its vendor and supplier lists, price lists, service lists, costs and other financial data or information, marketing information or plans, insurance information, and information regarding processes, personnel, market share, records, specifications and devices, in whatever manner maintained by Employee or the Company. Employee specifically agrees that he will not make use of any such confidential or proprietary information for Employee's own purpose, or for the benefit of any person, firm, corporation or other entity except the Company. Employee will abide by the Company's policies and procedures, as established from time to time for the protection of its trade secrets and confidential information. Employee warrants that he does not know any of the Company's confidential, proprietary or trade secret information, other than the information he has learned from the Company.

11. **Non-competition, Non-solicitation, Anti-raiding:** Employee agrees not to compete with the Company in the toy market including Mattel, Hasbro, Playmates, Bandai, Odd Zone, Manley, Imperial, Funrise, Wild Planet, JAKKS, and Applause, in the same or similar capacity or job classification for a period of one year after termination of employment. As of employee's hire date, employee agrees to either liquidate or sell Supreme Toys LTD and not to function in any capacity with any other toy company. Any activities relating to liquidation can not interfere with employee's ability to perform job functions at MGA HK. In addition, for a period of one year immediately following the termination of his employment, Employee agrees that he will not, either directly or indirectly, attempt to recruit, solicit or take away any of the employees of the Company.

12. **Law And Jurisdiction:** This Agreement shall be governed and construed in all respects in accordance with the Laws of Hong Kong Special Administrative Region. We hereby irrevocably submit to the non-exclusive jurisdiction of the Hong Kong Special Administrative Region Courts.

13. **Hire Date:** The employment of the Employee shall commence on the 1st of December, 1999 and shall continue until terminated in accordance with the provisions of this agreement.

3

CONFIDENTIAL - ATTORNEYS' EYES ONLY                    MGA 3814787
Exhibit 28, P. 363

This agreement is binding upon Stephen S.C. Lee and MGA Entertainment (Hong Kong) Ltd. and their respective heirs, successors, assignees, fiduciaries or other legal representatives.

Stephen, you have a lot to offer, and we have a lot of challenges and excitement on our plate. I look forward to your joining our organization on December 1, 1999 and trust it will be a long and productive relationship.

Sincerely,

Isaac Larian
President

mct

4

Page four
Acceptance

I accept the above offer.

_____          16th Oct. 1999.
Stephen S.C. Lee                          Date

5



Corporate Office:
16730 Schoenborn Street
North Hills, CA 91343-6122 USA
Tel  818.894.2525
Fax  818.894.8094

November 1, 2000

Ms. Wendy LaVerne Reed

**REDACTED**

Dear Wendy:

We are pleased to extend to you an offer of employment for the position of **Soft Goods Specialist** at MGA Entertainment.

Your compensation package will be as follows:

1. **Base Salary:**       $38,500 per year, paid biweekly

2. **Annual Review:**     You will be reviewed in January 2002.

3. **401(k) Plan:**       Will be eligible for enrollment in 401(k) Plan in January 2001.  Company match to your contribution is 25% up to 5%.

4. **Business Travel:**   The Company will pay for coach class tickets for both international and domestic travel.

5. **Health Benefits:**   Health Insurance:  There is no charge for you under HMO and a monthly fee for you and your dependents under the indemnity plan (see attachment).

    Dental Plan:  There is no charge for you under DMO and a monthly fee for you and your dependents under the indemnity plan (see attachment).

    Life Insurance:  1 x annual income, premium paid by Company.

    Accidental Death & Dismemberment:  Up to 1x annual income, premium paid by Company.

6. **Vacation:**          Two weeks paid vacation per year

**MGA Entertainment (HK) Ltd.**
Room 1001, 10/F., Empire Center
68 Mody Road,
Tsimshatsui East,
Kowloon, Hong Kong.
Tel  852.292.68008
Fax  852.231.20101

Confidential - Attorney's Eyes Only

Exhibit 28, P. 366

MGA 0875570

**REDACTED**



Wendy LaVern Reed
November 1, 2000
Page 2

| | |
|---|---|
| **7. Employee Handbook:** | MGA requires all employees to sign an Employee Handbook, which includes a Confidentiality Agreement, an "At Will Clause/Statement", and a Mutual Agreement to Arbitrate and Mediate. These will be presented to you for your signature upon the commencement of your employment. |

This agreement is binding upon Wendy LaVerne Reed and ABC International Traders, Inc. and their respective heirs, successors, assignees, fiduciaries or other legal representatives.

I trust this offer letter addresses all open issues and look forward to an ongoing, productive relationship.

Sincerely,

Deirdre K. Brown
Assistant to Isaac Larian, CEO

Enclosures

**Offer Approved by:**

_____
**Isaac Larian, CEO**



Confidential - Attorney's Eyes Only

Exhibit _2B_, P. _367_

MGA 0875571



Wendy LaVerne Reed
November 1, 2000
Page 3
Acceptance


I accept the above offer.

My start date will be ___November 10, 2000___.



