## ARBITRATION AGREEMENT

The parties to this Arbitration Agreement (the "Agreement") are MGA (the "Company") and _MARTIN HITCH_ ("Employee").

In order to obtain an expeditious determination of the parties' rights and obligations and to avoid the costly expense and lengthy delays typically associated with court actions, the undersigned Employee and the Company agree to submit (with the exceptions noted below) any and all claims or controversies arising out of or relating to the Employee's employment or its termination to final and binding arbitration before a neutral arbitrator and not to any court. This applies to all claims or controversies regarding contracts or torts (personal injury) or which arise under statute, including without limitation, the claims and causes of action specified below.

1.    **SUBMISSION TO ARBITRATION.**

a.    IN CONSIDERATION FOR AND AS A MATERIAL CONDITION OF EMPLOYMENT AND CONTINUATION OF EMPLOYMENT WITH THE COMPANY, EMPLOYEE AGREES THAT FINAL AND BINDING ARBITRATION IS THE EXCLUSIVE MEANS FOR RESOLVING COVERED DISPUTES.  NO OTHER ACTION MAY BE BROUGHT IN COURT OR IN ANY OTHER FORUM.  THIS AGREEMENT IS A WAIVER OF ALL RIGHTS TO A CIVIL COURT ACTION FOR A COVERED CLAIM. ONLY AN ARBITRATOR, NOT A JUDGE OR JURY, WILL DECIDE THE CLAIM.

b.    Employee or the Company will begin the arbitration process by delivering a written request for arbitration to the other party within the time limits which would apply to the filing of a civil court action.  Failure to deliver a timely written request for arbitration will preclude the aggrieved party from instituting any legal, arbitration or other proceeding and will constitute a complete waiver of all such claims.  Statutory claims can be raised within the limitations period provided by the applicable statute.

c.    Claims covered by this provision include, but are not limited to, the following:  (i) alleged violations of federal, state and/or local constitutions, statutes, regulations or ordinances, including, but not limited to, **laws dealing with unlawful discrimination and harassment**; (ii) claims based on any purported breach of contractual obligation, including but not limited to breach of the covenant of good faith and fair dealing, wrongful termination or constructive discharge; (iii) violations of public policy; (iv) claims relating to a transfer, reassignment, denial of promotion, demotion, reduction in pay, or any other term or condition of employment; (v) claims based on contract or tort; and (vi) any and all other claims arising out of Employee's employment with or termination by the Company.  THIS INCLUDES, BUT IS NOT LIMITED TO, CLAIMS BROUGHT UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964; CALIFORNIA GOVERNMENT CODE SECTION 12960, et seq.; AND ANY OTHER FEDERAL, STATE OR LOCAL ANTI-DISCRIMINATION LAWS RELATING TO DISCRIMINATION INCLUDING BUT NOT LIMITED TO THOSE BASED ON THE FOLLOWING PROTECTED CATEGORIES: GENETIC INFORMATION OR CHARACTERISTICS; SEX AND GENDER; RACE; RELIGION; NATIONAL ORIGIN;  MENTAL OR PHYSICAL DISABILITY (INCLUDING CLAIMS UNDER THE AMERICAN WITH DISABILITIES ACT);  MEDICAL CONDITION (CANCER);  VETERAN OR MILITARY STATUS;  MARITAL STATUS;  SEXUAL ORIENTATION OR PREFERENCE; AGE;   PREGNANCY; AND RETALIATION OR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY FOR ALLEGING OR FILING OR PARTICIPATING IN ANY GRIEVANCE OR OTHERWISE COMPLAINING OF ANY WRONG RELATING TO THE AFOREMENTIONED CATEGORIES OR ANY PUBLIC POLICY.

LOS_ANGELES:110499.1 028307.1001

Exhibit _28_, p. _383_

d.      **The following claims are expressly excluded** and not covered by this Agreement for final and binding arbitration: (i) claims related to workers' compensation and unemployment insurance;  ii) administrative filings with governmental agencies such as the California Department of Fair Employment & Housing, the Equal Employment Opportunity Commission, the U.S. Department of Labor or the National Labor Relations Board;  and (iii) claims that are expressly excluded by statute or are expressly required to be arbitrated under a different procedure pursuant to the terms of an employee benefit plan.   Nor does this Agreement preclude either party from seeking appropriate interim injunctive relief pursuant to the California Code of Civil Procedure or applicable federal law before arbitration or while arbitration proceedings are pending.

e.      Any claim arising between Employee and the Company covered by the arbitration provisions of this Agreement will be submitted to final and binding arbitration in the State of California pursuant to the National Rules for the Resolution of Employment Disputes of the American Arbitration Association in effect upon the date the claim is submitted in writing to the Company, to which rules the parties hereby expressly agree.

The Rules are attached and incorporated fully herein by reference.   They are also available on-line at www.adr.org.  The Rules allow for discovery by each party as ordered by the arbitrator.  The arbitrator must allow discovery adequate to arbitrate all claims, including access to essential documents and witnesses..

Either party may apply for injunctive relief in a court of law under applicable law before or during arbitration.

In making an award, the Arbitrator shall have the authority to make any finding and determine any remedy congruent with applicable law, including an award of compensatory or punitive damages.  In reaching a decision, the Arbitrator shall adhere to relevant law and applicable legal precedent, and shall have no power to vary therefrom.

The Arbitrator must issue a written award.   The Arbitrator shall, in the award or separately, make specific written findings of fact,  as well as the reasons and legal basis for his or her opinion.

Should the Arbitrator exceed the jurisdiction or authority conferred in this Agreement, any party may file a petition to vacate, amend or correct the Arbitrator's award in a court of competent jurisdiction, pursuant to applicable law.

The Company will pay the arbitrator's fees and other administrative costs of arbitration, and other reasonable costs as specified by the arbitrator under applicable law so that Employee does not have to bear any cost which he/she would not have to bear in court beyond any amount which would have to be paid as a filing fee in a municipal or superior court. Each party shall be responsible for payment of its attorneys' fees, unless, upon application by a party, the arbitrator makes an award of attorneys' fees under applicable statutory or other law.

2.      **GOVERNING LAW.**   This Agreement shall be construed in accordance with and governed by the laws of the State of California.

3.      **INTERPRETATION.** This Agreement shall be interpreted in accordance with the plain meaning of its terms and not strictly for or against either party.

LOS_ANGELES:110499.1 028307.1001

Confidential - Attorney's Eyes Only

Exhibit 28, P. 384

MGA 0875684

4.      **ENTIRE AGREEMENT.**  This Agreement embodies the complete agreement and understanding of the parties related to the resolution of any dispute regarding Employee's employment with or termination from the Company, or as otherwise specified above, superseding any and all other prior or contemporaneous oral or written agreements between the parties with respect to the same, and contains all of the covenants and agreements of any kind whatsoever between the parties with respect to the same. Each party acknowledges that no representations, inducements, promises or agreements regarding the resolution of any dispute regarding Employee's employment with or termination by the Company, whether oral or written, express or implied, have been made by either party or anyone acting on behalf of a party, that are not incorporated herein. No other agreement or promise regarding the resolution of any dispute between Employee and the Company not contained herein shall be valid or binding.

5.      **MODIFICATION.**  This Agreement may be amended only by an agreement in writing signed by the parties hereto.

6.      **INVALIDITY.** Should any provision(s) in this Agreement be held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions shall be unaffected and shall continue in full force and effect, and the invalid, void or unenforceable provision shall be deemed not to be part of this Agreement.

7.      **VOLUNTARY AGREEMENT. Employee and the Company represent and agree that each has reviewed all aspects of this Agreement, has carefully read and fully understands all provisions of this Agreement, and is voluntarily entering into this Agreement. The parties represent and agree that each has had the opportunity to review any and all aspects of this Agreement with the legal or other advisor of the party's choice before executing this Agreement.**

8.      **SUCCESSORS AND ASSIGNS.**  This Agreement shall be binding upon and inure to the benefit of and shall be enforceable as applicable by and against Employee's and the Company's successors, heirs, beneficiaries and legal representatives.  It is agreed that the rights and obligations of Employee and the Company may not be delegated or assigned except as specifically set forth in this Agreement.

9.      **SURVIVAL OF TERMS.** The provisions of this Arbitration Agreement will survive the termination of Employee's employment and remain in full force and effect thereafter.  Nothing in this Agreement will be construed to create any express or implied contract of employment or alter in any way the at-will nature of Employee's employment.

3

LOS_ANGELES:110499.1 028307.1001

Confidential - Attorney's Eyes Only

Exhibit 28, P. 385

MGA 0875685

10.    **COUNTERPARTS.**    This Agreement may be executed in counterparts and each counterpart, when executed, shall have the validity of an original.  Photographic or facsimile copies of any signed counterparts may be used in lieu of the original for any purpose.

We have read and understand this Arbitration Agreement and voluntarily agree to all of its terms.

DATED: _____1/4/01_____          _____Martin Hitch_____
                                 Employee

DATED: _____2/28/2001_____       _____
                                 MGA          the Manager

4

LOS_ANGELES:110499.1 028307.1001

Confidential - Attorney's Eyes Only

Exhibit 28, P. 386

MGA 0875686

## CONFIDENTIALITY AND INVENTIONS ASSIGNMENT AGREEMENT

This Confidentiality and Inventions Agreement is executed by and between ABC Int'l Traders, Inc. ("Company") and _MARTIN HITCH_ ("Employee").

During the course of his/her employment at the Company, Employee will have access to, will acquire, and will become acquainted with trade secrets, confidential information and property related to the Company and its customers' and vendors' businesses. The Company's trade secrets include, but are not limited to, such information as customer names, addresses, phone numbers, names, specific characteristics of suppliers and customers and their respective employees with whom the Company has dealings (whether or not such information is contained on a Rolodex, computer printout, customer list, or is orally communicated to any Company employee in the course of their duties) and the history of purchases, along with terms and conditions of credit offered to each customer; names, addresses, telephone numbers and specific characteristics of prospective customers and contacts; information regarding particular customer product peculiarities, manners of doing business, needs and requirements; product specifications and performance needs for each customer; and the prices charged to each customer; customer information reports, pricing information (such as price lists, quotation guides, previous or outstanding quotations, equipment prices or billing information), mailing labels, mailing plans and programs, sales report forms, pending projects or proposals, techniques used in approaches or results of any market research, advertising sources, employee salaries, contracts and wage information, names and addresses of the vendors, manufacturers, and other suppliers of Company products, the products they supply, the applicable prices and discounts, and the applicable product specifications; new products or inventions developed or under development by the Company; formulas, patterns, compilations, programs, devises, methods, techniques, processes, pictures, contracts, files, methods or production (including quality control and packaging), proposals, business plans and projections, budgets, financial information, software, hardware, any patent application or the contents thereof; and all other material relating in any manner whatsoever to the customers products, vendors, and suppliers of Company, including matters which should reasonably be considered trade secrets even if not expressly described herein.

All information obtained in the course of Employee's employment is to be used only for the purpose of conducting the Company's business. Employee agrees to never discuss or disclose such trade secrets, confidential information or property, either directly or indirectly, with or in the presence of persons outside the Company, either during employment, or at any time thereafter, except as required by Employee's supervisor. Employee further agrees that information in any form, including but not limited to documents, tapes, lists, computer printouts, studies, reports, drafts, pictures, charts, maps, drawings, programs, equipment, scrap, blueprints, vendor lists, customer lists, client billing information, all financial reports, payroll information, records, files and other materials pertaining to the Company, its customers and vendors, may not be removed from the facilities without the advance written permission of Employee's supervisor.

Employee acknowledges that all such trade secrets or confidential information, or any copies or summaries thereof, whether prepared by Employee, by the Company, or provided to Employee by the Company, is the exclusive property of the Company. On demand and termination of employment for any reason, Employee agrees to return to the Company all papers, records, electronic copies, and documents in Employee's possession or obtained during the course of Employee's employment with the Company and Employee further agrees that he/she will not retain any copies, nor permit anyone to retain any copies thereof, except that those who have successfully completed their 90 day introductory period may keep their Franklin Planner.

Employee acknowledges and agrees that the trade secrets described herein have independent economic value in that they are not generally known within the trade they represent many years of research and development and give the Company substantial competitive advantages.

As a condition of employment, Employee agrees that he/she (1) will regard and preserve the confidential information as highly confidential and as the trade secrets of the Company; (2) will not, at any time during or within twelve months after the termination of his/her employment with the Company, reveal, disclose, permit to be disclosed, or make known to any person, firm or corporation, any confidential information which was disclosed to

Exhibit 28, P. 387

Employee or of which he/she became aware during his/her employment, regardless of whether developed, prepared or created in whole or in part by Employee's efforts, except to the extent that such disclosure is necessary and is authorized in writing by the Company to carry out Employee's duties of employment; (3) will retain all confidential information in trust for the sole benefit of the Company and will not disclose to or use any confidential information in an independent business related to the scope of the Company's business (designer, manufacturer and distributor of toy); (4) will not photocopy or duplicate, and will not permit any person to photocopy or duplicate, any of the confidential information without the Company's written consent and approval; (5) will not make any use of confidential information for his/her own benefit or the benefit of any person or entity other than the Company; (6) will return all confidential information (including but not limited to customer lists, books maintained by Employee, and source lists) to the Company immediately upon request for same. Employee agrees that if he/she has any questions about whether a matter is a trade secret, to seek a determination by the Company before he/she uses any such information.

Employee agrees to maintain the same level of confidentiality regarding co workers, employee relation matters, and Company operations. Employee agrees, by accepting employment or continued employment with the Company, to comply with these rules and to maintain confidentiality of the Company's trade secrets.

Employee understands and acknowledges that the trade secrets and confidential information of the Company are not known to the general public and are the subject of reasonable efforts to maintain its secrecy. They are of a special, unique and extraordinary character, which gives them a particular value, the loss of which cannot be reasonably compensated in damages in an action at law. Employee further understands and agrees that in addition to any other rights or remedies which the Company may have, the Company shall be entitled to immediate injunctive and other equitable relief to prevent a breach of this Confidentiality and Inventions Agreement. If any legal proceeding arises under this Confidentiality and Inventions Agreement, the prevailing party shall be entitled to recover all costs and expenses, including reasonable attorney's fees and costs. California law shall apply to this agreement as to contracts wholly performed within the state.

Employee and the Company agree that this Confidentiality and Inventions Agreement shall not apply to information that Employee was aware of prior to his/her employment with the Company, or that is otherwise publicly known.

Employee further agrees that during his/her employment and for a period of twelve months after termination, Employee will not solicit the purchase of any products or services from any supplier or vendor who supplies products or services to the Company.

INVENTIONS ASSIGNMENT:

1. ASSIGNMENT OF INTEREST: Employee agrees to assign, and does hereby assign, to Company all interest which employee may have in all patentable and/or not-patentable ideas and/or inventions made or conceived by Employee solely or jointly with others during Employee's employment with Company. This assignment shall not apply to any idea or invention developed by Employee entirely on Employee's own time without equipment, supplies, facilities, or trade secret information of Company, unless such invention or idea: (1) relates to the business of company or to Company's actual or anticipated research or development, or (2) results from any work performed by Employee for Company. THIS AGREEMENT DOES NOT APPLY TO ANY INVENTION WHICH QUALIFIES FULLY UNDER THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 2870.

2. DISCLOSURE OF IDEAS OR INVENTIONS: Employee agrees to promptly disclose in writing to Fred Larian all inventions developed solely or jointly with others during Employee's employment with Employer, whether such inventions are patentable, not-patentable or assignable under this Agreement. Employer agrees to maintain such disclosure in confidence.

3. WRITTEN DISCLOSURE OF PRIOR INVENTIONS: Employee agrees to provide a complete list of all patented or not-patented ideas and inventions conceived by Employee or anyone else jointly with Employee, prior to the date Employee has signed this Agreement. The failure of Employee to provide Company with a written disclosure of ideas or inventions shall be deemed to constitute an affirmative acknowledgment by

Exhibit _28_, P. _388_

MGA 0875688

Employee that no such ideas or inventions exist.

If any provision of this Confidentiality and Inventions Agreement is held to be invalid or unenforceable, in whole or in part, the remaining portions of this Agreement shall continue to be valid and will be performed, construed and enforced to the fullest extent permitted by law. The invalid or unenforceable provision shall be deemed amended and limited in accordance with the intent of the parties, as determined from the face of this Agreement, to the extent necessary to permit the maximum enforceability or validation of the provision.

| 1/4/01 | _Martin Hitch_ | MARTIN HITCH |
|---|---|---|
| Date | Employee Signature | Employee Name (printed) |

| 1/4/01 | | |
|---|---|---|
| Date | Employer Signature | Name (printed) |

Confidential - Attorney's Eyes Only

Exhibit 28, P. 389

MGA 0875689

## PROPRIETARY INFORMATION AGREEMENT

This Proprietary Information Agreement ("Agreement") is entered into by and between **MARTIN HITCH** ("Employee"), on the one hand, and MGA Entertainment (together with its affiliates, and their successors and assigns, the "Company"), on the other hand.

**WHEREAS**, the Company has offered to employ Employee on certain favorable terms and conditions, which offer is expressly conditioned upon, among other things, Employee's agreement to adhere to, among other things, the various covenants and agreements contained in this Agreement;

**WHEREAS**, Employee understands the terms and conditions of the Company's employment offer, including its condition that Employee agree to the various covenants and agreements set forth below.  In consideration of the Company's employment of Employee and providing Employee with training, compensation and benefits, and business growth and development opportunities, and allowing Employee to have access to the Company's Proprietary Information (defined below), Employee has decided to enter into, and agrees to be bound by, this Agreement.

**NOW, THEREFORE**, in consideration of the mutual representations, warranties, covenants and agreements set forth below, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Employee and the Company agree as follows:

**AGREEMENT**

1.    **CONFIDENTIALITY.**    Employee understands that, by virtue of Employee's employment with the Company, Employee will acquire and be exposed to Proprietary Information of the Company.   "Proprietary Information" includes all ideas, information and materials, tangible or intangible, not generally known to the public, relating in any manner to the business of the Company (as defined above), its products and services (including all trade secrets), its personnel (including its officers, directors, employees, and contractors), its clients, vendors and suppliers and all others with whom it does business that Employee learns or acquires during Employee's employment with the Company.  Proprietary Information includes, but is not limited to, manuals, documents, computer programs and software used by the Company, users manuals, compilations of technical, financial, legal or other data, salary information, client or prospective client lists, names of suppliers or vendors, client, supplier or vendor contact information, business referral sources, specifications, designs, devices, inventions, processes, business or marketing plans or strategies, pricing information, media rate information, rate structures, information regarding the identity of the Company's directors, advertisers, or media experts, identity data, prototypes, forecasts, financial information, works in progress, and other technical or business information.   Proprietary Information does not include basic information that is generally known and used within the Toy industry.

Employee agrees to hold in trust and confidence all Proprietary Information during and after the period of Employee's employment with the Company.  Employee shall not disclose any Proprietary Information to anyone outside the Company without the written approval of an authorized officer of the Company or use any Proprietary Information for any purpose other than for the benefit of the Company as required by Employee's authorized duties for the Company.  At all times during Employee's employment with the Company, Employee shall comply with all of the Company's policies or regulations relating to the protection and confidentiality of Proprietary Information.  Upon termination of Employee's employment with the

LOS_ANGELES:102871.1 015567.1001

Confidential - Attorney's Eyes Only

Exhibit 28, P. 390

MGA 0875690

Company, (a) Employee shall not use Proprietary Information, or disclose Proprietary Information to anyone, for any purpose, unless expressly requested to do so in writing by an authorized officer of the Company, (b) Employee shall not retain or take with Employee any Proprietary Information in a Tangible Form (defined below), and (c) Employee shall immediately deliver to the Company any Proprietary Information in a Tangible Form that Employee may then or thereafter hold or control, as well as all other property, equipment, documents or things that Employee was issued or otherwise received or obtained during Employee's employment with the Company. "Tangible Form" includes ideas, information or materials in written or graphic form, on a computer disc or other medium, or otherwise stored in or available through electronic, magnetic, videotape or other form.

