# Exhibit 29

# EMPLOYEE CONFIDENTIAL INFORMATION AND INVENTIONS AGREEMENT

I acknowledge that Mattel, Inc. (the "Company") operates in a competitive environment and that it enhances its opportunities to succeed by establishing certain policies, including those included in this Agreement. This Agreement is designed to make clear that: [i] I will maintain the confidentiality of the Company's trade secrets; [ii] I will use those trade secrets for the exclusive benefit of the Company; [iii] inventions that I create will be owned by the Company; [iv] my prior and continuing activities separate from the Company will not conflict with the Company's development of its proprietary rights; and [v] when and if my employment with the Company terminates I will not use any prior position with the Company to the detriment of the Company. In consideration of my employment with the Company and other good and valuable consideration, I agree that:

## 1. Provisions Related to Trade Secrets

[a] I acknowledge that the Company possesses and will continue to develop and acquire valuable Proprietary Information [as defined below], including information that I may develop or discover as a result of my employment with the Company. The value of that Proprietary Information depends on it remaining confidential. The Company depends on me to maintain that confidentiality, and I accept that position of trust.

[b] As used in this Agreement, "Proprietary Information" means any information [including formula, pattern, compilation, device, method, technique or process] that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and includes information on the Company, its customers, suppliers, joint ventures, licensors, licensees, distributors and other persons and entities with whom the Company does business.

[c] I will not disclose or use at any time either during or after my employment with the Company, any Proprietary Information except for the exclusive benefit of the Company as required by my duties for the Company, or as the Company expressly may consent to in writing. I will cooperate with the Company and use my best efforts to prevent the unauthorized disclosure, use or reproduction of all Proprietary Information.

[d] Upon leaving employment with the Company for any reason, I immediately will deliver to the Company all tangible, written, graphical, machine readable, and other materials [including all copies] in my possession or under my control containing or disclosing Proprietary Information.

## 2. Ownership of Inventions

[a] I agree to communicate to the Company as promptly and fully as practicable all Inventions [as defined below] conceived or reduced to practice by me [alone or jointly by others] at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in any patent, copyright, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees [without charge but at no expense to me] at any time in every proper way to obtain for its and/or their own benefit, patent and copyrights for all such Inventions anywhere in the world and to enforce its and/or their rights in legal proceedings.

[b] As used in this Agreement, the term "Inventions" includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable.

[c] Any provision in this Agreement requiring me to assign my rights in any Invention does not apply to an Invention which qualifies under the provision of Section 2870 of the California Labor Code. That section provides that the requirement to assign "shall not apply to an Invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities or trade secret information except for those inventions that either [1] relate at the time of conception or reduction to practice of the Invention to the employer's business, or actual or demonstrably anticipated research of development of the employer; or [2] result from any work performed by the employee for the employer." I understand that I bear the burden of proving that an Invention qualifies under Section 2870.

[d] I hereby irrevocably designate and appoint the Company and each of its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead to execute and file any document and to do all other lawfully permitted acts to further the prosecution, issuance and enforcement of patents, copyrights and other proprietary rights with the same force and effect as if executed and delivered by me.

## 3. Conflicts with Other Activities

[a] My employment with the Company requires my undivided attention and effort. Therefore, during my employment with the Company, I will fully comply with the Company's Conflict of Interest Policy, as it may be amended from time to time. I shall not, without the Company's express written consent, engage in any employment or business other than for the Company, or invest in or assist [in any manner] any business competitive with the business or future business plans of the Company.

## 4. Miscellaneous

[a] My obligations under this Agreement may not be modified or terminated, in whole or in part, except in writing signed by a Vice-President of the Company. Any waiver by the Company of a breach on any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach.

[b] Each provision of this Agreement will be treated as a separate and independent clause, and the unenforceability of any one provision will in no way impair the enforceability of any other provision. If any provision if held to be unenforceable, such provision will be construed by the appropriate judicial body by limiting or reducing it to the minimum extent necessary to make it legally enforceable.

[c] My obligation under this Agreement will survive the termination of my employment, regardless of the manner of such termination. This Agreement will inure to the benefit of and be binding upon the successors and assigns of the Company.

[d] I understand that the provisions of this Agreement are a material condition to my employment with the Company. I also understand that this Agreement is not an employment contract, and nothing in this Agreement creates any right to my continuous employment by the Company, or to my employment for any particular term.

[e] Any breach of this Agreement likely will cause irreparable harm to the Company for which money damages could not reasonably or adequately compensate the Company. Accordingly, I agree that the Company will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

[f] This agreement will be governed by and interpreted in accordance with the laws of the State of California.

[g] This Agreement contains the complete agreement between the Company and me concerning the subject matter hereof and supersedes all other agreements and understandings. This Agreement may be executed in counterparts. This Agreement will be deemed effective as of the start of Employee's employment with the Company.

**CAUTION: THIS AGREEMENT CREATES IMPORTANT OBLIGATIONS OF TRUST AND AFFECTS THE EMPLOYEE'S RIGHTS TO INVENTIONS THE EMPLOYEE MAY MAKE DURING HIS OR HER EMPLOYMENT.**

Employee Signature: _Carter H. Bryant_

Employee Name (print): CARTER H. BRYANT

Date: 01/04/99

Signature: _Teresa Newcomb_

Name of Witness (print): TERESA NEWCOMB

M 0001596

DEPOSITION EXHIBIT
25
11-8-04   SH

Exhibit 29
P. 447

**Exhibit 30**

---

**From:** Craig Holden [mailto:CHolden@mgae.com]
**Sent:** Wednesday, June 20, 2007 12:06 PM
**To:** Michael Page; Isaac Larian (President / CEO); John Keker
**Cc:** pglaser@chrisglase.com; O'Melveny & Myers - Dale Cendali
**Subject:** RE: Bills

Michael,

There are several problems with your response below.

REDACTED

Whatever agreement or non-agreement was made should have been contemporaneously memorialized by KVN and communicated to and approved by MGA.

REDACTED

Third, I've reviewed KVN's bills and they are replete with problem entries.

REDACTED

The cost entries are no better. There is no backup (receipts) for KVN's costs and some costs are inappropriate (e.g., Christa's stay at the 6-Star Peninsula Hotel and her meal at Morton's Steakhouse; or approximately $7500 for Westlaw/Lexis; etc.). I could go on. All of these are expressly contrary to MGA's billing guidelines.

Finally, and most importantly, Isaac has fully closed the loop on this subject: MGA will not be paying for any fees before May 17th. Let's move on.

