1     customers too have been confused.

2         62.    Indeed, Mattel's television commercials and "My Scene" products

3 have become so confusingly similar to MGA's that even advertising executives

4 have expressed concern. One went so far as to say that although imitation is the

5 best form of flattery, what the individual had seen at Mattel's showroom, and how

6 its "My Scene" dolls now look so confusingly similar to "BRATZ", was

7 "shocking." This person further opined that it was clear that Mattel is intending to

8 confuse customers and capture "BRATZ" market share, and even asked MGA if it

9 was considering legal action.

10         63.    The press also has taken notice of Mattel's attempts to confuse

11 consumers. On or about February 18, 2005, a visitor to MGA's showroom from a

12 prominent news publication stated, "Oh my, I just came from Mattel's showroom

13 and their new 'My Scene' packaging is just like 'BRATZ' minus the handle."

14 Another member of the press visiting MGA's showroom offered the unsolicited

15 comment, "have you seen the new 'My Scene' dolls eyes are exactly like

16 'BRATZ'?" Yet another opined that Mattel's "My Scene" line was exactly like

17 "BRATZ", indeed, so much so that the reporter confusingly thought that Mattel had

18 bought "BRATZ", and still another has commented on Mattel's imitation of MGA.

19 On or about February 16, 2005, during an interview of a Mattel representative on

20 local network news in New York, "My Scene Barbie" was displayed by a Mattel

21 representative. During conversation about the dolls, the interviewer exclaimed that

22 they looked like "BRATZ". The Mattel representative just laughed – but this is no

23 laughing matter. This colloquy was available for replay and viewing, and was even

24 transcribed, on the internet.

25         64.    Customers too have been similarly confused. Some actually contacted

26 MGA seeking to purchase "My Scene" dolls.

27         65.    Mattel's conduct is planned, deliberate and intentional. Mattel has

28 systematically, copied, imitated and liberally borrowed many of the distinctive,

119

1 essential elements that identify and make "BRATZ" dolls "BRATZ" dolls, diluting
2 the brand, creating customer confusion, and unfairly stifling competition.

3     66.    Ironically, Mattel sued one of its other competitors in Europe for doing
4 much the same thing: "systematically copying and borrowing elements" from "My
5 Scene", on grounds that "this conduct constitutes unfair competition and passing
6 off." Indeed it does.

7     67.    What is more, Mattel's conduct has reached beyond "BRATZ" and
8 "BRATZ"-related products to include other new MGA toy lines.

9     68.    For example, MGA's "4-Ever Best Friends" line was the obvious, and
10 well-recognized model for Mattel's "Wee 3 Friends" line. Mattel even adopted
11 changes to the color scheme of its similarly-shaped packaging to create confusion
12 with MGA's distinctive packaging.

**MGA's "4-Ever Best Friends"**      **Mattel's "Wee 3 Friends"**





69.    In the second half of 2002, MGA's "Mommy's Little Patient," originally designed as the first in a series of "Mommy's Little . . ." dolls, was followed by Mattel's "Little Mommy" doll.

<table>
<tr><td align="center"><b>MGA's<br>"Mommy's Little Patient"</b></td><td align="center"><b>Mattel's<br>"Little Mommy Potty Training Baby Doll"</b></td></tr>
</table>

 

70.    Sparing nothing, Mattel has also extended its monkey-see monkey-do behavior into its boys' line.  When MGA came out with its "Alien Racers" line of toy racing vehicles, for instance, Mattel rushed to revamp and rename one of its "Hot Wheels" lines.  Although well-known and clearly branded for decades as "Hot Wheels", Mattel's answer to MGA's "Alien Racers" was to re-brand and market its Hot Wheels Highway 35 line under an "AcceleRacerS" logo.  MGA's line consists of "extreme" radio controlled racing vehicles marketed in connection with a strong, almost battle-like, science fiction theme.  MGA's logo accentuates the "A", "R", and "S" in compressed block lettering.  Mattel's line also consists of extreme racing vehicles marketed in connection with a strong, almost battle-like, theme.  Mattel's logo too accentuates the "A", "R", and "S" in compressed block lettering.

25

EXHIBIT 6 PAGE 121

71.   Here, too, Mattel's mimicry has spilled over into Mattel's advertising and thematic presentation and marketing of this toy line.  In particular, Mattel has adopted MGA's "other-worldly" theme in its commercials.  For instance, in Mattel's commercials, the product, whose logo appears as "AcceleRacerS", now compete against alien-like Cyborgs engaged in a "race to save the world," mimicking MGA's alien theme and commercials in which MGA's "Alien Racers" are engaged in a "race to save the universe."

72.   None of this is coincidence.  Mattel has deliberately adopted a pattern and practice of coming out with variations of MGA's products to create confusion in the marketplace, interfere with MGA's business and divert profits away from MGA.  Mattel says, on its website, that it is in the business of creating "[t]he world's premier toy brands [of] today and tomorrow."  It seemingly does so, however, by borrowing liberally from its competitors, even when it refreshes its own existing brands and products.

73.   MGA has suffered extensive injury from Mattel's conduct.  Mattel's habitual, serial simulation of MGA's products, product lines and trade dress has allowed Mattel to take a free ride on the extensive amount of time, expense and creative development MGA expends on developing new products, product packaging and presentation, giving Mattel an unfair advantage, and making it virtually impossible for MGA to compete with Mattel on a level playing field.

**Mattel's additional unfair, manipulative, anti-competitive conduct**

74.   This already substantial injury has been exacerbated by the strong-arm tactics, and other illegitimate, unfair and anti-competitive means that Mattel has used to manipulate the market and ensure that its control and domination of the industry can continue unabated.

6   122

75.     For example, wielding the litigation privilege as a potential shield for intimidating conduct, Mattel has sent threatening letters to several of its former employees who now work for MGA warning them not to disclose *even publicly available information* about Mattel, including the names and positions of Mattel employees.  Mattel even went so far as to sue one of its former senior executives, after he had the temerity to resign and join MGA in October 2004.  Not only was Mattel's lawsuit dismissed for failure to state a viable claim, but Mattel thereafter seemingly could not muster up a shred of evidence sufficient to support an amended complaint.  As a result, Mattel's case against its former executive was dismissed with prejudice.

76.     Mattel has also warned a number of companies, including the biggest publishing entity in the United Kingdom, not to license MGA products, or risk retribution.  The threats are not idle.  In May 2004, Mattel terminated one of its licensees, apparently in retribution for licensing "BRATZ".  While some companies have been courageous enough to take the risk, others have not, and MGA has lost valuable licensing opportunities as a result.

77.     Mattel has used similar intimidation to pressure distributors and retailers, particularly in foreign countries, not to distribute "BRATZ", to reduce shelf and display space for "BRATZ" and to place "BRATZ" in unfavorable locations at retail outlets.

78.     When MGA faced a shortage of doll hair in October 2002, MGA is informed and believes that the reason for that shortage was that Mattel had locked MGA out by buying up the supply from the two main hair supply companies.

