THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
MARINA V. BOGORAD (Bar No. 217524)
(mbogorad@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Telephone:  (213) 687-5000
Facsimile:   (213) 687-5600

RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, Suite 3800
San Francisco, CA  94111-5974
Tel.: (415) 984-2698 / Fax: (415) 984-2626

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
MGAE de Mexico, S.R.L. de C.V., and Isaac Larian

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| v. | Honorable Stephen G. Larson |
| MATTEL, INC., a Delaware corporation, | [PUBLIC REDACTED] DECLARATION OF JASON D. RUSSELL IN SUPPORT OF MGA PARTIES' MOTIONS *IN LIMINE* NOS. 1-12 |
| Defendant. | |
| | VOLUME 4 OF 5 |
| AND CONSOLIDATED ACTIONS. | Hearing Date: May 21, 2008 Time: 1:00 p.m. |

I, Jason D. Russell, hereby declare as follows:

1.     I am an attorney licensed to practice law in the State of California and am a partner at the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, counsel of record for MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively, the "MGA Parties") in the above-captioned matter.  I submit this Declaration in Support of MGA Parties' Motions *in limine* Nos. 1-12.  Unless otherwise stated, I have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently thereto.

2.     More than three months ago, on January 15, 2008, MGA produced to Mattel excerpts of a rough transcript of the proceedings in the arbitration styled Larian v. Larian, Case No. 05-2096-ABH, arbitrated November 16 and 17, 2005 before ADR Services in Los Angeles (the "Larian Arbitration").  Only two witnesses testified in that arbitration: Isaac Larian and Jennifer Maurus.  Maurus was disclosed as a former sales manager at MGA in MGA Entertainment Inc.'s Responses to Mattel Inc.'s First Set of Interrogatories re Claims of Unfair Competition at Response No. 1 dated January 19, 2008.  Mattel began relying on Maurus's testimony in the Larian Arbitration last month in its Joint Opposition to the Motion for Summary Judgment, and its corresponding responses to MGA's Separate Statement of Uncontroverted Fact filed March 24, 2008.  Maurus has not been deposed in this case, and, to my knowledge, Mattel has issued no deposition subpoena or scheduled any deposition for her.  However, Maurus is listed as number 17 on Mattel's Phase 1 Witness List dated April 1, 2008 as a witness it intends at this time to call at trial as part of its case-in-chief.  (A true and correct copy of Mattel's Phase 1 Witness List dated April 1, 2008 is attached hereto as Exhibit 1.)  While Mattel "reserves the right to use these witnesses' testimony through prior deposition or other testimony to the extent the witness is unavailable to provide live testimony at trial," Mattel does not represent in its Witness List that it has made any effort to establish that Maurus will be unavailable to testify at trial.

Declaration of Jason D. Russell in Support of MGA Parties' Motions *in limine* Nos. 1-12
Case No. CV 04-9049 SGL (RNBx)

3.      A true and correct copy of the Verified Complaint in <u>Larian v. Larian</u> dated August 25, 3003 and bearing Bates numbers FL 6465-6489 is attached hereto as **Exhibit 2**.

4.      A true and correct copy of a letter from Kaye Scholer to Cotkin Collins and Ginsburg dated November 15, 2005 and bearing Bates numbers CC 00567-00568 is attached hereto as **Exhibit 3**.

5.      A true and correct copy of the Complaint in <u>Larian v. Larian and Zorabi</u> dated February 28, 2005 and bearing Bates numbers FL 6526-6553 is attached hereto as **Exhibit 4**.

6.      A true and correct copy of the Opening Arbitration Brief in <u>Larian v. Larian</u> dated November 14, 2005 and bearing Bates numbers MGA 3809056-3809120 is attached hereto as **Exhibit 5**.

7.      A true and correct copy of excerpts of Volumes I and II of the Confidential-AEO transcripts of the arbitration proceeding in <u>Larian v. Larian</u> dated November 16 and 17, 2005 is attached hereto as **Exhibit 6**.

8.      A true and correct copy of the Final Arbitration Award in <u>Larian v. Larian</u> dated November 28, 2005 is attached hereto as **Exhibit 7**.

9.      A true and correct copy of the Final Arbitration Award in <u>Larian v. Larian</u> dated February 3, 2006 and bearing Bates numbers CC 00517-00522 is attached hereto as **Exhibit 8**.

10.      A true and correct copy of Third Party MGA Entertainment Inc's Motion for a Protective Order dated November 14, 2005 and bearing Bates numbers CC 00342-00360 is attached hereto as **Exhibit 9**.

11.      A true and correct copy of a communication from Farhad Larian bearing Bates numbers KS05926-05948 is attached hereto as **Exhibit 10**.

12.      A true and correct copy of an e-mail chain dated August 14, 2000 bearing Bates numbers KBK 01300-01301 is attached hereto as **Exhibit 11**.

