THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
MARINA V. BOGORAD (Bar No. 217524)
(mbogorad@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600

RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, Suite 3800
San Francisco, CA  94111-5974
Tel.: (415) 984-2698 / Fax: (415) 984-2626

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited,
MGAE de Mexico, S.R.L. de C.V., and Isaac Larian

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| v. | Honorable Stephen G. Larson |
| MATTEL, INC., a Delaware corporation, | **[PUBLIC REDACTED]** DECLARATION OF THOMAS J. NOLAN IN SUPPORT OF MGA PARTIES' OPPOSITIONS TO MATTEL, INC.'S MOTIONS *IN LIMINE* NOS. 2-14 |
| Defendant. | |
| AND CONSOLIDATED ACTIONS. | Hearing Date/Time:   TBD |

I, Thomas J. Nolan, hereby declare as follows:

1.     I am an attorney licensed to practice law in the State of California and am a partner at the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, counsel of record for MGA Entertainment, Inc., Isaac Larian, MGA Entertainment (HK) Limited, and MGAE de Mexico S.R.L. de C.V. (collectively, the "MGA Parties") in the above-captioned matter.  I submit this Declaration in Support of MGA Parties' Oppositions to Mattel Inc.'s Motions *in limine* Nos. 2-14.  Unless otherwise stated, I have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently thereto.

2.     A true and correct copy of excerpts of the transcript of the deposition of Hoi Hoffman-Briggs taken January 21, 2008 is attached hereto as **Exhibit 71**.

3.     A true and correct copy of excerpts of the deposition transcript of Margaret Leahy taken December 12, 2007 is attached hereto as **Exhibit 72**.

4.     A true and correct copy of excerpts of Mattel's Proposed Jury Instructions and Special Verdict Forms exchanged April 8, 2008 is attached hereto as **Exhibit 73**.

5.     A true and correct copy of excerpts of the transcript of the deposition of Paula Garcia taken October 10, 2007 is attached hereto as **Exhibit 74**.

6.     A true and correct copy of excerpts of the transcript of the deposition of Ivy Ross taken January 17, 2008 is attached hereto as **Exhibit 75**.

7.     A true and correct copy of excerpts of the transcripts of the deposition of Isaac Larian taken July 18, 2006 and March 26, 2008 is attached hereto as **Exhibit 76**.

8.     A true and correct copy of excerpts of the transcript of the deposition of Victoria O'Connor taken December 6, 2004 is attached hereto as **Exhibit 77**.

9.     A true and correct copy of excerpts of the transcripts of the deposition of Carter Bryant taken November 4, 5 and 8, 2004 is attached hereto as **Exhibit 78**.

10.    A true and correct copy of excerpts of the transcript of the deposition of Anne Wang taken January 28, 2008 is attached hereto as **Exhibit 79**.

i

11.    A true and correct copy of excerpts of the transcript of the deposition of David Rosenbaum taken January 25, 2008 is attached hereto as **Exhibit 80**.

12.    A true and correct copy of the MGA Agreement with Bryant dated October 4, 2000, introduced as Carter Bryant Deposition Exhibit 15, is attached hereto as **Exhibit 81**.

13.    A true and correct copy of an email from David Rosenbaum to Anne Wang dated October 4, 2000, introduced as Deposition Exhibit 2213, is attached hereto as **Exhibit 82**.

14.    A true and correct copy of an email from Victoria O'Connor to Dennis Medici and David Rosenbaum dated September 25, 2000, introduced as Deposition Exhibit 2204, is attached hereto as **Exhibit 83**.

15.    A true and correct copy of Mattel Inc.'s Notice of Withdrawal Without Prejudice of Motion for Order Finding Waiver and to Compel Production of Documents Withheld as Privileged, dated February 5, 2008 is attached hereto as **Exhibit 84**.

16.    A true and correct copy of MGA Entertainment, Inc.'s Opposition To Motion Of Plaintiff Mattel, Inc. For Order Finding Waiver And To Compel Production Of Documents Withheld As Privileged dated January 31, 2008 is attached hereto as **Exhibit 85**.

17.    A true and correct copy of the Motion of Plaintiff Mattel, Inc. for Order Finding Waiver and to Compel Production of Documents Withheld as Privileged dated January 23, 2008 is attached hereto as **Exhibit 86**.

18.    A true and correct copy of the redacted version of Entry Nos. 12, 16, 18, 19 and 21 on MGA's Supplemental Revised Privileged and Redaction Log for MGA's 2005 Document Production is attached hereto as **Exhibit 87**.

19.    A true and correct copy of the redacted version of Entry Nos. 12, 14, 16, 17 and 19 on Privilege Log of David Rosenbaum dated October 26, 2007 is attached hereto as **Exhibit 88**.

Declaration of Thomas J. Nolan in Support of MGA Parties' Oppositions to Mattel, Inc. 's Motions *In Limine* Nos. 2-14 - Case No. CV 04-9049 SGL (RNBx)

20.    A true and correct copy of excerpts of the transcript of the deposition of Jacqueline Prince taken December 21, 2004 is attached hereto as **Exhibit 89**.

21.    A true and correct copy of drawings notarized by Jacqueline Prince, introduced as Jacqueline Prince Deposition Exhibit 62, is attached hereto as **Exhibit 90**.

22.    A true and correct copy of excerpts of the transcript of the deposition of Veronica Marlow taken December 28, 2007 is attached hereto as **Exhibit 91**.

23.    A true and correct copy of MGA's Supplemental Response to Mattel, Inc.'s Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses dated April 28, 2008 is attached hereto as **Exhibit 92**.

24.    A true and correct copy of excerpts of the Expert Report of Denise Van Patten dated February 11, 2008 is attached hereto as **Exhibit 93**.

25.    A true and correct copy of excerpts of the transcript of the deposition of Elise Cloonan taken December 14, 2007 is attached hereto as **Exhibit 94**.

26.    A true and correct copy of excerpts of the transcript of the deposition of Ronald Brawer taken February 5, 2008 is attached hereto as **Exhibit 95**.

27.    A true and correct copy of excerpts of the transcript of the deposition of Robert Lind taken April 25, 2008 is attached hereto as **Exhibit 96**.

28.    A true and correct copy of a fax from Wayne Crist to Carol A. Witschel dated April 8, 2005 and introduced as Samir Khare Deposition Exhibit 625 is attached hereto as **Exhibit 97**.

29.    A true and correct copy of excerpts of the Expert Report of Bruce Stein dated February 11, 2006 is attached hereto as **Exhibit 98**.

30.    A true and correct copy of a letter from Susan Chittum to Tim Kilpin dated May 18, 2005 and introduced as Kumi Croom Deposition Exhibit 1209 is attached hereto as **Exhibit 99**.

Declaration of Thomas J. Nolan in Support of MGA Parties' Oppositions to Mattel, Inc. 's Motions *In Limine* Nos. 2-14 - Case No. CV 04-9049 SGL (RNBx)

31.     A true and correct copy of Worldwide Consumer Research dated July 29, 2003 and introduced as Kumi Croom Deposition Exhibit 1215 is attached hereto as **Exhibit 100**.

32.     A true and correct copy of excerpts of the transcript of the deposition of Robert Tonner taken March 21, 2008 is attached hereto as **Exhibit 101**.

33.     A true and correct copy of excerpts of the transcript of the deposition of Ivy Ross taken January 17, 2008 is attached hereto as **Exhibit 102**.

34.     A true and correct copy of excerpts of the transcript of the deposition of Adrienne Fontanella taken January 16, 2008 is attached hereto as **Exhibit 103**.

35.     A true and correct copy of excerpts of transcript of a hearing before the Honorable Edward A. Infante dated March 10, 2008 is attached hereto as **Exhibit 104**.

36.     A true and correct copy of MGA's First Set of Interrogatories to Mattel, Inc. dated February 4, 2005 is attached hereto as **Exhibit 105**.

37.     A true and correct copy of Mattel, Inc's Objections and Responses to MGA Entertainment, Inc.'s Second Set of Interrogatories dated January 3, 2008 is attached hereto as **Exhibit 106**.

38.     A true and correct copy of MGA Entertainment, Inc.'s Notice of Deposition of Mattel, Inc., Pursuant to Fed. R. Civ. P. 30(b)(6) dated September 5, 2007 is attached hereto as **Exhibit 107**.

39.     A true and correct copy of the Order Granting In Part and Denying In Part MGA's Motion to Compel Mattel to Produce Witnesses Pursuant to Notice of Deposition Under Rule 30(b)(6); Denying Request for Sanctions dated April 11, 2008 is attached hereto as **Exhibit 108**.

40.     A true and correct copy of MGA Entertainment, Inc.'s Second Set of Interrogatories to Mattel, Inc. dated December 4, 2007 is attached hereto as **Exhibit 109**.

41.     A true and correct copy of excerpts of the transcript of the deposition of Wagner J. Wagner taken March 21, 2008 is attached hereto as **Exhibit 110**.

iv

42.    A true and correct copy of excerpts of the transcript of the deposition of Carol A. Scott taken April 3, 2008 is attached hereto as **Exhibit 111**.

43.    A true and correct copy of the Rebuttal Expert Report of Carol A. Scott dated March 17, 2008 is attached hereto as **Exhibit 112**.

44.    A true and correct copy of Attachment 8 to the Expert Report of Paul K. Meyer dated March 17, 2008 is attached hereto as **Exhibit 113**.

45.    A true and correct copy of excerpts of the transcript of the deposition of Kenneth Hollander taken April 16, 2008 is attached hereto as **Exhibit 114**.

46.    A true and correct copy of a letter from B. Dylan Proctor to Jason D. Russell and Matthew Werdegar dated March 25, 2008 regarding Mattel's contemplated Phase One motions *in limine* is attached hereto as **Exhibit 115**.

47.    A true and correct copy of an email from Paula Treantefelles to Martin Hitch dated April 26, 2001 and bearing Bates numbers MGA 0052195-52196 is attached hereto as **Exhibit 116**.

48.    A true and correct copy of an Order Granting in Part Mattel's Renewed Motion for Reconsideration of the September 12, 2007 Order Granting in Part MGA's Motion to Compel Production of Documents dated February 20, 2008 is attached hereto as **Exhibit 117**.

49.    A true and correct copy of excerpts of the Transcript of Proceedings before the Honorable Edward A. Infante dated February 11, 2008 are attached hereto as **Exhibit 118**.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on April 28, 2008, at Los Angeles, California.

Thomas J. Nolan

v

# Exhibit 71

# THIS EXHIBIT IS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# Exhibit 72

| | | |
|---|---|---|
| 1 | UNITED STATES DISTRICT COURT | 16:00:00 |
| 2 | CENTRAL DISTRICT OF CALIFORNIA | 16:00:00 |
| 3 | EASTERN DIVISION | 16:00:00 |
| 4 | | 16:00:00 |
| 5 | CARTER BRYANT, AN INDIVIDUAL, ) | 16:00:00 |
| 6 | ) PLAINTIFF, ) | 16:00:00 |
| 7 | ) V. ) NO. CV04-9049SGL ) | 16:00:00 |
| 8 | MATTEL, INC., A DELWARE ) CORPORATION, AND CONSOLIDATED ) | 16:00:00 |
| 9 | ACCTIONS, ) ) | 16:00:00 |
| 10 | DEFENDANTS. ) | 16:00:00 |
| 11 | _____ ) | 16:00:00 |
| 12 | C O N F I D E N T I A L | 16:00:00 |
| 13 | (PURSUANT TO PROTECTIVE ORDER, THIS | 16:00:00 |
| 14 | TRANSCRIPT HAS BEEN DESIGNATED CONFIDENTIAL, | 16:00:00 |
| 15 | ATTORNEYS' EYES ONLY.) | 16:00:00 |
| 16 | PAGES 1 THROUGH 314 | 16:00:00 |
| 17 | | 16:00:00 |
| 18 | DEPOSITION OF MARGARENT LEAHY, | 16:00:00 |
| 19 | TAKEN ON BEHALF OF THE DEFENDANTS, AT 865 SOUTH | 16:00:00 |
| 20 | FIGUEROA STREET, 10TH FLOOR, LOS ANGELES, | 16:00:00 |
| 21 | CALIFORNIA, COMMENCING AT 10:11 A.M., WEDNESDAY, | 16:00:00 |
| 22 | DECEMBER 12, 2007, BEFORE BETH FELIX, CSR NO. | 16:00:00 |
| 23 | 12766. | 16:00:00 |
| 24 | | |
| 25 | | |

