# Exhibit 83

David Rosenbaum

| | |
|---|---|
| From: | Victoria O'Connor [VOConnor@mgae.com] |
| Sent: | Monday, September 25, 2000 12:16 PM |
| To: | Dennis Medici |
| Cc: | David Rosenbaum |
| Subject: | RE: Consulting Agreement |

## REDACTED

David, I spoke with Carter this morning who is meeting with counsel on Wednesday. He hopes to execute the agreement by Friday.

——Original Message——
From: Dennis Medici
Sent: Monday, September 25, 2000 12:10 PM
To: Victoria O'Connor
Cc: David Rosenbaum
Subject: RE: Consulting Agreement

We must have all third party work have a purchase order obtained with an approved not to exceed budget.

## REDACTED

——Original Message——
From: Victoria O'Connor
Sent: Monday, September 25, 2000 10:05 AM
To: Dennis Medici
Subject: FW: Consulting Agreement

FYI

——Original Message——
From: David Rosenbaum [mailto:drosenbaum@fpllaw.com]
Sent: Tuesday, September 19, 2000 12:23 AM
To: 'Carter Bryant'
Cc: Victoria O'Connor (E-mail); Isaac Larian (E-mail)
Subject: Consulting Agreement

Dear Mr. Bryant:

As you know, we represent MGA Entertainment. Attached for your review is a draft of the above referened agreement. Please review the draft and have your attorney call me to discuss,

Please note that inasmuch as our client has not had an opportunity to review this correspondence and/or attachment(s) hereto, I must reserve their right to comment.

Regards,
David S. Rosenbaum
Fischbach, Perlstein & Lieberman, LLP
1875 Century Park East, Suite 850
Los Angeles, California 90067

1

CONFIDENTIAL - ATTORNEYS' EYES ONLY

DR 00013



Exhibit 83
P. 138

Tel:310-556-1956
Fax:310-556-4617
e-mail: drosenbaum@fpllaw.com

This message is intended for the use of the individual or entity to which it
is addressed and may contain information that is privileged, confidential
and exempt from disclosure under applicable law. If the reader of this
message is not the intended recipient, or the employee or agent responsible
for delivering the message to the intended recipient, you are hereby
notified that any dissemination, distribution or copying of this
communication is strictly prohibited. If you have received this
communication in error, please notify us immediately and return the original
message to us at the above address. Thank you.

2

CONFIDENTIAL - ATTORNEYS' EYES ONLY

DR 00014

Exhibit 83
P. 139

# Exhibit 84

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  John B. Quinn (Bar No. 090378)
  (johnquinn@quinnemanuel.com)
  Michael T. Zeller (Bar No. 196417)
  (michaelzeller@quinnemanuel.com)
  Jon D. Corey (Bar No. 185066)
  (joncorey@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Plaintiff Mattel, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>              Plaintiff,<br><br>         vs.<br><br>MATTEL, INC., a Delaware corporation,<br><br>              Defendant.<br><br>AND CONSOLIDATED ACTIONS | CASE NO. CV 04-9049 SGL (RNBx)<br>Consolidated with<br>Case Nos. CV 04-09059 & CV 05-2727<br><br>**DISCOVERY MATTER**<br><br>**[To Be Heard By Discovery Master Hon. Edward Infante (Ret.)]**<br><br>MATTEL, INC.'S NOTICE OF WITHDRAWAL WITHOUT PREJUDICE OF MOTION FOR ORDER FINDING WAIVER AND TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED<br><br>**Phase 1**<br>Discovery Cut-Off:   January 14, 2008<br>Pre-Trial Conference: April 7, 2008<br>Trial Date:            April 29, 2008 |

07209/2378281.2

MATTEL'S NOTICE OF WITHDRAWAL

Exhibit 84
P. 140

1   TO THE DISCOVERY MASTER, THE COURT, ALL PARTIES AND THEIR

2   ATTORNEYS OF RECORD:

3          PLEASE TAKE NOTICE that Mattel, Inc. ("Mattel") hereby withdraws,

4   without prejudice, its Notice of Motion and Motion for Order Finding Waiver and to

5   Compel Production of Documents Withheld as Privileged (the "Motion").

6          Since Mattel filed its Motion, Judge Larson compelled, and Mattel

7   obtained, the depositions of the attorneys who were involved in MGA's contracting

8   with Bryant, namely, MGA's attorney, David Rosenbaum, and Carter Bryant's

9   attorney, Anne Wang.  Their testimony made clear that MGA performed no, or

10  virtually no, due diligence in assessing (i) Bryant's claimed rights to Bratz, or (ii)

11  MGA's and Bryant's obligations to Mattel.[1]  Because the evidence thus establishes

12  there is no support for MGA's purported good faith defenses, Mattel has now

13  concluded that its motion seeking waiver of the privilege as to information relating to

14  these defenses is unnecessary at this time and the requested information is (as matters

15  currently stand with this additional discovery) not "vital" to Mattel's rebuttal to such

16  defenses.  However, Mattel reserves all rights to bring a motion for an Order finding

17  waiver of the privilege at any subsequent time, in the event circumstances change.

18  DATED:  February 5, 2008          QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
19

20                                     By _Dylan Proctor /BKS_____

21                                        B. Dylan Proctor
                                          Attorneys for Mattel, Inc.
22

23  [1]  See, e.g., Deposition Transcript of David Rosenbaum, dated January 25, 2008,
     attached as Exhibit G to the Declaration of Timothy A. Miller in Support of MGA
24   Entertainment, Inc.'s Opposition to Motion of Plaintiff Mattel, Inc. for Order Finding
     Waiver and to Compel Production of Documents Withheld as Privileged, dated
25   January 31, 2008 ("Miller Dec."); Deposition Transcript of Anne Wang, dated
     January 28, 2008, Miller Dec., Exh. H.
26

27

28

07209/2378281.2

-1-

MATTEL'S NOTICE OF WITHDRAWAL

Exhibit 84
P. 141

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action.  My business address is Apex Attorney Services, 1055 West Seventh Street, Suite 250, Los Angeles, CA 90017.

On February 5, 2008, I served true copies of the following document(s) described as **NOTICE OF WITHDRAWAL WITHOUT PREJUDICE OF MOTION FOR ORDER FINDING WAIVER AND TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED** on the parties in this action as follows:

| | |
|---|---|
| Thomas J. Nolan, Esq. | Mark E. Overland, Esq. |
| Skadden, Arps, Slate, Meagher & Flom LLP | David C. Scheper, Esq. |
| 300 So. Grand Ave. | Alexander H. Cote, Esq. |
| Suite 3400 | Overland, Borenstein, Scheper & & Kim, LLP |
| Los Angeles CA  90071 | 300 S. Grand Avenue, Suite 2750 |
| | Los Angeles, CA  90071 |

**BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 5, 2008, at Los Angeles, California.

Sherron Hood

PROOF OF SERVICE

Exhibit 84 ,
P. 142

## PROOF OF SERVICE

1

2     I am a contractor for Apex Attorney Services, 1055 West Seventh Street, Suite 250, Los Angeles, CA 90017. I am over the age of eighteen years and not a

3 party to the within action.

4

5     On February 5, 2008, I served true copies of the following document(s) described as **NOTICE OF WITHDRAWAL WITHOUT PREJUDICE OF**

6 **MOTION FOR ORDER FINDING WAIVER AND TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED** on the

7 parties in this action as follows:

8 John W. Keker, Esq.

9 Michael H. Page, Esq.
Christa M. Anderson, Esq.

10 Keker & Van Nest, LLP

11 710 Sansome Street
San Francisco, CA 94111

12

13

14 **BY PERSONAL SERVICE:** I delivered such envelope(s) by hand to the office of the person(s) being served.

15     I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

16

17     Executed on February 5, 2008, at San Francisco, California.

18

19

20     Toshinori Kawase

21

22

23

24

25

26

27

28

07209/2190147.1

-2-

Exhibit 84
P. 143

# Exhibit 85

1 THOMAS J. NOLAN (Bar No. 66992)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2 300 South Grand Avenue
Los Angeles, California 90071-3144
3 Telephone:  (213) 687-5000
Facsimile:  (213) 687-5600
4 E-mail:      tnolan@skadden.com

5 RAOUL D. KENNEDY (Bar No. 40892)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6 Four Embarcadero Center, 38th Floor
San Francisco, California 94111-5974
7 Telephone:  (415) 984-6400
Facsimile:  (415) 984-2698
8 E-mail:      rkennedy@skadden.com

9 Attorneys for Cross-Defendants
MGA Entertainment, Inc., MGA
10 Entertainment (HK) Limited,
MGAE De Mexico, S.R.L. De C.V.,
11 and ISAAC LARIAN

12                    **UNITED STATES DISTRICT COURT**

13                    **CENTRAL DISTRICT OF CALIFORNIA**

14                          **EASTERN DIVISION**

| | |
|---|---|
| 15  CARTER BRYANT, an individual | ) CASE NO. CV 04-9049 SGL (RNBx) |
| 16                Plaintiff, | ) Consolidated with Case No. 04-9059 |
| 17        v. | ) and Case No. 05-2727 |
| 18  MATTEL, INC., a Delaware corporation | ) **DISCOVERY MATTER** |
| 19                Defendant. | ) **[To be heard by Discovery Master Hon. Edward A. Infante (Ret.)]** |
| 20 | ) **MGA ENTERTAINMENT, INC.'S OPPOSITION TO MOTION OF** |
| 21  Consolidated with MATTEL, INC. v. BRYANT and MGA | ) **PLAINTIFF MATTEL, INC. FOR ORDER FINDING WAIVER AND** |
| 22  ENTERTAINMENT, INC. v. MATTEL, INC. | ) **TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS** |
| 23 | ) **PRIVILEGED** |
| 24  **CONFIDENTIAL – ATTORNEYS' EYES ONLY** | ) Hearing Date:  February 11, 2008 |
| 25 | ) Time:            8:30 a.m. |
| 26  **FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** | ) Place:           Telephonic |
| 27 | ) **Phase 1:** Discovery Cut-Off:    January 28, 2008 |
|  |  Pre-Trial Conference: May 5, 2008 |
| 28 |  Trial Date:        May 27, 2008 |

