# Exhibit 107

DALE M. CENDALI (admitted *pro hac vice*)
DAVID I. HURWITZ (S.B. #174632)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email:      dhurwitz@omm.com

PATRICIA GLASER (S.B. #55668)
CHRISTENSEN, GLASER, FINK,
JACOBS, WEIL & SHAPIRO, LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, CA 90067
Telephone: (310) 553-3000
Facsimile: (310) 557-9815

Attorneys for MGA Entertainment, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | Case No. CV 04-09049 SGL (RNBx) |
| Plaintiff, | **MGA ENTERTAINMENT, INC.'S NOTICE OF DEPOSITION OF MATTEL, INC. PURSUANT TO FED. R. CIV. P. 30(b)(6)** |
| v. | |
| MATTEL, INC., a Delaware Corporation, | |
| Defendant. | |
| CONSOLIDATED WITH | Judge: Hon. Stephen G. Larson |
| MATTEL, INC. v. BRYANT and | Date:                September 19, 2007 |
| MGA ENTERTAINMENT, INC. v. MATTEL, INC. | Discovery Cut-Off: March 3, 2008 |
| | Pretrial Conference: June 2, 2008 |
| | Trial Date:          July 1, 2008 |

Exhibit 107,
P. 370

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to the provisions of Federal Rule of Civil Procedure 30(b)(6), MGA Entertainment, Inc. ("MGA") will take the deposition upon oral examination of Mattel, Inc. ("Mattel") regarding the matters described below beginning on September 19, 2007, at 9:30 a.m., and continuing from day to day thereafter, excluding weekends and holidays, or as otherwise agreed by counsel, until completed.

The deposition will be held at the offices of O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, California 90071, telephone: (213) 430-6000. The deposition will be taken before a notary public or other officer authorized to administer oaths and will be recorded by stenographic, sound and visual means. The stenographic recordation method may provide for the instant visual display of the testimony at deposition. MATTEL shall designate one or more officers, directors, managing agents or other PERSONS who consent to testify on MATTEL's behalf, who shall testify as to matters known or reasonably available to MATTEL relating to the topics listed in Attachment A.

Dated: September 5, 2007

O'MELVENY & MYERS LLP

By _____
David Hurwitz
Attorneys for Plaintiff MGA
Entertainment, Inc.

# ATTACHMENT A

## DEFINITIONS

1.    "ACCELERACERS" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "AcceleRacerS," "Acceleracers," or "Accelleracers."

2.    "ACTION" shall mean this action consolidated under Case No. 04-9049 before the Hon. Stephen Larson and formerly *Mattel v. Bryant, Inc.,* first filed in Los Angeles County Superior Court; *Bryant v. Mattel, Inc.*; and *MGA Entm't, Inc. v. Mattel, Inc.*; and all counterclaims, cross-claims and defenses therein.

3.    "ADVERTISEMENT" means a commercial message or advertisement in any medium, including without limitation, television, radio, movies, magazines, newspapers, the Internet, signage, and billboards.

4.    "ALIEN RACERS" means and refers to each image, character, logo, doll, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license by MGA, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "Alien Racers."

5.    "BARBIE" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, theme, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "Barbie."

6.    "BRATZ" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, theme, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license by MGA, as part of a line of goods or merchandise commonly known

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 107,
P. 372

1    as, or sold and marketed under the name, "Bratz."

2         7.      "BRAWER" means Ron Brawer.

3         8.      "BRISBOIS" means Janine Brisbois.

4         9.      "BRYANT" means Carter Bryant.

5         10.     "CARU" shall mean and refer to the Children's Advertising Review

6    Unit of the Council of Better Business Bureaus, Inc. and any of its past or present

7    principals, directors, officers, agents, employees, representatives, consultants,

8    attorneys, entities and persons acting in joint-venture or partnership relationships

9    and all others acting on its behalf, pursuant to its authority or subject to its control.

10        11.     "COMMUNICATIONS" means any disclosure, transfer or exchange

11   of information between two or more PERSONS, whether orally or in writing,

12   including without limitation any conversation or discussion by means of meeting,

13   letter, telephone, note, memorandum, telex, telecopier, electronic mail, or any other

14   electronic or other medium.

15        12.     "COUNTERCLAIM[S]" means Mattel's Second Amended Answer in

16   Case No. 05-02727 and Counterclaims for: 1. Copyright Infringement; 2. Violation

17   of the Racketeer Influenced and Corrupt Organizations Act; 3. Conspiracy to

18   Violate the Racketeer Influenced and Corrupt Organizations Act; 4.

19   Misappropriation of Trade Secrets; 5. Breach of Contract; 6. Intentional

20   Interference with Contract; 7. Breach of Fiduciary Duty; 8. Aiding and Abetting

21   Breach of Fiduciary Duty; 9. Breach of Duty of Loyalty; 10. Aiding and Abetting

22   Breach of Duty of Loyalty; 11. Conversion; 12. Unfair Competition; and 13.

23   Declaratory Relief filed July 12, 2007.

24        13.     "COUNTER-DEFENDANTS" means MGA, LARIAN, BRYANT,

25   MGA HK, MGA MEXICO, MACHADO, and Does 4 through 10.

26        14.     "DIVA STARZ" means and refers to each image, character, logo, doll,

27   styling head, plush toy, toy, accessory, product, packaging or other thing or matter

28   that is or has ever been manufactured, marketed or sold by MATTEL, or others

A-2

Exhibit 107,
P. 373

1   under license by MATTEL, as part of a line of goods or merchandise commonly

2   known as, or sold and marketed under the name, "Diva Starz."

3       15.    "DOCUMENT[S]" incorporates the full meaning of Federal Rule of

4   Civil Procedure 24, and shall be construed in the broadest sense to mean any and all

5   writings, tangible things and property, of any kind, that are now or that have been in

6   YOUR actual or constructive possession, custody or control, including, but not

7   limited to, any handwritten, typewritten, printed, drawn, charted, taped, filmed,

8   punched, copied, recorded, transcribed, graphic or photographic matter of any kind

9   or nature, in, through, or from which information may be embodied, translated,

10  conveyed or stored, whether an original, a draft or copy, however produced or

11  reproduced, whether sent or received or neither, including, but not limited to, notes,

12  memoranda, correspondence, letters, facsimiles and facsimile transmittals, reports,

13  inter- and intra-office COMMUNICATIONS, work papers, work sheets, work

14  records, ledgers, graphs, indexes, advertisements, brochures, price lists, cost sheets,

15  estimating sheets, bills, bills of lading, bids, time cards, receipts, purchase orders,

16  telephone records, telegrams, telexes, literature, invoices, contracts, purchase

17  orders, estimates, recordings, transcriptions of recordings, records, books,

18  pamphlets, periodicals, publications, papers, tapes, DVDs, video CDs, video, audio

19  and digital recordings, television commercials, story boards, website or other spot

20  advertisements, movies, movie trailers, prototypes, samples, products, diaries,

21  calendars, charts, drawings, sketches, messages, photographs and data contained in

22  or accessible through any electronic data processing system, including, but not

23  limited to, computer databases, data sheets, data processing cards, computer files

24  and tapes, computer disks, CD-ROMs, computer meta-data, microfilm, microfiche,

25  electronic mail, website and web pages and transcriptions thereof and all other

26  memorializations of any conversations, meetings and conference, by telephone or

27  otherwise.  The term DOCUMENT also means every copy of a DOCUMENT,

28  where such copy is not an identical duplicate of the original, whether because of

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1  deletions, underlinings, showing of blind copies, initialing, signatures, receipt

2  stamps, comments, notations, differences in stationery or any other difference or

3  modification of any kind.

4      16.   "ELECTRONIC RECORDS" means electronic documents, data or

5  electronically stored information — including writings, drawings, graphs, charts,

6  photographs, sound recordings, images, and other data or data compilations stored

7  in any medium from which information can be obtained, including but not limited

8  to emails (Outlook, Exchange, etc.), word processing files (Word, WordPerfect,

9  etc.), spreadsheets (Excel, etc.), databases (Access, SQL, etc.), presentations

10  (PowerPoint, etc.), picture files (gif, tif, jpg, etc.), graphic files (DWG, PCX, EPS,

11  high or multi-dimension, etc.), audio files (wav, snd, rmp, etc.), video files (mpg,

12  mov, etc.),  or any other compilation of data used by YOU.

13      17.   "FLAVAS" means and refers to each image, character, logo, doll,

14  styling head, plush toy, toy, accessory, product, packaging or other thing or matter

15  that is or has ever been manufactured, marketed or sold by MATTEL, or others

16  under license by MATTEL, as part of a line of goods or merchandise commonly

17  known as, or sold and marketed under the name, "Flavas."

18      18.   "4-EVER BEST FRIENDS" means and refers to each image,

19  character, logo, doll, styling head, plush toy, toy, accessory, product, packaging or

20  other thing or matter that is or has ever been manufactured, marketed or sold by

21  MGA, or others under license by MGA, as part of a line of goods or merchandise

22  commonly known as, or sold and marketed under the name, "4-Ever Best Friends."

23      19.   "INITIAL DISCLOSURE WITNESS(ES)" means and refers to each

24  person listed in YOUR Consolidated Initial Disclosures, served on January 5, 2007.

25      20.   "LARIAN" means MGA's Chief Executive Officer, Isaac Larian.

26      21.   "LITTLE MOMMY" means and refers to each image, character, logo,

27  doll, styling head, plush toy, toy, accessory, product, packaging or other thing or

28  matter that is or has ever been manufactured, marketed or sold by MATTEL, or

A-4

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 107,
P. 375

1   others under license by MATTEL, as part of a line of goods or merchandise

2   commonly known as, or sold and marketed under the name, "Little Mommy."

3       22.   "MACHADO" means Carlos Gustavo Machado Gomez.

4       23.   "MATTEL," "YOU" and "YOUR" shall mean and refer to defendant

5   Mattel, Inc. and any of its past or present officers, directors, agents, employees,

6   representatives, consultants, attorneys, parents, subsidiaries, divisions, affiliates,

7   predecessors-in-interest and successors-in-interest, entities and persons acting in

8   joint venture or partnership relationships with MATTEL and any others acting on

9   MATTEL's behalf, pursuant to its authority or subject to its control.

10      24.   "MGA" shall mean and refer to plaintiff MGA Entertainment, Inc. and

11   any of its past or present officers, directors, agents, employees, representatives,

12   consultants, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-

13   interest (including ABC International Traders, Inc. and Micro Games of America,

14   Inc.) and successors-in-interest, entities and persons acting in joint venture or

15   partnership relationships with MGA and any others acting on MGA's behalf,

16   pursuant to its authority or subject to its control.

17      25.   MGA HK shall mean counter-defendant MGA Entertainment (HK)

18   Ltd. and any of its past or present officers, managers, agents, employees,

19   representatives, consultants, attorneys, divisions, affiliates, predecessors-in-interest

20   and successors-in-interest, entities and persons acting in joint venture or partnership

21   relationships with MGA HK and any others acting on MGA HK's behalf, pursuant

22   to its authority or subject to its control.

23      26.   MGA MEXICO shall mean counter-defendant MGAE de Mexico,

24   S.R.L. de C.V. and any of its past or present officers, managers, agents, employees,

25   representatives, consultants, attorneys, divisions, affiliates, predecessors-in-interest

26   and successors-in-interest, entities and persons acting in joint venture or partnership

27   relationships with MGA MEXICO and any others acting on MGA MEXICO's

28   behalf, pursuant to its authority or subject to its control.

A-5

27.    "MOMMY'S LITTLE..." means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MGA, or others under license by MGA, as part of a line of goods or merchandise commonly known as, or sold and marketed under the names beginning with, "Mommy's Little...," including but not limited to the phrase "Mommy's Little Patient."

28.    "MY SCENE" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, theme, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name, "My Scene."

29.    "MY SCENE THEMES" means and refers to the following themes for MY SCENE products: "Chillin Out!," "Night on the Town," "Jammin' in Jamaica," and "My Bling Bling."

30.    "NPD" shall mean and refer to The NPD Group, Inc. and NPD Funworld, and any of their past or present principals, directors, officers, agents, employees, representatives, consultants, attorneys, entities and persons acting in joint-venture or partnership relationships and all others acting on their behalf, pursuant to its authority or subject to its control.

31.    "PERSON" or "PERSONS" means all natural persons, partnerships, corporations, joint ventures and any kind of business, legal or public entity or organization, as well as its, his or her agents, representatives, employees, officers and directors and any one else acting on its, his or her behalf, pursuant to its, his or her authority or subject to its, his or her control.

