1  THOMAS J. NOLAN (Bar No. 66992)
   (tnolan@skadden.com)
2  JASON D. RUSSELL (Bar No. 169219)
   (jrussell@skadden.com)
3  MARINA V. BOGORAD (Bar No. 217524)
   (mbogorad@skadden.com)
4  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   300 South Grand Avenue, Suite 3400
5  Los Angeles, CA  90071
   Tel.: (213) 687-5000/Fax: (213) 687-5600
6
7  RAOUL D. KENNEDY (Bar No. 40892)
   (rkennedy@skadden.com)
8  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   4 Embarcadero Center, Suite 3800
   San Francisco, CA  94111-5974
9  Tel.: (415) 984-2698 / Fax: (415) 984-2626

10 Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and
   Isaac Larian

11                    UNITED STATES DISTRICT COURT

12                   CENTRAL DISTRICT OF CALIFORNIA

13                          EASTERN DIVISION

14

15 CARTER BRYANT, an individual,        )  CASE NO.  CV  04-9049  SGL
                                        )  (RNBx)
                            Plaintiff,  )
16                                      )  Consolidated with Case No. 04-
                  v.                    )  9059 and Case No. 05-2727
17                                      )
   MATTEL,    INC.,    a    Delaware    )  Honorable Stephen G. Larson
18 corporation,                         )
                                        )  MGA PARTIES' REVISED
19                          Defendant.  )  DISPUTED [PROPOSED] JURY
                                        )  INSTRUCTIONS
20 ─────────────────────────────────   )
                                        )
21 AND CONSOLIDATED ACTIONS.            )
   ─────────────────────────────────   )

22

23

24

25

26

27

28

## PRELIMINARY INSTRUCTIONS

| **No.** | **Description** | **Page** |
|---|---|---|
| 9th Cir. 1.2 | CLAIMS AND DEFENSES – PHASE 1A | 1 |
| CACI 107 | DISCREPANCIES IN TESTIMONY | 3 |
| FJPI 104.53 | EXTRAJUDICIAL ADMISSIONS-CAUTIONARY INSTRUCTIONS | 4 |
| 9th Cir. 1.15 | QUESTIONS TO WITNESSES BY JURORS | 5 |

## PHASE 1A CLAIMS INSTRUCTIONS

| **No.** | **Description** | **Page** |
|---|---|---|
| Special Inst. __ | DECLARATORY RELIEF | 6 |
| Special Inst. __ | BREACH OF CONTRACT—INTRODUCTION | 8 |
| CACI 303 (1) | BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS | 9 |
| CACI 303 (2) | CONTRACT CLAIM – SECTION 2(A) OF INVENTIONS AGREEMENT | 10 |
| CACI 314 (1) | INTERPRETATION OF PARTICULAR TERMS | 12 |
| CACI 314 (2) | INTERPRETATION—DISPUTED TERM | 13 |
| CACI 315 | INTERPRETATION—MEANING OF ORDINARY WORDS | 14 |
| CACI 316 | INTERPRETATION—MEANING OF TECHNICAL WORDS | 15 |
| CACI 317 | INTERPRETATION—CONSTRUCTION OF CONTRACT AS A WHOLE | 16 |
| CACI 318 | INTERPRETATION—CONSTRUCTION BY CONDUCT | 17 |
| CACI 320 | INTERPRETATION—CONSTRUCTION AGAINST DRAFTER | 18 |
| Special Inst. __ | INTERPRETATION—ADHESION CONTRACTS | 19 |
| CACI 320 (3) | INTERPRETATION—UNCONSCIONABILITY | 20 |
| Special Inst. __ | INTERPRETATION – INTENT NEVER EXTENDED | 21 |
| Special Inst. __ | INTERPRETATION – AVOIDING EXTRAORDINARY, HARSH, UNJUST, OR INEQUITABLE INTERPRETATION | 22 |
| CACI 305 | MODIFICATION | 23 |
| Special Inst. __ | PROTECTION OF EMPLOYEES' RIGHTS TO THEIR INVENTIONS (LABOR CODE § 2870) | 24 |
| Special Inst. __ | CONTRACT CLAIM – SECTION 3(A) OF INVENTIONS AGREEMENT | 24 |

| No. | Description | Page |
|---|---|---|
| Special Inst. __ | CONTRACT CLAIM—RIGHT TO OBTAIN NEW EMPLOYMENT | 24 |
| CACI 300 | CONTRACT CLAIM – CONFLICT OF INTEREST QUESTIONNAIRE | 24 |
| CACI 302 | CONTRACT FORMATION—ESSENTIAL FACTUAL ELEMENTS | 24 |
| Special Inst. __ | CONTRACT FORMATION—DOCUMENT MUST OBVIOUSLY BE A CONTRACT | 24 |
| Special Inst. __ | CONSIDERATION | 24 |
| Special Inst. __ | EVIDENCE OF GOOD FAITH | 25 |
| Special Inst. __ | COPYRIGHT ACT § 204(A) , CALIFORNIA CIVIL CODE § 988 | 26 |
| CACI 2201 (1) | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—ELEMENT | 28 |
| CACI 2201 (2) | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—INTENT | 30 |
| Special Inst. __ | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—INDUCEMENT | 31 |
| Special Inst. __ | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—HIRING OF AT WILL EMPLOYEES OF COMPETITORS | 32 |
| Special Inst. __ | "BUT FOR" CAUSATION | 34 |
| Special Inst. __ | AIDING AND ABETTING BREACH OF FIDUCIARY DUTY | 35 |
| CACI 4101 | FIDUCIARY DUTY—ELEMENTS OF A CLAIM FOR BREACH OF FIDUCIARY DUTY | 38 |
| CACI 4100 | FIDUCIARY DUTY—DEFINED | 39 |
| Special Inst. __ | FIDUCIARY DUTY—EXISTENCE OF DUTY | 40 |
| Special Inst. __ | FIDUCIARY DUTY—BURDEN OF PROVING BREACH | 41 |
| Special Inst. __ | BREACH – RIGHT TO PREPARE TO COMPETE | 42 |
| CACI 4102 (1) | HARM CAUSED BY BREACH OF FIDUCIARY DUTY | 43 |
| Special Inst. __ | AIDING AND ABETTING BREACH OF DUTY OF LOYALTY | 44 |
| CACI 4102 (2) | BREACH OF THE DUTY OF LOYALTY–ESSENTIAL FACTUAL ELEMENTS | 47 |
| Special Inst. __ | DUTY OF LOYALTY DEFINED | 48 |
| Special Inst. __ | BREACH OF THE DUTY OF LOYALTY | 49 |
| CACI 4102 (3) | CONSENT TO EMPLOYEE'S ACTIONS | 52 |
| CACI 4102 (4) | HARM CAUSED BY BREACH OF THE DUTY OF LOYALTY | 53 |

| No. | Description | Page |
|-----|-------------|------|
| CACI 2100 | CONVERSION—ELEMENTS | 54 |

## PHASE 1 – Affirmative Defenses

| No. | Description | Page |
|-----|-------------|------|
| Special Inst. __ | Affirmative Defenses—General | 56 |
| CACI 4120 | Statute of Limitations—Explanation | 57 |
| Special Inst. __ | Mattel's Date of Filing Of Its Claims | 58 |
| Special Inst. __ | Defense: Statute of Limitations (Breach of Duty of Loyalty) | 59 |
| Special Inst. __ | Defense: Statute of Limitations (Intentional Interference with Contract) | 60 |
| Special Inst. __ | Defense: Statute of Limitations (Aiding and Abetting Breach of Fiduciary Duty) | 62 |
| Special Inst. __ | Defense: Statute of Limitations (Aiding and Abetting Breach of Duty of Loyalty) | 62 |
| Special Inst. __ | Defense: Statute of Limitations (Copyright Infringement) | 63 |
| Special Inst. __ | Defense: Statute of Limitations (Conversion) | 64 |
| Special Inst. __ | Defense: Statute of Limitations (Statutory Unfair Competition) | 66 |
| Special Inst. __ | Laches: Introduction | 67 |
| Special Inst. __ | Defense: Laches | 68 |
| CACI 336 | Affirmative Defense – Waiver | 69 |
| CACI 1302 | Affirmative Defense – Consent | 71 |
| Special Inst. __ | Estoppel—Definition | 72 |
| Special Inst. __ | Defense: Estoppel of Copyright Claims | 73 |
| Special Inst. __ | Defense: Estoppel of Employment Claims | 74 |
| Special Inst. __ | Defense: Acquiescence | 75 |
| 9th Cir. 17.19 | Defense:  Abandonment (Copyright Infringement) | 76 |
| Special Inst. __ | Defense: 205(d) (Bona Fide Purchaser for Value) | 77 |
| Special Inst. __ | Defense: Good Faith | 78 |
| Special Inst. __ | Defense:  De Minimis Use | 79 |
| Special Inst. __ | Defense:  Unclean Hands | 80 |

## PHASE 1(b) – Damages

| No. | Description | Page |
|-----|-------------|------|
| 9th Cir. 5.1 | Damages—Introduction | 81 |
| CACI 350 (1) | Introduction to Contract Damages | 82 |
| CACI 350 (2) | Measure of Damages—Breach of the "Inventions" Provision of the Employee Agreement | 82 |

| CACI 350 (3) | Measure of Damages—Breach of the "Moonlighting" Provision of the Employee Agreement | 82 |
| CACI 350 (4) | Measure of Damages—Breach of the Conflict Questionnaire | 82 |
| Special Inst. __ | Measure of Damages for Intentional Interference with Contract | 83 |
| CACI 2102 | Measure of Damages for Conversion | 84 |
| Special Inst. __ | Measure of Damages for Breach of Fiduciary Duty | 85 |
| Special Inst. __ | Measure of Damages for Breach of Duty of Loyalty | 85 |
| Special Inst. __ | Measure of Damages for Aiding and Abetting Breach of Fiduciary Duty | 86 |
| Special Inst. __ | Measure of Damages for Aiding and Abetting Breach of Duty of Loyalty | 88 |
| 9th Cir. 17.22 | COPYRIGHT—DAMAGES (17 U.S.C. § 504) | 90 |
| 9th Cir. 17.24 | COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS (17 U.S.C. § 504(b)) | 91 |
| Special Inst. __ | Choice of Alternative Methods of Determining Plaintiff's Damages | 93 |
| 9th Cir. 5.3 | Damages—Duty to Mitigate | 94 |
| 9th Cir. 5.6 | Nominal Damages | 95 |
| CACI 361 | Plaintiff May Not Recover Duplicate Damages | 96 |

**COPYRIGHT JURY INSTRUCTIONS**
**PHASE I-B**
**(ONLY AFTER PHASE I-A VERDICT)**

| **No.** | **Description** | **Page** |
|---|---|---|
| 9th Cir. 17.0 | COPYRIGHT – PRELIMINARY INSTRUCTION | 98 |
| | ALTERNATE: | 100 |
| 9th Cir. 17.1 | COPYRIGHT – DEFINED | 101 |
| Special Inst. 2aC | COPYRIGHT –IDEA/EXPRESSION DICHOTOMY | 103 |
| 9th Cir. 17.3 | COPYRIGHT – SUBJECT MATTER – IDEAS AND EXPRESSION | 104 |
| 9th Cir. 17.6 | COPYRIGHT INTERESTS – AUTHORSHIP | 107 |
| Special Inst. 5C | COPYRIGHT INTERESTS – ORIGINALITY AND REGISTRATION | 108 |
| Special Inst. 6C | COPYRIGHT INFRINGEMENT – COPYING | 109 |
| Special Inst. 7C | COPYRIGHT INFRINGEMENT – FACTUAL COPYING | 110 |
| Special Inst. 8C | COPYRIGHT INFRINGEMENT – LEGAL COPYING – SUBSTANTIAL SIMILARITY | 112 |
| Special Inst. 9C | COPYRIGHT INFRINGEMENT – EXTRINSIC TEST; INTRINSIC TEST | 114 |

| No. | Description | Page |
|-----|-------------|------|
| Special Inst. 10C | COPYRIGHT INFRINGEMENT – COMPARING TWO DIMENSIONAL WORK WITH A THREE DIMENSIONAL WORK | 112 |
| Special Inst. 11C | COPYRIGHT INFRINGEMENT – INDEPENDENT CREATION | 123 |
| Special Inst. 12C | COPYRIGHT INFRINGEMENT – MULTIPLE COPYRIGHT REGISTRATIONS MATTEL HAS BASED ITS COP | 124 |
| 9th Cir. 17.20 | DERIVATIVE LIABILITY: VICARIOUS INFRINGEMENT | 125 |
| 9th Cir. 17.21 | DERIVATIVE LIABILITY: CONTRIBUTORY INFRINGEMENT | 126 |
| Special Inst. 15C | DERIVATIVE LIABILITY: INTENTIONAL INDUCEMENT | 127 |

## PRELIMINARY INSTRUCTIONS

## -REVISED-

## CLAIMS AND DEFENSES – PHASE 1A

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

In this trial, the plaintiff is Mattel and the defendants are MGA Entertainment, Inc., MGA Entertainment (HK) Limited and Isaac Larian.

Mattel has asserted the following claims against MGA Entertainment, Inc.: (1) Declaratory Relief; (2) Intentional Interference with Contract; (3) Aiding and Abetting Breach of Fiduciary Duty; and (4) Aiding and Abetting Breach of the Duty of Loyalty.

Mattel has asserted the following claims against Isaac Larian:  (1) Declaratory Relief; (2) Conversion; (3) Intentional Interference with Contract; (4) Aiding and Abetting Breach of Fiduciary Duty; (5) Aiding and Abetting Breach of the Duty of Loyalty; and (6) Unfair Competition.

Mattel has asserted the following claims against MGA Entertainment (HK) Limited: (1) Declaratory Relief; (2) Conversion; and (3) Unfair Competition.

Mattel has the burden of proving these claims.

The defendants deny Mattel's claims. MGA, MGA (HK) and Isaac Larian also contend that Mattel's claims are barred by certain affirmative defenses:  (1) the statute of limitations; (2) laches; (3) estoppel; (4) waiver; (5) consent; (6)

1

1  acquiescence; (7) abandonment; (8) bona fide purchaser for value; and (9) unclean
2  hands.  Mattel denies defendants' affirmative defenses.  Defendants have the burden
3  of proof on these affirmative defenses.

5  **Authority:**  Ninth Circuit Manual of Model Jury Instructions, Civil, 1.2 (2007).

## DISCREPANCIES IN TESTIMONY

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony. You should consider whether a discrepancy pertains to an important matter or only to something trivial.

**Authority:**  CACI No. 107 (2008) (as modified).

# EXTRAJUDICIAL ADMISSIONS-CAUTIONARY INSTRUCTIONS

A statement made by a party before trial that has a tendency to prove or disprove any material fact in this action and which is against that party's interest is an admission. Evidence of an oral admission not made under oath should be viewed with caution.

**Authority:**   See Fed. R. Evid. 801(d)(2); 3 Kevin F. O'Malley, Jay E. Grenig, & Hon. William C. Lee, Fed. Jury Prac. & Instr. § 104.53 (5th ed.); BAJI § 2.25 (2008).

## QUESTIONS TO WITNESSES BY JURORS

You will be allowed to propose written questions to witnesses after the lawyers have completed their questioning of each witness.  You may propose questions in order to clarify the testimony, but you are not to express any opinion about the testimony or argue with a witness.  If you propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question on a form provided by the court.  Do not sign the question.  I will review the question with the attorneys to determine if it is legally proper.

There are some proposed questions that I will not permit, or will not ask in the wording submitted by the juror.  This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case.  If I do not ask a proposed question, or if I rephrase it, do not speculate as to the reasons.  Do not give undue weight to questions you or other jurors propose.  You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence.

By giving you the opportunity to propose questions, I am not requesting or suggesting that you do so.  It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions, Civil, 1.15 (2007).

