1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
   Michael T. Zeller (Bar No. 196417)
3    michaelzeller@quinnemanuel.com
   Jon D. Corey (Bar No. 185066)
4    joncorey@quinnemanuel.com
   Timothy L. Alger (Bar No. 160303)0
5    timalger@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
   Telephone:   (213) 443-3000
7  Facsimile:   (213) 443-3100

8  Attorneys for Mattel, Inc.

9            UNITED STATES DISTRICT COURT

10          CENTRAL DISTRICT OF CALIFORNIA

11                 EASTERN DIVISION

12

13  CARTER BRYANT, an individual,          CASE NO. CV 04-9049 SGL (RNBx)

14            Plaintiff,                    Consolidated with
                                            Case No. CV 04-09059
15                                          Case No. CV 05-02727
         vs.
16                                          Hon. Stephen G. Larson
    MATTEL, INC., a Delaware
17  corporation,
                                           **MATTEL, INC.'S AMENDED**
18            Defendant.                    **DISPUTED PROPOSED VERDICT**
                                           **FORMS;**
19  ─────────────────────────────
    AND CONSOLIDATED ACTIONS              **DEFENDANTS' OBJECTIONS**
20                                         **THERETO; AND**

21                                         **MATTEL, INC.'S RESPONSES IN**
                                           **SUPPORT THEREOF**
22

23                                         **Phase 1:**

24                                         Pre-Trial Conference: May 19, 2008
                                           Trial Date:            May 27, 2008
25

26

27

28

Mattel, Inc. ("Mattel") hereby proposes the following amended disputed proposed verdict forms for Phases 1A and 1B of the trial in this matter.  The specific objections and responses relating to Mattel's proposed verdict form for Phase 1A are attached behind Tab A.  The specific objections and responses relating to Mattel's proposed verdict form for Phase 1B are attached behind Tab B.

Mattel requests and reserves the right to amend, modify, withdraw and/or supplement these forms during the trial of this matter.  Mattel reserves the right to modify these forms depending upon and based upon rulings issued in connection with any motions *in limine* or other pre-trial or trial motions, and the evidence and theories proffered by the parties during the course of the trial.

DATED:  June 18, 2008                    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


                                         By  /s/ Jon D. Corey
                                            Jon D. Corey
                                            Attorneys for Mattel, Inc.

## **Mattel's Proposed Verdict Form for Phase 1A**

We answer the questions submitted to us as follows:

## **Ownership of Inventions**

1.      Did Carter Bryant create any Bratz-related drawings, sculpts or other works while employed by Mattel?

       Yes   _____

       No    _____

*If your answer is "yes," then answer Question 2.*

*If your answer is "no," then answer Question 4.*

2.      Which of the following Bratz-related drawings and designs did Carter Bryant create while employed by Mattel?  Place an X or another mark next to each such work:

**Trial Exhibit No.**

Trial Exhibit 3-1       _____

Trial Exhibit 3-2       _____

Trial Exhibit 3-3       _____

Trial Exhibit 3-4       _____

Trial Exhibit 3-5       _____

Trial Exhibit 3-6       _____

Trial Exhibit 3-7       _____

Trial Exhibit 3-8       _____

Trial Exhibit 3-9       _____

| | | |
|---|---|---|
| 1 | Trial Exhibit 3-10 | _____ |
| 2 | Trial Exhibit 3-12 | _____ |
| 3 | Trial Exhibit 3-13 | _____ |
| 4 | Trial Exhibit 5-79 | _____ |
| 5 | Trial Exhibit 5-86 | _____ |
| 6 | Trial Exhibit 5-89 | _____ |
| 7 | Trial Exhibit 10033 | _____ |
| 8 | Trial Exhibit 10153 | _____ |
| 9 | Trial Exhibit 1107 | _____ |
| 10 | Trial Exhibit 1108 | _____ |
| 11 | Trial Exhibit 1109 | _____ |
| 12 | Trial Exhibit 1110 | _____ |
| 13 | Trial Exhibit 1-1 | _____ |
| 14 | Trial Exhibit 1-2 | _____ |
| 15 | Trial Exhibit 1-3 | _____ |
| 16 | Trial Exhibit 1-4 | _____ |
| 17 | Trial Exhibit 1-5 | _____ |
| 18 | Trial Exhibit 1-6 | _____ |
| 19 | Trial Exhibit 1-7 | _____ |
| 20 | Trial Exhibit 1-8 | _____ |
| 21 | Trial Exhibit 1-9 | _____ |
| 22 | Trial Exhibit 1-10 | _____ |
| 23 | Trial Exhibit 1-11 | _____ |
| 24 | Trial Exhibit 5-14 | _____ |
| 25 | Trial Exhibit 5-18 | _____ |
| 26 | Trial Exhibit 5-19 | _____ |
| 27 | Trial Exhibit 5-28 | _____ |
| 28 | | |

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S AMENDED DISPUTED PROPOSED VERDICT FORMS

| | | |
|---|---|---|
| 1 | Trial Exhibit 5-30 | _____ |
| 2 | Trial Exhibit 5-34 | _____ |
| 3 | Trial Exhibit 5-35 | _____ |
| 4 | Trial Exhibit 5-36 | _____ |
| 5 | Trial Exhibit 5-37 | _____ |
| 6 | Trial Exhibit 5-38 | _____ |
| 7 | Trial Exhibit 5-39 | _____ |
| 8 | Trial Exhibit 5-40 | _____ |
| 9 | Trial Exhibit 5-41 | _____ |
| 10 | Trial Exhibit 5-46 | _____ |
| 11 | Trial Exhibit 5-49 | _____ |
| 12 | Trial Exhibit 5-50 | _____ |
| 13 | Trial Exhibit 5-52 | _____ |
| 14 | Trial Exhibit 5-53 | _____ |
| 15 | Trial Exhibit 5-54 | _____ |
| 16 | Trial Exhibit 5-55 | _____ |
| 17 | Trial Exhibit 5-56 | _____ |
| 18 | Trial Exhibit 5-57 | _____ |
| 19 | Trial Exhibit 5-58 | _____ |
| 20 | Trial Exhibit 5-59 | _____ |
| 21 | Trial Exhibit 5-60 | _____ |
| 22 | Trial Exhibit 5-61 | _____ |
| 23 | Trial Exhibit 5-62 | _____ |
| 24 | Trial Exhibit 5-63 | _____ |
| 25 | Trial Exhibit 5-64 | _____ |
| 26 | Trial Exhibit 5-65 | _____ |
| 27 | Trial Exhibit 5-66 | _____ |
| 28 | | |

| | | |
|---|---|---|
| 1 | Trial Exhibit 5-67 | _____ |
| 2 | Trial Exhibit 5-68 | _____ |
| 3 | Trial Exhibit 5-69 | _____ |
| 4 | Trial Exhibit 5-70 | _____ |
| 5 | Trial Exhibit 5-71 | _____ |
| 6 | Trial Exhibit 5-72 | _____ |
| 7 | Trial Exhibit 5-73 | _____ |
| 8 | Trial Exhibit 5-74 | _____ |
| 9 | Trial Exhibit 5-75 | _____ |
| 10 | Trial Exhibit 5-76 | _____ |
| 11 | Trial Exhibit 5-77 | _____ |
| 12 | Trial Exhibit 5-78 | _____ |
| 13 | Trial Exhibit 5-79 | _____ |
| 14 | Trial Exhibit 5-80 | _____ |
| 15 | Trial Exhibit 5-80 | _____ |
| 16 | Trial Exhibit 5-81 | _____ |
| 17 | Trial Exhibit 5-82 | _____ |
| 18 | Trial Exhibit 5-83 | _____ |
| 19 | Trial Exhibit 5-84 | _____ |
| 20 | Trial Exhibit 5-85 | _____ |
| 21 | Trial Exhibit 5-86 | _____ |
| 22 | Trial Exhibit 5-87 | _____ |
| 23 | Trial Exhibit 5-88 | _____ |
| 24 | Trial Exhibit 5-89 | _____ |
| 25 | Trial Exhibit 5-95 | _____ |
| 26 | Trial Exhibit 5-96 | _____ |
| 27 | Trial Exhibit 5-99 | _____ |
| 28 | | |

Trial Exhibit 5-102          _____

Trial Exhibit 5-103          _____

Trial Exhibit 5-104          _____

Trial Exhibit 5-105          _____

Trial Exhibit 5-106          _____

Trial Exhibit 5-107          _____

Trial Exhibit 5-108          _____

Trial Exhibit 5-111          _____

Trial Exhibit 5-113          _____

Trial Exhibit 5-114          _____

Trial Exhibit 5-136          _____

Trial Exhibit 10-2           _____

Trial Exhibit 712            _____

Trial Exhibit 713            _____

Trial Exhibit 1327           _____

Trial Exhibit 1328           _____

3.      Which of the following Bratz-related three-dimensional sculpts or works did Carter Bryant create, or direct others to create, while employed by Mattel?  Place an X or another mark next to each such work:

**Trial Exhibit No.**

Trial Exhibit 537            _____

Trial Exhibit 1105           _____

Trial Exhibit 1136           _____

Trial Exhibit 1140           _____

Trial Exhibit 1234           _____

4.      Did Bryant conceive the idea for the name "Bratz" while employed by Mattel?

        Yes    ____

        No    ____

5.      Did Bryant conceive the idea for a line of dolls called "Bratz" while employed by Mattel?

        Yes    ____

        No    ____

**Intentional Interference with Contractual Relations**

6.      Is MGA Entertainment, Inc. ("MGA") liable to Mattel for intentional interference with contractual relations?

        Yes    ____

        No    ____

7.      Is Isaac Larian liable to Mattel for intentional interference with contractual relations?

        Yes    ____

        No    ____

**Aiding and Abetting Breach of Fiduciary Duty**

8.      Is MGA liable to Mattel for aiding and abetting breach of fiduciary duty?

        Yes    ____

        No    ____

9.      Is Isaac Larian liable to Mattel for aiding and abetting breach of fiduciary duty?

        Yes      ____

        No      ____

## Aiding and Abetting Breach of the Duty of Loyalty

10.      Is MGA liable to Mattel for aiding and abetting breach of the duty of loyalty?

        Yes      ____

        No      ____

11.      Is Isaac Larian liable to Mattel for aiding and abetting breach of the duty of loyalty?

        Yes      ____

        No      ____

## Conversion

12.      Is MGA liable to Mattel for conversion?

        Yes      ____

        No      ____

13.      Is Isaac Larian liable to Mattel for conversion?

        Yes      ____

        No      ____

14.      Is MGA Entertainment (HK) Limited liable to Mattel for conversion?

        Yes      ____

        No      ____

**<u>Fraudulent Concealment</u>**

15.   Did defendants fraudulently conceal the bases for Mattel's claim of intentional interference with contract against them until on or after April 27, 2001?

