1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael T. Zeller (Bar No. 196417)
3    (michaelzeller@quinnemanuel.com)
     Jon D. Corey (Bar No. 185066)
4    (joncorey@quinnemanuel.com)
     Timothy L. Alger (Bar No. 160303)
5    (timalger@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017-2543
   Telephone:   (213) 443-3000
7  Facsimile:   (213) 443-3100

8  Attorneys for Mattel, Inc.

9
                    UNITED STATES DISTRICT COURT
10
                   CENTRAL DISTRICT OF CALIFORNIA
11
                          EASTERN DIVISION
12

| CARTER BRYANT, an individual, | CASE NO. CV 04-9049 SGL (RNBx) |
|---|---|
| Plaintiff, | Consolidated with<br>Case No. CV 04-09059<br>Case No. CV 05-02727 |
| vs. | |
| MATTEL, INC., a Delaware corporation, | Hon. Stephen G. Larson |
| Defendant. | **MATTEL, INC.'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS;** |
| AND CONSOLIDATED ACTIONS | **DEFENDANTS' OBJECTIONS THERETO; AND**<br><br>**MATTEL, INC.'S RESPONSES IN SUPPORT THEREOF**<br><br>**Phase 1:**<br><br>Pre-Trial Conference:   May 19, 2008<br>Trial Date:   May 27, 2008 |

1       Mattel, Inc. ("Mattel") hereby submits the following amended disputed jury

2  instructions for Phase 1A and 1B of the trial in this matter.  Mattel's proposed jury

3  instructions for Phase 1A and the objections and responses relating to the same are

4  attached behind Tab A.  Mattel's proposed jury instructions for Phase 1B and the

5  objections and responses relating to the same are attached behind Tab B.  Mattel

6  requests and reserves the right to amend, modify, withdraw and/or supplement the

7  following instructions during the trial in this matter.  Mattel may submit further

8  proposed jury instructions depending upon and based upon rulings issued in

9  connection with any motions *in limine* or other trial motions, and the evidence and

10  theories proffered by the parties during the course of the trial.  *See Fed. R. Civ. P.*

11  51A.

12       In Mattel's initial filing of proposed disputed jury instructions, dated May 5,

13  2008, Mattel proposed several instructions to be read to the jury at the start of the

14  Phase 1A trial.  Because trial has already commenced, Mattel does not include those

15  proposed instructions in this amended filing.  However, Mattel expressly reserves its

16  rights as to such proposed instructions.

17

18  DATED:  June 18, 2008          QUINN EMANUEL URQUHART OLIVER &

19                             HEDGES, LLP

20

21                       By  /s/ Jon D. Corey

22                         Jon D. Corey
                         Attorneys for Mattel, Inc.

23

24

25

26

27

28

# **TABLE OF CONTENTS**

| Number | Title | Source | Page |
|---|---|---|---|
| MSJI No. | OWNERSHIP OF INVENTIONS | | 6 |
| MSJI No.— | OWNERSHIP OF INVINTIONS—PREVIOUS FINDINGS OF THE COURT | | 11 |
| CACI 2201 | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS | CACI No. 2201 | 14 |
| MSJI No.— | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—PREVIOUS FINDINGS OF THE COURT | | 19 |
| MSJI No.— | INTENT OR KNOWLEDGE | CACI 2203; *Silicon Image, Inc. v. Analogix Semiconductor Inc.*, 2007 WL 1455903, *4 (N.D. Cal. May 16, 2007); *Borges v. Home Ins. Co.*, 239 Cal. App. 2d 275, 282-83 (1966); *cf. Sony Computer Entm't America, Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 985 (N.D. Cal. 1999) | 22 |
| MSJI No.— | WILLFUL BLINDNESS | *Sony Computer Entm't America, Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 985 (N.D. Cal. 1999). | 25 |
| MSJI No.— | AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY | *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1118, 1127 28 (C.D. Cal. 2003); *In re First Alliance Mortgage Co.*, 471 F.3d 977, 994 95 (9th Cir. 2006) | 28 |
| MSJI No. | BREACH OF FIDUCIARY DUTY | CACI No. 4102; *Cal. Labor Code* § 2863; *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 414 (2007); *Fowler v. Varian Assocs.*, Inc. 196 Cal. App. 3d 34, 41-42 (1987); *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 296 (1995); *Cal. Labor Code* §§ 2856, 2860, 2863; *cf. Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1161 (9th Cir. 1987). | 34 |
| MSJI No. | BREACH OF THE DUTY OF LOYALTY | CACI No. 4102; *Cal. Labor Code* § 2863; *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 414 (2007); | 41 |

| Number | Title | Source | Page |
|--------|-------|--------|------|
| | | *Fowler v. Varian Assocs.*, Inc., 196 Cal. App. 3d 34, 41-42 (1987); *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 296 (1995); *Cal. Labor Code* §§ 2856, 2860, 2863; *cf. Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1161 (9th Cir. 1987). | |
| MSJI No. — | AIDING AND ABETTING BREACH OF DUTY— PREVIOUS FINDINGS OF THE COURT | | 44 |
| CACI 2100 | CONVERSION— ESSENTIAL FACTUAL ELEMENTS | CACI No. 2100 | 48 |
| MSJI No. — | ADVERSE INFERENCE FROM SPOLIATION | *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991); *Advantacare Health Partners v. Access IV*, 2004 WL 1837997, * 6 (N.D. Cal. 2004); *Glover*, 6 F.3d at 1330; *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 109 (2d Cir. 2001); *Housing Rights Center v. Sterling*, 2005 WL 3320739, *3 (C.D. Cal. 2005); *Rogers v. T.J. Samson Community Hosp.*, 276 F.3d 228, 234 (6th Cir. 2002); *One Beacon Ins. Co. v. Broadcast Development Group, Inc.*, 2005 WL 2077499, *5 (6th Cir. 2005) | 51 |
| MSJI No. — | ADVERSE INFERENCE BASED ON ASSERTION OF PRIVILEGE AGAINST SELF-INCRIMINATION | *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)); *U.S. v. Solano-Godines*, 120 F.3d 957, 962 (9th Cir. 1997) | 61 |
| MSJI No. — | STATUTE OF LIMITATIONS— FRAUDULENT CONCEALMENT | *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1042-3 (C.D. Cal. 2003); *Hynix Semiconductor v. Rambus, Inc.*, 2007 WL 3284060, at *3 (N.D. Cal. Nov. 2, 2007); *Grisham v. Philip Morris U.S.A., Inc.*, Cal.4th, 54 Cal. Rptr. 3d 735, 744 (2007); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994); *April Enterprises, Inc. v. KTTV*, 147 Cal. App.3d 805, 831-32 (1983). | 69 |
| 17.0 | PRELIMINARY INSTRUCTION— COPYRIGHT | 9th Cir. Civ. Jury Instr. 17.0 (2007) | 76 |

| Number | Title | Source | Page |
|--------|-------|--------|------|
| 17.1 | COPYRIGHT—DEFINED (17 U.S.C. § 106) | 9th Cir. Civ. Jury Instr. 17.1 (2007) | 82 |
| 17.4 | COPYRIGHT INFRINGEMENT—OWNERSHIP AND COPYING (17 U.S.C. § 501A–(b)) | 9th Cir. Civ. Jury Instr. 17.4 (2007) | 86 |
| 17.15 | COPYING—ACCESS AND SUBSTANTIAL SIMILARITY | 9th Cir. Civ. Jury Instr. 17.15 (2007) | 90 |
| 17.10 | COPYRIGHT INTERESTS—ASSIGNEE (17 U.S.C. § 201(d)(1)) | 9th Cir. Civ. Jury Instr. 17.10 (2007) | 94 |
| MSJI No. — | COPYRIGHT INFRINGEMENT—SUBSTANTIAL SIMILARITY | *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394, 1398 (9th Cir. 1997); *Shaw v. Lindheim,* 919 F.2d 1353, 1356 57 (9th Cir. 1990); *Jada Toys, Inc. v. Mattel, Inc.,* 1008 WL 450891, *6 (9th Cir. Feb. 21, 2008); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1164, 1166 (9th Cir. 1977); *Newton v. Diamond,* 204 F. Supp. 1244, 1253 (C.D. Cal. 2002); *Stillman v. Leo Burnett Co., Inc.,* 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989); *Coston v. Product Movers,* 1990 WL 56516 at *3 (E.D. Pa., 1990); *Webloyalty.com, Inc. v. Consumer Innovations, LLC,* 2005 WL 468496 at *2 (D. Del. 2005); *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.,* 932 F. Supp. 220, 225 (N.D. Ill 1996); *ADA v. Delta Dental Plans Ass'n,* 1996 U.S. Dist. LEXIS 5809 at *19 n. 15 (N.D. Ill. 1996) | 97 |
| MSJI No. — | SUBSTANTIAL SIMILARITY—THE "INVERSE RATIO RULE" | *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 485 (9th Cir. 2000); *Shaw v. Lindheim,* 919 F.2d 1353, 1361 62 (9th Cir. 1990); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1172 (9th Cir. 1977); *Smith v. Jackson,* 84 F.3d 1213, 1220-21 (9th Cir. 1996) | 106 |
| MSJI No. — | COPYRIGHTABILITY OF CHARACTERS | *Olson v. National Broadcasting Co., Inc.,* 855 F.2d 1446, 1452 (9th Cir. 1988); *Warner Bros. Inc. v. American Broadcasting Companies, Inc.,* 720 F.2d 231, 235 (2d Cir. | 110 |

| Number | Title | Source | Page |
|---|---|---|---|
| | | 1983); *Walt Disney Productions v. Air Pirates*, 581 F.2d 751, 755 (9th Cir. 1978), cert. denied, 439 U.S. 1132 (1979); *Anderson v. Stallone*, 1989 Copr. L. Dec. P 26427, 1989 WL 206431 (C.D. Cal. 1989); *Toho Co., Ltd. v. William Morrow and Co., Inc.*, 33 F. Supp. 2d 1206, 1215 (C.D. Cal. 1998); *Metro-Goldwyn-Mayer, Inc. v. American Honda Motor Co., Inc.*, 900 F. Supp. 1287, 1296 (C.D. Cal. 1995). | |
| MSJI No. — | COPYRIGHT INFRINGEMENT—THREE-DIMENSIONAL WORKS CAN INFRINGE TWO-DIMENSIONAL WORKS | *King Features Syndicate v. Fleischer*, 299 F. 533, 534, 538 (2d Cir. 1924); *Fleischer Studios v. Ralph A. Freundlich, Inc.*, 73 F.2d 276, 278 (2d Cir. 1934) | 118 |
| MSJI No. — | COPYRIGHT INFRINGEMENT—INTERMEDIATE WORKS | *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1518 19 (9th Cir. 1993); *Walker v. Univ. Books, Inc.*, 602 F.2d 859, 864 (9th Cir. 1979); *Walt Disney Prods. v. Filmation Assocs.*, 628 F. Supp. 871, 875 76 (C.D. Cal. 1986) | 122 |
| MSJI No. — | COPYRIGHT INFRINGEMENT—ORIGINALITY | 9th Cir. Civ. Jury Instr. 17.12 (2007); *CDN, Inc. v. Kapes*, 197 F.3d 1256, 1259 60 (9th Cir. 1999); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1163 n.5 (9th Cir. 1977) | 126 |
| MSJI No. — | ORIGINALITY—COMBINATION OF UNPROTECTABLE ELEMENTS | *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135 (2d Cir. 2004); *Dollcraft Indus., Ltd. v. Well-Made Toy Mfg. Co.*, 479 F. Supp. 1105, 1114 15 (E.D.N.Y. 1978); *Fisher-Price Toys v. My-Toy Co.*, 385 F. Supp. 218, 219 20 (S.D.N.Y. 1974); *cf. Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004) | 132 |
| MSJI No. — | PRESUMPTION OF COPYRIGHTABILITY | 17 U.S.C. § 410(c); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1019 (9th Cir. 1985); *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989) | 139 |
| MSJI No. — | COPYRIGHT INFRINGEMENT—INTENT TO INFRINGE NOT NECESSARY FOR LIABILITY | *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978); *L.A. News Serv. v. Conus Communications Co.*, 969 F. Supp. 579, 584 (C.D. Cal. 1997) | 142 |

| Number | Title | Source | Page |
|---|---|---|---|
| 17.13 | COPYRIGHT INTERESTS—DERIVATIVE WORKS (17 U.S.C. §§ 101, 106(2)) | 9th Cir. Civ. Jury Instr. 17.13 (2007) | 145 |
| 17.21 | DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT | 9th Cir. Civ. Jury Instr. 17.21 (2007) | 148 |
| MSJI No. — | COPYRIGHT—AFFIRMATIVE DEFENSE—GOOD FAITH TRANSFER | 17 U.S.C. § 205(d); *Peer Int'l Corp. v. Latin Amer. Music Corp.*, 161 F. Supp. 2d 38, 47-48 (D.P.R. 2001) | 152 |
| 17.22 | COPYRIGHT—DAMAGES (17 U.S.C. § 504) | 9th Cir. Civ. Jury Instr. 17.22 (2007) | 157 |
| 17.24 | COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS (17 U.S.C. § 504(b)) | 9th Cir. Civ. Jury Instr. 17.24 (2007) (modified) | 160 |
| MSJI No. — | COPYRIGHT—DAMAGES—APPORTIONMENT OF PROFITS | 9th Cir. Civ. Jury Instr. 17.24, comments (2007); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1549 (9th Cir. 1989) | 163 |
| MSJI No. — | COPYRIGHT—DAMAGES—INDIRECT PROFITS | 9th Cir. Civ. Jury Instr. 17.24 (2007); *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 710 11, 714 n.10 (9th Cir. 2004) | 167 |
| MSJI No. — | COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT | 9th Cir. Civ. Jury Instr. 17.27 (2007); *Three Boys Music Corp. v. Bolton,* 212 F.3d 477, 487 (9th Cir. 2000); *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.,* 752 F.2d 1326, 1331-32 (9th Cir. 1982); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 53 (2d Cir. 1939); *Saxon v. Blann,* 968 F.2d 676, 681 (8th Cir. 1992); *Jarvis v. A & M Records,* 827 F. Supp. 282, 294 (1993); *Liu v. Price Waterhouse LLP,* 2000 WL 1644585, *6 (N.D. Ill. 2000) | 170 |
| CACI 3901 | INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS | CACI No. 3901 | 175 |
| CACI 3901 | INTRODUCTION TO TORT DAMAGES— | CACI No. 3901 | 179 |

| Number | Title | Source | Page |
|---|---|---|---|
| | LIABILITY ESTABLISHED FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND BREACH OF THE DUTY OF LOYALTY | | |
| CACI 2102 | PRESUMED MEASURE OF DAMAGES FOR CONVERSION | CACI No. 2102 (modified); *Betzer v. Olney,* 14 Cal. App. 2d 53, 61 (1937) | 184 |
| CACI 3947 | PUNITIVE DAMAGES—INDIVIDUAL AND ENTITY DEFENDANTS | CACI No. 3947 | 188 |

## DEFENDANTS' GENERAL OBJECTIONS TO MATTEL'S PROPOSED JURY INSTRUCTIONS

The MGA Parties respectfully submit their objections to Mattel's Proposed Jury Instructions as set forth below. The MGA Parties also object to Mattel's Proposed Jury Instructions in general for omitting any of the jury instructions proposed by the MGA Parties. In particular, the MGA Parties object to the Mattel Instructions because they ignore almost entirely the factual determination that the jury must make regarding the MGA Parties' myriad affirmative defenses. See Final Pre-Trial Conference Order at 8 ("The Court intends to rule upon the MGA parties' equitable affirmative defenses at the close of the Phase 1 trial, but will allow evidence as to these defenses to be presented to the jury.  The Court may have the jury answer special interrogatories as to certain of these equitable defenses so as to establish the requisite factual findings for the Court to rule upon such defenses.")  The jury must be instructed in the defenses in order to make the requisite findings of fact.

In addition, the MGA Parties object to any of the instructions below that fail to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant. The MGA Parties also object to the instructions below to the extent that they fail to include language necessary to assist the jury's understanding of this case and submit that their Proposed Instructions on the matters covered below are the appropriate instructions to provide the jury.

Further, MGA Parties object that Mattel's instructions purportedly based on the Court's rulings on summary judgment incorrectly interpret the issues

1   remaining to be tried, the rulings themselves, and are unduly prejudicial.[1]   The

2   MGA Parties reserve the right to supplement or revise their Proposed Jury

3   Instructions and Proposed Special Verdict Form, their Objections to Mattel's

4   Proposed Jury Instructions and Proposed Verdict Form, and their Responses to

5   Mattel's Objections, in response to any other rulings of the Court.

6            The MGA Parties further object to Mattel's instructions concerning

7   copyright infringement, as Mattel's instructions give no real guidance to the jury,

8   fail to provide the jury with any real understanding of how an infringement analysis

9   is to be performed, and do not address a number of essential issues (in addition to

10  those referred to below), including appropriate explanations of the following:

11  unprotectible elements (see MGA Parties' Proposed Jury Instructions at No. 3C),

12  authorship (id. at No. 4C), originality and registration (id. at No. 5C), factual

13  copying (id. at Nos. 6C & 7C), the standard of "virtual identity" for works only

14  entitled to "thin" protection (id. 9C at 16), independent creation (id. Nos. 7C &

15  11C), and multiple copyright registrations (id. No. 12C).  Additionally, Mattel's

16  instructions do not provide any demonstrative examples to guide the jury's thought

17  process concerning complicated issues involving intellectual property. Indeed,

18  Mattel's jury instructions concerning copyright issues provide yet another example

19  of Mattel's consistent attempts to oversimplify copyright analysis required here. The

20  MGA Parties believe that their proposed instructions more accurately instruct the

21  jury on these and the other copyright issues in the case, and that the MGA Parties'

22  proposed instructions should be used by the Court to instruct the jury.

23

24

25

26   _____

27   [1]   The MGA Parties preserve all their rights with respect to the Summary
     Judgment Orders, including their rights to appeal.

28

## MATTEL'S GENERAL STATEMENT IN SUPPORT OF ITS PROPOSED JURY INSTRUCTIONS

The MGA Parties and Bryant have raised a variety of objections to Mattel's Amended Disputed Proposed Jury Instructions. They are not well taken. The thrust of defendants' objections is that the Court is somehow required to provide the jury with an absurdly large number of defense-slanted instructions such as those defendants have proposed – but this is obviously not required or appropriate.

Instead, for the reasons stated in Mattel's objections to defendants' proposed jury instructions, the Court should provide Mattel's proposed jury instructions to the jury. Mattel's proposed instructions accurately set forth the applicable law, whereas defendants do not. Mattel's proposed instructions are fair to all parties; defendants' instructions are hopelessly slanted toward the defense. Mattel's proposed instructions preserve the jury's role as fact-finder; defendants' proposed instructions consistently prompt the jury to accept, or ask the jury to assume, defendants' version of the facts. Mattel's instructions are clear, easily understood and an appropriate length; defendants' proposed instructions, which are absurdly long and convoluted, are calculated to suggest to the jury that they must spend weeks in deliberations if they are to find for Mattel.

Additionally, many of defendants' objections concerning additional issues they say Mattel's proposed instructions should address are erroneous as a matter of law and/or contrary to the Court's prior rulings in this case, including the April 25, 2008 Order regarding the parties' cross-motions for summary judgment. Defendants continue to raise the very arguments rejected by the Court in that Order and misread that Order. Mattel's proposed instructions conform to the Court's rulings in that and other Orders, which is easily confirmed by review of the Orders.

Defendants' objections that Mattel's proposed instructions do not address their proposed affirmative defenses should also be overruled because the Court already

1    concluded that almost all of defendants' affirmative defenses are equitable, and the

2    Court – not the jury – will rule on them *after* trial.  *See id.* at 7-8.  Even if the Court

3    were to solicit factual findings from the jury on these defenses (which Mattel

4    believes it need not and should not), there is no need for complicated, biased jury

5    instructions regarding the legal elements of equitable defenses, as defendants

6    suggest.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TAB A**

# PHASE 1A JURY INSTRUCTIONS

## (Court Reads and Provides Written Instructions at End of Case)

# MATTEL'S SPECIAL JURY INSTRUCTION NO. ___

## OWNERSHIP OF INVENTIONS

Mattel claims that it owns the rights to all Bratz-related ideas, concepts, drawings, designs, and other works created by Carter Bryant, in whole or in part, while he was employed by Mattel, including Bratz drawings and the idea for the name "Bratz".  To prevail on its claim for ownership, Mattel must show that it is more likely than not that any particular Bratz-related idea, concept, drawing, design or work was created by Mr. Bryant or at his direction while employed by Mattel.  It is for you to decide what, if any, Bratz-related works were created by Mr. Bryant or at Mr. Bryant's direction while employed by Mattel.

You have heard some testimony in this case that Mr. Bryant's Bratz-related work prior to leaving Mattel may or may not have been related to the final Bratz doll that was eventually released to the public in the summer of 2001.  I instruct you that this is immaterial to the matter before you.  The question you must answer is simply when Mr. Bryant created his works, not whether or how those works were used by MGA.

Likewise, what MGA thought or believed as to the timing of Mr. Bryant's creation of his Bratz-related works is immaterial to the question of who owns those works.  That is, Mattel owns all Bratz-related works created by Mr. Bryant in whole or in part while he was employed by Mattel, regardless of when MGA believed such works were created.

1        **Authority**:  April 25, 2008 Order Granting in Part, Denying in Part, and

2   Deferring in Part the Parties' Motions for Partial Summary Judgment, at 4-5; June 7,

3   2008 Final Pre-Trial Conference Order for Phase 1 Trial, at 4.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED
## INSTRUCTION RE OWNERSHIP OF INVENTIONS

To begin with, the MGA Parties object to Mattel's expansion of its claims to any "idea, concept, drawing, design or work" created "at [Bryant's] direction" while he was employed at Mattel. The April 25, 2008 Order and the Pre-Trial Conference Order only Bryant's own creations <u>only</u>, not those created by anyone else. <u>See</u> Pre-Trial Conference Order at 4, April 25, 2008 Order at 5.

The MGA Parties further object that the second paragraph of Mattel's instruction is completely unsupported by either of the sources Mattel cites. Indeed, it is internally inconsistent – it essentially asks the jury to categorize as "Bratz-related" drawings that have nothing to do with the actual Bratz dolls. This sort of inconsistency will only serve to create confusion among the jurors as to what issues they should be considering.

The MGA Parties further object to Mattel's suggestion that the relationship between any works that Bryant created and the Bratz dolls is immaterial because that is in fact a crucial distinction. Mattel's proposed instruction is confusing and misleading. If, in fact, there is no nexus between what Bryant created and the dolls that were ultimately released, then Mattel will be unable to recover anything other than the value at the time, if any, of any drawings Bryant created while employed at Mattel (if any).

Finally, the MGA Parties object to the third paragraph of Mattel's instruction because it states that the question of timing is wholly dispositive of ownership, ignoring the affirmative defenses and good faith transfer that would vest ownership in MGA.

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3    Defendants' objections to this proposed instruction fundamentally misconstrue

4    the nature of the claims being adjudicated in Phase 1A.  Mattel claims it is the

5    rightful owner of numerous Bratz-related works created by Carter Bryant.  The

6    Court has already ruled as a matter of law that "Mattel owns 'any Bratz-related

7    "inventions" (including any designs, improvements, ideas, concepts and

8    copyrightable subject matter)' that Carter Bryant 'created during the period of his

9    employment with Mattel.'"  April 25, 2008 Order, at 4; *see also* June 7, 2008 Final

10   Pre-Trial Conference Order for Phase 1 Trial, at 4.  Defendants are simply wrong

11   that any relationship of these Bratz works to the Bratz dolls ultimately released has

12   anything to do with Mattel's ownership in the first instance.  The proposed

13   instruction is necessary to focus the jury on the relevant issues in light of defendants'

14   attempts to obscure them and conflate issues relevant to Phase 1A with those

15   relevant in Phase 1B.  Indeed, the Court has already observed that an instruction on

16   this issue may be necessary in light of Ms. Garcia's consistent testimony that

17   Bryant's work somehow was not on "Bratz."  *See, e.g.*, Transcript of Proceedings

18   from Afternoon Session of Trial, Day 5 (May 30, 2008), at 945:20-946:22.

19   Defendants' attempt to interject Phase 1B issues (such as whether Mattel could

20   "recover anything" if there were no "nexus" between Bryant's drawings and the

21   dolls) should be rejected.

22   Nor is defendants' objection to the "at Mr. Bryant's direction" language in the

23   proposed instruction valid.  Under the Inventions Agreement, Mattel owns all works

24   conceived or created by Bryant while employed by Mattel whether "alone or jointly

25   by others."  *See* Inventions Agreement, ¶2(a).  Accordingly, Mattel's language is

26   appropriate.

27   Further, defendants' purported objection that the proposed instruction treats

28   "the question of timing as wholly dispositive of ownership" should be overruled.

1  That is exactly the case in light of the Court's prior rulings.  The only issue left for

2  the jury to determine is the timing of the conception and/or creation of the Bratz

3  works at issue.  Moreover, this proposed instruction does not "ignore" any relevant

4  affirmative defense.  Contrary to defendants' contentions – none of defendants'

5  affirmative defenses would somehow "vest ownership in MGA."  Pursuant to the

6  Inventions Agreement, Mattel owns any Bratz works created by Bryant while he

7  was employed by Mattel.  And, in any case, affirmative defenses will not be

8  addressed in Phase 1A, and, thus, jury instructions on them would be improper.

9        Finally, defendants' objection to the term "Bratz-related" drawings is not well

10  taken.  Defendants have themselves used the term "Bratz property" to describe

11  materials created by Bryant (*see* 2004 Modification of 2000 Agreement at § 3.2

12  (MGA000429-434)), and the phrase "Bratz-related" does not imply anything about

13  whether the original Bratz drawings are related to the Bratz dolls.  The term merely

14  describes the works at issue for the jury.  Defendants' attempt to suggest that

15  Bryant's work was not "Bratz-related" is preposterous.

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS

**MATTEL'S SPECIAL JURY INSTRUCTION NO.**

**OWNERSHIP OF INVENTIONS—PREVIOUS FINDINGS OF THE COURT**

The Court has already found as a matter of law that the Employee Confidential Information and Inventions Agreement between Carter Bryant and Mattel is a valid and enforceable contract.  The Court has also found as a matter of law that the term "inventions" used in the Inventions Agreement includes any designs, improvements, ideas, concepts, and copyrightable subject matter.  The Court has found as a matter of law that, to the extent they were created or conceived by Carter Bryant while he was employed by Mattel, the Bratz drawings, designs and ideas created by Mr. Bryant fall within the scope of the Inventions Agreement.

If you find that Mr. Bryant created or conceived any ideas, concepts, drawings, designs, tangible items and/or works related to Bratz while he was employed by Mattel, including any of the Bratz drawings, then Mattel owns all right, title and interest in those ideas, concepts, drawings, designs and/or works pursuant to the Inventions Agreement as a matter of law.

**Authority**:  April 25, 2008 Order Granting in Part, Denying in Part and Deferring in Part the Parties' Motions for Partial Summary Judgment, at 4-5; July 17, 2006 Order Granting Motions to Dismiss, dated July 17, 2006, at 10-14; June 7, 2008 Final Pre-Trial Conference Order for Phase 1 Trial, at 4.

MATTEL'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS

# **DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE OWNERSHIP OF INVENTIONS—PREVIOUS FINDINGS OF THE COURT**

The MGA Parties object to this instruction for two reasons. <u>First</u>, it is unnecessary and highly prejudicial to have a separate instruction entitled "Previous Findings of the Court." Instead, the jury should simply be instructed that certain elements of a claim have been established or where appropriate, the requirement that Mattel prove a particular element should simply be eliminated. <u>Second</u>, this instruction does not accurately reflect the law, as it states that the question of timing is wholly dispositive of ownership, ignoring the affirmative defenses and good faith transfer that would vest ownership in MGA.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

It is both necessary and appropriate to inform the jury of the Court's previous findings in the context of the claims the jury is to consider in Phase 1A of this trial. Mattel's proposed instruction conforms to the Court's April 25, 2008 Order, which is easily confirmed by review of the Order.

Second, defendants' objection that the proposed instruction treats "the question of timing as wholly dispositive of ownership" should be overruled. That is exactly the case in light of the Court's prior rulings. The only issue left for the jury to determine in Phase 1A is the timing of the conception and/or creation of Bratz works—the Court has already found that "Mattel owns 'any Bratz-related "inventions" (including any designs, improvements, ideas, concepts and copyrightable subject matter)' that Carter Bryant 'created during the period of his employment with Mattel.'" *Id.*; *see also* Final Pre-Trial Conference Order for Phase 1 Trial, at 4. Moreover, this proposed instruction does not "ignore" any relevant affirmative defense. Contrary to defendants' contentions, none of defendants' affirmative defenses would somehow "vest ownership in MGA." Pursuant to the Inventions Agreement, Mattel owns any Bratz works created by Bryant while he was employed by Mattel. And, in any case, affirmative defenses will not be addressed in Phase 1A, and, thus, jury instructions on them would be improper.

