THOMAS J. NOLAN (Bar No. 66992)
(tnolan@skadden.com)
JASON D. RUSSELL (Bar No. 169219)
(jrussell@skadden.com)
MARINA V. BOGORAD (Bar No. 217524)
(mbogorad@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071
Tel.: (213) 687-5000/Fax: (213) 687-5600

RAOUL D. KENNEDY (Bar No. 40892)
(rkennedy@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
4 Embarcadero Center, Suite 3800
San Francisco, CA  94111-5974
Tel.: (415) 984-2698 / Fax: (415) 984-2626

Attorneys for MGA Entertainment, Inc., MGA Entertainment (HK) Limited, and Isaac Larian

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## EASTERN DIVISION

| | |
|---|---|
| CARTER BRYANT, an individual, | CASE NO.  CV  04-9049  SGL (RNBx) |
| Plaintiff, | Consolidated with Case No. 04-9059 and Case No. 05-2727 |
| v. | |
| MATTEL, INC., a Delaware corporation, | Honorable Stephen G. Larson |
| Defendant. | OBJECTIONS AND RESPONSES REGARDING MGA PARTIES' REVISED DISPUTED [PROPOSED] JURY INSTRUCTIONS |
| AND CONSOLIDATED ACTIONS. | |

1
2

## PRELIMINARY INSTRUCTIONS

| No. | Description | Page |
|-----|-------------|------|
| 9th Cir. 1.2 | CLAIMS AND DEFENSES – PHASE 1A | 8 |
| CACI 107 | DISCREPANCIES IN TESTIMONY | 14 |
| FJPI 104.53 | EXTRAJUDICIAL ADMISSIONS-CAUTIONARY INSTRUCTIONS | 17 |
| 9th Cir. 1.15 | QUESTIONS TO WITNESSES BY JURORS | 22 |

## PHASE 1A – CLAIMS INSTRUCTIONS

| No. | Description | Page |
|-----|-------------|------|
| Special Inst. __ | DECLARATORY RELIEF | 25 |
| Special Inst. __ | DECLARATORY RELIEF: THE PARTIES' CLAIMS | 28 |
| Special Inst. __ | BREACH OF CONTRACT—INTRODUCTION | 35 |
| CACI 303 (1) | BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS | 36 |
| CACI 303 (2) | CONTRACT CLAIM – SECTION 2(A) OF INVENTIONS AGREEMENT | 40 |
| CACI 314 (1) | INTERPRETATION OF PARTICULAR TERMS | 49 |
| CACI 314 (2) | INTERPRETATION—DISPUTED TERM | 55 |
| CACI 315 | INTERPRETATION—MEANING OF ORDINARY WORDS | 61 |
| CACI 316 | INTERPRETATION—MEANING OF TECHNICAL WORDS | 66 |
| CACI 317 | INTERPRETATION—CONSTRUCTION OF CONTRACT AS A WHOLE | 73 |
| CACI 318 | INTERPRETATION—CONSTRUCTION BY CONDUCT | 78 |
| CACI 320 | INTERPRETATION—CONSTRUCTION AGAINST DRAFTER | 85 |
| Special Inst. __ | INTERPRETATION—ADHESION CONTRACTS | 90 |
| CACI 320 (3) | INTERPRETATION—UNCONSCIONABILITY | 97 |
| Special Inst. __ | INTERPRETATION – INTENT NEVER EXTENDED | 98 |
| Special Inst. __ | INTERPRETATION – AVOIDING EXTRAORDINARY, HARSH, UNJUST, OR INEQUITABLE INTERPRETATION | 103 |
| CACI 305 | MODIFICATION | 109 |
| Special Inst. __ | PROTECTION OF EMPLOYEES' RIGHTS TO THEIR INVENTIONS (LABOR CODE § 2870) | 113 |

28

| No. | Description | Page |
|---|---|---|
| Special Inst. __ | CONTRACT CLAIM – SECTION 3(A) OF INVENTIONS AGREEMENT | 113 |
| Special Inst. __ | CONTRACT CLAIM—RIGHT TO OBTAIN NEW EMPLOYMENT | 113 |
| CACI 300 | CONTRACT CLAIM – CONFLICT OF INTEREST QUESTIONNAIRE | 113 |
| CACI 302 | CONTRACT FORMATION—ESSENTIAL FACTUAL ELEMENTS | 113 |
| Special Inst. __ | CONTRACT FORMATION—DOCUMENT MUST OBVIOUSLY BE A CONTRACT | 113 |
| Special Inst. __ | CONSIDERATION | 113 |
| Special Inst. __ | EVIDENCE OF GOOD FAITH | 114 |
| Special Inst. __ | COPYRIGHT ACT § 204(A) , CALIFORNIA CIVIL CODE § 988 | 118 |
| CACI 2201 (1) | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—ELEMENT | 125 |
| CACI 2201 (2) | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—INTENT | 132 |
| Special Inst. __ | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—INDUCEMENT | 139 |
| Special Inst. __ | INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS—HIRING OF AT WILL EMPLOYEES OF COMPETITORS | 142 |
| Special Inst. __ | "BUT FOR" CAUSATION | 146 |
| Special Inst. __ | AIDING AND ABETTING BREACH OF FIDUCIARY DUTY | 149 |
| CACI 4101 | FIDUCIARY DUTY—ELEMENTS OF A CLAIM FOR BREACH OF FIDUCIARY DUTY | 159 |
| CACI 4100 | FIDUCIARY DUTY—DEFINED | 160 |
| Special Inst. __ | FIDUCIARY DUTY—EXISTENCE OF DUTY | 164 |
| Special Inst. __ | FIDUCIARY DUTY—BURDEN OF PROVING BREACH | 165 |
| Special Inst. __ | BREACH – RIGHT TO PREPARE TO COMPETE | 169 |
| CACI 4102 (1) | HARM CAUSED BY BREACH OF FIDUCIARY DUTY | 170 |
| Special Inst. __ | AIDING AND ABETTING BREACH OF DUTY OF LOYALTY | 174 |
| CACI 4102 (2) | BREACH OF THE DUTY OF LOYALTY–ESSENTIAL FACTUAL ELEMENTS | 185 |
| Special Inst. __ | DUTY OF LOYALTY DEFINED | 186 |
| Special Inst. __ | BREACH OF THE DUTY OF LOYALTY | 189 |
| CACI 4102 (3) | CONSENT TO EMPLOYEE'S ACTIONS | 196 |

| No. | Description | Page |
|---|---|---|
| CACI 4102 (4) | HARM CAUSED BY BREACH OF THE DUTY OF LOYALTY | 200 |
| CACI 2100 | CONVERSION—ELEMENTS | 204 |

## PHASE 1 – AFFIRMATIVE DEFENSES

| No. | Description | Page |
|---|---|---|
| Special Inst. __ | Affirmative Defenses—General | 209 |
| CACI 4120 | Statute of Limitations—Explanation | 212 |
| Special Inst. __ | Mattel's Date of Filing Of Its Claims | 216 |
| Special Inst. __ | Defense: Statute of Limitations (Breach of Duty of Loyalty) | 219 |
| Special Inst. __ | Defense: Statute of Limitations (Intentional Interference with Contract) | 220 |
| Special Inst. __ | Defense: Statute of Limitations (Aiding and Abetting Breach of Fiduciary Duty) | 226 |
| Special Inst. __ | Defense: Statute of Limitations (Aiding and Abetting Breach of Duty of Loyalty) | 226 |
| Special Inst. __ | Defense: Statute of Limitations (Copyright Infringement) | 227 |
| Special Inst. __ | Defense: Statute of Limitations (Conversion) | 228 |
| Special Inst. __ | Defense: Statute of Limitations (Statutory Unfair Competition) | 234 |
| Special Inst. __ | Laches: Introduction | 235 |
| Special Inst. __ | Defense: Laches | 240 |
| CACI 336 | Affirmative Defense – Waiver | 246 |
| CACI 1302 | Affirmative Defense – Consent | 254 |
| Special Inst. __ | Estoppel—Definition | 262 |
| Special Inst. __ | Defense: Estoppel of Copyright Claims | 268 |
| Special Inst. __ | Defense: Estoppel of Employment Claims | 274 |
| Special Inst. __ | Defense: Acquiescence | 280 |
| 9th Cir. 17.19 | Defense:  Abandonment (Copyright Infringement) | 287 |
| Special Inst. __ | Defense: 205(d) (Bona Fide Purchaser for Value) | 293 |
| Special Inst. __ | Defense: Good Faith | 297 |
| Special Inst. __ | Defense:  De Minimis Use | 300 |
| Special Inst. __ | Defense:  Unclean Hands | 306 |

## PHASE 1(B) – DAMAGES

| No. | Description | Page |
|---|---|---|
| 9th Cir. 5.1 | Damages—Introduction | 307 |
| CACI 350 (1) | Introduction to Contract Damages | 310 |

iii

| CACI 350 (2) | Measure of Damages—Breach of the "Inventions" Provision of the Employee Agreement | 310 |
|---|---|---|
| CACI 350 (3) | Measure of Damages—Breach of the "Moonlighting" Provision of the Employee Agreement | 310 |
| CACI 350 (4) | Measure of Damages—Breach of the Conflict Questionnaire | 310 |
| Special Inst. __ | Measure of Damages for Intentional Interference with Contract | 311 |
| CACI 2102 | Measure of Damages for Conversion | 316 |
| Special Inst. __ | Measure of Damages for Breach of Fiduciary Duty | 320 |
| Special Inst. __ | Measure of Damages for Breach of Duty of Loyalty | 320 |
| Special Inst. __ | Measure of Damages for Aiding and Abetting Breach of Fiduciary Duty | 321 |
| Special Inst. __ | Measure of Damages for Aiding and Abetting Breach of Duty of Loyalty | 327 |
| 9th Cir. 17.22 | COPYRIGHT—DAMAGES (17 U.S.C. § 504) | 333 |
| 9th Cir. 17.24 | COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS (17 U.S.C. § 504(b)) | 338 |
| Special Inst. __ | Choice of Alternative Methods of Determining Plaintiff's Damages | 345 |
| 9th Cir. 5.3 | Damages—Duty to Mitigate | 348 |
| 9th Cir. 5.6 | Nominal Damages | 353 |
| CACI 361 | Plaintiff May Not Recover Duplicate Damages | 356 |

## PHASE 1(B) – COPYRIGHT INSTRUCTIONS

| No. | Description | Page |
|---|---|---|
| 9th Cir. 17.0 | COPYRIGHT – PRELIMINARY INSTRUCTION | 360 |
| | ALTERNATE: | 378 |
| 9th Cir. 17.1 | COPYRIGHT – DEFINED | 381 |
| Special Inst. 2aC | COPYRIGHT –IDEA/EXPRESSION DICHOTOMY | 388 |
| 9th Cir. 17.3 | COPYRIGHT – SUBJECT MATTER – IDEAS AND EXPRESSION | 395 |
| 9th Cir. 17.6 | COPYRIGHT INTERESTS – AUTHORSHIP | 405 |
| Special Inst. 5C | COPYRIGHT INTERESTS – ORIGINALITY AND REGISTRATION | 409 |
| Special Inst. 6C | COPYRIGHT INFRINGEMENT – COPYING | 414 |
| Special Inst. 7C | COPYRIGHT INFRINGEMENT – FACTUAL COPYING | 418 |
| Special Inst. 8C | COPYRIGHT INFRINGEMENT – LEGAL COPYING – SUBSTANTIAL SIMILARITY | 422 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| No. | Description | Page |
|-----|-------------|------|
| Special Inst. 9C | COPYRIGHT INFRINGEMENT – EXTRINSIC TEST; INTRINSIC TEST | 426 |
| Special Inst. 10C | COPYRIGHT INFRINGEMENT – COMPARING TWO DIMENSIONAL WORK WITH A THREE DIMENSIONAL WORK | 445 |
| Special Inst. 11C | COPYRIGHT INFRINGEMENT – INDEPENDENT CREATION | 448 |
| Special Inst. 12C | COPYRIGHT INFRINGEMENT – MULTIPLE COPYRIGHT REGISTRATIONS MATTEL HAS BASED ITS COP | 454 |
| 9th Cir. 17.20 | DERIVATIVE LIABILITY: VICARIOUS INFRINGEMENT | 458 |
| 9th Cir. 17.21 | DERIVATIVE LIABILITY: CONTRIBUTORY INFRINGEMENT | 461 |
| Special Inst. 15C | DERIVATIVE LIABILITY: INTENTIONAL INDUCEMENT | 464 |

# **GENERAL OBJECTIONS**

Each of the following General Objections is hereby incorporated in full into the objections to specific jury instructions set forth below:

1.     Mattel objects generally to defendants' proposed instructions, in that they represent over 125 pages of argumentative and defense-slanted instructions that materially deviate, with no good cause, from the standard instructions governing the claims and defenses at issue.  Defendants will be afforded an opportunity at the close of the evidence to present argument as to any issues properly presented to the jury.  There is no reason for defendants to attempt to re-argue the issues by slanting their proposed instructions in a way that consistently benefits defendants.

2.     Mattel objects to defendants' proposed jury instructions to the extent they instruct the jury as to issues the Court has already adjudicated in connection with the parties' cross-motions for partial summary judgment and are contrary to the Court's findings.  *See, e.g.*, April 25, 2008 Order Granting in Part, Denying in Part, and Deferring in Part the Parties' Motions for Partial Summary Judgment ("April 25, 2008 Order"); June 7, 2008 Final Pre-Trial Conference Order for Phase 1 Trial ("Final Pre-Trial Conference Order").

For example, with respect to the Inventions Agreement, the Court has already found as a matter of law that the Inventions Agreement is a valid and enforceable contract.  *See* April 25, 2008 Order, at 4-5; Final Pre-Trial Conference Order, at 4.  The Court also found that (1) the Inventions Agreement is not ambiguous, (2) "the original Bratz drawings clearly fall within the scope of the Inventions Agreement" to the extent created during Bryant's employment with Mattel, and (3) the issue of whether Bryant conceived or created Bratz works on his own time during that period is irrelevant because Bryant cannot rely on California *Labor Code* § 2870 because Bratz works relate to Mattel's business.  *See* April 25, 2008 Order, at 4-5; Final Pre-Trial Conference Order, at 4.  The Court also found that Bryant cannot defend his actions as "lawful preparations to compete" because he

1

1 "directly competed with Mattel by entering into a contract with its competitor to produce a
2 competing product while still employed by Mattel."  *Id.* at 5.

3        The Court also found as a matter of law that Bryant owed a fiduciary duty and duty
4 of loyalty to Mattel and that he breached his duty of loyalty when he "secretly entered into
5 a contract with Mattel's competitor, while still employed by Mattel, to produce a line of
6 fashion dolls to be marketed in direct competition with Mattel's products."  April 25, 2008
7 Order, at 5-6.

8        The Court also ruled that Mattel has satisfied at least two elements of its claim
9 against MGA and Larian for intentional interference with contractual relations.  April 25,
10 2008 Order, at 6; May 21, 2008 Order, at 9-10 (finding that the first element [a valid
11 contract] and fifth element [resulting damage] are met).

12        Finally, the Court found that almost all of defendants' affirmative defenses are
13 equitable in nature, and indicated that the Court (and not the jury) will rule on those
14 affirmative defenses—including abandonment, acquiescence, consent, estoppel, failure to
15 mitigate, laches, unclean hands and waiver—after trial.  April 25, 2008 Order, at 7.

16        3.      Mattel objects to defendants' proposed jury instructions to the extent they
17 include several instructions regarding contract interpretation issues when the Court has
18 ruled that the Inventions Agreement is not ambiguous, and that defendants' proposed
19 interpretation is "not reasonable."  *See* April 25, 2008 Order, at 4.

20        4.      Mattel objects to defendants' proposed jury instructions on the ground that
21 they deviate substantially from the model instructions found in the Ninth Circuit Manual
22 of Model Jury Instructions and CACI, the Court's preferred sources of jury instructions.
23 *See* Court's Standing Scheduling Order at 9.

24        5.      Mattel further objects to defendants' proposed jury instructions on the ground
25 that they incorporate erroneous statements of law.  If these erroneous statements of law are
26 included in the final jury instructions, any resulting verdict would be subject to reversal on
27 appeal.

28

6. Mattel further objects to defendants' proposed jury instructions on the ground that they are inconsistent with applicable legal standards, as set forth in the briefing on Mattel's motion for partial summary judgment, Mattel's motions *in limine* and Mattel's proposed jury instructions, which are all hereby incorporated herein by reference. Wherever Mattel has submitted proposed jury instructions in any way overlapping with defendants' proposed jury instructions, Mattel requests that the Court adopt Mattel's proposed jury instructions.

7. Mattel further objects to defendants' proposed jury instructions on the ground that they are excessively fact-specific and argumentative, which makes them hopelessly confusing and prejudicial.  Many of the "facts" assumed by defendants in their proposed instructions are argumentative, biased and inaccurate.

8. Mattel further objects to defendants' proposed jury instructions on the ground that they are materially biased toward defendants.

9. Mattel further objects to defendants' proposed jury instructions to the extent that they repeatedly use the pejorative term "sketches" when referring to Carter Bryant's drawings and designs.

10. Mattel reserves the right to assert additional General and Specific Objections to defendants' proposed jury instructions.

**MGA Parties' Response**

1.     Mattel's complaint that the MGA Parties have modified certain form instructions and given them a "defense-slant[]" is baseless.  The proposed instructions that follow do deviate from the models on which they are based, but those modifications do not "slant" the instructions in the MGA Parties' favor.  The MGA Parties have altered the models in order 1) to make them more comprehensible in the context of this particular trial, 2) to focus the jury on the specific claims and defenses offered by both sides, and 3) to make them more accurate in light of the case law.  Model instructions are not sacrosanct.  They are intended to be modified in order to meet the needs of a particular case.  See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) ("The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.  Jury instructions do not come down from any mountain or rise up from any sea.  Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.  This description does not denigrate their value, it simply places them in the niche where they belong.").  Indeed, modification is sometimes necessary to make an instruction accurate and complete.  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent").

2.     Mattel's objection reflect a number of mischaracterizations of the Court's rulings.

Mattel overstates the Court's ruling with respect to the Inventions Agreement.  The Court found as a matter of law that the Inventions Agreement was a valid and enforceable contract and that it creates certain rights for Mattel over "any Bratz-related 'inventions' (including any designs, improvements, ideas, concepts and copyrightable subject matter" that Bryant "created during the period of his employment with Mattel") and rejected

4

1  certain defenses (Labor Code § 2870 and preparations to compete). Final Pre-Trial
2  Conference Order at 4.  The MGA Parties' revised jury instructions reflect this ruling.
3  However, that is where the ruling ends, and it leaves much for the jury to decide.  For
4  example, as the Court noted, its holding was contingent on "the resolution of certain (as
5  yet unresolved) issues of timing of creation and/or alteration."  April 25, 2008 Order at 4.
6  In order to decide the timing of creation, the jury must first decide what sorts of acts count
7  as "creation" in the context of this contract.  This will require the jury to interpret the
8  contract.  The jury will also have to decide the scope of the term "inventions" – while the
9  Court has laid out in general terms what is included, it will be for the jury to look at an
10  individual purported "invention" and determine whether that particular item falls within
11  the scope.  Indeed, the Court has already observed the complexity of this process, noting
12  that "it is uncontroverted that four drawings (each with a color and black and white version)
13  of dolls in evening wear were created by Bryant during the period of his employment with
14  Mattel", yet "the scope of the rights that may be assigned to Mattel under the Inventions
15  Agreement is unclear in light of the larger disputed factual issue regarding the remaining
16  Bratz drawings."  May 21, 2008 Order at 8.  As such, instructions on the interpretation of
17  contractual terms, and any other instructions that aid the jury in applying the terms of the
18  Inventions Agreement to specific pieces of evidence, continue to be important.

19       Mattel's characterization of the Court's holding on Bryant's fiduciary duty and the
20  duty of loyalty is accurate as far as it goes but also excludes some critical explanation.
21  The Court held that Bryant owed Mattel a fiduciary duty "by virtue of the language set
22  forth in ¶ 1(a) of the Inventions Agreement."  April 25, 2008 Order at 5.  However, the
23  Court's ruling on that duty was limited to Bryant's duty vis-à-vis Mattel's confidential
24  information.  May 21, 2008 Order at 4.  Thus, the jurors must still consider both the proper
25  scope of that duty and then determine whether it applies.  Likewise, to determine the harm
26  attributable to either a breach of loyalty or a breach of fiduciary duty, the jury must first be
27  instructed on the nature of each duty and each breach.

28

1       Mattel also mischaracterizes the Court's rulings on its intentional interference claim.

2   Mattel had not moved for summary judgment on its claim for intentional interference with

3   contract.  The Court was explicit that it only ruled on the MGA Parties' motion for partial

4   summary judgment in connection with that claim (see April 25, 2008 Order at 6) and

5   recited those elements that the were undisputed *for purposes of summary judgment* (id. at

6   6-7).  This recitation, however, was not a holding for Mattel as a matter of law, because

7   Mattel had not even made a motion on this claim.  Rather, the Court's ruling was only to

8   grant the MGA Parties' motion on this claim to the extent it was "based on Mattel's rights

9   to Bratz."  April 25, 2008 Order at 2; Final Pre-Trial Conference Order at 5.

10      Finally, Mattel mischaracterizes the import of the Court's decision to defer ruling on

11  certain affirmative defenses.  While the Court may ultimately rule on the effect of these

12  defenses, it is apparent from the Court's Order that it expects the jury to make the factual

13  determinations underlying its decision.  See Final Pre-Trial Conference Order at 8.  Indeed,

14  in its Order, the Court noted that factual issues concerning the bona fide purchaser defense

15  such as good faith and notice would be resolved at trial, such that the Court would be left

16  only with legal issues. (See April 25, 2008 Order at 8.) The factual determinations

17  supporting each of the other affirmative defenses should likewise be placed before the jury.

18  See, e.g., Bickel v. City of Piedmont, 16 Cal. 4th 1040, 1052 (1997) ("Whether there has

19  been a waiver is a question of fact."), abrogated on other grounds, DeBerard Props., Ltd. v.

20  Lim, 20 Cal. 4th 659, 668 (1999); Posey v. Leavitt, 229 Cal. App. 3d 1236, 1244 n.4 (1991)

21  ("[F]actual issues raised by the consent defense would be properly triable by the jury….");

22  Elmore v. Oak Valley Hosp. Dist., 204 Cal. App. 3d 716, 724 (1988) ("The existence of

23  estoppel is a question of fact for the trial court."); Muraoka v. Budget Rent-a-Car, 160 Cal.

24  App. 3d 107, 117 (1984) (holding trial court erred in granting defendant's demurrer stating,

25  "[the estoppel question] is one of fact which should be left for resolution by a jury and not

26  determined upon general demurrer"); see also Posner v. Grunwald-Marx, Inc., 56 Cal. 2d

27  169, 189 (1961) ("Whether there has been a waiver is usually regarded as a question of

28

1  fact to be determined by the jury, or by the trial court if there is no jury.") (internal
2  quotations and citations omitted).

3        3.      Mattel's objection misses the mark since under the Court's April 25, 2008
4  Order, only one term – "inventions" – was interpreted.   The proposed instructions
5  appropriately set forth the general canon of contract interpretation for any remaining terms
6  in Sections 2(a) or 3(a) of the Inventions Agreement.

7        4.      As discussed in response to General Objection 1, the MGA Parties' deviation
8  from model instructions is entirely appropriate.

9        5.      Mattel does not identify any erroneous statements of law in this General
10 Objection.  The MGA Parties have responded to the specific objections below.

11       6.      Mattel does not identify any erroneous statements of law in this General
12 Objection.  The MGA Parties have responded to the specific objections below.

13       7.      The MGA Parties' instructions are not "excessively" fact-specific.   The
14 instructions include sufficient facts to provide the jury with context in understanding the
15 instructions.  Given the excessive number of claims that Mattel has brought against the
16 defendants, Mattel cannot now complain that the jury will need some guidance in wading
17 through those claims.  The MGA Parties have responded to the specific objections below.

18       8.      Mattel does not identify any specific instances of material bias in this General
19 Objection.  The MGA Parties have responded to the specific objections below.

20       9.      The term "sketch" is not pejorative or derogatory and Mattel has not cited
21 anything to support its contention that the term is "pejorative."  Mattel's own expert used
22 the term repeatedly in reference to Bryant's works at issue here.  (See, e.g., Loetz Report,
23 at 2 ("When a designer has an idea, he sketches it out."); id. at 4 ("In Carter Bryant's
24 sketches, the Bratz figures are posed ....."); id. at 6 ("The Bratz sketches were drawn ....");
25 id. at 9 ("It is the industry standard when creating a new toy … to have the original artist
26 draw sketches"); Loetz Depo. at 83:6-13 ("Q. Does the term 'sketch' versus 'drawing'
27 have any distinct meaning to you?   A.  Not really …. I don't think there's any real
28 distinction and I think they're used interchangeably.").)

# PRELIMINARY INSTRUCTIONS

## -REVISED-

## CLAIMS AND DEFENSES – PHASE 1A

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

In this trial, the plaintiff is Mattel and the defendants are MGA Entertainment, Inc., MGA Entertainment (HK) Limited and Isaac Larian.

Mattel has asserted the following claims against MGA Entertainment, Inc.: (1) Declaratory Relief; (2) Intentional Interference with Contract; (3) Aiding and Abetting Breach of Fiduciary Duty; (4) Aiding and Abetting Breach of the Duty of Loyalty; and (5) Conversion.

Mattel has asserted the following claims against Isaac Larian:  (1) Declaratory Relief; (2) Conversion; (3) Intentional Interference with Contract; (4) Aiding and Abetting Breach of Fiduciary Duty; (5) Aiding and Abetting Breach of the Duty of Loyalty; and (6) Unfair Competition.

Mattel has asserted the following claims against MGA Entertainment (HK) Limited: (1) Declaratory Relief; (2) Conversion; and (3) Unfair Competition.

Mattel has the burden of proving these claims.

The defendants deny Mattel's claims. MGA, MGA (HK) and Isaac Larian also contend that Mattel's claims are barred by certain affirmative defenses:  (1) the statute of limitations; (2) laches; (3) estoppel; (4) waiver; (5) consent; (6)

8

acquiescence; (7) abandonment; (8) bona fide purchaser for value; and (9) unclean hands.  Mattel denies defendants' affirmative defenses.  Defendants have the burden of proof on these affirmative defenses.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions, Civil, 1.2 (2007).

9

1 | **Mattel's Objections**

2

3 |      Mattel objects to defendants' proposed instruction regarding Claims and Defenses

4 | on the following grounds:

5 |      1.    This proposed "preliminary instruction" is moot because the trial in this

6 | matter has already commenced.

7 |      2.    The model jury instruction contemplates a narrative description of the claims

8 | at issue in this trial.  *See* 9th Cir. Civ. Jury Instr. 1.2 (2007) ("To help you follow the

9 | evidence, I will give you a brief summary of the positions of the parties . . ..").

10 | Defendants' proposed instruction, which merely sets forth a numbered list of the claims

11 | and defenses, identified by legal title (e.g., "Declaratory Relief," "Intentional Interference

12 | with Contract," etc.), is not helpful to the jury and does not provide a "brief summary of

13 | the positions of the parties."

14 |      3.    The list of claims and defenses in defendants' proposed instruction is not

15 | accurate or complete.  Defendants fail to include Mattel's claim for conversion against

16 | MGA Entertainment, Inc.  *See* Mattel, Inc.'s Second Amended Answer in Case No. 05-

17 | 2727 and Counterclaims ("Mattel's Counterclaims"), at 72 (conversion claim "Against All

18 | Counter-defendants"); *see also* June 7, 2008 Final Pre-Trial Conference Order for Phase 1

19 | Trial, at 11.  Mattel's claim for declaratory relief is an equitable claim that should be

20 | adjudicated by the Court, not the jury.  Similarly, as the Court concluded in its April 25,

21 | 2008 Order on the parties' Motions for Partial Summary Judgment, almost all of

22 | defendants' affirmative defenses are equitable, and the Court will rule on them *after* trial.

23 | *See* Order Granting in Part, Denying in Part, and Deferring in Part the Parties' Motions for

24 | Partial Summary Judgment, dated April 25, 2008 ("April 25, 2008 Order"), at 7-8.  This

25 | includes defendants' defenses of abandonment, acts and omissions of others, acquiescence,

26 | consent, estoppel, failure to mitigate, laches, unclean hands, waiver and good faith transfer

27 | pursuant to 17 U.S.C. 205(d).  *See id.*  It is therefore unnecessary and confusing to refer to

28 | any of these claims or affirmative defenses in this proposed jury instruction.

4.      Defendants' reference to the affirmative defense of bona fide purchaser for value is also unnecessary and confusing because that defense relates only to Mattel's copyright infringements claims, which are not being litigated in Phase 1A.

5.      Mattel previously requested that the Court adopt its proposed instruction regarding the parties' claims and defenses, which provided a narrative description of the claims to assist the jury in following the evidence.  Mattel expressly reserves its rights as to its proposed instruction.

11

**MGA Parties' Response**

The MGA Parties include this Preliminary Instruction out of an abundance of caution.  In the event that the Court intends to give no such instruction at the conclusion of trial, it may be disregarded.   However, should the Court chose to repeat any of its introductory remarks, the MGA Parties respectfully submit that this proposed jury instruction would be appropriate.

Mattel ironically complains that the MGA Parties' instruction is insufficiently fact-specific, while complaining that the remainder of the proposed instructions are excessively specific.  The MGA Parties suggest that, given the excessive number of claims Mattel has brought, and given the various defenses to those claims, it is preferable to give the jury a basic roadmap and then explain each claim and defense with some context, rather than giving the jury a broad overview followed by specific instructions that are stripped of any explanation or context.

The MGA Parties have corrected this instruction to reflect the missing conversion claim against MGA because it is included in the Final Pre-Trial Conference Order.  However, the MGA Parties note that although Mattel's complaint asserts a conversion claim against all defendants, in its Motion for Summary Judgment, Mattel does not list this claim as one of the claims asserted against MGA in Phase One.  (Mattel MSJ at 50:18-20.)  Because Mattel apparently dropped MGA from the claim for Phase One purposes, and MGA relied upon that assertion during the summary judgment process, Mattel should be estopped from now resurrecting the claim against MGA.

Mattel's blanket assertion that all declaratory relief claims are equitable in nature runs directly counter to long-established case law.  "Insofar as the right to a jury trial is concerned, it is erroneous to say that all declaratory relief actions are equitable; an action

1  for declaratory relief has been characterized as 'sui generis.'   Where an action for
2  declaratory relief is in effect used as a substitute for an action at law for breach of contract,
3  a party is entitled to a jury trial as a matter of right." Patterson v. Ins. Co. of N. Am., 6 Cal.
4  App. 3d 310, 315 (1970) (internal citations omitted); see also B.E. Witkin, Cal. Proc.: Trial
5  § 95, p. 115 (4th ed. 1997) ("Unlike other equitable actions, declaratory relief is for some
6  purposes treated as if it were a coercive proceeding, and the courts will not permit it to be
7  used as a device to circumvent the right to a jury trial.")  This is precisely the case here.

8

9  Mattel mischaracterizes the import of the Court's decision to defer ruling on certain
10 affirmative defenses.  While the Court may ultimately rule on the effect of these defenses,
11 it is apparent from the Court's Final Pre-Trial Conference Order that it expects the jury to
12 make the factual determinations underlying its decision.  Final Pre-Trial Conference Order
13 at 8.  This is entirely consistent with established legal principles: the factual determinations
14 supporting each affirmative defense should be placed before the jury. See, e.g., Bickel v.
15 City of Piedmont, 16 Cal. 4th 1040, 1052 (1997) ("Whether there has been a waiver is a
16 question of fact."), abrogated on other grounds, DeBerard Props., Ltd. v. Lim, 20 Cal. 4th
17 659, 668 (1999); Posey v. Leavitt, 229 Cal. App. 3d 1236, 1244 n.4 (1991) ("[F]actual
18 issues raised by the consent defense would be properly triable by the jury…."); Elmore v.
19 Oak Valley Hosp. Dist., 204 Cal. App. 3d 716, 724 (1988) ( "The existence of estoppel is a
20 question of fact for the trial court."); Muraoka v. Budget Rent-a-Car, 160 Cal. App. 3d
21 107, 117 (1984) (holding trial court erred in granting defendant's demurrer stating, "[the
22 estoppel question] is one of fact which should be left for resolution by a jury and not
23 determined upon general demurrer"); see also Posner v. Grunwald-Marx, Inc., 56 Cal. 2d
24 169, 189 (1961) ("Whether there has been a waiver is usually regarded as a question of
25 fact to be determined by the jury, or by the trial court if there is no jury.") (internal
26 quotations and citations omitted).

27
28

13

1  **DISCREPANCIES IN TESTIMONY**

2

3  Sometimes a witness may say something that is not consistent with something else he or

4  she said.   Sometimes different witnesses will give different versions of what happened.

5  People often forget things or make mistakes in what they remember.   Also, two people

6  may see the same event but remember it differently.   You may consider these differences,

7  but do not decide that testimony is untrue just because it differs from other testimony.

8  You should consider whether a discrepancy pertains to an important matter or only to

9  something trivial.

10

11  **Authority:**  CACI No. 107 (2008) (as modified).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **Mattel's Objections**

2

3          Mattel objects to defendants' proposed instruction regarding Discrepancies in

4   Testimony on the following grounds:

5          1.      This proposed "preliminary instruction" is moot because the trial in this

6   matter has already commenced.

7          2.      This proposed instruction is unnecessary and potentially confusing.  Notably,

8   there is no such instruction in the Ninth Circuit's Model Jury Instructions, which is the

9   Court's preferred source of jury instructions.  *See* Court's Standing Scheduling Order, at 9.

10  Defendants cite CACI as the source of this proposed instruction, but issues regarding the

11  weight of the evidence are not issues of California law.  CACI is therefore inapplicable.

12         3.      In any event, the relevant point is adequately addressed in Ninth Circuit

13  Model Instruction 1.11—Credibility of Witnesses, which is included in the parties' joint

14  proposed jury instructions.  *See* Joint Proposed Jury Instructions, at 15.  That instruction

15  advises the jury that it will have to decide which testimony to believe and which testimony

16  not to believe, and that the jury may take into account, in considering a witness's

17  testimony, "whether other evidence contradicted the witness's testimony."  *See id.*

18  (incorporating 9th Cir. Civ. Jury Instr. 1.11 (2007)).

19         4.      The CACI instruction cited by defendants is duplicative of Ninth Circuit

20  Model Instruction 1.11 (*compare* CACI No. 107 ("In deciding whether to believe a

21  witness's testimony, you may consider . . . the following") *with* 9th Cir. Civ. Jur. Instr. 1.11

22  ("In considering the testimony of any witness, you may take into account"), and the CACI

23  instruction's additional language is unnecessary.

24

25

26

27

28

**MGA Parties' Response**

The MGA Parties include this Preliminary Instruction out of an abundance of caution.  In the event that the Court intends to give no such instruction at the conclusion of trial, it may be disregarded.   However, should the Court chose to repeat any of its introductory remarks, the MGA Parties respectfully submit that this proposed jury instruction would be appropriate.

Without conceding any of the preceding arguments set forth by Mattel, the MGA Parties note that the instruction proposed by Mattel entitled "Instruction 1.11—Credibility of Witnesses" has been included in the joint submission of undisputed instructions by the parties. To the extent the Discrepancy in Testimony instruction proposed by the MGA Parties is duplicative of Instruction 1.11, the MGA Parties do not object that the jury should be instructed on the subject only once.

# EXTRAJUDICIAL ADMISSIONS-CAUTIONARY INSTRUCTIONS

A statement made by a party before trial that has a tendency to prove or disprove any material fact in this action and which is against that party's interest is an admission. Evidence of an oral admission not made under oath should be viewed with caution.

**Authority:**   See Fed. R. Evid. 801(d)(2); 3 Kevin F. O'Malley, Jay E. Grenig, & Hon. William C. Lee, Fed. Jury Prac. & Instr. § 104.53 (5th ed.); BAJI § 2.25 (2008).

17

1 | **Mattel's Objections**

2

3      Mattel objects to defendants' proposed instruction regarding Extrajudicial

4 | Admission—Cautionary Instruction on the following grounds:

5      1.    This proposed "preliminary instruction" is moot because the trial in this

6 | matter has already commenced.

7      2.    This proposed instruction is erroneous as a matter of law.  Any statement

8 | made or adopted by a party is an admission.  *See Fed. R. Evid.* 801(d)(2).  Contrary to

9 | defendants' proposed instruction, a *party's* own statement need not (a) have a tendency to

10 | prove or disprove any material fact or (b) be against the party's interest to constitute an

11 | admission.

12      3.    Moreover, party admissions relate to the rules of evidence, which the Court

13 | (and not the jury) will apply.  A party's statement is simply evidence to the jury, to be

14 | weighed along with all the other evidence admitted at trial.  Accordingly, it is misleading

15 | and prejudicial to inform the jury that all extrajudicial admissions "should be viewed with

16 | caution."

17      4.    The authority cited by defendants does not support their request for the

18 | proposed instruction.  The citation to *Federal Jury Practice and Instructions* is misleading

19 | at best since defendants selectively incorporate only one part of the statement made in that

20 | source (that extrajudicial admissions should "be considered with caution"), and fail to

21 | incorporate the complete statement that when extrajudicial admissions are proved by

22 | reliable evidence, they should "be treated as trustworthy and should be considered along

23 | with all other evidence in the case."  *See* 3 *Fed. Jury Prac. & Instr.* § 104.53 (5th ed.).

24 | BAJI is inapplicable because issues regarding the weight of the evidence are not issues of

25 | California law.  In addition, BAJI is no longer identified by the Court as a source for jury

26 | instructions, *see id.*, and BAJI is not officially approved by California state court rules.

27 | *See Cal. Rule of Court* 2.1050 (stating that CACI, and not BAJI, "are the official

28 | instructions for use in the state of California.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5.     This proposed instruction is also unnecessary.  Notably, there is no comparable instruction in the Ninth Circuit Model Jury Instructions, which is the Court's preferred source of jury instructions.  *See* Court's Standing Scheduling Order, at 9.

**1**  **MGA Parties' Response**

**2**

**3**  The MGA Parties include this Preliminary Instruction out of an abundance of caution.  In

**4**  the event that the Court intends to give no such instruction at the conclusion of trial, it may

**5**  be disregarded.   However, should the Court chose to repeat any of its introductory

**6**  remarks, the MGA Parties respectfully submit that this proposed jury instruction would be

**7**  appropriate.

**8**

**9**  Mattel's objection to the portion of the instruction referring to the "tendency to prove or

**10**  disprove a material fact" is without merit.  This is simply a reference to relevancy (see Fed.

**11**  R. Evid. 201) and will not mislead the jury.

**12**

**13**  Mattel's further objections to the portion of the instruction indicating that certain

**14**  admissions should be viewed with caution is nonsensical.   Mattel complains that this

**15**  portion is misleading because the Court, not the jury, will make evidentiary rulings, and

**16**  yet complains in the next paragraph that this is the only part of the instruction that is taken

**17**  directly from the approved model.  In fact, the jury, not the Court, will determine what

**18**  weight and credibility should be given to the evidence, and this instruction provides proper

**19**  guidance in that determination.

**20**

**21**  In addition, in proposing jury instructions, the parties are not limited to the subject matter

**22**  covered by the Ninth Circuit Model Instructions.  See, e.g., Jones v. Hollenback, 2007 WL

**23**  3335012, at *11 (E.D. Cal. Nov. 9, 2007) ("The fact that Jury Instruction No. 7 is not a

**24**  Ninth Circuit Model Jury Instruction, but rather California pattern instruction, BAJI 2.22,

**25**  is irrelevant.   The instruction correctly and clearly states the law.   There is nothing

**26**  confusing about the purpose and intent of this instruction.").

**27**

**28**

1   Moreover, contrary to Mattel's assertion, the BAJI instructions continue to be relied upon
2   as a source of model jury instructions in both federal and California courts.  See, e.g.,
3   Jones, 2007 WL 3335012, at *11 ("The fact that Jury Instruction No. 7 is not a Ninth
4   Circuit Model Jury Instruction, but rather California pattern instruction, BAJI 2.22, is
5   irrelevant.  The instruction correctly and clearly states the law.  There is nothing confusing
6   about the purpose and intent of this instruction."); Buell-Wilson v. Ford Motor Co., 160
7   Cal. App. 4th 1107, 1167 (2008) (asserting that, regarding punitive damages, "[a]n
8   appropriate jury instruction would have been one similar to BAJI No. 14.72.2"); Mayes v.
9   Bryan, 139 Cal. App. 4th 1075, 1091-92 (2006) (approving an instruction given at trial that
10  was a mixture of CACI and BAJI models; noting that using definition of term from BAJI
11  instruction made CACI instruction intelligible).  Thus, the MGA Parties' use of some of
12  the BAJI language is not inappropriate.

13

14  Finally, the preceding instruction is supported by federal law. See Kelly v. Am. Standard,
15  Inc., 640 F.2d 974, 985 (9th Cir. 1981) (instruction stating that "a party's testimony on
16  alleged out of court admissions should be 'considered with caution and weighed with great
17  care'" may be appropriate).  As Mattel's instructions does not contain an instruction
18  providing for this principle, the proposed instruction is proper.

19

20

21

22

23

24

25

26

27

28

21

# QUESTIONS TO WITNESSES BY JURORS

You will be allowed to propose written questions to witnesses after the lawyers have completed their questioning of each witness.  You may propose questions in order to clarify the testimony, but you are not to express any opinion about the testimony or argue with a witness.  If you propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question on a form provided by the court.  Do not sign the question.  I will review the question with the attorneys to determine if it is legally proper.

There are some proposed questions that I will not permit, or will not ask in the wording submitted by the juror.  This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case.  If I do not ask a proposed question, or if I rephrase it, do not speculate as to the reasons.  Do not give undue weight to questions you or other jurors propose.  You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence.

By giving you the opportunity to propose questions, I am not requesting or suggesting that you do so.  It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions, Civil, 1.15 (2007).

**Mattel's Objections**

      Mattel objects to defendants' proposed instruction regarding Questions to Witnesses by Jurors on the following grounds:

      1.    This proposed "preliminary instruction" is moot because the trial in this matter has already commenced.

      2.    This proposed instruction is unnecessary and confusing unless the Court indicates that it intends to allow jurors to propose questions to be asked of witnesses in this case.  If the Court allows jurors to propose questions, Mattel does not object to the inclusion of Ninth Circuit Model Instruction 1.15 in the jury instructions.

## MGA Parties' Response

The MGA Parties include this Preliminary Instruction out of an abundance of caution.  In the event that the Court intends to give no such instruction at the conclusion of trial, it may be disregarded.   However, should the Court chose to repeat any of its introductory remarks, the MGA Parties respectfully submit that this proposed jury instruction would be appropriate.

Based on Mattel's response, Mattel, Bryant and the MGA Parties agree that this instruction should be given if the Court allows jurors to propose questions to be asked of witnesses. See United States v. Feinberg, 89 F.3d 333, 337 (7th Cir. 1996) ("Whether to permit jurors to ask questions is a decision best left to the discretion of the district judge."); accord United States v. Huebner, 48 F.3d 376, 382 (9th Cir. 1994) (procedure allowing jurors to ask questions was not in error).

## PHASE 1A CLAIMS INSTRUCTIONS

## DECLARATORY RELIEF

Mattel has asserted a claim for declaratory relief.

I will now instruct you regarding the law as to this claim.

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Declaratory Relief on the following grounds:

1. A declaratory relief claim is equitable and should be adjudicated by the Court, not the jury. Accordingly, there is no basis to give this instruction to the jury.

**MGA Parties' Response**

Mattel's blanket assertion that all declaratory relief claims are equitable in nature runs directly counter to long-established case law. "Insofar as the right to a jury trial is concerned, it is erroneous to say that all declaratory relief actions are equitable; an action for declaratory relief has been characterized as 'sui generis.' Where an action for declaratory relief is in effect used as a substitute for an action at law for breach of contract, a party is entitled to a jury trial as a matter of right." Patterson v. Ins. Co. of N. Am., 6 Cal. App. 3d 310, 315 (1970) (internal citations omitted); see also B.E. Witkin, Cal. Proc.: Trial § 95, p. 115 (4th ed. 1997) ("Unlike other equitable actions, declaratory relief is for some purposes treated as if it were a coercive proceeding, and the courts will not permit it to be used as a device to circumvent the right to a jury trial.") This is precisely the case here.

1   **-REVISED-**

2   **DECLARATORY RELIEF:  THE PARTIES' CLAIMS**

3

4   The parties dispute their rights and obligations with respect to certain BRATZ sketches

5   prepared by Carter Bryant.  Mattel seeks a declaration that MGA, Larian and MGA (HK)

6   have no valid ownership rights in the BRATZ sketches, that Mattel is the true owner of the

7   BRATZ sketches, and any agreements between Bryant and MGA assigning the rights to

8   the BRATZ sketches is void.  Isaac Larian, MGA and MGA (HK) dispute Mattel's claims.

9

10  Mattel's claim is based on an agreement between Carter Bryant and Mattel called the

11  "Employee Confidential Information and Inventions Agreement" or simply the

12  "Inventions Agreement."  In a few moments, I will explain this agreement and Mattel's

13  claims regarding this agreement in more detail.  In order to decide Mattel's declaratory

14  relief claim, you will first have to decide whether Carter Bryant breached certain sections

15  of the Inventions Agreement.

16

17     1.     If you find that Carter Bryant did not breach Section 2(a) of the Inventions

18  Agreement, you must also find that Mattel has not met its burden in proving its declaratory

19  relief claim.

20

21     2.     If you find that Carter Bryant did breach Section 2(a) of the Inventions

22  Agreement, you must then determine whether MGA purchased the rights in good faith.  If

23  you find MGA purchased its rights in good faith, you must find for MGA, MGA (HK),

24  and Isaac Larian on this claim.

25

26     3.     If you find that Carter Bryant did breach Section 2(a) of the Inventions

27  Agreement, and you do not find that MGA purchased its rights in good faith, then you

28  must determine whether, under section 204(a) of the Copyright Act and Section 988 of the

California Civil Code, the Inventions Agreement transferred any copyright ownership in the BRATZ sketches to Mattel.  If you find that the Inventions Agreement does not satisfy these sections, you must find for MGA, MGA (HK), and Isaac Larian on this claim.

Finally, if you find for Mattel on this claim, you must identify which BRATZ sketches MGA, Larian and MGA (HK) do not have a valid ownership interest in.

1 **Mattel's Objections**

2

3     Mattel objects to defendants' proposed instruction regarding Declaratory Relief: the

4 Parties' Claims Evidence of Good Faith on the following grounds:

5     1.    A declaratory relief claim is equitable and should be adjudicated by the Court,

6 not the jury.  Accordingly, there is no basis to give this instruction to the jury.

7     2.    In any event, this proposed instruction misstates the nature of Mattel's claim

8 for declaratory relief and is therefore prejudicial and misleading.  Mattel seeks a

9 declaration that defendants have no valid ownership interests in Bratz and that any

10 agreements between Carter Bryant and defendants purporting to assign defendants rights

11 in Bratz are void.  *See* Mattel, Inc.'s Second Amended Answer and Counterclaims, at

12 ¶¶ 168-170.  Defendants' assertion that the jury must determine whether Bryant breached

13 his contracts with Mattel in order to decide Mattel's declaratory relief claim is simply

14 incorrect.  The issue is whether Bryant conceived or created Bratz works while employed

15 by Mattel.  The Court has already ruled that Mattel rightfully owns such works.  *See* Final

16 Pre-Trial Conference Order, at 4.

17     3.    This proposed instruction also misstates the law.  Mattel's right to a

18 declaration that it owns Bryant's Bratz works is unaffected by whether defendants may

19 have acted in "good faith."  Good faith, to the extent relevant at all, would be relevant only

20 to a statutory defense to copyright infringement, and even then, would require that

21 defendants prove additional elements regarding registration and recordation events.

22 Defendants' effort to include an inapplicable defense in this proposed instruction is

23 unsupported by law.

24     4.    This proposed instruction is also contrary to the Court's prior rulings to the

25 extent it informs the jury that it must determine whether "the Inventions Agreement

26 transferred any copyright ownership in the Bratz sketches to Mattel."  The Court has

27 already held as a matter of law that the "Inventions Agreement explicitly conveys to Mattel

28 an employee's interest in any copyright applications" and that, assuming copyrightability

30

1  and resolution of timing issues in Mattel's favor, "the original Bratz drawings clearly fall

2  within the scope of the Inventions Agreement."  April 25, 2008 Order, at 4.  The Court

3  confirmed in the Final Pre-Trial Conference Order that "Mattel owns 'any Bratz-related

4  "inventions" (including any designs, improvements, ideas, concepts and copyrightable

5  subject matter)' that Carter Bryant 'created during the period of his employment with

6  Mattel.'"  Final Pre-Trial Conference Order, at 4.

7       5.      Mattel also objects to defendants' use of the pejorative term "sketches" when

8  referring to Mr. Bryant's drawings and designs.

9       6.      This proposed instruction is confusing.  It has no fewer than six

10  contingencies.  (E.g. "If you found . . . , and if you do not find . . . then you must determine

11  whether . . .")  It is extraordinarily difficult, if not incomprehensible, for the jury to

12  ascertain exactly what defendants are asking the jury to do.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | **MGA Parties' Response**

2

3 Mattel's blanket assertion that all declaratory relief claims are equitable in nature runs
4 directly counter to long-established case law.  "Insofar as the right to a jury trial is
5 concerned, it is erroneous to say that all declaratory relief actions are equitable; an action
6 for declaratory relief has been characterized as 'sui generis.'  Where an action for
7 declaratory relief is in effect used as a substitute for an action at law for breach of contract,
8 a party is entitled to a jury trial as a matter of right."  Patterson v. Ins. Co. of N. Am., 6 Cal.
9 App. 3d 310, 315 (1970) (internal citations omitted); see also B.E. Witkin, Cal. Proc.: Trial
10 § 95, p. 115 (4th ed. 1997) ("Unlike other equitable actions, declaratory relief is for some
11 purposes treated as if it were a coercive proceeding, and the courts will not permit it to be
12 used as a device to circumvent the right to a jury trial.")  This is precisely the case here.

13

14 Mattel's objection that good faith is not relevant is unsupported by law (as evidenced by
15 Mattel's failure to cite any authority for its contention) and ignores that, to the extent each
16 of Mattel's claims implicate defendants' intent or mental state, good faith is a factor on
17 which Mattel bears the burden of proof.  As the MGA Parties detailed at length in
18 opposing Mattel's motion for summary judgment, good faith is plainly an issue that is
19 relevant for the jury's consideration on any claim where the MGA Parties' intent or
20 scienter is an element – which is to say on virtually every claim, including Mattel's claims
21 for intentional interference with contract and aiding and abetting claims. Good faith is
22 relevant to any claim where intent is required or pled as an element.  See, e.g., State Farm
23 Mut. Auto. Ins. Co. v. Superior Court, 228 Cal. App. 3d 721, 727 (1991) (holding that,
24 where purported affirmative defense was relevant to negate alleged intent, it was not
25 properly considered an affirmative defense but rather a denial of plaintiff's allegations,
26 which could be proven as such at trial).

27

28 Mattel overstates the Court's ruling with respect to the Inventions Agreement.  The Court

32

1  found as a matter of law that the Inventions Agreement was a valid and enforceable
2  contract and that it creates certain rights for Mattel over "any Bratz-related 'inventions'
3  (including any designs, improvements, ideas, concepts and copyrightable subject matter"
4  that Bryant "created during the period of his employment with Mattel") and rejected
5  certain defenses (Labor Code § 2870 and preparations to compete).   Final Pre-Trial
6  Conference Order at 4.   The MGA Parties' revised jury instructions reflect this ruling.
7  However, that is where the ruling ends, and it leaves much for the jury to decide. Indeed,
8  the Court has already observed the complexity of this process, noting that "it is
9  uncontroverted that four drawings (each with a color and black and white version) of dolls
10 in evening wear were created by Bryant during the period of his employment with Mattel",
11 yet "the scope of the rights that may be assigned to Mattel under the Inventions Agreement
12 is unclear in light of the larger disputed factual issue regarding the remaining Bratz
13 drawings."   May 21, 2008 Order at 8.   As such, instructions on the interpretation of
14 contractual terms, and any other instructions that aid the jury in applying the terms of the
15 Inventions Agreement to specific pieces of evidence, continue to be important.

16

17 More importantly, the Court did not resolve the validity of Bryant's transfer of his
18 ownership of his drawings to MGA.   Even if the jury resolves that an individual item
19 belonged to Mattel rather than Bryant at its creation, this does not resolve whether it
20 belongs to Mattel or MGA now.

21

22 The term "sketch" is not pejorative or derogatory and Mattel has not cited anything to
23 support its contention that the term is "pejorative."   Mattel's own expert used the term
24 repeatedly in reference to Bryant's works at issue here.   (See, e.g., Loetz Report, at 2
25 ("When a designer has an idea, he sketches it out."); id. at 4 ("In Carter Bryant's sketches,
26 the Bratz figures are posed …."); id. at 6 ("The Bratz sketches were drawn …."); id. at 9
27 ("It is the industry standard when creating a new toy … to have the original artist draw
28 sketches"); Loetz Depo. at 83:6-13 ("Q. Does the term 'sketch' versus 'drawing' have any

33

1  distinct meaning to you?  A.  Not really …. I don't think there's any real distinction and I
2  think they're used interchangeably.").)

3

4  Mattel's suggestion that this instruction is too complex is also misplaced, as the instruction
5  is only as complex as the issue of ownership itself.  Declaratory relief only comes into play
6  if (1) Section 2(a) of the Inventions Agreement encompasses Bryant's sketches, (2)
7  Section 988 of the Civil Code and 17 U.S.C. Section 204(a) do not defeat the assignment,
8  and (3) MGA is not a good faith purchaser. Mattel attempts to oversimplify the
9  requirements of declaratory relief and thereby prejudice the defendants.

10

11  Finally, Mattel's assertion that the issue to be decided on declaratory relief is "whether
12  Bryant conceived or created Bratz works while employed at Mattel" is inaccurate for the
13  reasons just described.  Ownership is not a simple matter of timing.  Even if Bryant created
14  certain works while employed at Mattel, Mattel's ownership of those works is contingent
15  on the exercise of its contract with Bryant.  If that contract was not breached, either
16  because it did not effectively convey ownership of a particular work or because some
17  affirmative defense precludes Mattel from enforcing its rights under the contract, then
18  Mattel claim for declaratory relief fails.

19

20

21

22

23

24

25

26

27

28

Objections and Responses Re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**BREACH OF CONTRACT CLAIMS**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

**BREACH OF CONTRACT—INTRODUCTION**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

Objections and Responses Re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1

## -REVISED-

2 ## BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS

3

4 To show that Carter Bryant has breached a contract, Mattel must prove all of the following:

5

6   1.  That Mattel and Carter Bryant entered into a valid contract (For purposes of this trial,
7       you are to assume that a valid contract exists);

8

9   2.  That Mattel did all, or substantially all, of the significant things that the contract
10      required it to do;

11

12  3.  That all the conditions by the contract for Carter Bryant's performance had occurred;

13

14  4.  That Carter Bryant did something that the contract prohibited him from doing or
15      failed to do something he was obligated to do; and

16

17  5.  That Mattel was harmed by that conduct.

18

19 **Authority:** CACI No. 303 (2008) (as modified).

20

21

22

23

24

25

26

27

28

Objections and Responses Re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1
2

**Mattel's Objections**

3    Mattel objects to defendants' proposed instruction regarding Breach of Contract—
4  Essential Factual Elements on the following grounds:

5    1.    This proposed instruction deviates from the model instruction found in CACI.
6  *See* CACI No. 303.  Defendants have changed the term "contract" to "valid contract,"
7  which is unnecessary and argumentative.

8    2.    This proposed instruction is also misleading and unnecessary because Mattel
9  need not show that Bryant breached his contract or contracts with Mattel in order to
10  recover against defendants for intentional interference with contractual relations.  Mattel
11  must prove that "the conduct of MGA and/or Mr. Larian prevented performance or made
12  performance more difficult."  *See* CACI No. 2201; Mattel's Proposed Jury Instruction re
13  Intentional Interference With Contractual Relations; *see also Family Home & Finance
14  Center, Inc. v. Fed. Home Loan Mortg. Corp.*, 461 F. Supp. 2d 1188, 1193 (C.D. Cal.
15  2006) (referring to "actual breach <u>or disruption</u> of the contractual relationship") (emphasis
16  added).

17    3.    To the extent the Court decides to give any instruction on this issue, it should
18  give the model instruction found in CACI, as set forth below:

19    To show that Carter Bryant breached a contract or contracts with
20    Mattel, Mattel must prove that:

21    That Mattel and Mr. Bryant entered into a contract or contracts;

22    That Mattel did all, or substantially all, of the significant things that
23    the contract required Mattel to do;

24    That Mr. Bryant failed to do something that the contract required him
25    to do; and

26    That Mattel was harmed by that failure.

27    **Authority:**  CACI No. 303.

28

**1**   **MGA Parties' Response**

**2**

**3**   Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.

**4**   In proposing jury instructions, the parties are permitted to modify the language of any

**5**   model instruction to make it less confusing or more appropriate in the context of a

**6**   particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997)

**7**   (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The

**8**   texts of 'standard' jury instructions are not debated and hammered out by legislators, but

**9**   by ad hoc committees of lawyers and judges.  Jury instructions do not come down from

**10**  any mountain or rise up from any sea.  Their precise wording, although extremely useful,

**11**  is not blessed with any special precedential or binding authority.  This description does not

**12**  denigrate their value, it simply places them in the niche where they belong.").   Indeed,

**13**  modification is sometimes necessary to make an instruction accurate and complete.  See,

**14**  e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification

**15**  of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the

**16**  district court merely read the model jury instruction, it would have committed plain error,

**17**  since that instruction makes no reference whatsoever to knowledge or intent.").

**18**

**19**  Contrary to Mattel's assertions, this instruction is necessary.  To begin with, it goes to

**20**  Mattel's claim for declaratory relief, which turns on its assertion of a breach of contract.

**21**  As noted above, the jury will be focused on interpreting the Inventions Agreement when

**22**  decides Mattel's claim for declaratory relief.  Moreover, while Mattel is correct that the

**23**  fourth element of a claim for intentional interference with contractual relations is

**24**  sometimes phrased "breach or disruption," it is quite apparent that Mattel has not brought

**25**  this claim on the basis of a purported disruption, but rather a purported actual breach.

**26**  Indeed, in denying MGA motion's for summary judgment on this claim, the Court noted

**27**  that "as set forth above, Mattel has also raised triable issues of fact regarding its claim for

**28**  breach of contract, the fourth element."  May 21, 2008 Order at 9.  Put simply, Mattel is

38

1  not contending Bryant took a leave of absence – he left.   The relationship was not

2  "disrupted," it was terminated.   Thus, Mattel will not succeed in its claim unless it shows a

3  breach. See Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc., 7 F.3d 1434,

4  1442 (9th Cir. 1993) ("To recover for intentional interference with a contractual

5  relationship, Summit must show '(1) that [it] had a valid and existing contract, (2) that

6  [Victor] had knowledge of the contract and intended to induce its breach, (3) that the

7  contract was in fact breached by [ZMTW], (4) that the breach was caused by [Victor's]

8  unjustified and wrongful conduct, and (5) that [Summit] has suffered damage.'")

9  (emphasis added); see also Anlin Industries, Inc. v. Burgess, 2006 WL 2308476, at *3

10  (E.D. Cal. Aug. 9, 2006) ("To state a cause of action for interference with contract under

11  California law, a plaintiff must allege (1) a valid contract between the plaintiff and a third

12  party; (2) that the defendant had knowledge of this contract and intended to induce its

13  breach; (3) that the contract was breached; (4) that the breach was caused by the

14  defendant's wrongful and unjustified conduct; and (5) that the plaintiff suffered damage.")

15  (emphasis added); Farmers Ins. Exchange v. State of California, 175 Cal. App. 3d 494, 506

16  (1985) ("The elements of this tort [for intentional interference with contract] include: 1)

17  The existence of a valid contract; 2) knowledge of the contract on the part of defendant

18  and intent to induce its breach; 3) breach of the contract by the third party; 4) proximate

19  cause; 5) damages.") (emphasis added).

20

21  As for Mattel's counter instruction on this subject, it should not be given for the reasons

22  stated in MGA Parties' objections thereto.

23

24

25

26

27

28

Objections and Responses Re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**-REVISED-**

## CONTRACT CLAIM – SECTION 2(A) OF INVENTIONS AGREEMENT

Mattel claims that Carter Bryant breached Sections 2(a) of his Inventions Agreement.

Section 2(a) provides: "I agree to communicate to the Company as promptly and fully as practicable all inventions [as defined below] conceived or reduced to practice by me (alone or jointly by others) at any time during my employment by the Company. I hereby assign to the Company and/or its nominees all my right, title and interest in such inventions, and all my right, title and interest in any patents, copyrights, patent applications or copyright applications based thereon. I will assist the Company and/or its nominees (without charge but at no expense to me) at any time in every proper way to obtain for its and/or their own benefit, patents, and copyrights for all such inventions anywhere in the world and to enforce its and/or their rights in legal proceedings."

The Inventions Agreement defines the term "inventions" as follows: "the term 'inventions' includes, but is not limited to, all discoveries, improvements, processes, developments, designs, know-how, data computer programs and formulae, whether patentable or unpatentable."

Mattel's claim relates to the BRATZ sketches prepared by Carter Bryant, which have been admitted into evidence as Exhibits _____. Mattel claims that the term "inventions" in the Inventions Agreement includes all creative works and applies to the BRATZ sketches. Mattel also contends that Carter Bryant "conceived or reduced to practice" the BRATZ sketches during his employment at Mattel. Mattel claims that Carter Bryant breached Section 2(a) of the Inventions Agreement by failing to communicate those "inventions" to Mattel.

MGA contends that Bryant neither conceived of the BRATZ sketches nor reduced them to practice during his employment at Mattel.

In order to prevail on its claim, Mattel bears the burden of proving by a preponderance of the evidence:

      1.     That the term "inventions" in the Inventions Agreement applies to the BRATZ sketches;

      2.     That Carter Bryant conceived or reduced to practice the invention during his employment at Mattel;

      3.     That Carter Bryant failed to communicate to Mattel the invention as promptly and fully as practicable; and

      4.     That Mattel was harmed by that failure.

**Authority:**  CACI No. 303 (2008) (as modified); Hitzeman v. Rutter, 243 F.3d 1345, 1356 (Fed Cir. 2001) (quoting Burroughs Wellcome Co. v. Barr Labs., Inc., 40 F.3d 1223, 1228 (1994)).

1  **Mattel's Objections**

2

3       Mattel objects to defendants' proposed instruction regarding Contract Claim—

4  Section 2(A) of Inventions Agreement on the following grounds:

5       1.      This proposed instruction is confusing and erroneous because Mattel is no

6  longer pursuing a claim for breach of contract.  Accordingly, it is not proper for defendants

7  to instruct the jury that Mattel must prove elements of a breach of contract claim "[i]n

8  order to prevail on its claim."  In order to prevail on a claim against defendants for

9  intentional interference with contractual relations, Mattel need only prove that defendants

10 made performance more difficult or disrupted the contract.  *See* CACI No. 2201; *see also*

11 *Family Home & Finance Ctr., Inc. v. Fed. Home Loan Morg. Corp.*, 461 F. Supp. 2d 1188,

12 1193 (C.D. Cal. 2006).  It is therefore unnecessary and potentially confusing to instruct the

13 jury on the elements of a breach of contract claim.

14      2.      In any event, the proposed instruction deviates from the model instruction

15 found in CACI.  *See* CACI No. 303.  Defendants add unnecessary and confusing language

16 regarding the parties' arguments and misstate the elements of a breach of contract claim.

17 The proposed instruction erroneously suggests that Mattel must prove additional elements,

18 beyond those set forth in CACI No. 303.

19      3.      This proposed instruction also fails to properly inform the jury of the Court's

20 prior rulings.  For example, defendants claim that Mattel bears the burden of proving that

21 the term "inventions" in the Inventions Agreement applies to the Bratz drawings—the

22 Court has already held as a matter of law, however, that the "Inventions Agreement

23 explicitly conveys to Mattel an employee's interest in any copyright applications" and that,

24 assuming copyrightability and resolution of timing issues in Mattel's favor, "the original

25 Bratz drawings clearly fall within the scope of the Inventions Agreement."  *See* April 25,

26 2008 Order, at 4.  The Court has also already found that Bryant failed to communicate his

27 inventions to Mattel.  *Id.* at 6.  None of these rulings are communicated to the jury in this

28 proposed instruction.

1       4.     It is misleading and prejudicial for defendants to refer to the Court's prior

2   findings as Mattel's "claims" in this case as opposed to the prior rulings of the Court.

3       5.     This proposed instruction is argumentative and misstates Mattel's claims in

4   this case.  The "instruction" emphasizes defendants' contentions and theories, rather than

5   instructing the jury on the law.

6       6.     Mattel also objects to the use of the pejorative term "sketches" when referring

7   to Mr. Bryant's drawings and designs.

8       7.     Defendants' reliance on *Hitzeman v. Rutter*, 243 F.3d 1345, 1356 (Fed. Cir.

9   2001), a patent interference case, to inform the meaning of "conceive" in the Inventions

10  Agreement is improper absent a showing that both Mattel and Carter Bryant intended

11  "conceive" to have only the technical meaning that it has under patent law.

12      8.     This proposed instruction is also duplicative of defendants' prior proposed

13  instruction regarding breach of contract, and is misleading and unnecessary because Mattel

14  need not show that Bryant breached his contract with Mattel in order to recover against

15  defendants for intentional interference with contractual relations.  Mattel must prove that

16  "the conduct of MGA and/or Mr. Larian prevented performance or made performance

17  more difficult."  *See* CACI No. 2201; Mattel's Proposed Jury Instruction re Intentional

18  Interference With Contractual Relations; *see also Family Home & Finance Center, Inc. v.*

19  *Fed. Home Loan Mortg. Corp.*, 461 F. Supp. 2d 1188, 1193 (C.D. Cal. 2006) (referring to

20  "actual breach or disruption of the contractual relationship") (emphasis added).

21

22

23

24

25

26

27

28

1 | **MGA Parties' Response**

2

3  Contrary to Mattel's assertions, this instruction is necessary.  To begin with, it goes to

4  Mattel's claim for declaratory relief, which turns on its assertion of a breach of contract.

5  As noted above, the jury will be focused on interpreting the Inventions Agreement when

6  decides Mattel's claim for declaratory relief.  Moreover, while Mattel is correct that the

7  fourth element of a claim for intentional interference with contractual relations is

8  sometimes phrased "breach or disruption," it is quite apparent that Mattel has not brought

9  this claim on the basis of a purported disruption, but rather a purported actual breach.

10  Indeed, in denying MGA motion's for summary judgment on this claim, the Court noted

11  that "as set forth above, Mattel has also raised triable issues of fact regarding its claim for

12  breach of contract, the fourth element."  May 21, 2008 Order at 9.  Put simply, Mattel is

13  not contending Bryant took a leave of absence – he left.  The relationship was not

14  "disrupted," it was terminated.  Thus, Mattel will not succeed in its claim unless it shows a

15  breach. See Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc., 7 F.3d 1434,

16  1442 (9th Cir. 1993) ("To recover for intentional interference with a contractual

17  relationship, Summit must show '(1) that [it] had a valid and existing contract, (2) that

18  [Victor] had knowledge of the contract and intended to induce its breach, (3) that the

19  contract was in fact breached by [ZMTW], (4) that the breach was caused by [Victor's]

20  unjustified and wrongful conduct, and (5) that [Summit] has suffered damage.'")

21  (emphasis added); see also Anlin Industries, Inc. v. Burgess, 2006 WL 2308476, at *3

22  (E.D. Cal. Aug. 9, 2006) ("To state a cause of action for interference with contract under

23  California law, a plaintiff must allege (1) a valid contract between the plaintiff and a third

24  party; (2) that the defendant had knowledge of this contract and intended to induce its

25  breach; (3) that the contract was breached; (4) that the breach was caused by the

26  defendant's wrongful and unjustified conduct; and (5) that the plaintiff suffered damage.")

27  (emphasis added); Farmers Ins. Exchange v. State of California, 175 Cal. App. 3d 494, 506

28  (1985) ("The elements of this tort [for intentional interference with contract] include: 1)

1  The existence of a valid contract; 2) knowledge of the contract on the part of defendant
2  and intent to induce its breach; 3) breach of the contract by the third party; 4) proximate
3  cause; 5) damages.") (emphasis added).

4

5  Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.
6  In proposing jury instructions, the parties are permitted to modify the language of any
7  model instruction to make it less confusing or more appropriate in the context of a
8  particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997)
9  (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The
10 texts of 'standard' jury instructions are not debated and hammered out by legislators, but
11 by ad hoc committees of lawyers and judges.  Jury instructions do not come down from
12 any mountain or rise up from any sea.  Their precise wording, although extremely useful,
13 is not blessed with any special precedential or binding authority.  This description does not
14 denigrate their value, it simply places them in the niche where they belong.").   Indeed,
15 modification is sometimes necessary to make an instruction accurate and complete.  See,
16 e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification
17 of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the
18 district court merely read the model jury instruction, it would have committed plain error,
19 since that instruction makes no reference whatsoever to knowledge or intent.").  As shown
20 below, the modifications in question are warranted by the issues before the Court.

21

22 Moreover, the CACI instructions for use of CACI 303 direct the parties to omit elements
23 that are not contested. Accordingly, with respect to the Inventions Agreement, the MGA
24 Parties omitted the element pertaining to entering into a contract in reliance on the Court's
25 prior ruling establishing that there is no dispute as to the fact that Bryant and Mattel
26 entered into a contract.  As proposed, the preceding instruction thus correctly states the
27 remaining elements that Mattel is still required to prove.  More importantly, the instruction
28 breaks down the element of breach of Section 2(a) of the Inventions Agreement into the

45

1  proposed subparts based upon the specific contractual language that Mattel is alleging

2  Bryant breached. This issue of the timing of the conception of BRATZ, the timing of its

3  reduction to practice, and whether either was done during Bryant's employment are critical

4  to the resolution of the Mattel's breach of contract claim.  This is precisely the reason why

5  each alleged breach must be dealt with in a separate instruction, as proposed by the MGA

6  Parties. Indeed, the Court's own Phasing Order has been expressly designed to allow for

7  clear and specific presentation to the jury of the breaches at issue. Thus, the "additional"

8  elements that Mattel complains it should not be required to prove are actually the very

9  contractual provisions that Mattel alleges Bryant breached.

10

11  Mattel overstates the Court's ruling with respect to the Inventions Agreement.  The Court

12  found as a matter of law that the inventions agreement was a valid and enforceable

13  contract and that it creates certain rights for Mattel over "any Bratz-related 'inventions'

14  (including any designs, improvements, ideas, concepts and copyrightable subject matter"

15  that Bryant "created during the period of his employment with Mattel") and rejected

16  certain defenses (Labor Code § 2870 and preparations to compete). Final Pre-Trial

17  Conference Order at 4.  The MGA Parties' revised jury instructions reflect this ruling.

18  However, that is where the ruling ends, and it leaves much for the jury to decide.  For

19  example, as the court noted, its holding was contingent on "the resolution of certain (as yet

20  unresolved) issues of timing of creation and/or alteration."  April 25, 2008 Order at 4.  In

21  order to decide the timing of creation, the jury must first decide what sorts of acts count as

22  "creation" in the context of this contract.  This will require the jury to interpret the contract.

23  The jury will also have to decide the scope of the term "inventions" – while the Court has

24  laid out in general terms what is included, it will be for the jury to look at an individual

25  purported "invention" and determine whether that particular item falls within the scope.

26  Indeed, the Court has already observed the complexity of this process, noting that "it is

27  uncontroverted that four drawings (each with a color and black and white version) of dolls

28  in evening wear were created by Bryant during the period of his employment with Mattel"

1   yet "the scope of the rights that may be assigned to Mattel under the Inventions Agreement
2   is unclear in light of the larger disputed factual issue regarding the remaining Bratz
3   drawings."   May 21, 2008 Order at 8.   As such, instructions on the interpretation of
4   contractual terms, and any other instructions that aid the jury in applying the terms of the
5   Inventions Agreement to specific pieces of evidence, continue to be important.

6

7   Mattel's complaint that the instruction is argumentative and allegedly emphasizes the
8   defenses asserted misses the mark.   The instruction quotes the language of the contract at
9   issue, unlike Mattel's own proposed instruction on this subject, which blatantly
10  mischaracterizes the contract and the Court's April 25, 2008 Order.   Further, as
11  appropriate under CACI No. 300, the instruction sets forth both Mattel's contentions
12  concerning Mattel's claim for breach of Section 2(a) of the Inventions Agreement.

13

14  The term "sketch" is not pejorative or derogatory and Mattel has not cited anything to
15  support its contention that the term is "pejorative."   Mattel's own expert used the term
16  repeatedly in reference to Bryant's works at issue here.   (See, e.g., Loetz Report, at 2
17  ("When a designer has an idea, he sketches it out."); id. at 4 ("In Carter Bryant's sketches,
18  the Bratz figures are posed …."); id. at 6 ("The Bratz sketches were drawn …."); id. at 9
19  ("It is the industry standard when creating a new toy … to have the original artist draw
20  sketches"); Loetz Depo. at 83:6-13 ("Q. Does the term 'sketch' versus 'drawing' have any
21  distinct meaning to you?  A. Not really …. I don't think there's any real distinction and I
22  think they're used interchangeably.").)

23

24  Finally, Mattel's quarrel with the MGA Parties' reliance on Hitzeman v. Rutter Group, 243
25  F.3d 1345, 1356 (Fed. Cir. 2001), to inform the meaning of "conceive" in the Inventions
26  Agreement is unavailing, as there is no evidence that the parties intended any other
27  meaning of the terms "conceived and reduced to practice" than its technical meaning under
28  the established law; therefore, it would be inappropriate to submit the interpretation of the

47

terms in question to the jury without the instruction proposed by the MGA Parties. Indeed, Mattel does not dispute that the meaning of the term as set forth in the MGA Parties' proposed instruction accurately reflects the technical meaning of the term in question.

Objections and Responses Re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

## INTERPRETATION OF PARTICULAR TERMS

I am going to instruct you as to the meaning of certain terms in the Inventions Agreement. "Conceived" refers to the mental part of an invention.  The test for conception is whether the inventor had an idea that was definite and permanent enough that one skilled in the art could understand the invention.  An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan.

"Reduced to practice" refers to creating the physical embodiment of an invention that achieves its purported purpose.  In order for an invention to be reduced to practice, the invention does not need to be in a final or perfect form, but the inventor's efforts must have passed beyond crude and imperfect experiments.

I have found that the following terms are ambiguous.  You must determine whether Mattel has met its burden to prove the meaning of the term "inventions" and the term "during my employment by the Company."  The following instructions may help you interpret the meaning of those terms in the contract.

**Authority:**  CACI No. 314 (2008) (as modified); <u>Hitzeman v. Rutter</u>, 243 F.3d 1345, 1356 (Fed Cir. 2001) (quoting <u>Burroughs Wellcome Co. v. Barr Labs., Inc.</u>, 40 F.3d 1223, 1228 (Fed. Cir. 1994)).

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Interpretation of Particular Terms on the following grounds:

1.      This proposed instruction is confusing and erroneous because Mattel is no longer pursuing a claim for breach of contract, and there does not appear to be any reason to instruct the jury as to the interpretation of the referenced terms in the Inventions Agreement.

2.      In any event, defendants' proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court explicitly held that the "Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials."  April 25, 2008 Order, at 4.  The Court found that the "Inventions Agreement explicitly conveys to Mattel an employee's interests in any copyright or copyrights."  *Id.*  Finally, the Court held that "the original Bratz drawings clearly fall within the scope of the Inventions Agreement."  *Id.*  Indeed, the Court explicitly found that defendants' proposed interpretation of the Inventions Agreement is "not reasonable."  *Id.*  Accordingly, this proposed instruction, which purports to tell the jury that the Court has found "the following terms are ambiguous" is improper and misleading.

3.      The interpretation of terms in the contracts between Mattel and Bryant because the interpretation of written contracts is for the Court, not the jury.  *See Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).

4.      Because there is no genuine dispute as to the interpretation of the Inventions Agreement (per the Court's April 25, 2008 Order), there is no basis to give this proposed instruction.  Although defendants cite CACI No. 314, this proposed instruction bears no resemblance to that model instruction.

5.      Defendants' reliance on *Hitzeman v. Rutter*, 243 F.3d 1345, 1356 (Fed. Cir. 2001), a patent interference case, to inform the meaning of "conceive" or "reduced to practice" in the Inventions Agreement is improper absent a showing that both Mattel and

50

1  Carter Bryant intended those terms to have only the technical meaning that they may have

2  under patent law.  The Court explicitly rejected this argument in its April 25, 2008 Order.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MGA Parties' Response**

Contrary to Mattel's assertions, this instruction is necessary.  To begin with, it goes to Mattel's claim for declaratory relief, which turns on its assertion of a breach of contract.  As noted above, the jury will be focused on interpreting the Inventions Agreement when decides Mattel's claim for declaratory relief.  Moreover, it is also relevant for Mattel's intentional interference with contract claim. See Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc., 7 F.3d 1434, 1442 (9th Cir. 1993) ("To recover for intentional interference with a contractual relationship, Summit must show '(1) that [it] had a valid and existing contract, (2) that [Victor] had knowledge of the contract and intended to induce its breach, (3) that the contract was in fact breached by [ZMTW], (4) that the breach was caused by [Victor's] unjustified and wrongful conduct, and (5) that [Summit] has suffered damage.'") (emphasis added); see also Anlin Industries, Inc. v. Burgess, 2006 WL 2308476, at *3 (E.D. Cal. Aug. 9, 2006) ("To state a cause of action for interference with contract under California law, a plaintiff must allege (1) a valid contract between the plaintiff and a third party; (2) that the defendant had knowledge of this contract and intended to induce its breach; (3) that the contract was breached; (4) that the breach was caused by the defendant's wrongful and unjustified conduct; and (5) that the plaintiff suffered damage.") (emphasis added); Farmers Ins. Exchange v. State of California, 175 Cal. App. 3d 494, 506 (1985) ("The elements of this tort [for intentional interference with contract] include: 1) The existence of a valid contract; 2) knowledge of the contract on the part of defendant and intent to induce its breach; 3) breach of the contract by the third party; 4) proximate cause; 5) damages.") (emphasis added).

Mattel overstates the Court's ruling with respect to the Inventions Agreement.  The Court found as a matter of law that the inventions agreement was a valid and enforceable contract and that it creates certain rights for Mattel over "any Bratz-related 'inventions' (including any designs, improvements, ideas, concepts and copyrightable subject matter"

1  that Bryant "created during the period of his employment with Mattel") and rejected
2  certain defenses (Labor Code § 2870 and preparations to compete). Final Pre-Trial
3  Conference Order at 4.   The MGA Parties' revised jury instructions reflect this ruling.
4  However, that is where the ruling ends, and it leaves much for the jury to decide.   For
5  example, as the court noted, its holding was contingent on "the resolution of certain (as yet
6  unresolved) issues of timing of creation and/or alteration."   April 25, 2008 Order at 4.   In
7  order to decide the timing of creation, the jury must first decide what sorts of acts count as
8  "creation" in the context of this contract.   This will require the jury to interpret the contract.
9  The jury will also have to decide the scope of the term "inventions" – while the Court has
10 laid out in general terms what is included, it will be for the jury to look at an individual
11 purported "invention" and determine whether that particular item falls within the scope.
12 Indeed, the Court has already observed the complexity of this process, noting that "it is
13 uncontroverted that four drawings (each with a color and black and white version) of dolls
14 in evening wear were created by Bryant during the period of his employment with Mattel"
15 yet "the scope of the rights that may be assigned to Mattel under the Inventions Agreement
16 is unclear in light of the larger disputed factual issue regarding the remaining Bratz
17 drawings."   May 21, 2008 Order at 8.   As such, instructions on the interpretation of
18 contractual terms, and any other instructions that aid the jury in applying the terms of the
19 Inventions Agreement to specific pieces of evidence, continue to be important.

20

21 Further, the jury must interpret particular contractual terms to the extent conflicting
22 extrinsic evidence supports more than one reading of the particular terms.   See City of
23 Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 395 (2008) (affirming
24 submission of contract interpretation issue to the jury where disputed factual evidence
25 potentially supports more than one reading of a contract term); Dell'Oca v. Bank of New
26 York Trust Co., N.A., 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although interpretation of
27 a contract is essentially a judicial function, it is the jury's responsibility, as the trier of fact,
28 to resolve any conflicts in the extrinsic evidence properly admitted to interpret the

language of a contract.") (internal citations omitted); <u>Morey v. Vannucci</u>, 64 Cal. App. 4th 904, 912-13 (1998) ("Where the interpretation of contractual language turns on a question of the credibility of <u>conflicting</u> extrinsic evidence, interpretation of the language is not solely a judicial function. As trier of fact, it is the jury's responsibility to resolve any conflict in the extrinsic evidence properly admitted to interpret the language of a contract.") (internal citations omitted); <u>see also</u> <u>First Nat'l. Mortg. Co. v. Federal Realty Inv. Trust</u>, 2006 WL 2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's responsibility to resolve any conflict in the extrinsic evidence properly admitted to interpret the language of a contract," quoting <u>Morey v. Vannucci</u>); <u>Fletcher Capital Mkts., Inc. v. Calgene, Inc.</u>, 1998 WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California law, noting that "[i]f the parol evidence is in conflict, the resolution of that conflict is a question of fact for the jury").

Mattel's quarrel with the MGA Parties' reliance on <u>Hitzeman v. Rutter Group</u>, 243 F.3d 1345, 1356 (Fed. Cir. 2001), to inform the meaning of "conceive" in the Inventions Agreement is unavailing, as there is no evidence that the parties intended any other meaning of the terms "conceived and reduced to practice" than its technical meaning under the established law; therefore, it would be inappropriate to submit the interpretation of the terms in question to the jury without the instruction proposed by the MGA Parties. Indeed, Mattel does not dispute that the meaning of the term as set forth in the MGA Parties' proposed instruction accurately reflects the technical meaning of the term in question.

54

1

**INTERPRETATION—DISPUTED TERM**

2

3   In deciding what the terms of a contract mean, you must decide what the parties intended

4   at the time the contract was created.  You may consider the usual and ordinary meaning of

5   the language used in the contract as well as the circumstances surrounding the making of

6   the contract.

7

8   **Authority:** CACI No. 314 (2008) (as modified).

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1 **Mattel's Objections**

2

3    Mattel objects to defendants' proposed instruction regarding Interpretation—
4 Disputed Term on the following grounds:

5    1.    This proposed instruction is confusing and erroneous because Mattel is no
6 longer pursuing a claim for breach of contract, and there does not appear to be any reason
7 to instruct the jury as to the interpretation of "disputed" contract terms.

8    2.    Defendants' proposed instruction is contrary to the Court's April 25, 2008
9 Order.  As far as Mattel is aware, no viable disputes regarding the terms of the Inventions
10 Agreement remain in light of the Court's rulings.  The Court already explicitly held that the
11 "Inventions Agreement is not ambiguous on the issue of its scope with respect to
12 copyrightable materials."  April 25, 2008 Order, at 4.  The Court found that the "Inventions
13 Agreement explicitly conveys to Mattel an employee's interests in any copyright or
14 copyrights."  *Id.*  Finally, the Court held that "the original Bratz drawings clearly fall
15 within the scope of the Inventions Agreement."  *Id.*  Indeed, the Court explicitly found that
16 Bryant's proposed interpretation of the Inventions Agreement is "not reasonable."  *Id.*
17 Accordingly, this proposed instruction, which purports to tell the jury what to do "[i]n
18 deciding what the terms of a contract mean" is improper and misleading.

19    3.    In any event, it would be erroneous as a matter of law to give the jury
20 instructions regarding the interpretation of terms in the contracts between Mattel and
21 Bryant because the interpretation of written contracts is for the Court, not the jury.  *See*
22 *Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).

23    4.    This proposed instruction deviates from the model instruction found in CACI
24 and is misleading.  Defendants include only one paragraph from CACI No. 314, and omit
25 two others.  CACI No. 314 also states that the parties' respective positions regarding
26 interpretation issues should be inserted in the instruction, which defendants fail to do.

27

28

56

1    **MGA Parties' Response**

2

3    Contrary to Mattel's assertions, this instruction is necessary.  To begin with, it goes to

4    Mattel's claim for declaratory relief, which turns on its assertion of a breach of contract.

5    As noted above, the jury will be focused on interpreting the Inventions Agreement when

6    decides Mattel's claim for declaratory relief.  Moreover, it is also relevant to Mattel's

7    intentional interference with contract claim. See Summit Mach. Tool Mfg. Corp. v. Victor

8    CNC Systems, Inc., 7 F.3d 1434, 1442 (9th Cir. 1993) ("To recover for intentional

9    interference with a contractual relationship, Summit must show '(1) that [it] had a valid

10   and existing contract, (2) that [Victor] had knowledge of the contract and intended to

11   induce its breach, (3) that the contract was in fact breached by [ZMTW], (4) that the

12   breach was caused by [Victor's] unjustified and wrongful conduct, and (5) that [Summit]

13   has suffered damage.'") (emphasis added); see also Anlin Industries, Inc. v. Burgess, 2006

14   WL 2308476, at *3 (E.D. Cal. Aug. 9, 2006) ("To state a cause of action for interference

15   with contract under California law, a plaintiff must allege (1) a valid contract between the

16   plaintiff and a third party; (2) that the defendant had knowledge of this contract and

17   intended to induce its breach; (3) that the contract was breached; (4) that the breach was

18   caused by the defendant's wrongful and unjustified conduct; and (5) that the plaintiff

19   suffered damage.") (emphasis added); Farmers Ins. Exchange v. State of California, 175

20   Cal. App. 3d 494, 506 (1985) ("The elements of this tort [for intentional interference with

21   contract] include: 1) The existence of a valid contract; 2) knowledge of the contract on the

22   part of defendant and intent to induce its breach; 3) breach of the contract by the third

23   party; 4) proximate cause; 5) damages.") (emphasis added).

24

25   Mattel overstates the Court's ruling with respect to the Inventions Agreement.  The Court

26   found as a matter of law that the inventions agreement was a valid and enforceable

27   contract and that it creates certain rights for Mattel over "any Bratz-related 'inventions'

28   (including any designs, improvements, ideas, concepts and copyrightable subject matter"

1  that Bryant "created during the period of his employment with Mattel") and rejected

2  certain defenses (Labor Code § 2870 and preparations to compete). Final Pre-Trial

3  Conference Order at 4.  The MGA Parties' revised jury instructions reflect this ruling.

4  However, that is where the ruling ends, and it leaves much for the jury to decide.  For

5  example, as the court noted, its holding was contingent on "the resolution of certain (as yet

6  unresolved) issues of timing of creation and/or alteration."  April 25, 2008 Order at 4.  In

7  order to decide the timing of creation, the jury must first decide what sorts of acts count as

8  "creation" in the context of this contract.  This will require the jury to interpret the contract.

9  The jury will also have to decide the scope of the term "inventions" – while the Court has

10  laid out in general terms what is included, it will be for the jury to look at an individual

11  purported "invention" and determine whether that particular item falls within the scope.

12  Indeed, the Court has already observed the complexity of this process, noting that "it is

13  uncontroverted that four drawings (each with a color and black and white version) of dolls

14  in evening wear were created by Bryant during the period of his employment with Mattel"

15  yet "the scope of the rights that may be assigned to Mattel under the Inventions Agreement

16  is unclear in light of the larger disputed factual issue regarding the remaining Bratz

17  drawings."  May 21, 2008 Order at 8.  As such, instructions on the interpretation of

18  contractual terms, and any other instructions that aid the jury in applying the terms of the

19  Inventions Agreement to specific pieces of evidence, continue to be important.

20

21  Further, the jury must interpret particular contractual terms to the extent conflicting

22  extrinsic evidence supports more than one reading of the particular terms.  See City of

23  Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 395 (2008) (affirming

24  submission of contract interpretation issue to the jury where disputed factual evidence

25  potentially supports more than one reading of a contract term); Dell'Oca v. Bank of New

26  York Trust Co., N.A., 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although interpretation of

27  a contract is essentially a judicial function, it is the jury's responsibility, as the trier of fact,

28  to resolve any conflicts in the extrinsic evidence properly admitted to interpret the

1  language of a contract.") (internal citations omitted); <u>Morey v. Vannucci</u>, 64 Cal. App. 4th

2  904, 912-13 (1998) ("Where the interpretation of contractual language turns on a question

3  of the credibility of <u>conflicting</u> extrinsic evidence, interpretation of the language is not

4  solely a judicial function. As trier of fact, it is the jury's responsibility to resolve any

5  conflict in the extrinsic evidence properly admitted to interpret the language of a

6  contract.") (internal citations omitted); <u>see also</u> <u>First Nat'l. Mortg. Co. v. Federal Realty</u>

7  <u>Inv. Trust</u>, 2006 WL 2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's

8  responsibility to resolve any conflict in the extrinsic evidence properly admitted to

9  interpret the language of a contract," quoting <u>Morey v. Vannucci</u>); <u>Fletcher Capital Mkts.,</u>

10 <u>Inc. v. Calgene, Inc.</u>, 1998 WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California

11 law, noting that "[i]f the parol evidence is in conflict, the resolution of that conflict is a

12 question of fact for the jury").

13

14 Lastly, Mattel's complaint that this instruction deviates from the model is no basis for

15 rejecting it.   In proposing jury instructions, the parties are permitted to modify the

16 language of any model instruction to make it less confusing or more appropriate in the

17 context of a particular case.  <u>See</u> <u>McDowell v. Calderon</u>, 130 F.3d 833, 840-41 (9th Cir.

18 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions:

19 "The texts of 'standard' jury instructions are not debated and hammered out by legislators,

20 but by ad hoc committees of lawyers and judges.  Jury instructions do not come down

21 from any mountain or rise up from any sea.  Their precise wording, although extremely

22 useful, is not blessed with any special precedential or binding authority.  This description

23 does not denigrate their value, it simply places them in the niche where they belong.").

24 Indeed, modification is sometimes necessary to make an instruction accurate and complete.

25 <u>See, e.g.</u>, <u>United States v. Hegwood,</u> 977 F.2d 492, 496 (9th Cir. 1992) (approving

26 modification of Ninth Circuit model instruction to include additional elements, noting that

27 "[h]ad the district court merely read the model jury instruction, it would have committed

28 plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

59

1

2  Here, the omitted language Mattel complains of was actually included in the previous

3  proposed instruction entitled "Interpretation of Particular Terms."   This was done for

4  clarity's sake.   While it is also proper to combine the two instructions, the MGA Parties

5  submit that the issues would be more streamlined and easily understood by the jury if these

6  issues were presented in two separate instructions, as proposed by the MGA Parties.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections and Responses Re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**INTERPRETATION—MEANING OF ORDINARY WORDS**

You should assume that the parties intended the words in their contract to have their usual and ordinary meaning unless you decide that the parties intended the words to have a special meaning.

**Authority:** CACI No. 315 (2008).

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Interpretation— Meaning of Ordinary Words on the following grounds:

1.      This proposed instruction is confusing and erroneous because Mattel is no longer pursuing a claim for breach of contract, and there does not appear to be any reason to instruct the jury as to the interpretation of contract terms.

2.      Defendants' proposed instruction is contrary to the Court's April 25, 2008 Order.  As far as Mattel is aware, no viable disputes regarding the terms of the Inventions Agreement remain in light of the Court's rulings.  The Court already explicitly held that the "Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials." April 25, 2008 Order, at 4.  The Court found that the "Inventions Agreement explicitly conveys to Mattel an employee's interests in any copyright or copyrights." *Id.* Finally, the Court held that "the original Bratz drawings clearly fall within the scope of the Inventions Agreement." *Id.* Indeed, the Court explicitly found that Bryant's proposed interpretation of the Inventions Agreement is "not reasonable." *Id.* Accordingly, this proposed instruction, which purports to tell the jury how to interpret the meaning of words in the contract is improper and misleading.

3.      In any event, it would be erroneous as a matter of law to give the jury instructions regarding the interpretation of terms in the contracts between Mattel and Bryant because, as a matter of law, the interpretation of written contracts is for the Court, not the jury. *See Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).

4.      Although the instruction tracks CACI No. 315, Mattel objects to its use without a proper instruction under CACI No. 314.

Objections and Responses Re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**MGA Parties' Response**

Contrary to Mattel's assertions, this instruction is necessary.  To begin with, it goes to Mattel's claim for declaratory relief, which turns on its assertion of a breach of contract. As noted above, the jury will be focused on interpreting the Inventions Agreement when decides Mattel's claim for declaratory relief.  Moreover, it is also relevant to Mattel's intentional interference with contract claim. See Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc., 7 F.3d 1434, 1442 (9th Cir. 1993) ("To recover for intentional interference with a contractual relationship, Summit must show '(1) that [it] had a valid and existing contract, (2) that [Victor] had knowledge of the contract and intended to induce its breach, (3) that the contract was in fact breached by [ZMTW], (4) that the breach was caused by [Victor's] unjustified and wrongful conduct, and (5) that [Summit] has suffered damage.'") (emphasis added); see also Anlin Industries, Inc. v. Burgess, 2006 WL 2308476, at *3 (E.D. Cal. Aug. 9, 2006) ("To state a cause of action for interference with contract under California law, a plaintiff must allege (1) a valid contract between the plaintiff and a third party; (2) that the defendant had knowledge of this contract and intended to induce its breach; (3) that the contract was breached; (4) that the breach was caused by the defendant's wrongful and unjustified conduct; and (5) that the plaintiff suffered damage.") (emphasis added); Farmers Ins. Exchange v. State of California, 175 Cal. App. 3d 494, 506 (1985) ("The elements of this tort [for intentional interference with contract] include: 1) The existence of a valid contract; 2) knowledge of the contract on the part of defendant and intent to induce its breach; 3) breach of the contract by the third party; 4) proximate cause; 5) damages.") (emphasis added).

Mattel overstates the Court's ruling with respect to the Inventions Agreement.  The Court found as a matter of law that the inventions agreement was a valid and enforceable contract and that it creates certain rights for Mattel over "any Bratz-related 'inventions' (including any designs, improvements, ideas, concepts and copyrightable subject matter"

1  that Bryant "created during the period of his employment with Mattel") and rejected

2  certain defenses (Labor Code § 2870 and preparations to compete). Final Pre-Trial

3  Conference Order at 4.  The MGA Parties' revised jury instructions reflect this ruling.

4  However, that is where the ruling ends, and it leaves much for the jury to decide.  For

5  example, as the court noted, its holding was contingent on "the resolution of certain (as yet

6  unresolved) issues of timing of creation and/or alteration."  April 25, 2008 Order at 4.  In

7  order to decide the timing of creation, the jury must first decide what sorts of acts count as

8  "creation" in the context of this contract.  This will require the jury to interpret the contract.

9  The jury will also have to decide the scope of the term "inventions" – while the Court has

10  laid out in general terms what is included, it will be for the jury to look at an individual

11  purported "invention" and determine whether that particular item falls within the scope.

12  Indeed, the Court has already observed the complexity of this process, noting that "it is

13  uncontroverted that four drawings (each with a color and black and white version) of dolls

14  in evening wear were created by Bryant during the period of his employment with Mattel"

15  yet "the scope of the rights that may be assigned to Mattel under the Inventions Agreement

16  is unclear in light of the larger disputed factual issue regarding the remaining Bratz

17  drawings."  May 21, 2008 Order at 8.  As such, instructions on the interpretation of

18  contractual terms, and any other instructions that aid the jury in applying the terms of the

19  Inventions Agreement to specific pieces of evidence, continue to be important.

20

21  Further, the jury must interpret particular contractual terms to the extent conflicting

22  extrinsic evidence supports more than one reading of the particular terms.  See City of

23  Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 395 (2008) (affirming

24  submission of contract interpretation issue to the jury where disputed factual evidence

25  potentially supports more than one reading of a contract term); Dell'Oca v. Bank of New

26  York Trust Co., N.A., 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although interpretation of

27  a contract is essentially a judicial function, it is the jury's responsibility, as the trier of fact,

28  to resolve any conflicts in the extrinsic evidence properly admitted to interpret the

64

language of a contract.") (internal citations omitted); <u>Morey v. Vannucci</u>, 64 Cal. App. 4th 904, 912-13 (1998) ("Where the interpretation of contractual language turns on a question of the credibility of <u>conflicting</u> extrinsic evidence, interpretation of the language is not solely a judicial function. As trier of fact, it is the jury's responsibility to resolve any conflict in the extrinsic evidence properly admitted to interpret the language of a contract.") (internal citations omitted); <u>see also</u> <u>First Nat'l. Mortg. Co. v. Federal Realty Inv. Trust</u>, 2006 WL 2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's responsibility to resolve any conflict in the extrinsic evidence properly admitted to interpret the language of a contract," quoting <u>Morey v. Vannucci</u>); <u>Fletcher Capital Mkts., Inc. v. Calgene, Inc.</u>, 1998 WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California law, noting that "[i]f the parol evidence is in conflict, the resolution of that conflict is a question of fact for the jury").

Finally, Mattel's suggestion that the preceding instruction, which is based on CACI No. 315, should be used in conjunction with an instruction under CACI No. 314 concedes that an instruction under CACI No. 315 is proper.  At the same time, the CACI No. 314 instruction was actually included in another instruction proposed by the MGA Parties entitled "Interpretation of Particular Terms."  This was done for clarity's sake.

**INTERPRETATION—MEANING OF TECHNICAL WORDS**

You should assume that the parties intended technical words used in the contract to have the meaning that is usually given to them by people who work in that technical field, unless you decide that the parties clearly used the words in a different sense.

In this case, defendants contend that "inventions," "conceived" and "reduced to practice" are terms of art generally associated with patent law and relate to "inventions" that are potentially patentable. Defendants further contend that the word "invention" is not ordinarily used in connection with copyright law, which instead provides protection for "original works of authorship." Mattel denies those contentions.

**Authority:** CACI No. 316 (2008) (modified).

1 | **Mattel's Objections**

2

3       Mattel objects to defendants' proposed instruction regarding Interpretation—
4 Meaning of Technical Words on the following grounds:

5       1.     This proposed instruction is confusing and erroneous because Mattel is no
6 longer pursuing a claim for breach of contract, and there does not appear to be any reason
7 to instruct the jury as to the interpretation of contract terms.

8       2.     Defendants' proposed instruction is contrary to the Court's April 25, 2008
9 Order. As far as Mattel is aware, no viable disputes regarding the terms of the Inventions
10 Agreement remain in light of the Court's rulings. The Court already explicitly held that the
11 "Inventions Agreement is not ambiguous on the issue of its scope with respect to
12 copyrightable materials." April 25, 2008 Order, at 4. The Court found that the "Inventions
13 Agreement explicitly conveys to Mattel an employee's interests in any copyright or
14 copyrights." *Id.* Finally, the Court held that "the original Bratz drawings clearly fall
15 within the scope of the Inventions Agreement." *Id.* Indeed, the Court explicitly found that
16 Bryant's proposed interpretation of the Inventions Agreement is "not reasonable." *Id.*
17 Accordingly, this proposed instruction, which informs the jury of defendants' rejected
18 contentions that the terms of the Inventions Agreement should be given the meaning
19 purportedly ascribed by patent law is improper and misleading.

20       3.     In any event, it would be erroneous as a matter of law to give the jury
21 instructions regarding the interpretation of terms in the contracts between Mattel and
22 Bryant because the interpretation of written contracts is for the Court, not the jury. *See*
23 *Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).

24       4.     This proposed instruction deviates from the model instruction found in CACI.
25 Only the first paragraph conforms to CACI No. 316. The remainder is argument inserted
26 by defendants, and slanted in their favor, explaining for more than five lines the
27 contentions of defendants but relegating Mattel's contention to a few words: "Mattel
28 denies the contentions."

1    5.    This instruction should not be used at all without a proper instruction under
2  CACI No. 314.

3    6.    An instruction such as the proposed instruction should not be given absent a
4  prior finding that Mattel and Mr. Bryant intended that any technical words would have
5  technical meanings.  Nor should defendants' proposed instruction be given.  Its use of the
6  term "invention" as a technical word with a technical meaning contradicts the plain
7  language of the Inventions Agreement, which defines "invention" broadly and in the
8  ordinary sense.

1 | **MGA Parties' Response**

2

3 | Contrary to Mattel's assertions, this instruction is necessary.  To begin with, it goes to
4 | Mattel's claim for declaratory relief, which turns on its assertion of a breach of contract.
5 | As noted above, the jury will be focused on interpreting the Inventions Agreement when
6 | decides Mattel's claim for declaratory relief. Moreover, it is also relevant to Mattel's
7 | intentional interference with contract claim. See Summit Mach. Tool Mfg. Corp. v. Victor
8 | CNC Systems, Inc., 7 F.3d 1434, 1442 (9th Cir. 1993) ("To recover for intentional
9 | interference with a contractual relationship, Summit must show '(1) that [it] had a valid
10 | and existing contract, (2) that [Victor] had knowledge of the contract and intended to
11 | induce its breach, (3) that the contract was in fact breached by [ZMTW], (4) that the
12 | breach was caused by [Victor's] unjustified and wrongful conduct, and (5) that [Summit]
13 | has suffered damage.'") (emphasis added); see also Anlin Industries, Inc. v. Burgess, 2006
14 | WL 2308476, at *3 (E.D. Cal. Aug. 9, 2006) ("To state a cause of action for interference
15 | with contract under California law, a plaintiff must allege (1) a valid contract between the
16 | plaintiff and a third party; (2) that the defendant had knowledge of this contract and
17 | intended to induce its breach; (3) that the contract was breached; (4) that the breach was
18 | caused by the defendant's wrongful and unjustified conduct; and (5) that the plaintiff
19 | suffered damage.") (emphasis added); Farmers Ins. Exchange v. State of California, 175
20 | Cal. App. 3d 494, 506 (1985) ("The elements of this tort [for intentional interference with
21 | contract] include: 1) The existence of a valid contract; 2) knowledge of the contract on the
22 | part of defendant and intent to induce its breach; 3) breach of the contract by the third
23 | party; 4) proximate cause; 5) damages.") (emphasis added).

24

25 | Mattel overstates the Court's ruling with respect to the Inventions Agreement.  The Court
26 | found as a matter of law that the inventions agreement was a valid and enforceable
27 | contract and that it creates certain rights for Mattel over "any Bratz-related 'inventions'
28 | (including any designs, improvements, ideas, concepts and copyrightable subject matter"

1 that Bryant "created during the period of his employment with Mattel") and rejected
2 certain defenses (Labor Code § 2870 and preparations to compete). Final Pre-Trial
3 Conference Order at 4.  The MGA Parties' revised jury instructions reflect this ruling.
4 However, that is where the ruling ends, and it leaves much for the jury to decide.  For
5 example, as the court noted, its holding was contingent on "the resolution of certain (as yet
6 unresolved) issues of timing of creation and/or alteration."  April 25, 2008 Order at 4.  In
7 order to decide the timing of creation, the jury must first decide what sorts of acts count as
8 "creation" in the context of this contract.  This will require the jury to interpret the contract.
9 The jury will also have to decide the scope of the term "inventions" – while the Court has
10 laid out in general terms what is included, it will be for the jury to look at an individual
11 purported "invention" and determine whether that particular item falls within the scope.
12 Indeed, the Court has already observed the complexity of this process, noting that "it is
13 uncontroverted that four drawings (each with a color and black and white version) of dolls
14 in evening wear were created by Bryant during the period of his employment with Mattel"
15 yet "the scope of the rights that may be assigned to Mattel under the Inventions Agreement
16 is unclear in light of the larger disputed factual issue regarding the remaining Bratz
17 drawings."  May 21, 2008 Order at 8.  As such, instructions on the interpretation of
18 contractual terms, and any other instructions that aid the jury in applying the terms of the
19 Inventions Agreement to specific pieces of evidence, continue to be important.
20
21 Further, the jury must interpret particular contractual terms to the extent conflicting
22 extrinsic evidence supports more than one reading of the particular terms.  See City of
23 Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 395 (2008) (affirming
24 submission of contract interpretation issue to the jury where disputed factual evidence
25 potentially supports more than one reading of a contract term); Dell'Oca v. Bank of New
26 York Trust Co., N.A., 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although interpretation of
27 a contract is essentially a judicial function, it is the jury's responsibility, as the trier of fact,
28 to resolve any conflicts in the extrinsic evidence properly admitted to interpret the

1  language of a contract.") (internal citations omitted); <u>Morey v. Vannucci</u>, 64 Cal. App. 4th

2  904, 912-13 (1998) ("Where the interpretation of contractual language turns on a question

3  of the credibility of <u>conflicting</u> extrinsic evidence, interpretation of the language is not

4  solely a judicial function. As trier of fact, it is the jury's responsibility to resolve any

5  conflict in the extrinsic evidence properly admitted to interpret the language of a contract.")

6  (internal citations omitted); <u>see also First Nat'l. Mortg. Co. v. Federal Realty Inv. Trust</u>,

7  2006 WL 2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's responsibility to

8  resolve any conflict in the extrinsic evidence properly admitted to interpret the language of

9  a contract," quoting <u>Morey v. Vannucci</u>); <u>Fletcher Capital Mkts., Inc. v. Calgene, Inc.</u>,

10 1998 WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California law, noting that "[i]f

11 the parol evidence is in conflict, the resolution of that conflict is a question of fact for the

12 jury").

13

14 Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.

15 In proposing jury instructions, the parties are permitted to modify the language of any

16 model instruction to make it less confusing or more appropriate in the context of a

17 particular case.  <u>See McDowell v. Calderon</u>, 130 F.3d 833, 840-41 (9th Cir. 1997)

18 (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The

19 texts of 'standard' jury instructions are not debated and hammered out by legislators, but

20 by ad hoc committees of lawyers and judges.  Jury instructions do not come down from

21 any mountain or rise up from any sea.  Their precise wording, although extremely useful,

22 is not blessed with any special precedential or binding authority.  This description does not

23 denigrate their value, it simply places them in the niche where they belong.").  Indeed,

24 modification is sometimes necessary to make an instruction accurate and complete.  <u>See,</u>

25 <u>e.g.</u>, <u>United States v. Hegwood,</u> 977 F.2d 492, 496 (9th Cir. 1992) (approving modification

26 of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the

27 district court merely read the model jury instruction, it would have committed plain error,

28 since that instruction makes no reference whatsoever to knowledge or intent.").

1

2   Furthermore, Mattel's suggestion that the preceding instruction, which is based on CACI

3   No. 316, should be used in conjunction with an instruction under CACI No. 314 concedes

4   that an instruction under CACI No. 316 is proper. At the same time, the CACI No. 314

5   instruction was actually included in another instruction proposed by the MGA Parties

6   entitled "Interpretation of Particular Terms." This was done for clarity's sake.

7

8   In objecting to the proposed instruction, Mattel argues that Bryant's Inventions Agreement

9   "defines 'invention' broadly and in the ordinary sense."  But the scope of "invention" is an

10  ultimate issue in this case, and an objection on this basis is nothing more than argument.

11  This instruction assumes that the jury will have to determine what the meaning of the term

12  "inventions" is and appropriately informs the jury that MGA Parties contend that the

13  meaning is a technical one, and that Mattel denies such contention.  Moreover, there is no

14  evidentiary basis for Mattel's argument that the parties intended any other meaning of

15  "invention" but its technical meaning under the established law.

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTERPRETATION—CONSTRUCTION OF CONTRACT AS A WHOLE

In deciding what the words of a contract meant to the parties, you should consider the whole contract, not just isolated parts. You should use each part to help you interpret the others, so that all the parts make sense when taken together.

**Authority:** CACI No. 317 (2008).

1 **Mattel's Objections**

2

3    Mattel objects to defendants' proposed instruction regarding Interpretation—
4 Construction of Contract as a Whole on the following grounds:

5    1.    This proposed instruction is confusing and erroneous because Mattel is no
6 longer pursuing a claim for breach of contract, and there does not appear to be any reason
7 to instruct the jury as to the construction of the contract at issue.

8    2.    Defendants' proposed instruction is contrary to the Court's April 25, 2008
9 Order.  As far as Mattel is aware, no viable disputes regarding the terms of the Inventions
10 Agreement remain in light of the Court's rulings.  The Court already explicitly held that the
11 "Inventions Agreement is not ambiguous on the issue of its scope with respect to
12 copyrightable materials."  April 25, 2008 Order, at 4.  The Court found that the "Inventions
13 Agreement explicitly conveys to Mattel an employee's interests in any copyright or
14 copyrights."  *Id.*  Finally, the Court held that "the original Bratz drawings clearly fall
15 within the scope of the Inventions Agreement."  *Id.*  Indeed, the Court explicitly found that
16 defendants proposed interpretation of the Inventions Agreement is "not reasonable."  *Id.*
17 Accordingly, this proposed instruction, which purports to inform the jury how to "decid[e]
18 what the words of a contract meant to the parties" is improper and misleading.

19    3.    In any event, it would be erroneous as a matter of law to give the jury
20 instructions regarding the interpretation of terms in the contracts between Mattel and
21 Bryant because the interpretation of written contracts is for the Court, not the jury.  *See*
22 *Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).

23    4.    Although the instruction tracks CACI No. 317, it makes no sense to use this
24 instruction without a proper instruction under CACI No. 314.

25

26

27

28

Objections and Responses Re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1    **MGA Parties' Response**

2

3    Contrary to Mattel's assertions, this instruction is necessary.  To begin with, it goes to
4    Mattel's claim for declaratory relief, which turns on its assertion of a breach of contract.
5    As noted above, the jury will be focused on interpreting the Inventions Agreement when
6    decides Mattel's claim for declaratory relief. Moreover, it is also relevant to Mattel's
7    intentional interference with contract claim. See Summit Mach. Tool Mfg. Corp. v. Victor
8    CNC Systems, Inc., 7 F.3d 1434, 1442 (9th Cir. 1993) ("To recover for intentional
9    interference with a contractual relationship, Summit must show '(1) that [it] had a valid
10   and existing contract, (2) that [Victor] had knowledge of the contract and intended to
11   induce its breach, (3) that the contract was in fact breached by [ZMTW], (4) that the
12   breach was caused by [Victor's] unjustified and wrongful conduct, and (5) that [Summit]
13   has suffered damage.'") (emphasis added); see also Anlin Industries, Inc. v. Burgess, 2006
14   WL 2308476, at *3 (E.D. Cal. Aug. 9, 2006) ("To state a cause of action for interference
15   with contract under California law, a plaintiff must allege (1) a valid contract between the
16   plaintiff and a third party; (2) that the defendant had knowledge of this contract and
17   intended to induce its breach; (3) that the contract was breached; (4) that the breach was
18   caused by the defendant's wrongful and unjustified conduct; and (5) that the plaintiff
19   suffered damage.") (emphasis added); Farmers Ins. Exchange v. State of California, 175
20   Cal. App. 3d 494, 506 (1985) ("The elements of this tort [for intentional interference with
21   contract] include: 1) The existence of a valid contract; 2) knowledge of the contract on the
22   part of defendant and intent to induce its breach; 3) breach of the contract by the third
23   party; 4) proximate cause; 5) damages.") (emphasis added).

24

25   Mattel overstates the Court's ruling with respect to the Inventions Agreement.  The Court
26   found as a matter of law that the inventions agreement was a valid and enforceable
27   contract and that it creates certain rights for Mattel over "any Bratz-related 'inventions'
28   (including any designs, improvements, ideas, concepts and copyrightable subject matter"

1  that Bryant "created during the period of his employment with Mattel") and rejected

2  certain defenses (Labor Code § 2870 and preparations to compete). Final Pre-Trial

3  Conference Order at 4.  The MGA Parties' revised jury instructions reflect this ruling.

4  However, that is where the ruling ends, and it leaves much for the jury to decide.  For

5  example, as the court noted, its holding was contingent on "the resolution of certain (as yet

6  unresolved) issues of timing of creation and/or alteration."  April 25, 2008 Order at 4.  In

7  order to decide the timing of creation, the jury must first decide what sorts of acts count as

8  "creation" in the context of this contract.  This will require the jury to interpret the contract.

9  The jury will also have to decide the scope of the term "inventions" – while the Court has

10  laid out in general terms what is included, it will be for the jury to look at an individual

11  purported "invention" and determine whether that particular item falls within the scope.

12  Indeed, the Court has already observed the complexity of this process, noting that "it is

13  uncontroverted that four drawings (each with a color and black and white version) of dolls

14  in evening wear were created by Bryant during the period of his employment with Mattel"

15  yet "the scope of the rights that may be assigned to Mattel under the Inventions Agreement

16  is unclear in light of the larger disputed factual issue regarding the remaining Bratz

17  drawings."  May 21, 2008 Order at 8.  As such, instructions on the interpretation of

18  contractual terms, and any other instructions that aid the jury in applying the terms of the

19  Inventions Agreement to specific pieces of evidence, continue to be important.

20

21  Further, the jury must interpret particular contractual terms to the extent conflicting

22  extrinsic evidence supports more than one reading of the particular terms.  See City of

23  Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 395 (2008) (affirming

24  submission of contract interpretation issue to the jury where disputed factual evidence

25  potentially supports more than one reading of a contract term); Dell'Oca v. Bank of New

26  York Trust Co., N.A., 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although interpretation of

27  a contract is essentially a judicial function, it is the jury's responsibility, as the trier of fact,

28  to resolve any conflicts in the extrinsic evidence properly admitted to interpret the

language of a contract.") (internal citations omitted); <u>Morey v. Vannucci</u>, 64 Cal. App. 4th 904, 912-13 (1998) ("Where the interpretation of contractual language turns on a question of the credibility of <u>conflicting</u> extrinsic evidence, interpretation of the language is not solely a judicial function. As trier of fact, it is the jury's responsibility to resolve any conflict in the extrinsic evidence properly admitted to interpret the language of a contract.") (internal citations omitted); <u>see also</u> <u>First Nat'l. Mortg. Co. v. Federal Realty Inv. Trust</u>, 2006 WL 2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's responsibility to resolve any conflict in the extrinsic evidence properly admitted to interpret the language of a contract," quoting <u>Morey v. Vannucci</u>); <u>Fletcher Capital Mkts., Inc. v. Calgene, Inc.</u>, 1998 WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California law, noting that "[i]f the parol evidence is in conflict, the resolution of that conflict is a question of fact for the jury").

Finally, Mattel's suggestion that the preceding instruction, which is based on CACI No. 317, should be used in conjunction with an instruction under CACI No. 314 concedes that an instruction under CACI No. 317 is proper. At the same time, the CACI No. 314 instruction was actually included in another instruction proposed by the MGA Parties entitled "Interpretation of Particular Terms." This was done for clarity's sake.

1  **INTERPRETATION—CONSTRUCTION BY CONDUCT**

2

3  In deciding what the words in a contract meant to the parties, you may consider how the

4  parties acted after the contract was created but before any disagreement between the

5  parties arose.  You may also consider evidence of Mattel's practical interpretation of the

6  contract terms in dealing with other Mattel employees.  You may also consider Mattel's

7  efforts to enforce the rights it claims in dealing with other employees, including the use of

8  different contractual terms.

9

10  **Authority:** CACI No. 318 (2008) (modified); Warner Bros., Inc. v. Curtis Mgmt. Group,

11  Inc., No. CV 91-4016-WMB, 1995 WL 420043 (C.D. Cal. Mar. 31, 1993); Heston v.

12  Farmers Ins. Group, 160 Cal. App. 3d 402 (1984); see also Montrose Chem. Corp. v.

13  Admiral Ins. Co., 10 Cal. 4th 645, 670 (1995) (drafting history of standardized form policy

14  was relevant to interpreting meaning of contract).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **Mattel's Objections**

2

3        Mattel objects to defendants' proposed instruction regarding Interpretation—

4 Construction by Conduct on the following grounds:

5       1.    This proposed instruction is confusing and erroneous because Mattel is no

6 longer pursuing a claim for breach of contract, and there does not appear to be any reason

7 to instruct the jury as to the construction of the contract at issue.

8       2.    Defendants' proposed instruction is contrary to the Court's April 25, 2008

9 Order.  As far as Mattel is aware, no viable disputes regarding the terms of the Inventions

10 Agreement remain in light of the Court's rulings.  The Court already explicitly held that the

11 "Inventions Agreement is not ambiguous on the issue of its scope with respect to

12 copyrightable materials."  April 25, 2008 Order, at 4.  The Court found that the "Inventions

13 Agreement explicitly conveys to Mattel an employee's interests in any copyright or

14 copyrights."  *Id.*  Finally, the Court held that "the original Bratz drawings clearly fall

15 within the scope of the Inventions Agreement."  *Id.*  Indeed, the Court explicitly found that

16 Bryant's proposed interpretation of the Inventions Agreement is "not reasonable."  *Id.*

17 Accordingly, this proposed instruction, which purports to tell the jury how to "decid[e]

18 what the words of a contract meant," is improper and misleading.

19       3.    In any event, it would be erroneous as a matter of law to give the jury

20 instructions regarding the interpretation of terms in the contracts between Mattel and

21 Bryant because, as a matter of law, the interpretation of written contracts is for the Court,

22 not the jury. *See Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).

23       4.    Only the first sentence is an accurate quotation of CACI No. 318.  The rest is

24 argument, devoted to emphasizing the theories of MGA and Bryant.  Even the first

25 sentence ought not be used without a proper instruction under CACI No. 314.

26       5.    The second and third sentences in this proposed instruction are contrary to

27 law.  A Court or jury may only consider the post-contracting, pre-dispute conduct of the

28 parties to the contract at issue, i.e., Mattel and Mr. Bryant, to ascribe meaning to a given

1  contract.  Neither the Court nor the jury should consider, nor can they legally consider,

2  conduct vis-à-vis third parties to import a contractual term between the parties.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections and Responses Re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

## MGA Parties' Response

Contrary to Mattel's assertions, this instruction is necessary.  To begin with, it goes to Mattel's claim for declaratory relief, which turns on its assertion of a breach of contract. As noted above, the jury will be focused on interpreting the Inventions Agreement when decides Mattel's claim for declaratory relief. Moreover, it is also relevant to Mattel's intentional interference with contract claim. See Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc., 7 F.3d 1434, 1442 (9th Cir. 1993) ("To recover for intentional interference with a contractual relationship, Summit must show '(1) that [it] had a valid and existing contract, (2) that [Victor] had knowledge of the contract and intended to induce its breach, (3) that the contract was in fact breached by [ZMTW], (4) that the breach was caused by [Victor's] unjustified and wrongful conduct, and (5) that [Summit] has suffered damage.'") (emphasis added); see also Anlin Industries, Inc. v. Burgess, 2006 WL 2308476, at *3 (E.D. Cal. Aug. 9, 2006) ("To state a cause of action for interference with contract under California law, a plaintiff must allege (1) a valid contract between the plaintiff and a third party; (2) that the defendant had knowledge of this contract and intended to induce its breach; (3) that the contract was breached; (4) that the breach was caused by the defendant's wrongful and unjustified conduct; and (5) that the plaintiff suffered damage.") (emphasis added); Farmers Ins. Exchange v. State of California, 175 Cal. App. 3d 494, 506 (1985) ("The elements of this tort [for intentional interference with contract] include: 1) The existence of a valid contract; 2) knowledge of the contract on the part of defendant and intent to induce its breach; 3) breach of the contract by the third party; 4) proximate cause; 5) damages.") (emphasis added).

Mattel overstates the Court's ruling with respect to the Inventions Agreement.  The Court found as a matter of law that the inventions agreement was a valid and enforceable contract and that it creates certain rights for Mattel over "any Bratz-related 'inventions' (including any designs, improvements, ideas, concepts and copyrightable subject matter"

81

1   that Bryant "created during the period of his employment with Mattel") and rejected

2   certain defenses (Labor Code § 2870 and preparations to compete). Final Pre-Trial

3   Conference Order at 4.   The MGA Parties' revised jury instructions reflect this ruling.

4   However, that is where the ruling ends, and it leaves much for the jury to decide.   For

5   example, as the court noted, its holding was contingent on "the resolution of certain (as yet

6   unresolved) issues of timing of creation and/or alteration."  April 25, 2008 Order at 4.  In

7   order to decide the timing of creation, the jury must first decide what sorts of acts count as

8   "creation" in the context of this contract.  This will require the jury to interpret the contract.

9   The jury will also have to decide the scope of the term "inventions" – while the Court has

10  laid out in general terms what is included, it will be for the jury to look at an individual

11  purported "invention" and determine whether that particular item falls within the scope.

12  Indeed, the Court has already observed the complexity of this process, noting that "it is

13  uncontroverted that four drawings (each with a color and black and white version) of dolls

14  in evening wear were created by Bryant during the period of his employment with Mattel"

15  yet "the scope of the rights that may be assigned to Mattel under the Inventions Agreement

16  is unclear in light of the larger disputed factual issue regarding the remaining Bratz

17  drawings."  May 21, 2008 Order at 8.  As such, instructions on the interpretation of

18  contractual terms, and any other instructions that aid the jury in applying the terms of the

19  Inventions Agreement to specific pieces of evidence, continue to be important.

20

21  Further, the jury must interpret particular contractual terms to the extent conflicting

22  extrinsic evidence supports more than one reading of the particular terms.  See City of

23  Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 395 (2008) (affirming

24  submission of contract interpretation issue to the jury where disputed factual evidence

25  potentially supports more than one reading of a contract term); Dell'Oca v. Bank of New

26  York Trust Co., N.A., 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although interpretation of

27  a contract is essentially a judicial function, it is the jury's responsibility, as the trier of fact,

28  to resolve any conflicts in the extrinsic evidence properly admitted to interpret the

1  language of a contract.") (internal citations omitted); <u>Morey v. Vannucci</u>, 64 Cal. App. 4th

2  904, 912-13 (1998) ("Where the interpretation of contractual language turns on a question

3  of the credibility of <u>conflicting</u> extrinsic evidence, interpretation of the language is not

4  solely a judicial function. As trier of fact, it is the jury's responsibility to resolve any

5  conflict in the extrinsic evidence properly admitted to interpret the language of a contract.")

6  (internal citations omitted); <u>see also</u> <u>First Nat'l. Mortg. Co. v. Federal Realty Inv. Trust</u>,

7  2006 WL 2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's responsibility to

8  resolve any conflict in the extrinsic evidence properly admitted to interpret the language of

9  a contract," quoting <u>Morey v. Vannucci</u>); <u>Fletcher Capital Mkts., Inc. v. Calgene, Inc.</u>,

10  1998 WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California law, noting that "[i]f

11  the parol evidence is in conflict, the resolution of that conflict is a question of fact for the

12  jury").

13

14  Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.

15  In proposing jury instructions, the parties are permitted to modify the language of any

16  model instruction to make it less confusing or more appropriate in the context of a

17  particular case.  <u>See</u> <u>McDowell v. Calderon</u>, 130 F.3d 833, 840-41 (9th Cir. 1997)

18  (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The

19  texts of 'standard' jury instructions are not debated and hammered out by legislators, but

20  by ad hoc committees of lawyers and judges.  Jury instructions do not come down from

21  any mountain or rise up from any sea.  Their precise wording, although extremely useful,

22  is not blessed with any special precedential or binding authority.  This description does not

23  denigrate their value, it simply places them in the niche where they belong.").  Indeed,

24  modification is sometimes necessary to make an instruction accurate and complete.  <u>See,</u>

25  <u>e.g.</u>, <u>United States v. Hegwood,</u> 977 F.2d 492, 496 (9th Cir. 1992) (approving modification

26  of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the

27  district court merely read the model jury instruction, it would have committed plain error,

28  since that instruction makes no reference whatsoever to knowledge or intent.").  The

1   deviation from the proposed language provides a context to the jury that will aid in
2   determining which factual conduct is at issue with respect to the agreement.

3

4   Furthermore, Mattel's suggestion that the preceding instruction, which is based on CACI
5   No. 318, should be used in conjunction with an instruction under CACI No. 314 concedes
6   that an instruction under CACI No. 318 is proper. At the same time, the CACI No. 314
7   instruction was actually included in another instruction proposed by the MGA Parties
8   entitled "Interpretation of Particular Terms." This was done for clarity's sake.

9

10  Finally, Mattel offers no authority for its proposition that the second and third sentences
11  are contrary to law.  In fact, the cases cited in support of this proposed instruction establish
12  that the sentences at issue are accurate and proper statements of the law.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTERPRETATION—CONSTRUCTION AGAINST DRAFTER**

2

3   In determining the meaning of a term of the contract, you must first consider all of the
4   other instructions that I have given you.  If, after considering these instructions, you still
5   cannot agree on the meaning of the term, then you should interpret the contract term
6   against the party that drafted the term.

7

8   **Authority:** CACI No. 320 (2008); Powerline Oil Co. v. Superior Court, 37 Cal. 4th 377,
9   391 (2005); Graham v. Scissor-Tail, Inc., 28 Cal. 3d 807, 819-20 n.16 (1981); see also Cal.
10  Civ. Code § 1654 ("[T]he language of a contract should be interpreted most strongly
11  against the party who caused the uncertainty to exist."); Badie v. Bank of America, 67 Cal.
12  App. 4th 779 (1998) (adhesion); Mayhew v. Benninghoff, 53 Cal. App. 4th 1365 (1997)
13  (one party's attorney); Neal v. State Farm Ins. Cos., 188 Cal. App. 2d 690, 694 (1961)
14  (adhesion).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

85

1 | **Mattel's Objections**

2

3        Mattel objects to defendants' proposed instruction regarding Interpretation—

4 | Construction Against Drafter on the following grounds:

5        1.    This proposed instruction is confusing and erroneous because Mattel is no

6 | longer pursuing a claim for breach of contract, and there does not appear to be any reason

7 | to instruct the jury as to the construction of the contract at issue.

8        2.    Defendants' proposed instruction is contrary to the Court's April 25, 2008

9 | Order.  As far as Mattel is aware, no viable disputes regarding the terms of the Inventions

10 | Agreement remain in light of the Court's rulings.  The Court already explicitly held that the

11 | "Inventions Agreement is not ambiguous on the issue of its scope with respect to

12 | copyrightable materials."  April 25, 2008 Order, at 4.  The Court found that the "Inventions

13 | Agreement explicitly conveys to Mattel an employee's interests in any copyright or

14 | copyrights."  *Id.*  Finally, the Court held that "the original Bratz drawings clearly fall

15 | within the scope of the Inventions Agreement."  *Id.*  Indeed, the Court explicitly found that

16 | Bryant's proposed interpretation of the Inventions Agreement is "not reasonable."  *Id.*

17 | Accordingly, this proposed instruction, which purports to tell the jury how to "determin[e]

18 | the meaning of a term of the contract," is improper and misleading.

19        3.    In any event, it would be erroneous as a matter of law to give the jury

20 | instructions regarding the interpretation of terms in the contracts between Mattel and

21 | Bryant because, as a matter of law, the interpretation of written contracts is for the Court,

22 | not the jury.  *See Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).

23        4.    The "Directions for Use" for CACI No. 320 provide that it should only be

24 | given to a deadlocked jury.  Mattel objects to the use of this instruction unless and until the

25 | jury notifies the Court that it is deadlocked as to the meaning of a term.

26

27

28

1  **MGA Parties' Response**

2

3  Contrary to Mattel's assertions, this instruction is necessary.  To begin with, it goes to
4  Mattel's claim for declaratory relief, which turns on its assertion of a breach of contract.
5  As noted above, the jury will be focused on interpreting the Inventions Agreement when
6  decides Mattel's claim for declaratory relief. Moreover, it is also relevant to Mattel's
7  intentional interference with contract claim. See Summit Mach. Tool Mfg. Corp. v. Victor
8  CNC Systems, Inc., 7 F.3d 1434, 1442 (9th Cir. 1993) ("To recover for intentional
9  interference with a contractual relationship, Summit must show '(1) that [it] had a valid
10  and existing contract, (2) that [Victor] had knowledge of the contract and intended to
11  induce its breach, (3) that the contract was in fact breached by [ZMTW], (4) that the
12  breach was caused by [Victor's] unjustified and wrongful conduct, and (5) that [Summit]
13  has suffered damage.'") (emphasis added); see also Anlin Industries, Inc. v. Burgess, 2006
14  WL 2308476, at *3 (E.D. Cal. Aug. 9, 2006) ("To state a cause of action for interference
15  with contract under California law, a plaintiff must allege (1) a valid contract between the
16  plaintiff and a third party; (2) that the defendant had knowledge of this contract and
17  intended to induce its breach; (3) that the contract was breached; (4) that the breach was
18  caused by the defendant's wrongful and unjustified conduct; and (5) that the plaintiff
19  suffered damage.") (emphasis added); Farmers Ins. Exchange v. State of California, 175
20  Cal. App. 3d 494, 506 (1985) ("The elements of this tort [for intentional interference with
21  contract] include: 1) The existence of a valid contract; 2) knowledge of the contract on the
22  part of defendant and intent to induce its breach; 3) breach of the contract by the third
23  party; 4) proximate cause; 5) damages.") (emphasis added).

24

25  Mattel overstates the Court's ruling with respect to the Inventions Agreement.  The Court
26  found as a matter of law that the inventions agreement was a valid and enforceable
27  contract and that it creates certain rights for Mattel over "any Bratz-related 'inventions'
28  (including any designs, improvements, ideas, concepts and copyrightable subject matter"

1  that Bryant "created during the period of his employment with Mattel") and rejected

2  certain defenses (Labor Code § 2870 and preparations to compete). Final Pre-Trial

3  Conference Order at 4.  The MGA Parties' revised jury instructions reflect this ruling.

4  However, that is where the ruling ends, and it leaves much for the jury to decide.  For

5  example, as the court noted, its holding was contingent on "the resolution of certain (as yet

6  unresolved) issues of timing of creation and/or alteration."  April 25, 2008 Order at 4.  In

7  order to decide the timing of creation, the jury must first decide what sorts of acts count as

8  "creation" in the context of this contract.  This will require the jury to interpret the contract.

9  The jury will also have to decide the scope of the term "inventions" – while the Court has

10  laid out in general terms what is included, it will be for the jury to look at an individual

11  purported "invention" and determine whether that particular item falls within the scope.

12  Indeed, the Court has already observed the complexity of this process, noting that "it is

13  uncontroverted that four drawings (each with a color and black and white version) of dolls

14  in evening wear were created by Bryant during the period of his employment with Mattel"

15  yet "the scope of the rights that may be assigned to Mattel under the Inventions Agreement

16  is unclear in light of the larger disputed factual issue regarding the remaining Bratz

17  drawings."  May 21, 2008 Order at 8.  As such, instructions on the interpretation of

18  contractual terms, and any other instructions that aid the jury in applying the terms of the

19  Inventions Agreement to specific pieces of evidence, continue to be important.

20

21  Further, the jury must interpret particular contractual terms to the extent conflicting

22  extrinsic evidence supports more than one reading of the particular terms.  See City of

23  Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 395 (2008) (affirming

24  submission of contract interpretation issue to the jury where disputed factual evidence

25  potentially supports more than one reading of a contract term); Dell'Oca v. Bank of New

26  York Trust Co., N.A., 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although interpretation of

27  a contract is essentially a judicial function, it is the jury's responsibility, as the trier of fact,

28  to resolve any conflicts in the extrinsic evidence properly admitted to interpret the

1 language of a contract.") (internal citations omitted); <u>Morey v. Vannucci</u>, 64 Cal. App. 4th

2 904, 912-13 (1998) ("Where the interpretation of contractual language turns on a question

3 of the credibility of <u>conflicting</u> extrinsic evidence, interpretation of the language is not

4 solely a judicial function. As trier of fact, it is the jury's responsibility to resolve any

5 conflict in the extrinsic evidence properly admitted to interpret the language of a contract.")

6 (internal citations omitted); <u>see also</u> <u>First Nat'l. Mortg. Co. v. Federal Realty Inv. Trust</u>,

7 2006 WL 2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's responsibility to

8 resolve any conflict in the extrinsic evidence properly admitted to interpret the language of

9 a contract," quoting <u>Morey v. Vannucci</u>); <u>Fletcher Capital Mkts., Inc. v. Calgene, Inc.</u>,

10 1998 WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California law, noting that "[i]f

11 the parol evidence is in conflict, the resolution of that conflict is a question of fact for the

12 jury").

13

14 Mattel does not otherwise object to the MGA Parties' use of CACI No. 320, except to

15 point out that such an instruction is to be given only where the jury is deadlocked.  In

16 general, the purpose of withholding such an instruction from the jury is to "avoid giving

17 them this tool to resolve the case before they have truly exhausted the other avenues of

18 approach."  However, the instruction itself directs the jury to do this.  Moreover, it may

19 well come into play here for three reasons.  <u>First</u>, California Civil Code Section 1654

20 prescribes that  "[i]n cases of uncertainty not removed by the preceding rules, the language

21 of a contract should be interpreted most strongly against the party who caused the

22 uncertainty to exist."  Such uncertainty is likely to result in these proceedings.  <u>Second</u>, the

23 defendants claim that the contract at issue was a contract of adhesion, and construction

24 against the drafter applies more strongly in such cases.  <u>See</u> <u>Badie v. Bank of America</u>, 67

25 Cal. App. 4th 779 (1998).  <u>Third</u>, the California Supreme Court in <u>City of Hope Nat'l Med.</u>

26 <u>Ctr. v. Genentech, Inc.</u>, 43 Cal. 4th 375, 397-98 (2008), recently affirmed giving this

27 instruction to the jury even where the contract at issue was not one of adhesion.

28

89

1

## INTERPRETATION—ADHESION CONTRACTS

2

3  Defendants contend that Bryant's contract is a contract of adhesion. Thus, you must also
4  consider whether the contract is adhesive.  An adhesive contract is a contract in which:

5

6      1.      The agreement is drafted by the party of superior
7              bargaining power;

8

9      2.      The agreement is a standardized contract; and

10

11     3.      The agreement is presented on a take it or leave it basis.

12

13  In the case of adhesion contracts, the rule of construction against the drafter applies more
14  strongly.

15

16  **Authority:** Directions for Use, CACI No. 320 (2008); Armendariz v. Found. Health
17  Psychcare Servs., Inc., 24 Cal. 4th 83 (2000); Badie v. Bank of America, 67 Cal. App. 4th
18  779 (1998) (adhesion); Mayhew v. Benninghoff, 53 Cal. App. 4th 1365 (1997) (one
19  party's attorney); Neal v. State Farm Ins. Co., 188 Cal. App. 2d 690, 694 (1961)
20  (adhesion); see also Geoffroy v. Washington Mut. Bank, 484 F. Supp. 2d 1115, 1122 (S.D.
21  Cal. 2007); Discover Bank v. Superior Court, 36 Cal. 4th 148, 160 (2005); Graham v.
22  Scissor-Tail, Inc., 28 Cal. 3d 807, 820 n.18 (1981); Gray v. Zurich Ins. Co., 65 Cal. 2d 263,
23  271 (1966); Steven v. Fid. & Cas. Co., 58 Cal. 2d 862, 878 (1962); Cubic Corp. v. Marty,
24  185 Cal. App. 3d 438, 450 (1986).

25

26

27

28

90

1 | **Mattel's Objections**

2

3       Mattel objects to defendants' proposed instruction regarding Interpretation—
4 Adhesion Contracts on the following grounds:

5       1.    This proposed instruction is confusing and erroneous because Mattel is no
6 longer pursuing a claim for breach of contract, and there does not appear to be any reason
7 to instruct the jury as to the construction of the contract at issue.

8       2.    Defendants' proposed instruction is contrary to the Court's April 25, 2008
9 Order. As far as Mattel is aware, no viable disputes regarding the terms of the Inventions
10 Agreement remain in light of the Court's rulings. The Court already explicitly held that the
11 "Inventions Agreement is not ambiguous on the issue of its scope with respect to
12 copyrightable materials." April 25, 2008 Order, at 4. The Court found that the "Inventions
13 Agreement explicitly conveys to Mattel an employee's interests in any copyright or
14 copyrights." *Id.* Finally, the Court held that "the original Bratz drawings clearly fall
15 within the scope of the Inventions Agreement." *Id.* Indeed, the Court explicitly found that
16 Bryant's proposed interpretation of the Inventions Agreement is "not reasonable." *Id.*
17 Accordingly, this proposed instruction regarding a purported "rule of construction" is
18 improper and misleading.

19       3.    In any event, it would be erroneous as a matter of law to give the jury
20 instructions regarding the interpretation of terms in the contracts between Mattel and
21 Bryant because, as a matter of law, the interpretation of written contracts is for the Court,
22 not the jury. *See Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).

23       4.    This proposed instruction deviates from the model instruction found in CACI.
24 Defendants cite CACI No. 320 as authority for this proposed instruction, but it bears no
25 resemblance to CACI No. 320. It is, instead a grossly incomplete summary of the law of
26 contracts of adhesion.

27       5.    There is no reason to instruct the jury on contracts of adhesion. Describing a
28 contract as one of adhesion does not affect its enforceability. *Fittante v. Palm Springs*

91

1   *Motors, Inc.*, 105 Cal. App. 4th 708, 129 Cal. Rptr. 2d 659 (2003); *see also* 1 B. Witkin,

2   Summary of California Law, "Contracts," § 323 ("it is clear that characterizing a contract

3   as one of adhesion does not, by itself, mean that it is invalid.")  That is only the first step.

4   The next step is whether the contract is unconscionable.  *See, e.g.*, *Armendariz v. Found.*

5   *Health Psychcare Serv.*,. 24 Cal. 4th 83 (2000).  Unconscionability of a contract is a

6   question of law.  *Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527, 5 Cal. Rptr. 3d 835

7   (2003), *Pardee Constr. Co. v. Superior Court*, 100 Cal. App. 4th 1081, 123 Cal.

8   Rptr. 2d 288 (2002); *see also Civil Code* § 1670.5 ("*If the court as a matter of law* finds

9   the contract or any clause of the contract to have been unconscionable. . .").  The Court has

10   already ruled that the Inventions Agreement is not substantively unconscionable (July 17,

11   2006 Order at 13-14), or outside the scope of the parties' expectations.  April 25, 2008

12   Order, at 5.  Moreover, defendants have withdrawn the unconscionability defense.  *See*

13   Stipulation and Order Regarding Carter Bryant's Amended Reply to Mattel's

14   Counterclaims, dated October 5, 2007, at 1:18-22.  Accordingly, even if the contract were

15   one of adhesion, there would be no issue for the jury to decide.

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections and Responses Re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1 **MGA Parties' Response**

2

3  Contrary to Mattel's assertions, this instruction is necessary.  To begin with, it goes to
4  Mattel's claim for declaratory relief, which turns on its assertion of a breach of contract.
5  As noted above, the jury will be focused on interpreting the Inventions Agreement when
6  decides Mattel's claim for declaratory relief.  Moreover, it is also relevant to Mattel's
7  intentional interference with contract claim. See Summit Mach. Tool Mfg. Corp. v. Victor
8  CNC Systems, Inc., 7 F.3d 1434, 1442 (9th Cir. 1993) ("To recover for intentional
9  interference with a contractual relationship, Summit must show '(1) that [it] had a valid
10 and existing contract, (2) that [Victor] had knowledge of the contract and intended to
11 induce its breach, (3) that the contract was in fact breached by [ZMTW], (4) that the
12 breach was caused by [Victor's] unjustified and wrongful conduct, and (5) that [Summit]
13 has suffered damage.'") (emphasis added); see also Anlin Industries, Inc. v. Burgess, 2006
14 WL 2308476, at *3 (E.D. Cal. Aug. 9, 2006) ("To state a cause of action for interference
15 with contract under California law, a plaintiff must allege (1) a valid contract between the
16 plaintiff and a third party; (2) that the defendant had knowledge of this contract and
17 intended to induce its breach; (3) that the contract was breached; (4) that the breach was
18 caused by the defendant's wrongful and unjustified conduct; and (5) that the plaintiff
19 suffered damage.") (emphasis added); Farmers Ins. Exchange v. State of California, 175
20 Cal. App. 3d 494, 506 (1985) ("The elements of this tort [for intentional interference with
21 contract] include: 1) The existence of a valid contract; 2) knowledge of the contract on the
22 part of defendant and intent to induce its breach; 3) breach of the contract by the third
23 party; 4) proximate cause; 5) damages.") (emphasis added).

24

25 Mattel overstates the Court's ruling with respect to the Inventions Agreement.  The Court
26 found as a matter of law that the inventions agreement was a valid and enforceable
27 contract and that it creates certain rights for Mattel over "any Bratz-related 'inventions'
28 (including any designs, improvements, ideas, concepts and copyrightable subject matter"

1   that Bryant "created during the period of his employment with Mattel") and rejected

2   certain defenses (Labor Code § 2870 and preparations to compete). Final Pre-Trial

3   Conference Order at 4.  The MGA Parties' revised jury instructions reflect this ruling.

4   However, that is where the ruling ends, and it leaves much for the jury to decide.  For

5   example, as the court noted, its holding was contingent on "the resolution of certain (as yet

6   unresolved) issues of timing of creation and/or alteration."  April 25, 2008 Order at 4.  In

7   order to decide the timing of creation, the jury must first decide what sorts of acts count as

8   "creation" in the context of this contract.  This will require the jury to interpret the contract.

9   The jury will also have to decide the scope of the term "inventions" – while the Court has

10  laid out in general terms what is included, it will be for the jury to look at an individual

11  purported "invention" and determine whether that particular item falls within the scope.

12  Indeed, the Court has already observed the complexity of this process, noting that "it is

13  uncontroverted that four drawings (each with a color and black and white version) of dolls

14  in evening wear were created by Bryant during the period of his employment with Mattel"

15  yet "the scope of the rights that may be assigned to Mattel under the Inventions Agreement

16  is unclear in light of the larger disputed factual issue regarding the remaining Bratz

17  drawings."  May 21, 2008 Order at 8.  As such, instructions on the interpretation of

18  contractual terms, and any other instructions that aid the jury in applying the terms of the

19  Inventions Agreement to specific pieces of evidence, continue to be important.

20

21  Further, the jury must interpret particular contractual terms to the extent conflicting

22  extrinsic evidence supports more than one reading of the particular terms.  See City of

23  Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 395 (2008) (affirming

24  submission of contract interpretation issue to the jury where disputed factual evidence

25  potentially supports more than one reading of a contract term); Dell'Oca v. Bank of New

26  York Trust Co., N.A., 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although interpretation of

27  a contract is essentially a judicial function, it is the jury's responsibility, as the trier of fact,

28  to resolve any conflicts in the extrinsic evidence properly admitted to interpret the

94

1  language of a contract.") (internal citations omitted); <u>Morey v. Vannucci</u>, 64 Cal. App. 4th

2  904, 912-13 (1998) ("Where the interpretation of contractual language turns on a question

3  of the credibility of <u>conflicting</u> extrinsic evidence, interpretation of the language is not

4  solely a judicial function. As trier of fact, it is the jury's responsibility to resolve any

5  conflict in the extrinsic evidence properly admitted to interpret the language of a contract.")

6  (internal citations omitted); <u>see also</u> <u>First Nat'l. Mortg. Co. v. Federal Realty Inv. Trust</u>,

7  2006 WL 2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's responsibility to

8  resolve any conflict in the extrinsic evidence properly admitted to interpret the language of

9  a contract," quoting <u>Morey v. Vannucci</u>); <u>Fletcher Capital Mkts., Inc. v. Calgene, Inc.</u>,

10  1998 WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California law, noting that "[i]f

11  the parol evidence is in conflict, the resolution of that conflict is a question of fact for the

12  jury").

13

14  Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.

15  This is especially so because the authority supporting the proposed instruction is not CACI

16  320, as Mattel asserts, but rather the "Directions for Use" following the model instruction.

17  <u>See</u> Directions for Use, CACI 320 (2008) (explaining that the construction against the

18  drafter rule "is applied more strongly in the case of adhesion contracts"). Moreover, in

19  proposing jury instructions, the parties are permitted to modify the language of any model

20  instruction to make it less confusing or more appropriate in the context of a particular case.

21  <u>See</u> <u>McDowell v. Calderon</u>, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI

22  and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury

23  instructions are not debated and hammered out by legislators, but by ad hoc committees of

24  lawyers and judges.  Jury instructions do not come down from any mountain or rise up

25  from any sea.  Their precise wording, although extremely useful, is not blessed with any

26  special precedential or binding authority.  This description does not denigrate their value,

27  it simply places them in the niche where they belong.").  Indeed, modification is

28  sometimes necessary to make an instruction accurate and complete.  <u>See, e.g.</u>, <u>United</u>

95

1  States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth
2  Circuit model instruction to include additional elements, noting that "[h]ad the district
3  court merely read the model jury instruction, it would have committed plain error, since
4  that instruction makes no reference whatsoever to knowledge or intent.").

5

6  Although a contract of adhesion must be either unconscionable or against the reasonable
7  expectations of the adhered party to be unenforceable, the MGA Parties separate the
8  contract of adhesion instruction and the unconscionability instruction to make this
9  distinction clear.  The above instruction accurately states the test for a contract of adhesion
10 as enunciated by the California Supreme Court.  See Armendariz v. Found. Health
11 Psychcare Servs., Inc., 24 Cal. 4th 83 (2000).

12

13 Contrary to Mattel's assertion, defendants have not abandoned the entire doctrine of
14 unconscionability, but rather only particular uses of that doctrine.  The use proposed here
15 is not an attempt to revive Bryant's affirmative unconscionability defense and prevent
16 enforcement of the contract, but rather is focused on interpretation of the contract –
17 specifically, an interpretation that prevents Mattel's adhesive contract from meaning what
18 Mattel claims it means.   The MGA Parties do not contend that the Agreement is
19 unenforceable because that result would be unconscionable (an affirmative defense that
20 Bryant has withdrawn); rather, the MGA Parties contend that the Agreement does not
21 mean what Mattel claims it means because that interpretation would be unconscionable
22 and violate California's principles of interpretation for contracts of adhesion. In other
23 words, because construction against the drafter applies more strongly in cases involving
24 contracts of adhesion, Badie v. Bank of America, 67 Cal. App. 4th 779 (1998), and
25 because the defendants claim that the contract at issue was a contract of adhesion, this
26 instruction is appropriate.

27

28

1 | **INTERPRETATION—UNCONSCIONABILITY**

2 | *-EXCLUDED PURSUANT TO MOTION IN LIMINE AND WITHDRAWN-*

**INTERPRETATION – INTENT NEVER EXTENDED**

However broad the terms of a contract may be, the contract extends only to those things concerning that which it appears that the parties actually intended to contract.

**Authority:**  Cal. Civ. Code § 1648.

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Interpretation—Intent Never Extended on the following grounds:

1.   This proposed instruction is confusing and erroneous because Mattel is no longer pursuing a claim for breach of contract, and there does not appear to be any reason to instruct the jury as to the construction of the contract at issue.

2.   Defendants' proposed instruction is contrary to the Court's April 25, 2008 Order.  As far as Mattel is aware, no viable disputes regarding the terms of the Inventions Agreement remain in light of the Court's rulings.  The Court already explicitly held that the "Inventions Agreement is not ambiguous on the issue of its scope with respect to copyrightable materials." April 25, 2008 Order, at 4.  The Court found that the "Inventions Agreement explicitly conveys to Mattel an employee's interests in any copyright or copyrights." *Id.*  Finally, the Court held that "the original Bratz drawings clearly fall within the scope of the Inventions Agreement." *Id.*  Indeed, the Court explicitly found that Bryant's proposed interpretation of the Inventions Agreement is "not reasonable." *Id.*  Accordingly, this proposed instruction regarding a purported "rule of construction" is improper and misleading.

3.   In any event, it would be erroneous as a matter of law to give the jury instructions regarding the interpretation of terms in the contracts between Mattel and Bryant because, as a matter of law, the interpretation of written contracts is for the Court, not the jury. *See Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).

4.   Even if interpretation instructions were appropriate, this special instruction is unnecessary.  The intent of the parties is to be derived from the written contracts.  The standard instructions in CACI explain the essential elements of a breach of contract claim. *See* CACI No. 303.  This proposed instruction adds nothing, but rather is slanted toward defendants' theories.

1 | **MGA Parties' Response**

2

3  Contrary to Mattel's assertions, this instruction is necessary.  To begin with, it goes to

4  Mattel's claim for declaratory relief, which turns on its assertion of a breach of contract.

5  As noted above, the jury will be focused on interpreting the Inventions Agreement when

6  decides Mattel's claim for declaratory relief.  Moreover, it is also relevant to Mattel's

7  intentional interference with contract claim. See Summit Mach. Tool Mfg. Corp. v. Victor

8  CNC Systems, Inc., 7 F.3d 1434, 1442 (9th Cir. 1993) ("To recover for intentional

9  interference with a contractual relationship, Summit must show '(1) that [it] had a valid

10 and existing contract, (2) that [Victor] had knowledge of the contract and intended to

11 induce its breach, (3) that the contract was in fact breached by [ZMTW], (4) that the

12 breach was caused by [Victor's] unjustified and wrongful conduct, and (5) that [Summit]

13 has suffered damage.'") (emphasis added); see also Anlin Industries, Inc. v. Burgess, 2006

14 WL 2308476, at *3 (E.D. Cal. Aug. 9, 2006) ("To state a cause of action for interference

15 with contract under California law, a plaintiff must allege (1) a valid contract between the

16 plaintiff and a third party; (2) that the defendant had knowledge of this contract and

17 intended to induce its breach; (3) that the contract was breached; (4) that the breach was

18 caused by the defendant's wrongful and unjustified conduct; and (5) that the plaintiff

19 suffered damage.") (emphasis added); Farmers Ins. Exchange v. State of California, 175

20 Cal. App. 3d 494, 506 (1985) ("The elements of this tort [for intentional interference with

21 contract] include: 1) The existence of a valid contract; 2) knowledge of the contract on the

22 part of defendant and intent to induce its breach; 3) breach of the contract by the third

23 party; 4) proximate cause; 5) damages.") (emphasis added).

24

25 Mattel overstates the Court's ruling with respect to the Inventions Agreement.  The Court

26 found as a matter of law that the inventions agreement was a valid and enforceable

27 contract and that it creates certain rights for Mattel over "any Bratz-related 'inventions'

28 (including any designs, improvements, ideas, concepts and copyrightable subject matter"

1  that Bryant "created during the period of his employment with Mattel") and rejected

2  certain defenses (Labor Code § 2870 and preparations to compete). Final Pre-Trial

3  Conference Order at 4.   The MGA Parties' revised jury instructions reflect this ruling.

4  However, that is where the ruling ends, and it leaves much for the jury to decide.   For

5  example, as the court noted, its holding was contingent on "the resolution of certain (as yet

6  unresolved) issues of timing of creation and/or alteration."   April 25, 2008 Order at 4.   In

7  order to decide the timing of creation, the jury must first decide what sorts of acts count as

8  "creation" in the context of this contract.   This will require the jury to interpret the contract.

9  The jury will also have to decide the scope of the term "inventions" – while the Court has

10  laid out in general terms what is included, it will be for the jury to look at an individual

11  purported "invention" and determine whether that particular item falls within the scope.

12  Indeed, the Court has already observed the complexity of this process, noting that "it is

13  uncontroverted that four drawings (each with a color and black and white version) of dolls

14  in evening wear were created by Bryant during the period of his employment with Mattel"

15  yet "the scope of the rights that may be assigned to Mattel under the Inventions Agreement

16  is unclear in light of the larger disputed factual issue regarding the remaining Bratz

17  drawings."   May 21, 2008 Order at 8.   As such, instructions on the interpretation of

18  contractual terms, and any other instructions that aid the jury in applying the terms of the

19  Inventions Agreement to specific pieces of evidence, continue to be important.

20

21  Further, the jury must interpret particular contractual terms to the extent conflicting

22  extrinsic evidence supports more than one reading of the particular terms.   See <u>City of</u>

23  <u>Hope Nat'l Med. Ctr. v. Genentech, Inc.</u>, 43 Cal. 4th 375, 395 (2008) (affirming

24  submission of contract interpretation issue to the jury where disputed factual evidence

25  potentially supports more than one reading of a contract term); <u>Dell'Oca v. Bank of New</u>

26  <u>York Trust Co., N.A.</u>, 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although interpretation of

27  a contract is essentially a judicial function, it is the jury's responsibility, as the trier of fact,

28  to resolve any conflicts in the extrinsic evidence properly admitted to interpret the

1  language of a contract.") (internal citations omitted); <u>Morey v. Vannucci</u>, 64 Cal. App. 4th

2  904, 912-13 (1998) ("Where the interpretation of contractual language turns on a question

3  of the credibility of <u>conflicting</u> extrinsic evidence, interpretation of the language is not

4  solely a judicial function. As trier of fact, it is the jury's responsibility to resolve any

5  conflict in the extrinsic evidence properly admitted to interpret the language of a contract.")

6  (internal citations omitted); <u>see also</u> <u>First Nat'l. Mortg. Co. v. Federal Realty Inv. Trust</u>,

7  2006 WL 2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's responsibility to

8  resolve any conflict in the extrinsic evidence properly admitted to interpret the language of

9  a contract," quoting <u>Morey v. Vannucci</u>); <u>Fletcher Capital Mkts., Inc. v. Calgene, Inc.</u>,

10  1998 WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California law, noting that "[i]f

11  the parol evidence is in conflict, the resolution of that conflict is a question of fact for the

12  jury").

13

14  Furthermore, CACI No. 303 says nothing about the issue of intent of the parties, but

15  simply lists the factual elements of breach of contract.  Given Mattel's reliance on its

16  purported intent to include all creative works of any kind within the term "inventions" in

17  the contract at issue and the MGA Parties' denial of that claim, this instruction is

18  appropriate.

19

20

21

22

23

24

25

26

27

28

# INTERPRETATION – AVOIDING EXTRAORDINARY, HARSH, UNJUST, OR INEQUITABLE INTERPRETATION:

In deciding what the words of a contract meant to the parties, you must avoid an interpretation which will make the contract extraordinary, harsh, unjust, inequitable or which would result in an absurdity.

**Authority:** Cal. Civ. Code § 1638; <u>Strong v. Theis</u>, 187 Cal. App. 3d 913 (1986); <u>County of Marin v. Assessment Appeals Bd.</u>, 64 Cal. App. 3d 319 (1976).

1  **Mattel's Objections**

2

3      Mattel objects defendants' proposed instruction regarding Interpretation—Avoiding

4  Extraordinary, Harsh, Unjust or Inequitable Interpretation on the following grounds:

5      1.      This proposed instruction is confusing and erroneous because Mattel is no

6  longer pursuing a claim for breach of contract, and there does not appear to be any reason

7  to instruct the jury as to the construction of the contract at issue.

8      2.      Defendants' proposed instruction is contrary to the Court's April 25, 2008

9  Order.  As far as Mattel is aware, no viable disputes regarding the terms of the Inventions

10 Agreement remain in light of the Court's rulings.  The Court already explicitly held that the

11 "Inventions Agreement is not ambiguous on the issue of its scope with respect to

12 copyrightable materials."  April 25, 2008 Order, at 4.  The Court found that the "Inventions

13 Agreement explicitly conveys to Mattel an employee's interests in any copyright or

14 copyrights."  *Id.*  Finally, the Court held that "the original Bratz drawings clearly fall

15 within the scope of the Inventions Agreement."  *Id.*  Indeed, the Court explicitly found that

16 Bryant's proposed interpretation of the Inventions Agreement is "not reasonable."  *Id.*

17 Accordingly, this proposed instruction, which purports to inform the jury how to "decid[e]

18 what the words of a contract meant to the parties," is improper and misleading.

19     3.      In any event, it would be erroneous as a matter of law to give the jury

20 instructions regarding the interpretation of terms in the contracts between Mattel and

21 Bryant because, as a matter of law, the interpretation of written contracts is for the Court,

22 not the jury.  *See Am. President Lines, Ltd. v. Zolin*, 38 Cal. App. 4th 910, 923 (1995).

23     4.      Even if interpretation instructions were appropriate, this special instruction is

24 unnecessary.  The intent of the parties is to be derived from the written contracts.  The

25 standard instructions in CACI explain the essential elements of a breach of contract claim.

26 *See* CACI No. 303.  This proposed instruction adds nothing, but rather is slanted toward

27 defendants' theories.

28

1     5.      Neither *Cal. Civ. Code* § 1638, which provides that the "language of a

2  contract is to govern its interpretation, if the language is clear and explicit and does not

3  involve an absurdity," nor the cases that defendants cite, suggest that this instruction is

4  necessary.  In *Strong v. Theis*, 187 Cal. App. 3d 913, 920-21 (1986), the court rejected a

5  strained interpretation of a contract that would allow some successors to inherit, and others

6  not, when that was not the parties' intent.  In *County of Marin v. Assessment Appeals Bd.*,

7  64 Cal. App. 3d 319, 328 (1976), the court, in dicta, rejected an interpretation that would

8  impose contractual restrictions on taxpayers, but deprived them of the tax benefit, which

9  was the bargained-for consideration for those restrictions.

**MGA Parties' Response**

Contrary to Mattel's assertions, this instruction is necessary. To begin with, it goes to Mattel's claim for declaratory relief, which turns on its assertion of a breach of contract. As noted above, the jury will be focused on interpreting the Inventions Agreement when decides Mattel's claim for declaratory relief. Moreover, it is also relevant to Mattel's intentional interference with contract claim. See Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc., 7 F.3d 1434, 1442 (9th Cir. 1993) ("To recover for intentional interference with a contractual relationship, Summit must show '(1) that [it] had a valid and existing contract, (2) that [Victor] had knowledge of the contract and intended to induce its breach, (3) that the contract was in fact breached by [ZMTW], (4) that the breach was caused by [Victor's] unjustified and wrongful conduct, and (5) that [Summit] has suffered damage.'") (emphasis added); see also Anlin Industries, Inc. v. Burgess, 2006 WL 2308476, at *3 (E.D. Cal. Aug. 9, 2006) ("To state a cause of action for interference with contract under California law, a plaintiff must allege (1) a valid contract between the plaintiff and a third party; (2) that the defendant had knowledge of this contract and intended to induce its breach; (3) that the contract was breached; (4) that the breach was caused by the defendant's wrongful and unjustified conduct; and (5) that the plaintiff suffered damage.") (emphasis added); Farmers Ins. Exchange v. State of California, 175 Cal. App. 3d 494, 506 (1985) ("The elements of this tort [for intentional interference with contract] include: 1) The existence of a valid contract; 2) knowledge of the contract on the part of defendant and intent to induce its breach; 3) breach of the contract by the third party; 4) proximate cause; 5) damages.") (emphasis added).

Mattel overstates the Court's ruling with respect to the Inventions Agreement. The Court found as a matter of law that the inventions agreement was a valid and enforceable contract and that it creates certain rights for Mattel over "any Bratz-related 'inventions' (including any designs, improvements, ideas, concepts and copyrightable subject matter"

1    that Bryant "created during the period of his employment with Mattel") and rejected

2    certain defenses (Labor Code § 2870 and preparations to compete). Final Pre-Trial

3    Conference Order at 4.  The MGA Parties' revised jury instructions reflect this ruling.

4    However, that is where the ruling ends, and it leaves much for the jury to decide.  For

5    example, as the court noted, its holding was contingent on "the resolution of certain (as yet

6    unresolved) issues of timing of creation and/or alteration."  April 25, 2008 Order at 4.  In

7    order to decide the timing of creation, the jury must first decide what sorts of acts count as

8    "creation" in the context of this contract.  This will require the jury to interpret the contract.

9    The jury will also have to decide the scope of the term "inventions" – while the Court has

10   laid out in general terms what is included, it will be for the jury to look at an individual

11   purported "invention" and determine whether that particular item falls within the scope.

12   Indeed, the Court has already observed the complexity of this process, noting that "it is

13   uncontroverted that four drawings (each with a color and black and white version) of dolls

14   in evening wear were created by Bryant during the period of his employment with Mattel"

15   yet "the scope of the rights that may be assigned to Mattel under the Inventions Agreement

16   is unclear in light of the larger disputed factual issue regarding the remaining Bratz

17   drawings."  May 21, 2008 Order at 8.  As such, instructions on the interpretation of

18   contractual terms, and any other instructions that aid the jury in applying the terms of the

19   Inventions Agreement to specific pieces of evidence, continue to be important.

20

21   Further, the jury must interpret particular contractual terms to the extent conflicting

22   extrinsic evidence supports more than one reading of the particular terms.  See City of

23   Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 395 (2008) (affirming

24   submission of contract interpretation issue to the jury where disputed factual evidence

25   potentially supports more than one reading of a contract term); Dell'Oca v. Bank of New

26   York Trust Co., N.A., 159 Cal. App. 4th 531, 556 n.16 (2008) ("Although interpretation of

27   a contract is essentially a judicial function, it is the jury's responsibility, as the trier of fact,

28   to resolve any conflicts in the extrinsic evidence properly admitted to interpret the

1  language of a contract.") (internal citations omitted); <u>Morey v. Vannucci</u>, 64 Cal. App. 4th

2  904, 912-13 (1998) ("Where the interpretation of contractual language turns on a question

3  of the credibility of <u>conflicting</u> extrinsic evidence, interpretation of the language is not

4  solely a judicial function. As trier of fact, it is the jury's responsibility to resolve any

5  conflict in the extrinsic evidence properly admitted to interpret the language of a contract.")

6  (internal citations omitted); <u>see also</u> <u>First Nat'l. Mortg. Co. v. Federal Realty Inv. Trust</u>,

7  2006 WL 2228941, at *8 (N.D. Cal. Aug. 3, 2006) (noting "it is the jury's responsibility to

8  resolve any conflict in the extrinsic evidence properly admitted to interpret the language of

9  a contract," quoting <u>Morey v. Vannucci</u>); <u>Fletcher Capital Mkts., Inc. v. Calgene, Inc.</u>,

10  1998 WL 743676, at *3 (D. Del. Sept. 30, 1998) (applying California law, noting that "[i]f

11  the parol evidence is in conflict, the resolution of that conflict is a question of fact for the

12  jury").

13

14  The MGA Parties' authority for this instruction merely recites the uncontroversial point

15  that where the language of a contract is not clear, the terms must not be interpreted in an

16  untenable or unjust manner.  <u>See</u> Cal. Civ. Code § 1638; <u>Strong v. Theis</u>, 187 Cal. App. 3d

17  913 (1986); <u>County of Marin v. Assessment Appeals Bd.</u>, 64 Cal. App. 3d 319 (1976).

18  Thus, because extrinsic evidence will be used in interpreting the ambiguous language in

19  Bryant's agreement, this instruction is necessary.

20

21  Furthermore, CACI No. 303 says nothing about extraordinary, harsh, unjust or inequitable

22  conduct, but simply lists the factual elements of breach of contract.   Given Mattel's

23  contention that its enforcement of its contracts would not lead to unjust results, this

24  instruction is necessary.

25

26

27

28

## MODIFICATION

Defendants claim that the Inventions Agreement and was modified or changed.  Mattel denies that the contract was modified.

The parties to a contract may agree to modify its terms.  You must decide whether a reasonable person would conclude from the words and conduct of Mattel that they agreed to modify the contract.  You cannot consider the parties' hidden intentions.

A contract in writing may be modified by an oral agreement to the extent the oral agreement is carried out by the parties.

Further, a modification to a contract can be created by the conduct of the parties, without spoken or written words.  Contracts created by conduct are just as valid as contracts formed with words.

Conduct will create a modification if the conduct of both parties is intentional and each knows, or has reason to know, that the other party will interpret the conduct as an agreement to modify the contract.

**Authority:**  CACI Nos. 305, 313 (2008) (as modified).

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Modification on the following grounds:

1.      This proposed instruction is confusing and erroneous because Mattel is no longer pursuing a claim for breach of contract, and is no reason to instruct the jury as to contract modification.

2.      This proposed instruction is also confusing and misleading in that it does not even inform the jury what the purported modifications would be.

3.      In any event, this proposed instruction deviates from the model instruction found in CACI.  The last two paragraphs of the proposed instruction are not found in CACI No. 313.

4.      In addition, the proposed instruction misstates the law.  *Civil Code* § 1698 sets forth the conditions for modifying a written contract.  That statute does not include the provisions in the last two paragraphs of this proposed instruction.

**1** <u>MGA Parties' Response</u>

**2**

**3** Contrary to Mattel's assertions, this instruction is necessary.  To begin with, it goes to

**4** Mattel's claim for declaratory relief, which turns on its assertion of a breach of contract.

**5** As noted above, the jury will be focused on interpreting the Inventions Agreement when

**6** decides Mattel's claim for declaratory relief. Moreover, it is also relevant to Mattel's

**7** intentional interference with contract claim. <u>See</u> <u>Summit Mach. Tool Mfg. Corp. v. Victor</u>

**8** <u>CNC Systems, Inc.</u>, 7 F.3d 1434, 1442 (9th Cir. 1993) ("To recover for intentional

**9** interference with a contractual relationship, Summit must show '(1) that [it] had a valid

**10** and existing contract, (2) that [Victor] had knowledge of the contract and intended to

**11** induce its breach, (3) <u>that the contract was in fact breached by [ZMTW]</u>, (4) that the

**12** breach was caused by [Victor's] unjustified and wrongful conduct, and (5) that [Summit]

**13** has suffered damage.'") (emphasis added); <u>see also</u> <u>Anlin Industries, Inc. v. Burgess</u>, 2006

**14** WL 2308476, at *3 (E.D. Cal. Aug. 9, 2006) ("To state a cause of action for interference

**15** with contract under California law, a plaintiff must allege (1) a valid contract between the

**16** plaintiff and a third party; (2) that the defendant had knowledge of this contract and

**17** intended to induce its breach; (3) <u>that the contract was breached</u>; (4) that the breach was

**18** caused by the defendant's wrongful and unjustified conduct; and (5) that the plaintiff

**19** suffered damage.") (emphasis added); <u>Farmers Ins. Exchange v. State of California</u>, 175

**20** Cal. App. 3d 494, 506 (1985) ("The elements of this tort [for intentional interference with

**21** contract] include: 1) The existence of a valid contract; 2) knowledge of the contract on the

**22** part of defendant and intent to induce its breach; 3) <u>breach of the contract by the third</u>

**23** <u>party</u>; 4) proximate cause; 5) damages.") (emphasis added).

**24**

**25** Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.

**26** In proposing jury instructions, the parties are permitted to modify the language of any

**27** model instruction to make it less confusing or more appropriate in the context of a

**28** particular case.   <u>See</u> <u>McDowell v. Calderon</u>, 130 F.3d 833, 840-41 (9th Cir. 1997)

1  (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The

2  texts of 'standard' jury instructions are not debated and hammered out by legislators, but

3  by ad hoc committees of lawyers and judges.  Jury instructions do not come down from

4  any mountain or rise up from any sea.  Their precise wording, although extremely useful,

5  is not blessed with any special precedential or binding authority.  This description does not

6  denigrate their value, it simply places them in the niche where they belong.").  Indeed,

7  modification is sometimes necessary to make an instruction accurate and complete.  See,

8  e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification

9  of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the

10  district court merely read the model jury instruction, it would have committed plain error,

11  since that instruction makes no reference whatsoever to knowledge or intent.").

12

13  In this case, the MGA Parties contend that the contract was modified by the parties' course

14  of conduct to permit moonlighting and independent artistic work.  Such a contention, and

15  the factual support for such a position, is sufficient to require an instruction regarding

16  modification by conduct, as proposed by the MGA Parties.

17

18  Moreover, Mattel's objection that the provisions in the last two paragraphs of the proposed

19  instruction are contrary to law is wrong.  The bare text of the Civil Code is not the only

20  source of authority on this issue.  The last two paragraphs are entirely consistent with case

21  law.  See Conley v. Matthes, 56 Cal. App. 4th 1453, 1466 (1997) (party's conduct

22  "amount[ed] to an executed oral modification of the writings between the parties");

23  Wagner v. Glendale Adventist Med. Ctr., 216 Cal. App. 3d 1379, 1388 (1989) (conduct

24  antithetical to a term of a written contract which induces the other party to rely on the

25  conduct can amount to a modification of the contract); see also In re Aller's Petition, 47

26  Cal. 2d 189 (1956) (mutual rescission of arbitration provision in contract may be implied

27  from parties' acts).

28

**PROTECTION OF EMPLOYEES' RIGHTS TO THEIR INVENTIONS (LABOR CODE § 2870)**

*-NO LONGER APPLICABLE AND WITHDRAWN-*


**CONTRACT CLAIM – SECTION 3(A) OF INVENTIONS AGREEMENT**

*-NO LONGER APPLICABLE AND WITHDRAWN-*


**CONTRACT CLAIM—RIGHT TO OBTAIN NEW EMPLOYMENT**

*-NO LONGER APPLICABLE AND WITHDRAWN-*


**CONTRACT CLAIM – CONFLICT OF INTEREST QUESTIONNAIRE**

*-NO LONGER APPLICABLE AND WITHDRAWN-*


**CONTRACT FORMATION—ESSENTIAL FACTUAL ELEMENTS**

*-NO LONGER APPLICABLE AND WITHDRAWN-*


**CONTRACT FORMATION—DOCUMENT MUST OBVIOUSLY BE A CONTRACT**

*-NO LONGER APPLICABLE AND WITHDRAWN-*


**CONSIDERATION**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

**-REVISED-**

**EVIDENCE OF GOOD FAITH**

As I explained before, if you find that Carter Bryant breached Section 2(a) of the Inventions Agreement, you must then determine whether MGA purchased the rights in good faith. If you find MGA purchased its rights in good faith, you must find for MGA, MGA (HK), and Isaac Larian on Mattel's declaratory relief claim.

In determining whether Mattel is entitled to relief, the good faith of Carter Bryant, Larian, MGA, and MGA (HK) is a factor that should be considered when assessing any claim by Mattel that Carter Bryant, Larian, MGA, and MGA (HK) acted in bad faith or with bad intent. To the extent Mattel's claims implicate defendants' intent or mental state, good faith is a relevant inquiry for which Mattel bears the burden of proof.

**Authority:** People v. Webb, 74 Cal. App. 4th 688, 694 (1999); 5 B.E. Witkin, Cal. Proc.: Pleadings § 1008 (4th ed. 1997) (distinguishing new matters from facts constituting a denial of an element and identifying good faith as the latter and, thus, not an affirmative defense).

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Declaratory Relief: the Parties' Claims Evidence of Good Faith on the following grounds:

1.     A declaratory relief claim is equitable and should be adjudicated by the Court, not the jury.  Accordingly, there is no basis to give this instruction to the jury.

2.     In any event, this proposed instruction misstates the nature of Mattel's claim for declaratory relief and is therefore prejudicial and misleading.  Mattel seeks a declaration that defendants have no valid ownership interests in Bratz and that any agreements between Carter Bryant and defendants purporting to assign defendants rights in Bratz are void.  *See* Mattel, Inc.'s Second Amended Answer and Counterclaims, at ¶¶ 168-170.  Defendants' assertion that the jury must determine whether Bryant breached his contracts with Mattel in order to decide Mattel's declaratory relief claim is simply incorrect.  The issue is whether Bryant conceived or created Bratz works while employed by Mattel.  The Court has already ruled that Mattel rightfully owns such works.  *See* Final Pre-Trial Conference Order, at 4.

3.     This proposed instruction also misstates the law.  Mattel's right to declaratory relief regarding the ownership interests in Bratz has nothing to do with whether or not defendants acted in "good faith."  This proposed instruction is irrelevant to any claim in this case -- defendants have no basis to instruct the jury that it must find for defendants on Mattel's declaratory relief claim if they "purchased [their] rights in good faith."  Nor do defendants even explain what it would mean to "find for [defendants] on Mattel's declaratory relief claim," which claim is based on ownership rights in Bratz.

**MGA Parties' Response**

Mattel's blanket assertion that all declaratory relief claims are equitable in nature runs directly counter to long-established case law.  "Insofar as the right to a jury trial is concerned, it is erroneous to say that all declaratory relief actions are equitable; an action for declaratory relief has been characterized as 'sui generis.'   Where an action for declaratory relief is in effect used as a substitute for an action at law for breach of contract, a party is entitled to a jury trial as a matter of right."  Patterson v. Ins. Co. of N. Am., 6 Cal. App. 3d 310, 315 (1970) (internal citations omitted); see also B.E. Witkin, Cal. Proc.: Trial § 95, p. 115 (4th ed. 1997) ("Unlike other equitable actions, declaratory relief is for some purposes treated as if it were a coercive proceeding, and the courts will not permit it to be used as a device to circumvent the right to a jury trial.")  This is precisely the case here.

Mattel overstates the Court's ruling with respect to the Inventions Agreement.  The Court found as a matter of law that the inventions agreement was a valid and enforceable contract and that it creates certain rights for Mattel over "any Bratz-related 'inventions' (including any designs, improvements, ideas, concepts and copyrightable subject matter" that Bryant "created during the period of his employment with Mattel") and rejected certain defenses (Labor Code § 2870 and preparations to compete). Final Pre-Trial Conference Order at 4.  The MGA Parties' revised jury instructions reflect this ruling. However, that is where the ruling ends, and it leaves much for the jury to decide.  For example, as the court noted, its holding was contingent on "the resolution of certain (as yet unresolved) issues of timing of creation and/or alteration."  April 25, 2008 Order at 4.  In order to decide the timing of creation, the jury must first decide what sorts of acts count as "creation" in the context of this contract.  This will require the jury to interpret the contract. The jury will also have to decide the scope of the term "inventions" – while the Court has laid out in general terms what is included, it will be for the jury to look at an individual purported "invention" and determine whether that particular item falls within the scope.

1  Indeed, the Court has already observed the complexity of this process, noting that "it is
2  uncontroverted that four drawings (each with a color and black and white version) of dolls
3  in evening wear were created by Bryant during the period of his employment with Mattel"
4  yet "the scope of the rights that may be assigned to Mattel under the Inventions Agreement
5  is unclear in light of the larger disputed factual issue regarding the remaining Bratz
6  drawings."   May 21, 2008 Order at 8.   As such, instructions on the interpretation of
7  contractual terms, and any other instructions that aid the jury in applying the terms of the
8  Inventions Agreement to specific pieces of evidence, continue to be important.
9
10  More importantly, the Court did not resolve the validity of Bryant's transfer of his
11  ownership of his drawings to MGA.   Even if the jury resolves that an individual item
12  belonged to Mattel rather than Bryant at its creation, this does not resolve whether it
13  belongs to Mattel or MGA now.   See also MGA Parties' Proposed Instruction – Good
14  Faith Transfer.
15
16  Mattel's objection that good faith is not relevant is unsupported by law (as evidenced by
17  Mattel's failure to cite any authority for its contention) and ignores that, to the extent each
18  of Mattel's claims implicate defendants' intent or mental state, good faith is a factor on
19  which Mattel bears the burden of proof.   As the MGA Parties detailed at length in
20  opposing Mattel's motion for summary judgment, good faith is plainly an issue that is
21  relevant for the jury's consideration on any claim where the MGA Parties' intent or
22  scienter is an element – which is to say on virtually every claim, including Mattel's claims
23  for intentional interference with contract and aiding and abetting claims. Good faith is
24  relevant to any claim where intent is required or pled as an element.   See, e.g., State Farm
25  Mut. Auto. Ins. Co. v. Superior Court, 228 Cal. App. 3d 721, 727 (1991) (holding that,
26  where purported affirmative defense was relevant to negate alleged intent, it was not
27  properly considered an affirmative defense but rather a denial of plaintiff's allegations,
28  which could be proven as such at trial).

**-REVISED-**

**COPYRIGHT ACT § 204(A) , CALIFORNIA CIVIL CODE § 988**

As I also explained before, if you find that Carter Bryant breached Section 2(a) of the Inventions Agreement, and you do not find that MGA purchased its rights in good faith, then you must determine whether, under section 204(a) of the Copyright Act and Section 988 of the California Civil Code, the Inventions Agreement transferred any copyright ownership in the BRATZ sketches to Mattel.  If you find that the Inventions Agreement does not satisfy these sections, you must find for MGA, and Isaac Larian on Mattel's declaratory relief claim.

If you find that the BRATZ sketches were an invention conceived or reduced to practice by Mr. Bryant during his employment with Mattel, you must also determine whether the Inventions Agreement satisfies the requirements of Section 204(a) of the Copyright Act and California Civil Code § 988.  If you find that the BRATZ sketches were not an invention conceived or reduced to practice by Mr. Bryant during his employment with Mattel, then you need not consider this instruction.

I will now explain Copyright Act § 204(a) and California Civil Code §988.  Under Section 204(a) of the Copyright Act, any transfer of copyright ownership must be clear and in writing to be valid. Specifically, the written transfer instrument must (1) reasonably identify the subject matter of the agreement; (2) be sufficient to indicate that the parties have come to an agreement; and (3) state with reasonable certainty the essential terms of the contract. Similarly, under California Civil Code Section 988, in a written agreement transferring any of a copyright owner's rights, any ambiguity about the nature or scope of the rights conveyed must be resolved to preserve the rights of the original owner.

1  These requirements prevent the inadvertent transfer of ownership rights by forcing a party
2  who wants to use the copyrighted work to negotiate with the creator to determine precisely
3  what rights are being transferred and at what price.  Any ambiguity in a purported transfer
4  should be resolved in favor of the original copyright holder or creator keeping the rights to
5  the copyrighted work.

6

7  If you find that the Inventions Agreement does not satisfy the above requirements of §
8  204(a) of the Copyright Act or California Civil Code Section 988, then you must find for
9  defendants on Mattel's declaratory relief claim.

10

11  **Authority:**  17 U.S.C. § 204(a); <u>Konigsberg, Int'l, Inc. v. Rice</u>, 16 F.3d 355, 357 (9th Cir.
12  1994) (requiring written transfer instrument to "be a product of the parties' negotiations");
13  <u>Effects Assocs., Inc. v. Cohen</u>, 908 F.2d 555, 557 (9th Cir. 1990); <u>Foraste v. Brown Univ.</u>,
14  290 F. Supp. 2d 234, 240-41 (D.R.I. 2003) (collecting cases holding that 204(a) requires
15  the drafter of a transfer document to be "explicit," "precis[e]," "clear," and
16  "unequivocal"); <u>Bieg v. Hovnonian Enters., Inc.</u>, 157 F. Supp. 2d 475, 480 (E.D. Pa.
17  2001); <u>Pamfiloff v. Giant Records, Inc.</u>, 794 F. Supp. 933, 936 (N.D. Cal. 1992); Cal. Civ.
18  Code § 988(c); 13 B.E. Witkin, <u>Summary of California Law: Personal Property</u> § 47 (10th
19  ed. 2005); <u>Chamberlain v. Cocola Assocs.</u>, 958 F.2d 282, 283-84 (9th Cir. 1992)

20
21
22
23
24
25
26
27
28

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Copyright Act § 204(A), California Civil Code § 988 on the following grounds:

1. This proposed instruction is contrary to the Court's April 25, 2008 Order. The Court has already held that the Inventions Agreement is a valid and enforceable contract and that it is not ambiguous on the issue of its scope with respect to copyrightable materials." April 25, 2008 Order, at 4. The Court found that the "Inventions Agreement explicitly conveys to Mattel an employee's interests in any copyright or copyrights." *Id*. Finally, the Court held that "the original Bratz drawings clearly fall within the scope of the Inventions Agreement." *Id*. Accordingly, this proposed instruction, which purports to tell the jury circumstances under which a transfer of ownership might not be valid, is improper and misleading.

2. In any event, the effect of statutes are for the Court, not the jury.

3. This proposed instruction also misstates the law. Mattel's right to declaratory relief regarding the ownership interests in Bratz has nothing to do with whether or not defendants acted in "good faith." The proposed instruction is irrelevant to any claim in this case -- defendants have no basis to instruct the jury that it must find for defendants on Mattel's declaratory relief claim if the Inventions Agreement does not "satisfy" these statutes. Nor do defendants even explain what it would mean to "find for [defendants] on Mattel's declaratory relief claim," which claim is based on ownership rights relating to Bratz.

4. This proposed instruction is an incomplete statement of the law. (As just one example, the statutes simply do not say "any ambiguity in transfer" should be resolved in favor of the copyright owner.)

5. The proposed instruction is confusing and compound since defendants have lumped two separate statutes into one instruction, and it is replete with legalese.

1   6.   The instruction is argumentative and does not inform the jury as to the factual

2   issue(s) it must resolve.

3   7.   The instruction makes no reference as to who has the burden of proof on the

4   issues raised.

5   8.   The instruction is an incomplete and misleading statement of the law.  Neither

6   statute requires the transfer document to be "clear."  Indeed, under Section 204, the writing

7   requirement is not "unduly burdensome" but instead is "really quite simple: If the

8   copyright holder agrees to transfer ownership to another party, that party must get the

9   copyright holder to sign a piece of paper saying so.  It doesn't have to be the Magna Carta;

10   a one-line pro forma statement will do." *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555 (9th

11   Cir. 1990).  Further, neither statute states that "any ambiguity in transfer" should be

12   resolved in favor of the work's creator.  Additionally, the instruction is also improperly

13   framed in terms of works that already existed at the time of the Inventions Agreement's

14   execution.  Under Section 204, Bryant could validly transfer rights to as-yet uncreated

15   copyrightable works.  *See Nat'l Ass'n for Stock Car Auto Racing, Inc. v. Scharle*, 356 F.

16   Supp. 2d 515, 523-24 (E.D. Pa. 2005) (upholding transfer under document stating that

17   "Scharle would be paid for his [future] work [on a project], and the Mint would retain the

18   copyrights"); *Iconix Inc. v. Tokuda*, 457 F. Supp. 2d 969 (N.D. Cal. 2006) (similar, under

19   pre-inventions assignment agreement); *Bull Publ'g Co., v. Sandoz Nutrition Corp.*, 1989

20   WL 201080, *2, 4-5 (N.D. Cal. 1989) (upholding transfer under publishing agreement that

21   granted plaintiffs all copyrights in works to be created in the future, including derivative

22   works). Finally, the instruction is argumentative because neither statute discusses

23   "preserv[ing] the rights of the original owner."  Rather, the statutes merely address validity

24   requirements for transfers of copyright.

25

26

27

28

121

**MGA Parties' Response**

Mattel overstates the Court's ruling with respect to the Inventions Agreement.  The Court found as a matter of law that the inventions agreement was a valid and enforceable contract and that it creates certain rights for Mattel over "any Bratz-related 'inventions' (including any designs, improvements, ideas, concepts and copyrightable subject matter" that Bryant "created during the period of his employment with Mattel") and rejected certain defenses (Labor Code § 2870 and preparations to compete). Final Pre-Trial Conference Order at 4.  The MGA Parties' revised jury instructions reflect this ruling. However, that is where the ruling ends, and it leaves much for the jury to decide.  For example, as the court noted, its holding was contingent on "the resolution of certain (as yet unresolved) issues of timing of creation and/or alteration."  April 25, 2008 Order at 4.  In order to decide the timing of creation, the jury must first decide what sorts of acts count as "creation" in the context of this contract.  This will require the jury to interpret the contract. The jury will also have to decide the scope of the term "inventions" – while the Court has laid out in general terms what is included, it will be for the jury to look at an individual purported "invention" and determine whether that particular item falls within the scope. Indeed, the Court has already observed the complexity of this process, noting that "it is uncontroverted that four drawings (each with a color and black and white version) of dolls in evening wear were created by Bryant during the period of his employment with Mattel" yet "the scope of the rights that may be assigned to Mattel under the Inventions Agreement is unclear in light of the larger disputed factual issue regarding the remaining Bratz drawings."  May 21, 2008 Order at 8.  As such, instructions on the interpretation of contractual terms, and any other instructions that aid the jury in applying the terms of the Inventions Agreement to specific pieces of evidence, continue to be important.

More importantly, the Court did not resolve the validity of Bryant's transfer of his ownership of his drawings to MGA.  Even if the jury resolves that an individual item

1  belonged to Mattel rather than Bryant at its creation, this does not resolve whether it

2  belongs to Mattel or MGA now.  See also MGA Parties' Proposed Instruction – Good

3  Faith Transfer.

4

5  Mattel's objection that good faith is not relevant is unsupported by law (as evidenced by

6  Mattel's failure to cite any authority for its contention) and ignores that, to the extent each

7  of Mattel's claims implicate defendants' intent or mental state, good faith is a factor on

8  which Mattel bears the burden of proof.  As the MGA Parties detailed at length in

9  opposing Mattel's motion for summary judgment, good faith is plainly an issue that is

10  relevant for the jury's consideration on any claim where the MGA Parties' intent or

11  scienter is an element – which is to say on virtually every claim, including Mattel's claims

12  for intentional interference with contract and aiding and abetting claims. Good faith is

13  relevant to any claim where intent is required or pled as an element.  See, e.g., State Farm

14  Mut. Auto. Ins. Co. v. Superior Court, 228 Cal. App. 3d 721, 727 (1991) (holding that,

15  where purported affirmative defense was relevant to negate alleged intent, it was not

16  properly considered an affirmative defense but rather a denial of plaintiff's allegations,

17  which could be proven as such at trial).

18
19  In addition, Mattel's objection recites language from a case where there was no written

20  assignment, not an insufficient written assignment.  In cases dealing with an insufficient

21  written assignment, such as at issue here, courts have been clear that Section 204(a)

22  requires the drafter of a transfer document to be "explicit," "precis[e]," "clear," and

23  "unequivocal."   Foraste v. Brown Univ., 290 F. Supp. 2d 234, 240-41 (D.R.I. 2003)

24  (collecting cases).  Here, the sufficiency of the purported assignment is in dispute.  Thus,

25  the transfer must be clear and unequivocal to pass muster under Section 204(a).

26  Furthermore, to the extent Mattel suggests that instructions based on statutes are not

27  questions for the jury, Mattel has ignored federal and California case law requiring the jury

28  to interpret factual questions implicated in analysis of  the statute's effect. See Panther Oil

123

& Grease Mfg. Co. v. Segerstrom, 224 F.2d 216, 218 (9th Cir. 1955) ("The question whether the product contained substances mentioned in the statute was largely one of fact; and the testimony pro and con on this point was not without conflict. We think submission to the jury of the matter of the applicability of the statute was not error."); John Norton Farms, Inc. v. Todagco, 124 Cal. App. 3d 149, 169-70 (1981) (while ultimate question of liability under statute regarding off-label uses of poison was technically a question of law, all of the findings that would dictate that decision – whether label was accurate and sufficient, whether product was used appropriately, whether misuse was cause of damage – were questions of fact for the jury); see also Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition of Life Activists, 290 F.3d 1058, 1068-69 (9th Cir. 2002) (jury to consider whether statement was genuine "threat" because issues presenting "widely varying fact patterns [] should be left to the trier of fact").

Finally, Mattel has called the MGA Parties' instruction "argumentative," "replete with legalese," and "confusing" without pointing to specific passages.  Such a general objection renders a meaningful response impossible.  As Mattel offers no specific language, nor proposes a counter instruction of its own, Mattel's objection should be overruled.

## INTENTIONAL INTERFERENCE WITH CONTRACT CLAIM

Mattel has asserted a claim for intentional interference with contract against MGA and Isaac Larian.

I will now instruct you regarding the law as to this claim.

### -REVISED-

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS — ELEMENTS

Mattel claims that defendants Isaac Larian and MGA Entertainment Inc. intentionally interfered with a contract between Mattel and Carter Bryant.

Mattel's claim is only based on the agreement between Carter Bryant and Mattel in which Mattel entrusted Bryant with confidential information and Bryant agreed to keep that information confidential.  You should assume that there was an agreement between Mattel and Bryant but it is up to you do decide what that agreement means.

Mattel's claim is <u>not</u> based on, and you should <u>not</u> consider, whether Mattel has a right to or owns BRATZ.

To establish this claim, Mattel must prove all of the following:

1. That there was a valid and enforceable contract between Mattel and Carter Bryant in which Mattel entrusted Bryant with confidential information and Bryant agreed to keep it confidential (For purposes of this trial, you are to assume that there was a valid and enforceable contract);

125

2.  That Larian and MGA actually knew of the contract and its terms;

3.  That Larian and MGA intended to disrupt the performance of Bryant's contract with Mattel;

4.  That Larian and MGA engaged in wrongful conduct independent of "interfering" with Bryant's contract with Mattel through aiding and abetting Bryant in a breach of the duties he owed Mattel;

5.  That Larian and MGA's conduct prevented performance of Bryant's contract;

6.  That Mattel was harmed; and

7.  That Larian and MGA's conduct was a substantial factor in causing Mattel's harm.

**Authority:**  CACI Nos. 2201, 2202 & 2203 (2008) (as modified).

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Intentional Interference with Contractual Relations—Elements on the following grounds:

1.      This proposed instruction is misleading and prejudicial to Mattel to the extent it erroneously informs the jury that Mattel's claim for intentional interference with contractual relations is based only on Bryant's agreement with Mattel to preserve confidential information.  Mattel's claim is not so limited – Mattel is entitled to recover all damages caused by defendants' intentional interference with its contracts with Bryant.  The Court's prior ruling expressly recognized that this claim may be based on "MGA's acts that may be found to have aided and abetted the breach or induced the breach of Bryant's fiduciary duty."  April 25, 2008 Order, at 2.  Bratz works created by Bryant are relevant to this claim to the extent Mattel proves that defendants assisted Bryant in breaching duties he owed to Mattel in connection with those works.  Such issues are separate from Mattel's copyright infringement claim, which will be adjudicated in Phase 1B.

2.      This proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court already has found that a valid contract existed between Bryant and Mattel and that Mattel suffered resulting harm.  *See* April 25, 2008 Order, at 6 (finding that the first element [a valid contract] and fifth element [resulting damage] of Mattel's claim are met).  All that is left for the jury to resolve is whether MGA or Mr. Larian knew about the contract or contracts and, subject to further rulings of the Court, whether their conduct prevented performance or made performance more difficult.

3.      Moreover, this proposed instruction purports to add an additional erroneous element to a claim for intentional interference with contractual relations—"wrongful conduct independent of 'interfering'"—which, as recognized by the Court, is not an element of such a claim.  *See* April 25, 2008 Order, at 6; CACI No. 2201.  (This additional element is required only for a claim of intentional interference with prospective economic

127

1  relations, which is not Mattel's claim here.  *See* CACI No. 2202.)  Accordingly, this
2  proposed instruction is misleading and improper.

3      4.    Defendants' proposed instruction deviates from the model instruction found in
4  CACI and misstates the law as to these remaining points.  Under California law, Mattel
5  does not need to prove that MGA and/or Isaac Larian "knew of the contract and its terms,"
6  as defendants state in this proposed instruction— only that defendants "knew of the
7  contract."  *See* CACI No. 2201; *Sebastian Int'l Inc. v. Russolillo*, 162 F. Supp. 2d 1198,
8  1203 - 04 (C.D. Cal. 2001) (knowledge of specific terms not required; not even knowledge
9  of the identity of the contracting parties is required).  Defendants cite CACI No. 2202 as
10 authority for this proposed instruction, but that model instruction relates only to intentional
11 interference with prospective economic relations, a claim not being asserted here.

12     5.    Mr. Larian's and MGA's conduct need not have "prevented performance of
13 the contracts," as defendants' proposed instruction states.  As set forth in Mattel's proposed
14 jury instruction (which incorporates CACI No. 2201), this element is satisfied if
15 defendants' conduct "made performance more expensive or difficult."  *See* CACI No.
16 2201.

17     6.    This proposed instruction is confusing to the extent it tells the jury to
18 "assume" there was an agreement between Mattel and Bryant but that it is up to them to
19 "decide what that agreement means."  The instruction is likely perplexing in telling that
20 jury that it should not consider whether Mattel owns Bratz.  The jury clearly may consider
21 that in deciding whether MGA encouraged Bryant to share Mattel's confidential
22 information with MGA.  Hence, this proposed instruction is erroneous.

23

24

25

26

27

28

1 **MGA Parties' Response**

2

3  To begin with, Mattel mischaracterizes the Court's rulings on its intentional interference

4  claim.    Mattel had not moved for summary judgment on its claim for intentional

5  interference with contract.  The Court is explicit that it is only ruling on the MGA Parties'

6  motion for partial summary judgment (see April 25, 2008 Order at 6) and recites those

7  elements that the were undisputed *for purposes of summary judgment* (id. at 6-7).  This

8  recitation, however, was not a holding for Mattel as a matter of law, because Mattel had

9  not even made a motion on this claim.  Rather, the Court's ruling was only to grant the

10 MGA Parties' motion on this claim to the extent it was "based on Mattel's rights to Bratz."

11 April 25, 2008 Order at 2; Final Pre-Trial Conference Order at 5.

12

13 Moreover, as Mattel notes, this claim is now limited to Mattel's assertion that Bryant

14 breached a fiduciary duty.  The Court held that Bryant owed Mattel a fiduciary duty "by

15 virtue of the language set forth in ¶ 1(a) of the Inventions Agreement."   April 25, 2008

16 Order at 5.  However, the Court's ruling on that duty was limited to Bryant's duty vis-à-vis

17 Mattel's confidential information.  May 21, 2008 Order at 4.  Thus, the jurors must still

18 consider both the proper scope of that duty and then determine whether it applies.

19 Likewise, to determine the harm attributable to a breach of fiduciary duty, the jury must

20 first be instructed on and assess the nature of the nature of duty and the breach.

21

22 Furthermore, the Court has granted summary judgment in favor of the MGA Parties on

23 this claim, and the instruction accurately reflects that it may **not** be "based on Mattel's

24 rights to Bratz."  Final Pre-Trial Conference Order at 5. The instruction further accurately

25 reflects the Court's findings that a valid contract exists, and the Court's decision that the

26 breach and thus interpretation of the scope of that contract is a jury question; therefore,

27 Mattel's objection that the " proposed instruction is confusing to the extent it tells the jury

28

1  to 'assume' there was an agreement between Mattel and Bryant but that it is up to them to

2  'decide what that agreement means'" is meritless.

3

4  Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.

5  In proposing jury instructions, the parties are permitted to modify the language of any

6  model instruction to make it less confusing or more appropriate in the context of a

7  particular case.  See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997)

8  (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The

9  texts of 'standard' jury instructions are not debated and hammered out by legislators, but

10 by ad hoc committees of lawyers and judges.  Jury instructions do not come down from

11 any mountain or rise up from any sea.  Their precise wording, although extremely useful,

12 is not blessed with any special precedential or binding authority.  This description does not

13 denigrate their value, it simply places them in the niche where they belong.").  Indeed,

14 modification is sometimes necessary to make an instruction accurate and complete.  See,

15 e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification

16 of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the

17 district court merely read the model jury instruction, it would have committed plain error,

18 since that instruction makes no reference whatsoever to knowledge or intent.").

19

20 The MGA Parties modified the language of CACI No. 2201 to assist the jury in

21 understanding that a defendant need not know only of the contract, but of the effect of the

22 contract.  Mattel's authority, Sebastian Int'l Inc. v. Russolillo, 162 F. Supp. 2d 1198, 1203-

23 04 (C.D. Cal. 2001), involved a pleading standard on a motion to dismiss, which required

24 that defendants "ha[ve] knowledge of the class of contractual relations potentially

25 disrupted by their actions."  Id. at 1204 (emphasis added).

26

27 Mattel's objection ignores that a claim for intentional interference with an at-will contract,

28 such as the contract at issue here, requires Mattel to prove that Larian and MGA engaged

130

1  in wrongful conduct <u>independent</u> of "interfering" with Bryant's contracts with Mattel. <u>See</u>

2  <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140, 1152-53 (2004) ("[T]o recover for a defendant's

3  interference with an at-will employment relation, a plaintiff must plead and prove that the

4  defendant engaged in an independently wrongful act – i.e., an act 'proscribed by some

5  constitutional, statutory, regulatory, common law, or other determinable legal standard' --

6  that induced an at-will employee to leave the plaintiff.") (citations omitted).

7

8  Mattel's objection that CACI No. 2202 does not apply because it deals with intentional

9  interference with prospective economic relations is also incorrect. The court in <u>Reeves v.</u>

10 <u>Hanlon</u> <u>expressly</u> incorporated the "wrongful conduct" element from the claim of

11 intentional interference with economic relation in claims for intentional interference with

12 <u>at-will employment agreements</u>. <u>See</u> 33 Cal. 4th at 1151-52 ("[T]he economic relationship

13 between parties to contracts that are terminable at will is distinguishable from the

14 relationship between parties to other legally binding contracts … an interference with an

15 at-will contract properly is viewed as an interference with a prospective economic

16 advantage, a tort that similarly compensates for the loss of an advantageous economic

17 relationship but does not require the existence of a legally binding contract."); <u>see also</u>

18 <u>Kasparian v. County of Los Angeles</u>, 38 Cal. App. 4th 242, 260 (1995) (interference with

19 contract has been referred to as a species of the broader tort of interference with

20 prospective economic relations); <u>accord</u> <u>Della Penna v. Toyota Motor Sales, U.S.A., Inc.</u>,

21 11 Cal. 4th 376, 381-91 (1995).

22

23

24

25

26

27

28

1  **INTENTIONAL    INTERFERENCE    WITH    CONTRACTUAL    RELATIONS—**
2  **INTENT**

3

4  To prove that MGA and Larian intended to interfere with Bryant's contract with Mattel,
5  Mattel must show that MGA and Larian actually knew that a breach of Bryant's contract
6  was certain or substantially certain to occur as a result of their actions.  There is no intent
7  to interfere where the defendant knows or believes its agreement with a third party will not
8  infringe the rights of the plaintiff.

9

10  **Authority:**    CACI Nos. 2201, 2202 & 2203 (2008); Tuchscher Dev. Enters., Inc. v. San
11  Diego Unified Port Dist., 106 Cal. App. 4th 1219, 1239 (2003) (intent); 1-800 Contacts,
12  Inc. v. Steinberg, 107 Cal. App. 4th 568 (2003) (intent).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Intentional Interference with Contractual Relations—Intent on the grounds that:

1.     This proposed instruction deviates from the model instruction found in CACI. The model instruction simply informs the jury what it may consider in determining whether defendants acted intentionally.  Defendants' version is argumentative and biased, framed in terms of what Mattel must "prove" and "show."

2.     This proposed instruction is misleading and prejudicial to the extent it informs the jury that defendants must have known that "a breach of Bryant's contract" was substantially certain to occur when, under California law, Mattel need only show that defendants knew that a disruption in the performance of a contract or contracts (and not necessarily a breach) was substantially certain to result.  *See* CACI Nos. 2201; 2203.

3.     Defendants' proposed instruction ignores the established rule that knowledge or intent can be established by inference as well as by direct proof.  Mattel's proposed instruction accurately states the law in this regard.  *See* Mattel's Proposed Jury Instruction re Intent or Knowledge.

4.     This proposed instruction also invents an exception not supported by any of the authorities cited, erroneously indicating that there is no intent where a defendant knows or believes – presumably, even unreasonably, e.g., as a result of willful blindness – that its agreement will not infringe the rights of another.  There is no reason to give the jury such an instruction.

5.     This proposed instruction neglects to inform the jury that in deciding whether defendants acted knowingly or intentionally, it may consider that a party's willful blindness can be equivalent to knowledge.  *See* Mattel's Proposed Jury Instruction re Willful Blindness.

---

133

**Authority:**  CACI No. 2203; S*eaman's Direct Buying Serv., Inc. v. Standard Oil Co*, 36 Cal. 3d 752, 767 (1984), overruled on other grounds, *Freeman & Mills, Inc. v. Belcher Oil Co*., 11 Cal. 4th 85, 98 (1995) ("Intent, of course, may be established by inference as well as by direct proof.  Thus, the trial court could properly have instructed the jury that it might infer culpable intent from conduct 'substantially certain' to interfere with the contract."); *Sony Computer Entm't Am. Inc v. Gamemasters*, 87 F. Supp. 976, 985 (N.D. Cal. 1999) (willful blindness is no defense to a charge of knowing and intentional wrongdoing); *see also Borges v. Home Ins. Co.*, 239 Cal. App. 2d 275, 282-83 (1966) (knowledge of a third party's contractual obligations can be inferred from circumstantial evidence, including intent to conceal or avoid actual knowledge of agreement).  *Tuscher Dev. Eng'rs. Inc. v. San Diego Unified Port Dist*, 106 Cal. App. 4th 1219, 1239 (2003), cited by defendants for the proposition "intent," establishes no different rule.  At the relevant page, the Court says the following:  "The elements of a cause of action for intentional interference with contract are:  (1) a valid contract between plaintiff and a third party; (2) defendants' knowledge of the contract; (3) defendants' intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.  ( *Quelimane Co. v. Stewart Title Guar. Co.* (1998) 19 Cal. 4th 26, 55; *Applied Equip. Corp. v. Litton Saudi Arabia Ltd*. (1994) 7 Cal. 4th 503, 514, fn. 5; *Limandri v. Judkins*, 52 Cal. App. 4th 326, 339 (1997).  The required intent is shown if the defendant "knows that the interference is certain or substantially certain to occur as a result of his action.  The rule applies, in other words, to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action." *Quelimane*, 19 Cal. 4th at 56.  Whether the interference was justified as merely incidental to the defendant's legitimate pursuit of his own interests is a question of fact.  *Id.*  Contrary to respondents' argument, "[w]rongfulness independent of the inducement to breach the contract is not an element of the tort of intentional interference with existing contractual relations . . . ." ( *Id.* at 55, italics omitted.)."  Nor does *1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568

134

1   (2003), the only other authority cited by defendants, establish an exception to the intent

2   rule as properly stated in Mattel's proposed instruction.  In that case, involving

3   constitutional rights of association and assembly, the court's discussion of "intent" was

4   limited to the following:  "Plaintiff argues that the trial court improperly required a

5   showing of "specific intent" by Steinberg to induce Conder to breach.  Rather, plaintiff

6   avers, the necessary intent comprised knowledge that a breach was substantially likely to

7   occur as a result of Steinberg's actions.  Although this restatement of the intent element is

8   generally accurate, it does not dictate a different result…"

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MGA Parties' Response**

While Mattel is correct that the fourth element of a claim for intentional interference with contractual relations is sometimes phrased "breach or disruption," it is quite apparent that Mattel has not brought this claim on the basis of a purported disruption, but rather a purported actual breach.  Indeed, in denying MGA motion's for summary judgment on this claim, the Court noted that "as set forth above, Mattel has also raised triable issues of fact regarding its claim for breach of contract, the fourth element."  May 21, 2008 Order at 9. Put simply, Mattel is not contending Bryant took a leave of absence – he left.  The relationship was not "disrupted," it was terminated.  Thus, Mattel will not succeed in its claim unless it shows a breach. See Summit Mach. Tool Mfg. Corp. v. Victor CNC Systems, Inc., 7 F.3d 1434, 1442 (9th Cir. 1993) ("To recover for intentional interference with a contractual relationship, Summit must show '(1) that [it] had a valid and existing contract, (2) that [Victor] had knowledge of the contract and intended to induce its breach, (3) that the contract was in fact breached by [ZMTW], (4) that the breach was caused by [Victor's] unjustified and wrongful conduct, and (5) that [Summit] has suffered damage.'") (emphasis added); see also Anlin Industries, Inc. v. Burgess, 2006 WL 2308476, at *3 (E.D. Cal. Aug. 9, 2006) ("To state a cause of action for interference with contract under California law, a plaintiff must allege (1) a valid contract between the plaintiff and a third party; (2) that the defendant had knowledge of this contract and intended to induce its breach; (3) that the contract was breached; (4) that the breach was caused by the defendant's wrongful and unjustified conduct; and (5) that the plaintiff suffered damage.") (emphasis added); Farmers Ins. Exchange v. State of California, 175 Cal. App. 3d 494, 506 (1985) ("The elements of this tort [for intentional interference with contract] include: 1) The existence of a valid contract; 2) knowledge of the contract on the part of defendant and intent to induce its breach; 3) breach of the contract by the third party; 4) proximate cause; 5) damages.") (emphasis added).

1   Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.
2   In proposing jury instructions, the parties are permitted to modify the language of any
3   model instruction to make it less confusing or more appropriate in the context of a
4   particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997)
5   (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The
6   texts of 'standard' jury instructions are not debated and hammered out by legislators, but
7   by ad hoc committees of lawyers and judges.  Jury instructions do not come down from
8   any mountain or rise up from any sea.  Their precise wording, although extremely useful,
9   is not blessed with any special precedential or binding authority.  This description does not
10  denigrate their value, it simply places them in the niche where they belong.").   Indeed,
11  modification is sometimes necessary to make an instruction accurate and complete.  See,
12  e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification
13  of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the
14  district court merely read the model jury instruction, it would have committed plain error,
15  since that instruction makes no reference whatsoever to knowledge or intent.").

16

17  Mattel's objection ignores that there can be no intent to interfere where the defendant
18  knows or believes its agreement with a third party will not infringe the rights of the
19  plaintiff. See 1-800 Contacts, Inc. v. Steinberg, 107 Cal. App. 4th 568, 586 (2003).  Indeed,
20  the very quotation Mattel cites supports the instruction:  "The required intent is shown if
21  the defendant knows that the interference is certain or substantially certain to occur as a
22  result of his action."  Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist., 106 Cal.
23  App. 4th 1219, 1239 (2003) (emphasis added, internal quotations and citations omitted).
24  The court does not say "knows or should have known."   Notably, Mattel's reliance on
25  Sony Computer Entm't Am., Inc. v. Gamemasters, 87 F. Supp. 2d 976, 985 (N.D. Cal.
26  1999), is irrelevant here, given that Sony Computer dealt with the intent element required
27  to prove a claim for trademark counterfeiting under federal law, which has nothing to do
28  with a claim for intentional interference with contract asserted under California law.

1

2  Similarly, Mattel's authority regarding "willful blindness" is not supported by California

3  law.  Mattel's only authority deals with the intent element required to prove a claim for

4  trademark counterfeiting under federal law, which has nothing to do with a claim for

5  intentional interference with contract asserted under California law.  See Sony Computer

6  Entm't Am., Inc., 87 F. Supp. 2d at 985.

7

8  Finally, the preceding objection is improper to the extent it implies that evidence of

9  awareness of the contract or even the identity of the contracting parties could give rise to

10  inference of the required element of knowledge or intent, as such evidence "does not

11  establish a genuine issue of material fact as to whether [defendant] caused [employee] to

12  terminate its relationship with [plaintiff] or intended to bring about that result." Family

13  Home & Fin. Ctr., Inc. v. Federal Home Loan Mortg. Corp., 461 F. Supp. 2d 1188, 1194-

14  95 (C.D. Cal. 2006) (granting summary judgment).

15

16  Although Mattel cites to its proposed objections entitled "re Intent or Knowledge" and "re

17  Willful Blindness", the Court should reject these instructions proposed by Mattel for the

18  reasons stated in the MGA Parties' objections thereto.

19

20

21

22

23

24

25

26

27

28

# INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS — INDUCEMENT

A defendant is not liable for intentional interference with contract where the breaching party is the one who initiates contact with the defendant, even if the defendant knows the breaching party has a contract with someone else and even if the defendant suspects that entering a contract with the breaching party may cause the breaching party to breach his or her obligation to another.  Here's an example. Bill is under contract to sell certain goods to Chad.  Bill offers to sell the same goods to Adam, who knows Bill has a contract with Chad.  Even if Adam accepts Bill's offer and buys the goods, Adam has not induced Bill's breach and is not liable for intentional interference with the contract between Bill and Chad.

**Authority:** Restatement (Second) of Torts § 766, cmt. n (2007) (inducement); DeVoto v. Pac. Fid. Life Ins.Co., 618 F.2d 1340, 1348 (9th Cir. 1980) (inducement); Bauer v. Interpublic Group of Cos., 255 F. Supp. 2d 1086, 1093, 1095 (N.D. Cal. 2003) (inducement); Dryden v. Tri-Valley Growers, 65 Cal. App. 3d 990, 996 (1977) (inducement).

1 **Mattel's Objections**

2

3    Mattel objects to defendants' proposed instruction regarding Intentional Interference

4 With Contractual Relations—Inducement on the grounds that:

5    1.    This proposed instruction misstates the law and is misleading.  Notably, there

6 is no such instruction found in CACI.  Defendants' instruction states that it is a complete

7 defense to a claim for intentional interference with contractual relations if the breaching

8 party is "the one who initiates contact with the defendant."  That statement is erroneous as

9 a matter of law.  There is no authority for the proposition that mere initiation, without

10 more, is a defense to intentional interference.  As set forth in the model instruction

11 regarding the elements of such a claim (as Mattel has proposed), the issue is whether

12 defendants, once contact has been initiated by either party, intend to disrupt the

13 performance of the contract with the plaintiff.  *See* CACI No. 2201.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | **MGA Parties' Response**

2

3 | In proposing jury instructions, the parties are not limited to the subject matter covered by

4 | the Ninth Circuit Model Instructions or any other set of models. <u>See, e.g.</u>, <u>Jones v.</u>

5 | <u>Hollenback</u>, 2007 WL 3335012, at *11 (E.D. Cal. Nov. 9, 2007) ("The fact that Jury

6 | Instruction No. 7 is not a Ninth Circuit Model Jury Instruction, but rather California

7 | pattern instruction, BAJI 2.22, is irrelevant.  The instruction correctly and clearly states the

8 | law.  There is nothing confusing about the purpose and intent of this instruction.").

9

10 | Mattel objects to this instruction because it is unfavorable, not because it misstates the law.

11 | Indeed, the Restatement (Second) of Torts § 766, comment n, states that "[o]ne does not

12 | induce another to commit a breach of contract with a third person under the rule stated in

13 | this Section when he merely enters into an agreement with the other with knowledge that

14 | the other cannot perform both it and his contract with the third person."  Furthermore, the

15 | MGA Parties have not couched "lack of inducement" as an affirmative defense, as Mattel

16 | states; rather, "inducement" is a necessary element of the claim, for which Mattel bears the

17 | burden.

18

19

20

21

22

23

24

25

26

27

28

1   **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS —**
2   **HIRING OF AT WILL EMPLOYEES OF COMPETITORS**
3
4   Bryant worked **"at will"** for Mattel, meaning that he could leave Mattel at any time, and he
5   could be let go by Mattel for any reason or no reason.  Thus, Bryant was entitled to look
6   for another job while still employed at Mattel, and to leave his employment with Mattel to
7   work with a competitor or to compete himself against Mattel.
8
9   It is not wrongful for a company to solicit or hire the at-will employee of its competitor,
10  because California law protects employees and their pursuit of any employment or
11  enterprise of their choice as more important than the competitive business interests of the
12  employers.  Likewise, competitor employers have the right to offer more pay or better
13  terms to another's employee, so long as the employee is free to leave.
14
15  **Authority:**  See also Reeves v. Hanlon, 33 Cal. 4th 1140, 1151 (2004) (California "public
16  policy generally supports a competitor's right to offer more pay or better terms to
17  another's employee, so long as the employee is free to leave. … [I]f the law were to the
18  contrary, the result 'would be intolerable, both to such employers as could use the
19  employe[e] more effectively and to such employe[e]s as might receive added pay. It would
20  put an end to any kind of competition.'") (citation omitted); Metro Traffic Control, Inc. v.
21  Shadow Traffic Network, 22 Cal. App. 4th 853, 859 (1994) ("California courts have
22  consistently declared  … an expression of public policy to ensure that every citizen shall
23  retain the right to pursue any lawful employment and enterprise of their choice"); Diodes,
24  Inc. v. Franzen, 260 Cal. App. 2d 244, 255 (1968) (California public policy recognizes
25  "[t]he interests of the employee in his own mobility and betterment are deemed paramount
26  to the competitive business interests of the employers"); see also Hollingsworth Solderless
27  Terminal Co. v. Turley,  622 F.2d 1324, 1337 (9th Cir. 1980) ("[m]ere solicitation of an
28  employee, under no contract of employment, to leave and associate with a competing firm

is not illegal"); <u>Interloc Solutions, Inc. v. Tech. Assoc. Int'l. Corp.</u>, No. CV071534 LEWGGHX, 2007 WL 2429715, at *2 (E.D. Cal. Aug. 24, 2007) (citing <u>Reeves</u> for the proposition that "employees are not precluded from seeking new employment on their own initiative"); <u>Posdata Co. Ltd. v. Kim</u>, No. C-07-02054 RMW, 2007 WL 1848661, *7 (N.D. Cal. June 27, 2007); <u>Continental Car-Na-Var Corp. v. Moseley</u>, 24 Cal. 2d 104, 110 (1944) ("[a] former employee has the right to engage in a competitive business for himself and to enter into competition with his former employer, even for the business of ... his former employer, provided such competition is fairly and legally conducted."); <u>VL Sys., Inc. v. Unisen, Inc.</u>, 152 Cal. App. 4th 708, 713, 715 (2007) (quoting <u>Diodes</u> and finding no unlawful solicitation of employee where the employee initiated the new agreement with the defendant and "chose to seek the job with" the defendant).

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Intentional Interference With Contractual Relations—Hiring of At Will Employees of Competitors on the following grounds:

1.      This proposed instruction is irrelevant to any of the issues in this case. Mattel's claim for intentional interference with contractual relations is based on defendants' interference with Carter Bryant's performance of obligations under the Inventions Agreement and the Conflict of Interest Questionnaire.  Mattel is not claiming that defendants interfered with Mr. Bryant's "at will" employment agreement with Mattel. Accordingly, this proposed instruction is unnecessary and confusing.

2.      Moreover, the Court has already held that the Inventions Agreement is a valid and enforceable contract.  *See* April 25, 2008 Order, at 5; Final Pre-Trial Conference Order, at 4.  Accordingly, Bryant was bound to live up to his obligations pursuant to the Inventions Agreement.  It is irrelevant what rights an "at will employee" might have.

**MGA Parties' Response**

Mattel's objection seeks to avoid the more stringent test for intentional interference with at-will employment contracts.  As discussed above, claims for intentional interference with an <u>at-will</u> contract, such as the contract at issue here, require Mattel to prove that Larian and MGA engaged in wrongful conduct <u>independent</u> of "interfering" with Bryant's contracts with Mattel.  See <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140, 1152-53 (2004) ("[T]o recover for a defendant's interference with an at-will employment relation, a plaintiff must plead and prove that the defendant engaged in an independently wrongful act -- i.e., an act 'proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard' – that induced an at-will employee to leave the plaintiff.") (citations omitted).  Further, the jury must be instructed that Bryant was entitled under California law to seek new employment, and MGA was entitled to hire him so that there is no risk that jury base any finding on that lawful conduct.  The fact that the Inventions Agreement in itself was valid and enforceable does not change the fact that Bryant was an at-will employee.

**"BUT FOR" CAUSATION**

If the alleged loss or harm that Mattel suffered would have occurred even in the absence of the alleged wrongdoing by the defendants, then the defendants' conduct cannot be considered a substantial factor in bringing about Mattel's alleged loss or harm and you must find for the defendants.

If you determine that Mattel has suffered injury or harm, you may only compensate Mattel for the harm, if any, which was caused by the unlawful acts of the defendants.  To the extent that you find that Mattel would have suffered harm or injury even without any action from the defendants, due to Mattel's own business decisions, you may not award any damages that resulted from those business decisions.

**Authority:**  Matthew Bender, <u>Cal. Forms Jury Inst.</u>, Ch. 1-3E § 300E.04 (as modified).

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding "But For" Causation on the following grounds:

1.      This proposed instruction is unnecessary and confusing.  The instruction states that in order for a factor to be a "substantial cause," the jury must find that the plaintiffs would not have suffered harm in the absence of the alleged wrongdoing.  This adds nothing to the definition of causation set forth in the previous proposed instruction regarding the Substantial Factor Test.

2.      The second paragraph of the proposed instruction confuses the appropriate measure of *damages* with the question of causation.  Defendants ask the Court to instruct the jury that "to the extent that you find that Mattel would have suffered harm or injury even without any action from defendants, due to Mattel's own business decisions, you may not award any damages that resulted from those business decisions."  As an initial matter, this statement contradicts the law as set forth in the proposed instruction regarding the Substantial Factor Test.  It is also unnecessary and confusing because Phase 1A of this trial relates to liability only, and not the calculation of damages.

1 **MGA Parties' Response**

2

3 Mattel's claim that this instruction adds nothing to the Substantial Factor Test instruction

4 is incorrect. While the Substantial Factor Test instruction describes substantial factor

5 causation adequately, it does not include language to subsume the "but for" test. <u>Compare</u>

6 Proposed Substantial Factor Test Instruction ("The law defines cause in its own particular

7 way. A cause of injury, damage, loss or harm is something that is a substantial factor in

8 bringing about an injury, damage, loss or harm. A 'substantial factor' is something which

9 is more than a slight, trivial, negligible, or theoretical factor in producing a particular

10 result."), with CACI No. 430 ("A substantial factor in causing harm is a factor that a

11 reasonable person would consider to have contributed to the harm. It must be more than a

12 remote or trivial factor. It does not have to be the only cause of the harm. [Conduct is not

13 a substantial factor in causing harm if the same harm would have occurred without that

14 conduct.]"). According to the Directions for Use, the first sentence of CACI No. 430, and

15 the optional last sentence, are intended to refer to the "but for" causation test. The

16 Proposed Substantial Factor Test Instruction, while adequate as far as it goes, fails to

17 include the "but for" concept. Thus, an additional "but for" instruction is appropriate.

18

19 Failure to adequately instruct the jury on "but for" causation can be prejudicial error. <u>See,</u>

20 <u>e.g.</u>, <u>Viner v. Sweet</u>, 117 Cal. App. 4th 1218, 1224-25 (2004) (in case of legal malpractice

21 involving negligent negotiation of a deal, finding that trial court's use of substantial factor

22 instruction, instead of but for instruction, was not harmless error, and reversing jury

23 verdict on five of seven counts accordingly).

24

25

26

27

28

## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIM

Mattel has asserted a claim for aiding and abetting breach of fiduciary duty against MGA and Isaac Larian.

I will now instruct you regarding the law as to this claim.

### -REVISED-
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

To recover on its claim for aiding and abetting, Mattel must first show that there has been a breach of fiduciary duty.  In order to show that there has been a breach upon which Mattel can base a claim, Mattel has the burden of proving by a preponderance of the evidence all the facts necessary to establish:

  1.  Bryant owed a fiduciary duty to Mattel;

  2.  Bryant breached a fiduciary duty he owed to Mattel;

  3.  Mattel was harmed; and

  4.  Bryant's conduct was a substantial factor in causing Mattel's harm;

You should assume that Bryant owed a fiduciary duty to Mattel.  This duty is based on the agreement between Bryant and Mattel in which Mattel entrusted Bryant with confidential information need to perform his job and Bryant agreed to keep the information Mattel entrusted to him confidential.  Mattel contends that Bryant's fiduciary duty included additional duties but you should not assume that to be true.  Instead, Mattel bore the

149

burden to prove through the evidence that Bryant knowingly and voluntarily agreed to take on duties beyond maintaining in confidence information that Mattel entrusted to him.  It is up to you to decide the scope of Bryant's fiduciary duty to Mattel, whether he breached his fiduciary duty, whether Mattel was harmed by that breach, and whether Bryant's conduct was a substantial factor in that harm.  In a few moments I will instruct you on what it means to have a fiduciary duty and what is required to show a breach of a fiduciary duty.

If Mattel establishes a breach upon which it may base its claim, then Mattel has the burden of proving by a preponderance of the evidence all the facts necessary to establish:

1.     MGA and Larian substantially assisted or encouraged Bryant in accomplishing the breach; and

2.     MGA and Larian had actual knowledge of the specific wrong they substantially assisted.

To prove actual knowledge of the underlying breach of duty, Mattel must show that MGA and Larian not only knew of Bryant's breach but also that MGA and Larian made a conscious decision to participate in wrongful activity designed to assist Bryant in his breaches.

Mattel also has to show a substantial causal connection between MGA and Larian's conduct and the harm to Mattel.  The "substantial assistance" requirement is inversely related to the knowledge factor, which means that if Mattel has only offered a small amount of evidence of MGA and Larian's "knowledge" of Bryant's alleged breach, Mattel has to show that MGA and Larian rendered a high degree of substantial assistance in Bryant's breach in order to show that MGA and Larian are liable for aiding and abetting Bryant's breach.

150

1

2 **Authority:** <u>MJT Sec., LLC v. Toronto-Dominion Bank</u>, No. C03-3815 CW, 2007 WL

3 1725421, at **7-8  (N.D.Cal. June 14, 2007) (elements); <u>Neilson v. Union Bank, N.A.</u>,

4 290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003) (intent); <u>Resolution Trust Corp. v. Rowe</u>,

5 No. C90-20114 BAC, 1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993) (inverse

6 relationship between demonstration of knowledge and substantial assistance); <u>Mendelsohn</u>

7 <u>v. Capital Underwriters, Inc.</u>,  490 F. Supp. 1069, 1084 (N.D. Cal. 1979) (causation);

8 <u>Sarkes Tarzian, Inc. v. Audio Devices, Inc.</u>, 166 F. Supp. 250 (S.D. Cal. 1958) (competitor

9 employer did not conspire to breach duty to former employer where competitor paid at-

10 will employee an advance and employee did not disclose intention to work for competitor),

11 <u>aff'd</u>, 283 F.2d 695 (9th Cir. 1960); <u>Gerard v. Ross</u>, 204 Cal. App. 3d 968, 983 (1988)

12 (intent); <u>see also</u> <u>Richard B. LeVine, Inc. v. Higashi</u>, 131 Cal. App. 4th 566, 574 (2005);

13 <u>Casey v. U.S. Bank Nat'l Ass'n</u>, 127 Cal. App. 4th 1138, 1144 (2005); <u>Fiol v. Doellstedt</u>,

14 50 Cal. App. 4th 1318, 1325-26 (1996); <u>Saunders v. Superior Court</u> 27 Cal. App. 4th 832,

15 846 (1994); Restatement (Second) of Torts § 876; CACI Nos. 4101, 4102 (2008) (as

16 modified); <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal. 2d 327 (1966); <u>GAB Bus. Servs., Inc. v.</u>

17 <u>Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th 409 (2000), <u>overruled on other</u>

18 <u>grounds by</u>, <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140 (2004); <u>City of Atascadero v. Merrill</u>

19 <u>Lynch, Pierce, Fenner & Smith, Inc.</u>, 68 Cal. App. 4th 445, 483 (1998); <u>Pierce v. Lyman</u>, 1

20 Cal. App. 4th 1093, 1101-02 (1991) (superseded by statute on other grounds).

21

22

23

24

25

26

27

28

Objections and Responses Re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Aiding and Abetting Breach of Fiduciary Duty on the following grounds:

1.    This proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court has already found as a matter of law that Bryant owed a fiduciary duty to Mattel. Although the full scope of Bryant's fiduciary duties and the breach of those duties is for the jury, defendants' assertion that Mattel bears the burden of proving that Bryant "knowingly and voluntarily agreed to take on duties beyond maintaining" Mattel's confidential information is erroneous.  The law is clear that fiduciary relationships may be created by agreement and/or by confidential relationship, not solely by express assumptions of a "fiduciary duty."

2.    This proposed instruction is also contrary to the Court's April 25, 2008 Order to the extent it purports to inform the jury that preparations to compete are not a breach of duty.  The Court has already ruled that Bryant cannot defend his actions as "lawful preparations to compete" because he "directly competed with Mattel by entering into a contract with its competitor to produce a competing product while still employed by Mattel." April 25, 2008 Order, at 5.  Accordingly, defendants' proposed instruction, which erroneously indicates that the jury could find otherwise, is improper and misleading.

3.    This proposed instruction misstates the law both for aiding and abetting and for preparations to compete, and fails to mention the role of financial gain and self-interested profit in determining knowledge and substantial assistance.

4.    Defendants' proposed instruction adds an element which is not an element of the cause of action for aiding and abetting breach of fiduciary duty under California law. As Mattel's proposed instruction properly states, there are three elements necessary to establish such a claim:  that Carter Bryant's conduct constituted a breach of fiduciary duty; that MGA and/or Isaac Larian knew that Bryant's conduct constituted a breach of fiduciary duty; and that MGA and/or Mr. Larian gave substantial assistance or encouragement to

1  Mr. Bryant to breach his fiduciary duty.  Defendants' proposed instruction, which conflates

2  MGA and Mr. Larian, wrongly suggests that both must be found to have the requisite

3  knowledge and have provided the requisite assistance; even more seriously, it wrongly

4  states that MGA and Larian must have "had actual knowledge of the specific wrong they

5  substantially assisted," and goes on to explain that this means that MGA and Larian must

6  have "made a conscious decision to participate in wrongful activity designed to assist

7  Bryant in his breaches."  That is incorrect.  Aiding and abetting does not require a

8  defendant to agree to join the wrongful conduct in the way one joins a conspiracy.  Nor

9  does it require "actual knowledge of the specific wrong they substantially assisted."  It is

10  enough that there is knowledge of the acts giving rise to the breach.

11         5.      Contrary to this proposed instruction, it is not necessary that the activity done

12  by MGA and/or Mr. Larian be "wrongful activity" in order to constitute "substantial

13  assistance"; California courts have held that even "ordinary business transactions" can

14  satisfy the substantial assistance element.  Defendants also erroneously suggest that Mattel

15  must prove a "substantial causal connection" between the defendants' conduct and the

16  harm to Mattel.  This purported requirement is not supported by the law and is prejudicial

17  to Mattel.

18         6.      This proposed instruction again misstates the "preparation to compete"

19  doctrine, omitting the requirement that a fiduciary cannot put a competitor's interests ahead

20  of his own employer's, neglecting to include the disclosure requires for preparations to

21  compete, and suggesting, wrongly, an unlimited right to be paid by a new employer (as

22  opposed to the right, in limited circumstances, to be paid an advance) and continue to

23  receive salary and benefits and use office resources from his prior employer, even though

24  in most instances, such activity would constitute commercial bribery and would, in any

25  event, be subject to required disclosure.

26  7.      Defendants' proposed instruction fails to include the well-established principle of

27  California law that "financial gain and self-interested profit corroborate the elements of

28  aiding and abetting."  *Neilson v. Union Bank of Calif.*, 290 F. Supp. 2d 1101, 1127-28

1  (C.D. Cal. 2003).  If defendants reap the benefit of participating in a breach of fiduciary
2  duty, they cannot disclaim the burden of liability.

3       8.    Defendants' suggestions that the "substantial assistance" requirement is
4  inversely related to the knowledge factor is unsupported by fact and law, and inconsistent
5  with the above-stated rule.  No such instruction is appropriate or necessary on the facts of
6  this case.  The only authority cited by defendants for such an "inverse relationship" rule
7  (*Resolution Trust Corp. v. Rowe*, 1993 WL 183512 at *6 (N.D. Cal. Feb. 8, 1993)) relates
8  to the constitutional requirements of standing.

9       9.    This proposed instruction is argumentative and slanted toward the defense to
10  the extent it is stated in terms of Mattel's contentions and tells the jury it "should not
11  assume [Mattel's contentions] to be true."

12

13      **Authority:** *Neilson v. Union Bank of Calif.*, 290 F. Supp. 2d 1101, 1119 (C.D. Cal.
14  2003) (enough if there is knowledge of acts giving rise to breach); *Berg & Berg Enter.*
15  *LLC v. Sherwood Partners, Inc,* 131 Cal. App. 4th 802, 823 n. 10 (2005) (aiding and
16  abetting does not require that a defendant agree to join the wrongful conduct); *Heckman v.*
17  *Ahmanson*, 168 Cal. App. 3d 119, 127 (1985) (if defendant reaps the benefits of breach of
18  fiduciary duty he cannot disclaim the burden of liability); *Casey v. U.S. Bank Nat'l Assn.*,
19  127 Cal. App. 4th 1138, 1145 (2005) (ordinary business transactions by bank sufficient to
20  constitute substantial assistance); *Daniel Orifice Fitting Co*., 198 Cal. App. 2d 791, 800 -
21  01 (1962) (full disclosure required of acts taken in preparation for competition); *Sequoia*
22  *Vacuum Sys. v. Stransky,* 229 Cal App. 2d 281, 287 ((1964) (same).  Compare *Resolution*
23  *Trust Corp. v. Rowe*, 1993 WL 183512, at *6 (N.D. Cal. 1993) (dealing with payment of
24  "advance" to secure future employment of at-will employee).

25

26

27

28

**MGA Parties' Response**

Mattel's characterization of the Court's holding on Bryant's fiduciary duty is problematic. The Court held that Bryant owed Mattel a fiduciary duty "by virtue of the language set forth in ¶ 1(a) of the Inventions Agreement." April 25, 2008 Order at 5. However, the Court's ruling on that duty was limited to Bryant's duty vis-à-vis Mattel's confidential information. May 21, 2008 Order at 4. Thus, the jurors must still consider both the proper scope of that duty and then determine whether it applies. Likewise, to determine the harm attributable to a breach of fiduciary duty, the jury must first be instructed on the nature of that duty and the purported breach.

Mattel's objections are also not well-taken because, as applied to the existence of any fiduciary duty existing beyond that relating to Mattel's confidential information, Mattel must still show that a fiduciary relationship was created as a factual matter— and this requires a showing that Bryant "voluntarily" or "expressly" assumed a fiduciary duty. See City of Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 386 (2008) (confirming that there must be a factual showing from which a jury could find that a party knowingly undertook the obligations of a fiduciary, that is to act primarily for the benefit of the other party); see also City Solutions, Inc. v. Clear Channel Commc'n., Inc., 201 F. Supp. 2d 1048, 1050 (N.D. Cal. 2002); Kremen v. Cohen, 99 F. Supp. 2d 1168, 1175 (N.D. Cal. 2000); Comm. on Children's Tel., Inc. v. Gen. Foods Corp., 35 Cal. 3d 197, 222 (1983) (superseded by statute on other grounds); Vai v. Bank of America, 56 Cal. 2d 329, 338 (1961); Oakland Raiders v. Nat'l Football League, 131 Cal. App. 4th 621, 632-33 (2005); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 417 (2000), overruled on other grounds by Reeves v. Hanlon, 33 Cal. 4th 1140 (2004); Maglica v. Maglica, 66 Cal. App. 4th 442, 448 (1998); Lynch v. Cruttenden & Co., 18 Cal. App. 4th 802, 809 (1993); Worldvision Enters., Inc. v. Am. Broad. Cos., 142 Cal. App. 3d 589, 595 (1983). Mattel has made no such factual showing.

1  Mattel's objections to the MGA Parties' references to preparations to compete must be an
2  error, because the MGA Parties have removed all such references in revising this
3  instruction.

4

5  Mattel's objection is unsupported by law to the extent it states that <u>actual</u> knowledge on
6  behalf of MGA and Larian of the specific wrong they substantially assisted is not required
7  to find them liable for aiding and abetting.  <u>See</u> <u>Neilson v. Union Bank of Cal., N.A.</u>, 290
8  F. Supp. 2d 1101, 1118-20 (C.D. Cal. 2003). Mattel's objection also glosses over the intent
9  element by seeking to distinguish its aiding and abetting claim from one for conspiracy,
10 but its own case, <u>Berg & Berg Enters., LLC v. Sherwood Partners, Inc.</u>, notes that while
11 "aiding and abetting may not require a defendant to agree to join the wrongful conduct, <u>it</u>
12 <u>necessarily requires a defendant to reach a conscious decision to participate in tortious</u>
13 <u>activity for the purpose of assisting another in performing a wrongful act</u>."  131 Cal. App.
14 4th 802, 823 n.10 (2005) (emphasis added). <u>See also</u> <u>Gerard v. Ross</u>, 204 Cal. App. 3d
15 968, 983 (1988) ("an aider and abettor is called a cotortfeasor…. A defendant can be held
16 liable as a cotortfeasor on the basis of acting in concert <u>only if he or she knew that a tort</u>
17 <u>had been, or was to be, committed, and acted with the intent of facilitating the commission</u>
18 <u>of that tort</u>.") (emphasis added).

19

20 Mattel's objection that the proposed instruction does not include the "well-established
21 principle of California law" that "financial gain and self-interested profit corroborate the
22 elements of aiding and abetting is meritless. The authority Mattel cites in support, <u>Neilson</u>
23 <u>v. Union Bank of Cal., N.A.</u>, 290 F. Supp. 2d 1101 (C.D. Cal. 2003), specifically
24 downplays the role of financial information, since it is not an element of the tort. Indeed,
25 the <u>Neilson</u> court actually rejected defendants' contentions that plaintiffs were required to
26 show that "personal financial gain is an element of aiding and abetting a breach of
27 fiduciary duty" and held that "financial gain … should not be viewed as an element of the
28 tort." <u>Neilson</u>, 290 F. Supp. 2d at 1128-29.  Specifically, the <u>Neilson</u> court rejected the

156

1  exact analysis relied on by Mattel here in citing <u>Heckmann v. Ahmanson</u>, 168 Cal. App.
2  3d 119, 127 (1985), because "[h]aving reviewed Heckmann carefully, the court concludes
3  that it stands for the unremarkable proposition that one who knows of a fiduciary's breach
4  of duty and substantially assists it is liable as an aider and abettor. The court's reference to
5  'reaping the benefit,' offhand as it is, cannot be seen as adding an element to the tort."
6  <u>Neilson</u>, 290 F. Supp. 2d at 1128.  Thus, the <u>Neilson</u> court denied defendants' motion to
7  dismiss based on failure to allege financial gain and instead suggested that financial gain
8  "should not be viewed as an element of the tort, but as evidence of knowledge, substantial
9  assistance, or both." <u>Id.</u> Indeed, Mattel's characterization of the principle it advocates as
10  "well established" is dubious, since Mattel does not – because it cannot – point to a single
11  case where a court allowed evidence of a defendant's personal financial information to be
12  used to "corroborate" any aiding and abetting claim.

13

14  Mattel fails to recognize that a substantial causal connection between MGA and Larian's
15  conduct and the harm to Mattel is required and that the "substantial assistance"
16  requirement is inversely related to the knowledge factor. <u>See</u> <u>Resolution Trust Corp. v.</u>
17  <u>Rowe</u>,  1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993) (inverse relationship between
18  demonstration of knowledge and substantial assistance); <u>Mendelsohn v. Capital</u>
19  <u>Underwriters, Inc.,</u>  490 F. Supp. 1069, 1084 (N.D. Cal. 1979) (substantial causal
20  connection). Mattel's suggestion that <u>Resolution Trust</u> is inapplicable because it
21  purportedly dealt with the constitutional issue of standing is wrong, as the court
22  specifically held that "RTC's <u>lack of standing aside</u>, it has not demonstrated that any
23  assistance resulting from Century 21's actions was substantial to the fraudulent scheme."
24  1993 WL 183512, at *6 (emphasis added).

25

26  Mattel's final objection to the preceding instruction is unintelligible, as it is Mattel's
27  contentions that are at issue in this case, and the instruction cannot be phrased without
28  mentioning Mattel's "contentions"; moreover, Mattel does not cite any supporting

1    authority showing that the instruction's direction that the jury should not assume that
2    Mattel's contentions are true somehow misstates the law.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Objections and Responses Re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**BREACH OF FIDUCIARY DUTY CLAIM**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

**FIDUCIARY DUTY — ELEMENTS OF A CLAIM FOR A BREACH OF FIDUCIARY DUTY**

*-INCORPORATED INTO ELEMENTS OF CLAIM FOR AIDING AND ABETTING BREACH-*

# FIDUCIARY DUTY — DEFINED

Once a party expressly agrees to assume a fiduciary duty to another, that party is obligated to act on behalf of the other party, to hold the interests of the other paramount over his own interests, and to take no action that would further his interests over the other person's interest.

**Authority:** CACI Nos. 4100, 4102 (2008) (as modified); <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc</u>., 83 Cal. App. 4th 409, 417-18 (2000), <u>overruled on other grounds by</u> <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140 (2004); <u>City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc</u>., 68 Cal. App. 4th 445, 483-84 (1998).

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Fiduciary Duty— Defined on the following grounds:

1.      This proposed instruction erroneously suggests that the only way a party can become a fiduciary is if he "expressly agrees to assume a fiduciary duty." That is not correct. Fiduciary duties may be created by agreement, as well as by law, but the agreement need not include the "express" assumption of "a fiduciary duty." If a party agrees to accept a position of trust, "where a confidence is reposed by one person in the integrity of another…. if he voluntarily accepts or assumes to accept the confidence," he is bound to act as a fiduciary. Thus, contrary to defendants' proposed instruction, the law is clear that fiduciary relationships may be created by agreement and/or by confidential relationship, not solely by law or by express assumptions of a "fiduciary duty" in a contract.

2.      While the breach of a fiduciary duty is a question of fact, the existence of the legal duty in the first instance and its scope are questions of law. It is for this reason that Mattel has proposed Special Jury Instructions to reflect the court's prior finding of a fiduciary duty, and limited the role of the jury to determining the full scope of liability for breach.

**Authority:** CACI No. 4101; *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 29 (2003) ("A fiduciary relationship is 'any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent. ...'"); *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1581 (1991)

1  (fiduciary relationships arise "whenever trust and confidence is reposed by one person in

2  the integrity of another"); *Carpenter v. United States*, 484 U.S. 19, 27 (1987) (at common

3  law, "even in the absence of a written contract, an employee has a fiduciary obligation to

4  protect confidential information obtained during the course of his employment).  *GAB Bus.*

5  *Servs., Inc., v. Lindsey & Newsom Claims Servs., Inc.*, 83 Cal. App. 4th 409, 417 (2000),

6  relied upon by defendants, is not to the contrary; in that case, the court, while addressing

7  fiduciary relationships created by status in the corporate hierarchy, explicitly recognized

8  that:  "A fiduciary duty is undertaken by agreement when one person enters into a

9  confidential relationship with another….a confidential relationship arises 'where a

10  confidence is reposed by one person in the integrity of another, and…the party in whom

11  the confidence is reposed, …voluntarily accepts or assumes to accept the confidence.'"

12  *See also Kirschner Brothers Oil, Inc. v. Natomas Co.*, 185 Cal. App. 3d 784, 790 (1986)

13  ("While breach of a fiduciary duty is a question of fact, the existence of legal duty in the

14  first instance and its scope are questions of law.").

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 **MGA Parties' Response**

2

3 This instruction is proper because the Court's ruling on fiduciary duty was limited to

4 Bryant's duty vis-à-vis Mattel's confidential information.  May 21, 2008 Order at 4.  Thus,

5 the jurors must still consider both the proper scope of that duty and then determine

6 whether it applies.  Likewise, to determine the harm attributable to a breach of fiduciary

7 duty, the jury must first be instructed on the nature of that duty and the purported breach.

8

9 As to any fiduciary duty beyond that relating to Mattel's confidential information, Mattel

10 must still show that a fiduciary relationship was created as a factual matter— and this

11 requires a showing that Bryant "voluntarily" or "expressly" assumed a fiduciary duty.  See

12 City of Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 386 (confirming that

13 there must be a factual showing from which a jury could find that a party knowingly

14 undertook the obligations of a fiduciary, that is to act primarily for the benefit of the other

15 party); see also City Solutions, Inc. v. Clear Channel Commc'n., Inc., 201 F. Supp. 2d

16 1048, 1050 (N.D. Cal. 2002); Kremen v. Cohen, 99 F. Supp. 2d 1168, 1175 (N.D. Cal.

17 2000); Comm. on Children's Tel., Inc. v. Gen. Foods Corp., 35 Cal. 3d 197, 222 (1983)

18 (superseded by statute on other grounds); Vai v. Bank of America, 56 Cal. 2d 329, 338

19 (1961); Oakland Raiders v. Nat'l Football League, 131 Cal. App. 4th 621, 632-33 (2005);

20 GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409,

21 417 (2000), overruled on other grounds by Reeves v. Hanlon, 33 Cal. 4th 1140 (2004);

22 Maglica v. Maglica, 66 Cal. App. 4th 442, 448 (1998); Lynch v. Cruttenden & Co., 18 Cal.

23 App. 4th 802, 809 (1993); Worldvision Enters., Inc. v. Am. Broad. Cos., 142 Cal. App. 3d

24 589, 595 (1983). Mattel has made no such factual showing.

25

26 Moreover, this instruction merely defines fiduciary duty—not the creation of the duty.

27 "Expressly" simply refers to the requirements set forth in the instruction on existence of a

28 fiduciary duty.

1    **<u>FIDUCIARY DUTY — EXISTENCE OF DUTY</u>**

2    *-NO LONGER APPLICABLE AND WITHDRAWN-*

1 ## FIDUCIARY DUTY — BURDEN OF PROVING BREACH

2

3 If Carter Bryant expressly and voluntarily agreed to act as a fiduciary on behalf of Mattel,

4 you must determine the scope of that agreement and whether Mattel has met its burden of

5 proving by a preponderance of evidence that Bryant breached his fiduciary duties to Mattel.

6

7 **Authority:**  Restatement (Third) of Agency § 8.04; <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal.

8 2d 327 (1966); <u>Gonsalves v. Hodgson</u>, 38 Cal. 2d 91, 99 (1951); <u>LeMat Corp. v. Am.</u>

9 <u>Basketball Ass'n</u>, 51 Cal. App. 3d 267, 275 (1975); <u>see also</u> <u>Gateway Techs, Inc. v. MCI</u>

10 <u>Telecomm. Corp.</u>, 64 F.3d 993, 1000-01 (5th Cir. 1995).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Fiduciary Duty—Burden of Proving Breach on the following grounds:

1.      This proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court has already found as a matter of law that Bryant owed a fiduciary duty to Mattel. April 25, 2008 Order, at 5-6.  Accordingly, defendants' proposed instruction, which erroneously indicates that the jury could find that Bryant was not a fiduciary, is improper and misleading.

2.      This proposed instruction misstates the prerequisites to finding a fiduciary relationship and confuses the role of judge and jury, and law and fact, in defining the scope of the breach.

3.      The proposed instruction, without any support from CACI, limits a finding of breach to cases where the jury finds that Carter Bryant "expressly…agreed to act as a fiduciary," suggesting a required formulaic recitation where none is in fact necessary.

**Authority:**   *Kirschner Brothers Oil, Inc. v. Natomas Co*, 185 Cal. App. 3d 784, 790 (1986) ("While breach of a fiduciary duty is a question of fact, the existence of legal duty in the first instance and its scope are questions of law.");   *Sequoia Vacuum Systems v. Stransky*, 229 Cal. App. 2d 281, 288 (1964) ("The determination of the particular factual circumstances and the application of the ethical standards of fairness and good faith required of a fiduciary in a given situation are for the trier of facts" ); *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 29 (2003) ("A fiduciary relationship is 'any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the

confidence, can take no advantage from his acts relating to the interest of the other party
without the latter's knowledge or consent. ...'").

1   **MGA Parties' Response**

2

3   Mattel's characterization of the Court's holding on Bryant's fiduciary duty is problematic.

4   The Court held that Bryant owed Mattel a fiduciary duty "by virtue of the language set

5   forth in ¶ 1(a) of the Inventions Agreement."   April 25, 2008 Order at 5.   However, the

6   Court's ruling on that duty was limited to Bryant's duty vis-à-vis Mattel's confidential

7   information.  May 21, 2008 Order at 4.  Thus, the jurors must still consider both the proper

8   scope of that duty and then determine whether it applies.  Likewise, to determine the harm

9   attributable to a breach of fiduciary duty, the jury must first be instructed on the nature of

10  that duty and the purported breach.   The law is clear that "[w]hether the defendant

11  breached that duty towards the plaintiff is a question of fact." Amtower v. Photon

12  Dynamics, Inc., 158 Cal. App. 4th 1582, 1599 (2008).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections and Responses Re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1 | **BREACH – RIGHT TO PREPARE TO COMPETE**

2 | *-NO LONGER APPLICABLE AND WITHDRAWN-*

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2

# HARM CAUSED BY BREACH OF FIDUCIARY DUTY

3 Mattel must also prove by a preponderance of the evidence all facts necessary to show that
4 Mr. Bryant's breach of fiduciary duty was a substantial factor in causing Mattel harm
5 during the term of Mr. Bryant's employment.  It is not sufficient to show that Mattel was
6 harmed by Mr. Bryant's competition with Mattel after Mr. Bryant no longer was employed
7 at Mattel; rather, Mattel must show that it was harmed by conduct that Mr. Bryant engaged
8 in while he was still an employee at Mattel.

9
10 **Authority:** CACI No. 4102 (2008) (as modified); <u>Bancroft Whitney Co. v. Glen</u>, 64 Cal.
11 2d 327, 356-57 (1966); <u>Charles T. Powner Co. v. Smith</u>, 91 Cal. App. 101 (1928); <u>Sumner</u>
12 <u>v. Nevin</u>, 4 Cal. App. 347, 350-51 (1906); <u>see also</u> <u>Sequoia Vacuum Sys., v. Stransky</u>, 229
13 Cal. App. 2d 281, 286 (1964) (citing <u>Daniel Orifice Fitting Co. v. Whalen</u>, 198 Cal. App.
14 2d 791, 800 (1962)).

15
16
17
18
19
20
21
22
23
24
25
26
27
28

Objections and Responses Re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Harm Caused by Breach of Fiduciary Duty on the following grounds:

1.     This proposed instruction deviates from the model instruction cited by defendants.  The proposed instruction confuses the issues of the existence and scope of the breach of fiduciary duty with the measure of the harm suffered as a result.  Defendants are correct that the breach itself must occur during the term of Mr. Bryant's employment.  But for purposes of measuring the harm suffered by Mattel, a breach committed during the term of Mr. Bryant's employment may (as here) cause harm to Mattel after the employment was terminated, and such harm is appropriately taken into account in the separate determination of the appropriate measure of damages.  By confusing these two distinct issues, defendants unfairly and inaccurately seek to minimize the impact of the breach by imposing an artificial and unjustified time constraint on its assessment.  CACI No. 4102, cited by defendants, makes no reference to such a temporal limit in measuring the "harm" or impact of the breach.

**Authority:**  CACI No. 4102; *Huong Que Inc. v. Luu*, 150 Cal. App. 4th 400, 414 (2007); *Fowler v. Varian Assocs., Inc.*, 196 Cal. App. 3d 34, 41-42 (1987).

**MGA Parties' Response**

Mattel's complaint that this instruction deviates from the model is no basis for rejecting it. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.  Jury instructions do not come down from any mountain or rise up from any sea.  Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.  This description does not denigrate their value, it simply places them in the niche where they belong.").  Indeed, modification is sometimes necessary to make an instruction accurate and complete.  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

Mattel's objection is also without legal support and argumentative.   Moreover, Mattel seeks to turn a claim for breach of fiduciary duty into one of a "rolling" nature, which would permit a plaintiff to collect damages emanating from a breach *ad infinitum*.

Mattel must be harmed by the breach during the term of Bryant's employment and not by Bryant's conduct after he left employment. See Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the costs incurred to replace personnel recruited by president and competitor using confidential information in breach of president's fiduciary duty); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000) (damages for breach of

1  fiduciary duty were expenses incurred to recruit new employees); <u>Charles T. Powner, Inc.</u>
2  <u>v. Smith</u>, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales
3  resulting from use of employer's time and facilities); <u>Sumner v. Nevin</u>, 4 Cal. App. 347,
4  350 (1906) (damages were commissions received while still employed); <u>see also</u> <u>Design</u>
5  <u>Strategies v. Davis</u>, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary
6  earned during time employee was disloyal, and not the profits from a contract that
7  evidence showed employer would not have been awarded); <u>Frye-Tech, Inc. v. Harris</u>, 46 F.
8  Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including
9  employee time used to develop competing products).   Courts consistently distinguish
10  between harm incurred while employee still employed and harm from later competition.
11  <u>See e.g.</u>, <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th
12  409, 426 (2000) (damages for breach of fiduciary duty were expenses incurred to recruit
13  new employees).   Moreover, "[p]roof of serious employee misconduct causing injury to
14  the employer must also be shown before relief will generally be granted." <u>Sci. Accessories</u>
15  <u>Corp. v. Summagraphics Corp.</u>, 425 A. 2d 957, 965 (Del. 1980).   Even an officer (which
16  Bryant indisputably was not), who has a far greater duty to a company, may engage in a
17  competing business while he remains an officer provided that he does not cripple or injure
18  the business.  <u>See</u> <u>Sequoia Vacuum Systems v. Stransky</u>, 229 Cal. App. 2d 281, 286 (1964)
19  (citing <u>Daniel Orifice Fitting Co. v. Whalen</u>, 198 Cal. App. 2d 791, 800 (1962) ("a party
20  may not enter into a competing enterprise which cripples or injures a business or
21  corporation <u>of which he remains an officer or director</u>") (emphasis added)).

22

23

24

25

26

27

28

**AIDING AND ABETTING BREACH OF DUTY OF LOYALTY CLAIM**

Mattel has asserted a claim for aiding and abetting breach of the duty of loyalty against MGA and Isaac Larian.

I will now instruct you regarding the law as to this claim.

**-REVISED-**

**AIDING AND ABETTING BREACH OF DUTY OF LOYALTY**

To recover on its claim for aiding and abetting, Mattel must first show that there has been a breach of the duty of loyalty.  In order to show that there has been a breach upon which Mattel can base a claim, Mattel has the burden of proving by a preponderance of the evidence all the facts necessary to establish:

 1. That Bryant was Mattel's employee and thus owed Mattel a duty of loyalty;

 2. That Bryant breached his duty of loyalty by directly competing with Mattel during the term of his employment with Mattel in connection with his development of the BRATZ sketches;

 3. That Mattel did not give informed consent to Bryant's conduct or otherwise ratify Bryant's conduct;

 4. That Mattel was harmed during the term of Bryant's employment; and

 5. That Bryant's conduct was a substantial factor in causing Mattel's harm.

174

1  You should assume that an employee owes his or her employer a duty of loyalty.  You
2  should also assume that Bryant breached that duty by entering into a contract with MGA
3  while still employed by Mattel.  However, it is up to you to decide if Mattel consented to
4  that breach, if Mattel was harmed by the breach, and if Bryant's conduct was a substantial
5  factor in causing that harm.  In a few moments I will instruct you on what it means to have
6  a duty of loyalty and what is required to show a breach of a duty of loyalty upon which
7  Mattel may base its claim.

8
9  If Mattel establishes a breach upon which it may base its claim, then Mattel has the burden
10  of proving by a preponderance of the evidence all the facts necessary to establish:

11
12      1.    MGA and Larian substantially assisted or encouraged Bryant in
13            accomplishing the breach; <u>and</u>

14
15      2.    MGA and Larian had actual knowledge of the specific wrong they
16            substantially assisted.

17
18  To prove actual knowledge of the underlying breach of duty, Mattel must show that MGA
19  and Larian not only knew of Bryant's breach but also that MGA and Larian made a
20  conscious decision to participate in wrongful activity designed to assist Bryant in his
21  breaches.

22
23  Mattel also has to show a substantial causal connection between MGA and Larian's
24  conduct and the harm to Mattel.  The "substantial assistance" requirement is inversely
25  related to the knowledge factor, which means that if Mattel has only offered a small
26  amount of evidence of MGA and Larian's "knowledge" of Bryant's alleged breach of duty,
27  Mattel has to show that MGA and Larian rendered a high degree of substantial assistance
28

175

1 in Bryant's breach in order to show that MGA and Larian are liable for aiding and abetting

2 Bryant's breach of duty.

3

4 **Authority:** CACI No. 4102 (2008) (as modified); <u>Bancroft Whitney Co. v. Glen</u>, 64 Cal.

5 2d 327, 345-346 & n.10 (1966); <u>accord</u> <u>Eckard Brandes, Inc. v. Riley</u>, 338 F. 3d 1082,

6 1086 (9th Cir. 2002); <u>Western Med. Consultants, Inc. v. Johnson</u>, 80 F.3d 1331, 1336-38

7 (9th Cir. 1996); <u>Franklin Music Co. v. Am. Broad. Cos.</u>, 616 F. 2d 528, 532-33, 537 (3d

8 Cir. 1979); <u>Merger Mgmt. Consulting, Inc. v. Wilde</u>, 920 F. Supp. 219 (D. D.C. 1996);

9 <u>Abraham Zion Corp. v. Lebow</u>, 593 F. Supp. 551, 570-71 (S.D.N.Y. 1984), <u>aff'd</u>, 761 F.

10 2d 93 (2d Cir. 1985); <u>Seward v. Union Pump Co.</u>, 428 F. Supp. 161 (S.D. Texas 1977);

11 <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th 409,

12 424-25 (2000), <u>overruled on other grounds by</u>, <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140 (2004);

13 <u>Computer Sciences Corp. v. Ferguson</u>, 74 Cal. Rptr. 86, 92-93 (1968); Restatement (Third)

14 of Agency Sect. 8.04 cmt. c; <u>MJT Securities, LLC v. Toronto-Dominion Bank</u>, 2007 WL

15 1725421, at **7-8   (N.D. Cal. June 14, 2007) (elements); <u>Neilson v. Union Bank of

16 California, N.A.</u>, 290 F. Supp. 2d 1101, 1119-20 (C.D. Cal. 2003) (intent); <u>Resolution

17 Trust Corp. v. Rowe</u>,   1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993) (inverse

18 relationship between demonstration of knowledge and substantial assistance); <u>Mendelsohn

19 v. Capital Underwriters, Inc.</u>,   490 F. Supp. 1069, 1084 (N.D. Cal. 1979) (causation);

20 <u>Sarkes Tarzian, Inc. v. Audio Devices, Inc.</u>, 166 F. Supp. 250 (S.D. Cal. 1958) (competitor

21 employer did not conspire to breach duty to former employer where competitor paid at-

22 will employee an advance and employee did not disclose intention to work for competitor),

23 <u>aff'd</u>, 283 F.2d 695 (9th Cir. 1960); <u>Gerard v. Ross</u>, 204 Cal. App. 3d 968, 983 (1988)

24 (intent); <u>see also</u> <u>Richard B. LeVine, Inc. v. Higashi</u>, 131 Cal. App. 4th 566, 574 (2005);

25 <u>Casey v. U.S. Bank Nt'l Ass'n</u>, 127 Cal. App. 4th 1138, 1144 (2005); <u>Fiol v. Doellstedt</u>,

26 50 Cal. App. 4th 1318, 1325-26 (1996); <u>Saunders v. Superior Court</u> 27 Cal. App. 4th 832,

27 846 (1994); Restatement (Second) of Torts § 876.

28

**Mattel's Objections**

 

Mattel objects to defendants' proposed instruction regarding Aiding and Abetting Breach of Duty of Loyalty on the following grounds:

1.     This proposed instruction is contrary to the Court's April 25, 2008 Order.  The Court has already found as a matter of law that Bryant owed a duty of loyalty to Mattel, and that Bryant breached that duty when he "secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products."  April 25, 2008 Order, at 5-6. Accordingly, this proposed instruction, which tells the jury that Mattel bears the burden of proving those issues, is improper and misleading.

2.     This proposed instruction deviates from the model instruction found in CACI regarding breach of the duty of loyalty and repeatedly misstates the law, adding elements not included in the model instructions and not supported by California law.  As set forth in CACI No. 4102 and Mattel's proposed jury instruction, the duty of loyalty is breached if Bryant "acted against Mattel's interest" while employed by Mattel.  *See* Mattel's Proposed Jury Instruction re Breach of the Duty of Loyalty.  It is not necessary, as defendants' proposed instruction wrongly suggests, that he "directly compet[ed] with Mattel ....in connection with his development of the Bratz sketches."  Mattel's claim of breach of duty is not so limited, nor is California law.

3.     Moreover, as set forth in CACI No. 4102 and Mattel's proposed instruction, the correct statement of the law is that "Mattel did not give informed consent to Mr. Bryant's conduct;" defendants' proposed addition of the phrase "or otherwise ratify Bryant's conduct," is not included in the model instruction, and wrongly and confusingly suggests that something less than informed consent might in fact constitute informed consent.

4.     Finally, as set forth in CACI No. 4102 and Mattel's proposed instruction, the correct statement of the law is that "Mattel was harmed" by the breach of duty.

1   Defendants' additional requirement that Mattel must have been "harmed during the term of

2   Bryant's employment" wrongly suggests that a breach of the duty of loyalty during the

3   term of the employment the impact of which was not fully realized until after the

4   employment ended would somehow excuse liability, which it would not.

5       5.    This proposed instruction is also contrary to the Court's April 25, 2008 Order

6   to the extent it purports to inform the jury that preparations to compete are not a breach of

7   duty.  The Court has already ruled that Bryant cannot defend his actions as "lawful

8   preparations to compete" because he "directly competed with Mattel by entering into a

9   contract with its competitor to produce a competing product while still employed by

10  Mattel."  April 25, 2008 Order, at 5.  Accordingly, defendants' proposed instruction, which

11  erroneously indicates that the jury could find otherwise, is improper and misleading.

12      6.    Defendants' proposed instruction for aiding and abetting breach of duty of

13  loyalty, like its fiduciary duty corollary, again misstates the law of aiding and abetting and

14  of preparation to compete, adding requirements of specific knowledge not provided in the

15  Model instruction or by California law, and omits to mention the role of financial gain and

16  self-interested profit in determining knowledge and substantial assistance.

17      7.    The proposed instruction purports to add elements which are not required to

18  state a cause of action for aiding and abetting breach of fiduciary duty under California

19  law.  There is no requirement that defendants have actual knowledge of the specific wrong

20  they substantially assisted or that they "made a conscious decision to participate in

21  wrongful activity."  Aiding and abetting does not require a defendant to agree to join the

22  wrongful conduct in the way one joins a conspiracy.  Nor does it require "actual

23  knowledge of the specific wrong they substantially assisted."  It is enough that there is

24  knowledge of the acts giving rise to the breach.  Moreover, it is not necessary that the

25  activity done by MGA and/or Larian be "wrongful activity" in order to qualify as

26  "substantial assistance"; California courts have held that even "ordinary business

27  transactions" that a bank performs for a customer can satisfy the substantial assistance

28  element.  *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005).

8. As Mattel's proposed instruction properly states, there are three elements to a claim for aiding and abetting: that Bryant's conduct constituted a breach of the duty of loyalty; that MGA and/or Larian knew that Bryant's conduct constituted a breach of the duty of loyalty; and that MGA and/or Larian gave substantial assistance or encouragement to Mr. Bryant to breach that duty.  Defendants' proposed instruction, which conflates both MGA and Larian, wrongly suggests that both must be found to have the requisite knowledge and have provided the requisite assistance.

9. Defendants also erroneously suggest that Mattel must prove a "substantial causal connection" between the defendants' conduct and the harm to Mattel.  This purported requirement is not supported by the law and is prejudicial to Mattel.

10. Defendants' proposed instruction repeats, again incorrectly, the scope of the "preparation to compete" doctrine, omitting the requirement that a fiduciary cannot put a competitor's interest ahead of his own employer's, neglecting to include the requirements of disclosure of preparation to compete, and suggesting, wrongly, an unlimited right to be paid by a new employer (as opposed to the right, in limited circumstances, to be paid an advance) and continue to receive salary and benefits and use office resources from his prior employer, even though in most instances, such activity would constitute commercial bribery and would, in any event, be subject to required disclosure.

11. Defendants' proposed instruction fails to include the well-established principle of California law that "financial gain and self-interested profit corroborate the elements of aiding and abetting." *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1127-28 (C.D. Cal. 2003).  If the defendant reaps the benefit of participating in a breach of duty, he cannot disclaim the burden of liability.

12. Defendants' suggestion that the "substantial assistance" requirement is inversely related to the knowledge factor is unsupported by fact and law, and inconsistent with the above-stated rule.  No such instruction is appropriate or necessary on the facts of this case.  The authority cited by defendants is utterly inapposite.  Indeed, since every California employee owes his employer a duty of loyalty, and since it is undisputed that

179

1  MGA and Larian both knew that Bryant was a Mattel employee, it would be appropriate,

2  on defendants' reasoning, to instruct the jury that any assistance could be deemed

3  substantial in the face of such unequivocal knowledge.

4

5  **Authority:**  CACI 4102; *Huong Que Inc v. Luu*, 150 Cal. App. 4th 400, 414 (2007);

6  *Fowler v. Varian Assocs. Inc.*, 196 Cal. App. 3d 34, 41-42 (1987); *Stokes v. Dole Nut Co.*,

7  41 Cal. App. 4th 285, 296 (1995); *Cal. Labor Code* §§ 2856, 2860, 2863; *Neilson v. Union*

8  *Bank of Calif.*, 290 F. Supp. 2d 1101, 1119 (C.D. Cal. 2003) (enough if there is knowledge

9  of acts giving rise to breach); *Berg & Berg Enter. LLC v. Sherwood Partners, Inc,* 131 Cal.

10  App. 4th 802, 823 n. 10 (2005) (aiding and abetting does not require that a defendant agree

11  to join the wrongful conduct); *Heckman v. Ahmanson*, 168 Cal. App. 3d 119, 127 (1985)

12  (if defendant reaps the benefits of breach of fiduciary duty he cannot disclaim the burden

13  of liability); *Casey v. U.S. Bank Nat'l Assn.*, 127 Cal. App. 4th 1138, 1145 (2005)

14  (ordinary business transactions by bank sufficient to constitute substantial assistance);

15  *Daniel Orifice Fitting Co*., 198 Cal. App. 2d 791, 800 -01 (1962) (full disclosure required

16  of acts taken in preparation for competition); *Sequoia Vacuum Sys. v. Stransky,* 229 Cal

17  App. 2d 281, 287 ((1964) (same).  Compare *Resolution Trust Corp. v. Rowe*, 1993 WL

18  183512, at *6 (N.D. Cal. 1993) (no standing, no knowledge).

19

20

21

22

23

24

25

26

27

28

1 | **MGA Parties' Response**

2

3 | Mattel's characterization of the Court's holding on Bryant's duty of loyalty is problematic.

4 | The Court held that Bryant owed Mattel a duty of loyalty and that he breached it.  Final

5 | Pre-Trial Conference Order at 4.   However, to determine the harm attributable to a breach

6 | of a duty of loyalty – the element as to which Mattel still bears the burden of proof -- the

7 | jury must first be instructed on the nature of that duty and the breach.

8

9 | In addition, Mattel's complaint that this instruction deviates from the model is no basis for

10 | rejecting it.   In proposing jury instructions, the parties are permitted to modify the

11 | language of any model instruction to make it less confusing or more appropriate in the

12 | context of a particular case.  See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir.

13 | 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions:

14 | "The texts of 'standard' jury instructions are not debated and hammered out by legislators,

15 | but by ad hoc committees of lawyers and judges.  Jury instructions do not come down

16 | from any mountain or rise up from any sea.  Their precise wording, although extremely

17 | useful, is not blessed with any special precedential or binding authority.  This description

18 | does not denigrate their value, it simply places them in the niche where they belong.").

19 | Indeed, modification is sometimes necessary to make an instruction accurate and complete.

20 | See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving

21 | modification of Ninth Circuit model instruction to include additional elements, noting that

22 | "[h]ad the district court merely read the model jury instruction, it would have committed

23 | plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

24 | The MGA Parties deviate from CACI No. 4102 to clarify the circumstances concerning a

25 | breach of duty of loyalty from California jurisprudence.

26

27 | Mattel's objections to the MGA Parties' references to preparations to compete must be an

28 | error, because the MGA Parties have removed all such references in revising this

181

1    instruction.

2

3    Mattel's objection is unsupported by law to the extent it implies that <u>actual</u> knowledge on

4    behalf of MGA and Larian of the specific wrong they substantially assisted is not required

5    to find them liable for aiding and abetting.  <u>See</u> <u>Neilson v. Union Bank of Cal., N.A.</u>, 290

6    F. Supp. 2d 1101, 1118-20 (C.D. Cal. 2003). Mattel's objection also glosses over the intent

7    element by seeking to distinguish its aiding and abetting claim from one for conspiracy,

8    but its own case, <u>Berg & Berg Enters., LLC v. Sherwood Partners, Inc.</u>, notes that while

9    "aiding and abetting may not require a defendant to agree to join the wrongful conduct, <u>it</u>

10   <u>necessarily requires a defendant to reach a conscious decision to participate in tortious</u>

11   <u>activity for the purpose of assisting another in performing a wrongful act</u>."  131 Cal. App.

12   4th 802, 823 n.10 (2005) (emphasis added). <u>See also</u> <u>Gerard v. Ross</u>, 204 Cal. App. 3d

13   968, 983 (1988) ("an aider and abettor is called a cotortfeasor…. A defendant can be held

14   liable as a cotortfeasor on the basis of acting in concert <u>only if he or she knew that a tort</u>

15   <u>had been, or was to be, committed, and acted with the intent of facilitating the commission</u>

16   <u>of that tort</u>.") (emphasis added).

17

18   Mattel's suggestion that "since every California employee owes his employer a duty of

19   loyalty, and since it is undisputed that MGA and Larian both knew that Bryant was a

20   Mattel employee, it would be appropriate, on defendants' reasoning, to instruct the jury

21   that any assistance could be deemed substantial in the face of such unequivocal

22   knowledge" ignores this intent element. Moreover, it is hardly undisputed that MGA and

23   Larian knew of the breach, as they were operating under the assumption that Bryant had

24   quit, as Bryant was told to do so. There is nothing wrong with interviewing a competitor's

25   employee. <u>See</u> <u>Sarkes Tarzian, Inc. v. Audio Devices, Inc.</u>, 166 F. Supp. 250 (S.D. Cal.

26   1958), <u>aff'd</u>, 283 F.2d 695 (9th Cir. 1960), which rejected allegations of conspiracy by a

27   former employer against a competitor for hiring a former employee, dismissing the fact

28   that "no disclosure of intention to leave was made and that [the employee] even accepted

182

1  an advancement a few days before tendering his resignation" as "unimportant" because

2  "[a]n employee who is dischargeable at will is under no obligation to treat his employer

3  otherwise or with more consideration than he can be treated by him. It follows that, as [the

4  employee] had a right to leave at will, his arrangement with the other employees and with

5  [defendant competitor] Audio did not amount to a conspiracy on their part or on the part of

6  Audio." Id. at 267.

7

8  Further, Mattel must be harmed by the breach during the term of Bryant's employment and

9  not by Bryant's conduct after he left employment.  Bancroft-Whitney Co. v. Glen, 64 Cal.

10  2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the

11  costs incurred to replace personnel recruited by president and competitor using

12  confidential information in breach of president's fiduciary duty); GAB Bus. Servs., Inc. v.

13  Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000) (damages for

14  breach of fiduciary duty were expenses incurred to recruit new employees); Charles T.

15  Powner, Inc. v. Smith, 91 Cal. App. 101 (1928) (damages were profits on directly

16  competitive sales resulting from use of employer's time and facilities); Sumner v. Nevin, 4

17  Cal. App. 347, 350 (1906) (damages were commissions received while still employed; see

18  also Design Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount

19  of salary earned during time employee was disloyal, and not the profits from a contract

20  that evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris,

21  46 F. Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including

22  employee time used to develop competing products). Courts consistently distinguish

23  between harm incurred while employee still employed and harm from later competition.

24  See, e.g., GAB Bus. Servs., 83 Cal. App. 4th at 426 (damages for breach of fiduciary duty

25  were expenses incurred to recruit new employees).

26

27  Mattel's objection that the proposed instruction does not include the "well-established

28  principle of California law" that "financial gain and self-interested profit corroborate the

183

1  elements of aiding and abetting is meritless. The authority Mattel cites in support, <u>Neilson</u>
2  <u>v. Union Bank of Cal., N.A.</u>, 290 F. Supp. 2d 1101 (C.D. Cal. 2003), specifically
3  downplays the role of financial information, since it is not an element of the tort. Indeed,
4  the <u>Neilson</u> court actually rejected defendants' contentions that plaintiffs were required to
5  show that "personal financial gain is an element of aiding and abetting a breach of
6  fiduciary duty" and held that "financial gain … should not be viewed as an element of the
7  tort." <u>Neilson</u>, 290 F. Supp. 2d at 1128-29.  Specifically, the <u>Neilson</u> court rejected the
8  exact analysis relied on by Mattel here in citing <u>Heckmann v. Ahmanson</u>, 168 Cal. App.
9  3d 119, 127 (1985), because "[h]aving reviewed Heckmann carefully, the court concludes
10  that it stands for the unremarkable proposition that one who knows of a fiduciary's breach
11  of duty and substantially assists it is liable as an aider and abettor. The court's reference to
12  'reaping the benefit,' offhand as it is, cannot be seen as adding an element to the tort."
13  <u>Neilson</u>, 290 F. Supp. 2d at 1128.  Thus, the <u>Neilson</u> court denied defendants' motion to
14  dismiss based on failure to allege financial gain and instead suggested that financial gain
15  "should not be viewed as an element of the tort, but as evidence of knowledge, substantial
16  assistance, or both." <u>Id.</u>  Indeed, Mattel's characterization of the principle it advocates as
17  "well established" is dubious, since Mattel does not – because it cannot – point to a single
18  case where a court allowed evidence of a defendant's personal financial information to be
19  used to "corroborate" any aiding and abetting claim.

20

21  Finally, Mattel fails to recognize that a substantial causal connection between MGA and
22  Larian's conduct and the harm to Mattel is required and that the "substantial assistance"
23  requirement is inversely related to the knowledge factor. <u>See</u> <u>Resolution Trust Corp. v.</u>
24  <u>Rowe</u>,  1993 WL 183512, at *6 (N.D. Cal. Feb. 8, 1993) (inverse relationship between
25  demonstration of knowledge and substantial assistance); <u>Mendelsohn v. Capital</u>
26  <u>Underwriters, Inc.</u>,  490 F. Supp. 1069, 1084 (N.D. Cal. 1979) (substantial causal
27  connection).

28

**DUTY OF LOYALTY CLAIM**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

**BREACH OF THE DUTY OF LOYALTY–ESSENTIAL FACTUAL ELEMENTS**

*-INCORPORATED INTO ELEMENTS OF CLAIM FOR AIDING AND ABETTING BREACH-*

**DUTY OF LOYALTY DEFINED**

An employee owes his or her employer a duty of loyalty.  The scope of the employee's duty varies with the nature of the employee's relationship with his or her employer.  Thus, an employee who occupies a position with a high level of trust and confidence owes a higher duty of loyalty to his or her employer than an employee who occupies a low-level position.  Mattel has the burden of proving by a preponderance of the evidence all facts necessary to show the scope of Bryant's duty of loyalty to Mattel.

**Authority:**   19 Williston on Contracts § 54:26 (4th ed.); Huong Que, Inc. v. Luu, 150 Cal. App. 4th 400, 411 (2007); Stokes v. Dole Nut Co., 41 Cal App. 4th 285 (1995).

1  **Mattel's Objections**

2

3       Mattel objects to defendants' proposed instruction regarding Duty of Loyalty

4  Defined on the following grounds:

5       1.      This proposed instruction is contrary to the Court's April 25, 2008 Order.  The

6  Court has already found as a matter of law that Bryant owed a duty of loyalty to Mattel,

7  and that Bryant breached that duty when he "secretly entered into a contract with Mattel's

8  competitor, while still employed by Mattel, to produce a line of fashion dolls to be

9  marketed in direct competition with Mattel's products."  April 25, 2008 Order, at 6.  None

10  of defendants' proposed instructions on this claim properly inform the jury of the Court's

11  ruling.

12       2.      The proposed instruction is also misleading in that it suggests that, depending

13  on the employee's level within the company, he may owe less than the "undivided loyalty"

14  that California law imposes.  *Williston on Contracts*, relied upon by defendants, does not

15  provide support for the rule proposed by defendants; rather, it notes, without citation to

16  any California authority, that there is division of authority among other jurisdictions as to

17  whether a fiduciary relationship is necessary in order to create a duty of loyalty.  The only

18  citation to any California authority in the applicable section of Williston is for the

19  proposition that "an employee may not seek to acquire indirect advantage from third

20  persons for performing the duty owed to his or her employer."  California law, unlike some

21  jurisdictions cited by Williston, clearly requires "undivided loyalty" from all employees,

22  independent of the additional responsibilities imposed on fiduciaries.

23

24       Authority: CACI 4102; *Huong Que Inc v. Luu*, 150 Cal. App. 4th 400, 414 (2007);

25  *Fowler v. Varian Assocs. Inc.*, 196 Cal. App. 3d 34, 41-42 (1987); *Stokes v. Dole Nut Co.*,

26  41 Cal. App. 4th 285, 296 (1995); *Cal. Labor Code* §§ 2856, 2860, 2863.

27

28

**MGA Parties' Response**

Mattel's characterization of the Court's holding on Bryant's duty of loyalty is problematic. The Court held that Bryant owed Mattel a duty of loyalty and that he breached it.  Final Pre-Trial Conference Order at 4.   However, to determine the harm attributable to a breach of a duty of loyalty, the jury must first be instructed on the nature of that duty and the breach.

Mattel's objection creates an issue where there is none.  The proposed instruction does not imply that an employee's loyalty should not be "undivided," as Mattel claims, but rather addresses the scope of that loyalty.   Williston supports the position that employees of varying levels have different level of duty, i.e., an officer's duty is different than low level non-managerial employee. The scope of Bryant's duty would be limited to the nature/level of his employment, and would not be comparable to the duty of loyalty owed by, for example, a Chief Executive Officer.

**BREACH OF THE DUTY OF LOYALTY**

1

2

3 Mattel must also prove by a preponderance of the evidence all facts necessary to show that
4 Carter Bryant breached his duty of loyalty to Mattel.  To do so, Mattel must show that
5 Bryant undertook actions prior to leaving his employment with Mattel that were in direct
6 competition with Mattel and not merely preparations to compete with Mattel after his
7 employment ended.  As previously instructed, you are to assume that Bryant's execution
8 of a contract with MGA while he was still an employee of Mattel was a breach of the duty
9 of loyalty.  However, Mattel contends that other actions of Bryant while still an employee
10 constituted additional breaches of the duty of loyalty and the defendants dispute that.  It is
11 up to you to decide whether there were any additional breaches of the duty of loyalty by
12 Bryant while he was an employee of Mattel.

13

14 Acts of direct competition include, for example, (1) the formation of a competing company
15 that competes against the employer while the employee is still employed by that employer,
16 (2) the selling of competing products while still employed, (3) the diversion of sales away
17 from an employer while still an employee; (4) the use of confidential information (such as
18 employee salaries) to recruit employees to a competitor; (5) the misappropriation of trade
19 secrets, (6) the solicitation of an employer's customers before terminating employment,
20 and (7) the conspiracy to cause 'mass resignation' of key employees.

21

22 Permissible preparations to compete include, for example, (1) undertaking efforts to
23 establish a competing business and to immediately compete after termination of
24 employment; (2) use of small amounts of an employer's resources, such as phones, faxes,
25 computers, and employee time; (3) discussion of a competing venture with other
26 employees; (4) asking customers whether work might be available for a possible
27 competing venture; (5) use of some time during work hours to prepare to compete,
28 provided the employee continues to perform his or her job responsibilities; and (6) use of

189

1  marketing plans, customer lists or other information learned during his or her employment
2  provided the information is not a trade secret or confidential information.  You should
3  assume that Bryant's execution of a contract with MGA while still an employee of Mattel
4  was not a permissible preparation to compete.  However, to the extent that Mattel contends
5  that other actions of Bryant beyond merely entering into a contract with Mattel were
6  breaches of the duty of loyalty, then you must decide whether such actions were
7  permissible preparations to compete.

8

9  You may consider Bryant's intention and the surrounding circumstances in determining
10 whether Bryant was permissibly preparing to compete or whether he breached his duty of
11 loyalty to Mattel.

12

13 **Authority:**  Bancroft Whitney Co. v. Glen, 64 Cal. 2d 327, 345-346 & n.10 (1966); accord
14 Eckard Brandes, Inc. v. Riley, 338 F. 3d 1082, 1086 (9th Cir. 2002); Western Med.
15 Consultants, Inc. v. Johnson, 80 F.3d 1331, 1336 -38 (9th Cir. 1996); Franklin Music Co. v.
16 Am. Broad. Cos., 616 F.2d 528, 532-33, 537 (3d Cir. 1979); Material Supply Int'l, Inc. v.
17 Sunmatch Indus. Co., 146 F. 3d 983, 993 (D.C. Cir. 1998); Merger Mgmt. Consulting, Inc.
18 v. Wilde, 920 F. Supp. 219 (D. D.C. 1996); T.A. Pelsue Co. v. Grand Enters., Inc., 782 F.
19 Supp. 1476, 1486 (D. Colo. 1991); Abraham Zion Corp. v. Lebow, 593 F. Supp. 551, 570-
20 71 (S.D.N.Y. 1984), aff'd, 761 F. 2d 93 (2d Cir. 1985); Seward v. Union Pump Co., 428 F.
21 Supp. 161 (S.D. Texas 1977); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs.,
22 Inc., 83 Cal. App. 4th 409,  424-25 (2000), overruled on other grounds by, Reeves v.
23 Hanlon, 33 Cal. 4th 1140 (2004); Computer Sciences Corp. v. Ferguson, 74 Cal. Rptr. 86,
24 92-93 (1968); Restatement (Third) of Agency Sect. 8.04 cmt. c.

25

26

27

28

1    **Mattel's Objections**

2

3    Mattel objects to defendants' proposed instruction regarding Breach of the Duty of

4    Loyalty on the following grounds:

5    1.      This proposed instruction deviates from the model instruction found in CACI

6    regarding breach of the duty of loyalty and purports to add elements and requirements not

7    supported by the model instruction or California law.

8    2.      This proposed instruction is also duplicative and prejudicial to Mattel because

9    defendants already purported to incorporate issues relating to proving an underlying

10   breach of the duty of loyalty into their proposed instruction regarding aiding and abetting

11   breach of the duty of loyalty.

12   3.      Moreover, this proposed instruction is also contrary to the Court's April 25,

13   2008 Order to the extent it purports to inform the jury that preparations to compete are not

14   a breach of duty and that there was only one breach of the duty of loyalty.  The Court has

15   already ruled that Bryant cannot defend his actions as "lawful preparations to compete"

16   because he "directly competed with Mattel by entering into a contract with its competitor

17   to produce a competing product while still employed by Mattel."  April 25, 2008 Order, at

18   5.  Accordingly, defendants' proposed instruction, which erroneously indicates that the jury

19   could find otherwise, is improper and misleading.

20   4.      This proposed instruction is also misleading in purporting to define a breach

21   of the duty of loyalty as being limited to "actions that were in direct competition with

22   Mattel and not merely preparations to compete with Mattel after his employment ended."

23   Actions which are not in "direct competition" as defined in the proposed instruction may

24   nonetheless conflict with an employee's duty of undivided loyalty to his employer.  An

25   employee is not entitled to provide assistance to a competitor even if that assistance does

26   not constitute direct competition, nor is he permitted to represent that competitor in

27   dealings with others.

28

5.    The examples given in the proposed instruction of direct competition are irrelevant to the facts of this case, representing little more than a list of straw men the absence of which does not establish undivided loyalty.  For example, the fact that an employee may not have solicited an employer's customers does not excuse him from soliciting his employer's vendors; the fact that he did not engage in a "conspiracy to cause mass resignations of key employees" does not immunize his solicitation of other employees to perform work for a competitor.  The fact that he did not sell competing products while still an employee does not mean he is allowed to develop those products and contract for their sale once his employment is ended.  The implication that the list is either illustrative of the threshold of loyalty required or exclusive as to the acts prohibited is both false and misleading.

6.    The list of what constitutes "preparations to compete" seems specifically designed to exclude undisputed acts committed by Bryant which Mattel claims went well beyond the permissible bounds of preparation to compete.  Any list of what does constitute preparation to compete, in order to be fair, should also include examples of what does not, e.g., entering into a contract with a new employer pledging to provide services on an expedited basis while still employed; soliciting vendors; working as much as four hours per day for a competing employer; using the employer's resources to design and develop a competing product.  Defendants would surely object to any such list, and in fact, Mattel has not proposed one.  But if defendants are entitled to a list, so is Mattel.

7.    The proposed instruction entirely misstates the disclosure requirement imposed by California law with respect to the right to prepare to compete, sliding the requirement that an employee is required to disclose honestly his future competition to his employer once he leaves his employment into an afterthought to the instruction ("once he or she has made a final decision to leave his or her current job") and ignoring the requirement that  failure to disclose acts of preparation prior to departure is actionable where the nondisclosure was harmful to the previous employer.

192

1    **Authority:**   CACI No. 4102; *Huong Que Inc. v. Liu*, 150 Cal. App. 4th 400, 414

2    (2007) ("while California law does permit an employee to seek other employment and

3    even to make some 'preparations to compete' before resigning, California law does not

4    authorize and employee to transfer his loyalty to a competitor....an employee, while

5    employed, owes undivided loyalty to his employer"); *Daniel Orifice Fitting Co.*, 198 Cal.

6    App. 2d 791, 800-01 (1962) (employee liable where he did not make "full disclosure of

7    acts undertaken in preparation for entering competition"); *Sequoia Vacuum Sys. v.*

8    *Stransky,* 229 Cal App. 2d 281, 287 (1964) ("the protection of the principals' interest

9    requres a full disclosure of acts undertaken in preparation of entering into competition");

10   *Bancroft Whitney Co. v. Glen,* 64 Cal. 2d 327, 347 (1966) (failure to disclose acts of

11   preparation actionable where the nondisclosure was harmful to the corporation);

12   *Restatement (Third) of Agency*, § 804.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MGA Parties' Response**

Mattel's characterization of the Court's holding on Bryant's duty of loyalty is problematic. The Court held that Bryant owed Mattel a duty of loyalty and that he breached it by entering into a contract with MGA while an employee of Mattel.   Final Pre-Trial Conference Order at 4.   However, to determine the harm attributable to a breach of a duty of loyalty, the jury must first be instructed on the nature of that duty and the breach.  This instruction simply explains to the jury what is a breach and what is not, information which is critical to assessing harm to Mattel <u>only</u> by those actions that actually fit the definition of a breach.

Indeed, Mattel must be harmed by the breach during the term of Bryant's employment and not by Bryant's conduct after he left employment.  <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the costs incurred to replace personnel recruited by president and competitor using confidential information in breach of president's fiduciary duty); <u>GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.</u>, 83 Cal. App. 4th 409, 426 (2000) (damages for breach of fiduciary duty were expenses incurred to recruit new employees); <u>Charles T. Powner, Inc. v. Smith</u>, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales resulting from use of employer's time and facilities); <u>Sumner v. Nevin</u>, 4 Cal. App. 347, 350 (1906) (damages were commissions received while still employed); <u>see also</u> <u>Design Strategies v. Davis</u>, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary earned during time employee was disloyal, and not the profits from a contract that evidence showed employer would not have been awarded); <u>Frye-Tech, Inc. v. Harris</u>, 46 F. Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including employee time used to develop competing products). Courts consistently distinguish between harm incurred while employee still employed and harm from later competition. <u>See, e.g.</u>, <u>GAB Bus. Servs.</u>, 83 Cal. App. 4th at 426 (damages for breach of fiduciary duty

1  were expenses incurred to recruit new employees). This is what the examples relating to

2  competitive conduct are designed to address.

3

4  Finally, the parties are permitted to modify the language of any model instruction to make

5  it less confusing or more appropriate in the context of a particular case.  See McDowell v.

6  Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth

7  Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are

8  not debated and hammered out by legislators, but by ad hoc committees of lawyers and

9  judges.  Jury instructions do not come down from any mountain or rise up from any sea.

10  Their precise wording, although extremely useful, is not blessed with any special

11  precedential or binding authority.  This description does not denigrate their value, it simply

12  places them in the niche where they belong.").

1

## CONSENT TO EMPLOYEE'S ACTIONS

2

3  Mattel must also show by a preponderance of the evidence that it did not consent to

4  Bryant's conduct.  Such consent need not be explicit, but can be shown by implied

5  understandings and known customs.

6

7  **Authority:** CACI No. 4102 (2008); Restatement (Third) of Agency § 8.04 cmt. b.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections and Responses Re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Consent to Employee's Actions on the grounds that:

1. This proposed instruction is contrary to the Court's April 25, 2008 Order. The Court has already found as a matter of law that Bryant is liable for breach of the duty of loyalty because he "secretly entered into a contract with Mattel's competitor, while still employed by Mattel, to produce a line of fashion dolls to be marketed in direct competition with Mattel's products." April 25, 2008 Order, at 6. Accordingly, defendants' proposed instruction, which erroneously indicates that the jury could find that Mattel consented to such conduct is improper and misleading.

2. In any event, CACI No. 4102 provides the accurate instruction, as Mattel has proposed: that Mattel did not give "informed consent" to Mr. Bryant's conduct. Defendants' proposal eliminates the requirement that consent must be "informed," and wrongly implies that it need not be explicit. While it is true that consent can be established by either direct or circumstantial evidence, that evidentiary rule does not support defendants' proposed equation with "implied understandings and known customs." Informed consent is required.

**Authority:** CACI No. 4102. *Restatement (Third) of Agency*, § 804, the only authority cited by defendants for a weakened standard of implied rather than informed consent, provides: "Throughout the duration of an agency relationship, an agent has a duty to refrain from competing with the principal and from taking action on behalf of or otherwise assisting the principal's competitors. During that time, an agent may take action, not otherwise wrongful, to prepare for competition following termination of the agency relationship." *See also id.* at § 806 ("(1) Conduct by an agent that would otherwise constitute a breach of duty as stated in 8.01, 8.02, 8.03, 8.04, and 8.05 does not constitute a breach of duty if the principal consents to the conduct, provided that

(a) in obtaining the principal's consent, the agent

(i) acts in good faith,

(ii) *discloses all material facts that the agent knows, has reason to know, or should know would reasonably affect the principal's judgment unless the principal has manifested that such facts are already known by the principal or that the principal does not wish to know them, and*

(iii) otherwise deals fairly with the principal; and

(b) the principal's consent concerns either a specific act or transaction, or acts or transactions of a specified type that could reasonably be expected to occur in the ordinary course of the agency relationship.") (emphasis added).

**1** | **MGA Parties' Response**

**2**

**3** Mattel's characterization of the Court's holding on Bryant's duty of loyalty is problematic.
**4** The Court held that Bryant owed Mattel a duty of loyalty and that he breached it.  Final
**5** Pre-Trial Conference Order at 4.   However, to determine the harm attributable to a breach
**6** of a duty of loyalty, the jury must first be instructed on the nature of that duty and the
**7** breach.

**8**

**9** The MGA Parties have not eliminated the "informed" element of the consent instruction,
**10** but have split the instruction into two sentences, using the terms "implied understandings"
**11** and "known customs" instead.  These terms are clearer and will aid the jury in determining
**12** whether there has been consent, including a determination whether Mattel's course of
**13** conduct allowing employees to moonlight and/or independently work on the artistic
**14** portfolios constituted informed consent to Bryant's conduct.   Restatement (Third) of
**15** Agency § 8.04 cmt. b.

**16**

**17** The parties are permitted to modify the language of any model instruction to make it less
**18** confusing or more appropriate in the context of a particular case.  See McDowell v.
**19** Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth
**20** Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are
**21** not debated and hammered out by legislators, but by ad hoc committees of lawyers and
**22** judges.  Jury instructions do not come down from any mountain or rise up from any sea.
**23** Their precise wording, although extremely useful, is not blessed with any special
**24** precedential or binding authority.  This description does not denigrate their value, it simply
**25** places them in the niche where they belong.").

**26**

**27**

**28**

1 **HARM CAUSED BY BREACH OF THE DUTY OF LOYALTY**

2

3 Mattel must prove by a preponderance of the evidence all facts necessary to show that

4 Bryant's breach of the duty of loyalty was a substantial factor in causing Mattel harm

5 during the term of Bryant's employment.  It is not sufficient to show that Mattel was

6 harmed by Bryant's competition with Mattel after Bryant no longer was employed at

7 Mattel.

8

9 **Authority:** CACI No. 4102 (2008); <u>Bancroft Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 356-57

10 (1966); <u>Charles T. Powner v. Smith</u>, 91 Cal. App. 101 (1928); <u>Sumner v. Nevin</u>, 4 Cal.

11 App. 347, 350-51 (1906); <u>see also</u> <u>Sequoia Vacuum Sys., v. Stansky</u>, 229 Cal. App. 2d 281,

12 286 (1964) (citing <u>Daniel Orifice Fitting Co. v. Whalen</u>, 198 Cal. App. 2d 791, 800

13 (1962)).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **Mattel's Objections**

2

3      Mattel objects to defendants' proposed jury instruction regarding Harm Caused by

4  Breach of the Duty of Loyalty on the following grounds:

5      1.    This proposed instruction is contrary to the Court's April 25, 2008 Order.  The

6  Court has found that Bryant is liable to Mattel for breach of the duty of loyalty.  *See* April

7  25, 2008 Order, at 6.  Accordingly, this proposed instruction, which suggests that Mattel

8  still has to prove it was harmed by Bryant's breach of the duty of loyalty, is improper and

9  misleading.  The only issues left for the jury to determine are the full scope of Bryant's

10  breaches and Mattel's damages.

11      2.    This proposed instruction complicates and confuses the proof of harm

12  required to establish breach of the duty of loyalty, as set forth in the model instruction,

13  with the appropriate assessment of the damages caused by that breach.  CACI No. 4102,

14  like the Mattel proposed instruction, provides only that the jury be instructed that plaintiff

15  must prove: "that Mattel was harmed; and that Mr. Bryant's conduct was a substantial

16  factor in causing Mattel's harm."  *See* Mattel's Proposed Jury Instruction re Breach of the

17  Duty of Loyalty.  Defendants' proposed instruction, by contrast, erroneously states that

18  Mattel must prove that it was harmed "during the term of Bryant's employment," which is

19  unsupported by law and would improperly limit the measure of damages available to

20  Mattel.  That is neither an accurate statement of the law, nor the appropriate issue for the

21  jury's determination of liability.

22

23      **Authority:**  CACI No. 4102.

24

25

26

27

28

201

**MGA Parties' Response**

Mattel's characterization of the Court's holding on Bryant's duty of loyalty is problematic. The Court held that Bryant owed Mattel a duty of loyalty and that he breached it.  Final Pre-Trial Conference Order at 4.   However, to determine the harm attributable to a breach of a duty of loyalty, the jury must first be instructed on the nature of that duty and the breach.

Mattel's objection ignores that Mattel must be harmed by the breach during the term of Bryant's employment and not by Bryant's conduct after he left employment. See Bancroft-Whitney Co. v. Glen, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the costs incurred to replace personnel recruited by president and competitor using confidential information in breach of president's fiduciary duty); GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000) (damages for breach of fiduciary duty were expenses incurred to recruit new employees); Charles T. Powner, Inc. v. Smith, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales resulting from use of employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347, 350 (1906) (damages were commissions received while still employed); see also Design Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary earned during time employee was disloyal, and not the profits from a contract that evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F. Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including employee time used to develop competing products). Courts consistently distinguish between harm incurred while employee still employed and harm from later competition.  See e.g., GAB Bus. Servs., Inc., 83 Cal. App. 4th at 426 (damages for breach of fiduciary duty were expenses incurred to recruit new employees).  Moreover, "[p]roof of serious employee misconduct causing injury to the employer must also be shown before relief will generally be granted."  Sci.

1   <u>Accessories Corp. v. Summagraphics Corp.</u>, 425 A. 2d 957, 965 (Del. 1980). Even an

2   officer (which Bryant indisputably was not), who has a far greater duty to a company, may

3   engage in a competing business while he remains an officer provided that he does not

4   cripple or injure the business.   <u>See</u> <u>Sequoia Vacuum Systems v. Stransky</u>, 229 Cal. App.

5   2d 281, 286 (1964) (citing <u>Daniel Orifice Fitting Co. v. Whalen</u>, 198 Cal. App. 2d 791,

6   800 (1962) ("a party may not enter into a competing enterprise which cripples or injures a

7   business or corporation <u>of which he remains an officer or director</u>") (emphasis added)).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONVERSION CLAIM**

Mattel has asserted a claim for conversion against MGA, Isaac Larian and MGA (HK).

I will now instruct you regarding the law as to this claim.

**CONVERSION — ELEMENTS**

Mattel claims that MGA, Isaac Larian and MGA (HK) wrongfully exercised control over Bryant's BRATZ sketches, which Mattel claims it owns under Section 2(a) of the Inventions Agreement.  To establish this claim, Mattel must prove all of the following:

1. That Mattel owned the BRATZ sketches under Section 2(a) of the Inventions Agreement;

2. That MGA, Larian and MGA (HK) intentionally prevented Mattel from having access to the above-mentioned items for a significant period of time, or destroyed Mattel's personal property;

3. That Mattel did not consent;

4. That Mattel was harmed; and

5. That MGA, Larian and MGA (HK)'s conduct was a substantial factor in causing Mattel's harm.

A conversion claim must relate to tangible physical property.  A conversion claim cannot be based upon property that a party has discarded.

1  **Authority:** CACI No. 2100 (2008); <u>Ananda Church of Self-Realization v. Mass. Bay Ins.</u>

2  <u>Co.</u>, 95 Cal. App. 4th 1273, 1282 (2002); <u>see also</u> <u>Melchior v. New Line Prods., Inc.</u>, 106

3  Cal. App. 4th 779, 793 (2003) (conversion does not apply to ideas).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **Mattel's Objections**

2

3       Mattel objects to defendants' proposed instruction regarding Conversion—Elements

4   on the following grounds:

5       1.      This proposed instruction deviates from the model instruction found in CACI.

6       2.      This proposed instruction is inaccurate and incomplete because it is limited to

7   MGA (HK), but Mattel is asserting conversion claims against MGA and MGA (HK), as

8   well as Isaac Larian.

9       3.      Defendants' proposed instruction is limited to Bryant's BRATZ drawings, but

10  Mattel's conversion claim encompasses Bryant's Bratz drawings as well as other tangible

11  items.

12      4.      Mattel objects to the use of the pejorative term "sketches" when referring to

13  Mr. Bryant's drawings and designs.

14      5.      This proposed instruction is misleading and confusing in that it requires the

15  jury to find that all of defendants intentionally prevented Mattel from having access to the

16  items in question or destroyed Mattel's personal property; under the model instruction, as

17  in Mattel's proposed version, it is sufficient that any of defendants either took possession

18  of the objects or prevented access or destroyed them.

19      6.      While defendants' proposed instruction requires that all defendants' conduct

20  was a substantial factor in causing one of Mattel's harms, it is sufficient, as in Mattel's

21  proposed instruction, that any of defendants' conduct was a substantial factor in causing

22  Mattel's harm.

23      7.      Mattel objects to defendants' claim that a conversion claim "cannot be based

24  upon property that a party has discarded."  With respect to the argument that Mattel

25  internally discarded items Bryant allegedly used in assembling the early Bratz sculpts, that

26  argument, even if true, is irrelevant to defendants' removal and possession of Mattel's

27  property.  Even Mattel's discarded doll parts belong to Mattel.

28      **Authority:** CACI No. 2100.

**MGA Parties' Response**

Mattel's complaint that this instruction deviates from the model is no basis for rejecting it. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case. See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges. Jury instructions do not come down from any mountain or rise up from any sea. Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority. This description does not denigrate their value, it simply places them in the niche where they belong."). Indeed, modification is sometimes necessary to make an instruction accurate and complete. See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

Per the Court's ruling on the MGA Parties' Motion for Partial Summary Judgment, Mattel's conversion claim is limited to tangible property, and may not be applied to ideas or concepts. (See April 25, 2008 Order at 3.)

Mattel's conversion claim must relate to tangible physical property and cannot be based upon discarded property. See Ananda Church of Self-Realization v. Mass. Bay Ins. Co., 95 Cal. App. 4th 1273, 1282 (2002); see also Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793 (2003) (conversion does not apply to ideas). Moreover, Mattel's objection that the conversion claim "encompasses Bryant's Bratz drawings as well as other tangible items" fails to specify what other tangible items Mattel claims were converted,

1 | aside from those already listed in the instruction.  Further, Mattel fails to cite any authority
2 | supporting its mistaken assertion that it can base a claim for conversion on removal of
3 | discarded property, or refuting MGA Parties' contrary authority.

4 |

5 | As to Mattel's complaint regarding the use of "and" between defendants, the alternative –
6 | "or" – is problematic.  "Or" suggests that liability for all could be found if any defendant
7 | met any element.

8 |

9 | The term "sketch" is not pejorative or derogatory and Mattel has not cited anything to
10 | support its contention that the term is "pejorative."  Mattel's own expert used the term
11 | repeatedly in reference to Bryant's works at issue here.  (<u>See, e.g.</u>, Loetz Report, at 2
12 | ("When a designer has an idea, he sketches it out."); <u>id.</u> at 4 ("In Carter Bryant's sketches,
13 | the Bratz figures are posed …."); <u>id.</u> at 6 ("The Bratz sketches were drawn …."); <u>id.</u> at 9
14 | ("It is the industry standard when creating a new toy … to have the original artist draw
15 | sketches"); Loetz Depo. at 83:6-13 ("Q. Does the term 'sketch' versus 'drawing' have any
16 | distinct meaning to you?  A.  Not really …. I don't think there's any real distinction and I
17 | think they're used interchangeably.").)

18 |

19 | The MGA Parties have corrected the instruction and added the conversion claim against
20 | MGA because it is included in the Final Pre-Trial Conference Order.  However, the MGA
21 | Parties note that although Mattel's complaint asserts a conversion claim against all
22 | defendants, in its Motion for Summary Judgment, Mattel does not list this claim as one of
23 | the claims asserted against MGA in Phase One.  (Mattel MSJ at 50:18-20.)  Because
24 | Mattel apparently dropped MGA from the claim for Phase One purposes, and MGA relied
25 | upon that assertion during the summary judgment process, Mattel should be estopped from
26 | now resurrecting the claim against MGA.

27 |

28 |

**PHASE 1 – Affirmative Defenses**

**-REVISED-**

**Affirmative Defenses — General**

I will now instruct you on the affirmative defenses raised by MGA, Isaac Larian, and MGA (HK).  These affirmative defenses will only be considered if Mattel prevails on its claims.

1   **Mattel's Objections**

2

3   Mattel objects on the grounds that the last sentence is unnecessary and improperly

4   suggests that the jury may ease its burden by deciding against Mattel.  Mattel also objects

5   that no jury instructions are needed as to defendants' affirmative defenses because, with

6   few exceptions, they are equitable and not to be decided by the jury.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections and Responses re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**MGA Parties' Response**

While Mattel objects to the last sentence because it is unfavorable to it, Mattel does not and cannot contend that the statement is incorrect as a matter of law. It cannot be disputed dispute that affirmative defenses come into play only if Mattel prevails on its claims, as it would be unnecessary to reach them if Mattel loses on liability.

**-REVISED-**

**Statute of Limitations — Explanation**

The law requires that a plaintiff file its claims within a defined period of time known as a statute of limitations or else the plaintiff may not recover any damages.  Isaac Larian, MGA, and MGA (HK) contend that certain of Mattel's claims were not filed within the time set by law.  To succeed on this defense, <u>first</u> defendants must show when Mattel's claims "accrued" – that is when the statute of limitations began to run on those claims. When a claim "accrues" depends on both the claim and the identity of the defendant.  For the claims at issue, the relevant date that the claim "accrued" is when the wrongful act occurred.  As to each claim, I will explain the relevant date and what each defendant must prove.  <u>Second</u>, defendants must show that plaintiff did not file its claims in court within the prescribed period of time after its claims "accrued."

**Authority:**  CACI No. 4120 (2008); <u>Fox v. Ethicon Endo-Surgery, Inc.</u>, 35 Cal. 4th 797, 807 (2005); <u>Jolly v. Eli Lilly & Co.</u>, 44 Cal. 3d 1103, 1111 (1988).

1  **Mattel's Objections**

2

3       Mattel objects to this proposed instruction on the following grounds:

4       1.     The proposed instruction misstates the law with respect to accrual of Mattel's

5  claims.  Defendants contend that a claim accrues when "the wrongful act occurred."  A

6  vague reference to "the wrongful act" is confusing and contrary to law.  In fact, the proper

7  standard – as set out by the California Supreme Court – is that a claim does not accrue that

8  a claim does not accrue if the plaintiff merely suspects an injury, if "a reasonable

9  investigation at that time would not have revealed a factual basis for that particular cause

10  of action."  Thus, "if a plaintiff's reasonable and diligent investigation discloses only one

11  kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly

12  different sort, the discovery rule postpones accrual of the statute of limitations on the

13  newly discovered claim."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 813 (2005).

14       2.     In any event, this instruction is unnecessary because the issue of when

15  Mattel's claims accrued has already been decided by the Court.  The Court has ruled that

16  the earliest Mattel's claims could have accrued is July 18, 2003.  *See* May 27, 2008 Order

17  re Statute of Limitations Defense, at 8, 9.  Hence, the only issue is whether Mattel can

18  show fraudulent concealment as to its claims for intentional interference with contractual

19  relations and conversion.  The jury need not decide any accrual issues at all.

20       3.     The instruction is improper because it does not acknowledge that the Court

21  held that all but two of Mattel's claims are timely as a matter of law.  Therefore, the

22  proposed instruction's reference to defendant's contention that "certain claims" are

23  untimely may confuse the jury into believing that more than these two claims – tortious

24  interference and conversion – are at issue.

25       4.     Mattel objects to giving this proposed instruction in Phase 1A.  The

26  affirmative defense of statute of limitations will become relevant once the issues of

27  ownership and liability are determined by the jury.  Accordingly, the jury should be

28  instructed on the statutes of limitations in Phase 1B.

1  **MGA Parties' Response**

2

3  The MGA Parties' proposed instruction does not suggest that a single statute of limitations

4  applies to all claims, but rather provides an introductory instruction meant to assist the jury

5  in understanding what is a statute of limitations and how it works.  The instruction also

6  need not lay out which claims are involved, as these are described below.

7

8  Mattel improperly asserts that all of its claims are governed by the discovery rule; however,

9  Mattel's claims for intentional interference with contract and conversion, as the Court

10  determined, accrue upon the occurrence of the wrongful act at issue. The Court's summary

11  judgment rulings left a question of whether these claims are timely open for the jury to

12  decide. Mattel's objection that there is no need to decide any accrual issues at all ignores

13  the Court's ruling that the accrual of these claims depends on the jury's findings

14  concerning fraudulent concealment. <u>See</u> June 2, 2008 Order at 3.

15

16  Even if they were somehow relevant, Mattel's objections concerning the discovery rule

17  standard set forth an incorrect standard. In California, inquiry notice is triggered by a mere

18  suspicion or any reason to suspect that wrongdoing has taken place.  <u>See</u> <u>Jolly v. Eli Lilly</u>

19  <u>& Co.</u>, 44 Cal. 3d 1103, 1111 (1988) ("[o]nce the plaintiff has a <u>suspicion</u> of wrongdoing,

20  and therefore an incentive to sue, she must decide whether to file suit or sit on her rights")

21  (emphasis added); <u>see also</u> <u>Fox v. Ethicon Endo-Surgery</u>, 35 Cal. 4th 797, 803 (2005) ("a

22  cause of action accrues and the statute of limitations begins to run when the plaintiff has

23  <u>reason to suspect</u> an injury and some wrongful cause, unless the plaintiff pleads and proves

24  that a reasonable investigation at that time would not have revealed a factual basis for that

25  particular cause of action") (emphasis added). Contrary to Mattel's claims, the suspicion

26  need not be of the specific claim eventually sued upon: "under California law, a plaintiff

27  'need not be aware of the specific facts necessary to establish the claim' in order for a

28  cause of action to accrue. Nor need he be aware of the particular legal theory that will

214

support it. His claim accrues 'when, simply put, he at least suspects ... that someone has done something wrong to him.'" <u>Soliman v. Philip Morris Inc.</u>, 311 F.3d 966, 971-72 (9th Cir. 2002) (internal citations omitted), citing <u>Norgart v. Upjohn Co.</u>, 21 Cal. 4th 383, 397 (1999), and <u>Jolly</u>, 44 Cal. 3d at 1110-11; <u>id.</u> at 1110 n.7 (the "wrong" that plaintiff is to be aware of for purposes of the statute of limitations need not be in any technical sense, but rather in accordance with its "lay understanding"); <u>see also</u> <u>Butler v. San Diego Dist. Attorneys Office</u>, 2007 WL 935711, at *3 (S.D. Cal. Feb. 27, 2007) (in California, "the statute of limitations begins to run when the plaintiff suspects or should suspect that someone has done something wrong to him").

The MGA Parties' Instructions did not indicate whether affirmative defenses would be heard in Phase 1A or 1B, and thus are no inconsistent with the Court's ruling on this issue.

**-REVISED-**

**Mattel's Date of Filing Of Its Claims**

For purposes of the statute of limitations at issue, Mattel filed its claims against MGA, MGA (HK) and Larian on April 27, 2004.

1  **Mattel's Objections**

2

3      Mattel objects to this proposed instruction on the following grounds:

4      1.      Mattel objects to this instruction as unnecessary in light of the Court's prior

5  rulings.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MGA Parties' Response**

This instruction is necessary to give the jury complete information in assessing statute of limitations issues.   The jury should not be expected to glean this information from the Court's substantive decisions.

1 **Defense: Statute of Limitations (Breach of Duty of Loyalty)**

2 *-NO LONGER APPLICABLE AND WITHDRAWN-*

**-REVISED-**

**Defense: Statute of Limitations (Intentional Interference with Contract)**

Isaac Larian and MGA contend that Mattel's intentional interference with contract claim was not filed within the time set by law.

To succeed on this defense, Isaac Larian and/or MGA must prove that Mattel did not file its claims against them within two years of the occurrence of the acts that Mattel contends were wrongful, in this case the alleged breach of Carter Bryant's contracts with Mattel. The claim "accrues" whether or not Mattel actually knew of the acts at the time, unless Mattel can prove that Isaac Larian or MGA fraudulently concealed the facts of the claim.

In order to prove fraudulent concealment, Mattel must show:

    1.   Isaac Larian or MGA took affirmative steps to conceal the information Mattel would have needed to suspect that wrongdoing had taken place; <u>and</u>

    2.   Mattel was not aware, and could not have been aware, that wrongdoing had taken place.

    3.   If Mattel was aware or could have been aware that wrongdoing had taken place, it does not matter whatever the lengths to which a defendant may have gone to conceal the wrongs.

**Authority:** <u>See</u> Cal. Civ. Proc. Code § 339(1); <u>Forcier v. Microsoft Corp.</u>, 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000); <u>Charles Lowe Co. v. Xomox Corp.</u>, No. C95-0498 SI, 1999 WL 1293362, at *9 (N.D. Cal. Dec. 27, 1999); <u>Menefee v. Ostawari</u>, 228 Cal. App. 3d 239, 245 (1991); 3 B.E. Witkin, <u>Cal. Procedure: Actions</u>, § 575, at 728 (4th ed. 1996); <u>Garamendi v. SDI Venodome SA</u>, 276 F. Supp. 2d 1030, 1041-42 (C.D. Cal 2003) ("Although a culpable defendant cannot be permitted to benefit from intentional concealment, any period of equitable tolling will come to an end once the plaintiff has, or

1  should have, notice of his claim."); <u>Snapp & Assoc. Ins. Servs., Inc. v. Malcolm Bruce</u>

2  <u>Burlingame Robertson</u>, 96 Cal. App. 4th 884, 890-891 (2002) ("The fraudulent

3  concealment doctrine 'does not come into play, whatever the lengths to which a defendant

4  has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.'")

**Mattel's Objections**

Mattel objects to this proposed instruction on the following grounds:

1.      The instruction is improper because it creates an artificial three-element test for fraudulent concealment.  None of the authorities cited by defendants employ this test. Further, the third element of defendants' purported test is biased and confusing because it states that "it does not matter to whatever length a defendant may have gone to conceal his wrong," if Mattel "was aware or could have been aware that wrongdoing had taken place." As explained above, to be on notice of its claims, Mattel had to have been aware of the specific wrongdoing alleged in this action.  A claim does not accrue – and the tolling based upon fraudulent concealment does not terminate – if the wrongdoing suspected was qualitatively different from the wrongdoing at issue in the action.  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 813 (2005).  The generic references to "wrongdoing" in the first two elements of defendants' three element test are improper for the same reason.  As a matter of law, if there was tolling, it did not end before July 18, 2003, which, as the Court has ruled, is the earliest Mattel's claims could have accrued.  *See* May 27, 2008 Order re Statute of Limitations Defense, at 8.

2.      Defendants' contention that constructive notice is sufficient to end the tolling due to defendants' fraudulent concealment is contrary to law.  "[N]ear-actual" notice, rather than "inquiry notice," is the governing standard.  *Garamendi v. SDI Vendome SA*, 276 F. Supp. 2d 1030, 1042-3 (C.D. Cal 2003); *Hynix Semiconductor*, 2007 WL 3284060, *3 (N.D. Cal. 2003) (tolling based on fraudulent concealment ends when the plaintiff has "a suspicion of wrongdoing, ***coupled with a knowledge*** of the harm and its cause") (emphasis added).

3.      Mattel respectfully requests that the Court adopt Mattel's proposed instruction regarding fraudulent concealment, which properly sets forth the law on these issues.

4.      Mattel objects to giving this proposed instruction in Phase 1A.  The affirmative defense of statute of limitations will become relevant once the issues of

222

1  ownership and liability are determined by the jury.  Accordingly, the jury should be

2  instructed on the statutes of limitations in Phase 1B.

1 | **MGA Parties' Response**

2

3 | The MGA Parties' three-part instruction on fraudulent concealment merely breaks up a
4 | complex idea into its components.   Mattel cannot deny that "the rule of fraudulent
5 | concealment provides that a defendant's fraud in concealing a cause of action against him
6 | tolls the applicable statute of limitations."  Garamendi v. SDI Vendome S.A., 276 F. Supp.
7 | 2d 1030, 1041 (C.D. Cal. 2003).   Nor can Mattel deny that "[a]lthough a culpable
8 | defendant cannot be permitted to benefit from intentional concealment, any period of
9 | equitable tolling will come to an end once the plaintiff has, or should have, notice of his
10 | claim." Id. at 1042.  This is all that the MGA Parties have conveyed with their definition.

11

12 | Mattel's assertion that tolling based on fraudulent concealment ends only once Mattel has
13 | "near-actual" knowledge of the wrongdoing at issue is wrong. Under California law, "a
14 | suspicion of wrongdoing, coupled with a knowledge of the harm and its cause" is
15 | sufficient to end tolling based on fraudulent concealment. Snapp & Assocs. Ins. Servs.,
16 | Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 890-91 (2002); see
17 | also Platt Elec. Supply, Inc. v. EOFF Elec., Inc., 522 F.3d 1049, 1056 (9th Cir. 2008)
18 | (inquiry notice ends tolling based on fraudulent concealment); Soliman v. Philip Morris
19 | Inc., 311 F.3d 966, 971-72 (9th Cir. 2002) (plaintiff "need not be aware of the specific
20 | 'facts' necessary to establish the claim" for him to be on inquiry notice,  nor need he be
21 | aware of the particular legal theory that will support it; his claim accrues "when, simply
22 | put, he at least 'suspects ... that someone has done something wrong' to him"). Mattel's
23 | theory of fraudulent concealment is also improper to the extent it suggests that fraudulent
24 | concealment by one defendant would necessarily toll the statute as to another defendant
25 | not found culpable in the alleged concealment. See Sanchez v. South Hoover Hospital, 18
26 | Cal. 3d 93, 100 ("The rationale for the foregoing rule [of fraudulent concealment] is that
27 | the culpable defendant should be estopped from profiting by his own wrong [t]o the extent

28

1  that it hindered an 'otherwise diligent' plaintiff in discovering his cause of action.")

2  (emphasis added).

3

4  Mattel's Proposed Instruction on Fraudulent Concealment is problematic for the reasons

5  discussed in the MGA Parties' objection thereto.

6

7  The MGA Parties' Instructions did not indicate whether affirmative defenses would be

8  heard in Phase 1A or 1B, and thus are no inconsistent with the Court's ruling on this issue.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **Defense: Statute of Limitations (Aiding and Abetting Breach of Fiduciary Duty)**

2  *-NO LONGER APPLICABLE AND WITHDRAWN-*

3

4  **Defense: Statute of Limitations (Aiding and Abetting Breach of Duty of Loyalty)**

5  *-NO LONGER APPLICABLE AND WITHDRAWN-*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections and Responses re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1 | **Defense: Statute of Limitations (Copyright Infringement)**

2 | *-NO LONGER APPLICABLE AND WITHDRAWN-*

**-REVISED-**

**Defense: Statute of Limitations (Conversion)**

MGA, Isaac Larian, and MGA (HK) contend that Mattel's conversion claim was not filed within the time set by law.

To succeed on this defense, MGA, Isaac Larian and/or MGA (HK) must prove that Mattel did not file its claims within three years of the act of wrongfully taking the property that Mattel contends was converted. The claim "accrues" whether or not Mattel actually knew of the acts at the time, unless Mattel can prove that Isaac Larian or MGA (HK) fraudulently concealed the facts of the claim.

In order to prove fraudulent concealment, Mattel must show:

    1.    MGA, Isaac Larian or MGA (HK) took affirmative steps to conceal the information Mattel would have needed to suspect that wrongdoing had taken place; and

    2.    Mattel was not aware, and could not have been aware, that wrongdoing had taken place.

    3.    If Mattel was aware or could have been aware that wrongdoing had taken place, it does not matter whatever the lengths to which a defendant may have gone to conceal the wrongs.

**Authority:** Cal. Civ. Proc. Code § 338(c); AmerUS Life Ins. Co. v. Bank of Am., N.A., 143 Cal. App. 4th 631, 639 (2006); Strasberg v. Odyssey Group, Inc., 51 Cal. App. 4th 906, 916 (1996); Garamendi v. SDI Venodome SA, 276 F. Supp. 2d 1030, 1041-42 (C.D. Cal 2003) ("Although a culpable defendant cannot be permitted to benefit from intentional concealment, any period of equitable tolling will come to an end once the plaintiff has, or should have, notice of his claim."); Snapp & Assoc. Ins. Servs., Inc. v. Malcolm Bruce

1 | Burlingame Robertson, 96 Cal. App. 4th 884, 890-891 (2002) ("The fraudulent
2 | concealment doctrine 'does not come into play, whatever the lengths to which a defendant
3 | has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.'").

**Mattel's Objections**

Mattel objects to defendants' proposed instruction on the following grounds:

1.       The instruction is improper because it creates an artificial three-element test for fraudulent concealment.  None of the authorities cited by defendants employ this test.  Further, the third element of defendants' purported test is biased and confusing because it states that "it does not matter to whatever length a defendant may have gone to conceal his wrong," if Mattel "was aware or could have been aware that wrongdoing had taken place."  As explained above, to be on notice of its claims, Mattel had to have been aware of the specific wrongdoing alleged in this action.  A claim does not accrue – and the tolling based upon fraudulent concealment does not terminate – if the wrongdoing suspected was qualitatively different from the wrongdoing at issue in the action.  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 813 (2005).  The generic references to "wrongdoing" in the first two elements of defendants' three element test are improper for the same reason.  As a matter of law, if there was tolling, it did not end before July 18, 2003, which, as the Court has ruled, is the earliest Mattel's claims could have accrued.  *See* May 27, 2008 Order re Statute of Limitations Defense, at 8.

2.       Defendants' contention that constructive notice is sufficient to end the tolling due to defendants' fraudulent concealment is contrary to law.  "[N]ear-actual" notice, rather than "inquiry notice," is the governing standard.  *Garamendi v. SDI Vendome SA*, 276 F. Supp. 2d 1030, 1042-3 (C.D. Cal 2003); *Hynix Semiconductor*, 2007 WL 3284060, *3 (N.D. Cal. 2003) (tolling based on fraudulent concealment ends when the plaintiff has "a suspicion of wrongdoing, ***coupled with a knowledge*** of the harm and its cause") (emphasis added).

3.       Mattel respectfully requests that the Court adopt Mattel's proposed instruction regarding fraudulent concealment, which properly sets forth the law on these issues.

4.       The proposed instruction states that only MGA (HK) and Larian contest the timeliness of the conversion claim.  Mattel's counterclaim is directed at all defendants,

including MGA Entertainment Inc.  If MGA Entertainment, Inc. concedes that the conversion claim against it is timely, then the jury instruction should so state.  Otherwise, the proposed instruction will be confusing to the jury.

5.    Mattel objects to giving this proposed instruction in Phase 1A.  The affirmative defense of statute of limitations will become relevant once the issues of ownership and liability are determined by the jury.  Accordingly, the jury should be instructed on the statutes of limitations in Phase 1B.

1 **MGA Parties' Response**

2

3  The MGA Parties' three-part instruction on fraudulent concealment merely breaks up a

4  complex idea into its components.   Mattel cannot deny that "the rule of fraudulent

5  concealment provides that a defendant's fraud in concealing a cause of action against him

6  tolls the applicable statute of limitations." Garamendi v. SDI Vendome S.A., 276 F. Supp.

7  2d 1030, 1041 (C.D. Cal. 2003).   Nor can Mattel deny that "[a]lthough a culpable

8  defendant cannot be permitted to benefit from intentional concealment, any period of

9  equitable tolling will come to an end once the plaintiff has, or should have, notice of his

10 claim." Id. at 1042.  This is all that the MGA Parties have conveyed with their definition.

11

12 Mattel's assertion that tolling based on fraudulent concealment ends only once Mattel has

13 "near-actual" knowledge of the wrongdoing at issue is wrong. Under California law, "a

14 suspicion of wrongdoing, coupled with a knowledge of the harm and its cause" is

15 sufficient to end tolling based on fraudulent concealment. Snapp & Assocs. Ins. Servs.,

16 Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 890-91 (2002); see

17 also Platt Elec. Supply, Inc. v. EOFF Elec., Inc., 522 F.3d 1049, 1056 (9th Cir. 2008)

18 (inquiry notice ends tolling based on fraudulent concealment); Soliman v. Philip Morris

19 Inc., 311 F.3d 966, 971-72 (9th Cir. 2002) (plaintiff "need not be aware of the specific

20 'facts' necessary to establish the claim" for him to be on inquiry notice,  nor need he be

21 aware of the particular legal theory that will support it; his claim accrues "when, simply

22 put, he at least 'suspects ... that someone has done something wrong' to him"). Mattel's

23 theory of fraudulent concealment is also improper to the extent it suggests that fraudulent

24 concealment by one defendant would necessarily toll the statute as to another defendant

25 not found culpable in the alleged concealment. See Sanchez v. South Hoover Hospital, 18

26 Cal. 3d 93, 100 ("The rationale for the foregoing rule [of fraudulent concealment] is that

27 the culpable defendant should be estopped from profiting by his own wrong [t]o the extent

28

1    that it hindered an 'otherwise diligent' plaintiff in discovering his cause of action.")
2    (emphasis added).

3

4    The MGA Parties have modified this instruction to reflect the missing conversion claim
5    against MGA because it is included in the Final Pre-Trial Conference Order.  However, the
6    MGA Parties note that although Mattel's complaint asserts a conversion claim against all
7    defendants, in its Motion for Summary Judgment, Mattel does not list this claim as one of
8    the claims asserted against MGA in Phase One.  (Mattel MSJ at 50:18-20.)  Because
9    Mattel apparently dropped MGA from the claim for Phase One purposes, and MGA relied
10   upon that assertion during the summary judgment process, Mattel should be estopped from
11   now resurrecting the claim against MGA.

12

13   Mattel's Proposed Instruction on Fraudulent Concealment is problematic for the reasons
14   discussed in the MGA Parties' objection thereto.

15

16   The MGA Parties' Instructions did not indicate whether affirmative defenses would be
17   heard in Phase 1A or 1B, and thus are no inconsistent with the Court's ruling on this issue.

18

19

20

21

22

23

24

25

26

27

28

1  **<u>Defense: Statute of Limitations (Statutory Unfair Competition)</u>**

2  *-NO LONGER APPLICABLE AND WITHDRAWN-*

**-REVISED-**

**Laches: Introduction**

Isaac Larian, MGA, and MGA (HK) contend that Mattel's claims are barred because Mattel delayed unreasonably in filing suit such that the defendants were prejudiced. The legal term for the doctrine of unreasonable delay is "laches." This doctrine is based on the rule that "equity aids the vigilant." Accordingly, those who neglect their rights may be precluded from obtaining relief. Although I will make the ultimate determination whether laches has been shown in this case, I am going to ask you to make certain findings to assist me in making that determination and so will instruct you on the law to better assist you in making your factual findings.

**Authority:** 11 B.E. Witkin, <u>Summary of California Law: Equity</u> § 14 (4th ed. 2006).

235

**1** **Mattel's Objections**

**2**

**3**     Mattel objects to defendants' proposed instruction regarding Laches on the

**4** following grounds:

**5**     1.     Defendants' proposed jury instruction is contrary to the Court's April 25, 2008

**6** Order.  As recognized by the Court, laches is an equitable defense to be tried to the Court,

**7** not the jury, and the Court has deferred ruling on this affirmative defense until after trial.

**8** *See* April 25, 2008 Order, at 7.  The Court's finding is well supported by case law.  *See,*

**9** *e.g.*, *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir.

**10** 1996) ("a litigant is not entitled to have a jury resolve a disputed affirmative defense if the

**11** defense is equitable in nature."); *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d

**12** 165, 170 (9th Cir. 1989) (equitable issues may be tried separately from legal issues without

**13** infringing the right to jury trial under the Seventh Amendment); *Danjac LLC v. Sony*

**14** *Corp.*, 263 F.3d 942, 962-63 (9th Cir. 2001) (holding that there is no right to jury on

**15** equitable defense of laches in copyright arena); *see also Westinghouse Elec. Corp. v. Gen.*

**16** *Circuit Breaker & Elec. Supply Inc.*, 106 F.3d 894, 899 (noting in part that laches is

**17** equitable); 11 B.E. WITKIN, SUMMARY OF CALIFORNIA LAW, EQUITY § 14 (a)(2)

**18** (9th ed. 1987).

**19**     2.     Additionally, defendants' proposed instruction ignores that, where a plaintiff

**20** files suit within the limitations period, "the strong presumption is that laches is

**21** inapplicable." *Jarrow v. Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835-36 (9th

**22** Cir. 2002).  *See also Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1041, n.8 (9th Cir.

**23** 2000) ("When a limitation on the period for bringing suit has been set by statute, laches

**24** will generally not be invoked to shorten the statutory period.").

**25**     3.     Although defendants apparently recognize that the Court will make the

**26** "ultimate determination" regarding laches, their proposed instruction is confusing to the

**27** extent it informs the jury that it will be asked to make certain factual findings, without

**28** providing any explanation of what such findings would be.  In any event, it is unnecessary

1  and prejudicial to "instruct [the jury] on the law" regarding laches if the jury is simply

2  being asked to make factual findings to assist the Court's determination of the issue as a

3  matter of law.  Defendants are simply trying to overcomplicate the issues before the jury.

4         4.        In any event, defendants cannot assert laches, an equitable defense, with

5  respect to the legal claims against them for intentional interference with contractual

6  relations and aiding and abetting breach of fiduciary duty and the duty of loyalty.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MGA Parties' Response**

To begin with, Mattel mischaracterizes the import of the Court's decision to defer ruling on certain affirmative defenses.  While the Court may ultimately rule on the effect of these defenses, it is apparent from the Court's Order that it expects the jury to make the factual determinations underlying its decision.  <u>See</u> Final Pre-Trial Conference Order at 8.

Contrary to Mattel's objection, laches is a defense that should be submitted to the jury. At a minimum, whether delay is unreasonable and whether a party has been prejudiced by such delay are fact questions for the jury. <u>See</u> <u>Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply</u>, 106 F.3d 894, 899 (9th Cir. 1997) (upholding district court's ruling where jury decided questions central to defenses of laches, equitable estoppel, acquiescence, and unclean hands); <u>see also</u> <u>U.S. Fidelity & Guar. Co. v. Lee Invs. LLC</u>, 2008 WL 746541, at *13 (E.D. Cal. Mar. 18, 2008) (laches, estoppel, waiver and unclean hands submitted to jury); <u>San Francisco Bay Area Rapid Transit Dist. v. Spencer</u>, 2007 WL 1450350, at *10 (N.D. Cal. May 14, 2007) (laches submitted to jury).  Even if the Court chooses to make the ultimate decision as to whether this defense will bar Mattel's claims (although courts routinely submit the entire defense to the jury), the jury must still make the factual determinations that underlie the Court's decision.  Because the facts underlying this defense are inextricably intertwined with the facts underlying Mattel's claims, taking those factual determinations away from the jury would violate defendants' Seventh Amendment jury rights, as explained in detail in the opposition to Mattel's Motion in Limine No. 4.  Accordingly, the jury should be given a proper framework for making those factual determinations.

As to Mattel's assertion that laches only applies to certain "equitable" state law claims, Mattel's "counter-instruction", along with its objections, ignores that laches <u>is</u> also a defense to copyright actions.  Indeed, courts have stated quite emphatically:  "[i]t is

1   inequitable for the [alleged] owner of a copyright, with full notice of an intended

2   infringement, to stand inactive while the proposed infringer spends large sums of money in

3   its exploitation, and to intervene only when his speculation has proved a success.  Delay

4   under such circumstances allows the owner to speculate without risk with the other's

5   money; he cannot possibly lose, and he may win." Haas v. Leo Feist, Inc., 234 F. 105, 108

6   (S.D.N.Y. 1916); see also Danjaq LLC v. Sony Corp., 263 F.3d 942, 954 (9th Cir. 2001);

7   Watermark Publishers v. High Tech. Sys., Inc., 1997 WL 717677, 44 U.S.P.Q.2d 1578,

8   1583-84 (S.D. Cal. 1997) (barring plaintiff's claims on laches grounds after 4 year delay in

9   suing).   In addition to being inappropriate, Mattel's objection is disingenuous: Mattel

10  concedes that this defense is applicable to copyright in its motion for partial summary

11  judgment.  (See Mattel MSJ at n.138.)

12

13  Mattel's suggestion that "where a plaintiff files suit within the limitations period, 'the

14  strong presumption is that laches is inapplicable'" is uncontroversial, but as Mattel itself

15  states, it is a presumption.  Thus, it should affect the Court's final decision, not the jury's

16  fact-finding.  Adding it will only prejudice the defendants by suggesting to them that their

17  findings of fact should be skewed.  Moreover, Mattel omits that the cases holding "[i]f

18  plaintiff filed suit within the analogous limitations period, the strong presumption is that

19  laches is inapplicable" are irrelevant as Mattel's claims are facially time-barred (i.e., not

20  filed within the limitations period) and these claims only survive because the Court

21  permitted Mattel to rely on relation-back, doe-defendant, and other tolling theories to

22  revive them. Where, as here, a plaintiff files suit after the limitations period, the

23  presumption regarding laches is reversed and it is strongly presumed that laches does

24  apply. Jarrow Formulas v. Nutrition Now, 304 F.3d 829, 838 (9th Cir. 2002).

25

26  The MGA Parties' Instructions did not indicate whether affirmative defenses would be

27  heard in Phase 1A or 1B, and thus are no inconsistent with the Court's ruling on this issue.

28

# -REVISED-

## Defense: Laches

Mattel's suit against MGA, MGA (HK), and/or Larian is barred by the doctrine of laches if you find that:

1. Mattel's delay in filing suit was unreasonable in light of Mattel's knowledge of its claims against MGA, MGA (HK), and/or Larian; and

2. Mattel's delay was prejudicial to MGA, MGA (HK), and/or Larian in light of investments of time and money that MGA and/or Larian made; *or*

3. Mattel's delay was prejudicial to MGA, MGA (HK), and/or Larian in that substantial evidence has been lost and memories faded in the years since Mattel was first on notice of its claims.

**Authority:**   Danjaq LLC v. Sony Corp., 263 F.3d 942, 954 (9th Cir. 2001) ("delay is impermissible when its purpose is to capitalize on the value of the alleged infringer's labor, by determining whether the infringing conduct will be profitable"); see also Watermark Publrs. v. High Tech. Sys., Inc., No. 95-3839-IEG (CGA), 1997 WL 717677, 44 U.S.P.Q.2d 1578, 1583-84 (S.D. Cal. 1997) (barring plaintiff's claims on laches grounds after 4 year delay in suing).

1 | **Mattel's Objections**

2

3       Mattel objects to defendants' proposed instruction regarding Laches on the
4 | following grounds:

5       1.    Defendants' proposed jury instruction is contrary to the Court's April 25, 2008
6 | Order. As recognized by the Court, laches is an equitable defense to be tried to the Court,
7 | not the jury, and the Court has deferred ruling on this affirmative defense until after trial.
8 | *See* April 25, 2008 Order, at 7. The Court's finding is well supported by case law. *See*
9 | Mattel's Objection to Defendants' Proposed Jury Instruction re Laches: Introduction.

10       2.    In any event, defendants' instruction is inaccurate because it does not inform
11 | the jury that the laches defenses only applies, if at all, to Mattel's declaratory relief claim,
12 | to the extent it is equitable in nature. Defendants cannot assert laches, an equitable
13 | defense, with respect to the legal claims against them for intentional interference with
14 | contractual relations and aiding and abetting breach of fiduciary duty and the duty of
15 | loyalty.

16       3.    The proposed instruction fails to notify the jury that if they determine that
17 | Mattel's declaratory relief claim was filed within the applicable statute of limitations
18 | period, there is a strong presumption that a laches defense is unavailable.

19       4.    This proposed instruction also misstates the law in paragraphs two and three,
20 | which are unsupportable. The standard is not merely whether defendants made
21 | investments, or whether memories have faded.

22       5.    In any event, it is unnecessary and prejudicial to "instruct [the jury] on the
23 | law" regarding laches if the jury is simply being asked to make factual findings to assist
24 | the Court's determination of the issue as a matter of law. Defendants are simply trying to
25 | overcomplicate the issues before the jury.

26       6.    *Counter-Instruction*: If the Court decides, in spite of its April 25, 2008 Order
27 | and Mattel's objections, that a laches instruction should be given to a jury, it should be as
28 | follows:

A Mattel claim against MGA, MGA (HK) and/or Larian could be barred by the doctrine of laches only if you find that defendants have proven that:

1.    Mattel delayed in filing its lawsuit; and

2.    That delay was unreasonable because Mattel actually know of its claims long before it sued defendants; and

3.    Mattel's delay in filing suit was prejudicial to MGA, MGA (HK) and Larian because they took actions or suffered consequences that they would not have, had Mattel brought suit much sooner, which have been detrimental or damaging to defendants.

4.    I instruct you that if Mattel filed its claims within the applicable statute of limitations period, there is a strong presumption that laches does not apply.

**Authority**:  *Granite State Ins. Co. v. Smart Modular Techns., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996); *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir. 1989); *Jarrow v. Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835-36 (9th Cir. 2002); *Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1041, n.8 (9th Cir. 2000); *Russell v. Price*, 612 F.2d 1123, 1125-26 (9th Cir. 1979); *Danjaq, LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001); 11 B.E. WITKIN, SUMMARY OF CALIFORNIA LAW, EQUITY § 14 (a)(2) (9th ed. 1987).

**MGA Parties' Response**

To begin with, Mattel mischaracterizes the import of the Court's decision to defer ruling on certain affirmative defenses. While the Court may ultimately rule on the effect of these defenses, it is apparent from the Court's Order that it expects the jury to make the factual determinations underlying its decision. See Final Pre-Trial Conference Order at 8.

Contrary to Mattel's objection, laches is a defense that should be submitted to the jury. At a minimum, whether delay is unreasonable and whether a party has been prejudiced by such delay are fact questions for the jury Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply, 106 F.3d 894, 899 (9th Cir. 1997) (upholding district court's ruling where jury decided questions central to defenses of laches, equitable estoppel, acquiescence, and unclean hands); see also U.S. Fidelity & Guar. Co. v. Lee Invs. LLC, 2008 WL 746541, at *13 (E.D. Cal. Mar. 18, 2008) (laches, estoppel, waiver and unclean hands submitted to jury); San Francisco Bay Area Rapid Transit Dist. v. Spencer, 2007 WL 1450350, at *10 (N.D. Cal. May 14, 2007) (laches submitted to jury).

Even if the Court chooses to make the ultimate decision as to whether this defense will bar Mattel's claims (although courts routinely submit the entire defense to the jury), the jury must still make the factual determinations that underlie the Court's decision. Because the facts underlying this defense are inextricably intertwined with the facts underlying Mattel's claims, taking those factual determinations away from the jury would violate defendants' Seventh Amendment jury rights, as explained in detail in the opposition to Mattel's Motion in Limine No. 4. Accordingly, the jury should be given a proper framework for making those factual determinations.

As to Mattel's assertion that laches only applies to certain "equitable" state law claims, Mattel's "counter-instruction", along with its objections, ignores that laches is also a

1   defense to copyright actions.   Indeed, courts have stated quite emphatically:   "[i]t is
2   inequitable for the [alleged] owner of a copyright, with full notice of an intended
3   infringement, to stand inactive while the proposed infringer spends large sums of money in
4   its exploitation, and to intervene only when his speculation has proved a success.   Delay
5   under such circumstances allows the owner to speculate without risk with the other's
6   money; he cannot possibly lose, and he may win." Haas v. Leo Feist, Inc., 234 F. 105, 108
7   (S.D.N.Y. 1916); see also Danjaq LLC v. Sony Corp., 263 F.3d 942, 954 (9th Cir. 2001);
8   Watermark Publishers v. High Tech. Sys., Inc., 1997 WL 717677, 44 U.S.P.Q.2d 1578,
9   1583-84 (S.D. Cal. 1997) (barring plaintiff's claims on laches grounds after 4 year delay in
10  suing).   In addition to being inappropriate, Mattel's objection is disingenuous: Mattel
11  concedes that this defense is applicable to copyright in its motion for partial summary
12  judgment. (See Mattel MSJ at n.138.)

13

14  Mattel's suggestion that "where a plaintiff files suit within the limitations period, 'the
15  strong presumption is that laches is inapplicable'" is uncontroversial, but as Mattel itself
16  states, it is a presumption.   Thus, it should affect the Court's final decision, not the jury's
17  fact-finding.   Adding it will only prejudice the defendants by suggesting to them that their
18  findings of fact should be skewed.   Moreover, Mattel omits that the cases holding "[i]f
19  plaintiff filed suit within the analogous limitations period, the strong presumption is that
20  laches is inapplicable" are irrelevant as Mattel's claims are facially time-barred (i.e., not
21  filed within the limitations period) and these claims only survive because the Court
22  permitted Mattel to rely on relation-back, doe-defendant, and other tolling theories to
23  revive them. Where, as here, a plaintiff files suit after the limitations period, the
24  presumption regarding laches is reversed and it is strongly presumed that laches does
25  apply. Jarrow Formulas v. Nutrition Now, 304 F.3d 829, 838 (9th Cir. 2002).

26

27  Mattel's objection that the test for "prejudice" is misstated is completely unsupported, as
28  Mattel cites no contrary law. Courts recognize two chief forms of prejudice: evidentiary

1    prejudice and expectations-based prejudice. <u>Danjaq,</u> 263 F.3d at 955.   Evidentiary

2    prejudice involves "lost, stale, or degraded evidence, or witnesses whose memories have

3    faded or who have died." <u>Id.</u>  Expectations-based prejudice involves a "showing [by

4    defendant] that it took actions or suffered consequences that it would not have, had the

5    plaintiff brought suit promptly." <u>Id.</u>  Either form, standing alone, meets the prejudice

6    prong. <u>Id.</u>

7

8    Mattel's proposed counter-instruction is patently inadequate.  It does not explain the

9    concept of laches, nor the types or prejudice that would justify application of the doctrine.

10   Mattel seeks to present the defense as so vague and obtuse that the jury will simply ignore

11   it.  In addition, Mattel's attempt to have this Court tell the jury that there is a presumption

12   that laches does not apply because the suit was filed within the limitations period is

13   baseless.  It is undisputed that Mattel's claims were <u>not</u> filed within the limitations period

14   and may survive if (and only if) the Court permits tolling under the relation back or some

15   other equitable doctrine.   Thus, the cases holding "[i]f plaintiff filed suit within the

16   analogous limitations period, the strong presumption is that laches is inapplicable" are

17   irrelevant as Mattel's claims are facially time-barred and Mattel relies on relation-back and

18   tolling theories to revive them. Where, as here, a plaintiff files suit <u>after</u> the limitations

19   period, the presumption is reversed. <u>Jarrow Formulas v. Nutrition Now</u>, 304 F.3d 829, 838

20   (9th Cir. 2002).  Accordingly, if Mattel's instruction is to be given, Paragraph 4 should be

21   re-written to read, "I instruct you that unless Mattel proves that it filed its claims within the

22   applicable statute of limitations period, there is a strong presumption that the laches

23   defense applies."

24

25   The MGA Parties' Instructions did not indicate whether affirmative defenses would be

26   heard in Phase 1A or 1B, and thus are no inconsistent with the Court's ruling on this issue.

27

28

# -REVISED-

## Affirmative Defense – Waiver

Larian, MGA and MGA (HK) contend that Bryant was not bound by his agreement with Mattel because Mattel gave up its right to enforce those agreements. Mattel denies this contention and believes that it did not relinquish such rights.

You may find that Mattel waived any right to seek damages for Carter Bryant's alleged breaches arising out of its agreement with Bryant if you find that Mattel acted inconsistently with an intent to enforce its employment agreements and that a reasonable person would have believed that Mattel did not intend to enforce its employment agreements.

A waiver may be express, based on the words of the waiving party, or implied, based on conduct so inconsistent with the intent to enforce a right as to induce a reasonable belief that such right has been relinquished.  Waiver does not require any act or conduct by the other party.

To show a waiver, MGA, MGA (HK), and/or Larian must prove that:

1.      Mattel was aware of its employees' alleged breaches of their employment agreements; and

2.      Mattel indicated, by its words, actions or silence that it did not intend to enforce its employment agreements.

**Authority:** CACI No. 336; <u>Waller v. Truck Ins. Exch.</u>, 11 Cal. 4th 1, 31 (1995); <u>see also</u> <u>Veeck v. S. Bldg. Code Congress Int'l Inc.</u>, 241 F.3d 398, 409 (5th Cir. 2001) ("A right

1  such as copyright may be waived by inaction."); <u>Davis v. Blue Cross of N. Cal.</u>, 25 Cal. 3d

2  418 (1979) (carrier's inaction amounted to a waiver of its right to demand arbitration).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Waiver for the following reasons:

1. Defendants' proposed jury instruction is contrary to the Court's April 25, 2008 Order. As recognized by the Court, waiver is an equitable defense to be tried to the Court, not the jury, and the Court has deferred ruling on this affirmative defense until after trial. *See* April 25, 2008 Order, at 7. The Court's finding is well supported by case law. *See, e.g.*, *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1115 (9th Cir. 2004) (waiver is an equitable defense); *Granite State Ins. Co. v. Smart Modular Techns.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("a litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature."). That defendants' equitable defenses lack issues common to the legal questions to be decided by the jury in Phase 1 (*i.e.*, Mattel's claims for intentional interference with contract, aiding and abetting breach of fiduciary duty and duty of loyalty) further compels the result that the defense should be heard by the Court. *See* Mattel, Inc.'s Motion *in Limine* No. 4 to Preclude Introduction to Jury of Evidence and Testimony Relating to Equitable Defenses to be Tried by Court, at 4.

2. Mattel further objects to the defendants' proposed instruction on the ground that it relates to an affirmative defense that was arguably relevant only to claims against Carter Bryant. Carter Bryant is no longer a defendant in this case, and defendants have not shown that they are entitled to assert such affirmative defenses as to the claims against them. It is therefore misleading and prejudicial for defendants to inform the jury that it may find that "Mattel waived any right to seek damages for Carter Bryant's alleged breaches arising out of its agreement with Bryant . . .." Mattel is seeking damages from defendants – not Bryant – for intentional interference with contractual relations.

3. Although defendants cite CACI No. 336 as authority for their proposed instruction, it deviates from the model instruction. Defendants omit the "clear and convincing" evidentiary standard set forth in the model instruction. In addition, defendants

1  fail to set forth accurately the standard for waiver, which requires "the intentional
2  relinquishment of a known right with knowledge of its existence and the intent to
3  relinquish it." *U.S. v. King Features Entm't Inc*., 843 F.2d 394, 399 (9th Cir. 1988)
4  (citations omitted).  Defendants require only that "Mattel acted inconsistently with an
5  intent to enforce its employment agreements" and impose a "reasonable person" standard –
6  not clear and convincing – to determine whether Mattel intended to enforce its
7  employment agreements.  This is clearly in error.

8      4.    Defendants attempt to extend the waiver standard to include Mattel's
9  awareness of "its employees alleged breaches of their employment agreements," rather
10 than limiting it to Bryant's conduct, as required by waiver law.  Equally as problematic,
11 defendants claim that jurors may find waiver by Mattel's "silence" regarding Bryant's
12 employment agreement – a clear departure from the requirement that Mattel must freely
13 and knowingly have given up its right to have Bryant perform his obligations. Defendants'
14 standard has been clearly repudiated by the case law.  *See Novell Inv. v. Weird Stuff*, No.
15 C92-20467 JW/EAL, 1994 WL 16458729 (N.D. Cal. 1993) ("a failure to act, without
16 more, is insufficient evidence" to support a waiver claim).

17     5.    *Counter-Instruction*:  If the Court decides, in spite of its April 25, 2008 Order
18 and Mattel's objections, that a waiver instruction should be given to a jury, it should be as
19 follows:

20        Defendants claim that Carter Bryant did not have to perform his obligations
21        under the Inventions Agreement and/or the Conflict of Interest Questionnaire
22        because Mattel gave up its right to enforce those obligations.  This is called a
23        "waiver."

24     To succeed, defendants must prove both of the following by clear and
25 convincing evidence:

26     1.    That Mattel knew what Mr. Bryant was obligated to do under the
27        Inventions Agreement and/or the Conflict of Interest Questionnaire; and

28

249

2.      That Mattel freely and knowingly gave up its right to have Mr. Bryant perform those obligations.

A waiver may be oral or written or may arise from conduct that shows that Mattel gave up this right.

If defendants prove that Mattel gave up its right to Mr. Bryant's performance of his obligations under the Inventions Agreement and/or the Conflict of Interest Questionnaire, then Mr. Bryant was not required to perform those obligations.

**Authority:**  CACI No. 336.

**MGA Parties' Response**

To begin with, Mattel mischaracterizes the import of the Court's decision to defer ruling on certain affirmative defenses.  While the Court may ultimately rule on the effect of these defenses, it is apparent from the Court's Order that it expects the jury to make the factual determinations underlying its decision.  <u>See</u> Final Pre-Trial Conference Order at 8.

Mattel's objection that the affirmative defense of waiver should not be placed before the jury ignores long-established precedent to the contrary.  "Whether there has been a waiver is usually regarded as a question of fact to be determined by the jury, or by the trial court if there is no jury."  <u>Posner v. Grunwald-Marx, Inc.</u>, 56 Cal. 2d 169, 189 (1961) (internal quotations and citations omitted); <u>see also</u> <u>Bickel v. City of Piedmont</u>, 16 Cal. 4th 1040, 1052 (1997) ("Whether there has been a waiver is a question of fact."), <u>abrogated on other grounds</u>, <u>DeBerard Properties, Ltd. v. Lim</u>, 20 Cal. 4th 659, 668 (1999).  Even if the Court chooses to make the ultimate decision as to whether this defense will bar Mattel's claims (although courts routinely submit the entire defense to the jury), the jury must still make the factual determinations that underlie the Court's decision.  Because the facts underlying this defense are inextricably intertwined with the facts underlying Mattel's claims, taking those factual determinations away from the jury would violate defendants' Seventh Amendment jury rights, as explained in detail in the opposition to Mattel's Motion in Limine No. 4.  Accordingly, the jury should be given a proper framework for making those factual determinations.

Mattel's objection that the defense of waiver applied only to Bryant's claims and should thus be eliminated is meritless.  While Bryant is no longer a party to this lawsuit, the effect of the contracts between Bryant and Mattel is central to this lawsuit.  Thus, if Mattel's actions somehow undermined its contractual relationship with Bryant, its claims based on that contractual relationship must also fail.  Moreover, the existence of affirmative

1   defenses that negate or limit the contractual relationship may in turn undermine Mattel's

2   claims that the MGA Parties intended to cause harm to that relationship.  For these reasons,

3   this instruction continues to be appropriate.

4

5   Mattel's objection, and its counter-instruction, ignores that Mattel's waiver here may be

6   proven by establishing that: (1) Mattel was aware of its employees' alleged breaches of

7   their employment agreements, i.e., their moonlighting and creation of independent artistic

8   works; and (2) Mattel indicated, by its words, actions or silence that it did not intend to

9   enforce its employment agreements. The defendants' modification of the model instruction

10  to reflect that is entirely appropriate. In proposing jury instructions, the parties are

11  permitted to modify the language of any model instruction to make it less confusing or

12  more appropriate in the context of a particular case.  See McDowell v. Calderon, 130 F.3d

13  833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model

14  Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered

15  out by legislators, but by ad hoc committees of lawyers and judges.  Jury instructions do

16  not come down from any mountain or rise up from any sea.  Their precise wording,

17  although extremely useful, is not blessed with any special precedential or binding authority.

18  This description does not denigrate their value, it simply places them in the niche where

19  they belong.").   Indeed, modification is sometimes necessary to make an instruction

20  accurate and complete.  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir.

21  1992) (approving modification of Ninth Circuit model instruction to include additional

22  elements, noting that "[h]ad the district court merely read the model jury instruction, it

23  would have committed plain error, since that instruction makes no reference whatsoever to

24  knowledge or intent.").

25

26  Mattel objection also ignores that waiver may be express, based on the words of the

27  waiving party, or implied, based on conduct so inconsistent with the intent to enforce a

28  right as to induce a reasonable belief that such right has been relinquished; moreover,

1   waiver does not require any act or conduct by the other party. <u>See</u> <u>Waller v. Truck Ins.</u>
2   <u>Exch.</u>, 11 Cal. 4th 1, 31 (1995).

3

4   Further, Mattel misstates the law when it asserts that waiver cannot be effected by inaction,
5   including waiver of a copyright. <u>See</u> <u>Veeck v. S. Bldg. Code Congress Int'l Inc.</u>, 241 F.3d
6   398, 409 (5th Cir. 2001) ("A right such as copyright may be waived by inaction."); <u>see</u>
7   <u>also</u> <u>Davis v. Blue Cross of N. Cal.</u>, 25 Cal. 3d 418 (1979) (carrier's inaction amounted to
8   a waiver of its right to demand arbitration). Mattel's reliance on <u>Novell Inc. v. Weird Stuff,</u>
9   <u>Inc.</u>, 0094 WL 16458729 (N.D. Cal. Aug. 2, 1993) (which Mattel consistently and
10  incorrectly cites as found at "<u>19</u>94 WL 16458729"), is unavailing, as the court there found
11  that there were no disputed facts supporting a waiver defense when Novell had taken the
12  affirmative steps of disposing of its products and verbally informing defendants that it had
13  no intention of waiving copyright.  Mattel has taken no such steps.

14

15  In addition, Mattel's proposed counter instruction fails to inform the jury 1) that waiver
16  may be established if Mattel acted inconsistently with an intent to enforce its employment
17  agreements and that a reasonable person would have believed that Mattel did not intend to
18  enforce its employment agreements; 2) that waiver may be implied based on conduct so
19  inconsistent with the intent to enforce a right as to induce a reasonable belief that such
20  right has been relinquished; and 3) that waiver does not require any act or conduct by the
21  other party; and 4) that waiver can be effected by silence.

22

23  The MGA Parties' Instructions did not indicate whether affirmative defenses would be
24  heard in Phase 1A or 1B, and thus are no inconsistent with the Court's ruling on this issue.

25

26

27

28

# -REVISED-

## **Affirmative Defense – Consent**

If you find that Mattel consented to its employees moonlighting and developing their own artistic work, you must find for Isaac Larian, MGA, and MGA (HK) with respect to claims arising out of Bryant's alleged violations of the Inventions Agreement.

Consent is the actual or apparent willingness for conduct of another to occur.

Actual consent may be expressed in words or acts, silence or inaction, when the circumstances or other evidence establish that the silence or inaction is intended to give consent; actual consent need not be communicated to the person taking the alleged wrongful act.

Apparent consent exists when a person's acts or words, silence or inaction, would be understood by a reasonable person as intended to indicate consent, and in fact so understood by the person doing the alleged wrongful act.

**Authority:** Cal. Civ. Code § 3515; CACI No. 1302 (2008) (as modified).

**Mattel's Objections**

Mattel objects to Defendants' proposed instruction regarding Consent on the following grounds:

1.     Defendants' proposed jury instruction is contrary to the Court's April 25, 2008 Order.  As recognized by the Court, consent is an equitable defense to be tried to the Court, not the jury, and the Court has deferred ruling on this affirmative defense until after trial.  *See* April 25, 2008 Order, at 7.  The Court's finding is well supported by case law.  *See, e.g.*, *Javelin Corp. v. Uniroyal, Inc.*, 546 F.2d 276, 279 (9th Cir. 1976) (*in pari delicto* and the closely related defenses of consent and unclean hands are equitable in nature); *Granite State Ins. Co. v. Smart Modular Techns.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("a litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature.").

2.     Mattel further objects to the defendants' proposed instruction on the ground that it relates to an affirmative defense that was arguably relevant only to claims against Carter Bryant.  Carter Bryant is no longer a defendant in this case, and defendants have not shown that they are entitled to assert this purported affirmative defense as to the claims against them.

3.     This proposed instruction is also confusing and prejudicial to the extent it informs the jury that it must find for defendants with respect to "claims arising out of Bryant's alleged violations of the Inventions Agreement" if Mattel consented to its employees moonlighting.  Defendants fail to proffer any support for the notion that these issues are intertwined, nor do defendants adequately inform the jury which claims the issue of consent could even conceivably relate to.

4.     Defendants' proposed instruction also erroneously states that the jury may find in favor of defendants if "Mattel consented to its employees moonlighting and developing their own artistic work."  This is contrary to law.  The Ninth Circuit has stated that a litigant need not choose between pursuing all offenders or none at all.  *See Metro-*

1   *Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1225 (9th Cir.

2   2007).  While this holding arose in the waiver of copyright context, it applies with equal

3   force to consent, particularly since defendants' consent theory is predicated on the same

4   facts as its waiver argument.  (*See* Carter Bryant's Responses to Mattel, Inc's Amended

5   Supplemental Interrogatory Regarding Defendants' Affirmative Defenses ("Bryant's

6   Responses") Section E at 50 (construing consent claim as based on "the equitable doctrine

7   of waiver.").  (*Compare* Bryant's Responses, Section B at 32-37 *with* Section E at 50-55

8   (copying and pasting virtually identical pages)).  Moreover, defendants ignore the

9   requirement embodied in California law that "the consent given must have been to the *very*

10  *act or circumstance* that caused the harm giving rise to the action."  2 SCHWING,

11  CALIFORNIA AFFIRMATIVE DEFENSES § 32:3 at 197 (2007) (citation omitted)

12  (emphasis added).  The conduct of other Mattel employees has no bearing on the "very act

13  or circumstance" of Bryant's alleged breach of his legal obligations.

14      5.      The proposed instruction is erroneous and unintelligible to the extent it

15  purports to inform the jury that "consent need not be communicated to the person taking

16  the alleged wrongful act."  Neither of the authorities cited by defendants support this

17  erroneous statement of the law.

18      6.      This proposed instruction is misleading and prejudicial to Mattel because

19  defendants purport to inform the jury that "silence or inaction" may be sufficient to

20  establish consent but fail to explain that is not the case when the "apparent consent" was

21  "obtained through . . . fraud [or] mistake."  *Greenawalt v. Rogers*, 151 Cal. 630, 635

22  (1907).  Mere silence or inaction due to a defendant's fraudulent omissions or through

23  mistake of fact may not support a consent defense, and it is misleading for defendants to

24  suggest to the jury otherwise.

25      7.      The model instruction cited by defendants is inapplicable because it relates to

26  the element of a claim for battery that requires a plaintiff to prove a lack of consent.  *See*

27  CACI No. 1302.

28

8.    *Counter-Instruction*:  If the Court decides, in spite of its April 25, 2008 Order and Mattel's objections, that a consent instruction should be given to a jury, it should be as follows:

The defendants claim that Mattel consented to the wrongful conduct at

issue in Mattel's claims against the defendants in this case.  To prevail on

this affirmative defense, the defendants must prove that Mattel knew of the

defendants' wrongful conduct and consented to such conduct, with such

consent obtained absent any fraud or mistake.

**Authority:**  2 Schwing, *California Affirmative Defenses*, § 32:3, at 197 (2007)  ("To be a defense, the consent given must have been to the very act or circumstances that caused the harm giving rise to the action.") (citation omitted); *Greenawalt v. Rogers*, 151 Cal. 630, 635 (1907 ("An apparent consent is not real or free when obtained through . . . fraud [or] mistake.").

**MGA Parties' Response**

To begin with, Mattel mischaracterizes the import of the Court's decision to defer ruling on certain affirmative defenses.  While the Court may ultimately rule on the effect of these defenses, it is apparent from the Court's Order that it expects the jury to make the factual determinations underlying its decision.  <u>See</u> Final Pre-Trial Conference Order at 8.

The MGA Parties' affirmative defense of consent is a question of fact that should be tried to the jury.  <u>See</u> <u>Posey v. Leavitt</u>, 229 Cal. App. 3d 1236, 1244 n.4 (1991) ("[F]actual issues raised by the consent defense would be properly triable by the jury…..").  Even if the Court chooses to make the ultimate decision as to whether this defense will bar Mattel's claims, the jury must still make the factual determinations that underlie the Court's decision.  Because the facts underlying this defense are inextricably intertwined with the facts underlying Mattel's claims, taking those factual determinations away from the jury would violate defendants' Seventh Amendment jury rights, as explained in detail in the opposition to Mattel's Motion in Limine No. 4.  Accordingly, the jury should be given a proper framework for making those factual determinations.

Mattel's objection that the defense of consent applied only to Bryant's claims and should thus be eliminated is meritless.  While Bryant is no longer a party to this lawsuit, the effect of the contracts between Bryant and Mattel is central to this lawsuit.  Thus, if Mattel's actions somehow undermined its contractual relationship with Bryant, its claims based on that contractual relationship must also fail.  Moreover, the existence of affirmative defenses that negate or limit the contractual relationship may in turn undermine Mattel's claims that the MGA Parties intended to cause harm to that relationship.  For these reasons, this instruction continues to be appropriate.

1  Because the jury is making findings of fact, rather than conclusions of law, it is

2  unnecessary to relate the defenses to specific claims.  Moreover, the relevant claims are

3  identified in the MGA Parties' proposed Special Verdict forms.

4

5  Mattel's reliance on <u>Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.</u>, 518 F. Supp. 2d

6  1197 (C.D. Cal. 2007), is unavailing. First, the decision is not a Ninth Circuit opinion as

7  Mattel represents; rather, it is an opinion originating from this District. Second, the court

8  in <u>Grokster</u> rejected the notion that to seek an injunction, MGM had to first show that it

9  pursued <u>every</u> copyright infringer on the internet. Here, Mattel failed to raise any

10 objections to large numbers of its employees moonlighting despite its knowledge of this

11 activity, and did not conduct a single investigation into this conduct.  Mattel easily could

12 have controlled its employees.  This is not a matter of a company failing to pursue every

13 possible claim again an almost infinite number of violations on the internet.  Mattel was

14 not selectively enforcing its employment contracts – it was not enforcing the contracts at

15 all.  By affirmatively declining to enforce its employment contracts, Mattel has taken

16 action inconsistent with the intent to enforce its rights.

17

18 There is no evidence that the conduct in question was procured by any fraud or mistake

19 and Mattel has never stated that it has a basis to argue such to the jury; thus, it amounted to

20 apparent consent and there is no basis to instruct the jury on fraud or mistake. As Mattel's

21 denial that consent could be based on silence or inaction is merely based on its assertion

22 that such a consent would be invalid if procured by fraud or mistake, it is entirely

23 appropriate to instruct the jury that consent could be based on silence or inaction. <u>Cf.</u>

24 Restatement (Second) of Torts § 892(2) (1979) ("If words or conduct are reasonably

25 understood by another to be intended as consent, they constitute apparent consent and are

26 as effective as consent in fact.").

27

28 Moreover, the conduct in question was unquestionably relevant to whether Bryant was

1    reasonable in believing that Mattel consented to his conduct, which was the exact same
2    conduct as the other moonlighting employees' in question. This explains why Mattel's
3    assertion that consent must have been given to "the very act or circumstance that caused
4    the harm giving rise to the action" has no relevance here, as there is no evidence that
5    Bryant should have expected "special treatment" and therefore somehow suspect that his
6    conduct would be treated any differently than the same conduct undertaken by similarly
7    situated employees.  As discussed above, this could, in turn, undermine Mattel's claims
8    against the MGA Parties.

9

10    Indeed, there is no legal support for Mattel's position that the only relevant conduct is
11    Mattel's conduct towards Bryant.  The relevant question here is whether the Mattel's
12    conduct was such that Bryant was reasonable in believing that Mattel consented to
13    independently creating artistic works and/or moonlighting.  The fact that Mattel allowed
14    its employees, who signed the same agreement as Bryant, to independently create artistic
15    works and moonlight without ever taking any action is clearly relevant to whether it was
16    reasonable for Bryant to conclude that Mattel consented to him engaging in the same
17    conduct.

18

19    Mattel's objection to the model instruction used is likewise unavailing.  While the CACI
20    No. 1302 is found in the context of assault and battery, the sources and authority include
21    more widely applicable tort defenses, such as California Civil Code section 3515, which
22    provides: "He who consents to an act is not wronged by it."  The sources also include the
23    Restatement (Second) of Torts, Section 892 – found in Division 12 "Defenses Applicable
24    To All Tort Claims."  This section provides, <u>inter alia</u>, that "(1) Consent is willingness in
25    fact for conduct to occur. It may be manifested by action or inaction and <u>need not be</u>
26    <u>communicated to the actor</u>."  Rest. 2d Torts § 892 (1979) (emphasis added).

27

28    Mattel's counter-instruction is wholly insufficient as it does not provide any explanation of

260

1  what consent is or how it may be manifested.  In particular, it does not convey to the jury
2  that consent need not be express, does not explain apparent consent, and does not explain
3  that the consent need not be communicated to the actor.

1

## -REVISED-

2 **Estoppel — Definition**

3

4 Whenever a party has, by his own statement or conduct, deliberately led another to believe

5 a particular thing to be true and to act upon such belief, he is not permitted to contradict it.

6

7 To create an estoppel, Larian, MGA, and/or MGA (HK) must prove by a preponderance of

8 the evidence each of the following elements:

9

10     1.     The party to be estopped must be apprised of the facts;

11

12     2.     The party to be estopped must intend that its conduct shall be acted upon, or

13            must act so that the other party had a right to believe it was so intended;

14

15     3.     The other party was ignorant of the true state of facts, and

16

17     4.     The other party relied on the conduct to its injury.

18

19 **Authority:**   Cal. Evid. Code § 623; 11 B.E. Witkin, <u>Summary of California Law</u>, Equity

20 § 177; <u>Lear v. Bd. of Retirement</u>, 79 Cal. App. 4th 427, 437 (2000); <u>Spray, Gould &</u>

21 <u>Bowers v. Associated Int'l Ins. Co.</u>, 71 Cal. App. 4th 1260, 1268 (1999); <u>Ortega v. Pajaro</u>

22 <u>Valley Unified Sch. Dist.</u>, 64 Cal. App. 4th 1023, 1044 (1998); <u>Lemat Corp. v. Am.</u>

23 <u>Basketball Ass'n</u>, 51 Cal. App. 3d 267, 276 (1975).

24

25

26

27

28

1 | **Mattel's Objections**

2

3       Mattel objects to defendants' proposed instruction regarding estoppel on the

4 following grounds:

5       1.    Defendants' proposed jury instruction is contrary to the Court's April 25, 2008

6 Order. As recognized by the Court, estoppel is an equitable defense to be tried to the

7 Court, not the jury, and the Court has deferred ruling on this affirmative defense until after

8 trial. *See* April 25, 2008 Order, at 7. The Court's finding is well supported by case law.

9 *See, e.g.*, *Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*, 106 F.3d

10 894, 899 (9th Cir. 1997) (estoppel, laches, and acquiescence are equitable defenses);

11 *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996).

12       2.    Mattel further objects to the defendants' proposed instruction on the ground

13 that it relates to an affirmative defense that was arguably relevant only to claims against

14 Carter Bryant. Carter Bryant is no longer a defendant in this case, and defendants have not

15 shown that they are entitled to assert a defense of estoppel as to the claims against them.

16       3.    In any event, defendants' introductory paragraph confuses the standard for

17 estoppel and implies facts not in evidence.

18       4.    This proposed instruction is confusing and prejudicial to the extent it does not

19 even inform the jury what claims the issue of estoppel could even conceivably relate to,

20 nor does it explain what the effect of a finding of estoppel would be.

21       5.    The language of any proposed instruction regarding estoppel should be

22 clearer. Rather than stating "[t]he party to be estopped," or "the other party," which could

23 be confusing to the jury, the instruction should make clear for each element which party

24 the requirement applies to.

25       6.    *Counter-Instruction*: If the Court decides, in spite of its April 25, 2008 Order

26 and Mattel's objections, that an estoppel instruction should be given to a jury, it should be

27 as follows:

28

Defendants Larian, MGA and MGA (HK) claim that Mattel is barred from asserting claims against Defendants under the equitable defense of estoppel. To create an estoppel, Larian, MGA and MGA (HK) must prove each of the following elements:

1.  Mattel was apprised of the true facts surrounding the creation of Bratz and Bryant's involvement with MGA, MGA (HK) and/or Larian;

2.  Mattel must intend that its conduct shall be acted upon, or must act so that defendants had a right to believe it was so intended;

3.  Defendants must be ignorant of the true facts in the dispute;

4.  Defendants relied on Mattel's conduct to their injury. If the jury finds that Defendants' detrimental reliance was based on Mattel's silence or inaction, estoppel may be found only if Mattel had a duty to speak, and an opportunity to speak, and decided not to do so, and defendants relied on that decision to their detriment

5.  Where any one of these elements of estoppel is absent, the claim must fail.

**Authority**:  Granite State Ins. Co. v. Smart Modular Techs., Inc., 76 F.3d 1023, 1027 (9th Cir. 1996); Sorensen v. Black and Decker Corp., 2007 WL 1976610 * 1 (S.D. Cal. 2007); Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F. Supp. 2d 1197, 1225 (9th Cir. 2007); Feduniak v. Cal. Coastal Com'n, 148 Cal. App. 4th 1346 (Cal. App. 2007); Elliano v. Assurance Co. of America, 3 Cal. App. 3d 446, 451 (1970); Skulnick v. Roberts Express, Inc., 2 Cal. App. 4th 884, 891 (1992).

264

1 | **MGA Parties' Response**

2

3 | To begin with, Mattel mischaracterizes the import of the Court's decision to defer ruling
4 | on certain affirmative defenses. While the Court may ultimately rule on the effect of these
5 | defenses, it is apparent from the Court's Order that it expects the jury to make the factual
6 | determinations underlying its decision. See Final Pre-Trial Conference Order at 8.

7

8 | The MGA Parties' affirmative defense of estoppel is a question of fact that should be tried
9 | to the jury. "The existence of estoppel is a question of fact for the trial court." Elmore v.
10 | Oak Valley Hosp. Dist., 204 Cal. App. 3d 716, 724 (1988) (overruling the trial court which
11 | sustained a demurrer on plaintiff's estoppel claim); see also Muraoka v. Budget Rent-a-
12 | Car, 160 Cal. App. 3d 107, 117 (1984) (holding trial court erred in granting defendant's
13 | demurrer stating, "[the estoppel question] is one of fact which should be left for resolution
14 | by a jury and not determined upon general demurrer"). Even if the Court chooses to make
15 | the ultimate decision as to whether this defense will bar Mattel's claims (although courts
16 | routinely submit the entire defense to the jury), the jury must still make the factual
17 | determinations that underlie the Court's decision. Because the facts underlying this
18 | defense are inextricably intertwined with the facts underlying Mattel's claims, taking those
19 | factual determinations away from the jury would violate defendants' Seventh Amendment
20 | jury rights, as explained in detail in the opposition to Mattel's Motion in Limine No. 4.
21 | Accordingly, the jury should be given a proper framework for making those factual
22 | determinations.

23

24 | Mattel's objection that the defense of estoppel applied only to Bryant's claims and should
25 | thus be eliminated is meritless. While Bryant is no longer a party to this lawsuit, the effect
26 | of the contracts between Bryant and Mattel is central to this lawsuit. Thus, if Mattel's
27 | actions somehow undermined its contractual relationship with Bryant, its claims based on
28 | that contractual relationship must also fail. Moreover, the existence of affirmative

1   defenses that negate or limit the contractual relationship may in turn undermine Mattel's

2   claims that the MGA Parties intended to cause harm to that relationship.  For these reasons,

3   this instruction continues to be appropriate.

4

5   Because the jury is making findings of fact, rather than conclusions of law, it is

6   unnecessary to relate the defenses to specific claims.  Moreover, the relevant claims are

7   identified in the MGA Parties' proposed Special Verdict forms.

8

9   Further, Mattel offers no support for its statement that "defendants' introductory paragraph

10   should be eliminated because it confuses the standard for estoppel and implies facts not in

11   evidence" – nor could it, as the introductory paragraph in question, which states that

12   "[w]henever a party has, by his own statement or conduct, deliberately led another to

13   believe a particular thing to be true and to act upon such belief, he is not permitted to

14   contradict it", is (with limited non-substantive modifications) <u>a direct quote from the</u>

15   <u>California Evidence Code</u>. See Cal. Evid. Code § 623 ("Whenever a party has, by his own

16   statement or conduct, intentionally and deliberately led another to believe a particular

17   thing true and to act upon such belief, he is not, in any litigation arising out of such

18   statement or conduct, permitted to contradict it.").  It is difficult to believe that California

19   Evidence Code could confuse the standard for estoppel or even imply facts not in evidence,

20   as Mattel asserts.

21

22   Finally, Mattel's "Counter-Instruction" is improper, as it suggests that estoppel cannot

23   arise from the silence of the party to be estopped, unless that party has some legal duty to

24   speak.  "The doctrine of estoppel by conduct is embodied in Evidence Code section 623,

25   which states: 'Whenever a party has, by his own statement or conduct, intentionally and

26   deliberately led another to believe a particular thing true and to act upon such belief, he is

27   not, in any litigation arising out of such statement or conduct, permitted to contradict it.'"

28   <u>Hill v. Kaiser Aetna</u>, 130 Cal. App. 3d 188, 195 (1982).  Conduct is given the broadest

266

possible meaning.  "Equitable estoppel in the modern sense arises from the conduct of a party, using that word in its broadest meaning as including his spoken or written words, his positive acts, <u>and his silence or negative omission to do anything</u>." <u>City of Long Beach v. Mansell</u>, 3 Cal. 3d 462, 488 n.22 (1970) (holding city was estopped from enforcing constitutional prohibition) (emphasis added, citation omitted).  Mattel's contention that there is a duty to speak requirement has no bearing on the instruction.  The case Mattel cites for this principle, <u>Feduniak v. California Coastal Com'n</u>, 148 Cal. App. 4th 1346, 1362 (2007), states that "[i]t is not necessary that the duty to speak should arise out of any agreement, or rest upon any legal obligation in the ordinary sense. Courts of equity apply in such cases the principles of natural justice, and whenever these require disclosure they raise the duty and bind the conscience and base upon the omission an equitable forfeiture to the extent necessary to the protection of the innocent party." (Citations omitted.)  The "duty" is thus simply a determination that under the circumstances, a party wishing to assert its right must speak.  Mattel certainly had such a duty in this case given that it knew of the alleged violations of its rights and remained silent.

Moreover, the "Counter-Instruction" is also improper as it suggests that the only relevant facts that Mattel had to be appraised of were the facts surrounding the BRATZ' creation. This omits the relevant facts concerning moonlighting by other employees at Mattel. Mattel is estopped from asserting claims arising out of Bryant's employment as a result of its longstanding pattern of allowing employees to moonlight or to work independently on their own artistic projects.  As the record shows, Mattel knew its employees were moonlighting for its competitors or independently creating artistic works.  Despite this knowledge, Mattel took no steps to prevent its employees from moonlighting or independently creating artistic works.  As Mattel allowed all of its other employees to engage in such conduct without consequences, it is estopped from bringing claims against Bryant based on violations of his employment agreement.

1        **-REVISED-**

2    **Defense: Estoppel of Copyright Claims**

3

4    Larian, MGA, and MGA (HK) claim as a defense that Mattel is barred from asserting

5    copyright claims because of its prolonged silence regarding alleged infringement and its

6    prior conclusion that the BRATZ do not infringe on its intellectual property.

7

8    To establish this defense, Larian, MGA, and/or MGA (HK) must prove all of the following:

9

10        1.    That Mattel made a representation of fact by conduct intending that

11              Defendant should rely on it.  Conduct is used **"**in its broadest meaning as

12              including … silence or negative omission to do anything.**"**;

13

14        2.    That Mattel had knowledge that BRATZ potentially infringed on its

15              intellectual property and that Carter Bryant worked for MGA;

16

17        3.    That MGA, MGA (HK), and/or Larian were ignorant of Mattel**'**s claims of

18              ownership of Bryant**'**s BRATZ sketches; and

19

20        4.    That MGA, MGA (HK), and/or Larian reasonably relied on Mattel**'**s silence

21              to their detriment.  MGA Parties**'** reliance must be reasonable in the sense that

22              under the circumstances, a reasonable person would have acted as defendants

23              did.

24

25    **Authority:** <u>HGI Associates, Inc. v. Wetmore Printing Co.</u>, 427 F.3d 867, 875 (11th Cir.

26    2005); <u>Stambler v. Diebold, Inc.</u>, 1988 WL 95479, at **6, 11 U.S.P.Q. 2d 1709, 1715

27    (E.D.N.Y. 1988), <u>aff'd</u>, 878 F.2d 1445 (Fed. Cir. 1989); <u>City of Long Beach v. Mansell</u>, 3

28    Cal. 3d 462, 488 n.22 (1970).

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding estoppel on the following grounds:

1.     Defendants' proposed jury instruction is contrary to the Court's April 25, 2008 Order.  As recognized by the Court, estoppel is an equitable defense to be tried to the Court, not the jury, and the Court has deferred ruling on this affirmative defense until after trial.  *See* April 25, 2008 Order, at 7.  The Court's finding is well supported by case law. *See, e.g.*, *Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc.*, 106 F.3d 894, 899 (9th Cir. 1997) (estoppel, laches, and acquiescence are equitable defenses); *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996).

2.     In any event, defendants did not plead an "estoppel of copyright" defense in this case and cannot raise it for the first time now.  Moreover, there is no such thing as "estoppel of copyright" in the Ninth Circuit.  The only case defendants cite that even refers to "estoppel of copyright" is an out-of-circuit decision that is not controlling or persuasive here.  *See HGI Assocs., Inc. v. Wetmore Printing Co.*, 427 F.3d 867 (11th Cir. 2005).  The other cases cited by defendants (*Stambler v. Diebold, Inc.*, 1988 WL 95479, at *6 (E.D.N.Y. 1988) and *City of Long Beach v. Mansell*, 3 Cal. 3d 462, 488 n.22 (1970)) say nothing about any "estoppel of copyright" defense.  Accordingly, the proposed instruction is erroneous and improper.

3.     With respect to copyright claims, the applicable defense would be abandonment of copyright.  *See Bell Atlantic Sys. Servs., Inc. v. Hitachi Data Sys. Corp.*, 1995 WL 836331 * 11 (1995) (citing *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 103 (9th Cir.), *cert. denied*, 364 U.S. 882 (1960)).  Defendants apparently seek to conjure a new defense in an effort to shift the jury's focus to Mattel's purported "silence or negative omission to do anything," because the law is clear that abandonment "must be manifested by some *overt act* indicative of a purpose to surrender the rights and allow the public to copy." *Hampton*, 279 F.2d at 104 (emphasis added).  *See also* Melville B.

1    Nimmer & David Nimmer, Nimmer on Copyright § 13.06, at 13-279 ("mere inaction …
2    would not constitute a manifestation of an intent to abandon….").

3         4.    The case law is clear regarding the four-pronged test for determining whether
4    estoppel is proven.  *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.
5    Supp. 2d 1197, 1225 (9th Cir. 2007) (outlining standard).  Any estoppel instruction should
6    adhere to this blackletter law.  The first requirement is that the plaintiff must know the true
7    facts surrounding the alleged misconduct.  But instead of beginning with this element,
8    which could be dispositive, as stated above, Defendants begin with Mattel's purported
9    "silence or negative omission," which has no bearing on the knowledge element.
10   Defendants' "silence or negative omission" standard also is an incorrect recitation of the
11   intent element, which is ordinarily listed as the second factor of the four-pronged estoppel
12   test.

13        5.    Since there is no "estoppel of copyright" defense in the Ninth Circuit,
14   defendants' statement that estoppel requires a showing that "Mattel had knowledge that
15   Bratz potentially infringed on its intellectual property" is incorrect.  Instead, the instruction
16   should be framed more generally that "Mattel had knowledge of the circumstances
17   surrounding the creation of Bratz and Carter Bryant's involvement with MGA, Larian
18   and/or MGA (HK)."

19        6.    The third element is also framed imprecisely as involving defendants'
20   ignorance of "Mattel's claims of ownership of Bryant's BRATZ sketches," when it should
21   be tailored to address defendants' knowledge of the true facts involved in the dispute.

22        7.    The fourth element seeks to import a reliance on "silence" standard when the
23   case law requires proof that the defendant relied on the plaintiff's "conduct to his injury."
24   *Metro-Goldwyn-Mayer*, 518 F. Supp. 2d at 1225.   While defendants rely on a statement
25   referenced in a footnote in *City of Long Beach v. Mansell*, 3 Cal. 3d 462, 488 n.22 (1970),
26   quoting a 1941 treatise that conduct may include "silence or negative omission," modern
27   law makes clear that "passive holding out can rarely be established in statutory
28   infringement actions."  4 Nimmer On Copyright § 13.07.

270

8.      Moreover, in *Feduniak v. Cal. Coastal Comm'n*, 148 Cal. App. 4th 1346 (2007), the court made clear that the law "is settled that when the party to be estopped does not say or do anything, its silence and inaction may support estoppel only if it had a duty to speak or act under the particular circumstances." *Id.* at 1362.  *See also Elliano v. Assurance Co. of America*, 3 Cal. App. 3d 446, 451 (1970) (estoppel from silence may arise "only where there is a duty to speak, and where the party on whom such duty rests has an opportunity to speak, and knowing that the circumstances require him to speak, remains silent."') (citations omitted); *see also Spray, Gould & Bowers v. Assoc. Int'l Ins. Co.*, 71 Cal. App. 4th 1260, 1268-1269 (1999) (insurance company estopped from arguing that a claim was time barred because the company had a legal duty under the Fair Claims Practice Settlement Regulations to advise the claimant of the applicable time limits and had not done so); *Skulnick v. Roberts Express, Inc.*, 2 Cal. App. 4th 884, 891 (1992) (defendant represented to plaintiffs that he would  agree to a settlement only if it resolved all claims; since plaintiffs did not object or otherwise response to that precondition and later remained silent when the settlement was put on the record, they were estopped from filing suit).  Thus, at a minimum, the instruction would need to be modified to state that estoppel by silence or inaction may be found only if the jury also finds that Mattel had a legal duty to speak and an opportunity to speak and chose not to, and that defendants relied on this decision to their detriment.

9.      *Counter-Instruction*:  "Estoppel of copyright" does not exist in the Ninth Circuit; accordingly, any proposed instruction regarding "estoppel of copyright" is improper.  If the Court decides, in spite of its April 25, 2008 Order and Mattel's objections, that an estoppel instruction should be given to a jury, Mattel requests that the Court give its proposed counter-instruction regarding estoppel.  *See* Mattel's Objections to Defendants' Proposed Jury Instruction re: Estoppel—Definition.

1 **MGA Parties' Response**

2

3  To begin with, Mattel mischaracterizes the import of the Court's decision to defer ruling

4  on certain affirmative defenses.  While the Court may ultimately rule on the effect of these

5  defenses, it is apparent from the Court's Order that it expects the jury to make the factual

6  determinations underlying its decision.  <u>See</u> Final Pre-Trial Conference Order at 8.

7

8  The MGA Parties' affirmative defense of estoppel is a question of fact that should be tried

9  to the jury.  "The existence of estoppel is a question of fact for the trial court."  <u>Elmore v.</u>

10  <u>Oak Valley Hosp. Dist.</u>, 204 Cal. App. 3d 716, 724 (1988) (overruling the trial court which

11  sustained a demurrer on plaintiff's estoppel claim); <u>see also</u> <u>Muraoka v. Budget Rent-a-</u>

12  <u>Car</u>, 160 Cal. App. 3d 107, 117 (1984) (holding trial court erred in granting defendant's

13  demurrer stating, "[the estoppel question] is one of fact which should be left for resolution

14  by a jury and not determined upon general demurrer").  Even if the Court chooses to make

15  the ultimate decision as to whether this defense will bar Mattel's claims (although courts

16  routinely submit the entire defense to the jury), the jury must still make the factual

17  determinations that underlie the Court's decision.  Because the facts underlying this

18  defense are inextricably intertwined with the facts underlying Mattel's claims, taking those

19  factual determinations away from the jury would violate defendants' Seventh Amendment

20  jury rights, as explained in detail in the opposition to Mattel's Motion in Limine No. 4.

21  Accordingly, the jury should be given a proper framework for making those factual

22  determinations.

23

24  Mattel confuses a defense of abandonment with estoppel. Indeed, there is a separate

25  estoppel defense to a claim for copyright infringement. <u>See</u> 4 <u>Nimmer, on Copyright</u> §

26  13.07 (2008) (noting that equitable estoppel applies in copyright infringement actions, and

27  may deprive a plaintiff of an otherwise meritorious copyright infringement claim); <u>see also</u>

28  <u>Hampton v. Paramount Pictures Corp.</u>, 279 F.2d 100, 104 (9th Cir. 1960). Mattel's own

1    authority, <u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.</u>, 518 F. Supp. 2d 1197,

2    1225 (C.D. Cal. 2007) (which is not a Ninth Circuit opinion, as Mattel represents, but

3    rather an opinion emanating from this District) confirms this and cites the elements set

4    forth for this very defense in <u>Hampton</u>. Moreover, Mattel's squabble over the instruction's

5    "silence or inaction" element is unavailing, as "[a] copyright owner can be estopped not

6    only by words and actions but also by silence and inaction." <u>HGI Associates, Inc. v.</u>

7    <u>Wetmore Printing Co.</u>, 427 F.3d 867, 875 (11th Cir. 2005). In this connection, the "duty to

8    speak" requirement is simply a determination that under the circumstances, a party

9    wishing to assert its right must speak.  Mattel certainly had such a duty in this case given

10   that it knew of the alleged infringement and remained silent. <u>See, e.g.</u>, <u>Stambler v. Diebold,</u>

11   <u>Inc.</u>, 1988 WL 95479, at **6, 11 U.S.P.Q. 2d 1709, 1715 (E.D.N.Y. 1988) (finding that

12   patent owner had a duty to speak and its silence was intentionally misleading where it had

13   long known of the alleged infringement and permitted the conduct to continue), <u>aff'd</u>, 878

14   F.2d 1445 (Fed. Cir. 1989).

15

16   Finally, as Mattel proposes the same "Counter-Instruction" here as with respect to the

17   previous proposed instruction, this "Counter-Instruction" should be rejected for the same

18   reasons as stated in the previous response.

19

20

21

22

23

24

25

26

27

28

### -REVISED-

**Defense: Estoppel of Employment Claims**

Larian, MGA, and MGA (HK) further claim as a defense that Mattel is barred from asserting claims arising out of Carter Bryant's employment agreement because Mattel allowed its employees both to moonlight and develop their own artistic works without complaint and it unreasonably delayed bringing this complaint long after it knew of the alleged infringement.

To establish this defense, Larian, MGA, and/or MGA (HK) must prove all of the following:

1. That Mattel made a representation of fact by conduct intending that Defendant should rely on it.  Conduct is used **"in its broadest meaning as including … silence or negative omission to do anything."**

2. That Mattel had knowledge that its employees were moonlighting or creating their own artistic work;

3. That Carter Bryant was ignorant of the fact that Mattel allowing moonlighting or independent artistic work was not intended as a policy; and

4. That MGA, MGA (HK), and/or Larian reasonably relied on Mattel's silence to their detriment.  MGA Parties' reliance must be reasonable in the sense that under the circumstances, a reasonable person would have acted as defendants did.

**Authority:**   Bender, Matthew,  <u>Cal. Forms Jury Inst.</u>, Ch. 3F, 300F.27; <u>City of Long Beach v. Mansell</u>, 3 Cal. 3d 462, 488 n.22 (1970).

274

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding estoppel for the following reasons:

1.      Defendants' proposed jury instruction is contrary to the Court's April 25, 2008 Order.  As recognized by the Court, estoppel is an equitable defense to be tried to the Court, not the jury, and the Court has deferred ruling on this affirmative defense until after trial.  *See* April 25, 2008 Order, at 7.  The Court's finding is well supported by case law. *See, e.g.*, *Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc*., 106 F.3d 894, 899 (9th Cir. 1997) (estoppel, laches, and acquiescence are equitable defenses); *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996).

2.      Mattel further objects to the defendants' proposed instruction on the ground that it relates to an affirmative defense that was arguably relevant only to claims against Carter Bryant.  Carter Bryant is no longer a defendant in this case, and defendants have not shown that they are entitled to assert this purported affirmative defense as to the claims against them.

3.      In any event, defendants did not plead an "estoppel of employment claims" defense in this case and cannot raise it for the first time now.  Moreover, there is no such thing as "estoppel of employment claims."  Any proposed instruction should pertain to the affirmative defense of estoppel generally, and not some made-up version of estoppel.

4.      This proposed instruction is confusing and prejudicial to the extent it does not even inform the jury what claims the issue of estoppel could even conceivably relate to, nor does it explain what the effect of a finding of estoppel would be.

5.      Additionally, defendants focus improperly on alleged moonlighting or artistic works of other employees when Mattel's knowledge of the conduct at issue must pertain to *Bryant's* alleged violations of his legal duties, not what other employees were or were not doing.  Accordingly, the first paragraph of this proposed instruction, and any references to Mattel's knowledge regarding "its employees" should be stricken.

6.      For the reasons set forth in Mattel's previous objection, defendants fail to adhere to the four-pronged test for establishing estoppel.  (*See* Mattel's Objections, *supra*, at 97-98).  Additionally, defendants' statement in paragraph two that "Mattel had knowledge that its employees were moonlighting" is erroneous for the reasons stated above, namely that the conduct of others has no bearing on whether Mattel had the requisite knowledge of the "true facts" surrounding Bryant's alleged breaches of his legal duties.

7.      For similar reasons, defendants' characterization of element three is incorrect and loaded.  Defendants assert that they must prove that he "was ignorant of the fact that Mattel allowing moonlighting was not intended as a policy."  This characterization requires the jury either to *assume* that Mattel allowed moonlighting, which is irrelevant to whether Mattel had knowledge of Mr. Bryant's breaches of his legal duties, or to *find* that Mattel allowed moonlighting by others, which skews the jury's inquiry away from the crucial elements of estoppel established in the case law.  *See, e.g.*, *Metro-Goldwyn-Meyer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1225 (9th Cir. 2007).

8.      Defendants claim that they can establish estoppel by proving that they "reasonably relied on Mattel's silence to their detriment."  For the reasons stated in Mattel's previous objections, this is a clear misstatement of the law.  Thus, at a minimum, any instruction would need to be modified to state that estoppel by silence or inaction may only be found if the jurors also find that Mattel had a legal duty to speak and an opportunity to speak and chose not to do so, and that defendants' relied on this decision to their detriment.

9.      *Counter-Instruction*:  "Estoppel of employment claims" does not exist; accordingly, any proposed instruction regarding "estoppel of copyright" is improper.  If the Court decides, in spite of its April 25, 2008 Order and Mattel's objections, that an estoppel instruction should be given to a jury, Mattel requests that the Court give its proposed counter-instruction regarding estoppel.  *See* Mattel's Objections to Defendants' Proposed Jury Instruction re: Estoppel—Definition.

**MGA Parties' Response**

To begin with, Mattel mischaracterizes the import of the Court's decision to defer ruling on certain affirmative defenses.  While the Court may ultimately rule on the effect of these defenses, it is apparent from the Court's Order that it expects the jury to make the factual determinations underlying its decision.  See Final Pre-Trial Conference Order at 8.

The MGA Parties' affirmative defense of estoppel is a question of fact that should be tried to the jury.  "The existence of estoppel is a question of fact for the trial court."  Elmore v. Oak Valley Hosp. Dist., 204 Cal. App. 3d 716, 724 (1988) (overruling the trial court which sustained a demurrer on plaintiff's estoppel claim); see also Muraoka v. Budget Rent-a-Car, 160 Cal. App. 3d 107, 117 (1984) (holding trial court erred in granting defendant's demurrer stating, "[the estoppel question] is one of fact which should be left for resolution by a jury and not determined upon general demurrer").  Even if the Court chooses to make the ultimate decision as to whether this defense will bar Mattel's claims (although courts routinely submit the entire defense to the jury), the jury must still make the factual determinations that underlie the Court's decision.  Because the facts underlying this defense are inextricably intertwined with the facts underlying Mattel's claims, taking those factual determinations away from the jury would violate defendants' Seventh Amendment jury rights, as explained in detail in the opposition to Mattel's Motion in Limine No. 4.  Accordingly, the jury should be given a proper framework for making those factual determinations.

Mattel's objection that the defense of estoppel applied only to Bryant's claims and should thus be eliminated is meritless.  While Bryant is no longer a party to this lawsuit, the effect of the contracts between Bryant and Mattel is central to this lawsuit.  Thus, if Mattel's actions somehow undermined its contractual relationship with Bryant, its claims based on that contractual relationship must also fail.  Moreover, the existence of affirmative

277

1   defenses that negate or limit the contractual relationship may in turn undermine Mattel's
2   claims that the MGA Parties intended to cause harm to that relationship. For these reasons,
3   this instruction continues to be appropriate.
4
5   Because the jury is making findings of fact, rather than conclusions of law, it is
6   unnecessary to relate the defenses to specific claims. Moreover, the relevant claims are
7   identified in the MGA Parties' proposed Special Verdict forms.
8
9   Mattel's objection ignores that "[t]he doctrine of estoppel by conduct is embodied in
10  Evidence Code section 623, which states: 'Whenever a party has, by his own statement or
11  conduct, intentionally and deliberately led another to believe a particular thing true and to
12  act upon such belief, he is not, in any litigation arising out of such statement or conduct,
13  permitted to contradict it.'" Hill v. Kaiser Aetna, 130 Cal. App. 3d 188, 195 (1982).
14  Conduct giving rise to estoppel includes "silence or negative omission to do anything."
15  City of Long Beach v. Mansell, 3 Cal. 3d 462, 488 n.22 (1970). Mattel's contention that
16  there is a duty to speak requirement has no bearing on the instruction. The case Mattel
17  cites for this principle, Feduniak v. California Coastal Com'n, 148 Cal. App. 4th 1346,
18  1362 (2007) (states that "[i]t is not necessary that the duty to speak should arise out of any
19  agreement, or rest upon any legal obligation in the ordinary sense. Courts of equity apply
20  in such cases the principles of natural justice, and whenever these require disclosure they
21  raise the duty and bind the conscience and base upon the omission an equitable forfeiture
22  to the extent necessary to the protection of the innocent party.") (citations omitted). The
23  "duty" is thus simply a determination that under the circumstances, a party wishing to
24  assert its right must speak. Mattel certainly had such a duty in this case given that it knew
25  of the alleged infringement and remained silent.
26
27  Mattel misses the mark in claiming that there is no "estoppel of employment claims"
28  defense. This is what the estoppel defense asserts in this case: that Mattel is estopped from

1  bringing its employment claims (which includes breach of duty claims based upon alleged
2  violations of its employment agreements and alleged related duties). The MGA Parties
3  believe that the jury's understanding on the issue would benefit from receiving a specific
4  instruction as to estoppel concerning Mattel's employment claims in addition to the
5  general instruction on estoppel. Additionally, Mattel's claim that the MGA Parties'
6  proposed instruction focuses improperly on other employee's moonlighting ignores the
7  basis of this defense as asserted in this case, namely that Mattel allowed its employees
8  both to moonlight and develop their own artistic works without complaint. Mattel knew its
9  employees were moonlighting for its competitors and/or developing their own artistic
10  work.   Despite this knowledge, Mattel took no steps to prevent its employees from
11  moonlighting or working on their own artistic projects.   As Mattel allowed all of its other
12  employees to moonlight or develop independent artistic work without consequences, it is
13  estopped from bringing claims against Bryant for violations of his employment agreement
14  or arising out of those alleged violations.   This application of estoppel is hardly "made
15  up."

16

17  Finally, as Mattel proposes the same "Counter-Instruction" here as with respect to the
18  previous proposed instruction, this "Counter-Instruction" should be rejected for the same
19  reasons as stated in the previous response.

20

21

22

23

24

25

26

27

28

Objections and Responses re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

# -REVISED-

## Defense: Acquiescence

If you find that Mattel acquiesced to the development and marketing of Bratz, you must find for Isaac Larian, MGA and MGA (HK) with respect to claims for Bryant's alleged violations of his employment agreement.  If you find that Mattel acquiesced to its employees moonlighting and development of their own artistic work, you must find for Isaac Larian, MGA and MGA (HK) with respect to claims arising out of  Bryant's alleged violations of his employment agreement.

Acquiescence in error takes away the right of objecting to it.

Acquiescence exists when a person's acts or words, silence or inaction, would be understood by a reasonable person as intended to indicate that the conduct is allowed, and in fact is so understood by the person doing the alleged wrongful act.

**Authority:** Cal. Civ. Code § 3516; <u>Security Pac. Nat'l Bank v. Wozab</u>, 51 Cal. 3d 991, 1005 (1990).

1   **Mattel's Objections**

2

3       Mattel objects to defendants' proposed instruction regarding Acquiescence for the

4   following reasons:

5       1.      Defendants' proposed jury instruction is contrary to the Court's April 25, 2008

6   Order.  As recognized by the Court, acquiescence is an equitable defense to be tried to the

7   Court, not the jury, and the Court has deferred ruling on this affirmative defense until after

8   trial.  *See* April 25, 2008 Order, at 7.  The Court's finding is well supported by case law.

9   *See, e.g.*, *Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply Inc*., 106 F.3d

10  894, 899 (9th Cir. 1997) (estoppel, laches, and acquiescence are equitable defenses);

11  *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir. 1996).

12      2.      Mattel further objects to the defendants' proposed instruction on the ground

13  that it relates to an affirmative defense that was arguably relevant only to claims against

14  Carter Bryant.  Carter Bryant is no longer a defendant in this case, and defendants have not

15  shown that they are entitled to assert this purported affirmative defense as to the claims

16  against them.

17      3.      This proposed instruction is confusing and prejudicial to the extent it does not

18  even inform the jury what claims the issue of acquiescence could even conceivably relate

19  to, nor does it explain what the effect of a finding of acquiescence would be.

20      4.      If the Court decides, over Mattel's objections, to permit the jury to decide

21  acquiescence, it should not give defendants' proposed instruction because it is incorrect as

22  a matter of law, confusing and creates the risk of error.  Defendants' proposed instruction

23  permits the jury to find acquiescence if "Mattel acquiesced in the development and

24  marketing of Bratz."  The instruction utterly fails to tie the acquiescence defense to

25  Mattel's knowledge of Bryant's alleged violations of his legal duties, which is required

26  under the law.  "Acquiescence constitutes a ground for denial of relief only upon a finding

27  of conduct on the plaintiff's part that amounted to an assurance to the defendant, express or

28  implied, that plaintiff would not assert …" his rights against the defendant.  *See Novell Inv.*

1  *v. Weird Stuff*, No. C92-20467 JW/EAL, 1994 WL 16458729 * 13 (N.D. Cal. 1993).

2  Hence, Mattel must have had knowledge of Bryant's breaches of his legal duties *and*

3  acquiesced to them.

4       5.     Defendants' claim that acquiescence may be found if "Mattel acquiesced to its

5  employees moonlighting and development of their own artistic work" is simply erroneous.

6  Mattel's conduct with respect to other employees has no bearing on whether it knowingly

7  acquiesced to Bryant's breaches of his legal duties.

8       6.     Defendants' instruction that "[a]cquiescence in error takes away the right of

9  objecting to it" is unintelligible and confusing. Indeed, the authority defendants cite for

10  this statement involved a case in which the plaintiffs in a credit foreclosure action had full

11  knowledge of the legal choices they were making, and chose a particular course of action.

12  That has no bearing on this case where Mattel alleges that it had no knowledge of

13  defendants' alleged breaches at the time they were occurring. A clearer statement of the

14  legal standard on this issue would be that: "If the jury finds that Mattel acquiesced but did

15  so without knowledge of the true facts surrounding the creation of Bratz or Bryant's

16  involvement with MGA, Larian and/or MGA (HK), no defense of acquiescence may be

17  found."

18       7.     As with Defendants' other affirmative defenses, they mistakenly attempt to

19  permit the jury to find acquiescence based on Mattel's purported "silence or inaction" *See*

20  *Cal. Western Sch. of Law v. Cal. Western Univ.*, 125 Cal. App. 3d 1002, 1007 (1981)

21  ("Acquiescence by silence does not normally amount to a defense…."). Defendants offer

22  no support for this erroneous position.

23       8.     *Counter-Instruction*: If the Court decides, in spite of its April 25, 2008 Order

24  and Mattel's objections, that an acquiescence instruction should be given to a jury, it

25  should be as follows:

26            The defendants claim that Mattel acquiesced to the wrongful conduct

27            at issue in Mattel's claims against the defendants in this case. To prevail on

28            this affirmative defense, the defendants must prove that Mattel knew of the

defendants' wrongful conduct and assured the defendants, expressly or impliedly, that Mattel would not assert its rights against the defendants.

**Authority**: *Novell Inv. v. Weird Stuff*, No. C92-20467 JW/EAL, 1994 WL 16458729 * 13 (N.D. Cal. 1993); *Cal. Western Sch. of Law v. Cal. Western Univ.*, 125 Cal. App. 3d 1002, 1007 (1981).

**MGA Parties' Response**

To begin with, Mattel mischaracterizes the import of the Court's decision to defer ruling on certain affirmative defenses.  While the Court may ultimately rule on the effect of these defenses, it is apparent from the Court's Order that it expects the jury to make the factual determinations underlying its decision.  <u>See</u> Final Pre-Trial Conference Order at 8.

The MGA Parties' affirmative defense of acquiescence is a question of fact that should be tried to the jury.  <u>Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply</u>, 106 F.3d 894, 899 (9th Cir. 1997) (upholding district court's ruling where jury decided questions of laches, equitable estoppel, acquiescence, and unclean hands).  Even if the Court chooses to make the ultimate decision as to whether this defense will bar Mattel's claims (although courts routinely submit the entire defense to the jury), the jury must still make the factual determinations that underlie the Court's decision.  Because the facts underlying this defense are inextricably intertwined with the facts underlying Mattel's claims, taking those factual determinations away from the jury would violate defendants' Seventh Amendment jury rights, as explained in detail in the opposition to Mattel's Motion in Limine No. 4.  Accordingly, the jury should be given a proper framework for making those factual determinations.

Mattel's objection that the defense of waiver applied only to Bryant's claims and should thus be eliminated is meritless.  While Bryant is no longer a party to this lawsuit, the effect of the contracts between Bryant and Mattel is central to this lawsuit.  Thus, if Mattel's actions somehow undermined its contractual relationship with Bryant, its claims based on that contractual relationship must also fail.  Moreover, the existence of affirmative defenses that negate or limit the contractual relationship may in turn undermine Mattel's claims that the MGA Parties intended to cause harm to that relationship.  For these reasons, this instruction continues to be appropriate.

Because the jury is making findings of fact, rather than conclusions of law, it is unnecessary to relate the defenses to specific claims.  Moreover, the relevant claims are identified in the MGA Parties' proposed Special Verdict forms.

Mattel's objection, and counter-instruction, also erroneously rely on Novell Inc. v. Weird Stuff, Inc., 0094 WL 16458729 (N.D. Cal. Aug. 2, 1993) (which Mattel consistently and incorrectly cites as found at "1994 WL 16458729"), for the proposition that defendants are required to tie the acquiescence defense to Mattel's knowledge of Bryant's alleged violations of his legal duties.  This reliance is unavailing, as Novell offers no support for such a statement.  Moreover, in Novell, the court found that there were no disputed facts supporting a waiver defense when Novell had taken the affirmative steps of disposing of its products and verbally informing defendants that it had no intention of waiving copyright.  Mattel has taken no such steps.

Although Mattel proposes its own instruction on this issue instead of the one proposed by the MGA Parties, Mattel's proposed instruction, just like its objections, ignores the basis for acquiescence in this case – namely, that if the jury finds that Mattel acquiesced to either the development and marketing of BRATZ or its employees moonlighting or development of their own artistic work, the jury must find for Carter Bryant and the MGA Parties with respect to claims for Bryant's alleged violations of his Inventions Agreement or other alleged duties of Mattel. Mattel's proposed instruction, just like its objections, also ignores that the acquiescence exists when a person's acts or words, silence or inaction, would be understood by a reasonable person as intended to indicate that the conduct is allowed, and in fact is so understood by the person doing the alleged wrongful act. See Sec. Pac. Nat'l Bank v. Wozab, 51 Cal. 3d 991, 1005 (1990). Indeed, as the doctrine of acquiescence is a close cousin of the estoppel doctrine, the authorities indicating that silence or inaction could provide a basis for estoppel apply with full force here. See John

1  H. Spohn Co. v. Bender, 18 Cal. App. 2d 447, 451 (1937) ("The principle … known as the
2  doctrine of acquiescence …   [is] often referred to as quasi estoppel."); see also City of
3  Long Beach v. Mansell, 3 Cal. 3d 462, 488 n.22 (1970) (conduct giving rise to estoppel
4  includes "silence or negative omission to do anything"). To the extent California Western
5  School of Law v. California Western Univ., 125 Cal. App. 3d 1002, 1007 (1981), is
6  inconsistent with the California Supreme Court's decision in City of Long Beach, it should
7  not be followed.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**-REVISED-**

**Defense: Abandonment (Copyright Infringement)**

Larian, MGA, and MGA (HK) contend that a Mattel cannot bring an action for copyright infringement because Mattel abandoned it claims by conducting an internal investigation and concluding that BRATZ did not infringe on its intellectual property.  Mattel cannot claim ownership of a copyright if it was abandoned.  In order to show abandonment, Isaac Larian, MGA and/or MGA (HK) have the burden of proving each of the following by a preponderance of the evidence:

      1.     Mattel intended to surrender ownership rights in the work; and

      2.     Conduct by Mattel which was **"consistent with an intent to abandon"** or which **"implies an abandonment"**.

Inaction alone does not constitute abandonment of the copyright; however, it may be a factor for you to consider in determining whether Mattel has abandoned its claims.

**Authority:**  Ninth Circuit Manual of Model Jury Instructions 17.19 (2007); <u>Lopez v. Elec. Rebuilders, Inc.</u>, 416 F. Supp. 1133, 1135 (C.D. Cal. 1976); <u>Read v. Turner</u>, 239 Cal. App. 2d 504 (1966).

1  **Mattel's Objections**

2

3    Mattel objects to defendants' proposed instruction regarding Defense: Abandonment

4  (Copyright Infringement) on the following grounds:

5    1.    Defendants' proposed jury instruction is contrary to the Court's April 25, 2008

6  Order.  As recognized by the Court, the defense of abandonment is essentially equitable in

7  nature, and the Court deferred ruling on this affirmative defense until after trial.  *See* April

8  25, 2008 Order, at 7.

9    2.    In any event, this proposed instruction deviates from the Ninth Circuit Model

10  Instruction.  Contrary to Model Instruction 17.19, defendants' second paragraph suggests

11  that Mattel's conduct need only be "consistent with an intent to abandon" or "implies an

12  abandonment."  The model instruction states that defendants must show "an act by the

13  plaintiff evidencing that intent."

14    3.    The prefatory statement in defendants' proposed instruction is misleading and

15  prejudicial to Mattel to the extent it purports to inform the jury that Mattel conducted an

16  internal investigation pursuant to which it "conclude[ed] that BRATZ did not infringe on

17  its intellectual property."  As recognized by the Court, the internal investigation to which

18  defendants refer did not relate to the issues in this case, and the inclusion of this statement

19  would be misleading and unfair.

20    4.    While Defendants emphasize the portion of the model instruction regarding

21  "inaction" as one factor that may be considered in determining whether Mattel has

22  abandoned its claims, they ignore the Comments to the Model Instruction, which make

23  clear that "[a]bandonment of a right must be manifested by an overt act."  *See* 9th Cir. Civ.

24  Jur. Instr. 17.19, cmt. (citing *Micro Star v. Formgen, Inc*., 154 F.3d 1107, 1114 (9th Cir.

25  1998)).  This qualification should be included in the instruction so as to avoid confusion as

26  to the proper standard.

27

28

5.     *Counter-Instruction*:  If the Court decides, in spite of its April 25, 2008 Order and Mattel's objections, that an acquiescence instruction should be given to a jury, it should conform to the Ninth Circuit Model Instruction, as follows:

> The defendants contend that Mattel does not own the copyrights at issue in this case because Mattel abandoned the copyrights.  Mattel cannot claim ownership of the copyrights if they were abandoned.  In order to show abandonment, the defendants have the burden of proving each of the following by a preponderance of the evidence:
>
> 1.     Mattel intended to surrender rights in the works; and
>
> 2.     An act by Mattel evidencing that intent.
>
> Mere inaction does not constitute abandonment of the copyright; however, this may be a factor for you to consider in determining whether Mattel has abandoned the copyright.
>
> If you find that Mattel has proved its claims for copyright infringement against the defendants, your verdict should be for Mattel, unless you find that the defendants have proved each of the elements of this affirmative defense, in which case your verdict should be for the defendants.

**Authority:**  9th Cir. Civ. Jury Instr. 17.19 (2007).

1 | **MGA Parties' Response**

2

3 To begin with, Mattel mischaracterizes the import of the Court's decision to defer ruling
4 on certain affirmative defenses.  While the Court may ultimately rule on the effect of these
5 defenses, it is apparent from the Court's Order that it expects the jury to make the factual
6 determinations underlying its decision.  <u>See</u> Final Pre-Trial Conference Order at 8.

7

8 Even if the Court chooses to make the ultimate decision as to whether this defense will bar
9 Mattel's claims, the jury must still make the factual determinations that underlie the
10 Court's decision.  Because the facts underlying this defense are inextricably intertwined
11 with the facts underlying Mattel's claims, taking those factual determinations away from
12 the jury would violate defendants' Seventh Amendment jury rights, as explained in detail
13 in the opposition to Mattel's Motion in Limine No. 4.  Accordingly, the jury should be
14 given a proper framework for making those factual determinations.

15

16 Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.
17 In proposing jury instructions, the parties are permitted to modify the language of any
18 model instruction to make it less confusing or more appropriate in the context of a
19 particular case.  <u>See</u> <u>McDowell v. Calderon</u>, 130 F.3d 833, 840-41 (9th Cir. 1997).  Indeed,
20 modification is sometimes necessary to make an instruction accurate and complete.  <u>See,</u>
21 <u>e.g.,</u> <u>United States v. Hegwood,</u> 977 F.2d 492, 496 (9th Cir. 1992) (approving modification
22 of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the
23 district court merely read the model jury instruction, it would have committed plain error,
24 since that instruction makes no reference whatsoever to knowledge or intent").  That was
25 the case here, and that is why Mattel's unmodified counter-instruction is inappropriate.

26

27 Here, it was appropriate to substitute the element in the Ninth Circuit Model Jury
28 Instructions, Civil, 17.19 (2007) requiring "an act by the plaintiff evidencing [the] intent"

1    to abandon with the element requiring "[c]onduct by Mattel which was 'consistent with an

2    intent to abandon' or which 'implies an abandonment.'"  <u>Lopez v. Elec. Rebuilders, Inc.</u>,

3    416 F. Supp. 1133, 1136 (C.D. Cal. 1976).  Such element closer resembles the allegations

4    by the defendants; moreover, it is entirely consistent with caselaw.  <u>See</u> <u>Read v. Turner</u>,

5    239 Cal. App. 2d 504, 511 (1966).

6

7    Mattel's complaints that defendants (1) "emphasize the portion of the model instruction

8    regarding 'inaction' as one factor that may be considered in determining whether Mattel

9    has abandoned its claims" and (2) "ignore the Comments to the Model Instruction, which

10    make clear" that abandonment requires an overt act, are better addressed to the drafters of

11    the Model Instruction, which has been followed by the MGA Parties without modification

12    in this regard. Indeed, it is the Model Instruction itself that directs the Court to advise the

13    jury that inaction may be considered as a factor in the abandonment defense, and it is also

14    the instruction that omits the explanation concerning the overt act requirement – and for a

15    good reason, as it would be merely duplication of the Model Instruction's

16    acknowledgment that mere inaction is insufficient to establish abandonment.

17

18    Finally, Mattel's assertion that it does not agree that the internal investigation it conducted

19    "conclude[ed] that BRATZ did not infringe on its intellectual property" should not be

20    given any credit, as Mattel actually precluded the defendants from testing the veracity of

21    that statement by refusing to disclose most of the evidence concerning the investigation on

22    the grounds of privilege. Moreover, the little evidence that it did disclose warrants the very

23    conclusion Mattel now complains about – indeed, if Mattel concluded that its property had

24    been in fact infringed, it is hard to believe that Mattel would have set on its rights for as

25    long as it did, especially given Mattel's aggressive track record of defending its intellectual

26    property. (<u>See</u> Declaration of Jason D. Russell In Support of MGA Parties' Motion for

27    Partial Summary Judgment dated March 7, 2008, Ex. 70.)

28

1  Should the evidence as it is finally laid out before the jury not include evidence of Mattel's
2  investigation, this instruction may be omitted.
3
4  Further, for the reasons set forth above, Mattel's proposed alternative instruction does not
5  adequately instruct the jury on this defense.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>Defense: 205(d) (Bona Fide Purchaser for Value)</u>**

You may find that the MGA agreement with Bryant dated October 4, 2000 has priority over the Mattel agreement with Bryant dated January 4, 1999 if you find that the MGA-Bryant agreement was:

1.   Recorded with the Copyright Office first in such a manner as to give Mattel constructive notice of the transfer; and

2.   Executed in good faith; and

3.   For valuable consideration; and

4.   Without notice of an earlier transfer.

For purposes of this instruction, recordation with the Copyright Office means either (1) the filing of the transfer agreement itself, or (2) registration with the Copyright Office listing ownership by assignment.

**Authority:** 17 U.S.C. § 205(d); 2 <u>Nimmer on Copyright</u> § 7.16 (2007) ("[A]lthough an instrument of transfer to a first purchaser [Mattel] may be recorded prior to the time that the copyright owner purports to sell the same copyright interest to a bona fide subsequent purchaser [MGA], the latter does not have constructive notice of the first purchase if the work has not been registered at the time the subsequent purchaser acquired his interest.**"**).

**Mattel's Objections**

Mattel objects to defendants' proposed instruction as follows:

1.      This proposed instruction is contrary to the Court's April 25, 2008 Order, wherein the Court deferred ruling on this defense until after trial.  *See* April 25, 2008 Order, at 8.

2.      Defendants have no basis to claim that they are bona fide purchasers for value pursuant to 17 U.S.C. § 205(d).  That provision provides that where there are competing transfers of copyright, a prior transferee (in this case, Mattel, by virtue of the Inventions Agreement), prevails unless the later purported transferee (here, MGA) took in good faith without notice of the earlier transfer and recorded the assignment document first.  *See* 17. U.S.C. § 205(d) ("[T]he later transfer prevails if recorded first … and if taken in good faith … and without notice of the earlier transfer.").  Here, MGA has admitted that it did not record its copyright assignment.  The defense fails for that reason alone, and this proposed instruction should not be given to the jury.

3.      Defendants' proposed instruction is erroneous since it ignores the statutory rule that the transferee who first registers and records prevails over any later recording transferee. *See* 17 U.S.C. § 205(d) ("later transfer prevails if recorded in such manner" (i.e., "in the manner required to give constructive notice under subsection (c)" (emphasis added); *id.* § 205(c) (for a recordation to give constructive notice, it must be "(1) [a] document … [that] specifically identifies the [transferred] work"); *see also Peer Int'l Corp. v. Latin Am. Music Corp.*, 161 F. Supp. 2d 38, 48 (D.P.R. 2001)).  Defendants simply ignore this language.

4.      Mattel respectfully requests that the Court adopt Mattel's proposed instruction, which adheres to the statute and properly sets forth the legal requirements for a later transferee to prevail.  *See* Mattel's Proposed Jury Instruction re Copyright—Affirmative Defense—Good Faith Transfer.

1    **Authority**:  17 U.S.C. § 205(d); *Peer Int'l Corp. v. Latin Am. Music Corp.*, 161 F.

2    Supp. 2d 38, 48 (D.P.R. 2001).

1   **MGA Parties' Response**

2

3   To begin with, Mattel mischaracterizes the import of the Court's decision to defer ruling

4   on certain affirmative defenses.  While the Court may ultimately rule on the effect of these

5   defenses, it is apparent from the Court's Order that it expects the jury to make the factual

6   determinations underlying its decision.  <u>See</u> Final Pre-Trial Conference Order at 8.

7

8   Although Mattel asserts that it is undisputed that Bryant's assignment to MGA of BRATZ

9   works has not been recorded, Mattel's objection ignores that MGA's registrations each

10  specifically note that MGA's ownership in the work at issue is by "assignment" of Carter

11  Bryant, which is all that is required by 17 U.S.C. § 205(d).  Mattel's objection also fails to

12  note that there is no dispute that MGA's registrations of the works at issue were recorded

13  with the Copyright Office long before Mattel's purported registrations.

14

15  As for Mattel's proposed instruction on this issue, it should not be adopted for an

16  additional reason that it utilizes an improper term "Bratz works."

17

18

19

20

21

22

23

24

25

26

27

28

## -REVISED-

**Defense: Good Faith**

The good faith of Larian, MGA, and MGA (HK) is a factor that should be considered when assessing any claim by Mattel that Larian, MGA, and/or MGA (HK) acted in bad faith or with bad intent.  To the extent Mattel's claims implicate defendants' intent or mental state, good faith is a relevant inquiry for which Mattel bears the burden of proof.

**Authority:**  <u>People v. Webb</u>, 74 Cal. App. 4th 688, 694 (1999); 5 B.E. Witkin, <u>Cal. Proc.: Pleadings</u> § 1008 (4th ed. 1997) (distinguishing new matters from facts constituting a denial of an element and identifying good faith as the latter and, thus, not an affirmative defense).

**Mattel's Objections**

Mattel objects to defendants' proposed instruction on the following grounds:

1.      This proposed instruction is misleading and argumentative because it is worded so as to presume good faith: "The good faith of Larian, MGA and MGA (HK) is a factor that should be considered…."  This will be confusing and potentially cause the jury to presume that Defendants acted in good faith.  The instruction should state clearly that "*whether*" defendants acted in good faith is a factor to be considered.

2.      Because the good faith defense is inapplicable to Mattel's copyright infringement claim, *see Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978), Mattel's strict liability claims for unfair competition and conversion (*see Community Assisting Recovery, Inc. v. Aegis Ins. Co.*, 92 Cal. App. 4th 886, 891 (2001); *Virtanen v. O'Connell*, 140 Cal. App. 4th 688, 707 (2006)), and Mattel's intentional tort claims (*see Zivkovic v. Southern Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002)), the instruction should make clear that the defense is only available where defendants' intent or mental state is an element of the offense.  Defendants' proposed instruction does not even inform the jury what claims the issue of good faith could even conceivably relate to.

**MGA Parties' Response**

Mattel's objection that good faith is not relevant ignores that any claim that is pled as including an element of scienter will require the jury to determine whether the MGA Parties acted with good faith.  Good faith is relevant to any claim where intent is required or pled as an element.  <u>See, e.g., State Farm Mut. Auto. Ins. Co. v. Superior Court,</u> 228 Cal. App. 3d 721, 727 (1991) (holding that, where purported affirmative defense was relevant to negate alleged intent, it was not properly considered an affirmative defense but rather a denial of plaintiff's allegations, which could be proven as such at trial).

**-REVISED-**

**Defense: *De Minimis* Use**

Larian, MGA, and MGA (HK) contend that even if Mattel can establish that it has a copyright interest in Carter Bryant's drawings, it cannot recover damages in its claim for copyright infringement because any similarities between the protectable elements of the drawings and the protectable elements of the BRATZ dolls are *de minimis*.

Even where there has been some copying, that fact alone is not conclusive of infringement. Some copying is permitted.  In addition to copying, it must be shown that this has been done to an unfair extent.  This principle reflects the legal maxim *de minimis non curat lex* (the law does not concern itself with trifles).  *De minimis* copying is not actionable.

If the similarities between the copyrighted work and the copied work consist only of unprotectable elements and elements in the public domain, then the copying is *de minimis* and no recovery is available.

When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity.

**Authority:**   Newton v. Diamond, 388 F.3d 1189, 1192-93 (9th Cir. 2004); Apple Computer v. Microsoft Corp., 35 F.3d 1435, 1439 (9th Cir. 1994).

**Mattel's Objections**

Mattel objects to defendants' proposed instruction for the following reasons:

1.     The instruction emphasizes that "[s]ome copying is permitted," without making clear that "a taking is considered *de minimis* only if it is so meager and fragmentary that the average audience would not recognize the appropriation."   *Fisher v. Dees*, 794 F.2d 432, 434 (9th Cir. 1986).

2.     Defendants' proposed instruction does not make sufficiently clear that the *de minimis* use defense requires a determination of "whether there is a high enough degree of similarity between the works to establish copying, and whether that copying is substantial enough to constitute infringement." *Newton v. Diamond*, 388 F.3d 1189, 1194-1195 (9th Cir. 2004).

3.     To avoid jury confusion, the instruction should make clear that "[s]ubstantiality is measured by considering the qualitative and quantitative significance of the copied portion in relation to" Bryant's drawings as a whole.  *Id.* at 1195  (citing *Worth v. Selchow & Righter Co.*, 827 F.2d 569, 570 n.1 (9th Cir. 1987) ("[T]he relevant inquiry is whether a substantial portion of the protectable material in the *plaintiff*'s work was appropriated – not whether a substantial portion of *defendant*'s work was derived from plaintiff's work.") (emphasis supplied).  Applying this standard to the facts of this case, the jury should be instructed that "substantiality is measured by considering the qualitative and quantitative significance of Bryant's original drawings in relation to the Bratz dolls as a whole."  Defendants' selectively quote from *Newton* in ways that will lead to jury confusion.

4.     There is no basis for defendants' to inform the jury that "[w]hen the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity."  It is also unclear what defendants are even attempting to convey to the jury with this statement (or how it could conceivable be relevant) in the context of a proposed instruction relating to *de minimis* use.

5. *Counter-Instruction*: If the Court decides, in spite of its April 25, 2008 Order and Mattel's objections, to give an instruction regarding *de minimus* use, it should be as follows:

> Defendants claim that even if Mattel can establish that it has a copyright interest in Carter Bryant's drawings, it cannot recover damages on the ground that any similarities between the drawings and the Bratz dolls are *de minimis*. The *de minimis* use defense may only be found if the copying between Bryant's drawings and the Bratz dolls is so meager and fragmentary that the average person would not recognize the appropriation. On the other hand, if you find that there is a high enough degree of similarity between the works as to establish copying, and that copying is substantial enough to constitute an infringement of Mattel's copyright, then no *de minimis* use defense may be found. Substantiality is measured by considering the qualitative and quantitative significance of Bryant's original drawings in relation to the Bratz dolls as a whole.

**MGA Parties' Response**

Mattel's objections, and its proposed counter-instruction, merely represent an attempt to bias the instruction in its favor.  The MGA Parties' proposed instruction echoes clear and concise language of the case law on point:  "For an unauthorized use of a copyrighted work to be actionable, the use must be significant enough to constitute infringement.  This means that even where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial.  The principle that trivial copying does not constitute actionable infringement has long been a part of copyright law. Indeed, as Judge Learned Hand observed over 80 years ago: 'Even where there is some copying, that fact is not conclusive of infringement. Some copying is permitted. In addition to copying, it must be shown that this has been done to an unfair extent.'  This principle reflects the legal maxim, de minimis non curatlex (often rendered as, 'the law does not concern itself with trifles')."  Newton v. Diamond, 388 F.3d 1189, 1192-93 (9th Cir. 2004) (internal citations omitted).

As the Supreme Court held in Feist Publ'ns, Inc. v. Rural Telegraph Serv. Co., 499 U.S. 340, 349-50 (1991), "The primary objective of copyright is not to reward the labor of authors, but 'to promote the Progress of Science and useful Arts.'" Art. I, § 8, cl. 8. Accord Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 (1975).  To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work.  Harper & Row Publishers v. Nation Enters., 431 U.S. 531, 556-557 (1985).  This principle, known as the idea/expression or fact/expression dichotomy, applies to all works of authorship."

Furthermore, Mattel's proposed counter-instruction ignores the distinction between protectable and unprotectable material, and would have the jury include in its consideration copying of unprotectable material.  The Supreme Court held in Feist Publ'ns,

1  Inc. that "[t]he mere fact that a work is copyrighted does not mean that every element of
2  the work may be protected.  Originality remains the sine qua non of copyright; accordingly,
3  copyright protection may extend only to those components of a work that are original to
4  the author." Id. at 348 (emphasis added).   In other words, it is only copying of
5  copyrightable elements of a work that is answerable under the federal Copyright Act.

6

7  Consistent with Feist, applicable Ninth Circuit precedent holds that, because only those
8  elements of a work that are protectible can be compared when it comes to the question of
9  copyright infringement, the unprotectible elements of the work need to be filtered out and
10 disregarded.  As summarized in Cavalier v. Random House, Inc., 297 F.3d 815 (9th Cir.
11 2002):

12     A court "must take care to inquire only whether 'the protectible elements,
13     standing alone, are substantially similar.'" Williams v. Crichton, 84 F.3d 581,
14     588 (2d Cir. 1996) (emphasis in original) (citation omitted); accord Apple
15     Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442-43 (9th Cir. 1994).
16     Therefore, when applying the extrinsic test, a court must filter out and
17     disregard the non-protectible elements in making its substantial similarity
18     determination.   See Shaw [v. Lindheim], 919 F.2d [1353, 1361 (9th Cir.
19     1990)] (applying the extrinsic test to determine "whether there is substantial
20     similarity between the protected expression of ideas in two literary works")
21     (emphasis added); Berkic v. Crichton, 761 F.2d 1289, 1293-94 (9th Cir. 1985)
22     (rejecting consideration of general ideas as well as scenes-a-faire in
23     determining substantial similarity under the extrinsic test).

24
25 297 F.3d at 822-23.  See also Apple Computer Inc., 35 F.3d at 1439 ("When the range of
26 protectable and unauthorized expression is narrow, the appropriate standard for illicit
27 copying is virtual identity.").  The MGA Parties' proposed instruction properly focuses the
28 jury on the protectable elements of Mattel's work, rather than every element.

1

2   Moreover, Mattel's counter-instruction ignores its own discussion of the <u>Newton</u> that

3   "[s]ubstantiality is measured by considering the qualitative and quantitative significance of

4   <u>the copied portion</u> in relation to" Bryant's drawings as a whole" (emphasis added), and

5   inaccurately argues that "the jury should be instructed that 'substantiality is measured by

6   considering the qualitative and quantitative significance of Bryant's original drawings in

7   relation to the Bratz dolls as a whole,'" which is a clear misstatement of the applicable

8   legal principles.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | **<u>Defense: Unclean Hands</u>**

2 | *-NO LONGER APPLICABLE AND WITHDRAWN-*

**PHASE 1(b) – Damages**

**<u>Damages — Introduction</u>**

You have found in favor of Mattel as to the following claims: _____.  I will now instruct you as to the measure of damages for each of those claims.  Damages means the amount of money that will reasonably and fairly compensate Mattel for any injury you find was caused by the Defendants.

It is for you to determine what damages, if any, have been proved.   Mattel has the burden of proving damages by a preponderance of the evidence.  However, Mattel does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**Authority:**   Ninth Circuit Manual of Model Jury Instructions, Civil, 5.1 (2007) (as modified).

1  **Mattel's Objections**

2

3       Mattel objects to defendants' proposed instruction regarding Damages—Introduction

4  on the following grounds:

5       1.    This proposed instruction is duplicative given that the CACI Model

6  Instructions regarding damages to be awarded on Mattel's state law claims against

7  defendants include general introductory information regarding the purpose of damages and

8  the like.  *E.g.*, CACI Nos. 350, 3901.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **MGA Parties' Response**

2

3  The MGA Parties propose this instruction, which is more inclusive and more general than

4  the CACI instructions cited by Mattel, to give the jury a general introduction to the

5  concept of damages before delving into the various means of calculating damages for

6  different claims.  While the instructions relating to each means of calculating damages

7  may also have introductory language, the MGA Parties suggest that a separate, general

8  introduction will ensure that the jury understands that these principles apply universally.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Introduction to Contract Damages**

*-NO LONGER APPLICABLE AND WITHDRAWN-*


**Measure of Damages — Breach of the "Inventions" Provision of the Employee Agreement**

*-NO LONGER APPLICABLE AND WITHDRAWN-*


**Measure of Damages—Breach of the "Moonlighting" Provision of the Employee Agreement**

*-NO LONGER APPLICABLE AND WITHDRAWN-*


**Measure of Damages—Breach of the Conflict Questionnaire**

*-NO LONGER APPLICABLE AND WITHDRAWN-*

**-REVISED-**

**Measure of Damages for Intentional Interference with Contract**

If you have concluded that Isaac Larian, MGA and MGA (HK) intentionally interfered with Bryant's contract with Mattel to maintain Mattel's information in confidence, then you must now decide how much money will reasonably compensate Mattel for the harm caused by that interference.  In considering this claim, I instruct you that Mattel's claim is <u>only</u> based on the agreement between Carter Bryant and Mattel in which Mattel entrusted Bryant with confidential information and Bryant agreed to keep that information confidential.  Mattel's claim is not based on whether Mattel has a right to or owns BRATZ, and you should not consider who owns the rights to BRATZ in determining damages.

To recover damages for any harm, Mattel must prove:

      1.     The financial loss resulting from the loss of the benefits of the contractual relationship; and

      2.     Consequential losses caused by the interference.

**Authority:** Restatement (Second) of Torts § 774A (1979); <u>Di Loreto v. Shumake</u>, 38 Cal. App. 4th 35, 38 (1995); BAJI No. 7.89 (2008) (as modified).

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Measure of Damages for Intentional Interference With Contract on the following grounds:

1. Defendants fail to cite the model instruction found in CACI, the Court's preferred source for jury instructions on California law. Instead, their proposed instruction comes from an inapposite case and BAJI, which is no longer identified by the Court as a source for jury instructions, *see* Scheduling Order at 9, and is not officially approved by California state court rules. *See Cal. Rule of Court* 2.1050 (stating that CACI "are the official instructions for use in the state of California."). The case defendants cite deals with the availability of emotional distress damages (which are not at issue here) and relies on the same BAJI instruction defendants do. *See Di Loreto v. Shumake*, 38 Cal. App. 4th 35, 38-39 (1995). Intentional interference with contractual relations is a tort, and CACI No. 3901, Introduction to Tort Damages, sets forth the applicable law. Mattel's proposed instruction conforms to CACI No. 3901. *See* Mattel's Proposed Jury Instruction re Introduction to Tort Damages—Liability Established for Intentional Interference With Contractual Relations.

2. This proposed instruction is misleading and prejudicial to Mattel to the extent it erroneously informs the jury that Mattel's claim for intentional interference with contractual relations is based only on Bryant's agreement with Mattel to preserve confidential information. Mattel's claim is not so limited – Mattel is entitled to recover all damages caused by defendants' intentional interference with its contracts with Bryant. The Court's prior ruling expressly recognized that this claim may be based on "MGA's acts that may be found to have aided and abetted the breach or induced the breach of Bryant's fiduciary duty." April 25, 2008 Order, at 2. Moreover, the instruction that the jury should disregard who owns the rights to Bratz is perplexing because the jury clearly may consider that in deciding whether MGA encouraged Bryant to share Mattel's confidential information with MGA. Hence, this proposed instruction is erroneous.

312

3.     This proposed instruction also fails to inform the jury that Mattel is seeking punitive damages against defendants in connection with its claims for intentional interference with contractual relations.  *See* Mattel's Proposed Jury Instruction re Introduction to Tort Damages—Liability Established for Intentional Interference With Contractual Relations; Mattel, Inc.'s Second Amended Answer and Counterclaims, at ¶ 128.

4.     Finally, the proposed instruction is also confusing in that it states:  "If you have concluded that Isaac Larian, MGA and MGA (HK) intentionally interfered with Bryant's contract with Mattel . . . then you must now decide how much money will reasonably compensate Mattel for the harm caused by that interference."  Damages will be determined by the jury in Phase 1B and will obviously only be determined as to claims for which the jury found defendants liable in Phase 1A.  Accordingly, the proposed instructions regarding damages should clarify, if adopted, that liability has been determined.  Moreover, the proposed instruction confusingly implies that the jury must find all of the defendants liable for intentional interference in order to award any damages to Mattel, which is not the case.

**MGA Parties' Response**

Mattel's complaint regarding the defendants' reliance on <u>Di Loreto v. Shumake</u>, 38 Cal. App. 4th 35 (1995), and BAJI § 7.89 (2008), which was discussed in the <u>Di Loreto</u> case, is misplaced. <u>Di Loreto</u> states that damages for tortious interference are the "'economic harm to the plaintiff proximately caused by the acts of the defendant.'" 38 Cal. App. 4th at 39 (internal quotations and citations omitted). The fact that it goes on to discuss the impropriety of emotional distress damages does not change this. The proposed instruction accurately reflects this measure, using some language borrowed from the BAJI. While no longer the official model, the BAJI continue to be relied upon as a source of jury instruction language in both federal and California courts. <u>See, e.g.</u>, <u>Jones v. Hollenback</u>, 2007 WL 3335012, at *11 (E.D. Cal. Nov. 9, 2007) ("The fact that Jury Instruction No. 7 is not a Ninth Circuit Model Jury Instruction, but rather California pattern instruction, BAJI 2.22, is irrelevant. The instruction correctly and clearly states the law. There is nothing confusing about the purpose and intent of this instruction."); <u>Buell-Wilson v. Ford Motor Co.</u>, 160 Cal. App. 4th 1107, 1167 (2008) (asserting that, regarding punitive damages, "[a]n appropriate jury instruction would have been one similar to BAJI No. 14.72.2"); <u>Mayes v. Bryan</u>, 139 Cal. App. 4th 1075, 1091-92 (2006) (approving an instruction given at trial that was a mixture of CACI and BAJI models; noting that using definition of term from BAJI instruction made CACI instruction intelligible).

As for Mattel's complaint that the instruction does not contain Mattel's claim for punitive damages, Mattel lacks any evidentiary basis to seek punitive damages, so such an instruction is unnecessary. <u>See</u> <u>Barry v. Raskov</u>, 232 Cal. App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages, as there was not clear and convincing evidence of fraud); <u>see also</u> <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence").

1

2  Mattel also complains that the proposed instruction is confusing in that it states: "If you

3  have concluded that Isaac Larian, MGA and MGA (HK) intentionally interfered with

4  _____, then you must now decide how much money will reasonably compensate Mattel

5  for the harm caused by that interference." The quoted sentence, however, is from the

6  Model Instruction; it is entirely appropriate to modify that sentence to reflect whatever

7  liability determination (if any) is made in Phase 1A at that time.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections and Responses re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**Measure of Damages for Conversion**

If you have concluded that Mattel proved its claim of conversion against _____, then you must now decide Mattel's damages.

Mattel's damages are based on the fair market value of the tangible physical property at the time defendant(s) wrongfully exercised control over it.  Fair market value is the highest price that a willing buyer would have paid to a willing seller, assuming:

    1.     That there is no pressure on either one to buy or sell; and

    2.     That the buyer and seller know all the uses and purposes for which the tangible physical property is reasonably capable of being used.

**Authority:**  CACI No. 2102 (2008) (as modified).

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Measure of Damages for Conversion on the following grounds:

1.      Defendants' proposed instruction deviates from the model instruction found in CACI.  The proposed instruction is misleading and incomplete, in that it fails to inform the jury that Mattel is also entitled to recover damages constituting reasonable compensation for the time and money spent by Mattel in attempting to recover its converted property. *See* CACI No. 2102; Mattel's Proposed Jury Instruction re Presumed Measure of Damages for Conversion.

2.      This proposed instruction also fails to inform the jury that Mattel is seeking punitive damages against defendants in connection with its conversion claims.  *See* Mattel's Proposed Jury Instruction re Presumed Measure of Damages for Conversion; Mattel, Inc.'s Second Amended Answer and Counterclaims, at ¶ 161.

3.      This proposed instruction also fails to recognize that Mattel may be entitled to seek damages based on the fair market value of the property at the time the conversion was discovered, rather than at the time the property was converted, when an award based on the value at the time of the conversion would be manifestly unjust.  *See Betzer v. Olney*, 14 Cal. App. 2d 53, 61 (1937).

4.      The proposed instruction is confusing in that it states:  "If you have concluded that Mattel provides it claim of conversion against ____, then you must now decide Mattel's damages."  Damages will be determined by the jury in Phase 1B and will obviously only be determined as to claims for which the jury found defendants liable in Phase 1A.  Accordingly, the proposed instructions regarding damages should clarify, if adopted, that liability has been determined.

1 | **MGA Parties' Response**

2

3 Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.

4 In proposing jury instructions, the parties are permitted to modify the language of any

5 model instruction to make it less confusing or more appropriate in the context of a

6 particular case.   See  McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997)

7 (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The

8 texts of 'standard' jury instructions are not debated and hammered out by legislators, but

9 by ad hoc committees of lawyers and judges.  Jury instructions do not come down from

10 any mountain or rise up from any sea.  Their precise wording, although extremely useful,

11 is not blessed with any special precedential or binding authority.  This description does not

12 denigrate their value, it simply places them in the niche where they belong.").  Indeed,

13 modification is sometimes necessary to make an instruction accurate and complete.  See,

14 e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification

15 of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the

16 district court merely read the model jury instruction, it would have committed plain error,

17 since that instruction makes no reference whatsoever to knowledge or intent.").

18

19 However, Mattel's first objection is legitimate and the omission of the element was in

20 error. The MGA Parties propose adding a sentence at the close of the instruction stating

21 that "Mattel may also recover for a reasonable compensation for the time and money it

22 spent attempting to recover its converted property.  However, this compensation may not

23 include any time or money expended in pursuit of litigation."  See Haines v. Parra, 193 Cal.

24 App. 3d 1553, 1559 (1987); CACI No. 2102 Sources and Authority.

25

26 As for Mattel's complaint that the instruction does not contain Mattel's claim for punitive

27 damages, Mattel lacks any evidentiary basis to seek punitive damages, so such an

28 instruction is unnecessary. See Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991) (trial

1   court properly refused to instruct jury on punitive damages, as there was not clear and

2   convincing evidence of fraud); see also Jones v. Williams, 297 F.3d 930, 934 (9th Cir.

3   2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is

4   supported by law and has foundation in the evidence").

5

6   Further, Mattel's assertion that the instruction should advise the jury that may be entitled

7   to seek damages based on the fair market value of the property at the time the conversion

8   was discovered, rather than at the time the property was converted, has no evidentiary

9   basis because Mattel failed to demonstrate that an award based on the value at the time of

10   the conversion would be manifestly unjust here. See In re Guillory, 285 B.R. 307, 315

11   (Bankr. C.D. Cal. 2002) ("The measure of damages for conversion is the fair market value

12   of the property at the time of the conversion, plus interest from that date."), citing Cal. Civ.

13   C. § 3336 (West 2000); cf. Betzer v. Olney, 14 Cal. App. 2d 53, 61 (1936) (cited by Mattel)

14   (requiring "special circumstances" for a different measure of damages to apply).  This is

15   particularly true given that the Court has confirmed that Mattel's conversion claim cannot

16   be based on any claim to the Bratz copyrights or other intangible property, but only to the

17   tangible property itself.

18

19   Mattel also complains that the proposed instruction is confusing in that it states:  "If you

20   have concluded that Mattel provides it claim of conversion against _____, then you must

21   now decide Mattel's damages." The quoted sentence, however, is from the Model

22   Instruction; it is entirely appropriate to modify that sentence to reflect whatever liability

23   determination (if any) is made in Phase 1A at that time.

24

25

26

27

28

319

1    **<u>Measure of Damages for Breach of Fiduciary Duty</u>**

2    *-NO LONGER APPLICABLE AND WITHDRAWN-*

3

4    **<u>Measure of Damages for Breach of Duty of Loyalty</u>**

5    *-NO LONGER APPLICABLE AND WITHDRAWN-*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections and Responses re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**Measure of Damages for Aiding and Abetting Breach of Fiduciary Duty**

If you have concluded that Isaac Larian and MGA aided and abetted Carter Bryant's breach of his fiduciary duty to Mattel, then you must now decide how much money will reasonably compensate Mattel for the harm caused by their wrongful conduct.

You must compensate Mattel for the harm caused by MGA's aiding and abetting of Bryant's breach of his duty of loyalty to Mattel, and not for harm caused by any conduct not in breach of Bryant's duty of loyalty.

For example, if you found that MGA and Larian aided and abetted Bryant's use of Mattel resources in breach of his fiduciary duty, you should award damages for the harm caused by the loss of those resources, that is the value of those lost resources at the time they were used.  If you found that MGA and Larian aided and abetted Bryant's breach of his fiduciary duty by accepting additional work from MGA, you should award damages to compensate Mattel in an amount equal to the harm caused by Bryant accepting such additional work from MGA.  If you found that MGA and Larian aided and abetted Bryant's breach of his fiduciary duty by directly competing with Mattel while still employed at Mattel, you should award damages to compensate Mattel for the harm caused by that competition during the term of his employment.  If you found MGA and Larian aided and abetted Bryant's breach of his fiduciary duty by presenting the BRATZ sketches owned by Mattel to MGA, you should compensate Mattel for the harm caused by that breach, that is the value of the sketches at the time of the breach.

**Authority:** Restatement (Second) of Torts § 876 (1979); <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the costs incurred to replace personnel recruited by president and competitor using confidential information in breach of president's fiduciary duty); <u>GAB Business Services,</u>

1   Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000), overruled

2   on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004) (damages for breach of

3   fiduciary duty were expenses incurred to recruit new employees); Charles T. Powner, Inc.

4   v. Smith, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales

5   resulting from use of employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347,

6   350 (1906) (damages were commissions received while still employed); see also Design

7   Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary

8   earned during time employee was disloyal, and not the profits from a contract that

9   evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F.

10  Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including

11  employee time used to develop competing products).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Measure of Damages for Aiding and Abetting Breach of Fiduciary Duty on the following grounds:

1.     Defendants fail to cite the model instruction found in CACI, the Court's preferred source for jury instructions on California law.  Instead, defendants cite various inapposite cases as the source for this proposed instruction.  There is a CACI instruction on point.  Aiding and abetting a breach of fiduciary duty is a tort.  Accordingly, CACI No. 3901 regarding Introduction to Tort Damages sets forth the applicable law.  Mattel's proposed instruction conforms to CACI No. 3901.  *See* Mattel's Proposed Jury Instruction re Introduction to Tort Damages—Liability Established for Aiding and Abetting Breach of Fiduciary Duty.

2.     In addition, defendants' proposed instruction is argumentative and misleading, and impermissibly attempts to interfere with the jury's role in this case.  It is for the jury to determine the specific damages caused by defendants' wrongful conduct based on the evidence presented during the trial and the law given to the jury by the Court.  Defendants' examples of specific damages the jury "should award" under various fact-specific scenarios impermissibly interferes with that function and could potentially mislead the jury to believe that these examples limit the measure of damages to which Mattel is entitled.  Their articulation of the damages suffered by Mattel as a result of defendants' aiding and abetting breach of fiduciary duty is not supported by the law.  None of the cases cited by defendants addresses the measure of damages for aiding and abetting breach of fiduciary duty.  Mattel is entitled to recover damages for all the harm caused by defendants' wrongful conduct, even if such harm could not have been anticipated.  *See* CACI No. 3901.  This includes disgorgement of all benefits obtained by defendants as a result of their wrongful conduct.

3.     This proposed instruction also fails to inform the jury that Mattel is seeking punitive damages against defendants in connection with this claim.  *See* Mattel's Proposed

1  Jury Instruction re Introduction to Tort Damages—Liability Established for Aiding and

2  Abetting Breach of Fiduciary Duty; Mattel, Inc.'s Second Amended Answer and

3  Counterclaims, at ¶ 141.

4        4.     Finally, the proposed instruction is also confusing in that it states:  "If you

5  have concluded that Isaac Larian and MGA aided and abetted Carter Bryant's breach of his

6  fiduciary duty to Mattel, then you must now decide how much money will reasonably

7  compensate Mattel for the harm caused by their wrongful conduct."  Damages will be

8  determined by the jury in Phase 1B and will obviously only be determined as to claims for

9  which the jury found defendants liable in Phase 1A.  Accordingly, the proposed

10  instructions regarding damages should clarify, if adopted, that liability has been

11  determined.  Moreover, the proposed instruction confusingly implies that the jury must

12  find all of the defendants liable for intentional interference in order to award any damages

13  to Mattel, which is not the case.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **MGA Parties' Response**

2

3  In its objections, Mattel once again seeks to present the jury with the most generic and

4  abstract version of an instruction it can identify, and urges use of CACI No. 3901 -

5  Introduction to Tort Damages.  The instruction proposed by the MGA Parties focuses the

6  jury's attention on the particular breach at issue and directs them to find damages using

7  specific, rather than generic, language.   In doing so, the MGA Parties' proposed

8  instruction avoids the problems inherent in Mattel's proposed instruction, which are

9  described in the MGA Parties' Objection thereto.   This Objection is incorporated by

10  reference in its entirety.

11

12  Although Mattel proposes its own instruction on the subject, Mattel's proposed instruction

13  is inappropriate because it seeks disgorgement of profits, regardless of when such profits

14  were earned.  Profits for breach of fiduciary duty and breach of the duty of loyalty are

15  limited to those profits earned by the defendant while defendant owed such a duty. Further,

16  Mattel's instruction does not require Mattel to prove that it suffered any financial loss

17  resulting from the conduct found to be aiding and abetting a breach of duty.  It also fails to

18  caution the jury that it should award damages only for the conduct found to constitute

19  aiding and abetting the breaches at issue. Thus, if the jury finds that MGA and Larian

20  aided and abetted Bryant's use of Mattel resources in breach of his duties, the jury should

21  be told that it must award damages for the harm caused by the loss of those resources, that

22  is the value of those lost resources at the time they were used.  Similarly, if the jury found

23  that MGA and Larian aided and abetted Bryant's breach of his duties by accepting

24  additional work from MGA, the jury should be told that it must award damages to

25  compensate Mattel in an amount equal to the harm caused by Bryant accepting such

26  additional work from MGA.  In the same vein, if the jury finds that Bryant breached his

27  duties by directly competing with Mattel while still employed at Mattel, it must award

28  damages to compensate Mattel for the harm caused by that competition during the term of

325

his employment.  Finally, if the jury finds Bryant breached his duties by presenting the BRATZ sketches owned by Mattel to MGA, it must compensate Mattel for the harm caused by that breach, that is the value of the sketches at the time of the breach. The cases cited in support of the MGA Parties' proposed instruction support the examples given.

As for Mattel's claim for punitive damages, Mattel lacks any evidentiary basis to seek punitive damages, so such an instruction is not necessary. See Barry v. Raskov, 232 Cal. App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages, as there was not clear and convincing evidence of fraud); see also Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence").

Mattel also complains that the proposed instruction is confusing in that it states:  "If you have concluded that Isaac Larian and MGA aided and abetted Carter Bryant's breach of his fiduciary duty to Mattel, then you must now decide how much money will reasonably compensate Mattel for the harm caused by their wrongful conduct." The quoted sentence, however, is from the Model Instruction; it is entirely appropriate to modify that sentence to reflect whatever liability determination (if any) is made in Phase 1A at that time.

**<u>Measure of Damages for Aiding and Abetting Breach of Duty of Loyalty</u>**

If you have concluded that Isaac Larian and MGA aided and abetted Carter Bryant's breach of his duty of loyalty to Mattel, then you must now decide how much money will reasonably compensate Mattel for the harm caused by their wrongful conduct.

You must compensate Mattel for the harm caused by the MGA's and Larian's aiding and abetting of Bryant's breach of his duty of loyalty to Mattel, and not for harm caused by any conduct not in breach of Mr. Bryant's duty of loyalty.

For example, if you found that MGA and Larian aided and abetted Bryant's use of Mattel resources in breach of his duty of loyalty, you should award damages for the harm caused by the loss of those resources, that is the value of those lost resources at the time they were used.  If you found that MGA and Larian aided and abetted Bryant's breach of his duty of loyalty by accepting additional work from MGA, you should award damages to compensate Mattel in an amount equal to the harm caused by Bryant accepting such additional work from MGA.  If you found that MGA and Larian aided and abetted Bryant's breach of his duty of loyalty by directly competing with Mattel while still employed at Mattel, you should award damages to compensate Mattel for the harm caused by that competition during the term of his employment.  If you found MGA and Larian aided and abetted Bryant's breach of his duty of loyalty by presenting the BRATZ sketches owned by Mattel to MGA, you should compensate Mattel for the harm caused by that breach, that is the value of the sketches at the time of the breach.

**Authority:**  Restatement (Second) of Torts § 876 (1979); <u>Bancroft-Whitney Co. v. Glen</u>, 64 Cal. 2d 327, 356-57 (1966) (remanding to assess damage to plaintiff book publisher for the costs incurred to replace personnel recruited by president and competitor using confidential information in breach of president's fiduciary duty); <u>GAB Business Services,</u>

1   Inc. v. Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 426 (2000), overruled
2   on other grounds by, Reeves v. Hanlon, 33 Cal. 4th 1140 (2004) (damages for breach of
3   fiduciary duty were expenses incurred to recruit new employees); Charles T. Powner, Inc.
4   v. Smith, 91 Cal. App. 101 (1928) (damages were profits on directly competitive sales
5   resulting from use of employer's time and facilities); Sumner v. Nevin, 4 Cal. App. 347,
6   350 (1906) (damages were commissions received while still employed); see also Design
7   Strategies v. Davis, 384 F. Supp. 649 (S.D.N.Y. 2005) (damages were amount of salary
8   earned during time employee was disloyal, and not the profits from a contract that
9   evidence showed employer would not have been awarded); Frye-Tech, Inc. v. Harris, 46 F.
10  Supp. 2d 1144 (D. Kan. 1999) (awarding damages for value of resources including
11  employee time used to develop competing products).

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  **Mattel's Objections**

2

3       Mattel objects to defendants' proposed instruction regarding Measure of Damages

4  for Aiding and Abetting Breach of Duty of Loyalty on the following grounds:

5       1.    Defendants fail to cite the model instruction found in CACI, the Court's

6  preferred source for jury instructions on California law.  Instead, defendants cite various

7  inapposite cases as the source for this proposed instruction.  There is a model instruction

8  on point in CACI.  Aiding and abetting a breach of the duty of loyalty is a tort.

9  Accordingly, CACI No. 3901 regarding Introduction to Tort Damages sets forth the

10  applicable law.  Mattel's proposed instruction conforms to CACI No. 3901.  *See* Mattel's

11  Proposed Jury Instruction re Introduction to Tort Damages—Liability Established for

12  Aiding and Abetting Breach of the Duty of Loyalty.

13       2.    Defendants' proposed instruction is argumentative and misleading, and

14  impermissibly attempts to interfere with the jury's role in this case.  It is for the jury to

15  determine the specific damages caused by defendants' wrongful conduct based on the

16  evidence presented during the trial and the law given to the jury by the Court.  Defendants'

17  examples of specific damages the jury "should award" under various fact-specific

18  scenarios impermissibly interferes with that function and could potentially mislead the jury

19  to believe that these examples limit the measure of damages to which Mattel is entitled.

20  This articulation of the measure of damages is not supported by the law.  None of the cases

21  cited by defendants even addresses the measure of damages for aiding and abetting breach

22  of the duty of loyalty.  Mattel is entitled to recover damages for all the harm caused by

23  defendants' wrongful conduct, even if such harm could not have been anticipated.  *See*

24  CACI No. 3901.  This includes disgorgement of all benefits obtained by defendants as a

25  result of their wrongful conduct.

26       3.    This proposed instruction also fails to inform the jury that Mattel is seeking

27  punitive damages against defendants in connection with this claim.  *See* Mattel's Proposed

28  Jury Instruction re Introduction to Tort Damages—Liability Established for Aiding and

1   Abetting Breach of the Duty of Loyalty; Mattel, Inc.'s Second Amended Answer and

2   Counterclaims, at ¶ 154.

3         4.      Finally, the proposed instruction is also confusing in that it states:  "If you

4   have concluded that Isaac Larian and MGA aided and abetted Carter Bryant's breach of his

5   duty of loyalty to Mattel, then you must now decide how much money will reasonably

6   compensate Mattel for the harm caused by their wrongful conduct."  Damages will be

7   determined by the jury in Phase 1B and will obviously only be determined as to claims for

8   which the jury found defendants liable in Phase 1A.  Accordingly, the proposed

9   instructions regarding damages should clarify, if adopted, that liability has been

10  determined.  Moreover, the proposed instruction confusingly implies that the jury must

11  find all of the defendants liable for intentional interference in order to award any damages

12  to Mattel, which is not the case.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **MGA Parties' Response**

2

3  In its objections, Mattel once again seeks to present the jury with the most generic and

4  abstract version of an instruction it can identify, and urges use of CACI No. 3901 -

5  Introduction to Tort Damages.  The instruction proposed by the MGA Parties focuses the

6  jury's attention on the particular breach at issue and directs them to find damages using

7  specific, rather than generic, language.   In doing so, the MGA Parties' proposed

8  instruction avoids the problems inherent in Mattel's proposed instruction, which are

9  described in the MGA Parties' Objection thereto.   This Objection is incorporated by

10 reference in its entirety.

11

12 Although Mattel proposes its own instruction on the subject, Mattel's proposed instruction

13 is inappropriate because it seeks disgorgement of profits, regardless of when such profits

14 were earned.  Profits for breach of fiduciary duty and breach of the duty of loyalty are

15 limited to those profits earned by the defendant while defendant owed such a duty. Further,

16 Mattel's instruction does not require Mattel to prove that it suffered any financial loss

17 resulting from the conduct found to be aiding and abetting a breach of duty.  It also fails to

18 caution the jury that it should award damages only for the conduct found to constitute

19 aiding and abetting the breaches at issue. Thus, if the jury finds that MGA and Larian

20 aided and abetted Bryant's use of Mattel resources in breach of his duties, the jury should

21 be told that it must award damages for the harm caused by the loss of those resources, that

22 is the value of those lost resources at the time they were used.  Similarly, if the jury found

23 that MGA and Larian aided and abetted Bryant's breach of his duties by accepting

24 additional work from MGA, the jury should be told that it must award damages to

25 compensate Mattel in an amount equal to the harm caused by Bryant accepting such

26 additional work from MGA.  In the same vein, if the jury finds that Bryant breached his

27 duties by directly competing with Mattel while still employed at Mattel, it must award

28 damages to compensate Mattel for the harm caused by that competition during the term of

1    his employment.  Finally, if the jury finds Bryant breached his duties by presenting the
2    BRATZ sketches owned by Mattel to MGA, it must compensate Mattel for the harm
3    caused by that breach, that is the value of the sketches at the time of the breach. The cases
4    cited in support of the MGA Parties' proposed instruction support the examples given.

5

6    As for Mattel's claim for punitive damages, Mattel lacks any evidentiary basis to seek
7    punitive damages, so such an instruction is not necessary. See Barry v. Raskov, 232 Cal.
8    App. 3d 447, 457 (1991) (trial court properly refused to instruct jury on punitive damages,
9    as there was not clear and convincing evidence of fraud); see also Jones v. Williams, 297
10   F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction about his or her theory
11   of the case if it is supported by law and has foundation in the evidence").

12

13   Mattel also complains that the proposed instruction is confusing in that it states:  "If you
14   have concluded that Isaac Larian and MGA aided and abetted Carter Bryant's breach of
15   his duty of loyalty to Mattel, then you must now decide how much money will reasonably
16   compensate Mattel for the harm caused by their wrongful conduct." The quoted sentence,
17   however, is from the Model Instruction; it is entirely appropriate to modify that sentence to
18   reflect whatever liability determination (if any) is made in Phase 1A at that time.

19

20

21

22

23

24

25

26

27

28

332

**COPYRIGHT—DAMAGES (17 U.S.C. § 504)**

If you find for Mattel on its copyright infringement claim, you must determine Mattel's damages. Mattel is entitled to recover any profits of the Defendants attributable to the infringement, subject to certain exceptions I will reference in later instructions.  Mattel must prove damages by a preponderance of the evidence.

**Authority:**   Ninth Circuit Manual of Model Jury Instructions, Civil, 17.22 (2007) (as modified).

1    **Mattel's Objections**

2

3          Mattel objects to defendants' proposed instruction regarding Copyright—Damages

4    (17 U.S.C. § 504) on the following grounds:

5          1.    Defendants' proposed instruction deviates from the Ninth Circuit Model

6    Instruction.  Defendants have added superfluous and argumentative language, such as

7    changing "Mattel is entitled to recover any profits of defendants attributable to the

8    infringement," to "Mattel is entitled to recover any profits of defendants, ***subject to certain***

9    ***exceptions I will reference in later instructions***."  This modification is unnecessary and

10   potentially misleading.  Ninth Circuit Model Instructions 17.22, 17.23 and 17.24 set forth

11   the applicable law regarding the damages Mattel is entitled to recover for copyright

12   infringement.  Mattel's proposed jury instructions conform to the model instructions.  *See,*

13   *e.g.*, Mattel's Proposed Jury Instructions re Copyright—Damages, Defendants' Profits and

14   Indirect Profits.  Contrary to defendants' suggestion, Ninth Circuit Model Instruction 17.24

15   regarding "Defendants' Profits (17 U.S.C. § 504(b))" does not describe any "exceptions."

16   Rather than following the model instruction, defendants appear to be referencing their own

17   improper and unjustified proposed modifications to 17.24.  *See* Mattel's Objections to

18   Defendants' Proposed Instruction Regarding Copyright—Damages—Defendants' Profits.

19

20

21

22

23

24

25

26

27

28

1    **MGA Parties' Response**

2

3    Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.

4    In proposing jury instructions, the parties are permitted to modify the language of any

5    model instruction to make it less confusing or more appropriate in the context of a

6    particular case.    See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997)

7    (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The

8    texts of 'standard' jury instructions are not debated and hammered out by legislators, but

9    by ad hoc committees of lawyers and judges.   Jury instructions do not come down from

10   any mountain or rise up from any sea.   Their precise wording, although extremely useful,

11   is not blessed with any special precedential or binding authority.   This description does not

12   denigrate their value, it simply places them in the niche where they belong.").   Indeed,

13   modification is sometimes necessary to make an instruction accurate and complete.   See,

14   e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification

15   of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the

16   district court merely read the model jury instruction, it would have committed plain error,

17   since that instruction makes no reference whatsoever to knowledge or intent.").

18

19   Mattel further objects to MGA's use of the language "subject to certain limitations I will

20   reference in later instructions."   But Mattel's claim for MGA's profits is indisputably

21   subject to important limitations and restrictions.

22

23   First, before Mattel may claim any of MGA's profits, Mattel must first prove a causal

24   nexus between the alleged infringement and MGA's revenues. See Polar Bear Prods. v.

25   Timex Corp., 384 F.3d 700, 711 (9th Cir. 2004) ("[A] copyright owner is required to do

26   more than toss up an undifferentiated gross revenue number; the revenue must bear a

27   legally significant relationship to the infringement."); Mackie v. Rieser, 296 F.3d 909, 915

28   (9th Cir. 2002) ("[C]ourt must conduct a threshold inquiry into whether there is a legally

1  sufficient causal link between the infringement and subsequent indirect profits."); 14

2  Nimmer, on Copyright § 14.03 [B][2] ("The Ninth Circuit has emphasized the need to

3  inquire into the causal relationship between infringements and profits before even reaching

4  the question of apportionment"); Ninth Circuit Civil Jury Instructions, 17.24.  Thus, unless

5  and until Mattel meets its initial causal burden, it is not entitled to recover any portion of

6  MGA's profits. See Vane v. The Fair, Inc., 676 F. Supp. 133 (E.D. Tex. 1987) (denying

7  award of infringer's profits where copyright owner failed to present sufficient proof of

8  infringer's gross revenue attributable to the infringement).

9

10  Second, in assessing MGA's "profits attributable to the infringement," the jury must

11  consider the extent to which those profits resulted from MGA's use of nonprotectable

12  elements of the copyrighted work.  See Apple Computer, Inc. v. Microsoft Corp., 35 F.3d

13  1435, 1443 (9th Cir. 1994) (A "party claiming infringement may place 'no reliance upon

14  any similarity in expression resulting from unprotectable elements.") (quoting Aliotti v. R.

15  Dakin & Co., 831 F.2d 898, 901 (9th Cir. 1987)); Cavalier v. Random House, Inc., 297

16  F.3d 815, 822 (9th Cir. 2002) (the court "must take care to inquire only whether the

17  protectable elements, standing alone, are substantially similar.") (emphasis in original).

18  Thus, in Sheldon v. Metro-Goldwyn Pictures Corp., 106 F.2d 45, 51 (2d Cir. 1939), the

19  Court reduced an award of the infringer's profits because, inter alia, the "general skeleton"

20  of the infringing story was "already in the public demesne."

21

22  Third, the jury must consider the elements of MGA's profits attributable to factors other

23  than the copyright work.  See 17 U.S.C. 504(b). ("[T]he infringer is required to prove …

24  the elements of profit attributable to factors other than the copyrighted work.")  As one

25  court observed, "sales are a function of many variables which are interrelated in complex

26  and often unknown ways."  Sid & Marty Krofft Television Prods. Inc v. McDonalds Corp.,

27  1983 WL 1142, at *2 (C.D. Cal. Jan. 12, 1983).  The jury must therefore consider evidence

28  that MGA's profits were attributable to other variables and factors beyond the alleged use

1  of Mattel's copyright material.  Those factors include but are not limited to the BRATZ

2  doll fashions, accessories, packaging, themes, characters.

**COPYRIGHT—DAMAGES—DEFENDANTS' PROFITS (17 U.S.C. § 504(b))**

The copyright owner is entitled to any profits of the defendant attributable to the infringement of the protected portion of plaintiff's copyrighted work.

You may make an award of the defendant's profits only if you find that the plaintiff showed a causal relationship between the infringement and the profits generated indirectly from the infringement.

The defendant's profit is determined by subtracting all expenses from the defendant's gross revenue.

The defendant's gross revenue is all of the defendant's receipts from the sale of a product associated with the infringement. The plaintiff has the burden of proving the defendant's gross revenue by a preponderance of the evidence.

Expenses are all operating costs and production costs incurred in producing the defendant's gross revenue. The defendant has the burden of proving the defendant's expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the protected portion of the copyrighted work, all of the profit is to be attributed to the infringement. The defendant has the burden of proving the percentage of the profit, if any, attributable to factors other than copying the protected portion of the copyrighted work. Such factors include: (1) the design of the doll, (2) development of the characters associated with the doll line, (3) development of themes associated with the dolls, (4) development of fashions sold with

338

the dolls, (5) development of accessories sold with the dolls, (6) packaging in which the dolls are sold, and (7) branding, marketing, and advertising efforts.

**Authority:**   Ninth Circuit Manual of Model Jury Instructions, Civil, 17.24 (2007) (as modified).

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Copyright—Damages—Defendants' Profits (17 U.S.C. § 504(b)) on the following grounds:

1.    Defendants' proposed instruction deviates from the Ninth Circuit Model Instruction.  Defendants have added the following superfluous and argumentative phrases:

- Defendants have changed "[T]he copyright owner is entitled to any profits of the defendant attributable to the infringement," to "[T]he copyright owner is entitled to any profits of the defendant attributable to the infringement *of the protected portion of plaintiff's copyrighted work*."

- Defendants have changed "Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work," to "Unless you find that a portion of the profit from the sale of a product containing or using the copyrighted work is attributable to factors other than use of *the protected portion of* the copyrighted work."

- Defendants have changed "The defendant has the burden of proving the percentage of the profit, if any, attributable to factors other than infringing the copyrighted work," to "The defendant has the burden of proving the percentage of the profit, if any, attributable to factors other than copying *the protected portion of* the copyrighted work."

There is no basis for defendants to insert these misleading and argumentative phrases into the model instruction, which provides an accurate statement of the law on this issue.  This is an improper attempt to engraft into this instruction the filtration analysis which, in the Ninth Circuit, does not apply to visual works, and is not a jury issue.  The instruction also misstates the law regarding the extrinsic test in other respects.  Under both the extrinsic and intrinsic tests, ideas are <u>not</u> filtered out, as defendants claim.  *See, e.g.*, *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (holding that "the extrinsic test

1  considers whether two works share a similarity of ideas and expression"); *Jada Toys, Inc.*

2  *v. Mattel, Inc.*, 2008 WL 450891, at *6 (9th Cir. 2008) (reversing district court's granting

3  of summary judgment because it did not compare the ideas in plaintiff's and defendant's

4  works); *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 208 (9th Cir.1988) ("[a]nalytic

5  dissection ... is not appropriate under [the intrinsic] test because it distracts a reasonable

6  observer from a comparison of the total concept and feel of the works").

7       Mattel's proposed instruction conforms to the model instruction as written.

8       2.    Defendants have added to the proposed jury instruction a list of "factors other

9  than copying the copyrighted work."  This list is nothing more than a biased and

10 argumentative recitation of arguments defendants will make in answer to Mattel's

11 copyright infringement claims, as set forth in defendants' expert reports.  Defendants do

12 not even pretend that this list is an accurate statement of the law, because they cite no

13 authority in support of these "factors."  Indeed, this appears to be the list of factors one of

14 defendants' experts, Paul Meyer, conjured to prepare his report, which is not a proper basis

15 for a jury instruction.  This proposed instruction also improperly attempts to interfere with

16 the jury's determination of Mattel's copyright infringement claims.  For example, to the

17 extent the jury determines that the first generation of Bratz dolls infringe the Bratz

18 drawings owned by Mattel, defendants certainly have no basis to instruct the jury that the

19 "design" of those Bratz dolls is a factor not attributable to the infringement.

20      3.    Defendants' proposed instruction incorporates the narrowest terms offered in

21 the model instruction when the broader terms are more applicable to the facts of this case.

22 Mattel's copyright infringement claims incorporate more than mere copying of Mattel's

23 works and sale of products – they cover all of defendants' infringement of Mattel's works,

24 including their use of those works in derivative works.

25

26

27

28

**MGA Parties' Response**

Mattel's complaint that this instruction deviates from the model is no basis for rejecting it. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.  Jury instructions do not come down from any mountain or rise up from any sea.  Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.  This description does not denigrate their value, it simply places them in the niche where they belong.").  Indeed, modification is sometimes necessary to make an instruction accurate and complete.  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

Mattel objects to use of the phrase "protected portion of the copyrighted work" because, as it claims, the "filtration analysis" does not apply to visual works in the Ninth Circuit. Mattel misapprehends the law.  In the Ninth Circuit, visual works are subject to the same general standards of analytic dissection and filtering as are other copyrighted works. (See MGA Parties' Response to Mattel's Objection to Instruction 1C, at ¶ 7.)

Mattel objects to the inclusion of a list of factors that the jury may consider in determining "the elements of profit attributable to factors other than the copyrighted work."  See 17 U.S.C. 504(b).  But the inclusion of specific apportionment factors simply modifies the

1  language of the model instruction to comport with the specific facts of this case.  As such,

2  the instruction is proper.  See U.S. v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992).

3

4  Moreover, juries may properly consider a wide variety of factors in apportioning profits

5  not attributable to the alleged infringement.  See, e.g., Sheldon v. Metro-Goldwyn Pictures

6  Corp., 309 U.S. 390, 407-08 (1940) (approving apportionment where profits of defendant's

7  film were largely attributable to the "drawing power" of the star performers and the

8  "expert supervision and direction"); Abend v. MCA, Inc., 863 F.2d 1465, 1480 (9th Cir.

9  1988) (remanding for apportionment where factors other than the underlying story-

10  particularly the talent and popularity of Alfred Hitchcock, Jimmy Stewart, and Grace

11  Kelly-"clearly contributed" to the success of the film "Rear Window"); Burns v. Imagine

12  Films Entm't, Inc., 2001 U.S. Dist. LEXIS 24653 (W.D.N.Y. Aug. 23, 2001) (apportioning

13  profits based on the "director, cast, set and costume design, cinematography, special

14  effects and other factors" contributing to success of the film "Backdraft").

15

16  Mattel specifically objects to the "design of the doll" as an apportionment factor because,

17  as it claims,  "defendants certainly have no basis to instruct the jury that the 'design' of

18  those BRATZ dolls is a factor not attributable to the infringement."  Mattel is incorrect.

19  At trial, MGA will introduce evidence that substantial portions of the BRATZ doll design

20  originated not from Carter Bryant's sketches, but from the contributions of various

21  sculptors, engineers, designers and other creative persons employed by MGA.

22  Additionally, MGA will present evidence that a significant portion of Mr. Bryant's

23  contributions to the design of BRATZ dolls occurred after October 2000.  The jury is

24  entitled to consider this evidence in assessing "the elements of profit attributable to the

25  copyrighted work."  See John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.,

26  322 F.3d 26 (1st Cir. 2003) (considering defendant's subsequent changes to the

27  copyrighted architectural design as a factor relevant to apportioning profits).

28

1   Finally, Mattel suggests that MGA's use of word "copying" in the proposed jury

2   instruction is too narrow to encompass Mattel's allegations of derivative-use infringement.

3   Mattel's objection is semantical.  As the Ninth Circuit in <u>Litchfield v. Spielberg</u> explained:

4   "A work is not derivative unless it has been <u>substantially</u> <u>copied</u> from another work." 736

5   F.2d 1352, 1357 (9th Cir. 1984) (emphasis added).   Whether Mattel alleges that MGA

6   copied its intellectual property or that MGA used it to prepare derivative works, the jury

7   will be asked to apply the same "substantial similarity" test. <u>See</u> 2-8 <u>Nimmer, on</u>

8   <u>Copyright</u> § 8.09 ("Countless works are 'inspired by' or 'based on' copyrighted works,

9   and in that lay sense constitute ''derivative works.' But unless the product is substantially

10  similar to its forbear, it remains nonactionable.").

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections and Responses re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1    **Choice of Alternative Methods of Determining Plaintiff's Damages**

2

3    If you determine that an award of damages is warranted by the facts and these instructions,

4    you must select a method of damages for determining the amount of damages.  Select the

5    method that you find produces the most accurate and certain result.  However, if you find

6    that find that either of two methods produces a result that is certain and accurate and will

7    fully compensate plaintiff, you should use the method that produces the lowest amount of

8    damages.

9

10   **Authority:**  <u>A. A. Baxter Corp. v. Colt Indus., Inc.</u>, 10 Cal. App. 3d 144, 160 (1970).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Choice of Alternative Methods of Determining Plaintiff's Damages on the following grounds:

1.      This proposed instruction is biased, misleading and confusing.  The instruction tells the jury to select the most "accurate" method of calculating Mattel's damages, but that if either of two methods is accurate, the jury should use the method producing the lowest amount of damages.  There is no legal basis to give the jury such an instruction.  The only source cited by defendants is an inapposite case dealing with damages caused by delay in the performance of a construction contract wherein the Court was articulating alternative measures of damages for the trial court to consider on remand.  *See A.A. Baxter Corp. v. Colt Indus., Inc.*, 10 Cal. App. 3d 144 (1970).  That case does not support defendants' requested jury instruction.  Notably, there is no comparable jury instruction found in CACI, or in the Ninth Circuit Model Instructions.  Nor do defendants even identify the "alternatives" the jury is supposed to choose from.

2.      Defendants' proposed instruction is unintelligible and confusing given that there is no explanation as to what "method of damages for determining the amount of damages" this proposed instruction refers, or to what claims, if any, such an instruction would apply.

**MGA Parties' Response**

In proposing jury instructions, the parties are not limited to the subject matter covered by the Ninth Circuit Model Instructions or any other set of models.  See, e.g., Jones v. Hollenback, 2007 WL 3335012, at *11 (E.D. Cal. Nov. 9, 2007) ("The fact that Jury Instruction No. 7 is not a Ninth Circuit Model Jury Instruction, but rather California pattern instruction, BAJI 2.22, is irrelevant.  The instruction correctly and clearly states the law.  There is nothing confusing about the purpose and intent of this instruction.").  Mattel's objection is not appropriate as it suggests that the jury simply should not be instructed as to how it should handle the differences among the various methods of calculating damages.

Moreover, the proposed instruction is an entirely accurate statement of the law:

> "Where there is more than one method of ascertaining damages, that method which is most definite and certain should be adopted. No one method is exclusive, where several exist, but that one should be chosen which best achieves the fundamental purpose of compensation to the injured person for his loss; and if the facts show that either of two measures of damages will fully compensate plaintiff for his loss, that measure must be adopted which is less expensive to defendant."

A. A. Baxter Corp. v. Colt Indus., Inc., 10 Cal. App. 3d 144, 160 (1970) (emphasis added). How Mattel can argue this language is "inapposite" is hard to understand.  As Mattel notes, the court in A.A. Baxter was providing guidance to the lower court in calculating damages appropriately on remand.  Id.  The court addressed the problem encountered when there are multiple possible means to calculate damages – an issue that may arise here as well.  Thus, the instruction is appropriate.

**Damages—Duty to Mitigate**

The plaintiff has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

      1.     that the plaintiff failed to use reasonable efforts to mitigate damages; and

      2.     the amount by which damages would have been mitigated.

**Authority:**   Ninth Circuit Manual of Model Jury Instructions, Civil, 5.3 (2007); see also CACI No. 3931 (2008).

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Damages—Duty to Mitigate on the following grounds:

1. This proposed instruction is contrary to the Court's April 25, 2008 Order. The Court deferred any ruling on any alleged failure to mitigate until after trial. *See* April 25, 2008 Order, at 7. Also, this an affirmative defense and should be presented as such to the jury – if presented to the jury at all – so that it is clear that defendants are raising this as a potential defense regarding the amount of damages and that they bear the burden of proof on this issue.

2. Defendants cite the Ninth Circuit Model Instruction regarding Damages—Mitigation, and the proposed instruction tracks the language of Model Instruction 5.3 verbatim. However, with respect to all of Mattel's state law claims against defendants, issues relating to the mitigation of damages are issues of California law. CACI is the official source of instructions regarding California law. *See* Court's Standing Scheduling Order, at 9; *Cal. Rule of Court* 2.1050. Although defendants now cite CACI No. 3931, this proposed instruction bears no resemblance to CACI No. 3931.

3. *Counter-Instruction*: If the Court decides, in spite of its April 25, 2008 Order and Mattel's objections, that an instruction on mitigation should be given to the jury, it should be as follows:

The defendants claim that Mattel failed to mitigate damages allegedly caused by the defendants' wrongful conduct. The doctrine of mitigation of damages holds that a plaintiff who suffers damages as a result of a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and may not recover for damages avoidable through ordinary care and reasonable exertion. The duty to mitigate damages does not require an injured party to do what is unreasonable or impracticable.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The burden of proving that losses could have been avoided by plaintiff by reasonable effort and expense is always on the party who breached the contract or harmed the plaintiff.

**Authority:**  CACI No. 358, comments; *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994).

1   **MGA Parties' Response**

2

3   Mattel's objections are self-contradictory, as the preceding objection suggests that because

4   failure to mitigate is an affirmative defense, it should be presented as such to the jury,

5   which contradicts Mattel's earlier blanket assertions that affirmative defenses should not

6   be presented to the jury at all.   (See supra, Mattel's Objections to Laches, Estoppel,

7   Waiver, Abandonment, Consent, and Acquiescence.)

8

9   First, failure to mitigate is not strictly viewed as an affirmative defense.  As noted in the

10  comments to CACI No. 3931:

11       "The frequent statement of the principle in the terms of a 'duty' imposed on

12       the injured party has been criticized on the theory that a breach of the 'duty'

13       does not give rise to a correlative right of action.  It is perhaps more accurate

14       to say that the wrongdoer is not required to compensate the injured party for

15       damages which are avoidable by reasonable effort on the latter's part."

16

17  Green v. Smith, 261 Cal. App. 2d 392, 396 (1968) (internal citations omitted).   Thus, the

18  trier of fact considering the amount of damages must also consider whether the defendant

19  has failed to mitigate, such that defendants are not required to compensate plaintiff for

20  any such damages.

21

22  Second, failure to mitigate is a jury question, as the existence of state and federal jury

23  instructions makes clear and Mattel cites no cases suggesting that mitigation is an

24  equitable defense (because it is not).  Any objection based on the Court's April 25, 2008

25  Order is also premature because that Order did not resolve the issues presented here.  Even

26  if the Court makes the ultimate decision as to whether this defense will limit Mattel's

27  claims (and it should not), the jury must still make the factual determinations that underlie

28  the Court's decision, as it must do for all affirmative defenses with factual underpinnings

351

1  that overlap with the claims to be tried to the jury.  Because the defense of mitigation of
2  damages involves the same factual questions as Mattel's proof of its damages claim, the
3  Seventh Amendment requires that those facts be tried to the jury.  Accordingly, the jury
4  should be given a proper framework for making those factual determinations.

5

6  Finally, Mattel's complaint that this instruction deviates from the model is no basis for
7  rejecting it.   In proposing jury instructions, the parties are permitted to modify the
8  language of any model instruction to make it less confusing or more appropriate in the
9  context of a particular case.  See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir.
10  1997). Indeed, modification is sometimes necessary to make an instruction accurate and
11  complete.  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992).  The
12  proposed instruction does more closely resemble the Ninth Circuit model than the CACI.
13  CACI No. 3931 is rather long and verbose as compared to the Ninth Circuit instruction,
14  although it relays the same ideas.  See CACI No. 3931 ("If you decide [name of defendant]
15  is responsible for the original harm, [name of plaintiff] is not entitled to recover damages
16  for harm to [his/her] property that [name of defendant] proves [name of plaintiff] could
17  have avoided with reasonable efforts or expenditures.   You should consider the
18  reasonableness of [name of plaintiff]'s efforts in light of the circumstances facing [him/her]
19  at the time, including [his/her] ability to make the efforts or expenditures without undue
20  risk or hardship.  If [name of plaintiff] made reasonable efforts to avoid harm, then your
21  award should include reasonable amounts that [he/she] spent for this purpose.")

22

23  Notably, in its counter-instruction, Mattel has not adopted the appropriate CACI either, but
24  rather relies on the comments to an instruction regarding contract damages.  The MGA
25  Parties suggest that the version of the Ninth Circuit instruction that they propose is simpler
26  and less confusing for the jury, and thus should be used here.

27

28

352

**<u>Nominal Damages</u>**

The law which applies to this case authorizes an award of nominal damages. If you find for Mattel but you find that Mattel has failed to prove damages as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.

**Authority:** Ninth Circuit Manual of Model Jury Instructions, Civil, 5.6 (2007).

353

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Nominal Damages on the following grounds:

1.     This proposed instruction is unintelligible, confusing and misleading.  The instruction states:  "The law which applies to this case authorizes an award of nominal damages."  But defendants provide the jury with no explanation as to which of Mattel's claims, if any, authorizes an award of nominal damages.  The comments to Ninth Circuit Model Instruction 5.6 recognize that "[n]ominal damages are not available in every case." *See* 9th Cir. Civ. Jury Instr.  5.6 cmt. (2007).  Defendants cite no authority that would support giving an instruction to the jury regarding nominal damages.

1   **MGA Parties' Response**

2

3   Mattel's objection is argumentative and cites no authority for the proposition stated.  The

4   MGA Parties contend that nominal damages apply to every claim in this case.  <u>See, e.g.</u>,

5   <u>Midland Pacific Building Corp. v. King</u>, 157 Cal. App. 4th 264, 275 (2007) (nominal

6   damages are available in actions upon a contract).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Plaintiff May Not Recover Duplicate Damages</u>**

Mattel may seek damages for each of its claims.  Mattel may not, however, through its pursuit of these claims, seek damages in an amount greater than that which would compensate it for all the detriment or loss allegedly caused by wrongful conduct of the defendants.  Thus, if you determine that Mattel is entitled to recover on more than one claim, but the damages are the same on each claim, you shall award damages only on one claim.

**Authority:**   CACI No. 361 (2008); Cal. Civil Code § 3358 ("no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides"); <u>Kurinij v. Hanna & Morton</u>, 55 Cal. App. 4th 853, 866 (1997) (affirming jury instructions proscribing double recovery on claims arising out of the same facts).

**Mattel's Objections**

Mattel objects to defendants' proposed instruction regarding Plaintiffs May Not Recover Duplicate Damages on the following grounds:

1.      Defendants' proposed instruction deviates from the model instruction and is confusing and misleading.  The model instruction provides a straightforward statement of the law.  *See* CACI No. 361.

2.      Defendants' proposed instruction is confusing because it focuses on claims, instead of damages, suggesting to the jury that damages available to Mattel on various claims against defendants are identical (*e.g.*, "if you determine that Mattel is entitled to recover on more than one claim, but the damages are the same on each claim, you shall award damages only on one claim.").

3.      *Counter-Instruction*:  To the extent the Court decides to give any instruction on this issue, it should give the model instruction found in CACI, as follows:

> Mattel has made claims against defendants for intentional interference with contractual relations and aiding and abetting breach of fiduciary duty and the duty of loyalty.  If you decide that Mattel has proved all of these claims, the same damages that resulted from these claims can be awarded only once.

**Authority:**  CACI No. 361.

1 | **MGA Parties' Response**
2 |
3 | Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.
4 | In proposing jury instructions, the parties are permitted to modify the language of any
5 | model instruction to make it less confusing or more appropriate in the context of a
6 | particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997)
7 | (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The
8 | texts of 'standard' jury instructions are not debated and hammered out by legislators, but
9 | by ad hoc committees of lawyers and judges.  Jury instructions do not come down from
10 | any mountain or rise up from any sea.  Their precise wording, although extremely useful,
11 | is not blessed with any special precedential or binding authority.  This description does not
12 | denigrate their value, it simply places them in the niche where they belong.").  Indeed,
13 | modification is sometimes necessary to make an instruction accurate and complete.  See,
14 | e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification
15 | of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the
16 | district court merely read the model jury instruction, it would have committed plain error,
17 | since that instruction makes no reference whatsoever to knowledge or intent.").
18 |
19 | Mattel's counter-instruction is objectionable for the reasons stated in the MGA Parties'
20 | Objection to that instruction, which is fully incorporated herein.
21 |
22 | Mattel's objection that the instruction "is confusing because it focuses on claims, instead
23 | of damages, suggesting to the jury that damages available to Mattel on various claims
24 | against defendants are identical" makes no sense.  The proposed instruction specifically
25 | references the possibility that the damages will not be the same and is limited to situations
26 | where they are: "if you determine that Mattel is entitled to recover on more than one claim,
27 | but the damages are the same on each claim, you shall award damages only on one claim."
28 |

1  **COPYRIGHT JURY INSTRUCTIONS**

2  **PHASE I-B**

3  **(ONLY AFTER PHASE I-A VERDICT)**

**-REVISED-**

**INSTRUCTION NO. 1C**

**COPYRIGHT – PRELIMINARY INSTRUCTION**

As you know, Mattel seeks damages against the defendants, MGA Entertainment, Inc. ("MGA"), MGA Entertainment (HK) Limited ("MGA Hong Kong"), and Isaac Larian, for copyright infringement.  The defendants deny that Mattel's copyrights were infringed.

Mattel's 16 copyrights are in certain sketches authored by Carter Bryant prior to his meeting with MGA on September 1, 2000.  There have been references to other Carter Bryant sketches, but for purposes of your copyright analyses you may only consider the Bryant sketches covered by a Mattel copyright registration.  The copyright law does not permit legal claims made on a work not covered by a copyright registration.

The alleged infringing works are the BRATZ dolls and character art of the BRATZ dolls appearing on the packaging for the BRATZ dolls and on BRATZ licensed products.  Mattel asserts that the "first generation" of four BRATZ dolls (Jade, Sasha, Cloe, and Yasmin), introduced by MGA into the market in the summer of 2001, infringe Mattel's copyrights in the 16 Bryant sketches.  Mattel further asserts that by virtue of showing infringement in the "first generation" BRATZ dolls it has shown copyright infringement by all subsequent BRATZ dolls.

The defendants deny that there has been any copyright infringement.  They assert that there was no copying because the Bryant sketches, along with other sources, were only used in a lawful manner by the professionally trained MGA sculptors and artists who actually developed the "first generation" BRATZ dolls, with the sketches simply being part of the initial inspiration for the uncopyrightable concept of the BRATZ dolls. Defendants also assert that because Bryant's 2-dimensional sketches lacked the detail and

360

1   other considerations necessary to develop a 3-dimensional doll, the MGA sculptors and
2   artists who developed the first generation BRATZ dolls used their significant experience
3   and talents to independently create their own original, different and more marketable 3-
4   dimensional doll.

5

6   The defendants also assert that the Mattel copyrights are very limited in scope because the
7   16 Bryant sketches portray dolls that are based in large part on non-original elements such
8   as standard features of human anatomy and non-copyrightable elements such as
9   conventional hairstyles, face make-up, shoes and clothing.  They assert that because the 16
10  Bryant sketches are only entitled to limited copyright protection, the "first generation"
11  BRATZ dolls were not "substantially similar" to the "protectible elements" in Bryant
12  sketches owned by Mattel, and do not infringe any limited copyrights in those sketches.

13

14  The defendants further assert that subsequent BRATZ dolls had the same and additional
15  dissimilarities, and were even further removed from any "protected expression" in the
16  Bryant sketches, and accordingly also did not infringe copyrights in those sketches.  They
17  similarly deny that the BRATZ character art infringes the Bryant sketches.

18

19  I just referred to a number of legal terms such as "copying," "substantial similarity," and
20  "protected expression."  I will now explain these and other legal terms to you.

21

22  **Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.0 (2007).

23

24

25

26

27

28

## Mattel's Objections

Mattel objects to defendants' proposed jury instruction 1C on the following grounds:

1.     This proposed instruction deviates from the Ninth Circuit Model Instruction, and defendants misleadingly fail to indicate that they have modified the model jury instruction.

2.     Defendants incorrectly state that the jury must disregard Bratz drawings owned by Mattel if they have not been registered.  That is not the law.  *See Perfect 10, Inc. v. Amazon.com Inc.*, 487 F.3d 701, 710 n.1 (9th Cir. 2007).  Moreover, defendants' proposed instruction improperly states that Mattel has copyrights in only 16 "sketches," when the number is larger than that.

3.     Mattel also objects to the use of the pejorative term "sketches" when referring to Mr. Bryant's drawings and designs.

4.     Defendants' proposed instruction refers to "the uncopyrightable *concept* of the BRATZ dolls" (emphasis added), a loaded phrase that does not exist in copyright law.

5.     Defendants' proposed instruction misstates the law in suggesting that "2-dimensional sketches" are not protectable or are subject only to thin protection where they "lac[k] the detail and other considerations necessary to develop a 3-dimensional doll." Numerous courts have found 3-dimensional dolls to infringe 2-dimensional drawings that are similarly lacking in detail.  *See, e.g.*, *Fleisher Studios v. Ralph A. Freundlich, Inc.*, 73 F.2d 276, 278 (2d Cir. 1934); *King Features Syndicate v. Fleisher*, 299 F. 533 (2d Cir. 1924).  As one district court recently explained in a similar context, architectural "plans or designs not sufficiently detailed to allow for construction still may be protected."  *Shine v. Childs*, 382 F. Supp. 2d 602, 608 (S.D.N.Y. 2005).  Defendants have pleaded and prevailed on claims that dolls less similar to Mr. Bryant's drawings than Bratz dolls are substantially similar to and infringe the copyrighted drawings.

6.     Relatedly, defendants' proposed instruction omits any reference to the well-settled principle that a derivative work (here, the 3-dimensional dolls) that adds features or

1   detail to an original work (here, the 2-dimensional drawings)is still infringing.  As set forth
2   in Mattel's Proposed Instruction No. 17.1, 17 U.S.C. § 106 makes clear that a copyright
3   owner has the exclusive right to prepare derivative works based on the copyrighted work.
4   *See* Mattel's Proposed Jury Instruction re Copyright—Defined.

5          7.      Defendants' proposed instruction improperly describes the Bryant drawings as
6   "based in large part on non-original elements."

7          First, it is for the Court, not the jury, to determine whether a work is original.  *See,*
8   *e.g.*, *Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of
9   elements in a copyrighted work is a question of law."); *Merc. Transaction Sys., Inc. v.*
10  *Nelcela, Inc.*, 2007 WL 2422052 (D. Ariz. 2007) ("The issue of whether the software is
11  subject to copyright protection must be addressed by the Court.").

12         Second, defendants are estopped from asserting that the drawings are not original or
13  are subject only to thin copyright protection because defendants successfully contended
14  just the opposite in suing for infringement of the drawings in the courts of Hong Kong and
15  in the United States.  *See* Mattel Reply Mem. ISO Summary Judgment at 11.  Mattel is
16  aware of two instances in which MGA has done this.  In *MGA Entm't., Inc. v. Multitoy,*
17  *Inc. et al.,* Case No. CV04-2524 CBM (CWx), MGA Entertainment, Inc. ("MGA")
18  brought claims of copyright and trademark infringement, among other claims, against
19  defendants for producing and selling dolls that infringed of the copyrights in Carter
20  Bryant's two dimensional BRATZ drawings.  *See e.g.*, Complaint ¶ 7 and M0078574-90.
21  *See generally* ¶¶ 2-20, 31-37.  Significantly, Mr. Bryant admitted in responses to Requests
22  for Admission that his drawings are original works.

23         Third, even if defendants were not estopped from making that argument, they are
24  incorrect as a matter of law that a work of visual art (as distinguished from a literary work
25  or a computer program) may be broken down into original and non-original components.
26  *See, e.g.*, *Cavalier v. Random House, Inc.*, 297 F.3d 815, 826 (9th Cir. 2002) ("The precise
27  factors evaluated for literary works do not readily apply to art works.  Rather, a court looks
28  to the similarity of the objective details in appearance."); Hon. Jon O. Newman, *New*

363

1  *Lyrics for an Old Melody:  The Idea/Expression Dichotomy in the Computer Age*, 17
2  Cardozo Arts & Ent. L. J. 691, 698 (1999) (Filtration analysis should not be applied in
3  cases of visual works because "one cannot divide a visual work into neat layers of
4  abstraction in precisely the same manner one could with a text."); *id.* at 697, nn.36-37
5  (criticizing *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280 (10th Cir. 1999),
6  which applied filtration in a doll case).  Moreover, defendants ignore that creative
7  expression is original even if "inspired by" other works, and that elements are protectable
8  so long as they are not slavishly copied.  *See, e.g.*, *Mattel, Inc. v. Goldberger Doll Mfg.
9  Co.*, 365 F.3d 133, 136 (2d Cir. 2004)  ("One artist's version of a doll face with upturned
10 nose, bow lips, and widely spaced eyes will be irresistible to an eight-year old collector. …
11 We can surmise that in the highly competitive, billion-dollar doll industry, getting the
12 doll's face and expression exactly right is crucial to success.").  And defendants ignore that
13 creative *compilations* of non-original components are subject to full protection under
14 copyright law.  *See Dollcraft Indus., Ltd. v. Well-Made Toy Mfg. Co.*, 479 F. Supp. 1105,
15 1114-15 (E.D.N.Y. 1978).

16       8.     Defendants' proposed instruction improperly asserts that, if the jury finds
17 "dissimilarities" between the drawings and the dolls, it cannot find infringement.  It is well
18 settled that it is similarities, not dissimilarities, which are relevant in determining
19 infringement.  *See, e.g.*, *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir.
20 1936) (L. Hand, J.) ("[N]o plagiarist can excuse the wrong by showing how much of his
21 work he did not pirate"); Mattel Reply Mem. ISO Summary Judgment at 18, n.40
22 (collecting other authorities).

23       9.     Mattel requests that the Court adopt Mattel's proposed instruction, which
24 conforms to the Ninth Circuit Model Instruction and does not contain erroneous statements
25 of law and argument.  *See* Mattel's Proposed Jury Instruction re Preliminary Instruction—
26 Copyright.

27

28

**MGA Parties' Response**

The MGA Parties (collectively for this response, "MGA") acknowledge that their reference to Ninth Circuit Model Jury Instructions ("Model Instructions") is for support of its position, and does not indicate that the Model Instruction was copied verbatim. However, Mattel's complaint that this instruction deviates from the model is no basis for rejecting it.   In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case.  See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.  Jury instructions do not come down from any mountain or rise up from any sea.  Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.  This description does not denigrate their value, it simply places them in the niche where they belong."). Indeed, modification is sometimes necessary to make an instruction accurate and complete. See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

On the issue of Mattel relying on Bryant sketches that were not registered by Mattel, MGA disagrees with Mattel's position and notes that this issue is the subject of a pending motion *in limine*.  Consistent with MGA's motion *in limine* No. 12, the Court ruled by Order dated May 28, 2008, that Mattel was precluded from basing its copyright claims on the "control" drawing that Mattel did not register until May 15, 2008.  See May 28, 2008 Order Regarding Various Discovey Motions, Applications And Other Matters Upon Which The Court Ruled On May 27, 2008, ¶ 9 ("The MGA Parties' Motion to Strike Portions of the

1   Pretrial Conference Order is GRANTED IN PART and DENIED IN PART. . . .   The

2   Court grants the motion as to the registration of the control drawing.”).

3

4   Registration of a work is a prerequisite to a suit for of copyright infringement.  See 17

5   U.S.C. § 411(a); Leicester v. Warner Bros., 232 F.3d 1212, 1235 (9th Cir. 2000) (“[t]he

6   Copyright Act requires registration of all ‘United States work[s]’ as a prerequisite for a

7   copyright infringement action”); Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1211

8   (9th Cir. 1998) (copyright registration “is a prerequisite to a suit based on a copyright”);

9   Zito v. Steeplechase Films, Inc., 267 F. Supp. 2d 1022, 1025 (N.D. Cal. 2003)

10  (“Registration of a copyrighted work with the Copyright Office is a prerequisite to filing

11  suit under copyright law.  Registration is a jurisdictional requirement.”) (citations omitted).

12  Mattel’s citation to a footnote in Perfect10, Inc. v. Amazon, Inc., 487 F.3d 701 (9th Cir.

13  2007), is misplaced.  There, the court cited § 411 and acknowledge that “[r]egistration is

14  generally a jurisdictional prerequisite to a suit for copyright infringement.”  Id. at 710 n.1.

15  Relying on the Eighth Circuit’s decision in Olan Mills, Inc. v. Linn Photo Co., 23 F.3d

16  1345, 1349 (8th Cir. 1994), and the Eleventh Circuit’s decision in Pacific & Southern Co.,

17  Inc. v. Duncan, 744 F.2d 1490, 1499 n.17 (11th Cir. 1984), the court recognized the

18  following limited exception to the general rule requiring registration:  “Once a court has

19  jurisdiction over an action for copyright infringement under section 411, the court may

20  grant **injunctive relief** to restrain infringement of any copyright, whether registered or

21  unregistered.”  Id.  As explained more recently by the Second Circuit in declining to

22  broadly extend this limited rule beyond the injunction context, “the existence of a claim

23  based on a registered copyright does not bring within a district court’s jurisdiction all

24  related claims stemming from unregistered copyrights. . . .   [E]ven if injunctive relief

25  against infringement of an unregistered copyright is available, that relief is properly

26  limited to situations, as were found to exist in Olan Mills and Pacific & Southen Co.,

27  where a defendant has engaged in a pattern of infringement of a plaintiff’s registered

28  copyrights and can be expected to continue to infringe new copyrighted material

1  emanating in the future from the plaintiff."  In re: Literary Works In Electronic Databases
2  Copyright Litigation, 509 F.3d 116, 122 (2d Cir. 2007).  See also Well-Made Toy Mfg.
3  Corp. v. Goffa Int'l Corp., 354 F.3d 112 (2d Cir. 2003) (affirming district court decision
4  deciding claim of infringement involving first, registered 20-inch doll on the merits and
5  dismissing claim involving second, unregistered derivative 48-inch doll for lack of
6  jurisdiction).

7

8  The term "sketches" is not "pejorative" and Mattel has not cited anything to support its
9  position that it is.  Mattel's own expert used the term repeatedly in reference to Carter
10  Bryant's works at issue here.  See, e.g., Loetz Report, at 2 ("When a designer has an idea,
11  he sketches it out.");  id. at 4 ("In Carter Bryant's sketches, the Bratz figures are
12  posed ….");  id. at 6 ("The Bratz sketches were drawn ….");  id. at 9 ("It is the industry
13  standard when creating a new toy … to have the original artist draw sketches");  Loetz
14  Depo. at 83:6-13 ("Q. Does the term 'sketch' versus 'drawing' have any distinct meaning
15  to you?  A.  Not really …. I don't think there's any real distinction and I think they're used
16  interchangeably.").

17

18  Contrary to Mattel's contentions regarding "concepts," the Copyright statute specifically
19  states that "ideas" and "concepts" cannot be protected by copyright:

20      In no case does copyright protection for an original work of authorship extend
21      to any idea … concept … regardless of the form in which it is described,
22      explained, illustrated or embodied in such work.  (17 U.S.C. § 102(b).)
23  In fact, as the statute states, it is not only that "ideas" and "concepts" cannot be
24  copyrighted, but also that the ideas and concepts illustrated or embodied in a copyrighted
25  work (such as the Bryant sketches) are not protected – which is why Ninth Circuit law
26  requires that they be filtered out.  See, e.g., Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir.
27  2004); Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442-43 (9th Cir. 1994);
28  Idema v. Dreamworks, Inc., 163 F. Supp. 2d 1129, 1176-77(C.D. Cal. 2001).  Yet, it is the

1  ideas and concepts <u>illustrated</u> by and <u>embodied</u> in Bryant's sketches that may give the
2  illusion of similarity between the dolls and the sketches.

3

4  With respect to the two-dimensional/three-dimensional ("2-D/3-D") cases cited by Mattel,
5  Mattel completely mischaracterizes MGA's proposed instruction, which addresses a key
6  factual issue in dispute in this case.  None of the 2-D/3-D cases cited by Mattel are on
7  point here, as all were decided based on the specific facts in those cases.  <u>Shine v. Childs</u>,
8  382 F. Supp. 2d 602, 608 (S.D.N.Y. 2005), is especially inapt because that case addressed
9  whether architectural design drawings were sufficiently detailed to be protectable under
10 the Architectural Works Copyright Protection Act (AWCPA) — an issue completely
11 irrelevant here.   Here again, Mattel is attempting to conflate the standard of
12 copyrightability (which does not pertain to any disputed issue in this case) with the scope
13 of copyright protection in an infringement analysis in order to distract the jury's attention
14 from the analytic dissection and filtration of unprotectible elements required by the Ninth
15 Circuit.

16

17 Any derivative works instruction would be highly prejudicial here, because, by
18 characterizing BRATZ dolls as "derivative works," it would falsely suggest to the jury that
19 Mattel has a lower standard of proof to meet in order to show infringement.  In fact, as
20 Professor Nimmer explains, "a new work constitutes a derivative work based on an
21 underlying work only if the new work is 'substantially similar' to the underlying work".
22 <u>Nimmer, on Copyright</u> § 19D.08.  Put another way, "a work will be considered a
23 derivative work <u>only if it would be considered an infringing work if</u> the material which it
24 has derived from a prior work had been taken without the consent of a copyright proprietor
25 of such prior work. To prove infringement, one must show substantial similarity.
26 <u>Litchfield v. Spielberg</u>, 736 F.2d 1352, 1357 (9th Cir. 1984) (emphasis in original)
27 (citations omitted).   As the Supreme Court held in <u>Feist Publications, Inc. v. Rural</u>
28 <u>Telegraph Service Co.</u>, 499 U.S. 340, 349-50 (1991), "The primary objective of copyright

1  is not to reward the labor of authors, but 'to promote the Progress of Science and useful

2  Arts.'" Art. I, § 8, cl. 8.  Accord Twentieth Century Music Corp. v. Aiken, 422 U.S. 151,

3  156 (1975). To this end, copyright assures authors the right to their original  expression,

4  but encourages others to build freely upon the ideas and information conveyed by a work.

5  Harper & Row Publishers v. Nation Enters., 431 U.S. 531, 556-557 (1985).  This principle,

6  known as the idea/expression or fact/expression dichotomy, applies to all works of

7  authorship."

8

9  Mattel's citations to Newton v. Diamond, 204 F. Supp. 2d 1244 (C.D. Cal. 2002), and

10  similar cases are not relevant here.  Newton, for example, dealt with the issue of whether a

11  3-note musical sequence, which was a segment of a registered musical composition, had

12  sufficient originality to qualify for copyright protection – the court was not engaging in

13  analytic dissection/filtering of a registered work to eliminate unprotected elements.  Even

14  though the issue of copyrightability of all of the Bryant drawings save one is conceded,

15  Mattel repeatedly refers to that issue in an effort to confuse the standards and avoid

16  analytic dissection/filtering.  While Mattel asserts that MGA "contended just the opposite"

17  of the proposition that the Bryant sketches are "subject only to thin copyright protection,"

18  Mattel has not and cannot support its assertion with facts.  Although Mattel argues that:

19  "Significantly, Mr. Bryant admitted in responses to Requests for Admission that his

20  drawings are original works," this is not significant given that, except with regard to one

21  non-registered drawing, it is not disputed that Bryant' sketches contained sufficient

22  originality to be copyrightable.

23

24  Mattel has not pointed to a single fact that would support an estoppel argument on the

25  issue of thin versus broad protection.  In its motion for summary judgment, Mattel argued

26  that MGA was barred by the doctrine of judicial estoppel from arguing that the Bryant

27  sketches had sufficient originality to be protectible.  With one exception (a sketch not

28  covered by a Mattel copyright), MGA conceded that MGA was not contesting that the

1   Bryant sketches were protectible by copyright.  Mattel now is trying to change its estoppel

2   argument entirely from protectibility <u>vel</u> <u>non</u> to degree of protectibility after analytic

3   dissection/filtering.  Mattel has failed to cite to a single fact that would support Mattel's

4   new position that MGA is estopped, by judicial estoppel or otherwise, from contending

5   that Mattel cannot meet its burden of showing that the Bryant sketches are entitled to

6   broad protection, after proper analytic dissection and filtering.

7

8   Moreover, Mattel's argument that MGA is "incorrect as a matter of law" that a work of

9   visual art may be broken down into original and non-original components is simply wrong.

10   Visual works are subject to the same general standards of analytic dissection and filtering

11   as are other copyrighted works.  The Supreme Court held in <u>Feist Publications, Inc. v.</u>

12   <u>Rural Telegraph Service Co.</u>, 499 U.S. 340 (1991), that "[t]he mere fact that a work is

13   copyrighted does not mean that every element of the work may be protected.  Originality

14   remains the *sine qua non* of copyright; accordingly, copyright protection may extend only

15   to those components of a work that are original to the author." <u>Id.</u> at 348 (emphasis added).

16   In other words, it is only copying of copyrightable elements of a work that is answerable

17   under the federal Copyright Act.

18

19   Consistent with <u>Feist</u>, applicable Ninth Circuit precedent holds that, because only those

20   elements of a work that are protectible can be compared when it comes to the question of

21   copyright infringement, the unprotectible elements of the work need to be filtered out and

22   disregarded.  As summarized in <u>Cavalier v. Random House, Inc.</u>, 297 F.3d 815 (9th Cir.

23   2002):

24          A court "must take care to inquire only whether 'the protectible elements,

25          standing alone, are substantially similar.'" <u>Williams v. Crichton</u>, 84 F.3d

26          581, 588 (2d Cir. 1996) (emphasis in original) (citation omitted); <u>accord</u>

27          <u>Apple Computer, Inc. v. Microsoft Corp.</u>, 35 F.3d 1435, 1442-43 (9th Cir.

28          1994).  Therefore, when applying the extrinsic test, a court must filter out

and disregard the non-protectible elements in making its substantial similarity determination. <u>See</u> <u>Shaw [v. Lindheim]</u>, 919 F.2d [1353, 1361 (9th Cir. 1990)] (applying the extrinsic test to determine "whether there is substantial similarity between the protected expression of ideas in two literary works") (emphasis added); <u>Berkic v. Crichton</u>, 761 F.2d 1289, 1293-94 (9th Cir. 1985) (rejecting consideration of general ideas as well as scenes-a-faire in determining substantial similarity under the extrinsic test).

297 F.3d at 822-23.  <u>See also</u> <u>Apple Computer Inc. v. Microsoft Corp.</u>, 35 F.3d 1435, 1439 (9th Cir. 1994) ("When the range of <u>protectable</u> and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity.").  The MGA Parties' proposed instruction properly focuses the jury on the <u>protectable</u> elements of Mattel's work, rather than every element.

In <u>Cavalier</u>, the Ninth Circuit expressly held that "[t]he basic mode of analysis for comparison of the literary elements applies to comparison of the art work.  As with literary works, unprotectible elements should not be considered when applying  the extrinsic test to art work." 297 F.3d at 825-26.

Similarly, <u>Apple Computer</u> involved a claim that the "artistic look" of Microsoft's user interface was "substantially similar" to Apple's copyrighted user interface.  The Ninth Circuit affirmed the district court's decision to "analytically dissect" Apple's user interface to "eliminate" unprotectible elements, holding that: "The district court's approach was on target." 35 F.3d at 1439. The court further stated:

> [T]he extrinsic test now objectively considers whether there are substantial similarities in both ideas and expression, whereas the intrinsic test continues to measure expression subjectively.  Because only those elements of a work that are protectable and used without the author's permission can

1   be compared when it comes to the ultimate question of illicit copying, we

2   use analytic dissection to determine the scope of copyright protection

3   before works are considered "as a whole."

4   Id. at 1442-43; see also id. at 1446 ("the party claiming infringement may place 'no

5   reliance upon any similarity in expression resulting from' unprotectable elements.

6   Otherwise, there would be no point to the extrinsic test, or to distinguishing ideas from

7   expression. … [T]he unprotectable elements have to be identified, or filtered, before the

8   works can be considered as a whole.").

9

10  This framework has been applied in a variety of cases involving graphic or artistic works,

11  like Satava v. Lowry, 323 F.3d 805 (9th Cir. 2003) the "jellyfish in glass" case, which

12  unquestionably filtered out elements of the art at issue.  There, the Ninth Circuit held that

13  "ideas, first expressed by nature, are the common heritage of humankind, and no artist may

14  use copyright law to prevent others from depicting them."  Id. at 812.  The Ninth Circuit's

15  overriding concern in Satava was to prevent copyright protection from "cheat[ing] the

16  public domain" by expanding to the point of providing a monopoly on the "use of ideas

17  that properly belong to us all."  Id.  See also Dyer v. Napier, 2006 U.S. Dist. LEXIS 68990

18  (D. Ariz. 2006) (filtering when comparing photo of mountain lion with cub to allegedly

19  infringing sculpture); see also Reece v. Island Treasures Art Gallery, Inc., 468 F. Supp. 2d

20  1197 (D. Haw. 2006) (applying filtering in action involving "stained glass artwork").[1]

21

22  The Apple Computer court set forth the following three part test to be used in connection

23  with copyright infringement cases involving all forms of copyrighted work, including

24  visual works like the Bryant sketches:

25

26  _____

    [1]      In fact, albeit in an unpublished opinion, the Ninth Circuit affirmed sanctions awarded by
27  the district court against a plaintiff based on its opposition to use of analytic dissection under the
    extrinsic test in connection with a visual work.  Domingo Cambeiro Prof'l Corp. v. Advent, 2000
28  U.S. App. LEXIS 3658, at *9 (9th Cir. Mar. 7, 2000) ("It was also objectively unreasonable for
    Cambeiro to oppose the use of analytic dissection under the extrinsic test.").

(1) The plaintiff must identify the source(s) of the alleged similarity between his work and the defendant's work.

(2) Using analytic dissection, and, if necessary, expert testimony, the court must determine whether any of the allegedly similar features are protected by copyright…. [U]nprotectable ideas must be separated from potentially protectable expression; to that expression, the court must then apply the relevant limiting doctrines in the context of the particular medium involved, through the eyes of the ordinary consumer of that product.

(3) Having dissected the alleged similarities and considered the range of possible expression, the court must define the scope of the plaintiff's copyright - that is, decide whether the work is entitled to "broad" or "thin" protection.  Depending on the degree of protection, the court must set the appropriate standard for a subjective comparison of the works to determine whether, as a whole, they are sufficiently similar to support a finding of illicit copying.

35 F.3d at 1443.

The Ninth Circuit's application of "analytical dissection" and "filtering" to visual works is also confirmed by the law review article referenced by Mattel in connection with its partial summary judgment motion, Michael D. Murray, Copyright, Originality, and the End of the Scenes a Faire and Merger Doctrines for Visual Works, 58 Baylor L. Rev. 779 (2006). (See Mattel MSJ Reply at 13.)  Although the author (like Mattel) clearly disagrees with and is hostile to the Ninth Circuit approach, he confirms that the Ninth Circuit requires that visual works, like other copyrighted works, must be filtered of unprotectible elements:

Apple drove a stake through the heart of evaluation of visual works: There would be a two stage test with analytical dissection at each stage and rejection of parts that were supposedly subject to the merger and scenes a

373

1   faire doctrines.   There would be no subjective evaluation of the total
2   concept and feel of any visual work that allegedly merged with its
3   underlying ideas (there being a drastically limited number of ways of
4   depicting the idea visually) or allegedly embodied stock images that must
5   be copied in order to depict the idea.

6   In Cavalier v. Random House, Inc., Apple's holding was interpreted to
7   mean that in visual art cases, the court is to filter out unprotectable
8   elements in both the extrinsic and intrinsic similarity tests.

9   58 Baylor L. Rev. at 810-11.

10

11   It is also noteworthy that Mattel argued for this very same approach in connection with the
12   district court proceedings in the Goldberger case referenced repeatedly by Mattel in its
13   opposition to MGA's proposed instruction, in its briefs in this case, and by Mattel's
14   copyright law expert, Professor Robert Lind, in his report.  Thus, in connection with the
15   plaintiffs summary judgment motion, Mattel argued:

16   To determine whether Radio City misappropriated protected expression, or
17   illegally copied, the Court should (i) isolate the elements of Mattel's Barbie
18   Copyrights that are protectible from those that are unprotectible, and (ii)
19   determine whether there is a "substantial similarity" between the Radio
20   City Head and the protectible elements of the Barbie Copyrights….
21   "**Where, as here, we compare products that have both protectible and**
22   **unprotectible elements, we must exclude comparison of the**
23   **unprotectible elements from our application of the ordinary observer**
24   **test**."

25   (Memorandum of Plaintiff Mattel, Inc. in Opposition to Defendant' Motion For Summary
26   Judgment at 6, in Mattel Inc., v. Radio City Entertainment (S.D.N.Y. No. 00 Civ. 6272
27   (JSR)), filed April 16, 2001)) (citations omitted, emphasis added).)

28

374

1 | Thus, contrary to Mattel's argument, a "filtering" analysis is not only consistent with
2 | Ninth Circuit law, it is <u>required</u> by it.

3 |

4 | Mattel's reliance on "creative compilations" is misplaced for two reasons. First, Mattel is
5 | required to identify the elements of the alleged "compilation" that make the sketches
6 | protectible. To date, Mattel has failed to do so. <u>See Bethea v. Burnett</u>, 2005 WL 1720631,
7 | at * 10 (C.D. Cal. June 28, 2005); <u>Todd v. Montana Silversmiths, Inc.</u>, 379 F. Supp. 2d
8 | 1110 (D. Colo. 2005)**.** Second, such compilations or combinations are only entitled to
9 | "thin" copyright protection. <u>See Feist Publ'ns, Inc. v. Rural Tel. Co.</u>, 499 U.S. 340, 349
10 | (1991); <u>Apple Computer, Inc. v. Microsoft Corp.</u>, 35 F.3d 1435, 1442 (9th Cir. 1994)
11 | (holding that only "thin protection, "against virtually identical copying, is appropriate");
12 | <u>see also</u> <u>Satava v. Lowry</u>, 323 F.3d 805, 812 (9th Cir. 2003) (holding that plaintiff
13 | possessed only a " thin" copyright which "protects against only virtually identical
14 | copying"; <u>Allen v. The Ghoulish Gallery</u>, 2007 U.S. Dist. LEXIS 86224 (S.D. Cal. Nov.
15 | 20, 2007). It is unclear what Mattel means when it refers to "full" copyright protection, as
16 | "full" is not a recognized concept or term of art under copyright law. To the extent that it
17 | is meant to suggest that filtering analysis does not apply, or that the scope of protection in
18 | such a compilation is not thin, Mattel's use of the term is improper.

19 |

20 | In addressing Mattel's assertion that differences between works are irrelevant, and Judge
21 | Learned Hand's "pithy statement" upon which Mattel relies, the Second Circuit has
22 | specifically noted, in a case that Mattel cites in its brief, that "numerous differences tend to
23 | undercut substantial similarity." <u>Warner Bros. v. AM Broadcasting</u>, 720 F.2d 231, 241 (2d
24 | Cir. 1983). "If the points of dissimilarity not only exceed the points of similarity, but
25 | indicate that the remaining points are, within the context of plaintiff's work, of minimal
26 | importance, either quantitatively or qualitatively, then no infringement results." <u>Weygand</u>
27 | <u>v. CBS, Inc.</u>, 1997 U.S. Dist. LEXIS 10613, at *29 n.22 (C.D. Cal. May 20, 1997), <u>quoting</u>
28 | <u>Nimmer, on Copyright</u> § 13.03[B][1][a]. Moreover, "a defendant may legitimately avoid

1  infringement by intentionally making sufficient changes in a work that would otherwise be

2  regarded as substantially similar to plaintiff's."  Id.   In contrast to literary works (the

3  context giving rise to Judge Learned Hand's statement), "[a] graphic or three-dimensional

4  work is created to be perceived as an entirety.  Significant dissimilarities between two

5  works of this sort inevitably lessen the similarity that would otherwise exist between the

6  total perceptions of the two works."  Warner Bros., 720 F.2d at 241.

7

8  Accordingly, courts in the Ninth Circuit have routinely considered differences on the

9  substantial similarity issue.  See, e.g., Funky Films, Inc. v. Time Warner Entm't, 462 F.3d

10  1072, 1078 (9th Cir. 2006) (Although "[a]t first blush, these apparent similarities appear

11  significant[,] … an actual reading of the two works reveals greater, more significant

12  differences and few real similarities at the levels of plot, characters, themes, mood, pace,

13  dialogue or sequence of events"); Olson v. Nat'l Broad. Co., 855 F.2d 1446, 1450 (9th Cir.

14  1988) (noting that the district court had given little weight to an expert chart and film

15  montage comparing the similarities of the two works in part because the expert had

16  "deemphasized any dissimilarities between plaintiff's and defendants' works" and

17  affirming j.n.o.v. for the defendant); Berkla v. Corel Corp., 66 F. Supp. 2d 1129, 1144

18  (E.D. Cal. 1999) ("[A]s it does in same-media cases, the court when adjudicating a cross-

19  media copyright infringement case will simply have to parse, to the best of its ability, the

20  protected expression from the unprotected essential idea (and what 'expression'

21  necessarily flows from that idea), and make its best judgment concerning whether the

22  potential infringing expression has sufficient dissimilarities."); Morgan Creek Prods., Inc.

23  v. Capital Cities/ABC, Inc., 1991 U.S. Dist. LEXIS 20564, at *38 (C.D. Cal. Oct. 25, 1991)

24  ("Upon viewing [plaintiff's work] and [defendant's work] one is perhaps struck as much

25  by the dissimilarities between the two works as by their similarities …. The list could go

26  on."); Jason v. Fonda, 526 F. Supp. 774, 777 (C.D. Cal. 1981) (focusing on the

27  "substantial differences between the works" in reaching its conclusion that "when analyzed

28

376

1  as an entire work, the [defendant's motion picture] is, as a matter of law, substantially

2  dissimilar to plaintiff's book").

3

4  While Mattel purports to advocate the use herein of the Model Instruction, Mattel

5  significantly has made no reference to Ninth Circuit Model Jury Instruction 17.3 (2007)

6  (Ideas and Expression).   Using the Model Instruction Mattel advocates would be

7  prejudicial and misleading without the use of Model Instruction 17.3, which explains key

8  concepts necessary for the jury to properly apply the law.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections and Responses re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**ALTERNATE:   INSTRUCTION NO. 1C**

[Defendants reserve the right to modify all of their proposed instructions relating to copyright issues to conform to the jury's findings in Trial 1A if the jury finds that fewer than 16 of the Bryant sketches are owned by Mattel.  The following is an example.]

In the Phase 1A trial Mattel asserted that it owned copyrights in a total of 16 of Carter Bryant's sketches prepared by Bryant prior to September 1, 2000.  In Phase 1A, you determined that Mattel owned a total of [XX] of these Bryant sketches, and that Mattel did not own [YY] of the sketches.  The [YY] sketches not owned by Mattel were assigned by Bryant to MGA, and thus are owned by MGA.

In assessing Mattel's claims of copyright infringement of the [XX] sketches that you determined it owns, you must also consider the sketches owned by MGA.  MGA has every right to use the Bryant sketches it owns, and the expression in those sketches.  Thus, if Mattel relies on original expressive elements of one of the Bryant sketches that Mattel owns, but those same elements are also found in one of the sketches owned by MGA, then you must disregard those elements, because they cannot support Mattel's claims of copyright infringement.

The Bryant sketches owned by MGA were created earlier than the Bryant sketches you determined that Mattel owns.  Accordingly, as between the two, MGA has superior rights. For this reason, if any Bryant sketch owned by Mattel is substantially similar (I will explain what this means in a few minutes) to a sketch owned by MGA, then Mattel cannot rely on that sketch in connection with its copyright infringement claims against MGA. Mattel thus bears the burden of proving by a preponderance of the evidence that the Bryant sketches it relies on are not substantially similar to the Bryant sketches owned by MGA. [Include other aspects of 1C above as appropriate based on the Phase 1A verdict.]

378

**Mattel's Objections**

Mattel objects to defendants' proposed jury instruction 1C, Alternate on the following grounds:

1.  Mattel incorporates its objections to defendants' Proposed Instruction No. 1C, *supra*.

2.  Even if defendants establish they own the copyright in an earlier Carter Bryant drawing, they incorrectly suggest in this proposed instruction that a subsequent drawing (in which Mattel owns the copyright) that adds new elements is not protectable by copyright law to the extent of those new elements.

3.  Moreover, defendants' proposed instruction is not appropriate unless MGA establishes that (a) it owns the copyright in certain of the Bryant drawings; and (b) such drawings predate those which are owned by Mattel.  If Mattel owns prior works, any similar later works that MGA purports to own are themselves infringing.

4.  The statement in the proposed instruction that "MGA has every right to use the Bryant sketches it owns, and the expression in those sketches" is incorrect because it does not recognize Mattel's rights to works that are derivative of the drawings that Mattel owns.  To the extent that any works owned by MGA (if any) feature original expression contained in prior drawings owned by Mattel, then Mattel owns such expression.

5.  Defendants' proposed instruction purports to make factual findings as to the sequence of creation, which is improper.

**MGA Parties' Response**

The MGA Parties (collectively for this response, "MGA") incorporate their responses to Mattel's objections to defendants' Proposed Instruction No. 1C, <u>supra</u>.

Mattel's statements in paragraphs 2-4 of its Objections are not supported by a fair reading of MGA's proposed instruction.  In addition, note that Mattel now appears to be claiming a right to base its copyright claims on derivative works.  None of its copyrights, however, were registered as derivative works.  Thus, Mattel should be estopped, this late in the legal proceedings, from changing its position and adding a new legal theory.

Mattel's objection that MGA's statement regarding the expression in sketches it owns is "incorrect" assumes as a matter of fact that Mattel would be able to demonstrate that drawings it might own are derivative of the sketches owned by MGA.  Mattel cannot make such a showing, because no original expression was added to the Bryant sketches prepared while Bryant was employed by Mattel.

Mattel's statement in its paragraph 5 is incorrect, and not a fair reading of MGA's proposed instruction.  The jury will decide which BRATZ sketches, if any, were assigned to Mattel, and in making that determination will also hear and consider the evidence as to sequence of creation.

**INSTRUCTION NO. 2C**

**COPYRIGHT – DEFINED**

Copyright is the exclusive right to copy. This right to copy includes the exclusive right to:

      1.    Authorize or make additional copies, or otherwise reproduce the copyrighted work;

      2.    Recast, transform, adapt the work, that is prepare derivative works based upon the copyrighted work;

      3.    Distribute copies of the copyrighted work to the public by sale or other transfer of ownership;

      4.    Display publicly a copyrighted pictorial work or graphic work.

It is the owner of a copyright who may exercise these exclusive rights. [Here, in the Phase I-A trial, it was determined that Mattel is the "owner" of the Bryant sketches as a result of the transfer provisions of Bryant's employment agreement.]

In general, copyright law protects against reproduction, adaptation, distribution and display of substantially similar copies of the owner's copyrighted work without the owner's permission. An owner may enforce these rights to exclude others in a lawsuit for copyright infringement.

Mere possession of a copyrighted work does not constitute infringement. That Carter Bryant and MGA had possession of Mr. Bryant's physical sketches, and made reference to them, is not copyright infringement, just like a person who possesses a book has not

1  infringed the copyright of the book's publisher or author.  [Lapham v. Porach, 2007 U.S.
2  Dist. LEXIS 30751, at *15 (S.D.N.Y. Apr. 25, 2007).]

3

4  Further, a defendant's contribution of non-infringing fashions, accessories, or other
5  materials to a BRATZ doll does not constitute copyright infringement even if you find that
6  the BRATZ doll itself infringes Mattel's copyright.  You must consider each defendant's
7  acts separately to determine whether that defendant has engaged in an act that is an
8  infringement of Mattel's copyrights.

9

10  **Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.1 (2007); 17 U.S.C. § 106;
11  2-8 Nimmer on Copyright §§ 8.01–8.20; 3 Patry on Copyright §§ 8:1, 9:2; 12-76 Nimmer
12  on Copyright § 12.04[A][1].

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections and Responses re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**Mattel's Objections**

Mattel objects to defendants' proposed jury instruction 2C on the following grounds:

1.       This proposed instruction deviates from the Ninth Circuit Model Instruction. The last two paragraphs are not found in the model instruction and constitute inappropriate argument in what is supposed to be an introductory instruction to the jury regarding the definition of a copyright.  Defendants' arguments about what does or does not constitute infringement is not appropriately included in this definition instruction.

2.       Moreover, the examples given by defendants in the proposed instruction are erroneous as a matter of law and prejudicial to Mattel.  The person in their example of non-infringement obviously purchased those books from someone authorized to sell them. That is not what occurred here.  And defendants' statement that the contribution of non-infringing fashions or accessories to the infringing Bratz dolls does not constitute infringement is confusing and misleading absent some showing that this could conceivably relate to one of the defendants in this case (which it could not since they were all indisputably involved in the development and sales of the infringing Bratz dolls).

3.       The last paragraph in the proposed instruction is also confusing and misleading because the contribution of non-infringing material to an infringing work does not excuse the unlawful copying itself.  Indeed, it is well settled that "no plagiarist can excuse the wrong by showing how much of his work he did not pirate."  *Shaw v. Lindheim*, 919 F.2d 1353, 1362 (9th Cir. 1990); *see also Atari Games Corp. v. Nintendo of Am., Inc.*. 1993 WL 207548, *4 (N.D. Cal. 1993) ("Atari argues that there are many lock-specific features which it did not include in the Rabbit program. Atari may not avoid summary judgment by pointing to what it did not copy."); *Curtis v. General Dynamics Corp.*, 1990 WL 302725, *9 (W.D. Wash. 1990) ("Defendants argue that their poster could not infringe plaintiff's copyright because only a small proportion of its design could possibly be considered similar. This argument is both factually and legally without merit.").

1    4.    The proposed instruction does not properly inform the jury that defendants

2 may be liable for vicarious or contributory copyright infringement even if they did not

3 engage in direct copyright infringement.

4    5.    Mattel requests that the Court adopt Mattel's proposed instruction, which

5 conforms to the Ninth Circuit Model Instruction and provides the jury with an objective

6 statement of the law.  *See* Mattel's Proposed Jury Instruction re Copyright—Defined.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections and Responses re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**MGA Parties' Response**

Mattel's complaint that this instruction deviates from the model is no basis for rejecting it, and the MGA Parties (collectively for this response, "MGA") maintain that their proposed instruction is necessary and proper in light of the claims and facts presented in this case. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case.   See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.  Jury instructions do not come down from any mountain or rise up from any sea.  Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.  This description does not denigrate their value, it simply places them in the niche where they belong.").   Indeed, modification is sometimes necessary to make an instruction accurate and complete.  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").   In addition, Mattel mischaracterizes the proposed instruction as improper argument, rather than what it clearly is: necessary explanation of the fundamental elements of copyright protection.

MGA continues to maintain that, even though it is not in the Model Instruction, an instruction on "mere possession" is not only appropriate, but necessary under the facts of this case, and further that MGA's example is a proper one.  Mattel's objection to the example given is beside the point: regardless of the source from which a person receives a copyrighted work, mere possession of that work would not constitute copyright

1  infringement, because possession is not one of the exclusive rights conveyed by the

2  Copyright Act.  See 17 U.S.C. § 106(a).   MGA also notes that Mattel objects to all

3  illustrative examples provided by MGA, but then offers none itself, as it is apparently

4  trying to ensure that the jury does not know how to apply the proper standards.

5

6  Mattel has again mischaracterized the proposed instruction.  The instruction does not

7  purport to say that contribution of non-infringing material to an infringing work "excuses"

8  unlawful copying, but rather that it does not "constitute" infringement.  Thus Mattel's case

9  citations are completely irrelevant.   This instruction properly informs the jury that

10  separately identifiable, non-infringing contributions to a project that also includes

11  infringing elements do not themselves constitute infringement.   This instruction is also

12  necessary and appropriate on the facts presented here to avoid prejudice to Bryant, given

13  that Mattel seeks to recover damages based not only on Bryant's initial contributions to

14  BRATZ (alleged to belong to Mattel), but based on his nearly eight years of continuous

15  consulting work with MGA after leaving Mattel.  The instruction properly advises the jury

16  that Mattel cannot claim infringement based on Bryant's contributions to new fashions,

17  accessories and themes for second-and-later generation dolls

18

19  Mattel's suggestion that the proposed instruction on the meaning of copyright protection is

20  improper because it does not also address "vicarious or contributory copyright

21  infringement" is nonsensical.  This jury instruction is not the proper context for instruction

22  on direct infringement liability, let alone derivative liability.  There is no apparent reason

23  whatsoever (and Mattel offers none) to combine and conflate multiple theories of liability,

24  each of which has its own standards, in a single jury instruction.   Both vicarious and

25  contributory copyright infringement are properly and comprehensively addressed in other

26  proposed instructions.  (See MGA's Proposed Jury Instructions 13C, 14C, [15].)

27

28

Lastly, Mattel's objection that the Court should give the model instruction rather than defendants' proposed instruction should be rejected for the reasons set forth above that demonstrate the need to include the proposed modifications.

**INSTRUCTION NO. 2a C**

**COPYRIGHT –IDEA/EXPRESSION DICHOTOMY**

Copyright law stems from the United States Constitution.  As phrased in the Constitution and confirmed by the United States Supreme Court, "[t]he primary objective of copyright is not to reward the labor of authors, but 'to promote the Progress of Science and useful Arts." To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work. This principle, known as the idea/expression or fact/expression dichotomy, applies to all works of authorship.

**Authority**: U.S. Constitution, Art. I, § 8, cl. 8; Feist Publications, Inc. v. Rural Telephone Co., 499 U.S. 340, 349-50 (1991); Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 (1975); Harper & Row, Publishers, Inc. v. Nation Enters., 471 U.S. 539, 556-57 (1985).

**Mattel's Objections**

Mattel objects to defendants' proposed jury instruction 2a C on the following grounds:

1.      In the Ninth Circuit, it is proper to consider ideas as part of the extrinsic test. *See, e.g., Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (holding that, as part of the extrinsic test, one must "consider[] whether two works share a similarity of *ideas* and expression") (emphasis added); *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994) (same).

2.      The proposed instruction misstates the purpose of copyright law.  Contrary to defendants' contention that the copyright law is not designed to reward authors, the U.S. Supreme Court has held "[t]he purpose of copyright is to create incentives for creative effort."  *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984).

3.      Defendants' instruction is incomplete in that it does not recognize that creative compilations of non-protectable elements are entitled to copyright protection.  *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) ("A combination of unprotectable elements is eligible for copyright protection . . .  if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work or authorship."); *Swirsky v. Carey*, 376 F.3d 841, 848 (9th Cir. 2004) ("substantial similarity can be found in a combination of elements, even if those elements are individually unprotected")

4.      The proposed instruction should be rejected as untimely.  Defendants served this instruction on May 14, 2008.  The parties, however, agreed to serve jury instructions by April 8, 2008.  Defendants' last minute addition of an instruction is improper and prejudicial.

5.      The proposed special instruction is prejudicial and duplicative.  The Ninth Circuit Model Instruction 17.0, proposed by Mattel, states that "Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles or discoveries cannot

389

1  themselves be copyrighted."  This statement is an objective explanation of the

2  idea/expression dichotomy.

3         If the Court is inclined to give any additional instruction regarding the

4  idea/expression dichotomy, Mattel respectfully requests that the Court give Ninth Circuit

5  Model Instruction 17.3 which states:

6         Copyright law allows the author of an original work to

7         prevent others from copying the way or form the author used to

8         express the ideas in the author's work. Only the particular

9         expression of an idea can be copyrighted. Copyright law does not

10        give the author the right to prevent others from copying or using

11        the underlying ideas contained in the work, such as any

12        procedures, processes, systems, methods of operation, concepts,

13        principles or discoveries.

14             The right to exclude others from copying extends only to

15        how the author expressed the ideas in the copyrighted work. The

16        copyright is not violated when someone uses an idea from a

17        copyrighted work, as long as the particular expression of that

18        idea in the work is not copied.

19

20

21

22

23

24

25

26

27

28

1  **MGA Parties' Response**

2

3  Mattel's objection that this proposed jury instruction "misstates the purpose of copyright

4  law" is frivolous.  The instruction is essentially part of a direct quote from the Supreme

5  Court's unanimous, seminal decision in <u>Feist Publications, Inc. v. Rural Telephone Co.</u>,

6  499 U.S. 340 (1991):

7      It may seem unfair that much of the fruit of the compiler's labor may be used

8      by others without compensation.  As Justice Brennan has correctly observed,

9      however, this is not "some unforeseen byproduct of a statutory scheme."

10     <u>Harper & Row</u>, 471 U.S., at 589 (dissenting opinion).  It is, rather, "the

11     essence of copyright," <u>ibid.</u>, and a constitutional requirement.  The primary

12     objective of copyright is not to reward the labor of authors, but "to promote

13     the Progress of Science and useful Arts." Art. I, § 8, cl. 8.  <u>Accord</u>, <u>Twentieth</u>

14     <u>Century Music Corp. v. Aiken</u>, 422 U.S. 151, 156 (1975).  To this end,

15     copyright assures authors the right to their original expression, but encourages

16     others to build freely upon the ideas and information conveyed by a work.

17     <u>Harper & Row</u>, <u>supra</u>, at 556-557.  This principle, known as the

18     idea/expression or fact/expression dichotomy, applies to all works of

19     authorship.  As applied to a factual compilation, assuming the absence of

20     original written expression, only the compiler's selection and arrangement may

21     be protected; the raw facts may be copied at will.  This result is neither unfair

22     nor unfortunate.  It is the means by which copyright advances the progress of

23     science and art.

24  <u>Id</u>. at 349-50.

25

26  The proposed instruction does not state, as Mattel argues, "that the copyright law is not

27  designed to reward authors."  Rather, as discussed in <u>Feist</u>, the language of this instruction

28  accurately reflects the <u>primary</u> function of copyright law, namely, to enrich the public and

391

1  not simply to confer a private benefit to the copyright owner; as phrased in the
2  Constitution: "To promote the Progress of Science and useful Arts, by securing for limited
3  Times to Authors and Inventors the exclusive Right to their respective Writings and
4  Discoveries."  Indeed, although omitted from the passage from Sony Corp. v. Universal
5  City Studios, Inc., 464 U.S. 417 (1984), quoted by Mattel, Sony fully supports this settled
6  proposition and the proposed instruction:

> The monopoly privileges that Congress may authorize are neither unlimited
> nor primarily designed to provide a special private benefit.  Rather, the limited
> grant is a means by which an important public purpose may be achieved.  It is
> intended to motivate the creative activity of authors and inventors by the
> provision of a special reward, and to allow the public access to the products of
> their genius after the limited period of exclusive control has expired.  "The
> copyright law, like the patent statute, makes reward to the owner a secondary
> consideration."

15  Id. at 429, quoting United States v. Paramount Pictures, 334 U.S. 131, 158 (1948).

16

17  As discussed in the MGA Parties' Response to Mattel's Objection to MGA's Proposed
18  Jury Instruction 1C, Mattel's reliance on "creative compilations" is misplaced for two
19  reasons.  First, Mattel is required to identify the elements of the alleged "compilation" that
20  make the sketches protectible.  To date, Mattel has failed to do so.  See Bethea v. Burnett,
21  2005 WL 1720631, at * 10 (C.D. Cal. June 28, 2005); Todd v. Montana Silversmiths, Inc.,
22  379 F. Supp. 2d 1110 (D. Colo. 2005).  Second, such compilations or combinations are
23  only entitled to "thin" copyright protection.  See Feist Publ'ns, Inc. v. Rural Tel. Co., 499
24  U.S. 340, 349 (1991); Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442 (9th
25  Cir. 1994) (holding that only "thin protection, "against virtually identical copying, is
26  appropriate"); see also Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003) (holding that
27  plaintiff possessed only a " thin" copyright which "protects against only virtually identical
28

392

1   copying"); <u>Allen v. The Ghoulish Gallery</u>, 2007 U.S. Dist. LEXIS 86224 (S.D. Cal. Nov.
2   20, 2007).

3

4   Mattel's argument that this instruction it is improper because the Ninth Circuit allows
5   consideration of "ideas as part of the extrinsic test" should also be rejected.  As an initial
6   matter, Mattel concedes that "[f]acts, ideas, procedures, processes, systems, methods of
7   operation, concepts, principles or discoveries cannot themselves be copyrighted." <u>See also</u>
8   17 U.S.C. § 102 (b).  The language in this instruction that copyright law "encourages
9   others to build freely upon the ideas and information conveyed by a work" is completely
10  proper (and, as noted, directly stems from the Constitution and Supreme Court precedent).
11  Moreover, this instruction is not directed to the Ninth Circuit's "extrinsic" test, which is
12  separately discussed in MGA Instruction 9C ("the 'extrinsic' test considers whether two
13  works share substantial similarity of ideas and expression as measured by external,
14  objective criteria ideas").  This proposed instruction, which, as noted, stems from the
15  Constitution and various Supreme Court decisions, does not

16

17  Although Mattel argues that this instruction is "prejudicial," it does not provide any basis
18  for the supposed prejudice.  Nor could there be any since this instruction simply tracks the
19  language of the Constitution and Supreme Court decisions.

20

21  Mattel's argument that the instruction is "untimely" should also be rejected.  Mattel als
22  submitted proposed instructions after the agreed-upon date.  Unlike Mattel's instruction,
23  however, this instruction does not seek to inject new theories of infringement into the case
24  after the close of discovery.  Rather, this instruction simply instructs the jury of settled
25  Constitutional principles underlying U.S. copyright law.

26

27  Mattel's argument that this instruction "duplicative" based on the inclusion of Ninth
28  Circuit Model Instruction 17.0 is belied by its reference to Ninth Circuit Model Instruction

17.3.  Although MGA agrees that Model Instruction 17.3 should be given to the jury, and it has included that instruction as part of MGA Instruction 3C, that instruction is not complete in that it does not clearly instruct the jury concerning the fundamental constitutional issues set forth in this proposed instruction that the Supreme Court has repeatedly emphasized underlie U.S. copyright law.

**INSTRUCTION NO. 3C**

**COPYRIGHT – SUBJECT MATTER – IDEAS AND EXPRESSION**

Copyright law allows the author of an original work to prevent others from copying the tangible expression the author used to express the ideas in the author's work.  Only the particular original expression of an idea can be copyrighted, and the right to exclude others applies only to this original expression.  An author cannot prevent others from copying or using aspects of his work which were derived from other sources, such as the work of other artists.

Copyright law protection does not extend to any idea, procedure, process, system, method of operation, concept, principle or discovery, regardless of the form in which it is described, explained, illustrated, or embodied.  Particularly relevant here is the limitation that an author cannot prevent others from copying or using ideas or concepts contained or reflected in the work or that inspired the work; to do so would inhibit full and free exchange of information and hinder, rather than promote the creation of new works of authorship, which is the goal of the copyright system.

The right to exclude others from copying also extends only to the particular way the author expressed the ideas in the copyrighted work.

Common or standard treatments of the subject matter are also not protected by copyright. Even though they are forms of expression, they lack sufficient originality to be protected. These are often referred to in copyright law as "scenes a faire," taken loosely from the French for "things which must be done."  In other words, basic ideas or treatments "remain forever the common property of artistic mankind."  [Berkic v. Crichton, 761 F.2d 1289, 1293-94 (9th Cir. 1985).]

1  Let me give you an example from the world of T.V. screen-plays.  A television show about
2  a police station in a high crime area will inevitably have standard stock features, such as a
3  precinct house, various levels of police employees from a captain down to the beat officers,
4  criminal suspects who are apprehended, defense lawyers, prosecutors, etc.  Such standard
5  plot lines and features may be thought of as creative expression, but no one can claim
6  ownership or exclusive rights to them, and no one T.V. show can accuse another of
7  violating a copyright by allegedly copying and using such standard features in a second
8  show.  [Walker v. Time Life. Films, Inc., 784 F.2d 44, 50 (2d Cir. 1986).]
9
10 As another example, in the world of theatre, devices that are standard plot lines, and are
11 therefore not protectible, include the controlling mother-in-law, the lipstick stained
12 handkerchief, and the butler bent on murder.  All authors can use these common plot
13 devices.
14
15 Also unprotected is expression in the copyrighted work that reflects expression already in
16 the public domain, and therefore free for all to use.
17
18 To give one illustration in the context of a doll, "[a]n upturned nose, bow lips, and wide
19 eyes are the 'idea' of a certain type of doll face," and this idea does not belong to any one
20 company but rather is in the public domain.   [Mattel, Inc. v. Goldberger Doll
21 Manufacturing Co., 365 F.3d 133, 136 (2d Cir. 2004).]
22
23 For another illustration, a 5 ½ inch Warlord doll does not infringe upon a 5 ½ inch Masters
24 of the Universe doll because, though the dolls look remarkably similar, the similarities are
25 all attributable to the unprotectible idea of a superhuman muscleman crouching in a
26 traditional fighting pose.  [Mattel, Inc. v. Azrak-Hamway Int'l Inc., 724 F.2d 357, 360 (2d
27 Cir. 1983).]
28

1   These unprotected elements of a work, ideas and concepts, scenes a faire, and unoriginal
2   material, often overlap and are not always easy to separate into categories.  Nevertheless,
3   they are not protected by copyright, and must be disregarded when comparisons between
4   the Bryant sketches and the BRATZ dolls are made.

5
6   To state it another way, your analysis must be limited to expressive elements in the 16
7   sketches covered by Mattel's copyrights that were originally contributed solely by Carter
8   Bryant.

9
10  **Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.3 (2007); 4-13 Nimmer
11  on Copyright § 13.03[B]; Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435 (9th Cir.
12  1994); Data East USA, Inc. v. Epyx, Inc., 862 F.2d 204 (9th Cir. 1988); see also Mattel v.
13  Goldberger Doll Mfg. Co., 365 F.3d 133, 136 (2d Cir. 2004); Idema v. Dreamworks, Inc.,
14  162 F. Supp. 2d 1129 (C.D. Cal. 2001).

15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    **Mattel's Objections**

2

3         Mattel objects to defendants' proposed jury instruction 3C on the following grounds:

4         1.      This proposed instruction deviates from the Ninth Circuit Model Instruction

5    and is erroneous and highly prejudicial.

6         2.      Defendants' proposed instruction incorrectly states that an artist "cannot

7    prevent others from copying or using aspects of his work which were derived from other

8    sources, such as the work of other artists."  Courts have recognized, to the contrary, that

9    every artist is influenced by works created by others, and that the artist's work is not for

10   that reason subject to reduced copyright protection.  *See, e.g.*, *Tufenkian Import/Export*

11   *Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127 (2d Cir. 2003) ("all creative works

12   draw on the wellspring that is the public domain").  Bryant has admitted that he did *not*

13   slavishly copy pre-existing works, but rather was creatively inspired by them.  *See, e.g.*,

14   Bryant Decl. submitted in connection with Cross-Motions for Partial Summary Judgment,

15   ¶ 4 ("I regularly reviewed fashion magazines … to look for inspirations for further creative

16   ideas.")

17        3.      Defendants' proposed instruction, in purporting to describe the *scenes a faire*

18   doctrine, ignores that creative compilations of stock features in a visual work are subject to

19   full copyright protection.  *See, e.g.*, *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d

20   133, 136 (2d Cir. 2004).

21        4.      The examples proposed by defendants are misleading and inaccurate.  The

22   "stock features" referred to in defendants' TV show and play examples, neither of which is

23   a visual work of art, bear no resemblance to the *creative variations* on features—such as

24   almond-shaped eyes with three eyelashes and heavy eye makeup—that Bryant's drawings

25   employed.  Moreover, defendants again ignore that creative compilations of stock features

26   are subject to full copyright protection.  Similarly, the "superhuman muscleman" and

27   "crouching in a traditional fighting pose" features in defendants' doll example are features

28   that are much more generic than those present in the Bryant drawings and designs.  Nor is

1  there any reason why "examples" such as those proposed by defendants should be given at
2  all.

3      5.    Relatedly, defendants mischaracterize the *Mattel v. Goldberger Doll* case in
4  quoting only the portion of the opinion that states that "[a]n upturned nose, bow lips, and
5  wide eyes are the 'idea' of a certain type of doll face" and hence are not protectable as an
6  idea.  Defendants fail to report that the *Mattel v. Goldberger Doll* opinion goes on to say
7  that the variations on this doll face are immensely important commercially and fully
8  protectable legally.  *See* 365 F.3d at 136 ("We can surmise that in the highly competitive,
9  billion-dollar doll industry, getting the doll's face and expression exactly right is crucial to
10 success.").

11     6.    As set forth in Mattel's objection to Instruction No. 1C, the proposed
12 instruction is improper because it applies the filtering principles pertaining to written and
13 dramatic works to visual art.

14     7.    The next to last paragraph of the instruction is superfluous and argumentative.
15 The Court need not instruct the jury on the purported difficulty of the filtering analysis
16 because it is inapplicable in the case of visual works of art.

17     8.    Finally, this instruction is improper because the determination of elements of
18 a work which are protectable is a question of law for the Court, not for the jury.  *See*, *e.g.*,
19 *Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of
20 elements in a copyrighted work is a question of law.");  *Stillman v. Leo Burnett Co., Inc.*,
21 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve
22 findings of fact, but the issue of protectibility/nonprotectibility is an issue of law. Thus,
23 before a court may send a copyright case to the jury, it must satisfy itself that, even
24 assuming copying of an idea and its expression, at least some of what the defendant copied
25 falls into the area of protectible expression.");  *Coston v. Product Movers*, 1990 WL 56516
26 at *3 (E.D. Pa., 1990) ("The question of which aspects of plaintiffs' work are protectible
27 expression as opposed to unprotectible idea is an issue of law.");  *Webloyalty.com, Inc. v.*
28 *Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a

1   finding of copyright infringement may involve questions of fact, the protectability of

2   copyrighted material is a question of law); *Pivot Point Int'l, Inc. v. Charlene Prods.*, Inc.,

3   932 F. Supp. 220, 225 (N.D. Ill 1996) (the issue of whether a work is "copyrightable is a

4   question of law," and the "jury has nothing to do with this subject."); *ADA v. Delta Dental*

5   *Plans Ass'n*, 1996 U.S. Dist. LEXIS 5809 at *19 n. 15 (N.D. Ill. 1996) (although

6   copyrightability analysis necessarily requires a court to consider some facts surrounding

7   the works at issue, the inquiry "is far more heavily loaded with policy implications than

8   most other standards," making it appropriate for determination by a court instead of a

9   jury); *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The

10  extrinsic and intrinsic tests both involve findings of fact, but the issue of

11  protectibility/nonprotectibility is an issue of law. Thus, before a court may send a

12  copyright case to the jury, it must satisfy itself that, even assuming copying of an idea and

13  its expression, at least some of what the defendant copied falls into the area of protectible

14  expression.").

15        9.      To the extent any instruction regarding the subject matter of copyright is

16  given, Mattel requests that the Court adopt the Ninth Circuit Model Instruction.  *See* 9th

17  Cir. Civ. Jury Instr. 17.3 (2007).

18

19

20

21

22

23

24

25

26

27

28

**MGA Parties' Response**

The MGA Parties (collectively for this response, "MGA") acknowledge that its reference to Ninth Circuit Model Jury Instructions ("Model Instructions") is for support of their position, and does not indicate that the Model Instruction was copied verbatim. However, Mattel's complaint that this instruction deviates from the model is no basis for rejecting it. In proposing jury instructions, the parties are permitted to modify the language of any model instruction to make it less confusing or more appropriate in the context of a particular case.  See McDowell v. Calderon, 130 F.3d 833, 840-41 (9th Cir. 1997) (discussing both CACI and the Ninth Circuit Manual of Model Jury Instructions: "The texts of 'standard' jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges.  Jury instructions do not come down from any mountain or rise up from any sea.  Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority.  This description does not denigrate their value, it simply places them in the niche where they belong.").  Indeed, modification is sometimes necessary to make an instruction accurate and complete.  See, e.g., United States v. Hegwood, 977 F.2d 492, 496 (9th Cir. 1992) (approving modification of Ninth Circuit model instruction to include additional elements, noting that "[h]ad the district court merely read the model jury instruction, it would have committed plain error, since that instruction makes no reference whatsoever to knowledge or intent.").

It is revealing that Mattel cites no cases decided by or in the Ninth Circuit on the issue of filtering.  MGA's position is well supported by the Ninth Circuit's filtering standards.  The "substantial similarity" analysis involved in the extrinsic test is limited to protected elements of copyrighted work and the court "must take care to inquire only whether the *protectable elements, standing alone*, are substantially similar." Funky Films Inc. v. Time Warner Entm't Co., 462 F.3d 1072, 1077 (9th Cir. 2006), quoting Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002) (emphasis in original).  As such, the "party

1  claiming infringement may place '**no** reliance upon any similarity in expression resulting
2  from unprotectable elements.'" <u>Apple Computer, Inc. v. Microsoft Corp.</u>, 35 F.3d 1435,
3  1446 (9th Cir. 1994), <u>quoting</u> (and adding emphasis to) <u>Aliotti v. R. Dakin & Co.</u>, 831
4  F.2d 898, 901 (9th Cir. 1987).

5

6  As the Supreme Court held in <u>Feist Publications, Inc. v. Rural Telegraph Serv. Co.</u>, 499
7  U.S. 340, 349-50 (1991), "The primary objective of copyright is not to reward the labor of
8  authors, but 'to promote the Progress of Science and useful Arts.'" Art. I, § 8, cl. 8.
9  <u>Accord</u> <u>Twentieth Century Music Corp. v. Aiken</u>, 422 U.S. 151, 156 (1975). To this end,
10 copyright assures authors the right to their original  expression, but encourages others to
11 build freely upon the ideas and information conveyed by a work.   <u>Harper & Row</u>
12 <u>Publishers v. Nation Enters.</u>, 431 U.S. 531, 556-557 (1985).  This principle, known as the
13 idea/expression or fact/expression dichotomy, applies to all works of authorship."  "The
14 mere fact that a work is copyrighted does not mean that every element of the work may be
15 protected.   Originality remains the sine qua non of copyright; <u>accordingly, copyright</u>
16 <u>protection may extend only to those components of a work that are original to the author</u>."
17 <u>Feist</u>, 499 U.S. at 348 (emphasis added).    In other words, it is only copying of
18 copyrightable elements of a work that is answerable under the federal Copyright Act.

19

20 "Unprotectable elements" which must be filtered out of a comparison of a copyrighted
21 work and an allegedly infringing work include: "ideas"; "facts … or other information over
22 which no individual is entitled to claim a monopoly"; "<u>elements borrowed from another</u>
23 <u>author or from the public domain</u>"; instances in which expression "merges with the idea
24 being expressed"; and instances in which the form of the expression "is so standard in the
25 treatment of a given idea that it constitutes a 'scenes a faire'".  <u>Idema v. Dreamworks, Inc.</u>,
26 162 F. Supp. 2d 1129, 1176-77 (C.D. Cal. 2001) (emphasis added).   As the Court
27 recognized in its April 25, 2008 Order:  "Both sides acknowledge, as this Court certainly
28 agrees, that one cannot copyright an idea."  (April 25, 2008 Order at 3.)

1

2   Such filtration is necessary because "nearly any two (or more) works" will show a certain

3   similarity "at a sufficient level of abstraction.  What is required is not just 'similarity,' but

4   'substantial similarity,' and it must be measured at the level of the concrete 'elements' of

5   each work ...."  Idema, 162 F. Supp. 2d at 1178-79, citing Berkic v. Crichton, 761 F.2d

6   1289, 1293 (9th Cir. 1985).

7

8   Regarding Mattel's reliance on "creative compilations of stock features", see MGA

9   Parties' Response to Mattel's Objection to Instruction 1C,  at ¶ 7.

10

11   The Court should give examples of how analytic dissection/filtration works to ensure that

12   the jury understands the Court's instructions.  It is not for Mattel to determine if the

13   "superhuman muscleman" involves features that are "much more generic than those

14   present in the Bryant drawings".  Mattel provides no basis for its assertions that "almond-

15   shaped eyes" or "heavy eye-makeup" constitute "creative variations" unique to Bryant's

16   sketches and not stock elements.  Indeed, MGA will introduce evidence of prior cultural

17   influences that demonstrate that these very features are commonplace. As respects Mattel's

18   responses to "full" copyright protection, see paragraph 3 above.

19

20   Mattel again relies on the Second Circuit's statement in the Goldberger case regarding

21   getting the expression "exactly right."  This language simply shows  that the changes made

22   by MGA in developing the BRATZ dolls disprove substantial similarity:  a small change

23   in the doll's face and expression can represent a meaningful difference.  Although the

24   Goldberger court stated that Mattel submitted sufficient evidence "to justify copyright

25   protection for the central expressive features of Barbie's face," the Court also expressly

26   held that:.

27       **The protection that flows from such a copyright is, of course, quite**

28       **limited**. The copyright does not protect ideas; it protects only the author's

403

1
2
3
4
5
6
7
8

particularized expression of the idea.  **Thus, Mattel's copyright in a doll visage with an upturned nose, bow lips, and widely spaced eyes will not prevent a competitor from making dolls with upturned noses, bow lips, and widely spaced eyes, even if the competitor has taken the idea from Mattel's example, so long as the competitor has not copied Mattel's particularized expression**. An upturned nose, bow lips, and wide eyes are the "idea" of a certain type of doll face. **That idea belongs not to Mattel but to the public domain**.

9
10

365 F.3d at 135-36 (emphasis added).

11
12
13
14
15
16
17
18

Mattel, moreover, never acknowledges that on remand, the District Court ruled against Mattel at the trial, finding no substantial similarity.  See Mattel, Inc. v. Goldberger Doll Mfg. Co., 60 Civ. 6272 (JSR) (S.D.N.Y. Nov. 20, 2004), vacated, No. 00 Civ. 6272 (S.D.N.Y. Nov. 20, 2006).  Perhaps with this case in mind, Mattel settled that case on appeal, and obtained an order having the District Court's decision vacated.  MGA submits that the District Court's decision still can be considered by this Court for its persuasive effect.

19
20
21

Regarding paragraphs 6-7 (Analytic dissection/filtering of visual works), see MGA Parties' Response to Mattel's Objection to Instruction 1C, at ¶ 7.

22
23
24
25
26
27
28

In paragraph 8, Mattel has in this statement finally conceded that analytic dissection/filtering is required.  Mattel's citations are largely if not wholly irrelevant, given that MGA has not disputed that all of the Bryant sketches except for one are copyrightable. Although Mattel cites no authority for the proposition "that the determination of elements of a work which are protectable is a question of law for the Court, not for the jury," MGA is open to discussing this issue further.

---

404

**INSTRUCTION NO. 4C**

**COPYRIGHT INTERESTS – AUTHORSHIP**

The creator of an original work is called the author of that work.  An author originates or "masterminds" the original work, controlling the whole work's creation and causing it to come into being.  In this case, Carter Bryant is the author of the 16 sketches, [and Mattel is the owner of the copyright in those sketches by assignment, as was decided in the Phase I-A trial.]

**Authority:**  Ninth Circuit Manual of Model Jury Instructions 17.6 (2007).

1  **Mattel's Objections**

2

3          Mattel objects to defendants' proposed jury instruction 4C on the following grounds:

4          1.          Mattel objects to the use of the pejorative term "sketches" when referring to

5  Mr. Bryant's drawings and designs.

6          2.          This proposed instruction is also misleading and inaccurate in that it purports

7  to limit Mattel's copyright claims in this case to "16 sketches."  Mattel's claims are based

8  on all works which the jury finds Mattel owns pursuant to the Inventions Agreement.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MGA Parties' Response**

The term "sketches" is not "pejorative" and Mattel has not cited anything to support its position that it is.  Mattel's own expert used the term repeatedly in reference to Carter Bryant's works at issue here.  <u>See, e.g.</u>, Loetz Report, at 2 ("When a designer has an idea, he sketches it out."); <u>id.</u> at 4 ("In Carter Bryant's sketches, the Bratz figures are posed …."); <u>id.</u> at 6 ("The Bratz sketches were drawn …."); <u>id.</u> at 9 ("It is the industry standard when creating a new toy … to have the original artist draw sketches.");  Loetz Depo. at 83:6-13 ("Q. Does the term 'sketch' versus 'drawing' have any distinct meaning to you?  A. Not really …. I don't think there's any real distinction and I think they're used interchangeably").

Mattel's objection asserts that its claims are "based on all works which the jury finds Mattel owns pursuant to the Inventions Agreement that have been registered at the time of trial," but fails to identify a single additional work other than the 16 sketches.  Mattel's attempt to assert some abstract claim that it cannot identify mere weeks before the trial, is contrary to the spirit and the letter of the federal rules requiring parties to a litigation to articulate their positions in a timely fashion.  Mattel should not be permitted to play this evasive game right up until the opening statements.

MGA notes that Mattel's objection, as originally written, concluded with the following sentence:  "Mattel's claims are based on all works which the jury finds Mattel owns pursuant to the Inventions Agreement **that have been registered at the time of trial**."  Mattel's "revised" objections deleted the highlighted language from this sentence.  Consistent with MGA's proposed Instruction, the Court's Final Pretrial Conference Order, and paragraph 9 of the Court's May 28, 2008 "Order Regarding Various Discovery Motions, Applications And Other Matters Upon Which The Court Ruled On May 27, 2008," Mattel's copyright claims are limited to the 16 Carter Bryant sketches registered by

Mattel prior to trial (excepting the "control" drawing that was registered by Mattel on May 15, 2008 and is the subject of paragraph 9 of the Court's May 28, 2008 Order), that the jury determines are owned by Mattel in connection with the Phase 1a trial, if any.

**INSTRUCTION NO. 5C**

**COPYRIGHT INTERESTS – ORIGINALITY AND REGISTRATION**

In this lawsuit, it is not disputed that portions of the 16 Bryant sketches contain sufficient original elements to be protected by copyright. However, I must caution you that the amount of creative expression that is required for copyright protection is extremely low.

In addition, the Copyright Office does not investigate the originality or uniqueness of a work and it does not determine the validity of the claim to copyright protection in issuing a Certificate of Registration for a work. Accordingly, the mere fact that the Bryant sketches were accepted by the Copyright Office for registration does not determine the degree, scope, or amount of original, protected expression in the sketches. In addition, the protection afforded by the registration is limited to the specific protectible expression included in the material deposited with the Copyright Office, in this case the Bryant sketches.

Finally, a Certificate of Registration obtained more than 5 years after the first publication of the work covered by that registration is not entitled to a presumption either of copyright protection or that the registration is valid.

**Authority**: Feist Publications, Inc. v. Rural Telephone Services, Inc., 499 U.S. 340, 346 (1991) ("a modicum of creativity"); see also Expert Report of Ralph Oman, dated Feb. 25, 2005, in Team Play, Inc. v. Boyer, 03 C 7240 (N.D. Ill. 2005) (Document M-RO-00174); Ninth Circuit Manual of Model Jury Instructions 17.5 (2007); 17 U.S.C. § 410(c); 37 C.F.R. § 202.20(b)(2)(i) & (ii).

## Mattel's Objections

Mattel objects to defendants' proposed jury instruction 5C on the following grounds:

1.      Defendants are estopped by their prior statements and conduct from asserting that the Bryant drawings are subject only to thin copyright protection.  *See* Objection to Instruction No. 1C.

2.      It is well settled that visual works of art that creatively compile features and/or are inspired by prior works are subject to full copyright protection.  *See* Mattel's Objections to Instruction Nos. 1C, 3C.

3.      The proposed instruction should state that a copyright registration creates a presumption of originality.  *See, e.g.*, 17 U.S.C. § 410(c); *see also Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1019 (9th Cir. 1985) ("[R]egistration by the Copyright Office is prima facie evidence of copyrightability.  This presumption shifts the burden of proof to the challenging party to demonstrate why the item in question is not copyrightable."); NIMMER ON COPYRIGHT §12.11[B][1] at 12-201 (same).  It is especially appropriate for the Court to instruct the jury regarding this presumption because without such an instruction defendants' reference to certain works not being entitled to a presumption is confusing.

4.      Defendants misstate Ralph Oman's report.  While the Copyright Office does not perform a search of prior art before issuing a copyright registration, it does not issue registrations blindly.  For instance, an application to register the text of the Declaration of Independence would certainly be rejected.

5.      It is not correct as a matter of law that a registration obtained more than five years after first publication is not entitled to a presumption of originality.

6.      The language of this proposed instruction is biased and leading and is improper.

7.      If any instructions regarding originality are to be given, Mattel requests that the Court adopt Mattel's proposed instructions regarding originality.  *See* Mattel's

1 Proposed Jury Instructions re Copyright Infringement—Originality and Originality—

2 Combination of Unprotectable Elements.

**MGA Parties' Response**

Regarding Mattel's estoppel argument, <u>see</u> MGA Parties' Response to Mattel's Objection to Instruction 1C, at ¶ 7.

Regarding Mattel's statement in paragraph 2, <u>see</u> MGA Parties' Response to Mattel's Objection to Instruction 1C, at ¶ 7. Contrary to Mattel's objection, the instruction proposed by MGA Parties (collectively for this response, "MGA") appropriately distinguishes between mere copyrightability and the degree of creative expression protected by such copyright.

Mattel's assertions in paragraph 3 are incorrect because the issue as to whether the Bryant sketches (except one which was not registered) have minimum originality is not an issue herein. Mattel's proposed instruction on a presumption of originality would accordingly confuse the jury.

With respect to Ralph Oman, Mattel does not explain how MGA "misstate[s]" his report. Mr. Oman, in his expert report in the prior copyright case cited by MGA as authority for the jury instruction, quoted the Copyright Office General Counsel as stating: "If you blow on a registration certificate, it falls over." (Oman Deposition, 3/31/08, at 53-54.) Mr. Oman also stated in that report that the copyright "law is very tolerant of similarities." (<u>Id.</u> at 56.)

Mattel's argument that MGA is "incorrect as a matter of law that a registration obtained more than five years after first publication is not entitled to a presumption of originality" does not square with the statute. Section 410(c) of the Copyright Act's argument states: "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity

1  of the copyright and of the facts stated in the certificate.  The evidentiary weight to be

2  accorded the certificate of a registration made thereafter shall be within the discretion of

3  the court."   17 U.S.C. § 410.  Mattel cites no authority for its argument.

4

5  Mattel's allegation that the jury instruction is "biased and leading" or "improper" is not

6  supported by a fair and reasonable reading of the instruction.

7

8  For these reasons, and for those set forth in MGA Parties' Objections to Mattel's proposed

9  instructions, defendants' proposed instruction on originality should be given, rather than

10  Mattel's proposed instruction.

11

12  MGA notes that Mattel's "revised" objections to this instruction added the highlighted

13  qualifier to paragraph 7 objection:  "**If any instructions regaring originality are to be**

14  **given,** Mattel requests that the Court adopt Mattel's proposed instructions regarding

15  originality."  Originality is at the core of copyright law and MGA respectfully submits that

16  it is imperative that it proposed instruction be given the jury as written.

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 6C**

**COPYRIGHT INFRINGEMENT – COPYING**

In order to prevail on its claim of copyright infringement, Mattel has the burden of proving both of the following by a preponderance of the evidence:

1.     "Factual copying" — that in creating the BRATZ dolls, MGA actually copied the Bryant drawings in the BRATZ dolls.

2.     "Legal copying" — that even if copied, the amount of protected expression taken from the Bryant drawings and found in the BRATZ dolls satisfies the legal standards necessary to show copyright infringement.  This requires proof by Mattel of what is called "substantial similarity" to the level of "virtual identity."

3.     If you find that Mattel has proven both of these elements, your verdict should be for Mattel on the issue of copyright infringement.  If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for the defendants on the issue of copyright infringement.

**Authority**:  BensBargains.net LLC v. XPBargains.com, 2007 U.S. Dist. LEXIS 60544, at **8–10 (S.D. Cal. Aug. 16, 2007); 4-13 Nimmer on Copyright §§ 13.03[A] & [D] (2008).

**Mattel's Objections**

Mattel objects to defendants' proposed jury instruction 6C on the following grounds:

1.     Defendants' proposed instruction incorporates the wrong test for infringement. The correct test is the "substantial similarity" test incorporated in Mattel's proposed jury instruction. *See* Mattel's Proposed Jury Instruction re Copyright Infringement— Substantial Similarity.  Defendants' reference to "virtual identity" (rather than "substantial similarity") test rests on the false premise that the drawings are minimally original and subject only to thin copyright protection.

2.     Defendants are estopped by their prior statements and conduct from asserting that the Bryant drawings are subject only to thin copyright protection.

3.     It is well settled that visual works of art that creatively compile stock features and/or are inspired by prior works are subject to full copyright protection.

4.     Defendants misstate settled law when they contend that Mattel must establish factual copying.  To establish infringement, Mattel only needs to show, by a preponderance of evidence, (1) access to the copyrighted work and (2) substantial similarity.  *See, e.g.*, *Brown Bag Software Corp. v. Symantec*, 960 F.2d 1465,1472 (9th Cir. 1992).  Indeed, the proposed instruction fails to recognize that defendants' undisputed access lowers Mattel's quantum of proof with respect to substantial similarity.  *See, e.g.*, *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) ("Under our case law, substantial similarity is inextricably linked to the issue of access.  In what is known as the 'inverse ratio rule,' we require a lower standard of proof of substantial similarity when a high degree of access is shown.") (quotation marks and citation omitted).

5.     Mattel requests that the Court adopt Mattel's proposed instructions regarding copying, which conforms to the Ninth Circuit Model Instruction.  *See* Mattel's Proposed Jury Instructions re Copyright Infringement—Ownership and Copying and Copying— Access and Substantial Similarity.

**MGA Parties' Response**

Mattel's argument regarding broad versus thin protection is based on a factual assumption. If Mattel fails to convince the jury that the Bryant sketches are entitled to broad protection, the jury must apply the virtual identity test for works that are entitled to only thin protection.   Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442 (9th Cir. 1994); Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003); Allen v. The Ghoulish Gallery, 2007 U.S. Dist. LEXIS 86224 (S.D. Cal. Nov. 20, 2007).

Regarding Mattel's estoppel argument, see MGA Parties' Response to Mattel's Objection to Instruction 1C, at ¶ 7.

Mattel's statement in paragraph 3 is meaningless and misleading.   (See MGA Parties' Response to Mattel's Objection to Instruction 1C, at ¶ 7.)

In respects to the issue of factual copying, the MGA Parties stand on their legal authorities cited in support of their position.   See BensBargains.Net v. XPBargains.Com, 2007 U.S. Dist. LEXIS 60544, at **8–10 (S.D. Cal. Aug. 16, 2007); 4-13 Nimmer, on Copyright §§ 13.03[A] & [D] (2008).   Mattel's reference to the "inverse ratio rule" is misleading at best. Neither "access" or actual copying is relevant to whether a defendant's work is "substantially similar" to protected expression in a plaintiff's work.  As the Supreme Court held in Feist Publications, Inc. v. Rural Telegraph Service Co., 499 U.S. 340 (1991), "[t]he primary objective of copyright is not to reward the labor of authors, but 'to promote the Progress of Science and useful Arts.'" Art. I, § 8, cl. 8.   Accord Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 (1975). **To this end, copyright** assures authors the right to their original  expression, but **encourages others to build freely upon the ideas and information conveyed by a work.** Harper & Row Publishers v. Nation Enters., 431 U.S. 531, 556-557 (1985). This principle, known as the idea/expression or fact/expression

1   dichotomy, applies to all works of authorship."   499 U.S. at 349-50 (emphasis added).

2   Logically, more "access" cannot make works more similar or transform ideas, abstractions,

3   unoriginal material, scenes-a-faire material etc into protected expression.

4

5   For these reasons and those set forth in MGA Parties Objections to Mattel's proposed

6   instructions, their proposed instruction should be given, and not Mattel's.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections and Responses re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**INSTRUCTION NO. 7C**

**COPYRIGHT INFRINGEMENT – FACTUAL COPYING**

"Factual copying" means that the defendant did not independently create the challenged work.

Where as here the defendants assert independent creation, the plaintiff can establish factual copying:

- through direct evidence of copying; or

- by showing that the defendant had access to the plaintiff's work and that the works have a high degree of similarity, referred to as "probative similarity."

Here, MGA does not dispute that it had access to the Bryant sketches when it began to develop the BRATZ dolls.  However, defendants do dispute that there was copying, and they dispute that there is sufficient "probative similarity" to establish factual copying.

Mattel asserts that there is evidence that MGA directly and intentionally copied the Bryant sketches.

Defendants deny this and they assert that there was no copying because the Bryant sketches, along with other sources, were only used in a lawful manner by the professionally trained MGA sculptors and artists who actually developed the "first generation" BRATZ dolls, with the sketches simply being part of the initial inspiration for the uncopyrightable concept of the BRATZ dolls.  Defendants also assert that because Bryant's 2-dimensional sketches lacked the detail and other considerations necessary to develop a 3-dimensional doll, the MGA sculptors and artists who developed the first

1  generation BRATZ dolls used their significant experience and talents to independently
2  create their own original, different and more marketable 3-dimensional doll.   The
3  defendants further assert that the designs of the subsequent BRATZ dolls were also
4  independently created and were even further removed from any "protected expression" in
5  the Bryant sketches.

6

7  In determining factual copying, you should weigh all the evidence keeping in mind that
8  Mattel bears the burden of proving that MGA copied the Carter Bryant sketches in the
9  BRATZ dolls.

10

11  **Authority**:   BensBargains.Net v. XPBargains.Com, 2007 U.S. Dist. Lexis 60544 at **8–
12  10 (S.D. Cal. Aug. 16, 2007); Sobhani v. @radical.media, Inc., 257 F. Supp. 2d 1234,
13  1237 (C.D. Cal. 2003); Miller v. Miramax Film Corp., 2001 U.S. Dist. LEXIS 25967, at
14  **31–32 (C.D. Cal. Sept. 26, 2001); 4-13 Nimmer on Copyright § 13.03[D] (2008).

15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Mattel's Objections**

Mattel objects to defendants' proposed jury instruction 7C on the following grounds:

1.      Defendants' proposed instruction misstates the law in suggesting that "2-dimensional sketches" are not protectable or are subject only to thin protection where they "lac[k] the detail and other considerations necessary to develop a 3-dimensional doll."  *See* Mattel's Objection to Instruction No. 1C.  This is nothing more than argument.

2.      Defendants misstate settled law when they contend that Mattel must establish factual copying.  To establish infringement, Mattel only needs to show, by a preponderance of evidence, (1) access to the copyrighted work and (2) substantial similarity.  *See, e.g.*, *Brown Bag Software Corp. v. Symantec*, 960 F.2d 1465, 1472 (9th Cir. 1992).  Indeed, the proposed instruction fails to recognize that defendants' undisputed access lowers Mattel's quantum of proof with respect to substantial similarity.  *See, e.g.*, *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) ("Under our case law, substantial similarity is inextricably linked to the issue of access.  In what is known as the 'inverse ratio rule,' we require a lower standard of proof of substantial similarity when a high degree of access is shown.") (quotation marks and citation omitted).  Moreover, defendants' proposed requirement that Mattel show a "high degree of similarity," as opposed to substantial similarity, is not authorized under the law.

3.      Defendants' reference to "professionally trained MGA sculptors and artists [who] used their significant and experience and talents to independently create their own original, different and more marketable 3-dimensional doll" is gratuitous, biased and argumentative, as is the balance of the language in this proposed instruction.

4.      Mattel requests that the Court adopt Mattel's proposed instruction regarding copying, which conforms to the Ninth Circuit Model Instruction.  *See* Mattel's Proposed Jury Instructions re Copyright Infringement—Ownership and Copying and Copying—Access and Substantial Similarity.

420

**MGA Parties' Response**

Mattel mischaracterizes the instruction proposed by the MGA Parties (collectively for this response, "MGA"). MGA's point, which is clearly set forth, is not that a two-dimensional sketch is <u>per se</u> unprotectable or <u>per se</u> subject to thin protection. Rather, the fact that the Bryant sketches at issue lacked sufficient detail to guide the creation of a three-dimensional doll without the independent creative input of other artists helps explain why there was independent creation here.

Regarding factual copying, <u>see</u> MGA Parties' Response to Mattel's Objection to Instruction 6C, at ¶ 4. Once there is credible evidence of independent creation, the burden of proof falls upon Mattel to prove copying, notwithstanding circumstantial rules relating to the element of copying in the absence of direct evidence of independent creation.

MGA's statements regarding its own sculptors and artists is a straightforward summary of its position with respect to the specific issue of factual copying, which must be found by a preponderance of the evidence in order for there to be a finding of infringement.

For the reasons set forth above, and for those reasons set forth in MGA Parties' Objections to Mattel's Proposed Instructions, defendants' proposed instruction should be given on this issue, instead of Mattel's.

**INSTRUCTION NO. 8C**

**COPYRIGHT INFRINGEMENT – LEGAL COPYING – SUBSTANTIAL SIMILARITY**

If you conclude that Mattel did not meet its burden of proving factual copying, you must find for defendants on the issue of copyright infringement.  If you conclude that Mattel has met its burden of proving factual copying, then you must move on to the next element of copyright infringement, "legal copying."

Mattel must prove that MGA copied sufficient original and protectible elements from Bryant's sketches to establish "legal copying."  As I will explain shortly, using what are known as the "extrinsic" and "intrinsic" tests, you must determine what, if any, protectible expression is present in each of the Bryant sketches and compare the protected expression in a particular sketch to the BRATZ dolls.  Unless a sufficient amount of protected expression from a sketch was copied in the BRATZ dolls, Mattel's claim of copyright infringement fails.

In other words, legal copying is an essential element of copyright infringement independent of factual copying.  To go back the T.V. screenplay example, the creators of "Law and Order" could have intended to copy certain features of "Hill Street Blues," "N.Y.P.D. Blue," or "Perry Mason," and certainly their access to these earlier shows would be easy to establish.  But, unless a sufficient amount of protected expression was copied (i.e., expression that is original to one of these shows, and is not ideas, concepts, scenes a faire or public domain expression), there would be no copyright infringement.

**Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.15 (2007); Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1990); Bensbargains.Net v.

XPBargains.Com, 2007 U.S. Dist. LEXIS 60544 at 8–10 (S.D. Cal. Aug. 16, 2007); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176–77 (C.D. Cal. 2001).

1  **Mattel's Objections**

2

3      Mattel objects to defendants' proposed jury instruction 8C on the following grounds:

4      1.      It is for the Court, not the jury, to determine whether a work is original and/or

5  which components of a work are original.  *See* Mattel's Objection to Instruction No. 1C.

6      2.      The filtration analysis proposed by Defendants is inapplicable in the case of

7  visual works of art.  *See id.*

8      3.      Defendants' TV show example is misleading.  *See* Mattel's Objection to

9  Instruction No. 3C.

10      4.      Mattel requests that the Court adopt Mattel's proposed instruction regarding

11  copying, which conforms to the Ninth Circuit Model Instruction.  *See* Mattel's Proposed

12  Jury Instructions re Copyright Infringement—Ownership and Copying and Copying—

13  Access and Substantial Similarity.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections and Responses re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**MGA Parties' Response**

Regarding Mattel's objection that the originality of a work is a matter of law for the Court and not the jury, <u>see</u> MGA Parties' Response to Mattel's Objection to Instruction 1C, at ¶ 7.

Mattel is wrong to argue that the filtration analysis does not apply to visual works of art. (<u>See</u> MGA Parties' Response to Mattel's Objection to Instruction 1C, at ¶ 7.)

The MGA Parties note that Mattel objects to all illustrative examples provided by the MGA Parties, but offers none itself, as it is trying to ensure that the jury does not know how to apply the proper standards.

For the reasons set forth above, and for those set forth in MGA Parties' Objections to Mattel's Proposed Instructions, defendants' proposed instruction, and not Mattel's, should be given on this issue.

**INSTRUCTION NO. 9C**

**COPYRIGHT INFRINGEMENT – EXTRINSIC TEST; INTRINSIC TEST**

To determine whether the BRATZ dolls infringe Mattel's copyrights in the Bryant sketches, you must engage in a two-step analysis. The first step is called the "extrinsic" test. If necessary, this is followed by the second step of the analysis, which is called the "intrinsic" test. [Cavalier v. Random House, Inc., 297 F.3d 815, 822 (9th Cir. 2002); Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1177 (C.D. Cal. 2001).]

Stated generally, the "extrinsic" test considers whether two works share substantial similarity of ideas and expression as measured by external, objective criteria, while the "intrinsic" test considers whether a reasonable person (or in this case, a discerning 8-12 year old girl) would perceive a substantial similarity in the "total concept and feel" of each work, bearing in mind that ideas and concepts and general stylistic features are not protectible under copyright law. [Lanard Toys, Ltd. v. Novelty, Inc., 511 F. Supp. 2d 1020, 1037–38 (N.D. Cal. 2007) (citing Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442–43 (9th Cir. 1994)).]

You should keep in mind that what is required to find infringement is not simply general "similarity" of the works but "substantial similarity" of protected elements of those works. [Id.; Berkic v Crichton, 761 F.2d 1289, 1293–94 (9th Cir 1985).]

I will explain each of these tests in turn.

EXTRINSIC TEST

The "extrinsic" test removes from the analysis of infringement those elements of the copyrighted work that are not entitled to copyright protection. The party claiming

426

1  infringement cannot rely on any similarity in expression resulting from unprotectible
2  elements.  [Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1176–77 (C.D. Cal. 2001).]

4  As I have already explained, the following elements of an original copyrighted work are
5  not entitled to protection under copyright law:

7  • Ideas and concepts.

9  • Common features that are standard or essential to the expression of a given idea,
10  called "scenes a faire."

12  • Expression that is not original to the author (in this case Mr. Bryant), such as pre-
13  existing expression that influenced the author consciously or even subconsciously.

15  This is a general list of the common unprotected categories.

17  The process of applying the extrinsic test is referred to as "analytic dissection" because
18  you need to isolate the elements of the copyrighted work and analyze each one separately,
19  excluding the other elements present in the work and the combination of elements.  [See,
20  e.g., Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1398 (9th Cir.
21  1997); Lanard Toys, 511 F. Supp. 2d at 1037–38.] It is also referred to as "filtering"
22  because you need to filter out all of the unprotected elements.  [See, e.g., Zella v. E.W.
23  Scripps Co., 529 F. Supp. 2d 1124, 1133 (C.D. Cal. 2007); Brookhaven Typesetting Servs.
24  v. Adobe Sys., 2007 U.S. Dist. LEXIS 62661, at *22 (N.D. Cal. Aug. 24, 2007).]

26  You should apply the extrinsic test as follows:

1   *First*, identify those elements in the Bryant sketches that Mattel claims are the expression
2   copied by MGA in the BRATZ dolls.  Mattel has the burden of identifying which specific
3   elements of its works have been copied.

4

5   *Second*, you should determine which of those elements are entitled to copyright protection
6   and which are not.  In other words, you must filter out from each of the 16 Bryant sketches
7   all ideas, all scenes a faire, and all public domain expression that was not original to Mr.
8   Bryant.  Mattel has the burden of proving which elements in each of the Bryant sketches
9   are entitled to protection.

10

11  I will give you a few examples to illustrate the process of filtering.

12

13  It goes without saying that common physical features of a teenage girl are not protectible,
14  as they are the features found in real-life teenage girls and depictions thereof.  Such
15  features could be considered an idea, or even a fact, and therefore they must be filtered out.
16  This would apply to things found in nature such as the presence of heads, 2 ears, lips, hair,
17  2 arms, legs, standard body proportions, etc. in the sketches.   While the particular
18  expression and unique arrangement of all of these features can be protected by copyright,
19  the mere presence of those features as found in nature cannot.

20

21  That the figures in the sketches display fashions, shoes and accessories, by itself, is not
22  protected because the use of fashions, shoes and accessories are "scenes a faire," or
23  standard or common features, in the genre of fashion dolls.  Also, the "style" or general
24  "look" of fashion dolls are not copyrightable.  Nor are conventional cosmetic techniques
25  and looks.  Moreover, the design of particular clothing as used on fashion dolls is not
26  protectible by copyright.

27

28

1    This is another similarity that cannot be counted, so the BRATZ dolls have to be compared

2    to the Bryant sketches without considering the dolls' clothes.  Similarly, hair, hair styles

3    and hairdos cannot be protected because on these fashion dolls the hair is meant to be

4    played with and changed by the target consumers.

5

6    MGA asserts that Carter Bryant's sketches show a group of four contemporary "sassy" or

7    "bratty" teenage friends of diverse ethnic backgrounds and a "funky urban hip" attitude

8    and style as the basis for a line of fashion dolls.  MGA asserts that all of this is a concept

9    or idea, and is thus not protected by copyright.  If you agree with MGA's position, then the

10   idea and concept of such a line of fashion dolls must be filtered out of any subsequent

11   analysis of claimed similarities.

12

13   MGA also asserts that the oversized heads, eyes, feet and lips in the sketches are not forms

14   of expression original to Carter Bryant's sketches, but rather simply reflected common

15   expression that can be found in other dolls, fashion advertisements, and artwork.  If you

16   agree with that contention, then you must "filter out" these elements in connection with

17   your subsequent analysis regarding substantial similarity, because the use of oversized

18   heads, eyes, feet and lips in the sketches was not original to Mr. Bryant.

19

20   The parties and their witnesses and experts will point to many other such issues, asserting

21   that features or elements should, or should not, be filtered out.  You are to determine

22   which, if any, of these features and elements should properly be filtered out in connection

23   with your subsequent analysis regarding substantial similarity.

24

25   Once you have dissected and filtered the Bryant sketches, you are ready to compare the

26   individual elements remaining in a particular sketch that you determine to be protectible

27   with the corresponding elements in the BRATZ dolls.  As the parties disagree with what

28

1  are, and what are not, the similarities between the two, you must next determine what
2  those similarities are.

3

4  The burden is on Mattel to show by a preponderance of evidence the similarity of each
5  element in the sketches you determine to be protectible.  In considering the extrinsic test,
6  you may take into account the testimony of experts called by each party.

7

8  Now comparing the items in the BRATZ dolls that you find to be similar to the protected
9  elements of expression in a particular Bryant sketch owned by Mattel, you should
10 determine whether Mattel has shown by a preponderance of the evidence that the two
11 works are substantially similar.  If you do not so find, then you must find for MGA on the
12 claim of copyright infringement.

13

14 If you do find substantial similarity under the extrinsic test, then you turn to the next step
15 of the analysis, the "intrinsic" test.

16

17 BROAD OR THIN PROTECTION

18

19 Before proceeding to apply the "intrinsic" test, you must make an important preliminary
20 determination:  the correct standard to apply.  The appropriate standard for the intrinsic
21 test depends on the scope of copyright protection in a work.  In this case, you must
22 determine the scope of copyright protection in each of Mr. Bryant's sketches asserted by
23 Mattel against MGA.

24

25 The analytic dissection and filtration you previously performed in connection with the
26 extrinsic test also allows you to determine whether the sketches are entitled to "broad" or
27 "thin" copyright protection.  The sketches will be entitled to "broad" protection if you find
28 that they are highly original and reflect a high degree of artistic judgment in a medium

1  offering a broad range of creative choice. The threshold for infringement in such works is

2  substantial similarity of original protected expression.

3

4  On the other hand, if you find that the sketches include only a few protectible elements, or

5  are in a medium in which the effective range of creative expression is limited, then the

6  sketches are only entitled to "thin" protection.  In that case, you can find infringement only

7  if the dolls are virtually identical to original protected expression in any protected sketch

8  examined as a whole.  [Satava v. Lowry, 323 F.3d 805, 812 (9th Cir. 2003); Cosmos

9  Jewelry Ltd. v. Po Sun Hon Co., 470 F. Supp. 2d 1072, 1084 (C.D. Cal. 2006) (citing

10  Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1439 (9th Cir. 1994)).]

11

12  The burden of proving that the Bryant sketches are entitled to broad protection is on Mattel.

13

14  INTRINSIC TEST

15

16  The second step of the infringement analysis, the "intrinsic" test, involves a subjective

17  comparison of the protectible aspects of the "works as a whole."  [Apple Computer, Inc. v.

18  Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994).]

19

20  In this evaluation, you should not consider the unprotectible elements that you filtered out

21  as part of the extrinsic test analysis.  [Cavalier v. Random House, Inc., 297 F.3d 815, 822

22  (9th Cir. 2002); Robert C. Lind, Copyright Law (3d ed. 2006) at 173.]

23

24  The intrinsic test is determined from the perspective of an ordinary, reasonable observer.

25  [Smith v. Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996).]  Because girls of the age 8-12 are

26  the core intended market for the BRATZ dolls, you should consider such consumers as the

27  ordinary, reasonable observers.  [Aliotti v. R. Dakin & Co., 831 F.2d 898, 902 (9th Cir.

28

---

431

1   1987).]   In other words, you should perform the intrinsic test through the eyes of a
2   discerning 8-12 year old girl who would be a likely user of BRATZ dolls.

3

4   The testimony of experts is not to be considered in your evaluation of the intrinsic test.

5

6   The appropriate standard for the intrinsic test depends on the scope of copyright protection
7   in a work.  If you determine that the Bryant sketches are highly original and are entitled to
8   "broad" copyright protection, infringement under the "intrinsic" test may be found if the
9   ordinary, reasonable person (the 8-12 year old girl) would find the "total concept and feel"
10  of the two separate works to be substantially similar, bearing in mind that ideas, concepts,
11  and style are not protectible.   However, if you determine that the Bryant sketches are
12  entitled only to "thin" copyright protection because a large amount of expression has been
13  filtered out as a result of the application of the extrinsic test, MGA may only be found
14  liable for infringement if you determine that the sketches and dolls are "virtually identical"
15  to original protected expression of any protected sketch viewed as a whole.   [Satava v.
16  Lowry, 323 F.3d 805, 812 (9th Cir. 2003).]

17

18  Mattel bears the burden of proving by a preponderance of the evidence that the Bryant
19  sketches are entitled to broad protection under the intrinsic test.  If Mattel should fail to
20  meet that burden, you must apply the "virtual identity" test for "thinly protected" works.
21  The "virtual identity" test means just what it says:  the BRATZ dolls must be virtually
22  identical with respect to any elements that you find to be protectible in a particular Bryant
23  sketch for there to be infringement under the intrinsic test.

24

25  Then, applying one of these two tests – substantial similarity for broad works, or virtual
26  identity for thin works – you will determine if Mattel has met its burden of proving
27  infringement under the "intrinsic" test.  If Mattel has not met its burden under the intrinsic
28  test, then you must find for the defendants on the copyright infringement claims.

1

2  **Authority**:  Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004); Apple Computer, Inc. v.

3  Microsoft Corporation, 35 F.3d 1435, 1447  (9th Cir. 1994); Frybarger v. Int'l Bus.

4  Machines Corp., 812 F.2d 525, 530 (9th Cir. 1987); Thomas v. The Walt Disney Co., 2008

5  U.S. Dist. LEXIS 14643 (N.D. Cal. Feb. 14, 2008); Idema v. Dreamworks, Inc., 162 F.

6  Supp. 2d 1129, 1176 (C.D. Cal. 2001).

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | **Mattel's Objections**

2

3        Mattel objects to defendants' proposed jury instruction 9C on the following grounds:

4        1.        Defendants' proposed instruction, which is seven pages in length, is far too

5   long to be useful to the jury.  Instead, it is designed to be highly prejudicial argument.

6   This instruction should be rejected in its entirety.

7        2.        Defendants' proposed filtration analysis is improper in the case, as here, of

8   visual works of art.  *See* Mattel's Objection to Instruction No. 1C.  Moreover, the

9   protectability of Carter Bryant's works is a question of law for the Court, not the jury.  *See*,

10  *e.g.*, *Newton v. Diamond*, 204 F. Supp. 1244, 1253 (C.D. Cal. 2002) ("The protectability of

11  elements in a copyrighted work is a question of law.");  *Stillman v. Leo Burnett Co., Inc.*,

12  720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The extrinsic and intrinsic tests both involve

13  findings of fact, but the issue of protectibility/nonprotectibility is an issue of law. Thus,

14  before a court may send a copyright case to the jury, it must satisfy itself that, even

15  assuming copying of an idea and its expression, at least some of what the defendant copied

16  falls into the area of protectible expression.");  *Coston v. Product Movers*, 1990 WL 56516

17  at *3 (E.D. Pa., 1990) ("The question of which aspects of plaintiffs' work are protectible

18  expression as opposed to unprotectible idea is an issue of law.");  *Webloyalty.com, Inc. v.*

19  *Consumer Innovations, LLC*, 2005 WL 468496 at *2 (D. Del. 2005) (holding that while a

20  finding of copyright infringement may involve questions of fact, the protectability of

21  copyrighted material is a question of law);  *Pivot Point Int'l, Inc. v. Charlene Prods.*, Inc.,

22  932 F. Supp. 220, 225 (N.D. Ill 1996) (the issue of whether a work is "copyrightable is a

23  question of law," and the "jury has nothing to do with this subject.");*ADA v. Delta Dental*

24  *Plans Ass'n*, 1996 U.S. Dist. LEXIS 5809 at *19 n. 15 (N.D. Ill. 1996) (although

25  copyrightability analysis necessarily requires a court to consider some facts surrounding

26  the works at issue, the inquiry "is far more heavily loaded with policy implications than

27  most other standards," making it appropriate for determination by a court instead of a

28  jury); *Stillman v. Leo Burnett Co., Inc.*, 720 F. Supp. 1353, 1360-61 (N.D. Ill. 1989) ("The

434

1   extrinsic and intrinsic tests both involve findings of fact, but the issue of

2   protectibility/nonprotectibility is an issue of law. Thus, before a court may send a

3   copyright case to the jury, it must satisfy itself that, even assuming copying of an idea and

4   its expression, at least some of what the defendant copied falls into the area of protectible

5   expression.").

6       3.   Defendants erroneously rely on cases such as *Idema v. Dreamworks, Inc.*, 162

7   F. Supp. 2d 1129 (C.D. Cal. 2001), which involve factual—not creative—works. *See id.* at

8   1144, n.31 ("[s]even of the eight works upon which Plaintiffs base their claims are

9   primarily or purportedly factual in nature").  As the Ninth Circuit has emphasized, "works

10  that are not factual receive much broader protection under the copyright laws because of

11  the endless variations of expression available to the artist." *McCulloch v. Albert E. Price,

12  Inc.*, 823 F.2d 316, 321 (9th Cir. 1987), *disapproved on other grounds*, *Fogerty v. Fantasy,

13  Inc.*, 510 U.S. 517 (1993).

14      4.   Defendants are estopped by their prior statements and conduct from asserting

15  that the Bryant drawings are subject only to thin copyright protection.  *See* Mattel's

16  Objection to Instruction No. 1C, *supra*, at 113-16.

17      5.   Moreover, defendants' demand that the jury determine whether Bryant's

18  drawings are entitled to broad or thin protection under copyright law is improper on

19  several grounds.  First, as explained above, the degree of protectability is an issue of law

20  for the Court, not for the jury.  Second, as also explained above, the notion of thin

21  protection does not apply to visual works.  Indeed, under defendants' proposed "virtual

22  identity" approach, no representational painting could be safe from infringement as long as

23  the infringer changes a few insignificant details.  Plaintiffs cite no authority for such a

24  radical rule.  Third, defendants' instruction suggests that a reasonable jury could find that

25  drawing is "a medium in which the effective range of creative expression is limited."  The

26  millenia-long history of visual art shows that the range of creative expression in visual

27  works is not limited, as it may be in the case of computer software or factual works. *See

28  Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("[a] party is entitled to an instruction

435

1   about his or her theory of the case if it is supported by law and has foundation in the

2   evidence").  Defendants add insult to injury by proposing that Mattel bears the burden of

3   proving that Bryant's drawings are entitled to broad protection, but do not state that they

4   would bear the burden of proving the contrary (assuming that the instruction is even

5   appropriate, which it is not).

6         6.     Defendants incorrectly state that "the design of particular clothing as used on

7   fashion dolls is not protectible by copyright" and thus that "the BRATZ dolls have to be

8   compared to the Bryant sketches without considering the dolls' clothes."  Clothing is a

9   non-protectible "useful article" only to the extent designed for people, not dolls or toys,

10   which are unquestionably *not* useful articles under the case law.  *See, e.g.*, *Masquerade*

11   *Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 670 (3d Cir. 1990) (masks portraying

12   animals); *Gay Toys, Inc. v. Buddy L Corp.*, 703 F.2d 970, 973 (6th Cir. 1983) (toy

13   airplanes).  Moreover, at issue here is not doll clothing, but rather drawings of dolls,

14   including clothing.  No authority holds that such drawings of clothing are unprotected.

15         7.     Defendants' contention that the jury should disregard the dolls' clothing in

16   performing its substantial similarity analysis is incorrect.  Because dolls' clothing is not

17   functional, it is deemed to be an expressive element that may be infringed.  For instance, in

18   *Fisher-Price Toys v. My-Toy Co.*, 385 F Supp 218, 220-21 (S.D.N.Y. 1974), the court

19   considered actionable similarities in the dolls' clothing: "They are both representations of

20   blond-haired little girls appearing to be the same age, dressed in removable red and white

21   checked gingham dresses with puffed sleeves.  White aprons cover the front of each dress.

22   Under each dress is a body suit or pajama outfit made of the same material as the dress,

23   with white lace extending from the pants' leg.  Both dolls also have simple vinyl hands,

24   booty-like feet, and white fabric legs."  *See also* Robert C. Osterberg and Eric C.

25   Osterberg, Substantial Similarity in Copyright Law, § 10:6. ("Some of the particular

26   characteristics courts consider when comparing dolls [for purposes of infringement

27   analysis] are facial features, facial expression, size, body and limb type, stance or pose,

28   *hair, clothing and accessories*, age, and gaze.") (emphasis added).

436

8.     None of defendants' cited cases supports the illogical proposition that "hair styles and hairdos cannot be protected because on these fashion dolls the hair is meant to be played with and changed by the target consumers."

9.     Defendants' contention that a style or a look of a fashion doll is not copyrightable is contrary to law.  For instance, in *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 372 F.3d 913 (7th Cir. 2004), a creator of *haute couture* mannequin heads sought protection for his expression of the "hungry look" of runway models.  The Seventh Circuit held "one is not only able to conceive of a different face than that portrayed on the Mara mannequin, but one easily can conceive of another visage that portrays the "hungry look" on a high-fashion runway model. . . .[Accordingly, the plaintiff] is entitled to have his expression of the 'hungry look' protected from copying." *Id.* at 931.  So here.  Because the expression of a "funky" attitude in Bryant's drawings is copyrightable, copying of that expression by the Bratz dolls is actionable infringement."

10.    It is well settled that visual works of art that creatively compile stock features and/or are inspired by prior works are subject to full copyright protection.  *See id.*

11.    The proposed instruction misstates the law with respect to the intrinsic test. In the Ninth Circuit, ideas are not "filtered out" as part of the intrinsic test.  *See, e.g.*, *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 208 (9th Cir.1988) ("[a]nalytic dissection ... is not appropriate under [the intrinsic] test because it distracts a reasonable observer from a comparison of the total concept and feel of the works").

12.    Defendants' proposed instruction misstates the law in suggesting that Mattel must "show the similarity of each element in the sketches you determine to be protectible." The instruction also misstates the law regarding the extrinsic test in other respects.  For example, under the extrinsic test, ideas are <u>not</u> filtered out, as defendants claim.  *See, e.g.*, *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (holding that "the extrinsic test considers whether two works share a similarity of ideas and expression"); *Jada Toys, Inc. v. Mattel, Inc.*, 2008 WL 450891, at *6 (9th Cir. 2008) (reversing district court's granting

1 | of summary judgment because it did not compare the ideas in plaintiff's and defendant's
2 | works).

3 |        13.      Defendants' contention that expert evidence is not admissible with respect to
4 | the intrinsic test is contrary to law.  It is well-settled that an expert can testify with respect
5 | to the intrinsic test if the infringing work is directed at a specialized audience, here,
6 | "tween" girls.  *See, e.g.*, *Kohus v. Mariol*, 328 F.3d 848 (6th Cir. 2003) ("in cases where
7 | the audience for the work possesses specialized expertise that is relevant to the purchasing
8 | decision and lacking in the lay observer, the trier of fact should make the substantial
9 | similarity determination from the perspective of the intended audience. Expert testimony
10 | will usually be necessary to educate the trier of fact in those elements for which the
11 | specialist will look"); *Dawson v. Hinshaw Music,* Inc. 905 F.2d 731, 736 (4th Cir. 1990)
12 | (same); *cf. Lyons P'ship v. Morris Costumes, Inc.*, 243 F.3d 789, 803 (4th Cir. 2001) ("by
13 | considering the perspectives of young children in the substantial-similarity analysis, the
14 | potential liability for infringement might tend to broaden, given the reduced ability of
15 | young children to distinguish between objectively different items and concepts."); *Aliotti v.*
16 | *R. Dakin & Co.*, 831 F.2d  898, 902 (9th Cir.1987) ("[because] children are the intended
17 | market for the dolls, we must filter the intrinsic inquiry through the perception of
18 | children.").  To state the obvious, no member of the jury will be a "tween"
19 | girl.  Accordingly, Mattel may – and intends to – introduce expert evidence concerning
20 | "tween" girls' perception of the overall similarity of the works at issue."

21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

**MGA Parties' Response**

Mattel's objection that the instruction proposed by the MGA Parties (collectively for this response, "MGA") on the multiple steps of the copyright infringement analysis is too lengthy is consistent with its general approach to the jury instructions: Mattel would like the jury to learn as little as possible about copyright law, in the hopes that the jury will be unable to understand and properly apply the relevant legal principles.  The process for evaluating a claim of copyright infringement under Ninth Circuit law is complex in that it requires multiple stages of analysis, each stage requiring the examination of various elements and factors.  See, e.g., Smith v. Jackson, 84 F.3d 1213, 1221 n.9 (9th Cir. 1996) (describing many copyright infringement cases as "legally and technically complicated … in which the jury may be tempted to seize upon the first opportunity to dispose of a case in order to avoid dealing with a case's other, perhaps more difficult, aspects").  Mattel's objection on the ground that MGA's proposed instruction is unduly long is a transparent attempt to obscure the real issues in the case from the jury.

Contrary to Mattel's contentions, visual works are subject to the same general standards of analytic dissection and filtering as are other copyrighted works.  (See MGA Parties' Response to Mattel's Objection to Instruction 1C, at ¶ 7.)  Mattel's argument regarding the protectability of Carter Bryant's works is addressed in MGA Parties' Response to Mattel's Objection to Instruction 1C, at ¶ 7, and MGA Parties' Response to Mattel's Objection to Instruction 3C, at ¶ 7.

Mattel here again attempts to avoid the application of analytic dissection and filtration to the Carter Bryant sketches by distinguishing them from factual works.  It is clear, however, that under Ninth Circuit law, analytic dissection is required in infringement analyses involving creative and artistic works. (See MGA Parties' Response to Mattel's Objection to Instruction 1C, at ¶ 7.)

1

2   Regarding Mattel's estoppel argument, <u>see</u> MGA Parties' Response to Mattel's Objection

3   to Instruction 1C, at ¶ 7.

4

5   Mattel's argument that the scope of protection in the drawings is for the court and not the

6   jury to decide is addressed above. (<u>See also</u> MGA Parties' Response to Mattel's Objection

7   to Instruction 1C, at ¶ 7 & 3C, at ¶ 7.)   Mattel's argument that the concept of thin

8   copyright protection does not apply to visual works is baseless (and indeed, Mattel cites no

9   authority for it).   The Ninth Circuit has made it clear that visual works are treated in the

10  same general manner as other works in the context of analytic dissection and the resulting

11  scope of copyright protection afforded to the work once unprotectable elements have been

12  filtered out.   (<u>See</u> MGA Parties' Response to Mattel's Objection to Instruction 1C, at ¶ 7.)

13  <u>See also</u> <u>Cavalier v. Random House, Inc.</u>, 297 F.3d 815, 822 (9th Cir. 2002).   Further,

14  Mattel's assertion that the "millennia-long history of visual art shows that the range of

15  creative expression in visual works is not limited" is a generalization which is not relevant

16  here and which would mislead the jury.

17

18  In paragraphs 6-8 of Mattel's objection, Mattel cites case law establishing that toys—

19  specifically animal costume masks and toy airplanes—are not useful articles.   <u>See</u>

20  <u>Masquerade Novelty, Inc. v. Unique Indus., Inc.</u>, 912 F.2d 663, 671 (3d Cir. 1990)

21  (holding that plaintiff's animal masks were not useful articles and noting that "[o]n

22  remand, it will be Masquerade's burden to show that Unique's nose masks incorporate

23  copies, in the copyright law sense, of Masquerade's sculptures, rather than sculptures that

24  derive their similarity to Masquerade's sculptures merely from the commonality of the

25  animal subjects both represent"); <u>Gay Toys, Inc. v. Buddy L. Corp.</u>, 703 F.2d 970 (6th Cir.

26  1983) (holding that a toy airplane is not a utilitarian object).   MGA has not asserted herein

27  that dolls are not copyrightable, and neither of these cases has any bearing on whether doll

28  clothing is copyrightable. <u>Fisher-Price Toys v. My-Toy Co.</u>, 385 F. Supp. 218, 220-21

440

1   (S.D.N.Y. 1974), similarly has no bearing on this issue because the court there was not

2   applying the filtration test mandated by Ninth Circuit law, and made no mention of an

3   extrinsic versus intrinsic analysis or filtering of unprotected elements.  More importantly,

4   the opinion is entirely focused on the issue of "factual copying" rather than "legal copying",

5   and thus the court was only noting various similarities in elements, including clothing, to

6   address the defendant's claim that they did not *actually* copy the dolls at issue.  The court

7   there found that there was "striking similarity" between the dolls and that any differences

8   between the dolls were "minor and appear to be the result of a calculated but thin attempt

9   to disguise deliberate copying of plaintiffs' dolls." Id. at 220-21.

10

11   That doll hair and doll clothing do not fall within the scope of copyright subject matter is

12   the position taken by the Copyright Office.  (See Deposition Ex. 625 (April 8, 2005

13   Copyright Office Letter) at 1-2.)  Mattel's expert in Copyright Office procedures, Ralph

14   Oman, the former Register of the Copyright Office,  testified, consistent with the

15   Copyright Office Letter, that doll "hair that could be changed and modified" by the doll's

16   owner "would not be within the subject of copyright." (Oman Dep. at 38:24-39:3.)  Oman

17   also testified that doll clothes that are "just the miniaturization of a normal dress" are not

18   copyrightable. Id. at 34:17-20.  Mattel's expert Lee Loetz acknowledged that the "funky

19   urban" fashions used with the Bratz dolls are miniature versions of fashions that are found

20   "almost anywhere because they're popular." (Loetz Dep. at 45:11-47:2.)   Mattel

21   characterizes the instruction as "illogical" yet cites no support for its objection.

22

23   Mattel attempts to side-step this question by also arguing that "at issue here is not doll

24   clothing, but rather drawings of dolls, including clothing" and that such drawings of

25   clothing are protactable.  This argument completely misses the point.  Even if the clothes

26   depicted in Bryant's sketches are copyrightable – which MGA does not concede – the

27   copyright protection that would be afforded to the clothes would **not** extend to

28   uncopyrightable doll fashions. See, e.g., Eliya, Inc. v. Kohl's Dep't Stores, 2006 U.S. Dist.

1  LEXIS 66637, at *28-29 (S.D.N.Y. Sept. 13, 2006) ("ownership of a copyright in a
2  pictorial representation of a useful article does not evest the owner of the picture with a
3  derivative copyright in the useful article itself.   If such roundabout copyrighting were
4  permitted, copyright law's exclusion of useful articles would be eviscerated, because any
5  useful article could be copyrighted by merely obtaining a copyright for a two-dimensional
6  representation of the article.")

7

8  With respect to Mattel's paragraph 9, the general style of a fashion doll is <u>not</u> protected by
9  copyright law, because a mere "style" is not in itself particularized expression.   Even the
10 case cited by Mattel illustrates this very point.   The issue in <u>Pivot Point Int'l, Inc. v.</u>
11 <u>Charlene Prods., Inc.</u>, 372 F.3d 913 (7th Cir. 2004), was whether plaintiff's mannequin,
12 designed with a particular facial expression meant to evoke a "hungry look" was
13 copyrightable at all.   In holding that plaintiff's expression of this look was protected from
14 copying, <u>see id.</u> at 931, the court cited <u>Mattel, Inc. v. Goldberger Doll Mfg. Co.</u>, 365 F.3d
15 133 (2d Cir. 2004), as having "rejected the idea that a particular expression of features on a
16 doll's face was not subject to copyright protection."   372 F.3d at 931.   Thus, it was not that
17 the portrayal of a "hungry look" on a mannequin was copyrightable (Mattel's contention
18 herein), but rather that the *specific* facial features and expression of this mannequin were
19 protected from copying.   <u>See id.</u> at 931 ("[O]ne easily can conceive of another visage that
20 portrays the 'hungry look' on a high-fashion runway model.").   <u>See also</u> <u>Galiano v.</u>
21 <u>Harrah's Operating Co.</u>, 426 F.3d 411, 422 (5th Cir. 2005) (questioning the significance of
22 <u>Pivot Point</u>, in the context of denying copyrightability in the design of uniforms for casino
23 employees). (<u>Cf.</u> Dep. Ex. 625 (April 8, 2005 Copyright Office Letter) at 2 (noting that
24 "the styling or general 'look' of each doll with its various outfits" are not within copyright
25 subject matter).)

26

27

28

1  With regard to Mattel's argument that "works of art that creatively compile stock features
2  and/or are inspired by prior works are subject to full copyright protection," see MGA
3  Parties' Response to Mattel's Objection to Instruction 1C, at ¶ 7.

4

5  In Paragraph 11, it appears that Mattel is mischaracterizing MGA's proposed instruction.
6  Mattel argues that MGA's proposed instruction misstates the law with respect to the
7  intrinsic test because in the Ninth Circuit, ideas are not "filtered out" as part of the intrinsic
8  test.  MGA's proposed instruction 9C does not state that ideas are to be filtered out as part
9  of the intrinsic test; rather, MGA's instruction instructs the jury to conduct analytic
10  dissection and filtering as part of the extrinsic test, which then determines the "appropriate
11  standard for the intrinsic test."  Thereafter, MGA notes that ideas and concepts are not
12  protectible under either test, which is an uncontroversial proposition stated by the clear
13  language of the Copyright Act.  17 U.S.C. §102(b).  (See MGA Proposed Jury Instruction
14  9C.)

15

16  With respect to Mattel's paragraph 12, MGA notes that Mattel does not cite to any legal
17  authority to support its position.  Once unprotected elements of the work are filtered out,
18  only the protectable elements are analyzed for infringement.  See Idema v. Dreamworks,
19  Inc., 162 F. Supp. 2d 1129, 1176 (C.D. Cal. 2001) ("This part of the [intrinsic] test
20  measures whether there is a sufficient level of 'similarity' between the copyrightable
21  'elements' of a plaintiff's work, and the equivalent 'elements' in an allegedly infringing
22  work.").  Concerning Mattel's statement that "ideas" can be considered as part of the Ninth
23  Circuit's "extrinsic test," it is undisputed that copyright law does not extend to "ideas" or
24  "concepts" and its own copyright expert, Robert Lind, concedes that it would be reversible
25  error to base a finding of infringement on "ideas" or "concepts" present in a work.  See
26  MGA MIL No. 11.

27

28

1  With respect to the arguments in Mattel's paragraph 13, in which it takes the
2  unprecedented position that "an expert can testify with respect to the intrinsic test if the
3  infringing work is directed at a specialized audience", there are a number of defects. First,
4  according to Mattel this principle is "well-settled," yet Mattel is unable to provide a single
5  citation to any Ninth Circuit authority for it. Second, none of the cases Mattel cites are
6  relevant here because the courts in those cases were not bound by the clear Ninth Circuit
7  rule that expert testimony is not permitted with regard to the intrinsic test. <u>See, e.g.</u>, <u>Apple</u>
8  <u>Computer Inc. v. Microsoft Corp.</u>, 35 F.3d 1435, 1442 (9th Cir. 1994); <u>Olson v. Nat'l</u>
9  <u>Broad. Co.</u>, 855 F.2d 1446, 1449 (9th Cir. 1988). Third, those cases are also factually
10 distinguishable because the audience for the fashion dolls at issue here (8-12 year old girls)
11 is not an audience of "specialized expertise." <u>Cf.</u> <u>Kohus v. Mariol</u>, 328 F.3d 848, 858 (6th
12 Cir. 2003) (a "rare" case in which the intended audience was not the lay public); <u>Dawson v.</u>
13 <u>Hinshaw Music, Inc.</u>, 905 F.2d 731, 737 (4th Cir. 1990) (refining the ordinary observer
14 test in the context of choral directors who possess specialized expertise relevant to the
15 selection of musical arrangements). There are numerous reported decisions in copyright
16 infringement cases involving dolls and other toys, many of which have been litigated by
17 Mattel. Yet Mattel has not cited to a single one in support of its position that expert
18 testimony is permitted to inform the intrinsic analysis.

19

20 While Mattel's argument regarding the need for expert testimony on the subjective
21 analysis is wrong, there is nothing objectionable about the introduction of expert or lay
22 testimony regarding the perceptions, tastes and preferences of 8-12 year old girls.

23
24
25
26
27
28

Objections and Responses re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**INSTRUCTION NO. 10C**

**COPYRIGHT INFRINGEMENT – COMPARING TWO DIMENSIONAL WORK WITH A THREE DIMENSIONAL WORK**

The Bryant sketches are 2-dimensional works, while the BRATZ dolls are 3-dimensional works. While those facts may complicate your analysis under the extrinsic and intrinsic tests, the copyright in a 2-dimensional work can be infringed by a 3-dimensional work. However, the copyright in a 2-dimensional work only covers what is shown on the face of the work. For example, if a Bryant sketch only shows the front view of a figure, the copyright does not cover the rear or side view of that figure, or anything else that is not specifically visible in that particular sketch. Whether in this case the BRATZ dolls (3-dimensional works) infringe the Bryant sketches (2-dimensional works), is for you to decide, using the two-part analyses already described.

**Authority**: 1-2 Nimmer on Copyright § 2.08(C)(2).

**Mattel's Objections**

Mattel objects to defendants' proposed jury instruction 10C on the following grounds:

1.      This proposed instruction is argumentative and unnecessarily complicated. The statement in this instruction that the 2-D to 3-D issue "may complicate your analysis under the extrinsic and intrinsic tests" is unnecessary and argumentative.  Mattel also objects to inclusion of any of the language beyond the first two sentences of the proposed instruction.

2.      This instruction also should be barred by Mattel's motion *in limine* no. 15, regarding Christine Tomiyama, on which the Court has deferred ruling.

3.      Mattel requests that the Court adopt Mattel's proposed instruction, which provides the jury with a concise and objective statement of the law and is not argumentative.  *See* Mattel's Proposed Jury Instruction re Copyright Infringement—Three-Dimensional Works Can Infringe Two-Dimensional Works.

1 **MGA Parties' Response**

2

3 Mattel's objection here that the statement regarding two-dimensional versus three-
4 dimensional works is "argumentative and unnecessarily complicated" is, again, consistent
5 with Mattel's preference that the jury be given as little information as possible, likely in
6 the hopes that the jury will have difficulty understanding and engaging in the analysis that
7 is required under copyright law.   Comparing works in different media for copyright
8 infringement is complicated both conceptually and in application, a non-controversial
9 proposition which is recognized by the courts. See Ideal Toy Corp. v. Kenner Prods. Div.
10 of Gen. Mills Fun Group, Inc., 443 F. Supp. 291, 301 (S.D.N.Y. 1977) (noting that the
11 infringement question is "made even more difficult than normal" where the allegedly
12 infringing item is "in a different medium and of a different nature from the copyrighted
13 item, as in this case where the Court is asked to determine whether a three-dimensional toy
14 infringes the copyright in a two-dimensional movie").   Mattel also objects to "any of the
15 language beyond the first sentences" of the instruction, but states no specific grounds for
16 that objection.   Mattel cannot explain how something that is not visible could possibly be
17 infringed.   For these reasons, and for those set forth in MGA Parties' Objections to
18 Mattel's Proposed Instructions, defendants' proposed instruction, and not Mattel's, should
19 be given on this issue.

20

21

22

23

24

25

26

27

28

**INSTRUCTIONS NO. 11C**

**COPYRIGHT INFRINGEMENT – INDEPENDENT CREATION**

Even if Mattel proves that MGA had access to the 16 Bryant sketches and that particular Bratz dolls are substantially similar to certain of these sketches, this only creates a presumption of illegal copying.  MGA may rebut that presumption with evidence that the Bratz dolls are the product of independent creation, and were not copied from the 16 Bryant sketches.  If MGA presents evidence of independent creation, then you should weigh all of the evidence bearing in mind that Mattel bears the burden of proving that MGA copied the 16 Bryant sketches.

**Authority**:   Moore v. Kulicke & Soffa Industries, Inc., 318 F.3d 561 (3d Cir. 2003); Keeler v. Brass Co. v. Continental Brass Co., 862 F.2d 1063 (4th Cir. 1988); Don Post Studios, inc. v. Cinema Secrets, Inc., 124 F. Supp. 2d 311 (E.D. Pa. 2000).

**Mattel's Objections**

Mattel objects to defendants' proposed jury instruction 11C on the following grounds:

1.      This proposed instruction is improper since defendants did not assert the affirmative defense of independent creation in their answers and have therefore waived such defense. *See, e.g.*, *Bethea v. Burnett*, 2005 WL 1720631(C.D.Cal. 2005) (noting that independent creation is an affirmative defense); *Harbeson v. Parke Davis, Inc.*, 746 F.2d 517, 520 (9th Cir. 1984) (unasserted affirmative defenses are waived).

2.      Defendants contend improperly that "[i]f MGA presents evidence of independent creation then you should weigh all of the evidence bearing in mind that Mattel bears the burden of proving that MGA copied the 16 Bryant sketches." Independent creation is an affirmative defense that, if pleaded, could only be addressed once Mattel establishes copyright infringement. *Eden Toys v. Marshall Field & Co.*, 675 F.2d 498, 501 (2d Cir. 1982) ("Evidence of independent creation may be introduced by a defendant to rebut a plaintiff's prima facie case of infringement."). However, since defendants did not plead this defense, it cannot be considered at all.

3.      Defendants' reliance on the independent creation defense is misplaced. The independent creation defense applies where the accused infringer shows that he created the work prior to or wholly independently of the infringed work (i.e., where two different people happen to create similar works). For instance, an author accused of copying another writer's novel can establish independent creation by showing drafts of his work that pre-date his access to the allegedly infringed novel. *See, e.g.*, *Dimmie v. Carey*, 88 F. Supp. 2d 142 (S.D.N.Y 2000) (finding for the defendant singer and composer where the singer produced extensive notes and demo recordings demonstrating independent development of the allegedly infringing hit song). This, however, is a case where the author of the infringed work (Bryant) also worked and continues to work on a series of infringing works. In this context, any reference to "independent creation" is not only

449

1  meritless as a matter of law and unsupported by the evidence, but would also confuse the

2  jury.

3       4.       Defendants' proposed instruction is biased and self-serving.

4       5.       *Counter-Instruction*:  To the extent the Court decides, over Mattel's objections,

5  to give any instruction on this defense, Mattel requests that the Court adopt the following

6  instruction:

7              If you find access and substantial similarity, you must find that

8         defendants infringed Mattel's copyrights.  Defendants contend that the

9         Bratz dolls were created independently, i.e., that defendants did not

10        actually copy or prepare derivative works from Bryant's drawings

11        when they created the Bratz dolls notwithstanding their admitted

12        access to these drawings. The independent creation defense applies

13        where the defendant can prove that he created the allegedly infringed

14        work without copying the original to which he had access.   For

15        instance, an author accused of copying another writer's novel can

16        establish independent creation by showing drafts of his work that pre-

17        date his access to the allegedly infringed novel.   Defendants bear the

18        burden of proof on this defense.  If you find that defendants have not

19        established this defense by a preponderance of the evidence, then you

20        must find for Mattel on its claim of copyright infringement.

**MGA Parties' Response**

Mattel's assertion in paragraphs 1-2 that the MGA Parties (collectively for this response, "MGA") have "waived" the "defense" of independent creation is wrong. Evidence of independent creation is not a defense that is "waived" if not asserted in the pleadings, but rather, as Mattel's own cited authority recognizes, it is evidence that can be used to <u>rebut</u> a prima facie case of infringement—i.e. an inference of copying—established by evidence of access and substantial similarity. <u>See</u> <u>Eden Toys Inc. v. Marshall Field & Co.</u>, 675 F.2d 498, 501 (2d Cir. 1982) ("Evidence of independent creation may be introduced by a defendant to rebut a plaintiff's prima facie case of infringement."); <u>see also</u> <u>Granite Music Corp. v. United Artists Corp.</u>, 532 F.2d 718, 721 (9th Cir. 1976); <u>Sobhani v. @radical.media, Inc.</u>, 257 F. Supp. 2d 1234, 1237 (C.D. Cal. 2003); <u>accord</u> <u>Keeler Brass Co. v. Continental Brass Co.</u>, 862 F.2d 1063, 1066 (4th Cir. 1988) ("'[I]ndependent creation' is not an affirmative defense. The defendants, therefore, do not have the burden of persuasion for independent creation. Keeler's prima facie case advanced the proposition that the defendants copied the design. Evidence of independent creation simply tends to prove the reverse of that proposition, i.e., that the design was not copied."); <u>see generally</u> Charles A. Wright and Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1270 (3d ed. 2004) ("Federal Rule 8(c) … deals with affirmative defenses … distinguished from … Rule 8(b), which deals with denials or negative defenses that directly contradict elements of the plaintiff's claim for relief.").

Mattel cites only one case, <u>Bethea v. Burnett</u>, 2005 WL 1720631 (C.D. Cal. June 28, 2005), for its affirmative defense argument. (<u>Harbeson v. Parke Davis, Inc.</u>, 746 F.2d 517, 520 (9th Cir. 1984), offers merely a general statement of the law of pleading affirmative defenses and does not even relate to copyright law.) Although the court in <u>Bethea</u> did use the phrase "affirmative defense" in a lengthy analysis of substantial similarity, it is apparent that the court was not using it in a technical sense, because in the same paragraph

1    the court explains that it is only once a copyright plaintiff establishes reasonable access
2    and substantial similarity that the burden shifts to the defendant to rebut that presumption.
3    Id. at * 15 (citing Three Boys Music Corp. v. Bolton, 212 F.3d 477, 486 (9th Cir. 2000)).

5    Evidence of independent creation is to be considered along with the plaintiff's evidence in
6    evaluating whether infringement has occurred.   See 3 Nimmer, on Copyright § 12.11[D]
7    ("[T]he trier [of fact] may entirely believe both that the defendant had access to the
8    plaintiff's work and that the two works are substantially similar, but nevertheless,
9    reasonably conclude that the defendant independently created, rather than copied.   Jury
10   instructions should so reflect.") (emphasis added); id. at § 12.10[B][2][b] ("[T]he law has
11   devised proof of access plus probative similarity as surrogates to prove copying as a
12   factual matter. To the extent that defendant denies that copying and maintains independent
13   creation, a factual issue arises … for trial to resolve.").

15   In support of its assertion that an instruction on independent creation is "misplaced,"
16   Mattel cites one case—Dimmie v. Carey, 88 F. Supp. 2d 142 (S.D.N.Y. 2000)—but offers
17   no authority or explanation to suggest that evidence of independent creation is only
18   admissible in cases with the same fact pattern as Dimmie (and indeed, the various Ninth
19   Circuit cases in which evidence of independent creation is considered refutes such a
20   notion).

22   Because it is not an affirmative defense, MGA was not required to assert "independent
23   creation" in its answer.  MGA and Carter Bryant have asserted, in the proper context of
24   interrogatory responses, that the first generation and all subsequent BRATZ dolls were
25   independently created by a team of professional artists who were inspired by Carter
26   Bryant's concept drawings, but who developed the finished BRATZ dolls using their own
27   creativity and originality. (See MGA's Second Supplemental Responses to Mattel's
28   Revised Third Set of Interrogatories, dated January 7, 2008, at 18, 29-30, 48.)

1

2  As the preceding paragraphs demonstrate, MGA's proposed instruction is neither biased

3  nor self-serving.

4

5  Mattel's proposed counter-instruction is improper because it incorrectly states the law

6  regarding independent creation.  As explained above, independent creation is not an

7  affirmative defense which MGA must prove by a preponderance of the evidence, but

8  rather is rebuttal evidence to counter a prima facie case of copying established by evidence

9  of access and substantial similarity.  The example offered is also misleading in that it

10  suggests that evidence of independent creation must demonstrate work that pre-dates

11  access to the copyrighted work.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objections and Responses re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

**INSTRUCTION NO. 12C**

**COPYRIGHT INFRINGEMENT – MULTIPLE COPYRIGHT REGISTRATIONS**

Mattel has based its copyright claims on 16 separate copyright registrations, each one registering a different Carter Bryant sketch.  Each of these sketches is only entitled to copyright protection for the original expression contained in the particular sketch.  Mattel cannot extend or enhance its rights by treating two or more of the sketches as a compilation or as a unified work.   In other words, Mattel cannot pick and choose characteristics from more than one of these sketches to search for alleged similarities with a single BRATZ doll.  Each individual sketch must be judged based on its own protectible content in a comparison with a particular one of the allegedly infringing BRATZ dolls.

This means that in determining whether Mattel has met its burden of proving infringement, you must separately analyze each of the 16 sketches covered by a Mattel copyright under both the extrinsic and intrinsic tests.  As an example, you may not combine the design of facial features from one Bryant sketch with the body proportions from another Bryant sketch, and then evaluate whether the BRATZ dolls are substantially similar to this combination.

**Authority**:  Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1144 n.31 (C.D. Cal. 2001); see also Green v. Schwarzenegger, 1995 U.S. Dist. LEXIS 14031 at ** 61-62 (C.D. Cal. July 17, 1995) ("Plaintiff cannot pick and choose characteristics from any number of characters in his work to search for alleged similarities with a single character in defendants' work."); 9 Patry on Copyright § 9:66 (2008).

1   **Mattel's Objections**

2

3       Mattel objects to defendants' proposed jury instruction 12C on the following

4   grounds:

5       1.      This proposed instruction is not based on any Ninth Circuit Model Instruction

6   and is unnecessary and argumentative.  Defendants cite a footnote in a published decision,

7   one unpublished decision and a treatise.  These cases are factually distinguishable and do

8   not support this instruction.

9   2.      Defendants take the absurd position that a single work cannot infringe elements of

10  several works.  In other words, defendants contend that a Bratz doll would not infringe if it

11  copies the head from one drawing but copies the doll's body from another drawing.  That is

12  not the law.  This case, therefore, is no different from *Castle Rock Entm't v. Carol*

13  *Publishing Group, Inc.*, 150 F.3d 132 (2d Cir. 1998), where the Second Circuit held that a

14  book entitled "Seinfeld Aptitude Test" infringed the plaintiff's copyrights in numerous

15  episodes of "Seinfeld," because even though the amount of expression copied from each

16  episode was relatively small. *See id*. at 138 ("it would elevate form over substance to

17  conclude that *The SAT* 's copying of 643 fragments from 84 individually copyrighted

18  *Seinfeld* episodes is indistinguishable from a case in which a 634-question trivia quiz book

19  poses a few questions from each of 84 unrelated television programs, books, movies, or

20  any combination of creative works that do not constitute a discrete series of works.")  Here,

21  as in *Castle Rock*, Bryant's drawings are a single series of depictions of the same four

22  characters (i.e., Bratz), developed for a specific purpose, (i.e., creating Bratz

23  dolls).  Accordingly, it would be wholly artificial for the jury to be instructed to consider

24  each Bratz drawing separately.  Indeed, defendants do not cite any authority to support

25  their instruction.  For instance, in *Idema v. Dreamworks, Inc.*, 162 F. Supp.2d 1129, 1144

26  n. 31 (C.D.Cal. 2001), the plaintiff claimed that the defendant's film infringed elements of

27  eight separate texts, but did not claim a copyright in the combination of the works.  Here,

28

1 | however, Mattel claims that defendants infringed Bryant's drawings both individually and
2 | in combination.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **MGA Parties' Response**

2

3  Mattel's objection that this instruction is unnecessary and argumentative is yet another

4  example of Mattel's effort to deny the jury any guidance on how to apply complex

5  copyright principles to the factual issues in this case.  In addition, Mattel's objection that

6  the MGA Parties (collectively for this response, "MGA") contend a single work cannot

7  infringe elements of multiple works appears to rely on a misreading of MGA's proposed

8  instruction, which states no such absolute rule.

9

10  Moreover, Mattel's attempt to distinguish the cases cited by MGA is not persuasive in that

11  Mattel claims that defendants "infringed Bryant's drawings both individually and in

12  combination" but fails to explain what that might mean—or how that is any different from

13  the plaintiff's claim of infringement based on eight works that collectively comprised

14  "Idema's story" in <u>Idema v. Dreamworks, Inc.</u>, 162 F. Supp. 2d 1129, 1144 (C.D. Cal.

15  2001).   Contrary to Mattel's assertion, this case is in fact quite different from <u>Castle Rock</u>

16  <u>Entm't v. Carol Publ'g Group, Inc.</u>, 150 F.3d 132 (2d Cir. 1998), which involved a

17  television series, over the course of which characters uniformly played by the same actors

18  were developed in a unified sequence.  Here, Carter Bryant's initial concept sketches were

19  exploratory and preliminary in nature, and they are far from uniform in their expression.

20  As MGA's experts have pointed out, for example, there are a number of significant

21  differences among Carter Bryant's drawings, such that they cannot reasonably be

22  considered as a unified work. (<u>See</u> Expert Report of Glenn Vilppu (dated March 14, 2008)

23  at ¶ 15; Expert Report of Tonner (dated February 11, 2008) at 11.)  Mattel is apparently

24  trying to avoid having to identify any specific comparison for the jury, as a means of

25  enforcing its position on substantial similarity.

26

27

28

# INSTRUCTION NO. 13C

# DERIVATIVE LIABILITY: VICARIOUS INFRINGEMENT

If you find that MGA or MGA Hong Kong infringed Mattel's copyrights in the Bryant sketches, you may consider Mattel's claims that Isaac Larian vicariously infringed those copyrights.  Mattel has the burden of proving each of the following by a preponderance of the evidence:

        1.    That Mr. Larian profited directly from the infringing activity of MGA or MGA Hong Kong;

        2.    That Mr. Larian had the right and ability to supervise the infringing activities of MGA and MGA Hong Kong; and

        3.    That Mr. Larian failed to exercise that right and ability.

If you find that Mattel proved each of these elements, your verdict should be for Mattel as to the individual defendant if you also find that MGA or MGA Hong Kong infringed Mattel's copyright.  If, on the other hand, Mattel has failed to prove any of these elements with respect to Isaac Larian, your verdict should be for Mr. Larian.

**Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.20 (2007).

458

**Mattel's Objections**

Mattel objects to defendants' proposed jury instruction 13C on the following grounds:

1.     This proposed instruction is confusing and unnecessary because the parties already submitted a joint proposed instruction regarding Mattel's claim for vicarious infringement.  *See* Joint Proposed Jury Instructions, at 36.

2.     In any event, Mattel objects to the use of the pejorative term "sketches" when referring to Mr. Bryant's drawings and designs.

**MGA Parties' Response**

With regard to Mattel's objection to the use of the term "sketches", <u>see</u> MGA Parties' Response to Mattel's Objection to Instruction 1C, at ¶ 3.

Mattel's third objection to this instruction refers to a previous iteration of this instruction. No fair reading of the current proposed instruction would suggest that it is confusing or potentially misleading in the way Mattel suggests, or in any other way.  In particular, this instruction does not refer to Bryant or use the words "each of them", as Mattel is no longer asserting a vicarious liability theory against Bryant.   (<u>See</u> Mattel's Proposed Jury Instructions on Vicarious Liability.)

Further, this proposed instruction is necessary to present the claims at issue clearly for the jury and to avoid confusion that would prejudice defendants.

**-REVISED-**

**INSTRUCTION NO. 14C**

**DERIVATIVE LIABILITY: CONTRIBUTORY INFRINGEMENT**

A defendant may be liable for copyright infringement engaged in by another if he knew or had reason to know of the infringing activity and intentionally induces that infringing activity.

If you find that MGA or MGA Hong Kong infringed Mattel's copyrights in the Bryant sketches, you may proceed to consider Mattel's claim that Isaac Larian contributorily infringed those copyrights.  To prove contributory copyright infringement, Mattel must prove both of the following elements by a preponderance of the evidence:

      1.    That Mr. Larian knew or had reason to know of the infringing activity of MGA or MGA Hong Kong; and

      2.    That Mr. Larian intentionally induced MGA or MGA Hong Kong's infringing activity

If you find that MGA or MGA Hong Kong infringed Mattel's copyright, and you also find that Mattel has proved both of these elements as to Mr. Larian, your verdict should be for the Mattel.  If, on the other hand, Mattel has failed to prove either of these elements, your verdict should be for Mr. Larian.

**Authority**:  Ninth Circuit Manual of Model Jury Instructions 17.21 (2007).

**Mattel's Objections**

Mattel objects to defendants' proposed jury instruction 14C on the following grounds:

1.     Mattel objects to the use of the pejorative term "sketches" when referring to Mr. Bryant's drawings and designs.

2.     Defendants' proposed instruction states that Mattel must prove that Larian "intentionally induced" MGA's copyright infringement, when the model instruction makes clear that it is sufficient for Mattel to show that Larian "materially contributed" to the infringement.  *See* 9th Cir. Civ. Jury Instr. 17.21 (2007).

3.     The proposed instruction is misleading and erroneous in that it fails to inform the jury that Mattel also claims that MGA Hong Kong is liable for contributory infringement.

4.     Mattel requests that the Court adopt Mattel's proposed instruction, which conforms to the Ninth Circuit Model Instruction.  *See* Mattel's Proposed Jury Instruction re Derivative Liability—Contributory Infringement.

**MGA Parties' Response**

With regard to Mattel's objection to the use of the term "sketches", see MGA Parties' Response to Mattel's Objection to Instruction 1C, at ¶ 3.

No fair reading of the proposed instruction would suggest that it is confusing or potentially misleading in the way Mattel suggests, or in any other way.

Mattel's objection misstates the Ninth Circuit Model Jury Instruction 17.20.  Contrary to Mattel's assertion, the model jury instruction makes clear that no contributory infringement may be found unless the jury finds that the defendant acted "intentionally." See 9th Cir. Civ. Jury Instr. 17.21 (2007).   This proposed instruction clarifies this requirement for the jury.  As set forth repeatedly above regarding previous instructions, modifications of model jury instructions are proper when helpful or necessary to present the applicable law accurately to the jury.

In paragraph 4, Mattel has simply retooled a previous faulty argument regarding MGA Parties into a new faulty argument about MGA Hong Kong.  Mere weeks before trial Mattel cannot make up its mind about who it wants to blame for what, and is now attempting to claim both direct and contributory infringement against MGA Hong Kong, an inconsistent position that would if permitted only serve to confuse the jury.

For the reasons set forth above, and for those set forth in MGA Parties' Objections to Mattel's Proposed Instructions, defendants' proposed instruction, and not Mattel's, should be given on this issue.

1                           **-REVISED-**

2 **INSTRUCTION NO.  15C**

3 **DERIVATIVE LIABILITY: INTENTIONAL INDUCEMENT**

4

5 To determine whether or not Mr. Larian contributorily infringed Mattel's copyrights

6 (according to the preceding instruction), you must consider whether Mr. Larian intended to

7 induce MGA and MGA Hong Kong's infringing activities.  Mr. Larian cannot be liable for

8 another'' infringement if he did not act with the desire or purpose of intentionally inducing

9 that infringement.  Mere awareness that potential infringing activity might result is not

10 enough.

11

12 **Authority:**  Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 931-33

13 (2005); Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 262-263 (9th Cir. 1996).

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 **Mattel's Objections**

2

3       Mattel objects to defendants' proposed jury instruction 15 regarding Derivative

4 Liability: Intentional Inducement on the following grounds:

5       1.      This proposed instruction is unnecessary and confusing.  Ninth Circuit Model

6 Instruction 17.21 sets forth the law governing Mattel's claim for contributory infringement.

7 This proposed instruction adds nothing to the model instruction (which both sides have

8 proposed, although defendants' version is inaccurate), but instead just emphasizes

9 defendants' arguments and misstates the law.

10      2.      The cited authorities do not support defendants' erroneous assertions that

11 defendants are not liable if they "did not act with the desire or purpose of intentionally

12 inducing that infringement" and that "awareness that potential infringing activity might

13 result is not enough."  Indeed, in *Fonovisa, Inc. v. Cherry Auction, Inc.*, the Ninth Circuit

14 confirmed that the relevant inquiry is simply whether defendant "***materially contributed*** to

15 the infringing activity."  *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir.

16 1996) (emphasis added) (agreeing that "providing the site and facilities for known

17 infringing activity is sufficient to establish contributory liability").  The Supreme Court's

18 statement in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005)

19 that "mere knowledge of infringing potential" might not be enough for liability has no

20 application here.  That case announced the circumstances under which a party that merely

21 distributes a device (e.g., a distributor of file-sharing computer networking software) can

22 be liable for the infringing activities of third parties.  None of the defendants can claim to

23 be such a "distributor" here.

24      3.      Defendants' proposed instruction purports to inform the jury that Mattel must

25 prove that defendants "intended to induce" MGA's copyright infringement, when the

26 model instruction makes clear that it is sufficient for Mattel to show that defendants

27 "materially contributed" to the infringement.  *See* 9th Cir. Civ. Jury Instr. 17.21 (2007); *see*

28 *also Fonovisa, Inc.*, 76 F.3d at 264.

4.     The proposed instruction is misleading and erroneous in that it fails to inform the jury that Mattel also claims that MGA Hong Kong is liable for contributory infringement.

Objections and Responses re: MGA Parties' Revised Disputed [Proposed] Jury Inst.– Case No. CV 04-9049 SGL (RNBx)

1 | **MGA Parties' Response**

2

3 | This instruction is necessary to clarify the applicable law for the jury, and is proper based

4 | on the authorities defendants cited in support of the instruction and cases discussed therein.

5 | The intentional inducement requirement set forth here is also consistent with the Model

6 | Instruction on contributory infringement, but provides more explanation to help the jury

7 | apply the appropriate law.  Mattel's objections rely on unduly narrow and fact-dependent

8 | interpretations of that authority, which in fact support the approach set forth in this

9 | instruction.

10

11

12

13

14

15 | DATED:  June 18, 2008          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

16

17 |                         By: _____/s/ Jason D. Russell_____
                                        Jason D. Russell
18 |                              Attorneys for the MGA Parties

19

20

21

22

23

24

25

26

27

28