*Wendy LaVerne Reed*                    ___11-10-00___
Wendy LaVerne Reed                      Date



Confidential - Attorney's Eyes Only
Exhibit 28, P. 368

MGA 0875572

## PROPRIETARY INFORMATION AGREEMENT

This Proprietary Information Agreement ("Agreement") is entered into by and between _Wendy L. Reed_ ("Employee"), on the one hand, and MGA Entertainment (together with its affiliates, and their successors and assigns, the "Company"), on the other hand.

**WHEREAS,** the Company has offered to employ Employee on certain favorable terms and conditions, which offer is expressly conditioned upon, among other things, Employee's agreement to adhere to, among other things, the various covenants and agreements contained in this Agreement;

**WHEREAS,** Employee understands the terms and conditions of the Company's employment offer, including its condition that Employee agree to the various covenants and agreements set forth below. In consideration of the Company's employment of Employee and providing Employee with training, compensation and benefits, and business growth and development opportunities, and allowing Employee to have access to the Company's Proprietary Information (defined below), Employee has decided to enter into, and agrees to be bound by, this Agreement.

**NOW, THEREFORE,** in consideration of the mutual representations, warranties, covenants and agreements set forth below, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Employee and the Company agree as follows:

## AGREEMENT

1.    **CONFIDENTIALITY.**  Employee understands that, by virtue of Employee's employment with the Company, Employee will acquire and be exposed to Proprietary Information of the Company. "Proprietary Information" includes all ideas, information and materials, tangible or intangible, not generally known to the public, relating in any manner to the business of the Company (as defined above), its products and services (including all trade secrets), its personnel (including its officers, directors, employees, and contractors), its clients, vendors and suppliers and all others with whom it does business that Employee learns or acquires during Employee's employment with the Company.  Proprietary Information includes, but is not limited to, manuals, documents, computer programs and software used by the Company, users manuals, compilations of technical, financial, legal or other data, salary information, client or prospective client lists, names of suppliers or vendors, client, supplier or vendor contact information, business referral sources, specifications, designs, devices, inventions, processes, business or marketing plans or strategies, pricing information, media rate information, rate structures, information regarding the identity of the Company's directors, advertisers, or media experts, identity data, prototypes, forecasts, financial information, works in progress, and other technical or business information.  Proprietary Information does not include basic information that is generally known and used within the Toy industry.

Employee agrees to hold in trust and confidence all Proprietary Information during and after the period of Employee's employment with the Company.

LOS_ANGELES:102871.1 015567.1001

"Restricted Customer/Client/Vendor"), to terminate his, her or its relationship with the Company for any purpose, including the purpose of associating with or becoming a customer, client or vendor, whether or not exclusive, of Employee or any entity of which Employee is or becomes an officer, director, member, agent, employee or consultant, or otherwise solicit, induce, or attempt to solicit or induce, any Restricted Customer/Client/Vendor to terminate his, her or its relationship with the Company for any other purpose or no purpose.

4.    NON-SOLICITATION OF PERSONNEL.  During Employee's employment with the Company and for one (1) year thereafter, Employee shall not, directly or indirectly, solicit, induce, or attempt to solicit or induce, any person known to Employee to be an employee of the Company who, directly or indirectly, engages in the Business on behalf of the Company (each such person, a "Company Person"), to terminate his or her employment or other relationship with the Company for the purpose of associating with (a) any entity that engages in the Business of which Employee is or becomes an officer, director, member, partner, principal, agent, employee or consultant, or (b) any competitor of the Company in the Business, or otherwise encourage any Company Person to terminate his or her employment or other relationship with the Company for any other purpose or no purpose.

5.    COMPETING ACTIVITIES.  During Employee's employment with the Company, Employee shall not engage in any activity that is or may be competitive with the Company in the Business or otherwise in any state in the United States, where the Company engages in the Business, whether or not for compensation including, but not limited to, providing services or selling products similar to those provided or sold by the Company, offering, or soliciting or accepting an offer, to provide such services or to sell such products, or taking any action to form, or become employed by, a company or business to provide such services or to sell such products.

6.    RETURN OF DOCUMENTS AND MATERIALS.  Immediately upon the termination of Employee's employment or at any time prior thereto if requested by the Company, Employee shall return all records, documents, equipment, proposals, notes, lists, files, and any and all other materials, including but not limited to Proprietary Information in a Tangible Form, that refers, relates or otherwise pertains to the Company and its business, including its products and services, personnel, customers or clients (actual or potential), investors (actual or potential), and/or vendors and suppliers (actual or potential), or any of them, and any and all business dealings with said persons and entities (the "Returned Property and Equipment") to the Company at its offices in Los Angeles, California.  Employee is not authorized to retain any copies or duplicates of the Returned Property and Equipment that Employee obtained or received as a result of Employee's employment or other relationships with the Company.