> 2.    **PROTECTION    OF    PROPRIETARY    INFORMATION**.
Employee acknowledges that (a) the Company is engaged in the business of the invention, design, development and manufacture of toys, specifically high-tech toys and electronics throughout the United States and the World; (b) the market for the Business covers the entire United States and the World and (c) as part of Employee's employment, Employee will be exposed to Proprietary Information that relates directly to the Company's Business. Employee further acknowledges that because of the nature of Employee's work at the Company, Employee's engaging in similar work for another company that, directly or indirectly, engages in the Business in California will necessarily and inevitably involve or lead to Employee's unauthorized use or disclosure of Proprietary Information. Accordingly, for a period of one (1) year following the termination of Employee's employment with the Company for any reason, Employee shall not, directly or indirectly, become employed by or provide any services to or for any company or business that is engaged in the Business throughout the United States, unless Employee demonstrates to the Company's reasonable satisfaction that such employment or service will not result in the unauthorized use or disclosure of Proprietary Information.

> 3.    **NON-SOLICITATION OF CUSTOMERS, CLIENTS AND VENDORS**.
Employee acknowledges that, because of the nature of Employee's work for the Company, Employee's solicitation or serving of certain customers, clients and vendors related to Employee's work for the Company would necessarily involve the unauthorized use or disclosure of Proprietary Information, and the proprietary relationships and goodwill of the Company. Accordingly, for one (1) year following the termination of Employee's employment with the Company for any reason, Employee shall not, directly or indirectly, solicit, induce, or attempt to solicit or induce, any person or entity then known to be a customer or client or vendor of the Company, for whom or, on whose behalf, Employee, during the three (3) year period immediately preceding the termination of Employee's employment, (a) performed any work or services, or (b) participated the preparation of any proposal to provide such work or services (a "Restricted Customer/Client/Vendor"), to terminate his, her or its relationship with the Company for any purpose, including the purpose of associating with or becoming a customer, client or vendor, whether or not exclusive, of Employee or any entity of which Employee is or becomes an officer, director, member, agent, employee or consultant, or otherwise solicit, induce, or attempt to solicit or induce, any Restricted Customer/Client/Vendor to terminate his, her or its relationship with the Company for any other purpose or no purpose.

> 4.    **NON-SOLICITATION OF PERSONNEL**.    During Employee's employment with the Company and for one (1) year thereafter, Employee shall not, directly or indirectly, solicit, induce, or attempt to solicit or induce, any person known to Employee to be an employee of the Company who, directly or indirectly, engages in the Business on behalf of the Company (each such person, a "Company Person"), to terminate his or her employment or other relationship with the Company for the purpose of associating with (a) any entity that engages in the Business of which Employee is or becomes an officer, director, member, partner, principal, agent, employee or consultant, or (b) any competitor of the Company in the Business, or otherwise encourage any Company Person to terminate his or her employment or

LOS_ANGELES:102871.1 015567.1001                    2.

other relationship with the Company for any other purpose or no purpose.

     5.   **COMPETING ACTIVITIES**. During Employee's employment with the Company, Employee shall not engage in any activity that is or may be competitive with the Company in the Business or otherwise in any state in the United States, where the Company engages in the Business, whether or not for compensation including, but not limited to, providing services or selling products similar to those provided or sold by the Company, offering, or soliciting or accepting an offer, to provide such services or to sell such products, or taking any action to form, or become employed by, a company or business to provide such services or to sell such products.

     6.   **RETURN OF DOCUMENTS AND MATERIALS**. Immediately upon the termination of Employee's employment or at any time prior thereto if requested by the Company, Employee shall return all records, documents, equipment, proposals, notes, lists, files, and any and all other materials, including but not limited to Proprietary Information in a Tangible Form, that refers, relates or otherwise pertains to the Company and its business, including its products and services, personnel, customers or clients (actual or potential), investors (actual or potential), and/or vendors and suppliers (actual or potential), or any of them, and any and all business dealings with said persons and entities (the "Returned Property and Equipment") to the Company at its offices in Los Angeles, California. Employee is not authorized to retain any copies or duplicates of the Returned Property and Equipment that Employee obtained or received as a result of Employee's employment or other relationships with the Company.

     7.   **PROPRIETARY INFORMATION OF OTHERS/COMPLIANCE WITH LAWS**. Employee shall not breach any agreement to keep in confidence, or to refrain from using, the nonpublic ideas, information or materials of a third party, including, but not limited to, a former employer or client. Employee shall not bring any such ideas, information or materials to the Company, or use any such ideas, information or materials in connection with Employee's employment by the Company. Employee shall comply with all national, state, local and other laws, regulations and ordinances.

     8.   **RIGHTS AND REMEDIES UPON BREACH**. If Employee breaches, or threatens to commit a breach of, any of the provisions of this Agreement, Employee agrees that the Company shall have the right and remedy to have each and every one of the covenants in this Agreement specifically enforced and the right and remedy to obtain temporary and permanent injunctive relief, it being acknowledged and agreed by Employee that any breach or threatened breach of any of the restrictive covenants and agreements contained herein would cause irreparable injury to the Company and that money damages would not provide an adequate remedy at law to the Company. Moreover, if Employee breaches or threatens to commit a breach of this Agreement during Employee's employment with the Company, Employee may be subject to the immediate termination of Employee's employment. In any such action seeking to enforce this Agreement, the prevailing party shall be entitled to recover all reasonable attorneys' fees, costs and expenses, including any expert fees, that were incurred by that party in connection with any such action.

     9.   **SEVERABILITY/BLUE-PENCIL**. Employee acknowledges and agrees that (a) the restrictive covenants and agreements contained herein are reasonable and valid in geographic, temporal and subject matter scope and in all other respects, and do not impose limitations greater than are necessary to protect the goodwill, Proprietary Information, and other business interests of the Company; (b) if any court subsequently determines that any of such covenants or agreements, or any part thereof, is invalid or unenforceable, the remainder of such covenants and agreements shall not thereby be affected and shall be given full effect without regard to the invalid portions; and (c) if any court determines that any of the restrictive

LOS_ANGELES:102871.1 015567.1001      3.

covenants and agreements, or any part thereof, is invalid or unenforceable because of the duration or scope of such provision, such court shall have the power to reduce the duration or scope of such provision, as the case may be, and, in its reduced form, such provision shall then be enforceable to the maximum extent permitted by applicable law. Employee intends to and hereby confers jurisdiction to enforce each and every one of the covenants and agreements contained herein upon the courts of any jurisdiction within the geographic scope of such covenants and agreements, and if the courts or any one or more of such jurisdictions hold any such covenant or agreement unenforceable by reason of the breadth or scope or otherwise, it is the intention of Employee that such determination shall not bar or in any way affect the Company's right to the relief provided above in the courts of any other jurisdiction within the geographic scope of such covenants and agreements, as to breaches of such covenants and agreements in such other respective jurisdictions, such covenants and agreements as they relate to each jurisdiction being, for this purposes, severable into diverse and independent covenants and agreements.

10. **CONFIRMATION OF AT-WILL EMPLOYMENT.** Employee acknowledges and agrees that: (a) Employee's employment with the Company is and shall be at all times on an at-will basis, and the Company or Employee may terminate Employee's employment at any time, for any reason, with or without cause or advance notice; (b) nothing in this Agreement or in the Company's employee manuals, handbooks or other written materials create or are intended to create an express or implied contract for employment; (c) nothing in the Agreement obligates the Company to hire, retain or promote Employee; (d) all definitions, terms and conditions of this Agreement apply to Employee only for the purposes of this Agreement, and for no other purpose, and do not alter or otherwise effect the at-will status of Employee's employment with the Company; and (e) no representative of the Company has any authority to enter into any express or implied, oral or written agreements that are contrary to the terms and conditions of this Agreement or to enter into any express or implied contracts for employment (other than for at-will employment) except for the President of the Company and any agreement between Employee and the President must be in writing and signed by Employee and the President.

11. **INFORMATION ON COMPANY PREMISES.** Employee acknowledges that, by virtue or Employee's employment with the Company, Employee will have use of the premises and equipment of the Company. Employee acknowledges and agrees that the Company has the right to review and inspect any such premises and equipment, even if they contain Employee's personal information or materials.

12. **GOVERNING LAW.** This Agreement shall be construed, interpreted, and governed in accordance with either (a) the laws of the State of California, regardless of applicable conflicts of law principles, or (b) in the event of a breach of any of the covenants contained in Section 1 through 8, the law of the State where such breach actually occurs, depending on whichever choice of law shall ensure to the maximum extent that the restrictive covenants shall be enforced in accordance with the intent of the parties.

13. **ENTIRE AGREEMENT/MODIFICATION/NO WAIVER.** This Agreement (and Employee's and the Company's agreements regarding arbitration and Employee's at will employment status that are set forth in the Company's offer letter, which are incorporated by this reference herein) (a) represent the entire agreement of the parties with respect to the subject matter hereof, (b) shall supersede any and all previous contracts, arrangements or understandings between the parties hereto with respect to the subject matter hereof, and (c) may not be modified or amended except by an instrument in writing signed by each of the parties hereto. No waiver, delay, omission or forbearance in exercising any right, option, duty or power under this Agreement (or Employee's and the Company's agreements regarding arbitration and Employee's at will employment status that are set forth in the Company's offer

LOS_ANGELES:102871.1 015567.1001                    4.

Confidential - Attorney's Eyes Only

Exhibit _28_, P. _393_

MGA 0875693

letter) shall affect or impair any party's rights with respect to any past or present default or breach of any of provisions of this Agreement or Employee's and the Company's agreements regarding arbitration and Employee's at will employment status that are set forth in the Company's offer letter.

14.   **PARTIES IN INTEREST/ASSIGNMENT/SURVIVAL.**   Neither this Agreement nor any of the rights, interests or obligations under this Agreement shall be assigned, in whole or in part, by operation of law or otherwise, by Employee. The Company may sell, assign, and transfer all of its right, title and interests in this Agreement without the prior consent of Employee, whether by operation of law or otherwise, in which case this Agreement shall remain in full force after such sale, assignment or other transfer and may be enforced by (a) any successor, assignee or transferee of all or any part of the Company's business as fully and completely as it could be enforced by the Company if no such sale, assignment or transfer had occurred, and (b) the Company in the case of any sale, assignment or other transfer of a part, but not all, of the business. The benefits under this Agreement shall inure to and may be enforced by the Company and any of its subsidiaries, affiliates, successors, transferees and assigns. Employee's duties and obligations under this Agreement shall survive the termination of Employee's employment by Employee or the Company.

15.   **VOLUNTARY AGREEMENT/NO INDUCEMENTS.**  The Company and Employee hereby acknowledge and represent that Employee and the Company each (a) has fully and carefully read this Agreement prior to signing it, (b) has been, or has had the opportunity to be, advised by independent legal counsel of Employee's and the Company's own choice as to the legal effect and meaning of each of the terms and conditions of this Agreement, and (c) is signing and entering into this Agreement as a free and voluntary act without duress or undue pressure or influence of any kind or nature whatsoever and has not relied on any promises, representations or warranties regarding the subject matter hereof other than as set forth in this Agreement.

**IN WITNESS WHEREOF,** the parties hereto have signed this Agreement on the day and year written below.

MGA Entertainment

By: _____

President and Chief Executive Officer

Date: __/ / 4_____, 200 ___

EMPLOYEE

Name:  MARTIN HITCH
Address:
Date: __          **REDACTED**

Confidential - Attorney's Eyes Only

Exhibit 28, P. 394

MGA 0875694

REDACTED

## ACKNOWLEDGEMENT OF RECEIPT OF HANDBOOK

This is to acknowledge that I have received a copy of the Employee Handbook, and that I understand that it contains important information about the Company's personnel policies. *I acknowledge that I am expected to read, understand, and comply with the Company's policies and I will familiarize myself with those policies and practices.* I understand that the Company may from time to time and in its sole discretion, change, rescind or add to any policies, benefits or practices described. The Company will advise employees of material changes. I also know that it is my responsibility to request clarification of any policies I do not understand.

*Furthermore, I understand that employment with the Company is not for a specified term and is at the mutual consent of the employee and the Company. I understand also that either the Company or I may terminate the employment relationship at will, at any time, and with or without cause or advance notice.*

Date: ___1/4/01___        ___Martin Hitch___
                                    Employee's Signature

                          ___MARTIN HITCH___
                                    Employee's Printed Name

53                              January, 1999

Confidential - Attorney's Eyes Only

Exhibit 2*B*, P. 395

MGA 0875695

## MUTUAL AGREEMENT TO MEDIATE AND/OR ARBITRATE

We recognize that differences may arise between us. Through this mutual agreement to mediate and/or arbitrate("Agreement"), _____ ("Employee"), and ABC Int'l Traders Inc. ("Company") expect to gain the benefits of a speedy, economical, impartial dispute resolution procedure. This Agreement provides as follows:

This Agreement shall apply to all disputes or controversies, whether or not arising out of Employee's employment (or termination of that employment), that the Company may have against Employee, or that employee may have against the Company or against its officers, directors, employees, or agents("Claims"). The Claims include, but are not limited to, controversies relating to: compensation or benefits, breach of any contract, torts, discrimination under state, federal or local law, and violation of any federal, state or other governmental law, statute, regulation or ordinance. However, this Agreement shall not apply to any claim: (a) by the employee for workers' compensation or unemployment benefits; or (b) by the Company for injunctive and/or other equitable relief; including, but not limited to, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information. With respect to matters referred to in sub-paragraph (b) above, the company may seek and obtain injunctive relief in court, and then proceed with arbitration under the Agreement.

EACH PARTY WAIVES THE RIGHT TO A JURY TRIAL OR COURT TRIAL. THE SOLE AND EXCLUSIVE METHOD TO RESOLVE ANY CLAIM IS MEDIATION AND/OR ARBITRATION AS PROVIDED IN THIS AGREEMENT. The parties each waive their right to commence an action in any court to resolve a Claim. Neither party shall initiate or prosecute any lawsuit in any way related to any claim covered by this Agreement.

Any Claim by employee or the company must be processed in the manner set forth below. Otherwise, the Claim shall be void and deemed waived even if there is a federal or state statute of limitations which would allow more time to pursue the Claim.

An Employee Claim must initially be raised verbally by Employee to the person(s) involved. If the issue cannot be resolved, the matter must be presented to the Employee's immediate supervisor within one year after you initially knew or should have known of the facts that gave rise to the Claim. The supervisor will answer the Claim within fifteen (15) days from the date the Claim was presented. If the supervisor fails to respond, then it will be considered a denial of your Claim.

If Employee is not satisfied with the supervisor's answer, or the nature of the Claim is such that Employee does not wish to present it to his supervisor, the Employee may obtain the assistance of the President, who will discuss the Claim with Employee and assist, if Employee desires assistance, in presenting the Claim in written form to the Company. Employee must present the Claim in writing to the President within fifteen (15) working days after Employee receives the supervisor's answer. However, if Employee decides not to present the Claim to his or her supervisor, Employee must present the Claim to the President, in writing, within one year after Employee initially knew or should have known of the facts that gave rise to the Claim. If Employee does not present the Claim in writing to the President within 15 days or one year, whichever is applicable, then Employee will be deemed to have accepted the Company's last stated position on the Claim and waived the right to further contest the Claim.

The President will consider Employee's written presentation, and any other information that Employee deems relevant. The President will render a written decision within fifteen (15) working days. This decision will be mailed to Employee's address, as it appears in the Company's records.

Confidential - Attorney's Eyes Only

Exhibit 28 , P. 396

MGA 0875696

If the Company fails to respond, it will be deemed a denial of your claim.

If Employee is not satisfied with the President's decision, Employee may request a voluntary, non-binding mediation. If mediation is selected, Employee and the Company agree to utilize mediation in good faith with the goal of resolving the Claim. If the parties cannot mutually agree on the mediator, they will utilize the American Arbitration Association ("AAA") mediation dispute resolution procedures. The mediation shall take place in or near the city in which Employee resided when last employed by the Company. If mediation does not result in a settlement of the Claim, either party may serve written notice to the other party of its intention to proceed to arbitrate within fifteen (15) days from the termination of the mediation.

If Employee does not desire to mediate the Claim, then he or she may present the Claim for resolution by final and binding arbitration. Employee must serve written notice on the Company of his or her intention to arbitrate within ninety (90) days from the mailing of the President's final decision.

If the Company desires to initiate arbitration to resolve a Claim against Employee, it must serve written notice on Employee within one year after it initially knew or should have know of the facts that gave rise to its Claim.

The written notice of desire to arbitrate shall describe the factual basis of all Claims asserted, and shall be served on the other party by certified mail, return receipt requested. Written notice to Employee will be mailed to his or her address as it appears in the Company's records. Written notice to the Company, or its officers, directors, employees or agents, shall be sent to the President at the Company's principal place of business. If written notice of desire to arbitrate is not served within the applicable time period, the party who failed to timely serve notice will be deemed to have waived the right to further contest the Claim and will be deemed to have accepted the other party's last stated position on the Claim.

The arbitration shall be conducted in accordance with the then-current Model Employment Arbitration Procedures of the AAA before a single arbitrator. The Arbitrator shall be selected in the following manner. The AAA shall give each party a list of 11 arbitrators drawn from its panel of labor of employment arbitrators. Each side may strike all names on the list it deems unacceptable. If only one common name remains on the list of all parties, that individual shall be the Arbitrator. If more than one common name remains on the list of all parties, the parties shall strike names alternately, in a telephone conference no more than five days after the parties receive notice that more than one acceptable arbitrator remains, until only one remains. If no common name remains on the list of all parties, the AAA shall furnish one additional list, and the above procedures will be utilized. If no arbitrator is designated from the second list, the procedures of the AAA rules will be used to select the Arbitrator.

Either party may be represented by an attorney or other representative selected by the party. The parties waive the provision of California Code of Civil Procedure Section 1283.05. Each party shall have the right to take the deposition of one individual from, any expert witness designated by, and the other party. Each party also shall have the right to make requests for production of documents to any party. Additional discovery may be had only where the arbitrator so orders, upon a showing of substantial need. All issues related to discovery will be resolved by the Arbitrator.

The Arbitrator will have no authority to: (i) adopt new Company policies or procedures, (ii) modify the Agreement or existing Company policies, procedures, wages or benefits, or (iii) hear or

Exhibit _28_, P. _397_

decide any matter that was not processed in accordance with this Agreement. The Arbitrator shall have exclusive authority to resolve any Claim, including, but not limited to, a dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, or any contention that all or any part of this Agreement is void or voidable. The Arbitrator will have the authority to award any form or remedy or damages that would be available in a court.

Employee and the Company each agree to pay one half of the reasonable and necessary fees of the AAA and the mediator and/or Arbitrator. The parties will pay their own attorneys' fees and expenses associated with the mediation and/or arbitration. Either party, in its sole discretion, may, in writing, waive, in whole or in part, the other's failure to follow any time limit or other requirement set forth in the Agreement.

To the extent permitted by law, Employee agrees not to initiate or prosecute against the Company any administrative action (including an administrative charge of discrimination to the extent permitted by law) in any way related to any Claim covered by this Agreement.

The mediation and/or arbitration will be conducted in private, and will not be open to the public or the media. The testimony and other evidence presented, and the results of the mediation and/or arbitration, unless otherwise agreed to by both parties, is confidential and may not be disclosed, made public or reported to any person or entity, including, but not limited to, any legal or news agency, publisher or service, except pursuant to a court order, provided that the Company or Employee gives sufficient prior written notice of any judicial proceeding at which a court order is being sought, to enable the other to seek a protective order before disclosure occurs.