REDACTED

12/27/2007          CONFIDENTIAL –
                    ATTORNEYS' EYES ONLY

Exhibit 30 ,
P. 448

CONFIDENTIAL  -  ATTORNEYS'  EYES  ONLY

MGA  3765585

Re: Bills                                                                                    Page 2 of 5

REDACTED

MGA is prepared to execute the retention agreement as revised and pursuant to MGA's billing guidelines.

Craig Holden
Senior Counsel
MGA Entertainment, Inc.
Dir. 818.221.4403
Cel. 818.441.2731

**From:** Michael Page [mailto:MPage@KVN.com]
**Sent:** Tuesday, June 19, 2007 10:59 PM
**To:** Isaac Larian (President / CEO); Craig Holden; John Keker
**Cc:** pglaser@chrisglase.com; O'Melveny & Myers - Dale Cendall
**Subject:** Re: Bills


Isaac:

I don't want to be difficult either, and agree we need to move on.  But this is ridiculous.

REDACTED

_____ you never gave a hint that you objected or intended to turn around and stiff us on our bills.  We have now been working on this case for two and a half months, and you have not paid us a cent.  You agreed to pay us, we went to work based on that agreement, and you reneged.

REDACTED

-----Original Message-----
From: Isaac Larian (President / CEO) <Larian11@mgae.com>
To: Michael Page; Craig Holden <CHolden@mgae.com>; John Keker
CC: pglaser@chrisglase.com <pglaser@chrisglase.com>
Sent: Tue Jun 19 22:11:27 2007
Subject: RE: Bills

Michael,


I really don't want to be difficult.


But, I have now checked with Dale, and Daphne and they said they never authorized this Work .

REDACTED

MGA has been very generous to pay his fees          REDACTED          and agrees to pay them in the future, per

CONFIDENTIAL –
ATTORNEYS' EYES ONLY

Exhibit 30,<br>P. 449

Re: Bills                                                                 Page 3 of 5

the terms and conditions we agreed, even though by contract, it is CB who is supposed to indemnify and defend MGA.

In the mean time, we continue to pay him millions of dollars in royalties.

CB should pay for these bills and we need to move on.

                    REDACTED

Thanks

Isaac Larian
CEO
MGA Entertainment, Inc
A Consumer Entertainment Product Co.
" The real secret of success is enthusiasm." - Walter P. Chrysler
16380 Roscoe Blvd. Suite 200
Van Nuys, California 91406
Tel: 818-894-3150
email: lariani1@mgae.com <blocked::mailto:lariani1@mgae.com>
fax: 818-894-1267
www.mgae.com <http://www.mgae.com/>
www.bratz.com <http://www.bratz.com>
www.Littletikes.com <http://www.Littletikes.com>
www.Miuchiz.com <http://www.Miuchiz.com>

––––––––––––––––––––
From: Michael Page [mailto:MPage@KVN.com]
Sent: Tuesday, June 19, 2007 1:31 PM
To: Craig Holden; John Keker; Isaac Larian (President / CEO)
Cc: pglaser@chrisglase.com
Subject: RE: Bills

We understand that. The problem is that we had already been working on non-transition tasks for more than a month by then.
                    REDACTED

––––––––––––––––––––
From: Craig Holden [mailto:CHolden@mgae.com]
Sent: Tuesday, June 19, 2007 1:27 PM
To: John Keker; Isaac Larian (President / CEO)

CONFIDENTIAL –
ATTORNEYS' EYES ONLY

Exhibit 30,
P. 450

CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    MGA 3765587

Re: Bills

Cc: pglaser@chrisglase.com; Michael Page
Subject: RE: Bills

I believe Isaac is using the term "transition" to refer to the May 17th substitution filed by Littler.

---

Craig Holden
Senior Counsel
MGA Entertainment, Inc.
Dir. 818.221.4403

Cel. 818.441.2731

---

From: John Keker [mailto:JKeker@KVN.com]
Sent: Tuesday, June 19, 2007 1:18 PM
To: Isaac Larian (President / CEO)
Cc: pglaser@chrisglase.com; Craig Holden; Michael Page
Subject: Re: Bills

Transition was April 5. Is your instruction to pay us starting then?    REDACTED
                I'm in NY too, 212 308 9100 rm 2112.

-----Original Message-----
From: Isaac Larian (President / CEO) <LarianI1@mgae.com>
To: John Keker
CC: pglaser@chrisglase.com <pglaser@chrisglase.com>; Craig Holden.<CHolden@mgae.com>
Sent: Tue Jun 19 13:13:23 2007
Subject: Re: Bills

John

Im in NY.

CB must pay the bills before transition.

    REDACTED

Best Regards,

Isaac Larian
CEO

" Fortune favors the BOLD"
MGA ENTERTAINMENT
A Consumer Entertainment Produts Company
16380 Roscoe Blvd
Van Nuys, Ca. 91406
www.Bratz.com
Tel: 818 894-3150
Fax: 818 894-1267

CONFIDENTIAL –
ATTORNEYS' EYES ONLY

Exhibit 30,
P. 451

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Re: Bills                                                                                          Page 5 of 5

-----Original Message-----
From: John Keker <JKeker@KVN.com>
To: Isaac Larian (President / CEO)
CC: pglaser@chrisglase.com <pglaser@chrisglase.com>
Sent: Tue Jun 19 13:10:46 2007
Subject: Bills

At Patty's suggestion, Mike Page contacted Craig Holden, who said he has no authority with respect to our bills and we have to talk to Issac.

Issac?