79.     Mattel has also manipulated the retail market.  For instance, Mattel merchandisers have been caught tampering with MGA's retail displays, replacing favorably located MGA merchandise with Mattel merchandise instead.  MGA is also informed and believes that Mattel has falsely told a major United States retailer that MGA was giving another major United States retailer below-market pricing

27

EXHIBIT _6_ PAGE _123_

1    and falsely told a United Kingdom retailer that MGA was discontinuing one of its

2    lines, in order to make such line less attractive to buyers and thereby attempt to

3    increase sales of the competitive Mattel product and improve its own sales, at

4    MGA's expense.

5         80.    Even supposedly unbiased and impartial industry organizations have

6    fallen prey to Mattel's abusive wield of power, to MGA's detriment.

7         81.    NPD Funworld ("NPD"), for one, is the leading supplier of sales

8    statistics in the toy industry. Accurate NPD statistics are essential for efficient

9    product-line management. Without these statistics, it is difficult, if not impossible,

10   for toy companies to assess and measure the relative success of their products in

11   key categories. It is, however, a subscription service, and NPD restricts the manner

12   in which its subscribers may use the data it provides.

13        82.    Mattel has regularly ignored the restrictions – using NPD data about

14   Mattel's comparative standing relative to other companies in press releases and in

15   communications with retailers and financial investors who are not NPD subscribers.

16        83.    Mattel generates substantially more annual subscription revenue for

17   NPD than does MGA, and carries more clout.

18        84.    After MGA had subscribed to the service for more than 12 years, NPD

19   terminated MGA's subscription in 2003 theoretically on the grounds that MGA

20   misused NPD data in a press release.

21        85.    MGA is informed and believes that the termination was the result of

22   pressure from Mattel, notwithstanding Mattel's own frequent violations of NPD's

23   restrictions.

24        86.    In addition to this, the market share numbers that NPD generates are

25   heavily dependent on the category in which NPD places a particular product. MGA

26   is informed and believes that Mattel also pressured NPD into changing certain

27   product classifications for its "BRATZ" products in order to manipulate the data

28

EXH. 6. PG. 124

1   and preserve Mattel's market share rankings in the critical fashion doll category
2   and thereby lower MGA's.

3       87.    The Children's Advertising Review Unit ("CARU") is another
4   organization that, upon information and belief, appears to have been subject to
5   improper influence by Mattel. CARU is the toy industry's supposedly independent
6   self-regulatory body in charge of maintaining standards in advertising. CARU's
7   approval is considered critical within the toy industry to avoiding regulatory action
8   by the Federal Trade Commission.

9       88.    CARU is heavily subsidized by Mattel.

10       89.    Upon information and belief, Mattel has used its influence as a major
11   contributor to CARU's budget to induce CARU to place onerous restrictions on
12   MGA advertisements, and require MGA to amend aspects of commercials that have
13   gone unchallenged in other parties' commercials.

14       90.    As a result of CARU's restrictions, MGA has been forced to incur
15   unnecessary costs for reshooting and producing or re-editing its commercials.

16       91.    On several occasions, CARU has also either strongly suggested, if not
17   also required, that MGA respond to inquiries about its website policies and make
18   substantial changes to the "BRATZ" website notably and significantly in excess of
19   restrictions imposed on Mattel and others.

20       92.    Even TIA, the toy industry's trade association, is apparently not
21   untainted by Mattel's influence and power. Each year, TIA presents the Toy-of-
22   the-Year Awards, the most prestigious of which had been the award for Toy of the
23   Year. Winning the Toy of the Year Award is a significant achievement that not
24   only very likely increases the sales of the winning toy, but also denotes the winning
25   company as a leader in toy innovation and generates substantial goodwill with
26   retailers, distributors, licensees, and customers.

27       93.    For the years 2000 (the first year of the award), 2001 and 2002, the
28   Toy of the Year award was chosen by consumer vote. The awards ceremony was

EXHIBIT ___ PAGE /25

then held the following year, at a dinner in New York. (For example, the awards
dinner for the year 2000 award was held in February 2001). Leap Frog won the
2000 People's Choice Toy of the Year Award and MGA won the 2001 and 2002
People's Choice Toy of the Year Awards. With the 2003 Toy of the Year Award,
however, the rules suddenly changed. Now, the award is selected by members of
the industry.

94.    Upon information and belief, this change was orchestrated by a Fisher
Price (a Mattel subsidiary) executive who, until recently, served as the Chairman of
TIA.

95.    Perhaps not surprisingly given this change in the winner selection
procedures, "Hokey Pokey Elmo" ("Elmo"), a Fisher Price toy, won for the year
2003 (awarded in 2004), beating out the other leading nominee, "BRATZ Formal
Funk Super Stylin' Runway Disco."

96.    TIA has refused to provide MGA with the vote count procedure and
totals for this award, despite repeated requests.

97.    MGA is also informed and believes that Mattel was instrumental in
attempting to keep MGA from participating as a sponsor in this year's "Kids'
Choice Awards."

98.    Mattel has clearly engaged in tortious, illegal and unethical behavior in
its unfettered efforts to disrupt, if not destroy, MGA. Indeed, this is apparently
Mattel's current *modus operandi* when it comes to "competing" in the industry.
The once immensely successful "LeapFrog" interactive learning product, for
example, has apparently been one of Mattel's other recent victims.

99.    Mattel may not shield its illegal, unfair and unethical business practices
from the public eye. It is time for the truth to be told, and the world to know of
Mattel's unfair, unethical and illegal business practices and unfair competition.
"Barbie" does not "play nice" with others (particularly her competitors), and needs
to be taught how "to share" (at least in the fashion doll marketplace). She cannot be

EXHIBIT _6_ PAGE _126_

1 │ allowed to continue to be the playground bully and trample on the rights of others,

2 │ including MGA.

3 │     100.  As a result of Mattel's manipulative, illegal, unfair, unethical and anti-

4 │ competitive conduct, MGA has suffered and, unless abated, will continue to suffer

5 │ lost sales, lost licensing fees, lost contracts, lost relationships, lost business

6 │ opportunities and other damages and harm for which there is no adequate remedy at

7 │ law.  Its ability to enter new markets and product lines has been hampered and

8 │ delayed.  Its production costs have increased, its reputation and relationships with

9 │ important players in the industry have been negatively impacted, the value of its

10 │ business has been diminished, and its ability to attract, hire and retain employees

11 │ has been affected.

12 │

13 │ **FIRST CLAIM FOR RELIEF**

14 │ **(False Designation of Origin or Affiliation in Violation of 15 U.S.C. § 1125 (a))**

15 │     101.  MGA repeats and realleges the allegations contained in paragraphs 1

16 │ through 100 of this Complaint and incorporates them by reference as though fully

17 │ and completely set forth herein.

18 │     102.  MGA's "BRATZ" line has a unique and distinctive style and

19 │ distinctive characteristics, such as the disproportionately large head, large dramatic

20 │ eyes with a distinctive presentation (including the eye shape, make-up and lashes),

21 │ pouty, plump lips with a distinctive presentation (including the lip shape and make-

22 │ up), small, thin bodies, oversized feet, and up-to-date fashions.  MGA's "BRATZ"

23 │ line is known for and recognized by the total image that is presented by its product

24 │ and the style and arrangement of the packaging and display.  This "*tout ensemble*"

25 │ is representatively described and depicted herein.  The characteristics of MGA's

26 │ "BRATZ" line, alone or in combination, have come to identify the "BRATZ" line

27 │ and its source, MGA, and thus serve as protectable trade dress.  MGA's trade dress

28 │ in its "BRATZ" line is purely aesthetic and non-functional or, if any utility exists, it

31

EXHIBIT 4 PAGE 127

1   is not essential to the purpose, quality or source identifying attributes of the

2   aesthetics. MGA's trade dress in its "BRATZ" line is inherently distinctive or has

3   acquired distinction within the meaning of the Lanham Act.