13.   A true and correct copy of excerpts of the transcript of the deposition of Farhad Larian taken February 4, 2008 is attached hereto as **Exhibit 12**.

14.   A true and correct copy of an email chain between Isaac Larian and Haim Saban beginning on January 30, 2003 bearing Bates numbers MGA 1008775-1008778 is attached hereto as **Exhibit 13**.

15.   A true and correct copy of an email from Mel Woods to Isaac Larian dated June 26, 2003 bearing Bates numbers MGA 4008769-4008771 is attached hereto as **Exhibit 14**.

16.   A true and correct copy of the Affirmation of Peter Leung in MGA Entm't, Inc. v. Double Grand Corp. Ltd., HCA 1883/2003 dated June 26, 2003 and bearing Bates numbers MGA 0885074-0885088 is attached hereto as **Exhibit 15**.

17.   A true and correct copy of the Affidavit of Isaac Larian, MGA Entm't, Inc. v. Toys & Trends, HCA 2152/2002, bearing Bates numbers MGA 0883395-0883408 is attached hereto as **Exhibit 16**.

18.   A true and correct copy of the Affirmation of Lam Yuen Chak, MGA Entm't, Inc. v. Hunglam Toys Co., HCA 2687/2003, dated August 11, 2003 and bearing Bates numbers MGA 0884533-0884542 is attached hereto as **Exhibit 17**.

19.   A true and correct copy of an Order Denying a Motion for Summary Judgment, Art Attacks Ink v. MGA Entm't, Inc., Civ. No. 04 CV 1035-B (BLM) (S.D. Cal. Nov. 1, 2006), bearing Bates numbers MGA 1499772-1499791 is attached hereto as **Exhibit 18**.

20.   A true and correct copy of the Summons and Complaint in Integrity Toys, Inc. v. MGA Entm't, Inc., Case No. 05 CV 2142, dated August 17, 2005 and bearing Bates numbers MGA 0806552-0806573 is attached hereto as **Exhibit 19**.

21.   A true and correct copy of a notice of opposition and opposition to an MGA trademark application (No. 78/382,405) in Quicksilver, Inc. v. MGA Entm't, Inc.,

Opposition No. 91160679, dated May 26, 2004 and bearing Bates numbers MGA 0806427-0806445 is attached hereto as **Exhibit 20**.

22.     A true and correct copy of Declaration of Daphne Gronich in Support of Ex Parte Application for Temporary Restraining Order in <u>MGA Entm't, Inc. v. Multitoy, Inc.</u>, 04-CV-02524 (C.D. Cal. Apr. 12, 2004), bearing Bates numbers MGA 0871500-0871508 is attached hereto as **Exhibit 21**.

23.     A true and correct copy of the Witness Statement of Paula Treantafelles Garcia in <u>MGA Entm't, Inc. v. UBI Soft Entm't</u>, Arb. No. AAA Claim No. 50 T 133 00467, dated March 13, 2006 and bearing Bates numbers MGA 0873672-0873685 is attached hereto as **Exhibit 22**.

24.     A true and correct copy of the Declaration of David Oakes in <u>Dudnikov v. MGA Entm't, Inc.</u>, Civ. Action No. 03-D-2512 (PAC) (D. Col. Apr. 6, 2004), bearing Bates numbers MGA 0871307-0871313 is attached hereto as **Exhibit 23**.

25.     A true and correct copy of an excerpt of the Transcript of Arbitration in <u>Fun 4 All Corp. v. MGA Entm't, Inc.</u>, dated May 29, 2002 and bearing Bates numbers MGA 0871766-871775 is attached hereto as **Exhibit 24**.

26.     A true and correct copy of a settlement agreement between MGA Entertainment, Inc. and Bandai America Incorporated bearing Bates number MGA 1480173 is attached hereto as **Exhibit 25**.

27.     A true and correct copy of an order resolving proceedings in Mexico (in the original Spanish) dated September 12, 2006 and bearing Bates numbers MGA 0876944-0876959 is attached hereto as **Exhibit 26**.

28.     A true and correct copy a chart identifying the Bates numbers of examples of the types of Agreements to be excluded pursuant to the MGA Parties' Motion *in limine* No. 4 is attached hereto as **Exhibit 27**.

29.     True and correct copies of examples of MGA Employment Agreements Bates numbered MGA 0875741-50, MGA 0875719-28, MGA 3814785-89, MGA 0875570-79,

MGA 0875548-54, MGA 0875683-5703, MGA 0875451-78, and MGA 0875555-69 are attached hereto as **Exhibit 28**.

30.    A true and correct copy of Mattel Inventions Agreement with Bryant dated January 4, 1999, introduced as C. Bryant Depo. Ex. 25, is attached hereto **Exhibit 29.**

31.    A true and correct copy of an email from Craig Holden to Michael Page, Isaac Larian and John Keker dated June 20, 2007 and bearing Bates numbers MGA 3765585-3765589 is attached hereto as **Exhibit 30**.