2

```
 1    APPEARANCES OF COUNSEL:                              16:00:00
 2                                                         16:00:00
 3    FOR THE WITNESS:                                     16:00:00
 4        KEATS, MC FARLAND & WILSON                       16:00:00
          BY:  LARRY W. MC FARLAND
 5        BY:  CHRISTIAN C. DOWELL                         16:00:00
          ATTORNEYS AT LAW
 6        9720 WILSHIRE BOULEVARD, PENTHOUSE SUITE         16:00:00
          BEVERLY HILLS, CALIFORNIA  90212
 7        (310) 777-3750                                   16:00:00
 8    FOR THE PLAINTIFF:                                   16:00:00
 9        KEKER & VAN NEST                                 16:00:00
10        BY:  CHRISTA MARTINE ANDERSON
          ATTORNEY AT LAW                                  16:00:00
          710 SANSOME STREET
11        SAN FRANCISCO, CALIFORNIA  94111                 16:00:00
          (415) 397-7188
12                                                         16:00:00
13    FOR DEFENDANT MATTEL:                                16:00:00
14        QUINN, EMANUEL, URQUHART, OLIVER & HODGES        16:00:00
          BY:  MICHAEL T. ZELLER
          BY:  TAMAR BUCHAKJIAN
15        BY:  BRIDGET HAULER                              16:00:00
          ATTORNEYS AT LAW
16        865 SOUTH FIGUEROA STREET, 10TH FLOOR            16:00:00
          LOS ANGELES, CALIFORNIA  90017
17        (213) 624-7707                                   16:00:00
18    FOR DEFENDANT M.G.A.:                                16:00:00
19        SKADDEN, ARPS, SLATE, MEAGHER & FLOM             16:00:00
          BY:  MARCUS R. MUMFORD
20        BY:  KENNETH PLEVAN                              16:00:00
          ATTORNEYS AT LAW
21        300 SOUTH GRAND AVENUE                           16:00:00
          LOS ANGELES, CALIFORNIA 90071
22        (213) 687-5000                                   16:00:00
23                                                         16:00:00
24                                                         16:00:00
25                                                         16:00:00
```