MGA'S OPP. TO MATTEL'S MOTION FOR ORDER FINDING WAIVER          Case No. CV 04-9049 SGL

Exhibit  85 ,
P.  144

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

I.      INTRODUCTION ............................................................ 1

II.     PERTINENT FACTUAL AND PROCEDURAL BACKGROUND ............ 1

        A.      MGA's "Good Faith" Affirmative Defenses ........................................ 1

        B.      MGA's Partial Waiver Offers ......................................... 2

        C.      MGA's Original Implied Waiver Motion ................................ 5

        D.      MGA's Renewed Waiver Motion ...................................... 6

        E.      The Present Motion ................................................. 6

        F.      Mattel's Lame Attempts To Distinguish MGA's Renewed Motion ..... 8

III.    ARGUMENT ................................................................ 9

        A.      Fairness Concerns Apply With Equal Force To Mattel's And MGA's Claims Of Privilege.............................................. 9

        B.      Production Should Be Limited To The Documents Specified In The Motion That Relate To MGA's Acquisition Of Bratz................ 11

IV.     CONCLUSION.............................................................. 13

-i-

MGA'S OPP. TO MATTEL'S MOTION FOR ORDER FINDING WAIVER          Case No. CV 04-9049 SGL

Exhibit 85 ,
P. 145

## TABLE OF AUTHORITIES

**PAGE(S)**

### CASES

*Aloe Vera of America, Inc. v. United States,*
No. CV 99-1794-PHX-JAT, 2003 WL 22429082 (D. Ariz. Sept. 23, 2003),
*aff'd* 376 F.3d 960 (9th Cir. 2004) ................................................................. 12

*Bittaker v. Woodford,*
331 F.3d 715 (9th Cir. 2003) ........................................................ 10, 11, 13

*Cox v. Administrator United States Steel & Carnegie,*
17 F.3d 1386 (11th Cir. 1994),
*cert. denied,* 513 U.S. 1110 (1995) ...................................................... 9

*Rambus Inc. v. Samsung Electronics Co.,*
Nos. C-05-02298, C-05-00334,
2007 WL 3444376 (N.D. Cal. Nov. 13, 2007) ........................ 10, 11, 12, 13

*Titan Corp. v. M/A-Com, Inc.,*
No. 93-CV-335, 1994 WL 16001739 (S.D. Cal. June 22, 1994) .......................... 13

### RULES

Local Rule 37-2.1 ..................................................................... 7, 11

MGA'S OPP. TO MATTEL'S MOTION FOR ORDER FINDING WAIVER          Case No. CV 04-9049 SGL

Exhibit 85
P. 146

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In mirror image motions, Mattel, Inc. ("Mattel") and MGA Entertainment, Inc. ("MGA"), each claim that fairness dictates that the Court should find a partial waiver of the attorney-client and work product privileges.  Otherwise, Mattel and MGA will not be able to fully contest issues that the other has asserted i.e., Mattel's claim that the statute of limitations and laches should be tolled and MGA's claim that it had a "good faith" believe that Carter Bryant owned the original Bratz drawings in 2000 when MGA obtained an assignment of his rights in those drawings.

Mattel cannot, however, resist attempting to "have its cake and eat it too" and advances a totally incongruous argument that MGA should be found to have impliedly waived the privileges but that Mattel has not.  There is no principled basis for distinguishing the two motions.

### II.   PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

#### A.    MGA's "Good Faith" Affirmative Defenses

In the Amended Answer and Affirmative Defenses of MGA Entertainment Inc., MGA Entertainment (HK) Limited, and MGAE De Mexico S.R.L. De C.V. to Mattel, Inc.'s Second Amended Answer and Counterclaims, dated September 19, 2007,[1] MGA[2] raised three affirmative defenses in which it asserted that, when MGA acquired Bryant's "original Bratz drawings" in 2000, MGA had a "good faith belief that Bryant owned the rights" to those drawings:

### FIFTH AFFIRMATIVE DEFENSE

### (Bona Fide Purchaser for Value)

Mattel cannot maintain its counterclaims against MGA Defendants because MGA Defendants paid valuable

---

[1] A copy of which is Exhibit 4 to the Declaration of Bernard B. Smyth in Support of Motion of Plaintiff Mattel, Inc. for Order Finding Waiver and to Compel Production of Documents Withheld as Privileged ("Smyth Decl.").

[2] For ease of reference, these entities will sometimes be referred to herein collectively as "MGA."

-1-

consideration for Bryant's assignment of his rights in the original Bratz drawings to MGA Defendants, and MGA Defendants acted with a good faith belief that Bryant owned the rights to his original Bratz drawings and that his assignment of such rights to MGA Defendants was valid and permissible.

## SIXTH AFFIRMATIVE DEFENSE

## (17 U.S.C. § 205(d))

Mattel cannot maintain its counterclaims against MGA Defendants because, among other things, MGA Defendants acted with a good faith belief that Bryant owned the rights to his original Bratz drawings and that his assignment of such rights to MGA Defendants was valid and permissible.

\*     \*     \*     \*

## EIGHTEENTH AFFIRMATIVE DEFENSE

## (Good Faith)

Mattel's counterclaims are barred in whole or in part because the MGA Defendants acted in good faith.

[Smyth Decl., Ex. 4, 22:8-21; 25:12-15.] MGA confirmed that belief in response to those discovery requests but objected to those requests insofar as they sought attorney-client or work product privileged materials.  Motion of Plaintiff Mattel, Inc. For Order Finding Waiver And To Compel Production Of Documents Withheld As Privileged ("Motion" or "Present Motion").  Mot. at 3:14-4:15.

**B.    MGA's Partial Waiver Offers**

The Present Motion could have been obviated had Mattel accepted MGA's prior, limited waiver offers. Back on November 29, 2004, when Mattel had noticed the deposition of Victoria O'Connor, a former MGA employee, MGA's counsel wrote to Mattel's lawyers offering:

> To facilitate the deposition [of Ms. O'Connor], however, MGA would be willing to agree to a limited waiver of the attorney client privilege, in which MGA would waive the attorney client privilege solely with respect to communications that occurred between MGA and its counsel in and before October 2000 regarding the MGA/Bryant negotiations under certain conditions.  First, both Mattel and Bryant must agree that MGA's disclosure

-2-

would not waive any other privileges with respect to any communications at any other time between MGA and its counsel concerning the MGA-Bryant negotiations or agreement. Second, both Mattel and Bryant must agree that MGA's disclosure would not waive the attorney client privilege or work product protections with respect to any other subject made at any time, whether or not such matters involved the same counsel that represented MGA in connection with the Bryant negotiations. Finally, MGA would insist that Mattel and Bryant agree that any information disclosed pursuant to such waiver be designated "Attorney's Eyes Only," which designation could not be challenged by the parties. If this is acceptable to Mattel, please let me know and we will draft the appropriate documentation. If not, please be advised that MGA will not waive either the attorney client privilege or the protection of the work product doctrine with respect to any issue [Miller Decl., Ex. E].

Mattel did not accept that offer. Similarly, during the O'Connor deposition on December 6, 2004, MGA offered, and Mattel rejected, a limited waiver:

> Q.    Ms. O'Connor, did you deal with David Rosenbaum [an outside lawyer for MGA] in connection with the Carter Bryant negotiations?
>
> A.    Yes.
>
> Q.    And when I -- let me ask you more specifically. Did you have conversations with him about those negotiations?
>
> A.    Yes.
>
> Ms. Torres:  We have offered you guys a transactional waiver; you have -- I think you declined earlier and haven't gotten back to me on our most recent offer.
>
> I have no further questions at this time, but we may raise the issue with the Court, and therefore I'm going to leave the deposition open.
>
> Mr. Quinn:  Well, I don't know what that means about "transactional waiver," but I mean – if you're saying you might want to bring Ms. O'Connor back, we oppose that. I mean, today's the day for her deposition, and we see no basis for continuing it at some future date.

-3-

MGA'S OPP. TO MATTEL'S MOTION FOR ORDER FINDING WAIVER          Case No. CV 04-9049 SGL

Exhibit  85  ,
P. 149

1   Ms. Torres:  Well, we -- we put our position in the letter, we can agree to disagree.

2

3   Mr. Quinn:  Your position about whether her deposition will be done today?

4

5   Ms. Torres:  No, our position about whether or not we could question her about communications with MGA's counsel without waiving the privilege beyond the scope of the subject of those discussions.  And until -- unless and until the court rules on that, if -- we're not in agreement then, and we're --

6

7

8

9   Mr. Quinn:  You're free to ask her about those, but it does constitute a waiver of the privilege, so that's your choice.

10

11   Ms. Torres:  I understand, but there's a -- a -- we obviously have a difference of opinion as to the breadth of that waiver.

12

13   Mr. Quinn:  Well, I don't know, until I hear your questions I guess I wouldn't know, but I think that the deposition is going to conclude today, I only have a few more things.

14

15   Ms. Torres:  We're --

16

17   Mr. Jacoby:  Just so our position is clear, with respect to Carter Bryant and Ann Wang and with respect to MGA and David Rosenbaum, my understanding is that both Carter Bryant and MGA have offered Mattel a transactional waiver of the privilege whereby we are -- Carter Bryant is willing to waive the privilege with regard Ann Wang with respect to the subject of the negotiation of the contract that's in Exhibit 15.

18

19

20

21

22   My understanding is that MGA has made a settlement offer with respect to David Rosenbaum, but my understanding of Mattel's position is that if we -- if Ms. Torres was to begin to embark on questions that were privileged, that Mattel would take the position that all conversations between MGA and Mr. Rosenbaum would be subject to disclosure beyond the subject of the Bryant negotiation.

23

24

25

26   My understanding is Mattel's taking the exact same position with respect to Mr. Bryant and Ann Wang, and given that that's true, we can't question her about those because then that would open up questions that you would have about subjects beyond the negotiation.  As you made

27

28

-4-

1  clear in this deposition, we can't instruct her not to answer,
2  or at least we can't enforce it, so I don't think that counsel
   for Mr. Bryant or counsel for MGA has any choice but to
3  not ask those questions but seek relief from the court that
   this transactional waiver is the correct statement of the law,
4  which I believe it is.