32.    "POLLY POCKET" means and refers to each image, character, logo, doll, styling head, plush toy, toy, accessory, product, theme, packaging or other thing or matter that is or has ever been manufactured, marketed or sold by MATTEL, or others under license by MATTEL, as part of a line of goods or

A-6

Exhibit _107_,
P. _377_

1  merchandise commonly known as, or sold and marketed under the name, "Polly

2  Pocket."

3      33.    The terms "RELATE TO" and "REFER TO" should each be construed

4  in the broadest possible sense to mean concerning, consisting of, referring to,

5  describing, discussing, constituting, evidencing, containing, reflecting, mentioning,

6  pertaining to, citing, summarizing, analyzing or bearing any logical or factual

7  connection with the matter discussed.

8      34.    "RELEVANT TIME PERIOD" means the period from January 1,

9  1998 through the present.

10      35.    "TIA" shall mean and refer to the Toy Industry Association, Inc., and

11  any of its past or present principals, directors, officers, agents, employees,

12  representatives, consultants, attorneys, entities and persons acting in joint-venture

13  or partnership relationships and all others acting on its behalf, pursuant to its

14  authority or subject to its control.

15      36.    "TREANTAFELLES" means Paula (Treantafelles) Garcia, currently

16  MGA's Vice President of Product Design and Development.

17      37.    "TRUEBA" means Mariana Trueba Alamada.

18      38.    "VARGAS" means Pablo Vargas San Jose.

19      39.    "WEE 3 FRIENDS" means and refers to each image, character, logo,

20  doll, styling head, plush toy, toy, accessory, product, packaging or other thing or

21  matter that is or has ever been manufactured, marketed or sold by MATTEL, or

22  others under license by MATTEL, as part of a line of goods or merchandise

23  commonly known as, or sold and marketed under the name, "Wee 3 Friends."

24      40.    "WSJ REPORTERS" means and refers to any current or former

25  reporters for the *Wall Street Journal* (including, but not limited to, Maureen

26  Tkacik) and any of their agents, assistants, investigators, employees, or

27  representatives.

28      41.    "WSJ STATEMENTS" means and refers to any and all of the

1  following statements that appeared in the *Wall Street Journal* article, dated July 18,

2  2003, entitled "Dolled Up: To Lure Older Girls, Mattel Brings in Hip-Hop Crowd":

3  ....Inside Mattel, some are convinced the Bratz borrow liberally from a
    Mattel project that was scrapped at the testing stage in 1998....

4  Mr. Bryant didn't work on the line that Mattel scrapped, according to
5  former and current Mattel designers.  But most Barbie designers had
6  seen the prototypes, his former colleagues say. ...

7  The Mattel doll line that was scrapped wasn't exactly like the Bratz,
   says a longtime Mattel designer who worked on the project.  But the
8  Bratz's oversized heads -- with their pursed lips and cartoonish eyes --
9  are "virtually identical" to the heads of the dolls her team created, says
   the designer, who left Mattel in 2001.

10  Lily Martinez, a designer who still works at Mattel, came up with the
11  idea for the big doll heads for Mattel, colleagues say. ... She even
    posted her sketch on her cubicle, colleagues say.  "Anyone who passed
12  by her cubicle would see the picture up on the wall," says another
13  designer who also left Mattel in 2001.  "The big heads, the big eyes,
    the big feet -- they were all the same" as the Bratz.
14

15  The Mattel dolls were scrapped in testing, current and former
    designers say, because Mattel had strict quotas that allowed only one
16  "flanker brand" -- that is, a brand that would compete with Barbie for
17  shelf space -- on the market at a time.  At the time, Mattel chose a
    product called "What's Her Face" -- a doll with a blank face on which
18  kids could draw expressions. ...

19  ## EXAMINATION TOPICS

20  1.  MGA's and MGA MEXICO's alleged theft and use of, or direction of

21  others to steal and use on MGA's or MGA MEXICO's behalf, MATTEL's trade

22  secrets in Mexico as alleged in paragraphs 37-54 of YOUR COUNTERCLAIMS,

23  including but not limited to (a) any trade secrets or confidential or proprietary

24  information of MATTEL stolen or used by MGA or MGA MEXICO; (b) MGA and

25  LARIAN's alleged enticement and direction of MACHADO, VARGAS or

26  TRUEBA to steal MATTEL's trade secrets; (c) the specific DOCUMENTS and

27  data allegedly copied, taken, accessed or modified by MACHADO, VARGAS, or

28  TRUEBA; (d) YOUR policies and procedures for protecting the confidentiality of

A-8

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1   the DOCUMENTS and data YOU contend were improperly taken by MACHADO,

2   TRUEBA or VARGAS; (e) the factual basis of YOUR information and belief that

3   MACHADO, TRUEBA or VARGAS delivered an internal line list to LARIAN or

4   another MGA officer as alleged in paragraph 49 of YOUR COUNTERCLAIMS;

5   (f) YOUR knowledge of any use of the allegedly misappropriated information by

6   MGA for unfair advantage in the United States and Mexico as alleged in paragraph

7   50 of YOUR COUNTERCLAIMS; (g) alleged efforts by MACHADO, TRUEBA

8   and VARGAS to conceal their alleged theft as alleged in paragraph 51 of YOUR

9   COUNTERCLAIMS; (h) YOUR investigation of facts and circumstances

10  concerning the departure of MACHADO, VARGAS or TRUEBA from MATTEL

11  and the alleged theft and use, including any proof of actual use by them or MGA

12  MEXICO, of MATTEL trade secrets in Mexico; (i) when YOU first learned the

13  facts and circumstances alleged in paragraphs 37-54 of YOUR

14  COUNTERCLAIMS; (j) YOUR and YOUR agents' and attorneys' roles in,

15  participation in or knowledge of any and all investigations by Mexican government

16  authorities as alleged in paragraph 53 of YOUR COUNTERCLAIMS; and (n)

17  YOUR knowledge of COMMUNICATIONS between MGA, LARIAN, or other

18  MGA or MGA MEXICO employees or agents on the one hand and MACHADO,

19  VARGAS or TRUEBA on the other hand, including but not limited to the

20  recruitment and hiring MACHADO, VARGAS or TRUEBA and the use of "Plot

21  04" email account.

22        2.    MGA's alleged hiring of BRAWER to facilitate its theft and use,

23  including any proof of actual use, of MATTEL's business methods and practices as

24  alleged in paragraphs 55-69 of YOUR COUNTERCLAIMS, including but not

25  limited to (a) the specific confidential and proprietary information YOU contend

26  that BRAWER took from MATTEL as alleged in 68-69 of YOUR

27  COUNTERCLAIMS; (b) BRAWER's Employee Invention and Trade Secret

28  Agreement with Tyco; (c) BRAWER's access to confidential information about

1    Mattel and its business; (d) YOUR COMMUNICATIONS with BRAWER

2    concerning MATTEL's Code of Conduct and protecting MATTEL's confidential

3    and proprietary business information; (e) the contents of the cardboard box

4    allegedly carried by BRAWER out of MATTEL's offices on September 15, 2004

5    as alleged in paragraph 62 of YOUR COUNTERCLAIMS; (f) the taking by

6    BRAWER of the 2004 sales plan for one of MATTEL's significant customers as

7    alleged in paragraph 62 of YOUR COUNTERCLAIMS; (g) YOUR

8    COMMUNICATIONS with BRAWER during his exit interview; (h) when YOU

9    first learned the facts and circumstances alleged in paragraphs 55-69 of YOUR

10    COUNTERCLAIMS; (i) YOUR investigation of facts and circumstances

11    concerning BRAWER's departure from MATTEL and BRAWER's alleged theft

12    and use of MATTEL's highly valuable business methods and practices; and (j)

13    BRAWER's alleged targeting of and COMMUNICATIONS with MATTEL

14    employees in an effort to induce them to join MGA and misappropriate confidential

15    MATTEL information as alleged in paragraph 69 of YOUR COUNTERCLAIMS,

16    including the IDENTITIES of the MATTEL employees contacted by BRAWER

17    and YOUR knowledge of the substance of those COMMUNICATIONS.

18         3.    MGA's alleged theft and actual use of, or direction of others to steal

19    and use on MGA's behalf, MATTEL's trade secrets in Canada as alleged in

20    paragraphs 70-76 of YOUR COUNTERCLAIMS, including (a) the specific

21    DOCUMENTS and data allegedly copied, taken, accessed or modified by

22    BRISBOIS; (b) when YOU first learned the facts and circumstances alleged in

23    paragraphs 70-76 of YOUR COUNTERCLAIMS; and (c) YOUR investigation of

24    facts and circumstances concerning BRISBOIS's departure from MATTEL and

25    alleged theft and use of, including any proof of actual use by MGA of, MATTEL

26    trade secrets in Canada, including MATTEL's participation in any investigation by

27    Canadian government authorities.

28

A-10

1    4.    Any other instances where YOU contend that MGA misappropriated

2    or attempted to misappropriate MATTEL trade secrets for the benefit of MGA, or

3    persuaded MATTEL employees to join MGA to misappropriate MATTEL trade

4    secrets as alleged in paragraph 77 of YOUR COUNTERCLAIMS, including (a) the

5    IDENTITY of all former MATTEL employees who allegedly copied, took,

6    accessed, modified or actually used MATTEL confidential information; (b)

7    confidential information or trade secrets allegedly copied and taken from

8    MATTEL; (c) MATTEL confidential information or trade secrets allegedly

9    disclosed to and used by MGA; (d) when each theft occurred; (e) when MATTEL

10   first learned of each theft or attempted theft; and (f) what MATTEL did in response

11   to each theft or attempted theft.

12    5.    The IDENTITY, origin, source, meaning and authenticity of all

13   materials YOU contend were MATTEL trade secrets improperly taken by

14   employees of MGA, including M0019162-M0032318, M0059836-M0059836,

15   M0074952-M0074961, and M0075253-M0076446 and YOUR policies and

16   procedures for protecting the confidentiality of the DOCUMENTS YOU contend

17   were MATTEL trade secrets improperly taken by employees of MGA.

18    6.    LARIAN's alleged misrepresentations to retailers about MATTEL's

19   and MGA's products, as alleged in paragraphs 78-81 of YOUR

20   COUNTERCLAIMS, including (a) the customers and retailers to whom YOU

21   allege LARIAN made false representations; (b) the retailer who cancelled and

22   subsequently reinstated its order for 75,000 units of MY SCENE BLING BLING

23   product; (c) the alleged false and misleading press releases; and (d) YOUR

24   COMMUNICATIONS with any retailers concerning the alleged statements by

25   LARIAN.

26    7.    YOUR knowledge of all acts YOU contend are the predicate acts

27   constituting a pattern of racketeering activity in violation of RICO as alleged in

28

1  paragraph 93 of YOUR COUNTERCLAIMS and Exhibit C to YOUR

2  COUNTERCLAIMS.

3       8.    Any injury or damages suffered by MATTEL resulting from the acts

4  alleged in MATTEL's COUNTERCLAIMS.

5       9.    MGA's alleged theft of "BRATZ" from YOU, including but not

6  limited to (a) MGA's showing of BRATZ prototypes or products to focus groups

7  and retailers in November 2000 as alleged in paragraph 29 of YOUR

8  COUNTERCLAIMS; (b) MGA's and LARIAN's alleged encouragement, aiding,

9  and financing of BRYANT to develop BRATZ while he was a MATTEL employee

10  as alleged in paragraph 33 of YOUR COUNTERCLAIMS; and (c) BRYANT's and

11  MGA's alleged concealment of facts that prevented MATTEL from discovering

12  that MATTEL allegedly was the true owner of BRATZ as alleged in paragraph 35

13  of YOUR COUNTERCLAIMS.

14       10.    COMMUNICATIONS between YOU (including YOUR agents and

15  attorneys) and law enforcement authorities in Mexico, Canada or the United States,

16  including but not limited to the United States Attorney's Office, the Department of

17  Justice and any national, federal, regional, state, provincial, or local authorities,

18  concerning any of the allegations in YOUR COUNTERCLAIMS or any other

19  alleged taking of confidential MATTEL information by MGA or persons currently

20  or formerly employed by MGA, including MACHADO, VARGAS, TRUEBA,

21  BRISBOIS, and Jorge Castilla, and DOCUMENTS YOU or YOUR agents or

22  attorneys provided to such law enforcement authorities.

23       11.    MATTEL's knowledge or information about the involvement of

24  BRYANT or any person then employed by MATTEL (directly or via a temporary

25  employment agency), in the origin, creation, design or and development of BRATZ,

26  including, but not limited to (a) when MATTEL first learned about BRYANT's

27  involvement with the origin and development of BRATZ; and (b) who at MATTEL

28  knew about the involvement of BRYANT or any person then employed by

A-12

Exhibit 107,
P. 383

1  MATTEL with the origin, creation, design or development of BRATZ, and when

2  and how each individual came to possess such knowledge or information.