## PHASE 1A CLAIMS INSTRUCTIONS

## DECLARATORY RELIEF

Mattel has asserted a claim for declaratory relief.

I will now instruct you regarding the law as to this claim.

## -REVISED-

## DECLARATORY RELIEF:  THE PARTIES' CLAIMS

The parties dispute their rights and obligations with respect to certain BRATZ sketches prepared by Carter Bryant.  Mattel seeks a declaration that MGA, Larian and MGA (HK) have no valid ownership rights in the BRATZ sketches, that Mattel is the true owner of the BRATZ sketches, and any agreements between Bryant and MGA assigning the rights to the BRATZ sketches is void.  Isaac Larian, MGA and MGA (HK) dispute Mattel's claims.

Mattel's claim is based on an agreement between Carter Bryant and Mattel called the "Employee Confidential Information and Inventions Agreement" or simply the "Inventions Agreement."  In a few moments, I will explain this agreement and Mattel's claims regarding this agreement in more detail.  In order to decide Mattel's declaratory relief claim, you will first have to decide whether Carter Bryant breached certain sections of the Inventions Agreement.

1.     If you find that Carter Bryant did not breach Section 2(a) of the Inventions Agreement, you must also find that Mattel has not met its burden in proving its declaratory relief claim.

2.      If you find that Carter Bryant did breach Section 2(a) of the Inventions Agreement, you must then determine whether MGA purchased the rights in good faith.  If you find MGA purchased its rights in good faith, you must find for MGA, MGA (HK), and Isaac Larian on this claim.

3.      If you find that Carter Bryant did breach Section 2(a) of the Inventions Agreement, and you do not find that MGA purchased its rights in good faith, then you must determine whether, under section 204(a) of the Copyright Act and Section 988 of the California Civil Code, the Inventions Agreement transferred any copyright ownership in the BRATZ sketches to Mattel.  If you find that the Inventions Agreement does not satisfy these sections, you must find for MGA, MGA (HK), and Isaac Larian on this claim.

Finally, if you find for Mattel on this claim, you must identify which BRATZ sketches MGA, Larian and MGA (HK) do not have a valid ownership interest in.

7

**BREACH OF CONTRACT CLAIMS**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

**BREACH OF CONTRACT—INTRODUCTION**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

8

## -REVISED-

## BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS

To show that Carter Bryant has breached a contract, Mattel must prove all of the following:

1. That Mattel and Carter Bryant entered into a valid contract (For purposes of this trial, you are to assume that a valid contract exists);

2. That Mattel did all, or substantially all, of the significant things that the contract required it to do;

3. That all the conditions by the contract for Carter Bryant's performance had occurred;

4. That Carter Bryant did something that the contract prohibited him from doing or failed to do something he was obligated to do; and

5. That Mattel was harmed by that conduct.

**Authority:** CACI No. 303 (2008) (as modified).

**-REVISED-**

**CONTRACT CLAIM – SECTION 2(A) OF INVENTIONS AGREEMENT**

Mattel claims that Carter Bryant breached Sections 2(a) of his Inventions Agreement.

Section 2(a) provides: "I agree to communicate to the Company as promptly and fully as practicable all inventions [as defined below] conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents, and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings."

The Inventions Agreement defines the term "inventions" as follows: "the term 'inventions' includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable."

Mattel's claim relates to the BRATZ sketches prepared by Carter Bryant, which have been admitted into evidence as Exhibits _____. Mattel claims that the term "inventions" in the Inventions Agreement includes all creative works and applies to the BRATZ sketches. Mattel also contends that Carter Bryant "conceived or reduced to practice" the BRATZ sketches during his employment at Mattel. Mattel claims that Carter Bryant breached Section 2(a) of the Inventions Agreement by failing to communicate those "inventions" to Mattel.

10

MGA contends that Bryant neither conceived of the BRATZ sketches nor reduced them to practice during his employment at Mattel.

In order to prevail on its claim, Mattel bears the burden of proving by a preponderance of the evidence:

    1.    That the term "inventions" in the Inventions Agreement applies to the BRATZ sketches;

    2.    That Carter Bryant conceived or reduced to practice the invention during his employment at Mattel;

    3.    That Carter Bryant failed to communicate to Mattel the invention as promptly and fully as practicable; and

    4.    That Mattel was harmed by that failure.

**Authority:**  CACI No. 303 (2008) (as modified); Hitzeman v. Rutter, 243 F.3d 1345, 1356 (Fed Cir. 2001) (quoting Burroughs Wellcome Co. v. Barr Labs., Inc., 40 F.3d 1223, 1228 (1994)).

**INTERPRETATION OF PARTICULAR TERMS**

I am going to instruct you as to the meaning of certain terms in the Inventions Agreement. "Conceived" refers to the mental part of an invention.  The test for conception is whether the inventor had an idea that was definite and permanent enough that one skilled in the art could understand the invention.  An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan.

"Reduced to practice" refers to creating the physical embodiment of an invention that achieves its purported purpose.  In order for an invention to be reduced to practice, the invention does not need to be in a final or perfect form, but the inventor's efforts must have passed beyond crude and imperfect experiments.

I have found that the following terms are ambiguous.  You must determine whether Mattel has met its burden to prove the meaning of the term "inventions" and the term "during my employment by the Company."   The following instructions may help you interpret the meaning of those terms in the contract.

**Authority:**  CACI No. 314 (2008) (as modified); Hitzeman v. Rutter, 243 F.3d 1345, 1356 (Fed. Cir. 2001) (quoting Burroughs Wellcome Co. v. Barr Labs., Inc., 40 F.3d 1223, 1228 (Fed. Cir. 1994)).

**INTERPRETATION—DISPUTED TERM**

In deciding what the terms of a contract mean, you must decide what the parties intended at the time the contract was created.  You may consider the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract.

**Authority:** CACI No. 314 (2008) (as modified).

1

## INTERPRETATION—MEANING OF ORDINARY WORDS

2

3   You should assume that the parties intended the words in their contract to have their usual

4   and ordinary meaning unless you decide that the parties intended the words to have a

5   special meaning.

6

7   **Authority:** CACI No. 315 (2008).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTERPRETATION—MEANING OF TECHNICAL WORDS

You should assume that the parties intended technical words used in the contract to have the meaning that is usually given to them by people who work in that technical field, unless you decide that the parties clearly used the words in a different sense.

In this case, defendants contend that "inventions," "conceived" and "reduced to practice" are terms of art generally associated with patent law and relate to "inventions" that are potentially patentable. Defendants further contend that the word "invention" is not ordinarily used in connection with copyright law, which instead provides protection for "original works of authorship." Mattel denies those contentions.

**Authority:** CACI No. 316 (2008) (modified).

1    **INTERPRETATION—CONSTRUCTION OF CONTRACT AS A WHOLE**

2

3    In deciding what the words of a contract meant to the parties, you should consider the

4    whole contract, not just isolated parts.  You should use each part to help you interpret the

5    others, so that all the parts make sense when taken together.

6

7    **Authority:** CACI No. 317 (2008).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

# INTERPRETATION—CONSTRUCTION BY CONDUCT

In deciding what the words in a contract meant to the parties, you may consider how the parties acted after the contract was created but before any disagreement between the parties arose.  You may also consider evidence of Mattel's practical interpretation of the contract terms in dealing with other Mattel employees.  You may also consider Mattel's efforts to enforce the rights it claims in dealing with other employees, including the use of different contractual terms.

**Authority:** CACI No. 318 (2008) (modified); <u>Warner Bros., Inc. v. Curtis Mgmt. Group, Inc.</u>, No. CV 91-4016-WMB, 1995 WL 420043 (C.D. Cal. Mar. 31, 1993); <u>Heston v. Farmers Ins. Group</u>, 160 Cal. App. 3d 402 (1984); <u>see also</u> <u>Montrose Chem. Corp. v. Admiral Ins. Co.</u>, 10 Cal. 4th 645, 670 (1995) (drafting history of standardized form policy was relevant to interpreting meaning of contract).

1  **INTERPRETATION—CONSTRUCTION AGAINST DRAFTER**

2

3  In determining the meaning of a term of the contract, you must first consider all of the

4  other instructions that I have given you.  If, after considering these instructions, you still

5  cannot agree on the meaning of the term, then you should interpret the contract term

6  against the party that drafted the term.

7

8  **Authority:** CACI No. 320 (2008); <u>Powerline Oil Co. v. Superior Court</u>, 37 Cal. 4th 377,

9  391 (2005); <u>Graham v. Scissor-Tail, Inc.</u>, 28 Cal. 3d 807, 819-20 n.16 (1981); <u>see also</u> Cal.

10  Civ. Code § 1654 ("[T]he language of a contract should be interpreted most strongly

11  against the party who caused the uncertainty to exist."); <u>Badie v. Bank of America</u>, 67 Cal.

12  App. 4th 779 (1998) (adhesion); <u>Mayhew v. Benninghoff</u>, 53 Cal. App. 4th 1365 (1997)

13  (one party's attorney); <u>Neal v. State Farm Ins. Cos.</u>, 188 Cal. App. 2d 690, 694 (1961)

14  (adhesion).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTERPRETATION—ADHESION CONTRACTS

Defendants contend that Bryant's contract is a contract of adhesion. Thus, you must also consider whether the contract is adhesive.  An adhesive contract is a contract in which:

      1.     The agreement is drafted by the party of superior bargaining power;

      2.     The agreement is a standardized contract; and

      3.     The agreement is presented on a take it or leave it basis.

In the case of adhesion contracts, the rule of construction against the drafter applies more strongly.

**Authority:** Directions for Use, CACI No. 320 (2008); Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83 (2000); Badie v. Bank of America, 67 Cal. App. 4th 779 (1998) (adhesion); Mayhew v. Benninghoff, 53 Cal. App. 4th 1365 (1997) (one party's attorney); Neal v. State Farm Ins. Co., 188 Cal. App. 2d 690, 694 (1961) (adhesion); see also Geoffroy v. Washington Mut. Bank, 484 F. Supp. 2d 1115, 1122 (S.D. Cal. 2007); Discover Bank v. Superior Court, 36 Cal. 4th 148, 160 (2005); Graham v. Scissor-Tail, Inc., 28 Cal. 3d 807, 820 n.18 (1981); Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 271 (1966); Steven v. Fid. & Cas. Co., 58 Cal. 2d 862, 878 (1962); Cubic Corp. v. Marty, 185 Cal. App. 3d 438, 450 (1986).

1  **INTERPRETATION—UNCONSCIONABILITY**

2  *-EXCLUDED PURSUANT TO MOTION IN LIMINE AND WITHDRAWN-*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1

## INTERPRETATION – INTENT NEVER EXTENDED

2

3   However broad the terms of a contract may be, the contract extends only to those things

4   concerning that which it appears that the parties actually intended to contract.

5

6   **Authority:**  Cal. Civ. Code § 1648.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTERPRETATION – AVOIDING EXTRAORDINARY, HARSH, UNJUST, OR INEQUITABLE INTERPRETATION:**

In deciding what the words of a contract meant to the parties, you must avoid an interpretation which will make the contract extraordinary, harsh, unjust, inequitable or which would result in an absurdity.

**Authority:** Cal. Civ. Code § 1638; <u>Strong v. Theis</u>, 187 Cal. App. 3d 913 (1986); <u>County of Marin v. Assessment Appeals Bd.</u>, 64 Cal. App. 3d 319 (1976).

1 **MODIFICATION**

2

3 Defendants claim that the Inventions Agreement and was modified or changed.  Mattel

4 denies that the contract was modified.

5

6 The parties to a contract may agree to modify its terms.  You must decide whether a

7 reasonable person would conclude from the words and conduct of Mattel and Bryant that

8 they agreed to modify the contract.  You cannot consider the parties' hidden intentions.

9

10 A contract in writing may be modified by an oral agreement to the extent the oral

11 agreement is carried out by the parties.

12

13 Further, a modification to a contract can be created by the conduct of the parties, without

14 spoken or written words.  Contracts created by conduct are just as valid as contracts

15 formed with words.

16

17 Conduct will create a modification if the conduct of both parties is intentional and each

18 knows, or has reason to know, that the other party will interpret the conduct as an

19 agreement to modify the contract.

20

21 **Authority:**  CACI Nos. 305, 313 (2008) (as modified).

22

23

24

25

26

27

28

**PROTECTION OF EMPLOYEES' RIGHTS TO THEIR INVENTIONS (LABOR CODE § 2870)**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

**CONTRACT CLAIM – SECTION 3(A) OF INVENTIONS AGREEMENT**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

**CONTRACT CLAIM—RIGHT TO OBTAIN NEW EMPLOYMENT**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

**CONTRACT CLAIM – CONFLICT OF INTEREST QUESTIONNAIRE**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

**CONTRACT FORMATION—ESSENTIAL FACTUAL ELEMENTS**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

**CONTRACT FORMATION—DOCUMENT MUST OBVIOUSLY BE A CONTRACT**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

**CONSIDERATION**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

**-REVISED-**

**EVIDENCE OF GOOD FAITH**

As I explained before, if you find that Carter Bryant breached Section 2(a) of the Inventions Agreement, you must then determine whether MGA purchased the rights in good faith.  If you find MGA purchased its rights in good faith, you must find for MGA, MGA (HK), and Isaac Larian on Mattel's declaratory relief claim.

In determining whether Mattel is entitled to relief, the good faith of Carter Bryant, Larian, MGA, and MGA (HK) is a factor that should be considered when assessing any claim by Mattel that Carter Bryant, Larian, MGA, and MGA (HK) acted in bad faith or with bad intent.  To the extent Mattel's claims implicate defendants' intent or mental state, good faith is a relevant inquiry for which Mattel bears the burden of proof.

**Authority:**  People v. Webb, 74 Cal. App. 4th 688, 694 (1999); 5 B.E. Witkin, Cal. Proc.: Pleadings § 1008 (4th ed. 1997) (distinguishing new matters from facts constituting a denial of an element and identifying good faith as the latter and, thus, not an affirmative defense).

1

**-REVISED-**

2 **COPYRIGHT ACT § 204(A) , CALIFORNIA CIVIL CODE § 988**

3

4 As I also explained before, if you find that Carter Bryant breached Section 2(a) of the

5 Inventions Agreement, and you do not find that MGA purchased its rights in good faith,

6 then you must determine whether, under section 204(a) of the Copyright Act and Section

7 988 of the California Civil Code, the Inventions Agreement transferred any copyright

8 ownership in the BRATZ sketches to Mattel.  If you find that the Inventions Agreement

9 does not satisfy these sections, you must find for MGA, and Isaac Larian on Mattel's

10 declaratory relief claim.

11

12 If you find that the BRATZ sketches were an invention conceived or reduced to practice

13 by Mr. Bryant during his employment with Mattel, you must also determine whether the

14 Inventions Agreement satisfies the requirements of Section 204(a) of the Copyright Act

15 and California Civil Code § 988.  If you find that the BRATZ sketches were not an

16 invention conceived or reduced to practice by Mr. Bryant during his employment with

17 Mattel, then you need not consider this instruction.

18

19 I will now explain Copyright Act § 204(a) and California Civil Code §988.  Under Section

20 204(a) of the Copyright Act, any transfer of copyright ownership must be clear and in

21 writing to be valid. Specifically, the written transfer instrument must (1) reasonably

22 identify the subject matter of the agreement; (2) be sufficient to indicate that the parties

23 have come to an agreement; and (3) state with reasonable certainty the essential terms of

24 the contract. Similarly, under California Civil Code Section 988, in a written agreement

25 transferring any of a copyright owner's rights, any ambiguity about the nature or scope of

26 the rights conveyed must be resolved to preserve the rights of the original owner.