Yes   ____

No    ____

16.   Did defendants fraudulently conceal the bases for Mattel's claim of conversion against them until on or after April 27, 2002?

Yes   ____

No    ____

Once this verdict form is completed, the foreperson of the jury should sign and date on the lines below.

DATED: _____, 2008

_____
                                    Jury Foreperson

# **Verdict Form for Phase 1B**

We answer the questions submitted to us as follows:

## **Copyright Infringement**

1.    Is MGA Entertainment, Inc. ("MGA") liable to Mattel for copyright infringement?

        Yes   ____

        No    ____

2.    Is Isaac Larian liable to Mattel for copyright infringement?

        Yes   ____

        No    ____

3.    Is MGA Entertainment (HK) Limited ("MGA HK") liable to Mattel for copyright infringement?

        Yes   ____

        No    ____

4.    What amount of damages should be awarded to Mattel for the Defendants' copyright infringement?  (Answer all that apply.)

        (a)    Copyright Infringement by MGA

            MGA's Profits    $_____

1         (b)     Copyright Infringement by Isaac Larian

2                 Distributions Larian Received from MGA

3                                $_____

4

5                 Value of Larian's Ownership Percentage of Bratz

6                                  $_____

7

8         (c)     Copyright Infringement by MGA HK

9                 MGA HK's Profits     $_____

10

11       **Intentional Interference With Contractual Relations**

12     5.     In Phase 1A of this trial, you found that the Defendant(s) [INSERT

13 NAMES] is/are liable to Mattel for intentional interference with contractual

14 relations.  What amount of damages should be awarded to Mattel?

15

16       $_____

17

18         **Aiding and Abetting Breach of Fiduciary Duty**

19     6.     In Phase 1A of this trial, you found that the Defendant(s) [INSERT

20 NAMES] is/are liable to Mattel for aiding and abetting Carter Bryant's breach of

21 fiduciary duty.  What amount of damages should be awarded to Mattel?

22

23       $_____

24

25

26

27

28

**Aiding and Abetting Breach of the Duty of Loyalty**

7.      In Phase 1A of this trial, you found that the Defendant(s) [INSERT NAMES] is/are liable to Mattel for aiding and abetting Carter Bryant's breach of the duty of loyalty.  What amount of damages should be awarded to Mattel?


$_____


**Conversion**

8.      In Phase 1A of this trial, you found that the Defendant(s) [INSERT NAMES] is/are liable to Mattel for conversion.  What amount of damages should be awarded to Mattel?


$_____


**Punitive Damages**

9.      Did MGA Entertainment act with malice, oppression, or fraud?

          Yes      ____

          No       ____

*If your answer is "yes," then answer Question 10.*

*If your answer is "no," then answer Question 11.*


10.     What amount of punitive damages should be awarded against MGA Entertainment, if any?

          $_____

11.     Did Isaac Larian act with malice, oppression, or fraud?

Yes     ____

No      ____

*If your answer is "yes," then answer Question 12.*

*If your answer is "no," then answer Question 13.*

12.     What amount of punitive damages should be awarded against Mr. Larian, if any?

$_____

13.     Did MGA HK act with malice, oppression, or fraud?

Yes     ____

No      ____

*If your answer is "yes," then answer Question 14.*

14.     What amount of punitive damages should be awarded against MGA HK, if any?

$_____

Once this verdict form is completed, the foreperson of the jury should sign and date on the lines below.

DATED: _____, 2008

_____
Jury Foreperson

## DEFENDANTS' GENERAL OBJECTIONS TO MATTEL'S PROPOSED SPECIAL VERDICT FORMS

The MGA Parties respectfully submit their objections to Mattel's Proposed Special Verdict Forms as set forth below. The MGA Parties object to Mattel's Proposed Special Verdict Forms in general for omitting any of the questions proposed by the MGA Parties. In particular, the MGA Parties object to the Mattel Special Verdict Forms because they ignore almost entirely the factual determination that the jury must make regarding the MGA Parties' myriad affirmative defenses. See Final Pre-Trial Conference Order at 8 ("The Court intends to rule upon the MGA parties' equitable affirmative defenses at the close of the Phase 1 trial, but will allow evidence as to these defenses to be presented to the jury. The Court may have the jury answer special interrogatories as to certain of these equitable defenses so as to establish the requisite factual findings for the Court to rule upon such defenses.")

The MGA Parties further object that Mattel's Proposed Forms fail to serve the purpose of a special verdict form. Fed. R. Civ. P. 49(a)(1), requires that the jury return, "a special verdict in the form of a special written finding *on each issue of fact*." (emphasis added). This Court's Order Regarding Pretrial Deadlines dated March 11, 2008 specifically states that the parties are to file "special verdict forms." See Order Regarding Pretrial Deadlines ¶ 2.

The purpose of a special verdict is to concentrate the jury on its fact-finding role. See Zhang v. Am. Gem. Seafoods, Inc., 339 F.3d 1020, 1031 (9th Cir. 2003) (discussing differences between special verdicts and general verdicts and noting that "special verdicts 'compel the jury to focus exclusively on its fact-finding role'") (quoting Floyd v. Laws, 929 F.2d 1390, 1395 (9th Cir. 1991)). Indeed, particularly where cases are complex and fact-intensive, special verdict forms provide the jurors with assistance in framing their understanding of the issue. For example, in a First

1    Amendment case, <u>Tavoulareas v. Piro</u>, then Circuit Court Judge Ruth Bader

2    Ginsburg lauded the use of detailed special verdict forms, noting that they "impel

3    the jurors to advert to the framework within which the judge has instructed them to

4    consider the case and could assist them to hold the distinct legal questions in clear

5    and separate view" and "thus may promote both comprehension and actual

6    application of the governing … law."  817 F.2d 762, 809 (D.C. Cir. 1987)

7    (Ginsburg, J., concurring).  She described with approval the use of "a jury verdict

8    form which 'took the jury step by step through each of the theories on which

9    plaintiff relied.'"  Id. at 809 n.4 (internal citations omitted).

10        By contrast, Mattel presents cursory verdict forms with no step-by-step

11   analysis that fail to cover substantive issues and would have the jury make

12   conclusions of law without any findings of fact.  For this reason, they are wholly

13   inappropriate.

## MATTEL'S GENERAL STATEMENT IN SUPPORT OF ITS PROPOSED SPECIAL VERDICT FORMS

The MGA Parties and Bryant have raised a variety of objections to Mattel's Proposed Special Verdict Forms.  They are not well taken.  The thrust of defendants' objections is that the Court is somehow required to provide the jury with a series of absurdly long and defense-slanted forms such as those defendants have proposed – but this is obviously not required by *Federal Rule of Civil Procedure* 49 or any other source.

Instead, for the reasons stated in Mattel's objections to defendants' proposed verdict forms, the Court should provide Mattel's verdict forms to the jury.  Mattel's forms accurately set forth the applicable law, whereas defendants do not.  Mattel's forms are fair to all parties; defendants' forms are hopelessly slanted toward the defense.  Mattel's forms properly ask the jury to make liability determinations as to each defendant; defendants' forms improperly lump all defendants together.  Mattel's forms preserve the jury's role as fact-finder; defendants' forms consistently prompt the jury to accept, or ask the jury to assume, defendants' version of the facts.  Finally, Mattel's forms are clear and are an appropriate length; defendants' forms, which are absurdly long and convoluted, are calculated to suggest to the jury that they must spend weeks in deliberations if they are to find for Mattel.

Defendants claim that Mattel's forms are not proper because the Federal Rules and the Court's Scheduling Order require lengthy verdict forms that walk the jury through every fact, every element and every defense conceivably relevant to Mattel's claims against defendants.  That simply is not the case.  First, defendants erroneously assert that *Federal Rule of Civil Procedure* 49(a) requires a lengthy, convoluted special verdict form like those proposed by defendants.  Rule 49(a) does not *require* such a form at all; rather, it *authorizes* the Court to use such a form, as well as more general verdict forms.  *See Fed. R. Civ. P.* 49(a) ("The court may

1  require a jury to return only a special verdict in the form of a special written finding

2  on each issue of fact."); *Fed. R. Civ. P.* 49(b) ("The court may submit to the jury

3  forms for a general verdict . . . .").  Moreover, the Court's Order does not require

4  more detail than Mattel has provided in its proposed forms merely because the

5  Order uses the word "special"—and it certainly does not require as much detail (and

6  often erroneous detail) as the forms proposed by defendants.  As set forth in Mattel's

7  objections to defendants' proposed verdict forms, defendants' convoluted and

8  overly-detailed versions are erroneous, misleading, and call for numerous findings

9  that are unnecessary and/or prejudicial.  Defendants' proposed forms repeatedly

10  mischaracterize Mattel's claims.

11        In any event, defendants fundamentally misunderstand the definition of a

12  special verdict form.  In the very case they cite, *Zhang v. American Gem Seafoods,*

13  *Inc.*, 339 F.3d 1020, 1031 (9th Cir. 2003), the Ninth Circuit explained that "the key

14  is not the number of questions on the verdict form, but whether the jury announces

15  the ultimate legal result on each claim.  If the jury announces only its ultimate

16  conclusions, it returns an ordinary general verdict; if it makes factual findings in

17  addition to the ultimate legal conclusions, it returns a general verdict with

18  interrogatories.  If it returns *only* factual findings, leaving the court to determine the

19  ultimate legal result, it returns a special verdict."  (emphasis added.)  Here, even

20  defendants' proposed special verdict form is not restricted to factual questions, and

21  hence is not a "special" verdict form as that has been defined by the Ninth Circuit.