# CACI 2201

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

Mattel claims that MGA and Isaac Larian intentionally interfered with the contracts between Mattel and Carter Bryant.  To establish this claim, Mattel must prove all of the following:

1.    That there was a contract or contracts between Mattel and Carter Bryant;

2.    That MGA and/or Mr. Larian knew of the contract or contracts;

3.    That MGA and/or Mr. Larian intended to disrupt the performance of this contract or contracts;

4.    That the conduct of MGA and/or Mr. Larian prevented performance or made performance more difficult;

5.    That Mattel was harmed; and

6.    That the conduct of MGA and/or Mr. Larian was a substantial factor in causing Mattel's harm.

**Authority:**  CACI No. 2201.

## DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

The MGA Parties object to this instruction because it does not properly explain to the jury the limitations that have been placed on Mattel's claims.  Specifically, it ignores the fact that the Court granted partial summary judgment for the MGA Parties on this claim "to the extent it is based on Mattel's rights to Bratz", and limited Mattel's claim to "Mattel's claims for breach of fiduciary duty."  Final Pre-Trial Conference Order at 5.   This circumscription is completely ignored in Mattel's instruction, and would leave jurors to believe that the issue of Mattel's rights to Bratz was relevant to this claim.

The preceding instruction is also objectionable to the extent that it omits a required element of a claim for intentional interference with an <u>at-will</u> contract, such as the contract at issue here. That element requires Mattel to prove that Larian and MGA engaged in wrongful conduct <u>independent</u> of "interfering" with Bryant's contracts with Mattel. <u>See</u>  <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140, 1152-53 (2004) ("[T]o recover for a defendant's interference with an at-will employment relation, a plaintiff must plead and prove that the defendant engaged in an independently wrongful act – *i.e.*, an act 'proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard' -- that induced an at-will employee to leave the plaintiff."); <u>see also</u> <u>American Mortg. Network v. LoanCity.com</u>, 2006 WL 3199291, at *15 (Cal. Ct. App. Nov. 7, 2006) (holding that jury instruction that "[a]n employee is subject to liability for the tort of inducing breach of contract/unfair competition if, before or after leaving the employment, the employee uses unlawful or <u>unfair</u> means to cause fellow employees to break their contracts with the employer" was incorrect because "liability for unfair competition/ inducing breach of contract can be based only on <u>unlawful</u> conduct") (emphasis in original) (citations omitted). The preceding

instruction is also objectionable to the extent it includes Mattel's claim for interference with contract based on Mattel's purported rights to the BRATZ, as the Court has already found that it is preempted by the Copyright Act. See April 25, 2008 Order at 2.

In addition, the preceding instruction is objectionable to the extent it does not (1) require Mattel to prove that the underlying contract was a valid and enforceable one, see PMC, Inc. v. Saban Entm't, Inc., 45 Cal. App. 4th 579, 601 (1996); (2) advise the jury that there is no "inducement" and thus no liability where the breaching party initiates contact with the defendant, see, e.g., Bauer v. Interpublic Group of Cos. Inc., 255 F. Supp. 2d 1086, 1093, 1095 (N.D. Cal. 2003); and (3) advise the jury that solicitation and contracting with an at-will employee of a competitor such as Bryant are not wrongful, see, e.g., Troystar Invs., Inc. v. Sabat, 2008 WL 316218, at *4 (Cal. Ct. App. Feb. 6, 2008). Finally, the preceding instruction is objectionable to the extent it suggests that proving all the elements as against either MGA or Larian establishes the liability of both.

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3    Mattel's proposed instruction conforms to the model instruction found in

4    CACI, as required by the Court. *See* Court's Standing Scheduling Order, at 9.

5    Accordingly, defendants' objections to the form of the proposed instruction should

6    be dismissed. Defendants' objection that this instruction does not inform the jury of

7    "limitations" on this claim is misplaced, and defendants appear to misconstrue the

8    Court's prior ruling. The Court's ruling expressly recognized that this claim may be

9    based on "MGA's acts that may be found to have aided and abetted the breach or

10   induced the breach of Bryant's fiduciary duty." April 25, 2008 Order, at 2. Bratz

11   works created by Bryant are relevant to this claim to the extent Mattel proves that

12   defendants assisted Bryant in breaching duties he owed to Mattel in connection with

13   those works. Such issues are separate from Mattel's copyright infringement claim,

14   which will be adjudicated in Phase 1B.

15   The additional issues that defendants claim are missing from the proposed

16   instruction are not elements of a claim for intentional interference with contractual

17   relations and would, in fact, be reversible error if they were presented to the jury as

18   such. For example, defendants have no basis to claim that Mattel must prove that

19   defendants engaged in independent wrongful conduct, which is an element that, by

20   MGA's own admission, is required only when the claim is for intentional

21   interference *with an at-will contract*. Mattel has made no claim that any defendant

22   interfered with Bryant's "at-will" agreement with Mattel. The Inventions Agreement

23   and Conflict of Interest Questionnaire, with which defendants did interfere, are not

24   "at-will" employment contracts – they are just contracts. To require an additional

25   element beyond CACI No. 2201 on the basis of a claim that Mattel has not made

26   would be prejudicial and misleading.

27   Defendants' objection that the proposed instruction should state that Mattel

28   must prove that the contract is "valid and enforceable" should also be overruled.

Case No. CV 04-9049 SGL (RNBx)

1  The proposed instruction explicitly informs the jury that Mattel must prove there
2  was a contract or contracts, and there is no need to add the terms "valid and
3  enforceable" to the model instruction.  In any event, defendants' objection is not well
4  taken because the Court already ruled as a matter of law that the Inventions
5  Agreement is a valid and enforceable contract.  *See* April 25, 2008 Order, at 4-5;
6  Final Pre-Trial Conf. Order, at 4.

7       Moreover, it would be contrary to law to suggest – as defendants request –
8  that liability turns on who made the initial contact as among the wrongdoers, rather
9  than on, as set forth in the model instruction, whether defendants intended to disrupt
10  the performance of the contract and prevented performance or made it more
11  difficult.  *See Plessinger v. Castleman and Haskell*, 838 F. Supp 448, 452 (N.D. Cal.
12  1993) ("[I]ntent can be met by an allegation that the defendant engaged in an
13  intentional act designed to 'disrupt' the plantiff's contractual relationship.... and that
14  disruption includes acts which make the plaintiff's performance under the contract
15  more difficult or burdensome"); *Pacific Gas & Electric Co. v . Bear Stearns & Co.*,
16  50 Cal. 3d 1118, 1126 (1990).  The only case cited by defendants, *Bauer v.*
17  *Interpublic Group of Cos. Inc.*,  255 F. Supp. 2d 1086, 1093, 1095 (N.D. Cal. 2003),
18  does not support the erroneous proposition that there is "no liability where the
19  breaching party initiates contact with the defendant."  In *Bauer*, there was no
20  evidence that any of the defendants had even spoken to the former employee while
21  he was under contract with plaintiff.  That is obviously not the case here.

22       Finally, although Mattel believes that MGA and Larian acted jointly, the
23  proposed instruction properly advises the jury to consider each element for each
24  defendant.

25
26
27
28

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>MATTEL'S SPECIAL JURY INSTRUCTION NO. __</u>
## <u>INTENTIONAL INTERFERENCE WITH CONTRACTUAL</u>
## <u>RELATIONS—PREVIOUS FINDINGS OF THE COURT</u>

The Court has already found as a matter of law that there was a valid contract between Mattel and Mr. Bryant.  The Court has also found that Mr. Bryant directly competed with Mattel by entering into a contract with MGA, Mattel's competitor, to produce a competing product while he was still employed by Mattel.  And, the Court has found that Mattel has been harmed.  Whether the remaining requirements of Mattel's claim for intentional interference with contractual relations have been satisfied or not is for you to decide.

**Authority**:  April 25, 2008 Order Granting in Part, Denying in Part and Deferring in Part the Parties' Motions for Partial Summary Judgment, at 4, 5-7; May 21, 2008 Order, at 9-10.

1
2
3
4

## DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—PREVIOUS FINDINGS OF THE COURT

5   The MGA Parties object to this instruction because it does not properly explain to
6   the jury the limitations that have been placed on Mattel's claims.  Specifically, it
7   ignores the fact that the Court granted partial summary judgment for the MGA
8   Parties on this claim "to the extent it is based on Mattel's rights to Bratz", and
9   limited Mattel's claim to "Mattel's claims for breach of fiduciary duty."  Final Pre-
10  Trial Conference Order at 5.    This circumscription is completely ignored in
11  Mattel's instruction, and would leave jurors to believe that the issue of Mattel's
12  rights to Bratz was relevant to this claim.  The MGA Parties further object that it is
13  unnecessary and highly prejudicial to have a separate instruction entitled "Previous
14  Findings of the Court."  Instead, the jury should simply be instructed that certain
15  elements of a claim have been established or where appropriate, the requirement that
16  Mattel prove a particular element should simply be eliminated.

17
18
19
20
21
22
23
24
25
26
27
28

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3        This proposed instruction informs the jury that the Court already ruled that a

4    valid contract existed between Bryant and Mattel and that Mattel was harmed.  *See*

5    April 25, 2008 Order, at 6.  All that is left for the jury to resolve is whether MGA or

6    Mr. Larian knew about the contract or contracts at issue, whether they intended to

7    induce the breach or disruption of that contract; and whether their conduct prevented

8    performance or made performance more difficult.  It is both necessary and

9    appropriate to inform the jury of the Court's previous findings in the context of the

10   claims the jury is to consider in Phase 1A of this trial.  Mattel's proposed instruction

11   conforms to the Court's April 25, 2008 Order, which is easily confirmed by review

12   of the Order.

13       Defendants' objection that this instruction does not inform the jury of

14   "limitations" on this claim is misplaced, and defendants appear to misconstrue the

15   Court's prior ruling.  The Court's ruling expressly recognized that this claim may be

16   based on "MGA's acts that may be found to have aided and abetted the breach or

17   induced the breach of Bryant's fiduciary duty."  April 25, 2008 Order, at 2.  Bratz

18   works created by Bryant are relevant to this claim to the extent Mattel proves that

19   defendants assisted Bryant in breaching duties he owed to Mattel in connection with

20   those works.  Such issues are separate from Mattel's copyright infringement claim,

21   which will be adjudicated in Phase 1B.

22

23

24

25

26

27

28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. \_\_\_\_

## INTENT OR KNOWLEDGE

In deciding whether MGA or Isaac Larian acted knowingly or intentionally, you may consider whether they knew that a disruption in the performance of a contract or contracts was substantially certain to result from their conduct. Knowledge of a third party's contractual obligations can be inferred from circumstantial evidence, including an intent to conceal or to avoid actual knowledge of the agreement.

**Authority:**  CACI 2203; *Silicon Image, Inc. v. Analogix Semiconductor Inc.*, 2007 WL 1455903, *4 (N.D. Cal. May 16, 2007) (holding that use of licensing agreements which are "common in the industry" created a reasonable inference that defendant, a competitor to plaintiff, "knew that sale of its product to Silicon Image customers violated the Software License Agreement"); *Borges v. Home Ins. Co.*, 239 Cal. App. 2d 275, 282-83 (1966) (reversing grant of summary judgment on interference claim on the ground that circumstantial evidence supported an inference of knowledge of a contractual relationship); *cf. Sony Computer Entm't America, Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 985 (N.D. Cal. 1999) ("'[W]illful blindness' is no defense to a charge of knowing and intentional counterfeiting.  It is *enough* that a [defendant] 'failed to inquire further because he was afraid of what the inquiry would yield.").

## DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE INTENT OR KNOWLEDGE

The preceding instruction is objectionable to the extent it does not advise the jury that there is no intent to interfere where the defendant knows or believes its agreement with a third party will not infringe the rights of the plaintiff. See <u>1-800 Contacts, Inc. v. Steinberg</u>, 107 Cal. App. 4th 568, 586 (2003). Notably, Mattel's reliance on <u>Sony Computer Entm't Am., Inc. v. Gamemasters</u>, 87 F. Supp. 2d 976, 985 (N.D. Cal. 1999), is irrelevant here, given that <u>Sony Computer</u> dealt with the intent element required to prove a claim for trademark counterfeiting under federal law, which has nothing to do with a claim for intentional interference with contract asserted under California law.

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3        Defendants' objections are nothing more than an attempt to argue a purported

4    defense of good faith under the guise of adding an element of the offense.  If

5    defendants wish to present evidence of good faith in an effort to disprove intent,

6    they are free to do so.  But the model instruction makes clear that "substantial

7    certainty" is sufficient to establish intent as a matter of law.  *See* CACI No. 2203

8    ("In deciding whether [name of defendant] acted intentionally, you many  consider

9    whether [he/she/it] knew that a [breach/disruption] was substantially certain to result

10   from [his/her/its] conduct.").

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## WILLFUL BLINDNESS

In deciding whether MGA or Isaac Larian acted knowingly or intentionally, you may consider that a party's willful blindness can be equivalent to knowledge.

**Authority:**  *Sony Computer Entm't America, Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 985 (N.D. Cal. 1999) ("'[W]illful blindness' is no defense to a charge of knowing and *intentional* counterfeiting.  It is enough that a [defendant] 'failed to inquire further because he was afraid of what the inquiry would yield.'").

## DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED
## INSTRUCTION RE WILLFUL BLINDNESS

The preceding instruction is not supported by California law, as Mattel's only authority deals with the intent element required to prove a claim for trademark counterfeiting under federal law, which has nothing to do with a claim for intentional interference with contract asserted under California law. ***Actual*** knowledge, not willful blindness, is required to establish intentional interference with contract. In addition to showing "the defendant's ***knowledge*** of th[e] contract" between the plaintiff and a third party, the plaintiff "must show the defendant's ***knowledge*** that the interference was certain or substantially certain to occur as a result of his or her action." Reeves v. Hanlon 33 Cal. 4th 1140, 1148 (2004) (citing Quelimane Co. v. Stewart Title Guaranty Co., 19 Cal. 4th 26, 56 (1998); see also Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist., 106 Cal. App. 4th 1219, 1239 (2003) (plaintiff must show defendant "knows that the interference is certain or substantially certain to occur as a result of his action. The rule applies, in other words, to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action."); accord Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003) (citing Cope v. Price Waterhouse, 990 F.2d 1256, 1993 WL 102598, at *6 (9th Cir. Apr. 7, 1993) (Unpub. Disp.) (in regards to aiding and abetting liability, "the term 'knows' does not include both actual knowledge and recklessness. When the drafters of the Restatement meant to include recklessness as an element of liability, they did so explicitly")).

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3        Mattel's proposed instruction properly informs the jury that willful blindness

4    can be equivalent to knowledge.  The recognition that intent may be established by

5    circumstantial evidence, and that willful blindness may be considered by the jury in

6    inferring intent, is well established.  *See, e.g.*, *Philip Morris USA Inc. v. Liu*, 489 F.

7    Supp. 2d 1119, 1123 (C.D. Cal. 2007) ("[w]illfulness can be established by evidence

8    of knowing conduct or by evidence that . . . the defendant willfully blinded himself

9    to facts that would put him on notice that he was infringing another's trademarks,

10   having cause to suspect it"); *UMG Recordings, Inc. v. Disco Azteca Distributors,*

11   *Inc.*, 446 F. Supp. 2d 1164, 1173 (E.D. Cal. 2006) ("Willful blindness is knowledge,

12   in copyright law . . . as it is in the law generally . . . [A] deliberate effort to avoid

13   guilty knowledge is all the law requires to establish a guilty state of mind."); *Sony*

14   *Computer Entertainment Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 985 (N.D. Cal.

15   1999); *Hulsey v. Elsinore Parachute Center*, 168 Cal. App. 3d 333, 339 (1985) ("It

16   is well established, in the absence of fraud, overreaching or excusable neglect, that

17   one who signs an instrument may not avoid the impact of its terms on the ground

18   that he failed to read the instrument before signing it."); *Thomas v. Gordon*, 85 Cal.

19   App. 4th 113, 121 (2000) ("We see no reason to encourage willful blindness to the

20   content of documents signed under penalty of perjury by allowing a party to use the

21   excuse of failure to read as a basis for rejecting application of the doctrine of

22   judicial estoppel."); *Decker v. Yorkton Securities, Inc.*, 106 Cal. App. 4th 1315

23   (2003) (adopting willful blindness test as establishing intent); *see also Wyatt v.*

24   *Union Mortgage Co.*, 24 Cal. 3d 773, 785 (1979); *Louis Vuitton SA v. Lee*, 875 F.2d

25   584, 590 (7th Cir. 1989).

26

27

28

**MATTEL'S SPECIAL JURY INSTRUCTION NO. \_\_\_**

**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

**AND DUTY OF LOYALTY**

The plaintiff, Mattel, claims that MGA and MGA's CEO Isaac Larian aided and abetted Carter Bryant's breaches of fiduciary duty and breaches of the duty of loyalty.  To establish that MGA and/or Mr. Larian are liable for aiding and abetting breach of fiduciary duty or breach of the duty of loyalty, Mattel must prove that:

1.      Mr. Bryant's conduct constituted a breach of duty or duties;

2.      MGA and/or Mr. Larian knew that Mr. Bryant's conduct constituted a breach of duty or duties; and

3.      MGA and/or Mr. Larian gave substantial assistance or encouragement to Mr. Bryant to breach his duty or duties.

Financial gain and self-interested profit on the part of MGA or Mr. Larian can corroborate the knowledge and substantial assistance elements of aiding and abetting Mr. Bryant's breach or breaches of any duty owed to Mattel.

**Authority:**  *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1118, 1127-28 (C.D. Cal. 2003); *In re First Alliance Mortgage Co.*, 471 F.3d 977, 994-95 (9th Cir. 2006).

# DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY

The preceding instruction is objectionable to the extent it suggests that proving all the elements as against either MGA or Larian establishes the liability of both.

The instruction is also incomplete, as it fails to specify that actual knowledge on behalf of MGA and Larian of the specific wrong they substantially assisted is required to find them liable for aiding and abetting; moreover, it omits the definition of actual knowledge.  To prevail on an aiding and abetting claim under California law,  the plaintiff must show "*actual knowledge* of the primary violation."  Neilson v. Union Bank of California, N.A.,  290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003) (citing, inter alia, Cope v. Price Waterhouse, 990 F.2d 1256, 1993 WL 102598, at *6 (9th Cir. Apr. 7, 1993) (Unpub. Disp.) ("The Second Restatement of Torts also supports a finding that actual knowledge is the proper standard for a claim of aiding and abetting fraud. … the term 'knows' does not include both actual knowledge and recklessness. When the drafters of the Restatement meant to include recklessness as an element of liability, they did so explicitly"), and Gerard v. Ross, 204 Cal. App. 3d 968, 983 (1988) ("A defendant can be held liable as a cotortfeasor on the basis of acting in concert only if he or she *knew* that a tort had been, or was to be, committed, and acted with the intent of facilitating the commission of that tort")).  See also Resolution Trust Corp. v. Rowe, 1993 WL 183512, at *5 (N.D. Cal. Feb. 8, 1993) ("Under California law, actual knowledge and intent are required to impose aiding and abetting liability."),citing Hashimoto v. Clark, 264 B.R. 585, 598 (D. Ariz. 2001) (under California law, "[t]he requisite degree of knowledge for an aiding and abetting claim is actual knowledge. This means Trustee must come forward with evidence to show that Safrabank knew Clark was breaching a duty owed Sheffield."), and Gerard, 204 Cal. App. 3d at 983.

The instruction also fails to specify that a substantial causal connection between MGA and Larian's conduct and the harm to Mattel is required and that the "substantial assistance" requirement is inversely related to the knowledge factor. See Resolution Trust Corp. v. Rowe,  1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993) (inverse relationship between demonstration of knowledge and substantial assistance); Mendelsohn v. Capital Underwriters, Inc.,  490 F. Supp. 1069, 1084 (N.D. Cal. 1979) (substantial causal connection).

The instruction also is erroneous in its inclusion of language that "[f]inancial gain and self-interested profit on the part of MGA or Mr. Larian can corroborate the knowledge and substantial assistance elements of aiding and abetting", which suggests that this is an additional element of the claim.  In fact, the Neilson court rejected a contention that plaintiffs were required to show that "personal financial gain is an element of aiding and abetting a breach of fiduciary duty" and held that "financial gain  … should not be viewed as an element of the tort."  Neilson, 290 F. Supp. 2d at 1128-29.  Specifically, the Neilson court rejected the exact analysis relied on by Mattel here in citing Heckmann v. Ahmanson, 168 Cal. App. 3d 119, 127 (1985), because "[h]aving reviewed Heckmann carefully, the court concludes that it stands for the unremarkable proposition that one who knows of a fiduciary's breach of duty and substantially assists it is liable as an aider and abettor. The court's reference to 'reaping the benefit,' offhand as it is, cannot be seen as adding an element to the tort."  Neilson, 290 F. Supp. 2d at 1128.  Thus, the Neilson court denied defendants' motion to dismiss based on failure to allege financial gain and instead suggested that financial gain "should not be viewed as an element of the tort, but as evidence of knowledge, substantial assistance, or both."  Id.  In dicta, the Neilson court mused about the potential relevance of evidence of profit and financial gain, but because the court was resolving a motion to dismiss, any such loose

1   language is plainly dicta and not a binding statement of California law.  Moreover,

2   no California court has ever held that financial gain and self-interested profit

3   corroborate knowledge and substantial assistance and, to the extent Neilson can be

4   so read, it should not be followed as it does not reflect current California law.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3        Mattel's proposed instruction accurately sets forth the requirements for aiding

4    and abetting under California law.  Contrary to defendants' suggestion, this

5    instruction does not suggest that the jury may find both MGA and Larian liable if

6    Mattel proves its claim against either.  Mattel asserts liability as to both MGA and

7    MGA's CEO, and this proposed instructions appropriately asks the jury to consider

8    each of their actions.

9        Moreover, defendants' objections that the instruction is "incomplete" because

10   it does not include their erroneous propositions should be overruled.

11   Defendants simply misstate the law for aiding and abetting.  As Mattel's proposed

12   instruction properly states, there are three elements necessary to establish a claim for

13   aiding and abetting breach of fiduciary duty:  that Carter Bryant's conduct

14   constituted a breach of fiduciary duty; that MGA and/or Isaac Larian knew that

15   Bryant's conduct constituted a breach of fiduciary duty; and that MGA and/or Mr.

16   Larian gave substantial assistance or encouragement to Mr. Bryant to breach his

17   fiduciary duty.  *See* Mattel's Proposed Jury Instructions, at 17.  Defendants assert

18   that MGA and Larian must have "had actual knowledge of the specific wrong they

19   substantially assisted."  That is incorrect.  California courts have held that even

20   "ordinary business transactions" can satisfy the substantial assistance element.

21   *Casey v. U.S. Bank Nat'l Assn.*, 127 Cal. App. 4th 1138, 1145 (2005) (ordinary

22   business transactions by bank sufficient to constitute substantial assistance).  Aiding

23   and abetting does not require a defendant to agree to join the wrongful conduct in

24   the way one joins a conspiracy.  Nor does it require "actual knowledge of the

25   specific wrong they substantially assisted."  It is enough that there is knowledge of

26   the acts giving rise to the breach.

27        And defendants' suggestions that the "substantial assistance" requirement is

28   inversely related to the knowledge factor is unsupported by fact and law, and

1   inconsistent with the above-stated rule.  No such instruction is appropriate or

2   necessary on the facts of this case.  The only authority cited by defendants for such

3   an "inverse relationship" rule – *Resolution Trust Corp. v. Rowe*, 1993 WL 183512 at

4   *6 (N.D. Cal. Feb. 8, 1993) – relates to the constitutional requirements of standing.

5        Finally, defendants have no basis to object to the language from *Neilson* that

6   "financial gain and self-interested profit corroborate the elements of aiding and

7   abetting."  *Neilson v. Union Bank of Calif.*, 290 F. Supp. 2d 1101, 1127-28 (C.D.

8   Cal. 2003).  If defendants reap the benefit of participating in a breach of fiduciary

9   duty, they cannot disclaim the burden of liability.  Contrary to Defendants'

10  objections, Mattel's proposed instruction does not purport to make financial gain

11  and self interested profit element of aiding and abetting.  It merely informs the jury

12  that they can "corroborate" the elements of this claim.  Defendants fail to cite a

13  single case supporting their contention that *Neilson* should not be followed because

14  it "does not reflect current California law."

15

16  **Authority:**  *Neilson v. Union Bank of Calif.*, 290 F. Supp. 2d 1101, 1119

17  (C.D. Cal. 2003) (enough if there is knowledge of acts giving rise to breach); *Berg*

18  *& Berg Enter. LLC v. Sherwood Partners, Inc,* 131 Cal. App. 4th 802, 823 n. 10

19  (2005) (aiding and abetting does not require that a defendant agree to join the

20  wrongful conduct); *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119, 127 (1985) (if

21  defendant reaps the benefits of breach of fiduciary duty he cannot disclaim the

22  burden of liability); *Casey v. U.S. Bank Nat'l Assn.*, 127 Cal. App. 4th 1138, 1145

23  (2005) (ordinary business transactions by bank sufficient to constitute substantial

24  assistance); *Daniel Orifice Fitting Co.*, 198 Cal. App. 2d 791, 800 -01 (1962) (full

25  disclosure required of acts taken in preparation for competition); *Sequoia Vacuum*

26  *Sys. v. Stransky,* 229 Cal App. 2d 281, 287 ((1964) (same).  Compare *Resolution*

27  *Trust Corp. v. Rowe*, 1993 WL 183512, at *6 (N.D. Cal. 1993) (dealing with

28  payment of "advance" to secure future employment of at-will employee).

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## BREACH OF FIDUCIARY DUTY

One of the elements of Mattel's claim against the defendants for aiding and abetting breach of fiduciary duty is that Carter Bryant breached his fiduciary duty to Mattel.  To establish that Bryant breached his fiduciary duty, Mattel must prove all of the following:

    1.    That Mr. Bryant owed a fiduciary duty to Mattel;

    2.    That Mr. Bryant failed to act in the best interests of Mattel while he was employed by Mattel;

    3.    That Mattel did not give informed consent to Mr. Bryant's conduct;

    4.    That Mattel was harmed; and

    5.    That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

**Authority:**  CACI No. 4100; *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 417 (2000) (overruled on other grounds); *Cf. Stevens v. Marco*, 147 Cal. App. 2d 357, 372 (1956) ("Confidential and fiduciary relations are, in law, synonymous, and may be said to exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another."); *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1581 (1994) (same); *City Solutions, Inc. v. Clear Channel Communications, Inc.*, 201 F. Supp. 2d 1048, 1050-51 (N.D. Cal. 2002) (noting that a fiduciary duty is created "where a confidence is reposed by one person in the integrity of another, and . . . the party in whom the confidence is reposed . . . voluntarily accepts or assumes to accept the confidence . . ..").

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS

## DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE BREACH OF FIDUCIARY DUTY

The MGA Parties object to this instruction because it provides no basis for the jury to determine the scope of the Bryant's fiduciary duty and therefore no basis for determining whether there was a breach.  <u>See</u> May 21, 2008 Order at 4.

The instruction omits the complete requirements for an "agreed upon" fiduciary duty: (1) that Bryant voluntarily and knowingly expressly agreed to act as a fiduciary for Mattel, to act on its behalf, and to hold Mattel's interests paramount over his own interests;  (2) that Mattel entrusted its property or affairs to Bryant; (3) that Mattel gave Bryant a broad grant of discretion; (4) that Mattel had little ability to monitor Bryant and therefore had to rely upon the truth of his representations;  (5) that Mattel was vulnerable and dependent upon Bryant and that vulnerability was so substantial as to give rise to equitable concerns and create a relationship similar to other legally recognized fiduciary relationships such as that of an attorney/client, trustee/beneficiary, a corporate officer/corporation; and (6) that the employment contract did not preclude the existence of a fiduciary relationship.  <u>City of Hope Nat'l Med. Ctr. v. Genentech, Inc.</u>, ___ Cal. 4th ___, 2008 WL 1820916, at \*\*7-8 (Apr. 24, 2008); <u>see also</u> <u>City Solutions, Inc. v. Clear Channel Commc'ns, Inc.</u>, 201 F. Supp. 2d 1048, 1050 (N.D. Cal. 2002); <u>Kremen v. Cohen</u>, 99 F. Supp. 2d 1168, 1175 (N.D. Cal. 2000); <u>Comm. on Children's Tel., Inc. v. Gen. Foods Corp.</u>, 35 Cal. 3d 197, 222 (1983) (superseded by statute on other grounds); <u>Vai v. Bank of Am.</u>, 56 Cal. 2d 329, 338 (1961); <u>Oakland Raiders v. Nat'l Football League</u>, 131 Cal. App. 4th 621, 632-33 (2005); <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th 409, 417 (2000), <u>overruled on other grounds by</u>, <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140 (2004); <u>Maglica v. Maglica</u>, 66 Cal. App. 4th 442, 448 (1998); <u>Lynch v. Cruttenden & Co.</u>, 18

Cal. App. 4th 802, 809 (1993); <u>Worldvision Enters., Inc. v. Am. Broad. Cos.</u>, 142 Cal. App. 3d 589, 595 (1983).