Confidential - Attorney's Eyes Only                                      MGA 0875574

Exhibit 28, P. 370

10. <u>CONFIRMATION OF AT-WILL EMPLO</u>y<u>MENT</u>.  Employee acknowledges and agrees that:  (a) Employee's employment with the Company is and shall be at all times on an at-will basis, and the Company or Employee may terminate Employee's employment at any time, for any reason, with or without cause or advance notice; (b) nothing in this Agreement or in the Company's employee manuals, handbooks or other written materials create or are intended to create an express or implied contract for employment; (c) nothing in the Agreement obligates the Company to hire, retain or promote Employee; (d) all definitions, terms and conditions of this Agreement apply to Employee only for the purposes of this Agreement, and for no other purpose, and do not alter or otherwise effect the at-will status of Employee's employment with the Company; and (e) no representative of the Company has any authority to enter into any express or implied, oral or written agreements that are contrary to the terms and conditions of this Agreement or to enter into any express or implied contracts for employment (other than for at-will employment) except for the President of the Company and any agreement between Employee and the President must be in writing and signed by Employee and the President.

11. <u>INFORMATION ON COMPANY PREMISES</u>.  Employee acknowledges that, by virtue or Employee's employment with the Company, Employee will have use of the premises and equipment of the Company.  Employee acknowledges and agrees that the Company has the right to review and inspect any such premises and equipment, even if they contain Employee's personal information or materials.

12. <u>GOVERNING LAW</u>.  This Agreement shall be construed, interpreted, and governed in accordance with either (a) the laws of the State of California, regardless of applicable conflicts of law principles, or (b) in the event of a breach of any of the covenants contained in Section 1 through 8, the law of the State where such breach actually occurs, depending on whichever choice of law shall ensure to the maximum extent that the restrictive covenants shall be enforced in accordance with the intent of the parties.

13. <u>ENTIRE AGREEMENT/MODIFICATION/NO WAIVER</u>.  This Agreement (and Employee's and the Company's agreements regarding arbitration and Employee's at will employment status that are set forth in the Company's offer letter, which are incorporated by this reference herein) (a) represent the entire agreement of the parties with respect to the subject matter hereof, (b) shall supersede any and all previous contracts, arrangements or understandings between the parties hereto with respect to the subject matter hereof, and (c) may not be modified or amended except by an instrument in writing signed by each of the parties hereto.  No waiver, delay, omission or forbearance in exercising any right, option, duty or power under this Agreement (or Employee's and the Company's agreements regarding arbitration and Employee's at will employment status that are set forth in the Company's offer letter) shall affect or impair any party's rights with respect to any past or present default or breach of any of provisions of this Agreement or Employee's and the Company's agreements regarding arbitration and Employee's at will employment status that are set forth in the Company's offer letter.

Confidential - Attorney's Eyes Only

Exhibit 28, P. 371

MGA 0875575

## MUTUAL AGREEMENT TO MEDIATE AND/OR ARBITRATE

We recognize that differences may arise between us. Through this mutual agreement to mediate and/or arbitrate("Agreement"), _Wendy P. Reed_ ("Employee"), and ABC Int'l Traders Inc. ("Company") expect to gain the benefits of a speedy, economical, impartial dispute resolution procedure. This Agreement provides as follows:

This Agreement shall apply to all disputes or controversies, whether or not arising out of Employee's employment (or termination of that employment), that the Company may have against Employee, or that employee may have against the Company or against its officers, directors, employees, or agents("Claims"). The Claims include, but are not limited to, controversies relating to: compensation or benefits, breach of any contract, torts, discrimination under state, federal or local law, and violation of any federal, state or other governmental law, statute, regulation or ordinance. However, this Agreement shall not apply to any claim: (a) by the employee for workers' compensation or unemployment benefits; or (b) by the Company for injunctive and/or other equitable relief; including, but not limited to, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information. With respect to matters referred to in sub-paragraph (b) above, the company may seek and obtain injunctive relief in court, and then proceed with arbitration under the Agreement.

EACH PARTY WAIVES THE RIGHT TO A JURY TRIAL OR COURT TRIAL. THE SOLE AND EXCLUSIVE METHOD TO RESOLVE ANY CLAIM IS MEDIATION AND/OR ARBITRATION AS PROVIDED IN THIS AGREEMENT. The parties each waive their right to commence an action in any court to resolve a Claim. Neither party shall initiate or prosecute any lawsuit in any way related to any claim covered by this Agreement.

Any Claim by employee or the company must be processed in the manner set forth below. Otherwise, the Claim shall be void and deemed waived even if there is a federal or state statute of limitations which would allow more time to pursue the Claim.

An Employee Claim must initially be raised verbally by Employee to the person(s) involved. If the issue cannot be resolved, the matter must be presented to the Employee's immediate supervisor within one year after you initially knew or should have known of the facts that gave rise to the Claim. The supervisor will answer the Claim within fifteen (15) days from the date the Claim was presented. If the supervisor fails to respond, then it will be considered a denial of your Claim.

If Employee is not satisfied with the supervisor's answer, or the nature of the Claim is such that Employee does not wish to present it to his supervisor, the Employee may obtain the assistance of the President, who will discuss the Claim with Employee and assist, if Employee desires assistance, in presenting the Claim in written form to the Company. Employee must present the Claim in writing to the President within fifteen (15) working days after Employee receives the supervisor's answer. However, if Employee decides not to present the Claim to his or her supervisor, Employee must present the Claim to the President, in writing, within one year after Employee initially knew or should have known of the facts that gave rise to the Claim. If Employee does not present the Claim in writing to the President within 15 days or one year, whichever is applicable, then Employee will be deemed to have accepted the Company's last stated position on the Claim and waived the right to further contest the Claim.