The Arbitrator shall render a written decision and the award (the "Award") shall set forth the facts and reasons that support the Award. The Award shall be final and binding on both you and the Company. This Agreement shall survive the termination of your employment, and can only be revoked or modified by a writing signed by the parties which specifically states an intent to revoke or modify the Agreement. This is the complete agreement of the parties on the subject of dispute resolution, mediation or arbitration of disputes.

NOTICE: BY SIGNING THE AGREEMENT, YOU ARE AGREEING THAT ALL CLAIMS WILL BE DECIDED BY NEUTRAL MEDIATION AND/OR ARBITRATION, AND YOU ARE GIVING UP YOUR RIGHT TO A JURY TRIAL OR COURT TRIAL.

| 1/4/00 | _Martin Hitch_ | MARTIN HITCH |
|---|---|---|
| Date | Employee Signature | Employee Name (printed) |

| 1/4/2001 | _R____ | |
|---|---|---|
| Date | Employer Signature | Name (printed) |

Confidential - Attorney's Eyes Only

Exhibit _28_, p. _398_

MGA 0875698



ABC International Traders, Inc.
(dba MGA Entertainment)

## NON-DISCLOSURE AGREEMENT

This Non-Disclosure Agreement ("Agreement") is made and entered into as of December 6, 2000 by and between ABC International Traders, Inc., dba MGA Entertainment ("ABC") and Martin Hitch ("Disclosee").

ABC possesses certain technical and other information relating to its products and business, which information is confidential and proprietary.

Disclosee desires to obtain certain of such information so Disclosee can have discussion with ABC regarding Disclosee entering into a business relationship with ABC.

Now, therefore, ABC and Disclosee hereby agree as follows:

1.  ABC will disclose to Disclosee such of the aforesaid information as ABC deems necessary for said discussions with Disclosee.

2.  Disclosee will (i) hold such information in strict confidence, (ii) not use such information for the benefit of Disclosee (other than in connection with the evaluation whether or not to enter into a business relationship with ABC) or for the benefit of any other individual or entity and (iii) not disclose such information to any other individual or entity.

3.  This Agreement shall not apply to any information which (I) was known to Disclosee prior to its disclosure by ABC to Disclosee as established to documentary proof provided by Disclosee, (ii) is or becomes known to the public through no fault of Disclosee or (iii) is given to the Disclosee by a third party having the right to do so.

4.  If ABC shall so request, Disclosee shall immediately return or destroy, as specified by ABC, all such information and copies thereof in the possession of Disclosee.

5.  In the event of any breach or violation or threatened breach or violation by Disclosee of any of the provisions of this Agreement, ABC shall, in addition to any other rights or remedies, have the right to temporary and permanent injunctive relief from any court of competent jurisdiction, and ABC shall be entitled to all costs and expenses (including attorney's fees) incurred in connection with obtaining such injunctive relief.

6.  This Agreement shall terminate on the date, which is one (1) year after the date first above written.

7.  This Agreement shall be governed by the laws of the State of California.

In Witness Whereof, the parties hereto have executed this Agreement as of the date first above written.

Martin Hitch                                    ABC International Traders, Inc.

By: _____                    By: _____

Date: _____12-6-00._____                        Date: _____12/6/2000_____

Confidential - Attorney's Eyes Only

Exhibit 28, P. 399

MGA 0875699



**Corporate Office:**
16730 Schoenborn Street
North Hills, CA 91343-6122 USA
Tel  818.894.2525
Fax  818.894.8094

December 28, 2000

<u>VIA FACSIMILE (415) 333-4143</u>
Mr. Martin J. Hitch
336 Hazelwood Avenue
San Francisco, CA  94127

Dear Martin:

We are pleased to extend to you an offer of employment at MGA Entertainment.

The terms of this offer are as follows:

| | | |
|---|---|---|
| 1. | **Title:** | Vice President of International Sales |
| 2. | **Base Salary:** | **$130,000** per year ($10,833.33 per month). |
| 3. | **Start Date:** | January 4, 2001 |
| 4. | **Office Location:** | You can work from home office, but must come to Los Angeles for a training session of at least 2 weeks. Thereafter, as needed. |
| 5. | **Supervisor:** | You will report to Isaac Larian, CEO who is currently handling International Sales until June 2001 and thereafter, to the Senior Vice President of Sales. |
| 6. | **Review:** | Your performance will be reviewed in six (6) months by Isaac Larian, and then there will be an annual review of your performance December 2001 by the Senior Vice President of Sales. |
| 7. | **Bonuses:** | **Annual:** The 2001 bonus plan pays up to 30% of base salary.  50% of bonus is based on company's EBIT and 50% is based on your performance in your territory and specific Key Result Areas to be set by your supervisor. Bonus will be paid out no later than March 31, 2002. |
| 8. | **Car Allowance:** | $600.00 per month |
| 9. | **401(k) Plan:** | Will be eligible for enrollment in 401(k) Plan in January 2001.  Company match to your contribution is 25% up to 5%. |
| 10. | **Business Travel:** | The Company will pay for business class tickets for international travel and coach class for domestic travel. |

**MGA Entertainment (HK) Ltd.**
Room 1001, 10/F., Empire Center
68 Mody Road,
Tsimshatsui East,
Kowloon, Hong Kong.
Tel  852.292.68008
Fax  852.231.20101




Confidential - Attorney's Eyes Only

Exhibit _28_, P. _400_

MGA 0875700



Mr. Martin J. Hitch
December 28, 2000
Page 2

| | | |
|---|---|---|
| 11. | **Health Benefits:** | <u>Health Insurance:</u> There is no charge for you (under HMO) and a monthly fee for your dependents. |
| | | <u>Dental Plan:</u> There is no charge for you (under DMO) and a monthly fee for your dependents. |
| | | <u>Long-Term Disability Insurance:</u> You will be eligible for LTD, at no charge to you. |
| | | <u>Life Insurance:</u> 1 x annual income, premium paid by Company. |
| 12. | **Vacation:** | Two weeks paid vacation per year. For a more detailed description of our benefits, please see attached Benefits Overview. |
| 13. | **Non-Competition, Non-Solicitation, Anti-Raiding:** | For a period of one year immediately following the termination of this Agreement, Employee agrees that she will not, either directly or indirectly, attempt to recruit, solicit or take away any of the employees of the Company who worked for the Company at any time during the term of this Agreement, make known to any person, firm or corporation the names or addresses of, or any information pertaining to, any current or former employees of the Company, attempt to take away any customers of the Company or any other persons, entities, or corporations with which the Company has had or contemplated any business transaction or relationship, including, but not limited to, investments, licenses, joint ventures, and agreements for development, or use any information, whether or not such information is proprietary, confidential or a trade secret of the Company, for purposes of entering into any business transaction or relationship with any such customers or other persons, entities or corporations. |
| 14. | **Employee Handbook:** | MGA requires all employees to sign an Employee Handbook, which will be presented to you upon commencement of employment. |
| 15. | **Agreements:** | This offer of employment is contingent upon your signing the attached Confidentiality Agreement, Proprietary Information Agreement, and an Agreement to Arbitrate and Mediate. |

Confidential - Attorney's Eyes Only

Exhibit 28, P. 461



Mr. Martin J. Hitch
December 28, 2000
Page 3

16.     **Stock Options**              You will receive 35,000 shares out of 22,220,000 shares outstanding at option price of $3.00 per share, vested per Company Stock Option Plan.

17.     **Severance Pay:**            The Company agrees to pay severance of sixty days salary (paid out in monthly increments) if employment is terminated without cause.   If employment is terminated for cause, no severance will be paid.  The term "cause" shall mean:

- The criminal indictment of a felony;
- A misdemeanor involving fraud;
- Embezzlement or dishonest conduct;
- Substantial neglect of duties which cause material damage to the business or reputation of the Company;
- Repetitive insubordination or refusal to reply to reasonable written work requests.

This agreement is binding upon Martin J. Hitch and ABC International Traders, Inc. and their respective heirs, successors, assignees, fiduciaries or other legal representatives.

I trust this offer letter addresses all open issues and look forward to an ongoing, productive relationship.

Sincerely,

Isaac Larian, CEO

Confidential - Attorney's Eyes Only

Exhibit 18, P. 462

MGA 0875702

Mr. Martin J. Hitch
December 28, 2000
Page 4
Acceptance

I accept the above offer.

My start date will be _January 4, 2001_

_Martin Hitch_____                    _1/4/01_____
Martin J. Hitch                                Date

Confidential - Attorney's Eyes Only

Exhibit _28_, P. _463_

MGA 0875703

## CONFIDENTIALITY AND INVENTIONS ASSIGNMENT AGREEMENT

This Confidentiality and Inventions Agreement is executed by and between MGA Entertainment, Inc. ("Company") and *Mercedeh Ward* ("Employee").

During the course of his/her employment at the Company, Employee will have access to, will acquire, and will become acquainted with trade secrets, confidential information and property related to the Company and its customers' and vendors' businesses. The Company's trade secrets include, but are not limited to, such information as customer names, addresses, phone numbers, names, specific characteristics of suppliers and customers and their respective employees with whom the Company has dealings (whether or not such information is contained on a Rolodex, computer printout, customer list, or is orally communicated to any Company employee in the course of their duties) and the history of purchases, along with terms and conditions of credit offered to each customer; names, addresses, telephone numbers and specific characteristics of prospective customers and contacts; information regarding particular customer product peculiarities, manners of doing business, needs and requirements; product specifications and performance needs for each customer; and the prices charged to each customer; customer information reports, pricing information (such as price lists, quotation guides, previous or outstanding quotations, equipment prices or billing information), mailing labels, mailing plans and programs, sales report forms, pending projects or proposals, techniques used in approaches or results of any market research, advertising sources, employee salaries, contracts and wage information, names and addresses of the vendors, manufacturers, and other suppliers of Company products, the products they supply, the applicable prices and discounts, and the applicable product specifications; new products or inventions developed or under development by the Company; formulas, patterns, compilations, programs, devises, methods, techniques, processes, pictures, contracts, files, methods or production (including quality control and packaging), proposals, business plans and projections, budgets, financial information, software, hardware, any patent application or the contents thereof; and all other material relating in any manner whatsoever to the customers products, vendors, and suppliers of Company, including matters which should reasonably be considered trade secrets even if not expressly described herein.

All information obtained in the course of Employee's employment is to be used only for the purpose of conducting the Company's business. Employee agrees to never discuss or disclose such trade secrets, confidential information or property, either directly or indirectly, with or in the presence of persons outside the Company, either during employment, or at any time thereafter, except as required by Employee's supervisor. Employee further agrees that information in any form, including but not limited to documents, tapes, lists, computer printouts, studies, reports, drafts, pictures, charts, maps, drawings, programs, equipment, scrap, blueprints, vendor lists, customer lists, client billing information, all financial reports, payroll information, records, files and other materials pertaining to the Company, its customers and vendors, may not be removed from the facilities without the advance written permission of Employee's supervisor.

Employee acknowledges that all such trade secrets or confidential information, or any copies of summaries thereof, whether prepared by Employee, by the Company, or provided to Employee by the Company, is the exclusive property of the Company. On demand or termination of employment for any reason, Employee agrees to return to the Company all papers, records, electronic copies, and documents in Employee's possession or obtained during the course of Employee's employment with the Company and Employee further agrees that he/she will not retain any copies, nor permit anyone to retain any copies thereof, except that those who have successfully completed their 90 day introductory period may keep their Franklin Planner.

Employee acknowledges and agrees that the trade secrets described herein have independent economic value in that they are not generally known within the trade they represent many years of

Exhibit 28, P. 464

research and development and give the Company substantial competitive advantages.

As a condition of employment, Employee agrees that he/she (1) will regard and preserve the confidential information as highly confidential and as the trade secrets of the Company; (2) will not, at any time during or within twelve months after the termination of his/her employment with the Company, reveal, disclose, permit to be disclosed, or make known to any person, firm or corporation, any confidential information which was disclosed to Employee or of which he/she became aware during his/her employment, regardless of whether developed, prepared or created in whole or in part by Employee's efforts, except to the extent that such disclosure is necessary and is authorized in writing by the Company to carry out Employee's duties of employment; (3) will retain all confidential information in trust for the sole benefit of the Company and will not disclose to or use any confidential information in an independent business related to the scope of the Company's business (designer, manufacturer and distributor of toy); (4) will not photocopy or duplicate, and will not permit any person to photocopy or duplicate, any of the confidential information without the Company's written consent and approval; (5) will not make any use of confidential information for his/her own benefit or the benefit of any person or entity other than the Company; (6) will return all confidential information (including but not limited to customer lists, books maintained by Employee, and source lists) to the Company immediately upon request for same.  Employee agrees that if he/she has any questions about whether a matter is a trade secret, to seek a determination by the Company before he/she uses any such information.

Employee agrees to maintain the same level of confidentiality regarding co workers, employee relation matters, and Company operations. Employee agrees, by accepting employment or continued employment with the Company, to comply with these rules and to maintain confidentiality of the Company's trade secrets.

Employee understands and acknowledges that the trade secrets and confidential information of the Company are not known to the general public and are the subject of reasonable efforts to maintain its secrecy. They are of a special, unique and extraordinary character, which gives them a particular value, the loss of which cannot be reasonably compensated in damages in an action at law. Employee further understands and agrees that in addition to any other rights or remedies which the Company may have, the Company shall be entitled to immediate injunctive and other equitable relief to prevent a breach of this Confidentiality and Inventions Agreement. If any legal proceeding arises under this Confidentiality and Inventions Agreement, the prevailing party shall be entitled to recover all costs and expenses, including reasonable attorney's fees and costs. California law shall apply to this agreement as to contracts wholly performed within the state.

Employee and the Company agree that this Confidentiality and Inventions Agreement shall not apply to information that Employee was aware of prior to his/her employment with the Company, or that is otherwise publicly known.

Employee further agrees that during his/her employment and for a period of twelve months after termination, Employee will not solicit the purchase of any products or services from any supplier or vendor who supplies products or services to the Company.

INVENTIONS ASSIGNMENT:

1. ASSIGNMENT OF INTEREST: Employee agrees to assign, and does hereby assign, to Company all interest which employee may have in all patentable and/or not-patentable ideas and/or inventions made or conceived by Employee solely or jointly with others during Employee's employment with Company. This assignment shall not apply to any idea or invention developed by Employee entirely on Employee's own time without equipment, supplies, facilities, or trade secret information of Company, unless such invention or idea: (1) relates to the business of company or to Company's actual or anticipated research or development, or (2) results from any work performed by Employee for Company. THIS AGREEMENT

DOES NOT APPLY TO ANY INVENTION WHICH QUALIFIES FULLY UNDER THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 2870.

2. DISCLOSURE OF IDEAS OR INVENTIONS: Employee agrees to promptly disclose in writing to Isaac Larian all inventions developed solely or jointly with others during Employee's employment with Employer, whether such inventions are patentable, not-patentable or assignable under this Agreement. Employer agrees to maintain such disclosure in confidence.

3. WRITTEN DISCLOSURE OF PRIOR INVENTIONS: Employee agrees to provide a complete list of all patented or not-patented ideas and inventions conceived by Employee or anyone else jointly with Employee, prior to the date Employee has signed this Agreement. The failure of Employee to provide Company with a written disclosure of ideas or inventions shall be deemed to constitute an affirmative acknowledgment by Employee that no such ideas or inventions exist.

If any provision of this Confidentiality and Inventions Agreement is held to be invalid or unenforceable, in whole or in part, the remaining portions of this Agreement shall continue to be valid and will be performed, construed and enforced to the fullest extent permitted by law. The invalid or unenforceable provision shall be deemed amended and limited in accordance with the intent of the parties, as determined from the face of this Agreement, to the extent necessary to permit the maximum enforceability or validation of the provision.

3/7/05 _____   Mercedeh Ward   _____

Date            Employee's Name: Please Print      Employee's Signature


_____   _____   _____

Date            VP, Human Resources Signature        Title

Confidential - Attorney's Eyes Only

Exhibit 28, P. 406

MGA 0875453

## PROPRIETARY INFORMATION AGREEMENT

This Proprietary Information Agreement ("Agreement") is entered into by and between _Merredeth Ward_ ("Employee"), on the one hand, and MGA Entertainment, Inc. (together with its affiliates, and their successors and assigns, the "Company"), on the other hand.

WHEREAS, the Company has offered to employ Employee on certain favorable terms and conditions, which offer is expressly conditioned upon, among other things, Employee's agreement to adhere to, among other things, the various covenants and agreements contained in this Agreement;

WHEREAS, Employee understands the terms and conditions of the Company's employment offer, including its condition that Employee agree to the various covenants and agreements set forth below. In consideration of the Company's employment of Employee and providing Employee with training, compensation and benefits, and business growth and development opportunities, and allowing Employee to have access to the Company's Proprietary Information (defined below), Employee has decided to enter into, and agrees to be bound by, this Agreement.

NOW, THEREFORE, in consideration of the mutual representations, warranties, covenants and agreements set forth below, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Employee and the Company agree as follows:

## AGREEMENT

1.   **CONFIDENTIALITY.**
Employee understands that, by virtue of Employee's employment with the Company, Employee will acquire and be exposed to Proprietary Information of the Company. "Proprietary Information" includes all ideas, information and materials, tangible or intangible, not generally known to the public, relating in any manner to the business of the Company (as defined above), its products and services (including all trade secrets), its personnel (including its officers, directors, employees, and contractors), its clients, vendors and suppliers and all others with whom it does business that Employee learns or acquires during Employee's employment with the Company. Proprietary Information includes, but is not limited to, manuals, documents, computer programs and software used by the Company, users manuals, compilations of technical, financial, legal or other data, salary information, client or prospective client lists, names of suppliers or vendors, client, supplier or vendor contact information, business referral sources, specifications, designs, devices, inventions, processes, business or marketing plans or strategies, pricing information, media rate information, rate structures, information regarding the identity of the Company's directors, advertisers, or media experts, identity data, prototypes, forecasts, financial information, works in progress, and other technical or business information. Proprietary Information does not include basic information that is generally known and used within the Toy Industry.

Employee agrees to hold in trust and confidence all Proprietary Information during and after the period of Employee's employment with the Company. Employee shall not disclose any Proprietary Information to anyone outside the Company without the written approval of an authorized officer of the Company or use any Proprietary Information for any purpose other than for the benefit of the Company as required by Employee's authorized duties for the Company. At all times during Employee's employment with the Company, Employee shall comply with all of the Company's policies or regulations relating to the protection and confidentiality of Proprietary Information. Upon termination of Employee's employment with the Company, (a)

LOS_ANGELES:102871.1 015567.1001

Confidential - Attorney's Eyes Only

MGA 0875454

Employee shall not use Proprietary Information, or disclose Proprietary Information to anyone, for any purpose, unless expressly requested to do so in writing by an authorized officer of the Company, (b) Employee shall not retain or take with Employee any Proprietary Information in a Tangible Form (defined below), and (c) Employee shall immediately deliver to the Company any Proprietary Information in a Tangible Form that Employee may then or thereafter hold or control, as well as all other property, equipment, documents or things that Employee was issued or otherwise received or obtained during Employee's employment with the Company. "Tangible Form" includes ideas, information or materials in written or graphic form, on a computer disc or other medium, or otherwise stored in or available through electronic, magnetic, videotape or other form.

## 2.    NON-SOLICITATION OF CUSTOMERS, CLIENTS AND VENDORS.

Employee acknowledges that, because of the nature of Employee's work for the Company, Employee's solicitation or serving of certain customers, clients and vendors related to Employee's work for the Company would necessarily involve the unauthorized use or disclosure of Proprietary Information, and the proprietary relationships and goodwill of the Company. Accordingly, for one (1) year following the termination of Employee's employment with the Company for any reason, Employee shall not, directly or indirectly, solicit, induce, or attempt to solicit or induce, any person or entity then known to be a customer or client or vendor of the Company, for whom or, on whose behalf, Employee, during the three (3) year period immediately preceding the termination of Employee's employment, (a) performed any work or services, or (b) participated the preparation of a proposal to provide such work or services (a "Restricted Customer/Client/Vendor"), to terminate his, her or its relationship with the Company for any purpose, including the purpose of associating with or becoming a customer, client or vendor, whether or not exclusive, of Employee or any entity of which Employee is or becomes an officer, director, member, agent, employee or consultant, or otherwise solicit, induce, or attempt to solicit or induce, any Restricted Customer/Client/Vendor to terminate his, her or its relationship with the Company for any other purpose or no purpose.