*****************************************************************
IMPORTANT NOTICE: This e-mail message (including any attachments) constitutes non-public information intended to be conveyed only to specific recipients. It may contain information which is confidential, legally privileged and/or exempt from disclosure under applicable law. If you are not the intended recipient (or a party responsible for delivering this message to the intended recipient), you are hereby notified that you are NOT authorized to review, use, disclose, distribute or copy this communication in any way. If you have received this message in error, please permanently delete this e-mail and any copies from your computer system without delay. Please also notify the sender (or administrator@mgae.com) by return e-mail, and thereafter delete your reply. Thank you.
*****************************************************************

*****************************************************************
IMPORTANT NOTICE: This e-mail message (including any attachments) constitutes non-public information intended to be conveyed only to specific recipients. It may contain information which is confidential, legally privileged and/or exempt from disclosure under applicable law. If you are not the intended recipient (or a party responsible for delivering this message to the intended recipient), you are hereby notified that you are NOT authorized to review, use, disclose, distribute or copy this communication in any way. If you have received this message in error, please permanently delete this e-mail and any copies from your computer system without delay. Please also notify the sender (or administrator@mgae.com) by return e-mail, and thereafter delete your reply. Thank you.
*****************************************************************

*****************************************************************
IMPORTANT NOTICE: This e-mail message (including any attachments) constitutes non-public information intended to be conveyed only to specific recipients. It may contain information which is confidential, legally privileged and/or exempt from disclosure under applicable law. If you are not the intended recipient (or a party responsible for delivering this message to the intended recipient), you are hereby notified that you are NOT authorized to review, use, disclose, distribute or copy this communication in any way. If you have received this message in error, please permanently delete this e-mail and any copies from your computer system without delay. Please also notify the sender (or administrator@mgae.com) by return e-mail, and thereafter delete your reply. Thank you.
*****************************************************************

*****************************************************************
IMPORTANT NOTICE: This e-mail message (including any attachments) constitutes non-public information intended to be conveyed only to specific recipients. It may contain information which is confidential, legally privileged and/or exempt from disclosure under applicable law. If you are not the intended recipient (or a party responsible for delivering this message to the intended recipient), you are hereby notified that you are NOT authorized to review, use, disclose, distribute or copy this communication in any way. If you have received this message in error, please permanently delete this e-mail and any copies from your computer system without delay. Please also notify the sender (or administrator@mgae.com) by return e-mail, and thereafter delete your reply. Thank you.
*****************************************************************

CONFIDENTIAL –
ATTORNEYS' EYES ONLY

12/27/2007

Exhibit 30
P. 452

CONFIDENTIAL – ATTORNEYS' EYES ONLY                                           MGA 3765589

**Exhibit 31**



Corporate Office:
16380 Roscoe Blvd.
Van Nuys, CA 91406
USA

Phone: 818.894.2525
Fax: 818.895.0771

## MGA ENTERTAINMENT BILLING POLICY – ALL MATTEL-RELATED LITIGATION

In order to avoid delays in processing and payment, every invoice submitted to MGA should be sent to the Craig Holden, Senior Counsel, MGA Entertainment, via hardcopy and via email (in MS Word format) at CHolden@mgae.com, and must adhere to the guidelines set forth below. If an invoice is prepared in accordance with these guidelines, payment should be expected within 30 days. If payment has not been received within this period, or for general billing questions, please feel free to contact Frank Roca at 1-818-894-2525, via fax at 1-818-895-0771, or by email at froca@mgae.com.

**Unless prior approval has been granted, any variance from this policy may result in the non-payment or return of an invoice so that it can be revised to conform to these policies.**

I.    **General**

1.    All invoices must indicate the specific MGA entity for which services are rendered. Please do not combine work for different MGA entities or in different countries on one invoice.

2.    All invoices must indicate the name of the lawyer or other individual at MGA at whose request the services were rendered and list the name of the person with whom the lawyer is dealing on the specific matter. Do not just refer to "client".

3.    *All invoices must have an invoice number that is unique to that invoice.* The vendor's file/matter number should be included as well.

4.    All invoices must be dated and should include the date range of the services covered by the bill (e.g., 12/31/2006, for the period 12/1/2006 through 12/31/2006).

5.    All invoices must be for a specific matter and entity. We cannot process any invoice that contains multiple matters on one invoice or that includes work for several MGA entities. We will expect you to open up a new matter for billing purposes whenever we ask you to undertake a new project.

6.    *All invoices (including those from third parties billed via the firm) should be submitted on a monthly basis.* In cases where this is not possible, we require quarterly billing at a minimum.

NOTE: MGA will not pay any fees billed more than 6 months after the date the services were rendered. Also, MGA will not pay for any "soft" costs (internally

Exhibit 31,
P. 453

CONFIDENTIAL – ATTORNEYS' EYES ONLY

MGA 3709766

generated charges) which are invoiced more than 60 days after being incurred, or any "hard" costs (externally invoiced charges) which are invoiced to MGA more than 60 days after being invoiced to the firm by the third party vendor.

7.    Do not send multiple copies of invoices to multiple individuals at MGA or send invoices by both email or fax and regular mail.

8.    All invoices must indicate the payment address where the check should be mailed or the bank information needed if wire transfer payment is to be made.

9.    *Invoices must state a US currency amount* to be paid, even if billed in local currency.

10.    MGA does not pay retainers.

II.    **Services Performed**

1.    All invoices must clearly set forth the following:

    a.    *Fees must include a descriptive narrative of the services performed on a day-by-day and task-by-task basis, indicating the name of the billing attorney, the amount of time spent by each attorney on each task (even if on the same day), a detailed description of the services, the attorney's hourly billing rate, and the total cost of the service. Invoices should include actual time spent, accounted for on a one-eighth (.125) of an hour basis. A summary of the hours, by attorney, should be included on the last page of your invoice.*

    b.    There should be no "Block Billing": all billing entries should itemize each task and show the amount of time taken to complete each task, even if the tasks are performed consecutively in time, on the same day. There should be no "block billing" (i.e., lumping together tasks without itemizing how much time each task took).

        (i)    Billing entries should be sufficiently detailed to allow a determination of the nature of the professional service performed. For example, entries for conferences should identify the participants and the subject or purpose of the communication. Entries for drafting or reviewing documents should identify the documents with particularity. Entries that describe drafting or reviewing of correspondence should identify the correspondent and the subject of the correspondence, and entries for legal research should describe the specific issues research and the purpose of the research.

        NOTE: It is not acceptable to submit a single narrative description for all work done during a particular time period, or to simply bill for unidentifiable work, such as "call to opposing counsel."

    c.    *MGA considers the following to be administrative non-billable items:*

2

Exhibit 31
P. 454

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3709767

(i)     Communications regarding billing issues and the negotiation of retainer letters;

(ii)    Review and preparation of responses to audit letters in excess of .5 hours per matter up to a maximum of 2 hours for all matters requiring an audit letter;

(iii)   Preparing matter budgets and/or matter management summaries;

(iv)    File organization and other clerical/secretarial work, including docketing and overtime, as well as administrative work;

Clerical activities include tasks that do not require legal acumen and may (and should) be effectively performed by support personnel or secretaries. Tasks associated with the day-to-day operation of a law firm are considered to be administrative in nature and, as such, are reflected in the hourly rates charged by the firm. Clerical activities that should not be billed include the time associated with filing, printing and searching for documents, organizing and updating files and databases, retrieving and distributing documents, calendaring events and court dates, photocopying, faxing and scanning, and arranging for the mailing or delivery of documents. Administrative activities include the training and supervision of staff.