4        103. Similarly, MGA's "BRATZ PETZ," part of the "BRATZ" line, also

5   has its own unique and distinctive characteristics, such as the humanlike eye and

6   unusual appearance of the animals dressed in clothing. MGA's "BRATZ PETZ"

7   line has become known for and recognized by the total image that is presented by

8   the product and the style and arrangement of its packaging. This "*tout ensemble*" is

9   representatively described and depicted herein. The characteristics of MGA's

10  "BRATZ PETZ", alone or in combination, have come to identify the "BRATZ

11  PETZ" line and its source, MGA, and thus serve as protectable trade dress. MGA's

12  trade dress in its "BRATZ PETZ" line is purely aesthetic and non-functional or, if

13  any utility exists, it is not essential to the purpose, quality or source identifying

14  attributes of the aesthetics. MGA's trade dress in its "BRATZ PETZ" line is

15  inherently distinctive or has acquired distinction within the meaning of the Lanham

16  Act.

17       104. Mattel's production, sale and marketing of "My Scene" dolls,

18  including styling heads and doll heads, and "My Scene" pets that are confusingly

19  similar to MGA's "BRATZ" line (including its "BRATZ PETZ"), without MGA's

20  permission or consent, constitutes designation and use of a term, symbol, device or

21  combination thereof that is false or misleading within the meaning of 15 U.S.C.

22  Section 1125 and is likely to cause confusion, or to cause mistake, or to deceive as

23  to the affiliation, connection, or association, or as to the origin, sponsorship, or

24  approval of Mattel's goods or commercial activities, within the meaning of 15

25  U.S.C. Section 1125. MGA has been damaged by Mattel's acts.

26       105. Mattel's conduct has been intentional and willful, and is calculated

27  specifically to trade off the goodwill that MGA has developed in its successful

28  "BRATZ" line. By its aforesaid acts, particularly its imitation of the distinctive

1  features of MGA's "BRATZ" line in connection with goods sold and distributed in

2  interstate commerce, Mattel has infringed and is likely to continue to infringe on

3  MGA's substantial rights in and to the "BRATZ" line trade dress.  In so doing,

4  Mattel has falsely represented and designated to the public generally and consumers

5  of fashion doll products specifically the source and origin of Mattel's "My Scene"

6  fashion doll products in violation of 15 U.S.C. § 1125(a).

7      106.  MGA has been damaged by, and Mattel has profited from, Mattel's

8  wrongful conduct in an amount to be proven at trial.

9      107.  For each act of infringement, MGA is entitled to recover its actual

10  damages as well as Mattel's profits from such infringement.

11      108.  Monetary relief alone, however, is not adequate to address fully the

12  irreparable injury that Mattel's illegal actions have caused and will continue to

13  cause MGA, if not enjoined.  MGA is therefore entitled to preliminary and

14  permanent injunctive relief to stop Mattel's ongoing infringement of MGA's trade

15  dress.

16              **SECOND CLAIM FOR RELIEF**

17      **(Unfair Competition in Violation of 15 U.S.C. § 1125 (a) and Unfair**

18  **Competition and Unfair Business Practices in Violation of Cal. Bus. & Prof.**

19          **Code § 17200 *et seq*. and California Common Law)**

20      109.  MGA repeats and realleges the allegations contained in paragraphs 1

21  through 108 of this Complaint and incorporates them by reference as though fully

22  and completely set forth herein.

23      110.  Mattel has deliberately and, indeed, repeatedly adopted, imitated and

24  mimicked the make-up, appearance, features, trade dress, and image of MGA's

25  products, packaging and advertising, including its repackaging and refreshing of

26  older Mattel toys.  Mattel's actions were and are done with the intent to deceive

27  consumers, cause confusion and mistake, and interfere with the ability of

28  consumers to identify the source of goods by appearance and packaging.  By this

EXHIBIT __L__ PAGE _124_

1   conduct, Mattel pirates and exploits, by subliminal or conscious association with
2   MGA, the goodwill and reputation of MGA and derives benefit therefrom.

3       111.  Mattel has particularly and deliberately poached upon the commercial
4   magnetism of MGA's "BRATZ" and the success of "BRATZ".  Mattel's conduct
5   has been intentional and willful, and is calculated specifically to trade off the
6   goodwill that MGA has developed in its successful "BRATZ" line.

7       112.  By its acts, including its intentional imitation of the distinctive features
8   of MGA's "BRATZ" dolls, which has progressively become closer and closer, as
9   well as its imitation of "BRATZ" themes, packaging and the overall look, feel and
10  total image of the "BRATZ" line, imitation of other MGA products, packaging and
11  advertising, and other conduct alleged herein, Mattel has engaged in unfair
12  competition under both federal and California state law.

13      113.  Mattel has also willfully and maliciously used its power, influence and
14  intimidation to threaten certain retailers, suppliers, licensees, distributors and
15  manufacturers so as to limit, if not prevent, MGA from doing business with these
16  retailers, suppliers, licensees, distributors and manufacturers, using its power and
17  influence to intimidate and manipulate industry bodies.  Mattel has further used its
18  power and influence to attempt to, if not actually, intimidate and threaten MGA's
19  current and potential employees so as to cause MGA competitive injury.

20      114.  Alone, in combination, or in totality, Mattel's actions discussed and
21  alleged herein constitute unfair competition and unfair business practices within the
22  meaning of federal law, California statutory law and/or California common law.

23      115.  As a result of its conduct, Mattel has derived substantial monetary and
24  non-monetary benefit and business advantage.  Mattel has also wrongfully diverted
25  profits away from MGA and to Mattel and, on information and belief, deprived
26  MGA of the patronage of a large number of actual and potential customers.

27      116.  MGA has been damaged by, and Mattel has profited from, Mattel's
28  wrongful conduct in an amount to be proven at trial.

EXHIBIT 4 PAGE 130

117. Monetary relief alone, however, is not adequate to address fully the irreparable injury that Mattel's actions have caused and will continue to cause MGA, if not enjoined. MGA is therefore entitled to preliminary and permanent injunctive relief to stop Mattel, and all persons acting in concert with Mattel, from engaging in acts of unfair competition and unfair business practices.

118. MGA is further entitled to relief whereby Mattel is ordered to pay restitution for damages resulting from Mattel's unfair competition and unfair business practices.

## THIRD CLAIM FOR RELIEF

**(Dilution in Violation of 15 U.S.C. § 1125 (c); Cal. Bus. & Prof. Code § 14330 and California Common Law)**

119. MGA repeats and realleges the allegations contained in paragraphs 1 through 118 of this Complaint and incorporates them by reference as though fully and completely set forth herein.

120. The look and trade dress of the MGA products referenced herein are distinctive and famous, and have been since before Mattel launched its similar versions. By its aforesaid acts, Mattel caused and continues to cause blurring and dilution of the distinctive look of MGA's products and trade dress, which previously served as a unique source identifier for MGA, within the meaning of the Lanham Act, California Business and Professions Code § 14330 and/or California common law.