32.    A true and correct copy of MGA Entertainment's billing policy bearing Bates numbers MGA 3709766-3709771 is attached hereto as **Exhibit 31**.

33.    A true and correct copy of an email from Dale Cendali to Craig Holden and Isaac Larian dated June 23, 2007 and bearing Bates numbers MGA 3709794-3709798 is attached hereto as **Exhibit 32**.

34.    A true and correct copy of an excerpt from Mattel's Fifth Set of Interrogatories dated October 19, 2007 is attached hereto as **Exhibit 33**.

35.    A true and correct copy of Mattel's Opposition to MGA Parties' Motion for Clarification Regarding Portions of February 15, 2008 Order Granting In Part and Denying In Part Mattel's Motion to Compel Responses to Interrogatory Nos. 27-44 and 46-50 by the MGA Parties is attached hereto as **Exhibit 34**.

36.    A chart identifying the Bates numbers of samples of Phase Two documents to be excluded pursuant to the MGA Parties' Motion *in limine* No. 6 is attached hereto as **Exhibit 35**.

37.    A true and correct copy of an email exchange between Isaac Larian and Carter Bryant dated February 15, 2002 and bearing Bates numbers MGA 0069280-0069282 is attached hereto as **Exhibit 36**.

38.    A true and correct copy of excerpts of Mattel's Proposed Jury Instructions and Special Verdict Forms dated April 1, 2008 is attached hereto as **Exhibit 37**.

39.     A true and correct copy of an email chain from Isaac Larian to Nancy Koppang dated April 11, 2004 and bearing Bates numbers MGA 3473852-3473854 is attached hereto as **Exhibit 38**.

40.     A true and correct copy of an email form Ron Brawer to Linda Whaley dated February 28, 2006 and bearing Bates numbers MGA 0869679-0869683 is attached hereto as **Exhibit 39**.

41.     A true and correct copy of an email from Nancy Koppang to Isaac Larian bearing Bates numbers MGA 0861322-0861325 is attached hereto as **Exhibit 40**.

42.     A true and correct copy of an email from Isaac Larian to Ron Brawer dated October 26, 2004 and bearing Bates numbers MGA 0200954-0200958 is attached hereto as **Exhibit 41**.

43.     A true and correct copy of the Expert Report of Michael J. Wagner dated February 11, 2008 and Exhibits thereto is attached hereto as **Exhibit 42**.

44.     A true and correct copy of the Expert Rebuttal Report of Michael J. Wagner dated March 17, 2008 is attached hereto as **Exhibit 43**.

45.     A true and correct copy of excerpts of the transcript of the deposition of Michael J. Wagner taken March 21, 2008 is attached hereto as **Exhibit 44**.

46.     A true and correct copy of excerpts of the transcript of the deposition of Lisa Tonnu taken January 17, 2008 is attached hereto as **Exhibit 45**.

47.     A true and correct copy of excerpts of Supplemental Responses to MGA's First Set of Interrogatories to Mattel, Inc. dated December 7, 2007 is attached hereto as **Exhibit 46**.

48.     A true and correct copy of the Mattel, Inc.'s Form 10-K filed February 27, 2006 is attached hereto as **Exhibit 47**.

49.     A true and correct copy of IBISWorld Industry Report, "Doll, Toy, and Game Manufacturing in the U.S." dated February 18, 2008 is attached hereto as **Exhibit 48**.

Declaration of Jason D. Russell in Support of MGA Parties' Motions *in limine* Nos. 1-12
Case No. CV 04-9049 SGL (RNBx)

50. A true and correct copy of the Expert Rebuttal Report of Kenneth Hollander dated March 17, 2008 is attached hereto as **Exhibit 49**.

51. A true and correct copy of the Expert Rebuttal Report of Heather McComb dated March 17, 2008 is attached hereto as **Exhibit 50**.

52. A true and correct copy of the Expert Rebuttal Report of Denise Van Patten dated March 17, 2008 is attached hereto as **Exhibit 51**.

53. A true and correct copy of the Expert Rebuttal Report and Supplement of Nicholas Mirzoeff dated March 17-18, 2008 is attached hereto as **Exhibit 52**.

54. A true and correct copy of the webpage available at http://www.kharesearch.com/legal.htm (last visited April 11, 2008) is attached hereto as **Exhibit 53**.

55. A true and correct copy of an excerpt of the transcript of the deposition of Ralph Oman dated March 31, 2008 is attached hereto as **Exhibit 54**.

56. A true and correct copy of the Expert Report of Ralph Oman dated February 11, 2008 is attached hereto as **Exhibit 55**.