3

Exhibit 72

P. 15

```
1    APPEARANCES (CONTINUED)                          16:00:00

2    ALSO PRESENT:                                    16:00:00

3        MICHAEL MOORE                                16:00:00

         JILL THOMAS

4        STEVEN TOGAMI, VIDEOGRAPHER                  16:00:00

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

Exhibit 72,

P. 16

| | | |
|---|---|---|
| 1 | UP WITH A DESIGN, AND PAULA CARRIED IT OUT. | 17:22:18 |
| 2 | Q   AND WHEN YOU SAY "INITIALLY CAME UP WITH THE | 17:22:22 |
| 3 | DESIGN," YOU MEAN, FOR THE BRATZ DOLLS? | 17:22:26 |
| 4 | A   FOR THE BRATZ DOLLS AS WE KNOW THEM NOW. | 17:22:28 |
| 5 | Q   AND WHAT DO YOU MEAN BY "PAULA CARRIED THEM | 17:22:34 |
| 6 | OUT"? | 17:22:38 |
| 7 | A   SHE WAS RESPONSIBLE FOR THE FINAL PRODUCT AND | 17:22:40 |
| 8 | THE WAY IT LOOKED ON THE SHELVES. | 17:22:44 |
| 9 | Q   AND WHAT DO YOU MEAN BY THAT? | 17:22:47 |
| 10 | A   MEANING, HONESTLY, YOU CAN HAVE A GOOD SCULPT, | 17:22:50 |
| 11 | BUT IF YOU HAVE A PAINT, BAD HAIR, BAD FASHIONS, BAD | 17:22:55 |
| 12 | PACK OUT AND BAD MARKETING, IT WON'T GO ANYWHERE. | 17:23:00 |
| 13 | PAULA WAS THE MASTERMIND BEHIND MAKING BRATZ WHAT IT IS | 17:23:05 |
| 14 | AND PUTTING IT ALL TOGETHER. | 17:23:10 |
| 15 | Q   DURING THAT CONVERSATION, DID YOU TELL ROXANNA | 17:23:19 |
| 16 | POWELL THAT CARTER BRYANT WAS WORKING ON BRATZ WHEN HE | 17:23:24 |
| 17 | WAS EMPLOYED BY MATTEL? | 17:23:28 |
| 18 | A   NO.   THAT DIDN'T COME UP. | 17:23:29 |
| 19 | Q   DID YOU EVER TELL THAT TO ANYONE AT MATTEL? | 17:23:31 |
| 20 | A   NO. | 17:23:34 |
| 21 | Q   HAVE YOU EVER HAD A CONVERSATION WITH CARTER | 17:23:39 |
| 22 | BRYANT ABOUT THE FACT THAT HE WAS WORKING ON THE BRATZ | 17:23:42 |
| 23 | PROJECT WHEN HE WAS STILL AT MATTEL? | 17:23:46 |
| 24 | MS. ANDERSON:   VAGUE. | 17:23:49 |
| 25 | THE WITNESS:   NO, I HAVEN'T.   NO. | 17:23:50 |

206

Exhibit 72 ,
P. 17

1    STATE OF CALIFORNIA      )

2                            ) SS.

3    COUNTY OF LOS ANGELES  )

4

5         I, BETH FELIX, CERTIFIED SHORTHAND REPORTER,

6    CERTIFICATE NO. 12766, FOR THE STATE OF CALIFORNIA,

7    HEREBY CERTIFY:

8         THE FOREGOING PROCEEDINGS WERE TAKEN BEFORE ME AT

9    THE TIME AND PLACE THEREIN SET FORTH, AT WHICH TIME THE

10   DEPONENT WAS PLACED UNDER OATH BY ME;

11        THE TESTIMONY OF THE DEPONENT AND ALL OBJECTIONS

12   MADE AT THE TIME OF THE EXAMINATION WERE RECORDED

13   STENOGRAPHICALLY BY ME AND WERE THEREAFTER TRANSCRIBED.

14   THE FOREGOING TRANSCRIPT IS A TRUE AND CORRECT

15   TRANSCRIPT OF MY SHORTHAND NOTES SO TAKEN;

16        I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR

17   NOR RELATED TO ANY PARTY TO SAID ACTION NOR IN ANY WAY

18   INTERESTED IN THE OUTCOME THEREOF;

19        IN WITNESS WHEREOF, I HAVE HEREUNTO SUBSCRIBED MY

20   NAME THIS 12TH OF DECEMBER, 2007.

21

22                              _Beth Felix_

                                BETH FELIX

23

24

25

314

Exhibit 72

P. 18

# Exhibit 73

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
2     John B. Quinn (Bar No. 090378)
        johnquinn@quinnemanuel.com
3     Michael T. Zeller (Bar No. 196417)
        (michaelzeller@quinnemanuel.com)
4     Jon D. Corey (Bar No. 185066)
        (joncorey@quinnemanuel.com)
5     Timothy L. Alger (Bar No. 160303)
        (timalger@quinnemanuel.com)
6   865 South Figueroa Street, 10th Floor
    Los Angeles, California  90017-2543
7   Telephone:   (213) 443-3000
    Facsimile:   (213) 443-3100

8   Attorneys for Mattel, Inc.

9               UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

12  | CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |

13              Plaintiff,          | Consolidated with
14                                    Case No. CV 04-09059
        vs.                           Case No. CV 05-02727

15  MATTEL, INC., a Delaware          Hon. Stephen G. Larson
    corporation,
16
              Defendant.           **MATTEL'S PROPOSED JURY
17                                 INSTRUCTIONS**

18  AND CONSOLIDATED ACTIONS

19                                  **Phase 1:**

20                                  Discovery Cut-Off:      January 28, 2008
                                    Pre-Trial Conference:   May 5, 2008
21                                  Trial Date:             May 27, 2008

22

23

24

25

26

27

28

9/2463941.1

## 17.22

## COPYRIGHT—DAMAGES

## (17 U.S.C. § 504)

If you find for the plaintiff, Mattel, on any of its copyright infringement claims against the defendants, you must determine Mattel's damages. Mattel is entitled to recover the actual damages suffered as a result of the infringement. In addition, Mattel is also entitled to recover any profits of the defendants attributable to the infringement. Mattel must prove damages by a preponderance of the evidence.

**Authority:** 9th Cir. Civ. Jury Instr. 17.22 (2007).

## 17.23

## COPYRIGHT—DAMAGES—ACTUAL DAMAGES

## (17 U.S.C. § 504(b))

I just instructed you that Mattel is entitled to recover the actual damages suffered as a result of the infringement.  Actual damages means the amount of money adequate to compensate Mattel for the reduction of the fair market value of the copyrighted work caused by the infringement.  The reduction of the fair market value of the copyrighted work is the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by the defendant of the plaintiff's work.

**Authority:**  9th Cir. Civ. Jury Instr. 17.23 (2007).

9/2463941.1

## 17.24

## COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS

## (17 U.S.C. § 504(b))

In addition to actual damages, Mattel is entitled to any profits of the defendants attributable to the infringement.  You may not include in an award of profits any amount that you took into account in determining actual damages.

You may make an award of the defendant's profits only if you find that the plaintiff showed a causal relationship between the infringement and the defendant's gross revenue.

The defendant's profit is determined by deducting expenses from the defendant's gross revenue.

The defendant's gross revenue is all of the defendant's receipts from the sale of a product associated with the infringement.  Mattel has the burden of proving the defendants' gross revenue by a preponderance of the evidence.

Expenses are all operating costs and production costs incurred in producing the defendant's gross revenue.  The defendants have the burden of proving the defendants' expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement.  The defendants have the burden of proving the portion of the profit, if any, attributable to factors other than copying the copyrighted work.

**Authority:**  9th Cir. Civ. Jury Instr. 17.24 (2007).

9/2463941.1

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___

## COPYRIGHT—DAMAGES—INDIRECT PROFITS

Indirect profits are the defendant's profits with a less direct connection or link to the infringement.  Mattel seeks indirect profits in this case.  To recover indirect profits, Mattel must establish a causal relationship between the infringement and the profits generated indirectly from such infringement.

In other words, Mattel must offer some evidence that the infringement at least partially caused the profits that the infringer generated as a result of the infringement.

When infringing and non-infringing elements of a work cannot be readily separated, all of the defendant's profits should be awarded to Mattel.

**Authority:**  9th Cir. Civ. Jury Instr. 17.24 (2007); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 710-11, 714 n.10 (9th Cir. 2004).

9/2463941.1

## MATTEL'S SPECIAL JURY INSTRUCTION NO.

## COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT

### (17 U.S.C. § 504(c)(2))

An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:

1. The defendant engaged in acts that infringed the copyright; and

2. The defendant knew that those acts infringed the copyright.

A defendant cannot deduct certain expenses, such as taxes, from his/its gross revenue when the copyright infringement is willful. You may deduct defendants' overhead expenses only if defendants can demonstrate that this overhead actually assisted in the production, distribution or sale of the infringing product(s).

**Authority:** 9th Cir. Civ. Jury Instr. 17.27 (2007); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000); *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.*, 752 F.2d 1326, 1331-32 (9th Cir. 1982)

1/2463941.1

**Damages Related to Phase 1(a) Claims**

**CACI 350**

**INTRODUCTION TO CONTRACT DAMAGES**

In Phase 1(a) of this trial, you found that Mattel had proved its claim against Carter Bryant for breach of contract. Now you must decide how much money will reasonably compensate Mattel for the harm caused by Mr. Bryant's breaches. This compensation is called "damages." The purpose of such damages is to put Mattel in as good a position as it would have been if Mr. Bryant had performed as promised.

To recover damages for any harm, Mattel must prove:

1.      That the harm was likely to arise in the ordinary course of events from the breach of contract; or

2.      That when the contract was made, both parties could have reasonably foreseen the harm as the probable result of the breach.

Mattel also must prove the amount of its damages according to the following instructions. Mattel does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

Mattel claims damages for:

(1)      Compensatory and general damages, including disgorgement of profits earned by Mr. Bryant as a result of his breaches;

(2)      Prejudgment interest at the maximum rate.

**Authority:**  CACI No. 350.

# CACI 358

## MITIGATION OF DAMAGES

If Carter Bryant breached the contract and the breach caused harm, Mattel is not entitled to recover damages for harm that Mr. Bryant proves Mattel could have avoided with reasonable efforts or expenditures.  You should consider the reasonableness of Mattel's efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk or hardship.

If Mattel made reasonable efforts to avoid harm, then your award should include reasonable amounts that it spent for this purpose.

**Authority:**  CACI No. 358.

9/2463941.1

MATTEL'S PROPOSED JURY INSTRUCTIONS
Exhibit 79,
P. 26

## CACI 3901

## INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

In Phase 1(a), you determined that Mattel had proved its claim for intentional interference with contractual relations against the defendants MGA and Isaac Larian.  You must now decide how much money will reasonably compensate Mattel for this harm.  This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by MGA's and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)     Compensatory and general damages;

(2)     Prejudgment interest at the maximum rate;

(3)     Punitive damages.

**Authority:**  CACI No. 3901.

9/2463941.1

## CACI 3901

## INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR BREACH OF FIDUCIARY DUTY AND THE DUTY OF LOYALTY

In Phase 1(a), you determined that Mattel had proved its claims against Carter Bryant for breach of fiduciary duty and breach of the duty of loyalty. You must now decide how much money will reasonably compensate Mattel for this harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by Mr. Bryant's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)    Compensatory and general damages, including disgorgement of profits earned by Mr. Bryant as a result of his wrongful conduct;

(2)    Prejudgment interest at the maximum rate;

(3)    Punitive damages.

**Authority:**   CACI No. 3901; *Xum Speegle, Inc. v. Fields*, 216 Cal. App. 2d 546 (1963) (granting plaintiff an accounting of commissions wrongfully diverted to defendant); *Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1086 (9th Cir. 2003) ("Although there are few reported cases addressing the appropriate remedy, those we have found also required employees to turn over profits received as a result of breaching their duty of loyalty.") (citations omitted).

/9/2463941.1

## CACI 3901

## INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND BREACH OF THE DUTY OF LOYALTY

In Phase 1(a), you determined that Mattel had proved its claims against the defendants MGA and Isaac Larian for aiding and abetting Carter Bryant's breach of fiduciary duty and breach of the duty of loyalty. You must now decide how much money will reasonably compensate Mattel for this harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by MGA's and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)     Compensatory and general damages, including disgorgement of profits earned by MGA and Mr. Larian as a result of their wrongful conduct;

(2)     Prejudgment interest at the maximum rate;

(3)     Punitive damages.

**Authority:**  CACI No. 3901.

-90-

Exhibit 73 ,
P. 29

9/2463941.1

# CACI 2102

## PRESUMED MEASURE OF DAMAGES FOR CONVERSION

In Phase 1(a) of this trial, you found that Mattel had proved its claims for conversion against Carter Bryant, MGA, Isaac Larian and MGA Hong Kong. You must now decide how much money will reasonably compensate Mattel for the harm. This compensation is called "damages."

Mattel must prove the amount of its damages. However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)     The fair market value of the Bratz concepts and ideas created by Carter Bryant while he was employed by Mattel and tangible Bratz items; and

(2)     Prejudgment interest at the maximum rate;

(3)     Reasonable compensation for the time and money spent by Mattel in attempting to recover this property;

(4)     Punitive damages.

**Authority:** CACI No. 2102 (modified); *Betzer v. Olney*, 14 Cal. App. 2d 53, 61 (1937).

-91-

Exhibit 73 ,
P. 30

## CACI 4409

## <u>REMEDIES FOR MISAPPROPRIATION OF TRADE SECRET</u>

In Phase 1(a) of this trial, you determined that Mattel had proved its claim against Carter Bryant, MGA and Isaac Larian for misappropriation of trade secrets. Mattel is entitled to recover damages if the misappropriation caused Mr. Bryant, MGA or Mr. Larian to be unjustly enriched.

If Mr. Bryant's, MGA's or Mr. Larian's misappropriation did not cause them to be unjustly enriched, Mattel may still be entitled to a reasonable royalty for no longer than the period of time the use could have been prohibited.  However, I will calculate the amount of any royalty.

**Authority:**  CACI No. 4409 (modified).

9/2463941.1

## CACI 4410

## UNJUST ENRICHMENT

Mr. Bryant, MGA and Mr. Larian were unjustly enriched if their misappropriation of Mattel's trade secrets caused Mr. Bryant, MGA or Mr. Larian to receive a benefit that they otherwise would not have achieved.

To decide the amount of any unjust enrichment, first determine the value of Mr. Bryant's, MGA's or Mr. Larian's benefit that would not have been achieved except for their misappropriation.  Then subtract from that amount Mr. Bryant's, MGA's or Mr. Larian's reasonable expenses.

**Authority:**  CACI No. 4410.

MATTEL'S PROPOSED JURY INSTRUCTIONS

Exhibit 73 ,

P. 32

# CACI 3901

## INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR COMMON LAW UNFAIR COMPETITION

In Phase 1(a), you determined that Mattel had proved its claim for unfair competition against the defendants Carter Bryant, MGA, Isaac Larian and MGA Hong Kong. You must now decide how much money will reasonably compensate Mattel for this harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by Mr. Bryant's, MGA's, Mr. Larian's and MGA Hong Kong's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)     Compensatory and general damages;

(2)     Prejudgment interest at the maximum rate;

(3)     Punitive damages.

**Authority:**   CACI No. 3901.

MATTEL'S PROPOSED JURY INSTRUCTIONS

Exhibit 73 ,

P. 33

## MATTEL'S SPECIAL JURY INSTRUCTION NO. __
## AFFIRMATIVE DEFENSE—FAILURE TO MITIGATE

The defendants claim that Mattel failed to mitigate damages allegedly caused by the defendants' wrongful conduct. The doctrine of mitigation of damages holds that a plaintiff who suffers damages as a result of a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and may not recover for damages avoidable through ordinary care and reasonable exertion. The duty to mitigate damages does not require an injured party to do what is unreasonable or impracticable.

The burden of proving that losses could have been avoided by plaintiff by reasonable effort and expense is always on the party who breached the contract or harmed the plaintiff.

**Authority:** CACI No. 358, comments; *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994).

MATTEL'S PROPOSED JURY INSTRUCTIONS
Exhibit 73 ,
P. 34

09/2463941.1

## CACI 3947

## PUNITIVE DAMAGES—INDIVIDUAL AND ENTITY DEFENDANTS

If you decide that Carter Bryant's, Isaac Larian's, MGA's or MGA Hong Kong's conduct caused Mattel harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Mr. Bryant or Mr. Larian only if Mattel proves by clear and convincing evidence that Mr. Bryant or Mr. Larian engaged in that conduct with malice, oppression, or fraud.

You may award punitive damages against MGA or MGA Hong Kong only if Mattel proves that MGA or MGA Hong Kong acted with malice, oppression, or fraud. To do this, Mattel must prove by clear and convincing evidence that the malice, oppression, or fraud was conduct of one or more officers, directors, or managing agents of MGA or MGA Hong Kong, who acted on behalf of MGA or MGA Hong Kong.

"Malice" means that a defendant acted with intent to cause injury or that a defendant's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another. A defendant acts with knowing disregard when the defendant is aware of the problem dangerous consequences of his or its conduct and deliberately fails to avoid those consequences.

"Oppression" means that a defendant's conduct was despicable and subjected Mattel to cruel and unjust hardship in knowing disregard of its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that a defendant intentionally misrepresented or concealed a material fact and did so intending to harm Mattel.

9/2463941.1

1       An employee is a "managing agent" if he or she exercises substantial

2   independent authority and judgment in his or her corporate decision making such

3   that his or her decisions ultimately determine corporate policy.

4       There is no fixed formula for determining the amount of punitive damages,

5   and you are not required to award any punitive damages.  If you decide to award

6   punitive damages, you should consider all of the following separately for each

7   defendant in determining the amount:

8       (a)    How reprehensible was that defendant's conduct?  In deciding how

9   reprehensible a defendant's conduct was, you may consider, among other factors:

10      (b)    Is there a reasonable relationship between the amount of punitive

11  damages and Mattel's harm?

12      (c)    In view of that defendant's financial condition, what amount is

13  necessary to punish him or it and discourage future wrongful conduct?  You may

14  not increase the punitive award above an amount that is otherwise appropriate

15  merely because a defendant has substantial financial resources.

16

17  **Authority:**  CACI No. 3947.

18

19

20

21

22

23

24

25

26

27

28

19/2463941.1

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
   johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
   michaelzeller@quinnemanuel.com
   Jon D. Corey (Bar No. 185066)
   joncorey@quinnemanuel.com
   Timothy L. Alger (Bar No. 160303)
   timalger@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Mattel, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>              Plaintiff,<br><br>       vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>              Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727<br><br>Hon. Stephen G. Larson<br><br>**MATTEL'S PROPOSED SPECIAL VERDICT FORMS**<br><br>**Phase 1:**<br><br>Discovery Cut-Off:   January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date:          May 27, 2008 |

07209/2455195.1

Case No. CV 04-9049 SGL (RNBx)

MATTEL'S PROPOSED SPECIAL VERDICT FORMS

Exhibit __73__,
P. __37__

## **Special Verdict Form for Phase 1(b)**

We answer the questions submitted to us as follows:

### **Copyright Infringement**

1.  Is Carter Bryant liable to Mattel for copyright infringement?

    Yes  _____

    No   _____

2.  Is MGA Entertainment, Inc. ("MGA") liable to Mattel for copyright infringement?

    Yes  _____

    No   _____

3.  Is Isaac Larian liable to Mattel for copyright infringement?

    Yes  _____

    No   _____

4.  Is MGA Entertainment (HK) Limited ("MGA HK") liable to Mattel for copyright infringement?

    Yes  _____

    No   _____

5.  Did Carter Bryant willfully infringe Mattel's copyrights?

    Yes  _____

    No   _____

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S PROPOSED SPECIAL VERDICT FORMS

155195.1

Exhibit 73 ,
P. 38

6.     Did MGA willfully infringe Mattel's copyrights?

      Yes   ____

      No    ____

7.     Did Isaac Larian willfully infringe Mattel's copyrights?

      Yes   ____

      No    ____

8.     Did MGA HK willfully infringe Mattel's copyrights?

      Yes   ____

      No    ____

9.     What are Mattel's damages for the Defendants' copyright infringement?  (Answer all that apply.)

(a)     Copyright Infringement by Carter Bryant:

      Actual Damages/Bryant's Profits   $_____

(b)     Copyright Infringement by MGA

      Actual Damages/MGA's Profits    $_____

(c)     Copyright Infringement by Isaac Larian

      Actual Damages/Larian's Profits   $_____

(d)     Copyright Infringement by MGA HK

      Actual Damages/MGA HK's Profits $_____

155195.1

-7-

Case No. CV 04-9049 SGL (RNBx)

MATTEL'S PROPOSED SPECIAL VERDICT FORMS

Exhibit 73 ,
P. 39

## Breach of Contract

10.    In Phase 1(a) of this trial, you found that Carter Bryant is liable to Mattel for breach of contract.  What are Mattel's damages?

$ _____

## Intentional Interference With Contractual Relations

11.    In Phase 1(a) of this trial, you found that the Defendant(s) [INSERT NAMES] is/are liable to Mattel for intentional interference with contractual relations.  What are Mattel's damages?

$ _____

## Breach of Fiduciary Duty

12.    In Phase 1(a) of this trial, you found that Carter Bryant is liable to Mattel for breach of fiduciary duty.  What are Mattel's damages?

$ _____

## Breach of the Duty of Loyalty

13.    In Phase 1(a) of this trial, you found that Carter Bryant is liable to Mattel for breach of the duty of loyalty.  What are Mattel's damages?

$ _____

155195.1

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S PROPOSED SPECIAL VERDICT FORMS

Exhibit 73 ,
P. 40

## Aiding and Abetting Breach of Fiduciary Duty

14.   In Phase 1(a) of this trial, you found that the Defendant(s) [INSERT NAMES] is/are liable to Mattel for aiding and abetting Carter Bryant's breach of fiduciary duty.  What are Mattel's damages?

$ _____

## Aiding and Abetting Breach of the Duty of Loyalty

15.   In Phase 1(a) of this trial, you found that the Defendant(s) [INSERT NAMES] is/are liable to Mattel for aiding and abetting Carter Bryant's breach of the duty of loyalty.  What are Mattel's damages?

$ _____

## Conversion

16.   In Phase 1(a) of this trial, you found that the Defendant(s) [INSERT NAMES] is/are liable to Mattel for conversion.  What are Mattel's damages?

Fair Market Value                    $ _____

Compensation for Time and Money
Spent to Recover the Property        $ _____

155195.1

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S PROPOSED SPECIAL VERDICT FORMS

Exhibit 73 ,
P. 41

## Misappropriation of Trade Secrets

17.   In Phase 1(a) of this trial, you found that the Defendant(s) [INSERT NAMES] is/are liable to Mattel for misappropriation of trade secrets.  What are Mattel's damages?

$ _____

## Unfair Competition

18.   In Phase 1(a) of this trial, you found that the Defendant(s) [INSERT NAMES] is/are liable to Mattel for unfair competition.  What are Mattel's damages?

$ _____

## Punitive Damages

19.   Should punitive damages be awarded against Carter Bryant?

Yes _____

No _____

*If your answer is "yes," then answer Question __.*

*If your answer is "no," then answer Question __.*

20.   What amount of punitive damages should be awarded against Mr. Bryant?

$ _____

155195.1

Case No. CV 04-9049 SGL (RNBx)

MATTEL'S PROPOSED SPECIAL VERDICT FORMS

Exhibit 73 ,
P. 42

21.   Should punitive damages be awarded against MGA?

     Yes   ____

     No   ____

*If your answer is "yes," then answer Question __.*

*If your answer is "no," then answer Question __.*

22.   What amount of punitive damages should be awarded against MGA Entertainment?

     $_____

23.   Should punitive damages be awarded against Isaac Larian?

     Yes   ____

     No   ____

*If your answer is "yes," then answer Question __.*

*If your answer is "no," then answer Question __.*

24.   What amount of punitive damages should be awarded against Mr. Larian?

     $_____

25.   Should punitive damages be awarded against MGA HK?

     Yes   ____

     No   ____

*If your answer is "yes," then answer Question __.*

*If your answer is "no," then answer Question __.*

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S PROPOSED SPECIAL VERDICT FORMS

I55195.1

Exhibit 73 ,
P. 43

26.   What amount of punitive damages should be awarded against MGA HK?

$ _____

155195.1

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S PROPOSED SPECIAL VERDICT FORMS

Exhibit 73 ,
P. 44

# Exhibit 74

1          UNITED STATES DISTRICT COURT

2         CENTRAL DISTRICT OF CALIFORNIA

3              EASTERN DIVISION

4

5    CARTER BRYANT, AN INDIVIDUAL,)

6                PLAINTIFF,   ) CASE NO.
                              ) CV 04-9049 SGL (RNBX)
7         VS.                 )
                              )
8    MATTEL, INC., A DELAWARE )
     CORPORATION,             )
9                             )
                DEFENDANT.    )
10                            )
     _____)
11                            )
     AND CONSOLIDATED ACTIONS. )
12   _____)

13

14

15

16       CONFIDENTIAL - ATTORNEYS' EYES ONLY

17

18              VOLUME IV

19

20    VIDEOTAPED DEPOSITION OF **PAULA GARCIA**,

21   TAKEN ON BEHALF OF THE DEFENDANT, AT

22   865 SOUTH FIGUEROA STREET, TENTH FLOOR,

23   LOS ANGELES, CALIFORNIA, COMMENCING AT

24   10:22 A.M., WEDNESDAY, OCTOBER 10, 2007,

25   BEFORE J'ANA SIEGERS, CSR NUMBER 10845.

Exhibit 74 ,
P. 45

963