5  Mr. Quinn:  I have never heard of a "transactional waiver,"
   and I -- I don't think you can selectively waive the privilege.
6  So I guess to that extent we do have a disagreement on that.
   I mean, you could have sought a ruling before.  In our view,
7  the deposition is concluded today.

8  Miller Decl., Ex. F at 167:10-170:13.

9  **C.   MGA's Original Implied Waiver Motion**

10       The subject of implied waiver arose again in December of 2007 when the

11 parties met and conferred regarding the implied waiver implications of Mattel's claim.

12 MGA's contention that Mattel's claim that the statute of limitations for its claims

13 against MGA and Carter Bryant was tolled because it was not until November of

14 2003 that Mattel first knew or suspected the alleged misconduct now in issue.

15       More specifically, in paragraphs 35 and 36 of the counterclaims that Mattel

16 filed together with its Second Amended Answer on July 12, 2007, Mattel alleged:

17       Bryant and MGA deliberately and intentionally concealed
         facts sufficient for Mattel to suspect or to know that it was
18       the true owner of Bratz.  Their acts of concealment include,
         but are not limited to, concealing the fact that Bryant
19       conceived, created, designed and developed Bratz while
         employed by Mattel . . . .
20
         Because of Bryant's and MGA's acts of concealment and
21       Bryant's misrepresentations to Mattel, Mattel had no reason
         to suspect that Bryant had worked with MGA, or assisted
22       MGA, while he still employed by Mattel until
         approximately November 24, 2003, when Mattel received,
23       through an unrelated legal action, a copy of Bryant's
         agreement with MGA which showed that the date of
24       Bryant's agreement with MGA predated Bryant's departure
         from Mattel.  It was then, as a result, that Mattel learned for
25       the first time that Bryant had secretly aided, assisted and
         worked for and with MGA while employed at Mattel and
26       in violation of his Mattel Employment Agreement.[3]
27
28 [3]    See Declaration of Marcus R. Mumford in Support of MGA's Motion to
         Compel Discovery As To Issues As To Which Mattel Has Waived The

*(cont'd)*

-5-

MGA'S OPP. TO MATTEL'S MOTION FOR ORDER FINDING WAIVER          Case No. CV 04-9049 SGL

Exhibit  85 ,
P.  151

1   In addition, in opposing a motion by MGA and Bryant for Terminating

2   Sanctions, in August of 2007 Mattel argued that it did not first learn "of the

3   misconduct at issue in this case" until late November of 2003 when Mattel "obtained

4   a copy of the agreement MGA and Bryant signed while he worked for Mattel."[4]

5   The failure of this meet and confer led to the filing of MGA's Motion to

6   Compel Regarding Mattel's Privilege Waiver by Claim Assertion ("Original Waiver

7   Motion") on December 18, 2007.  Miller Decl., Ex. A.

8   On December 27, Mattel filed an opposition to MGA's Original Waiver

9   Motion in which Mattel cited 25 cases as supposedly providing authority for the

10   proposition that there had been no implied waiver.  *Id.*, Ex. B.

11   MGA's Original Implied Waiver Motion was noticed for hearing on January 3

12   but the press of other matters prevented its being heard on that day.  However, on

13   January 3, the Court did hear and grant MGA's and Bryant's Motion to Overrule

14   Mattel's Relevance Objection and to Compel Discovery Related to Statute of

15   Limitations and Laches Defenses ("Relevance Motion").  Miller Decl., Ex. D.

16   **D.   MGA's Renewed Waiver Motion**

17   MGA then withdrew its Original Implied Waiver Motion and, on January 18

18   filed its Motion to Compel Discovery As To Issues As To Which Mattel Has Waived

19   The Attorney-Client And Work Product Privileges By Claims Assertion ("MGA's

20   Renewed Motion"), to address the impact of the Court's ruling on the Relevance

21   Motion.  MGA's Renewed Waiver Motion is one of the matters that the parties have

22   asked the Court to hear on February 11.

23   **E.   The Present Motion**

24   On January 23, Mattel filed the present Motion, seeking a determination that

25   MGA's "good faith" defenses effected a partial, implied waiver and seeking all

26   ─────────────────────

27   *(cont'd from previous page)*
   Attorney-Client Privilege And Work Product Privileges By Claims Assertion
   (1/18/08) ("Mumford Decl."), Ex. 1 at 42:1-8; 42:16-24.

28   [4]   Mumford Decl., Ex. 32 at 393:21; 394:10-11.

MGA'S OPP. TO MATTEL'S MOTION FOR ORDER FINDING WAIVER          Case No. CV 04-9049 SGL

Exhibit  85  ,
P.  152

1   documents regarding the propriety of MGA's contracting with Bryant "including

2   without limitation" 21 specific documents that MGA either withheld or produced in

3   redacted form, which Mattel seeks to produce in unredacted form.  Notice of Mot. at

4   2:10-14.[5]  The Notice also identifies specific questions that were asked during Isaac

5   Larian's deposition as to which Mattel seeks responses or further responses.  *Id.*

6   2:14-16.

7        MGA believes that production of 17 of those documents, which were

8   generated in 2000, is warranted for the same reason that MGA is entitled to discover

9   privileged material concerning Mattel's tolling claims.  MGA believes that an *in

10  camera* examination of the other four documents, which were generated in 2002, will

11  disclose that their production is not warranted.[6]

12       MGA objects to the "including without limitation" portion of Mattel's demand

13  as violative of Local Rule 37-2.1.  As Mattel explained in its December 27, 2007

14  Opposition to MGA's Original Implied Waiver Motion:

15           The Local Rules mandate that all discovery motions should
             be supported by a document setting forth either the specific
16           requests or the specific question, and any specific
             objections, so that the Court will have both precision and
17           context for its rulings.  Local Rule 37-2.1; U.S. ex. rel.
             O'Connell v. Chapman University, 245 F.R.D. 646, 648
18           (C.D. Cal. 2007) (entering order to show cause for failure
             to comply with Local Rule 37-2.1); Estate of Gonzalez v.
19           Hickman, 2007 WL 3238725, at *2 (C.D. Cal. 2007)
             (refusing to hear motion because of party's failure to
20           comply with Local Rule 37-2.1).  MGA's motion utterly
             fails to do this.
21
             MGA provides no basis upon which to seek an order
22           compelling further responses to discovery "in general,"
             rather than as to specific discovery requests.  A motion
23           seeking an order compelling "further responses" to
             unspecified discovery requests does not give fair notice.
24

25  [5]  "(1) Entry Nos. 655-657 and 660 on MGA's August 14, 2007 Supplemental
         Privilege Log, (2) Entry Nos. 12-19 and 21-27 on MGA's Supplemental
26       Revised Privileged and Redaction Log for MGA's 2005 Document Production,
         (3) Entry Nos. 89 and 90 on Isaac Larian's Privilege Log, . . . ."
27  [6]  MGA suggests that Mattel's request for a further deposition of Mr. Larian be
         deferred until Mattel has had an opportunity to review the requested
28       documents and can specify whether and why further examination is needed.

MGA'S OPP. TO MATTEL'S MOTION FOR ORDER FINDING WAIVER            Case No. CV 04-9049 SGL

Exhibit 85 ,
P. 153

1   The Discovery Master has consistently rejected the parties'
    request that he lay down general discovery guidelines not
2   tied to specific discovery requests. MGA's request for
    vague discovery rulings without identification of the
3   specific discovery requests or information at issue should
    likewise be rejected here. [Miller Decl., Ex. B at 3:4-19].
4

5   The same limitation should apply here.

6   **F.**   **Mattel's Lame Attempts To Distinguish MGA's Renewed Motion**

7        The first thirteen and one-half pages of Mattel's Memorandum of Points and

8   Authorities reads almost like a plagiarization of MGA's Original and Renewed

9   Motions. This is in marked contrast to the position Mattel took in its December 2007

10  Opposition to MGA's Original Waiver Motion.

11       Then, on page 14, Mattel claims that an implied waiver finding is warranted as

12  to MGA, because MGA has not produced any non-privileged support for its "good

13  faith" claims but not as to Mattel which "has produced substantial non-privileged

14  information regarding when Mattel learned of Bryant's wrongful conduct." Mot. at

15  14:10-11. In fact, the record already contains substantial non-privileged evidence of

16  MGA's good faith, including recent deposition testimony of David Rosenbaum and

17  Anne Wang evidencing the representations made by Carter Bryant to MGA in

18  connection with MGA's acquisition of Bratz. (See Miller Decl., Exhs. G and H). In

19  contrast, Mattel fails to offer any examples of this "substantial non-privileged

20  information."

21       In addition, Mattel does not dispute that the record is replete with indicia that

22  Mattel suspected Bryant of wrongdoing well before November 2003; by late 2001, or

23  2002 at the latest, Mattel had its lawyers investigating whether Bryant had worked

24  on Bratz while employed at Mattel. Miller Decl., Ex. C at 2:7-3:22. In short, even if

25  Mattel has produced non-privileged information to support its claim that it did not

26  have reason to suspect wrongdoing before November 2003, Mattel has used the

27  attorney-client and work product privileges to block MGA's efforts to support its

28

-8-

1   competing claim that Mattel suspected or had reason to suspect the alleged

2   wrongdoing well before that date.

3         Mattel also makes a throwaway argument that it "simply denies" that its

4   claims are time-barred and did not affirmatively inject them into the case. Mot. at

5   14:15-21. Mattel fails to explain how paragraphs 35 and 36 of its Counterclaims, in

6   which Mattel seeks affirmative relief are mere "denials." Similarly, Mattel fails to

7   explain how its assertion in its opposition to the Motion for Terminating Sanctions

8   that it did not have cause to suspect any of the alleged wrongdoing until November

9   of 2003 is a mere "denial."