3      12.    The use of any MATTEL materials, property or resources by

4  BRYANT or any person then employed by MATTEL (directly or via a temporary

5  employment agency) in connection with creation, design, or development of the

6  original or first wave of BRATZ fashion dolls and accessories introduced in the

7  U.S. in the summer of 2001, including, without limitation (a) PERSONS allegedly

8  involved in putting together the three dimensional dummy used by BRYANT in

9  meeting with MGA; and (b) the specific MATTEL materials, property or resources

10  allegedly used in putting together the three dimensional dummy used by BRYANT

11  in meeting with MGA.

12      13.    MATTEL's knowledge about BRYANT's performance of services for

13  MGA, including, without limitation (a) when and how MATTEL first learned about

14  BRYANT's performance of any services for MGA; (b) when and how MATTEL

15  first learned about the first instance of BRYANT's performance of services for

16  MGA; and (c) who at MATTEL knew about BRYANT's performance of any

17  services for MGA.

18      14.    MATTEL's knowledge about BRYANT's contacts with MGA,

19  including, without limitation (a) when and how MATTEL first learned of any

20  contacts BRYANT had with MGA; (b) when and how MATTEL first learned of the

21  first contact BRYANT had with MGA; and (c) who at MATTEL knew about

22  BRYANT's contacts with MGA.

23      15.    MATTEL's knowledge of BRYANT's contract with MGA, including

24  without limitation (a) when, how and who at MATTEL first became aware of its

25  existence; (b) when MATTEL first became aware of its terms; and (c) when

26  MATTEL or its agents first obtained a copy of the contract.

27      16.    The WSJ STATEMENTS, including, but not limited to (a) YOUR

28  knowledge of who made the WSJ STATEMENTS, or provided any of the

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 107,
P. 384

1    information contained in the WSJ STATEMENTS, to any WSJ REPORTERS;

2    (b) the identity of all fashion doll or doll designers who left MATTEL in 2001;

3    (c) any efforts by YOU to facilitate the publication of the WSJ STATEMENTS,

4    including, but not limited to, assisting a WSJ REPORTER to obtain the WSJ

5    STATEMENTS or the information contained in the WSJ STATEMENTS, to

6    identify people for WSJ REPORTERS to contact and interview, and to verify the

7    WSJ STATEMENTS or the information contained in the WSJ STATEMENTS;

8    (d) when YOU first learned or became aware of the WSJ STATEMENTS;

9    (e) YOUR response or reaction to the WSJ STATEMENTS after YOU first learned

10    or became aware of them; (f) any actions taken by YOU (including, but not limited

11    to, any investigation or interviews) in response to the WSJ STATEMENTS; and

12    (g) COMMUNICATIONS among MATTEL employees regarding the WSJ

13    STATEMENTS.

14        17.    MATTEL's internal and external investigations of the facts related to

15    this ACTION, including, but not limited to (a) investigations of or concerning

16    BRYANT, Richard Irmen, BRYANT's family, LARIAN, LARIAN's family,

17    MGA, MGA's current and former officers and employees, BRAWER, Farhad

18    (Fred) Larian, Shirin Larian Makabi; Shirin Salemnia, Holly Stinnett, Tina Patel,

19    Mercedeh Ward, Anna Rhee, Veronica Marlowe, Margaret Leahy, Thomas Park,

20    and Jahangir Makabi; (b) surveillance of BRYANT, Richard Irmen, BRYANT's

21    family, LARIAN, LARIAN's family, MGA, MGA's current and former officers

22    and employees, BRAWER, Farhad (Fred) Larian, Shirin Larian Makabi; Shirin

23    Salemnia, Holly Stinnett, Tina Patel, Mercedeh Ward, Anna Rhee, Veronica

24    Marlowe, Margaret Leahy, Thomas Park, and Jahangir Makabi, including the dates

25    and times of surveillance, and the identities of the persons who conducted such

26    surveillance; (c) written or recorded statements; (d) the origin, source, meaning and

27    authenticity of DOCUMENTS produced in this ACTION from YOUR Global

28    Security department files.

1       18.    YOUR policies and practices concerning interviews and investigations

2   of employees who leave MATTEL to work for competitors, including but not

3   limited to MGA, and YOUR knowledge of the reason(s) why each of your

4   employees, including but not limited to the following former employees or

5   contractors ceased working for MATTEL or a MATTEL subsidiary to work for

6   MGA or an MGA subsidiary as employees or contractors, including what YOU

7   learned through exit interviews:  BRAWER; BRISBOIS; MACHADO; VARGAS;

8   TRUEBA; Eve Bennett; Kami Gilmour; Sarah Halpern; Margaret Leahy; Veronica

9   Marlowe; Maureen Mullen; Amy Myer; Anna Rhee; TREANTAFELLES; Odette

10  Vandenburg; Mercedeh Ward; Daniel Cooney; Janet Han; Steve Chang; Lui

11  Domingo; Pui Pootipong; Ellen Komatsu; Shirin Salemnia; Joe Feldman; Ricardo

12  Abundis; Ian Bate; Nanette Black; John E. Bloodworth III; Kevin Bloomfield;

13  Jorge Castilla; Suzy Chang; Steve Cheng; Gerry Cody Jr.; Nick Contreras; Maria

14  De La Cruz; Karen Dixon; Greg Paul Dominguez; Craig Forrest; Mia Garcia;

15  Eduardo Gonzalez; Tracy Hall; Melody Hansen; Todd Hansen; Jill Hatch; Michael

16  Hinh; Janet Hsu; Alice Kao; Ken Kaufman; Pamela Keller; Alejandro Gabriel

17  Keossian; Joyce Kim (Lee); Young Ran Kim; Kristen Kirst; Jill Larson; Adrian

18  (Chi Shing) Law; Bo Lumabao; Dorothy Marks; Raymond John Martin; Aye Aye

19  Min; Yumi Nakamura; Marvin Natareno; Christine Nigoghossian; Amelia Ivy

20  Arafiles Palijo; Danny Pestonji; Denise Phelan; Michael Pickard; Ronald Rae;

21  Leland Ratleff; Desiree Elisabeth Ronquillo; Micaela Ruiz; Natasha Sasic-Koetsier;

22  Maria Elena Salazar; Harvey Scott; Steffen J. Smith; Jier Su; Dennis Soai; Marla

23  Thompson; Chau Ngoc Tran; Esteban Umana; Gail Upshaw; Chang-Chin Wang;

24  Lance Ward; Dawn Whittaker; Jenny Wong; Troy Augborne; Carter Bryant; Reyna

25  Zetino; Daryoush Aryapour; Janet Blaser; Mari Joanne Bower Violette; Lilia

26  Brown; Gabriella Burlando; Fabienne Chonavel; Christine Dailey; Steve Feicht;

27  Christopher Hardouin; Martin Hitch; Jeff Ho; James Huntley; Randi Kagan;

28  Andreas Koch; Lyn Carol Mayer; Susan McBride; Frank Mils; Xuanlan Nguyen;

1  Gary Thomas O'Brien; Jose Otero; Dan Owen; Nicolletta Parasole; Ana Mancia

2  Parkinson; Roger Rambeau; Wendy Reed; Scot Anthony Reyes; Lon Ross; Dena

3  Schwartz; Brandi Shaver; Holly Stinnett; Lisa Tawil; Gord Terry; Joseph Whitaker;

4  Patrick Williams; Tong Wong; Cherrise Wright; Dave Zbojniewicz; Lourdes

5  Aguilar; Juan Carlos Virrueta Camacho; Alejandro Gurza Romay; Lidia Ivete

6  Montero Leyva; Laura Ochoa; Andrea Ramirez.

7       19.    BRYANT's relationship or contacts with TREANTAFELLES during

8  the time they were both employed at MATTEL, including, but not limited to: (a)

9  YOUR knowledge of whether BRYANT's workspace was next to or near

10 TREANTAFELLES' workspace, and, if so, exactly when and for how long; (b)

11 YOUR knowledge of whether BRYANT and TREANTAFELLES worked together

12 on any projects for MATTEL and, if so, during what time period(s) and specific

13 projects; (c) YOUR knowledge of whether BRYANT and TREANTAFELLES

14 were social acquaintances and, if so, during what time period(s); and (d) any

15 evidence that supports YOUR contention that BRYANT and TREANTAFELLES

16 knew each other during the time they were both employed at MATTEL (including,

17 but not limited to, that they had workspaces near or next to each other, worked on

18 projects together, and/or were social acquaintances), including, but not limited to,

19 any documentary evidence and potential witnesses.

20       20.    The floor plan and seating chart for MATTEL's offices in El Segundo,

21 California in 1999 and 2000, specifically the Design Center and the work spaces of

22 BRYANT, including the origin, source, authenticity, meaning and use of

23 DOCUMENTS produced by MATTEL as M13361-M13368, including M13365A,

24 and the physical proximity of the work spaces of BRYANT and other MATTEL

25 current or former employees, contract workers or PERSONS working for or at

26 MATTEL, including without limitation TREANTAFELLES, Rene Pasko, Lily

27 Martinez, Kislap Ongchangko, Joni Pratt, Barbara Miller, Maureen Mullen and any

28 other PERSON MATTEL claims had confidential information accessed by Bryant

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 107,
P. 387

1    or MGA (including any current or former employees who were employees, contract

2    workers or vendors of MATTEL at the relevant time).

3         21.    YOUR COMMUNICATIONS and COMMUNICATIONS made on

4    YOUR behalf with Anna Rhee that refer or relate to BRATZ, MGA, BRYANT or

5    Elise Cloonan, including the COMMUNICATIONS with Anna Rhee's counsel and

6    YOUR contacts with Anna Rhee, including but not limited to when she began

7    working for or with MATTEL, what projects she worked on for MATTEL and the

8    dates of such work, and payments made by MATTEL to her.

9         22.    YOUR COMMUNICATIONS and COMMUNICATIONS made on

10    YOUR behalf with Steve Linker that refer or relate to BRATZ, MGA, BRYANT,

11    this ACTION or the asserted or potential allegations or defenses therein, any

12    witnesses in this ACTION, and DOCUMENTS that refer or pertain to any of the

13    above subjects, and YOUR contacts with Steve Linker, including but not limited to

14    when he began working for or with MATTEL, the projects on which he worked for

15    MATTEL and the dates of such work, and payments made by MATTEL to him,

16    and DOCUMENTS that refer or pertain to any of the above subjects.

17         23.    YOUR COMMUNICATIONS and COMMUNICATIONS made on

18    YOUR behalf with Matt Bousquette, Elise Cloonan, David Dees, Sara Halpern,

19    Margaret Hatch aka Margaret Leahy, Rachel Harris, Liz Hogan, Andreas Koch,

20    Steve Linker, Kris Lynch, Veronica Marlowe, Len Mazzocco, Maureen Mullen

21    Chianese, Billy Ragsdale, Wendy Ragsdale, Brian Schmidt, Cassidy Park, Pam

22    Peretz, Jesse Ramirez and Ivy Ross, or any current or former MGA employee or

23    person you know or believe to be a current or former MGA freelancer, where the

24    COMMUNICATIONS refer or relate to BRATZ, MGA, BRYANT, this ACTION

25    or the asserted or potential allegations or defenses therein, any witnesses in this

26    ACTION, and DOCUMENTS that refer or pertain to any of the above subjects.

27

28

A-17

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

24.   . The process(es) by which MATTEL evaluates and approves ideas for new fashion dolls, including, but not limited to, any changes to such process(es) after BRATZ dolls were released in 2001.

25.   MATTEL'S hiring and recruiting practices, including its practices of recruiting and hiring PERSONS who have been employed by MATTEL competitors, including, but not limited to, MGA, Hasbro, Leap Frog, Jakks Pacific, Maui Toys, Malibu Toys, Galoob Toys, the number of such people MATTEL has hired since 1998, and YOUR efforts to ensure that new employees did not bring confidential information from their former employers.

26.   For each and every agreement requested by MATTEL concerning confidentiality, ownership of intellectual property, and/or any post-employment restrictions or obligations to MATTEL, the number, percentage, and identity of MATTEL employees who have refused to sign such agreement(s) since 1998.

27.   The circumstances under which BRYANT testified in September 2003 in the lawsuit brought by Gunther Wahl against MATTEL, including when and what any individual, including MATTEL'S in-house and outside counsel with direct or supervisory responsibility for this litigation, knew of BRYANT'S anticipated appearance and testimony and the role that appearance and testimony played in the timing of MATTEL'S lawsuit against BRYANT.

28.   The identity of, and the sales, revenues, and profits of, any MATTEL product(s) MATTEL contends have been impacted by BRATZ, including, but not limited to, BARBIE, DIVA STARZ, FLAVAS and MY SCENE, and any accessories, and licensed products, from 1990 to the present.