27

28

1  These requirements prevent the inadvertent transfer of ownership rights by forcing a party

2  who wants to use the copyrighted work to negotiate with the creator to determine precisely

3  what rights are being transferred and at what price.  Any ambiguity in a purported transfer

4  should be resolved in favor of the original copyright holder or creator keeping the rights to

5  the copyrighted work.

6

7  If you find that the Inventions Agreement does not satisfy the above requirements of §

8  204(a) of the Copyright Act or California Civil Code Section 988, then you must find for

9  defendants on Mattel's declarative relief claim.

10

11  **Authority:**  17 U.S.C. § 204(a); <u>Konigsberg, Int'l, Inc. v. Rice</u>, 16 F.3d 355, 357 (9th Cir.

12  1994) (requiring written transfer instrument to "be a product of the parties' negotiations");

13  <u>Effects Assocs., Inc. v. Cohen</u>, 908 F.2d 555, 557 (9th Cir. 1990); <u>Foraste v. Brown Univ.</u>,

14  290 F. Supp. 2d 234, 240-41 (D.R.I. 2003) (collecting cases holding that 204(a) requires

15  the drafter of a transfer document to be "explicit," "precis[e]," "clear," and

16  "unequivocal"); <u>Bieg v. Hovnonian Enters., Inc.</u>, 157 F. Supp. 2d 475, 480 (E.D. Pa.

17  2001); <u>Pamfiloff v. Giant Records, Inc.</u>, 794 F. Supp. 933, 936 (N.D. Cal. 1992); Cal. Civ.

18  Code § 988(c); 13 B.E. Witkin, <u>Summary of California Law: Personal Property</u> § 47 (10th

19  ed. 2005); <u>Chamberlain v. Cocola Assocs.</u>, 958 F.2d 282, 283-84 (9th Cir. 1992)

20

21

22

23

24

25

26

27

28

## INTENTIONAL INTERFERENCE WITH CONTRACT CLAIM

Mattel has asserted a claim for intentional interference with contract against MGA and Isaac Larian.

I will now instruct you regarding the law as to this claim.

### -REVISED-

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS — ELEMENTS

Mattel claims that defendants Isaac Larian and MGA Entertainment Inc. intentionally interfered with a contract between Mattel and Carter Bryant.

Mattel's claim is only based on the agreement between Carter Bryant and Mattel in which Mattel entrusted Bryant with confidential information and Bryant agreed to keep that information confidential.  You should assume that there was an agreement between Mattel and Bryant but it is up to you do decide what that agreement means.

Mattel's claim is not based on, and you should not consider, whether Mattel has a right to or owns BRATZ.

To establish this claim, Mattel must prove all of the following:

1. That there was a valid and enforceable contract between Mattel and Carter Bryant in which Mattel entrusted Bryant with confidential information and Bryant agreed to keep it confidential (For purposes of this trial, you are to assume that there was a valid and enforceable contract);

28

2. That Larian and MGA actually knew of the contract and its terms;

3. That Larian and MGA intended to disrupt the performance of Bryant's contract with Mattel;

4. That Larian and MGA engaged in wrongful conduct independent of "interfering" with Bryant's contract with Mattel through aiding and abetting Bryant in a breach of the duties he owed Mattel;

5. That Larian and MGA's conduct prevented performance of Bryant's contract;

6. That Mattel was harmed; and

7. That Larian and MGA's conduct was a substantial factor in causing Mattel's harm.

**Authority:**   CACI Nos. 2201, 2202 & 2203 (2008) (as modified).

**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS— INTENT**

To prove that MGA and Larian intended to interfere with Bryant's contract with Mattel, Mattel must show that MGA and Larian actually knew that a breach of Bryant's contract was certain or substantially certain to occur as a result of their actions. There is no intent to interfere where the defendant knows or believes its agreement with a third party will not infringe the rights of the plaintiff.

**Authority:**   CACI Nos. 2201, 2202 & 2203 (2008); Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist., 106 Cal. App. 4th 1219, 1239 (2003) (intent); 1-800 Contacts, Inc. v. Steinberg, 107 Cal. App. 4th 568 (2003) (intent).

# INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS — INDUCEMENT

A defendant is not liable for intentional interference with contract where the breaching party is the one who initiates contact with the defendant, even if the defendant knows the breaching party has a contract with someone else and even if the defendant suspects that entering a contract with the breaching party may cause the breaching party to breach his or her obligation to another.  Here's an example. Bill is under contract to sell certain goods to Chad.  Bill offers to sell the same goods to Adam, who knows Bill has a contract with Chad.  Even if Adam accepts Bill's offer and buys the goods, Adam has not induced Bill's breach and is not liable for intentional interference with the contract between Bill and Chad.

**Authority:** Restatement (Second) of Torts § 766, cmt. n (2007) (inducement); DeVoto v. Pac. Fid. Life Ins.Co., 618 F.2d 1340, 1348 (9th Cir. 1980) (inducement); Bauer v. Interpublic Group of Cos., 255 F. Supp. 2d 1086, 1093, 1095 (N.D. Cal. 2003) (inducement); Dryden v. Tri-Valley Growers, 65 Cal. App. 3d 990, 996 (1977) (inducement).

1  **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS —**
2  **HIRING OF AT WILL EMPLOYEES OF COMPETITORS**
3
4  Bryant worked **"at will"** for Mattel, meaning that he could leave Mattel at any time, and he
5  could be let go by Mattel for any reason or no reason.  Thus, Bryant was entitled to look
6  for another job while still employed at Mattel, and to leave his employment with Mattel to
7  work with a competitor or to compete himself against Mattel.
8
9  It is not wrongful for a company to solicit or hire the at-will employee of its competitor,
10 because California law protects employees and their pursuit of any employment or
11 enterprise of their choice as more important than the competitive business interests of the
12 employers.  Likewise, competitor employers have the right to offer more pay or better
13 terms to another's employee, so long as the employee is free to leave.
14
15 **Authority:**  See also Reeves v. Hanlon, 33 Cal. 4th 1140, 1151 (2004) (California "public
16 policy generally supports a competitor's right to offer more pay or better terms to
17 another's employee, so long as the employee is free to leave. … [I]f the law were to the
18 contrary, the result 'would be intolerable, both to such employers as could use the
19 employe[e] more effectively and to such employe[e]s as might receive added pay. It would
20 put an end to any kind of competition.'") (citation omitted); Metro Traffic Control, Inc. v.
21 Shadow Traffic Network, 22 Cal. App. 4th 853, 859 (1994) ("California courts have
22 consistently declared  … an expression of public policy to ensure that every citizen shall
23 retain the right to pursue any lawful employment and enterprise of their choice"); Diodes,
24 Inc. v. Franzen, 260 Cal. App. 2d 244, 255 (1968) (California public policy recognizes
25 "[t]he interests of the employee in his own mobility and betterment are deemed paramount
26 to the competitive business interests of the employers"); see also Hollingsworth Solderless
27 Terminal Co. v. Turley,  622 F.2d 1324, 1337 (9th Cir. 1980) ("[m]ere solicitation of an
28 employee, under no contract of employment, to leave and associate with a competing firm

32

is not illegal"); Interloc Solutions, Inc. v. Tech. Assoc. Int'l. Corp., No. CV071534 LEWGGHX, 2007 WL 2429715, at *2 (E.D. Cal. Aug. 24, 2007) (citing Reeves for the proposition that "employees are not precluded from seeking new employment on their own initiative"); Posdata Co. Ltd. v. Kim, No. C-07-02054 RMW, 2007 WL 1848661, *7 (N.D. Cal. June 27, 2007); Continental Car-Na-Var Corp. v. Moseley, 24 Cal. 2d 104, 110 (1944) ("[a] former employee has the right to engage in a competitive business for himself and to enter into competition with his former employer, even for the business of ... his former employer, provided such competition is fairly and legally conducted."); VL Sys., Inc. v. Unisen, Inc., 152 Cal. App. 4th 708, 713, 715 (2007) (quoting Diodes and finding no unlawful solicitation of employee where the employee initiated the new agreement with the defendant and "chose to seek the job with" the defendant).

**"BUT FOR" CAUSATION**

If the alleged loss or harm that Mattel suffered would have occurred even in the absence of the alleged wrongdoing by the defendants, then the defendants' conduct cannot be considered a substantial factor in bringing about Mattel's alleged loss or harm and you must find for the defendants.

If you determine that Mattel has suffered injury or harm, you may only compensate Mattel for the harm, if any, which was caused by the unlawful acts of the defendants.  To the extent that you find that Mattel would have suffered harm or injury even without any action from the defendants, due to Mattel's own business decisions, you may not award any damages that resulted from those business decisions.

**Authority:**  Matthew Bender, Cal. Forms Jury Inst., Ch. 1-3E § 300E.04 (as modified).

**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIM**

Mattel has asserted a claim for aiding and abetting breach of fiduciary duty against MGA and Isaac Larian.

I will now instruct you regarding the law as to this claim.

**-REVISED-**

**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

To recover on its claim for aiding and abetting, Mattel must first show that there has been a breach of fiduciary duty.  In order to show that there has been a breach upon which Mattel can base a claim, Mattel has the burden of proving by a preponderance of the evidence all the facts necessary to establish:

      1.      Bryant owed a fiduciary duty to Mattel;

      2.      Bryant breached a fiduciary duty he owed to Mattel;

      3.      Mattel was harmed; and

      4.      Bryant's conduct was a substantial factor in causing Mattel's harm;

You should assume that Bryant owed a fiduciary duty to Mattel.  This duty is based on the agreement between Bryant and Mattel in which Mattel entrusted Bryant with confidential information need to perform his job and Bryant agreed to keep the information Mattel entrusted to him confidential.  Mattel contends that Bryant's fiduciary duty included additional duties but you should not assume that to be true.  Instead, Mattel bore the

35

burden to prove through the evidence that Bryant knowingly and voluntarily agreed to take on duties beyond maintaining in confidence information that Mattel entrusted to him.  It is up to you to decide the scope of Bryant's fiduciary duty to Mattel, whether he breached his fiduciary duty, whether Mattel was harmed by that breach, and whether Bryant's conduct was a substantial factor in that harm.  In a few moments I will instruct you on what it means to have a fiduciary duty and what is required to show a breach of a fiduciary duty.

If Mattel establishes a breach upon which it may base its claim, then Mattel has the burden of proving by a preponderance of the evidence all the facts necessary to establish:

    1.    MGA and Larian substantially assisted or encouraged Bryant in accomplishing the breach; and

    2.    MGA and Larian had actual knowledge of the specific wrong they substantially assisted.

To prove actual knowledge of the underlying breach of duty, Mattel must show that MGA and Larian not only knew of Bryant's breach but also that MGA and Larian made a conscious decision to participate in wrongful activity designed to assist Bryant in his breaches.

Mattel also has to show a substantial causal connection between MGA and Larian's conduct and the harm to Mattel.  The "substantial assistance" requirement is inversely related to the knowledge factor, which means that if Mattel has only offered a small amount of evidence of MGA and Larian's "knowledge" of Bryant's alleged breach, Mattel has to show that MGA and Larian rendered a high degree of substantial assistance in Bryant's breach in order to show that MGA and Larian are liable for aiding and abetting Bryant's breach.

**Authority:** <u>MJT Sec., LLC v. Toronto-Dominion Bank</u>, No. C03-3815 CW, 2007 WL 1725421, at **7-8   (N.D.Cal. June 14, 2007) (elements); <u>Neilson v. Union Bank, N.A.</u>, 290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003) (intent); <u>Resolution Trust Corp. v. Rowe</u>, No. C90-20114 BAC, 1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993) (inverse relationship between demonstration of knowledge and substantial assistance); <u>Mendelsohn v. Capital Underwriters, Inc.</u>,   490 F. Supp. 1069, 1084 (N.D. Cal. 1979) (causation); <u>Sarkes Tarzian, Inc. v. Audio Devices, Inc.</u>, 166 F. Supp. 250 (S.D. Cal. 1958) (competitor employer did not conspire to breach duty to former employer where competitor paid at-will employee an advance and employee did not disclose intention to work for competitor), <u>aff'd</u>, 283 F.2d 695 (9th Cir. 1960); <u>Gerard v. Ross</u>, 204 Cal. App. 3d 968, 983 (1988) (intent); <u>see also</u> <u>Richard B. LeVine, Inc. v. Higashi</u>, 131 Cal. App. 4th 566, 574 (2005); <u>Casey v. U.S. Bank Nat'l Ass'n</u>, 127 Cal. App. 4th 1138, 1144 (2005); <u>Fiol v. Doellstedt</u>, 50 Cal. App. 4th 1318, 1325-26 (1996); <u>Saunders v. Superior Court</u> 27 Cal. App. 4th 832, 846 (1994); Restatement (Second) of Torts § 876; CACI Nos. 4101, 4102 (2008) (as modified); <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal. 2d 327 (1966); <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th 409 (2000), <u>overruled on other grounds by</u>, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); <u>City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 68 Cal. App. 4th 445, 483 (1998); <u>Pierce v. Lyman</u>, 1 Cal. App. 4th 1093, 1101-02 (1991) (superseded by statute on other grounds).

**BREACH OF FIDUCIARY DUTY CLAIM**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

**FIDUCIARY DUTY — ELEMENTS OF A CLAIM FOR A BREACH OF FIDUCIARY DUTY**

*-INCORPORATED INTO ELEMENTS OF CLAIM FOR AIDING AND ABETTING BREACH-*

1

## FIDUCIARY DUTY — DEFINED

2

3 Once a party expressly agrees to assume a fiduciary duty to another, that party is obligated
4 to act on behalf of the other party, to hold the interests of the other paramount over his
5 own interests, and to take no action that would further his interests over the other person's
6 interest.

7

8 **Authority:** CACI Nos. 4100, 4102 (2008) (as modified); <u>GAB Bus. Servs., Inc. v. Lindsey</u>
9 <u>& Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th 409, 417-18 (2000), <u>overruled on other</u>
10 <u>grounds by</u> <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140 (2004); <u>City of Atascadero v. Merrill</u>
11 <u>Lynch, Pierce, Fenner & Smith, Inc.</u>, 68 Cal. App. 4th 445, 483-84 (1998).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIDUCIARY DUTY — EXISTENCE OF DUTY**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

1

## FIDUCIARY DUTY — BURDEN OF PROVING BREACH

2

3   If Carter Bryant expressly and voluntarily agreed to act as a fiduciary on behalf of Mattel,

4   you must determine the scope of that agreement and whether Mattel has met its burden of

5   proving by a preponderance of evidence that Bryant breached his fiduciary duties to Mattel.

6

7   **Authority:**  Restatement (Third) of Agency § 8.04; <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal.

8   2d 327 (1966); <u>Gonsalves v. Hodgson</u>, 38 Cal. 2d 91, 99 (1951); <u>LeMat Corp. v. Am.</u>

9   <u>Basketball Ass'n</u>, 51 Cal. App. 3d 267, 275 (1975); <u>see also</u> <u>Gateway Techs, Inc. v. MCI</u>

10  <u>Telecomm. Corp.</u>, 64 F.3d 993, 1000-01 (5th Cir. 1995).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**BREACH – RIGHT TO PREPARE TO COMPETE**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

42

1

## HARM CAUSED BY BREACH OF FIDUCIARY DUTY

2

3   Mattel must also prove by a preponderance of the evidence all facts necessary to show that

4   Mr. Bryant's breach of fiduciary duty was a substantial factor in causing Mattel harm

5   during the term of Mr. Bryant's employment.  It is not sufficient to show that Mattel was

6   harmed by Mr. Bryant's competition with Mattel after Mr. Bryant no longer was employed

7   at Mattel; rather, Mattel must show that it was harmed by conduct that Mr. Bryant engaged

8   in while he was still an employee at Mattel.

9
10   **Authority:** CACI No. 4102 (2008) (as modified); Bancroft Whitney Co. v. Glen, 64 Cal.