22  Rather, it is a general verdict form with interrogatories.

23        This is also shown by the fact that defendants, like Mattel, have submitted

24  proposed jury instructions.  With a true "special" verdict form, as defined in *Zhang*,

25  there would be no jury instructions.  As described by the court in *Zhang*, it is a

26  general verdict, not a special verdict, that "require[s] legal instruction" so that the

27  jury can apply the law to the facts; because a special verdict "'compel[s] the jury to

28  focus *exclusively* on its factfinding role,'" 339 F.3d at 1031 (quoting *Floyd v. Laws*,

1   929 F.2d 1390, 1395 (9th Cir. 1991)) (emphasis added), instructions on the legal

2   elements of claims are unnecessary.  *See also Landes Constr. Co. v. Royal Bank of*

3   *Canada*, 833 F.2d 1365, 1374 (9th Cir. 1987).  Thus, by requiring the submission of

4   jury instructions, this Court has already concluded that the type of "special" verdict

5   form discussed in *Zhang* is not appropriate here, rendering defendants' objections

6   inapplicable.

7          Neither Rule 49 nor the Court's Scheduling Order provides that Mattel's

8   proposed verdict forms are improper.  Considered in conjunction with Mattel's

9   proposed jury instructions, these forms provide ample and clear guidance to the jury.

10  A simple form such as Mattel's is clearly preferable to an overly detailed and

11  convoluted version such as defendants' proposed form.  *Cooper v. Paychex, Inc.*,

12  960 F. Supp. 966, 973 (E.D. Va. 1997), is on point.  There, a party claimed that its

13  adversary's proposed verdict form was not sufficiently detailed.  The court rejected

14  the argument as having "no merit," reasoning that:

15              The jury was extensively instructed as to the applicable

16              burdens of proof.  Paychex has not cited any case, and this

17              Court knows of none, which requires the jury form to

18              capture each and every jury instruction.  A jury form is

19              intended to assist the jury in analyzing and presenting its

20              decision.  *The jury form submitted by Paychex would have*

21              *failed that goal due to its length and its confusing*

22              *structure*.

23  *Id.* at 973 (emphasis added).  Defendants, like Paychex, have "not cited any case …

24  which requires the jury form to capture each and every jury instruction."  Id.

25  Defendants are simply wrong in asserting that Mattel's proposed form "ignor[es] …

26  factual questions"; such questions are amply addressed in Mattel's proposed jury

27  instructions, which are more than adequate to guide the jury in filling out the verdict

28  forms.

Additionally, many of defendants' objections concerning additional questions they say Mattel's forms should include are erroneous as a matter of law and/or contrary to the Court's prior rulings in this case, including the April 25, 2008 Order regarding the parties' cross-motions for summary judgment.  For example, defendants object to Mattel's proposed verdict forms on the ground that they "ignor[e] the factual questions such as" "whether the term 'inventions' applies to the Bratz drawings," and "whether there was a valid assignment of any copyright interest to Mattel."  Those objections should be overruled because the Court has already ruled against defendants on those very issues.  *See* April 25, 2008 Order, at 4-5 (finding that Inventions Agreement is a valid and enforceable contract, that the "original Bratz drawings clearly fall within the scope of the Inventions Agreement," and that Bryant owed a fiduciary duty to Mattel); *see also* June 7, 2008 Final Pre-Trial Conference Order for Phase 1 Trial, at 4 (confirming that Mattel owns "'any Bratz-related "inventions" (including any designs, improvements, ideas, concepts and copyrightable subject matter' that Carter Bryant 'created during the period of his employment with Mattel'").  Defendants' objections that Mattel's proposed forms do not incorporate their proposed affirmative defenses should also be overruled because the Court already concluded that almost all of defendants' affirmative defenses are equitable, and the Court – not the jury – will rule on them *after* trial.  *See id.* at 7-8.

For all of the above reasons and those set forth below with respect to defendants' specific objections, Mattel submits that defendants' forms should be rejected, and Mattel's forms should be provided to the jury in each of Phase 1A and Phase 1B of the trial in this matter.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TAB A**

## **SPECIFIC OBJECTIONS AND RESPONSES REGARDING MATTEL'S PROPOSED SPECIAL VERDICT FORM FOR PHASE 1A**

### **Ownership of Inventions**

1.      Did Carter Bryant create any Bratz-related drawings, sculpts or other works while employed by Mattel?

        Yes   ____

        No    ____


*If your answer is "yes," then answer Question 2.*

*If your answer is "no," then answer Question 4.*


2.      Which of the following Bratz-related drawings and designs did Carter Bryant create while employed by Mattel?  Place an X or another mark next to each such work:


**Trial Exhibit No.**

Trial Exhibit 3-1          _____

Trial Exhibit 3-2          _____

Trial Exhibit 3-3          _____

Trial Exhibit 3-4          _____

Trial Exhibit 3-5          _____

Trial Exhibit 3-6          _____

Trial Exhibit 3-7          _____

Trial Exhibit 3-8          _____

Trial Exhibit 3-9          _____

Trial Exhibit 3-10         _____

| | | |
|---|---|---|
| 1 | Trial Exhibit 3-12 | _____ |
| 2 | Trial Exhibit 3-13 | _____ |
| 3 | Trial Exhibit 5-79 | _____ |
| 4 | Trial Exhibit 5-86 | _____ |
| 5 | Trial Exhibit 5-89 | _____ |
| 6 | Trial Exhibit 10033 | _____ |
| 7 | Trial Exhibit 10153 | _____ |
| 8 | Trial Exhibit 1107 | _____ |
| 9 | Trial Exhibit 1108 | _____ |
| 10 | Trial Exhibit 1109 | _____ |
| 11 | Trial Exhibit 1110 | _____ |
| 12 | Trial Exhibit 1-1 | _____ |
| 13 | Trial Exhibit 1-2 | _____ |
| 14 | Trial Exhibit 1-3 | _____ |
| 15 | Trial Exhibit 1-4 | _____ |
| 16 | Trial Exhibit 1-5 | _____ |
| 17 | Trial Exhibit 1-6 | _____ |
| 18 | Trial Exhibit 1-7 | _____ |
| 19 | Trial Exhibit 1-8 | _____ |
| 20 | Trial Exhibit 1-9 | _____ |
| 21 | Trial Exhibit 1-10 | _____ |
| 22 | Trial Exhibit 1-11 | _____ |
| 23 | Trial Exhibit 5-14 | _____ |
| 24 | Trial Exhibit 5-18 | _____ |
| 25 | Trial Exhibit 5-19 | _____ |
| 26 | Trial Exhibit 5-28 | _____ |
| 27 | Trial Exhibit 5-30 | _____ |
| 28 | | |

1    Trial Exhibit 5-34          _____

2    Trial Exhibit 5-35          _____

3    Trial Exhibit 5-36          _____

4    Trial Exhibit 5-37          _____

5    Trial Exhibit 5-38          _____

6    Trial Exhibit 5-39          _____

7    Trial Exhibit 5-40          _____

8    Trial Exhibit 5-41          _____

9    Trial Exhibit 5-46          _____

10   Trial Exhibit 5-49          _____

11   Trial Exhibit 5-50          _____

12   Trial Exhibit 5-52          _____

13   Trial Exhibit 5-53          _____

14   Trial Exhibit 5-54          _____

15   Trial Exhibit 5-55          _____

16   Trial Exhibit 5-56          _____

17   Trial Exhibit 5-57          _____

18   Trial Exhibit 5-58          _____

19   Trial Exhibit 5-59          _____

20   Trial Exhibit 5-60          _____

21   Trial Exhibit 5-61          _____

22   Trial Exhibit 5-62          _____

23   Trial Exhibit 5-63          _____

24   Trial Exhibit 5-64          _____

25   Trial Exhibit 5-65          _____

26   Trial Exhibit 5-66          _____

27   Trial Exhibit 5-67          _____

28

| | | |
|---|---|---|
| 1 | Trial Exhibit 5-68 | _____ |
| 2 | Trial Exhibit 5-69 | _____ |
| 3 | Trial Exhibit 5-70 | _____ |
| 4 | Trial Exhibit 5-71 | _____ |
| 5 | Trial Exhibit 5-72 | _____ |
| 6 | Trial Exhibit 5-73 | _____ |
| 7 | Trial Exhibit 5-74 | _____ |
| 8 | Trial Exhibit 5-75 | _____ |
| 9 | Trial Exhibit 5-76 | _____ |
| 10 | Trial Exhibit 5-77 | _____ |
| 11 | Trial Exhibit 5-78 | _____ |
| 12 | Trial Exhibit 5-79 | _____ |
| 13 | Trial Exhibit 5-80 | _____ |
| 14 | Trial Exhibit 5-80 | _____ |
| 15 | Trial Exhibit 5-81 | _____ |
| 16 | Trial Exhibit 5-82 | _____ |
| 17 | Trial Exhibit 5-83 | _____ |
| 18 | Trial Exhibit 5-84 | _____ |
| 19 | Trial Exhibit 5-85 | _____ |
| 20 | Trial Exhibit 5-86 | _____ |
| 21 | Trial Exhibit 5-87 | _____ |
| 22 | Trial Exhibit 5-88 | _____ |
| 23 | Trial Exhibit 5-89 | _____ |
| 24 | Trial Exhibit 5-95 | _____ |
| 25 | Trial Exhibit 5-96 | _____ |
| 26 | Trial Exhibit 5-99 | _____ |
| 27 | Trial Exhibit 5-102 | _____ |
| 28 | | |

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S AMENDED DISPUTED PROPOSED VERDICT FORMS

1  Trial Exhibit 5-103                    _____

2  Trial Exhibit 5-104                    _____

3  Trial Exhibit 5-105                    _____

4  Trial Exhibit 5-106                    _____

5  Trial Exhibit 5-107                    _____

6  Trial Exhibit 5-108                    _____

7  Trial Exhibit 5-111                    _____

8  Trial Exhibit 5-113                    _____

9  Trial Exhibit 5-114                    _____

10  Trial Exhibit 5-136                   _____

11  Trial Exhibit 10-2                    _____

12  Trial Exhibit 712                     _____

13  Trial Exhibit 713                     _____

14  Trial Exhibit 1327                    _____

15  Trial Exhibit 1328                    _____

16

17      3.    Which of the following Bratz-related three-dimensional sculpts or

18  works did Carter Bryant create, or direct others to create, while employed by

19  Mattel?  Place an X or another mark next to each such work:

20

21  **Trial Exhibit No.**

22  Trial Exhibit 537                     _____

23  Trial Exhibit 1105                    _____

24  Trial Exhibit 1136                    _____

25  Trial Exhibit 1140                    _____

26  Trial Exhibit 1234                    _____

27

28

4.   Did Bryant conceive the idea for the name "Bratz" while employed by Mattel?

> Yes  ____

> No   ____

5.   Did Bryant conceive the idea for a line of dolls called "Bratz" while employed by Mattel?

> Yes  ____

> No   ____

## **MGA PARTIES OBJECT TO THIS PROPOSED FORM AS STATED BELOW:**

The MGA Parties object to Mattel's Proposed Special Verdict Form – Ownership of Inventions on the grounds that the form fails to comply with Fed. R. Civ. P. 49(a)(1), which requires that the jury return, "a special verdict in the form of a special written finding on *each issue of fact*." (emphasis added).  This Court's Order Regarding Pretrial Deadlines dated March 11, 2008 specifically states that the parties are to file "special verdict forms."  See Order Regarding Pretrial Deadlines ¶ 2.  Mattel's proposed "special verdict form" plainly does not meet this requirement.  Instead, Mattel asks the jury to return a general verdict on the question of whether it owns "any of the Bratz works" pursuant to the Inventions Agreement.  The purpose of a special verdict is to concentrate the jury on its fact-finding role.  See Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1031 (9th Cir. 2003) (discussing differences between special verdicts and general verdicts and noting that "special verdicts 'compel the jury to focus exclusively on its fact-finding role'") (quoting Floyd v. Laws, 929 F.2d 1390, 1395 (9th Cir. 1991)).