Indeed, the preceding instruction is further objectionable in that it does not advise the jury at all that it is required to determine the scope of the agreement to act as a fiduciary in order to establish that the fiduciary duty was breached. <u>See</u> Restatement (Third) of Agency § 8.04 (2006); <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 346-47 (1966); <u>Gonsalves v. Hodgson</u>, 38 Cal. 2d 91, 99 (1951); <u>LeMat Corp. v. Am. Basketball Ass'n</u>, 51 Cal. App. 3d 267, 275 (1975). In addition, the instruction is incomplete because it fails to advise the jury that Mattel must show that Bryant engaged in acts of direct competition during the term of his employment. <u>See</u> <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 346 (1966); <u>accord</u> <u>Eckard Brandes, Inc. v. Riley</u>, 338 F.3d 1082, 1086 (9th Cir. 2003); <u>Am. Home Shield, Inc. v. Fidelity Nat'l Home Warranty Co.</u>, 2003 WL 21085278, at *12 (Cal. Ct. App. May 14, 2003); <u>Edenbaum v. Dalton</u>, No. D037255, 2002 WL 31474450, at ** 7-8 (Cal. Ct. App. Nov. 6, 2002); <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs.</u>, Inc., 83 Cal. App. 4th 409, 424-25 (2000), <u>overruled on other grounds by</u>, <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140 (2004); <u>Computer Sciences Corp. v. Ferguson</u>, 74 Cal. Rptr. 86, 92-93 (1968) (unpublished); <u>see also</u> <u>Material Supply Int'l, Inc. v. Sunmatch Indus. Co.</u>, 146 F.3d 983, 993 (D.C. Cir. 1998); <u>Franklin Music Co. v. Am. Broad. Cos.</u>, 616 F.2d 528, 532-33, 537 (3d Cir. 1979); <u>Merger Mgmt. Consulting, Inc. v. Wilde</u>, 920 F. Supp. 219, 233-35 (D. D.C. 1996); <u>T.A. Pelsue Co. v. Grand Enters., Inc.</u>, 782 F. Supp. 1476, 1486 (D. Colo. 1991); <u>Abraham Zion Corp. v. Lebow</u>, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), <u>aff'd</u>, 761 F.2d 93 (2d Cir. 1985); <u>Seward v. Union Pump Co.</u>, 428 F. Supp. 161, 167 (S.D. Tex. 1977); Restatement (Third) of Agency § 8.04 cmt. c.

1  Finally, the instruction is improper because it does not inform the jury that Mattel

2  must prove it was harmed during Bryant's employment and not later by Bryant's

3  subsequent competition with Mattel.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

Mattel's proposed instruction conforms to the model instructions regarding fiduciary duty found in CACI, as required by the Court.  *See* Court's Standing Scheduling Order, at 9.  The proposed instruction correctly states California law, which provides that a fiduciary relationship can be created by the substance of an agreement "where a confidence is reposed by one person in the integrity of another….if he voluntarily accepts or assumes to accept the confidence." *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1581 (1991) (fiduciary relationships arise "whenever trust and confidence is reposed by one person in the integrity of another"); *Carpenter v. United States*, 484 U.S. 19, 27 (1987) (at common law, "even in the absence of a written contract, an employee has a fiduciary obligation to protect confidential information obtained during the course of his employment").

The Court's April 25, 2008 Order confirms that Mattel's proposed instruction properly states the law governing fiduciary duty.  Defendants' strained efforts to avoid application of that law are as unpersuasive here as they were in opposition to Mattel's motion for partial summary judgment on this issue.

Defendants have no basis to argue that the jury should be instructed that Mattel must somehow prove a myriad of "requirements" to show that Bryant had an "agreed upon" fiduciary duty to Mattel.  The Court already ruled as a matter of law that Bryant owed a fiduciary duty to Mattel pursuant to the Inventions Agreement. *See* April 25, 2008 Order, at 5; May 21, 2008 Order re Motion for Reconsideration, at 3.  As recognized by the Court in ruling on Bryant's motion for reconsideration, the California Supreme Court's opinion in *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375 (2008), cited by defendants, does not impact that finding.  *See* May 21, 2008 Order, at 2 (noting that *City of Hope* "addresses whether a fiduciary duty can arise (or fail to arise) by <u>operation of law</u> due to the existence of

1 | confidential contractual relationship" while "[a]t issue in this case is whether the
2 | parties' agreement itself created a fiduciary duty").

3 |     A fiduciary relationship is created by contract when a party explicitly agrees
4 | to act in a fiduciary capacity, regardless of whether the actual words "fiduciary" are
5 | used; it is the substance of the relationship, not the words, that govern. *GAB Bus.*
6 | *Servs., Inc., v. Lindsey & Newsom Claims Servs., Inc.*, 83  Cal. App. 4th 409,  417
7 | (2000), relied upon by defendants, is not to the contrary; in that case, the court,
8 | while addressing fiduciary relationships created by status in the corporate hierarchy,
9 | explicitly recognized that "[a] fiduciary duty is undertaken by agreement when one
10 | person enters into a confidential relationship with another….a confidential
11 | relationship arises 'where a confidence is reposed by one person in the integrity of
12 | another, and…the party in whom the confidence is reposed, …voluntarily accepts or
13 | assumes to accept the confidence.'"  And again, this has already been decided; there
14 | is no reason to revisit those issues with the jury.

15 |     Defendants' additional objections should also be overruled because they are
16 | erroneous as a matter of law and thus misleading.  For example, defendants argue
17 | that the jury should be informed that Mattel must prove that "Bryant engaged in acts
18 | of direct competition during the term of his employment."  That is not the law.
19 | "Direct competition" is not an element of a claim for breach of fiduciary duty, and it
20 | would constitute reversible error to instruct the jury otherwise.  The law is clear that
21 | a fiduciary is required to place his employer's best interests ahead of his own.  Not
22 | only is he prohibited from engaging in any acts against his employer's best interests,
23 | but he is also under an obligation to disclose any acts undertaken in preparation to
24 | compete after his fiduciary relationship has ended.  *See* CACI Nos. 4101, 4102;
25 | *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 30 (2003) ("Inherent in each of these
26 | relationships is the duty of undivided loyalty the fiduciary owes to its beneficiary,
27 | imposing on the fiduciary obligations far more stringent than those required of
28 | ordinary contractors.  As Justice Cardozo observed, 'Many forms of conduct

1   permissible in a workaday world for those acting at arm's length, are forbidden to

2   those bound by fiduciary ties. A trustee is held to something stricter than the morals

3   of the market place. Not honesty alone, but the punctilio of an honor the most

4   sensitive is then the standard of behavior.'") (internal citation omitted); *Sequoia*

5   *Vacuum Systems v. Stransky*, 229 Cal. App. 2d 281, 287 (1964) ("In the absence of

6   an agreement to the contrary, an agent is free to engage in competition with his

7   principal after termination of his employment but he may plan and develop his

8   competitive enterprise during the course of his agency only where the particular

9   activity engaged in is not against the best interests of his principal. . . . the protection

10  of the principal's interest requires a full disclosure of acts undertaken in preparation

11  of entering into competition."). In any event, the Court expressly found that Bryant

12  "directly competed with Mattel by entering into a contract with its competitor to

13  produce a competing produce while still employed by Mattel." April 25, 2008

14  Order, at 5. The Court ruled that Bryant cannot defend his actions as "preparations

15  to compete." *Id.*

16       Finally, defendants' objection that the instruction should "inform the jury that

17  Mattel must prove it was harmed during Bryant's employment" is erroneous and

18  should be overruled. Defendants confuse the issues of breach of fiduciary duty and

19  harm suffered as a result. Mattel is entitled to recover for all harm caused by the

20  breach, even if the harm was caused after Bryant left Mattel. Moreover, Bryant's

21  fiduciary duties to Mattel did not end after he left Mattel – his duty to keep Mattel's

22  confidential information confidential was an ongoing one. *See* Inventions

23  Agreement, ¶ 1(c)  ("I will not disclose or use at any time either during or after my

24  employment with [Mattel] . . ."). Defendants fail to cite any authority to justify their

25  effort to unfairly and erroneously limit Mattel's claim and available damages.

26

27

28

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS

# MATTEL'S SPECIAL JURY INSTRUCTION NO. ___

# BREACH OF THE DUTY OF LOYALTY

One of the elements of Mattel's claim against the defendants for aiding and abetting breach of the duty of loyalty is that Carter Bryant breached his duty of loyalty to Mattel.  To establish that Bryant breached his duty of loyalty, Mattel must prove all of the following:

1.   That Mr. Bryant was Mattel's employee;

2.   That Mr. Bryant knowingly acted against Mattel's interests while he was employed by Mattel;

3.   That Mattel did not give informed consent to Mr. Bryant's conduct;

4.   That Mattel was harmed; and

5.   That Mr. Bryant's conduct was a substantial factor in causing Mattel's harm.

**Authority:**  CACI No. 4102; *Cal. Labor Code* § 2863; *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 414 (2007); *Fowler v. Varian Assocs.*, Inc., 196 Cal. App. 3d 34, 41-42 (1987); *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 296 (1995); *Cal. Labor Code* §§ 2856, 2860, 2863; *cf. Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1161 (9th Cir. 1987).

1  **DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED**
2  **INSTRUCTION RE BREACH OF THE DUTY OF LOYALTY**
3
4  This instruction is objectionable as it does not specify that to establish the breach in
5  question, Mattel must prove that Bryant directly competed with Mattel during the
6  term of his employment with Mattel in connection with his development of the
7  BRATZ sketches.  Further, the instruction fails to explain that Mattel must show it
8  was harmed during Bryant's employment by such direct competition.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Mattel's proposed instruction conforms to the model instruction found in CACI, as required by the Court.  See Court's Standing Scheduling Order, at 9.

Defendants' objection should be overruled because it misstates the law.  As set forth in CACI No. 4102 and Mattel's proposed instruction, the duty of loyalty is breached if Bryant "acted against Mattel's interest" while employed by Mattel; it is not necessary, as defendants wrongly suggest, that he "directly compet[ed] with Mattel."

There is also no basis for defendants' objection that Mattel must prove it was harmed during Bryant's employment.  Defendants confuse the issues of breach of duty and harm suffered as a result.  Although the breach of duty must occur during the term of Bryant's employment, Mattel is entitled to recover for all harm caused by such breach, even if the harm was caused after Bryant left Mattel.  Defendants fail to cite any authority to justify their effort to unfairly and erroneously limit Mattel's claim and available damages.

While its objections lack merit, it is notable that MGA itself refers to Bryant's drawings as "Bratz sketches" in their objection, while objecting when Mattel does the same.

**Authority**: CACI 4102; *Huong Que Inc v. Luu*, 150 Cal. App. 4th 400, 414 (2007); *Fowler v. Varian Assocs. Inc.*, 196 Cal. App. 3d 34, 41-42 (1987); *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 296 (1995); Cal. Labor Code §§ 2856, 2860, 2863.

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___

## AIDING AND ABETTING BREACH OF DUTY—

## PREVIOUS FINDINGS OF THE COURT

The Court has already found as a matter of law that Carter Bryant owed both a fiduciary duty and duty of loyalty to Mattel.  The Court has also found as a matter of law that Mr. Bryant breached his duty of loyalty to Mattel when he secretly entered into a contract with MGA, Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products.

Accordingly, if you find that MGA or Isaac Larian knew that Mr. Bryant's conduct constituted a breach of the duty of loyalty and gave substantial assistance or encouragement to Mr. Bryant to so act, you should find MGA and/or Mr. Larian liable for aiding and abetting Mr. Bryant's breach of the duty of loyalty.

**Authority**:  April 25, 2008 Order Granting in Part, Denying in Part and Deferring in Part the Parties' Motions for Partial Summary Judgment, at 5-6; June 7, 2008 Final Pre-Trial Conference Order for Phase 1 Trial, at 4-5.

# DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE AIDING AND ABETTING BREACH OF DUTY— PREVIOUS FINDINGS OF THE COURT

The instruction is incomplete, as it fails to specify that <u>actual</u> knowledge on behalf of MGA and Larian of the specific wrong they substantially assisted is required to find them liable for aiding and abetting; moreover, it omits the definition of actual knowledge. <u>See</u> <u>Neilson v. Union Bank of Cal., N.A.</u>, 290 F. Supp. 2d 1101, 1118-20 (C.D. Cal. 2003). The preceding instruction is also objectionable to the extent it suggests that proving all the elements as against <u>either</u> MGA <u>or</u> Larian establishes the liability of both. Finally, the instruction fails to specify that a substantial causal connection between MGA and Larian's conduct and the harm to Mattel is required and that the "substantial assistance" requirement is inversely related to the knowledge factor. <u>See</u> <u>Resolution Trust Corp. v. Rowe</u>, 1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993) (inverse relationship between demonstration of knowledge and substantial assistance); <u>Mendelsohn v. Capital Underwriters, Inc.</u>, 490 F. Supp. 1069, 1084 (N.D. Cal. 1979) (substantial causal connection).

In addition, it is unnecessary and highly prejudicial to have a separate instruction entitled "Previous Findings of the Court." Instead, the jury should simply be instructed that certain elements of a claim have been established or where appropriate, the requirement that Mattel prove a particular element should simply be eliminated.

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3    Contrary to defendants' purported objections that it is "unnecessary and highly

4    prejudicial" to have separate instructions regarding the Court's previous findings, it

5    is both necessary and appropriate to inform the jury of the Court's findings in the

6    context of the claims the jury is to consider in Phase 1A of this trial.  Mattel's

7    proposed instructions are clearer and less confusing than defendants' because they

8    inform the jury of the elements of Mattel's claims, in conformance with the

9    appropriate model instructions, and then inform the jury of the relevant findings

10   previously made by the Court.  Mattel's claim is for aiding and abetting breach of

11   the duty of loyalty.  The jury cannot be kept in the dark about the fact that an

12   element of this claim – which has already been decided – is that Bryant in fact

13   breached his duty of loyalty to Mattel.  The jury <u>must</u> know that to intelligently

14   assess whether defendants should be liable for having assisted <u>that breach</u>.  There is

15   no way to "eliminate" the element of breach, as defendants suggest.

16   Defendants' additional objections should be overruled.  Defendants simply

17   misstate the law for aiding and abetting.  As Mattel's proposed instruction properly

18   states, there are three elements necessary to establish a claim for aiding and abetting

19   breach of fiduciary duty:  that Carter Bryant's conduct constituted a breach of

20   fiduciary duty; that MGA and/or Isaac Larian knew that Bryant's conduct

21   constituted a breach of fiduciary duty; and that MGA and/or Mr. Larian gave

22   substantial assistance or encouragement to Mr. Bryant to breach his fiduciary duty.

23   Defendants assert that MGA and Larian must have "had actual knowledge of the

24   specific wrong they substantially assisted."  That is incorrect.  California courts have

25   held that even "ordinary business transactions" can satisfy the substantial assistance

26   element.  *Casey v. U.S. Bank Nat'l Assn.*, 127 Cal. App. 4th 1138, 1145 (2005)

27   (ordinary business transactions by bank sufficient to constitute substantial

28   assistance).  Aiding and abetting does not require a defendant to agree to join the

1   wrongful conduct in the way one joins a conspiracy.  Nor does it require "actual

2   knowledge of the specific wrong they substantially assisted."  It is enough that there

3   is knowledge of the acts giving rise to the breach.

4        In addition, contrary to defendants' suggestion, this instruction does not

5   suggest that the jury may find both MGA and Larian liable if Mattel proves its claim

6   against either.  Mattel asserts liability as to both MGA and MGA's CEO

7        Finally, defendants' suggestions that the "substantial assistance" requirement

8   is inversely related to the knowledge factor is unsupported by fact and law.  No such

9   instruction is appropriate or necessary on the facts of this case.  The only authority

10  cited by defendants for such an "inverse relationship" rule – *Resolution Trust Corp.*

11  *v. Rowe*, 1993 WL 183512 at *6 (N.D. Cal. Feb. 8, 1993) – relates to the

12  constitutional requirements of standing.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CACI 2100**

**CONVERSION—ESSENTIAL FACTUAL ELEMENTS**

Mattel claims that the defendants, MGA, MGA's CEO Isaac Larian and MGA Hong Kong, wrongfully exercised control over Mattel's property, including tangible Bratz works such as Mr. Bryant's drawings.  To establish this claim, Mattel must prove all of the following:

1.     That Mattel was the rightful owner of the property at issue;

2.     That any of the defendants intentionally took possession of such property for a significant period of time;

3.     That Mattel did not consent;

4.     That Mattel was harmed; and

5.     That any one of the defendants' conduct was a substantial factor in causing Mattel's harm.

**Authority:**  CACI No. 2100.

# DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE CONVERSION—ESSENTIAL FACTUAL ELEMENTS

The preceding instruction is objectionable because it does not make clear that Mattel's claim is not based on intangible property.  See April 25, 2008 Order at 3. Mattel's use of the phrase "including tangible Bratz works" suggests that tangible works are just a part of the property Mattel seeks damages for – not the entirety of its claim.  The instruction is objectionable because it does not specify all the property Mattel is claiming the defendants converted.  To avoid juror confusion or error on this issue, Mattel must list precisely what property is at issue in its claim. The instruction is further objectionable to the extent it does not advise the jury that a conversion claim cannot be based upon discarded property. See Ananda Church of Self-Realization v. Mass. Bay Ins. Co., 95 Cal. App. 4th 1273, 1282 (2002).

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Mattel's proposed instruction conforms to the model instruction found in CACI, as required by the Court.  Accordingly, defendants' objection to the form of the proposed instruction should be overruled.

Ironically, defendants protest that Mattel does not "specify" all the converted property in this proposed instruction, and yet object when Mattel <u>does</u> <u>just</u> <u>that</u> in its proposed verdict form.  *See* Mattel's Amended Disputed Proposed Verdict Forms, at 7-8.  Defendants have no valid objection here.  Defendants' objection that the instruction does not advise the jury that Mattel's "conversion claim cannot be based upon discarded property" is irrelevant and should be overruled.  None of the works which Mattel claims it owns are "discarded."

**MATTEL'S SPECIAL JURY INSTRUCTION NO.**

**ADVERSE INFERENCE FROM SPOLIATION**

The plaintiff, Mattel, contends that Carter Bryant and the defendants, including MGA and Isaac Larian, did not take appropriate steps to preserve relevant evidence and destroyed such evidence.  Mr. Bryant and the defendants deny that contention.

If you find that relevant evidence that was within Mr. Bryant's or defendants' control is missing or has been destroyed and that the evidence is missing because of the their bad faith or negligent, unjustified or careless actions or inaction, you may infer that such evidence, if available now, would have been favorable to Mattel and adverse to Mr. Bryant or the defendants.

Mr. Bryant's or the defendants' destruction of evidence was negligent, unjustified or careless if they had notice that the evidence might be relevant to this litigation when they destroyed the evidence or made the evidence unavailable.  A person is under a duty to preserve evidence that he or she knows, or reasonably should know, could be relevant to a case.

**Authority:**  *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993)("[A] trial court also has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior."); *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991) ("Generally, a trier of fact may draw an adverse inference from the destruction of evidence relevant to a case."); *Advantacare Health Partners v. Access IV*, 2004 WL 1837997, * 6 (N.D. Cal. 2004) ("In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it.") (citations omitted). Importantly, "a finding of 'bad faith' is *not* a prerequisite to this corrective

procedure.  *See, e.g.*, *Glover*, 6 F.3d at 1330; *see Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 109 (2d Cir. 2001) (culpable state of mind for an imposition of an adverse inference includes negligence).  A litigant has a freestanding duty "to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request."  *Housing Rights Center v. Sterling*, 2005 WL 3320739, *3 (C.D. Cal. 2005).

An adverse inference jury instruction should be given where "[s]ufficient evidence exists to permit a jury to determine the factual predicate" underlying a claim of spoliation.  *Rogers v. T.J. Samson Community Hosp.*, 276 F.3d 228, 234 (6th Cir. 2002).  "When a genuine question exists as to whether a party's loss or destruction of evidence was negligent (or worse), it is appropriate to defer that question to the jury, by instructing jurors that if they find that the spoliation of evidence was at least negligent, they may infer that the missing evidence would favor the non-spoliating party."  *One Beacon Ins. Co. v. Broadcast Development Group, Inc.*, 2005 WL 2077499, *5 (6th Cir. 2005).

# DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE ADVERSE INFERENCE FROM SPOLIATION

To the extent this instruction has any evidentiary basis, if at all, it should not be limited to the alleged spoliation by the defendants or Bryant only. The instruction should be party-neutral, including any adverse inferences to be drawn from any such spoliation evidence introduced at trial – i.e., it should advise the jury that if any party introduces such spoliation evidence, the jury may assume that the evidence is or would have been favorable to the opposing party and adverse to the alleged spoliator. The preceding instruction is also objectionable to the extent it suggests that proving spoliation by either of the defendants establishes spoliation by all.

Moreover, the giving of an "adverse inference" instruction—and the presentation of related spoliation evidence and argument—to the jury at trial is an "extreme" sanction that may be imposed by the Court only under certain limited circumstances. Zubulake v. UBS Warburg, LLC, 220 F.R.D. 212, 219-20 (S.D.N.Y. 2003) (adverse inference instruction is an "extreme" sanction that should "not be given lightly"); Thompson v. U.S. Dep't of Hous. & Urban Dev., 219 F.R.D. 93, 100 (D. Md. 2003) (describing sanction as "extreme"). Indeed, because the prejudicial impact of such an instruction is so pronounced, numerous courts have cautioned against the use of such instructions in all but the most egregious cases. For example, in Morris v. Union Pac. R.R., 373 F.3d 896, 903 (8th Cir. 2004), the Eight Circuit explained:

> An adverse inference instruction is a powerful tool in a jury trial. When giving such an instruction, a federal judge brands one party as a bad actor, guilty of destroying evidence that it should have retained for use by the jury. It necessarily opens the door to a certain degree of speculation by the jury, which is admonished that it may infer the presence of damaging information in the unknown contents of a [missing document]. … One

distinguished court years ago cautioned against use of an adverse inference instruction like the one given in this case (there, involving an absent witness rather than missing evidence), because "[t]he jury should not be encouraged to base its verdict on what it speculates the absent witness would have testified to, in the absence of some direct evidence."

373 F.3d at 900-01 (reversing jury verdict and remanding case for new trial because adverse inference instruction "should not have been given" and defendant Union Pacific was prejudiced by plaintiff counsel's argument of spoliation to the jury) (citing Felice v. Long Island R.R. Co., 426 F.2d 192, 195 n.2 (2nd Cir. 1970) (Friendly, J.)). Similarly, in Zubulake the district court noted that "[i]n practice, an adverse inference instruction often ends litigation—it is too difficult a hurdle for the spoliator to overcome. The in terrorem effect of an adverse inference is obvious." 220 F.R.D. at 219-20.

Because of the serious danger of prejudice posed by adverse inference instructions, a party claiming spoliation must first demonstrate to the Court: "'(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the party that destroyed the evidence had a sufficiently culpable state of mind; and (3) some evidence suggests that a document or documents relevant to substantiating the claim of the party seeking sanctions would have been included among the destroyed files.'" Housing Rights Ctr. v. Sterling, No. CV. 03-859 DSF, 2005 WL 3320739, at *7 (C.D. Cal. Mar. 2, 2005) (quoting Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 105 (2d Cir. 2002)); see also World Courier v. Barone, 2007 WL 1119196, at *1 (N.D. Cal. Apr. 16, 2007) (noting that federal courts "in California have adopted the Second Circuit's 3-part test" and holding same); AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc., 2006 WL 2308442, at *5 n.6. (E.D. Cal. Aug. 9, 2006) (same).

Additionally, even if spoliation is demonstrated to the Court, "a sanction for destruction of evidence is appropriate only if the destruction prejudiced the opposing party." A. Farber & Partners, Inc. v. Garber, 234 F.R.D. 186, 193-94 (C.D. Cal. 2006); see also Ingham v. U.S., 167 F.3d 1240, 1246 (9th Cir. 1999); Dillon v. Nissan Motor Co., Ltd., 986 F.2d 263, 267 (8th Cir. 1993) ("Before a sanction for destruction of the evidence is appropriate, however, there must also be a finding that the destruction prejudiced the opposing party.").  And even then the Court must determine what type of sanction is appropriate, based upon:  "'(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.'" Hamilton v. Signature Flight Support Corp., 2005 WL 3481423, at *3 (N.D. Cal. Dec. 20, 2005) (quoting Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994)); see also Consolidated Aluminum Corp. v. Alcoa, Inc., 244 F.R.D. 335, 340 (M.D. La. 2006) (adverse inference instruction is "considered drastic" and "courts generally try to avoid imposing them when lesser sanctions are available.").

Until and unless a party satisfies its burden of demonstrating spoliation to the Court, and the Court concludes that some sanction is warranted, the Court should not give an adverse inference instruction based on alleged spoliation to the jury.  See, e.g., Morris, 373 F.3d at 903 (holding that counsel's arguments of spoliation to jury were prejudicial and required a new trial where required predicates for imposition of spoliation sanction were not satisfied); Parkinson v. Guidant Corp., 315 F. Supp. 2d 760, 764 (W.D. Pa. 2004) (granting defendant's motion in limine to exclude spoliation evidence because plaintiff had not sufficiently demonstrated to the court that spoliation had occurred); accord Green v. Baca, 226 F.R.D. 624, 642-43 (C.D. Cal. 2005) (excluding evidence of alleged spoliation under Federal Rule of Evidence 403 because "[t]he court presently

1  has no evidence before it that … defendant destroyed documents that were responsive

2  to plaintiff's document requests").

3

4  "[W]hether the destruction of evidence warrants sanctions is based on factual findings

5  made by the court" following an evidentiary hearing or similar proceeding. Regent Ins.

6  Co. v. Candle Corp. of Am., 2004 WL 2713251, at *2 n.4 (D. Minn. Nov. 24, 2004)

7  (collecting cases); see also Hamilton, 2005 WL 3481423, at *3 ("Courts determinate

8  the proper sanction for destruction of relevant evidence on a case-by-case basis.")

9  (citing Unigard Sec. Ins. Co. v. Lakewood Eng'g. & Mfg. Corp., 982 F.2d 363, 368

10 (9th Cir. 1992)). It is not a decision that is made by courts on the fly, without a full

11 evidentiary record and careful consideration.  Indeed, there are no cases, within or

12 outside the Ninth Circuit, where the court elected to give an adverse inference

13 instruction without a threshold evidentiary finding by the Court that the party's

14 spoliation allegations had merit and was an appropriate issue for the jury to consider.

15 Cf. Regent Ins., 2004 WL 2713251, at *2 n.4 (whether to impose sanctions for

16 spoliation usually determined through a pre-trial evidentiary hearing); see also Morris,

17 373 F.3d at 901, 903 (noting that district court conducted four days of "sanctions

18 hearings" concerning the defendant's alleged destruction of documents); Stevenson v.

19 Union Pac. R.R. Co., 354 F.3d 739, 743 (8th Cir. 2004) (noting that the district court

20 granted plaintiff's motion for sanctions after a three-day evidentiary hearing).

21

22 Here, Mattel has made no effort, much less a successful effort, to justify any

23 evidentiary sanction against the MGA Parties based upon alleged spoliation, much less

24 the extreme sanction of an adverse inference instruction.  Mattel's proposed special jury

25 instruction on "evidence of spoliation" is improper, without appropriate factual or legal

26 support, and if given, would be highly prejudicial.  The Court should reject this

27 proposed special instruction.  See, e.g., Morris, 373 F.3d at 903 (reversing jury verdict

28 and remanding for new trial because trial court's adverse inference instruction was not

warranted); <u>Parkinson</u>, 315 F. Supp. 2d at 764 (denying request for adverse inference because plaintiff had not sufficiently demonstrated to the court that spoliation had occurred); <u>Green</u>, 226 F.R.D. at 642-43; <u>Zubulake</u>, 220 F.R.D. at 219-20.

In addition, to the extent that the alleged spoliation was undertaken by Mr. Bryant, and there is no such evidence, that provides no basis whatsoever to give an adverse inference instruction against the MGA Parties as there is no evidence, nor even argument, that the MGA Parties knew of or directed Mr. Bryant to destroy anything.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Mattel's proposed instruction may be an appropriate instruction regarding spoliation, depending on the evidence admitted at trial.  It simply informs the jury that it *may* infer that spoliated evidence would have been favorable to Mattel and adverse to the defendants.  Mattel has already introduced evidence at trial of Bryant's spoliation of evidence, and intends to introduce evidence of MGA's and Larian's.  Defendants' objection that any instruction regarding spoliation should be "party-neutral" is unwarranted unless defendants have a basis to introduce evidence of spoliation.  They fail to articulate one in their lengthy objection (and the Court has found they have no such basis).

It is well established that "[a] federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover*, 6 F. 3d at 1329.  Such power allows a trial court to exclude evidence of tampered-with evidence, admit the introduction of the circumstances of the destruction of evidence, or permit the jury to draw an adverse inference from the destruction of evidence. *Id.*  No hearing or prior sanctions finding is needed for the Court to issue such a permissive inference instruction. *See Rogers v. T.J. Samson Community Hosp.*, 276 F.3d 228, 234 (6th Cir. 2002) (adverse inference jury instruction should be given where "[s]ufficient evidence exists to permit a jury to determine the factual predicate" underlying a claim of spoliation); *One Beacon Ins. Co.*, 2005 WL 2077499 at *5-*6 (affirming, without evidentiary hearing, permissive spoliation jury instruction that "simply ensured that *if* the jury believed that the fault for destroying the evidence lay at the door [of One Beacon], it was permitted, if it chose, to infer that the missing [evidence supported defendant's case]").