The President will consider Employee's written presentation, and any other information that Employee deems relevant. The President will render a written decision within fifteen (15) working days. This decision will be mailed to Employee's address, as it appears in the Company's records.

Confidential - Attorney's Eyes Only

Exhibit 28, P. 372

MGA 0875576

decide any matter that was not processed in accordance with this Agreement. The Arbitrator shall have exclusive authority to resolve any Claim, including, but not limited to, a dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, or any contention that all or any part of this Agreement is void or voidable. The Arbitrator will have the authority to award any form or remedy or damages that would be available in a court.

Employee and the Company each agree to pay one half of the reasonable and necessary fees of the AAA and the mediator and/or Arbitrator. The parties will pay their own attorneys' fees and expenses associated with the mediation and/or arbitration. Either party, in its sole discretion, may, in writing, waive, in whole or in part, the other's failure to follow any time limit or other requirement set forth in the Agreement.

To the extent permitted by law, Employee agrees not to initiate or prosecute against the Company any administrative action (including an administrative charge of discrimination to the extent permitted by law) in any way related to any Claim covered by this Agreement.

The mediation and/or arbitration will be conducted in private, and will not be open to the public or the media. The testimony and other evidence presented, and the results of the mediation and/or arbitration, unless otherwise agreed to by both parties, is confidential and may not be disclosed, made public or reported to any person or entity, including, but not limited to, any legal or news agency, publisher or service, except pursuant to a court order, provided that the Company or Employee gives sufficient prior written notice of any judicial proceeding at which a court order is being sought, to enable the other to seek a protective order before disclosure occurs.

The Arbitrator shall render a written decision and the award (the "Award" ) shall set forth the facts and reasons that support the Award. The Award shall be final and binding on both you and the Company. This Agreement shall survive the termination of your employment, and can only be revoked or modified by a writing signed by the parties which specifically states an intent to revoke or modify the Agreement. This is the complete agreement of the parties on the subject of dispute resolution, mediation or arbitration of disputes.

<u>NOTICE: BY SIGNING THE AGREEMENT, YOU ARE AGREEING THAT ALL CLAIMS WILL BE DECIDED BY NEUTRAL MEDIATION AND/OR ARBITRATION, AND YOU ARE GIVING UP YOUR RIGHT TO A JURY TRIAL OR COURT TRIAL.</u>

| 11-6-00 | _Wendy L. Reed_ | _Wendy L. Reed_ |
|---|---|---|
| Date | Employee Signature | Employee Name (printed) |

| | | |
|---|---|---|
| Date | Employer Signature | Name (printed) |

Confidential - Attorney's Eyes Only

Exhibit 28, P. 373

MGA 0875577

## CONFIDENTIALITY AND INVENTIONS ASSIGNMENT AGREEMENT

This Confidentiality and Inventions Agreement is executed by and between ABC Int'l Traders, Inc. ("Company") and _Wendy L Reed_ ("Employee").

During the course of his/her employment at the Company, Employee will have access to, will acquire, and will become acquainted with trade secrets, confidential information and property related to the Company and its customers' and vendors' businesses. The Company's trade secrets include, but are not limited to, such information as customer names, addresses, phone numbers, names, specific characteristics of suppliers and customers and their respective employees with whom the Company has dealings (whether or not such information is contained on a Rolodex, computer printout, customer list, or is orally communicated to any Company employee in the course of their duties) and the history of purchases, along with terms and conditions of credit offered to each customer; names, addresses, telephone numbers and specific characteristics of prospective customers and contacts; information regarding particular customer product peculiarities, manners of doing business, needs and requirements; product specifications and performance needs for each customer; and the prices charged to each customer; customer information reports, pricing information (such as price lists, quotation guides; previous or outstanding quotations, equipment prices or billing information), mailing labels, mailing plans and programs, sales report forms, pending projects or proposals, techniques used in approaches or results of any market research, advertising sources, employee salaries, contracts and wage information, names and addresses of the vendors, manufacturers, and other suppliers of Company products, the products they supply, the applicable prices and discounts, and the applicable product specifications; new products or inventions developed or under development by the Company; formulas, patterns, compilations, programs, devises, methods, techniques, processes, pictures, contracts, files, methods or production (including quality control and packaging), proposals, business plans and projections, budgets, financial information, software, hardware, any patent application or the contents thereof; and all other material relating in any manner whatsoever to the customers products, vendors, and suppliers of Company, including matters which should reasonably be considered trade secrets even if not expressly described herein.

All information obtained in the course of Employee's employment is to be used only for the purpose of conducting the Company's business. Employee agrees to never discuss or disclose such trade secrets, confidential information or property, either directly or indirectly, with or in the presence of persons outside the Company, either during employment, or at any time thereafter, except as required by Employee's supervisor. Employee further agrees that information in any form, including but not limited to documents, tapes, lists, computer printouts, studies, reports, drafts, pictures, charts, maps, drawings, programs, equipment, scrap, blueprints, vendor lists, customer lists, client billing information, all financial reports, payroll information, records, files and other materials pertaining to the Company, its customers and vendors, may not be removed from the facilities without the advance written permission of Employee's supervisor.