## 3.    NON-SOLICITATION OF PERSONNEL.

During Employee's employment with the Company and for one (1) year thereafter, Employee shall not, directly or indirectly, solicit, induce, or attempt to solicit or induce, any person known to Employee to be an employee of the Company who, directly or indirectly, engages in the Business on behalf of the Company (each such person, a "Company Person"), to terminate his or her employment or other relationship with the Company for the purpose of associating with (a) any entity that engages in the Business of which Employee is or becomes an officer, director, member, partner, principal, agent, employee or consultant, or (b) any competitor of the Company in the Business, or otherwise encourage any Company Person to terminate his or her employment or other relationship with the Company for any other purpose or no purpose.

## 4.    RETURN OF DOCUMENTS AND MATERIALS.

Immediately upon the termination of Employee's employment or at any time prior thereto if requested by the Company, Employee shall return all records, documents, equipment, proposals, notes, lists, files, and any and all other materials, including but not limited to Proprietary Information in a Tangible Form, that refers, relates or otherwise pertains to the Company and its business, including its products and services, personnel, customers or clients (actual or potential), investors (actual or potential), and/or vendors and suppliers (actual or potential), or any of them, and any and all business dealings with said persons and entities (the "Returned Property and Equipment") to the Company at its offices in Los Angeles, California. Employee is not authorized to retain any copies or duplicates of the Returned Property and Equipment that Employee obtained or received as a result of Employee's employment or other relationships with the Company.

LOS_ANGELES:102871.1 015567.1001                            2.

Confidential - Attorney's Eyes Only

Exhibit 28, p. 408

MGA 0875455

### 5. PROPRIETARY INFORMATION OF OTHERS/COMPLIANCE WITH LAWS.
Employee shall not breach any agreement to keep in confidence, or to refrain from using, the nonpublic ideas, information or materials of a third party, including, but not limited to, a former employer or client. Employee shall not bring any such ideas, information or materials to the Company, or use any such ideas, information or materials in connection with Employee's employment by the Company. Employee shall comply with all national, state, local and other laws, regulations and ordinances.

### 6. RIGHTS AND REMEDIES UPON BREACH.
If Employee breaches, or threatens to commit a breach of, any of the provisions of this Agreement, Employee agrees that the Company shall have the right and remedy to have each and every one of the covenants in this Agreement specifically enforced and the right and remedy to obtain temporary and permanent injunctive relief, it being acknowledged and agreed by Employee that any breach or threatened breach of any of the restrictive covenants and agreements contained herein would cause irreparable injury to the Company and that money damages would not provide an adequate remedy at law to the Company. Moreover, if Employee breaches or threatens to commit a breach of this Agreement during Employee's employment with the Company, Employee may be subject to the immediate termination of Employee's employment. In any such action seeking to enforce this Agreement, the prevailing party shall be entitled to recover all reasonable attorneys' fees, costs and expenses, including any expert fees, that were incurred by that party in connection with any such action.

### 7. SEVERABILITY/BLUE-PENCIL.
Employee acknowledges and agrees that (a) the restrictive covenants and agreements contained herein are reasonable and valid in geographic, temporal and subject matter scope and in all other respects, and do not impose limitations greater than are necessary to protect the goodwill, Proprietary Information, and other business interests of the Company; (b) if any court subsequently determines that any of such covenants or agreements, or any part thereof, is invalid or unenforceable, the remainder of such covenants and agreements shall not thereby be affected and shall be given full effect without regard to the invalid portions; and (c) if any court determines that any of the restrictive covenants and agreements, or any part thereof, is invalid or unenforceable because of the duration or scope of such provision, such court shall have the power to reduce the duration or scope of such provision, as the case may be, and, in its reduced form, such provision shall then be enforceable to the maximum extent permitted by applicable law. Employee intends to and hereby confers jurisdiction to enforce each and every one of the covenants and agreements contained herein upon the courts of any jurisdiction within the geographic scope of such covenants and agreements, and if the courts of any one or more of such jurisdictions hold any such covenant or agreement unenforceable by reason of the breadth or scope or otherwise, it is the intention of Employee that such determination shall not bar or in any way affect the Company's right to the relief provided above in the courts of any other jurisdiction within the geographic scope of such covenants and agreements, as to breaches of such covenants and agreements in such other respective jurisdictions, such covenants and agreements as they relate to each jurisdiction being, for this purposes, severable into diverse and independent covenants and agreements.

### 8. CONFIRMATION OF AT-WILL EMPLOYMENT.
*Please see contract 2/2/40*
Employee acknowledges and agrees that: (a) Employee's employment with the Company is and shall be at all times on an at-will basis, and the Company or Employee may terminate Employee's employment at any time, for any reason, with or without cause or advance notice; (b) nothing in this Agreement or in the Company's employee manuals, handbooks or other written materials create or are intended to create an express or implied contract for employment; (c) nothing in the Agreement obligates the Company to hire, retain or promote Employee; (d) all definitions, terms and conditions of this Agreement apply to Employee only for the purposes of this Agreement, and for no other purpose, and do not alter or otherwise effect

LOS_ANGELES:102871.1 015567.1001                3.

Exhibit 28, p. 409

MGA 0875456

the at-will status of Employee's employment with the Company; and (e) no representative of the Company has any authority to enter into any express or implied, oral or written agreements that are contrary to the terms and conditions of this Agreement or to enter into any express or implied contracts for employment (other than for at-will employment) except for the President of the Company and any agreement between Employee and the President must be in writing and signed by Employee and the President.

### 9.  INFORMATION ON COMPANY PREMISES.

Employee acknowledges that, by virtue or Employee's employment with the Company, Employee will have use of the premises and equipment of the Company.   Employee acknowledges and agrees that the Company has the right to review and inspect any such premises and equipment, even if they contain Employee's personal information or materials.

### 10.  GOVERNING LAW.

This Agreement shall be construed, interpreted, and governed in accordance with either (a) the laws of the State of California, regardless of applicable conflicts of law principles, or (b) in the event of a breach of any of the covenants contained in Section 1 through 8, the law of the State where such breach actually occurs, depending on whichever choice of law shall ensure to the maximum extent that the restrictive covenants shall be enforced in accordance with the intent of the parties.

### 11.  ENTIRE AGREEMENT/MODIFICATION/NO WAIVER.

This Agreement (and Employee's and the Company's agreements regarding arbitration and Employee's at will employment status that are set forth in the Company's offer letter, which are incorporated by this reference herein) (a) represent the entire agreement of the parties with respect to the subject matter hereof, (b) shall supersede any and all previous contracts, arrangements or understandings between the parties hereto with respect to the subject matter hereof, and (c) may not be modified or amended except by an instrument in writing signed by each of the parties hereto.  No waiver, delay, omission or forbearance in exercising any right, option, duty or power under this Agreement (or Employee's and the Company's agreements regarding arbitration and Employee's at will employment status that are set forth in the Company's offer letter) shall affect or impair any party's rights with respect to any past or present default or breach of any of provisions of this Agreement or Employee's and the Company's agreements regarding arbitration and Employee's at will employment status that are set forth in the Company's offer letter.   *Contract signed 2/24/09*

### 12.  PARTIES IN INTEREST/ASSIGNMENT/SURVIVAL.

Neither this Agreement nor any of the rights, interests or obligations under this Agreement shall be assigned, in whole or in part, by operation of law or otherwise, by Employee.  The Company may sell, assign, and transfer all of its right, title and interests in this Agreement without the prior consent of Employee, whether by operation of law or otherwise, in which case this Agreement shall remain in full force after such sale, assignment or other transfer and may be enforced by (a) any successor, assignee or transferee of all or any part of the Company's business as fully and completely as it could be enforced by the Company if no such sale, assignment or transfer had occurred, and (b) the Company in the case of any sale, assignment or other transfer of a part, but not all, of the business.  The benefits under this Agreement shall inure to and may be enforced by the Company and any of its subsidiaries, affiliates, successors, transferees and assigns.  Employee's duties and obligations under this Agreement shall survive the termination of Employee's employment by Employee or the Company.

Confidential - Attorney's Eyes Only

Exhibit _28_, P. _410_

MGA 0875457

)                                            )

13.    **VOLUNTARY AGREEMENT/NO INDUCEMENTS.**
The Company and Employee hereby acknowledge and represent that Employee and the Company each (a) has fully and carefully read this Agreement prior to signing it, (b) has been, or has had the opportunity to be, advised by independent legal counsel of Employee's and the Company's own choice as to the legal effect and meaning of each of the terms and conditions of this Agreement, and (c) is signing and entering into this Agreement as a free and voluntary act without duress or undue pressure or influence of any kind or nature whatsoever and has not relied on any promises, representations or warranties regarding the subject matter hereof other than as set forth in this Agreement.

IN WITNESS WHEREOF, the parties hereto have signed this Agreement on the day and year written below.

MGA Entertainment, Inc.

By: _____

Printed Name: _____

Title: _____

Date: _____, 2005

EMPLOYEE

Signature: _____

Name (Please Print):  Mercedeh Ward

Address: _____

Date:  3/7/05 _____, 2005

**REDACTED**

Confidential - Attorney's Eyes Only

Exhibit 28, P. 411

MGA 0875458

**NON-DISCLOSURE AGREEMENT**

THIS AGREEMENT is made by and between MGA Entertainment, Inc. ("Discloser"), a California corporation with offices at MGA Entertainment campus, 16300, 16340 and 16380 Roscoe Blvd. Van Nuys, California and **(Your name here)** _Mercedeh Ward_ , on behalf of **[Company name or Self]** _Self_ , with a principal place of business at _28407 Ridgethorne Ct. R.P.V. CA 90275_ ("Recipient").

**A.**      Confidential Information:  This Agreement provides for the protection of information provided to Recipient by Discloser, being information relating to Discloser's products (whether current or projected), product titles, customers, employees, inventors, programmers, developers, artists, tools and techniques, software algorithms and routines, designs, drawings, schematics and other documentation relating thereto and other confidential and proprietary business information of Discloser and which is expressly labeled or identified to Recipient orally or in writing as "confidential" or which, under the circumstances of such disclosure, Recipient knows, or reasonably should know, are treated by Discloser as confidential (hereinafter collectively referred to as "Confidential Information").  Recipient shall keep in confidence and not disclose to any third party, without the written permission of Discloser, the Confidential Information made known to it under this Agreement.  This requirement of confidentiality shall not apply to any information that (a) is in the public domain through no wrongful act of Recipient; (b) is rightfully received by the Recipient from a third party who is not bound by a restriction of nondisclosure; (c) is already in the Recipient's possession without restriction as to disclosure; (d) was independently developed by Recipient; or (e) is required to be disclosed by operation of law or by order of a court or administrative body of competent jurisdiction, (provided that prior to such disclosure, Discloser shall first receive notice thereof from Recipient and have the opportunity to contest such order or requirement of disclosure or seek appropriate protective order).  The Confidential Information is being made available to Recipient for the limited purpose of evaluating whether to enter into a business relationship with Discloser.  Recipient may disclose the Confidential Information only to those of its employees of Recipient who need to know such information to effectuate the purposes of this Agreement and only to the extent necessary for such purpose; no disclosure may be made to any parent, subsidiary or affiliated companies of Recipient. Any agreement which maybe undertaken by the parties after Recipient's evaluation of the Confidential Information shall be the subject of a separate negotiation and agreement between the parties with respect thereto.

**B.**      Ownership: Recipient agrees and acknowledges that all Confidential Information shall be and remain the sole property of Discloser. Nothing contained in this Agreement shall be construed as granting to Recipient any right, title or interest of any kind, by license or otherwise, to the Confidential Information, the intellectual property therein or any part or copy thereof. Recipient further acknowledges and agrees that, nothing contained herein shall be construed as granting Recipient any right to develop, manufacture, produce and/or distribute any product(s) derived from or which otherwise uses any of the Confidential Information, or authorize or in any way assist others to do so.  Recipient may not make, sell, license or distribute copies of the Confidential Information and may not sublicense, transfer or assign in any manner whatsoever this Agreement or any of Recipient's rights or obligations under this Agreement.

**C.**      Termination: This Agreement is effective until terminated by either party on written notice to the other. Upon such termination, all copies of Confidential Information in tangible form, including without limitation any all computer software files, which are in Recipient's possession (or in the possession of any consultant who has received such Confidential Material from Recipient or any of Recipient's agents or employees) will be promptly returned to Discloser and Recipient agrees that it shall thereafter retain no photocopies, backup copies, or other reproductions or transcriptions of any portion of the Confidential Information.

**D.**      Injunction:  Recipient acknowledges that its failure to perform any of the terms or conditions of this Agreement shall result in immediate and irreparable damage to Discloser.  Recipient also acknowledges that there may be no adequate remedy at law for such failures and that in the event thereof Discloser shall be entitled to equitable relief in the nature of injunction and to all other available relief, at law and/or in equity.

MGA Entertainment, Inc. -- Non-Disclosure Agreement 072104DGO

Confidential - Attorney's Eyes Only

MGA 0875459

G.    Miscellaneous:

1.    This Agreement sets forth the entire understanding between the parties hereto relating to the subject matter hereof and cannot be changed, modified, amended or terminated except by an instrument in writing executed by both Recipient and Discloser.  The headings and captions used herein are inserted for convenience of reference only and shall not affect the construction or interpretation of this agreement.

2.    No waiver shall excuse the performance of any act other than those specifically referred to therein and shall not be deemed or construed to be a waiver of such terms or conditions for the future or any subsequent breach thereof.  Except as otherwise provided in this agreement, all rights and remedies herein or otherwise shall be cumulative and none of them shall be in limitation of any other right or remedy.

3.    This Agreement does not constitute a partnership or joint venture between the parties hereto.  Neither party shall have any right to obligate or bind the other in any manner whatsoever, and nothing herein contained shall give or is intended to give any rights of any kind to any third persons.

4.    This Agreement shall be governed by the laws of the State of California applicable to contracts made and to be wholly performed in the State of California (without regard to choice of law).  Any claim, dispute or disagreement in respect of this Agreement may be brought only in Los Angeles County California either in the courts of the State of California or the federal courts located in Los Angeles County, which courts shall have exclusive jurisdiction thereof.  In the event of litigation between the parties arising out of or relating to this Agreement, the prevailing party will be entitled to recover court costs and reasonable fees of attorneys, accountants and expert witnesses incurred by such a party in connection with such action.

5.    If any provision of this Agreement is or becomes or is deemed invalid, illegal or unenforceable under the applicable laws or regulations of any jurisdiction, either such provision will be deemed amended to conform to such laws or regulations without materially altering the intention of the parties or it shall be stricken and the remainder of this Agreement shall remain in full force and effect.

| | |
|---|---|
| _____ | MGA ENTERTAINMENT, INC. |
| ("Recipient") | ("Discloser") |
| | |
| Signature: _Mercedeh Ward_ | Signature: _____ |
| | |
| Print Name: _Mercedeh Ward_ | By _____ |
| | |
| Company: _____ | Title _____ |
| | |
| Date: _3/7/05_ | Date: _____ |

MGA Entertainment, Inc. -- Non-Disclosure Agreement 072104DGO

Confidential - Attorney's Eyes Only

Exhibit 28, P. 413

MGA 0875460

## INDEPENDENT CONTRACTOR / CONSULTING AGREEMENT

Name of Contractor:      Mercedeh Ward
Taxpayer Identification No.:
Address:

E-mail Address:
Telephone:

**THIS INDEPENDENT CONTRACTOR / CONSULTING AGREEMENT** (the "Agreement") is made and entered into as of August 6, 2005 by and between MGA ENTERTAINMENT, INC., a California corporation ("MGA"), and MERCEDEH WARD ("Ward") (collectively referred to as "the Parties" and individually as a "Party").

**WITNESSETH:**

**WHEREAS,** MGA has employed Ward as Senior Director of Product Development Girls & Pre-School at its principal executive offices located in Van Nuys, California, pursuant to an Employment Agreement entered into as of March 7, 2005 ("the March 2005 Agreement");

**WHEREAS,** Ward previously advised MGA that she wished to resign her employment under the March 2005 Agreement in order to relocate from California to Colorado with her family;

**WHEREAS,** the Parties agreed that Ward's last day as a regular full time employee of MGA under the March 2005 Agreement would be August 5, 2005;

**WHEREAS,** the Parties agree that as of 12:00 AM on August 6, 2005, the terms and obligations set forth under this present Agreement shall supersede and replace the March 2005 Agreement, except that the Arbitration Agreement entered into between the Parties under the March 2005 Agreement shall remain in full force and effect for the term of this Agreement, as set forth below;

**WHEREAS,** the Parties agree that as of August 6, 2005, Ward acknowledges that she has received all compensation due to her pursuant to the March 2005 Agreement, including all accrued but unpaid salary, benefits, expense reimbursements or other compensation (including applicable vacation pay) to which she is entitled through August 5, 2005, her effective date of resignation;

**WHEREAS,** MGA desires to retain the services of Ward as a consultant and independent contractor, and Ward desires and agrees to provide services to MGA on a project by project basis for the term of this Agreement, as an independent contractor and consultant on projects, including but not limited to work by Ward on and related to MGA's current doll project known as "Dream Baby."

**NOW, THEREFORE,** in consideration of the promises and the mutual covenants and agreements set forth herein, MGA and Ward, intending to be legally bound hereby, agree as follows:

1

Independent Contractor/Consulting Agreement

Confidential - Attorney's Eyes Only

Exhibit 28, p. 414

MGA 0875461

REDACTED

1.    <u>Retention As Consultant/Independent Contractor</u>:   MGA hereby retains Ward to provide her services to consult with MGA and advise it as an independent contractor.

(a)     The Parties intend that the relationship created by this Agreement shall be that of service recipient and consultant/independent contractor.  In this regard, Ward shall retain the exclusive right to accept or decline projects offered to her by MGA.

(b)     For all purposes, including but not limited to the Federal Insurance Contributions Act ("FICA"), the Social Security Act, the Federal Unemployment Tax Act ("FUTA"), income tax withholding requirements, and all other federal, state and local laws, rules and regulations, Ward, and Ward's respective employees, if any, shall be treated as independent contractors and not as employees of MGA.

2.    <u>First Priority</u>:  It is understood and agreed that when providing work or performing services pursuant to this Agreement, Ward shall provide such services to MGA on a "first priority" basis, as her services pertain to other clients of Ward.

3.    <u>Location And Method Of Performance</u>:  MGA agrees that Ward shall provide her services to MGA from her place of residence, which shall be Aurora, Colorado.  Ward will determine the method, details and means of performing the above-described services. MGA shall have no right to, and shall not, control the manner or determine the method of accomplishing Ward's services.  However, Ward and any persons employed by her shall be expected to take direction from and be under the supervision of such person(s) as may be reasonably designated by MGA from time to time, which, in the case of the "Dream Baby" project, shall be Karen Bonde, in-house project manager at MGA's Van Nuys, California location (or such other employee as may be designated hereafter by MGA), with Ward being requested to consult with regard to the engineering and design of said doll project, the final version of which, including the scope and extent of any on-going consulting services requested of Ward on said project, shall be within MGA's absolute discretion.  In addition, Ward acknowledges and agrees that for any work or project that she accepts, she must perform the work assigned by MGA, whether on the "Dream Baby" project or otherwise, according to the applicable standards regarding services to be performed and that MGA is not obligated to use her services or to exploit the results and proceeds thereof, and that its sole obligation is to pay Ward the applicable compensation set forth in Section 11 for the services rendered and work performed hereunder.  MGA will provide Ward with specifications for any project and for any stage of any project for which Ward accepts to render consulting services under this Agreement, which specifications shall be subject to MGA's absolute, discretionary approval at each stage of creation and production.