(v)     Time charged for file transition between attorneys at the same firm (commonly referred to as "bringing-up-to speed") or for instructing others within the firm to perform a task or supervising more junior personnel. Additionally, all work should be undertaken at the "lowest" level possible, so that clerical services are handled on a non-billable basis, by clerical personnel.

(vi)    Overhead expenses such as word processing, library or factual research other than legal research (addressed elsewhere), space rental, retrieving files from storage, etc. As overhead costs, MGA expects these to be covered by the fees we pay.

d.      *Expenses* including fax charges, photocopy charges, internal messengers, etc., must be itemized individually on a day-to-day basis and indicate the matter to which they refer and recipients, as appropriate. Please do not use messenger or overnight delivery services, if not required and do not charge us to send us your bills or communicate with us about billing issues, retainer letters or budgets. Further, details regarding the charges "per copy" (e.g., 5 cents/page) or "per fax" should be outlined on the bill according to the following schedule:

(i)     *Black and white copies at no more than 10 cents per page*
(ii)    *Color copies at no more than 50 cents per page*
(iii)   *Incoming faxes at no charge and outgoing faxes at actual phone rate charge only.*
(iv)    *Scanning charges at no more than 10 cents per page*

3

Exhibit 31
P. 455

CONFIDENTIAL - ATTORNEYS' EYES ONLY                                    MGA 3709768

(v)    *We require documentary substantiation for any single cost item exceeding $250.*

VARIATIONS FROM THESE APPROVED AMOUNTS MUST BE PRE-APPROVED.

ADDITIONALLY, FOR LARGE COPYING AND LITIGATION MATTERS, MGA HAS ARRANGED FOR SPECIAL RATES WITH AN APPROVED VENDOR, SO SUCH PROJECTS SHOULD BE COORDINATED WITH THE MGA LEGAL CONTACT WITH WHOM YOU ARE WORKING.

e.    <u>Disbursements and third party costs</u>, including external messengers, filing fees, deposition reporting or videography services, expert fees, travel services, etc. are reimbursed at actual cost, without any mark-up. A copy of the third party's invoice and/or receipts for disbursements should be attached as supporting documentation for any single charge or cumulative charges on a per vendor basis, in excess of $250. MGA does not reimburse for after hours commuting/car service charges or meals other than during approved travel.

PLEASE NOTE THAT YOU SHOULD COORDINATE ANY ORDERS FOR DEPOSITION REPORTING AND VIDEOGRAPHER SERVICES WITH YOUR MGA LEGAL CONTACT, AS MGA HAS SECURED PREFERRED RATES WITH A COMPANY THAT WILL DIRECT BILL MGA. PLEASE DO NOT JUST USE YOUR REGULAR FIRM CONTACT, UNLESS PRE-APPROVED BY MGA.

(i)    <u>Travel</u>: MGA will reimburse only for necessary travel and for coach airfare. All reasonable and documented travel and related expenses must be in accordance with MGA's standard reimbursement policy regarding travel and expense (including permitted class of air travel, approved carriers and approved hotels, at MGA-negotiated rates). While MGA does not pay for "travel time," it **does pay for work performed on MGA matters during travel for MGA billed per this policy,** and any reasonable transit/waiting time where work cannot be performed (e.g., waiting at a ticket counter or airport security line).

f.    MGA will only pay for the time of those individuals working on MGA-related matters that it pre-approves. MGA will not pay for any time charged by any attorney who is not pre-approved to work on a specific matter.

g.    Electronic legal research (i.e., Lexis-Nexis or Westlaw): Because O'Melveny & Myers (OMM) has a flat fee arrangement for these research services and does not bill MGA for the costs, you agree to make every effort where practical to have OMM perform legal research. You will also pass on all volume or other discounts and not mark up any vendor fees. MGA must pre-approve any legal research project in excess of 3 hours and/or $750.00.

4.

Exhibit 31
P. 456

CONFIDENTIAL — ATTORNEYS' EYES ONLY

MGA 3709769

III.   **Litigation/Claims**

1.   *All invoices must indicate an inception of matter to current date total for costs and fees.*

2.   All invoices must be billed at the hourly rates in effect at the time the matter was assigned. Any increase in rates must be communicated to and approved in writing by MGA prior to any increase in billing rates.

3.   Unless pre-approved, MGA only pays for one individual to attend meetings, court hearings, or depositions.

4.   Unless pre-approved, all insurance matters are subject to the restrictions imposed on MGA by the insurance carrier. This applies to hourly rates, types of services covered (e.g., no inter-office conferences), and disbursements.

IV.   **Intellectual Property**

1.   Trademark application invoices must indicate the MGA trademark, the class of goods and services, and the territory covered by the application.

2.   Patent application invoices must clearly identify the patent name, the corresponding U.S. patent application number, if any, and the territory covered by the application.

3.   Copyright application invoices must clearly identify the application number and the name of and type of work covered by the application.

4.   Domain name registration invoices must clearly identify the domain name, the billing contact name listed on the domain name registration, and the registration term.

5.   Fee schedules, including standard governmental filing fees, translation costs, if applicable, flat rate (per application) fees, and hourly rates need to be provided on an annual basis or as updated.

V.   **International**

1.   All invoices must be submitted in English. MGA conducts business in English and will not pay for any invoices or time records to be translated into English. Please ensure that all those working on MGA matters keep proper records so that invoices can be prepared, with all required details listed above, in English.

2.   Any invoices for services rendered by foreign or local counsel on behalf of the firm for MGA (e.g., barrister fees) must be submitted to MGA along with the vendor's invoice. The retainer of such individuals must be pre-approved by MGA.

3.   MGA should be invoiced in a manner providing the best possible tax benefit (e.g., reimbursement for VAT (Value Added Taxes) or GST (Goods and Services

5

Exhibit _31_
P. _457_

CONFIDENTIAL – ATTORNEYS' EYES ONLY

MGA 3709770

Taxes)), by using the address of the local MGA office, if any, on the invoice and sending the actual invoice to the corporate office for approval.