121. Mattel's conduct has been intentional and willful, calculated specifically to trade on MGA's goodwill and reputation and to cause dilution of MGA's famous marks, particularly those connected with MGA's famous and successful "BRATZ" doll head, "BRATZ" doll product line, "BRATZ Funky Fashion Makeover Head" and "BRATZ PETZ" line.

122. MGA has been damaged by, and Mattel has profited from, Mattel's wrongful conduct in an amount to be proven at trial.

123.  Monetary relief alone, however, is not adequate to address fully the irreparable injury that Mattel's actions have caused and will continue to cause MGA, if not enjoined.  MGA is therefore entitled to preliminary and permanent injunctive relief to stop Mattel's ongoing dilution.

## FOURTH CLAIM FOR RELIEF

### (Unjust Enrichment)

124.  MGA repeats and realleges the allegations contained in paragraphs 1 through 123 of this Complaint and incorporates them by reference as though fully and completely set forth herein.

125.  As a result of the conduct alleged herein, Mattel has been unjustly enriched to MGA's detriment.  MGA seeks a worldwide accounting and disgorgement of all ill-gotten gains and profits resulting from Mattel's inequitable activities.

## PRAYER FOR RELIEF

WHEREFORE, MGA prays for relief, as follows:

1.    That Mattel, its agents, servants and employees and all persons acting in concert be restrained preliminarily and permanently from directly or indirectly:

    a.    using confusingly similar trade dress;

    b.    improperly influencing, or attempting to improperly influence, standard-setting and industry organizations;

    c.    engaging in unfair competition and unfair business practices; and

    d.    diluting MGA's trade dress;

2.    For general and actual damages, according to proof at trial but believed to reach or exceed tens of millions of dollars;

3.    For the disgorgement of all profits derived by Mattel for its acts of:

    a.    false designation of origin or affiliation;

EXHIBIT _L_ PAGE _132_

1              b.     unfair competition and unfair business practices; and

2              c.     dilution;

3        4.     For costs of suit and reasonable attorneys' fees;

4        5.     For punitive and/or exemplary damages as a result of Mattel's willful

5  and malicious conduct to the extent allowable by law; and

6        6.     For such other and further relief as the Court deems just and proper.

7

8  Dated:     April 13, 2005            PATRICIA GLASER

9                                   CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO LLP

10

11                                 DALE M. CENDALI

                                   DIANA M. TORRES

12                                 PAULA E. AMBROSINI

                                 O'MELVENY & MYERS LLP

13

14

15                               By:

16                                 Diana M. Torres

                                 Attorneys for Plaintiff

                                 MGA ENTERTAINMENT, INC.

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT _4_ PAGE _133_

# DEMAND FOR JURY TRIAL

MGA hereby demands a jury trial on all triable issues.

Dated:        April 13, 2005

PATRICIA GLASER
CHRISTENSEN, MILLER, FINK,
JACOBS, GLASER, WEIL &
SHAPIRO LLP

DALE M. CENDALI
DIANA M. TORRES
PAULA E. AMBROSINI
O'MELVENY & MYERS LLP


By: _____
    Diana M. Torres
Attorneys for Plaintiff
MGA ENTERTAINMENT, INC.

38

EXHIBIT _6_ PAGE _134_

**Exhibit 7**

1    ROBERT F. MILLMAN, Bar No. CA 062152
     DOUGLAS A. WICKHAM, Bar No. CA 127268
2    KEITH A. JACOBY, Bar No. CA 150233
     LITTLER MENDELSON
3    A Professional Corporation
     2049 Century Park East, 5th Floor
4    Los Angeles, CA  90067.3107
     Telephone:    310.553.0308
5    Facsimile:    310.553.5583

6    Attorneys for Defendant/Cross-Complainant
     CARTER BRYANT
7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         FOR THE COUNTY OF LOS ANGELES

10

11   MATTEL, INC., a Delaware Corporation,        Case No.  BC314398

12                 Plaintiff,                      ASSIGNED FOR ALL PURPOSES TO THE
                                                   HONORABLE GREGORY W. ALARCON –
13        v.                                       DEPARTMENT 36

14   CARTER BRYANT, an individual; and            DATE ACTION FILED:  April 27, 2004
     DOES 1 through 10, inclusive,
15                                                 DEFENDANT/CROSS-COMPLAINANT
                  Defendant.                       CARTER BRYANT'S CROSS-
16                                                 COMPLAINT FOR:

17                                                 (1)  UNFAIR COMPETITION (Business &
                                                   Professions Code  §§ 16600, et seq. and 17200
18                                                 et seq.);
                                                   (2)  RESCISSION;
19                                                 (3)  DECLARATORY RELIEF; AND
                                                   (4) FRAUD.
20
                                                   DEMAND FOR JURY TRIAL
21
                                                   [Code Of Civil Procedure § 428.10]
22
     ───────────────────────────────────
23   CARTER BRYANT, on behalf of himself,
     all present and former employees of Mattel,
24   Inc., and the general public,

25                 Cross-Complainant,

26        v.

27   MATTEL, INC., a Delaware Corporation,

28                 Cross-Defendant.              EXHIBIT 7 PAGE 135

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310 553 0308

1          1.      Defendant and Cross-Complainant Carter Bryant ("Bryant"), for his Cross-

2   Complaint alleges, upon personal knowledge with respect to himself and his own acts, and upon

3   information and belief as to all other matters, as follows:

4   **OVERVIEW**

5          2.      In this Action, Bryant's former employer, Mattel, Inc. ("Mattel"), has sued

6   Bryant for, among other things, breach of a purported Employee Confidential Information and

7   Inventions Agreement ("Agreement").  The Agreement is a classic contract of adhesion, drafted

8   solely by Mattel, forced upon Bryant on a take-it-or-leave-it basis with no negotiations invited or

9   allowed.  Although signing the Agreement was a condition of Bryant's employment, Mattel never

10   explained the terms and conditions of the Agreement to Bryant and Bryant never was given a

11   meaningful opportunity to secure legal advice concerning its meaning or terms.  Bryant, who is a

12   high school graduate, did not and could not understand the terms of the Agreement; indeed, no

13   reasonable layperson could understand the legal significance, meaning and terms of the Agreement,

14   which appeared to be written for lawyers with several years of experience as corporate attorneys.

15          3.      Furthermore, the Agreement contains terms and conditions that violate

16   established California law on their face and/or in connection with Mattel's interpretation and threats

17   to enforce this Agreement.  For example, the confidentiality provision in the first section of the

18   Agreement (as interpreted by Mattel) purports to require Bryant (and similarly situated present and

19   former Mattel employees) to maintain a cone of silence – on pains of a breach of contract lawsuit by

20   Mattel's lawyers – over such innocuous *and public* information as the identities of Mattel employees

21   and the general skills and knowledge of such employees.  Such a provision clearly is unlawful and

22   violates public policy because it *de facto* inhibits the free flow of information regarding employee

23   talents and thereby restricts employee mobility in this State, thus undermining one of California's

24   fundamental public policies.