57. A true and correct copy of an excerpt of the transcript of the deposition of Sam Khare dated September 20, 2007 is attached hereto as **Exhibit 56**.

58. A true and correct copy of the Expert Report of John L. Alex dated February 11, 2008 is attached hereto as **Exhibit 57**.

59. A true and correct copy of excerpts of the transcript of the deposition of John L. Alex dated April 9, 2008 is attached hereto as **Exhibit 58**.

60. A true and correct copy of the Expert Report of Carol A. Scott dated February 11, 2008, as well as curriculum vitae and Exhibit 4C attached thereto, is attached hereto as **Exhibit 59**.

61. A true and correct copy of the Rebuttal Expert Report of Carol A. Scott dated March 17, 2008 is attached hereto as **Exhibit 60**.

62. A true and correct copy of excerpts of the transcript of the deposition of Carol A. Scott taken April 3, 2008 is attached hereto as **Exhibit 61**.

63. A true and correct copy of a spread sheet introduced as Lisa Tonnu deposition exhibit 660 bearing Bates numbers MGA 00868723-00868865 is attached hereto as **Exhibit 62**.

64. A true and correct copy of excerpts of the Rough Transcript of the transcript of the deposition of Tina Patel (Varu) taken April 8, 2008 is attached hereto as **Exhibit 63**.

65. A true and correct copy of excerpts of the Expert Rebuttal Report of Erich Joachimsthaler dated March 17, 2008 is attached hereto as **Exhibit 64**.

66. A true and correct copy of the Expert Rebuttal Report of Robert C. Lind dated March 17, 2008 is attached hereto as **Exhibit 65**.

67. A true and correct copy of the Expert Report of Lee Loetz dated February 11, 2008 and excerpts of exhibits attached thereto is attached hereto as **Exhibit 66**.

68. A true and correct copy of the Expert Rebuttal Report of Lee Loetz dated March 17, 2008 is attached hereto as **Exhibit 67**.

69. A true and correct copy of excerpts of the transcript of the deposition of Lee Loetz taken March 26, 2008 and Loetz deposition exhibit 4615 are attached hereto as **Exhibit 68**.

70. A true and correct copy of a Copyright Office Letter dated April 8, 2005 bearing Bates numbers MGA 0868141-0868144 is attached hereto as **Exhibit 69**.

71. A true and correct copy of excerpts of the transcript of the deposition of Margaret Leahy taken December 12, 2007 is attached hereto as **Exhibit 70**.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on April 14, 2008, at Los Angeles, California.

Jason D. Russell

viii

.

# Exhibit 43

THIS EXHIBIT IS FILED
UNDER SEAL
PURSUANT TO
PROTECTIVE ORDER

**Exhibit 44**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

1                UNITED STATES DISTRICT COURT

2                CENTRAL DISTRICT OF CALIFORNIA

3                      EASTERN DIVISION

4                         ---oOo---

5    CARTER BRYANT, an individual,

6                   Plaintiff,

7      vs.                              Case No.

8    MATTEL, INC., a Delaware           CV 04-9049

9    Corporation,                       SGL (RNBx)

10

                 Defendants.        /

11   CONSOLIDATED WITH MATTEL, INC.,    Case No.

12   V. BRYANT and MGA ENTERTAINMENT,   04-9059

13   INC., v. MATTEL, INC.         /    NM (RNBx)

14

15

16       CONFIDENTIAL - ATTORNEYS' EYES ONLY

17

18   VIDEOTAPED DEPOSITION OF MICHAEL J. WAGNER

19            FRIDAY, MARCH 21, 2008

20

21

22

23

24

25   PAGES 1 - 310

Exhibit 44
P. 917

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 2

```
 1    APPEARANCES OF COUNSEL:

 2

 3        FOR PLAINTIFF MATTEL, INC.:

 4            QUINN EMANUEL URQUHART OLIVER & HEDGES

 5            BY:  ROBERT P. FELDMAN, ESQ.

 6            555 Twin Dolphin Drive, Suite 560

 7            Redwood Shores, California 94065

 8            650.801.5000

 9            bobfeldman@quinnemanuel.com

10

11        FOR DEFENDANT MGA ENTERTAINMENT, INC. and ISAAC

12        LARIAN:

13            SKADDEN ARPS SLATE MEAGHER & FLOM LLP

14            BY:  CARL A. ROTH, ESQ.

15                 RYAN WEINSTEIN, ESQ.

16                 PATRICK HAMMON, ESQ.

17            300 South Grand Avenue

18            Los Angeles, California 90071

19            213.687.5000

20            croth@skadden.com

21            rweinstein@skadden.com

22            phammon@skadden.com

23

24

25
```