```
 1    APPEARANCES OF COUNSEL:

 2

 3    FOR PLAINTIFF CARTER BRYANT:

 4         KEKER & VAN NEST, LLP
           BY:  MICHAEL H. PAGE, ESQ.
 5         710 SANSOME STREET
           SAN FRANCISCO, CALIFORNIA 94111
 6         (415) 391-5400
           MPAGE@KVN.COM
 7

 8

 9    FOR DEFENDANT MATTEL, INC.:

10         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
           BY:  MICHAEL T. ZELLER, ESQ.
11             BRIDGET HAULER, ESQ.
           865 SOUTH FIGUEROA STREET
12         TENTH FLOOR
           LOS ANGELES, CALIFORNIA 90017-2543
13         (213) 443-3000
           MICHAELZELLER@QUINNEMANUEL.COM
14         BRIDGETHAULER@QUINNEMANUEL.COM

15

16    FOR MGA ENTERTAINMENT, INC.:

17         O'MELVENY & MYERS, LLP
           BY:  DIANA M. TORRES, ESQ.
18         400 SOUTH HOPE STREET
           LOS ANGELES, CALIFORNIA 90071-2899
19         (213) 430-6000
           DTORRES@OMM.COM

20

21

22    ALSO PRESENT:

23         PETER ACHESON, JTV LITIGATION SERVICES, INC.

24         MICHAEL MOORE, MATTEL, INC.

25         RICH DANIELS, MGA ENTERTAINMENT, INC.
```

Exhibit 74,
P. 46

964

| 11:42:19 | 1 | Q. WAS THIS A SALES MEETING THAT OCCURRED ON |
|---|---|---|
| 11:42:21 | 2 | OR ABOUT NOVEMBER 7, 2000? |
| 11:42:28 | 3 | A. I BELIEVE -- I DON'T KNOW FOR SURE. IT'S |
| 11:42:30 | 4 | POSSIBLE. |
| 11:42:31 | 5 | Q. YOU DO KNOW THAT THERE WAS A RETAIL |
| 11:42:33 | 6 | MEETING THAT MGA HAD PERTAINING TO BRATZ ON OR ABOUT |
| 11:42:36 | 7 | NOVEMBER 7, 2000, CORRECT? |
| 11:42:44 | 8 | MS. TORRES: CAN YOU REPEAT THE QUESTION? |
| | 9 | (THE DEPOSITION OFFICER READ THE |
| | 10 | RECORD AS FOLLOWS: |
| | 11 | "QUESTION: YOU DO KNOW THAT THERE |
| | 12 | WAS A RETAIL MEETING THAT MGA HAD |
| | 13 | PERTAINING TO BRATZ ON OR ABOUT |
| | 14 | NOVEMBER 7, 2000, CORRECT?") |
| 11:42:57 | 15 | MS. TORRES: OBJECTION. VAGUE. |
| 11:42:57 | 16 | THE DEPONENT: COULD YOU BE MORE SPECIFIC |
| 11:42:58 | 17 | BY "RETAIL MEETING"? |
| 11:43:01 | 18 | BY MR. ZELLER: |
| 11:43:02 | 19 | Q. MEETING WITH ANY RETAILER THAT INCLUDED, |
| 11:43:05 | 20 | AMONG OTHER PRODUCTS OR POTENTIAL PRODUCTS, BRATZ. |
| 11:43:11 | 21 | A. I BELIEVE THERE WAS. |
| 11:43:14 | 22 | Q. ARE YOU AWARE OF ANY THAT OCCURRED BEFORE |
| 11:43:16 | 23 | NOVEMBER 7TH? |
| 11:43:17 | 24 | A. NO. |
| 11:43:19 | 25 | Q. IS IT YOUR UNDERSTANDING AND INFORMATION |

Exhibit 74 ,
P. 47

1023

## DEPOSITION OFFICER'S CERTIFICATE

1

2

3   STATE OF CALIFORNIA        )
                               )   SS.
4   COUNTY OF ORANGE           )

5

6        I, J'ANA SIEGERS, HEREBY CERTIFY:

7        I AM A DULY QUALIFIED CERTIFIED SHORTHAND

8   REPORTER IN THE STATE OF CALIFORNIA, HOLDER OF

9   CERTIFICATE NUMBER CSR 10845 ISSUED BY THE COURT

10  REPORTERS BOARD OF CALIFORNIA AND WHICH IS IN FULL

11  FORCE AND EFFECT.  [FED. R. DIV. P. 28(A)].

12       I AM AUTHORIZED TO ADMINISTER OATHS OR

13  AFFIRMATIONS PURSUANT TO CALIFORNIA CODE OF CIVIL

14  PROCEDURE, SECTION 2093(B) AND PRIOR TO BEING

15  EXAMINED, THE DEPONENT WAS FIRST DULY SWORN BY ME.

16  [FED. R. CIV. P. 28(A), 30(F)(1)].

17       I AM NOT A RELATIVE OR EMPLOYEE OR ATTORNEY OR

18  COUNSEL OF ANY OF THE PARTIES, NOR AM I A RELATIVE

19  OR EMPLOYEE OF SUCH ATTORNEY OR COUNSEL, NOR AM I

20  FINANCIALLY INTERESTED IN THIS ACTION.

21  [FED. R. CIV. P. 28].

22       I AM THE DEPOSITION OFFICER THAT

23  STENOGRAPHICALLY RECORDED THE TESTIMONY IN THE

24  FOREGOING DEPOSITION AND THE FOREGOING TRANSCRIPT IS

25  A TRUE RECORD OF THE TESTIMONY GIVEN BY THE

Exhibit 74 ,
P. 48

1328

1   DEPONENT.  [FED. R. CIV. P. 30(F)(1)].

2        BEFORE COMPLETION OF THE DEPOSITION, REVIEW OF

3   THE TRANSCRIPT [X] WAS [ ] WAS NOT REQUESTED.  IF

4   REQUESTED, ANY CHANGES MADE BY THE DEPONENT (AND

5   PROVIDED TO THE REPORTER) DURING THE PERIOD ALLOWED

6   ARE APPENDED HERETO.  [FED. R. CIV. P. 30(E)].

7

8

9   DATED:  OCTOBER 23, 2007.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit 74,
P. 49

1329

A & E Court Reporters      (213) 955-0070      Fax: (213) 955-0077

**Exhibit 75**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

1             UNITED STATES DISTRICT COURT

2           CENTRAL DISTRICT OF CALIFORNIA

3                 EASTERN DIVISION

4      --------------------------------

5      MATTEL, INC., a Delaware         )

6      Corporation,                     )

7                 Plaintiff,            )

8                 vs.                   ) No. CV 04-9059

9      CARTER BRYANT, an individual;    )    NM (RNBx)

10     and DOES 1 through 10,           ) VOLUME I

11     Inclusive,                       )

12                 Defendants.          )

13     ---------------------------- )

14     (COMPLETE CAPTION ON NEXT PAGE.)

15

16       CONFIDENTIAL - ATTORNEYS' EYES ONLY

17

18       Videotaped Deposition of IVY ROSS,

19       taken at 300 South Grand Street,

20       Los Angeles, California, commencing

21       at 9:17 A.M., Thursday, January 17,

22       2008, before Ricki Q. Melton,

23       CSR No. 9400, RPR No. 45429.

24

25     PAGES 1 - 258

Exhibit 75,
P. 50

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 2

1              UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                   EASTERN DIVISION

4

5     --------------------------------

6    MATTEL, INC., a Delaware          )

7    Corporation,                      )

8              Plaintiff,              )

9              vs.                     ) No. CV 04-9059

10   CARTER BRYANT, an individual;     )   NM (RNBx)

11   and DOES 1 through 10,            )

12   Inclusive,                       :)

13              Defendants.            )

14   ------------------------------- ).

15   CARTER BRYANT, on behalf of       )

16   himself, all present and          )

17   former employees of Mattel,       )

18   Inc., and the general public,     )

19              Counter-Claimants,    )

20              vs.                    )

21   MATTEL, INC., a Delaware          )

22   Corporation,                      )

23              Counter-Defendant.     )

24   -------------------------------

25

Exhibit 75
P. 51

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 3

```
 1        APPEARANCES OF COUNSEL:

 2

 3            For the Plaintiff:

 4

 5                QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

 6                BY:  DYLAN PROCTOR, ESQ.

 7                865 South Figueroa Street, Tenth Floor

 8                Los Angeles, California 90017

 9                (213) 443-3000

10                dylanproctor@quinnemanuel.com

11

12                        -and-

13

14                MATTEL, INC.

15                BY:  MICHAEL MOORE, ESQ.

16                333 Continental Boulevard

17                El Segundo, California 90245-5012

18                (310) 252-2000

19                michael.moore@mattel.com

20

21

22

23

24

25
```

Exhibit 75,
P. 52

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 4

```
 1        APPEARANCES (Continued):

 2

 3              For the Defendant and Counterclaimant

 4        Carter Bryant:

 5

 6              KEKER & VAN NEST LLP

 7              BY:  CHRISTA ANDERSON, ESQ.

 8              710 Sansome Street

 9              San Francisco, California 94111-1704

10              (415) 391-5400

11              canderson@kvn.com

12                       :

13        For Defendant MGA Entertainment, Inc.:

14

15              SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

16              BY:   KENNETH PLEVAN, ESQ.

17                    MICHELLE M. CAMPANA, ESQ.

18              Four Times Square

19              New York, New York 10036-6522

20              (212) 735-3000

21              kplevan@skadden.com

22              micampan@skadden.com

23

24        ALSO PRESENT:

25              David West, Video Operator
```

Exhibit 75 ,
P. 53

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 81

| | | |
|---|---|---|
| 1 | 2002. | 11:02:47 |
| 2 | A.   I don't remember an exact number. | 11:02:48 |
| 3 | Q.   Approximate number? | 11:02:53 |
| 4 | A.   225. | 11:02:55 |
| 5 | Q.   And then in addition to the 225, there | 11:02:58 |
| 6 | were others in the design center who were not | 11:03:02 |
| 7 | reporting to you? | 11:03:04 |
| 8 | A.   Correct. | 11:03:05 |
| 9 | Q.   Another couple of hundred approximately? | 11:03:05 |
| 10 | A.   No, I don't think it was that much.  The | 11:03:09 |
| 11 | girls' division was larger.  So it was less than | 11:03:12 |
| 12 | that. | 11:03:15 |
| 13 | Q.   Do you know, among those approximately 225 | 11:03:18 |
| 14 | who were in the area you were responsible for, | 11:03:22 |
| 15 | whether they had outside employment? | 11:03:25 |
| 16 | MR. PROCTOR:  Calls for speculation. | 11:03:31 |
| 17 | BY MR. PLEVAN: | 11:03:32 |
| 18 | Q.   Part-time jobs? | 11:03:32 |
| 19 | A.   I don't know for sure. | 11:03:33 |
| 20 | Q.   Did you ever make any effort to determine | 11:03:35 |
| 21 | whether or not they had -- any of those designers | 11:03:38 |
| 22 | or creative people had part-time jobs outside? | 11:03:45 |
| 23 | MR. PROCTOR:  Objection.  Vague and | 11:03:45 |
| 24 | ambiguous. | 11:03:48 |
| 25 | You are asking whether the witness | 11:03:48 |

Exhibit 75,
P. 54

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 82

| | | |
|---|---|---|
| 1 | personally tried to figure this out? | 11:03:48 |
| 2 | MR. PLEVAN:   Yes. | 11:03:49 |
| 3 | THE WITNESS:   No, I did not.   That was not | 11:03:50 |
| 4 | parts of my role. | 11:03:52 |
| 5 | BY MR. PLEVAN: | 11:03:53 |
| 6 | Q.   Whose role would it have been? | 11:03:53 |
| 7 | MR. PROCTOR:   Calls for speculation, | 11:03:56 |
| 8 | assumes facts not in evidence. | 11:04:00 |
| 9 | Go ahead. | 11:04:01 |
| 10 | THE WITNESS:   It would have been HR's role | 11:04:02 |
| 11 | if they were to have found out. | 11:04:05 |
| 12 | My understanding is that no one would | 11:04:10 |
| 13 | actively go looking, but if there was -- if it was | 11:04:11 |
| 14 | found out that maybe there was some kind of a | 11:04:19 |
| 15 | breach of our policy, then HR would look into that. | 11:04:22 |
| 16 | BY MR. PLEVAN: | 11:04:27 |
| 17 | Q.   Do you recall whether you ever personally | 11:04:28 |
| 18 | had someone bring to HR's attention an issue with | 11:04:30 |
| 19 | respect to part-time work? | 11:04:34 |
| 20 | A.   I don't recall. | 11:04:35 |
| 21 | Q.   Why did you leave Mattel in December of | 11:04:41 |
| 22 | 2003? | 11:04:43 |
| 23 | A.   Because I had created something called | 11:04:46 |
| 24 | Project Platypus that had been running for -- I | 11:04:49 |
| 25 | can't remember the exact amount of time -- maybe | 11:04:53 |

Exhibit 75 ,
P. 55

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 252