10        Moreover, *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386,

11  1419 (11th Cir. 1994), *cert. denied*, 513 U.S. 1110 (1995), the sole authority that

12  Mattel relies upon for its "simply denies" argument, makes clear a claim that the

13  statute of limitations was tolled because of lack of knowledge is exactly the kind of

14  claim that warrants an implied waiver. As explained in *Cox*:

15        USX waives the privilege if it injects into the case an issue
          that in fairness requires an examination of otherwise
16        protected communications. In *Conkling v. Turner*, 883
          F.2d 431, 434-35 (5th Cir. 1989), the plaintiff claimed that
17        the RICO statute of limitations period was tolled because
          he did not know that a statement made by the defendants
18        was false until told by his attorney 18 years after the fact.
          The Fifth Circuit held that by doing so, he waived the
19        privilege as to communications from his attorney about the
          statement; "the attorney-client privilege is waived when a
20        litigant 'place[s] information protected by it in issue
          through some affirmative act for his own benefit, and to
21        allow the privilege to protect against disclosure of such
          information would be manifestly unfair to the opposing
22        party.'" *Id.* at 434 (quoting *Hearn v. Rhay*, 68 F.R.D. 574,
          581 (E.D. Wash. 1975)) (alteration in original). [17 F.3d at
23        1419].

24  **III.    ARGUMENT**

25        **A.    Fairness Concerns Apply With Equal Force To Mattel's And
                  MGA's Claims Of Privilege**
26

27        "[F]airness, not relevance, is the touchstone of the scope of the implied waiver

28  doctrine." *Rambus Inc. v. Samsung Elecs. Co.*, Nos. C-05-02298, C-05-00334, 2007

-9-

1  WL 3444376, at *6 (N.D. Cal. Nov. 13, 2007).  As Mattel argues, "parties in

2  litigation may not abuse the privilege by asserting claims the opposing party cannot

3  adequately dispute unless it has access to the privileged materials." *Bittaker v.*

4  *Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) ; Mot. at 10:8-11.  As the Ninth Circuit

5  explained the underpinning of the implied waiver doctrine:  "The court thus gives the

6  holder of the privilege a choice:  If you want to litigate this claim, then you must

7  waive your privilege to the extent necessary to give your opponent a fair opportunity

8  to defend against it." *Bittaker*, 331 F.3d at 720.  These fairness principles apply with

9  equal force to Mattel's tolling claims and to MGA's "good faith" affirmative defenses.

10      MGA submits that the Court should find a limited waiver by Mattel and order

11  Mattel to produce the additional discovery specifically identified and requested in

12  MGA's Renewed Motion and, similarly, order MGA to produce the September 2000

13  communications concerning MGA's acquisition of the original Bratz drawings from

14  Bryant.[7]

15      MGA further urges that the Court conduct an in-camera inspection of the 2001

16  exchanges between Isaac Larian and Patricia Glaser, a lawyer with what was then the

17  Christensen firm.[8]  MGA submits that this exchange is either totally irrelevant to

18  MGA's "good faith" when it acquired the Bratz drawings from Mr. Bryant nearly a

19  year before.  Alternatively, it is of marginal relevance and its production is

20  substantially outweighed by the danger of unfair prejudice, confusion of the issues,

21  undue delay or waste of time.

22      An *in camera* review will confirm that the 2001 exchange is fully-consistent

23  with MGA's assertion of "good faith."  On the other hand, the exchange is about

24  potential litigation and is between Mr. Larian and one of his eventual trial counsel,

25

26  [7]  "Entry Nos. 12-19 and 21-27 on MGA's Supplemental Revised Privileged and

27       Redaction Log for MGA's 2005 Document Production, and Entry Nos. 89 and
         90 on Isaac Larian's Privilege Log, . . . ."

28  [8]  "Entry Nos. 655-657 and 660 on MGA's August 14, 2007 Supplemental
         Privilege Log."

-10-

1  Ms. Glaser.  Production of these documents would, undoubtedly, lead to Mattel's

2  demanding to depose both Mr. Larian and Ms. Glaser and would, inevitably, lead to

3  squabbling and motion practice over the appropriate limits of that examination.

**B.  <u>Production Should Be Limited To The Documents Specified In The Motion That Relate To MGA's Acquisition Of Bratz.</u>**

6  In its Notice of Motion Mattel identifies 21 specific documents that it seeks to

7  compel on the grounds that MGA has waived the privilege protecting those

8  documents from production, but adds that the relief it seeks is "including without

9  limitation" these documents.  Notice of Mot. at 2:10-11.  As Mattel contended in its

10  December 27, 2007, Opposition Brief at page 3, such non-specific demands are

11  improper under Local Rule 37-2.1, which, as Mattel put it, "mandate[s] that all

12  discovery motions be supported by a document setting forth either the specific

13  requests or the specific question, and any specific objections, so that the Court will

14  have both precision and context for its rulings."  Miller Decl., Ex. B at 3:4-7.

15  Mattel's argument is fully consistent with the rule that the Court "must impose

16  a waiver no broader than needed to ensure the fairness of the proceedings before it."

17  *Bittaker*, 331 F.3d at 720 ("Because a waiver is required so as to be fair to the

18  opposing side, the rationale only supports a waiver broad enough to serve that

19  purpose.")  "[A] court finding an implied waiver and ordering production must

20  define the contours of the production and the privilege waiver."  *Rambus*, 2007 WL

21  3444376, at *6.  The Ninth Circuit recognizes that "[c]ourts, including ours, that

22  have imposed waivers under the fairness principle have therefore closely tailored the

23  scope of the waiver to the needs of the opposing party in litigating the claim in

24  question."  *Bittaker*, 331 F.3d at 720.  Thus, while relevance is a prerequisite to a

25  finding of implied waiver, the proper *scope* of the waiver is driven not by relevance,

26  but by fairness.  *Rambus*, 2007 WL 3444376, at *6. (reversing portion of magistrate's

27  order compelling "any and all documents . . . that discuss, refer, or relate to" the

28  issue on which privilege was waived; "Such an order produces all relevant materials,

-11-

Exhibit  85
P.  157

1  but fairness, not relevance, is the touchstone of the scope of the implied waiver

2  doctrine.").

3        Accordingly, in *Rambus*, having approved the ruling of the Special Master that

4  Samsung had impliedly waived the privilege by asserting the discovery rule and

5  equitable tolling to overcome the statute of limitations, the Judge directed the Special

6  Master to conduct an *in camera* review of the particular documents at issue in the

7  motion and to closely tailor the production by limiting it to "documents

8  demonstrating Samsung's subjective knowledge of Steinberg's work for Rambus, or

9  the objective circumstances relating to Steinberg's work for Rambus, prior to the

10 critical date(s) for Samsung's tolling allegations." *Id.* at *7.

11       MGA urges that, if this Court finds an implied waiver by MGA and Mattel,

12 the Court should follow a procedure similar to that the Judge ordered in *Rambus*, i.e.,

13 conduct an *in camera* review of documents being requested by each side and

14 determine:

15            1.    With respect to the Mattel documents at issue in
             MGA's Motion, whether the documents demonstrate
16           Mattel's subjective knowledge of, or facts demonstrating
             that it had reason to suspect that, prior to November 2003,
17           (a) Carter Bryant was involved in Bratz, (b) any belief or
             suspicion that Carter Bryant may have breached his
18           contract with Mattel, (c) that Carter Bryant was working
             for MGA, and/or (d) any belief or suspicion in an alleged
19           basis to assert that Mattel was alleged true owner of Bratz;
             and
20
             2.    With respect to the MGA and Rosenbaum
21           documents at issue in this Motion, whether the documents
             demonstrate advice to MGA, prior to October 4, 2000 (the
22           date MGA entered into its agreement with Bryant) that its
             acquisition of Bratz from Bryant was unlawful.
23

24 So as to narrowly tailor the scope of both implied waivers, only those documents

25 falling within these criteria should be ordered produced. *See also Aloe Vera of Am.,*

26 *Inc. v. United States,* No. CV 99-1794-PHX-JAT, 2003 WL 22429082, at *5 (D.

27 Ariz. Sept. 23, 2003), *aff'd* 376 F.3d 960 (9th Cir. 2004) (ordering production of

28 "documents containing information relating to when [p]laintiffs' counsel may have

-12-

1  advised [p]laintiffs that a cause of action may have accrued [...] if [such information]

2  exists"); *Titan Corp. v. M/A-Com, Inc.*, No. 93-CV-335, 1994 WL 16001739, at *4

3  (S.D. Cal. June 22, 1994) (ordering production of "the following additional

4  information: 1) specifically when plaintiff's counsel informed plaintiff or gave

5  plaintiff reason to believe that it had been defrauded by defendant; 2) whether

6  plaintiff or its agents supplied any information relevant to that determination; 3) the

7  specifics of that information; and 4) when each item of information was supplied to

8  plaintiff's counsel").[9]

9          MGA will make the documents identified by Mattel in its Notice of Motion

10  available for *in camera* review at the request of the Court, before, during or after the

11  February 11 hearing.

12  **IV.   CONCLUSION**

13          MGA urges that the Court enter orders finding that fairness dictates that partial

14  privilege waivers be found for both Mattel and MGA, that Mattel be required to

15  produce the documents and make the additional discovery specified in MGA's

16  Renewed Motion and order MGA to produce the documents listed in Mattel's Notice

17  of Motion for the present motion, except for entries 655-657 and 660 on MGA's

18  August 14, 2000 Supplemental Privilege Log.

19

20

21

22

23

24  [9]  In accordance with the process prescribed by the Ninth Circuit in *Bittaker* and

25  employed by Judge Whyte in *Rambus*, should the Court find that there has been an implied waiver as to any document, in accordance with Ninth Circuit procedure the Court must give the holder of the privilege the option "to

26  preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition. *Bittaker*, 331 F.3d

27  at 721. *See also*, *Rambus*, 2007 WL 3444376, at *7 (following *Bittaker*, court directed special master to "first give Samsung the option of declining to

28  proceed with its claims," and that only if Samsung chooses to proceed should the *in camera* inspection proceed).

-13-

Exhibit 85
P. 159

1      Alternatively, in the highly unlikely event the Court should accept Mattel's

2   arguments as to why MGA's Renewed Waiver Motion should be denied, the Court

3   should also deny the Present Motion.