29.   The impact BRATZ has had, if any, on the sales and sales revenues of any Mattel product(s), including but not limited to BARBIE, DIVA STARZ, FLAVAS, any accessories and licensed products, and any product not listed herein that Mattel claims have been impacted by BRATZ.

1    30.    The net worth or value of MATTEL'S "BARBIE" brand, including,

2   but not limited to, its "My Scene" "Barbie" line of products, from 1990 to the

3   present.

4    31.    The INITIAL DISCLOSURE WITNESSES, including, but not limited

5   to:  (a) the specific knowledge or information relevant to YOUR allegations and

6   defenses that YOU believe each INITIAL DISCLOSURE WITNESS possesses; (b)

7   YOUR COMMUNICATIONS with each INITIAL DISCLOSURE WITNESS

8   about the subject matters YOU identified in YOUR Consolidated Initial

9   Disclosures; (c) YOUR COMMUNICATIONS with any PERSON concerning each

10  INITIAL DISCLOSURE WITNESS' knowledge of the subject matters YOU

11  identified in YOUR Consolidated Initial Disclosures; and (d) any DOCUMENTS

12  pertaining to information known by each INITIAL DISCLOSURE WITNESS

13  about the subject matters YOU identified in YOUR Consolidated Initial

14  Disclosures.

15    32.    YOUR awareness of and response to "BRATZ," including, but not

16  limited to: (a) YOUR reaction to "BRATZ" fashion dolls when they were first

17  released in 2001; (b) when and why YOU first began to consider "BRATZ" a

18  competitive threat to YOUR business; (c) YOUR strategies and efforts to compete

19  with "BRATZ" since its release in 2001, including, but not limited to, (i) the

20  creation, development, and release of "FLAVAS"; (ii) the redesign of "DIVA

21  STARZ"; (iii) the creation, development, and release of "MY SCENE"; (iv) the

22  origin, source, meaning and authenticity of the "Bratz Brief" produced in this

23  ACTION at M 0079765-71; (v) the origin, source, meaning and authenticity of the

24  Wal-Mart Hotline Report produced at M0080622-23; and (vi) the origin, source,

25  meaning and authenticity of the "WWBD: What Would Brawer Do?" document

26  produced at M0047508; (vii) the origin, source, meaning and authenticity of notes

27  produced at PMH 2273, 2379-83, 1303-07, 2122-27, 2242-59, 2147-49 and any

28  meeting(s) at which these notes were taken; and (viii) the origin, source, meaning

1    and authenticity of Board of Directors Update, dated September 2005, produced at

2    M0093291-93314; and (d) the extent to which "BRATZ" products are present at

3    YOUR offices, including, but not limited to, (i) the current and former MATTEL

4    employees who have or have had "BRATZ" products in their offices or

5    workspaces; and (ii) whether or not YOU have a room or area in YOUR offices

6    dedicated to "BRATZ" products.

7         33.   "MY SCENE," including, but not limited to: (a) the origins or sources

8    of inspiration of the "MY SCENE" female fashion dolls and packaging, including,

9    without limitation, (i) the purpose for which "MY SCENE" fashion dolls and

10   packaging were created; and (ii) the extent to which "BRATZ" fashion dolls and

11   packaging were an inspiration or factor in the development of "MY SCENE"

12   fashion dolls and packaging; (b) any changes to the appearance of the "MY

13   SCENE" female fashion dolls and packaging (including, but not limited to, any

14   changes to the head sculpts, facial features, or face painting) since their initial

15   release; (c) "MyScene Platypus" and the origin, source, meaning and authenticity of

16   the document produced at M0086367-M0086428; (d) the origins or sources of

17   inspiration for the MY SCENE THEMES and the extent to which any "BRATZ"

18   themes were an inspiration or factor in their development; (e) the origins or sources

19   of inspiration for the "MY SCENE" styling heads and the extent to which any

20   "BRATZ" "Funky Fashion Makeover Heads" were an inspiration or factor in their

21   development; (f) the origins or sources of inspiration for the "MY SCENE" plush

22   pets and packaging and the extent to which any "BRATZ PETZ" and packaging

23   was an inspiration or factor in their development; (g) marketing strategies and

24   consumer demographics for "MY SCENE"; and (h) the selection, approval process,

25   design and development of "MY SCENE" products and themes (including timing

26   and release dates).

27        34.   "WEE 3 FRIENDS," including, but not limited to (a) the origins or

28   sources of inspiration of "WEE 3 FRIENDS" and the extent to which "4-EVER

1   BEST FRIENDS" was an inspiration or factor in the development; and

2   (b) marketing strategies and consumer demographics for "WEE 3 FRIENDS"; and

3   (c) the selection, approval process, design and development of "WEE 3 FRIENDS"

4   (including timing and release dates).

5       35.   "LITTLE MOMMY," including but not limited to (a) the origins or

6   sources of inspiration of "LITTLE MOMMY" and the extent to which

7   "MOMMY'S LITTLE…" was an inspiration or factor in the development of

8   "LITTLE MOMMY"; (b) marketing strategies and consumer demographics for

9   "LITTLE MOMMY"; and (c) the selection, approval process, design and

10  development of "LITTLE MOMMY" (including timing and release dates).

11      36.   "ACCELERACERS," including, but not limited to (a) the origins or

12  sources of inspiration of "ACCELERACERS" and whether "ALIEN RACERS"

13  was a source of inspiration for or factor in the development of ACCELERACERS;

14  (b) YOUR decision re-brand one of YOUR "Hot Wheels" toy lines

15  "ACCELERACERS"; (c) marketing strategies and consumer demographics for

16  "ACCELERACERS"; and (d) the selection, approval process, design and

17  development of "ACCELERACERS" (including timing and release dates).

18      37.   "DIVA STARZ," including, but not limited to (a) the origins or

19  sources of inspiration of YOUR tag line "Do you have a passion for fashion?" and

20  the extent to which MGA's tag line "The Girls with a Passion for Fashion" was an

21  inspiration or factor; (b) the origins or sources of inspiration of the redesign of

22  "DIVA STARZ" fashion dolls including, without limitation, (i) the purpose for

23  which the redesigned "DIVA STARZ" products were created; and (ii) the extent to

24  which "BRATZ" was an inspiration or factor in the development of the redesigned

25  "DIVA STARZ"; (c) marketing strategies and consumer demographics for "DIVA

26  STARZ"; and (d) the selection, approval process, design and development of

27  "DIVA STARZ" (including timing and release dates).

28      38.   "FLAVAS," including, but not limited to (a) the origins or sources of

A-21

1    inspiration of "FLAVAS" and the extent to which "BRATZ" was an inspiration or

2    factor in the development of "FLAVAS"; (b) marketing strategies and consumer

3    demographics for "FLAVAS"; and (c) the selection, approval process, design and

4    development of "FLAVAS" (including timing and release dates).

5         39.   To the extent not covered by any of the topics above, the identity of

6    any product, project or concept that YOU contend MGA copied or infringed or

7    about which YOU contend that MGA misappropriated MATTEL's trade secrets or

8    other confidential information, and, for each such product, project or concept, (a)

9    all facts concerning its origin, creation, design and development; and (b) any facts

10   underlying YOUR claim or contention that MGA copied or infringed such product,

11   project or concept; and (c) MGA's use of MATTEL'S intellectual property,

12   confidential information or trade secret information in connection therewith.

13        40.   MATTEL's advertising, promotion, and licensing of MY SCENE,

14   BARBIE and DIVA STARZ, including but not limited to any direction or

15   information provided by or from any MATTEL employee to any MATTEL

16   advertising firm, public relations or publicity firm, or licensee concerning any

17   MGA products or advertising.

18        41.   The names, locations, job descriptions and length of employment of

19   current and former MATTEL employees and independent contractors responsible

20   for, who contributed to or who were involved in any aspect of the creation,

21   marketing, sales, design, and development of "MY SCENE," "WEE 3 FRIENDS,"

22   "LITTLE MOMMY," "ACCELERACERS," "DIVA STARZ," and "FLAVAS."

23        42.   Legal actions and claims regarding "MY SCENE" and/or "DIVA

24   STARZ," including, without limitation, any lawsuits, claims, or cease and desist

25   letters that (a) YOU have asserted against any PERSON regarding such PERSON's

26   alleged infringement of "MY SCENE" or "DIVA STARZ" or (b) any PERSON has

27   asserted against YOU that "MY SCENE" or "DIVA STARZ" infringes such

28   PERSON's intellectual property rights.

A-22

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit 107,
P. 393

43.     YOUR claimed intellectual property rights in "MY SCENE" and "DIVA STARZ," including, without limitation, (a) any applications for registration and registration for copyright, patent, trademark, or any other right sought or obtained by YOU, and any COMMUNICATIONS pertaining thereto; and (b) any trademark searches performed in connection with the selection of the "MY SCENE" or "DIVA STARZ" names.

44.     Any evidence of confusion among consumers, retailers, licensees, suppliers, wholesalers, members of the press, or any other PERSONS between any MATTEL product or packaging on the one hand, and any MGA product or packaging, including, but not limited, to "MY SCENE" and "BRATZ" on the other, and the origin, source, meaning and authenticity the document produced at M0079817-39.

45.     Any statements or comments by any PERSON that a MATTEL product, packaging or ADVERTISEMENT is a copy or "knock off" of an MGA product, packaging or ADVERTISEMENT, including, but not limited, to such comments reflected in YOUR Wal-Mart Fall 2004 Toy Fair Recap (M0080055-65).

46.     Efforts by MATTEL to copy and imitate MGA's ADVERTISEMENTS, including, without limitation, the extent to which ADVERTISEMENTS for "BRATZ" or "ALIEN RACERS" were an inspiration or factor in the development of ADVERTISEMENTS for "MY SCENE" or "ACCELERACERS."

47.     Other than those previously filed and served in this ACTION or in which MGA's counsel in this ACTION was in attendance, the testimony, transcripts, declarations, affidavits and other sworn written statements of any other type by or from YOU or made on YOUR behalf that REFER or RELATE TO DIVA STARZ, MY SCENE, FLAVAS, and BARBIE that REFER OR RELATE TO the RELEVANT TIME PERIOD (regardless of when such testimony or sworn statement was taken, given, signed, made or filed).

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

48. All COMMUNICATIONS between MATTEL on the one hand and present or former employees or contractors of MGA on the other.

49. The applications for registration and the registrations for copyright, patent, trademark or any other right that REFER OR RELATE TO DIVA STARZ, MY SCENE, FLAVAS, BARBIE, ACCELERACERS, LITTLE MOMMY, WEE 3 FRIENDS and POLLY POCKET, or their designs RELATING thereto, sought, made or obtained by, for or on behalf of YOU, including without limitation COMMUNICATIONS pertaining thereto.

50. MATTEL's efforts, or knowledge of any efforts by any PERSON, worldwide to interfere with or inhibit MGA's business with distributors and retailers (including, but not limited to, Wal-Mart, Target, Toys 'R Us, Zellers, Bandai, Jumbo, and Woolworth U.K.), including, but not limited to (a) pressuring or influencing distributors or retailers not buy, sell or distribute "BRATZ" or other MGA products, to reduce shelf and display space for "BRATZ" or other MGA products, or to place "BRATZ" or other MGA products in unfavorable locations at retail outlets; and (b) COMMUNICATIONS with retailers or distributors RELATING TO whether MGA is providing below-market pricing or discontinuing a product line.

51. MATTEL's efforts, or knowledge of any efforts by any PERSON, worldwide to interfere, modify, tamper with or alter MGA's retail product displays, including, but not limited to, COMMUNICATIONS between YOU (including, but not limited to, Erika Ashbrook and Connie Hibbert) and any current or former employee or representative of Wal-Mart (including, but not limited to, Heather Hocut and Barb Lubestine) regarding interfering, modifying, tampering with or altering MGA's retail product displays at Wal-Mart.

52. MATTEL's efforts, or knowledge of any efforts by any PERSON, worldwide to interfere with or inhibit MGA's business with a licensee or licensing agent (including, but not limited to, Smith & Brooks, Zeon, Gemma International,

1   MV Sports, Hart Concepts, Random House, Egmont, Euromic, Character Licensing

2   and Marketing, JNH Israel, SuperRTL, Candide, and Rose Art Industries) and/or to

3   decline to renew a licensing agreement based in whole or in part on that licensee's

4   or licensing agent's relationship (or proposed relationship) with MGA.