2d 327, 356-57 (1966); Charles T. Powner Co. v. Smith, 91 Cal. App. 101 (1928); Sumner
11
v. Nevin, 4 Cal. App. 347, 350-51 (1906); see also Sequoia Vacuum Sys., v. Stransky, 229
12
Cal. App. 2d 281, 286 (1964) (citing Daniel Orifice Fitting Co. v. Whalen, 198 Cal. App.
13
2d 791, 800 (1962)).
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AIDING AND ABETTING BREACH OF DUTY OF LOYALTY CLAIM**

Mattel has asserted a claim for aiding and abetting breach of the duty of loyalty against MGA and Isaac Larian.

I will now instruct you regarding the law as to this claim.

## -REVISED-
**AIDING AND ABETTING BREACH OF DUTY OF LOYALTY**

To recover on its claim for aiding and abetting, Mattel must first show that there has been a breach of the duty of loyalty. In order to show that there has been a breach upon which Mattel can base a claim, Mattel has the burden of proving by a preponderance of the evidence all the facts necessary to establish:

   1.   That Bryant was Mattel's employee and thus owed Mattel a duty of loyalty;

   2.   That Bryant breached his duty of loyalty by directly competing with Mattel during the term of his employment with Mattel in connection with his development of the BRATZ sketches;

   3.   That Mattel did not give informed consent to Bryant's conduct or otherwise ratify Bryant's conduct;

   4.   That Mattel was harmed during the term of Bryant's employment; and

   5.   That Bryant's conduct was a substantial factor in causing Mattel's harm.

44

1  You should assume that an employee owes his or her employer a duty of loyalty.  You
2  should also assume that Bryant breached that duty by entering into a contract with MGA
3  while still employed by Mattel.  However, it is up to you to decide if Mattel consented to
4  that breach, if Mattel was harmed by the breach, and if Bryant's conduct was a substantial
5  factor in causing that harm.  In a few moments I will instruct you on what it means to have
6  a duty of loyalty and what is required to show a breach of a duty of loyalty upon which
7  Mattel may base its claim.

8
9  If Mattel establishes a breach upon which it may base its claim, then Mattel has the burden
10 of proving by a preponderance of the evidence all the facts necessary to establish:

11
12      1.    MGA and Larian substantially assisted or encouraged Bryant in
13            accomplishing the breach; and
14
15      2.    MGA and Larian had actual knowledge of the specific wrong they
16            substantially assisted.

17
18 To prove actual knowledge of the underlying breach of duty, Mattel must show that MGA
19 and Larian not only knew of Bryant's breach but also that MGA and Larian made a
20 conscious decision to participate in wrongful activity designed to assist Bryant in his
21 breaches.

22
23 Mattel also has to show a substantial causal connection between MGA and Larian's
24 conduct and the harm to Mattel.  The "substantial assistance" requirement is inversely
25 related to the knowledge factor, which means that if Mattel has only offered a small
26 amount of evidence of MGA and Larian's "knowledge" of Bryant's alleged breach of duty,
27 Mattel has to show that MGA and Larian rendered a high degree of substantial assistance

28

MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1  in Bryant's breach in order to show that MGA and Larian are liable for aiding and abetting

2  Bryant's breach of duty.

3

4  **Authority:** CACI No. 4102 (2008) (as modified); <u>Bancroft Whitney Co. v. Glen</u>, 64 Cal.

5  2d 327, 345-346 & n.10 (1966); <u>accord</u> <u>Eckard Brandes, Inc. v. Riley</u>, 338 F. 3d 1082,

6  1086 (9th Cir. 2002); <u>Western Med. Consultants, Inc. v. Johnson</u>, 80 F.3d 1331, 1336-38

7  (9th Cir. 1996); <u>Franklin Music Co. v. Am. Broad. Cos.</u>, 616 F. 2d 528, 532-33, 537 (3d

8  Cir. 1979); <u>Merger Mgmt. Consulting, Inc. v. Wilde</u>, 920 F. Supp. 219 (D. D.C. 1996);

9  <u>Abraham Zion Corp. v. Lebow</u>, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), <u>aff'd</u>, 761 F.

10  2d 93 (2d Cir. 1985); <u>Seward v. Union Pump Co.</u>, 428 F. Supp. 161 (S.D. Texas 1977);

11  <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th 409,

12  424-25 (2000), <u>overruled on other grounds by</u>, <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140 (2004);

13  <u>Computer Sciences Corp. v. Ferguson</u>, 74 Cal. Rptr. 86, 92-93 (1968); Restatement (Third)

14  of Agency Sect. 8.04 cmt. c; <u>MJT Securities, LLC v. Toronto-Dominion Bank</u>, 2007 WL

15  1725421, at **7-8   (N.D. Cal. June 14, 2007) (elements); <u>Neilson v. Union Bank of</u>

16  <u>California, N.A.</u>, 290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003) (intent); <u>Resolution</u>

17  <u>Trust Corp. v. Rowe</u>,   1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993) (inverse

18  relationship between demonstration of knowledge and substantial assistance); <u>Mendelsohn</u>

19  <u>v. Capital Underwriters, Inc.</u>,   490 F. Supp. 1069, 1084 (N.D. Cal. 1979) (causation);

20  <u>Sarkes Tarzian, Inc. v. Audio Devices, Inc.</u>, 166 F. Supp. 250 (S.D. Cal. 1958) (competitor

21  employer did not conspire to breach duty to former employer where competitor paid at-

22  will employee an advance and employee did not disclose intention to work for competitor),

23  <u>aff'd</u>, 283 F.2d 695 (9th Cir. 1960); <u>Gerard v. Ross</u>, 204 Cal. App. 3d 968, 983 (1988)

24  (intent); <u>see also</u> <u>Richard B. LeVine, Inc. v. Higashi</u>, 131 Cal. App. 4th 566, 574 (2005);

25  <u>Casey v. U.S. Bank Nt'l Ass'n</u>, 127 Cal. App. 4th 1138, 1144 (2005); <u>Fiol v. Doellstedt</u>,

26  50 Cal. App. 4th 1318, 1325-26 (1996); <u>Saunders v. Superior Court</u> 27 Cal. App. 4th 832,

27  846 (1994); Restatement (Second) of Torts § 876.

28

**DUTY OF LOYALTY CLAIM**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

**BREACH OF THE DUTY OF LOYALTY–ESSENTIAL FACTUAL ELEMENTS**

*-INCORPORATED INTO ELEMENTS OF CLAIM FOR AIDING AND ABETTING BREACH-*

**DUTY OF LOYALTY DEFINED**

An employee owes his or her employer a duty of loyalty.  The scope of the employee's duty varies with the nature of the employee's relationship with his or her employer.  Thus, an employee who occupies a position with a high level of trust and confidence owes a higher duty of loyalty to his or her employer than an employee who occupies a low-level position.  Mattel has the burden of proving by a preponderance of the evidence all facts necessary to show the scope of Bryant's duty of loyalty to Mattel.

**Authority:**  19 <u>Williston on Contracts</u> § 54:26 (4th ed.); <u>Huong Que, Inc. v. Luu</u>, 150 Cal. App. 4th 400, 411 (2007); <u>Stokes v. Dole Nut Co.</u>, 41 Cal App. 4th 285 (1995).

# BREACH OF THE DUTY OF LOYALTY

Mattel must also prove by a preponderance of the evidence all facts necessary to show that Carter Bryant breached his duty of loyalty to Mattel.  To do so, Mattel must show that Bryant undertook actions prior to leaving his employment with Mattel that were in direct competition with Mattel and not merely preparations to compete with Mattel after his employment ended.  As previously instructed, you are to assume that Bryant's execution of a contract with MGA while he was still an employee of Mattel was a breach of the duty of loyalty.  However, Mattel contends that other actions of Bryant while still an employee constituted additional breaches of the duty of loyalty and the defendants dispute that.  It is up to you to decide whether there were any additional breaches of the duty of loyalty by Bryant while he was an employee of Mattel.

Acts of direct competition include, for example, (1) the formation of a competing company that competes against the employer while the employee is still employed by that employer, (2) the selling of competing products while still employed, (3) the diversion of sales away from an employer while still an employee; (4) the use of confidential information (such as employee salaries) to recruit employees to a competitor; (5) the misappropriation of trade secrets, (6) the solicitation of an employer's customers before terminating employment, and (7) the conspiracy to cause 'mass resignation' of key employees.

Permissible preparations to compete include, for example, (1) undertaking efforts to establish a competing business and to immediately compete after termination of employment; (2) use of small amounts of an employer's resources, such as phones, faxes, computers, and employee time; (3) discussion of a competing venture with other employees; (4) asking customers whether work might be available for a possible competing venture; (5) use of some time during work hours to prepare to compete, provided the employee continues to perform his or her job responsibilities; and (6) use of

marketing plans, customer lists or other information learned during his or her employment provided the information is not a trade secret or confidential information.  You should assume that Bryant's execution of a contract with MGA while still an employee of Mattel was not a permissible preparation to compete.  However, to the extent that Mattel contends that other actions of Bryant beyond merely entering into a contract with Mattel were breaches of the duty of loyalty, then you must decide whether such actions were permissible preparations to compete.

In addition, Bryant was not required to disclose his preparations to compete with Mattel or his efforts to obtain different employment.   An employee is entitled to seek new employment and inform his employer once he or she has made a final decision to leave his or her current job.

You may consider Bryant's intention and the surrounding circumstances in determining whether Bryant was permissibly preparing to compete or whether he breached his duty of loyalty to Mattel.

**Authority:**  Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 345-346 & n.10 (1966); accord Eckard Brandes, Inc. v. Riley, 338 F. 3d 1082, 1086 (9th Cir. 2002); Western Med. Consultants, Inc. v. Johnson, 80 F.3d 1331, 1336 -38 (9th Cir. 1996); Franklin Music Co. v. Am. Broad. Cos., 616 F.2d 528, 532-33, 537 (3d Cir. 1979); Material Supply Int'l, Inc. v. Sunmatch Indus. Co., 146 F. 3d 983, 993 (D.C. Cir. 1998); Merger Mgmt. Consulting, Inc. v. Wilde, 920 F. Supp. 219 (D. D.C. 1996); T.A. Pelsue Co. v. Grand Enters., Inc., 782 F. Supp. 1476, 1486 (D. Colo. 1991); Abraham Zion Corp. v. Lebow, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), aff'd, 761 F. 2d 93 (2d Cir. 1985); Seward v. Union Pump Co., 428 F. Supp. 161 (S.D. Texas 1977); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409,   424-25 (2000), overruled on other grounds by, Reeves v.

1    Hanlon, 33 Cal. 4th 1140 (2004); Computer Sciences Corp. v. Ferguson, 74 Cal. Rptr. 86,

2    92-93 (1968); Restatement (Third) of Agency Sect. 8.04 cmt. c.

**CONSENT TO EMPLOYEE'S ACTIONS**

Mattel must also show by a preponderance of the evidence that it did not consent to Bryant's conduct.   Such consent need not be explicit, but can be shown by implied understandings and known customs.

**Authority:** CACI No. 4102 (2008); Restatement (Third) of Agency § 8.04 cmt. b.

1

## HARM CAUSED BY BREACH OF THE DUTY OF LOYALTY

2

3  Mattel must prove by a preponderance of the evidence all facts necessary to show that
4  Bryant's breach of the duty of loyalty was a substantial factor in causing Mattel harm
5  during the term of Bryant's employment.  It is not sufficient to show that Mattel was
6  harmed by Bryant's competition with Mattel after Bryant no longer was employed at
7  Mattel.

8

9  **Authority:** CACI No. 4102 (2008); <u>Bancroft Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 356-57
10  (1966); <u>Charles T. Powner v. Smith</u>, 91 Cal. App. 101 (1928); <u>Sumner v. Nevin</u>, 4 Cal.
11  App. 347, 350-51 (1906); <u>see also</u> <u>Sequoia Vacuum Sys., v. Stansky</u>, 229 Cal. App. 2d 281,
12  286 (1964) (citing <u>Daniel Orifice Fitting Co. v. Whalen</u>, 198 Cal. App. 2d 791, 800
13  (1962)).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONVERSION CLAIM

Mattel has asserted a claim for conversion against Isaac Larian and MGA (HK).

I will now instruct you regarding the law as to this claim.

## CONVERSION — ELEMENTS

Mattel claims that Isaac Larian and MGA (HK) wrongfully exercised control over Bryant's BRATZ sketches, which Mattel claims it owns under Section 2(a) of the Inventions Agreement.  To establish this claim, Mattel must prove all of the following:

1. That Mattel owned the BRATZ sketches under Section 2(a) of the Inventions Agreement;

2. That Larian and MGA (HK) intentionally prevented Mattel from having access to the above-mentioned items for a significant period of time, or destroyed Mattel's personal property;

3. That Mattel did not consent;

4. That Mattel was harmed; and

5. That Larian and MGA (HK)'s conduct was a substantial factor in causing Mattel's harm.

A conversion claim must relate to tangible physical property.  A conversion claim cannot be based upon property that a party has discarded.

1 **Authority:** CACI No. 2100 (2008); <u>Ananda Church of Self-Realization v. Mass. Bay Ins.</u>

2 <u>Co.</u>, 95 Cal. App. 4th 1273, 1282 (2002); <u>see also</u> <u>Melchior v. New Line Prods., Inc.</u>, 106

3 Cal. App. 4th 779, 793 (2003) (conversion does not apply to ideas).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PHASE 1 – Affirmative Defenses**

**-REVISED-**

**Affirmative Defenses — General**

I will now instruct you on the affirmative defenses raised by MGA, Isaac Larian, and MGA (HK).  These affirmative defenses will only be considered if Mattel prevails on its claims.

1

**-REVISED-**

2

**Statute of Limitations — Explanation**

3

4   The law requires that a plaintiff file its claims within a defined period of time known as a
5   statute of limitations or else the plaintiff may not recover any damages.  Isaac Larian,
6   MGA, and MGA (HK) contend that certain of Mattel's claims were not filed within the
7   time set by law.  To succeed on this defense, <u>first</u> defendants must show when Mattel's
8   claims "accrued" – that is when the statute of limitations began to run on those claims.
9   When a claim "accrues" depends on both the claim and the identity of the defendant.  For
10  the claims at issue, the relevant date that the claim "accrued" is when the wrongful act
11  occurred.  As to each claim, I will explain the relevant date and what each defendant must
12  prove.  <u>Second</u>, defendants must show that plaintiff did not file its claims in court within
13  the prescribed period of time after its claims "accrued."

14

15  **Authority:**  CACI No. 4120 (2008); <u>Fox v. Ethicon Endo-Surgery, Inc.</u>, 35 Cal. 4th 797,
16  807 (2005); <u>Jolly v. Eli Lilly & Co.</u>, 44 Cal. 3d 1103, 1111 (1988).

17

18

19

20

21

22

23

24

25

26

27

28

1

**-REVISED-**

2

**Mattel's Date of Filing Of Its Claims**

3

4

For purposes of the statute of limitations at issue, Mattel filed its claims against MGA,

5

MGA (HK) and Larian on April 27, 2004.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1  **<u>Defense: Statute of Limitations (Breach of Duty of Loyalty)</u>**

2  *-NO LONGER APPLICABLE AND WITHDRAWN-*

## -REVISED-

## Defense: Statute of Limitations (Intentional Interference with Contract)

Isaac Larian and MGA contend that Mattel's intentional interference with contract claim was not filed within the time set by law.

To succeed on this defense, Isaac Larian and/or MGA must prove that Mattel did not file its claims against them within two years of the occurrence of the acts that Mattel contends were wrongful, in this case the alleged breach of Carter Bryant's contracts with Mattel. The claim "accrues" whether or not Mattel actually knew of the acts at the time, unless Mattel can prove that Isaac Larian or MGA fraudulently concealed the facts of the claim.