1   Mattel's verdict form focuses the jury on the ultimate issue of whether owns

2   any of the "Bratz works" while ignoring the factual questions such as: whether the

3   term "inventions" applies to the BRATZ drawings, whether the BRATZ dolls and

4   character art are owned by Mattel even if the original drawings fall under that

5   agreement, whether there was a valid assignment of any copyright interest to Mattel,

6   and other questions of fact set forth in the MGA parties' verdict form.  Instead of

7   taking the jurors through a step-by-step analysis, Mattel's forms offer only one step

8   – they ask when the items were created.  Indeed, the form treats the question of

9   timing as wholly dispositive of ownership, ignoring factual findings required on the

10  affirmative defenses and good faith transfer that would vest ownership in MGA.

11  See Final Pre-Trial Conference Order at 8.

12  In addition, Question 3 reflect Mattel's objectionable expansion of its claims

13  to any "idea, concept, drawing, design or work" created *at [Bryant's] direction"*

14  while he was employed at Mattel.  The April 25, 2008 Order and the Pre-Trial

15  Conference Order only Bryant's own creations <u>only</u>, not those created by anyone

16  else.  <u>See</u> Pre-Trial Conference Order at 4, April 25, 2008 Order at 5.

17  The MGA Parties further object that the wording of Mattel's instruction is

18  completely inappropriate – it essentially directs the jury to categorize as "Bratz-

19  related" drawings that have nothing to do with the actual Bratz dolls.  It decides for

20  the jury that a relationship exists.  Additionally, the use of the term "Bratz-related"

21  is improper, in that it implies to the jury that the Bryant drawings and the BRATZ

22  dolls were substantially similar, rather than having the jury resolve this factual

23  dispute.

24  The Mattel form is at the same time grossly overbroad.  For purposes of

25  Mattel's copyright claim, there are sixteen drawings at issue in this case (those with

26  registered copyrights VA 1-378-648, VA 1-378-649, VA 1-378-650, VA 1-378-651,

27  VA 1-378-652, VA 1-378-653, VA 1-378-654, VA 1-378-655, VA 1-378-656, VA

28  1-378-657, VA 1-378-658, VA 1-378-659, VA 1-378-660, VAu 715-270, VAu 715-

271 and VAu 715-273).  Mattel seeks determinations for over 100 drawings, in addition to certain other objects, as well as the name "Bratz" and the idea for a fashion doll.  Indeed, Mattel even includes the so-called "control drawing" (BRYANT 00278 – Trial Exhibit 05.88) which was stricken from its claim.  <u>See</u> Order Regarding Various Discovery Motions, Applications and Other Matters Upon Which The Court Ruled On May 27, 2008 ¶ 9.  There is no explanation for the expansive list.

# MATTEL'S STATEMENT IN SUPPORT OF QUESTIONS 1-5 RE OWNERSHIP OF INVENTIONS

Mattel incorporates its General Statement as if set forth fully herein.  In addition, defendants' objections to Mattel's proposed form of verdict regarding the ownership of Bratz-related inventions should be overruled.

Defendants object that the verdict form should address additional factual issues, but fail to specify any additional issues that should properly be determined by the jury in connection with this issue.  The additional issues identified by defendants are contrary to the Court's April 25, 2008 Order and/or unnecessary and confusing.  For example, defendants have no basis to ask for jury findings as to whether the term "inventions" applies to the Bratz drawings or whether there was a "valid assignment of any copyright interest."  The Court already ruled as a matter of law that the "original Bratz drawings clearly fall within the scope of the Inventions Agreement" and that the "Inventions Agreement explicitly conveys to Mattel an employee's interest in any copyrights or copyright applications."  *See* April 25, 2008 Order, at 4.  Defendants object that the form "treats the question of timing as wholly dispositive of ownership," but that is exactly the case in light of the Court's prior rulings.  The only issue left for the jury to determine in Phase 1A is the timing of the conception and/or creation of Bratz works—the Court has already found that "Mattel owns 'any Bratz-related "inventions" (including any designs, improvements, ideas, concepts and copyrightable subject matter)' that Carter Bryant 'created during the period of his employment with Mattel.'"  *Id.*; *see also* June 7, 2008 Final Pre-Trial Conference Order for Phase 1 Trial, at 4.  Further, it is not necessary to ask the jury to make any findings on defendants' affirmative defenses because the Court intends to rule on such defenses after trial.  *See* April 25, 2008 Order, at 7-8.  Indeed, any such findings would be erroneous and improper in connection with this proposed form because – contrary to defendants' contentions – none of defendants'

affirmative defenses would somehow "vest ownership in MGA."  Pursuant to the Inventions Agreement, Mattel owns any Bratz works created by Bryant while he was employed by Mattel.

The list of works set forth in Mattel's proposed form also is not overbroad. Mattel is entitled to ask the jury to make findings as to the ownership of <u>all</u> of the works Mattel claims it owns pursuant to Mattel's declaratory relief and conversion claims.  *See* June 7, 2008 Final Pre-Trial Conference Order, at 11 (Claims 4 and 6). Defendants object that the Court struck from the Final Pre-Trial Conference Order one registration number (for the sculpt) and that Mattel has not registered other listed works.  But that is irrelevant.  Mattel owns those works if they were created while Bryant was employed by Mattel, regardless of registration.  And defendants' assumption that those works are irrelevant even for purposes of Mattel's copyright claims is also erroneous.  *See Perfect 10, Inc. v. Amazon.com Inc.*, 487 F.3d 701, 710 n.1 (9th Cir. 2007).

Nor is defendants' objection to the "direct others to create" language in Question 3 valid.  Under the Inventions Agreement, Mattel owns all works conceived or created by Bryant while employed by Mattel whether "alone or jointly by others."  *See* Inventions Agreement, ¶2(a).  Accordingly, Mattel's language is appropriate.

Finally, defendants' objections to the terms "Bratz works" and "Bratz-related" are inexplicable.  Use of the terms "Bratz works" and "Bratz-related" for the works Mattel claims it owns is appropriate.  This is a clear and accurate shorthand for the works that Bryant created and that Mattel claims it owns.  According to defendants, Bryant called his drawings of characters "Bratz" when he pitched them to MGA. His pitch materials list on the cover, "Bratz © 2000."  Defendants have themselves used the term "Bratz property" to describe materials created by Bryant (*see* 2004 Modification of 2000 Agreement at § 3.2 (MGA000429-434).  The phrase "Bratz-related" does not imply anything about whether the original Bratz drawings are

1   "substantially similar" to the Bratz dolls sold by defendants for purposes of Mattel's

2   copyright infringement claims (which will not even be adjudicated in Phase 1A of

3   the trial).  The term merely describes the works at issue for the jury.

MATTEL'S AMENDED DISPUTED PROPOSED VERDICT FORMS

**Intentional Interference with Contractual Relations**

6.     Is MGA Entertainment, Inc. ("MGA") liable to Mattel for intentional interference with contractual relations?

Yes   ____

No    ____

7.     Is Isaac Larian liable to Mattel for intentional interference with contractual relations?

Yes   ____

No    ____

**MGA PARTIES OBJECT TO THIS PROPOSED FORM AS STATED BELOW:**

The MGA Parties object to Mattel's Proposed Special Verdict Form – Intentional Interference with Contractual Relations on the grounds that the form fails to comply with Fed. R. Civ. P. 49(a)(1), which requires that the jury return, "a special verdict in the form of a special written finding on *each issue of fact*." (emphasis added).  This Court's Order Regarding Pretrial Deadlines dated March 11, 2008 specifically states that the parties are to file "special verdict forms."  See Order Regarding Pretrial Deadlines ¶ 2.  Mattel's proposed "special verdict form" plainly does not meet this requirement. Instead, Mattel asks the jury to return a general verdict on the questions of whether MGA and/or Isaac Larian are liable for intentional interference with contractual relations.  The purpose of a special verdict is to concentrate the jury on its fact-finding role.  See Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1031 (9th Cir. 2003) (discussing differences between special verdicts and general verdicts and noting that "special verdicts 'compel the jury to focus exclusively on its fact-finding role'") (quoting Floyd v. Laws, 929 F.2d 1390,

1   1395 (9th Cir. 1991)).  Mattel's verdict form focuses the jury on the ultimate issue

2   of whether MGA and/or Isaac Larian are liable for intentional interference with

3   contractual relations while ignoring the factual questions such as: whether MGA

4   and/or Isaac Larian knew there was a contract between Mattel and Carter Bryant,

5   whether MGA and/or Isaac Larian were certain or substantially certain that they

6   were contracting for something that rightfully belonged to Mattel, whether MGA

7   and/or Isaac Larian approached Carter Bryant, whether MGA and/or Isaac Larian

8   engaged in an additional wrongful act independent of the interference, whether

9   Mattel was harmed and whether MGA's contracting with Carter Bryant was a

10  substantial factor in whatever harm Mattel incurred.  MGA Parties therefore object

11  to the failure to include the factual elements set forth in the MGA Parties' proposed

12  jury verdict forms.  Moreover, Mattel's verdict form fails to provide for factual

13  findings on the affirmative defenses asserted by the MGA Parties.  See Final Pre-

14  Trial Conference Order at 8.  Finally, the form is objectionable to the extent it

15  includes Mattel's claim based on Mattel's alleged rights to BRATZ, which, as the

16  Court already held, is preempted by the Copyright Act.  (See April 25, 2008 Order

17  at 2.)  As such, Mattel's Proposed Special Verdict Form – Intentional Interference

18  with Contractual Relations is inappropriate under Fed. R. Civ. P. 49(a).