Mattel's proposed instruction is appropriate in that it merely informs the jury that it *may* draw an adverse inference based on spoliation. *See Pace v. Nat'l*

1   *Railroad Passenger Corp.*, 291 F. Supp. 2d 93, 99 (D. Conn. 2003) (denying motion

2   for new trial where "instruction given by this court . . . merely allowed the jury to

3   draw an adverse inference."); *One Beacon Ins. Co.*, 2005 WL 2077499, at *5 (where

4   genuine question exists to whether destruction of evidence was negligent or worse,

5   "it is appropriate to defer that question to the jury, by instructing jurors that *if they*

6   *find* that the spoliation of evidence was at least negligent, *they may infer* that the

7   missing evidence would favor the non-spoliating party") (emphasis added); *Nejo v.*

8   *Tamaroff Buick Honda Isuzu Nissan*, 2004 WL 346036, at *8 (6th Cir. Feb. 23,

9   2004) (instruction that "jury 'may' infer that the missing evidence would have been

10  adverse to the plaintiff 'if' it believes that plaintiff has provided 'no reasonable

11  excuse' for the absence" properly "recognize[s] the existence of a fact issue, and did

12  not foreclose the jury from considering [defendant's] excuse").

13       This case is similar to *One Beacon Ins. Co. v. Broadcast Development Group,*

14  *Inc.*, 2005 WL 2077499, *5 (6th Cir. 2005), in which the Sixth Circuit affirmed the

15  district court's decision to admit spoliation evidence and to provide a corresponding

16  jury instruction.  In *One Beacon*, the court's decision to let the jury decide whether

17  to make an adverse inference as a result of destroyed evidence arose not from a

18  motion for sanctions, but rather, simply from the defendant proposing the

19  instruction.  In rejecting the plaintiff's argument that it was entitled to a new trial,

20  the Sixth Circuit stated the instruction was appropriate because it "simply ensured

21  that *if* the jury believed that the fault for destroying the evidence lay at the door [of

22  One Beacon], it was permitted, if it chose, to infer that the missing [evidence

23  supported defendant's case]." *Id.* at *6 (emphasis added).  That is exactly what

24  Mattel proposes here.  All the parties have or will have the opportunity to present

25  evidence on these issues.  Mattel's proposed instruction, which permits the jury to

26  make an adverse inference if it believes one is warranted, is appropriate and

27  supported by the law.  *See One Beacon*, 2005 WL 2077499, at *5 ("When a genuine

28  question exists as to whether a party's loss or destruction of evidence was negligent

1   (or worse), it is appropriate to defer that question to the jury, by instructing jurors
2   that if they find that the spoliation of evidence was at least negligent, they may infer
3   that the missing evidence would favor the non-spoliating party."); *Rogers*, 276 F.3d
4   at 234 (adverse inference jury instruction should be given where "[s]ufficient
5   evidence exists to permit a jury to determine the factual predicate" underlying a
6   claim of spoliation); *Pace* , 291 F. Supp. 2d at 97 (approving permissive inference
7   spoliation instruction without any prior hearing); *Kelley v. United Airlines, Inc*., 176
8   F.R.D. 422, 428 (D. Mass. 1997) (declining to enter judgment against defendant
9   based on spoliation, and instead determining "at trial [to] permit the plaintiffs to lay
10  the foundation which will entitle them to an instruction on a permissive adverse
11  inference against United without respect to the destruction of the documents.");
12  *Mayes v. Black & Decker (U.S.), Inc*., 931 F. Supp. 80, 84-85 (D.N.H. 1996)
13  (declining to impose dismissal sanction based on spoliation and postponing decision
14  to give instruction:  "whether the lesser sanction of a 'spoliation inference' will be
15  imposed awaits the development of further testimony during the course of the trial"
16  and noting "the adverse inference is permissive, not mandatory. If, for example, the
17  factfinder believes that the [evidence was] destroyed accidentally or for an innocent
18  reason, then the factfinder is free to reject the inference.").
19
20
21
22
23
24
25
26
27
28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## ADVERSE INFERENCE BASED ON ASSERTION OF PRIVILEGE AGAINST SELF-INCRIMINATION

You have heard certain witnesses decline to answer questions on the grounds of their Fifth Amendment privilege against self-incrimination.

The Fifth Amendment of the United States Constitution affords every person the right to decline to answer any questions if he or she believes that the answers may tend to incriminate them.  However, in civil cases, you are permitted, but not required, to draw the inference that the information withheld by these witnesses would have been unfavorable to them and/or favorable to Mattel.

Any inference you may draw should be based upon all the facts and circumstances in this case as you may find them.

**Authority:**  *SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998)  ("Parties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof.") (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976));  *U.S. v. Solano-Godines*, 120 F.3d 957, 962 (9th Cir. 1997) ("In civil proceedings, however, the Fifth Amendment does not forbid fact finders from drawing adverse inferences against a party who refuses to testify.").

## **DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE ADVERSE INFERENCE BASED ON ASSERTION OF PRIVILEGE AGAINST SELF-INCRIMINATION**

To the extent this instruction has any evidentiary basis, if at all, it should not be limited to an adverse inference in Mattel's favor.  The instruction should be party-neutral, including any adverse inferences to be drawn from any such evidence introduced at trial – i.e., it should advise the jury that if any <u>party</u> asserts this privilege, the jury may assume that the evidence is or would have been favorable to the opposing party and adverse to the party refusing to answer.

More importantly, Mattel's proposed instruction ignores a fundamental limitation on drawing adverse inferences in civil cases: the inference is only permissible where independent corroborating evidence supports it.

> The [<u>Baxter v. Palmigiano</u>, 425 U.S. 308 (1976)] holding is not a blanket rule that allows adverse inferences to be drawn from invocations of the privilege against self-incrimination under all circumstances in the civil context.  Rather, lower courts interpreting <u>Baxter</u> have been uniform in suggesting that the key to the <u>Baxter</u> holding is that such adverse inference can only be drawn <u>when independent evidence exists of the fact to which the party refuses to answer.</u>  Thus, an adverse inference can be drawn when silence is countered by independent evidence of the fact being questioned, but that same inference cannot be drawn when, for example, silence is the answer to an allegation contained in a complaint.  In such

instances, when there is no corroborating evidence to support the fact under inquiry, the proponent of the fact must come forward with evidence to support the allegation, otherwise no negative inference will be permitted.

Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1264 (9th Cir. 2000) (internal citations omitted).

To date, no party witness has invoked the Fifth Amendment, it has been invoked only by a non-party witness – and since retracted and substantive testimony given in its place. However, as applied to non-party witnesses, Mattel's instruction is even more problematic. The silence of a non-party witness does not automatically support an inference for or against a party, but rather only supports an inference that the answer would be adverse to the witness him or herself. See Aptix Corp. v. Quickturn Design Sys., Inc., 269 F.3d 1369, 1374 (Fed. Cir. 2001) ("Moreover, after Dr. Mohsen invoked his Fifth Amendment privilege and refused to testify about the forgery, disappearance, and reappearance of the notebooks, the trial court was free to make adverse inferences against him." (emphasis added)). While the Ninth Circuit has not addressed the issue at length, other Circuits require an analysis of the relationship between the witness and the party against whom an inference is sought before an inference is permitted. See, e.g., Banks v. Yokemick, 144 F. Supp. 2d 272, 289 (S.D.N.Y. 2001) (collecting cases, noting that "[t]he courts in these cases have declined to enunciate a blanket rule governing the drawing of adverse inferences from a non-party witness' invocation of the privilege against self-incrimination, preferring instead a case-by-case approach," but that the Second Circuit suggested "several non-exclusive factors: (1) the nature of the relevant relationships, identified by the court as invariably ... the most significant circumstance; (2) the degree of control of the party over the non-party witness; (3) the

compatibility of the interests of the party and non-party witness in the outcome of the limitation; and (4) the role of the non-party witness in the litigation.") (internal quotations and citations omitted).  None of these conditions are described in Mattel's instruction – instead, they are simply ignored.  Indeed, Mattel's Ninth Circuit cases do not even address the issue, as they involved parties' refusal to testify.  See S.E.C. v. Colello, 139 F.3d 674, 677 (9th Cir. 1998) (individual asserting privilege was a nominal defendant from whom disgorgement of funds was sought); United States v. Solano-Godines, 120 F.3d 957, 962 (9th Cir. 1997) (individual asserting privilege was a defendant in a deportation proceeding).

Here, the only witnesses to invoke the Fifth Amendment were non-parties and invoked the Fifth Amendment for reasons having nothing to do with the MGA Parties and the invocation was done without the knowledge or consent or direction of the MGA Parties.  Moreover, even in the one instance where the Fifth Amendment was invoked during discovery by a non-party witness who ultimately testified at trial, that witness later withdrew the invocation of the Fifth Amendment and gave substantive testimony so there is no reason for this instruction even to be given as the non-party witness did not invoke the Fifth Amendment in front of the jury.

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3       Mattel's proposed instruction may be an appropriate instruction regarding the

4    assertion of the privilege against self-incrimination in the civil context, depending

5    on the evidence admitted at trial.  It simply informs the jury that it *may* draw an

6    inference that the information withheld would have been unfavorable to them and/or

7    favorable to Mattel.  Defendants' objections that the proposed instruction is

8    improper because certain witnesses may have retracted invocation of their Fifth

9    Amendment rights or given testimony in this case are premature and are not a reason

10   to reject the proposed instruction at this stage.  The necessity of giving this

11   instruction to the jury will obviously depend upon the testimony and evidence

12   presented at trial.  However, Mattel's proposed instruction comports with the law.

13   *See SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998)  ("Parties are free to invoke

14   the Fifth Amendment in civil cases, but the court is equally free to draw adverse

15   inferences from their failure of proof.") (citing *Baxter v. Palmigiano*, 425 U.S. 308,

16   318 (1976));  *U.S. v. Solano-Godines*, 120 F.3d 957, 962 (9th Cir. 1997) ("In civil

17   proceedings, however, the Fifth Amendment does not forbid fact finders from

18   drawing adverse inferences against a party who refuses to testify.").

19       There is no basis for defendants' request that the proposed instruction be

20   party-neutral – the only individuals who asserted the Fifth Amendment privilege

21   against self-incrimination in this case are individuals who were paid millions by

22   MGA for work on Bratz and the independent contractors who were sample-makers

23   making Bratz fashions while employed by Mattel.

24       Defendants ask the Court not to give Mattel's proposed instruction because an

25   instruction regarding the adverse inference is permissible only when the instruction

26   is supported by "independent corroborating evidence," relying on *Doe ex rel. Rudy-

27   Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000).  *Glanzer* has no

28   application here.  In *Glanzer*, the claimant asked for an adverse inference—based on

1    a single question about whether the defendant took a particular test—that the

2    defendant took the test, took and failed other tests, and  assaulted a child.  The court

3    concluded that one question, absent corroborating evidence, does not support that

4    tenuous inference.

5        In contrast to *Glazner*, Mattel has reams of evidence corroborating the

6    conduct of those who have invoked the Fifth Amendment in this case.  For example,

7    Mattel has specific evidence that Ms. Cabrera and Ms. Morales (two witnesses who

8    have invoked their Fifth Amendment rights) used false names and social security

9    numbers for their work on Bratz, and that they did so to hide from Mattel their work

10   on Bratz while Mattel employees.  After Veronica Marlow disclosed on December

11   28, 2007 that Cabrera and Morales were working on Bratz, Mattel interviewed each

12   of these employees.  The interviews were taped, and the tape later used to make a

13   transcript.  At the interview of Cabrera, she stated that she had learned she was

14   working on Bratz in 2003.  When she learned that, she at first told Marlow she did

15   not want to work for her anymore, and then she decided to continue to work on

16   Bratz but asked to be paid in cash, and in the name and social security number of her

17   sister-in-law so she would not lose her job.[2]  Similarly, when Morales was

18   interviewed, she acknowledged using the name and social security number of her

19   husband, and acknowledged that she began doing so soon after she discovered she

20   was working on Bratz.[3]

21       At Morales' deposition, she admitted that Veronica Marlow had been

22   attempting to hide her and Cabrera's names from Mattel.  "She was trying to hide

23

24

25       [2]   Transcript of the Interview of Ana Cabrera dated January 2, 2008 at 118:3-

26   119:23.

27       [3]   Transcript of the Interview of Beatriz Morales dated January 14, 2008 at

     115:2-20.

28

1  [our names] so Mattel wouldn't realize that we were from Mattel and we were

2  helping her."[4]

3          On April 24 and 25, 2008, Veronica Marlow produced the documents

4  establishing this conduct.  These documents showed work done and payment

5  received by Rosalba Cabrera (Ms. Cabrera's sister-in-law), and Gonzalo Morales

6  (Beatriz Morales' husband), even though neither had ever done any work for

7  Marlow.  They include false tax forms, such as W-9 and 1099 forms,[5] handwritten

8  time sheets purporting to have been filled in by these individuals,[6] and payment

9  receipts signed by Cabrera and Morales under these false names and social security

10 numbers.[7]

11         In addition, Peter Marlow, Veronica Marlow's business manager, repeatedly

12 invoked the Fifth Amendment when asked about such documents and statements by

13 Morales or Cabrera or efforts to conceal from Mattel their work on Bratz while

14 Mattel employees.  This corroborating evidence – which Mattel need not prove

15 before it is entitled to an instruction on this point – is more than sufficient to support

16 the proposed instruction regarding the adverse inference.  Accordingly, with respect

17 to issues on which these witnesses asserted their Fifth Amendment rights (including

18 concealment of information from Mattel and work done for defendants and/or on

19 Bratz), there is enough independent evidence to support an adverse inference—

20 including defendants' concealment of the true origins of Bratz and what the Court

21 recognized as Bryant's failure to communicate Bratz to Mattel and that he "secretly

22

---

23  [4]   Transcript of the Deposition of Beatriz Morales, dated April 28, 2008, at 44:18-20.

24  [5]   E.g., documents produced at Bates numbers KMW-M 009458, KMW-M 008689, and KMW-M 009462.

25  [6]   E.g., documents produced at Bates numbers KMW-M 009714 and KMW-M 009715.

26

27  [7]   E.g., documents produced at Bates numbers KMW-M 009836 and KMW-M 009837.

28

1   entered into a contract with Mattel's competitor . . . to produce a line of fashion dolls

2   to be marketed in direct competition with Mattel's products (April 25, 2008 Order, at

3   6).

4        Finally, the cases cited by defendants in support of their contention that the

5   proposed instruction should require an analysis of the relationship between the

6   witness and the party are not binding or persuasive.  In any event, as set forth above,

7   the witnesses at issue in this case are all affiliated with defendants—accordingly, it

8   is appropriate even under defendants' cases to draw inferences in favor of Mattel

9   based on party-affiliated assertions of Fifth Amendment privilege.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___

2

## STATUTE OF LIMITATIONS—FRAUDULENT CONCEALMENT

3

4       Mattel claims that defendants fraudulently concealed the facts underlying

5   Mattel's claims of intentional interference with contract and conversion.  Defendants

6   deny these allegations.

7       To prove fraudulent concealment, Mattel must show that the defendants

8   intentionally concealed the facts that could have led Mattel to discover that Carter

9   Bryant created Bratz works while employed by Mattel or that Mr. Bryant entered

10  into a contract with and worked with MGA while he was still employed by Mattel.

11  Mattel must also show that it did not obtain knowledge of the concealed information

12  until April 27, 2001 or later as to the conversion claim, or until April 27, 2002 or

13  later as to the intentional interference with contract claim.

14      I instruct you, as a matter of law, that Mattel did not obtain knowledge of the

15  facts giving rise to its claims in this case until July 18, 2003 or later.  Accordingly, if

16  you find that defendants intentionally concealed the facts that could have led Mattel

17  to discover that Carter Bryant created Bratz works while employed by Mattel or that

18  Mr. Bryant entered into a contract with and worked with MGA while he was still

19  employed by Mattel, you should find for Mattel on its allegations of fraudulent

20  concealment.

21

22      **Authority:**  *Garamendi v. SDI Vendome S.A.*, 276 F. Supp. 2d 1030, 1042-3

23  (C.D. Cal. 2003); *Hynix Semiconductor v. Rambus, Inc.*, 2007 WL 3284060, at *3

24  (N.D. Cal. Nov. 2, 2007) (tolling based on fraudulent concealment ends when the

25  plaintiff has "a suspicion of wrongdoing, coupled with a knowledge of the harm and

26  its cause"); *Grisham v. Philip Morris U.S.A., Inc.*, _ Cal.4th _, 54 Cal. Rptr. 3d 735,

27  744 (2007) ("[a] defendant's fraud in concealing a cause of action against him will

28  toll the statute of limitations."); *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926,

1   931 (1994) (reversing summary judgment on statute of limitations grounds where

2   "defendant's fraud in concealing a cause of action against him tolls the applicable

3   statute of limitations"); *April Enterprises, Inc. v. KTTV*, 147 Cal. App.3d 805, 831-

4   32 (1983).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE STATUTE OF LIMITATIONS—FRAUDULENT CONCEALMENT

The MGA Parties object to this instruction on the grounds that it is internally inconsistent and confusing, and will lead the jury to believe that there is in fact no issue to be decided with regard to fraudulent concealment.  Mattel in one sentence asks the jury to consider whether it had knowledge in 2001 or 2002 and then in the next sentence tells the jury that the Court has already found as a matter of law that Mattel did not have that knowledge until July 2003.

To the extent there is any evidentiary basis for the preceding instruction, it is objectionable in that it asserts that tolling based on fraudulent concealment ends only once Mattel obtained knowledge of specific "concealed information." Under California law, "a suspicion of wrongdoing, coupled with a knowledge of the harm and its cause" is sufficient to end tolling based on fraudulent concealment. Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 890-91 (2002); see also Soliman v. Philip Morris Inc., 311 F.3d 966, 971-72 (9th Cir. 2002) (plaintiff "need not be aware of the specific 'facts' necessary to establish the claim" in order for a cause of action to accrue. Nor need he be aware of the particular legal theory that will support it. His claim accrues "when, simply put, he at least 'suspects ... that someone has done something wrong' to him."), citing Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999), and Jolly, 44 Cal. 3d at 1110-11; id. at 1110 n.7 (the "wrong" that plaintiff is to be aware of for purposes of the statute of limitations need not be in any technical sense, but rather in accordance with its "lay understanding"); Butler v. San Diego Dist. Attorneys Office, 2007 WL 935711, at *3 (S.D. Cal. Feb. 27, 2007) (in California, "the statute of limitations begins to run when the plaintiff suspects or should suspect that someone has done

1   something wrong to him"). The instruction is also objectionable to the extent it

2   suggests that fraudulent concealment by one defendant would necessarily toll the

3   statute as to another defendant not found culpable in the alleged concealment. See

4   Sanchez v. South Hoover Hospital, 18 Cal. 3d 93, 100 ("The rationale for the

5   foregoing rule [of fraudulent concealment] is that the culpable defendant should be

6   estopped from profiting by his own wrong [t]o the extent that it hindered an

7   'otherwise diligent' plaintiff in discovering his cause of action.") (emphasis added).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3    Mattel's proposed instruction conforms to the Court's prior rulings regarding

4    statute of limitations issues.  The Court has already ruled that all of Mattel's claims

5    subject to the discovery rule are timely.  With respect to Mattel's claims for

6    intentional interference with contractual relations and conversion, the only

7    remaining question for the jury is whether there was fraudulent concealment and

8    resulting tolling.  This proposed instruction properly focuses the jury on the relevant

9    issues, informing the jury that Mattel must prove that defendants intentionally

10   concealed the relevant facts and that Mattel did not became aware of that concealed

11   information until April 27, 2001 (for the conversion claim) or April 27, 2002 (for

12   the intentional interference claim) (the change is due to varying limitations periods

13   for the two claims).

14   That said, defendants' objections have suggested one way in which this

15   proposed instruction could be simplified.  Defendants contend that "a suspicion of

16   wrongdoing, coupled with a knowledge of the harm and its cause" ends the tolling

17   due to defendants' fraudulent concealment.  While that is not correct —"near-actual"

18   notice, rather than "inquiry notice," is the governing standard (*Garamendi v. SDI*

19   *Vendome SA*, 276 F. Supp. 2d 1030, 1042-3 (C.D. Cal 2003))—  the jury cannot find

20   that Mattel obtained "knowledge" of either the harm or its cause prior to July 18,

21   2003 as a matter of law because the Court has already ruled that Mattel lacked such

22   knowledge, holding that "there is no evidence that Mattel had any **knowledge** of any

23   one of the three generic elements of its claims [wrongdoing, causation and harm],

24   and thus no claim accrued, prior to . . . July 18, 2003."  *See* June 2, 2008 Further and

25   Final Order re Statute of Limitations Defense, at 2 (emphasis in original).  Hence, if

26   there was tolling due to fraudulent concealment, that period of tolling necessarily

27   continued through July 2003 based on the Court's rulings to date, and Mattel's

28   claims, deemed filed in 2004, are timely.

1    Accordingly, Mattel proposes the following alternative instruction

2 regarding fraudulent concealment:

3

4    Mattel claims that defendants fraudulently concealed the facts

5    underlying Mattel's claims of intentional interference with contract

and conversion.  Defendants deny these allegations.

6

7    To prove fraudulent concealment, Mattel must show that the

8    defendants intentionally concealed the facts that could have led Mattel

to discover that Carter Bryant created Bratz works while employed by

9    Mattel or that Mr. Bryant entered into a contract with and worked

10    with MGA while he was still employed by Mattel.

11

12    If you find that defendants intentionally concealed the facts that

13    could have led Mattel to discover that Carter Bryant created Bratz

works while employed by Mattel or that Mr. Bryant entered into a

14    contract with and worked with MGA while he was still employed by

15    Mattel, you should find for Mattel on its allegations of fraudulent

16    concealment.

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8            **TAB B**
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# PHASE 1B JURY INSTRUCTIONS

## Instructions to Be Read When Phase 1B Begins

### 17.0

### PRELIMINARY INSTRUCTION—COPYRIGHT

Mattel, the plaintiff, claims ownership of copyrights and seeks damages against the defendants, including MGA, MGA's CEO Isaac Larian and MGA Entertainment (HK) Limited ("MGA Hong Kong"), for copyright infringement. The defendants deny infringing the copyrights. To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.

**Definition of Copyright**

The owner of a copyright has the right to exclude any other person from reproducing, preparing derivative works, distributing, performing, displaying, or using the work covered by copyright for a specific period of time.

A copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, mask works fixed in semiconductor chip products, or a computer program.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

### Copyright Interests

The copyright owner may transfer to another person all or part of the owner's property interest in the copyright, that is, the right to exclude others from reproducing, preparing a derivative work from, distributing, performing, or displaying, the copyrighted work.  To be valid, the transfer must be in writing.  The person to whom a right is transferred is called an assignee.

### How Copyright Is Obtained

Copyright automatically exists in a work the moment it is fixed in any tangible medium of expression.  The owner of the copyright may register the copyright by delivering to the Copyright Office of the Library of Congress a copy of the copyrighted work.  After examination and a determination that the material deposited constitutes copyrightable subject matter and that legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.

### Plaintiff's Burden of Proof

In this case, Mattel, the plaintiff, contends that the defendants, including MGA, MGA's CEO Isaac Larian and MGA Hong Kong, have infringed Mattel's copyrights.  Mattel has the burden of proving by a preponderance of the evidence that it is the owner of the copyrights and that the defendants copied original elements of the copyrighted work.  Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.

### Proof of Copying

To prove that the defendants copied Mattel's work, Mattel may show that the defendants had access to Mattel's copyrighted work and that there are substantial similarities between the defendants' work and Mattel's copyrighted work.

## Liability for Infringement

One who reproduces, prepares derivative works from or distributes a copyrighted work without authority from the copyright owner during the term of the copyright, infringes the copyright.  Copyright may also be infringed by vicariously infringing and contributorily infringing.

## Vicarious Infringement

A person or company is liable for copyright infringement by another if the person or company has profited directly from the infringing activity and the right and ability to supervise the infringing activity, whether or not the person knew of the infringement.

## Contributory Infringement

A person or company is liable for copyright infringement by another if the person or company knows or should have known of the infringing activity and induces, causes or materially contributes to the activity.

**Authority:**  9th Cir. Civ. Jury Instr. 17.0 (2007).

## DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE PRELIMINARY INSTRUCTION—COPYRIGHT

The MGA Parties object to this instruction, which tracks 9th Circuit Civil Model Jury Instruction 17.0, to the extent that it uses the term "substantial similarities" rather than the correct term, "substantial similarity." The use of the term "substantial similarities" is inconsistent with applicable case law and appears to be used in this and other model instructions in error. Cf. Dang v. Cross, 422 F.3d 800, 805 (9th Cir. 2005) ("[u]se of a model jury instruction does not preclude a finding of error").

The MGA Parties also object to this instruction to the extent that it states that, among other things, "ideas" and "concepts … cannot themselves be copyrighted." The copyright statute goes much further and states:  "In no case does copyright protection for an original work of authorship extend to any idea … concept … regardless of the form in which it is described, explained, illustrated or embodied in such work."  17 U.S.C. § 102(b).  Thus, it is not just that any of Carter Bryant's "ideas" and "concepts" could not be separately copyrighted, but that the ideas and concepts found or reflected in Bryant's sketches are not protectible, notwithstanding the issuance of a copyright, and must be filtered out as part of the process of analytic dissection. See Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1439 (9th Cir. 1994); Lanard Toys, Ltd. v. Novelty, Inc., 511 F. Supp. 2d 1020, 1037–38 (N.D. Cal. 2007); Zella v. E.W. Scripps Co., 529 F. Supp. 2d 1124, 1133 (C.D. Cal. 2007); Brookhaven Typesetting Servs. v. Adobe Sys., 2007 U.S. Dist. LEXIS 62661, at *22 (N.D. Cal. Aug. 24, 2007); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176-97 (C.D. Cal. 2001).  At a minimum, 9th Circuit Civil Model Jury Instruction 17.3, "COPYRIGHT – SUBJECT MATTER – IDEAS AND EXPRESSION," must be given to explain this point to the jury.  Mattel's proposed copyright jury instructions do not include this instruction.

1   **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3      As required by the Court, the proposed instruction conforms to the Ninth

4   Circuit Model Instruction.  Defendants do not present any legitimate reason for the

5   Court to deviate from the Model Instruction.

6      Defendants fail to cite a single case holding that the term "substantial

7   similarities," which the Model Instruction uses, is improper.  Nor is there any

8   material difference between terms "substantial similarity" and "substantial

9   similarities," as they both describe the same legal concept.

10      As for defendants' second objection, the proposed instruction, which

11   conforms to the Ninth Circuit Model Instruction, sufficiently explains that ideas and

12   concepts are not copyrightable.  Defendants' "filtration" assertions—that ideas

13   "found in" Bryant's "sketches" must be filtered out notwithstanding their original

14   expression—not only contradict the Model Instruction but also are simply wrong.

15   *Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002) ("The precise

16   factors evaluated for literary works do not readily apply to art works.  Rather, a

17   court looks to the similarity of the objective details in appearance."); Hon. Jon O.

18   Newman, *New Lyrics for an Old Melody:  The Idea/Expression Dichotomy in the

19   Computer Age*, 17 Cardozo Arts & Ent. L. J. 691, 698 (1999) (Filtration analysis

20   should not be applied in cases of visual works because "one cannot divide a visual

21   work into neat layers of abstraction in precisely the same manner one could with a

22   text."); *id.* at 697, nn.36-37 (criticizing *Country Kids 'N City Slicks, Inc. v. Sheen*, 77

23   F.3d 1280 (10th Cir. 1999), which applied filtration in a doll case).

24      Further, in the Ninth Circuit, ideas <u>must be considered</u> as part of the extrinsic

25   test.  *See, e.g., Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (holding that, as

26   part of the extrinsic test, one must "consider[] whether two works share a similarity

27   of *ideas* and expression") (emphasis added); *Kouf v. Walt Disney Pictures &*

28

1 │ *Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (same).  As explained elsewhere,

2 │ consideration of ideas is also proper under the intrinsic test.

**17.1**

**COPYRIGHT—DEFINED**

**(17 U.S.C. § 106)**

Copyright is the exclusive right to copy. This right to copy includes the exclusive rights to:

(1)     Authorize, or make additional copies, or otherwise reproduce the copyrighted work;

(2)     Prepare derivative works based upon the copyrighted work;

(3)     Distribute copies of the copyrighted work to the public by sale or other transfer of ownership; and

(4)     Display publicly a copyrighted work.

It is the owner of a copyright who may exercise these exclusive rights to copy.  The term "owner" includes an assignee.  In general, copyright law protects against production, adaptation and distribution of substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.


**Authority:**  9th Cir. Civ. Jury Instr. 17.1 (2007).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT—DEFINED (17 U.S.C. § 106)

The preceding instruction is objectionable to the extent that it does not include a reference to the principle that mere possession of a copyrighted work does not constitute infringement. See Lapham v. Porach, 2007 U.S. Dist. LEXIS 30751, at *15 (S.D.N.Y. Apr. 25, 2007). The MGA Parties also object to this instruction because it does not specify that a defendant's contribution of non-infringing fashions, accessories, or other materials to a BRATZ doll does not constitute copyright infringement even if the BRATZ doll itself infringes Mattel's copyright. The MGA Parties also object on the ground that the instruction improperly fails to explain that the jury must consider each defendant's acts separately to determine whether that defendant has engaged in an act that is an infringement of Mattel's copyrights.

## MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

As required by the Court, the proposed instruction conforms to the Ninth Circuit Model Instruction. Defendants do not present any reason for the Court to deviate from its standing order requiring the use of Model Instructions whenever possible, nor do they contend that the Model Instruction is incorrect.