Employee acknowledges that all such trade secrets or confidential information, or any copies of summaries thereof, whether prepared by Employee, by the Company, or provided to Employee by the Company, is the exclusive property of the Company. On demand or termination of employment for any reason, Employee agrees to return to the Company all papers, records, electronic copies, and documents in Employee's possession or obtained during the course of Employee's employment with the Company and Employee further agrees that he/she will not retain any copies, nor permit anyone to retain any copies thereof, except that those who have successfully completed their 90 day introductory

1

Confidential - Attorney's Eyes Only

Exhibit _28_, P. _374_

MGA 0875578

INVENTIONS ASSIGNMENT:

1. <u>ASSIGNMENT OF INTEREST:</u> Employee agrees to assign, and does hereby assign, to Company all interest which employee may have in all patentable and/or not-patentable ideas and/or inventions made or conceived by Employee solely or jointly with others during Employee's employment with Company. This assignment shall not apply to any idea or invention developed by Employee entirely on Employee's own time without equipment, supplies, facilities, or trade secret information of Company, unless such invention or idea: (1) relates to the business of company or to Company's actual or anticipated research or development, or (2) results from any work performed by Employee for Company. THIS AGREEMENT DOES NOT APPLY TO ANY INVENTION WHICH QUALIFIES FULLY UNDER THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 2870.

2. <u>DISCLOSURE OF IDEAS OR INVENTIONS:</u> Employee agrees to promptly disclose in writing to Fred Larian all inventions developed solely or jointly with others during Employee's employment with Employer, whether such inventions are patentable, not-patentable or assignable under this Agreement. Employer agrees to maintain such disclosure in confidence.

3. <u>WRITTEN DISCLOSURE OF PRIOR INVENTIONS:</u> Employee agrees to provide a complete list of all patented or not-patented ideas and inventions conceived by Employee or anyone else jointly with Employee, prior to the date Employee has signed this Agreement. The failure of Employee to provide Company with a written disclosure of ideas or inventions shall be deemed to constitute an affirmative acknowledgment by Employee that no such ideas or inventions exist.

If any provision of this Confidentiality and Inventions Agreement is held to be invalid or unenforceable, in whole or in part, the remaining portions of this Agreement shall continue to be valid and will be performed, construed and enforced to the fullest extent permitted by law. The invalid or unenforceable provision shall be deemed amended and limited in accordance with the intent of the parties, as determined from the face of this Agreement, to the extent necessary to permit the maximum enforceability or validation of the provision.

| | | |
|---|---|---|
| 11-6-00 | _Wendy L Reed_ | _Wendy L. Reed_ |
| Date | Employee Signature | Employee Name (Printed) |

| | | |
|---|---|---|
| | | |
| Date | Employer Signature | Employer Name (Printed) |

3

Confidential - Attorney's Eyes Only

MGA 0875579

## MUTUAL AGREEMENT TO MEDIATE AND/ ARBITRATE

We recognize that differences may arise between us. Through this mutual agreement to mediate and/or arbitrate("Agreement"), ____Lon Ross____ ("Employee"), and ABC Int'l Traders Inc. ("Company") expect to gain the benefits of a speedy, economical, impartial dispute resolution procedure. This Agreement provides as follows:

This Agreement shall apply to all disputes or controversies, whether or not arising out of Employee's employment (or termination of that employment), that the Company may have against Employee, or that employee may have against the Company or against its officers, directors, employees, or agents("Claims"). The Claims include, but are not limited to, controversies relating to: compensation or benefits, breach of any contract, torts, discrimination under state, federal or local law, and violation of any federal, state or other governmental law, statute, regulation or ordinance. However, this Agreement shall not apply to any claim: (a) by the employee for workers' compensation or unemployment benefits; or (b) by the Company for injunctive and/or other equitable relief; including, but not limited to, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information. With respect to matters referred to in sub-paragraph (b) above, the company may seek and obtain injunctive relief in court, and then proceed with arbitration under the Agreement.

**EACH PARTY WAIVES THE RIGHT TO A JURY TRIAL OR COURT TRIAL. THE SOLE AND EXCLUSIVE METHOD TO RESOLVE ANY CLAIM IS MEDIATION AND/OR ARBITRATION AS PROVIDED IN THIS AGREEMENT.** The parties each waive their right to commence an action in any court to resolve a Claim. Neither party shall initiate or prosecute any lawsuit in any way related to any claim covered by this Agreement.

Any Claim by employee or the company must be processed in the manner set forth below. Otherwise, the Claim shall be void and deemed waived even if there is a federal or state statute of limitations which would allow more time to pursue the Claim.

An Employee Claim must initially be raised verbally by Employee to the person(s) involved. If the issue cannot be resolved, the matter must be presented to the Employee's immediate supervisor within one year after you initially knew or should have known of the facts that gave rise to the Claim. The supervisor will answer the Claim within fifteen (15) days from the date the Claim was presented. If the supervisor fails to respond, then it will be considered a denial of your Claim.