4.    <u>Term Of Agreement</u>:  The term of this Agreement shall commence on the date of this Agreement and shall end on the earlier of (i) March 6, 2006, or (ii) the effective date of termination pursuant to Section 6 hereof ("the Term").   However, by mutual written agreement, MGA and Ward may agree to an earlier or later expiration date of the Term.  Any extension of the Term is either per the same terms and conditions of this Agreement or per the terms and conditions of a new independent contractor/consulting agreement to be negotiated and agreed upon by MGA and Ward.

2

Independent Contractor/Consulting Agreement

Confidential - Attorney's Eyes Only

Exhibit 28, P. 415

MGA 0875462

5.   **No Conflicting Duties:**

(a)    During the Term of this Agreement, Ward shall immediately inform MGA of any conflicts of interests that may arise.  Ward hereby confirms that she is under no contractual commitments inconsistent with her obligations set forth in this Agreement and that, during the Term, she will not engage in any business activity or render or perform services, or enter into any contract to do so, for any other corporation, firm, entity or person which are inconsistent with the provisions of this Agreement.  During the Term of this Agreement, Ward will not provide consulting services to any person, firm or corporation engaged in the design, development and/or manufacture, distribution and sale of similar dolls or similar products to those on which Ward agrees to work and for which she agrees to render consulting services for MGA or that was generated or initiated as a result of Ward's performance of services for MGA.  Ward further agrees that she will not, directly or indirectly, assist or encourage any employee of MGA, or any other person or entity, in carrying out, directly or indirectly, any activity which is inconsistent with or contrary to the provisions of this Agreement or that would be specifically prohibited by this Agreement, if such activity were carried out by Ward.  MGA agrees that Ward may perform services for others, so long as the performance of these services does not interfere or conflict with Ward's obligations under this Agreement, including obligations in relation to the safeguarding of MGA's confidential and Proprietary Information, as detailed in Section 20 hereunder.

(b)    Ward understands that the provisions in this Agreement have been carefully designed to restrict her activities to the minimum extent that is consistent with law and to protect MGA's legitimate business interests regarding the protection of its confidential and Proprietary Information including, principally, its trade secrets.  Ward has carefully considered these restrictions and confirms that they will not (i) unduly restrict her ability to obtain a livelihood or (ii) impair her ability to engage in her chosen business, trade or profession whatsoever.

6.   **Termination:**  This Agreement shall automatically terminate upon the expiration of the Term or, if earlier, on forty-five (45) days written notice by MGA or by Ward, or upon the death or "disability" of Ward.  "Disability," for purposes of this Agreement, shall mean the disability or incapacitation of Ward for a period of two (2) weeks or longer which renders her unable to perform her duties on a project on which she has agreed to work and for which she is then rendering consulting services under this Agreement.  This Agreement also shall terminate without any continuing obligation (except for any consulting services to be performed through the date of such termination) forty-five (45) days after a written termination notice from one of the Parties.  In the case of a material breach of this Agreement by one Party, the other Party shall have the right to terminate this Agreement with no advance notice if, after providing the breaching Party with notice of the breach, the breaching Party fails to cure the breach within three (3) days after receipt of the written notice of breach.

7.   **Right To Engage Assistants:**  It is understood and agreed that Ward may retain third party contractors ("Contractors") to assist her, at her direction, in the services to be rendered hereunder for MGA, subject to MGA's prior written consent, including its right to approve such Contractors.  Such third parties shall be compensated in a manner to be determined between Ward and such third parties and shall be subject to the terms of this Agreement.  Ward shall be solely responsible for paying all compensation owed to any Contractors Ward engages, and for paying, and/or withholding and remitting to the appropriate government agency, any

3

Independent Contractor/Consulting Agreement

applicable employment taxes that might be owed with respect to this compensation to such Contractors. Ward also shall indemnify and hold MGA harmless against any and all liabilities attributable to the obligations imposed under this Section. Ward has the ability to hire assistants, but is responsible for ensuring that any such Contractors comply with all requirements of MGA, including the confidentiality obligations with respect to confidential and Proprietary Information, as set forth in Section 20 hereunder. Should Ward hire such Contractors, Ward shall use a form approved by MGA conforming to the terms of this Agreement and confirming MGA's ownership of all results and proceeds of the services provided by any such Contractors. Ward agrees to provide MGA with executed copies of all such forms.

**8.    No Training**: MGA enters into this Agreement based on Ward's demonstrated ability to perform the type of services that MGA believes, and that Ward has represented, are needed to accomplish the projects assigned to Ward by MGA. Consequently, MGA does not contemplate providing Ward with any training with respect to any work performed hereunder. MGA will communicate to Ward the standards and specifications for all work performed hereunder.

**9.    No Benefits**: None of the benefits that MGA provides to its employees shall be available to Ward or Ward's employees, if any, except as expressly set forth herein. Ward's exclusion from benefit programs maintained by MGA is a material component of the terms of compensation negotiated by the Parties, and is not premised on any characterization of Ward's status with MGA. To the extent that Ward may become eligible for any benefit programs maintained by MGA, regardless of the timing of or reason for eligibility, Ward hereby waives the right to participate in any such programs. Ward's waiver is not conditioned on any representation or assumption concerning Ward's status under the common law test. Ward also agrees that, consistent with independent contractor status, she will not apply for any government-sponsored benefits that are intended to apply to employees, including, but not limited to, unemployment benefits. Notwithstanding the foregoing, Ward shall be entitled to all COBRA benefits provided by MGA to regularly departing employees.

**10.    Tax Reporting And Related Matters**: Ward acknowledges and agrees that she shall be responsible, as a self-employed individual, for filing all tax returns, tax declarations, and tax schedules, and for the payment of all taxes required, when due, with respect to any and all compensation earned by Ward under this Agreement. Specifically, the Parties agree that:

(a) No taxes or other withholdings shall be deducted from any compensation paid to Ward by MGA. MGA shall issue a Form 1099 to Ward for the services rendered under this Agreement. Ward shall be solely responsible for all taxes and withholdings required by applicable law with respect to any and all monies she receives pursuant to this Agreement.

(b) Ward acknowledges and agrees that MGA has made no representations to her regarding the tax consequences of any amounts received by her pursuant to this Agreement and that any monies earned hereunder may be considered taxable income and subject to disclosure to the appropriate taxing authorities. Ward shall pay federal, state or other taxes and assessments which are required by applicable law to be paid with respect to all compensation and any other payments under this Agreement. Ward further agrees to indemnify and hold MGA harmless from any claims, demands, deficiencies, levies,

4

Independent Contractor/Consulting Agreement

Exhibit 28, P. 417

MGA 0875464

assessments, executions, judgments or recoveries by any governmental entity against MGA for any amounts claimed due on account of this Agreement or pursuant to claims made under any federal, state or other tax or other laws, and any costs, expenses or damages sustained by MGA by reason of any such claims, including any amounts paid by MGA as taxes, attorneys' fees, deficiencies, levies, assessments, fines, penalties, interest or otherwise.

(c)  MGA will not withhold FICA (Social Security) from Ward's payments;

(d)  MGA will not make state or federal unemployment insurance contributions on behalf of Ward;

(e)  MGA will not withhold state or federal income tax from payments to Ward;

(f)  MGA will not make disability insurance contributions on behalf of Ward; and

(g)  MGA will not obtain workers' compensation insurance on behalf of Ward.

**11.   Compensation**:  Ward's compensation pursuant to this Agreement shall be sixty-five ($65) dollars per hour for work performed or services provided hereunder.   Ward's compensation shall be payable within two (2) weeks after submission of the invoice for each respective job (or portion of the project) that was performed, and shall be paid on a regular basis in accordance with MGA's normal procedures and policies with respect to the payment of vendors.  MGA also agrees to reimburse Ward for all pre-approved costs and expenses, including travel, courier and other project related expenses, incurred by Ward, consistent with MGA's customary practices and in accordance with its policies.  In this regard, for all work on projects for which Ward agrees to render consulting services under this Agreement, Ward agrees to submit a budget of anticipated costs and third party expenses, if any, to MGA and shall thereafter provide MGA with invoices for all costs and expenses incurred in connection with such work.  Invoices must be submitted within two weeks of the date any such cost or expense is incurred by Ward and shall be accompanied by the requisite substantiating back-up documentation.  Ward acknowledges and agrees that MGA has no obligation to offer Ward any work or any minimum level of work or number of hours under this Agreement and that it has not done so.  Ward further acknowledges and agrees that all work offered by MGA shall be on an "as needed" basis.

**12.   Records**:  Ward will keep complete, accurate and authentic accounts, notes, data and records of all work, services and/or inventions, in the manner and form requested by MGA. Such accounts, notes, data and records shall be the property of MGA, and, upon its request, Ward will promptly surrender and transfer the same to MGA.

**13.   Surrender Of MGA Records And Property**:  Upon termination of this Agreement, or upon request of MGA, Ward shall deliver promptly to MGA, at its Van Nuys, California facility (or at such other location as may hereafter be designated in writing by MGA), all equipment, records or other property belonging to MGA which may be in her possession.  The return of all MGA records and property described above shall be made within five (5) business days after (a) the expiration of the Term of this Agreement or (b) the termination of this Agreement by Ward or MGA pursuant to Section 6 hereof.

5

Independent Contractor/Consulting Agreement

Confidential - Attorney's Eyes Only

Exhibit 28, P. 418

MGA 0875465

14.    **Liability Insurance**: During the Term of this Agreement, Ward shall carry, at her own expense, bodily injury, property damage and comprehensive liability insurance to cover any and all liability, loss and/or damages arising out of, relating to or resulting from the performance of the services contracted for under this Agreement. Additionally, Ward assumes full responsibility for maintaining adequate workers' compensation and disability insurance coverage for herself and for any of her employees, agents or assistants during the term of this Agreement. Ward shall furnish proof of such insurance to MGA upon request and/or before any work commences under this Agreement.

15.    **Equipment And Tools**: Ward is responsible for the purchase and maintenance of Ward's own equipment and/or any equipment to be used by any Contractors employed by Ward pursuant to Section 7 of this Agreement. Ward is not required to purchase or rent any tools, equipment or instrumentalities from MGA.

16.    **Manner, Time And Location**: If and when Ward chooses to accept a project or other work with MGA, Ward will be required to complete the assigned project within the period specified by MGA and/or MGA's Project Manager in Van Nuys, California assigned to oversee the relevant work or project. If a specific delivery date is set by MGA and agreed to by Ward for any project, delivery by Ward of the final and completed version of such work, on or before the specified delivery date, is of the essence. Ward agrees to provide periodic reports, as required by MGA, detailing progress on the project or other work or services performed hereunder.

17.    **Agreement To Cooperate**: MGA agrees to comply with all reasonable requests of Ward and to provide her with access to all documents and other instrumentalities reasonably necessary to the performance of Ward's duties under this Agreement. Further, as a material condition to which Ward agrees in consideration for this Agreement, Ward expressly acknowledges and agrees that she will cooperate in any litigation involving MGA to which she is a party or in which she may be a witness or as to which she may have relevant information. Ward further expressly agrees that she will make herself available and assist MGA as necessary in any such litigation. For any extensive time anticipated to be spent on such matters, Ward will be compensated for her time at a mutually agreed upon rate.

18.    **No Disparagement**: During the Term of this Agreement and thereafter, Ward shall not make any oral or written statements that are disparaging of MGA or its parent or subsidiary corporations, their affiliates, or any of its or their respective present or former officers, directors, agents, employees and successors or assigns.

19.    **Confidentiality Of Agreement**: MGA and Ward covenant and agree that neither they nor their attorneys or representatives shall reveal to anyone, except to accountants for income tax and audit purposes, other attorneys for purposes of enforcement of this Agreement, or federal, state or local authorities upon request, any of the terms of this Agreement, except as may be mutually agreed upon by the Parties in writing or otherwise required by law or court order.

6

Independent Contractor/Consulting Agreement

Confidential - Attorney's Eyes Only

Exhibit 28, P. 419

MGA 0875466

20.    **Confidential And Proprietary Information**:

(a)    During the term of this Agreement, Ward understands that, by virtue of her relationship with MGA, she will acquire and be exposed to confidential and Proprietary Information of MGA, its clients, vendors, suppliers and independent contractors and she may have access to MGA's proprietary and confidential internal records, systems and methods of operating its business.  Confidential and "Proprietary Information" covered by this Agreement includes all ideas, information and materials, tangible or intangible, and know-how not generally known to the public that Ward learns or acquires during her work for MGA, relating in any manner to the business of MGA and its parent, subsidiary and affiliated corporations and entities, and its and their confidential and proprietary products and services (including all trade secrets), its and their specialized personnel, clients, vendors, suppliers and independent contractors and all others with whom they do business, as well as information protected by the attorney-client privilege (to the extent it reflects communications to, from or with MGA's counsel) or attorney work product (to the extent that it constitutes work done by, with or at the request of MGA's counsel in anticipation of its use at trial). Such Proprietary Information includes, but is not limited to, manuals, documents, computer programs and software used by MGA, user manuals, compilations of technical, financial, legal or other data, salary information, client or prospective client lists, names of suppliers or vendors, client, supplier or vendor contact information, customer contact information, business referral sources, specifications, designs, devices, inventions, processes, business or marketing plans or strategies, pricing information, information regarding the identity of MGA's designs, mock-ups, prototypes, and works in progress, all other research and development information, forecasts, financial information, price lists, customer lists, trade secrets and all other technical or business information. Proprietary Information does not, however, include (i) information that is in the public domain or already known to third parties which was not derived from or disclosed to such parties as a result of a violation of a non-disclosure agreement or unauthorized disclosure of MGA's Proprietary Information or (ii) basic information that is generally known and used in the industry involving the design, development and/or manufacture and sale of dolls or similar products.

(b)    Ward agrees that all such Proprietary Information is the exclusive property of MGA, irrespective of whether such information was created by Ward or others.  Ward agrees to hold in trust and confidence all Proprietary Information during and after the Term of this Agreement.  Ward shall not disclose any Proprietary Information to anyone outside MGA without the written approval of an authorized officer of MGA or use any Proprietary Information for any purpose other than for the benefit of MGA as required by Ward's authorized services for MGA.  At all times during Ward's relationship with MGA, Ward shall comply with all of MGA's policies or regulations relating to the protection and confidentiality of Proprietary Information.

(c)    Upon termination of Ward's service to MGA on any one or more of the projects assigned to her hereunder *or* termination of this Agreement, (1) Ward shall not use Proprietary Information, or disclose Proprietary Information to anyone, for any purpose, unless expressly requested to do so in writing by an authorized officer of MGA, (2) Ward shall not retain or take with her, or convey to any  third parties, any Proprietary Information in a Tangible Form (defined below), and (3) Ward shall immediately deliver to MGA any Proprietary Information in a Tangible Form that Ward may then or thereafter hold or control,

7

Independent Contractor/Consulting Agreement

Exhibit 28, P. 420

as well as all other property, equipment, documents or things that Ward was issued or otherwise received or obtained during Ward's service to MGA. "Tangible Form" includes ideas, prototypes, samples, mock-ups, information or materials in written or graphic form, on a computer disc (including computer hard drives, floppy discs, network servers, DVDs, flash memory cards, zip drives and compact discs) or other medium, or otherwise stored in or available through electronic, magnetic, videotape or other form. The parties agree that this paragraph shall survive the termination of this Agreement.

**21.   Non-Solicitation:**

(a)   Ward acknowledges that, because of the nature of her work for MGA, both under the March 2005 Agreement and hereunder, Ward's solicitation of or serving MGA's customers, clients or vendors could involve the unauthorized use or disclosure of Proprietary Information, and the proprietary relationships and goodwill of MGA. Accordingly, during the Term and for one (1) year following the termination of this Agreement (whether voluntary or involuntary, or for any reason), Ward shall not, directly or indirectly, solicit, induce, or interfere with, or attempt to solicit, induce or otherwise interfere with, any person or entity then known to be a customer, client or vendor of MGA to terminate his, her or its relationship with MGA for any purpose, including the purpose of associating with or becoming a customer, client or vendor of Ward, whether or not exclusive, or of any entity of which Ward is or becomes an officer, director, agent or employee.

(b)   Ward agrees that during the Term of this Agreement, and for one (1) year following the termination of this Agreement (whether voluntary or involuntary, or for any reason), she shall not, either directly or indirectly, on her own behalf or in the service or on behalf of others solicit or divert, or attempt to solicit or divert (i) any person then employed by MGA or (ii) any person then serving as a managerial level employee of, or a consultant to, or designer for, MGA.

**22.   Intellectual Property; Ownership of Such Intellectual Property:**

(a)   As a material condition to which Ward agrees in consideration for this Agreement, Ward expressly acknowledges and agrees that it is the intent of the Parties hereto that MGA shall own all rights, including copyrights, patents and other proprietary rights, to all materials created or worked on by Ward hereunder. Ward acknowledges and agrees that her work and all services rendered by her in connection with the projects or work performed hereunder will be rendered on behalf of MGA and will constitute work done at MGA's direction that has been (or, in connection with future projects assigned by MGA and accepted by Ward, that will be) specially ordered or commissioned by MGA, and that all such services and the results and proceeds thereof, including, without limitation, all materials of whatever nature created by Ward, will be the exclusive property of MGA and will be considered "works made for hire" specially ordered or commissioned by MGA. In this regard, it is hereby acknowledged and agreed by Ward that all discoveries, inventions, processes, designs, plans and trade secrets, whether of a technical nature or not, made or developed by Ward alone or in conjunction with any other person or entity (including any Contractors described in Section 7 of this Agreement), while accomplishing the projects or work performed hereunder, including all additions, deletions, alterations or revisions thereto, and all elements or ideas contained in such projects or work, including but not limited to all drafts, notes, concepts, suggestions and

Independent Contractor/Consulting Agreement

8

approaches related thereto or contained therein, and all results and proceeds thereof ("Intellectual Property"), shall be the sole and exclusive property of MGA. Ward expressly agrees to disclose and reveal to MGA all Intellectual Property, and all information regarding Intellectual Property, concurrent with the discovery or development of such Intellectual Property.

(b)    It is agreed by Ward that, as between herself and MGA, MGA shall be considered the author of the Intellectual Property and shall own all the rights in and to the Intellectual Property. In this regard, MGA shall be considered the sole author and owner of all rights in the Intellectual Property, including all copyrights, patents and other proprietary rights therein, and shall have the exclusive right to seek protection therein and thereof, including the right to register or assert exclusive ownership of the copyrights, patents and other proprietary rights in MGA's name or in the name of its nominee. Ward agrees that during the term and after the termination of the Agreement, she shall assist MGA in obtaining and maintaining, for MGA's benefit, copyright or patent registrations or other relevant legal protections in such Intellectual Property and Ward shall execute, and shall cause any such Contractors described in Section 7 of this Agreement to execute, such further instruments as MGA may reasonably require as evidence of MGA's ownership of such rights.

(c)    To the extent any of MGA's rights in the Intellectual Property, in whole or in part, do not vest in MGA as "works made for hire", Ward hereby irrevocably grants, assigns, and transfers to MGA all of her right, title and interest in and to the Intellectual Property and the results and proceeds thereof including, without limitation, all right, title and interest in (i) all copyrights, patents and other proprietary rights therein and all renewals and extensions thereof in the United States of America and in all other countries throughout the world; (ii) all versions and derivative works of the Intellectual Property and all copyrights, patents and other proprietary rights in and to such other versions, derivative works, and all renewals and extensions thereof in the United Sates of America and in all other countries throughout the world; and (iii) all causes of action for infringement of the copyright, patent and other proprietary rights and of all other rights of whatsoever nature, vested or contingent, past, present and future, in and to the Intellectual Property and/or the project on which Ward is rendering services and performing work, and all of the proceeds from the foregoing, accrued and unpaid and hereafter accruing. For this purpose, Ward hereby appoints MGA to act as her Attorney-in-Fact for the limited purpose of effecting this assignment and executing all documents necessary to effect this assignment. This power of attorney is coupled with an interest and is irrevocable. Ward acknowledges and agrees that the compensation paid to hereunder includes consideration for this grant, assignment and transfer, and further acknowledges the adequacy and sufficiency of the consideration therefor.