6

Exhibit _31_,
P. _450_

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3709771

**Exhibit 32**

From:       DCendali@OMM.com [DCendali@OMM.com]
To:         Craig Holden; Isaac Larian (President / CEO)
Subject:    Re: KVN Pre- May 17th Bills
Date:       6/23/2007 12:02:24 PM
CC:         pglaser@chrisglase.com; Daphne Gronich
BCC:

Message:

REDACTED

----- Original Message -----
From: Craig Holden <CHolden@mgae.com>
To: Cendali, Dale; Isaac Larian (President / CEO) <LarianI1@mgae.com>
Cc: Pglaser@chrisglase.com <Pglaser@chrisglase.com>; Daphne Gronich <DGronich@mgae.com>
Sent: Sat Jun 23 12:04:28 2007
Subject: Re: KVN Pre- May 17th Bills

REDACTED

-----Original Message-----
From: Cendali, Dale <DCendali@OMM.com>
To: Craig Holden; Isaac Larian (President / CEO)
CC: pglaser@chrisglase.com <pglaser@chrisglase.com>; Daphne Gronich
Sent: Sat Jun 23 07:58:46 2007
Subject: RE: KVN Pre- May 17th Bills

REDACTED          Christa is very nice and is easy to deal with.

From: Craig Holden [mailto:CHolden@mgae.com]
Sent: Friday, June 22, 2007 8:53 PM
To: Isaac Larian (President / CEO)
Cc: pglaser@chrisglase.com; Cendali, Dale; Daphne Gronich; Craig Holden
Subject: KVN Pre- May 17th Bills

I just ended a phone call with John Keker. The call was pleasant and he was generally agreeable. Here's the outcome:

REDACTED

Exhibit  3 2
P. 459

CONFIDENTIAL - ATTORNEYS' EYES ONLY                    MGA 3709794

REDACTED

Craig

-----Original Message-----
From: Isaac Larian (President / CEO)
Sent: Friday, June 22, 2007 5:36 PM
To: Craig Holden
Subject: Re: This afternoon

Ok.

Let me know how it goes.

Good luck.

Best Regards,

Isaac Larian

Exhibit 3∂,
P. 460

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3709795

CEO

" Fortune favors the BOLD"

MGA ENTERTAINMENT

A Consumer Entertainment Produts Company

16380 Roscoe Blvd

Van Nuys, Ca. 91406

www.Bratz.com

Tel: 818 894-3150

Fax: 818 894-1267


-----Original Message-----

From: Craig Holden

To: 'pglaser@chrisglase.com' <pglaser@chrisglase.com>

CC: Isaac Larian (President / CEO)

Sent: Fri Jun 22 15:49:17 2007

Subject: RE: This afternoon

# REDACTED

_____

From: Craig Holden

Sent: Friday, June 22, 2007 3:44 PM

To: pglaser@chrisglase.com

Cc: Isaac Larian (President / CEO)

Exhibit 32,
P. 461

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3709796

Subject: FW: This afternoon

REDACTED

---

Craig Holden

Senior Counsel

MGA Entertainment, Inc.

Dir. 818.221.4403

Cel. 818,441.2731

---

From: John Keker [mailto:JKeker@KVN.com]

Sent: Friday, June 22, 2007 2:41 PM

To: Craig Holden

Cc: Michael Page

Subject: This afternoon

Exhibit 32.
P. 462

CONFIDENTIAL – ATTORNEYS' EYES ONLY

MGA 3709797

I will be at 415 391 5400 at 5 pm today

********************************************************************

IMPORTANT NOTICE: This e-mail message (including any attachments) constitutes non-public information intended to be conveyed only to specific recipients. It may contain information which is confidential, legally privileged and/or exempt from disclosure under applicable law. If you are not the intended recipient (or a party responsible for delivering this message to the intended recipient), you are hereby notified that you are NOT authorized to review, use, disclose, distribute or copy this communication in any way. If you have received this message in error, please permanently delete this e-mail and any copies from your computer system without delay. Please also notify the sender (or administrator@mgae.com) by return e-mail, and thereafter delete your reply. Thank you.

********************************************************************

********************************************************************

IMPORTANT NOTICE: This e-mail message (including any attachments) constitutes non-public information intended to be conveyed only to specific recipients. It may contain information which is confidential, legally privileged and/or exempt from disclosure under applicable law. If you are not the intended recipient (or a party responsible for delivering this message to the intended recipient), you are hereby notified that you are NOT authorized to review, use, disclose, distribute or copy this communication in any way. If you have received this message in error, please permanently delete this e-mail and any copies from your computer system without delay. Please also notify the sender (or administrator@mgae.com) by return e-mail, and thereafter delete your reply. Thank you.

********************************************************************

Exhibit 32,
P. 463

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3709798

**Exhibit 33**

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California  90017-2543
    Telephone:  (213) 443-3000
7   Facsimile:   (213) 443-3100

8   Attorneys for Plaintiff Mattel, Inc.

9                UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

| 12 | CARTER BRYANT, an individual, | CASE NO. CV 04-09049 SGL (RNBx) |
|----|----|----|
| 13 | Plaintiff, | Consolidated with Case Nos. CV 04-9059 and CV 05-2727 |
| 14 | vs. | MATTEL, INC.'S FIFTH SET OF INTERROGATORIES |
| 15 | MATTEL, INC., a Delaware corporation, | |
| 16 | | Discovery Cut-off: January 14, 2008 Pre-trial Conference:  April 7, 2008 |
| 17 | Defendant. | Trial Date:  April 29, 2008 |
| 18 | AND CONSOLIDATED ACTIONS | Discovery Cutoff:  March 3, 2008 Final Pretrial Conf.:  June 2, 2008 |
| 19 | | Trial Date:  July 1, 2008 |

20

21

22   PROPOUNDING PARTY:     Mattel, Inc.

23   RESPONDING PARTIES:    MGA Entertainment, Inc., Isaac Larian, Carter

24                          Bryant, MGA Entertainment (HK) Limited, MGAE

25                          de Mexico S.R.L. de C.V., and Carlos Gustavo

26                          Machado Gomez

27   SET NO.:               FIVE

28

07209/2259967.1

MATTEL'S FIFTH SET OF INTERROGATORIES

Exhibit  33
P. 464

## Interrogatories

**INTERROGATORY NO. 46:**

Without disclosing the content of communications which are protected by the attorney-client privilege, state fully and in detail all facts which REFER OR RELATE TO any dispute relating to THIS ACTION between, on the one hand, MGA, LARIAN, BRYANT and/or MACHADO and, on the other hand, O'MELVENY and/or CHRISTENSEN, including but not limited to any and all disputes which were or have been asserted as a basis for, or which underlie, contributed to or were a factor in, the withdrawal, termination and/or substitution of O'MELVENY and/or CHRISTENSEN as counsel of record in this ACTION, and IDENTIFY all PERSONS with knowledge of such facts and all DOCUMENTS that REFER OR RELATE TO such facts.