25          4.      The Agreement also purports to prevent current employees from accepting

26   any other employment or engagement of any nature whatsoever, regardless of whether such work or

27   services could lead to the disclosure of Mattel's proprietary information or trade secrets or otherwise

28   constitute a breach of the employee's duty of loyalty.  Thus, if a Mattel employee went to work at a

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

1

EXHIBIT __7__ PAGE _136_

1    gas station or a grocery store to earn extra money for his or her family, the Agreement flatly – and

2    unlawfully – prohibits such employment and renders such an employee liable to Mattel for breach of

3    contract.   Such a broad restriction concerning an employee's lawful off-duty conduct violates

4    California Business and Professions Code sections 16600 and 17200 and California Labor Code

5    sections 96(k) and 98.6 and California's broad public policies prohibiting unlawful covenants not to

6    compete.

7           5.    Finally, the Agreement also purports to require each and every Mattel

8    employee, including Bryant, to assign all inventions or creations conceived or reduced to practice

9    during the time period of his or her Mattel employment in direct violation of California Labor Code

10   section 2870. While the Agreement purports to limit this broad assignment to the extent required

11   under Section 2870, this limitation is shrouded in so much legalese that no employee in Bryant's

12   shoes would know or understand either the inventions assignment or the limit on that assignment.

13   On information and belief, Bryant alleges that Mattel intentionally and purposefully implemented

14   this overly broad and unconscionable Agreement to lure employees to adhere to its unlawful terms

15   and to assign to Mattel inventions and creations that, by law, do not belong to Mattel.

16          6.    With this Cross-Compliant, Bryant alone and on behalf of all present and

17   former Mattel employees within the applicable limitations period and the general public, seeks to put

18   an end to Mattel's unlawful and unconscionable practices, with an injunction barring Mattel from

19   requiring employees to sign such agreements and threatening to enforce them, with a declaration that

20   all such agreements (including the Agreement signed by Bryant and any later, similar agreements)

21   are void and unenforceable because they are unconscionable, and with an order disgorging Mattel of

22   all profits unlawfully obtained by its misconduct.

23                                          **THE PARTIES**

24          7.    Bryant is an individual residing in the State of Missouri who was employed by

25   Mattel from 1995 through April 1998 and again from January 1999 to approximately October 20,

26   2000.

27          8.    On information and belief, Bryant alleges that Mattel is a multi-billion dollar,

28   international toy company that, at its El Segundo facility alone, maintains a 180,000 square-foot

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles  CA  90067-3107
310 553 0308

2                              EXHIBIT ___7 PAGE _137_

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

1   design center with more than eight hundred fifty (850) employees.  On information and belief,

2   Bryant alleges that Mattel also maintains facilities in New York state, Wisconsin, New Jersey and

3   Illinois.

4           9.     Mattel markets numerous lines of toys, but one of its most well-known

5   products is the "Barbie" doll line, which, according to Mattel's website, accounts for more than $3.6

6   billion in annual retail sales.  On information and belief, Bryant alleges that Mattel, either directly or

7   indirectly through subsidiaries or affiliates, markets and sells Hot Wheels toy cars, "ViewMasters"

8   (three-dimensional viewer toys), the Fisher-Price line of toys and a line of dolls named "American

9   Girl."

10          10.    Bryant brings this Cross-Complaint on his own behalf, on behalf of all

11   current and former Mattel employees (identified below) and on behalf of the general public

12   pursuant to California Business and Professions Code sections 16600, 17200, 17203 and 17204 and

13   the California Labor Code sections 98(k), 98.6, and 2699 (the California Labor Code Private

14   Attorneys' General Act of 2004).

15                         **NATURE OF THE ACTION**

16          11.    Cross-Complainant Bryant brings this Cross-Complaint to remedy the unfair

17   business practices of his former employer, Mattel.

18          12.    During Bryant's initial employment by Mattel, he was assigned to the "Main

19   Line" Barbie Department, where he designed fashions and hairstyles for Barbie and her toy

20   companions, including "Teen Skipper."

21          13.    Between approximately late April 1998 and January 4, 1999, Bryant was not

22   employed by Mattel.  However, commencing on or about January 4, 1999, Bryant returned to work

23   at Mattel and was employed in Mattel's Barbie "Collector" Department, designing clothing fashions

24   and accessories for high-end Barbie dolls for the adult "collector" market.

25          14.    Upon beginning this second term of employment with Mattel, Bryant was

26   required to execute a boilerplate document entitled "Employee Confidential Information And

27   Inventions Agreement" (defined above as the "Agreement").

28          15.    The Agreement was a preprinted, non-negotiable form contract prepared by

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

3

EXHIBIT _7_ PAGE _138_

1    Mattel, printed on Mattel stationery.  The Agreement purports to completely prohibit or, at a

2    minimum, creates a substantial chilling effect on, Bryant's or any other employee's preparations to

3    compete and purports to prevent Bryant and other employees from taking meaningful steps to obtain

4    any other competitive employment while still in the employ of Mattel.  Such an agreement

5    unlawfully restrains Bryant (and similarly situated employees) in his/their business, trade and

6    professions and thus violates well-established rights of employee mobility under California law.

7            16.    The Agreement also purports to effect an assignment of all inventions created

8    or even simply touched by Bryant during the time period of his employment with Mattel, regardless

9    of whether or not they relate to any aspect of Mattel's business and regardless of when or where this

10   occurred.  On its face, Mattel's Agreement theoretically purports to assign to Mattel any "invention"

11   of any kind conceived or reduced to practice by Bryant during the time period of his employment

12   with Mattel.  As Mattel has construed the Agreement, any time Bryant placed pen and pencil to

13   paper during the time period of his Mattel employment, such "works" are owned by Mattel even if

14   such works or inventions were created on his own time with his own materials.

15           17.    As applied here, the Agreement unlawfully infringes on Bryant's right to

16   prepare to compete and to seek other employment and it unlawfully appropriates to Mattel

17   inventions that were created or reduced to practice on Bryant's own time and using his own

18   equipment that are unrelated to his work for Mattel.  Such an invention assignment is overbroad,

19   unconscionable, violates Labor Code section 2870, constitutes an unfair business practice and is

20   therefore unlawful.

21           18.    The Agreement primarily contains a sweeping provision that purports to

22   assign to Mattel each and every invention by Bryant that he created or reduced to practice during the

23   time period of his employment with Mattel.  The Agreement's only attempt to limit the scope of the

24   assignment is a perfunctory reference to California Labor Code section 2870.  That quotation is

25   found in a separate part of the Agreement from the overbroad, illegal clause defining what is

26   covered, appears in fine print, and is stated in language so confusing that no lay person could

27   reasonably understand it.

28

LITTLER MENDELSON
A Professional Corporation
2049 C Century Park East
5th floor
os Angeles, CA  90067 3107
310 553 0308

EXHIBIT __7__ PAGE _139_

4

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

19.     Even considering the language of Mattel's reference to Labor Code section 2870 in the Agreement, the Agreement remains impermissibly overbroad and unenforceable. According to that provision of the Agreement, any invention conceived or reduced to practice by Bryant during his employment with Mattel would belong to Mattel by virtue of the unlawful Agreement, regardless of whether the invention related to the work performed by Bryant for Mattel.