Exhibit 44
P. 918

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 3

```
 1    APPEARANCES OF COUNSEL (Continued):

 2

 3        FOR DEFENDANT and COUNTERCLAIMANT CARTER BRYANT:

 4            KEKER & VAN NEST LLP

 5            BY:  MATTHEW M. WERDEGAR, ESQ.

 6            710 Sansome Street

 7            San Francisco, California 94111

 8            415.397.7188

 9            mwerdegar@kvn.com

10            (NOT PRESENT)

11

12

13        Also present:  Deepak Jain, Navigant Consulting

14                       Daniel Stroud, Videographer

15

16

17

18

19

20

21

22

23

24

25
```

Exhibit 44 ,
P. 919

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 6

| | | |
|---|---|---|
| 1 | been in that seat before a few times; is that | 09:59:01 |
| 2 | correct? | |
| 3 | A. That is correct. | |
| 4 | Q. So you're pretty familiar with the | |
| 5 | deposition process, aren't you? | 09:59:06 |
| 6 | A. This is my 240th deposition as a expert | |
| 7 | witness. | |
| 8 | Q. You're sure? | |
| 9 | A. I'm positive. | |
| 10 | Q. Okay. Hopeful this will be in the top 5 | 09:59:15 |
| 11 | or 10 percent for you in terms of experience. | |
| 12 | A. Thank you. | |
| 13 | MR. FELDMAN: Measured how? | |
| 14 | MR. ROTH: Well, I have a survey at the | |
| 15 | end of the day. I'll give you a phone number to | 09:59:27 |
| 16 | call and make sure that you say that you're | |
| 17 | completely satisfied. You'll get a free appetizer. | |
| 18 | Q. So the way it works, obviously, is I ask | |
| 19 | questions. I'll try not to cough too much while | |
| 20 | doing so. You answer if you understand the | 09:59:44 |
| 21 | question. If you don't, please let me know. | |
| 22 | We obviously have a court reporter who is | |
| 23 | taking down a transcript of today's proceeding, so | |
| 24 | it is important that, A, we not interrupt each | |
| 25 | other and, B, that you give audible responses. | 09:59:58 |

Exhibit 44,
P. 920

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 21

```
 1        Q.  Did you ask Mr. Schoton if there was        10:16:23

 2   market research or any other research that

 3   supported his view?

 4        A.  No.

 5        Q.  Why not?                                     10:16:30

 6        A.  It wasn't necessary for my assignment.

 7   I'm not carrying that burden of proof.  I believe

 8   others are.  But I just wanted some understanding

 9   of that phenomenon.

10        Q.  When you say you're not carrying that        10:16:44

11   burden of proof, you believe others are, what do

12   you mean?

13        A.  My role here is actually fairly limited.

14   I have been asked to make certain calculations,

15   which I have done.  But I'm not here to draw any     10:16:55

16   causal linkage between the causes of action and any

17   actual computation of damages or demonstrating, you

18   know, what is the causal link between the sale of a

19   doll or sale of other accessories that go along

20   with the doll.                                        10:17:11

21        Q.  You understand someone else is carrying

22   that burden of proof?

23        A.  Yes.

24        Q.  Who?

25        A.  Well, my understanding is there will be      10:17:17
```

Exhibit 44,
P. 921

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 22

```
 1    probably someone from Mattel that will do that at      10:17:19

 2    trial and, also, I think Carol Scott, as an expert,

 3    will be doing that.

 4         Q.  Who is Carol Scott?

 5         A.  She is a marketing professor from UCLA who     10:17:28

 6    I understand is another expert retained by Mattel

 7    in this matter.

 8         Q.  Have you ever spoken with her?

 9         A.  It's possible I have, but not in

10    connection with this case.                             10:17:45

11         Q.  Do you know if she submitted reports in

12    this case?

13         A.  Oh, I know she has; I've seen them.

14         Q.  Did you review them?

15         A.  I just said that I've seen them.  So yes,      10:17:57

16    I reviewed them.

17         Q.  Okay.  Did you review them prior to your

18    February 11th -- she submitted one on February

19    11th, right?

20         A.  She did.                                       10:18:09

21         Q.  And another one on March 17th; is that

22    right?

23         A.  I believe that's correct.

24         Q.  Before you submitted your report on

25    February 11th, did you review her report?              10:18:13
```

Exhibit 44
P. 922

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 27

```
 1        Q.   Can you explain that distinction?        10:24:20

 2        A.   Well, for any of my calculations to be

 3   relevant, they have to be something that's

 4   recoverable based on proving a violation of

 5   Mattel's rights.                                    10:24:34

 6        Q.   Mm-hmm.

 7        A.   And I'm not here and have not been

 8   retained to draw that linkage.

 9        Q.   Okay.  So you know that there are a wide

10   swath of products sometimes called -- referred to   10:24:48

11   as "SKUs"?  Are you familiar with that term,

12   "SKUs"?

13        A.   I am familiar with that term.  That's

14   Stock Keeping Unit.

15        Q.   There is a wide swath of SKUs that Mattel  10:25:00

16   claims infringe upon its intellectual property?

17             MR. FELDMAN:  I'm not sure what the phrase

18   "wide swath" means.  If you mean there is a number

19   of SKUs, then I agree with that.

20             THE WITNESS:  That's my understanding.     10:25:16

21   BY MR. ROTH:

22        Q.   And I take it from your previous testimony

23   that you're not offering an opinion as to which

24   SKUs may infringe upon that intellectual property

25   and which may not?                                   10:25:26
```