```
 1     STATE OF CALIFORNIA      ) ss:

 2     COUNTY OF LOS ANGELES    )

 3

 4        I, RICKI Q. MELTON, CSR No. 9400, RPR No. 45429,

 5     do hereby certify:

 6

 7        That the foregoing deposition testimony of

 8     IVY ROSS was taken before me at the

 9     time and place therein set forth, at which time the

10     witness was placed under oath and was sworn by me to

11     tell the truth, the whole truth, and nothing but the

12     truth;

13

14        That the testimony of the witness and all objections

15     made by counsel at the time of the examination were

16     recorded stenographically by me and were thereafter

17     transcribed under my direction and supervision, and

18     that the foregoing pages contain a full, true, and

19     accurate record of all proceedings and testimony to

20     the best of my skill and ability.

21

22        I further certify that I am neither counsel for

23     any party to said action nor am I related to any

24     party to said action, nor am I in any way interested

25     in the outcome thereof.
```

Exhibit 75,
P. 56

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 253

1          IN WITNESS WHEREOF, I have subscribed my name

2      this 21st day of January, 2008.

3

4

5

6                    _____

7            RICKI Q. MELTON, C.S.R. No. 9400

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit 75,
P. 57

# Exhibit 76

1       UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA

3         EASTERN DIVISION

4

5  BRYANT,        )

             )

6    PLAINTIFF,    )

             )

7  VS.         )CASE NO. CV 04-9040 SGL

             )    (RNBX)

8  MATTEL, INC.,    ).

             )

9    DEFENDANTS.   )

             )

10

11

12      ATTORNEYS' EYES ONLY

13   (THIS TRANSCRIPT HAS BEEN DESIGNATED

14     ATTORNEYS' EYES ONLY.)

15

16

17   DEPOSITION OF ISAAC LARIAN, TAKEN ON BEHALF OF THE

18  PLAINTIFF, AT 1999 AVENUE OF THE STARS, SUITE 700, LOS

19  ANGELES, CALIFORNIA, COMMENCING AT 9:26 A.M., TUESDAY,

20  JULY 18, 2006, BEFORE APRIL PRAXMARER, CERTIFIED

21  SHORTHAND REPORTER NO. 12437.

22

23

24

25

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

Exhibit 76,
P. 58

```
 1          APPEARANCES OF COUNSEL:

 2

 3          FOR THE PLAINTIFF:

 4              QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
                BY:  JOHN B. QUINN, ESQ.

 5              BY:  MICHAEL T. ZELLER, ESQ.
                865 SOUTH FIGUEROA STREET

 6              TENTH FLOOR
                LOS ANGELES, CALIFORNIA 90017-2543

 7              (213) 443-3000

 8

 9          FOR THE DEFENDANT, MGA & THE WITNESS:

10              O'MELVENY & MYERS LLP
                BY:  DALE M. CENDALI, ESQ.

11              7 TIMES SQUARE
                TIMES SQUARE TOWER

12              NEW YORK, NEW YORK, 10036
                (212) 326-2000

13

                O'MELVENY & MYERS LLP
14              BY:  JENNIFER GLAD, ESQ.
                400 SOUTH HOPE STREET

15              LOS ANGELES, CALIFORNIA 90071-2899
                (213) 430-7633

16

17          FOR THE DEFENDANT, CARTER BRYANT:

18              LITTLER MENDELSON
                BY:  DOUGLAS A. WICKHAM, ESQ.

19              2049 CENTURY PARK EAST
                5TH FLOOR

20              LOS ANGELES, CALIFORNIA 90067
                (310) 712-7314

21

22          ALSO PRESENT:

23              DAPHNE GRONICH, SENIOR COUNSEL FOR MATTEL
                MICHAEL MOORE, ASSISTANT GENERAL COUNSEL FOR MATTEL