4

5   DATED:  January 31, 2008              SKADDEN, ARPS, SLATE, MEAGHER &
                                         FLOM, LLP
6

7

8                                    By: _____
                                            RAOUL D. KENNEDY
9
                                          Attorneys for Cross-Defendants
10                                        MGA Entertainment, Inc., MGA
                                          Entertainment (HK) Limited,
11                                        MGAE De Mexico, S.R.L. De C.V.,
                                          and ISAAC LARIAN
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-14-

MGA'S OPP. TO MATTEL'S MOTION FOR ORDER FINDING WAIVER          Case No. CV 04-9049 SGL
203605.02-San Francisco Server 1A - MSW

Exhibit 85 ,
P. 160

# Exhibit 86

1   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
      John B. Quinn (Bar No. 090378)
2     johnquinn@quinnemanuel.com
      Michael T. Zeller (Bar No. 196417)
3     (michaelzeller@quinnemanuel.com)
      Jon D. Corey (Bar No. 185066)
4     (joncorey@quinnemanuel.com)
    865 South Figueroa Street, 10th Floor
5   Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
6   Facsimile:  (213) 443-3100

7   Attorneys for Mattel, Inc.

8

9                      UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11                          EASTERN DIVISION

| | |
|---|---|
| 12  CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
| 13           Plaintiff, | Consolidated with Case No. CV 04-09059 and Case No. CV 05-02727 |
| 14         vs. | |
| 15  MATTEL, INC., a Delaware corporation, | **DISCOVERY MATTER** |
| 16           Defendant. | **[To Be Heard By Discovery Master Hon. Edward Infante (Ret.) Pursuant To The Court's Order of December 6, 2006]** |
| 17 | |
| 18  AND CONSOLIDATED ACTIONS | NOTICE OF MOTION AND MOTION OF PLAINTIFF MATTEL, INC. FOR ORDER FINDING WAIVER AND TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED; AND |
| 19 | |
| 20 | |
| 21 | MEMORANDUM OF POINTS AND AUTHORITIES |
| 22 | |
| 23 | [Declaration of Bernard B. Smyth filed concurrently] |
| 24 | |
| 25 | Date:    February 8, 2008<br>Time:   9:30 a.m.<br>Place:   TBA |
| 26 | |
| 27 | **Phase 1**<br>Discovery Cut-Off:     January 28, 2008<br>Pre-Trial Conference: May 5, 2008<br>Trial Date:              May 27, 2008 |
| 28 | |

07209/2356870.1

MATTEL'S MOTION FOR ORDER FINDING IMPLIED WAIVER AND TO COMPEL DOCUMENTS

Exhibit 86
P. 161

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that, at a conference before Discovery Master

3  Hon. Edward Infante (Ret.) that will occur on February 8, 2008 at 9:30 a.m., or at

4  another date and time to be set by Judge Infante, plaintiff Mattel, Inc. ("Mattel") will,

5  and hereby does, move the Court pursuant to <u>Federal Rules of Civil Procedure</u> 26 and

6  37 to compel MGA Entertainment, Inc. ("MGA") and Isaac Larian to produce all

7  documents, communications and information related to advice they sought and/or

8  received prior to April 27, 2004, regarding the legal propriety of MGA's contracting

9  with Bryant regarding Bratz, MGA's subsequent copying, development, production

10 and sales of Bratz, and MGA's or Bryant's obligations to Mattel, including without

11 limitation (1) Entry Nos. 655-657 and 660 on MGA's August 14, 2007 Supplemental

12 Privilege Log, (2) Entry Nos. 12-19 and 21-27 on MGA's Supplemental Revised

13 Privilege and Redaction Log for MGA's 2005 Document Production, (3) Entry Nos.

14 89 and 90 on Isaac Larian's Privilege Log, and (4) testimony in response to questions

15 that MGA's counsel instructed Isaac Larian not to answer at his deposition (<u>see</u>

16 Larian Depo. Tr. at 47:22-48:1).

17    This Motion is made on the grounds that MGA and Isaac Larian have

18 waived any claimed privilege as to these materials because they have affirmatively

19 asserted good faith affirmative defenses, putting protected information relevant to

20 those defenses at issue, and because the application of the attorney-client privilege or

21 work product doctrine would deny Mattel information vital to responding to MGA

22 and Larian's affirmative defenses.

23    This Motion is based on this Notice of Motion and Motion, the

24 accompanying Memorandum of Points and Authorities, the Declaration of Bernard B.

25 Smyth filed concurrently herewith, the records and files of this Court, and all other

26 matters of which the Court may take judicial notice.

27

28

07209/2356870.1

MATTEL'S MOTION FOR ORDER FINDING IMPLIED WAIVER AND TO COMPEL DOCUMENTS

Exhibit 86
P. 162

## <u>Statement of Rule 37-1 Compliance</u>

The parties met and conferred regarding MGA and Larian's implied waiver of privilege on January 23, 2008.

DATED:  January 23, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By _____

Bernard B. Smyth
Attorneys for Plaintiff
Mattel, Inc.

07209/2356870.1

-3-

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ...................................................................... 2

ARGUMENT.......................................................................................... 8

I.      FAIRNESS DEMANDS THAT MGA AND LARIAN PRODUCE
        PROTECTED INFORMATION........................................................ 8

II.     MGA AND LARIAN HAVE IMPLIEDLY WAIVED PRIVILEGE............. 11

CONCLUSION........................................................................................ 15

07209/2356870.1

# TABLE OF AUTHORITIES

**Page**

## Cases

*Bittaker v. Woodford,*
  331 F.3d 715 (9th Cir. 2003) ................................................................. 10

*Chevron Corp. v. Pennzoil Corp.,*
  974 F.2d 1156 (9th Cir. 1992) ................................................................ 8

*Cox v. Administrator U.S. Steel & Carnegie,*
  17 F.3d 1386 (11th Cir. 1994), <u>cert denied,</u> 513 U.S. 1110 (1995) ............ 9, 12, 14

*Hearn v. Rhay,*
  68 F.R.D. 574 (E.D. Wash. 1975) ......................................................... 11, 12, 13

*United States v. Amlani,*
  169 F.3d 1189 (9th Cir. 1999) ............................................................. 11, 12

*United States v. Blizerian,*
  926 F.2d 1285 (2d Cir. 1991), <u>cert denied,</u> 502 U.S. 813 (1991) ................... 12, 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

The lynchpin of a number of MGA's and Isaac Larian's affirmative defenses is their allegation that they "acted with a good faith belief that Bryant owned the rights to his original Bratz drawings and that his assignment of such rights to MGA . . . was valid and permissible." MGA claims it "did not believe that Mattel owned any of the materials Carter Bryant presented to it" and, in fact, "took steps to confirm the timing of Bryant's work prior to executing the agreement" with him. Yet MGA and Larian have refused to produce any information showing what those steps were and what advice they sought and received regarding (i) the propriety of contracting with Bryant and (ii) the subsequent copying, development, production and sales of Bratz. They have consistently shielded that information behind the attorney-client privilege.

Thus, MGA and Larian are withholding substantial evidence showing what they were told regarding the propriety of their actions, while at the same time baldly professing their good faith. For example, as evidence of his good faith, Larian testified that he instructed an MGA executive to consult with MGA's attorneys concerning Bryant's contract obligations with Mattel before he contracted with Bryant and that she did so. However, MGA's counsel instructed Larian not to go beyond that partial disclosure. MGA is thus trying to rely on the consultation with counsel -- and the implication that it was advised that MGA could properly contract with Bryant -- as evidence of its good faith, but at the same time withhold the actual substance of the advice. MGA and Larian are likewise withholding dozens of emails from the dates leading up to the execution of MGA's agreement with Bryant that show what MGA asked its lawyers and what its lawyers told it regarding the propriety of contracting with Bryant.

MGA is also withholding several emails to and from its attorneys after MGA first unveiled Bratz. Those emails are described as seeking and receiving legal

1  advice regarding Bryant's contract and licensing.  They likely show what MGA was

2  told about the propriety of further copying and sales of Bratz.  Further, MGA is

3  withholding communications with its litigation counsel from June 2001 -- nearly

4  three years before Mattel filed suit -- which are described as "requesting legal advice

5  regarding Mattel litigation" and "seeking legal advice regarding Bratz."

6          Fairness demands that MGA and Larian produce those documents and

7  any other information they are withholding regarding advice they sought and/or

8  received regarding the legal propriety of MGA's contract with Bryant and subsequent

9  copying and sales of Bratz.  The case law is clear that in asserting their good faith as

10  affirmative defenses, MGA and Larian have put in issue otherwise privileged

11  information showing their true state of mind regarding the legal propriety of their

12  actions.  In order to fairly respond to MGA's asserted "good faith," Mattel needs

13  access to the documents that would show what advice MGA and Larian were

14  provided, and what steps they took (and asked their lawyers to take) to do "due

15  diligence" about Bryant's representations and Bryant's relationship with Mattel.  The

16  only actual evidence necessary to test MGA's "good faith" defenses in this case is

17  privileged communications that MGA and Larian refuse to produce.  MGA and

18  Larian cannot use the privilege as both a sword -- in baldly proclaiming their good

19  faith -- and as a shield.