5       53.   MATTEL's efforts, or knowledge of any efforts by any PERSON,

6   worldwide to interfere with or inhibit MGA's business with suppliers, factories, or

7   manufacturing facilities, including, but not limited to, Asahi Kasei Life & Living

8   Corporation, L.A.M.P. S.p.A. (a.k.a. Filo), Jetta Company Ltd., Early Light

9   Industrial Co. Ltd., Kaneka Corp., and Universal Commerce Corporation Limited.

10      54.   MATTEL's efforts, or knowledge of any efforts by any PERSON,

11  worldwide to interfere with or inhibit MGA's business, including, without

12  limitation (a) any threats or attempts to reduce advertising spending if a publication

13  reported on MGA, "BRATZ" or other MGA products; (b) any threats, directions or

14  instructions to market research firms (including, but not limited to,

15  ConsumerQuest) not to work with MGA; (c) any efforts to prevent or influence

16  former MATTEL employees or independent contractors (including, but not limited

17  to, Charlotte Broussard, Margo Eldridge, and Andrew Gallerani) from or against

18  working for, with, or on behalf of MGA; (d) COMMUNICATIONS with

19  Nickelodeon regarding MGA's proposed sponsorship of the "Kids' Choice

20  Awards" and MGA's ability to advertise on Nickelodeon; (e) YOUR efforts to

21  pressure or influence 4Kids Entertainment to cancel or discontinue "Bratz"

22  programming; (f) YOUR efforts to interfere with MGA's investment in or

23  acquisition of Zapf Creation AG; and (g) YOUR plans, attempts, efforts or intent to

24  interfere with business dealings or contractual relations between MGA and Smoby

25  Group, including, but not limited to, YOUR plans to acquire the "Majorette" brand.

26      55.   YOUR COMMUNICATIONS with any PERSON, including, but not

27  limited to, any supplier, factory manufacturer, distributor, retailer, licensee,

28  licensing agent, market research firm, and independent contractor, REFERRING

A-25

Exhibit 107,
P. 396

1  OR RELATING TO such PERSON'S business with MGA, including, but not

2  limited to, any efforts by MATTEL to persuade that PERSON (a) to cease doing

3  business with MGA; (b) to limit or reduce its business with MGA; or (c) increase

4  such PERSON'S business with MATTEL at the expense of that PERSON'S

5  business with MGA.

6      56.   YOUR knowledge of MGA's non-public information (regardless of

7  the source) and YOUR efforts worldwide to monitor, "spy on" or gain knowledge

8  of MGA's activities, unreleased products, and product creation, design and

9  development, including, but not limited to (a) contacts with MGA's current or

10  former employees about MGA or its business; (b) use or attempt to use confidential

11  informants, spies, or moles within MGA; (c) knowledge of any MGA product

12  before its release to the public; (d) the origin, source, meaning and authenticity of

13  the document produced at M0065557-58; (e) instances of obtaining access to MGA

14  showrooms, including obtaining access on false pretenses; (f) access to MGA's

15  products or showroom at any Toy Fair; (g) access to retailer's Plan-o-Grams or

16  merchandising display plans or display areas; and (h) access to MGA's confidential

17  product and pricing information through "competitive management agreements" or

18  "category management agreements" with retailers.

19      57.   MATTEL's efforts, or knowledge of any efforts by any PERSON,

20  worldwide to unfairly compete with MGA by eroding or damaging its goodwill,

21  including, but not limited to (a) efforts to generate negative publicity or consumer

22  comments about MGA, LARIAN, "BRATZ" or other MGA products;

23  (b) COMMUNICATIONS with any PERSON concerning whether "BRATZ" are

24  too sexy or otherwise inappropriate for girls; (c) any publicly-released studies or

25  market research about "BRATZ" or MGA products commissioned by or funded by

26  MATTEL; and (d) efforts to provide negative information about MGA to financial

27  or investment analysts (including, but not limited, to J.P. Morgan) regarding MGA

28  or MGA products.

A-26

Exhibit 107,
P. 397

1      58.    YOUR COMMUNICATIONS with former MATTEL employees who

2  now work (or subsequently worked) for MGA, including but not limited to letters

3  sent to former MATTEL employees warning them not to disclose information

4  about MATTEL.

5      59.    YOUR hiring of, or consideration of hiring, former MGA employees,

6  including, without limitation, any procedures YOU have adopted to ensure that

7  MGA's confidential proprietary information is protected.

8      60.    The magnitude and scope of layoffs of MATTEL employees during

9  the RELEVANT PERIOD.

10      61.    NPD, including, but not limited to, (a) YOUR payments to NPD,

11  (b) COMMUNICATIONS with NPD regarding MGA's alleged misuse of NPD

12  data; (c) YOUR involvement with and knowledge of NPD's decision to terminate

13  MGA's subscription; (d) YOUR use and misuse of NPD data since 2001; and (e)

14  YOUR efforts to pressure, convince, or request that NPD change product

15  classifications categories involving "BRATZ" or other MGA products and whether

16  such efforts were successful.

17      62.    CARU, including, but not limited to (a) COMMUNICATIONS with

18  CARU regarding MGA's ADVERTISEMENTS, amendments to MGA

19  ADVERTISEMENTS, or MGA's website, including, but not limited to, restrictions

20  placed or suggested to be placed on the foregoing; (b) any formal or informal

21  complaints to CARU regarding MGA's ADVERTISEMENTS or MGA's website;

22  and (c) subsidies given to CARU by MATTEL.

23      63.    TIA, including, but not limited to (a) MATTEL's role in planning, its

24  participation in, or involvement with TIA's Toy-of-the-Year Awards since 2001;

25  and (b) the change in the voting procedures of "Toy of the Year" award from a

26  "people's choice" award to an award based on votes from retailers, the media, and

27  based on NPD data.

28

64.   The facts supporting each of the Affirmative Defenses in YOUR Second Amended Answer in Case No. 05-2727, dated July 12, 2007.

65.   The facts REFERRING OR RELATING to MGA's Third Affirmative Defense of Unclean Hands in MGA's Answer and Affirmative Defenses dated August 13, 2007, including, but not limited to (a) MATTEL'S efforts to undermine MGA's business and to "kill" Bratz at any cost, including but not limited to Mattel's efforts to infringe and dilute MGA's trade dress, copy MGA's products, packaging, themes, and advertising (including for Mattel products MY SCENE, DIVA STARZ, WEE 3 FRIENDS, ACCELERACERS, and POLLY POCKET) and engage in other acts of unfair competition against MGA as alleged in MGA's complaint against MATTEL; (b) MATTEL'S efforts to create negative publicity or press about MGA, MGA products, BRYANT, LARIAN, or MGA employees; (c) MATTEL'S efforts to fund or commission market research or studies that portray BRATZ or MGA products negatively; (d) MATTEL'S efforts to interfere with MGA's acquisition of or investment in Zapf Creation AG; (e) MATTEL'S efforts to include negative references to MGA or BRATZ on MATTEL's "We Believe in Girls" website; (f) MATTEL'S efforts or intent to interfere with business dealings or contractual relations between MGA and Smoby Group; (g) influencing Nickelodeon to reject MGA advertisements or to limit time slots for advertisements; (h) assisting parties in lawsuits against MGA; (i) monitoring, "spying on" or gaining knowledge of MGA's trade secrets, non-public information, non-public activities, unreleased products, and/or product development; (j) gaining access, or attempts to gain access, to MGA showrooms, Plan-o-Grams, merchandising displays, Toy Fair displays on false pretenses; (k) wrongfully obtaining MGA's costs and sales information through Mattel-employed category managers at retailers; (l) inducing non-party customers to breach confidentiality agreements with MGA and divulge non-public information about MGA's unreleased products; (m) covertly investigating MGA, its officers and employees,

1  and their family members; (n) contacting persons under false pretense in order to

2  interrogate them about BRATZ and this litigation; (o) coercing MATTEL

3  employees to accept restrictive covenants (right before massive layoffs) and non-

4  compete clauses and other efforts to prevent prospective MGA employees from

5  accepting offers of employment; (p) MATTEL'S delay in suing BRYANT because,

6  *inter alia*, MATTEL wanted BRYANT to testify in an unrelated MATTEL case;

7  (q) falsely inflating its BARBIE sales figures in an effort to mislead the public and

8  retailers; and (r) taking all measures to conceal its bad acts, including the willful

9  non-retention and destruction of documents.

10      66.     The name, address and telephone number of each PERSON or entity

11  with whom MATTEL has communicated regarding this ACTION or the facts and

12  circumstances giving rise to this ACTION; the facts and circumstances surrounding

13  each such COMMUNICATION, including, without limitation, the date, nature and

14  substance of each such COMMUNICATION; and the name, address and telephone

15  number of each PERSON or entity that may have discoverable knowledge,

16  information or DOCUMENTS.

17      67.     All efforts made by MATTEL, directly or indirectly, to contact or

18  communicate with BRYANT since the commencement of the ACTION regarding

19  any subject, whether or not related to or involving the ACTION, and MATTEL's

20  knowledge of any efforts by third-parties or its counsel to contact or communicate

21  with BRYANT since the commencement of the ACTION.

22      68.     The existence, nature and extent of any third-party funding or

23  reimbursement of fees and costs incurred by MATTEL in prosecuting or defending

24  this ACTION, the sharing with any third-party in the financial outcome of this

25  litigation, and the nature and extent of any insurance, indemnification, or similar

26  agreement or arrangement to fund, pay for or reimburse MATTEL for any potential

27  liability it may incur in connection with this ACTION, and the fee arrangement

28  between MATTEL and Quinn Emanuel Urquhart Oliver & Hedges LLP.

A-29

69.     The relationship between Farhad (Fred) Larian and MATTEL, including, but not limited to (a) COMMUNICATIONS between Farhad (Fred) Larian and MATTEL's counsel; (b) the identity of any DOCUMENTS that Farhad (Fred) Larian has provided to or made available for inspection by MATTEL (including MATTEL's counsel); (c) the identity of any DOCUMENTS that MATTEL (including its counsel) has provided to or made available for inspection by Farhad (Fred) Larian; and (d) MATTEL's efforts to hire Farhad (Fred) Larian as a consultant or expert.

70.     MATTEL's COMMUNICATIONS internally or to third-parties, or assistance to third parties, concerning claims or potential claims against MGA, or relating to MGA products, either directly or indirectly, including COMMUNICATIONS with Art Attacks Ink, LLC; Hasbro; Toys & Trends (Hong Kong) Limited; Cityworld Limited; Jurg Willi Kesselring; UbiSoft Entertainment, S.A. ; and Dyscom Corp. dba FilmBratz Productions and Hans Dys.

71.     YOUR policies, practices and procedures, written or otherwise, regarding management, preservation and/or destruction of ELECTRONIC RECORDS during the RELEVANT TIME PERIOD.

72.     The location, accessibility and retrievability of YOUR ELECTRONIC RECORDS relevant to the design, development, sales and marketing of YOUR accused products, as identified in the COMPLAINT.

73.     The location, accessibility and retrievability of YOUR ELECTRONIC RECORDS created or stored by BRYANT; TREANTAFELLES; BRAWER; BRISBOIS; MACHADO; VARGAS; TRUEBA; Richard de Anda and any person working with him in Mattel's Global Security department involved in any way in investigating BRYANT, Cassidy Park, Ann Driskill, MGA, LARIAN or any current or former MGA employee; Tim Kilpin; Matthew Bousquette; Robert Eckert; Chuck Scothon; Kislip Ongchanko; Jill Nordquist; Rob Hudnut; Ivy Ross; Alan Kaye; Rene Pasko; Adrienne Fontanella; Tina Patel; Julia Jensen; Julia

A-30

Exhibit 107,

P. 401

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

1   Marine; Fred Kawashima; Evelyn Viohl; Anna Rhee; and any other person who

2   currently works or previously worked for MATTEL who MATTEL knows or has

3   reason to believe has knowledge or information concerning the claims or defenses

4   in this litigation or the facts underlying them.

5        74.    YOUR policies, practices and procedures, written or otherwise,

6   regarding employee use of company computers and ELECTRONIC RECORDS

7   during the RELEVANT TIME PERIOD, including but not limited to (a) Desktop

8   computers; (b) Laptop computers; (c) Home-based computers used for company

9   business or communication purposes; (d) Removable media (e.g., USB drives); and

10   (e) PDAs (Personal Digital Assistants).

11        75.    Computers currently in use and computers no longer in use by YOU

12   during the RELEVANT TIME PERIOD, including (a) Number, types and

13   locations; (b) Operating systems with versions and dates of use; and (c) Application

14   software with versions and dates of use.

15        76.    YOUR policies, practices and procedures, written or otherwise,

16   regarding the processing of YOUR computers after an employee leaves YOUR

17   employ.

18        77.    YOUR network architecture during the RELEVANT TIME PERIOD,

19   including (a) Network topology; (b) File-naming conventions; (c) Access

20   authorization; and (d) Remote access.

21        78.    Document management systems used by YOU during the

22   RELEVANT TIME PERIOD.

23        79.    Email systems used by YOU during the RELEVANT TIME PERIOD.