In order to prove fraudulent concealment, Mattel must show:

1. Isaac Larian or MGA took affirmative steps to conceal the information Mattel would have needed to suspect that wrongdoing had taken place; and

2. Mattel was not aware, and could not have been aware, that wrongdoing had taken place.

3. If Mattel was aware or could have been aware that wrongdoing had taken place, it does not matter whatever the lengths to which a defendant may have gone to conceal the wrongs.

**Authority:** See Cal. Civ. Proc. Code § 339(1); Forcier v. Microsoft Corp., 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000); Charles Lowe Co. v. Xomox Corp., No. C95-0498 SI, 1999 WL 1293362, at *9 (N.D. Cal. Dec. 27, 1999); Menefee v. Ostawari, 228 Cal. App. 3d 239, 245 (1991); 3 B.E. Witkin, Cal. Procedure: Actions, § 575, at 728 (4th ed. 1996); Garamendi v. SDI Venodome SA, 276 F. Supp. 2d 1030, 1041-42 (C.D. Cal 2003) ("Although a culpable defendant cannot be permitted to benefit from intentional concealment, any period of equitable tolling will come to an end once the plaintiff has, or

should have, notice of his claim."); <u>Snapp & Assoc. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson</u>, 96 Cal. App. 4th 884, 890-891 (2002) ("The fraudulent concealment doctrine 'does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.'")

MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**<u>Defense: Statute of Limitations (Aiding and Abetting Breach of Fiduciary Duty)</u>**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

**<u>Defense: Statute of Limitations (Aiding and Abetting Breach of Duty of Loyalty)</u>**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

### -REVISED-

**Defense: Statute of Limitations (Copyright Infringement)**

Isaac Larian, MGA, and MGA (HK) contend that Mattel's copyright infringement claim was not filed within the time set by law.

To succeed on this defense, Isaac Larian, MGA, and/or MGA (HK) must prove that Mattel did not file its claims within three years of when Mattel discovered or reasonably could have discovered that MGA was asserting ownership over property to which Mattel had a copyright interest.

**Authority:** 17 U.S.C. § 507(b); Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004) (the statute of limitations is triggered when a "[plaintiff] [] discover[s], [or] reasonably could … have discovered, the infringement"); Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994) (copyright infringement claims accrue "when one has knowledge of a violation or is chargeable with such knowledge").

1

**-REVISED-**

2 **Defense: Statute of Limitations (Conversion)**

3

4 Isaac Larian and MGA (HK) contend that Mattel's conversion claim was not filed within
5 the time set by law.

6

7 To succeed on this defense, Isaac Larian and/or MGA (HK) must prove that Mattel did not
8 file its claims within three years of the act of wrongfully taking the property that Mattel
9 contends was converted.  The claim **"accrues"** whether or not Mattel actually knew of the
10 acts at the time, unless Mattel can prove that Isaac Larian or MGA (HK) fraudulently
11 concealed the facts of the claim.

12

13 In order to prove fraudulent concealment, Mattel must show:

14        1.    Isaac Larian or MGA took affirmative steps to conceal the information Mattel
15              would have needed to suspect that wrongdoing had taken place; and

16        2.    Mattel was not aware, and could not have been aware, that wrongdoing had
17              taken place.

18        3.    If Mattel was aware or could have been aware that wrongdoing had taken
19              place, it does not matter whatever the lengths to which a defendant may have
20              gone to conceal the wrongs.

21

22 **Authority:** Cal. Civ. Proc. Code § 338(c); AmerUS Life Ins. Co. v. Bank of Am., N.A.,
23 143 Cal. App. 4th 631, 639 (2006); Strasberg v. Odyssey Group, Inc., 51 Cal. App. 4th
24 906, 916 (1996); Garamendi v. SDI Venodome SA, 276 F. Supp. 2d 1030, 1041-42 (C.D.
25 Cal 2003) ("Although a culpable defendant cannot be permitted to benefit from intentional
26 concealment, any period of equitable tolling will come to an end once the plaintiff has, or
27 should have, notice of his claim."); Snapp & Assoc. Ins. Servs., Inc. v. Malcolm Bruce
28 Burlingame Robertson, 96 Cal. App. 4th 884, 890-891 (2002) ("The fraudulent

concealment doctrine 'does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.'").

1    **<u>Defense: Statute of Limitations (Statutory Unfair Competition)</u>**

2    *-NO LONGER APPLICABLE AND WITHDRAWN-*

MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**-REVISED-**

**Laches: Introduction**

Isaac Larian, MGA, and MGA (HK) contend that Mattel's claims are barred because Mattel delayed unreasonably in filing suit such that the defendants were prejudiced. The legal term for the doctrine of unreasonable delay is "laches." This doctrine is based on the rule that "equity aids the vigilant." Accordingly, those who neglect their rights may be precluded from obtaining relief. Although I will make the ultimate determination whether laches has been shown in this case, I am going to ask you to make certain findings to assist me in making that determination and so will instruct you on the law to better assist you in making your factual findings.

**Authority:** 11 B.E. Witkin, <u>Summary of California Law: Equity</u> § 14 (4th ed. 2006).

**-REVISED-**

**Defense: Laches**

Mattel's suit against MGA, MGA (HK), and/or Larian is barred by the doctrine of laches if you find that:

1.   Mattel's delay in filing suit was unreasonable in light of Mattel's knowledge of its claims against MGA, MGA (HK), and/or Larian; and

2.   Mattel's delay was prejudicial to MGA, MGA (HK), and/or Larian in light of investments of time and money that MGA and/or Larian made; *or*

3.   Mattel's delay was prejudicial to MGA, MGA (HK), and/or Larian in that substantial evidence has been lost and memories faded in the years since Mattel was first on notice of its claims.

**Authority:**   Danjaq LLC v. Sony Corp., 263 F.3d 942, 954 (9th Cir. 2001) ("delay is impermissible when its purpose is to capitalize on the value of the alleged infringer's labor, by determining whether the infringing conduct will be profitable"); see also Watermark Publrs. v. High Tech. Sys., Inc., No. 95-3839-IEG (CGA), 1997 WL 717677, 44 U.S.P.Q.2d 1578, 1583-84 (S.D. Cal. 1997) (barring plaintiff's claims on laches grounds after 4 year delay in suing).

**-REVISED-**

**Affirmative Defense – Waiver**

Larian, MGA and MGA (HK) contend that Bryant was not bound by his agreement with Mattel because Mattel gave up its right to enforce those agreements. Mattel denies this contention and believes that it did not relinquish such rights.

You may find that Mattel waived any right to seek damages for Carter Bryant's alleged breaches arising out of its agreement with Bryant if you find that Mattel acted inconsistently with an intent to enforce its employment agreements and that a reasonable person would have believed that Mattel did not intend to enforce its employment agreements.

A waiver may be express, based on the words of the waiving party, or implied, based on conduct so inconsistent with the intent to enforce a right as to induce a reasonable belief that such right has been relinquished.  Waiver does not require any act or conduct by the other party.

To show a waiver, MGA, MGA (HK), and/or Larian must prove that:

      1.      Mattel was aware of its employees' alleged breaches of their employment agreements; and

      2.      Mattel indicated, by its words, actions or silence that it did not intend to enforce its employment agreements.

**Authority:** CACI No. 336; <u>Waller v. Truck Ins. Exch.</u>, 11 Cal. 4th 1, 31 (1995); <u>see also</u> <u>Veeck v. S. Bldg. Code Congress Int'l Inc.</u>, 241 F.3d 398, 409 (5th Cir. 2001) ("A right

1  such as copyright may be waived by inaction."); <u>Davis v. Blue Cross of N. Cal.</u>, 25 Cal. 3d

2  418 (1979) (carrier's inaction amounted to a waiver of its right to demand arbitration).

1

## -REVISED-

2 **Affirmative Defense – Consent**

3

4 If you find that Mattel consented to its employees moonlighting and developing their own

5 artistic work, you must find for Isaac Larian, MGA, and MGA (HK) with respect to claims

6 arising out of Bryant's alleged violations of the Inventions Agreement.

7

8 Consent is the actual or apparent willingness for conduct of another to occur.

9

10 Actual consent may be expressed in words or acts, silence or inaction, when the

11 circumstances or other evidence establish that the silence or inaction is intended to give

12 consent; actual consent need not be communicated to the person taking the alleged

13 wrongful act.

14

15 Apparent consent exists when a person's acts or words, silence or inaction, would be

16 understood by a reasonable person as intended to indicate consent, and in fact so

17 understood by the person doing the alleged wrongful act.

18

19 **Authority:** Cal. Civ. Code § 3515; CACI No. 1302 (2008) (as modified).

20

21

22

23

24

25

26

27

28

# -REVISED-

## Estoppel — Definition

Whenever a party has, by his own statement or conduct, deliberately led another to believe a particular thing to be true and to act upon such belief, he is not permitted to contradict it.

To create an estoppel, Larian, MGA, and/or MGA (HK) must prove by a preponderance of the evidence each of the following elements:

1.   The party to be estopped must be apprised of the facts;

2.   The party to be estopped must intend that its conduct shall be acted upon, or must act so that the other party had a right to believe it was so intended;

3.   The other party was ignorant of the true state of facts, and

4.   The other party relied on the conduct to its injury.

**Authority:**  Cal. Evid. Code § 623; 11 B.E. Witkin, <u>Summary of California Law</u>, Equity § 177; <u>Lear v. Bd. of Retirement</u>, 79 Cal. App. 4th 427, 437 (2000); <u>Spray, Gould & Bowers v. Associated Int'l Ins. Co.</u>, 71 Cal. App. 4th 1260, 1268 (1999); <u>Ortega v. Pajaro Valley Unified Sch. Dist.</u>, 64 Cal. App. 4th 1023, 1044 (1998); <u>Lemat Corp. v. Am. Basketball Ass'n</u>, 51 Cal. App. 3d 267, 276 (1975).

**-REVISED-**

**Defense: Estoppel of Copyright Claims**

Larian, MGA, and MGA (HK) claim as a defense that Mattel is barred from asserting copyright claims because of its prolonged silence regarding alleged infringement and its prior conclusion that the BRATZ do not infringe on its intellectual property.

To establish this defense, Larian, MGA, and/or MGA (HK) must prove all of the following:

1.     That Mattel made a representation of fact by conduct intending that Defendant should rely on it.  Conduct is used **"**in its broadest meaning as including … silence or negative omission to do anything.**"**;

2.     That Mattel had knowledge that BRATZ potentially infringed on its intellectual property and that Carter Bryant worked for MGA;

3.     That MGA, MGA (HK), and/or Larian were ignorant of Mattel**'**s claims of ownership of Bryant**'**s BRATZ sketches; and

4.     That MGA, MGA (HK), and/or Larian reasonably relied on Mattel**'**s silence to their detriment.  MGA Parties**'** reliance must be reasonable in the sense that under the circumstances, a reasonable person would have acted as defendants did.

**Authority:** <u>HGI Associates, Inc. v. Wetmore Printing Co.</u>, 427 F.3d 867, 875 (11th Cir. 2005); <u>Stambler v. Diebold, Inc.</u>, 1988 WL 95479, at **6, 11 U.S.P.Q. 2d 1709, 1715 (E.D.N.Y. 1988), <u>aff'd</u>, 878 F.2d 1445 (Fed. Cir. 1989); <u>City of Long Beach v. Mansell</u>, 3 Cal. 3d 462, 488 n.22 (1970).

1        **-REVISED-**

2  **Defense: Estoppel of Employment Claims**

3

4  Larian, MGA, and MGA (HK) further claim as a defense that Mattel is barred from

5  asserting claims arising out of Carter Bryant's employment agreement because Mattel

6  allowed its employees both to moonlight and develop their own artistic works without

7  complaint and it unreasonably delayed bringing this complaint long after it knew of the

8  alleged infringement.

9

10  To establish this defense, Larian, MGA, and/or MGA (HK) must prove all of the following:

11

12    1.    That Mattel made a representation of fact by conduct intending that

13          Defendant should rely on it.  Conduct is used **"**in its broadest meaning as

14          including … silence or negative omission to do anything.**"**

15

16    2.    That Mattel had knowledge that its employees were moonlighting or creating

17          their own artistic work;

18

19    3.    That Carter Bryant was ignorant of the fact that Mattel allowing moonlighting

20          or independent artistic work was not intended as a policy; and

21

22    4.    That MGA, MGA (HK), and/or Larian reasonably relied on Mattel's silence

23          to their detriment.  MGA Parties' reliance must be reasonable in the sense that

24          under the circumstances, a reasonable person would have acted as defendants

25          did.

26

27  **Authority:**   Bender, Matthew,   Cal. Forms Jury Inst., Ch. 3F, 300F.27; City of Long

28  Beach v. Mansell, 3 Cal. 3d 462, 488 n.22 (1970).

**-REVISED-**

**Defense: Acquiescence**

If you find that Mattel acquiesced to the development and marketing of Bratz, you must find for Isaac Larian, MGA and MGA (HK) with respect to claims for Bryant's alleged violations of his employment agreement.  If you find that Mattel acquiesced to its employees moonlighting and development of their own artistic work, you must find for Isaac Larian, MGA and MGA (HK) with respect to claims arising out of  Bryant's alleged violations of his employment agreement.

Acquiescence in error takes away the right of objecting to it.

Acquiescence exists when a person's acts or words, silence or inaction, would be understood by a reasonable person as intended to indicate that the conduct is allowed, and in fact is so understood by the person doing the alleged wrongful act.

**Authority:** Cal. Civ. Code § 3516; <u>Security Pac. Nat'l Bank v. Wozab</u>, 51 Cal. 3d 991, 1005 (1990).

**-REVISED-**

**Defense: Abandonment (Copyright Infringement)**

Larian, MGA, and MGA (HK) contend that a Mattel cannot bring an action for copyright infringement because Mattel abandoned it claims by conducting an internal investigation and concluding that BRATZ did not infringe on its intellectual property.  Mattel cannot claim ownership of a copyright if it was abandoned.  In order to show abandonment, Isaac Larian, MGA and/or MGA (HK) have the burden of proving each of the following by a preponderance of the evidence:

    1.    Mattel intended to surrender ownership rights in the work; and

    2.    Conduct by Mattel which was **"consistent with an intent to abandon"** or which **"implies an abandonment"**.

Inaction alone does not constitute abandonment of the copyright; however, it may be a factor for you to consider in determining whether Mattel has abandoned its claims.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions 17.19 (2007); Lopez v. Elec. Rebuilders, Inc., 416 F. Supp. 1133, 1135 (C.D. Cal. 1976); Read v. Turner, 239 Cal. App. 2d 504 (1966).

**Defense: 205(d) (Bona Fide Purchaser for Value)**

You may find that the MGA agreement with Bryant dated October 4, 2000 has priority over the Mattel agreement with Bryant dated January 4, 1999 if you find that the MGA-Bryant agreement was:

    1.     Recorded with the Copyright Office first in such a manner as to give Mattel constructive notice of the transfer; and

    2.     Executed in good faith; and

    3.     For valuable consideration; and

    4.     Without notice of an earlier transfer.

For purposes of this instruction, recordation with the Copyright Office means either (1) the filing of the transfer agreement itself, or (2) registration with the Copyright Office listing ownership by assignment.

**Authority:** 17 U.S.C. § 205(d); 2 Nimmer on Copyright § 7.16 (2007) ("[A]lthough an instrument of transfer to a first purchaser [Mattel] may be recorded prior to the time that the copyright owner purports to sell the same copyright interest to a bona fide subsequent purchaser [MGA], the latter does not have constructive notice of the first purchase if the work has not been registered at the time the subsequent purchaser acquired his interest.").