19

20

21

22

23

24

25

26

27

28

1
2

## MATTEL'S STATEMENT IN SUPPORT OF QUESTIONS 6-7 RE INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

3

4      Mattel incorporates its General Statement as if set forth fully herein. In

5  addition, defendants' objections that Mattel's proposed form of verdict should

6  address additional factual issues should be overruled.

7      The additional "questions" identified by defendants are both unnecessary,

8  because they are subsumed by the questions Mattel's proposed form poses, and

9  contrary to the Court's April 25, 2008 Order and confusing.  For example,

10 defendants have no basis to ask whether the jury finds that Mattel was harmed by

11 defendants' intentional interference with contractual relations because the Court

12 already ruled that the element of "resulting damage" has been met.  *See* April 25,

13 2008 Order, at 6.  Moreover, it would be erroneous as a matter of law to ask the jury

14 – as defendants suggest – to make findings as to whether defendants were "certain

15 that they were contracting for something that rightfully belonged to Mattel" or

16 "whether [defendants] approached Carter Bryant" because those are not elements of

17 Mattel's intentional interference claim.  The Court also already rejected defendants'

18 erroneous assertion that the jury must find that defendants committed "an additional

19 wrongful act independent of the interference."  *See id.*  Accordingly, as set forth in

20 Mattel's objections to defendant's proposed verdict forms, defendants' proposed

21 findings are erroneous and prejudicial to Mattel.

22     As to the remaining issues, the jury instructions sufficiently inform the jury as

23 to the specific elements that must be satisfied for defendants to be held liable.  There

24 is no need for the jury to make specific findings on every element of a claim—that is

25 obviously encompassed within the determination of liability.  It would also be

26 improper to ask the jury to rule on defendants' affirmative defenses because the

27 Court intends to rule on such defenses after trial.  *See id.* at 7-8.

28

Defendant's objection that the proposed form is objectionable "to the extent it includes Mattel's claim based on [] alleged rights to Bratz, which . . . is preempted by the Copyright Act" is unintelligible.  The form simply asks the jury to determine whether or not defendants are liable to Mattel for intentional interference with contractual relations.  Mattel's intentional interference claim has not been dismissed, so Mattel is of course entitled to a liability finding, regardless of any limitations on the claim.  In any event, defendants appear to misconstrue the Court's prior ruling. The Court's ruling expressly recognized that this claim may be based on "MGA's acts that may be found to have aided and abetted the breach or induced the breach of Bryant's fiduciary duty."  April 25, 2008 Order, at 2.  Bratz works created by Bryant are relevant to this claim to the extent Mattel proves that defendants assisted Bryant in breaching duties he owed to Mattel in connection with those works, e.g., by disclosing Mattel's confidential information and property to a competitor.  In any event, none of this has any bearing on the form of verdict proposed by Mattel, which is proper.

## **Aiding and Abetting Breach of Fiduciary Duty**

8.   Is MGA liable to Mattel for aiding and abetting breach of fiduciary duty?

        Yes   \_\_\_\_

        No    \_\_\_\_

9.   Is Isaac Larian liable to Mattel for aiding and abetting breach of fiduciary duty?

        Yes   \_\_\_\_

        No    \_\_\_\_

## **MGA PARTIES OBJECT TO THIS PROPOSED FORM AS STATED BELOW:**

The MGA Parties object to Mattel's Proposed Special Verdict Form – Aiding and Abetting Breach of Fiduciary Duty on the grounds that the form fails to comply with Fed. R. Civ. P. 49(a)(1), which requires that the jury return, "a special verdict in the form of a special written finding on *each issue of fact*." (emphasis added). This Court's Order Regarding Pretrial Deadlines dated March 11, 2008 specifically states that the parties are to file "special verdict forms."  See Order Regarding Pretrial Deadlines ¶ 2.  Mattel's proposed "special verdict form" plainly does not meet this requirement.  Instead, Mattel asks the jury to return a general verdict on the question of whether MGA and/or Isaac Larian are liable for a aiding and abetting breach of fiduciary duty.  The purpose of a special verdict is to concentrate the jury on its fact-finding role.  See Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1031 (9th Cir. 2003) (discussing differences between special verdicts and general verdicts and noting that "special verdicts 'compel the jury to focus exclusively on its fact-finding role'") (quoting Floyd v. Laws, 929 F.2d 1390, 1395 (9th Cir. 1991)).

1    Mattel's verdict form focuses the jury on the ultimate issue of whether MGA

2   and/or Isaac Larian aided and abetted breach of fiduciary duty while ignoring the

3   factual questions such as: the scope of Bryant's fiduciary duty, whether Bryant

4   breached that duty, whether MGA and/or Isaac Larian knew that Carter Bryant

5   owed a fiduciary duty to Mattel, whether MGA and/or Isaac Larian knew when they

6   contracted with Bryant that he was breaching a fiduciary duty, whether MGA and/or

7   Isaac Larian made a conscious decision to participate in wrongful activity designed

8   to substantially assist Bryant in a breach of fiduciary duty, whether MGA and/or

9   Isaac Larian knowingly provided substantial assistance or encouragement to Bryant

10   while Bryant was employed at Mattel, whether MGA and/or Isaac Larian provided a

11   sufficiently high degree of substantial assistance as compared to their knowledge

12   and/or intent to cause a breach of Bryant's fiduciary duty, and whether the conduct

13   of MGA and/or Isaac Larian in meeting with, negotiating and signing a contract

14   with Bryant was a substantial reason for any harm Mattel incurred.  Moreover,

15   Mattel's verdict form fails to provide for factual findings on the MGA Parties'

16   affirmative defenses.  <u>See</u> Final Pre-Trial Conference Order at 8.  As such, Mattel's

17   Proposed Special Verdict Form – Aiding and Abetting Breach of Fiduciary Duty is

18   inappropriate under Fed. R. Civ. P. 49(a).

19

20

21

22

23

24

25

26

27

28

# MATTEL'S STATEMENT IN SUPPORT OF QUESTIONS 8-9 RE AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

Mattel incorporates its General Statement as if set forth fully herein.  In addition, defendants' objections that Mattel's proposed form of verdict should address additional factual issues should be overruled.

The additional issues identified by defendants are contrary to the Court's April 25, 2008 Order, erroneous as a matter of law and/or unnecessary and confusing.  For example, there is no basis for defendants to ask the jury whether defendants "made a conscious decision to participate in wrongful activity" because that misstates the applicable legal standards.  *See Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1118, 1127 28 (C.D. Cal. 2003); *Casey v. U.S. Bank Nat'l Assn.*, 127 Cal. App. 4th 1138, 1145 (2005) (even ordinary business transactions by bank can constitute substantial assistance).  Similarly, defendants' proposed finding as to whether defendants "provided a sufficiently high degree of substantial assistance as compared to their knowledge and/or intent to cause a breach of Bryant's fiduciary duty" is unintelligible and erroneous as a matter of law (there is no requirement that substantial assistance be of a "sufficiently high degree").

Defendants' proposed findings also misstate Mattel's claim to the extent they purport to limit defendants' actionable conduct to "meeting with, negotiating and signing a contract with Bryant."  Accordingly, as set forth in Mattel's objections to defendant's proposed verdict forms, such proposed findings are erroneous and prejudicial to Mattel.  Finally, it would be improper to ask the jury to rule on defendants' affirmative defenses because the Court intends to rule on such defenses after trial.  *See* April 25, 2008 Order, at 7-8.

As to the remaining issues, the jury instructions sufficiently inform the jury as to the specific elements that must be satisfied for defendants to be held liable.

1  Accordingly, there is no need for the jury to make specific findings on every

2  element of a claim—that is encompassed within the determination of liability.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Aiding and Abetting Breach of the Duty of Loyalty**

10.    Is MGA liable to Mattel for aiding and abetting breach of the duty of loyalty?

Yes   ____

No    ____

11.    Is Isaac Larian liable to Mattel for aiding and abetting breach of the duty of loyalty?

Yes   ____

No    ____

**MGA PARTIES OBJECT TO THIS PROPOSED FORM AS STATED BELOW:**

The MGA Parties object to Mattel's Proposed Special Verdict Form – Aiding and Abetting Breach of the Duty of Loyalty on the grounds that the form fails to comply with Fed. R. Civ. P. 49(a)(1), which requires that the jury return, "a special verdict in the form of a special written finding on *each issue of fact*." (emphasis added). This Court's Order Regarding Pretrial Deadlines dated March 11, 2008 specifically states that the parties are to file "special verdict forms." See Order Regarding Pretrial Deadlines ¶ 2. Mattel's proposed "special verdict form" plainly does not meet this requirement. Instead, Mattel asks the jury to return a general verdict on the question of whether MGA and/or Isaac Larian are liable for aiding and abetting breach of the duty of loyalty. The purpose of a special verdict is to concentrate the jury on its fact-finding role. See Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1031 (9th Cir. 2003) (discussing differences between special verdicts and general verdicts and noting that "special verdicts 'compel the jury to

1  focus exclusively on its fact-finding role'") (quoting <u>Floyd v. Laws</u>, 929 F.2d 1390,

2  1395 (9th Cir. 1991)).

3        Mattel's verdict form focuses the jury on the ultimate issue of whether MGA

4  and/or Isaac Larian aided and abetted breach of the duty of loyalty while ignoring

5  the factual questions such as: whether MGA and/or Isaac Larian knew when the

6  contract with Carter Bryant for the rights to Bratz was signed that Carter Bryant was

7  breaching the duty of loyalty, whether MGA and/or Isaac Larian knew that Carter

8  Bryant did not immediately leave Mattel on signing his contract with MGA, whether

9  MGA and/or Isaac Larian made a conscious decision to participate in wrongful

10  activity designed to substantially assist Bryant in a breach of duty of loyalty,

11  whether MGA and/or Isaac Larian knowingly provided substantial assistance or

12  encouragement to Bryant in his breach of duty of loyalty, whether MGA and/or

13  Isaac Larian provided a sufficiently high degree of substantial assistance as

14  compared to their knowledge and/or intent to cause a breach of the duty of loyalty,

15  and whether MGA and/or Isaac Larian was a substantial reason for any harm Mattel

16  incurred.  Moreover, Mattel's verdict form fails to provide for factual findings on

17  the MGA Parties' affirmative defenses. <u>See</u> Final Pre-Trial Conference Order at 8.