Defendants' contention that the proposed instruction, which is identical to the model instruction, should inform the jury that the mere possession of copyrighted work is not infringement is baseless. Mattel does not contend that defendants' mere possession of Bryant's drawings constitutes copyright infringement. Therefore, it would be confusing and misleading to alter the Model Instruction to reflect defendants' irrelevant comment.

The proposed instruction also does not improperly fail to differentiate among defendants. Rather, the proposed instruction merely explains the legal principles underlying a claim of copyright infringement. Subsequent instructions that pertain directly to factors that the jury must determine to hold defendants liable for copyright infringement make clear that each defendant's liability must be determined separately.

Defendants' contention that doll fashions or accessories are not copyrightable lacks legal support. Clothing is a non-protectable "useful article" only if designed for people, not for dolls or toys; clothing for dolls and toys is unquestionably *not* a useful article under the case law. *See, e.g.*, *Boyds Collection, Ltd. v. Bearington Collection, Inc.,* 360 F. Supp. 2d 655 (M.D. Pa. 2005) ("The clothing on a teddy bear obviously has no utilitarian function. It is not intended to cover embarrassing anatomical aspects or to protect the bear from exterior elements. . . . Clothing on a bear replicates the form but not the function of clothing on a person. It does not constitute a 'useful article' excluded from copyright protection."); *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 670 (3d Cir. 1990) (masks

1   portraying animals); *Gay Toys, Inc. v. Buddy L Corp.*, 703 F.2d 970, 973 (6th Cir.

2   1983) (toy airplanes).  Because dolls' clothing is not functional, it is deemed to

3   constitute an expressive element that may be infringed.  For instance, in *Fisher-*

4   *Price Toys v. My-Toy Co.*, 385 F. Supp 218, 220-21 (S.D.N.Y. 1974), the court

5   considered actionable similarities in the dolls' clothing:  "They are both

6   representations of blond-haired little girls appearing to be the same age, dressed in

7   removable red and white checked gingham dresses with puffed sleeves.  White

8   aprons cover the front of each dress.  Under each dress is a body suit or pajama

9   outfit made of the same material as the dress, with white lace extending from the

10  pants' leg.  Both dolls also have simple vinyl hands, booty-like feet, and white fabric

11  legs."  *See also* Robert C. Osterberg and Eric C. Osterberg, SUBSTANTIAL

12  SIMILARITY IN COPYRIGHT LAW, § 10:6. ("Some of the particular characteristics

13  courts consider when comparing dolls [for purposes of infringement analysis] are

14  facial features, facial expression, size, body and limb type, stance or pose, *hair,*

15  *clothing and accessories*, age, and gaze.") (emphasis added).

16      Moreover, defendants cite no authority whatsoever in support of their

17  erroneous proposition that drawings of clothing – which are some of the copyrighted

18  works at issue here – are not copyrightable, or cannot be infringed by substantially

19  similar doll clothing.  They clearly are, and can be.  Drawings are not useful articles.

20      In any case, defendants offer no reason why this issue should be addressed in

21  this introductory instruction.

22

23

24

25

26

27

28

**17.4**

**COPYRIGHT INFRINGEMENT—OWNERSHIP AND COPYING**

**(17 U.S.C. § 501A–(b))**

Anyone who copies original elements of a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

Mattel claims that the defendants have infringed copyrights for Bratz works. On Mattel's copyright infringement claim, Mattel has the burden of proving both of the following by a preponderance of the evidence:

1.      Mattel is the owner of a valid copyright; and

2.      The defendants copied original elements from the copyrighted work.

If you find that Mattel has proved both of these elements, your verdict should be for Mattel.

If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for the defendants.


**Authority:**  9th Cir. Civ. Jury Instr. 17.4 (2007).

## DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT INFRINGEMENT—OWNERSHIP AND COPYING (17 U.S.C. § 501A–(b))

The MGA Parties object to the inclusion of the following sentence in this instruction: "Mattel claims that the defendants have infringed copyrights for Bratz works." This sentence is not part of the cited model instruction, and the term "Bratz works" is improper, in that it implies to the jury that the Bryant drawings and the BRATZ dolls were substantially similar, rather than having the jury resolve this factual dispute.

The MGA Parties also object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant. The MGA Parties further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product. Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

1  **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3       Use of the term "Bratz works" for the works Mattel claims it owns is

4  appropriate.  This is a clear and accurate shorthand for the works that Bryant created

5  and that Mattel claims it owns.  According to defendants, Bryant called his drawings

6  of characters "Bratz" when he pitched them to MGA.  His pitch materials list on the

7  cover, "Bratz © 2000."  Defendants have themselves used the term "Bratz property"

8  to describe materials created by Bryant (*see* 2004 Modification of 2000 Agreement

9  at § 3.2 (MGA000429-434).  Accordingly, defendants' current objection to calling

10  these drawings "Bratz works" is simply inexplicable.  The sentence that "Mattel

11  claims that the defendants have infringed copyrights for Bratz works" is descriptive

12  and necessary to provide context for Mattel's claim.

13       Moreover, Mattel expects to prevail on its claims in Phase 1A.  If it does, then

14  the term "Bratz works" will be understandable to the jury that previously determined

15  Mattel's ownership of these specific works.  If the jury determines that Mattel owns

16  some copyrights at issue, but not others, the jury instruction may be modified at that

17  point.

18       The proposed instruction does not improperly fail to differentiate among

19  defendants.  Rather, the proposed instruction merely explains the legal principles

20  underlying a claim of copyright infringement.  Subsequent instructions that pertain

21  directly to factors that the jury must determine to hold defendants liable for

22  copyright infringement make clear that each defendant's liability must be

23  determined separately.

24       Moreover, defendants' objection that the jury must consider each "infringing

25  act" and "product" separately misstates the law.  Essentially, defendants contend that

26  a Bratz doll would not infringe if defendants copied the head from one of Bryant's

27  drawings and the doll's body from another drawing.  That is not the law.  This case

28  is comparable to *Castle Rock Entm't v. Carol Publishing Group, Inc.*, 150 F.3d 132

1   (2d Cir. 1998), where the Second Circuit held that a book entitled "Seinfeld

2   Aptitude Test" infringed the plaintiff's copyrights in numerous episodes of

3   "Seinfeld," even though the amount of expression copied from each episode was

4   relatively small.  *See id.* at 138 ("it would elevate form over substance to conclude

5   that *The SAT*'s copying of 643 fragments from 84 individually copyrighted *Seinfeld*

6   episodes is indistinguishable from a case in which a 634-question trivia quiz book

7   poses a few questions from each of 84 unrelated television programs, books,

8   movies, or any combination of creative works that do not constitute a discrete series

9   of works.").

10        Here, as in *Castle Rock*, most of Bryant's drawings are a single series of

11   depictions of the same four characters (i.e., the original Bratz characters), developed

12   for a specific purpose (creating, pitching and developing Bratz dolls).  Accordingly,

13   it would be prejudicial and wholly artificial for the Court to instruct the jury to

14   consider each Bratz drawing separately.  Indeed, defendants do not cite any

15   authority to support their objection.  In any case, the proposed damages instructions,

16   which are also based upon the Ninth Circuit Model Instructions, make clear the

17   proper standards for damages determination.

18

19

20

21

22

23

24

25

26

27

28

**17.15**

**COPYING—ACCESS AND SUBSTANTIAL SIMILARITY**

I just instructed you that Mattel has the burden of proving that the defendants copied original elements from Mattel's copyrighted work.  Mattel may show the defendants copied from the work by showing by a preponderance of the evidence that the defendants had access to Mattel's copyrighted works and that there are substantial similarities between the defendants' works and original elements of Mattel's works.

**Authority:**  9th Cir. Civ. Jury Instr. 17.15 (2007).

# DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYING—ACCESS AND SUBSTANTIAL SIMILARITY

The MGA Parties object to this instruction, which tracks 9th Circuit Civil Model Jury Instruction 17.15, as being out of order and also to the extent that it uses the term "substantial similarities" rather than the correct term, "substantial similarity." The use of the term "substantial similarities" is inconsistent with applicable case law and appears to be used in this and other model instructions in error. Cf. Dang v. Cross, 422 F.3d 800, 805 (9th Cir. 2005) ("[u]se of a model jury instruction does not preclude a finding of error"). The MGA Parties also object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant.  The MGA Parties further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3    As required by the Court, the proposed instruction mirrors the language of the

4    Ninth Circuit Model Instruction.  Defendants do not offer any reason for the Court

5    to deviate from its standing order requiring the use of Model Instructions whenever

6    possible.  Further, defendants fail to cite a single case holding that the term

7    "substantial similarities," which the Model Instruction uses, is improper.  Nor is

8    there any material difference between terms "substantial similarity" and "substantial

9    similarities," as they both describe the same legal concept.

10   The proposed instruction does not improperly combine defendants for the

11   purposes of liability.  The only other alternative would be to give a separate

12   identical instruction for each defendant, which would be impractical and confusing.

13   The proposed instruction will not mislead the jury, as defendants suggest,

14   with respect to damages awardable based upon the scope of infringement.  The

15   instruction appropriately explains the concepts of access and substantial similarity in

16   simple, clear terms, consistent with the Model Instruction.  Moreover, defendants'

17   objection that the jury must consider each "infringing act" and "product" separately

18   misstates the law.  Essentially, defendants contend that a Bratz doll would not

19   infringe if defendants copied the head from one of Bryant's drawings and the doll's

20   body from another drawing.  That is not the law.  This case is comparable to *Castle*

21   *Rock Entm't v. Carol Publishing Group, Inc*., 150 F.3d 132 (2d Cir. 1998), where

22   the Second Circuit held that a book entitled "Seinfeld Aptitude Test" infringed the

23   plaintiff's copyrights in numerous episodes of "Seinfeld," even though the amount of

24   expression copied from each episode was relatively small.  *See id*. at 138 ("it would

25   elevate form over substance to conclude that *The SAT* 's copying of 643 fragments

26   from 84 individually copyrighted *Seinfeld* episodes is indistinguishable from a case

27   in which a 634-question trivia quiz book poses a few questions from each of 84

28

1  unrelated television programs, books, movies, or any combination of creative works

2  that do not constitute a discrete series of works.")

3       Here, as in *Castle Rock*, most of Bryant's drawings are a single series of

4  depictions of the same four characters (i.e., the original Bratz characters), developed

5  for a specific purpose (creating, pitching and developing Bratz dolls).  Accordingly,

6  it would be prejudicial and wholly artificial for the Court to instruct the jury to

7  consider each Bratz drawing separately.  Indeed, defendants do not cite any

8  authority to support their objection.  In any case, the proposed damages instructions,

9  which are also based upon the Ninth Circuit Model Instructions, make clear the

10 proper standards for damages determination.

**<u>17.10</u>**

**<u>COPYRIGHT INTERESTS—ASSIGNEE</u>**

**<u>(17 U.S.C. § 201(d)(1))</u>**

In this case, the plaintiff, Mattel, does not claim to be the creator of the copyright at issue. Instead, Mattel claims it received the copyright by virtue of assignment from the work's creator, Carter Bryant, in the Inventions Agreement, so that Mattel is now the owner of the copyright.

A copyright owner may convey to another person or entity all or part of the owner's property interest in the copyright; that is, the right to exclude others from copying the work. The person to whom the copyright is conveyed becomes the owner of the copyright in the work.  Mattel may enforce the right to exclude others in an action for copyright infringement.

**Authority:**  9th Cir. Civ. Jury Instr. 17.10 (2007).

## **DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT INTERESTS—ASSIGNEE (17 U.S.C. § 201(d)(1))**

The MGA Parties object to the preceding instruction to the extent that it is unnecessary, duplicative of Mattel's proposed instruction 17.4, and will only serve to confuse the jury.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Defendants' objection is baseless and should be overruled.  Mattel is entitled to an instruction explaining to the jury that its copyright rights are based upon a valid transfer of ownership from Carter Bryant, especially because Ninth Circuit Model Instruction 17.4 does not explain this concept.

1  **MATTEL'S SPECIAL JURY INSTRUCTION NO. ___**

2  **COPYRIGHT INFRINGEMENT—SUBSTANTIAL SIMILARITY**

3

4  You are to make a determination regarding substantial similarity according to

5  a two-step process, which includes application of the "extrinsic test" and the

6  "intrinsic test."  To prevail on its claims for copyright infringement, Mattel must

7  satisfy both of these tests.

8  Under the extrinsic test, Mattel must establish that specific expressive

9  elements of the Bratz products that Mattel claims are infringing and the works

10  Mattel owns are substantially similar.  I have already found as a matter of law that

11  each of the elements in Carter Bryant's Bratz drawings, and the combination of

12  those elements, are original and protectable.  Accordingly, you should take all of the

13  elements of the drawings into account in analyzing whether they are substantially

14  similar to the defendants' works.

15  The intrinsic test looks at the overall similarity of ideas and expression in the

16  works from the perspective of an ordinary observer.  You should ask yourself

17  whether the ordinary, reasonable audience, in this case girls between the ages of 6

18  and 12, would recognize the defendants' products as a "picturization" of the Bratz

19  works that Mattel owns.

20

21  **Authority:**  *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d

22  1394, 1398 (9th Cir. 1997); *Shaw v. Lindheim*, 919 F.2d 1353, 1356-57 (9th Cir.

23  1990); *Jada Toys, Inc. v. Mattel, Inc.*, 1008 WL 450891, *6 (9th Cir. Feb. 21, 2008);

24  *see also Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*,

25  562 F.2d 1157, 1164, 1166 (9th Cir. 1977); *See, e.g., Newton v. Diamond*, 204 F.

26  Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted

27  work is a question of law.");  *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353,

28  1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of

1   fact, but the issue of protectibility/nonprotectibility is an issue of law. Thus, before a

2   court may send a copyright case to the jury, it must satisfy itself that, even assuming

3   copying of an idea and its expression, at least some of what the defendant copied

4   falls into the area of protectible expression."); *Coston v. Product Movers*, 1990 WL

5   56516 at *3 (E.D. Pa., 1990) ("The question of which aspects of plaintiffs' work are

6   protectible expression as opposed to unprotectible idea is an issue of law.");

7   *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D.

8   Del. 2005) (holding that while a finding of copyright infringement may involve

9   questions of fact, the protectability of copyrighted material is a question of law);

10  *Pivot Point Int'l, Inc. v. Charlene Prods.*, Inc., 932 F. Supp. 220, 225 (N.D. Ill 1996)

11  (the issue of whether a work is "copyrightable is a question of law," and the "jury

12  has nothing to do with this subject.");*ADA v. Delta Dental Plans Ass'n*, 1996 U.S.

13  Dist. LEXIS 5809 at *19 n. 15 (N.D. Ill. 1996) (although copyrightability analysis

14  necessarily requires a court to consider some facts surrounding the works at issue,

15  the inquiry "is far more heavily loaded with policy implications than most other

16  standards," making it appropriate for determination by a court instead of a jury).

17

18

19

20

21

22

23

24

25

26

27

28

# DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT INFRINGEMENT—SUBSTANTIAL SIMILARITY

This instruction is Mattel's latest attempt to avoid acknowledging the filtration analysis required under Ninth Circuit copyright principles.  Instead of identifying the elements in the Carter Bryant sketches that it claims are protectable, Mattel disingenuously asserts that all of the elements in the sketches are protectable.  This is not a good faith position – Mattel cannot seriously contend that not a single element in the sketches needs to be filtered out as an idea or concept.  MGA submits that, for example, basing a line of fashion dolls on four teenage friends who display an edgy attitude and wear trendy clothes popular with teens is an idea or concept that is not within the scope of copyright subject matter and must be filtered out before attempting a comparison between the Bryant sketches and the BRATZ dolls.

Assuming that the Court decides to conduct the extrinsic test analytic dissection and filtering itself, and then advise the jurors of the results of the Court's analysis, it would be improper for the Court to advise the jury that it has made a determination "as a matter of law."

If the jury is to be instructed on the extrinsic test, the MGA Parties object to this instruction on the grounds that, unlike the MGA Parties' proposed instructions on this issue, Mattel's proposed instruction does not tell the jury the analytical steps it must take in applying the legal test to determine infringement. Mattel's proposed instruction also does not explain that the "extrinsic" test requires that the jury remove from infringement analysis those elements of the copyrighted work that are not entitled to copyright protection, or that the party claiming infringement (Mattel) cannot rely on any similarity in expression resulting from unprotectible elements for copyright infringement. (Although Mattel's instruction states that the jury must consider "specific expressive elements of the BRATZ products that Mattel claims are infringing," Mattel

1  has still never identified the specific elements.)  Mattel's proposed instruction does not

2  explain "analytic dissection" (wherein the jury must isolate the elements of the

3  copyrighted work and analyze each one separately, excluding the other elements

4  present in the work and the combination of elements) or "filtering" (wherein the jury

5  must filter out all of the unprotected elements) aspects of the "extrinsic" test.  Mattel's

6  proposed instruction also does not provide the jury with any guidance as to when the

7  jury can consider and rely on expert testimony in connection with the "extrinsic" test

8  and the "intrinsic" test, and it does not instruct the jury concerning the ranges of

9  protection available or the potential for "thin" copyright protection for the works at

10 issue in this case. Thus, Mattel's proposed instruction does not explain that the jury

11 must determine what, if any, protectible expression is present in each of the Bryant

12 sketches, compare the protected expression in a particular sketch to the BRATZ dolls

13 and, unless a sufficient amount of protected expression from a sketch was copied in the

14 BRATZ dolls, Mattel's claim of copyright infringement must fail.  Compare Mattel's

15 proposed instruction with MGA Parties' Proposed Jury Instruction No. 9C.

16      The MGA Parties also object to the preceding instruction on the grounds that it

17 improperly uses the concept of "picturization." The MGA Parties object to any

18 reference to the term or concept "picturization" as referring to an outdated concept used

19 almost exclusively historically to refer to the process of comparing an alleged

20 infringing audio visual work such as a film with a literary work.  See, e.g., Berkic v.

21 Crichton, 761 F.2d 1289, 1292 (9th Cir. 1985); Cain v. Universal Pictures Co., 47 F.

22 Supp. 1013, 1016 (C.D. Cal. 1942); see also Anderson v. Stallone, 1989 U.S. Dist.

23 LEXIS 11109, at *35 11 U.S.P.Q. 2d 1161 (C.D. Cal. Apr. 26, 1989).  Accord 4-13

24 David Nimmer, Nimmer, on Copyrights § 13.03 (2008) (questioning the validity of the

25 related "audience" test.)  Any references to "picturization" will only confuse the jury

26 with respect to the "total concept and feel" standard actually applied under the intrinsic

27 test. See Lanard Toys, Ltd. v. Novelty, Inc., 511 F. Supp. 2d 1020, 1037–38 (C.D. Cal.

28 2007) (citing Litchfield v. Spielberg, 736 F.2d 1352, 1357 (9th Cir. 1984)).

Mattel's proposed instruction also does not instruct the jury that it should not consider the unprotectible elements filtered out as part of the extrinsic test analysis in connection with its determination under the "intrinsic" test, and it improperly describes the "ordinary, reasonable audience" as girls between the ages of 6 and 12, when the target audience for Bratz dolls is girls between the ages of 8 and 12.

Finally, the MGA Parties object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by improperly suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringements.

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3        It would be erroneous as a matter of law and unnecessary to modify Mattel's

4    proposed instruction as suggested by defendants to state that the extrinsic test

5    requires filtering out of unprotectable ideas.  The proposed instruction states that the

6    extrinsic test is limited to "specific expressive elements."  Other proposed

7    instructions state that the Copyright Act does not protect ideas.  And, in any case,

8    ideas must be considered under the extrinsic test.  *See, e.g.*, *Smith v. Jackson*, 84

9    F.3d 1213, 1218 (9th Cir. 1996) (holding that, as part of the extrinsic test, one must

10   "consider[] whether two works share a similarity of *ideas* and expression")

11   (emphasis added); *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045

12   (9th Cir. 1994) (same).

13       Defendants' contention that ideas should be filtered out as part of the intrinsic

14   test is also contrary to settled law.  The Ninth Circuit has consistently held that

15   "[a]nalytic dissection ... is not appropriate under [the intrinsic] test because it

16   distracts a reasonable observer from a comparison of the total concept and feel of

17   the works."  *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 208 (9th Cir. 1988).

18   *See also Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1449 (9th Cir. 1988) ("Although

19   analytic dissection and expert testimony are appropriate under the extrinsic test, they

20   are not appropriate under the intrinsic test.").

21       Further, defendants are incorrect as a matter of law that a work of visual art

22   (as distinguished from a literary work or a computer program) may be broken down

23   into original and non-original components.  *See, e.g.*, *Cavalier v. Random House,*

24   *Inc.*, 297 F.3d 815, 826 (9th Cir. 2002) ("The precise factors evaluated for literary

25   works do not readily apply to art works.  Rather, a court looks to the similarity of

26   the objective details in appearance."); Hon. Jon O. Newman, *New Lyrics for an Old*

27   *Melody:  The Idea/Expression Dichotomy in the Computer Age*, 17 Cardozo Arts &

28   Ent. L. J. 691, 698 (1999) (filtration analysis should not be applied in cases of visual

works because "one cannot divide a visual work into neat layers of abstraction in precisely the same manner one could with a text."); *id.* at 697, nn.36-37 (criticizing *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280 (10th Cir. 1999), which applied filtration in a doll case).

Defendants' objection to the term "picturization" is baseless. Even though defendants claim that the term is "outdated," they do not cite any case overruling the authorities that use the term. Indeed, the term is consistent with the "total concept and feel" test for infringement. *Lanard Toys, Ltd. v. Novelty, Inc.*, 511 F. Supp. 2d 1020, 1037–38 (C.D. Cal. 2007). Nor do defendants cite any authority for the proposition that the use of the term is improper in the context of visual art, as opposed to literary or audiovisual works.

There is no need to instruct the jury about "thin" copyright protection. Defendants are estopped from asserting that the drawings are subject only to thin copyright protection because defendants successfully contended just the opposite in suing for infringement of the drawings in the courts of Hong Kong and in the United States. *See* Mattel Reply Mem. ISO Summary Judgment at 11. Mattel is aware of at least two instances in which MGA has done this. In *MGA Entm't., Inc. v. Multitoy, Inc. et al.,* Case No. CV04-2524 CBM (CWx), MGA Entertainment, Inc. ("MGA") brought claims of copyright and trademark infringement, among other claims, against defendants for producing and selling dolls that infringed of the copyrights in Carter Bryant's two dimensional BRATZ drawings. *See e.g.*, Complaint ¶ 7 and M0078574-90. *See generally* ¶¶ 2-20, 31-37. MGA made similar claims in the *Cityworld* matter that MGA filed in Hong Kong, wherein Isaac Larian signed a sworn affidavit that MGA claimed that defendants' dolls infringed the copyrights in Bryant's Bratz drawings.

More generally, defendants' contention that the jury should be instructed on the process of analytical dissection or filatration is incorrect. The determination of elements of a work which are protectable is a question of law for the Court, not for

1   the jury.  *See*, *e.g.*, *Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002)

2   ("The protectability of elements in a copyrighted work is a question of law.");

3   *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The

4   extrinsic and intrinsic tests both involve findings of fact, but the issue of

5   protectibility/nonprotectibility is an issue of law.); *Coston v. Product Movers*, 1990

6   WL 56516 at *3 (E.D. Pa., 1990) ("The question of which aspects of plaintiffs' work

7   are protectible expression as opposed to unprotectible idea is an issue of law.");

8   *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D.

9   Del. 2005) (holding that while a finding of copyright infringement may involve

10  questions of fact, the protectability of copyrighted material is a question of law);

11  *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 932 F. Supp. 220, 225 (N.D. Ill 1996)

12  (the issue of whether a work is "copyrightable is a question of law," and the "jury

13  has nothing to do with this subject."); *ADA v. Delta Dental Plans Ass'n*, 1996 U.S.

14  Dist. LEXIS 5809 at *19 n. 15 (N.D. Ill. 1996) (although copyrightability analysis

15  necessarily requires a court to consider some facts surrounding the works at issue,

16  the inquiry "is far more heavily loaded with policy implications than most other

17  standards," making it appropriate for determination by a court instead of a jury).

18      Mattel's proposed instruction will not mislead the jury, as defendants suggest,

19  with respect to damages awardable based upon the scope of infringement.  The

20  instruction appropriately explains the concept of substantial similarity in simple,

21  clear terms.  Moreover, defendants' objection that the jury must consider each

22  "infringing act" and "product" separately misstates the law.  Essentially, defendants

23  contend that a Bratz doll would not infringe if defendants copied the head from one

24  of Bryant's drawings and the doll's body from another drawing.  That is not the law.

25  This case is comparable to *Castle Rock Entm't v. Carol Publishing Group, Inc.*, 150

26  F.3d 132 (2d Cir. 1998), where the Second Circuit held that a book entitled

27  "Seinfeld Aptitude Test" infringed the plaintiff's copyrights in numerous episodes of

28  "Seinfeld," even though the amount of expression copied from each episode was

relatively small.  *See id.* at 138 ("it would elevate form over substance to conclude that *The SAT* 's copying of 643 fragments from 84 individually copyrighted *Seinfeld* episodes is indistinguishable from a case in which a 634-question trivia quiz book poses a few questions from each of 84 unrelated television programs, books, movies, or any combination of creative works that do not constitute a discrete series of works.")

Here, as in *Castle Rock*, most of Bryant's drawings are a single series of depictions of the same four characters (i.e., the original Bratz characters), developed for a specific purpose (creating, pitching and developing Bratz dolls).  Accordingly, it would be prejudicial and wholly artificial for the Court to instruct the jury to consider each Bratz drawing separately.  Indeed, defendants do not cite any authority to support their objection.  In any case, the proposed damages instructions, which are also based upon the Ninth Circuit Model Instructions, make clear the proper standards for damages determination.

1
2
3

<u>**MATTEL'S SPECIAL JURY INSTRUCTION NO.**</u>
<u>**SUBSTANTIAL SIMILARITY—THE "INVERSE RATIO RULE"**</u>

4
5
6

   If Mattel shows that the defendants had a high degree of access to the Bratz drawings that Mattel owns, you should view Mattel's burden of proving substantial similarity under the extrinsic test as lowered.

7

8
9
10
11
12
13
14
15

   **Authority:**  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) ("Under our case law, substantial similarity is inextricably linked to the issue of access.  In what is known as the 'inverse ratio rule,' we 'require a lower standard of proof of substantial similarity when a high degree of access is shown.'"); *Shaw v. Lindheim*, 919 F.2d 1353, 1361-62 (9th Cir. 1990); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977) (high "degree of access justifies a lower standard of proof to show substantial similarity"); *Smith v. Jackson*, 84 F.3d 1213, 1220-21 (9th Cir. 1996).

16
17
18
19
20
21
22
23
24
25
26
27
28

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS

# DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE SUBSTANTIAL SIMILARITY—THE "INVERSE RATIO RULE"

The MGA Parties object to Mattel's proposed instruction because it incorrectly states that the "inverse ratio" rule lowers Mattel's burden in connection with jury's determination of "legal" copying.  The "inverse ratio" rule, as correctly applied, only relates to the "factual" copying issue.  See, e.g., BensBargains.Net v. XPBargains.Com, 2007 U.S. Dist. LEXIS 60544, at **8–10 (S.D. Cal. Aug. 16, 2007); 4-13 David Nimmer, Nimmer, on Copyright §§ 13.03[A] & [D] (2008). The MGA Parties also object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant. The MGA Parties further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Defendants misstate settled law when they contend that Mattel must establish factual copying. To establish infringement, Mattel only needs to show, by a preponderance of evidence, (1) access to the copyrighted work and (2) substantial similarity. *See, e.g.*, *Brown Bag Software Corp. v. Symantec*, 960 F.2d 1465,1472 (9th Cir. 1992). Defendants' insistence that Mattel establish factual and legal copying creates an additional hurdle to liability for copyright infringement that is not supported by any cited authority. *BensBargains* merely holds that admitted access does not excuse plaintiff from having to establish copying of protected expression, as opposed to unprotectable ideas. That is immaterial. Defendants cannot and do not dispute that the inverse ratio rule is controlling law in the Ninth Circuit and that the jury should be instructed on this rule. *See, e.g.*, *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) ("Under our case law, substantial similarity is inextricably linked to the issue of access. In what is known as the 'inverse ratio rule,' we require a lower standard of proof of substantial similarity when a high degree of access is shown.") (quotation marks and citation omitted).

The proposed instruction will not mislead the jury, as defendants suggest, with respect to damages awardable based upon the scope of infringement. The instruction appropriately explains the concepts of access and substantial similarity in simple, clear terms, consistent with the Model Instruction. Moreover, defendants' objection that the jury must consider each "infringing act" and "product" separately misstates the law. Essentially, defendants contend that a Bratz doll would not infringe if defendants copied the head from one of Bryant's drawings and the doll's body from another drawing. That is not the law. This case is comparable to *Castle Rock Entm't v. Carol Publishing Group, Inc.*, 150 F.3d 132 (2d Cir. 1998), where the Second Circuit held that a book entitled "Seinfeld Aptitude Test" infringed the

1   plaintiff's copyrights in numerous episodes of "Seinfeld," because even though the

2   amount of expression copied from each episode was relatively small.  *See id*. at 138

3   ("it would elevate form over substance to conclude that *The SAT* 's copying of 643

4   fragments from 84 individually copyrighted *Seinfeld* episodes is indistinguishable

5   from a case in which a 634-question trivia quiz book poses a few questions from

6   each of 84 unrelated television programs, books, movies, or any combination of

7   creative works that do not constitute a discrete series of works.")