If Employee is not satisfied with the supervisor's answer, or the nature of the Claim is such that Employee does not wish to present it to his supervisor, the Employee may obtain the assistance of the President, who will discuss the Claim with Employee and assist, if Employee desires assistance, in presenting the Claim in written form to the Company. Employee must present the Claim in writing to the President within fifteen (15) working days after Employee receives the supervisor's answer. However, if Employee decides not to present the Claim to his or her supervisor, Employee must present the Claim to the President, in writing, within one year after Employee initially knew or should have known of the facts that gave rise to the Claim. If Employee does not present the Claim in writing to the President within 15 days or one year, whichever is applicable, then Employee will be deemed to have accepted the Company's last stated position on the Claim and waived the right to further contest the Claim.

The President will consider Employee's written presentation, and any other information that Employee deems relevant. The President will render a written decision within fifteen (15) working days. This decision will be mailed to Employee's address, as it appears in the Company's records.

Confidential - Attorney's Eyes Only

Exhibit 28, P. 376

*If the Company fails to res     nd, it will be deemed a denial of yo     Claim.*

If Employee is not satisfied with the President's decision, Employee may request a voluntary, non-binding mediation. If mediation is selected, Employee and the Company agree to utilize mediation in good faith with the goal of resolving the Claim. If the parties cannot mutually agree on the mediator, they will utilize the American Arbitration Association ("AAA") mediation dispute resolution procedures. The mediation shall take place in or near the city in which Employee resided when last employed by the Company. If mediation does not result in a settlement of the Claim, either party may serve written notice to the other party of its intention to proceed to arbitrate within fifteen (15) days from the termination of the mediation.

If Employee does not desire to mediate the Claim, then he or she may present the Claim for resolution by final and binding arbitration. Employee must serve written notice on the Company of his or her intention to arbitrate within ninety (90) days from the mailing of the President's final decision.

If the Company desires to initiate arbitration to resolve a Claim against Employee, it must serve written notice on Employee within one year after it initially knew or should have know of the facts that gave rise to its Claim.

The written notice of desire to arbitrate shall describe the factual basis of all Claims asserted, and shall be served on the other party by certified mail, return receipt requested. Written notice to Employee will be mailed to his or her address as it appears in the Company's records. Written notice to the Company, or its officers, directors, employees or agents, shall be sent to the President at the Company's principal place of business. If written notice of desire to arbitrate is not served within the applicable time period, the party who failed to timely serve notice will be deemed to have waived the right to further contest the Claim and will be deemed to have accepted the other party's last stated position on the Claim.

The arbitration shall be conducted in accordance with the then-current Model Employment Arbitration Procedures of the AAA before a single arbitrator. The Arbitrator shall be selected in the following manner. The AAA shall give each party a list of 11 arbitrators drawn from its panel of labor of employment arbitrators. Each side may strike all names on the list it deems unacceptable. If only one common name remains on the list of all parties, that individual shall be the Arbitrator. If more than one common name remains on the list of all parties, the parties shall strike names alternately, in a telephone conference no more than five days after the parties receive notice that more than one acceptable arbitrator remains, until only one remains. If no common name remains on the list of all parties, the AAA shall furnish one additional list, and the above procedures will be utilized. If no arbitrator is designated from the second list, the procedures of the AAA rules will be used to select the Arbitrator.

Either party may be represented by an attorney or other representative selected by the party. The parties waive the provision of California Code of Civil Procedure Section 1283.05. Each party shall have the right to take the deposition of one individual from, any expert witness designated by, and the other party. Each party also shall have the right to make requests for production of documents to any party. Additional discovery may be had only where the arbitrator so orders, upon a showing of substantial need. All issues related to discovery will be resolved by the Arbitrator.

The Arbitrator will have no authority to: (i) adopt new Company policies or procedures, (ii) modify the Agreement or existing Company policies, procedures, wages or benefits, or (iii) hear or

decide any matter that was not processed in accordance with the Agreement. The Arbitrator shall have exclusive authority to resolve any Claim, including, but not limited to, a dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, or any contention that all or any part of this Agreement is void or voidable. The Arbitrator will have the authority to award any form or remedy or damages that would be available in a court.

Employee and the Company each agree to pay one half of the reasonable and necessary fees of the AAA and the mediator and/or Arbitrator. The parties will pay their own attorneys' fees and expenses associated with the mediation and/or arbitration. Either party, in its sole discretion, may, in writing, waive, in whole or in part, the other's failure to follow any time limit or other requirement set forth in the Agreement.

To the extent permitted by law, Employee agrees not to initiate or prosecute against the Company any administrative action (including an administrative charge of discrimination to the extent permitted by law) in any way related to any Claim covered by this Agreement.

The mediation and/or arbitration will be conducted in private, and will not be open to the public or the media. The testimony and other evidence presented, and the results of the mediation and/or arbitration, unless otherwise agreed to by both parties, is confidential and may not be disclosed, made public or reported to any person or entity, including, but not limited to, any legal or news agency, publisher or service, except pursuant to a court order, provided that the Company or Employee gives sufficient prior written notice of any judicial proceeding at which a court order is being sought, to enable the other to seek a protective order before disclosure occurs.