(d) MGA shall have the sole and exclusive right throughout the universe, in all languages, in perpetuity, to use, re-use, copy and exploit all or any part of the services rendered or work done by Ward hereunder, as well as the Intellectual Property and any proceeds thereof, and all or any part of any material contained therein or prepared therefor, whether or not used therein, in any format or version, by any means and in any media, whether now or hereafter known or developed, each without further payment or consideration. Without limiting the foregoing, Ward hereby waives any and all claims that she may now or hereafter have in any jurisdiction to so-called "moral rights" or rights of "droit moral" with respect to the results and proceeds of her work and services hereunder, including in and to the Intellectual Property.

Independent Contractor/Consulting Agreement

Confidential - Attorney's Eyes Only

Exhibit 28, P. 422

MGA 0875469

(e) Ward understands and agrees that she may not use the Intellectual Property or any of the elements or ideas contained therein or in the services rendered or work done by Ward hereunder (including but not limited to all drafts, prototypes, samples, mock-ups, notes, concepts, suggestions and approaches related thereto) for any other purpose, or recreate the same for any other person or entity, and that she may not re-use or copy any such proprietary elements or ideas or the project or work done for MGA hereunder or convey information about the same or disclose any Intellectual Property owned by MGA to benefit a competitor, customer, individual or other entity, without the express written permission of MGA.

## 23.    Acknowledgement Of Restrictive Covenants; Enforceability:

(a)    Ward acknowledges MGA's right and remedy to have each and every one of the restrictive covenants and agreements contained herein specifically enforced and the right and remedy to obtain injunctive relief, it being agreed that any breach or threatened breach of any of the restrictive covenants and agreements in this Agreement would cause irreparable injury to MGA, its parent and subsidiary corporations, and its and their affiliates, successors or assigns, and that money damages would not provide an adequate remedy to MGA, its parent and subsidiary corporations, and its and their affiliates, successors or assigns.

(b)  Ward acknowledges and agrees that the restrictive covenants and agreements contained herein are reasonable and valid in geographic and temporal scope and in all other respects, and do not impose limitations greater than are necessary to protect the goodwill, confidential and proprietary information and other business interests of MGA.  If, however, any court subsequently determines that any of such covenants or agreements, or any part thereof, is invalid or unenforceable, the remainder of the restrictive covenants and agreements shall not thereby be affected, and shall be given full effect without regard to the invalid portions.

(c)  If any court determines that any of the restrictive covenants and agreements contained herein, or any part thereof, is unenforceable because of the duration or geographic scope of such provision, such court shall have the power to reduce the duration or scope of such provision, as the case may be (but only to the extent necessary to make such provision enforceable), and, in its reduced form, such provision shall then be enforceable to the maximum extent permitted by applicable law.

(d)  Ward intends to and hereby confers jurisdiction to enforce each and every one of the restrictive covenants and agreements contained herein upon the courts of any jurisdiction within the geographic scope of such covenants and agreements.  If the court or any one or more of such jurisdictions holds that any such covenant or agreement is  unenforceable for any reason, it is the intention of the Parties that such determination shall not bar or in any way affect the right of MGA, or of its parent and subsidiary corporations, and its and their affiliates, successors or assigns, to the relief provided above in the courts of any other jurisdiction within the geographic scope of such covenants and agreements, as to breaches of such covenants and agreements in such other respective jurisdictions, with such covenants and agreements being, as they relate to each jurisdiction, and for this purpose, severable into diverse and independent covenants and agreements.

Independent Contractor/Consulting Agreement

Confidential - Attorney's Eyes Only

Exhibit _28_, P. _423_

MGA 0875470

**24.    Release Of Claims By Ward Against MGA**:  As a material inducement for MGA to enter into this Agreement, Ward hereby forever releases and discharges MGA, any parent, subsidiary and/or affiliated corporations and entities, and its and their respective past and present officers, directors, managers, employees, agents, contractors, consultants, attorneys, successors and assigns (collectively, "Released Parties") from any and all claims, charges, complaints, demands, causes of action, obligations, damages and liabilities, known or unknown, suspected or unsuspected, that Ward may have had, may now have, or may hereafter claim to have against the Released Parties, arising out of or relating in any way to Ward's prior employment with, or resignation from MGA or otherwise relating to any of the Released Parties from the beginning of time through August 5, 2005, Ward's date of resignation as an employee of MGA under her March 2005 Agreement.  This release specifically extends to, without limitation, claims or causes of action for wrongful termination, impairment of ability to compete in the open labor market, breach of an express or implied contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, fraud, misrepresentation, defamation, slander, infliction of emotional distress, discrimination, harassment, retaliation, disability, loss of future earnings, and claims under the California Constitution, the United States Constitution, and applicable state and federal fair employment laws, federal equal employment opportunity laws, and federal and state labor statutes and regulations, including, but not limited to, the Civil Rights Act of 1964, as amended, the Fair Labor Standards Act, as amended, the Worker Retraining and Notification Act of 1988, as amended, the Americans With Disabilities Act of 1990, as amended, the Rehabilitation Act of 1973, as amended, the Age Discrimination in Employment Act of 1967, as amended, the Employee Retirement Income Security Act of 1974, as amended, the California Fair Employment and Housing Act, as amended, the California Business and Professions Code, as amended, the California Labor Code, as amended, and all other applicable state and federal laws. Ward specifically waives and releases her right, if any, to recover any monetary or other benefits of any sort whatsoever arising from her former position with MGA.  However, nothing in this Agreement shall be construed as a release of MGA's obligations under this Agreement.

Ward expressly waives all rights afforded by Section 1542 of the Civil Code of the State of California ("Section 1542") with respect to the Released Parties.  Section 1542 states, as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Notwithstanding the provisions of Section 1542, and for the purpose of implementing a full and complete release, Ward understands and agrees that this Agreement is intended to include all claims, if any, which Ward may have and which Ward does not now know or suspect to exist in her favor against the Released Parties and that this Agreement extinguishes those claims.

**25.    Release Of Claims By MGA Against Ward**: As a material inducement for Ward to enter into this Agreement, MGA hereby forever releases and discharges Ward, and her heirs

11

Independent Contractor/Consulting Agreement

Confidential - Attorney's Eyes Only

Exhibit 28, p. 424

MGA 0875471

from any and all known claims, charges, complaints, liens, demands, causes of action, obligations, damages and liabilities, that MGA may have had, may now have, or may hereafter claim to have against Ward and her heirs, arising out of or relating in any way to her hiring by, employment with, or separation from MGA, or otherwise relating to Ward from the beginning of time through August 5, 2005, Ward's date of resignation as an employee of MGA under her March 2005 Agreement.   This release specifically extends to, without limitation, claims or causes of action for breach of an express or implied contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, fraud, misrepresentation, defamation, slander, retaliation, interference, loss of future earnings or profits, unfair competition and unfair business practices, and claims under the California Constitution, the United States Constitution, and applicable state and federal fair employment laws, federal equal employment opportunity laws, and federal and state labor statutes and regulations, including, but not limited to, the Civil Rights Act of 1964, as amended, the Fair Labor Standards Act, as amended, the Worker Retraining and Notification Act of 1988, as amended, the Americans With Disabilities Act of 1990, as amended, the Rehabilitation Act of 1973, as amended, the Age Discrimination in Employment Act of 1967, as amended, the Employee Retirement Income Security Act of 1974, as amended, the California Fair Employment and Housing Act, as amended, the California Business and Professions Code, as amended, the California Labor Code, as amended, and all other applicable state and federal laws.   However, MGA does not agree to release Ward from any existing claims, presently known or unknown, concerning MGA's rights to any intellectual property or other property or rights owned by MGA. Nothing in this Agreement shall be construed as a release of Ward's obligations under this Agreement.

**26.  Warranties and Indemnification:**

(a)   Ward represents and warrants that: (i) she has the full power and authority to enter into this Agreement;  (ii) in rendering her services for MGA and performing work under this Agreement, she will not violate the terms of any agreement she may have with any third party, including any confidentiality obligations imposed by any such third parties; and, (iii) except with respect to the materials that MGA provides to her, the services rendered hereunder and the work done for MGA, and all elements and parts thereof, including the specific project materials, will not infringe upon any rights owned by any other person or entity including but not limited to any copyright, trademark, patent or other intellectual property or trade secret rights, will not be libelous or obscene, will not violate any right of privacy or publicity, and will not otherwise violate any law or any other person's or entity's personal or property rights. Ward further understands that she is not and shall not hold herself out as, or list herself on any website as MGA's agent or representative and that she shall have no authority to bind or commit MGA to any agreements or other obligations.

(b)   Ward shall indemnify, defend and hold MGA harmless from and against any and all liabilities, losses, damages, claims or causes of action, and any related costs and expenses, including attorneys' fees and court costs, arising from any claim, action or proceeding based on or in any way related to any breach or alleged breach of any agreements, representations or warranties set forth herein or that are caused, directly or indirectly, by or as a result of the performance by Ward or her employees or agents on projects or work performed hereunder, provided that nothing herein shall be construed to require Ward to indemnify MGA from or against the negligent acts of MGA or its employees.   Ward is not an employee and will

Independent Contractor/Consulting Agreement

12

Confidential - Attorney's Eyes Only

Exhibit 26 , P. 426

MGA 0875472

)                                    )

indemnify and hold harmless MGA for any injuries or claims suffered by Ward or her employees or agents that would otherwise be subject to the Worker's Compensation Act.

(c)   Ward shall *not* be required to indemnify or be liable to MGA for any indirect, special, exemplary, consequential, incidental or punitive damages, or for lost profits or business interruption losses, or for any direct damages for an amount in excess of the payments made to her under this Agreement, *unless* such damages arise from a deliberate act on her part that is intended to cause harm to MGA.

(d)   Ward's representations and warranties, and her obligation to indemnify and defend MGA hereunder, shall survive termination of this Agreement for any reason.

27.    **Notices**:  Any notice under this Agreement must be in writing and shall be effective upon delivery by hand or three (3) business days after deposit in the United States mail, postage prepaid, certified or registered, and addressed to MGA or to Ward at their respective business addresses.  Ward shall be obligated to notify MGA in writing of any change in her address.  Notice of change of address shall be effective only when done in accordance with this paragraph.

Address for Notice to MGA:

MGA Entertainment, Inc.
16380 Roscoe Boulevard
Van Nuys, California 91406
Attention: Vice President, Human Resources

Address for Notice to Contractor:

Mercedeh Ward

28.    **Integration; Amendments**:  This Agreement is intended to be the final, complete, and exclusive statement of the terms of Ward's engagement by MGA and contains the entire agreement of the Parties relating to the subject matter hereof.  The Parties acknowledge that they have made no agreements, representations, warranties, commitments or promises relating to the subject matter of the Agreement which are not expressly set forth herein, and this Agreement may not be modified without the express written consent of both Parties. MGA's payment of Ward's invoices containing any terms that may be inconsistent with the terms of this Agreement shall not constitute a modification or amendment of this Agreement. This Agreement supersedes all other prior and contemporaneous offers, letters, discussions, communications, understandings, agreements and statements, whether written or oral, express or implied, pertaining in any manner to the engagement of Ward, including but not limited to the March 2005 Agreement between the Parties, and it may not be contradicted by evidence of any prior or contemporaneous statements or agreements.  Notwithstanding the foregoing, the Parties expressly agree that the Arbitration Agreement entered between the Parties on or around March 7, 2005 shall remain in full force and effect for the Term of this Agreement.  To the extent that the practices, policies or procedures of MGA, now or in the

13
Independent Contractor/Consulting Agreement

**REDACTED**

Confidential - Attorney's Eyes Only

Exhibit 28 , P. 426

MGA 0875473

future, apply to Ward and are inconsistent with the terms of this Agreement, the provisions of this Agreement shall control.

29.   **Assignment; Successors And Assigns**:   MGA shall have the right to assign this Agreement and/or its rights hereunder, without the consent of Ward, to any related, affiliated or subsidiary entity (i) that is an affiliate of MGA; (ii) with or into which MGA may merge or consolidate, or (iii) to which MGA may sell or transfer all or substantially all of its assets ("Assignee").  After any such assignment by MGA, MGA shall be discharged from all further liability hereunder and such Assignee shall thereafter be deemed to be MGA for the purposes of all provisions of this Agreement.  Ward shall not assign any rights or obligations under this Agreement without the prior written consent of MGA.

30.   **Severability**:   If a court or arbitrator holds any provision of this Agreement to be invalid, unenforceable, or void, the remainder of this Agreement shall remain in full force and effect.    In furtherance and not in limitation of the foregoing, should the duration or geographical extent of, or business activities covered by any provision of this Agreement be in excess of that which is valid and enforceable under applicable law, then such provision shall be construed to cover only that duration, or extent, or those activities which may validly and enforceably be covered.  Ward acknowledges the uncertainty of the law in this respect and expressly stipulates that this Agreement shall be given the construction which renders its provisions valid and enforceable to the maximum extent (not exceeding its express terms) possible under applicable law.

31.   **Binding Arbitration**:   The Parties hereby agree that the Arbitration Agreement entered into between Ward and MGA on or around March 7, 2005 shall remain in full force and effect for the Term of this Agreement.

32.   **Attorneys' Fees**:   In any legal action, arbitration or other proceeding brought to enforce or interpret the terms of this Agreement, the prevailing Party shall be entitled to recover reasonable attorneys' fees and costs.

33.   **Injunctive Relief**:  Ward agrees that it would be difficult to compensate MGA fully for damages for any violation of the provisions of this Agreement.  Accordingly, Ward specifically agrees that MGA shall be entitled to seek injunctive relief to enforce the provisions of this Agreement.  This provision with respect to injunctive relief shall not, however, diminish the right of MGA to claim and recover damages in addition to injunctive relief.    Ward acknowledges that the services to be rendered by her under this Agreement, and the rights and privileges granted hereunder, are of a special, unique, extraordinary and intellectual character which gives them a peculiar and special value, the loss of which cannot be reasonably or adequately compensated in damages in an action at law, and a breach by Ward of any of the provisions hereof will cause MGA great and irreparable injury.    Ward acknowledges that MGA shall, therefore, be entitled, in addition to any other remedies which it may have under this Agreement or at law, to seek injunctive and other equitable relief (including without limitation specific performance) to enforce any of the rights and privileges of MGA or any of the covenants or obligations of Ward hereunder.  Nothing contained herein, and no exercise by MGA of any right or remedy, shall be construed as a waiver by MGA of any other rights or remedies which MGA may have.

14                        Independent Contractor/Consulting Agreement

Confidential - Attorney's Eyes Only

Exhibit 28, P. 427

MGA 0875474

34.   **Governing Law**:  This Agreement shall be governed by and construed in accordance with the law of the State of California without regard to conflicts of law principles of the State of California and notwithstanding the fact that Ward shall provide services pursuant to this Agreement from her residence or offices in the State of Colorado.  The Parties specifically agree that the proper venue for any disputes arising from this Agreement shall be in Los Angeles, California.

35.   **Interpretation**:  This Agreement shall be construed as a whole, according to its fair meaning, and not in favor of or against any Party.  By way of example and not in limitation, this Agreement shall not be construed in favor of the Party receiving a benefit or against the Party responsible for any particular language in this Agreement.  Captions are used for reference purposes only and should be ignored in the interpretation of the Agreement.

36.   **Waivers**:  Failure to exercise any right under this Agreement shall not constitute a waiver of such right.  No term or condition of this Agreement shall be deemed to have been waived, nor shall there be any estoppel to enforce any provisions of this Agreement, except by a statement in writing signed by the Party against whom enforcement of the waiver or estoppel is sought.  Any written waiver shall not be deemed a continuing waiver unless specifically stated, shall operate only as to the specific term or condition waived, and shall not constitute a waiver of such term or condition for the future or as to any act other than that specifically waived.

37.   **Force Majeure**:  Neither Party shall be liable for any damages nor other losses resulting from the failure to perform its obligations under this Agreement, where such failure is the result of a cause beyond said Party's reasonable control.

38.   **Voluntary Agreement; No Inducements**:   Each Party to this Agreement acknowledges and represents that it (a) has fully and carefully read this Contract prior to signing it, (b) has been, or has had the opportunity to be, advised by independent legal counsel of her or its own choice as to the legal effect and meaning of each of the terms and conditions of this Agreement, and (c) each Party is signing and entering into this Agreement as a free and voluntary act, without duress or undue pressure or influence of any kind or nature whatsoever, and has not relied on any promises, representations or warranties regarding the subject matter hereof other than as set forth in this Agreement.

39.   **Survival**:  Sections 17 through 26 shall survive the termination of this Agreement.

40.   **Non-Disclosure Agreement**:  Ward agrees to sign MGA's Non-Disclosure Agreement concurrently with the execution of this Agreement. The provisions of this other agreement shall apply throughout the Term, and as otherwise indicated in such other agreement or any amendment thereto.

Dated:  _8/6/05_                                Dated:  _3-15-06_

_Mercedeh Ward_                                 _RWhaley_
MERCEDEH WARD                                   MGA ENTERTAINMENT, INC.

                                                Independent Contractor/Consulting Agreement

15

Confidential - Attorney's Eyes Only

Exhibit _28_, P. _428_

MGA 0875475

## ACKNOWLEDGEMENT OF RECEIPT OF HANDBOOK

This is to acknowledge that I have received a copy of the Employee Handbook, and that I understand that it contains important information about the Company's personnel policies. *I acknowledge that I am expected to read, understand, and comply with the Company's policies and I will familiarize myself with those policies and practices*. I understand that the Company may from time to time and in its sole discretion, change, rescind or add to any policies, benefits or practices described. The Company will advise employees of material changes. I also know that it is my responsibility to request clarification of any policies I do not understand.

*Furthermore, I understand that employment with the Company is not for a specified term and is at the mutual consent of the employee and the Company. I understand also that either the Company or I may terminate the employment relationship at will, at any time, and with or without cause or advance notice.*

Date: 3/7/05

_____
Employee's Signature

_____
Employee's Printed Name

57

January 2004

Confidential - Attorney's Eyes Only

Exhibit 28, P. 429

MGA 0875476

)                                              )



Corporate Office:

16380 Roscoe Blvd.
Van Nuys, CA 91406 USA
Tel 818.894.2525
Fax 818.892.9060

A Customer Entertainment Products Company

February 15, 2005

Mercedeh Ward

Dear Mercedeh:

It is our pleasure to extend an offer of employment to you for the position of **Senior Director of Product Development Girls & Pre-School** with MGA Entertainment. Please note that this offer is contingent upon your completion and signing of MGA's job application, your signing the attached Arbitration Agreement, and your passing a company required background and reference check As we discussed, this will be a full-time position with employment commencing on **Monday, March 7, 2005.** Please plan to arrive at our Human Resources offices located at 16380 Roscoe Blvd., Suite 100, Van Nuys, CA 91406 by **8:30 a.m.** Please bring with you appropriate documents listed in the enclosure so we may process your Form I-9 as a new employee.

If you accept MGA's offer of employment, your compensation will be $160,000 a year, paid in accordance with the Company's regularly established policies and you will receive a **2 (two)** year employment agreement. You will be entitled to a discretionary bonus, based on the Company's overall operating results and your meeting your Key Results Areas or KRAs, which shall be established in the first 30-days after you begin employment. You will also be entitled to receive employment benefits as generally provided by the Company's policies and benefit plans. You will also be eligible to fly business class on all domestic and international flight over two hours.