**INTERROGATORY NO. 47:**

IDENTIFY each and every SOURCE OF INFORMATION from which YOU have COLLECTED DOCUMENTS in THIS ACTION that REFER OR RELATE TO BRATZ and that also REFER OR RELATE TO the time period prior to February 28, 2001 (regardless of when such DOCUMENT was, in whole or part, created, drafted, generated, sent, received or transmitted).

DATED:  October 19, 2007          QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By B. Dylan Proctor
B. Dylan Proctor
Attorneys for Plaintiff
Mattel, Inc.

07209/2259967.1

-9-

Exhibit  33
P.  465

**Exhibit 34**

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2     John B. Quinn (Bar No. 090378)
      johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
      Timothy L. Alger (Bar No. 160303)
5     (timalger@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
6   Los Angeles, California 90017-2543
    Telephone: (213) 443-3000
7   Facsimile:  (213) 443-3100

8   Attorneys for Mattel, Inc.

9                UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11                      EASTERN DIVISION

12  CARTER BRYANT, an individual,        CASE NO. CV 04-9049 SGL (RNBx)

13              Plaintiff,                Consolidated with
                                          Case No. CV 04-09059
14        vs.                             Case No. CV 05-02727

15  MATTEL, INC., a Delaware             **DISCOVERY MATTER**
    corporation,
16                                        **[To Be Heard By Discovery Master
              Defendant.                  Hon. Edward Infante (Ret.) Pursuant
17                                        To The Court's Order of December 6,
    _____      2006]**

18  AND CONSOLIDATED ACTIONS             MATTEL, INC.'S OPPOSITION TO
19                                        MGA PARTIES' MOTION FOR
                                          CLARIFICATION REGARDING
20                                        PORTIONS OF FEBRUARY 15, 2008
                                          ORDER GRANTING IN PART AND
21                                        DENYING IN PART MATTEL'S
    **CONFIDENTIAL-ATTORNEYS'**           MOTION TO COMPEL RESPONSES
22  **EYES ONLY:**                        TO INTERROGATORY NOS. 27-44
                                          AND 46-50 BY THE MGA PARTIES
23  **FILED UNDER SEAL PURSUANT**
    **TO PROTECTIVE ORDER**               Date:   TBD
24                                        Time:   TBD
                                          Place:  Telephonic
25
                                          **Phase I**
26                                        Discovery Cut-off: January 28, 2008
                                          Pre-trial Conference: May 5, 2008
27                                        Trial Date: May 27, 2008

28
                       Exhibit 34,
                       P. 466

07209/2427963.2

_____
                MATTEL'S OPPOSITION TO MGA PARTIES' MOTION FOR CLARIFICATION

## Preliminary Statement

Once again MGA seeks to avoid its discovery obligations and a prior Order. After MGA failed to adequately respond to Mattel's interrogatories, Mattel brought a motion to compel, which the Discovery Master granted in part. Now, MGA seeks to avoid that ruling by arguing again that the information responsive to these interrogatories relates exclusively to Phase 2 claims and defenses. MGA, however, already made this argument to the Discovery Master and lost. MGA's Motion presents none of the grounds for reconsideration the Local Rules require. The same arguments should not be considered again.

The information that Mattel seeks relates to claims and defenses in Phase 1. It is not, as MGA argues, purely Phase 2. Mattel's interrogatories seek information that Mattel will use to show that the factual basis for MGA's attempts to reduce Mattel's claimed damages in Phase 1 is wrong. Specifically, MGA is not entitled to a reduction in Mattel's damages due to its "innovations" because it stole the purported "innovations" from Mattel. While the interrogatories also seek information that is relevant to Phase 2 (in addition to Phase 1), this in no way limits MGA's obligation to provide full responses. Accordingly, MGA should be ordered, once again, to fully answer the interrogatories.

## Argument

### I.    MGA IMPROPERLY SEEKS RECONSIDERATION OF THE DISCOVERY MASTER'S ORDER

MGA's motion, while styled as one for "clarification," is actually an improper request for reconsideration. MGA repeats the same arguments it presented at the February 11, 2008 hearing before the Discovery Master.[1] Under Local Rule 7-

---

[1]  MGA has made a practice of bringing improper motions under false pretenses—for example, its recently filed Motion to Strike Mattel's Reply in Support of its Motion for Reconsideration was actually an improper surreply.

1  18, a motion for reconsideration may be made only on the grounds of "a material

2  difference in fact or law from that presented to the Court" or the "emergence of new

3  material facts or a change of law occurring after the time of such decision" or "a

4  manifest showing of a failure to consider material facts presented to the Court before

5  such decision." <u>C.D. Cal. L.R.</u> 7-18.  Crucially, the rule mandates that "[n]o motion

6  for reconsideration shall in any manner repeat any oral or written argument made in

7  support of or in opposition to the original motion."  <u>Id.</u>

8          Yet, this is exactly what MGA has done.  At the February 11, 2008

9  hearing on Mattel's motion to compel, MGA's counsel sought to limit its obligations

10  to respond to Mattel's requests by arguing to the Discovery Master that the

11  interrogatories related to Phase 2 discovery:

12      And I submit, at least as to questions 43, 44, 48, 49, 50, are clearly all
        Phase 2, and there may be portions of some of the others that are as
13      well.[2]

14  As the transcript of that hearing reveals, the Discovery Master was mindful of the

15  effect of the Court's stay of Phase 2 discovery.[3]  Indeed, because of this, the

16  Discovery Master ordered the parties to meet and confer on a number of pending

17  motions given that "there are a number of things that are moving targets, because as

18  we saw this morning, Judge Larson has stayed the discovery as to Phase 2."[4]  The

19  Discovery Master considered the impact of the stay when he issued an Order

20  requiring MGA to respond to the interrogatories at issue.[5]

21

22  _____

23  [2]  Tr. of February 11, 2008 Hearing, at 34:6-12, Corey Decl., Exh. 1.
24  [3]  <u>See</u> <u>id.</u> at 56:9-12, Corey Decl., Exh. 1.
      [4]  <u>Id.</u> Corey Decl., Exh. 1.
25  [5]  <u>See</u> Order Granting in Part and Denying in part Mattel's Motion to Compel
26  Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties, dated
    February 15, 2008 ("Feb. 15 Order"), Miller Decl., Exh. C.  Although the Discovery
27  Master did not explicitly reject MGA's arguments that the interrogatories sought
28  Phase 2 discovery, this may be implied by the fact that the Discovery Master noted
        (footnote continued)