20.     In addition to the unlawful inventions assignment, the Agreement contains several other provisions that are equally unlawful, either on the face of the Agreement or as applied by Mattel, as it seeks to enforce the Agreement. As discussed above, the confidentiality provision in the Agreement is grossly overbroad and purports to prohibit employees from disclosing and using publicly available information and it purports to prohibit employees from engaging in lawful off duty conduct in violation of Business and Professions Code 16600 and 17200, the California Labor Code and this State's public policy.

21.     Furthermore, Mattel's overly broad agreement cannot be saved from illegality by narrow construction. Otherwise, if these sorts of agreements could simply be reformed during litigation, employers would have no disincentive to draft and attempt to enforce such overbroad, illegal agreements that chill employees from exercising their rights.

22.     Due to Mattel's fraudulent and/or negligent misrepresentation of the terms contained within the Agreement (and Mattel's failure to affirmatively disclose its material terms to Bryant when Bryant was instructed to sign the Agreement by Mattel), Bryant did not discover, and would not reasonably be expected to discover, that the Agreement was misleading, unconscionable and unlawful until Mattel instituted the underlying lawsuit on April 27, 2004, attempting to enforce the Agreement. At the time it required Bryant to execute the adhesive Agreement as a condition of his employment, Mattel did not explain the terms of the Agreement to Bryant, give him sufficient time to review it, or permit or encourage him to seek independent counsel regarding its legal effect. Had Bryant been made aware of the full meaning and intent of the Agreement, he would not have signed it.

23.     Furthermore, Bryant is informed and believes that Plaintiff Mattel has been aware that Bryant was involved in designing the "Bratz" line of toys since at least sometime in 2001.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

5

EXHIBIT _7_ PAGE _140_

1    Rather than bringing suit at that time, Mattel elected instead to wait until three years later to attempt

2    to enforce the unlawful Agreement in the underlying lawsuit.

3        24.    Even though Bryant conceived the "Bratz" idea when he was not employed by

4    Mattel in 1998 and he, with others, did not reduce that idea to practice until after Bryant left Mattel,

5    Mattel nevertheless is using the Agreement to frivolously sue Bryant, in an attempt to hijack

6    "Bratz."

7        25.    Bryant is informed and believes that all employees of Mattel who were hired

8    between 1999 (and before) and the present were required to execute the same or substantially

9    similar agreements, as a pre-condition of their employment with Mattel.  Bryant is informed and

10   believes that his case is representative of a larger pattern and practice of wrongful conduct engaged

11   in by Mattel.  Mattel, as a standard business practice, has forced its employees to enter into and has

12   wrongfully enforced similar quasi-non-competition and assignment of inventions contracts with its

13   present and former employees.  Bryant is informed and believes that Mattel uses these agreements

14   to prevent or stifle competition in the toy industry and/or to unlawfully inhibit employee mobility.

15   Indeed, Bryant is informed and believes, and based thereon alleges, that Mattel continues to force

16   new and current employees to enter into the same or similarly overbroad and unlawful agreements.

17       26.    Bryant was presented with the form Agreement by Mattel on or about January

18   4, 1999, at the outset of his second term of employment.  At that time, he was told that his execution

19   of the Agreement was a condition of his employment with Mattel.  The terms of the Agreement were

20   not explained to him, nor was he told that the Agreement would preclude him from maintaining any

21   employment other than with Mattel, despite statutory guarantees to the contrary.  Bryant was not

22   informed that by executing the Agreement, he was assigning to Mattel all the inventions and

23   creations he created or simply even touched during the time period of his employment with Mattel

24   regardless of how unrelated they might be to his work at Mattel.  Bryant was not advised that Mattel

25   would attempt to claim ownership of any invention he may have conceived prior to employment by

26   Mattel and perfected after he left Mattel.  Bryant neither was given a meaningful opportunity to

27   review the Agreement at the time he executed it, nor was he given the opportunity to consult with an

28   attorney before executing it.    Mattel did not give Bryant the opportunity to negotiate the

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

6

EXHIBIT  7  PAGE  141

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

1    Agreement's terms, allow him to review it overnight, or suggest that he consult an attorney before

2    executing it.  In essence, the Agreement was a pre-printed form and was presented to Bryant's on a

3    "take it or leave it" basis and Bryant and all present and former Mattel employees in effect were

4    bludgeoned into accepting its terms or not being allowed to work there.

5            27.    At the time Bryant executed the Agreement, he did not understand the scope,

6    breadth or meaning of its terms.  Bryant is informed and believes, and on that basis alleges that at the

7    time all other current and former employees of Mattel executed identical or similar agreements with

8    Mattel, they, too, did not understand the scope, breadth or meaning of their terms.  As discussed

9    below, the Agreement is both procedurally and substantively unconscionable and thus wholly

10   unenforceable.

11           28.    In this action, Bryant seeks on behalf of himself and the general public the

12   intervention of the Court to obtain remedies to preclude Mattel's unlawful acts.  Among other

13   things, Bryant seeks a declaration from this Court that Mattel's Agreements are not enforceable

14   against Bryant and all other present and former similarly situated Mattel employees.  Bryant also

15   seeks permanent injunctive relief barring Mattel from forcing present and future employees to sign

16   such agreements, stopping Mattel from threatening to enforce and attempting to enforce illegal non-

17   compete/invention assignment contracts against Bryant and any other current or former Mattel

18   employees, and requiring Mattel to disgorge and/or make restitution for all unlawful profits

19   received and/or costs incurred by virtue of its unlawful and unfair business practices and other legal

20   and/or equitable relief to which Bryant and/or the general public may be justly entitled.

21           29.    Bryant also seeks, through this Cross-Complaint, rescission of the

22   unconscionable and unlawful Agreement signed by Bryant.

23                          **FIRST CAUSE OF ACTION**

24           **(UNFAIR COMPETITION AGAINST DEFENDANT MATTEL)**

25              **(Business & Professions Code § 17200 et seq.)**

26           30.    Bryant realleges and incorporates by reference each of the allegations in

27   Paragraphs 1 through 29 of this Cross-Complaint as if fully set forth herein.

28           31.    Bryant brings his claim for unfair competition and unfair business practices

EXHIBIT _7_ PAGE _142_

.ITTLER MENDELSON
+ Professional Corporation
2049 Century Park East
5th Floor
os Angeles, CA  90067 3107
310 553 0308

1   on behalf of himself, the current and former employees of Mattel and the general public, pursuant

2   to California Business and Professions Code sections 16600, 17200, 17203 and 17204.

3          32.    The non-competition and invention assignment provisions contained in the

4   Agreement, which Mattel forced Bryant to execute as a condition of employment, and which it is

5   now trying to enforce in the underlying action, are illegal pursuant to California Business and

6   Professions Code sections 16600 and 17200.  Said provisions constitute an unfair restraint of trade

7   for the following, non-exclusive reasons:  they illegally restrict the job mobility of current and even

8   former Mattel employees, they illegally restrict current Mattel employees from seeking other

9   gainful employment, they illegally restrict the use of public information, such as the identity or job

10  functions of current Mattel employees, they specifically prevent or deter Mattel's present and

11  former employees, such as Bryant, from accepting or holding any lawful employment within the

12  State of California or elsewhere other than with Mattel, and they purport to assign for Mattel's

13  unlawful benefit all the inventions of Mattel's current and former employees, with a narrow

14  exception which is the employee's burden to prove.