Exhibit 44
P. 923

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 28

1    A.  That's true.  We're wasting everyone's      10:25:27

2    time if we're going to talk about that subject

3    today because I have nothing to do with that.

4        Q.  Are you done with that subject?

5            MR. ROTH:  Yes.                          10:25:48

6            MR. FELDMAN:  Can I talk to Mr. Wagner one

7    quick second?

8            MR. ROTH:  Sure.

9            MR. FELDMAN:  We don't need to go off the

10   record.                                          10:25:52

11           (Counsel and witness confer)

12           MR. FELDMAN:  Go ahead.  Appreciate the

13   accommodation.

14   BY MR. ROTH:

15       Q.  Now, you've been deposed 240 times?  This  10:26:14

16   is your 241?

17       A.  No.  If we count this one, it's 240.

18       Q.  And I take it a number of those cases were

19   copyright cases?

20       A.  Yes.                                      10:26:29

21       Q.  And have you testified on behalf of

22   plaintiffs and defendants?

23       A.  You know, I haven't testified in copyright

24   cases all that frequently because damages normally

25   are not -- or large damages are not normally       10:26:41

Exhibit 44
P. 924

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 123

```
 1    payments he's made.                              14:04:32
 2        Q.   And why did you analyze Isaac's benefit?
 3        A.   I was asked to.
 4        Q.   Have you ever analyzed the benefit
 5    received by a shareholder in a company that is    14:04:48
 6    alleged to have infringed in any copyright case
 7    before?
 8        A.   I don't recall ever doing that before.
 9        Q.   One question.  MGA is an S -- subchapter S
10    corporation; is that right?                       14:05:22
11        A.   Yes.
12        Q.   What does that mean?
13        A.   That's two questions.
14        Q.   What does that mean?
15        A.   That means for tax purposes --           14:05:27
16        Q.   But you definitely are an accountant.
17    That was very nice accounting.  I can see that you
18    were the one that did the regression analysis.
19        A.   A subchapter S corporation is a fiction of
20    the law that allows you to incorporate a company, 14:05:41
21    get the benefits of limited liability but the tax
22    treatment of the individual shareholders.  There
23    are no taxes to be paid by that entity, in effect,
24    and all of the taxes will be paid by the
25    shareholders.                                     14:05:58
```

Exhibit 44,
P. 925

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 132

1           THE VIDEOGRAPHER:  We're off the record.    14:15:24

2      The time is 2:15 p.m.

3           (Discussion off the record)

4           THE VIDEOGRAPHER:  We're back on the

5      record.  The time is 2:16 p.m.                  14:16:34

6           MR. ROTH:  So we've just had a short

7      conversation for clarity sake.

8           MR. FELDMAN:  And economy sake.

9           MR. ROTH:  And hoping to avoid the

10     struggle and given the shortness of life.        14:16:47

11          MR. FELDMAN:  And your voice.

12     BY MR. ROTH:

13          Q.  Is there a certain duplication to the

14     profits generated by the sale of Bratz, on the one

15     hand, and the distributions to Mr. Larian, on the  14:16:58

16     other hand, from the sale of Bratz?

17          A.  Yes.

18          Q.  Okay.  Yes?

19          A.  Yes.

20          Q.  Could you elaborate on that?            14:17:06

21          A.  They're really the same dollars or profits

22     that are earned from the activity of selling Bratz

23     products and they shouldn't be awarded twice.  If

24     MGA pays Mattel from MGA for those profits, I don't

25     think it can also collect them from Mr. Larian.   14:17:31

Exhibit 44,
P. 926

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 133

1    And vice versa.  If they can't get them from MGA,    14:17:34
2    they can get it them from Mr. Larian, but they
3    can't get it both times.
4         Q.   Okay.  We spoke just a moment ago about
5    the income approach.  Could you explain what that    14:17:50
6    is?
7         A.   Yes.  It's using some measure of income,
8    and I've used cash flow, and trying to predict or
9    estimate what that will be for a number of years in
10   the future after my valuation date, and then trying  14:18:04
11   to determine what is the present value of that cash
12   flow.  And then for the period beyond the period
13   for which I have projected, I used what's called a
14   terminal of value to estimate the present value of
15   all future cash flows as well.                       14:18:19
16        Q.   What's the "terminal value"?  What is
17   that?
18        A.   The terminal value is the value of the
19   company at the end or terminus of the period that
20   you are analyzing.                                   14:18:30
21        Q.   And how does the income approach work?
22        A.   Well, the income approach works by
23   estimating some measure of income and then using
24   mathematics to bring that back to a present value
25   at an appropriate risk-adjusted rate.               14:18:49