24

25
```

Exhibit 76
P. 59

| | | |
|---|---|---|
| 1 | 10:05:33 | MS. CENDALI:  OBJECTION.  VAGUE AND |
| 2 | 10:05:34 | OVERBROAD. |
| 3 | 10:05:35 | YOU CAN ANSWER. |
| 4 | 10:05:36 | THE WITNESS:  I DON'T REMEMBER.  I DON'T |
| 5 | 10:05:36 | KNOW.  I DON'T KNOW. |
| 6 | 10:05:37 | BY MR. QUINN: |
| 7 | 10:05:37 | Q    YOU DON'T KNOW ONE WAY OR THE OTHER? |
| 8 | 10:05:39 | A    I DON'T. |
| 9 | 10:05:39 | Q    AT THE TIME THAT YOU WERE TALKING TO |
| 10 | 10:05:43 | CARTER BRYANT ABOUT THE POSSIBILITY OF HIS DOING SOME |
| 11 | 10:05:47 | WORK FOR MGA IN THE FALL OF 2000, DID IT OCCUR TO YOU |
| 12 | 10:05:52 | THAT HE MIGHT HAVE A CONTRACT WITH MATTEL? |
| 13 | 10:05:56 | A    I DON'T RECALL MY STATE OF MIND BUT PROBABLY. |
| 14 | 10:06:00 | BUT I DON'T RECALL. |
| 15 | 10:06:01 | Q    SO WHEN YOU SAY "PROBABLY," WHAT DO YOU MEAN? |
| 16 | 10:06:07 | A.    I WANTED TO MAKE SURE WHEN WE WAS THERE THAT |
| 17 | 10:06:11 | THIS IDEA THAT HE WAS SHOWING US WAS NOTHING THAT WAS |
| 18 | 10:06:17 | AT MATTEL OR MATTEL HAD DONE.  SO I PROBABLY ASKED HIM |
| 19 | 10:06:21 | SOME QUESTIONS, AND THIS COULD HAVE BEEN ONE OF THEM. |
| 20 | 10:06:23 | Q    IS IT YOUR RECOLLECTION THAT YOU DID ASK HIM |
| 21 | 10:06:25 | QUESTIONS ON THAT SUBJECT? |
| 22 | 10:06:26 | A    ON WHAT SUBJECT? |
| 23 | 10:06:28 | MR. WICKHAM:  OBJECTION.  FOUNDATION. |
| 24 | 10:06:30 | BY MR. QUINN: |
| 25 | 10:06:30 | Q    ON WHAT YOU JUST SAID. |

A&E COURT REPORTERS (213) 955-0070  FAX: (213) 955-0077

Exhibit 76
P. 60

| | | |
|---|---|---|
| 1 | 10:43:19 | BECAUSE HIS QUESTION IS VAGUE AND OVERBROAD. |
| 2 | 10:43:22 | THE WITNESS: OH, I  LOST THE QUESTION. |
| 3 | 10:43:23 | BY MR. QUINN: |
| 4 | 10:43:23 | Q     YEAH.   WHAT WAS SAID AT THE MEETING? |
| 5 | 10:43:26 | MS. CENDALI:  SAME OBJECTIONS. |
| 6 | 10:43:27 | YOU CAN STILL ANSWER. |
| 7 | 10:43:29 | BY MR. QUINN: |
| 8 | 10:43:29 | Q     GIVE ME A NARRATIVE. |
| 9 | 10:43:30 | MS. CENDALI:  OBJECTION TO THE FORM. |
| 10 | 10:43:32 | THE WITNESS:  CAN I TALK NOW? |
| 11 | 10:43:34 | BY MR. QUINN: |
| 12 | 10:43:34 | Q     YOU CAN ALWAYS TALK.  THIS IS JUST FOR THE |
| 13 | 10:43:38 | RECORD. |
| 14 | 10:43:38 | A     OKAY.   TO THE BEST OF MY RECOLLECTION, I SAID |
| 15 | 10:43:42 | TO -- "WHAT DO YOU DO?"  AND HE SAID HE'S A FASHION |
| 16 | 10:43:46 | DESIGNER. |
| 17 | 10:43:47 | AND, "WHERE DO YOU WORK?"  HE SAID HE WORKS |
| 18 | 10:43:49 | AT MATTEL.  AND I ASKED TO SEE A RESUME.  I DON'T THINK |
| 19 | 10:43:53 | HE HAD ONE. |
| 20 | 10:43:55 | SO I LOOKED AS, "WHAT ARE WE DOING HERE?" |
| 21 | 10:43:59 | AND THEY SAID THAT HE HAS A CONCEPT TO SHOW. |
| 22 | 10:44:04 | SO HE SHOWED US SOME DRAWINGS, AND THEY |
| 23 | 10:44:10 | LOOKED INTERESTING.  I ASKED HIM IF THIS WAS SOMETHING |
| 24 | 10:44:14 | THAT HE WAS DOING AT MATTEL OR HAD DONE AT MATTEL, AND |
| 25 | 10:44:19 | HE SAID, "NO." |

Exhibit 76 ,
P. 61

| | | |
|---|---|---|
| 1 | 10:44:22 | AND I SAID, "OKAY. WE CAN TAKE A LOOK AT IT |
| 2 | 10:44:24 | AND GET BACK TO THEM. I'M NOT SURE WE CAN MAKE THIS IN |
| 3 | 10:44:29 | A -- IN A DOLL." |
| 4 | 10:44:29 | Q   I'M NOT SURE WE CAN -- I'M SORRY? |
| 5 | 10:44:32 | A   "MAKE THESE TWO DRAWINGS IN A DOLL, BUT LET |
| 6 | 10:44:38 | ME CONSIDER AND I'LL GET BACK TO YOU." |
| 7 | 10:44:39 | Q   AND THAT'S BASICALLY WHAT YOU RECALL, WHAT |
| 8 | 10:44:43 | WAS SAID? |
| 9 | 10:44:43 | A   THAT'S BASICALLY WHAT I REMEMBER, TO THE BEST |
| 10 | 10:44:45 | OF MY RECOLLECTION. |
| 11 | 10:44:46 | Q   WHY DID YOU ASK HIM IF THEY WERE DONE AT |
| 12 | 10:44:49 | MATTEL? |
| 13 | 10:44:50 | A   BECAUSE I WASN'T INTERESTED IN GETTING |
| 14 | 10:44:52 | SOMETHING THAT WAS DONE AT MATTEL. |
| 15 | 10:44:53 | Q   WHY? |
| 16 | 10:44:53 | A   BECAUSE I DIDN'T WANT TO HAVE A LAWSUIT. |
| 17 | 10:44:57 | Q   RIGHT. |
| 18 | 10:44:57 | A   AND MATTEL SUES EVERYBODY, INCLUDING |
| 19 | 10:45:00 | PHOTOGRAPHERS. |
| 20 | 10:45:01 | Q   I MEAN, DID YOU THINK THAT THERE WOULD BE A |
| 21 | 10:45:06 | PROBLEM IF THEY HAD BEEN DONE AT MATTEL? |
| 22 | 10:45:08 | A   I DIDN'T -- I DIDN'T THINK I WANT TO HAVE |
| 23 | 10:45:10 | SOMETHING THAT WAS DONE AT MATTEL FOR ME. IF IT WAS A |
| 24 | 10:45:14 | MATTEL PRODUCT, WE HAD NO INTEREST. |
| 25 | 10:45:16 | IF IT WAS ANYBODY ELSE'S COMPANY'S PRODUCT, I |

78

Exhibit 76,
P. 62

| | | |
|---|---|---|
| 1 | 10:48:12 | DOING. |
| 2 | 10:48:12 | Q    ALL RIGHT.  DID YOU SAY, IS THIS SOMETHING |
| 3 | 10:48:15 | MATTEL IS DOING, OR DID YOU SAY, IS THIS SOMETHING THAT |
| 4 | 10:48:18 | WAS DONE AT MATTEL? |
| 5 | 10:48:19 | A    I THINK I ASKED IF THIS IS SOMETHING MATTEL |
| 6 | 10:48:22 | WAS DOING.  AGAIN, KNOWING MYSELF, I WOULD THINK. |
| 7 | 10:48:25 | Q    THE REASON I ASK IS BECAUSE A FEW MOMENTS AGO |
| 8 | 10:48:29 | WHEN YOU FIRST TOLD ME, YOU SAID THAT YOU ASKED HIM WAS |
| 9 | 10:48:31 | IT DONE AT MATTEL. |
| 10 | 10:48:32 | A    AGAIN, THAT GOES BACK TO ENGLISH NOT BEING MY |
| 11 | 10:48:37 | FIRST LANGUAGE.  I APOLOGIZE. |
| 12 | 10:48:38 | Q    NO APOLOGIES NECESSARY. |
| 13 | 10:48:41 | SO IF THIS WAS SOMETHING THAT HE HAD CREATED |
| 14 | 10:48:44 | AT MATTEL, BUT MATTEL WASN'T ACTUALLY DOING -- DO YOU |
| 15 | 10:48:47 | UNDERSTAND THE DISTINCTION I'M MAKING? |
| 16 | 10:48:49 | A    IF HE WAS -- |
| 17 | 10:48:50 | Q    IF THIS WAS SOMETHING THAT WAS DONE AT |
| 18 | 10:48:54 | MATTEL, BUT IT WAS NOT A PRODUCT THAT MATTEL WAS |
| 19 | 10:48:57 | ACTUALLY DOING, DO YOU UNDERSTAND WHAT I'M SAYING? |
| 20 | 10:48:59 | A    YES. |
| 21 | 10:48:59 | Q    ALL RIGHT.  WOULD YOU BE INTERESTED IN IT? |
| 22 | 10:49:04 | MS. CENDALI:  OBJECTION TO FORM.  COMPOUND. |
| 23 | 10:49:06 | ASKED AND ANSWERED.  INCOMPLETE HYPOTHETICAL. |
| 24 | 10:49:08 | THE WITNESS:  AGAIN, IF -- IF HE HAD DONE |
| 25 | 10:49:09 | THIS -- HE HAD TOLD US -- AND WE VERIFIED THIS LATER |

82

Exhibit 76,
P. 63

| | | |
|---|---|---|
| 1 | 10:49:12 | ON -- THAT HE HAD DONE THIS IN MISSOURI IN 1998, WHEN |
| 2 | 10:49:17 | HE WAS NOT WORKING FOR ANYBODY. |
| 3 | 10:49:20 | SO IF HE HAD DONE THIS AT THAT TIME AND |
| 4 | 10:49:22 | THAT'S WHAT HE REPRESENTED, AND AGAIN, VERIFIED THAT |
| 5 | 10:49:26 | LATER ON, THEN TO ME THAT WAS FAIR GAME. |
| 6 | 10:49:30 | BY MR. QUINN: |
| 7 | 10:49:30 | Q    I UNDERSTAND THAT'S MR. BRYANT'S TESTIMONY. |
| 8 | 10:49:32 | MY QUESTION IS A LITTLE BIT DIFFERENT. |
| 9 | 10:49:34 | IF HE TOLD YOU THAT THIS WAS SOMETHING THAT |
| 10 | 10:49:36 | HE HAD DONE WHILE HE WAS EMPLOYED AT MATTEL, DO YOU |
| 11 | 10:49:39 | UNDERSTAND WHAT I'M SAYING? |
| 12 | 10:49:40 | A    IF HE HAD DONE THIS -- CAN YOU REPEAT THAT |
| 13 | 10:49:43 | AGAIN. |
| 14 | 10:49:43 | Q    YEAH.  IF HE HAD CREATED THIS WHILE HE WAS |
| 15 | 10:49:46 | EMPLOYED AT MATTEL. |
| 16 | 10:49:47 | A    YES. |
| 17 | 10:49:47 | Q    DO YOU UNDERSTAND WHAT I'M SAYING SO FAR? |
| 18 | 10:49:49 | A    YES, I DO. |
| 19 | 10:49:50 | Q    WOULD YOU HAVE BEEN INTERESTED IN IT? |
| 20 | 10:49:53 | A    NO, I WOULD NOT. |
| 21 | 10:49:54 | Q    WHY IS THAT? |
| 22 | 10:49:55 | A    BECAUSE, AGAIN, IF IT WAS SOMETHING THAT |
| 23 | 10:49:57 | MATTEL WAS DOING, THEN I WASN'T INTERESTED IN IT. |
| 24 | 10:50:00 | Q    YOU SEE, I'M DRAWING A DISTINCTION NOW |
| 25 | 10:50:03 | BETWEEN A PRODUCT THAT MATTEL IS ACTUALLY DOING, THAT |

Exhibit 76.
P. 64

| | | |
|---|---|---|
| 1 | 10:52:33 | IF THIS WAS SOMETHING THAT BELONGED TO |
| 2 | 10:52:35 | MATTEL, I WAS NOT INTERESTED IN IT.  THIS WAS -- THIS |
| 3 | 10:52:38 | IS A PRINCIPLE IN MY MIND. |
| 4 | 10:52:40 | Q    OKAY. |
| 5 | 10:52:40 | A    OR IF IT BELONGED TO ANY OTHER TOY COMPANY. |
| 6 | 10:52:45 | Q    DID YOU CONSIDER THE POSSIBILITY THAT THESE |
| 7 | 10:52:51 | DRAWINGS DID BELONG TO MATTEL? |
| 8 | 10:52:53 | A    I -- I HAD MY PEOPLE CHECK, VERIFY WHAT HE |
| 9 | 10:52:57 | WAS -- THE STORY HE WAS TELLING WAS TRUE, AND THIS CAME |
| 10 | 10:53:02 | BACK AND VERIFIED IT WAS TRUE. |
| 11 | 10:53:03 | Q    AND WHAT WAS IT THAT HE TOLD YOU THAT YOU'RE |
| 12 | 10:53:08 | REFERRING TO IN THAT ANSWER YOU JUST GAVE? |
| 13 | 10:53:09 | A    HE SAID THAT HE DID THIS IN 1998, IN |
| 14 | 10:53:13 | MISSOURI, WHEN HE WAS UNEMPLOYED.  AND I INSTRUCTED |
| 15 | 10:53:17 | VICTORIA O'CONNER SPECIFICALLY TO VERIFY AND MAKE SURE |
| 16 | 10:53:20 | THAT'S THE CASE BEFORE WE DO ANYTHING.  AND SHE DID. |
| 17 | 10:53:24 | Q    OKAY.  AND HE SAID -- WHEN YOU SAY "HE SAID |
| 18 | 10:53:26 | HE DID THIS," DO YOU MEAN -- |
| 19 | 10:53:28 | A    THE DRAWING. |
| 20 | 10:53:28 | Q    -- HE DID THESE DRAWINGS? |
| 21 | 10:53:30 | A    RIGHT. |
| 22 | 10:53:30 | Q    SUPPOSE HE HAD SAID HE DID THESE DRAWINGS |
| 23 | 10:53:34 | WHILE HE WAS EMPLOYED BY MATTEL? |
| 24 | 10:53:36 | A    HE DIDN'T, SO HOW CAN I SUPPOSE SOMETHING |
| 25 | 10:53:39 | LIKE THAT? |

87

Exhibit 76
P. 65

| | | |
|---|---|---|
| 1 | 11:03:22 | MS. CENDALI:  THE QUESTION IS, SUPPOSE THERE |
| 2 | 11:03:25 | WERE COMMUNICATIONS WITH CARTER'S LAWYERS THAT WENT |
| 3 | 11:03:28 | THROUGH OTHER LAWYERS, THROUGH MGA'S LAWYERS. |
| 4 | 11:03:34 | MR. QUINN:  I DON'T KNOW.  A COMMUNICATION |
| 5 | 11:03:36 | THAT GOES -- THAT -- YOU KNOW, I TELL YOU TO TELL HIM |
| 6 | 11:03:39 | "X," THAT'S NOT A PRIVILEGED COMMUNICATION. |
| 7 | 11:03:42 | MS. CENDALI:  WELL -- |
| 8 | 11:03:42 | MR. QUINN:  I MEAN, IF I CONVEY IT TO YOU FOR |
| 9 | 11:03:44 | THE EXPRESS PURPOSE OF YOUR DISCLOSING IT TO SOMEONE -- |
| 10 | 11:03:49 | MS. CENDALI:  WELL, IT MAY NOT HAVE BEEN |
| 11 | 11:03:51 | CONVEYED FOR THE EXPRESS PURPOSE. |
| 12 | 11:03:53 | BY MR. QUINN: |
| 13 | 11:03:53 | Q    CAN YOU JUST DESCRIBE -- YOU KNOW, THE |
| 14 | 11:03:54 | DOCUMENT, WHO IT'S FROM, WHAT YOU'RE REFERRING TO? |
| 15 | 11:03:57 | JUST DESCRIBE IT TO ME.  DON'T GET INTO THE SUBSTANCE |
| 16 | 11:04:07 | BECAUSE I'M NOT EVEN SURE I'M INTERESTED IN THE |
| 17 | 11:04:07 | SUBSTANCE, BUT CAN YOU DESCRIBE THE -- WHAT IT IS YOU |
| 18 | 11:04:07 | SAW? |
| 19 | 11:04:07 | A    I HAVE SEEN AN E-MAIL THAT CAME BACK AND |
| 20 | 11:04:09 | SAID, "WE HAVE CONFIRMED WHAT HE'S SAYING IS BASICALLY |
| 21 | 11:04:13 | RIGHT, THAT HE DID THIS IN 1998, IN MISSOURI." |
| 22 | 11:04:16 | AND I SAW THAT RIGHT BEFORE -- I THINK THAT |
| 23 | 11:04:19 | E-MAIL, PARTICULAR E-MAIL IS DATED BEFORE WE SIGNED AN |
| 24 | 11:04:22 | AGREEMENT WITH HIM. |
| 25 | 11:04:22 | Q    AND WHO'S THE AUTHOR OF THIS E-MAIL THAT YOU |

91

Exhibit 76
P. 66

```
 1    11:11:11        A    I'M NOT SURE.

 2    11:11:12        Q    MIGHT HAVE BEEN LESS THAN FIVE?  MIGHT HAVE

 3    11:11:14   BEEN MORE THAN FIVE?  YOU'RE JUST NOT SURE?

 4    11:11:16             MR. WICKHAM:  OBJECTION.  COMPOUND.

 5    11:11:18             THE WITNESS:  THAT'S TRUE.

 6    11:11:19   BY MR. QUINN:

 7    11:11:19        Q    WHAT WAS YOUR REACTION TO THE DRAWINGS WHEN

 8    11:11:21   YOU SAW THEM?

 9    11:11:22        A    I THINK -- I DON'T REMEMBER EXACTLY MY

10    11:11:24   REACTION.  MY MIND WAS SOMEWHERE.

11    11:11:26        Q    YOUR MIND -- I'M SORRY?

12    11:11:28        A    MY MIND WAS SOMEWHERE ELSE AT THAT DAY.

13    11:11:31        Q    WELL, WAS THERE SOMETHING ELSE ON YOUR MIND

14    11:11:31   THAT YOU CAN RECALL?

15    11:11:36        A    YEAH.  I HAD JUST COME BACK FROM A TRIP AND

16    11:11:39   THERE WAS A LOT OF WORK TO DO.

17    11:11:40        Q    WHERE HAD YOU BEEN?

18    11:11:41        A    I THINK IT WAS IN HONG KONG AND JAPAN.

19    11:11:43        Q    BUT SO YOU DON'T RECALL WHETHER YOU HAD A

20    11:11:46   FAVORABLE OR UNFAVORABLE REACTION TO THE DRAWING; IS

21    11:11:49   THAT TRUE?

22    11:11:49        A    AT THAT MEETING, I DON'T.

23    11:11:52        Q    CAN YOU RECALL ANYTHING ELSE THAT

24    11:11:54   CARTER BRYANT SAID AT THIS MEETING?  I MEAN, YOU TOLD

25    11:11:58   ME THAT HE SAID, "I CREATED THESE DURING THIS PERIOD
```

99

Exhibit 76
P. 67

```
 1    11:12:01    WHEN I WASN'T WORKING FOR MATTEL"; RIGHT?

 2    11:12:03        A    YES.

 3    11:12:04        Q    OKAY.  DO YOU RECALL ANYTHING ELSE THAT HE

 4    11:12:05    SAID AT THAT THE MEETING?