20                          **Statement of Facts**

21          Mattel's Counterclaims and MGA's "Good Faith" Affirmative Defenses.

22  Mattel filed its Second Amended Answer and Counterclaims on July 12, 2007.[1]

23  Mattel alleges, among other things, that MGA and Larian (collectively, "MGA")

24  encouraged, aided and paid Carter Bryant to develop Bratz designs while Bryant was

25

26  _____

27  [1]   Mattel's Second Amended Answer in Case No. 05-2727 and Counterclaims, dated July 12, 2007, attached as Exhibit 3 to the concurrently filed Declaration of

28  Bernard B. Smyth ("Smyth Dec.").

07209/2356870.1

1  a Mattel employee, knowing that such conduct was a breach of Bryant's contractual

2  duties to Mattel;[2] that MGA and Bryant intentionally concealed these facts from

3  Mattel;[3] that Mattel is the rightful owner of Bratz drawings; and that MGA's

4  infringement of Mattel copyrights in those drawings harmed, and continues to harm,

5  Mattel.[4]  Mattel claims that MGA and Larian are liable for, among other things,

6  aiding and abetting Bryant's breaches of duty to Mattel, copyright infringement, and

7  willful copyright infringement.[5]

8         MGA asserted 22 affirmative defenses in response to Mattel's

9  counterclaims.  Central to a number of those defenses is MGA's claim that it "acted

10  with a good faith belief that Bryant owned the rights to his original Bratz drawings

11  and that his assignment of such rights to MGA . . . was valid and permissible."[6]

12  MGA also separately asserts the defense of "good faith" to Mattel's counterclaims.[7]

13  Thus, MGA has affirmatively put its state of mind at issue and done so repeatedly.

14         <u>MGA's Discovery Responses Demonstrate Continued Reliance on Its</u>

15  <u>Alleged "Good Faith."</u>  Discovery in this case also has demonstrated that MGA

16  clearly intends to rely on its alleged "good faith" in defending Mattel's counterclaims.

17  In response to requests for admissions, MGA acknowledged that "it contends it

18  believed at the time it entered into its agreement with Bryant and at all times

19  thereafter" that:

20

21

22  _____

23  [2]  <u>Id.</u>, ¶ 33.
    [3]  <u>Id.</u>, ¶ 35.
24  [4]  <u>Id.</u>, ¶¶ 83-87.
    [5]  <u>Id.</u>, ¶¶ 83-87, 136-141, 149-154.
25  [6]  <u>See, e.g.</u>, MGA's Fifth and Sixth Affirmative Defenses, Amended Answer and
26  Affirmative Defenses of MGA Entertainment Inc., MGA Entertainment (HK)
    Limited, and MGAE de Mexico S.R.L. de C.V. to Mattel, Inc.'s Second Amended
27  Answer and Counterclaims, dated September 19, 2007, at p. 22, Smyth Dec., Exh. 4.
28  [7]  MGA's Eighteenth Affirmative Defense, <u>Id.</u> at p. 25.

Exhibit 86 ,
P. 168

- "[I]t had the right to market products developed as a result of its agreement with Bryant;"[8]

- "[I]t would have the lawful right to fully exploit the drawings drawn and presented by Bryant prior to the execution of MGA's agreement with Bryant;"[9]

- "[I]t had the right to fully exploit products developed as a result of its agreement with Bryant;"[10] and

- "[I]t had the lawful right to fully exploit the drawings drawn and presented by Bryant prior to the execution of its agreement with Bryant."[11]

In addition, as recently as January 7, 2008, MGA served interrogatory responses in which it contended that "MGA acted in good faith when Bryant transferred and MGA acquired all rights to the Bratz concept,"[12] and that MGA "acted with a good faith belief that Bryant owned the rights to his original Bratz drawings and that his assignment of such rights to MGA [] was valid and permissible."[13] MGA contends that, "despite [its] fair inquiry" it did not know that Carter Bryant entered into an inventions agreement with Mattel.[14] According to MGA, these contentions support its affirmative defenses.[15]

MGA Shields the Only Evidence that Could Rebut Its Alleged "Good Faith" Behind the Attorney-Client Privilege. Although MGA has repeatedly injected its alleged "good faith" as to the central events in this case, it refuses to produce the

---

[8]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set of Requests for Admission, dated August 21, 2007, at p. 4, Smyth Dec., Exh. 5.

[9]   Id. at p. 5.

[10]   Id. at p. 6.

[11]   Id. at p. 8.

[12]   MGA's Response to Mattel, Inc.'s Amended Supplemental Interrogatory Regarding Defendants' Affirmative Defenses, dated January 7, 2008, at p. 35, Smyth Dec., Exh. 6.

[13]   Id. at p. 32.

[14]   MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s Revised Third Set of Interrogatories, dated January 7, 2008, at pp. 79-80, Smyth Dec., Exh. 7.

[15]   Id.

1  communications with its attorneys that are the only evidence of (1) what it actually

2  thought, and was advised about, the legal propriety of contracting with Bryant and the

3  subsequent copying and sales of Bratz, and (2) what inquiry, if any, it asked its

4  lawyers to conduct. MGA has withheld those communications as privileged.

5          According to MGA, Isaac Larian and other MGA personnel, including

6  Victoria O'Connor, first met with Bryant on September 1, 2000. MGA admits that

7  "Bryant told them . . . that he was employed by Mattel at that time."[16] MGA claims

8  that despite some undisclosed "fair inquiry," it did not know Bryant had signed an

9  inventions agreement with Mattel. However, MGA produced a fax from the same

10 time period (September 14, 2000) from Bryant to David Rosenbaum, who both

11 Larian and O'Connor testified was the attorney MGA hired to assist with the Bryant

12 contract,[17] in which Bryant encloses his offer letter with Mattel. That offer letter

13 expressly calls attention to his Confidential Information and Inventions Agreement.[18]

14 In the fax, Bryant advised MGA's lawyer that he was "unable to look into this too

15 much . . . without risking suspicion" on Mattel's part.[19]

16         MGA claims that "Bryant and his counsel . . . represented and warranted

17 to MGA that Bryant was the exclusive originator and owner of his Bratz ideas and

18 drawing and that no third party had any interest or rights in the drawings or ideas

19 reflected in the drawings."[20] Despite Bryant's alleged representations, Larian testified

20 that in entering into a contract with Bryant he "wanted to make sure . . . that this idea

21 _____

22  [16]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set

23 of Requests for Admission, dated August 21, 2007, at p. 21, Smyth Dec., Exh. 5.
    [17]   Deposition Transcript of Victoria O'Connor, dated December 6, 2004

24 ("O'Connor Depo. Tr."), at 226:24-227:7, Smyth Dec., Exh. 10; Larian Depo. Tr. at

25 50:25-51:6, 140:18-140:21, Smyth Dec., Exh. 9.
    [18]   See Smyth Dec., Exh. 8.

26  [19]   Id.

27  [20]   MGA's Response to Mattel, Inc.'s Amended Supplemental Interrogatory
    Regarding Defendants' Affirmative Defenses, dated January 7, 2008, at p. 35, 76-77,

28 Smyth Dec., Exh. 6.

07209/2356870.1

1  that he was showing us was nothing that was at Mattel or Mattel had done."[21]  In fact,

2  MGA has stated that "[b]ased on the information provided to it, MGA did not believe

3  that Mattel owned any of the materials Carter Bryant presented to it, *but nonetheless*

4  *took steps to confirm the timing of Mr. Bryant's work prior to executing the*

5  *agreement*, as Mr. Larian testified to at his deposition."[22]  At his deposition, Larian

6  testified that, as evidence of his good faith, he asked Victoria O'Connor to make sure

7  to check with MGA's attorney regarding whether Bryant had a contract with Mattel.[23]

8          However, MGA has refused to disclose what its attorneys told it

9  regarding the legal propriety of contracting with Bryant.  MGA's counsel instructed

10  Larian not to answer, on attorney-client privilege grounds, questions regarding what

11  MGA asked its attorneys about the propriety of contracting with Bryant and what its

12  attorneys told MGA.[24]  MGA is also withholding more than a dozen emails between

13  O'Connor and Rosenbaum that were sent between September 1, 2000, the date of the

14  claimed meeting with Bryant, and October 4, 2000, the date Bryant's contract was

15  executed.[25]  Those emails are all described as messages "rendering [or requesting]

16  legal advice regarding Carter Bryant contract."[26]  Many emails between O'Connor

17  and Rosenbaum from the same time period were withheld by Rosenbaum as well.[27]

18

19

20

[21]     Deposition Transcript of Isaac Larian, dated July 18, 2006 ("Larian Depo.
21  Tr."), at 46:16-19, Smyth Dec., Exh. 9.
[22]     MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set
22  of Requests for Admission, dated August 21, 2007, at p. 12 (emphasis added), Smyth
23  Dec., Exh. 5.
[23]     Larian Depo. Tr. at 47:16-23, Smyth Dec., Exh. 9.
24  [24]     Id. at 47:22-48:1.
[25]     Supplemental Revised Privilege and Redaction Log for MGA's 2005 Document
25  Production, Entry Nos. 12-19, 21-27, Smyth Dec., Exh. 11.
26  [26]     Id.
[27]     David Rosenbaum's Privilege Log, Entry Nos. 9-17, 19-25, Smyth Dec., Exh.
27  12.

28

Exhibit 86
P. 171

1   Those emails may include advice regarding the propriety of MGA contracting with

2   Bryant and MGA's or Bryant's obligations to Mattel.

3        MGA alleges that it first unveiled Bratz at the Hong Kong Toy Fair in

4   January 2001.[28]  The next month, on February 10, 2001, Isaac Larian emailed David

5   Rosenbaum, noting that "Bratz are very hot."[29]  MGA redacted the rest of that email

6   as privileged, describing it as "requesting legal advice regarding Carter Bryant

7   contract and licensing."[30]  That email apparently started a series of communications --

8   first between Larian and Rosenbaum and then between O'Connor and Rosenbaum --

9   all described as "requesting [or rendering] legal advice regarding Carter Bryant

10  contract and licensing."[31]  MGA is withholding all of those communications.

11       MGA is thus withholding dozens of emails between MGA and its

12  counsel that, based on their description, evidence legal advice MGA requested and

13  received regarding the legal propriety of contracting with Bryant, both before the

14  contract with him was executed and once it became apparent that MGA would begin

15  significant efforts copying, developing, producing and selling Bratz.

16       Isaac Larian is also personally withholding on privilege grounds

17  documents that appear to evidence what he knew regarding the legal propriety of

18  MGA's contract with Bryant and subsequent development of Bratz.  Larian's privilege

19  log, which the Discovery Master ordered Larian to provide and which was served last

20  week, includes a June 30, 2001 email from Larian to Patricia Glaser, Larian's

21  litigation counsel.  The email is described as a "message requesting legal advice

22

23

24  _____

25  [28]   MGA's Complaint in Case No. 05-2727, dated April 13, 2005, ¶ 23, Smyth
    Dec., Exh. 13.