24        80.    Instant messaging systems used by YOU during the RELEVANT

25   TIME PERIOD.

26        81.    YOUR intranets deployed during the RELEVANT TIME PERIOD.

27        82.    YOUR archival systems and procedures, including to/from disk, tape,

28   or other media during the RELEVANT TIME PERIOD.

83.    YOUR backup procedures, inventories and schedules, including tape reuse cycles for ELECTRONIC RECORDS during the RELEVANT TIME PERIOD.

84.    YOUR efforts to identify and preserve potentially physical and ELECTRONIC RECORDS potentially relevant to the claims and defenses in this ACTION, the dates and circumstances of each and every such efforts, the circumstances surrounding such efforts, and whether such efforts were in anticipation of litigation involving YOU, BRYANT, and/or MGA.

85.    YOUR policies, practices and procedures, written or otherwise, regarding monitoring or reviewing of employee-created ELECTRONIC RECORDS by any technical means or by or at the direction of any department at MATTEL, including but not limited to Information Technology, Human Resources and/or "Global Security" or "Worldwide Security" during the RELEVANT TIME PERIOD.

86.    YOUR COMMUNICATIONS with American Greetings regarding BRATZ and competing with BRATZ, including by using research and dolls such as Holly Hobby.

1697009

MGA'S 30(b)(6) DEPOSITION NOTICE
CASE NO. CV 04-09049 SGL (RNBx)

Exhibit \lo7,
P. 403

# Exhibit 108

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center
Suite 1500
San Francisco, California 94111
Telephone:    (415) 774-2611
Facsimile:    (415) 982-5287

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>MATTEL, INC., a Delaware corporation,<br><br>        Defendant. | CASE NO. CV 04-09049 SGL (RNBx)<br>JAMS Reference No. 1100049530<br><br>Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-2727<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MGA'S MOTION TO COMPEL MATTEL TO PRODUCE WITNESSES PURSUANT TO NOTICE OF DEPOSITION UNDER RULE 30(b)(6); DENYING REQUEST FOR SANCTIONS** |
| CONSOLIDATED WITH<br>MATTEL, INC. v. BRYANT and<br>MGA ENTERTAINMENT, INC. v. MATTEL, INC. | |

I. INTRODUCTION

On December 21, 2007, MGA Entertainment, Inc. ("MGA") submitted a Motion to

Compel Mattel to Produce Witnesses Pursuant to Notice of Deposition Under Rule 30(b)(6), or,

1   in the Alternative, for Leave to Serve Such Notice." Mattel submitted an opposition on January

2   11, 2008, and MGA submitted a reply on January 17, 2008.  The motion was heard on April 11,

3   2008.

## II. BACKGROUND

5       MGA originally sought an order (1) compelling Mattel to designate and produce witnesses

6   to testify on topic nos. 8-9, 11-24, 26-32, 39, 42, 47, 48, 58, 60, 65, 69-85 of its Rule 30(b)(6)

7   notice, or in the alternative granting leave to serve notice on Mattel of the above-listed topics,

8   and (2) awarding sanctions.  After meeting and conferring further, the parties were able to narrow

9   the scope of the Motion.  See Joint Report to Discovery Master Regarding Pending Discovery

10  Motions dated March 28, 2008.  Specifically, MGA withdraws its motion as to topic nos. 21-23,

11  60, 65, and 71-85, without prejudice to MGA's right to seek testimony on these topics in Phase 2.

12  The parties also represent that topic nos. 8-9, 12-17, 19-20, 24, 27-32, 48[1], 58 and 69 remain at

13  issue as drafted, and that topic nos. 18, 26, 39, 42, 47 and 70 remain at issue but have been

14  narrowed.

15      MGA contends that it is entitled to notice a 30(b)(6) deposition to develop its claims and

16  defenses, and that it has not previously served a single 30(b)(6) notice on Mattel.  MGA also

17  contends that contrary to Mattel's assertion, the 30(b)(6) notice Carter Bryant served on Mattel in

18  2004 should not be attributed to MGA because the two are different parties and represented by

19  different counsel.  Furthermore, MGA contends that Carter Bryant's 30(b)(6) notice was crafted to

20  develop Carter Bryant's own claims and defenses, not MGA's claims and defenses.  MGA also

21  contends that the topics at issue do not materially overlap with those served by Carter Bryant.

22  Furthermore, MGA contends that even if Carter Bryant's 30(b)(6) notice is attributed to MGA,

23  MGA should be permitted to take a 30(b)(6) deposition of Mattel because of the three years of

24  _____

25      [1] In the Joint Report, the parties list no. 48 both among the topics that MGA has withdrawn and the topics
    that remain at issue.  Topic no. 11 is not included on either list.  Because both topics are listed in MGA's motion and
26  the Joint Report does not clearly specify that these topics have been withdrawn, the court assumes that the topics
    remain at issue.

27                                                                                  (continued...)

28
    Bryant v. Mattel, Inc.,                         Exhibit 108 ,                                          2
    CV-04-09049 SGL (RNBx)                          P. 405

1    intervening litigation and the parties' amendments to the pleadings since Carter Bryant served

2    Mattel with his 30(b)(6) notice.

3           Mattel contends that MGA took most or all of the 30(b)(6) depositions noticed by Carter

4    Bryant and that MGA is not permitted to take Mattel's deposition for a second time absent a

5    showing of good cause.  By Mattel's calculations, Carter Bryant and MGA deposed Mattel's

6    designees for 18 days, of which MGA took 13.5 days and Carter Bryant took only 4.5 days.

7    Mattel contends that MGA has failed to establish the requisite good cause for another 30(b)(6)

8    deposition, and further that MGA's deposition topics are objectionable for several reasons.

9    Among other things, Mattel contends that MGA's deposition topics are duplicative and

10   cumulative of the topics for which Mattel has already provided 30(b)(6) testimony, overbroad,

11   unduly burdensome, not reasonably particularized, vague and ambiguous, seek information that is

12   not available to Mattel, and seek information that is more appropriately obtained through

13   contention interrogatories.  Lastly, Mattel contends that there are no changed circumstances to

14   warrant MGA's requested relief.

15                                   III. DISCUSSION

16          Rule 26 of the Federal Rules of Civil Procedure provides that parties may obtain discovery

17   regarding any matter, not privileged, that is relevant to any party's claim or defense.  Fed.R.Civ.P.

18   26(b)(1).  Further, "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(C)."

19   Fed.R.Civ.P. 26(b)(1).  Pursuant to Rule 26(b)(2)(C), Fed.R.Civ.P., the court must limit the

20   frequency or extent of use of discovery otherwise allowed by the Federal Rules of Civil Procedure

21   or by local rule if the court determines that: "(i) the discovery sought is unreasonably cumulative

22   or duplicative, or can be obtained from some other source that is more convenient, less

23   burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to

24   obtain the information by discovery in the action; or (iii) the burden or expense of the proposed

25   discovery outweighs its likely benefit, considering the needs of the case, the amount in

26   _____

27       (...continued)

28
     Bryant v. Mattel, Inc.,
     CV-04-09049 SGL (RNBx)                          Exhibit 108,                          3
                                                     P. 40e

1    controversy, the parties' resources, the importance of the issues at stake in the action, and the

2    importance of the discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2)(C).

3       Applying the standards set forth above, and good cause appearing[2], MGA's motion is

4    granted as to topic nos. 8-9, 11-17, 18 (as narrowed during the meet and confer), 19-20, 24, 26 (as

5    narrowed during the meet and confer), 28-30, 32, 39 (as narrowed during the meet and confer),

6    48, 58, 69 and 70 (as narrowed during the meet and confer). These topics are relevant to the

7    claims and defenses in the case. Although some of the topics overlap with topics in Carter

8    Bryant's 30(b)(6) notice, the overlap is not so substantial as to render the topics duplicative or

9    cumulative of Carter Bryant's 30(b)(6) topics.

10       Nor are these topics unduly burdensome in the context of this litigation. Notably, Mattel

11    has served six separate 30(b)(6) notices on MGA (and its affiliates) that include 291 separate

12    topics. In light of the enormous breadth and burden of the deposition testimony Mattel has sought

13    from MGA, Mattel's objection based upon burden is unpersuasive. Mattel's remaining objections

14    are equally without merit.

15       MGA's motion is denied as to topic nos. 27, 31, 42 and 47. Although these topics are

16    relevant to the claims and defenses, the burden and expense of requiring Mattel to produce a

17    witness to testify on these topics outweigh its likely benefit, taking into consideration all of the

18    factors set forth in Rule 26(b)(2)(C), Fed.R.Civ.P.

19    //

20    //

21    //

---

22        [2] The parties dispute whether Rule 30(a)(2)(B), Fed.R.Civ.P., applies to depositions taken pursuant Rule

23    30(b)(6), Fed.R.Civ.P. This issue was raised and addressed in the context of Mattel's earlier filed motion to compel MGA to produce 30(b)(6) designees. See Order Granting in Part and Denying in Part Mattel's Motion to Compel

24    MGA to Produce Witnesses Pursuant to Third Notice of Deposition Under Rule 30(b)(6) and for Sanctions, dated August 6, 2007. As before, it is unnecessary to resolve this conflict in the law because the debate is purely academic

25    and inconsequential. As MGA requested, MGA's motion is treated herein as a motion for leave to serve an additional 30(b)(6) notice with additional topics. In evaluating the appropriateness of the topics, it is MGA's burden to

26    demonstrate that there is good cause for such discovery (see e.g. Boston Scientific Corp. v. Cordis Corp., 2004 WL 1945643 (N.D.Cal. 2004)), applying the principles stated in Rule 26(b)(2), Fed.R.Civ.P.

27                                                  (continued...)

28   

Exhibit 108,
P. 407

4

1

IV. CONCLUSION

2     For the reasons set forth above, MGA's motion is granted as to all of the topics at issue

3  except 27, 42, 47 and 31.  Mattel shall produce corporate designees for deposition consistent with

4  this order no later than May 5, 2008.  MGA's request for sanctions is denied.

5     Pursuant to Paragraph 6 of the Stipulation and Order for Appointment of a Discovery

6  Master, Mattel shall file this Order with the Clerk of Court forthwith.

7

8  Dated: April 11, 2008

                                              HON. EDWARD A. INFANTE (Ret.)

9                                             Discovery Master

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    (...continued)

27

28

# Exhibit 109

1  THOMAS J. NOLAN (Bar No. 066992)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  300 South Grand Avenue
   Los Angeles, California 90071-3144
3  Telephone:  (213) 687-5000
   Facsimile:  (213) 687-5600
4  E-mail:  tnolan@skadden.com

5
   KENNETH A. PLEVAN (Admitted *Pro Hac Vice*)
6  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   4 Times Square
7  New York, NY  10036
   Telephone:  (212) 735-3000
8  Facsimile:  (212) 735-2000
   E-mail:  kplevan@skadden.com
9
   Attorneys for Counter-Defendants,
10 MGA ENTERTAINMENT, INC., ISAAC LARIAN, MGA ENTERTAINMENT
   (HK) LIMITED, AND MGAE de MEXICO S.R.L. de C.V.

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13                   EASTERN DIVISION

14 CARTER BRYANT, an individual       ) CASE NO. CV 04-9049 SGL (RNBx)
                                      )
15              Plaintiff,            ) Consolidated with Case No. 04-9059
                                      ) and Case No. 05-2727
16      v.                            )
                                      ) **MGA'S SECOND SET OF**
17 MATTEL, INC., a Delaware           ) **INTERROGATORIES TO**
   corporation                        ) **MATTEL, INC.**
18              Defendant.            )
                                      )
19                                    )
                                      )
20                                    ) Honorable Stephen G. Larson
                                      ) Courtroom 1
21                                    )
                                      )
22
23
24
25
26
27
28

---

MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.          NO. CV 04-9049 SGL (RNBx)

1   Consolidated with MATTEL, INC. v.
2   BRYANT and MGA
    ENTERTAINMENT, INC. v.
3   MATTEL, INC.
4
    **PROPOUNDING PARTY:**     **MGA ENTERTAINMENT, INC.**
5
    **RESPONDING PARTY:**      **MATTEL, INC.**
6
7   **SET NUMBER:**            **SECOND**
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.          NO. CV 04-9049 SGL (RNBx)

Exhibit 109
P. 410

1       MGA Entertainment Inc. ("MGA"), hereby requests that Plaintiff, Mattel Inc.

2   ("Mattel") respond to the following Second Set of Interrogatories separately, fully,

3   and under oath, pursuant to Rule 33 of the Federal Rules of Civil Procedure, within

4   (30) days of service, in accordance with the definitions and instructions set forth

5   herein.