**-REVISED-**

**Defense: Good Faith**

The good faith of Larian, MGA, and MGA (HK) is a factor that should be considered when assessing any claim by Mattel that Larian, MGA, and/or MGA (HK) acted in bad faith or with bad intent.  To the extent Mattel's claims implicate defendants' intent or mental state, good faith is a relevant inquiry for which Mattel bears the burden of proof.

**Authority:**  <u>People v. Webb</u>, 74 Cal. App. 4th 688, 694 (1999); 5 B.E. Witkin, <u>Cal. Proc.:</u> <u>Pleadings</u> § 1008 (4th ed. 1997) (distinguishing new matters from facts constituting a denial of an element and identifying good faith as the latter and, thus, not an affirmative defense).

1

### -REVISED-

2 **Defense: *De Minimis* Use**

3

4 Larian, MGA, and MGA (HK) contend that even if Mattel can establish that it has a
5 copyright interest in Carter Bryant's drawings, it cannot recover damages in its claim for
6 copyright infringement because any similarities between the protectable elements of the
7 drawings and the protectable elements of the BRATZ dolls are *de minimis*.

8

9 Even where there has been some copying, that fact alone is not conclusive of infringement.
10 Some copying is permitted.  In addition to copying, it must be shown that this has been
11 done to an unfair extent.  This principle reflects the legal maxim *de minimis non curat lex*
12 (the law does not concern itself with trifles).  *De minimis* copying is not actionable.

13

14 If the similarities between the copyrighted work and the copied work consist only of
15 unprotectable elements and elements in the public domain, then the copying is *de minimis*
16 and no recovery is available.

17

18 When the range of protectable and unauthorized expression is narrow, the appropriate
19 standard for illicit copying is virtual identity.

20

21 **Authority:**   Newton v. Diamond, 388 F.3d 1189, 1192-93 (9th Cir. 2004); Apple
22 Computer v. Microsoft Corp., 35 F.3d 1435, 1439 (9th Cir. 1994).

23

24

25

26

27

28

1  **<u>Defense: Unclean Hands</u>**

2  *-NO LONGER APPLICABLE AND WITHDRAWN-*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**PHASE 1(b) – Damages**

**<u>Damages — Introduction</u>**

You have found in favor of Mattel as to the following claims: _____.  I will now instruct you as to the measure of damages for each of those claims.  Damages means the amount of money that will reasonably and fairly compensate Mattel for any injury you find was caused by the Defendants.

It is for you to determine what damages, if any, have been proved.   Mattel has the burden of proving damages by a preponderance of the evidence.  However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**Authority:**   Ninth Circuit Manual of Model Jury Instructions, Civil, 5.1 (2007) (as modified).

1  **<u>Introduction to Contract Damages</u>**

2  *-NO LONGER APPLICABLE AND WITHDRAWN-*

3

4  **<u>Measure of Damages — Breach of the "Inventions" Provision of the Employee</u>**

5  **<u>Agreement</u>**

6  *-NO LONGER APPLICABLE AND WITHDRAWN-*

7

8  **<u>Measure of Damages—Breach of the "Moonlighting" Provision of the Employee</u>**

9  **<u>Agreement</u>**

10  *-NO LONGER APPLICABLE AND WITHDRAWN-*

11

12  **<u>Measure of Damages—Breach of the Conflict Questionnaire</u>**

13  *-NO LONGER APPLICABLE AND WITHDRAWN-*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**-REVISED-**

**Measure of Damages for Intentional Interference with Contract**

If you have concluded that Isaac Larian, MGA and MGA (HK) intentionally interfered with Bryant's contract with Mattel to maintain Mattel's information in confidence, then you must now decide how much money will reasonably compensate Mattel for the harm caused by that interference. In considering this claim, I instruct you that Mattel's claim is only based on the agreement between Carter Bryant and Mattel in which Mattel entrusted Bryant with confidential information and Bryant agreed to keep that information confidential. Mattel's claim is not based on whether Mattel has a right to or owns BRATZ, and you should not consider who owns the rights to BRATZ in determining damages.

To recover damages for any harm, Mattel must prove:

      1.     The financial loss resulting from the loss of the benefits of the contractual relationship; and

      2.     Consequential losses caused by the interference.

**Authority:** Restatement (Second) of Torts § 774A (1979); Di Loreto v. Shumake, 38 Cal. App. 4th 35, 38 (1995); BAJI No. 7.89 (2008) (as modified).

**<u>Measure of Damages for Conversion</u>**

If you have concluded that Mattel proved its claim of conversion against _____, then you must now decide Mattel's damages.

Mattel's damages are based on the fair market value of the tangible physical property at the time defendant(s) wrongfully exercised control over it.  Fair market value is the highest price that a willing buyer would have paid to a willing seller, assuming:

> 1.    That there is no pressure on either one to buy or sell; and

> 2.    That the buyer and seller know all the uses and purposes for which the tangible physical property is reasonably capable of being used.

**Authority:**  CACI No. 2102 (2008) (as modified).

**<u>Measure of Damages for Breach of Fiduciary Duty</u>**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

**<u>Measure of Damages for Breach of Duty of Loyalty</u>**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**Measure of Damages for Aiding and Abetting Breach of Fiduciary Duty**

If you have concluded that Isaac Larian and MGA aided and abetted Carter Bryant's breach of his fiduciary duty to Mattel, then you must now decide how much money will reasonably compensate Mattel for the harm caused by their wrongful conduct.

You must compensate Mattel for the harm caused by MGA's aiding and abetting of Bryant's breach of his duty of loyalty to Mattel, and not for harm caused by any conduct not in breach of Bryant's duty of loyalty.

For example, if you found that MGA and Larian aided and abetted Bryant's use of Mattel resources in breach of his fiduciary duty, you should award damages for the harm caused by the loss of those resources, that is the value of those lost resources at the time they were used.  If you found that MGA and Larian aided and abetted Bryant's breach of his fiduciary duty by accepting additional work from MGA, you should award damages to compensate Mattel in an amount equal to the harm caused by Bryant accepting such additional work from MGA.  If you found that MGA and Larian aided and abetted Bryant's breach of his fiduciary duty by directly competing with Mattel while still employed at Mattel, you should award damages to compensate Mattel for the harm caused by that competition during the term of his employment.  If you found MGA and Larian aided and abetted Bryant's breach of his fiduciary duty by presenting the BRATZ sketches owned by Mattel to MGA, you should compensate Mattel for the harm caused by that breach, that is the value of the sketches at the time of the breach.

**Authority:** Restatement (Second) of Torts § 876 (1979); <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the costs incurred to replace personnel recruited by president and competitor using confidential information in breach of president's fiduciary duty); <u>GAB Business Services,</u>

1  Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000), overruled
2  on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004) (damages for breach of
3  fiduciary duty were expenses incurred to recruit new employees); Charles T. Powner, Inc.
4  v. Smith, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales
5  resulting from use of employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347,
6  350 (1906) (damages were commissions received while still employed); see also Design
7  Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary
8  earned during time employee was disloyal, and not the profits from a contract that
9  evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F.
10  Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including
11  employee time used to develop competing products).

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Measure of Damages for Aiding and Abetting Breach of Duty of Loyalty**

If you have concluded that Isaac Larian and MGA aided and abetted Carter Bryant's breach of his duty of loyalty to Mattel, then you must now decide how much money will reasonably compensate Mattel for the harm caused by their wrongful conduct.

You must compensate Mattel for the harm caused by the MGA's and Larian's aiding and abetting of Bryant's breach of his duty of loyalty to Mattel, and not for harm caused by any conduct not in breach of Mr. Bryant's duty of loyalty.

For example, if you found that MGA and Larian aided and abetted Bryant's use of Mattel resources in breach of his duty of loyalty, you should award damages for the harm caused by the loss of those resources, that is the value of those lost resources at the time they were used.  If you found that MGA and Larian aided and abetted Bryant's breach of his duty of loyalty by accepting additional work from MGA, you should award damages to compensate Mattel in an amount equal to the harm caused by Bryant accepting such additional work from MGA.  If you found that MGA and Larian aided and abetted Bryant's breach of his duty of loyalty by directly competing with Mattel while still employed at Mattel, you should award damages to compensate Mattel for the harm caused by that competition during the term of his employment.  If you found MGA and Larian aided and abetted Bryant's breach of his duty of loyalty by presenting the BRATZ sketches owned by Mattel to MGA, you should compensate Mattel for the harm caused by that breach, that is the value of the sketches at the time of the breach.

**Authority:**  Restatement (Second) of Torts § 876 (1979); <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the costs incurred to replace personnel recruited by president and competitor using confidential information in breach of president's fiduciary duty); <u>GAB Business Services,</u>

1  Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000), overruled

2  on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004) (damages for breach of

3  fiduciary duty were expenses incurred to recruit new employees); Charles T. Powner, Inc.

4  v. Smith, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales

5  resulting from use of employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347,

6  350 (1906) (damages were commissions received while still employed); see also Design

7  Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary

8  earned during time employee was disloyal, and not the profits from a contract that

9  evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F.

10  Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including

11  employee time used to develop competing products).

**COPYRIGHT—DAMAGES (17 U.S.C. § 504)**

If you find for Mattel on its copyright infringement claim, you must determine Mattel's damages. Mattel is entitled to recover any profits of the Defendants attributable to the infringement, subject to certain exceptions I will reference in later instructions.   Mattel must prove damages by a preponderance of the evidence.

**Authority:**   Ninth Circuit Manual of Model Jury Instructions, Civil, 17.22 (2007) (as modified).

**1**  **<u>COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS (17 U.S.C. § 504(b))</u>**

**2**

**3**  The copyright owner is entitled to any profits of the defendant attributable to the
**4**  infringement of the protected portion of plaintiff's copyrighted work.

**5**

**6**  You may make an award of the defendant's profits only if you find that the plaintiff
**7**  showed a causal relationship between the infringement and the profits generated indirectly
**8**  from the infringement.

**9**

**10**  The defendant's profit is determined by subtracting all expenses from the defendant's
**11**  gross revenue.

**12**

**13**  The defendant's gross revenue is all of the defendant's receipts from the sale of a product
**14**  associated with the infringement. The plaintiff has the burden of proving the defendant's
**15**  gross revenue by a preponderance of the evidence.

**16**

**17**  Expenses are all operating costs and production costs incurred in producing the
**18**  defendant's gross revenue. The defendant has the burden of proving the defendant's
**19**  expenses by a preponderance of the evidence.

**20**

**21**  Unless you find that a portion of the profit from the sale of a product containing or using
**22**  the copyrighted work is attributable to factors other than use of the protected portion of the
**23**  copyrighted work, all of the profit is to be attributed to the infringement.  The defendant
**24**  has the burden of proving the percentage of the profit, if any, attributable to factors other
**25**  than copying the protected portion of the copyrighted work.  Such factors include: (1) the
**26**  design of the doll, (2) development of the characters associated with the doll line, (3)
**27**  development of themes associated with the dolls, (4) development of fashions sold with

**28**

the dolls, (5) development of accessories sold with the dolls, (6) packaging in which the dolls are sold, and (7) branding, marketing, and advertising efforts.

**Authority:**   Ninth Circuit Manual of Model Jury Instructions, Civil, 17.24 (2007) (as modified).

**<u>Choice of Alternative Methods of Determining Plaintiff's Damages</u>**

If you determine that an award of damages is warranted by the facts and these instructions, you must select a method of damages for determining the amount of damages.  Select the method that you find produces the most accurate and certain result.  However, if you find that find that either of two methods produces a result that is certain and accurate and will fully compensate plaintiff, you should use the method that produces the lowest amount of damages.

**Authority:**  <u>A. A. Baxter Corp. v. Colt Indus., Inc.</u>, 10 Cal. App. 3d 144, 160 (1970).

**Damages—Duty to Mitigate**

The plaintiff has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

      1.     that the plaintiff failed to use reasonable efforts to mitigate damages; and

      2.     the amount by which damages would have been mitigated.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions, Civil, 5.3 (2007); see also CACI No. 3931 (2008).

**Nominal Damages**

The law which applies to this case authorizes an award of nominal damages.  If you find for Mattel but you find that Mattel has failed to prove damages as defined in these instructions, you must award nominal damages.  Nominal damages may not exceed one dollar.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions, Civil, 5.6 (2007).

**Plaintiff May Not Recover Duplicate Damages**

Mattel may seek damages for each of its claims.  Mattel may not, however, through its pursuit of these claims, seek damages in an amount greater than that which would compensate it for all the detriment or loss allegedly caused by wrongful conduct of the defendants.  Thus, if you determine that Mattel is entitled to recover on more than one claim, but the damages are the same on each claim, you shall award damages only on one claim.

**Authority:**  CACI No. 361 (2008); Cal. Civil Code § 3358 ("no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides"); Kurinij v. Hanna & Morton, 55 Cal. App. 4th 853, 866 (1997) (affirming jury instructions proscribing double recovery on claims arising out of the same facts).

**COPYRIGHT JURY INSTRUCTIONS**

**PHASE I-B**

**(ONLY AFTER PHASE I-A VERDICT)**

**-REVISED-**

**INSTRUCTION NO. 1C**

**COPYRIGHT – PRELIMINARY INSTRUCTION**

As you know, Mattel seeks damages against the defendants, MGA Entertainment, Inc. ("MGA"), MGA Entertainment (HK) Limited ("MGA Hong Kong"), and Isaac Larian, for copyright infringement.  The defendants deny that Mattel's copyrights were infringed.

Mattel's 16 copyrights are in certain sketches authored by Carter Bryant prior to his meeting with MGA on September 1, 2000.  There have been references to other Carter Bryant sketches, but for purposes of your copyright analyses you may only consider the Bryant sketches covered by a Mattel copyright registration.  The copyright law does not permit legal claims made on a work not covered by a copyright registration.

The alleged infringing works are the BRATZ dolls and character art of the BRATZ dolls appearing on the packaging for the BRATZ dolls and on BRATZ licensed products. Mattel asserts that the "first generation" of four BRATZ dolls (Jade, Sasha, Cloe, and Yasmin), introduced by MGA into the market in the summer of 2001, infringe Mattel's copyrights in the 16 Bryant sketches.  Mattel further asserts that by virtue of showing infringement in the "first generation" BRATZ dolls it has shown copyright infringement by all subsequent BRATZ dolls.

The defendants deny that there has been any copyright infringement.  They assert that there was no copying because the Bryant sketches, along with other sources, were only used in a lawful manner by the professionally trained MGA sculptors and artists who actually developed the "first generation" BRATZ dolls, with the sketches simply being part of the initial inspiration for the uncopyrightable concept of the BRATZ dolls. Defendants also assert that because Bryant's 2-dimensional sketches lacked the detail and

1  other considerations necessary to develop a 3-dimensional doll, the MGA sculptors and
2  artists who developed the first generation BRATZ dolls used their significant experience
3  and talents to independently create their own original, different and more marketable 3-
4  dimensional doll.

5

6  The defendants also assert that the Mattel copyrights are very limited in scope because the
7  16 Bryant sketches portray dolls that are based in large part on non-original elements such
8  as standard features of human anatomy and non-copyrightable elements such as
9  conventional hairstyles, face make-up, shoes and clothing.  They assert that because the 16
10 Bryant sketches are only entitled to limited copyright protection, the "first generation"
11 BRATZ dolls were not "substantially similar" to the "protectible elements" in Bryant
12 sketches owned by Mattel, and do not infringe any limited copyrights in those sketches.

13

14 The defendants further assert that subsequent BRATZ dolls had the same and additional
15 dissimilarities, and were even further removed from any "protected expression" in the
16 Bryant sketches, and accordingly also did not infringe copyrights in those sketches.  They
17 similarly deny that the BRATZ character art infringes the Bryant sketches.

18

19 I just referred to a number of legal terms such as "copying," "substantial similarity," and
20 "protected expression."  I will now explain these and other legal terms to you.

21

22 **Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.0 (2007).