18  As such, Mattel's Proposed Special Verdict Form – Aiding and Abetting Breach of

19  the Duty of Loyalty is inappropriate under Fed. R. Civ. P. 49(a).

20

21

22

23

24

25

26

27

28

# MATTEL'S STATEMENT IN SUPPORT OF QUESTIONS 10-11 RE AIDING AND ABETTING BREACH OF THE DUTY OF LOYALTY

Mattel incorporates its General Statement as if set forth fully herein.  In addition, defendants' objections that Mattel's proposed form of verdict should address additional factual issues should be overruled.  The additional issues identified by defendants are contrary to the Court's April 25, 2008 Order, erroneous as a matter of law and/or unnecessary and confusing.  For example, there is no basis for defendants to ask the jury whether defendants "made a conscious decision to participate in wrongful activity" because that misstates the applicable legal standards.  *See Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1118, 1127 28 (C.D. Cal. 2003); *Casey v. U.S. Bank Nat'l Assn.*, 127 Cal. App. 4th 1138, 1145 (2005) (even ordinary business transactions by bank can constitute substantial assistance).  Similarly, defendants' proposed finding as to whether defendants "provided a sufficiently high degree of substantial assistance as compared to their knowledge and/or intent to cause a breach of the duty of loyalty" is unintelligible and erroneous as a matter of law (there is no requirement that substantial assistance be of a "sufficiently high degree").

Defendants also ask that the jury be asked to make findings that are irrelevant to Mattel's claim, such as "whether [defendants] knew that Carter Bryant did not immediately leave Mattel on signing his contract with MGA."  Indeed, defendants' entire list of proposed findings is confusing and unnecessary because the Court has already found that Bryant did in fact breach his duty of loyalty to Mattel.  *See* April 25, 2008 Order, at 5-6.  Accordingly, as set forth in Mattel's objections to defendant's proposed verdict forms, such proposed findings are erroneous and prejudicial to Mattel.  It would also be improper to ask the jury to rule on defendants' affirmative defenses because the Court intends to rule on such defenses after trial.  *See id.* at 7-8.

1    As to the remaining issues, the jury instructions sufficiently inform the jury as

2  to the specific elements that must be satisfied for defendants to be held liable.

3  Accordingly, there is no need for the jury to make specific findings on every

4  element of a claim—that is encompassed within the determination of liability.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **Conversion**

2    12.    Is MGA liable to Mattel for conversion?

3          Yes   _____

4          No    _____

5

6    13.    Is Isaac Larian liable to Mattel for conversion?

7          Yes   _____

8          No    _____

9

10   14.    Is MGA Entertainment (HK) Limited liable to Mattel for conversion?

11         Yes   _____

12         No    _____

13

14   **MGA PARTIES OBJECT TO THIS PROPOSED FORM AS STATED**

15                          **BELOW:**

16

17        The MGA Parties object to Mattel's Proposed Special Verdict Form –

18   Conversion on the grounds that the form fails to comply with Fed. R. Civ. P.

19   49(a)(1), which requires that the jury return, "a special verdict in the form of a

20   special written finding upon *each issue of fact*." (emphasis added).  This Court's

21   Order Regarding Pretrial Deadlines dated March 11, 2008 specifically states that the

22   parties are to file "special verdict forms."  See Order Regarding Pretrial Deadlines ¶

23   2.  Mattel's proposed "special verdict form" plainly does not meet this requirement.

24   Instead, Mattel asks the jury to return a general verdict on the question of whether

25   MGA, MGA (HK), and/or Isaac Larian are liable for conversion.  The purpose of a

26   special verdict is to concentrate the jury on its fact-finding role.  See Zhang v. Am.

27   Gem Seafoods, Inc., 339 F.3d 1020, 1031 (9th Cir. 2003) (discussing differences

28   between special verdicts and general verdicts and noting that "special verdicts

1   'compel the jury to focus exclusively on its fact-finding role'") (quoting <u>Floyd v.</u>

2   <u>Laws,</u> 929 F.2d 1390, 1395 (9th Cir. 1991)).

3        Mattel's verdict form focuses the jury on the ultimate issue of whether there

4   was conversion while ignoring the factual questions such as: whether Mattel owned

5   the sketches, whether Mattel owned the rights to the doll head, telephones and fax

6   machines, whether Mattel consented to the access to the above-mentioned property,

7   whether Mattel was harmed by the conduct and whether the conduct of MGA, MGA

8   (HK), and/or Isaac Larian was a substantial factor in causing the harm.  Moreover,

9   Mattel's verdict form fails to provide for factual findings on the MGA Parties'

10  affirmative defenses.  <u>See</u> Final Pre-Trial Conference Order at 8.

11       As such, Mattel's Proposed Special Verdict Form – Conversion is

12  inappropriate under Fed. R. Civ. P. 49(a).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S STATEMENT IN SUPPORT OF QUESTIONS 12-14 RE CONVERSION

Mattel incorporates its General Statement as if set forth fully herein. Defendants' objection that Mattel's proposed form ignores factual questions relating to ownership should be dismissed out of hand.  Mattel's proposed form regarding Ownership of Inventions asks the jury to make specific findings of ownership. Defendants' objections that Mattel's proposed form of verdict should address additional factual issues should also be overruled.  The jury instructions sufficiently inform the jury as to the specific elements that must be satisfied for defendants to be held liable.  Accordingly, there is no need for the jury to make specific findings on every element of a claim—that is obviously encompassed within the determination of liability.  Finally, it would be improper to ask the jury to rule on defendants' affirmative defenses because the Court intends to rule on such defenses after trial. *See* April 25, 2008 Order, at 7-8.

**Fraudulent Concealment**

15.    Did defendants fraudulently conceal the bases for Mattel's claim of intentional interference with contract against them until on or after April 27, 2001?

Yes   ____

No    ____

16.    Did defendants fraudulently conceal the bases for Mattel's claim of conversion against them until on or after April 27, 2002?

Yes   ____

No    ____

**MGA PARTIES OBJECT TO THIS PROPOSED FORM AS STATED BELOW:**

The MGA Parties object to Mattel's Proposed Special Verdict Form – Fraudulent Concealment on the grounds that the form fails to comply with Fed. R. Civ. P. 49(a)(1), which requires that the jury return, "a special verdict in the form of a special written finding *upon each issue of fact*." (emphasis added).  This Court's Order Regarding Pretrial Deadlines dated March 11, 2008 specifically states that the parties are to file "special verdict forms."  See Order Regarding Pretrial Deadlines ¶ 2.  The purpose of a special verdict is to concentrate the jury on its fact-finding role. See Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1031 (9th Cir. 2003) (discussing differences between special verdicts and general verdicts and noting that "special verdicts 'compel the jury to focus exclusively on its fact-finding role'") (quoting Floyd v. Laws, 929 F.2d 1390, 1395 (9th Cir. 1991)).  Here, the jury is simply asked whether Defendants fraudulently concealed the bases for Mattel's claims, while ignoring the issue of whether Mattel had actual knowledge of those claims.

1       Under California law, "a suspicion of wrongdoing, coupled with a knowledge

2 of the harm and its cause" is sufficient to end tolling based on fraudulent

3 concealment. <u>Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame

4 Robertson</u>, 96 Cal. App. 4th 884, 890-91 (2002); <u>see also</u> <u>Soliman v. Philip Morris

5 Inc.</u>, 311 F.3d 966, 971-72 (9th Cir. 2002) (plaintiff "need not be aware of the

6 specific 'facts' necessary to establish the claim" in order for a cause of action to

7 accrue. Nor need he be aware of the particular legal theory that will support it. His

8 claim accrues "when, simply put, he at least 'suspects ... that someone has done

9 something wrong' to him."), citing <u>Norgart v. Upjohn Co.</u>, 21 Cal. 4th 383, 397

10 (1999), and <u>Jolly</u>, 44 Cal. 3d at 1110-11; <u>id.</u> at 1110 n.7 (the "wrong" that plaintiff is

11 to be aware of for purposes of the statute of limitations need not be in any technical

12 sense, but rather in accordance with its "lay understanding"); <u>Butler v. San Diego

13 Dist. Attorneys Office</u>, 2007 WL 935711, at *3 (S.D. Cal. Feb. 27, 2007) (in

14 California, "the statute of limitations begins to run when the plaintiff suspects or

15 should suspect that someone has done something wrong to him"). The instruction is

16 also objectionable to the extent it suggests that fraudulent concealment by one

17 defendant would necessarily toll the statute as to another defendant not found

18 culpable in the alleged concealment. <u>See</u> <u>Sanchez v. South Hoover Hospital</u>, 18 Cal.

19 3d 93, 100 ("The rationale for the foregoing rule [of fraudulent concealment] is that

20 the <u>culpable</u> defendant should be estopped from profiting by his own wrong [t]o the

21 extent that it hindered an 'otherwise diligent' plaintiff in discovering his cause of

22 action.") (emphasis added).

23

24

25

26

27

28

## MATTEL'S STATEMENT IN SUPPORT OF QUESTIONS 15-16 RE FRAUDULENT CONCEALMENT

Mattel incorporates its General Statement as if set forth fully herein.  In addition, defendants' objection to this proposed form of verdict should be overruled.  The only remaining statute of limitations issue is fraudulent concealment as to Mattel's claims for intentional interference with contractual relations and conversion.  The form proposed by Mattel accurately asks the jury to determine that issue.  The Court has ruled that the discovery rule does not apply to Mattel's claims for intentional interference with contractual relations and conversion.  Hence, the only remaining question for the jury is whether there was fraudulent concealment and resulting tolling.  To answer this, the jury need only be asked (as proposed by Mattel):  Did defendants fraudulently conceal the bases for Mattel's claim of intentional interference with contract [or conversion] against them?  Defendants' objections that Mattel's proposed form ignores additional factual issues (such as whether Mattel had actual knowledge of the claims) should be overruled.  The jury instructions sufficiently inform the jury as to the specific elements that must be satisfied by Mattel to establish tolling as a result of fraudulent concealment.  Accordingly, there is no need for the jury to make specific findings on every element of this issue—that is encompassed within the determination of fraudulent concealment.