8           Here, as in *Castle Rock*, most of Bryant's drawings are a single series of

9   depictions of the same four characters (i.e., the original Bratz characters), developed

10  for a specific purpose (creating, pitching and developing Bratz dolls).  Accordingly,

11  it would be prejudicial and wholly artificial for the Court to instruct the jury to

12  consider each Bratz drawing separately.  Indeed, defendants do not cite any

13  authority to support their objection.  In any case, the proposed damages instructions,

14  which are also based upon the Ninth Circuit Model Instructions, make clear the

15  proper standards for damages determination.

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **MATTEL'S SPECIAL JURY INSTRUCTION NO. \_\_\_\_**

2  **COPYRIGHTABILITY OF CHARACTERS**

3

4      Copyright law protects distinctive characters.  Defendants' works infringe

5  Mattel's copyrights if they copy recognizable and distinctive elements of the

6  personalities of the characters portrayed in Carter Bryant's drawings.

7

8

9      **Authority:** *Olson v. National Broadcasting Co., Inc.*, 855 F.2d 1446,

10  1452 (9th Cir. 1988) (distinctive characters can be protected by copyright); *Warner*

11  *Bros. Inc. v. American Broadcasting Companies, Inc.*, 720 F.2d 231, 235 (2d Cir.

12  1983) ("Plaintiffs own the copyright in various works embodying the character of

13  Superman and have thereby acquired copyright protection for the character itself.");

14  *Walt Disney Productions v. Air Pirate*s, 581 F.2d 751, 755 (9th Cir. 1978), cert.

15  denied, 439 U.S. 1132 (1979) (distinctive characters, especially if they are expressed

16  in visual form, are protectable by copyright); *Anderson v. Stallone*, 1989 Copr. L.

17  Dec. P 26427, 1989 WL 206431 (C.D. Cal. 1989) (copyright protection extended to

18  the Rocky character); *Toho Co., Ltd. v. William Morrow and Co., Inc.*, 33 F. Supp.

19  2d 1206, 1215 (C.D. Cal. 1998) (Godzilla); *Metro-Goldwyn-Mayer, Inc. v.*

20  *American Honda Motor Co., Inc.*, 900 F. Supp. 1287, 1296 (C.D. Cal. 1995) (James

21  Bond).

22

23

24

25

26

27

28

## DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHTABILITY OF CHARACTERS

Mattel's new "copyrightability of characters" jury instruction must be rejected for two reasons.  First, Mattel's attempt to inject this new legal theory is untimely.  It is far too late in these proceedings, on the eve of trial and well after (i) the close of discovery, (ii) the submission of expert reports, and (iii) the due dates for all motion for summary judgment and motion in limine briefs, for Mattel to try to interject a new legal theory upon which to base its copyright infringement claims.  Second, Mattel's new legal theory is in any event legally insufficient here and its proposed instruction misstates the law.

### UNTIMELY ASSERTION OF NEW LEGAL THEORY

Mattel's jury instruction states that MGA's "works infringe Mattel's copyrights if they copy recognizable and distinctive elements of the personalities of the characters portrayed in Carter Bryant's drawings." (Emphasis added.)

On March 5, 2008, Mattel submitted a supplemental response to MGA's Interrogatory No. 31, which required that Mattel: "STATE THE COMPLETE FACTUAL BASIS FOR [MATTEL'S] CONTENTION that any BRATZ doll is substantially similar to, a copy or a derivative of BRATZ DESIGNS created by Carter Bryant on or before October 19, 2000." Relying heavily on the graphic analysis done by its expert Lee Loetz, Mattel responded that there is a "**visual consistency** from Bryant's sketches, to the first wave of dolls, up through the later waves of Bratz dolls." Mattel's Supplemental Objections and Responses to MGA's 2nd Set of Interrogatories (dated March 5, 2008) at 27 (emphasis added).  Mattel then inter alia pointed out comparisons between the sketches and the dolls with regards to body proportions, posture, facial features, the eyes, eye makeup, lips, hair styling, clothing, accessories, and footwear. Id. at 28-30.  Like its prior response to this interrogatory, Mattel did not even suggest that its copyright infringement claims were based on any "personality" or

1   "character" comparisons.

2       Mattel also did not raise the "personalities" or "character" of the figures in the

3   Bryant sketches or the Bratz dolls in its expert reports or in its summary judgment

4   motion papers.  Rather, Mattel's experts and its summary judgment motion relied **solely**

5   on the supposed "substantial similarity" between the visual aspects of the Bryant

6   sketches and the Bratz dolls.  See, e.g., Expert Report of Lee Loetz; Rebuttal Expert

7   Report of Lee Loetz; Mattel's Motion for Partial Summary Judgment (dated March 7,

8   2008) at 15-22; Mattel's Reply In Further Support Of Its Motion for Partial Summary

9   Judgment (dated April 1, 2008) at 10 ("Mattel set forth … a comprehensive, **graphic**

10  analysis of the dolls and the drawings and explained why common sense and applicable

11  precedent compels a conclusion of substantial similarity here") (emphasis added).

12  Mattel's failure to timely raise its new "personalities/character" theory precluded MGA

13  from filing for summary judgment on this legally deficient theory.  See, e.g., Rice v.

14  Fox Broadcasting Co., 330 F.3d 1170, 1175 (9th Cir. 2003) (affirming district court's

15  grant of summary judgment because the alleged "character" at issue was not

16  "sufficiently delineated to warrant copyright protection").

17              **LEGALLY INSUFFICIENT LEGAL THEORY**

18      Even if Mattel had not waived this new theory of liability, the figures illustrated

19  in Carter Bryant's sketches fall far short of the standard for copyrightability as

20  "characters."   As the Ninth Circuit has explained, "characters are ordinarily not

21  afforded copyright protection" apart from the copyrighted work, unless they are

22  "especially distinctive" or comprise "the story being told."  Rice v. Fox Broadcasting

23  Co., 330 F.3d 1170, 1175 (9th Cir. 2003).  Thus, "[c]haracters that have received

24  copyright protection have displayed <u>consistent, widely identifiable traits</u>."  <u>Id.</u>

25  (emphasis added).  That test cannot be satisfied here, given that Bryant's sketches were

26  just that, sketches of figures that, as of September – October, 2000, had not been

27  transformed into marketable items, much less actually distributed publicly.  Thus, the

28  Bryant sketch figures could not possibly have displayed "consistent, widely identifiable

1    traits."

2        The holding in <u>Olson v. National Broadcasting Co., Inc.</u>, 855 F.2d 1446, (9th Cir.

3    1988), the first decision cited by Mattel, is particularly instructive.  In <u>Olson</u>, the court

4    rejected plaintiff's copyright claim based on "lightly sketched characters" which were

5    "depicted only by three-or four-line summaries" in the treatment and screenplay, "plus

6    whatever insight into their characters may be derived from their dialogue and action."

7    <u>Olson</u> applies <u>a</u> <u>fortiori</u> here.  To the extent that the figures depicted in  Bryant's

8    sketches could even be described as "characters," they were delineated by only a few

9    brief lines of text in Mr. Bryant's "pitch book," which described the figures in the most

10   generic and abstract terms.  <u>See</u> Trial Exhibit 1. In addition, unlike <u>Olson</u>, there was no

11   "screen play" accompanying the Bryant drawings.  Thus, there was certainly not

12   enough detail and repetition to discern any "traits," let alone the kind of "well-defined,"

13   "widely-identifiable" physical and personality mannerisms that have been uniformly

14   required for "character" copyright protection in the Ninth Circuit.  Mattel, moreover,

15   only refers to the Bryant "drawings," not the brief text accompanying them.

16   The characters at issue in the other cases cited by Mattel well illustrate the Ninth

17   Circuit's strict and narrow requirements for "character" protection.   In <u>Anderson v.</u>

18   <u>Stallone</u>, 1989 Copr. L. Dec. P 26427, 1989 WL 206431 (C.D. Cal. 1989), the

19   Central District of California held that the "Rocky" characters were entitled to

20   copyright protection because they "are one of the most highly delineated group of

21   characters in modern American cinema.  The physical and emotional characteristics

22   of Rocky Balboa and the other characters were set forth in tremendous detail in

23   three Rocky movies . . . Rocky Balboa is such a highly delineated character that . . .

24   his character has become identified with specific character traits ranging from his

25   speaking mannerisms to his physical characteristics."  See 1989 WL 206431 at *7.

26   Similarly, in <u>Toho Co., Ltd. v. William Morrow & Co., Inc.</u>, 33 F. Supp. 2d 1206,

27   1216 (C.D. Cal. 1998), the court found that "Godzilla" qualified for copyright

28   protection because it is "always a pre-historic, fire-breathing, gigantic dinosaur alive

1   and well in the modern world," and thus is a "well-defined character with highly

2   delineated consistent traits."   See also Warner Bros. Inc. v. American Broadcasting

3   Companies, Inc., 720 F.2d 231, 241-42 (2d Cir. 1983) (referring to the rendering of

4   the well-established "Superman" character as including elements such as "[w]hat the

5   character thinks, feels, says and does" in addition to the "visual perception of the

6   character"; "Superman looks and acts like a brave, proud hero, who has dedicated

7   his life to combating the forces of evil. . . .  Superman performs his superhuman

8   feats with skill, verve, and dash, clearly the master of his own destiny."); Walt

9   Disney Prods. v. Air Pirates, 581 F.2d 751, 755-56 (9th Cir. 1978) (extending

10  protection over Mickey Mouse and other Disney characters with distinctively

11  delineated visual and conceptual characteristics); Metro-Goldwyn-Mayer, Inc. v.

12  American Honda Motor Co., Inc., 900 F. Supp. 1287, 1296 (C.D. Cal. 1995)

13  (finding that "James Bond has certain character traits that have been developed over

14  time through the sixteen films in which he appears" and that "[a] James Bond film

15  without James Bond is not a James Bond film.").

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS

1  **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3  **Mattel Is Not Asserting a New Legal Theory**

4      The distinctive personalities of the Bratz characters are part and parcel of

5  their representation in two or three-dimensional form.  Contrary to defendants'

6  contentions, Mattel has never limited its copyright claim to isolated visual features

7  of Bryant's drawings -- in fact, defendants consistently complain about Mattel's

8  failure to do just that as part of their erroneous "filtration" arguments.

9      Defendants rely primarily on Mattel's response to Interrogatory No. 31, but

10  that interrogatory only seeks *factual* support, not legal theories.  Defendants cite no

11  law for the misguided proposition that "legal theories" must be disclosed in response

12  to an interrogatory seeking facts. Mattel has never disclaimed its intention to pursue

13  a copyright claim based on the distinctiveness of the Bratz characters created by

14  Bryant.

15      Further, Mattel's response to Interrogatory No. 19 explains that Mattel's

16  infringement contentions encompass the distinct personalities of the Bratz

17  characters.  Specifically, Mattel states "Mattel contends that each and every Bratz

18  work created by Bryant while employed by Mattel . . . is fully protectable as an

19  original work of authorship under the Copyright Act.  Mattel further contends that

20  <u>each and every element</u> of these works is an original, protectable element, whether

21  viewed individually <u>or in combination with other elements</u>." (Emphasis added).  The

22  combination of the tangible elements of the Bratz drawings create intangible but

23  distinctive (and thus copyrightable) Bratz characters.  Nothing in the expert reports

24  or pleadings cited by defendants suggests, let alone states, that Mattel has

25  abandoned its contention that the Bratz characters are copyrightable, and have been

26  infringed by defendants.

27

28

**The Bratz' Characters Are Protectable Under Copyright Law**

Defendants' reliance on *Olson v. National Broadcasting Co., Inc.*, 855 F.2d 1446 (9th Cir. 1988) is misplaced.  *Olson* involved "lightly sketched" characters in a screenplay.  Words on a page are not nearly as evocative of character and personality as Bryant's drawings at issue here.  A drawing can emphasize particular character traits more immediately and viscerally than pages of dialogue and character description in a screenplay.  For instance, a drawing of Yosemite Sam immediately communicates his grumpy belligerent and outsize personality.  Here, not only do Bryant's drawings project instantly recognizable personalities – the average 8-12 year old child instantly identifies them with their characters, as Mattel's expert, Mr. Hollander, found – but they are accompanied by detailed character descriptions.  For instance Zoe (i.e., Chloe) is described as "the queen of cool at school with her short dark brown hair and funky stompin' sneaks.  Hiphugger jeans, short tee shirt and glittery vinyl backpack complete her daytime look" (MGA006455).  This is a far cry from the "lightly sketched" characters in *Olson*.

MGA's argument is also contrary to the character descriptions on its own website.  The official Bratz website, www.bratz.com, features a "bout [sic] Bratz" section under the "Style" menu.  This section describes each Bratz' character's personality in great detail.  For instance, MGA states that "Sometimes Yasmin can be a little quiet, but even without opening her mouth you can sense she's special.  There's just something about her that seems almost regal.  But Yasmin's not pretentious!  She's really open-minded[;] she's always up on the alternative trends in fashion, fitness and beauty."  MGA goes on to describe Yasmin's "fave color," "fave movies," "fave books," "fave smoothie," "fave music," "fave class," "fashion passion," and "shoppin' style."  MGA's website features comparable descriptions of other Bratz' characters' personality traits.  Indeed, the Bratz dolls' personalities are so distinct that the Bratz website features a 15 question multiple choice quiz "What

Bratz Are You Most Like?"  Defendants' made-for-litigation contention that Bratz characters are not sufficiently distinctive is disingenuous.

Finally, defendants' argument that Mattel's proposed instruction "only refers to the Bryant 'drawings,' not the brief text accompanying them" is misleading.  The complete second sentence of the instruction is "Defendants' works infringe Mattel's copyrights if they copy recognizable and distinctive elements of the personalities of the characters portrayed in Carter Bryant's drawings."  Several of Bryant's drawings, of course, feature <u>both</u> text and illustration.

# MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
# COPYRIGHT INFRINGEMENT—THREE-DIMENSIONAL WORKS CAN INFRINGE TWO-DIMENSIONAL WORKS

A two-dimensional work, such as a drawing, can be infringed by a three-dimensional work, such as a doll, when the works are substantially similar in their appearance.

**Authority:**  *King Features Syndicate v. Fleischer*, 299 F. 533, 534, 538 (2d Cir. 1924) (copyright of a comic book infringed by three-dimensional dolls of a character); *Fleischer Studios v. Ralph A. Freundlich, Inc.*, 73 F.2d 276, 278 (2d Cir. 1934) (drawing of Betty Boop character infringed by substantially similar doll:  "a three-dimensional form of doll, is an infringement of the two-dimensional picture or drawing").

1  **DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED**

2  **INSTRUCTION RE COPYRIGHT INFRINGEMENT—THREE-**

3  **DIMENSIONAL WORKS CAN INFRINGE TWO-DIMENSIONAL WORKS**

4

5  The MGA Parties object to Mattel's proposed instruction since, among other things,

6  it does not advise the jurors that in comparing an allegedly infringing 3-dimensional

7  work with a registered 2-dimensional work the "extrinsic/intrinsic" tests still apply.

8  (See MGA Parties' Proposed Jury Instruction No. 10C.) The MGA Parties also

9  object because Mattel's proposed instruction does not add the cautionary instruction

10  (necessary under the facts of this case) that the copyright in a two-dimensional work

11  only covers what is shown on the face of the work (i.e., does not include anything

12  that could arguably be implied by the 2-dimensional work). (See id.) The MGA

13  Parties further object to this instruction (and Mattel's other copyright instructions)

14  because it does not properly explain that the jury must consider separately each

15  alleged infringing act and/or product.  Thus, the instruction would mislead the jury

16  by suggesting that if any infringement at all is found, of any of the copyrights at

17  issue, Mattel should prevail as to the full scope of all alleged infringement.

18

19

20

21

22

23

24

25

26

27

28

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3        The proposed instruction does not suggest that the extrinsic/intrinsic test does

4    not apply to three-dimensional works that infringe two-dimensional works.  Indeed,

5    Mattel has proposed an instruction that describes the extrinsic/intrinsic test.  It

6    would be improperly duplicative, misleading and unnecessary to add yet another

7    reference to this proposed instruction.

8        The proposed instruction will not mislead the jury, as defendants suggest,

9    with respect to damages awardable based upon the scope of infringement.

10   Defendants' objection that the jury must consider each "infringing act" and

11   "product" separate misstates the law.  Defendants' objection that the jury must

12   consider each "infringing act" and "product" separately misstates the law.

13   Essentially, defendants contend that a Bratz doll would not infringe if defendants

14   copied the head from one of Bryant's drawings and the doll's body from another

15   drawing.  That is not the law.  This case is comparable to *Castle Rock Entm't v.*

16   *Carol Publishing Group, Inc*., 150 F.3d 132 (2d Cir. 1998), where the Second

17   Circuit held that a book entitled "Seinfeld Aptitude Test" infringed the plaintiff's

18   copyrights in numerous episodes of "Seinfeld," because even though the amount of

19   expression copied from each episode was relatively small.  *See id*. at 138 ("it would

20   elevate form over substance to conclude that *The SAT* 's copying of 643 fragments

21   from 84 individually copyrighted *Seinfeld* episodes is indistinguishable from a case

22   in which a 634-question trivia quiz book poses a few questions from each of 84

23   unrelated television programs, books, movies, or any combination of creative works

24   that do not constitute a discrete series of works.")

25       Here, as in *Castle Rock*, most of Bryant's drawings are a single series of

26   depictions of the same four characters (i.e., the original Bratz characters), developed

27   for a specific purpose (creating, pitching and developing Bratz dolls).  Accordingly,

28   it would be prejudicial and wholly artificial for the Court to instruct the jury to

-120-

1  consider each Bratz drawing separately.  Indeed, defendants do not cite any

2  authority to support their objection.  In any case, the proposed damages instructions,

3  which are also based upon the Ninth Circuit Model Instructions, make clear the

4  proper standards for damages determination.

5        Finally, contrary to defendants' unintelligible objection, Mattel's proposed

6  instruction does not suggest that elements that could be implied by, but are not seen

7  in, a two-dimensional work may be infringed.  It would be confusing and misleading

8  to modify the instruction to address this imagined statement of law.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO.___

# COPYRIGHT INFRINGEMENT—INTERMEDIATE WORKS

A copyright can be infringed by intermediate or preparatory works, including works prepared in the product development or marketing stage, that are substantially similar to a copyrighted work, regardless of whether the end product of the copying also infringes the copyright.

**Authority:**  *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1518-19 (9th Cir. 1993); *Walker v. Univ. Books, Inc.*, 602 F.2d 859, 864 (9th Cir. 1979); *Walt Disney Prods. v. Filmation Assocs.*, 628 F. Supp. 871, 875-76 (C.D. Cal. 1986).

# DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT INFRINGEMENT—INTERMEDIATE WORKS

The MGA Parties object to the inclusion of any instruction relating to alleged "intermediate works."  First, Mattel did not assert this theory in response to MGA's discovery requests directed to Mattel's theories of copyright liability and it would be unduly prejudicial to allow Mattel to raise this theory now after discovery is closed. In addition, the "intermediate works" doctrine is inapplicable to this case since it is a doctrine directed to the context of "reverse engineering" in the context of computers and computer software.  See, e.g., Sega Enters. Ltd. v. Accolade, Inc., 977 F.2d 1510 (9th Cir. 1992); see also Sony Computer Entm't v. Connectix Corp., 203 F.3d 596 (9th Cir. 2000); Adobe Sys. Inc. v. Southern Software Inc., 1998 U.S. Dist. LEXIS 1941 (N.D. Cal. Feb. 2, 1998); Atari Games Corp. v. Nintendo, Inc., 1993 U.S. Dist. LEXIS 6786 (N.D. Cal. May 18, 1993). The MGA Parties further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

1  **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3      Defendants' contention that the intermediate works doctrine is limited to cases

4  of reverse engineering of software is without merit.  Indeed, two of the cases cited in

5  support of the proposed instruction concern not software, but copyrightable artistic

6  works.  *Walker v. Univ. Books, Inc.*, 602 F.2d 859, 864 (9th Cir. 1979) (set of I-

7  Ching cards); *Walt Disney Prods. v. Filmation Assocs.*, 628 F. Supp. 871, 875-76

8  (C.D. Cal. 1986) (animated film).

9      Defendants' argument that they are surprised that Mattel contends that the

10  Bratz intermediate works infringe is disingenuous.  The process by which the Bratz

11  dolls were created has been a subject of extensive discovery, including expert

12  discovery.  Accordingly, defendants cannot articulate any prejudice from the

13  presentation of this instruction to the jury.  Nor do defendants show that this

14  "theory" was somehow un-disclosed, and the facts clearly were disclosed.

15      The proposed instruction will not mislead the jury, as defendants suggest,

16  with respect to damages awardable based upon the scope of infringement.

17  Defendants' objection that the jury must consider each "infringing act" and

18  "product" separate misstates the law.  Defendants' objection that the jury must

19  consider each "infringing act" and "product" separately misstates the law.

20  Essentially, defendants contend that a Bratz doll would not infringe if defendants

21  copied the head from one of Bryant's drawings and the doll's body from another

22  drawing.  That is not the law.  This case is comparable to *Castle Rock Entm't v.

23  Carol Publishing Group, Inc.*, 150 F.3d 132 (2d Cir. 1998), where the Second

24  Circuit held that a book entitled "Seinfeld Aptitude Test" infringed the plaintiff's

25  copyrights in numerous episodes of "Seinfeld," even though the amount of

26  expression copied from each episode was relatively small.  *See id.* at 138 ("it would

27  elevate form over substance to conclude that *The SAT* 's copying of 643 fragments

28  from 84 individually copyrighted *Seinfeld* episodes is indistinguishable from a case

-124-

1   in which a 634-question trivia quiz book poses a few questions from each of 84

2   unrelated television programs, books, movies, or any combination of creative works

3   that do not constitute a discrete series of works.")

4        Here, as in *Castle Rock*, most of Bryant's drawings are a single series of

5   depictions of the same four characters (i.e., the original Bratz characters), developed

6   for a specific purpose (creating, pitching and developing Bratz dolls).  Accordingly,

7   it would be prejudicial and wholly artificial for the Court to instruct the jury to

8   consider each Bratz drawing separately.  Indeed, defendants do not cite any

9   authority to support their objection.  In any case, the proposed damages instructions,

10  which are also based upon the Ninth Circuit Model Instructions, make clear the

11  proper standards for damages determination.

**MATTEL'S SPECIAL JURY INSTRUCTION NO. ___**

**COPYRIGHT INFRINGEMENT—ORIGINALITY[8]**

Your first task in assessing substantial similarity is to decide which parts of Carter Bryant's works are original.  An original work may include or incorporate elements inspired by prior works.  The original parts of the work so inspired are the parts created:

    1.    Independently by the work's creator; and

    2.    By use of at least some minimal creativity.

In copyright law, the "original element" of a work need not be new or novel.  Originality means "little more than a prohibition of actual copying."  The required level of originality is "minimal."

Carter Bryant and MGA have admitted that, as a whole, the Bratz drawings are original.

---

[8]   Mattel submits that it is for the Court to determine what elements of Carter Bryant's Bratz works, or combinations thereof, are original.  *See*, *e.g.*, *Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted work is a question of law.");  *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of fact, but the issue of protectibility/nonprotectibility is an issue of law.); *Coston v. Product Movers*, 1990 WL 56516 at *3 (E.D. Pa. 1990) ("The question of which aspects of plaintiffs' work are protectible expression as opposed to unprotectible idea is an issue of law.");  *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a finding of copyright infringement may involve questions of fact, the protectability of copyrighted material is a question of law).  If, however, an instruction on originality is to be given to the jury, Mattel respectfully requests that this proposed instruction be given.

Case No. CV 04-9049 SGL (RNBx)

MATTEL'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS

1          **Authority:**  9th Cir. Civ. Jury Instr. 17.12 (2007); *CDN, Inc. v. Kapes*,

2    197 F.3d 1256, 1259-60 (9th Cir. 1999); *Sid & Marty Krofft Television*

3    *Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1163 n.5 (9th Cir. 1977).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT INFRINGEMENT—ORIGINALITY

The MGA Parties object to this proposed instruction because it is an incomplete and inaccurate statement of 9th Circuit Civil Model Jury Instruction 17.12, and it includes additional inaccurate statements that are not part of the model instruction. Moreover, this instruction is simply another attempt by Mattel to obscure the "extrinsic" and "intrinsic" tests and to confuse the jury as to the proper meaning and application of these test. In advising the jurors that their "first task" related to substantial similarity is "to decide which parts of Carter Bryant's works are original," there is no explanation analytic dissection and filtering, and this will mislead and confuse the jury. This instruction is also unnecessary and will only serve to confuse the jury since the MGA Parties do not dispute that Bryant's sketches satisfy the low "originality" threshold necessary to copyrightability. In addition to being unnecessary, Mattel's phasing – that the MGA Parties have admitted originality "as a whole" – is confusing and meaningless. The MGA Parties further object to this instruction (and Mattel's other copyright instructions) because it does not properly explain that the jury must consider separately each alleged infringing act and/or product. Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should prevail as to the full scope of all alleged infringement.

1   **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3   This proposed instruction should not be necessary.  The question of

4   protectability is a question for the Court.  Defendants' contention that the jury

5   should be instructed on the process of analytical dissection or filtration is incorrect.

6   The determination of elements of a work which are protectable is a question of law

7   for the Court, not for the jury.  *See*, *e.g.*, *Newton v. Diamond*, 204 F. Supp. 1244,

8   1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted work is a

9   question of law.");  *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61

10   (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of fact, but

11   the issue of protectibility/nonprotectibility is an issue of law.); *Coston v. Product*

12   *Movers*, 1990 WL 56516 at *3 (E.D. Pa., 1990) ("The question of which aspects of

13   plaintiffs' work are protectible expression as opposed to unprotectible idea is an

14   issue of law."); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL

15   468496 at *2 (D. Del. 2005) (holding that while a finding of copyright infringement

16   may involve questions of fact, the protectability of copyrighted material is a

17   question of law); *Pivot Point Int'l, Inc. v. Charlene Prods.*, *Inc.*, 932 F. Supp. 220,

18   225 (N.D. Ill 1996) (the issue of whether a work is "copyrightable is a question of

19   law," and the "jury has nothing to do with this subject."); *ADA v. Delta Dental Plans*

20   *Ass'n*, 1996 U.S. Dist. LEXIS 5809 at *19 n. 15 (N.D. Ill. 1996) (although

21   copyrightability analysis necessarily requires a court to consider some facts

22   surrounding the works at issue, the inquiry "is far more heavily loaded with policy

23   implications than most other standards," making it appropriate for determination by

24   a court instead of a jury).

25   However, if the Court instructs the jury on this issue, Mattel is entitled to a

26   jury instruction on originality because defendants have raised the issue by

27   contending that Bryant based his Bratz drawings on prior art.  As required by the

28   Court, Mattel's proposed instruction mirrors the language of the Ninth Circuit Model

1   Instruction.  Defendants do not present any legitimate reason for the Court to deviate

2   from the Model Instruction.

3       Defendants complain that this proposed instruction is "unnecessary" because

4   they do not challenge the "originality" of Bryant's drawings, but the instruction

5   provides far more.  It also makes clear that any *parts* of the drawings not *copied*

6   from a prior work are original and protectable.  This correct statement of law must

7   be given.

8       The proposed instruction will not mislead the jury, as defendants suggest,

9   with respect to damages awardable based upon the scope of infringement.

10  Defendants' objection that the jury must consider each "infringing act" and

11  "product" separately misstates the law.  Essentially, defendants contend that a Bratz

12  doll would not infringe if defendants copied the head from one of Bryant's drawings

13  and the doll's body from another drawing.  That is not the law.  This case is

14  comparable to *Castle Rock Entm't v. Carol Publishing Group, Inc.*, 150 F.3d 132

15  (2d Cir. 1998), where the Second Circuit held that a book entitled "Seinfeld

16  Aptitude Test" infringed the plaintiff's copyrights in numerous episodes of

17  "Seinfeld," because even though the amount of expression copied from each episode

18  was relatively small. *See id*. at 138 ("it would elevate form over substance to

19  conclude that *The SAT* 's copying of 643 fragments from 84 individually

20  copyrighted *Seinfeld* episodes is indistinguishable from a case in which a 634-

21  question trivia quiz book poses a few questions from each of 84 unrelated television

22  programs, books, movies, or any combination of creative works that do not

23  constitute a discrete series of works.")

24      Here, as in *Castle Rock*, most of Bryant's drawings are a single series of

25  depictions of the same four characters (i.e., the original Bratz characters), developed

26  for a specific purpose (creating, pitching and developing Bratz dolls).  Accordingly,

27  it would be prejudicial and wholly artificial for the Court to instruct the jury to

28  consider each Bratz drawing separately.  Indeed, defendants do not cite any

1   authority to support their objection.  In any case, the proposed damages instructions,

2   which are also based upon the Ninth Circuit Model Instructions, make clear the

3   proper standards for damages determination.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## ORIGINALITY—COMBINATION OF UNPROTECTABLE ELEMENTS[9]

If you find that any elements of Mr. Bryant's drawings are not protectable, you must decide whether the combination of such elements is protectable. A combination of individual elements not eligible for copyright protection is eligible for copyright protection if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.