The Arbitrator shall render a written decision and the award (the "Award" ) shall set forth the facts and reasons that support the Award. The Award shall be final and binding on both you and the Company. This Agreement shall survive the termination of your employment, and can only be revoked or modified by a writing signed by the parties which specifically states an intent to revoke or modify the Agreement. This is the complete agreement of the parties on the subject of dispute resolution, mediation or arbitration of disputes.

**NOTICE: BY SIGNING THE AGREEMENT, YOU ARE AGREEING THAT ALL CLAIMS WILL BE DECIDED BY NEUTRAL MEDIATION AND/OR ARBITRATION, AND YOU ARE GIVING UP YOUR RIGHT TO A JURY TRIAL OR COURT TRIAL.**

| 11/13/2000 | | Lori Ross |
| --- | --- | --- |
| Date | Employee/Signature | Employee Name (printed) |

| | | |
| --- | --- | --- |
| Date | Employer Signature | Name (printed) |

Confidential - Attorney's Eyes Only

Exhibit 28, P. 378

MGA 0875550

## CONFIDENTIALITY AND INVENTIONS ASSIGNMENT AGREEMENT

This Confidentiality and Inventions Agreement is executed by and between ABC Int'l Traders, Inc. ("Company") and _____ Lon Ross _____ ("Employee").

During the course of his/her employment at the Company, Employee will have access to, will acquire, and will become acquainted with trade secrets, confidential information and property related to the Company and its customers' and vendors' businesses. The Company's trade secrets include, but are not limited to, such information as customer names, addresses, phone numbers, names, specific characteristics of suppliers and customers and their respective employees with whom the Company has dealings (whether or not such information is contained on a Rolodex, computer printout, customer list, or is orally communicated to any Company employee in the course of their duties) and the history of purchases, along with terms and conditions of credit offered to each customer; names, addresses, telephone numbers and specific characteristics of prospective customers and contacts; information regarding particular customer product peculiarities, manners of doing business, needs and requirements; product specifications and performance needs for each customer; and the prices charged to each customer; customer information reports, pricing information (such as price lists, quotation guides, previous or outstanding quotations, equipment prices or billing information), mailing labels, mailing plans and programs, sales report forms, pending projects or proposals, techniques used in approaches or results of any market research, advertising sources, employee salaries, contracts and wage information, names and addresses of the vendors, manufacturers, and other suppliers of Company products, the products they supply, the applicable prices and discounts, and the applicable product specifications; new products or inventions developed or under development by the Company; formulas, patterns, compilations, programs, devises, methods, techniques, processes, pictures, contracts, files, methods or production (including quality control and packaging), proposals, business plans and projections, budgets, financial information, software, hardware, any patent application or the contents thereof; and all other material relating in any manner whatsoever to the customers products, vendors, and suppliers of Company, including matters which should reasonably be considered trade secrets even if not expressly described herein.

All information obtained in the course of Employee's employment is to be used only for the purpose of conducting the Company's business. Employee agrees to never discuss or disclose such trade secrets, confidential information or property, either directly or indirectly, with or in the presence of persons outside the Company, either during employment, or at any time thereafter, except as required by Employee's supervisor. Employee further agrees that information in any form, including but not limited to documents, tapes, lists, computer printouts, studies, reports, drafts, pictures, charts, maps, drawings, programs, equipment, scrap, blueprints, vendor lists, customer lists, client billing information, all financial reports, payroll information, records, files and other materials pertaining to the Company, its customers and vendors, may not be removed from the facilities without the advance written permission of Employee's supervisor.

Employee acknowledges that all such trade secrets or confidential information, or any copies or summaries thereof, whether prepared by Employee, by the Company, or provided to Employee by the Company, is the exclusive property of the Company. On demand or termination of employment for any reason, Employee agrees to return to the Company all papers, records, electronic copies, and documents in Employee's possession or obtained during the course of Employee's employment with the Company and Employee further agrees that he/she will not retain any copies, nor permit anyone to retain any copies thereof, except that those who have successfully completed their 90 day introductory

1

Confidential - Attorney's Eyes Only

Exhibit 28, p. 379

MGA 0875551

period may keep their Franklin Planner.

Employee acknowledges and agrees that the trade secrets described herein have independent economic value in that they are not generally known within the trade they represent many years of research and development and give the Company substantial competitive advantages.

As a condition of employment, Employee agrees that he/she (1) will regard and preserve the confidential information as highly confidential and as the trade secrets of the Company; (2) will not, at any time during or within twelve months after the termination of his/her employment with the Company, reveal, disclose, permit to be disclosed, or make known to any person, firm or corporation, any confidential information which was disclosed to Employee or of which he/she became aware during his/her employment, regardless of whether developed, prepared or created in whole or in part by Employee's efforts, except to the extent that such disclosure is necessary and is authorized in writing by the Company to carry out Employee's duties of employment; (3) will retain all confidential information in trust for the sole benefit of the Company and will not disclose to or use any confidential information in an independent business related to the scope of the Company's business (designer, manufacturer and distributor of toy); (4) will not photocopy or duplicate, and will not permit any person to photocopy or duplicate, any of the confidential information without the Company's written consent and approval; (5) will not make any use of confidential information for his/her own benefit or the benefit of any person or entity other than the Company; (6) will return all confidential information (including but not limited to customer lists, books maintained by Employee, and source lists) to the Company immediately upon request for same. Employee agrees that if he/she has any questions about whether a matter is a trade secret, to seek a determination by the Company before he/she uses any such information.