We agree that, upon your assumption of duties for the Company, you will devote your best efforts to the performance of your job; that you will not engage in any activity that might be competitive with the Company's business or pose a conflict of interest with that business; and that you will not misuse, nor improperly disclose, any confidential or other proprietary information of the Company.



Confidential - Attorney's Eyes Only

Exhibit 28, P. 430   REDACTED

MGA 0875477



A Consumer Entertainment Products Company

You will also be expected to comply with the Company's personnel policies, as set forth in the Employee Handbook, as such Handbook may be updated from time to time, including referral of any disputes occurring between us to arbitration.

If you accept this offer, and the above-stated terms, please confirm your acceptance by signing one copy of this letter below and returning it to me.

We hope that you will accept this offer.

Sincerely,

Janice L. Foti
Vice President of Human Resources
MGA Entertainment, Inc.

I understand and accept the above offer of employment on the above-stated terms.

Date: 2/23/05          Signature: _____

**Mercedeh Ward**

Confidential - Attorney's Eyes Only

Exhibit 2B, P. 431

MGA 0875478

**MGA** ENTERTAINMENT

## ARBITRATION AGREEMENT

The parties to this Arbitration Agreement (the "Agreement") are MGA (the "Company") and
_SCOT ANTHONY REYES_ ("Employee").

In order to obtain an expeditious determination of the parties' rights and obligations and to avoid the costly expense and lengthy delays typically associated with court actions, the undersigned Employee and the Company agree to submit (with the exceptions noted below) any and all claims or controversies arising out of or relating to the Employee's employment or its termination to final and binding arbitration before a neutral arbitrator and not to any court. This applies to all claims or controversies regarding contracts or torts (personal injury) or which arise under statute, including without limitation, the claims and causes of action specified below.

### 1.  SUBMISSION TO ARBITRATION.

a.  IN CONSIDERATION FOR AND AS A MATERIAL CONDITION OF EMPLOYMENT AND CONTINUATION OF EMPLOYMENT WITH THE COMPANY, EMPLOYEE AGREES THAT FINAL AND BINDING ARBITRATION IS THE EXCLUSIVE MEANS FOR RESOLVING COVERED DISPUTES.  NO OTHER ACTION MAY BE BROUGHT IN COURT OR IN ANY OTHER FORUM.  THIS AGREEMENT IS A WAIVER OF ALL RIGHTS TO A CIVIL COURT ACTION FOR A COVERED CLAIM.  ONLY AN ARBITRATOR, NOT A JUDGE OR JURY, WILL DECIDE THE CLAIM.

b. Employee or the Company will begin the arbitration process by delivering a written request for arbitration to the other party within the time limits which would apply to the filing of a civil court action.  Failure to deliver a timely written request for arbitration will preclude the aggrieved party from instituting any legal, arbitration or other proceeding and will constitute a complete waiver of all such claims.  Statutory claims can be raised within the limitations period provided by the applicable statute.

c.  Claims covered by this provision include, but are not limited to, the following: (i) alleged violations of federal, state and/or local constitutions, statutes, regulations or ordinances, including, but not limited to, **laws dealing with unlawful discrimination and harassment;** (ii) claims based on any purported breach of contractual obligation, including but not limited to breach of the covenant of good faith and fair dealing, wrongful termination or constructive discharge; (iii) violations of public policy; (iv) claims relating to a transfer, reassignment, denial of promotion, demotion, reduction in pay, or any other term or condition of employment; (v) claims based on contract or tort; and (vi) any and all other claims arising out of Employee's employment with or termination by the Company.  THIS INCLUDES, BUT IS NOT LIMITED TO, CLAIMS BROUGHT UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964; CALIFORNIA GOVERNMENT CODE SECTION 12960, et seq.; AND ANY OTHER FEDERAL, STATE OR LOCAL ANTI-DISCRIMINATION LAWS RELATING TO DISCRIMINATION INCLUDING BUT NOT LIMITED TO THOSE BASED ON THE FOLLOWING PROTECTED CATEGORIES:   GENETIC INFORMATION OR CHARACTERISTICS;   SEX AND GENDER;   RACE; RELIGION;   NATIONAL ORIGIN;   MENTAL OR PHYSICAL DISABILITY (INCLUDING CLAIMS UNDER THE AMERICAN WITH DISABILITIES ACT);   MEDICAL CONDITION (CANCER);   VETERAN OR MILITARY STATUS;   MARITAL STATUS;   SEXUAL ORIENTATION OR PREFERENCE;   AGE; PREGNANCY; AND RETALIATION OR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY FOR ALLEGING OR FILING OR PARTICIPATING IN ANY GRIEVANCE OR OTHERWISE COMPLAINING OF ANY WRONG RELATING TO THE AFOREMENTIONED CATEGORIES OR ANY PUBLIC POLICY.

d.  **The following claims are expressly excluded** and not covered by this Agreement for final and binding arbitration:  (i) claims related to workers' compensation and unemployment insurance;  ii) administrative filings with governmental agencies such as the California Department of Fair Employment & Housing, the Equal Employment Opportunity Commission, the U.S. Department of Labor or the National Labor Relations Board;  and (iii) claims that are expressly excluded by statute or are expressly required to be arbitrated under a different procedure pursuant to the terms of an employee benefit plan.  Nor does this Agreement preclude either party from seeking appropriate interim injunctive relief pursuant to the California Code of Civil Procedure or applicable federal law before arbitration or while arbitration proceedings are pending.

e.  Any claim arising between Employee and the Company covered by the arbitration provisions of this Agreement will be submitted to final and binding arbitration in the State of California pursuant to the National Rules for the Resolution of Employment Disputes of the American Arbitration Association in effect upon the date the claim is submitted in writing to the Company, to which rules the parties hereby expressly agree.

The Rules are attached and incorporated fully herein by reference.  They are also available on-line at www.adr.org.  The Rules allow for discovery by each party as ordered by the arbitrator.  The arbitrator must allow discovery adequate to arbitrate all claims, including access to essential documents and witnesses.

Either party may apply for injunctive relief in a court of law under applicable law before or during arbitration.

In making an award, the Arbitrator shall have the authority to make any finding and determine any remedy congruent with applicable law, including an award of compensatory or punitive damages.  In reaching a decision, the Arbitrator shall adhere to relevant law and applicable legal precedent, and shall have no power to vary therefrom.

Exhibit 28, p. 432

The Arbitrator must issue a written ...ard. The Arbitrator shall, in the award ... eparately, make specific written findings of fact, as well as the reasons ar ... legal basis for his or her opinion.

Should the Arbitrator exceed the jurisdiction or authority conferred in this Agreement, any party may file a petition to vacate, amend or correct the Arbitrator's award in a court of competent jurisdiction, pursuant to applicable law.

The Company will pay the arbitrator's fees and other administrative costs of arbitration, and other reasonable costs as specified by the arbitrator under applicable law so that Employee does not have to bear any cost which he/she would not have to bear in court beyond any amount which would have to be paid as a filing fee in a municipal or superior court. Each party shall be responsible for payment of its attorneys' fees, unless, upon application by a party, the arbitrator makes an award of attorneys' fees under applicable statutory or other law.

2. **GOVERNING LAW.** This Agreement shall be construed in accordance with and governed by the laws of the State of California.

3. **INTERPRETATION.** This Agreement shall be interpreted in accordance with the plain meaning of its terms and not strictly for or against either party.

4. **ENTIRE AGREEMENT.** This Agreement embodies the complete agreement and understanding of the parties related to the resolution of any dispute regarding Employee's employment with or termination from the Company, or as otherwise specified above, superseding any and all other prior or contemporaneous oral or written agreements between the parties with respect to the same, and contains all of the covenants and agreements of any kind whatsoever between the parties with respect to the same. Each party acknowledges that no representations, inducements, promises or agreements regarding the resolution of any dispute regarding Employee's employment with or termination by the Company, whether oral or written, express or implied, have been made by either party or anyone acting on behalf of a party, that are not incorporated herein. No other agreement or promise regarding the resolution of any dispute between Employee and the Company not contained herein shall be valid or binding.

5. **MODIFICATION.** This Agreement may be amended only by an agreement in writing signed by the parties hereto.

6. **INVALIDITY.** Should any provision(s) in this Agreement be held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions shall be unaffected and shall continue in full force and effect, and the invalid, void or unenforceable provision shall be deemed not to be part of this Agreement.

7. **VOLUNTARY AGREEMENT. Employee and the Company represent and agree that each has reviewed all aspects of this Agreement, has carefully read and fully understands all provisions of this Agreement, and is voluntarily entering into this Agreement. The parties represent and agree that each has had the opportunity to review any and all aspects of this Agreement with the legal or other advisor of the party's choice before executing this Agreement.**

8. **SUCCESSORS AND ASSIGNS.** This Agreement shall be binding upon and inure to the benefit of and shall be enforceable as applicable by and against Employee's and the Company's successors, heirs, beneficiaries and legal representatives. It is agreed that the rights and obligations of Employee and the Company may not be delegated or assigned except as specifically set forth in this Agreement.

9. **SURVIVAL OF TERMS.** The provisions of this Arbitration Agreement will survive the termination of Employee's employment and remain in full force and effect thereafter. Nothing in this Agreement will be construed to create any express or implied contract of employment or alter in any way the at-will nature of Employee's employment.

10. **COUNTERPARTS.** This Agreement may be executed in counterparts and each counterpart, when executed, shall have the validity of an original. Photographic or facsimile copies of any signed counterparts may be used in lieu of the original for any purpose.

We have read and understand this Arbitration Agreement and voluntarily agree to all of its terms.

DATED: ___2-11-04___          _____
                              Employee

DATED: _____    _____
                              MGA

COMPANY COPY

Confidential - Attorney's Eyes Only

Exhibit 28, P. 433

MGA 0875556

**NON-DISCLOSURE AGREEMENT**

THIS AGREEMENT is made by and between MGA Entertainment, Inc. ("Discloser"), a California corporation with offices at 16730 Schoenborn Street, North Hills, California and ___Scot Reyes___, on behalf of ___self___, a company with a principal place of business at _____ ("Recipient").

A.     Confidential Information:  This Agreement provides for the protection of information provided to Recipient by Discloser, being information relating to Discloser's products (whether current or projected), product titles, customers, employees, inventors, programmers, developers, artists, tools and techniques, software algorithms and routines, designs, drawings, schematics and other documentation relating thereto and other confidential and proprietary business information of Discloser and which is expressly labeled or identified to Recipient orally or in writing as "confidential" or which, under the circumstances of such disclosure, Recipient knows, or reasonably should know, are treated by Discloser as confidential (hereinafter collectively referred to as "Confidential Information").  Recipient shall keep in confidence and not disclose to any third party, without the written permission of Discloser, the Confidential Information made known to it under this Agreement.  This requirement of confidentiality shall not apply to any information that (a) is in the public domain through no wrongful act of Recipient; (b) is rightfully received by the Recipient from a third party who is not bound by a restriction of nondisclosure; (c) is already in the Recipient's possession without restriction as to disclosure; (d) was independently developed by Recipient; or (e) is required to be disclosed by operation of law or by order of a court or administrative body of competent jurisdiction, (provided that prior to such disclosure, Discloser shall first receive notice thereof from Recipient and have the opportunity to contest such order or requirement of disclosure or seek appropriate protective order).  The Confidential Information is being made available to Recipient for the limited purpose of evaluating whether to enter into a business relationship with Discloser.  Recipient may disclose the Confidential Information only to those of its employees of Recipient who need to know such information to effectuate the purposes of this Agreement and only to the extent necessary for such purpose; no disclosure may be made to any parent, subsidiary or affiliated companies of Recipient.  Any agreement which may be undertaken by the parties after Recipient's evaluation of the Confidential Information shall be the subject of a separate negotiation and agreement between the parties with respect thereto.

B.     Ownership: Recipient agrees and acknowledges that all Confidential Information shall be and remain the sole property of Discloser. Nothing contained in this Agreement shall be construed as granting to Recipient any right, title or interest of any kind, by license or otherwise, to the Confidential Information, the intellectual property therein or any part or copy thereof. Recipient further acknowledges and agrees that, nothing contained herein shall be construed as granting Recipient any right to develop, manufacture, produce and/or distribute any product(s) derived from or which otherwise uses any of the Confidential Information, or authorize or in any way assist others to do so.  Recipient may not make, sell, license or distribute copies of the Confidential Information and may not sublicense, transfer or assign in any manner whatsoever this Agreement or any of Recipient's rights or obligations under this Agreement.

C.     Termination: This Agreement is effective until terminated by either party on written notice to the other. Upon such termination, all copies of Confidential Information in tangible form, including without limitation any and all computer software files, which are in Recipient's possession (or in the possession of any consultant who has received such Confidential Material from Recipient or any of Recipient's agents or employees) will be promptly returned to Discloser and Recipient agrees that it shall thereafter retain no photocopies, backup copies, or other reproductions or transcriptions of any portion of the Confidential Information.

D.     Injunction:  Recipient acknowledges that its failure to perform any of the terms or conditions of this Agreement shall result in immediate and irreparable damage to Discloser.  Recipient also acknowledges that there may be no adequate remedy at law for such failures and that in the event thereof Discloser shall be entitled to equitable relief in the nature of injunction and to all other available relief, at law and/or in equity.

G.     Miscellaneous:

     1.     This Agreement sets forth the entire understanding between the parties hereto relating to the

{00003512.DOC/ / 02/22/2000  02:46 PM}

Confidential - Attorney's Eyes Only

Exhibit 28, P. 434

MGA 0875557

subject matter hereof and cannot be changed, modified, amended or terminated except by an instrument in writing executed by both Recipient and Discloser.  The headings and captions used herein are inserted for convenience of reference only and shall not affect the construction or interpretation of this agreement.

2.      No waiver shall excuse the performance of any act other than those specifically referred to therein and shall not be deemed or construed to be a waiver of such terms or conditions for the future or any subsequent breach thereof.  Except as otherwise provided in this agreement, all rights and remedies herein or otherwise shall be cumulative and none of them shall be in limitation of any other right or remedy.

3.      This agreement does not constitute a partnership or joint venture between the parties hereto. Neither party shall have any right to obligate or bind the other in any manner whatsoever, and nothing herein contained shall give or is intended to give any rights of any kind to any third persons.

4.      This agreement shall be governed by the laws of the State of California applicable to contracts made and to be wholly performed in the State of California (without regard to choice of law).  Any claim, dispute or disagreement in respect of this Contract may be brought only in Los Angeles County California either in the courts of the State of California or the federal courts located in Los Angeles County, which courts shall have exclusive jurisdiction thereof.  In the event of litigation between the parties arising out of or relating to this Agreement, the prevailing party will be entitled to recover court costs and reasonable fees of attorneys, accountants and expert witnesses incurred by such a party in connection with such action.

5.      If any provision of this Agreement is or becomes or is deemed invalid, illegal or unenforceable under the applicable laws or regulations of any jurisdiction, either such provision will be deemed amended to conform to such laws or regulations without materially altering the intention of the parties or it shall be stricken and the remainder of this Agreement shall remain in full force and effect.

RECIPIENT                                          DISCLOSER

Signature: _____

Name: _Scot REYES_____          By:_____

Co:_____          Its:_____

Date: __1.30.04_____              Date:_____

{00003512.DOC/ / 02/22/2000  02:46 PM}

Confidential - Attorney's Eyes Only

Exhibit 28, P. 435

MGA 0875558

## CONFIDENTIALITY AND INVENTIONS ASSIGNMENT AGREEMENT

This Confidentiality and Inventions Agreement is executed by and between MGA Entertainment, Inc. ("Company") and ___SLOT   REYES·_____ ("Employee").

During the course of his/her employment at the Company, Employee will have access to, will acquire, and will become acquainted with trade secrets, confidential information and property related to the Company and its customers' and vendors' businesses. The Company's trade secrets include, but are not limited to, such information as customer names, addresses, phone numbers, names, specific characteristics of suppliers and customers and their respective employees with whom the Company has dealings (whether or not such information is contained on a Rolodex, computer printout, customer list, or is orally communicated to any Company employee in the course of their duties) and the history of purchases, along with terms and conditions of credit offered to each customer; names, addresses, telephone numbers and specific characteristics of prospective customers and contacts; information regarding particular customer product peculiarities, manners of doing business, needs and requirements; product specifications and performance needs for each customer; and the prices charged to each customer; customer information reports, pricing information (such as price lists, quotation guides, previous or outstanding quotations, equipment prices or billing information), mailing labels, mailing plans and programs, sales report forms, pending projects or proposals, techniques used in approaches or results of any market research, advertising sources, employee salaries, contracts and wage information, names and addresses of the vendors, manufacturers, and other suppliers of Company products, the products they supply, the applicable prices and discounts, and the applicable product specifications; new products or inventions developed or under development by the Company; formulas, patterns, compilations, programs, devises, methods, techniques, processes, pictures, contracts, files, methods or production (including quality control and packaging), proposals, business plans and projections, budgets, financial information, software, hardware, any patent application or the contents thereof; and all other material relating in any manner whatsoever to the customers products, vendors, and suppliers of Company, including matters which should reasonably be considered trade secrets even if not expressly described herein.

All information obtained in the course of Employee's employment is to be used only for the purpose of conducting the Company's business. Employee agrees to never discuss or disclose such trade secrets, confidential information or property, either directly or indirectly, with or in the presence of persons outside the Company, either during employment, or at any time thereafter, except as required by Employee's supervisor. Employee further agrees that information in any form, including but not limited to documents, tapes, lists, computer printouts, studies, reports, drafts, pictures, charts, maps, drawings, programs, equipment, scrap, blueprints, vendor lists, customer lists, client billing information, all financial reports, payroll information, records, files and other materials pertaining to the Company, its customers and vendors, may not be removed from the facilities without the advance written permission of Employee's supervisor.

Employee acknowledges that all such trade secrets or confidential information, or any copies of summaries thereof, whether prepared by Employee, by the Company, or provided to Employee by the Company, is the exclusive property of the Company. On demand or termination of employment for any reason, Employee agrees to return to the Company all papers, records, electronic copies, and documents in Employee's possession or obtained during the course of Employee's employment with the Company and Employee further agrees that he/she will not retain any copies, nor permit anyone to retain any copies thereof, except that those who have successfully completed their 90 day introductory period may keep their Franklin Planner.

Employee acknowledges and agrees that the trade secrets described herein have independent economic value in that they are not generally known within the trade they represent many years of research and development and give the Company substantial competitive advantages.

Confidential - Attorney's Eyes Only

Exhibit 28, P. 436

MGA 0875559

As a condition of employment, Employee agrees that he/she (1) will regard and preserve the confidential information as highly confidential and as the trade secrets of the Company; (2) will not, at any time during or within twelve months after the termination of his/her employment with the Company, reveal, disclose, permit to be disclosed, or make known to any person, firm or corporation, any confidential information which was disclosed to Employee or of which he/she became aware during his/her employment, regardless of whether developed, prepared or created in whole or in part by Employee's efforts, except to the extent that such disclosure is necessary and is authorized in writing by the Company to carry out Employee's duties of employment; (3) will retain all confidential information in trust for the sole benefit of the Company and will not disclose to or use any confidential information in an independent business related to the scope of the Company's business (designer, manufacturer and distributor of toy); (4) will not photocopy or duplicate, and will not permit any person to photocopy or duplicate, any of the confidential information without the Company's written consent and approval; (5) will not make any use of confidential information for his/her own benefit or the benefit of any person or entity other than the Company; (6) will return all confidential information (including but not limited to customer lists, books maintained by Employee, and source lists) to the Company immediately upon request for same. Employee agrees that if he/she has any questions about whether a matter is a trade secret, to seek a determination by the Company before he/she uses any such information.

Employee agrees to maintain the same level of confidentiality regarding co workers, employee relation matters, and Company operations. Employee agrees, by accepting employment or continued employment with the Company, to comply with these rules and to maintain confidentiality of the Company's trade secrets.