07209/2427963.2

Exhibit 34 ,
P. 468

1    Now MGA seeks "clarification" to impose a limitation on its Court-
2  ordered discovery obligations based on the same arguments which have already been
3  considered and rejected. This is an improper motion for reconsideration. Bordallo v.
4  Reyes, 763 F.2d 1098, 1101-02 (9th Cir. 1985) (whatever name a movant puts on a
5  motion, "nomenclature is not controlling . . . A court must construe whether a motion,
6  however styled, is appropriate for the relief requested").  MGA's motion raises no
7  new issue of law or fact and, in contradiction of the local rules, simply repeats the
8  same arguments previously made, wasting the valuable resources of the Court and the
9  parties.[6] See Semiconductor Energy Lab. Co. v. Chi Mei Optoelectronics Corp., No.
10  04-CV-04675, 2006 WL 2130866, at *1 (N.D. Cal. Jul. 27, 2006) (noting that
11  because party's "motion for clarification" did not "depart greatly from the arguments
12  already advanced" and could be treated as motion for reconsideration and "rejected
13  on that basis alone"). As such the Discovery Matter need not consider it, and MGA
14  should be ordered (once again) to respond to Mattel's interrogatories.

15

16  **II.    MATTEL'S INTERROGATORIES SEEK INFORMATION RELATED**
17      **TO PHASE 1**

18      MGA's argument fails on the merits. The information sought in Mattel's
19  interrogatories relates to matters that MGA has introduced into Phase 1, namely
20  damages.[7] MGA has submitted expert reports stating that Mattel's damages should be

21

22  _____

23  these same arguments in regard to other interrogatory requests. See Feb. 15 Order, at 12:24-27, Miller Decl., Exh. C (discussing interrogatories 48-50).

24  [6]  MGA's citation to the Court's February 25, 2008 hearing offers nothing new (Mot. at 2), as Judge Larson simply reiterated that Phase 2 discovery was stayed but
25  did not indicate that issues which touched on both Phase 1 and 2 could not proceed.
26  Indeed, as discussed herein, Judge Larson indicated that such discovery is permissible.
27  [7]  See July 2, 2007 Minute Order, at 2, Miller Decl., Exh. F; Mattel's
28  Memorandum Regarding Trial Structure, at 8-9, Miller Decl., Exh. G.

07209/2427963.2

-3-
MATTEL'S OPPOSITION TO MGA PARTIES' MOTION FOR CLARIFICATION

Exhibit 34,
P. 469

1   substantially reduced because "[t]he success of Bratz product line is attributable to

2   significant contributions made by MGA in the development, launch and growth of the

3   Bratz product line" above and beyond the value of the Bratz dolls that Bryant

4   created.[8]  For example, MGA has designated as a Phase 1 expert Erich

5   Joachimsthaler, who opines that MGA's branding and marketing efforts contributed

6   significantly to the success of Bratz.  Mr. Joachimsthaler concludes that "[b]ased on

7   the Bratz brand . . . the price premium that Bratz can realize over an unbranded

8   equivalent ranges from about 50% to 70% in the categories of fashion dolls and

9   accessories."[9]  Similarly, Paul Meyer, MGA's damages expert (who relies on

10  Joachimsthaler's report) concludes through his apportionment analysis that only a

11  quarter or less of MGA's profits are directly attributable to the value of Bratz, while

12  the bulk is a result of MGA's independent efforts.[10]

13          But many of the bases for these apportionments of Bratz profits by

14  which MGA seeks to reduce Mattel's damages may *themselves* have been the result of

15  MGA's pattern of stealing from Mattel.  Mattel is entitled to discovery to show this.

16  For example, Meyer's apportionment analysis states that the "development of the

17  Bratz product line was a collaborative effort involving contributions from numerous

18  people working on various aspects of product development."[11]  Meyer goes on to note

19  that among these "numerous people" were several former Mattel employees such as

20  Paula Garcia and Margaret Leahy[12]—who themselves may have stolen from Mattel.[13]

21

22

23

24  [8]   See Meyer Expert Report, at 12, Corey Decl., Exh. 3.
    [9]   Joachimsthaler Expert Report, at 6, Corey Decl., Exh. 4.
25  [10]  See Meyer Expert Report, at 5-7, 55, Corey Decl., Exh. 3.
    [11]  Meyer Expert Report, at 12, Corey Decl., Exh. 3.
26  [12]  See id. at 12-13, Corey Decl., Exh. 3.
27  [13]  See e.g., Leahy Depo. Tr. at 161:5-162:2, 185:11-190:7, Corey Decl., Exh. 5;
28  Garcia Depo. Tr. (V. 4) at 1147:6-1149:23, 1150:9-1151:15, Corey Decl., Exh. 7.

Exhibit 34,
P. 470

-4-

MATTEL'S OPPOSITION TO MGA PARTIES' MOTION FOR CLARIFICATION

1  Indeed, of the twelve individuals identified by Meyer as primarily contributors to

2  Bratz, five were former Mattel employees, while a sixth was a Mattel vendor.[14]

3           Mattel is entitled to discovery to determine which of MGA's claimed

4  "innovations" or "contributions" were stolen from Mattel.  Mattel's interrogatories go

5  to heart of this matter.  Interrogatory No. 41, for example, will reveal information

6  related to MGA's hiring of Mattel employees, which in turn is related to the use of

7  Mattel's confidential information for the claimed successful marketing and branding

8  on which MGA's apportionment analysis builds.  As such, the Discovery Master

9  should reject MGA's argument that "Mattel's claims of trade secret theft through the

10 hiring of former Mattel employees" are only related to Phase 2 "in that they relate to

11 Mattel's misappropriation of trade secret claims against MGA."  (Mot. at 5)

12          Similarly, Mattel's Interrogatory No. 43 and 44 seek information on the

13 dates of creation and other information related to the products that MGA contends

14 Mattel has infringed.[15]  From this, MGA argues that the interrogatories are "by

15 definition" related to Phase 2.  (Mot. at 6.)  But these products or designs which

16 MGA claims Mattel infringed may well be the same products or designs that MGA's

17 apportionment analysis is based on.  For example, Meyer opines:

18     Subsequent to the initial Bratz dolls, MGA has continued to create new
       Bratz characters, *themes, fashions* and packaging.  Consequentially,
19     MGA continued to devote substantial resources to create new Bratz
       products and expand the Bratz product line.[16]
20
21 Meyer goes on to state that the development of these fashions and themes "play a

22 large role in MGA's generation of Bratz sales and profits."[17]  However, Mattel alleges

23 that the items stolen from Mattel include "themes" and "fashions."  For example,

24 among the many documents stolen in Mexico was an early internal version of

25 _____

   [14]  See id.
26 [15]  See Mattel's Amended Fourth Set of Interrogatories No. 43 & 44, Miller Decl.,
27 Exh. L.
   [16]  See Meyer Expert Report, at 35, Corey Decl., Exh. 3 (emphasis added).
28 [17]  Meyer Expert Report, at 19, Corey Decl., Exh. 3.