15         33.    The Agreement is also unlawful in that it violates the provisions of California

16  Labor Code section 96(k), which guarantees the rights of employees to be free in the lawful

17  activities they pursue outside working hours, section 98.6 to the extent Mattel has taken adverse

18  employment actions against employees who have refused to sign the Agreement, and Labor Code

19  section 2699.

20         34.    The Agreement also violates the provisions of California Labor Code section

21  2870 inasmuch as it provides for a far broader assignment of employee inventions than is permitted

22  by applicable law.

23         35.    The Agreement was a contract of adhesion and was procedurally

24  unconscionable because, among other things, Bryant was required to sign it as a condition of his

25  employment with no negotiations allowed, it was presented to him on a preprinted form and on a

26  take-it-or-leave-it basis, he was not allowed to thoroughly review or consider its terms, he was not

27  permitted to review it overnight, he was not provided with the opportunity to consult counsel prior

28  to executing it, and it was never thoroughly and completely explained to him.

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

                                              8

EXHIBIT __7__ PAGE _143_

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

36.     Because of its onerous, unfair, unlawful and one-sided provisions, which are surprising, grossly unfair and shock the conscience, the Agreement is substantively unconscionable.

37.     Because it is both procedurally and substantively unconscionable, the Agreement is unenforceable.  Moreover, the Agreement is so permeated by unconscionability that the unlawful provisions cannot be severed.

38.     Due to Mattel's fraudulent and/or negligent misrepresentation of the terms contained within the Agreement, Bryant did not discover, and would not reasonably have discovered, that the Agreement, as Mattel attempted to enforce it, was unconscionable and unlawful until Mattel instituted the underlying lawsuit against him to attempt to enforce the Agreement, in approximately April 2004.

39.     Even though the quasi-non-competition and invention assignment provisions of the Agreement are not enforceable, Bryant is informed and believes and based thereon alleges that Mattel utilizes these provisions as part of a scheme and device to restrain the business opportunities, both within and outside the State of California, otherwise available to Bryant and other current and former Mattel employees.

40.     Bryant is informed and believes and based thereon alleges that, in effect, through its wrongful acts, Mattel is able to create for itself an unfair competitive advantage along with other benefits at the expense of its present and former employees (including Bryant), other competing companies or employers, and members of the public.

41.     Mattel's unlawful conduct in requiring Bryant, and its other current and former employees, to sign the Agreement, or other similar Agreements with equally unlawful provisions as a term and condition of employment or continued employment, and then threatening to enforce such unlawful provisions, constitutes unfair competition and an unfair business practice in violation of the California Business and Professions Code sections 16600 and 17200 et seq. and under the common law.

42.     As a proximate result of such unlawful acts and/or unfair business acts and practices, Bryant has suffered actual damages, and Mattel has enjoyed unlawful profits, in a sum not yet fully ascertained but in excess of the jurisdictional limits of this Court.  Furthermore, on

EXHIBIT  7  PAGE  144

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310.553.0308

1    behalf of Bryant and all present and former California employees of Mattel and the general public,

2    Bryant seeks injunctive relief pursuant to Business and Professions Code section 17203, barring

3    Mattel from continuing to engage in such unlawful and unfair business practices, and the remedies

4    of disgorgement and restitution for illicit profits obtained by Mattel from its unlawful and/or unfair

5    business acts and practices pursuant to Business and Professions Code section 17204.

6         43.    In addition, as a result of the illegal and wrongful conduct alleged above, in

7    the absence of injunctive relief prohibiting Mattel from continuing to engage in unfair competition,

8    Cross-Complainant Bryant, the current and former employees of Mattel and the general public have

9    been and will be irreparably harmed.

10        44.    For these reasons, Bryant requests permanent injunctive relief prohibiting

11   Cross-Defendant Mattel from continuing to engage in unfair competition by threatening and

12   attempting to enforce illegal non-compete/invention assignment contracts against Bryant or any

13   other current or former Mattel employees.

14                           **SECOND CAUSE OF ACTION**

15                    **(RESCISSION AGAINST DEFENDANT MATTEL)**

16        45.    Bryant realleges and incorporates by reference each of the allegations in

17   Paragraphs 1 through 44 of this Cross-Complaint as if fully set forth herein.

18        46.    Bryant's consent to the Agreement was given due to mistake, or obtained

19   through duress, menace and/or fraud.

20        47.    The Agreement is unlawful and unconscionable, due to the fault not of

21   Bryant but of Mattel, which exclusively drafted the Agreement's unlawful and unconscionable

22   terms.

23        48.    Due to Mattel's fraudulent misrepresentation and/or concealment of the terms

24   contained within the Agreement, Bryant did not discover, and would not reasonably be expected to

25   discover, that the Agreement was unconscionable and unlawful until Mattel instituted the underlying

26   lawsuit against him to attempt to enforce the agreement, in approximately April 2004.

27        49.    The public interest will be prejudiced by permitting the Agreement or other

28   similar agreements to stand.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067-3107
310 553 0308

10

EXHIBIT __7__ PAGE _145_

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

1            50.    By the filing of this Cross-Complaint, Bryant hereby gives notice to Mattel

2    that he seeks rescission of the Agreement, and further offers to restore to Mattel all consideration

3    and everything of value which he received from Mattel under the Agreement, upon condition that

4    Mattel do likewise.

5            51.    Bryant therefore requests that the Court rescind the Agreement in its entirety.

6                         **THIRD CAUSE OF ACTION**

7                 **(FRAUD AGAINST DEFENDANT MATTEL)**

8            52.    Bryant realleges and incorporates by reference each of the allegations in

9    Paragraphs 1 through 51 of this Cross-Complaint as if fully set forth herein.

10            53.    Mattel required Bryant to execute the Agreement without disclosing to him

11    its true import and terms.

12            54.    Having drafted the Agreement and all the oppressive, unfair and onerous

13    terms contained therein, Mattel was of course aware of the contents of the Agreement and its

14    import.

15            55.    Due to Mattel's concealment of its interpretation of the force and effect of the

16    Agreement from Bryant, he did not discover that the Agreement was unconscionable and unlawful

17    until Mattel instituted the underlying lawsuit against him to attempt to enforce the agreement, in late

18    April 2004.

19            56.    In so failing to disclose to Bryant the true meaning of the terms and the

20    purported legal effect of the Agreement, and Mattel's intent to attempt to enforce it with regard to

21    work he conceived and/or reduced to practice while not employed at Mattel, Mattel misrepresented

22    and suppressed the nature of the Agreement, and in doing so, committed actual fraud against

23    Bryant.

24            57.    Because of its malicious, oppressive and/or fraudulent conduct, Mattel is

25    subject to punitive damages in an amount necessary and appropriate to punish and deter it and

26    others from engaging in similar conduct in the future.

27    //

28    //

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

                                    11                             EXHIBIT __7_ PAGE _146_

**FOURTH CAUSE OF ACTION**

**(DECLARATORY RELIEF AGAINST DEFENDANT MATTEL)**

58.    Bryant realleges and incorporates by reference each of the allegations in Paragraphs 1 through 60 of this Cross-Complaint as if fully set forth herein.

59.    Mattel's unlawful conduct in requiring Bryant, and its other current and former employees, to sign the Agreement with its unlawful provisions as a term and condition of their employment or continued employment and then threatening to enforce such unlawful provisions and eventually filing a lawsuit to enforce such provisions against Bryant constitutes unfair competition and unfair business practices in violation of the California Business and Professions Code sections 16600 and 17200 et seq. and under the common law.