Exhibit 44,
P. 927

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 134

```
 1        Q.   Okay.  So are the future cash flows that    14:18:52

 2   you're discounting back to present the same as

 3   MGA's future profits?

 4        A.   Yes, as measured by cash flow.  And it's

 5   isolated to what I'm estimating for Bratz, not for    14:19:11

 6   the rest of their business.

 7        Q.   Right.

 8             Now, you went through 2010 and then you

 9   calculated the terminal value.

10        A.   I did.                                       14:19:27

11        Q.   Why did you stop it at 2010?

12        A.   That was, I think, a reasonable period for

13   me to project in the future.

14        Q.   And you assumed a 2 percent growth rate?

15        A.   For the two years in the future, yes.       14:19:37

16        Q.   And what about for the periods beyond the

17   two years?

18        A.   My assumption was that it was 2 percent

19   into perpetuity.

20        Q.   And what's the basis upon which you          14:19:50

21   determined that the 2 percent growth rate was

22   appropriate?

23        A.   I think, to be honest, even though I think

24   it's being misconstrued by Mr. Meyer, is

25   conservatism.  I mean, that is an extremely low       14:20:01
```

Exhibit 44
P. 928

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 135

1    future grow rate for a company.  And if I look at        14:20:05

2    what analysts are estimating for other companies

3    that I think are most comparable to MGA, they're

4    projecting growth rates significantly in excess of

5    that.  But if I increase the growth rate, my value       14:20:18

6    will increase correspondingly.

7        Q.  Okay.  And are you familiar with MGA's

8    results, for instance, for 2007?

9        A.  Only through October.

10       Q.  Okay.  And what were those results?           14:20:34

11       A.  That they were down 18 percent -- between

12   18 and 19 percent from the year earlier.

13       Q.  And how did you figure that into your

14   calculation?

15       A.  Well, I assumed that that behavior would      14:20:43

16   continue for November and December 2008.

17       Q.  Okay.

18       A.  And then from that point, that low point,

19   I assumed they would basically grow at an inflation

20   rate, which is really no growth at all.              14:20:56

21       Q.  And did you look at any industry data to

22   determine what experts expected in terms of growth

23   of the toy industry?

24       A.  Not beyond what's already in my report.  I

25   didn't look at the industry in total.  I looked at     14:21:11

Exhibit 44 ,
P. 929

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 147

1      Q.  Are you an expert in the toy industry?        14:36:29

2      A.  In what industry?

3      Q.  Toy industry.

4      A.  I have some expertise, but I wouldn't call

5  myself an expert in the toy industry.              14:36:37

6      Q.  What's your experience, to the extent you

7  have some?

8      A.  I have done some work in some cases in the

9  toy industry, not many, in my 30 years.

10     Q.  What cases?                                   14:36:47

11     A.  I don't think I can disclose them because

12 none of them went to trial, but I can say that I

13 have done a project many years ago for Mattel.

14     Q.  Have you ever worked for MGA?

15     A.  No.                                           14:36:57

16     Q.  How many years ago did you do work for

17 Mattel?

18     A.  15 to 20 years ago.

19     Q.  Okay.  You can put that document aside.

20         Actually, let's pull it back up.  And go     14:37:35

21 to MGA3823976.

22         MR. FELDMAN:  7?

23         THE WITNESS:  6.

24         MR. ROTH:  6.

25     Q.  See the last bullet point on the page        14:37:52

Exhibit 44
P. 930

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 299

```
 1   STATE OF CALIFORNIA   )

 2            :ss

 3   COUNTY OF SAN MATEO    )

 4           I, CYNTHIA MANNING, CSR No. 7645, a

 5   Certified Shorthand Reporter of the State of

 6   California, do hereby certify:

 7           That the foregoing proceedings were taken

 8   before me at the time and place herein set forth;

 9   that any witnesses in the foregoing proceedings,

10   prior to testifying, were placed under oath; that a

11   verbatim record of the proceedings was made by me

12   using machine shorthand which was thereafter

13   transcribed under my direction; further, that the

14   foregoing is an accurate transcription thereof.

15           I further certify that I am neither

16   financially interested in the action, nor a

17   relative or employee of any attorney of any of the

18   parties.

19           IN WITNESS WHEREOF, I have this date

20   subscribed my name.

21

22   DATED: March 25,2008

23

24

                        _____
25                      CYNTHIA MANNING, CSR No. 7645
```