 5    11:12:06        A    I DON'T.

 6    11:12:06        Q    DO YOU RECALL ANYTHING THAT VICTORIA O'CONNER

 7    11:12:09    SAID AT THE MEETING?

 8    11:12:10        A    I DON'T.  I THINK THEY WERE ALL ENTHUSIASTIC

 9    11:12:14    ABOUT IT.

10    11:12:15        Q    YOU DON'T RECALL ANYTHING, IN PARTICULAR,

11    11:12:18    THAT SHE SAID?

12    11:12:19        A    NO.

13    11:12:19        Q    IS THAT TRUE?

14    11:12:19        A    THAT'S TRUE.

15    11:12:20        Q    AND HOW ABOUT VERONICA MARLOW?  DO YOU RECALL

16    11:12:24    ANYTHING THAT SHE SAID?

17    11:12:26        A    THAT THEY WERE JUST ALL ENTHUSIASTIC ABOUT

18    11:12:29    IT.

19    11:12:29        Q    YOU DON'T RECALL ANYTHING SPECIFICALLY?

20    11:12:31        A    NO, I DON'T.

21    11:12:32        Q    DO YOU RECALL ANYTHING YOUR DAUGHTER SAID?

22    11:12:34        A    I THINK AFTER THE MEETING, I ASKED HER, "WHAT

23    11:12:37    DO YOU THINK ABOUT THAT" OR SHE VOLUNTEERED.

24    11:12:40             SHE SAID, "DAD, I THINK THEY WOULD BE CUTE."

25    11:12:44        Q    HOW ABOUT PAULA?  DO YOU RECALL ANYTHING THAT
```

100

Exhibit 76
P. 68

```
 1                DEPOSITION OFFICER'S CERTIFICATE
 2

     STATE OF CALIFORNIA  )
 3                        )  SS.
     COUNTY OF LOS ANGELES)
 4

 5          I, APRIL PRAXMARER, HEREBY CERTIFY:
 6     I AM A DULY QUALIFIED CERTIFIED SHORTHAND REPORTER IN
 7   THE STATE OF CALIFORNIA, HOLDER OF CERTIFICATE NUMBER
 8   CSR 12437 ISSUED BY THE COURT REPORTERS BOARD OF
 9   CALIFORNIA AND WHICH IS IN FULL FORCE AND EFFECT.  [FED.
10   R. DIV. P. 28(A)].
11          I AM AUTHORIZED TO ADMINISTER OATHS OR
12   AFFIRMATIONS PURSUANT TO CALIFORNIA CODE OF CIVIL
13   PROCEDURE, SECTION 2093(B) AND PRIOR TO BEING
14   EXAMINED, THE DEPONENT WAS FIRST DULY SWORN BY ME.
15   [FED. R. CIV. P. 28(A), 30(F)(1)].
16          I AM NOT A RELATIVE OR EMPLOYEE OR ATTORNEY
17   OR COUNSEL OF ANY OF THE PARTIES, NOR AM I A RELATIVE
18   OR EMPLOYEE OF SUCH ATTORNEY OR COUNSEL, NOR AM I
19   FINANCIALLY INTERESTED IN THIS ACTION.  [FED. R CIV. P.
20   28].
21          I AM THE DEPOSITION OFFICER THAT
22   STENOGRAPHICALLY RECORDED THE TESTIMONY IN THE
23   FOREGOING DEPOSITION AND THE FOREGOING TRANSCRIPT IS A
24   TRUE RECORD OF THE TESTIMONY GIVEN BY THE DEPONENT.
25   [FED. R. CIV. P. 30(F)(1)].
```

257

Exhibit 76,
P. 69

1            BEFORE COMPLETION OF THE DEPOSITION, REVIEW

2    OF THE TRANSCRIPT [X] WAS [ ] WAS NOT REQUESTED.  IF

3    REQUESTED, ANY CHANGES MADE BY THE DEPONENT (AND

4    PROVIDED TO THE REPORTER) DURING THE PERIOD ALLOWED ARE

5    APPENDED HERETO.  [FED. R. CIV. P. 30(E)].

6            DATED *AUGUST 9* _____, 2006

7

8            _____

9            APRIL PRAXMARER, CSR 12437

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

258

Exhibit 76
P. 70

Page 261

1                UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                   EASTERN DIVISION

4

5   CARTER BRYANT, AN              )
    INDIVIDUAL,                    )
6                                  )  CASE NO.
         PLAINTIFF,                )  CV 04-9049 SGL(RNBX)
7                                  )
     V.                            )  CONSOLIDATED WITH
8                                  )  CASE NO. 04-9059
    MATTEL, INC., A DELAWARE       )          AND
9   CORPORATION,                   )  CASE NO. 05-2727
                                   )
10       DEFENDANT.                )
    _____)
11                                 )
    AND CONSOLIDATED ACTION(S)     )
12   _____)

13

14          CONFIDENTIAL ATTORNEYS' EYES ONLY

15          VIDEOTAPED DEPOSITION OF ISAAC

16          LARIAN, VOLUME II, TAKEN ON BEHALF

17          OF MATTEL, INC., AT 10250

18          CONSTELLATION BOULEVARD, 19TH FLOOR,

19          LOS ANGELES, CALIFORNIA, COMMENCING

20          AT 9:34 A.M., WEDNESDAY, MARCH 26,

21          2008, BEFORE PAULA A. PYBURN, C.S.R.

22          7304, R.P.R., C.L.R.

23

24

25

Exhibit 76,
P. 71

Page 262

```
 1    APPEARANCES OF COUNSEL:
 2    FOR M.G.A. ENTERTAINMENT, INC.:
 3     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
       BY:  THOMAS J. NOLAN, ESQ.
 4     300 SOUTH GRAND AVENUE
       LOS ANGELES, CALIFORNIA 90071-3144
 5     (213) 687-5000
       TNOLAN@SKADDEN.COM
 6
 7    FOR DEFENDANT MATTEL, INC.:
 8     QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
       BY:  MICHAEL T. ZELLER, ESQ.
 9               AND
       BY:  JON COREY, ESQ.
10               AND
       BY:  BRIDGET A. HAULER, ESQ.
11     865 SOUTH FIGUEROA STREET
       10TH FLOOR
12     LOS ANGELES, CALIFORNIA 90024
       (213) 443-3000
13     MICHAELZELLER@QUINNEMMANUEL.COM
       JONCOREY@QUINNEMMANUEL.COM
14     BRIDGETHAULER@QUINNEMMANUEL.COM
15
      FOR CARTER BRYANT:
16
      KEKER & VAN NEST LLP
17     BY:  CHRISTA MARTINE ANDERSON, ESQ.
            (PAGES 276 - 517)
18     710 SANSOME STREET
       SAN FRANCISCO, CALIFORNIA 94111
19     (415) 391-5400
       CANDERSON@KVN.COM
20
21    ALSO PRESENT:
22     STEVEN TOGAMI,
            J.T.V. LITIGATIONS SERVICES, INC.
23     JEANINE PISONI,
            GENERAL COUNSEL, M.G.A. ENTERTAINMENT, INC.
24
25
```

Exhibit 76
P. 72

1    WERE ASKING HIM QUESTIONS ABOUT IT, IF YOU'VE MADE

2    CLAIMS TO INSURANCE COMPANIES AND THOSE KIND OF

3    THINGS.

4              MR. ZELLER:  WELL, I WAS --

5              MR. NOLAN:  WHAT TIME WERE YOU -- WERE YOU

6    TALKING ABOUT AFTER THE LAWSUIT WAS FILED?

7              MR. ZELLER:  I WAS TALKING ANY TIME THEN IN

8    TERMS OF SUBMITTING A CLAIM.

9              MR. NOLAN:  OKAY.  I THINK -- I THINK BASED

10   ON HIS LAST ANSWER IT'S -- IT'S BEEN CLARIFIED.

11   BY MR. ZELLER:

12       Q.   LET ME -- LET ME JUST MAKE SURE WE'RE ON

13   THE SAME PAGE.

14             MR. NOLAN:  YEAH.  DO YOU MIND JUST ASKING

15   THAT SPECIFIC QUESTION --

16             MR. ZELLER:  FINE.

17             MR. NOLAN:  -- SO IT'S CLEAN?  THANKS.

18   BY MR. ZELLER:

19       Q.   DO YOU KNOW WHEN M.G.A. FIRST SUBMITTED A

20   CLAIM TO ANY INSURANCE COMPANY IN CONNECTION WITH

21   MATTEL LAWSUIT OR POTENTIAL MATTEL LAWSUIT?

22       A.   I ASSUME AFTER THE LAWSUIT WAS FILED.

23       Q.   THAT'S YOUR BEST UNDERSTANDING?

24       A.   THAT'S MY BEST UNDERSTANDING.

25       Q.   WHEN M.G.A. ENTERED INTO ITS AGREEMENT WITH

Exhibit 76

P. 73

1   CARTER BRYANT RELATING TO BRATZ, DID YOU THINK IT

2   WAS POSSIBLE THAT MATTEL MIGHT HAVE RIGHTS TO ANY OF

3   CARTER BRYANT'S DRAWINGS OR IDEAS THAT HE WAS

4   CONVEYING TO YOU?

5       A.   THAT HE MIGHT -- THAT MATTEL MIGHT HAVE?

6   I -- I THINK WE DID; THAT'S WHY I ASKED OUR LAWYERS

7   AND VICTORIA O'CONNOR TO LOOK INTO IT, AND THEY DID

8   AND THEY GOT ASSURANCES THAT MATTEL HAS NO RIGHTS TO

9   IT.

10      Q.   AND THE ASSURANCES THAT YOU GOT BACK WERE

11  THE ONES THAT WE TALKED ABOUT THE LAST TIME AT

12  YOUR -- YOUR EARLIER DEPOSITION?

13      A.   I DON'T REMEMBER MY EARLIER DEPOSITION.

14      Q.   ALL RIGHT.

15      A.   IT WAS A YEAR AND A HALF AGO.

16      Q.   WELL --

17      A.   OR MAYBE TWO YEARS AGO, I DON'T KNOW WHEN

18  IT WAS.

19      Q.   WELL, IT SOUNDS LIKE STEPS THAT YOU TOOK,

20  THEN, AFTER THAT POTENTIAL OR THAT CONCERN OCCURRED

21  TO YOU AS A RESULT OF CARTER BRYANT COMING TO M.G.A.

22  WAS IS THAT YOU ASKED VICTORIA O'CONNOR TO -- TO DO

23  CERTAIN THINGS; IS THAT TRUE?

24          MR. NOLAN:  OBJECTION; MISSTATES HIS

25  EVIDENCE -- MISSTATES HIS TESTIMONY WITH RESPECT TO

Exhibit 76
P. 74

1            MR. NOLAN:   OBJECTION; MISSTATES HIS

2    TESTIMONY.

3            THE WITNESS:   NO.  I SAID I JUST WANT TO

4    MAKE SURE THAT WHETHER HE'S TELLING US TRUTH AND HE

5    ACTUALLY HAS THE RIGHTS TO THOSE DRAWINGS, AND I

6    INSTRUCTED VICTORIA O'CONNOR TO DEAL WITH OUR

7    LAWYERS AND MAKE SURE THAT WE HAVE CROSSED ALL THE

8    T'S.

9    BY MR. ZELLER:

10       Q.   WAS THERE SOME QUESTION IN YOUR MIND AS TO

11   WHETHER OR NOT CARTER BRYANT HAD THE RIGHTS?

12       A.   NO.  AS A PRUDENT BUSINESSMAN I JUST WANT

13   TO MAKE SURE.  I BELIEVED HIM.

14       Q.   AND WHAT IS IT THAT BEING A PRUDENT

15   BUSINESSMAN MEANT AS TO WHY YOU HAD VICTORIA

16   O'CONNOR LOOK INTO IT?

17       A.   SAY THAT AGAIN.

18       Q.   WELL, YOU SAID IT WAS BECAUSE YOU WERE A

19   PRUDENT BUSINESSMAN.

20       A.   YES.

21       Q.   WHAT IS IT ABOUT BEING A PRUDENT

22   BUSINESSMAN THAT MADE YOU HAVE VICTORIA O'CONNOR

23   LOOK INTO WHETHER OR NOT CARTER BRYANT HAD THE

24   RIGHTS TO CONVEY?

25       A.   JUST TO DOUBLE SURE AND MAKE SURE THAT WHAT

Exhibit 76,
P. 75

Page 459

1    OUR LAWYER, WHO WENT TO CARTER BRYANT'S LAWYER AND

2    GOT ASSURANCES.

3    BY MR. ZELLER:

4        Q.    ANYTHING ELSE?

5        A.    THAT'S ALL I RECALL.

6        Q.    DO YOU KNOW WHAT ASSURANCES CARTER BRYANT'S

7    LAWYER GAVE?

8        A.    IN GENERAL I REMEMBER THAT SAYING YES, THAT

9    HE DID THESE IN 1998 IN MISSOURI, WHEN HE WAS NOT

10   WORKING AT MATTEL, AND THAT HE INDEED HIMSELF DID

11   IT.

12       Q.    WAS THE FACT THAT CARTER BRYANT'S LAWYER

13   REPRESENTED TO M.G.A. THAT CARTER BRYANT HAD DONE

14   THE DRAWINGS IN 1998 IN MISSOURI WHEN HE WAS NOT A

15   MATTEL EMPLOYEE HAVE ANY SIGNIFICANCE TO YOU AT THAT

16   TIME?

17       A.    IT -- HE CONFIRMED WHAT CARTER BRYANT HAD

18   TOLD US.

19       Q.    AND DID YOU FIND SOME COMFORT IN THIS?

20       A.    OF COURSE.

21       Q.    AND WHY WAS THAT?

22       A.    BECAUSE, YOU KNOW, I HOPED THE LAWYERS IN

23   COURT -- YOUR PROFESSION TELL THE TRUTH.

24       Q.    WELL, YOU THOUGHT THAT IT WOULD HAVE SOME

25   SIGNIFICANCE TO WHETHER OR NOT MATTEL MIGHT HAVE

A&E COURT REPORTERS (213) 955-0070 FAX: (213) 955-0077

Exhibit 76
P. 76

Page 517