26  [29]   See Smyth Dec., Exh. 14.
    [30]   Supplemental Revised Privilege and Redaction Log for MGA's 2005 Document

27  Production, Entry No. 8, Smyth Dec., Exh. 11.

28  [31]   Id., Entry Nos. 3-6, 8-11.

-7-

Exhibit 86
P. 177

07209/2356870.1

1 regarding Mattel litigation,"[32] and was sent approximately when the Bratz dolls were
2 first put on sale,[33] well before Mattel filed suit in April 2004.  Additional emails from
3 Larian to Glaser between June 29, 2001 and July 2, 2001, are listed on MGA's logs as
4 well,[34] including one described as an email "seeking legal advice regarding Bratz."[35]
5 These 2001 communications between Larian and Glaser are particularly suspicious in
6 light of Victoria O'Connor's testimony.  She testified that the executed agreement
7 between Bryant and MGA was faxed to her by Bryant with a heading at the top
8 stating "Barbie Collectibles."[36]  She acknowledged that the heading caused her
9 concern "because [Bryant] was still at Mattel at the time the contract was executed."[37]
10 She expressed that concern to Isaac Larian.[38]  Larian then asked her to whiteout
11 "Barbie Collectibles" from the faxed agreement and send it to Patricia Glaser.[39]

12 **Argument**

13 **I.    FAIRNESS DEMANDS THAT MGA AND LARIAN PRODUCE**
14 **PROTECTED INFORMATION**

15         In the Ninth Circuit as elsewhere, "[t]he privilege which protects
16 attorney-client communications may not be used both as a sword and a shield.  When
17 a party raises a claim which in fairness requires disclosure of the protected
18 communication, the privilege may be implicitly waived."  Chevron Corp. v. Pennzoil
19 Corp., 974 F.2d 1156, 1162 (9th Cir. 1992) (citation omitted).

20 

---

21     [32]   Larian Privilege Log, Entry No. 89, Smyth Dec., Exh. 15.  Entry No. 90 on
22 Larian's log is another communication from Larian to Glaser, dated June 29, 2001.
23     [33]   MGA's Complaint in Case No. 05-2727, dated April 13, 2005, ¶ 23 ("MGA
introduced [Bratz] to consumers in June 2001."), Smyth Dec., Exh. 13.
24     [34]   MGA's August 14, 2007 Supplemental Privilege Log, Entry Nos. 655-657, 660,
25 Smyth Dec., Exh. 16.
    [35]   Id., Entry No. 660.
26     [36]   O'Connor Depo. Tr. at 18:13-18, Smyth Dec., Exh. 10.
27     [37]   Id. at 20:8-20.
    [38]   Id. at 20:8-21:20.
28     [39]   Id. at 18:13-18.

1    It is unfair for MGA to argue that it should be absolved of liability
2  because it supposedly had a good faith belief that its actions were lawful, while at the
3  same time withholding from production communications with its attorneys bearing on
4  that very subject.   The withheld communications reflect the "steps [MGA took] to
5  confirm the timing of Mr. Bryant's work prior to executing the agreement" and the
6  "fair inquiry" MGA claims it conducted, and apparently form the basis of MGA's
7  claim that "at the time it entered into its agreement with Bryant . . . it had the lawful
8  right to fully exploit the drawings drawn and presented by Bryant."[40]    Such
9  communications may show that MGA was, in truth, aware that Mattel had or may
10  have legal rights to Bratz and are critical evidence regarding the merits of MGA's
11  "good faith" defenses and are the only way for Mattel to test its claim of good faith.
12    Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1418-20
13  (11th Cir. 1994), cert denied, 513 U.S. 1110 (1995), is instructive.  In that case, the
14  defendant claimed that at the time it revised the leave-of-absence policy at issue in
15  the case it "believed the policy to be lawful." Id. at 1418.  Thus, defendant's alleged
16  "good faith" was at issue.  Although the defendant did not claim that its belief was
17  based on communications with attorneys, the court upheld a finding of implied
18  waiver because defendant's claimed belief "necessarily implicates all of the
19  information at its disposal when it made the decision to change the leave of absence
20  policy." Id.   The court ordered the defendant to produce communications with its
21  lawyers about the lawfulness of its policy, holding that defendant's allegation of
22  "good faith" injected "into the case an issue that in fairness requires an examination
23  of otherwise protected communications." Id. at 1419.
24
25  _____
26    [40]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set
   of Requests for Admission, dated August 21, 2007, at p. 8, 12, Smyth Dec., Exh. 5;
27  MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s Revised
28  Third Set of Interrogatories, at pp. 79-80, dated January 7, 2008, Smyth Dec., Exh. 7.

07209/2356870.1

MATTEL'S MOTION FOR ORDER FINDING IMPLIED WAIVER AND TO COMPEL DOCUMENTS
Exhibit 86
P. 174

1    Similarly here, MGA has injected into this litigation what advice it
2    received from its lawyers regarding the legality of its contract with Bryant and its
3    rights to copy and sell Bratz.  MGA cannot obtain the benefit of invoking the advice
4    of counsel as establishing good faith -- including the clear implication that Bryant
5    was legally free to contract with MGA -- but withhold the rest of the communication.
6    Fairness requires that Mattel be permitted to examine that information.   That is
7    especially true here because the *only* evidence of what MGA knew regarding the
8    lawfulness of its actions has been withheld as privileged.  By "assert[ing] claims the
9    opposing party cannot adequately dispute unless it has access to the privilege
10   materials," Bittaker v. Woodford, 331 F.3d 715, 719 (9th Cir. 2003), MGA has
11   waived the privilege.

12    It is clear that MGA sought and obtained legal advice regarding the
13   propriety of entering into a contract with Bryant, who it knew to be employed by
14   Mattel as a doll designer, to acquire Bratz, and subsequent copying of Bratz.  Larian
15   testified that in entering into a contract with Bryant he "wanted to make sure . . . that
16   this idea that he was showing us was nothing that was at Mattel or Mattel had
17   done."[41]  MGA has stated that it "took steps to confirm the timing of Mr. Bryant's
18   work prior to executing the agreement."[42]  MGA claims to have conducted a "fair
19   inquiry."[43]  This is a partial disclosure, for MGA's benefit, of its communications with
20   counsel.  And MGA concedes that it affirmatively has put its alleged good faith at
21   issue.[44]  Yet MGA has refused to provide testimony or produce documents that

---

23   [41]  Larian Depo. Tr. at 46:16-19, Smyth Dec., Exh. 9.
24   [42]  MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set
     of Requests for Admission, dated August 21, 2007, at p. 12, Smyth Dec., Exh. 5.
25   [43]  MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s
26   Revised Third Set of Interrogatories, at pp. 79-80, dated January 7, 2008, Smyth
     Dec., Exh. 7.
27   [44]  MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set
28   of Requests for Admission, dated August 21, 2007, at pp. 4-8, Smyth Dec., Exh. 5.

Exhibit 86,
P. 175

1   demonstrate what those steps were or what MGA learned in taking those steps.  The

2   closest MGA has come to providing that information is when Larian testified that he

3   asked Victoria O'Connor to make sure to check with MGA's attorney regarding

4   whether Bryant had a contract with Mattel, but he was then promptly interrupted by

5   his counsel and instructed not to divulge any attorney-client communications.[45]  Such

6   partial "lifting of the veil" to gain an advantage is clearly improper.

7          MGA and Larian are withholding dozens of documents that, based on

8   privilege log descriptions, appear to involve legal advice regarding the propriety of

9   MGA's actions.  Those include emails from Larian to Patricia Glaser seeking legal

10  advice regarding "Bratz" and "Mattel litigation" even as Bratz was first being released

11  and no litigation was pending.   Fairness demands that MGA produce those

12  documents and any other information that MGA is withholding as privileged

13  regarding advice it sought and/or obtained regarding the propriety of contracting with

14  Bryant, MGA's or Bryant's obligations to Mattel, and the propriety of MGA's

15  copying, development, production and/or sales of Bratz.

16  **II.    MGA AND LARIAN HAVE IMPLIEDLY WAIVED PRIVILEGE**

17         As MGA has recognized,[46] the Ninth Circuit applies the three-part test

18  set forth in Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975), to determine

19  whether a party has impliedly waived privilege: "(1) assertion of the privilege was a

20  result of some affirmative act, such as filing suit, by the asserting party; (2) through

21  this affirmative act, the asserting party put the protected information at issue by

22  making it relevant to the case; and (3) application of the privilege would have denied

23  the opposing party access to information vital to his defense."  See also United States

24

25  _____

26  [45]   Larian Depo. Tr. at 47:16-23, Smyth Dec., Exh. 9.
    [46]   See MGA's Notice of Motion and Motion to Compel Regarding Mattel's
27  Privilege Waiver by Claim Assertion, dated December 18, 2007, at pp. 15-16, Smyth
    Dec., Exh. 17.
28

Exhibit 86,
P. 176

1  v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999) (applying the Hearn test for implied

2  waiver).

3              Under the Hearn test, which MGA heavily relies on in its recently filed

4  motion for implied waiver against Mattel, MGA and Larian have waived the privilege

5  by asserting their "good faith" affirmative defenses.  The facts here are closely

6  analogous to those in Hearn, where the court found implied waiver.  In Hearn,

7  defendants asserted as a defense "in their answer that they 'have acted in good faith.'"

8  Hearn, 68 F.R.D. at 578.  The court found that all the elements of its three-part test

9  were satisfied because:

> [D]efendants invoked the privilege in furtherance of an
> affirmative defense they asserted for their own benefit;
> through this affirmative act they placed the privileged
> information at issue, for the legal advice they received is
> germane to the qualified immunity defense they raised; and
> one result of asserting the privilege has been to deprive
> plaintiff of information necessary to 'defend' against
> defendants' affirmative defenses, for the protected information
> is also germane to plaintiff's burden of proving malice or
> unreasonable disregard of his clearly established
> constitutional rights.