6                   **DEFINITIONS**

7       1.    "AFFILIATES" means any and all corporations, proprietorships, d/b/a's,

8   partnerships, joint ventures and business entities of any kind that, directly or

9   indirectly, in whole or in part, own or control, are under common ownership or

10  control with, or are owned or controlled by a PERSON, party or entity, including

11  without limitation each parent, subsidiary and joint venture of such person, party or

12  entity.

13      2.    "ALLEGED COPYRIGHTED WORKS" means the copyrighted works

14  alleged in paragraph 83 of MATTEL'S Second Amended Answer in Case No. 05-

15  2727 and Counterclaim in THIS ACTION.

16      3.    "ALLEGED TRADE SECRETS" means the trade secret material

17  alleged in paragraphs 107 thru 111 of MATTEL'S Second Amended Answer in Case

18  No. 05-2727 and Counterclaim in THIS ACTION.

19      4.    "BARBIE" means and refers to each image, character, logo, doll, toy,

20  styling head, plush toy, play set, accessory, product, packaging or any other thing

21  that is or has ever been manufactured, marketed or sold by YOU, or others under

22  licensed by YOU, as part of a line of goods or merchandise commonly known as, or

23  sold and marketed under the name "Barbie."

24      5.    "BRYANT" means Carter Bryant individually and does not include his

25  agents, representatives, attorneys, experts or any other PERSON acting on his behalf,

26  pursuant to his authority or subject to his control.

27      6.    "BRATZ" means and refers to each image, character, logo, doll, fashion

28  doll, plush toy, styling head, toy, accessory, product, packaging, theme, or other

2

1  thing or matter that is or has ever been manufactured, marketed or sold by MGA, or

2  others under license, as part of a line of goods or merchandise commonly known as,

3  or sold and marketed under the "Bratz" trademark or trade dress.

4        7.    "COLLECT," "COLLECTED" or "COLLECTION" with reference to

5  DOCUMENTS means to collect, review, produce, request, seek, look for, search for,

6  analyze or in any other way collect or review or attempt to collect or review such

7  DOCUMENTS in connection with YOUR search for, review of and/or production of

8  DOCUMENTS in this ACTION."

9        8.    The term "CONFLICT OF INTEREST QUESTIONNAIRE" refers to

10  Mattel's form of employment agreement concerning, _inter alia_, relations, if any,

11  between Mattel's employees, suppliers, and/or competition, whether known by the

12  title "Conflict of Interest Questionnaire" or any other title, including without

13  limitation the form of Conflict of Interest Questionnaire entitled "Conflict of Interest

14  Questionnaire" executed by Carter Bryant on or about January 4, 1999.

15        9.    "CONTESTED MATTEL PRODUCTS" means:

16      (a) each female fashion doll and its packaging that is or has ever been

17  manufactured, marketed or sold by MATTEL, or others under license by MATTEL,

18  as part of a line of goods or merchandise commonly known as, or sold and marketed

19  under the "My Scene" trademark or trade dress;

20      (b) each image, character, logo, fashion doll, doll, toy, accessory, product,

21  packaging or other thing or matter that is or has ever been manufactured, marketed or

22  sold by MATTEL, or others under license by MATTEL, as part of a line of goods or

23  merchandise commonly known as, or sold and marketed under the "My Scene"

24  "Chillin' Out!" trademark or trade dress, the "My Scene" "Night on the Town"

25  trademark or trade dress, the "My Scene" "My Bling Bling" trademark or trade

26  dress, and/or the "My Scene" "Jammin' in Jamaica" trademark or trade dress;

27      (c) each plush toy and its packaging that is or has ever been manufactured,

28  marketed or sold by MATTEL, or others under license by MATTEL, as part of a line

3

1  of goods or merchandise commonly known as, or sold and marketed under the "My

2  Scene" trademark or trade dress;

3      (d)  each styling head that is or has ever been manufactured, marketed or sold

4  by MATTEL, or others under license by MATTEL, as part of a line of goods or

5  merchandise commonly known as, or sold and marketed under the "My Scene"

6  trademark or trade dress;

7      (e)  the "My Scene Sound Lounge" play set and packaging;

8      (f)  each image, character, logo, doll, toy, accessory, product, packaging or any

9  other thing that is or has ever been manufactured, marketed or sold by MATTEL, or

10  others under license by MATTEL, as part of a line of goods or merchandise

11  commonly known as, or sold and marketed under the name "Little Mommy";

12      (g)  each image, character, logo, doll, toy, accessory, product, packaging or any

13  other thing that is or has ever been manufactured, marketed or sold by YOU, or

14  others under licensed by YOU, as part of a line of goods or merchandise commonly

15  known as, or sold and marketed under the name "Wee 3 Friends"; and

16      (h)  each image, character, logo, toy, accessory, product, packaging or any

17  other thing that is or has ever been manufactured, marketed or sold by MATTEL, or

18  others under license by MATTEL, as part of a line of goods or merchandise

19  commonly known as, or sold and marketed under the name "AcceleRacerS."

20      10.  "COUNTERCLAIMS" means Mattel, Inc.'s Second Amended Answer

21  and Counterclaims for: 1. Copyright Infringement; 2. Violation of the Racketeer

22  Influenced and Corrupt Organizations Act; 3. Conspiracy to Violate the Racketeer

23  Influenced and Corrupt Organizations Act; 4. Misappropriation of Trade Secrets; 5.

24  Breach of Contract; 6. Intentional Interference with Contract; 7. Breach of Fiduciary

25  Duty; 8. Aiding and Abetting Breach of Fiduciary Duty; 9. Breach of Duty of

26  Loyalty; 10. Aiding and Abetting Breach of Duty of Loyalty; 11. Conversion; 12.

27  Unfair Competition; and 13. Declaratory Relief filed July 12, 2007, in MGA v.

28  Mattel, Inc., CV 05-02727, including any amendment or supplement thereto.

4

1    11.   "DESCRIBE THE SALES AND PROFITS" means to state fully and

2  separately for each MATTEL PRODUCT by year (a) the number of units of each

3  such MATTEL PRODUCT sold by YOU or YOUR licensees, (b) the gross and net

4  revenue received by YOU from such sales of each such MATTEL PRODUCT, (c)

5  all costs YOU have incurred in connection with each such MATTEL PRODUCT,

6  including but not limited to YOUR cost of goods sold, and (d) YOUR gross and net

7  profits from each such MATTEL PRODUCT.

8    12.   "DESIGN" or "DESIGNS" means any and all representations, whether

9  two-dimensional or three dimensional, and whether in tangible, digital, electronic or

10  other form, including but not limited to all works, designs, artwork, sketches,

11  drawings, illustrations, representations, depictions, blue prints, schematics, diagrams,

12  images, sculptures, prototypes, models, samples, rotocasts, reductions to practice,

13  development, inventions, or improvements, as well as all other items, things and

14  DOCUMENTS in which any of the foregoing are or have been expressed, embodied,

15  contained, fixed or reflected in any manner, which in whole or in part.

16    13.   "DIGITAL INFORMATION" means any information created or stored

17  digitally, including but not limited to electronically, magnetically, or optically.

18    14.   "DOCUMENT[S]" incorporates the full meaning of Federal Rule of

19  Civil Procedure 34, and shall be construed in the broadest sense to mean any and all

20  DIGITAL INFORMATION, STORAGE DEVICE, writings, tangible things and

21  property, of any kind, that are now or that have been in YOUR actual or constructive

22  possession, custody or control, including, but not limited to, any handwritten,

23  typewritten, printed, drawn, charted, taped, filmed, punched, copied, recorded,

24  transcribed, graphic or photographic matter of any kind or nature, in, through, or

25  from which information may be embodied, translated, conveyed or stored, whether

26  an original, a draft or copy, however produced or reproduced, whether sent or

27  received or neither, including, but not limited to, notes, memoranda, correspondence,

28  letters, facsimiles and facsimile transmittals, reports, inter- and intra-office

5

Exhibit 169 ,
P. 414

1  COMMUNICATIONS, work papers, work sheets, work records, ledgers, graphs,

2  indexes, advertisements, brochures, price lists, cost sheets, estimating sheets, bills,

3  bills of lading, bids, time cards, receipts, purchase orders, telephone records,

4  telegrams, telexes, literature, invoices, contracts, purchase orders, estimates,

5  recordings, transcriptions of recordings, records, books, pamphlets, periodicals,

6  publications, papers, tapes, DVDs, video CDs, video, audio and digital recordings,

7  television commercials, story boards, website or other spot advertisements, movies,

8  movie trailers, prototypes, products, diaries, calendars, charts, drawings, sketches,

9  messages, photographs and data contained in or accessible through any electronic

10  data processing system, including, but not limited to, computer databases, data sheets,

11  data processing cards, computer files and tapes, computer disks, CD-ROMs,

12  computer metadata, microfilm, microfiche, electronic mail, website and web pages

13  and transcriptions thereof and all other memorializations of any conversations,

14  meetings and conference, by telephone or otherwise.  The term DOCUMENT also

15  means every copy of a DOCUMENT, where such copy is not an identical duplicate

16  of the original, whether because of deletions, underlinings, showing of blind copies,

17  initialing, signatures, receipt stamps, comments, notations, differences in stationery

18  or any other difference or modification of any kind.

19       15.    The term "EMPLOYEE INVENTIONS AGREEMENT" refers to

20  Mattel's form of employment agreement concerning, inter alia, (i) ownership of

21  inventions, and (ii)(a) trade secrets and/or (iii) conflicts, whether known by the title

22  "Employee Confidential Information and Inventions Agreement" or any other title,

23  including without limitation the form of Employee Inventions Agreement entitled

24  "Employee Confidential Information and Inventions Agreement" executed by Carter

25  Bryant on or about January 4, 1999.

26       16.    "IDENTIFY," "IDENTITY," or "IDENTIFYING" mean the following:

27       •    With reference to an *individual*, means to state fully and

28  separately for each, such individual's full name, any known business title, current or

Exhibit 109 ,
P. 415

1 last known business affiliation, current or last known residential address, current or
2 last known business address, current or last known relationship with MATTEL, and
3 current or last known phone number(s).

4        •   With reference to an *entity*, means to state, fully and separately
5 for each, such entity's full name, state (or country) of incorporation or organization,
6 present or last known address, and present or last known telephone number(s).

7        •   With reference to any *DOCUMENT*, means to describe each
8 DOCUMENT by Bates number.  If the DOCUMENT does not have a Bates number,
9 IDENTIFY means to provide a complete description of the DOCUMENT such that it
10 may be the subject of a request for production of documents, including by stating the
11 date, identity of the author, addresses(s), recipient(s), signatories, parties, or other
12 PERSONS identified in the DOCUMENT, its present location or custodian and a
13 description of its contents.

14        •   With reference to any MATTEL or MGA product, means to state
15 fully and separately for each, the full name of the product; the number of the product;
16 the SKU of the product; any other applicable designation of the product; the period
17 of time in which the product has been sold; and IDENTIFY each PERSON who has
18 licensed such product.

19     17.   "MATTEL," "YOU," or "YOUR" means the party Mattel, Inc. and any
20 of its past or present officers, directors, employees, parents, subsidiaries, divisions,
21 affiliates, predecessors-in-interest, and joint venture partners.

22     18.   "MATTEL EMPLOYEE" means any of MATTEL's current or former
23 employees.

24     19.   "MATTEL'S INITIAL DISCLOSURES" means Mattel, Inc.'s
25 Consolidated (1) Initial Disclosures Relating to MGA's Unfair Competition Claims,
26 and (2) Second Supplemental Initial Disclosures Relating to Mattel's Claims Against
27 Bryant and MGA, dated January 5, 2007 and any supplemental or amendment
28 thereto.

Exhibit 109
P. 416

20.    "MATTEL PRODUCTS," includes all products sold or offered by sale by MATTEL under or using the name "Barbie," including without limitation, all CONTESTED MATTEL PRODUCTS, all MY SCENE DOLLS, and any doll sold or offered for sale under the name "Diva Starz."

21.    "MY SCENE" means and refers to each image, character, logo, doll, fashion doll, toy, styling head, plush toy, play set, accessory, product, packaging or any other thing that is or has ever been manufactured, marketed or sold by YOU, or others under licensed by YOU, as part of a line of goods or merchandise commonly known as, or sold and marketed under the name "My Scene."

22.    "MY SCENE DOLL" means any fashion doll that is or has ever been distributed, marketed, sold or offered for sale under the name "My Scene" or as part of the "My Scene" line, including separate themes.

23.    "PERSON" or "PERSONS" means all natural persons, partnerships, joint ventures and any kind of business, legal or public entity or organization, as well as its, its or her agents, representatives, employees, officers and directors and any one else acting on its, its or her behalf, pursuant to its, its or her authority or subject or its, its or her control.