23

24

25

26

27

28

**<u>ALTERNATE:    INSTRUCTION NO. 1C</u>**

[Defendants reserve the right to modify all of their proposed instructions relating to copyright issues to conform to the jury's findings in Trial 1A if the jury finds that fewer than 16 of the Bryant sketches are owned by Mattel. The following is an example.]

In the Phase 1A trial Mattel asserted that it owned copyrights in a total of 16 of Carter Bryant's sketches prepared by Bryant prior to September 1, 2000. In Phase 1A, you determined that Mattel owned a total of [XX] of these Bryant sketches, and that Mattel did not own [YY] of the sketches. The [YY] sketches not owned by Mattel were assigned by Bryant to MGA, and thus are owned by MGA.

In assessing Mattel's claims of copyright infringement of the [XX] sketches that you determined it owns, you must also consider the sketches owned by MGA. MGA has every right to use the Bryant sketches it owns, and the expression in those sketches. Thus, if Mattel relies on original expressive elements of one of the Bryant sketches that Mattel owns, but those same elements are also found in one of the sketches owned by MGA, then you must disregard those elements, because they cannot support Mattel's claims of copyright infringement.

The Bryant sketches owned by MGA were created earlier than the Bryant sketches you determined that Mattel owns. Accordingly, as between the two, MGA has superior rights. For this reason, if any Bryant sketch owned by Mattel is substantially similar (I will explain what this means in a few minutes) to a sketch owned by MGA, then Mattel cannot rely on that sketch in connection with its copyright infringement claims against MGA. Mattel thus bears the burden of proving by a preponderance of the evidence that the Bryant sketches it relies on are not substantially similar to the Bryant sketches owned by MGA. [Include other aspects of 1C above as appropriate based on the Phase 1A verdict.]

**INSTRUCTION NO. 2C**

**COPYRIGHT – DEFINED**

Copyright is the exclusive right to copy. This right to copy includes the exclusive right to:

      1.    Authorize or make additional copies, or otherwise reproduce the copyrighted work;

      2.    Recast, transform, adapt the work, that is prepare derivative works based upon the copyrighted work;

      3.    Distribute copies of the copyrighted work to the public by sale or other transfer of ownership;

      4.    Display publicly a copyrighted pictorial work or graphic work.

It is the owner of a copyright who may exercise these exclusive rights. [Here, in the Phase I-A trial, it was determined that Mattel is the "owner" of the Bryant sketches as a result of the transfer provisions of Bryant's employment agreement.]

In general, copyright law protects against reproduction, adaptation, distribution and display of substantially similar copies of the owner's copyrighted work without the owner's permission. An owner may enforce these rights to exclude others in a lawsuit for copyright infringement.

Mere possession of a copyrighted work does not constitute infringement. That Carter Bryant and MGA had possession of Mr. Bryant's physical sketches, and made reference to them, is not copyright infringement, just like a person who possesses a book has not

1  infringed the copyright of the book's publisher or author.  [Lapham v. Porach, 2007 U.S.

2  Dist. LEXIS 30751, at *15 (S.D.N.Y. Apr. 25, 2007).]

3

4  Further, a defendant's contribution of non-infringing fashions, accessories, or other

5  materials to a BRATZ doll does not constitute copyright infringement even if you find that

6  the BRATZ doll itself infringes Mattel's copyright.  You must consider each defendant's

7  acts separately to determine whether that defendant has engaged in an act that is an

8  infringement of Mattel's copyrights.

9

10  **Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.1 (2007); 17 U.S.C. § 106;

11  2-8 Nimmer on Copyright §§ 8.01–8.20; 3 Patry on Copyright §§ 8:1, 9:2; 12-76 Nimmer

12  on Copyright § 12.04[A][1].

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**INSTRUCTION NO. 2a C**

**COPYRIGHT –IDEA/EXPRESSION DICHOTOMY**

Copyright law stems from the United States Constitution. As phrased in the Constitution and confirmed by the United States Supreme Court, "[t]he primary objective of copyright is not to reward the labor of authors, but 'to promote the Progress of Science and useful Arts." To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work. This principle, known as the idea/expression or fact/expression dichotomy, applies to all works of authorship.

**Authority**: U.S. Constitution, Art. I, § 8, cl. 8; Feist Publications, Inc. v. Rural Telephone Co., 499 U.S. 340, 349-50 (1991); Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 (1975); Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 556-57 (1985).

**INSTRUCTION NO. 3C**

**COPYRIGHT – SUBJECT MATTER – IDEAS AND EXPRESSION**

Copyright law allows the author of an original work to prevent others from copying the tangible expression the author used to express the ideas in the author's work.  Only the particular original expression of an idea can be copyrighted, and the right to exclude others applies only to this original expression.  An author cannot prevent others from copying or using aspects of his work which were derived from other sources, such as the work of other artists.

Copyright law protection does not extend to any idea, procedure, process, system, method of operation, concept, principle or discovery, regardless of the form in which it is described, explained, illustrated, or embodied.  Particularly relevant here is the limitation that an author cannot prevent others from copying or using ideas or concepts contained or reflected in the work or that inspired the work; to do so would inhibit full and free exchange of information and hinder, rather than promote the creation of new works of authorship, which is the goal of the copyright system.

The right to exclude others from copying also extends only to the particular way the author expressed the ideas in the copyrighted work.

Common or standard treatments of the subject matter are also not protected by copyright.  Even though they are forms of expression, they lack sufficient originality to be protected.  These are often referred to in copyright law as "scenes a faire," taken loosely from the French for "things which must be done."  In other words, basic ideas or treatments "remain forever the common property of artistic mankind."  [Berkic v. Crichton, 761 F.2d 1289, 1293-94 (9th Cir. 1985).]

1   Let me give you an example from the world of T.V. screen-plays.  A television show about
2   a police station in a high crime area will inevitably have standard stock features, such as a
3   precinct house, various levels of police employees from a captain down to the beat officers,
4   criminal suspects who are apprehended, defense lawyers, prosecutors, etc.  Such standard
5   plot lines and features may be thought of as creative expression, but no one can claim
6   ownership or exclusive rights to them, and no one T.V. show can accuse another of
7   violating a copyright by allegedly copying and using such standard features in a second
8   show.  [Walker v. Time Life. Films, Inc., 784 F.2d 44, 50 (2d Cir. 1986).]
9
10  As another example, in the world of theatre, devices that are standard plot lines, and are
11  therefore not protectible, include the controlling mother-in-law, the lipstick stained
12  handkerchief, and the butler bent on murder.  All authors can use these common plot
13  devices.
14
15  Also unprotected is expression in the copyrighted work that reflects expression already in
16  the public domain, and therefore free for all to use.
17
18  To give one illustration in the context of a doll, "[a]n upturned nose, bow lips, and wide
19  eyes are the 'idea' of a certain type of doll face," and this idea does not belong to any one
20  company but rather is in the public domain.   [Mattel, Inc. v. Goldberger Doll
21  Manufacturing Co., 365 F.3d 133, 136 (2d Cir. 2004).]
22
23  For another illustration, a 5 ½ inch Warlord doll does not infringe upon a 5 ½ inch Masters
24  of the Universe doll because, though the dolls look remarkably similar, the similarities are
25  all attributable to the unprotectible idea of a superhuman muscleman crouching in a
26  traditional fighting pose.  [Mattel, Inc. v. Azrak-Hamway Int'l Inc., 724 F.2d 357, 360 (2d
27  Cir. 1983).]
28

105

These unprotected elements of a work, ideas and concepts, scenes a faire, and unoriginal material, often overlap and are not always easy to separate into categories.  Nevertheless, they are not protected by copyright, and must be disregarded when comparisons between the Bryant sketches and the BRATZ dolls are made.

To state it another way, your analysis must be limited to expressive elements in the 16 sketches covered by Mattel's copyrights that were originally contributed solely by Carter Bryant.

**Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.3 (2007); 4-13 <u>Nimmer on Copyright</u> § 13.03[B]; <u>Apple Computer, Inc. v. Microsoft Corp.</u>, 35 F.3d 1435 (9th Cir. 1994); <u>Data East USA, Inc. v. Epyx, Inc.</u>, 862 F.2d 204 (9th Cir. 1988); <u>see also</u> <u>Mattel v. Goldberger Doll Mfg. Co.</u>, 365 F.3d 133, 136 (2d Cir. 2004); <u>Idema v. Dreamworks, Inc.</u>, 162 F. Supp. 2d 1129 (C.D. Cal. 2001).

**INSTRUCTION NO. 4C**

**COPYRIGHT INTERESTS – AUTHORSHIP**

The creator of an original work is called the author of that work.  An author originates or "masterminds" the original work, controlling the whole work's creation and causing it to come into being.  In this case, Carter Bryant is the author of the 16 sketches, [and Mattel is the owner of the copyright in those sketches by assignment, as was decided in the Phase I-A trial.]

**Authority:**  Ninth Circuit Manual of Model Jury Instructions 17.6 (2007).

**INSTRUCTION NO. 5C**

**COPYRIGHT INTERESTS – ORIGINALITY AND REGISTRATION**

In this lawsuit, it is not disputed that portions of the 16 Bryant sketches contain sufficient original elements to be protected by copyright. However, I must caution you that the amount of creative expression that is required for copyright protection is extremely low.

In addition, the Copyright Office does not investigate the originality or uniqueness of a work and it does not determine the validity of the claim to copyright protection in issuing a Certificate of Registration for a work. Accordingly, the mere fact that the Bryant sketches were accepted by the Copyright Office for registration does not determine the degree, scope, or amount of original, protected expression in the sketches. In addition, the protection afforded by the registration is limited to the specific protectible expression included in the material deposited with the Copyright Office, in this case the Bryant sketches.

Finally, a Certificate of Registration obtained more than 5 years after the first publication of the work covered by that registration is not entitled to a presumption either of copyright protection or that the registration is valid.

**Authority**: Feist Publications, Inc. v. Rural Telephone Services, Inc., 499 U.S. 340, 346 (1991) ("a modicum of creativity"); see also Expert Report of Ralph Oman, dated Feb. 25, 2005, in Team Play, Inc. v. Boyer, 03 C 7240 (N.D. Ill. 2005) (Document M-RO-00174); Ninth Circuit Manual of Model Jury Instructions 17.5 (2007); 17 U.S.C. § 410(c); 37 C.F.R. § 202.20(b)(2)(i) & (ii).

**INSTRUCTION NO. 6C**

**COPYRIGHT INFRINGEMENT – COPYING**

In order to prevail on its claim of copyright infringement, Mattel has the burden of proving both of the following by a preponderance of the evidence:

1.     "Factual copying" — that in creating the BRATZ dolls, MGA actually copied the Bryant drawings in the BRATZ dolls.

2.     "Legal copying" — that even if copied, the amount of protected expression taken from the Bryant drawings and found in the BRATZ dolls satisfies the legal standards necessary to show copyright infringement.  This requires proof by Mattel of what is called "substantial similarity" to the level of "virtual identity."

3.     If you find that Mattel has proven both of these elements, your verdict should be for Mattel on the issue of copyright infringement.  If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for the defendants on the issue of copyright infringement.

**Authority**:  BensBargains.net LLC v. XPBargains.com, 2007 U.S. Dist. LEXIS 60544, at **8–10 (S.D. Cal. Aug. 16, 2007); 4-13 Nimmer on Copyright §§ 13.03[A] & [D] (2008).

**INSTRUCTION NO. 7C**

**COPYRIGHT INFRINGEMENT – FACTUAL COPYING**

"Factual copying" means that the defendant did not independently create the challenged work.

Where as here the defendants assert independent creation, the plaintiff can establish factual copying:

- through direct evidence of copying; or

- by showing that the defendant had access to the plaintiff's work and that the works have a high degree of similarity, referred to as "probative similarity."

Here, MGA does not dispute that it had access to the Bryant sketches when it began to develop the BRATZ dolls. However, defendants do dispute that there was copying, and they dispute that there is sufficient "probative similarity" to establish factual copying.

Mattel asserts that there is evidence that MGA directly and intentionally copied the Bryant sketches.

Defendants deny this and they assert that there was no copying because the Bryant sketches, along with other sources, were only used in a lawful manner by the professionally trained MGA sculptors and artists who actually developed the "first generation" BRATZ dolls, with the sketches simply being part of the initial inspiration for the uncopyrightable concept of the BRATZ dolls. Defendants also assert that because Bryant's 2-dimensional sketches lacked the detail and other considerations necessary to develop a 3-dimensional doll, the MGA sculptors and artists who developed the first

generation BRATZ dolls used their significant experience and talents to independently create their own original, different and more marketable 3-dimensional doll.   The defendants further assert that the designs of the subsequent BRATZ dolls were also independently created and were even further removed from any "protected expression" in the Bryant sketches.

In determining factual copying, you should weigh all the evidence keeping in mind that Mattel bears the burden of proving that MGA copied the Carter Bryant sketches in the BRATZ dolls.

**Authority**:  BensBargains.Net v. XPBargains.Com, 2007 U.S. Dist. Lexis 60544 at **8– 10 (S.D. Cal. Aug. 16, 2007); Sobhani v. @radical.media, Inc., 257 F. Supp. 2d 1234, 1237 (C.D. Cal. 2003); Miller v. Miramax Film Corp., 2001 U.S. Dist. LEXIS 25967, at **31–32 (C.D. Cal. Sept. 26, 2001); 4-13 Nimmer on Copyright § 13.03[D] (2008).

**INSTRUCTION NO. 8C**

**COPYRIGHT INFRINGEMENT – LEGAL COPYING – SUBSTANTIAL SIMILARITY**

If you conclude that Mattel did not meet its burden of proving factual copying, you must find for defendants on the issue of copyright infringement.  If you conclude that Mattel has met its burden of proving factual copying, then you must move on to the next element of copyright infringement, "legal copying."

Mattel must prove that MGA copied sufficient original and protectible elements from Bryant's sketches to establish "legal copying."  As I will explain shortly, using what are known as the "extrinsic" and "intrinsic" tests, you must determine what, if any, protectible expression is present in each of the Bryant sketches and compare the protected expression in a particular sketch to the BRATZ dolls.  Unless a sufficient amount of protected expression from a sketch was copied in the BRATZ dolls, Mattel's claim of copyright infringement fails.

In other words, legal copying is an essential element of copyright infringement independent of factual copying.  To go back the T.V. screenplay example, the creators of "Law and Order" could have intended to copy certain features of "Hill Street Blues," "N.Y.P.D. Blue," or "Perry Mason," and certainly their access to these earlier shows would be easy to establish.  But, unless a sufficient amount of protected expression was copied (i.e., expression that is original to one of these shows, and is not ideas, concepts, scenes a faire or public domain expression), there would be no copyright infringement.

**Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.15 (2007); Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1990); Bensbargains.Net v.

XPBargains.Com, 2007 U.S. Dist. LEXIS 60544 at 8–10 (S.D. Cal. Aug. 16, 2007); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176–77 (C.D. Cal. 2001).

**INSTRUCTION NO. 9C**

**COPYRIGHT INFRINGEMENT – EXTRINSIC TEST; INTRINSIC TEST**

To determine whether the BRATZ dolls infringe Mattel's copyrights in the Bryant sketches, you must engage in a two-step analysis.  The first step is called the "extrinsic" test.  If necessary, this is followed by the second step of the analysis, which is called the "intrinsic" test.  [Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1177 (C.D. Cal. 2001).]

Stated generally, the "extrinsic" test considers whether two works share substantial similarity of ideas and expression as measured by external, objective criteria, while the "intrinsic" test considers whether a reasonable person (or in this case, a discerning 8-12 year old girl) would perceive a substantial similarity in the "total concept and feel" of each work, bearing in mind that ideas and concepts and general stylistic features are not protectible under copyright law.  [Lanard Toys, Ltd. v. Novelty, Inc., 511 F. Supp. 2d 1020, 1037–38 (N.D. Cal. 2007) (citing Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442–43 (9th Cir. 1994)).]