Defendants also fail to offer any authority for the proposition that fraudulent concealment operates to toll the statute of limitations against only the defendant who caused the concealment.  *Sanchez* stands for the uncontroversial proposition that a defendant implicated in concealment cannot benefit by his wrong.  Here, Mattel has alleged—and will prove—that all defendants participated in a scheme to conceal the true origins of Bratz.  Indeed, the Court already ruled that Bryant failed to communicate his inventions to Mattel and "secretly entered into a contract with

1   Mattel's competitor . . . to produce a line of fashion dolls to be marketed in direct

2   competition with Mattel's products."  April 25, 2008 Order, at 6.

3        Defendants' arguments have, however, illustrated one way in which Mattel's

4   proposed form could be simplified.  Defendants contend that "a suspicion of

5   wrongdoing, coupled with a knowledge of the harm and its cause" is sufficient to

6   end the tolling due to defendants' fraudulent concealment.  While that is not correct

7   —"near-actual" notice, rather than "inquiry notice," is the governing standard

8   (*Garamendi v. SDI Vendome SA*, 276 F. Supp. 2d 1030, 1042-3 (C.D. Cal 2003))—

9   the jury cannot find knowledge prior to July 18, 2003 as a matter of law.  The Court

10  has already ruled that "there is no evidence that Mattel had any **knowledge** of any

11  one of the three generic elements of its claims [wrongdoing, causation and harm],

12  and thus no claim accrued, prior to . . . July 18, 2003."  *See* June 2, 2008 Further and

13  Final Order re Statute of Limitations Defense, at 2 (emphasis in original).  Hence,

14  the last clause in Mattel's proposed questions is unnecessary.  The phrase "until on

15  or after April 27, 2001 [or 2002]" should be removed from the forms, and the

16  proposed forms should read:  "Did defendants fraudulently conceal the bases for

17  Mattel's claim of intentional interference with contract [or conversion] against

18  them?"

19

20

21

22

23

24

25

26

27

28

MATTEL'S AMENDED DISPUTED PROPOSED VERDICT FORMS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TAB B**

**<u>SPECIFIC OBJECTIONS AND RESPONSES REGARDING MATTEL'S</u>**

**<u>PROPOSED SPECIAL VERDICT FORM FOR PHASE 1B</u>**

**<u>Copyright Infringement</u>**

1.      Is MGA Entertainment, Inc. ("MGA") liable to Mattel for copyright infringement?

        Yes   ____

        No    ____

2.      Is Isaac Larian liable to Mattel for copyright infringement?

        Yes   ____

        No    ____

3.      Is MGA Entertainment (HK) Limited ("MGA HK") liable to Mattel for copyright infringement?

        Yes   ____

        No    ____

4.      What amount of damages should be awarded to Mattel for the Defendants' copyright infringement?  (Answer all that apply.)

        (a)      Copyright Infringement by MGA

                MGA's Profits      $_____

        (b)      Copyright Infringement by Isaac Larian

                Distributions Larian Received from MGA

                      $_____

1    Value of Larian's Ownership Percentage of Bratz

2    $_____

3

4    (c)    Copyright Infringement by MGA HK

5    MGA HK's Profits    $_____

6

7    **MGA PARTIES OBJECT TO THIS PROPOSED FORM AS STATED**

8    **BELOW:**

9

10   The MGA Parties object to Mattel's Proposed Special Verdict Form –

11   Copyright Infringement on the grounds that the form fails to comply with Fed. R.

12   Civ. P. 49(a)(1), which requires that the jury return, "a special verdict in the form of

13   a special written finding on *each issue of fact*." (emphasis added).  This Court's

14   Order Regarding Pretrial Deadlines dated March 11, 2008 specifically states that the

15   parties are to file "special verdict forms."  See Order Regarding Pretrial Deadlines ¶

16   2.  Mattel's proposed "special verdict form" plainly does not meet this requirement.

17   Instead, Mattel asks the jury to return a general verdict on the question of whether

18   MGA, MGA (HK), and/or Isaac Larian are liable for copyright infringement.  The

19   purpose of a special verdict is to concentrate the jury on its fact-finding role.  See

20   Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1031 (9th Cir. 2003) (discussing

21   differences between special verdicts and general verdicts and noting that "special

22   verdicts 'compel the jury to focus exclusively on its fact-finding role'") (quoting

23   Floyd v. Laws, 929 F.2d 1390, 1395 (9th Cir. 1991)).

24   Mattel's verdict form focuses the jury on the ultimate issue of whether MGA,

25   MGA (HK), and/or Isaac Larian are liable for copyright infringement while ignoring

26   the factual questions such as whether Mattel owns the original BRATZ drawings,

27   and whether the BRATZ character art and dolls infringe on those drawings.  The

28   verdict form also lacks anything approaching a finding on "each issue of fact."  Fed.

R. Civ. P. 49(a)(1).  There are sixteen drawings at issue in this case, and the jury may consider both BRATZ character art and BRATZ dolls.  One question, "Is [] liable to Mattel for copyright infringement?" can hardly produce a factual finding on all of these diverse issues.  Moreover, Mattel's verdict form fails to provide for factual findings on the affirmative defenses asserted by the defendants.  <u>See</u> Final Pre-Trial Conference Order at 8.

Mattel's verdict form also ignores other important factual questions.  First, the proposed form is not at all clear as to which drawing is infringed and whether the drawing is infringed by BRATZ dolls or character art.  Additionally, the proposed form ignores factual questions such as whether Mattel is entitled to anything more than nominal damages, whether Mattel has proven lost gross revenue attributable to the protectable portion of the copyrighted work, whether there are deductible expenses associated with the infringing products and what are the profits attributable to the protectable portion of the infringing product that Mattel has established will fairly and reasonably compensate it for the losses that it has incurred as a consequence of MGA and MGA (HK)'s copyright infringement.  Therefore, MGA Parties object to the failure to include the essential findings as set forth in the MGA Parties proposed jury verdict forms.

As such, Mattel's Proposed Special Verdict Form – Copyright Infringement is inappropriate under Fed. R. Civ. P. 49(a).

## MATTEL'S STATEMENT IN SUPPORT OF QUESTIONS 1-4 RE COPYRIGHT INFRINGEMENT

Mattel incorporates its General Statement as if set forth fully herein.  In addition, defendants' objections that Mattel's proposed form of verdict should address additional factual issues should be overruled.  There is no need for the jury to separately address, in the verdict form, each infringed and infringing work.  Having it do so would require an unwieldy verdict form.  Indeed, even defendants' proposed form simply asks, with a broad brush, whether "Bratz dolls" infringe Mattel's works.  Nor should the infringed works be separated out as defendants suggest.  Defendants' products may infringe more than one of Mattel's works.  *See Castle Rock Entm't v. Carol Publishing Group, Inc*., 150 F.3d 132, 138 (2d Cir. 1998) (holding that a book entitled "Seinfeld Aptitude Test" infringed the plaintiff's copyrights in numerous episodes of "Seinfeld"; "it would elevate form over substance to conclude that *The SAT* 's copying of 643 fragments from 84 individually copyrighted *Seinfeld* episodes is indistinguishable from a case in which a 634-question trivia quiz book poses a few questions from each of 84 unrelated television programs, books, movies, or any combination of creative works that do not constitute a discrete series of works.").

Mattel's proposed jury instructions fully inform the jury as to the specific elements that must be satisfied for defendants to be held liable for copyright infringement.  That is the purpose of jury instructions, not verdict forms.  There is no need for the jury to make specific findings on every element of a claim—that is encompassed within the determination of liability.

Finally, it would be improper to ask the jury to rule on defendants' affirmative defenses because the Court intends to rule on such defenses after trial.  *See* April 25, 2008 Order, at 7-8.

**Intentional Interference With Contractual Relations**

5.      In Phase 1A of this trial, you found that the Defendant(s) [INSERT NAMES] is/are liable to Mattel for intentional interference with contractual relations.  What amount of damages should be awarded to Mattel?


$_____


**MGA PARTIES OBJECT TO THIS PROPOSED FORM AS STATED BELOW:**


The MGA Parties object to Mattel's Proposed Special Verdict Form – Intentional Interference with Contractual Relations on the grounds that the form fails to comply with Fed. R. Civ. P. 49(a)(1), which requires that the jury return, "a special verdict in the form of a special written finding upon *each issue of fact*." (emphasis added).  This Court's Order Regarding Pretrial Deadlines dated March 11, 2008 specifically states that the parties are to file "special verdict forms."  See Order Regarding Pretrial Deadlines ¶ 2.  Mattel's proposed "special verdict form" plainly does not meet this requirement.  Instead, Mattel asks the jury to return a general verdict on the question of Mattel's actual damages for breach of contract by Carter Bryant.  The purpose of a special verdict is to concentrate the jury on its fact-finding role.  See Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1031 (9th Cir. 2003) (discussing differences between special verdicts and general verdicts and noting that "special verdicts 'compel the jury to focus exclusively on its fact-finding role'") (quoting Floyd v. Laws, 929 F.2d 1390, 1395 (9th Cir. 1991)).

Mattel's verdict form focuses the jury on the ultimate issue of question of Mattel's actual damages for intentional interference with contractual relations by MGA and Isaac Larian, while ignoring the factual questions.  The proposed form ignores factual questions such as whether Mattel is entitled to anything more than

1  nominal damages.  As such, Mattel's Proposed Special Verdict Form – Intentional

2  Interference with Contractual Relations is inappropriate under Fed. R. Civ. P. 49(a).

## MATTEL'S STATEMENT IN SUPPORT OF QUESTION 5 RE INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

Mattel incorporates its General Statement as if set forth fully herein.  In addition, defendants' objections that Mattel's proposed form of verdict should address additional factual issues should be overruled.  Defendants' suggestion that the jury should be asked "whether Mattel is entitled to anything more than nominal damages" is argumentative and prejudicial to Mattel.  Mattel's proposed form properly asks the jury "What amount of damages should be awarded to Mattel," leaving it to the jury to make an award it believes to be supported by the evidence and the law as provided in the jury instructions.

**Aiding and Abetting Breach of Fiduciary Duty**

6.      In Phase 1A of this trial, you found that the Defendant(s) [INSERT NAMES] is/are liable to Mattel for aiding and abetting Carter Bryant's breach of fiduciary duty.  What amount of damages should be awarded to Mattel?