The fact that the Bratz dolls may have features similar to other dolls or other preexisting works does not mean that they do not infringe on the works in which Mattel claims ownership. If you find that the combination of features in the drawings in which Mattel claims ownership amounts to original expression, you may find the dolls to be infringing if their combination of features is substantially similar to the drawings.

---

[9] Mattel submits that it is for the Court to determine what elements of Carter Bryant's Bratz works, or combinations thereof, are original. *See, e.g., Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of elements in a copyrighted work is a question of law."); *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve findings of fact, but the issue of protectibility/nonprotectibility is an issue of law.); *Coston v. Product Movers*, 1990 WL 56516 at *3 (E.D. Pa. 1990) ("The question of which aspects of plaintiffs' work are protectible expression as opposed to unprotectible idea is an issue of law."); *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a finding of copyright infringement may involve questions of fact, the protectability of copyrighted material is a question of law). If, however, an instruction on originality is to be given to the jury, Mattel respectfully requests that this proposed instruction be given.

1    **Authority:**  *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135

2    (2d Cir. 2004) ("Even if the record had shown that many dolls possess upturned

3    noses, bow lips, and wide-spread eyes, it would not follow that each such doll –

4    assuming it was independently created and not copied from others – would not

5    enjoy protection from copying."); *Dollcraft Indus., Ltd. v. Well-Made Toy Mfg. Co.*,

6    479 F. Supp. 1105, 1114-15 (E.D.N.Y. 1978) ("[T]hat plaintiff's toys contained

7    features separately found on other dolls does not render their copyrights invalid.

8    Rather, the original combination of these features into new dolls makes the dolls

9    copyrightable."); *Fisher-Price Toys v. My-Toy Co.*, 385 F. Supp. 218, 219-20

10   (S.D.N.Y. 1974) (same); *cf. Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004).

## DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE ORIGINALITY—COMBINATION OF UNPROTECTABLE ELEMENTS

The MGA Parties object to this proposed instruction on the grounds that, in order to invoke this doctrine, Mattel must identify the specific unprotectible elements on which it bases this assertion.  See Todd v. Montana Silversmiths, Inc., 379 F. Supp. 2d 1110, 1112-13 (D. Col. 2005); see also George S. Chen Corp. v. Cadona Int'l, Inc., 2008 WL 152651, at *1 (9th Cir. Jan. 17, 2008) (plaintiff points to "no elements that, considered together, have a sufficient quantum of originality for copyright protection"). Discovery is closed.  Mattel has not identified in response to MGA's contention interrogatories, or otherwise, any combination of individual elements not eligible for copyright protection that it contends warrant copyright protection, and it would therefore be improper and prejudicial to allow Mattel to proceed under this theory of copyright infringement. Mattel's failure to identify unprotectible elements it believes warrants protection is not inadvertent; rather, it was an intentional strategy designed to avoid the need for Mattel to concede that many of the elements in the Bryant drawings are unprotectible and must be disregarded under the proper analytic dissection and filtering test. This instruction also improperly suggests that the jury could find infringement by combining different elements of different works.

Mattel's first sentence is misleading and not supported by any case law.  It is not the responsibility of the jury to decide that the combination doctrine is applicable.  Rather, it is Mattel's responsibility to raise the issue and identify what it claims is the protectible selection and arrangement.

The MGA Parties also object to this instruction on the grounds that it fails to instruct the jury that a claim of copyright infringement based on a combination of unprotectible

1    elements must meet a very high standard to be protectible.  <u>See, e.g.</u> <u>Satava v. Lowry</u>,

2    323 F.3d 805, 811 (9th Cir. 2003) ("we hold today that a combination of unprotectable

3    elements is eligible for copyright protection only if those elements are numerous

4    enough and their selection and arrangement original enough that their combination

5    constitutes an original work of authorship").  This proposed instruction is also defective

6    since it fails to instruct the jury that protection for a combination of unprotectible

7    elements is only entitled to "thin" protection.  <u>See, e.g.</u>, <u>Mattel v. Goldberger</u>, 365 F.3d

8    133, 135-6 (2d Cir. 2004); <u>Satava v. Lowry</u>, 323 F.3d 805, 812 (9th Cir. 2003); <u>Apple</u>

9    <u>Computer, Inc. v. Microsoft Corp.</u>, 35 F.3d 1435, 1446-47 (9th Cir. 1994); <u>Harper</u>

10   <u>House, Inc. v. Thomas Nelson, Inc.</u>, 889 F.2d 197, 205 (9th Cir. 1989); <u>Cosmos</u>

11   <u>Jewelry Ltd. v. Po Sun Hon Co.</u>, 470 F. Supp. 2d 1072, 1082-84 (C.D. Cal. 2006);

12   <u>Idema v. Dreamworks, Inc.</u>, 162 F. Supp. 2d 1129, 1178 (C.D. Cal. 2001).

13

14   The MGA Parties further object to this instruction (and Mattel's other copyright

15   instructions) because it does not properly explain that the jury must consider

16   separately each alleged infringing act and/or product.  Thus, the instruction would

17   mislead the jury by suggesting that if any infringement at all is found, of any of the

18   copyrights at issue, Mattel should prevail as to the full scope of all alleged

19   infringement.

20

21

22

23

24

25

26

27

28

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

This instruction is necessary in case the Court or the jury finds that any of the elements of the Bratz drawings are unprotectable.  Mattel's position, however, has been consistent: each element of the Bratz drawings is original, expressive and protectable.  Defendants offer no evidence to support their unfounded assertion that Mattel has sandbagged them in any way.

Defendants are incorrect as a matter of law that a work of visual art (as distinguished from a literary work or a computer program) may be broken down into original and non-original components, so that the combination of the non-original elements would be entitled only to thin protection.  *See, e.g.*, *Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002) ("The precise factors evaluated for literary works do not readily apply to art works.  Rather, a court looks to the similarity of the objective details in appearance."); Hon. Jon O. Newman, *New Lyrics for an Old Melody:  The Idea/Expression Dichotomy in the Computer Age*, 17 Cardozo Arts & Ent. L. J. 691, 698 (1999) (filtration analysis should not be applied in cases of visual works because "one cannot divide a visual work into neat layers of abstraction in precisely the same manner one could with a text."); *id.* at 697, nn.36-37 (criticizing *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280 (10th Cir. 1999), which applied filtration in a doll case).  Further, in the Ninth Circuit, it is proper to consider ideas as part of the extrinsic test.  *See, e.g., Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (holding that, as part of the extrinsic test, one must "consider[] whether two works share a similarity of *ideas* and expression") (emphasis added); *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (same).

Moreover, defendants ignore that creative expression is original even if "inspired by" other works, and that elements are protectable so long as they are not slavishly copied.  *See, e.g., Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133,

1   136 (2d Cir. 2004)  ("One artist's version of a doll face with upturned nose, bow

2   lips, and widely spaced eyes will be irresistible to an eight-year old collector. …

3   We can surmise that in the highly competitive, billion-dollar doll industry, getting

4   the doll's face and expression exactly right is crucial to success.").

5      And defendants ignore that creative *compilations* of non-original components

6   are subject to full protection under copyright law.  *See Dollcraft Indus., Ltd. v. Well-*

7   *Made Toy Mfg. Co.*, 479 F. Supp. 1105, 1114-15 (E.D.N.Y. 1978).  Defendants'

8   argument that such compilations are entitled to "thin" copyright protection is

9   without merit because their authorities address not creative works such as dolls or

10  drawings, but rather utilitarian objects such as jewelry or computer interfaces where

11  the range of expression is limited.  The millenia-long history of visual art shows that

12  the range of creative expression in visual works is not limited, as it may be in the

13  case of computer software, factual works or jewelry.  Defendants' citation of *Mattel*

14  *v. Goldberger Doll Mfg. Co.* is puzzling as that case does not discuss protectability

15  of original compilations of uncopyrightable elements.

16     Defendants' objection that the jury must consider each "infringing act" and

17  "product" separately misstates the law.  Essentially, defendants contend that a Bratz

18  doll would not infringe if defendants copied the head from one of Bryant's drawings

19  and the doll's body from another drawing.  That is not the law.  This case is

20  comparable to *Castle Rock Entm't v. Carol Publishing Group, Inc.*, 150 F.3d 132

21  (2d Cir. 1998), where the Second Circuit held that a book entitled "Seinfeld

22  Aptitude Test" infringed the plaintiff's copyrights in numerous episodes of

23  "Seinfeld," because even though the amount of expression copied from each episode

24  was relatively small.  *See id*. at 138 ("it would elevate form over substance to

25  conclude that *The SAT* 's copying of 643 fragments from 84 individually

26  copyrighted *Seinfeld* episodes is indistinguishable from a case in which a 634-

27  question trivia quiz book poses a few questions from each of 84 unrelated television

28

1  programs, books, movies, or any combination of creative works that do not

2  constitute a discrete series of works.")

3         Here, as in *Castle Rock*, most of Bryant's drawings are a single series of

4  depictions of the same four characters (i.e., the original Bratz characters), developed

5  for a specific purpose (creating, pitching and developing Bratz dolls).  Accordingly,

6  it would be prejudicial and wholly artificial for the Court to instruct the jury to

7  consider each Bratz drawing separately.  Indeed, defendants do not cite any

8  authority to support their objection.  In any case, the proposed damages instructions,

9  which are also based upon the Ninth Circuit Model Instructions, make clear the

10  proper standards for damages determination.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS

**MATTEL'S SPECIAL JURY INSTRUCTION NO.**

**PRESUMPTION OF COPYRIGHTABILITY**

A copyright registration obtained within five years of the work's publication creates a presumption of the validity of the copyright and originality of the work. This presumption shifts the burden of proof to the defendants to demonstrate why the works at issue are not copyrightable.  In this case, it is undisputed that both Mattel and MGA have obtained copyright registrations of certain of Carter Bryant's Bratz drawings.

**Authority:**  17 U.S.C. § 410(c); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1019 (9th Cir. 1985) ("[R]egistration by the Copyright Office is prima facie evidence of copyrightability.  This presumption shifts the burden of proof to the challenging party to demonstrate why the item in question is not copyrightable.") (citations omitted); *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989) ("The district court was entitled to rely on the copyright registration as prima facie evidence of originality.").

## **DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED**
## **INSTRUCTION RE PRESUMPTION OF COPYRIGHTABILITY**

The MGA Parties object to the instruction on the grounds that they are not disputing that the Bryant sketches contain sufficient originality to meet the low threshold of copyrightability. The MGA Parties also object to this instruction because it is unnecessary and can only confuse the jury.  Finally, the MGA Parties also object to this instruction to the extent that it improperly and inaccurately deviates from 9th Circuit Civil Model Jury Instruction 17.12.

1

# MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION

2

3        Mattel is entitled to a jury instruction on originality because defendants have
4  raised the issue by contending that Bryant based his Bratz drawings on prior art.  In
5  any event, this brief instruction merely sets out the law on the presumption of
6  copyrightability and originality, which cannot possibly confuse the jury.  Notably,
7  defendants do not dispute this law.  To the extent the Court permits the jury to
8  consider questions of originality and protectability, this instruction should be given.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. ___

## COPYRIGHT INFRINGEMENT—INTENT TO INFRINGE NOT NECESSARY FOR LIABILITY

Direct copyright infringement does not require intent or any particular state of mind.  A defendant may be held liable for copyright infringement even if he believes in good faith that he is not infringing a copyright.

**Authority:**  *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978) ("[E]ven when the defendant believes in good faith that he is not infringing a copyright, he may be found liable."); *L.A. News Serv. v. Conus Communications Co.*, 969 F. Supp. 579, 584 (C.D. Cal. 1997) ("Direct infringement does not require intent or any particular state of mind.").

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS

# DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT INFRINGEMENT—INTENT TO INFRINGE NOT NECESSARY FOR LIABILITY

The MGA Parties object to this instruction in that it fails to advise the jury that this instruction does not in any way undercut the defendants' position that the BRATZ dolls were a product of independent creation.  (See MGA Parties' Proposed Jury Instruction Nos. 7C, 11C.)

1     **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3         This proposed instruction is an instruction regarding intent.  It has nothing to

4    do with "independent creation."  Defendants' objection is wholly misplaced.

5    Moreover, defendants' objection is improper because defendants did not assert the

6    affirmative defense of independent creation in their answers and have therefore

7    waived such defense.  *See Harbeson v. Parke Davis, Inc.*, 746 F.2d 517, 520 (9th

8    Cir. 1984) (unasserted affirmative defenses are waived); *Bethea v. Burnett*, 2005

9    WL 1720631(C.D. Cal. 2005) (noting that independent creation is an affirmative

10   defense).  Nor did they disclose this purported defense in discovery.  *See* MGA

11   Parties' Response to Mattel Inc.'s Amended Supplemental Interrogatory Regarding

12   Defendants' Affirmative Defenses, dated January 7, 2008.

13        Further, defendants' reliance on the independent creation defense is

14   misplaced.  The independent creation defense applies where the accused infringer

15   shows that he created the work prior to or wholly independently of the infringed

16   work (*i.e.*, where two different people happen to create similar works).  For instance,

17   an author accused of copying another writer's novel can establish independent

18   creation by showing drafts of his work that pre-date his access to the allegedly-

19   infringed novel.  *See, e.g.*, *Dimmie v. Carey*, 88 F. Supp. 2d 142 (S.D.N.Y 2000)

20   (finding for the defendant singer and composer where the singer produced extensive

21   notes and demo recordings demonstrating independent development of the allegedly

22   infringing hit song).  In this case, however, the author of the infringed work (Bryant)

23   also worked and continues to work on a series of infringing works, with access to

24   the infringed work before, during and after the infringing work was created.  In this

25   context, any reference to "independent creation" is not only meritless as a matter of

26   law and unsupported by the evidence, but would also confuse the jury.  Had such a

27   "defense" been pleaded, it would have been appropriate for summary adjudication.

28

**<u>17.13</u>**

**<u>COPYRIGHT INTERESTS—DERIVATIVE WORKS</u>**

**<u>(17 U.S.C. §§ 101, 106(2))</u>**


A copyright owner is entitled to exclude others from creating derivative works based upon the owner's copyrighted work.  The term derivative work refers to a work based on one or more pre-existing works, such as drawings or dolls.  Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming or adapting the copyrighted work without the owner's permission.

**Authority:**  9th Cir. Civ. Jury Instr. 17.13 (2007).

# DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT INTERESTS—DERIVATIVE WORKS (17 U.S.C. §§ 101, 106(2))

The MGA Parties object to this instruction on the grounds that this instruction is an improper effort to confuse the jury concerning the proper test to be applied in determining whether any of the BRATZ dolls infringe valid copyrights in any of the Bryant sketches, that the jury determines to be owned by Mattel in connection with the Phase 1(a) trial.  Regardless of whether an alleged infringing work could arguably be classified as a "derivative work," the standard of infringement is the same, requiring the full application of and analysis under the extrinsic and intrinsic tests.

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3        As required by the Court, the proposed instruction mirrors the language of the

4   Model Instruction.  Defendants do not present any reason for the Court to deviate

5   from its standing order requiring the use of Model Instructions whenever possible,

6   nor do they contend that the Model Instruction is incorrect.

7        Defendants are also incorrect that there is no "derivative works' issue" in this

8   case.  Generations of the Bratz dolls that followed the first set of models are classic

9   derivative works, and thus infringe Mattel's copyrights.

10        Defendants' demand that the model instruction be modified to address the

11   standard for finding infringement is without merit.  This standard is addressed by

12   several other instructions, and need not be repeated here.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>17.21</u>**

**<u>DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT</u>**

A defendant may be liable for copyright infringement engaged in by another if he/it knew or had reason to know of the infringing activity and intentionally materially contributes to that infringing activity.

If you find that MGA infringed Mattel's copyright in Bratz works, you may proceed to consider Mattel's claim that MGA's CEO Isaac Larian and/or MGA Hong Kong contributorily infringed that copyright.  To prove copyright infringement, Mattel must prove both of the following elements by a preponderance of the evidence:

1.      Mr. Larian and/or MGA Hong Kong knew or had reason to know of the infringing activity of MGA; and

2.      Mr. Larian and/or MGA Hong Kong intentionally materially contributed to MGA's infringing activity.

If you find that MGA infringed Mattel's copyright and you also find that Mattel has proved both of these elements, your verdict should be for Mattel.  If, on the other hand, Mattel has failed to prove either or both of these elements, your verdict should be for the defendants.

**Authority:**  9th Cir. Civ. Jury Instr. 17.21 (2007).

# DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE DERIVATIVE LIABILITY—CONTRIBUTORY INFRINGEMENT

The MGA Parties object to this instruction because (1) it fails to clarify for the jury the requirements of showing intentional inducement (see Errata to Jury Instructions submitted by Bryant on April 15, 2008); and (2) it improperly clusters all defendants together in such a way that it suggests to the jury that a finding of contributory liability against one defendant would be sufficient to enter a finding against all defendants. The MGA Parties further object to this instruction (and Mattel's other copyright damages instructions) because it does not properly explain that the jury must base any damages award on its specific findings of infringement, by considering separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should recover damages based on all of the alleged infringement.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

As required by the Court, the proposed instruction mirrors the language of the Model Instruction.  Defendants do not present any legitimate reason for the Court to deviate from the Model Instruction.

The proposed instruction does not "improperly cluster[] all defendants together."  Rather, by employing the "and/or" conjunction, the proposed instruction properly instructs the jury that they should judge each defendant's conduct individually.  The only other alternative would be to give a separate identical instruction for each defendant, which would be impractical and confusing.

The proposed instruction will not mislead the jury, as defendants suggest, with respect to damages awardable based upon the scope of infringement. Defendants' objection that the jury must consider each "infringing act" and "product" separately misstates the law.  Essentially, defendants contend that a Bratz doll would not infringe if defendants copied the head from one of Bryant's drawings and the doll's body from another drawing.  That is not the law.  This case is comparable to *Castle Rock Entm't v. Carol Publishing Group, Inc*., 150 F.3d 132 (2d Cir. 1998), where the Second Circuit held that a book entitled "Seinfeld Aptitude Test" infringed the plaintiff's copyrights in numerous episodes of "Seinfeld," even though the amount of expression copied from each episode was relatively small.  *See id*. at 138 ("it would elevate form over substance to conclude that *The SAT* 's copying of 643 fragments from 84 individually copyrighted *Seinfeld* episodes is indistinguishable from a case in which a 634-question trivia quiz book poses a few questions from each of 84 unrelated television programs, books, movies, or any combination of creative works that do not constitute a discrete series of works.")

Here, as in *Castle Rock*, most of Bryant's drawings are a single series of depictions of the same four characters (i.e., the original Bratz characters), developed

for a specific purpose (creating, pitching and developing Bratz dolls).  Accordingly, it would be prejudicial and wholly artificial for the Court to instruct the jury to consider each Bratz drawing separately.  Indeed, defendants do not cite any authority to support their objection.  In any case, the proposed damages instructions, which are also based upon the Ninth Circuit Model Instructions, make clear the proper standards for damages determination.

## MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## COPYRIGHT—AFFIRMATIVE DEFENSE—GOOD FAITH TRANSFER

The defendants claim that their rights in the Bratz works created by Carter Bryant should prevail over Mattel's rights in those works because Mr. Bryant transferred the rights to MGA after he transferred them to Mattel and MGA obtained the rights in good faith.  In order to establish that MGA's later-acquired rights in the Bratz works should prevail, the defendants have the burden of proving by a preponderance of the evidence that MGA:

1.      Received the transfer of rights in Bratz works in good faith and without notice of Mr. Bryant's earlier transfer to Mattel;

2.      Paid valuable consideration;

3.      Registered each of the copyrights in Bratz works with the Copyright Office; and

4.       Duly recorded the transfer of the rights to MGA, i.e., the MGA/Bryant assignment agreement, before Mattel recorded its transfer.

To duly record the transfer, as required for the fourth element, MGA must have submitted to the Copyright Office the MGA/Bryant assignment agreement such that the recorded document, or material attached to it, specifically identifies the copyrighted works to which the assignment pertains.  A registration of a copyright is not a substitute for recordation.

It is undisputed in this case that Mr. Bryant's assignment to MGA of Bratz works has not been recorded.

1

**Authority:** 17 U.S.C. § 205(d); *Peer Int'l Corp. v. Latin Amer. Music Corp.*,

2 161 F. Supp. 2d 38, 47-48 (D.P.R. 2001); Compendium II, *Copyright Office*

3 *Practices*, Chapters 1602.2, 1604.02.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3

# DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT—AFFIRMATIVE DEFENSE—GOOD FAITH TRANSFER

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

The MGA Parties object to this proposed instruction to the extent that the term "Bratz works" is improper. The MGA Parties also object to the following sentence: "It is undisputed in this case that Mr. Bryant's assignment to MGA of Bratz works has not been recorded."  Among other things, MGA's registrations each specifically note that MGA's ownership in the work at issue is by "assignment," which is all that is required by 17 U.S.C. § 205(d).  This instruction also fails to note that there is no dispute that MGA's registrations of the works at issue were recorded with the Copyright Office long before Mattel's purported registrations.  In addition, as the MGA Parties argued in opposing Mattel's motion for partial summary judgment, where, as here, a plaintiff has *actual* knowledge of the assignment, the recordation element should not be strictly construed and the jury should be permitted to consider whether plaintiff's actual knowledge suffices to establish the recordation element of the section 205(d) defense. (See MGA MSJ Opp'n at 30-31, citing 2 Nimmer on Copyright § 7.16 (2007).)

19
20
21
22
23
24
25
26
27
28

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

This proposed instruction conforms to the requirements of the statute. Although defendants object to the term Mattel "Bratz works," they fail to offer any alternative term that would encompass the materials in dispute. Accordingly, their objection to that term should be overruled.

Defendants' objection to the language that "[i]t is undisputed in this case that Mr. Bryant's assignment to MGA of Bratz works has not been recorded" is without merit because defendants admitted that they never recorded the assignment document itself. *See* MGA's Responses to Mattel's Third Set of Requests for Admission Nos. 241-44, 249-52.

Defendants' objection that MGA's registrations noted that MGA's ownership in the work at issue is by "assignment" is of no moment because the statute requires recordation. Section 205(d) by its own terms pertains to transfers, not registrations. *See* 17 U.S.C. § 205(d). Under the statute, the transferee who first registers *and records* prevails over any later recording transferee. *See id.* ("later transfer prevails if recorded in such manner" (i.e., the manner required to give constructive notice under subsection (c)); *see also id.* § 205(c) (for recordation to give constructive notice, it must be "(1) [a] document … [that] specifically identifies the [transferred] work …; and (2) registration must be made for the work"). *See also Peer Int'l Corp. v. Latin American Music Corp.*, 161 F. Supp. 2d 38, 48 (D.P.R. 2001)).

Finally, because Section 205(d) expressly requires recordation of the transfer document itself, defendants' contention that the instruction should inform the jury that defendants registered *copyrights* in Bryant's drawings is erroneous, and would be confusing to the jury. Defendants are also wrong in suggesting that recordation is optional, or that the jury should not "strictly construe" the recordation requirement if Mattel had actual knowledge of the assignment. Defendants cite no case law to support this erroneous assertion, and the language of the statute and information

1  from the Copyright Office is unambiguous.  Recordation of the transfer instrument

2  itself is required.  *See* 17 U.S.C. § 205(d); *Peer Int'l Corp. v. Latin Amer. Music*

3  *Corp.*, 161 F. Supp. 2d 38, 47-48 (D.P.R. 2001); Compendium II, *Copyright Office*

4  *Practices*, Chapters 1602.2, 1604.02.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**17.22**

**COPYRIGHT—DAMAGES--(17 U.S.C. § 504)**

If you find for the plaintiff, Mattel, on any of its copyright infringement claims against the defendants, you must determine Mattel's damages.  Mattel is entitled to recover the actual damages suffered as a result of the infringement.  In addition, Mattel is also entitled to recover any profits of the defendants attributable to the infringement.  Mattel must prove damages by a preponderance of the evidence.

**Authority:**  9th Cir. Civ. Jury Instr. 17.22 (2007).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT—DAMAGES (17 U.S.C. § 504)**

The MGA Parties object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant. Further,  the MGA Parties object to this instruction (and Mattel's other copyright damages instructions) because it does not properly explain that the jury must base any damages award on its specific findings of infringement, by considering separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should recover damages based on all of the alleged infringement.

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3         Mattel's proposed instruction conforms to the Ninth Circuit Model Instruction,

4    as required by the Court.  *See* Court's Standing Scheduling Order, at 9.

5    Accordingly, defendants' objections to the form of the proposed instruction should

6    be overruled.  There is no basis for defendants to object that the model instruction

7    does not adequately explain the measure of damages to the jury, nor do they cite any

8    authority in support of their contention that additional specificity is necessary.

9    Defendants are simply trying to overcomplicate the instruction and confuse the jury.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**17.24**

**COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS**

**(17 U.S.C. § 504(b))**

Mattel is entitled to any profits of the defendants attributable to the infringement.

You may make an award of the defendant's profits only if you find that the plaintiff showed a causal relationship between the infringement and the defendant's gross revenue.

The defendant's profit is determined by deducting expenses from the defendant's gross revenue.

The defendant's gross revenue is all of the defendant's receipts from sale of a product containing or using the copyrighted work or associated with the infringement.  Mattel has the burden of proving the defendants' gross revenue by a preponderance of the evidence.

Expenses are all operating costs and production costs incurred in producing the defendant's gross revenue.  The defendants have the burden of proving the defendants' expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement.  The defendants have the burden of proving the portion of the profit, if any, attributable to factors other than infringing the copyrighted work.

**Authority:**  9th Cir. Civ. Jury Instr. 17.24 (2007) (modified).

# DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED
# INSTRUCTION RE COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS
# (17 U.S.C. § 504(b))

Contrary to Mattel's reference, this instruction is not part of 9th Circuit Civil Model Jury Instruction 17.24 and it does not accurately state the law. The MGA Parties further object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant. The MGA Parties further object to this instruction (and Mattel's other copyright damages instructions) because it does not properly explain that the jury must base any damages award on its specific findings of infringement, by considering separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should recover damages based on all of the alleged infringement.  Finally, the MGA Parties object to this instruction because it fails to advise the jurors that they may not include in an award of profits any amount that they took into account in determining actual damages.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Mattel's proposed instruction conforms to the Ninth Circuit Model Instruction, as required by the Court. *See* Court's Standing Scheduling Order, at 9.  Mattel is therefore perplexed by defendants' objection that the proposed instruction "is not part of . . . 17.24 and it does not accurately state the law."  In any event, because Model Instruction 17.24 reflects the most recent articulation of the law, defendants' objections to the form of the proposed instruction should be overruled.  There is no basis for defendants to object that the model instruction does not adequately explain the measure of damages to the jury, nor do they cite any authority in support of their contention that additional specificity is necessary.  The instruction makes clear that the jury should only award profits if Mattel "showed a causal relationship between the infringement and the defendant's gross revenue."  Defendants are simply trying to overcomplicate the instruction and confuse the jury.  Defendants' objection that the instruction fails to inform the jury that they should not include in an award of profits "any amount that they took into account in determining actual damages" should be overruled because the proposed instructions and special verdict forms ask the jury to calculate damages as profits only.  Accordingly, this statement is confusing and unnecessary.

**<u>MATTEL'S SPECIAL JURY INSTRUCTION NO.   </u>**

**<u>COPYRIGHT—DAMAGES—APPORTIONMENT OF PROFITS</u>**

      In determining what portion of the defendants' profits are attributable to copyright infringement, the benefit of the doubt should be given to Mattel, and not defendants.

      **Authority:**  9th Cir. Civ. Jury Instr. 17.24, comments (2007); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1549 (9th Cir. 1989) ("In performing the apportionment, the benefit of the doubt must always be given to the plaintiff, not the defendant . . . .").

Case No. CV 04-9049 SGL (RNBx)

MATTEL'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS

## DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT—DAMAGES—APPORTIONMENT OF PROFITS

The MGA Parties object to the instruction insofar as it suggests that MGA must prove the apportionment of its profits with precision.   All that the law requires is a "reasonable and just apportionment." Abend v. MCA, Inc., 863 F.2d 1465, 1480 (9th Cir. 1988) ("[C]ourts cannot be expected to determine with 'mathematical exactness' an apportionment of profits."); see also Sheldon v. Metro-Goldwyn Pictures Corp., 106 F.2d 45, 51 (2d Cir. 1939) (explaining that courts will make "the best estimate [they] can, even though it is really no more than a guess."); Caffey v. Cook, 409 F. Supp. 2d 484, 506 (S.D.N.Y. 2006) ("Apportionment is 'not an area susceptible to precise measurement' … particularly where the analysis does not rest on quantifiable factors such as minutes, pages or lines incorporating the infringed work,  but rather on the incorporation of the infringed work into a new presentation."); accord Sygma Photo News, Inc. v. High Soc'y Magazine, Inc., 778 F.2d 89, 95 (2d Cir. 1985) (finding that the trial court "correctly held that want of precision is not a ground for denying apportionment altogether."); Multitherm Corp. v. Fuhr, 1991 U.S. Dist. LEXIS 10475, at *47 (D. Pa. July 24, 1991) (recognizing "that this measure of damages is imprecise" but that all that was required was a "reasonable and just apportionment."); cf. Walker v. Forbes, Inc., 28 F.3d 409, 414 (4th Cir. 1994) (upholding trial court's jury instruction stating that "[i]t is not required that [the defendant] prove these elements to a mathematical exactness.   They must only prove them to a reasonable approximation…."). For this reason, the Fourth Circuit in Walker upheld the trial court's rejection of the very instruction Mattel proposes here. Id. (upholding rejection of plaintiff's proposed instruction that "Any error or doubt in your mind about the apportionment must be resolved in favor of the Plaintiff").