Employee agrees to maintain the same level of confidentiality regarding co workers, employee relation matters, and Company operations. Employee agrees, by accepting employment or continued employment with the Company, to comply with these rules and to maintain confidentiality of the Company's trade secrets.

Employee understands and acknowledges that the trade secrets and confidential information of the Company are not known to the general public and are the subject of reasonable efforts to maintain its secrecy. They are of a special, unique and extraordinary character, which gives them a particular value, the loss of which cannot be reasonably compensated in damages in an action at law. Employee further understands and agrees that in addition to any other rights or remedies which the Company may have, the Company shall be entitled to immediate injunctive and other equitable relief to prevent a breach of this Confidentiality and Inventions Agreement. If any legal proceeding arises under this Confidentiality and Inventions Agreement, the prevailing party shall be entitled to recover all costs and expenses, including reasonable attorney's fees and costs. California law shall apply to this agreement as to contracts wholly performed within the state.

Employee and the Company agree that this Confidentiality and Inventions Agreement shall not apply to information that Employee was aware of prior to his/her employment with the Company, or that is otherwise publicly known.

Employee further agrees that during his/her employment and for a period of twelve months after termination, Employee will not solicit the purchase of any products or services from any supplier or vendor who supplies products or services to the Company.

Confidential - Attorney's Eyes Only

Exhibit 28, P. 380

MGA 0875552

INVENTIONS ASSIGNMENT:

1. <u>ASSIGNMENT OF INTEREST:</u> Employee agrees to assign, and does hereby assign, to Company all interest which employee may have in all patentable and/or not-patentable ideas and/or inventions made or conceived by Employee solely or jointly with others during Employee's employment with Company. This assignment shall not apply to any idea or invention developed by Employee entirely on Employee's own time without equipment, supplies, facilities, or trade secret information of Company, unless such invention or idea: (1) relates to the business of company or to Company's actual or anticipated research or development, or (2) results from any work performed by Employee for Company. THIS AGREEMENT DOES NOT APPLY TO ANY INVENTION WHICH QUALIFIES FULLY UNDER THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 2870.

2. <u>DISCLOSURE OF IDEAS OR INVENTIONS:</u> Employee agrees to promptly disclose in writing to Fred Larian all inventions developed solely or jointly with others during Employee's employment with Employer, whether such inventions are patentable, not-patentable or assignable under this Agreement. Employer agrees to maintain such disclosure in confidence.

3. <u>WRITTEN DISCLOSURE OF PRIOR INVENTIONS:</u> Employee agrees to provide a complete list of all patented or not-patented ideas and inventions conceived by Employee or anyone else jointly with Employee, prior to the date Employee has signed this Agreement. The failure of Employee to provide Company with a written disclosure of ideas or inventions shall be deemed to constitute an affirmative acknowledgment by Employee that no such ideas or inventions exist.

If any provision of this Confidentiality and Inventions Agreement is held to be invalid or unenforceable, in whole or in part, the remaining portions of this Agreement shall continue to be valid and will be performed, construed and enforced to the fullest extent permitted by law. The invalid or unenforceable provision shall be deemed amended and limited in accordance with the intent of the parties, as determined from the face of this Agreement, to the extent necessary to permit the maximum enforceability or validation of the provision.

| 11/13/2000 | | Lon Ross |
| --- | --- | --- |
| Date | Employee Signature | Employee Name (Printed) |

| | | |
| --- | --- | --- |
| Date | Employer Signature | Employer Name (Printed) |

3

Confidential - Attorney's Eyes Only

Exhibit 28, P. 381

MGA 0875553

## ACKNOWLEDGEMENT OF RECEIPT OF HANDBOOK

This is to acknowledge that I have received a copy of the Employee Handbook, and that I understand that it contains important information about the Company's personnel policies. *I acknowledge that I am expected to read, understand, and comply with the Company's policies and I will familiarize myself with those policies and practices.* I understand that the Company may from time to time and in its sole discretion, change, rescind or add to any policies, benefits or practices described. The Company will advise employees of material changes. I also know that it is my responsibility to request clarification of any policies I do not understand.

*Furthermore, I understand that employment with the Company is not for a specified term and is at the mutual consent of the employee and the Company. I understand also that either the Company or I may terminate the employment relationship at will, at any time, and with or without cause or advance notice.*

Date: 11/13/2000

_____
Employee's Signature

Lon Ross

_____
Employee's Printed Name

53                                    January, 1999

Confidential - Attorney's Eyes Only

MGA 0875554

Exhibit 23 , P. 382