Employee understands and acknowledges that the trade secrets and confidential information of the Company are not known to the general public and are the subject of reasonable efforts to maintain its secrecy. They are of a special, unique and extraordinary character, which gives them a particular value, the loss of which cannot be reasonably compensated in damages in an action at law. Employee further understands and agrees that in addition to any other rights or remedies which the Company may have, the Company shall be entitled to immediate injunctive and other equitable relief to prevent a breach of this Confidentiality and Inventions Agreement. If any legal proceeding arises under this Confidentiality and Inventions Agreement, the prevailing party shall be entitled to recover all costs and expenses, including reasonable attorney's fees and costs. California law shall apply to this agreement as to contracts wholly performed within the state.

Employee and the Company agree that this Confidentiality and Inventions Agreement shall not apply to information that Employee was aware of prior to his/her employment with the Company, or that is otherwise publicly known.

Employee further agrees that during his/her employment and for a period of twelve months after termination, Employee will not solicit the purchase of any products or services from any supplier or vendor who supplies products or services to the Company.

INVENTIONS ASSIGNMENT:

1. ASSIGNMENT OF INTEREST: Employee agrees to assign, and does hereby assign, to Company all interest which employee may have in all patentable and/or not-patentable ideas and/or inventions made or conceived by Employee solely or jointly with others during Employee's employment with Company. This assignment shall not apply to any idea or invention developed by Employee entirely on Employee's own time without equipment, supplies, facilities, or trade secret information of Company, unless such invention or idea: (1) relates to the business of company or to Company's actual or anticipated research or development, or (2) results from any work performed by Employee for Company. THIS AGREEMENT DOES NOT APPLY TO ANY INVENTION WHICH QUALIFIES FULLY UNDER THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 2870.

MGA 0875560

2. <u>DISCLOSURE OF IDEAS OR INVENTIONS:</u> Employee agrees to promptly disclose in writing to Fred Larian all inventions developed solely or jointly with others during Employee's employment with Employer, whether such inventions are patentable, not-patentable or assignable under this Agreement. Employer agrees to maintain such disclosure in confidence.

3. <u>WRITTEN DISCLOSURE OF PRIOR INVENTIONS:</u> Employee agrees to provide a complete list of all patented or not-patented ideas and inventions conceived by Employee or anyone else jointly with Employee, prior to the date Employee has signed this Agreement. The failure of Employee to provide Company with a written disclosure of ideas or inventions shall be deemed to constitute an affirmative acknowledgment by Employee that no such ideas or inventions exist.

If any provision of this Confidentiality and Inventions Agreement is held to be invalid or unenforceable, in whole or in part, the remaining portions of this Agreement shall continue to be valid and will be performed, construed and enforced to the fullest extent permitted by law. The invalid or unenforceable provision shall be deemed amended and limited in accordance with the intent of the parties, as determined from the face of this Agreement, to the extent necessary to permit the maximum enforceability or validation of the provision.

_2.23.04_
Date

Employee Signature

_SCOT REYES_
Employee Name (printed)

_2-26-04_
Date

Employer Signature

_C OO_
Title

## PROPRIETARY INFORMATION AGREEMENT

This Proprietary Information Agreement ("Agreement") is entered into by and between _Scot Reyes_ ("Employee"), on the one hand, and MGA Entertainment, Inc. (together with its affiliates, and their successors and assigns, the "Company"), on the other hand.

WHEREAS, the Company has offered to employ Employee on certain favorable terms and conditions, which offer is expressly conditioned upon, among other things, Employee's agreement to adhere to, among other things, the various covenants and agreements contained in this Agreement;

WHEREAS, Employee understands the terms and conditions of the Company's employment offer, including its condition that Employee agree to the various covenants and agreements set forth below. In consideration of the Company's employment of Employee and providing Employee with training, compensation and benefits, and business growth and development opportunities, and allowing Employee to have access to the Company's Proprietary Information (defined below), Employee has decided to enter into, and agrees to be bound by, this Agreement.

NOW, THEREFORE, in consideration of the mutual representations, warranties, covenants and agreements set forth below, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Employee and the Company agree as follows:

AGREEMENT

1.   CONFIDENTIALITY.

Employee understands that, by virtue of Employee's employment with the Company, Employee will acquire and be exposed to Proprietary Information of the Company. "Proprietary Information" includes all ideas, information and materials, tangible or intangible, not generally known to the public, relating in any manner to the business of the Company (as defined above), its products and services (including all trade secrets), its personnel (including its officers, directors, employees, and contractors), its clients, vendors and suppliers and all others with whom it does business that Employee learns or acquires during Employee's employment with the Company. Proprietary Information includes, but is not limited to, manuals, documents, computer programs and software used by the Company, users manuals, compilations of technical, financial, legal or other data, salary information, client or prospective client lists, names of suppliers or vendors, client, supplier or vendor contact information, business referral sources, specifications, designs, devices, inventions, processes, business or marketing plans or strategies, pricing information, media rate information, rate structures, information regarding the identity of the Company's directors, advertisers, or media experts, identity data, prototypes, forecasts, financial information, works in progress, and other technical or business information. Proprietary Information does not include basic information that is generally known and used within                        the                          Toy                        Industry.

Employee agrees to hold in trust and confidence all Proprietary Information during and after the period of Employee's employment with the Company.  Employee shall not disclose any Proprietary Information to anyone outside the Company without the written approval of an authorized officer of the Company or use any Proprietary Information for any purpose other than for the benefit of the Company as required by Employee's authorized duties for the Company. At all times during Employee's employment with the Company, Employee shall comply with all of the Company's policies or regulations relating to the protection and confidentiality of Proprietary Information.  Upon termination of Employee's employment with the Company, (a)

LOS_ANGELES:102871.1 015567.1001

Confidential - Attorney's Eyes Only

Exhibit 28, P. 439

MGA 0875562

Employee shall not use Proprietary Information, or disclose Proprietary Information to anyone, for any purpose, unless expressly requested to do so in writing by an authorized officer of the Company, (b) Employee shall not retain or take with Employee any Proprietary Information in a Tangible Form (defined below), and (c) Employee shall immediately deliver to the Company any Proprietary Information in a Tangible Form that Employee may then or thereafter hold or control, as well as all other property, equipment, documents or things that Employee was issued or otherwise received or obtained during Employee's employment with the Company. "Tangible Form" includes ideas, information or materials in written or graphic form, on a computer disc or other medium, or otherwise stored in or available through electronic, magnetic, videotape or other form.

## 2. NON-SOLICITATION OF CUSTOMERS, CLIENTS AND VENDORS.

Employee acknowledges that, because of the nature of Employee's work for the Company, Employee's solicitation or serving of certain customers, clients and vendors related to Employee's work for the Company would necessarily involve the unauthorized use or disclosure of Proprietary Information, and the proprietary relationships and goodwill of the Company. Accordingly, for one (1) year following the termination of Employee's employment with the Company for any reason, Employee shall not, directly or indirectly, solicit, induce, or attempt to solicit or induce, any person or entity then known to be a customer or client or vendor of the Company, for whom or, on whose behalf, Employee, during the three (3) year period immediately preceding the termination of Employee's employment, (a) performed any work or services, or (b) participated the preparation of any proposal to provide such work or services (a "Restricted Customer/Client/Vendor"), to terminate his, her or its relationship with the Company for any purpose, including the purpose of associating with or becoming a customer, client or vendor, whether or not exclusive, of Employee or any entity of which Employee is or becomes an officer, director, member, agent, employee or consultant, or otherwise solicit, induce, or attempt to solicit or induce, any Restricted Customer/Client/Vendor to terminate his, her or its relationship with the Company for any other purpose or no purpose.

## 3. NON-SOLICITATION OF PERSONNEL.

During Employee's employment with the Company and for one (1) year thereafter, Employee shall not, directly or indirectly, solicit, induce, or attempt to solicit or induce, any person known to Employee to be an employee of the Company who, directly or indirectly, engages in the Business on behalf of the Company (each such person, a "Company Person"), to terminate his or her employment or other relationship with the Company for the purpose of associating with (a) any entity that engages in the Business of which Employee is or becomes an officer, director, member, partner, principal, agent, employee or consultant, or (b) any competitor of the Company in the Business, or otherwise encourage any Company Person to terminate his or her employment or other relationship with the Company for any other purpose or no purpose.

## 4. RETURN OF DOCUMENTS AND MATERIALS.

Immediately upon the termination of Employee's employment or at any time prior thereto if requested by the Company, Employee shall return all records, documents, equipment, proposals, notes, lists, files, and any and all other materials, including but not limited to Proprietary Information in a Tangible Form, that refers, relates or otherwise pertains to the Company and its business, including its products and services, personnel, customers or clients (actual or potential), investors (actual or potential), and/or vendors and suppliers (actual or potential), or any of them, and any and all business dealings with said persons and entities (the "Returned Property and Equipment") to the Company at its offices in Los Angeles, California. Employee is not authorized to retain any copies or duplicates of the Returned Property and Equipment that Employee obtained or received as a result of Employee's employment or other relationships with the Company.

LOS_ANGELES:102871.1 015567.1001                2.

5.    <u>PROPRIETARY INFORMATION OF OTHERS/COMPLIANCE WITH
LAWS</u>.  Employee shall not breach any agreement to keep in confidence, or to refrain from
using, the nonpublic ideas, information or materials of a third party, including, but not limited to,
a former employer or client.  Employee shall not bring any such ideas, information or materials
to the Company, or use any such ideas, information or materials in connection with Employee's
employment by the Company.  Employee shall comply with all national, state, local and other
laws, regulations and ordinances.

6.    <u>RIGHTS AND REMEDIES UPON BREACH</u>.

If Employee breaches, or threatens to commit a breach of, any of the provisions of this
Agreement, Employee agrees that the Company shall have the right and remedy to have each
and every one of the covenants in this Agreement specifically enforced and the right and
remedy to obtain temporary and permanent injunctive relief, it being acknowledged and agreed
by Employee that any breach or threatened breach of any of the restrictive covenants and
agreements contained herein would cause irreparable injury to the Company and that money
damages would not provide an adequate remedy at law to the Company.  Moreover, if
Employee breaches or threatens to commit a breach of this Agreement during Employee's
employment with the Company, Employee may be subject to the immediate termination of
Employee's employment.  In any such action seeking to enforce this Agreement, the prevailing
party shall be entitled to recover all reasonable attorneys' fees, costs and expenses, including
any expert fees, that were incurred by that party in connection with any such action.

7.    <u>SEVERABILITY/BLUE-PENCIL</u>.

Employee acknowledges and agrees that (a) the restrictive covenants and agreements
contained herein are reasonable and valid in geographic, temporal and subject matter scope
and in all other respects, and do not impose limitations greater than are necessary to protect the
goodwill, Proprietary Information, and other business interests of the Company; (b) if any court
subsequently determines that any of such covenants or agreements, or any part thereof, is
invalid or unenforceable, the remainder of such covenants and agreements shall not thereby be
affected and shall be given full effect without regard to the invalid portions; and (c) if any court
determines that any of the restrictive covenants and agreements, or any part thereof, is invalid
or unenforceable because of the duration or scope of such provision, such court shall have the
power to reduce the duration or scope of such provision, as the case may be, and, in its
reduced form, such provision shall then be enforceable to the maximum extent permitted by
applicable law.  Employee intends to and hereby confers jurisdiction to enforce each and every
one of the covenants and agreements contained herein upon the courts of any jurisdiction within
the geographic scope of such covenants and agreements, and if the courts or any one or more
of such jurisdictions hold any such covenant or agreement unenforceable by reason of the
breadth or scope or otherwise, it is the intention of Employee that such determination shall not
bar or in any way affect the Company's right to the relief provided above in the courts of any
other jurisdiction within the geographic scope of such covenants and agreements, as to
breaches of such covenants and agreements in such other respective jurisdictions, such
covenants and agreements as they relate to each jurisdiction being, for this purposes, severable
into diverse and independent covenants and agreements.

8.    <u>CONFIRMATION OF AT-WILL EMPLOYMENT</u>.

Employee acknowledges and agrees that:  (a) Employee's employment with the Company is
and shall be at all times on an at-will basis, and the Company or Employee may terminate
Employee's employment at any time, for any reason, with or without cause or advance notice;
(b) nothing in this Agreement or in the Company's employee manuals, handbooks or other
written materials create or are intended to create an express or implied contract for
employment; (c) nothing in the Agreement obligates the Company to hire, retain or promote
Employee; (d) all definitions, terms and conditions of this Agreement apply to Employee only for
the purposes of this Agreement, and for no other purpose, and do not alter or otherwise effect

Confidential - Attorney's Eyes Only

Exhibit 28, P. 441

MGA 0875564

the at-will status of Employee's employment with the Company; and (e) no representative of the Company has any authority to enter into any express or implied, oral or written agreements that are contrary to the terms and conditions of this Agreement or to enter into any express or implied contracts for employment (other than for at-will employment) except for the President of the Company and any agreement between Employee and the President must be in writing and signed by Employee and the President.

9.     INFORMATION ON COMPANY PREMISES.

Employee acknowledges that, by virtue or Employee's employment with the Company, Employee will have use of the premises and equipment of the Company.   Employee acknowledges and agrees that the Company has the right to review and inspect any such premises and equipment, even if they contain Employee's personal information or materials.

10.     GOVERNING LAW.

This Agreement shall be construed, interpreted, and governed in accordance with either (a) the laws of the State of California, regardless of applicable conflicts of law principles, or (b) in the event of a breach of any of the covenants contained in Section 1 through 8, the law of the State where such breach actually occurs, depending on whichever choice of law shall ensure to the maximum extent that the restrictive covenants shall be enforced in accordance with the intent of the parties.

11.     ENTIRE AGREEMENT/MODIFICATION/NO WAIVER.

This Agreement (and Employee's and the Company's agreements regarding arbitration and Employee's at will employment status that are set forth in the Company's offer letter, which are incorporated by this reference herein) (a) represent the entire agreement of the parties with respect to the subject matter hereof, (b) shall supersede any and all previous contracts, arrangements or understandings between the parties hereto with respect to the subject matter hereof, and (c) may not be modified or amended except by an instrument in writing signed by each of the parties hereto.  No waiver, delay, omission or forbearance in exercising any right, option, duty or power under this Agreement (or Employee's and the Company's agreements regarding arbitration and Employee's at will employment status that are set forth in the Company's offer letter) shall affect or impair any party's rights with respect to any past or present default or breach of any of provisions of this Agreement or Employee's and the Company's agreements regarding arbitration and Employee's at will employment status that are set forth in the Company's offer letter.

12.     PARTIES IN INTEREST/ASSIGNMENT/SURVIVAL.

Neither this Agreement nor any of the rights, interests or obligations under this Agreement shall be assigned, in whole or in part, by operation of law or otherwise, by Employee.  The Company may sell, assign, and transfer all of its right, title and interests in this Agreement without the prior consent of Employee, whether by operation of law or otherwise, in which case this Agreement shall remain in full force after such sale, assignment or other transfer and may be enforced by (a) any successor, assignee or transferee of all or any part of the Company's business as fully and completely as it could be enforced by the Company if no such sale, assignment or transfer had occurred, and (b) the Company in the case of any sale, assignment or other transfer of a part, but not all, of the business.  The benefits under this Agreement shall inure to and may be enforced by the Company and any of its subsidiaries, affiliates, successors, transferees and assigns.  Employee's duties and obligations under this Agreement shall survive the termination of Employee's employment by Employee or the Company.

Confidential - Attorney's Eyes Only

Exhibit 28, P. 442

MGA 0875565

13.    **VOLUNTARY AGREEMENT/NO INDUCEMENTS**.

The Company and Employee hereby acknowledge and represent that Employee and the Company each (a) has fully and carefully read this Agreement prior to signing it, (b) has been, or has had the opportunity to be, advised by independent legal counsel of Employee's and the Company's own choice as to the legal effect and meaning of each of the terms and conditions of this Agreement, and (c) is signing and entering into this Agreement as a free and voluntary act without duress or undue pressure or influence of any kind or nature whatsoever and has not relied on any promises, representations or warranties regarding the subject matter hereof other than as set forth in this Agreement.

        **IN WITNESS WHEREOF**, the parties hereto have signed this Agreement on the day and year written below.

        MGA Entertainment, Inc.

        By: _____

        Printed Name: _Tom Park_____

        Title: _COO_____

        Date: _2 - 25_____, 2004

        EMPLOYEE

Signature: _____

Name: _SCOT REYES_____

Address: _13476 BEACH AVE. MDR, CA 90292_

Date: _FEB 23_____, 2004

Confidential - Attorney's Eyes Only

Exhibit 28, P. 443

MGA 0875566

## ACKNOWLEDGEMENT OF RECEIPT OF HANDBOOK

This is to acknowledge that I have received a copy of the Employee Handbook, and that I understand that it contains important information about the Company's personnel policies. *I acknowledge that I am expected to read, understand, and comply with the Company's policies and I will familiarize myself with those policies and practices.* I understand that the Company may from time to time and in its sole discretion, change, rescind or add to any policies, benefits or practices described. The Company will advise employees of material changes. I also know that it is my responsibility to request clarification of any policies I do not understand.

*Furthermore, I understand that employment with the Company is not for a specified term and is at the mutual consent of the employee and the Company. I understand also that either the Company or I may terminate the employment relationship at will, at any time, and with or without cause or advance notice.*

Date: 2·23·04

_____
Employee's Signature

Scot REYES
_____
Employee's Printed Name

57                                        January 2004

Exhibit 28, P. 444



**Corporate Office:**
16730 Schoenborn Street
North Hills, CA 91343-6122 USA
Tel  818.894.2525
Fax  818.894.8094

February 10, 2004

Scot Reyes

Dear Mr. Reyes:

It is our pleasure to extend an offer of employment to you for the position as **Small Dolls Designer** with MGA Entertainment, Inc.  As we discussed, this is a full-time position, with employment commencing on **Monday, February 23, 2004 at 8:30 a.m.** and is for no definite period.

Your compensation will be **$ 65,000.00 per year**, paid in accordance with the Company's regularly established policies.  After successfully completing a 3-month review your salary will be increased to $ 70,000 per year.  You will also be entitled to receive employment benefits as generally provided by the Company's policies and benefit plans.

As we have discussed, this is an at-will employment relationship, and either you or the Company may terminate the relationship for any reason, with or without cause, and with or without advance notice.  The Company may also terminate the relationship, without prior notice, for unsatisfactory job performance, misconduct, or failure to abide by personnel policies or the terms of this letter.

We agree that you will devote your best efforts to the performance of your job; that you will not engage in any activity that might be competitive with the Company's business or pose a conflict of interest with that business; and that you will not misuse, nor improperly disclose, any confidential or other proprietary information of the Company.  You will also be expected to comply with the Company's personnel policies, as set forth in the attached Employee Handbook, including referral of any disputes occurring between us to arbitration.  This offer is contingent upon your signing the attached Arbitration Agreement, as well as passing a company required background check.

**MGA Entertainment (HK) Ltd.**
Room 1001, 10/F., Empire Center
68 Mody Road,
Tsimshatsui East,
Kowloon, Hong Kong.
Tel  852.292.68008
Fax  852.231.20101





**REDACTED**



**Corporate Office:**
16730 Schoenborn Street
North Hills, CA 91343-6122 USA
Tel  818.894.2525
Fax  818.894.8094

Please indicate your agreement to the terms of this letter by signing one copy below and returning it to me.

Again, congratulations on your employment.  We look forward to working with you.

Sincerely,

Thomas F. Park III
COO
MGA Entertainment

I understand and agree to the above terms.

Date: 2/11/04    Signature: _____
                                                  Scot Reyes




**MGA Entertainment (HK) Ltd.**
Room 1001, 10/F., Empire Center
68 Mody Road,
Tsimshatsui East,
Kowloon, Hong Kong.
Tel  852.292.68008
Fax  852.231.20101

2

Confidential - Attorney's Eyes Only

Exhibit 28, P. 446

MGA 0875569