Exhibit 34,   MATTEL'S OPPOSITION TO MGA PARTIES' MOTION FOR CLARIFICATION
P. 471

)7209/2427963.2

1 Mattel's product line list, which identified product themes.[18]  MGA cannot obtain a

2 deduction in Mattel's Phase 1 damages for MGA's themes if they were actually taken

3 from Mattel and copied by MGA.  Information on the timing of creation of specific

4 products, including themes, is thus necessary to rebut MGA's efforts to reduce

5 Mattel's damages in *Phase 1*.

6 　　　　　MGAE de Mexico's entire organization is built on the foundation of

7 Mattel's stolen intellectual property.  MGA hired several employees from Mattel's

8 operations in Mexico, who, before they left Mattel for MGA absconded with nearly

9 every type of document that a competitor would need to enter into the market in

10 Mexico and to compete with Mattel worldwide.  These included Mattel's latest global

11 internal future line lists that detailed anticipated future products, production and

12 shipping costs for Mattel products; daily sales data for Mattel products; customer

13 data; sales estimates and projections; marketing projections; documents analyzing

14 changes in sales performance from 2003 to 2004; budgets for advertising and

15 promotional expenses; strategic research reflecting consumer responses to products in

16 development; media plans; consumer comments regarding existing Mattel products

17 customer discounts and terms of sale; customer inventory level data; assessments of

18 promotional campaign success; market size historical data and projections; marketing

19 plans and strategies; merchandising plans; retail pricing and marketing strategies; and

20 other similar materials.[19]

21 　　　　　This information had a substantial impact on the overall "contributions

22 made by MGA in the development, launch and growth of the Bratz product line,"

23 which MGA claims should reduce Mattel's damages.  MGA's argument that MGAE

24 de Mexico should be relieved of its discovery obligations entirely because it was

25

26 _____

27 [18]　See Mattel's Global Line List, Corey Decl., Exh. 8.
    [19]　Mattel's Second Amended Answer and Counterclaims ¶¶ 37-54, at 39-44,

28 Corey Dec. Exh. 6; see also Mattel's Global Line List, Corey Decl., Exh. 8.

Exhibit 34,
P. 472

MATTEL'S OPPOSITION TO MGA PARTIES' MOTION FOR CLARIFICATION

07209/2427963.2

1  formed in 2004 and thus could not have been involved with the "acquisition or the

2  early development of Bratz" is of no moment.  (Mot. at 6.)  The point is that MGA

3  cannot use stolen information from Mattel to promote, develop, market and advertise

4  Bratz, and then rely on that stolen information to attempt to reduce Mattel's damages.

5  Mattel is entitled to discovery on this matter to rebut the damages issues that MGA is

6  trying to inject into Phase 1.[20]

7            Of course, MGA cites no authority for the proposition that simply

8  because a discovery request relates to both phases of a bifurcated trial, no discovery

9  may be taken.  Nor can it.  Courts frequently permit such discovery.  See, e.g., People

10 ex rel. Wheeler v. Southern Pac. Transp. Co., 1993 WL 816066, at *11 (E.D. Cal.

11 Sept. 2, 1993) (noting that where discovery sought was "relevant to both liability and

12 damages" it could be sought in "both phases of discovery").

13            In its motion, MGA cites to a recent hearing before Judge Larson to

14 suggest that somehow the Court has already ruled on the issue at bar.  (Mot. at 1-2.)

15 Not so.  Judge Larson merely indicated that a complete lifting of the stay for Phase 2

16 discovery would be unworkable.  However, he did not rule that Phase 1 discovery

17 which *also* relates to Phase 2 issues is barred by the stay.  In fact, Judge Larson's

18 paramount concern was avoiding disputes, like this one, about what belongs in Phase

19 1 and what is exclusively Phase 2 discovery.  He recognized the difficulty of drawing

20 such clear distinctions in every case and noted that in some instances, "if there was

21 still some overlap with Phase 1 and Phase 2, that could go forward as well."[21]

22 Indeed, Judge Larson indicated at the hearing that MGA cites that if party seeking the

23 discovery (in that case MGA) believes it to be Phase 1, then it should typically go

24 forward:

25 _____

26 [20]   Mattel does not concede that any such discussion of MGA's skills as a
27 company, creative or otherwise, has any place in Phase 1 and reserves all rights in
    this regard.
28 [21]   Tr. of February 25, 2008 Hearing, at 7:18-19, Corey Decl., Exh. 2.

Exhibit 34,
P. 473

-7-
MATTEL'S OPPOSITION TO MGA PARTIES' MOTION FOR CLARIFICATION

1   Jon Corey:   [The Deposition] was cancelled for the reason that its a
2   Phase 2 deposition.

    The Court:   That's not your call to make. That's Mr. Nolan's call to
3   make.  I'm not going to have Mr. Nolan deciding your witness lists or
    witness order, and I'm not going to have you deciding his.[22]
4

5   The same logic applies here.  MGA cannot avoid discovery on these issues now by

6   unilaterally deeming them to be Phase 2, when in fact MGA's Phase 1 strategy puts

7   this information at issue.

8                               **Conclusion**

9           For the foregoing reasons, Mattel respectfully requests that the Court

10  reject MGA's motion for clarification and again order responses to Mattel's

11  interrogatories.

12

13  DATED:  March 10, 2008           QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP
14

15                                   By_____
                                        Jon Corey
16                                      Attorneys for Mattel, Inc.

17

18

19

20

21

22

23

24

25

26

27  _____

28  [22]  Id. at 8:2-9, Corey Decl., Exh. 2.