60.    Moreover, the Agreement is both procedurally and substantively unconscionable.

61.    Through its suit against Bryant, Mattel has demonstrated that a controversy exists concerning the enforceability of the Agreement and its terms.

62.    Bryant therefore requests declaratory relief stating that the Agreement, as well as all similar agreements executed by current and former employees of Mattel, are unlawful and unenforceable.

**PRAYER FOR RELIEF**

WHEREFORE, Cross-Complainant Bryant prays for judgment and relief as follows:

1.    For restitution, disgorgement and interest in an amount to be determined at trial;

2.    For an order permanently enjoining and barring Mattel from forcing present and future employees to sign agreements containing quasi-non-compete or invention assignment provisions identical or substantively similar to those in the Agreement, and prohibiting Mattel from threatening and attempting to enforce such agreements or restrictions against Bryant or any other current or former employees;

3.    For an order declaring that the Agreement between Mattel and Bryant (and the agreements between Mattel and all similarly situated present and former employees) are void,

EXHIBIT __7__ PAGE _147_

LITTLER MENDELSON
A Professional Corporation
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

1    unenforceable and unconscionable;

2              4.       For rescission of the Agreement;

3              5.       For declaratory relief stating that the Agreement is unlawful and

4    unenforceable;

5              6.       For compensatory damages according to proof;

6              7.       For statutory penalties pursuant to Labor Code section 2699;

7              8.       For punitive damages according to proof;

8              9.       For reasonable attorneys' fees incurred in bringing and litigating this action

9                       pursuant to the private attorneys general statutes;

10             10.      For costs of suit herein; and

11             11.      For such further or other relief as the Court deems just and proper.

12

Dated: August 24, 2004

13

14                                                    _A C. Wickk_

15                                                    DOUGLAS A. WICKHAM
                                                      LITTLER MENDELSON
16                                                    A Professional Corporation
                                                      Attorneys for Defendant/Cross-Complainant
17                                                    CARTER BRYANT

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

EXHIBIT __7__ PAGE _148_

13

## DEMAND FOR A TRIAL BY JURY

Pursuant to Section 592 of the California Code of Civil Procedure, Cross-Complainant Carter Bryant hereby demands that the causes in this matter be tried by a jury to the extent provided for by law.

Dated: August 24, 2004

_____
DOUGLAS A. WICKHAM
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendant/Cross-Complainant
CARTER BRYANT

Los_Angeles:371607.1 028307.1010

LITTLER MENDELSON
A Professional Corporation
2048 Century Park East
5th Floor
Los Angeles, CA  90067 3107
310 553 0308

14

EXHIBIT 7 PAGE 149

DEFENDANT/CROSS-COMPLAINANT'S CROSS-COMPLAINT

1

## PROOF OF SERVICE

2

      I am a resident of the State of California, over the age of eighteen years, and not a

3

party to the within action. My business address is 2049 Century Park East, 5th Floor, Los

4

Angeles, California  90067.3107. On August 27, 2004, I served the within document(s):

5

6

**STIPULATION AND [PROPOSED] ORDER GRANTING DEFENDANT CARTER BRYANT LEAVE TO FILE COUNTER-CLAIM**

7

8

9

10

  ☒     by facsimile transmission at or about August 27, 2004 on that date. This document was transmitted by using a facsimile machine that complies with California Rules of Court Rule 2003(3), telephone number 310.553.5583. The transmission was reported as complete and without error. A copy of the transmission report, properly issued by the transmitting machine, is attached. The names and facsimile numbers of the person(s) served are as set forth below.

11

12

13

  ☐     by placing a true copy of the document(s) listed above for collection and mailing following the firm's ordinary business practice in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at Los Angeles, California addressed as set forth below.

14

15

  ☐     by depositing a true copy of the same enclosed in a sealed envelope, with delivery fees provided for, in an overnight delivery service pick up box or office designated for overnight delivery, and addressed as set forth below.

16

17

  ☐     by personally delivering a copy of the document(s) listed above to the person(s) at the address(es) set forth below.

18

Michael T. Zeller, Esq.

19

Quinn Emanuel Urquhart Oliver & Hedges LLP

20

865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017

21

      I am readily familiar with the firm's practice of collection and processing correspondence for mailing and for shipping via overnight delivery service.  Under that practice it would be deposited with the U.S. Postal Service or if an overnight delivery service shipment, deposited in an overnight delivery service pick-up box or office on the same day with postage or fees thereon fully prepaid in the ordinary course of business.

22

23

24

      I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on August 27, 2004, at Los Angeles, California.

25

26

*J. Monique McDonald*

27

J. Monique McDonald

28

Los_Angeles:372099.1 028307.1010

EXHIBIT __7__ PAGE _150_

## PROOF OF SERVICE BY MESSENGER

I am employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.   My business address is Allstar Messenger Service, 345 South Figueroa Street, Suite 305, Los Angeles, California  90071.  On August 27, 2004, I personally served:

**STIPULATION AND [PROPOSED] ORDER GRANTING DEFENDANT CARTER BRYANT LEAVE TO FILE CROSS-COMPLAINT**

by delivering copies thereof to:

Michael T. Zeller, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 27, 2004, at Los Angeles, California.

_Marcus Robinson_
MARCUS ROBINSON

Los_Angeles:372101.1 028307.1010

EXHIBIT _7_ PAGE _151_

---

PROOF OF SERVICE

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
2049 Century Park East
5th Floor
Los Angeles, CA 90067 3107
310 553 0308

## PROOF OF SERVICE
1013A(3) CCP Revised 5/1/88

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: NOW LEGAL SERVICES 1301 West 2nd Street, Suite 206, Los Angeles, California 90026.

On June 5, 2006, I caused to be served the following document(s) on interested parties in this action described as DECLARATION OF JON D. COREY IN SUPPORT OF MEMORANDUM OF PLAINTIFF AND COUNTER-CLAIMANT MATTEL, INC. IN RESPONSE TO ORDER TO SHOW CAUSE WHY CASE NOS. 04-9049, 04-9059 AND 05-2727 SHOULD NOT BE CONSOLIDATED addressed as follows:

Diana M. Torres, Esq.
O'Melveney & Myers, LLP
400 South Hope Street
Los Angeles, California 90071

Keith Jacoby, Esq.
Littler Mendelson
2049 Century Park East, 5th Floor
Los Angeles, CA 90067

_____ **(BY MAIL) I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

_____ **(BY MAIL) I caused such envelope to be placed in the firm's mail. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

_____ **(BY FACSIMILE) I caused such document to be transmitted by facsimile to the offices of the addressee. Upon completion of the said facsimile transmission, the transmitting machine issued a transmission report showing the transmission was complete and without error.

_____ **(BY FEDERAL EXPRESS) by placing the document(s) listed above in such envelope for deposit with FEDERAL EXPRESS to be delivered via priority overnight service to the persons at the addresses set forth above.

__X___ **(BY PERSONAL SERVICE) I caused to be delivered by hand such envelope to the offices of the addressee.

Executed on June 5, 2006, at Los Angeles, California.

_____ (State)I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

__X___ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____
Type or Print Name

_____
Signature