Exhibit 44 ,
P. 931

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 27

```
 1        Q.  Can you explain that distinction?          10:24:20

 2        A.  Well, for any of my calculations to be

 3   relevant, they have to be something that's

 4   recoverable based on proving a violation of

 5   Mattel's rights.                                     10:24:34

 6        Q.  Mm-hmm.

 7        A.  And I'm not here and have not been

 8   retained to draw that linkage.

 9        Q.  Okay.  So you know that there are a wide

10   swath of products sometimes called -- referred to    10:24:48

11   as "SKUs"?  Are you familiar with that term,

12   "SKUs"?

13        A.  I am familiar with that term.  That's

14   Stock Keeping Unit.

15        Q.  There is a wide swath of SKUs that Mattel    10:25:00

16   claims infringe upon its intellectual property?

17           MR. FELDMAN:  I'm not sure what the phrase

18   "wide swath" means.  If you mean there is a number

19   of SKUs, then I agree with that.

20           THE WITNESS:  That's my understanding.        10:25:16

21   BY MR. ROTH:

22        Q.  And I take it from your previous testimony

23   that you're not offering an opinion as to which

24   SKUs may infringe upon that intellectual property

25   and which may not?                                   10:25:26
```

Exhibit 44
P. 932

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 29

```
 1    recovered in copyright cases.  And most of the        10:26:45

 2    copyright cases I've worked for, I've worked for

 3    the infringer.

 4         Q.  Okay.  What would be viewed as the

 5    defendant, in legal parlance?                          10:26:57

 6         A.  Yes, unless they went to courthouse

 7    first --

 8         Q.  Okay.

 9         A.  -- to get a declaratory statement.

10         Q.  Okay.  So the infringer would be my side     10:27:07

11    of the table, right?

12         A.  It would be.

13         Q.  The alleged infringer?

14         A.  Yes.

15         Q.  Okay.  Do you recall any cases in which       10:27:17

16    you offered up opinions on behalf of an infringer?

17              MR. FELDMAN:  Copyright infringement,

18    right?

19              MR. ROTH:  Mm-hmm.

20              THE WITNESS:  I'm not thinking of one        10:27:30

21    right now.  I'm pretty sure the answer is I have,

22    but it would have been a long time ago.  There was

23    a period of time in my career where you could not

24    seek -- well, software was not patentable.  So when

25    a software owner was trying to accuse someone else    10:27:49
```

Exhibit 44
P. 933

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 30

```
 1   of taking their software, they usually did it under   10:27:53

 2   a copyright theory, or often did.  And I know I did

 3   work in that area many years ago, and whether any

 4   of those cases ever went to trial, I don't

 5   remember.                                              10:28:04

 6   BY MR. ROTH:

 7       Q.  Okay.  Has a court in any case in which

 8   you've testified ever excluded part or all of your

 9   testimony for any reason?

10       A.  To answer your compound question, yes as       10:28:34

11   to the first, no as to the second.

12       Q.  As to the first part of my compound

13   question, which cases?

14           MR. FELDMAN:  I'm embarrassed.  I should

15   have interposed an objection.                          10:28:49

16           MR. ROTH:  I think he is admonishing you.

17       Q.  As to the first part of my compound

18   question, can you recall the cases in which

19   portions of an opinion you offered were excluded

20   for any reason?                                        10:29:05

21       A.  I can recall two.  One was Computer

22   Acceleration Corporation versus Microsoft in the

23   Eastern District of Texas.  And the other one was

24   Cyber Gym versus Icon, also in the Eastern District

25   of Texas.                                              10:29:26
```

Exhibit 44,
P. 934

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 31

```
 1        Q.  So that's a tough district for you?        10:29:29

 2        A.  Yes and no.  I wouldn't say it's tough

 3   because the same judge in Cyber Gym who excluded a

 4   certain portion of my analysis has since then

 5   referred me to lawyers to hire me as a damage        10:29:46

 6   expert.

 7            MR. FELDMAN:  What else did he say about

 8   you?

 9            THE WITNESS:  He also said I was the best

10   damage expert he had ever seen at trial.            10:29:55

11            MR. ROTH:  Okay.

12            MR. FELDMAN:  Did you mind my asking that?

13            MR. ROTH:  Yes, I did, but, you know,

14   we're all among friends here, so -- I'm sure you'll

15   get to his -- the honors that he received from his  10:30:06

16   Boy Scout Troop at some point as well.

17        Q.  Were those patent or copyright cases?

18        A.  Those are both patent cases.

19        Q.  And were you testifying on behalf of

20   plaintiff or defendant in those cases?              10:30:20

21        A.  In both those cases I was working for the

22   plaintiff who also were the patent owners, because

23   there are many times that the plaintiff in a patent

24   case is not patent owner.

25        Q.  Okay.  Do you recall the basis of the      10:30:31
```

Exhibit 44,
P. 935