```
 1    STATE OF CALIFORNIA )

 2    COUNTY OF RIVERSIDE )  SS.

 3

 4         I, PAULA A. PYBURN, CSR NO. 7304, R.P.R.,

 5    C.L.R., IN AND FOR THE STATE OF CALIFORNIA, DO

 6    HEREBY CERTIFY:

 7         I AM THE DEPOSITION OFFICER THAT

 8    STENOGRAPHICALLY RECORDED THE TESTIMONY IN THE

 9    FOREGOING DEPOSITION;

10         PRIOR TO BEING EXAMINED THE DEPONENT WAS FIRST

11    DULY SWORN BY ME;

12         THE FOREGOING TRANSCRIPT IS A TRUE RECORD OF

13    THE TESTIMONY GIVEN.

14         BEFORE COMPLETION OF THE DEPOSITION, REVIEW OF

15    THE TRANSCRIPT [X] WAS [ ] WAS NOT REQUESTED.  IF

16    REQUESTED, ANY CHANGES MADE BY THE DEPONENT (AND

17    PROVIDED TO THE REPORTER) DURING THE PERIOD ALLOWED

18    ARE APPENDED HERETO.

19

20    DATED _____

21

22

23                   _____

                      PAULA A. PYBURN

24                    C.S.R. NO. 7304, R.P.R.

                      CERTIFIED LIVENOTE REPORTER

25
```

Exhibit 76,
P. 77

# Exhibit 77

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC., A DELAWARE )
CORPORATION, )
 )
PLAINTIFF, )
 )
V. )   NO.  CV 04-9059 DDP (AJWX)
 )
CARTER BRYANT, AN )
INDIVIDUAL, AND DOES 1 )
THROUGH 10, INCLUSIVE, )
 )
DEFENDANTS. )
 )

**C O N F I D E N T I A L**

**ATTORNEYS' EYES ONLY**

**(PAGES 84 – 124, 160 – 165, 169 – 172, 181 – 202, & 217 – 252)**

**DEPOSITION OF VICTORIA O'CONNOR**

**DECEMBER 6, 2004**



REPORTED BY
PAULA A. PYBURN
CSR. NO.  7304
JOB NO. 04AE373-PP

888 W. Sixth Street
9th Floor
Los Angeles, california 90017
Office: (213) 955-0070
Fax: (213) 955-0077

Exhibit 77 ,
P. 78

```
 1    APPEARANCES OF COUNSEL:

 2


 3    FOR THE PLAINTIFF AND CROSS-DEFENDANT:

 4         QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
           BY:  JOHN B. QUINN, ESQ.
 5                    AND
                MICHAEL T. ZELLER, ESQ.
 6                    AND
                TANIA KREBS, ESQ.
 7         865 SOUTH FIGUEROA STREET, 10TH FLOOR
           LOS ANGELES, CALIFORNIA 90017-2543
 8         (213) 443-3000

 9


10    FOR THE DEFENDANTS AND CROSS-COMPLAINANT:

11         LITTLER MENDELSON
           BY:  KEITH A. JACOBY, ESQ.
12         2049 CENTURY PARK EAST, 5TH FLOOR
           LOS ANGELES, CALIFORNIA 90067-3107
13         (310) 553-0308

14


15    FOR DEFENDANT IN INTERVENTION, MGA ENTERTAINMENT:

16         O'MELVENY & MEYERS LLP
           BY:  DIANA M. TORRES, ESQ.
17         400 SOUTH HOPE STREET
           LOS ANGELES, CALIFORNIA 90071-2899
18         (213) 430-6000

19


20    ALSO PRESENT:

21         RICHARD DANIELS, MGA SENIOR COUNSEL
           SHERRI MULFORD, VIDEOGRAPHER
22

23

24

25

                                                   86
```

Exhibit 77
P. 79

1       UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA

3

4

5   MATTEL, INC., A DELAWARE     )
    CORPORATION,                 )
6                                )
          PLAINTIFF,             )
7                                )
      VS.                        )   NO. CV 04-9059 DDP
8                                )       (AJWX)
    CARTER BRYANT, AN            )
9   INDIVIDUAL, AND DOES 1       )
    THROUGH 10, INCLUSIVE,       )
10                               )
          DEFENDANTS.            )
11  _____ )
                                 )
12  AND RELATED                  )
    CROSS-ACTION.                )
13  _____ )

14          C O N F I D E N T I A L

15    (PURSUANT TO STIPULATED PROTECTIVE ORDER,
         THIS TRANSCRIPT HAS BEEN DESIGNATED
16       CONFIDENTIAL, ATTORNEY'S EYES ONLY)

17  (PAGES 84-124, PAGES 160-165, PAGES 169-172, PAGES
            181-202 AND PAGES 217-252)

18

19  DEPOSITION OF VICTORIA O'CONNOR, TAKEN ON BEHALF OF

20  THE PLAINTIFF AND CROSS-DEFENDANT AT 865 SOUTH

21  FIGUEROA STREET, 10TH FLOOR, LOS ANGELES,

22  CALIFORNIA, COMMENCING AT 9:46 A.M., MONDAY,

23  DECEMBER 6, 2004, BEFORE PAULA A. PYBURN, CSR 7304,

24  RPR.

25

                                                    85

Exhibit 77 ,
P. 80

DEPOSITION OF VICTORIA O'CONNOR

1    BY MR. JACOBY:

2        Q.   SO IT WAS MGA'S INTENT TO GET A

3    REPRESENTATION AND WARRANTY FROM MR. BRYANT THAT HE

4    OWNED THE DRAWINGS THAT HE WAS LICENSING TO MGA?

5             MR. QUINN:  VAGUE AND AMBIGUOUS, LACKS          03:43PM

6    FOUNDATION.

7             THE WITNESS:  WHAT -- WHAT DO YOU MEAN BY

8    "REPRESENTATION AND WARRANTY"?

9    BY MR. JACOBY:

10       Q.   THAT HE WAS GOING TO MAKE AN AFFIRMATIVE        03:43PM

11   STATEMENT, WHICH IS ACTUALLY REFLECTED IN THE

12   CONTRACT, THAT HE WAS THE OWNER OF THE DRAWINGS THAT

13   HE WAS LICENSING TO MGA?

14            MR. QUINN:  SAME OBJECTION.  COMPOUND.

15            THE WITNESS:  YES.                              03:43PM

16   BY MR. JACOBY:

17       Q.   OKAY, IF YOU LOOK AT PARAGRAPH 5(C) OF THE

18   AGREEMENT, "WARRANTIES AND INDEMNITY," IT'S ON PAGE

19   3.  I'LL READ SECTION C INTO THE RECORD.  ACTUALLY

20   BEGINS ON THE TOP, QUOTE (READING):                     03:43PM

21            "BRYANT REPRESENTS, WARRANTS AND

22            AGREES THAT:

23            "SUBSECTION C, THE BRYANT WORK

24            PRODUCT SHALL BE FREE OF ALL LIENS

25            AND ENCUMBRANCES AND THERE WILL BE             03:43PM

                                                   219

Exhibit 77 ,
P. 81

DEPOSITION OF VICTORIA O'CONNOR

```
 1              (INCLUDING REASONABLE COUNSEL FEES)

 2              ARISING FROM ANY BREACH BY HIM OF

 3              ANY OF THE WARRANTIES,

 4              REPRESENTATIONS AND AGREEMENTS MADE

 5              BY HIM HEREUNDER."                         03:47PM

 6              DO YOU HAVE ANY RECOLLECTION OF READING

 7     THAT DURING THE COURSE OF THIS NEGOTIATION?

 8          A.   NO.

 9          Q.   OKAY.  DO YOU KNOW WHAT IT MEANS AS YOU SIT

10     HERE TODAY?                                         03:47PM

11          A.   YES.

12          Q.   WHAT DOES IT MEAN?

13          A.   THAT IF THERE'S A LAWSUIT, THAT CARTER IS

14     RESPONSIBLE.

15          Q.   OKAY.  AND THAT'S A TERM AND CONDITION THAT  03:47PM

16     MGA SOUGHT TO GET FROM MR. BRYANT; CORRECT?

17          A.   YES.

18          Q.   OKAY.  AND YOUR UNDERSTANDING WAS THAT WHEN

19     MR. BRYANT SIGNED THIS, HE -- HE SATISFIED THAT

20     CONDITION?                                          03:48PM

21              MR. QUINN:  OBJECTION.  VAGUE AND

22     AMBIGUOUS.

23     BY MR. JACOBY:

24          Q.   DID YOU UNDERSTAND BY THE SIGNING OF THIS

25     AGREEMENT THAT MR. BRYANT WAS MAKING THE REP AND    03:48PM

                                                      224
```

Exhibit 77 ,
P. 82

DEPOSITION OF VICTORIA O'CONNOR

1   WARRANTY THAT HE WAS THE SOLE OWNER OF THE DRAWINGS

2   HE WAS LICENSING TO MGA?

3            MR. QUINN:  VAGUE AND AMBIGUOUS, DOCUMENT

4   SPEAKS FOR ITSELF.

5            THE WITNESS:  YES.                                03:48PM

6   BY MR. JACOBY:

7        Q.   OKAY, AND HE WAS MAKING THE AGREEMENT TO

8   INDEMNIFY MGA IF ANY LAWSUIT AROSE REGARDING THE

9   OWNERSHIP OF THAT PROPERTY?

10           MR. QUINN:  SAME OBJECTION.                        03:48PM

11           THE WITNESS:  YES.

12  BY MR. JACOBY:

13       Q.   OKAY.  IF YOU LOOK AT THE LAST PAGE OF THE

14  DOCUMENT, PAGE 6, YOU LOOK AT THE FAX LINE,

15  OCTOBER 4, '00, 4:38 P.M., DOES THAT REFRESH YOUR        03:48PM

16  RECOLLECTION IN ANY WAY ABOUT WHEN MR. BRYANT

17  ACTUALLY SIGNED THIS AGREEMENT?

18       A.   NO.

19       Q.   OKAY.  SO YOU CAN'T SAY ONE WAY OR THE

20  OTHER IF THE AGREEMENT WAS SIGNED ON OCTOBER 4TH,        03:49PM

21  2000?

22       A.   CORRECT.

23       Q.   OKAY.  WHO SIGNED THIS IT BEHALF OF MGA,

24  CAN YOU TELL WHOSE SIGNATURE THAT IS?

25       A.   YES.                                            03:49PM

                                                             225

A & E COURT REPORTERS  (213)955-0070  FAX: (213)955-0077

Exhibit 77 ,
P. 83

1    STATE OF CALIFORNIA      )

2    COUNTY OF LOS ANGELES  )  SS.

3

4         I, PAULA A. PYBURN, CSR NO. 7304, RPR, IN AND

5    FOR THE STATE OF CALIFORNIA, DO HEREBY CERTIFY:

6         I AM THE DEPOSITION OFFICER THAT

7    STENOGRAPHICALLY RECORDED THE TESTIMONY IN THE

8    FOREGOING DEPOSITION;

9         PRIOR TO BEING EXAMINED THE DEPONENT WAS FIRST

10   DULY SWORN BY ME;

11        THE FOREGOING TRANSCRIPT IS A TRUE RECORD OF THE

12   TESTIMONY GIVEN.

13        BEFORE COMPLETION OF THE DEPOSITION, REVIEW OF

14   THE TRANSCRIPT [X] WAS [ ] WAS NOT REQUESTED.  IF

15   REQUESTED, ANY CHANGES MADE BY THE DEPONENT (AND

16   PROVIDED TO THE REPORTER) DURING THE PERIOD ALLOWED

17   ARE APPENDED HERETO.

18

19

20        DATED  *December 21, 2004*.

21

22

23        *Paula A. Pyburn*

24

25

                                                    252

Exhibit 77
P. 84