18  Id. at 581.

19              The same is true here.  First, as in Hearn, MGA has asserted the privilege

20  by alleging the affirmative defense of "good faith."  The assertion of an affirmative

21  defense based on good faith is a particularly common grounds for finding implied

22  waiver.  See, e.g., Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1419

23  (11th Cir. 1994), cert denied, 513 U.S. 1110 (1995) ("Having gone beyond mere

24  denial, affirmatively to assert good faith, USX injected the issue of its knowledge of

25  the law into the case and thereby waived the attorney-client privilege."); United

26  States v. Blizerian, 926 F.2d 1285, 1293 (2d Cir. 1991), cert denied, 502 U.S. 813

27  (1991) (defendant's good faith assertion that his actions were lawful waived attorney-

28  client privilege).

07209/2356870.1

-12-

1    Second, MGA's "good faith" defenses have affirmatively put privileged
2   information at issue. In Hearn, the court found that privileged information was put at
3   issue because the legal advice defendants received was "germane" to the defense they
4   raised. Here, MGA acknowledges that it "took steps to confirm the timing of Mr.
5   Bryant's work prior to executing the agreement."[47]  It also contends that it conducted
6   a "fair inquiry" into Bryant's representations about his creation and ownership of
7   Bratz.[48]  Larian testified that he told Victoria O'Connor to talk to MGA's lawyers.[49]
8   MGA's privilege log includes a number of emails between MGA and its lawyers
9   regarding Bryant's contract, Mattel litigation and the like.   Not only are such
10  communications "germane" to MGA's "good faith" defenses, they are the *only*
11  evidence of the steps MGA took to determine the propriety of its actions.  MGA has
12  shielded everything in this regard by asserting the privilege.

13    Third, as in Hearn, the result of MGA's privilege assertions has been to
14  deprive Mattel of information "necessary to 'defend' against [MGA's] affirmative
15  defenses."   The information MGA is withholding is critical to Mattel's ability to
16  respond to MGA's purported "good faith" defenses because, as discussed in Section I
17  above, it is the *only* evidence of what advice MGA solicited and received regarding
18  the propriety of its actions and the steps it claims it took to ensure that Bryant could
19  and did lawfully assign rights to Bratz and that no Mattel rights were infringed.

20    In short, MGA contends that its actions in contracting with Bryant and
21  subsequent acts of copying, developing, producing and selling Bratz were in good
22  faith because it believed they were lawful.  And MGA contends that it cannot be

23

24
25   [47]   MGA Entertainment Inc.'s Supplemental Responses to Mattel, Inc.'s Fifth Set
     of Requests for Admission, dated August 21, 2007, at p. 12, Smyth Dec., Exh. 5.
26   [48]   MGA Entertainment, Inc.'s Second Supplemental Responses to Mattel, Inc.'s
27   Revised Third Set of Interrogatories, at pp. 79-80, dated January 7, 2008, Smyth
     Dec., Exh. 7.
28   [49]   Larian Depo. Tr. at 47:16-23, Smyth Dec., Exh. 9.

07209/2356870.1

1  liable to Mattel because of its good faith.[50]  These contentions have placed at issue

2  numerous otherwise protected attorney-client communications, including relevant

3  documents listed on MGA's and Larian's privilege logs.  Those communications are

4  the only evidence of what MGA asked and was told about the legal propriety of its

5  actions.  Mattel needs the information withheld to fairly respond to MGA's "good

6  faith" defenses.

7         Those facts are in marked contrast to the facts MGA relies on to claim

8  that Mattel impliedly waived the privilege in MGA's currently pending motion.

9  MGA argues that Mattel waived the privilege because Mattel alleges that MGA and

10  Bryant concealed their wrongful acts.  But Mattel has produced substantial non-

11  privileged information regarding when Mattel learned of Bryant's wrongful conduct.

12  MGA thus already has sufficient information to litigate its statute of limitations and

13  laches defenses.  Here, MGA and Larian have produced *no* information regarding

14  what they asked or were told about the propriety of their actions -- information that is

15  necessary to assess their "good faith" defenses.  Moreover, Mattel has not raised its

16  alleged good intent as an affirmative defense or claim as MGA has.  Rather, Mattel

17  simply denies *MGA's* contentions that Mattel's claims are time barred.  See, e.g., Cox

18  v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1419 (11th Cir. 1994), cert

19  denied, 513 U.S. 1110 (1995) ("*Having gone beyond mere denial, affirmatively to*

20  *assert good faith*, USX injected the issue of its knowledge of the law into the case

21  and thereby waived the attorney-client privilege." (emphasis added)).  MGA has

22  impliedly waived the privilege; Mattel has not.

23

24

___

25  [50]  MGA's Fifth, Sixth and Eighteenth Affirmative Defenses, Amended Answer

26  and Affirmative Defenses of MGA Entertainment Inc., MGA Entertainment (HK)

    Limited, and MGAE de Mexico S.R.L. de C.V. to Mattel, Inc.'s Second Amended

27  Answer and Counterclaims, dated September 19, 2007, at pp. 22, 25, Smyth Dec.,

28  Exh. 4.

-14-

## Conclusion

For the foregoing reasons, Mattel respectfully requests that the Court enter an Order (1) finding that MGA and Isaac Larian have impliedly waived the attorney-client and work product privileges as to all documents, communications, and information related to advice they sought and/or received prior to April 27, 2004, regarding the legal propriety of MGA's contracting with Bryant, MGA's or Bryant's obligations to Mattel, and their subsequent copying, development, production and sales of Bratz, and (2) compelling MGA to produce the documents specified herein and overruling the instructions not to answer specified herein.

DATED:  January 23, 2008                QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By ___Dylan Proctor /885_____
      B. Dylan Proctor
      Attorneys for Plaintiff
      Mattel, Inc.

07209/2356870.1

MATTEL'S MOTION FOR ORDER FINDING IMPLIED WAIVER AND TO COMPEL DOCUMENTS

Exhibit _86_,
P. _180_

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action.  My business address is 865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543.

On January 23, 2008, I served true copies of the following document(s) described as **NOTICE OF MOTION AND MOTION OF PLAINTIFF MATTEL, INC. FOR ORDER FINDING WAIVER AND TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED; AND MEMORANDUM OF POINTS AND AUTHORITIES** on the parties in this action as follows:

John W. Keker, Esq.
Michael H. Page, Esq.
Christa M. Anderson, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA  94111

**BY FEDEX:**  I deposited such document(s) in a box or other facility regularly maintained by FedEx, or delivered such document(s) to a courier or driver authorized by FedEx to receive documents, in sealed envelope(s) or package(s) designated by FedEx with delivery fees paid or provided for, addressed to the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 23, 2008, at Los Angeles, California.

Rita Turner

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and not a party to the within action,  My business address is Apex Attorney Services, 1055 West Seventh Street, Suite 250, Los Angeles, CA 90017.

On January 23, 2008, I served true copies of the following document(s) described as **NOTICE OF MOTION AND MOTION OF PLAINTIFF MATTEL, INC. FOR ORDER FINDING WAIVER AND TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED; AND MEMORANDUM OF POINTS AND AUTHORITIES** on the parties in this action as follows:

Thomas J. Nolan, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
300 So. Grand Ave.
Suite 3400
Los Angeles CA  90071

Mark E. Overland, Esq.
David C. Scheper, Esq.
Alexander H. Cote, Esq.
Overland, Borenstein, Scheper & & Kim, LLP
300 S. Grand Avenue, Suite 2750
Los Angeles, CA  90071

**BY PERSONAL SERVICE:**  I delivered such envelope(s) by hand to the office of the person(s) being served.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 23, 2008, at Los Angeles, California.

_____

PROOFS OF SERVICE

Exhibit 86
P. 182

# Exhibit 87

*12*

Exhibit 81
P. 183

**David Rosenbaum**

| | |
|---|---|
| **From:** | Victoria O'Connor [VOConnor@mgae.com] |
| **Sent:** | Thursday, October 05, 2000 10:26 AM |
| **To:** | David Rosenbaum |
| **Subject:** | RE: In the interest of saving time |

I will as soon as I get it. Tomorrow I am receiving a license agreement for the Final Fantasy movie from Dan Kletzky over at ELA. He said you guys are friends.

-----Original Message-----
From: David Rosenbaum [mailto:drosenbaum@fpllaw.com]
Sent: Thursday, October 05, 2000 10:17 AM
To: 'Victoria O'Connor'
Subject: RE: In the interest of saving time

# REDACTED

Regards,
David S. Rosenbaum
Fischbach, Peristein & Lieberman, LLP
1875 Century Park East, Suite 850
Los Angeles, California 90067
Tel:310-556-1956
Fax:310-556-4617
e-mail: drosenbaum@fpllaw.com

This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately and return the original message to us at the above address. Thank you.

-----Original Message-----
From: Victoria O'Connor [mailto:VOConnor@mgae.com]
Sent: Wednesday, October 04, 2000 4:49 PM
To: David Rosenbaum
Subject: RE: In the interest of saving time

# REDACTED

-----Original Message-----
From: David Rosenbaum [mailto:drosenbaum@fpllaw.com]
Sent: Wednesday, October 04, 2000 4:20 PM
To: 'Victoria O'Connor'
Subject: RE: In the interest of saving time

1

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3708217

Exhibit 87
P. 184

REDACTED

Regards,
David S. Rosenbaum
Fischbach, Perlstein & Lieberman, LLP
1875 Century Park East, Suite 850
Los Angeles, California 90067
Tel:310-556-1956
Fax:310-556-4617
e-mail: drosenbaum@fpllaw.com

This message is intended for the use of the individual or entity to
which it is addressed and may contain information that is privileged,
confidential and exempt from disclosure under applicable law. If the
reader of this message is not the intended recipient, or the employee or
agent responsible for delivering the message to the intended recipient,
you are hereby notified that any dissemination, distribution or copying
of this communication is strictly prohibited. If you have received this
communication in error, please notify us immediately and return the
original message to us at the above address. Thank you.

-----Original Message-----
From: Victoria O'Connor [mailto:VOConnor@mgae.com]
Sent: Wednesday, October 04, 2000 3:52 PM
To: David Rosenbaum
Subject: In the interest of saving time

REDACTED

2

CONFIDENTIAL - ATTORNEYS' EYES ONLY

MGA 3708218

Exhibit 87
P. 185