24.    "REFERRING OR RELATING TO" means constituting, embodying, containing, referring to, commenting on, evidencing, regarding, discussing, describing, mentioning, reflecting, expressing, pertaining to, concerning, supporting, contradicting, negating, revoking or otherwise relating to in any manner.

25.    "STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION" means to (i) describe in detail the complete factual for the identified contention; (ii) IDENTIFY all DOCUMENTS that REFER OR RELATE TO that contention; and (iii) IDENTIFY all witnesses who may have information that REFERS OR RELATES TO the contention.

26.    "STORAGE DEVICE" means any computer hard drive, memory, USB device, tape, storage array or any other device or medium that allows a user, whether

8

Exhibit 109 ,
P. 417

1  permanently, temporarily or otherwise, to create, generate, transmit, copy, retain,

2  store, or maintain DIGITAL INFORMATION.

3      27.   "SOURCE OF INFORMATION" means any PERSON or medium

4  containing DOCUMENTS, DIGITAL INFORMATION, or other information,

5  whether in paper, electronic or other form, including, but not limited to any

6  STORAGE DEVICE, file, file cabinet, or any other source of information or

7  DOCUMENTS.

8      28.   "THIS ACTION" refers to *Mattel, Inc. v. Bryant*, Case No. CV 04-9059

9  SGL (RNBx), filed on April 27, 2004 and all cases consolidated or coordinated

10 therewith.

11     29.   The singular form of a noun or pronoun includes within its meaning the

12 plural form of the noun or pronoun so used, and vice versa; the use of the masculine

13 form of a pronoun also includes within its meaning the feminine form of the pronoun

14 so used, and vice versa; the use of any tense of any verb includes also within its

15 meaning all other tenses of the verb so used, whenever such construction results in a

16 broader request for information; and "and" includes "or" and vice versa, whenever

17 such construction results in a broader disclosure of documents or information.

18

19                            **INSTRUCTIONS**

20     1.   Mattel is instructed to serve written responses to these Interrogatories on

21 MGA's counsel at Skadden, Arps, Slate, Meagher & Flom, LLP, 300 South Grand

22 Avenue, Los Angeles, California 90071.

23     2.   Pursuant to Federal Rule of Civil Procedure 33, Mattel shall provide its

24 answers under oath within 30 days of service.

25     3.   If, in responding to these Interrogatories, Mattel asserts an ambiguity in

26 either a particular Interrogatory or an Instruction of Definition applicable thereto,

27 Mattel shall identify in the response to such Interrogatory the language it contends is

28 ambiguous and state the interpretation used in responding.

1      4.     These Interrogatories impose a continuing obligation subsequent to your

2 initial production to the full extent provided for in Rule 26(e) of the Federal Rules of

3 Civil Procedure.

4      5.     If, in responding to these Interrogatories, any information is not being

5 provided based on an objection or otherwise, IDENTIFY the information not be

6 provided and explain the complete basis supporting YOUR refusal and/or failure to

7 provide that information.

8      6.     Unless otherwise noted, these Interrogatories seek information from

9 January 1, 1995, to the present.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 109
P. 419

## INTERROGATORIES

INTERROGATORY NO. 12:

IDENTIFY each version of the EMPLOYEE INVENTIONS AGREEMENT adopted and/or used by or on behalf of MATTEL, including, without limitation, (a) the IDENTITY of all persons who participated in or were consulted concerning the creation, drafting, adoption, and/or use of the EMPLOYEE INVENTIONS AGREEMENT; (b) the date(s) and/or range(s) of dates MATTEL'S used each version of the EMPLOYEE INVENTIONS AGREEMENT; and (c) the reason(s) for the changes between each version.

INTERROGATORY NO. 13:

Describe in detail each instance in which any provision of an EMPLOYEE INVENTIONS AGREEMENT was breached or alleged to be breached by an employee, independent contractor, or any other person with whom MATTEL had entered into an EMPLOYEE INVENTIONS AGREEMENT, including without limitation: (a) a complete description of the conduct comprising said breach; and (b) a complete description of all steps taken by MATTEL in response to said breach or alleged breach (*including, for example, conducting an investigation or arranging that an investigation be conducted on MATTEL'S behalf; issuing a warning, whether written or oral; issuing any other notification, whether written or oral; initiating civil litigation, including the name, case number and court of any such litigation; initiating any other legal proceeding, including but not limited to criminal proceedings, including the name, case number and court of any such proceeding; making an exception, whether written, oral, express, or implied; making a determination that no breach occurred, whether or not such determination was documented; or no action*).

11

**INTERROGATORY NO. 14:**

IDENTIFY each version of the CONFLICT OF INTEREST QUESTIONNAIRE adopted and/or used by or on behalf of MATTEL, including, without limitation, (a) the identity of all persons who participated in or were consulted concerning the creation, drafting, adoption, and/or use of the CONFLICT OF INTEREST QUESTIONNAIRE; (b) the date(s) and/or range(s) of dates MATTEL'S used each version of the CONFLICT OF INTEREST QUESTIONNAIRE; and (c) the reason(s) for the changes between each version.

**INTERROGATORY NO. 15:**

Describe in detail each instance in which any provision of a CONFLICT OF INTEREST QUESTIONNAIRE was breached or alleged to be breached by an employee, independent contractor, or any other person with whom MATTEL had entered into a CONFLICT OF INTEREST QUESTIONNAIRE, including without limitation: (a) a description of the conduct comprising said breach; and (b) a description of all steps taken by MATTEL in response to said breach or alleged breach (*including, for example, conducting an investigation or arranging that an investigation be conducted on MATTEL'S behalf; issuing a warning, whether written or oral; issuing any other notification, whether written or oral; initiating civil litigation, including the name, case number and court of any such litigation; initiating any other legal proceeding, including but not limited to criminal proceedings, including the name, case number and court of any such proceeding; making an exception, whether written, oral, express, or implied; making a determination that no breach occurred, whether or not such determination was documented; or no action*).

12

INTERROGATORY NO. 16:

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that MATTEL has a viable affirmative claim for relief against MGA even if the evidence establishes both of the following: (i) in August and/or September, 1998, Carter Bryant conceived of the line of fashion dolls that he named Bratz, and (ii) the design for the BRATZ dolls sold by MGA in 2001 was reduced to practice after October 20, 2000.

INTERROGATORY NO. 17:

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that MATTEL employees in the Design Center who personally knew Carter Bryant did not know and/or believe, immediately following the launch of MGA's Bratz dolls in 2001, that Carter Bryant was the creator of the concept for the BRATZ line of dolls.

INTERROGATORY NO. 18:

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that any of the fashions and/or accessories for the BRATZ line of dolls sold by MGA violate or infringe any of MATTEL'S intellectual property and/or proprietary rights.

INTERROGATORY NO. 19:

IDENTIFY with specificity each element of each ALLEGED COPYRIGHTED WORK that MATTEL contends is an original element protectable under the United States Copyright Laws.

13

**INTERROGATORY NO. 20:**

IDENTIFY with specificity each ALLEGED TRADE SECRET, including the IDENTITY of each DOCUMENT that embodies or REFERS OR RELATES to each ALLEGED TRADE SECRET.

**INTERROGATORY NO. 21:**

IDENTIFY each PERSON who has had access to each ALLEGED TRADE SECRET, including (a) the ALLEGED TRADE SECRET each PERSON had access to; and (b) the date or dates each PERSON had this access.

**INTERROGATORY NO. 22:**

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that MGA misappropriated any ALLEGED TRADE SECRET.

**INTERROGATORY NO. 23:**

STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION that the ALLEGED TRADE SECRETS are protectable.

**INTERROGATORY NO. 24:**

DESCRIBE THE SALES AND PROFITS for each MATTEL PRODUCT that has been sold or offered for sale by YOU or YOUR licensees. (The time period applicable to this interrogatory is from January 1, 1990 to the present).

**INTERROGATORY NO. 25:**

IDENTIFY, fully and separately, each and every PERSON who was involved in the development or marketing of the CONTESTED MATTEL PRODUCTS by stating each PERSON'S name, role, and start/end date. (As used in this Interrogatory, the phrase "development or marketing" means the entire process of

14

1   creating and selling a new product or design, including without limitation, the
2   marketing, advertising, promotion, licensing, offering for sale, conception, origin,
3   creation, design, development, sculpting, engineering, reduction to practice, tooling
4   or painting of a product or embodiment of a product).

5

6   INTERROGATORY NO. 26:

7          Describe in detail all instances in which a PERSON expressed confusion as to
8   source or sponsorship between any MATTEL products, packaging or advertising
9   (including, but not limited to, the CONTESTED MATTEL PRODUCTS) and any
10  MGA products, packaging or advertising (including, but not limited to, "BRATZ"),
11  by: (i) stating the facts and circumstances of each instance; (ii) IDENTIFYING all
12  DOCUMENTS that REFER OR RELATE TO each instance; and (iii)
13  IDENTIFYING all witnesses who may have information that REFER OR RELATE
14  TO each instance.

15

16  INTERROGATORY NO. 27:

17         For each PERSON listed in MATTEL'S INITIAL DISCLOSURES,
18  IDENTIFY each PERSON and describe in detail each PERSON's alleged
19  knowledge of the subjects or information identified in MATTEL'S INITIAL
20  DISCLOSURES.

21

22  INTERROGATORY NO. 28:

23         Describe in detail the complete factual basis for YOUR COUNTERCLAIMS,
24  including, without limitation all facts, DOCUMENTS, and witnesses that REFER
25  OR RELATE TO YOUR COUNTERCLAIMS.

26

27

28

15

Exhibit 109 ,
P. 424

1 INTERROGATORY NO. 29:

2    Describe in detail any estimate or calculation of damage, loss, injury, or unjust

3 enrichment, by reason of any act or omission alleged in YOUR COUNTERCLAIMS,

4 that YOU have made or that has been made on YOUR behalf or at YOUR request,

5 including all facts, DOCUMENTS or witnesses RELATING TO each estimate or

6 calculation.

7

8 INTERROGATORY 30:

9    IDENTIFY each and every SOURCE OF INFORMATION from which YOU

10 have COLLECTED DOCUMENTS that REFER OR RELATE TO BRATZ.

11

12 INTERROGATORY 31:

13    STATE THE COMPLETE FACTUAL BASIS FOR YOUR CONTENTION

14 that any BRATZ doll is substantially similar to, a copy or a derivative of BRATZ

15 DESIGNS created by Carter Bryant on or before October 19, 2000.

16

17

18 DATED:  December 4, 2007

19                              SKADDEN, ARPS, SLATE, MEAGHER &
                                FLOM, LLP
20                              By: _____
21                                    Robert J. Herrington
                                Attorneys for Counter-Defendants, MGA
22                              ENTERTAINMENT, INC., ISAAC LARIAN,
                                MGA ENTERTAINMENT (HK) LIMITED,
23                              AND MGAE de MEXICO S.R.L. de C.V.

24

25

26

27

28

                                    16

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 300 South Grand Avenue, 34th Floor, Los Angeles, CA 90071.

On December 4, 2007, I served the foregoing document described as:

### MGA'S SECOND SET OF INTERROGATORIES TO MATTEL, INC.

on the interested parties in this action addressed as follows:

### SEE ATTACHED SERVICE LIST

[X]   (BY PERSONAL SERVICE)   [ ]   By personally delivering copies to the person served. (FEDERAL)

[X]   I caused such document to be hand delivered to the office of the addressee. (FEDERAL) [As Noted.]

[X]   **(BY MAIL)** I am readily familiar with the firm's practice for the collection and processing of correspondence for mailing with the United States Postal Service and the fact that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California and placed for collection and mailing following ordinary business practices. [As Noted.]

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Executed on December 4, 2007 at Los Angeles, California.

Allison G. Velkes
PRINT NAME                    SIGNATURE

1

Exhibit 109,
P. 426

## SERVICE LIST

John B. Quinn, Esq.
Michael T. Zeller, Esq.
Jon D. Corey, Esq.
Timothy L. Alger, Esq.
Quinn Emanuel Urquhart Oliver &
Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543
(213)  443-3000
(213)  443-3100 (Fax)

Attorneys for Mattel, Inc.
[Personal Service]

John W. Keker, Esq.
Michael H. Page, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA  94111
(415)  391-5400
(415)  397-7188 (Fax)

Attorneys for Carter Bryant
[Mail]

Mark E. Overland, Esq.
Alexander H. Cote, Esq.
David C. Scheper, Esq.
Overland Borenstein Scheper & Kim
300 South Grand Avenue, Suite 2750
Los Angeles, CA  90071
(213)  613-4655
(213)  613-4656 (Fax)

Attorneys for Carlos Gustavo Machado
Gomez
[Mail]

2

Exhibit 109
P. 427