You should keep in mind that what is required to find infringement is not simply general "similarity" of the works but "substantial similarity" of protected elements of those works.  [Id.; Berkic v Crichton, 761 F.2d 1289, 1293–94 (9th Cir 1985).]

I will explain each of these tests in turn.

EXTRINSIC TEST

The "extrinsic" test removes from the analysis of infringement those elements of the copyrighted work that are not entitled to copyright protection.   The party claiming

114

infringement cannot rely on any similarity in expression resulting from unprotectible elements.  [Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176–77 (C.D. Cal. 2001).]

As I have already explained, the following elements of an original copyrighted work are not entitled to protection under copyright law:

- Ideas and concepts.

- Common features that are standard or essential to the expression of a given idea, called "scenes a faire."

- Expression that is not original to the author (in this case Mr. Bryant), such as pre-existing expression that influenced the author consciously or even subconsciously.

This is a general list of the common unprotected categories.

The process of applying the extrinsic test is referred to as "analytic dissection" because you need to isolate the elements of the copyrighted work and analyze each one separately, excluding the other elements present in the work and the combination of elements.  [See, e.g., Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1398 (9th Cir. 1997); Lanard Toys, 511 F. Supp. 2d at 1037–38.] It is also referred to as "filtering" because you need to filter out all of the unprotected elements.  [See, e.g., Zella v. E.W. Scripps Co., 529 F. Supp. 2d 1124, 1133 (C.D. Cal. 2007); Brookhaven Typesetting Servs. v. Adobe Sys., 2007 U.S. Dist. LEXIS 62661, at *22 (N.D. Cal. Aug. 24, 2007).]

You should apply the extrinsic test as follows:

*First*, identify those elements in the Bryant sketches that Mattel claims are the expression copied by MGA in the BRATZ dolls.  Mattel has the burden of identifying which specific elements of its works have been copied.

*Second*, you should determine which of those elements are entitled to copyright protection and which are not.  In other words, you must filter out from each of the 16 Bryant sketches all ideas, all scenes a faire, and all public domain expression that was not original to Mr. Bryant.  Mattel has the burden of proving which elements in each of the Bryant sketches are entitled to protection.

I will give you a few examples to illustrate the process of filtering.

It goes without saying that common physical features of a teenage girl are not protectible, as they are the features found in real-life teenage girls and depictions thereof.  Such features could be considered an idea, or even a fact, and therefore they must be filtered out.  This would apply to things found in nature such as the presence of heads, 2 ears, lips, hair, 2 arms, legs, standard body proportions, etc. in the sketches.  While the particular expression and unique arrangement of all of these features can be protected by copyright, the mere presence of those features as found in nature cannot.

That the figures in the sketches display fashions, shoes and accessories, by itself, is not protected because the use of fashions, shoes and accessories are "scenes a faire," or standard or common features, in the genre of fashion dolls.  Also, the "style" or general "look" of fashion dolls are not copyrightable.  Nor are conventional cosmetic techniques and looks.  Moreover, the design of particular clothing as used on fashion dolls is not protectible by copyright.

1  This is another similarity that cannot be counted, so the BRATZ dolls have to be compared
2  to the Bryant sketches without considering the dolls' clothes.  Similarly, hair, hair styles
3  and hairdos cannot be protected because on these fashion dolls the hair is meant to be
4  played with and changed by the target consumers.

5

6  MGA asserts that Carter Bryant's sketches show a group of four contemporary "sassy" or
7  "bratty" teenage friends of diverse ethnic backgrounds and a "funky urban hip" attitude
8  and style as the basis for a line of fashion dolls.  MGA asserts that all of this is a concept
9  or idea, and is thus not protected by copyright.  If you agree with MGA's position, then the
10  idea and concept of such a line of fashion dolls must be filtered out of any subsequent
11  analysis of claimed similarities.

12

13  MGA also asserts that the oversized heads, eyes, feet and lips in the sketches are not forms
14  of expression original to Carter Bryant's sketches, but rather simply reflected common
15  expression that can be found in other dolls, fashion advertisements, and artwork.  If you
16  agree with that contention, then you must "filter out" these elements in connection with
17  your subsequent analysis regarding substantial similarity, because the use of oversized
18  heads, eyes, feet and lips in the sketches was not original to Mr. Bryant.

19

20  The parties and their witnesses and experts will point to many other such issues, asserting
21  that features or elements should, or should not, be filtered out.  You are to determine
22  which, if any, of these features and elements should properly be filtered out in connection
23  with your subsequent analysis regarding substantial similarity.

24

25  Once you have dissected and filtered the Bryant sketches, you are ready to compare the
26  individual elements remaining in a particular sketch that you determine to be protectible
27  with the corresponding elements in the BRATZ dolls.  As the parties disagree with what

28

are, and what are not, the similarities between the two, you must next determine what those similarities are.

The burden is on Mattel to show by a preponderance of evidence the similarity of each element in the sketches you determine to be protectible.  In considering the extrinsic test, you may take into account the testimony of experts called by each party.

Now comparing the items in the BRATZ dolls that you find to be similar to the protected elements of expression in a particular Bryant sketch owned by Mattel, you should determine whether Mattel has shown by a preponderance of the evidence that the two works are substantially similar.  If you do not so find, then you must find for MGA and Bryant on the claim of copyright infringement.

If you do find substantial similarity under the extrinsic test, then you turn to the next step of the analysis, the "intrinsic" test.

BROAD OR THIN PROTECTION

Before proceeding to apply the "intrinsic" test, you must make an important preliminary determination:  the correct standard to apply.  The appropriate standard for the intrinsic test depends on the scope of copyright protection in a work.  In this case, you must determine the scope of copyright protection in each of Mr. Bryant's sketches asserted by Mattel against MGA.

The analytic dissection and filtration you previously performed in connection with the extrinsic test also allows you to determine whether the sketches are entitled to "broad" or "thin" copyright protection.  The sketches will be entitled to "broad" protection if you find that they are highly original and reflect a high degree of artistic judgment in a medium

1  offering a broad range of creative choice. The threshold for infringement in such works is
2  substantial similarity of original protected expression.

3

4  On the other hand, if you find that the sketches include only a few protectible elements, or
5  are in a medium in which the effective range of creative expression is limited, then the
6  sketches are only entitled to "thin" protection.  In that case, you can find infringement only
7  if the dolls are virtually identical to original protected expression in any protected sketch
8  examined as a whole.  [Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003); Cosmos
9  Jewelry Ltd. v. Po Sun Hon Co., 470 F. Supp. 2d 1072, 1084 (C.D. Cal. 2006) (citing
10  Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1439 (9th Cir. 1994)).]

11

12  The burden of proving that the Bryant sketches are entitled to broad protection is on Mattel.

13

14  INTRINSIC TEST

15

16  The second step of the infringement analysis, the "intrinsic" test, involves a subjective
17  comparison of the protectible aspects of the "works as a whole."  [Apple Computer, Inc. v.
18  Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994).]

19

20  In this evaluation, you should not consider the unprotectible elements that you filtered out
21  as part of the extrinsic test analysis.  [Cavalier v. Random House, Inc., 297 F.3d 815, 822
22  (9th Cir. 2002); Robert C. Lind, Copyright Law (3d ed. 2006) at 173.]

23

24  The intrinsic test is determined from the perspective of an ordinary, reasonable observer.
25  [Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996).]  Because girls of the age 8-12 are
26  the core intended market for the BRATZ dolls, you should consider such consumers as the
27  ordinary, reasonable observers.  [Aliotti v. R. Dakin & Co., 831 F.2d 898, 902 (9th Cir.
28

1   1987).]   In other words, you should perform the intrinsic test through the eyes of a

2   discerning 8-12 year old girl who would be a likely user of BRATZ dolls.

3

4   The testimony of experts is not to be considered in your evaluation of the intrinsic test.

5

6   The appropriate standard for the intrinsic test depends on the scope of copyright protection

7   in a work.  If you determine that the Bryant sketches are highly original and are entitled to

8   "broad" copyright protection, infringement under the "intrinsic" test may be found if the

9   ordinary, reasonable person (the 8-12 year old girl) would find the "total concept and feel"

10  of the two separate works to be substantially similar, bearing in mind that ideas, concepts,

11  and style are not protectible.   However, if you determine that the Bryant sketches are

12  entitled only to "thin" copyright protection because a large amount of expression has been

13  filtered out as a result of the application of the extrinsic test, MGA may only be found

14  liable for infringement if you determine that the sketches and dolls are "virtually identical"

15  to original protected expression of any protected sketch viewed as a whole.    [Satava v.

16  Lowry, 323 F.3d 805, 812 (9th Cir. 2003).]

17

18  Mattel bears the burden of proving by a preponderance of the evidence that the Bryant

19  sketches are entitled to broad protection under the intrinsic test.  If Mattel should fail to

20  meet that burden, you must apply the "virtual identity" test for "thinly protected" works.

21  The "virtual identity" test means just what it says:  the BRATZ dolls must be virtually

22  identical with respect to any elements that you find to be protectible in a particular Bryant

23  sketch for there to be infringement under the intrinsic test.

24

25  Then, applying one of these two tests – substantial similarity for broad works, or virtual

26  identity for thin works – you will determine if Mattel has met its burden of proving

27  infringement under the "intrinsic" test.  If Mattel has not met its burden under the intrinsic

28  test, then you must find for the defendants on the copyright infringement claims.

1

2 **Authority**:  Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004); Apple Computer, Inc. v.

3 Microsoft Corporation, 35 F.3d 1435, 1447  (9th Cir. 1994); Frybarger v. Int'l Bus.

4 Machines Corp., 812 F.2d 525, 530 (9th Cir. 1987); Thomas v. The Walt Disney Co., 2008

5 U.S. Dist. LEXIS 14643 (N.D. Cal. Feb. 14, 2008); Idema v. Dreamworks, Inc., 162 F.

6 Supp. 2d 1129, 1176 (C.D. Cal. 2001).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 10C**

**COPYRIGHT INFRINGEMENT – COMPARING TWO DIMENSIONAL WORK WITH A THREE DIMENSIONAL WORK**

The Bryant sketches are 2-dimensional works, while the BRATZ dolls are 3-dimensional works.  While those facts may complicate your analysis under the extrinsic and intrinsic tests, the copyright in a 2-dimensional work can be infringed by a 3-dimensional work.  However, the copyright in a 2-dimensional work only covers what is shown on the face of the work.  For example, if a Bryant sketch only shows the front view of a figure, the copyright does not cover the rear or side view of that figure, or anything else that is not specifically visible in that particular sketch.  Whether in this case the BRATZ dolls (3-dimensional works) infringe the Bryant sketches (2-dimensional works), is for you to decide, using the two-part analyses already described.

**Authority**: 1-2 <u>Nimmer on Copyright</u> § 2.08(C)(2).

**INSTRUCTIONS NO. 11C**

**COPYRIGHT INFRINGEMENT – INDEPENDENT CREATION**

Even if Mattel proves that MGA had access to the 16 Bryant sketches and that particular Bratz dolls are substantially similar to certain of these sketches, this only creates a presumption of illegal copying.  MGA may rebut that presumption with evidence that the Bratz dolls are the product of independent creation, and were not copied from the 16 Bryant sketches.  If MGA presents evidence of independent creation, then you should weigh all of the evidence bearing in mind that Mattel bears the burden of proving that MGA copied the 16 Bryant sketches.

**Authority**:   Moore v. Kulicke & Soffa Industries, Inc., 318 F.3d 561 (3d Cir. 2003); Keeler v. Brass Co. v. Continental Brass Co., 862 F.2d 1063 (4th Cir. 1988); Don Post Studios, inc. v. Cinema Secrets, Inc., 124 F. Supp. 2d 311 (E.D. Pa. 2000).

**INSTRUCTION NO. 12C**

**COPYRIGHT INFRINGEMENT – MULTIPLE COPYRIGHT REGISTRATIONS**

Mattel has based its copyright claims on 16 separate copyright registrations, each one registering a different Carter Bryant sketch.  Each of these sketches is only entitled to copyright protection for the original expression contained in the particular sketch.  Mattel cannot extend or enhance its rights by treating two or more of the sketches as a compilation or as a unified work.  In other words, Mattel cannot pick and choose characteristics from more than one of these sketches to search for alleged similarities with a single BRATZ doll.  Each individual sketch must be judged based on its own protectible content in a comparison with a particular one of the allegedly infringing BRATZ dolls.

This means that in determining whether Mattel has met its burden of proving infringement, you must separately analyze each of the 16 sketches covered by a Mattel copyright under both the extrinsic and intrinsic tests.  As an example, you may not combine the design of facial features from one Bryant sketch with the body proportions from another Bryant sketch, and then evaluate whether the BRATZ dolls are substantially similar to this combination.

**Authority**:  Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1144 n.31 (C.D. Cal. 2001); see also Green v. Schwarzenegger, 1995 U.S. Dist. LEXIS 14031 at ** 61-62 (C.D. Cal. July 17, 1995) ("Plaintiff cannot pick and choose characteristics from any number of characters in his work to search for alleged similarities with a single character in defendants' work."); 9 Patry on Copyright § 9:66 (2008).

**INSTRUCTION NO. 13C**

**DERIVATIVE LIABILITY: VICARIOUS INFRINGEMENT**

If you find that MGA or MGA Hong Kong infringed Mattel's copyrights in the Bryant sketches, you may consider Mattel's claims that Isaac Larian vicariously infringed those copyrights.  Mattel has the burden of proving each of the following by a preponderance of the evidence:

       1.    That Mr. Larian profited directly from the infringing activity of MGA or MGA Hong Kong;

       2.    That Mr. Larian had the right and ability to supervise the infringing activities of MGA and MGA Hong Kong; and

       3.    That Mr. Larian failed to exercise that right and ability.

If you find that Mattel proved each of these elements, your verdict should be for Mattel as to the individual defendant if you also find that MGA or MGA Hong Kong infringed Mattel's copyright.  If, on the other hand, Mattel has failed to prove any of these elements with respect to Isaac Larian, your verdict should be for Mr. Larian.

**Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.20 (2007).

**-REVISED-**

**INSTRUCTION NO. 14C**

**DERIVATIVE LIABILITY: CONTRIBUTORY INFRINGEMENT**

A defendant may be liable for copyright infringement engaged in by another if he knew or had reason to know of the infringing activity and intentionally induces that infringing activity.

If you find that MGA or MGA Hong Kong infringed Mattel's copyrights in the Bryant sketches, you may proceed to consider Mattel's claim that Isaac Larian contributorily infringed those copyrights.  To prove contributory copyright infringement, Mattel must prove both of the following elements by a preponderance of the evidence:

      1.    That Mr. Larian knew or had reason to know of the infringing activity of MGA or MGA Hong Kong; and

      2.    That Mr. Larian intentionally induced MGA or MGA Hong Kong's infringing activity

If you find that MGA or MGA Hong Kong infringed Mattel's copyright, and you also find that Mattel has proved both of these elements as to Mr. Larian, your verdict should be for the Mattel.  If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for Mr. Larian.

**Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.21 (2007).

**-REVISED-**

**INSTRUCTION NO.  15**

**DERIVATIVE LIABILITY: INTENTIONAL INDUCEMENT**


To determine whether or not Mr. Larian contributorily infringed Mattel's copyrights (according to the preceding instruction), you must consider whether Mr. Larian intended to induce MGA and MGA Hong Kong's infringing activities.  Mr. Larian cannot be liable for another'' infringement if he did not act with the desire or purpose of intentionally inducing that infringement.  Mere awareness that potential infringing activity might result is not enough.


**Authority:**  Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 931-33 (2005); Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262-263 (9th Cir. 1996).

DATED:  June 6, 2008          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


By:  _____/s/ Jason D. Russell_____
Jason D. Russell
Attorneys for the MGA Parties