$_____


## MGA PARTIES OBJECT TO THIS PROPOSED FORM AS STATED BELOW:


The MGA Parties object to Mattel's Proposed Special Verdict Form – Aiding and Abetting Breach of Fiduciary Duty on the grounds that the form fails to comply with Fed. R. Civ. P. 49(a)(1), which requires that the jury return, "a special verdict in the form of a special written finding upon *each issue of fact*." (emphasis added). This Court's Order Regarding Pretrial Deadlines dated March 11, 2008 specifically states that the parties are to file "special verdict forms."  See Order Regarding Pretrial Deadlines ¶ 2.  Mattel's proposed "special verdict form" plainly does not meet this requirement.  Instead, Mattel asks the jury to return a general verdict on the question of Mattel's actual damages for aiding and abetting breach of fiduciary duty by MGA and Isaac Larian.  The purpose of a special verdict is to concentrate the jury on its fact-finding role.  See Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1031 (9th Cir. 2003) (discussing differences between special verdicts and general verdicts and noting that "special verdicts 'compel the jury to focus exclusively on its fact-finding role'") (quoting Floyd v. Laws, 929 F.2d 1390, 1395 (9th Cir. 1991)).

Mattel's verdict form focuses the jury on the ultimate issue of question of Mattel's actual damages for aiding and abetting breach of fiduciary duty by MGA and Isaac Larian, while ignoring the factual questions. The proposed form ignores

MATTEL'S AMENDED DISPUTED PROPOSED VERDICT FORMS

1   factual questions such as whether Mattel is entitled to anything more than nominal

2   damages. As such, Mattel's Proposed Special Verdict Form – Aiding and Abetting

3   Breach of Fiduciary Duty is inappropriate under Fed. R. Civ. P. 49(a).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S STATEMENT IN SUPPORT OF QUESTION 6 RE AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

Mattel incorporates its General Statement as if set forth fully herein.  In addition, defendants' objections that Mattel's proposed form of verdict should address additional factual issues should be overruled.  Defendants' suggestion that the jury should be asked "whether Mattel is entitled to anything more than nominal damages" is argumentative and prejudicial to Mattel.  Mattel's proposed form properly asks the jury "What amount of damages should be awarded to Mattel," leaving it to the jury to make an award it believes to be supported by the evidence and the law as provided in the jury instructions.

**Aiding and Abetting Breach of the Duty of Loyalty**

7.     In Phase 1A of this trial, you found that the Defendant(s) [INSERT NAMES] is/are liable to Mattel for aiding and abetting Carter Bryant's breach of the duty of loyalty.  What amount of damages should be awarded to Mattel?


$\underline{\hspace{5in}}$

$\text{\$}\underline{\hspace{4in}}$


**MGA PARTIES OBJECT TO THIS PROPOSED FORM AS STATED BELOW:**


The MGA Parties object to Mattel's Proposed Special Verdict Form – Aiding and Abetting Breach of the Duty of Loyalty on the grounds that the form fails to comply with Fed. R. Civ. P. 49(a)(1), which requires that the jury return, "a special verdict in the form of a special written finding on *each issue of fact*." (emphasis added).  This Court's Order Regarding Pretrial Deadlines dated March 11, 2008 specifically states that the parties are to file "special verdict forms."  See Order Regarding Pretrial Deadlines ¶ 2.  Mattel's proposed "special verdict form" plainly does not meet this requirement.  Instead, Mattel asks the jury to return a general verdict on the question of Mattel's actual damages for aiding and abetting breach of the duty of loyalty by MGA and Isaac Larian.  The purpose of a special verdict is to concentrate the jury on its fact-finding role.  See Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1031 (9th Cir. 2003) (discussing differences between special verdicts and general verdicts and noting that "special verdicts 'compel the jury to focus exclusively on its fact-finding role'") (quoting Floyd v. Laws, 929 F.2d 1390, 1395 (9th Cir. 1991)).

Mattel's verdict form focuses the jury on the ultimate issue of question of Mattel's actual damages for aiding and abetting breach of the duty of loyalty by MGA and Isaac Larian, while ignoring the factual questions. The proposed form

1  ignores factual questions such as whether Mattel is entitled to anything more than

2  nominal damages.  As such, Mattel's Proposed Special Verdict Form – Aiding and

3  Abetting Breach of the Duty of Loyalty is inappropriate under Fed. R. Civ. P. 49(a).

# MATTEL'S STATEMENT IN SUPPORT OF QUESTION 7 RE AIDING AND ABETTING BREACH OF THE DUTY OF LOYALTY

Mattel incorporates its General Statement as if set forth fully herein.  In addition, defendants' objections that Mattel's proposed form of verdict should address additional factual issues should be overruled.  Defendants' suggestion that the jury should be asked "whether Mattel is entitled to anything more than nominal damages" is argumentative and prejudicial to Mattel.  Mattel's proposed form properly asks the jury "What amount of damages should be awarded to Mattel," leaving it to the jury to make an award it believes to be supported by the evidence and the law as provided in the jury instructions.

1   <u>**Conversion**</u>

2       8.     In Phase 1A of this trial, you found that the Defendant(s) [INSERT

3   NAMES] is/are liable to Mattel for conversion.  What amount of damages should be

4   awarded to Mattel?

5

6         $_____

7

8   <u>**MGA PARTIES OBJECT TO THIS PROPOSED FORM AS STATED**</u>

9   <u>**BELOW:**</u>

10

11       The MGA Parties object to Mattel's Proposed Special Verdict Form –

12   Conversion to the extent it provides for damages based on conversion of intangible

13   property, such as concepts and ideas, because the Court has already dismissed

14   Mattel's claim for conversion to the extent it is based on conversion of ideas. (<u>See</u>

15   April 25, 2008 Order at 3.)  The form is further objectionable because it does not

16   explain how damages for conversion should be calculated.  For example, it does not

17   refer to or define the concept of fair market value, failing to explain that fair market

18   value is the highest price that a willing buyer would have paid to a willing seller,

19   assuming: (1) That there is no pressure on either one to buy or sell; and (2) That the

20   buyer and seller know all the uses and purposes for which the tangible physical

21   property is reasonably capable of being used. <u>See</u> Judicial Counsel of California

22   Civil Jury Instructions ("CACI") § 2102 (2008) (providing detailed instructions for

23   the proper calculation of damages in conversion actions).  Further, the form fails to

24   require that the jury link the damages to the specific tangible property the jury has

25   found was converted.  As such, Mattel's Proposed Special Verdict Form –

26   Conversion is inappropriate under Fed. R. Civ. P. 49(a).

27

28

## MATTEL'S STATEMENT IN SUPPORT OF QUESTION 8 RE CONVERSION

Mattel incorporates its General Statement as if set forth fully herein.  In addition, defendants' objections that Mattel's proposed form of verdict should address additional factual issues should be overruled.  Defendants' suggestion that the jury should be asked "whether Mattel is entitled to anything more than nominal damages" is argumentative and prejudicial to Mattel.  Mattel's proposed form properly asks the jury "What amount of damages should be awarded to Mattel," leaving it to the jury to make an award it believes to be supported by the evidence and the law as provided in the jury instructions.

Moreover, the jury instructions sufficiently inform the jury of the proper measure of damages for conversion (indeed, Mattel has already proposed the very model instruction cited by defendants in their objection – CACI No. 2102).  Defendants' objection that the proposed form is objectionable "to the extent it provides for damages based on conversion of intangible property . . . because the Court has already dismissed Mattel's claim for conversion to the extent it is based on conversion of ideas" is unintelligible.  The form simply asks the jury what amount of damages should be awarded for conversion, based on the instructions given by the Court.

## **Punitive Damages**

9.    Did MGA Entertainment act with malice, oppression, or fraud?

Yes    ____

No    ____


*If your answer is "yes," then answer Question 10.*

*If your answer is "no," then answer Question 11.*


10.    What amount of punitive damages should be awarded against MGA Entertainment, if any?

$_____


11.    Did Isaac Larian act with malice, oppression, or fraud?

Yes    ____

No    ____


*If your answer is "yes," then answer Question 12.*

*If your answer is "no," then answer Question 13.*


12.    What amount of punitive damages should be awarded against Mr. Larian, if any?

$_____


13.    Did MGA HK act with malice, oppression, or fraud?

Yes    ____

No    ____


*If your answer is "yes," then answer Question 14.*

1

2      14.    What amount of punitive damages should be awarded against MGA

3   HK, if any?

4          $_____

5

6      **<u>MGA PARTIES OBJECT TO THIS PROPOSED FORM AS STATED</u>**

7                      **<u>BELOW:</u>**

8

9      Mattel's Proposed Special Verdict Form – Punitive Damages is

10   objectionable because Mattel lacks any evidentiary basis to submit a verdict form

11   concerning punitive damages. <u>See</u> <u>Barry v. Raskov</u>, 232 Cal. App. 3d 447, 457

12   (1991) (trial court properly refused to instruct jury on punitive damages, as there

13   was not clear and convincing evidence of fraud); <u>see also</u> <u>Jones v. Williams</u>, 297

14   F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or

15   her theory of the case if it is supported by law and has foundation in the

16   evidence").

17

18

19

20

21

22

23

24

25

26

27

28

1
2

# **MATTEL'S STATEMENT IN SUPPORT OF QUESTIONS 9-14 RE**
# **PUNITIVE DAMAGES**

3

4    Mattel incorporates its General Statement as if set forth fully herein.  In
5 addition, defendants' objections to Mattel's proposed form of verdict should be
6 overruled.  Mattel seeks punitive damages against the defendants based on its
7 allegations in this case that defendants acted "with malice, fraud and oppression"
8 and "in conscious disregard of Mattel's rights."  *See* Mattel's Counterclaims, at ¶
9 128.  Defendants have not moved for summary adjudication of Mattel's claims for
10 punitive damages.  It is well settled that "[w]hether or not punitive damages should
11 be awarded and the amount to be awarded are within the discretion of the jury . . .."
12 *Hannon Eng'g, Inc. v. Reim*, 126 Cal. App. 3d 415, 431 (1981).  The jury
13 instructions sufficiently inform the jury as to the specific elements that must be
14 satisfied for an award of punitive damages.

15
16
17
18
19
20
21
22
23
24
25
26
27
28