The MGA Parties further object to the proposed jury instruction insofar as it suggests that when infringing and non-infringing elements "cannot readily be separated," all of the infringer's indirect profits should be awarded to the copyright owner.  That is not the law.  See Cream Records, Inc., v. Jos. Schlitz Brewing Co., 754 F.2d 826, 828 (9th Cir. 1985) ("Although the statute imposes upon the infringer the burden of showing "the elements of profit attributable to factors other than the copyrighted work," 17 U.S.C. § 504(b), nonetheless where it is clear ... that not all of the profits are attributable to the infringing material, the copyright owner is not entitled to recover all of those profits merely because the infringer fails to establish with certainty the portion attributable to the non-infringing elements.").

Moreover, the MGA Parties object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant.

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3         Defendants' objections to this proposed instruction should be overruled.

4    Nothing in this instruction "suggests" that defendants must prove apportionment

5    with "mathematical exactness" or that all of defendants' profits should be awarded to

6    Mattel if apportionment is difficult.  Mattel's proposed instruction simply informs

7    the jury that, in apportioning profits as between infringing and non-infringing

8    activities, the benefit of the doubt is to be given to Mattel.  This is supported by the

9    law.  *See* 9th Cir. Civ. Jury Instr. 17.24, comments (2007) (nothing that the law in

10   the Ninth Circuit is that "the benefit of the doubt in apportioning profits is given to

11   the plaintiff.");  *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545,

12   1549 (9th Cir. 1989) ("In performing the apportionment, the benefit of the doubt

13   must always be given to the plaintiff, not the defendant . . . .").

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3

**MATTEL'S SPECIAL JURY INSTRUCTION NO. ___**

**COPYRIGHT—DAMAGES—INDIRECT PROFITS**

4     Indirect profits are the defendant's profits with a less direct connection or link

5 to the infringement.  A plaintiff such as Mattel may be entitled to indirect profits in

6 addition to direct profits.  To recover indirect profits, Mattel must establish a causal

7 relationship between the infringement and the profits generated indirectly from such

8 infringement.

9     In other words, Mattel must offer some evidence that the infringement at least

10 partially caused the profits that the infringer generated as a result of the

11 infringement.

12

13    **Authority:**  9th Cir. Civ. Jury Instr. 17.24 (2007); *Polar Bear Prods., Inc. v.*

14 *Timex Corp.*, 384 F.3d 700, 710-11, 714 n.10 (9th Cir. 2004).

15
16
17
18
19
20
21
22
23
24
25
26
27
28

Case No. CV 04-9049 SGL (RNBx)

MATTEL'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS

## DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT—DAMAGES—INDIRECT PROFITS

Contrary to Mattel's reference, this instruction is not part of 9th Circuit Civil Model Jury Instruction 17.24 and misstates the law.  Specifically, the MGA Parties object insofar as Mattel's proposed jury instruction mischaracterizes Mattel's burden of proof. To recover indirect profits, Mattel "must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." Mackie v. Rieser, 296 F.3d 909, 915-16 (9th Cir. 2002).  The MGA Parties also object to the proposed instruction insofar as it confuses the defendant's obligation to apportion elements of indirect profit attributable to factors other than the infringement with the plaintiff's initial burden to prove a causal relationship between the infringement and the indirect profits at issue.  Mackie, 296 F.3d at 915 ("[T]here must first be a demonstration that the infringing acts had an effect on profits before the parties can wrangle about apportionment.").  Moreover, the MGA Parties object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant.

The MGA Parties also object to this instruction (and Mattel's other copyright damages instructions) because it does not properly explain that the jury must base any damages award on its specific findings of infringement, by considering separately each alleged infringing act and/or product.  Thus, the instruction would mislead the jury by suggesting that if any infringement at all is found, of any of the copyrights at issue, Mattel should recover damages based on all of the alleged infringement. Finally, the MGA Parties also object to this instruction because it is unnecessary and improper and can only confuse and mislead the jury.

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3        Mattel's proposed instruction explains to the jury that Mattel seeks indirect

4    profits as well as direct profits generated as a result of defendants' copyright

5    infringement.  This is supported by the Ninth Circuit Model Instruction.  *See* 9th

6    Cir. Civ. Jury Instr. 17.24 (2007) ("You may make an award of the defendant's

7    profits only if you find that the plaintiff showed a causal relationship between the

8    infringement and the [profits generated indirectly from the infringement]

9    [defendant's gross revenue].").  A brief additional instruction regarding indirect

10   profits is appropriate because Mattel conformed the model instruction to relate to

11   defendants' gross revenue, and separate instructions are less confusing to the jury.

12       There is no basis for defendants to object that the proposed instruction does

13   not adequately explain the measure of damages to the jury.  The instruction makes

14   clear that Mattel bears the burden of establishing "a causal relationship between the

15   infringement and the profits generated indirectly from such infringement."  Nothing

16   more is necessary.  None of the additional "explanations" requested by defendants

17   are reflected in any of the Ninth Circuit Model Instructions regarding copyright

18   damages.  Defendants are simply trying to overcomplicate the instructions and

19   confuse the jury.

20

21

22

23

24

25

26

27

28

# MATTEL'S SPECIAL JURY INSTRUCTION NO. ___
## COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT

Mattel also claims that defendants engaged in willful infringement of Mattel's copyrights.  An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:

1.     The defendant engaged in acts that infringed the copyright; and

2.     The defendant knew that those acts infringed the copyright.

A defendant cannot deduct overhead expenses, operating expenses or taxes from his/its gross revenue when the copyright infringement is willful.  You may deduct defendants' production costs only if defendants can demonstrate that the costs actually assisted in the production, distribution or sale of the infringing product(s).

**Authority:**  9th Cir. Civ. Jury Instr. 17.27 (2007); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000) (noting that willful infringers are not permitted to deduct income taxes); *Kamar Int'l, Inc. v. Russ Berrie and Co., Inc.*, 752 F.2d 1326, 1331-32 (9th Cir. 1982) ("[a] portion of an infringer's overhead properly may be deducted from gross revenues to arrive at profits, at least where the infringement was not willful, conscious, or deliberate.") (emphasis added); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 53 (2d Cir. 1939) (a willful infringer may not deduct its income taxes); *Saxon v. Blann*, 968 F.2d 676, 681 (8th Cir. 1992) (a willful infringer may not deduct overhead expenses); *Jarvis v. A & M Records*, 827 F. Supp. 282, 294 (1993) ("[I]f defendant's conduct is willful, overhead may not be deducted"); *Liu v. Price Waterhouse LLP*, 2000 WL 1644585, *6  (N.D. Ill. 2000) (approving jury instruction barring deduction of overhead if the jury were to find willful infringement); 5 Melville B. Nimmer & David Nimmer, *Nimmer on*

1   *Copyright*, § 14.03[C][2] (2006) (it is "settled law" that infringers are not entitled to

2   income tax deductions).

**DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT**

The MGA Parties object to this proposed instruction because Mattel previously conceded that it is not contending a willful infringement by the MGA Parties and Bryant. If it were, then Mattel's instruction that good faith is not a relevant inquiry on copyright infringement should be withdrawn. Moreover, the MGA Parties object to this proposed instruction to the extent that it appears to seek "statutory" damages as described in 17 U.S.C. § 504(c), and Mattel is not seeking statutory damages in this case, which is presumably why Mattel has not included in its proposed instructions 9th Circuit Civil Model Jury Instruction 17.25. As Mattel stated in connection with its summary judgment motion in response to the MGA Parties' "good faith" affirmative defense:

> MGA suggests that Mattel has subjected itself to such a defense by "indicating that Mattel intends to seek enhanced statutory damages under 17 U.S.C. 504(c)," which does impose a scienter requirement. (MGA Opp. 32.) But MGA's prognostication is off-base: Mattel does ***not*** intend to seek enhanced statutory damages. And Mattel's inclusion in its complaint of words like "knowingly" and "deliberately" do not change the legal elements of ordinary copyright infringement."

(Mattel Inc.'s Reply Memorandum Of Points And Authorities In Further Support Of It's Motion For Partial Summary Judgment at 33 (emphasis in original).)

The MGA Parties also object to this instruction because it fails to ensure that the jury distinguishes among the defendants and makes appropriate findings with respect to each defendant. The MGA Parties further object to this instruction (and Mattel's other copyright damages instructions) because it does not properly explain

1   that the jury must base any damages award on its specific findings of infringement,

2   by considering separately each alleged infringing act and/or product.  Thus, the

3   instruction would mislead the jury by suggesting that if any infringement at all is

4   found, of any of the copyrights at issue, Mattel should recover damages based on all

5   of the alleged infringement.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1     **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3        Defendants are correct that 17 U.S.C. § 504(c) relates to statutory damages.

4  Mattel does not seek statutory damages pursuant to § 504(c)(1) in this case.  But

5  willful infringement is relevant to the determination of Mattel's damages relating to

6  defendants' profits.  A defendant cannot deduct certain expenses, such as taxes and

7  overhead costs, from its gross revenue when the copyright infringement is willful.

8  *See, e.g.*, *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000)

9  (holding that willful infringer not permitted to deduct income taxes); *Kamar Int'l,*

10  *Inc. v. Russ Berrie and Co., Inc*., 752 F.2d 1326, 1331-32 (9th Cir. 1982) (noting

11  that "[a] portion of an infringer's overhead properly may be deducted from gross

12  revenues to arrive at profits, *at least where the infringement was not willful,*

13  *conscious, or deliberate*.") (emphasis added); *Sheldon v. Metro-Goldwyn Pictures*

14  *Corp.*, 106 F.2d 45, 53 (2d Cir. 1939) (a willful infringer may not deduct its income

15  taxes); *Saxon v. Blann*, 968 F.2d 676, 681 (8th Cir. 1992) (a willful infringer may

16  not deduct overhead expenses); *Jarvis v. A & M Records*, 827 F. Supp. 282, 294

17  (1993) ("[I]f defendant's conduct is willful, overhead may not be deducted"); *Liu v.*

18  *Price Waterhouse LLP*, 2000 WL 1644585, *6  (N.D. Ill. 2000) (approving jury

19  instruction barring deduction of overhead if the jury were to find willful

20  infringement); 5 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, §

21  14.03[C][2] (2006) (it is "settled law" that infringers are not entitled to income tax

22  deductions).  Accordingly, the proposed instruction is appropriate even though

23  Mattel is not seeking statutory damages.

24       There is no basis for defendants to object that the instruction does not

25  adequately explain the measure of damages to the jury, nor do they cite any

26  authority in support of their contention that additional specificity is necessary.

27  Defendants are simply trying to overcomplicate the instruction and confuse the jury.

28

**Damages Related to Phase 1A Claims**

**CACI 3901**

**INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED**

**FOR INTENTIONAL INTERFERENCE WITH**

**CONTRACTUAL RELATIONS**

In Phase 1A, you determined that Mattel had proved its claim for intentional interference with contractual relations against the defendants MGA and Isaac Larian.  You must now decide how much money will reasonably compensate Mattel for this harm.  This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by MGA's and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)     Compensatory and general damages;

(2)     Prejudgment interest at the maximum rate;

(3)     Punitive damages.

**Authority:**  CACI No. 3901.

# DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

The MGA Parties object to this instruction because it does not explain that Mattel's damages cannot be based on its purported rights to Bratz but rather only on Bryant's purported breach of fiduciary duty. See Final Pre-Trial Conference Order at 5. The preceding instruction is further objectionable to the extent that it does not require Mattel to prove that it suffered any financial loss resulting from the loss of the benefits of the contractual relationship in question and consequential losses, if any, caused by the alleged interference. See BAJI § 7.89. The instruction is also objectionable because Mattel lacks any evidentiary basis to seek punitive damages. See Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages, as there was not clear and convincing evidence of fraud); see also Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence").

1     **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3        Mattel's proposed instruction conforms to the model instruction found in

4   CACI, as required by the Court.  *See* Court's Standing Scheduling Order, at 9.

5   Accordingly, defendants' objection to the form of the proposed instruction should be

6   overruled.

7        Defendants' objection that the proposed instruction is objectionable because

8   "it does not explain that Mattel's damages cannot be based on its purported right to

9   Bratz" is unintelligible.  This instruction simply informs the jury of the appropriate

10  measure of damages for the tort of intentional interference with contractual

11  relations, including compensatory and general damages, interest and punitive

12  damages.  Moreover, defendants appear to misconstrue the Court's prior ruling.  The

13  Court's ruling expressly recognized that this claim may be based on "MGA's acts

14  that may be found to have aided and abetted the breach or induced the breach of

15  Bryant's fiduciary duty."  April 25, 2008 Order, at 2.  Bratz works created by Bryant

16  are relevant to this claim to the extent Mattel proves that defendants assisted Bryant

17  in breaching duties he owed to Mattel, such as his duty of confidentiality, in

18  connection with those works.  Such issues are separate from Mattel's copyright

19  infringement claim, which will be adjudicated in Phase 1B.

20       Defendants' objection that the instruction should inform the jury that Mattel

21  must prove financial loss has no merit.  If the jury finds defendants liable for

22  intentional interference with contractual relations in Phase 1A, it will have already

23  found that Mattel proved it was harmed by defendants' wrongful conduct.  *See*

24  Mattel's Disputed Jury Instructions, *supra*, at 33 (CACI 2201) (informing the jury

25  that to recover for intentional interference, Mattel must prove "[T]hat Mattel was

26  harmed; and that the conduct of MGA and/or Mr. Larian was a substantial factor in

27  causing Mattel's harm.").  (Indeed, the Court has already found this element is

28  satisfied as a matter of law.  *See* April 25, 2008 Order, at 6.)  Once liability is

1  established, it would be legally incorrect and prejudicial to Mattel to inform the jury
2  that Mattel must once again prove that it was harmed as a result of the wrongful
3  conduct.

4        Finally, defendants have no basis to object to the reference to punitive
5  damages.  Mattel is pursuing punitive damages against the defendants based on its
6  allegation in this case that defendants acted "with malice, fraud and oppression" and
7  "in conscious disregard of Mattel's rights."  *See* Mattel's Counterclaims, at ¶ 128.
8  Defendants have not moved for summary adjudication of Mattel's claims for
9  punitive damages.  It is well settled that "[w]hether or not punitive damages should
10  be awarded and the amount to be awarded are within the discretion of the jury . . . ."
11  *Hannon Eng'g, Inc. v. Reim*, 126 Cal. App. 3d 415, 431 (1981).  Mattel's proposed
12  instructions appropriately inform the jury as to the elements of a claim for punitive
13  damages, and that it must be proved by clear and convincing evidence.  *See* Mattel's
14  Proposed Jury Instruction re: Punitive Damages—Individual and Entity Defendants.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS

**CACI 3901**

**INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND BREACH OF THE DUTY OF LOYALTY**

In Phase 1A, you determined that Mattel had proved its claims against the defendants MGA and Isaac Larian for aiding and abetting Carter Bryant's breach of fiduciary duty and breach of the duty of loyalty. You must now decide how much money will reasonably compensate Mattel for this harm. This compensation is called "damages."

The amount of damages must include an award for each item of harm that was caused by MGA's and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated.

Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)     Compensatory and general damages, including disgorgement of profits earned by MGA and Mr. Larian as a result of their wrongful conduct;

(2)     Prejudgment interest at the maximum rate;

(3)     Punitive damages.

**Authority:** CACI No. 3901.

### DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE INTRODUCTION TO TORT DAMAGES—LIABILITY ESTABLISHED FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND BREACH OF THE DUTY OF LOYALTY

The preceding instruction is objectionable to the extent it seeks disgorgement of profits, regardless of when such profits were earned. Profits for breach of fiduciary duty and breach of the duty of loyalty are limited to those profits earned by the defendant while defendant owed such a duty. Further, the preceding instruction is objectionable to the extent that it does not require Mattel to prove that it suffered any financial loss resulting from the conduct found to be aiding and abetting a breach of duty. It also fails to caution the jury that it should award damages only for the conduct found to constitute aiding and abetting the breaches at issue. Thus, if the jury finds that MGA and Larian aided and abetted Bryant's use of Mattel resources in breach of his duties, the jury should be told that it must award damages for the harm caused by the loss of those resources, that is the value of those lost resources at the time they were used. Similarly, if the jury found that MGA and Larian aided and abetted Bryant's breach of his duties by accepting additional work from MGA, the jury should be told that it must award damages to compensate Mattel in an amount equal to the harm caused by Bryant accepting such additional work from MGA.

In the same vein, if the jury finds that Bryant breached his duties by directly competing with Mattel while still employed at Mattel, it must award damages to compensate Mattel for the harm caused by that competition during the term of his employment. In addition, if the jury finds Bryant breached his duties by presenting the BRATZ sketches owned by Mattel to MGA, it must compensate Mattel for the harm caused by that breach, that is the value of the sketches at the time of the breach. See Restatement (Second) of Torts § 876 (1979); BAJI § 12.57 (2008) (as modified); Bancroft-Whitney

1   Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff

2   book publisher for the costs incurred to replace personnel recruited by president and

3   competitor using confidential information in breach of president's fiduciary duty);

4   GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs.,

5   Inc., 83 Cal. App. 4th 409, 426 (2000) (damages for breach of fiduciary duty were

6   expenses incurred to recruit new employees); Charles T. Powner, Co. v. Smith, 91 Cal.

7   App. 101 (1928) (damages were profits on directly competitive sales resulting from use

8   of employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906)

9   (damages were commissions received while still employed); see also Design Strategies

10  Inc. v. Davis, 384 F. Supp. 2d 649 (S.D.N.Y. 2005) (damages were amount of salary

11  earned during time employee was disloyal, and not the profits from a contract that

12  evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris,

13  46 F. Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources

14  including employee time used to develop competing products).

15

16  Finally, the instruction is objectionable because Mattel lacks any evidentiary basis to

17  seek punitive damages. See Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991)

18  (trial court properly refused to instruct jury on punitive damages, as there was not

19  clear and convincing evidence of fraud); see also Jones v. Williams, 297 F.3d 930,

20  934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory of

21  the case if it is supported by law and has foundation in the evidence").

22

23

24

25

26

27

28

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Mattel's proposed instruction conforms to the model instruction found in CACI, as required by the Court. *See* Court's Standing Scheduling Order, at 9. Accordingly, defendants' objection to the form of the proposed instruction should be overruled.

Defendants recognize that Mattel is entitled to seek disgorgement of profits obtained by defendants as a result of their wrongful conduct, but claim that Mattel is limited to only "profits earned by the defendant while defendant owed such a duty." Defendants' position is erroneous as a matter of law. Mattel is entitled to recover all profits obtained by defendants as a result of their wrongful conduct in aiding and abetting Bryant's breaches of duty. Mattel's proposed instruction informs the jury that Mattel seeks only those profits "earned by MGA and Mr. Larian as a result of their wrongful conduct." Defendants' proposed limitation is contrary to law and prejudicial to Mattel. Pursuant to CACI No. 3901 (which embodies *Cal. Civ. Code* § 3333), Mattel is entitled to recover damages for all harm "caused by MGA's and Mr. Larian's wrongful conduct, even if the particular harm could not have been anticipated." *See Cal. Civ. Code* § 3333 ("For the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate *for all the detriment proximately caused thereby, whether it could have been anticipated or not*."); *see also County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007) ("Disgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty"; "Active participants in the breach of fiduciary duty by another are accountable for all advantages they gained thereby and are liable to the beneficiary of the duty"); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1127 (C.D. Cal. 2003) (a party who aids and abets a breach of fiduciary duty will be jointly liable) (citing *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119 (1985)).

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS

1    Defendants' objection that the instruction should inform the jury that Mattel

2    must prove financial loss is also without merit.  If the jury finds Bryant liable for

3    breach of fiduciary duty/duty of loyalty and defendants liable for aiding and abetting

4    those breaches in Phase 1A, it will have already found that Mattel proved it was

5    harmed by their wrongful conduct.  Once liability is established, it would be

6    prejudicial to Mattel and misleading to inform the jury that Mattel must once again

7    prove it suffered loss as a result of the wrongful conduct.

8    Finally, defendants have no basis to object to the reference to punitive

9    damages.  Mattel is pursuing punitive damages against defendants based on its

10   allegation in this case that they aided and abetted Bryant's breaches of his fiduciary

11   duty and duty of loyalty "with malice, fraud and oppression" and "in conscious

12   disregard of Mattel's rights."  *See* Mattel's Counterclaims, at ¶¶ 141, 154.

13   Defendants have not moved for summary adjudication of Mattel's claims for

14   punitive damages.  It is well settled that "[w]hether or not punitive damages should

15   be awarded and the amount to be awarded are within the discretion of the jury . . . ."

16   *Hannon Eng'g, Inc. v. Reim*, 126 Cal. App. 3d 415, 431 (1981).  Mattel's proposed

17   instructions appropriately inform the jury as to the elements of a claim for punitive

18   damages, and that it must be proved by clear and convincing evidence.  *See* Mattel's

19   Proposed Jury Instruction re: Punitive Damages—Individual and Entity Defendants.

20

21

22

23

24

25

26

27

28

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS

## **CACI 2102**

## **PRESUMED MEASURE OF DAMAGES FOR CONVERSION**

In Phase 1A of this trial, you found that Mattel had proved its claims for conversion against MGA, Isaac Larian and MGA Hong Kong.  You must now decide how much money will reasonably compensate Mattel for the harm.  This compensation is called "damages."

Mattel must prove the amount of its damages.  However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  You must not speculate or guess in awarding damages.

The following are the specific items of damages claimed by Mattel:

(1)    The fair market value of the tangible Bratz works created by Carter Bryant while he was employed by Mattel; and

(2)    Prejudgment interest at the maximum rate;

(3)    Reasonable compensation for the time and money spent by Mattel in attempting to recover this property;

(4)    Punitive damages.

**Authority:**  CACI No. 2102 (modified); *Betzer v. Olney*, 14 Cal. App. 2d 53, 61 (1937).

# DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE PRESUMED MEASURE OF DAMAGES FOR CONVERSION

The preceding instruction is objectionable to the extent Mattel asserts a claim for conversion in Phase One against MGA. According to Mattel's MSJ, there is no conversion claim asserted against MGA in Phase One. (See Mattel MSJ at 50:18-20.) The instruction is further objectionable because it does not define the concept of fair market value and does not explain when to measure it, failing to explain that fair market value is the highest price that a willing buyer would have paid to a willing seller, assuming: (1) That there is no pressure on either one to buy or sell; and (2) That the buyer and seller know all the uses and purposes for which the tangible physical property is reasonably capable of being used. See CACI § 2102. Here, the fair value market value should be measured as of the time that the property allegedly was converted, not now.  See Cal. Civ. Code, § 3336; Virtanen v. O'Connell, 140 Cal. App. 4th 688, 708 (2006); Spates v. Dameron Hospital Assn., 114 Cal. App. 4th 208, 221(2003); Lueter v. Cal., 94 Cal. App. 4th 1285, 1302 (2002).  The instruction is also potentially misleading in that it should explain to the jury that they may not award to Mattel the ancillary value of the works created by Bryant while at Mattel, in other words, that they cannot award any sort of damages that would be analogous to those permissible under the Copyright Act because the Court has held Mattel's claim to be pre-empted for damages beyond an award for the value, if any, of the drawings at the time that they were created.  See April 25, 2008 MSJ Order.

The MGA Parties also object because this instruction fails to distinguish among the defendants and advise the jury that it must make separate findings with respect to each defendant.  Finally, the instruction is objectionable because Mattel lacks any evidentiary basis to seek punitive damages. See Barry v. Raskov, 232 Cal. App. 3d

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS

1    447, 457 (1991) (trial court properly refused to instruct jury on punitive damages, as

2    there was not clear and convincing evidence of fraud); see also Jones v. Williams,

3    297 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or

4    her theory of the case if it is supported by law and has foundation in the evidence").

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

2

3    Mattel's proposed instruction conforms to the model instruction found in

4    CACI, as required by the Court.  *See* Court's Standing Scheduling Order, at 9.

5    Accordingly, defendants' objection to the form of the proposed instruction should be

6    overruled.

7    As set forth in the operative pleading, Mattel is asserting a claim for

8    conversion against MGA.  *See* Mattel's Counterclaims, at 72; *see also* June 7, 2008

9    Final Pre-Trial Conference Order for Phase 1 Trial, at 11.

10   Mattel does not object to defendants' additional language regarding "fair

11   market value" from CACI No. 2102.

12   Finally, defendants have no basis to object to the reference to punitive

13   damages.  Mattel is pursuing punitive damages against defendants based on its

14   allegation in this case that they converted Mattel's property "with malice, fraud and

15   oppression" and "in conscious disregard of Mattel's rights."  *See* Mattel's

16   Counterclaims, at ¶ 161.  Defendants have not moved for summary adjudication of

17   Mattel's claims for punitive damages.  It is well settled that "[w]hether or not

18   punitive damages should be awarded and the amount to be awarded are within the

19   discretion of the jury . . . ."  *Hannon Eng'g, Inc. v. Reim*, 126 Cal. App. 3d 415, 431

20   (1981).  Mattel's proposed instructions appropriately inform the jury as to the

21   elements of a claim for punitive damages, and that it must be proved by clear and

22   convincing evidence.  *See* Mattel's Disputed Jury Instructions, *infra*, at 207 (CACI

23   3947 re Punitive Damages).

24

25

26

27

28

Case No. CV 04-9049 SGL (RNBx)
MATTEL'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS

## CACI 3947

## PUNITIVE DAMAGES—INDIVIDUAL AND ENTITY DEFENDANTS

If you decide that Isaac Larian's, MGA's or MGA Hong Kong's conduct caused Mattel harm, you must decide whether that conduct justifies an award of punitive damages.  The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against Mr. Larian only if Mattel proves by clear and convincing evidence that Mr. Larian engaged in that conduct with malice, oppression, or fraud.

You may award punitive damages against MGA or MGA Hong Kong only if Mattel proves that MGA or MGA Hong Kong acted with malice, oppression, or fraud.  To do this, Mattel must prove by clear and convincing evidence that the malice, oppression, or fraud was conduct of one or more officers, directors, or managing agents of MGA or MGA Hong Kong, who acted on behalf of MGA or MGA Hong Kong.

"Malice" means that a defendant acted with intent to cause injury or that a defendant's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another.  A defendant acts with knowing disregard when the defendant is aware of the problem dangerous consequences of his or its conduct and deliberately fails to avoid those consequences.

"Oppression" means that a defendant's conduct was despicable and subjected Mattel to cruel and unjust hardship in knowing disregard of its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that a defendant intentionally misrepresented or concealed a material fact and did so intending to harm Mattel.

1       An employee is a "managing agent" if he or she exercises substantial

2   independent authority and judgment in his or her corporate decision making such

3   that his or her decisions ultimately determine corporate policy.

4       There is no fixed formula for determining the amount of punitive damages,

5   and you are not required to award any punitive damages.  If you decide to award

6   punitive damages, you should consider all of the following separately for each

7   defendant in determining the amount:

8       (a)    How reprehensible was that defendant's conduct?  In deciding how

9   reprehensible a defendant's conduct was, you may consider, among other factors:

10      (b)    Is there a reasonable relationship between the amount of punitive

11  damages and Mattel's harm?

12      (c)    In view of that defendant's financial condition, what amount is

13  necessary to punish him or it and discourage future wrongful conduct?  You may not

14  increase the punitive award above an amount that is otherwise appropriate merely

15  because a defendant has substantial financial resources.

16

17      **Authority:**  CACI No. 3947.

18

19

20

21

22

23

24

25

26

27

28

MATTEL'S AMENDED DISPUTED PROPOSED JURY INSTRUCTIONS

# DEFENDANTS' OBJECTION TO MATTEL'S PROPOSED INSTRUCTION RE PUNITIVE DAMAGES—INDIVIDUAL AND ENTITY DEFENDANTS

Mattel lacks any evidentiary basis to request an instruction concerning punitive damages. See Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages, as there was not clear and convincing evidence of fraud); see also Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence"). Moreover, this instruction is improper because it does not distinguish among the defendants and advise the jury that it must make separate findings with respect to each defendant.

**MATTEL'S STATEMENT IN SUPPORT OF PROPOSED INSTRUCTION**

Mattel's proposed instruction conforms to the model instruction found in CACI, as required by the Court. *See* Court's Standing Scheduling Order, at 9. Accordingly, defendants' objection to the form of the proposed instruction should be overruled. Defendants have no basis to object to an instruction regarding punitive damages. Mattel seeks punitive damages against the defendants based on its allegations in this case that defendants acted "with malice, fraud and oppression" and "in conscious disregard of Mattel's rights." *See* Mattel's Counterclaims, at ¶ 128. Defendants have not moved for summary adjudication of Mattel's claims for punitive damages. It is well settled that "[w]hether or not punitive damages should be awarded and the amount to be awarded are within the discretion of the jury . . . ." *Hannon Eng'g, Inc. v. Reim*, 126 Cal. App. 3d 415, 431 (1981). Mattel's proposed instructions appropriately inform the jury as to the elements of a claim for punitive damages, and that it must be proved by clear and convincing evidence.